**Hearing Date: May 14, 2012 at 4:00 p.m. (prevailing Eastern Time)**

**WINSTON & STRAWN LLP**
James Donnell (jdonnell@winston.com)
Sarah L. Trum (strum@winston.com)
200 Park Avenue
New York, NY  10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

*Counsel for WFBNA*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
|                                         | )  |                                         |
| In re:                                  | )  | Case No. 12-12020-MG                    |
|                                         | )  |                                         |
| RESIDENTIAL CAPITAL, LLC, et al.,       | )  | Chapter 11                              |
|                                         | )  |                                         |
|                         Debtors.        | )  | Joint Administration Pending            |
|                                         | )  |                                         |
---------------------------------------------------------------------

**LIMITED OBJECTION OF WFBNA TO DEBTORS' MOTION FOR ORDER UNDER
BANKRUPTCY CODE SECTIONS 105(a), 345, 363, 364, AND 503(b)(1) AND
BANKRUPTCY RULES 6003 AND 6004 AUTHORIZING (I) CONTINUED USE OF
CASH MANAGEMENT SERVICES AND PRACTICES, AS MODIFIED, (II)
CONTINUED USE OF EXISTING BANK ACCOUNTS, CHECKS, AND BUSINESS
FORMS, (III) INTERIM WAIVER OF THE INVESTMENT AND DEPOSIT
REQUIREMENTS OF BANKRUPTCY CODE SECTION 345, (IV) DEBTORS TO
HONOR SPECIFIED OUTSTANDING PREPETITION PAYMENT OBLIGATIONS,
AND (V) CONTINUATION OF INTERCOMPANY TRANSACTIONS, INCLUDING
INTERCOMPANY TRANSACTIONS WITH FUTURE DEBTORS, AND GRANTING
ADMINISTRATIVE EXPENSE STATUS TO INTERCOMPANY CLAIMS AND
WFBNA'S REQUEST FOR ADDITIONAL ADEQUATE PROTECTION**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

      1.     WFBNA is a depository bank holding several bank accounts of the Debtors.

WFBNA  files this limited objection to the Debtors' proposed cash management order in order

to preserve its rights under its deposit agreement. WFBNA also seeks additional adequate

protection of its existing security interests that were granted under the deposit agreement. Specifically, WFBNA seeks replacement collateral in the same collateral given to Ally Financial, consistent with WFBNA's contractual subordination rights against Ally Financial.

### The WFBNA Deposit Agreement

2.      Ally Financial Inc., Ally Servicing LLC, Motors Insurance Corp., Residential Capital, LLC, Residential Funding Co., LLC, Passive Asset Transactions LLC, RFC Asset Holding II, LLC, Residential Mortgage Real Estate Holdings, LLC, Residential Funding Real Estate Holdings, Homecoming Financial Real Estate Holding, GMAC Mortgage, LLC, DiTech, LLC ("the Ally/ResCap Entities") entered into a commercial deposit agreement with Wachovia Bank and Wachovia Bank of Delaware, now succeeded by Wells Fargo Bank, N.A. ("WFBNA" or "the Bank"), under which the Bank provided the Ally/ResCap Entities with treasury management services.

### WFBNA Holds Security Interests in the Bank Accounts

3.      Pursuant to that deposit agreement, the Bank holds security interests in the deposit accounts held by the Ally/ResCap Entities at the Bank as well as the funds in the accounts; additionally, the Bank holds setoff rights. The deposit agreement provides in part that:

> Setoff.  If you ever owe us money as a customer, borrower, guarantor or otherwise including any obligation owed to us for services provided pursuant to this agreement or owed to a financial institution that we acquire, then you agree that, in addition to any other remedies we may have, we have the right to deduct and set off amounts you owe us from any accounts you hold with us or our affiliates.  Your obligations and our right to set off expressly include any obligations owed to us for services provided pursuant to this agreement, whether provided to you or any direct or indirect subsidiary of yours; you further agree that we have the right to deduct setoff amounts that any of your subsidiaries owe us from any accounts that you hold with us, and you also grant us a consensual security interest in your accounts and to the funds held in them as collateral to secure your present and future obligations

