MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12- |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Joint Administration Pending |

**DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 507 AND 541 AND BANKRUPTCY RULE 6003 AUTHORIZING DEBTORS TO HONOR CERTAIN PREPETITION OBLIGATIONS TO CUSTOMERS**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby move for entry of an order, under sections 105, 507 and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing but not directing the Debtors to honor all prepetition obligations to act as a payment conduit under the Services Payment Conduit Program (as defined below) (the "Motion").[2] In support of the Motion, the Debtors rely upon

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Whitlinger Affidavit (defined below). Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

[2] Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief requested in this Motion may refer to http://www.kccllc.net/rescap for additional information.

ny-1011852

and incorporate by reference the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court concurrently herewith (the "Whitlinger Affidavit"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.　　This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 507 and 541.

## BACKGROUND

2.　　On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee, examiner or statutory creditors' committee has been appointed in these Chapter 11 cases.

3.　　The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc., which is not a Debtor. The Debtors and their non-debtor affiliates operate the fifth largest servicing business and the tenth largest mortgage origination business in the United States. A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit.

## THE CUSTOMER OBLIGATIONS

4.　　Before the Petition Date, the Debtors' mortgage customers purchased certain services and financial products that are provided by third parties (the "Services Payment

Conduit Program" or the "Customer Obligations").[3]  For example, the Debtors offered a credit monitoring service provided by a third party company that is not affiliated with any of the Debtors.  The Debtors also offered a variety of ancillary products related to homeownership including home warranties, mortgage accidental death insurance and mortgage life insurance, among others.  All of these products are supplied by third party providers.[4]

5. Before the Petition Date, the customer paid the monthly fee for these services to the Debtors in one lump sum along with the customer's mortgage payment, and then the Debtors transferred the service payment to the third party service provider.  In other cases, the customers paid a one-time deposit or initiation fee to the Debtors for each service and the Debtors would then send the fee to the third party service provider.  In all cases, the Debtors served only as a conduit for the payment of third party services (the "Conduit Payments").

6. Under the terms of the Services Payment Conduit Program, the Debtors' obligation to transfer Conduit Payments arises only after the Debtors actually collect payment from customers.  If a customer fails to make a Conduit Payment, the third party service provider can cancel the services, and the Debtors are not responsible for transferring any future payments.  Likewise, if a customer forwards payment to the Debtors but the third party service provider cancels the service to the customer or that customer's account is not in good standing, then the Debtors refund the payment back to the customer.  The Debtors only retain a portion of the funds

---

[3] Participating customers bought the products and services either when their mortgage was originating or at a later date by responding to a solicitation.  In some cases, the Debtors' agents and customer service representatives pitched the product and then referred interested customers to the service provider to close the sale.  In other cases, the customer was contacted directly by the service provider.

[4] In addition, the Debtors offered the following financial products and services that were supplied by third party service providers: mortgage life insurance, term life insurance, sign and drive insurance (a disability, accidental death, excess medical package policy), accidental death insurance, home warranties, dental insurance, miscellaneous forms of insurance, including cancer insurance and unemployment insurance, disaster mortgage protection, health benefit discount programs, identify theft protection, roadside assistance, and memberships in various "clubs" that provided certain discount services (shopping, travel, entertainment, health).

3

ny-1011852

collected from the customers as an "administrative service fee," which is used to compensate the Debtors and also to offset the administrative expenses associated with enrolling customers in the various services. If the Debtors refund payment to a customer, they also refund the administrative service fee they had collected. On a monthly basis, the Debtors collect an average of $411,000 in administrative service fees through participation in the Services Payment Conduit Program. The Debtors do not collect or pay interest on the Conduit Payments between the time the Conduit Payments are collected and the time the sales payments are remitted to the third party service providers. As evidenced by their course of conduct, the parties intend for the Debtors to collect and hold the payments in a fiduciary capacity on behalf of the third party service provider.

