MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------
| | ) | |
| In re: | ) | Case No. 12- |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Joint Administration Pending |
| | ) | |
-------------------------------------------------------------------------

**DEBTORS' APPLICATION FOR AN ORDER APPOINTING KURTZMAN CARSON**
**CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT FOR**
**THE DEBTORS PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a),**
**S.D.N.Y. LBR 5075-1 AND GENERAL ORDER M-409**

The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors")[1] hereby move for entry of an order, substantially in the form of Exhibit A hereto

(the "Retention Order") pursuant to section 156(c) of title 28 of the United States Code and

section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy

Code"),  appointing Kurtzman Carson Consultants LLC ("KCC") as the claims and noticing

agent (the "Claims and Noticing Agent") in the Debtors' Chapter 11 cases (the "Section 156(c)

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit
1 to the Whitlinger Affidavit (defined below).  Additional subsidiaries and affiliates of the Debtors may file
Chapter 11 petitions on a rolling basis.  As used herein, the term "Debtors" includes any such entities.

Application").[2]  In support of the Section 156(c) Application, the Debtors rely upon and

incorporate by reference the Affidavit of James Whitlinger, Chief Financial Officer of

Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with

the Court concurrently herewith (the "Whitlinger Affidavit") and the Declaration of Albert Kass,

Vice President of Corporate Restructuring Services of KCC, in Support of the Section 156(c)

Application, filed with the Court concurrently herewith (the "Kass Declaration") and attached

hereto as Exhibit B.  In further support of the Section 156(c) Application, the Debtors, by and

through their undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and

1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under

28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.     On the date hereof (the "Petition Date"), each of the Debtors filed a

voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors

are managing and operating their businesses as debtors in possession pursuant to Bankruptcy

Code sections 1107(a) and 1108.  No trustee, examiner or statutory creditors' committee has

been appointed in these Chapter 11 cases.

3.     The Debtors are a leading residential real estate finance company

indirectly owned by Ally Financial Inc., which is not a Debtor.  The Debtors and their non-

debtor affiliates operate the fifth largest servicing business and the tenth largest mortgage

---

[2]     Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
requested in this Section 156(c) Application may refer to http://www.kccllc.net/rescap for additional
information.

origination business in the United States.  A more detailed description of the Debtors, including

their business operations, their capital and debt structure, and the events leading to the filing of

these bankruptcy cases, is set forth in the Whitlinger Affidavit.

## RELIEF REQUESTED

4.      This Section 156(c) Application is made pursuant to 28 U.S.C. § 156(c),

section 105(a) of the Bankruptcy Code, S.D.N.Y. LBR 5075-1 and General Order M-409 for an

order appointing the Claims and Noticing Agent to act as the claims and noticing agent in order

to assume full responsibility for the distribution of notices and the maintenance, processing and

docketing of proofs of claim filed in the Debtors' Chapter 11 cases.  The Debtors' selection of

the Claims and Noticing Agent to act as the claims and noticing agent satisfies the Court's

Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c), in that

the Debtors have obtained and reviewed engagement proposals from at least two (2) other court-

approved claims and noticing agents to ensure selection through a competitive process.

Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that

the Claims and Noticing Agent's rates are competitive and reasonable given the Claims and

Noticing Agent's quality of services, efficiency, expertise and familiarity with the Debtors'

business operations.  The terms of retention are set forth in the KCC Agreement for Services

dated February 21, 2012 annexed hereto as Exhibit C (the "Engagement Agreement"); provided,

however, that the Claims and Noticing Agent is seeking approval solely of the terms and

provisions as set forth in this Section 156(c) Application and the proposed order attached hereto.

5.      The Debtors request that, to the extent necessary, the relief sought by this

Section 156(c) Application apply to any future debtor (a "Future Debtor") in these jointly-

administered cases.  The Debtors propose that an affiliated debtor be deemed to be a Future

Debtor upon the Court's entry of an order authorizing the joint administration of such Future Debtor's Chapter 11 case with the Chapter 11 cases of the Debtors.

6.      Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be approximately 3 million entities to be noticed. In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtors' estates and their creditors.

