MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------- )
                                              )
In re:                                        )    Case No. 12-
                                              )
RESIDENTIAL CAPITAL, LLC, et al.,             )    Chapter 11
                                              )
                            Debtors.          )    Joint Administration Pending
                                              )
--------------------------------------------------------------------- )

**DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 366 (I) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE ON ACCOUNT OF PREPETITION INVOICES, (II) APPROVING DEPOSITS AS ADEQUATE ASSURANCE OF PAYMENT, AND (III) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS BY UTILITY COMPANIES FOR ADDITIONAL ASSURANCE OF PAYMENT**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby move for entry of an order, under section 366 of title 11 of the United States Code (the "Bankruptcy Code"), (i) prohibiting the Utility Companies (as defined below) from altering, refusing, or discontinuing service on account of prepetition invoices, (ii) approving the adequate assurance of postpetition payment to be provided to the Utility Companies through the establishment of the Adequate Assurance Deposit (as defined below),

---

[1]     The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Whitlinger Affidavit (defined below). Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

and (iii) establishing procedures for resolving any subsequent requests by the Utility Companies for additional adequate assurance of payment (the "Motion").[2]  In support of the Motion, the Debtors rely upon and incorporate by reference the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court concurrently herewith (the "Whitlinger Affidavit").  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 366.

## BACKGROUND

2.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner or statutory creditors' committee has been appointed in these Chapter 11 cases.

3.      The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc., which is not a Debtor.  As of March 31, 2012, the Debtors and their non-debtor affiliates operate the tenth largest mortgage origination and

---

[2]      Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief requested in this Motion may refer to http://www.kccllc.net/rescap for additional information.

ny-1011835

servicing businesses in the United States.  A more detailed description of the Debtors, including

their business operations, their capital and debt structure, and the events leading to the filing of

these bankruptcy cases, is set forth in the Whitlinger Affidavit.

**RELIEF REQUESTED**

## I.      Summary of Relief Requested

4.      By this Motion, the Debtors seek entry of an order (the "Order"),

substantially in the form of order attached hereto as <u>Exhibit A</u>:  (a) prohibiting the Utility

Companies from altering, refusing, or discontinuing service on account of unpaid prepetition

invoices; (b) approving the Adequate Assurance Deposit as providing Utility Companies with

"adequate assurance of payment" under Bankruptcy Code section 366 and deeming the Utility

Companies adequately assured of future performance pursuant to section 366; and (c) approving

the Additional Adequate Assurance Procedures (as defined herein) for resolving disputes

regarding adequate assurance of payment.

5.      The Debtors request that, to the extent necessary, the relief sought by this

Motion apply to any future debtor (a "Future Debtor") in these jointly-administered cases.  The

Debtors propose that an affiliated debtor be deemed to be a Future Debtor upon the Court's entry

of an order authorizing the joint administration of such Future Debtor's Chapter 11 case with the

Chapter 11 cases of the Debtors.

## II.     Basis for the Relief Requested

6.      In connection with operating their businesses and managing their

properties, the Debtors obtain water, sewage, natural gas, oil, electricity, telephone, internet

connectivity, and similar utility products and services (collectively, the "Utility Services") from

the Utility Companies identified on <u>Appendix 1</u> attached to the Order (the "Utilities Listing").

As of March 31, 2012, approximately twenty-nine (29) different utility companies (the "Utility

Companies") provide Utility Services to the Debtors at various locations through approximately

105 separate accounts.[3]

       7.     The Utility Companies service certain of the Debtors' executive offices,

their administrative and other offices supporting their administration, loan production, and loan

servicing operations throughout the United States.[4]  On average, as of March 31, 2012, the

Debtors spent an aggregate of approximately $1,173,000 each month on utility costs.  In general,

the Debtors have established a good payment history with the Utility Companies and have made

timely payments on a regular basis.  The Debtors are not currently aware of any defaults or

arrearages of any significance with respect to the Debtors' undisputed Utility Services invoices,

other than payment interruptions that may be caused by the commencement of these Chapter 11

cases.

