## EXHIBIT A

**PROPOSED SALE PROCEDURES ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

-------------------------------------------------------------------------

### ORDER UNDER 11 U.S.C. §§ 105, 363(b) AND 365 (I) AUTHORIZING AND APPROVING SALE PROCEDURES, INCLUDING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (II) SCHEDULING BID DEADLINE, AUCTION (IF NECESSARY) AND SALE HEARING; (III) ESTABLISHING ASSUMPTION AND ASSIGNMENT PROCEDURES, INCLUDING PROCEDURES FOR FIXING CURE AMOUNTS; AND (IV)  ESTABLISHING NOTICE PROCEDURES AND APPROVING <u>FORMS OF NOTICE</u>

Upon the motion, dated May 14, 2012 (the "Motion"),[1] of Residential Capital, LLC ("ResCap") and certain of its affiliates, as debtors in possession (collectively, the "Debtors") for entry of an Order,[2] under Bankruptcy Code sections 105, 363, 365, 503, 507 and 1123 of title 11, United States Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 for, among other things: (i) authorizing and approving the proposed sale procedures annexed hereto as <u>Exhibit A-1</u> (the "Sale Procedures") and the payment of the Break-Up Fee and Expense Reimbursement to Nationstar under the terms set forth in the Nationstar APA, (ii) scheduling a Bid Deadline, Auction (if necessary) and Sale Hearing, (iv) establishing procedures for assuming and assigning the Assumed Contracts, including procedures for fixing cure amounts (the "Cure Amounts") to be paid under section 365 of the Bankruptcy Code, determining whether alleged defaults (if any) exist and evaluating the Purchaser's ability to provide adequate assurance of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the Sale Procedures, or the APAs (as defined in the Motion).  Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

future performance (the "Assumption and Assignment Procedures"), and (v) establishing notice

procedures and approving forms of notice; and upon the (a) Affidavit of James Whitlinger, Chief

Financial Officer of Residential Capital LLC in Support of the Chapter 11 Petitions and First

Day Pleadings, pursuant to Local Bankruptcy Rule 1007-2, (b) the Declaration of Samuel M.

Greene in Support of the Proposed Sale of the Debtors' Assets, and (c) the Declaration of

Tammy Hamzehpour in Support of the Proposed Sale of the Nationstar Purchased Assets

Without a Privacy Ombudsman; and it appearing that this Court has jurisdiction to consider the

Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11

cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it

appearing that the proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b);

and sufficient notice of the Motion having been given under the particular circumstances and it

appearing that no further notice need be provided; and a hearing having been held on June 18,

2012, to consider the relief requested in the Motion (the "Sale Procedures Hearing"); and upon

the record of the Sale Procedures Hearing, and all of the proceedings before this Court; and this

Court having reviewed the Motion and any objections thereto (the "Objections") and found and

determined that the relief sought in the Motion with respect to the Sale Procedures as provided

herein is in the best interests of the Debtors' estates, their creditors, and other parties in interest;

and after due deliberation thereon; and sufficient cause appearing therefore, it is FOUND AND

DETERMINED THAT:[3]

      A.     The statutory and legal predicates for the relief requested in the Motion are

sections 105, 363, 365, 503, 507 and 1123(a) of the Bankruptcy Code, and rules 2002, 6004,

6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the

Southern District of New York (the "Local Rules").

       B.     The Motion and this Order comply with all applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Guidelines for the Conduct of

Asset Sales established by the Bankruptcy Court on November 18, 2009 pursuant to General

Order M-383.

       C.     The Sale Procedures comply with the requirements of Local Rule 6004-1.

       D.     The Debtors have articulated compelling and sound business justifications

for this Court to grant the Sale Procedures Relief, including this Court's (i) approval of payment

of the Break-Up Fee and Expense Reimbursement under the circumstances, timing, and

procedures set forth herein, in the Motion, and in the Nationstar APA; (ii) approval of the Sale

Procedures; (iii) scheduling of the Bid Deadline, Auction, and Sale Hearing; (iv) approval of and

authorization to serve the Sale Notice and the Assumption and Assignment Notice (each as

hereinafter defined); and (v) approval of and authorization to publish the Sale Notice.

       E.     The Debtors have set a Sale Hearing (as described below), where they will

seek authorization of the sale of the Purchased Assets and the assumption and assignment of the

Assumed Contracts subject of the APAs free and clear of all liens, encumbrances, and interests

to Nationstar and AFI, respectively, or such other Successful Bidders as may result from the

Auction.

       F.     Entry into each of the APAs with Nationstar and AFI, respectively, is in

the best interest of the Debtors and the Debtors' estates and creditors.  The APAs will enable the

Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the

Debtors' estates.  The terms of the Nationstar APA were negotiated by the Debtors and

ny-1014115

Nationstar in good faith and at arm's length.  The terms of the AFI APA were negotiated by the Debtors and AFI in good faith and at arm's length.

G.      The Break-Up Fee and Expense Reimbursement subject of the Nationstar APA are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

H.      The Debtors' payment of the Break-Up Fee and Expense Reimbursement to Nationstar under the conditions set forth in the Nationstar APA was negotiated by the parties in good faith and at arm's length and is (i) an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; (ii) of substantial benefit to the Debtors' estates and creditors and all parties in interest; (iii) reasonable and appropriate; and (iv) necessary to ensure that Nationstar will continue to pursue the proposed Nationstar APA to undertake the sale of the Purchased Assets subject of the Nationstar APA. Notwithstanding anything to the contrary in this or any other order of this Court, the Break-Up Fee and Expense Reimbursement shall constitute allowed administrative expenses with priority pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

I.      The Sale Procedures, a copy of which is annexed hereto as <u>Exhibit A-1</u>, are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Purchased Assets subject of the APAs.

J.      The Notice of Auction and Sale Hearing (the "Sale Notice"), a copy of which is annexed hereto as <u>Exhibit A-2</u>, is reasonably calculated to provide parties in interest with proper notice of the proposed sale of the Purchased Assets subject of each APA, the Sale Procedures, the Sale Transactions, the Auction (if necessary), and the Sale Hearing, and no other or further notice is required.

4

K.      Publication of the Sale Notice is reasonably calculated to provide all unknown creditors and parties not otherwise required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of the proposed sale of the Purchased Assets subject of each APA, the Sale Procedures, the Sales, the Auction (if necessary), and the Sale Hearing, and no other or further notice is required.

L.      The Assumption and Assignment Notice, a copy of which is annexed hereto as Exhibit A-3, is reasonably calculated to provide all counterparties to the Assumed Contracts with proper notice of the potential assumption and assignment of their respective executory contracts or Leases, any Cure Amounts relating thereto, and the Assumption and Assignment Procedures.

M.      Due, sufficient, and adequate notice of the relief requested in the Motion and granted herein has been given to parties in interest and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order (including with respect to the proposed Sale Procedures, the Break-Up Fee, and the Expense Reimbursement) has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

N.      Although the Sale Transactions include the transfer of "personally identifiable information" (as defined in 101(41)(A) of the Bankruptcy Code), the transfer of such information is consistent with the Debtors existing privacy policies.  No consumer privacy ombudsman is required and the Debtors may disclose customer "personally identifiable information" to a purchaser of its assets in a bankruptcy sale in a manner that is consistent with applicable federal requirements.

ny-1014115

O.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

## The Sale Procedures

1.      The Sale Procedures Relief requested in the Motion is granted as provided herein.

2.      The [Objections] are overruled.

3.      The Sale Procedures, attached hereto as <u>Exhibit 1</u>, which are incorporated herein by reference, are approved and shall govern all bids and sale procedures relating to the Purchased Assets subject of each APA.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Sale Procedures.

