# EXHIBIT A

## PROPOSED AMENDED SALE PROCEDURES ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------
                                                    )
In re:                                              )   Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,                   )   Chapter 11
                                                    )
                             Debtors.               )   Jointly Administered
                                                    )
---------------------------------------------------------------------------

**AMENDED ORDER UNDER 11 U.S.C. §§ 105, 363(b) AND 365 (I) AUTHORIZING AND APPROVING SALE PROCEDURES, INCLUDING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (II) SCHEDULING BID DEADLINE, AUCTION (IF NECESSARY) AND SALE HEARING; (III) ESTABLISHING ASSUMPTION AND ASSIGNMENT PROCEDURES, INCLUDING PROCEDURES FOR FIXING CURE AMOUNTS; AND (IV) ESTABLISHING NOTICE PROCEDURES AND APPROVING FORMS OF NOTICE**

Upon the motion, dated May 14, 2012 (the "Motion"),[1] of Residential Capital, LLC ("ResCap") and certain of its affiliates, as debtors in possession (collectively, the "Debtors") for entry of an Order,[2] under Bankruptcy Code sections 105, 363, 365, 503, 507 and 1123 of title 11, United States Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 for, among other things: (i) authorizing and approving the proposed sale procedures annexed hereto as <u>Exhibit A-1</u> (the "Sale Procedures") and the payment of the Break-Up Fee and Expense Reimbursement to Nationstar under the terms set forth in the Nationstar APA, (ii) scheduling a Bid Deadline, Auction (if necessary) and Sale Hearing, (iv) establishing procedures for assuming and assigning the Assumed Contracts, including procedures for fixing cure amounts (the "Cure Amounts") to be paid under section 365 of the Bankruptcy Code, determining whether alleged defaults (if any) exist and evaluating the Purchaser's ability to provide adequate assurance of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the Sale Procedures, or the APAs (as defined in the Motion). Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net./rescap for additional information.

future performance (the "Assumption and Assignment Procedures"), and (v) establishing notice procedures and approving forms of notice; and upon the (a) Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital LLC in Support of the Chapter 11 Petitions and First Day Pleadings, pursuant to Local Bankruptcy Rule 1007-2, (b) the Declaration of Samuel M. Greene in Support of the Proposed Sale of the Debtors' Assets, and (c) the Declaration of Tammy Hamzehpour in Support of the Proposed Sale of the Nationstar Purchased Assets Without a Privacy Ombudsman; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion having been given under the particular circumstances and it appearing that no further notice need be provided; and a hearing having been held on June 18, 2012, to consider the relief requested in the Motion (the "Sale Procedures Hearing"); and upon the record of the Sale Procedures Hearing, and all of the proceedings before this Court; and this Court having reviewed the Motion and any objections thereto (the "Objections") and found and determined that the relief sought in the Motion with respect to the Sale Procedures as provided herein is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefore, it is FOUND AND DETERMINED THAT:[3]

  A. The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 365, 503, 507 and 1123(a) of the Bankruptcy Code, and rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

2

Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

    B.  The Motion and this Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Guidelines for the Conduct of Asset Sales established by the Bankruptcy Court on November 18, 2009 pursuant to General Order M-383.

    C.  The Sale Procedures comply with the requirements of Local Rule 6004-1.

    D.  The Debtors have articulated compelling and sound business justifications for this Court to grant the Sale Procedures Relief, including this Court's (i) approval of payment of the Break-Up Fee and Expense Reimbursement under the circumstances, timing, and procedures set forth herein, in the Motion, and in the Nationstar APA; (ii) approval of the Sale Procedures; (iii) scheduling of the Bid Deadline, Auction, and Sale Hearing; (iv) approval of and authorization to serve the Sale Notice and the Assumption and Assignment Notice (each as hereinafter defined); and (v) approval of and authorization to publish the Sale Notice.

    E.  The Debtors have set a Sale Hearing (as described below), where they will seek authorization of the sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts subject of the APAs free and clear of all liens, encumbrances, and interests to Nationstar and AFI, respectively, or such other Successful Bidders as may result from the Auction.

    F.  Entry into each of the APAs with Nationstar and AFI, respectively, is in the best interest of the Debtors and the Debtors' estates and creditors. The APAs will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates. The terms of the Nationstar APA were negotiated by the Debtors and

3

ny-1014115

Nationstar in good faith and at arm's length. The terms of the AFI APA were negotiated by the Debtors and AFI in good faith and at arm's length.

