## EXHIBIT B

**PROPOSED NATIONSTAR SALE APPROVAL ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------- )
In re:                                                                     )    Case No. 12-12020 (MG)
                                                                           )
RESIDENTIAL CAPITAL, LLC, et al.,                                          )    Chapter 11
                                                                           )
                                         Debtors.                          )    Jointly Administered
                                                                           )
------------------------------------------------------------------------- )

**AMENDED ORDER UNDER 11 U.S.C. §§ 105, 363, AND 365 AND FED R. BANKR. P.
2002, 6004, 6006, AND 9014 (I) APPROVING (A) SALE OF DEBTORS' ASSETS
PURSUANT TO ASSET PURCHASE AGREEMENT WITH NATIONSTAR
MORTGAGE  LLC; (B)  SALE OF PURCHASED ASSETS FREE AND CLEAR OF
LIENS,  CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (C) ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES THERETO; (D) RELATED AGREEMENTS;
AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated May 14, 2012 (the "Motion"), of Residential Capital,

LLC ("ResCap") and certain of its affiliates, as debtors in possession in the above-captioned

Chapter 11 cases (collectively, the "Debtors"),[1] for entry of an order, under Bankruptcy Code

sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014 authorizing and

approving (i) that certain Asset Purchase Agreement, dated as of May 13, 2012, a copy of which

is attached hereto as Exhibit 1, (including all schedules, exhibits, and attachments thereto,

including the Ancillary Agreements (as such term is defined therein) to be entered into by and

among the parties as contemplated therein, collectively, the "Nationstar APA"), by and among

Nationstar Mortgage LLC ("Purchaser"), ResCap, Residential Funding Company, LLC ("RFC"),

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the
Nationstar APA.  Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11
cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

GMAC Mortgage, LLC ("GMAC Mortgage"), Executive Trustee Services, LLC ("ETS LLC"),

ETS of Washington, Inc. ("ETS WA"), and the additional sellers identified on schedule A to the

Nationstar APA (such sellers, together with ResCap, RFC, GMAC Mortgage, ETS LLC, ETS

WA, collectively, the "Sellers", and each individually, a "Seller"); (ii) the sale and all related

transactions, in accordance with the Nationstar APA and this Order (the "Sale") of all of the

Debtors' right, title and interest in, to and under the Purchased Assets to the Purchaser free and

clear of all Claims[2], Liens[3], encumbrances, or other interests (including without limitation, any

and all "claims" as defined in section 101(5) of the Bankruptcy Code and any rights or claims

based on any successor or transferee liability) other than the Assumed Liabilities and the

Permitted Liens (collectively, all such Claims, Liens, encumbrances and other interests other

than the Assumed Liabilities and the Permitted Liens, "Interests"), with such Interests

transferring and attaching to the proceeds of the Sale with the same validity and priority as such

Interests had in the Purchased Assets immediately prior to the Sale; (iii) the assumption by the

Sellers and the assignment to the Purchaser of the Assumed Contracts pursuant to section 365 of

the Bankruptcy Code (together with the Sale and other transactions to be consummated pursuant

to the Nationstar APA, the "Transactions") and the fixing and satisfaction by the Sellers of Cure

Amounts relating thereto and (iv) granting related relief; and upon the Whitlinger Affidavit,

pursuant to Local Bankruptcy Rule 1007-2; the Greene Declaration; and the Hamzehpour

---

[2] For the convenience of the parties, the Nationstar APA defines "Claims" to mean "any right to payment, whether
or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,
undisputed, legal, equitable, secured or unsecured, known or unknown; or any right to an equitable remedy for
breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable
remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured,
known or unknown."

[3] For the convenience of the parties, the Nationstar APA defines "Lien" to mean "any lien, charge, claim, pledge,
deed of trust, right of first refusal, security interest, conditional sale agreement or other title retention agreement,
lease, mortgage, option, proxy, hypothecation, voting trust agreement, transfer restriction, easement, servitude,
encroachment, or other encumbrance (including the filing of, or agreement to give, any financing statement under
the Uniform Commercial Code of any jurisdiction)."

ny-1040887

Declaration; and the Court having entered an order, dated [      ], 2012 (the "Sale Procedures

Order"), authorizing and approving the Sale Procedures, bid protections, notice of the Sale, and

the hearing to consider approval of the Transactions (the "Sale Hearing")[4]; and an Auction

having been held in accordance with the Sale Procedures Order; and at the conclusion of the

Auction, Nationstar (the "Purchaser") was chosen as the Successful Bidder (as defined in the

Sale Procedures Order) in accordance with the Sales Procedures Order; and the Sale Hearing

having been held on [        ], 2012 to consider the relief requested in the Motion; the record of the

Sale Hearing, and all of the proceedings before the Court; and the Court having reviewed the

Motion and any objections thereto (the "Objections"); and all parties in interest having been

afforded an opportunity to be heard with respect to the Motion and all of the relief related thereto;

and it appearing that the relief requested by the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and after due deliberation thereon; and

sufficient cause appearing therefore, it is

FOUND AND DETERMINED THAT:[5]

A.    **Jurisdiction and Venue.**  This Court has jurisdiction over the Motion and

the Transactions pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this

District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[4] For the purposes of this Order, the term "Sale Hearing" shall be any hearing at which the approval of the Sale is considered, including a hearing to consider confirmation of a plan of reorganization if the Sale is approved in connection therewith.

