Wendy Alison Nora
Access Legal Services
210 Second Street NE
Minneapolis, Minnesota 55413
Telephone: (612) 333-4144
Facsimile: (612) 886-2444

Robert N. Michaelson
The Michaelson Law Firm
11 Broadway, Suite 615
New York, New York 10004
Telephone: 212.604.0685
Facsimile: 800.364.1291

*Counsel to Wendy Alison Nora*

Hearing Date: June 12, 2012
Hearing Time: 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

In re

Residential Capital, LLC *et al.,*                    Chapter 11

                                                      Case No. 12-12020 (MG)

.

                              Debtors.                Administratively Consolidated

-----------------------------------------------------------------X

**FIRST AMENDED OMNIBUS OBJECTION TO INTERIM ORDERS OF THE HONORABLE JAMES M. PECK AS BEING IN EXCESS OF THE COURT'S JURISDICTION AS ENTERED WITHOUT NOTICE TO INTERESTED PARTIES OR TIME TO RESPOND IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND HAVING THE EFFECT OF DEPRIVING THE CLAIMANT OF HER PROCEDURAL AND SUBSTANTIVE DUE PROCESS OF LAW TO THE CONSTITUTION OF THE UNITED STATES AND FURTHER BEING IN EXCESS OF ANY REASONABLE EXERCISE OF THE COURT'S EQUITABLE POWERS UNDER 11 U.S.C. § 105**

Wendy Alison Nora ("Claimant"), a contingent claimant in litigation, holding a claim in excess of Ten Billion Dollars US ($10,000,000,000.00 US) represented by an action pending in the United States District Court for the Western District of Wisconsin in *Nora v. Residential Funding*

{00002869v1 }

*Company, LLC, et. al.* as Case No. 10-cv-748 on her own behalf and for thousands of similarly situated homeowners, all of whom are victims of the racketeering enterprise operated by the Debtor RESCAP, LLC, its purported sole shareholder, GMAC Mortgage, LLC and/or the Debtor's related (subsidiary) entities, including GMAC Mortgage, LLC, in cases now jointly administered, and its employees and agents and parent company, Ally Financial, Inc. (AFI) and the owner of Claim #1 in these proceedings, files her Omnibus Objection to all Interim Orders, and specifically objects to and seeks relief from the following Interim Orders: (i) Granting Administrative Expense Status to Intercompany Claims [Docket 69]; (ii) Authorizing the Use of Cash Collateral, Granting Adequate Protection, Modifying the Automatic Stay and Scheduling a Final Hearing [Docket 79], which overruled all objections in advance of any being filed; (iii) Authorizing Debtors to Enter Into and Perform Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables and to Obtain Post-petition Financing on a Secured Super-priority Basis [Docket 80]; (iv) Authorizing Debtors to Obtain Post-petition Financing on a Secured Super-priority Basis, Authorizing Debtors to Use Cash Collateral and Grating Adequate Protection to Adequate Protection Parties [Docket 83, 89]; (v) Authorizing Debtors to Continue in the Ordinary Course of Business (I) (A) Servicing Governmental Association Loans and (B) Foreclosure Activities Related to Certain Real Estate Owned by Fannie Mae, Freddie Mac and Ginnie Mae; (II) Authorizing Debtors to Pay Certain Prepetition Amounts Due to Critical Servicing Vendors and Foreclosure Professionals; (III) Granting Limited Stay Relief to Enable Borrowers to Assert Counter-Claims (sic) in Foreclosure

and Eviction Proceedings; (IV) Authorizing Debtors to Use Case Collateral Under the Fannie Mae EAF Facility; and (V) Granting Related Relief [Docket 87, 91]; (vi) Sealing Post Petition Financing Terms [Docket 23]; (vii) Extending the Time for Filing the Schedules and Statement of Financial Affairs to June 30, 2012 whereas final hearing on these objectionable Interim Orders is now set for June 12, 2012 [Docket 97]; (viii) Authorizing Debtor to Enter into a Shared Services Agreement with Ally Financial, Inc. to the extent that it might be construed as a preferential transfer to the parent company or a release of the parent company's liability for acts pre-petition or post-petition acts of the bankruptcy subsidiaries [Docket 92]; (ix) Sealing the Government Association Servicing Motion [sic] to the extent that it provides for any agreement with Government-Sponsored Enterprises in conservatorship under the Federal Housing Finance Authority (FHFA) which is a matter of public interest or to limit any portion thereof to the creditors appearing in these proceedings, if the document is an asset of the estate [Docket 94]; and (xi) Other Orders as may be added to these specific Orders by subsequent Amended Objections and respectfully represents as follows:

   1. Upon information and belief, the Debtor(s) have come to this Court to preferentially transfer their assets to their chosen banking and shadow-banking associates and their parent company and the interim orders entered to date constitute preferential transfers without adequate notice to creditors known to them, but selectively not named in the 50 largest creditors to prevent such creditors from participating in the selection of the hastily appointed Unsecured Creditors Committee on the day following the entry of the Interim Order [Docket 79].

   2. Claimant owns a claim which she brought in her personal name and stead based upon harm cause to her personally, which is representative of the harm caused to tens of thousands of

homeowners throughout the United States of America.

