MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Joel C. Haims
*Proposed Counsel to the Debtors and Debtors in Possession*
*With Respect to All Defendants Except Federal Home Loan*
*Bank of Boston and Federal Home Loan Bank of Chicago*

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178-0061
Telephone: 212-696-6000
Facsimile:  212-697-1559
Steven J. Reisman
Maryann Gallagher
*Proposed Conflicts Counsel*
*Proposed Counsel to Debtors and Debtors in Possession*
*With Respect to Defendants Federal Home Loan Bank of*
*Boston and Federal Home Loan Bank of Chicago*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-ap-_____(MG) |
| Plaintiffs, | |
| v. | Bankruptcy Case No. 12-12020 (MG) |
| ALLSTATE INS. CO., THE OTHER PARTIES LISTED ON EXHIBIT A TO THE COMPLAINT, JOHN DOES 1-1000, | Jointly  Administered |
| Defendants. | |

**COMPLAINT**

ny-1042834

The debtors and debtors-in-possession (collectively, the "Debtors" or "ResCap"), in the above-captioned jointly administered Chapter 11 Cases, and as plaintiffs in the above-captioned adversary proceeding, hereby allege for their Complaint, upon knowledge of their own acts and upon information and belief as to all other matters, as follows:

## SUMMARY OF ACTION

1.      This is an Adversary Proceeding seeking declaratory or injunctive relief to extend the automatic stay to stay or enjoin the continuation of any and all lawsuits against the Debtors' directors and officers and non-debtor affiliates that are based on the Debtors' issuance or sale of mortgage-backed securities.

2.      The Debtors and certain of their non-debtor affiliates have been named as defendants in twenty-seven lawsuits arising from the Debtors' issuance or sale of mortgage-backed securities (the "MBS Actions"). The twenty-seven MBS Actions bring either claims based on the Debtors' contractual representations and warranties provided to monoline insurers in conjunction with obtaining insurance on the securities, or securities claims based on the Debtors' statements made in the offering documents associated with the securitization.

3.      The twenty-seven MBS Actions name one or more of the following non-debtor entities: Ally Financial Inc. ("Ally Financial"), Ally Bank, GMAC Mortgage Group, LLC ("GMACM Group"), or Ally Securities LLC ("Ally Securities") (collectively, the "Non-Debtor Corporate Affiliates").[1] Six of these lawsuits also name certain of the Debtors' former directors and officers as defendants (the "D&Os" and together with the Non-Debtor Corporate Affiliates, the "Non-Debtor Affiliates").[2] The Non-Debtor Affiliates did not issue the mortgage-backed

---

[1] One of these cases was filed after the Petition Date and does not name any Debtors.

[2] The named directors and officers are Bruce J. Paradis, Davee L. Olson, David C. Walker, Kenneth M. Duncan, Ralph T. Flees, James G. Jones, David M. Bricker, Lisa R. Lundsten, and James N. Young

ny-1042834

securities and did not provide any representations or warranties in conjunction with those securities, nor were they responsible for preparing or filing the offering documents accompanying the securitizations.

4. The automatic stay of Bankruptcy Code Section 362(a) stays those lawsuits as against the Debtors. This Court should stay or enjoin the continuation of those lawsuits against the Debtors' directors and officers and non-debtor affiliates, pursuant to Section 362(a) or Section 105(a) of the Bankruptcy Code.

5. The plaintiffs' claims against the Non-Debtor Affiliates are dependent on, and intertwined with, the Debtors' alleged conduct. The complaints, for example, seek to hold the Non-Debtor Affiliates liable based on control person, aiding and abetting, and alter ego theories. To prove these claims against the Non-Debtor Affiliates, the plaintiffs must first establish the underlying liability of the Debtors—that is, that the *Debtors'* offering materials for the subject securitizations contained misrepresentations or omissions regarding the underlying mortgage loans, or that the *Debtors'* contractual representations and warranties similarly misrepresented the characteristics of the loans. Without a finding of underlying wrongdoing by the Debtors, there can be no finding of liability as to the Non-Debtor Affiliates.

