UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 12-12020 (MG) |
| | : | Jointly Administered |
| **RESIDENTIAL CAPITAL, LLC, *et al.*,** | : | |
| | : | |
| Debtors. | : | |
| | : | |

**MOTION OF SHELLPOINT PARTNERS LLC
F/K/A SHELLPOINT MORTGAGE LLC
AND NEW PENN FINANCIAL, LLC
FOR ENTRY OF AN ORDER MODIFYING THE
AUTOMATIC STAY TO EFFECTUATE TERMINATION NOTICE**

**Table of Exhibits**

Exhibit A - Servicing Agreement by and between Shellpoint Mortgage LLC n/k/a Shellpoint Partners LLC and GMAC Mortgage, LLC

Exhibit B - Servicing Agreement by and between New Penn Financial, LLC and GMAC Mortgage, LLC

Exhibit C - Termination Letter dated April 19, 2012 from Shellpoint Partners LLC to GMAC Mortgage, LLC

Exhibit D - Termination Letter dated April 19, 2012 from New Penn Financial, LLC to GMAC Mortgage, LLC

Exhibit E – Form of proposed *Order Modifying the Automatic Stay to Effectuate Termination Notice*

Shellpoint Partners LLC f/k/a Shellpoint Mortgage LLC ("Shellpoint") and New Penn Financial, LLC ("NPF"), hereby move for entry of an order, pursuant to §362(d)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), modifying the automatic stay to effectuate a termination of their agreements with GMAC Mortgage, LLC (the "Debtor") for the reasons set forth below and granting related relief, and in support thereof respectfully represents as follows.

**The Bankruptcy Case**

1. The Debtor and its related affiliates (collectively, the "Debtors") filed Chapter 11 petitions on May 14, 2012 (the "Petition Date") with the United States Bankruptcy Court for the Southern District of New York (the "Court") and continued in the operation of their businesses and properties as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2. On May 16, 2012, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this case, which consists of the following members: (i) Wilmington Trust, N.A., (ii) Deutsche Bank Trust Company Americas, (iii) The Bank of New York Mellon Trust Company, N.A., (iv) MBIA Insurance Corporation, (v) Rowena L. Drennen, (vi) AIG Asset Management (U.S.), LLC, (vii) U.S. Bank National Association, (viii) Allstate Life Insurance Company, and (ix) Financial Guaranty Insurance Company. [ECF Dkt. #102].

**Jurisdiction**

3. The Court has jurisdiction over the Debtor's case and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference" M10-468 dated

January 31, 2012 by Chief District Court Judge Loretta A. Preska. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief sought herein is 11 U.S.C. §362(d)(1).

**Background**

5. NPF is a wholly owned subsidiary of Shellpoint. Each of Shellpoint and NPF (collectively, the "Owners") are in the business of purchasing or originating residential first lien mortgage loans, closed–end subordinate lien mortgage loans and home equity lines of credit and/or the related servicing rights (collectively, the "Mortgages").

6. Prior to the Petition Date, the Debtor entered into substantially identical Servicing Agreements with each of Shellpoint and NPF, each dated August 15, 2011 (the "Agreements"), pursuant to which the Debtor agreed to service and administer the Mortgages and related property subject to the Agreements on behalf of the Owners. Copies of the Agreements are annexed hereto as Exhibits A and B.[1]

7. The current term of the Agreements expires on August 15, 2014 and automatically extends for successive one (1) year terms unless either party delivers written notice of intent not to extend. However, because the Owners retained all right, title and interest in and to the servicing rights related to the Mortgages, each of the Agreements also provide that the Owners may terminate the Agreements, in their sole option, without cause, upon ninety (90) days

[1] The exhibits to the Agreements are confidential in nature and, therefore, they are not included in Exhibits A and B hereto. The Owners will provide the exhibits to the Agreements to counsel for the Debtors or the Official Committee of Unsecured Creditors upon request under an appropriate confidentiality agreement or, if necessary, upon request of the Court, the Owners will make a request to file them under seal

advance written notice to the Debtor (the "Elective Termination Provision").[2] See the Agreements at ¶11.01(b). Continuation of the Agreements is wholly elective. Termination of the Agreements in accordance with the Elective Termination Provision is not required to be linked to cause -- it is simply the Owners' right under the Agreements to terminate the Agreements at any time.

