**Hearing Date and Time: June 5, 2012 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: June 4, 2012 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Barry H. Berke
Paul H. Schoeman
Norman C. Simon
Steven S. Sparling
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

*Proposed Counsel for the Official Committee*
*of Unsecured Creditors of*
*Residential Capital, LLC, et al.*

UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
|  | : |  |
| In re: | : | Chapter 11 |
|  | : |  |
| RESIDENTIAL CAPITAL, LLC, et al., | : | Case No. 12-12020 (MG) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |
------------------------------------------------------------ X

### NOTICE OF MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DEBTORS RESIDENTIAL CAPITAL, LLC, ET AL., FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE ISSUANCE OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND THE PROVISION OF TESTIMONY BY THE DEBTORS AND OTHERS

#### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On June 1, 2012, the Official Committee of Unsecured Creditors (the

"**Committee**") of the above-captioned debtors and debtors-in-possession in these Chapter 11

cases (collectively, the "**Debtors**"), by and through its undersigned counsel, filed concurrently

herewith the Motion of The Official Committee of Unsecured Creditors of Debtors Residential

Capital, LLC, et al., for Entry of An Order Pursuant To Bankruptcy Rule 2004 Authorizing The

Issuance of Subpoenas for The Production of Documents And The Provision of Testimony By

The Debtors And Others (the "**Rule 2004 Motion**").

      2.    A hearing (the "**Hearing**") to consider the Rule 2004 Motion shall be held

before the Honorable Martin Glenn, United States Bankruptcy Judge, in Room 501 of the United

States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York,

New York 10004, or such other courtroom as may be announced on the date of the hearing, on

**June 5, 2012 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel and the

parties may be heard.

      3.    Any objections to the Rule 2004 Motion must be made in writing, filed

with the Court (with a copy to Chambers) in accordance with the Order Under Bankruptcy Code

Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local

Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative

Procedures entered by this Court on May 23, 2012 [Docket No. 141] (the "**Case Management**

**Order**"), and served on the Special Service List, as the term is defined in the Case Management

Order, so as to be received no later than **June 4, 2012 at 4:00 p.m. (prevailing Eastern Time)**

(the "**Objection Deadline**").

      4.    If no objections are timely filed and served with respect to the Rule 2004

Motion or any claim set forth therein, the Committee may, on or after the Objection Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Rule 2004 Motion, which order may be entered with no further notice or opportunity to be

heard offered to any party.

5.     A copy of the Rule 2004 Motion can be obtained or viewed for a fee via

PACER at www.pacer.gov or (without charge) on the Debtors' restructuring website at

www.kccllc.net/rescap.

Dated:   June 1, 2012
         New York, New York

                     KRAMER LEVIN NAFTALIS & FRANKEL LLP

                     By:  /s/ Kenneth H. Eckstein
                     Kenneth H. Eckstein
                     Barry H. Berke
                     Paul H. Schoeman
                     Norman C. Simon
                     Steven S. Sparling
                     1177 Avenue of the Americas
                     New York, New York 10036
                     Telephone: (212) 715-9100
                     Electronic mail: keckstein@kramerlevin.com

                     *Proposed Counsel for the Official Committee*
                     *of Unsecured Creditors of*
                     *Residential Capital, LLC, et al.*

3

**Hearing Date and Time: June 5, 2012 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: June 4, 2012 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Barry H. Berke
Paul H. Schoeman
Norman C. Simon
Steven S. Sparling
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

*Proposed Counsel for the Official Committee*
*of Unsecured Creditors of*
*Residential Capital, LLC, et al.*

UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
In re:                                                       :          Chapter 11
                                                             :
RESIDENTIAL CAPITAL, LLC, et al.,                            :          Case No. 12-12020 (MG)
                                                             :
                                  Debtors.                   :          Jointly Administered
                                                             :
------------------------------------------------------------ X


# MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DEBTORS RESIDENTIAL CAPITAL, LLC, ET AL., FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE ISSUANCE OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND THE PROVISION OF TESTIMONY BY THE DEBTORS AND OTHERS

## Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 6

   A.   The Debtors' Petitions for Chapter 11 Relief ...................................................... 6

   B.   The Debtors' Post-Petition Related Party Transactions........................................ 7

   C.   The Debtors' Pre-Petition Related Party Transactions ....................................... 8

JURISDICTION ....................................................................................................................... 9

RELIEF REQUESTED.............................................................................................................. 9

BASIS FOR RELIEF REQUESTED ....................................................................................... 10

NOTICE.................................................................................................................................. 13

CONCLUSION....................................................................................................................... 13

<u>Table of Authorities</u>

### CASES

*In re Almatis*,
   No. 10-12308, 2010 WL 4877868 (Bankr. S.D.N.Y. Nov. 24, 2010) ........................10, 11, 12

*In re Bakalis*,
   199 B.R. 443 (Bankr. E.D.N.Y. 1996)...................................................................................11

*In re Countrywide Home Loans, Inc.*,
   384 B.R. 373 (Bankr. W.D. Pa. 2008) ............................................................................10, 11

*In re Drexel Burnham Lambert Group, Inc.*,
   123 B.R. 702 (Bankr. S.D.N.Y. 1991)...................................................................................11

*In re Ecam Publications, Inc.*,
   131 B.R. 556 (Bankr. S.D.N.Y. 1991)...................................................................................11

*In re Hammond*,
   140 B.R. 197 (Bankr. S.D. Ohio 1992)..................................................................................12

*In re Hughes,*
   281 B.R. 224 (Bankr. S.D.N.Y. 2002)...................................................................................11

*In re Lufkin*,
   255 B.R. 204 (Bankr. E.D. Tenn. 2000) ................................................................................11

*In re Symington*,
   209 B.R. 678 (Bankr. D. Md. 1997) ................................................................................11, 12

*In re Valley Forge Plaza Assocs.*,
   109 B.R. 669 (E.D. Pa. 1990) ...............................................................................................11

*In re Wilson*,
   No. 07-11862, 2009 WL 304672 (Bankr. E.D. La. Feb. 6, 2009) ..........................................11

### STATUTES

11 U.S.C. § 105(a) ......................................................................................................................1

11 U.S.C. § 1103(c) ....................................................................................................................1

11 U.S.C. § 1103(c)(2)................................................................................................................4

11 U.S.C. § 1103 (c)(3)...............................................................................................................4

28 U.S.C. § 157 ................................................................................................................................9

28 U.S.C. § 157(b)(2) .......................................................................................................................9

28 U.S.C. § 1334..............................................................................................................................9

28 U.S.C. § 1408 ..............................................................................................................................9

28 U.S.C. § 1409...............................................................................................................................9

## OTHER AUTHORITIES

Bankr. S.D.N.Y. R. 9006-1(b) .........................................................................................................1

Fed. R. Bankr. P. 2004............................................................................................................ *passim*

Fed. R. Bankr. P. 9006(c)(1)............................................................................................................1

Fed. R. Bankr. P. 9013 .....................................................................................................................1

## Table of Exhibits

**Exhibit**

Proposed Order ............................................................................................................................A

Draft Document Subpoena To The Debtors ...................................................................................B

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-
captioned debtors and debtors-in-possession in these Chapter 11 cases (collectively, the
"**Debtors**"), by and through its undersigned counsel, hereby moves (the "**Rule 2004 Motion**")
for entry of an order, pursuant to 11 U.S.C. §§ 105(a) and 1103(c); Rules 2004, 9006(c)(1), and
9013 of the Federal Rules of Bankruptcy Procedure (the "**Rules**"); and Rule 9006-1(b) of the
Local Bankruptcy Rules for the Southern District of New York, in the same or substantially the
same form annexed hereto as **Exhibit A**, authorizing the Committee to issue subpoenas
compelling the production of documents and the provision of testimony by the Debtors and
certain other entities and persons.[1]

## PRELIMINARY STATEMENT

1.    The Rule 2004 Motion is the necessary first step in a comprehensive
independent investigation that the Committee, as an independent estate fiduciary, must promptly
conduct in light of the Debtors' stated goal of a highly expedited, consensual reorganization.

