1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


          Debtors.


- - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          May 31, 2012

          3:04 PM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2　　Debtors' Motion for Order Under Bankruptcy Code Sections 105(a)

3　　and 366(1) Prohibiting Utility Customers from Altering,

4　　Refusing, or Discontinuing Service on Account of Prepetition

5　　Invoices, (II) Approving Deposits as Adequate Assurance of

6　　Payment, and (III) Establishing Procedures for Resolving

7　　Requests by Utility Companies for Additional Assurance of

8　　Payment filed by Lorenzo Marinuzzi on behalf of Residential

9　　Capital, LLC.

10

11

12

13

14

15

16

17

18

19

20　　Transcribed by:   Sharona Shapiro

21　　eScribers, LLC

22　　700 West 192nd Street

23　　Suite #607

24　　New York, NY 10040

25　　operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4      Proposed Counsel for Debtors and Debtors-in-Possession

5      1290 Avenue of the Americas

6      New York, NY 10104

7

8  BY:   LARREN M. NASHELSKY, ESQ.

9      LORENZO MARINUZZI, ESQ.

10     TODD M. GOREN, ESQ.

11

12

13  CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

14     Proposed Conflicts Counsel to Debtors

15     101 Park Avenue

16     New York, NY 10178

17

18  BY:   MARYANN GALLAGHER, ESQ.

19

20

21

22

23

24

25

4

1

2  KIRKLAND & ELLIS LLP

3          Attorneys for Ally Financial Inc. and Ally Bank

4          601 Lexington Avenue

5          New York, NY 10022

6

7  BY:    STEPHEN E. HESSLER, ESQ.

8          RAY C. SCHROCK, ESQ.

9

10

11

12  KRAMER LEVIN NAFTALIS & FRANKEL LLP

13          Proposed Counsel for Official Committee of

14            Unsecured Creditors

15          1177 Avenue of the Americas

16          New York, NY 10036

17

18  BY:    KENNETH H. ECKSTEIN, ESQ.

19          DOUGLAS MANNAL, ESQ.

20          STEVEN S. SPARLING, ESQ.

21          RACHAEL L. RINGER, ESQ.

22

23

24

25

5

1

2    LOWENSTEIN SANDLER PC

3        Attorneys for New Jersey Carpenters Health Fund

4        1251 Avenue of the Americas

5        New York, NY 10020

6

7    BY:   MICHAEL S. ETKIN, ESQ.

8

9

10   MCKOOL SMITH

11       Attorneys for Freddie Mac

12       600 Travis Street

13       Suite 7000

14       Houston, TX 77002

15

16   BY:   PAUL D. MOAK, ESQ.   (TELEPHONICALLY)

17

18

19   SHEARMAN & STERLING LLP

20       Attorneys for Citibank, N.A.

21       599 Lexington Avenue

22       New York, NY 10022

23

24   BY:   FREDRIC SOSNICK, ESQ.

25

6

1

2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

3          Attorneys for Barclays Bank PLC as Administrative Agent

4           for the DIP Facility

5          Four Times Square

6          New York, NY 10036

7

8  BY:   KENNETH S. ZIMAN, ESQ.

9

10

11  SIDLEY AUSTIN

12          Attorneys for Nationstar Mortgage

13          1 South Dearborn Street

14          Chicago, IL 60603

15

16  BY:   JESSICA BOELTER, ESQ. (TELEPHONICALLY)

17          LARRY NYHAN, ESQ. (TELEPHONICALLY)

18

19

20  UNITED STATES DEPARTMENT OF JUSTICE

21          U.S. Attorney's Office

22          86 Chambers Street, 3rd Floor

23          New York, NY 10007

24

25  BY:   JOSEPH N. CORDARO, AUSA

**RESIDENTIAL CAPITAL, LLC, et al.**                7
P R O C E E D I N G S

1

2          THE COURT:  Please be seated.  All right.  We're here

3  on Residential Capital, LLC, number 12-12020.

4          Mr. Marinuzzi?

5          MR. MARINUZZI:  Good afternoon, Your Honor.  Lorenzo

6  Marinuzzi from Morrison & Foerster, proposed counsel for the

7  debtors-in-possession.

8          Your Honor, we're here on an uncontested utility

9  adequate assurance motion as well as a status conference.  And

10  we had initially contemplated having my partner Mr. Larren

11  Nashelsky, sitting to my right, address the Court and provide

12  an overview of the cases.  Whatever Your Honor would like, we

13  can do that as part of the status conference, or if Your Honor

14  would rather skip that we can skip it altogether.  Asking for

15  direction from Your Honor as to how you'd like to proceed.

16          THE COURT:  Let's deal with the utility motion first.

17  I should say I listened to -- I got CDs, two CDs, so I listened

18  to the entire first-day motions and presentations over the

19  course of two days.  The audio wasn't great at all times, but I

20  did listen to the whole thing, so --

21          MR. MARINUZZI:  Okay.

22          THE COURT:  -- I got some of the background.  I

23  obviously read the first-day affidavit and reviewed most --

24  didn't review every one of the first-day motions, but I did

25  review them and I know we've got final hearings coming up.  I

**RESIDENTIAL CAPITAL, LLC, et al.**                    8

1   think let's deal with the utility motion and then we'll deal

2   with status and proceedings going forward, okay?

3          MR. MARINUZZI:  That's fine.  Thank you, Your Honor.

4          So as Your Honor noted, we're here today on the

5   debtors' motion for an order prohibiting utility companies from

6   altering, refusing or discontinuing service; approving deposits

7   as adequate assurance of payment; and establishing procedures

8   for the resolution of additional assurance of payment requests

9   from utility providers.

10          The motion was filed on the petition date, and

11   fortunately, the debtors have less than thirty utility

12   providers, and the average monthly cost for the debtors is

13   roughly 1.2 million dollars.  Compared to a retail Chapter 11

14   case, Your Honor, utilities are not a great factor in this

15   case.

16          What we're proposing to do under the motion is to fund

17   an account, a segregated depository bank account, with the sum

18   of 570,000 dollars, which represents half of the monthly

19   average utility cost to the company.  The account's already

20   been established and it's my understanding that the company is

21   prepared to fund it tomorrow.

22          Going forward, should the debtors fail to pay a

23   utility invoice, we would ask that the utility provider present

24   the debtors with a delinquency notice, and if the payment is

25   not made within ten days, the order would direct the debtors to

RESIDENTIAL CAPITAL, LLC, et al.                                    9

1   remit from that depository account to the utility provider the

2   lesser of the amount that's owed or their share of the adequate

3   assurance deposit.

4          THE COURT:  Let me ask how you're dealing with that.

5   It's the only issue I have a question about, because you're

6   establishing a single account.

7          MR. MARINUZZI:  Correct.

8          THE COURT:  And it's not -- does it include a

9   sub-account system?  How are you going to deal with the

10  accounting for the amount of the money allocable to separate

11  utilities?

12         MR. MARINUZZI:  Well, Your Honor, in coming to the

13  number, FTI worked with the company to actually pull the data

14  for each vendor as to what the payments were, and so the amount

15  that's been calculated reflects the aggregate of fifty percent

16  of the monthly for each one.  And assuming the debtors do not

17  pay an invoice, which is the assumption that we have to go with

18  for this example, we would remit the amount that hasn't been

19  paid or the amount that's been allocated.

20         So let's assume that the amount that's been allocated

21  has to be withdrawn from that account to pay them; if I am a

22  utility provider continuing to provide utility services to the

23  debtors, at that point the amount that's been set aside for my

24  account has been exhausted, I would imagine the utility

25  provider would make a request for additional adequate assurance

**RESIDENTIAL CAPITAL, LLC, et al.**                    10

1   at that point, in which case we'd have to fund the account to

2   the tune of fifty percent of the monthly average cost or come

3   back to the Court for some other reasonable request.

4           THE COURT:  Let me ask you, is there anything in the

5   order that assures that you won't pay out to any single utility

6   more than its allocable share of the deposit?

7           I must tell you, in some other cases I've required

8   either a sub-account system or some assurance that no utility,

9   if it has to draw on the account -- and it seems unlikely, I

10  understand that --

11          MR. MARINUZZI:  Your --

12          THE COURT:  -- but no utility will receive more than

13  its allocable share from the account.

14          MR. MARINUZZI:  Your Honor, I believe the order

15  provides what's consistent with the motion, that if there is a

16  deficiency notice and we haven't paid the amount from our

17  general operating funds that we owe for post-petition services,

18  that what we would pay would be the lesser of what's owed or

19  what's been allocated in the account.  So based on that, we

20  wouldn't accept --

21          THE COURT:  Where is that in the order?

22          MR. MARINUZZI:  I'm looking for it, Your Honor.  I

23  know it's in the procedures, and if it isn't we'll certainly

24  put it in there.  But what's proposed is that we pay the lesser

25  of the two amounts.

**RESIDENTIAL CAPITAL, LLC, et al.**                                    11

1          MR. NASHELSKY:  Paragraph 4?

2          THE COURT:  I'm sorry, what?

3          MR. MARINUZZI:  Correct, thank you.  It's paragraph 4

4    of the order, Your Honor, and I have a marked order here which

5    hopefully the Court has as well.  And it's the last sentence.

6          THE COURT:  Okay, I see that.  I'm satisfied.

7          MR. MARINUZZI:  Okay, thank you.  Your Honor, there

8    was one informal objection, which was really a request for

9    additional adequate assurance received by the debtors from Xcel

10   Energy.  We've resolved that.  We've actually provided,

11   directly to them, a cash deposit --

12         THE COURT:  Okay.

13         MR. MARINUZZI:  -- which actually exceeded the amount

14   that we had allocated to them.  We agreed to give them a full

15   month.  So we're going to have to adjust the amount of the

16   deposit to reflect that.  So instead of 590, roughly, thousand

17   dollars, it will be 570 thousand that goes into the segregated

18   account.

19         THE COURT:  Okay.  Anybody else wish to be heard with

20   respect to the utility motion?

21         Mr. Eckstein?

22         MR. ECKSTEIN:  Your Honor, good afternoon.  I thought

23   I'd use the occasion to at least introduce myself in this case.

24   I think as Your Honor knows, my firm, Kramer Levin, has been

25   retained as proposed counsel for the official creditors'

1   committee.

2          The committee had some minor comments to the motion.

3   The committee's been added to have consultation rights with

4   respect to any modifications to adequate protection and

5   adequate assurance as well as notice of any amendments.  And

6   with that, Your Honor, we're satisfied with the relief being

7   requested.

8          THE COURT:  Thank you very much.

9          Anybody else wish to be heard with respect to the

10  utility motion?

11         All right.  The motion is granted.

12         MR. MARINUZZI:  Thank you, Your Honor.

13         THE COURT:  Thank you very much, Mr. Marinuzzi.

14         MR. MARINUZZI:  Your Honor, I know we're now turning

15  to the status conference, but I think it might be helpful for

16  the Court to know the things that have been done since the

17  first-day hearing.

18         Since the filing and the conclusion of the first-day

19  hearing the committee was formed, and the committee was formed

20  on May 16th, which was the day after the conclusion of our

21  first-day hearing, a very rapid formation.  The committee

22  retained excellent advisors in the form of Kramer Levin,

23  Moelis, and AlixPartners.  We have been working with the

24  committee's advisors since the committee was formed and

25  retained their advisors.  We've had several calls with Kramer

**RESIDENTIAL CAPITAL, LLC, et al.**                                  13

1    Levin, since they were retained by the committee, Moelis and

2    Centerview -- Centerview being the debtors' financial advisor,

3    investment banker -- have been having communications regarding

4    the sale process and other important issues.

5            We held an all-advisor meeting in our offices earlier

6    this week on the 29th.  The committee professionals have been

7    given access to the company's data site and they've started to

8    review that data.  We've begun producing to the committee

9    documents that they have formally requested from the debtors,

10   and that process continues and we're currently trying to

11   schedule depositions that the committee has requested for

12   sometime next week.  We also have a meeting with the full

13   committee scheduled for the 6th of June next week.

14           So we are progressing.  We're working very closely

15   with the committee's advisors.  We know it's a rapid case and

16   we're trying to provide them with as much information as we can

17   as quickly as we can get it to them.

18           We continue to have regular calls with counsel for

19   Freddie Mac, Fannie Mae, and Ginnie Mae, including with the

20   Department of Justice.  Obviously they are very important

21   participants in this bankruptcy process, and the servicing

22   rights that they allow us to perform for them are important and

23   are an integral part of the sale.

24           We and the company's in-house counsel have had dozens

25   of telephone calls from trustees of bankrupt individuals,

1   Chapter 13 individuals as well, asking for direction and

2   guidance as to how they can interact with ResCap as we service

3   a second mortgage.

4           THE COURT:  We've gotten some of those calls too.

5           MR. MARINUZZI:  Okay.  And we continue to work with

6   in-house counsel and --

7           THE COURT:  We keep referring them to your firm.

8           MR. MARINUZZI:  Thank you very much.  We're getting

9   lots of calls.

10          Now, we're in the process of -- and I believe we

11  actually finalized the supplemental servicing motion that was

12  filed while we were on our way down to court.  And the purpose

13  of that is to help clarify, for the public and for the company,

14  those things that they can do with comfort that the automatic

15  stay is not applicable.

16          What we tried to do with the first-day motions, and

17  I'm sure we'll be talking more about them, is to try to allow

18  the company to continue operating with business as usual and

19  let the company do what it does and let third parties assert

20  their counterclaims and just try to normalize the business as

21  much as we can.  And after the fact, when people start asking

22  the difficult questions and the ones that may not have been

23  contemplated by the company, and frankly, us at the time we

24  filed the papers, we realize people need clarification.  So

25  that's what we're trying to do.

RESIDENTIAL CAPITAL, LLC, et al.                                    15

1       THE COURT:  The specific question I know we've

2  received, I think it was in Chapter 13 cases, it was on lien

3  stripping motions on completely unsecured second or junior

4  mortgages, as to whether the automatic stay precluded the

5  borrower in a Chapter 13 case from making a lien stripping

6  motion.  What is the answer to that?

7       MR. MARINUZZI:  The answer is, whether it applies or

8  not, the company's intention is to allow the stay to be lifted

9  to allow those proceedings to continue --

10       THE COURT:  All right.

11       MR. MARINUZZI:  -- as they were.

12       Your Honor, we've had numerous calls with trustees of

13  securitization trusts regarding the bankruptcy case, and in

14  particular, the proposed settlements that the debtors entered

15  into prior to the bankruptcy filing.  These calls are group

16  calls with a number of trustees as well as one-off telephone

17  calls with trustee counsel that communicates rarely with us.

