**Hearing Date and Time: June 12, 2012 at 10:00 a.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Proposed Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, et al., | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

---

**OMNIBUS RESPONSE AND RESERVATION OF RIGHTS OF**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**TO CERTAIN OF THE DEBTORS' FIRST DAY MOTIONS**

**TABLE OF CONTENTS**

**Page**

BACKGROUND ............................................................................................................... 3

OMNIBUS RESPONSE ................................................................................................... 5

    A.     Shared Services Motion ........................................................................... 5

    B.     Employee Wage Motion............................................................................ 7

    C.     Cash Management Motion ........................................................................ 9

    D.     Servicing Motions .................................................................................. 10

    E.     Tax Motion .............................................................................................. 14

RESERVATION OF RIGHTS ....................................................................................... 15

**Hearing Date and Time: June 12, 2012 at 10:00 a.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Proposed Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, <u>et</u> <u>al.</u>, | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

------------------------------------------------------------ x

**OMNIBUS RESPONSE AND RESERVATION OF RIGHTS OF**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
<u>**TO CERTAIN OF THE DEBTORS' FIRST DAY MOTIONS**</u>

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-
captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby files this
omnibus response and reservation of rights (the "**Omnibus Response**") to the (i) Debtors'
motion for an order authorizing entry into a shared services agreement (the "**Shared Services
Motion**") [Dkt. No. 41]; (ii) Debtors' motion for an order authorizing, among other things,
payment of certain wages and benefits (the "**Employee Wage Motion**") [Dkt. No. 43]; (iii)
Debtors' motion for an order authorizing, among other things, continued use of their existing
cash management system (the "**Cash Management Motion**") [Dkt. No.16]; (iv) Debtors'

motion for an order authorizing the Debtors to continue servicing and related functions for loans owned by Fannie Mae, Freddie Mac and securitizations guaranteed by Ginnie Mae in the ordinary course (the "**GA Servicing Motion**") [Dkt. No. 57]; (v) Debtors' motion for an order authorizing the Debtors to continue servicing and related functions for loans owned by non-Governmental Associations in the ordinary course (the "**Non-GA Servicing Motion**") [Dkt. No. 46]; (vi) Debtors' motion for an order seeking to clarify certain interim servicing-related relief under the GA Servicing Motion and Non-GA Servicing Motion (the "**Supplemental Servicing Motion**" [Dkt. No. 181] and, together with the GA Servicing Motion and the Non-GA Servicing Motion, the "**Servicing Motions**"); and (vii) Debtors' motion for an order seeking to pay certain taxes, regulatory fees, and obligations to AFI (the "**Tax Motion**" and, together with the Cash Management Motion, Employee Wage Motion and Servicing Motions, collectively, the "**First Day Motions**").  In support of the Omnibus Response, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Approximately three weeks ago, the Committee was appointed by the Office of the United States Trustee.  In the short time since being appointed, the Committee has analyzed the Debtors' numerous first day motions, which seek a wide variety of relief relating to the continuance of the Debtors' business.  By this Omnibus Response, the Committee addresses the First Day Motions that are set to be heard at an omnibus hearing on June 12, 2012.[1]  The First Day Motions to be heard on June 12, 2012, include the motions seeking authority to (i) enter into a shared services agreement with their parent entity, Ally Financial, Inc. ("**AFI**"); (ii) pay employee wages and benefits and continue certain employee programs postpetition; (iii) continue

---

[1] The Committee is also responding to the recently filed the Supplemental Servicing Motion, which is scheduled to be heard on June 12, 2012.

2

using their cash management system with modifications; (iv) continue primary and master servicing activities; and (v) pay certain taxes and regulatory fees.

2.       Upon the Committee's review of the First Day Motions, the Committee identified a number of issues with the relief sought and found that the motions did not contain sufficient information on certain aspects of the relief requested for the Committee (and other parties in interest) to make an informed decision as to whether the proposed relief is warranted and appropriate.  Accordingly, the Committee commenced discussions with the Debtors and requested additional information in an attempt to address the Committee's concerns.  After significant discussions with the Debtors and a review of diligence materials received, the Committee was able to negotiate certain modifications to the relief being sought and reach a consensual resolution of many of the Committee's issues.

