Hearing Date: June 18, 2012
Hearing Time: 10:00 am

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                                    :
                                                          :   Chapter 11
                                                          :
   RESIDENTIAL CAPITAL, LLC, *et al.*,                    :   Case No. 12-12020 (MG)
                                                          :
                                                          :   Jointly Administered
                         Debtors.                         :
------------------------------------------------------------x

### OBJECTION OF THE UNITED STATES TRUSTEE
### TO DEBTORS' MOTION FOR APPROVAL OF
### SALE PROCEDURES, INCLUDING BREAK-UP FEE
### AND EXPENSE REIMBURSEMENT AND RELATED RELIEF

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), objects to the Debtors' motion pursuant to sections 105(a), 363, and 365 of the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 et seq and Federal Rules of Bankruptcy Procedure ("FRBP") 2002, 6004, 6006, 9007, 9008, and 9014 requesting approval of procedures relating to the sale of substantially all of its assets, including a break-up fee, bid procedures, notice provisions and related relief (the "Sale Procedures Motion").[1]

In support of this Objection (the "Objection"), the United States Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

In a motion filed on the first day of the case, the Debtors proposed a sale process that could potentially create obstacles to the participation by potential bidders other than those chosen

---

[1] The Objection relates only to the proposed sale procedures. Any sale arising from the proposed auction is subject to a further hearing, and is not before the Court at this time. The United States Trustee specifically reserves the right to object to any sale.

1

by the Debtors. These provisions include the debtors' agreement to pay a $72 million break-up fee plus up to a $10 million expense reimbursement, and the unnecessarily high minimum bid increment of $25 million alterable only with the consent of the stalking horse bidder. These agreements potentially could chill participation in the proposed auction sale. In addition, as discussed below, without further information it is unclear whether the proposed sale terms may violate the consumer privacy and credit protection provisions of sections 363(b)(1) and 363(o) of the Bankruptcy Code, and if so, whether there has been adequate notice to affected parties.

## FACTS

**A.     General Background**

1. Residential Capital, LLC and fifty of its affiliates (collectively "the Debtors")[2] commenced voluntary cases under Chapter 11 of the Bankruptcy Code on May 14, 2012.

2. By order entered on May 14, 2012, the Court authorized joint administration of the cases. *ECF Doc No. 59*.

3. The Debtors' primary and most valuable business operations consist of servicing mortgage loans for investors, including loans originated by the Debtors, Ally Bank (f/k/a GMAC Bank), and other third parties. As of March 31, 2012, the Debtors were servicing

---

[2] The Debtors in Case Nos. 12-12019-12071 (MG) are: Residential Funding Company, LLC; Residential Capital, LLC; Ditech, LLC; DOA Holding Properties, LLC; DOA Properties IX (Lots-Other), LLC; EPRE LLC; Equity Investment I, LLC; ETS of Virginia, Inc.; ETS of Washington, Inc.; Executive Trustee Services, LLC; GMAC Model Home Finance I, LLC; GMAC Mortgage USA Corporation; GMAC Mortgage, LLC; GMAC Residential Holding Company, LLC; GMACM Borrower LLC; GMACR Mortgage Products, LLC; GMAC-RFC Holding Company, LLC; GMAC REO, LLC; GMACRH Settlement Services, LLC; HFN REO SUB II, LLC; Home Connects Lending Services, LLC; Homecomings Financial, LLC; Homecomings Financial Real Estate Holdings, LLC; Ladue Associates, Inc.; Passive Asset Transactions, LLC; PATI PATI B, LLC; PATI Real Estate Holdings, LLC; RAHI A, LLC; RAHI B, LLC; RAHI Real Estate Holdings, LLC; RCSFJV2004, LLC; Residential Accredit Loans, Inc.; Residential Asset Mortgage Products, Inc.; Residential Asset Securities Corporation; Residential Consumer Services of Alabama, LLC; Residential Consumer Services of Ohio, LLC; Residential Consumer Services of Texas, LLC; Residential Consumer Services, LLC;; Residential Funding Mortgage Exchange, LLC; Residential Funding Mortgage Securities I, Inc.; Residential Funding Mortgage Securities II, Inc.; Residential Funding Real Estate Holdings, LLC; Residential Mortgage Real Estate Holdings, LLC; RFC Asset Holdings II, LLC; RFC Asset Management, LLC; RFC Borrower LLC; RFC Construction Funding, LLC; RFC REO, LLC; RFC SFJV-2002, LLC; and RFC-GSAP Servicer Advance, LLC.

