Hearing Date and Time: June 18, 2012 at 10:00 a.m. (Eastern Time)
Objection Deadline: June 11, 2012 at 4:00 p.m. (Eastern Time)

MUNGER, TOLLES & OLSON LLP
355  South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702
Thomas B. Walper (Pro Hac Vice)
Seth Goldman (Pro Hac Vice)

*Counsel for Berkshire Hathaway Inc*.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, et al.,<br><br>            Debtors. | CASE NO.  12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |

**OBJECTION OF BERKSHIRE HATHAWAY INC. TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(b), (f), AND (m), 365 AND 1123, AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 FOR ORDERS: (A)(I) AUTHORIZING AND APPROVING SALE PROCEDURES, INCLUDING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (II) SCHEDULING BID DEADLINE AND SALE HEARING; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF AND (B)(I) AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING ASSET PURCHASE AGREEMENTS THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

Berkshire Hathaway Inc. ("Berkshire"), by and through its undersigned counsel, files this objection (the "Objection") to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I)*

*Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (iii) Approving Form and Manner of Notice Thereof; and (iv) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 61] (the "Sale Motion") filed by Residential Capital, LLC ("ResCap") and its affiliated debtors and debtors-in-possession (collectively, with ResCap, the "Debtors").

**PRELIMINARY STATEMENT**

1.  The Sale Motion asks the Court to approve procedures (the "Sale Procedures Order") for an auction of the Debtors' mortgage loan origination and servicing platform ("Mortgage Business") and the Debtors' legacy loan portfolio ("Loan Portfolio"), including approval of Nationstar Mortgage LLC ("Nationstar") as the stalking-horse bidder for the Mortgage Business and Ally Financial Inc. ("Ally"), ResCap's parent company, as the stalking-horse bidder for the Loan Portfolio.

2.  Berkshire hereby offers to serve as the stalking-horse bidder for either or both of the Mortgage Business and Loan Portfolio on terms more beneficial to the estates than those proposed by the Debtors. To that end, attached to the Declaration of R. Ted Weschler are executed copies of asset purchase agreements for Berkshire to buy the Mortgage Business (the "Berkshire Mortgage APA") and the Loan Portfolio (the "Berkshire Loan APA").[1] Both offers

---

[1] A copy of the agreement with Nationstar ("Nationstar APA") marked to show changes in the Berkshire Mortgage APA and a copy of the agreement with Ally ("Ally APA") marked to show changes in the Berkshire Loan APA are attached as Exhibit B and Exhibit D, respectively, to the Declaration of R. Ted Weschler in Support of the Objection (the "Weschler Declaration"). Clean versions of the Berkshire Mortgage APA and the Berkshire Loan APA, signed by Berkshire, are attached to the Weschler Declaration as Exhibit A and Exhibit C, respectively.

will remain open for the Court to approve and the Debtors to execute on or before June 19, 2012 (i.e., one day after the scheduled hearing to approve the Sale Procedures Order).

3. The Berkshire Mortgage APA is proposed at the same purchase price and on substantially the same terms as the agreement with Nationstar (the "Nationstar APA"), but with a break-up fee of $24 million (as compared to $72 million under the Nationstar APA) and zero expense reimbursement (as compared to up to $10 million under the Nationstar APA). In total, the Berkshire Mortgage APA represents an incremental benefit to the estates of nearly $60 million if there is additional bidding for the Mortgage Business at auction. Indeed, ResCap's Chairman and CEO has recently stated that he expects several bidders for the Mortgage Business to emerge in the coming weeks.[2]

4. Separate from the Berkshire Mortgage APA, Berkshire also offers to serve as the stalking-horse bidder for the Loan Portfolio. Under the Berkshire Loan APA, Berkshire offers to purchase the Loan Portfolio on substantially the same terms as the agreement with Ally (the "Ally APA"), but for an increased purchase price of $1.45 billion (as compared to $1.4 billion under the Ally APA for a sale outside of the Ally-backed chapter 11 plan with broad releases). While the Berkshire Loan APA does provide for a break-up fee of 3 percent of the purchase price, it provides the estates with a stalking-horse option that is not bound up with, and complicated by, the parent's efforts to implement its prepetition settlement with the Debtors and to obtain broad releases under a chapter 11 plan.

