# THE FROST NATIONAL BANK

and

# GMAC MORTGAGE CORPORATION

## SERVICING AGREEMENT

June 30, 2000

THACHER PROFFITT & WOOD
TWO WORLD TRADE CENTER
NEW YORK, NEW YORK 10048

EXHIBIT A

# THE FROST NATIONAL BANK

and

# GMAC MORTGAGE CORPORATION

Document                                                                        Tab #

Servicing Agreement, dated as of June 30, 2000, between The Frost National
Bank ("Frost") and GMAC Mortgage Corporation ("GMAC") .................... 1

First Amendment to Servicing Agreement, dated as of November 6, 2000,
between Frost and GMAC ............................................... 2

Acknowledgment Agreement, dated as of September 1, 2000, between Frost
and GMAC ........................................................... 3

Custodial Account Letter Agreement, between Frost and GMAC ................. 4

Escrow Account Letter Agreement, between Frost and GMAC .................... 5

[TPW: NY05:7052724.1]  18793-00001  11/21/00 12:55PM

SERVICING AGREEMENT
Dated and effective as of June 30, 2000

## THE FROST NATIONAL BANK

(Initial Owner)

and

## GMAC MORTGAGE CORPORATION

(Servicer)

Residential Mortgage Loans

[TPW: NY05:7042695.6] 18793-00001  08/10/00 05:44PM

# TABLE OF CONTENTS

Page

## ARTICLE I

### DEFINITIONS

## ARTICLE II

### REPRESENTATIONS AND WARRANTIES

Section 2.01   Representations and Warranties of the Servicer . . . . . . . . . . . . . . . . . . . 9
Section 2.02.  Representations and Warranties of the Owner . . . . . . . . . . . . . . . . . . . . 10
Section 2.03.  Survival of Representations and Warranties . . . . . . . . . . . . . . . . . . . . 11
Section 2.04.  Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## ARTICLE III

### CONTRACT FOR SERVICING OF MORTGAGE LOANS; POSSESSION OF MORTGAGE LOAN FILES AND SERVICING FILES; COMMENCEMENT OF SERVICING RESPONSIBILITIES

Section 3.01   Contract for Servicing; Possession of Mortgage Loan Files and Servicing Files; Ownership Documents and Funds . . . . . . . . . . . . . . . . . . . . . . . 12
Section 3.02   Commencement of Servicing Responsibilities . . . . . . . . . . . . . . . . . . . . 13

## ARTICLE IV

### ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 4.01   Servicer to Act as Servicer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Section 4.02   Liquidation of Mortgage Loans; Balloon Loans . . . . . . . . . . . . . . . . . . 16
Section 4.03   Collection of Mortgage Loan Payments . . . . . . . . . . . . . . . . . . . . . . . . . 17
Section 4.04   Establishment of Custodial Account; Deposits in Custodial Account . . . 17
Section 4.05   Withdrawals From the Custodial Account . . . . . . . . . . . . . . . . . . . . . . . 18
Section 4.06   Establishment of Escrow Account; Deposits in Escrow Account . . . . . . 19
Section 4.07   Withdrawals From Escrow Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Section 4.08   Payment of Taxes, Insurance and Other Charges . . . . . . . . . . . . . . . . . 20
Section 4.09   Transfer of Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Section 4.10   Maintenance of Hazard Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Page

Section 4.11    Fidelity Bond; Errors and Omissions Insurance .................... 22
Section 4.12    Title, Management and Disposition of REO Property .............. 23
Section 4.13    Liquidation Reports ......................................... 24
Section 4.14    Possession of Mortgage Loan Files by Servicer ................... 24
Section 4.15    Interest Rate Adjustments .................................... 24
Section 4.16    Non-Solicitation .......................................... 25
Section 4.17    Mortgagor Bankruptcy ...................................... 25
Section 4.18    Additional Collateral ....................................... 25

## ARTICLE V

### PAYMENTS TO THE OWNERS

Section 5.01    Distributions .............................................. 26
Section 5.02    Statements to the Owners ................................... 26

## ARTICLE VI

### GENERAL SERVICING PROCEDURE

Section 6.01    Assumption Agreements ..................................... 28
Section 6.02    Satisfaction of Mortgages and Release of Mortgage Loan Files ....... 28
Section 6.03    Servicing Compensation .................................... 29
Section 6.04    Annual Statement as to Compliance .......................... 29
Section 6.05    Annual Independent Public Accountants' Servicing Report .......... 29
Section 6.06    Owners' Right to Examine Servicer Records ..................... 30

## ARTICLE VII

### REPORTS TO BE PREPARED BY SERVICER

Section 7.01    Servicer Shall Provide Access and Information as Reasonably Required
                ........................................................ 31
Section 7.02    Financial Statements ....................................... 31

## ARTICLE VIII

### THE SERVICER

Section 8.01    Indemnification; Third Party Claims ........................... 32
Section 8.02    Merger or Consolidation of the Servicer ....................... 32

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

Page

Section 8.03   Limitation on Liability of the Servicer and Others ................. 33
Section 8.04   Servicer Not to Resign ....................................... 33

ARTICLE IX

DEFAULT

Section 9.01   Events of Default ........................................ 34
Section 9.02   Waiver of Defaults ........................................ 35

ARTICLE X

TERMINATION

Section 10.01   Termination ............................................. 36
Section 10.02   Termination With Cause .................................. 36
Section 10.03   Effect of Termination ................................... 36

ARTICLE XI

MISCELLANEOUS PROVISIONS

Section 11.01   Successor to the Servicer ................................ 37
Section 11.02   Amendment .............................................. 38
Section 11.03   Duration of Agreement .................................. 38
Section 11.04   Governing Law .......................................... 38
Section 11.05   General Interpretive Principles .......................... 38
Section 11.06   Reproduction of Documents .............................. 39
Section 11.07   Notices ................................................. 39
Section 11.08   Severability of Provisions ............................... 39
Section 11.09   No Partnership or Agency ............................... 40
Section 11.10   Assignment by Owner ................................... 40
Section 11.11   Counterparts; Successors and Assigns ..................... 40

[TPW: NY05:7042695.6]  18793-00001  08/10/00 05:44PM

SCHEDULES

SCHEDULE I MORTGAGE LOAN SCHEDULE

EXHIBITS

EXHIBIT A    FORM OF ACKNOWLEDGMENT AGREEMENT
EXHIBIT B    FORM OF CUSTODIAL ACCOUNT LETTER AGREEMENT
EXHIBIT C    FORM OF ESCROW ACCOUNT LETTER AGREEMENT

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

SERVICING AGREEMENT

This is a Servicing Agreement for Residential Mortgage Loans, dated and effective as of June 30, 2000, and is executed between The Frost National Bank, as initial owner (hereinafter, the "Initial Owner" or the "Owner") and GMAC Mortgage Corporation, as servicer (the "Servicer").

WHEREAS, the Owner is the owner as of the date hereof of those certain Mortgage Loans identified on the Mortgage Loan Schedule attached hereto; and

WHEREAS, the Owner intends originate or to acquire in the future additional Mortgage Loans, to be added to the Mortgage Loan Schedule from time to time as provided herein; and

WHEREAS, the Owner desires to retain the Servicer for the servicing of the Mortgage Loans and the Servicer desires to service the Mortgage Loans for the Owner, commencing on the Initial Transfer Date, in accordance with the terms and conditions set forth herein; and

WHEREAS, the Owner and the Servicer wish to prescribe the management, servicing and control of the Mortgage Loans;

NOW, THEREFORE, in consideration of the premises and the mutual agreements hereinafter set forth and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Owner and the Servicer agree as follows:

ARTICLE I

DEFINITIONS

Whenever used herein, the following words and phrases, unless the context otherwise requires, shall have the following meanings:

"Acknowledgment Agreement": An agreement, substantially in the form attached hereto as Exhibit A, executed by the Owner and the Servicer on or prior to each Transfer Date, which shall amend the Mortgage Loan Schedule attached as Schedule I hereto to reflect the addition of the Mortgage Loans listed on Schedule I to the Acknowledgment Agreement and which shall reflect the addition of such Mortgage Loans to the terms and conditions of this Agreement.

"Additional Collateral": With respect to any Mortgage Loan, the property, if any, other than the Mortgaged Property, securing repayment of the debt evidenced by the related Mortgage Note.

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-2-

"Adjustable Rate Mortgage Loan": A Mortgage Loan as to which the related Mortgage Note provides for periodic adjustments to the Mortgage Interest Rate thereon based upon changes in the related Index.

"Affiliate": With respect to any specified Person, any other Person controlling or controlled by or under common with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Agreement": This Servicing Agreement for Residential Mortgage Loans, including all exhibits, schedules and other addenda hereto, and all amendments hereof.

"Assignment of Mortgage": An assignment of the Mortgage, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the sale of the related Mortgage Loan to the Owner.

"Balloon Loan": A Mortgage Loan that provides by its terms for an amortization schedule extending beyond its stated maturity date.

"Best Efforts": Efforts determined to be reasonably diligent by the Owner or the Servicer, as the case may be. Such efforts do not require the Owner or the Servicer, as the case may be, to enter into any litigation, arbitration or other legal or quasi-legal proceeding, nor do they require the Owner or the Servicer, as the case may be, to advance or expend fees or sums of money in addition to those specifically set forth in this Agreement.

"Business Day": Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking or savings and loan institutions in the State of Iowa, the Commonwealth of Pennsylvania, the State of California or the State of Texas are authorized or obligated by law or executive order to be closed.

"Custodial Account": The separate account or accounts created and maintained pursuant to Section 4.04.

"Customary Servicing Procedures": The procedures that the Servicer follows in the servicing and administration of, and in the same manner in which, and with the same care, skill, prudence and diligence with which the Servicer services and administers, for its own account and for FNMA, mortgage loans similar to the Mortgage Loans, and giving due consideration to customary and usual standards of practice of prudent institutional residential mortgage loan servicers and with a view to the maximization of timely recovery of principal and interest on the Mortgage Loans but without regard to:

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-3-

    (i)    any relationship that the Servicer or any Affiliate of the Servicer may have with any Mortgagor or any Affiliate of any Mortgagor; or

    (ii)    the Servicer's right to receive compensation for its services hereunder or with respect to any particular transaction.

"Cut-off Date":  With respect to any Mortgage Loan, the first day of the month in which such Mortgage Loan is added to the Mortgage Loan Schedule.

"Determination Date":  The 15th day (or if such 15th day is not a Business Day, the Business Day immediately preceding the 15th day) of the month of the related Remittance Date.

"Due Date":  The day of the month of the related Remittance Date on which each Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

"Eligible Account":  Either (i) an account or accounts maintained with a depository institution acceptable to FNMA or FHLMC as a depository for custodial accounts at the time any amounts are held in deposit therein, the deposits of which are at all times insured by the FDIC to the limits established by the FDIC or (ii) an account or accounts the deposits in which are at all times fully insured by the FDIC.

"Escrow Account":  The separate account or accounts created and maintained pursuant to Section 4.06.

"Escrow Payments":  The amounts constituting ground rents, taxes, assessments, water rates, mortgage insurance premiums, fire and hazard insurance premiums and other payments required to be escrowed by the Mortgagor with the mortgagee pursuant to any Mortgage Loan.

"Event of Default":  Any one of the conditions or circumstances enumerated in Section 9.01.

"FDIC":  The Federal Deposit Insurance Corporation or any successor.

"FHA Loan":  A Mortgage Loan that is insured by HUD.

"FHLMC":  The Federal Home Loan Mortgage Corporation or any successor.

"Fidelity Bond":  A fidelity bond to be obtained by the Servicer pursuant to Section 4.11.

"Fixed Rate Mortgage Loan":  A Mortgage Loan as to which the related Mortgage Note provides for a Mortgage Interest Rate that remains fixed for the term thereof.

