**Hearing Date: June 18, 2012 at 10:00 a.m.**

| **MORGAN, LEWIS & BOCKIUS LLP**<br>James L. Garrity, Jr.<br>John C. Goodchild, III (*pro hac vice* admission pending)<br>101 Park Avenue<br>New York, New York 10178-0600<br>Telephone: (212) 309-6000<br>Facsimile: (212) 309-6001<br><br>*Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustees of Certain Mortgage Backed Securities Trusts* | **DECHERT LLP**<br>Glenn E. Siegel<br>Brian E. Greer<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Telephone: (212) 698-3500<br>Facsimile: (212) 698-<br><br>*Counsel to The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage Backed Securities Trusts* |
|---|---|
| **ALSTON & BIRD LLP**<br>Martin G. Bunin<br>Craig E. Freeman<br>90 Park Avenue<br>New York, NY 10016<br>Telephone: (212) 210-9400<br>Facsimile: (212) 210-9444<br><br>*Counsel for Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts* | **SEWARD & KISSEL LLP**<br>Ronald L. Cohen<br>Arlene R. Alves<br>One Battery Park Plaza<br>New York, New York 10004<br>Telephone: (212) 574-1200<br>Facsimile: (212) 480-8421<br><br>*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage Backed Securities Trusts* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | Chapter 11 |
| Debtors. | **Jointly Administered** |

**LIMITED OBJECTION OF CERTAIN TRUSTEES FOR
RESIDENTIAL MORTGAGE BACKED SECURITIES TRUSTS
TO THE DEBTORS' POSTPETITION FINANCING MOTIONS**

-i-

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................................... 2
RELEVANT BACKGROUND ............................................................................................... 2
    A. OBLIGATIONS UNDER THE PSAs ..................................................................... 3
    B. THE TRUST CLAIMS .............................................................................................. 4
    C. THE SERVICING ADVANCE RECEIVABLES ................................................... 5
    D. THE BARCLAYS DIP MOTION ............................................................................ 6
    E. THE AFI DIP MOTION ........................................................................................... 7
ARGUMENT ............................................................................................................................ 8
    I. THE TRUSTEES HAVE VALID RIGHTS OF SETOFF ........................................ 8
    II. THE TRUSTEES HAVE VALID RIGHTS OF RECOUPMENT ......................... 10
    III. THE DEBTORS ARE NOT ENTITLED TO AN ORDER DESTROYING
    THE TRUSTEES' RIGHTS OF SETOFF AND RECOUPMENT ............................ 11
    IV. THE TRUSTEES ARE ENTITLED TO ADEQUATE PROTECTION ............. 13
CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bank of New York v. Treco (In re Hamilton)*,
  240 F.3d 148 (2d Cir. 2001)..................................................................................13

*Ferguson v. Lion Holding, Inc.*,
  312 F. Supp. 2d 484 (S.D.N.Y. 2004)..............................................................8, 10

*In re Bennet Funding Group*,
  146 F.3d 136 (2d Cir. 1998)....................................................................................8

*In re Orion Pictures Corp.*,
  4 F.3d 1095 (2d Cir. 1993)....................................................................................10

*N.Y. State Electric and Gas Corp. v. McMahon (In re McMahon)*,
  129 F.3d 93. (2d Cir. 1997)...................................................................................10

*Nat'l Cash Register Co. v. Joseph*,
  299 N.Y. 200, 86 N.E.2d 561 (1949)....................................................................10

**STATUTES**

11 U.S.C. § 362.............................................................................................................12

11 U.S.C. § 363(e).........................................................................................................13

11 U.S.C. § 363(f)................................................................................................... 11, 12

11 U.S.C. § 553...............................................................................................................8

11 U.S.C. § 553(a)..........................................................................................................9

11 U.S.C. § 506(a)........................................................................................................13

N.Y. DEBT & CRED. LAW § 151 ..................................................................................8

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7001(2) ............................................................................................10

