Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Jeffrey S. Powell
Daniel T. Donovan
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Ally Financial Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**ALLY FINANCIAL INC.'S LIMITED OBJECTION TO
BERKSHIRE HATHAWAY INC.'S MOTION FOR THE
APPOINTMENT OF AN EXAMINER PURSUANT TO 11 U.S.C. § 1104(c)**

Ally Financial Inc., on behalf of itself and its non-debtor subsidiaries (collectively "Ally"), submits this limited objection to the Motion of Berkshire Hathaway Inc. ("Berkshire") for the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c) (the "Examiner Motion") (Dkt. 208).

Berkshire's motion seeks the appointment of an examiner to perform the same investigation that the Unsecured Creditors' Committee (the "Committee") has been authorized to conduct, pursuant to Rule 2004, following this Court's entry of a consensually negotiated order. (*See* June 5, 2012 Order re 2004 Discovery ("2004 Order") (Dkt. 217).) Ally welcomes an inquiry into the Ally-ResCap settlement and plan support agreement, which resolves claims relating to pre-petition transactions between the parties. Indeed, Ally was supportive of the

Committee's inquiry and worked constructively with the Committee and the Debtors to reach consensus on the scope of the 2004 Order.

Ally has no view on whether a court-appointed examiner or the Unsecured Creditors' Committee should perform this investigation. However, Ally does object to both the Committee and an examiner conducting identical investigations. Ally's limited objection is designed to avoid two different entities and two different sets of professionals conducting the same inquiry, which Ally respectfully suggests would not only be duplicative, but also inefficient and serve to squander precious estate resources. Further, Ally believes that any inquiry—whether conducted by an examiner or the Committee—should be focused, transparent, expeditious and timely so that the Debtors have the opportunity to complete these chapter 11 cases on the time frame they have developed with their key constituents and supporters through a chapter 11 plan that has substantial stakeholder support.

## BACKGROUND

Berkshire's request for an examiner raises questions of both timing and substance. Berkshire did not file its Examiner Motion until after the deadline had passed to object to the Committee's 2004 motion. Moreover, in the declaration accompanying its June 4 motion, Berkshire stated that it held "in excess of $500 million of unsecured bonds issued by Residential Capital, LLC." (*See* June 4, 2012 Weschler Decl. (Dkt. 209) ¶ 2.) Yet, only three days later, Berkshire submitted a supplemental declaration stating that it had "sold its holdings of unsecured bonds issued by Residential Capital, LLC" on June 5 and 6—the two days after filing its Examiner Motion. (*See* June 7, 2012 Suppl. Weschler Decl. (Dkt. 250) ¶ 2.) Finally, Berkshire's motion does not disclose that it, directly or indirectly, is also a significant holder of Ally debt.

2

In support of its motion, Berkshire refers to transactions between the Debtors and Ally and its affiliates whose "net effect was to transfer a substantial share of ResCap's operating assets to the parent." (Examiner Motion at 1-2.) These transactions were publicly disclosed in SEC filings. Berkshire is able to reference these transactions, many of which date back to 2007-2008, precisely because they were publicly disclosed and well known to Berkshire and ResCap's other creditors for years. Berkshire implies that the purpose of the transactions was to "harvest[]" operating assets from ResCap and transfer them to Ally, (Examiner Motion at 4), but it ignores the substantial benefits that the transactions provided to ResCap. In fact, Ally contributed more than $8.3 billion to ResCap since 2007—in the form of cash, capital contributions, loans and debt forgiveness. These contributions alone substantially undercut any suggestion that Ally stripped assets from ResCap. It is indisputable, and Ally expects that an independent investigation will conclude, that these transactions provided significant and sustaining benefits to ResCap for years, benefitting ResCap and its creditors including Berkshire. It is equally indisputable that the transactions were completed in a fair and arm's-length manner, with ResCap being advised by sophisticated counsel, obtaining approval of its independent directors and obtaining fairness opinions and/or independent valuations supporting the purchase price of the transactions.

