**ALSTON & BIRD LLP**
Martin G. Bunin
Craig E. Freeman
William Hao
90 Park Avenue
New York, NY 10016
(212) 210-9400 (telephone)
(212) 210-9444 (facsimile)

*Attorneys for Wells Fargo Bank, N.A. as*
*Master Servicer of Certain Mortgage Backed*
*Securities Trusts*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**JOINDER OF WELLS FARGO BANK, N.A. AS MASTER SERVICER FOR RESIDENTIAL MORTGAGE BACKED SECURITIES TRUSTS TO:**
**(a) LIMITED OBJECTION OF CERTAIN TRUSTEES FOR RESIDENTIAL MORTGAGE BACKED SECURITIES TRUSTS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(b), (f), AND (m), 365 AND 1123, AND FED R. BANKR. P. 2002, 6004, 6006, AND 9014 FOR ORDERS: (A)(I) AUTHORIZING AND APPROVING SALE PROCEDURES, INCLUDING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (II) SCHEDULING BID DEADLINE AND SALE HEARING; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF AND (B)(I) AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING ASSET PURCHASE AGREEMENTS THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF; AND**
**(b) LIMITED OBJECTION OF CERTAIN TRUSTEES FOR RESIDENTIAL MORTGAGE BACKED SECURITIES TRUSTS TO THE DEBTORS' POSTPETITION FINANCING MOTIONS**

Wells Fargo Bank, N.A. ("**Wells Fargo**"), in its capacity as master servicer for certain mortgaged backed securities trusts (in such capacity, the "**Master Servicer**"), hereby files its Joinder (the "**Joinder**") to: (**a**) *Limited Objection of Certain Trustees for Residential Mortgage Backed Securities Trusts to Debtors' Motion, inter alia, for an Order (I)(A) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expenses Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "**Trustees' Sales Procedures Objection**"); and (**b**) *Limited Objection of Certain Trustees for Residential Mortgage Backed Securities Trusts to the Debtors' Postpetition Financing Motions* (the "**Trustees' Postpetition Financing Objection**," together with the Trustees' Sales Procedures Objection, the "**Trustees' Objections**"). In support of its Joinder, the Master Servicer respectfully states as follows:

## JOINDER

1.  Wells Fargo, in its capacity as trustee or indenture trustee for certain mortgaged backed securities trusts, and together with Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, The Bank of New York Mellon Trust Company, N.A., and U.S. Bank National Association, each in their respective capacity as trustees of certain mortgage backed securities trusts, jointly filed objections to the (a) Debtors' Motion, *inter alia*, for an Order (I)(A) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expenses Reimbursement; (II) Scheduling Bid

Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (Docket No. 61; the "**Sales Procedures Motion**"); and (b)(i) Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing the Debtors to (A) Enter into and Perform under Receivables Purchase Agreements and Mortgage Loan Purchase And Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c), and (III) Granting Related Relief (Docket No. 13; the "**Barclays DIP Motion**"), (ii) Corrected Debtors' Motion for Interim and Final Orders Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 507(b) and Bankruptcy Rules 4001 and 6004: (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral and Related Relief, (III) Granting Adequate Protection and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c), and (V) Granting Related Relief (Docket No. 42; the "**AFI DIP Motion**" and collectively with the Barclays DIP Motion, the "**DIP Motions**"), and (iii) Debtors' Motion for Interim and Final Orders Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 507(b) and Bankruptcy Rule 4001(b): (I) Authorizing the Use of Cash

3

Collateral and Related Relief, (II) Granting Adequate Protection and (III) Scheduling a Final Hearing (Docket No. 15; the "**Citibank Motion**," together with the DIP Motions and the Sales Procedures Motion, the "**Motions**").

