DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1000
Fax: 212.692.1020
Gerard S. Catalanello, Esq.

*Counsel to Green Planet Servicing, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RESIDENTIAL CAPITAL, *et al.,* | : | Case No. 12-12020 (MG) |
| | : | Jointly Administered |
| Debtors. | : | |

**OMNIBUS OBJECTION OF GREEN PLANET SERVICING, LLC
TO CERTAIN OF THE DEBTORS' FIRST DAY PLEADINGS**

Green Planet Servicing, LLC ("**Green Planet**") by and through its counsel, submits this omnibus objection ("**Objection**") to certain of the motions and applications for orders filed contemporaneously with the petition for relief (collectively, the "**First Day Pleadings**") by GMAC Mortgage, LLC ("**GMAC**") and certain of its affiliates as debtors and debtors-in-possession in the above captioned chapter 11 cases (collectively, the "**Debtors**"). In support of the Objection, Green Planet respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  By way of its bankruptcy filing and the First Day Pleadings, GMAC – merely a sub-servicer to Green Planet with respect to a pool of residential mortgage loans - seeks to improperly expand its dominion, control and rights with respect to such loan pool.

2.  Prior to its termination described more fully herein, the relationship between Green Planet and GMAC was governed by a narrowly-tailored servicing agreement, pursuant to which GMAC acted as sub-servicer of certain mortgage loans on behalf of Green Planet (the

"**Servicing Agreement**"). The Servicing Agreement allowed GMAC an extremely limited role with respect to a pool of approximately 30,000 residential mortgage loans with a total principal value of nearly $5.2 billion (the "**GPS Loan Pool**"). Namely, GMAC acted as a conduit, collecting payments, liquidation proceeds and any and all net cash flow from the properties underlying the mortgage loans included in the GPS Loan Pool, and was required to hold the collected funds in trust for Green Planet.

3. Notably, prior to the Petition Date (defined below), Green Planet terminated the Servicing Agreement for cause consistent with the provisions thereof. Pursuant to the terms of the Servicing Agreement, Green Planet submits that GMAC must immediately therefore initiate the transfer of the servicing rights to Green Planet and, in the interim, specifically comply with all other terms of the Servicing Agreement while pursuing said transfer.

4. On their face, the First Day Pleadings[1] disregard the pre-petition termination of the Servicing Agreement, erroneously treat the funds generated by the GPS Loan Pool as property of the Debtors' estate and, further, seek to improperly expand the scope and nature of GMAC's rights with respect to the loans in the GPS Loan Pool. Specifically, the First Day Pleadings seek to, among other things, authorize the Debtors to: (a) continue their activities relating to the servicing of mortgage loans, (b) obtain debtor-in-possession financing to continue their operations, (c) use cash collateral to pay operating expenses and ultimately, (d) sell their servicing business.

5. Green Planet objects to the relief requested in the First Day Pleadings to the extent that such relief purports to impact GMAC's rights under the Servicing Agreement. As described in further detail herein, the Servicing Agreement was terminated by Green Planet pre-

---

[1] The relevant First Day Pleadings that are the subject of the within omnibus objection are set forth and described at length in paragraph 16 herein.

petition and, thus, GMAC has no further rights thereunder. GMAC may not seek to revive such rights or otherwise alter their scope by way of the First Day Pleadings.

6. Further, even if GMAC could prove (which Green Planet disputes) that it retains certain rights under the previously-terminated Servicing Agreement, Green Planet objects to the relief requested in the First Day Motions to the extent that such relief (i) is inconsistent with the explicit terms of the Servicing Agreement, or (ii) purports to diminish Green Planet's master servicing rights relating to the mortgage loans contained in the GPS Loan Pool. Because GMAC acts only as a sub-servicer for Green Planet (as unequivocally outlined in the Servicing Agreement), it does not own the servicing rights relating to the mortgage loans in question and, therefore, cannot take any action that would be inconsistent with Green Planet's ownership of such rights.[2]

