Applicable Law or investor requirements, upon thirty (30) days advance written notice to Owner.

### Section 2.20.  Prepayment Charges

The Servicer shall not waive any applicable prepayment charge with respect to any Mortgage Loan that prepays during the term of the prepayment charge. If the Servicer fails to collect the applicable prepayment charge upon any prepayment of any Mortgage Loan, the Servicer shall pay the Owner an amount equal to the prepayment charge not collected.  Notwithstanding the foregoing, the Servicer may waive a prepayment charge without paying the Owner the amount of the prepayment charge if (a) the Mortgage Loan is in Default or Default is reasonably foreseeable and such waiver would maximize recovery of total proceeds taking into account the value of such prepayment charge and the other amounts due on the related Mortgage Loan or (b) the collection of the prepayment charge would be in violation of Applicable Law or Accepted Servicing Practices.

### Section 2.21.  Credit Reporting

For each Mortgage Loan, the Servicer shall, on a monthly basis, accurately and fully furnish, in accordance with Applicable Law, accurate and complete information (e.g., favorable and unfavorable) on the Mortgagors to each of the following credit repositories:  Equifax Credit Information Services, Inc., Trans Union, LLC and Experian Information Solution, Inc.

### Section 2.22.  Safeguarding Customer Information

The Servicer has implemented and will maintain security measures designed to meet the objectives of the Interagency Guidelines Establishing Standards for Safeguarding Customer Information published in final form on February 1, 2001, 66 Fed. Reg. 8616, and the rules promulgated thereunder, as amended from time to time.

# ARTICLE III.
## REMITTANCES AND STATEMENTS

Section 3.01.   Remittances for Portfolio Loans that are not HELOC Loans

On each Portfolio Loan Remittance Date the Servicer shall remit for each Portfolio Loan that is not a HELOC Loan and for each REO Property by wire transfer of immediately available funds to the Owner all amounts deposited in the applicable Custodial Account as of the close of business on the Determination Date (net of charges against or withdrawals from the Custodial Account permitted by this Agreement).

With respect to any remittance not made to Owner on the Portfolio Loan Remittance Date on which such remittance was required to be made, the Servicer shall, if such remittance has not already been made when written notice of such nonpayment is provided from Owner to Servicer, pay to the Owner interest on any such late payment at an annual rate equal to the LIBOR Rate, adjusted as of the date of each change, but in no event greater than the maximum amount permitted by law. Such interest shall be deposited in the Custodial Account by the Servicer on the date such late payment is made and shall cover the period commencing with the Business Day on which notice of such non-payment was given by Owner and ending with the Business Day on which such payment is made, both inclusive. Such interest shall be remitted along with the distribution payable on the next succeeding Portfolio Loan Remittance Date. The payment by the Servicer of any such interest shall not be deemed an extension of time for payment or a waiver of any Servicer Event of Default.

Section 3.02.   Remittances for HELOC Loans

(a)   The Servicer shall on each Business Day determine the amount of all HELOC Draws made on account of the HELOC Loans on the preceding Business Day and notify the Owner of such amount in the Daily HELOC Report.

(b)   Each Business Day, the Servicer shall remit for each HELOC Loan by wire transfer of immediately available funds to the Owner all amounts deposited in the Custodial Account on the previous Business Day, net of (i) charges against or withdrawals from the Custodial Account as permitted by this Agreement, and (ii) HELOC Draws not previously reimbursed. To the extent HELOC Draws exceed the available funds in the Custodial Account, the Owner will be required to reimburse Servicer for the amount of HELOC Draws not previously reimbursed within one (1) Business Day.

(c)   If such payment is not made by Owner when due, in addition to any other rights or remedies available to Servicer under this Agreement, including but not limited to the right of the Servicer to collect interest on such late payment pursuant to Section 4.03, the amount payable to Servicer may be deducted from the Custodial Account or from any subsequent remittance due Owner.

Section 3.03.    Remittance for Agency Loans

The Owner shall remit to Servicer, or ensure the Agency Custodial Account has sufficient funds for, all Monthly Payments due to the applicable Agency, on the date such funds are due to the applicable Agency.    The Servicer requires any funds due to the Agency be in the Custodial Account on the day prior to the date such funds are due to be remitted to the Agency or deducted from the Agency Custodial Account. This includes but is not limited to Monthly Payments, guaranty fees, buyout amounts and Repurchase Requests.

On each Portfolio Loan Remittance Date the Servicer shall also remit for each Agency Loan by wire transfer of immediately available funds, all amounts required to be remitted to the Owner pursuant to this Agreement, as of the close of business on the Determination Date. This amount shall include any Agency servicing fees collected by the Servicer and due Owner net of amounts due Servicer pursuant to Section 4.03.

Section 3.04.    Reconciliation of Servicing Advances

With respect to all Mortgage Loans and REO Properties, Servicer shall maintain a corporate account to monthly reconcile the amount of unreimbursed Servicing Advances and Servicing Advances recovered.  The Servicer shall, on each Determination Date determine all amounts representing Servicing Advances recovered and unreimbursed Servicing Advances on account of the Mortgage Loans and REO Properties. To the extent that the aggregate Servicing Advances recovered exceed the unreimbursed Servicing Advances, Servicer shall remit such difference to Owner by wire transfer of immediately available funds on the Portfolio Loan Remittance Date.  To the extent that the aggregate amount of unreimbursed Servicing Advances exceed the Servicing Advances recovered, (a) Servicer shall notify Owner of such difference in the Servicing Advance report which shall be provided on the Portfolio Loan Remittance Date following the Determination Date and (b) the Servicer shall net such amount from the remittance due to the Owner or withdrawal such amount from the Custodial Account; provided, however, if the remittance is not sufficient to allow the Servicer to net the full amount of the Servicing Advances and the Servicer cannot deduct the amount from the Custodial Account, the Owner shall, by wire transfer, remit to Servicer such amount within one (1) Business Day.

If such payment is not made by Owner when due, in addition to any other rights or remedies available to Servicer under this Agreement, including but not limited to the right of the Servicer to collect interest on such late payment pursuant to Section 4.03, the amount payable to Servicer may be deducted from the Custodial Account or from any subsequent remittance due Owner.

Section 3.05.    Statements to Owner

Not later than each Portfolio Loan Remittance Date, the Servicer shall furnish to the Owner a Monthly Advice for the Mortgage Loans and REO Properties, with a trial balance report attached thereto, in electronic medium mutually acceptable to the Parties, as of the preceding remittance and the period ending on the preceding Determination Date.

No later than the Portfolio Loan Remittance Date of each month, the Servicer shall provide the Owner with a billing statement for amounts owed to Servicer under the terms of this Agreement and which have either been withdrawn from the Custodial Account, deducted from a remittance or billed to Owner pursuant to Section 4.03.

Servicer shall furnish to the Owner a Servicing Advance report for all Mortgage Loans and REO Properties in accordance with Section 3.04.

Servicer shall furnish to the Owner a Daily HELOC Report in accordance with Section 3.02(a).

The Servicer shall provide the Owner with a report showing the amounts due the Agency no less than one (1) Business Day prior to the date such funds are due.

During the term of this Agreement, in addition to the reports specifically required under this Agreement, the Servicer shall also furnish to the Owner such other periodic, special, or other reports or information as shall be reasonably requested by the Owner to the extent such reports or information are readily accessible to the Servicer without any more than nominal expense or effort. To the extent any such report not otherwise provided for herein and requiring more than nominal expense or effort is reasonably requested by Owner, Servicer shall have no obligation to provide such report until Servicer and Owner agree on the additional compensation to be paid Servicer for such report using the Servicing Change process outlined in Section 2.19.

Section 3.06.  Internal Revenue Service Reports

The Servicer shall mail, on or before the dates required by Applicable Law, U.S. Internal Revenue Service ("IRS") Form No. 1099 to all parties entitled to receive interest on Escrow Accounts, where applicable, as well as IRS Form No. 1098 to each Mortgagor. The Servicer shall timely file all required reporting relating to the Mortgage Loans with the IRS, including, for all periods after the applicable Transfer Date. In addition, the Servicer shall provide the Owner with such information concerning the Mortgage Loans which is reasonably available to the Servicer and which is necessary for the Owner to prepare its federal income tax return as the Owner may reasonably request from time to time.

Following the foreclosure sale or abandonment of any Mortgaged Property, the Servicer shall report such foreclosure or abandonment to the U.S. Internal Revenue Service as required by Applicable Law.

### Section 3.07.  No Principal & Interest Advances

The Servicer will service the Portfolio Loans on an "actual/actual" basis and the Servicer shall have no obligation to advance principal or interest payments not collected from Mortgagors.  The Owner is responsible for providing sufficient funds to the Servicer for any Agency Loans that require Advances.

### Section 3.08.  Odd Due Dates

Any Mortgage Loan which has a scheduled Due Date on a day other than the first day of each month shall, for the purposes of this Agreement, be considered due on the first day of the month following the month in which that payment is due.  For example, a Mortgage Loan with a scheduled payment due on August 15 shall be considered to have a Due Date of September 1 for the purposes of this Agreement, including investor reports and remittance, and for calculating the length of payment Default on such Mortgage Loan.

# ARTICLE IV.
## ADDITIONAL SERVICING PROCEDURES

Section 4.01.   Transfers of Mortgaged Property

The Servicer shall be required to enforce any "due-on-sale" provision contained in any Mortgage or Mortgage Note.  When the Mortgaged Property has been conveyed by the Mortgagor without repayment in full of the related Mortgage Loan, the Servicer shall, to the extent it has knowledge of such conveyance, exercise its right to accelerate the maturity of such Mortgage Loan under the applicable "due-on-sale" clause, provided, however, that the Servicer shall not exercise such right if prohibited by Applicable Law from doing so.

If the Servicer reasonably believes it is unable under Applicable Law to enforce a "due-on-sale" clause, the Servicer, shall, to the extent permitted by Applicable Law, attempt to enter into (a) an assumption and modification agreement with the person to whom such property has been conveyed, pursuant to which such person becomes liable under the Mortgage Note and the original Mortgagor remains liable thereon or (b) in the event the Servicer is unable under Applicable Law to require that the original Mortgagor remain liable under the Mortgage Note and the Servicer has the prior consent of the PMI Policy or LPMI Policy provider, a substitution of liability agreement with the purchaser of the Mortgaged Property pursuant to which the original Mortgagor is released from liability and the purchaser of the Mortgaged Property is substituted as Mortgagor and becomes liable under the Mortgage Note.  In connection with any such assumption, the Mortgage Interest Rate, the term of the Mortgage Loan and the outstanding principal amount of the Mortgage Loan shall not be changed.

To the extent that any Mortgage Loan is assumable, the Servicer shall inquire diligently into the creditworthiness of the proposed transferee, and shall follow Accepted Servicing Practices, subject to the Approval Matrix, including but not limited to conducting a review of the credit and financial capacity of the transferee, and may, subject to the Approval Matrix, approve the assumption if it believes the transferee is capable of performing the mortgage obligations.  If the credit of the proposed transferee does not satisfy the relevant underwriting criteria and the transfer of ownership actually occurs, the Servicer shall, to the extent permitted by the Mortgage, Mortgage Note and Applicable Law, accelerate the maturity of the Mortgage Loan.

