## EXHIBIT C

**Complaint**

| | | |
|---|---|---|
| GREEN PLANET SERVICING, LLC | * | IN THE |
| 10 Research Parkway, Suite 2 | | |
| Wallingford, CT 06492, | * | CIRCUIT COURT |
| | | |
| Plaintiff, | * | FOR |
| | | |
| v. | * | BALTIMORE CITY |
| | | |
| GMAC MORTGAGE, LLC | * | CASE NO. |
| c/o Corporation Service Company | | |
| 2711 Centerville Rd., Suite 400 | * | |
| Wilmington, DE  19808, | | |
| | * | |
| Defendant. | | |
| | * | |
| SERVE ON: | | |
| | * | |
| CSC-Lawyers Incorporating | | |
| Service Co. | * | |
| 7 St. Paul St., Suite 1660 | | |
| Baltimore, MD  21202 | * | |
| | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT

Plaintiff, Green Planet Servicing, LLC, a Delaware limited liability company, sues

Defendant, GMAC Mortgage, LLC, a Delaware limited liability company and states as follows:

### Jurisdiction and Venue

1.    This is an action for damages in excess of $30,000.00 and injunctive relief.

2.    This court has jurisdiction, pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 1-501 and 4-401 (2011).

3.    This court has personal jurisdiction over Defendant, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) (2011), in that Defendant regularly maintains offices in the State of Maryland and transacts business and performs services in the State of Maryland.

**Parties**

4.      Plaintiff is a Connecticut limited liability company, with its principal place of business in Wallingford, Connecticut.

5.      Plaintiff is a mortgage servicing company that services residential mortgage loans in various states in the United States, including Maryland.

6.      Defendant is a Delaware limited liability company, with its principal place of business in Fort Washington, Pennsylvania.  Defendant maintains offices in the State of Maryland and regularly conducts business in the State of Maryland.

7.      As part of its services, Defendant provides residential mortgage loan servicing.

**General Allegations**

**Servicing Rights for Residential Mortgage Loans**

8.      Residential mortgage loans are a form of property that can be bought and sold.  In addition to the right to collect the principal and interest owed on a residential mortgage loan, the right to service such loans is also an asset that can be bought and sold separately from the right to collect the principal and interest owed under the mortgage loan.

9.      A portion of Plaintiff's business involves purchasing residential mortgage loan servicing rights.

10.     Servicing residential mortgage loans encompasses a number of services.  One area is billing and collecting principal and interest payments on loans and remitting those payments to the owners of the loans, after deducting various fees and expenses.

11.     A second function that servicers perform is handling delinquent loans.  A delinquent loan requires a servicer to take steps to assess the risk associated with the loan and mitigate the potential loss that may result from the borrower's default.

2

12.    These mitigation steps can include a variety of actions, including, but not limited to, assessing the borrower's circumstances, modifying the loan, making a short sale of the property, accepting a deed in lieu of foreclosure, charging off the loan, foreclosing on the mortgage and seeking a deficiency judgment against the borrower.

**The Servicing Agreement**

13.    In 2011, Plaintiff acquired the right to service a pool of approximately 30,000 residential mortgage loans, with the total loan principal value of nearly $5.2 billion (the "GPS Loan Pool"). Over $169 million of these loans are located in Maryland.

14.    Also in 2011, Plaintiff began discussions with Defendant for Defendant to service the GPS Loan Pool as Plaintiff's sub-servicer.

15.    On October 1, 2011, Plaintiff and Defendant entered into a Servicing Agreement, wherein Defendant agreed to act as a sub-servicer for the GPS Loan Pool. A copy of the Servicing Agreement is attached hereto as Exhibit "1."

16.    Defendant agreed in Section 2.01(d) of the Servicing Agreement that "In servicing and administering the Mortgage Loans and REO Properties, the Servicer shall comply in all material respects with Applicable Law and employ Accepted Servicing Practices."

