MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Anthony Princi

*Proposed Counsel for the Debtors and
Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## DEBTORS' OBJECTION TO MOTION OF BERKSHIRE HATHAWAY INC.
## <u>FOR APPOINTMENT OF AN EXAMINER PURSUANT TO 11 U.S.C. § 1104(c)</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 2

BACKGROUND ..................................................................................................................... 5

A.    General Background ........................................................................................... 5

B.    Committee Rule 2004 Investigation and Discovery ........................................... 6

RESPONSE............................................................................................................................ 8

A.    Bankruptcy Code Section 1104(c)(2) Does not Require this Court to Appoint an
      Examiner Where the Committee is Capably Conducting its Investigation ...................... 8

B.    Berkshire Has Not Demonstrated That Appointment of an Examiner Is in the
      Interests of Creditors, Equity Holders and the Estates .................................................. 10

C.    The Examiner Motion Should be Denied or Granted with a Limited Scope, But in
      No Event Should the Court Permit Two Duplicative Investigations.............................. 13

CONCLUSION.................................................................................................................... 14

NY2-704141

# TABLE OF AUTHORITIES

**Page**

**Cases**

Barnett v. Jamesway Corp. (In re Jamesway Corp.),
235 B.R. 329 (Bankr. S.D.N.Y. 1999), aff'd, 242 B.R. 130....................................................10

In re Bradlees Stores, Inc.,
209 B.R. 36 (Bankr. S.D.N.Y. 1997)......................................................................8

In re Erickson Ret. Cmtys., LLC,
425 B.R. 309 (Bankr. N.D. Tex. 2010)..................................................................14

Finley, Kumble, Wagner, Heine, Underberg, Manley, Meyerson & Casey,
160 B.R. 882 (Bankr. S.D.N.Y. 1993)...................................................................10

In re Gliatech, Inc.,
305 B.R. 832 (Bankr. N.D. Ohio 2004)..................................................................10

In re Loral Space & Commc'ns, Ltd.,
Case No. 04-08645, 2004 WL 2979785 (S.D.N.Y. Dec. 23, 2004) ........................................10

Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),
898 F.2d 498 (6th Cir. 1990) ...........................................................................10

In re Schepps Food Stores, Inc.,
148 B.R. 27 (S.D. Tex. 1992) ...........................................................................8

In re Sletteland,
260 B.R. 657 (Bankr. S.D.N.Y. 2001) ..............................................................10,11

In re UAL Corp.,
307 B.R. 80 (Bankr. N.D. Ill. 2004) ...................................................................10

U.S. Bank N.A. v. Wilmington Trust Co. (In re Spansion, Inc.),
426 B.R. 114 (Bankr. D. Del. 2010) .....................................................................9

**Other Authorities**

11 U.S.C. § 1104(c) ............................................................................... passim

124 Cong. Rec. h11, 103 (daily ed. Sept. 28, 1978) .......................................................4

NY2-704141

In re Am. Home Mortgage Holdings, Inc., Case No. 07-11047 (KJC) (Bankr. D. Del. Oct.
    31, 2007) [Docket No. 1997] ...................................................................................................9

In re Asarco, LLC, Case No. 05-21207 (Bankr. S.D. Tex. Mar. 4, 2008) [D.I. 7081]..................14

In re Visteon Corp., Case No. 09-11786 (CSS) (Bankr. D. Del. May 12, 2010) [Docket
    No. 3145] ...............................................................................................................................9

In re WorldCom, Inc., Case No. 02-13533 (Bankr. S.D.N.Y. May 16, 2003) [D.I. 5923] .............9

NY2-704141

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Anthony Princi

*Proposed Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ )
                                                                   )
In re:                                                             )    Case No. 12-12020 (MG)
                                                                   )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                           )    Chapter 11
                                                                   )
                                          Debtors.                 )    Jointly Administered
                                                                   )
------------------------------------------------------------------ )

**DEBTORS' OBJECTION TO MOTION OF BERKSHIRE HATHAWAY INC.
<u>FOR APPOINTMENT OF AN EXAMINER PURSUANT TO 11 U.S.C. § 1104(c)</u>**

Residential Capital, LLC ("***ResCap***") and its affiliated debtors and debtors in possession

in the above-captioned cases (collectively with ResCap, the "***Debtors***" and each, a "***Debtor***")[1],

submit this objection (the "***Objection***") to the motion (the "***Examiner Motion***") of Berkshire

Hathaway Inc. ("***Berkshire***") for the appointment of an examiner pursuant to section 1104(c) of

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on
<u>Exhibit 1</u> to the Whitlinger Affidavit (defined below).  Additional subsidiaries and affiliates of the Debtors
may file Chapter 11 petitions on a rolling basis.  As used herein, the term "Debtors" includes any such
entities.

