**Hearing Date: June 12, 2012 at 10:00 a.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

-------------------------------------------------------------------

**NOTICE OF PROPOSED ORDER  - FINAL ORDER UNDER BANKRUPTCY CODE
SECTIONS 105(a), 345, 363, 364, AND 503(b)(1) AND BANKRUPTCY RULES 6003 AND
6004 AUTHORIZING (I) CONTINUED USE OF CASH MANAGEMENT SERVICES
AND PRACTICES, (II) CONTINUED USE OF EXISTING BANK ACCOUNTS,
CHECKS, AND BUSINESS FORMS, (III) IMPLEMENTATION OF MODIFIED CASH
MANAGEMENT PROCEDURES AND USE OF CERTAIN BANK ACCOUNTS
ESTABLISHED IN CONNECTION WITH USE OF PRE-AND POST-PETITION
LENDERS' FINANCING FACILITIES AND CASH COLLATERAL, (IV) WAIVER OF
THE INVESTMENT AND DEPOSIT REQUIREMENTS OF BANKRUPTCY
CODE SECTION 345, (V) DEBTORS TO HONOR SPECIFIED OUTSTANDING
PREPETITION PAYMENT OBLIGATIONS, AND (VI) CONTINUATION
OF INTERCOMPANY TRANSACTIONS AND GRANTING ADMINISTRATIVE
<u>EXPENSE STATUS TO INTERCOMPANY CLAIMS</u>**

     **PLEASE TAKE NOTICE** that Residential Capital, LLC ("ResCap") files the attached

proposed Order - *Final Order Under Bankruptcy Code Sections 105(A), 345, 363, 364, And*

*503(B)(1) And Bankruptcy Rules 6003 And 6004 Authorizing (I) Continued Use Of Cash*

*Management Services And Practices, (II) Continued Use Of Existing Bank Accounts, Checks,*

*And Business Forms, (III) Implementation Of Modified Cash Management Procedures And Use*

*Of Certain Bank Accounts Established In Connection With Use Of Pre-And Post-Petition*

*Lenders' Financing Facilities And Cash Collateral, (IV) Waiver Of The Investment And Deposit*

*Requirements Of Bankruptcy Code Section 345, (V) Debtors To Honor Specified Outstanding*

*Prepetition Payment Obligations, And (VI) Continuation Of Intercompany Transactions And*

*Granting Administrative Expense Status To Intercompany Claims* (the "Proposed Order")[1],

attached hereto as Exhibit 1.

      **PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Proposed Order

will take place on **June 12, 2012 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable

Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York,

Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408,

Room 501.

      **PLEASE TAKE FURTHER NOTICE THAT** a copy of the Motion and Proposed

Order may be obtained via PACER at http://www.nysb.uscourts.gov or from the Debtors'

restructuring website at www.kccllc.net/rescap.

---

[1] On May 14, 2012, the Debtors filed the Debtors' Motion For Order Under Bankruptcy Code Sections 105(A), 345, 363, 364, And 503(B)(1) And Bankruptcy Rules 6003 And 6004 Authorizing (I) Continued Use Of Cash Management Services And Practices, (II) Continued Use Of Existing Bank Accounts, Checks, And Business Forms, (III) Implementation Of Modified Cash Management Procedures, (IV) Interim Waiver Of The Investment And Deposit Requirements Of Bankruptcy Code Section 345, (V) Debtors To Honor Specified Outstanding Prepetition Payment Obligations, (VI) Continuation Of Intercompany Transactions, Including Intercompany Transactions With Future Debtors, And Granting Administrative Expense Status To Intercompany Claims, And (VII) Scheduling A Final Hearing On The Relief Requested [Docket No. 16] (the "Motion"). An interim order granting the relief requested therein was entered on May 15, 2012 [Docket No. 82] (the "Interim Order"). An electronic comparison of the Proposed Order to the Interim Order is attached hereto as Exhibit 2.

ny-1044957

Dated:  June 11, 2012
        New York, New York

                                        /s/ Larren M. Nashelsky
                                        Larren M. Nashelsky
                                        Gary S. Lee
                                        Lorenzo Marinuzzi
                                        MORRISON & FOERSTER LLP
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone: (212) 468-8000
                                        Facsimile: (212) 468-7900

                                        *Proposed Counsel to the Debtors and
                                        Debtors in Possession*

# EXHIBIT 1

ny-1044957

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- )
                                                                    )
In re:                                                              )    Case No. 12-12020 (MG)
                                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,       )    Chapter 11
                                                                    )
                              Debtors.                      )    Jointly Administered
------------------------------------------------------------------- )

**FINAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 345, 363, 364, AND
503(b)(1) AND BANKRUPTCY RULES 6003 AND 6004 AUTHORIZING (I)
CONTINUED USE OF CASH MANAGEMENT SERVICES AND PRACTICES, (II)
CONTINUED USE OF EXISTING BANK ACCOUNTS, CHECKS, AND BUSINESS
FORMS, (III) IMPLEMENTATION OF MODIFIED CASH MANAGEMENT
PROCEDURES AND USE OF CERTAIN BANK ACCOUNTS ESTABLISHED IN
CONNECTION WITH USE OF PRE-AND POST-PETITION LENDERS' FINANCING
FACILITIES AND CASH COLLATERAL, (IV) WAIVER OF THE INVESTMENT AND
DEPOSIT REQUIREMENTS OF BANKRUPTCY CODE SECTION 345, (V) DEBTORS
TO HONOR SPECIFIED OUTSTANDING PREPETITION PAYMENT OBLIGATIONS,
AND (VI) CONTINUATION OF INTERCOMPANY TRANSACTIONS AND
<u>GRANTING ADMINISTRATIVE EXPENSE STATUS TO INTERCOMPANY CLAIMS</u>**

Upon the motion (the "Motion")[1] of the Debtors for entry of interim and final orders,

under Bankruptcy Code sections 105, 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003

and 6004, authorizing (i) the continued use of the Debtors' cash management services and

practices, (ii) the continued use of the Debtors' existing bank accounts, checks, and business

forms, (iii) implementation of modified cash management procedures and use of certain bank

accounts established in connection with use of pre-and post-petition lenders' financing facilities

and cash collateral, (iv) waiver of the investment and deposit requirements of Bankruptcy Code

section 345, (v) Debtors to honor specified outstanding prepetition obligations, (vi) continuation

of ordinary course intercompany transactions between Debtors and according administrative

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
    Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
    granted herein may refer to www.kccllc.net/rescap for additional information.

expense status to postpetition intercompany claims arising from such transactions, and (vii)

scheduling a final hearing on the relief requested; and upon the Whitlinger Affidavit; and this

Court having entered an "amended" interim Order with respect to the Motion on May 15, 2012,

[Docket No. 82] (the "Interim Order"); and upon the record of the Final Hearing; and it

appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and sufficient notice of the Motion

having been given under the particular circumstances; and it appearing that no other or further

notice need be provided; and it appearing that the relief requested by the Motion is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and after due

deliberation thereon; and sufficient cause appearing therefor, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED on a final basis, as set forth herein.

