**Hearing Date: July 10, 2012 at 10:00 a.m. (ET)**
**Objection Deadline: June 21, 2012 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Anthony Princi
Jamie A. Levitt

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------- | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------- | ) | |

**NOTICE OF HEARING ON DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**UNDER BANKRUPTCY CODE SECTION 365 AND BANKRUPTCY RULE 6006**
**AUTHORIZING THE DEBTORS TO ASSUME PLAN SUPPORT**
**AGREEMENTS WITH TALCOTT FRANKLIN CONSENTING CLAIMANTS**

PLEASE TAKE NOTICE that, on June 11, 2012, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the Debtors' Motion for Entry of Order Under Bankruptcy Code Section 365 and Bankruptcy Rule 6006 Authorizing the Debtors to Assume Plan Support Agreements with Talcott Franklin Consenting Claimants (the "Motion").

1

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held on the Motion
will be held before the Honorable Martin Glenn, United States Bankruptcy Judge, at the
United States Bankruptcy Court for the Southern District of New York, Courtroom 501,
One Bowling Green, New York, New York 10004 (the "Bankruptcy Court") on **July 10,
2012 at 10:00 a.m.** (**prevailing Eastern Time**), or as soon thereafter as counsel may be
heard.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the
Motion and the relief requested therein must be filed with the United States Bankruptcy
Court for the Southern District of New York, One Bowling Green, New York, NY 10004
and served so as to be received by the following parties no later than **4:00 p.m. Eastern
time on June 21, 2012**: (a) Residential Capital, LLC, 1177 Avenue of the Americas,
New York, NY 10036 (Attn: Tammy Hamzehpour); (b) proposed counsel for the
Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104
(Attn: Larren M. Nashelsky, Gary S. Lee, Joel C. Haims); (c) the Office of the United
States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor,
New York, NY 10004 (Attn:  Tracy Hope Davis, Linda A. Riffkin, and Brian S.
Masumoto); (d) the Office of the United States Attorney General, U.S. Department of
Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attn: US Attorney
General, Eric H. Holder, Jr.); (e)  Office of the New York State Attorney General, The
Capitol, Albany, NY 12224-0341 (Attn: Nancy Lord, Esq. and Neal Mann, Esq.);
(f) Office of the U.S. Attorney for the Southern District of New York, One St. Andrews
Plaza, New York, NY 10007 (Attn: Joseph N. Cordaro, Esq.) (g) counsel for Official
Committee of Unsecured Creditors, Kramer Levin Naftalis & Frankel LLP, 1117 Avenue

ny-1045076

of the Americas, New York, NY 10036 (Attn: Ken Eckstein and Douglas H. Mannal);

(h) Citibank N.A., 390 Greenwich Street, 6th Floor, New York, NY 10013 (Attn: Bobbie

Theivakurnaran); (i) Fannie Mae, 3900 Wisconsin Avenue NW, Mail Stop 8H-504,

Washington, D.C. 20016 (Attn: Vice President, Credit Management, John S. Forlines);

(j) counsel for Ally Financial Inc., Kirkland & Ellis, 601 Lexington Avenue, New York,

NY 10022 (Attn: Richard M. Cieri and Ray C. Schrock) (k) Deutsche Bank Trust

Company Americas, 25 DeForest Avenue, Summit, NJ 07901 (Attn: Kevin Vargas);

(l) The Bank of New York Mellon, Asset Backed Securities Group, 101 Barclays Street

4W, New York, NY 10286; (m) U.S. Bank National Association, 50 South 16th Street,

Suite 2000, Philadelphia, PA 19102 (Attn: George Rayzis); (n) U.S. Bank National

Association, 60 Livingston Avenue, EP-MN-WS1D, St. Paul, MN 55107 (Attn: Irina

Palchuk); (o) counsel to U.S. Bank National Association, Kelley Drye & Warren LLP,

101 Park Avenue, New York, NY 10178 (Attn: James S. Carr and Eric R. Wilson);

(p) Wells Fargo Bank, N.A., P.O. Box 98, Columbia, MD 21046 (Attn: Corporate Trust

Services, GMACM Home Equity Notes 2004 Variable Funding Trust); (q) counsel to the

administrative agent for the Debtors' proposed providers of debtor in possession

financing, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York,

New York 10036 (Attention: Kenneth S. Ziman and Jonathan H. Hofer); (r) Nationstar

Mortgage LLC, 350 Highland Drive, Lewisville, TX 75067 (Attn: General Counsel)

(s) counsel to Nationstar Mortgage LLC, Sidley Austin LLP, One South Dearborn,

Chicago, IL 60603 (Attn: Larry Nyhan and Jessica CK Boelter); (t) Internal Revenue

Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by overnight mail, to 2970

Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016); and (u) Securities

and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite

400, New York, NY 10281-1022 (Attn: George S. Canellos, Regional Director).

      **PLEASE TAKE FURTHER NOTICE** that the relief requested in the Motion

may be granted without a hearing if no objection is timely filed and served as set forth

above and in accordance with the order, dated February 15, 2012, implementing certain

notice and case management procedures in these cases [Docket No. 362] (the "<u>Case</u>

<u>Management Order</u>").

