Certificateholder as a result of each such exchange that took place since the preceding Distribution Date, and (iii) a fraction, expressed as a percentage, the numerator of which is the aggregate Certificate Principal Balance of all Certificates of any Class of Certificates that were exchanged since the preceding Distribution Date, and the denominator of which is the Initial Certificate Principal Balance of such Class of Certificates.

Section 4.04    Distribution of Reports to the Trustee and the Company; Advances by the Master Servicer.  (See Section 4.04 of the Standard Terms)

Section 4.05    Allocation of Realized Losses.

Prior to each Distribution Date, the Master Servicer shall determine the total amount of Realized Losses, if any, that resulted from any Cash Liquidation, Servicing Modification, Debt Service Reduction, Deficient Valuation or REO Disposition that occurred during the related Prepayment Period or, in the case of a Servicing Modification that constitutes a reduction of the interest rate on a Mortgage Loan, the amount of the reduction in the interest portion of the Monthly Payment due during the related Due Period.  The amount of each Realized Loss shall be evidenced by an Officers' Certificate.  All Realized Losses, other than Excess Special Hazard Losses, Extraordinary Losses, Excess Bankruptcy Losses or Excess Fraud Losses, shall be allocated as follows: first, to the Class B-3 Certificates until the Certificate Principal Balance thereof has been reduced to zero; second, to the Class B-2 Certificates until the Certificate Principal Balance thereof has been reduced to zero; third, to the Class B-1 Certificates until the Certificate Principal Balance thereof has been reduced to zero; fourth, to the Class M-3 Certificates until the Certificate Principal Balance thereof has been reduced to zero; fifth, to the Class M-2 Certificates until the Certificate Principal Balance thereof has been reduced to zero; sixth, to the Class M-1 Certificates until the Certificate Principal Balance thereof has been reduced to zero; and, thereafter, if any Realized Loss is on a Discount Mortgage Loan, to the related Class A-P Certificates in an amount equal to the related Discount Fraction of the principal portion thereof until the Certificate Principal Balance of such Class A-P Certificates has been reduced to zero, and the remainder of such Realized Losses on the Discount Mortgage Loans in the related Loan Group and the entire amount of such Realized Losses on Non-Discount Mortgage Loans in the related Loan Group will be allocated (i) among all the Group I Senior Certificates other than the Class I-A-P Certificates (in the case of a Realized Loss on a Group I Loan) and, in the case of the interest portion of such Realized Loss, the Class I-A-V Certificates (in the case of a Realized Loss on a Group I Loan) on a pro rata basis; provided, however, that Realized Losses otherwise allocable to the Class I-A-1 Certificates will be allocated to the Class I-A-2 Certificates, until the Certificate Principal Balance of the Class I-A-2 Certificates has been reduced to zero and (ii) among all of the Group II Senior Certificates other than the Class II-A-P Certificates (in the case of a Realized Loss on a Group II Loan) and, in the case of the interest portion of such Realized Loss, Class II-A-V Certificates (in the case of a Realized Loss on a Group II Loan) on a pro rata basis, as described below; provided, however, that Realized Losses otherwise allocable to the Class II-A-1 Certificates will be allocated to the Class II-A-2 Certificates, until the Certificate Principal Balance of the Class II-A-2 Certificates has been reduced to zero.

In addition, the Classes of Exchangeable Certificates outstanding on any Distribution Date shall bear the share of Realized Losses and interest shortfalls allocable to such Classes of

Certificates as provided in this Section 4.05 and the definition of Accrued Certificate Interest. In addition, the Class of Exchanged Certificates shall be allocated the Realized Losses and interest shortfalls that would be allocable to each of the Classes of related Exchangeable Certificates in the Combination Group pursuant to this Section 4.05 and the definition of Accrued Certificate Interest were such Classes of Exchangeable Certificates outstanding on such date.

The principal portion of any Excess Special Hazard Losses, Excess Bankruptcy Losses, Excess Fraud Losses and Extraordinary Losses on Discount Mortgage Loans will be allocated to the related Class A-P Certificates in an amount equal to the related Discount Fraction thereof. The Class I-A Percentage or Class II-A Percentage (as applicable) of the remainder of the principal portion of such losses on Discount Mortgage Loans and the Class I-A Percentage or Class II-A Percentage (as applicable) of the entire amount of the principal portion of such losses on Non-Discount Mortgage Loans will be allocated to (i) the Group I Senior Certificates (other than the Class I-A-P Certificates and the Class I-A-V Certificates), on a pro rata basis (in the case of a Realized Loss on a Group I Loan), and (ii) the Group II Senior Certificates (other than the Class II-A-P Certificates and the Class II-A-V Certificates), on a pro rata basis (in the case of a Realized Loss on a Group II Loan). The remainder of the principal portion of such losses on Discount Mortgage Loans and Non-Discount Mortgage Loans will be allocated to the Class M Certificates and Class B Certificates on a pro rata basis. The interest portion of such losses will be allocated to all of the Certificates in the related Certificate Group, on a pro rata basis based on the Accrued Certificate Interest thereon payable from the related Loan Group in respect of the related Distribution Date.

On any Distribution Date, Realized Losses will be allocated as set forth herein after distributions of principal on the Certificates as set forth herein.

As used herein, an allocation of a Realized Loss on a "pro rata basis" among two or more specified Classes of Certificates means an allocation on a pro rata basis, among the various Classes so specified, to each such Class of Certificates on the basis of their then outstanding Certificate Principal Balances prior to giving effect to distributions to be made on such Distribution Date in the case of the principal portion of a Realized Loss or based on the Accrued Certificate Interest thereon payable from the related Loan Group in respect of such Distribution Date (without regard to any Compensating Interest allocated to the Available Distribution Amount of such Loan Group for such Distribution Date) in the case of an interest portion of a Realized Loss; provided that no such reduction shall reduce the aggregate Certificate Principal Balance of the Certificates in the Certificate Group related to Loan Group I or Loan Group II, as applicable, below the aggregate Stated Principal Balance of the Mortgage Loans in the related Loan Group. Any allocation of the principal portion of Realized Losses (other than Debt Service Reductions) to the Subordinate Certificates then outstanding with the Lowest Priority shall be made by operation of the definition of "Certificate Principal Balance" and by operation of the provisions of Section 4.02(a). Allocations of the interest portions of Realized Losses (other than any interest rate reduction resulting from a Servicing Modification) shall be made in proportion to the amount of Accrued Certificate Interest and by operation of the definition of "Accrued Certificate Interest" and by operation of the provisions of Section 4.02(a). Allocations of the interest portion of a Realized Loss resulting from an interest rate reduction in connection with a Servicing Modification shall be made by operation of the provisions of Section 4.02(a). Allocations of the principal portion of Debt Service Reductions shall be made by operation of the

provisions of Section 4.02(a). All Realized Losses and all other losses allocated to a Class of Certificates hereunder will be allocated among the Certificates of such Class in proportion to the Percentage Interests evidenced thereby; provided that if any Subclasses of the Class A-V Certificates have been issued pursuant to Section 5.01(c) of the Standard Terms, such Realized Losses and other losses allocated to the Class A-V Certificates shall be allocated among such Subclasses in proportion to the respective amounts of Accrued Certificate Interest payable on such Distribution Date that would have resulted absent such reductions.

      Section 4.06   Reports of Foreclosures and Abandonment of Mortgaged Property. (See Section 4.06 of the Standard Terms)

      Section 4.07   Optional Purchase of Defaulted Mortgage Loans. (See Section 4.07 of the Standard Terms)

      Section 4.08   Surety Bond. (See Section 4.08 of the Standard Terms)

      Section 4.09   Class P Reserve Account.

      (a)     The Trustee shall establish a Class P Reserve Account on behalf of the Holders of the Class P Certificates. The Class P Reserve Account must be an Eligible Account. The Class P Reserve Account shall be entitled "Class P Reserve Account, U.S. Bank National Association, as Trustee for the benefit of Holders of Residential Funding Mortgage Securities I, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-S9," (the "Class P Reserve Account"). All amounts received by the Master Servicer in connection with Prepayment Charges on the Prepayment Charge Loans shall be deposited by the Master Servicer into the Class P Reserve Account upon receipt thereof. Funds on deposit in the Class P Reserve Account shall be held in trust by the Trustee for the Holder of the Class P Certificates. Amounts on deposit in the Class P Reserve Account shall be held and remain uninvested, and the Trustee shall have no liability for interest or other compensation therein. The Class P Reserve Account shall not be a part of any REMIC hereunder.

