Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Counsel for Ally Financial Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC., et al. | ) ) ) | Case No. 12-12020 (MG) |
| Debtors. | ) ) ) | Jointly Administered |

**ALLY FINANCIAL INC.'S OMNIBUS RESPONSE TO THE OBJECTIONS OF THE COMMITTEE, CERTAIN TRUSTEES FOR RESIDENTIAL MORTGAGE BACKED SECURITIES, AND THE UNITED STATES OF AMERICA TO THE ALLY DIP AND CASH COLLATERAL ORDER**

## TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ..................................................................................................1

**BACKGROUND** ..........................................................................................................................2

**I.    Response to the Committee's Objection** ........................................................................3

**II.   Response to the Trustees' Limited Objection** ................................................................4

    A.    The Trustees Do Not Have Valid Rights of Setoff......................................................5

    B.    The Trustees Do Not Have Valid Rights of Recoupment.........................................7

    C.    Paragraph 30 of the Interim Order Is Appropriate......................................................8

    D.    The Trustees Are Not Entitled to Adequate Protection ............................................9

**III.  Response to the U.S. Limited Objection** ......................................................................10

**CONCLUSION** ..........................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**

*Global Cable, Inc., v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,
    No. 02-CIV-9770, 2006 WL 1559437, at *2 (S.D.N.Y. June 7, 2006) ....................................... 6

*In re Adelphia Commc'ns Corp.*,
    No. 02-CIV-9770, 2006 WL 1559437, at *2 ............................................................................ 7

*In re American Home Mortgage Holdings, Inc.*,
    402 B.R. 87 (Bankr. D. Del. 2009) ........................................................................................... 8

*In re Benedictine Hosp.*,
    2007 WL 5830252, at *2 (N.Y. Sup. Jan. 10, 2007) ................................................................. 7

*In re Lehman Brothers Holdings Inc.*,
    404 B.R. 752 (Bankr. S.D.N.Y. 2009) .................................................................................. 5, 9

*In re Prudentia*l,
    148 B.R. 730 (Bankr. S.D.N.Y. 1992) ..................................................................................... 6

*In re Westchester Structures, Inc.*,
    181 B.R. 730 (Bankr. S.D.N.Y. 1995) ..................................................................................... 6

*In re WL Homes LLC*,
    2012 WL 176659, *4 (Bankr. D. Del. May 16, 2012) ............................................................. 5

*In re WorldCom, Inc.*,
    304 B.R. 611 (Bankr. S.D.N.Y. 2004) ................................................................................... 11

*New York State Elec. & Gas Corp. v. McMahon (In re McMahon)*,
    129 F.3d 93 (2d Cir. 1997) ....................................................................................................... 7

*Northville Indus. Corp. v. State*,
    788 N.Y.S.2d 464 (N.Y. App. Div. 2005) ............................................................................... 8

*Trojan Hardware Co., Inc. v. Bonacquisti Const. Corp.*,
    534 N.Y.S.2d 789 (N.Y.A.D. 1988) ........................................................................................ 6

**Statutes**

11 U.S.C. § 363(c)(2) ....................................................................................................................... 9
11 U.S.C. § 364(d)(1)(B) ............................................................................................................... 10
11 U.S.C. § 506(a) ......................................................................................................................... 11
11 U.S.C. § 553 ............................................................................................................................... 7

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Ally Financial Inc. ("**AFI**") hereby submits this reply to (a) the Omnibus Objection [Docket No. 301] (the "**Committee Objection**") of the Official Committee of Unsecured Creditors (the "**Committee**") to the *Corrected Debtors' Motion for Interim and Final Orders Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 507(b) and Bankruptcy Rules 4001 and 6004: (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral and Related Relief, (III) Granting Adequate Protection and (IV) Scheduling A Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c), and (V) Granting Related Relief* [Docket No. 42] (the "**Motion**"),[1] (b) the Limited Objection [Docket No. 288] (the "**Trustee Objection**") of certain trustees for residential mortgage backed securities trusts (the "**Trustees**") to the Motion, and (c) the Limited Objection [Docket No. 294] (the "**U.S. Objection**" and, together with the Committee Objection and the Trustee Objection, the "**Objections**") of the United States of America to the Motion. In response to the Objections and in support of the Motion, AFI respectfully states as follows:

## PRELIMINARY STATEMENT

From the outset, AFI has sought to assist the Debtors in achieving a soft landing into chapter 11 and maximizing the value of their estates for the benefit of all constituents. As reflected in the Settlement and Plan Sponsor Agreement dated as of May 14, 2012 between the Debtors and AFI (the "***Ally-ResCap Settlement Agreement***"), AFI has agreed to provide assistance to the Debtors in numerous forms, including providing to them the debtor-in-possession financing and use of cash collateral as described in the Motion. The Objections do not oppose generally the Debtors' use of cash collateral and the AFI debtor-in-possession

---

[1] Capitalized terms used herein without definition shall have the meaning set forth in the Motion.

financing. Instead, the Objections focus on certain specific provisions of the proposed final order in relation to the Motion. As further described below, AFI is engaged in negotiations to attempt to resolve the Objections and has made some progress. Nonetheless, to the extent that the Objections cannot be resolved consensually, AFI believes that the Objections should be overruled for the reasons set forth below.

