SHEARMAN & STERLING LLP
Fredric Sosnick
William J.F. Roll, III
Susan A. Fennessey
599 Lexington Avenue
New York, New York 10022
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900

*Counsel for Citibank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**REPLY OF CITIBANK, N.A. TO OMNIBUS OBJECTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTIONS
SEEKING (I) ENTRY INTO THE BARCLAYS DIP FACILITY, (II) ENTRY INTO
THE ALLY DIP FACILITY AND THE USE OF CERTAIN CASH
COLLATERAL, AND (III) THE USE OF THE CITIBANK CASH COLLATERAL**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Citibank, N.A. ("**Citibank**") hereby submits this reply to the Omnibus Objection of the Official Committee of Unsecured Creditors (the "**Committee**") to the Debtors' Motions Seeking (I) Entry Into the Barclays DIP Facility, (II) Entry Into the Ally DIP Facility and the Use of Certain Cash Collateral, and (III) the Use of the Citibank Cash Collateral (the "**Omnibus Objection**") [Docket No. 301].  In support thereof, and in further support of  the Debtors' Motion for Interim and Final Orders Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 507(b) and Bankruptcy Rule 40014(B):  (I) Authorizing the Use of Cash Collateral and

NYDOCS03/950288.3

Related Relief, (II) Granting Adequate Protection and (III) Scheduling a Final Hearing (the "**Citi Cash Collateral Motion**") [Docket No. 15], Citibank respectfully represents as follows:

## PRELIMINARY STATEMENT

1.  In its Omnibus Objection, the Committee raises a multitude of objections to the two proposed DIP financing facilities (respectively, the "**Barclays DIP**" and the "**Ally DIP**"), the portion of the Ally DIP motion that relates to the use of cash collateral, and the separate Citi Cash Collateral Motion.[1]  Of the objections raised in the Omnibus Objection, a mere three are directed in any manner toward the relief sought in the Citi Cash Collateral Motion, namely that: (a) the proposed final order under the Cash Collateral Motion does not give the Committee sufficient time to investigate and challenge Citibank's liens and claims under the Prepetition MSR Facility (as defined herein), (b) the proposed order would not allow the use of Citibank's cash collateral to fund any investigations or challenges of its claims and liens, and (c) the superpriority claims provided to Citibank should be payable out of unencumbered property and the proceeds of avoidance actions only after Citibank has exhausted recoveries from its collateral.[2]

2.  The limited nature of the Committee's objections as it relates to the Citi Cash Collateral Motion is not surprising in light of the nature of the Prepetition MSR Facility and the Prepetition MSR Collateral, and the circumstances of these cases.  As described in greater detail below, however, even those limited objections are misplaced, as the Final Order is reasonable and appropriate as proposed and no modifications are necessary.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Citi Cash Collateral Motion.

[2]    The Committee also asserts that Citibank's requested waiver under section 506(c) of the Bankruptcy Code should be conditioned upon the Committee's approval of the form of Final Order.

3. Nevertheless, in the interest of resolving the Committee's Omnibus Objection consensually, Citibank has indicated its willingness to make various changes requested by the Committee (including some not raised in the Omnibus Objection), as a means of resolving the Omnibus Objection as it relates to the Citi Cash Collateral Motion. Although Citibank believes that its suggested modifications have satisfied all of the Committee's issues, Citibank submits this reply to preserve all of its rights, including the right to obtain entry of the Final Order without the proposed modifications.

## BACKGROUND

4. Prior to the Petition Date, Citibank entered into a revolving credit facility with GMAC Mortgage, LLC ("**GMAC Mortgage**"), as borrower, and Residential Capital, LLC, as guarantor (the "**Prepetition MSR Facility**"). The Prepetition MSR Facility is secured by certain mortgage servicing rights (the "**MSRs**") for mortgage loans in Freddie Mac and Fannie Mae securitization pools. The outstanding principal amount under the Citibank MSR Facility as of the Petition Date was approximately $152 million. *See* Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, dated May 14, 2012 [Docket No. 6] (the "**Whitlinger Affidavit**") ¶ 62.

