Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel for Ally Financial Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| RESIDENTIAL CAPITAL, LLC., et al. | ) Case No. 12-12020 (MG) |
| Debtors. | ) Jointly Administered |

**ALLY FINANCIAL INC.'S CONSOLIDATED RESPONSE
TO CERTAIN OBJECTIONS TO DEBTORS' SALE PROCEDURES MOTION**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Ally Financial Inc. ("*AFI*") hereby submits this consolidated response to certain objections filed[1] to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice*

---

[1] The following parties filed responses: the United States Trustee [Docket No. 271]; Wells Fargo Bank, N.A. ("*WFBNA*") [Docket Nos. 281, 292]; U.S. Bank National Association [Docket No. 282]; Berkshire Hathaway Inc. ("*Berkshire Hathaway*") [Docket No. 284]; Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, U.S. Bank National Association and Wells Fargo Bank, N.A., in their capacity as trustees or indenture trustees for certain mortgage backed security trusts [Docket No. 291]; Green Planet Servicing, LLC [Docket No. 293]; Lone Star U.S. Acquisitions, LLC ("*Lone Star*") [Docket No. 298]; and the Official Committee of Unsecured Creditors (the "*Committee*") [Docket No. 306] (collectively, and together with the WFBNA Objection as defined herein, the "*Objections*").

*Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 61] (the "**Sale Procedures Motion**").

## PRELIMINARY STATEMENT

Prior to the Debtors' commencement of their chapter 11 cases, AFI worked tirelessly to support the Debtors to facilitate their soft landing into chapter 11 for the benefit of all parties in interest. Among the broad gamut of support provided to the Debtors by AFI, AFI committed (albeit reluctantly) to serve as the stalking horse bidder for the Debtors' held-for sale legacy loan portfolio (the "**HFS Loan Portfolio**") with a purchase price that is $200 million higher should the sale occur in connection with a chapter 11 plan. As a reluctant bidder, AFI was only willing to pay a higher price for the HFS Loan Portfolio if the sale was accomplished in connection with a chapter 11 plan.

The Debtors now have before them two additional offers for the HFS Loan Portfolio. AFI believes, and the Debtors will demonstrate, that AFI's role as a stalking horse bidder has already generated substantial value to the Debtors' estate. Further, AFI welcomes the additional third-party interest in these assets and is pleased to step aside so long as the Debtors maintain their commitment to pursue this sale in accordance with the timing and terms of their negotiated settlement agreement with AFI. Additionally, AFI is comfortable withdrawing its higher purchase price offer for the HFS Loan Portfolio sale under a chapter 11 plan if the Debtors request or the Court requires such a withdrawal in light of the significant interest already generated in the assets. AFI respectfully notes, however, that the removal of this higher bid may

2

deprive the Debtors of an opportunity to realize an additional $200 million of value for the Debtors' estate.

In sum, AFI is pleased that its stalking horse bid has already generated additional value to the Debtors in the early stages of their chapter cases and supports the Debtors' in their ultimate decision on the disposition of the HFS Loan Portfolio with the recognition that AFI continues to uphold the terms of its negotiated settlement agreement with the Debtors.

**RESPONSE**

**I.    AFI's Decision—At The Debtors' Request—To Become A Reluctant Stalking Horse Bidder For The HFS Loan Portfolio Is Merely One Action of Several That Has And Will Continue To Significantly Benefit All Parties In Interest In These Chapter 11 Cases**

1.    On May 14, 2012 (the "*Petition Date*"), the Debtors filed the Sale Procedures Motion seeking, among other things, the Court's approval of procedures (the "*Sales Procedures*") to govern the auctions of the Debtors' mortgage loan origination and servicing platform (the "*Platform*") and the Debtors' HFS Loan Portfolio.[2]  As part of the relief requested, the Sale Procedures Motion seeks to approve AFI, a U.S. Bank Holding Company, along with its non-debtor affiliate, BMMZ Holdings LLC, as the stalking horse bidder for the HFS Loan Portfolio under an asset purchase agreement executed on the Petition Date (the "*AFI APA*").  As a U.S. Bank Holding Company holding approximately $180 billion in assets and 74% owned by the United States taxpayers, AFI entered into the AFI APA at the Debtors' request at a higher bid than it was otherwise able to negotiate with any other party prior to the Petition Date.  AFI took such action not because it desires to own the HFS Portfolio.  It made this offer to facilitate higher

---

[2]    All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sales Procedures Motion.

3

and better values for the Debtors' assets subject to the AFI APA and as part of the negotiated settlement agreement between the Debtors and AFI.

2. By all accounts, AFI strongly believes, and as will be supported by the Debtors' evidence to be set forth at the Sale Procedures Motion hearing, that the actions taken by AFI have already generated substantial stakeholder value for the Debtors' chapter 11 estates, that the price for the HFS Portfolio was set by other parties, not AFI, and that AFI remains committed to fulfill its obligations to the Debtors in accordance with the terms of the proposed Ally-ResCap Settlement Agreement (defined below).

