# **EXHIBIT 2**

RELEVANT EXCERPTS OF 12 CFR PT 1016, APP., § C.2(D)(1)

# Rules and Regulations

**Federal Register**

Vol. 76, No. 245

Wednesday, December 21, 2011

This section of the FEDERAL REGISTER contains regulatory documents having general applicability and legal effect, most of which are keyed to and codified in the Code of Federal Regulations, which is published under 50 titles pursuant to 44 U.S.C. 1510.

The Code of Federal Regulations is sold by the Superintendent of Documents. Prices of new books are listed in the first FEDERAL REGISTER issue of each week.

---

**BUREAU OF CONSUMER FINANCIAL PROTECTION**

**12 CFR Part 1016**

[Docket No. CFPB–2011–0028]

**RIN 3170–AA06**

**Privacy of Consumer Financial Information (Regulation P)**

**AGENCY:** Bureau of Consumer Financial Protection.

**ACTION:** Interim final rule with request for public comment.

**SUMMARY:** Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) transferred rulemaking authority for a number of consumer financial protection laws from seven Federal agencies to the Bureau of Consumer Financial Protection (Bureau) as of July 21, 2011, including most provisions of Subtitle A of Title V of the Gramm-Leach-Bliley Act (GLB Act), with respect to financial institutions described in section 504 of the GLB Act. The Bureau is in the process of republishing the regulations implementing those laws with technical and conforming changes to reflect the transfer of authority and certain other changes made by the Dodd-Frank Act. In light of the transfer of rulemaking authority for the privacy provisions of the GLB Act to the Bureau, the Bureau is publishing for public comment an interim final rule establishing a new Regulation P (Privacy of Consumer Financial Information). This interim final rule does not impose any new substantive obligations on regulated entities.

**DATES:** This interim final rule is effective December 30, 2011. Comments must be received on or before February 21, 2012.

**ADDRESSES:** You may submit comments, identified by *Docket No. CFPB–2011–0028* or *RIN 3170–AA06,* by any of the following methods:

• *Electronic: http://www.regulations.gov.* Follow the instructions for submitting comments.

• *Mail:* Monica Jackson, Office of the Executive Secretary, Bureau of Consumer Financial Protection, 1500 Pennsylvania Avenue NW., (Attn: 1801 L Street), Washington, DC 20220.

• *Hand Delivery/Courier in Lieu of Mail:* Monica Jackson, Office of the Executive Secretary, Bureau of Consumer Financial Protection, 1700 G Street NW., Washington, DC 20006.

All submissions must include the agency name and docket number or Regulatory Information Number (RIN) for this rulemaking. In general, all comments received will be posted without change to *http://www.regulations.gov.* In addition, comments will be available for public inspection and copying at 1700 G Street NW., Washington, DC 20006, on official business days between the hours of 10 a.m. and 5 p.m. Eastern Time. You can make an appointment to inspect the documents by telephoning (202) 435–7275.

All comments, including attachments and other supporting materials, will become part of the public record and subject to public disclosure. Sensitive personal information, such as account numbers or Social Security numbers, should not be included. Comments will not be edited to remove any identifying or contact information.

**FOR FURTHER INFORMATION CONTACT:** Courtney Jean or Priscilla Walton-Fein, Office of Regulations, at (202) 435–7700.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

Subtitle A of Title V of the GLB Act,[1] captioned ''Disclosure of Nonpublic Personal Information,'' limits the instances in which a financial institution may disclose nonpublic personal information about a consumer to nonaffiliated third parties and requires financial institutions to provide certain privacy notices to their consumers and customers.[2] Prior to July 21, 2011, rulemaking authority for the privacy provisions of the GLB Act was shared by eight Federal agencies: the Board of Governors of the Federal Reserve System (Board), the Federal Deposit Insurance Corporation (FDIC), the Federal Trade Commission (FTC), the National Credit Union Association (NCUA), the Office of the Comptroller of the Currency (OCC), the Office of Thrift Supervision (OTS), the Securities Exchange Commission (SEC), and the Commodity Futures Trading Commission (CFTC). Each of the agencies issued rules (which were consistent and comparable) to implement the GLB Act's privacy provisions.[3]

The Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act)[4] amended a number of consumer financial protection laws, including the GLB Act. Among other changes, the Dodd-Frank Act transferred rulemaking authority for most of Subtitle A of Title V of the GLB Act, with respect to financial institutions described in section 504(a)(1)(A) of that Act, from the Board, FDIC, FTC, NCUA, OCC, and OTS (collectively, the transferor agencies) to the Bureau, effective July 21, 2011. Pursuant to the GLB Act, the FTC retains rulemaking authority over any financial institution that is a person described in 12 U.S.C. 5519.[5] The SEC and the CFTC, which are not transferor agencies, also retain rulemaking authority over certain institutions described in sections 504(a)(1)(A)–(B) of the GLB Act.[6] *See* sections 1061 and 1093 of the Dodd-Frank Act. Pursuant to the Dodd-Frank Act and the GLB Act, as amended, the

---

[1] Codified at 15 U.S.C. 6801–6809. Section 728 of the Financial Services Regulatory Relief Act of 2006 (Pub. L. 109–351, 120 Stat. 1966 (2006)) amended the GLB Act to require the development of a model privacy form that financial institutions may rely on as a safe harbor to provide privacy notices.

