Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RESIDENTIAL CAPITAL, LLC., et al. | ) Case No. 12-12020 (MG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ALLY FINANCIAL INC.'S AND ALLY BANK'S REPLY TO CREDITORS'**
**COMMITTEE'S LIMITED OBJECTION TO (A) THE DEBTORS' MOTION**
**AUTHORIZING DEBTORS TO CONTINUE TO PERFORM UNDER THE**
**ALLY BANK SERVICING AGREEMENT IN THE ORDINARY COURSE OF**
**BUSINESS AND (B) THE DEBTORS' ORIGINATION MOTION**

Ally Financial Inc. ("*AFI*") and Ally Bank submit this reply in response to the limited

objection (the "*Objection*") [Docket No. 303] of the Official Committee of Unsecured Creditors

(the "*Committee*") to (a) the Debtors' *Motion for an Order Pursuant to Sections 105(A) and 363*

*of the Bankruptcy Code Authorizing the Debtors to Continue to Perform Under the Ally Bank*

*Servicing Agreement in the Ordinary Course of Business* [Docket No. 90] (the "*Servicing*

*Agreement Motion*") and (b) the Debtors' motion seeking approval of various relief relating to

their origination activities [Docket No. 44] (the "*Origination Motion*" and with the Servicing

Agreement Motion, the "*Motions*").

K&E 22863640

**PRELIMINARY STATEMENT**

1.     Prior to the petition date, the Debtors and Ally Bank engaged in extensive good faith and arm's-length negotiations regarding the terms of the servicing agreement between Ally Bank and GMAC Mortgage, LLC (the "***Servicing Agreement***"), as described in the Servicing Agreement Motion, and amendments to the master mortgage loan purchase and sale agreement (the "***Purchase and Sale Agreement***") and related agreements, as described in the Origination Motion.  The Servicing Agreement and the continued cooperation of AFI and Ally Bank allow the Debtors to continue to perform mortgage loan subservicing activities during their chapter 11 bankruptcy cases in an unprecedented manner.  By enabling the Debtors to maintain their servicing platform, the Debtors may be able to achieve a going-concern sale as contemplated by the Settlement and Plan Sponsor Agreement, dated as of May 14, 2012, between the Debtors and AFI (the "***Ally-ResCap Settlement Agreement***").[1]

2.     As AFI and Ally Bank expect the Debtors to demonstrate at the hearing on the Motions, the Servicing Agreement and the Purchase and Sale Agreement were integral components of the Ally-ResCap Settlement Agreement to support the Debtors' operations to a going-concern sale, were the subject of extensive arm's-length discussions with Ally Bank and are supported by the Debtors' sound business judgment, all in accordance with applicable law.[2] On this basis alone, AFI and Ally Bank respectfully submit that the Court should overrule the Objection as it relates to the approval of the Servicing Agreement and the relief sought in the Origination Motion.

3.     Moreover, the Court should be aware that Ally Bank's cooperation with the

---

[1]   Capitalized terms not defined herein have the meanings ascribed to such terms in the Objection.

[2]   Federal regulations require that agreements between Ally Bank and its affiliates be negotiated in good faith and on an arm's-length basis. 12 U.S.C. § 371c-1.

Debtors, as manifested, in part, in the Servicing Agreement and the Purchase and Sale Agreement, is unprecedented insofar as Ally Bank is closely regulated by the state of Utah and the Federal Deposit Insurance Corporation (the "**FDIC**") and subject to several confidential FDIC directives in light of Ally Bank's cooperation with its bankrupt affiliates.[3] AFI, as a U.S. bank holding company, is subject to strict regulation by the Federal Reserve.[4] AFI and Ally Bank extensively (and necessarily) coordinated with regulatory bodies, including the FDIC, in connection with the terms of the Servicing Agreement and the Purchase and Sale Agreement. The key provisions of each agreement reflect good faith, arm's-length terms and compromises needed to support the Debtors' operations. Should the Debtors fail to obtain approval of the Servicing Agreement as written and the order with respect to the Origination Motion as it pertains to the Purchase and Sale Agreement, AFI and Ally Bank will be forced to consult their regulatory authorities and revisit several complex issues associated with each agreement, which could possibly threaten the Debtors' ongoing ability to maintain their servicing platform leading up to the sale of their assets.

