**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**SUPPLEMENTAL ORDER FOR INTERIM RELIEF UNDER BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS; (II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND EXPENSES**

Upon the motion (the "<u>Motion</u>")[1] of Residential Capital, LLC, and certain of its affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of a supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation programs; (ii) approving procedures for the compromise and settlement of certain claims, litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct claims and counter-claims in foreclosure and eviction proceedings (including in states in which non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion. Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

they service senior mortgage loans and own the junior mortgage loans on the underlying property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions involving the amount, validity or priority of liens on properties subject to foreclosure proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion Declaration; and the Court having entered the Interim GA Servicing Order on May 15, 2012 granting the GA Servicing Motion on an interim basis; and the Court having entered the Interim Non-GA Servicing Order on May 16, 2012 granting the Non-GA Servicing Motion on an interim basis; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Debtors having filed a motion to have the Motion heard on shortened notice [Docket No. 180]; and the Court having entered an order shortening the time for notice of a hearing on the Motion [Docket No. 183]; and sufficient notice of the Motion having been given and it appearing that no other or further notice need be provided; and the National Association of Consumer Bankruptcy Attorneys, on its own behalf and in a representative capacity, two individuals who are debtors under Chapter 13, and Edward Boltz, counsel for those individuals, having filed jointly the Limited Omnibus Objection To The Servicing Orders And Debtors' May 31, 2012 Motion For A Supplemental Order [Docket No. 221] (the "NACBA Objection"); and the Committee having filed the Omnibus Response And Reservation Of Rights Of The Official Committee Of Unsecured Creditors To Certain Of The Debtors' First Day Motions [Docket No. 240]; and the Debtors having filed the Omnibus Reply To Objections To Entry Of Final Orders For Specific

2

"First Day" Motions And Related Relief [Docket. No. 254] (the "Reply"); and upon the record of the hearing; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED on an interim basis, as set forth herein, and the NACBA Objection and any other objections to the Motion are hereby overruled;

Loss Mitigation Programs

2. The Debtors are authorized, but not directed in their sole and absolute discretion and subject to available funding, to continue developing and implementing loss mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to the Petition Date, including, but not limited to, making incentive payments to borrowers in connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction proceedings, or in the form of borrower rebates for loan payoffs (collectively, the "Loss Mitigation Programs"); provided, however, that cash payments made by the Debtors to individual borrowers under the Loss Mitigation Programs during the period from the Petition Date through the date a final order granting the Motion is entered that are not recoverable by the Debtors, whether as an Advance or otherwise, shall not exceed $2,000,000 in the aggregate, absent consent of the Committee or further order of the Court. The Debtors shall provide monthly reports to the Committee and the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), which reports shall be in a form agreed to by the Debtors and the Committee and such additional information as shall be reasonably requested by the Committee, in each case, concerning the Loss Mitigation Programs.

Settlement Procedures

   3.  The Debtors are authorized, but not directed to compromise and settle certain claims brought by the Debtors against any non-insider third parties in connection with foreclosure, eviction, or borrower bankruptcy proceedings (each a "Settling Party") or by a Settling Party against any of the Debtors (each, a "Claim") in accordance with the following two-tiered procedures (the "Settlement Procedures"):

> Tier I: The Debtors, in their sole discretion, may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash payments or allowed prepetition claims in amounts not to exceed $50,000 in full settlement of such Claim (each, a "Tier I Settlement").

> Tier II: The Debtors, in their sole discretion, may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash payments or allowed prepetition claims in amounts exceeding $50,000 but less than $100,000 in full settlement of such Claims (each, a "Tier II Settlement"); provided, that in each case:

>  (a) The Debtors must provide advance written notice (by formal or informal means, including by e-mail correspondence) of the terms of any Tier II Settlement to (x) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas New York, NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal; and (z) counsel to the administrative agent for the Debtors' providers of debtor in possession financing, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer (collectively the "Notice Parties")

