**<u>EXHIBIT 2</u>**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- x
In re                                          :
                                               :   Chapter 11
                                               :
RESIDENTIAL CAPITAL, LLC, et al.,              :   Case No. 12-————12020 (MG)
                                               :
            Debtors.                           :   (Jointly Administered)
                                               :
-------------------------------------------------------- x
```

~~INTERIM~~**FINAL** ORDER (I) AUTHORIZING USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION,
**AND** (III) MODIFYING THE AUTOMATIC STAY~~, AND (IV) SCHEDULING A FINAL HEARING~~

Upon the motion, dated May 14, 2012 (the "**Motion**")[1] of Residential Capital, LLC and its direct and indirect subsidiaries, each as a debtor and debtor in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, with any successor case, the "**Cases**") pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Bankruptcy Rules of the Southern District of New York, seeking entry of an ~~interim~~ order (this "~~Interim~~**Final** Order"):

(i)        ~~(i)~~——authorizing the Debtors' use of "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) of Citibank (as defined herein) (the "**MSR Cash Collateral**");

(ii)       ~~(ii)~~——providing adequate protection to Citibank and for any diminution in value of its interest in the Prepetition MSR Collateral (as defined herein), including the MSR Cash Collateral; and

(iii)    (iii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Final Order, and (iv)    scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion and the entry of a Final Order (as defined herein), and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, sworn to on May 14, 2012, the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on May —14, 2012 (the "**Interim Hearing**") and the final hearing held on June [18], 2012 (the "Interim**Final** Hearing"); and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

## THE COURT HEREBY FINDS THAT[2]:

A.    _Petition Date_:  On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") commencing these Cases.

B.    _Debtors in Possession_.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    _Jurisdiction and Venue_.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby.

---

[1] Capitalized terms used and not defined herein shall have the meanings ascribed in the Motion.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

NYDOCS03/948309.6948672.11
ny-1040177

Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases appears proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Statutory Committee*. ~~As of the date hereof,~~On May 16, 2012, the United States Trustee (the "**U.S. Trustee**") ~~has not yet~~ appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a~~the~~ "**Statutory Committee**").

E.    *Notice.* Notice ~~of the Interim Hearing and the relief requested in the Motion~~ was given ~~on the Petition Date~~ by electronic mail, facsimile and/or overnight delivery of (1) the Interim Hearing, the Final Hearing, and the relief requested in the Motion, to (i) the 50 largest unsecured creditors of the Debtors on a consolidated basis; (ii) the Administrative Agent under the DIP Facility; (iii) the Collateral Agent under the DIP Facility; (iv) the DIP Lenders (as defined in the Motion); (v) the Prepetition Finance Parties;[3] (vi) Ally Financial Inc.; (vii) Ally Bank; (viii) Citibank, N.A., as secured lender under the Prepetition MSR Facility (as defined below); (ix) U.S. Bank National Association, as trustee for the Junior Secured Notes;[4] (x) Wells Fargo Bank, N.A., as collateral agent for the Junior Secured Notes, as collateral agent for the Ally Senior Secured Credit Facility,[5] and as collateral control agent under the Intercreditor Agreement;[6] (xi) BMMZ Holdings LLC, as buyer under the BMMZ Repo Facility; (xii) Fannie Mae (a/k/a The Federal

---

[3]    "**Prepetition Finance Parties**" means The Bank of New York Mellon, as indenture trustee under the Prepetition GSAP Facility (as defined in the DIP Credit Agreement) and Barclays, as administrative agent under the Prepetition GSAP Facility.

[4]    "**Junior Secured Notes**" means the 9.625% Junior Secured Guaranteed Notes due 2015 issued by ResCap pursuant to the Prepetition Junior Secured Indenture, in an initial aggregate face amount of $4,010,280,000, as amended or supplemented prior to the date hereof. "**Prepetition Junior Secured Indenture**" means the Indenture, dated as of June 6, 2008, among ResCap, as issuer, the Subsidiaries of ResCap party thereto as guarantors, and U.S. Bank National Association, as trustee, as amended or supplemented prior to the date hereof.

[5]    The "**AFI Senior Secured Credit Facility**" means the credit facility under (a) the Amended and Restated Loan Agreement, dated as of December 30, 2009, by and among RFC, GMACM, ResCap, certain other affiliates of ResCap, Wells Fargo Bank, N.A., and GMAC Inc., as amended or supplemented prior to the date hereof, and related documents, as amended or supplemented prior to the date hereof.

3

National Mortgage Association); (xiii) Freddie Mac (a/k/a The Federal Home Loan Mortgage Corporation); (xiv) Ginnie Mae (a/k/a the Government National Mortgage Association); (xv) the GSAP Transferor (as defined below); (xvi) the servicers and sub-servicers under the Designated Servicing Agreements and the Specified Servicing Agreements (each term as defined in the DIP Credit Agreement); (xvii) the MBS Trustees (as defined in the DIP Credit Agreement); (xviii) Nationstar Mortgage LLC and its counsel; and (xix) the U.S. Trustee (collectively, the "**Initial Notice Parties**"), and (2) the Final Hearing only, to (i) the Statutory Committee and (ii) those parties who have requested notice pursuant to Bankruptcy Rule 2002 (collectively, together with the Initial Notice Parties, the "**Notice Parties**").  Such notice constitutes good and sufficient notice of the Motion ~~and~~, the Interim Hearing and the Final Hearing under the circumstances in accordance with Bankruptcy ~~Rules~~Rule 4001(b)~~, 4001(c)~~, the Local Bankruptcy Rules and section 102(1) of the Bankruptcy Code, as required by sections 363~~(c), 363(e), 364~~(c) and ~~364(d~~363(e) of the Bankruptcy Code ~~in light of the emergency nature of the relief requested in the Motion~~.

