# **EXHIBIT 1**

ny-1045746

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**FINAL ORDER UNDER SECTIONS 105(a), 363, 364, 503(b), 1107(a),
AND 1108 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS
TO (I) PROCESS AND WHERE APPLICABLE FUND PREPETITION MORTGAGE
LOAN COMMITMENTS, (II) CONTINUE BROKERAGE, ORIGINATION
AND SALE ACTIVITIES RELATED TO LOAN SECURITIZATION,
(III) CONTINUE TO PERFORM, AND INCUR POSTPETITION SECURED
INDEBTEDNESS, UNDER THE MORTGAGE LOAN PURCHASE AND SALE
AGREEMENT WITH ALLY BANK AND RELATED AGREEMENTS,
(IV) PAY CERTAIN PREPETITION AMOUNTS DUE TO CRITICAL
ORIGINATION VENDORS, AND (V) CONTINUE HONORING MORTGAGE
LOAN REPURCHASE OBLIGATIONS ARISING IN CONNECTION WITH LOAN
SALES AND SERVICING, EACH IN THE ORDINARY COURSE OF BUSINESS**

Upon the motion (the "<u>Motion</u>")[1] of Residential Capital, LLC, and certain of its affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of interim and final orders, under Bankruptcy Code sections 105(a), 362, 363, 364, 503(b), 1107(a), and 1108 and Bankruptcy Rule 6003, authorizing the Debtors to (i) process and where applicable fund prepetition mortgage loan commitments; (ii) continue origination activities (including direct origination and brokering of completed loan applications) and sale activities related to the ultimate securitization of mortgage loans; (iii) continue to perform under the Purchase and Sale Agreement with Ally Bank and the related Master Forward Agreement with Ally Investment Management LLC ("<u>AIM</u>"), incur secured indebtedness under those agreements and the Pledge

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion. Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

ny-1008490

and Security Agreement with non-Debtor affiliates Ally Bank, Ally Financial Inc., GMAC Mortgage Group, LLC and AIM (collectively, the "Ally Secured Parties"), and grant such parties superpriority administrative claims in relation to the foregoing; (iv) pay certain amounts due to critical vendors providing origination services that accrued prior to the Petition Date; and (v) continue honoring certain mortgage loan repurchase and other related obligations arising in connection with the sale and servicing of loans, each in the ordinary course of business; and the Court having considered the Whitlinger Affidavit; and the Court having entered an interim order on May 15, 2012 granting the Motion on an interim basis; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and the Court having considered the responsive pleadings filed by each of Fannie Mae [Docket No. 225] and the United States of America on behalf of Ginnie Mae [Docket No. 265]; and the Court having considered the *Limited Objection And Reservation Of Rights Of The Official Committee Of Unsecured Creditors To The Debtors' (I) Origination Motion And (II) Ally Servicing Motion* [Docket No. 303]; and the Court having considered the *Debtors' Reply to the Limited Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to the Debtors' (I) Origination Motion and (II) Ally Servicing Motion* [Docket No. 367]; and the Court having considered the supplemental declaration of James Whitlinger in support of the Motion [Docket No. 365]; and the Court having considered *Ally Financial Inc.'s And Ally Bank's Reply To Creditors' Committee's Limited Objection To (A) The Debtors' Motion Authorizing Debtors To Continue*

2

ny-1008490

*To Perform Under The Ally Bank Servicing Agreement In The Ordinary Course Of Business And (B) The Debtors' Origination Motion* [Docket No. 385]; and upon the record of the Final Hearing; and any objections to the Motion having been withdrawn, resolved, or overruled on the merits; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED, as set forth herein, and any remaining objections to the Motion are overruled.

Mortgage Loan Retail, Brokerage, and Origination Activities

2. Pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, the Debtors are authorized to continue their mortgage loan brokering and origination operations in the ordinary course, including, but not limited to, the following:

   (a) conducting retail marketing of mortgage loan products, including collection and processing of mortgage loan applications, and brokering of mortgage loan applications to Ally Bank, including loan applications that were received prior to the Petition Date and are being processed by the Debtors (the "Prepetition Application Obligations"); and

   (b) funding mortgage loans originated by the Debtors in Ohio and Nevada, including any applications and loans that, as of the Petition Date, have not yet been underwritten, approved or funded (the "Prepetition Funding Obligations" and collectively with the "Prepetition Application Obligations", the "Pipeline Loan Obligations").

