UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**FINAL ORDER UNDER SECTIONS 105(a), 361, 362, 363, 1107(a),
AND 1108 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS
TO CONTINUE IN THE ORDINARY COURSE OF BUSINESS (A) SERVICING
GOVERNMENTAL ASSOCIATION LOANS AND (B) FORECLOSURE ACTIVITIES
RELATED TO CERTAIN REAL ESTATE OWNED BY FANNIE MAE, FREDDIE MAC,
AND GINNIE MAE; (II) AUTHORIZING THE DEBTORS TO PAY CERTAIN
PREPETITION AMOUNTS DUE TO CRITICAL SERVICING VENDORS AND
FORECLOSURE PROFESSIONALS; (III) GRANTING LIMITED STAY RELIEF
TO ENABLE BORROWERS TO ASSERT DIRECT CLAIMS AND RELATED
COUNTER-CLAIMS IN FORECLOSURE AND EVICTION PROCEEDINGS;
(IV) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL UNDER THE
FANNIE MAE EAF FACILITY; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of interim and final orders, under Bankruptcy Code sections 105(a), 361, 362, 363, 1107(a) and 1108 and Bankruptcy Rule 6003, (i) authorizing the Debtors to continue in the ordinary course of business (a) servicing the GA Loans; and (b) foreclosure activities related to certain real estate owned by the Governmental Associations; (ii) authorizing the Debtors to pay certain prepetition amounts due to critical servicing vendors and foreclosure professionals; (iii) granting limited stay relief to enable borrowers or their tenants, as applicable, to assert related counter-claims in foreclosure and eviction proceedings; (iv) authorizing the Debtors to use cash collateral under the Fannie

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion. Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

ny-1008484

Mae EAF Facility; and (v) granting related relief; and the Court having considered the Whitlinger Affidavit; and the Court having entered an interim order on May 15, 2012 granting the Motion on an interim basis (the "Interim Order"); and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and the Court having considered the responsive pleadings filed by each of the Committee, Fannie Mae, and the United States of America on behalf of Ginnie Mae; and upon the record of the Final Hearing; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED, as set forth herein, and any objections to the Motion are overruled.

Servicing of GA Loans

2. The Debtors are authorized, but not directed, in their sole discretion and subject to available funding, to continue servicing GA Loans in the ordinary course, including, but not limited to:

    (a)    performing the Servicing Functions and honoring all obligations arising under the GA Servicing Agreements;

    (b)    making all Advances related to the GA Loans in accordance with the applicable GA Guides and GA Servicing Agreements; and

ny-1008484

(c) entering into loan modifications and Deferment and Forbearance Arrangements, including participating in HAMP;

provided, that, absent further order of the Court, the Debtors shall not sell or otherwise transfer any GA Loan while such loan is the subject of a trial period plan under HAMP.

3. The Debtors are authorized to honor their obligations under the Consent Order, the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012 (the "Order of Assessment"), and the DOJ/AG Settlement in connection with the Servicing Functions, and to use estate assets and take such actions as, in their reasonable business judgment, are necessary to comply with and adhere to the terms of the Consent Order, Order of Assessment, and the DOJ/AG Settlement; provided however, subject to the terms and conditions of the Settlement and Plan Sponsor Agreement, dated May 14, 2012, by and among Residential Capital, LLC and its debtor subsidiaries, and AFI, on behalf of its subsidiaries and affiliates other than the Debtors and their subsidiaries, such compliance shall be without prejudice to any claims or causes of action the Debtors or any party-in-interest (including the Committee) may assert against AFI for past or future costs of such compliance ("Compliance Claims"), including, without limitation, claims for contribution, and/or indemnification arising directly or indirectly, by contract or under common law, through subrogation or otherwise, which for the avoidance of doubt are expressly preserved herein; provided, further, however, AFI preserves all rights in connection with, and may contest, any Compliance Claim on any and all bases and preserves all rights to bring counterclaims against the Debtors for Compliance Claims, including (a) that the Debtors' costs in connection with the Compliance Claims are administrative expenses of the Debtors' estates pursuant to 11 U.S.C. § 503(b) and (b) that AFI is relying on the Debtors' costs of compliance in its decision to support operationally and financially the Debtors' efforts to sell the assets of the

