Patrick J Hopper                                                    June 12, 2012
Case 09-11026
220 McCartney Dr
Moon Twp Pa 15108
Telephone: (239) 293-0432

*Pro-Se, non attorney Movant*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In re
Residential Capital, LLC *et al.,* Chapter 11
Case No. 12-12020 (MG)

Debtors. Administratively Consolidated
-----------------------------------------------------------------X



RECEIVED
JUN 1 3 2012
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

## LIMITED OBJECTION TO INTERIM ORDER "AUTHORIZING DEBTOR TO CONITINUE TO OPERATE IN THE ORDINARY COURSE OF BUSINESS" IF SUCH ACTIVITY COULD RESULT IN A CONTINUING FRAUD ON THE COURT AND/OR A CONTINUING VIOLATION OF THE OCC CONSENT ORDER

MOVANT, Patrick J Hopper, pro-se, a contingent claimant in litigation represented by an

action pending in the Circuit Court of the Twentieth Judicial Circuit of Florida, Collier County in

*GMAC Mortgage LLC v. Patrick Hopper et al.* as Case # 09-11026 on his own behalf and for

similarly situated homeowners, files this Limited Objection to the Interim Orders, (Docket No.

87; **" Authorizing Debtors to Continue in the Ordinary Course of Business"),** if taking such

action could result in a continuation of fraud on the court and/or continue a violation of the OCC

consent order.

The MOVANT hereby MOVES this court for consideration of this limited objection

under sections 105, 506, 361 of title 11 of the U. S. Code (the "Bankruptcy Code").

## PRELIMINARY STATEMENT

Patrick J Hopper
Case 09-11026
220 McCartney Dr
Moon Twp Pa 15108
Telephone: (239) 293-0432

June 12, 2012

***Pro-Se, non attorney Movant***

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re
Residential Capital, LLC *et al.,* Chapter 11
Case No. 12-12020 (MG)

Debtors. Administratively Consolidated
------------------------------------------------------------X



## LIMITED OBJECTION TO INTERIM ORDER "AUTHORIZING DEBTOR
## TO CONITINUE TO OPERATE IN THE ORDINARY COURSE OF BUSINESS" IF
## SUCH ACTIVITY COULD RESULT IN A CONTINUING FRAUD ON THE COURT
## AND/OR A CONTINUING VIOLATION OF THE OCC CONSENT ORDER

MOVANT, Patrick J Hopper, pro-se, a contingent claimant in litigation represented by an

action pending in the Circuit Court of the Twentieth Judicial Circuit of Florida, Collier County in

*GMAC Mortgage LLC v. Patrick Hopper et al.* as Case # 09-11026 on his own behalf and for

similarly situated homeowners, files this Limited Objection to the Interim Orders, (Docket No.

87; **" Authorizing Debtors to Continue in the Ordinary Course of Business"),** if taking such

action could result in a continuation of fraud on the court and/or continue a violation of the OCC

consent order.

The MOVANT hereby MOVES this court for consideration of this limited objection

under sections 105, 506, 361 of title 11 of the U. S. Code (the "Bankruptcy Code").

## PRELIMINARY STATEMENT

On May 15th 2012, an Interim Order was issued, (Docket No. 87; **" Authorizing Debtors to Continue in the Ordinary Course of Business")** (I) authorizing the Debtors to continue in the ordinary course of business (A) Servicing Non GA Loans and (B) sale activities related to certain loans in foreclosure and real estate owned property, and (II) granting limited stay relief to enable borrowers to assert related counter claims in foreclosure and eviction proceedings.

GMAC Mortgage, through counsel, relying on the relief granted in the Interim Order issued by this court, on June 1, 2012, scheduled a hearing before Magistrate Friedman, on GMAC's motion to amend complaint to be heard June 19, 2012. MOVANT/DEFENDANT does not consent to a referral to the magistrate and has filed an objection. (Exhibit A).

Over the past 4 years, the ordinary course of business resulted in a trickle down of issues that plagued the industry resulting in arguments being made based on facts known at "a moment in time" and thus establishing case law that is a crucial part of the proper functioning of our judicial system.  This court now has the ability to established new case law, if such decision is warranted from discoveries made in this process, including the 2004 proceedings and independent examination request, that can provide precedent that is fair and equitable to all parties, enabling the industry to begin the path to recovery as opposed to tip toeing through known landmines.

## LIMITED OBJECTION

### Process to protect the general public from having to continue defending against flawed documents and practices.

MOVANT request the Court consider a modification of its order to "Exclude" litigation that includes a counter claim for fraud on the court and/or allegations of violations of the consent order and establishing a process to quickly resolve.

MOVANT request the court consider appointing a lead independent arbitrator that enables affected litigants to request removal of an action in favor of **"Binding arbitration".** Such a mechanism, if under the control of the bankruptcy court, will help further highlight issues that need to be addressed by the examiners, establishes a fair and equitable resolution to litigation that contains counterclaims, provides for stronger protection of assets, approving in the normal course of business that is in line with the OCC consent order amongst others.

Such approach would also place accountability back in the system by establishing a thin, very specific, fiduciary duty between Borrower, MERS and servicers to ensure "clear and marketable title". This is critical to protect consumers who are not currently "visibly" impacted by the past flaws of the foreclosure process, however, are unknowingly exposed to the same clouded title issues that are being discovered today. Finally, such approach promotes protection of the basic constitutional rights to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property, while providing for protections to parties that are critical to enabling such rights (investors, lenders).

### Arbitration awards, if granted, should not exceed those settlement offers, recently authorized by the court or as modified by this court

Binding arbitration should not exceed the levels outlined in the order of Honorable Martin Glen on May 31, 2012 including but not limited to (Docket No. 183 **"approving procedures for compromise and settlement of certain claims, litigations and causes of action."**). For cases in which material violations have and are continuing to occur as well as the

consent order not being followed, sanctions should be imposed against opposing counsel who is

pursuing such litigation with the proceeds to go back to the estate. In instances where sanctions

are imposed, additional non cash awards should be considered such as re-establishment of credit

to pre foreclosure levels, mortgage pre-approval to levels not exceeding a predetermined debt to

income ratios enabling a fresh start to consumers whom invested significant time and effort in

defending such action.


### Debtors 363 sale motion, authorizing the sale of certain assets free and clear of liens, claims, encumbrances, and other interests, should specifically exclude assets that are subject to clouded title claims.


MOVANT request the court further exclude the sale of mortgages which are covered by

this request from the 363 sale procedure requested by Debtor or provide other relief as the court

deems appropriate. In MOVANT's case [1] , DEBTOR normal course of business includes

continued reliance on past actions and documentation flaws [2] that prevented the sale of the

property in 2010 via a 363 sale process. Such sale, which appeared prudent by DEBTORS then

counsel, would have fully satisfied the first lien, fully protected a Trust Asset, enabled

MOVANT to take advantage of a fresh start afforded in a Ch7 discharge, and satisfied an

indemnity clause MOVANT entered into per a divorce decree.

---

[1]   In MOVANT's case, DEBTOR obtained unchallenged relief of stay in a chapter 7 bankruptcy proceeding in 2009, acting as servicer for SQMT 2004-08 Trust and embarked on foreclosure proceedings as the owner of the note based on an assignment of rights. MOVANT, with debtors approval, negotiated a sale agreement which fully satisfied the first lien and fully protected the rights of the trust. Such transaction could only be consummated in MOVANT's chapter 7 bankruptcy case via a 363 sale. Despite the Ch.7 trustee agreeing to consider such 363 approach and DEBTOR's then counsel Oscar Gomez of the law firm David Stern, stated "it made too much sense not to do. However the ball is in their court" DEBTOR chose not to pursue such route seeking foreclosure and the deal cratered. The reasons for such a decision where self serving as for reasons articulated in MOVANT's state court filings, many of which are addressed in the OCC order, but are still continuing.