2

to us, and your subsidiaries' present and future obligations to us under this agreement. The direct and indirect subsidiaries of Ally Financial Inc. include but are not limited to Ally Servicing LLC, Motors Insurance Corp., Residential Capital, LLC, Residential Funding Co., LLC, Passive Asset Transactions LLC, RFC Asset Holding II, LLC, Residential Mortgage Real Estate Holdings, LLC, Residential Funding Real Estate Holdings, Homecoming Financial Real Estate Holding, GMAC Mortgage, LLC, Ditech, LLC, Residential Consumer Services, LLC ("the Ally/ResCap Entities" or "Subsidiaries").

By accepting services, you also grant us a consensual security interest in your accounts and to the funds held in them as collateral to secure your present and future obligations to us.

**Limited Objections to Cash Management Motion and Request for Additional Adequate Protection**

4.      As a secured creditor, the Bank is entitled to adequate protection of its security interest and setoff rights. The adequate protection suggested in the Debtors' cash management motion does not constitute adequate protection and is, instead, insufficient. The Bank is entitled to replacement liens in other collateral to secure any diminishment or diminution of the funds in the accounts that currently constitute the Bank's collateral. The Bank hereby requests replacement collateral and continuation of its pre-petition security. Because of the Bank's contractual right of priority over all liens and claims of Ally Financial Inc., the Bank requests the specific replacement collateral and priority described *infra*.

**Objection to Directive to Allow Withdrawals from Accounts in the Absence of Sufficient Stop Payment Orders Preventing Unauthorized Transfers**

5.      As a precondition to allowing the debtor to use prepetition accounts, the Bank has asked the debtor to place stop payment orders on all outstanding prepetition checks or other transfer authorizations that the Debtors do not wish to honor on a postpetition basis. Without such stop payments in place, the Bank is at risk of honoring prepetition checks that have not been authorized by the Court. There is no reason to subject the Bank to such risk. Instead,

before the Debtors resume use of the prepetition accounts held at the Bank, the Debtor should be required to place stop payment orders on all outstanding prepetition checks and other authorizations that are not authorized by the Bankruptcy Court.

### Objection to Overturning Provisions of Cash Management Order by Operation of DIP Financing and Other Cash Collateral Orders

6.      The Debtors' proposed cash management order is filled with provisions that would purport to make the cash management order subject to the DIP financing agreement and the Debtors' various cash collateral orders.  There is no reason to subject the Bank to the risk that the provisions of the cash management order do not mean what they say.  Instead, the provisions of the cash management order should be reformed to provide that the Debtors' actions and authority are subject to such other orders; provided, however, that the Banks are entitled to the full protections of the cash management order, as written.

### Objection to Provisions of Order that are Inconsistent with Deposit Agreement

7.      The Debtors' proposed form of order purports to give the Debtors broad authority to act in accordance with "structures" "systems" and "past practices."  The order should make clear that the Debtors' authorization to act is subject to compliance with the existing deposit agreements

### Request for Additional Adequate Protection:  Continuation of Property Rights to Ally Financial's Collateral

8.      Pursuant to its deposit agreement, the Bank is entitled to a priority for its claims against the Debtors over the claims of Ally Financial Inc. against the Debtors.  The agreement provides:

> SUBORDINATION.  Any Indebtedness of Subsidiary now or hereafter held by Guarantor is hereby subordinated to the Deposit Service Indebtedness of Subsidiary to WFB.  Such Indebtedness of Subsidiary to Guarantor is assigned to WFB as security for this Guaranty and the Deposit Service Indebtedness and, if WFB

4

requests, shall be collected and received by Guarantor as trustee for WFB and paid over to WFB on account of the Deposit Service Indebtedness of Subsidiary to WFB but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty. Any notes or other instruments now or hereafter evidencing such Indebtedness of Subsidiary to Guarantor shall be marked with a legend that the same are subject to this Guaranty and, if WFB so requests, shall be delivered to WFB, WFB is hereby authorized in the name of Guarantor from time to time to file financing statements and continuation statements and execute such other documents and take such other action as WFB deems necessary or appropriate to perfect, preserve and enforce its rights hereunder.