    7.   In some instances, the Conduit Payments, for efficiency reasons, are initially deposited with the customer's mortgage payments into a single account. In this case, the Debtors' accounting system then automatically tags the Conduit Payments according to the services listed on each customer account and, within two (2) business days, transfers the payments into a different account for distribution purposes.[5] Other times, the Conduit Payments are sent to the Debtors separate from the customer's mortgage payment. However, in either event, the Conduit Payments at all times can be tracked as belonging to the third party service providers.

    8.   The Debtors generate checks to send to the third party service providers on the first of each month and typically mail the checks within three (3) business days. The Debtors typically collect and remit to third party service providers an average of $2.19 million in Conduit

---

[5] The administrative service fees are stripped out of the Conduit Payments before the payments are transferred to the distribution account. Therefore, the only funds that reside in the distribution account are those that will be remitted to the third party service provider at the end of the month.

4

ny-1011852

Payments on a monthly basis. The majority of these Conduit Payments are due to the Debtors by borrowers within the first ten (10) days of the month. Accordingly, the Debtors estimate that, as of the Petition Date, they have collected approximately $973,500 in Conduit Payments from customers that they have not yet forwarded to third party service providers.

9. It is critical to the Debtors' customer relations that they be able to transfer these Conduit Payments from customers to the third party service providers. If the prepetition amounts are not transferred to the third party service providers, these service providers may refuse to continue providing services to the Debtors' customers. Not only would interruption of service inconvenience customers and result in a significant loss of goodwill, but it may also undermine the value of the estate assets that the Debtors are hoping to sell. Furthermore, as set forth above, the Debtors merely act as a conduit; so, in effect, these amounts do not belong to the estates. Instead, these amounts belong either to the mortgage customers or to the third party service providers.

**RELIEF REQUESTED**

10. By this Motion and subject to any orders providing for the postpetition use of cash collateral or postpetition financing, the Debtors seek entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing the Debtors to honor all prepetition obligations to act as a payment conduit under the Services Payment Conduit Program, thereby ensuring customer satisfaction and loyalty and maintaining the Debtors' valuable businesses without interruption throughout the duration of these Chapter 11 cases. The Debtors also request that all banks and other financial institutions on which checks to their customers or to third party service providers are drawn be authorized and directed to receive, process, honor and pay all of those checks, whether presented before or after the Petition Date, upon the receipt by each such bank of notice of this authorization. In addition, the Debtors seek authority to issue replacement

checks postpetition on account of the Services Payment Conduit Program to replace any prepetition checks that may be dishonored or rejected.

11. The Debtors request that, to the extent necessary, the relief sought by this Motion apply to any future debtor (a "Future Debtor") in these jointly-administered cases. The Debtors propose that an affiliated debtor be deemed to be a Future Debtor upon the Court's entry of an order authorizing the joint administration of such Future Debtor's Chapter 11 case with the Chapter 11 cases of the Debtors.

**APPLICABLE AUTHORITY**

12. The relief requested in this Motion is justified under the Bankruptcy Code for a number of reasons as set forth below. First, honoring the Customer Obligations does not require the Debtors to use any property of the estates because under the Services Payment Conduit Program, the Debtors serve as mere conduits between their customers and third party service providers. The Conduit Payments never belonged to the Debtors and they are not now property of the estates. Therefore, the Debtors' request does not contemplate use of property of the estates and will not prejudice the interests of any other party in interest.

13. Second, the Debtors believe that they must honor legitimate claims arising from the Customer Obligations in order to maximize the value of the estates' assets prior to their disposition in these Chapter 11 cases.

14. Third, the Debtors' failure to pass along the Conduit Payments may give rise to claims with respect to these payment amounts.

I. **The Conduit Payments Are Funds Held In Trust For Third Parties, Not Estate Property, That May Be Transferred To The Third Party Service Providers**

15. Bankruptcy Code section 541(d) provides that a bankruptcy estate includes all property of the debtor "to the extent of the debtor's legal title to such property, but

6

not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. 541(d). Here, the Debtors function strictly as a pass-through entity with respect to the Services Payment Conduit Program, and thus the Conduit Payments received through such program are arguably held in trust for payment on behalf of their customers to third party service providers. See Official Comm. of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.), 997 F.2d 1039, 1061 (3d Cir. 1993) (holding that certain payments were held in trust and were not property of the estate where debtor was a "conduit" of certain funds collected from one source and intended for another); see also In re Chrysler LLC, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. May 20, 2009) (Docket Nos. 27, 1302) (debtors sought and obtained authority to, among other things, honor certain customer obligations arising out of various promotional allowances and dealer support programs where debtors acted merely as a pass through with respect to funds received from these programs).