7.      As set forth in the Kass Declaration, the Claims and Noticing Agent has acted as the claims and noticing agent in numerous cases of comparable size, including several cases currently pending in the United States Bankruptcy Court for this district. Specifically, KCC is and has in the past provided identical or substantially similar services in other Chapter 11 cases in this district, including In re Jobson, Case No. 12-10434 (Bankr. S.D.N.Y. Feb. 23, 2012) (Docket No. 28); In re The Connaught Group, Case No. 12-10512 (Bankr. S.D.N.Y. Feb. 12, 2012) (Docket No. 46); In re Grubb & Ellis, Case No. 12-10685 (Bankr. S.D.N.Y. Feb. 23, 2012) (Docket No. 33); In re Eastman Kodak Company, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Jan. 19, 2012) (Docket No. 47); In re Hostess Brands, Inc., Case No. 12-22052 (Bankr. S.D.N.Y. Jan. 27, 2012) (Docket No. 201); In re AGH Liquidating, LLC, Case No. 11-14220 (ALG) (Bankr. S.D.N.Y. Sept. 19, 2011) (Docket No. 75); In re Getty Petroleum Marketing Inc., Case No. 11-15606 (SCC) (Bankr. S.D.N.Y. Dec. 22, 2011) (Docket No. 92); In re Marco Polo Seatrade B.V., Case No. 11-13634 (JMP) (Bankr. S.D.N.Y. Sept. 15, 2011) (Docket No. 139); In re MSR Resort Golf Course LLC, Case No. 11-10372 (SHL) (Bankr. S.D.N.Y. Feb. 3, 2011) (Docket No. 30); In re Ambac Financial Group, Inc., Case No. 10-15973 (SCC) (Bankr. S.D.N.Y. Nov. 9, 2010) (Docket No. 14); In re BB Liquidating Inc., Case No. 10-14997 (BRL) (Bankr.

S.D.N.Y. Sept. 23, 2010) (Docket No. 47); <u>In re EnviroSolutions of New York, LLC</u>, Case No. 10-11236 (SMB) (Bankr. S.D.N.Y. Mar. 12, 2010) (Docket No. 33); <u>In re Loehmann's Holdings, Inc.</u>, Case No. 10-16077 (REG) (Bankr. S.D.N.Y. Nov. 15, 2010) (Docket No. 36); <u>In re Truvo USA LLC</u>, Case No. 10-13513 (AJG) (Bankr. S.D.N.Y. July 1, 2010) (Docket No. 36).[3]

       8.      By appointing the Claims and Noticing Agent as the claims and noticing agent in these Chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and the clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

       9.      This Section 156(c) Application pertains only to the work to be performed by the Claims and Noticing Agent under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and S.D.N.Y. LBR 5075-1, and any work to be performed by the Claims and Noticing Agent outside of this scope is not covered by the Section 156(c) Application or by any Order granting approval hereof.  Specifically, the Claims and Noticing Agent will perform the following tasks in its role as claims and noticing agent (the "Claims and Noticing Services"), as well as all quality control relating thereto:

      (a)      Prepare and serve required notices and documents in the Chapter 11 cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the Chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi)

---

[3]    Because of the voluminous nature of the orders cited herein, they are not attached to the Section 156(c) Application.  Copies of these orders, however, are available on request of the Debtors' proposed counsel.

notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 cases.

(b)    Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)    Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d)    Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)    For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)    Process all proofs of claim received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)      Maintain the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(i)      Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j)      Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)      Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Claims and Noticing Agent, not less than weekly;

(l)      Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

(m)      Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

(n)      Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtors or the Court, including through the use of a case website and/or call center.

(o)      If the case is converted to Chapter 7, contact the Clerk's Office within three (3) days of the notice to Claims and Noticing Agent of entry of the order converting the case;

(p)      Thirty (30) days prior to the close of these cases, to the extent practicable, request that the Debtors submit to the Court a

proposed Order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these cases;

(q)     Within seven (7) days of notice to Claims and Noticing Agent of entry of an order closing the Chapter 11 cases, provide to the Court the final version of the claims register as of the date immediately before the close of the Chapter 11 cases; and

(r)     At the close of these cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's Office.