       8.     The services provided by the Utility Companies are crucial to the

continued operations of the Debtors.  If the Utility Companies refuse or discontinue service, even

for a brief period, the Debtors' business operations would be severely (and potentially

irreparably) disrupted, and the Debtors could be forced to cease operations at their executive and

---

[3]    Although the Debtors believe that the list of Utility Companies listed on the Utilities Listing is a complete and accurate list, they reserve the right to supplement the list without further order of the Court if it is determined that any Utility Company has been omitted from the Utilities Listing.  Moreover , the Debtors reserve the right to argue that (a) any of the entities now or hereafter listed on the Utilities Listing are not "utilities" within the meaning of Bankruptcy Code section 366, and (b) any such entity is compelled by contractual obligation, state or local law, or otherwise, to continue to furnish services to the Debtors, notwithstanding the Debtors' filing for relief under Chapter 11 of the Bankruptcy Code.

[4]    The Utility Companies typically do not provide services to the Debtors' with respect to residential properties upon which they have foreclosed (i.e., "REO properties").  Rather, when the Debtors foreclose on properties, the utility service is established with the listing broker of that property.  Upon the property's ultimate disposition, the listing broker seeks reimbursement for the interim utility service from the Debtors.  Because those utility companies do not provide services directly to the Debtors, the Debtors are not currently seeking to provide deposits for the benefit of those utility companies.  The Debtors are seeking authority to reimburse utility expenses incurred by the brokers pursuant to their separate motions requesting authority to continue servicing in the ordinary course of their businesses.

ny-1011835

administrative offices and other business locations.  It is therefore critical that Utility Services

continue uninterrupted.

9.      By this Motion, the Debtors seek to preserve the protections that the

Utility Companies have under the Bankruptcy Code, while affording the Debtors an opportunity

to provide and negotiate adequate protection without facing the threat of imminent termination of

Utility Services.  In particular, the Debtors request approval of certain procedures that balance

the protections afforded the Utility Companies under Bankruptcy Code section 366 and the

Debtors' need for continuous and uninterrupted Utility Services.

**III.    The Proposed Adequate Assurance**

10.      The Debtors intend to pay all undisputed invoices in respect of

postpetition Utility Services owed to the Utility Companies in a timely manner in the ordinary

course of business.

11.      Nevertheless, to provide additional assurance of payment for future

services to the Utility Providers, the Debtors propose to deposit a sum equal to 50% of the

Debtors' average aggregate monthly cost of Utility Services based on an analysis of the last

twelve months of invoices prior March 31, 2012 into a segregated depository bank account,

within ten (10) days of entry of the Order (the "Adequate Assurance Deposit").  The Adequate

Assurance Deposit shall be maintained with a minimum balance equal to 50% of the Debtors'

estimated average aggregate monthly cost of Utility Services, which may be adjusted by the

Debtors to account for the termination of Utility Services by the Debtors or other arrangements

with respect to adequate assurance of payment reached with a Utility Company.  The Debtors

currently estimate the Adequate Assurance Deposit will be approximately $590,000, based upon

their review of their prepetition monthly utility costs.

5

12.     To the extent that the Debtors become delinquent with respect to a Utility Company's account, such Utility Company may file a notice of such delinquency (the "Delinquency Notice") with the Court and serve such notice on (a) the Debtors, (b) counsel to the Debtors, (c) counsel to the official committee of unsecured creditors, if one is appointed, (d) counsel to the United States Trustee, and (e) Kurtzman Carson Consultants LLC, the Debtors' noticing agent.  If the Debtors have not cured such delinquency or no party has objected to the Delinquency Notice within ten (10) days of the receipt of the Delinquency Notice, then the Debtors shall remit to such Utility Company from the Adequate Assurance Deposit the lesser of (i) the amount allocated in the Adequate Assurance Deposit for such Utility Company's account, and (ii) the amount of postpetition charges claimed as delinquent in the Delinquency Notice.

13.     The Debtors submit that the Adequate Assurance Deposit coupled with the Debtors' ability to pay for future utility services in the ordinary course of business provides protection well in excess of that required to grant sufficient adequate assurance to the Utility Companies.