4.      This Order and the Sale Procedures shall govern the sale of the Purchased Assets under any sale pursuant to a Chapter 11 plan.

5.      The Sale Procedures shall apply to (i) except as otherwise provided in the Sale Procedures or the respective APAs, Nationstar and AFI, respectively; (ii) Potential Bidders and Qualified Bidders; (iii) the conduct of the Sales; and (iv) the Auction.

6.      Each of Nationstar and AFI, respectively, shall constitute a Qualified Bidder for all purposes and in all respects with respect to the Sale Procedures.

7.      In light of the extensive prepetition negotiations culminating in the Nationstar APA in addition to Nationstar's payment of the Nationstar Deposit, Nationstar is excused from submitting an additional deposit.  The Nationstar Deposit shall be deemed

Nationstar's Good Faith Deposit (as defined in the Sale Procedures) for all purposes under the Sale Procedures.

8.      AFI shall be excused from submitting a Good Faith Deposit (as defined in the Sale Procedures) required of Qualified Bidders in light of the extensive prepetition negotiations culminating in the AFI APA, in addition to AFI's irrevocable, absolute, and unconditional guarantee (as described in section 10.15 of the AFI APA) to Sellers (as defined in the AFI APA) of the prompt and full payment by BMMZ of all of BMMZ's monetary obligations under the AFI APA and any Ancillary Agreements as and when payment is due and payable in accordance with the terms under the AFI APA.

9.      The deadline for submitting a Qualified Bid shall be September 18, 2012 (the "Bid Deadline"), as further described in the Sale Procedures.

## The Break-Up Fee and Expense Reimbursement

10.      The Debtors are authorized and directed to pay to Nationstar the Break-Up Fee of $72 million (of which 8.44% is allocable to the Ginnie Mae MSRs and 91.56% is allocable to the remaining Nationstar Purchased Assets) and the Expense Reimbursement under the terms set forth in the Nationstar APA, without the need for any application, motion, or further order of this Court.

11.      The Debtors' obligations to pay the Break-Up Fee and Expense Reimbursement in accordance with the terms of the Nationstar APA, shall survive termination of the Nationstar APA, shall constitute allowed administrative expense claims against each Debtor's estate, shall be entitled to priority under sections 503(b)(1)(A) and 507(a)of the Bankruptcy Code, and shall be (i) fully payable from proceeds of the Successful Bid upon

closing or (ii) payable from proceeds of any deposit forfeited to the Debtors in the event that the

Successful Bid does not close or otherwise by the Debtors if any such deposit is insufficient.

### Notice Procedures

12.    The Assumption and Assignment Notice is sufficient to provide effective

notice of the assumption and assignment of the Assumed Contracts and Cure Amounts to all

non-debtor parties to the Assumed Contracts, any known third party beneficiaries to such

Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers

and any other parties to any pooling and servicing agreements, assignment, assumption and

recognition agreements, Servicing Agreements, subservicing agreements or similar agreements,

pursuant to Bankruptcy Rules 2002 and 6006, and are hereby approved.

13.    The Sale Notice and the Publications Notice are sufficient to provide

effective notice to all interested parties of the Sale Procedures, the Auction (if any), and the Sale

Transactions, pursuant to Bankruptcy Rules 2002(a)(2) and 6004, and are hereby approved.

14.    The notices described in subparagraphs (a)-(d) below are approved and

shall be good and sufficient, and no other or further notice shall be required if given as follows:

(a)    The Debtors (or their agent) serve, within three (3) days after entry of this
Order (the "Mailing Deadline"), by first-class mail, postage prepaid, or
other method reasonably calculated to provide notice, a copy of this Order
and the Notice of Auction and Sale Hearing upon: (i) the Office of the
United States Trustee for the Southern District of New York, (ii) the
attorneys for the U.S. Treasury, (iii) the attorneys for ResCap's prepetition
secured credit facilities, (iv) the attorneys for the agent under the Debtors'
prepetition amended and restated secured revolving credit agreement,
(v) the attorneys for the statutory committee of unsecured creditors
appointed in the Debtors' Chapter 11 cases (the "Creditors' Committee")
(if no statutory committee of unsecured creditors has been appointed, the
holders of the fifty largest unsecured claims against the Debtors on a
consolidated basis), (vi) the attorneys for the ad hoc bondholders'
committee, (vii) the attorneys for the Federal National Mortgage
Association, the Federal Home Loan Mortgage Corporation, and the
Government National Mortgage Association, (viii) any party who, in the

8

past year, expressed in writing to the Debtors an interest in the Purchased Assets and who the Debtors and their representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transaction contemplated in the APA, (ix) each non-debtor counterparty to the Assumed Contracts, any known third party beneficiaries to such Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, Servicing Agreements, subservicing agreements or similar agreements; (x) all parties who are known to have asserted or believed by Debtors to hold any lien, claim, encumbrance, or interest in or on the Purchased Assets, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all applicable state attorneys' general, and local authorities, (xiv) all applicable state and local taxing authorities, (xv) the Federal Trade Commission, (xvi) the United States Department of Justice, (xvii) the United States Attorney's Office, (xviii) the office of the New York Attorney General; and (xix) all entities that requested notice in these Chapter 11 cases under Bankruptcy Rule 2002; and

(b)    On or before the Mailing Deadline, the Debtors (or their agent) serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, the Sale Notice, substantially in the form annexed hereto as Exhibit A-2, upon any other known creditors and interestholders.

(c)    On the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall cause the Sale Notice, substantially in the form annexed hereto as Exhibit A-2, to be published (i) once (a) in the global edition of *The Wall Street Journal* and (b) the national edition of *The New York Times*, and (ii) on the website of the Debtors' proposed claims and noticing agent Kurtzman Carson Consultants, LLC at http://www.kccllc.net.

(d)    On or before June 25, 2012 the Debtors shall file a schedule (the "Schedule") of Assumed Contracts that Nationstar has designated as Assumed Contracts, including the cure amounts relating such Assumed Contracts (the "Cure Amount"), and serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, a notice of the assumption and assignment of the Assumed Contracts and the proposed Cure Amounts relating to the Assumed Contracts (the "Assumption and Assignment Notice"), substantially in the form annexed hereto as Exhibit A-3, upon (i) each counterparty to the Assumed Contracts (including the Servicing Agreements); (ii) any known third party beneficiaries to such Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, Servicing Agreements, subservicing agreements or similar agreements and (iii) all trustees that are parties to

9

the Pooling and Servicing Agreements.  In addition, Debtors will use their commercially reasonable efforts to identify and provide notice of the terms of the proposed assumption and assignment of the relevant Assumed Contracts to investors and certificateholders.

15.     Subject to certain exceptions expressly provided for in the Nationstar APA, Nationstar shall be entitled to remove any Assumed Contract from the relevant Schedule until two business days prior to the Closing Date, in which case the contract or lease shall cease to be an Assumed Contract.  The counterparty to such removed Assumed Contract shall be furnished promptly with notice of such removal.

### Objection Deadlines

16.     Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sales shall file a formal objection that complies with the objection procedures as set forth in the Motion.  Each objection shall state the legal and factual basis of such objection.

17.     Any and all objections as contemplated by this Order must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules, the Local Rules, and the Order Under Bankruptcy Code Sections 102(2), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures (the "CMO"); (iv) filed with the Bankruptcy Court; and (v) served on (a) the Debtors; (b) Morrison & Foerster LLP, counsel to the Debtors; (c) Sidley Austin LLP, counsel to Nationstar; (d) Kirkland & Ellis LLP, counsel to AFI; and (e) the Notice Parties in accordance with the CMO (the "Objection Notice Parties") so as to be received on or before the appropriate deadline as set forth below.