G. The Break-Up Fee and Expense Reimbursement subject of the Nationstar APA are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

H. The Debtors' payment of the Break-Up Fee and Expense Reimbursement to Nationstar under the conditions set forth in the Nationstar APA was negotiated by the parties in good faith and at arm's length and is (i) an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; (ii) of substantial benefit to the Debtors' estates and creditors and all parties in interest; (iii) reasonable and appropriate; and (iv) necessary to ensure that Nationstar will continue to pursue the proposed Nationstar APA to undertake the sale of the Purchased Assets subject of the Nationstar APA. Notwithstanding anything to the contrary in this or any other order of this Court, the Break-Up Fee and Expense Reimbursement shall constitute allowed administrative expenses with priority pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

I. The Sale Procedures, a copy of which is annexed hereto as <u>Exhibit A-1</u>, are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Purchased Assets subject of the APAs.

J. The Notice of Auction and Sale Hearing (the "Sale Notice"), a copy of which is annexed hereto as <u>Exhibit A-2</u>, is reasonably calculated to provide parties in interest with proper notice of the proposed sale of the Purchased Assets subject of each APA, the Sale Procedures, the Sale Transactions, the Auction (if necessary), and the Sale Hearing, and no other or further notice is required.

K.     Publication of the Sale Notice is reasonably calculated to provide all unknown creditors and parties not otherwise required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of the proposed sale of the Purchased Assets subject of each APA, the Sale Procedures, the Sales, the Auction (if necessary), and the Sale Hearing, and no other or further notice is required.

L.     The Assumption and Assignment Notice, a copy of which is annexed hereto as <u>Exhibit A-3</u>, is reasonably calculated to provide all counterparties to the Assumed Contracts with proper notice of the potential assumption and assignment of their respective executory contracts or Leases, any Cure Amounts relating thereto, and the Assumption and Assignment Procedures.

M.     Due, sufficient, and adequate notice of the relief requested in the Motion and granted herein has been given to parties in interest and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order (including with respect to the proposed Sale Procedures, the Break-Up Fee, and the Expense Reimbursement) has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

N.     Although the Sale Transactions include the transfer of "personally identifiable information" (as defined in 101(41)(A) of the Bankruptcy Code), the transfer of such information is consistent with the Debtors existing privacy policies.  No consumer privacy ombudsman is required and the Debtors may disclose customer "personally identifiable information" to a purchaser of its assets in a bankruptcy sale in a manner that is consistent with applicable federal requirements.

O. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

**The Sale Procedures**

1. The Sale Procedures Relief requested in the Motion is granted as provided herein.

2. The [Objections] are overruled.

3. The Sale Procedures, attached hereto as <u>Exhibit 1</u>, which are incorporated herein by reference, are approved and shall govern all bids and sale procedures relating to the Purchased Assets subject of each APA. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Sale Procedures.

4. This Order and the Sale Procedures shall govern the sale of the Purchased Assets under any sale pursuant to a Chapter 11 plan.

5. The Sale Procedures shall apply to (i) except as otherwise provided in the Sale Procedures or the respective APAs, Nationstar and AFI, respectively; (ii) Potential Bidders and Qualified Bidders; (iii) the conduct of the Sales; and (iv) the Auction.

6. Each of Nationstar and AFI, respectively, shall constitute a Qualified Bidder for all purposes and in all respects with respect to the Sale Procedures.

7. In light of the extensive prepetition negotiations culminating in the Nationstar APA in addition to Nationstar's payment of the Nationstar Deposit, Nationstar is excused from submitting an additional deposit. The Nationstar Deposit shall be deemed

Nationstar's Good Faith Deposit (as defined in the Sale Procedures) for all purposes under the Sale Procedures.

8. AFI shall be excused from submitting a Good Faith Deposit (as defined in the Sale Procedures) required of Qualified Bidders in light of the extensive prepetition negotiations culminating in the AFI APA, in addition to AFI's irrevocable, absolute, and unconditional guarantee (as described in section 10.15 of the AFI APA) to Sellers (as defined in the AFI APA) of the prompt and full payment by BMMZ of all of BMMZ's monetary obligations under the AFI APA and any Ancillary Agreements as and when payment is due and payable in accordance with the terms under the AFI APA.