[5] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Statutory Predicates.**  The statutory predicates for the relief sought in the

Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by

Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.  The consummation of the Transactions

contemplated by the Nationstar APA and this Order is legal, valid and properly authorized under

all such provisions of the Bankruptcy Code and Bankruptcy Rules, and all of the applicable

requirements of such sections and rules have been complied with in respect of the Transactions.

C.    **Notice.**  As evidenced by the affidavits and certificates of service and

publication notice previously filed with the Court and based on the representations of counsel at

the Sale Procedures Hearing and the Sale Hearing, proper, timely, adequate, and sufficient notice

of the Motion, the Sale Procedures, the Sale, the other Transactions, the Auction, the Assumption

and Assignment Procedures, and the Sale Hearing have been provided in accordance with

sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a), 6004(a),

6006(c), 9007 and 9014 and in compliance with the Sale Procedures Order to all interested

persons and entities including: (i) the Office of the United States Trustee for the Southern

District of New York, (ii)  the attorneys for the U.S. Treasury, (iii) the attorneys for ResCap's

prepetition secured credit facilities, (iv) the attorneys for the agent under the Debtors' prepetition

amended and restated secured revolving credit agreement, (v) the attorneys for the agent under

the Debtors' post-petition debtor-in-possession financing facility, (vi) the attorneys for the

statutory committee of unsecured creditors appointed in the Debtors' Chapter 11 cases (the

"Creditors' Committee") (if no statutory committee of unsecured creditors has been appointed,

the holders of the fifty largest unsecured claims against the Debtors on a consolidated basis),

(vii) the attorneys for the ad hoc bondholders' committee, (viii) the attorneys for the Federal

National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the

4

Government National Mortgage Association, (ix) any party who, in the past year, expressed in

writing to the Debtors an interest in the Purchased Assets and who the Debtors and their

representatives reasonably and in good faith determine potentially have the financial wherewithal

to effectuate the transaction contemplated in the APA, (x) each non-debtor counterparty to the

Assumed Contracts, any known third party beneficiaries to such Assumed Contracts, all trustees,

certificateholders, investors, rating agencies, mortgage insurers and any parties to any pooling

and servicing agreements, assignment, assumption and recognition agreements, Servicing

Agreements, subservicing agreements or similar agreements (all such parties in this clause (ix),

the "Interested Contract Parties"); (xi) all parties who are known to have asserted or believed by

Debtors to hold any Interest in or on the Purchased Assets, (xii) the Securities and Exchange

Commission, (xiii) the Internal Revenue Service, (xiv) all applicable state attorneys' general, and

local authorities, (xv) all applicable state and local taxing authorities, (xvi) the Federal Trade

Commission, (xvii) the United States Department of Justice, (xviii) the United States Attorney's

Office, (xix) the Office of the United States Trustee for the Southern District of New York, (xx)

the office of the New York Attorney General; and (xix) all entities that requested notice in these

Chapter 11 cases under Bankruptcy Rule 2002 ((i)-(xx) collectively, the "Notice Parties").  The

Debtors published the Sale Notice (as defined in the Sale Procedures Order) in the national

edition of *The Wall Street Journal* and *The New York Times*.  The Debtors provided notice of the

assumption and assignment of Assumed Contracts (including Servicing Agreements) and any

Cure Amounts related thereto to all Interested Contract Parties of such Assumed Contracts in

accordance with the Sale Procedures Order.  Such notice placed these Persons on notice that their

failure to object to the Debtors' assumption and assignment of the Assumed Contracts (including

Servicing Agreements) or to the Cure Amounts would be deemed consent to the assumption and

5

assignment of the Assumed Contracts (including Servicing Agreements) and the Cure Amounts.
The notice described in this Paragraph C is good, sufficient and appropriate under the
circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the
assumption and assignment of the Assumed Contracts (including the Servicing Agreements), the
Cure Amounts, the Nationstar APA, Sale, the other Transactions and this Order is or shall be
required.  With respect to parties who may have claims against the Debtors, but whose identities
are not reasonably ascertainable by the Debtors, the publication of the Sale Notice was sufficient
and reasonably calculated under the circumstances to reach such parties.