3. Upon information and belief, preferential transfers are being made or are planned to be made under the veil of Interim Orders objected to above and by Notice of Sale [*e.g.* Docket 66 and subsequent entries] to empty the estate of all valuable assets prior to the filing of the Schedules and Statement of Financial Affairs, under oath and subject to review of the creditors, the US Trustee, the Court and the public.

4. Upon information and belief, the Court has been deceived into believing that it is its using powers to "protect" the Debtor(s) under the assumption that it is a vital and critical component of this nation's banking (and shadow banking) system, when they are, in fact, parts of a racketeering enterprise which had, at its core, the purpose and intent to use forged and fabricated documents to judicially, non-judicially and by contractual power of sale defraud homeowners and courts into allowing the enterprise to take title to homes, which documents have been transmitted through the US mails and wires in violation of 18 USC §§ 1341 and 1343, respectively, in thousands of cases, which acts are predicate acts in prove of a racketeering enterprise, prohibited by 18 USC § 1961, *et seq.*

5. Upon information and belief, the other side of its racketeering venture was the sale of private label "mortgage-backed securities" to investors in REMIC (Real Estate Mortgage Investment Conduits) Trusts through a process known as securitization, when, in fact, those loans were never lawfully securitized by the delivery of the mortgage notes and assignments of the mortgages and the trusts are empty of any assets. Regrettably, government-sponsored entities, such as the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac) now in conservatorship under the Federal Housing Finance

Authority (FHFA) guaranteed the securitization trusts in most instances, which resulted in false claims being brought against the United States of America by these Debtors.

6. The FHFA is listed as having a contingent claim against these Debtors for "securities" (50 largest creditors #10) and numerous pension funds are also listed as having contingent claims for "securities." (50 largest creditors 15-38.)

7. Upon information and belief, the securitization trusts are empty of any assets and the reason why the Debtors, primarily through GMAC Mortgage, LLC document creation (forgery) unit and its associated document mills, forge and fabricate mortgage notes and assignments of mortgages is to make it appear to homeowners, their counsel and the courts that the Debtors as mortgage "servicers" have standing to foreclose on homes, when they do not own the mortgage note or have the legal right to claim assignment of mortgages.

8. Upon information and belief, Debtors have invoke the power of the Bankruptcy Court of the Southern District of New York in an effort to preferentially transfer their assets to their parent company, Ally Financial, Inc., to their preferred creditors and also to each other as operating expenses (for which administrative priority has been requested) and which may be entered allowing Debtors to sell what they claim to be their most valuable assets prior to the required filing of their Schedules and Statements of Financial Affairs, the filing of which have been allowed to take place after the currently scheduled final hearing set for June 12, 2012.

9. Debtors further seek to obtain new financing from their parent company and Barclays bank which financing proposal is claimed to be lawfully subject to seal, when it is a matter of interest to the claimants holding billions of dollars of claims for securitization fraud, racketeering and fraudulent foreclosures.

10. Upon information and belief, the Debtors bankruptcy petitions have been filed in bad faith and the relief sought and granted to date cannot be granted by this Court acting in its equitable powers under 11 USC sec. 105 because the Debtors have unclean hands.

11. The undersigned's claim is not a claim which was unknown to the Debtor at the time of filing. The failure to give list this contingent claimant among the 50 largest unsecured creditors is prima facie bad faith because the undersigned holds the largest contingent claim filed in litigation, which is presently subject to the automatic stay in these proceedings.

12. It is impossible for this Court to make an informed judgment on the matters for which Interim Orders have been entered, without the filing of Debtors Schedules and Statements of Financial Affairs and no creditor can make an informed objection without meaningful notice and opportunity to be heard.

13. Not only is there no urgent public interest to be protected by granting the Debtors the extraordinary relief represented by the Interim Orders, which have been entered without procedural and substantive due process to Claimant, a natural citizen of the United States of America, there are urgent reasons why the relief granted by the Interim Orders ought not be granted.

14. The Interim Orders enable a racketeering enterprise to avail itself of the protection of the bankruptcy court, while proceeding to engage in its criminal conduct with the unwitting sanction of this Court, which proceeded without notice to interested parties who could inform the Court of the true nature of the transactions it has heretofore unknowingly approved.

**WHEREFORE**, the undersigned makes this initial objection in good faith, for the protection of the public and the integrity of the Court and seeks to be heard at the hearing now set for June 12, 2012 or any continued or adjourned date or dates of any hearings on the attempts of the Debtors to empty their estates of valuable assets pending the filing of Schedules and Statement of Financial Affairs.

Dated: May 21, 2012
     Minneapolis, Minnesota.

ACCESS LEGAL SERVICES

*/s/ Wendy Alison Nora*

Wendy Alison Nora
210 Second Street NE
Minneapolis, Minnesota 55413
Telephone (612) 333-4144
Facsimile (612) 886-2444

and

Robert N. Michaelson
The Michaelson Law Firm
11 Broadway, Suite 615
New York, New York 10004
Telephone: 212.604.0685
Facsimile: 800.364.1291

*Counsel to Wendy Alison Nora*