6. This Court should extend the automatic stay pursuant to Sections 362 or 105 to stay or enjoin the continuation of the MBS Actions against the Non-Debtor Affiliates because (1) the Debtors will be exposed to significant risk of collateral estoppel, *stare decisis*, and evidentiary prejudice if the MBS Actions against the Non-Debtor Affiliates are allowed to continue, (2) the Debtors will face burdensome discovery from both plaintiffs and the Non-Debtor Affiliates if the MBS Actions are allowed to continue, (3) the Debtors will face significant indemnification claims from the Non-Debtor Affiliates if the MBS Actions are

ny-1042834

allowed to continue, and (4) insurance policies and proceeds that the Debtors submit are property of the Debtors' estates may be depleted if the MBS Actions are allowed to continue.

7. For these reasons, this Court should extend the automatic stay pursuant to Section 362 or issue an injunction pursuant to Section 105 to halt the prosecution of the MBS Actions against the Non-Debtor Affiliates until the effective date of a restructuring plan in these Chapter 11 cases.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).

9. Venue in this district is proper pursuant to 28 U.S.C. § 1409.

10. The statutory predicates for the relief requested herein are Sections 326(a)(1) and (a)(3) and 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Fed. R. Bankr. P. 7065.

## PARTIES

11. The Debtors are the plaintiffs in this Adversary Proceeding.

12. The defendants listed on Exhibit A to the Complaint are plaintiffs in the twenty-seven MBS Actions that have asserted claims against Non-Debtor Affiliates. The lawsuits in which the claims have been asserted are listed on Exhibit B to the Complaint.

## BACKGROUND AND FACTS

13. On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code

ny-1042834

sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee or examiner has been appointed in these Chapter 11 cases.

14. On May 16, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

15. The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc., which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit in Support of Chapter 11 Petitions and First Day Pleadings, *In re Residential Capital, LLC*, no. 12-12020-mg (Bankr. S.D.N.Y. May 14, 2012), ECF. No. 6.

16. The MBS Actions against the Debtors have been stayed pursuant to the automatic stay provisions of the Bankruptcy Code.  Nonetheless, the MBS Plaintiffs continue to pursue, or are likely to continue to pursue, the MBS Actions against the Non-Debtor Affiliates.

17. The MBS Actions fall into three groups.  There are eleven cases in which monoline insurance companies seek damages for fraud and breach of contractual representations and warranties in connection with the MBS offerings ("Rep & Warranty Cases").  Private investors have filed fifteen cases seeking damages for alleged violations of federal and state securities laws, fraud, and misrepresentations and omissions in connection with their purchases of the private-label securities ("PLS Investor Cases").  Finally, the Federal Housing Finance Agency, as conservator of Freddie Mac, has sued the Debtors and certain Non-Debtor Corporate

Affiliates in a case asserting claims similar to those in the PLS Investor Cases, arising from Freddie Mac's purchase of Debtor-sponsored MBS ("FHFA Case").

*Rep & Warranty Cases*

18. Two monoline insurance companies—Financial Guaranty Insurance Corporation ("FGIC") and Assured Guaranty Municipal Corp. ("Assured Guaranty")—have filed eleven Rep & Warranty cases against the Debtors. These cases all relate to the financial guaranty insurance policies that the plaintiffs issued in connection with securitizations sponsored by the Debtors' two operating subsidiaries, Debtor Residential Funding Co. ("RFC") or Debtor GMAC Mortgage LLC ("GMACM").[3] Debtors RFC or GMACM, as the sponsor of the securitizations, allegedly procured financial guaranty insurance policies (which guarantee repayment of mortgage principal and interest) from the plaintiffs to enhance the credit ratings and marketability of the securities that were ultimately issued. For example, FGIC alleges that RFC or GMACM "fraudulently induced FGIC's agreement to provide this insurance through willful and material misrepresentations and omissions concerning, among other things, the nature of its business practices and the credit quality and characteristics of the tens of thousands of . . . loans . . . that provided the collateral for the [securities]." *See, e.g.*, *Fin. Guar. Ins. Co. v. Ally Fin., Inc.*, No. 12-cv-1658 (S.D.N.Y. filed Mar. 6, 2012), Compl. ¶ 1. Assured Guaranty makes similar allegations. *See Assured Guar. Mun. Corp. v. GMAC Mortg., LLC, et al.*, No. 12-cv-3776 (S.D.N.Y. filed May 11, 2012) Compl. ¶ 7. The plaintiffs bring breach of contract and fraud claims against the Debtors.