8. Prior to the Petition Date, by letters dated April 19, 2012 (the "Termination Letters"), each of Shellpoint and NPF notified the Debtor that they were electing to terminate the Agreements under the Elective Termination Provision effective July 18, 2012 (*i.e.*, ninety days from the date of the notices) or such earlier date as may be acceptable to the Debtor (the "Termination Date"). Copies of the Termination Letters are attached hereto as Exhibits C and D. The Owners' election to terminate the Agreements was based solely on the Elective Termination Provision and not based on cause or any default by the Debtor under the terms of the Agreements. Consequently, there is nothing for the Debtor to "cure" in order to vitiate the terminations and the Agreements will terminate by their own terms with the mere passage of time on the Termination Date without any further act required by the Owners.

## **Relief Requested**

9. The automatic stay prevents entities from taking any action that would interfere with property of a debtor or its estate but it does not restrain the mere passage of time or prevent a contract from terminating by its own terms when termination does not hinge on a post-petition act. *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984), *cert. denied* 469 U.S. 982 (1984); *In re Margulis*, 323 B.R. 130, 133-34 (Bankr.S.D.N.Y. 1985). As such, Shellpoint and NPF believe that §362(a) of the Bankruptcy Code does not prevent the

[2] In addition, each of the Agreements provides that the Debtor may terminate the Agreements, at its sole option, without cause, upon 120 days' advance written notice to the Owners. See the Agreements at ¶11.01(c).

Agreements from terminating by their own terms on the Termination Date. However, in an abundance of caution, Shellpoint and NPF make this Motion to obtain an order modifying the automatic stay under §362(d)(1) of the Bankruptcy Code[3] to the extent necessary or required to permit the Agreements to terminate on the Termination Date and to effectuate the termination in accordance with the Agreements.[4]

10. This Court has confirmed that "the automatic stay does not toll or restrain the mere passage of time" and does not stop a contract from terminating by its own terms when the termination does not require any action post-petition. *Margulis*, 323 B.R. at 133; *see also*, *In re Policy Realty Corp.*, 242 B.R. 121, 126-27 (S.D.N.Y. 1999), *aff'd Policy Realty Corp. v. Trever Realty LLC (In re Policy Realty Corp.)*, 2000 Lexis 8846 (2d Cir. 2000) ("It is well established that the automatic stay does not toll a time limitation. For instance, the automatic stay does not toll the running of time under a contract and does not prevent the automatic termination of a contract.").

11. In *Margulis*, the debtor entered into an agreement with an insurance company under which the debtor was granted an option to pay a reduced amount to the insurance company in settlement of its claim (the "Payment") provided the option was exercised and the Payment made by a date certain (the "Option Deadline"). If the debtor failed to make the Payment by the Option Deadline, he was granted an additional ten day grace period to cure by making the Payment, but the insurance company did not have to provide any notice of default or take action to trigger the termination of the option, which terminated at the conclusion of the

---

[3] Section 362(d)(1) of the Bankruptcy Code provides that "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay - (1) for cause . . . . 11 U.S.C. § 362(d).

[4] This would include, without limitation, effectuating a transfer of the services to a successor servicer and delivering to the successor servicer any and all files in the possession of the Debtor and the net funds held in the Escrow Account (as defined in the Agreements) and suspend funds related to the Mortgage loans.

grace period. Two days after failing to meet the Option Deadline, the debtor filed a chapter 11 petition and eight (8) days later, the grace period expired. When the insurance company filed a proof of claim for the full debt in the debtor's bankruptcy case, the debtor filed an objection arguing that he should only be liable for the reduced settlement amount. The court disagreed, concluding that since no post-petition action was needed from the insurance company to terminate the option, the automatic stay was not implicated. Indeed, this Court held that "where the debtor defaults under a contract prior to bankruptcy, and the non-debtor party serves a termination notice that takes effect without further action at a future date, the filing of a bankruptcy petition between the giving of notice and termination date does not toll or stay the termination". *Id.*