2.    The Debtors, which filed voluntary petitions for Chapter 11 relief on May
14, 2012 (the "**Petition Date**"), are among the largest servicers and originators of residential
mortgage loans in the United States. They service more than $370 billion of residential
mortgage loans for more than 2.4 million homeowners, making them the fifth largest servicer in
the nation. In 2011, they, along with their non-debtor affiliate Ally Bank, produced more than
$56 billion in loan origination volume, making them the tenth largest residential mortgage loan
originator in the nation. Debtor Residential Capital, LLC ("**ResCap**"), which is the parent
company of each of the other debtors, is a subsidiary of Ally Financial Inc. ("**Ally**"), formerly

---

[1]  Capitalized terms used herein and not defined herein shall have the meanings ascribed to
them in the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital,
LLC, In Support of Chapter 11 Petitions And First Day Pleadings, dated May 14, 2012, and
the exhibits thereto (the "**First Day Affidavit**") [Docket No. 6].

known as GMAC LLC. Since late 2008 and the Troubled Asset Relief Program, Ally has been owned by the U.S. Department of the Treasury; affiliates of Cerberus Capital Management, L.P. ("**Cerberus**"); affiliates of General Motors Company; and other investors. Prior to that time, Ally was owned 51% by a consortium of investors led by Cerberus and 49% by General Motors Corporation.

    3.    In these Chapter 11 cases, the Debtors propose an ambitious and expedited reorganization of more than 50 entities, with more than $15 billion of assets, before the end of the year.[2] The proposed reorganization includes several significant transactions, including transactions between the Debtors and their corporate parent Ally that are valued *in excess of $2.75 billion*. The transactions include: (i) Ally's stalking horse bid of up to $1.6 billion for a portfolio of mortgage loans and securities owned by the Debtors (the "**Ally Asset Purchase Agreement**"); (ii) Ally's $150 million DIP loan (the "**Ally DIP Facility**") to the Debtors under an amendment to a pre-petition secured loan agreement; and (iii) Ally's agreement (the "**Ally Settlement Agreement**") to contribute $750 million in cash and other consideration to the Debtors' estates that the Debtors allege should be valued in excess of $1 billion, and to support the Debtors' proposed plan of reorganization, in exchange for releases by the estates of all legal claims against Ally (the "**Estate Releases**"), and non-consensual releases by third party holders of myriad legal claims against Ally (the "**Non-Consensual Third Party Releases**")—including potentially billions of dollars in legal claims related to residential mortgage loans and mortgage-backed securities. In 2011, ResCap appointed two new members to its board, Jonathan Ilany and John E. Mack (the "**AFI Claims Subcommittee**"), who purportedly investigated legal claims against Ally and, based on the purported investigation, negotiated the Ally Settlement

---

[2]    First Day Affidavit ¶ 48 & Ex. 1.

Agreement, including the aforementioned valuable releases. The Debtors' proposed reorganization includes additional settlement agreements, the "**Junior Secured Noteholders' Plan Support Agreement**", the "**RMBS Trust Settlement Agreement**", and the "**RMBS Plan Support Agreement**", which would reorder lien priorities and allow significant claims, thereby shifting tremendous value to specified creditor constituencies.

4.      In addition to these proposed post-petition transactions—which apparently were structured to benefit Ally and the Debtors' secured creditors—from 2004 through the Petition Date, the Debtors and Ally, or Ally's corporate parent Cerberus, consummated a series of significant related party transactions involving the transfer of billions of dollars of assets and the provision of billions of dollars in financing. For example, in 2006 and 2008, ResCap effectively transferred its subsidiary federal savings bank, along with $1.2 billion in mortgage-related assets owned by that bank, to Ally and/or Ally Bank (formerly known as GMAC Bank) (the "**GMAC Bank Transfer**"); in 2007, Ally reportedly purchased ResCap's healthcare financing business for $900 million (the "**Healthcare Financing Sale**"); in 2008, Ally reportedly purchased for an apparently undisclosed amount ResCap's resort financing business valued at $1.5 billion (the "**Resort Financing Sale**"); and in 2008, Cerberus reportedly purchased ResCap's model home business, valued at $479 million, for $230 million and a junior preferred equity interest in Cerberus' newly formed acquisition vehicle (the "**Model Home Business Sale**"). There are many other similar pre-petition related party transactions. In addition, as of the Petition Date, Ally had extended $1.1 billion of secured indebtedness to certain of the Debtors.

5.      This complex constellation of pre- and post-petition transactions, involving billions of dollars of transfers and financings among *interested parties*, lies at the heart

3

of these Chapter 11 cases. No plan of reorganization can be confirmed until the fairness of these transactions and the conduct of the interested parties is thoroughly examined. In particular, the Debtors' attempt to secure Non-Consensual Third Party Releases for Ally will require the overwhelming support of unsecured creditors holding such claims. However, other than the Committee, there is currently *no independent party* with the ability and authority to fully investigate and analyze these matters for the benefit of parties other than Ally and the Debtors' secured creditors. The Court has alluded to the necessity of such an independent investigation by observing during the First Day Hearing, with respect to the Debtors' proposed assessment of the sale of assets subject to Ally's stalking horse bid, that there appears to be a "conflict within the corporate structure" that invites "some independent fiduciary" to make an assessment. (5/14/12 Court Tr. 36-37).

6.      The Committee, which was appointed on May 16, 2012, is the proper estate fiduciary to make that assessment. The Bankruptcy Code charges the Committee with "investigat[ing] the acts, conduct, assets, liabilities, and financial condition of the debtor"; "[investigating] any other matter relevant to the case or to the formulation of a plan"; and "advis[ing] those represented by such committee of such committee's determinations as to any plan formulated". 11 U.S.C. §§ 1103(c)(2), (c)(3). Rule 2004 permits the Court to authorize the Committee to conduct such investigations by examining the Debtors and others with respect "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."

7.      An independent investigation by the Committee of these highly material transactions and matters is critical if the Debtors' goal is to confirm a consensual plan, especially

4

on the Debtors' current expedited timeline. Accordingly, the need for the investigation is
sufficiently urgent and important to warrant the Court's direction during the May 31, 2012 status
conference that this motion be noticed for a hearing on June 5, 2012, at 10:00 a.m., with any
objections due to be filed on or before June 4, 2012 at 4:00 p.m.

        8.     The Committee's anticipated investigation in the first instance will
include, among other things, the production of documents and deposition testimony by the
Debtors and their subsidiaries, Ally, Cerberus, Ally Bank, IB Finance Holding Company, LLC
("**IB Finance**"), and certain of each of these entities' current or former directors, officers,
employees, and advisors. The documents produced will include, among other things, board
minutes and materials, e-mail correspondence, financing agreements, asset purchase agreements,
financial statements, balance sheets, appraisals, valuations, and fairness opinions. (A copy of a
draft first document subpoena to the Debtors is attached hereto as **Exhibit B**). These documents
and the deposition testimony may reveal, among many other things, conduct by the Debtors and
others that is relevant to these Chapter 11 cases and the nature and extent of the estates' assets;
the nature of the complex relationships between and among the Debtors, Ally, Cerberus, and
Ally Bank; the extent to which Ally and/or Cerberus exercised control over ResCap, including
through overlapping directors and officers; the nature, purpose, and effect of the Debtors' pre-
petition transactions; the potential value of the claims against Ally that would be released
through the Ally Settlement Agreement; and other aspects of the Debtors' assets, liabilities, and
financial condition. The Committee proposes retaining two experienced financial advisors,
Moelis & Company and AlixPartners, to assist with the investigation.