18       I think that pretty much covers the material aspects

19  of the case since the first-day hearing concluded.

20       THE COURT:  Okay.

21       MR. MARINUZZI:  Now, Your Honor, I suspect Your Honor

22  has lots of questions regarding some of the motions that were

23  filed, and for this reason my partners are here with me,

24  because I can't possibly answer all of them.

25       THE COURT:  Okay.  Let's talk a little bit about --

RESIDENTIAL CAPITAL, LLC, et al.                                    16

1   you have hearing dates of June 12th and June 18th, and over the

2   last several days I know that you or others in your office or

3   creditors' committee counsel have spoken with my law clerks

4   about moving some of the motions that were scheduled for the

5   12th, moving those to the 18th, perhaps vice versa, about other

6   matters that have arisen that you're trying to get scheduled

7   for the 12th.  So I'd like to hear a little bit about what's

8   happening in that.

9           Let me just make one other comment.  The case

10  management order was approved in the case, and one feature of

11  that -- and this has already arisen with chambers -- that case

12  management order includes a time line for filing of motions,

13  objections, replies, and hearing.  I am very protective of the

14  amount of time I have and my law clerks have to review motion

15  papers.
            And so in other cases I've made clear that -- well,

16  first off, and I know we did it with the case management order

17  here.  Sometimes parties have tried to present orders that

18  allow the debtors' counsel unilaterally to grant extensions of

19  time, and I don't do that.  Only the Court can extend the time

20  of parties to file responsive pleadings.

21          And Mr. Eckstein was here yesterday in another matter,

22  and I actually made the comments then.  So I'll repeat them now

23  because they clearly apply here.  From time to time, where

24  there are pending motions in large cases, my chambers will get

25  a call about we're close to settlement, we think we need a

**RESIDENTIAL CAPITAL, LLC, et al.**                                    17

1  little bit more time to resolve the matter, we can't be sure we

2  will but we think it can be resolved, is the Court willing to

3  extend the response date.  And until I get burned once, I'm

4  usually willing, where the representation has been made that we

5  think we're close to resolve it, no assurance, that I will

6  grant a day or two additional time.  The request has to be

7  made; it can't be unilaterally agreed.  It's certainly

8  appropriate to call one of my law clerks to get that clearance;

9  they'll always ask me about it.

10        But what I won't do is, really on a contested matter,

11  extend that time.  I want the week to be able to review an

12  objection to the motion.  And the reply is due two business

13  days before, less time, but I don't want to get squeezed at the

14  end.  If there are motions where the parties believe everybody

15  would benefit from more time, then the appropriate thing to do,

16  unless it's impossible to put it off, is to reschedule a motion

17  for a later omnibus hearing date.  There are certain motions

18  that I'll specially set so they're not heard on an omnibus date

19  because they'll take more time.

20        And the last comment I would make are on anything that

21  requires -- any contested matter that requires an evidentiary

22  hearing.  Under our Local Rules, virtually in all matters, the

23  first hearing on a contested matter is not an evidentiary

24  hearing unless the Court orders it.  I don't permit the parties

25  to simply, through their pleadings, indicate that it will be an

RESIDENTIAL CAPITAL, LLC, et al.                                18

1  evidentiary hearing.  It is very rare that I'll hear evidence

2  at an omnibus hearing day because usually there are quite a few

3  motions that have to be heard.  There are circumstances where

4  I've approved that we'll have an evidentiary hearing, if

5  necessary.

6           So the parties need to be sensitive to -- if something

7  is going to be contested, if an evidentiary hearing is

8  required, that you keep my chambers advised of that and what

9  the time schedule for it is.  Typically, on any matter

10  requiring an evidentiary hearing, I require that the direct

11  testimony be submitted in writing, declarations or affidavits,

12  that all exhibits be provided with them, that the declarants be

13  available for cross-examination in court.  If there is anything

14  complicated about it, I will typically enter a scheduling order

15  with respect to the matter that'll have deadlines for briefs

16  and submissions.  And because we don't have a reporter who can

17  mark exhibits, all exhibits need to be pre-marked.  Each has to

18  have a unique identifier.  The moving party uses numbers.  The

19  responding party uses letters.

20           I do want to inquire as to whether any of the matters

21  on the 12th or the 18th you anticipate now that an evidentiary

22  hearing will be required?  How much time do you or other

23  parties believe are going to be required for it?  Can we hear

24  them on those days?  Do they have to be heard on those days?

25           Let me stop there.  Go ahead, Mr. Marinuzzi.

1          MR. MARINUZZI:  Thank you, Your Honor.  And we take

2     Your Honor's comments to heart.  Thank you.

3          Just to explain the genesis of the request to move

4     various matters from the 12th to a later date, when the

5     committee was formed, they had asked us if we could try to kick

6     the dates out and we negotiated with some of the major players

7     in the case, including the lenders and the proposed purchaser,

8     and we were able to build a consensus to move the hearings out.

9     And unfortunately or fortunately, however it turns out, Your

10    Honor's calendar is only so flexible, and so we're back to

11    looking at the 12th and the 18th.  We know we have --

12          THE COURT:  June is an extremely crowded month on my

13    calendar.  My law clerks are shaking their head yes.  We've got

14    a very full plate in June.

15          MR. MARINUZZI:  And we'll do our best to minimize the

16    burden on the Court, of course.

17          And so we knew the sale procedures hearing was going

18    to have to go forward on the 18th, that was the date, even

19    though we filed it basically on the petition date -- I think on

20    the petition date --

21          THE COURT:  Right.

22          MR. MARINUZZI:  -- we wanted a lot of time to go

23    forward before we actually had a hearing on it.  And so in

24    trying to reschedule the matters for the 12th onto the 18th, it

25    became apparent to all of us that there was a lot on for the

1  18th.  And so we tried to move as many things to the 12th

2  calendar as we could.

3        And so in communicating with the committee, where we

4  anticipate objections would come from, to the extent they're

5  filed, we asked the committee to help, as best as they could at

6  this point in the case, advise us where they thought the

7  greatest amount of controversy might exist so that we can push

8  those to the 18th.  And those that we thought were easily

9  resolvable or should be consensual, or if there is a need for

10  evidence it should be fairly limited, put those on for the

11  12th.

12        So after a conversation we had with chambers

13  yesterday, Your Honor, we circulated a proposed -- an e-mail to

14  counsel for the committee which subsequently made its way to

15  chambers.  And so the schedule, with the Court's indulgence,

16  for the 12th would be to have a hearing on the final order or a

17  final hearing on the first-day motion to establish cash

18  management procedures, to approve the shared services agreement

19  between the debtors and Ally Bank to approve the payment of

20  pre-petition wages, to approve the payment of pre-petition

21  taxes and regulatory fees, to approve the debtors' performance

22  of servicing functions for what I'll call the governmental

23  agency agreements -- that would be for Fannie, Freddie and

24  Ginnie, to approve the servicing -- actually no, I'm sorry,

25  it's the supplemental servicing motion, which we just filed and

RESIDENTIAL CAPITAL, LLC, et al.                                    21

1    we've asked for an order shortening time.

2              THE COURT:  I think we've already -- did we -- we

3    didn't enter it yet.

4              MR. MARINUZZI:  And I think that's correct for the

5    12th, right?

6              MR. NASHELSKY:  I think that's right.

7              MR. MARINUZZI:  Okay.  And for the 18th, we are

8    obviously having the sale procedures hearing, the cash

9    collateral motion with Citibank, the Barclays DIP agreement,

10   the Ally DIP cash collateral agreements, the origination

11   motion, the nongovernmental servicing motion, which is the Ally

12   servicing motion, oh, sorry, the Ally sub-servicing motion, and

13   then the motion -- there's an adversary proceeding also, Your

14   Honor, that's tentatively scheduled to be heard on the 18th.

15             THE COURT:  I saw the complaint and started to skim

16   the moving brief.

17             MR. MARINUZZI:  And so the question is whether we get

18   the summons in time to serve it, and there's the requisite

19   notice for the parties, but we'd like to have it heard on the

20   18th if there's time.

21             So that's the schedule.  I'm looking at committee

22   counsel to confirm that I've gotten everything correct.

23             THE COURT:  And which, if any, of those motions do you

24   anticipate that an evidentiary hearing is going to be required?

25             MR. MARINUZZI:  Your Honor, obviously the Court will

**RESIDENTIAL CAPITAL, LLC, et al.**                                                22

1   want evidence on some of these motions, irrespective of whether

2   there has been an objection filed.  And so --

3          THE COURT:  Well, I -- let me -- I just want to

4   interrupt you there, Mr. Marinuzzi.  I think you know from

5   other cases that on any motion that seeks relief that relies on

6   any facts whatsoever, it needs to be supported by a

7   declaration, whether contested or not.  I don't want proffers,

8   in court, of facts; I want facts through declaration in any

9   motion.  A contested motion is one, then, when there is an

10  objection filed.  But any motion that requires -- you know, if

11  there's an exercise of business judgment by the debtor, there

12  needs to be a declaration that sets forth why that's an

13  appropriate exercise of business judgment by the debtor.  I

14  don't rely on purported facts that are contained in briefs;

15  they don't have any evidentiary weight.  So it's important for

16  everybody, in any motions you file, they be properly supported.

17  I didn't mean to interrupt you, but I --

18         MR. MARINUZZI:  No, that's fine, Your Honor.  That's

19  fine.

20         THE COURT:  That was a lead-in to that point.

21         MR. MARINUZZI:  I just wanted to make the point that

22  obviously we're going to have to submit evidence, as we know,

23  to support the relief we're requesting.

24         I wish I had a better answer for Your Honor about what

25  might be contested and what might not be contested, and

1  hopefully between now and the hearing on the 12th, or the

2  objection deadline relevant to the 12th and the 18th, we'll be

3  able to resolve the concerns that the committee, I'm sure, has

4  at this very moment.  But that remains to be seen.

5          So maybe I can defer to committee counsel to provide

6  the Court with some overview of where they think they're going

7  to have issues and where they think they might not have as many

8  issues.

9          Your Honor, just so I'm clear, I think I may have

10  skipped over the nongovernmental servicing motion, which is

11  docket number 46.  That's currently scheduled to be heard on

12  the 12th as well.  And that's in the e-mail that was sent to

13  chambers earlier today.

14          THE COURT:  Okay.  Mr. Eckstein?

15          MR. ECKSTEIN:  Thank you, Your Honor.  If you would

16  permit me, it might be useful to make a couple of general

17  observations about how the committee sees the case.  I'm not

18  going to go into too much detail; it's not appropriate, I

19  think, at this stage.  But I would like to, if I may --

20          THE COURT:  Please, go ahead.

21          MR. ECKSTEIN:  We view a committee's role in cases to

22  be very important generally.  Our sense is that the committee's

23  role and responsibilities in this case are going to be

24  particularly important.  And in the short period of time we've

25  been involved, we've been able to assess the significant

1  responsibilities that we have, both in the near term and the

2  long term.

3        I believe many of the parties who are in court today

4  have actually been involved with this restructuring and

5  reorganization process for a long while, long before the case

6  commenced.  And so in some respects we're new to this situation

7  and are tackling a lot of things that have been given a great

8  deal of thought and attention and consideration leading up to

9  the filing.

10        And as a general matter, as we look at the case,

11  putting the dates to one side, there are some very important

12  things that are going to have to get tackled in the near term.

13  Obviously, the DIP and the sale procedures are going to define

14  the timing and the path for many business aspects of the case,

15  and we'll deal with those in the schedule that is provided.

16        I apologize to the extent we imposed upon your

17  chambers for the additional time.  We actually had -- the goal

18  was to try to create as long a period of time as possible

19  before objections were due to try to work with many parties

20  because this is not just dealing with one party.  And we had

21  actually hoped that the more time we had the better chance we

22  had.

23        THE COURT:  Well, let me interrupt you there just for

24  this.  In some other large cases, in the case management order,

25  I actually required a longer period from filing of motions to

RESIDENTIAL CAPITAL, LLC, et al.                               25

1   the hearing date for this very reason.  And it may be that you

2   and your colleagues should confer with debtors' counsel to see

3   whether any changes should be made in the case management order

4   to require twenty-one or twenty-five days' notice of motions.

5   It'll all work off of what the hearing date is, ultimately,

6   that would -- I mean, I certainly agree that it's best for all

7   of the parties-in-interest if they can resolve motions before

8   objections have to be filed, and that was the reason for my

9   comment about when we'll get calls and they'll say we're close

10  to a resolution.  Whether the schedule builds in enough time to

11  do that, I'm not going to impose -- I won't unilaterally change

12  it, but you ought to confer with the debtors' counsel as to

13  whether it's in all of your interests to alter that notice

14  period on motions, other than on emergency motions.

15          MR. ECKSTEIN:  We'll certainly consult with the

16  debtor, and I can anticipate the pressure the debtor feels as

17  well about sometimes needing to get things on without waiting

18  too long, but we'll consult and see whether or not we can come

19  up with a schedule that will be workable for all parties.

20          Turning to the near term issues.  We had the same

21  understanding of what is now on for the 12th.  In terms of

22  logistics, the next committee meeting is now scheduled for

23  Wednesday the 6th, and as was indicated, it's actually a

24  meeting where the committee is going to be meeting, for the

25  first time, with the representatives of the debtor including, I

1  believe, management.  And the committee was expecting to take

2  final positions on the motions that are now on for the 12th.

3  At present our response date is the 5th.  And I don't know

4  whether the Court is or is not willing to make any modification

5  to that date, but I did want to point out that we do have a

6  meeting on the 6th.  And to the extent it was possible to make

7  an exception with respect to the hearings on the 12th, we would

8  at least have the benefit of a committee meeting and a meeting

9  with the debtor prior to submitting a response, if we could

10 have until at least the end of the day on the 6th.

11         THE COURT:  Mr. Marinuzzi, what's your view of that?

12         MR. MARINUZZI:  Your Honor, I think for that to work,

13 because that obviously compresses our time frame to respond, we

14 have to continue our dialogue and really have an open and

15 honest dialogue about what the issues are.  So to the extent

16 that there is --

17         THE COURT:  I guess the only issue for the moment is

18 are you willing to extend the committee's time until sometime

19 at the end of the day on the 6th to submit responses to your

20 motions?

21         MR. MARINUZZI:  That's fine, Your Honor.  That's fine.

22         THE COURT:  Okay.  Thank you very much.

23         MR. MARINUZZI:  You're welcome.

24         MR. ECKSTEIN:  That would be helpful.  I appreciate

25 that, Your Honor.