3.       There are, however, a few discrete issues that remain outstanding with certain of the First Day Motions as set forth in more detail below.  The Committee submits this Omnibus Response to (i) highlight for the Court the negotiated changes made to the orders for the First Day Motions at the request of the Committee, (ii) set forth on the record a number of clarifications on discrete issues in respect to the relief sought, and (iii) request that the final orders on certain of the First Day Motions be entered either with the Committee's proposed modifications or reserving certain issues for determination at a later hearing.

**BACKGROUND**

4.       Debtor Residential Capital, LLC ("**ResCap**") is the direct or indirect corporate parent of each of the other Debtors.  AFI is the corporate parent of the intermediate non-Debtor company that owns 100% of ResCap's equity, GMAC Mortgage Group, LLC. AFI has been partially owned by Cerberus since November, 2006.

3

5.    The Debtors are among the largest servicers and originators of residential mortgage loans in the United States. As of March 31, 2012, they reported approximately $15.7 billion in total assets and approximately $15.3 billion in total liabilities. As of the Petition Date, the Debtors reported $612.5 million in unrestricted cash and $275.5 million in restricted cash, with net revenues of $426,657,000 and net income of $113,016,000 for the three months ended March 31, 2012.

6.    On May 14, 2012 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 (collectively, the "**Chapter 11 Cases**"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.    As set forth in the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, Llc, In Support Of Chapter 11 Petitions and First Day Pleadings, the stated purpose of these Chapter 11 Cases is to (i) facilitate an orderly sale of the Debtors' most valuable assets, (ii) settle the Debtors' claims with their parent AFI, (iii) resolve the Debtors' legacy liabilities and (iv) complete an orderly wind-down of their remaining assets. First Day Affidavit at ¶ 105.

8.    To accomplish these goals on the highly compressed six-month schedule, the Debtors have articulated an intention to: (i) obtain Court approval of the RMBS Trust Settlement Agreement in July; (ii) obtain Court approval of the AFI Settlement Agreement and Junior Secured Notes' Plan Settlement Agreement in August; (iii) run a full marketing process for two significant sale transactions (i.e., the AFI Sale and the Nationstar Sale) and obtain Court approval of such sales in October; and (iv) obtain confirmation of a Chapter 11 Plan, including

4

estate and non-consensual third-party releases for the benefit of AFI, with such plan to become effective before the end of the year.

9.    On the Petition Date, the Debtors filed the First Day Motions. On May 31, 2012, the Debtors filed the Supplemental Servicing Motion.

10.    On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Committee.[2]  No trustee or examiner has been appointed in these Chapter 11 Cases.

11.    Prior to the appointment of the Committee, the Court entered interim orders with respect to all First Day Motions except for the Supplemental Servicing Motion.

## OMNIBUS RESPONSE

12.    The Committee is statutorily authorized and mandated to operate as a watchdog over the Debtors' business affairs and expenditures. *See* 11 U.S.C. § 1103(c)(3). Indeed, the Committee is required to oversee the complex and interlocking contractual and business relationships, including those between and among the Debtors and their non-Debtor parents and affiliates.  As set forth in more detail below, the Committee submits that, with respect to the specific issues addressed herein, this Court should enter final orders either with the Committee's proposed modifications or reserve certain issues for determination at a later hearing.

### *A.    Shared Services Motion*

13.    Prior to the Petition Date, the Debtors and their parent, AFI, entered into a comprehensive and integrated agreement to memorialize the provision of certain services

---

[2]  The members of the Committee are: (a) AIG Asset Management LLC, (b) Allstate Life Insurance Company, (c) the Bank of New York Mellon Trust Company, N.A., (d) Deutsche Bank Trust Company Americas, (e) Rowena L. Drennan, (f) Financial Guaranty Insurance Company, (g) MBIA Insurance Corporation, (h) U.S. Bank National Association, (i) Wilmington Trust, N.A.

between the parties relating to the Debtors' mortgage servicing business (the "**Shared Services
Agreement**").  Before this agreement, services were provided by both ResCap and AFI to each
other on an undocumented basis.