2

over 2.4 million mortgage loans with an aggregate unpaid principal balance of approximately $374 billion. *Affidavit of James Whitlinger in Support of Chapter 11 Petitions and First Day Pleadings ("Whitlinger Affidavit."),* ¶ 6. ECF Doc No. 6.

    4. The Debtors are collectively the fifth largest servicer of residential mortgage loans in the United States, servicing approximately $374 billion of domestic residential mortgage loans and working with more than 2.4 million homeowners across the United States as of March 31, 2012. *Whitlinger Affidavit* ¶ 9. ECF Doc No. 6.

    5. The Debtors are also a residential real estate finance company. As of the Petition Date, the Debtors and their non-debtor affiliates, including Ally Bank, are collectively the tenth largest originator of residential mortgage loans in the United States. *Whitlinger Affidavit,* ¶ 10. ECF Doc No. 6.

    6. The Debtors' unaudited consolidated balance sheet reflects assets of $15,675,571,000 and liabilities of $15,276,228,000. *Whitlinger Affidavit, Exhibit 12, Schedule 4.*

    7. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

    8. On May 16, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors pursuant to section 1102(a) of the Bankruptcy Code. *ECF Doc. No. 102.*

**B.**    **The Sale Procedures Motion**

    9. The Sale Procedures Motion seeks approval of procedures (the "Sale Procedures") regarding two Asset Purchase Agreements (collectively the "APAs") for the sale of substantially all of the Debtors' assets:

3

      (a) A sale to Nationstar Mortgage LLC ("Nationstar") of the Debtors' mortgage loan origination and servicing platform for approximately $2.3 billion ("the Nationstar APA"); and

      (b) A sale between Ally Financial Inc. ("AFI"), the Debtors' non-debtor indirect parent, and BMMZ Holdings LLC ("BMMZ") an indirect, wholly owned subsidiary of AFI, and certain of the Debtors of the Debtors' legacy portfolio for approximately $1.6 billion under a confirmed plan[3], or $1.4 billion under a sale. (the "AFI APA").

      10. In addition, the Debtors seek to schedule a bidding deadline, bidding procedures, an auction, and a hearing to consider approval of the contemplated sales (the "Sale Hearing"), which the Debtors indicate may be the same date on which they seek to confirm a reorganization plan. The Sale Procedures Motion also contemplates an order approving the form and manner for an auction for the Purchased Assets that are the subject of the APAs (the "Auction") and the form of Notice of Auction and the Sale Hearing, as well as procedures for the assumption and assignment of executory contracts. *Sales Procedure Motion, pp. 2-3. ECF Doc No. 61.*

**Pre-Petition Marketing Effort**

      11. On or about January 23, 2012, Centerview Partners, LLC, the Debtors' investment advisor, launched a targeted marketing process for the Debtors' assets, and received three preliminary indications of interest, including one from Nationstar. After further review, the Debtors' opted to pursue the Nationstar transaction. *Sale Procedures Motion, ¶ 41-43.*

---

[3]The Debtors intend to consummate the Asset Sales through a plan of reorganization consistent with the terms of plan support agreements with AFI and certain of their key secured and unsecured creditor constituents (the "Plan Support Agreements"). Pursuant to the Plan Support Agreements, a plan and disclosure statement consistent with the Plan Support Agreement(s) will be filed within 30 days, effectuating a settlement with AFI and other creditor constituencies. In the event the Debtors are unable to obtain a confirmation order within the specified time frame, they seek to sell the assets pursuant to 11 U.S.C. § 363(b). *Whitlinger Affidavit, ¶ 7-8.*

4

**The Breakup Fee and Expense Reimbursement**

12. Article 6.15 of the Nationstar APA provides for the payment and allowance as a priority administrative expense, without further Court order, of a Breakup Fee of $72 million and Expense Reimbursement of up to $10 million payable to Nationstar in the event the Court approves a competing transaction. *Sale Procedures Motion, Exhibit B, Nationstar APA, § 6.15; Sale Procedures Motion, Exhibit A, Proposed Sale Procedures Order, ¶ 10.*

**The Proposed Bidding Procedures**

13. The Bidding Procedures provide for a $25 million initial minimum bid increment at the auction with respect to the assets subject to the Nationstar APA ("the Nationstar APA Assets"), which may only be changed with the consent of Nationstar. For the purpose of evaluating competing bids, Nationstar will be given a credit of the sum of the Breakup Fee and the Expense Reimbursement. With respect to the assets subject to the AFI APA (the "AFI APA Assets"), the initial minimum bid increment is $15 million, subject to change only with the consent of AFI. Subsequent to the initial increment, the Debtors have the discretion to change the minimum bid increments. *Sale Procedures Motion, Exhibit A-1, Proposed Sale Procedures, p. 6.*