5. Additionally, Berkshire objects to the structure of the Ally APA because it gives Ally an inside track at the auction and will chill third party bidding. The Ally APA offers to

---

[2] *See ResCap Expects More Bidders for Assets - CEO*, June 7, 2012, Reuters, available at http://www.reuters.com/article/2012/06/07/us-rescap-bidders-idUSBRE85615W20120607; *ResCap Chief Expects Competing Bids for Mortgage Assets*, June 7, 2012, Dow Jones Newswires, available at http://www.foxbusiness.com/news/2012/06/07/rescap-chief-expects-competing-bids-for-mortgage-assets/.

purchase the Loan Portfolio for $1.4 billion, if consummated outside of the Ally-backed chapter 11 plan, or $1.6 billion if consummated under that plan, which releases Ally of all claims held by the Debtors and third parties.  The additional consideration, however, comes at a heavy cost because no one but the insider parent will pay for a release of claims and no other bidder can make a competing offer that will preserve those claims for the benefit of the estates.  This structure has the effect of discouraging competitive bidding against Ally and coercing the Debtors into a sale to Ally and approval of its release.

6. For these reasons, Berkshire requests that the Court (a) approve Berkshire as the designated stalking-horse bidder for either or both of the Mortgage Business and/or the Loan Portfolio and authorize the Debtors and Berkshire to enter into either or both of the Berkshire Mortgage APA and Berkshire Loan APA; and (b) irrespective of the Court's approval of the Berkshire Mortgage APA or the Berkshire Loan APA, modify paragraph 6 of the proposed Sale Procedures Order (and related exhibits) to state as follows: "Each of Nationstar and AFI, respectively, shall constitute a Qualified Bidder for all purposes and in all respects with respect to the Sale Procedures; provided, however, that AFI's bid shall be deemed to be worth $1.4 billion for purposes of comparison with any other Qualified Bids, and in selecting the Successful Bid, AFI shall receive no credit for any additional consideration (including, without limitation, the additional $200 million in its initial offer under the AFI APA) that remains contingent on implementation of the sale through a plan under chapter 11 of the Bankruptcy Code."

## BACKGROUND

7. The Debtors, together with their non-debtor affiliates, are among the largest mortgage loan originators and servicers in the United States.  The Debtors alone service approximately $373 billion of domestic residential mortgage loans for more than 2.4 million homeowners across the United States. *Affidavit of James Whitlinger in Support of Chapter 11 Petitions and First Day Pleadings* ("First Day Aff.") ¶ 9.

-4-

8. On May 14, 2012, the Debtors moved to sell (1) their loan origination and servicing platform to Nationstar for approximately $2.4 billion pursuant to a chapter 11 plan of and (2) their portfolio of mortgage loans and other residual financial assets to Ally for $1.4 billion or, if consummated under the pre-arranged plan supported by Ally, $1.6 billion. First Day Aff. ¶¶ 7, 107; Sale Motion ¶ 6.

9. With respect to the Mortgage Business, the Debtors ask the Court to approve certain bid protections for Nationstar as a stalking-horse bidder. Specifically, the Debtors seek Court approval to pay a $72 million break-up fee and up to an additional $10 million in expense reimbursement to Nationstar. Sale Procedures Order ¶¶ 10-11; Nationstar APA § 6.15.

10. The Debtors also ask the Court to approve the Ally APA. While that agreement does not contain stalking-horse protections, it appears to be the direct product of a prepetition settlement of the Debtors' claims against Ally by including an additional $200 million in the sale price if the sale is consummated under the Ally-backed plan.

## **OBJECTION**

### A. The Court Should Approve Berkshire As The Stalking-Horse Bidder for the Mortgage Business and Loan Portfolio.

11. The Debtors have an obligation to maximize value in the sale of assets. *In re GSC, Inc.*, 453 B.R. 132, 185 (Bankr. S.D.N.Y. 2011) (providing that a bankruptcy trustee's "duty is to maximize the return to the estate" from asset sales conducted pursuant to section 363 of the Bankruptcy Code); *Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the object of bankruptcy rules and the [debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."). This duty extends to auction procedures for the sale of assets and selection and approval of any protections for stalking-horse bidders.

12. As this Court has held, a debtor may be authorized to replace a stalking-horse bid with a superior offer. *In re Metaldyne Corp.*, 409 B.R. 661 (Bankr. S.D.N.Y. 2009) (Glenn, J.). In *Metaldyne*, this Court held that "the Debtors had the option to walk away from the bidder protections granted to [the previous stalking-horse bidder] *up until the moment the Court approved them.*" *Id.* at 667 (emphasis added); *see also In re Asia Global Crossing*, 326 B.R. 240 (Bankr. S.D.N.Y. 2006) (holding that debtor was not bound to perform under a contract to sell assets "until Court approval" and, prior to such approval, remained free to withdraw the motion, abandon the contract, or change the terms of the sale).

13. With respect to the Mortgage Business, Berkshire has executed a replacement stalking-horse deal on substantially the same terms, but better for the estates through the reduced break-up fee of approximately $24 million (instead of $72 million) and nothing for expense reimbursement (instead of up to $10 million). These changes will save nearly $60 million for the Debtors' estates if there is a topping bid.