-4-

"FNMA": The Federal National Mortgage Association or any successor.

"HUD": The United States Department of Housing and Urban Development or any successor.

"Index ": With respect to each Adjustable Rate Mortgage Loan, the index used to determine the new Mortgage Interest Rate thereon from time to time, as set forth in the related Mortgage Note.

"Initial Owner": The Frost National Bank or any successor.

"Initial Transfer Date": As defined in the definition of "Transfer Date".

"Insurance Policy": With respect to any Mortgage Loan, any insurance policy required to be maintained under this Agreement or the related Mortgage Loan Documents.

"Interest Rate Adjustment Date": With respect to each Adjustable Rate Mortgage Loan, the date on which an adjustment to the Mortgage Interest Rate on the related Mortgage Note becomes effective.

"Law": Any judgment, order, decree, writ, injunction, award, statute, rule, regulation or requirement of any federal, state, local or other agency, commission, instrumentality, tribunal, governmental authority, arbitrator or court having or asserting jurisdiction over any particular Person, property or matter applicable to such particular Person, property or matter.

"Liquidation Proceeds": Cash (other than REO Disposition Proceeds) received in connection with the liquidation of a defaulted Mortgage Loan, whether through the sale or assignment of the Mortgage Loan, trustee's sale, foreclosure sale, sale of the Mortgaged Property or otherwise.

"Loss Mitigation Fee": The fee payable to the Servicer in connection with loss mitigation activities performed by the Servicer pursuant to Section 4.02, which shall be calculated in the same manner as prescribed by FNMA within the FNMA fee structure, from time to time, with respect to mortgage loans that are similar to the related Mortgage Loan that are serviced from FNMA.

"Monthly Payment": The scheduled monthly payment of principal and interest on a Mortgage Loan which is payable by a Mortgagor under the related Mortgage Note.

"Mortgage": The mortgage, deed of trust or other instrument creating a first lien on or first priority ownership interest in an estate in fee simple in real property securing a Mortgage Note.

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-5-

"Mortgage Interest Rate":  The annual rate at which interest accrues on any Mortgage Loan in accordance with the provisions of the related Mortgage Note.

"Mortgage Loan":  An individual mortgage loan that is the subject of this Agreement, as identified on the Mortgage Loan Schedule, including the contents of the Mortgage Loan File and the Servicing File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, insurance proceeds, condemnation proceeds, REO Disposition Proceeds and all other rights, benefits, proceeds and obligations arising from or in connection with such mortgage loan.

"Mortgage Loan Documents":  The documents executed and delivered in connection with the origination of a Mortgage Loan, including the Mortgage Note, the Mortgage, the Assignment of Mortgage, intervening assignments of the Mortgage (if any), title policy and private mortgage insurance policy or certificate (if applicable) or with respect to an FHA Loan, evidence of HUD insurance.

"Mortgage Loan File":  With respect to each Mortgage Loan, the Mortgage Loan Documents held by the Servicer in its capacity as document custodian, as provided in Section 3.01(a).

"Mortgage Loan Remittance Rate":  As to each Mortgage Loan, the annual rate of interest remitted to the Owner, which shall be equal to the Mortgage Interest Rate minus the Servicing Fee Rate.

"Mortgage Loan Schedule":  The schedule of Mortgage Loans serviced hereunder and contained in Schedule I hereto or attached as Schedule I to an Acknowledgment Agreement, which schedule shall be prepared and maintained by the Servicer and which shall supplement this Agreement on the related Transfer Date, reflecting the addition of such Mortgage Loans to the terms of this Agreement, such schedule setting forth the information as to each Mortgage Loan in form and substance agreed to by the Servicer and the Owner.

"Mortgage Note":  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

"Mortgaged Property":  The real property securing repayment of the debt evidenced by a Mortgage Note.

"Mortgagor":  The obligor on a Mortgage Note.

"Net REO Disposition Proceeds":  With respect to any REO Disposition, the related REO Disposition Proceeds net of out-of-pocket costs and expenses incurred in connection with the management and disposition of such REO Property.

-6-

"Officer's Certificate": A certificate signed by the Chairman of the Board, the Vice Chairman of the Board, the President, a Vice President, the Treasurer, the Secretary, an Assistant Treasurer or an Assistant Secretary of the Servicer, and delivered to the Owner as required by this Agreement.

"Opinion of Counsel": A written opinion of counsel, who may be an employee of the Servicer, reasonably acceptable to the Owner.

"Owner": The Person that possesses right, title and interest in a Mortgage Loan listed on Schedule I hereto.

"Person": Any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock Servicer, trust, unincorporated organization or government or any agency or political subdivision thereof.

"Prepayment Premium": Any premium, penalty or fee paid or payable, as set forth in the related Mortgage Note, by a Mortgagor in connection with a Principal Prepayment.

"Principal Prepayment": Any payment or other recovery of principal on a Mortgage Loan that is received in advance of its scheduled Due Date, and that is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

"Program Agreement": The Mortgage Loan Origination Program Agreement between the Owner and the Servicer dated as of May 15, 2000.

"Record Date": The close of business of the last Business Day of the month preceding the month of the related Remittance Date.

"REO Disposition": The final sale of a Mortgaged Property acquired by the Owner (or its designee) or by the Servicer on behalf of the Owner in foreclosure or by deed in lieu of foreclosure.

"REO Disposition Fee": An amount, to be paid to the Servicer pursuant to Section 4.12 with respect to each REO Property Disposition out of the related Net REO Disposition Proceeds, which shall be equal to the greater of (a) $1200 and (b) one percent (1.0%) of the Net REO Disposition Proceeds.

"REO Disposition Proceeds": All amounts received with respect to an REO Disposition pursuant to Section 4.12.

"REO Property": A Mortgaged Property acquired by the Servicer on behalf of the Owner through foreclosure or deed in lieu of foreclosure, as described in Section 4.12.

-7-

"Remittance Date": The 18th day of any month, beginning (a) on the 18th day of the month in which the Initial Transfer Date occurs (if the Initial Transfer Date occurs prior to the 18th day of such month) or (b) on the 18th day of the month following the month in which the Initial Transfer Date occurs (if the Initial Transfer Date occurs on or after the 18th day of such month) or, in either event, if such 18th day is not a Business Day, the first Business Day immediately following.

"Servicer": GMAC Mortgage Corporation, or its successor in interest or any successor to the Servicer under this Agreement appointed as herein provided.

"Servicing Advances": All customary, reasonable and necessary "out of pocket" costs and expenses incurred in the performance by the Servicer of its servicing obligations, including, but not limited to, the cost of (a) the preservation, restoration and protection of the Mortgaged Property, (b) any enforcement or judicial proceedings, including foreclosures, (c) the management and liquidation of the Mortgaged Property if the Mortgaged Property is acquired in satisfaction of the Mortgage Loan, and (d) compliance with the obligations under Section 4.08.

"Servicing Fee": With respect to each Mortgage Loan, the amount of the annual fee the Owner shall pay to the Servicer, which shall, for a period of one full month, be equal to one-twelfth of the product of (a) the Servicing Fee Rate and (b) the Stated Principal Balance of such Mortgage Loan. Such fee shall be payable monthly, computed on the basis of the same principal amount and period respecting which any related interest payment on a Mortgage Loan is computed. The obligation of the Owner to pay the Servicing Fee is limited to, and payable solely from, the interest portion (including recoveries with respect to interest from Liquidation Proceeds, to the extent permitted by Section 4.05) of such Monthly Payments collected by the Servicer, or as otherwise provided under Section 4.05.

"Servicing Fee Rate": With respect to each Adjustable Rate Mortgage Loan, .375% per annum, and with respect to each Fixed Rate Mortgage Loan, .250% per annum.

"Servicing File": With respect to each Mortgage Loan, the file held by the Servicer consisting of originals or copies of those documents that the Servicer determines are required to enable it to perform its servicing obligations under this Agreement, including copies of documents held in the Mortgage Loan File.

"Stated Principal Balance": As to each Mortgage Loan, as of any date of determination, (i) the principal balance of the Mortgage Loan at the Cut-off Date after giving effect to payments of principal received on or before such date, minus (ii) all amounts previously distributed to the Owner with respect to the Mortgage Loan representing payments or recoveries of principal after the Cut-off Date.

"Transfer Date": With respect to a Mortgage Loan, the date on which servicing responsibilities are transferred by the Owner and assumed by the Servicer pursuant to this Agreement and the related Acknowledgment Agreement. The "Initial Transfer Date" shall be the date the

-8-

Servicer begins servicing the first Mortgage Loan to be serviced hereunder; each subsequent Transfer Date shall be the date on which the Servicer begins to perform the servicing of the related Mortgage Loans (as set forth in this Agreement or the related Acknowledgment Agreement) in accordance with the terms set forth herein.

"VA":  The United States Department of Veterans Affairs or any successor.

"VA Loan":  A Mortgage Loan that is guaranteed in part by the VA.

[TPW: NY05:7042695.6] 18793-00001  08/10/00 05:44PM

EXHIBIT A

-9-

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES

Section 2.01    Representations and Warranties of the Servicer.

The Servicer hereby represents and warrants to, and covenants with, the Owner that as of the date hereof and each Transfer Date, or such other date as set forth below:

(a)    The Servicer (i) is a corporation organized and existing and in good standing under the laws of the Commonwealth of Pennsylvania and (ii)(1) is licensed and qualified to transact business in, and is in good standing under, the laws of each state where the failure to be so licensed and/or qualified and be in good standing could materially interfere with the realization of the benefits provided in this Agreement, or (2) is otherwise exempt under applicable law from such licensing and/or qualification and no demand for such licensing or qualification has been made upon Servicer by such state and, in any event, Servicer is in compliance with the laws of such state to the extent necessary to ensure the enforceability of each Mortgage Loan serviced by the Servicer hereunder and its ability to carry out its obligations.

(b)    The Servicer has the full corporate power and authority to execute, deliver and perform all transactions contemplated by this Agreement; the Servicer has duly authorized the execution, delivery and performance of this Agreement, and has duly executed and delivered this Agreement. This Agreement constitutes the legal, valid and binding obligation of the Servicer, enforceable against it in accordance with its terms except that the enforceability thereof may be limited by (1) the availability of equitable remedies (including specific performance and injunctive relief) and (2) bankruptcy, reorganization, insolvency, moratorium or other similar laws or equitable principles affecting creditors' rights and remedies generally.

(c)    The execution and delivery of this Agreement as of the date hereof did not, and the consummation of the transactions contemplated hereby and the performance of or compliance with the terms and conditions of this Agreement will not, conflict with or result in a breach of any of the terms, conditions or provisions of the articles of incorporation or by-laws of the Servicer or any agreement or instrument to which the Servicer is now a party or by which it is bound, or constitute a default under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment or decree to which the Servicer or its property is subject which conflict, breach, default or violation would materially impair the Servicer's ability to meet its obligations under this Agreement.

(d)    There is no litigation pending against the Servicer or the Servicer's property or, to the best of the Servicer's knowledge, threatened, which, if determined adversely to the

-10-

Servicer, would materially adversely affect the enforceability of this Agreement, or the ability of the Servicer to perform hereunder in accordance with the terms hereof, or which would have a material adverse effect on the financial condition of Servicer.

(e)     No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Servicer of, or compliance by the Servicer with, this Agreement or the consummation by the Servicer of the transactions contemplated by this Agreement.

(f)     The Servicer is a mortgagee approved by HUD and is approved and in good standing to sell mortgage loans to and service mortgage loans for FNMA and FHLMC.

Section 2.02.    Representations and Warranties of the Owner.