The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, U.S. Bank National Association and Wells Fargo Bank, N.A., in their capacities as trustees or indenture trustees for certain mortgage or home equity lines of credit backed securities trusts (collectively, the "**Trustees**"), hereby file their objection (the "**Objection**") to the (i) *Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing the Debtors to (A) Enter into and Perform under Receivables Purchase Agreements and Mortgage Loan Purchase And Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c), and (III) Granting Related Relief* [Docket No. 13] (the "**Barclays DIP Motion**"), (ii) *Corrected Debtors' Motion for Interim and Final Orders Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 507(b) and Bankruptcy Rules 4001 and 6004: (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral and Related Relief, (III) Granting Adequate Protection and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c), and (V) Granting Related Relief* [Docket No. 42] (the "**AFI DIP Motion**" and collectively with the Barclays DIP Motion, the "**DIP Motions**"); and (iii) *Debtors' Motion for Interim and Final Orders Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 507(b) and Bankruptcy Rule 4001(b): (I) Authorizing the Use of Cash Collateral and Related Relief, (II) Granting Adequate Protection and (III) Scheduling a Final Hearing* [Docket No. 15] (the "**Citibank Motion**"). In support of their Objection, the

Trustees rely on the *Affidavit of James L. Garrity, Jr. in Support of the Limited Objections of Certain Trustees for Residential Mortgage Backed Securities Trusts to the Debtors' Sale Motion and Postpetition Financing Motions*, filed contemporaneously herewith (the "**Garrity Affidavit**"), and respectfully submit as follows:[1]

## PRELIMINARY STATEMENT

The Trustees do not generally oppose the Debtors' attempts to obtain postpetition financing and do not object to the vast majority of the relief that the Debtors seek in the DIP Motions. The DIP Motions, however, should be denied because they seek to extinguish the Trustees' rights of setoff and recoupment, without the Trustees' consent or any legal authority to do so. Accordingly, the DIP Motions should not be granted absent appropriate provision of adequate protection to the Trustees.

## RELEVANT BACKGROUND

1. On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors, together with their non-debtor subsidiaries, engage in two lines of business: (i) the origination and servicing business and (ii) their so-called "legacy portfolio operations" consisting of mortgage loans and other residual financial assets. Whitlinger Aff. ¶16.[2]

2. The Debtors' primary and most valuable operations consist of servicing mortgage loans for investors, including loans originated by the Debtors, Ally Bank (f/k/a GMAC Bank) and other third parties. Whitlinger Aff. ¶6. As of March 31, 2012, the Debtors

---

[1] The Trustees file this Objection solely in their capacity as trustees of the PLS Trusts and not in any of their capacities as members of the Official Committee of Unsecured Creditors (the "**Committee**"). Nothing in this Objection is intended to contradict the Committee's objections or other pleadings in respect of the DIP Motions.

[2] The term "Whitlinger Aff." refers to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 6].

2

were servicing over 2.4 million mortgage loans with an aggregate unpaid principal balance of approximately $372 billion, making them the fifth largest servicer of residential mortgage loans in the United States. *Id.* ¶¶ 6, 9. Since 2008, mortgage loan servicing has been the Debtors' main source of ongoing revenue. *Id.* ¶ 25.

3.     The Debtors' business strategy also incorporates securitizing or selling substantially all of the mortgage loans they purchase or originate. Whitlinger Aff. ¶ 21. "). In addition, prior to the collapse of the mortgage industry in 2007, the Debtors were active sponsors of private label securitizations which they pooled into securitization trusts and contributed loans and provided servicing to private label securitizations sponsored by third parties (collectively, the "**PLS Trusts**"). *Id.* ¶ 23 n.15. The securities issued by GA Securitization Trusts (as defined in the Whitlinger Aff.) and the PLS Trusts are owned by a broad range of investors. *Id.* ¶ 23.

*A. Obligations under the PSAs*

4.     The Trustees are trustees for hundreds of PLS Trusts, which currently contain hundreds of billions of dollars in principal amount of mortgage loans or home equity credit loans serviced by Debtor-entities. The beneficial owners of the mortgage loans held by the PLS Trusts are investors in residential mortgage-backed securities ("**RMBS**"), which typically include public and private pension funds and other institutional fixed income investors.