Berkshire has been a ResCap creditor for years, benefitting from Ally's billions in support for ResCap. In this role, Berkshire was well aware of both the Ally-ResCap transactions and the proposed Ally-ResCap settlement before ResCap's chapter 11 filing. In the months and weeks leading to the petition date, Berkshire and Ally had several conversations and communications regarding ResCap. Not only was Berkshire aware of the current state of ResCap's pre-petition planning and negotiations, including ResCap's and Ally's negotiations

3

toward a settlement, Berkshire specifically inquired about potentially acquiring Ally's equity interests in ResCap.

## ARGUMENT

### I. There Should Be One Investigation Completed In Time To Maintain The Debtors' Proposed Timeline For These Chapter 11 Proceedings.

Ally does not object to an investigation into the pre-petition transactions and agreements between the Debtors and Ally and their affiliates. Ally agrees that an independent party—whether the Committee or an examiner—should investigate whether the settlement is fair to the Debtors and their stakeholders. Indeed, Ally welcomes such an investigation, as it is confident that such an independent investigation will conclude that the settlement is more than fair.

However, both the Committee and Berkshire request an investigation into the same issues. The Committee, through Rule 2004 discovery, is investigating "the Debtors' proposed post-petition transactions, including the Ally Settlement Agreement and the value of the Estate Releases and Non-Consensual Third Party Releases," the "Debtors' significant pre-petition transactions and financings" with Ally, and "the corporate relationships between and among ResCap, AFI, Cerberus, and Ally Bank." (June 1, 2012 Committee Rule 2004 Motion (Dkt. 192) at 9-10.) As its proposed order makes clear, Berkshire requests that an examiner perform an investigation into those same issues: an examiner would investigate "pre-petition transactions and agreements between the Debtors and Ally and its affiliates," "all state-law or bankruptcy claims or causes of action of the Debtors" against Ally and its affiliates, and "state-law or bankruptcy claims or causes of action subject to being released or barred under the terms of the Debtors['] proposed chapter 11 plan." (Examiner Motion, Ex. A, Proposed Order (Dkt. 208-1) at 2.)

4

There should be only one investigation into those issues, not two. Ally respectfully disagrees with Berkshire's assertion that a parallel—and entirely duplicative—examiner investigation would have little, if any, potential downside. (*See* Examiner Motion at 10.) While it is true that the incurrence of investigation costs is inevitable here, there is no merit to parallel, duplicative and inefficient investigations by both the Committee and an examiner, much less the delay associated with duplicative investigations that potentially threatens the plan timeline.

Moreover, that investigation—whether conducted by the Committee or an examiner—should begin promptly and should be completed expeditiously so that the Debtors can maintain their proposed schedule of selling substantially all of their assets and confirming their chapter 11 plan by year end. The Debtors' proposed settlement agreements and asset sales require such timing. The Debtors' proposed timeline for these chapter 11 cases has been carefully calibrated to meet such requirements. To that end, the Debtors have agreed to the outside dates for the disclosure statement hearing of August 12, an auction for the held-for-sale portfolio by September 23, a voting deadline on the chapter 11 plan by October 1 and a hearing to confirm the chapter 11 plan and approve the sale of substantially all of their assets by October 31. In order to maintain that schedule, an investigation must be completed and a report issued well before the October 1 voting deadline. If the investigation is not completed on that timeframe, it would improperly interfere with the Debtors' proposed schedule for their chapter 11 cases. *See, e.g.*, *In re Schepps Food Stores, Inc.*, 148 B.R. 27, 30 (S.D. Tex. 1992) (noting that "a creditor cannot use [an examiner] to disrupt the proceedings"); 7 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1104.03[2][b] (15th ed. rev. 2009) (noting that appointment of an examiner is not intended to "permit blatant interference with the chapter 11 case or the plan confirmation process") (citing 124 Cong. Rec. H11,103 (daily ed. Sept. 28, 1978)).

## II.    If An Examiner Is Appointed, Berkshire's Proposed Order Should Be Modified.

If an examiner is appointed to conduct the investigation, rather than the Committee, Ally specifically objects to certain aspects of Berkshire's proposed order, and believes that it should be modified in three respects.