2.  Wells Fargo is the Master Servicer for certain securitization trusts serviced by certain Debtor entities. Wells Fargo's role as Master Servicer is separate and distinct from its role as trustee of certain mortgage backed securities trusts. With respect to any residential mortgaged-backed securities trust, Wells Fargo does not serve simultaneously as the master servicer and trustee. As Master Servicer, Wells Fargo is generally responsible under certain pooling and servicing agreements for supervising, overseeing and monitoring the performance by certain Debtors, as servicer, under its relevant servicing agreement. Thus, Wells Fargo, as Master Servicer, holds claims against the Debtors that are also separate and distinct from its claims arising from its role as trustee of certain mortgage backed securities trusts. The claims of Wells Fargo as Master Servicer do share an important feature with its claims as trustee – all such claims arise from an applicable integrated set of transaction documents.

3.  By this Joinder, Wells Fargo, as Master Servicer, joins in both the Trustees' Sales Procedures Objection and the Trustees' Postpetition Financing Objection.

**Wells Fargo's Role as Master Servicer**

4.  On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors, together with their non-debtor subsidiaries, engage in two lines of business: (i) the origination and

servicing business and (ii) their so-called "legacy portfolio operations" consisting of mortgage loans and other residual and other financial assets. Whitlinger Aff. ¶ 16[1].

5.      The Debtors' primary and most valuable operations consist of servicing mortgage loans for investors, including loans originated by the Debtors, Ally Bank (f/k/a GMAC Bank and other third parties.    Whitlinger Aff. ¶ 6.  As of March 31, 2012, the Debtors were servicing over 2.4 million mortgage loans with an aggregate unpaid principal balance of approximately $372 billion, making them the fifth largest servicer of residential mortgage loans in the United States. Id. ¶¶ 6, 9.   Since 2008, mortgage loan servicing has been the Debtors' main source of ongoing revenue. Id. ¶ 25.

6.      The Debtors' business strategy also incorporates securitizing or selling substantially all of the mortgage loans they purchase or originate.    Whitlinger Aff. ¶ 21. Through their capital market functions, the Debtors have participated in both securitization trusts holding Fannie Mae or Freddy Mac-owned mortgage loans and securitization trusts in the which the mortgage loans are guaranteed by Ginnie Mae (collectively, the "**GA Securitization Trusts**"). In addition, prior to the collapse of the mortgage industry in 2007, (a) the Debtors were active sponsors of private label securitizations which they pooled into securitization trusts and (b) upon information and belief, contributed loans and/or provided servicing for loans private label securitizations sponsored by third parties not affiliated with the Debtors ((a) and (b) collectively, the "**PLS Trusts**"). Id. ¶ 23 n.15.  The securities issued by the GA Securitization Trusts and PLS Trusts are owned by a broad range of investors. Id. ¶ 23.

---

[1]   The term "Whitlinger Aff." refers to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petition and First Day Pleadings* (Docket No. 6).

5

7. The Master Servicer acts as master servicer for hundreds of PLS Trusts, which contain billions of dollars in principal amount of mortgage loans serviced by Debtor entities. Some of the PLS Trusts have other servicers unaffiliated with the Debtor that service different sub-pools of mortgage loans within the subject PLS Trust. The beneficial owners of the mortgage loans held by the PLS Trusts are investors in residential mortgage-backed securities ("**RMBS**"), which typically include public and private pension funds and other institutional fixed income investors.

8. Each PLS Trust master serviced by Wells Fargo was formed pursuant to either a "Pooling and Servicing Agreement" or pursuant to a highly-integrated set of different contracts including a "Pooling and Servicing Agreement," "Servicing Agreements," "Assignment Assumption & Recognition Agreements," "Reconstituted Servicing Agreements," "Mortgage Loan Purchase Agreements," "Indentures," and/or "Trust Agreements", which, when combined, provided for administration of trust assets and the related RMBS. For convenience of reference herein, the integrated contract or contracts governing each PLS Trust master serviced by Wells Fargo will be referred to herein as a "**PSA**," even if the arrangements are physically memorialized in one or more differently styled contracts. This simplification of nomenclature should not, however, be taken to suggest uniformity in the terms and conditions of these contracts. Although there are groups of PSAs whose terms are quite similar, there are material differences among many of the PSAs affected by the Motions. Two exemplar PSAs are attached as Exhibits A and B to the Declaration of Martin G. Bunin in Support of this Joinder (the "**Bunin Declaration**"), which was filed contemporaneously herewith. The first represents a PSA where a Debtor (and another unaffiliated servicer) is a direct party to the PSA along with the Master Servicer and