7. In sum, GMAC must not be permitted to utilize the protections afforded by the chapter 11 process to shield its improper exercise of dominion and control over assets that are property of Green Planet, and/or its improper expansion of its limited rights under the Servicing Agreement. Accordingly, any relief granted pursuant to the First Day Pleadings should explicitly <u>exclude</u> actions, if any, the Debtors intend to take with respect to the Servicing Agreement, the mortgage loans related thereto and Green Planet's master servicing rights, including but not limited to: (a) granting liens on and using the funds relating to the Servicing Agreement as cash collateral, (b) assuming and assigning the Servicing Agreement, or (c) taking any action whatsoever in connection with the Servicing Agreement, other than to perform as

---

[2] It appears that GMAC acknowledges that it does not own the master servicing rights with respect to the mortgage loans for which it acts only as a sub-servicer. See Affidavit of James Whitlinger In Support of Chapter 11 Petition and First Day Pleadings ¶ 31; Bid Procedures and Sale Motion (defined below) ¶ 30; Continued Servicing Motion (defined below) with respect to non-governmental loans ¶ 19. Nevertheless, Green Planet files this Objection to preserve its rights and ensure that the Debtors do not take any action inconsistent with the master servicing rights of Green Planet.

specifically required thereunder while providing for the return of the subservicing rights under the Servicing Agreement to Green Planet consistent with the provisions of same.

### RELEVANT BACKGROUND

8.    On October 1, 2011, GMAC, as servicer, entered into the Servicing Agreement with Green Planet, as owner, pursuant to which GMAC agreed to act as sub-servicer to Green Planet in connection with servicing the residential mortgages contained in the GPS Loan Pool. A true and correct copy of the Servicing Agreement is annexed hereto as **Exhibit "A."**

9.    Prior to its pre-petition termination (described more fully below), pursuant to the Servicing Agreement, GMAC was authorized to perform various tasks on Green Planet's behalf, such as collecting all payments, including principal, interest and liquidation proceeds in connection with the GPS Loan Pool, as well as any net cash flow from the underlying properties (collectively, the "**Green Planet Servicing Funds**"). *See* Servicing Agreement §§ 2.03-2.04.

10.    Pursuant to the explicit terms of the now terminated Servicing Agreement, GMAC was, and continues to be, required to segregate and hold the Green Planet Servicing Funds in custodial accounts (or escrow accounts in relation to escrow related payments) separate and apart from any of its own funds and assets. *See* Servicing Agreement §§ 2.04, 2.06. Beyond mere segregation, these separate accounts are required to be specifically titled to indicate that the funds therein are held by GMAC in trust for Green Planet. *Id.*

11.    Throughout the parties' relationship, GMAC's limited role was clearly defined by the terms of the Servicing Agreement. Specifically, GMAC was limited to performing certain tasks associated with the service and administration of the GPS Loan Pool. *See* Servicing Agreement § 2.01. As a sub-servicer, GMAC <u>did</u> <u>not</u> <u>own</u> the corresponding servicing rights (the "**Servicing Rights**") regarding such loans. Rather, as definitively outlined in the Servicing Agreement, such Servicing Rights were at all times, and continue to be owned by Green Planet.

Servicing Agreement § 6.07.  In fact, under the terms of the Servicing Agreement, GMAC was even required to reflect Green Planet's ownership in relation to the GPS Loan Pool and the Servicing Rights on its own computer system.  *See* Servicing Agreement § 2.01(h).

12. On March 23, 2012, Green Planet notified GMAC in writing (the "**Default Notice**") of the occurrence of a number of defaults by GMAC under the Servicing Agreement.  A true copy of the Default Notice is annexed hereto as **Exhibit "B."**  The Default Notice advised GMAC that, as a result of such defaults, Green Planet was exercising its right to terminate the Servicing Agreement in accordance with the provisions thereof.  These defaults included, among other things, widespread improper solicitation of borrowers in the GPS Loan Pool to refinance with GMAC – an act specifically proscribed by the Servicing Agreement and analogous to an unlawful taking.  *See* Servicing Agreement, § 12.13.

13. GMAC responded to the Default Notice on March 29, 2012, arguing that it be allowed an opportunity to cure the existing defaults.

14. Subsequently, on or about May 7, 2012, Green Planet filed a civil complaint (the "**Complaint**") against GMAC in the Circuit Court for Baltimore City, alleging breach of the Servicing Agreement as outlined by the allegations contained in the Default Notice.  A true and correct copy of the Complaint is annexed hereto as **Exhibit "C".**  The Complaint further sought a permanent injunction enjoining GMAC from soliciting any loans from the GPS Loan Pool, requiring GMAC to transfer the GPS Loan Pool files and barring GMAC from withdrawing funds from the custodial accounts linked to the GPS Loan Pool.  *See* Complaint ¶ 30 -37.