Section 4.02.   Satisfaction of Mortgages Upon Payment in Full

Upon the payment in full of any Mortgage Loan, or if a HELOC Loan, the receipt of written notification from the Mortgagor to satisfy their HELOC Loan (provided that no amounts are due on such HELOC Loan),   the Servicer shall notify the Owner in the Monthly Advice, and may request the release of any Mortgage Loan Documents from the Owner or Custodian. The Servicer shall satisfy the lien of record securing any such paid in full Mortgage Loan within the applicable time limit required by Applicable Law;

provided that the Owner or its Custodian has provided, or caused to be provided, all necessary documents requested by the Servicer.

Section 4.03.   <u>Servicing Compensation and Owner Expenses</u>

As consideration for servicing the Mortgage Loans pursuant to this Agreement, the Servicer shall be entitled to retain the applicable Servicing Compensation from payments on the Mortgage Loans or to withdraw the applicable Servicing Compensation with respect to each Mortgage Loan from the Custodial Account pursuant to Section 2.05 hereof.   In addition to the Servicing Compensation, the Owner also agrees to pay Owner Expenses and (when applicable) any other fees as mutually agreed, if not otherwise withdrawn from the Custodial Account pursuant to this Agreement.

To the extent any amounts due the Servicer per the Pricing Exhibit or this Agreement, including but not limited to Servicing Compensation, Owner Expenses, Servicing Advances, and Advances, cannot be deducted from any Custodial Accounts or deducted from any remittance due Owner, the Servicer shall bill the Owner. The Owner agrees to pay all such bills within 10 days from receipt, unless a shorter period of time is provided elsewhere in this Agreement for Owner to make a particular payment.

If such amounts are not paid when required, the Owner shall, if such amounts have not already been paid when written notice of such non-payment is provided from Servicer to Owner, pay to the Servicer interest on any such late payment at an annual rate equal to the LIBOR Rate, adjusted as of the date of each change, but in no event greater than the maximum amount permitted by law.  Such interest shall be paid by Owner with the payment to which such interest relates, or withdrawn by Servicer from the Custodial Account with the withdrawal to which such interest relates, and shall cover the period commencing with the Business Day on which notice of such non-payment was given by Servicer and ending with the Business Day on which such payment is made by Owner or withdrawn by Servicer, both inclusive. The payment by the Owner of any such interest shall not be deemed an extension of time for payment or a waiver of any Owner Event of Default.

The Servicer shall have the right to adjust the monthly base servicing fees (as set forth on the Pricing Exhibit) on each anniversary date of this Agreement. Such increased base servicing fees shall be calculated by multiplying (a) the CPI plus one percentage point (1.0%) times (b) the applicable then current monthly base servicing fees, and adding the result to the applicable then current monthly base servicing fees.

The Servicer shall have the right to offset any amounts due and unpaid under this Agreement with funds due Owner from Servicer or any of Servicer's Affiliates.

Section 4.04.   <u>Possession of Mortgage Files</u>

The contents of each Mortgage File are and shall be held in trust by the Servicer for the benefit of the Owner as the owner thereof. The possession of the Mortgage File by the Servicer is at the will of the Owner for the sole purpose of servicing the related Mortgage Loan, pursuant to this Agreement, and such retention and possession by the Servicer is in its capacity as Servicer only and at the election of the Owner; provided that Servicer may keep copies of any records it deems necessary for compliance with any state or federal record retention requirements or as it deems advisable for use in defending any litigation, action or claim. The Servicer shall release the contents of any Mortgage File only in accordance with written instructions from the Owner, unless such release is required as incidental to the Servicer's servicing of the Mortgage Loans pursuant to this Agreement.

To the extent that original documents (other than the Mortgage Loan Documents) are not required for purposes of realization of Liquidation Proceeds or Insurance Proceeds, documents maintained by the Servicer may be in the form of microfilm or microfiche or such other reliable means of recreating original documents, including but not limited to, optical imaging techniques so long as the Servicer complies with Accepted Servicing Practices.

The Owner agrees to make arrangements with its Custodian (if any) to provide Servicer with access to any Mortgage Loan Documents held by such Custodian as necessary in order for Servicer to service the Mortgage Loans as required by this Agreement.

Section 4.05.    Right to Examine Servicer Records

During the Original Term and any Extension Term of this Agreement, the Owner shall have the right to examine and audit, up to two times annually and upon reasonable advance written notice, any and all of the books, records, or other information of the Servicer, whether held by the Servicer or by another on its behalf, with respect to or concerning this Agreement, the Mortgage Loans or the REO Properties, during normal business hours or as otherwise agreed to by the Servicer. If Servicer incurs any out of pocket costs associated with such review, Owner shall reimburse Servicer for such costs.

Section 4.06.    Losses and Expenses

(a)    Notwithstanding any other provisions of this agreement, including Section 10.01(b), Owner shall remain responsible, as between Owner and Servicer, for losses related to Owner's investment in the Servicing Rights or, as applicable, the Mortgage Loans or REO. Losses of the type referred to above for which Owner shall remain responsible include, but are not limited to: VA No-Bid Instruction, VA partial guaranties, FHA partial claims payments, shortages in the reimbursement amounts for fees paid by Servicer on FHA and VA Mortgage Loans, prepayment interest shortfall for Agency deliveries, Agency penalties, investor repurchase demands, earthquake losses or other such special hazard losses not covered by the insurance required to be maintained under this Agreement, fraud, foreclosure losses, tax penalties related to taxing authorities

supplying bills only to Mortgagors, REO Property losses, Recourse Obligations, and losses resulting from application of the Servicemembers Civil Relief Act of 2003 unless any such losses are incurred as a result of Servicer gross negligence or willful misconduct.

(b)    In addition to Servicing Advances and Owner Expenses regarding which the Servicer is entitled to reimbursement hereunder, Owner shall reimburse Servicer for expenses incurred in connection with the performance by Servicer at the request of Owner of any activity that is not specifically required to be performed by Servicer under this Agreement and is not reasonably ancillary to any specific obligation of Servicer under this Agreement. Except as otherwise expressly provided in this Agreement, each Party shall pay its own expenses incurred in connection with the preparation of and performance under this Agreement, including, without limitation, its own legal fees and expenses of preparing and delivering the notices, documents, reports, accountings and any other information required of it hereunder. Owner shall be solely responsible for all custodial fees (including related shipping costs) of Owner's document Custodian, if any.

(c)    In the event that Servicer determines it is in the Owner's best interest to cure a Default under or pay off a superior lien mortgage loan related to a subordinate lien Mortgage Loan, Servicer shall notify Owner of the amount needed to effectuate such a cure or pay off. Owner agrees to remit such funds to Servicer within the time period specified by Servicer if Owner wishes to preserve the subordinate lien Mortgage Loan being serviced by Servicer. If Servicer does not receive the required funds within the time periods specified, Servicer will not cure or pay off such superior lien mortgage loan.

Section 4.07.   Repurchase Requests

In the event Servicer receives a Repurchase Request directly from an Agency, investor or any other Person, or a repurchase is otherwise required pursuant to the terms of the applicable Agency Guide, Servicer shall act in accordance with Accepted Servicing Practices and shall provide notice to the Owner within five (5) Business Days and provide Owner with reasonably requested information relating to such Repurchase Request as is in the Servicer's possession or control. If such repurchase request results from a violation of this Agreement by Servicer, Servicer shall respond in a timely manner directly to the Person making such Repurchase Request. For all other Repurchase Requests, Owner shall respond in a timely manner directly to the Person making such Repurchase Request.

In the event the Owner requests the seller or the originator of the Mortgage Loan to repurchase such Mortgage Loan and/or the Servicing Rights to such Mortgage Loan, Servicer agrees to cooperate with Owner to provide Owner with reasonably requested information relating to such request.

If the Mortgage Loan is to be repurchased, Servicer shall calculate, on behalf of Owner, amounts required to repurchase the Mortgage Loan and Owner shall wire such amount to Servicer within one (1) Business Day. In the event of a repurchase

by the seller or originator at Owner's request with transfer of servicing to another servicer, Owner shall immediately reimburse Servicer (a) for any funds owed to or advanced by Servicer; and (b) for any outstanding funds due Servicer according to Section 11.02 of this Agreement.

## ARTICLE V.
### COMPLIANCE AND CONFIDENTIALITY

Section 5.01.    Annual Statement as to Compliance

The Servicer shall deliver to the Owner, on or before March 31st each year
beginning March 31, 2012, an officer's certificate, stating that (a) a review of the
activities of the Servicer during the preceding calendar year and of performance under
this Agreement has been made under such officer's supervision, and (b) to the best of
such officer's knowledge, based on such review, the Servicer has fulfilled all its
obligations under this Agreement throughout such year, or, if there has been a default in
the fulfillment of any such obligation, specifying each such default known to such officer
and the nature and status thereof and the action being taken by the Servicer to cure such
default.

Section 5.02.    Annual Independent Public Accountants' Servicing Report

The Servicer, at its expense, shall provide an SAS 70 report, or its
equivalent, on control effectiveness for the prior fiscal year period which assessment
shall be attested to by a firm of independent public accountants which is a member of the
American Institute of Certified Public Accountants and either (a) cause a firm of
independent public accountants which is a member of the American Institute of Certified
Public Accountants to furnish a statement to the Owner to the effect that such firm has
examined certain documents and records for the preceding fiscal year (or during the
period from the date of commencement of such Servicer's duties hereunder until the end
of such preceding fiscal year in the case of the first such certificate), and that, on the basis
of such examination conducted substantially in compliance with the Uniform Single
Attestation Program for Mortgage Bankers, such firm is of the opinion that the Servicer's
overall servicing operations have been conducted in compliance with the Uniform Single
Attestation Program for Mortgage Bankers except for such exceptions that, in the opinion
of such firm, the Uniform Single Attestation Program for Mortgage Bankers requires it to
report, in which case such exceptions shall be set forth in such statement, or (b) furnish to
Owner the Servicer's assessment of Servicer's compliance with the servicing criteria set
forth in Section 1122(d) of Securities and Exchange Commission Regulation AB (17
C.F.R. Section 229.1122(d)), which assessment shall be attested to by a firm of
independent public accountants which is a member of the American Institute of Certified
Public Accountants. The SAS 70 report, or its equivalent, must be provided as soon as it
is available.  If pursuant to generally accepted accounting principles or accepted
mortgage industry practice, material changes to the requirements of this Section 5.02
become necessary or desirable in the reasonable good faith judgment of either Party, the
Parties agree to negotiate in good faith to modify the requirements of this Section 5.02.