17.    Accepted Servicing Practices was defined in Section 1.01 of the Servicing Agreement, as follows:

> With respect to any Portfolio Loan or REO Property, (i) the Fannie Mae Guides, (ii) any applicable mortgage insurer guides, (iii) the VA Regulations applicable for any VA Mortgage Loan and FHA regulations applicable for any FHA Mortgage Loans, and (iv) to the extent not inconsistent therewith, those mortgage servicing practices of mortgage lending institutions which service mortgage loans of the same type as such Portfolio Loan or REO Property in the jurisdiction where the related Mortgaged Property is located, exercising a reasonable standard of care in performing those practices. With respect to any Agency Loan, (i) the applicable Agency Guide including the VA Regulations applicable for any VA Mortgage Loan and FHA regulations applicable for any FHA Mortgage Loans,

3

(ii) any applicable mortgage insurer guides and (iii) to the extent not inconsistent therewith , those mortgage servicing practices of mortgage lending institutions which service mortgage loans of the same type as such Agency Loan in the jurisdiction where the related Mortgaged Property is located, exercising a reasonable standard of care in performing those practices.

18.     Defendant made a number of important representations and warranties to Plaintiff in the Servicing Agreement about its ability to properly service the loans.  In Section 7.04, Defendant warranted that "The Servicer does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement."

19.     In Section 7.06, Defendant warranted that "No litigation or administrative proceeding of or before any court, tribunal or governmental body is currently pending or to the knowledge of the Servicer threatened, against the Servicer or with respect to this Agreement, which if adversely determined would have a material adverse effect on the transactions contemplated by this Agreement."

20.     Defendant agreed, in Section 12.13 of the Servicing Agreement, that neither Defendant, nor any affiliate of Defendant, would solicit a mortgagor in the GPS Loan Pool for the purpose of prepayment or refinancing of its loan without the written consent of Plaintiff.

21.     Provisions were also included in the Servicing Agreement to provide instructions to Defendant as to how to service delinquent loans.  In servicing delinquent loans, from time to time decisions had to be made on various actions, such as loss mitigation, foreclosure and bankruptcy.  The Servicing Agreement included an Approval Matrix that set forth specific parameters for GMAC's decision making.  This Approval Matrix was created to ensure that proper steps were taken by GMAC at each stage in the servicing of these delinquent loans.

4

**Defendant Breached the Servicing Agreement**

22.    Despite the clear terms of the Servicing Agreement, Defendant has breached the Servicing Agreement in a number of material respects.

23.    First, Defendant unlawfully solicited, and continues to solicit, a significant number of loans from the GPS Loan Pool, in breach of Section 12.13 of the Servicing Agreement.

24.    Plaintiff has suffered substantial harm as a result of these solicitations, in that Plaintiff can no longer receive any servicing fees for these loans. Plaintiff has also lost the money it spent to acquire the rights to service these loans.

25.    Second, Defendant breached the Servicing Agreement by failing to abide by Accepted Servicing Practices, Agency Guidelines and the Approval Matrix, in the following respects:

      a.    Defendant failed to discover a bankruptcy filing prior to demanding that Plaintiff wire funds to repurchase a foreclosed property. As a result, Defendant failed to notify Plaintiff that the foreclosure sale had been rescinded, even though Defendant was aware of this fact prior to the buyout date. Plaintiff lost hundreds of thousands of dollars when it was required to repurchase this loan, because of Defendant's failure.

      b.    Defendant failed to comply with the Approval Matrix when it agreed to a loan modification without first obtaining Plaintiff's approval.

      c.    Defendant also failed to comply with the Approval Matrix by conducting numerous short sales without prior approval by Plaintiff.

DM1\3311959.2

26.    Defendant further breached its representations and warranties contained in the Servicing Agreement by failing to notify Plaintiff that it would not be able to properly service the Loan Pool in accordance with Accepted Servicing Practices, as a result of various investigations of GMAC's servicing practices and the settlement of these investigations.

**COUNT I**
**BREACH OF CONTRACT**

27.    Plaintiff repeats the allegations contained in paragraphs 1 through 26 above, as if fully set forth herein.

28.    Defendant breached the Servicing Agreement, for the reasons set forth above.

29.    As a result of Defendant's breaches, Plaintiff has suffered damages of at least $2,114,974.92 to date.  The amount of damages suffered by Plaintiff continues to increase as a result of Defendant's ongoing breaches.  Plaintiff continues its investigation into the solicited loans and expects to uncover additional loans solicited by GMAC.