1

title 11 of the United States Code (the "***Bankruptcy Code***")[2].  In support of this Objection, the

Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

This Court has discretion whether or not to appoint an examiner and should exercise it to

deny the Examiner Motion.  No Bankruptcy Code provision mandates a court to appoint an

examiner, particularly here where the request is brought by a secured creditor[3] who may well

ultimately be paid in full and seeks to examine issues that are the subject of an investigation

currently being conducted by the Committee, as authorized by this Court pursuant to Bankruptcy

Rule 2004 (the "***Rule 2004 Investigation***").  The Debtors anticipate that the Rule 2004

Investigation will be an expansive examination into the propriety of the Debtors' prepetition

affairs and proposed restructuring transactions.  The Rule 2004 Investigation is well underway;

the Debtors (and the Committee) have already invested a significant amount of time and

resources into a massive discovery process, with the Debtors having already produced tens of

thousands of pages of documents to the Committee, prepared for and attended depositions, and

prepared and briefed the Committee on the Debtors' analysis of potential claims and settlements.

---

[2]     *Motion of Berkshire Hathaway Inc. for the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)*
[Docket No. 208].

[3]     In support of the Examiner Motion, Berkshire filed the *Declaration of R. Ted Weschler in Support of the
Motion of Berkshire Hathaway Inc. for the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)*,
dated June 4, 2012 [Docket No. 209] (the "***Initial Declaration***").  In the Initial Declaration, Mr. Weschler,
an investment manager at Berkshire, stated that Berkshire holds directly or indirectly through investment
vehicles in the excess of $500 million of unsecured bonds issued by ResCap, representing in excess of 50%
of the total outstanding unsecured bonds of ResCap, and $900 million in junior secured bonds.  (Initial Dec.
at ¶ 2.)  On June 5 and 6, 2012, auctions with respect to ResCap unsecured bonds were held at which, upon
information and belief, Berkshire sold its entire ResCap unsecured bond holdings.  On June 7, 2012, at
around 4:00 p.m. (ET), the Debtors served Mr. Weschler with a Notice of Deposition and Request for
Production of Documents with the intent to take discovery regarding those events.  Later that same day, at
approximately 6:30 p.m. (ET), Mr. Weschler, by and through his counsel, filed a supplement to the Initial
Declaration, dated June 7, 2012 [Docket No. 250] (the "***Supplemental Declaration***") stating, in relevant
part: "I have been informed that on June 5 and 6, 2012, Berkshire executed trades and sold its holdings of
unsecured bonds issued by Residential Capital, LLC ("ResCap")."  (Supp. Dec. at ¶ 2.)  The Supplemental
Declaration further provides that Berkshire continues to hold in excess of $900 million in junior secured
bond of ResCap.

In light of the Committee's substantial work, and in the absence of no substantiated reasons why the Committee would be unable to fully and fairly conduct this investigation, there is no apparent benefit to any of Debtors' stakeholders from the appointment of an examiner.  Accordingly, the Court should exercise its discretion to deny the Examiner Motion.

Section 1104(c) of the Bankruptcy Code provides two independent grounds upon which a party in interest may move for the appointment of an examiner.  Specifically, the statute provides that "the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate … if" either: (i) the court, in its discretion, decides that such appointment is in the interests of the estate and all of its stakeholders; or (ii) the debtor's fixed, liquidated, unsecured debts (other than for goods, services, taxes or owing to an insider) exceed $5 million. 11. U.S.C. § 1104(c).[4]  Berkshire can only argue that the first prong of Bankruptcy Code section 1104(c)—that of the interest of stakeholders—is satisfied by appointment of an examiner by casting doubt on the Committee's ability to conduct a full and fair investigation.  Moreover, Berkshire argues that this court lacks discretion to deny the Examiner Motion because the plain language of section 1104(c)(2) requires appointment of an examiner when the unsecured debt threshold of that section has been met, regardless of whether an investigation is appropriate.