### <u>Cash Management Practices</u>

2.      The Debtors are authorized to continue using the Cash Management

System, to manage their cash, to pay intercompany payables, including certain prepetition

payables referenced in the Motion, to extend intercompany credit, and to otherwise transfer

funds by and among the Debtors consistent with past practice, subject to the terms of the DIP

Credit Agreement.

3.      The Debtors are authorized to implement and utilize the Funding Facilities

Cash Flow Structure during these Chapter 11 cases, as described in the Motion and as

contemplated by the terms of the DIP Credit Agreement and the other cash collateral agreements,

ny-1011822

and which, notwithstanding anything to the contrary in the Motion or the Interim Order, includes

an account separate from the LOC Concentration Account that holds cash collateral securing the

AFI DIP (the "AFI DIP Account").  Subject to the Court's approval of the respective postpetition

financing agreements, and in connection with the Funding Facilities Cash Flow Structure, the

Debtors are authorized to use the DIP Concentration Account, the Revolver Concentration

Account, the LOC Concentration Account, the Citibank MSR Concentration Account, the AFI

DIP Account and the FNMA EAF Collection Account, each more particularly described in the

Motion.

        4.      The Debtors are authorized to continue to perform their obligations under

the agreements governing such system, and to transfer funds between and among the Debtors in

accordance with the terms of this Order, and between and among their respective Bank Accounts

and other accounts maintained with or by their duly appointed agents and custodians, as and

when needed and in the amounts necessary or appropriate to maintain their operations and

facilitate the orderly operation of their estates or businesses; provided, however, that such

transfers of funds by and among the Debtors are made in accordance with the terms and

conditions, and do not impair any parties' rights under any Servicing Agreements, deposit

agreements or other similar document, the DIP Credit Agreement or any order governing the

Debtors' use of cash collateral or debtor in possession financing facilities.

        5.      The Debtors shall maintain records of all transfers within the Cash

Management System so that all transfers and transactions shall be adequately and promptly

documented in, and ascertainable from, the Debtors' books and records, to the same extent as

maintained before the commencement of these Chapter 11 cases.

6.     The Debtors are authorized to continue operating and maintaining the

Custodial Accounts in connection with, and in accordance with, the Servicing Agreements and

related documents for sales of whole loans to third parties.

7.     The Debtors are authorized to continue to deduct amounts from the

Custodial Accounts for the repayment of the Advances; provided, however, nothing shall modify

the Debtors' prepetition practices as to Fannie Mae or Freddie Mac.

8.     The Debtors' banks are authorized, in the course of providing cash

management services to the Debtors, to continue to deduct from the appropriate accounts of the

Debtors, the bank's customary fees and expenses associated with the nature of the deposit, cash

management and custodial services rendered to the Debtors.  The Debtors are further authorized

to pay customary prepetition banking and custody fees owed to any of their banks.  To the extent

not otherwise paid, any customary postpetition banking and custody fees will have

administrative priority.

9.     The Debtors' banks are authorized to process, reverse and debit deposits

that are returned by payor banks in the ordinary course of business, honor and pay all prepetition

checks and transfers related to the P&I Funds, the T&I Funds or otherwise made in the ordinary

course of business of loans serviced by the Debtors.  The Debtors' banks are authorized to rely

on the Debtors' designation of accounts as P&I Custodial Accounts or T&I Custodial Accounts,

without any further duty of inquiry.

10.    The Debtors shall be authorized to perform each of their Servicing

Functions in accordance with the terms and conditions of the Servicing Agreements until the

Court enters an order that otherwise addresses such agreements.  Without limiting the generality

of the foregoing, the Debtors are authorized, but not directed, to make all required Advances and

to perform indemnification obligations, as provided under the Servicing Agreements, without

further application to, or order of, this Court.  In addition, parties to the servicing transactions are

authorized, free and clear of any constraints imposed by the Bankruptcy Code, including, without

limitation, Bankruptcy Code section 362, to continue any customary prepetition practices of

billing, reporting or otherwise making demands on each other as to amounts due and to the

extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to

and from such parties to the extent provided for in the Servicing Agreements, provided, however,

that with respect to any Mortgage Loans Receivables and REO Property (each term as defined in

the DIP Credit Agreement) that are collateral under the DIP Credit Agreement and any proceeds

thereof, there shall be no "netting" without Court authorization.

11.      No rights of any entity in connection with a contract or transaction of the

kind listed in Bankruptcy Code sections 555, 556, 559, 560 and 561(a), whatever they might or

might not be, are affected by the entry of this Order.

12.      Nothing in this Order shall limit, expand or otherwise affect any rights and

obligations of the Debtors and other parties under any of the Debtors' repurchase agreements,

including the obligations, if any, under any repurchase agreements to segregate funds and

transfer servicing rights.

13.      All banks at which the Debtors maintain bank accounts (the "Banks"),

including, without limitation, those accounts listed on **Exhibit B** to the Motion (collectively with

any and all other bank accounts maintained by the Debtors, the "Bank Accounts"), are authorized

and directed to (a) continue to administer, service, and maintain the Bank Accounts as such

accounts were administered, serviced, and maintained before the Petition Date, without

interruption and in the usual and ordinary course and (b) to receive, process, honor and pay any

and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or

other items presented, issued, or drawn on the Bank Accounts (collectively, the "Debits") on

account of a claim arising on or after the Petition Date so long as the Debtors have good funds

standing to their credit in the relevant Bank Accounts in accordance with the terms and

conditions governing the Cash Management System.

14.     The Banks are restrained and prohibited from honoring any Debit

presented, issued, or drawn on any Bank Account, other than the Custodial Accounts, on account

of a claim arising before the Petition Date (a "Prepetition Debit") unless the payment of such

claim (a) has been authorized by an order of this Court, (b) has been directed by the Debtors and

not otherwise prohibited by a "stop payment" request received by the relevant Bank from the

Debtors, and (c) is supported by sufficient funds in the relevant Bank Account.