Dated: June 11, 2012
     New York, New York


                         /s/ Gary S. Lee
                         Larren M. Nashelsky
                         Gary S. Lee
                         Anthony Princi
                         Jamie A. Levitt
                         MORRISON & FOERSTER LLP
                         1290 Avenue of the Americas
                         New York, New York 10104
                         Telephone: (212) 468-8000
                         Facsimile: (212) 468-7900


                         *Proposed Counsel for the Debtors and*
                         *Debtors in Possession*

**Hearing Date: July 10, 2012 at 10:00 a.m. (ET)**
**Objection Deadline: June 21, 2012 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Anthony Princi
Jamie A. Levitt

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

|   |   |   |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---------------------------------------------------------------

**DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER BANKRUPTCY**
**CODE SECTION 365 AND BANKRUPTCY RULE 6006 AUTHORIZING**
**THE DEBTORS TO ASSUME PLAN SUPPORT AGREEMENTS**
**WITH TALCOTT FRANKLIN CONSENTING CLAIMANTS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 4

JURISDICTION AND VENUE ................................................................................................ 4

RMBS SETTLEMENT AND PLAN SUPPORT AGREEMENTS ............................................. 5

A.    The RMBS Settlement Agreements .................................................................... 5

B.    The Plan Support Agreements ........................................................................... 6

RELIEF REQUESTED ........................................................................................................... 11

BASIS FOR RELIEF ............................................................................................................. 11

A.    The Debtors Should be Authorized to Assume the Talcott Franklin Plan Support Agreement ........................................................................................................ 11

B.    The Talcott Franklin Plan Support Agreement Complies With The Provisions of Section 1125(b) of the Bankruptcy Code ......................................................... 14

NOTICE .............................................................................................................................. 16

NO PRIOR REQUEST .......................................................................................................... 16

EXHIBIT 1 - Proposed Order

EXHIBIT 2 - Hamzehpour Declaration

EXHIBIT 3 - Talcott Franklin Plan Support Agreement

EXHIBIT 4 - First Amendment to Plan Support Agreement

TABLE OF AUTHORITIES

## CASES

COR Route 5 Company, LLC v. Penn Traffic Co. (In re Penn Traffic Co.),
    524 F.3d 373 (2d Cir. 2008)............................................................................................11

In re Apex Silver Mines Limited,
    No. 09-10182 (JMP) (Bankr. S.D.N.Y. Jan. 22, 2009)......................................................14, 15

In re Chemtura Corp.,
    No. 09-11233 (REG) (Bankr. S.D.N.Y. Aug. 9, 2010) ........................................................13

In re Child World, Inc.,
    142 B.R. 87 (Bankr. S.D.N.Y. 1992)..................................................................................12

In re General Maritime Corp.,
    No. 11-15285 (MG) (Bankr. S.D.N.Y. Apr. 2, 2012)..........................................................13

In re Lehman Brothers Holdings Inc.,
    No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan 12, 2012)..........................................................13

In re MES Int'l, Inc.,
    No. 09-14109 (PJW) (Bankr. D. Del. Dec. 18, 2009)..........................................................14

In re MF Global Holdings Ltd.,
    466 B.R. 239 (Bankr. S.D.N.Y. 2012).............................................................................11, 12

In re Neb. Book Co.,
    No. 11-12005 (Bankr. D. Del. Sep. 7, 2011) ......................................................................14

In re Owens Corning,
    No. 00-03837 (Bankr. D. Del. June 23, 2006) ....................................................................15

In re Riodizio, Inc.,
    204 B.R. 417 (Bankr. S.D.N.Y. 1997)................................................................................12

In re TBS Shipping Servs. Inc.,
    No. 12-22224 (RDD) (Bankr. S.D.N.Y. Feb 28, 2012).......................................................14

NLRB v. Bildisco and Bildisco,
    465 U.S. 513 (1984)..........................................................................................................12

Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated
    Res., Inc.),
    147 B.R. 650 (S.D.N.Y. 1992)..........................................................................................12

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures),
    4 F.3d 1095 (2d Cir. 1993)................................................................................................11

Smith v. Van Gorkom,
    488 A.2d 858 (Del. 1985) ...................................................................................12

Transworld Airlines, Inc. v. Texaco, Inc. (In re Texaco, Inc.),
    81 B.R. 813 (Bankr. S.D.N.Y. 1988) ...................................................................15

Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.),
    194 B.R. 555 (Bankr. S.D.N.Y. 1996) ..................................................................12

**STATUTES**

11 U.S.C. § 105 .......................................................................................................13

11 U.S.C. § 502 .......................................................................................................13

11 U.S.C. § 1142 .....................................................................................................13

11 U.S.C. § 363 .........................................................................................................3

11 U.S.C. § 365 .....................................................................................................1, 11

11 U.S.C. § 1107 .......................................................................................................4

11 U.S.C. § 1108 .......................................................................................................4