      (b)     On each Distribution Date, the Master Servicer on behalf of the Trustee (or the Paying Agent appointed by the Trustee) shall withdraw the amount then on deposit in the Class P Reserve Account representing Prepayment Charges in respect of the Prepayment Charge Loans received after the immediately preceding Distribution Date, and distribute such amounts to the Holders of the Class P Certificates in accordance with Section 4.02(a)(ii)(Y).

## ARTICLE V

## THE CERTIFICATES

Section 5.01    The Certificates.  (See Section 5.01 of the Standard Terms)

Section 5.02    Registration of Transfer and Exchange of Certificates.

(a)        (See Section 5.02(a) of the Standard Terms)

(b)        (See Section 5.02(b) of the Standard Terms)

(c)        (See Section 5.02(c) of the Standard Terms)

(d)        (See Section 5.02(d) of the Standard Terms)

(e)        (See Section 5.02(e) of the Standard Terms)

(f)        (See Section 5.02(f) of the Standard Terms)

(g)        (See Section 5.02(g) of the Standard Terms)

(h)        (See Section 5.02(h) of the Standard Terms)

Section 5.03    Mutilated, Destroyed, Lost or Stolen Certificates.  (See Section 5.03 of the Standard Terms)

Section 5.04    Persons Deemed Owners.  (See Section 5.04 of the Standard Terms)

Section 5.05    Appointment of Paying Agent.  (See Section 5.05 of the Standard Terms)

Section 5.06    U.S.A. Patriot Act Compliance.  (See Section 5.06 of the Standard Terms)

Section 5.07    Exchangeable Certificates.

(a)        Upon the presentation and surrender by any Certificateholder of its Exchangeable Certificates or Exchanged Certificates, as applicable, in the appropriate combination as set forth in Exhibit Five, such Certificateholder shall hereunder transfer, assign, set over and otherwise convey to the Trustee, all of such Certificateholder's right, title and interest in and to such Exchangeable Certificates or Exchanged Certificates, as applicable.

The Exchangeable Certificates and Exchanged Certificates shall be transferred in uncertificated form to the Underwriter pursuant to Section 3 of the Underwriting Agreement. The Exchangeable Certificates or Exchanged Certificates in which the Underwriter does not take an initial position in on the books of DTC shall be transferred by the Underwriter to the Trustee to be held in trust.  U.S. Bank National Association, acting in its capacity as Trustee, acknowledges (i) the transfer and assignment to it of the uncertificated Exchangeable Certificates or Exchanged Certificates, as applicable, pursuant to this Section 5.07 and Section 3 of the Underwriting Agreement and (ii) any transfer and assignment of uncertificated Exchangeable

Certificates or Exchanged Certificates, as applicable, pursuant to the foregoing paragraph, and hereby declares that it will hold the same in trust for the Certificateholders on the terms contained in this Agreement.

(b)    The Exchangeable Certificates and Exchanged Certificates authorized by this Agreement shall have the characteristics specified or determined as set forth in Exhibit Five, and otherwise shall be subject to the terms and provisions set forth herein.

(c)    The Exchangeable Certificates and the Exchanged Certificates, as applicable, shall be exchangeable on the books of DTC for the Exchanged Certificates or Exchangeable Certificates, as applicable, on and after the Closing Date, in accordance with the terms and conditions set forth and otherwise in accordance with the procedures specified hereunder.

In the case of the Combination Group, the Exchangeable Certificates shall be exchangeable for the Exchanged Certificates related to the Combination Group in respective denominations determined based on the proportion that the initial Certificate Principal Balances of the Exchangeable Certificates bear to the original Certificate Principal Balance of the related Exchanged Certificates, as set forth in Exhibit Five. Upon any such exchange, the portions of the Exchangeable Certificates designated for exchange shall be deemed exchanged and replaced by the Exchanged Certificates issued in exchange therefore. Correspondingly, Exchanged Certificates related to the Combination Group may be further designated for exchange for the Exchangeable Certificates (or for other Exchanged Certificates, if applicable) related to the Combination Group in respective denominations determined based on the proportion that the initial Certificate Principal Balances of such Exchanged Certificates bear to the original Certificate Principal Balances of the Exchangeable Certificates or the related Exchanged Certificates, in each case, as set forth in Exhibit Five. There shall be no limitation on the number of exchanges authorized pursuant to this Section 5.07, and, except as provided below, no fee or other charge shall be payable to the Trustee or DTC in connection therewith.

In order to effect an exchange of Certificates, the Certificateholder shall notify the Trustee and the Master Servicer in writing, substantially in the form of Exhibit S, (including by e-mail at sfs.exchange@usbank.com and MSDocumentDistribution@gmacrfc.com), and in accordance with the requirements set forth herein, no earlier than the first calendar day of the month of the proposed exchange date and no later than three Business Days before the proposed exchange date. The exchange date will be subject to the Trustee's approval but it can generally be any Business Day other than the first and last Business Days of the month and subject to the preceding sentence. The notice must be on the Certificateholder's letterhead, carry a medallion stamp guarantee and set forth the following information: (i) the CUSIP number of each Certificate or Certificates (as applicable) to be exchanged and Certificate or Certificates (as applicable) to be received; (ii) the outstanding Certificate Principal Balance and the initial Certificate Principal Balance of the Certificates to be exchanged; (iii) the DTC participant numbers to be debited and credited and (iv) the proposed exchange date. After receiving the notice, the Trustee will e-mail the certificateholder wire payment instructions relating to the exchange fee. The Trustee will utilize the Deposit and Withdrawal System at DTC to exchange the Certificates. A notice becomes irrevocable on the second Business Day before the proposed exchange date.

Notwithstanding any other provision herein set forth, a fee shall be payable to the Trustee in connection with each exchange equal to $10,000; provided, however, multiple exchanges on any given exchange date by a single investor will be deemed to be a single exchange on such exchange date by such investor. Such fee must be received by the Trustee prior to the exchange date or such exchange shall not be effected.

The Trustee shall make the first distribution on an Exchangeable Certificate or an Exchanged Certificate received in an exchange transaction on the Distribution Date in the following month to the Certificateholder of record as of the close of business on the last day of the month of the exchange. The Trustee may rely on the monthly certificate of the Master Servicer in order to make any calculation needed relating to the distribution of principal and interest on the Exchangeable Certificates and the related Exchanged Certificates.

Section 5.08    Tax Status and Reporting of Exchangeable Certificates.

(a)    It is intended that the Grantor Trust be classified for federal income tax purposes as a grantor trust under Subpart E, part I of subchapter J of chapter 1 of the Code, and the powers granted and obligations undertaken in this Agreement shall be construed so as to further such intent. Under no circumstances shall the Trustee, the Master Servicer, the Company or the REMIC Administrator have the power to vary the investments of the Holders of Exchangeable Certificates or Exchanged Certificates in their related assets of the Grantor Trust in order to take advantage of variations in the market to improve their rate of return. The Exchangeable Certificates and the Exchanged Certificates represent undivided beneficial ownership of the Grantor Trust Uncertificated REMIC Regular Interests identified as related to such Certificates in the definition of Uncertificated REMIC Regular Interests.

(b)    The REMIC Administrator shall prepare or cause to be prepared all of the Tax Returns that it determines are required with respect to the Grantor Trust and deliver such Tax Returns in a timely manner to the Trustee, and, if required by applicable law, the Trustee is directed to and shall sign and file such Tax Returns in a timely manner. The expenses of preparing such returns shall be borne by the REMIC Administrator without any right of reimbursement therefor. The REMIC Administrator agrees to indemnify and hold harmless the Trustee with respect to any tax or liability arising from the Trustee's signing of such Tax Returns that contain errors or omissions. The Trustee and the Master Servicer shall promptly provide the REMIC Administrator with such information as the REMIC Administrator may from time to time request for the purpose of enabling the REMIC Administrator to prepare such Tax Returns.