## BACKGROUND

1. On May 14, 2012 (the "*Petition Date*"), Residential Capital, LLC (together with certain of its subsidiaries and affiliates, the "*Debtors*") filed the Motion seeking entry of an interim order and a final order (the "*Final Order*") (a) authorizing the Debtors to obtain postpetition financing from AFI on a secured, superpriority basis (the "*AFI DIP Facility*"), (b) authorizing the use of cash collateral and related relief, (c) granting adequate protection to AFI and the holders of the 9.625% Junior Secured Notes Due 2015 (the "*Junior Secured Noteholders*"), and (d) scheduling a final hearing regarding the same.

2. The AFI DIP Facility resulted from a request by the Debtors shortly before the Petition Date for additional financing beyond the financing they had arranged with Barclays. AFI agreed to provide the AFI DIP Facility as part of its efforts to assist the Debtors in achieving a soft landing in these chapter 11 cases and as a bridge to confirmation of a chapter 11 plan consistent with the Ally-ResCap Settlement Agreement.

3. On May 16, 2012, the Court entered an order granting the relief requested in the Motion on an interim basis [Docket No. 89] (the "*Interim Order*").

4. On June 11, 2012, the Committee, the United States and the Trustees filed their respective Objections to the Motion. The Objections focus on specific provisions of the Interim Order.

2

5.      Consistent with its efforts to facilitate the Debtors' chapter 11 cases towards a resolution that maximizes value, AFI has engaged in discussions to try to resolve each of the Objections consensually.  Those discussions are ongoing, and AFI is hopeful that they will result in the consensual resolution of the Objections, but there are no guarantees.  An update on the status of discussions concerning the Objections and AFI's reply in relation to certain points raised therein is set forth below.

I.      **Response to the Committee's Objection**

6.      As set forth in the Committee Objection, the Committee has objected to a number of provisions in the Interim Order.  AFI believes that the provisions identified by the Committee are appropriate as originally drafted, but has engaged in discussions with the Committee to attempt to reach a consensual resolution of the Committee Objection.  To that end, AFI is prepared to agree to modifications to the Final Order in relation to the following points:

- **Superpriority Claims**.  Superpriority claims under section 507(b) of the Bankruptcy Code shall be paid only after the secured lenders have exhausted recoveries from their collateral and AFI will not be entitled to payment on account of any superpriority claim from the proceeds of any avoidance action concerning the Ally Revolver or the Ally LOC.

- **Event of Default Concerning Payment in Full From Asset Sales**.  There shall be no event of default under the AFI DIP Facility requiring the payoff in full of the Barclays DIP and the AFI DIP Facility from a sale of assets, provided that any order approving the sale of assets that are a secured lender's collateral directs that the proceeds of such sale go to pay down the relevant secured debt.

- **Replacement Sale Agreements**.  There shall be no event of default requiring Court approval within 60 days of a replacement sale agreement if either the Ally Sale Agreement or the Nationstar Sale Agreement is terminated.

- **Adequate Protection Liens**.  To the extent that any adequate protection payments are made to a party whose debt is later determined to be undersecured, such adequate protection payments will be recharacterized as payments of principal of the prepetition secured debt, subject to further order of the Court.

- **Notice of Termination**.  There will be a seven-day notice period before enforcement of termination rights on collateral.

3

- **Extent of Adequate Protection Liens**. The adequate protection liens to be provided with respect to the Debtors' equity in the two newly formed debtor borrowers under the Barclays DIP Facility will only be to the extent that the secured parties had valid prepetition liens on the equity of the non-debtor entities from which the assets were transferred to the Debtors.

- **Reports and Budget**. The Committee will be entitled to reports when provided and consultation rights.