5. As more fully described in the Whitlinger Affidavit, the Debtors sought authority to use the MSR Cash Collateral under the Prepetition MSR Facility to fund the cash needs related to the operations and assets of the Prepetition MSR Facility collateral pool and to fund an allocated portion of the Debtors' administrative expenses in these cases. Whitlinger Affidavit ¶ 212. The Debtors have indicated that the Prepetition MSR Collateral is an important component of the assets of the going concern that the Debtors are attempting to monetize, and in the Asset Purchase Agreement between certain of the Debtors and Nationstar Mortgage LLC,

$363 million of the proposed purchase price was allocated to those assets (the "**Purchase Price Allocation**").[3]

6. Although the Purchase Price Allocation suggests that Citibank is comfortably oversecured as of the Petition Date, the existing Prepetition MSR Collateral is an asset that by its nature decreases in value as the underlying loans are repaid by individual borrowers. As the Debtors' CFO made clear:

> MSRs are generally subject to loss in value when mortgage rates decline. Declining mortgage rates generally result in an increase in refinancing activity, which increases prepayments and results in a decline in the value of the MSRs.

Whitlinger Affidavit ¶ 98. To address the potential decreases in the value of the Prepetition MSR Collateral, the Prepetition MSR Facility contains a requirement that GMAC Mortgage prepay the amount of any deficiency on any business day on which the "Borrowing Base," which, as defined in the Prepetition MSR Facility, was determined as a percentage of the market value of the eligible MSRs pledged under the Prepetition MSR Facility, was less than the aggregate amount of the outstanding loans under the facility. *See* Form of Proposed Final Order ¶ H. As a result of the imposition of the automatic stay upon the commencement of these cases, however, such mandatory prepayments were no longer enforceable.[4]

---

[3]  *See* Exhibit G to Notice of Filing of Additional Exhibit to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief [Docket No. 66].

[4]  An alternative to the agreed upon terms of the use of cash collateral, as set forth in the Citi Cash Collateral Motion, would be for the Debtors to obtain authorization to continue to make those prepayments. Given the current overcollateralization and the interest expense associated with leaving the Prepetition MSR Facility in place during the pendency of these cases, such an alternative would appear to be a significantly more cost effective approach for GMAC Mortgage and the other Debtors and also eliminate many of the concerns raised by the Committee.

7. The cash that would be made available to GMAC Mortgage and the other Debtors in the event that the Citi Cash Collateral Motion were approved on a final basis is only a small portion of the cash available to the Debtors in these cases. In addition to the cash being made available by the Barclays DIP, the Ally DIP, the use of Ally's cash collateral, and the use of cash collateral of the parties in these cases,[5] as the Committee itself concedes in the Omnibus Objection, there is in excess of $250 million of unencumbered cash in the Debtors' estates. Whitlinger Affidavit ¶ 4; Omnibus Objection ¶ 1. A consequence of the siloed nature of the Debtors' financing is that the Prepetition MSR Collateral is only a small portion of the Debtors' total assets. *See, generally,* Whitlinger Affidavit ¶¶ 48-74.

8. On May 15, 2012, the Court (Judge Peck) entered the Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing (the "**Interim Order**") [Docket No. 79] approving the Citi Cash Collateral Motion on an interim basis. On June 11, 2012, the Committee filed the Omnibus Objection, pursuant to which, among other things, it objected to the Citi Cash Collateral Motion.

## ARGUMENT

9. As described above, the Omnibus Objection contains only three discrete objections to the entry of the Final Order. As also described above, Citibank believes it has addressed the Committee's concerns in a manner that the Committee will find acceptable.

---

[5] *See, e.g.*, Interim Order Under Sections 105(a), 361, 362, 363, 1107(a), and 1108 of the Bankruptcy Code (I) Authorizing the Debtors to Continue in the Ordinary Course of Business (A) Servicing Governmental Association Loans and (B) Foreclosure Activities Related to Certain Real Estate Owned by Fannie Mae, Freddie Mac, and Ginnie Mae; (II) Authorizing the Debtors to Pay Certain Prepetition Amounts due to Critical Servicing Vendors and Foreclosure Professionals; (III) Granting Limited Stay Relief to Enable Borrowers to Assert Related Counter-Claims in Foreclosure and Eviction Proceedings; (IV) Authorizing the Debtors to Use Cash Collateral Under the Fannie Mae EAF Facility; and (V) Granting Related Relief [Docket No. 87].

However, in the event that the Committee does not so agree, Citibank submits that the Omnibus Objection, as it relates to the Citi Cash Collateral Motion, should be overruled.