3. To be clear, AFI was and is a reluctant stalking horse bidder for the HFS Loan Portfolio. The AFI APA was an integral component of a broader effort to facilitate a soft landing for the Debtors into chapter 11 with significant creditor support—so as to benefit all stakeholders. To that end, AFI negotiated extensively with the Debtors prior to the Petition Date and ultimately, agreed to support the Debtors by numerous actions intended to give the Debtors the best opportunity to maximize value and an opportunity to pursue a chapter 11 plan and maintain their operations as a going concern by, among other things:

- entering into a shared services agreement to provide operational continuity;
- providing the Debtors with the continued use of its cash collateral;
- negotiating a transition services agreement with the ultimate purchaser of the Platform; and
- lending up to an additional $220 million of debtor-in-possession financing and providing a $750 million cash contribution to the Debtors' estate under the terms of the Settlement and Plan Sponsor Agreement dated as of May 14, 2012 between the Debtors and AFI (the "*Ally-ResCap Settlement Agreement*").

4

In addition, AFI agreed (a) in an unprecedented move, subject to Court approval, to provide consumer lending origination support for the Debtors and to allow for continued subservicing of the Ally Bank MSR to the Debtors through and until the closing of the sale of the Platform, and (b) if AFI and Ally Bank opt to sell AFI's substantial mortgage service asset portfolio (the "**Ally Bank MSR**").  AFI has agreed to negotiate in good faith with the Debtors for additional consideration in the event of such sale pursuant to the Ally-ResCap Settlement Agreement.

4. AFI also negotiated, together with the Debtors, the Plan Support Agreement (the "***Junior Secured Bonds Plan Support Agreement***") among the Debtors, AFI, and certain holders of the Debtors' notes issued under that certain Indenture, dated June 6, 2008, among ResCap, certain guarantors and U.S. Bank National Association, as trustee.  *Affidavit of James Whitlinger in Support of Chapter 11 Petitions and First Day Pleadings* ("**First Day Aff.**") ¶ 108.

5. AFI also supported the Debtors' negotiations with certain investment managers and institutional investors (the "***PLS Plan Support and Settlement Agreements***").[3]  The PLS Plan Support and Settlement Agreements are conditioned on, among other things, the $750 million contribution by AFI to the Debtors.  First Day Aff. ¶ 108.

6. In sum, AFI submits that the operational and financial support provided by AFI was and remains critical to the Debtors' smooth transition into their chapter 11 cases, and the compromises reached with Debtors' creditors served to generate significant value, consensus, and support from and to key stakeholders in the Debtors' chapter 11 cases.

---

[3] *See* the *Plan Support Agreement among the Debtors, AFI, and certain authorized investment managers for holders of securities backed by mortgage loans held by covered trusts dated May 13, 2012* [Exhibit 9 to Docket No. 6]; and the *Plan Support Agreement among the Debtors, AFI, and certain authorized investment managers for holders of securities backed by mortgage loans held by covered trusts dated May 13, 2012* [Exhibit 10 to Docket No. 6].

**II.     AFI Welcomes Higher And Better Offers For The HFS Loan Portfolio And Remains Committed To Fulfill Its Obligations Under The Ally-ResCap Settlement Agreement.**

7.     On June 11, 2012, Berkshire Hathaway filed an objection in which it offers to serve as the stalking horse bidder in each of the auctions. Specifically, with respect to the HFS Loan Portfolio, Berkshire Hathaway offers to purchase the HFS Loan Portfolio on substantially the same terms as the AFI APA, except that Berkshire Hathaway proposes a purchase price that is $50 million more than the AFI APA and includes a break-up fee of 3 percent of the purchase price (the "***Berkshire Bid***").[4]

8.     Additionally, Lone Star filed a response on June 11, 2012 in which it stated that Lone Star could also serve as a potential stalking horse bidder for the HFS Loan Portfolio, and indicated that it could increase its initial purchase price after as little as two weeks of diligence (the "***Loan Star Bid***").[5]

9.     AFI recognizes that it is the Debtors' and this Court's decision whether the Berkshire Bid or the Loan Star Bid is higher and better than the AFI Bid and should serve as the stalking horse bid for the auction of the HFS Loan Portfolio. To that end, AFI again reiterates

---

[4] *See* Exhibit C and Exhibit D attached to the *Declaration of R. Ted Weschler in support of the objection of Berkshire Hathaway Inc. to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 287].

[5] *See Response of Lone Star U.S. Acquisitions, LLC to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 298].

that it was a reluctant bidder for the HFS Loan Portfolio and entered into the AFI APA as an accommodation to the Debtors in accordance with its obligations under the Ally-ResCap Settlement Agreement to ensure a baseline bid for the HFS Loan Portfolio. By all accounts, the AFI APA has already served a substantial benefit to the estates by generating significant interest in these assets.