[2] 15 U.S.C. 6802–6803(a).

[3] 12 CFR 216 (Board); 12 CFR 332 (FDIC); 16 CFR 313 (FTC); 12 CFR 716 and 741.220 (NCUA); 12 CFR 40 (OCC); 12 CFR 573 (OTS); 17 CFR 248 (SEC); 17 CFR 160 (CFTC).

[4] Public Law 111–203, 124 Stat. 1376 (2010).

[5] 15 U.S.C. 6804(a)(1)(A), (C). With certain statutory exceptions, the FTC generally retains rulemaking authority for motor vehicle dealers predominantly engaged in the sale and servicing of motor vehicles, the leasing and servicing of motor vehicles, or both. *Id.;* 12 U.S.C. 5519(a)–(b).

[6] 15 U.S.C. 6804(a)(1)(A)–(B). The SEC has rulemaking authority over securities brokers and dealers, investment companies, and investment advisers registered with the SEC under the Investment Advisers Act of 1940. *Id.* at 6804(a)(1)(A), 6805(a)(3)–(5). The CFTC has rulemaking authority over futures commission merchants, commodity trading advisors, commodity pool operators, and introducing brokers subject to the CFTC's jurisdiction under the Commodity Exchange Act with respect to any financial activity. 15 U.S.C. 6804(a)(1)(B); 7 U.S.C. 7b–2(a).

(C) Is a nonmember and executes the contract to open a share or share draft account with you or obtains credit from you jointly with a member, including an individual acting as a guarantor;

(D) Is a nonmember and opens an account with you and you are a credit union designated as a low-income credit union;

(E) Is a nonmember and opens an account with you pursuant to State law and you are a State-chartered credit union.

(iv) *Examples of loan rule.* You establish a customer relationship with a consumer who obtains a loan for personal, family, or household purposes when you:

(A) Originate the loan to the consumer; or

(B) Purchase the servicing rights to the consumer's loan.

(d) *Existing customers.* When an existing customer obtains a new financial product or service from you that is to be used primarily for personal, family, or household purposes, you satisfy the initial notice requirements of paragraph (a) of this section as follows:

(1) You may provide a revised privacy notice, under § 1016.8 of this part, that covers the customer's new financial product or service; or

(2) If the initial, revised, or annual notice that you most recently provided to that customer was accurate with respect to the new financial product or service, you do not need to provide a new privacy notice under paragraph (a) of this section.

(e) *Exceptions to allow subsequent delivery of notice.* (1) You may provide the initial notice required by paragraph (a)(1) of this section within a reasonable time after you establish a customer relationship if:

(i) Establishing the customer relationship is not at the customer's election; or

(ii) Providing notice not later than when you establish a customer relationship would substantially delay the customer's transaction and the customer agrees to receive the notice at a later time.

(2) *Examples of exceptions.* (i) *Not at customer's election.* (A) In the case of financial institutions other than credit unions and financial institutions described in § 1016.3(l)(3), establishing a customer relationship is not at the customer's election if you acquire a customer's deposit liability or the servicing rights to a customer's loan from another financial institution and the customer does not have a choice about your acquisition.

(B) In the case of financial institutions described in § 1016.3(l)(3), establishing a customer relationship is not at the customer's election if you acquire a customer's loan or the servicing rights from another financial institution and the customer does not have a choice about your acquisition.

(C) In the case of credit unions, establishing a customer relationship is not at the customer's election if you acquire a customer's deposit liability from another financial institution and the customer does not have a choice about your acquisition.

(ii) *Substantial delay of customer's transaction.* Providing notice not later than when you establish a customer relationship would substantially delay the customer's transaction when:

(A) You and the individual agree over the telephone to enter into a customer relationship involving prompt delivery of the financial product or service; or

(B) You establish a customer relationship with an individual under a program authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 *et seq.*) or similar student loan programs where loan proceeds are disbursed promptly without prior communication between you and the customer.

(iii) *No substantial delay of customer's transaction.* Providing notice not later than when you establish a customer relationship would not substantially delay the customer's transaction when the relationship is initiated in person at your office or through other means by which the customer may view the notice, such as on a Web site.

(f) *Delivery.* When you are required to deliver an initial privacy notice by this section, you must deliver it according to § 1016.9 of this part. If you use a short-form initial notice for non-customers according to § 1016.6(d) of this part, you may deliver your privacy notice according to § 1016.6(d)(3).

### § 1016.5 Annual privacy notice to customers required.

(a)(1) *General rule.* You must provide a clear and conspicuous notice to customers that accurately reflects your privacy policies and practices not less than annually during the continuation of the customer relationship. *Annually* means at least once in any period of 12 consecutive months during which that relationship exists. You may define the 12-consecutive-month period, but you must apply it to the customer on a consistent basis.