4.     AFI and Ally Bank are continuing their discussions with the Committee to resolve these issues in advance of the hearing on the Motions.

## RESPONSE

5.     The Objection raises three issues with the Servicing Agreement and the Purchase and Sale Agreement—none of which, for the following reasons, provides a valid basis for the Court to deny the relief requested in the Motions.[5]

---

[3]    12 U.S.C. §§ 1801. et seq.

[4]    12 U.S.C. §§ 1841, et seq.

[5]    AFI's subsidiary, AIM, is party to the Master Forward Agreement. While neither AFI nor Ally Bank is a party to such agreement, the arguments presented in this response apply equally to the Objection as it pertains to the

## I.    Limitations on Assignment of the Servicing Agreement are Permissible

6.    The Committee argues that the Servicing Agreement's limitation on assignment is improper in light of a debtor's ability to assume an executory contract under section 365 of the Bankruptcy Code (notwithstanding any restrictions to the contrary).  Specifically, the Committee objects to the limitation on assigning the Servicing Agreement only to an "Eligible Servicer" (as determined in part by applicable government agencies).[6]

7.    Again, as the Debtors will demonstrate at the hearing on the Motions, the Servicing Agreement is the subject of good faith, arm's-length negotiations and a product of the exercise of the Debtors' sound business judgment.  This alone is enough to justify the relief sought by the Debtors.

8.    Moreover, Ally Bank is a federally-regulated institution.  As a legal and practical matter, Ally Bank's mortgage loans may not be serviced by any entity other than an Eligible Servicer.[7]  Specifically, because Ally Bank is the servicer of record with both The Federal Home Loan Mortgage Corporation ("*Freddie Mac*") and The Federal National Mortgage Association ("*Fannie Mae*"), it must ensure that Ally Bank's subservicer complies with all of Fannie Mae's and Freddie Mac's requirements.[8]  Additionally, Fannie Mae and Freddie Mac both require that a

---

Master Forward Agreement.

[6]    Objection, ¶ 17.  An "Eligible Servicer" is defined in the Servicing Agreement as "an entity that (a) is an approved servicer by the Agencies, with the power and authority to service the Mortgage Loans in accordance with the guidelines of the Agencies, and is in good standing with the Agencies, (b) is a mortgagee approved by the Secretary of HUD pursuant to Section 203 of the National Housing Act, (c) is licensed, qualified and in good standing pursuant to the terms of Section 7.01 herein, (d) has the insurance required to be maintained pursuant to the terms of Section 2.12 herein, and (e) is an eligible HAMP servicer in good standing and has signed a Servicer Participation Agreement that is in effect." (Servicing Agreement § 1.1).

[7]    *See* definition of Eligible Servicer above.

[8]    *See e.g.*, the Fannie Mae Single Family 2012 Servicing Guide (the "*Fannie Mae Servicing Guide*") § 206.01 ("Whenever a servicer enters into a subservicing arrangement with respect to any particular mortgage loans … the servicer represents and warrants to Fannie Mae that the subservicer will service those mortgage loans in accordance with all Fannie Mae requirements ….  The servicer and subservicer each represent and warrant to

4

subservicer comply with all applicable state laws, including state mortgage laws.[9]  Accordingly,

Ally Bank cannot perform under the Servicing Agreement if assignment is not limited to Eligible

Servicers, and this relatively modest restriction is thus necessary and reasonable.

## II.   Cause Exists to Permit the Advance Stay Modification Provisions With Respect to Termination of the Servicing Agreement and the Purchase and Sale Agreement

9.      The Committee takes issue with the termination provisions in the Servicing

Agreement and related approval order and in the order approving the Origination Motion to the

extent the provisions embody a waiver of section 362 of the Bankruptcy Code.[10]  Section 362(d)

of the Bankruptcy Code permits the Court, after notice and a hearing, to grant relief from the

automatic stay for cause. 11 U.S.C. § 362(d)(1).  These termination provisions in the Servicing