>  (b) Those Notice Parties wishing to object to any proposed Tier II Settlement must serve a written objection (by formal or informal means, including by e-mail correspondence) on the Debtors, so that it is received by no later than 4:00 p.m. (prevailing Eastern Time) on the day that is seven (7) calendar days from the

4

date the Notice Parties received written notice of such Tier II Settlement (the "Settlement Objection Deadline"). Objections should be addressed to the proposed attorneys for the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104, Attn: Larren M. Nashelsky (LNashelsky@mofo.com) and Norman S. Rosenbaum (NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice Party, the parties will confer and attempt to resolve any differences. Failing that, the Debtors may petition the Court for approval of the Tier II Settlement in accordance with any case management orders entered in the Chapter 11 cases. An objection by a Notice Party with respect to a given Tier II Settlement shall not delay the finality or effectiveness of any other settlement to which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a Tier II Settlement from a Notice Party by the Settlement Objection Deadline, then such Tier II Settlement shall be deemed approved and the Debtors and Settling Parties may carry out the terms of such Tier II Settlement without further notice or approval required.

4. The Debtors shall be required to seek approval from the Court in order to enter into and consummate any proposed settlement of a Claim with a settlement amount in excess of $100,000.

5. The Debtors are authorized in their sole discretion, but not directed, to settle claims where some or all of the consideration is being provided by a third party and/or where the Debtors are releasing claims against creditors or third parties provided the Debtors otherwise comply with the Settlement Procedures.

6. The Settlement Procedures are without prejudice to the right of the Debtors to seek an order of this Court approving additional or different procedures with respect to specific claims or categories of claims. For claims relating to matters specified in paragraphs 12(a) and 13(a) of this Order that were resolved pursuant to a settlement prior to the Petition Date, but where such settlement has not been consummated, the Debtors are authorized, but not

5

directed to, consummate said settlement in accordance with the Settlement Procedures set forth in this Order.

7. Notwithstanding anything to the contrary contained herein, this Order shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses, or resolve any controversy authorized by any other order of the Court.

8. Nothing in this Order or the Motion shall constitute a determination or admission of liability or of the validity or priority of any claim against the Debtors, and the Debtors reserve their rights to dispute the validity or priority of any claim asserted.

9. The authority granted in this Order shall not replace or obviate the need to comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements contemplated in the Motion. All settlements made pursuant to the Settlement Procedures shall, to the extent applicable, be made in accordance with the Debtors' settlement protocol in effect as of the Petition Date (the "<u>Internal Settlement Protocol</u>") and as may be amended from time; <u>provided</u>, <u>however</u>, that the Debtors shall provide the Committee and the U.S. Trustee with notice of any material amendments to the Internal Settlement Protocol. The Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning settlements of any Claims pursuant to the Settlement Procedures.

10. Cash payments made by the Debtors under the Settlement Procedures during the period from the Petition Date through the date a final order granting the Motion is

entered shall not exceed $4,000,000 in the aggregate, absent consent of the Committee or further order of the Court.

11. Any period prescribed or allowed by the Settlement Procedures shall be computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

12. The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or pending, is hereby modified pursuant to the following terms and conditions:

(a) except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor, in defense of any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment permitting the foreclosure or eviction has not been awarded, and to prosecute appeals with respect to any such direct claims or counter-claims;

(b) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for relief that if granted, would not terminate or preclude the prosecution and

7

completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

    (c) absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Interested Party on behalf of any other Interested Party or class of Interested Parties;

    (d) under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

    (e) the Debtors shall retain the right, upon appropriate motion and notice to any affected Interested Party, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order; and

    (f) nothing set forth herein shall preclude or limit any Interested Party from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

    13. The automatic stay imposed by section 362(a) of the Bankruptcy Code applicable against a borrower who currently has filed, or in the future files, for bankruptcy protection under any chapter of the Bankruptcy Code (a "<u>Bankruptcy Borrower</u>"), is hereby modified pursuant to the following terms and conditions:

    (a) except as set forth herein, a Bankruptcy Borrower or a trustee duly appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a