F.    *The Prepetition MSR Facility*.  Pursuant to that certain Amended and Restated Loan and Security Agreement, dated as of June 30, 2010 (as amended, supplemented or otherwise modified, including pursuant to Amendment Number Ten, dated March 30, 2012, pursuant to which Citibank agreed, among other things, to the extension of the Loan Repayment Date (as defined in the Amended and Restated Loan and Security Agreement) to May 30, 2012, the "**Prepetition MSR Agreement**" and, together with all other loan and security documents related to, referenced in or executed in connection with the Prepetition MSR Agreements, the "**Prepetition MSR Credit Documents**"), among GMAC Mortgage, LLC ("**GMAC Mortgage**"), as Borrower, Residential Capital LLC, as Guarantor, and Citibank, N.A., as Lender ("**Citibank**"),

---

[6]    The "**Intercreditor Agreement**" means the Intercreditor Agreement, dated as of June 6, 2008, relating to the

4

Citibank provided a credit facility to GMAC Mortgage (the "**Prepetition MSR Facility**"). The Prepetition MSR Facility provided the Debtors with financing to provide funding for the origination or acquisition of certain mortgage loan servicing rights (as defined in the Prepetition MSR Agreement, the "**Servicing Rights**"). GMAC Mortgage's obligations under the Prepetition MSR Facility are guaranteed by Residential Capital, LLC, a Debtor in these Cases.

G.    *Debtors' Stipulations Regarding the Prepetition MSR Facility*. Without prejudice to the rights of parties in interest as set forth in Paragraph 16 herein, the Debtors admit, stipulate and agree to, and with, the following with respect to the Prepetition MSR Facility (collectively, the "**Debtors' Stipulations**"):

(iv)    (i)    *Prepetition MSR Obligations*. As of the Petition Date, the outstanding principal amount of all loans under the Prepetition MSR Agreement was not less than $152 million (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition MSR Credit Documents, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorney's fees, related expenses and disbursements), reimbursement obligations, indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof to the extent and as provided for in the Prepetition MSR Credit Documents, including all "Obligations" as described in the Prepetition MSR Agreement, the "**Prepetition MSR Obligations**"). Subject to Paragraph 16, in light of the Prepetition MSR Obligations and the value of the MSR Prepetition Collateral with respect thereto, Citibank is oversecured and, accordingly, is entitled to interest and fees with respect to the Prepetition MSR Obligations in accordance with the Prepetition MSR Credit Documents.

---

Junior Secured Notes and the AFI Senior Secured Credit Facility.

NYDOCS03/948309.6948672.11
ny-1040177

(v) (ii) *Prepetition MSR Liens and Prepetition MSR Collateral*. As more
fully set forth in the Prepetition MSR Credit Documents, prior to the Petition Date, the Debtors
granted security interests in and liens on, among other things, all of the Debtors' existing and after
acquired Servicing Rights, to the full extent of the Debtors' interest therein and regardless of
where located, whether or not yet accrued, earned, due or payable, as well as all other present and
future rights and interests of GMAC Mortgage in such Servicing Rights, all contracts with Fannie
Mae and Freddie Mac relating to the Servicing Rights, and all monies due or to become due with
respect to and all proceeds of the Servicing Rights, including the MSR Cash Collateral, and related
collateral (collectively, the "**Prepetition MSR Collateral**") to Citibank (the "**Prepetition MSR
Liens**").

(vi) (iii) *Validity and Perfection of Prepetition MSR Liens and Prepetition
MSR Obligations*. Subject to the provisions of Paragraph 16 of this InterimFinal Order, each of the
Debtors acknowledges and agrees that: (a) as of the Petition Date, the Prepetition MSR Liens on
the Prepetition MSR Collateral were valid, binding, enforceable, non-avoidable and properly
perfected; (b) the Prepetition MSR Obligations constitute legal, valid, binding, and non-avoidable
obligations of the Debtors; (c) other than the Agency Interests (as defined herein), to the extent set
forth in the Agency Acknowledgement Agreements (as defined herein), no offsets, challenges,
objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition MSR
Liens or Prepetition MSR Obligations exist; (d) no portion of the Prepetition MSR Liens or
Prepetition MSR Obligations is subject to any challenge or defense including, without limitation,
avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or
otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtors
and their estates have no claims, objections, challenges, causes of actionsaction, and/or choses in

action, including without limitation, avoidance claims under the Bankruptcy Code, against Citibank or its affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to its loans to the Debtors under the Prepetition MSR Credit Documents.

(vii)    (iv)    *Priority of Prepetition MSR Liens*.  As of the Petition Date, the Prepetition MSR Liens were senior in priority over any and all other liens on the Prepetition MSR Collateral, subject only to the interests (collectively, the "**Agency Interests**") of Freddie Mac and Fannie Mae as set forth in (a) the Prepetition MSR Agreement, (b) the Federal Home Loan Mortgage Corporation Acknowledgement Agreement among Freddie Mac, GMAC Mortgage and Citibank, N.A. dated March 12, 2009 (the "**Freddie Mac Acknowledgement Agreement**"), and (c) the Acknowledgement Agreement (Single Secured Party) among Citibank, N.A., GMAC Mortgage and Fannie Mae dated September 7, 2007 (the "**Fannie Mae Acknowledgement Agreement**" and, together with the Freddie Mac Acknowledgement Agreement, the "**Agency Acknowledgement Agreements**").