3. To the extent that a Pipeline Loan Obligation is not ultimately approved or funded, for whatever reason, the Debtors are authorized, in their sole discretion, to refund any Loan Fees held in their accounts to the related borrower.

ny-1008490

<u>Mortgage Loan Purchase, Sale, and Securitization-Related Activities and
Grant of Postpetition Liens and Superpriority Claims to the Ally Secured Parties</u>

4. Pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, the Debtors are authorized to continue their operations related to the purchase, sale, and securitization of mortgage loans in the ordinary course, including, but not limited to, the following:

(a) purchasing mortgage loans from Ally Bank and subsequently selling such loans to securitization trusts guaranteed by Ginnie Mae pursuant to the Purchase and Sale Agreement, the Pledge and Security Agreement, and the Master Forward Agreement; and

(b) selling mortgage loans originated by the Debtors in Ohio and Nevada directly to securitization trusts guaranteed by Ginnie Mae for securitization or to Ally Bank for subsequent resale to Fannie Mae or Freddie Mac.

5. Pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, GMAC Mortgage is authorized to continue to perform all of its obligations under the Purchase and Sale Agreement in accordance with the terms of the Purchase and Sale Agreement and this Order.

6. Ally Bank is granted limited relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code solely to the extent necessary to permit Ally Bank to: (a) beginning 150 days after the Petition Date, send a 30-day notice terminating the Purchase and Sale Agreement without cause pursuant to Section 6.1 of the Purchase and Sale Agreement without further order of the Court; and (b) terminate the Purchase and Sale Agreement for cause pursuant to Section 6.2 of the Purchase and Sale Agreement without further order of the Court; <u>provided</u>, that Ally Bank shall give five (5) business days' advance notice of termination for cause to GMAC Mortgage and file such notice with the Court when such notice is given.

7. GMAC Mortgage is authorized to incur secured indebtedness pursuant to section 364(c)(2) of the Bankruptcy Code in accordance with the terms of the Purchase and Sale Agreement and the Pledge and Security Agreement.

ny-1008490

8. Pursuant to sections 364(c)(1) and (2) of the Bankruptcy Code, any and all claims of Ally Bank against GMAC Mortgage under the Purchase and Sale Agreement, including claims arising from GMAC Mortgage's breach of the Purchase and Sale Agreement as a result of its failure to pay Ally Bank the Purchase Price (as defined in the Purchase and Sale Agreement ) for any mortgage loan purchased under the Purchase and Sale Agreement (the "Mortgage Loans") and any claims of the other Ally Secured Parties under the Specified Documents (as defined in the Pledge and Security Agreement), (a) shall be secured by a fully perfected first priority lien on all Collateral (as defined in the Pledge and Security Agreement), including the Mortgage Loans and the proceeds thereof, which lien shall be senior to all other liens and claims, including the liens of any debtor-in-possession lender, and secured claims, and (b) to the extent such claims arise subsequent to the Petition Date, are superpriority claims which shall have priority over any and all unsecured claims and administrative expense claims, other than the Barclays 364(c)(1) Claims (defined below) to the extent provided below. The superpriority claims granted to the Ally Secured Parties in this Order shall be junior to the claims granted in respect of the obligations under the DIP Facilities (as defined in the Barclays DIP Order) pursuant to section 364(c)(1) of the Bankruptcy Code (the "Barclays 364(c)(1) Claims") as provided in paragraph 10 of the Barclays DIP Order; except that the Barclays 364(c)(1) Claims shall be junior to (x) the Ally Secured Parties' rights in the Collateral (as defined in the Pledge and Security Agreement) and all proceeds and other consideration received upon the sale, exchange, transfer or other disposition thereof and (y) the Ally Secured Parties Recourse Claims (defined below). The superpriority claims granted to the Ally Secured Parties pursuant to this paragraph 8 shall have recourse only to the Collateral (as defined in the Pledge and Security Agreement) and all proceeds and other consideration received upon the sale, exchange, transfer

5

ny-1008490

or other disposition thereof and shall otherwise constitute ordinary administrative claims under section 503(b) of the Bankruptcy Code (the "Ally Secured Parties Recourse Claims").

9. Pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, GMAC Mortgage is authorized to continue to perform all of its obligations under the Master Forward Agreement in the ordinary course in accordance with the terms of the Master Forward Agreement and this Order. Pursuant to section 364(c)(2) of the Bankruptcy Code, GMAC Mortgage is authorized to pledge to AIM the cash collateral required under the Master Forward Agreement as may be required from time to time.

10. AIM is granted limited relief from the automatic stay under section 362 of the Bankruptcy Code solely to the extent necessary to permit AIM to (a) send the notice of termination of the Master Forward Agreement without cause pursuant to Section 12 of the Master Forward Agreement without further order of the Court beginning 150 days after the Petition Date, and (b) terminate the Master Forward Agreement for cause pursuant to Section 7 of the Master Forward Agreement without further order of the Court; provided, that AIM shall give five (5) business days' advance notice of termination for cause to GMAC Mortgage and file such notice with the Court when such notice is given.

11. Pursuant to section 364(c)(1) and (2) of the Bankruptcy Code, any claims of AIM against GMAC Mortgage arising under the Master Forward Agreement (a) shall be secured by a fully perfected first priority lien on all Collateral (as defined in the Master Forward Agreement), which lien shall be senior to all other liens and claims, including the liens of any debtor-in-possession lender, and secured claims, and (b) to the extent such claims arise subsequent to the Petition Date, are superpriority claims which shall have priority over any and all unsecured claims and administrative expense claims, other than the Barclays 364(c)(1)

Claims to the extent provided below. The superpriority claims granted to AIM in this Order shall be junior to the Barclays 364(c)(1) Claims, except that the Barclays 364(c)(1) Claims shall be junior to (x) AIM's rights in the Collateral (as defined in the Master Forward Agreement) and all proceeds and other consideration received upon the sale, exchange, transfer or other disposition thereof and (y) the AIM Recourse Claims (as defined below). The superpriority claims granted to AIM pursuant to this paragraph 11 shall have recourse only to the Collateral (as defined in the Master Forward Agreement) and all proceeds and other consideration received upon the sale, exchange, transfer or other disposition thereof and shall otherwise constitute ordinary administrative claims under section 503(b) of the Bankruptcy Code (the "<u>AIM Recourse Claims</u>").

        12.      Pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, the Debtors are authorized in connection with origination activities to purchase mortgage loans from third parties for resale to Ginnie Mae securitization trusts and, upon reasonable advance notice to counsel for the Official Committee of Unsecured Creditors (the "<u>Committee</u>") and the Office of the Office of the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>"), to purchase whole loans for resale to third parties; <u>provided</u>, that nothing set forth in this paragraph 12 shall affect the authority of the Debtors to purchase or sell loans as otherwise provided in this Order or other orders of the Court.

        13.      Pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, the Debtors are authorized, but not directed, to pay any applicable GA Securitization Fees or Ginnie Mae Commitment Fees.

        14.      The liens granted to the Ally Secured Parties pursuant to this Order shall be perfected by operation of law immediately upon entry of this Order by the Court. None of the

ny-1008490

Ally Secured Parties shall be required to take any action in order to validate and to perfect the liens granted pursuant to this Order.

Critical Origination Vendors

15. Pursuant to section 105(a) of the Bankruptcy Code, the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay some or all of the prepetition claims of Critical Origination Vendors, upon such terms and in the manner provided in this Order and the Motion and subject to the Management Approval Process (as defined below); provided, that payments to Critical Origination Vendors on account of such prepetition claims shall not exceed $5,000,000 (the "Critical Claims Cap"), absent consent of the Committee or further order of the Court; provided, further, that payments to Critical Origination Vendors on account of such prepetition claims may not be accelerated, shall be made only in the ordinary course in accordance with Customary Trade Terms, and shall be subject to the terms set forth in paragraphs 15 through 23 of this Order (the "Critical Vendor Payment Terms"). This Order is entered without prejudice to the Debtors' right to request further authority from this Court, after notice and a hearing, to pay any amounts owed to Critical Origination Vendors in excess of the Critical Claims Cap.