ny-1008484

Debtors' estates on a going concern basis and maximize the value of the estates. The Debtors are further authorized to implement new servicing standards and procedures and to perform reviews of their past foreclosure proceedings and reports regarding the results of such reviews, in each case as may be required to comply with the Consent Order, Order of Assessment, and the DOJ/AG Settlement.

4. Nothing set forth in this Order or in the Motion shall alter the Debtors' obligations under the Consent Order, the Order of Assessment or the DOJ/AG Settlement.

GA Loans in Foreclosure and GA REO

5. The Debtors are authorized, but not directed, in their sole and absolute discretion and subject to available funding, to continue servicing GA Loans in foreclosure and GA REO in the ordinary course, including, but not limited to:

(a)   performing the Servicing Functions for GA Loans in foreclosure and GA REO in accordance with the applicable GA Servicing Agreements or other governing documents;

(b)   conducting foreclosures of GA REO property and, to the extent necessary, transferring or assigning deeds relating to GA REO to the applicable Governmental Association, as owner of the REO;

(c)   paying foreclosure professionals' (including default counsel) and brokers' fees, as applicable, in the ordinary course of business;

(d)   paying Advances related to the GA Loans in foreclosure and GA REO in accordance with the relevant GA Servicing Agreements;

(e)   satisfying any Foreclosure Timeline Penalties assessed against the Debtors; and

(f)   remitting the proceeds from the sale of GA Loans in foreclosure and GA REO in accordance with the relevant GA Servicing Agreements or other governing documents.

6. Nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any foreclosure professionals' and brokers' fees or Foreclosure Timeline Penalties that may be assessed against them.

ny-1008484

7.  Nothing herein shall be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement with any foreclosure professional or broker, or to require the Debtors to make any of the payments to any foreclosure professional or broker authorized herein.

Critical Servicing Vendors

8.  Pursuant to section 105(a) of the Bankruptcy Code, the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay some or all of the prepetition claims of Critical Servicing Vendors, upon such terms and in the manner provided in this Order and the Motion and subject to the Management Approval Process (as defined below); provided, that payments to Critical Servicing Vendors on account of such prepetition claims shall not exceed $19,600,000 (the "Critical Claims Cap"), absent consent of the Committee or further order of the Court; provided, further, that payments to Critical Servicing Vendors on account of such prepetition claims may not be accelerated, shall be made only in the ordinary course in accordance with Customary Trade Terms, and shall be subject to the terms set forth in paragraphs 8 through 16 of this Order (the "Critical Vendor Payment Terms").  This Order is entered without prejudice to the Debtors' right to request further authority from this Court, after notice and a hearing, to pay any amounts owed to Critical Servicing Vendors in excess of the Critical Claims Cap.

9.  As used herein, the term "Management Approval Process" means the advance review and approval by James L. Whitlinger, Chief Financial Officer of Residential Capital, LLC, following consultation with the Debtors' management and FTI Consulting, of any prepetition payment made to a Critical Servicing Vendor.

ny-1008484

10. Notwithstanding payment to any party of a prepetition claim made in accordance with the terms of this Order, any statutory committee appointed in the Debtors' cases (the "Committee") shall retain the right to review and seek recovery of any such payment by an appropriate motion.