[2]   a) filed for relief of stay in a Ch7 bankruptcy proceeding as servicer for SQMT 2004-08 Trust June 2009 b) filed foreclosure as mortgage and note owner in Dec 2009. (Debtor relied on an assignment created specifically to foreclose. Such assignment conflicts with filings in Ch7 bankruptcy court) c) identified Wells Fargo as owner to OFR regulators via writing in March 2011. (Confirmed verbally to the OFR two months after signing the Consent order that such statement is accurate.) and d) identifies Redwood Trust as the owner on the MERS system (MERS has a duty to protect title and the MERS rules delegate this authority to servicers to maintain accuracy in information recorded on the MERS system and correct known discrepancies. This issue was first raised with MERS, Redwood Trust and DEBTOR in early 2010.

MOVANT wants to avoid any prejudice that may arise from granting clear title to a known clouded title through providing such relief to future parties arguing Rooker-Feldman and res judicata. *See Hon. Robert E Grossman, dated memorandum decision, dated February 10, 2011, Case No. 810-77338-reg United States Bankruptcy Court Eastern District of NY in re: Agard Chapter 7.*

See Exhibit A attachments

Any action taken by this court related to operating business as normal, needs to ensure public interests are protected, primarily borrowers constitutional rights as third party beneficiaries to obtain clear and marketable title, while promoting industries right to profit.



**WHEREFORE**, the undersigned, a non attorney, makes this limited objection in good faith, for the protection of the public, protection of his rights and the integrity of the Court.

Dated: June 12, 2012

Patrick J Hopper
220 McCartney Dr
Moon Twp Pa, 15108
Telephone (239) 293-0432
pjh.gmacbk@gmail.com (preferred contact)

# _EXHIBIT A_

1

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
OF FLORIDA, IN AND FOR COLLIER COUNTY

GMACM                                               Case # 09-11026

     Plaintiff,

vs.

PATRICK HOPPER

     Defendant(s).

---

### DEFENDANT'S OBJECTION
### TO PLAINTIFF'S REQUEST FOR COURTS REFERRAL TO
### MAGISTRATE FRIEDMAN FOR PLAINTIFF'S
### LEAVE TO AMEND COMPLAINT

The Defendant, pro se, moves this Court for an Order denying the Plaintiff's request for referral for

Leave to Amend Complaint scheduled to be heard by Magistrate Freidman on June 19, 2012 or any

future date.

## **ALL PARTIES DO NOT CONSENT**

DEFENDANT does not consent to such referral. Such consent is required pursuant to Rule

1.490(a) of the Florida Rules of Civil Procedure and current Administrative Orders of the Court. See

exhibit A from the Jacs System.

DEFENDANT has on numerous occasions expressed his objection to Plaintiff's request to

Amend the complaint as well as objection to courts referral to magistrate.

WHEREFORE, Plaintiffs' request for referral should be DENIED.

## SUCH MOTION IS A DEPARTURE PLEADING

PLAINTIFF pled for the past 26 months that it owned the note, and submitted assignments, affidavits and other documents to support such position. Plaintiff now wishes to proceed as servicer of the note, not as owner, however, continues to rely on prior assignments and affidavits, and fails to state how such status was obtained.

DEFENDANT would like to remind the court of the basic facts that have caused this litigation to linger.

A. DEFENDANT filed for chapter 7 bankruptcy protection in June of 2009
B. DEFENDANT elected not to claim the residence as exempt,
C. DEFENDANT did not object in Sept 2009 to GMAC as servicer for SEQMT 2004-08 request for relief of stay related to the first lien,
D. DEFENDANT began working with GMAC workout group in Nov 2009 to sell the property
E. DEFENDANT continued to communicate and work with GMAC to pursue sale options after GMAC filed foreclosure proceedings in Dec 2009
F. DEFENDANT listed the house with GMAC approval in Feb 2010
G. DEFENDNAT obtained a ready to fund offer of $540,000 that would have fully satisfied the Loan held by Trust SEQMT 2004-08 for $479,000,
H. DEFENDANT would have fully satisfied an indemnity agreement per a divorce decree with ex-wife who was only on the first mortgage,
I. Such offer, after real-estate fees, possibly would have provided for a small distribution to the second lien holder,
J. Such offer, would avoid the possibility of a foreclosure and possibly a lower return to TRUST investors (full offer, less default interest, elimination of legal fees, etc)

Such transaction could only be executed via a 363 sale with the consent of GMAC.

To execute the 363 sale, DEFENDANT contacted GMAC bankruptcy counsel to discuss the 363 proposal at which point GMAC then counsel stated "It makes too much sense not to do". DEFENDANT proceeded to contact the Trustee for approval to utilize the 363 sale process, while GMAC counsel

discussed this approach with their client. Upon getting the Trustee to consider utilizing the 363 process,

GMAC informed counsel that they "are not interested in proceeding down this path".

Such decision made no sense to DEFENDANT as any future sales would result in far less

recovery to all parties at which point DEFENDANT invested significant time and effort trying to

understand the process. DEFENDANT discovered the documentation filed, assignment prepared and

statements in the opening foreclosure complaint where substantially different than those presented in

GMAC's request in the bankruptcy court for relief of stay. **It appears the reason for GMAC refusing
to utilize the 363 process was that, PLAINTIFF ran a huge risk of the claim be reclassified to an
unsecured status creating additional issues for itself, if discrepancies became known.**

> PLAINTIFF's original complaint relied on an assignment of mortgage that was subsequently
> assigned to GMAC on December 31, 2009 by Jeffrey Stephan, 3 days after original complaint
> filing. Such assignment was recorded on January 25, 2010 and the original ink signed note was
> finally produced in April 2010 and for the first time included an allonge. Florida courts permit a
> late assignment provided that it is consistent with the intentions of the parties which reflect a
> recorded assignment from MERS to GMAC on December   **Such assignment is not addressed
> anywhere in Plaintiff's amended complaint, and is a critical document that establishes
> standing at time of filing.**

WHEREFORE PLAINTIFF request for Magistrate referral of Motion to Amend would be moot

and dismissal for departure of pleading would be appropriate. *Aurora Loan Services, LLC v Michael
Nuckols case # 41-2010-CA-3687 in Manatee County Florida* entered March 9, 2012

## PLAINTIFFS MOTION TO AMEND CHANGING STATUS FROM OWNER TO SERVICER WILL RESULT IN ESTABLISHING A FIDUCIARY DUTY WITH THE DEFENDANT DUE TO THE DELAGATION OF SUCH DUTY BY MERS

The financial industry's decision to fully embrace the MERS system in pursuit of a constitutional right to be rewarded for industry, significantly impaired the constitutional protections afforded to DEFENDANT who continues to own equitable title and gets the use and enjoyment of the property. If DEFENDANT had not defaulted, PLAINTIFF would be unable to provide DEFENDANT with a clear and marketable title upon satisfaction of obligations. Such breach occurred in 2004 when the negligence of various parties failed to properly transfer the collateral to a Trust which now owns the note. In this transaction MERS, took on a trustee-like position with discretionary power over the interests of all beneficiaries to ensure tracking of a clean and marketable title. Such assumption creates a "fiduciary" duty as described by Black's law definition:

> [a] person *holding the character of a trustee, or a character analogous to that of a trustee*, in respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires … [a] person having [a] duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking…a person having duties involving good faith, trust, special confidence, and candor towards another.[11]

A fiduciary duty does not apply between a borrower and lender in an arms length financial transaction. However, MERS, who is not a lender, chose to take on these responsibilities related to protecting title, that are normally provided for in County Land Records. Therefore, MERS has a duty to act for the benefit of all beneficiaries including the ultimate beneficiary related to protecting marketable title. This most basic duty obligates the fiduciary to put the interests of the beneficiary first, ahead of the fiduciary's self interest, and to refrain from exploiting the relationship for the fiduciary's personal benefit. **The MERS rules, by delegating the recording and maintenance obligations to the servicers "members" would have pushed this obligation to GMAC as servicer. With an offer that would have fully satisfied the note, GMAC had a duty to take the necessary actions required for a 363**

**sale. GMAC chose the path that was in the best interest of GMAC, as owner, not GMAC as**

**servicer and fiduciary which is a further departure from pleading.**

## PLAINTIFFS MOTION TO AMEND MAY VIOLATE THE MAY 15, 2012 INTERIM

## ORDER ISSUED IN THE CHAPTER 11 BANKRUPTCY COURT BY THE

## HONORABLE JAMES PECK

PLAINTIFF GMAC Mortgage LLC, a Chapter 11 bankruptcy debtor (case 12-12032) is

proceeding under an interim order issued May 15, 2012. Such order authorizes, but does not direct the

Debtors to continue in the ordinary course of business (a) servicing non-GA loans amongst other

approvals.

Such order further authorizes DEBTOR GMAC to honor their obligations under Consent Order

and the DOJ/AG Settlement.


PLAINTIFF, scheduled it's Motion to Amend, post petition, with known deficiencies, in the

ordinary course of business, and thus is not complying with the OCC Consent Order including but not be

limited to:

      A. Parties ordered to "cease and desist and take affirmative action";
      B. Compliance with MERS' membership rules, terms, and conditions,;
      C. Remediate, as appropriate, errors, misrepresentations, or other deficiencies in any foreclosure filing or other proceeding;
      D. Documentation sufficient to establish ownership of the note and right to foreclose at the time the foreclosure action is commenced;
      E. Measures to ensure the accuracy of all documents filed or otherwise utilized
      F. Ensure that all factual assertions made in pleadings, declarations, affidavits, or other sworn statements filed by or on behalf of the Mortgage Servicing Companies are accurate, complete, and reliable

WHEREFORE, Plaintiff, should be required to clearly show within a short time frame how it complies with the above "Consent Order" prior to engaging in business as normal.

## THE MOTION TO AMEND FURTHERS A FRAUD ON THE COURT

PLAINTIFF has not identified nor removed any document, affidavit or statement that contains potentially inaccurate information, (Exhibit B) and therefore is relying on such information as accurate, post petition, which is not in accordance with the provisions contained in the Consent Order. Not rectifying the following actions of PLAINTIFF appear to be continuing a fraud on the court and in violation of the Consent Order

- not updating the MERS system (despite DEFENDANT notifying MERS, Redwood Trust and GMAC of such discrepancy over 16 months ago),
- not ensuring actual statements are made in pleadings,
- not documenting its right to foreclose at commencement of proceeding,
- continued discrepancies in loan documents filed in bk proceedings and those subsequently filed in foreclosure action that are now be relied upon,
- Failure to respond to the QWR sent to PLAINTIFF by DEFENDANT in 2011

Finally, attached is DEFENDANTS MEMORANDUM filed and served March 27, 2012, regarding further support to Opposition to Plaintiffs Request for Leave to Amend Complaint filed (attached as Exhibit C) identified numerous errors, omissions, mistakes and potential fraud related to PLAINTIFF GMAC Mortgage LLC.

WHEREFORE, Defendant prays the court will DENY Plaintiffs request for referral.

Respectfully Submitted,

Patrick J Hopper
Pro se – Defendant

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR COLLIER COUNTY, FLORIDA

### CIVIL ACTION

IN RE: THE MATTER OF

    ,
    **Plaintiff(s),**

**vs.**

                           **CASE NO:**    **-CA-01-**

    ,
    **Defendant(s).**
_____/

### ORDER OF REFERRAL TO THE MAGISTRATE

       **THIS CAUSE** came on before the court upon the court's own motion and the Court, being duly advised in the premises, it is:

       **ORDERED** that this is referred to General Magistrate for further proceedings, pursuant to Rule 1.490(a) of the Florida Rules of Civil Procedure and current Administrative Orders of the Court. This referral is by and with the consent of all parties, pursuant to Rule 1.490(c) of the Florida Rules of Civil Procedure. The Magistrate shall hold such hearings as deemed necessary and shall file, as soon as practicable, a Recommended Order of the General Magistrate.

       **IF REQUIRED BY THE MAGISTRATE, THE ATTORNEYS SHALL PREPARE A RECOMMENDED ORDER OF THE MAGISTRATE. FAILURE TO SUBMIT SAID RECOMMENDED ORDER OF THE MAGISTRATE ON A TIMELY BASIS MAY RESULT IN SANCTIONS BEING IMPOSED BY THE CIRCUIT COURT JUDGE.**

**THIS CASE IS REFERRED TO THE MAGISTRATE** on the following issues:

| | | | |
|---|---|---|---|
| [ ] | Contempt (or Enforcement) | [ ] | All Discovery Motions |
| [ ] | Pretrial Conference | [ ] | Final Hearings & Counterclaim |
| [ ] | Status/Case Management Conference | [ ] | Order to Show Cause |
| [ ] | Motion to Withdraw | [ ] | Summary Judgment |
| [ ] | Motion to Dismiss | [ ] | Motion to Compel |
| [ [ | Motion to Amend | [ ] | OTHER:_____ |

**AND ANY OTHER MATTER RELATED THERETO.**

       **IT IS FURTHER ORDERED** that the above matter(s) and responses are referred to Magistrate    ☐    **David C. Friedman**

for further proceedings, pursuant to Rule 1.490(a) of the Florida Rules of Civil Procedure and current administrative orders of the court. The Magistrate is authorized to administer oaths and conduct hearings which may include taking of evidence and shall file a report and recommendations that contain findings of fact, conclusions of law, and the name of the court reporter, if any.

       A time and place shall be assigned for the proceedings as soon as reasonably possible after this referral is made and notice shall be given to each of the parties either by the Magistrate or one or more of the parties.

       **A REFERRAL TO A MAGISTRATE REQUIRES THE CONSENT OF ALL PARTIES. YOU ARE ENTITLED TO HAVE THIS MATTER HEARD BY A JUDGE. IF YOU DO NOT**

**WANT TO HAVE THIS MATTER HEARD BY THE MAGISTRATE, YOU MUST FILE A WRITTEN OBJECTION TO THE REFERRAL PRIOR TO COMMENCEMENT OF THE HEARING. FAILURE TO FILE A WRITTEN OBJECTION IS DEEMED TO BE A CONSENT TO THE REFERRAL.**

If either party files a timely objection, this matter shall be returned to the undersigned judge with a notice stating the amount of time needed for hearing.