9.      The "guarantor" under the agreement is Ally Financial Inc., and the

"Subsidiary" under the agreement includes all of the Debtors:

GUARANTY; DEFINITIONS.    In consideration of WFB's continued provision of treasury management services to the Ally/ResCap Entities under this agreement, notwithstanding the right of WFB to cease the provision of such services, and for other valuable consideration, ALLY FINANCIAL, INC. ("the Guarantor"), jointly and severally unconditionally guarantee and promise to pay to WFB, or order, on demand in lawful money of the United States of America and in immediately available funds, any and all Indebtedness of any Subsidiary to WFB arising out of or relating in any way to any deposit account maintained by Subsidiary with WFB, or any treasury management service offered by WFB which is purchased or otherwise utilized by Subsidiary, including, without limitation, any overdraft occurring on any such deposit account (whether created by action of Subsidiary, or by chargeback, fee debit, or other action of WFB), together with any and all extensions, renewals and/or modifications of such Indebtedness (which Indebtedness, in connection with any such deposit account or treasury management service, and all such extensions, renewals and/or modifications, is hereinafter collectively referred to as the "Deposit Service Indebtedness"). The term "Indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Subsidiary, or any of them, heretofore, now or hereafter made, incurred or created, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether Subsidiary may be liable individually or jointly with others, or whether recovery upon such Indebtedness may be or hereafter becomes unenforceable. This Guaranty is a

guaranty of payment and not collection.  Guarantors acknowledge that, absent this Guaranty, WFB would not continue to provide such services to Subsidiary or Guarantors.

## Request for Adequate Protection

10.     As set forth above, the Bank not only has contractual subordination rights against Ally Financial Inc. with respect to Ally Financial's claims and security interests against the ResCap Debtors and their property; the Bank also holds security interests in all of the bank accounts and funds at WFBNA held by Ally Financial and the ResCap Entities.

11.     The Debtors have proposed certain limited forms of adequate protection to the Bank in the context of their proposed cash management order.  However, these provisions do not adequately protect the Bank's security interest in the Debtors' and Ally Financial's bank accounts.  Given that its claims against the Debtors have contractual priority over those of Ally Financial, the Bank should receive the same replacement collateral that the Debtors are giving to Ally Financial, with the same priority of the Bank over Ally Financial, as provided for in the Bank's deposit agreement.

12.     The Bank further requests that the Debtors' proposed form of cash collateral order and DIP financing order be modified to provide that "all liens and claims of Ally Financial Inc. remain subject to the subordination provisions of the Bank's subordination agreement under the commercial deposit agreement executed with Wachovia Bank, a division of Wells Fargo Bank, N.A., on January 3, 2012, as modified effective April 25, 2012."

## Reservation of Rights

13.     The Bank asserts that it has received inadequate notice of the terms of the Debtors' proposed cash management order and the related pleadings.  The Bank has been requesting for months that the Debtor negotiate an appropriate form of treasury management form of order.  The Debtors refused to respond to the Bank's proposed draft order or termsheet,

and only provided their proposed form of treasury management order a few days ago.  Moreover, the Debtors only provided their proposed form of DIP financing order and cash collateral orders (which purport to materially affect the Bank's cash management order) on Saturday.  The Bank reserves its right to raise additional objections to all of the orders.

## **Proposed Revisions to Order**

14.    The Bank has proposed limited revisions to the Debtors' form of order, which would address the Bank's interim objections.  The Bank has previously provided this draft order to the Debtors and Ally Financial Inc.  A copy is attached for the Court's reference.

## CONCLUSION

WHEREFORE, WFNBA respectfully requests that the Court: (i) enter an interim order substantially in the form attached hereto as Exhibit A, granting certain of the relief sought herein immediately; (ii) enter a final order granting the relief sought herein on a final basis; and (iii) grant such other and further relief as the Court may deem just and proper.