        16.     The structure of the Services Payment Conduit Program clearly demonstrates that the Conduit Payments received by the Debtors are not property of the estates, but rather belong to the third party service providers.[6] For instance:

        (i)     the Services Payment Conduit Program provides that the Debtors' obligation to pass along payments to third party service providers arises only after they receive those payments from their customers; (i.e., the Debtors are not required to pay the third party providers if their customers fail to make their payments);

---

[6] Although not controlling in this District, the Columbia Gas court explained that funds are held in trust by a debtor if: (a) the chronology of payments provides that the debtors are only required to forward those funds to the third party that they have actually collected from customers; (b) there is no interest paid on the funds before they are passed along to the third party; and (c) the funds are segregated or, if they are co-mingled with the debtors' general revenue fund for efficiency purposes, they can be tracked through the debtors' accounting system. See Columbia Gas, 997 F.2d at 1060.

ny-1011852

    (ii) there is no interest paid on the Conduit Payments while they are held by the Debtors; and

    (iii) all parties understand that the payments belong to the third party service provider and that the Debtors hold such payments in a fiduciary capacity.

17. In addition, even though the third party service providers permit the Debtors to extract an "administrative service fee" from the payments, the Debtors cannot benefit from the portion of the payments that the third party expects to receive during the time when the Debtors hold these payments. Moreover, although the payments received by the Debtors are initially commingled with the mortgage payments for efficiency reasons, the Debtors' accounting system automatically recognizes those payments that are destined for a third party provider and sends them to a special purpose account within two (2) business days.

18. Therefore, the Conduit Payments are held in trust, and are not estate property, as defined by Bankruptcy Code section 541(d). See In re Columbia Gas at 1059-62 (finding that because "a trustee has no equitable interest in funds it holds in trust," the funds in question were not property of the estate under Bankruptcy Code section 541(d) and could be forwarded to the intended recipient postpetition). Consequently, the Debtors, as "conduits," should be permitted to remit the Conduit Payments to the third party service providers, or to refund them to customers if their service has been cancelled.

**II. Bankruptcy Code Section 507 Supports The Honoring Of Prepetition Customer Obligations**

19. If the prepetition Conduit Payments are found to be property of the estates, rather than to have been held in trust, then the Debtors' failure to transfer them from customers to third party service providers, or refund them if necessary, may give rise to countless claims by these parties that are likely entitled to priority treatment under Bankruptcy Code section 507(a)(7), which grants a seventh-level priority to

8

ny-1011852

>   allowed unsecured claims of individuals, to the extent of $2,600 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

11 U.S.C. § 507(a)(7). Courts have interpreted the term "deposit" to apply in a broad range of circumstances. See, e.g., Salazar v. McDonald (In re Salazar), 430 F.3d 992, 997 (9th Cir. 2005) (construing the word "deposit" for priority claim purposes to include up-front payment in full for construction of a swimming pool); In re WW Warehouse, Inc., 313 B.R. 588, 593 (Bankr. D. Del. 2004) (gift certificate holders were entitled to a priority claim under an expansive definition of "deposit" that "can mean either a partial payment or a full payment . . ."); In re Terra Distrib., Inc., 148 B.R. 598, 600-01 (Bankr. D. Idaho 1992) (full payment pending delivery of goods or services is a "deposit" sufficient to render such claim a priority). Money collected prepetition by the Debtors pursuant to the Services Payment Conduit program may fall within this priority category.

20. The Conduit Payments that the Debtors collected from customers for services provided by third parties could constitute a "deposit . . . of money in connection with the purchase . . . of property, or the purchase of services, for the personal, family, or household use of such individuals . . ." 11 U.S.C. § 507(a)(7). Unless the relief sought in this Motion is granted, such "deposits" may represent payment for goods or services "that were not delivered or provided." Thus, the Debtors' customers who participated in the Services Payment Conduit Program described above may be entitled to receive payment in full.