10.     The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by the Claims and Noticing Agent.

11.     The Claims and Noticing Agent shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases.

12.     The Debtors respectfully request that the undisputed fees and expenses incurred by the Claims and Noticing Agent in the performance of the above services be treated as administrative expenses of the Debtors' Chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.  The Claims and Noticing Agent agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the Southern District of New York, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly

invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

13.     Prior to the Petition Date, the Debtors provided the Claims and Noticing Agent a retainer in the amount of $100,000.  The Claims and Noticing Agent seeks to first apply the retainer to all prepetition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during the Chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

14.     In connection with its retention as claims and noticing agent, the Claims and Noticing Agent represents in the Kass Declaration, among other things, that:

> (a)     The Claims and Noticing Agent will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Chapter 11 cases;

> (b)     By accepting employment in the Chapter 11 cases, the Claims and Noticing Agent waives any rights to receive compensation from the United States government in connection with the Debtors' Chapter 11 cases;

> (c)     In its capacity as the claims and noticing agent in the Chapter 11 cases, the Claims and Noticing Agent will not be an agent of the United States and will not act on behalf of the United States; and

> (d)     It is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

15.     To the extent that there is any inconsistency between the Section 156(c) Application, the Retention Order and the Engagement Agreement, the Retention Order shall govern.

16.     This Section 156(c) Application complies with the Protocol for the
Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) and conforms to the
standard Section 156(c) Application in use in this Court.  The Debtors have provided copies of
this Section 156(c) Application to: (a) the Clerk of the Court; (b) the Office of the United States
Trustee for the Southern District of New York; (c) the office of the United States Attorney
General; (d) the office of the New York Attorney General; (e) the office of the United States
Attorney for the Southern District of New York; (f) the Internal Revenue Service; (g) the
Securities and Exchange Commission; (h) each of the Debtors' prepetition lenders, or their
agents, if applicable; (i) each of the indenture trustees for the Debtors' outstanding notes
issuances; (j) Ally Financial Inc. and its counsel; (k) counsel to the administrative agent for the
Debtors' proposed providers of debtor in possession financing; (l) Nationstar Mortgage LLC and
its counsel; and (m) the parties included on the Debtors' list of fifty (50) largest unsecured
creditors.

[concluded on following page]

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached hereto as <u>Exhibit A</u> granting the relief requested in the Section 156(c) Application; and (ii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated:  May 14, 2012
          New York, New York


<div style="margin-left:50%;">

_/s/_ Larren M. Nashelsky

Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

_Proposed Counsel for the Debtors and_
_Debtors in Possession_

</div>

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------
                                                  )
In re:                                            )        Case No. 12-
                                                  )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,          )        Chapter 11
                                                  )
                               Debtors.           )        Jointly Administered
                                                  )
-------------------------------------------------------------------------------

**ORDER AUTHORIZING RETENTION AND APPOINTMENT OF KURTZMAN**
**CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT UNDER**
**28 U.S.C. § 156(c), 11 U.S.C. § 105(a), S.D.N.Y. LBR 5075-1 AND**
**<u>GENERAL ORDER M-409 AND GRANTING RELATED RELIEF</u>**

Upon the application (the "Application")[1] of Residential Capital, LLC, and certain

of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of an

order authorizing the retention and appointment of Kurtzman Carson Consultants LLC ("KCC")

as the Claims and Noticing Agent (the "Claims and Noticing Agent"), under 28 U.S.C. §156(c),

section 105(a) of the Bankruptcy Code, S.D.N.Y. LBR 5075-1 and General Order M-409 to,

among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain,

docket and otherwise administer the proofs of claim filed in the Debtors' Chapter 11 cases, and

(iii) provide such other administrative services – as required by the Debtors – that would fall

within the purview of services to be provided by the Clerk's Office; and upon the Whitlinger

Affidavit and the Kass Declaration submitted in support of the Application; and the Debtors

having estimated that there are in excess of 1,000 creditors in these Chapter 11 cases, many of

which are expected to file proofs of claim, and it appearing that the receiving, docketing and

maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk;

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
       Application.  Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11
       cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense,

outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket,

maintain, photocopy and transmit proofs of claim; and the Court being satisfied that the Claims

and Noticing Agent has the capability and experience to provide such services and that the

Claims and Noticing Agent does not hold an interest adverse to the Debtors or the estates

respecting the matters upon which it is to be engaged; and good and sufficient notice of the

Application having been given; and no other or further notice being required; and it appearing

that the employment of the Claims and Noticing Agent is in the best interests of the Debtors, the

estates and creditors; and sufficient cause appearing therefor; it is hereby

> **ORDERED,** that, notwithstanding the terms of the Engagement Agreement

attached to the Application, the Application is approved solely as set forth in this Order; and it is

further

> **ORDERED,** that the Debtors are authorized to retain the Claims and Noticing

Agent *nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and the

Claims and Noticing Agent is authorized and directed to perform noticing services and to receive,

maintain, record and otherwise administer the proofs of claim filed in these Chapter 11 cases,

and all related tasks, all as described in the Application (the "Claims and Noticing Services");

and it is further

> **ORDERED,** that the Claims and Noticing Agent shall serve as the custodian of

court records and shall be designated as the authorized repository for all proofs of claim filed in

these Chapter 11 cases and is authorized and directed to maintain official claims registers for

each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request

of the Clerk; and it is further

2

**ORDERED,** that the Claims and Noticing Agent is authorized and directed to obtain a post office box or address for the receipt of proofs of claim; and it is further