## IV.     The Additional Adequate Assurance Request Procedures

14.     The Debtors submit that the Adequate Assurance Deposit constitutes sufficient adequate assurance to the Utility Companies.  If any Utility Company believes additional adequate assurance is required, it may request additional adequate assurance of payment pursuant to Bankruptcy Code section 366(c)(2).  The Debtors propose that such requests be addressed pursuant to the following procedures (the "Additional Adequate Assurance Procedures"):

(a)     In the event that a Utility Company maintains that the Adequate Assurance Deposit is not satisfactory adequate assurance of payment as contemplated by Bankruptcy Code section 366(c)(2), the Utility Company must serve a request (an "Additional Adequate Assurance Request") for

adequate assurance on the Debtors and their counsel at the following addresses: (i) Residential Capital, LLC, One Meridian Crossings, Minneapolis, MN 55423 (Attn: Tammy Hamzehpour); (ii) proposed counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Larren M. Nashelsky, Gary S. Lee and Lorenzo Marinuzzi); and (iii) Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245 (Attn: Residential Capital, LLC – Utilities Adequate Assurance Requests), so that it is actually received within thirty (30) after a final Order is entered granting the relief sought herein (the "Additional Adequate Assurance Request Deadline").

(b)      Any Additional Adequate Assurance Request must: (i) be made in writing, (ii) set forth the location for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected accounts, including any security deposit, (iv) set forth what the Utility Company would accept as satisfactory adequate assurance of payment, and (v) provide a contact phone number, fax, and electronic mail address to which the Debtors may respond to the Additional Adequate Assurance Request.

(c)      The Debtors shall have until thirty (30) days after the Additional Adequate Assurance Request Deadline (the "Resolution Period") to negotiate with the Utility Companies that serve an Additional Adequate Assurance Request.

(d)      Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Additional Adequate Assurance Request if the Debtors, in their discretion, determine that the Additional Adequate Assurance Request is reasonable or if the parties negotiate alternate consensual provisions.

(e)      If the Debtors determine that an Additional Adequate Assurance Request is unreasonable and are not able to reach an alternative resolution with the Utility Company during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurance of payment with respect to a particular Utility

7

Company, pursuant to section 366(c)(3) of the Bankruptcy Code (the "Determination Hearing").

(f)    Pending resolution of any such Determination Hearing, the Utility Company shall be prohibited from altering, refusing, or discontinuing services to the Debtors on account of unpaid prepetition invoices or any objections to the Debtors' Adequate Assurance Deposit or due to the commencement of these cases.

(g)    Any Utility Company that does not serve an Additional Adequate Assurance Request by the Additional Adequate Assurance Request deadline shall be deemed to have received adequate assurance of payment that is satisfactory to such Utility Company within the meaning of Bankruptcy Code section 366(c)(2).

15.    The Debtors seek authority, in their sole discretion, to amend the Utilities Listing to add or remove any Utility Company.  To the extent that the Debtors subsequently identify additional providers of Utility Services, the Debtors propose to have the terms of the Order apply to any such subsequently identified Utility Company.  The Debtors will serve a copy of this Motion and the Order approving the Motion on such subsequently identified Utility Company, along with an amended Utilities Listing identifying such Utility Company.  Such Utility Company would then have thirty (30) days from service of the Motion and Order to make an Additional Adequate Assurance Request.

16.    In the event that any Utility Company, including a subsequently added Utility Company, files and/or serves an Additional Adequate Assurance Request after the Additional Adequate Assurance Request Deadline, or, if applicable, the subsequent deadline proposed in paragraph 15 above, such request shall be treated as a request under Bankruptcy Code section 366(c)(3) and shall be granted, if at all, only after the Utility Company making the request schedules such request for hearing, on notice, in accordance with the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

17.    The Debtors maintain that the relief requested herein strikes a fair balance between the rights of the Utility Companies and the rights of the Debtors under the Bankruptcy Code and the need for the Debtors to continue to receive, for the benefit of their estates, the Utility Services upon which their businesses and operations depend.  The Debtors do not believe that the Utility Companies will be prejudiced by the proposed Adequate Assurance Deposit, the uninterrupted continuation of the Utility Services, and the approval of the Additional Adequate Assurance Procedures.

18.    Conceivably, under Bankruptcy Code section 366(c)(2), the Debtors could receive a demand from a Utility Company at the end of the thirty day (30) period provided for therein and be compelled to accede to the demand immediately or face termination of critical Utility Services.