18.    The deadline for objecting to approval of (i) any Cure Amounts, and/or

(ii) the assumption by the Debtors and assignment to Nationstar of an Assumed Contract shall be

**August 30, 2012, at 5:00 p.m.** (Eastern Time) (the "Cure Objection Deadline"), *provided*,

*however*, that in the event the Sale Procedures result in a Successful Bidder other than

Nationstar, the deadline for objecting to the sale of the Purchased Assets to such Successful

Bidder shall be at the Sale Hearing.  The deadline for objecting to approval of the

Sale Transactions, including the sale of the Purchased Assets free and clear of liens, claims,

encumbrances, and interests (including rights or claims based on any successor or transferee

liability) shall be **October 8, 2012, at 5:00 p.m.** (Eastern Time).

19.    Failure to object to the relief requested in the Motion shall be deemed to

be "consent" for purposes of section 363(f) of the Bankruptcy Code and shall be a bar to the

assertion, at the Sale Hearing or thereafter, of any objection to the Motion, and to the

consummation and performance of the Sale Transactions contemplated by the APAs (including

the transfer free and clear of all liens, claims, encumbrances, and interests, including rights or

claims based on any successor or transferee liability, of each of the Purchased Assets transferred

as part of the Sale Transactions).

20.    If a timely objection is raised either to the proposed assumption and

assignment of an Assumed Contract or to the proposed Cure Amount (a "Contract Objection"),

(i) the Debtors; (ii) Nationstar; and (iii) the objecting party may meet and confer in good faith to

attempt to resolve any such objection without Court intervention.  If (i) the Debtors; (ii)

Nationstar; and (iii) the objecting party resolve any Contract Objection, they may enter into a

written stipulation, which stipulation is not required to be filed with or approved by the Court.  If

a Contract Objection cannot be consensually resolved, it shall be heard by the Court at the

11

discretion of the Debtors and Nationstar or AFI, respectively, either at the Sale Hearing or such other date as determined by the Court (such other date being no later than the Sale Hearing).

21.     Any Contract Objection that challenges a Cure Amount, or otherwise asserts that there exist outstanding defaults under an Assumed Contract, must set forth with specificity the Cure Amount being claimed by the objecting party or the nature of the asserted default, as applicable, and must include appropriate documentation in support thereof satisfactory to the Debtors and Nationstar.  If no objection to the Cure Amount or the proposed assumption and assignment of an Assumed Contract is timely filed and served, the pertinent Debtor may assume and assign the Assumed Contract to Nationstar (or, alternatively, to the Successful Bidder for the applicable Purchased Assets), and the Cure Amount set forth in the Assumption and Assignment Notice shall be binding upon all non-debtor parties to the Assumed Contracts, any known third party beneficiaries to such Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, Servicing Agreements, subservicing agreements or similar agreements (collectively, the "Assumption Notice Parties"), for all purposes in such Debtor's Chapter 11 cases.  The respective Assumption Notice Parties shall be forever barred from (i) objecting to the assumption and assignment of the relevant Assumed Contract and/or Cure Amount, and (ii) asserting at any time any condition to assignment, default, claims, obligations or breach and/or any additional cure, damage or other amount with respect to the respective Assumed Contract on the basis of events of any kind of nature occurring or arising prior to the Closing Date, whether such events constituted acts or omissions by the Debtors or other person and regardless of whether such events are known or unknown, including, without limitation, claims or liabilities relating to any act or omission of

any originator, holder or servicer of mortgage loans prior to the Closing Date, and any indemnification obligations, claims or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date.

22.     All Assumed Contracts will be assumed and assigned to Nationstar on the Closing Date of the Nationstar APA, except as may be otherwise set forth therein or agreed between the Debtors and Nationstar.

23.     The Court shall conduct the Sale Hearing on **October 15, 2012 at _:00 _.m.** (Eastern Time) or such other date before October 31, 2012 that the Court conducts the Confirmation Hearing, at which time the Court will consider approval of the Sale Transactions to the Successful Bidder.  The Sale Hearing shall, if applicable, be conducted in connection with, and as part of, any hearing to consider confirmation of a plan of reorganization under section 1129 of the Bankruptcy Code; provided, however, that if Nationstar is the Successful Bidder and a plan of reorganization is not confirmed by the Bankruptcy Court on or before October 31, 2012 or if a plan of reorganization that is confirmed by such date does not become effective on or before December 15, 2012, the Debtors shall seek to consummate the Sale Transactions to Nationstar and AFI, respectively, pursuant to section 363 of the Bankruptcy Code.

24.     In the event the Successful Bidder is not Nationstar or AFI, respectively, non-debtor parties to the Assumed Contracts may raise objections to adequate assurance of future performance at the Sale Hearing, but shall not be permitted to raise objections to the Cure Amount if not asserted by the Cure Objection Deadline.  The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

## **Other Relief Granted**

25.    In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Nationstar or AFI bid, the Debtors will conduct an Auction, commencing at **10:00 a.m. (Eastern Time) on September 25, 2012** at the offices of Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York  10104, or such later time on such date or other location as shall be timely communicated in accordance with the Sale Procedures.  If (i) no Qualified Bids with respect to the Nationstar Purchased Assets other than Nationstar's Qualified Bid are timely received or (ii) the Debtors only timely receive Qualified Bids for the Ginnie Mae MSRs and do not timely receive a Qualified Bid for the remaining Nationstar Purchased Assets other than Nationstar's Qualified Bid, the Debtors shall not conduct the Auction with respect to such Nationstar Purchased Assets for which no Qualified Bids were received (other than Nationstar's Qualified Bid), and instead shall seek approval of the sale of the relevant Nationstar Purchased Assets to Nationstar pursuant to the provisions of the Nationstar APA at the Sale Hearing.

26.    The Debtors are authorized to conduct the Sale Transactions without the necessity of complying with any state or local bulk transfer laws or requirements.

27.    In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

28.    Notwithstanding any possible applicability of Bankruptcy Rules 6004 or 6006, or otherwise, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.  For the avoidance of doubt, the Break-Up Fee and Expense Reimbursement approved by this Order shall be immediately appealable and failure to appeal in

accordance with the Bankruptcy Rules or other applicable law shall constitute a waiver of such rights.

29.     Subject to the provisions of this Order governing payment of the Break-Up Fee and Expense Reimbursement, all net proceeds from the consummation of the Sale Transactions or a Competing Transaction (as defined in the APAs) shall be treated in accordance with the terms of the Debtors' proposed postpetition secured debtor-in-possession financing (the "DIP Financing") and any order of this Court approving the DIP Financing.

30.     With the exception of this Order's provisions pertaining to the Break-Up Fee and Expense Reimbursement, to the extent that any inconsistency exists between this Order and the terms of the DIP Financing or any order of this Court approving such DIP Financing, the terms of the DIP Financing and the order approving the same shall control.

31.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

32.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

33.     Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (i) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (ii) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (iii) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (iv) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates (excluding ResCap and its subsidiaries).

ny-1014115

34.     The Court shall retain jurisdiction with respect to all matters relating to the

interpretation or implementation of this Order.


Dated:  New York, York
          [                    ], 2012

_____
The Honorable Martin Glenn
United States Bankruptcy Judge

ny-1014115

# **EXHIBIT A-1**

## **PROPOSED SALE PROCEDURES**

## SALE PROCEDURES

By motion dated May 14, 2012 (the "Motion"), Residential Capital LLC ("ResCap") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"), requested, among other things, approval of the process and procedures through which it will determine the highest or otherwise best price for the purchase of certain assets (collectively, the "Purchased Assets") of the Debtors under two separate asset purchase agreements, each as described below.  On __ _, 2012, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Procedures Order"), which, among other things, authorized the Debtors to determine the highest or otherwise best price for the Purchased Assets through the process and procedures set forth below (the "Sale Procedures").