9. The deadline for submitting a Qualified Bid shall be September 18, 2012 (the "Bid Deadline"), as further described in the Sale Procedures.

## The Break-Up Fee and Expense Reimbursement

10. The Debtors are authorized and directed to pay to Nationstar the Break-Up Fee of $72 million (of which 8.44% is allocable to the Ginnie Mae MSRs and 91.56% is allocable to the remaining Nationstar Purchased Assets) and the Expense Reimbursement under the terms set forth in the Nationstar APA, without the need for any application, motion, or further order of this Court.

11. The Debtors' obligations to pay the Break-Up Fee and Expense Reimbursement in accordance with the terms of the Nationstar APA, shall survive termination of the Nationstar APA, shall constitute allowed administrative expense claims against each Debtor's estate, shall be entitled to priority under sections 503(b)(1)(A) and 507(a)of the Bankruptcy Code, and shall be (i) fully payable from proceeds of the Successful Bid upon

7

closing or (ii) payable from proceeds of any deposit forfeited to the Debtors in the event that the Successful Bid does not close or otherwise by the Debtors if any such deposit is insufficient.

### Notice Procedures

12. The Assumption and Assignment Notice is sufficient to provide effective notice of the assumption and assignment of the Assumed Contracts and Cure Amounts to all non-debtor parties to the Assumed Contracts, any known third party beneficiaries to such Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any other parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, Servicing Agreements, subservicing agreements or similar agreements, pursuant to Bankruptcy Rules 2002 and 6006, and are hereby approved.

13. The Sale Notice and the Publications Notice are sufficient to provide effective notice to all interested parties of the Sale Procedures, the Auction (if any), and the Sale Transactions, pursuant to Bankruptcy Rules 2002(a)(2) and 6004, and are hereby approved.

14. The notices described in subparagraphs (a)-(d) below are approved and shall be good and sufficient, and no other or further notice shall be required if given as follows:

    (a) The Debtors (or their agent) serve, within three (3) days after entry of this Order (the "Mailing Deadline"), by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, a copy of this Order and the Notice of Auction and Sale Hearing upon: (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for ResCap's prepetition secured credit facilities, (iv) the attorneys for the agent under the Debtors' prepetition amended and restated secured revolving credit agreement, (v) the attorneys for the statutory committee of unsecured creditors appointed in the Debtors' Chapter 11 cases (the "Creditors' Committee") (if no statutory committee of unsecured creditors has been appointed, the holders of the fifty largest unsecured claims against the Debtors on a consolidated basis), (vi) the attorneys for the ad hoc bondholders' committee, (vii) the attorneys for the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Government National Mortgage Association, (viii) any party who, in the

8

past year, expressed in writing to the Debtors an interest in the Purchased Assets and who the Debtors and their representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transaction contemplated in the APA, (ix) each non-debtor counterparty to the Assumed Contracts, any known third party beneficiaries to such Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, Servicing Agreements, subservicing agreements or similar agreements; (x) all parties who are known to have asserted or believed by Debtors to hold any lien, claim, encumbrance, or interest in or on the Purchased Assets, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all applicable state attorneys' general, and local authorities, (xiv) all applicable state and local taxing authorities, (xv) the Federal Trade Commission, (xvi) the United States Department of Justice, (xvii) the United States Attorney's Office, (xviii) the office of the New York Attorney General; and (xix) all entities that requested notice in these Chapter 11 cases under Bankruptcy Rule 2002; and

(b)    On or before the Mailing Deadline, the Debtors (or their agent) serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, the Sale Notice, substantially in the form annexed hereto as <u>Exhibit A-2</u>, upon any other known creditors and interestholders.