           D.      **Extensive Efforts by Debtors.**  As of the Petition Date and for a period of
more than 7 months before the commencement of these Chapter 11 cases, the Debtors worked
with their counsel and financial advisors, AFI, and various governmental constituencies to
implement a viable transaction that would allow them to continue their operations.  The Debtors
presented credible evidence that, as of the Petition Date, they had explored various strategic
alternatives for the Debtors' businesses over an extended period of time and had communicated
with 5 parties about a possible sale of all or substantially all of the Debtors' assets.  The
Transactions are the result of the Debtors' extensive efforts in seeking to maximize recoveries to
the Debtors' estates, for the benefit of creditors.

           E.      **Business Justification.**  The Debtors have demonstrated compelling
circumstances and a good, sufficient, and sound business purpose and justification for the sale of
the Purchased Assets.  In light of the circumstances of these Chapter 11 cases and the risk of
deterioration in the going concern value of the Purchased Assets pending the Sale, time is of the
essence in (i) consummating the Sale and the other Transactions, (ii) preserving the viability of

ny-1040887

the Debtors' businesses as going concerns, and (iii) minimizing the widespread and adverse

economic consequences for the Debtors, their estates, and their creditors and employees.

F.     **Sale Procedures Order.**  On [    ], 2012, this Court entered the Sale

Procedures Order approving Sale Procedures for the Purchased Assets.  The Sale Procedures

provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the

Purchased Assets.

G.     **Adequate Marketing; Highest or Best Offer.**  As demonstrated by

(i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the

representations of counsel made on the record at the Sale Hearing, (a) the Debtors have

adequately marketed the Purchased Assets and conducted the sale process in compliance with the

Sale Procedures Order; (b) a reasonable opportunity has been given to any interested party to

make a higher or better offer for the Purchased Assets; (c) the consideration provided for in the

Nationstar APA constitutes the highest or otherwise best offer for the Purchased Assets; (d) the

consideration provides fair and reasonable consideration for the Purchased Assets and constitutes

reasonably equivalent value under the Bankruptcy Code and under the laws of the United States,

any state, territory, possession, or the District of Columbia; (e) the Sale will provide a greater

recovery for the Debtors' creditors than would be provided by any other practically available

alternative, including liquidation under Chapters 7 or 11 of the Bankruptcy Code; (f) taking into

consideration all relevant factors and circumstances, no other entity has offered to purchase the

Purchased Assets for greater economic value to the Debtors or their estates; and (g) the Debtors'

determination that the Nationstar APA constitutes the highest or best offer for the Purchased

Assets constitutes a valid and sound exercise of the Debtors' business judgment.

ny-1040887

H.    **Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Motion, the relief requested therein and the Cure Amounts has been afforded to all interested Persons, including the Notice Parties.

I.    **Sale in Best Interests.**  The actions represented to be taken by the Sellers and the Purchaser are appropriate under the circumstances of these Chapter 11 cases and are in the best interests of the Debtors, their estates and creditors, and other parties in interest. Approval of the Nationstar APA and of the Sale and other Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

J.    **No *Sub Rosa* Plan.**  In the event the Transactions are approved under section 363 of the Bankruptcy Code, the consummation of the Transactions outside of a plan of reorganization pursuant to the Nationstar APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Transactions do not constitute a *sub rosa* plan of reorganization.

K.    **Arm's-Length Sale.**  The Nationstar APA and the Transactions were negotiated, proposed, and entered into by the Sellers and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Sellers, their insiders and affiliates, nor the Purchaser have engaged in any conduct that would cause or permit the Nationstar APA, the Sale, or any part of the Transactions thereby to be avoided under section 363(n) of the Bankruptcy Code.

L.    **Good Faith Purchaser.**  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

8

M.    **Prompt Consummation.**  The Sale and the other Transactions must be approved and consummated as promptly as practicable in order to preserve the viability of the business to which the Purchased Assets relate as a going concern.

N.    **Corporate Authority.**  Each Debtor (i) has full corporate power and authority to execute the Nationstar APA and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Nationstar APA, (iii) has taken all corporate action necessary to authorize and approve the Nationstar APA and the consummation by the Debtors of the transactions contemplated thereby, and (iv) needs no consents or approvals, other than those expressly provided for in the Nationstar APA, which may be waived by the Purchaser, to consummate such transactions.

O.    **Binding and Valid Transfer.**  The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and, except for the Assumed Liabilities, will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of all Interests, including (i) rights or claims based on any successor or transferee liability (ii) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Sellers' or the Purchaser's interest in the Purchased Assets, or any similar rights, (iii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the closing, and (iv) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if

9

any, including any restriction on the use, voting, transfer, receipt of income, or other exercise of

any attributes of ownership and (b) all debts arising in any way in connection with any

agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or

affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities,

demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and

matters of any kind and nature, whether known or unknown, contingent or otherwise, whether

occurring or arising prior to or subsequent to the commencement of these Chapter 11 cases, and

whether imposed by agreement, understanding, law, equity or otherwise, including, but not

limited to, Claims otherwise arising under doctrines of successor or transferee liability, Claims or

Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans

prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or

omission of the Sellers or any other Person prior to the Closing Date.