19. The Rep & Warranty Cases—ten by FGIC and one by Assured Guaranty—bring claims against Non-Debtor Corporate Affiliates Ally Financial and/or Ally Bank. The gravamen of these eleven complaints is the Debtors' conduct. The factual allegations focus entirely on the

---

[3] GMACM is a subsidiary of Debtor ResCap and is a Debtor itself. GMACM Group, however, is a wholly separate entity that is a Non-Debtor Corporate Affiliate and the parent of Debtor ResCap.

ny-1042834

actions of Debtors RFC and GMACM.  All ten FGIC complaints do so in substantially similar language.  *See, e.g.*, *Fin. Guar. Ins. Co. v. Ally Fin., Inc.*, No. 12-cv-1658 ¶¶ 79-84 (detailing "GMACM's Securitizations and Financial Guaranty Insurance Generally"); *id.* ¶¶ 93-114 (detailing "GMACM's Fraudulent Inducement of FGIC"); *id.* ¶¶ 130-57 (detailing "GMACM's Representations, Warranties and Affirmative Covenants"); *id.* ¶¶ 192-209 (detailing "GMACM's Fraud"); *id.* ¶¶ 215-21 (detailing "GMACM's Breach of Obligations as Servicer").  Assured's complaint also centers on the Debtors' alleged actions.  *See Assured Guar. Mun. Corp. v. GMAC Mortg., LLC*, No. 12-cv-3776, Compl. ¶¶ 42-65, 70-78, 81-104 (describing contracts that Debtors entered into, alleged representations and warranties therein, and alleged breaches thereof).

20. The complaints attempt to allege facts against the Non-Debtor Affiliates, but even those allegations are tied to, and depend on, the alleged conduct of Debtors RFC and GMACM.  For example, all of FGIC's complaints allege:

- "Ally Financial knew that the representations and warranties GMACM made to FGIC prior to and at the closing, upon which FGIC reasonably relied, were false." *Fin. Guar. Ins. Co. v. Ally Fin., Inc.*, No. 12-cv-1658 Compl. ¶ 119.

- "Ally Bank was aware of the representations and warranties GMACM made to FGIC regarding the nature of GMACM's business practices and the characteristics of the Mortgage Loans...." *Id.* ¶ 117.

21. The causes of action in each Rep & Warranty complaint confirm that the Non-Debtor Affiliates' liability is dependent upon the Debtors' liability.  For example, the plaintiffs assert that the Non-Debtor Affiliates aided and abetted the Debtors in their alleged fraudulent inducement, and that Non-Debtor Affiliate Ally Financial was the alter ego of the Debtors.  Those alter ego and aiding and abetting claims, however, require the plaintiffs to establish underlying wrongdoing by the primary actor—here, the alleged fraudulent inducement by Debtors GMACM or RFC.

ny-1042834

22.  In four lawsuits, the plaintiffs attempt to bring direct claims against Non-Debtor Affiliate Ally Bank, but even those claims are inextricably intertwined with the claims against the Debtors.  The plaintiffs allege that Ally Bank breached obligations arising from securitization agreements with the plaintiffs and the Debtors based on its role as custodian of the underlying mortgage loans.  Those claims, though, are based on the securitization agreements, the mortgage loan origination and acquisition process, and the handling and transfer of the mortgage loans—all of which involve facts and information in the Debtors' possession and are the foundation for the plaintiffs' claims against the Debtors.