12. Similarly, in *Intelligent Mailing Solutions, Inc. v. Ascom Hasler Mailing Systems*, 2006 Lexis 6488 (N.D.Ohio 2006) (hereinafter "IMS"), the debtor, IMS, had a contract with AHM that renewed annually unless either party sent a termination notice ninety (90) days prior to the July 1st renewal date. AHM timely sent a request to IMS to modify the term of the contract to end on March 30th instead of July 1st of the following year and advised that AHM was exercising its right to terminate the contract, effective March 30th. IMS did not object to the change in termination date, but, subsequently, filed for bankruptcy prior to the March 30th contract termination. AHM made a motion to lift the automatic stay to effectuate the termination of the contract. The bankruptcy court held that the contract terminated on its own terms and that no motion to lift the automatic stay was necessary. The District Court in IMS affirmed the bankruptcy court's holding.

13. *Margulis* and *IMS* affirm the long-standing bankruptcy concept that that the automatic stay does not toll the "mere running of time" under a contract, and thus it does not

prevent automatic termination of a contract by its terms. *See also, In re Diversified Washes of Vandalia, Inc.*, 147 B.R. 23, 25-6 (Bankr.S.D.Ohio 1992). Here, the Debtor and the Owners explicitly agreed that the Agreements can be terminated by either party without cause at any time upon notice to the other, as manifest by the Termination Provision. The Owners served the Termination Letters before the Petition Date and there is no further action necessary or required post-petition to effectuate termination of the Agreements but the mere passage of time. Moreover, the Owners elected to terminate the Agreements, as was their right, without cause so there is nothing for the Debtor to cure to avoid the termination.[5] As such, the Owners submit that their request to lift the automatic stay should be granted. To do otherwise, would contravene the parties' express agreement that either party has the right to terminate the Agreements by a mere passage of time, conditioned solely upon the courtesy of notice to the other party.

**Notice**

14. Notice of this Motion has been served upon (a) the Debtors and their counsel, (b) counsel to the Committee, (c) the Office of the United States Trustee for the Southern District of New York, (d) the Office of the United States Attorney General, (e) the Office of the New York Attorney General, (f) the Office of the United States Attorney for the Southern District of New York, (g) each of the Debtors' prepetition lenders, or their agents, (h) each of the indenture trustees for the Debtors' outstanding notes issuances, (i) counsel to Ally Financial Inc., (j) counsel to the administrative agent for the Debtors' providers of debtor in possession financing, (k) Nationstar Mortgage LLC and its counsel, (l) the Internal Revenue Service, (m) the Securities and Exchange Commission, (n) each entity that has an ownership interest in or a lien or encumbrance on any of the Mortgages, and (o) those parties who filed a request for notice in the Debtors' cases. The

[5] As such, §108(b) of the Bankruptcy Code, which tolls a cure period in a contract that has not expired before the date of the filing of the petition, is not implicated in this matter.

Owners submits that such notice is sufficient and good under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court and this Court's *Order Under Bankruptcy Code Sections 102(1), 105(A) And 105(D), Bankruptcy Rules 1015(C), 2002(M) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures* dated May 23, 2012 [ECF Dkt. #141].

WHEREFORE, Shellpoint and NPF respectfully requests that this Court enter an order, substantially in the form annexed hereto as Exhibit E, modifying the automatic stay solely to permit the Agreements to terminate on the Termination Date, and granting to Shellpoint and NPF such other and further relief as may be just and proper.

Dated: New York, New York
May 31, 2012

SHELLPOINT PARTNERS LLC
f/k/a SHELLPOINT MORTGAGE LLC and
NEW PENN FINANCIAL, LLC ("NPF"),
By its Counsel,
HALPERIN BATTAGLIA RAICHT, LLP

By: */s/ Alan D. Halperin*

Alan D. Halperin, Esq.
Debra J. Cohen, Esq.
555 Madison Avenue-9th Floor
New York, NY 10022-3301
Telephone (212) 765-9100
Facsimile (212) 765-0964
ahalperin@halperinlaw.net
dcohen@halperinlaw.net