        9.     Because the Debtors have set forth a highly ambitious expedited schedule
to complete their reorganization; because it is still very early in these cases; and because the

Committee cannot anticipate now all of the discovery it will need; the Committee seeks authority
to issue subpoenas under Rule 2004 to the Debtors and their subsidiaries, Ally, Cerberus, Ally
Bank, and IB Finance, and certain of each of these entities' current or former directors, officers,
employees, and advisors. This authority shall not waive the right of any entity or person to
object to, or move to quash, any subpoena issued by the Committee. In addition, because the
Committee anticipates that its investigation may identify other entities or individuals from whom
discovery is needed, the Committee seeks authority to supplement the Rule 2004 Motion with
additional motions under Rule 2004 filed on an *ex parte* basis.

10.     The Committee has reached out to the Debtors and advised them about the
Committee's intent to seek the Court's entry of an order authorizing the issuance of subpoenas
under Rule 2004. The Committee understands that the Debtors have anticipated an investigation
and have indicated the intention to fully cooperate. The Debtors have advised the Committee
that they are ready to immediately produce significant information and material responsive to the
Committee's discovery requests.

## BACKGROUND

### A.     The Debtors' Petitions for Chapter 11 Relief

11.     The Debtors filed voluntary petitions for relief under Chapter 11 on May
14, 2012. ResCap is the direct or indirect corporate parent of each of the other debtors. Ally is
the corporate parent of the intermediate non-debtor company, GMAC Mortgage Group, LLC,
which owns 100% of ResCap's equity. Ally has been partially owned by Cerberus since
November, 2006.

12.     The Committee was appointed on May 16, 2012. On the same day, it
selected Kramer Levin Naftalis & Frankel LLP as its proposed attorneys, and Moelis &
Company as proposed financial advisors. On May 21, 2012, it also selected AlixPartners as

6

proposed financial advisors. Applications to approve these retentions will be filed on a timely basis with the Court.

13.     As described in greater detail in the First Day Affidavit, the Debtors are among the largest servicers and originators of residential mortgage loans in the United States. As of March 31, 2012, they reported $15.7 billion in total assets and $15.276 billion in total liabilities. As of the Petition Date, the Debtors reported $612.5 million in unrestricted cash and $275.5 million in restricted cash, with net revenues of $426,657,000 and net income of $113,016,000 for the three months ended March 31, 2012. They continue to operate their businesses as debtors-in-possession.

14.     The Debtors propose to reorganize under Chapter 11 on a highly compressed schedule. For example, they propose obtaining the Court's approval of the RMBS Trust Settlement Agreement in July; the Ally Settlement Agreement and Junior Secured Notes' Plan Settlement Agreement in August; the ResCap Asset Sale, including the sale of assets subject to Ally's $1.6 billion stalking horse bid, in October or November; and a Plan with an effective date in December.

**B.     The Debtors' Post-Petition Related Party Transactions**

15.     As described above, the Debtors' proposed reorganization includes several significant related party transactions among or involving the Debtors, Ally, and others. These include transactions directly between the Debtors and Ally that are valued in excess of $2.75 billion, namely the Ally Asset Purchase Agreement; the Ally DIP Facility; and the Ally Settlement Agreement.

16.     In 2011, ResCap appointed the AFI Claims Subcommittee to purportedly investigate legal claims against Ally. Based on the purported investigation, the AFI Claims

7

Subcommittee negotiated the Ally Settlement Agreement, including the aforementioned valuable releases.

17.     The Debtors and/or Ally also negotiated the Junior Secured Noteholders' Plan Support Agreement, to which both the Debtors and Ally are parties, and the RMBS Trust Settlement Agreement and RMBS Plan Support Agreement, approval of which is also contemplated under the proposed reorganization. These additional agreements involve the Debtors, Ally, and other parties, and reorder lien priorities and allow significant claims to benefit specified creditor constituencies. The Junior Secured Noteholders' Plan Support Agreement settles claims between Ally as a secured first priority lender and the Junior Secured Noteholders as secured second priority lenders, locking in the Junior Secured Noteholders' support for the reorganization being pursued by the Debtors and Ally. The RMBS Trust Settlement Agreement proposes to settle billions of dollars of potential legal claims against the Debtors and Ally concerning alleged breaches of representations and warranties made in connection with the pooling of mortgages for the issuance of residential mortgage-backed securities.

## C.     The Debtors' Pre-Petition Related Party Transactions

18.     From ResCap's formation in 2004 through the Petition Date, the Debtors and Ally, or Ally's corporate parent Cerberus, have consummated a series of significant pre-petition related party transactions. These include the GMAC Bank Transfer, the Healthcare Financing Sale, the Resort Financing Sale, and the Model Home Business Sale. These and other transactions appear to have resulted in the acquisition by Ally or Cerberus of billions of dollars of ResCap assets.

19.     In addition, it appears that pre-petition Ally provided billions of dollars in secured loans and capital contributions (in cash, mortgage loans, or debt forgiveness) to the

8

Debtors. As of the Petition Date, Ally had outstanding $1.1 billion of secured indebtedness with certain of the Debtors.

## JURISDICTION

20.     The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

21.     Pursuant to Rule 2004, the Committee seeks entry of an order, in the same form or substantially the same form attached hereto as **Exhibit A**, authorizing it to issue document and deposition subpoenas to the Debtors and their subsidiaries, Ally, Cerberus, Ally Bank, IB Finance, and certain of each of these entities' current or former directors, officers, employees, and advisors. This authority shall not waive the right of any entity or person to object to, or move to quash, any such subpoena. In addition, the Committee seeks authority to supplement the Rule 2004 Motion with additional motions under Rule 2004 filed on an *ex parte* basis.

22.     For example, the Committee seeks permission to issue subpoenas seeking documents and deposition testimony concerning, among other things: (a) the Debtors' proposed post-petition transactions, including the Ally Settlement Agreement and the value of the Estate Releases and Non-Consensual Third Party Releases for which Ally has agreed to contribute $750 million to the estates; (b) the activities of the AFI Claims Subcommittee, including its investigation of the validity of legal claims against Ally concerning mortgages and mortgage-backed securities, and its negotiation of the Ally Settlement Agreement and the Estate Releases and Non-Consensual Third Party Releases; (c) the Debtors' significant pre-petition transactions

9

and financings, including related party transactions such as the GMAC Bank Transfer, the Healthcare Financing Sale, the Resort Financing Sale, the Model Home Business Sale, and AFI's extension of $1.1 billion of secured indebtedness to certain of the Debtors; (d) the corporate relationships between and among ResCap, AFI, Cerberus, and Ally Bank, including the conduct of each of these entities in connection with the Debtors' decisions to enter into post-petition and pre-petition transactions, and the extent to which AFI or Cerberus influenced or exercised control over the Debtors; and (e) other matters affecting the Debtors' assets, liabilities, and financial condition, including the solvency of the Debtors prior to the Petition Date.

23.     Each of these matters directly affects the administration of the Debtors' estates and the acts, conduct, property, and financial condition of the Debtors—indeed, each of these matters must be investigated by an independent fiduciary before the Debtors' reorganization can proceed—and thus the Rule 2004 Motion should be granted.