1        THE COURT:  6 p.m.

2        MR. ECKSTEIN:  6 p.m. on the --

3        THE COURT:  On the 6th.

4        MR. ECKSTEIN:  We'll have to end our meeting --

5        THE COURT:  Well --

6        MR. ECKSTEIN:  -- promptly.

7        THE COURT:  -- but you can't wait until then to draft

8    your responses.  The issue is whether you're going to actually

9    have to file them or not.  I can't extend it longer.  I need to

10   be able to prepare.

11       MR. ECKSTEIN:  Your Honor, and that's why I did not

12   roll to the next day, because I understand that.  And we're

13   going to meet with the debtors' advisors again before the 6th.

14   And so I think that we will obviously --

15       THE COURT:  I can't imagine, at this point, on those

16   motions, that it's going to be any surprise, Mr. Marinuzzi,

17   where the hot-button issues are.  But --

18       MR. ECKSTEIN:  My --

19       THE COURT:  -- you don't have to respond to that

20   today.

21       MR. ECKSTEIN:  -- my hope is to minimize -- but the

22   goal -- I think the goal of the 12th was not to have the 12th

23   have too much in dispute.  That was the goal.  And so that's

24   what we'd like to get to.  And so I can't, at this point,

25   provide any assurances on those motions.  There are certain

**RESIDENTIAL CAPITAL, LLC, et al.**                                28

1  items that are important within the context of the case.  And

2  so I think if we have that schedule, we'll work with that, and

3  that will be fine.  And to the extent there are any motions

4  that are going to be contested, the debtor will know that,

5  certainly, by no later than Wednesday afternoon.

6          With respect to the 18th, those are very important

7  motions.  There are three separate DIP and cash collateral

8  motions, there are two sale procedure motions involving

9  extremely complex transactions.  As Your Honor has heard, given

10  the timetable, the committee has provided the debtor with

11  focused discovery requests with respect to these motions, and

12  we have tentatively indicated that we would need some

13  depositions in anticipation of those.  And we're going to go

14  ahead, probably, and do that discovery so that we can be

15  prepared to deal with those motions.

16          Again, we are planning to meet with the debtor and

17  other parties next week.  And it is premature, I think, to

18  predict where that is going to evolve.  But there are very,

19  very significant issues affecting this case that are implicated

20  by those motions.  And I don't think we'll be able to judge --

21          THE COURT:  What are those issues?

22          MR. ECKSTEIN:  The issues basically involve whether or

23  not it's appropriate for substantially -- or the significant --

24  the bulk of the assets of this company to be sold now; whether

25  or not the timing for the sale of these assets are appropriate.

1   Both of the major asset sales involving approximately four

2   billion dollars of assets are being sold simultaneously in

3   ninety days.  Those are fast transactions.

4          We have a DIP that right now is essentially -- while

5   it's an eighteen-month DIP, it really, in fact, is more like an

6   eleven-month DIP.  But the reality is that the DIP requires a

7   full payment of the DIP -- payment in full upon any asset

8   transaction.  So essentially, the DIP also relates to the

9   timing of the transactions.  And I think we need to work with

10  the debtor, we need to work with the DIP lenders, and the

11  potential -- the proposed purchaser for the Nationstar assets,

12  to see whether or not we can come up with a process that will

13  work for unsecured creditors.

14         There are other parties in the case that are agreeable

15  to the process, but they're in different places in the capital

16  structure.  Obviously, if a party's getting paid in full from a

17  transaction, they have one reaction; if a party's not projected

18  to get a recovery from a transaction, they have a different

19  reaction.  And right now, I don't believe the unsecured

20  creditors are necessarily looking to a recovery from these

21  assets.  And so we obviously are very interested to make sure

22  that these transactions maximize the value of the assets.  And

23  we need to also understand the implication that these

24  transactions have on the other aspects of the case.

25         As Your Honor may appreciate, one of the transactions

RESIDENTIAL CAPITAL, LLC, et al.                                    30

1    involves the sale of very substantial assets to Ally, the

2    parent.  And --

3              THE COURT:  The loan portfolio?

4              MR. ECKSTEIN:  The loan portfolio.  And that's a

5    significant transaction.  And the purchase price differs based

6    upon whether or not it is a transaction that gets ultimately

7    implemented through a plan or a standalone 363 and whether it's

8    accompanied by release to the parent or not.  These are

9    complicated issues, and they aren't simply are we getting the

10   highest price.  It implicates the ultimate reorganization

11   strategy of the case.

12             So I can't judge, at this point in time, what our view

13   is going to be.  I don't want to be prema -- I don't want to be

14   preemptive in terms of reacting.  The committee has met already

15   several times and is taking this responsibility very seriously.

16   And I expect we will come to the Court with well-developed

17   views that hopefully have the benefit of input from all the

18   other parties in this case who have very significant stakes in

19   the case as well.

20             But I do think that right now we should assume that

21   the 18th could well be a contested hearing.  And we'll

22   obviously frame the issues Your Honor has certainly experienced

23   in other cases; issues involving sale procedures and break fees

24   and expense reimbursements and how all of those implicate the

25   case.  And we'll deal with those.  But they're certainly front

**RESIDENTIAL CAPITAL, LLC, et al.**                    31

1    and center in this case.  We'll deal with that.  One way or the

2    other we'll get through -- we'll get through that process.

3         What I wanted to point out, if I may, just a moment

4    longer, is there's a second stage to this case.  As Your Honor

5    probably appreciates from seeing what was presented on the

6    first day, the debtor has contemplated not only the financing

7    and the sale transactions, the debtor contemplates that it is

8    going to proceed with a plan of reorganization very quickly.

9    That will involve a variety of settlements that it has put in

10   place pre-petition, including a settlement of a wide array of

11   issues between the debtor and its parent company, Ally.

12        The proposed resolution, on its face, contemplates not

13   only a settlement with the debtor of all claims and causes of

14   action that belong to the estate, but it contemplates a third-

15   party release to be included in a plan of reorganization.  We

16   don't need today to discuss the issues surrounding a third-

17   party release.  I certainly understand those issues quite well.

18   And I know that all the parties in this case understand them

19   quite well.

20        THE COURT:  Let me just say, when I read the 1007

21   affidavit, read the first-day motions, the third-party

22   nondebtor release issue jumped out at me as being a very

23   significant issue.  For those of you who've been in other cases

24   with me, you know that it is an issue that I pay particular

25   attention to.  Extensive briefing is going to be required if

1  the debtor expects to get something approved with third-party

2  nondebtor releases.

3       Now is not the time to delve into it in any more

4  detail.  There are both jurisdiction issues; the Manville

5  trilogy, I think, set's that out.  Even if the Court has the

6  jurisdiction, there are then issues about under what

7  circumstances a bankruptcy court can issue a third-party

8  nondebtor release.  So I just forewarn you now that there will

9  be a lot of attention paid to that, if that's the direction the

10  debtors seek to go, which certainly is indicated in the papers

11  that I read so far.

12       Go ahead, Mr. Eckstein.

13       MR. ECKSTEIN:  To round out, I think from a status

14  standpoint, Your Honor, what we have proposed -- and I have

15  discussed this with the Morrison & Foerster firm and I have had

16  the occasion to briefly discuss this with counsel for Ally as

17  well -- is that the committee understands the schedule that is

18  being proposed and understands the goals of the case.  And in

19  order to, we believe, try to facilitate the possibility of

20  achieving a plan in this case, the committee is proposing to

21  undertake an extensive investigation of the pre-petition

22  transactions that are publicly disclosed, but are complicated

23  and significant, and obviously were relevant to the

24  negotiations between the debtor and its parent company that

25  involve, currently, a very significant settlement proposal.

**RESIDENTIAL CAPITAL, LLC, et al.**                          33

1    And what we propose to do is to actually immediately

2  commence an investigation.  We think that that would be

3  probably the most efficient way to have an independent party in

4  the case review these issues and essentially utilize the

5  investigation to see whether or not it can ultimately result in

6  a negotiated plan that has the support of unsecured creditors,

7  which currently is not in place.

8    And we have -- toward that end, we have prepared a

9  2004 motion which we think is the appropriate way to proceed,

10  given the significance of the issues in this case and the

11  numerous parties.  As I said, we've discussed this with

12  debtors' counsel.  I believe they are supportive of the

13  approach.  And they have told us, in fact, that in anticipation

14  of an investigation they've prepared extensive materials that

15  they are prepared to share with the committee.  They provided

16  us with a confidentiality agreement and I think are prepared to

17  immediately go ahead and cooperate with the committee.

18    I think what it would contemplate is extensive

19  document production.  And we would expect to follow that with

20  witness examinations to put the committee in a position to

21  engage with the debtor and other parties, to see whether or

22  not, in fact, we can arrive at a plan that can be presented to

23  the Court, that would yield for the debtor what they're trying

24  to accomplish.

25    I did not want to file the motion prior to today's

**RESIDENTIAL CAPITAL, LLC, et al.**                                    34

1  conference.  But we think -- given the timetable, we think that

2  it should be pursued promptly.  And as I said, we are prepared

3  to file it basically tomorrow.  We could proceed ex parte,

4  which I know is an approach that Your Honor has used in some

5  cases, but I wanted to get guidance from Your Honor as to

6  whether or not that was the appropriate procedure.  But we do

7  think that it's appropriate to move ahead.

8          THE COURT:  Well, I would say in smaller cases I've

9  approved 2004 subpoenas and requests, but they're in a very

10  different context than this matter.  I don't know whether

11  you've shared you motion with the debtor.  I know you've

12  indicated that you consulted with them.  It seems to me that

13  you ought to share it with them.  And I don't know whether

14  there are other particular parties-in-interest with whom you

15  ought to share it and see whether you can get a consensual

16  agreement on the basics.

17          I'll certainly hear it, schedule it on very short

18  notice, you know, at a nonregular day.  Clearly, I'm not all

19  surprised, based on everything I've read about the background

20  of the case, that you're doing this.  It seems to me that if

21  the debtor wants to keep this case on track with a very

22  aggressive schedule, that their cooperation in the committee's

23  investigation is going to be required.  That would be true of

24  any other parties-in-interest who really want to see this case

25  brought to as rapid a conclusion as possible.

1   I don't know whether that gives you enough guidance.

2   Let me just say, Mr. Eckstein, you're not a stranger to

3   representing debtors and pushing a very aggressive time

4   schedule, since we've sort of just been through that.

5           MR. ECKSTEIN:  I do recall, Your Honor.  What I was

6   going to suggest, in anticipation of, I think, Your Honor's

7   reaction, that one -- maybe the way to proceed would be to

8   notice it for settlement, serve it on the debtor, Ally, the

9   U.S. Trustee and possibly Cerberus.  We obviously are happy to

10  provide it to all parties, but I think those would probably be

11  the most relevant parties, in the first instance, who would

12  want to react to the motion.

13          The motion obviously reserves for all parties the

14  right to object to subpoenas and other things.  But it's --

15          THE COURT:  Oh, absolutely.  That goes without

16  question.

17          MR. ECKSTEIN:  Obviously.

18          THE COURT:  That's why, in other cases, I'll enter it

19  ex parte, because the recipient of a subpoena always has the

20  opportunity --

21          MR. ECKSTEIN:  But this is broad relief.  There's

22  no -- I don't want to pretend for a moment it's anything other

23  than broad.

24          THE COURT:  You're prepared to serve the motion

25  tomorrow?

1      MR. ECKSTEIN:  I think we could serve it tomorrow,

2  Your Honor.

3      THE COURT:  Okay.  If you're prepared to serve it

4  tomorrow, then I'll set it down for hearing on Tuesday, June

5  5th, at 10 a.m., and we'll get it resolved quickly.  The Second

6  Circuit Judicial Conference starts on Wednesday.  I'm out the

7  rest of the week.  So I'm here Monday and Tuesday.

8      If you serve it tomorrow, any objections to the

9  motion, which doesn't need to be objections to any subpoena

10  served on anybody -- we won't have a chance to do that -- but

11  if there are objections to the motion, they ought to be by 4

12  p.m. on Monday, June 4th.  So let's get this -- I've given

13  ordinarily -- oftentimes this is done ex parte.  Here, I'm

14  giving people the chance, if they have something they want to

15  say in opposition, and I'll just hear you all on the 5th.

16      MR. ECKSTEIN:  That would be fine, Your Honor.

17      THE COURT:  Okay.

18      MR. ECKSTEIN:  Thank you.  We'll proceed that way.

19      THE COURT:  Okay.

20      MR. ECKSTEIN:  I mean, I think that's our perspective,

21  at least, as of today.  Thank you.

22      THE COURT:  Okay.  Thank you very much.  Anybody else

23  wish to be heard now?

24      MR. ZIMAN:  Good afternoon, Your Honor.  Ken Ziman

25  from Skadden Arps on behalf of Barclays Bank as DIP lender in

1  the case.

2          Just in response to committee counsel's comment about

3  depositions that have been, I guess, scheduled or perhaps pre-

4  agreed or tentatively scheduled.  I think the rest of us just

5  want to have notice of when those might take place, who the

6  deponents are, where, when, et cetera.

7          THE COURT:  Well, a 2004 examination, I'm not sure you

8  have --

9          MR. ZIMAN:  No, it's not -- I think this is in

10  connection with the contested matters for the 18th.

11          THE COURT:  I see.  Okay.

12          MR. ECKSTEIN:  These were --

13          THE COURT:  All right, that's fine.

14          MR. ECKSTEIN:  -- specifically in connection -- we

15  have not scheduled any.  So I understand there are various

16  parties who are going to be interested.

17          THE COURT:  Okay.

18          MR. ECKSTEIN:  We haven't scheduled any.  We were

19  still working with the date of the hearing, so we didn't know

20  what the schedule was going to be.  But we'll make a quick

21  decision and obviously give you notice --

22          THE COURT:  Okay.

23          MR. ECKSTEIN:  -- and let you know.

24          THE COURT:  In other cases I've also disclosed, when

25  Mr. Ziman has appeared, at one point, quite far in the past, we

1  were colleagues together.  That was several firms ago, for Mr.

2  Ziman, but --

3          MR. ZIMAN:  Your Honor.  I'm not a vagabond, Your

4  Honor.

5          THE COURT:  I know that.  I know that.

6          MR. ZIMAN:  It was seventeen years ago, though, so it

7  was --

8          THE COURT:  It was that long?

9          MR. ZIMAN:  Yes, it is, Your Honor.

10          THE COURT:  Wow.  I really -- it seems like only

11  yesterday, Mr. Ziman.

12          MR. ZIMAN:  I'm going to quote you.

13          MR. MARINUZZI:  Thank you.  Your Honor.  Lorenzo

14  Marinuzzi, for the record.  Just a couple of points in

15  response.