14.    The scope of the Shared Services Agreement is extensive, covering,
among other things, IT services, employee benefits administration, tax and audit services,
treasury and collateral management, risk management, supply chain management, government
and regulatory relations and compliance services, facilities management services, marketing
services, and capital markets services.  The agreement is also complex, as it includes (a) detailed
summaries for all 31 different types of services provided by AFI to ResCap and the 20 types of
services provided by ResCap to AFI, including details of numerous planned projects and the
costs associated with each, and (b) detailed pricing information and breakdowns for the services
provided by AFI and ResCap.  Under the agreement, the anticipated aggregate monthly cost to
ResCap for the services received from AFI is $10.2 million, and the anticipated cost for services
provided by ResCap to AFI is $4.4 million.

15.    The Committee reviewed the Shared Services Agreement with a focus on
determining whether its terms are balanced and reasonable for the Debtors.  Absent from the
description of the Shared Services Agreement in the Shared Services Motion was any material
discussion evidencing that the agreement was negotiated at arm's length and in good faith,
including how the specific costs of each of the services were developed, how the intercompany
activity was calculated and charged historically, and the business justification for obtaining these
services through AFI, as opposed to a third-party service provider.  Such information was of
particular concern to the Committee, since the agreement was entered into between the Debtors
and their corporate parent, AFI, immediately prior to commencing these cases.

16.     After numerous discussions with the Debtors and a review of the historical costs and payment structure associated with the prior unwritten arrangement between ResCap and AFI, the Committee believes that, based on the information provided, the terms of the Shared Services Agreement are not detrimental to the estate.  The Committee has negotiated with the Debtors certain reporting and notice provisions be added to the final order, providing the Committee with notice of any material amendments or modifications to the agreement, or proposed assignments of the agreement.  With such modifications, the Committee has no objection to entry of the Shared Servicing Motion.

### B.    Employee Wage Motion

17.     Following the Committee's review of the Employee Wage Motion and a number of discussions with the Debtors' professionals, the Committee identified three issues with the relief requested.

18.     First, the Debtors sought authority to continue a variety of employee incentive programs, including the AFI Long Term Equity Compensation Plan (the "**AFI LTECIP**"), and the ResCap Annual Plan (the "**ResCap AIP**" and, together with the AFI LTECIP, the "**Incentive Programs**").  The AFI LTECIP is a prepetition program under which eligible employees receive restricted grants of AFI common stock based on AFI's profitability and success.[3]  The ResCap AIP is a prepetition program that provides eligible employees with a cash reward if they meet annual goals established by management. Payments under both Incentive Programs are made during the first quarter of the year, with the next payments due in

---

[3] Due to TARP restrictions (imposed as a result of AFI's prior receipt of TARP funding), a portion of certain employees' equity compensation vests over a period of three years.  The Debtors note in the Employee Wage Motion that "[i]n connection with any sale of the Debtors' business during the Chapter 11 proceeding, Employee awards under the AFI LTECIP may vest as a result of their termination by the Debtors as a result of such sale. As of the Petition Date, the value of all AFI LTECIP awards to Employees that would vest upon a sale, and be paid on a deferred basis, is approximately $17.6 million." Employee Wage Motion ¶ 26 n.14.

7

the first quarter of 2013. The material terms of the Incentive Programs (including the identity and number of participants, amounts to be paid to participants, and relative metrics) were not disclosed in the Employee Wage Motion, nor have they yet been provided to the members of the Committee.

19. At the request of the Committee, the Debtors provided the Committee's professionals with a confidential list of budgeted amounts under the Incentive Programs. Based on this data, payments under these programs could amount to significant estate dollars, with a large portion of these payments potentially made to insiders.