14. The Proposed Sale Procedures Order waives the requirement of the posting of a $25 million good faith deposit for AFI based upon extensive pre-petition negotiations and AFI's irrevocable guarantee of payment by BMMZ of monetary obligations owed by BMMZ under the AFI APA. *Sale Procedures Motion, Exhibit A, Proposed Sale Procedures Order, ¶ 8.*

**Other Provisions**

15. The Proposed Sale Procedures Order contains a finding that no consumer privacy ombudsman pursuant to 11 U.S.C. § 363(b)(1) is necessary based upon the Debtors'

5

representation that proposed sale of assets containing personally identifiable information is consistent with the Debtors' privacy policies.

16. The Proposed Sale Orders provide for sales free and clear of all interests of any Person, contain prohibitions against any successor liability, and provide for injunctions against any actions against the purchasers based upon acts prior to the purchase. *Sale Procedures Motion, Exhibits D and E*, *Proposed Sale Approval Orders*. The proposed Notice of the Sale Hearing contains a paragraph regarding the proposed limitation of successor liability. *Sale Procedures Motion, Exhibit A-2, Proposed Notice of Auction and Sale Hearing, pp. 2-3.* The deadline for objecting to the sale transactions, including rights or claims based upon successor or transferee liability is tentatively set for October 8, 2012, and the failure to object is deemed consent to the relief. Sale Procedures Motion, Exhibit A, Proposed Sale Procedures Order, ¶ 18.

## OBJECTION

### A. The Breakup Fee and Minimum Bid Increments Chill Bidding

Article 6.15 of the Nationstar APA and the proposed bid procedures provide for the payment and allowance as a priority administrative expense, without further Court order, of a Breakup Fee of $72 million and Expense Reimbursement of up to $10 million payable to Nationstar in the event the Court approves a competing transaction. The rationale for break up fees is that they are sometimes necessary to induce a stalking horse to enter the sale process, and to increase the possibility of higher offers from other parties, thereby maximizing the value from the sale for the benefit of the estate's creditors. *See In re 310 Associates*, 346 F.3d 31, 34 (2d Cir. 2003) ("Breakup fees are sometimes authorized in the bankruptcy auction sale context because they provide an incentive for an initial bidder to serve as a so-called 'stalking horse,' whose initial

research, due diligence, and subsequent bid may encourage later bidders."); *In re Marrose Corp.*, 1992 WL 33848, at *5-6 (Bankr. S.D.N.Y. 1992) (break-up fees and expense reimbursement intended to "compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers ... to benefit the creditors of the estate"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (break-up fee is "an incentive payment" to an unsuccessful bidder who put the estate in a position to attract other bidders to the auction) (citation omitted).

The *quid pro quo* for a break-up fee or expense reimbursement is a demonstration that the payment will provide an actual and necessary benefit to the estate. *See Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 535 (3rd Cir. 1999). There are limited circumstances where a break-up fee can provide value to the estate, such as where the fee is required to induce a prospective bidder to perform due diligence. *Id.* at 534. Likewise, a break-up fee may be appropriate where the fee promotes competitive bidding by inducing a bidder to enter into a baseline contract with a debtor that will be used to compare other bids. *Id.* at 536.

The Debtors purportedly engaged in a pre-petition marketing effort, which resulted in interest from three parties. The Debtors determined to proceed with Nationstar, which performed its due diligence and made the offer which is the subject of the Nationstar APA. The Debtors have not adequately demonstrated the unwillingness of one of the other two interested parties, or any other entity, to serve as a stalking horse absent the payment of a Breakup Fee, or that the value of Nationstar's participation equals the $82 million it will be paid if the Court approves a competitive offer. The existence of the Breakup Fee and Expense Reimbursement chills potential competitive bids, since any competitive bid must be at least $107 million more than that of Nationstar due to the $25 million initial bid increment contained in the Proposed Bid

Procedures plus the $82 million Nationstar credit. A breakup fee that discourages bidding is inconsistent with its purpose. *See Integrated Resources*, at 657 (including a determination of whether the fee hampers, rather than encourages, bidding as a factor to consider in assessing propriety of breakup fee). Under any circumstances, the Breakup Fee and Expense Reimbursement should be paid only after further Court order, after production of evidence in support of the reasonableness of the amounts sought. The Expense Reimbursement is based on actual out-of-pocket expenses up to $10,000,000.00, therefore documentation of the actual expenses and Court approval after notice, an opportunity to reply, and a hearing should be a prerequisite to payment. Further, because the amount of the Expense Reimbursement is variable, the actual amount must be established in order to determine the sum required for an initial bid at the auction, and should be fixed prior to commencement of the auction.