14. Berkshire's separate offer to serve as the stalking-horse bidder on the Loan Portfolio for $1.45 billion is also superior to the current bid from Ally. While the Berkshire Loan APA does provide for a 3 percent break-up fee, the Berkshire Loan APA provides $50 million more for the assets, and is not in any way tied to releases for Ally. Berkshire's offer should greatly simplify the bidding on the Loan Portfolio, and will help to ensure that all competing bids can be evaluated on an apples-to-apples basis. This should encourage a more robust auction process for the actual assets contained in the Loan Portfolio because the offer is completely decoupled from the separate issues with Ally.[3]

---

[3] Even if the Court does not approve the Berkshire Loan APA, it should nevertheless include the clarifying language to paragraph 6 of the Sale Procedures Order set forth in this Objection in order to promote a fair bidding process at the auction for the Loan Portfolio.

15. Accordingly, the Court should approve Berkshire as the stalking-horse bidder under the terms of the Berkshire Mortgage APA and/or the Berkshire Loan APA.

      **B.      The Court Should Modify the Sale Procedures to Ensure a Level Playing Field for Prospective Bidders on the Loan Portfolio.**

16. The structure of Ally's bid discourages prospective bidders that cannot benefit from broad releases as proposed for Ally under the Debtors' plan. Although debtors are typically given some latitude to provide bidding incentives, courts have the discretion to reject sale procedures that "appear more likely to chill the bidding process than to enhance it." *In re Bethlehem Steep Corp.*, 2003 WL 21738964, at *8, n.13. The principal flaw in the Ally APA is the conditional increase in the purchase price from $1.4 billion to $1.6 billion if the Loan Portfolio is sold pursuant to the pre-negotiated plan with Ally that contains broad releases from the Debtors and third parties of claims against Ally. Aside from Ally, no other purchaser stands to benefit in any way from the inclusion of such releases in the plan; instead, all other prospective bidders lack any incentive to submit an offer that exceeds the intrinsic value of the Loan Portfolio as a standalone asset. By agreeing to tack on an additional $200 million in consideration to the Ally APA, other bidders may be discouraged from participating in the auction if they believe the Loan Portfolio assets are worth somewhere between $1.4 billion and $1.6 billion. This will have the effect of insulating the Ally APA from competitive bidding and coerce the Debtors into pursuing a sale under a plan that completely releases Ally of all claims.

17. To address this problem, the proposed bidding procedures should be modified to decouple Ally's interest in purchasing the Loan Portfolio as a standalone asset from its separate and unrelated interest in obtaining broad releases under the Debtors' plan. Specifically, Berkshire requests that the Debtors add the following language to paragraph 6 of the proposed Sale Procedures Order: "Each of Nationstar and AFI, respectively, shall constitute a Qualified Bidder for all purposes and in all respects with respect to the Sale Procedures; <u>provided, however</u>, that AFI's bid shall be deemed to be worth $1.4 billion for purposes of comparison

with any other Qualified Bids, and in selecting the Successful Bid, AFI shall receive no credit for any additional consideration (including, without limitation, the additional $200 million in its initial offer under the AFI APA) that remains contingent on implementation of the sale through a plan under chapter 11 of the Bankruptcy Code." Sale Procedures Order ¶ 6 (suggested language in bold).

## NOTICE

18.     Notice of this Objection has been provided in accordance with the Notice of Hearing [Docket No. 188].

## CONCLUSION

19.     For the reasons stated above, Berkshire requests that the Court (a) approve Berkshire as the designated stalking-horse bidder for the Mortgage Business and/or the Loan Portfolio and authorize the Debtors and Berkshire to enter into the Berkshire Mortgage APA and/or Berkshire Loan APA; (b) modify paragraph 6 of the proposed Sale Procedures Order (and related exhibits) to state as follows: "Each of Nationstar and AFI, respectively, shall constitute a Qualified Bidder for all purposes and in all respects with respect to the Sale Procedures; <u>provided</u>, <u>however</u>, that AFI's bid shall be deemed to be worth $1.4 billion for purposes of comparison with any other Qualified Bids, and in selecting the Successful Bid, AFI shall receive no credit for any additional consideration (including, without limitation, the additional $200 million in its initial offer under the AFI APA) that remains contingent on implementation of the sale through a plan under chapter 11 of the Bankruptcy Code."; and (c) grant such other relief as the Court deems just and proper under the circumstances.

-9-

Dated: June 11, 2012                    Respectfully submitted,

                                        MUNGER, TOLLES & OLSON LLP

                                        /s/ Thomas B. Walper
                                        Thomas B. Walper
                                        Seth Goldman
                                        355 South Grand Avenue
                                        Los Angeles, California, 90071
                                        Thomas.Walper@mto.com
                                        Seth.Goldman@mto.com

                                        *Attorneys for Berkshire Hathaway Inc.*