The Owner hereby represents and warrants to, and covenants with, the Servicer, that as of the date hereof and each Transfer Date, or such other date as set forth below:

(a)     The Owner (i) is a banking corporation organized and existing and in good standing under the laws of the United States and (ii)(1) is licensed and qualified to transact business in, and is in good standing under, the laws of each state where the failure to be so licensed and/or qualified and be in good standing could materially interfere with the realization of the benefits provided in this Agreement, or (2) is otherwise exempt under applicable law from such licensing and/or qualification and no demand for such licensing or qualification has been made upon the Owner by such state and, in any event, the Owner is in compliance with the laws of such state to the extent necessary to ensure its ability to carry out its obligations hereunder.

(b)     The Owner has the full corporate power and authority to execute, deliver and perform all transactions contemplated by this Agreement; the Owner has duly authorized the execution, delivery and performance of this Agreement, and has duly executed and delivered this Agreement. This Agreement constitutes the legal, valid and binding obligation of the Owner, enforceable against it in accordance with its terms except that the enforceability thereof may be limited by (1) the availability of equitable remedies (including specific performance and injunctive relief) and (2) bankruptcy, reorganization, insolvency, moratorium or other similar laws or equitable principles affecting creditors' rights and remedies generally.

(c)     The execution and delivery of this Agreement as of the date hereof did not, and the consummation of the transactions contemplated hereby and the performance of or compliance with the terms and conditions of this Agreement will not, conflict with or result in a breach of any of the terms, conditions or provisions of the articles of incorporation or by-laws of the Owner or any agreement or instrument to which the Owner is now a party or by which it is bound, or constitute a default under any of the

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-11-

foregoing, or result in the violation of any law, rule, regulation, order, judgment or decree to which the Owner or its property is subject which conflict, breach, default or violation would materially impair the Owner's ability to meet its obligations under this Agreement.

(d)     There is no litigation pending against the Owner or the Owner's property or, to the best of the Owner's knowledge, threatened, which, if determined adversely to the Owner, would materially adversely affect the enforceability of this Agreement, or the ability of the Owner to perform hereunder in accordance with the terms hereof, or which would have a material adverse effect on the financial condition of the Owner.

(e)     No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Owner of, or compliance by the Owner with, this Agreement or the consummation by the Owner of the transactions contemplated by this Agreement.

Section 2.03.   Survival of Representations and Warranties.

The Servicer's and the Owner's representations and warranties shall survive the execution of this Agreement, delivery of all required documents hereunder, the performance of the parties' obligations hereunder, the termination of this Agreement, and any investigations made by the Owner or the Servicer, respectively.

Section 2.04.   Indemnification.

Each party hereto (the "Indemnifying Party") agrees to indemnify the other party hereto and each of its officers, directors, employees, agents and subcontractors (each an "Indemnified Party") and to hold each of them harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses of the Indemnified Party that result directly from a breach of any representation and warranty or covenant by the Indemnifying Party under this Agreement, exclusive of consequential damages and costs, including any marketing losses (i.e., opportunity costs) or lost profits; provided, however, that the Indemnifying Party shall not be obligated to indemnify the Indemnified Party with respect to any matter as to which the Indemnified Party is obligated to indemnify the Indemnifying Party.

-12-

## ARTICLE III

### CONTRACT FOR SERVICING OF MORTGAGE LOANS; POSSESSION OF MORTGAGE LOAN FILES AND SERVICING FILES; COMMENCEMENT OF SERVICING RESPONSIBILITIES

Section 3.01  Contract for Servicing; Possession of Mortgage Loan Files and Servicing Files; Ownership Documents and Funds.

(a)    The Owner, by execution and delivery of this Agreement (and the related Acknowledgment Agreement), does hereby contract with the Servicer for, and, subject to the terms of this Agreement, the Servicer agrees to, the servicing of the Mortgage Loans.  On or before each Transfer Date, the Owner shall transfer or cause to be transferred to the Servicer, the Mortgage Loan Files and the Servicing Files with respect to the Mortgage Loans listed on the related Mortgage Loan Schedule; provided, however, that with respect to any Mortgage Loan acquired by the Owner from the Servicer, the Servicer shall retain such Servicing File and such Mortgage Loan File and shall hold them subject to the terms and conditions set forth herein.  All Mortgage Loan Files shall be held by the Servicer, at no cost to the Owner, in the Servicer's custodial area, in secure fireproof files, in the same manner and using the same standard of care required by FNMA with respect to document custodians holding mortgage loan documents on behalf of FNMA.  Promptly after receipt of a Mortgage Loan File with respect to any Mortgage Loan, the Servicer, in its capacity as custodian, shall deliver to the Owner a certification stating that it has received such Mortgage Loan File and is holding the same in trust for the Owner.

(b)    The Servicer shall maintain a system capable of producing a current, accurate and complete copy of the Mortgage Loan Schedule, including the current balance of all reserves then being held by the Servicer for each respective Mortgage Loan (based on information contained in the Servicing File) at any time, as a printed copy and as a computer-readable disk or tape, and shall update the data on such system as of the close of business on each Business Day to reflect (i) the addition of any Mortgage Loan to this Agreement within three (3) Business Days of the Servicer's receipt of the related Servicing File, (ii) the removal of any Mortgage Loan from the Mortgage Loan Schedule pursuant to the terms of this Agreement within three (3) Business Days of receipt of notice by the Servicer from the Owner that such Mortgage Loan should be removed from the Mortgage Loan Schedule or (iii) any changes in the information contained thereon notified to the Servicer or of which the Servicer otherwise has knowledge, within three (3) Business Days of such receipt or knowledge.

(c)    The Servicer shall, on the last Business Day of each calendar month, update the Mortgage Loan Schedule so that it reflects accurate and complete information (based on information contained in the Servicing File) as of the close of business on such last Business Day for each Mortgage Loan subject to this Agreement during such calendar month.

[TPW: NY05:7042695.6] 18793-00001  08/10/00 05:44PM

-13-

(d)    Each Servicing File and each Mortgage Loan File (or, in each case, any portion thereof) delivered to the Servicer shall be held by the Servicer in order to service the Mortgage Loans pursuant to this Agreement and shall be held in trust by the Servicer for the benefit of the Owner. The Servicer's possession of any portion of any Servicing File, any Mortgage Loan Documents or copies thereof shall be at the will of the Owner to facilitate the servicing of the related Mortgage Loans pursuant to this Agreement, and such retention and possession by the Servicer shall be in a servicing capacity only.

(e)    With respect to each Mortgage Loan, the ownership of the related Mortgage Loan Documents and the contents of the related Servicing File shall be vested in the Owner and the ownership of all records and documents (including records stored electronically on computer tapes, magnetic disks and the like) with respect to the related Mortgage Loan prepared by or which come into the possession of the Servicer shall immediately vest in the Owner and shall be retained and maintained by the Servicer, in trust, at the will of the Owner in such custodial capacity only. All rights arising out of the Mortgage Loans shall be vested in the Owner. All funds received on or in connection with a Mortgage Loan shall be received and held by the Servicer in trust for the benefit of the Owner and the Mortgagors as their respective interests may appear and as provided in this Agreement.

(f)    Each Servicing File and Mortgage Loan File held by the Servicer pursuant to this Agreement shall be identified to reflect clearly the ownership of the related Mortgage Loan by the Owner. The Servicer shall release from its custody the contents of any Servicing File or Mortgage Loan File held by it only in accordance with this Agreement and Customary Servicing Practices. Accordingly, from time to time, Mortgage Loans may be added or removed from the Mortgage Loan Schedule, and the related Mortgage Loan Documents may be added to or removed from the Servicer's custody, in accordance with the provisions of this Agreement or upon written notice from the Owner to the Servicer.

Section 3.02    Commencement of Servicing Responsibilities.

(a)    Not later than fifteen (15) days before the Initial Transfer Date, the Servicer shall execute and deliver to the Owner an original counterpart of one or more Acknowledgment Agreements with respect to each Mortgage Loan to be serviced by the Servicer pursuant to this Agreement from and after such Initial Transfer Date. On each subsequent Transfer Date, the Owner shall appoint the Servicer to perform all servicing responsibilities with respect to the related Mortgage Loans and the Servicer shall accept such appointment and assume such responsibilities. Such appointment and acceptance shall be evidenced by an Acknowledgment Agreement executed by the Owner and the Servicer. Each Acknowledgment Agreement shall serve to acknowledge the Servicer's commencement (as of each Transfer Date) of the servicing responsibilities with respect to the related Mortgage Loans. Upon execution of an Acknowledgment Agreement, the obligation of the Servicer to accept and perform the servicing responsibilities enumerated herein relating to the related Mortgage Loans on and after the related Transfer Date is mandatory.

-14-

(b)     The Servicer shall promptly deposit all amounts received by it on or with respect to a Mortgage Loan on or after the related Transfer Date in accordance with the terms of this Agreement. The Owner shall promptly notify the Servicer in writing of any payments from Mortgagors received by the Owner (and shall not commingle such funds with other funds of the Owner) and shall, within one (1) Business Day of receipt thereof, remit such payments to the Servicer. The Owner shall cooperate fully with the Servicer in carrying out the Servicer's servicing responsibilities under this Agreement.

(c)     The parties shall comply with all applicable Laws and all requirements of the Mortgage Loan Documents relating to notices to Mortgagors and others, and shall cooperate with respect to the giving of such notices.

[TPW: NY05:7042695.6]  18793-00001  08/10/00 05:44PM

EXHIBIT A

-15-

ARTICLE IV

ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 4.01    Servicer to Act as Servicer.

The Servicer, as independent contract servicer, shall service and administer the Mortgage Loans in accordance with Customary Servicing Procedures, and shall have full power and authority, acting alone or through sub-servicers as provided herein, to do any and all things in connection with such servicing and administration which the Servicer may deem necessary or desirable and consistent with the terms of this Agreement.

Consistent with the terms of this Agreement and absent specific instructions from the Owner to the contrary, the Servicer may waive, modify or vary any term of any Mortgage Loan or consent to the postponement of strict compliance with any such term or in any manner grant indulgence to any Mortgagor; provided, however, that the Servicer shall notify the Owner prior to making any modification with respect to any Mortgage Loan; and provided, further, that unless the Servicer has obtained the written consent of the Owner, the Servicer shall not permit any modification with respect to any Mortgage Loan that would change the Mortgage Interest Rate, defer or forgive the payment of any principal or interest, change the outstanding principal balance (except for actual payments of principal received with respect thereto), change the interest rate (except, with respect to an Adjustable Rate Mortgage Loan, as provided in the related Mortgage Note), make any future advances or extend the final maturity date on such Mortgage Loan with respect thereto. In the event that a Mortgagor requests a modification to the related Mortgage Loan and the Owner agrees to such modification, the Servicer shall process such modification for a processing fee equal to the greater of (a) $500 and (b) one-half of one percent (0.50%) of the outstanding principal balance of the Mortgage Loan on the date of such modification, plus reimbursement for any related out-of-pocket expenses paid by the Servicer to third parties. The Servicer shall (unless otherwise instructed in writing by the Owner) use all reasonable efforts to collect all such fees and reimbursement of expenses from the related Mortgagor, provided, however, that any such fees and expenses not reimbursed to the Servicer by the related Mortgagor shall be paid by the Owner to the Servicer. Without limiting the generality of the foregoing, the Servicer is hereby authorized and empowered to execute and deliver on behalf of itself and the Owner, all instruments of satisfaction or cancellation, or of partial or full release, discharge and all other comparable instruments, with respect to the Mortgage Loans and the Mortgaged Properties. If reasonably required by the Servicer, the Owner shall execute such Mortgage Loan Documents or furnish the Servicer with such limited powers of attorney and other documents necessary or appropriate to enable the Servicer to carry out its servicing and administrative duties under this Agreement.