5.     Each PLS Trust was formed pursuant to either a "Pooling and Servicing Agreement" or pursuant to a highly-integrated set of "Servicing Agreements," "Mortgage Loan Purchase Agreements," "Indentures," and/or "Trust Agreements," or similar transaction documents, which when combined, provide for administration of trust assets and the related RMBS. For convenience of reference herein, the integrated contract governing each PLS Trust

3

will be referred to herein as a "**PSA**," even if the arrangements are physically memorialized in one or more differently styled contracts.[3]

6.  Each PSA specifies the rights and obligations of the Debtors, the Trustees, RMBS investors and, as applicable, other parties in interest to the specific transaction. While the terms of specific transactions vary, in general the PSAs provide that the Debtors are responsible for all tasks relating to the administration of the PLS Trusts' mortgage loan assets (*e.g.* billing, collecting, foreclosing, maintaining and selling REO properties), the investment of mortgage loan cash flows pending distribution to securities holders, and the compilation, computation and reporting of mortgage loan performance data. In some PSAs, the Debtors are also required to enforce mortgage loan sellers' (including the Debtors') responsibility to repurchase defective loans. *See, e.g.*, PSA Exemplar 1 § 2.04. Finally, under many of the PSAs, the Debtors, as servicer, are required to pay all fees and expenses of the Trustees and to indemnify, defend and hold the Trustees harmless from all loss, liability, cost or expense arising from the Trustees' administration of the PLS Trusts. *See, e.g.*, PSA Exemplar 1 § 8.05(c).

*B. The Trust Claims*

7.  The Trustees hold several different types of claims against the Debtors under the PSAs, both in the Debtors' capacities as originator and as servicer. First, the Trustees have claims arising from the Debtors' obligations under the PSAs to notify the Trustees and other parties in interest of the existence of material mortgage loan defects, including breaches of the representations and warranties under the PSAs, upon the Debtors' discovery thereof (the

---

[3] This simplification of nomenclature should not, however, be taken to suggest uniformity in the terms and conditions of these contracts. Although there are groups of PSAs whose terms are quite similar, there are material differences among many of the PSAs affected by the DIP Motions. Two exemplar PSAs are attached as Exhibits A-1 and A-2, respectively, to the Garrity Affidavit. Exhibit A-1 ("**PSA Exemplar 1**") uses one of the so-called "Standard Terms" PSAs, which—in somewhat varying forms notwithstanding the "Standard Terms" moniker—govern many Debtor-sponsored RMBS transactions. Exhibit A-2 ("**PSA Exemplar 2**") uses very different documentation.

"**Notification Claims**"). Second, the Trustees have repurchase claims against the Debtors with respect to any defective mortgage loans sold by the Debtors to the PLS Trusts (the "**Repurchase Claims**"). Third, the Trustees have claims relating to the Debtors' (principally, Residential Funding LLC's and GMAC Mortgage LLC's) breaches of their mortgage loan administration obligations as master, primary or subservicers (including the obligation to make Advances (as defined below)) of various PLS Trusts' mortgage loans (the "**Loan Servicing Claims**"). Fourth, the Trustees have claims against the Debtors for the payment of the fees and indemnification amounts arising from losses, liabilities, costs and expenses of administering the PLS Trusts, including, but not limited to, costs relating to third-party claims relating to mortgage loans held in trust and the Debtors' loan origination and servicing activities with respect thereto (the "**Indemnification Claims**" and collectively with the Notification Claims, the Repurchase Claims and the Loan Servicing Claims and other related claims, the "**Trust Claims**"). *See, e.g.*, PSA Exemplar 1 § 8.05(c). The Indemnification Claims also extend to the Debtors' failure to enforce mortgage loan sellers' (including the Debtors') obligations to repurchase defective mortgage loans sold to the PLS Trusts. Finally, as the Trustees conduct ongoing diligence on the myriad transactions in their portfolios involving the Debtors, they may have additional types of claims against the Debtors. The nature, scope and amount of all of the foregoing claims may vary based on the documentation setting forth the obligations with respect to each Trust.