*First*, Berkshire's proposed order identifies a number of parties who shall receive a copy of an examiner's report—but notably absent from the list of recipients is Ally, whose alleged conduct would be a subject of the report.  (*See* Examiner Motion, Ex. A, Proposed Order at 2-3.)  As a party in interest whose conduct is at issue, and as a DIP lender and secured pre-petition creditor, Ally is entitled to receive a copy of any examiner's report.

*Second*, Berkshire's sweeping request that "the examiner shall conduct an unfettered investigation" and be given "unfettered access" to documents and information is neither necessary nor appropriate under the law.  (Examiner Motion, Ex. A, Proposed Order at 2, 5.)  The sole support for such a broad and amorphous provision for an "unfettered investigation" is the order appointing an examiner in the Dynegy bankruptcy cases.  (*See* Examiner Motion at 11.)  But, the circumstances in Dynegy are not remotely present here.  There, all of the debtors' assets were transferred from the estate pre-petition, and the conduct in Dynegy was alleged to be outright fraud.  Here, Ally supported ResCap for years, injecting more than $8 billion into ResCap.  And, unlike what is alleged in Dynegy, ResCap's independent directors and their advisors performed a thorough investigation into the inter-company transactions that are the subject of any investigation, the parties engaged in arm's-length negotiations in which both sides were represented by sophisticated counsel and financial advisors, and ResCap then came to this forum to have that process publicly vetted and approved.  There is no basis for the proposed order to authorize an "unfettered investigation" as Berkshire suggests.

6

*Finally*, Berkshire's blanket request that an examiner be provided access to documents and information subject to the "attorney-client privilege and/or the work-product doctrine" is unfounded. (Examiner Motion, Ex. A, Proposed Order at 5.) As drafted, the proposed order would require the Debtors to produce privileged documents and information, including materials that are subject to a common interest agreement between the Debtors and Ally. Yet, Berkshire fails to cite any support that an examiner should be granted access to debtors' privileged documents that may also be subject to a common interest agreement. The examiner's investigative authority, like other committees' or parties' in interest, is based on Rule 2004. *See, e.g.*, *In re Ionosphere Clubs, Inc*, 156 B.R. 414, 432 (S.D.N.Y. 1993); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, No. MDL-1446, 2005 WL 3504860, at *10-11 (S.D. Tex. Dec. 22, 2005). "[C]ourts have uniformly applied federal privilege law in connection with Rule 2004 examinations," *In re Hotels Nevada, LLC*, 458 B.R. 560, 569-70 (Bankr. D. Nev. 2011) (citing, *inter alia*, *In re Asia Global Crossing, Ltd.,* 322 B.R. 247, 254-55 (Bankr. S.D.N.Y. 2005)), and thus an examiner is no more entitled to privileged information, including Ally's privileged material, than any other party. Berkshire's blanket request that the examiner be provided such privileged information should be stricken from any order appointing an examiner.

## CONCLUSION

For the foregoing reasons, Ally respectfully requests any investigation into the pre-petition transactions and agreements between the Debtors and Ally and their affiliates be conducted by either a court-appointed examiner or the Unsecured Creditors' Committee—but not both—and on a time frame that will maintain the Debtors' proposed schedule to confirm their chapter 11 plan by the end of the year. Ally further requests that, if the Court appoints an examiner, the Court also modify the Proposed Order to define the scope of the investigation as set forth above.

7

Dated: June 11, 2012
       New York, New York

                                            */s/ Stephen Hessler*
                                            Richard M. Cieri
                                            Ray C. Schrock
                                            Stephen E. Hessler
                                            KIRKLAND & ELLIS LLP
                                            601 Lexington Avenue
                                            New York, New York 10022
                                            Telephone: (212) 446-4800
                                            Facsimile: (212) 446-4900

                                            - and -

                                            Jeffrey S. Powell
                                            Daniel T. Donovan
                                            KIRKLAND & ELLIS LLP
                                            655 15th Street, N.W., Ste. 1200
                                            Washington, D.C. 20005
                                            Telephone: (202) 879-5000
                                            Facsimile: (202) 879-5200


                                            *Counsel to Ally Financial Inc.*