certain other parties (Exhibit A to the Bunin Declaration, the "**PSA Exemplar 1**").  The second uses very different documentation.  The trust is formed pursuant to a PSA (Exhibit B-1 to the Bunin Declaration, the "**PSA Exemplar 2**") to which neither the Debtor nor any of the other seven (7) servicers in the transaction is a party.  Rather the Debtor (and the other servicers) is a party to a separate servicing agreement which is assigned ultimately to the trustee of the trust formed under the PSA via an assignment assumption & recognition agreement (such assignment assumption & recognition agreement is attached as Exhibit B-2 to the Bunin Declaration, the "**AAR Exemplar 2**").  Though the trustee is the assignee of such rights, the PSA Exemplar 2 and the AAR Exemplar 2 make clear that the Master Servicer is charged with monitoring the performance and enforcing the obligations of the Debtor.

9. Under the PLS Trusts master serviced by Wells Fargo, the Debtor acts as a primary servicer (often along with other primary servicers as well) and in some cases may act as an originator or a mortgage loan seller.  On such transactions, the Master Servicer is generally responsible for supervising, overseeing and monitoring the performance by the Debtor (and the other primary servicers, if applicable) of its obligations under the relevant servicing agreement.  See, e.g., PSA Exemplar 1, at Art. IV ("Administration and Master Servicing of the Mortgage Loans by the Master Servicer"); PSA Exemplar 2 at Art. III.  The Master Servicer receives cash collections and mortgage loan data from the Debtor and reviews and evaluates such data.  See, e.g., PSA Exemplar 1, at § 4.01 ("Master Servicer"); PSA Exemplar 2, at § 3.01 ("Master Servicing of the Mortgage Loans").  In addition, the Master Servicer is charged with responding to requests from the Debtor for consent or approval in respect of action contemplated by the Debtor (like, for example, a transfer of

7

servicing to another party) under the relevant servicing agreement. See, e.g., PSA Exemplar 1, at § 7.04 ("Limitation on Resignation of Servicers"); AAR Exemplar 2, at ¶ 4. If the Debtor defaults in its performance under the Servicing Agreement, it is the Master Servicer's obligation to pursue appropriate remedies against the Debtor. See, e.g., PSA Exemplar 1, at § 4.03 ("Monitoring of Servicers"); PSA Exemplar 2, at § 3.01 ("Master Servicing of the Mortgage Loans"); AAR Exemplar 2, at ¶ 4.

10. Many of such PLS Trusts have a securities administrator (also referred to sometimes as a trust administrator) who is responsible for, *inter alia*, calculating and making distributions to the RMBS investors. For many of the PLS Trusts, Wells Fargo acts as both Master Servicer and securities administrator or trust administrator. See, e.g., PSA Exemplar 1; PSA Exemplar 2. Each PLS Trust master serviced by Wells Fargo also has a trustee which typically has limited obligations related to the exercise of remedies against mortgage loan sellers and originators for breaches of representations and warranties regarding the mortgage loans and the exercise of remedies against the Master Servicer upon a Master Servicer event of default.

11. Each PSA provides a comprehensive arrangement for (a) the administration of trust assets, which typically consist of thousands of mortgage loans and their proceeds (including cash and foreclosed real property, or "**REO**"), insurance policies or guaranties in respect of the loans or the RMBS, and other assets such as swap or other derivatives contracts, and (b) the administration of the related RMBS securities, whose complex terms require the calculation and distribution of trust asset cash flows to classes, or "tranches," of securities that have varying entitlements specified in the distribution provisions of the PSAs

(commonly referred as "waterfall" provisions).  PSAs are voluminous (generally 100-200 pages) and intricate.