15. On May 14, 2012 (the "**Petition Date**"), the Debtors filed a petition for relief under chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

16. Contemporaneously with the filing of the Petition, the Debtors filed the First Day Pleadings, including the following motions:

(a) Motion (I) Authorizing the Debtors to Continue in the Ordinary Course of Business (A) Servicing Governmental Association Loans, and (B) Foreclosure Activities Related to Certain Real Estate Owned by Fannie Mae, Freddie Mac, and Ginnie Mae; (II) Authorizing the Debtors to Pay Certain Prepetition Amounts Due to Critical Servicing Vendors and Foreclosure Professionals; (III) Granting Limited Stay Relief to Enable Borrowers to Assert Related Counter-Claims in Foreclosure and Eviction Proceedings; (IV) Authorizing the Debtors to Use Cash Collateral Under the Fannie Mae EAF Facility;

(b) Motion (I) Authorizing the Debtors to Continue in the Ordinary Course of Business (A) Servicing Non-Governmental Association Loans, and (B) Sale Activities Related to Certain Loans in Foreclosure and Real Estate Owned Property, and (II) Granting Limited Stay Relief to Enable Borrowers to Assert Related Counter-Claims in Foreclosure and Eviction Proceedings (First Day Pleadings listed here as (a) and (b) are referred to herein as the "**Continued Servicing Motion(s)**");

(c) Motion (I) Authorizing the Debtors to (A) Enter Into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) Obtain Postpetition Financing on a Secured, Superpriority Basis;

(d) Motion (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral and Related Relief, (III) Granting Adequate Protection;

(e) Motion (I) Authorizing the Use of Cash Collateral and Related Relief, (II) Granting Adequate Protection (First Day Pleadings listed here as (c) through (e) are referred to herein as the "**Financing and Cash Collateral Motions**"); and

(f) Motion (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing ad Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the "**Bid Procedures and Sale Motion**").

17. Upon information and belief, through the present date, GMAC continues its improper solicitation of borrowers in the GPS Loan Pool to refinance with GMAC, in direct violation of the non-solicitation provisions contained in the Servicing Agreement. *See* Servicing

6

Agreement, § 12.13. As a result, Green Planet continues to suffer damages with each passing day that GMAC is permitted to subservice.

## ARGUMENT

18. Green Planet respectfully submits that any order of this Court granting the relief requested in the First Day Pleadings should be modified to eliminate any potential impact on the Servicing Agreement and Servicing Rights of Green Planet because, in the first instance, the Servicing Agreement was terminated pre-petition, leaving GMAC with no rights thereunder. Unless and until GMAC initiates the transfer of all servicing rights to Green Planet (as required by Green Planet's pre-petition termination of the Servicing Agreement), GMAC must comply with all other terms of the Servicing Agreement, including, but not limited to the non-solicitation provisions therein.

19. Even if, however, GMAC had any remaining rights under the Servicing Agreement, any relief granted with respect to the First Day Pleadings should be modified to the extent necessary to prohibit GMAC's use of any of the Green Planet Servicing Funds, as such funds were, at all times, held in trust by GMAC for Green Planet, and are not property of the Debtors' estate.

20. Further, regardless of whether GMAC retains any rights under the previously-terminated Servicing Agreement, none of the relief sought in the First Day Pleadings should impact Green Planet's Servicing Rights relating to the GPS Loan Pool because the Servicing Rights have, at all times through the present date, been owned by Green Planet, not GMAC.

21. As set forth herein, prior to its termination, the Servicing Agreement granted GMAC only limited rights to service and administer GPS Loan Pool – namely, to act as a conduit, collecting principal and interest payments on the relevant mortgage loans. To the extent GMAC has any rights remaining under the Servicing Agreement after its pre-petition

DM1\3359217.4

termination, GMAC may not use the chapter 11 process to otherwise expand or increase the scope of its rights with respect to the GPS Loan Pool.

22.     Thus, any relief granted to the Debtors in connection with the First Day Pleadings must be modified and/or limited accordingly.