Section 5.03.    Compliance with Gramm-Leach-Bliley Act of 1999

With respect to each Mortgage Loan and the related Mortgagor, each party
shall as required comply with Title V of the Gramm-Leach-Bliley Act of 1999 and all

applicable regulations promulgated thereunder, and shall provide all notices required of such party thereunder.

Section 5.04.   Confidentiality of Information .

The Servicer and the Owner each agree that any information and documents that are furnished by either Party for the purposes of performing under this Agreement or that are produced or are otherwise furnished by either Party to or come to the attention of either Party in connection herewith are confidential and proprietary and shall be used only for the purposes of carrying out such Party's obligations under this Agreement. This information includes the terms of this Agreement, technical specifications and operating manuals, information concerning current, future, or proposed products and services and combinations of products and services; product and services descriptions; financial information; information related to mergers or acquisitions; passwords and security procedures; computer programs, loan servicing systems, software, and software documentation; customer and/or prospective client lists, mortgage loan files, and all other information relating in any way to the Mortgagor and/or prospective mortgagor; printouts; records; policies, practices and procedures; and any or all other information, data or materials relating to the business, trade secrets and technology of either Party, its customers, clients, employees, business affairs and Affiliates (all of the foregoing collectively referred to as "Confidential Information").

The obligations imposed under this Agreement shall not apply to Confidential Information that is (a) made public by the Party disclosing Confidential Information to the other Party (b) generally available to the public other than by a breach of this Agreement by the receiving Party, its employees or agents, (c) rightfully received from a third person having the legal right to disclose the Confidential Information free of any obligation of confidence or (d) necessary or appropriate to disclose in such Party's work with legal counsel, accountants, auditors or as required by law. In the event that the receiving Party, or any of such Party's agents or employees, becomes legally compelled (by deposition, interrogatory, request for documents, subpoena, civil or criminal investigative demand or similar process) to disclose any Confidential Information of the disclosing Party, such receiving Party shall, provided it is not legally prohibited from doing so, provide prompt prior notice to the disclosing Party so that it may seek a protective order or other appropriate remedy. In the event that such protective order or other remedy is not obtained, the receiving Party will furnish only that portion of the Confidential Information which in the judgment of its counsel is legally required and will exercise reasonable efforts to obtain assurances that confidential treatment will be accorded the Confidential Information.

Each Party shall maintain the Confidential Information of the other in confidence using the same care and discretion to avoid disclosure of Confidential Information as it uses to protect its own confidential information that it does not want disclosed, but in no event less than a reasonable standard of care. Each Party further agrees to restrict disclosure of Confidential Information of the disclosing Party solely to persons who need to know the Confidential Information to perform under this Agreement

and inform those third parties and other persons who receive Confidential Information of its confidential nature and obtain their agreement to abide by the obligations set forth herein.

Each Party acknowledges and agrees that any breach or threatened breach of any of the provisions of this section by the other Party may result in immediate and irreparable harm and that any remedies at law in such event will be inadequate. The Parties agree that such breaches, whether threatened or actual, will give the disclosing Party the right to obtain injunctive relief to restrain such disclosure or use. This right shall, however, be in addition to and not in lieu of any other remedies at law or in equity.

Upon termination of this Agreement, all copies of the Confidential Information will either be destroyed or returned to the disclosing Party immediately upon such Party's request. Each Party agrees that it will not retain any copy, summary or extract of the Confidential Information or any related work papers on any storage medium whatsoever, except as may be legally required for records retention compliance purposes. Notwithstanding anything to the contrary contained herein, neither Party shall be required to purge information from computer system back-up tapes or comparable back-up medium, and Servicer shall in no event have any obligation hereunder to destroy Mortgage Loan files or any documents related thereto.

# ARTICLE VI.

## REPRESENTATIONS, WARRANTIES AND COVENANTS OF OWNER

As of the date of this Agreement (or such other date if set forth below), the Owner warrants and represents to, and covenants and agrees with, the Servicer as follows:

### Section 6.01.  Organization and Good Standing

The Owner is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and is licensed, qualified and in good standing in each state where a Mortgaged Property is located to the extent necessary to perform its obligations under this Agreement. The Owner has the power and authority to make, execute, deliver and perform this Agreement, and perform all of the transactions contemplated to be performed by it under this Agreement, and has taken all necessary action to authorize the execution, delivery and performance of this Agreement. When executed and delivered, this Agreement will constitute the legal, valid and binding obligation of the Owner enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and by the availability of equitable remedies.

### Section 6.02.  Ordinary Course of Business

The consummation of the transactions contemplated by this Agreement is in the ordinary course of business of the Owner.

### Section 6.03.  No Violations

The execution, delivery and performance of this Agreement by the Owner will not violate any provision of any existing law or regulation or any order or decree of any court applicable to the Owner, except for violations that will not adversely affect the Owner's ability to perform its obligations under this Agreement, or constitute a material breach of any mortgage, indenture, contract or other agreement to which the Owner is a party or by which the Owner may be bound.

### Section 6.04.  Ability to Perform

The Owner does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement.

### Section 6.05.  Litigation

No litigation or administrative proceeding before any court, tribunal or governmental body is currently pending or to the knowledge of the Owner threatened, against the Owner or with respect to this Agreement, which if adversely determined would have a material adverse effect on the transactions contemplated by this Agreement.

Section 6.06.    No Consent Required

The Owner is not required to obtain the consent of any other party or any consent, license, approval or authorization from, or registration or declaration with, any governmental authority, bureau or agency in connection with the execution, delivery, performance, validity or enforceability of this Agreement, except such as have been obtained or made or as to which the failure to obtain or make will not materially adversely affect the ability of the Owner to perform all obligations hereunder.

Section 6.07.    Ownership

With respect to each Portfolio Loan and REO Property, Owner is the owner of all right, title, and interest in and to such loan or property and the Servicing Rights.  With respect to each Agency Loan, Owner is the owner of all right, title, and interest in and to the Servicing Rights. Each Mortgage Loan is a valid and collectible obligation of the respective Mortgagor.

Section 6.08.    Accuracy

All information provided to the Servicer, including but not limited to information in the New Loan Data File, is true, complete and correct in all material respects.

Section 6.09.    Eligibility Criteria

All Mortgage Loans and REO Properties conform to the Eligibility Criteria.

# ARTICLE VII.
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SERVICER

As of the date of this Agreement (or such other date if set forth below), the Servicer warrants and represents to, and covenants and agrees with, the Owner as follows:

Section 7.01.  <u>Organization and Good Standing</u>

The Servicer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and is licensed, qualified and in good standing in each state where a Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by the Servicer, and in any event the Servicer is in compliance with the laws of any such state to the extent necessary to perform its obligations in accordance with the terms of this Agreement.  The Servicer has the power and authority to make, execute, deliver and perform this Agreement, and perform all of the transactions contemplated to be performed by it under this Agreement, and has taken all necessary action to authorize the execution, delivery and performance of this Agreement.  When executed and delivered, this Agreement will constitute the legal, valid and binding obligation of the Servicer enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and by the availability of equitable remedies.

Section 7.02.  <u>Ordinary Course of Business</u>

The consummation of the transactions contemplated by this Agreement is in the ordinary course of business of the Servicer.

Section 7.03.  <u>No Violation</u>

The execution, delivery and performance of this Agreement by the Servicer will not violate any provision of any existing law or regulation or any order or decree of any court applicable to the Servicer, except for violations that will not adversely affect the Servicer's ability to perform its obligations under this Agreement or the certificate of formation of the Servicer, or constitute a material breach of any mortgage, indenture, contract or other agreement to which the Servicer is a party or by which the Servicer may be bound.

Section 7.04.  <u>Ability to Perform</u>

The Servicer does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement.

Section 7.05.  <u>Ability to Service</u>

The Servicer has the facilities, procedures, and experienced personnel necessary for the servicing of mortgage loans of the same type as the Mortgage Loans. The Servicer is in good standing to enforce and service mortgage loans in the jurisdiction wherein the Mortgaged Properties are located.

Section 7.06.   Litigation

No litigation or administrative proceeding of or before any court, tribunal or governmental body is currently pending or to the knowledge of the Servicer threatened, against the Servicer or with respect to this Agreement, which if adversely determined would have a material adverse effect on the transactions contemplated by this Agreement.

Section 7.07.   No Consent Required

The Servicer is not required to obtain the consent of any other party or any consent, license, approval or authorization from, or registration or declaration with, any governmental authority, bureau or agency in connection with the execution, delivery, performance or enforceability of this Agreement, except such as have been obtained or made or as to which the failure to obtain or make will not materially adversely affect the ability of the Servicer to perform all obligations hereunder.

# ARTICLE VIII.
## OWNER DEFAULT

Section 8.01.  Owner Events of Default.

The following shall constitute an Owner Event of Default under this Agreement:

(a)    any failure by the Owner to remit to the Servicer any payment required to be made under the terms of this Agreement which continues un-remedied for a period of three (3) Business Days after the date upon which notice of such failure, requiring the same to be remedied, shall have been given to the Owner by the Servicer; or

(b)    the failure by the Owner duly to observe or perform in any material respect any other of the obligations of the Owner set forth in this Agreement which continues un-remedied for a period of sixty (60) days after the date on which notice of such failure, requiring the same to be remedied, shall have been given to the Owner by the Servicer; provided, however, that in the case of a failure that cannot be cured within sixty (60) days, the cure period shall be extended up to, but no more than, sixty (60) additional days if the Owner can demonstrate to the reasonable satisfaction of the Servicer that the failure can be cured and the Owner is diligently pursuing remedial action; or

(c)    a decree or order of a court, agency or supervisory authority having jurisdiction for the appointment of a conservator, receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshaling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Owner and such decree or order shall have remained in force un-discharged or un-stayed for a period of sixty (60) days; or

(d)    the Owner shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshaling of assets and liabilities or similar proceedings of or relating to the Owner or relating to all or substantially all of its property; or

(e)    the Owner shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations.

In each and every such case, in addition to whatever rights the Servicer may have at law or equity to damages, including injunctive relief and specific performance, the Servicer, by notice in writing to the Owner, may terminate this Agreement.