**COUNT II**
**PERMANENT INJUNCTION**

30.    Plaintiff repeats the allegations contained in paragraphs 1 through 29 above, as if fully set forth herein.

31.    Plaintiff has suffered significant and irreparable harm as a result of Defendant soliciting loans from the GPS Loan Pool, in breach of the Servicing Agreement.  Once these loans were refinanced with GMAC or its affiliate, Plaintiff lost its entire investment in the servicing rights to that loan, as well as the fees that Plaintiff would have earned in the future over the life of the loan.

32.    As a result of Defendant's repeated breaches of the Servicing Agreement, Plaintiff terminated the Servicing Agreement, for cause, on March 23, 2012.  Plaintiff then contacted

DM1\3311959.2

Defendant and requested that Defendant cooperate with Plaintiff in transferring the loans to the new servicer, as Defendant was required to do in Section 11.02 of the Servicing Agreement. Specifically, Plaintiff requested access to the loan files and data on the servicing of the GPS Loan Pool. These servicing rights are property belonging to Plaintiff.

33.     Despite Plaintiff's repeated requests, Defendant has refused to cooperate with Plaintiff in the transfer of the servicing of the Loan Pool and in providing Plaintiff with the loan files and data necessary to effectuate the transfer of the servicing of the GPS Loan Pool. Defendant's refusal to cooperate has again placed these valuable, unique assets in jeopardy, and is impeding the smooth transition of the servicing of the GPS Loan Pool, which can potentially also adversely impact borrowers who must know which company is servicing their home mortgage loans.

34.     The loan files and data requested by Plaintiff are the property of Plaintiff. Defendant has no lawful right to these loan files and data. Plaintiff will suffer irreparable harm unless Defendant returns this unique property to Plaintiff.

35.     By refusing to comply with the termination procedures in Section 11.02 of the Servicing Agreement, Defendant is also wrongfully using the custodial bank accounts into which borrowers' payments are deposited, by improperly deducting fees and expenses that Defendant is not entitled to because they were caused by Defendant's own servicing mistakes. The funds in the custodial accounts are the property of Plaintiff, not Defendant.

36.     Granting a permanent injunction prohibiting Defendant from soliciting the GPS Loan Pool is in the public's interest. A permanent injunction that compels Plaintiff to transfer the loan files and data to Plaintiff is also in the public's interest, in that it preserves a valuable

7

asset and will protect borrowers from confusion that may result if the servicing of their home mortgages is not smoothly transitioned.

37.    Plaintiff will also suffer significant hardship if an injunction is not issued. Defendant, however, will suffer no harm if an injunction is issued, as Defendant is contractually obligated not to solicit Plaintiff's GPS Loan Pool. Defendant also agreed to cooperate in the transitioning of the servicing, in compliance with the specific transfer procedures set forth in Section 11.02 of the Servicing Agreement. Defendant also has no property interest in the loan files and data, so it will suffer no harm if an injunction is issued.

WHEREFORE, Plaintiff, Green Planet Servicing, LLC, demands judgment against Defendant, GMAC Mortgage, LLC, as follows:

a.    Damages in the amount of $2,114,974.92, plus interest, attorney's fees and costs of this action.

b.    A permanent injunction prohibiting Defendant, or its affiliates, from soliciting any loan from the GPS Loan Pool, as required by Section 12.13 of the Servicing Agreement.

c.    A permanent injunction requiring that Defendant comply with Section 11.02 of the Servicing Agreement and transfer to Plaintiff all loan files and data for the GPS Loan Pool.

d.    A permanent injunction barring Defendant from withdrawing any funds from the custodial accounts and requiring that Defendant transfer to Plaintiff on a daily basis all servicing fees in the custodial accounts.

e.    Such other and further relief as this Court deems just, equitable and proper.

Scott H. Marder
Duane Morris LLP
111 South Calvert Street, Suite 2000

Baltimore, MD 21202
(410) 949-2941
(410) 558-6370 (facsimile)
shmarder@duanemorris.com
*Attorneys for Plaintiff, Green Planet
Servicing, LLC*

9