---

[4]        Section 1104(c) of the Bankruptcy Code provides that:

If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if –

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

Section 1104(c)(2) of the Bankruptcy Code, however, **does not mandate** the appointment of an examiner in these chapter 11 cases. *First*, while the authorities are not uniform on whether the appointment of an examiner is mandatory under Bankruptcy Code section 1104(c)(2), the plain language of that section requires an examiner only to the extent "appropriate," and the legislative history of Bankruptcy Code section 1104(c) suggests that the Court has discretion in making such an appointment. Moreover, there is no dispute that the scope of the examination and the duties delegated to an examiner are entirely within this Court's discretion. *Second*, the appointment of an examiner to conduct an investigation while simultaneously permitting the Committee to conduct the Rule 2004 Investigation is not in the interest of the general body of creditors or these estates. The issues identified by Berkshire as requiring investigation already are and will continue to be thoroughly explored and analyzed by the Committee. The appointment of an examiner (while simultaneously permitting the Committee to continue its Rule 2004 Investigation) would be wasteful because it will (i) entirely duplicate the efforts already being undertaken by the Committee, (ii) interfere with and possibly delay the Debtors' chapter 11 process, and (iii) add on unnecessary layers of incremental expense that creditors could hardly want to see.

Berkshire's allegation that the Committee is somehow compromised in its ability to conduct a full and fair investigation – in the face of Berkshire's sale of its unsecured claim – is unfortunate. Berkshire raises no credible allegation that the Committee is incapable of carrying out its fiduciary obligations to conduct its investigation in an impartial manner. Undermining the investigation already in process would not be in the best interests of the Debtors, their estates, their creditors, and all other stakeholders.

NY2-704141

The Court, accordingly, should exercise its discretion to deny the Examiner Motion in its entirety.  However, if the Court is inclined to grant the Examiner Motion and appoint an examiner, then the Debtors submit that it is in the best interests of the Debtors' estates and their creditors to: (i) <u>not</u> permit dual track investigations by both the Committee and the examiner, (ii) narrowly define the scope of the examination in order to avoid duplicative work, excessive costs and delay, (iii) require that the examination be completed and a report filed reasonably in advance of any scheduled hearing on the Debtors' Disclosure Statement so as to avoid delay to the Debtors' reorganization efforts, (iv) permit the examiner to analyze and prosecute or settle claims, (v) preserve the estates' assets by limiting the examiner's fees and expenses, and (vi) provide a mechanism by which the Debtors may protect confidential and/or privileged information.  To be clear, there would be no benefit to the Debtors' estates, and would in fact harm stakeholders in these cases, to allow the Committee and an examiner to conduct dual investigations, pursue two discovery processes, embark on two independent analyses of potential claims and two determinations of the validity of the Debtors' proposed restructuring transactions. Therefore, this Court should limit any investigation to either the Committee or an examiner, but not both.

## BACKGROUND

**A.    General Background**

1.    On May 14, 2012 (the "***Petition Date***"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code

NY2-704141

sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).[5]

2.      On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors (the "***Committee***").[6] No trustee or examiner has been appointed in these Chapter 11 Cases.

**B.      Committee Rule 2004 Investigation and Discovery**

3.      Following the Committee's formation, and in advance of the commencement of the Rule 2004 Investigation, counsel for the Debtors and AFI engaged in constructive discussions with proposed counsel for the Committee regarding the implementation of an efficient discovery process to conduct an investigation.

4.      On June 1, 2012, the Committee filed and served a motion for authority pursuant to Bankruptcy Rule 2004 to issue subpoenas seeking documents and deposition testimony by the Debtors and certain other entities and persons (the "***Rule 2004 Motion***").[7]  The purpose of the Rule 2004 Motion was to establish a process by which the Committee could undertake an independent investigation fully to examine and analyze the propriety of the Debtors' prepetition

---

[5]      The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc. ("***AFI***"), which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* (the "***Whitlinger Affidavit***") [D.I. 6].

[6]      The members of the Committee are: (a) AIG Asset Management LLC, (b) Allstate Life Insurance Company, (c) the Bank of New York Mellon Trust Company, N.A., (d) Deutsche Bank Trust Company Americas, (e) Rowena L. Drennen, (f) Financial Guaranty Insurance Company, (g) MBIA Insurance Corporation, (h) U.S. Bank National Association, (i) Wilmington Trust, N.A.

[7]      *Motion of the Official Committee of Unsecured Creditors of Debtors Residential Capital, LLC, et al., for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony by the Debtors and Others*, dated June 1, 2012 [Docket No. 192].