15.     Subject to the provisions of this Order, the Banks are authorized and

directed to rely on the Debtors' representations, instructions and presentations (without any duty

of further inquiry) as to which Debits are authorized to be honored or dishonored, whether or not

such Debits are dated prior to, on, or subsequent to the Petition Date.  To the extent that the

Debtors direct that any debit be dishonored, the Debtors may issue replacement Debits.

16.     Each Bank that maintains one or more Bank Accounts, other than the

Custodial Accounts, shall implement customary handling procedures to effectuate the terms of

this Order.  No Bank that implements such handling procedures shall be liable to the Debtors or

their estates, or otherwise held in violation of this Order, for honoring a Prepetition Debit or

other Debit (a) at the direction or instruction of the Debtors to honor such Prepetition Debit or

other Debit, (b) in the good faith belief, which may be based upon the direction or instruction of

the Debtors, that the Court has authorized that such Prepetition Debit or other Debit be honored,

or (c) other than as a result of such Bank's gross negligence or willful act despite implementation of such handling procedures.

17.    Each Bank is, subject to and in accordance with the terms and conditions of the Cash Management System, authorized to "charge back" to or deduct from the Debtors' accounts any amounts incurred by the Bank resulting from returned checks or other returned items, and the Debtors are authorized to pay to the Bank any fees and expenses in connection with any such item, in each case, regardless of whether such item was deposited prepetition or postpetition.

18.    Any payment from a Bank Account at the Debtors' request made by a Bank prior to the Petition Date (including, but not limited to, an ACH (EFT) that such Bank is or becomes obligated to settle), or any instrument issued by any Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, regardless of whether actually debited from such Bank Account prepetition.

19.    Subject to the limitations set forth in paragraph 29 below, the Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or opening any additional Bank Accounts (the "New Accounts"), wherever the Debtors deem that such accounts are needed or appropriate, and whether or not the banks in which such accounts are opened are designated depositories in the Southern District of New York; provided that (a) any New Account shall be (i) with a bank that is organized under the laws of the United States of America or any state therein and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (ii) designated a "debtor in possession" or "DIP" account by the relevant bank (other than with respect to Custodial Accounts), and (b) the Debtors shall provide

7

the U.S. Trustee and the Committee with notice of any New Accounts.  The Banks are

authorized and directed to honor the Debtors' requests to open or close (as the case may be) such

Bank Accounts or additional bank accounts.  The Debtors shall provide notice to the U.S.

Trustee, the Committee, Barclays and AFI of the opening of any New Accounts or the closing of

any Bank Accounts.

20.    Unless otherwise provided herein, the relief, rights, and responsibilities

provided for in this Order shall be deemed to apply to any and all Bank Accounts, whether or not

such Bank Accounts are listed on **Exhibit B** to the Motion and including, without limitation, any

New Accounts.

21.    Nothing in this Order shall authorize any set-off by any entity that does

not comply with section 553 of the Bankruptcy Code; provided, however, that the foregoing shall

not limit the right of any Bank or other entity to debit any Bank Account or charge back items as

specifically permitted pursuant to this Order.

### DIP Cash Management

22.    The DIP Collection Account, DIP Borrower Account and the DIP

Concentration Account (each defined herein), which each hold proceeds of the collateral

securing the DIP Facilities shall be kept separate and apart from the Debtors' other accounts.

GMAC Mortgage and RFC shall remit all collections with respect to Mortgage Loans,

Receivables and REO Property (each term as defined in the DIP Credit Agreement; collectively,

the "First Lien Collateral") into deposit accounts owned by GMACM Borrower LLC (the

"GMACM Borrower") (the "GMACM Borrower Account") and RFC Borrower LLC (the "RFC

Borrower" and together with the GMACM Borrower, the "Borrowers") (the "RFC Borrower

Account" and together with the GMACM Borrower Account, the "DIP Borrower Accounts"),

8

respectively, within two business days after collection.  Notwithstanding the foregoing,

GMACM and RFC shall deposit all collections with respect to the Serviced Loans included in

the MBS Trust to the MBS Trust Collection Account within two business days after collection,

and shall then cause such collections to be remitted directly from the MBS Trust Collection

Account to the applicable DIP Borrower Account no later than two business days after such

collections are deposited into the MBS Trust Collection Account (each term as defined in the

DIP Credit Agreement).  With respect to collections (the "DIP Collections") on First Lien

Collateral, (a) that GMACM, as primary servicer, collects, the funds shall move from lockbox

accounts (Map 2, #1),[2] to a collection/clearing account, to custodial accounts (Map 2, #2), to off-

balance sheet custodial accounts (Map 2, #3), to the GMACM Borrower Account (Map 2, #4)

and (b) that RFC, as master servicer, collects from primary servicers, the funds shall flow

directly from clearing accounts (Map 3, #1) to the RFC Borrower Account (Map 3, #2).

      23.     The lockbox accounts, collection/clearing accounts, and/or custodial

accounts that the DIP Collections pass through before they are remitted the DIP Borrower

Accounts are not, and shall not be, subject to the lien of any third party.  Except as provided in

paragraph 21, the Debtors shall not permit the DIP Collections to ever flow through any of

ResCap's corporate accounts or any other account of the Debtors prior to remitting the DIP

Collections to the DIP Borrower Accounts.  Any funds passing through these unencumbered

lockbox accounts, collection/clearing accounts, and/or custodial accounts that constitute

Collateral (as defined in the DIP Credit Agreement) or proceeds of Collateral shall at all times be

subject to the liens securing the DIP Facilities and shall be held in trust for the benefit of the DIP

lenders.

---

[2] Map references pertain to those included in the Motion.

24.    Funds on deposit in the DIP Borrower Accounts may be swept from time to time to the DIP Concentration Account in accordance with the DIP Credit Agreement. Each time funds in the DIP Borrower Accounts are swept to the DIP Concentration Account, ResCap shall become obligated (a) to the GMACM Borrower in the amount swept into the DIP Concentration Account from the GMACM Borrower Account and (b) to the RFC Borrower in the amount swept into the DIP Concentration Account from the RFC Borrower Account. Such intercompany indebtedness shall be payable upon demand by the applicable Borrower or, upon the occurrence of an Event of Default under the DIP Credit Agreement (such term as defined therein), by the Collateral Agent. In addition, collections on First Lien Collateral pledged under the DIP Facilities shall be remitted to the DIP Concentration Account from the Debtors' other operating accounts.