11 U.S.C. § 1125 ............................................................................................14, 15, 16

11 U.S.C. § 1126 .....................................................................................................15

28 U.S.C. § 157 .........................................................................................................4

28 U.S.C. § 1334 .......................................................................................................4

28 U.S.C. § 1408 .......................................................................................................4

28 U.S.C. § 1409 .......................................................................................................4

Fed. R. Bankr. P. 1015 ...............................................................................................4

Fed. R. Bankr. P. 2002 .............................................................................................16

Fed. R. Bankr. P. 2019 ...............................................................................................7

Fed. R. Bankr. P. 6006 ...............................................................................................1

Fed. R. Bankr. P. 9019 ...............................................................................................5

ny-1043316

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and each, a "Debtor") submit this motion (the "Motion") for entry of an order, substantially in the form annexed hereto as Exhibit 1 (the "Order"), pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), authorizing the Debtors to assume a plan support agreement (the "Talcott Franklin Plan Support Agreement") between the Debtors and certain investors (the "Talcott Franklin Consenting Claimants") in residential mortgage-backed securities ("RMBS") backed by mortgage loans held by securitization trusts associated with securitizations sponsored by the Debtors between 2004 and 2007 (each a "Trust" and collectively, the "Trusts"). In support thereof, the Debtors respectfully submit the declaration of Tammy Hamzehpour (the "Hamzehpour Declaration"), attached hereto as Exhibit 2 and represent as follows:

### PRELIMINARY STATEMENT

1.     Prior to the Petition Date, the Debtors entered into two substantially similar plan support agreements with two sets of "Consenting Claimants," [1] one lead by Kathy Patrick of Gibbs & Bruns LLP (the "Steering Committee Group") and the other led by Talcott Franklin of Talcott Franklin, P.C. (the "Talcott Franklin Group").[2] The discussion below refers to terms contained in both of the Plan Settlement Agreements. By this motion, however, the Debtors seek

---

[1] For clarity's sake, the Debtors note that the Consenting Claimants are referred to as the "Institutional Investors" in the RMBS Trust Settlement Agreements (discussed further below).

[2] In connection with filing this Motion, the parties amended the plan support agreements with the Steering Committee Group (the "Steering Committee Plan Support Agreement") and the Talcott Franklin Group (the "Talcott Franklin Plan Support Agreement" and, together with the Steering Committee Plan Support Agreement, the "Plan Support Agreements") to extend some deadlines based on case developments. The parties have agreed to deem those changes effective as of May 25, 2012. References in this motion to the either or both of the Plan Support Agreements are to the agreements, including the May 25, 2012 amendments. The Talcott Franklin Plan Support Agreement is attached hereto as Exhibit 3 and the amendment as Exhibit 4. As of the filing of this motion, counsel for the Talcott Franklin Group has received approval to sign the May 25, 2012 amendments on behalf of approximately 33 of his 47 clients. Counsel has represented that he believes that he will receive approval to sign on behalf of the remaining client within the next two days.

authority to assume only the Talcott Franklin Plan Support Agreement memorializing the Talcott

Franklin Consenting Claimants' agreement to support the Debtors' plan of reorganization (the

"Plan"), which shall be consistent with the terms and conditions set forth in the Plan Term Sheet

attached as Exhibit B to the Talcott Franklin Plan Support Agreement.[3]  The Talcott Franklin

Plan Support Agreement, in conjunction with plan support agreements with Ally Financial Inc.

(together with its non-debtor affiliates, "AFI"), holders of the Debtors' junior secured notes (as

defined in the Plan Term Sheet), and the Steering Committee Group will enable the Debtors to

move expeditiously towards confirmation and consummation of the Plan with the support of

parties representing the Debtors' key secured creditor constituencies and most of the general

unsecured claim pool in these bankruptcy cases.

2.    The Debtors commenced these Chapter 11 cases with the intent to confirm the

Plan swiftly, including the sale of substantially all of the Debtors' assets through the Chapter 11

process.  In advance of the Debtors filing petitions for bankruptcy, the Debtors negotiated

settlement agreements (the "RMBS Trust Settlement Agreements," the terms of which make up

the "RMBS Trust Settlement") and the Plan Support Agreements with the Steering Committee

Group and the Talcott Franklin Group.  The RMBS Trust Settlement Agreements and Plan

Support Agreements are intended to prevent the extended litigation (relating to the RMBS and

the Debtors' key restructuring activities, including Plan confirmation), distraction, costs, and

delays in the administration of the Debtors' bankruptcy cases that would result if the Debtors

were not able to resolve the claims held by the trustees for the Trusts (each a "Trustee," and

collectively, the "Trustees") related to certain alleged breaches of representations and warranties

---

[3] By separate motion filed concurrently herewith, the Debtors seek approval to assume the Steering Committee Plan Support Agreement.  The motions are being filed separately due to restrictions in Bankruptcy Rule 6006 regarding the filing of a single motion seeking to assume multiple executory contracts.

2

by the Debtors associated with Debtor-sponsored securitizations.  Absent the Plan Support

Agreements, the Debtors' restructuring efforts would likely be substantially hampered to the

detriment of the Debtors' estates and creditors.