(c)    Each beneficial owner of an Exchangeable Certificate or an Exchanged Certificate shall be deemed to have instructed the Trustee to deposit the related Grantor Trust Uncertificated REMIC Regular Interests into the Grantor Trust. The Trustee shall establish and maintain a Grantor Trust Account. On each Distribution Date, the Master Servicer on behalf of the Trustee (or the Paying Agent appointed by the Trustee) shall be deemed to have deposited into the Grantor Trust Account all amounts deemed distributed with respect to Grantor Trust Uncertificated REMIC Regular Interests pursuant to the provisions of Section 10.04(b).

(d)    The Grantor Trust is a WHFIT that is a WHMT. The Trustee will report as required under the WHFIT Regulations to the extent such information is reasonably necessary.

To enable the Trustee to do so, and to the extent such information is not in the Trustee's possession, the REMIC Administrator shall provide such information to the Trustee on a timely basis. The Trustee is hereby directed pursuant to this Agreement to assume that DTC is the only "middleman" (as such term is defined in the WHFIT Regulations) unless the Company or the Master Servicer notifies the Trustee in writing of the identities of other "middlemen" that are Holders of Exchangeable Certificates or Exchanged Certificates. The Master Servicer and the Company agree to notify the Trustee in writing of any such additional "middlemen" of which they have knowledge.

(e)    The Trustee will report required WHFIT information using the accrual method, except to the extent the WHFIT Regulations specifically require a different method. The Trustee will be under no obligation to determine whether any Exchangeable or Exchanged Certificateholder or other beneficial owner of an Exchangeable Certificate or an Exchanged Certificate, to the extent the Trustee knows of any other beneficial owner of an Exchangeable Certificate or an Exchanged Certificate, uses the cash or accrual method. The Trustee will make available information as required by the WHFIT Regulations to Exchangeable and Exchanged Certificateholders annually. In addition, the Trustee will not be responsible or liable for providing subsequently amended, revised or updated information to any Exchangeable or Exchanged Certificateholder, unless requested in writing by such Certificateholder.

(f)    To the extent required by the WHFIT Regulations, the Trustee will use reasonable efforts to make available on its website the CUSIP Numbers for the Exchangeable Certificates and the Exchanged Certificates. The Trustee will make reasonable good faith efforts to keep the CUSIP Numbers information on its website accurate and updated to the extent CUSIP Numbers have been received. The Trustee will not be liable for investor reporting delays that result from the receipt of inaccurate or untimely CUSIP Number information.

# ARTICLE VI

## THE COMPANY AND THE MASTER SERVICER
## (SEE ARTICLE VI OF THE STANDARD TERMS)

# ARTICLE VII

## DEFAULT
## (SEE ARTICLE VII OF THE STANDARD TERMS)

## ARTICLE VIII

### CONCERNING THE TRUSTEE
### (SEE ARTICLE VIII OF THE STANDARD TERMS)

# ARTICLE IX

## TERMINATION OR OPTIONAL PURCHASE OF ALL CERTIFICATES
## (SEE ARTICLE IX OF THE STANDARD TERMS)

## ARTICLE X

## REMIC PROVISIONS

Section 10.01  REMIC Administration.  (See Section 10.01 of the Standard Terms)

Section 10.02  Master Servicer; REMIC Administrator and Trustee Indemnification.
(See Section 10.02 of the Standard Terms)

Section 10.03  Designation of REMIC(s).

The REMIC Administrator will make an election to treat the segregated pool of assets described in the definition of REMIC I (as defined herein), and subject to this Agreement (including the Mortgage Loans but excluding the prepayment charges to which the Class P Certificates are entitled), as a REMIC ("REMIC I") for federal income tax purposes.  The REMIC Administrator will make an election to treat the segregated pool of assets consisting of the Uncertificated REMIC I Regular Interests, and subject to this Agreement, as a REMIC ("REMIC II") for federal income tax purposes.

The Uncertificated REMIC I Regular Interests will be "regular interests" in REMIC I and the Class R-I Certificates will be the sole class of "residual interests" in REMIC I for purposes of the REMIC Provisions (as defined in the Standard Terms).

The Uncertificated REMIC II Regular Interests, the rights in which will be represented by the related Exchanged and Exchangeable Certificates, as the case may be, the Class I-A-1, Class I-A-2, Class I-A-P, Class II-A-P, Class M-1, Class M-2, Class M-3, Class B-1, Class B-2 and Class B-3 Certificates, the Uncertificated REMIC II Regular Interests Z1 and Uncertificated REMIC II Regular Interest Z2, the rights in and to which will be represented by the related Class A-V Certificates, will be "regular interests" in the REMIC II, and the Class R-II Certificates will be the sole class of "residual interests" therein for purposes of the REMIC Provisions (as defined in the Standard Terms) under federal income tax law.  On and after the date of issuance of any Subclass of related Class A-V Certificates pursuant to Section 5.01(c) of the Standard Terms, any such Subclass will represent the related Uncertificated REMIC II Regular Interests Z1 or Uncertificated REMIC II Regular Interests Z2, as applicable, specified by the initial Holder of the related Class A-V Certificates pursuant to said Section. The Class P Certificates will not represent ownership of an interest in any REMIC.

Section 10.04  Distributions on the Uncertificated REMIC I Regular Interests and
Uncertificated REMIC II Regular Interests.

(a)    On each Distribution Date the Trustee shall be deemed to distribute to itself, as the holder of the Uncertificated REMIC I Regular Interests and to the holder of the Class R-I Certificate, Uncertificated Accrued Interest on the Uncertificated REMIC I Regular Interests and Class R-I Certificate, *pro rata*, for such Distribution Date, plus any Uncertificated Accrued Interest thereon remaining unpaid from any previous Distribution Date.

(b)     Distributions of principal from the Group I Loans shall be deemed to be made to the Class R-I Certificate, until the principal balance of the Class R-I Certificate has been reduced to zero.

(c)     Distributions of principal from the Loan Groups shall then be deemed to be made to the related Uncertificated REMIC I Regular Interests first, so as to keep the Uncertificated Principal Balance of each such related Uncertificated REMIC I Regular Interest ending with the designation "Y" equal to 0.01% of the aggregate Stated Principal Balance of the Mortgage Loans in the related Loan Group (other than the portion thereof allocable to the related Class A-P Certificates); second, so as to keep the principal balance of each such related Uncertificated REMIC I Regular Interest ending with the designation "X" equal to 0.01% of the Group I Subordinate Component or the Group II Subordinate Component, as the case may be (except that if on any Distribution Date the Subordinate Component for any Loan Group is greater than the Subordinate Component for such Loan Group on the preceding Distribution Date, the least amount of principal shall be distributed to Uncertificated REMIC I Regular Interests I-X and II-X such that the REMIC I Subordinate Balance Ratio is maintained); and third, any remaining principal shall be distributed to the related Uncertificated REMIC I Regular Interest ZZZ. Realized Losses on the Mortgage Loans shall be applied after all distributions have been made on each Distribution Date first, so as to keep the Uncertificated Principal Balance of each Uncertificated REMIC I Regular Interest ending with the designation "Y" equal to 0.01% of the aggregate Stated Principal Balance of the Mortgage Loans in the related Loan Group (other than the portion thereof allocable to the related Class A-P Certificates); second, Realized Losses shall be applied after all distributions have been made on each Distribution Date, so as to keep the principal balance of each Uncertificated REMIC I Regular Interest ending with the designation "X" equal to 0.01% of the Group I Subordinate Component or the Group II Subordinate Component, as the case may be (except that if on any Distribution Date the Subordinate Component for any Group of Loans is greater than the Subordinate Component for such Group of Loans on the preceding Distribution Date, the least amount of Realized Losses shall be applied to Uncertificated REMIC I Regular Interests I-X and II-X such that the REMIC I Subordinate Balance Ratio is maintained); and third, the remaining Realized Losses shall be allocated to the related Uncertificated REMIC I Regular Interest ZZZ.