7. As demonstrated from the above list, substantial progress has been made with respect to the Committee Objection. AFI is continuing to engage in discussions with the Committee concerning the remaining provisions identified in the Committee Objection, including the covenant in the Final Order requiring the Debtors to perform under the Ally-ResCap Settlement Agreement, the length of the Committee's challenge period with respect to the secured debt claims, and the Committee budget with respect to investigating such claims. To the extent agreement is not reached, AFI respectfully requests that the Committee Objection should be overruled.

## II. Response to the Trustees' Limited Objection

8. The Trustee Objection solely relates to paragraph 30 of the Interim Order[2] and is based upon a faulty premise – that the Trustees have valid rights of setoff and recoupment with respect to their contingent prepetition Trust Claims[3] against the Debtors. Because no such valid rights exist, the Objection should be overruled. AFI further notes that the Trustee Objection demonstrates the need for protection against alleged setoff and recoupment rights of the Trustees. AFI is not willing to permit the Debtors to use its Cash Collateral to fund servicer advances if the Trustees are able to assert senior rights of setoff or recoupment relating to allegedly billions of

---

[2] Paragraph 30 of the Interim Order provides that: "The parties on whose behalf the Borrowers are making servicing advances hereby waive any and all rights of setoff or recoupment against the Debtors and AFI to the extent such advances are directly funded by Cash Collateral."

[3] "Trust Claims" as used herein shall have the meaning set forth in the Trustee Limited Objection.

4

dollars of liability against such postpetition servicer advances. Accordingly, AFI believes that the Trustee Objection should be overruled.

### A.   The Trustees Do Not Have Valid Rights of Setoff

9.   The Trustees assert that they "unquestionably have setoff rights under New York law." (Trustee Objection at ¶13). That assertion is based solely upon general allegations, without any evidence, that the Trustees have prepetition Trust Claims against certain of the Debtors and that those same Debtors have prepetition claims (Servicing Advance Receivables) against the Trustees.[4]

10.   Further, the possibility that the Trustees and the Debtors may have mutual claims, as defined in section 101(5) of the Bankruptcy Code, does not automatically entitle the Trustees to assert rights of setoff. *See, e.g., In re WL Homes LLC*, No. 09-10571, 2012 WL 176659, at *4 (Bankr. D. Del. May 16, 2012) (stating that even though a claim "can exist under the Code before a right to payment exists . . . does not mean that such a claim always provides the basis for a right of setoff."). Indeed, the Bankruptcy Code does not create any right of setoff. Instead, non-bankruptcy law determines a creditor's right to setoff. *See, e.g., In re Lehman Bros. Holdings Inc.*, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009) ("Although the Bankruptcy Code does not itself establish a right of setoff, section 553 of the Bankruptcy Code recognizes and preserves any right to setoff that exists under applicable non-bankruptcy law, to the extent that the conditions of section 553 have been satisfied.").

---

[4]   None of the Trust Claims are described with any specificity or as being in amounts that were absolutely owed by the Debtors as of the Petition Date. In addition, the Trustees have not provided any evidence supporting the alleged Trust Claims. In discussions to resolve the Trustee Objection, AFI inquired as to specific information concerning the Trust Claims, and has not yet received any information that there are non-disputed, non-contingent Trust Claims of the Trustees existing as of the Petition Date.

5

11. Here, to the best of AFI's knowledge and after conferring with the Debtors and the Trustees' counsel, any Trust Claims are contingent claims. Therefore, contrary to the assertions in the Limited Objection, the Trustees do not have valid rights of setoff under New York law, because New York law does not permit setoff with respect to contingent obligations as such claims are not mature setoff claims. *See In re Westchester Structures, Inc.*, 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995) ("Under [section 151 of New York's Debtor and Creditor Law], the [offsetting debts] can be matured or unmatured but they cannot be contingent. An unmatured debt [for purposes of section 151] is generally evidenced by a contract and can be expected in the normal course of events to be due and owing in the future, although the obligation has not yet ripened. A contingent liability, however, is marked by uncertainty as to whether any obligation will ever arise.") (quoting *In re Prudential*, 148 B.R. 730, 752 (Bankr. S.D.N.Y. 1992)); *Trojan Hardware Co., Inc. v. Bonacquisti Constr. Corp.*, 534 N.Y.S.2d 789, 791 (N.Y. App. Div. 1988) ("The statutory phrase 'matured or unmatured' [in section 151 of New York's Debtor and Creditor Law] does not provide authority to expand the meaning of indebtedness to include contingent liabilities."). *See also Global Cable, Inc., v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, No. 02-CIV-9770, 2006 WL 1559437, at *2 (S.D.N.Y. June 7, 2006) (affirming a bankruptcy court order determining that a creditor lacked "a valid right of setoff under 11 U.S.C. § 553 or a common-law right of recoupment as its claim against [Adelphia] is disputed and not a liability that is 'absolutely owed.'").