A.   Challenge Period

10.   In the Omnibus Objection, the Committee argues that the proposed final order under the Citi Cash Collateral Motion does not give the Committee sufficient time to investigate and challenge Citibank's liens and claims under the Prepetition MSR Facility. As originally proposed, the challenge period was 75 days from the date of the Interim Order. That time period was consistent with the Local Bankruptcy Rules for the Southern District of New York and orders in other cases. Local Rule 4001-2(f); *see, e.g.*, *In re Gen. Mar. Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 15, 2011) [Docket No. 141]; *In re Borders Grp., Inc.*, No. 11-10614 (MG) (Bankr. S.D.N.Y. Mar. 16, 2011) [Docket No. 404].

11.   The Committee argues that it needs that additional time beyond the 75 days because the Committee has to concern itself with a "diverse and complex capital structure." Omnibus Objection ¶ 9. Those concerns have little bearing on the issues related to the Prepetition MSR Facility, which has been in existence on a secured basis for several years and where the collateral involved is MSRs related to government-association mortgage loans. Nevertheless, in an effort to resolve the Committee's concerns, Citibank has indicated its willingness to expand the challenge period to 120 days from the entry of the final order.

B.   Funding of Investigation/Challenge

12.   The Committee, in its Omnibus Objection, correctly points out that the proposed order would not allow the use of Citibank's cash collateral to fund any investigations or challenges of its claims and liens. Unlike others cases of which the Committee might be thinking (it cites none), in which the secured lender has a blanket lien on all, or virtually all, of a

debtor's assets, here, the Prepetition MSR Collateral is only one small component of the assets available to the Committee to mount a challenge — including $250 million of unencumbered cash.

13.  In making its argument, the Committee inexplicably appears to confuse the concept of the Carve-Out with the use of a secured party's collateral to mount an attack. Specially, the Committee appears to suggest that, despite the vast storehouse of unencumbered cash, the Committee and its professionals still may be at risk. Omnibus Objection n.11. The limitation on the use of collateral would be relevant if there were no other assets available for the Committee to conduct an investigation or mount a challenge during the cases, particularly if the Carve-Out never was implicated. The Committee's concerns regarding whether there ultimately will be assets to pay them at the end of the case (which at this point are unsupported) is purely an issue of the Carve-Out, which in this case (and others) protects estate professionals for unpaid fees in the event of an administrative insolvency of the cases.

14.  Despite the misplaced nature of the Committee's objection, Citibank has offered to clarify in the Final Order that the portion of cash that otherwise is being made available to fund the Debtors' general administrative costs (which could be significantly larger than $250,000, the amount requested by the Committee in the Omnibus Objection) could be used by the Committee for an investigation of, or to mount a challenge against Citibank's claims or liens.

C.    Priority of Payment of Superpriority Claims

15.  The Committee's final argument with respect to the Citi Cash Collateral Motion is that the superpriority claims provided to Citibank should be payable from unencumbered property and the proceeds of avoidance actions only after Citibank has exhausted

recoveries from its collateral. In the context of these cases, it is hard to understand how such a result would even be possible, given the terms of the Acknowledgement Agreements with Fannie Mae and Freddie Mac. Citibank nevertheless has indicated that it would be willing to provide that it would look first to MSR Cash Collateral[6] in the event that it was seeking payment of its superpriority claim.

## CONCLUSION

16.     Based on the nature of the Prepetition MSR Facility and the Prepetition MSR Collateral, Citibank submits that its consent to the use of its cash collateral on the terms as set forth in the proposed Final Order is reasonable and, under the circumstances in these cases, appropriate.

WHEREFORE, Citibank requests that the Court overrule the Committee's Omnibus Objection to the Cash Collateral Motion and enter the Final Order as proposed.

Dated:  June 14, 2012
        New York, New York

SHEARMAN & STERLING LLP

*/s/Fredric Sosnick*
Fredric Sosnick
William J.F. Roll, III
Susan A. Fennessey
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 484-4000
Facsimile:  (212) 484-7179

*Counsel for Citibank, N.A.*

---

[6]     MSR Cash Collateral is defined as: "'cash collateral' (as defined in section 363(a) of the Bankruptcy Code) of Citibank." Form of Proposed Final Order at 1.