10.     Within that context, AFI remains committed to fulfilling its obligations under the Ally-ResCap Settlement Agreement, including under the AFI APA, but in that capacity also welcomes the additional interest from third parties in these assets.

### III.    Should the Court Deem It Appropriate, AFI Is Willing To Have Another Party Serve As a Stalking Horse Bidder for the HFS Assets

11.     With respect to the Sale Procedures, AFI had understood (and intended) that the Debtors would conduct a <u>single</u> auction through which they would solicit bids from interested parties on the HFS Loan Portfolio under two scenarios: (a) a sale outside of a chapter 11 plan pursuant to section 363 of the Bankruptcy Code; and (b) a sale as part of a chapter 11 plan that is consistent with the Ally-ResCap Settlement Agreement (the "***Plan***").[6] As a result, the single auction could potentially yield two separate winning bids for the HFS Loan Portfolio, depending on the ultimate structure of the sale.

12.     Further, AFI does not believe that its Plan purchase price exceeds the intrinsic value of the HFS Loan Portfolio as this proposed price is very close to the book value of the assets, which has been marked to market. Accordingly, Ally does not believe that this Plan purchase price chills third party bidding on these assets.[7] Given that AFI was entering into the

---

[6] The Committee and Berkshire Hathaway have filed objections to the proposed dual scenario purchase price contained in the Ally APA alleging that the additional $200 million in consideration for the HFS Loan Portfolio in a sale pursuant to a Plan disadvantages true third-party bidders.

[7] Indeed, Lone Star has indicated in its response to the Sale Procedures Motion that it could potentially bid more than AFI's plan purchase for the HFS Loan Portfolio with as little as two weeks of diligence.

AFI APA as an accommodation to the Debtors as part of the AFI-ResCap Settlement and did not previously intend to acquire the HFS Loan Portfolio, it was only willing to pay the higher price for the assets if the sale was accomplished in connection with the Plan. If, however, the Debtors request or the Court requires that the dual purchase price structure is not necessary or desirable given the significant interest already generated, AFI would withdraw the bid and would continue to perform its obligations under the AFI-ResCap Settlement Agreement. AFI respectfully suggests that such a decision would deprive the Debtors of the opportunity to realize another $200 million in value for the HFS Portfolio.

13. Regardless of the Debtors' and this Court's decision with respect to the Berkshire Bid or the Lone Star Bid, AFI takes comfort knowing it has satisfied and honored its obligations under the Ally-ResCap Settlement Agreement to serve as the stalking horse bidder with respect to the HFS Loan Portfolio. AFI makes these statements with the express understanding from the Debtors that they agree and will continue to prosecute the AFI-ResCap Settlement.

### IV.    The Court Should Need Not And Should Not Rule On WBNA's Objection To The Debtors' Sales Procedures Motion Or Other Premature Objections

14. WFBNA also filed a reservation of rights and limited objection to the Debtors' Sale Procedures Motion (the "**WFBNA Objection**")[8] based on WFBNA's alleged rights in connection with the Debtors' bank accounts (the "*Accounts*") previously maintained at WFBNA. There is no reason, procedurally or otherwise, for the Court to rule on this matter. In the Objection, WFBNA seeks the inclusion in the AFI Sale Approval Order of a statement that AFI

---

[8] *Reservation of Rights of WFBNA to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 281].

8

"remain[s] liable" to WFBNA in connection with the Accounts.[9] This relief inappropriately asks the Court to make a finding regarding WFBNA's alleged rights against a non-Debtor. Additionally, a motion for approval of the sale of the HFS Loan Portfolio and, thus, the substance of the AFI Sale Approval Order, is not currently before the Court. *See In re Extended Stay Inc.*, 2010 WL 282457, at *2 (Bankr. S.D.N.Y. June 22, 2010) (a court holds a hearing to consider a specific motion and objections to the motion *after* the debtor provides proper notice of the motion and establishes an objection deadline).

15. Other parties filed objections to proposed provisions in the sale order. AFI respectfully submits that, for the same reasons, those objections may be ruled by the Court at a later date.

## CONCLUSION

16. For the foregoing reasons, AFI respectfully requests that the Court overrule the Objections on their merits, and to the extent not consensually resolved, enter the proposed Final Order and grant such other and further relief as the Court deems appropriate.

New York, New York  
Dated: June 14, 2012

*/s/ Ray C. Schrock*
Ray C. Schrock
Richard M. Cieri
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

---

[9] To provide additional context to WFNBA's inapposite requests for relief in these cases in connection with the Accounts: First, all of the Accounts were closed on or before June 12, 2012, with the exception of one Account that is set to close on June 15, 2012. Second, despite multiple AFI requests, WFBNA has not articulated (because it cannot do so) any specific basis for any actual claim against the Debtors relating to the Accounts.

9