(2) *Example.* You provide a notice annually if you define the 12-consecutive-month period as a calendar year and provide the annual notice to the customer once in each calendar year following the calendar year in which you provided the initial notice. For example, if a customer opens an account on any day of year 1, you must provide an annual notice to that customer by December 31 of year 2.

(b)(1) *Termination of customer relationship.* You are not required to provide an annual notice to a former customer.

(2) *Examples in the case of financial institutions other than credit unions and covered entities subject to FTC enforcement jurisdiction.* For purposes of this paragraph (b)(2), ''you'' is limited to financial institutions other than credit unions and financial institutions described in § 1016.3(l)(3). Your customer becomes a former customer when:

(i) In the case of a deposit account, the account is inactive under your policies;

(ii) In the case of a closed-end loan, the customer pays the loan in full, you charge off the loan, or you sell the loan without retaining servicing rights;

(iii) In the case of a credit card relationship or other open-end credit relationship, you no longer provide any statements or notices to the customer concerning that relationship or you sell the credit card receivables without retaining servicing rights; or

(iv) You have not communicated with the customer about the relationship for a period of 12 consecutive months, other than to provide annual privacy notices or promotional material.

(3) *Examples in the case of covered entities subject to FTC enforcement jurisdiction.* For purposes of this paragraph (b)(3), ''you'' is limited to financial institutions described in § 1016.3(l)(3) of this part. Your customer becomes a former customer when:

(i) In the case of a closed-end loan, the customer pays the loan in full, you charge off the loan, or you sell the loan without retaining servicing rights;

(ii) In the case of a credit card relationship or other open-end credit relationship, you sell the receivables without retaining servicing rights;

(iii) In the case of credit counseling services, the customer has failed to make required payments under a debt management plan, has been notified that the plan is terminated, and you no longer provide any statements or notices to the customer concerning that relationship;

(iv) In the case of mortgage or vehicle loan brokering services, your customer has obtained a loan through you (and you no longer provide any statements or notices to the customer concerning that relationship), or has ceased using your services for such purposes;

satisfy the disclosure requirement of paragraph (a)(5) of this section if you:

(i) List the categories of nonpublic personal information you disclose, using the same categories and examples you used to meet the requirements of paragraph (a)(2) of this section, as applicable; and

(ii) State whether the third party is:

(A) A service provider that performs marketing services on your behalf or on behalf of you and another financial institution; or

(B) A financial institution with whom you have a joint marketing agreement.

(5) *Simplified notices.* If you do not disclose, and do not wish to reserve the right to disclose, nonpublic personal information about customers or former customers to affiliates or nonaffiliated third parties except as authorized under §§ 1016.14 and 1016.15, you may simply state that fact, in addition to the information you must provide under paragraphs (a)(1), (a)(8), (a)(9), and (b) of this section.

(6) *Confidentiality and security.* You describe your policies and practices with respect to protecting the confidentiality and security of nonpublic personal information if you do both of the following:

(i) Describe in general terms who is authorized to have access to the information; and

(ii) State whether you have security practices and procedures in place to ensure the confidentiality of the information in accordance with your policy. You are not required to describe technical information about the safeguards you use.

(d) *Short-form initial notice with opt out notice for non-customers.* (1) You may satisfy the initial notice requirements in §§ 1016.4(a)(2), 1016.7(b), and 1016.7(c) of this part for a consumer who is not a customer by providing a short-form initial notice at the same time as you deliver an opt out notice as required in § 1016.7.

(2) A short-form initial notice must:

(i) Be clear and conspicuous;

(ii) State that your privacy notice is available upon request; and

(iii) Explain a reasonable means by which the consumer may obtain that notice.

(3) You must deliver your short-form initial notice according to § 1016.9. You are not required to deliver your privacy notice with your short-form initial notice. You instead may simply provide the consumer a reasonable means to obtain your privacy notice. If a consumer who receives your short-form notice requests your privacy notice, you must deliver your privacy notice according to § 1016.9.

(4) *Examples of obtaining privacy notice.* You provide a reasonable means by which a consumer may obtain a copy of your privacy notice if you:

(i) Provide a toll-free telephone number that the consumer may call to request the notice; or

(ii) For a consumer who conducts business in person at your office, maintain copies of the notice on hand that you provide to the consumer immediately upon request.

(e) *Future disclosures.* Your notice may include:

(1) Categories of nonpublic personal information that you reserve the right to disclose in the future, but do not currently disclose; and

(2) Categories of affiliates or nonaffiliated third parties to whom you reserve the right in the future to disclose, but to whom you do not currently disclose, nonpublic personal information.

(f) *Model privacy form.* Pursuant to § 1016.2(a) of this part, a model privacy form that meets the notice content requirements of this section is included in the appendix to this part.

**§ 1016.7   Form of opt out notice to consumers; opt out methods.**

(a)(1) *Form of opt out notice.* If you are required to provide an opt out notice under § 1016.10(a), you must provide a clear and conspicuous notice to each of your consumers that accurately explains the right to opt out under that section. The notice must state:

(i) That you disclose or reserve the right to disclose nonpublic personal information about your consumer to a nonaffiliated third party;

(ii) That the consumer has the right to opt out of that disclosure; and

(iii) A reasonable means by which the consumer may exercise the opt out right.