Agreement and the Purchase and Sale Agreement and the associated automatic stay waivers were

highly negotiated.  The resulting compromise provides the Debtors stability for a period of time

necessary to achieve a sale of substantially all of their assets in their chapter 11 cases.  Absent

the compromise embodied in the Servicing Agreement (whereby Ally Bank is not granted relief

from the automatic stay to issue a 120-day notice to terminate the agreement without cause until

90 days following the petition date in return for the Debtors' agreement not to seek rejection of

the agreement within the first 90 days of these cases and then to provide 120-days notice with

respect to any rejection), Ally Bank would not be in a position to support the Debtors' continued

subservicing activities and the Debtors' operations.  Ally Bank, as a closely regulated entity,

---

Fannie Mae that … the subservicing agreement does not conflict with Fannie Mae's servicing requirements.")

[9]   *See*, *e.g*., Fannie Mae Servicing Guide § 307 ("Fannie Mae requires each Fannie Mae-approved servicer (and any <u>subservicer</u> or third party originator it uses) to be aware of, and in full compliance with, all federal, state, and local laws (including statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial ruling and opinions) that apply to any of origination, selling, <u>or servicing practices</u> ….") (emphasis added).

[10]   *Id.*, ¶ 18.

cannot forfeit its negotiated termination rights because any delay in the exercise of such rights may cause Freddie Mac and Fannie Mae to terminate Ally Bank's servicing rights with respect to their loans or the FDIC to revisit AFI's and Ally Bank's continued cooperation with the Debtors. Further, with respect to the Purchase and Sale Agreement, the termination provisions negotiated in the order approving the Origination Motion were agreed upon as a compromise with respect to Ally Bank's rights to otherwise terminate the Purchase and Sale Agreement following the Debtors' chapter 11 filing as permitted pursuant to section 559 of the Bankruptcy Code.

10.    AFI and Ally Bank respectfully submit that there may be very significant consequences for the Debtors' chapter 11 estates by reopening the highly complex, privileged[11] and confidential and unprecedented negotiations with the regulatory bodies concerning the agreements at issue. If the Debtors are unsuccessful in obtaining the approval of the Servicing Agreement and the relief requested in the order approving the Origination Motion, AFI and Ally Bank will be required to recommence those negotiations and the outcomes for the chapter 11 estates and the Debtors' chapter 11 plan will be uncertain.

11.    For these reasons and the reasons stated in the Motions, cause exists for the Court to approve the termination provisions in the Servicing Agreement and the advance lifting of the automatic stay to allow for termination of the Servicing Agreement and the Purchase and Sale Agreement as specified in the proposed orders. *See, e.g., In re Frye*, 320 B.R. 786, 790 (Bankr. D. Vt. 2005) (subject to court approval, prepetition agreements waiving the protection afforded by the automatic stay are enforceable).

---

[11]    *See* 12 U.S.C. § 1828(x) ("The submission by any person of any information to any Federal banking agency, State bank supervisor, or foreign banking authority for any purpose in the course of any supervisory or regulatory process of such agency, supervisor, or authority shall not be construed as waiving, destroying, or otherwise affecting any privilege such person may claim with respect to such information under Federal or State law as to any person or entity other than such agency, supervisor, or authority.")

### III.  Administrative Expense Status is Only Sought in Connection with Claims Relating to Postpetition Transactions

12.    Lastly, the Committee asserts that, in the Origination Motion, "the Debtors propose to extend administrative expense priority to all claims arising under all Specified Documents . . ., all of which are prepetition agreements with the Debtors' affiliates, regardless of whether such obligations arose prepetition or postpetition."[12]  Ally Bank does not intend, however, for claims related to mortgage loans sold pursuant to the Purchase and Sale Agreement prepetition to be afforded administrative expense status.  Ally Bank is thus conferring with the Committee to include clarifying language in the order approving the Origination Motion to address this concern.

### CONCLUSION

13.    For the foregoing reasons, AFI and Ally Bank respectfully request that the Court overrule the Objection on its merits, approve the Motions, and grant such other and further relief as the Court deems appropriate.

New York, New York
Dated: June 15, 2012

/s/ Ray C. Schrock
Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Counsel for Ally Financial Inc. and Ally Bank*

---

[12]    Objection, ¶ 19.

7