8

"<u>Bankruptcy Trustee</u>") shall be entitled to: (i) assert and prosecute or continue to prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or adversary proceeding, as applicable, to determine the validity, priority or extent of a Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce or fix the amount of the Debtors' claim or lien against the Bankruptcy Borrower's property; (v) seek an accounting from the Debtors with respect to the Bankruptcy Borrower's loan; and (vi) enter into, execute and consummate a written agreement of settlement with the Debtors where the Debtors elect to enter into such settlement in their sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (v) above;

(b) except as set forth herein, a Bankruptcy Borrower shall be entitled to (i) engage in court-supervised or court-authorized loss-mitigation programs regarding the Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and consummate settlements of claims and liens in accordance with the ordinary course of the Debtors' business and applicable law;

(c) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's direct claims, counter-claims, motions or adversary proceedings: (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for violation of any local, state or

federal statute or other law in connection with the origination of the Bankruptcy Borrower's loan; (iii) for relief that if granted, would have no effect on the amount, validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or (iv) asserted in the form of a class action or collective action;

    (d) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankruptcy Borrower on behalf of any other class of borrowers;

    (e) under no circumstances shall a Bankruptcy Borrower or Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

    (f) the Debtors shall retain the right, upon appropriate motion and notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order; and

    (g) nothing set forth herein shall preclude or limit any Bankruptcy Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Foreclosures By The Debtors On Senior Loans*

    14. The stay imposed by section 362(a) of the Bankruptcy Code applicable to pending and future foreclosure actions initiated by the Debtors in cases where they act as

servicer for the Senior Loan and also own (or for which the applicable public land records otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the following terms and conditions:

(a) except as otherwise set forth herein, the Debtors shall be entitled to assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-Judicial State;

(b) the Debtors shall be entitled to take such actions as are necessary to extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and marketable title with respect to the property underlying a Senior Loan in connection with any sale or other disposition of such property;

(c) the Debtors shall be entitled to seek all appropriate relief with respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy Borrower without further order of the Court; and

(d) the Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning Junior Foreclosure Actions.

D.   *Actions Involving Amount, Validity Or Priority Of Liens*

15.   The stay imposed by section 362(a) of the Bankruptcy Code applicable to actions involving the amount, validity, and/or priority of liens commenced by third parties purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

11

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is hereby modified pursuant to the following terms and conditions:

(a) except as otherwise set forth herein, a Third Party Claimant shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor in connection with any Title Dispute, and to prosecute appeals with respect to any such direct claims or counter-claims;

(b) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Third Party Claimant direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or (iii) asserted in the form of a class action or collective action;

(c) absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Third Party Claimant on behalf of any other Third Party Claimant or class of Third Party Claimants;

(d) under no circumstances shall a Third Party Claimant be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of the Order;

(e) the Debtors shall be entitled to take such actions as are necessary to clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

12

clear and marketable title with respect to such property in connection with any sale, foreclosure or other disposition of such property;

(f) the Debtors shall retain the right, upon appropriate motion and notice to any affected Third Party Claimant, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by the Order; and

(g) nothing set forth herein shall preclude or limit any Third Party Claimant from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

Payment of Securitization Trustee Fees and Expenses

16. The Debtors shall continue to perform all of their respective servicing duties and servicing related duties, including, but not limited to, their duties as master servicer, under all the governing agreements (including, without limitation, pooling and servicing agreements, servicing agreements, or any other agreements concerning or relating to the Debtors' obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or losses) (collectively, the "Agreements") relating to Debtor-sponsored securitization transactions and non-Debtor sponsored securitization transactions to which any of The Bank of New York Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of their respective capacities as trustee (collectively, the "Trustees") and one or more of the Debtors is a party, including but not limited to, making all principal, interest or other servicing advances (including property protection advances) and reimbursing, indemnifying, defending and holding harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