(viii)    (v)    *Cash Collateral*.  Each Debtor represents that all of the Debtors' cash proceeds of the Servicing Rights and related collateral, including but not limited to all cash on deposit in that certain "Collection Account," as defined in the Prepetition MSR Agreement and the MSR Collateral Concentration Account (as defined herein), constitutes the MSR Cash Collateral of Citibank.

(ix)    *Section 552(b)*.  The Debtors have agreed not to assert any "equities of the case" claims under section 552(b) of the Bankruptcy Code against Citibank with respect to proceeds, products, offspring or profits of any of the Prepetition MSR Collateral.

NYDOCS03/948309.6948672.11
ny-1040177

H.    *Adequate Protection*.  Citibank is entitled to receive adequate protection to the extent of any diminution in value of its interests in the Prepetition MSR Collateral, including the MSR Cash Collateral, resulting from the use of MSR Cash Collateral without the continued maintenance of the Borrowing Base (as defined in the Prepetition MSR Agreement) in accordance with the terms of the Prepetition MSR Agreement, or as a result of the imposition of the automatic stay pursuant to ~~sections~~section 362 of the Bankruptcy Code.  Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, (a) Citibank will receive (i) the MSR Adequate Protection Liens (as defined below); (ii) the Adequate Protection Superpriority Claim (as defined below); and (iii) the Adequate Protection Payments (as defined below) and (b) the Debtors agree that they will seek authority in any order approving the sale of the Prepetition MSR Collateral to provide that the net proceeds of such sale shall be applied by the Debtors to repay the Obligations under the Prepetition MSR Credit Documents, provided the Agency Interests ~~(as defined herein)~~ are satisfied through such sale (together with the MSR Adequate Protection Liens, the Adequate Protection Superpriority Claim and the Adequate Protection Payments, the "**Adequate Protection**").  Notwithstanding the foregoing, if the Prepetition MSR Obligations are determined by this Court to be undersecured, interest payments and payment of fees permitted hereunder may be recharacterized and recredited to the principal balance of such Prepetition MSR Obligations pursuant to further order entered by this Court.

I.    *Necessity of Relief Requested*.  The ability of the Debtors to finance their operations requires, in addition to the Debtors' proposed DIP Facility and use of the Ally Cash Collateral and Junior Secured Notes Cash Collateral, the use of MSR Cash Collateral, absent which immediate and irreparable harm will result to the Debtors, their estates and creditors, and the possibility for a successful chapter 11 case.  In the absence of the use of MSR Cash Collateral, the continued

8

operation of the Debtors' businesses would not be possible and serious and irreparable harm to the Debtors, their estates and their creditors would occur.  The relief requested in the Motion, therefore, is necessary for the continued operation of the Debtors' businesses and the preservation of their property.  Citibank and the Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of MSR Cash Collateral as set forth herein to fund the continued operation of the Debtors' businesses during the Specified Period (as defined below).  Entry of this ~~Interim~~Final Order is in the best interests of the Debtors and their estates.

~~J.      *Final Hearing*.  At the Final Hearing, the Debtors will seek final approval of the relief requested in the Motion pursuant to a proposed final order (the "**Final Order**"), which shall be in form and substance acceptable to Citibank, notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.~~

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      <u>Motion Granted</u>.  The Motion is granted ~~on an interim basis~~ as set forth herein, and the use of MSR Cash Collateral ~~on an interim basis~~ is authorized, subject to the terms of ~~this Interim~~the interim order of the Court entered on May 15, 2012 granting the Motion on an interim basis [Docket No. 79] (the "**Interim Order**") and this Final Order.

2.      <u>Objections Overruled</u>.  All objections to the Motion to the extent not withdrawn or resolved are overruled.

3.      <u>Authorization to Use MSR Cash Collateral</u>.  Subject to the terms and conditions of ~~the Cash Collateral Orders~~this Final Order, the Debtors are authorized to use the MSR Cash Collateral for the period (the "**Specified Period**") from the ~~Petition Date~~date of entry of this Final

9

Order through the date that is the earliest to occur of (a) the expiration of the Remedies Notice Period, (b) forty-five (45) days after entry of the Interim Order if the Final Order has not been entered prior to the expiration of such 45-day period, (c) the date on which maturity of the DIP Facility is accelerated pursuant to the DIP Loan Agreement as a result of an event of default thereunder, (dc) the effective date of a Chapter 11 plan for any Debtor with assets exceeding $10 million, or (e) subject to entry of the Final Order, the date that isd) the initial scheduled date of maturity of the DIP Facility, up to a maximum of eighteen (18) months from the closing date of the DIP Facility.  The MSR Cash Collateral may be used during the Specified Period solely (x) to fund the cash needs related to the operations and assets of the assets that comprise the Prepetition MSR Collateral, including funding advances or repurchase obligations owed by the Debtors with respect to such Prepetition MSR Collateral, and (y) to fund (an allocated portion of the Debtors' costs of administering these Cases based on the value of the Prepetition MSR Collateral relative to the value of the Debtors' other assets (any such MSR Cash Collateral used to pay such allocated administrative costs, the "**Allocated MSR Cash Collateral**") in accordance with the budget previously approved by Citibank, a copy of which is attached hereto as **Exhibit A** (as may be amended as provided herein, the "**Budget**").