16. As used herein, the term "Management Approval Process" means the advance review and approval by James L. Whitlinger, Chief Financial Officer of Residential Capital, LLC, following consultation with the Debtors' management and FTI Consulting, of any prepetition payment made to a Critical Origination Vendor.

17. Notwithstanding payment to any party of a prepetition claim made in accordance with the terms of this Order, the Committee shall retain the right to review and seek recovery of any such payment by an appropriate motion.

8

18. Promptly after entry of this Order and weekly thereafter, the Debtors shall provide counsel for the Committee and the U.S. Trustee with a schedule in a form agreed to by the Debtors and the Committee of all payments made to Critical Origination Vendors on account of prepetition claims in accordance with the terms of this Order, which shall include the name and address of the Critical Origination Vendor and the amount and date of the payment (the "<u>Critical Vendors Report</u>").  The Debtors shall confer with the financial advisors to the Committee regarding the Critical Vendors Report at such regular intervals as may be reasonably requested by the Committee.  The Debtors shall provide the financial advisors to the Committee and the U.S. Trustee with advance notice of any proposed payment to a Critical Origination Vendor on account of prepetition claim that exceeds $50,000, to the extent reasonably practicable under the circumstances, as determined by the Debtors in good faith.

19. If a Critical Origination Vendor refuses to supply products and/or services to the Debtors on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its prepetition claim, then the Debtors may, in consultation with the Committee and without further order of the Court:

(a) declare that any payments made to the Critical Origination Vendor on account of such claim be deemed to have been in payment of then-outstanding (or subsequently accruing) postpetition claims of the Critical Origination Vendor without further order of the Court or action by any person or entity; and

(b) take actions to recover or seek disgorgement of any payment made to the Critical Origination Vendor on account of its prepetition claim to the extent that the payments exceeded the postpetition claims of the Critical Origination Vendor, without giving effect to any rights of setoff, recoupment, claims, provision for payment of reclamation or trust fund claims, or other defense.

Under any such circumstances, such Critical Origination Vendor shall immediately repay to the Debtors any payment made to it on account of its Critical Origination Vendor claims to the extent that such payments exceed the postpetition claims of the Critical Origination Vendor,

9

without giving effect to any rights of setoff, recoupment, claims, provision for payment of reclamation or trust fund claims, or other defense.

20. Nothing herein shall:

(a) constitute a waiver of the Debtors' rights to seek damages, disgorgement or other appropriate remedies against any breaching Critical Origination Vendor;

(b) be construed to waive, limit, or in any way affect, the Debtors' ability to dispute a claim of a Critical Origination Vendor;

(c) be deemed an admission to the validity of the underlying obligation, including any payment made pursuant to this Order;

(d) be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and a Critical Origination Vendor; or

(e) be deemed to require the Debtors to make any of the payments to Critical Origination Vendors authorized herein.

21. Notwithstanding entry of this Order, the Debtors' rights to enforce the automatic stay provisions of section 362 of the Bankruptcy Code with respect to any creditor who demands payment of its prepetition claims as a condition to doing business with the Debtors postpetition are preserved.

22. The banks and other financial institutions at which the Debtors maintain their disbursement accounts are authorized and directed at the Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors in respect of the claims of Critical Origination Vendors.

23. The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic fund transfers, on account of the claims of Critical Origination Vendors to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

10

ny-1008490

Repurchase and Related Obligations

24. Pursuant to sections 105(a), 363(c)(1), 1107 and 1108 of the Bankruptcy Code, the Debtors are authorized, but not directed, to honor in their sole and absolute discretion all mortgage loan repurchase or repurchase-related obligations (or, in their sole discretion, to pay "make-whole" payments in lieu of repurchase), in accordance with their applicable representations and warranty obligations, arising in the ordinary course of business in connection with their sale of GA Loans to Fannie Mae, Freddie Mac or Ginnie Mae securitization trusts, in each case without regard to whether such obligations arose prepetition or postpetition; provided, that nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute or contest the validity or amounts of such claims or obligations.

25. Absent further order of the Court or the consent of the Committee, the Debtors are precluded from honoring any mortgage loan repurchase or repurchase-related obligations (or to pay "make-whole" payments in lieu of repurchase), in accordance with their applicable representations and warranty obligations, arising in the ordinary course of business in connection with their sale of their sale of Non-GA Loans without regard to whether such obligations arose prepetition or postpetition.