11. Promptly after entry of this Order and weekly thereafter or with such other frequency as may be agreed upon among the parties, the Debtors shall provide counsel and financial advisors for the Committee and the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") with a schedule in a form agreed to by the Debtors and the Committee of all payments made to Critical Servicing Vendors on account of prepetition claims in accordance with the terms of this Order, which shall include the name and address of the Critical Servicing Vendor and the amount and date of the payment (the "Critical Vendors Report"). The Debtors shall confer with the financial advisors to the Committee regarding the Critical Vendors Report at such regular intervals as may be reasonably requested by the Committee. The Debtors shall provide the financial advisors to the Committee and the U.S. Trustee with advance notice of any proposed payment to a Critical Servicing Vendor on account of prepetition claim that exceeds $1 million, to the extent reasonably practicable under the circumstances, as determined by the Debtors in good faith.

12. If a Critical Servicing Vendor refuses to supply products and/or services to the Debtors on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its prepetition claim, then the Debtors may, in consultation with the Committee and without further order of the Court:

(a) declare that payments made to the Critical Servicing Vendor on account of such claim be deemed to have been in payment of then-outstanding (or subsequently accruing) postpetition claims of the Critical Servicing Vendor without further order of the Court or action by any person or entity; and

ny-1008484

    (b)    take actions to recover or seek disgorgement of any payment made to the Critical Servicing Vendor on account of its prepetition claim to the extent that the payments exceeded the postpetition claims of the Critical Servicing Vendor, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or other defense.

Under any such circumstances, such Critical Servicing Vendor shall immediately repay to the Debtors any payment made to it on account of its Critical Servicing Vendor claims to the extent that such payments exceed the postpetition claims of the Critical Servicing Vendor, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or other defense.

    13.    Nothing herein shall:

(a)    constitute a waiver of the Debtors' rights to seek damages, disgorgement or other appropriate remedies against any breaching Critical Servicing Vendor;

(b)    be construed to waive, limit, or in any way affect, the Debtors' ability to dispute a claim of a Critical Servicing Vendor;

(c)    be deemed an admission to the validity of the underlying obligation, including any payment made pursuant to this Order;

(d)    be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and a Critical Servicing Vendor; or

(e)    be deemed to require the Debtors to make any of the payments to Critical Servicing Vendors authorized herein.

    14.    Notwithstanding entry of this Order, the Debtors' rights to enforce the automatic stay provisions of section 362 of the Bankruptcy Code with respect to any creditor who demands payment of its prepetition claims as a condition to doing business with the Debtors postpetition are preserved. The automatic stay shall be modified to the extent necessary to permit the setoff and recoupment rights of Fannie Mae to continue unimpaired following the Petition Date with respect to the Fannie Mae EAF Facility; _provided_, _however_, that, solely with respect to any claim unrelated to the Fannie Mae EAF Facility that arose before the

7

ny-1008484

commencement of these Bankruptcy Cases, no set-off or recoupment shall be permitted that does not comply with section 553 of the Bankruptcy Code.

15. The banks and other financial institutions at which the Debtors maintain their disbursement accounts are authorized and directed at the Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors in respect of the claims of Critical Servicing Vendors.

16. The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic fund transfers, on account of the claims of Critical Servicing Vendors to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

<u>Limited Borrower Relief from Automatic Stay</u>

17. The extent to which the stay imposed by section 362(a) of the Bankruptcy Code is modified to enable (a) borrowers to assert and prosecute counter-claims related to the subject matter of the foreclosure complaint in connection with foreclosure proceedings, and (b) tenants to assert and prosecute counter-claims related to the subject matter of the eviction complaint in connection with eviction proceedings for which the underlying property is the subject of a foreclosure proceeding or has been foreclosed upon, shall be governed in all respects by this Court's *Supplemental Order For Interim Relief Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), And 1108 And Bankruptcy Rule 9019 (I) Authorizing The Debtors To Continue Implementing Loss Mitigation Programs; (II) Approving Procedures For Compromise And Settlement Of Certain Claims, Litigations And Causes Of Action; (III) Granting Limited Stay Relief To Permit Foreclosure And Eviction Proceedings, Borrower Bankruptcy Cases, And*

ny-1008484

*Title Disputes To Proceed; And (IV) Authorizing And Directing The Debtors To Pay Securitization Trustee Fees And Expenses* [Docket No. 391] (the "Interim Supplemental Order") and any final order of the Court granting such relief (together with the Interim Supplemental Order, the "Supplemental Order") and the Supplemental Order shall supersede paragraph 17 of the Interim Order in its entirety.