**IF REQUIRED BY A MAGISTRATE THE ATTORNEYS SHALL PREPARE A PROPOSED REPORT. FAILURE TO SUBMIT SAID PROPOSED REPORT ON A TIMELY BASIS MAY RESULT IN SANCTIONS BEING IMPOSED BY THE CIRCUIT COURT JUDGE.**

**REVIEW OF THE REPORT AND RECOMMENDATION MADE BY THE MAGISTRATE SHALL BE BY EXCEPTIONS AS PROVIDED IN RULE 1.490(h) FLORIDA RULES OF CIVIL PROCEDURE. A RECORD, WHICH INCLUDES A TRANSCRIPT, MAY BE REQUIRED TO SUPPORT EXCEPTIONS.**

**YOU ARE ADVISED THAT IN THIS CIRCUIT** electronic recording **is not** provided by the court. A party may provide a court reporter at that party's expense.

**SHOULD YOU WISH TO SEEK REVIEW OF THE REPORT AND RECOMMENDATION MADE BY THE MAGISTRATE, YOU MUST FILE EXCEPTIONS IN ACCORDANCE WITH RULE 1.490(H), FLORIDA RULES OF CIVIL PROCEDURE. YOU WILL BE REQUIRED TO PROVIDE THE COURT WITH A RECORD SUFFICIENT TO SUPPORT YOUR EXCEPTIONS OR YOUR EXCEPTIONS WILL BE DENIED. A RECORD ORDINARILY INCLUDES A WRITTEN TRANSCRIPT OF ALL RELEVANT PROCEEDINGS. THE PERSON SEEKING A REVIEW MUST HAVE THE TRANSCRIPT PREPARED IF NECESSARY FOR THE COURT'S REVIEW.**

After conclusion of the proceedings, if exceptions to the Magistrate's Report are filed, **A COPY OF SAME SHALL BE CONTEMPORANEOUSLY SUBMITTED TO THE MAGISTRATE** and the Magistrate shall have reserved jurisdiction to conduct such re-hearing as the Magistrate determines appropriate. Such reservation shall not restrict the jurisdiction of the circuit court to proceed on the exceptions.

**DONE AND ORDERED** in Collier County, Florida this _____ day of _____, 2012.

_____
Circuit Court Judge

CC:

## EXHIBIT B

### Deficiency relate to Loan Investor

- The MERS system continues to identify GMAC servicing the loan on behalf of ( "Redwood Trust"),
- GMAC informed Florida OFR Regulators on March 29, 2011 that "GMAC is servicing the note on behalf of Wells Fargo as the investor"
- Relief of stay was requested by GMAC as servicer for investor SEQMT2004-8 in bankruptcy case 8:09-bk-12702-CPM prior to filing foreclosure action.
- GMAC has NOT responded to the Qualified Written Request QFR sent to GMAC on March 7, 2011 *pursuant to the Real Estate Settlement Procedures Act (RESPA).*

### Continued Reliance on false assignment

- GMAC is continuing a fraud on the court and not complying with the Consent Order by the continued reliance on an inaccurate assignment dated December 2009 states GMAC took ownership of the Mortgage together with the Note directly from Greenpoint Mortgage effective November 30, 2009. Greenpoint was a party to a Mortgage Loan Flow Purchase, Sale and Servicing Agreement dated August 1, 2002 and per SEC filings RWT was in compliance with all terms of such agreement. Such filing indicates Greenpoint transferred any and all rights that they may hold, in 2004 to RWT who then transferred such rights to other parties.

### Possession of Original Note at commencement of action

- The "True & Certified Copy of the Original" note filed in bk court on 9/2/09 did not include an allonge and did not reflect a loan number on the document face.
- Another "True & Certified Copy of the Original" with identical signatures, was filed at foreclosure commencement, however, did not include an allonge and now reflected a loan number 0084378587.
- Four months after commencement of foreclosure, the "Original Ink Signed Note was deposited with the Clerk of Court, included a loan number, and now included a allonge
  - *Definition of ALLONGE (Black's Law Dictionary). When the indorsements on a bill or note have filled all the blank space, it is customary to annex a strip of paper, called an "allonge," to receive the further Indorsements. Fountain v. Bookstaver, 141 Ill. 4G1, 31 N. E. 17; Haug v. Itilev, 101 Ga. 372. 29 S. E. 44, 40 L. It. A. 244; Bishop v. Chase. 150 Mo. 158, 56 S. W. 10S0, 79 Am. St. Rep. 515.*
- Such Allonge was not on the front of the original signature page, not attached as a separate document, but placed on the back of the signature page to imply it was part of the original loan and thus gaining support for an argument that is was overlooked when other "True & Certified Copy of the Original" of the note had been submitted to the court.

**Finally distortions appear in the Signature of Hopper as well as typed name Patrick when comparing the ink signed original and the certified copies.**

*Exhibit C*

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
OF FLORIDA, IN AND FOR COLLIER COUNTY

GMACM                                     Case # 09-11026

     Plaintiff,

vs.

PATRICK HOPPER

     Defendant(s).

---

## DEFENDANT'S MEMORANDUM OF FURTHER SUPPORT FOR OPPOSITION TO PLAINTIFF'S REQUEST FOR LEAVE TO AMEND COMPLAINT

### INTRODUCTORY

On December 28, 2009, Plaintiff GMAC filed a foreclosure complaint which stated Plaintiff "owns and holds the Note and Mortgage" (Complaint, ¶ 5). In accordance with the requirements of foreclosure, an assignment of Mortgage together with the note and each and every obligation described in said mortgage was executed by MERS as nominee for Greenpoint Mortgage to GMAC on December 31, 2009 and recorded in Collier County on January 25, 2010. The original ink-signed note was filed with the Clerk of Court on April 22, 2010

On February 24, 2012, Plaintiff filed a motion for leave to amend its complaint and five days later, Plaintiff filed a Motion for Summary Judgment on February 29, 2012 and has already scheduled a hearing with this court on such motion for June 8, 2012 (under the assumption Leave to Amend will be approved). Over 2 years after filing the original complaint, Plaintiff now claims it no longer "owns and holds the Note and Mortgage", but is now states "as of the date of this filing of the Complaint in this action, Plaintiff was in possession of the Note, duly endorsed in blank, and the Mortgage as servicer for the owner and Plaintiff is entitled to enforce the Note and Mortgage." Such wording continues not to disclose the owner of the note and does not confirm that Plaintiff had in it's possession the "Original Ink-Signed Note" which was not filed until April 22, 2010.

1

On March 9, 2012, Defendant filed an Opposition to Plaintiff's Motion for Leave to Amend Complaint and is now submitting this memorandum as a supplement to Defendants Opposition. The events of the last few years have created great concern with accuracy of filings by Plaintiff and therefore should require a higher degree of scrutiny by the court in granting a leave to amend. Many of the events that have unfolded over the past few years, have been present in this case including allegations against the Law Firm of David Stern for false affidavits, robo-signing by Jeffrey Stephan, as well as issues raised in the 2010 Consent Order and the recent settlement with the US attorney generals. As Defendant has raised a concern with fraud on the court, future filings need to be closely scrutinized to ensure that filings done in an attempt to correct or clarify past practices, do not further a fraud on the court, if one is found to exist.

In Plaintiff's Motion for Summary Judgment, Plaintiff implies Defendant has a fundamental misunderstanding of the law underlying negotiable instruments as well as implies Defendant does not fully understand the meaning behind the Mortgage follows the Note in Equity, when in reality, Plaintiff and it's industry have created a complex system to further profit from the traditional lender / borrower relationship. This new process creates a borrower placing his trust in other parties on performance specifically as it relates to protecting borrowers rights to a marketable title.