**WINSTON & STRAWN LLP**

By:___/s/ James Donnell_____
James Donnell (jdonnell@winston.com)
Sarah L. Trum (strum@winston.com)
200 Park Avenue
New York, NY  10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

*Attorneys for WFNBA*

# EXHIBIT A

NY:1395788.1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------
)
In re:                                    )    Case No. 12-
                                          )
RESIDENTIAL CAPITAL, LLC, et al.,         )    Chapter 11
                                          )
                        Debtors.          )    Jointly Administered
-----------------------------------------------------------------
)

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 345, 363, 364, AND 503(b)(1)
AND BANKRUPTCY RULES 6003 AND 6004 AUTHORIZING (I) CONTINUED USE
OF CASH MANAGEMENT SERVICES AND PRACTICES, AS MODIFIED, (II)
CONTINUED USE OF EXISTING BANK ACCOUNTS, CHECKS, AND BUSINESS
FORMS, (III) INTERIM WAIVER OF THE INVESTMENT AND DEPOSIT
REQUIREMENTS OF BANKRUPTCY CODE SECTION 345, (IV) DEBTORS TO
HONOR SPECIFIED OUTSTANDING PREPETITION PAYMENT OBLIGATIONS,
AND (V) CONTINUATION OF INTERCOMPANY TRANSACTIONS, INCLUDING
INTERCOMPANY TRANSACTIONS WITH FUTURE DEBTORS, AND GRANTING
<u>ADMINISTRATIVE EXPENSE STATUS TO INTERCOMPANY CLAIMS</u>**

Upon the motion (the "Motion")[1] of the Debtors for entry of an order, under

Bankruptcy Code sections 105, 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and

6004, authorizing (i) the continued use of the Debtors' cash management services and practices,

as modified, (ii) the continued use of the Debtors' existing bank accounts, checks, and business

forms, (iii) interim waiver of the investment and deposit requirements of Bankruptcy Code

section 345, (iv) Debtors to honor specified outstanding prepetition obligations, and (v)

continuation of ordinary course intercompany transactions, including intercompany transactions

with any Future Debtors, and according administrative expense status to postpetition

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
granted herein may refer to www.kccllc.net/rescap for additional information.

intercompany claims arising from such transactions; and upon the Whitlinger Affidavit; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. §157(b) ; and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.        The Motion is GRANTED as set forth herein.

**<u>Cash Management Practices</u>**

2.        The Debtors are authorized to continue using the Cash Management System, to manage their cash, to pay intercompany payables, including certain prepetition payables referenced in the Motion, to extend intercompany credit, and to otherwise transfer funds by and among the Debtors consistent with past practice, subject to the terms of the DIP Credit Agreement.

3.        The Debtors are authorized to implement and utilize the Funding Facilities Cash Flow Structure, as described in the Motion and as contemplated by the terms of the DIP Credit Agreement and the other cash collateral agreements, during these Chapter 11 cases. Subject to the Court's approval of the respective postpetition financing agreements, and in connection with the Funding Facilities Cash Flow Structure, the Debtors are authorized to use the DIP Concentration Account, the Revolver Concentration Account, the LOC Concentration

Account, the Citibank MSR Concentration Account and the FNMA EAF Collection Account, each more particularly described in Exhibit A to this Order.

4.    The Debtors are authorized to continue to perform their obligations under the agreements governing such system, and to transfer funds between and among the Debtors and any Future Debtors, and between and among their respective Bank Accounts and other accounts maintained with or by their duly appointed agents and custodians, as and when needed and in the amounts necessary or appropriate to maintain their operations and facilitate the orderly operation of their estates or businesses; provided, however, that such transfers of funds by and among the Debtors and their affiliates are made in accordance with the terms and conditions, and do not impair any parties' rights under any Servicing Agreements, deposit agreements, or other similar document, the DIP Credit Agreement or any order governing the Debtors' use of cash collateral or debtor-in-possession financing facilities.

5.    The Debtors shall maintain records of all transfers within the Cash Management System so that all transfers and transactions shall be adequately and promptly documented in, and ascertainable from, the Debtors' books and records, to the same extent as maintained before the commencement of these Chapter 11 cases.

6.    The Debtors are authorized to continue operating and maintaining the Custodial Accounts in connection with, and in accordance with, the Servicing Agreements and related documents for sales of whole loans to third parties.