21. In the event that the Customer Obligations are not satisfied and the customers and third party service providers resort to asserting claims for the Conduit Payments, the Debtors would be required to spend time, expenses, and resources responding to such claims.

In light of the fact that honoring the Customer Obligations does not require an outlay of estate property, these expenses would create an unnecessary administrative burden on the estates. In addition, the Debtors believe that if they failed to honor the Customer Obligations, they would harm their customers and their businesses. Both results would be to the detriment of the Debtors' creditors and other parties in interest.

22.     In contrast, satisfaction of valid Customer Obligations as set forth herein, will (a) reduce the administrative expenses the Debtors would otherwise face if compelled to respond to customer claims and (b) maintain customer satisfaction and positive relations.

### III.    Payment Of The Customer Obligations Is Also Appropriate Under Bankruptcy Code Section 105 And Bankruptcy Rule 6003

23.     Under Bankruptcy Code section 105, this Court "may issue any order . . . that is necessary or appropriate to carry out the provisions of . . ." the Bankruptcy Code. 11 U.S.C. § 105(a). For the reasons set forth above, and in light of the need for the Debtors to preserve the value of their assets pending orderly liquidation through, among other things, the maintenance of the Customer Obligations, the relief requested herein is proper and should be granted.

24.     Similarly, Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm . . ." Fed. R. Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, No. 08-10632-BKC-PGH, 2008 Bankr. LEXIS 1466, at *4-5 (Bankr. S.D. Fla. Jan. 28, 2008) (granting interim relief to avoid immediate and irreparable harm to the estates). As described above, maintenance of the Services Payment Conduit Program is necessary to avoid loss of customer loyalty and good will. The Debtors request that they be permitted to honor the entire amount of Customer Obligations

ny-1011852

in order to maintain customer confidence in their loan-servicing platform, thus preserving its value in anticipation of sale.

25.     The Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court found that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'"  Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (citing N.Y. Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975)).  In addition, the "harm must be shown to be actual and imminent, not remote or speculative." Id. at 214; see also Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998).  Moreover, this District has found that immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990).

26.     The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm because the Customer Obligations maintain the Debtors' reputation and customer confidence.

27.     Courts in this District have authorized debtors to honor certain prepetition obligations to customers. See, e.g., In re Eastman Kodak Co., Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 15, 2012) (Docket No. 359); In re MSR Resort Golf Course LLC, Case No. 11-10372 (SHL) (Bankr. S.D.N.Y. Feb. 2, 2011) (Docket No. 21); In re Loehmann's Holdings, Inc., Case No. 10-16077 (REG) (Bankr. S.D.N.Y. Nov. 15, 2011) (Docket No. 31); In re Uno Restaurant Holdings Corp., Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Jan. 20, 2010) (Docket No. 32); In re EnviroSolutions of New York, LLC, Case No. 10-11236 (SMB) (Bankr.

S.D.N.Y. Apr. 1, 2010) (Docket No. 82); In re Neff Corp., Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 9, 2010) (Docket No. 135); In re Blockbuster Inc., Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Sept. 23, 2010) (Docket No. 39); In re Charter Communications, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Mar. 30, 2009) (Docket No. 62); In re Extended Stay Inc., Case No. 09-13764 (JMP) (Bankr. S.D.N.Y. July 17, 2009) (Docket No. 178); In re Lear Corp., Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 31, 2009) (Docket No. 253); In re Escada (USA) Inc., Case No. 09-15008 (SMB) (Bankr. S.D.N.Y. Sept. 14, 2009) (Docket No. 64); In re The Reader's Digest Association, Inc., Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Sept. 17, 2009) (Docket No. 96); In re Citadel Broadcasting Corp., Case No. 09-17442 (BRL) (Bankr. S.D.N.Y. Dec. 22, 2009) (Docket No. 25).

28. Accordingly, the Debtors submit that sufficient cause exists for the Court to authorize payments of the Debtors' Customer Obligations under the Services Payment Conduit Program.