**ORDERED,** that the Claims and Noticing Agent is authorized to take such other action to comply with all duties set forth in the Application; and it is further

**ORDERED,** that the Debtors are authorized to compensate the Claims and Noticing Agent in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by the Claims and Noticing Agent and the rates charged for each, and to reimburse the Claims and Noticing Agent for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for the Claims and Noticing Agent to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses; and it is further

**ORDERED,** that the Claims and Noticing Agent shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the Office of the United States Trustee for the Southern District of New York, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices; and it is further

**ORDERED,** that the parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices, and that the parties may seek resolution of the matter from the Court if resolution is not achieved; and it is further

3

**ORDERED**, that pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of the Claims and Noticing Agent under this Order shall be an administrative expense of the Debtors' estates; and it is further

**ORDERED**, that the Claims and Noticing Agent may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, the Claims and Noticing Agent may hold its retainer under the Engagement Agreement during the Chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement; and it is further

**ORDERED**, that the Debtors shall indemnify the Claims and Noticing Agent under the terms of the Engagement Agreement; and it is further

**ORDERED**, that all requests by the Claims and Noticing Agent for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, provided however, that in no event shall the Claims and Noticing Agent be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and it is further

**ORDERED**, that in the event that the Claims and Noticing Agent seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in the Claims and

4

Noticing Agent's own applications, both interim and final, but determined by this Court after

notice and a hearing; and it is further

ORDERED, that in the event the Claims and Noticing Agent is unable to provide

the services set out in this order, the Claims and Noticing Agent will immediately notify the

Clerk and Debtors' attorney and cause to have all original proofs of claim and computer

information turned over to another claims and noticing agent with the advice and consent of the

Clerk and Debtors' attorney; and it is further

ORDERED, that the Debtors may submit a separate retention application,

pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by the

Claims and Noticing Agent but is not specifically authorized by this Order; and it is further

ORDERED, that the Debtors and the Claims and Noticing Agent are authorized

to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance

with the Application; and it is further

ORDERED, that the Claims and Noticing Agent shall not cease providing claims

processing services during the Chapter 11 case(s) for any reason, including nonpayment, without

an order of the Court; and it is further

ORDERED, that in the event of any inconsistency between the Engagement

Agreement, the Application and the Order, the Order shall govern; and it is further

ORDERED, that notwithstanding anything herein to the contrary, this Order shall

not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the

Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and

among Ally Financial Inc. ("AFI"), Ally Bank, Residential Capital, LLC ("ResCap"), GMAC

Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit

5

Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for

the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money

Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated

February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective

subsidiaries and affiliates (excluding ResCap and its subsidiaries); and it is further

**ORDERED**, that the relief granted by this order shall apply to any Future Debtor

in these jointly-administered cases; and it is further

**ORDERED**, that, notwithstanding any term in the Engagement Agreement to the

contrary, this Court shall retain jurisdiction with respect to all matters relating to the

interpretation or implementation of this Order.

Dated:   New York, New York
_____, 2012


_____
UNITED STATES BANKRUPTCY JUDGE

6

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------
|  |  )  |  |
|---|---|---|
| In re: | ) | Case No. 12- |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Joint Administration Pending |
-------------------------------------------------------------------  )

**DECLARATION OF ALBERT KASS IN SUPPORT OF DEBTORS' APPLICATION**
**FOR AN ORDER APPOINTING KURTZMAN CARSON CONSULTANTS LLC AS**
**CLAIMS AND NOTICING AGENT FOR THE DEBTORS PURSUANT TO 28 U.S.C.**
**§ 156(c), 11 U.S.C. § 105(a), S.D.N.Y. LBR 5075-1 AND GENERAL ORDER M-409**

I, Albert Kass, being duly sworn, deposes and says:

1.      I am the Vice President of Corporate Restructuring Services of Kurtzman

Carson Consultants LLC ("KCC"), which maintains an office at 2335 Alaska Avenue, El

Segundo, California and I am authorized to submit this declaration ("Declaration") on behalf of