19.    In order to avoid such a drastic result, the Debtors request a hearing on this Motion to be held within twenty (20) days of the Petition Date to ensure that, if a Utility Company argues that it can unilaterally refuse service to the Debtors on the thirty-first (31st) day after the Petition Date, the Debtors will have the opportunity, to the extent necessary, to request that the Court make such modifications to the Additional Adequate Assurance Procedures in time to avoid any potential termination of utility service.

## V.    Request for Immediate Relief and Waiver of Stay

20.    Bankruptcy Rule 6003 generally precludes the Court from authorizing certain relief until twenty-one days after the petition is filed, except to the extent necessary to prevent "immediate and irreparable harm." Fed. R. Bankr. P. 6003.  The Debtors submit that, for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm and, accordingly, Bankruptcy Rule 6003 has been satisfied.

ny-1011835

21.     To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h) to the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b).

### APPLICABLE AUTHORITY

22.     Bankruptcy Code section 366(a) provides:

> Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

11 U.S.C. § 366(a).

23.     The policy underlying Bankruptcy Code section 366 is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate assurance that the debtor will pay for postpetition services.  See H.R. Rep. No. 95-595, at 350 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6306; see also Jones v. Boston Gas Co., 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) ("The purpose of § 366 is 'to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid.'") (citation omitted).  As set forth herein, this policy is furthered by the relief requested through this Motion.

24.     As part of the Bankruptcy Abuse and Consumer Protection Act of 2005, Congress enacted Bankruptcy Code section 366(c).  Although the revised statutory language provides some clarifications and allows some slightly greater rights to utility companies, the basic structure of "adequate assurance of payment" under section 366 remains largely unchanged.

As such, courts should interpret and implement section 366 in a manner that is consistent with legal precedent that survives the amendments to the statute.

25.      Pursuant to Bankruptcy Code section 366(c)(2), a utility is permitted to alter, refuse, or discontinue utility service, if the utility does not receive "during the 30-day period beginning on the date of the filing of the petition . . . adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2). While the form of adequate assurance of payment may be limited under subsection 366(c) to the types of security enumerated in subsection 366(c)(1)(A), the amount of the deposit or other form of security remains fully within the reasonable discretion of the Court. Section 366(c) gives courts the same discretion they had under prior section 366(b) to determine the amount of payment necessary to provide adequate assurance. Compare, 11 U.S.C. § 366(b) (2004)("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."), with 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2).").

26.      In revising section 366 of the Bankruptcy Code, Congress had the opportunity to establish a minimum adequate assurance amount that would be required in each case. Congress, however, did not do that. Rather, it vested discretion in the courts to determine the appropriate level of adequate assurance required in each case. Moreover, as case law has emphasized, the type of arrangement that constitutes adequate assurance of future payment involves a "fact-intensive inquiry," determined on a case-by-case basis. See In re Anchor Glass Container Corp., 342 B.R. 872, 875 (Bankr. M.D. Fla. 2005).

27.     Courts have recognized that adequate assurance of payment does not constitute an absolute guarantee of payment.  See, e.g., id.; In re Astle, 338 B.R. 855, 861 (Bankr. D. Idaho 2006); Steinebach v. Tucson Elec. Power Co. (In re Steinebach), 303 B.R. 634, 641 (Bankr. D. Ariz. 2003) ("Adequate assurance of payment is not . . . absolute assurance.  The key to achieving the balance required by § 366 is not to confuse adequate assurance with adequate protection, which must be provided to a creditor under 11 U.S.C. § 361."); In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002); see also In re Caldor, Inc.-N.Y., 199 B.R. 1, 3 (S.D.N.Y. 1996) (section 366(b) "does not require an 'absolute guarantee of payment'") (citation omitted), aff'd sub nom. VA Elec. & Power Co. v. Caldor Inc.-N.Y., 117 F.3d 646 (2d Cir. 1997); Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.), 12 B.R. 156, 158 n.2 (B.A.P. D. Mass. 1981) (recognizing that adequate assurance does not entitle utilities to "higher protection in chapter 11 than they enjoy in their regular dealings with customers outside the bankruptcy court").