On __ _, 2012, as further described below, in the Motion, and in the Sale Procedures Order, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing"), at which the Debtors shall seek entry of an orders (each, a "Sale Order") authorizing and approving the sale of the Purchased Assets (the "Sale Transactions") pursuant to (i) that certain Asset Purchase Agreement (the "Nationstar APA") between certain of the Debtors and Nationstar Mortgage LLC ("Nationstar"), providing for the sale of certain assets as identified therein (the "Nationstar Purchased Assets") substantially in the form annexed as <u>Exhibit B</u> to the Motion, subject to the submission of higher or better offers in an auction process (the "Auction"); and (ii) that certain Asset Purchase Agreement (the "AFI APA", together with the Nationstar APA, the "APAs") between certain of the Debtors and (a) Ally Financial Inc. ("AFI") and (b) BMMZ Holdings LLC ("BMMZ"), providing for the sale of certain assets identified therein (the "AFI Purchased Assets") substantially in the form annexed as <u>Exhibit C</u> to the Motion, subject to the submission of higher or better offers in an Auction.  The Sale Hearing may be conducted in connection and in accordance with a hearing to consider confirmation of a plan of reorganization proposed in these Chapter 11 cases by the Debtors (the "Confirmation Hearing").

## Participation Requirements

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in purchasing the Purchased Assets (a "Potential Bidder") must first deliver the following materials to the Debtors, c/o Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Gary S. Lee and Larren M. Nashelsky) and Centerview Partners, 31 West 52nd Street, New York, NY 10019 (Attn: Samuel M. Greene and Marc D. Puntus):

(i) An executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors; and

(ii) Evidence of corporate authority to commit to the Sale Transaction(s), including the most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of the Sale Transaction(s), (a) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors, and (b) a written commitment acceptable to the

Debtors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the Sale Transaction(s).

A "Qualified Bidder" is a Potential Bidder whose Financials (or the Financials of its equity holder(s), if applicable) demonstrate the financial capability to consummate the Sale Transaction(s), whose bid meets all of the Bid Requirements described below *and* that the Debtors, in their discretion, but after consulting with the statutory committee of unsecured creditors appointed in these Chapter 11 cases (the "Creditors' Committee"), determine is likely to consummate the Sale Transaction(s), if selected as the Successful Bidder, after taking into account all relevant legal, regulatory, and business considerations.

## Obtaining Due Diligence Access

To obtain due diligence access or additional information regarding the Purchased Assets or the Sellers subject of the APAs, a Qualified Bidder (other than Nationstar or AFI) must first provide the Debtors with a written nonbinding expression of interest (the "Expression of Interest") regarding (i) the Qualified Bidder's proposed Sale Transaction(s), (ii) the purchase price range, (iii) the structure and financing of the Sale Transaction(s), (iv) any conditions to closing that it may wish to impose, and (v) the nature and extent of additional due diligence it may wish to conduct. If the Debtors, in their business judgment, determine that a Qualified Bidder that has submitted an Expression of Interest is reasonably likely to make a bona fide offer (a "Qualifying Expression of Interest"), then the Debtors shall afford such Qualified Bidder reasonable due diligence, including the ability to access information from a confidential electronic data room concerning the Purchased Assets (the "Data Room"). The Debtors will notify each party that submits an Expression of Interest regarding whether such party has made a Qualifying Expression of Interest within five (5) business days of the Debtors' receipt of the Qualifying Expression of Interest.

Neither the Debtors nor any of their affiliates (or any of their respective representatives) are obligated to furnish any information relating to the Sellers subject of the APAs, the Purchased Assets, and/or the Sale Transactions to any person except to Nationstar and AFI, respectively, or another Qualified Bidder who makes a Qualifying Expression of Interest. The Debtors shall promptly give Nationstar and AFI, respectively, any confidential memoranda (the "Confidential Memoranda") containing information and financial data and any other relevant materials or information that Nationstar or AFI, as applicable, may reasonably request with respect to the Purchased Assets and access to all due diligence information provided to any other Qualified Bidder.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders who make a Qualifying Expression of Interest. If the Debtors determine that due diligence material requested by such Qualified Bidder is reasonable and appropriate under the circumstances, but such material has not previously been provided to any other Qualified Bidder who has made a Qualifying Expression of Interest, the Debtors shall post such materials in the Data Room and provide notification of such posting by electronic transmission to such Qualified Bidders and Nationstar and AFI, respectively.

2

Unless the Debtors determine otherwise, the availability of additional due diligence to a Qualified Bidder who has made a Qualifying Expression of Interest will cease after the Bid Deadline (as defined below).

## Bid Deadline

**The deadline for submitting Bid Packages (as defined below) by a Qualified Bidder shall be September 18th, 2012, at 5:00 p.m. (Eastern Time) (the "Bid Deadline").**

On or prior to the Bid Deadline, a Qualified Bidder that desires to make a bid shall deliver (i) one written copy of its bid (a "Bid Proposal"); (ii) a copy of such bidder's proposed APA(s) that has been marked to show amendments and modifications to the Nationstar APA and/or the AFI APA, as applicable, including price and terms, and with respect to which the Qualified Bidder agrees to be bound (each a "Marked Agreement"); and (iii) a list of executory contracts and leases that the Qualified Bidder intends to assume (the "Proposed Assumption Contracts" and together with a Bid Proposal and a Marked Agreement, a "Bid Package") to the Debtors, c/o Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Gary S. Lee (glee@mofo.com) and Larren M. Nashelsky (lnashelsky@mofo.com), Centerview Partners, 31 West 52nd Street, New York, NY 10019 (Attn: Samuel M. Greene (sgreene@centerviewpartners.com) and Marc Puntus (mpuntus@centerviewpartners.com), and counsel to the Creditors' Committee, when formed.

On the Bid Deadline, the Debtors will provide copies of the Bid Packages to counsel to the Creditors' Committee, Nationstar (with respect to the Nationstar Purchased Assets), and AFI (with respect to the AFI Purchased Assets).

A Qualified Bidder may submit Bid Proposals and Bid Packages for the Nationstar Purchased Assets and/or the AFI Purchased Assets; provided, however, that a Qualified Bidder that bids on both the Nationstar Purchased Assets and the AFI Purchased Assets must provide separate Bid Proposals for the Nationstar Purchased Assets and the AFI Purchased Assets.  The Debtors will consider Qualified Bids for all of the Nationstar Purchased Assets or for only the Ginnie Mae MSRs (as defined in the Nationstar APA); provided that to the extent a Qualified Bidder seeks to bid only on the Ginnie Mae MSRs, such bid must also be provided separately.  Under no other circumstances may a Qualified Bidder submit separate bids for any portion of the Nationstar Purchased Assets (other than in respect of the Ginnie Mae MSRs) or the AFI Purchased Assets. Only bulk bids for these assets will be deemed Qualified Bids (as defined below) provided the other requirements are met.

## Due Diligence from Bidders

The Debtors and their advisors shall be entitled to due diligence from a Qualified Bidder, upon execution of a confidentiality agreement that is reasonably satisfactory to the Debtors.  Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors.  Failure of a Qualified Bidder to fully comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by the Qualified Bidder is not a Qualified Bid.