(c)    On the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall cause the Sale Notice, substantially in the form annexed hereto as <u>Exhibit A-2</u>, to be published (i) once (a) in the global edition of *The Wall Street Journal* and (b) the national edition of *The New York Times*, and (ii) on the website of the Debtors' proposed claims and noticing agent Kurtzman Carson Consultants, LLC at <u>http://www.kccllc.net.</u>

(d)    On or before June 25, 2012 the Debtors shall file a schedule (the "Schedule") of Assumed Contracts that Nationstar has designated as Assumed Contracts, including the cure amounts relating such Assumed Contracts (the "Cure Amount"), and serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, a notice of the assumption and assignment of the Assumed Contracts and the proposed Cure Amounts relating to the Assumed Contracts (the "Assumption and Assignment Notice"), substantially in the form annexed hereto as <u>Exhibit A-3</u>, upon (i) each counterparty to the Assumed Contracts (including the Servicing Agreements); (ii) any known third party beneficiaries to such Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, Servicing Agreements, subservicing agreements or similar agreements and (iii) all trustees that are parties to

9

ny-1014115

the Pooling and Servicing Agreements. In addition, Debtors will use their commercially reasonable efforts to identify and provide notice of the terms of the proposed assumption and assignment of the relevant Assumed Contracts to investors and certificateholders.

15. Subject to certain exceptions expressly provided for in the Nationstar APA, Nationstar shall be entitled to remove any Assumed Contract from the relevant Schedule until two business days prior to the Closing Date, in which case the contract or lease shall cease to be an Assumed Contract. The counterparty to such removed Assumed Contract shall be furnished promptly with notice of such removal.

### Objection Deadlines

16. Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sales shall file a formal objection that complies with the objection procedures as set forth in the Motion. Each objection shall state the legal and factual basis of such objection.

17. Any and all objections as contemplated by this Order must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules, the Local Rules, and the Order Under Bankruptcy Code Sections 102(2), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures (the "CMO"); (iv) filed with the Bankruptcy Court; and (v) served on (a) the Debtors; (b) Morrison & Foerster LLP, counsel to the Debtors; (c) Sidley Austin LLP, counsel to Nationstar; (d) Kirkland & Ellis LLP, counsel to AFI; and (e) the Notice Parties in accordance with the CMO (the "Objection Notice Parties") so as to be received on or before the appropriate deadline as set forth below.

ny-1014115

18. The deadline for objecting to approval of (i) any Cure Amounts, and/or (ii) the assumption by the Debtors and assignment to Nationstar of an Assumed Contract shall be **August 30, 2012, at 5:00 p.m.** (Eastern Time) (the "Cure Objection Deadline"), *provided*, *however*, that in the event the Sale Procedures result in a Successful Bidder other than Nationstar, the deadline for objecting to the sale of the Purchased Assets to such Successful Bidder shall be at the Sale Hearing. The deadline for objecting to approval of the Sale Transactions, including the sale of the Purchased Assets free and clear of liens, claims, encumbrances, and interests (including rights or claims based on any successor or transferee liability) shall be **October 8, 2012, at 5:00 p.m.** (Eastern Time).

19. Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code and shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, and to the consummation and performance of the Sale Transactions contemplated by the APAs (including the transfer free and clear of all liens, claims, encumbrances, and interests, including rights or claims based on any successor or transferee liability, of each of the Purchased Assets transferred as part of the Sale Transactions).

20. If a timely objection is raised either to the proposed assumption and assignment of an Assumed Contract or to the proposed Cure Amount (a "Contract Objection"), (i) the Debtors; (ii) Nationstar; and (iii) the objecting party may meet and confer in good faith to attempt to resolve any such objection without Court intervention. If (i) the Debtors; (ii) Nationstar; and (iii) the objecting party resolve any Contract Objection, they may enter into a written stipulation, which stipulation is not required to be filed with or approved by the Court. If a Contract Objection cannot be consensually resolved, it shall be heard by the Court at the

discretion of the Debtors and Nationstar or AFI, respectively, either at the Sale Hearing or such other date as determined by the Court (such other date being no later than the Sale Hearing).

21.  Any Contract Objection that challenges a Cure Amount, or otherwise asserts that there exist outstanding defaults under an Assumed Contract, must set forth with specificity the Cure Amount being claimed by the objecting party or the nature of the asserted default, as applicable, and must include appropriate documentation in support thereof satisfactory to the Debtors and Nationstar.  If no objection to the Cure Amount or the proposed assumption and assignment of an Assumed Contract is timely filed and served, the pertinent Debtor may assume and assign the Assumed Contract to Nationstar (or, alternatively, to the Successful Bidder for the applicable Purchased Assets), and the Cure Amount set forth in the Assumption and Assignment Notice shall be binding upon all non-debtor parties to the Assumed Contracts, any known third party beneficiaries to such Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, Servicing Agreements, subservicing agreements or similar agreements (collectively, the "Assumption Notice Parties"), for all purposes in such Debtor's Chapter 11 cases.  The respective Assumption Notice Parties shall be forever barred from (i) objecting to the assumption and assignment of the relevant Assumed Contract and/or Cure Amount, and (ii) asserting at any time any condition to assignment, default, claims, obligations or breach and/or any additional cure, damage or other amount with respect to the respective Assumed Contract on the basis of events of any kind of nature occurring or arising prior to the Closing Date, whether such events constituted acts or omissions by the Debtors or other person and regardless of whether such events are known or unknown, including, without limitation, claims or liabilities relating to any act or omission of