P.      **Severability of Servicing Agreements.**  The Servicing Agreements being

assumed and assigned to the Purchaser pursuant to the Nationstar APA consist solely of

enforceable contracts for providing servicing, subservicing or master servicing for Mortgage

Loans.  As used in this Order, "Other Agreements" means any right, obligation, representation,

covenant or agreement (i) contained in a Servicing Agreement that is <u>not</u> related to

(a) collections with respect to, or the administration or servicing or subservicing or master

servicing of, or reporting in respect of, Mortgage Loans, (b) servicing fees or ancillary income,

(c) the disbursement of collections with respect to Mortgage Loans, (d) the making of

delinquency advances and servicing advances in connection with the servicing or subservicing or

master servicing of Mortgage Loans, (e) payment of expenses associated with the administration,

servicing or subservicing or master servicing of Mortgage Loans, (f) the limitation on liability of,

ny-1040887

and indemnification in favor of, the servicer, subservicer or master servicer thereunder, or (g)

representations, warranties and covenants running in favor of the servicer, subservicer or master

servicer thereunder, or (ii) that relates to mortgage loan origination, or the sale of mortgage

loans, in all cases regardless of whether such Other Agreement arises from, or is memorialized

in, the same writing as a Servicing Agreement.  The Servicing Agreements do not include any

Other Agreements, regardless of whether such Other Agreements arise from, or are

memorialized in, the same writing as the Servicing Agreements, and to the extent any Servicing

Agreement arises from, or is memorialized in, one or more writings which include an Other

Agreement, such Servicing Agreement is severable from any Other Agreements.  The Sellers are

not assuming and assigning to the Purchaser and the Purchaser has no Liability under any Other

Agreement.  Nothing in the Nationstar APA or this Order shall have any effect on any Other

Agreement or any claims related thereto against the Debtors, and the rights, if any, of all parties

against the Debtors in respect of Other Agreements are reserved.  The rights, if any, of parties

against the Debtors in respect of Other Agreements are not the subject matter of the Sale Hearing

and are expressly reserved; provided, however, that no party to an Other Agreement may proceed

against the Purchaser or the Purchased Assets.  No delay or failure of performance by the

Debtors under or in respect of any Other Agreement will (i) affect any right of the Purchaser, or

any obligation of any other party, under any Assumed Contract (including, without limitation,

any Servicing Agreement) or (ii) permit, result in or give rise to any setoff, delay, deferral,

defense, recoupment, Claim, counterclaim, default or other impairment of the rights of Purchaser

under any Assumed Contract (including, without limitation, any Servicing Agreement).

      Q.    **Satisfaction of 363(f) Standards.**  The Sellers may sell the Purchased

Assets free and clear of all Interests of any kind or nature whatsoever, including rights or claims

ny-1040887

based on any successor or transferee liability, because, in each case, one or more of the standards

set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of

Interests, including rights or claims based on any successor or transferee liability, and non-debtor

parties to the Assumed Contracts who did not object, or who withdrew their Objections, to the

Transactions or the Motion are (a) deemed to have consented pursuant to section 363(f)(2) of the

Bankruptcy Code and/or (b) adequately protected by having their Interests, if any, including

rights or claims based on any successor or transferee liability, attach to the cash proceeds of the

Sale ultimately attributable to the property against or in which they claim an Interest, including

rights or claims based on any successor or transferee liability.  In all cases, each such Person

with Interests in the Purchased Assets are enjoined from taking any action against the Purchaser,

the Purchaser's Affiliates or any agent of the foregoing to recover any such Interest.

      R.    **Necessity of Order.**  The Purchaser would not have entered into the

Nationstar APA and would not consummate the Transactions without all of the relief provided

for in this Order (including that (1) the transfer of the Purchased Assets to Purchaser be free and

clear of all Interests and including rights or Claims based upon successor or transferee liability,

Claims or Liabilities relating to any act or omission of any originator, holder or servicer of

Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating

to any act or omission of the Sellers or any other Person prior to the Closing Date, and (2) the

Purchaser not be liable for any Cure Amounts or any other pre-Closing liabilities with respect to

any Assumed Contracts).  The consummation of the Transactions pursuant to this Order and the

Nationstar APA is necessary for the Debtors to maximize the value of their estates for the benefit

of all creditors and other parties in interest.  The Purchaser has agreed to this Transaction with

the intent of purchasing the Purchased Assets and does not and would not agree to assume

anything other than the Assumed Liabilities.