23.  The eleven Rep & Warranty Cases are still in the initial states of litigation.  No substantive motions have been filed and discovery has not yet begun. But once discovery commences, it is likely to be substantial—and centered on the Debtors.  The best evidence of that scope and burden is the discovery already taken in a representations and warranties case filed against only Debtor entities, *MBIA Insurance Corp. v. Residential Funding Company, LLC*.  That case involved only five securitizations of mortgages issued by Debtor RFC in less than one year.  Debtor RFC has produced more than 1 million pages of documents and nearly one terabyte of data including a variety of source code, other application data, and back-end loan-level data relating to automated systems used in connection with underwriting, pricing, acquiring, pooling, auditing, and servicing the mortgage loans.   And the Debtors' current and former employees were deposed for more than 80 days.

*PLS Investor Cases*

24.  Purchasers of mortgage-backed securities issued in Debtor-sponsored securitizations have filed fifteen PLS Investor Cases against Non-Debtor Affiliates: Ally Securities is named in thirteen; Ally Financial is named in seven; GMACM Group is named in four; Ally Bank is named in one; and D&Os are named in six.

ny-1042834

25. Like the Rep & Warranty Cases, the PLS Investor Cases focus on the Debtors' conduct. Each PLS Investor Case is premised on the allegation that the Debtors' offering documents "contained untrue statements of material facts and omitted to state material facts necessary in order to make the Offering Documents not misleading." *See, e.g.*, *Fed. Home Loan Bank of Chi. v. Banc of Am. Funding Corp.*, No. 10 CH 45033 (Ill. Cir. Ct., Cook Cnty. filed Apr. 8, 2011) Compl. ¶ 4. Each PLS Investor Case alleges that the Debtors drafted those documents, circulated them to potential investors, filed them with the SEC, and issued the securities:

> Prior to issuing the Securities, the ***Depositor Defendants [Debtors RALI, RAMP, and RASC] prepared and filed*** with the SEC on Form S-3 registration statements under the Securities Act of 1933, 15 U.S.C. § 77k, indicating their intention to sell the Securities. The ***Depositors then issued*** the Securities pursuant to the registration statements, accompanying prospectuses, and subsequent prospectus supplements, or private placement memoranda. The ***Depositor Defendants*** and the Wall Street Banks ***drafted*** the prospectus supplements or private placement memoranda ***and circulated*** these documents to investors, including Plaintiff. The ***Depositor Defendants filed*** the prospectus supplements with the SEC.

*Cambridge Place Inv. Mgmt. Inc. v. Morgan Stanley & Co.*, No. 10-2741-BLS2 (Mass. Super. Ct., Suffolk Cnty. filed July 9, 2010) Compl. ¶ 496 (emphasis added).

26. And like the Rep & Warranty Cases, the PLS Investor Cases assert causes of action against the Non-Debtor Affiliates that are predicated on the Debtors' allegedly wrongful conduct. Non-Debtor Affiliates Ally Financial and GMACM Group are typically referred to as "Control Persons," and their alleged liability is based on such a theory. For example:

- "As controlling persons ... the Controlling Person Defendants [Non-Debtor Affiliates Ally Financial and GMACM Group] are jointly and severally liable to [plaintiff] for the violations ... by the Depositor/Issuer Defendants [Debtors RAMP, RASC, and RFMSI ] alleged herein." *Fed. Home Loan Bank of Chi. v. Banc of Am. Funding Corp.*, No. 10 CH 45033, Compl. ¶¶ 678, 693.

- "As controlling persons pursuant to Massachusetts General Laws ... the Corporate ... Controlling Person Defendants [Non-Debtor Affiliates Ally Financial and GMACM Group] are jointly and severally liable with the controlled person or entity [Debtors RFC and RALI] to the [plaintiff] for violations of Massachusetts

ny-1042834

General Laws ... alleged herein." *Fed. Home Loan Bank of Bos. v. Ally Fin. Inc.*, No. 11-cv-10952 (Mass. Super. Ct., Suffolk Cnty. filed Apr. 20, 2011) Compl. ¶ 823.