## BASIS FOR RELIEF REQUESTED

24.     Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Pursuant to Rule 2004, a party in interest may seek both documents and oral discovery related to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Rule 2004(b), (c).

25.     "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Almatis*, No. 10-12308, 2010 WL 4877868, at *3 (Bankr. S.D.N.Y. Nov. 24, 2010) (Glenn, J.). *See also In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008) (inquiry into any

matter that may affect administration of estate "comfortably falls within the allowed limits under Rule 2004"); *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000) (purpose of Rule 2004 is to "determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors").

26. Unlike discovery under the Federal Rules of Civil Procedure, discovery under Rule 2004 can be used as a "pre-litigation discovery device." *In re Wilson*, No. 07-11862, 2009 WL 304672, at \*5 (Bankr. E.D. La. Feb. 6, 2009). "No contested matter or adversary proceeding need be instituted as a prerequisite to conducting an examination under this rule." *In re Almatis*, 2010 WL 4877868, at \*3. Consequently, a Rule 2004 motion need not be tied to specific factual allegations at issue between parties. *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (Rule 2004 permits "examination of any party without the requirement of a pending adversary proceeding or contested matter").

27. The scope of a Rule 2004 examination is broader than that of discovery under the Federal Rules of Civil Procedure. *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("[T]he scope of a Rule 2004 examination is very broad. Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure."). Courts have recognized that Rule 2004 examinations may be "broad [and] unfettered." *In re Countrywide Home Loans, Inc.*, 384 B.R. at 400. Indeed, "it is well settled that the scope of examination allowed under Rule 2004 . . . may be in the nature of a 'fishing expedition.'" *In re Hughes,* 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002). *See also In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (E.D. Pa. 1990).

11

28.     The decision whether to authorize the requested discovery rests within the discretion of the bankruptcy court. *See, e.g., In re Hammond*, 140 B.R. 197, 200 (Bankr. S.D. Ohio 1992). Relief may be granted on an *ex parte* basis. *In re Symington*, 209 B.R. at 688 ("Rule 2004 motions are generally granted ex parte").

29.     Here, the requested relief is well within the scope of Rule 2004 because it would authorize the Committee to "determin[e] the nature and extent of the bankruptcy estate, reveal[] assets, examin[e] transactions and assess[] whether wrongdoing has occurred." *In re Almatis*, 2010 WL 4877868, at \*3. For example, it would allow the Committee to discover information relevant to: (a) determining the value of the Estate Releases and Non-Consensual Third Party Releases that the Debtors propose to give to their corporate parent Ally; (b) examining billions of dollars of pre- and post-petition related party transactions to determine their effect on the assets of the estates and the propriety of the Debtors' proposed plan of reorganization; and (c) determining whether the Debtors or their corporate parent Ally, or their affiliates, engaged in any actions that harmed the Debtors or otherwise give rise to claims.

30.     It is crucial for the Committee, as an estate fiduciary, to investigate and reach conclusions about each of these issues so that it may best advise and represent the interests of unsecured creditors. An expedited reorganization can best be accomplished, and potentially may *only* be accomplished, on a consensual basis, with the support of all major constituencies. In particular, Ally cannot hope to obtain its desired Non-Consensual Third Party Releases without overwhelming support by the creditors that hold the released claims. The interests of those creditors are represented by the Committee, and the Committee cannot recommend approval of the various settlements or, more particularly, the releases, without conducting a

12

thorough and independent investigation of the facts and circumstances surrounding the relevant transactions.

31.     For each of the reasons stated herein, the Court should grant the Rule 2004 Motion.

### NOTICE

32.     Notice of the Rule 2004 Motion has been provided in accordance with the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures  entered by this Court on May 23, 2012 [Docket No. 141] (the "**Case Management Order**"), and notice has been given to the parties identified on the Monthly Service List (as defined in the Case Management Order) and Cerberus.  The Committee submits that such notice is sufficient and no other or further notice need be provided.

33.     No prior request for the relief sought in this motion has been made by the Committee to this or any other Court.

### CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court:  (i) enter an order granting the relief sought herein in the same form or substantially the same form attached hereto as **Exhibit A**; and (ii) grant such other and further relief as the Court deems just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

13

Dated:   June 1, 2012
         New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Barry H. Berke
Paul H. Schoeman
Norman C. Simon
Steven S. Sparling
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Electronic mail: keckstein@kramerlevin.com

*Proposed Counsel for the Official Committee
of Unsecured Creditors of
Residential Capital, LLC, et al.*

## <u>Exhibit A</u>

**Proposed Order**

UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                      :

In re:                                     :         Chapter 11
                                        :

RESIDENTIAL CAPITAL, LLC, et al.,     :         Case No. 12-12020 (MG)
                                        :

               Debtors.       :         Jointly Administered
                                        :

------------------------------------------------------------- X

## ORDER AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ISSUE SUBPOENAS COMPELLING THE PRODUCTION OF DOCUMENTS AND PROVISION OF TESTIMONY BY THE DEBTORS AND OTHERS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

Upon consideration of the motion (the "**Rule 2004 Motion**"),[1] dated June 1, 2012, of the

Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors

and debtors-in-possession (the "**Debtors**"), for entry of an order, pursuant to 11 U.S.C. §§ 105(a)

and 1103(c), Rules 2004, 9006(c)(1), and 9013 of the Federal Rules of Bankruptcy Procedure

(the "**Rules**"), and Rule 9006-1(b) of the Local Bankruptcy Rules for the Southern District of

New York (the "**Local Rules**"), authorizing the Committee to issue subpoenas compelling the

production of documents and the provision of testimony by the Debtors and other entities and

persons; that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

that the Rule 2004 Motion and the relief requested therein are a core proceeding pursuant to 28

U.S.C. § 157(b); that the relief requested in the Rule 2004 Motion is in the best interests of the

Debtors and their respective estates, creditors, and other parties-in-interest; that proper notice has

been given under the circumstances and no further notice is necessary; and after due deliberation

thereon, and good and sufficient cause appearing therefor, it is hereby:

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Rule 2004 Motion, including the draft subpoena attached thereto as Exhibit B.

ORDERED that the Rule 2004 Motion is granted in its entirety and on the terms set forth herein;

ORDERED that pursuant to 11 U.S.C. §§ 105(a) and 1103(c); Rules 2004, 9006(c)(1), 9013; and Local Rule 9006-1(b), the Committee is authorized to serve subpoenas (the "**Committee Subpoenas**") compelling the production of documents and the provision of testimony on the Debtors; Ally Financial, Inc.; Cerberus Capital Management, L.P.; Ally Bank; and IB Finance Holding Company, LLC (and each of the aforementioned entities' current and former, direct and indirect affiliates and subsidiaries); and certain of each of these entities' current or former directors, officers, employees, and advisors;

ORDERED that the Committee shall file with the Court an affidavit or declaration of service for each Committee Subpoena it serves;

ORDERED that the subject of a Committee Subpoena (a "**Commanded Person**") compelling the production of documents shall produce responsive, non-privileged documents on a rolling basis and in the manner instructed in Exhibit B to the Rule 2004 Motion. Such document productions shall be substantially completed and received by the Committee no later than twenty-one (21) days after receipt of a Committee Subpoena, and fully completed and received by the Committee no later than thirty (30) days after receipt of a Committee Subpoena, unless otherwise agreed to by the Committee or ordered by the Court;

ORDERED that if a Commanded Person claims that any privilege or protection excuses production of any document or part thereof, the Commanded Person must, consistent with Rule 7026 and Local Civil Rule 26.2 of the United States District Court for the Southern District of New York, expressly make such claim in a writing to the Committee that provides a general description of the categories of documents being withheld and the basis for doing so, sufficient in