16          The debtors fully understand, appreciate, and expect

17  that the committee is going to undertake an investigation.  And

18  it's evident, and this is clear from everything the Court has

19  already seen, a lot of work went into preparing these cases for

20  a bankruptcy.  And it's not by accident.  There are not many

21  mortgage servicing companies that --

22          THE COURT:  The best laid plans don't always work out.

23          MR. MARINUZZI:  They don't always work.  They don't

24  always work, Your Honor.  But I just want to avoid the

25  implication from that, that planning means there's something

1   that the company is trying to hide, that something nefarious

2   has happened.  We welcome the investigation.  We've already

3   begun providing documents.  We're preparing to sit down for

4   depositions.  We understand there are lots of issues the

5   committee needs to get comfortable with, and we're going to

6   provide the appropriate witnesses and documents to allow them

7   to get comfortable.

8         Our intention is and will continue to be to work

9   cooperatively with the committee.  We want to give them as much

10  information and put them in a position where they're going to

11  be supportive of the process.  So I felt great about how the

12  plans came together, how we filed the company, notwithstanding

13  the implications that there's something else going on.  And

14  we've heard the Court's direction about the third-party

15  releases.  We still feel good about this case.  We think we've

16  done a lot to get here.  We know we have a tough road ahead of

17  us.

18        THE COURT:  Just from reading the newspapers, I know

19  the case was a long time in coming.  So I'm sure --

20        MR. MARINUZZI:  Okay.  And so I guess the one point I

21  don't want to lose sight of, and this is going back to the

22  Court's case management procedures; the order provides for the

23  matters that were originally noticed up for the 12th and an

24  objection deadline of the 5th, that notwithstanding the fact

25  that we're moving those items to the 18th, the objection

1   deadline doesn't change; it's still the 5th.

2           We had agreed in discussing the issue with the

3   committee yesterday, that for those motions, the ones that were

4   originally on for the 12th, that they could have until the

5   11th, with the Court's indulgence, to file responses.  I'm

6   trying to give them more time, not less, obviously.

7           THE COURT:  That's fine.  That's acceptable to the

8   Court.

9           MR. ECKSTEIN:  That's consistent with my understanding

10  was that the committee and the committee members on this motion

11  have until the 11th.

12          THE COURT:  The committee and the committee members.

13  I heard some issue as to whether committee members wanted some

14  different amount of time, but --

15          MR. ECKSTEIN:  No, the same time -- it was the same

16  time as the committee.

17          THE COURT:  I would just -- let me just say on that, I

18  don't want to -- obviously parties-in-interest can file what

19  they want.  But I don't want to be reading the same thing six

20  times.  And --

21          MR. ECKSTEIN:  My experience --

22          THE COURT:  -- the committee serves a very important

23  role in a case.  And it doesn't help an argument because five

24  others filed the same argument again.  That's not directed at

25  you, Mr. Eckstein, because you're going to file what ought to

RESIDENTIAL CAPITAL, LLC, et al.                    41

1  be filed on behalf of the committee.  But anyone who is

2  representing members of the committee ought to keep that in

3  mind.

4          MR. ECKSTEIN:  I think as a general matter, I share

5  that view that it's redundant and it's dilutive to have

6  multiple pleadings filed by the same constituency.  In this

7  case, we do have significant committee members.  Each of them

8  have their own very well-regarded counsel on the committee.  I

9  do not believe anybody expects to have to file me-too or

10 supplemental pleadings as committee members.

11         There may be situations where individual committee

12 members have discrete positions.  And in that case, they'll

13 file.  But I think the goal was not to force a committee member

14 to file something prematurely, because their deadline expired

15 earlier.  So --

16         THE COURT:  Yes, thank you.

17         MR. ECKSTEIN:  -- it's to avoid that.

18         THE COURT:  Go ahead, Mr. Marinuzzi.

19         MR. MARINUZZI:  We'll provide that courtesy, Your

20 Honor.

21         THE COURT:  Okay.

22         MR. MARINUZZI:  That's all I have, unless the Court

23 has any questions?

24         THE COURT:  I don't.  Anybody else have anything they

25 want to raise?

1        MR. MARINUZZI:  I guess --

2        THE COURT:  Oh, I do have one other thing I wanted to

3   raise, because since you're about to launch discovery.  This

4   did make it into the case management order on discovery

5   disputes.  It's in the case management order, but I just want

6   to make clear how I handle any discovery disputes.

7        If a discovery dispute arises, counsel need to meet

8   and confer in an effort to resolve it.  If they're unable to

9   resolve it, the party seeking the assistance of the Court

10  should arrange a telephone conference with the Court, obviously

11  convenient to the parties who are as part of that dispute.  I

12  will -- I don't want any paper in the first instance.  I will

13  usually -- I usually schedule these telephone conferences at 4

14  or 5 o'clock in the afternoon, and they are usually on the

15  record.

16       And I would say -- I used to say only one time, but

17  now twice in the last five and a half years where I've asked

18  for letter briefs, because I thought an issue was sufficiently

19  complicated, where I've asked for letter briefs with page

20  limits on the letter brief; five-page letter brief.  But

21  typically, nothing in writing.

22       During the call, the parties describe the dispute.  I

23  typically ask a lot of questions and invariably resolve the

24  matter immediately.  What I have found is that when the parties

25  know that the Court will deal with the issue very promptly,

RESIDENTIAL CAPITAL, LLC, et al.                                    43

1  they usually don't want to have to get the Court involved and

2  they usually resolve it themselves.

3          That includes at depositions.  If issues arise at

4  depositions, call chambers and just see whether I'm -- if I'm

5  available.  I'll get on the phone right then and resolve any

6  disputes right then.  What that's tended to do after the first

7  couple of times that happened, I stopped getting those calls,

8  because the parties typically were able to resolve those

9  issues.

10         There are very good counsel involved in this case for

11  lots of parties-in-interest.  I'm sure you'll all make an

12  effort to work cooperatively to resolve issues.

13         Mr. Marinuzzi, have you -- it sounds like there's at

14  least a draft of a confidentiality agreement that has been

15  circulating.  What's the status of it?

16         MR. MARINUZZI:  There is.  It's been provided to the

17  committee.  We're awaiting comments, Your Honor.

18         THE COURT:  Okay.  Does it contemplate other parties

19  signing on to that confidentiality agreement?

20         MR. MARINUZZI:  It does.

21         THE COURT:  Okay.  With respect to a confidentiality

22  agreement for discovery materials, they're pretty common, and

23  the forms are usually pretty well-accepted.  And I will usually

24  sign off on them without very much question.  If anybody wishes

25  to file anything under seal, however, I enforce Section 107(b)

1    quite rigorously.  Any effort to file anything under seal has

2    to be accompanied by a motion seeking that relief.

3           I've written a number of opinions on sealing.  One or

4    two are for publication; the others are on the court web site.

5    But I pretty -- and I guess one point I would make is, I

6    can't -- I don't think I've ever sealed anything wholesale.  It

7    really requires redaction.  So if you think you've got

8    something that under 107(b) ought to be sealed, you need to

9    scrutinize the document carefully to narrow your focus about

10   what it is you think is confidential or proprietary business

11   information that shouldn't be publicly revealed.

12          If -- and that usually -- let me just leave it at

13   that.  I just want to alert people to that.  But hopefully

14   you'll be able to resolve any discovery issues among

15   yourselves.

16          MR. MARINUZZI:  Hope so.

17          THE COURT:  Anything else anybody wants to raise for

18   today?

19          MR. CORDARO:  Good afternoon, Your Honor.  My name is

20   Joseph Cordaro.  I'm an Assistant United States Attorney for

21   the Southern District of New York.  And I just wanted to go

22   back to the discussion of the schedule before, because

23   something occurred to me.

24          The United States had a limited objection to some

25   setoff language in the DIP financing order that Your Honor was

1    probably aware of.

2            THE COURT:  When I read the transcript I saw that

3    colloquy.

4            MR. CORDARO:  And as I now understand it, the DIP

5    order is now going to be put over to the hearing on June 18th,

6    and I don't want to run afoul of the case management order.  In

7    the event the United States wishes to renew that objection, we

8    would like to be able to do that on the 11th.  And I don't know

9    if the objection is currently due on the 5th or the 11th, so --

10           THE COURT:  No, if it's the hearing on the 18th, it's

11   due on the 11th.

12           MR. CORDARO:  Then that's fine.

13           THE COURT:  But, you know, let me just say; I listened

14   to the transcript once, but I remember this issue about the

15   setoff.  It didn't seem to me that you had any substantial

16   disagreement with the debtor about it.  Am I misunderstanding

17   what I heard?

18           MR. CORDARO:  I think, actually --

19           THE COURT:  The issue is are your rights to setoff

20   preserved under state law; the Code provides that it is.  And I

21   didn't think the debtors disagreed with that.

22           MR. CORDARO:  I think the issue was that there was

23   language in there that cabined the setoff to certain

24   collateral, if I remember it correctly.  And that's where the

25   United States had an issue, because our view is what Your Honor

**RESIDENTIAL CAPITAL, LLC, et al.**                                          46

1  just set out, that if we have a valid right of setoff, it's a

2  valid right of setoff.  And we were concerned about that

3  limiting provision.

4          THE COURT:  Don't wait until your response date to see

5  if you can work out the issue.

6          MR. CORDARO:  That would be another reason why we'd

7  ask for the later date, Your Honor.

8          THE COURT:  Okay.  But you ought to be proactive in

9  trying to work out the agreement, okay?

10          MR. CORDARO:  We will be.  Thank you.

11          THE COURT:  Thanks very much.  All right.  Does

12  anybody else wish to be heard?

13          I guess I will see some of you on Tuesday with respect

14  to 2004, okay?

15          MR. MARINUZZI:  Thank you, Your Honor.

16          THE COURT:  Thank you very much.  We're adjourned.

17       (Whereupon these proceedings were concluded at 4:00 PM)

18

19

20

21

22

23

24

25

1

2                                I N D E X

3

4                                RULINGS

5                                                      Page        Line

6    Utility motion is granted                         12          11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

48

# C E R T I F I C A T I O N

I, Sharona Shapiro, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

SHARONA SHAPIRO

AAERT Electronic Certified Transcriber CET**D 492

eScribers, LLC

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  June 1, 2012

12-12020-mg    Doc 214    Filed 06/05/12    Entered 06/05/12 10:48:01    Main Document
In the Matter of:                                   Pg 49 of 58                                   Case No. 12-12020(MG)
RESIDENTIAL CAPITAL, LLC, et al.                                                                    May 31, 2012

# A

**able (9)**
17:11;19:8;23:3,
25;27:10;28:20;43:8;
44:14;45:8
**absolutely (1)**
35:15
**accept (1)**
10:20
**acceptable (1)**
40:7
**access (1)**
13:7
**accident (1)**
38:20
**accompanied (2)**
30:8;44:2
**accomplish (1)**
33:24
**account (11)**
8:17,17;9:1,6,21,
24;10:1,9,13,19;
11:18
**accounting (1)**
9:10
**account's (1)**
8:19
**achieving (1)**
32:20
**action (1)**
31:14
**actually (15)**
9:13;11:10,13;
14:11;16:22;19:23;
20:24;24:4,17,21,25;
25:23;27:8;33:1;
45:18
**added (1)**
12:3
**additional (5)**
8:8;9:25;11:9;
17:6;24:17
**address (1)**
7:11
**adequate (7)**
7:9;8:7;9:2,25;
11:9;12:4,5
**adjourned (1)**
46:16
**adjust (1)**
11:15
**Administrative (1)**
6:3
**adversary (1)**
21:13
**advise (1)**
20:6
**advised (1)**
18:8
**advisor (1)**
13:2

**advisors (5)**
12:22,24,25;13:15;
27:13
**affecting (1)**
28:19
**affidavit (2)**
7:23;31:21
**affidavits (1)**
18:11
**afoul (1)**
45:6
**afternoon (6)**
7:5;11:22;28:5;
36:24;42:14;44:19
**again (3)**
27:13;28:16;40:24
**agency (1)**
20:23
**Agent (1)**
6:3
**aggregate (1)**
9:15
**aggressive (2)**
34:22;35:3
**ago (2)**
38:1,6
**agree (1)**
25:6
**agreeable (1)**
29:14
**agreed (4)**
11:14;17:7;37:4;
40:2
**agreement (8)**
20:18;21:9;33:16;
34:16;43:14,19,22;
46:9
**agreements (2)**
20:23;21:10
**ahead (8)**
18:25;23:20;28:14;
32:12;33:17;34:7;
39:16;41:18
**alert (1)**
44:13
**AlixPartners (1)**
12:23
**all-advisor (1)**
13:5
**allocable (3)**
9:10;10:6,13
**allocated (4)**
9:19,20;10:19;
11:14
**allow (6)**
13:22;14:17;15:8,
9;16:18;39:6
**Ally (10)**
4:3,3;20:19;21:10,
11,12;30:1;31:11;
32:16;35:8
**alter (1)**
25:13

**altering (1)**
8:6
**altogether (1)**
7:14
**always (5)**
17:9;35:19;38:22,
23,24
**amendments (1)**
12:5
**Americas (2)**
4:15;5:4
**among (1)**
44:14
**amount (13)**
9:2,10,14,18,19,20,
23;10:16;11:13,15;
16:14;20:7;40:14
**amounts (1)**
10:25
**anticipate (4)**
18:21;20:4;21:24;
25:16
**anticipation (3)**
28:13;33:13;35:6
**apologize (1)**
24:16
**apparent (1)**
19:25
**appeared (1)**
37:25
**applicable (1)**
14:15
**applies (1)**
15:7
**apply (1)**
16:23
**appreciate (3)**
26:24;29:25;38:16
**appreciates (1)**
31:5
**approach (2)**
33:13;34:4
**appropriate (10)**
17:8,15;22:13;
23:18;28:23,25;33:9;
34:6,7;39:6
**approve (5)**
20:18,19,20,21,24
**approved (4)**
16:10;18:4;32:1;
34:9
**approving (1)**
8:6
**approximately (1)**
29:1
**argument (2)**
40:23,24
**arise (1)**
43:3
**arisen (2)**
16:6,11
**arises (1)**
42:7