20. Given the potentially significant expenditures involved, these programs need to be closely examined, and authorizing the Debtors to continue these programs without further analysis or disclosure would be inappropriate. The Committee was concerned that the Debtors did not provide an adequate explanation or justification for their proposal to pay such significant amounts to participants under these programs, nor have they established that these programs are true incentive programs that comply with the requirements of section 503(c) of the Bankruptcy Code. Moreover, because payments will not be made under this program until the first quarter of 2013 at the earliest,[4] the Committee noted that there is no urgent need for a final determination on this aspect of the motion.

21. After discussions with the Debtors, the Debtors confirmed to the Committee that, pursuant to the Employee Wage Motion, they are not seeking this Court's authority to approve or make any payments under the Incentive Programs. Based upon the Debtors' representations and the reservations of rights set forth herein, the Committee does not object to the relief sought.

---

[4] The Debtors have informally represented to the Committee that they anticipate that a majority of these obligations will be assumed by the purchaser of the Debtors' servicing business.

22.     Second, in the Employee Wage Motion the Debtors seek authority to continue the prepetition ResCap Severance Program postpetition and make payments thereunder without court approval.  With regard to prepetition amounts owing under the ResCap Severance Program, the Debtors represented that the 15 employees for which these payments apply are all non-insiders.  Payments on account of the ResCap Severance Program going forward, however, could involve payments of millions of dollars.  The Committee therefore requested and the Debtors agreed that certain safeguards be included in the final order on the Employee Wage Motion, providing that the Debtors may not commit to make any severance payments in excess of eight weeks salary per employee or commit to pay amounts in the aggregate of $100,000 in one calendar month, without first providing the Committee with sufficient information to evaluate the propriety and legality of the proposed severance payments, and obtaining the Committee's consent to such payments.

23.     Third, the Employee Wage Motion seeks authority to make payments in excess of the $11,725 statutory cap contained in section 507(a)(4) of the Bankruptcy Code (the "**Priority Cap**") to an "insubstantial" number of employees in a "de minimis amount." To ensure transparency on the part of the Debtors, the Committee requested and the Debtors agreed to the inclusion of provisions in the final order providing the Committee with notice before any payments in excess of the cap are made.  The Committee reserves its right to object to payments in excess of the statutory cap if and when the Debtors seek to make such payments.

### C.     Cash Management Motion

24.     Like many of the Debtors' other first day motions, the Cash Management Motion has been the subject of extensive discussion and negotiation between the Debtors and the Committee.  As a result, the Committee's issues, including concerns about maintaining non-custodial bank accounts at Ally Bank and the permissibility of transfers to non-debtor affiliates,

have been resolved by the Debtors' agreement to close most of such accounts and agree to

restrict transfers to such affiliates.[5]   Accordingly, the Committee supports the relief sought under

the Cash Management Motion, including the Debtors' proposed waiver of the depository

requirements of section 345(b) of the Bankruptcy Code, pending confirmation from the Office of

the U.S. Trustee.

### D.    Servicing Motions

25.    Under the Servicing Motions, the Debtors seek broad relief to continue

their primary and master servicing activities for over 2.4 million residential mortgage loans in

the ordinary course.  These services may include, for any given mortgage loan:

- responding to homeowner inquiries, collecting mortgage payments and paying such amounts (net of fees) to mortgage owners (private label or Ginnie Mae guaranteed securitization trusts, Fannie Mae, Freddie Mac, Ally Bank, certain Debtors, and other whole loan purchasers) and third parties (taxing authorities and insurance providers); and

- if borrowers default on their obligations, funding advances for costs of third-party professionals, taxes, insurance, principal, and interest associated with the defaulted loan, engaging in loan modification programs, and foreclosing on the underlying real property.