The $25 million minimum initial bid increment for the Nationstar APA Assets and the $15 million increment for the AFI APA Assets, moreover, have no discernible purpose other than to benefit Nationstar and AFI, whose approval is needed for any change to the minimum initial overbid. Simply put, bankruptcy estates benefit from open, competitive bidding, and participation in the auction process is chilled by high costs of entry. Absent explanation, the minimum overbid should therefore be substantially reduced.

**B. The Debtors Have Not Adequately Addressed Consumer Protection Issues**

Section 2.13 of the Nationstar APA and Section 2.11 of the AFI APA provide for full compliance with the recommendations of any consumer privacy ombudsman appointed in the case. Conversely, the Proposed Bidding Procedures contain a finding that although the sale transactions include the transfer of personally identifiable information, the transfer is consistent

with the Debtors' existing privacy policies.  Subsequent to the filing of the Sale Procedures Motion, the Debtors filed the Amended Affidavit of Peter Giamporcaro, which provided additional information regarding the privacy policies. The privacy policies permit the use of personally identifiable information "...for everyday business purposes—such as to process your transactions, maintain your account(s), respond to court orders and legal investigation, or report to credit bureaus." This appears to address ordinary course business transactions.  The additional information does not clearly address the Debtors' ability to sell the assets to a non-affiliate under the Nationstar APA and the AFI APA. Given Nationstar and AFI's acceptance of the recommendations of any consumer privacy ombudsman, and the significant amount of personally identifiable information at stake, the Debtors should produce additional evidence regarding the manner in which the sales are consistent with those policies.

Strong public policy considerations, including fundamental individual privacy rights, compels the implementation of all possible means of protecting the personally identifiable information of the Debtors' customers, consistent with the requirements and exceptions in 11 U.S.C. § 363(b)(1).

An additional consumer protection issue exists.  The Proposed Sale Orders provide for sales free and clear of all interests of any Person, contain prohibitions against any successor liability, and provide for injunctions against any actions against the purchasers based upon acts prior to the purchase.  Although the proposed notice of the Sale Hearing discloses the existence of the proposed prohibition against successor liability, it is addressed summarily, provides for a failure to object as deemed consent, and does not provide a complete explanation of the potential effect of such a waiver of rights.  It is also unclear from the existing notice provisions that all potentially affected parties will receive notice of a potentially significant alteration of their rights.

Moreover, while successor liability may be an equitable issue for determination by the Court in the absence of legislative direction, *see e.g. Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Tasemkin, Inc*. 59 F.3d 48, 49 (7th Cir. 1995), section 363(o) of the Bankruptcy Code provides unambiguous direction:

> Notwithstanding subsection (f), if a person purchases any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract...and if any such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had no such interest been purchased at a sale not under this section.

11 U.S.C. § 363(o).

The Debtors have not provided authority for the modification of this important consumer protection, or explained any perceived inapplicability. *See e.g. In re Macneal*, 308 Fed. Appx. 311, 315-16 (11th Cir. 2009)(holding section 363(o) inapplicable because purchased interest was not a consumer credit transaction). While this issue is not directly applicable to the hearing on the sale procedures, the manner in which it is noticed for a hearing and the parties to whom notice is given take on enhanced importance. Absent removal of the successor liability provisions, or a modification to include recognition of the requirements of section 363(o), the Debtors should provide broad notice of a detailed explanation of the effect of the waiver of successor liability to enhance the likelihood that interested parties will have a full and fair opportunity to be heard. *See In re Accredited Home Lenders Holding Co.*, 2010 WL 2821965, *9 (Bankr. Del. 2010)(sale order reflected that "[n]othing contained in this Sale Order shall alter the provisions of section 363(o) of the Bankruptcy Code.").

**CONCLUSION**

**WHEREFORE,** the United States Trustee respectfully requests that this Court deny the motion unless appropriate changes are made, and such other and further relief as may seem just and proper.

Dated: New York, New York
June 11, 2012

                                        Respectfully submitted,

                                        TRACY HOPE DAVIS
                                        UNITED STATES TRUSTEE

By:   /s/ Eric J. Small
        Eric J. Small
        Brian S. Masumoto
        Michael Driscoll
        Trial Attorneys

        33 Whitehall Street, 21st Floor
        New York, New York 10004
        (212) 510-0500