The Servicer may perform any of its servicing responsibilities hereunder through one or more sub-servicers; provided, however, the Servicer shall obtain the prior written consent of the Owner prior to using a sub-servicer. The use by the Servicer of a sub-servicer shall not relieve the Servicer from any of its obligations hereunder, and the Servicer shall remain responsible hereunder

-16-

for all acts and omissions of the sub-servicer as fully as if such acts and omissions were those of the Servicer. The Servicer shall pay all fees and expenses of the sub-servicer out of the Servicer's Servicing Fee or other amounts permitted to be retained by or reimbursed to the Servicer hereunder, without any right to reimbursement with respect thereto.

The Servicer shall cause any sub-servicer to keep in full force and effect at all times a policy or policies of insurance covering errors and omissions (including mortgage impairment insurance to the extent required pursuant to Section 4.10 hereof, and a Fidelity Bond and errors and omissions insurance to the extent required pursuant to Section 4.11 hereof) insuring the Servicer and such sub-servicer, who shall be named insureds, in the handling of the insurance coverage and other servicing matters in connection with the portion of the Mortgage Loans serviced by such sub-servicer.

Any sub-servicing agreements and any other transactions or services relating to the Mortgage Loans involving any sub-servicers, shall be deemed to be between the sub-servicers and the Servicer alone and the Owners shall have no obligations, duties or liabilities with respect to the sub-servicers including the payment of any sub-servicers' fees and expenses. For purposes of distributions by the Servicer pursuant to this Agreement, the Servicer shall be deemed to have received a payment on a Mortgage Loan at the time any sub-servicer has received such payment.

Section 4.02    Liquidation of Mortgage Loans; Balloon Loans.

(a) In the event that any payment due under any Mortgage Loan is not paid when the same becomes due and payable, or in the event the Mortgagor fails to perform any other covenant or obligation under the Mortgage Loan and such failure continues beyond any applicable grace period, the Servicer shall so notify the Owner promptly and shall (unless notified otherwise by the Owner as provided below) take such action, including loss mitigation activities, as it shall deem to be in the best interest of the Owner and shall not adversely affect the coverage of the related Insurance Policy, and shall be entitled to receive a Loss Mitigation Fee in connection therewith, which Loss Mitigation Fee shall be paid to the Servicer by the Owner to the extent that the Servicer is not able to collect such amounts from the related Mortgagor (it being understood, however, that if the Servicer undertakes no loss mitigation activities with respect to a Mortgage Loan, the Servicer shall not be entitled to any Loss Mitigation Fee with respect thereto). In the event that any payment due under any Mortgage Loan remains delinquent for a period of 90 days or more, the Servicer shall commence foreclosure proceedings in accordance with Customary Servicing Procedures, provided that prior to commencing foreclosure proceedings, the Servicer shall notify the Owner in writing of the Servicer's intention to so do, and the Servicer shall not commence foreclosure proceedings if the Owner objects to such action within ten (10) Business Days of receiving such notice. In such connection, the Servicer shall, from its own funds, make all necessary and proper Servicing Advances.

(b) With respect to any Balloon Loan, upon the maturity date thereof, if so requested by the related Mortgagor and approved by the Owner, the Servicer shall process the rollover of such

-17-

Balloon Loan, pursuant to the Owner's procedures, into another type of mortgage loan as designated by the Owner, which mortgage loan shall be deemed a Mortgage Loan hereunder and shall continue to be serviced hereunder by the Servicer, provided that such Mortgage Loan shall be a type of mortgage loan that the Servicer determines, in its good faith judgment, it is able to service under its then-existing servicing systems.

Section 4.03    Collection of Mortgage Loan Payments.

Continuously from the date hereof until the principal and interest on all Mortgage Loans are paid in full, the Servicer will proceed diligently to collect all payments due under each of the Mortgage Loans when the same shall become due and payable and  will take special care in ascertaining and estimating annual ground rents, taxes, assessments, water rates, fire and hazard insurance premiums and all other charges that, as provided in any Mortgage, will become due and payable to the end that the installments payable by the Mortgagors will be sufficient to pay such charges as and when they become due and payable.

Section 4.04    Establishment of Custodial Account; Deposits in Custodial Account.

The Servicer shall segregate and hold all funds collected and received pursuant to each Mortgage Loan separate and apart from any of its own funds and general assets and shall establish and maintain one or more Custodial Accounts (collectively, the "Custodial Account"), in the form of time deposit or demand accounts, which may be interest bearing, titled "GMAC Mortgage Corporation in trust for the Owners - Residential Mortgage Loans."  Such Custodial Account shall be established with a commercial bank, a savings bank or a savings and loan association.  In any case, the Custodial Account shall be an Eligible Account that may be drawn on by the Servicer.  The creation of any Custodial Account shall be evidenced by a letter agreement in the form of Exhibit C hereto.  A copy of such letter agreement shall be furnished to the Initial Owner on or before the Initial Transfer Date, and to any Owner from time to time upon request.

The Servicer shall deposit in the Custodial Account on a daily basis, and retain therein, the following payments and collections received by the Servicer with respect to all Mortgage Loans subsequent to the related Cut-off Date:

(i)    all payments on account of principal, including Principal Prepayments on the Mortgage Loans;

(ii)    all payments on account of interest on the Mortgage Loans adjusted to the Mortgage Loan Remittance Rate;

(iii)    all Liquidation Proceeds;

(iv)    all proceeds received by the Servicer under any title, hazard, primary mortgage guaranty or other Insurance Policy, including amounts required to be deposited pursuant to Section

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-18-

4.10, other than proceeds to be held in the Escrow Account and applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor in accordance with Customary Servicing Procedures;

(v)    all awards or settlements in respect of condemnation proceedings or eminent domain affecting any Mortgaged Property which are not released to the Mortgagor in accordance with Customary Servicing Procedures;

(vi)    any amount required to be deposited in the Custodial Account pursuant to Sections 4.12, 4.15, 5.01 and 6.02; and

(vii)    any amounts representing any late charges and any Prepayment Premiums paid by Mortgagors.

The foregoing requirements for deposit in the Custodial Account shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments in the nature of late payment charges and assumption fees, to the extent permitted by Section 5.01, need not be deposited by the Servicer in the Custodial Account.

Section 4.05    Withdrawals From the Custodial Account.

The Servicer shall, from time to time, withdraw funds from the Custodial Account for the following purposes:

(i)    to make payments to the Owners in the amounts and in the manner provided for in Section 5.01;

(ii)    to reimburse itself for unreimbursed Servicing Advances and any unpaid Servicing Fees, Loss Mitigation Fees and REO Disposition Fees, the Servicer's right to reimburse itself pursuant to this subclause (ii) with respect to any Mortgage Loan being limited to related Liquidation Proceeds, condemnation proceeds, amounts representing proceeds of Insurance Policies covering the related Mortgage Loan or Mortgaged Property and such other amounts as may be collected by the Servicer from the Mortgagor or otherwise relating to the Mortgage Loan, it being understood that, in the case of any such reimbursement, the Servicer's right thereto shall be prior to the rights of the Owners;

(iii)    to reimburse itself for expenses incurred by and reimbursable to it pursuant to Section 8.01;

(iv)    to pay to itself any interest earned on funds deposited in the Custodial Account, such withdrawal to be made monthly not later than the Remittance Date;

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-19-

(v)    to withdraw any amounts that were not required to be deposited into the Custodial Account; and

(vi)    to clear and terminate the Custodial Account upon the termination of this Agreement.

On each Remittance Date, the Servicer shall withdraw all funds from the Custodial Account. The Servicer may use such withdrawn funds only for the purposes described in this Section 4.05.

If after receipt and application of Liquidation Proceeds or REO Disposition Proceeds in accordance with the foregoing the Servicer has sustained an unrecovered loss in connection with a Servicing Advance, the amount of unrecovered loss shall be reimbursed to the Servicer from amounts in the Custodial Account, or if such funds are insufficient, by payment to the Servicer by the Owner within five (5) Business Days of the receipt of notice by such Owner of such amount. The Servicer shall reimburse itself and demand reimbursement only if the Servicer has reasonably determined that such reimbursements are in accordance with Customary Servicing Advances. Notwithstanding the foregoing, the Servicer will not be reimbursed for any unrecovered advances representing costs, losses or other items as to which the Servicer agrees to hold the Owner harmless under this Agreement, or for any such advances in connection with proceedings or litigation as to which the Owner has not given prior written approval if approval is required under this Agreement.

Section 4.06    <u>Establishment of Escrow Account; Deposits in Escrow Account</u>.

The Servicer shall segregate and hold or cause the sub-servicer to segregate and hold all funds collected and received pursuant to each Mortgage Loan which constitute Escrow Payments separate and apart from any of its own funds and general assets and shall establish and maintain one or more Escrow Accounts (collectively, the "Escrow Account"), in the form of time deposit or demand accounts, which may be interest bearing, titled, with respect to Escrow Payments actually held by the Servicer, "GMAC Mortgage Corporation in trust for the Owners - Residential Mortgage Loans and various Mortgagors". The Escrow Account shall be established with a commercial bank, a savings bank or a savings and loan association. The Escrow Account shall be an Eligible Account and may be drawn on by the Servicer or a sub-servicer. The creation of any Escrow Account shall be evidenced by a letter agreement in the form of Exhibit C hereto. A copy of such letter agreement shall be furnished to the Initial Owner on or before the Initial Transfer Date, and to any Owner from time to time upon request.

The Servicer or the sub-servicer shall deposit in the Escrow Account on a daily basis, and retain therein: (i) all Escrow Payments collected on account of the Mortgage Loans, for the purpose of effecting timely payment of any such items as required under the terms of this Agreement, and (ii) all amounts representing proceeds of any hazard insurance policy which are to be applied to the restoration or repair of any Mortgaged Property. The Servicer shall make withdrawals therefrom only in accordance with Section 4.07. To the extent required by Law, the Servicer shall

-20-

pay (or shall cause any sub-servicer to pay) to the Mortgagor, without right of reimbursement with respect thereto, interest on escrowed funds, notwithstanding that the Escrow Account may not bear interest or that interest on the Escrow Account may be insufficient to cover such payments.

Section 4.07    Withdrawals From Escrow Account.

Withdrawals from the Escrow Account shall be made by the Servicer or the sub-servicer, as the case may be, only (a) to effect timely payments of ground rents, taxes, assessments, water rates, mortgage insurance premiums, fire and hazard insurance premiums or other items consti-tuting Escrow Payments for the related Mortgage, (b) to reimburse the Servicer for any Servicing Advance made by the Servicer pursuant to Section 4.08 with respect to a related Mortgage Loan, but only from amounts received on the related Mortgage Loan which represent late payments or collec-tions of Escrow Payments thereunder, (c) to refund to any Mortgagor any funds found to be in excess of the amounts required under the terms of the related Mortgage Loan, (d) for transfer to the Custodial Account in accordance with the terms hereof, (e) for application to restoration or repair of the Mortgaged Property in accordance with the terms of the related Mortgage Loan, (f) to pay to the Mortgagor, to the extent required by law, any interest paid on the funds deposited in the Escrow Account, (g) to pay to itself any interest earned on funds deposited in the Escrow Account (and not required to be paid to the Mortgagor), such withdrawal to be made monthly not later than the Remittance Date, or (h) to clear and terminate the Escrow Account upon the termination of this Agreement.

Section 4.08    Payment of Taxes, Insurance and Other Charges.

With respect to each Mortgage Loan, the Servicer shall maintain accurate records reflecting the status of ground rents, taxes, assessments, water rates and other charges which are or may become a lien upon the Mortgaged Property and the status of fire and hazard insurance coverage and shall obtain, from time to time, all bills for the payment of such charges (including renewal premiums) and shall effect payment thereof prior to the applicable penalty or termination date and at a time appropriate for securing maximum discounts allowable, employing for such purpose deposits of the Mortgagor in the Escrow Account which shall have been estimated and accumulated by the Servicer in amounts sufficient for such purposes, as allowed under the terms of the Mortgage. To the extent that a Mortgage does not provide for Escrow Payments, the Servicer shall determine that any such payments are made by the Mortgagor at the time they first become due.  The Servicer assumes full responsibility for the timely payment of all such bills and shall effect timely payments of all such bills irrespective of each Mortgagor's faithful performance in the payment of same or the making of the Escrow Payments and shall make advances from its own funds to effect such payments.