*C. The Servicing Advance Receivables*

8.  Under the PSAs, the Debtors administer segregated custodial accounts for each PLS Trust into which such trust's mortgage loan proceeds and certain other trust assets are deposited when they are received in trust for the benefit of PLS Trust investors (the "**Custodial Accounts**"). *See, e.g.,* PSA Exemplar § 3.07(b). As a part of the Debtors' servicing obligations

5

under the PSAs (which the Debtors refer to as "mortgage servicing *rights*" in the DIP Motions and other pleadings), the Debtors are required, in certain circumstances, to advance funds (as defined in the Barclays DIP Motion, the "**Advances**") to the PLS Trusts. Typically, the PSAs allow the Debtors to reimburse themselves on an ongoing basis ("from-time-to-time") from certain specified collections in the Custodial Accounts for Advances and certain other expenses incurred in the course of servicing the PLS Trusts' mortgage loans, subject to the satisfaction of various conditions specified in the PSAs. *See, e.g.*, PSA Exemplar 1 § 3.10(a).

9.  As part of their ongoing post-petition servicing of the PLS Trusts' mortgage loans, the Debtors are continuing to reimburse themselves out of the PLS Trust's funds. *See* Whitlinger Aff. ¶¶ 29, 32. During the period between the Debtors making Advances and reimbursing themselves from the Custodial Accounts, however, the Debtors have claims against the PLS Trusts and corresponding accounts receivable (as defined in the Barclays DIP Motion, the "**Servicing Advance Receivables**"). On information and belief, as of the Petition Date, the total amount of Servicing Advance Receivables was over $1 billion.

*D. The Barclays DIP Motion*

10. As described in the Barclays DIP Motion, prepetition, the Debtors routinely sold Servicing Advance Receivables to a Cayman Islands special purpose entity (as defined in the Barclays DIP Motion, the "**GSAP Issuer**"). The GSAP Issuer, which is not a debtor under the Bankruptcy Code, then issues notes, which are secured by the Servicing Advance Receivables owned by the GSAP Issuer (as defined in the Barclays DIP Motion, the "**Initial Receivables**"). In the Barclays DIP Motion, the Debtors seek authority to repurchase the Initial Receivables and pledge them as collateral to secure postpetition financing (the "**Barclays DIP**") from Barclays Bank PLC, as collateral agent under the DIP Credit Agreement (as defined in the Barclays DIP

6

Motion). Also in the Barclays DIP Motion, the Debtors seek an order that provides: "Each [Debtor] Borrower shall acquire the Initial Receivables purchased by it free and clear of all liens, claims, encumbrances, interests (as such term is used in section 363(f) of the Bankruptcy Code), <u>setoff rights and rights of recoupment</u>." Barclays DIP Motion, Exhibit A ¶ 7(b) (emphasis added).

11.     As also described in the Barclays DIP Motion, the Debtors additionally seek authority for GMACM Borrower LLC and RFC Borrower LLC, both Debtors in these cases, to purchase any Servicing Advance Receivables (as defined in the Barclays DIP Motion, the "**Additional Receivables**") generated after the Closing Date (as defined in the DIP Credit Agreement) by GMAC Mortgage, LLC and Residential Capital, LLC, also both Debtors in these cases. The Debtors propose to pledge the Additional Receivables as additional collateral to secure the Barclays DIP and seek an order that provides:

> Pursuant to sections 363(b)(1) and (f) of the Bankruptcy Code, each Additional Receivable sold or contributed by [GMAC Mortgage, LLC] or [Residential Capital, LLC] to the applicable [Debtor] Borrower pursuant to the applicable Receivables Pooling Agreement or Mortgage Loan Purchase and Contribution Agreement shall be deemed to have been transferred by [GMAC Mortgage, LLC] and [Residential Capital, LLC], as applicable, free and clear of all liens, claims, encumbrances and other interests (as such term is used in section 363(f) of the Bankruptcy Code), in such property <u>and any rights of setoff and/or recoupment with respect to such property</u>.

Barclays DIP Motion, Exhibit A ¶ 7(b) (emphasis added).

*E. The AFI DIP Motion*

12.     In addition to the Barclays DIP, the Debtors seek authority in the AFI DIP Motion to obtain further postpetition financing from their parent, Ally Financial Inc. In the AFI DIP Motion, the Debtors seek an order that provides: "The parties on whose behalf the [Debtor]

7

Borrowers are making servicer advances hereby waive any and all rights of setoff or recoupment against the Debtors and AFI to the extent such advances are directly funded by Cash Collateral." AFI DIP Motion, Exhibit A ¶ 29.