12.    Each PSA specifies the rights and obligations of the parties thereto including the Debtors, the Master Servicer, the trustee, the securities administrator and, as applicable, other parties in interest to the specific transaction.  The RMBS investors are afforded certain rights under the PSAs as well.  While the terms of specific transactions vary, the PSAs generally provide that Debtors are responsible for all tasks relating to the primary servicing of the PLS Trusts' mortgage loan assets (billing, collecting, foreclosing, maintaining and selling REO properties), the investment of mortgage loan cash flows pending distribution to the Master Servicer or securities administrator for distribution to the RMBS Investors, and the compilation, computation and reporting of mortgage loan performance data.  See, e.g., PSA Exemplar 1, at Art. III ("Administration and Servicing of the Mortgage Loans; Accounts").  Under many of the PSAs, Debtors, as servicer, have certain financial obligations or indemnification obligations to the Master Servicer or the trust formed under the PSA.  See, e.g., PSA Exemplar 1, at §§ 3.27 ("Indemnification") and 4.03(c) ("Monitoring of Servicers").

13.    The Master Servicer currently holds several different types of claims against the Debtors under the PSAs arising from the Debtors' obligations in its capacity as servicer.  First, the Master Servicer asserts claims relating to Debtors' (principally, Residential Funding LLC's and GMAC Mortgage LLC's) breaches of their mortgage loan administration obligations as primary or subservicers of various PLS Trusts' mortgage loans (the "**Loan Servicing Claims**").  Second, the Master Servicer has claims against the Debtors for the payment of servicing transfer costs and expenses and for indemnification

9

amounts arising from the actions of the Debtor (the "**Indemnification & Reimbursement Claims**"). See, e.g., PSA Exemplar 1, at §§ 3.27 ("Indemnification") and 4.03(c) ("Monitoring of Servicers"). Finally, as the Master Servicer conducts ongoing diligence on the myriad of transactions in its portfolio involving the Debtors, it may have additional types of claims against the Debtors. The nature, scope and amount of these claims may vary based on the documentation setting forth the obligations with respect to each Trust.

### OBJECTIONS TO THE SALES PROCEDURES MOTION

14. The Master Servicer adopts and incorporates herein by reference the arguments under the following headings set forth in the Trustees' Sales Procedures Objection: "Preliminary Statement" (pp. 1-2), "The Sales Procedures" (pp. 7-11), "Second Circuit Law Mandates Resolution of Issues Relating to the Severing Provisions Through an Adversary Proceeding" (pp. 11-15), "The Procedures Relating to Assumption and Payment of Cure Amounts Are Unfair, Unworkable and Impermissible Under the Bankruptcy Code" (pp. 16-18), "The Sales Procedures Are Not Fair and Reasonable to All Parties" (pp. 18-20), "The Trustees Should Be Afforded Access to Information About Proposed Purchasers" (pp. 21-22), and "Conclusion" (pp. 22-23).

### OBJECTIONS TO THE DIP MOTIONS

15. The Master Servicer adopts and incorporates herein by reference the arguments under the following headings set forth in the Trustees' Postpetition Financing Objection: "Preliminary Statement" (p. 2), "The Servicing Advance Receivables" (pp. 5-6), "The Barclays DIP Motion" (pp. 6-7), "The AFI DIP Motion" (pp. 7-8), "The Trustees Have Valid Rights of Setoff" (pp. 8-10), "The Trustees Have Valid Rights of Recoupment" (pp. 10-11), "The Debtors are not Entitled to an Order Destroying the Trustees' Rights of Setoff

and Recoupment" (pp. 11-12), "The Trustees are Entitled to Adequate Protection" (pp. 13-14), and "Conclusion" (p. 14).

**WHEREFORE**, for the reasons set forth herein, the Master Servicer respectfully requests that this Court (i) deny the Motions to the extent set forth herein and in the Trustees' Objections and (ii) grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
      June 11, 2012

Respectfully submitted,

ALSTON & BIRD LLP

/s/ Martin G. Bunin
Martin G. Bunin
Craig E. Freeman
William Hao
90 Park Avenue
New York, NY 10016
(212) 210-9400 (telephone)
(212) 210-9444 (facsimile)
marty.bunin@alston.com
craig.freeman@alston.com
william.hao@alston.com

*Attorneys for Wells Fargo Bank, N.A. as Master Servicer of Certain Mortgage Backed Securities Trusts*