23.     As set forth herein, the Servicing Agreement was terminated by Green Planet prior to the Petition Date. Such pre-petition termination further narrows GMAC's already-limited rights under the Servicing Agreement. In fact, in accordance with the terms of the Servicing Agreement, GMAC's sole remaining rights include the servicing of the GPS Loan Pool in strict compliance with the terms of the Servicing Agreement while effectuating the expeditious transfer of the Servicing Rights back to Green Planet.

24.     Unless and until GMAC initiates the required transfer of all servicing rights to Green Planet, GMAC must comply with all other terms of the Servicing Agreement including, but not limited to, the non-solicitation provisions therein.

25.     Further, among the relief sought in the First Day Pleadings, the Debtors seek authority to obtain financing and utilize cash collateral. Pursuant to the Financing and Cash Collateral Motions, the Debtors seek to obtain postpetition financing and grant their postpetition lenders security interests in various collateral, which collateral may include the Green Planet Servicing Funds.

26.     The Debtors, however, cannot grant security interests in the Green Planet Servicing Funds, and/or utilize such funds as cash collateral to pay their operating expenses, as such funds are not property of the Debtors' estate. As set forth herein, the funds GMAC collects and receives in relation to the GPS Loan Pool are, pursuant to the terms of the Servicing Agreement, required to be segregated and held in custodial accounts apart from GMAC's other

assets, with such accounts specifically titled to indicate that the funds held therein are held by GMAC in trust for Green Planet.

27. It is well-settled that "property held in trust by the debtor is not part of the bankruptcy estate." *In re Portjeff Development Corp.*, 128 B.R. 38, 43 (Bankr. E.D.N.Y. 1991) (citing *Begier v. I.R.S.*, 496 U.S. 53 (1990)). *See also In re Financial Resources Mortgage, Inc.*, 468 B.R. 487 (Bankr. D.N.H. 2012) (funds held in trust by debtor loan servicer were not property of the debtor's estate).

28. Because the Green Planet Servicing Funds do not constitute estate property, the Debtors may not utilize the Green Planet Servicing Funds as cash collateral, nor may the Debtors grant security interests in such funds. Accordingly, any relief granted pursuant to the Financing and Cash Collateral Motions must explicitly prohibit the Debtors' use of the Green Planet Servicing Funds.

29. Finally, on their face, the First Day Pleadings seek authorization for GMAC to expand its rights and authority with respect to the GPS Loan Pool well beyond the limited rights authorized under the terms of the Servicing Agreement even prior to its termination. In particular, pursuant to the Continued Servicing Motions, the Debtors seek authority to, among other things, continue to perform their obligations in connection with the servicing of mortgage loans in the ordinary course and to conduct foreclosure activities related to mortgage loans and sale activities related to certain real estate, whether owned or serviced by the Debtors.

30. Moreover, pursuant to the Bid Procedures and Sale Motion the Debtors indicate their intention to sell, among other things, their mortgage origination and servicing platform and, in connection therewith, assume and assign certain as yet unidentified contracts, which may improperly include the Servicing Agreement.

31. As set forth herein, the Servicing Agreement was terminated pre-petition, leaving GMAC with no rights thereunder. Even if, however, GMAC retained any rights under the Servicing Agreement after its pre-petition termination: (a) the Servicing Rights are unequivocally owned by Green Planet, and (b) GMAC's rights with respect to the servicing of the GPS Loan Pool were extremely limited in breadth and scope, and may not be altered, increased or expanded in scope by the First Day Pleadings.

32. Accordingly, any relief granted on account of the Continued Servicing Motions and the Bid Procedures and Sale Motion must be limited to exclude any actions taken with respect to, or any effect on, the Servicing Agreement and Green Planet's Servicing Rights.

## CONCLUSION

For the reasons set forth at length herein, Green Planet respectfully requests that this Court: (a) deny the First Day Pleadings to the extent they are inconsistent with Green Planet's Servicing Rights and the terminated status of the Servicing Agreement, and (b) grant such other and further relief as is just and proper.

Dated:  New York, New York
       June 11, 2012

**DUANE MORRIS LLP**

 _/s/ Gerard S. Catalanello_
Gerard S. Catalanello, Esq.
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
gcatalanello@duanemorris.com
jvincequerra@duanemorris.com

*Counsel to Green Planet Servicing, LLC*