Upon receipt by the Owner of such written notice, Owner shall cooperate with Servicer to transfer the servicing to the successor appointed pursuant to Section 11.02. The Servicer agrees to reasonably cooperate with the Owner and such successor in transferring the servicing hereunder, as described in Section 11.02, and shall place in such successor's possession all Mortgage Files, and do or accomplish all other acts or things reasonably necessary or appropriate to effect the purposes of such notice of termination

# ARTICLE IX.
## SERVICER DEFAULT

Section 9.01. <u>Servicer Events of Default.</u>

The following shall constitute a Servicer Event of Default under this Agreement on the part of the Servicer:

(a)    any failure by the Servicer to remit to the Owner any payment required to be made under the terms of this Agreement which continues un-remedied for a period of three (3) Business Days after the date upon which notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Owner; or

(b)    the failure by the Servicer duly to observe or perform in any material respect any other of the obligations of the Servicer set forth in this Agreement which continues un-remedied for a period of sixty (60) days after the date on which notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Owner; provided, however, that in the case of a failure that cannot be cured within sixty (60) days, the cure period shall be extended up to, but no more than, sixty (60) additional days if the Servicer can demonstrate to the reasonable satisfaction of the Owner that the failure can be cured and the Servicer is diligently pursuing remedial action; or

(c)    a decree or order of a court, agency or supervisory authority having jurisdiction for the appointment of a conservator, receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshaling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Servicer and such decree or order shall have remained in force un-discharged or un-stayed for a period of sixty (60) days; or

(d)    the Servicer shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshaling of assets and liabilities or similar proceedings of or relating to the Servicer or of or relating to all or substantially all of its property; or

(e)    the Servicer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations; or

(f)    the Servicer fails to maintain its license to do business or service residential mortgage loans in any jurisdiction where the Mortgaged Properties are located which failure continues un-remedied for a period of sixty (60) days after receiving actual notice of such failure and such failure has a material and adverse effect on the Servicer's ability to perform its obligations under the Agreement.

In each and every such case, in addition to whatever rights the Owner may have at law or equity to damages, including injunctive relief and specific performance, the Owner, by notice in writing to the Servicer, may terminate all the rights and obligations of the Servicer under this Agreement.

Upon receipt by the Servicer of such written notice, all authority and power of the Servicer under this Agreement, whether with respect to the Mortgage Loans or otherwise, shall pass to and be vested in the successor appointed pursuant to Section 11.02. The Servicer agrees to reasonably cooperate with the Owner and such successor in effecting the termination of the Servicer's responsibilities and rights hereunder, as described in Section 11.02, and shall place in such successor's possession all Mortgage Files, and do or accomplish all other acts or things reasonably necessary or appropriate to effect the purposes of such notice of termination.

## ARTICLE X.
### INDEMNIFICATION AND ASSIGNMENT

Section 10.01. Indemnification.

(a)     The Owner shall defend and indemnify the Servicer, its employees, officers, Affiliates, agents and representatives (the "Servicer Indemnified Parties"), against any and all assessments, judgments, claims, liabilities, losses, costs, damages or expenses whatsoever (including, reasonable attorneys' fees, expenses and disbursements in connection with any action, suit or proceeding and any such reasonable attorneys' fees, expenses and disbursements incurred in enforcing any right of indemnification) (collectively, the "Liability"), provided such Liability is not a result of gross negligence or willful misconduct on behalf of the Servicer. Servicer Indemnified Parties may sustain arising from:

(i)     the Servicer taking any action, or refraining from taking any action, in conformity with the express written direction of the Owner or this Agreement;

(ii)     the failure of the Owner to perform its duties under this Agreement or the Owner's breach of any of the terms of this Agreement;

(iii)     the failure of the Owner or any trustee or Custodian in possession of original Mortgage Loan Documents to provide to the Servicer the originals of any Mortgage Loan Documents within a reasonable amount of time after a request for such documents has been received in order to allow the Servicer sufficient time to process satisfactions, payoffs and releases;

(iv)     any act or omission to act of any Person, including but not limited to the originator of the Mortgage Loan or any prior servicer, prior to the Transfer Date, including, without limitation, any data integrity issue (and any costs of correcting such issue);

(v)     perpetuating the acts or omissions of prior servicers, unless (x) the Servicer has actual knowledge that perpetuating such act or omission will result in Liability to the Servicer, (y) the Servicer knowingly acts or fails to act and such act or failure to act, as a singular event, not in combination with any other act or omission of any prior servicer(s), results in Liability to the Servicer, or (z) the acts or omissions are based on a mistaken or false conception of the law that is obvious and significant and the Servicer, over a period of time, in more than a single instance, continues in its course of servicing to perpetuate such acts or omissions;

(vi)     the Owner's or a prior servicer's failure to comply with the Transfer Instructions;

(vii)    Advances and Servicing Advances, if any, incurred by a prior servicer and reimbursed by the Servicer that ultimately are not recoverable from the Mortgagor or other proceeds;

(viii)    a Mortgage Loan being classified as "high cost" under the Home Ownership and Equity Protection Act of 1994; or "high cost," "predatory," or similar classification under any law or regulation applicable to such Mortgage Loan;

(ix)    any VA No-Bid Instruction and for any interest curtailment associated with standard servicing of the FHA or the VA Mortgage Loans and timeline variances relating to referral to the attorney, foreclosure initiation or conveyance to HUD;

(x)    any claim by a purchaser or prospective purchaser of a Mortgage Loan or group of Mortgage Loans, including relating to any note sale agreement and;

(xi)    any Environmental Liability.

The term "Environmental Liability" shall mean any Liability arising out of the existence of environmentally hazardous materials on any Mortgaged Property, including, without limitation, (x) any liability under or on account of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601 et seq., as the same may be amended from time to time, and/or any other federal or state environmental laws, and specifically including, without limitation, any liability relating to asbestos and asbestos containing materials, polychlorinated biphenyls, radon gas, petroleum and petroleum products, urea formaldehyde and any substances classified as being "in inventory," "usable work in process" or similar classification which would, if classified as unusable, be included in the foregoing definition, including the assertion of any lien thereunder, (y) claims brought by third parties for loss or damage incurred or sustained subsequent to the date hereof, and (z) liability with respect to any other matter affecting the Mortgaged Property within the jurisdiction of the federal Environmental Protection Agency or state environmental regulatory agencies pursuant to any state laws, and in the regulations adopted pursuant to any of said laws; provided, however, that the indemnity for Environmental Liability shall not be effective with respect to any liability caused by the Servicer that would otherwise be imposed by reason of the Servicer's willful misfeasance or bad faith in the performance of or failure to perform its duties hereunder.

(b)    Except as provided in Section 4.06, the Servicer shall defend and indemnify the Owner, its employees, officers, Affiliates, agents and representatives (the "Owner Indemnified Parties") against any and all Liability sustained by the Owner Indemnified Parties arising from the failure of the Servicer to perform its duties under this Agreement or the Servicer's breach of the terms of this Agreement.

(c)    As soon as is reasonably practicable after becoming aware of a claim for indemnification under this Agreement involving a claim (or the commencement of any proceeding or investigation) of a type described herein, the Party seeking indemnification (for purposes of this Section 10.01 (c), the "Indemnified Party") shall give written notice to the other Party (for purposes of this Section 10.01 (c), the "Indemnifying Party") of such claim; provided, that the failure of the Indemnified Party to give such written notice shall not relieve the Indemnifying Party of its obligations to indemnify except to the extent (if any) that the Indemnifying Party shall have been prejudiced thereby. The Indemnifying party shall pay any undisputed claims within thirty (30) days. If within such 30-day period the Indemnifying Party agrees that it has an indemnification obligation but objects that it is obligated to pay only a lesser amount, the Indemnified Party shall be entitled to recover from the Indemnifying Party and the Indemnifying Party shall promptly pay to the Indemnified Party the lesser amount, without prejudice to the Indemnified Party's claim for the difference.

The obligations of the Indemnifying Party to indemnify any Indemnified Party with respect to any Liability resulting from the assertion of any claim or the commencement of any proceeding or investigation by any Person not a party hereto (a "Third Party Claim"), shall be subject to the following additional terms and conditions:

(i)    The written notice required pursuant to Section 10.01(c) above by the Indemnified Party to the Indemnifying Party regarding the Third Party Claim shall contain reasonable details concerning such Third Party Claim. The Indemnifying Party may, at its own expense, (x) participate in the Indemnified Party's defense of any such Third Party Claim and (y) upon written notice to the Indemnified Party and the Indemnifying Party delivering to the Indemnified Party a written agreement that the Indemnified Party is entitled to indemnification pursuant to this Agreement for all Liability arising out of such Third Party Claim and that the Indemnifying Party shall be liable for the entire amount of any Liability resulting therefrom, at any time during the course of any such Third Party Claim assume the defense thereof; provided, that (a) the Indemnifying Party shall provide written evidence reasonably satisfactory to the Indemnified Party demonstrating that the Indemnifying Party has sufficient financial resources for purposes of such assumption of defense, (b) the Indemnifying Party's counsel is reasonably satisfactory to the Indemnified Party and (c) the Indemnifying Party shall thereafter consult with the Indemnified Party upon the Indemnified Party's reasonable request for such consultation from time to time with respect to such Third Party Claim. If the Indemnifying Party assumes such defense, the Indemnified Party shall have the right (but not the duty) to participate in the defense thereof and to employ counsel, at its own cost and expense, separate from the counsel employed by the Indemnifying Party. If, however, the Indemnified Party reasonably determines in its judgment that representation by the Indemnifying Party's counsel of both the

53

Indemnifying Party and the Indemnified Party would present such counsel with a conflict of interest, then such Indemnified Party may employ separate counsel to represent or defend it in any such Third Party Claim and the Indemnifying Party shall pay the reasonable fees and disbursements of such separate counsel. Whether or not the Indemnifying Party chooses to defend or contest any such Third Party Claim, upon the request of the Indemnified Party, the Indemnifying Party shall provide reasonable cooperation to the Indemnified Party with respect thereto.

(ii)    Any settlement or compromise made or caused to be made by the Indemnified Party or the Indemnifying Party, as the case may be, of any Third Party Claim shall also be binding upon the Indemnifying Party or the Indemnified Party, as the case may be, in the same manner as if a final judgment or decree had been entered by a court of competent jurisdiction in the amount of such settlement or compromise; provided, that (a) no obligation, restriction or Liability shall be imposed on the Indemnified Party as a result of such settlement without its prior written consent (i.e., the Indemnifying Party may not settle any Third Party Claim for other than the payment of money damages only, to be paid by the Indemnifying Party, without the Indemnified Party's prior written consent), and (b) the Indemnified Party shall not compromise or settle any Third Party Claim without the prior written consent of the Indemnifying Party, which consent shall not be unreasonably withheld, conditioned or delayed.

(iii)    If the Indemnifying Party does not elect to assume the defense of any Third Party Claim, then any failure of the Indemnified Party to defend or to participate in the defense of any such Third Party Claim, or to cause the same to be done, shall not relieve the Indemnifying Party of its obligations hereunder.

(d)    As provided in Section 12.17 hereof, the foregoing indemnification obligations of Owner and Servicer shall survive termination of this Agreement or removal of some or all of the Mortgage Loans from the coverage of this Agreement, including removal due to an Agency Transfer.