NY2-704141

transactions and proposed releases incorporated into the various prepetition settlement and plan

support agreements.[8]

5.      The Debtors consent to the relief requested in the Rule 2004 Motion, no

objections were filed to the Rule 2004 Motion and on June 5, 2012, the Bankruptcy Court

entered an order granting the relief requested therein.[9]  Immediately thereafter, the Committee

served upon the Debtors a subpoena with a broad range of document production requests.

6.      On June 1 and 4, 2012, the Debtors negotiated and agreed upon with the

Committee revisions to the proposed 2004 Order regarding discovery protocols . The Debtors

met and conferred with the Committee several times during the week of June 4 to negotiate the

scope of the subpoena. As of the date hereof, the Debtors have produced almost 13,000 pages of

documents to the Committee in connection with the Rule 2004 Investigation.  The Debtors and

the Committee counsel have also been negotiating and exchanging drafts of a confidentiality

agreement.[10]

7.      The Debtors undertook prepetition an extensive internal analysis of potential

claims and causes of action that may be held by the Debtors' estates.  The Debtors participated

on numerous calls with the Committee to discuss the Debtors' findings.  Most recently, on June

8, 2012, the Debtors made a presentation over the course of several hours to the Committee

regarding the Debtors' analysis of the relevant factual and legal issues underlying the potential

---

[8]      *Id.* at ¶ 5-7.

[9]      *Order Authorizing the Official Committee of Unsecured Creditors to Issue Subpoenas Compelling the
        Production of Documents and Provision of Testimony by the Debtors and Others Pursuant to Federal Rule
        of Bankruptcy Procedure 2004*, dated June 5, 2012 [Docket No. 217].

[10]     Since the Committee's formation, the Debtors have produced in excess of 17,000 pages of documents to
        the Committee.  Certain of these documents also have been produced pursuant to discovery requests served
        by the Committee in connection with the Debtors' first-day motions.  The documents produced pursuant to
        those requests, however, also are responsive to the subpoena served pursuant to the Rule 2004
        Investigation.

NY2-704141

claims in connection with the Rule 2004 Investigation.  Additional meetings between the Debtors

and the Committee regarding the Rule 2004 Investigation are being scheduled.

## RESPONSE

**A.      Bankruptcy Code Section 1104(c)(2) Does not Require this Court to Appoint an Examiner Where the Committee is Capably Conducting its Investigation**

8.      Contrary to Berkshire's contention, section 1104(c)(2) of the Bankruptcy Code

does not mandate that the Court appoint an Examiner.  As stated above, Bankruptcy Code

section 1104(c)(2) contains two independent prongs that must be satisfied before a court can

appoint an examiner.  First, a debtor's fixed, liquidated, unsecured debts, other than debts for

goods, services, taxes, or owing to an insider, must exceed a threshold of $5 million.  Second,

there must be an "appropriate" investigation for the examiner to conduct.

9.      Even if the Court finds that the debt threshold of Bankruptcy Code section

1104(c)(2) is met, the Court is not required to appoint an examiner.  Although that provision has

been read by some courts in a manner that appears to mandate the appointment of an examiner if

the statutory debt threshold has been exceeded, the plain language of the statute does not support

this interpretation.  Notably, the portion of section 1104(c) oft-quoted to support the notion that

appointment of an examiner is mandatory—"the court shall order the appointment of an

examiner"—is immediately followed by the phrase "to conduct such an investigation of the

debtor *as is appropriate*."[11]  It follows that the existence of "an investigation of the debtor that is

appropriate" is a precondition that must be satisfied before the court has any obligation to

appoint an examiner.[12]

---

[11]      11 U.S.C. § 1104(c) (emphasis added).

[12]      *See* In re Bradlees Stores, Inc., 209 B.R. 36, 39-40 (Bankr. S.D.N.Y. 1997) (holding that appointment of an examiner was not mandatory when its proposed duties were inappropriate); In re Schepps Food Stores, Inc., 148 B.R. 27, 31 (S.D. Tex. 1992) (denying appointment of examiner under the section 1104(c)(2) standard

(Footnote continues on next page.)

10.     A growing number of bankruptcy courts have rejected the interpretation that section 1104(c)(2) mandates appointment of an examiner simply because the $5 million threshold was exceeded, if other facts do not make such appointment "appropriate."[13]  Indeed, bankruptcy courts in other jurisdictions have read section 1104(c)(2) as requiring that there be an appropriate examination to be performed by an independent third party (in addition to showing that the statutory $5 million threshold has been satisfied) before approving appointment of examiners.[14]

11.     Here, because the proposed scope of work for an examiner is already being undertaken by the Committee, there is **no appropriate** investigation for an examiner:  any work undertaken by the examiner would be unnecessary and duplicative of the Committee's Rule 2004 Investigation.