25.    The DIP Concentration Account shall be a ResCap segregated account into which only funds swept from the DIP Borrower Accounts will be deposited and no other funds of the Credit Parties (as defined in the DIP Credit Agreement) shall be commingled with such funds. The DIP Concentration Account shall not be subject to any Adverse Claim (as defined in the DIP Credit Agreement), except as specifically set forth in the DIP Credit Agreement.

26.    As long as the conditions to withdrawal of funds from the DIP Concentration Account and the DIP Borrower Accounts, as set forth in the DIP Credit Agreement, are satisfied, and other than during a Dominion Period, ResCap and the Borrowers shall be permitted to withdraw funds from the DIP Concentration Account and the DIP Borrower Accounts, respectively, to fund certain additional servicer advances, certain loan repurchases, a

share of the operating expenses and other expenditures specifically set forth in the DIP Credit

Agreement, in each case, in accordance with the Approved DIP Budget.

27.     During an Activation Period (as defined in the DIP Credit Agreement) or a

Dominion Period, all funds in the DIP Borrower Accounts and the DIP Concentration Account

shall be swept daily into a deposit account established by the RFC Borrower (the "DIP

Collection Account").  Upon the occurrence of an Event of Default, the Administrative Agent

may, or, at the request of the Requisite Lenders (as defined in the DIP Credit Agreement) shall,

give notice to the Borrower Account Bank (as defined in the DIP Credit Agreement) and the

Concentration Account Bank (as defined in the DIP Credit Agreement), commencing a

Dominion Period, and shall further direct the Borrower Account Bank and the Concentration

Account Bank to forward and sweep daily all amounts in the DIP Borrower Accounts and the

DIP Concentration Account to the DIP Collection Account.  During a Dominion Period, after

written notice from the Collateral Agent, all funds in the DIP Collection Account shall be applied

to outstanding DIP obligations in accordance with the DIP Credit Agreement.

28.     The DIP Borrower Accounts, the DIP Concentration Account and the

Collection Account shall each be subject to a Deposit Account Control Agreement (as defined in

the DIP Credit Agreement) in favor of the Collateral Agent for the benefit of the Secured Parties

under the DIP Facilities.

29.     The Borrowers shall not establish any new bank accounts, deposit

accounts, checking accounts, money market funds, certificates of deposit or other similar

accounts or financial instruments accounts, other than the DIP Borrower Accounts and the DIP

Collection Account, without the prior written consent of the Administrative Agent, and any new

accounts shall be subject to a control agreement satisfactory to the Collateral Agent.

30.     All financial institutions in which (a) the DIP Borrower Accounts, (b) the DIP Concentration Account, (c) the DIP Collection Account, or (d) any other deposit accounts, lockboxes, blocked accounts or other accounts of any of the Debtors holding the proceeds of any of the collateral securing the DIP Facilities are located are authorized and directed to comply with any request of the Collateral Agent to turn over to the Collateral Agent all funds therein. Moreover, the depositary banks are authorized to rely upon the directions of the Debtors and the Collateral Agent in accordance with this Order and the relevant Deposit Account Control Agreements (as defined in the DIP Credit Agreement).  Under the Deposit Account Control Agreements (as defined in the DIP Credit Agreement), such financial institutions shall waive all rights to setoff or deduction of any kind, other than certain limited rights as agreed in section 4 of the Deposit Account Control Agreements.

### Bank Accounts, Checks, and Business Forms

31.     The requirements of the U.S. Trustee Guidelines that the Debtors close all existing bank accounts and open new debtor in possession accounts are hereby waived.  Further, the requirements of the U.S. Trustee Guidelines that the Debtors establish specific bank accounts for tax payments are hereby waived.

32.     The Bank Accounts (other than the Custodial Accounts) are deemed debtor in possession accounts subject to Section 345 of the Bankruptcy Code.  The Debtors are authorized, but not directed, to use the Bank Accounts in the same manner and with the same account numbers, styles and document forms as those employed before the Petition Date (or, the case of any New Account now in existence, as are currently employed), including, without limitation: (a) to deposit funds in, and, to the extent the Debtors have good fund standing to their credit in such accounts, withdraw funds from, the Bank Accounts by all usual means, including

12

checks, wire transfers, and other Debits, (b) to pay postpetition ordinary course bank fees in connection with the Bank Accounts, (c) to perform their obligations under the documents and agreements governing the Bank Accounts, (d) to treat the Bank Accounts (other than the Custodial Accounts) for all purposes as accounts of the Debtors in their capacities as debtors in possession.

33.     The Debtors are authorized to continue using all checks, correspondence, and business forms (including, but not limited to, letterhead, purchase orders and invoices) substantially in the forms existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; provided, however, that the Debtors shall modify the check printing system so that checks will include a legend referring to the Debtors as "Debtor-in-Possession" or "DIP".

## Investment and Deposit Requirements of 11 U.S.C. § 345

34.     The Debtors are authorized to invest and deposit funds in accordance with their existing investment practices, and, to the extent that such practices are not consistent with the requirements of 11 U.S.C. § 345(b), such requirements are waived, for good cause shown. Compliance with Bankruptcy Code section 345(b) is not required with respect to the Custodial Accounts.

## Intercompany Transactions and Intercompany Claims

35.     The Debtors are authorized to continue to maintain their business relationships and to undertake transactions between each other (the "Intercompany Transactions") in the ordinary course and consistent with past practice.  Pursuant to Bankruptcy Code sections 503(b)(1) and 364(b), all claims against any Debtor by another Debtor and arising on or after the Petition Date in connection with the Intercompany Transactions shall be accorded

administrative expense status and priority of the kind specified in sections 503(b) and 507(b) of

the Bankruptcy Code.

### Other Matters

36.     Bankruptcy Rule 6003(b) has been satisfied.

37.     The requirements of Bankruptcy Rule 6004(a) are waived.

38.     The Debtors are hereby authorized to execute any additional or

supplemental documents incident to the relief granted pursuant to this Order.

39.     The Debtors, their officers, employees and agents, are authorized to take

or refrain from taking such acts as are necessary and appropriate to implement and effectuate the

relief granted herein.

40.     Upon request of a lender, within 20 days after the end of a calendar month,

the Debtors shall provide the Committee and their pre- and post-petition lenders with a report, in

a form reasonably satisfactory to the post-petition lenders, of the allocation among the various

collateral pools of the estates' total expenses that were allocated among the various collateral

pools during the prior calendar month, and such allocation of expenses shall be pro rata based on

the Debtors' borrowing base projections (which shall be updated on a monthly basis).