3.      Under the Talcott Franklin Plan Support Agreement, among other things, the

Talcott Franklin Consenting Claimants agree, and will provide direction to Trustees for the

Covered Trusts (as defined below), to: (a) use commercially reasonable efforts, subject to certain

limitations, to obtain agreement to the Talcott Franklin Plan Support Agreement and RMBS

Trust Settlement Agreement from holders of RMBS other than the original Consenting

Claimants party to those agreements; (b) support the Debtors' prosecution of their Chapter 11

cases consistent with the Ally Settlement Agreement,[4] including AFI's contribution of $750

million to the Debtors' bankruptcy estates as set forth therein, and take no action otherwise

adverse to the Debtors in connection with claims under the Governing Agreements (as defined

below); and (c) support confirmation of the Plan and approval of any settlement with AFI on

terms no less favorable than the Ally Settlement Agreement, or any comparable sale under

Section 363 of the Bankruptcy Code that provides for, and is conditioned on, the same Ally

Settlement Agreement.

4.      The terms of the RMBS Trust Settlement are structured to be fair and equitable

across all participating Trusts. And all holders of RMBS issued by the Trusts may become a

party to one of the RMBS Trust Settlement Agreements and Plan Support Agreements.  The Plan

Support Agreements, however, do not materially restrict the Debtors' ability to consider

alternative plan structures in a manner consistent with their fiduciary duties, as discussed below.

---

[4] A copy of the Ally Settlement Agreement is attached as Exhibit 8 to the Affidavit of James Whitlinger, Chief
Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings (the
"Whitlinger Affidavit") [Docket No. 6].

5.    Accordingly, the Debtors seek authority to assume the Talcott Franklin Plan Support Agreement, which is integral to the Debtors' overall restructuring plan.

## BACKGROUND

6.    On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee or examiner has been appointed in these Chapter 11 cases.

7.    On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

8.    The Debtors are a leading residential real estate finance company indirectly owned by AFI, which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit.

## JURISDICTION AND VENUE

9.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4

**RMBS SETTLEMENT AND
PLAN SUPPORT AGREEMENTS**

**A.    The RMBS Settlement Agreements**

10.    Contemporaneously with the filing of this Motion, the Debtors have filed a

motion pursuant to Bankruptcy Rule 9019 for approval of the RMBS Trust Settlement

Agreements (the "RMBS Trust Settlement Motion").  As detailed in the Debtors' RMBS Trust

Settlement Motion, shortly before the Petition Date, the Debtors entered into two substantially

similar RMBS Trust Settlement Agreements which, if approved, could resolve claims held by the

trustees of up to 392 securitization Trusts related to approximately $221 billion in original issue

balance ("OIB") of RMBS.  Declaration of William Nolan ¶ 9.[5]  The disputed claims held by the

Trusts arise out of, among other things, the Debtors' alleged breaches of representations and

warranties related to the characteristics of loans sold by the Debtors to the Trusts under purchase

and sale agreements involved in various securitization transactions.  Nolan Decl. ¶ 9.

11.    The first of the two RMBS Trust Settlement Agreements involved the Steering

Committee Consenting Claimants, who hold at least 25% of the voting rights of the RMBS in

290 of the 392 Trusts related to Debtor-sponsored securitizations between 2004 and 2007 (each,

a "Covered Trust," and together, the "Covered Trusts").  Steering Committee PSA Exhibit F.[6]

Additionally, the Talcott Franklin Group holds at least 25% of the voting rights in 35 additional

Trusts, accounting for an additional $17 billion in total OIB issued by such trusts.  Talcott

Franklin PSA Exhibit F.  In total, the Consenting Claimants have represented to the Debtors that

they hold at least 25% of the voting rights (as required by the Governing Agreements) of the

---

[5] The Declaration of William Nolan ("Nolan Decl.") is attached as Exhibit 6 to the RMBS Trust Settlement Motion.
[6] Throughout this Motion, the Talcott Franklin Plan Support Agreement is cited as the "Talcott Franklin PSA" and the Steering Committee Plan Support Agreement as the "Steering Committee PSA."  The Steering Committee Plan Support Agreement is attached as Exhibit 3 to the Debtors' motion, filed concurrently herewith, seeking to assume the Steering Committee Plan Support Agreement.

5

RMBS in not less than 328 of the Trusts, with OIB of approximately $182.8 billion.

Accordingly, based on their holdings, the Consenting Claimants hold a sufficient amount of

RMBS to direct many of the Trustees of the Covered Trusts – pursuant to the respective Trust's

Governing Agreements – to take certain actions, including directing the Trustees of the Covered

Trusts to bring actions against certain of the Debtors.[7]

**B.     The Plan Support Agreements**

12.    Because the claims held by the Trusts represent the majority of the Debtors'

anticipated unsecured claims pool, the Debtors' recognized the importance of working with the

Consenting Claimants to develop a Chapter 11 plan acceptable to the Consenting Claimants and

major constituencies in the Debtors' capital structures.  Hamzehpour Declaration ¶ 4.