(d)     Distributions of principal and interest, and the allocation of Realized Losses to the Uncertificated REMIC II Regular Interests (other than Uncertificated REMIC II Regular Interests Z) shall be deemed made in accordance with such distributions and allocations as made and applied to the Class II-A-1 and Class II-A-2 Certificates, as applicable.

(e)     In determining from time to time the amounts distributable on the Uncertificated REMIC I or II Regular Interests, Realized Losses allocated to the REMIC II Regular Interests shall be deemed allocated, taking into account the provisions of (c) above, proportionately to the Uncertificated REMIC I Regular Interests corresponding to the related Loan Group in which the Realized Loss has occured.

(f)     Notwithstanding the deemed distributions on the Uncertificated REMIC I or II Regular Interests described in this Section 10.04, distributions of funds from the Certificate Account shall be made only in accordance with Section 4.02.

Section 10.05 <u>Compliance with Withholding Requirements</u>.

Notwithstanding any other provision of this Agreement, the Trustee or any Paying Agent, as applicable, shall comply with all federal withholding requirements respecting payments to Certificateholders, including interest or original issue discount payments or advances thereof that the Trustee or any Paying Agent, as applicable, reasonably believes are applicable under the Code. The consent of Certificateholders shall not be required for such withholding. In the event the Trustee or any Paying Agent, as applicable, does withhold any amount from interest or original issue discount payments or advances thereof to any Certificateholder pursuant to federal withholding requirements, the Trustee or any Paying Agent, as applicable, shall indicate the amount withheld to such Certificateholder pursuant to the terms of such requirements.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

Section 11.01  <u>Amendment</u>.  (See Section 11.01 of the Standard Terms)

Section 11.02  <u>Recordation of Agreement, Counterparts</u>.  (See Section 11.02 of the Standard Terms)

Section 11.03  <u>Limitation on Rights of Certificateholders</u>.  (See Section 11.03 of the Standard Terms)

Section 11.04  <u>Governing Laws</u>.  (See Section 11.04 of the Standard Terms)

Section 11.05  <u>Notices</u>.

All demands and notices hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by registered mail, postage prepaid (except for notices to the Trustee which shall be deemed to have been duly given only when received), to the appropriate address for each recipient listed in the table below or, in each case, such other address as may hereafter be furnished in writing to the Master Servicer, the Trustee and the Company, as applicable:

| Recipient | Address |
|---|---|
| Company | 8400 Normandale Lake Boulevard Suite 250, Minneapolis, Minnesota 55437, Attention: President |
| Master Servicer | 2255 N. Ontario Street, Suite 400 Burbank, California 91504-2130, Attention: Managing Director/Master Servicing |
| Trustee | U.S. Bank National Association Mail Code: EP-MN-WS3D 60 Livingston Avenue St. Paul, Minnesota 55107-2292 Attention:  Structured Finance/RFMSI 2007-S9 |
| Fitch Ratings | One State Street Plaza New York, New York  10004 |
| Standard & Poor's | 55 Water Street New York, New York 10041 |

Any notice required or permitted to be mailed to a Certificateholder shall be given by first class mail, postage prepaid, at the address of such Holder as shown in the Certificate Register.  Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have been duly given, whether or not the Certificateholder receives such notice.

Section 11.06   <u>Required Notices to Rating Agency and Subservicer</u>.  (See Section 11.06 of the Standard Terms)

Section 11.07   <u>Severability of Provisions</u>.  (See Section 11.07 of the Standard Terms)

Section 11.08   <u>Supplemental Provisions for Resecuritization</u>.  (See Section 11.08 of the Standard Terms)

Section 11.09   <u>Allocation of Voting Rights</u>.

97.0% of all Voting Rights shall be allocated among Holders of Certificates, other than the Interest Only Certificates and the Class R Certificates, in proportion to the outstanding Certificate Principal Balances of their respective Certificates, 1.0% of all Voting Rights shall be allocated among the Holders of the Class I-A-V Certificates, 1.0% of all Voting Rights shall be allocated among the Holders of the Class II-A-V Certificates and 0.5% and 0.5% of all Voting Rights shall be allocated among the Holders of the Class R-I and Class R-II Certificates, respectively, in accordance with their respective Percentage Interests.

Section 11.10   <u>No Petition</u>.  (See Section 11.10 of the Standard Terms).

## ARTICLE XII

### COMPLIANCE WITH REGULATION AB
### (SEE ARTICLE XII OF THE STANDARD TERMS)

IN WITNESS WHEREOF, the Company, the Master Servicer and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized and their respective seals, duly attested, to be hereunto affixed, all as of the day and year first above written.

[Seal]

**RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC.**

Attest: _____

By: _____
Name: Tim Jacobson
Title:   Vice President

Name: Heather Anderson
Title:   Vice President


[Seal]

**RESIDENTIAL FUNDING COMPANY, LLC**

Attest: _____

By: _____
Name: Heather Anderson
Title:   Associate

Name: Tim Jacobson
Title:   Associate


[Seal]

**U.S. BANK NATIONAL ASSOCIATION,
as Trustee**

Attest: _____

By: _____
Name:

Name:
Title:

Title:

*Series Supplement
RFMSI Series 2007-S9*

IN WITNESS WHEREOF, the Company, the Master Servicer and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized and their respective seals, duly attested, to be hereunto affixed, all as of the day and year first above written.

[Seal]

**RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC.**

Attest: _____

By: _____

Name: Tim Jacobson
Title:  Vice President

Name: Heather Anderson
Title:  Vice President

[Seal]

**RESIDENTIAL FUNDING COMPANY, LLC**

Attest: _____

By: _____

Name: Heather Anderson
Title:  Associate

Name: Tim Jacobson
Title:  Associate

[Seal]

**U.S. BANK NATIONAL ASSOCIATION, as Trustee**

Attest: _____

By: _____

Name:
Title:

Tamara Schultz-Fugh
Vice President

Name: Michelle Moeller
Title: Assistant Vice President

STATE OF MINNESOTA )
                        ) ss.:
COUNTY OF HENNEPIN )

        On the 20th day of November, 2007 before me, a notary public in and for said State, personally appeared Heather Anderson, known to me to be a Vice President of Residential Funding Mortgage Securities I, Inc., one of the corporations that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public

AMY SUE OLSON
Notary Public
Minnesota
My Commission Expires Jan. 31, 2010

[Notarial Seal]

STATE OF MINNESOTA    )
                                      ) ss.:
COUNTY OF HENNEPIN    )

On the 20th day of November, 2007 before me, a notary public in and for said State, personally appeared Tim Jacobson, known to me to be an Associate of Residential Funding Company, LLC, one of the limited liability companies that executed the within instrument, and also known to me to be the person who executed it on behalf of said limited liability company, and acknowledged to me that such limited liability company executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

AMY SUE OLSON
Notary Public
Minnesota
My Commission Expires Jan. 31, 2010

[Notarial Seal]

Notary Public

5186366 07130633

STATE OF MINNESOTA    )
                                      ) ss.:
COUNTY OF RAMSEY    )

On the 20th day of November, 2007 before me, a notary public in and for said State, personally appeared _____Michelle Moeller___, known to me to be an ___Assistant Vice President___ of U.S. Bank National Association, a national banking association that executed the within instrument, and also known to me to be the person who executed it on behalf of said national banking association and acknowledged to me that such national banking association executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

TIFFANY M. JEANSON
Notary Public
Minnesota
My Commission Expires January 31, 2009

Notary Public

[Notarial Seal]

**EXHIBIT ONE-I**

**MORTGAGE LOAN SCHEDULE**

**GROUP I LOANS**

(Available from the Company upon request)

# EXHIBIT ONE-II

## MORTGAGE LOAN SCHEDULE

## GROUP II LOANS

(Available from the Company upon request)

**EXHIBIT TWO-I**

**SCHEDULE OF DISCOUNT FRACTIONS**

**FOR GROUP I LOANS**

(Available from the Company upon request)

## EXHIBIT TWO-II

## SCHEDULE OF DISCOUNT FRACTIONS

## FOR GROUP II LOANS

(Available from the Company upon request)