12. Based upon the foregoing, AFI respectfully suggests that that the Trustees do not have any matured setoff rights even capable of being protected.

6

K&E 22840728.10

B.     The Trustees Do Not Have Valid Rights of Recoupment

13.    The Trustees also do not have valid rights of recoupment with respect to the Trust Claims. The doctrine of recoupment "is a limited one and should be narrowly construed." *New York State Elec. & Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93, 97 (2d Cir. 1997).

14.    Consistent with the Adelphia decision cited earlier, the fact that the Trust Claims are contingent and not "absolutely owed" prevents the Trustees from asserting recoupment rights with respect to such claims. *See In re Adelphia Commc'ns Corp.*, 2006 WL 1559437, at *2. *See also In re Benedictine Hosp.*, 2007 WL 5830252, at *2 (N.Y. Sup. Jan. 10, 2007) ("[T]he general common law principles applicable to setoffs, *which are equivalent to recoupment*, require that the claim be 'due and payable [as opposed to] contingent, possible and in future.' " (emphasis added) (quoting *Northville Indus. Corp. v. State*, 788 N.Y.S.2d 464, 466-67 (N.Y. App. Div. 2005))).

15.    Further, it is AFI's understanding that the Trust Claims arise from separate transactions than the Servicing Advance Receivables. Specifically, the Trust Claims arise from transactions concerning the transfer of mortgage loans to the trusts, whereas the Servicing Advance Receivables arise from the Debtors' servicing obligations of the individual mortgage loans after the transfer to the trusts. The separateness of these obligations has previously been recognized by at least one other bankruptcy court in the context of a debtor's sale of assets. *See, e.g., In re Am. Home Mortg. Holdings, Inc.*, 402 B.R. 87 (Bankr. D. Del. 2009) (approving the sale of a debtor's servicing rights as separate from its repurchase obligations).[5] In any event, the

---

[5]   AFI acknowledges that the Trustees have filed an objection to the Debtors' proposed sale procedures that challenges the severability of mortgage servicing rights from repurchase obligations, and that there is not an adequate record before the Court to make a severability determination at this time. Nonetheless, AFI believes that the Court can find that the Trustees do not have valid recoupment rights based solely upon the contingent nature of the Trust Claims.

7

Trustees have presented no evidence in support of their alleged recoupment rights that would be subject to any protection under the Bankruptcy Code.

### C. Paragraph 30 of the Interim Order Is Appropriate

16. The Trustee Objection demonstrates the risk that AFI could be exposed to absent the protective language in paragraph 30 of the Interim Order. AFI is not willing to consent to the use of its Cash Collateral to continue funding servicer advances for the benefit of the Trustees without ensuring that the Trustees do not, in turn, assert rights of setoff and recoupment that could jeopardize the adequate protection that is provided to AFI under the Final Order.

17. Section 363(c)(2) of the Bankruptcy Code provides the statutory framework for the Debtors' authorization to use cash collateral. 11 U.S.C. § 363(c)(2). Here, AFI and the Junior Secured Noteholders are willing to consent to the use of cash collateral under the terms set forth in the Interim and Final Order, and the AFI-ResCap Settlement Agreement, consistent with section 363(c)(2)(A). To that end, the language to which the Trustees have objected provides that the Trustees' rights are waived "to the extent that" servicer advances from cash collateral are made. AFI is not willing to have its cash collateral to used to fund servicer advances and then have the reimbursement right created by the advances for the very parties (in this case the Trustees) for whose benefit the advances have been made "reserve rights" to have a senior claim to AFI on that servicer advance. AFI respectfully suggests that the language in paragraph 30 of the Interim Order is warranted given that it is well-accepted business proposition by all parties. Moreover, it is well accepted that a creditor cannot set off a prepetition claim against a postpetition debt. *See, e.g., In re Lehman Bros. Holdings Inc.*, 404 B.R. at 757 (stating that section 553 requires that a debt and a claim each "arose before the commencement of the case

8

under this title" and thus "it is necessary to consider what rights of offset existed, if any, as to the transferred funds before [the debtor] commenced its case.").

18.     Notably, ResCap has not made a request to use AFI's and the Junior Secured Noteholders' cash collateral under section 363(c)(2)(B), and doing so would be in violation of the AFI-ResCap Settlement Agreement's terms.

19.     This being said, AFI has no objection to clarifying that the Final Order does not "extinguish" any valid rights of setoff or recoupment of the Trustees; it just provides that any such rights of setoff or recoupment are junior to the liens and superpriority claims granted pursuant to the Final Order.