(2) *Examples.* (i) *Adequate opt out notice.* You provide adequate notice that the consumer can opt out of the disclosure of nonpublic personal information to a nonaffiliated third party if you:

(A) Identify all of the categories of nonpublic personal information that you disclose or reserve the right to disclose, and all of the categories of nonaffiliated third parties to which you disclose the information, as described in § 1016.6(a)(2) and (3) of this part, and state that the consumer can opt out of the disclosure of that information; and

(B) Identify the financial products or services that the consumer obtains from you, either singly or jointly, to which the opt out direction would apply.

(ii) *Reasonable opt out means.* You provide a reasonable means to exercise an opt out right if you:

(A) Designate check-off boxes in a prominent position on the relevant forms with the opt out notice;

(B) Include a reply form together with the opt out notice that, in the case of financial institutions described in § 1016.3(l)(3) of this part, includes the address to which the form should be mailed;

(C) Provide an electronic means to opt out, such as a form that can be sent via electronic mail or a process at your Web site, if the consumer agrees to the electronic delivery of information; or

(D) Provide a toll-free telephone number that consumers may call to opt out.

(iii) *Unreasonable opt out means.* You *do not* provide a reasonable means of opting out if:

(A) The only means of opting out is for the consumer to write his or her own letter to exercise that opt out right; or

(B) The only means of opting out as described in any notice subsequent to the initial notice is to use a check-off box that you provided with the initial notice but did not include with the subsequent notice.

(iv) *Specific opt out means.* You may require each consumer to opt out through a specific means, as long as that means is reasonable for that consumer.

(b) *Same form as initial notice permitted.* You may provide the opt out notice together with or on the same written or electronic form as the initial notice you provide in accordance with § 1016.4.

(c) *Initial notice required when opt out notice delivered subsequent to initial notice.* If you provide the opt out notice later than required for the initial notice in accordance with § 1016.4 of this part, you must also include a copy of the initial notice with the opt out notice in writing or, if the consumer agrees, electronically.

(d) *Joint relationships in the case of financial institutions other than credit unions and covered entities subject to FTC enforcement jurisdiction.* For purposes of this paragraph (d), ''you'' is limited to financial institutions other than credit unions and financial institutions described in § 1016.3(l)(3) of this part.

(1) If two or more consumers jointly obtain a financial product or service from you, you may provide a single opt out notice. Your opt out notice must explain how you will treat an opt out direction by a joint consumer (as explained in paragraph (d)(5) of this section).

(2) Any of the joint consumers may exercise the right to opt out. You may either:

### § 1016.12 Limits on sharing account number information for marketing purposes.

(a) *General prohibition on disclosure of account numbers.* You must not, directly or through an affiliate, disclose, other than to a consumer reporting agency, an account number or similar form of access number or access code for a consumer's credit card account, deposit account, share account, or transaction account to any nonaffiliated third party for use in telemarketing, direct mail marketing, or other marketing through electronic mail to the consumer.

(b) *Exceptions.* Paragraph (a) of this section does not apply if you disclose an account number or similar form of access number or access code:

(1) To your agent or service provider solely in order to perform marketing for your own products or services, as long as the agent or service provider is not authorized to directly initiate charges to the account; or

(2) To a participant in a private label credit card program or an affinity or similar program where the participants in the program are identified to the customer when the customer enters into the program.

(c) *Examples.* (1) *Account number.* An account number, or similar form of access number or access code, does not include a number or code in an encrypted form, as long as you do not provide the recipient with a means to decode the number or code.

(2) *Transaction account.* A transaction account is an account other than a deposit account, a share account, or a credit card account. A transaction account does not include an account to which third parties cannot initiate charges.

### Subpart C—Exceptions

### § 1016.13 Exception to opt out requirements for service providers and joint marketing.

(a) *General rule.* (1) The opt out requirements in §§ 1016.7 and 1016.10 of this part do not apply when you provide nonpublic personal information to a nonaffiliated third party to perform services for you or functions on your behalf, if you:

(i) Provide the initial notice in accordance with § 1016.4; and

(ii) Enter into a contractual agreement with the third party that prohibits the third party from disclosing or using the information other than to carry out the purposes for which you disclosed the information, including use under an exception in § 1016.14 or § 1016.15 in the ordinary course of business to carry out those purposes.

(2) *Example.* If you disclose nonpublic personal information under this section to a financial institution with which you perform joint marketing, your contractual agreement with that institution meets the requirements of paragraph (a)(1)(ii) of this section if it prohibits the institution from disclosing or using the nonpublic personal information except as necessary to carry out the joint marketing or under an exception in § 1016.14 or § 1016.15 in the ordinary course of business to carry out that joint marketing.

(b) *Service may include joint marketing.* The services a nonaffiliated third party performs for you under paragraph (a) of this section may include marketing of your own products or services or marketing of financial products or services offered pursuant to joint agreements between you and one or more financial institutions.