or expense (including fees and disbursements of counsel or agents) incurred by any of the Trustees in the performance of their duties or their administration of the trusts or other agencies under the Agreements to the extent required by the Agreements.  For the avoidance of doubt, the Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in connection with reviewing and analyzing the request by the Debtors to approve the MBS Settlement Agreement, and in connection with reviewing and analyzing amendments to the Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the MBS Settlement Agreement or the Platform Sale.  Notwithstanding the foregoing, nothing in this paragraph 16 shall require any Debtor (i) to repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or other requirements of the Agreements, or make any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or (ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the Agreements under which such other Debtor entity or non-Debtor affiliate are required to repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or other requirements of the Agreements, or make any make-whole payments with respect to any mortgage loans pursuant to the Agreements; and nothing in this paragraph 16 shall be deemed to impose liability on any Debtor with respect to such alleged breaches or make-whole payment requirements.

17.     Within thirty (30) days after the submission of customary invoices by the Trustees to (a) counsel to the Debtors, (b) counsel to the Committee, and (c) the U.S. Trustee, and without further order from the Court, the Debtors are authorized and directed to pay all reasonable fees, costs and expenses and all indemnity claims referred to in paragraph 16 (including without limitation, attorney, financial advisor, consultant and expert fees and costs)

14

incurred postpetition by any of the Trustees relating to the performance of each of the Trustees' duties or the administration of the trusts or other agencies under the Agreements (the "Trustee Expenses"). All Trustee Expenses shall be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding the entry of an order authorizing the assumption and assignment or rejection of any Agreement. However, the Debtors will not be responsible for any fees, costs and expenses incurred with respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing the rejection of such Agreement.

18. If any or all of the provisions of this Order are hereafter reversed, modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt of written notice by the Trustees of the effective date of such reversal, stay, modification or vacatur (the "Notice Date"). Notwithstanding any such reversal, stay, modification or vacatur, the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to or after the Notice Date by the Debtors shall be governed in all respects by the original provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies, privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

19. Notwithstanding the Debtors' obligations set forth in paragraphs 16 and 17, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code section 365.

Other Relief

20. The Debtors are authorized and empowered to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

21. Nothing herein shall be deemed to limit the rights of the Debtors to operate their business in the ordinary course, and no subsequent order shall be required to confirm such rights.

22. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

23. Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral order or debtor in possession financing order entered in these chapter 11 proceedings. All amounts authorized to be paid pursuant to this Order are subject to the limitations and restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement). To the extent that there is any inconsistency between the terms of this Order and the terms of any order relating to postpetition financing or cash collateral, the terms of the orders relating to postpetition financing or cash collateral shall govern.

24. Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

25. Nothing in this Order shall discharge, release, or otherwise preclude any setoff or recoupment right of the United States of America, its agencies, departments, or agents.

26. The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

27. Notwithstanding the possible applicability of Bankruptcy Rules 2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

28. The hearing to consider the Motion on a final basis is scheduled for July 10, 2012 at 10:00 a.m. (prevailing Eastern Time) before the Court. Any objections or responses to approval of the Motion on a final basis must be filed with the Clerk of the Bankruptcy Court and served upon and received by (a) the Special Service List (as defined in the *Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management And Administrative Procedures* (Docket No. 141)); (b) counsel to Wells Fargo Bank, N.A., as securitization trustee, Alston & Bird LLP, 90 Park Ave, New York, New York 10016 (Attn: Martin G Bunin & William Hao); (c) counsel to The Bank of New York Mellon Trust Company, N.A., as securitization trustee, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036 (Attn: Glenn Siegel); (d) counsel to Deutsche Bank Trust Company Americas and Deutsche Bank National Trust Company, as securitization trustee, Morgan Lewis & Bockius LLP, 101 Park Ave, New York, New York 10178-0600 (Attn: James L Garrity, Jr.) and (e) counsel to U.S. Bank, National Association, as securitization trustee, Seward & Kissell

LLP, One Battery Park Plaza, New York, New York 10004 (Attn: Ronald L Cohen); on or before June 29, 2012 at 5:00 p.m. prevailing EST.

29.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:      June 15, 2012
            New York, New York

        **/s/Martin Glenn**      
MARTIN GLENN
United States Bankruptcy Judge