      4.    <u>MSR Adequate Protection Liens</u>.

      (a)    (a)    *MSR Adequate Protection Liens*.  As adequate protection of the interests of Citibank, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtors are authorized to grant, and upon entry of this Interim Order shall bein an amount equal to the aggregate diminution in value of the MSR Prepetition Collateral to the extent of Citibank's interests therein, the Debtors were, pursuant to the Interim Order, and hereby are authorized deemed to have granted additional and replacement continuing valid, binding, enforceable,

10

NYDOCS03/948309.6948672.11
ny-1040177

non-avoidable, and automatically perfected post-petition security interests in and liens on (the "**MSR Adequate Protection Liens**") on any and all presently owned and hereafter acquired assets of the Debtors and their estates that do or would (absent the commencement of the Cases) constitute Prepetition MSR Collateral under the Prepetition MSR Credit Documents, including but not limited to all cash in the MSR Concentration Account (as defined herein) (such assets, together with the Prepetition MSR Collateral, the "**MSR Collateral**").

(b)        (b)        *Priority of MSR Adequate Protection Liens*.

(i)        (i)        The MSR Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the MSR Collateral, subject only to the Agency Interests.

(ii)        (ii)        The MSR Adequate Protection Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "**Successor Cases**").  Except as provided herein, the MSR Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and the MSR Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The MSR Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code, and no lien or interest avoided and preserved for the benefit

11

of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Prepetition MSR Liens or the MSR Adequate Protection Liens.

5.    <u>Adequate Protection Superpriority Claim</u>.

(a)    (a)    *Adequate Protection Superpriority Claim*.  As further adequate protection of the interests of Citibank in the MSR Prepetition Collateral against any Diminutiondiminution in Valuevalue of such interests in the Prepetition MSR Collateral, Citibank was, pursuant to the Interim Order, and hereby is granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases, *provided, however,* that, subject to the Final Order, such superpriority claim shall not include including, without limitation, the proceeds of Chapter 5 avoidance actions (the "chapter 5 avoidance actions other than the proceeds of an avoidance action, if any, received from Citibank (the "**Adequate Protection Superpriority Claim**"); provided, however, that Citibank agrees to use commercially reasonable efforts to seek payment from the MSR Cash Collateral to satisfy the Adequate Protection Superpriority Claim") prior to seeking payment from the unencumbered assets of the Debtors' estates.

(b)    (b)    *Priority of the Adequate Protection Superpriority Claim*.  The Adequate Protection Superpriority Claim shall have priority over all administrative expenses and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, except the Adequate Protection Superpriority Claim (i) shall be junior to the superpriority administrative expense claims granted to the Debtors' proposed providers of debtor in possession

12

financing and the Carve Out (as defined herein), and (ii) may be *pari passu* with the superpriority administrative expense claims granted to any parties that provide the Debtors with use of cash collateral (collectively, the "**Permitted Superpriority Claims**").

6.    Adequate Protection Payments and Protections.

(a)    ~~(a)~~    *Adequate Protection Payments*.  As further adequate protection, each Debtor was, pursuant to the Interim Order, and hereby is authorized and directed to provide adequate protection payments to Citibank (the "**Adequate Protection Payments**"), in the form of: (i) payments of interest on the Prepetition MSR Obligations at the non-default rate set forth in the Prepetition MSR Agreement, (ii) any fees of Citibank pursuant to the Prepetition MSR Agreement payable at the times specified in the Prepetition MSR Agreement; and (iii) ongoing payment of the reasonable fees, costs and expenses of Citibank, including, without limitation, the payment of the reasonable fees and expenses of legal and other professionals retained by Citibank in accordance with Paragraph 11 hereof.

(b)    ~~(b)~~    The Debtors shall seek authority from the Court ~~pursuant to~~in any order approving the sale, transfer, lease, encumbrance or other disposition of any portion of the MSR Collateral issued prior to payment in full of the Prepetition MSR Obligations~~to repay~~, that such approval be conditioned upon the repayment of the loans under the Prepetition MSR Facility with the proceeds ~~of such disposition~~thereof, provided the Agency Interests are satisfied through such sale.

7.    MSR Concentration Account.  As a condition to the authorization to use MSR Cash Collateral, the Debtors shall segregate the MSR Cash Collateral from the Debtors' other cash by depositing the MSR Cash Collateral into a newly formed separate concentration account (the

"**MSR Concentration Account**") at JP Morgan Chase Bank, N.A. ("**JPM**"), and subject to a

deposit account control agreement entered into among JPM, ~~the~~ GMAC Mortgage, and Citibank.

8.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Bankruptcy

Code section 362(a) is modified as necessary to effectuate all of the terms and provisions of this

~~Interim~~<u>Final</u> Order, including, without limitation, to: (a) permit the Debtors to grant the MSR

Adequate Protection Liens and Adequate Protection Superpriority Claim; (b) permit the Debtors to

perform such acts as Citibank may request in its reasonable discretion to assure the perfection and

priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to

Citibank under this ~~Interim~~<u>Final</u> Order; (d) permit the Debtors to open the MSR Concentration

Account, as necessary and execute a deposit account control agreement with respect thereto

without further order of this Court; and (e) authorize the Debtors to pay, and Citibank to retain and

apply payments made in accordance with the terms of this ~~Interim~~<u>Final</u> Order; <u>provided</u>, <u>however</u>,

that any stay of relief with respect to the exercise of remedies shall be in accordance with

Paragraph 13 below or as otherwise ordered by this Court.