26. Pursuant to sections 105(a), 363(c)(1), 1107 and 1108 of the Bankruptcy Code, the Debtors are authorized, but not required, in their sole and absolute discretion (except as otherwise limited below):

(a) to honor all mortgage loan repurchase or related obligations in accordance with their applicable representations and warranty or make-whole obligations, arising in the ordinary course of business in connection with:

(i) their servicing of the GA Loans, in accordance with the applicable GA Guides, GA Servicing Agreements, and related documents without regard to whether such obligations arose prepetition or postpetition; and

11

ny-1008490

      (ii)    their servicing and subservicing agreements with other clients; <u>provided</u>, that the Debtors shall not honor such obligations or make such payments with respect to prepetition obligations absent consent of the Committee or further order of the Court;

(b)    to satisfy prepetition penalties incurred in connection with "servicer error" claims made by counterparties to the Debtors' subservicing agreements;

(c)    to satisfy prepetition penalties in the event the Debtors fail to meet required deadlines with respect to foreclosure and sale activities for GA Loans; and

(d)    with respect to Ginnie Mae Loans, to honor repurchase obligations in connection with loan modifications, foreclosures, and short sales;

<u>provided</u>, that nothing herein shall be construed to limit, waive, or in any way affect, the Debtors' ability to dispute or contest the validity or amounts of such claims or obligations.

27. Pursuant to sections 105(a) of the Bankruptcy Code, the Debtors are authorized to resell modified Ginnie Mae Loans to Ginnie Mae guaranteed securitization trusts or to submit claims to HUD for reimbursement by the FHA or VA, as applicable, with respect to repurchased Ginnie Mae Loans in accordance with their prepetition practices.

28. To the extent that the automatic stay of Bankruptcy Code section 362(a) applies to requests by the Governmental Associations that the Debtors repurchase GA Loans, the automatic stay is hereby modified pursuant to section 362(d)(1) of the Bankruptcy Code, to the limited extent necessary, to allow the Governmental Associations to submit repurchase or repurchase-related requests to the Debtors, including, without limitation, requests for indemnity, credit enhancement, recourse liability, make-whole payments, or other remedies provided by the GA Guides and GA Purchase Documents; <u>provided</u>, <u>however</u>, that such requests are limited to such requests and remedies as may be made in the ordinary course; <u>provided</u>, <u>further</u>, that the automatic stay, to the extent applicable, will remain in effect with respect to any effort by the Governmental Associations to enforce or collect on any such request.

29. Any undisputed, noncontingent and liquidated postpetition claims of Ginnie Mae arising under, or pursuant to, the Debtors' sale of the Ginnie Mae Loans, including, without limitation, repurchase, indemnity, credit enhancement, recourse liability, make-whole payments, or other remedies provided by the Ginnie Mae MBS Guide or other applicable GA Purchase Documents, shall be granted administrative expense priority pursuant to section 503(b) of the Bankruptcy Code.

30. For the avoidance of doubt, all payments by the Debtors to the Governmental Associations, including, without limitation, repurchase, make-whole and indemnity payments, shall be made free and clear of any lien, security interest, or other interest of any party, including, without limitation, any prepetition or postpetition lender.

Other Relief

31. The Debtors are authorized and empowered to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

32. Nothing herein shall be deemed to limit the rights of the Debtors to operate their business in the ordinary course, and no subsequent order shall be required to confirm such rights.

33. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

34. Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral

order or debtor in possession financing order entered in these chapter 11 proceedings. All amounts authorized to be paid pursuant to this Order are subject to the limitations and restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement). To the extent that there is any inconsistency between the terms of this Order and the terms of any order relating to postpetition financing or cash collateral, the terms of the orders relating to postpetition financing or cash collateral shall govern, except with respect to the first priority liens granted in paragraphs 8 and 11 of this Order.

35. Nothing in this Order shall discharge, release, or otherwise preclude any setoff or recoupment right of the United States of America, its agencies, departments, or agents.

36. Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

37. The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

38. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

39. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:                           , 2012
      New York, New York

                                                               THE HONORABLE MARTIN GLENN
                                                               UNITED STATES BANKRUPTCY JUDGE

15

ny-1008490