Use of Cash Collateral Under Fannie Mae EAF Facility

18. Pursuant to section 363(c)(2) and (4) of the Bankruptcy Code, the Debtors are authorized to use the funds held in the EAF Collection Account as of the Petition Date, which constitute Fannie Mae's cash collateral (the "Fannie Mae Cash Collateral"), subject to the provision by the Debtors of adequate protection pursuant to the EAF Terms set forth in Exhibit A to this Order.

19. In accordance with the EAF Terms and pursuant to section 363(e) of the Bankruptcy Code, Fannie Mae shall be granted replacement liens and security interests in the Fannie Mae Cash Collateral (the "Fannie Mae Replacement Liens"), which shall be senior to all security interests in, liens on, or claims against any of the Fannie Mae Cash Collateral to the extent of any diminution of the value of the interest of Fannie Mae in the Fannie Mae Cash Collateral. The Fannie Mae Replacement Liens granted pursuant to this Order shall be perfected by operation of law immediately upon entry of this Order by the Court and Fannie Mae shall not be required to take any action in order to validate and to perfect the liens granted pursuant to this Order.

20. Any undisputed, noncontingent and liquidated postpetition claims of Fannie Mae with respect to any diminution of the value of the interest of Fannie Mae in the Fannie Mae Cash Collateral shall be granted administrative expense superpriority pursuant to

ny-1008484

sections 503 and 507 of the Bankruptcy Code, with priority over any and all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, with the exception of (a) any priority administrative expense claims granted to any lender of debtor in possession financing (or such lender's agent) or other party extending postpetition secured credit in these Chapter 11 cases and (b) Chapter 5 avoidance actions and the proceeds thereof.

21. No expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Fannie Mae Cash Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of Fannie Mae.

Senior Priority of Interests with Respect to the Freddie Mac
Purchase Documents, Fannie Mae Contract Documents and Ginnie Mae

22. *The Freddie Mac Senior Interests.* Notwithstanding anything to the contrary herein or in any other order, the Debtors acknowledge and agree that any security interest granted in the Freddie Mac mortgage servicing rights is subject and subordinate in all respects to all rights, powers, and prerogatives of the senior priority interests of Freddie Mac pursuant to the Freddie Mac Purchase Documents (as defined in the Freddie Mac Guide). The Debtors further acknowledge and agree that, notwithstanding anything herein to the contrary or in any other order, no secured party has any claim or entitlement as a secured creditor against Freddie Mac, and Freddie Mac has no duty or obligation to any secured party, except as otherwise expressly agreed to in writing by Freddie Mac; provided, however, that nothing herein affects the rights, duties and obligations of Freddie Mac and Citibank, N.A. ("Citibank") pursuant to the Federal Home Loan Mortgage Corporation Acknowledgement Agreement among

ny-1008484

Freddie Mac, GMAC Mortgage and Citibank dated March 12, 2009 (the "Freddie Mac Acknowledgement Agreement"); provided, however, that nothing herein shall authorize any set-off or recoupment by Freddie Mac that does not comply with section 553 of the Bankruptcy Code.