Defendant has invested two years understanding the workings of this new complex business model. In order to properly inform the court, this memorandum has been prepared, in plain English, as Defendant is filing pro se and this is a complex process that if done properly is quite simple. The complexity occurs when actions are taken by Plaintiff to continue an apparent fraud on the court and/or misleading the court with carefully worded filings.

<u>MERS</u>

To make the complex simple, one needs to understand the process based on the traditional Borrower / Lender relationship. **"Exhibit A"** reflects how the original relationship has evolved

2

with the insertion of a new player MERS. As can be seen by the **Exhibit A,** MERS provides
protection to Greenpoint and all its successors and assigns as it relates to interest granted in
Mortgage in Title. As Florida is a lien state, the borrower retains Title and upon payment in full,
would expect the protections given to Lender and its successor by MERS would flow back to
borrower ensuring a marketable clean title. The role of MERS was best described by MERS as
stated in the Opinion of the SUPREME COURT OF NEBRASKA **270 Neb. 529; 704 N.W.2d
784; 2005 Neb. LEXIS 177** *Mortgage Electronic Registration Systems, Inc., appellant, v.
Nebraska Department of Banking and Finance, appellee*. This statement by MERS was the
MERS merely "immobilizes the mortgage lien while transfers of the promissory notes and
servicing rights continue to occur."

The court further elaborates on the MERS role

> "To execute a MERS Mortgage, the borrower conveys the mortgage to MERS,
> who is acting as a contractual nominee. MERS becomes the recorded grantee, however,
> the lender retains the note and servicing right. The lender can then sell that note and
> servicing rights on the market and MERS records each transaction electronically on its
> files. [*8] When the mortgage loan is repaid, MERS, as agent grantor, conveys the
> property to the borrower. MERS represents that this system saves the lender and the
> consumer the transaction costs that would be associated with manually recording every
> transaction. Subsequently, counsel for MERS explained that MERS does not take
> applications, underwrite loans, make decisions on whether to extend credit, collect
> mortgage payments, hold escrows for taxes and insurance, or provide any loan servicing
> functions whatsoever. MERS merely tracks the ownership of the lien and is paid for its
> services through membership fees charged to its members. MERS does not receive
> compensation from consumers. "

As can be seen on **"Exhibit A",** Mortgage lenders hire MERS to act as their nominee for
mortgages, which allows the lenders to trade the mortgage note and servicing rights on the
market without recording subsequent trades with the various clerk of courts. As a borrower, trust
and confidence is placed in MERS to protect Borrowers interest in Title, insuring marketable
Title when the need arises for Borrower to have such protections. This specific duty of trust can
best be seen at the top of the umbrella. By providing this thin layer of trust, MERS and the
lending institution can profit from further efficiencies.

THE SECURITIZATION
3

Defendants mortgage was included in a securitization process which resulted in numerous successors and assigns to the original mortgage note. The process in a securitization transaction is illustrated on **"Exhibit B"** and reflects the role MERS assumes as it relates to the Mortgage in-Title assuming proper steps are taken. This shows the intent of a securitization transaction is for MERS properly transfer Title from Originator, to Sponsor, to Depositor, to a bankruptcy remote vehicle which is a Trust, while the Mortgage in Equity or "virtual Mortgage" follows the Note. Upon full satisfaction of the loan, MERS will be in a position to convey investors interest in marketable title back to borrower.

On the MERS website Defendants loan is listed as **Min: 1000138-0084378587-0** showing the current servicer as GMAC and the current investor as **Redwood Trust, Inc.. "Exhibit C"**

**"Exhibit D"** has been prepared based on SEC filed documents by SEQMT 2004-08, confirming the path of Defendants loan. Unfortunately based on the MERS system, the current rights to Mortgage In-Title was never transferred to the Trust - SEQMT2004-08. As this Trust was established in August of 2004, to comply with IRS regulations related to REMIC status, no new transfers can be made into the Trust and thus Mortgage In-Equity and Mortgage In-Title can never be synced thus creating an incurable event in a clouded title. The original intent in August of 2004, was for the title to be sold and assigned to the SEQMT2004-08, where the loan 0084378587 currently resides as can be seen on **"Exhibit D".** The intent was to create a bankruptcy remote vehicle that would be entitled to special tax privileges REMIC. This was accomplished by RWT Holdings, Inc. "as Seller" acquiring the interests from Greenpoint "Lender/Investor/Originator", then selling all its interest to the residential Funding Inc as "Depositor". The Depositor would then sell/assign all its interest in the mortgage loan to HSBC "the trustee" for the benefit of the certificateholders with Wells Fargo as the "Custodian" and "Master Servicer". Other key requirements are:

- As part of the above transaction, the rights of the Seller under each servicing agreement, will be assigned to the depositor, and the depositor in turn, will assign such rights to the trustee for the benefit of the certificateholders.

4

- The Depositor, on the closing date, will sell, transfer, assign, set over and otherwise convey without recourse to the trust fund.
- As Defendants loan was originally registered on the MERS System, a requirement of securitization was for the Depositor to cause the trustee to be recorded as the beneficial owner of the loans pursuant to the MERS rules for electronically tracking changes in ownership rights.

LEAVE TO AMEND COMPLAINT WOULD BE FUTILE:

To get around this incurable condition, Plaintiff, through counsel continue not to disclose on whose behalf they are servicing the Loan. As GMAC was initially engaged by the Originator as servicer, possibly the Sponsor, possibly the Depositor, possibly the master servicer and finally the SEQMT2004-08 Trust, Plaintiff is attempting to hide the problems in Title by representing themselves a) originally as the owner and now b) as servicer for the owner. The problem is GMAC, according to MERS, (as maintained by GMAC) is acting on behalf of Redwood Trust related to the Mortgage In-Title and appears to be acting on behalf of Trust SEQMT 2004-8, as it relates to the Note and Mortgage in Equity. The Amended complaint is still inaccurate as GMAC states "and the Mortgage as servicer for the owner" when it should state "and the Mortgage as servicer for the *owners*"

Further complicating this is the assignment filed by Plaintiff and Plaintiff's continued reliance on the accuracy of such assignment. It appears Plaintiff, along with counsel, believe the assignment is not fraudulent or misleading as it assigns rights from MERS acting on behalf of Greenpoint Mortgage to GMAC who may have the capacity to accept such assignment.

The assignment indicates MERS on behalf of GreenPoint, however, Greenpoint sold it rights in 2004 to a successor and therefore should state a) the current successor or holder or b) at a minimum Greenpoint along with its successors. GMAC may have standing to accept such

5

assignment, but on whose behalf. Based on the MERS system, GMAC is performing under its agreement with Redwood Trust as the Investor. This information is coming directly from the GMAC system , as under the MERS Quality Assurance Procedures Manual Release 21, dated February 27, 2012,

>"MERS places the responsibility on the servicer to maintain the accuracy of the information disclosed on the MERS website and such information needs to be consistent with information in the servicers systems".

It goes on to further state a requirement that:

>"Investor identified as the current investor on the MERS System **must be** the investor designated on your company's servicing system, if the investor is either an Option 1 or an Option 2 Member Investor".

Unfortunately, despite continuing to maintain the investor on the MERS site as Redwood Trust, GMAC contends also that **Wells Fargo to be the investor** as disclosed in its written response to the Florida "OFR" Office of Financial Regulation in regards to complaint 23488 as well as the second complaint 28708.

According to GMAC, both of these statements are true and correct facts .