7.    The Debtors are authorized to continue to deduct amounts from the Custodial Accounts for the repayment of the Advances.

8.    The Debtors' banks are authorized, in the course of providing cash management services to the Debtors, to continue to deduct from the appropriate accounts of the

Debtors, the bank's customary fees and expenses associated with the nature of the deposit, cash management and custodial services rendered to the Debtors. The Debtors are further authorized to pay customary prepetition banking and custody fees owed to any of their banks. Any customary postpetition banking and custody fees will have administrative priority.

9.    The Debtors' banks are authorized to process, reverse and debit deposits that are returned by payor banks in the ordinary course of business, honor and pay all prepetition checks and transfers related to the P&I Funds, the T&I Funds or otherwise made in the ordinary course of business of loans serviced by the Debtors.

10.    The Debtors' banks are authorized to rely on the Debtors' designation of accounts set forth on Exhibit ___ of the Motion as P&I Custodial Accounts or T&I Custodial Accounts, without any further duty of inquiry.

11.    The Debtors shall be authorized to perform each of their Servicing Functions in accordance with the terms and conditions of the Servicing Agreements until the Court enters an order that otherwise addresses such agreements. Without limiting the generality of the foregoing, the Debtors are authorized, but not directed, to make all required Advances and to perform indemnification obligations, as provided under the Servicing Agreements, without further application to, or order of, this Court. In addition, parties to the servicing transactions are authorized, free and clear of any constraints imposed by the Bankruptcy Code, including, without limitation, Bankruptcy Code section 362, to continue any customary prepetition practices of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties, provided, however, that with respect to any Mortgage Loans Receivables and REO Property (each term as defined in the DIP Credit Agreement) that are collateral under

the DIP Credit Agreement and any proceeds thereof, there shall be no "netting" without court authorization.

12.    No rights of any entity in connection with a contract or transaction of the kind listed in Bankruptcy Code sections 555, 556, 559, 560 and 561(a), whatever they might or might not be, are affected by the entry of this Order.

13.    Nothing in this Order shall limit, expand or otherwise affect any rights and obligations of the Debtors and other parties under any of the Debtors' repurchase agreements, including the obligations, if any, under any repurchase agreements to segregate funds and transfer servicing rights.

14.    All banks at which the Debtors maintain bank accounts (the "Banks"), including, without limitation, those accounts listed on **Exhibit B** to the Motion (collectively with any and all other bank accounts maintained by the Debtors, the "Bank Accounts"), are authorized and directed to (a) continue to administer, service, and maintain the Bank Accounts as such accounts were administered, serviced, and maintained before the Petition Date, without interruption and in the usual and ordinary course and (b) to receive, process, honor and pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Debits") on account of a claim arising on or after the Petition Date so long as the Debtors have good funds standing to their credit in the relevant Bank Accounts in accordance with the terms and conditions governing the Cash Management System.

15.    The Banks are restrained and prohibited from honoring any Debit presented, issued, or drawn on any Bank Account on account of a claim arising before the Petition Date (a "Prepetition Debit") unless the payment of such claim (a) has been authorized by

an order of this Court, (b) has been directed by the Debtors and not otherwise prohibited by a "stop payment" request received by the relevant Bank from the Debtors, and (c) is supported by sufficient funds in the relevant Bank Account.

16.    Subject to the provisions of this Order, the Banks are authorized and directed to rely on the Debtors' representations, instructions and presentations (without any duty of further inquiry) as to which Debits are authorized to be honored or dishonored, whether or not such Debits are dated prior to, on, or subsequent to the Petition Date.  To the extent that the Debtors direct that any debit be dishonored, the Debtors may issue replacement Debits.

17.    Each Bank that maintains one or more ~~Operating~~Bank Accounts shall implement customary handling procedures to effectuate the terms of this Order.  No Bank that implements such handling procedures shall be liable to the Debtors or their estates, or otherwise held in violation of this Order, for honoring a Prepetition Debit or other Debit (a) at the direction or instruction of the Debtors to honor such Prepetition Debit or other Debit, (b) in the good faith belief, which may be based upon the direction or instruction of the Debtors, that the Court has authorized that such Prepetition Debit or other Debit be honored, or (c) as a result of an innocent mistake made despite implementation of such handling procedures.