29. Nothing herein shall affect the Debtors' rights under 11 U.S.C. § 365 to assume or reject any executory contract or unexpired lease.

30. Bankruptcy Rule 6003 generally precludes the Court from authorizing certain relief until twenty-one days after the petition is filed, except to the extent necessary to prevent "immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors submit that, for the reasons set forth above, the relief requested in this Motion is necessary to avoid immediate and irreparable harm and, accordingly, Bankruptcy Rule 6003 has been satisfied.

31. To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h).

**NOTICE**

32. Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Southern District of New York; (b) the office of the United States Attorney General; (c) the office of the New York Attorney General; (d) the office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) each of the Debtors' prepetition lenders, or their agents, if applicable; (h) each of the indenture trustees for the Debtors' outstanding notes issuances; (i) Ally Financial Inc. and its counsel; (j) counsel to the administrative agent for the Debtors' proposed providers of debtor in possession financing; (k) Nationstar Mortgage LLC and its counsel; and (l) the parties included on the Debtors' list of fifty (50) largest unsecured creditors.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached hereto as <u>Exhibit A</u> granting the relief requested in the Motion; and (ii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated: May 14, 2012
   New York, New York

                     */s/* Larren M. Nashelsky
                     Larren M. Nashelsky
                     Gary S. Lee
                     Lorenzo Marinuzzi
                     MORRISON & FOERSTER LLP
                     1290 Avenue of the Americas
                     New York, New York 10104
                     Telephone: (212) 468-8000
                     Facsimile: (212) 468-7900

                     *Proposed Counsel for the Debtors and Debtors in Possession*

ny-1011852

# **EXHIBIT A**

ny-1011856

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------------
                                                               )
In re:                                                         )      Case No. 12-
                                                               )
RESIDENTIAL CAPITAL, LLC, <u>et al</u>.,                       )      Chapter 11
                                                               )
                                    Debtors.                   )      Jointly Administered
                                                               )
---------------------------------------------------------------

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 507 AND 541 AND**
**BANKRUPTCY RULE 6003 AUTHORIZING DEBTORS TO HONOR CERTAIN**
**<u>PREPETITION OBLIGATIONS TO CUSTOMERS</u>**

Upon the motion (the "Motion")[1] of the Debtors for entry of an order, under Bankruptcy Code sections 105, 507 and 541 and Bankruptcy Rule 6003, authorizing, but not directing, the Debtors to honor all prepetition obligations to act as a payment conduit under the Services Payment Conduit Program; and upon the Whitlinger Affidavit; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion. Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

ny-1011856

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The Debtors are authorized, but not directed, to honor those prepetition Customer Obligations related to the transfer of Conduit Payments paid by customers for services provided by third party service providers, in the same manner as such obligations were honored and such Customer Obligations were implemented before the commencement of these Chapter 11 cases, subject to any orders providing for the postpetition use of cash collateral or postpetition financing.

3. All applicable banks and other financial institutions shall be, and hereby are, authorized and directed to receive, process, honor and pay all checks on account of Conduit Payments, whether presented before or after the Petition Date; provided, however, that sufficient funds are in deposit in the accounts. The Debtors shall be, and hereby are, authorized to issue replacement checks postpetition on account of the Services Payment Conduit Program to replace any prepetition checks that may be dishonored or rejected.

4. The Debtors are authorized and empowered, but not directed, to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

5. Nothing herein shall be deemed to limit the rights of the Debtors to operate their businesses in the ordinary course, and no subsequent order shall be required to confirm such rights.

6. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim against the Debtors or an approval or assumption of any contract

or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

7. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is it intended to create, any rights in favor of, or to enhance the status of any claim held by, any entity.

8. Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral order or debtor in possession financing order entered in these Chapter 11 proceedings.

9. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

10. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

11. Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among Ally Financial Inc. ("AFI"), Ally Bank, Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February

10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates (excluding ResCap and its subsidiaries).

12. The relief granted by this order shall apply to any Future Debtor in these jointly-administered cases.

13. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:   New York, New York
         _____, 2012

                                                        _____
UNITED STATES BANKRUPTCY JUDGE