KCC.  I submit this Declaration in support of the Debtors' Application for an Order Appointing

Kurtzman Carson Consultants LLC as Claims and Noticing Agent for the Debtors Pursuant to 28

U.S.C. § 156(c), 11 U.S.C. § 105(a), S.D.N.Y. LBR 5075-1 and General Order M-409 (the

"Section 156(c) Application") of the Court and the debtors in the above-captioned cases (the

"Debtors").  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2.      KCC specializes in providing consulting and data processing services to

Chapter 11 debtors in connection with, among other services, claims administration,

reconciliation, and negotiations and solicitation of votes to accept or reject plans of

reorganization.  KCC also specializes and has expertise in serving as outside claims agent to the

United States Bankruptcy Court with respect to all aspects of claims administration, including

docketing and storage of claims, maintenance of claims registers, and related noticing services.

KCC has provided identical or substantially similar services in other Chapter 11 cases in this district, including In re Jobson, Case No. 12-10434 (Bankr. S.D.N.Y. Feb. 23, 2012) (Docket No. 28); In re The Connaught Group, Case No. 12-10512 (Bankr. S.D.N.Y. Feb. 12, 2012) (Docket No. 46); In re Grubb & Ellis, Case No. 12-10685 (Bankr. S.D.N.Y. Feb. 23, 2012) (Docket No. 33); In re Eastman Kodak Company, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Jan. 19, 2012) (Docket No. 47); In re Hostess Brands, Inc., Case No. 12-22052 (Bankr. S.D.N.Y. Jan. 27, 2012) (Docket No. 201); In re AGH Liquidating, LLC, Case No. 11-14220 (ALG) (Bankr. S.D.N.Y. Sept. 19, 2011) (Docket No. 75); In re Getty Petroleum Marketing Inc., Case No. 11-15606 (SCC) (Bankr. S.D.N.Y. Dec. 22, 2011) (Docket No. 92); In re Marco Polo Seatrade B.V., Case No. 11-13634 (JMP) (Bankr. S.D.N.Y. Sept. 15, 2011) (Docket No. 139); In re MSR Resort Golf Course LLC, Case No. 11-10372 (SHL) (Bankr. S.D.N.Y. Feb. 3, 2011) (Docket No. 30); In re Ambac Financial Group, Inc., Case No. 10-15973 (SCC) (Bankr. S.D.N.Y. Nov. 9, 2010) (Docket No. 14); In re BB Liquidating Inc., Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Sept. 23, 2010) (Docket No. 47); In re EnviroSolutions of New York, LLC, Case No. 10-11236 (SMB) (Bankr. S.D.N.Y. Mar. 12, 2010) (Docket No. 33); In re Loehmann's Holdings, Inc., Case No. 10-16077 (REG) (Bankr. S.D.N.Y. Nov. 15, 2010) (Docket No. 36); In re Truvo USA LLC, Case No. 10-13513 (AJG) (Bankr. S.D.N.Y. July 1, 2010) (Docket No. 36).

　　　　　3.　　　　KCC is well qualified to provide the Debtors with experienced services as claims and noticing agent in connection with these Chapter 11 cases. KCC is fully equipped to handle the volume involved in properly sending the required notices to creditors and other interested parties and administering claims in these Chapter 11 cases. KCC will comply with all requests of the Office of the Clerk of the Court (the "Clerk's Office") and the guidelines

2

promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C.

§ 156(c).

        4.      Pursuant to the KCC Agreement for Services dated February 21, 2012, a

copy of which is attached to the Section 156(c) Application as <u>Exhibit C</u> (the "Engagement

Agreement"), KCC as the Claims and Noticing Agent will perform the following tasks in its role

as claims and noticing agent (the "Claims and Noticing Services"), as well as all quality control

relating thereto:

      (a)      Prepare and serve required notices and documents in the Chapter 11 cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the Chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 cases.

      (b)      Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

      (c)      Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

3

(d)    Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)    For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)    Process all proofs of claim received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)    Maintain the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(i)    Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j)    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

4

(k)   Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Claims and Noticing Agent, not less than weekly;

(l)   Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

(m)   Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

(n)   Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtors or the Court, including through the use of a case website and/or call center.