28.     Therefore, revised section 366 does not give utility companies a blank check or the right to extract from the Debtors whatever amount of adequate assurance they might desire.  Nor does section 366 entitle utility companies to receive full collateral for their credit exposure or any other form of guarantee against all risk of potential nonpayment.  In some cases, a court may even find that no adequate assurance of payment is necessary.  See VA Elec. & Power Co. v. Caldor, Inc.-NY, 117 F.3d at, 650 ("[W]e agree . . . that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

29. In sum, the proposed Additional Adequate Assurance Procedures are necessary for the Debtors to continue to preserve the value of their business as a going concern. Without them, the Debtors would be either forced to seek emergency temporary restraining orders each and every time a Utility Company threatened to suspend performance, or to address innumerable requests by Utility Companies in an unorganized manner at a critical period in their efforts to reorganize.

30. By establishing the Additional Adequate Assurance Procedures, the Debtors seek to implement an orderly process to determine the amount of assurance of payment that is adequate. If a Utility Company disagrees with the Debtors' analysis, the Additional Adequate Assurance Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtors' continuing operations. The orderly process contemplated by the Additional Adequate Assurance Procedures, therefore, is necessary for a smooth transition by the Debtors into Chapter 11.

31. The Court also has the authority to grant the relief sought in this Motion pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of that section is to grant bankruptcy courts the authority to take actions necessary to exercise their power under the Bankruptcy Code.

32. The Debtors' proposed method of furnishing adequate assurance of payment for post-petition Utility Service is not prejudicial to the rights of any Utility Company, and is in the best interest of the Debtors' estates. Courts in this District have granted similar relief in other cases following the 2005 amendments. See, e.g., AMR Corporation, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Jan. 30, 2012) (Docket No. 944); In re Borders Group, Inc., Case

No. 11-10614 (MG) (Bankr. Apr. 7, 2011) (Docket No. 570); In re the Great Atl. & Pac. Tea Co.,

Inc., Case No. 10- 24549 (RDD) (Bankr. S.D.N.Y. Jan. 13, 2011) (Docket No. 503); In re

Blockbuster, Inc., Case No. 10- 14997 (BRL) (Bankr. S.D.N.Y. Oct. 21, 2010) (Docket No. 361);

In re Uno Rest. Holdings Corp., Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Mar. 10, 2010)

(Docket No. 357); In re Finlay Enter., Inc., Case No. 09-14873 (JMP) (Bankr. S.D.N.Y. Sept. 3,

2009) (Docket No. 185); In re Tronox Inc., Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Feb. 6,

2009) (Docket No. 149); In re General Growth Props., Inc., Case No. 09-11977 (ALG) (Bankr.

S.D.N.Y. May 11, 2009) (Docket No. 469).

## NOTICE

33.    Notice of this Motion will be given to the following parties, or in lieu

thereof, to their counsel:  (a) the Office of the United States Trustee for the Southern District of

New York; (b) the office of the United States Attorney General; (c) the office of the New York

Attorney General; (d) the office of the United States Attorney for the Southern District of New

York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) each of

the Debtors' prepetition lenders, or their agents, if applicable; (h) each of the indenture trustees

for the Debtors' outstanding notes issuances; (i) the equity security holder; (j) counsel to the

administrative agent for the Debtors' proposed providers of debtor in possession financing; and

(k) the parties included on the Debtors' list of fifty (50) largest unsecured creditors; and (l) the

parties listed in the Utilities Listing.  The Debtors submit that, in view of the facts and

circumstances, such notice is sufficient and no other or further notice need be provided.

34.    Any objections to the relief requested in the Motion must be filed with the

Clerk of the Bankruptcy Court and served upon and received by: (a) proposed counsel for the

Debtors, Morrison & Foerster LLP (Attn:  Larren M. Nashelsky, Gary S. Lee and Lorenzo

14

Marinuzzi); (b) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Tracy Hope Davis, Linda A. Riffkin,

and Brian S. Masumoto); (c) counsel to the administrative agent for the Debtors' proposed

providers of debtor in possession financing, Skadden, Arps, Slate, Meagher & Flom LLP, 4

Times Square, New York, New York 10036 (Attention: Kenneth S. Ziman

(Ken.Ziman@skadden.com) and Jonathan H. Hofer (jhofer@skadden.com)); and (d) counsel for

any statutory committee appointed in the Debtors' cases, on or before the date scheduled by the

Court. If no objections are filed to the Motion, the Court may enter the order without further

notice or hearing.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order

substantially in the form attached hereto as Exhibit A granting the relief requested in the Motion;

and (ii) such other and further relief to the Debtors as the Court may deem just and proper.