## Bid Requirements

A Bid Proposal must be a written irrevocable offer from a Qualified Bidder (i) stating that the Qualified Bidder offers to consummate a Sale Transaction pursuant to the Marked Agreement(s), (ii) confirming that the offer shall remain open until the closing of a Sale Transaction to the Successful Bidder (as defined below), (iii) enclosing a copy of the Marked Agreement(s) and Proposed Assumption Contracts, and (iv)(A) in the case of the Nationstar APA, including a certified or bank check, or wire transfer, in the amount of $72 million (of which $6,076,799 shall apply only to the Ginnie Mae MSRs) to be held in escrow as a "Good Faith Deposit"; (B) in the case of the AFI APA including a certified or bank check, or wire transfer, in the amount of $25 million to be held in escrow as a Good Faith Deposit.  Nationstar has made a deposit in the amount of $72 million in connection with its execution of the Nationstar APA, which shall be deemed to be its Good Faith Deposit for all purposes under these Sale Procedures.

All Good Faith Deposits will be non-refundable if the Qualified Bidder is selected as the Successful Bidder and fails to consummate the Sale Transaction (other than as a result of a breach by the respective Sellers under the APAs) and refundable if it is not selected as the Successful Bidder (other than as a result of its own breach).

In addition to the foregoing requirements, a Bid Proposal or Bid Proposals must:

(i) not be conditioned on the outcome of unperformed due diligence by the bidder;

(ii) not request or entitle the bidder to any breakup fee, expense reimbursement, or similar type of payment;

(iii) fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

(iv) for a Bid Proposal on the Nationstar Purchased Assets, except as provided in subclause (v) below, provide consideration for the Purchased Assets solely in the form of cash;

(v) for a Bid Proposal on the Nationstar Purchased Assets provide consideration for the Purchased Assets in a combination of cash and seller debt financing excluding credit bidding ("Seller Financing") if, prior to or contemporaneous with the submission of such bid, the Debtors have permitted Nationstar to modify the APA to substitute Seller Financing, on terms identical to those contained in such bid, for cash consideration on a dollar for dollar basis; and

(vi) (a) for a Bid Proposal on all of the Nationstar Purchased Assets, provide for the aggregate cash and Seller Financing (if any) portions of such bid being at least equal to the sum of (1) the cash portion of the consideration provided for in the Nationstar APA, plus (2) the Seller Financing portion (if any) of the consideration provided for in the Nationstar APA following a permitted amendment under subclause (v) above, plus (3) the amount of the Break-Up Fee and Expense

4

Reimbursement, plus (4) an amount of cash equal to 1% of the sum of the amounts provided for in subsections (1) and (2) of this subclause (vi)(a); or

(b) for a Bid Proposal on only the Ginnie Mae MSRs, provide for the aggregate cash and Seller Financing (if any) portions of such bid being at least equal to the sum of (1) the cash portion of the consideration provided for in the Nationstar APA for the Ginnie Mae MSRs, plus (2) the Seller Financing portion (if any) of the consideration provided for in the Nationstar APA following a permitted amended under subclause (v) above, plus (3) the proportional amount of the Break-Up Fee and Expense Reimbursement allocable to the Ginnie Mae MSRs based upon the allocation of the Purchase Price (as defined in the Nationstar APA) between the Ginnie Mae MSRs and the other Nationstar Purchased Assets, plus (4) an amount of cash equal to 1% of the sum of the amounts provided for in subsections (1) and (2) of this subclause (vi)(b).

A timely Bid Proposal received from a Qualified Bidder and that meets the requirements set forth above (collectively, the "Bid Requirements") will be considered a Qualified Bid if the Debtors and their advisors, in consultation with the Creditors' Committee, reasonably believe that such bid would be consummated if selected as the Successful Bid (as defined below). For all purposes hereof, Nationstar's and AFI's respective offers to acquire the Purchased Assets in accordance with each of the APAs, shall each constitute a Qualified Bid. The Debtors shall notify Nationstar promptly after qualifying any bidder as a Qualified Bidder or receiving any Qualified Bids for the Nationstar Purchased Assets or the Ginnie Mae MSRs. The Debtors shall notify AFI promptly after qualifying any bidder as a Qualified Bidder or receiving any Qualified Bids for the AFI Purchased Assets.

## Auction

In the event that, on or before the Bid Deadline, the Debtors receive one or more Qualified Bid Packages, the Debtors will conduct one or more separate auctions in accordance with the following procedures upon notice to all Qualified Bidders. The Auction will commence at 10:00 a.m., Eastern Time, on September 25, 2012, at the offices of Morrison & Foerster LLP, 1290 Avenue of the America, New York, NY 10104 or such later time on such date or other place as the Debtors shall timely notify Nationstar, AFI, all other Qualified Bidders and the Notice Parties. The Auction shall conclude within seven (7) business days following the Bid Deadline. If (a) no Qualified Bids with respect to the Nationstar Purchased Assets other than Nationstar's Qualified Bid are timely received or (b) the Debtors only timely receive Qualified Bids for the Ginnie Mae MSRs and do not timely receive a Qualified Bid for the remaining Nationstar Purchased Assets other than Nationstar's Qualified Bid, no auction will be held with respect to such Nationstar Purchased Assets for which no Qualified Bids were received (other than Nationstar's Qualified Bid), and the Debtors will request that the Bankruptcy Court enter a Sale Order approving the sale of the relevant Nationstar Assets to Nationstar pursuant to the Nationstar APA.

Unless the Debtors otherwise determine, only the Debtors, Nationstar (in the case of the Nationstar APA), and AFI (in the case of the AFI APA), a representative of each of the Creditors' Committee and any Qualified Bidder (and the legal and financial advisors to each of

the foregoing), will be entitled to attend the Auction, and only Nationstar and AFI, respectively, and Qualified Bidders will be entitled to make any subsequent bids at the Auction.

The Debtors may employ and announce at the Auction additional procedural rules that they determine appropriate under the circumstances for conducting the Auction, provided that such rules (i) are not inconsistent with the Sale Procedures Order, the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court entered in connection herewith; (ii) are disclosed to each Qualified Bidder; and (iii) do not provide any Qualified Bidder with more favorable treatment than that afforded to Nationstar or AFI.

Each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale Transaction(s).

Bidding at the Auction for the Nationstar Purchased Assets and the AFI Purchased Assets will begin with the Qualified Bid selected and announced by the Debtors (the "Starting Bid") and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid"), and (ii) the Debtors determine that such Subsequent Bid is (a) for the first round, a higher or otherwise better offer than the Starting Bid, and (b) for subsequent rounds, a higher or otherwise better offer than the leading bid.  In the case of the Nationstar Purchased Assets, for purposes of determining whether a Subsequent Bid is a higher or otherwise better offer, the AFI Purchased Assets shall be excluded.

With respect to the Nationstar Purchased Assets (including the Ginnie Mae MSRs), the initial minimum bid increment at the Auction shall be $25 million, and cannot be reduced or increased without the consent of Nationstar.   To the extent applicable, and only for the Ginnie Mae MSRs, the initial minimum bid increment at the Auction shall be $2 million, and cannot be reduced or increased without the consent of Nationstar.  With respect to the AFI Purchased Assets, the initial minimum bid increment at the Auction shall be $15 million, and cannot be reduced or increased without the consent of AFI.  Thereafter, in each circumstance, minimum bid increments at the Auction shall be determined by the Debtors in their discretion.

For purposes of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Nationstar), the Debtors will give Nationstar a credit equal to the sum of the Break-Up Fee and Expense Reimbursement.  To the extent the Ginnie Mae MSRs may be sold under a separate auction process, the Break-Up Fee and Expense Reimbursement may be proportionally allocated between the Ginnie Mae MSRs and the other assets subject of the Nationstar APA based on the allocation of the Purchase Price (as such term is defined in the Nationstar APA) between the Ginnie Mae MSRs and the other assets subject of the Nationstar APA.