12

any originator, holder or servicer of mortgage loans prior to the Closing Date, and any indemnification obligations, claims or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date.

22. All Assumed Contracts will be assumed and assigned to Nationstar on the Closing Date of the Nationstar APA, except as may be otherwise set forth therein or agreed between the Debtors and Nationstar.

23. The Court shall conduct the Sale Hearing on **October 15, 2012 at _:00 _.m.** (Eastern Time) or such other date before October 31, 2012 that the Court conducts the Confirmation Hearing, at which time the Court will consider approval of the Sale Transactions to the Successful Bidder. The Sale Hearing shall, if applicable, be conducted in connection with, and as part of, any hearing to consider confirmation of a plan of reorganization under section 1129 of the Bankruptcy Code; provided, however, that if Nationstar is the Successful Bidder and a plan of reorganization is not confirmed by the Bankruptcy Court on or before October 31, 2012 or if a plan of reorganization that is confirmed by such date does not become effective on or before December 15, 2012, the Debtors shall seek to consummate the Sale Transactions to Nationstar and AFI, respectively, pursuant to section 363 of the Bankruptcy Code.

24. In the event the Successful Bidder is not Nationstar or AFI, respectively, non-debtor parties to the Assumed Contracts may raise objections to adequate assurance of future performance at the Sale Hearing, but shall not be permitted to raise objections to the Cure Amount if not asserted by the Cure Objection Deadline. The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

**Other Relief Granted**

25. In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Nationstar or AFI bid, the Debtors will conduct an Auction, commencing at **10:00 a.m. (Eastern Time) on September 25, 2012** at the offices of Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104, or such later time on such date or other location as shall be timely communicated in accordance with the Sale Procedures. If (i) no Qualified Bids with respect to the Nationstar Purchased Assets other than Nationstar's Qualified Bid are timely received or (ii) the Debtors only timely receive Qualified Bids for the Ginnie Mae MSRs and do not timely receive a Qualified Bid for the remaining Nationstar Purchased Assets other than Nationstar's Qualified Bid, the Debtors shall not conduct the Auction with respect to such Nationstar Purchased Assets for which no Qualified Bids were received (other than Nationstar's Qualified Bid), and instead shall seek approval of the sale of the relevant Nationstar Purchased Assets to Nationstar pursuant to the provisions of the Nationstar APA at the Sale Hearing.

26. The Debtors are authorized to conduct the Sale Transactions without the necessity of complying with any state or local bulk transfer laws or requirements.

27. In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

28. Notwithstanding any possible applicability of Bankruptcy Rules 6004 or 6006, or otherwise, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry. For the avoidance of doubt, the Break-Up Fee and Expense Reimbursement approved by this Order shall be immediately appealable and failure to appeal in

accordance with the Bankruptcy Rules or other applicable law shall constitute a waiver of such rights.

29. Subject to the provisions of this Order governing payment of the Break-Up Fee and Expense Reimbursement, all net proceeds from the consummation of the Sale Transactions or a Competing Transaction (as defined in the APAs) shall be treated in accordance with the terms of the Debtors' proposed postpetition secured debtor-in-possession financing (the "DIP Financing") and any order of this Court approving the DIP Financing.

30. With the exception of this Order's provisions pertaining to the Break-Up Fee and Expense Reimbursement, to the extent that any inconsistency exists between this Order and the terms of the DIP Financing or any order of this Court approving such DIP Financing, the terms of the DIP Financing and the order approving the same shall control.

31. The requirements set forth in Local Rule 9013-1(b) are satisfied.

32. The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

33. Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

34. The Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, York
      [        ], 2012

THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

16

ny-1014115