        S.    **Assumed Contracts.**  The Debtors have demonstrated that it is an

exercise of their sound business judgment to assume and assign the Assumed Contracts to the

Purchaser in connection with the consummation of the Sale, and the assumption and assignment

of the Assumed Contracts is in the best interests of the Debtors, their estates and creditors, and

other parties in interest.  The Assumed Contracts being assigned to the Purchaser are an integral

part of the Purchased Assets being purchased by the Purchaser, and, accordingly, such

assumption and assignment of the Assumed Contracts and liabilities are reasonable, enhancing

the value of the Debtors' estates.

        T.    **Cure/Adequate Assurance.**  The Debtors have cured or demonstrated

their ability to cure any default with respect to any act or omission that occurred prior to the

Closing under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the

of the Bankruptcy Code.  The Cure Amounts are deemed the amounts necessary to "cure" within

the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of

section 365(b) of the Bankruptcy Code under such Assumed Contracts.  The Purchaser's promise

to perform the obligations under the Assumed Contracts after the Closing Date shall constitute

adequate assurance of its future performance of and under the Assumed Contracts, within the

meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.   The Purchaser is not

assuming any obligation under or in connection with the Assumed Contracts (including

Servicing Agreements) occurring or arising prior to the Closing Date, whether encompassed

within the Cure Amounts payable by the Debtors or otherwise (including, without limitation,

fees or indemnification Claims relating to any period prior to the Closing Date or any acts or

omissions of the Sellers or any other Person occurring or arising prior to the Closing Date).  All

Interested Contract Parties of the Assumed Contracts (including the Servicing Agreements) who

did not timely file an objection to the assumption and assignment of the Assumed Contract, are

deemed to consent to the assumption by the Debtors of their respective Assumed Contract and

the assignment thereof to the Purchaser.  The objections of all Interested Contract Parties of

Assumed Contracts (including Servicing Agreements) that did file a timely objection to the

assumption and assignment of such parties' respective Assumed Contract or Cure Amount

relating thereto were heard at the Sale Hearing (to the extent not withdrawn), were considered by

the Court, and are overruled on the merits with prejudice.  The Court finds that with respect to all

such Assumed Contracts (including Servicing Agreements) the payment of the Cure Amounts is

appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the

Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) of the Bankruptcy

Code have been satisfied for the assumption and the assignment by the Debtors to the Purchaser

of each of the Assumed Contracts.  To the extent any Assumed Contract is not an executory

contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the

Purchaser in accordance with the terms of this Order that are applicable to the Purchased Assets,

and the Purchaser shall have no liability or obligation for any (a) defaults or breaches under such

agreement that relate to acts or omissions that occurred in the period, or otherwise arose, prior to

the date of the entry of this Order, and (b) Claims, counterclaims, offsets, or defenses (whether

contractual or otherwise, including without limitation, any right of recoupment) with respect to

such Assumed Contract, that relate to any acts or omissions that arose or occurred prior to the

date of the entry of this Order.

U.    **Unenforceability of Anti-Assignment Provisions.**  Except as provided in

section 8.3(v) and Schedule 4.3 of the Nationstar APA, anti-assignment provisions in any

Assumed Contract shall not restrict, limit, or prohibit the assumption, assignment, and sale of the

Assumed Contracts and should be deemed and found to be unenforceable anti-assignment

provisions within the meaning of section 365(f) of the Bankruptcy Code.

V.    **Personally Identifiable Information.**  The Debtors have provided certain

privacy policies to consumers that govern the disclosure of "personally identifiable information"

(as defined in Bankruptcy Code section 101(41A)) to unaffiliated third parties.  Debtors have

proposed to sell certain assets, which may require the disclosure of personally identifiable

information to third parties.  The Debtors' disclosure of personally identifiable information

pursuant to the Transactions is in compliance with the Gramm-Leach-Bliley Act and is

consistent with the privacy notices delivered by the Debtors to mortgage borrowers.  For these

reasons, no Consumer Privacy Ombudsman has been appointed under section 363(b)(1) of the

Bankruptcy Code.

W.    **Final Order.**  This Order constitutes a final order within the meaning of

28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court

expressly finds that there is no just reason for delay in the implementation of this Order and

expressly directs entry of judgment as set forth herein.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

1.    **Motion is Granted.**  The Motion is granted and the relief requested

therein with respect to the Sale is granted and approved in its entirety, as further described

herein.

15

2.      **Objections Overruled.**  Any objections to the entry of this Order or the

relief granted herein and requested in the Motion, including any objections to Cure Amounts or

the assumption and assignment of Assumed Contracts, that have not been withdrawn, waived, or

settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and

overruled on the merits with prejudice.

3.      **Approval.**  The Nationstar APA, and all the terms and conditions thereof,

is approved.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are

authorized and directed to perform their obligations under, and comply with the terms of, the

Nationstar APA and consummate the Transactions pursuant to, and in accordance with, the terms

and conditions of the Nationstar APA and this Order.  The Debtors are authorized and directed to

execute and deliver, and empowered to perform under, consummate, and implement, the

Nationstar APA, together with all additional instruments and documents that the Sellers or the

Purchaser deem necessary or appropriate to implement the Nationstar APA and effectuate the

Transactions, and to take all further actions as may reasonably be required by the Purchaser for

the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or

reducing to Purchaser's possession the Purchased Assets or as may be necessary or appropriate

to the performance of the obligations as contemplated by the Nationstar APA.