27.     The plaintiffs claims against Non-Debtor Affiliates Ally Securities and Ally Bank are similarly based on allegations that are substantially similar, if not identical, to the allegations against the Debtors. *See, e.g.*, *Cambridge Place Inv. Mgmt. Inc. v. Morgan Stanley & Co.*, No. 10-2741-BLS2, Compl. ¶¶ 522, 530 (basing liability of Ally Securities and the Debtors on the exact same factual allegations); *Cambridge Place Inv. Mgmt. Inc. v. Morgan Stanley & Co.*, No. 11-0555-BLS2 (Mass. Super. Ct., Suffolk Cnty. filed Feb. 11, 2011) Compl. ¶¶ 497, 505 (same); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC et al.*, No. 11-cv-30035-MAP (D. Mass. filed May 7, 2012) Compl. ¶¶ 219-23 (asserting same allegations against Debtors and Non-Debtor Affiliate Ally Securities).

28.     Similarly, all of the claims against the D&Os are based on the same allegations as the claims against the Debtors. *See, e.g.*, *Huntington Bancshares Inc. v. Ally Fin., Inc.*, No. 27-cv-11-20276 (Minn. Dist. Ct., Hennepin Cnty. Oct. 10, 2011) Compl. ¶¶ 213-27 (bringing same claims against "Defendants" without differentiating between acts of D&Os and acts of Debtors); *N.J. Carpenters Health Fund v. RALI Series 2006-QO1 Trust*, No. 08-CV-08781-HB (S.D.N.Y. Jan. 3, 2011) Compl. ¶¶ 225-29 (same); *Stichting Pensioenfonds ABP v. Ally Fin., Inc.*, No. 27-CV-11-20426 (Minn. Dist. Ct., Hennepin Cnty. Oct. 11, 2011) Compl. ¶¶ 284-303 (same); *Union Cent. Life Ins. Co. v. Credit Suisse First Bos. Mortg. Sec. Corp.*, No. 11-cv-02890 (S.D.N.Y. May 4, 2012) Compl. ¶¶ 815-16, 818, 828-29, 832-36; 847-60 (same); *W. & S. Life Ins. Co. v. Residential Funding Co.*, No. A1105042 (Ohio Ct. Com. Pl., Hamilton Cnty. Sept. 9, 2011) Compl. ¶¶ 231-51, 264-77 (same); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 11-cv-30035, Compl. ¶¶ 225-34 (asserting joint and several liability against D&Os for claims against debtors).

29. The fifteen PLS Investor Cases that name Non-Debtor Affiliates are primarily at the initial stages of litigation. Discovery is only proceeding in two cases, and that discovery has only just begun. Those two cases, however, make clear that the discovery burdens on the Debtors will be severe. The plaintiffs' discovery requests focus on the Debtors' documents and witnesses—and those requests are voluminous. In one case involving seven securitizations spanning six years, the plaintiffs have requested the loan files for all 48,000 loans at issue—a request that may generate more than 5 million pages, and possibly twice that amount. Those loan files are in the custody and control of Debtor entities, and the burden of responding to that request would inevitably fall on the Debtors' personnel. The plaintiffs' sweeping requests also seek all internal communications, and communications with rating agencies, underwriters, due diligence firms, and government agencies, regarding the loans and all related business activities. In essence, the plaintiffs are requesting all internal and external communications, including emails, regarding the seven securitizations at issue. Those communications could total hundreds of thousands of pages. And the emails for the relevant time period are only available on thousands of back-up tapes, meaning that the emails would have to be restored, processed, and searched before document review could begin. Those costly, time-consuming efforts would fall to the Debtors.

*FHFA Case*

30. The FHFA has filed one suit against the Debtors and Non-Debtor Corporate Affiliates Ally Financial, GMACM Group, and Ally Securities. The FHFA filed similar lawsuits against sixteen other groups of defendants. Fifteen of the other cases are coordinated with the Ally suit before the same federal judge in the Southern District of New York, and pretrial activities are proceeding in a coordinated fashion.