- 2 -

detail for the Committee to determine whether there is an adequate basis for invoking privilege or protection. Such writing shall be served on the Committee no later than seven (7) days after the Commanded Person is required by this Order to complete their document production;

ORDERED that a Commanded Person compelled by a Committee Subpoena to provide testimony shall submit to an oral examination at a deposition no later than twenty-one (21) days after receiving a Committee Subpoena, unless otherwise agreed to by the Committee or ordered by the Court;

ORDERED that nothing herein shall limit the rights of a Commanded Person to seek relief under Rule 9016 or Rule 45 of the Federal Rules of Civil Procedure, except that any objections to a Committee Subpoena must be served on the Committee no later than ten (10) days after receipt of such subpoena; and any motion to quash or modify a Committee Subpoena must be filed with the Court and served on the Committee no later than fourteen (14) days after receipt of such subpoena;

ORDERED that, in addition to the requirements of the immediately preceding decretal paragraph, in the event of a discovery dispute in this action counsel shall first meet and confer in an effort to resolve the dispute before engaging in motion practice. If counsel are unable to resolve the dispute, counsel for any party seeking assistance from the Court shall, before filing any discovery motion, arrange a telephone call with the Court and all counsel directly involved in the dispute. The Court will endeavor to resolve the dispute without the filing of motions;

ORDERED that the Committee may file on an *ex parte* basis additional motions seeking authority to obtain discovery under Rule 2004 from other entities or individuals; and

ORDERED that this Court shall retain jurisdiction to resolve any disputes arising from or related to this Order, and to interpret, implement, and enforce the provisions of this Order.

Dated: New York, New York
_____, 2012

_____
HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

- 4 -

**<u>Exhibit B</u>**

**Draft Document Subpoena To The Debtors**

# UNITED STATES BANKRUPTCY COURT

## Southern District of New York

*In re*
*Residential Capital, LLC, et al.,*

Debtors.

### *DRAFT*    **SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.*12-12020(MG)

Chapter 11

To:
Residential Capital, LLC, et al.
c/o Morrison & Foerster LLP
Attn: Jamie A. Levitt, Esq.
1290 Avenue of the Americas
New York, NY 10104

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A

| PLACE | DATE AND TIME |
|---|---|
| Kramer Levin Naftalis & Frankel LLP<br>Attn: Barry H. Berke, Esq.<br>1177 Avenue of the Americas<br>New York, NY 10036 | June [ ], 2012, 5:00 p.m. EST |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Barry H. Berke, Esq. | June [ ], 2012 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Barry H. Berke, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

## PROOF OF SERVICE

|  | DATE | PLACE |
| --- | --- | --- |
| **SERVED** |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
| --- | --- |
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
| --- | --- |
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                              DATE                                SIGNATURE OF SERVER

                                                   _____
                                                   ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.
(d) Duties in Responding to a Subpoena.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

***DRAFT* EXHIBIT A**

**DEFINITIONS**

1.      Pursuant to Local Civil Rule 26.3(a) of the United States District Court for the Southern District of New York (the "Local Civil Rules"), the full text of the definitions and rules of construction set forth in Local Civil Rule 26.3(c) and (d) are incorporated herein by reference. In addition, the definitions described herein apply.

2.      "**AFI**" shall mean Ally Financial Inc., f/k/a GMAC LLC, and all of its current and former, direct and indirect affiliates, subsidiaries, employees, representatives, agents, advisors (including without limitation Evercore), attorneys (including without limitation Kirkland & Ellis LLP and Mayer Brown LLP), and all other persons or entities acting or purporting to act on their behalf or under their control, and each of their predecessors and successors, except for ResCap.

3.      "**AFI Claims Subcommittee**" shall mean the subcommittee of ResCap's board of directors comprising Jonathan Ilany and John E. Mack, which is referred to on pages 34 through 38 of the May 14, 2012 Transcript, and all of its employees, representatives, agents, attorneys (including without limitation Morrison Cohen LLP), and advisors, and all other persons or entities acting or purporting to act on their behalf or under their control, and each of their predecessors and successors.

4.      "**AFI Settlement and Plan Sponsor Agreement**" shall mean the agreement dated as of May 14, 2012, entered into by the Debtors and AFI, which is attached as Exhibit 8 to the First Day Affidavit.

5.      "**Ally Bank**" shall mean the Utah bank f/k/a GMAC Bank and all of its direct and indirect affiliates, subsidiaries, employees, representatives, agents, advisors, attorneys,

and all other persons or entities acting or purporting to act on their behalf or under their control, and each of their predecessors and successors.

6.    "**Board Materials**" shall mean all documents (including any drafts) provided to or considered by the directors of the boards of ResCap, or any members, committees, or subcommittees thereof, including without limitation (a) documents related to the assets, debts, dealings, operations, and/or businesses of ResCap; and (b) documents related to advice by counsel and/or financial advisors concerning the assets, debts, dealings, operations, and/or businesses of ResCap.

7.    "**Board Minutes**" shall mean all written or recorded (by any means including without limitation tape recording, video recording, or otherwise) consents, resolutions, minutes, transcriptions, or notes of any meetings, decisions, deliberations, discussions, or actions of the boards of directors of ResCap, or of any members, committees, or subcommittees thereof, including without limitation all drafts of any such materials.

8.    "**Cerberus**" shall mean Cerberus Capital Management, L.P. and all of its direct and indirect affiliates, subsidiaries, employees, representatives, agents, advisors, attorneys, and all other persons or entities acting or purporting to act on their behalf or under their control, and each of their predecessors and successors, including without limitation Cerberus FIM, LLC; Cerberus FIM Investors LLC; and FIM Holdings LLC.

9.    "**Committee**" shall mean the Official Committee of Unsecured Creditors of Residential Capital, LLC, et al. in the case captioned in the annexed subpoena.

10.    "**Debtors**" shall mean ResCap and its direct and indirect subsidiaries that have filed voluntary petitions commencing a case under Chapter 11 of the Bankruptcy Code, and are debtors and debtors-in-possession on behalf of each such entity and its estate in the case

2

captioned in the annexed subpoena, and all of their employees, representatives, agents, advisors, attorneys (including without limitation Morrison & Foerster LLP), and all other persons or entities acting or purporting to act on their behalf or under their control, and each of their predecessors and successors.

11.    "**First Day Affidavit**" shall mean the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, In Support of Chapter 11 Petitions And First Day Pleadings, dated May 14, 2012 [Docket No. 6].

12.    "**GMAC Bank**" shall mean the Utah Bank n/k/a Ally Bank and all of its direct and indirect affiliates, subsidiaries, employees, representatives, agents, advisors, attorneys, and all other persons or entities acting or purporting to act on their behalf or under their control, and each of their predecessors and successors.

13.    "**GMAC Bank Transfer**" shall mean all contemplated or consummated transactions, agreements, or events among the Related Parties concerning (a) the transfer of the assets of or interests in Old GMAC Bank; (b) the transfer of the assets of or interests in Ally Bank and/or IB Finance; (c) the issuance and/or conversion of preferred membership interests in ResCap; and (c) the issuance, conversion, and/or remarketing of common and preferred membership interests in IB Finance, including without limitation the transactions, agreements, and events referenced, described, or disclosed in ResCap SEC Forms 8-K dated November 20, 2006; March 31, 2008; June 3, 2008, and January 30, 2009.