**ARPS (2)**
6:2;36:25
**arrange (1)**
42:10
**array (1)**
31:10
**arrive (1)**
33:22
**aside (1)**
9:23
**aspects (3)**
15:18;24:14;29:24
**assert (1)**
14:19
**assess (1)**
23:25
**asset (2)**
29:1,7
**assets (7)**
28:24,25;29:2,11,
21,22;30:1
**assistance (1)**
42:9
**Assistant (1)**
44:20
**assume (2)**
9:20;30:20
**assuming (1)**
9:16
**assumption (1)**
9:17
**assurance (9)**
7:9;8:7,8;9:3,25;
10:8;11:9;12:5;17:5
**assurances (1)**
27:25
**assures (1)**
10:5
**attention (3)**
24:8;31:25;32:9
**Attorney (1)**
44:20
**Attorneys (6)**
4:3;5:3,11,20;6:3,
12
**Attorney's (1)**
6:21
**audio (1)**
7:19
**AUSA (1)**
6:25
**AUSTIN (1)**
6:11
**automatic (2)**
14:14;15:4
**available (2)**
18:13;43:5
**Avenue (4)**
4:4,15;5:4,21
**average (3)**
8:12,19;10:2
**avoid (2)**
38:24;41:17

**awaiting (1)**
43:17
**aware (1)**
45:1

# B

**back (4)**
10:3;19:10;39:21;
44:22
**background (2)**
7:22;34:19
**Bank (5)**
4:3;6:3;8:17;
20:19;36:25
**banker (1)**
13:3
**bankrupt (1)**
13:25
**bankruptcy (5)**
13:21;15:13,15;
32:7;38:20
**Barclays (3)**
6:3;21:9;36:25
**based (3)**
10:19;30:5;34:19
**basically (3)**
19:19;28:22;34:3
**basics (1)**
34:16
**became (1)**
19:25
**begun (2)**
13:8;39:3
**behalf (2)**
36:25;41:1
**belong (1)**
31:14
**benefit (3)**
17:15;26:8;30:17
**best (4)**
19:15;20:5;25:6;
38:22
**better (2)**
22:24;24:21
**billion (1)**
29:2
**bit (3)**
15:25;16:7;17:1
**BOELTER (1)**
6:16
**borrower (1)**
15:5
**both (3)**
24:1;29:1;32:4
**break (1)**
30:23
**brief (3)**
21:16;42:20,20
**briefing (1)**
31:25
**briefly (1)**
32:16

12-12020-mg   Doc 214   Filed 06/05/12   Entered 06/05/12 10:48:01   Main Document
In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.
Pg 50 of 58
Case No. 12-12020(MG)
May 31, 2012

**briefs (4)**
18:15;22:14;42:18,
19
**broad (2)**
35:21,23
**brought (1)**
34:25
**build (1)**
19:8
**builds (1)**
25:10
**bulk (1)**
28:24
**burden (1)**
19:16
**burned (1)**
17:3
**business (7)**
14:18,20;17:12;
22:11,13;24:14;
44:10

**C**

**cabined (1)**
45:23
**calculated (1)**
9:15
**calendar (3)**
19:10,13;20:2
**call (5)**
16:25;17:8;20:22;
42:22;43:4
**calls (11)**
12:25;13:18,25;
14:4,9;15:12,15,16,
17;25:9;43:7
**came (1)**
39:12
**can (25)**
7:13,14;13:16,17;
14:2,14,21;16:19;
17:2;18:16,23;20:7;
23:5;25:7,16,18;
28:14;29:12;32:7;
33:5,22,22;34:15;
40:18;46:5
**Capital (2)**
7:3;29:15
**carefully (1)**
44:9
**Carpenters (1)**
5:3
**case (50)**
8:14,15;10:1;
11:23;13:15;15:5,13,
19;16:9,10,11,16;
19:7;20:6;23:17,23;
24:5,10,14,24;25:3;
28:1,19;29:14,24;
30:11,18,19,25;31:1,
4,18;32:18,20;33:4,
10;34:20,21,24;37:1;

39:15,19,22;40:23;
41:7,12;42:4,5;
43:10;45:6
**cases (15)**
7:12;10:7;15:2;16:,
24;22:5;23:21;24:24;
30:23;31:23;34:5,8;
35:18;37:24;38:19
**cash (5)**
11:11;20:17;21:8,
10;28:7
**causes (1)**
31:13
**CDs (2)**
7:17,17
**center (1)**
31:1
**Centerview (2)**
13:2,2
**Cerberus (1)**
35:9
**certain (3)**
17:17;27:25;45:23
**certainly (10)**
10:23;17:7;25:6,
15;28:5;30:22,25;
31:17;32:10;34:17
**cetera (1)**
37:6
**Chambers (9)**
6:22;16:11,24;
18:8;20:12,15;23:13;
24:17;43:4
**chance (3)**
24:21;36:10,14
**change (2)**
25:11;40:1
**changes (1)**
25:3
**Chapter (4)**
8:13;14:1;15:2,5
**Chicago (1)**
6:14
**Circuit (1)**
36:6
**circulated (1)**
20:13
**circulating (1)**
43:15
**circumstances (2)**
18:3;32:7
**Citibank (2)**
5:20;21:9
**claims (1)**
31:13
**clarification (1)**
14:24
**clarify (1)**
14:13
**clear (4)**
16:;23:9;38:18;
42:6
**clearance (1)**

17:8
**clearly (2)**
16:23;34:18
**clerks (4)**
16:3,14;17:8;19:13
**close (3)**
16:25;17:5;25:9
**closely (1)**
13:14
**Code (1)**
45:20
**collateral (4)**
21:9,10;28:7;45:24
**colleagues (1)**
25:2;38:1
**colloquy (1)**
45:3
**comfort (1)**
14:14
**comfortable (2)**
39:5,7
**coming (3)**
7:25;9:12;39:19
**commence (1)**
33:2
**commenced (1)**
24:6
**comment (4)**
16:9;17:20;25:9;
37:2
**comments (4)**
12:2;16:22;19:2;
43:17
**Committee (52)**
4:13;12:1,2,19,19,
21,24;13:1,6,8,11,13;
16:3;19:5;20:3,5,14;
21:21;23:3,5,17;
25:22,24;26:1,8;
28:10;30:14;32:17,
20;33:15,17,20;37:2;
38:17;39:5,9;40:3,10,
10,12,12,13,16,22;
41:1,2,7,8,10,11,13;
43:17
**committee's (7)**
12:3,24;13:15;
23:21,22;26:18;
34:22
**common (1)**
43:22
**communicates (1)**
15:17
**communicating (1)**
20:3
**communications (1)**
13:3
**companies (2)**
8:5;38:21
**company (12)**
8:19,20;9:13;
14:13,18,19,23;
28:24;31:11;32:24;

17:8
39:1,12
**company's (3)**
13:7,24;15:8
**Compared (1)**
8:13
**complaint (1)**
21:15
**completely (1)**
15:3
**complex (1)**
28:9
**complicated (4)**
18:14;30:9;32:22;
42:19
**compresses (1)**
26:13
**concerned (1)**
46:2
**concerns (1)**
23:3
**concluded (2)**
15:19;46:17
**conclusion (3)**
12:18,20;34:25
**confer (3)**
25:2,12;42:8
**conference (6)**
7:9,13;12:15;34:1;
36:6;42:10
**conferences (1)**
42:13
**confidential (1)**
44:10
**confidentiality (4)**
33:16;43:14,19,21
**confirm (1)**
21:22
**connection (2)**
37:10,14
**consensual (2)**
20:9;34:15
**consensus (1)**
19:8
**consideration (2)**
24:8
**consistent (2)**
10:15;40:9
**constituency (1)**
41:6
**consult (2)**
25:15,18
**consultation (1)**
12:3
**consulted (1)**
34:12
**contained (1)**
22:14
**contemplate (2)**
33:18;43:18
**contemplated (3)**
7:10;14:23;31:6
**contemplates (3)**
31:7,12,14

**contested (11)**
17:10,21,23;18:7;
22:7,9,25,25;28:4;
30:21;37:10
**context (2)**
28:1;34:10
**continue (6)**
13:18;14:5,18;
15:9;26:14;39:8
**continues (1)**
13:10
**continuing (1)**
9:22
**controversy (1)**
20:7
**convenient (1)**
42:11
**conversation (1)**
20:12
**cooperate (1)**
33:17
**cooperation (1)**
34:22
**cooperatively (2)**
39:9;43:12
**CORDARO (9)**
6:25;44:19,20;
45:4,12,18,22;46:6,
10
**correctly (1)**
45:24
**cost (3)**
8:12,19;10:2
**Counsel (19)**
4:13;7:6;11:25;
13:18,24;14:6;15:17;
16:3,18;20:14;21:22;
23:5;25:2,12;32:16;
33:12;41:8;42:7;
43:10
**counsel's (1)**
37:2
**counterclaims (1)**
14:20
**couple (3)**
23:16;38:14;43:7
**course (2)**
7:19;19:16
**COURT (108)**
7:2,11,16,22;9:4,8;
10:3,4,12,21;11:2,5,
6,12,19;12:8,13,16;
14:4,7,12;15:1,10,20,
25;16:19;17:2,24;
18:13;19:12,16,21;
21:2,15,23,25;22:3,8,
20;23:6,14,20;24:3,
23;26:4,11,17,22;
27:1,3,5,7,15,19;
28:21;30:3,16;31:20;
32:5,7;33:23;34:8;
35:15,18,24;36:3,17,
19,22;37:7,11,13,17,

12-12020-mg   Doc 214   Filed 06/05/12   Entered 06/05/12 10:48:01   Main Document
Pg 51 of 58

In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020(MG)
May 31, 2012

22,24;38:5,8,10,18,
22;39:18;40:7,8,12,
17,22;41:16,18,21,
22,24;42:2,9,10,25;
43:1,18,21;44:4,17;
45:2,10,13,19;46:4,8,
11,16
**courtesy (1)**
41:19
**Court's (4)**
20:15;39:14,22;
40:5
**covers (1)**
15:18
**create (1)**
24:18
**Creditors (4)**
4:14;29:13,20;33:6
**creditors' (2)**
11:25;16:3
**cross-examination (1)**
18:13
**crowded (1)**
19:12
**currently (5)**
13:10;23:11;32:25;
33:7;45:9

**D**

**data (3)**
9:13;13:7,8
**date (15)**
8:10;17:3,17,18;
19:4,18,19,20;25:1,5;
26:3,5;37:19;46:4,7
**dates (3)**
16:1;19:6;24:11
**day (8)**
12:20;17:6;18:2;
26:10,19;27:12;31:6;
34:18
**days (7)**
7:19;8:25;16:2;
17:13;18:24,24;29:3
**days' (1)**
25:4
**deadline (4)**
23:2;39:24;40:1;
41:14
**deadlines (1)**
18:15
**deal (10)**
7:16;8:1,1;9:9;
24:8,15;28:15;30:25;
31:1;42:25
**dealing (2)**
9:4;24:20
**Dearborn (1)**
6:13
**debtor (22)**
22:11,13;25:16,16,
25;26:9;28:4,10,16;

29:10;31:6,7,11,13;
32:1,24;33:21,23;
34:11,21;35:8;45:16
**debtors (15)**
8:11,12,22,24,25;
9:16,23;11:9;13:9;
15:14;20:19;32:10;
35:3;38:16;45:21
**debtors' (8)**
8:5;13:2;16:18;
20:21;25:2,12;27:13;
33:12
**debtors-in-possession (1)**
7:7
**decision (1)**
37:21
**declarants (1)**
18:12
**declaration (3)**
22:7,8,12
**declarations (1)**
18:11
**defer (1)**
23:5
**deficiency (1)**
10:16
**define (1)**
24:13
**delinquency (1)**
8:24
**delve (1)**
32:3
**DEPARTMENT (2)**
6:20;13:20
**deponents (1)**
37:6
**deposit (4)**
9:3;10:6;11:11,16
**depositions (6)**
13:11;28:13;37:3;
39:4;43:3,4
**depository (1)**
8:17;9:1
**deposits (1)**
8:6
**describe (1)**
42:22
**detail (2)**
23:18;32:4
**dialogue (2)**
26:14,15
**different (4)**
29:15,18;34:10;
40:14
**differs (1)**
30:5
**difficult (1)**
14:22
**dilutive (1)**
41:5
**DIP (15)**
6:4;21:9,10;24:13;
28:7;29:4,5,6,6,7,8,

10;36:25;44:25;45:4
**direct (2)**
8:25;18:10
**directed (1)**
40:24
**direction (4)**
7:15;14:1;32:9;
39:14
**directly (1)**
11:11
**disagreed (1)**
45:21
**disagreement (1)**
45:16
**disclosed (2)**
32:22;37:24
**discontinuing (1)**
8:6
**discovery (8)**
28:11,14;42:3,4,6,
7;43:22;44:14
**discrete (1)**
41:12
**discuss (2)**
31:16;32:16
**discussed (2)**
32:15;33:11
**discussing (1)**
40:2
**discussion (1)**
44:22
**dispute (4)**
27:23;42:7,11,22
**disputes (3)**
42:5,6;43:6
**District (1)**
44:21
**docket (1)**
23:11
**document (2)**
33:19;44:9
**documents (3)**
13:9;39:3,6
**dollars (4)**
8:13,18;11:17;29:2
**done (2)**
12:16;36:13;39:16
**DOUGLAS (1)**
4:19
**down (3)**
14:12;36:4;39:3
**dozens (1)**
13:24
**draft (2)**
27:7;43:14
**draw (1)**
10:9
**due (4)**
17:12;24:19;45:9,
11
**During (1)**
42:22

**E**

**earlier (3)**
13:5;23:13;41:15
**easily (1)**
20:8
**ECKSTEIN (37)**
4:18;11:21,22;
16:21;23:14,15,21;
25:15;26:24;27:2,4,6,
11,18,21;28:22;30:4;
32:12,13;35:2,5,17,
21;36:1,16,18,20;
37:12,14,18,23;40:9,
15,21,25;41:4,17
**efficient (1)**
33:3
**effort (3)**
42:8;43:12;44:1
**eighteen-month (1)**
29:5
**either (1)**
10:8
**eleven-month (1)**
29:6
**ELLIS (1)**
4:2
**else (7)**
11:19;12:9;36:22;
39:13;41:24;44:17;
46:12
**e-mail (2)**
20:13;23:12
**emergency (1)**
25:14
**end (5)**
17:14;26:10,19;
27:4;33:8
**Energy (1)**
11:10
**enforce (1)**
43:25
**engage (1)**
33:21
**enough (2)**
25:10;35:1
**enter (3)**
18:14;21:3;35:18
**entered (1)**
15:14
**entire (1)**
7:18
**ESQ (12)**
4:7,8,18,19,20,21;
5:7,16,24;6:8,16,17
**essentially (3)**
29:4,8;33:4
**establish (1)**
20:17
**established (1)**
8:20
**establishing (2)**