Such relief has been split into three motions: (i) the Non-GA Servicing Motion; (ii) the GA

Servicing Motion and (iii) the Supplemental Servicing Motion.[6]

26.    The Committee is mindful that interruptions in the Debtors' business

could be costly to the estates in both the near term (through loss of customers) and the long term

(through downward adjustments to the purchase price in the proposed "platform" sale due to the

loss of various income streams).  For this reason, the Committee generally supports approval of

---

[5]  The Debtors represented that all non-custodial accounts at Ally Bank but one will be transferred to other banks. The Debtors have indicated that the final account is a cash collateral account which secures credit extensions made by Ally Bank to the Debtors and must remain at Ally Bank to comply with the requirements under Regulation W.

[6]  The Debtors' performance under a subservicing agreement with Ally Bank is the subject of yet another motion, although the Committee understands that the instant relief is intended to apply to the loans the Debtors subservice for Ally Bank, which include GA and Non-GA loans.

the Servicing Motions.  Nevertheless, the Committee is still negotiating certain notice, cap and reporting requirements in the final orders granting these motions and, as described below, the Committee objects to certain of the relief requested as unreasonable.[7]

*Non-GA Servicing Motion*

27.    Under the Non-GA Servicing Motion, the Debtors seek authority to continue servicing of loans owned by private investors, including private label securitizations.  In connection with the Debtors' authorized activities under the Non-GA Servicing Motion, the Committee requested that the Debtors provide it with periodic reporting and agree to reasonable caps and related consultation rights with respect to certain material expenditures and sales, as is common in cases of this size.  The Debtors and the Committee agreed to insert language in the proposed final order which addresses the Committee's concerns.  Based upon this agreement, the Committee does not object to the relief sought.

*GA Servicing Motion*

28.    Under the GA Motion, the Debtors seek authority to continue servicing activities for loans owned by Fannie Mae, Freddie Mac and securitization trusts guaranteed by Ginnie Mae.  While this motion contemplates relief similar to the Non-GA Servicing Motion, the Debtors also sought authority to provide numerous concessions to Fannie Mae and Freddie Mac postpetition that required further study and consultation with the Debtors.  Based on discussions with the Debtors, the concerns relating to such concessions have been allayed, leaving only two issues.

---

[7] The Committee has requested certain technical changes to the orders concerning the Servicing Motions, including a reservation of rights relating to the Debtors' performance under various consent orders and any related entitlement to contribution, and/or indemnification from AFI, which remain subject to negotiation and are not covered by this Objection.

29. First, the Committee is concerned with the Debtors proposal to continue to pay foreclosure timeline penalties (i.e., penalties that are assessed on a monthly basis if the Debtors fail to complete foreclosures on an expedited timeline mandated by Fannie Mae or Freddie Mac) as and when they come due under the corresponding guides. Even if arguably obligated to do so under prepetition agreements with such governmental associations, such payments could be made, similar to accommodation payments for critical vendors, subject to disgorgement if the corresponding GA exercises its termination rights prior to the sale. This approach could preserve any arguments as to the enforceability of such penalties, under such circumstances. The Committee is still discussing such approach with the Debtors.

30. Second, the Debtors seek to bestow on Freddie Mac preferential termination rights, which would allow Freddie Mac to terminate its servicing agreements on thirty days' notice (without requiring a motion to lift stay) if the Debtors fail to comply with certain performance metrics. The Committee has not yet been able to confirm whether all those performance metrics are reasonably achievable.

31. Other than these remaining issues, the Committee supports the proposed relief under the GA Servicing Motion.

*Supplemental Servicing Motion*

32. Under the Supplemental Servicing Motion, the Debtors seek clarification and/or expansion of relief sought under the previously filed motions, including clarifying the scope of permissible counterclaims (notwithstanding the automatic stay) in foreclosure or eviction proceedings, approving certain settlement procedures relating to such counterclaims, authorizing their foreclosure as servicer on senior loans where such action would eliminate their interests in junior loans, participating in loss mitigation programs and paying post-petition fees

12

and expenses of securitization trustees. The Committee supports granting the Debtors' relief

from the automatic stay to permit certain counterclaims, the most urgent of such relief. As for

the remainder of the proposed relief, the Committee is still working with the Debtors to reach an

acceptable resolution on certain issues and investigating whether other aspects of the relief

sought is appropriate.