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-21-

Section 4.09    Transfer of Accounts.

The Servicer may transfer the Custodial Account or the Escrow Account to a different depository institution. Such transfer shall be made only upon obtaining the consent of the Owner.

Section 4.10    Maintenance of Hazard Insurance.

The Servicer shall cause to be maintained for each Mortgage Loan fire and hazard insurance with extended coverage customary in the area where the Mortgaged Property is located, in an amount which is at least equal to the lesser of (i) the full insurable value of the Mortgaged Property and (ii) the greater of (a) the outstanding principal balance owing on the Mortgage Loan and (b) an amount such that the proceeds of such insurance shall be sufficient to avoid the application to the Mortgagor or loss payee of any coinsurance clause under the policy.

If the Mortgaged Property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available) the Servicer shall cause to be maintained a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration with a generally acceptable insurance carrier, in an amount representing coverage not less than the least of (i) the outstanding principal balance of the Mortgage Loan, (ii) the full insurable value of the Mortgaged Property, or (iii) the maximum amount of insurance available under the National Flood Insurance Act of 1968 and the Flood Disaster Protection Act of 1973, each as amended. The Servicer shall also maintain on property acquired upon foreclosure, or by deed in lieu of foreclosure, of any Mortgage Loan, fire and hazard insurance with extended coverage in an amount which is at least equal to the maximum insurable value of the improvements which are a part of such property, liability insurance and, to the extent required and available under the National Flood Insurance Act of 1968 and the Flood Disaster Protection Act of 1973, each as amended, flood insurance in an amount required above. Any amounts collected by the Servicer under any such policies (other than amounts to be deposited in the Escrow Account and applied to the restoration or repair of the property subject to the related Mortgage or property acquired in liquidation of the Mortgage Loan, or to be released to the Mortgagor in accordance with Customary Servicing Procedures) shall be deposited in the Custodial Account, subject to withdrawal pursuant to Section 4.05. It is understood and agreed that no earthquake or other additional insurance need be required by the Servicer of any Mortgagor or maintained on property acquired in respect of a Mortgage Loan, other than pursuant to such applicable laws and regulations as shall at any time be in force and as shall require such additional insurance. All policies required hereunder shall be endorsed with standard mortgagee clauses with loss payable to the Servicer, and shall provide for at least 30 days prior written notice of any cancellation, reduction in amount or material change in coverage to the Servicer. The Servicer shall not interfere with the Mortgagor's freedom of choice in selecting either his insurance carrier or agent, provided, however, that the Servicer shall not accept any such insurance policies from insurance companies unless such companies currently reflect a General Policy Rating of A:V

-22-

or better in Best's Key Rating Guide and are licensed to do business in the State wherein the property subject to the policy is located.

In the event that the Servicer shall obtain and maintain a blanket policy insuring against fire and hazards of extended coverage on all of the Mortgage Loans, then, to the extent such policy names the Owner as loss payees and provides coverage in an amount equal to the amount required under the preceding paragraph, and otherwise complies with the requirements of the preceding paragraph, the Servicer shall be deemed conclusively to have satisfied its obligations under the preceding paragraph of this Section 4.10, it being understood and agreed that such blanket policy may contain a deductible clause, in which case the Servicer shall, in the event that there shall not have been maintained on the related Mortgaged Property a policy complying with the preceding paragraph, and there shall have been a loss which would have been covered by such policy, deposit in the Custodial Account the difference, if any, between the amount that would have been payable under a policy complying with the preceding paragraph and the amount paid under such blanket policy. Upon the request of any Owner, the Servicer shall cause to be delivered to such Owner a certified true copy of such policy and a statement from the insurer thereunder that such policy shall in no event be terminated or materially modified without 30 days prior written notice to the Owner.

Section 4.11    Fidelity Bond; Errors and Omissions Insurance.

The Servicer shall maintain with responsible companies, at its own expense, a blanket Fidelity Bond and an errors and omissions insurance policy, with broad coverage on all officers, employees or other persons acting in any capacity requiring such persons to handle funds, money, documents or papers relating to the Mortgage Loans ("Servicer Employees"). Any such Fidelity Bond and errors and omissions insurance shall be in the form of the Mortgage Banker's Blanket Bond and shall protect and insure the Servicer against losses, including forgery, theft, embezzlement, fraud, errors and omissions, failure to maintain any insurance policies required pursuant to this Agreement, and negligent acts of such Servicer Employees. Such Fidelity Bond shall also protect and insure the Servicer against losses in connection with the release or satisfaction of a Mortgage Loan without having obtained payment in full of the indebtedness secured thereby. No provision of this Section 4.11 requiring such Fidelity Bond and errors and omissions insurance shall diminish or relieve the Servicer from its duties and obligations as set forth in this Agreement. The minimum coverage under any such Fidelity Bond and insurance policy shall be at least equal to the corresponding amounts required by FNMA and FHLMC, as such requirements may be amended or restated from time to time, for servicers servicing mortgage loans for them. Upon the request of the Owner, the Servicer shall cause to be delivered to the Owner a certified true copy of such Fidelity Bond and insurance policy and a statement from the surety and the insurer that such Fidelity Bond and insurance policy shall in no event be terminated or materially modified without 30 days prior written notice to the Owner.

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-23-

Section 4.12    <u>Title, Management and Disposition of REO Property</u>.

In the event that title to the Mortgaged Property is acquired in foreclosure or by deed in lieu of foreclosure, the deed or certificate of sale shall be taken in the name of the Owner or a designee of the Owner, as directed by the Owner.

Upon the acquisition of title to a Mortgaged Property (in its own name or the name of a designee), the Owner may, at its option, by notice to the Servicer within 48 business hours after the Owner's receipt of notification of acquisition of title, assume control over the management and disposition of the related REO Property and in such instance shall have no obligation to pay any REO Disposition Fee to the Servicer in connection therewith; <u>provided</u>, <u>however</u>, that the Owner may, at its option, at any time subsequent to such 48 business hour period and prior to completion of the disposition of such REO Property, assume control over the management and disposition thereof, subject to the Servicer's right to the full REO Disposition Fee with respect thereto. In the event the Owner assumes control over the management and disposition of any REO Property, the Owner shall reimburse the Servicer for unreimbursed Servicing Advances, if any, within thirty (30) days of such date. Unless otherwise notified by the Owner as provided above, the Servicer shall manage, conserve, protect and operate any REO Property for the Owner solely for the purpose of its prompt disposition and sale, subject to any required consents of the Owner as set forth herein. The Servicer shall, either itself or through an agent selected by the Servicer, manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects and operates other foreclosed property for its own account, and for the account of other investors (including FNMA), and in the same manner that similar property in the same locality as the REO Property is managed. The Servicer shall attempt to sell the same (and may temporarily rent the same) on such terms and conditions as the Servicer deems to be in the best interest of the Owner and as are approved by the Owner. As compensation for the maintenance and sale of any REO Property for which the Servicer is responsible for maintenance and sale (and otherwise as specifically provided above), the Servicer shall be entitled to the related REO Disposition Fee, to be paid out of Net REO Disposition Proceeds of the related REO Property on the date of the related REO Disposition or as promptly as feasible thereafter.

With respect to each REO Property managed by the Servicer, the Servicer shall cause to be deposited on a daily basis in the Custodial Account all revenues received with respect to the conservation and disposition of the related REO Property and shall withdraw therefrom funds necessary for the proper operation, management and maintenance of the REO Property, including the cost of maintaining any hazard insurance pursuant to Section 4.10 hereof and the fees of any managing agent acting on behalf of the Servicer. Any disbursement in excess of $1,500 shall be made only with the written approval of the Owner.

The Servicer shall use its Best Efforts to dispose of each REO Property as soon as feasible and shall sell such REO Property in any event within one year after title has been taken to such REO Property, unless the Servicer determines, and gives an appropriate notice to the Owner, that a longer period is necessary for the orderly liquidation of such REO Property. If a period longer

[TPW: NY05:7042695.6]  18793-00001  08/10/00 05:44PM

-24-

than one year is permitted under this Agreement and is necessary to sell any REO Property, the Servicer shall report monthly to the Owner as to the progress being made in selling such REO Property.

The disposition of REO Property shall be carried out by the Servicer only with the prior written consent of the Owner (which consent shall not be unreasonably withheld or delayed) and shall be made at such price, and upon such terms and conditions, as the Servicer deems to be in the best interests of the Owner and as are approved by the Owner in writing.  The proceeds of sale of the REO Property shall be promptly deposited in the Custodial Account and, as soon as practical thereafter, the expenses of such sale shall be paid, the Servicer shall reimburse itself for any related unreimbursed Servicing Advances, unpaid Servicing Fees, unpaid Loss Mitigation Fees, unpaid REO Disposition Fees and unreimbursed advances made pursuant to Section 5.03 and the net cash proceeds of such sale remaining in the Custodial Account shall be distributed to the Owner.

With respect to any REO Property being managed by the Servicer, the Servicer shall furnish to the Owner on a monthly basis, as early as feasible in such month, a statement covering the Servicer's efforts during the prior calendar month in connection with the sale of that REO Property and any rental of the REO Property incidental to the sale thereof for the previous month (together with an operating statement).  That statement shall be accompanied by such other information as the Owner shall reasonably request.

Section 4.13    Liquidation Reports.

The Servicer shall submit to the Owner monthly, at the time of the remittance report required pursuant to Section 5.02, a liquidation report with respect to each Mortgaged Property sold in a foreclosure sale as of the related Record Date and not previously reported.

Section 4.14    Possession of Mortgage Loan Files by Servicer.

From time to time in connection with the servicing of the Mortgage Loans hereunder, the Servicer may take possession of all or a portion of the documents constituting the related Mortgage Loan File.  Such documents shall be held in trust by the Servicer for the benefit of the Owner as the owner thereof and the Servicer's possession of such document or documents is at the will of the Owner for the sole purpose of servicing the related Mortgage Loan, and such retention and possession by the Servicer is in a custodial capacity only.

Section 4.15    Interest Rate Adjustments.

With respect to each Adjustable Rate Mortgage Loan, the Seller shall make interest rate adjustments on the related Interest Rate Adjustment Date in compliance with the requirements of the related Mortgage Loan Documents and all applicable Laws.  The Seller shall execute and deliver the notices required by the Mortgage Loan Documents and all applicable Laws.  Upon the discovery by the Servicer or the Owner that the Servicer has failed to adjust a Mortgage Interest Rate

-25-

or a Monthly Payment pursuant to the terms of the related Mortgage Loan Documents, the Servicer shall promptly deposit in the Custodial Account from its own funds the amount of any interest loss to the Owner caused thereby without reimbursement therefor from the Owner.

Section 4.16   Non-Solicitation.

The Servicer and the Owner shall not solicit for refinancing any Mortgage Loan serviced by the Servicer hereunder; provided, however, that nothing set forth herein shall be deemed to prohibit the Servicer, the Owner or their respective Affiliates from refinancing a Mortgage Loan if the related Mortgagor initiates the inquiry with respect thereto or to prohibit advertising directed to the public at large; provided, further, the terms of Section 10(a) of the Mortgage Loan Origination Program Agreement (the "Mortgage Loan Origination Program Agreement") dated as of May 15, 2000 between the Owner and the Servicer shall be incorporated herein.   In the event of any conflict between this Section 4.16 and Section 10(a) of the Mortgage Loan Origination Program Agreement, Section 10(a) shall control.

Section 4.17   Mortgagor Bankruptcy.