## ARGUMENT

*I. The Trustees Have Valid Rights of Setoff*

13.     The Trustees unquestionably have setoff rights under New York law, which governs substantially all of the PSAs. *See* N.Y. DEBT & CRED. LAW §151 ("Every debtor shall have the right . . . to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor, at or at any time after, the [filing of a petition under the Bankruptcy Code]."); *see also In re Bennet Funding Group*, 146 F.3d 136, 139 (2d Cir. 1998) ("no question that New York has long recognized a common law right of setoff"). More specifically, the Trustees have the right to setoff the Trust Claims (which are indebtedness of the Debtors to the PLS Trusts) against the Advances (which are indebtedness of the PLS Trusts to the Debtors) or any other amounts the PLS Trusts owe to the Debtors, including servicing fees. *See, e.g., Ferguson v. Lion Holding, Inc.*, 312 F. Supp. 2d 484, 503 (S.D.N.Y. 2004). Such setoff rights are particularly valuable in these cases where the total amount of the Servicing Advance Receivables as of the Petition Date exceeded $1 billion, and the total amount of the Trust Claims is several multiples of $1 billion.

14.     The Bankruptcy Code explicitly preserves a creditor's right to setoff. *See* 11 U.S.C. § 553. Section 553(a) provides, in relevant part: "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement

8

of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a).

15. The Trustees' setoff rights satisfy the requirement in § 553 of "mutual debt." First, all or substantially all of the Trust Claims accrued prepetition, and at least $1 billion of the Servicing Advance Receivables accrued prepetition. Second, the specific Debtor-entity that made a prepetition Advance pursuant to a particular PSA is the same Debtor-entity that is liable for the Trust Claims related to such PSA. For example, Residential Funding LLC and GMAC Mortgage LLC are the servicers pursuant to many of the PSAs. Accordingly, they made prepetition Advances pursuant to the PSAs, thus accruing Servicing Advance Receivables. Likewise, as servicers, they are liable for the Notification Claims, the Repurchase Claims,[4] the Loan Servicing Claims and the Indemnification Claims—*i.e.* the Trust Claims—related to the PSAs that they service.

16. To be clear, some of the PSAs may include waivers of the Trustees' rights of setoff. However, each PLS Trust created by a PSA is a separate entity, and a waiver in one PSA does not affect the Trustees' setoff rights with respect to any other PLS Trusts. Moreover, even to the extent that a particular PSA includes a waiver of setoff rights, the Debtors are not entitled to the relief they seek in the DIP Motions. Specifically, the Debtors seek a finding that the Trustees waived setoff rights with respect to the "Eligible PLS Trusts," which the Debtors generally define as PLS Trusts that include setoff waivers. Yet the Debtors have offered no evidence that could support such a finding (*e.g.*, they have not even offered the PSAs creating such Eligible PLS Trusts as evidence), and even if they had, any challenge to the Trustees'

---

[4] Although Residential Funding LLC and GMAC Mortgage LLC, as servicers, might not have direct obligations to repurchase defective mortgage loans sold to the PLS Trusts, they are still liable for the Repurchase Claims on account of their failure to (i) notify the Trustees and other parties in interest of the existence of material mortgage loan defects upon the their discovery thereof and (ii) enforce mortgage loan sellers' obligations to repurchase defective mortgage loans sold to the PLS Trusts.

9

rights of setoff must be made in a separate adversary proceeding and cannot be raised in this summary proceeding. *See* Fed. R. Bankr. P. 7001(2) ("The following are adversary proceedings: . . . a proceeding to determine the validity, priority, or extent of a lien or other interest in property."); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098-99 (2d Cir. 1993) (holding that courts should not decide disputed legal contract issues in the course of summary proceedings). In addition, as discussed more fully below, any waivers of setoff rights do not affect the Trustee's rights of recoupment, which are completely separate and distinct rights.