Section 10.02. Limitation on Liability of Servicer and Others

Notwithstanding Section 10.01(b), the Servicer shall not incur any Liability to the Owner for any action taken or for refraining from the taking of any action in good faith pursuant to this Agreement, or for errors in judgment, provided, however, that this provision shall not protect the Servicer against any breach of warranties or representations made herein, or failure to perform its obligations in compliance with any standard of care set forth in this Agreement, or any liability which would otherwise be imposed by reason of any breach of the terms and conditions of this Agreement. The Servicer does not guarantee or warrant the collectability, in whole or in part, of any Mortgage Loan or REO Property or the results of the resolution or ultimate disposition of

any Mortgage Loan or REO Property. The Servicer Indemnified Parties may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder. The Servicer shall not be under any obligation to appear in, prosecute or defend any legal action which is not incidental to its duties to service the Mortgage Loans in accordance with this Agreement and which in its opinion may involve it in any expense or liability, provided, however, that the Servicer may undertake any such action which it may deem necessary or desirable in respect to this Agreement and the rights and duties of the Parties hereto. In such event, the Servicer shall be entitled to reimbursement from the Owner of the reasonable legal expenses and costs of such action.

Notwithstanding any other provision of this Agreement to the contrary, the Servicer's maximum cumulative Liability under this Agreement to Owner, whether in contract, tort or otherwise, shall in no event exceed the amount of the Servicing Compensation payable by Owner to Servicer during the twelve month period immediately preceding the month in which demand for indemnification and/or notice of breach of this Agreement is first provided by Owner to Servicer as provided herein.

Section 10.03. Operation of Indemnities

If any Person has made any indemnity payments to any other Person pursuant to this Article X and such other Person thereafter collects any of such amounts from others, such other Person will repay such amounts collected, together with any interest collected thereon. The provisions of this Article X shall survive any termination of this Agreement, the liquidation of any Mortgage Loan, or the transfer or assignment by the Owner to another Person of any Mortgage Loan or REO Property or any interest in any Mortgage Loan or REO Property.

Section 10.04. Assignment

The Servicer shall not assign this Agreement or delegate its duties hereunder or any portion thereof without the prior written consent of the Owner, which consent shall not be unreasonably withheld; provided that the Servicer may, without the consent of the Owner, assign this Agreement or delegate any duty to an Affiliate capable of performing the Servicer's obligations hereunder. It is acknowledged and agreed that Servicer's Affiliate, Executive Trustee Services, LLC, shall perform certain collection and recovery services hereunder on behalf of Servicer in connection with charged off Mortgage Loans.

Notwithstanding the foregoing, the Servicer or, as applicable, its Affiliates may also, without the consent of the Owner, retain third party contractors to perform certain servicing and loan administration functions, including without limitation, hazard insurance administration, tax payment and administration, flood certification and administration, collection services, REO services and similar functions; provided, that the retention of such contractors by Servicer or its Affiliate shall not limit the obligation of

the Servicer to service the Mortgage Loans and REO Properties pursuant to the terms and conditions of this Agreement.

The Owner shall not assign this Agreement or delegate its duties hereunder or any portion thereof without the prior written consent of the Servicer, which consent shall not be unreasonably withheld. For the avoidance of doubt, withholding consent shall not be considered unreasonable if Servicer requires a revision to the Pricing Exhibit as a condition of such consent.

### Section 10.05. Merger or Consolidation of the Servicer

Any Person into which the Servicer may be merged or consolidated, or any entity resulting from any merger, conversion or consolidation to which the Servicer shall be a party, or any Person succeeding to the business of the Servicer, shall be the successor of the Servicer hereunder, without the execution or filing of any paper or any further act on the part of any of the Parties hereto, anything herein to the contrary notwithstanding.

### Section 10.06. Cooperation of Servicer with an Agency Transfer

(a)    The Servicer and the Owner agree that with respect to some or all of the Portfolio Loans, the Owner may effect Agency Transfers.

The Servicer shall reasonably cooperate with the Owner in connection with any Agency Transfer contemplated by the Owner pursuant to this Section 10.06, provided, however, that under no circumstances and in no event shall such Agency Transfer materially increase the Servicer's liabilities or obligations beyond those liabilities and obligations contained in this Agreement, or decrease the Servicer's profitability from that provided for herein, except as otherwise specifically set forth in this Section 10.06. Additionally, the Servicer does not service or participate in all of the Fannie Mae, Freddie Mac or Ginnie Mae programs or products including but not limited to bond programs and negotiated waivers.

(b)    In connection with any Agency Transfer the Owner shall provide the Servicer with an Agency Transfer Acknowledgment Agreement and a preliminary loan list in the form of Exhibit 9 at least thirty (30) Business Days prior to the closing date of such Agency Transfer. Owner shall provide Servicer with a complete and final list of loans related to any Agency Transfer at least five (5) Business Days prior to the scheduled closing date of the Agency Transfer. In addition, any Portfolio Loans regarding which Owner wishes to affect an Agency Transfer must be transferred to Servicer and live on Servicer's servicing system at least five (5) Business Days prior to the month-end prior to the first reporting period. If any Agency Transfer involves the establishment of a new Custodial Account or new Escrow Account, the Owner shall provide information on the naming of the accounts no less than thirty (30) Business Days in advance of the Agency Transfer's closing date.

(c)    Owner agrees to timely coordinate with the Servicer to effectuate each Agency Transfer. Owner agrees to deliver any agreement or other documents related to the Agency Transfer to the Servicer at least five (5) Business Days prior to the closing date for an Agency Transfer. The Servicer shall promptly review any Agency Transfer agreement and/or related documents, and provided that such agreement or documents contain servicing provisions substantially similar to those herein or is otherwise acceptable to the Servicer in its sole discretion, Servicer shall execute such agreement and/or related documents. The Servicer shall have no Liability to Owner and no obligation to cooperate with Owner if Owner fails to provide such notice or deliver such documents in a timely manner.

The Servicer may require an amendment to this Agreement and/or a new Pricing Exhibit for Agency Transfers. In addition, on each anniversary date of the Agency Transfer, if the Servicer determines that the monthly base servicing fee provided for in the Agency Transfer should be increased in a manner similar to the permitted increases in the Servicing Compensation permitted under this Agreement, Owner agrees to pay the difference between such increased fee and the servicing fee provided for in the Agency Transfer directly to Servicer.

# ARTICLE XI.
## TERMINATION

Section 11.01. Termination

(a)    This Agreement shall continue in full force and effect for an original term (the "Original Term") of one (1) year from the date hereof, unless terminated sooner by mutual agreement or otherwise in accordance with this Agreement. The term of this Agreement automatically shall be extended for successive one (1) year terms (each an "Extension Term") unless either Party delivers written notice of intent not to extend to the other Party not less than ninety (90) days before the end of, as applicable, (i) the Original Term or (ii) any Extension Term.

(b)    The Owner may terminate, at its sole option, this Agreement with respect to some or all of the Mortgage Loans or REO Property, without cause, upon ninety (90) days advance written notice to Servicer. If the count of active Mortgage Loans serviced under this agreement falls to less than fifty (50) for a period of sixty (60) consecutive days, this Agreement shall be deemed to have been terminated without cause by the Owner, subject to Servicer's consent, at Servicer's sole discretion, in writing to Owner. The Servicer shall be entitled to receive the Deboarding Fees and Termination Fees for any termination under this Section 11.01(b).

(c)    Servicer may terminate, at its sole option, this Agreement with respect to some or all of the Mortgage Loans or REO Property, without cause, upon one hundred twenty (120) days advance written notice to the Owner.

(d)    The Owner may terminate, at its sole option, this Agreement with respect to some or all of the Mortgage Loans or REO Property, with cause, upon the occurrence of a Servicer Event of Default as provided in Section 9.01.

(e)    The Servicer may terminate, at its sole option, this Agreement with respect to some or all of the Mortgage Loans or REO Property, with cause, upon the occurrence of an Owner Event of Default as provided in Section 8.01. The Servicer shall be entitled to receive the Deboarding Fees and Termination Fees for any termination under this Section 11.01(e).

(f)    The Servicer may terminate this Agreement upon the determination that its duties hereunder are no longer permissible under Applicable Law and such incapacity cannot be cured by the Servicer. Any such determination permitting the resignation of the Servicer shall be evidenced by an opinion of counsel to such effect delivered to the Owner.

Section 11.02. Transfer Procedures

(a)    In the event this Agreement is terminated in whole or in part, the Servicer agrees to reasonably cooperate with the Owner and with any party designated as the

successor servicer in transferring the servicing to such successor servicer in accordance with Accepted Servicing Practices, including sending the transferor's notice of transfer of servicing or "goodbye letter" in accordance with the requirements of Applicable Law. Owner agrees to cooperate with Servicer to provide any required information necessary to complete an orderly servicing transfer which shall include a loan schedule in the form of Exhibit 9 no less than twenty (20) days prior to the Termination Date.

Within five (5) Business days following the date (the "Termination Date") on which this Agreement is terminated pursuant to Section 11.01, the Servicer shall deliver to the successor servicer any and all Mortgage Files in the possession of the Servicer. The Servicer shall provide the successor servicer with the net funds held in the Escrow Account and suspense funds related to the Mortgage Loans within five (5) Business Days following the Termination Date.

If Servicer is named as the mortgagee of record, Servicer may prepare certain documents which are necessary to effect the transfer of servicing from Servicer, including but not limited to the transfer and endorsement or assignment of the related Mortgage Loans and related documents at Owner's request and expense. The Servicer, at the Owner's expense, shall cause MERS to designate on the MERS system the Owner or its designee as the beneficial holder with respect to such Mortgage Loan. All other reasonable out-of-pocket expenses incurred in connection with any such transfer shall be borne by Owner, except in the case of termination of this Agreement without cause by Servicer pursuant to Section 11.01(c) or termination with cause by Owner pursuant to Section 11.01(d), in which cases such other reasonable out-of-pocket costs shall be borne by Servicer. In addition, in the event of termination of this Agreement without cause by Servicer pursuant to Section 11.01(c) or termination with cause by Owner pursuant to Section 11.01(d), no Deboarding Fees or Termination Fees will be payable by Owner.

On the Termination Date, the Servicer shall be entitled to be reimbursed from funds in the Custodial Account for all actual and estimated un-reimbursed Servicing Advances, unpaid Servicing Compensation, Owner Expenses, and any other amounts owed to Servicer under this Agreement, including, if applicable, the Deboarding Fees and Termination Fees. However, if the funds on deposit in the Custodial Account five (5) Business Days prior to the Termination Date are insufficient to pay Servicer such amounts due, Owner shall pay to Servicer an amount that, when combined with the amount on deposit in the Custodial Account, is sufficient to cover the amount due to Servicer. Such amount will be paid to the Servicer in advance of the Termination Date. If such funds are not received by the Termination Date, Servicer shall be entitled to interest pursuant to Section 4.03. Any funds related to the transferred Mortgage Loans held by Servicer in the Custodial Account after reimbursement to Servicer of the foregoing amounts will be remitted to Owner on the next Portfolio Loan Remittance Date following the Termination Date. In addition, the Owner shall cause the Servicer to be reimbursed within five (5) Business Days of request for any for any trailing expenses representing Servicing Advances and Owner Expenses for which invoices are received by the Servicer after the Termination Date.