---

(Footnote continued from previous page.)

where the request was a "tactic to prevent confirmation, rather than to investigate bad faith allegations."); Memorandum Decision and Order at 24, In re WorldCom, Inc., Case No. 02-13533 (Bankr. S.D.N.Y. May 16, 2003) [D.I. 5923] (holding that section 1104(c) "provides [the court] with broad discretion" in refusing to appoint a second examiner to cover new areas of inquiry where such appointment "would cause the Debtors to incur substantial and unnecessary expenses detrimental to the interests of creditors and other parties in interest.").

[13]     *See* In re Innkeepers USA Trust, Case No. 10-13800 (SCC), Hr'g Tr. at 167:11-169:16 ("A growing number of courts have attempted to reconcile the mandatory language of the statute, that is the word shall, with the words that follow shortly thereafter, quote, to conduct such examination as is appropriate, end quote, and have appointed examiners with extremely limited or in some instances, no duties in cases in which the five million dollar threshold is met.  And a number of courts have entirely declined to find that an appointment in such instances is mandatory, and denied requests to appoint examiners.").  A copy of the Innkeeper's transcript is attached hereto as Exhibit 1.

[14]     *See* U.S. Bank N.A. v. Wilmington Trust Co. (In re Spansion, Inc.), 426 B.R. 114, 127 (Bankr. D. Del. 2010) ("I find no sound purpose in appointing an examiner, only to significantly limit the examiner's role when there exists insufficient basis for an investigation."); *see also May 12, 2010 Hearing Transcript at* 170:16-20, In re Visteon Corp., Case No. 09-11786 (CSS) (Bankr. D. Del. May 12, 2010) [Docket No. 3145] (denying the appointment of an examiner and noting "I don't think it's true, and I think it would be an absurd result to find that in every case where the financial criteria is met and a party-in-interest asks, the Court must appoint an examiner. There has to be an appropriate investigation that needs to be done."); October 31, 2007 Hearing Transcript at 76:11-12, In re Am. Home Mortgage Holdings, Inc., Case No. 07-11047 (KJC) (Bankr. D. Del. Oct. 31, 2007) [Docket No. 1997] (recognizing that meeting the $5 million financial threshold was only one part of the inquiry and that "the other piece of the puzzle is that *there has to be an investigation to perform that's appropriate*.") (emphasis added).

9

12.     While the Debtors acknowledge that the District Court in this district in *In re Loral Space and Commc'ns, Ltd.* ("*Loral II*"),[15] held that appointment was, in fact, mandatory upon the $5 million threshold being exceeded,[16] no published opinions in the Second Circuit have cited the unpublished *Loral II* decision with approval. The lack of published decisions in this circuit on this issue has a good explanation—the *Loral II* court's reasoning produces the undesirable result of requiring the appointment of an examiner in any chapter 11 case with $5 million of qualifying debt upon request by any creditor.[17]

## B.    Berkshire Has Not Demonstrated That Appointment of an Examiner Is in the Interests of Creditors, Equity Holders and the Estates

13.     Berkshire also fails to satisfy its burden to show why appointment of an examiner to conduct its own investigation is warranted under section 1104(c)(1) of the Bankruptcy Code.[18] Generally, a party seeking the appointment of an examiner under that section must show that an examiner is in the interest of all parties with a stake in the debtor's estate; it is not sufficient

---

[15]     Case No. 04-08645, 2004 WL 2979785 (S.D.N.Y. Dec. 23, 2004).

[16]     *See also* Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.), 898 F.2d 498, 500-01 (6th Cir. 1990) (holding that appointment of examiner is mandatory in view of the phrase "the court shall order"); In re UAL Corp., 307 B.R. 80, 86 (Bankr. N.D. Ill. 2004) (same).

[17]     Importantly, a bankruptcy court is not bound by a decision of a single district judge in a multi-judge district. *See* Barnett v. Jamesway Corp. (In re Jamesway Corp.), 235 B.R. 329, 337 n. 1 (Bankr. S.D.N.Y. 1999), aff'd, 242 B.R. 130 ("We find that where the bankruptcy court sits in a multi-judge district, it is not bound by principles of stare decisis by the decision of a district court in that district."); In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Meyerson & Casey, 160 B.R. 882, 898 (Bankr. S.D.N.Y. 1993) ("A bankruptcy judge, like a district court judge, is free to reexamine an issue despite the existence of a prior decision of another judge in the same district unless, by chance or otherwise, all judges in his or her district have ruled consistently on the same issue, or the Circuit or Supreme Court has so held.").