41.     Notwithstanding anything to the contrary in this Order, any action to be

taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral

order entered in these chapter 11 cases as well as any restrictions in the AFI DIP, DIP Credit

Agreement or the order approving such agreement.  To the extent there is any inconsistency

between the terms of this order and the terms of any order relating to postpetition financing or

cash collateral, the terms of the orders relating to postpetition financing or cash collateral shall

govern.  Nothing granted in this Order shall be deemed to constitute an assumption or rejection

by the Debtors of any contracts or agreements, and the Debtors retain their rights to assume,

reject or modify any contracts or agreements to the extent they are entitled to do so under

existing contracts or agreements or applicable law.

42.    As promptly as possible, but in no event later than five (5) business days

after entry of this Order, the Debtors shall serve a copy of this Order on the Banks at their

contact information listed on **Exhibit B** to the Motion, in addition to the parties who received

notice of the Motion.

43.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this

Order shall be effective and enforceable immediately upon entry hereof.

44.    Notwithstanding anything herein to the contrary, this Order shall not

modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

45.     This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.

Dated:          New York, New York
                June ___, 2012

                                            _____
                                            THE HONORABLE MARTIN GLENN
                                            UNITED STATES BANKRUPTCY JUDGE

ny-1011822

**<u>EXHIBIT 2</u>**

ny-1044957

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ )
                                                             )
In re:                                                       )        Case No. 12-12020 (MG)
                                                             )
RESIDENTIAL CAPITAL, LLC, et al.,                            )        Chapter 11
                                                             )
                                          Debtors.           )        Jointly Administered
                                                             )
------------------------------------------------------------ )

**~~"AMENDED" INTERIM~~FINAL ORDER UNDER BANKRUPTCY CODE SECTIONS
105(a), 345, 363, 364, AND 503(b)(1) AND BANKRUPTCY RULES 6003 AND 6004
AUTHORIZING (I) CONTINUED USE OF CASH MANAGEMENT SERVICES AND
PRACTICES, (II) CONTINUED USE OF EXISTING BANK ACCOUNTS, CHECKS,
AND BUSINESS FORMS, (III) IMPLEMENTATION OF MODIFIED CASH
MANAGEMENT PROCEDURES AND USE OF CERTAIN BANK ACCOUNTS
ESTABLISHED IN CONNECTION WITH USE OF PRE-AND POST-PETITION
LENDERS' FINANCING FACILITIES AND CASH COLLATERAL, (IV) ~~INTERIM~~
WAIVER OF THE INVESTMENT AND DEPOSIT REQUIREMENTS OF
BANKRUPTCY CODE SECTION 345, (V) DEBTORS TO HONOR SPECIFIED
OUTSTANDING PREPETITION PAYMENT OBLIGATIONS, AND (VI)
CONTINUATION OF INTERCOMPANY TRANSACTIONS, ~~INCLUDING
INTERCOMPANY TRANSACTIONS WITH FUTURE DEBTORS,~~ AND GRANTING
ADMINISTRATIVE EXPENSE STATUS TO INTERCOMPANY CLAIMS ~~, AND
SCHEDULING A FINAL HEARING ON THE RELIEF REQUESTED~~**

Upon the motion (the "Motion")[1] of the Debtors for entry of interim and final orders,

under Bankruptcy Code sections 105, 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003

and 6004, authorizing (i) the continued use of the Debtors' cash management services and

practices, ~~as modified,~~ (ii) the continued use of the Debtors' existing bank accounts, checks, and

business forms, (iii) implementation of modified cash management procedures and use of certain

bank accounts established in connection with use of pre-and post-petition lenders' financing

facilities and cash collateral, (iv) ~~interim~~ waiver of the investment and deposit requirements of

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
     Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
     granted herein may refer to www.kccllc.net/rescap for additional information.

Bankruptcy Code section 345, (v) Debtors to honor specified outstanding prepetition obligations, (vi) continuation of ordinary course intercompany transactions, and including intercompany transactions with any Future between Debtors, and according administrative expense status to postpetition intercompany claims arising from such transactions, and (vii) scheduling a final hearing on the relief requested; and upon the Whitlinger Affidavit; and this Court having entered an "amended" interim Order with respect to the Motion on May 15, 2012, [Docket No. 82] (the "Interim Order"); and upon the record of the Final Hearing; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.       The Motion is GRANTED on an interima final basis, as set forth herein.

**<u>Cash Management Practices</u>**

2.       The Debtors are authorized to continue using the Cash Management System, to manage their cash, to pay intercompany payables, including certain prepetition payables referenced in the Motion, to extend intercompany credit, and to otherwise transfer funds by and among the Debtors consistent with past practice, subject to the terms of the DIP Credit Agreement.

2

3.    The Debtors are authorized to implement and utilize the Funding Facilities

Cash Flow Structure during these Chapter 11 cases, as described in the Motion and as

contemplated by the terms of the DIP Credit Agreement and the other cash collateral agreements,

during these Chapter 11 cases and which, notwithstanding anything to the contrary in the Motion

or the Interim Order, includes an account separate from the LOC Concentration Account that

holds cash collateral securing the AFI DIP (the "AFI DIP Account").  Subject to the Court's

approval of the respective postpetition financing agreements, and in connection with the Funding

Facilities Cash Flow Structure, the Debtors are authorized to use the DIP Concentration Account,

the Revolver Concentration Account, the LOC Concentration Account, the Citibank MSR

Concentration Account, the AFI DIP Account and the FNMA EAF Collection Account, each

more particularly described in the Motion.

3

4.    The Debtors are authorized to continue to perform their obligations under the agreements governing such system, and to transfer funds between and among the Debtors and any Future Debtors in accordance with the terms of this Order, and between and among their respective Bank Accounts and other accounts maintained with or by their duly appointed agents and custodians, as and when needed and in the amounts necessary or appropriate to maintain their operations and facilitate the orderly operation of their estates or businesses; provided, however, that such transfers of funds by and among the Debtors and their affiliates are made in accordance with the terms and conditions, and do not impair any parties' rights under any Servicing Agreements, deposit agreements or other similar document, the DIP Credit Agreement or any order governing the Debtors' use of cash collateral or debtor in possession financing facilities.

5.    The Debtors shall maintain records of all transfers within the Cash Management System so that all transfers and transactions shall be adequately and promptly documented in, and ascertainable from, the Debtors' books and records, to the same extent as maintained before the commencement of these Chapter 11 cases.

6.    The Debtors are authorized to continue operating and maintaining the Custodial Accounts in connection with, and in accordance with, the Servicing Agreements and related documents for sales of whole loans to third parties.