Accordingly, in conjunction with, and as an integral part of, the settlement with the Consenting

Claimants, the Debtors also entered into a Plan Support Agreement with each group of

Consenting Claimants.  Hamzehpour Declaration ¶ 3.  AFI is also a party to, and has obligations

under, each of the Plan Support Agreements.  Talcott Franklin PSA § 4.  Like the RMBS Trust

Settlement Agreements, the Plan Support Agreements are the result of extensive arm's length,

good faith, and hard fought negotiations with the Consenting Claimants.

13.    The Plan Support Agreements require the Consenting Claimants to direct the

Trustees to vote in favor of and support confirmation of a plan of reorganization consistent with

(i) the Plan Term Sheet attached as <u>Exhibit B</u> to the Plan Support Agreements, and (ii) a separate

settlement with AFI (the "AFI Settlement Agreement"),[8] including the cash contribution of $750

---

[7] See, e.g., Standard Terms of Pooling and Serving Agreement § 11.03(c).  The Standard Terms of Pooling and Serving Agreement, is attached as <u>Exhibit 5</u> to the RMBS Trust Settlement Motion.

[8] The AFI Settlement Agreement is attached as <u>Exhibit 8</u> to the Whitlinger Affidavit.  Pursuant to the AFI Settlement Agreement, AFI agreed, among other things, to (i) make a cash contribution of $750 million to the Debtors' estates; (ii) act as the stalking horse bidder for the Debtors' held-for-sale portfolio (without receiving any bid protections); and (iii) continue providing support and services to the Debtors in a variety of ways during the

(Footnote continues on next page.)

million as set forth therein.  Talcott Franklin PSA § 3.1(h).  The Consenting Claimants also agree to (i) support, and direct the Trustees to support, various motions and applications to be filed by the Debtors, including the Debtors' motion to stay litigation against AFI, and (ii) use commercially reasonable efforts to get other RMBS holders to join the Plan Support Agreements and/or RMBS Trust Settlement Agreements.  See, e.g., Talcott Franklin PSA at § 3.1(a) (support of first and second day pleadings); 3.1(b) (commercially reasonable efforts to get other investors to join the Plan Support Agreements and RMBS Trust Settlement Agreements); 3.1(e) (stay litigation).

14.    In exchange, the Debtors agree to be bound by several obligations in connection with implementation of their restructuring.  One of these obligations requires the Debtors to file a motion seeking authority to perform under the Plan Support Agreements within 21 days of the Petition Date, which date was extended by amendment to June 11, 2012.  Talcott Franklin PSA § 2.2(b); First Amendment to Plan Support Agreement § 1.1.  Additionally, the Debtors agree to, among other things, use best efforts to effectuate and consummate the Restructuring contemplated by the Plan Term Sheet, including the AFI Settlement Agreement, in accordance with certain milestones contained in Exhibit C to the Plan Support Agreements.  Talcott Franklin PSA § 2.2(a).  Moreover, the Debtors agree to seek permission for any Bankruptcy Rule 2019 statement filed by the Consenting Claimants in the Debtors' Chapter 11 cases to be filed with amounts and trust-specific holdings of each Consenting Claimant redacted, subject to confidential review solely by the Court, the Office of the United States Trustee, any official

_____

(Footnote continued from previous page.)

Debtors' Chapter 11 cases. In exchange, the Debtors' agreed to pursue a plan of reorganization that provides third-party releases to AFI and certain of its affiliates and other related parties.

committee of unsecured creditors appointed in the Chapter 11 Cases, and AFI. Talcott Franklin

PSA § 2.2.

15.     Importantly, the Debtors are permitted to pursue an alternative restructuring to the

extent that failing to do so would violate their fiduciary duties – so long as such alternative

restructuring is not less favorable to the Consenting Claimants than the Plan.[9] Talcott Franklin

PSA § 2.4. The Debtors may pursue a proposed alternative restructuring that the Debtors and

their respective Boards of Directors have determined is reasonably likely to be more favorable to

the Debtors' estates, their creditors, and other parties to whom the Debtors owe fiduciary duties

than the restructuring contemplated by the Plan, provided that such restructuring is not less

favorable to the Consenting Claimants than the restructuring contemplated by the Plan. Talcott

Franklin PSA § 2.4.

16.     Finally, under the Plan Support Agreements, AFI agrees not to object to approval

of the RMBS Trust Settlement Agreement and to comply with the AFI Settlement Agreement in

accordance with its terms. Talcott Franklin PSA § 4.

17.     As is typical in Plan Support Agreements, the Debtors sought to ensure that the

Consenting Claimants would continue to maintain their voting power and ability to effectively

support the Debtors' Plan. However, during the negotiations, the Debtors were informed that

because many of the Consenting Claimants control certain of the RMBS on behalf of others for

whom the Consenting Claimants manage accounts, and to whom the Consenting Claimants have

fiduciary duties, a typical lock-up agreement was not possible. Hamzehpour Declaration ¶ 6.