## EXHIBIT THREE

## INFORMATION TO BE INCLUDED IN
## MONTHLY DISTRIBUTION DATE STATEMENT

(i)    the applicable Record Date, Determination Date and Distribution Date;

(ii)    the aggregate amount of payments received with respect to the Mortgage Loans, including prepayment amounts;

(iii)    the Servicing Fee and Subservicing Fee payable to the Master Servicer and the Subservicer;

(iv)    the amount of any other fees or expenses paid and the identity of the party receiving such fees or expenses;

(v)    (a) the amount of such distribution to the Certificateholders of such Class applied to reduce the Certificate Principal Balance thereof, and (b) the aggregate amount included therein representing Principal Prepayments;

(vi)    the amount of such distribution to Holders of such Class of Certificates allocable to interest;

(vii)    if the distribution to the Holders of such Class of Certificates is less than the full amount that would be distributable to such Holders if there were sufficient funds available therefor, the amount of the shortfall;

(viii)    the aggregate Certificate Principal Balance of each Class of Certificates before and after giving effect to the amounts distributed on such Distribution Date, separately identifying any reduction thereof due to Realized Losses other than pursuant to an actual distribution of principal;

(ix)    for each Loan Group, the weighted average remaining term to maturity of the Mortgage Loans after giving effect to the amounts distributed on such Distribution Date;

(x)    for each Loan Group, the weighted average Mortgage Rates of the Mortgage Loans after giving effect to the amounts distributed on such Distribution Date;

(xi)    if applicable, the Special Hazard Amount, Fraud Loss Amount and Bankruptcy Amount as of the close of business on the applicable Distribution Date;

(xii)    for each Loan Group, the number and Stated Principal Balance of the Mortgage Loans after giving effect to the distribution of principal on such Distribution Date and the number of Mortgage Loans at the beginning and end of the preceding Due Period;

(xiii)   for each Loan Group, on the basis of the most recent reports furnished to it by Sub-Servicers, the number and Stated Principal Balances of Mortgage Loans that are Delinquent (A) 30-59 days, (B) 60-89 days and (C) 90 or more days and the number and Stated Principal Balance of Mortgage Loans that are in foreclosure;

(xiv)   for each Loan Group, the aggregate amount of Realized Losses for such Distribution Date;

(xv)   the amount, terms and general purpose of any Advance by the Master Servicer pursuant to Section 4.04 of the Standard Terms;

(xvi)   any material modifications, extensions or waivers to the terms of the Mortgage Loans during the Due Period or that have cumulatively become material over time;

(xvii)   any material breaches of Mortgage Loan representations or warranties or covenants in the Agreement.

(xviii)  in the aggregate and for each Loan Group, the number, Stated Principal Balance and actual principal balance of REO Properties;

(xix)   the aggregate Accrued Certificate Interest remaining unpaid, if any, for each Class of Certificates, after giving effect to the distribution made on such Distribution Date;

(xx)   the Pass-Through Rate with respect to each Class of Class A-V Certificates;

(xxi)   the Notional Amount with respect to each class of Interest Only Certificates;

(xxii)  the occurrence of the Credit Support Depletion Date;

(xxiii) the Senior Accelerated Distribution Percentages applicable to such distribution;

(xxiv) the Senior Percentages and Subordinate Class Percentage for such Distribution Date;

(xxv)  in the aggregate and for each Loan Group, the aggregate amount of any recoveries on previously foreclosed loans; and

(xxvi) payment made from the Class P Reserve Account on such Distribution Date and the balance of the Class P Reserve Account after giving effect to such amounts.

In the case of information furnished pursuant to clauses (v) and (vi) above, the amounts shall be expressed as a dollar amount per Certificate with a $1,000 denomination.

The Trustee's internet website will initially be located at http://www.usbank.com/mbs.   To receive this statement via first class mail, telephone the Trustee at 1 (800) 934-6802.

EXHIBIT THREE-2

# EXHIBIT FOUR

## STANDARD TERMS OF POOLING AND SERVICING
## AGREEMENT DATED AS OF NOVEMBER 1, 2007

[See Standard Terms of Pooling and Servicing Agreement at Tab 3 of the closing set]

# EXHIBIT FIVE

## EXCHANGEABLE COMBINATION GROUP

### Combination Group

| | Exchangeable Classes | | | | Exchanged Classes | | |
| Class | Initial Certificate Principal Balance | Percentage of Current Certificate Principal Balance | Pass-Through Rate | Class | Initial Certificate Principal Balance | Percentage of Current Certificate Principal Balance | Pass-Through Rate |
|---|---|---|---|---|---|---|---|
| Class II-A-1 Certificates | $28,931,000 | 100% | 5.50% | Class II-A-3 Certificates | $30,161,000 | 100% | 5.50% |
| Class II-A-2 Certificates | $1,230,000 | 100% | 5.50% | | | | |

# STANDARD TERMS OF
# POOLING AND SERVICING AGREEMENT

Dated as of November 1, 2007

Residential Funding Mortgage Securities I, Inc.

Mortgage Pass-Through Certificates

5187548

# TABLE OF CONTENTS

**Page**

ARTICLE I      DEFINITIONS.............................................................................. 1

    Section 1.01      Definitions.................................................................. 1

    Section 1.02      Use of Words and Phrases. ................................................ 33

ARTICLE II      CONVEYANCE OF MORTGAGE LOANS;  ORIGINAL
ISSUANCE OF CERTIFICATES ................................................ 34

    Section 2.01      Conveyance of Mortgage Loans. ........................................ 34

    Section 2.02      Acceptance by Trustee. .................................................... 41

    Section 2.03      Representations, Warranties and Covenants of the Master
Servicer and the Company. ............................................... 42

    Section 2.04      Representations and Warranties of Residential Funding. .................. 44

    Section 2.05      Execution and Authentication of Certificates/Issuance of
Certificates Evidencing Interests in REMIC I Certificates................ 46

    Section 2.06      Conveyance of Uncertificated REMIC I and REMIC II Regular
Interests; Acceptance by the Trustee ................................... 46

    Section 2.07      Issuance of Certificates Evidencing Interests in REMIC II............... 46

    Section 2.08      Purposes and Powers of the Trust...................................... 46

ARTICLE III      ADMINISTRATION AND SERVICING OF MORTGAGE LOANS......... 47

    Section 3.01      Master Servicer to Act as Servicer...................................... 47

    Section 3.02      Subservicing Agreements Between Master Servicer and
Subservicers; Enforcement of Subservicers' and Sellers'
Obligations ............................................................... 49

    Section 3.03      Successor Subservicers .................................................. 50

    Section 3.04      Liability of the Master Servicer ........................................ 50

    Section 3.05      No Contractual Relationship Between Subservicer and Trustee
or Certificateholders...................................................... 50

    Section 3.06      Assumption or Termination of Subservicing Agreements by
Trustee.................................................................... 51

    Section 3.07      Collection of Certain Mortgage Loan Payments; Deposits to
Custodial Account........................................................ 51

    Section 3.08      Subservicing Accounts; Servicing Accounts ..................... 54

    Section 3.09      Access to Certain Documentation and Information Regarding
the Mortgage Loans ...................................................... 55

    Section 3.10      Permitted Withdrawals from the Custodial Account......................... 56

TABLE OF CONTENTS
(continued)