### D.     The Trustees Are Not Entitled to Adequate Protection

20.     As a threshold matter, it appears that the Trustees' request for adequate protection does not relate to approval of the AFI DIP Facility and use of cash collateral as requested in the Motion.  Instead, the Trustees' request arises from the Debtors' continued reimbursement of themselves from advances in the ordinary course of business.  (Trustee Objection at ¶24).  As such, AFI believes that the Trustees' request for adequate protection is procedurally improper and should be pursued as a separate motion upon proper notice and hearing and not in the context of objecting to the Motion.

21.     Notwithstanding the foregoing, to the extent that the Trustees assert that they are entitled to adequate protection as a result of the priming of their setoff rights under the Final Order, AFI does not believe that such relief is warranted.  Section 364(d)(1)(B) of the Bankruptcy Code authorizes adequate protection of the interest of the holder of a lien on property of the estate on which a senior lien is proposed to be granted.  11 U.S.C. § 364(d)(1)(B). Here, to the best of AFI's knowledge, the Trustees do not hold a "lien" on the collateral that is

9

12-12020-mg    Doc 356    Filed 06/14/12    Entered 06/14/12 11:52:56    Main Document
Pg 13 of 14

being primed. Therefore, the Trustees' request for adequate protection is not warranted. Additionally, to the extent the Trustees' request for adequate protection is based upon the proposition that the Trustees hold secured claims under section 506(a) of the Bankruptcy Code, it is further flawed. A secured claim under section 506(a) requires an "allowed claim of a creditor." 11 U.S.C. § 506(a). To the best of AFI's knowledge, the Trustees do not hold any allowed claims at this time and the Trustees have presented no evidence of any such allowed claim to this Court.

22. Based upon the foregoing, AFI respectfully suggests the Trustees are not entitled to any adequate protection in the context of the Motion.[6] Nonetheless, to the extent that the Trustees demonstrate that they, in fact, have liens that are being primed under the Final Order, AFI will work with the Debtors and the Trustees to determine whether a consensual adequate protection agreement can be reached.

### III.    Response to the U.S. Limited Objection

23. The U.S. Objection proposes three changes to the Final Order. AFI has engaged in discussions to try to resolve the U.S. Objection and has agreed to two of the three changes, with slight modifications to the United States' proposed language. AFI, however, is unable to agree to the ambiguous language proposed by the United States with respect to setoff and recoupment rights and the same arguments presented above apply with equal force to the United States, the taxpayers of which are 74% shareholders of AFI. In addition, as a debtor-in-possession lender for the purpose of allowing the Debtors to repurchase government-insured

---

[6] AFI notes that affording the Trustees adequate protection based upon their contingent Trust Claims would effectively elevate such claims to the status of those of a lien creditor thereby enhancing the Trustees' rights that they would otherwise have under non-bankruptcy law, which is contrary to well-established bankruptcy principles. *See, e.g., In re WorldCom, Inc.*, 304 B.R. 611, 619 (Bankr. S.D.N.Y. 2004) ("While section 553 of the Bankruptcy Code addresses setoff rights, it neither creates any federal statutory right of setoff *nor enlarges a party's right of setoff in bankruptcy* . . . . [S]ection 553 merely preserves any right of setoff that exists under nonbankruptcy law.") (emphasis added).

10

loans, AFI requests clarity that the liens and superpriority claims under the Final Order will not be primed by the United States' alleged rights of setoff and recoupment. Accordingly, AFI cannot agree to the language proposed by the United States, which AFI believes creates uncertainty that the United States may have rights of setoff and recoupment that could be senior to the liens and superpriority claims to be granted by the Final Order.

24. As with the Trustees, to the extent the United States demonstrates that it has any valid liens that are being primed under the Final Order, AFI is willing to work with the Debtors and the United States to determine whether a consensual adequate protection arrangement can be reached. The parties are not at that point, however, because the United States has not described with any specificity any rights of setoff or recoupment that it may have.

25. Based upon the foregoing, the U.S. Objection should be overruled.

## CONCLUSION

26. For the foregoing reasons, AFI respectfully requests that the Court overrule the Objections on their merits, and to the extent not consensually resolved, enter the proposed Final Order and grant such other and further relief as the Court deems appropriate.

| | |
|---|---|
| New York, New York<br>Dated: June 14, 2012 | */s/ Ray C. Schrock*<br>Ray C. Schrock<br>Richard M. Cieri<br>Stephen E. Hessler<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York  10022<br>Telephone:    (212) 446-4800<br>Facsimile:     (212) 446-4900 |

K&E 22840728.10