(c) *Definition of joint agreement.* For purposes of this section, joint agreement means a written contract pursuant to which you and one or more financial institutions jointly offer, endorse, or sponsor a financial product or service.

### § 1016.14 Exceptions to notice and opt out requirements for processing and servicing transactions.

(a) *Exceptions for processing transactions at consumer's request.* The requirements for initial notice in § 1016.4(a)(2), for the opt out in §§ 1016.7 and 1016.10, and for service providers and joint marketing in § 1016.13 do not apply if you disclose nonpublic personal information as necessary to effect, administer, or enforce a transaction that a consumer requests or authorizes, or in connection with:

(1) Servicing or processing a financial product or service that a consumer requests or authorizes;

(2) Maintaining or servicing the consumer's account with you, or with another entity as part of a private label credit card program or other extension of credit on behalf of such entity; or

(3) A proposed or actual securitization, secondary market sale (including sales of servicing rights), or similar transaction related to a transaction of the consumer.

(b) *Necessary to effect, administer, or enforce a transaction* means that the disclosure is:

(1) Required, or is one of the lawful or appropriate methods, to enforce your rights or the rights of other persons engaged in carrying out the financial transaction or providing the product or service; or

(2) Required, or is a usual, appropriate or acceptable method:

(i) To carry out the transaction or the product or service business of which the transaction is a part, and record, service, or maintain the consumer's account in the ordinary course of providing the financial service or financial product;

(ii) To administer or service benefits or claims relating to the transaction or the product or service business of which it is a part;

(iii) To provide a confirmation, statement, or other record of the transaction, or information on the status or value of the financial service or financial product to the consumer or the consumer's agent or broker;

(iv) To accrue or recognize incentives or bonuses associated with the transaction that are provided by you or any other party;

(v) To underwrite insurance at the consumer's request or for reinsurance purposes, or for any of the following purposes as they relate to a consumer's insurance: account administration, reporting, investigating, or preventing fraud or material misrepresentation, processing premium payments, processing insurance claims, administering insurance benefits (including utilization review activities), participating in research projects, or as otherwise required or specifically permitted by Federal or state law; or

(vi) In connection with:

(A) The authorization, settlement, billing, processing, clearing, transferring, reconciling or collection of amounts charged, debited, or otherwise paid using a debit, credit, or other payment card, check, or account number, or by other payment means;

(B) The transfer of receivables, accounts, or interests therein; or

(C) The audit of debit, credit, or other payment information.

### § 1016.15 Other exceptions to notice and opt out requirements.

(a) *Exceptions to opt out requirements.* The requirements for initial notice in § 1016.4(a)(2), for the opt out in §§ 1016.7 and 1016.10, and for service providers and joint marketing in § 1016.13 do not apply when you disclose nonpublic personal information:

(1) With the consent or at the direction of the consumer, provided that the consumer has not revoked the consent or direction;

(2)(i) To protect the confidentiality or security of your records pertaining to the consumer, service, product, or transaction;

(ii) To protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability;

(iii) For required institutional risk control or for resolving consumer disputes or inquiries;

(iv) To persons holding a legal or beneficial interest relating to the consumer; or

(v) To persons acting in a fiduciary or representative capacity on behalf of the consumer;

(3) To provide information to insurance rate advisory organizations, guaranty funds or agencies, agencies that are rating you, persons that are assessing your compliance with industry standards, and your attorneys, accountants, and auditors;

(4) To the extent specifically permitted or required under other provisions of law and in accordance with the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401 *et seq.*), to law enforcement agencies (including the Bureau, a Federal functional regulator, the Secretary of the Treasury, with respect to 31 U.S.C. Chapter 53, Subchapter II (Records and Reports on Monetary Instruments and Transactions) and 12 U.S.C. Chapter 21 (Financial Recordkeeping), a state insurance authority, with respect to any person domiciled in that insurance authority's state that is engaged in providing insurance, and the Federal Trade Commission), self-regulatory organizations, or for an investigation on a matter related to public safety;

(5)(i) To a consumer reporting agency in accordance with the Fair Credit Reporting Act (15 U.S.C. 1681 *et seq.*); or

(ii) From a consumer report reported by a consumer reporting agency;

(6) In connection with a proposed or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit if the disclosure of nonpublic personal information concerns solely consumers of such business or unit; or

(7)(i) To comply with Federal, state, or local laws, rules and other applicable legal requirements;

(ii) To comply with a properly authorized civil, criminal, or regulatory investigation, or subpoena or summons by Federal, state, or local authorities; or

(iii) To respond to judicial process or government regulatory authorities having jurisdiction over you for examination, compliance, or other purposes as authorized by law.

(b) *Examples of consent and revocation of consent.* (1) A consumer may specifically consent to your disclosure to a nonaffiliated insurance company of the fact that the consumer has applied to you for a mortgage so that the insurance company can offer homeowner's insurance to the consumer.

(2) A consumer may revoke consent by subsequently exercising the right to opt out of future disclosures of nonpublic personal information as permitted under § 1016.7(h) of this part.