9.    <u>Perfection of MSR Adequate Protection Liens</u>.  ~~This~~<u>The</u> Interim <u>Order and this</u>

<u>Final</u> Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of

the MSR Adequate Protection Liens and the liens on the MSR Cash Collateral Account without

the necessity of filing or recording any financing statement, mortgage, notice, or other instrument

or document which may otherwise be required under the law or regulation of any jurisdiction or

the taking of any other action (including, for the avoidance of doubt, entering into any deposit

account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy

law) the MSR Adequate Protection Liens and the liens on the MSR Cash Collateral Account, or to

entitle Citibank to the priorities granted herein.  Notwithstanding the foregoing, Citibank is

14

authorized to file, as it deems necessary or advisable, such financing statements, notices of liens

and other instruments or documents to perfect in accordance with applicable non-bankruptcy law

or to otherwise evidence the applicable MSR Adequate Protection Liens, liens on the MSR Cash

Collateral Account, and all such financing statements, notices and other documents shall be

deemed to have been filed or recorded as of the Petition Date; provided, however, that no such

filing or recordation shall be necessary or required in order to create, evidence or perfect the MSR

Adequate Protection Liens including the liens on the MSR Cash Collateral Account.  The Debtors

are authorized and directed to execute and deliver promptly upon demand to Citibank all such

financing statements, notices, instruments and other documents as Citibank may reasonably

request.  Citibank, in its sole discretion, may file a copy of ~~this~~the Interim Order and this Final

Order as a financing statement or notice with any filing or recording office or with any registry of

deeds or similar office, in addition to or in lieu of such financing statements, notices of lien,

instrument, or similar document.

> 10.    Additional Covenants of the Debtors.  The Debtors shall:

> (a)    ~~(a)~~    Remit all MSR Cash Collateral, as and when received, for deposit to

the MSR Concentration Account to be used in accordance with ~~this~~the Interim Order, this Final

Order, the Budget and the Cash Management Order (as defined herein);

> (b)    ~~(b)~~    Provide to Citibank and the Statutory Committee (i) monthly

servicing tapes required under the MSR Prepetition Agreement; (ii) on a bi-weekly basis, variance

reports on actual versus projected cash flows of the operations with respect to the MSR Collateral;

(iii) every four weeks, updated Budgets; (iv) monthly collateral reports and such other monthly,

quarterly or annual financial reports as the Debtor is required to provide pursuant to the DIP

NYDOCS03/~~948309.6~~948672.11
~~ny  1040177~~

Facility; and (v) notice of any changes in tier rating of GMAC Mortgage by Freddie Mac or Fannie Mae.

(c)    (c)    Serve Citibank and its counsel, and counsel to any Statutory Committee, with a copy of each monthly report filed by the Debtors in these Cases as required by the Court, the U.S. Trustee or applicable law.

11.    <u>Payment of Professional Fees</u>.  Professionals for Citibank shall not be required to comply with the U.S. Trustee fee guidelines for the payment of fees and expenses, but each professional shall provide detailed fee and expense statements (redacted if necessary for privilege) to the U.S. Trustee, counsel for ~~any~~the Statutory Committee, counsel for the ~~DIP Lender~~Administrative Agent under the DIP Facility, and counsel for the Debtors.  ~~To the extent that the Debtors, U.S. Trustee, Statutory Committee, or the DIP Lender~~ (the "**Fee Notice Parties**"). On the eleventh (11th) business day after receipt of any invoice for such fees and expenses by the Fee Notice Parties, the Debtors shall pay all fees and expenses not subject to objection.  To the extent any of the Fee Notice Parties has an objection to the fees and expenses of any such professional, they shall so advise the professional.  If any such objection is raised and not resolved and/or withdrawn ~~within five (5) business days after receipt of the fee or expense statement (or such later date as the objecting party and the professional shall agree)~~, the parties shall submit any dispute to this Court for adjudication.

12.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived in writing by Citibank, shall constitute an event of default (collectively, the "**Events of Default**"):

(a)    (a)    the occurrence and continuance of an event of default under the DIP Facility (as defined in the Motion);

16

(b)      the failure to obtain a Final Order within forty-five (45) days after the Petition Date;

(b)      (c)      the failure of the Debtors to provide any report or certificate due under Paragraph 10 that continues unremedied for a period of five (5) business days after the date that such report or certificate was due;

(c)      (d)      any event of default, early amortization event, or termination event or other similar event (other than as a result of the commencement of the Cases) shall occur under any material document or agreement that relates to the Prepetition MSR Agreement or the MSR Collateral and such event could reasonably be expected to be materially adverse to the rights and interests of Citibank;

(d)      (e)      any liens, claims and other interests created by thisthe Interim Order or this Final Order shall cease to be valid, perfected and enforceable and of the same priority purported to be created hereby or any of the Debtors or their subsidiaries shall challenge in any action the validity, perfection, enforceability or priority thereof;

(e)      (f)      dismissal of the Case of any Debtor with assets exceeding $10 million (or any of the Debtors or their affiliates seeking or supporting such any such dismissal) or conversion of the Case of any Debtor with assets exceeding $10 million to a case under chapter 7 of the Bankruptcy Code (or any of the Debtors or their affiliates seeking or supporting any such conversion);

(f)      (g)      appointment of a trustee (or such other comparable responsible person) or a responsible officer or examiner with expanded powers in the Case of any Debtor with assets exceeding $10 million (or any of the Debtors or their affiliates seeking or supporting any such appointment);

17

(g)    (h)    entry of an order granting relief from the automatic stay as to the MSR Collateral with a value in excess of $10 million (or any of the Debtors or their affiliates seeking or supporting any such relief) (i) to allow any creditor to execute upon or enforce a lien on or security interest in any MSR Collateral, or (ii) with respect to any lien of or the granting of any lien on any MSR Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors;

(h)    (i)    entry an order amending, supplementing, staying, vacating, reversing or otherwise modifying this InterimFinal Order except as otherwise agreed to in writing by Citibank, or this InterimFinal Order shall cease to be in full force and effect;

(i)    (j)    entry of an order granting any superpriority claim (or claim of equivalent status) that is senior to or *pari passu* with the claims of Citibank or any lien or security interest that is senior to or *pari passu* with the liens and security interests securing the Prepetition MSR Facility, except for the Permitted Superpriority Claims, which superpriority claims may be senior or *pari passu* with the Adequate Protection Superpriority Claim as provided in paragraph 5(b);

(j)    (k)    entry of an order authorizing recovery from the MSR Collateral for any cost of preservation or disposition thereof, under section 506(c) of the Bankruptcy Code or otherwise, other than as may be provided in this InterimFinal Order.