23. *The Fannie Mae Senior Interests.* Notwithstanding anything to the contrary herein or in any other order, the Debtors acknowledge and agree that any security interest granted in the Fannie Mae mortgage servicing rights is subject and subordinate in all respects to all rights, powers, and prerogatives of the senior priority interests of Fannie Mae pursuant to that certain Mortgage Selling and Servicing Contract, dated as of August 9, 2006, which incorporates the provisions of the Fannie Mae Selling and Servicing Guides and any Master Contracts or pool purchase contracts that Fannie Mae and GMAC Mortgage have entered into, as each such document may be amended, supplemented or otherwise modified from time to time. The Debtors further acknowledge and agree that, notwithstanding anything herein to the contrary or in any other order, no secured party has any claim or entitlement as a secured creditor against Fannie Mae, and Fannie Mae has no duty or obligation to any secured party, except as otherwise expressly agreed to in writing by Fannie Mae; provided, however, that nothing herein affects any obligations of Fannie Mae to Citibank pursuant to the Acknowledgement Agreement (Single Secured Party) among Citibank, GMAC Mortgage and Fannie Mae dated September 7, 2007 (the "Fannie Mae Acknowledgement Agreement" and, together with the Freddie Mac Acknowledgement Agreement, the "Acknowledgement Agreements"); provided, however, that, solely with respect to any claim unrelated to the Fannie Mae EAF Facility that arose before the commencement of these Bankruptcy Cases, nothing herein shall authorize any set-off or recoupment by Fannie Mae that does not comply with section 553 of the Bankruptcy Code.

ny-1008484

24. *The Ginnie Mae Senior Interests.* Notwithstanding anything to the contrary herein or in any other order, the Debtors acknowledge and agree that any security interest granted in the Ginnie Mae mortgage servicing rights is subject and subordinate in all respects to all rights, powers, and prerogatives of the senior priority interests of Ginnie Mae. The Debtors further acknowledge and agree that, notwithstanding anything herein to the contrary or in any other order, no secured party has any claim or entitlement as a secured creditor against Ginnie Mae, and Ginnie Mae has no duty or obligation to any secured party, except as otherwise expressly agreed to in writing by Ginnie Mae; provided, however, that nothing herein shall expand or limit section 553 of the Bankruptcy Code with respect to any valid right of setoff that Ginnie Mae possesses, or expand or limit any valid right of recoupment that Ginnie Mae possesses.

Enhanced Reporting Requirements, Transfer of Servicing, and Provision of Adequate Assurance

25. The Debtors are directed and empowered to provide the Governmental Associations with reasonable access to the Debtors' books, records, and accounts in accordance with the applicable GA Guides including, without limitation, to provide Freddie Mac and Fannie Mae personnel with physical, on-site access to the Debtors' offices and records during all business hours, and to provide Fannie Mae and Freddie Mac with reasonable access to:

(a) information relating to the Freddie Mac Loans and Fannie Mae Loans, respectively;

(b) monthly custodial account reconciliations via tapes, delivered to Freddie Mac on or before the fifth (5th) day of the month immediately following the reconciliation period, and to Fannie Mae on or before the fifteenth (15th) day of the month immediately following the reconciliation period, of all P&I and T&I accounts relating to Freddie Mac Loans and Fannie Mae Loans;

(c) monthly reports, delivered to Freddie Mac and Fannie Mae, respectively, on or before the fifteenth (15th) day of each month, disclosing the Debtors' employee attrition, identifying departing employees by name, position, and principle duties;

12

ny-1008484

    (d)    monthly reports, delivered to Freddie Mac and Fannie Mae, respectively, on or before the fifth (5th) business day of each month, disclosing the Debtors' compliance or non-compliance with all foreclosure-related timelines required by the Freddie Mac Guide and Fannie Mae Contract; and

    (e)    until such time as a "hot back-up" servicer is in place with respect to Freddie Mac Loans as described below, a daily data tape providing enhanced servicing information requested by Freddie Mac and Fannie Mae, respectively.

26. The Debtors are directed and empowered to use reasonable best efforts to assist Freddie Mac to engage a "hot back-up" servicer for purposes of servicing the Freddie Mac Loans in the event the Debtors are unable to adequately service those loans or servicing of the loans is otherwise transferred during the Debtors' bankruptcy cases by, among other things, providing access to data, technology and systems support, in order to complete the engagement of a hot back up servicer on or before July 31, 2012.