Finally, Redwood Trust, Inc. who is the parent company of both the sponsor and depositor, does not believe it is the investor. Per an email dated February 10, 2011, from Paula Kwok, Investor Relations at Redwood Trust, Inc. in response to specific question regarding Defendants loan following a letter sent to the Board Redwood Trust Inc by Defendant, Redwood stated:

>"Unfortunately, we are not able to respond to your requests because (i) neither Redwood Trust nor any of its subsidiaries currently owns your mortgage note and (ii) neither Redwood Trust nor any of its subsidiaries was the originator of your mortgage. To our knowledge your mortgage note is owned by Sequoia Mortgage Trust 2004-8. The trustee of Sequoia Mortgage Trust 2004-8 is HSBC Bank USA, National Association. The servicer of your mortgage, who acts on behalf of Sequoia Mortgage Trust 2004-8 is GMAC

Between October 2010 and September 2011, Defendant contacted MERS to request information on the Investor. Despite these numerous requests to MERS, GMAC and Redwood, this information on investor has not changed on the MERS website, customer access, thus confirming that Redwood Trust, Inc. holds Mortgage In-Title. This is further reinforced by the Consent
6

Order issued in 2011 that required GMAC to follow the MERS Rules and ensure accuracy in reporting information. As this is 9 months later, it appears to confirm that Redwood Trust is the investor in the Mortgage In-Title.

## IN SUMMARY

A true and correct copy of an Affidavit of Patrick Hopper is attached as **"Exhibit F"** which contains facts leading up GMAC's decision not to move forward with a 363 bankruptcy sale for $540,000, at a time when Secured Creditor GMAC was owed $479,000 based on the filing in bankruptcy court. Two years later, Defendant now fully understands the reason for such decision and now questions the motives of GMAC.

MERS had a narrow fiduciary duty to protect borrower's Title to ensure it could eventually be conveyed back to borrower as a free and clear marketable title. Per the MERS system, the responsibility for maintaining the accuracy of the information in the MERS system lies with Plaintiff GMAC per its agreement with MERS. If all of the processes would have been followed, the MERS system works and the SEQMT 2004-8 Trust would be shown as the investor and Plaintiff GMAC would be acting on their behalf. To complete the process, the assignment could be done that would re-link the Mortgage In-Equity with Mortgage In- Title.

This did not occur as Plaintiff breached it's fiduciary duty to **protect title, an obligation** they took on this obligation from MERS, who assumed a role to protect all interest in Defendants Marketable Title. **"Exhibit E"** shows what happens when the Mortgage In-Title can't be re-synced with the Mortgage In-Equity. **Title is now clouded.** This was likely the reason why Plaintiff did not want to proceed in March 2010 with a 363 bankruptcy sale. GMAC and counsel now contend that a) GMAC approval was not required for sale (could not be done to clouded title), b) was not a short sale (at least 3 other offers presented to GMAC that would qualify as a short sale), or c) that bankruptcy protection under cde 363 was not available and could not be an option. Defendant has attached an affidavit **"Exhibit F"** briefly enlightening the court on the background of such statements related to this sale. As can be seen in such affidavit, a 363

7

process was possible, was under consideration by the Trustee and most importantly was deemed by GMAC bankruptcy counsel as a viable and sensible option.

What Defendant did not know, taking this approach could potentially expose the issue with Clouded Title and lead to the SEQMT 2004-8 Trust being declared as an unsecured creditor and possibly triggering other events. In most trust agreements, the servicer needs to reimburse the trust for damages created to the trust related to the outstanding principal for unsecured notes as well as may create REMIC disqualification and damages to servicer.

Secondly the recorded assignment was different than the representations made in bankruptcy court for relief of stay. This would create a huge exposure and lead to challenging Title. Finally, if foreclosure is done, GMAC appears to get paid its fees in full from the liquidation proceeds of the house and may be able to charge a higher servicing fee while in default. The benefit to GMAC as servicer, as well as legal counsel, the longer you can ride the process out and wear down the opposition, the more you can bill against the liquidation proceeds. This may make sense to cover up apparent negligence of the servicer to the Trust, however, is detrimental to the trust investors who are now seeing whatever residual recoveries are now being used by servicer and attorneys to defend them. It appears the actions of the servicer are not being done in the best interest of the trust investors.

It appears GMAC, as servicer, had significantly more exposure if it caused an event that clouded Defendants title, resulted in a reclass of GMAC claim in bankruptcy as unsecured, and most importantly, caused a situation that could remove the Trust status under REMIC (which could be in the millions).

In closing, Defendant has provided a **"Exhibit G"** which contains Excerpts from the written Testimony of Adam J. Levitin Associate Professor of Law Georgetown University Law Center Before the House Financial Services Committee Subcommittee on Housing and Community Opportunity November 18, 2010. This testimony voicing similar allegations would warrant a higher level of care from the court in granting Plaintiff's Motion.

8

### REQUEST FOR HEARING

### CONCLUSION

WHEREFORE, Defendant respectfully requests:

A.  the Court DENY Plaintiff's Request for Leave to Amend Complaint in its entirety, as Granting Plaintiff's Leave to Amend will continue a fraud on the court.

B.  The Court dismiss this proceeding, with Prejudice, for lack of standing

C.  The Court dismiss this proceeding, with Prejudice, for fraud on the court

D.  The Court schedule a hearing on Defendant's Summary Judgment and Quiet Title request.

E.  The Court award Defendant Patrick Hopper $25,000 for emotional distress

F.  The Court award Defendant Kelly (Hopper) Grams $25,000 for emotional distress.

G.  The Court Grant further and other relief in this cause as in its discretion might be just and proper.

Respectfully Submitted,

*P. J. Hy*

Patrick J Hopper
Pro se – Defendant

9

# *EXHIBIT A*



Umbrella Protection Theory

MERS insures Title is protected throughout the process and that duty of Trust flows back to Borrower.

# *EXHIBIT B*

## Mortgage Transfers with MERS



Private-label Residential Mortgage Securitization: Recording Innovations and Bankruptcy Remoteness
Nancy Wallace U.C. Berkeley March 11, 2011

If properly managed, the system appears to work properly.

11

# *EXHIBIT C*

*Select borrower type and enter borrower information to see Investor for MIN 1000138-0084378587-0.*

◉ **Investor for Individual Borrower**

> *Your entries may be either upper or lower case.*
>
> *Fields marked ✱ are required.*
>
> **Last Name:** hopper _____ ✱
>
> **SSN:** [____] - [____] - [_____] ✱
>
> ☐ *By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer. ✱*
>
> [ Submit ]

○ **Investor for Corporation/Non-Person Entity Borrower**

Servicer: <u>GMAC Mortgage, LLC</u>                                   Phone: **(800) 766-4622**
         **Waterloo, IA**

Investor: **Redwood Trust, Inc.**

[ Close Window ]    [ 10:31 AM 3/27/2012 ]

---

**This mortgage was originally done in MERS name and therefore should be accurate on investor. Redwood Trust Inc. is not the same as SEQMT2004-8**

12

# *EXHIBIT D*



**Legend:**
- ▨ Promissory note
- ▨ Mortgage
- ☐ Virtual Mortgage
- ▉ $
- ▉ MBS Certificates
- ▉ Fees

Sequoia Mortgage Trust
Mortgage Pass-Through Certificates
Distribution Date:    20-Jan-2011