18.    Each Bank is, subject to and in accordance with the terms and conditions of the Cash Management System, authorized to "charge back" to or deduct from the Debtors' accounts any amounts incurred by the Bank resulting from returned checks, transfers authorized by the Debtors, or other returned items, and the Debtors ~~are authorized to~~shall pay to the Bank such amounts and any fees and expenses in connection with any such item, in each case regardless of whether such item was deposited prepetition or postpetition.

19.     Any payment from a Bank Account at the Debtors' request made by a Bank prior to the Commencement Date (including, but not limited to, an ACH (EFT) that such Bank is or becomes obligated to settle), or any instrument issued by any Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, regardless of whether actually debited from such Bank Account prepetition.

20.     Subject to the limitations set forth in paragraph [26] below, the Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or opening any additional Bank Accounts (the "New Accounts"), wherever the Debtors deem that such accounts are needed or appropriate, and whether or not the banks in which such accounts are opened are designated depositories in the Southern District of New York; provided that (a) any New Account shall be (i) with a bank that is organized under the laws of the United States of America or any state therein and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (ii) designated a "debtor in possession" or "DIP" account by the relevant bank, and (b) the Debtors shall provide the U.S. Trustee with notice of any New Accounts.  The Banks are authorized and directed to honor the Debtors' requests to open or close (as the case may be) such Bank Accounts or additional bank accounts.  The Debtors shall provide notice to the U.S. Trustee and AFI of the opening of any New Accounts or the closing of any Bank Accounts.

21.     The relief, rights, and responsibilities provided for in this Order shall be deemed to apply to any and all Bank Accounts, whether or not such Bank Accounts are listed on **Exhibit B** to the Motion and including, without limitation, any New Accounts.

**DIP Cash Management**

22.     The Collection Account, DIP Borrower Account and the DIP Concentration Account (each defined herein), which each hold proceeds of the collateral securing the DIP Facilities shall be kept separate and apart from the Debtors' other accounts. GMACM and RFC shall remit all collections with respect to Mortgage Loans, Receivables and REO Property (each term as defined in the DIP Credit Agreement; collectively, the "First Lien Collateral") into deposit accounts owned by GMACM Borrower LLC (the "GMACM Borrower") (the "GMACM Borrower Account") and RFC Borrower LLC (the "RFC Borrower" and together with the GMACM Borrower, the "Borrowers") (the "RFC Borrower Account" and together with the GMACM Borrower Account, the "DIP Borrower Accounts"), respectively, within two business days after collection.  Notwithstanding the foregoing, GMACM and RFC shall deposit all collections with respect to the Serviced Loans included in the MBS Trust to the MBS Trust Collection Account within two business days after collection, and shall then cause such collections to be remitted directly from the MBS Trust Collateral Account to the applicable DIP Borrower Account no later than two business days after such collections are deposited into the MBS Trust Collection Account (each term as defined in the DIP Credit Agreement).  With respect to collections (the "DIP Collections") on First Lien Collateral, (a) that GMACM, as primary servicer, collects, the funds shall move from lockbox accounts (Map 2, #1), to a collection/clearing account, to custodial accounts (Map 2, #2), to off-balance sheet custodial accounts (Map 2, #3), to the GMACM Borrower Account (Map 2, #4) and (b) that RFC, as master servicer, collects from primary servicers, the funds shall flow directly from clearing accounts (Map 3, #1) to the RFC Borrower Account (Map 3, #2).

23.    The lockbox accounts, collection/clearing accounts, and/or custodial accounts that the DIP Collections pass through before they are remitted the DIP Borrower Accounts are not, and shall not be, subject to the lien of any third party.  Except as provided in paragraph [20], the Debtors shall not permit the DIP Collections to ever flow through any of ResCap's corporate accounts or any other account of the Debtors prior to remitting the DIP Collections to the DIP Borrower Accounts.  Any funds passing through these unencumbered lockbox accounts, collection/clearing accounts, and/or custodial accounts that constitute Collateral (as defined in the DIP Credit Agreement) or proceeds of Collateral shall at all times be subject to the liens securing the DIP Facilities and shall be held in trust for the benefit of the DIP lenders.