(o)   If the case is converted to Chapter 7, contact the Clerk's Office within three (3) days of the notice to Claims and Noticing Agent of entry of the order converting the case;

(p)   Thirty (30) days prior to the close of these cases, to the extent practicable, request that the Debtors submit to the Court a proposed Order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these cases;

(q)   Within seven (7) days of notice to Claims and Noticing Agent of entry of an order closing the Chapter 11 cases, provide to the Court the final version of the claims register as of the date immediately before the close of the Chapter 11 cases; and

(r)   At the close of these cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's Office.

5.    To the best of my knowledge and belief, insofar as I have been able to

ascertain after research and inquiry and except as disclosed herein, I believe that the members

5

and employees of KCC:  (a) do not have any material adverse connection with the Debtors, the

Debtors' creditors or any other party in interest or its respective attorneys and accountants, the

United States Trustee, or any person employed in the Office of the United States Trustee for the

Southern District of New York with respect to the matters for which KCC will be employed; and

(b) do not hold or represent an interest materially adverse to the Debtors' estates.

6.      The Debtors have many creditors, and accordingly, KCC may have

rendered and may continue to render services to certain of these creditors in matters unrelated to

these cases, either as vendors or in cases where KCC serves in a neutral capacity as a bankruptcy

claims and noticing agent or class action settlement administrator.  KCC has not and will not

represent the separate interests of any such creditor in these cases.  To the best of my knowledge,

neither KCC, nor any of its professional personnel, have any relationship with the Debtors that

would impair KCC's ability to serve as claims and noticing agent.  KCC has working

relationships with certain of the professionals retained by the Debtors and other parties herein,

but such relationships are completely unrelated to the Debtors' cases.  In addition, KCC

personnel may have relationships with some of the Debtors' creditors.  Such relationships are,

however, of a personal, financial nature and are wholly unrelated to the Debtors' cases.  KCC

has and will continue to represent clients in matters unrelated to the Debtors' cases and has had

and will continue to have relationships in the ordinary course of its business with certain vendors

and professionals in connection with matters unrelated to these cases.

7.      KCC is an indirect subsidiary of Computershare Limited

("Computershare").  Computershare is a financial services and technologies provider for the

global securities industry.  Within the Computershare corporate structure, KCC operates as a

separate, segregated business unit.  As such, any relationships that Computershare and its

6

affiliates maintain do not create an interest of KCC that would be materially adverse to the

Debtors' estates or any class of creditors or equity security holders.

8.      Although the Debtors do not propose to retain KCC under section 327 of

the Bankruptcy Code, to the best of my knowledge and belief, insofar as I have been able to

ascertain after research and inquiry, I believe that KCC is a "disinterested person" as that term is

defined in section 101(14) of the Bankruptcy Code, as qualified by section 1107(b) of the

Bankruptcy Code, in that its members and employees:

    (a)      Are not creditors, equity security holders or insiders of the Debtors;

    (b)      Are not and were not, within 2 years before the date of the fling of
the petition, a director, officer, or employee of the Debtors; and

    (c)      Do not have an interest adverse to the interests of the Debtors'
estates or of any class of creditors or equity security holders, by
reason of any direct or indirect relationship to, connection with, or
interest in, the Debtors, or for any other reason.

9.      On behalf of KCC, I hereby represent that

    (a)      KCC will not consider itself employed by the United States
government (the "Government") and will not seek any
compensation from the Government in its capacity as the Claims
and Noticing Agent in this Chapter 11 case;

    (b)      By accepting employment in these Chapter 11 cases, KCC waives
any right to receive compensation from the Government in
connection with this Chapter 11 case;

    (c)      In its capacity as claims and noticing agent, KCC is not an agent of
the Government and is not acting on behalf of the Government;

    (d)      KCC will not intentionally misrepresent any fact to the public; and

    (e)      KCC will not employ any past or present employees of the Debtors
in connection with its work as the Claims and Noticing Agent in
these Chapter 11 cases.

10.      As compensation for its services, KCC will charge the rates set forth in the

Engagement Agreement annexed as <u>Exhibit C</u> to the Section 156(c) Application.  These rates are

<div align="center">7</div>

comparable to those charged by other providers of similar services and they are at least as

favorable as the rates KCC charges to other Chapter 11 debtors for similar services.

       11.     KCC will comply with all requests of the Clerk's Office and follow the

guidelines promulgated by the Judicial Conference of the United States for the implementation

of 28 U.S.C. § 156(c).

       12.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of May 2012.