Dated:   May 14, 2012
         New York, New York

/s/    Larren M. Nashelsky
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Proposed Counsel for the Debtors and
Debtors in Possession*

ny-1011835

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------
            )

In re:                    )     Case No. 12-

            )

RESIDENTIAL CAPITAL, LLC, et al.,   )     Chapter 11

            )

            Debtors.    )     Joint Administration

-------------------------------------------------------------------
            )

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 366**
**(I) PROHIBITING UTILITY PROVIDERS FROM ALTERING OR DISCONTINUING**
**SERVICE ON ACCOUNT OF PREPETITION INVOICES, (II) APPROVING DEPOSITS**
**AS ADEQUATE ASSURANCE OF PAYMENT, AND (III) ESTABLISHING**
**PROCEDURES FOR RESOLVING REQUESTS BY UTILITY**
**COMPANIES FOR ADDITIONAL ASSURANCE OF PAYMENT**

Upon the motion (the "Motion")[1] of the Debtors for an order, under Bankruptcy

Code sections 105(a) and 366 (i) prohibiting the Utility Companies from altering or

discontinuing service on account of prepetition invoices, (ii) approving the adequate assurance of

postpetition payment to be provided to the Utility Companies through the establishment of the

Adequate Assurance Deposit (defined below), and (iii) establishing the Additional Adequate

Assurance Procedures for resolving any Additional Adequate Assurance Requests under

Bankruptcy Code section 366(c); and upon the Whitlinger Affidavit; and objections to the

Motion having been filed by [_____] (collectively, the "Objections"); and the

Court having held a hearing on [_____], 2012 to consider the relief requested in the

Motion and the Objections filed; and due and sufficient notice of the Motion having been given

under the particular circumstances; and it appearing that no other or further notice need be

provided; and it appearing that the relief requested by the Motion is in the best interests of the

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
requested in this Motion may refer to http://www.kccllc.net/rescap for additional information.

Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED, as set forth herein.

2.      Absent further order of this Court, the utility companies listed on Appendix 1 attached hereto (the "Utilities Listing"), including any subsequently added Utility Companies, are prohibited from altering, refusing, or discontinuing service to or discriminating against the Debtors on account of unpaid prepetition invoices or due to the commencement of these cases, or requiring the Debtors to pay a deposit or other security in connection with the provision of postpetition Utility Services, other than in accordance with the Additional Adequate Assurance Procedures contained herein.

3.      The Debtors shall, on or before ten (10) days after entry of this Order, deposit a sum equal to 50% of the Debtors' estimated average aggregate monthly cost of Utility Services based on an analysis of the Debtors' last twelve months of invoices prior March 31, 2012 into a segregated depository bank account, for the purpose of providing each Utility Company adequate assurance of payment of its postpetition Utility Services to the Debtors. Such Adequate Assurance Deposit shall be held in escrow, pending further order of the Court for the purpose of providing each Utility Company adequate assurance of payment of its postpetition utility services to the Debtors.  The Adequate Assurance Deposit shall be maintained with a minimum balance equal to 50% of the Debtors' estimated average aggregate monthly cost of Utility Services, which may be adjusted by the Debtors to account for the termination of Utility Services by the Debtors or other arrangements with respect to adequate assurance of payment reached with any Utility Company.

2

4.      To the extent that the Debtors become delinquent with respect to a Utility Company's account, such Utility Company shall file a notice of such delinquency (the "Delinquency Notice") with the Court and serve such notice on (a) the Debtors, (b) counsel to the Debtors, (c) counsel to the official committee of unsecured creditors, if one is appointed, (d) counsel to the United States Trustee, and (e) Kurtzman Carson Consultants LLC, the Debtors' noticing agent.  If the Debtors have not cured such delinquency or no party has objected to the Delinquency Notice within ten (10) days of the receipt of the Delinquency Notice, then the Debtors shall remit to such Utility Company from the Adequate Assurance Deposit the lesser of (i) the amount allocated in the Adequate Assurance Deposit for such Utility Company's account, and (ii) the amount of postpetition charges claimed as delinquent in the Delinquency Notice.