No additional bids may be considered after the Auction is closed.

Following any Auction, the Debtors, in their sole discretion, in consultation with the Creditors' Committee, shall determine the highest or best bid (the "Successful Bid") and the bidder with respect thereto, the ("Successful Bidder").  The next highest bidder after the

6

Successful Bidder shall be deemed the ("Next-Highest Bidder").  The Next-Highest Bidder shall be required to hold open its bid until the earlier of (i) the closing of the sale to the Successful Bidder; and (ii) the Confirmation Hearing (the "Back-Up Bid Release Date"); provided, however, that the terms of the Nationstar APA shall apply in all respects with respect to the period of time Nationstar is required to hold its bid open.

## Acceptance of Qualified Bids

No later than October 31, 2012, the Debtors shall present to the Bankruptcy Court at the Sale Hearing or the Confirmation Hearing, as applicable, the Successful Bid.  At the Sale Hearing or the Confirmation Hearing, as applicable, certain findings will be sought from the Bankruptcy Court, including that (i) the Successful Bidder was selected in accordance with these Sale Procedures, and (ii) consummation of the Sale Transactions as contemplated by the Successful Bid will provide the highest or otherwise best result and is in the best interests of the Sellers and their estates in these Chapter 11 cases.

In the event that, for any reason, the Successful Bidder fails to close the relevant Sale Transaction contemplated by its Successful Bid, then, without notice to any other party or further Bankruptcy Court order, the Debtors shall be authorized to close with the Next-Highest Bidder.

## Return of Good Faith Deposit

Except as otherwise provided in this paragraph with respect to the Successful Bidder and the Next-Highest Bidder, the Good Faith Deposits of all Qualified Bidders required to submit such a deposit under the Sale Procedures shall be returned upon or within two (2) business days after entry of the Sale Order.  The Good Faith Deposit of the Successful Bidder shall be held until the closing of the Sale Transaction and applied in accordance with the Successful Bid.  The Good Faith Deposit of the Next-Highest Bidder shall be retained in escrow until the Back-Up Bid Release Date and returned to the Next-Highest Bidder within two (2) business days of such date.  Until the return of the Good Faith Deposit in accordance with the above, the Debtors shall hold such deposits in an interest-bearing escrow account.  If the closing does not occur, the disposition of Good Faith Deposits shall be as provided in the Successful Bid and Next-Highest Bidder Bid, as applicable.  The Nationstar APA (including any escrow agreement entered into in connection therewith) shall apply in all respects to the application or return of the Good Faith Deposit of Nationstar and the provisions of this paragraph shall not apply.

7

**<u>EXHIBIT A-2</u>**

**PROPOSED NOTICE OF AUCTION AND SALE HEARING**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------

|                                        |     |                          |
| In re:                                 | )   | Case No. 12-12020 (MG)   |
|                                        | )   |                          |
| RESIDENTIAL CAPITAL, LLC, et al.,      | )   | Chapter 11               |
|                                        | )   |                          |
|                             Debtors.   | )   | Jointly Administered     |
|                                        | )   |                          |

---------------------------------------------------------------------------

### NOTICE OF PUBLIC AUCTION AND SALE HEARING TO SELL CERTAIN OF DEBTORS' ASSETS PURSUANT TO ASSET PURCHASE AGREEMENTS WITH NATIONSTAR MORTGAGE LLC AND ALLY FINANCIAL INC. AND RELATED RELIEF AND DATES

PLEASE TAKE NOTICE THAT upon the motion (the "Motion") of Residential Capital LLC ("ResCap") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"), dated May 14, 2012, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has issued an order dated [      ], 2012 (the "Sale Procedures Order"), among other things, (i) authorizing and approving certain procedures for the submission and acceptance of any competing bids (the "Sale Procedures"); (ii) scheduling a bid deadline, an auction and sale hearing (the "Sale Hearing") to approve asset sales by certain of the Debtors of: (a) the Purchased Assets (as such term is defined in the Asset Purchase Agreement by and between Nationstar Mortgage LLC ("Nationstar") and certain of the Debtors (the "Nationstar APA") and (b) the Purchased Assets (as such term is defined in the Asset Purchase Agreement by and between Ally Financial Inc. ("AFI") and BMMZ Holdings LLC ("BMMZ") and certain of the Debtors (the "AFI APA," together with the Nationstar APA, the "APAs"), free and clear of all liens, claims, encumbrances, and other interests, and subject to higher or better offers (the "Sale Transactions" or the "Sales") subject to the submission of higher or better offers in an auction process (the "Auction"); (iii) approving the Break-Up Fee and the Expense Reimbursement; (iv) approving forms of notice; and (v) granting related relief.

A.    <u>AUCTION</u>

**PLEASE TAKE FURTHER NOTICE** that the Auction and sales of the Purchased Assets by the Debtors will occur in accordance with procedures established by the Sale Procedures Order, entered on [__], 2012 [Docket No. [__]], attached hereto as Exhibit 1.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order, any party wishing to participate in the Auction must do so in accordance with the Sale Procedures Order, including, without limitation, the requirements for qualifying as a "Qualified Bidder" and submitting a "Qualified Bid" such that it is actually **received not later than [September 18, 2012,] at __:00 p.m. (ET)** by the parties identified in the Sale Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Sale Procedures, the Debtors will conduct the Auction on [**September 25, 2012 at __:00 _.m. (ET)** at the offices of Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104, or such later time on such date or other place as the Debtors shall timely notify all Qualified Bidders and the Notice Parties (as defined in the Sale Procedures Order).

B.    <u>SALE HEARING</u>

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing will be held before the Honorable Martin Glenn, United States Bankruptcy Judge, in Courtroom [___] of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408, on **[October 15, 2012], at __:__ _.m. (ET)**.  The Sale Hearing may be conducted in connection with, and as part of, a hearing to consider confirmation of a plan of reorganization under section 1129 of the Bankruptcy Code and may be adjourned without notice by an announcement of the adjourned date at the Sale Hearing.

C.    <u>SALE FREE AND CLEAR</u>

**PLEASE TAKE FURTHER NOTICE** that the order approving each of the Sale Transactions will provide that, except for any Assumed Liabilities set forth in each of the Nationstar APA and AFI APA, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets purchased by Nationstar and AFI, respectively, shall be transferred to Nationstar and AFI and the Assumed Contracts under the Nationstar APA shall be assumed and assigned to Nationstar, and such transfer and assignment shall be free and clear of all claims, liabilities, interests, liens, obligations, and encumbrances of any Person (including, without limitation, claims, obligations or liabilities based on any successor or transferee theory of liability or relating to any act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date, and any indemnification claims, obligations or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date) and any and all rights and claims under any bulk transfer statutes and similar laws, whether arising by agreement,

2

by statute or otherwise and whether occurring or arising before, on or after the date on which the Chapter 11 cases were commenced, whether known, unknown, contingent or unliquidated, arising prior to the Closing Date.  Any person holding any such claims, liabilities, interests, liens, obligations, or encumbrances shall be enjoined and forever barred from asserting such claims, liabilities, interests, liens, obligations, or encumbrances against Nationstar or AFI, respectively, the Purchased Assets purchased by Nationstar and AFI and any of their affiliates, as more particularly described and provided for in the proposed order approving the Sale Transactions to Nationstar and AFI, respectively.