4.      **Binding Effect of Order.**  This Order and the Nationstar APA shall be

binding in all respects upon all known and unknown creditors of, and equity security interests in,

any Debtor, including any holders of Interests (including holders of rights or claims based on any

successor or transferee liability), all Interested Contract Parties of the Assumed Contracts, all

successors and assigns of the Purchaser, each Seller and their Affiliates and subsidiaries, the

Purchased Assets, and any trustees appointed in the Debtors' Chapter 11 cases or upon a

16

conversion to cases under Chapter 7 of the Bankruptcy Code and this Order shall not be subject

to amendment or modification and the Nationstar APA shall not be subject to rejection.  Subject

to the terms and conditions of the Nationstar APA, the terms of this Order shall apply in the

event the Sale under the Nationstar APA is consummated by and under any Chapter 11 plan, and

may be incorporated into any confirmation order.  Nothing contained in any Chapter 11 plan

confirmed in the Debtors' Chapter 11 cases or the order confirming any such Chapter 11 plan

shall conflict with or derogate from the provisions of the Nationstar APA or this Order.

5.    **Injunction.**  All persons and entities are prohibited and enjoined from

taking any action to adversely affect or interfere with the ability of the Debtors to transfer the

Purchased Assets to the Purchaser in accordance with the Nationstar APA and this Order.

Following the Closing, except for Persons entitled to enforce Assumed Liabilities and Permitted

Liens, all Persons (including, but not limited to, the Debtors and/or their respective successors

(including any trustee), creditors, investors, certificateholders, securitization trustees, borrowers,

current and former employees and shareholders, administrative agencies, governmental units,

secretaries of state, federal, state, and local officials, including those maintaining any authority

relating to any environmental, health and safety laws, and the successors and assigns of each of

the foregoing) holding Interests in the Purchased Assets or against the Debtors in respect of the

Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred,

estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any

Interests of any kind or nature whatsoever (including, without limitation, Claims or Liabilities

relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to

the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of

the Sellers or any other Person prior to the Closing Date) against the Purchaser or any Affiliate

17

of the Purchaser or any of their respective property, successors and assigns, or the Purchased

Assets, as an alleged successor or on any other grounds, it being understood that nothing herein

shall affect assets of the Debtors that are not Purchased Assets.

6.    Upon the transfer or assignment of the Assumed Contracts to the

Purchaser, each Interested Contract Party of an Assumed Contract is hereby forever barred,

estopped, and permanently enjoined from asserting against the Purchased Assets, the Purchaser,

its Affiliates or their respective property (a) any setoff, defense, recoupment, Claim, Interest,

counterclaim or default asserted or assertable against, or otherwise delay, defer or impair any

rights of the Purchaser with respect to the Purchased Assets with respect to an act or omission of,

the Debtors, or (b)  any rent acceleration, assignment fee, default, breach or Claim, or pecuniary

loss or condition to assignment or transfer, arising under or related to an Assumed Contract

existing as of the Closing, or arising by reason of the Closing.  No delay or failure of

performance under or in respect of any Other Agreement will (i) affect any right of the

Purchaser, or any obligation of any other party, under any Assumed Contract (including, without

limitation, any Servicing Agreement) or (ii) permit, result in or give rise to any setoff, delay,

deferral, defense, recoupment, Claim, Interest, counterclaim, default or other impairment of the

right to receive any payment or otherwise to enforce any other rights under any Assumed

Contract (including, without limitation, any Servicing Agreement).

7.    No Person shall assert, and the Purchaser and the Purchased Assets shall

not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or

otherwise, including, without limitation, any right of recoupment), Liabilities, Claims and

Interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the

Purchaser or the Debtors, or any obligation of any other party, under or with respect to, any

ny-1040887

Purchased Assets (including, without limitation, an Assumed Contract), with respect to any act

or omission that occurred prior to the Closing or with respect to any Other Agreement or any

obligation of Debtors that is not an Assumed Liability.

        8.      **General Assignment.**  Upon the Closing, this Order shall be construed

and shall constitute for any and all purposes a full and complete general assignment, conveyance,

and transfer of the Sellers' interests in the Purchased Assets (or such Assumed Contract, if

applicable) and a bill of sale transferring good and marketable title in the Purchased Assets (or

such Assumed Contract, if applicable) to the Purchaser.  Each and every federal, state, and local

governmental agency, quasi-agency, or department is hereby directed to accept any and all

documents and instruments necessary and appropriate to consummate the Transactions.