31. The gravamen of the FHFA Case—like the other MBS Actions—is that the Debtors allegedly made "false and misleading statements and omissions in registration statements, prospectuses, and other offering materials pursuant to which certain residential mortgage-backed securities ... were purchased by Freddie Mac." *Fed. Hous. Fin. Agency v. Ally Fin. Inc.*, No. 652441/2011 (N.Y. Sup. Ct. filed Sept. 2, 2011) (removed to S.D.N.Y., No. 11-cv-07010) Compl. ¶ 1. Thus, as with the PLS Investor Cases, the focus of the FHFA's factual allegations is the Debtors' alleged wrongdoing:

- "[Debtor] GMAC-RFC employed its wholly-owned subsidiaries, RFC, RALI, RASC and RAMP, in the key steps of the securitization process.... For all 21 Securitizations, RFC was the sponsor and either RALI, RASC or RAMP was the depositor." *Id.* ¶ 63.

- "[Debtor HomeComings] was the GMAC entity responsible for the origination of all of GMAC's residential mortgage loans during the relevant time period." *Id.* ¶ 117.

- "[Debtor] ResCap, as the sole corporate parent of GMAC-RFC, had the practical ability to direct and control the actions of GMAC-RFC, and in fact, exercised such direction and control over the activities of this entity related to the issuance and sale of the Certificates to Freddie Mac." *Id.* ¶ 65.

32. The causes of action against the Non-Debtor Affiliates likewise make clear that their liability is predicated upon the Debtors' alleged wrongful conduct. For example:

- "This claim is brought under Section 15 of the Securities Act of 1933, 15 U.S.C. §77o ('Section 15'), against .... [Non-Debtor GMACM Group] and [Non-Debtor Ally Financial] for controlling-person liability with regard to the Section 11 and Section 12(a)(2) causes of actions set forth above. *Id.* ¶ 215.

- "Defendant [Non-Debtor GMACM Group] wholly owns [Debtor] ResCap, and is thus, a parent of [Debtors] GMAC-RFC, RFC, and the Depositor Defendants.... It oversaw the actions of its subsidiaries and allowed them to misrepresent the mortgage loans' characteristics in the Registration Statements and established special-purpose financial entities such as the Depositor Defendants and the issuing trusts to serve as conduits for the mortgage loans." *Id.* ¶ 221.

ny-1042834

33. The claims against Non-Debtor Affiliate Ally Securities are substantially similar and intertwined with the allegations for the Debtors' liability. *See id.* ¶¶ 201-06, 229-31, 234-36, 259-61.

34. The FHFA cases have not progressed substantially, and discovery has only just begun.

### THE CONTINUATION OF THE MBS ACTIONS AGAINST NON-DEBTOR AFFILIATES WILL BE DETRIMENAL TO THE DEBTORS' ESTATES

35. This Court should extend the automatic stay pursuant to Sections 362 or 105 to stay or enjoin the continuation of the MBS Actions against the Non-Debtor Affiliates for the following reasons.

36. *First*, the Debtors will be exposed to a significant risk of collateral estoppel, *stare decisis*, and evidentiary prejudice if the MBS Actions against the Non-Debtor Affiliates are allowed to continue. The Debtors' alleged conduct is the foundation for the plaintiffs' claims and allegations against the Non-Debtor Affiliates. Thus, any judicial decision—whether on the merits or on procedural issues—on plaintiffs' claims against the Non-Debtor Affiliates will inevitably be used later against the Debtors.

37. *Second*, if the MBS Actions against the Non-Debtor Affiliates are allowed to continue, the Debtors will face burdensome discovery from both the plaintiffs and the Non-Debtor Affiliates. The Debtors possess virtually all of the essential information necessary to prosecute and defend against the plaintiffs' claims, including the loan files, underwriting guidelines and memoranda, due diligence materials, relevant emails, quality audit documents, and other loan-level or securitization-related information. Thus, discovery from the Debtors is inevitable if the lawsuits are allowed to continue. The scope of that discovery would be massive: in one exemplar case, the Debtors have produced more than one million pages and their witnesses have sat for more than eighty days of deposition. That discovery cannot be reused in

the other lawsuits, as each case involves different securitizations, different mortgage loans, different underwriting policies and procedures, different documents, different witnesses, and different facts. Discovery from the Debtors would consume significant time and resources, distract their management, eviscerate the benefits of the automatic stay, and frustrate their ability to restructure successfully.