14.    "**IB Finance**" shall mean the IB Finance Holding Company, LLC, the holding company for Ally Bank, and all of its employees, representatives, agents, advisors, attorneys, and all other persons or entities acting or purporting to act on their behalf or under their control, and each of their predecessors and successors.

3

15. "**Junior Secured Notcholders**" shall mean the Consenting Holders and the Ad Hoc Group, as each is defined in the Junior Secured Noteholders Plan Support Agreement, and all of their direct and indirect affiliates, subsidiaries, employees, representatives, agents, advisors (including without limitation Houlihan Lokey), and attorneys (including without limitation White & Case LLP), and each of their predecessors and successors.

16. "**Junior Secured Notcholders' Plan Support Agreement**" shall mean the agreement entered into as of May 13, 2012, by and among the Debtors, AFI, the Consenting Holders, and the Ad Hoc Group (each of which is defined in such agreement), which is attached as Exhibit 9 to the First Day Affidavit.

17. "**Legal Procccdings**" shall mean all claims and legal actions, or governmental or regulatory investigations, pending, ongoing or threatened against ResCap as of the Petition Date (including without limitation all civil actions; arbitrations; mediations; governmental, regulatory, or criminal investigations; proceedings; or settlements), except for the Mortgage-Related Legal Proceedings.

18. "**May 14, 2012 Transcript**" shall mean the transcript of the proceedings of May 14, 2012, before the U.S. Bankruptcy Court for the Southern District of New York in the case captioned in the annexed subpoena.

19. "**Mortgage-Related Legal Procccdings**" shall mean all claims and legal actions, or governmental or regulatory investigations, pending, ongoing or threatened against ResCap as of the Petition Date (including without limitation all civil actions; arbitrations; mediations; governmental, regulatory, or criminal investigations; proceedings; or settlements) concerning any mortgage or mortgage-backed security, including without limitation all claims and legal actions concerning the robo-signing allegations relating to foreclosure documents and

4

the other matters referenced in paragraph 85 of the First Day Affidavit, and the Representation

and Warranty Claims, Monoline Insurer Representation and Warranty Litigations, and Securities

Litigations referenced in paragraphs 100 through 103 of the First Day Affidavit.

20.    "**Old GMAC Bank**" shall mean the federal savings bank n/k/a National

Motors Bank FSB and all of its direct and indirect subsidiaries, employees, representatives,

agents, advisors, and attorneys, and all other persons or entities acting or purporting to act on

their behalf or under their control, and each of their predecessors and successors.

21.    "**Petition Date**" shall mean May 14, 2012.

22.    "**Prepetition Related Party Agreements**" shall mean all verbal or written

agreements or contracts between ResCap on the one hand and any of AFI, Cerberus, or Ally

Bank on the other hand, including without limitation all agreements concerning transfers of cash,

assets, property, stock, contracts, or other items of value.

23.    "**Prepetition Related Party Transactions**" shall mean: (a) Related Party

payments, including without limitation dividends and capital contributions; (b) Related Party

loans; (c) Related Party debt, including without limitation the transfer, repayment, or forgiveness

of such debt; (d) Related Party claims, including without limitation all payments made on

account of such claims; (e) Related Party transfers of cash, assets, property, stock, contracts, or

other items of value; and (f) the Specified Transactions.

24.    "**Related Party**" shall mean between ResCap on the one hand and any of

AFI, Cerberus, and/or Ally Bank on the other hand.

25.    "**ResCap**" shall mean Residential Capital, LLC and all of its current and

former, direct and indirect subsidiaries, employees, representatives, agents, advisors, attorneys,

5

and all other persons or entities acting or purporting to act on their behalf or under their control, and each of their predecessors and successors.

26. **"RMBS Plan Support Agreement"** shall mean the agreement entered into as of May 13, 2012, by and between the Debtors, AFI, and the Consenting Claimants (defined in such agreement), which is attached as Exhibit 10-A to the First Day Affidavit.

27. **"RMBS Trust Settlement Agreement"** shall mean the agreement entered into as of May 13, 2012, by and between the Debtors and the Institutional Investors (defined in such agreement), which is attached as Exhibit 10-B to the First Day Affidavit.

28. **"Shareholder Materials"** shall mean: (a) all written or recorded (by any means including without limitation tape recording, video recording, or otherwise) consents, resolutions, minutes, transcriptions, or notes of any meetings, decisions, deliberations, discussions, or actions of the direct or indirect shareholders of ResCap, or of any members, committees, or subcommittees thereof, including without limitation all drafts of any such materials; and (b) all documents (including any drafts) provided to or considered by the direct or indirect shareholders of ResCap, or any members, committees, or subcommittees thereof, including without limitation (a) documents related to the assets, debts, dealings, operations, and/or businesses of ResCap; and (b) documents related to advice by counsel and/or financial advisors concerning the assets, debts, dealings, operations, and/or businesses of ResCap.

29. **"Specified Transactions"** shall mean: (a) ResCap's reported sale of its healthcare lending business to GMAC Commercial Finance, LLC, as described in ResCap Form 8-K, dated August 27, 2007; (b) ResCap's entry into a secured credit agreement with AFI (as lender and agent), to provide ResCap with a revolving credit facility in connection with its resort finance business, as described in ResCap Form 8-K, dated November 10, 2008 (p. 41); (c) the

6

reported sale of ResCap's resort finance business to GMAC Commercial Finance, LLC, as described in ResCap Form 10-Q, dated November 10, 2008 (p. 71); (d) ResCap's entry into a loan and security agreement (and amendments thereto) with AFI to fund mortgage servicing rights, as described in ResCap Form 10-Q, dated August 8, 2008 (p. 73); (e) ResCap's entry into a secured revolving and term loan credit agreement (and amendments thereto) with AFI for general working capital, as described in ResCap Form 8-K, dated June 3, 2008; (f) ResCap's issuance of secured notes in exchange for unsecured notes to AFI and other participating holders, as described in ResCap Form 8-K, dated June 6, 2008 (p. 1); (g) ResCap's reported sale of model home and lot option assets to a Cerberus affiliate, as described in ResCap Form 10-Q, dated August 8, 2008 (p. 20); (h) ResCap's factoring arrangements with AFI relating to servicing advances of delinquent mortgage loans, as described in ResCap Form 8-K, dated June 23, 2008; (i) ResCap's reported sale of mortgage loans, mortgage-backed securities and model home assets to Cerberus, as described in ResCap Form 8-K, dated September 30, 2008; (j) ResCap's sale of equity interests in certain Canadian subsidiaries to AFI, as described in ResCap Form 8-K, dated November 20, 2008; (k) ResCap's entry into a loan agreement with AFI (as lender) (and amendments thereto) for short-term secured loans to ResCap, as described in ResCap Form 8-K, dated November 20, 2008; (l) GMAC's exchange offer for ResCap notes, as described in ResCap Form 8-K, dated November 20, 2008; (m) AFI's extension of loans and lines of credit (including amendments thereto) to certain ResCap subsidiaries, as described in ResCap Form 8-K, dated June 12, 2009; (n) ResCap's posting of two litigation bonds and the holding of restricted cash in connection with the *Mitchell* case, as described in ResCap Form 10-K, dated February 27, 2009 (pp. 50 and Schedule 1.01-19) and ResCap Form 10-Q/A, dated August 25, 2009 (pp. 22-23); (o) ResCap's entry into agreements with Ally Investment Management involving foreign

7

exchange and interest rate hedging transactions, as described in ResCap Form 10-Q, dated March

31, 2009 (p. 45); (p) ResCap's reported sale of broker-dealers to AFI, as described in ResCap

Form 10-Q, dated March 31, 2009 (p. 62); (q) ResCap's entry into an amended and restated line

of credit facility (with amendments thereto) with AFI, as described in the ResCap Consolidated

Financial Statements for the Year Ended December 31, 2009, dated February 26, 2010 (p. 43);

(r) ResCap's entry into a management agreement with AFI, pursuant to which management fees

were payable, as described in ResCap Form 10-K, dated February 27, 2008 (p. 155);

(s) ResCap's entry into and performance under the "Consent Order", "DOJ/AG Settlement" and

"CMP", each as defined and described in paragraphs 86 through 90 of the First Day Affidavit;

and (t) ResCap's transfer and assignment of real property interests as described in paragraph 92

of the First Day Affidavit.