8:7;9:6
**estate (1)**
31:14
**et (1)**
37:6
**ETKIN (1)**
5:7
**even (2)**
19:18;32:5
**event (1)**
45:7
**everybody (2)**
17:14;22:16
**evidence (4)**
18:1;20:10;22:1,22
**evident (1)**
38:18
**evidentiary (9)**
17:21,23;18:1,4,7,
10,21;21:24;22:15
**evolve (1)**
28:18
**ex (3)**
34:3;35:19;36:13
**examination (1)**
37:7
**examinations (1)**
33:20
**example (1)**
9:18
**exceeded (1)**
11:13
**excellent (1)**
12:22
**exception (1)**
26:7
**exercise (2)**
22:11,13
**exhausted (1)**
9:24
**exhibits (3)**
18:12,17,17
**exist (1)**
20:7
**expect (3)**
30:16;33:19;38:16
**expecting (1)**
26:1
**expects (2)**
32:1;41:9
**expense (1)**
30:24
**experience (1)**
40:21
**experienced (1)**
30:22
**expired (1)**
41:14
**explain (1)**
19:3
**extend (5)**
16:19;17:3,11;
26:18;27:9

12-12020-mg    Doc 214    Filed 06/05/12    Entered 06/05/12 10:48:01    Main Document
In the Matter of:                                    Pg 52 of 58                          Case No. 12-12020(MG)
RESIDENTIAL CAPITAL, LLC, et al.                                                          May 31, 2012

**extensions (1)**
16:18
**Extensive (4)**
31:25;32:21;33:14,
18
**extent (5)**
20:4;24:16;26:6,
15;28:3
**extremely (2)**
19:12;28:9

**F**

**face (1)**
31:12
**facilitate (1)**
32:19
**Facility (1)**
6:4
**fact (5)**
14:21;29:5;33:13,
22;39:24
**factor (1)**
8:14
**facts (4)**
22:6,8,8,14
**fail (1)**
8:22
**fairly (1)**
20:10
**Fannie (2)**
13:19;20:23
**far (2)**
32:11;37:25
**fast (1)**
29:3
**feature (1)**
16:10
**feel (1)**
39:15
**feels (1)**
25:16
**fees (2)**
20:21;30:23
**felt (1)**
39:11
**few (1)**
18:2
**fifty (2)**
9:15;10:2
**file (13)**
16:20;22:16;27:9;
33:25;34:3;40:5,18,
25;41:9,13,14;43:25;
44:1
**filed (14)**
8:10;14:12,24;
15:23;19:19;20:5,25;
22:2,10;25:8;39:12;
40:24;41:1,6
**filing (5)**
12:18;15:15;16:12;
24:9,25

**final (4)**
7:25;20:16,17;26:2
**finalized (1)**
14:11
**Financial (2)**
4:3;13:2
**financing (2)**
31:6;44:25
**fine (10)**
8:3;22:18,19;
26:21,21;28:3;36:16;
37:13;40:7;45:12
**firm (3)**
11:24;14:7;32:15
**firms (1)**
38:1
**first (8)**
7:16;16:16;17:23;
25:25;31:6;35:11;
42:12;43:6
**first-day (10)**
7:18,23,24;12:17,
18,21;14:16;15:19;
20:17;31:21
**five (2)**
40:23;42:17
**five-page (1)**
42:20
**flexible (1)**
19:10
**FLOM (1)**
6:2
**Floor (1)**
6:22
**focus (1)**
44:9
**focused (1)**
28:11
**Foerster (2)**
7:6;32:15
**follow (1)**
33:19
**force (1)**
41:13
**forewarn (1)**
32:8
**form (1)**
12:22
**formally (1)**
13:9
**formation (1)**
12:21
**formed (4)**
12:19,19,24;19:5
**forms (1)**
43:23
**forth (1)**
22:12
**fortunately (1)**
8:11;19:9
**forward (1)**
8:2,22;19:18,23
**found (1)**

42:24
**Four (2)**
6:5;29:1
**frame (2)**
26:13;30:22
**FRANKEL (1)**
4:12
**frankly (1)**
14:23
**Freddie (3)**
5:11;13:19;20:23
**FREDRIC (1)**
5:24
**front (1)**
30:25
**FTI (1)**
9:13
**full (6)**
11:14;13:12;19:14;
29:7,7,16
**fully (1)**
38:16
**functions (1)**
20:22
**Fund (4)**
5:3;8:16,21;10:1
**funds (1)**
10:17

**G**

**general (4)**
10:17;23:16;24:10;
41:4
**generally (1)**
23:22
**genesis (1)**
19:3
**gets (1)**
30:6
**Ginnie (2)**
13:19;20:24
**given (6)**
13:7;24:7;28:9;
33:10;34:1;36:12
**gives (1)**
35:1
**giving (1)**
36:14
**goal (5)**
24:17;27:22,22,23;
41:13
**goals (1)**
32:18
**goes (2)**
11:17;35:15
**Good (6)**
7:5;11:22;36:24;
39:15;43:10;44:19
**governmental (1)**
20:22
**grant (2)**
16:18;17:6

**granted (1)**
12:11
**great (4)**
7:19;8:14;24:7;
39:11
**greatest (1)**
20:7
**group (1)**
15:15
**guess (6)**
26:17;37:3;39:20;
42:1;44:5;46:13
**guidance (3)**
14:2;34:5;35:1

**H**

**half (2)**
8:18;42:17
**handle (1)**
42:6
**happened (2)**
39:2;43:7
**happening (1)**
16:8
**happy (1)**
35:9
**head (1)**
19:13
**Health (1)**
5:3
**hear (5)**
16:7;18:1,23;
34:17;36:15
**heard (14)**
11:19;12:9;17:18;
18:3,24;21:14,19;
23:11;28:9;36:23;
39:14;40:13;45:17;
46:12
**hearing (30)**
12:17,19,21;15:19;
16:1,13;17:17,22,23,
24;18:1,2,4,7,10,22;
19:17,23;20:16,17;
21:8,24;23:1;25:1,5;
30:21;36:4;37:19;
45:5,10
**hearings (3)**
7:25;19:8;26:7
**heart (1)**
19:2
**held (1)**
13:5
**help (3)**
14:13;20:5;40:23
**helpful (2)**
12:15;26:24
**HESSLER (1)**
4:7
**hide (1)**
39:1
**highest (1)**

30:10
**honest (1)**
26:15
**Honor (56)**
7:5,8,12,13,15;8:3,
4,14;9:12;10:14,22;
11:4,7,22,24;12:6,12,
14;15:12,21,21;19:1;
20:13;21:14,25;
22:18,24;23:9,15;
26:12,21,25;27:11;
28:9;29:25;30:22;
31:4;32:14;34:4,5;
35:5;36:2,16,24;38:3,
4,9,13,24;41:20;
43:17;44:19,25;
45:25;46:7,15
**Honor's (3)**
19:2,10;35:6
**hope (2)**
27:21;44:16
**hoped (1)**
24:21
**hopefully (4)**
11:5;23:1;30:17;
44:13
**hot-button (1)**
27:17
**Houston (1)**
5:14

**I**

**identifier (1)**
18:18
**IL (1)**
6:14
**imagine (2)**
9:24;27:15
**immediately (3)**
33:1,17;42:24
**implemented (1)**
30:7
**implicate (1)**
30:24
**implicated (1)**
28:19
**implicates (1)**
30:10
**implication (2)**
29:23;38:25
**implications (1)**
39:13
**important (10)**
13:4,20,22;22:15;
23:22,24;24:11;28:1,
6;40:22
**impose (1)**
25:11
**imposed (1)**
24:16
**impossible (1)**
17:16

12-12020-mg   Doc 214   Filed 06/05/12   Entered 06/05/12 10:48:01   Main Document
Pg 53 of 58

In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020(MG)
May 31, 2012

**Inc (1)**
4:3
**include (1)**
9:8
**included (1)**
31:15
**includes (2)**
16:12;43:3
**including (4)**
13:19;19:7;25:25;
31:10
**independent (1)**
33:3
**indicate (1)**
17:25
**indicated (4)**
25:23;28:12;32:10;
34:12
**individual (1)**
41:11
**individuals (2)**
13:25;14:1
**indulgence (2)**
20:15;40:5
**informal (1)**
11:8
**information (3)**
13:16;39:10;44:11
**in-house (2)**
13:24;14:6
**initially (1)**
7:10
**input (1)**
30:17
**inquire (1)**
18:20
**instance (2)**
35:11;42:12
**instead (1)**
11:16
**integral (1)**
13:23
**intention (2)**
15:8;39:8
**interact (1)**
14:2
**interested (2)**
29:21;37:16
**interests (1)**
25:13
**interrupt (3)**
22:4,17;24:23
**into (6)**
11:17;15:15;23:18;
32:3;38:19;42:4
**introduce (1)**
11:23
**invariably (1)**
42:23
**investigation (7)**
32:21;33:2,5,14;
34:23;38:17;39:2
**investment (1)**

13:3
**invoice (2)**
8:23;9:17
**involve (1)**
28:22;31:9;32:25
**involved (4)**
23:25;24:4;43:1,10
**involves (1)**
30:1
**involving (3)**
28:8;29:1;30:23
**irrespective (1)**
22:1
**issue (16)**
9:5;26:17;27:8;
31:22,23,24;32:7;
40:2,13;42:18,25;
45:14,19,22,25;46:5
**issues (24)**
13:4;23:7,8;25:20;
26:15;27:17;28:19,
21,22;30:9,22,23;
31:11,16,17;32:4,6;
33:4,10;39:4;43:3,9,
12;44:14
**items (2)**
28:1;39:25

**J**

**Jersey (1)**
5:3
**JESSICA (1)**
6:16
**JOSEPH (2)**
6:25;44:20
**judge (2)**
28:20;30:12
**judgment (2)**
22:11,13
**Judicial (1)**
36:6
**jumped (1)**
31:22
**June (8)**
13:13;16:1,1;
19:12,14;36:4,12;
45:5
**junior (1)**
15:3
**jurisdiction (2)**
32:4,6
**JUSTICE (2)**
6:20;13:20

**K**

**keep (4)**
14:7;18:8;34:21;
41:2
**Ken (1)**
36:24
**KENNETH (2)**

4:18;6:8
**kick (1)**
19:5
**KIRKLAND (1)**
4:2
**knew (1)**
19:17
**knows (1)**
11:24
**KRAMER (4)**
4:12;11:24;12:22,
25

**L**

**laid (1)**
38:22
**language (2)**
44:25;45:23
**large (2)**
16:24;24:24
**Larren (1)**
7:10
**LARRY (1)**
6:17
**last (4)**
11:5;16:2;17:20;
42:17
**later (4)**
17:17;19:4;28:5;
46:7
**launch (1)**
42:3
**law (5)**
16:3,14;17:8;
19:13;45:20
**lead-in (1)**
22:20
**leading (1)**
24:8
**least (5)**
11:23;26:8,10;
36:21;43:14
**leave (1)**
44:12
**lender (1)**
36:25
**lenders (2)**
19:7;29:10
**less (3)**
8:11;17:13;40:6
**lesser (3)**
9:2;10:18,24
**letter (4)**
42:18,19,20,21
**letters (1)**
18:19
**LEVIN (4)**
4:12;11:24;12:22;
13:1
**Lexington (2)**
4:4;5:21
**lien (2)**

15:2,5
**lifted (1)**
15:8
**limited (2)**
20:10;44:24
**limiting (1)**
46:3
**limits (1)**
42:20
**line (1)**
16:12
**listen (1)**
7:20
**listened (3)**
7:17,17;45:13
**little (3)**
15:25;16:7;17:1
**LLC (1)**
7:3
**LLP (4)**
4:2,1;5:19;6:2
**loan (2)**
30:3,4
**Local (1)**
17:22
**logistics (1)**
25:22
**long (7)**
24:2,5,5,18;25:18;
38:8;39:19
**longer (3)**
24:25;27:9;31:4
**look (1)**
24:10
**looking (4)**
10:22;19:11;21:21;
29:20
**Lorenzo (2)**
7:5;38:13
**lose (1)**
39:21
**lot (7)**
19:22,25;24:7;
32:9;38:19;39:16;
42:23
**lots (4)**
14:9;15:22;39:4;
43:11
**LOWENSTEIN (1)**
5:2

**M**

**Mac (2)**
5:11;13:19
**Mae (2)**
13:19,19
**major (2)**
19:6;29:1
**making (1)**
15:5
**management (11)**
16:10,12,16;20:18;

24:24;25:3;26:1;
39:22;42:4,5;45:6
**MANNAL (1)**
4:19
**Manville (1)**
32:4
**many (6)**
20:1;23:7;24:3,14,
19;38:20
**Marinuzzi (50)**
7:4,5,6,21;8:3;9:7,
12;10:11,14,22;11:3,
7,13;12:12,13,14;
14:5,8;15:7,11,21;
18:25;19:1,15,22;
21:4,7,17,25;22:4,18,
21;26:11,12,21,23;
27:16;38:13,14,23;
39:20;41:18,19,22;
42:1;43:13,16,20;
44:16;46:15
**mark (1)**
18:17
**marked (1)**
11:4
**material (1)**
15:18
**materials (2)**
33:14;43:22
**matter (11)**
16:21;17:1,10,21,
23;18:9,15;24:10;
34:10;41:4;42:24
**matters (7)**
16:6;17:22;18:20;
19:4,24;37:10;39:23
**maximize (1)**
29:22
**May (8)**
12:20;14:22;23:9,
19;25:1;29:25;31:3;
41:11
**maybe (2)**
23:5;35:7
**MCKOOL (1)**
5:10
**MEAGHER (1)**
6:2
**mean (3)**
22:17;25:6;36:20
**means (1)**
38:25
**meet (3)**
27:13;28:16;42:7
**meeting (9)**
13:5,12;25:22,24,
24;26:6,8,8;27:4
**member (1)**
41:13
**members (7)**
40:10,12,13;41:2,7,
10,12
**met (1)**

12-12020-mg    Doc 214    Filed 06/05/12    Entered 06/05/12 10:48:01    Main Document

In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.