33.    The Debtors have proposed settlement procedures which would allow the

Debtors to settle claims and counterclaims arising out of their foreclosure activities, as long such

settlements fell within certain ranges.[8] The Committee is currently working with the Debtors to

develop revised procedures based on the Debtors' historical dollar settlement ranges, certain

internal controls and other relevant information. Although the Debtors urge that simplicity is

needed in providing guidance to the numerous parties of varied sophistication negotiating such

settlements, to the extent that such settlements are material in the aggregate, guidelines based on

more than mere dollar thresholds may be appropriate.

34.    Likewise, the Committee is still considering the Debtors' proposed lifting

of the automatic stay to facilitate foreclosures in situations where the Debtors hold multiple

interests that may be in conflict: with respect to loans where there are senior and junior liens; the

Debtors service the senior debt; and the Debtors also have an ownership or servicing interest in

the junior debt. In light of the potential immediate negative impact of foreclosure on such junior

---

[8]    The Debtors sought authority to settle such claims, subject to the following limitations:

> Tier I (No Notice/No Court Approval): settlements involving the allowance of prepetition claims
> or cash payments of $50,000 or less are to be completed without further notice or motion;
>
> Tier II (After Notice to Committee/U.S. Trustee/DIP Lenders): settlements involving the
> allowance of prepetition claims or cash payments of between $50,000 and $100,000 are to be
> completed after expiration of a 7-day-advance notice period for the above notice parties (who have
> an opportunity object in writing), if no objection is received; and
>
> Court Approval: Settlements involving the allowance of prepetition claims or cash payments of
> more than $100,000 require further court approval.

interests, the Committee is conducting a cost-benefit analysis, weighing the loss of value (current and option) of the junior interests against the negative impact on the Debtors' senior servicing interests (delay of foreclosure and loss of servicing rights) to determine whether the proposed relief is the appropriate course of action. This process is underway and the Committee expects to have a position on such relief before the hearing on the motion.

35. In addition, the Committee is working with the Debtors to develop a loss mitigation program framework which would include periodic reporting, reasonable monthly caps (consistent with prepetition practice) and Committee consultation rights to the extent the Debtors would seek to exceed such caps. These discussions are ongoing.

36. Finally, the Committee requires additional information regarding proposed post-petition payments of fees and expenses to the securitization trustees. The Committee is working with the Debtors and the trustees on acceptable terms for interim relief, pending a final determination of this issue at the July omnibus hearing. To the extent that such fees and expenses are payable on an interim basis under the orders approving the Non-GA and GA Motions, such relief should be continued on an interim basis as well.

### E.    *Tax Motion*

37. The Debtors also filed the Tax Motion seeking, among other things, authorization to pay certain taxes, regulatory fees, and obligations to AFI pursuant to a Tax Sharing Agreement. The Committee initially had an objection to the Debtors' request to pay pre- and postpetition amounts under the Tax Sharing Agreement with AFI. Based on subsequent discussions with Debtors' counsel, however, the Committee understands that the Debtors are no longer seeking approval of any relief with respect to the Tax Sharing Agreement, and will not be paying the amounts due under the agreement on June 15, 2012. With such modifications, the Committee has no objection to the relief sought in the Tax Motion.

14

## RESERVATION OF RIGHTS

38.     The Committee expressly reserves its rights to supplement and amend this

Omnibus Response, seek discovery with respect to same, and introduce evidence at any hearing

relating to the First Day Motions or this Omnibus Response.

WHEREFORE, the Committee respectfully requests that the Court (i) either (a) enter the

final orders on the First Day Motions with the modifications as set forth herein, or (b) reserve a

determination on these issues until a later date, and (ii) grant such other and further relief as may

be just and proper.

Dated: New York, New York
        June 6, 2012


KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/  Kenneth H. Eckstein
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000


*Proposed Counsel for the Official*
*Committee of Unsecured Creditors*