The Servicer shall, to the extent that it obtains knowledge of the bankruptcy or insolvency of a Mortgagor, use Best Efforts to notify the Owner thereof as promptly as feasible; provided, however, that the Servicer shall have no liability to the Owner for any failure so to notify the Owner.

Section 4.18   Additional Collateral.

It is understood by the parties that certain Mortgage Loans might be secured by Additional Collateral, and that, with respect to any such Mortgage Loan, the Servicer shall have no rights or obligations with respect to the servicing or maintenance of, foreclosure upon, or any other right or obligation with respect to, such Additional Collateral, and that the exercise of such rights and obligations may be exercised and performed by the Owner in its sole discretion.

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

EXHIBIT A

-26-


ARTICLE V

PAYMENTS TO THE OWNERS

Section 5.01     Distributions.

On each Remittance Date the Servicer shall remit by wire transfer of immediately available funds to the account designated in writing by the Owner of record on the preceding Record Date, all amounts deposited in the Custodial Account as of the close of business on the preceding Determination Date (net of charges against or withdrawals from the Custodial Account pursuant to Section 4.05).

With respect to any remittance received by the Owner after the Business Day on which such payment was due, the Servicer shall pay to the Owner interest on any such late payment at an annual rate equal to the rate of interest as is publicly announced from time to time at its principal office by The Chase Manhattan Bank, New York, New York, as its prime lending rate, adjusted as of the date of each change, plus three percentage points, but in no event greater than the maximum amount permitted by applicable Law.  Such interest shall be paid by the Servicer to the Owner on the date such late payment is made and shall cover the period commencing with the Business Day on which such payment was due and ending with the Business Day on which such payment is made, both inclusive.  The payment by the Servicer of any such interest shall not be deemed an extension of time for payment or a waiver by the Owner of any Event of Default.

Section 5.02     Statements to the Owners.

Promptly after each remittance, the Servicer will furnish to the Owner a statement in a form as agreed upon by and acceptable to the Owner and the Servicer respecting principal amounts distributed, interest Prepayment Premiums and assumption fees distributed, and servicing compensation received by the Servicer.

The Servicer shall provide to the Owner, not later than five (5) Business Days after the end of each calendar month, a hard copy Standard Monthly Single Debit Report and a computer readable master file, as of the end of such immediately preceding calendar month, with respect to each Mortgage Loan, containing such information as agreed in good faith between the parties. In addition, within a reasonable period of time after the end of each calendar year, the Servicer shall furnish a report to each Person that was an Owner at any time during such calendar year.  Such report shall state the aggregate of amounts reported constituting principal, interest and assumption fees, servicing compensation and amounts reimbursed to the Servicer pursuant to Section 8.01 for such calendar year or, in the event such Person was an Owner of record during only a portion of such calendar year, for the applicable portion of such year.  Such obligation of the Servicer shall be deemed to have been satisfied to the extent that substantially comparable information shall be provided by the Servicer pursuant to any requirements of the Internal Revenue Code as from time to time in force.

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-27-

       The Servicer shall prepare and file any and all tax returns, information statements or other filings required to be delivered to any governmental taxing authority or to the Owner pursuant to any applicable Law with respect to the Mortgage Loans and the transactions contemplated hereby. In addition, the Servicer shall provide each Owner with such information concerning the Mortgage Loans as is necessary for such Owner to prepare its federal income tax return as the Owner may reasonably request from time to time.

-28-

## ARTICLE VI

### GENERAL SERVICING PROCEDURE

Section 6.01    Assumption Agreements.

The Servicer shall use its Best Efforts to enforce any "due-on-sale" provision contained in any Mortgage or Mortgage Note and to deny assumption by the Person to whom the Mortgaged Property has been or is about to be sold, whether by absolute conveyance or by contract of sale, and whether or not the Mortgagor remains liable on the Mortgage and the Mortgage Note. When the Mortgaged Property has been conveyed by the Mortgagor, the Servicer shall, to the extent it has knowledge of such conveyance, exercise its rights to accelerate the maturity of such Mortgage Loan under the "due-on-sale" clause applicable thereto; provided, however, that the Servicer shall not exercise such rights if prohibited by Law from doing so or if the exercise of such rights would impair or threaten to impair any recovery under any related Insurance Policy.  If the Servicer reasonably believes it is unable under applicable Law to enforce such "due-on-sale" clause, the Servicer shall obtain the written consent of the Owner (which consent shall not be unreasonably withheld or delayed) prior to entering into an assumption and modification agreement with the Person to whom such property has been conveyed, pursuant to which such person becomes liable under the Mortgage Note and, to the extent permitted by applicable Law, the Mortgagor remains liable thereon.  In the event that the Mortgage Loan Documents and applicable Law so permit, the Servicer shall determine whether a potential transferee is qualified to assume the Mortgage Loan pursuant to standards that would be applied by FNMA with respect to mortgage loans of the same type as the Mortgage Loans that are serviced on behalf of FNMA.  An assumption fee may be collected by the Servicer for entering into an assumption agreement, which fee shall not exceed the lesser of (a) $900 and (b) an amount equal to one percent (1%) of the outstanding principal balance of the related Mortgage Loan, and any such fee so collected may be retained by the Servicer as additional servicing compensation.  In connection with any such assumption, the outstanding principal amount, the Monthly Payment and the Mortgage Interest Rate on the related Mortgage Loan shall not be changed, and the term of the Mortgage Loan shall not be increased or decreased. If an assumption is allowed pursuant to this Section 6.01, the Servicer with the prior consent of the private mortgage guaranty insurer or HUD or the VA, if applicable, is authorized to enter into a substitution of liability agreement with the purchaser of the Mortgaged Property pursuant to which the original Mortgagor is released from liability and the purchaser of the Mortgaged Property is substituted as Mortgagor and becomes liable under the Mortgage Note.

Section 6.02    Satisfaction of Mortgages and Release of Mortgage Loan Files.

Upon the payment in full of any Mortgage Loan, or the receipt by the Servicer of a notification that payment in full will be escrowed in a manner customary for such purposes, the Servicer shall so notify the Owner and the Owner shall deliver or cause to be delivered to the Servicer any portion of the Mortgage Loan File that is in the possession of the Owner that is needed

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-29-

by the Servicer to process any satisfaction or release with respect thereto. The Servicer shall prepare and process any required satisfaction or release of the Mortgage and notify the Owner thereof.

In the event that the Servicer grants a satisfaction or release of a Mortgage without having obtained payment in full of the indebtedness secured by the Mortgage or if the Servicer otherwise prejudices any right the Owner may have under the related Mortgage Loan Documents, the Servicer, upon written demand of the Owner, shall remit to the Owner the Stated Principal Balance of the related Mortgage Loan by deposit thereof in the Custodial Account. The Servicer shall maintain the Fidelity Bond and errors and omissions coverage, as provided for in Section 5.11 insuring the Servicer against any loss it may sustain with respect to any Mortgage Loan not satisfied in accordance with the procedures set forth herein.

Section 6.03    Servicing Compensation.

As compensation for its services hereunder, the Servicer shall be entitled to retain with respect to each Mortgage Loan the Servicing Fee from interest payments actually collected on the related Mortgage Loans. Additional servicing compensation in the form of assumption fees, to the extent permitted under Section 7.01 hereof, shall be retained by the Servicer to the extent not required to be deposited in the Custodial Account. The Servicer shall be required to pay all expenses incurred by it in connection with its servicing activities hereunder and shall not be entitled to reimbursement therefor except as specifically provided for herein. With respect to each Mortgage Loan, the Servicer shall be entitled to all late payment charges and pre-payment penalties, if any.

Section 6.04    Annual Statement as to Compliance.

The Servicer will deliver to each Owner, on or before March 31 of each year beginning March 31, 2001, an Officers' Certificate stating that (i) the Servicer has fully complied with the provisions of Article IV, (ii) a review of the activities of the Servicer during the preceding calendar year and  of performance under this Agreement has been made under such officer's supervision, and (iii) to the best of such officer's knowledge, based on such review, the Servicer has fulfilled all its obligations under this Agreement throughout such year, or, if there has been a default in the fulfillment of any such obligation, specifying each such default known to such officer and the nature and status thereof and the action being taken by the Servicer to cure such default.

Section 6.05    Annual Independent Public Accountants' Servicing Report.

On or before March 31 of each year beginning March 31, 2001, the Servicer at its expense shall cause a firm of independent public accountants which is a member of the American Institute of Certified Public Accountants to furnish a statement to each Owner to the effect that such firm has examined certain documents and records, relating to the servicing of the Mortgage Loans and this Agreement and that such firm is of the opinion that the provisions of Article IV have been complied with, and that, on the basis of such examination conducted substantially in compliance with the Uniform Single Attestation Program for Mortgage Bankers, nothing has come to their

-30-

attention which would indicate that such servicing has not been conducted in compliance therewith, except for (i) such exceptions as such firm shall believe to be immaterial and (ii) such other exceptions as shall be set forth in such statement.

Section 6.06    Owners' Right to Examine Servicer Records.

The Owner shall have the right, at all reasonable times and as often as reasonably required, to examine and audit any and all of the books, records or other information of the Servicer whether held by the Servicer or by another on behalf of the Servicer, which may be relevant to the performance or observance by the Servicer of the terms, covenants or conditions of this Agreement. Any out-of-pocket expenses incurred by the Servicer in connection with such audits shall be paid by the Owner requesting such audit.

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-31-

## ARTICLE VII

## REPORTS TO BE PREPARED BY SERVICER

Section 7.01    Servicer Shall Provide Access and Information as Reasonably Required.

The Servicer shall provide to the Owner, and for an Owner insured by the FDIC, to the FDIC and the supervisory agents and examiners of the FDIC, access to any documentation regarding the Mortgage Loans which may be required by applicable law and access to officers and other employees of the Servicer who are knowledgeable with respect thereto. Such access shall be afforded without charge to the Owner, but only upon reasonable request, during normal business hours and at the offices of the Servicer.

In addition, the Servicer shall furnish to the Owner upon reasonable request, such periodic, special or other reports or information, whether or not provided for herein, as shall be necessary, reasonable or appropriate with respect to the purposes of this Agreement and applicable Law, including reports on computer readable tape in a form acceptable to FNMA in LASER format. All such reports or information shall be provided by and in accordance with all reasonable instructions and directions of the Owner. Any out-of-pocket expenses incurred by the Servicer in connection with furnishing information not generally furnished by the Servicer as servicer shall be paid by the Owner.

Section 7.02    Financial Statements.

The Servicer understands that, in connection with marketing the Mortgage Loans, the Owner may make available to any prospective Owner a Consolidated Statement of Operations of the Servicer for the most recently completed five fiscal years for which such a statement is available as well as a Consolidated Statement of Condition at the end of the last two fiscal years covered by such Consolidated Statement of Operations. The Servicer shall also make available to the Owner or, at the Owner's request, any prospective Owner, any comparable interim statements to the extent any such statements have been prepared by the Servicer (and are available upon request to members or stockholders of the Servicer or to the public at large). The Servicer, if it has not already done so, agrees promptly to furnish to Owners copies of the statements specified above.

The Servicer also agrees to make available to any prospective Owner a knowledgeable financial and/or accounting officer for the purpose of answering questions respecting recent developments affecting the Servicer or the financial statements of the Servicer and to permit any prospective Owner to inspect the Servicer's servicing facilities for the purpose of satisfying such prospective Owner that the Servicer has the ability to service the Mortgage Loans in accordance with this Agreement.

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-32-

ARTICLE VIII

THE SERVICER

Section 8.01    Indemnification; Third Party Claims.

The Servicer shall indemnify the Owner and hold the Owner harmless against any and all claims, losses, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that the Owner may sustain in any way related to the failure of the Servicer to perform its duties and service the Mortgage Loans in material compliance with the terms of this Agreement. The Servicer shall notify the Owner promptly if a claim is made by a third party with respect to this Agreement or the Mortgage Loans, and the Servicer shall assume (with the consent of the Owner) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against the Servicer or the Owner in respect of such claim. The Owner shall promptly reimburse the Servicer for all amounts advanced by it pursuant to the preceding sentence except when the claim arises out of the Servicer's the failure to service and administer the Mortgage Loans in material compliance with the terms of this Agreement.