*II. The Trustees Have Valid Rights of Recoupment*

17.   Separate and apart from their rights of setoff, the Trustees also have valid rights of recoupment. "While the Bankruptcy Code does not mention recoupment explicitly, bankruptcy law does recognize the recoupment doctrine." *N.Y. State Electric and Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93, 95-96. (2d Cir. 1997). As with setoff, recoupment rights are "determined by nonbankruptcy law, which ordinarily is state law." *Id.* at 96 (citing *In Re Village Craftsman, Inc.*, 160 B.R. 740, 746 (Bankr. D.N.J.1993)). Under New York law, "[r]ecoupment means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered." *Nat'l Cash Register Co. v. Joseph*, 299 N.Y. 200, 86 N.E.2d 561, 562 (1949) (internal citations omitted); *McMahon*, 129 F.3d at 96 (quoting *Nat'l Cash Register*); *Ferguson*, 312 F. Supp. 2d at 503. Moreover, in bankruptcy, recoupment may occur "within a single contract or transaction or a single set of transactions." *McMahon*, 129 F.3d at 96. Unlike setoff, for recoupment, "[m]utuality is also not required, and the relevant obligations need not both be prepetition in nature." Collier on Bankruptcy P 553.10 (Alan N. Resnick & Henry J.

10

Sommer eds., 16th ed.) (citing *Sapir v. Blue Cross/Blue Shield (In re Yonkers Hamilton Sanitarium, Inc.)*, 34 B.R. 385, 386 (S.D.N.Y. 1983)).

18.    Although the Trustees' rights of recoupment have a different legal foundation from their rights of setoff, the effect in this instance is similar. Because the Trust Claims and the Advances arise out of the same transaction or set of transactions, the Trustees have a right to recoup the Trust Claims (which are indebtedness of the Debtors to the PLS Trusts) against the Advances (which are indebtedness of the PLS Trusts to the Debtors) or any other amounts the PLS Trusts owe to the Debtors pursuant to the PSAs, including servicing fees. Unlike setoff, however, the Trustees may recoup the Trust Claims against postpetition Advances. And importantly, the PSAs do <u>not</u> include a waiver of the Trustees' recoupment rights.

*III. The Debtors are not Entitled to an Order Destroying the Trustees' Rights of Setoff and Recoupment*

19.    The Debtors fail to assert any factual predicate or legal authority for their attempts to destroy the Trustees' setoff and recoupment rights.[5]

20.    In the Barclays DIP Motion, the Debtors seek authority to purchase the Initial Receivables from the GSAP Issuer, a non-debtor, "free and clear of all liens, claims, encumbrances and other interests (as such term is used in section 363(f) of the Bankruptcy Code) in such property and any rights of setoff and/or recoupment with respect to such property." Barclays DIP Motion, Exhibit A ¶ 7(b). Bankruptcy Code § 363(f) only provides that a debtor may <u>*sell*</u> property free and clear of any interest in such property. *See* 11 U.S.C. § 363(f). Neither § 363 nor any other provision in the Bankruptcy Code provides that a debtor may <u>*purchase*</u> property from a non-debtor free and clear of any interest in such property. The Debtors cite no legal authority for such extraordinary relief.

---

[5]  Although the Citibank Motion does not explicitly implicate the Trustees' setoff or recoupment rights, the Trustees object to the extent that the Citibank Motion seeks to affect their setoff or recoupment rights.

21. Also in the Barclays DIP Motion, the Debtors seek authority to sell the Additional Receivables from one Debtor to another Debtor, "free and clear of all liens, claims, encumbrances and other interests (as such term is used in section 363(f) of the Bankruptcy Code), in such property and any rights of setoff and/or recoupment with respect to such property." Barclays DIP Motion, Exhibit A, ¶ 7(d). Although the Debtors satisfy the first element of a free and clear sale with respect to the Additional Receivables (because a debtor is the seller) the Debtors still fail to establish an entitlement to a free and clear order. Bankruptcy Code § 363(f) provides that a debtor may sell property free and clear, <u>only if</u>:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest

11 U.S.C. § 363(f). The Debtors have not alleged that they can satisfy any of these prerequisites with respect to the Trustees' rights of setoff and recoupment and have provided no evidence to meet any of them.

22. The AFI DIP Motion also seeks an order providing that the Trustees' rights of setoff and recoupment are destroyed. *See* AFI DIP Motion, Exhibit A ¶ 29 ("The parties on whose behalf the [Debtor] Borrowers are making servicer advances hereby waive any and all rights of setoff or recoupment against the Debtors and AFI to the extent such advances are directly funded by Cash Collateral."). As with the Barclays DIP Motion, the Debtors cite no factual or legal support for such extraordinary relief.