Servicer agrees to cooperate with Owner on the transfer out of REO Properties. Owner agrees to pay the Servicer's cost to cancel the title preparation and the cost to dismiss the closing agent as indicated on the Pricing Exhibit. Such costs are subject to change. In addition, Owner agrees to reimburse Servicer for any costs associated with the preparation of any deeds.

Except as otherwise provided in this Agreement, on the related Termination Date for each related Mortgage Loan, this Agreement, except for the provisions described in Section 12.17 hereof which shall survive the related Termination Date, shall terminate with respect to such Mortgage Loan. For the avoidance of doubt, as provided in Section 12.17 hereof, the obligation of the Owner to pay any applicable Deboarding Fees, Termination Fees and out-of-pocket transfer expenses shall survive removal of some or all of the Mortgage Loans from the coverage of this Agreement, including removal due to an Agency Transfer.

(b)    If the Owner does not designate a successor servicer and transfer out the servicing of the Mortgage Loans and REO Properties by the Termination Date, Servicer shall be entitled to the following additional remedies (in addition in all other rights and remedies to which Servicer is entitled under this Agreement or in law or equity):

(i)    The Servicer shall not be required to make any remittances normally required on the Portfolio Loan Remittance Date after the Termination Date until such time Owner has transferred out the servicing of the Mortgage Loans and REO Properties Such amounts shall remain in the Custodial Account pursuant to Section 2.04. For the avoidance of doubt, the Servicer shall have no obligation to pay Owner interest on such amounts.

(ii)    The Owner shall pay the Servicer the following additional fees calculated as of the applicable Determination Date, in addition to the fees on the Pricing Exhibit, for each Mortgage Loan and REO Property for each additional month beyond the Termination Date the Servicer must service the Mortgage Loans and REO Properties: (x) First month beyond the Termination Date: $5 per Mortgage Loan and REO Property, (y) Second month beyond the Termination Date: $10 per Mortgage Loan and REO Property, and (z) Third and each additional month thereafter beyond the Termination Date: $20 per Mortgage Loan and REO Property, with a minimum of $50,000 in the aggregate due and payable in each such third month and each month thereafter.

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

Section 12.01. Notices

All notices, requests, demands and other communications which are required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given upon the mailing thereof, sent by registered or certified mail, return receipt requested, or nationally recognized overnight delivery service:

(a)    If to Owner:

Green Planet Servicing, LLC
10 Research Parkway , Suite 2
Wallingford, CT 06492
Attention: Sandra Jarish

With a Copy to:

Planet Financial Group, LLC
2100 Huntington Drive, N. Suite A
Algonquin, IL 60102
Attention: Senior Counsel

(b)    If to Servicer:

GMAC Mortgage, LLC
1100 Virginia Drive
Fort Washington, PA 19034
Attention: Chief Servicing Officer

With a Copy to:

GMAC Mortgage, LLC
3451 Hammond Ave.
Waterloo, IA 50702-5345
Attention: General Manager

With a Copy to:

GMAC Mortgage, LLC
1100 Virginia Drive

Fort Washington, PA 19034
Attention: General Counsel

### Section 12.02. Waivers

The Servicer or the Owner may, by written notice to the other, waive compliance with any of the terms, conditions or covenants required to be complied with by the other hereunder; and waive or modify performance of any of the obligations of the other hereunder. The waiver by any Party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

### Section 12.03. Entire Agreement; Amendment

This Agreement, including all documents and exhibits incorporated by reference herein, constitutes the entire agreement between the Parties with respect to servicing of the Mortgage Loans. This Agreement may be amended and any provision hereof waived, but, only in writing signed by the Party against whom enforcement of such amendment or waiver is sought.

### Section 12.04. Counterparts; Binding Effect

This Agreement may be executed in one or more counterparts and by the different Parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement. This Agreement shall inure to the benefit of and be binding upon the Servicer and the Owner and their respective permitted successors and assigns.

### Section 12.05. No-Hire

During the term of this Agreement and for a period of 24 months following any termination of this Agreement, Owner shall not solicit for hire, or provide any information that would permit Owner's affiliates to solicit for hire, any employees of Servicer. It is acknowledged that advertising positions generally available to the public, such as positions posted online, advertised in newspapers, or similarly made available to the general public, shall not constitute solicitation for purposes of the foregoing.

Additionally, during the term of this Agreement and for a period of 24 months following any termination of this Agreement, regardless of any lack of solicitation by Owner, Owner shall not hire all or substantially all of any team or functional group of employees of Servicer, including but not limited to any collections or loss mitigation team assigned to service the Mortgage Loans under this Agreement.

### Section 12.06. Headings

Headings of the Articles and Sections in this Agreement are for reference purposes only and shall not be deemed to have any substantive effect.

Section 12.07. Governing Law

THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS AND THE OBLIGATIONS, RIGHTS AND REMEDIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE SUBSTANTIVE LAWS OF THE STATE OF ILLINOIS, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

Section 12.08. Relationship of Parties

Nothing contained herein shall be deemed or construed to create a partnership or joint venture, association, franchise or other form of business or relationship between the Parties. The duties and responsibilities of the Servicer shall be rendered by it as an independent contractor and not as an agent of the Owner. The Servicer shall have full control of all of its acts, doings, and proceedings relating to or required in connection with the discharge of its duties and responsibilities under this Agreement. Nothing contained in this Agreement shall be construed as making a party hereto liable for the debts or obligations of the other party, except only as expressly provided herein.

Section 12.09. Severability of Provisions

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be held invalid for any reason whatsoever, then such covenants, agreements, provisions or terms shall be deemed severable from the remainder of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement.

Section 12.10. Recordation of Assignments of Mortgage

If Assignments of Mortgage are required to be recorded, such recordation shall be effected by the Owner or the Owner's designee at its expense.

Section 12.11. Exhibits

The exhibits to this Agreement are hereby incorporated and made a part hereof and are integral parts of this Agreement. If there are any discrepancies between the Agreement and any of the Exhibits, the Agreement shall prevail.

Section 12.12. Owner's Financials

The Owner shall deliver to the Servicer, on or before March 31st each year beginning March 31, 20[XX] (or within 60 days of the end of Owner's fiscal year, if Owner's fiscal year does not correspond to the calendar year), audited financial

statements of Owner covering the year ended the previous December 31 (or such other period constituting Owner's fiscal year).

### Section 12.13. No Solicitation

Unless in accordance with Section 2.03 for the purposes of loss mitigation, from and after the date hereof, the Servicer shall not, nor shall it take any action that would permit any Affiliate of Servicer, to solicit the Mortgagors for purposes of prepayment or refinance of the Mortgage Loans, without the written consent of the Owner, except as otherwise provided herein. Nothing in this Section 12.13 shall prohibit the Servicer from generalized advertising not targeted exclusively to the Mortgagors, including on its website, monthly account statements, or VRU (voice response unit), mortgage leads purchased from third parties, recorded communications, or otherwise engaging in a program directed to the general public at large to encourage or recommend mortgage loan products and other products and services provided by the Servicer or such Affiliate, or from taking applications for refinance from Mortgagors as a result thereof.

### Section 12.14. Force Majeure

A Party will not be responsible for delays or failures in performance of its obligations under this Agreement resulting from acts beyond its reasonable control such as acts of God, strikes, riots, acts of war, terrorism, earthquakes or other similar events. A Party excused from performance pursuant to this section shall exercise reasonable efforts to continue to perform its obligations hereunder and shall thereafter continue with reasonable due diligence and good faith to remedy its inability to so perform, except that nothing herein shall obligate either Party to settle a strike or labor dispute when it does not wish to do so.

### Section 12.15. Waiver of Trial by Jury

THE SERVICER AND THE OWNER EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

### Section 12.16. Limitation of Damages

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE PARTIES AGREE THAT NEITHER OWNER OR SERVICER SHALL BE LIABLE TO THE OTHER FOR ANY SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES WHATSOEVER, WHETHER IN CONTRACT, TORT OR ANY OTHER LEGAL OR EQUITABLE PRINCIPLE; PROVIDED, HOWEVER, THAT SUCH LIMITATION SHALL NOT BE APPLICABLE WITH RESPECT TO INDEMNIFICATION OBLIGATIONS FOR THIRD PARTY CLAIMS MADE AGAINST A PARTY.

Section 12.17. Survival

In addition to any provisions in this Agreement, which by their express terms shall survive termination, the following provisions shall survive termination of this Agreement or removal of some or all of the loans from the coverage of this Agreement due transfer to a successor servicer, or otherwise: Sections 3.04 (Reimbursement of Servicing Advances), 4.06 (Losses and Expenses), 5.04 (Confidentiality of Information), Article VI (Representations, Warranties and Covenants of Owner), Article VII (Representations, Warranties and Covenants of Servicer), 10.01 (Indemnification), 10.02 (Limitation on Liability of Servicer and Others), 10.03 (Operation of Indemnities), 10.06 (Agency Transfers),11.01 (Termination), 11.02 (Transfer Procedures), Sections 12.01 (Notices), 12.02 (Waivers), 12.03 (Entire Agreement; Amendment), 12.04 (Counterparts; Binding Effect), 12.05 (No-Hire), 12.06 (Headings), 12.07 (Governing Law), 12.08 (Relationship of Parties), 12.09 (Severability of Provisions), 12.13 (No Solicitation), 12.14 (Force Majeure), 12.15 (Waiver of Trial by Jury), 12.16 (Limitation of Damages) and this Section 12.17 (Survival).

[SIGNATURES APPEAR ON NEXT PAGE]

SERVICING AGREEMENT BY AND BETWEEN
GREEN PLANET SERVICING, LLC and GMAC MORTGAGE, LLC                    OCTOBER 1ST, 2011

     IN WITNESS WHEREOF, the Parties have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

GREEN PLANET SERVICING, LLC
(Owner)

By: _____

Name:     Sandra Jarish

Title:     President


GMAC MORTGAGE, LLC
(Servicer)

By: _____

Name:     CURTIS J. SCHARES

Title:     VICE PRESIDENT

SERVICING AGREEMENT EXHIBITS
by and between


GREEN PLANET SERVICING, LLC
Owner


and


GMAC MORTGAGE, LLC
Servicer


Dated as of October 1, 2011

## EXHIBITS TABLE OF CONTENTS

EXHIBIT I.

PRICING EXHIBIT

EXHIBIT II.

MORTGAGE LOAN DOCUMENTS

EXHIBIT III.

ELIGIBILITY CRITERIA

EXHIBIT IV.

APPROVAL MATRIX

EXHIBIT V.

FORM OF LIMITED POWER OF ATTORNEY

EXHIBIT VI.

TRANSFER INSTRUCTIONS

EXHIBIT VII.

FORM OF AGENCY TRANSFER ACKNOWLEDGMENT AGREEMENT

EXHIBIT VIII.

FORM OF ADDITIONAL CUSTODIAL ACCOUNT REQUEST

EXHIBIT IX.