[18]     Section 1104(c)(1) permits the appointment of an Examiner when a court finds it appropriate and that it is in the best interests of all of the debtor's various stakeholders, i.e., "creditors, any equity security holders, and other interests of the estate."  *See* In re Sletteland, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001) (denying appointment of examiner pursuant to Section 1104(c)(1) because movant "must show that the appointment is in the interests of all those with a stake in the estate, which in this case would include the Debtor" and that showing had not been made); In re Gliatech, Inc., 305 B.R. 832, 836 (Bankr. N.D. Ohio 2004) (appointment of examiner must be in interests of all creditors and equity holders); *see also* In re Innkeepers, Case No. 10-13800 (SCC), Hr'g Tr. at 168:17-20 ("As a result of Section 1104(c)(1)'s use of the word and, an examiner should only be appointed under that subsection, if doing so would serve the interest of all the debtor's stakeholders.").

NY2-704141

merely to show that the appointment is in the interest of the moving party – particularly a party that sold its unsecured debt immediately after filing the Examiner Motion.[19]

14.    Berkshire's preference to substitute a third-party examiner to conduct an investigation that would be largely duplicative of the Rule 2004 Investigation does not constitute cause to appoint an examiner under Bankruptcy Code section 1104(c)(1).  It is not in the best interests of a debtor's stakeholders to appoint a third party to duplicate the efforts of others.[20] This Court has held that, where a statutory committee has already begun an investigation that includes the initiation of discovery, the appointment of an examiner would not be in the best interests of stakeholders.[21]  In *Sletteland*, this Court denied the motion of an ad hoc group of shareholders for appointment of an examiner where the creditors' committee had already served discovery on the debtor.[22]  The *Sletteland* Court explained that these circumstances "make it particularly inappropriate to impose on the estate . . . the sizable cost of a trustee or examiner" because "it would appear that the committee can appropriately perform any necessary investigation."[23]

15.    In light of the fact that the Committee here has initiated its investigation, has been briefed on potential claims and settlements by the Debtors, has already received tens of

---

[19]    *See* Sletteland, 260 B.R. at 672  ("[A] creditor group, no matter how dominant, cannot justify the appointment of a trustee or examiner simply by alleging that it would be in its interests.  It must show that the appointment is in the interests of all those with a stake in the estate . . . .").

[20]    *See* Innkeepers, Case No. 10-13800 (SCC) , Hr'g Tr. at 168:21-169:11 (finding that all of requested examination topics would be addressed by litigation or by "multiple layers of interested parties" and it would not be appropriate to have estate pay for third party to duplicate efforts of others as movant would have access to discovery on these topics and be able to "uncover any material additional facts on the issues of concern");  In re Sletteland, 260 B.R. at 672 (observing, in dicta, that examiner appeared unwarranted where official committee could appropriately perform investigation).

[21]    *See* Sletteland, 260 B.R. at 672.

[22]    *Id.*

[23]    *Id.*

---

11

thousands of documents and is conducting further discovery pursuant to its investigation,

appointment of an examiner at this point would not benefit the interest of the Debtors'

stakeholders.  Thus, there is no need to bring in a third party that is unfamiliar with the facts and

issues in the Debtors' cases to conduct a duplicative investigation and thereby burden the

Debtors' estates with unnecessary expenses.

16.    Moreover, the Examiner Motion fails to provide any reason why unsecured

creditors' interests will not be pursued adequately by the actions of the Committee and would be

better served by appointing an examiner.  Putting aside allegations regarding the Committee's

ability to conduct an impartial and focused investigation, Berkshire raises concerns that the

Committee may decide not to publicly disclose the findings of its investigation and an

independent examiner may obtain broader access than the Committee would have to the Debtors'

privileged materials.  To alleviate these concerns, (i) the Committee has represented to the

Debtors that they have committed to release the findings of the Rule 2004 Investigation publicly

and (ii) the Debtors intend to share with the Committee privileged materials similar to what an

examiner might receive pursuant to a court order.