7.    The Debtors are authorized to continue to deduct amounts from the Custodial Accounts for the repayment of the Advances; provided, however, nothing shall modify the Debtors' prepetition practices as to Fannie Mae or Freddie Mac.

8.    The Debtors' banks are authorized, in the course of providing cash management services to the Debtors, to continue to deduct from the appropriate accounts of the

4

Debtors, the bank's customary fees and expenses associated with the nature of the deposit, cash

management and custodial services rendered to the Debtors.  The Debtors are further authorized

to pay customary prepetition banking and custody fees owed to any of their banks.  ~~Any~~To the

extent not otherwise paid, any customary postpetition banking and custody fees will have

administrative priority.

9.      The Debtors' banks are authorized to process, reverse and debit deposits

that are returned by payor banks in the ordinary course of business, honor and pay all prepetition

checks and transfers related to the P&I Funds, the T&I Funds or otherwise made in the ordinary

course of business of loans serviced by the Debtors.  The Debtors' banks are authorized to rely

on the Debtors' designation of accounts as P&I Custodial Accounts or T&I Custodial Accounts,

without any further duty of inquiry.

10.     The Debtors shall be authorized to perform each of their Servicing

Functions in accordance with the terms and conditions of the Servicing Agreements until the

Court enters an order that otherwise addresses such agreements.  Without limiting the generality

of the foregoing, the Debtors are authorized, but not directed, to make all required Advances and

to perform indemnification obligations, as provided under the Servicing Agreements, without

further application to, or order of, this Court.  In addition, parties to the servicing transactions are

authorized, free and clear of any constraints imposed by the Bankruptcy Code, including, without

limitation, Bankruptcy Code section 362, to continue any customary prepetition practices of

billing, reporting or otherwise making demands on each other as to amounts due and to the

extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to

and from such parties to the extent provided for in the Servicing Agreements, provided, however,

that with respect to any Mortgage Loans Receivables and REO Property (each term as defined in

the DIP Credit Agreement) that are collateral under the DIP Credit Agreement and any proceeds thereof, there shall be no "netting" without Court authorization.

11.    No rights of any entity in connection with a contract or transaction of the kind listed in Bankruptcy Code sections 555, 556, 559, 560 and 561(a), whatever they might or might not be, are affected by the entry of this Order.

12.    Nothing in this Order shall limit, expand or otherwise affect any rights and obligations of the Debtors and other parties under any of the Debtors' repurchase agreements, including the obligations, if any, under any repurchase agreements to segregate funds and transfer servicing rights.

13.    All banks at which the Debtors maintain bank accounts (the "Banks"), including, without limitation, those accounts listed on **Exhibit B** to the Motion (collectively with any and all other bank accounts maintained by the Debtors, the "Bank Accounts"), are authorized and directed to (a) continue to administer, service, and maintain the Bank Accounts as such accounts were administered, serviced, and maintained before the Petition Date, without interruption and in the usual and ordinary course and (b) to receive, process, honor and pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Debits") on account of a claim arising on or after the Petition Date so long as the Debtors have good funds standing to their credit in the relevant Bank Accounts in accordance with the terms and conditions governing the Cash Management System.

14.    The Banks are restrained and prohibited from honoring any Debit presented, issued, or drawn on any Bank Account, other than the Custodial Accounts, on account of a claim arising before the Petition Date (a "Prepetition Debit") unless the payment of such

6

claim (a) has been authorized by an order of this Court, (b) has been directed by the Debtors and not otherwise prohibited by a "stop payment" request received by the relevant Bank from the Debtors, and (c) is supported by sufficient funds in the relevant Bank Account.

15.    Subject to the provisions of this Order, the Banks are authorized and directed to rely on the Debtors' representations, instructions and presentations (without any duty of further inquiry) as to which Debits are authorized to be honored or dishonored, whether or not such Debits are dated prior to, on, or subsequent to the Petition Date.  To the extent that the Debtors direct that any debit be dishonored, the Debtors may issue replacement Debits.

16.    Each Bank that maintains one or more Bank Accounts, other than the Custodial Accounts, shall implement customary handling procedures to effectuate the terms of this Order.  No Bank that implements such handling procedures shall be liable to the Debtors or their estates, or otherwise held in violation of this Order, for honoring a Prepetition Debit or other Debit (a) at the direction or instruction of the Debtors to honor such Prepetition Debit or other Debit, (b) in the good faith belief, which may be based upon the direction or instruction of the Debtors, that the Court has authorized that such Prepetition Debit or other Debit be honored, or (c) other than as a result of an innocent mistake made such Bank's gross negligence or willful act despite implementation of such handling procedures.

17.    Each Bank is, subject to and in accordance with the terms and conditions of the Cash Management System, authorized to "charge back" to or deduct from the Debtors' accounts any amounts incurred by the Bank resulting from returned checks or other returned items, and the Debtors are authorized to pay to the Bank any fees and expenses in connection with any such item, in each case, regardless of whether such item was deposited prepetition or postpetition.

18.     Any payment from a Bank Account at the Debtors' request made by a Bank prior to the Petition Date (including, but not limited to, an ACH (EFT) that such Bank is or becomes obligated to settle), or any instrument issued by any Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, regardless of whether actually debited from such Bank Account prepetition.

19.     Subject to the limitations set forth in paragraph 2829 below, the Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or opening any additional Bank Accounts (the "New Accounts"), wherever the Debtors deem that such accounts are needed or appropriate, and whether or not the banks in which such accounts are opened are designated depositories in the Southern District of New York; provided that (a) any New Account shall be (i) with a bank that is organized under the laws of the United States of America or any state therein and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (ii) designated a "debtor in possession" or "DIP" account by the relevant bank (other than with respect to Custodial Accounts), and (b) the Debtors shall provide the U.S. Trustee and the Committee with notice of any New Accounts.  The Banks are authorized and directed to honor the Debtors' requests to open or close (as the case may be) such Bank Accounts or additional bank accounts.  The Debtors shall provide notice to the U.S. Trustee, the Committee, Barclays and AFI of the opening of any New Accounts or the closing of any Bank Accounts.

20.     Unless otherwise provided herein, the relief, rights, and responsibilities provided for in this Order shall be deemed to apply to any and all Bank Accounts, whether or not

such Bank Accounts are listed on **Exhibit B** to the Motion and including, without limitation, any

New Accounts.

21.    Nothing in this Order shall authorize any set-off by any entity that does

not comply with section 553 of the Bankruptcy Code; provided, however, that the foregoing shall

not limit the right of any Bank or other entity to debit any Bank Account or charge back items as

specifically permitted pursuant to this Order.