Accordingly, the Debtors and the Consenting Claimants have agreed that, while the Consenting

Claimants may transfer certain of the RMBS that they hold, each of the Steering Committee

---

[9] The Plan Support Agreements also provide a fiduciary "out" to any Consenting Claimant serving on the Creditors'
Committee. Talcott Franklin Plan Support Agreement § 3.6.

Consenting Claimants and the Talcott Franklin Consenting Claimants must continue to hold at

least 25% of one or more classes of RMBS associated with approximately 80% of the Trusts in

which the respective group of Consenting Claimants originally held 25% of a class or else the

respective Plan Support Agreement shall automatically terminate unless waived by the Debtors

and AFI within five (5) days.  Steering Committee PSA § 3.3, 6.2, 6.4; Talcott Franklin PSA

§ 3.3, 6.2, 6.4.[10]

18.     Additionally, the Plan Support Agreements contain a number of Consenting

Claimant termination events, including (i) dismissal or conversion of any of the Debtors' cases,

(ii) material modifications to the Plan Term Sheet, and (iii) breach or termination of any of the

purchase and sale agreements for the Debtors' businesses or the AFI Settlement Agreement.

Talcott Franklin PSA § 6.1(b), (e), (g).  Likewise, the Debtors and AFI may terminate the Plan

Support Agreements in the event of a breach of any material provision of the Plan Support

Agreements by the respective Consenting Claimants.  Notably, in the event of a breach, each of

the parties' sole remedy under the Plan Support Agreements is specific performance.  Talcott

Franklin PSA § 6.2.

19.     The Debtors' assumption of the Plan Support Agreements will substantially

benefit the Debtors and their creditors.  They solidify the support of the Consenting Claimants

for the Debtor's Plan confirmation process.  The Consenting Claimants are a critical constituency

because they have 25% or more of the voting rights in relevant tranches of the vast majority of

RMBS trusts, which are the largest unsecured creditors of the Debtors' estates, and, therefore,

---

[10] The requirement to maintain a 25% interest in one class of RMBS related to certain Trusts is subject to limited
exceptions where a third party guarantor or financial guaranty provider exercises its voting rights to contravene
certain directions given to the Trustees by the Consenting Claimants.  Additionally, the Steering Committee Plan
Support Agreement contains an exception for reductions in the Consenting Claimants holdings resulting from sales
by Maiden Lane I and Maiden Lane III, which are subject to certain orders from the Federal Reserve Bank of New
York, as managing member, requiring these two entities to liquidate their holdings.  Steering Committee PSA § 3.3.

9

may—and have committed to—direct the Trustees to support the Debtors' restructuring efforts, including assisting in moving expeditiously through bankruptcy, effecting a sale of substantially all of the Debtors assets under the Plan, and effectuating a cost-efficient wind-down of the remaining assets in the Debtors estates.  See Talcott Franklin PSA § 3.1(h), Exhibit F. Consensual resolution of the Trusts' claims and the avoidance of costly litigation and delay will further serve to increase recoveries to all general unsecured creditors.

20.      Further, obtaining the prepetition support of the Consenting Claimants, as well as the support of the holders of the Debtors' junior secured notes, and obtaining AFI's agreement to contribute $750 million in cash to help fund the Debtors' pre-negotiated plan of reorganization, will greatly assist in the expeditious sale and reorganization of the Debtors' businesses.  The RMBS Trust Settlement will provide clarity to the size of the claims pool for the Debtors and all other interested parties and assist the Debtors in formulating the terms of a Plan supported by the Debtors' major creditor constituencies.  The Plan Support Agreements, in turn, provide assurance that the Consenting Claimants will maintain sufficient RMBS holdings to assist the Debtors in moving toward confirmation of the Plan.  The Plan Support Agreements also provide the Debtors' with reasonable assurance that the Consenting Claimants will provide support for various other aspects of the Debtors' Chapter 11 cases, assisting the Debtors' efforts to move the cases forward as expeditiously as possible.  As a result, the Debtors determined that entering into and assumption of Plan Support Agreements, as an integral part of the settlement with the Consenting Claimants, was an appropriate exercise of their business judgment.

21.      Moreover, the only remedy of each party to the Plan Support Agreement for breach of such agreement is specific performance.  Talcott Franklin PSA § 10.9(a).  Thus, assumption will not open the Debtors to administrative claims for breach of the Plan Support

Agreement.  Also, the Debtors have an appropriate "fiduciary out" in the agreement.  See Talcott

Franklin PSA § 2.4.  Thus, the assumption of the Plan Support Agreement will enhance the

progress of these cases and not create additional burdens.

22.     Accordingly, the Debtors determined that entering into and assumption of the

Plan Support Agreements, which the Debtors view as an integral part of the settlement with the

Consenting Claimants, was an appropriate exercise of their business judgment.

## RELIEF REQUESTED

23.     By this Motion, the Debtors seek entry of an Order, pursuant to section 365 of the

Bankruptcy Code, authorizing the Debtors' to assume and perform under the Talcott Franklin

Plan Support Agreement.