Page

| | | |
|---|---|---:|
| Section 3.11 | Maintenance of the Primary Insurance Policies; Collections Thereunder | 57 |
| Section 3.12 | Maintenance of Fire Insurance and Omissions and Fidelity Coverage | 58 |
| Section 3.13 | Enforcement of Due-on-Sale Clauses; Assumption and Modification Agreements; Certain Assignments | 60 |
| Section 3.14 | Realization Upon Defaulted Mortgage Loans | 62 |
| Section 3.15 | Trustee to Cooperate; Release of Custodial Files | 65 |
| Section 3.16 | Servicing and Other Compensation; Compensating Interest | 66 |
| Section 3.17 | Reports to the Trustee and the Company | 67 |
| Section 3.18 | Annual Statement as to Compliance and Servicing Assessment | 67 |
| Section 3.19 | Annual Independent Public Accountants' Servicing Report | 68 |
| Section 3.20 | Rights of the Company in Respect of the Master Servicer | 68 |
| Section 3.21 | Administration of Buydown Funds | 69 |
| Section 3.22 | Advance Facility | 69 |
| ARTICLE IV | PAYMENTS TO CERTIFICATEHOLDERS | 73 |
| Section 4.01 | Certificate Account | 73 |
| Section 4.02 | Distributions | 74 |
| Section 4.03 | Statements to Certificateholders; Statements to Rating Agencies; Exchange Act Reporting | 74 |
| Section 4.04 | Distribution of Reports to the Trustee and the Company; Advances by the Master Servicer | 76 |
| Section 4.05 | Allocation of Realized Losses | 78 |
| Section 4.06 | Reports of Foreclosures and Abandonment of Mortgaged Property | 78 |
| Section 4.07 | Optional Purchase of Defaulted Mortgage Loans | 78 |
| Section 4.08 | Surety Bond | 79 |
| ARTICLE V | THE CERTIFICATES | 79 |
| Section 5.01 | The Certificates | 79 |
| Section 5.02 | Registration of Transfer and Exchange of Certificates | 82 |
| Section 5.03 | Mutilated, Destroyed, Lost or Stolen Certificates | 88 |
| Section 5.04 | Persons Deemed Owners | 88 |

## TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| Section 5.05 | Appointment of Paying Agent | 88 |
| Section 5.06 | U.S.A. Patriot Act Compliance. | 89 |
| Section 5.07 | Exchangeable Certificates | 89 |
| Section 5.08 | Tax Status and Reporting of Exchangeable Certificates | 89 |
| ARTICLE VI | THE COMPANY AND THE MASTER SERVICER | 89 |
| Section 6.01 | Respective Liabilities of the Company and the Master Servicer | 89 |
| Section 6.02 | Merger or Consolidation of the Company or the Master Servicer; Assignment of Rights and Delegation of Duties by Master Servicer | 89 |
| Section 6.03 | Limitation on Liability of the Company, the Master Servicer and Others | 91 |
| Section 6.04 | Company and Master Servicer Not to Resign | 91 |
| ARTICLE VII | DEFAULT | 92 |
| Section 7.01 | Events of Default | 92 |
| Section 7.02 | Trustee or Company to Act; Appointment of Successor | 94 |
| Section 7.03 | Notification to Certificateholders | 95 |
| Section 7.04 | Waiver of Events of Default | 95 |
| ARTICLE VIII | CONCERNING THE TRUSTEE | 95 |
| Section 8.01 | Duties of Trustee | 95 |
| Section 8.02 | Certain Matters Affecting the Trustee | 97 |
| Section 8.03 | Trustee Not Liable for Certificates or Mortgage Loans | 99 |
| Section 8.04 | Trustee May Own Certificates | 99 |
| Section 8.05 | Master Servicer to Pay Trustee's Fees and Expenses; Indemnification | 99 |
| Section 8.06 | Eligibility Requirements for Trustee | 100 |
| Section 8.07 | Resignation and Removal of the Trustee | 101 |
| Section 8.08 | Successor Trustee | 102 |
| Section 8.09 | Merger or Consolidation of Trustee | 102 |
| Section 8.10 | Appointment of Co-Trustee or Separate Trustee | 102 |
| Section 8.11 | Appointment of the Custodian | 103 |
| Section 8.12 | Appointment of Office or Agency | 104 |

# TABLE OF CONTENTS
(continued)

Page

ARTICLE IX      TERMINATION OR OPTIONAL PURCHASE OF ALL
CERTIFICATES .......................................................................................... 104

Section 9.01    Optional Purchase by the Master Servicer of All Certificates;
Termination Upon Purchase by the Master Servicer or
Liquidation of All Mortgage Loans ................................................. 104

Section 9.02    Additional Termination Requirements ............................................ 108

Section 9.03    Termination of Multiple REMICs .................................................. 109

ARTICLE X      REMIC PROVISIONS ........................................................................ 109

Section 10.01    REMIC Administration .................................................................... 109

Section 10.02    Master Servicer, REMIC Administrator and Trustee
Indemnification ................................................................................ 112

Section 10.03    Designation of REMIC(s) ............................................................... 113

Section 10.04    Distributions on the Uncertificated REMIC I and REMIC II
Regular Interests .............................................................................. 113

Section 10.05    Compliance with Withholding Requirements .................................. 113

ARTICLE XI      MISCELLANEOUS PROVISIONS .............................................. 114

Section 11.01    Amendment ...................................................................................... 114

Section 11.02    Recordation of Agreement; Counterparts ........................................ 116

Section 11.03    Limitation on Rights of Certificateholders ..................................... 117

Section 11.04    Governing Law ................................................................................ 117

Section 11.05    Notices .............................................................................................. 118

Section 11.06    Required Notices to Rating Agency and Subservicer .................... 118

Section 11.07    Severability of Provisions ............................................................... 119

Section 11.08    Supplemental Provisions for Resecuritization ............................... 119

Section 11.09    Allocation of Voting Rights ............................................................ 119

Section 11.10    No Petition ........................................................................................ 119

ARTICLE XII     COMPLIANCE WITH REGULATION AB ............................................. 120

Section 12.01    Intent of the Parties; Reasonableness ............................................. 120

Section 12.02    Additional Representations and Warranties of the Trustee ............. 120

Section 12.03    Information to be Provided by the Trustee ..................................... 121

Section 12.04    Report on Assessment of Compliance and Attestation ................... 121

Section 12.05    Indemnification; Remedies .............................................................. 122

# TABLE OF CONTENTS
(continued)

EXHIBITS

| | |
|---|---|
| Exhibit A: | Form of Class A Certificate |
| Exhibit A-I: | Form of Class X Certificate |
| Exhibit B: | Form of Class M Certificate |
| Exhibit C: | Form of Class B Certificate |
| Exhibit C-I: | Form of Class P Certificate |
| Exhibit C-II: | Form of Class SB Certificate |
| Exhibit D: | Form of Class R Certificate |
| Exhibit E: | Form of Seller/Servicer Contract |
| Exhibit F: | Forms of Request for Release |
| Exhibit G-1: | Form of Transfer Affidavit and Agreement |
| Exhibit G-2: | Form of Transferor Certificate |
| Exhibit H: | Form of Investor Representation Letter |
| Exhibit I: | Form of Transferor Representation Letter |
| Exhibit J: | Form of Rule 144A Investment Representation Letter |
| Exhibit K: | Text of Amendment to Pooling and Servicing Agreement Pursuant to Section 11.01(e) for a Limited Guaranty |
| Exhibit L: | Form of Limited Guaranty |
| Exhibit M: | Form of Lender Certification for Assignment of Mortgage Loan |
| Exhibit N: | Request for Exchange Form |
| Exhibit O: | Form of Form 10-K Certification |
| Exhibit P: | Form of Back-Up Certification to Form 10-K Certificate |
| Exhibit Q: | Information to be Provided by the Master Servicer to the Rating Agencies Relating to Reportable Modified Mortgage Loans |
| Exhibit R: | Servicing Criteria |
| Exhibit S: | Form of Exchange Notice |

This is the Standard Terms of Pooling and Servicing Agreement, dated as of November 1, 2007 (the "Standard Terms", and as incorporated by reference into a Series Supplement dated as of the date specified therein, the "Pooling and Servicing Agreement" or "Agreement"), among RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC., as the company (together with its permitted successors and assigns, the "Company"), RESIDENTIAL FUNDING COMPANY, LLC, as master servicer (together with its permitted successors and assigns, the "Master Servicer"), and the trustee named in the applicable Series Supplement (together with its permitted successors and assigns, the "Trustee").

## PRELIMINARY STATEMENT:

The Company intends to sell certain mortgage pass-through certificates (collectively, the "Certificates"), to be issued under the Agreement in multiple classes, which in the aggregate will evidence the entire beneficial ownership interest in the Mortgage Loans.

In consideration of the mutual agreements herein contained, the Company, the Master Servicer and the Trustee agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01    Definitions.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Article.

Accretion Termination Date:  As defined in the Series Supplement.