## Subpart D—Relation to Other Laws

### § 1016.16  Protection of Fair Credit Reporting Act.

Nothing in this part shall be construed to modify, limit, or supersede the operation of the Fair Credit Reporting Act (15 U.S.C. 1681 *et seq.*), and no inference shall be drawn on the basis of the provisions of this part regarding whether information is transaction or experience information under section 603 of that Act.

### § 1016.17  Relation to state laws.

(a) *In general.* This part shall not be construed as superseding, altering, or affecting any statute, regulation, order, or interpretation in effect in any state, except to the extent that such state statute, regulation, order, or interpretation is inconsistent with the provisions of this part, and then only to the extent of the inconsistency.

(b) *Greater protection under state law.* For purposes of this section, a state statute, regulation, order, or interpretation is not inconsistent with the provisions of this part if the protection such statute, regulation, order, or interpretation affords any consumer is greater than the protection provided under this part, as determined by the Bureau, on its own motion or upon the petition of any interested party, after consultation with the agency or authority with jurisdiction under section 505(a) of the GLB Act (15 U.S.C. 6805(a)) over either the person that initiated the complaint or that is the subject of the complaint.

### Appendix to Part 1016—Model Privacy Form

**A. The Model Privacy Form**

BILLING CODE 4810–AM–P

Version 1: Model Form With No Opt-Out.

Rev. [insert date]

| FACTS | WHAT DOES [NAME OF FINANCIAL INSTITUTION] DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>■ Social Security number and [income]<br>■ [account balances] and [payment history]<br>■ [credit history] and [credit scores]<br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons [name of financial institution] chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does [name of financial institution] share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | | |
| For our marketing purposes— to offer our products and services to you | | |
| For joint marketing with other financial companies | | |
| For our affiliates' everyday business purposes— information about your transactions and experiences | | |
| For our affiliates' everyday business purposes— information about your creditworthiness | | |
| For our affiliates to market to you | | |
| For nonaffiliates to market to you | | |

| Questions? | Call [phone number] or go to [website] |
|---|---|

**Page 2**

| Who we are | |
|---|---|
| Who is providing this notice? | [insert] |

| What we do | |
|---|---|
| How does [name of financial institution] protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>[insert] |
| How does [name of financial institution] collect my personal information? | We collect your personal information, for example, when you<br>■ [open an account] or [deposit money]<br>■ [pay your bills] or [apply for a loan]<br>■ [use your credit or debit card]<br><br>[We also collect your personal information from other companies.] OR [We also collect your personal information from others, such as credit bureaus, affiliates, or other companies.] |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>■ sharing for affiliates' everyday business purposes—information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. [See below for more on your rights under state law.] |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>■ [affiliate information] |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>■ [nonaffiliate information] |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>■ [joint marketing information] |

| Other important information | |
|---|---|
| [insert other important information] | |

**Version 4. Optional Mail-in Form.**

```
Mail-in Form
Leave Blank      Mark any/all you want to limit:
OR
[If you have a   ☐ Do not share information about my creditworthiness with your affiliates for their everyday
joint account,      business purposes.
your choice(s)
will apply to    ☐ Do not allow your affiliates to use my personal information to market to me.
everyone on your
account unless   ☐ Do not share my personal information with nonaffiliates to market their products and
you mark below.    services to me.

☐ Apply my       Name
  choices only
  to me]         Address

                 City, State, Zip
                 [Account #]
```

Mail To:   [Name of Financial Institution], [Address1]
           [Address2], [City], [ST]  [ZIP]

BILLING CODE 4810–AM–C

**B. General Instructions**

*1. How the Model Privacy Form Is Used*

(a) The model form may be used, at the option of a financial institution, including a group of financial institutions that use a common privacy notice, to meet the content requirements of the privacy notice and opt-out notice set forth in §§ 1016.6 and 1016.7 of this part.

(b) The model form is a standardized form, including page layout, content, format, style, pagination, and shading. Institutions seeking to obtain the safe harbor through use of the model form may modify it only as described in these Instructions.

(c) Note that disclosure of certain information, such as assets, income, and information from a consumer reporting agency, may give rise to obligations under the Fair Credit Reporting Act [15 U.S.C. 1681–1681x] (FCRA), such as a requirement to permit a consumer to opt out of disclosures to affiliates or designation as a consumer reporting agency if disclosures are made to nonaffiliated third parties.

(d) The word ''customer'' may be replaced by the word ''member'' whenever it appears in the model form, as appropriate.

*2. The Contents of the Model Privacy Form*

The model form consists of two pages, which may be printed on both sides of a single sheet of paper, or may appear on two separate pages. Where an institution provides a long list of institutions at the end of the model form in accordance with Instruction C.3(a)(1), or provides additional information in accordance with Instruction C.3(c), and such list or additional information exceeds the space available on page two of the model form, such list or additional information may extend to a third page.

(a) *Page One.* The first page consists of the following components:

(1) Date last revised (upper right-hand corner).