(k)    (l)    upon written notice from Citibank, any material misrepresentation of a material fact made after the Petition Date by any of the Debtors or their agents to Citibank or its agents about the financial condition of the Debtors, or any of them, the nature, extent, location

18

or quality of any MSR Collateral, or the disposition or use of any MSR Collateral, including MSR Cash Collateral;

(l) ~~(m)~~ the sale after the Petition Date of any portion of the MSR Collateral except pursuant to an order that provides for the repayment of the Prepetition MSR Obligations from the proceeds of such sale, provided the Agency Interests are satisfied through such sale;

(m) ~~(n)~~ upon written notice from Citibank, the material failure to make Adequate Protection Payments or other payments to Citibank when due, subject to a cure period of five (5) days; and

(n) ~~(o)~~ the failure by the Debtors to perform or observe in any respect any terms, provisions, conditions, covenants, agreements or obligations under this ~~Interim~~Final Order that is not otherwise specified as an Event of Default and that remains unremedied for fifteen (15) business days; <u>provided</u>, however, that a variance from the Budget shall not be deemed an Event of Default hereunder;

13.    <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence of an Event of Default and at any time thereafter during the continuance thereof, with seven (7) days' prior written notice (an "**Enforcement Notice**") of any such occurrence, in each case given to (i) the Debtors and their counsel, (ii) counsel to the ~~Adminstrative~~Administrative Agent and Collateral Agent under the DIP Facility, (iii) counsel to ~~any~~the Statutory Committee, (iv) the U.S. Trustee, (v) counsel to Ally, (vi) counsel to the Junior Secured Notes, (vii) Freddie Mac, and its counsel, and (viii) Fannie Mae, and its counsel, Citibank shall be entitled to exercise Citibank's rights and remedies as set forth in the Prepetition MSR Documents or under applicable law (including the right to setoff monies of the Debtors in accounts maintained with Citibank and delivery of a shifting control notice with respect to the MSR Collateral Account).  Any Enforcement Notice

shall also be filed with the Court.  This ~~Interim~~Final Order shall not prejudice the rights of any party in interest to oppose the exercise of Citibank's remedies; *provided* that the only issue that may be raised by any party in opposition thereto shall be whether an Event of Default has in fact occurred and is continuing, and the Debtors hereby waive their right to seek any relief, whether under section 105 of the Bankruptcy Code or otherwise, that would in any way impair, limit or restrict, or delay the exercise or benefit of, the rights and remedies of Citibank under the Prepetition MSR Documents ~~or this~~, the Interim Order or this Final Order.  Upon the expiration of the seven (7) day period (the "**Remedies Notice Period**"), in the absence of a determination by the Court that an Event of Default has not occurred or is not continuing, Citibank shall be entitled to pursue all remedies under the Prepetition MSR Documents or applicable law without further order of the Court, and the automatic stay is hereby deemed modified to permit the pursuit of such remedies.

14.    <u>Carve Out</u>.  As used in this ~~Interim~~Final Order, the "**Carve Out**" means the Carve Out as defined in any order of the Court approving the DIP Facilities provided by Barclays Bank PLC and Ally Financial Inc~~.~~,.  Notwithstanding anything to the contrary herein, the Carve Out shall be junior in priority to the Prepetition MSR Liens and the MSR Adequate Protection Liens.  No payment of any Carve Out amount shall reduce any Prepetition MSR Obligations.