27. The Debtors are authorized and required, without further order of the Court, to transfer servicing to one or more third-party servicers designated by Freddie Mac with respect to Freddie Mac Loans, if the Debtors fail to satisfy one or more of the Metrics set forth in Exhibit D to the Motion, as amended; provided, that any such servicing transfer shall be subject to any rights of Citibank pursuant to the Freddie Mac Acknowledgement Agreement. The Debtors shall transfer servicing within thirty (30) days of the receipt of a Transfer Notice and shall execute and transfer all documents and files requested by Freddie Mac to complete the servicing transfer. With respect to any Freddie Mac Loan transferred for failure to satisfy the Metrics, the Debtors' servicing rights shall be considered terminated with cause within the meaning of the Freddie Mac Guide. The Debtors shall file any Transfer Notice with the Court.

28. Pursuant to section 363(e) of the Bankruptcy Code, the Debtors are authorized to provide to Fannie Mae and Freddie Mac adequate assurance of future performance under the applicable GA Servicing Agreements on the terms and conditions set forth in

Exhibits B and C to this Order; provided, that nothing herein, including the provision of such adequate assurance, shall be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and Fannie Mae or Freddie Mac, as applicable. The acceptance by the Governmental Associations of the adequate protection and related relief granted pursuant to this Order shall not be deemed to constitute consent by the Governmental Associations of the assumption and assignment of the GA Servicing Agreements. Notwithstanding anything herein or in any order to the contrary, Fannie Mae and Freddie Mac may seek additional adequate protection or modification to their respective grants of adequate protection provided herein so as to provide different or additional adequate protection, without prejudice to the right of the Debtors or any other party in interest to contest any such addition or modification.

29. For the avoidance of doubt, all payments by the Debtors to the Governmental Associations (including, without limitation, payments of principal and interest, Advances, foreclosure timeline compensatory fees, post-claim reimbursements, and other servicing-related fees and claims) shall be made free and clear of any lien, security interest, or other interest of any party, including, without limitation, any prepetition or postpetition lenders.

30. To the extent that the automatic stay under Bankruptcy Code section 362(a) applies to requests by Fannie Mae and Freddie Mac that the Debtors honor their servicing-related commitments and obligations, the automatic stay is hereby modified to the limited extent necessary to allow the Fannie Mae and Freddie Mac to make servicing-related requests to the Debtors, including, without limitation, requests for payment of principal and interest, Advances, foreclosure timeline compensatory fees, post-claim reimbursements, and other servicing-related fees and claims, in each case to the extent provided under the relevant GA

14

ny-1008484

Guide, GA Servicing Agreement, or other related documents; _provided_, _however_, that to the extent the automatic stay is applicable, Fannie Mae and Freddie Mac may not proceed to take any enforcement actions against the Debtors, or property of their estates with respect to such requests, including the collection thereof, without further order of the Court, except with respect to a transfer of servicing for Freddie Mac Loans arising from the Debtors' failure to satisfy the Metrics, pursuant to paragraph 27 of this Order.

Other Relief

31. The Debtors are authorized and empowered to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

32. Nothing herein shall be deemed to limit the rights of the Debtors to operate their business in the ordinary course, and no subsequent order shall be required to confirm such rights.

33. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

34. Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral order or debtor in possession financing order entered in these chapter 11 proceedings. All amounts authorized to be paid pursuant to this Order are subject to the limitations and restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement). To the extent that there is any inconsistency between the terms of this Order and the terms of any

order relating to postpetition financing or cash collateral or the Supplemental Order, the terms of the orders relating to postpetition financing or cash collateral or the Supplemental Order, as applicable, shall govern.

35. Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

36. Nothing in this Order shall discharge, release, or otherwise preclude any setoff or recoupment right of the United States of America, its agencies, departments, or agents.

37. The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

38. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

39. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:    June 15, 2012
          New York, New York

                                                                                            /s/Martin Glenn
                                                                                            MARTIN GLENN
                                                                    United States Bankruptcy Judge

ny-1008484