**1=In-Equity**

Sequoia Mortgage Trust
Mortgage Pass-Through Certificates
Series 2004-8

## Foreclosure Loan Detail - All Mortgage Loans in Foreclosure during Current Period

| Group | Loan Number | Month Loan Entered FC | First Payment Date | State | LTV at Origination | Original Principal Balance | Current Actual Balance | Paid To Date |
|---|---|---|---|---|---|---|---|---|
| Pool 1 | 0084034248 | Nov-2010 | 01-Aug-2004 | UT | 80.00 | | 126,730.48 | 01-Jun-2010 |
| Pool 1 | 0084069152 | Jun-2010 | 01-Sep-2004 | MI | 70.00 | | 188,899.95 | 01-Jan-2010 |
| Pool 1 | 0084069582 | Jun-2010 | 01-Sep-2004 | MI | 70.00 | | 188,899.95 | 01-Jan-2010 |
| Pool 1 | 0084211523 | Jun-2010 | 01-Aug-2004 | FL | 70.00 | | 261,488.68 | 01-Aug-2009 |
| Pool 1 | 0084378587 | Dec-2009 | 01-Aug-2004 | FL | 80.00 | | 172,851.01 | 01-Apr-2009 |

**This note is owned by SEQMT2004-8 along with the virtual mortgage, but the Mortgage in Title resides with Redwood Trust.**

13

# *EXHIBIT E*



**Umbrella Protection Theory**

Who does GMAC represent? Redwood Trust? Depositor? Wells Fargo? SEQMT?

All of them

But only on behalf of SEQMT to have full standing
- Not sure as told OFR Wells Fargo,
- Not sure as tells MERS Redwood Trust

---

**The broken chain of Title has created a clouded Title that is not marketable. Unfortunately, GMAC's continued reliance on misleading documents further blurs this picture.**

14

**The broken chain of Title has created a clouded Title that is not marketable. Unfortunately, GMAC's continued reliance on misleading documents further blurs this picture.**

# *EXHIBIT F*

Exhibit F

IN THE CIRCUIT COURT OF THE 20th JUDICIAL CIRCUIT
OF FLORIDA, IN AND FOR COLLIER COUNTY
GENERAL JURISDICTION DIVISION

GMAC MORTGAGE, LLC                    Case #:    **09-11026- CA**

    Plaintiff,

vs.

PATRICK J. HOPPER et al

    Defendant(s).

---

## AFFIDAVIT OF PATRICK J. HOPPER
## IN FURTHER SUPPORT OF DENYING PLAINTIFF's LEAVE TO AMEND

BEFORE ME, the undersigned authority, duly authorized to administer oaths and take acknowledgments, this day appeared PATRICK J. HOPPER, the defendant in the above referenced proceeding, who after being duly cautioned and sworn, deposes and states:

1.  My name is PATRICK HOPPER, I am over the age of eighteen years, and I have personal knowledge of the matters stated herein.

2.  I executed a Note and Mortgage with Greenpoint in 2004 with MERS as a nominee for future transfers of title.

3.  I fully expected to obtain clear marketable title upon payment in full of the note whether through future refinancing, loan payoff or property sale.

15

4.  GMAC represented itself on or about August 27, 2009 as "Servicing Agent for HSBC Bank, USA, National Association, as Trustee for SEQMT 2004-08 ("Secured Creditor") when filing for relief of stay in bankruptcy case 8:09-bk-12702-CPM.

5.  In request for relief of stay ¶12 GMAC requested *"that the Court Order entered ..... with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement or other Loan Workout"* .

    <div style="text-align:right">Exhibit F</div>

6.  Around October 2009 I proactively reached out to GMAC bankruptcy counsel Oscar Gomez, of the firm David Stern and then he put me in contact with the loss mitigation group to protect the value of the asset. Our discussions related to the steps needed to be taken to maximize the value of the asset as I wanted to sell it at or greater than the first lien to remove any exposure from my ex-wife, whom I believed I had a fiduciary duty to protect, as she had quit claimed her interest in the property to me in 2009 yet was still on the original note. As I had agreed to indemnify her for any exposure, I proactively worked to sell the property at or greater than the first lien starting in November. I was also told by GMAC that I was the only person that could sell the home and that I still owned it despite relinquishing my interest to the bankruptcy trustee.

7.  In late December, GMAC as owner filed a foreclosure action. Despite not being served, I continued to market the home as my discussions with GMAC as well as Oscar Gomez, indicated the foreclosure could be stopped if the house was sold.

8.  By March of 2010, an offer was accepted for $540,000, which would have fully protected Secured Creditor GMAC who was owed $479,000 based on the filing in bk court.

9.  In trying to close the sale and obtain marketable Title, I was informed that I needed to contact other junior lien holders if I wanted to sell. I was also told to discuss with a title company.

10. As Title appeared to be an issue, I began researching the use of a 363 sale. I was informed this could only be done by the Trustee if a) you receive more money than debt, b) can challenge the validity of the liens or c) get consent and negotiation, i.e. carveout.

16

11. With the inability for the GMAC workout group to even consider using the bankruptcy 363 process to get the house sold within 20-30 days, or work with me to consummate the transaction, I contacted GMAC bankruptcy counsel Oscar Gomez, to discuss the options that existed to sell the property.

Exhibit F

12. Oscar Gomez agreed that going the foreclosure route did not make sense as the offer we had now could not be closed and that a foreclosure sale would result in reduced proceeds.

13. Oscar Gomez, GMAC's bankruptcy counsel, also agreed that a 363 sale was the best approach even if a small amount needed to be given from GMAC as a carveout to obtain the cooperation of the Trustee.

14. I agreed to contact the bankruptcy trustee, Doug Menchez, through my prior bankruptcy counsel to get him to agree with using the 363 process with a nominal carveout if needed.

15. Oscar Gomez agreed to contact his client GMAC and despite not getting an answer for almost 30 days, still believed the sale could proceed and responded in an email on May *13, 2010*

> *"I'm fully aware and am confident I will get their response by tomorrow. I am doing my best to try and see this through because I think it makes too much sense to not do. That being said the ball is in their court."*

16. I spent almost $4,000 working with my prior bankruptcy counsel, to get agreement from the Trustee and after numerous emails, phone calls with trustee Doug Menchez, on May 3, 2010, he agreed to pursue a 363 sale process but we still needed GMAC's agreement.

17. Unfortunately it took over 2 weeks for GMAC to get back to counsel and I had indicated to counsel that if necessary I would file a motion in Limine in both state court and bankruptcy court to stop the foreclosure as the ready to fund offer was withdrawn, however they indicated they would consider resubmitting if a solution could quickly be obtained and other parties where interested in the home.

18. Finally on May 21, 2010, GMAC bankruptcy counsel responded via email

17

*"Unfortunately, for whatever reason GMAC is unwilling to go through with the 363 sale in the bankruptcy. I received a response from them today indicating that is not something they are interested in pursuing. I wish you the best of luck with the outcome of this matter."*

19.   I continued to present numerous offers to GMAC counsel throughout the months of May 2010- September 2010 with no response.

20.   My motion in Limine was denied as it needed to be filed by my bankruptcy counsel on record and I no longer could afford to pay an attorney as I had been focusing on getting this asset sold and not reestablishing myself after my bankruptcy discharge.