24.    Funds on deposit in the DIP Borrower Accounts may be swept from time to time to the DIP Concentration Account in accordance with the DIP Credit Agreement.  Each time funds in the DIP Borrower Accounts are swept to the DIP Concentration Account, ResCap shall become obligated (a) to the GMACM Borrower in the amount swept into the DIP Concentration Account from the GMACM Borrower Account and (b) to the RFC Borrower in the amount swept into the DIP Concentration Account from the RFC Borrower Account.  Such intercompany indebtedness shall be payable upon demand by the applicable Borrower or, upon the occurrence of an Event of Default under the DIP Credit Agreement (such term as defined therein), by the Collateral Agent.  In addition, collections on First Lien Collateral pledged under the DIP Facilities shall be remitted to the DIP Concentration Account from the Debtors' other operating accounts.

25.    The DIP Concentration Account shall be a ResCap segregated account into which only funds swept from the DIP Borrower Accounts will be deposited and no other

17

funds of the Credit Parties (as defined in the DIP Credit Agreement) shall be commingled with such funds. The DIP Concentration Account shall not be subject to any Adverse Claim (as defined in the DIP Credit Agreement), except as specifically set forth in the DIP Credit Agreement.

26.    As long as the conditions to withdrawal of funds from the Collection Account, DIP Concentration Account and the DIP Borrower Accounts, as set forth in the DIP Credit Agreement, are satisfied, and other than during a Dominion Period, ResCap and the Borrowers shall be permitted to withdraw funds from the Collection Account, DIP Concentration Account and the DIP Borrower Accounts, respectively, to fund certain additional servicer advances, certain loan repurchases, a share of the operating expenses and other expenditures specifically set forth in the DIP Credit Agreement, in each case, in accordance with the Approved DIP Budget.

27.    During a Dominion Period, all funds in the DIP Borrower Accounts and the DIP Concentration Account shall be swept daily into a deposit account, established by either the GMACM Borrower or the RFC Borrower (the "Collection Account"), and after written notice from the Collateral Agent, applied to outstanding DIP obligations in accordance with the DIP Credit Agreement.

28.    The DIP Borrower Accounts, the DIP Concentration Account and the Collection Account shall each be subject to a Deposit Control Account Agreement (as defined in the DIP Credit Agreement) in favor of the Collateral Agent for the benefit of the Secured Parties under the DIP Facilities.

29.    The Borrowers shall not establish any new bank accounts, deposit accounts, checking accounts, money market funds, certificates of deposit or other similar

18

accounts or financial instruments accounts, other than the DIP Borrower Accounts and the Collection Account, without the prior written consent of the Administrative Agent, and any new accounts shall be subject to a control agreement satisfactory to the Collateral Agent.

30.     All financial institutions in which (a) the DIP Borrower Accounts, (b) the DIP Concentration Account, (c) the Collection Account, or (d) any other deposit accounts, lockboxes, blocked accounts or other accounts of any of the Debtors holding the proceeds of any of the collateral securing the DIP Facilities are located are authorized and directed to comply with any request of the Collateral Agent to turn over to the Collateral Agent all funds therein without setoff or deduction of any kind (except as agreed in the Deposit Account Control Agreements (as defined in the DIP Credit Agreement)).

31.     Before the Debtors resume use of the Bank Accounts governed by agreements with Wachovia Bank, a division of Wells Fargo Bank ("Wachovia/Wells") the Debtors are required to place stop payment orders on all outstanding prepetition checks and other authorizations that are not authorized by the Bankruptcy Court and represent that such action has occurred.

**Reservation of Rights**

32.     [Same as Ally Financial's reservation].

**Bank Accounts, Checks, and Business Forms**

33.     ~~31.~~The requirements of the U.S. Trustee Guidelines that the Debtors close all existing bank accounts and open new debtor in possession accounts are hereby waived. Further, the requirements of the U.S. Trustee Guidelines that the Debtors establish specific bank accounts for tax payments are hereby waived.