                               Albert Kass
                               Vice President of Corporate Restructuring
                               Services
                               Kurtzman Carson Consultants LLC
                               2335 Alaska Avenue
                               El Segundo, CA 90245
                               T: 310-776-7334
                               F: 310-776-8334

ny-1011810

## EXHIBIT C

## KCC Engagement Agreement



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 21st day of February, 2012, between Residential Capital, LLC (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### Terms and Conditions

I.      SERVICES

A.      KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.      Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part. Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders. Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.      The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement. The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

Kurtzman Carson Consultants LLC  599 Lexington Avenue, 39th Floor, New York, New York 10022  PHONE 917-281-4800  FAX 917-281-4900  kccllc.com



# KCC AGREEMENT FOR SERVICES

information were provided by the Company. The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

II.    PRICES, CHARGES AND PAYMENT

A.    KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect as of the date of this Agreement in accordance with the KCC Fee Structure. KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.    The Company agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with services provided under this Agreement, including but not limited to, transportation, lodging, and meals.

C.    In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.    Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.    KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. However, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company. The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice. Late charges shall not accrue on any amounts in dispute. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.    In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with

2



# KCC AGREEMENT FOR SERVICES

the Bankruptcy Court seeking entry of an order pursuant to Section 156(c) approving this Agreement in its entirety (the "Section 156(c) Order"). The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G.      To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $100,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## III.    RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

## IV.    NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

## V.    CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

3



## KCC AGREEMENT FOR SERVICES

VI.    SUSPENSION OF SERVICE AND TERMINATION

A.    This Agreement shall remain in force until terminated or suspended by either party
(i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice
for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or
willful misconduct of KCC that causes serious and material harm to the Company's
reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay
KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of
invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes
it will not be paid.

B.    In the event that this contract is terminated, regardless of the reason for such termination,
KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy
Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all
necessary staff, services and assistance required for an orderly transfer.  The Company agrees to
pay for such services in accordance with KCC's then existing prices for such services.  If such
termination occurs following entry of the Section 156(c) Order, the Company shall immediately
seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges
KCC from service and responsibility under Section 156(c) and this Agreement.

C.    Any data, programs, storage media or other materials furnished by the Company to KCC
or received by KCC in connection with the services provided under the terms of this Agreement
may be retained by KCC until the services provided are paid for, or until this Agreement is
terminated with the services paid in full.  The Company shall remain liable for all fees and
expenses imposed under this Agreement as a result of data or physical media maintained or stored
by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.
The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition
of data or media.  If the Company has not utilized KCC's services under this Agreement for a
period of at least ninety (90) days,  KCC may dispose of the data or media, and be reimbursed by
the Company for the expense of such disposition, after giving the Company thirty (30) days'
notice.  Notwithstanding any term herein to the contrary, following entry of the Section 156(c)
Order, the disposition of any data or media by KCC shall be in accordance with any applicable
instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of
the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC,
therefore, reserves the right to make changes in operating procedure, operating systems,
programming languages, general purpose library programs, application programs, time period of
accessibility, types of terminal and other equipment and the KCC data center serving the
Company, so long as any such changes do not materially interfere with ongoing services provided
to the Company in connection with the Company's chapter 11 case.

Kurtzman Carson Consultants LLC   599 Lexington Avenue, 39th Floor, New York, New York 10022  PHONE 917-281-4800  FAX 917-281-4900  kccllc.com



# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial
institutions in the name of and as agent for the Company. To the extent that certain financial
products are provided to the Company pursuant to KCC's agreement with financial institutions,
KCC may receive compensation from such financial institutions for the services KCC provides
pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC, its affiliates, members, directors, officers,
employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties")
harmless, to the fullest extent permitted by applicable law, from and against any and all losses,
claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and
expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance
under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross
negligence or willful misconduct. Without limiting the generality of the foregoing, Losses
include any liabilities resulting from claims by any third-parties against any Indemnified Party.
The Company shall notify KCC in writing promptly upon the assertion, threat or commencement
of any claim, action, investigation or proceeding that the Company becomes aware of with
respect to the services provided by KCC under this Agreement. The Company's indemnification
obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim
through or under the Company for any Losses of any kind, even if KCC has been advised of the
possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful
misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the
portion of the particular work which gave rise to the alleged Loss. In no event shall KCC's
liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement
exceed the total amount billed to the Company and actually paid to KCC for the services
contemplated under the Agreement. In no event shall KCC be liable for any indirect, special or
consequential damages such as loss of anticipated profits or other economic loss in connection
with or arising out of the services provided for in this Agreement.