5.      The Additional Adequate Assurance Procedures are hereby approved as follows:

(a)     In the event that a Utility Company maintains that the Adequate Assurance Deposit is not satisfactory adequate assurance of payment as contemplated by Bankruptcy Code section 366(c)(2), the Utility Company must serve a request (an "Additional Adequate Assurance Request") for adequate assurance on the Debtors and their counsel at the following addresses: (i) Residential Capital, LLC, One Meridian Crossings, Minneapolis, MN 55423 (Attn: Tammy Hamzehpour); (ii) proposed counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Larren M. Nashelsky, Gary S. Lee and Lorenzo Marinuzzi); and (iii) Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245 (Attn: Residential Capital, LLC – Utilities Adequate Assurance Requests), so that it is actually received within thirty (30) days after entry of this Order (the "Additional Adequate Assurance Request Deadline").

(b)     Any Additional Adequate Assurance Request must: (i) be made in writing, (ii) set forth the location for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected accounts, including any security deposit, (iv) set forth what the

3

Utility Company would accept as satisfactory adequate assurance of payment, and (v) provide a fax and electronic mail address to which the Debtors may respond to the Additional Adequate Assurance Request.

(c)      The Debtors shall have until thirty (30) days after the Additional Adequate Assurance Request Deadline (the "Resolution Period") to negotiate with the Utility Companies that serve an Additional Adequate Assurance Request.

(d)      Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Additional Adequate Assurance Request if the Debtors, in their discretion, determine that the Additional Adequate Assurance Request is reasonable or if the parties negotiate alternate consensual provisions.

(e)      If the Debtors determine that an Additional Adequate Assurance Request is unreasonable and are not able to reach an alternative resolution with the Utility Company during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurance of payment with respect to a particular Utility Company, pursuant to section 366(c)(3) of the Bankruptcy Code (the "Determination Hearing").

(f)      Pending resolution of any such Determination Hearing, the Utility Company shall be prohibited from altering, refusing, or discontinuing services to the Debtors on account of unpaid prepetition invoices or any objections to the Debtors' Adequate Assurance Deposit or due to the commencement of these cases.

(g)      Any Utility Company that does not serve an Additional Adequate Assurance Request by the Additional Adequate Assurance Request Deadline shall be deemed to have received adequate assurance of payment that is satisfactory to such Utility Company within the meaning of Bankruptcy Code section 366(c)(2).

6.      The Debtors are authorized, in their sole discretion, to amend the Utilities

Listing to add or delete any Utility Company.  The Debtors shall serve a copy of the Motion and

4

this Order on such subsequently identified Utility Companies. Such Utility Companies shall then have thirty (30) days from the service of the Motion and the Order to make an Additional Adequate Assurance Request.

7.      The inclusion or exclusion of any entity on or from the Utilities Listing, as may be amended from time to time, shall not constitute an admission that such entity is or is not a utility company within the meaning of Bankruptcy Code section 366. This Order specifically reserves the rights of the Debtors to argue that (a) any of the entities now or hereafter listed on the Utilities Listing are not "utilities" within the meaning of Bankruptcy Code section 366, and (b) any such entity is compelled by contractual obligation, state or local law, or otherwise, to continue to furnish services to the Debtors notwithstanding the Debtors' filing for relief under chapter 11 of the Bankruptcy Code.

8.      In the event that any Utility Company, including a subsequently added Utility Company, files and/or serves an Additional Adequate Assurance Request after the Additional Adequate Assurance Request Deadline, or, if applicable, the subsequent deadline established in paragraph 6 above, such request shall be treated as a request under Bankruptcy Code section 366(c)(3) and shall be granted, if at all, only after the Utility Company making such request schedules such request for hearing, on notice, in accordance with the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

9.      The Debtors are authorized to pay on a timely basis in accordance with their prepetition practices all undisputed invoices in respect to postpetition Utility Services rendered by the Utility Companies to the Debtors.

10.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

11.     Nothing in this Order or the Motion shall be deemed to constitute the assumption or adoption of any agreement under Bankruptcy Code section 365.

12.     Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among Ally Financial Inc., Ally Bank, Residential Capital, LLC, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012 and (d) all related agreements with Ally Financial Inc. and Ally Bank and their respective subsidiaries and affiliates (excluding Residential Capital, LLC and its subsidiaries).