D.    OBJECTIONS

**PLEASE TAKE FURTHER NOTICE THAT RESPONSES OR OBJECTIONS, IF ANY, TO THE RELIEF SOUGHT IN THE MOTION SHALL BE FILED** with the Clerk of the Bankruptcy Court and served upon: (i) Morrison & Foerster LLP, attorneys for the Debtors, 1290 Avenue of the Americas, New York, New York 10104 (Attn:Larren M. Nashelsky, Esq. (lnashelsky@mofo.com) and Gary S. Lee, Esq. and glee@mofo.com)); (ii) Sidley Austin LLP, attorneys for Nationstar, One South Dearborn, Chicago Illinois 60603 (Attn: Richard M. Cieri (richard.cieri@kirkland.com), Larry Nyhan (lnyhan@sidley.com) and Stephen E. Hessler (stephen.hessler@kirkland.com); (iii) Kirkland & Ellis LLP, attorneys for AFI, (Attn: Ray C. Schrock (rschrock@kirkland.com)); (iv) Mayer Brown LLP, attorneys for AFI, 71 South Wacker Drive, Chicago, Illinois 60606 (Attn: Elizabeth A. Raymond (eraymond@mayerbrown.com)); (v) [_____], attorneys for the Creditors' Committee; and (vi) the Office of the United States Trustee for the Southern District of New York (Attn: [_____]), 33 Whitehall Street, 21st Floor, New York, New York 10004, **SO AS TO BE RECEIVED NO LATER THAN** [October 8, 2012]**, AT 5:00 P.M. (EASTERN TIME) (the "Objection Deadline")**.

**PLEASE TAKE FURTHER NOTICE** that the failure of any person or entity to file a response or objection on or before the Objection Deadline shall be deemed a consent to the Sale Transactions and the other relief requested in the Motion, and shall bar the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Procedures, the Motion, the Sale Transactions, the approval of related agreements, and the Debtors' consummation of the Sale Transactions.

E.    COPIES OF THE MOTION AND RELATED SALE DOCUMENTS

**PLEASE TAKE FURTHER NOTICE** that this Notice provides only a partial summary of the relief sought in the Motion, the terms of the Sale Procedures Order and the Sale Approval Orders.  Copies of such documents are available for inspection (i) by accessing (a) the website of the Bankruptcy Court at http://www.nysb.uscourts.gov, or (b) the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants, at www.kccllc.net/rescap or (ii) by visiting the Office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004-1408.  Copies also may be obtained by faxing a written request to the attorneys for the Debtors, Morrison & Foerster LLP (Attn:  Larren M. Nashelsky, Esq. and Gary S. Lee, Esq. at (212) 468-7900).  The terms of such documents shall control in the event of any conflict with this Notice.

3

Dated: New York, New York
       [_____], 2012

                                                 _____

Larren M. Nashelsky
Gary S. Lee
Todd M. Goren
Alexandra Steinberg Barrage
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
*Proposed Counsel for the Debtors and Debtors in Possession*

4

# EXHIBIT A-3

**PROPOSED NOTICE OF ASSUMPTION AND ASSIGNMENT**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ )
                               )
In re:                              )     Case No. 12-12020 (MG)
                               )
RESIDENTIAL CAPITAL, LLC, et al.,   )     Chapter 11
                               )
                  Debtors.    )     Jointly Administered
                               )
------------------------------------------------------------------ )

### NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO

PLEASE TAKE NOTICE THAT:

        1.     By the motion dated May 14, 2012 (the "Motion"), Residential Capital LLC ("ResCap") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"),[1] sought, among other things, (i) authorization and approval of certain proposed procedures (the "Sale Procedures") with respect to two proposed sales (the "Sale Transactions" or "the Sales") by certain of the Debtors of (a) the Purchased Assets (as such term is defined in the Asset Purchase Agreement by and between Nationstar Mortgage LLC and certain of the Debtors (the "Nationstar APA")); and (b) the Purchased Assets (as such term is defined in the Asset Purchase Agreement by and between Ally Financial Inc. ("AFI") and BMMZ Holdings LLC ("BMMZ") and certain of the Debtors (the "AFI APA," together with Nationstar APA, the "APAs"); (ii) scheduling of a hearing on the Sales (the "Sale Hearing") and setting objection deadlines and bidding deadlines with respect to the Sales and Auction; (iii) approving the form and manner of notices for (a) an auction of the purchased assets (the "Auction") and (b) the Sale Hearing; and (iii) the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assumed Contracts") in connection with the sale of the Purchased Assets pursuant to the Nationstar APA (the "Assumption and Assignment Procedures").

        2.     The Nationstar APA, together with its respective ancillary agreements, contemplates (i) the sale of the Purchased Assets subject to higher or better offers (the "Nationstar Sale Transaction") and (ii) the assumption and assignment of the Assumed Contracts.

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital LLC in Support of the Chapter 11 Petitions and First Day Pleadings.

3.    The Nationstar APA contemplates, and the proposed order approving the Nationstar Sale Transaction (the "Nationstar Sale Approval Order"), which may be incorporated into a confirmation order, if approved, shall authorize the assumption and assignment of certain executory contracts and leases pursuant to the Nationstar APA, to the Purchaser (as defined in the Nationstar APA).  The Sellers maintain schedules (the "Schedules") containing the Assumed Contracts that the Purchaser has designated as Assumed Contracts (the "Designated Agreements").  You are receiving this Notice because you are a party to one or more of the Designated Agreements.

4.    **THE ATTACHED SCHEDULES CONTAIN A LIST OF ASSUMED CONTRACTS THAT <u>MAY</u> BE ASSUMED.  SUBJECT TO CERTAIN EXCEPTIONS EXPRESSLY PROVIDED FOR IN THE NATIONSTAR APA, THE PURCHASER RESERVES ITS RIGHTS UNDER THE NATIONSTAR APA TO EXCLUDE ANY ASSUMED CONTRACT FROM THE LIST OF ASSUMED CONTRACTS TO BE ASSUMED AND ASSIGNED BY NO LATER THAN THE DESIGNATION DEADLINE THAT IS TWO BUSINESS DAYS PRIOR TO THE CLOSING DATE, AS DISCUSSED IN PARAGRAPH 14 BELOW.**

5.    Bankruptcy Code section 365(b)(1) requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure any defaults under executory contracts and unexpired leases at the time of assumption.  The required cure amount the ("Cure Amount") for each Designated Agreement calculated by the Debtors is listed on the Schedule attached hereto.  Please note that if no amount is stated for a particular Designated Agreement, the Debtors believe that there is no Cure Amount outstanding for such Designated Agreement.

6.    Please review the Cure Amount for your Assumed Contract.  In some instances, additional terms or conditions of assumption and assignment with respect to a particular Assumed Contract are provided.

7.    In cases where a Servicing Agreement is contained within the same writing as an agreement related to origination, (i) the Debtors intend to assume and assign to the Purchaser only the Servicing Agreement; (ii) the origination agreement shall be severed from the multi-agreement document pursuant to the Nationstar Sale Approval Order; and (iii) the Purchaser shall have no liability under any origination agreement.  The Nationstar Sale Approval Order will also generally provide that no delay or failure of performance by the Debtors under or in respect to any origination agreement will (i) affect any right of Nationstar under any Servicing Agreement or (ii) permit, result in or give rise to any setoff, delay, deferral, defense, recoupment, claim, counterclaim, default or other impairment of the rights of the Purchaser under any Servicing Agreement.