        9.      **Transfer Free and Clear.**  Except for the Assumed Liabilities, pursuant

to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred

to the Purchaser as required under the Nationstar APA, and such transfer shall be free and clear

of all Interests of any Person (including, without limitation, Claims or Liabilities relating to any

act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date,

and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any

other Person prior to the Closing Date) and any and all rights and claims under any bulk transfer

statutes and similar laws, whether arising by agreement, by statute or otherwise and whether

occurring or arising before, on or after the date on which these Chapter 11 cases were

commenced, whether known or unknown, occurring or arising prior to such transfer, with all

such Interests to attach to the proceeds of the Sale ultimately attributable to the property against

or in which the holder of a Claim or Interest claims or may claim a Claim or Interest, in the order

of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Sellers may possess with respect thereto.

10.    **Valid Transfer.**  The transfer of the Purchased Assets to the Purchaser pursuant to the Nationstar APA constitutes a legal, valid, and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title, and interest of the Sellers in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, other than the Assumed Liabilities.

11.    **Direction to Release Interests.**  Upon the Closing, each of the Sellers' creditors and any other holder of an Interest, including rights or Claims based on any successor or transferee liability, is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interest in the Purchased Assets, if any, as such Interest may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing an Interest in the Sellers or the Purchased Assets shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests, which the person or entity has with respect to the Sellers or the Purchased Assets or otherwise, then (i) the Sellers are authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Sellers or the Purchased Assets, and (ii) the Purchaser are authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever in the Sellers or the Purchased Assets.  Each and every federal, state, and local governmental agency or department is

20

hereby directed to accept any and all documents and instruments necessary and appropriate to

consummate the transactions contemplated by the Nationstar APA, including, without limitation,

recordation of this Order.  This Order shall be binding upon and shall govern the acts of all

Persons including without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state, and local officials, and all other

Persons who may be required by operation of law, the duties of their office, or contract, to

accept, file, register, or otherwise record or release any documents or instruments, or who may

be required to report or insure any title or state of title in or to any of such assets or other

property interests.

              12.    **No Interference**.  Following the Closing of the Sale, no holder of any

Interest shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased

Assets based on, or related to, any such Interest, or based on any actions the Debtors may take in

their Chapter 11 cases.

              13.    **Surrender of Possession.**  All entities that are currently, or on the Closing

Date may be, in possession of some or all of the Purchased Assets in which the Sellers hold an

Interest hereby are directed to surrender possession of the Purchased Assets to the Purchaser on

the Closing Date, unless the Purchaser otherwise agrees.

              14.    **No Discriminatory Treatment.**  To the extent provided by section 525 of

the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any

permit, license, or similar grant relating to the operation of the Purchased Assets sold,

transferred, or conveyed to the Purchaser on account of the filing or pendency of these

Chapter 11 cases or the consummation of the Transactions contemplated by the Nationstar APA.

15.    **Severing of Multi-Agreement Documents**.  Any Servicing Agreement memorialized in the same writing as an Other Agreement (such writing, a "Multi-Agreement Document") is hereby severed and deemed reformed to become a separate, independently enforceable agreement.  Any provision of a Multi-Agreement Document that would allow any Person to terminate, recapture, impose any penalty, or modify any term or condition upon such reformation is void and of no force and effect.  No delay or failure of performance under or in respect of any Other Agreement will (i) affect any right of the Purchaser, or any obligation of any other party, under any Assumed Contract (including, without limitation, any Servicing Agreement) or (ii) permit, result in or give rise to any setoff, delay, deferral, defense, recoupment, Claim, counterclaim, default or other impairment of the right to receive any payment or otherwise enforce any right under any Assumed Contract (including, without limitation, any Servicing Agreement).  Except as provided in section 8.3(v) and Schedule 4.3 of the Nationstar APA, to the extent any Multi-Agreement Document provides that a Person's consent is required for reformation, such consent requirement shall have no force and effect.  Nothing in this Order or in such reformation shall affect any substantive provisions of an Other Agreement.  Any indemnity or other provision, to the extent it relates to an Other Agreement, is not part of an Assumed Contract.

16.    **Assumption and Assignment of Contracts.**  Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of the Sale, the Debtors' assumption and assignment to the Purchaser of the Assumed Contracts is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

17.    The Debtors are authorized and directed in accordance with

sections 105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the Purchaser,

effective as of the Closing, as provided by, and in accordance with, the Sale Procedures Order

and the Nationstar APA, the Assumed Contracts free and clear of all Interests of any kind or

nature whatsoever, including rights or Claims based on any successor or transferee liability,

Claims or Liabilities relating to any act or omission of any originator, holder or servicer of

Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating

to any act or omission of the Sellers or any other Person prior to the Closing Date, other than the

Assumed Liabilities, and (ii) execute and deliver to the Purchaser such documents or other

instruments as the Purchaser reasonably deem may be necessary to assign and transfer the

Assumed Contracts to the Purchaser.