38. *Third*, the Debtors will face significant indemnification claims if the MBS Actions against the Non-Debtor Affiliates are allowed to continue. Debtor ResCap is obligated to indemnify both the Ds&Os and the Non-Debtor Corporate Affiliates for any losses and expenses incurred in the MBS Actions, including for costs of defense, potential settlements, and judgments. Those indemnification obligations will have adverse economic consequences on the Debtors' estate.

39. *Finally*, property of the Debtors' estate could be depleted if the MBS Actions against the Non-Debtor Affiliates are allowed to continue. The Debtors and Non-Debtor Affiliates share insurance coverage for certain of the MBS Actions. The Debtors assert that those insurance policies and their proceeds are assets of the Debtors' estate. If the MBS Actions continue, the Non-Debtor Affiliates will incur defense costs and losses that could draw down these insurance policies, depleting an asset that the Debtors contend is property of the estate.

## NATURE OF RELIEF REQUESTED

40. By this Complaint, the Debtors seek a declaratory judgment pursuant to Bankruptcy Code Sections 105 and 362 to extend the automatic stay provisions under Sections 362(a)(1) and 362 (a)(3) to stay the continued prosecution of the MBS Actions, or in the alternative, enjoining the continued prosecution of the MBS Actions pursuant to Section 105 during the pendency of the Chapter 11 Cases.

ny-1042834

# **FIRST CLAIM FOR RELIEF**

### (Section 362 Declaratory Judgment)

41. The Debtors repeat and reallege the allegations contained in paragraphs 1-40 of this Complaint as if fully set forth herein.

42. The Debtors seek an order staying the continued prosecution of the MBS Actions until the effective date of a restructuring plan in these Chapter 11 cases, pursuant to Sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code.

43. Extension of the stay is warranted because continuation of the MBS Actions against the Non-Debtor Affiliates would expose the Debtors to a significant risk of collateral estoppel, *stare decisis*, and evidentiary prejudice.

44. Extension of the stay is further warranted because continuation of the MBS Actions against the Non-Debtor Affiliates would expose the Debtors to very burdensome discovery obligations. Discovery from the Debtors would consume significant time and resources, distract their management, eviscerate the benefits of the automatic stay, and frustrate their ability to restructure successfully.

45. Extension of the stay is further warranted because continuation of the MBS Actions against the Non-Debtor Affiliates would expose the Debtors to significant indemnification claims by the Non-Debtor Affiliates, further jeopardizing property of the Debtors' estate.

46. Extension of the stay is further warranted because continuation of the MBS Actions against the Non-Debtor Affiliates could deplete the shared insurance coverage for certain of the MBS Actions that the Debtors submit is an asset of the estate.

47. If the MBS Actions are allowed to proceed against the Non-Debtor Affiliates, the Debtors' prospects for confirming their restructuring plan will be impaired, thwarting the

Congressional purpose of providing the Debtors with a breathing spell from litigation pressures in their efforts to confirm a plan of reorganization. Accordingly, the automatic stay should extend to the Non-Debtor Affiliates in the MBS Actions.

48. Based on the foregoing, the Debtors seek a declaratory judgment extending the stay under Sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code to the continued prosecution of the MBS Actions against the Non-Debtor Affiliates.

## SECOND CLAIM FOR RELIEF

### (Section 105 Injunctive Relief)

49. The Debtors repeat and reallege the allegations contained in paragraphs 1-48 of this Complaint as if fully set forth herein.

50. The Debtors seek an injunction enjoining the continued prosecution of the MBS Actions against the Non-Debtor Affiliates under Section 105(a) of the Bankruptcy Code until the effective date of a restructuring plan or further order of this Court.

51. Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

52. Relief under Section 105 of the Bankruptcy Code is particularly appropriate in a Chapter 11 case when necessary to protect a debtor's ability to effectively confirm a restructuring plan and to preserve the property of the debtor's estates.