## **INSTRUCTIONS**

1.    These requests encompass all documents in the Debtors' possession,

custody, or control, whether or not such documents were prepared by or for the Debtors. Where

documents in the Debtors' possession, custody, or control are requested or inquired of, such

request or inquiry includes documents in the possession, custody, or control of each of the

Debtors' current and former direct and indirect affiliates, subsidiaries, predecessors, successors,

employees, directors, agents, accountants, attorneys, auditors, representatives, consultants,

advisors, all other persons or entities acting or purporting to act on behalf of the Debtors, and

any other persons or entities from which the Debtors could obtain documents.

2.    If the Debtors contend that no documents exist relating to all or part of a

request, the Debtors shall state this contention and respond as fully as possible to all parts of the

request for which documents exist.

8

3.      If the Debtors claim that any privilege or protection excuses production of any document or part thereof, the Debtors must, consistent with Local Civil Rule 26.2, expressly make such claim in writing and provide a general description of the categories of documents being withheld and the basis for doing so, sufficient in detail for the Committee to determine whether there is an adequate basis for invoking privilege or protection.

4.      In the event that any document covered hereunder has been destroyed, discarded, or lost, the Debtors shall inform the Committee of this in writing and provide a general description of the categories of documents destroyed or lost and the circumstances of their destruction or loss.

5.      If any document cannot be produced in full, it shall be produced to the maximum extent possible and the Debtors shall specify in writing the reasons for their inability to produce the remainder.

6.      Each document is to be produced with all non-identical copies and drafts thereof in their entirety without abbreviation or redaction (other than for a claim of privilege, consistent with Local Civil Rule 26.2 and the Instructions herein).

7.      All documents shall be produced in native electronic format together with standard-format load files (indicating any parent/child attachment relationships, Bates designation cross-reference table if applicable, and MD5HASH values), and shall be produced together with all original metadata and searchable text.

8.      Unless stated otherwise, the time period applicable to the documents called for is from January 1, 2004, through the date of the document requests (the "**Relevant Period**"), subject to the Debtors' ongoing obligations to supplement responses under the applicable rules.

9

## DOCUMENT REQUESTS

1.     All Board Minutes; Board Materials; and Shareholder Materials.

2.     All documents depicting organizational charts for each of the Debtors, including without limitation documents sufficient to show any changes in those respective organizational charts throughout the Relevant Period.

3.     All documents describing or reflecting the corporate relationships between ResCap, AFI, Cerberus, and/or Ally Bank, including without limitation documents describing or reflecting how those relationships have changed during the Relevant Period.

4.     Documents sufficient to show the extent to which members of management, directors, employees, and/or shareholders of ResCap, AFI, Cerberus, and/or Ally Bank overlap amongst these corporate entities, and all documents and communications reflecting or discussing such overlap.

5.     All documents and communications concerning the business purpose for forming each of the Debtors, respectively.

6.     Documents sufficient to identify any administrative services provided by AFI to ResCap, or ResCap to AFI; payments or transfers by ResCap to AFI, or by AFI to ResCap, for such administrative services; and the pricing for any administrative services provided to ResCap by any entity other than AFI.

7.     All documents and communications concerning the pricing for any administrative services provided by AFI to ResCap.

8.     Documents sufficient to identify any agreements between ResCap and AFI concerning the operation of any aspect of ResCap or AFI's businesses (including without limitation their mortgage-related businesses), and all copies of such agreements (including current, previous, and draft forms), including without limitation: (a) all agreements concerning

10

origination activities; sales activities; servicing activities; and/or activities relating to the processing or funding of prepetition mortgage loan commitments; and (b) the Amended and Restated Servicing Agreement dated as of May 11, 2012; the Amended and Restated Master Mortgage Loan Purchase and Sale Agreement dated May 1, 2012; the Pledge and Security Agreement dated as of April 25, 2012; and the Master Securities Forward Transaction Agreement dated as of April 30, 2012.

9.     All documents and communications concerning the GMAC Bank Transfer, including without limitation all valuations or appraisals of, or fairness opinions on, any aspects of the GMAC Bank Transfer, and all communications with AFI, Cerberus, Ally Bank, financial advisers, investment bankers, valuation experts or consultants, and/or government regulators or officials related to the GMAC Bank Transfer.

10.     All documents and communications concerning any secured lending transaction entered into by any Debtor and/or the collateral for any such transaction, including without limitation all valuations, appraisals, or fairness opinions, and all communications with AFI, Cerberus, and/or Ally Bank related to any such transaction.

11.     All documents and communications concerning the Prepetition Related Party Agreements and/or the Prepetition Related Party Transactions, including without limitation: (a) Debtors' accounting, journal entries, or support; (b) all valuations, appraisals, or fairness opinions (including without limitation related to mortgage servicing rights); (c) loan tapes; (d) any impairment testing (including without limitation underlying forecasts and assumptions and/or any rationale for changes in assumptions); and (e) all communications with AFI, Cerberus, Ally Bank, and/or government regulators or officials concerning the Prepetition Related Party Agreements and/or the Prepetition Related Party Transactions.

12.     All documents and communications concerning the AFI Settlement and Plan Sponsor Agreement, including without limitation all valuations, appraisals, and fairness opinions, and all communications with AFI, Cerberus, or Ally Bank related to the AFI Settlement and Plan Sponsor Agreement.

13.     All documents and communications concerning the Junior Secured Noteholders' Plan Support Agreement, including without limitation (a) all communications with AFI, Cerberus, Ally Bank, or the Junior Secured Noteholders concerning the Junior Secured Noteholders' Plan Support Agreement; and (b) all communications with the Junior Secured Noteholders concerning the allocation of the proceeds of any asset sales and of any settlements.

14.     All documents and communications concerning the RMBS Trust Settlement Agreement, including without limitation all valuations, appraisals, or fairness opinions concerning any aspect or term of the RMBS Trust Settlement Agreement, and all communications with AFI, Cerberus, Ally Bank, the Investors, Institutional Investors (as each is defined in the RMBS Trust Settlement Agreement) and/or trustees, and each of their attorneys or advisors (including without limitation Gibbs & Bruns, LLP; Ropes & Gray LLP; and Kelly Drye & Warren LLP), related to the RMBS Trust Settlement Agreement.

15.     All documents and communications concerning the RMBS Plan Support Agreement, including without limitation all valuations, appraisals, or fairness opinions concerning any aspect or term of the RMBS Plan Support Agreement, and all communications with AFI, Cerberus, Ally Bank, the Consenting Claimants (as each is defined in the RMBS Plan Support Agreement) and/or trustees, and each of their attorneys or advisors (including without limitation Gibbs & Bruns, LLP; Ropes & Gray LLP; and Kelly Drye & Warren LLP), related to the RMBS Plan Support Agreement.

16. All documents and communications concerning any contemplated AFI initial public offering, including without limitation any draft registration materials for such an initial public offering and any documents or communications relating to ResCap in connection with such an initial public offering.