Pg 54 of 58

Case No. 12-12020(MG)
May 31, 2012

30:14

**me-too (1)**
41:9

**MICHAEL (1)**
5:7

**might (7)**
12:15;20:7;22:25,
25;23:7,16;37:5

**million (1)**
8:13

**mind (1)**
41:3

**minimize (2)**
19:15;27:21

**minor (1)**
12:2

**misunderstanding (1)**
45:16

**MOAK (1)**
5:16

**modification (1)**
26:4

**modifications (1)**
12:4

**Moelis (2)**
12:23;13:1

**moment (4)**
23:4;26:17;31:3;
35:22

**Monday (2)**
36:7,12

**money (1)**
9:10

**month (2)**
11:15;19:12

**monthly (4)**
8:12,18;9:16;10:2

**more (10)**
10:6,12;14:17;
17:1,15,19;24:21;
29:5;32:3;40:6

**Morrison (2)**
7:6;32:15

**Mortgage (3)**
6:12;14:3;38:21

**mortgages (1)**
15:4

**most (3)**
7:23;33:3;35:11

**motion (39)**
7:9,16;8:1,5,10,16;
10:15;11:20;12:2,10,
11;14:11;15:6;16:14;
17:12,16;20:17,25;
21:9,11,11,12,12,13;
22:5,9,9,10;23:10;
33:9,25;34:11;35:12,
13,24;36:9,11;40:10;
44:2

**motions (32)**
7:18,24;14:16;
15:3,22;16:4,12,24;
17:14,17;18:3;21:23;

22:1,16;24:25;25:4,7,
14,14;26:2,20;27:16,
25;28:3,7,8,8,11,15,
20;31:21;40:3

**move (4)**
19:3,8;20:1;34:7

**moving (5)**
16:4,5;18:18;
21:16;39:25

**much (15)**
12:8,13;13:16;
14:8,21;15:18;18:22;
23:18;26:22;27:23;
36:22;39:9;43:24;
46:11,16

**multiple (1)**
41:6

**must (1)**
10:7

**myself (1)**
11:23

**N**

**NA (1)**
5:20

**NAFTALIS (1)**
4:12

**name (1)**
44:19

**narrow (1)**
44:9

**Nashelsky (3)**
7:11;11:1;21:6

**Nationstar (2)**
6:12;29:11

**near (3)**
24:1,12;25:20

**necessarily (1)**
29:20

**necessary (1)**
18:5

**need (14)**
14:24;16:25;18:6,
17;20:9;27:9;28:12;
29:9,10,23;31:16;
36:9;42:7;44:8

**needing (1)**
25:17

**needs (3)**
22:6,12;39:5

**nefarious (1)**
39:1

**negotiated (2)**
19:6;33:6

**negotiations (1)**
32:24

**New (9)**
4:5,16;5:3,5,22;
6:6,23;24:6;44:21

**newspapers (1)**
39:18

**next (5)**

13:12,13;25:22;
27:12;28:17

**ninety (1)**
29:3

**nondebtor (3)**
31:22;32:2,8

**nongovernmental (2)**
21:11;23:10

**nonregular (1)**
34:18

**normalize (1)**
14:20

**noted (1)**
8:4

**notice (10)**
8:24;10:16;12:5;
21:19;25:4,13;34:18;
35:8;37:5,21

**noticed (1)**
39:23

**notwithstanding (2)**
39:12,24

**number (5)**
7:3;9:13;15:16;
23:11;44:3

**numbers (1)**
18:18

**numerous (2)**
15:12;33:11

**NY (6)**
4:5,16;5:5,22;6:6,
23

**NYHAN (1)**
6:17

**O**

**object (1)**
35:14

**objection (10)**
11:8;17:12;22:2,
10;23:2;39:24,25;
44:24;45:7,9

**objections (7)**
16:13;20:4;24:19;
25:8;36:8,9,11

**observations (1)**
23:17

**obviously (19)**
7:23;13:20;21:8,
25;22:22;24:13;
26:13;27:14;29:16,
21;30:22;32:23;35:9,
13,17;37:21;40:6,18;
42:10

**occasion (2)**
11:23;32:16

**occurred (1)**
44:23

**o'clock (1)**
42:14

**off (4)**
16:16;17:16;25:5;

43:24

**Office (2)**
6:21;16:2

**offices (1)**
13:5

**Official (2)**
4:13;11:25

**oftentimes (1)**
36:13

**omnibus (3)**
17:17,18;18:2

**once (2)**
17:3;45:14

**one (19)**
7:24;9:16;11:8;
16:9,10;17:8;22:9;
24:11,20;29:17,25;
31:1;35:7;37:25;
39:20;42:2,16;44:3,5

**one-off (2)**
15:16

**ones (2)**
14:22;40:3

**only (8)**
9:5;16:19;19:10;
26:17;31:6,13;38:10;
42:16

**onto (1)**
19:24

**open (1)**
26:14

**operating (2)**
10:17;14:18

**opinions (1)**
44:3

**opportunity (1)**
35:20

**opposition (1)**
36:15

**order (22)**
8:5,25;10:5,14,21;
11:4,4;16:10,12,16;
18:14;20:16;21:1;
24:24;25:3;32:19;
39:22;42:4,5;44:25;
45:5,6

**orders (2)**
16:17;17:24

**ordinarily (1)**
36:13

**originally (2)**
39:23;40:4

**origination (1)**
21:10

**others (3)**
16:2;40:24;44:4

**ought (8)**
25:12;34:13,15;
36:11;40:25;41:2;
44:8;46:8

**out (14)**
10:5;19:6,8,9;26:5;
31:3,22;32:5,13;

36:6;38:22;46:1,5,9

**over (4)**
7:18;16:1;23:10;
45:5

**overview (2)**
7:12;23:6

**owe (1)**
10:17

**owed (2)**
9:2;10:18

**own (1)**
41:8

**P**

**page (1)**
42:19

**paid (4)**
9:19;10:16;29:16;
32:9

**paper (1)**
42:12

**papers (3)**
14:24;16:15;32:10

**Paragraph (2)**
11:1,3

**parent (3)**
30:2,8;31:11;32:24

**part (3)**
7:13;13:23;42:11

**parte (3)**
34:3;35:19;36:13

**participants (1)**
13:21

**particular (3)**
15:14;31:24;34:14

**particularly (1)**
23:24

**parties (26)**
14:19;16:17,20;
17:14,24;18:6,23;
21:19;24:3,19;25:19;
28:17;29:14;30:18;
31:18;33:11,21;
35:10,11,13;37:16;
42:11,22,24;43:8,18

**parties-in-interest (5)**
25:7;34:14,24;
40:18;43:11

**partner (1)**
7:10

**partners (1)**
15:23

**party (7)**
18:18,19;24:20;
31:15,17;33:3;42:9

**party's (2)**
29:16,17

**past (1)**
37:25

**path (1)**
24:14

**PAUL (1)**

In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020(MG)
May 31, 2012

5:16
**pay (7)**
8:22;9:17,21;10:5,
18,24;31:24
**payment (7)**
8:7,8,24;20:19,20;
29:7,7
**payments (1)**
9:14
**PC (1)**
5:2
**pending (1)**
16:24
**people (4)**
14:21,24;36:14;
44:13
**percent (2)**
9:15;10:2
**perform (1)**
13:22
**performance (1)**
20:21
**perhaps (2)**
16:5;37:3
**period (4)**
23:24;24:18,25;
25:14
**permit (2)**
17:24;23:16
**perspective (1)**
36:20
**petition (3)**
8:10;19:19,20
**phone (1)**
43:5
**place (3)**
31:10;33:7;37:5
**places (1)**
29:15
**plan (6)**
30:7;31:8,15;
32:20;33:6,22
**planning (2)**
28:16;38:25
**plans (2)**
38:22;39:12
**plate (1)**
19:14
**players (1)**
19:6
**PLC (1)**
6:3
**pleadings (4)**
16:20;17:25;41:6,
10
**Please (2)**
7:2;23:20
**pm (4)**
27:1,2;36:12;46:17
**point (13)**
9:23;10:1;20:6;
22:20,21;26:5;27:15,
24;30:12;31:3;37:25;

39:20;44:5
**points (1)**
38:14
**portfolio (2)**
30:3,4
**position (2)**
33:20;39:10
**positions (2)**
26:2;41:12
**possibility (1)**
32:19
**possible (3)**
24:18;26:6;34:25
**possibly (2)**
15:24;35:9
**post-petition (1)**
10:17
**potential (1)**
29:11
**pre- (1)**
37:3
**precluded (1)**
15:4
**predict (1)**
28:18
**preemptive (1)**
30:14
**prema (1)**
30:13
**pre-marked (1)**
18:17
**premature (1)**
28:17
**prematurely (1)**
41:14
**prepare (1)**
27:10
**prepared (9)**
8:21;28:15;33:8,
14,15,16;34:2;35:24;
36:3
**preparing (2)**
38:19;39:3
**pre-petition (4)**
20:20,20;31:10;
32:21
**present (3)**
8:23;16:17;26:3
**presentations (1)**
7:18
**presented (2)**
31:5;33:22
**preserved (1)**
45:20
**pressure (1)**
25:16
**pretend (1)**
35:22
**pretty (4)**
15:18;43:22,23;
44:5
**price (2)**
30:5,10

**prior (3)**
15:15;26:9;33:25
**proactive (1)**
46:8
**probably (5)**
28:14;31:5;33:3;
35:10;45:1
**procedure (2)**
28:8;34:6
**procedures (8)**
8:7;10:23;19:17;
20:18;21:8;24:13;
30:23;39:22
**proceed (6)**
7:15;31:8;33:9;
34:3;35:7;36:18
**proceeding (1)**
21:13
**proceedings (3)**
8:2;15:9;46:17
**process (9)**
13:4,10,21;14:10;
24:5;29:12,15;31:2;
39:11
**producing (1)**
13:8
**production (1)**
33:19
**professionals (1)**
13:6
**proffers (1)**
22:7
**progressing (1)**
13:14
**prohibiting (1)**
8:5
**projected (1)**
29:17
**promptly (3)**
27:6;34:2;42:25
**properly (1)**
22:16
**proposal (1)**
32:25
**propose (1)**
33:1
**Proposed (11)**
4:13;7:6;10:24;
11:25;15:14;19:7;
20:13;29:11;31:12;
32:14,18
**proposing (2)**
8:16;32:20
**proprietary (1)**
44:10
**protection (1)**
12:4
**protective (1)**
16:13
**provide (8)**
7:11;9:22;13:16;
23:5;27:25;35:10;
39:6;41:19

**provided (6)**
11:10;18:12;24:15;
28:10;33:15;43:16
**provider (4)**
8:23;9:1,22,25
**providers (2)**
8:9,12
**provides (3)**
10:15;39:22;45:20
**providing (1)**
39:3
**provision (1)**
46:3
**public (1)**
14:13
**publication (1)**
44:4
**publicly (2)**
32:22;44:11
**pull (1)**
9:13
**purchase (1)**
30:5
**purchaser (2)**
19:7;29:11
**purported (1)**
22:14
**purpose (1)**
14:12
**pursued (1)**
34:2
**push (1)**
20:7
**pushing (1)**
35:3
**put (7)**
10:24;17:16;20:10;
31:9;33:20;39:10;
45:5
**putting (1)**
24:11

**Q**

**quick (1)**
37:20
**quickly (3)**
13:17;31:8;36:5
**quite (5)**
18:2;31:17,19;
37:25;44:1
**quote (1)**
38:12

**R**

**RACHAEL (1)**
4:21
**raise (3)**
41:25;42:3;44:17
**rapid (3)**
12:21;13:15;34:25
**rare (1)**

18:1
**rarely (1)**
15:17
**rather (1)**
7:14
**RAY (1)**
4:8
**react (1)**
35:12
**reacting (1)**
30:14
**reaction (3)**
29:17,19;35:7
**read (6)**
7:23;31:20,21;
32:11;34:19;45:2
**reading (2)**
39:18;40:19
**reality (1)**
29:6
**realize (1)**
14:24
**really (7)**
11:8;17:10;26:14;
29:5;34:24;38:10;
44:7
**reason (4)**
15:23;25:1,8;46:6
**reasonable (1)**
10:3
**recall (1)**
35:5
**receive (1)**
10:12
**received (2)**
11:9;15:2
**recipient (1)**
35:19
**record (2)**
38:14;42:15
**recovery (2)**
29:18,20
**redaction (1)**
44:7
**redundant (1)**
41:5
**referring (1)**
14:7
**reflect (1)**
11:16
**reflects (1)**
9:15
**refusing (1)**
8:6
**regarding (3)**
13:3;15:13,22
**regular (1)**
13:18
**regulatory (1)**
20:21
**reimbursements (1)**
30:24
**relates (1)**

12-12020-mg   Doc 214   Filed 06/05/12   Entered 06/05/12 10:48:01   Main Document
In the Matter of:                                  Pg 56 of 58                        Case No. 12-12020(MG)
RESIDENTIAL CAPITAL, LLC, et al.                                                      May 31, 2012

29:8
**release (5)**
  30:8;31:15,17,22;
  32:8
**releases (2)**
  32:2;39:15
**relevant (3)**
  23:2;32:23;35:11
**relief (5)**
  12:6;22:5,23;
  35:21;44:2
**relies (1)**
  22:5
**rely (1)**
  22:14
**remains (1)**
  23:4
**remember (2)**
  45:14,24
**remit (2)**
  9:1,18
**renew (1)**
  45:7
**reorganization (4)**
  24:5;30:10;31:8,15
**repeat (1)**
  16:22
**replies (1)**
  16:13
**reply (1)**
  17:12
**reporter (1)**
  18:16
**representation (1)**
  17:4
**representatives (1)**
  25:25
**representing (2)**
  35:3;41:2
**represents (1)**
  8:18
**request (5)**
  9:25;10:3;11:8;
  17:6;19:3
**requested (3)**
  12:7;13:9,11
**requesting (1)**
  22:23
**requests (3)**
  8:8;28:11;34:9
**require (2)**
  18:10;25:4
**required (8)**
  10:7;18:8,22,23;
  21:24;24:25;31:25;
  34:23
**requires (5)**
  17:21,21;22:10;
  29:6;44:7
**requiring (1)**
  18:10
**requisite (1)**
  21:18

**ResCap (1)**
  14:2
**reschedule (2)**
  17:16;19:24
**reserves (1)**
  35:13
**Residential (1)**
  7:3
**resolution (3)**
  8:8;25:10;31:12
**resolvable (1)**
  20:9
**resolve (12)**
  17:1,5;23:3;25:7;
  42:8,9,23;43:2,5,8,
  12;44:14
**resolved (3)**
  11:10;17:2;36:5
**respect (9)**
  11:20;12:4,9;
  18:15;26:7;28:6,11;
  43:21;46:13
**respects (1)**
  24:6
**respond (2)**
  26:13;27:19
**responding (1)**
  18:19
**response (6)**
  17:3;26:3,9;37:2;
  38:15;46:4
**responses (3)**
  26:19;27:8;40:5
**responsibilities (2)**
  23:23;24:1
**responsibility (1)**
  30:15
**responsive (1)**
  16:20
**rest (2)**
  36:7;37:4
**restructuring (1)**
  24:4
**result (1)**
  33:5
**retail (1)**
  8:13
**retained (4)**
  11:25;12:22,25;
  13:1
**revealed (1)**
  44:11
**review (6)**
  7:24,25;13:8;
  16:14;17:11;33:4
**reviewed (1)**
  7:23
**right (17)**
  7:2,11;12:11;
  15:10;19:21;21:5,6;
  29:4,19;30:20;35:14;
  37:13;43:5,6;46:1,2,
  11