The Owner shall indemnify and hold the Servicer harmless from, and shall reimburse the Servicer for, any losses, damages, deficiencies, claims, causes of action or expenses of any nature, including reasonable attorney's fees, which result from (a) a material breach by the Owner of any of its covenants and agreements set forth herein, or (b) any claim against the Servicer by any third party which arises out of matters covered by this Agreement, except to the extent that such claim arises out of the Servicer's breach of its obligations under this Agreement or its negligent or willful acts or omissions.

Section 8.02    Merger or Consolidation of the Servicer.

The Servicer shall keep in full force and effect its existence, rights and franchises as a corporation, and shall obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement or any of the Mortgage Loans and to perform its duties under this Agreement.

Any Person into which the Servicer may be merged or consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Servicer shall be a party, or any Person succeeding to substantially all of the business of the Servicer (whether or not related to loan servicing), shall be the successor of the Servicer hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided, however, that the successor or surviving Person shall be an institution (i) having a GAAP net worth of not less than $100,000,000, (ii) the deposits of which are insured by the FDIC or which is a HUD-approved mortgagee whose primary business is the

[TPW: NY05:7042695.6]  18793-00001  08/10/00 05:44PM

-33-

origination and servicing of first mortgage loans and (iii) who is a FNMA and/or FHLMC approved seller/servicer in good standing.

Section 8.03    Limitation on Liability of the Servicer and Others.

The Servicer and any director, officer, employee or agent of the Servicer may rely on any document of any kind which it in good faith reasonably believes to be genuine and to have been adopted or signed by the proper authorities respecting any matters arising hereunder. Subject to the terms of Section 8.01, the Servicer shall have no obligation to appear with respect to, prosecute or defend any legal action which is not incidental to the Servicer's duty to service the Mortgage Loans in accordance with this Agreement.

Section 8.04    Servicer Not to Resign.

The Servicer shall not assign this Agreement nor resign from the obligations and duties hereby imposed on it except with the prior written consent of the Owner or upon the determination that the Servicer's duties hereunder are no longer permissible under applicable Law and such incapacity cannot be cured by the Servicer. Any such determination permitting the resignation of the Servicer shall be evidenced by an Opinion of Counsel to such effect delivered to the Owner, which Opinion of Counsel shall be in form and substance acceptable to the Owner. No such resignation shall become effective until a successor which satisfies the requirements of Section 8.02 has assumed the Servicer's responsibilities and obligations hereunder in accordance with Section 11.01.

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-34-

ARTICLE IX

DEFAULT

Section 9.01    Events of Default.

In case one or more of the following Events of Default by the Servicer shall occur and be continuing, that is to say:

(i)    any failure by the Servicer to remit to the Owner any payment required to be made under the terms of this Agreement which continues unremedied for a period of 2 days after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Owner; or

(ii)    failure by the Servicer to duly observe or perform, in any material respect, any other covenants, obligations or agreements of the Servicer as set forth in this Agreement or in the Custodial Agreement which failure continues unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Owner; or

(iii)    a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Servicer and such decree or order shall have remained in force, undischarged or unstayed for a period of 60 days; or

(iv)    the Servicer shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Servicer or relating to all or substantially all of the Servicer's property; or

(v)    the Servicer shall admit in writing its inability to pay its debts as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations; or

(vi)    the Servicer is suspended or terminated by FNMA, FHLMC, HUD or the VA;

then, and in each and every such case, so long as an Event of Default shall not have been remedied, the Owner, by notice in writing to the Servicer, may, in addition to whatever rights such Owner may have at law or equity to damages, including injunctive relief and specific performance, terminate all the rights and obligations of the Servicer under this Agreement (except to the extent otherwise provided herein). Upon receipt by the Servicer of such written notice, all authority and power of the Servicer under this Agreement, whether with respect to the Mortgage Loans or otherwise, shall pass

[TPW: NY05:7042695.6]  18793-00001  08/10/00 05:44PM

-35-

to and be vested in the successor appointed pursuant to Section 10.01. Upon written request from the Owner, the Servicer shall prepare, execute and deliver to a successor any and all documents and other instruments, place in such successor's possession all Mortgage Files that are in the Servicer's possession and do or cause to be done all other acts or things necessary or appropriate to effect the purposes of such notice of termination, at the Servicer's sole expense. The Servicer agrees to cooperate with the Owner and such successor in effecting the termination of the Servicer's responsibilities and rights hereunder with respect to such Owner, including, the transfer to such successor for administration by it of all amounts which shall at the time be credited by the Servicer to the Custodial Account or Escrow Account or thereafter received with respect to the Mortgage Loans.

Section 9.02    Waiver of Defaults.

The Owner may waive any default by the Servicer in the performance of its obligations hereunder and its consequences. Upon any waiver of a past default, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been remedied for every purpose of this Agreement. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto except to the extent expressly so waived.

-36-

### ARTICLE X

### TERMINATION

Section 10.01  Termination.

This Agreement shall terminate upon either: (a) the later of (i) the distribution to Owners of final payment or liquidation with respect to the last Mortgage Loan (or advances of same by the Servicer), and (ii) the disposition of all property acquired upon foreclosure or deed in lieu of foreclosure with respect to the last Mortgage Loan and the remittance of all funds due hereunder; or (b) mutual written agreement of the Servicer and the Owner.

Section 10.02  Termination With Cause.

The Owner may terminate, without any termination fee, any rights the Servicer may have hereunder with respect to such Owner, as provided in Section 9.01.

Section 10.03  Effect of Termination.

Upon the termination of this Agreement, the parties shall have no further obligations hereunder; provided, however, that the provisions of Sections 2.01, 2.02, 2.03, 2.04, 4.16 and 8.01 hereof shall survive any such termination, except to the extent otherwise specifically provided therein; and provided, further, that nothing set forth herein shall be deemed to relieve either party of (i) any obligation arising out of such party's acts or omissions, or any events occurring, during the term of this Agreement, or (ii) any obligation of a party under any other agreement between the parties, except as set forth in the provisions thereof.

-37-

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

Section 11.01  Successor to the Servicer.

Prior to termination of Servicer's responsibilities and duties under this Agreement pursuant to Sections 8.04, 9.01, 10.01(b) or 10.02, the party designated by the Owner shall, on behalf of such Owner, (i) succeed to and assume all of the Servicer's responsibilities, rights, duties and obligations under this Agreement, or (ii) appoint a successor having the characteristics set forth in Section 8.02 hereof and which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Servicer under this Agreement prior to the termination of Servicer's responsibilities, duties and liabilities under this Agreement. In connection with such appointment and assumption, the party so designated may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as it and such successor shall agree; provided, however, that no such compensation shall be in excess of that permitted the Servicer under this Agreement without the consent of the Owner. In the event that the Servicer's duties, responsibilities and liabilities under this Agreement should be terminated pursuant to the aforementioned Sections, the Servicer shall discharge such duties and responsibilities during the period from the date it acquires knowledge of such termination until the effective date thereof with the same degree of diligence and prudence which it is obligated to exercise under this Agreement, and shall take no action whatsoever that might impair or prejudice the rights or financial condition of its successor. The resignation or removal of the Servicer pursuant to the aforementioned Sections shall not become effective until a successor shall be appointed pursuant to this Section and shall in no event relieve the Servicer of the representations and warranties made pursuant to Article II.

Any successor appointed as provided herein shall execute, acknowledge and deliver to the Servicer and to Owner an instrument accepting such appointment, whereupon such successor shall become fully vested with all the rights, powers, duties, responsibilities, obligations and liabilities of the Servicer, with like effect as if originally named as a party to this Agreement. Any termination or resignation of the Servicer or this Agreement pursuant to Section 8.04, 9.01, 10.01 or 10.02 shall not affect any claims that any Owner may have against the Servicer arising prior to any such termination or resignation.

The Servicer shall promptly deliver to the successor the funds in the Custodial Account and Escrow Account and all Mortgage Loan Files and related documents and statements held by it hereunder and the Servicer shall account for all funds and shall execute and deliver such instruments and do such other things as may reasonably be required to more fully and definitively vest in the successor all such rights, powers, duties, responsibilities, obligations and liabilities of the Servicer.

Upon a successor's acceptance of appointment as such, the Servicer shall notify by mail the Owner of such appointment.

[TPW: NY05:7042695.6]  18793-00001  08/10/00 05:44PM

-38-

Section 11.02  Amendment.

This Agreement may be amended from time to time by the Servicer and the Owner by written agreement signed by the Servicer and the Owner.

Section 11.03  Duration of Agreement.

This Agreement shall continue in existence and effect until terminated as herein provided.

Section 11.04  Governing Law.

This Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to its conflicts of law principles, except to the extent preempted by Federal law, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

Section 11.05  General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)     the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)     accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)     references herein to "Articles", "Sections", "Subsections", "Paragraphs", and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)     a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)     the words "herein", "hereof", "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision;

(f)     the term "include" or "including" shall mean without limitation by reason of enumeration; and

[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM

-39-

(g)    the Article, Section and Subsection titles and headings in this Agreement are for convenience of reference only, and shall be disregarded in and have no effect on any interpretation of the provisions of this Agreement.

Section 11.06  Reproduction of Documents.

This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.  The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

Section 11.07  Notices.

Unless otherwise specifically provided herein, all demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given when received and shall be either personally delivered or sent by registered mail, postage prepaid or by overnight delivery service, to (a) in the case of the Servicer: GMAC Mortgage Corporation, 500 Enterprise Road, Suite 150, Horsham, Pennsylvania 19044, Attention: Mr. William J. Maguire, Vice President Investor Relations, with a copy to William Tierney, Esq., or such other address as may be hereafter furnished in writing by the Servicer; and (b) in the case of the Owner: The Frost National Bank, 100 West Houston Street, P.O. Box 1600, San Antonio, Texas 78296, Attention: Mr. John Griffith, with a copy to Stan McCormick, Esq., or such other address as may be hereafter furnished in writing by the Owner.

Section 11.08  Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be held invalid for any reason whatsoever, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement.  If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate in good-faith to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

[TPW: NY05:7042695.6]  18793-00001  08/10/00 05:44PM

-40-

Section 11.09  No Partnership or Agency.

Nothing herein contained shall be deemed or construed to create a partnership or joint venture between the parties hereto and the services of the Servicer shall be rendered as an independent contractor and not as agent for the Owner.

Section 11.10  Assignment by Owner.

The Owner may, without the consent of the Servicer, assign its rights hereunder to any Person to which the Owner transfers one or more Mortgage Loans, to the extent of such Mortgage Loans so transferred.  Any such assignee shall be deemed the "Owner" with respect to the related Mortgage Loan(s).

Section 11.11  Counterparts: Successors and Assigns.

This Agreement may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement.  Subject to Section 8.04, this Agreement shall inure to the benefit of and be binding upon the Servicer and the Owner and their respective successors and permitted assigns.