### *IV. The Trustees are Entitled to Adequate Protection*

23.     The Debtors must provide adequate protection against the diminution in value of the Trustees' rights of setoff and cannot extinguish such rights as the Debtors seek to do in the DIP Motions.[6] *See generally* Collier on Bankruptcy P 553.06[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 185 (1978) ("The premise behind the adequate protection treatment of mutual debts and credits is that an amount that may be offset is tantamount to a security interest for the benefit of the creditor. The adequate protection provision follows the adequate protection given to other secured creditors.")). Bankruptcy Code § 506(a) provides, in relevant part: "An allowed claim of a creditor . . . that is subject to setoff under section 553 of this title, is a secured claim to the extent of the . . . amount subject to setoff . . . ." 11 U.S.C. § 506(a); *see also Bank of New York v. Treco (In re Hamilton)*, 240 F.3d 148, 162 (2d Cir. 2001). Accordingly, the Bankruptcy Code protects setoff rights to the same extent as secured claims, including the right to adequate protection. *See* 11 U.S.C. § 363(e).

24.     There is a threat of diminution of the value of the Trustees' setoff rights because the Debtors intend to reimburse themselves for Advances in the ordinary course from the Custodial Accounts. For example, if the Debtors reimburse themselves from the Custodial Accounts (or any other PLS Trusts assets) on account of $100 million of prepetition Advances and the Debtors accrue an additional $100 million of postpetition Advances, the Trustee may not be able to setoff the Trust Claims against such postpetition Advances for lack of mutuality, which would reduce the value of the Trustees' right of setoff by $100 million. As a result, the

---

[6] To be clear, the Trustees concede that they are not entitled to adequate protection on account of their recoupment rights, because, among other reasons, their recoupment rights are not subject to the automatic stay. *See McMahon*, 129 F.3d at 96("While a 'setoff' is subject to the automatic stay provision of 11 U.S.C. § 362, a recoupment is not.").

13

Debtors must provide adequate protection to the Trustees to the extent the Debtors reimburse themselves on account of any prepetition Advances from the Custodial Accounts (or any other PLS Trusts assets).

## **CONCLUSION**

25. Because the DIP Motions seek to extinguish the Trustees' rights of setoff and recoupment, without the Trustees' consent or any legal authority to do so, they should not be granted absent appropriate provision of adequate protection to the Trustees.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, for the reasons set forth herein, the Trustees respectfully request that the Court (i) deny the DIP Motions and the Citibank Motion and (ii) grant such other and further relief as the Court deems appropriate.

Dated: New York, New York         Respectfully submitted,
       June 11, 2012

| **MORGAN, LEWIS & BOCKIUS LLP** | **DECHERT LLP** |
|---|---|
| By: _s/James L. Garrity, Jr._<br>James L. Garrity, Jr.<br>John C. Goodchild, III (*pro hac vice* admission pending)<br>101 Park Avenue<br>New York, New York 10178-0600<br>Telephone: (212) 309-6000<br>Facsimile: (212) 309-6001<br><br>*Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustees of Certain Mortgage Backed Securities Trusts* | By: _s/Glenn E. Siegel_<br>Glenn E. Siegel<br>Brian E. Greer<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Telephone: (212) 698-3500<br>Facsimile: (212) 698-<br><br>*Counsel to The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage Backed Securities Trusts* |
| **ALSTON & BIRD LLP** | **SEWARD & KISSEL LLP** |
| By: _s/Martin G. Bunin_<br>Martin G. Bunin<br>Craig E. Freeman<br>90 Park Avenue<br>New York, NY 10016<br>Telephone: (212) 210-9400<br>Facsimile: (212) 210-9444<br><br>*Counsel for Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts Backed Securities Trusts* | By: _s/Ronald L. Cohen_<br>Ronald L. Cohen<br>Arlene R. Alves<br>One Battery Park Plaza<br>New York, New York 10004<br>Telephone: (212) 574-1200<br>Facsimile: (212) 480-8421<br><br>*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage Backed Securities Trusts* |