FORM OF SALES, DELIVERY, TRANSFER FILE

# EXHIBIT I.
## PRICING EXHIBIT

(a)    Portfolio Loans and Agency Loans

| # | Family | Name | Description | Price | Comments |
|---|--------|------|-------------|-------|----------|
| A | Boarding | | | | |
| A1 | A. Boarding | Boarding - Current | < 90 Days Delinquent | $10.00 | |
| A2 | A. Boarding | Boarding - Delinquent | ≥ 90 Days Delinquent and/or Foreclosure | $60.00 | |
| A3 | A. Boarding | Boarding - Transfer Remediation | Per hour fee | $50.00 | |
| B, C | Monthly | | | | |
| B1.1 | B. Monthly Base | Monthly - Base: Portfolio Loans | Applies to all Portfolio Loans that are not HELOC loans | $5.50 | Moderate Collections |
| B1.2 | B. Monthly Base | Monthly - Base: Agency Loans | Applies to all Agency Loans | $5.50 | Moderate Collections |
| B2 | B. Monthly Base | Monthly - Traditional ARM | Assessed in addition to the Monthly - Base | $0.50 | |
| B3 | B. Monthly Base | Monthly - Non-Traditional ARM | Assessed in addition to the Monthly - Base | $1.00 | |
| C1 | C. Monthly Default | Monthly - 30 Days Delinquent | ≥ 30 Days Delinquent | $25.00 | |
| C2 | C. Monthly Default | Monthly - 60 Days Delinquent | ≥ 60 Days Delinquent | $40.00 | |
| C3 | C. Monthly Default | Monthly - 90 Days Delinquent | ≥ 90 Days Delinquent | $55.00 | |
| C4 | C. Monthly Default | Monthly - Bankruptcy | Assessed for Bankruptcy status | $70.00 | |
| C5 | C. Monthly Default | Monthly - Foreclosure | Assessed beginning with the month of referral to attorney | $70.00 | |
| D | Loss Mitigation Incentives | | | | |
| D1 | D. Loss Mitigation Incentives | Incentive - Repayment | Percent of UPB Minimum of $1,000 Maximum of $2,500 | $500.00 | |
| D2 | D. Loss Mitigation Incentives | Incentive - Reinstatement | Percent of UPB Minimum of $1,000 Maximum of $2,500 | $500.00 | |
| D3 | D. Loss Mitigation Incentives | Incentive - Loan Modification | Percent of UPB Minimum of $1,000 Maximum of $2,500 | $500.00 | |
| D4 | D. Loss Mitigation Incentives | Incentive - Redemption | Percent of UPB Minimum of $1,000 Maximum of $2,500 | $500.00 | |
| D5 | D. Loss Mitigation Incentives | Incentive - Short Sale | Percent of Liquidation Proceeds Minimum of $1,000 Maximum of $2,500 | $500.00 | |
| D6 | D. Loss Mitigation Incentives | Incentive - Deed-in-Lieu | Percent of UPB Minimum of $1,000 Maximum of $2,500 | $500.00 | |
| E | REO | | | | |

Exhibit I                                    1

SERVICING AGREEMENT BY AND BETWEEN                                   OCTOBER 1ST, 2011
GREEN PLANET SERVICING, LLC and GMAC MORTGAGE, LLC

| # | Family | Name | Description | Price | Comments |
|---|--------|------|-------------|-------|----------|
| E1 | E. REO Fees | REO – Disposition Incentive | Percent of Sales Price Minimum of $1,000 Maximum of $2,500 | 0.50% | |
| E2 | E. REO Fees | REO – Carrying | Per month fee assessed after month 10 of REO status | 300.00 | |
| **F** | **Other Default** | | | | |
| F1 | F. Other Default | Other Default – Title Remediation | Per occurrence | $500.00 | |
| F2 | F. Other Default | Other Default – FHA/VA Conveyance | Per claim | $250.00 | |
| F3 | F. Other Default | Other Default – Recovery Collection | Percentage of recovered amount | 35.00% | |
| **G, H** | **Deboarding and Termination** | | | | |
| G1 | G. Deboarding | Deboarding – Transfer | A flat fee is assessed per transfer in addition to a per loan fee | $50.00 | |
| G2 | G. Deboarding | Deboarding – Tier 1: ≤100 Loans | Per loan, tier based on transfer loan count | $8.00 | |
| G3 | G. Deboarding | Deboarding – Tier 2: 101 to 200 Loans | Per loan, tier based on transfer loan count | $7.00 | |
| G4 | G. Deboarding | Deboarding – Tier 3: >200 Loans | Per loan, tier based on transfer loan count | $5.00 | |
| G5 | G. Deboarding | Deboarding – Tier 4: Automated Transfer | Per loan, tier applied to automated transfers. Fee based on requirements of the transfer. If not otherwise addressed, this amount will apply. | $5.00 | |
| H2.1 | H. Termination | Contract Termination – Tiered: Year 1 | Per loan | $20.00 | |
| H2.2 | H. Termination | Contract Termination – Tiered: Year 2 | Per loan | $15.00 | |
| H2.3 | H. Termination | Contract Termination – Tiered: Year 3 | Per loan | $10.00 | |
| H2.4 | H. Termination | Contract Termination – Tiered: Year 4+ | Per loan | $5.00 | |
| **I – K** | **Other Program** | | | | |
| I1 | I. Minimum | Monthly – Base Minimum | Applies to the Monthly Fee – Base | $5,000.00 | |
| K1 | K. Other | Repurchase Processing | Per occurrence | $0.00 | |

| Component | Party |
|-----------|-------|
| Custodial Account Benefit (Principal and Interest Float) | Servicer |
| Escrow Account Benefit (Escrow Float) and Interest on Escrow Expense | Servicer |
| Late Charges | Split – Servicer 50% |
| Servicing Activity Fees | Servicer |
| Customer Prepayment Fees and Line Termination Fees | Owner |
| Home Affordable Modification Program Fees | Servicer |
| Agency Traditional Loss Mitigation Incentives | Owner |

Exhibit I                                       2

## EXHIBIT II.
### MORTGAGE LOAN DOCUMENTS

(a)    The following documents shall constitute the Mortgage Loan Documents with respect to each Mortgage Loan:

(i)    the original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of _____, without recourse" and signed in the name of the last endorsee (the "Last Endorsee") by an authorized officer. To the extent that there is no room on the face of the Mortgage Notes for endorsements, the endorsement may be contained on an allonge, if state law so allows and the Custodian is so advised by the loan seller that state law so allows. If the Mortgage Loan was acquired by the loan seller in a merger, the endorsement must be by "[Last Endorsee], successor by merger to [name of predecessor]". If the Mortgage Loan was acquired or originated by the Last Endorsee while doing business under another name, the endorsement must be by "[Last Endorsee], formerly known as [previous name]";

(ii)    the original of any guarantee executed in connection with the Mortgage Note;

(iii)    the original Mortgage with evidence of recording thereon. If in connection with any Mortgage Loan, the loan seller cannot deliver or cause to be delivered the original Mortgage with evidence of recording thereon on or prior to the Transfer Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the loan seller shall deliver or cause to be delivered to the Custodian, a photocopy of such Mortgage, together with (i) in the case of a delay caused by the public recording office, an officer's certificate of the loan seller (or certified by the title company, escrow agent, or closing attorney) stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Custodian upon receipt thereof by the loan seller; or (ii) in the case of a Mortgage where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage;

(iv)    the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon;

Exhibit II                                    1

(v)      the original Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for recording. The Assignment of Mortgage must be duly recorded only if recordation is either necessary under applicable law or commonly required by private institutional mortgage investors in the area where the Mortgaged Property is located or on direction of the Owner as provided in this Agreement.  If the Assignment of Mortgage is to be recorded, the Mortgage shall be assigned to the Owner or MERS or per the Owner's instructions.  If the Assignment of Mortgage is not to be recorded, the Assignment of Mortgage shall be delivered in blank.  If the Mortgage Loan was acquired by the loan seller in a merger, the Assignment of Mortgage must be made by "[Seller], successor by merger to [name of predecessor]".  If the Mortgage Loan was acquired or originated by the loan seller while doing business under another name, the Assignment of Mortgage must be by "[Seller], formerly known as [previous name]";

(vi)      the originals of all intervening assignments of mortgage (if any) evidencing a complete chain of assignment from the originator to the Last Endorsee with evidence of recording thereon, or if any such intervening assignment has not been returned from the applicable recording office or has been lost or if such public recording office retains the original recorded assignments of mortgage, the loan seller shall deliver or cause to be delivered to the Custodian, a photocopy of such intervening assignment, together with (i) in the case of a delay caused by the public recording office, an Officers Certificate of the loan seller (or certified by the title company, escrow agent, or closing attorney) stating that such intervening assignment of mortgage has been dispatched to the appropriate public recording office for recordation and that such original recorded intervening assignment of mortgage or a copy of such intervening assignment of mortgage certified by the appropriate public recording office to be a true and complete copy of the original recorded intervening assignment of mortgage will be promptly delivered to the Custodian upon receipt thereof by the loan seller; or (ii) in the case of an intervening assignment where a public recording office retains the original recorded intervening assignment or in the case where an intervening assignment is lost after recordation in a public recording office, a copy of such intervening assignment certified by such public recording office to be a true and complete copy of the original recorded intervening assignment;

(vii)      The original mortgagee policy of title insurance or, in the event such original title policy is unavailable, a certified true copy of the related policy binder or commitment for title certified to be true and complete by the title insurance company;

Exhibit II                                          2

(viii)    original powers of attorney, if applicable, or, if in connection with any Mortgage Loan, the loan seller cannot deliver or cause to be delivered the original power of attorney with evidence of recording thereon, if applicable, on or prior to the Transfer Date because of a delay caused by the public recording office, the loan seller shall deliver or cause to be delivered to the Custodian, a photocopy of such power of attorney, together with an officer's certificate of the loan seller (or certified by the title company, escrow agent, or closing attorney) stating that such power of attorney has been dispatched to the appropriate public recording office for recordation and that the original recorded power of attorney or a copy of such power of attorney certified by such public recording office to be a true and complete copy of the original recorded power of attorney will be promptly delivered to the Custodian upon receipt thereof by the loan seller; and

(ix)    security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage.

(b)    The following documents, together with the Mortgage Loan Documents, shall constitute the Mortgage File with respect to each Mortgage Loan:

(i)    The original hazard insurance policy and, if required by law, flood insurance policy.

(ii)    Residential loan application.

(iii)    Mortgage Loan closing statement.

(iv)    Verification of employment and income except for Mortgage Loans originated under a Limited Documentation Program.

(v)    verification of acceptable evidence of source and amount of downpayment.

(vi)    Credit report on the Mortgagor.

(vii)    Residential appraisal report, if available.

(viii)    Photograph of the Mortgaged Property.

(ix)    Survey of the Mortgaged Property, if any.

(x)    Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e., map or plat, restrictions, easements, sewer agreements, home association declarations, etc.

Exhibit II                                                        3

(xi)    All required disclosure statements.

(xii)    If available, termite report, structural engineer's report, water potability and septic certification.

(xiii)    Sales contract, if applicable.