17.    Moreover, Berkshire's statement that there is no harm in appointing an Examiner

at this early stage of these cases rings hollow.[24]  Given the significant time and efforts already

invested by the Committee and the Debtors in conducting the Rule 2004 Investigation,

authorizing a third party to commence a competing investigation would very likely result in

delay of the progress of these cases, to the detriment of all unsecured creditors.  This potential

harm is illustrated by Berkshire's proposed timing for an examiner to conclude its investigation

and file a report—90 days from the date of entry of the order approving the Examiner Motion—

---

[24]    Examiner Mot. ¶ 29.

NY2-704141

which would be likely to delay the chapter 11 process.[25]  The Debtors (and other significant

parties in interest) aim to obtain approval of a disclosure statement and begin solicitation of votes

on a plan of reorganization by early-mid August, 2012.  As Berkshire concedes in the Examiner

Motion, neither the Debtors nor any of its creditors is likely to seek approval of a disclosure

statement and solicitation of votes on a plan prior to the publication of the examiner's report.[26]

Accordingly, granting the Examiner Motion with the proposed 90-day timeframe would

consequently risk delay of confirmation of a plan and ultimately the effective date of any

reorganization.

18.      In light of the potential duplication of efforts, the additional cost and expense, and

the possible disruption of the contemplated timeline of the Debtors' restructuring, this Court

should thus exercise its discretion to deny the Examiner Motion because it is not in the interest of

the entire body of creditors and these estates.

**C.      The Examiner Motion Should be Denied or Granted with a Limited Scope, But in
No Event Should the Court Permit Two Duplicative Investigations**

19.      For the reasons explained above, there is no "appropriate" investigation for an

Examiner to conduct at this time in these cases.  To the extent, however, the Court is inclined to

follow those courts that have interpreted Bankruptcy Code section 1104(c)(2) as unconditionally

requiring the appointment of an examiner based solely upon whether the $5 million statutory

threshold has been exceeded, this Court should appoint an examiner with no duties at this time.

This is consistent with rulings of other courts that have found it mandatory to appoint an

examiner under section 1104(c)(2) even where there is no appropriate investigation for the

---

[25]      *Id.*

[26]      Examiner Mot. at ¶ 25 ("But before creditors can begin to make an informed judgment on these and other
matters, they need a thorough public investigation into the Debtors and their transactions with Ally and
other related parties.").

NY2-704141

examiner to pursue at the time of the request.[27]  In any event, this Court should not permit

redundant investigations by both an examiner and the Committee, which would result in an

egregious waste of the estates' resources.

20.    If the Court determines that appointment of an Examiner is mandatory, it need not

grant the expansive authority sought by Berkshire to seek broad discovery.  Indeed, the proposed

form of order for the Examiner Motion provides "unfettered" access to the Debtors and other

targeted parties; such powers are overly broad and unjustified by the circumstances of these

cases.[28]  While such broad access may be appropriate in other cases where there is clearly

evidence of fraud, this is not such a case.  To avoid wasting of estate resources, the boundaries of

an examiner's authority and the scope of discovery must be narrowly tailored, as opposed to

providing it with carte blanche powers to seek whatever discovery it desires.

21.    In any event, the Committee and any Examiner appointed should not be permitted

to conduct dual and potentially competing investigations.

## CONCLUSION

22.    WHEREFORE, the Debtors respectfully request that the Examiner Motion should

be denied; or, in the alternative, if the Court grants the Examiner Motion, to impose the

limitations and requests made herein, including appropriately limiting the scope of any

examiner's role given the circumstances of this case; and grant such other and further relief as

the Court may deem just and proper.

---

[27]    *See* In re Asarco, LLC, Case No. 05-21207 (Bankr. S.D. Tex. Mar. 4, 2008) [D.I. 7081] (order  appointing
an examiner, denying the scope of the investigation proposed in the motion, and further providing "that the
examiner shall not have any current duties"); *see also* In re Erickson Ret. Cmtys., LLC, 425 B.R. 309, 312
(Bankr. N.D. Tex. 2010) (noting that to the extent standing and waiver issues did not support the denial of
examiner request, the court would appoint an examiner with no duties due to the fact that there was no
useful purposes for an examiner even though the $5 million statutory threshold was exceeded).

[28]    Exh. A to Examiner Mot. at p. 2.