**DIP Cash Management**

22.    21.  The DIP Collection Account, DIP Borrower Account and the DIP

Concentration Account (each defined herein), which each hold proceeds of the collateral

securing the DIP Facilities shall be kept separate and apart from the Debtors' other accounts.

GMAC Mortgage and RFC shall remit all collections with respect to Mortgage Loans,

Receivables and REO Property (each term as defined in the DIP Credit Agreement; collectively,

the "First Lien Collateral") into deposit accounts owned by GMACM Borrower LLC (the

"GMACM Borrower") (the "GMACM Borrower Account") and RFC Borrower LLC (the "RFC

Borrower" and together with the GMACM Borrower, the "Borrowers") (the "RFC Borrower

Account" and together with the GMACM Borrower Account, the "DIP Borrower Accounts"),

respectively, within two business days after collection.  Notwithstanding the foregoing,

GMACM and RFC shall deposit all collections with respect to the Serviced Loans included in

the MBS Trust to the MBS Trust Collection Account within two business days after collection,

and shall then cause such collections to be remitted directly from the MBS Trust Collection

Account to the applicable DIP Borrower Account no later than two business days after such

collections are deposited into the MBS Trust Collection Account (each term as defined in the

DIP Credit Agreement).  With respect to collections (the "DIP Collections") on First Lien

Collateral, (a) that GMACM, as primary servicer, collects, the funds shall move from lockbox

accounts (Map 2, #1),[2] to a collection/clearing account, to custodial accounts (Map 2, #2), to off-

balance sheet custodial accounts (Map 2, #3), to the GMACM Borrower Account (Map 2, #4)

and (b) that RFC, as master servicer, collects from primary servicers, the funds shall flow

directly from clearing accounts (Map 3, #1) to the RFC Borrower Account (Map 3, #2).

23.    22.  The lockbox accounts, collection/clearing accounts, and/or custodial

accounts that the DIP Collections pass through before they are remitted the DIP Borrower

Accounts are not, and shall not be, subject to the lien of any third party.  Except as provided in

paragraph 21, the Debtors shall not permit the DIP Collections to ever flow through any of

ResCap's corporate accounts or any other account of the Debtors prior to remitting the DIP

Collections to the DIP Borrower Accounts.  Any funds passing through these unencumbered

lockbox accounts, collection/clearing accounts, and/or custodial accounts that constitute

Collateral (as defined in the DIP Credit Agreement) or proceeds of Collateral shall at all times be

subject to the liens securing the DIP Facilities and shall be held in trust for the benefit of the DIP

lenders.

24.    23.  Funds on deposit in the DIP Borrower Accounts may be swept from

time to time to the DIP Concentration Account in accordance with the DIP Credit Agreement.

Each time funds in the DIP Borrower Accounts are swept to the DIP Concentration Account,

ResCap shall become obligated (a) to the GMACM Borrower in the amount swept into the DIP

Concentration Account from the GMACM Borrower Account and (b) to the RFC Borrower in

the amount swept into the DIP Concentration Account from the RFC Borrower Account.  Such

---

[2] Map references pertain to those included in the Motion.

intercompany indebtedness shall be payable upon demand by the applicable Borrower or, upon the occurrence of an Event of Default under the DIP Credit Agreement (such term as defined therein), by the Collateral Agent.  In addition, collections on First Lien Collateral pledged under the DIP Facilities shall be remitted to the DIP Concentration Account from the Debtors' other operating accounts.

25.    24.  The DIP Concentration Account shall be a ResCap segregated account into which only funds swept from the DIP Borrower Accounts will be deposited and no other funds of the Credit Parties (as defined in the DIP Credit Agreement) shall be commingled with such funds.  The DIP Concentration Account shall not be subject to any Adverse Claim (as defined in the DIP Credit Agreement), except as specifically set forth in the DIP Credit Agreement.

26.    25.  As long as the conditions to withdrawal of funds from the DIP Concentration Account and the DIP Borrower Accounts, as set forth in the DIP Credit Agreement, are satisfied, and other than during a Dominion Period, ResCap and the Borrowers shall be permitted to withdraw funds from the DIP Concentration Account and the DIP Borrower Accounts, respectively, to fund certain additional servicer advances, certain loan repurchases, a share of the operating expenses and other expenditures specifically set forth in the DIP Credit Agreement, in each case, in accordance with the Approved DIP Budget.

27.    26.  During an Activation Period (as defined in the DIP Credit Agreement) or a Dominion Period, all funds in the DIP Borrower Accounts and the DIP Concentration Account shall be swept daily into a deposit account established by the RFC Borrower (the "DIP Collection Account").  Upon the occurrence of an Event of Default, the Administrative Agent may, or, at the request of the Requisite Lenders (as defined in the DIP

11

Credit Agreement) shall, give notice to the Borrower Account Bank (as defined in the DIP Credit

Agreement) and the Concentration Account Bank (as defined in the DIP Credit Agreement),

commencing a Dominion Period, and shall further direct the Borrower Account Bank and the

Concentration Account Bank to forward and sweep daily all amounts in the DIP Borrower

Accounts and the DIP Concentration Account to the DIP Collection Account.  During a

Dominion Period, after written notice from the Collateral Agent, all funds in the DIP Collection

Account shall be applied to outstanding DIP obligations in accordance with the DIP Credit

Agreement.

28.    27.  The DIP Borrower Accounts, the DIP Concentration Account and the

Collection Account shall each be subject to a Deposit Account Control Agreement (as defined in

the DIP Credit Agreement) in favor of the Collateral Agent for the benefit of the Secured Parties

under the DIP Facilities.

29.    28.  The Borrowers shall not establish any new bank accounts, deposit

accounts, checking accounts, money market funds, certificates of deposit or other similar

accounts or financial instruments accounts, other than the DIP Borrower Accounts and the DIP

Collection Account, without the prior written consent of the Administrative Agent, and any new

accounts shall be subject to a control agreement satisfactory to the Collateral Agent.

30.    29.  All financial institutions in which (a) the DIP Borrower Accounts, (b)

the DIP Concentration Account, (c) the DIP Collection Account, or (d) any other deposit

accounts, lockboxes, blocked accounts or other accounts of any of the Debtors holding the

proceeds of any of the collateral securing the DIP Facilities are located are authorized and

directed to comply with any request of the Collateral Agent to turn over to the Collateral Agent

all funds therein.  Moreover, the depositary banks are authorized to rely upon the directions of

ny-1011822

the Debtors and the Collateral Agent in accordance with this Order and the relevant Deposit

Account Control Agreements (as defined in the DIP Credit Agreement).  Under the Deposit

Account Control Agreements (as defined in the DIP Credit Agreement), such financial

institutions shall waive all rights to setoff or deduction of any kind, other than certain limited

rights as agreed in section 4 of the Deposit Account Control Agreements.