## BASIS FOR RELIEF

**A.     The Debtors Should be Authorized to Assume the Talcott Franklin Plan Support
Agreement**

24.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession,

"subject to the Court's approval, may . . . assume any executory contract or unexpired lease of

the debtor." 11 U.S.C. § 365(a).  Courts apply the "business judgment" standard in determining

whether to approve the assumption of an executory contract. Orion Pictures Corp. v. Showtime

Networks, Inc. (In re Orion Pictures), 4 F.3d 1095, 1099 (2d Cir. 1993); see also COR Route 5

Company, LLC v. Penn Traffic Co. (In re Penn Traffic Co.), 524 F.3d 373, 383 (2d Cir. 2008);

In re MF Global Holdings Ltd., 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012).  The business

judgment standard "merely requires a showing" that assumption of the executory contract will

benefit the estate. In re MF Global Holdings, Ltd., 466 B.R. at 242.  Once a debtor articulates a

valid business justification, "[t]he business judgment rule 'is a presumption that in making a

business decision the directors of a corporation acted on an informed basis, in good faith and in

the honest belief that the action taken was in the best interests of the company.'"  Official

Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147

B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985));

see also NLRB v. Bildisco and Bildisco, 465 U.S. 513, 523 (1984).

25.    Accordingly, "[c]ourts generally will not second-guess a debtor's business

judgment concerning whether the assumption or rejection of an executory contract or unexpired

lease would benefit the debtor's estate."  In re MF Global Holdings Ltd., 466 B.R. at 242; In re

Riodizio, Inc., 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[A] court will ordinarily defer to the

business judgment of the debtor's management"); In re Child World, Inc., 142 B.R. 87, 89

(Bankr. S.D.N.Y. 1992).  Further, the "business judgment" standard merely requires the debtors

to establish that the requested assumption will benefit the estate. See Westbury Real Estate

Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.), 194 B.R. 555, 558 n.1 (Bankr.

S.D.N.Y. 1996) ("the court must examine the contract and circumstances and apply its best

'business judgment' to determine if the assumption or rejection would be beneficial or

burdensome to the estate").

26.    The Debtors' decision to assume the Talcott Franklin Plan Support Agreement

satisfies the business judgment standard.  The ultimate goal of these Chapter 11 cases is to

maximize the value of the Debtors' assets through an expeditious sale of the Debtors' businesses

and a cost and time efficient wind-down of the Debtors' estates.  The RMBS Trust Settlement

Agreements and associated Plan Support Agreements, together with the plan support agreements

with AFI and the holders of the Debtors' junior secured notes, act as the cornerstones for a

restructuring supported by constituents throughout the Debtors' capital structures.  More

specifically, the Plan Support Agreements, together, provide for support from the Debtors'

12

largest disputed unsecured creditor constituency and are an integral part of the Debtors'

settlement with this group.  Furthermore, as noted above, by limiting the Parties' remedy upon

any breach to specific performance, the Debtors' were able to obtain the support of the

Consenting Claimants without concern that a future breach of the Talcott Franklin Plan Support

Agreement could result in significant administrative expense to the Debtors' estates.

27.    Without the Consenting Claimants' continued support of the Debtors'

restructuring, confirmation of a value-maximizing plan of reorganization could be significantly

delayed or thwarted.  For instance, the Trusts would likely choose to file proofs of claim in the

full amount of the unpaid principal balance of the mortgage loans held by the particular Trust, as

has been done in other recent mortgage industry bankruptcy cases.[11]  Such an assertion would

inevitably lead to an inflated claims pool, requiring the Debtors to litigate the amount and

validity of the claims held by the Trusts.  Moreover, the Plan Support Agreements avoid

potential objections and delays by the Consenting Claimants and permit the Debtors to move

swiftly toward confirmation of the Plan.

28.    Courts regularly approve plan support agreements that debtors' determine, in their

business judgment, are in the best interests of their estates and provide an efficient manner to

work with various creditor constituencies toward confirmation of a consensual plan of

reorganization.  See, e.g., In re General Maritime Corp., No. 11-15285 (MG) (Bankr. S.D.N.Y.

Apr. 2, 2012) (granting debtors' motion to enter into plan support agreement upon debtors'

conclusion that the agreement was in the best interest of their estates); In re Chemtura Corp., No.

---

[11] See e.g. Motion Pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman
Brothers Holdings Inc. and its Affiliated Debtors and Sections 105(a), 502(c) and 1142(b) of the Bankruptcy Code
to Estimate the Amounts of Claims Filed by Indenture Trustees on Behalf of Issuers of Residential Mortgage
Backed Securities for Purposes of Establishing Reserves at 8, In re Lehman Brothers Holdings Inc., No. 08-13555
(JMP) (Bankr. S.D.N.Y. Jan 12, 2012) ("Some of the Claims assert amounts equal to the total outstanding amount of
all loans held by the trusts").

09-11233 (REG) (Bankr. S.D.N.Y. Aug. 9, 2010) (same).  Indeed, courts in this and other

districts have approved assumption of prepetition plan support agreements like the Talcott

Franklin Plan Support Agreement.  See In re TBS Shipping Servs. Inc., No. 12-22224 (RDD)

(Bankr. S.D.N.Y. Feb 28, 2012); In re MES Int'l, Inc., No. 09-14109 (PJW) (Bankr. D. Del. Dec.