Accrual Certificates:  As defined in the Series Supplement.

Accrued Certificate Interest:  With respect to each Distribution Date, as to any Class or Subclass of Certificates (other than any Principal Only Certificates), interest accrued during the related Interest Accrual Period at the related Pass-Through Rate on the Certificate Principal Balance or Notional Amount thereof immediately prior to such Distribution Date. Accrued Certificate Interest will be calculated on the basis of a 360-day year, consisting of twelve 30-day months. In each case Accrued Certificate Interest on any Class or Subclass of Certificates will be reduced by the amount of:

(i)    Prepayment Interest Shortfalls on all Mortgage Loans or, if the Mortgage Pool is comprised of two or more Loan Groups, on the Mortgage Loans in the related Loan Group (to the extent not offset by the Master Servicer with a payment of Compensating Interest as provided in Section 4.01),

(ii)    the interest portion (adjusted to the Net Mortgage Rate (or the Modified Net Mortgage Rate in the case of a Modified Mortgage Loan)) of Realized Losses on all Mortgage Loans or, if the Mortgage Pool is comprised of two or more Loan Groups, on the Mortgage Loans in the related Loan Group (including Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses and Extraordinary Losses) not allocated solely to one or more specific Classes of Certificates pursuant to Section 4.05,

(iii)    the interest portion of Advances that were (A) previously made with respect to a Mortgage Loan or REO Property on all Mortgage Loans or, if the Mortgage Pool is comprised of two or more Loan Groups, on the Mortgage Loans in the related Loan Group, which remained unreimbursed following the Cash Liquidation or REO Disposition of such Mortgage Loan or REO Property and (B) made with respect to delinquencies that were ultimately determined to be Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary Losses on all Mortgage Loans or, if the Mortgage Pool is comprised of two or more Loan Groups, on the Mortgage Loans in the related Loan Group, and

(iv)    any other interest shortfalls not covered by the subordination provided by the related Class M Certificates and related Class B Certificates, including interest that is not collectible from the Mortgagor pursuant to the Relief Act,

with all such reductions allocated (A) among all of the Certificates in proportion to their respective amounts of Accrued Certificate Interest payable on such Distribution Date absent such reductions or (B) if the Mortgage Pool is comprised of two or more Loan Groups, the related Senior Percentage of such reductions among the related Senior Certificates in proportion to the amounts of Accrued Certificate Interest payable from the related Loan Group on such Distribution Date absent such reductions, with the remainder of such reductions allocated among the holders of the related Class M Certificates and the related Class B Certificates in proportion to their respective amounts of Accrued Certificate Interest payable on such Distribution Date absent such reductions. In addition to that portion of the reductions described in the preceding sentence that are allocated to any Class of Class B Certificates or any Class of Class M Certificates, Accrued Certificate Interest on each Class of Class B Certificates or each Class of Class M Certificates will be reduced by the interest portion (adjusted to the Net Mortgage Rate) of Realized Losses that are allocated solely to such Class of Class B Certificates or such Class of Class M Certificates pursuant to Section 4.05.

Addendum and Assignment Agreement:  The Addendum and Assignment Agreement, dated as of January 31, 1995, between MLCC and the Master Servicer.

Additional Collateral:  Any of the following held, in addition to the related Mortgaged Property, as security for a Mortgage Loan:  (i) all money, securities, security entitlements, accounts, general intangibles, payment rights, instruments, documents, deposit accounts, certificates of deposit, commodities contracts and other investment property and other property of whatever kind or description now existing or hereafter acquired which is pledged as security for the repayment of such Mortgage Loan, (ii) third-party guarantees, and (A) all money, securities, security entitlements, accounts, general intangibles, payment rights, instruments,

documents, deposit accounts, certificates of deposit, commodities contracts and other investment property and other property of whatever kind or description now existing or hereafter acquired which is pledged as collateral for such guarantee or (B) any mortgaged property securing the performance of such guarantee, or (iii) such other collateral as may be set forth in the Series Supplement.

Additional Collateral Loan:    Each Mortgage Loan that is supported by Additional Collateral.

Adjusted Mortgage Rate:    With respect to any Mortgage Loan and any date of determination, the Mortgage Rate borne by the related Mortgage Note, less the rate at which the related Subservicing Fee accrues.

Advance:  As to any Mortgage Loan, any advance made by the Master Servicer, pursuant to Section 4.04.

Advance Facility: As defined in Section 3.22.

Advance Facility Notice: As defined in Section 3.22.

Advance Facility Trustee: As defined in Section 3.22.

Advancing Person: As defined in Section 3.22.

Advance Reimbursement Amounts: As defined in Section 3.22.

Affiliate:  With respect to any Person, any other Person controlling, controlled by or under common control with such first Person. For the purposes of this definition, "control" means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Ambac:    Ambac Assurance Corporation (formerly known as AMBAC Indemnity Corporation).

Amount Held for Future Distribution:  As to any Distribution Date and, with respect to any Mortgage Pool that is comprised of two or more Loan Groups, each Loan Group, the total of the amounts held in the Custodial Account at the close of business on the preceding Determination Date on account of (i) Liquidation Proceeds, Subsequent Recoveries, Insurance Proceeds, Curtailments, Mortgage Loan purchases made pursuant to Section 2.02, 2.03, 2.04 or 4.07 and Mortgage Loan substitutions made pursuant to Section 2.03 or 2.04 received or made in the month of such Distribution Date (other than such Liquidation Proceeds, Insurance Proceeds and purchases of Mortgage Loans that the Master Servicer has deemed to have been received in the preceding month in accordance with Section 3.07(b)), and Principal Prepayments in Full made after the related Prepayment Period, and (ii) payments which represent early receipt of scheduled payments of principal and interest due on a date or dates subsequent to the related Due Date.

Appraised Value:  As to any Mortgaged Property, the lesser of (i) the appraised value of such Mortgaged Property based upon the appraisal made at the time of the origination of the related Mortgage Loan, and (ii) the sales price of the Mortgaged Property at such time of origination, except in the case of a Mortgaged Property securing a refinanced or modified Mortgage Loan as to which it is either the appraised value determined above or the appraised value determined in an appraisal at the time of refinancing or modification, as the case may be.

Assigned Contracts:  With respect to any Pledged Asset Loan:  the Credit Support Pledge Agreement; the Funding and Pledge Agreement, among GMAC Mortgage, LLC, National Financial Services Corporation and the Mortgagor or other person pledging the related Pledged Assets;  the Additional Collateral Agreement, between GMAC Mortgage, LLC and the Mortgagor or other person pledging the related Pledged Assets; or such other contracts as may be set forth in the Series Supplement.

Assignment:  An assignment of the Mortgage, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the sale of the Mortgage Loan to the Trustee for the benefit of Certificateholders, which assignment, notice of transfer or equivalent instrument may be in the form of one or more blanket assignments covering Mortgages secured by Mortgaged Properties located in the same county, if permitted by law and accompanied by an Opinion of Counsel to that effect.

Assignment Agreement:  The Assignment and Assumption Agreement, dated the Closing Date, between Residential Funding and the Company relating to the transfer and assignment of the Mortgage Loans.

Assignment Agreement and Amendment of Security Instrument:  With respect to a Sharia Mortgage Loan, the agreement between the consumer and the co-owner pursuant to which all of the co-owner's interest as a beneficiary under the related Sharia Mortgage Loan Security Instrument and the co-owner's interest in the related Mortgaged Property is conveyed to a subsequent owner, which may take the form of an "Assignment Agreement" and an "Amendment of Security Instrument" or an "Assignment Agreement and Amendment of Security Instrument", as applicable.

Assignment of Proprietary Lease:  With respect to a Cooperative Loan, the assignment of the related Cooperative Lease from the Mortgagor to the originator of the Cooperative Loan.