(2) Title.
(3) Key frame (Why?, What?, How?).
(4) Disclosure table (''Reasons we can share your personal information'').
(5) ''To limit our sharing'' box, as needed, for the financial institution's opt-out information.
(6) ''Questions'' box, for customer service contact information.
(7) Mail-in opt-out form, as needed.

(b) *Page Two.* The second page consists of the following components:

(1) Heading (Page 2).
(2) Frequently Asked Questions (''Who we are'' and ''What we do'').
(3) Definitions.
(4) ''Other important information'' box, as needed.

*3. The Format of the Model Privacy Form*

The format of the model form may be modified only as described below.

(a) *Easily readable type font.* Financial institutions that use the model form must use an easily readable type font. While a number of factors together produce easily readable type font, institutions are required to use a minimum of 10-point font (unless otherwise expressly permitted in these Instructions) and sufficient spacing between the lines of type.

(b) *Logo.* A financial institution may include a corporate logo on any page of the notice, so long as it does not interfere with the readability of the model form or the space constraints of each page.

(c) *Page size and orientation.* Each page of the model form must be printed on paper in portrait orientation, the size of which must be sufficient to meet the layout and minimum font size requirements, with sufficient white space on the top, bottom, and sides of the content.

(d) *Color.* The model form must be printed on white or light color paper (such as cream) with black or other contrasting ink color. Spot color may be used to achieve visual interest, so long as the color contrast is distinctive and the color does not detract from the readability of the model form. Logos may also be printed in color.

(e) *Languages.* The model form may be translated into languages other than English.

**C. Information Required in the Model Privacy Form**

The information in the model form may be modified only as described below:

*1. Name of the Institution or Group of Affiliated Institutions Providing the Notice*

Insert the name of the financial institution providing the notice or a common identity of affiliated institutions jointly providing the notice on the form wherever [name of financial institution] appears.

*2. Page One*

(a) *Last revised date.* The financial institution must insert in the upper right-hand corner the date on which the notice was last revised. The information shall appear in minimum 8-point font as ''rev. [month/year]'' using either the name or number of the month, such as ''rev. July 2009'' or ''rev. 7/09''.

(b) *General instructions for the ''What?'' box.*

(1) The bulleted list identifies the types of personal information that the institution collects and shares. All institutions must use the term ''Social Security number'' in the first bullet.

(2) Institutions must use five (5) of the following terms to complete the bulleted list: Income; account balances; payment history; transaction history; transaction or loss history; credit history; credit scores; assets; investment experience; credit-based insurance scores; insurance claim history; medical information; overdraft history; purchase history; account transactions; risk tolerance; medical-related debts; credit card or other debt; mortgage rates and payments; retirement assets; checking account

information; employment information; wire transfer instructions.

(c) *General instructions for the disclosure table.* The left column lists reasons for sharing or using personal information. Each reason correlates to a specific legal provision described in paragraph C.2(d) of this Instruction. In the middle column, each institution must provide a ''Yes'' or ''No'' response that accurately reflects its information sharing policies and practices with respect to the reason listed on the left. In the right column, each institution must provide in each box one of the following three (3) responses, as applicable, that reflects whether a consumer can limit such sharing: ''Yes'' if it is required to or voluntarily provides an opt-out; ''No'' if it does not provide an opt-out; or ''We don't share'' if it answers ''No'' in the middle column. Only the sixth row (''For our affiliates to market to you'') may be omitted at the option of the institution. *See* paragraph C.2(d)(6) of this Instruction.

(d) *Specific disclosures and corresponding legal provisions.*

(1) *For our everyday business purposes.* This reason incorporates sharing information under §§ 1016.14 and 1016.15 and with service providers pursuant to § 1016.13 of this part other than the purposes specified in paragraphs C.2(d)(2) or C.2(d)(3) of these Instructions.

(2) *For our marketing purposes.* This reason incorporates sharing information with service providers by an institution for its own marketing pursuant to § 1016.13 of this part. An institution that shares for this reason may choose to provide an opt-out.

(3) *For joint marketing with other financial companies.* This reason incorporates sharing information under joint marketing agreements between two or more financial institutions and with any service provider used in connection with such agreements pursuant to § 1016.13 of this part. An institution that shares for this reason may choose to provide an opt-out.

(4) *For our affiliates' everyday business purposes—information about transactions and experiences.* This reason incorporates sharing information specified in sections 603(d)(2)(A)(i) and (ii) of the FCRA. An institution that shares for this reason may choose to provide an opt-out.

(5) *For our affiliates' everyday business purposes—information about creditworthiness.* This reason incorporates sharing information pursuant to section 603(d)(2)(A)(iii) of the FCRA. An institution that shares for this reason must provide an opt-out.

(6) *For our affiliates to market to you.* This reason incorporates sharing information specified in section 624 of the FCRA. This reason may be omitted from the disclosure table when: the institution does not have affiliates (or does not disclose personal information to its affiliates); the institution's affiliates do not use personal information in a manner that requires an opt-out; or the institution provides the affiliate marketing notice separately. Institutions that include this reason must provide an opt-out of indefinite duration. An institution that is required to provide an affiliate marketing opt-out, but does not include that opt-out in the model form under this part, must comply with section 624 of the FCRA and 12 CFR part 1022, subpart C, with respect to the initial notice and opt-out and any subsequent renewal notice and opt-out. An institution not required to provide an opt-out under this subparagraph may elect to include this reason in the model form.