15.    <u>Limitations on the Use of MSR Cash Collateral</u>.  ~~The~~Other than the Allocated MSR Cash Collateral, the MSR Cash Collateral may not be used in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (a) adverse to the interests of Citibank, or its rights and remedies under the Prepetition MSR Credit Documents or this ~~Interim~~Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or ~~any~~the Statutory Committee in

connection with the assertion of or joinder in any claim, counterclaim, action, proceeding,

application, motion, objection, defense or other contested matter, the purpose of which is to seek,

or the result of which would be to obtain, any order, judgment, determination, declaration or

similar relief adverse to the interests of Citibank, or their rights and remedies under the Prepetition

MSR Credit Documents or this ~~Interim~~Final Order, (b) invalidating, setting aside, recharacterizing,

avoiding or subordinating, in whole or in part, the Prepetition MSR Obligations, (c) objecting to or

challenging in any way the claims, liens, or interests (including interests in the MSR Collateral)

held by or for the benefit of Citibank; (d) asserting, commencing or prosecuting any claims or

causes of action whatsoever, including, without limitation, any actions under chapter 5 of the

Bankruptcy Code, against Citibank; (e) prosecuting an objection to, contesting in any manner, or

raising any defenses to, the validity, extent, amount, perfection, priority, characterization or

enforceability of any of the Prepetition MSR Obligations or Prepetition MSR Liens or any other

rights or interests of Citibank; or (f) preventing, hindering or otherwise delaying the exercise by

Citibank of any rights and remedies granted under this ~~Interim~~Final Order; provided that such

restrictions shall not prohibit any investigation by any Statutory Committee of any of the

foregoing.

16.    <u>Reservation of Certain Statutory Committee and Third Party Rights and Bar of</u>

<u>Challenges and Claims</u>.  Nothing in this ~~Interim~~Final Order shall prejudice the rights of a Statutory

Committee to seek to avoid, object to or otherwise challenge the findings or Debtors' Stipulations

regarding (a) the validity, extent, priority, or perfection of the mortgages, security interests, and

liens of Citibank; or (b) the validity, allowability, priority, fully secured status or amount of the

Prepetition MSR Obligations.  ~~Subject to the entry of a Final Order, any~~The Statutory Committee~~,~~

~~if~~ (or any other official committee  appointed~~,~~ by the Court in these cases) must commence, as

appropriate, a contested matter or adversary proceeding raising such claim, objection, defense, or

other challenge, including, without limitation, any claim against Citibank in the nature of a setoff,

counterclaim or defense to the applicable Prepetition MSR Obligations, or file a pleading for

standing to commence such contested matter or adversary proceeding (each, a "**Challenge**")

within seventy-five (75one hundred and twenty (120) calendar days after entry of the InterimFinal

Order subject to further extension by written agreement between the parties (in each case, a

"**Challenge Period**" and the date of expiration of each Challenge Period being a "**Challenge**

**Period Termination Date**").  Upon the expiration of the Challenge Period Termination Date,

without the filing of a challenge (or if any such challenge is filed and overruled):  (x) any and all

such Challenges by any party (including, without limitation, the Statutory Committee, any chapter

11 trustee, examiner or other estate representative appointed or elected in these Cases, and any

chapter 7 trustee, examiner or other estate representative appointed or elected in any Successor

Case) shall be deemed to be forever waived, released and barred, and (y) all of the Debtors'

Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and

validity as to Citibank's claims, liens, and interests shall be of full force and effect and forever

binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, holders of interests,

and other parties in interest in these Cases and any successor cases.

17.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this InterimFinal

Order does not create any rights for the benefit of any third party, creditor, equity holder or any

direct, indirect, or incidental beneficiary.

18.    <u>Section 506(c) Claims</u>.  Upon entry of the Final Order, noNo costs or expenses of

administration which have been or may be incurred in the Cases at any time shall be charged

against Citibank or its claims or the MSR Collateral pursuant to sections 105 or 506(c) of the

Bankruptcy Code, or otherwise, without the prior express written consent of Citibank, and no such

consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by

Citibank.

19.    <u>No Marshaling/Applications of Proceeds</u>.  ~~Upon entry of the Final Order,~~ Citibank

shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with

respect to any of the Prepetition MSR Collateral, as the case may be, and proceeds shall be

received and applied in accordance with this ~~Interim~~<u>Final</u> Order notwithstanding any other

agreement or provision to the contrary.

20.    <u>Section 552(b)</u>.  ~~Upon entry of the Final Order, Citibank shall be entitled to all of
the rights and benefits of section 552(b) of the Bankruptcy Code, and~~<u>The Debtors agree that they
shall not assert</u> the "equities of the case" exception under section 552(b) of the Bankruptcy Code

~~shall not apply to~~<u>against</u> Citibank with respect to proceeds, ~~product~~<u>products</u>, offspring or profits of

any of the Prepetition MSR Collateral.

21.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of

this ~~Interim~~<u>Final</u> Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly: (a) Citibank's right to seek any other or supplemental relief in respect of any Debtor,

including the right to seek additional adequate protection (without prejudice to the Debtors' or any

other person's right to object to or otherwise oppose such additional adequate protection); (b) any

of the rights of Citibank under the Bankruptcy Code or under non-bankruptcy law, including,

without limitation, the right to (i) request modification of the automatic stay of section 362 of the

Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any

of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with

expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy

Code, a chapter 11 plan or plans.  Other than as expressly set forth in this ~~Interim~~Final Order, any

other rights, claims or privileges (whether legal, equitable or otherwise) of Citibank are preserved,

including Citibank's rights under section 507(b) of the Bankruptcy Code.

22.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of Citibank to seek relief or

otherwise exercise its rights and remedies under ~~this~~the Interim Order, this Final Order, the

Prepetition MSR Credit Documents, or applicable law, as the case may be, shall not constitute a

waiver of any of the rights hereunder, thereunder, or otherwise of Citibank.