Exhibit F

**FURTHER AFFIANT SAYETH NAUGHT**

_P. J. Hpr_
YOUR SIGNATURE

STATE OF ~~FLORIDA~~) *Pennsylvania*
COUNTY OF   *Allegheny*
The foregoing instrument was acknowledged before me this *21* day of *MARCH 2012* by *ANN F. RYAN*
PATRICK HOPPER who produced a Florida Driver's License and who did take an oath and acknowledge that he signed the foregoing declarations and the same is true and correct

_Ann Ryan_
Notary

**Seal**

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Ann F. Ryan, Notary Public
Sewickley Hills Boro, Allegheny County
My Commission Expires March 17, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

18

# ***EXHIBIT G***

**Excerpts from the written Testimony of Adam J. Levitin Associate Professor of Law Georgetown University Law Center** Before the House Financial Services Committee Subcommittee on Housing and Community Opportunity November 18, 2010

- Associate Professor of Law at the Georgetown University Law Center in Washington, D.C., teaching courses in bankruptcy, commercial law, contracts, and structured finance. Serves as Special Counsel to the Congressional Oversight Panel for the Troubled Asset Relief Program.

### All Statements are direct quotes from Written Testimony

1. Concerns about securitization chain of title also go to the standing question; if the mortgages were not properly transferred in the securitization process (including through the use of MERS to record the mortgages), then the party bringing the foreclosure does not in fact own the mortgage and therefore lacks standing to foreclose. If the mortgage was not properly transferred, there are profound implications too for investors, as the mortgage-backed securities they believed they had purchased would, in fact be non-mortgage-backed securities,

2. The financial incentives of mortgage servicers also encourage them to foreclose, rather than modify loans in many cases, even when modification would maximize the net present value of the loan for investors.

3. The chain of title problems are highly technical, but they pose a potential systemic risk to the US economy. If mortgages were not properly transferred in the securitization process, then mortgage-backed securities would in fact not be backed by any mortgages whatsoever.

4. Securitization is the legal apotheosis of form over substance, and if securitization is to work it must adhere to its proper, prescribed form punctiliously. The rules of the game with securitization, as with real property law and secured credit are, and always have been, that dotting "i's" and crossing "t's" matter, in part to ensure the fairness of the system and avoid confusions about conflicting claims to property. Close enough doesn't do it in securitization; if you don't do it right, you cannot ensure that securitized assets are bankruptcy remote and thus you cannot get the ratings and opinion letters necessary for securitization to work.

5. A second problem and potentially more serious problem relating to standing to foreclose is the issue of chain of title in mortgage securitizations.[77]

19

[77] Chain of title problems appear to be primarily a problem for private-label securitization, not for agency securitization because even if title were not properly transferred for Agency securities, it would have little consequence. Investors would not have incurred a loss as the result of an ineffective transfer, as their MBS are guaranteed by the GSEs or Ginnie Mae, and when a loan in an Agency pool defaults, it is removed from the pool and the owned by the GSE or Ginnie Mae, which is then has standing to foreclose.

<div style="text-align:right; border:1px solid black; display:inline-block">Exhibit G</div>

6.   securitization involves a series of transfers of both the note and the mortgage from originator to sponsor to depositor to trust. This particular chain of transfers is necessary to ensure that the loans are "bankruptcy remote" once they have been placed in the trust, meaning that if any of the upstream transferors were to file for bankruptcy, the bankruptcy estate could not lay claim to the loans in the trust by arguing that the transaction was not a true sale, but actually a secured loan.[78]

> [78] Bankruptcy remote has a second meaning, namely that the trust cannot or will not file of bankruptcy. This testimony uses bankruptcy remote solely in the sense of whether the trust's assets could be clawed back into a bankruptcy estate via an equity of redemption. The Uniform Commercial Code permits a debtor to redeem collateral at face value of the debt owed. If a pool of loans bore a now-above-market interest rate, the pool's value could be above the face value of the debt owed, making redemption economically attractive

7.   Recently, arguments have been raised in foreclosure litigation about whether the notes and mortgages were in fact properly transferred to the securitization trusts. This is a critical issue because the trust has standing to foreclose if, and only if it is the mortgagee. If the notes and mortgages were not transferred to the trust, then the trust lacks standing to foreclose.

8.   Trust Law
   a.   Trust law creates additional requirements for transfers. RMBS typically involve a transfer of the assets to a New York common law trust. Transfers to New York common law trusts are governed by the common law of gifts.
      i.   In New York, such a transfer requires actual delivery of the transferred assets in a manner such that no one else could possibly claim ownership.
      ii.   This is done to avoid fraudulent transfer concerns. For a transfer to a New York common law trust, the mere recital of a transfer,[90] there must be delivery in as perfect a manner as possible.[91]
   b.   Similarly, an endorsement in blank might not be sufficient to effectuate a transfer *to a trust* because endorsement in blank turns a note into bearer paper to which others could easily lay claim.

9.   *Private Contract + Trust Law*
   a.   Trust law and private contract law combine to make a much more rigid set of transfer requirements that contract law would by itself. New York law provides that a Trustee's authority is limited to that provided in the trust documents.[94]

   b.   New York law also provides that any transfer in contravention of the trust documents is void.[95] Therefore, if the PSA—the trust document—says that the transfer must be done in a certain way and the transfer did not comply, the transfer is void, irrespective of whether it would comply with the Uniform Commercial Code or other law.

20

c. The trust document creates a higher level of conduct to which the transfer must comply. PSAs require a specific form of transfer.

> Exhibit G

d. PSAs contain a provision that calls for delivery to the trustee for every mortgage loan in the deal of the original Mortgage Note bearing all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee, endorsed *"Pay to the order of_____, without recourse"* and signed (which may be by facsimile signature) in the name of the last endorsee by an authorized officer.[98]

e. The reason for requiring this complete chain of endorsement from originator up through the Depositor before a final endorsement to the trust is to provide a clear evidentiary basis for all of the transfers in the chain of title in order to remove any doubts about the bankruptcy remoteness of the assets transferred to the trust.

21

Certificate of Service      *w/o Attachments*

I hereby certify that on June 12, 2012, I served the foregoing by first class United States mail, postage prepaid, upon the following parties:

Counsel to the Debtors,
Morrison & Foerster LLP,
1290 Avenue of the Americas,
New York, New York 10404
Attn: Larren M. Nashelsky, Gary S. Lee and
Norman S. Rosenbaum

Counsel to the Creditors' Committee,
Kramer Levin Naftalis & Frankel LLP,
1177 Avenue of the Americas
New York, NY 10036,
Attn: Kenneth H. Eckstein
        Douglas H. Mannal;

Office of the United States Trustee,
33 Whitehall Street, 21st Floor,
New York, NY 10004
Attn: Brian S. Masumoto, Esq.

Office of the US Attorney General;
U.S. Department of Justice
US Attorney General
Eric H. Holder, JR.
950 Pennsylvania Ave NW
Washington DC 20530-0001

Office of the New York Attorney General;
Eric T Schneiderman
The Capital
Albany NY 12224-0341

Office of the US Attorney for the Southern
District of New York;
Attn: Joseph Cordaro
Civil Division
86 Chambers Street. 3rd Floor
New York, NY 10007

Residential Capital LLC
Tammy Hamzehpour
1100 Virginia Dr
Ft Washington, PA 19034

Counsel for the United States of America
Attn: Glenn D. Gillett
U.S. Department of Justice, Civil Division
1100 L Street NW, Room 10018
Washington, DC 20005

Jose D. Vega (Florida Bar No. 88872)
Christian W. Hancock (Florida Bar No
643521)
Bradley Arant Boult Cummings LLP
1819 Birmingham, Al 35203

GMAC Mortgage / Ally Financial Inc.
Mr. Daniel Soto
Chief Compliance Officer
440 South Church Street
Charlotte, NC 28202

Kelly L. Grams (Hopper)
2665 Leroy Lane
West Bloomfield, Mi 48324