34.     ~~32.~~The Bank Accounts are deemed debtor in possession accounts.  The Debtors are authorized, but not directed, to use the Bank Accounts in the same manner and with

the same account numbers, styles and document forms as those employed before the Petition Date (or, the case of any New Account now in existence, as are currently employed), including, without limitation: (a) to deposit funds in, and, to the extent the Debtors have good fund standing to their credit in such accounts, withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, and other Debits, (b) to pay postpetition ordinary course bank fees in connection with the Bank Accounts, (c) to perform their obligations under the documents and agreements governing the Bank Accounts, (d) to treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors in possession.

35.    ~~33.~~ The Debtors are authorized to continue using all checks, correspondence, and business forms (including, but not limited to, letterhead, purchase orders and invoices) substantially in the forms existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; provided, however, that the Debtors shall modify the check printing system so that checks will include a legend referring to the Debtors as "Debtor-in-Possession" or "DIP".

36.    As adequate protection and security for the Bank's continued financial accommodation, Wachovia/Wells shall receive a replacement lien in all property securing any debt of the Debtor to Ally Financial, Inc. with priority as set forth in its deposit agreement.

37.    The Bank shall be authorized, for all purposes, to treat the ResCap Debtors as the exclusive owners and customer of each such account to the extent provided for in the Bank's deposit agreement.

### Investment and Deposit Requirements of 11 U.S.C. § 345

38.    ~~34.~~ The Debtors are authorized to invest and deposit funds in accordance with their existing investment practices, and, to the extent that such practices are not consistent

with the requirements of 11 U.S.C. § 345(b), such requirements are waived, for good cause shown, on an interim basis.  To the extent the Debtors are not in compliance with Bankruptcy Code section 345(b) in a period of ninety (90) days from the date of entry of this Order, the Debtors shall seek additional relief from this Court or make such other arrangements as required by the U.S. Trustee.

## Intercompany Transactions and Intercompany Claims

39. 35. The Debtors are authorized to continue to maintain their business relationships and to undertake transactions between each other and any Future Debtors (the "Intercompany Transactions") in the ordinary course and consistent with past practice.  Pursuant to Bankruptcy Code sections 503(b)(1) and 364(b), all claims against any Debtor by another Debtor or by a Future Debtor and arising on or after the Petition Date in connection with the Intercompany Transactions shall be accorded administrative expense status and priority of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

## Other Matters

40. 36. Bankruptcy Rule 6003(b) has been satisfied.

41. 37. The requirements of Bankruptcy Rule 6004(a) are waived.

42. 38. The Debtors are hereby authorized to execute any additional or supplemental documents incident to the relief granted pursuant to this Order.

43. 39. The Debtors, their officers, employees and agents, are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

44. 40. Notwithstanding anything to the contrary in this Order, any action to be taken by the Debtors pursuant to the relief authorized in this Order is subject to should comply

with the terms of any cash collateral or debtor in possession financing order entered in these chapter 11 cases; provided that the Banks may rely on the provisions of this Order.  Nothing granted in this Order shall be deemed to constitute an assumption or rejection by the Debtors of any contracts or agreements, and the Debtors retain their rights to assume, reject or modify any contracts or agreements to the extent they are entitled to do so under existing contracts or agreements or applicable law.

45.    41. As promptly as possible, but in no event later than five (5) business days after entry of this Order, the Debtors shall serve a copy of this Order on the Banks at their contact information listed on **Exhibit B** to the Motion, in addition to the parties who received notice of the Motion.

46.    42. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

47.    43. The relief granted by this Order shall apply to any affiliated future debtor (a "Future Debtor") in these jointly-administered cases.  An affiliated debtor shall be deemed to be a Future Debtor upon the Court's entry of an order authorizing the joint administration of such Future Debtor's Chapter 11 case with the Chapter 11 cases of the Debtors.

48.    44. All authorizations granted herein are subject to any applicable restrictions in the DIP Credit Agreement.

49.   45. This Court shall retain jurisdiction with respect to all matters relating

to the interpretation or implementation of this Order.

Dated:        New York, New York
                        , 2012


_____
                        UNITED STATES BANKRUPTCY JUDGE