C.    The Company is responsible for the accuracy of the programs, data and information it or
any Company Party submits for processing to KCC and for the output of such information. KCC
does not verify information provided by the Company and, with respect to the preparation of
schedules and statements, all decisions are at the sole discretion and direction of the Company.
The Company reviews and approves all schedules and statements filed on behalf of, or by, the
Company; KCC bears no responsibility for the accuracy or contents therein. The Company
agrees to initiate and maintain backup files that would allow the Company to regenerate or
duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no
representations or warranties, express or implied, including, but not limited to, any implied or
express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality,
productiveness or capacity.

5



# KCC AGREEMENT FOR SERVICES

X.    FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI.    INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC
2335 Alaska Ave.
El Segundo, CA 90245
Attn: Drake D. Foster
Tel: (310) 823-9000
Fax: (310) 823-9133
E-Mail: dfoster@kccllc.com

Residential Capital, LLC
1100 Virginia Drive
Fort Washington, PA 19034
Attn: Tammy Hamzehpour
Tel: (215) 682-1307
Fax:

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement. The Company represents that it has the authority to enter into this

6



## KCC AGREEMENT FOR SERVICES

Agreement, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

XVII.    ARBITRATION

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in Los Angeles County, State of California.

XVIII. ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]

7



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: _Aaron HIcass_    DATE: 3/6/2012

TITLE: VP, Corporate Restructuring

Residential Capital, LLC

BY: Jim Whitlinger    DATE: 3/6/12

TITLE: Chief Financial Officer

Kurtzman Carson Consultants LLC   599 Lexington Avenue, 39th Floor, New York, New York 10022   PHONE 917-281-4800   FAX 917-281-4900   kccllc.com



## KCC CORPORATE RESTRUCTURING
## FEE STRUCTURE

### FEES

#### Consulting Services & Rates[1]

| | |
|---|---|
| Clerical | $38.25 - $55.25 per hour |
| Project Specialist | $68.00 - $119.00 per hour |
| Consultant | $150.00 - $223.00 per hour |
| Senior Consultant | $232.00 - $250.25 per hour |
| Senior Managing Consultant | $268.50 - $295.75 per hour |
| Technology/Programming Consultant | $123.25 - $165.75 per hour |
| Weekend, holidays and overtime | Waived |

### EXPENSES[2]

#### KCC CaseView – Application Licensing, Web Hosting & Database Storage

| | |
|---|---|
| Case configuration | Applicable consulting fees |
| Remote set-up; training | Applicable consulting fees |
| Permitted users | Waived |
| License fee and data storage | $0.05 per creditor per month |
| | $0.01 per image per month |
| Case-specific public website set-up | Waived |
| Case-specific public website hosting | Waived |
| Case-specific voicemail box for creditor inquiries | Waived |
| Case-specific e-mail box for creditor inquiries | Waived |

#### Claims Management & Administration

| | |
|---|---|
| Creditor import | Waived |
| Proof of Claim input | $0.25 per claim |

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.
[2] Expenses shall be consistent with the general practice procedures authorized in the Southern District of New York.

Kurtzman Carson Consultants LLC  599 Lexington Avenue, 39th Floor, New York, New York 10022  PHONE 917-281-4800  FAX 917-281-4900  kccllc.com



**KURTZMAN
CARSON
CONSULTANTS**

## KCC CORPORATE RESTRUCTURING
## FEE STRUCTURE

### Notice Printing & Publication Services

| | |
|---|---|
| Set-up | Waived |
| Insert creditor information into customized documents | $0.12 per piece |
| Electronic noticing (e-mail) | $100.00 per 1,000 |
| Electronic noticing (domestic facsimile) | $0.15 per page |
| Claim Acknowledgement Card | $0.25 per notice |
| Document folding and inserting | $0.07 per document |
| Finishing – tape binding[3] | $1.25 per document |
| Legal notice publishing | Quote prior to publishing |
| Public Debt and Equity Holder noticing. | Quote as required, based on nature and type of securities |

### Document Management/Imaging

| | |
|---|---|
| Electronic imaging (scanning & bar-coding) | $0.10 per imaged page |
| Virtual data room | Quote prior to VDR set-up[4] |

### Standard and Customized Reporting

*The following services are available at consulting rates:*

- Preparation of Service Lists
- Preparation of Claims Registers & Claims Reports
- Claims Reconciliation
- Preparation of Claims Objection Exhibits
- Custom Data Extraction & Forensics
- Preference Data Compilation