13.     The relief granted by this order shall apply to any Future Debtor in these jointly-administered cases.

14.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:     New York, New York
           _____, 2012


           _____
           UNITED STATES BANKRUPTCY JUDGE

ny-1011838

## APPENDIX 1

### LIST OF UTILITY COMPANIES

| Vendor Name | Vendor Type | Account Number(s) |
|---|---|---|
| Abovenet Communications Inc. | Telecommunications | 208308 |
| AT&T | Telecommunications | 2136120012873<br>2144928300218<br>2145849200100<br>2147413818119<br>2148232027158<br>2148790130935<br>2148871763876<br>3143679335552<br>3179234245267<br>5864434450612<br>6147711999429<br>7144377956264<br>7145451742579<br>7758534622509<br>80023108295<br>80023141965<br>80100705609<br>80802372278<br>80802442162<br>8185650407333<br>8585059108301<br>88800028396-02<br>9019468908909<br>9544221879001<br>9603500554555<br>9605511776555<br>9729061172104<br>9729062950370<br>9729065552937<br>9729066800290<br>9729569210485<br>9729560761222 |
| AT&T Mobility | Telecommunications | FAN00025935 Acct #<br>990040630 |
| Center Point Energy | Energy | 5580682-2 |

| Vendor Name | Vendor Type | Account Number(s) |
|---|---|---|
| CenturyLink | Telecommunications | 77109005<br>319-236-5400<br>319-287-8007<br>319-D55-1743<br>319-Z25-0077<br>612-E12-7494<br>952-826-0038<br>952-831-0908<br>952-831-4066<br>952-941-7111<br>952-829-0035<br>612-E07-3522 |
| Cisco Systems Capital Corporation | Telecommunications | Lessee ID 4641 |
| City of Eden Prairie | Water Supply | 0014400174 |
| Comcast | Telecommunications | 09531382503017<br>20001402208016 |
| Dish Network | Telecommunications | 8255 70 708 1538014 |
| Genesys Conferencing | Telecommunications | U0037349<br>U0037348 |
| Global Capacity Group Inc. | Telecommunications | GCP-1000143<br>GCP-1000260<br>GCP-1000007 |
| IEX Corporation | Telecommunications | 409774/CF# 125-10 |
| Inova Solutions | Telecommunications | GMA1000 |
| Intercall | Telecommunications | 873713 |
| Intervoice Inc. | Telecommunications | 10009203 |
| Level 3 Communications LLC | Telecommunications | 3544513<br>1008144320A<br>1-2WDA2N<br>43753<br>10000735 |
| MediaCom | Telecommunications | 8383 95 001 1447055<br>8383 95 001 0417448 |
| Micro-Tel Center | Telecommunications | 120055 |
| MidAmerican Energy | Energy | 90940-06013<br>Meter# L55086383; Meter#<br>A05079385; Meter#<br>T96182520 |
| Sprint | Telecommunications | 132161218 |
| Time Warner Cable | Telecommunications | 8260 13 052 0094239 |
| Time Warner Telecom | Telecommunications | 38249<br>305500<br>38217 |

2

| Vendor Name | Vendor Type | Account Number(s) |
|---|---|---|
| | | 305497 |
| Verizon | Telecommunications | 215-283-8760 |
| | | 609-654-1257 |
| | | 609-654-4059 |
| | | 856-988-0737 |
| | | 856-241-4390 |
| | | 856-797-6961 |
| | | 215-563-4530 |
| | | 856-227-2079 |
| | | 951-303-6531 |
| | | 703-724-4272 |
| | | 215-197-8440 |
| | | 040-135-7893 |
| Verizon Business | Telecommunications | Y2221972 |
| | | Y009623 |
| | | Y0010397 |
| | | Y2226907 |
| | | Y2354296 |
| | | Y2226906 |
| | | Y2354294 |
| | | Y2471891 |
| | | Y1944004 |
| Verizon California | Telecommunications | 9513036531091020 |
| Verizon Wireless | Telecommunications | 48607062-00001 |
| Waste Management | Waste Collection | 518-0025657-0513-0 |
| | | 518-0003122-0513-1 |
| | | 518-0004847-0513-2 |
| Waterloo Water Works Po Box 27, Waterloo, Iowa 50704 | Water Supply | 16-64-1835-024392 |
| | | 16-64-1835-024393 |
| Xcel Energy | Energy | 51-6281065-7 |

3