8.    Objections, if any, to the proposed assumption and assignment of the Assumed Contracts, including, but not limited to, (a) objections related to adequate assurance of future performance or whether applicable law excuses the non-debtor counterparty to the Designated Agreement (the "Non-debtor Counterparty") from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code (an "Assignment Objection"), (b) the severing of a Servicing Agreement from any multi-agreement document or (c) the proposed Cure Amount (a "Cure Amount Objection," and,

2

together with an Assignment Objection and an objection described in clause (b), a "Contract Objection") must be made in writing and filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") so as to be received **[August 30, 2012]** (the "Assignment Objection Deadline") by (i) the Debtors, Residential Capital, LLC, 1100 Virginia Drive, Fort Washington, Pennsylvania 19034, Attn: Tammy Hamzehpour, Esq. (tammy.hamzehpour@ally.com); (ii) Morrison & Foerster LLP, attorneys for the Debtors, 1290 Avenue of the Americas, New York, New York 10104 (Attn: Larren M. Nashelsky and Gary S. Lee); (iii) with respect to Assumed Contracts listed in the Nationstar APA, Sidley Austin LLP, attorneys for the Nationstar, One South Dearborn, Chicago, Illinois 60603 (Attn: Jessica C.K. Boelter jboelter@sidley.com); (vi) the attorneys for the Creditors' Committee; and (vii) the Office of the United States Trustee for the Southern District of New York (Attn: [     ]), 33 Whitehall Street, 21st Floor, New York, New York 10004. Any objection that challenges a Cure Amount, or otherwise asserts that there exist outstanding defaults under an Assumed Contract, must set forth with specificity the Cure Amount being claimed by the objecting party or the nature of the asserted default, as applicable, and must include appropriate documentation in support thereof satisfactory to the Debtors and Nationstar.

9.      Upon the filing of any Contract Objection, the Debtors, the Purchaser, and the objecting non-debtor counterparty shall meet and confer in good faith to attempt to resolve any such Objection without Bankruptcy Court intervention, with any resolution memorialized in a joint stipulation or as otherwise agreed by the parties. If the Contract Objection is solely as to the Cure Amount, then the Assumed Contract shall nevertheless be assumed and assigned to the Purchaser on the Assumption Effective Date (as defined in paragraph 16), the Sellers shall pay the undisputed portion of the Cure Amount, and the disputed portion of the Cure Amount shall be determined via the meet and confer process or by the Bankruptcy Court as described herein. The Purchasers shall have no liability to any contract counter-party for any Cure Amount (whether disputed or undisputed).

10.     All objections to the assumption and assignment of the Assumed Contracts and the Cure Amounts shall be resolved by no later than the conclusion of the Sale Hearing. The Debtors will request that Contract Objections to the proposed Cure Amounts based upon unquantifiable or unknown pre-closing liability be overruled; provided, however, that no such liabilities may asserted against the Purchaser or the Purchased Assets, as further described in the Sale Approval Order.

11.     If the Debtors, Purchaser, and the non-debtor counterparty determine that the Contract Objection cannot be resolved without judicial intervention, then such Contract Objection shall be determined by the Bankruptcy Court either at the Sale Hearing or such other date as determined by the Bankruptcy Court, unless the Debtors, the Purchaser, and the non-debtor counterparty to the Assumed Contract agree otherwise; if the Bankruptcy Court determines at such hearing that the Assumed Contract should not be assumed and assigned, then such contract or lease shall no longer be considered an Assumed Contract.

12.     If you agree with the respective Cure Amount(s) listed in the Schedules with respect to your Assumed Contract(s), and otherwise do not object to the Debtors' assumption and assignment of your Assumed Contract, you are not required to take any further action.

3

13.    Unless an Objection is filed and served before the Objection Deadline, you shall be deemed to have consented to the assumption and assignment of your Assumed Contract and the Cure Amount(s) for your Assumed Contract(s), and acknowledged that no default exists under the Assumed Contract other than those being cured by the Cure Amounts or defaults that are not required to be cured under section 365(b)(2).  You shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts against the Debtors, their estates, or the Purchaser.

14.    No later than two business days prior to the Closing Date under the Nationstar APA (the "Contract Designation Deadline"), the Purchaser may, in its sole discretion, subject to certain limitations specified in the Nationstar APA (applicable only as between the parties thereto), exclude any of the Assumed Contracts by providing notice to the Sellers.  Upon such designation, the contract or Lease referenced therein shall no longer be considered an Assumed Contract, shall not be deemed to be, or to have been, assumed or assigned, and shall remain subject to assumption, rejection, or assignment by the Debtors.  Until the Contract Designation Deadline, the Purchaser also may, subject to certain limitations specified in the Nationstar APA (applicable only as between the parties thereto), designate additional contracts or leases as Assumed Contracts to be assumed and assigned by providing notice to the affected non-debtor counterparties indicating that the Debtors intend to assume and assign additional Assumed Contracts.

15.    The Debtors' decision to assume and assign the Assumed Contracts is subject to Bankruptcy Court approval and consummation of the Nationstar Sale Transaction, and, absent such consummation, each of the Assumed Contracts will not be assumed or assigned to the Purchaser and shall in all respects be subject to further administration under the Bankruptcy Code.

16.    All Assumed Contracts will be assumed by and assigned to the Purchaser on the Closing Date, except as may be otherwise set forth in the APA.

17.    Until the Assumption Effective Date, assumption and assignment thereof is subject to the Purchaser's rights to modify the designation of Assumed Contracts as set forth in paragraph 14 above.  Except as otherwise provided by the APA, the Purchaser shall have no rights in and to a particular Assumed Contract until such time as the particular Assumed Contract is assumed and assigned in accordance with the procedures set forth herein.

18.    The inclusion of any document on the list of Designated Agreements shall not constitute or be deemed to be a determination or admission by the Debtors or the Purchaser that such document is, in fact, an executory contract or Lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.

19.    Any Assignment Objection or Cure Amount Objection shall not constitute an objection to the relief generally requested in the Motion (e.g., the sale of the Purchased Assets by the Debtors to the Purchaser free and clear of liens, claims, encumbrances, and interests), and parties wishing to object to the relief generally requested in the Motion must file and serve a separate objection in accordance with the procedures approved and set forth in the order of the Bankruptcy Court approving the Sale Procedures (the "Sale Procedures Order").

4

20.    If a party other than Nationstar is determined to be the highest and best bidder for the assets to be sold pursuant to the Nationstar Sale Transactions, you will receive a separate notice providing additional information regarding the treatment of your contract(s) or Lease(s); *provided, however*, that if the applicable Cure Amount has been established pursuant to the procedures set forth in this Notice, it shall not be subject to further dispute if the new purchaser seeks to acquire such contract or Lease.

21.    Nationstar is not assuming and parties will be enjoined from asserting against Nationstar any claims or obligations relating to the pre-closing period under any Assumed Contract (including any Servicing Agreement), whether such claims or obligations are known, unknown, fixed, contingent, unliquidated or liquidated at the time of the Closing, including, without limitation, any claims or liabilities relating to any act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date, and any indemnification claims or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date.  Any parties holding such claims or obligations will be required to file a Contract Objection if they disagree with the Cure Amount set forth on the Schedule.

22.    This Notice is subject to the full terms and conditions of the Sale Procedures Order, which shall control in the event of any conflict.  The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: New York, New York
　　　 [          ], 2012

　　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　　Larren M. Nashelsky
　　　　　　　　　　　　　　　　　　　　Gary S. Lee
　　　　　　　　　　　　　　　　　　　　Todd M. Goren
　　　　　　　　　　　　　　　　　　　　Alexandra Steinberg Barrage

　　　　　　　　　　　　　　　　　　　　MORRISON & FOERSTER LLP
　　　　　　　　　　　　　　　　　　　　1290 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　　New York, New York 10104
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 468-8000
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 468-7900

　　　　　　　　　　　　　　　　　　　　*Proposed Counsel for the Debtors and Debtors in Possession*

ny-1041078