18.    The Assumed Contracts shall be transferred and assigned to, pursuant to

the Sale Procedures Order and the Nationstar APA, and thereafter remain in full force and effect

for the benefit of, the Purchaser, notwithstanding any provision in any such Assumed Contract

(including those of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy

Code) that prohibits, restricts, or conditions such assignment or transfer.  The Sellers shall be

relieved from any further liability, other than the Cure Amounts, with respect to the Assumed

Contracts after such assumption and assignment to the Purchaser.  The Debtors may assign each

Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any

provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed

Contract or terminate, recapture, impose any penalty, condition renewal or extension, or modify

any term or condition upon the assignment of such Assumed Contract, constitute unenforceable

anti-assignment provisions which are void and of no force and effect.  All other requirements and

conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the

Debtors and assignment to the Purchaser of each Assumed Contract have been satisfied.

19.     All defaults and all other obligations or Liabilities under any Assumed

Contract occurring, arising or accruing prior to the date of the assignment or transfer to the

Purchaser (including, without limitation, Claims or Liabilities relating to any act or omission of

any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any

indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other

Person prior to the Closing Date)  shall be deemed cured or satisfied upon payment by the Sellers

of the Cure Amount, and, without limiting the foregoing, no effect shall be given to any default

of the type set forth in section 365(b)(2) of the Bankruptcy Code, or the type of default

concerning an unexpired lease of real property described in section 365(b)(1) of the Bankruptcy

Code whether or not such Assumed Contract is an executory contract within the meaning of

section 365 of the Bankruptcy Code.  The Cure Amounts reflect the sole amounts necessary

under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed

Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with

the assumption by the Debtors and assignment to the Purchaser of the Assumed Contracts.

20.     Except as provided in the Nationstar APA or this Order, after the Closing,

the Debtors and their estates shall have no further liabilities or obligations with respect to any

Assumed Contract other than certain Cure Amounts, and all holders of such claims arising from

and after Closing under any Assumed Contract are forever barred and estopped from asserting

any claims (other than for Cure Amounts) under any Assumed Contract against the Debtors, their

successors or assigns, and their estates

24

21.    The failure of the Sellers or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Sellers' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

22.    **No Successor Liability.**    Neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing.    The Purchaser shall not be deemed, as a result of any action taken in connection with the AFI APA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, to: (i) be legal successors, or otherwise be deemed successors to the Debtors; (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.    Without limiting the foregoing, the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated.

23.    **Fair Consideration.**    The consideration provided by the Purchasers for the Purchased Assets under the Nationstar APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.    The Sales may not be avoided under section 363(n) of the Bankruptcy Code.

ny-1040887

24.     **Retention of Jurisdiction.**  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect the Purchaser against any Interests against the Sellers or the Purchased Assets of any kind or nature whatsoever, and (iv) enter any order under section 363 and 365 of the Bankruptcy Code.

25.     **Good Faith.**  The Transactions contemplated by the Nationstar APA is undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the Transactions shall not affect the validity of the Transactions (including the assumption and assignment of any of the Assumed Contracts), unless such authorization is duly stayed pending such appeal.  The Purchaser is a Purchaser in good faith of the Purchased Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

26.     **No Bulk Law Application.**  No law of any state or other jurisdiction, including any bulk sales law or similar law, shall apply in any way to the transactions contemplated by the Sale, the Nationstar APA, the Motion, and this Order.

27.     **Subsequent Plan Provisions.**  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in these Chapter 11 cases shall alter, conflict with, or derogate from, the provisions of the Nationstar APA or this Order.

26

28.    **Failure to Specify Provisions.**  The failure to specifically include any particular provisions of the Nationstar APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Nationstar APA be authorized and approved in their entirety.

29.    **Non-Material Modifications.**  The Nationstar APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have any adverse effect on the Debtors' estates.

30.    **No Stay or Order.**  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Purchaser are authorized to close the Transactions immediately upon entry of this Order.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Purchaser intend to close the Transactions as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

31.    The relief granted by this Order shall apply to any affiliated future debtor (a "Future Debtor") in these jointly-administered cases.  An affiliated debtor shall be deemed to be a Future Debtor upon the Court's entry of an order authorizing the joint administration of such Future Debtor's Chapter 11 case with the Chapter 11 cases of the Debtors.

32.    **Appointment of Trustee**.  The provisions of the Nationstar APA and this Order may be specifically enforced in accordance with the Nationstar APA notwithstanding the appointment of any chapter 7 or chapter 11 trustee after the Closing.

ny-1040887

33.     Notwithstanding anything herein to the contrary, this Order shall not

modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

34.     The Court shall retain jurisdiction with respect to all matters relating to the

interpretation or implementation of this Order.


Dated:        New York, New York
              [_____], 2012


                                        _____
                                        THE HONORABLE MARTIN GLENN
                                        UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

**Nationstar APA**