53. For the reasons stated herein, this Court should apply Section 105 of the Bankruptcy Code to enjoin the continued prosecution of the MBS Actions against the Non-Debtor Affiliates because the continued prosecution of those cases against the Non-Debtor Affiliates will frustrate and jeopardize the Debtors' efforts to successfully restructure and will interfere with the property of Debtors' Chapter 11 estates.

ny-1042834

54. Pursuant to the broad powers of Section 105(a) of the Bankruptcy Code and the applicable case law, a bankruptcy court may enjoin actions against non-debtors under various circumstances, including situations where non-debtor claims may affect the property of the debtors' estates.

55. The likelihood of irreparable harm to the Debtors in the absence of injunctive relief far outweighs any harm to the plaintiffs in the MBS Actions. The plaintiffs in the MBS Actions will not be harmed if the continuation of these actions against the Non-Debtor Affiliates is enjoined until the effective date of the Debtors' restructuring plan.

56. If the MBS Actions against the Non-Debtor Affiliates are not enjoined, the Debtors will likely suffer irreparable harm, including:

(a) The risk of collateral estoppel, *stare decisis*, issue preclusion, or adverse evidentiary findings that will impair the Debtors' ability to defend themselves in subsequent litigation;

(b) The risk that a finding of liability against the Non-Debtor Affiliates will harm the Debtors' estate because a finding of liability against the Non-Debtors Affiliates will result in indemnification claims against the Debtors;

(c) The burdensome discovery that will distract the Debtors' management and employees and will frustrate the Debtors' efforts to restructure; and

(d) The risk that continued litigation of the MBS Actions will result in a depletion of insurance policies and proceeds that the Debtors submit are an asset of the Debtors' estate.

57. The injunctive relief sought by the Debtors is necessary and proper in order to allow the Debtors to complete a successful restructuring, and to provide them with an unobstructed opportunity to get their plan confirmed.

58. There is substantial likelihood that the Debtors will be able to restructure successfully if the MBS Actions against the Non-Debtor Affiliates are enjoined.

59. The injunctive relief requested herein will serve the public interest by promoting compliance with the Congressional purpose of the automatic stay and furthering the Debtors' efforts to restructure successfully.

60. Based on the foregoing, the Debtors seek an injunction under Section 105 of the Bankruptcy Code to enjoin the continued prosecution of the MBS Actions against the Non-Debtor Affiliates until the effective date of a restructuring plan or further order of this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Debtors respectfully request as follows:

(i) the entry of a declaratory judgment that the continued prosecution of the MBS Actions against the Non-Debtor Affiliates is stayed under Bankruptcy Code Sections 362(a)(1) and/or 362(a)(3) until the effective date of a restructuring plan or further order of this Court; and/or

(i) in the alternative, the entry of an Order granting an injunction pursuant to Bankruptcy Code Section 105(a) enjoining and prohibiting the continued prosecution of the MBS Actions against the Non-Debtor Affiliates until the effective date of a restructuring plan or further order of this Court; and/or

(ii) such other relief as this Court deems just and proper under the circumstances.

ny-1042834

Dated: May 25, 2012
      New York, New York      __/s/ Gary S. Lee_____
                                              Larren M. Nashelsky
                                              Gary S. Lee
                                              Joel C. Haims

                                              MORRISON & FOERSTER LLP
                                              1290 Avenue of the Americas
                                              New York, New York 10104
                                              Telephone: (212) 468-8000
                                              Facsimile: (212) 468-7900

*Proposed Counsel to the Debtors and Debtors in Possession With Respect to All Defendants Except Federal Home Loan Bank of Boston and Federal Home Loan Bank of Chicago*


                                          __/s/ Steven J. Reisman_____
                                              Steven J. Reisman
                                              Maryann Gallagher

                                              CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
                                              101 Park Avenue
                                              New York, NY 10178-0061
                                              Telephone: 212-696-6000
                                              Facsimile:  212-697-1559

*Proposed Conflicts Counsel*
*Proposed Counsel to Debtors and Debtors in Possession With Respect to Defendants Federal Home Loan Bank of Boston and Federal Home Loan Bank of Chicago*

ny-1042834