17. All documents and communications concerning the Mortgage-Related Legal Proceedings, including without limitation any analysis or discussion of the merits of any such proceeding, all tolling agreements, and all communications with AFI, Cerberus, Ally Bank, and/or governmental authorities, related to the Mortgage-Related Legal Proceedings.

18. All communications of each respective member of the Debtors' boards of directors concerning: (a) the GMAC Bank Transfer; (b) the Prepetition Related Party Agreements or the Prepetition Related Party Transactions; (c) the AFI Settlement and Plan Sponsor Agreement; (d) the Junior Secured Noteholders' Plan Support Agreement; (e) the RMBS Trust Settlement Agreement and RMBS Plan Support Agreement; and/or (f) the Mortgage-Related Legal Proceedings.

19. All documents relating to any involvement by AFI or any AFI employees in the origination, purchase, or securitization of residential mortgages, including without limitation all documents relating to: (a) AFI's role in preparing or approving the offering materials used in any Mortgage-Related Legal Proceeding; or (b) AFI's role in setting, monitoring, or changing any credit, audit, quality control, due diligence, underwriting, or any other risk-related policies applicable to any of the mortgage loans in any Mortgage-Related Legal Proceeding.

20.     All documents relating to any communication with AFI regarding any of the Mortgage-Related Legal Proceedings, or any of the offerings or mortgage loans related to those proceedings.

21.     All documents exchanged by, and communications between, the Debtors and prospective purchasers of some or all of the Debtors' assets or AFI's equity interests in the Debtors.

22.     All documents relating to the decision to file for relief under the United States Bankruptcy Code, including without limitation any communications with any governmental or regulatory agencies or any shareholders of AFI.

23.     Documents sufficient to identify all Legal Proceedings and the claims asserted and damages sought therein, including without limitation: (a) copies of the operative complaints or statements of claim in each such proceeding, and any tolling agreements; and (b) documents sufficient to identify the parties, filing date, case or identifying number for each such proceeding, and the court or forum in which each such proceeding is pending.

24.     All documents and communications concerning any analysis or discussion of the merits of any Legal Proceeding.

25.     All documents and communications concerning any director or officer of the Debtors and their continued service on the board of directors or as a member of management of the Debtors, or any such director or officer's continuing benefits (including compensation) during the proceedings in the Chapter 11 case captioned in the annexed subpoena or thereafter.

26.     All documents setting forth the salary, benefits, deferred compensation, and any other compensation of each past and present director and officer of ResCap, including

without limitation any severance benefit to which they may be entitled upon their separation from ResCap.

       27.     All documents and communications concerning a ResCap director or officer's ownership interest in ResCap or its direct or indirect affiliates' stock and/or equity, including without limitation the sale or disposition of any such interest.

       28.     All documents and communications concerning any insurance policy covering or related to any liability of the current or former directors or officers of the Debtors.

       29.     All documents and communications concerning: (a) the appointment of Jonathan Ilany and John E. Mack to the board of directors of any of the Debtors; and (b) Jonathan Ilany or John E. Mack's relationships or involvement with the Debtors (including without limitation each of the Debtors' current or former directors or officers); AFI (including without limitation each of AFI's current or former directors or officers); Cerberus (including without limitation each of Cerberus's current or former directors or officers); IB Finance (including without limitation each of IB Finance's current or former directors or officers); and/or Ally Bank (including without limitation each of Ally Bank's current or former directors or officers), prior to such appointment.

       30.     All documents and communications concerning efforts by Jonathan Ilany, John E. Mack, or the AFI Claims Subcommittee to engage any attorneys or advisors, including without limitation any communications with any potential or engaged attorneys or advisors in connection with the Debtors, and any engagement letters or agreements with any such attorneys or advisors.

       31.     All documents and communications concerning the AFI Claims Subcommittee and/or its activities, including without limitation all: (a) communications with or

among AFI or its advisors or attorneys; (b) communications with or among members of the Debtors' management or boards of directors or their advisors or attorneys; (c) communications among the members of the AFI Claims Subcommittee; (d) communications with or among the AFI Claims Subcommittee's attorneys or advisors; (e) writings, reports, conclusions, presentations, or opinions (including all drafts) provided or communicated to, or created or obtained by, the AFI Claims Subcommittee; and (f) writings, reports, conclusions, presentations, or opinions (including all drafts) provided or communicated to any person or entity other than the AFI Claims Subcommittee.

32.   All documents and communications concerning the AFI Claims Subcommittee's negotiations, discussions, and analyses of the AFI Settlement and Plan Sponsor Agreement, including without limitation: (a) communications with or among AFI or its advisors or attorneys;  (b) communications with or among members of the Debtors' management or boards of directors or their advisors or attorneys; (c) communications among the members of the AFI Claims Subcommittee; (d) communications with or among the AFI Claims Subcommittee's attorneys or advisors; (e) writings, reports, conclusions, presentations, or opinions (including all drafts) provided or communicated to, or created or obtained by, the AFI Claims Subcommittee; and (f) writings, reports, conclusions, presentations, or opinions (including all drafts) provided or communicated to any person or entity other than the AFI Claims Subcommittee.

33.   All documents and communications concerning the work and activities of Morrison & Foerster LLP, with or without Morrison Cohen LLP, in connection with the activities of the AFI Claims Subcommittee, as referenced in the May 14, 2012 Transcript.

16

34. All documents and communications concerning the endorsement by the Debtor's board of directors of the AFI Claims Subcommittee's unanimous approval of the AFI Settlement and Plan Sponsor Agreement, as referenced in the May 14, 2012 Transcript.

35. All internal audit reports of the Debtors concerning: (a) valuations of the Debtors' assets; (b) pricing of the Debtors' assets; (c) overall financial condition of the Debtors; (d) the Debtors' relationship with AFI, Cerberus and/or Ally Bank; and/or (e) the GMAC Bank Transfer.

36. All documents and communications concerning: (a) ResCap's ability to operate and continue as a going concern; (b) ResCap's solvency, liquidity, or cash flow limitations, including without limitation any solvency analyses; (c) ResCap's ability to take on debt, or to repay any loan from any lender; (d) the possibility of ResCap filing for bankruptcy protection; (e) the sale or potential sale of ResCap assets; (f) the failure or inability of ResCap to sell assets; and/or (g) the sufficiency of ResCap's capital.

37. Documents sufficient to demonstrate the financial condition of each of the Debtors for each month, quarter, and year between the period January 1, 2004 through the Petition Date, including without limitation: (a) financial statements, including without limitation consolidated and consolidating (i) balance sheets, (ii) statements of income, (iii), statements of cash flow, (iv) statements of changes in equity, and (v) supporting notes to financial statements; (b) general ledgers, including without limitation (i) transaction level electronic data, and journal entries and journal entry support documentation; (c) internal accounting policy manuals, including without limitation charts of accounts; and (d) off-balance sheet debt, including without limitation contingent liabilities, guaranties, leases, and receivable securitizations.

17

38.     All documents and communications concerning any business plans, projections, cash and other forecasts, strategic plans, and operating plans, including without limitation underlying assumptions and/or any rationale for changes in assumptions, for the Debtors between the period January 1, 2004 through the Petition Date.

39.     All documents and communications concerning the Debtors' liquidity and capital, including but not limited to revolver availability, undrawn credit facilities, ability to refinance, maturing debt, unencumbered and/or non-core assets, the ability to monetize unencumbered and/or non-core assets, and the ability to raise equity or debt capital, between the period January 1, 2004 through the Petition Date.

40.     All documents and communications provided to lenders and credit rating agencies concerning the financial condition of the Debtors, including without limitation service quality ratings.