**rights (3)**
  12:3;13:22;45:19
**rigorously (1)**
  44:1
**RINGER (1)**
  4:21
**road (1)**
  39:16
**role (3)**
  23:21,23;40:23
**roll (1)**
  27:12
**roughly (2)**
  8:13;11:16
**round (1)**
  32:13
**Rules (1)**
  17:22
**run (1)**
  45:6

**S**

**sale (10)**
  13:4,23;19:17;
  21:8;24:13;28:8,25;
  30:1,23;31:7
**sales (1)**
  29:1
**same (6)**
  25:20;40:15,15,19,
  24;41:6
**SANDLER (1)**
  5:2
**satisfied (2)**
  11:6;12:6
**saw (2)**
  21:15;45:2
**schedule (15)**
  13:11;18:9;20:15;
  21:21;24:15;25:10,
  19;28:2;32:17;34:17,
  22;35:4;37:20;42:13;
  44:22
**scheduled (10)**
  13:13;16:4,6;
  21:14;23:11;25:22;
  37:3,4,15,18
**scheduling (1)**
  18:14
**SCHROCK (1)**
  4:8
**scrutinize (1)**
  44:9
**seal (2)**
  43:25;44:1
**sealed (2)**
  44:6,8
**sealing (1)**
  44:3
**seated (1)**
  7:2
**second (4)**

  14:3;15:3;31:4;
  36:5
**Section (1)**
  43:25
**securitization (1)**
  15:13
**seeing (1)**
  31:5
**seek (1)**
  32:10
**seeking (2)**
  42:9;44:2
**seeks (1)**
  22:5
**seem (1)**
  45:15
**seems (4)**
  10:9;34:12,20;
  38:10
**sees (1)**
  23:17
**segregated (2)**
  8:17;11:17
**sense (1)**
  23:22
**sensitive (1)**
  18:6
**sent (1)**
  23:12
**sentence (1)**
  11:5
**separate (2)**
  9:10;28:7
**seriously (1)**
  30:15
**serve (6)**
  21:18;35:8,24;
  36:1,3,8
**served (1)**
  36:10
**serves (1)**
  40:22
**service (2)**
  8:6;14:2
**services (3)**
  9:22;10:17;20:18
**servicing (9)**
  13:21;14:11;20:22,
  24,25;21:11,12;
  23:10;38:21
**set (4)**
  9:23;17:18;36:4;
  46:1
**setoff (6)**
  44:25;45:15,19,23;
  46:1,2
**sets (1)**
  22:12
**set's (1)**
  32:5
**settlement (5)**
  16:25;31:10,13;
  32:25;35:8

**settlements (2)**
  15:14;31:9
**seventeen (1)**
  38:6
**several (4)**
  12:25;16:2;30:15;
  38:1
**shaking (1)**
  19:13
**share (7)**
  9:2;10:6,13;33:15;
  34:13,15;41:4
**shared (2)**
  20:18;34:11
**SHEARMAN (1)**
  5:19
**short (2)**
  23:24;34:17
**shortening (1)**
  21:1
**side (1)**
  24:11
**SIDLEY (1)**
  6:11
**sight (1)**
  39:21
**sign (1)**
  43:24
**significance (1)**
  33:10
**significant (9)**
  23:25;28:19,23;
  30:5,18;31:23;32:23,
  25;41:7
**signing (1)**
  43:19
**simply (2)**
  17:25;30:9
**simultaneously (1)**
  29:2
**single (2)**
  9:6;10:5
**sit (1)**
  39:3
**site (2)**
  13:7;44:4
**sitting (1)**
  7:11
**situation (1)**
  24:6
**situations (1)**
  41:11
**six (1)**
  40:19
**SKADDEN (2)**
  6:2;36:25
**skim (1)**
  21:15
**skip (2)**
  7:14,14
**skipped (1)**
  23:10
**SLATE (1)**

12-12020-mg    Doc 214    Filed 06/05/12    Entered 06/05/12 10:48:01    Main Document
Pg 57 of 58
In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020(MG)
May 31, 2012

6:2
**smaller (1)**
34:8
**SMITH (1)**
5:10
**sold (2)**
28:24;29:2
**sometime (2)**
13:12;26:18
**Sometimes (2)**
16:17;25:17
**sorry (3)**
11:2;20:24;21:12
**sort (1)**
35:4
**SOSNICK (1)**
5:24
**sounds (1)**
43:13
**South (1)**
6:13
**Southern (1)**
44:21
**SPARLING (1)**
4:20
**specially (1)**
17:18
**specific (1)**
15:1
**specifically (1)**
37:14
**spoken (1)**
16:3
**Square (1)**
6:5
**squeezed (1)**
17:13
**stage (2)**
23:19;31:4
**stakes (1)**
30:18
**standalone (1)**
30:7
**standpoint (1)**
32:14
**start (1)**
14:21
**started (2)**
13:7;21:15
**starts (1)**
36:6
**state (1)**
45:20
**STATES (5)**
6:20;44:20,24;
45:7,25
**status (6)**
7:9,13;8:2;12:15;
32:13;43:15
**stay (3)**
14:15;15:4,8
**STEPHEN (1)**
4:7

**STERLING (1)**
5:19
**STEVEN (1)**
4:20
**still (3)**
37:19;39:15;40:1
**stop (1)**
18:25
**stopped (1)**
43:7
**stranger (1)**
35:2
**strategy (1)**
30:11
**Street (3)**
5:12;6:13,22
**stripping (2)**
15:3,5
**structure (1)**
29:16
**sub-account (2)**
9:9;10:8
**submissions (1)**
18:16
**submit (2)**
22:22;26:19
**submitted (1)**
18:11
**submitting (1)**
26:9
**subpoena (2)**
35:19;36:9
**subpoenas (2)**
34:9;35:14
**subsequently (1)**
20:14
**sub-servicing (1)**
21:12
**substantial (2)**
30:1;45:15
**substantially (1)**
28:23
**sufficiently (1)**
42:18
**suggest (1)**
35:6
**Suite (1)**
5:13
**sum (1)**
8:17
**summons (1)**
21:18
**supplemental (3)**
14:11;20:25;41:10
**support (2)**
22:23;33:6
**supported (2)**
22:6,16
**supportive (2)**
33:12;39:11
**sure (7)**
14:17;17:1;23:3;
29:21;37:7;39:19;

43:11
**surprise (1)**
27:16
**surprised (1)**
34:19
**surrounding (1)**
31:16
**suspect (1)**
15:21
**system (2)**
9:9;10:8

**T**

**tackled (1)**
24:12
**tackling (1)**
24:7
**talk (1)**
15:25
**talking (1)**
14:17
**taxes (1)**
20:21
**telephone (4)**
13:25;15:16;42:10,
13
**TELEPHONICALLY (3)**
5:16;6:16,17
**ten (1)**
8:25
**tended (1)**
43:6
**tentatively (3)**
21:14;28:12;37:4
**term (4)**
24:1,2,12;25:20
**terms (2)**
25:21;30:14
**testimony (1)**
18:11
**Thanks (1)**
46:11
**that'll (1)**
18:15
**third (1)**
14:19
**third- (2)**
31:14,16
**third-party (4)**
31:21;32:1,7;39:14
**thirty (1)**
8:11
**though (2)**
19:19;38:6
**thought (5)**
11:22;20:6,8;24:8;
42:18
**thousand (2)**
11:16,17
**three (1)**
28:7
**Times (5)**

6:5;7:19;30:15;
40:20;43:7
**timetable (2)**
28:10;34:1
**timing (3)**
24:14;28:25;29:9
**today (7)**
8:4;23:13;24:3;
27:20;31:16;36:21;
44:18
**today's (1)**
33:25
**together (2)**
38:1;39:12
**told (1)**
33:13
**tomorrow (6)**
8:21;34:3;35:25;
36:1,4,8
**tough (1)**
39:16
**toward (1)**
33:8
**track (1)**
34:21
**transaction (5)**
29:8,17,18;30:5,6
**transactions (8)**
28:9;29:3,9,22,24,
25;31:7;32:22
**transcript (2)**
45:2,14
**Travis (1)**
5:12
**tried (3)**
14:16;16:17;20:1
**trilogy (1)**
32:5
**true (1)**
34:23
**trustee (2)**
15:17;35:9
**trustees (3)**
13:25;15:12,16
**trusts (1)**
15:13
**try (6)**
14:17,20;19:5;
24:18,19;32:19
**trying (9)**
13:10,16;14:25;
16:6;19:24;33:23;
39:1;40:6;46:9
**Tuesday (3)**
36:4,7;46:13
**tune (1)**
10:2
**turning (2)**
12:14;25:20
**turns (1)**
19:9
**twenty-five (1)**
25:4

**twenty-one (1)**
25:4
**twice (1)**
42:17
**two (7)**
7:17,19;10:25;
17:6,12;28:8;44:4
**TX (1)**
5:14
**Typically (5)**
18:9,14;42:21,23;
43:8

**U**

**ultimate (1)**
30:10
**ultimately (2)**
25:5;30:6;33:5
**unable (1)**
42:8
**uncontested (1)**
7:8
**under (7)**
8:16;17:22;32:6;
43:25;44:1,8;45:20
**understands (2)**
32:17,18
**undertake (2)**
32:21;38:17
**unfortunately (1)**
19:9
**unilaterally (3)**
16:18;17:7;25:11
**unique (1)**
18:18
**UNITED (5)**
6:20;44:20,24;
45:7,25
**unless (3)**
17:16,24;41:22
**unlikely (1)**
10:9
**Unsecured (5)**
4:14;15:3;29:13,
19;33:6
**up (5)**
7:25;24:8;25:19;
29:12;39:23
**upon (3)**
24:16;29:7;30:6
**use (1)**
11:23
**used (2)**
34:4;42:16
**useful (1)**
23:16
**uses (2)**
18:18,19
**usual (1)**
14:18
**usually (10)**
17:4;18:2;42:13,

12-12020-mg    Doc 214    Filed 06/05/12    Entered 06/05/12 10:48:01    Main Document
Pg 58 of 58

In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020(MG)
May 31, 2012

13,14;43:1,2,23,23;
44:12
**utilities (2)**
8:14;9:11
**utility (18)**
7:8,16;8:1,5,9,11,
19,23,23;9:1,22,22,
24;10:5,8,12;11:20;
12:10
**utilize (1)**
33:4

---

**V**

**vagabond (1)**
38:3
**valid (2)**
46:1,2
**value (1)**
29:22
**variety (1)**
31:9
**various (2)**
19:4;37:15
**vendor (1)**
9:14
**versa (1)**
16:5
**vice (1)**
16:5
**view (5)**
23:21;26:11;30:12;
41:5;45:25
**views (1)**
30:17
**virtually (1)**
17:22

---

**W**

**wages (1)**
20:20
**wait (2)**
27:7;46:4
**waiting (1)**
25:17
**wants (2)**
34:21;44:17
**way (7)**
14:12;20:14;31:1;
33:3,9;35:7;36:18
**web (1)**
44:4
**Wednesday (3)**
25:23;28:5;36:6
**week (6)**
13:6,12,13;17:11;
28:17;36:7
**weight (1)**
22:15
**welcome (2)**
26:23;39:2
**well-accepted (1)**

43:23
**well-developed (1)**
30:16
**well-regarded (1)**
41:8
**what's (7)**
10:15,18,19,24;
16:7;26:11;43:15
**whatsoever (1)**
22:6
**Whereupon (1)**
46:17
**whole (1)**
7:20
**wholesale (1)**
44:6
**who've (1)**
31:23
**wide (1)**
31:10
**willing (4)**
17:2,4;26:4,18
**wish (5)**
11:19;12:9;22:24;
36:23;46:12
**wishes (2)**
43:24;45:7
**withdrawn (1)**
9:21
**within (2)**
8:25;28:1
**without (3)**
25:17;35:15;43:24
**witness (1)**
33:20
**witnesses (1)**
39:6
**work (16)**
14:5;24:19;25:5;
26:12;28:2;29:9,10,
13;38:19,22,23,24;
39:8;43:12;46:5,9
**workable (1)**
25:19
**worked (1)**
9:13
**working (3)**
12:23;13:14;37:19
**Wow (1)**
38:10
**writing (2)**
18:11;42:21
**written (1)**
44:3

---

**X**

**Xcel (1)**
11:9

---

**Y**

**years (2)**

38:6;42:17
**yesterday (4)**
16:21;20:13;38:11;
40:3
**yield (1)**
33:23
**York (7)**
4:5,16;5:5,22;6:6,
23;44:21

---

**Z**

**ZIMAN (11)**
6:8;36:24,24;37:9,
25;38:2,3,6,9,11,12

---

**1**

**1 (1)**
6:13
**1.2 (1)**
8:13
**10 (1)**
36:5
**10007 (1)**
6:23
**10020 (1)**
5:5
**10022 (2)**
4:5;5:22
**10036 (2)**
4:16;6:6
**1007 (1)**
31:20
**107b (2)**
43:25;44:8
**11 (1)**
8:13
**1177 (1)**
4:15
**11th (5)**
40:5,11;45:8,9,11
**12-12020 (1)**
7:3
**1251 (1)**
5:4
**12th (21)**
16:1,5,7;18:21;
19:4,11,24;20:1,11,
16;21:5;23:1,2,12;
25:21;26:2,7;27:22,
22;39:23;40:4
**13 (3)**
14:1;15:2,5
**16th (1)**
12:20
**18th (18)**
16:1,5;18:21;
19:11,18,24;20:1,8;
21:7,14,20;23:2;
28:6;30:21;37:10;
39:25;45:5,10

---

**2**

**2004 (4)**
33:9;34:9;37:7;
46:14
**29th (1)**
13:6

---

**3**

**363 (1)**
30:7
**3rd (1)**
6:22

---

**4**

**4 (4)**
11:1,3;36:11;42:13
**4:00 (1)**
46:17
**46 (1)**
23:11
**4th (1)**
36:12

---

**5**

**5 (1)**
42:14
**570 (1)**
11:17
**570,000 (1)**
8:18
**590 (1)**
11:16
**599 (1)**
5:21
**5th (6)**
26:3;36:5,15;
39:24;40:1;45:9

---

**6**

**6 (2)**
27:1,2
**600 (1)**
5:12
**601 (1)**
4:4
**60603 (1)**
6:14
**6th (7)**
13:13;25:23;26:6,
10,19;27:3,13

---

**7**

**7000 (1)**
5:13
**77002 (1)**
5:14

---

**8**

**86 (1)**
6:22

---