[TPW: NY05:7042695.6] 18793-00001  08/10/00 05:44PM

IN WITNESS WHEREOF, the Servicer and the Initial Owner have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

GMAC MORTGAGE CORPORATION,
Servicer

By: _William J. Maguire_____

       Name: William J. Maguire

Title:   Vice President Investor Relations

THE FROST NATIONAL BANK,
Initial Owner

By: _____

       Name: John H. Griffith

Title:   Senior Vice President

EXHIBIT A

FORM OF ACKNOWLEDGMENT AGREEMENT

As of this _____ day of _____, _____ (the "Transfer Date"),
The Frost National Bank, (the "Owner") as the Owner under that certain Servicing Agreement dated
as of _____, 2000 (as amended from
time to time, the ("Servicing Agreement") between the Owner and GMAC Mortgage Corporation
(the "Servicer"), does hereby transfer to the Servicer, as Servicer under the Servicing Agreement,
the servicing responsibilities related to the Mortgage Loans listed on the Mortgage Loan Schedule
attached hereto. The Servicer hereby accepts the servicing responsibilities transferred hereby and on
the date hereof assumes all servicing responsibilities related to the Mortgage Loans identified on the
Mortgage Loan Schedule annexed hereto as Schedule I, all in accordance with the Servicing
Agreement. Such Mortgage Loan Schedule may be updated to reflect final information relating to
the Mortgage Loans following receipt by the Servicer of the Servicing File. The contents of each
Servicing File required to service the Mortgage Loans pursuant to the Servicing Agreement are in
the possession of the Servicer in accordance with the terms of Section 3.01 (a) of the Servicing
Agreement.

Capitalized terms used herein and not otherwise defined shall have the meanings set
forth in the Servicing Agreement.

This Acknowledgment Agreement may be executed simultaneously in any number
of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall
constitute one and the same instrument.

-2-

IN WITNESS WHEREOF, the Owner and the Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.


OWNER:


THE FROST NATIONAL BANK


By: _____
      Name:
      Title:


SERVICER:


GMAC MORTGAGE CORPORATION


By: _____
      Name:
      Title:


[TPW: NY05:7042695.6] 18793-00001 08/10/00 05:44PM     2

EXHIBIT A

SCHEDULE I

MORTGAGE LOAN SCHEDULE

[TPW: NY05:7042695.6]  18793-00001  08/10/00 05:44PM

EXHIBIT B

FORM OF CUSTODIAL ACCOUNT LETTER AGREEMENT

(date)

To:  _____

     _____

     _____

(the "Depository")

As "Servicer" under the Servicing Agreement, dated as of _____, 2000, Residential Mortgage Loans (the "Agreement"), we hereby authorize and request you to establish an account, as a Custodial Account pursuant to Section 4.04 of the Agreement, to be designated as "GMAC Mortgage Corporation, in trust for the Owner - Residential Mortgage Loans." All deposits in the account shall be subject to withdrawal therefrom by order signed by the Servicer. This letter is submitted to you in duplicate. Please execute and return one original to us.

GMAC MORTGAGE CORPORATION

By: _____

Name: _____

Title: _____

The undersigned, as "Depository", hereby certifies that the above described account has been established under Account Number _____, at the office of the depository indicated above, and agrees to honor withdrawals on such account as provided above. The amount deposited at any time in the account will be insured by the Federal Deposit Insurance Corporation to the maximum extent permitted under applicable law.

_____

(name of Depository)

By: _____

Name: _____

Title: _____

[TPW: NY05:7042695.6] 18793-00001  08/10/00 05:44PM

EXHIBIT C

FORM OF ESCROW ACCOUNT LETTER AGREEMENT


(date)


To:    _____

       _____

       _____

(the "Depository")

      As "Servicer" under the Servicing Agreement, dated as of _____, 2000, Residential Mortgage Loans (the "Agreement"), we hereby authorize and request you to establish an account, as an Escrow Account pursuant to Section 4.06 of the Agreement, to be designated as "GMAC Mortgage Corporation, in trust for the Owner - Residential Mortgage Loans and various Mortgagors." All deposits in the account shall be subject to withdrawal therefrom by order signed by the Servicer. This letter is submitted to you in duplicate. Please execute and return one original to us.

GMAC MORTGAGE CORPORATION


      By:_____
      Name:_____
      Title:_____


      The undersigned, as "Depository", hereby certifies that the above described account has been established under Account Number _____, at the office of the depository indicated above, and agrees to honor withdrawals on such account as provided above. The amount deposited at any time in the account will be insured by the Federal Deposit Insurance Corporation to the maximum extent permitted under applicable law.


      _____

      (name of Depository)


      By:_____
      Name:_____
      Title:_____


[TPW: NY05:7042695.6] 18793-00001  08/10/00 05:44PM

FIRST AMENDMENT TO SERVICING AGREEMENT

This First Amendment to Servicing Agreement (the "Amendment"), dated and effective as of November 6, 2000, is executed between The Frost National Bank, as owner (the "Owner") and GMAC Mortgage Corporation, as servicer (the "Servicer"), amending the Servicing Agreement for Residential Mortgage Loans, dated and effective as of June 30, 2000, which was executed between the Owner and the Servicer (the "Agreement").

WHEREAS, the Owner and the Servicer have entered into the Agreement, which sets forth the terms and conditions pursuant to which the Servicer shall service on behalf of the Owner certain Mortgage Loans owned by the Owner, and with respect to which the Owner and the Servicer execute an Acknowledgment Agreement; and

WHEREAS, the Servicing Agreement provides, inter alia, (i) that the Mortgage Loan Files with respect to the Mortgage Loans are to be held by the Servicer on behalf of the Owner; and (ii) for certain reports to be furnished by the Servicer to the Owner; and

WHEREAS, the Owner and the Servicer desire to amend in certain respects the provisions of the Agreement pertaining to (i) the custody of the Mortgage Loan Files with respect to certain Mortgage Loans and (ii) the reports to be furnished by the Servicer to the Owner on a monthly basis with respect to each remittance;

NOW, THEREFORE, in consideration of the premises and the mutual agreements hereinafter set forth and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Owner and the Servicer agree as follows:

1.    Defined Terms.

All capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in the Servicing Agreement.

2.    Custody of Mortgage Loan Files.

Section 3.01(a) of the Agreement is hereby amended and restated to read in its entirety as follows:

(a)    The Owner, by execution and delivery of this Agreement (and the related Acknowledgment Agreement), does hereby contract with the Servicer for, and, subject to the terms of this Agreement, the Servicer agrees to, the servicing of the Mortgage Loans.

[TPW: NY05:7047432.3] 18793-00001 11/06/00 11:15AM

-2-

On or before the Initial Transfer Date, the Owner shall transfer or cause to be transferred to the Servicer, the Mortgage Loan Files and the Servicing Files with respect to the Mortgage Loans listed on the related Mortgage Loan Schedule (the "Initial Mortgage Loans"). All Mortgage Loan Files with respect to the Initial Mortgage Loans shall be held by the Servicer, at no cost to the Owner, in the Servicer's custodial area, in secure fireproof files, in the same manner and using the same standard of care required by FNMA with respect to document custodians holding mortgage loan documents on behalf of FNMA. Promptly after receipt of a Mortgage Loan File with respect to any Initial Mortgage Loan, the Servicer, in its capacity as custodian, shall deliver to the Owner a certification stating that it has received such Mortgage Loan File and is holding the same in trust for the Owner.

With respect to any Mortgage Loan to be serviced by the Servicer hereunder pursuant to an Acknowledgment Agreement executed with respect to a Transfer Date subsequent to the Initial Transfer Date (the "Subsequent Mortgage Loans"), it is understood and agreed by the Owner and the Servicer that the related Mortgage Loan Files shall be held by Escrow Bank USA ("Escrow Bank"), at no cost to the Owner, pursuant to a custodial agreement to be entered into by and among the Owner, the Servicer and Escrow Bank (the "Custodial Agreement"), which Custodial Agreement shall obligate Escrow Bank (i) to maintain custody of the Mortgage Loan Files with respect to the Subsequent Mortgage Loans in accordance with the standard of care of prudent custodians holding mortgage loan documents on behalf of secondary market mortgage loan purchasers, but in no event in accordance with a standard of care that is lower than that required by FNMA with respect to document custodians holding mortgage loan documents on behalf of FNMA, and (ii) to deliver to the Owner, promptly after the receipt of a Mortgage Loan File with respect to any Subsequent Mortgage Loan, a certification stating that it has received such Mortgage Loan File and is holding the same in trust for the Owner.

3.    Statements to the Owners.

The first and second paragraphs of Section 5.02 of the Agreement are hereby deleted, and the following text inserted in lieu thereof:

The Servicer shall provide to the Owner, not later than five (5) Business Days after each Remittance Date and with respect to the related remittance, a hard copy Standard Monthly Single Debit Report with respect to each Mortgage Loan. Not later than five (5) Business Days after the end of each calendar month, the Servicer shall deliver to the Owner a computer readable data tape, as of the end of the immediately preceding calendar month, containing such information as agreed in good faith between the parties.

[TPW: NY05:7047432.3] 18793-00001 11/06/00 11:15AM

-3-

Within a reasonable period of time after the end of each calendar year, the Servicer shall furnish a report to each Person that was an Owner at any time during such calendar year. Such report shall state the aggregate of amounts reported constituting principal, interest and assumption fees, servicing compensation and amounts reimbursed to the Servicer pursuant to Section 8.01 for such calendar year or, in the event such Person was an Owner of record during only a portion of such calendar year, for the applicable portion of such year. Such obligation of the Servicer shall be deemed to have been satisfied to the extent that substantially comparable information shall be provided by the Servicer pursuant to any requirements of the Internal Revenue Code as from time to time in force.

4.    All Other Provisions in Remain Effect.

Except as specifically provided in this Amendment, all other provisions of the Agreement shall remain in full force and effect.

5.    Governing Law.

This Amendment shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to its conflicts of law principles, except to the extent preempted by Federal law, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

6.    General Interpretive Principles.

The general interpretive principles set forth in the Agreement shall be applicable to this Amendment.

7.    Counterparts.

This Amendment may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement.

[TPW: NY05:7047432.3] 18793-00001 11/06/00 11:15AM

EXHIBIT A

IN WITNESS WHEREOF, the Servicer and the Owner have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

GMAC MORTGAGE CORPORATION,
Servicer

By: _William J. Maguire_____
Name: William J. Maguire
Title:   Vice President Investor Relations

THE FROST NATIONAL BANK,
Initial Owner

By:_____
Name: John H. Griffith
Title:   Senior Vice President

IN WITNESS WHEREOF, the Servicer and the Owner have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

GMAC MORTGAGE CORPORATION,
Servicer

By:_____
Name:  William J. Maguire
Title:   Vice President Investor Relations

THE FROST NATIONAL BANK,
Initial Owner

By:_____
Name:  John H. Griffith
Title:   Senior Vice President

## ACKNOWLEDGMENT AGREEMENT

As of this 1st day of September, 2000 (the "Transfer Date"), The Frost National Bank, (the "Owner") as the Owner under that certain Servicing Agreement dated as of June 30, 2000 (as amended from time to time, the ("Servicing Agreement") between the Owner and GMAC Mortgage Corporation (the "Servicer"), does hereby transfer to the Servicer, as Servicer under the Servicing Agreement, the servicing responsibilities related to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto. The Servicer hereby accepts the servicing responsibilities transferred hereby and on the date hereof assumes all servicing responsibilities related to the Mortgage Loans identified on the Mortgage Loan Schedule annexed hereto as Schedule I, all in accordance with the Servicing Agreement. Such Mortgage Loan Schedule may be updated to reflect final information relating to the Mortgage Loans following receipt by the Servicer of the Servicing File. The contents of each Servicing File required to service the Mortgage Loans pursuant to the Servicing Agreement are in the possession of the Servicer in accordance with the terms of Section 3.01 (a) of the Servicing Agreement.

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Servicing Agreement.

This Acknowledgment Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

[TPW: NY05:7046813.1] 18793-00001 08/22/00 11:12AM

       IN WITNESS WHEREOF, the Owner and the Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

OWNER:

THE FROST NATIONAL BANK

By: _____

     Name:  John H. Griffith
     Title:  Senior Vice President


SERVICER:

GMAC MORTGAGE CORPORATION

By: _____

     Name:  William J. Maguire
     Title:  Vice President

[TPW: NY05:7046813.1] 18793-00001 08/22/00 11:12AM

EXHIBIT A