(xiv)    Tax receipts, insurance premium receipts, ledger sheets, payment history from date of origination, insurance claim files, correspondence, current and historical computerized data files, and all other processing, underwriting and closing papers and records which are customarily contained in a mortgage loan file and which are required to document the Mortgage Loan or to service the Mortgage Loan.

(xv)    Amortization schedule, if applicable.

Exhibit II                                    4

# EXHIBIT III.
## Eligibility Criteria

Servicer agrees to subservice Mortgage Loans possessing the following characteristics:

All Mortgage Loans shall be prime, alt-a and subprime, fixed or adjustable rate, first lien and closed-end subordinate lien residential mortgage loans and home equity lines of credit including, without limitation, condominium developments, planned unit developments and cooperatives. Provided that, in no case will a loan delivered to Servicer be:

(i)    A loan regarding which four (4) or more years have passed since its charge off date, unless funds have been received since the charge off date;

(ii)    a loan with single-premium credit life;

(iii)    a loan subject to a buy down agreement subject to future value calculations unless Owner fully funds the buydown amount prior to transfer;

(iv)    a bond or housing authority loan;

(v)    a loan secured by a manufactured home not affixed to real property;

(vi)    a construction loan or a loan which allows for construction to permanent financing in which the construction funds have not been fully disbursed;

(vii)    a loan that has an increased interest rate upon default unless the Owner agrees the Servicer is not required to increase the interest rate upon default;

(viii)    a payment option Adjustable Rate Mortgage Loan;

(ix)    an Adjustable Rate Mortgage Loan with a Mortgage Note that GMACM is not currently servicing or has explicitly advised that it will not service;

(x)    a HELOC Loan permitting borrowers to access draws or additional borrowing using a credit card or debit card, with a Mortgage Note that GMACM is not currently servicing, or that GMACM has explicitly advised that it will not service;

(xi)    a HOEPA Loan, a higher-priced mortgage loan (HPML) or any loan subject to any similar law or regulation addressing high cost or predatory lending;

(xii)    a loan with an unsecured promissory note or an invalid security instrument;

(xiii)    for recovery purposes only, an unsecured 2nd lien located in CA, AZ, TX or OK (or such other states as may be added from time to time (please check with GMACM for a current listing)) that has been released as a result of a foreclosure of the senior lien;

(xiv)    for recovery purposes only, a loan in an active bankruptcy;

Exhibit III                                    1

(xv)    any loan regarding which any Mortgagor is a party to litigation, including class action litigation (but excluding litigation constituting routine foreclosure actions and bankruptcy filings, which may be delivered by the Owner), against the Owner, any prior servicer, any Person connected with the origination of such Mortgage Loan, or other litigation related to or arising from such Mortgage Loan;

(xvi)    a commercial loan; and

(xvii)    a loan requiring the servicer to be an approved Federal Home Loan Bank servicer.

Exhibit III                                        2

# EXHIBIT IV.
## APPROVAL MATRIX

[To be inserted]

Exhibit IV                          1

## EXHIBIT V.
### FORM OF LIMITED POWER OF ATTORNEY

### LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that [Client Name] ("Company"), having its principal place of business at [Address], hereby constitutes and appoints GMAC Mortgage, LLC ("GMACM"), a Delaware limited liability company, having offices at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034, by and through its officers, its true and lawful Attorney-in-Fact, in its name, place and stead and for its benefit, in connection with mortgage loans serviced by GMACM on behalf of Company pursuant to that certain Servicing Agreement, dated as of [Date] between GMACM and Company (the "Servicing Agreement") for the purpose of performing all acts and executing all documents in the name of Company necessary and incidental to the servicing of said loans, including but not limited to:

1.   Foreclosing delinquent loans or discontinuing such foreclosure proceedings, including, but not limited to, the execution of notices of default, notices of sale, assignments of bids, and assignments of deficiency judgments, and appearing in the prosecuting bankruptcy proceedings;

2.   Selling, transferring or otherwise disposing of real property acquired through foreclosure or otherwise, including, but not limited to, executing all contracts, agreements, deeds, assignments or other instruments necessary to effect such sale, transfer or disposition, and receiving proceeds and endorsing checks made payable to the order of Company from such proceedings;

3.   Preparing, executing, and delivering satisfactions, cancellations, discharges, list note instruments, or full or partial releases of lien, subordination agreements, modification agreements, assumption agreements, substitutions of trustees under deeds of trust, and UCC-3 Continuation Statements;

4.   Endorsing promissory notes and executing assignments of mortgages, deeds of trust, deeds to secure debt, and other security instruments securing said promissory notes in connection with loans for which GMACM has received full payment of all outstanding amounts due on behalf of Company;

5.   Endorsing insurance proceeds checks and mortgage payment checks to the order of Company;

6.   Any and all such other acts of any kind and nature whatsoever that are necessary and prudent to service the loans.

Exhibit V                                                2

Company further grants to GMACM full power and authority to do and perform all acts necessary for GMACM to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as Company might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for, and hereby ratifies and confirms all that GMACM shall lawfully do by virtue of the powers and authority granted and contemplated hereby. This Limited Power of Attorney shall remain in full force and effect until revoked or terminated by Company.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney, and may be satisfied that this Limited Power of Attorney has not been revoked by Company.

[CLIENT NAME]
(Company)

By:     _____

Name:   _____

Title:  _____


STATE OF [State]
COUNTY OF [County]


On this [DD] day of [Month], before me, the undersigned, a Notary Public in and for said county and state, personally appeared [Company Officer], personally known to me to be the person who executed the within instrument as [Officer's Title], on the behalf of the corporation therein named, and he or she acknowledged that said instrument is the act and deed of said corporation, and that he or she, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

WITNESS by hand and official seal.


_____
Notary Public

[Seal]


Exhibit V                                          3

# EXHIBIT VI.
## TRANSFER INSTRUCTIONS

[To be inserted]

Exhibit VI                                    1

# EXHIBIT VII.

## FORM OF AGENCY TRANSFER ACKNOWLEDGMENT AGREEMENT

Reference is made to that certain Servicing Agreement, dated as of [MONTH, DD], 2010 (the "Agreement"), between [CLIENT] ("Owner"), and GMAC Mortgage, LLC ("Servicer"). On this [DD] day of [MONTH], 2010, the Owner and the Servicer hereby agree that the Owner will effectuate an Agency Transfer. This document serves as notice to the Servicer pursuant to Section 10.06 to perform the servicing responsibilities related to the Mortgage loans identified on Exhibit A hereto (the "Mortgage Loan Schedule") as Agency Loans in accordance with the Agreement.

Effective Date: _____    Agency: _____

Seller/Servicer or Lender Number:    _____

The Owner and Servicer agree to cooperate to complete any necessary forms or notices to the applicable Agency. The Owner agrees to provide information related to the loans in Exhibit A to the servicer in the electronic "Sales, Delivery, Transfer File", a form of which is provided in Exhibit 9, as may be updated from time to time.

The Owner and Servicer agree to the Pricing Exhibit included as Schedule 1 for Agency Loans.

IN WITNESS WHEREOF, Owner and Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

[CLIENT NAME]
(Owner)

By:     _____

Name:   _____

Title:  _____

GMAC MORTGAGE, LLC
(Servicer)

By:     _____

Name:   _____

Title:  _____

Exhibit VII                                    I

# EXHIBIT VIII.
## FORM OF ADDITIONAL CUSTODIAL ACCOUNT REQUEST

Reference is made to that certain Servicing Agreement, dated as of [MONTH DD], 2010 (the "Agreement"), between [CLIENT] ("Owner"), and GMAC Mortgage, LLC ("Servicer").  On this [DD] day of [MONTH], 2010, the Owner and the Servicer hereby agree that the Owner requests an additional Custodial Account to be opened.

Mortgage Loans in the following investor code shall be subject to the new Custodial Account.

Investor Code: _____
Custodial Account Title: _____
Effective Date: _____

IN WITNESS WHEREOF, Owner and Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

[CLIENT NAME]
(Owner)

By:      _____

Name:  _____

Title:   _____

GMAC MORTGAGE, LLC
(Servicer)

By:      _____

Name:  _____

Title:   _____

Exhibit VIII                                        1

# EXHIBIT IX.
## FORM OF SALES, DELIVERY, TRANSFER FILE

| Column | Field Name | Formatting | Description |
|---|---|---|---|
| A | GMACM Loan Number | 0000000000 | from GMAC Daily File |
| B | Client Loan # | 0000000000 | your loan number |
| C | UPB Balance Sold | 0.00 | See Table below |
| D | Interest Pd To Date | mm/dd/yy | |
| E | Service Fee Rate | 0.0000 | if applicable 0.00 unless sold to FNMA or FHLMC |
| F | Net Pass Thru Rate | 0.0000 | if applicable Note Rate minus Service Fee (H - E) |
| G | Investor Ln# | 0000000000 | New Servicer's loan number |
| H | Note Rate | 0.000 | Current Interest Rate |
| I | Client Name | | your company name |
| J | Pool ID/Commitment # | | if available, not required |
| K | Sale Type | Actual or Scheduled | See Table below |
| L | Date Loan Sold | mm/dd/yy | |
| M | Service Release Date | mm/dd/yy | If Actual = last day GMAC will service loan, If Scheduled = Column Q |
| N | Purchaser | | Company Sold To |
| O | New Servicer Name | | "Servicer" may not be the same as Column N |
| P | New Servicer Loan # | 0000000000 | if available, not required |
| Q | 1st payment due new servicer | mm/dd/yy | |
| R | Borrower Last Name | | |
| S | Borrower First Name | | |
| T | Escrow Balance Net Funded | 0.00 | If Actual = n/a, If Scheduled = amount removed from Net Funding |
| U | Remit Escrow funds | "To Client" "To New Servicer" "No Escrow" | See Table below |
| V | Lien Position | 1 = 1st 2 = 2nd | |
| W | Buydown Funds Net Funded | 0.00 | If Actual = n/a, If Scheduled = amount removed from Net Funding |

Exhibit IX                                                    1

SERVICING AGREEMENT BY AND BETWEEN
GREEN PLANET SERVICING, LLC and GMAC MORTGAGE, LLC

OCTOBER 1ST, 2011

| Column | Field Name | Formatting | Description |
|--------|-----------|------------|-------------|
| X | Remit Buydown funds | "To Client" "To New Servicer" "No Buydown" | See Table below |

Legend

| Industry Terms | GMACM Terminology Column K | Principal Balance @ Transfer Column C | Escrow Funds @ Transfer Column U | Buydown Funds @ Transfer Column X |
|---------------|----------------|---------------------|-------------------|--------------------|
| Instant Scheduled Flow Daily | Scheduled | New servicer services based on scheduled UPB and due date | Sent to client (netted at funding) | Sent to client (netted at funding) |
| Bulk Actual Interim | Actual | New servicer services as of cut-off data provided by GMACM | Sent to new servicer | Sent to new servicer |

Exhibit IX                                    2