NY2-704141

Dated: June 11, 2012
        New York, New York

Respectfully submitted,

/s/ Larren M. Nashelsky
Larren M. Nashelsky
Gary S. Lee
Anthony Princi
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Proposed Counsel for the Debtors and
Debtors in Possession*

15

**EXHIBIT 1**

**<u>Innkeepers Transcript</u>**

- 1 -

1

2     UNITED STATES BANKRUPTCY COURT

3     SOUTHERN DISTRICT OF NEW YORK

4     Case No. 10-13800-scc

5     - - - - - - - - - - - - - - - - - - -x

6     In the Matter of:

7

8     INNKEEPERS USA TRUST, et al.,

9

10              Debtors.

11

12    - - - - - - - - - - - - - - - - - - -x

13

14                U.S. Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                September 30, 2010

19                10:05 AM

20

21

22    B E F O R E:

23    HON. SHELLEY C. CHAPMAN

24    U.S. BANKRUPTCY JUDGE

25

- 167 -

1    services, taxes, or owing to an insider, exceed five million

2    dollars.

3         Authorities have been submitted to me and arguments

4    made in the various papers filed by the ad hoc committee and

5    the objectors, on the question of whether an appointment of an

6    examiner is mandatory upon the five million dollar threshold

7    being exceeded.

8         In this district, of course, there is the Loral

9    decision which so held in 2004.  The Sixth Circuit came to a

10   similar conclusion in Refco, as did the Court in UAL.

11        A growing number of courts have attempted to reconcile

12   the mandatory language of the statute, that is the word shall,

13   with the words that follow shortly thereafter, quote, to

14   conduct such examination as is appropriate, end quote, and have

15   appointed examiners with extremely limited or in some

16   instances, no duties in cases in which the five million dollar

17   threshold is met.

18        And a number of courts have entirely declined to find

19   that an appointment in such instances is mandatory, and denied

20   requests to appoint examiners.

21        As the request for the appointment of an examiner, has

22   increasingly been used as a litigation tactic by parties

23   unhappy with the status or conduct of a case, and unhappy at

24   the prospect of continuing to fund the prosecution of their

25   particular issues, courts have quite understandably and

- 168 -

1    properly, I believe, pushed back and declined to appoint an

2    examiner to join an otherwise crowded fray, in which the many

3    combatants are well armed and highly motivated.

4            Based on the record before me, I find that there is no

5    basis to appoint an examiner under either 1104(c)(1) or

6    1104(c)(2).  And thus, I need not reach the question of whether

7    and to what extent Section 1104(c) is mandatory in nature.

8            First, with respect to 1104(c)(1), Section 1104(c)(1)

9    of the Code provides that a bankruptcy court shall order the

10   appointment of an examiner, to conduct such an investigation of

11   the debtor, as is appropriate, including an investigation of

12   any allegations of fraud, dishonesty, incompetence, misconduct,

13   mismanagement, or irregularity in the management of the affairs

14   of the debtor of or by current or former management of the

15   debtor if such appointment is in the interest of creditors, any

16   equity security holders, and other interest of the estate.

17           As a result of Section 1104(c)(1)'s use of the word

18   and, an examiner should only be appointed under that

19   subsection, if doing so would serve the interest of all the

20   debtor's stakeholders.

21           Because all of the requested examination topics

22   either, one, have been addressed in the litigation surrounding

23   the motion to approve the PSA, or two, will be addressed by

24   multiple layers of interested parties, including without

25   limitation, as part of the committee's investigation, or in the

- 169 -

1   plan process, it is not in the best interests of all of the

2   debtor's stakeholders to appoint, and have the estate pay for a

3   third party to duplicate the efforts of others.

4        Even a cursory examination of the topics listed in the

5   ad hoc committee's motion, which list was not substantially

6   revised, post PSA, reveals that one or more parties has each

7   and every one of these topics on its dance card.  And the ad

8   hoc preferreds will have access to discovery in these cases, as

9   they proceed, and thus will have the ability to uncover and

10   martial additional facts on the issues of concern to the

11   preferreds.

12        These same issues are, of course, of tremendous

13   concern to the stakeholders throughout the capital structure of

14   the debtors and to the Court.  It is certainly my expectation

15   that at some point, the fruits of the committee's investigation

16   will be shared with the parties and the Court.

17        Second, with respect to Section 1104(c)(2), under the

18   plain language of the statute, the party moving for the

19   appointment of an examiner must at a minimum, aggregate the

20   fixed and liquidated unsecured debts, other than for goods,

21   services, taxes, or owing to an insider, and demonstrate that

22   the sum thereof is greater than five million dollars.

23        As the United States Trustee noted in her objection,

24   although the ad hoc committee declares that it is quote,

25   reasonable to assume, end quote, that the five million dollar