### Bank Accounts, Checks, and Business Forms

31.    ~~30.~~ The requirements of the U.S. Trustee Guidelines that the Debtors

close all existing bank accounts and open new debtor in possession accounts are hereby waived.

Further, the requirements of the U.S. Trustee Guidelines that the Debtors establish specific bank

accounts for tax payments are hereby waived.

32.    ~~31.~~ The Bank Accounts (other than the Custodial Accounts) are deemed

debtor in possession accounts subject to Section 345 of the Bankruptcy Code.  The Debtors are

authorized, but not directed, to use the Bank Accounts in the same manner and with the same

account numbers, styles and document forms as those employed before the Petition Date (or, the

case of any New Account now in existence, as are currently employed), including, without

limitation: (a) to deposit funds in, and, to the extent the Debtors have good fund standing to their

credit in such accounts, withdraw funds from, the Bank Accounts by all usual means, including

checks, wire transfers, and other Debits, (b) to pay postpetition ordinary course bank fees in

connection with the Bank Accounts, (c) to perform their obligations under the documents and

agreements governing the Bank Accounts, (d) to treat the Bank Accounts (other than the

Custodial Accounts) for all purposes as accounts of the Debtors in their capacities as debtors in

possession.

13

33.    32.    The Debtors are authorized to continue using all checks,

correspondence, and business forms (including, but not limited to, letterhead, purchase orders

and invoices) substantially in the forms existing immediately before the Petition Date, without

reference to the Debtors' status as debtors in possession; provided, however, that the Debtors

shall modify the check printing system so that checks will include a legend referring to the

Debtors as "Debtor-in-Possession" or "DIP".

**Investment and Deposit Requirements of 11 U.S.C. § 345**

34.    33.    The Debtors are authorized to invest and deposit funds in accordance with their existing investment practices, and, to the extent that such practices are not consistent with the requirements of 11 U.S.C. § 345(b), such requirements are waived, for good cause shown, on an interim basis.  To the extent the Debtors are not in compliance.  Compliance with Bankruptcy Code section 345(b) in a period of thirty (30) days from the date of entry of this Order, the Debtors shall seek additional relief from this Court or make such other arrangements as required by the U.S. Trustee; provided, however, if the Debtors are in compliance, then no further or other relief from the Court is necessary is not required with respect to the Custodial Accounts.

**Intercompany Transactions and Intercompany Claims**

35.    34.    The Debtors are authorized to continue to maintain their business relationships and to undertake transactions between each other and any Future Debtors (the "Intercompany Transactions") in the ordinary course and consistent with past practice.  Pursuant to Bankruptcy Code sections 503(b)(1) and 364(b), all claims against any Debtor by another Debtor or by a Future Debtor and arising on or after the Petition Date in connection with the Intercompany Transactions shall be accorded administrative expense status and priority of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

**Other Matters**

36.    35.    Bankruptcy Rule 6003(b) has been satisfied.

37.    36.    The requirements of Bankruptcy Rule 6004(a) are waived.

38.    37.    The Debtors are hereby authorized to execute any additional or supplemental documents incident to the relief granted pursuant to this Order.

15

39.    38.    The Debtors, their officers, employees and agents, are authorized to

take or refrain from taking such acts as are necessary and appropriate to implement and

effectuate the relief granted herein.

40.    39.    Upon request of a lender, within 20 days after the end of a calendar

month, the Debtors shall provide the Committee and their pre- and post-petition lenders with a

report, in a form reasonably satisfactory to the post-petition lenders, of the allocation among the

various collateral pools of the estates' total expenses that were allocated among the various

collateral pools during the prior calendar month, and such allocation of expenses shall be pro rata

based on the Debtors' borrowing base projections (which shall be updated on a monthly basis).

41.    40.    Notwithstanding anything to the contrary in this Order, any action to

be taken pursuant to the relief authorized in this Order is subject to the terms of any cash

collateral order entered in these chapter 11 cases as well as any restrictions in the AFI DIP, DIP

Credit Agreement or the order approving such agreement.  To the extent there is any

inconsistency between the terms of this order and the terms of any order relating to postpetition

financing or cash collateral, the terms of the orders relating to postpetition financing or cash

collateral shall govern.  Nothing granted in this Order shall be deemed to constitute an

assumption or rejection by the Debtors of any contracts or agreements, and the Debtors retain

their rights to assume, reject or modify any contracts or agreements to the extent they are entitled

to do so under existing contracts or agreements or applicable law.

42.    41.    As promptly as possible, but in no event later than five (5) business

days after entry of this Order, the Debtors shall serve a copy of this Order on the Banks at their

contact information listed on **Exhibit B** to the Motion, in addition to the parties who received

notice of the Motion.

ny-1011822

43.    42.   Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

44.    43.   Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

44.   Upon notice to the parties and no objection having been interposed, an affiliated debtor shall be deemed to be a "Future Debtor" upon the Court's entry of an order authorizing the joint administration of such Future Debtor's Chapter 11 case with the Chapter 11 cases of the Debtors.  Upon notice to the parties and no objection having been interposed, the relief granted by this Order shall apply to the Future Debtor in these jointly-administered cases.

45.   The final hearing to consider entry of an order granting the relief requested in the Motion on a permanent basis shall be held on June 12, 2012 at 10:00 a.m., prevailing Eastern Time; and any objections to entry of such order shall be in writing, filed with the Court on or before June 5, 2012 at 4:00 p.m. EST in accordance with General Order M-399, and served upon (i) the attorneys for the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 (Attn: Larren M. Nashelsky, Esq.) and (ii) the Notice Parties, in each case so as to be received no later than 4:00 p.m., prevailing Eastern Time on May 18, 2012.

17

46. This Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis at or after the final hearing; *provided, however,* that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Order.

45. 47. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:        New York, New York
              June ___, 2012

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

ny-1011822

Document comparison by Workshare Professional on Monday, June 11, 2012
10:26:06 AM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://NEW YORK/1011822/18 |
| Description | NEW YORK-#1011822-v18-ResCap_-_Cash_Management_Order_(SDNY) |
| Document 2 ID | PowerDocs://NEW YORK/1011822/22 |
| Description | NEW YORK-#1011822-v22-ResCap_-_Cash_Management_Order_(SDNY) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 29 |
| Deletions | 46 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 77 |