18, 2009); In re Apex Silver Mines Limited, No. 09-10182 (JMP) (Bankr. S.D.N.Y. Jan. 22,

2009).

29.    For the forgoing reasons, the Debtors believe that assumption of the Talcott

Franklin Plan Support Agreement is in the best interests of their estates.

**B.    The Talcott Franklin Plan Support Agreement Complies With The Provisions of Section 1125(b) of the Bankruptcy Code.**

30.    Entry into the Talcott Franklin Plan Support Agreement does not constitute

"solicitation" of the Consenting Claimants' or Trustees' votes in favor of the Plan under section

1125 of the Bankruptcy Code.

31.    Section 1125(b) provides that "[a]n acceptance or rejection of a plan may not be

solicited after the commencement of the case under this title . . . unless, at the time of or before

such solicitation, there is transmitted . . . a written disclosure statement approved, after notice

and a hearing, by the court as containing adequate information."  11 U.S.C. § 1125(b).  Courts

considering both prepetition and postpetition plan support agreements have held that such

agreements are not "solicitations" if they permit a party to the agreement to later vote to reject a

plan if there are any material deviations from the representations made at the time of signing the

plan support agreement.  See In re TBS Shipping Servs. Inc., No. 12-22224 (RDD) (Bankr.

S.D.N.Y. Feb 28, 2012) (approving a postpetition plan support agreement pursuant to which

creditor agreed to vote in favor of plan provided there were no material modifications to the

agreed upon plan); In re Neb. Book Co., No. 11-12005 (Bankr. D. Del. Sep. 7, 2011) (same); In

re Apex Silver Mines Ltd., No. 09-10182 (JMP) (Bankr. S.D.N.Y. Jan. 22, 2009) (same); see also Hearing Transcript at 14-15, In re Owens Corning, No. 00-03837 (Bankr. D. Del. June 23, 2006) (Docket No. 18233) ("The Plan Support Agreement is the written memorialization of the negotiations . . . and that is not the solicitation of a vote."); Transworld Airlines, Inc. v. Texaco, Inc. (In re Texaco, Inc.), 81 B.R. 813 (Bankr. S.D.N.Y. 1988) (holding that parties' agreement to use best efforts to obtain confirmation of chapter 11 plan did not violate statutory restrictions on solicitation of votes for the plan).

32.    Here, and notwithstanding the ability of parties to accept the RMBS Trust Settlement and participate in the Talcott Franklin Plan Support Agreement up to 45 days after the filing of the RMBS Trust Settlement Motion, the Debtors' assumption of and performance under the Plan Support Agreements does not constitute a "solicitation" under Bankruptcy Code section 1125.  First, the Plan Support Agreement is an agreement with the Consenting Claimants, not the Trustees who will ultimately vote on the Plan.  Additionally, votes of the Trustees will not be secured unless and until a Court approved disclosure statement is transmitted to the parties, in compliance with section 1125 of the Bankruptcy Code.  The provisions of the Talcott Franklin Plan Support Agreement are explicitly subject to the terms of sections 1125 and 1126 of the Bankruptcy Code.  Talcott Franklin Plan Support Agreement § 3.1(h); 10.1(b).  Moreover, the Talcott Franklin Consenting Claimants have the right to terminate the Talcott Franklin Plan Support Agreements in the event of material modification to the Plan Term Sheet.  Talcott Franklin Plan Support Agreement § 6.1(b)

33.    Based upon the foregoing, the Debtors do not believe that entry into the Talcott Franklin Plan Support Agreement constitutes solicitation of the Talcott Franklin Consenting Claimants' or Trustees' votes, as applicable.  Accordingly, the Debtors submit that entering into

15

the Talcott Franklin Plan Support Agreement does not violate section 1125(b) of the Bankruptcy

Code.

## NOTICE

34.     Notice of this Motion will be given to the following parties, or in lieu thereof, to

their counsel:  (a) the Office of the United States Trustee for the Southern District of New York;

(b) the Office of the United States Attorney General; (c) the Office of the New York Attorney

General; (d) the Office of the United States Attorney for the Southern District of New York;

(e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) each of the

Debtors' prepetition lenders, or their agents, if applicable; (h) each of the indenture trustees for

the Debtors' outstanding notes issuances; (i) Ally Financial Inc.; (j)  the Steering Committee

Group; (k) the Talcott Franklin group (l) Barclays Bank PLC, as administrative agent for the

lenders under the debtor in possession financing facility; (m) Nationstar Mortgage LLC and its

counsel; and (n) the Creditors' Committee (o) all parties requesting notice pursuant to

Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such

notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

35.     No prior motion for the relief sought in this Motion has been made to this or any

other court.

16

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: June 11, 2012
      New York, New York

Respectfully submitted,

/s/ Gary S. Lee
Larren M. Nashelsky
Gary S. Lee
Anthony Princi
Jamie A. Levitt
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Proposed Counsel for the Debtors and Debtors in Possession*