Available Distribution Amount:  As to any Distribution Date and, with respect to any Mortgage Pool comprised of two or more Loan Groups, each Loan Group, an amount equal to (a) the sum of (i) the amount relating to the Mortgage Loans on deposit in the Custodial Account as of the close of business on the immediately preceding Determination Date, including any Subsequent Recoveries, and amounts deposited in the Custodial Account in connection with the substitution of Qualified Substitute Mortgage Loans, (ii) the amount of any Advance made on the immediately preceding Certificate Account Deposit Date, (iii) any amount deposited in the Certificate Account on the related Certificate Account Deposit Date pursuant to the second paragraph of Section 3.12(a), (iv) any amount deposited in the Certificate Account pursuant to Section 4.07 or Section 9.01, (v) any amount that the Master Servicer is not permitted to

withdraw from the Custodial Account or the Certificate Account pursuant to Section 3.16(e), (vi) any amount received by the Trustee pursuant to the Surety Bond in respect of such Distribution Date and (vii) the proceeds of any Pledged Assets received by the Master Servicer, reduced by (b) the sum as of the close of business on the immediately preceding Determination Date of (w) aggregate Foreclosure Profits, (x) the Amount Held for Future Distribution, and (y) amounts permitted to be withdrawn by the Master Servicer from the Custodial Account in respect of the Mortgage Loans pursuant to clauses (ii)-(x), inclusive, of Section 3.10(a). Such amount shall be determined separately for each Loan Group. Additionally, with respect to any Mortgage Pool that is comprised of two or more Loan Groups, if on any Distribution Date Compensating Interest provided pursuant to Section 3.16(e) is less than Prepayment Interest Shortfalls incurred on the Mortgage Loans in connection with Principal Prepayments in Full and Curtailments made in the prior calendar month, such Compensating Interest shall be allocated on such Distribution Date to the Available Distribution Amount for each Loan Group on a pro rata basis in accordance with the respective amounts of such Prepayment Interest Shortfalls incurred on the Mortgage Loans in such Loan Group in respect of such Distribution Date.

Bankruptcy Code: The Bankruptcy Code of 1978, as amended.

Bankruptcy Loss:  With respect to any Mortgage Loan, a Deficient Valuation or Debt Service Reduction; provided, however, that neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Bankruptcy Loss hereunder so long as the Master Servicer has notified the Trustee in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

Book-Entry Certificate:  Any Certificate registered in the name of the Depository or its nominee, and designated as such in the Preliminary Statement to the Series Supplement.

Business Day:  Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the State of New York, the State of Michigan, the State of California, the State of Illinois or the State of Minnesota (and such other state or states in which the Custodial Account or the Certificate Account are at the time located) are required or authorized by law or executive order to be closed.

Buydown Funds:  Any amount contributed by the seller of a Mortgaged Property, the Company or other source in order to enable the Mortgagor to reduce the payments required to be made from the Mortgagor's funds in the early years of a Mortgage Loan.  Buydown Funds are not part of the Trust Fund prior to deposit into the Custodial or Certificate Account.

Buydown Mortgage Loan:  Any Mortgage Loan as to which a specified amount of interest is paid out of related Buydown Funds in accordance with a related buydown agreement.

Calendar Quarter:  A Calendar Quarter shall consist of one of the following time periods in any given year:  January 1 through March 31, April 1 through June 30,  July 1 through September 30, and October 1 through December 31.

Capitalization Reimbursement Amount:  With respect to any Distribution Date and, with respect to any Mortgage Pool comprised of two or more Loan Groups, each Loan Group, the amount of Advances or Servicing Advances that were added to the Stated Principal Balance of all Mortgage Loans or, if the Mortgage Pool is comprised of two or more Loan Groups, on the Mortgage Loans in the related Loan Group, during the prior calendar month and reimbursed to the Master Servicer or Subservicer on or prior to such Distribution Date pursuant to Section 3.10(a)(vii), plus the Capitalization Reimbursement Shortfall Amount remaining unreimbursed from any prior Distribution Date and reimbursed to the Master Servicer or Subservicer on or prior to such Distribution Date.

Capitalization Reimbursement Shortfall Amount:  With respect to any Distribution Date and, with respect to any Mortgage Pool comprised of two or more Loan Groups, each Loan Group, the amount, if any, by which the amount of Advances or Servicing Advances that were added to the Stated Principal Balance of all Mortgage Loans (or, if the Mortgage Pool is comprised of two or more Loan Groups, on the Mortgage Loans in the related Loan Group) during the preceding calendar month exceeds the amount of principal payments on the Mortgage Loans included in the Available Distribution Amount (or, if the Mortgage Pool is comprised of two or more Loan Groups, Available Distribution Amount for the related Loan Group) for that Distribution Date.

Cash Liquidation:  As to any defaulted Mortgage Loan other than a Mortgage Loan as to which an REO Acquisition occurred, a determination by the Master Servicer that it has received all Insurance Proceeds, Liquidation Proceeds and other payments or cash recoveries which the Master Servicer reasonably and in good faith expects to be finally recoverable with respect to such Mortgage Loan.

Certificate Account Deposit Date:  As to any Distribution Date, the Business Day prior thereto.

Certificateholder or Holder:  The Person in whose name a Certificate is registered in the Certificate Register, and, in respect of any Insured Certificates, the Certificate Insurer to the extent of Cumulative Insurance Payments, except that neither a Disqualified Organization nor a Non-United States Person shall be a holder of a Class R Certificate for purposes hereof and, solely for the purpose of giving any consent or direction pursuant to this Agreement, any Certificate, other than a Class R Certificate, registered in the name of the Company, the Master Servicer or any Subservicer or any Affiliate thereof shall be deemed not to be outstanding and the Percentage Interest or Voting Rights evidenced thereby shall not be taken into account in determining whether the requisite amount of Percentage Interests or Voting Rights necessary to effect any such consent or direction has been obtained.  All references herein to "Holders" or "Certificateholders" shall reflect the rights of Certificate Owners as they may indirectly exercise such rights through the Depository and participating members thereof, except as otherwise specified herein; provided, however, that the Trustee shall be required to recognize as a "Holder"

or "Certificateholder" only the Person in whose name a Certificate is registered in the Certificate Register.

Certificate Insurer:  As defined in the Series Supplement.

Certificate Owner:  With respect to a Book-Entry Certificate, the Person who is the beneficial owner of such Certificate, as reflected on the books of an indirect participating brokerage firm for which a Depository Participant acts as agent, if any, and otherwise on the books of a Depository Participant, if any, and otherwise on the books of the Depository.

Certificate Principal Balance:  With respect to each Certificate (other than any Interest Only Certificate), on any date of determination, an amount equal to:

(i)     the Initial Certificate Principal Balance of such Certificate as specified on the face thereof, plus

(ii)    any Subsequent Recoveries added to the Certificate Principal Balance of such Certificate pursuant to Section 4.02, plus

(iii)   in the case of each Accrual Certificate, an amount equal to the aggregate Accrued Certificate Interest added to the Certificate Principal Balance thereof prior to such date of determination, minus

(iv)    the sum of (x) the aggregate of all amounts previously distributed with respect to such Certificate (or any predecessor Certificate) and applied to reduce the Certificate Principal Balance thereof pursuant to Section 4.02(a) and (y) the aggregate of all reductions in Certificate Principal Balance deemed to have occurred in connection with Realized Losses which were previously allocated to such Certificate (or any predecessor Certificate) pursuant to Section 4.05;

provided, that the Certificate Principal Balance of each Certificate of the Class of Subordinate Certificates with the Lowest Priority at any given time shall be further reduced by an amount equal to the Percentage Interest represented by such Certificate multiplied by the excess, if any, of (A) the then aggregate Certificate Principal Balance of all Classes of Certificates then outstanding over (B) the then aggregate Stated Principal Balance of the Mortgage Loans.

Certificate Register and Certificate Registrar:  The register maintained and the registrar appointed pursuant to Section 5.02.

Class:  Collectively, all of the Certificates bearing the same designation.  The initial Class A-V Certificates and any Subclass thereof issued pursuant to Section 5.01(c) shall be a single Class for purposes of this Agreement.

Class A-P Certificate:  Any one of the Certificates designated as a Class A-P Certificate.

Class A-P Collection Shortfall:  With respect to the Cash Liquidation or REO Disposition of a Discount Mortgage Loan, any Distribution Date and, with respect to any Mortgage Pool comprised of two or more Loan Groups, each Loan Group, the excess of the amount described in