(7) *For nonaffiliates to market to you.* This reason incorporates sharing described in §§ 1016.7 and 1016.10(a) of this part. An institution that shares personal information for this reason must provide an opt-out.

(e) *To limit our sharing:* A financial institution must include this section of the model form *only* if it provides an opt-out. The word ''choice'' may be written in either the singular or plural, as appropriate. Institutions must select one or more of the applicable opt-out methods described: Telephone, such as by a toll-free number; a Web site; or use of a mail-in opt-out form. Institutions may include the words ''toll-free'' before telephone, as appropriate. An institution that allows consumers to opt out online must provide either a specific Web address that takes consumers directly to the opt-out page or a general Web address that provides a clear and conspicuous direct link to the opt-out page. The opt-out choices made available to the consumer who contacts the institution through these methods must correspond accurately to the ''Yes'' responses in the third column of the disclosure table. In the part titled ''Please note,'' institutions may insert a number that is 30 or greater in the space marked ''[30].'' Instructions on voluntary or state privacy law opt-out information are in paragraph C.2(g)(5) of these Instructions.

(f) *Questions box.* Customer service contact information must be inserted as appropriate, where [phone number] or [Web site] appear. Institutions may elect to provide either a phone number, such as a toll-free number, or a web address, or both. Institutions may include the words ''toll-free'' before the telephone number, as appropriate.

(g) *Mail-in opt-out form.* Financial institutions must include this mail-in form *only* if they state in the ''To limit our sharing'' box that consumers can opt out by mail. The mail-in form must provide opt-out options that correspond accurately to the ''Yes'' responses in the third column in the disclosure table. Institutions that require customers to provide only name and address may omit the section identified as ''[account #].'' Institutions that require additional or different information, such as a random opt-out number or a truncated account number, to implement an opt-out election should modify the ''[account #]'' reference accordingly. This includes institutions that require customers with multiple accounts to identify each account to which the opt-out should apply. An institution must enter its opt-out mailing address: in the far right of this form (*see* version 3); or below the form (*see* version 4). The reverse side of the mail-in opt-out form must not include any content of the model form.

(1) *Joint accountholder.* Only institutions that provide their joint accountholders the choice to opt out for only one accountholder, in accordance with paragraph C.3(a)(5) of these Instructions, must include in the far left column of the mail-in form the following statement: ''If you have a joint account, your choice(s) will apply to everyone on your account unless you mark below. ☐ Apply my choice(s) only to me.'' The word ''choice'' may be written in either the singular or plural, as appropriate. Financial institutions that provide insurance products or services, provide this option, and elect to use the model form may substitute the word ''policy'' for ''account'' in this statement. Institutions that do not provide this option may eliminate this left column from the mail-in form.

(2) *FCRA section 603(d)(2)(A)(iii) opt-out.* If the institution shares personal information pursuant to section 603(d)(2)(A)(iii) of the FCRA, it must include in the mail-in opt-out form the following statement: ''☐ Do not share information about my creditworthiness with your affiliates for their everyday business purposes.''

(3) *FCRA section 624 opt-out.* If the institution incorporates section 624 of the FCRA in accord with paragraph C.2(d)(6) of these Instructions, it must include in the mail-in opt-out form the following statement: ''☐ Do not allow your affiliates to use my personal information to market to me.''

(4) *Nonaffiliate opt-out.* If the financial institution shares personal information pursuant to § 1016.10(a) of this part, it must include in the mail-in opt-out form the following statement: ''☐ Do not share my personal information with nonaffiliates to market their products and services to me.''

(5) *Additional opt-outs.* Financial institutions that use the disclosure table to provide opt-out options beyond those required by Federal law must provide those opt-outs in this section of the model form. A financial institution that chooses to offer an opt-out for its own marketing in the mail-in opt-out form must include one of the two following statements: ''☐ Do not share my personal information to market to me.'' *or* ''☐ Do not use my personal information to market to me.'' A financial institution that chooses to offer an opt-out for joint marketing must include the following statement: ''☐ Do not share my personal information with other financial institutions to jointly market to me.''

(h) *Barcodes.* A financial institution may elect to include a barcode and/or ''tagline'' (an internal identifier) in 6-point font at the bottom of page one, as needed for information internal to the institution, so long as these do not interfere with the clarity or text of the form.

*3. Page Two*

(a) *General Instructions for the Questions.* Certain of the Questions may be customized as follows:

(1) *''Who is providing this notice?''* This question may be omitted where only one financial institution provides the model form and that institution is clearly identified in the title on page one. Two or more financial institutions that jointly provide the model form must use this question to identify themselves as required by § 1016.9(f) of this part. Where the list of institutions exceeds four (4) lines, the institution must describe in