23.    <u>Proofs of Claim</u>.  ~~Upon entry of the Final Order,~~Citibank will not be required to file

proofs of claim in any of the Cases or Successor Cases for any claim allowed herein, and the

Debtors' Stipulations in Paragraph G herein shall be deemed to constitute a timely filed proof of

claim for Citibank.  Notwithstanding any order entered by the Court in relation to the

establishment of a bar date in any of the Cases or Successor Cases to the contrary, Citibank is

hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or

supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or

Successor Cases for any claim allowed herein.

24.    <u>Good Faith</u>.  Citibank has acted in good faith in connection with ~~this~~the Interim

Order and this Final Order and its reliance on ~~this~~the Interim Order and this Final Order is in good

faith.

25.    <u>Reservation of Rights</u>.  Nothing in this Order shall discharge, release, or otherwise

preclude any setoff or recoupment right of the United States of America, its agencies, departments,

or agents.  Notwithstanding anything herein to the contrary, this Order shall not modify or affect

the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the

Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank,

ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

26.    Binding Effect of ~~Interim~~Final Order.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this ~~Interim~~Final Order shall become valid and binding upon and inure to the benefit of the Debtors, Citibank, all other creditors of any of the Debtors, ~~any~~the Statutory Committee or any other ~~Court appointed~~official committee appointed by the Court in any of the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.  In the event of any inconsistency between the provisions of this ~~Interim~~Final Order and the Prepetition MSR Credit Documents or any other order (including any "first-day" order), the provisions of this ~~Interim~~Final Order shall govern and control.  Any payments to be made under any order (including any "first-day" order) shall be made in accordance with this ~~Interim~~Final Order.

27.    No Modification of ~~Interim~~Final Order.  ~~Subject to Paragraph 15, the~~The Debtors irrevocably waive any right to seek any amendment, modification or extension of this ~~Interim~~Final Order without the prior written consent of Citibank, and no such consent shall be implied by any other action, inaction or acquiescence of Citibank.  In the event any or all of the provisions of this ~~Interim~~Final Order are hereafter modified, amended or vacated by a subsequent order of this Court

25

or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby.  Any liens or claims granted to Citibank hereunder arising prior to the effective date of any such modification, amendment or vacatur of this ~~Interim~~Final Order shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

28.    <u>Survival</u>.  The provisions of this ~~Interim~~Final Order and any actions taken pursuant hereto shall survive entry of any order that may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; (d) discharging any Debtor; or (e) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this ~~Interim~~Final Order, including the claims, liens, security interests and other protections granted to Citibank pursuant to this ~~Interim~~Final Order, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this ~~Interim~~Final Order until all Prepetition MSR Obligations have been indefeasibly paid in full in cash, notwithstanding the expiration of the Specified Period or any earlier termination of the Debtors' authorization to use MSR Cash Collateral.

~~29.    Future Debtors.  Upon notice to the parties and no objection having been interposed, an affiliated debtor shall be deemed to be a "Future Debtor" upon the Court's entry of an order authorizing the joint administration of such Future Debtor's Chapter 11 case with the Chapter 11~~

NYDOCS03/~~948309.6~~948672.11
~~ny-1040177~~

cases of the Debtors.  Upon notice to the parties and no objection having been interposed, the relief granted by this Order shall apply to the Future Debtor in these jointly-administered cases.

29.  30. Final Hearing.  The Final Hearing to consider entry of the Final Order is scheduled for _____, 2012 at _____.m. (Eastern Time) before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York.  The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Statutory Committee after the same has been appointed, or to counsel to any Committee, after the same shall have been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Larren M. Nashelsky (LNashelsky@mofo.com) and Todd M. Goren (TGoren@mofo.com), attorneys for the Debtors; (b) Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attention: Kenneth S. Ziman (Ken.Ziman@skadden.com) and Jonathan Hofer (Jonathan.Hofer@skadden.com)), attorneys for Barclays Bank PLC, as Administrative Agent; (c) counsel to Citibank, attn: Fredric Sosnick and Susan A. Fennessey, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022; and (d) the Office of the United States Trustee for the Southern District of New York, and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, 33 Whitehall Street, 21st Floor New York, New York 10004 (Attention: Tracy Hope Davis; Brian S. Masumoto; and Linda Riffkin) in each case to allow actual receipt by the foregoing no

27

later than _____, 2012 at _____, prevailing Eastern time (with any replies filed by _____, 2012 at _____).Acknowledgement Agreements.  Nothing in this Final Order affects the rights, duties or obligations of (a) Freddie Mac or Citibank under the Freddie Mac Acknowledgement Agreement or (b) Fannie Mae or Citibank under the Fannie Mae Acknowledgement Agreement.

30.      31. Effect of this InterimFinal Order.  This InterimFinal Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

31.      32. Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this InterimFinal Order according to its terms.

Dated: _____June___, 2012
       New York, New York

_____
The Honorable _____Judge Martin Glenn
United States Bankruptcy Judge

28

**<u>Exhibit A</u>**

**Budget**

Document comparison by Workshare Professional on Friday, June 15, 2012 10:44:08 AM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://NYDOCS03/948309/8 |
| Description | NYDOCS03-#948309-v8-Citi_-_ResCap_Interim_Cash_Collateral_Order |
| Document 2 ID | PowerDocs://NYDOCS03/948672/11 |
| Description | NYDOCS03-#948672-v11-Citi_-_ResCap_Final_Cash_Collateral_Order |
| Rendering set | Shearman & Sterling |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 128 |
| Deletions | 162 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 290 |