**<u>EXHIBIT 2</u>**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

~~INTERIM~~<u>FINAL</u> ORDER
UNDER SECTIONS 105, 361, 362, 363, AND 364
OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULES 2002, 4001, 6004, AND 9014 (I) AUTHORIZING
THE DEBTORS TO OBTAIN POSTPETITION FINANCING ON
A SECURED SUPERPRIORITY BASIS, (II) AUTHORIZING THE
DEBTORS TO USE CASH COLLATERAL, <u>AND</u> (III) GRANTING
ADEQUATE PROTECTION TO ADEQUATE PROTECTION PARTIES ~~AND (IV)~~
~~PRESCRIBING THE FORM~~
~~AND MANNER OF NOTICE AND SETTING TIME FOR THE FINAL HEARING~~

Upon the motion <u>(as amended, revised or supplemented prior to the date hereof, the</u> <u>"Motion")[2]</u>, dated May 14, 2012, ~~(the "*Motion*")~~[3] of the above-captioned debtors and debtors in

---

[1]    The Debtors are:  Ditech, LLC; DOA Holding Properties, LLC; DOA Holdings NoteCo, LLC; DOA Properties IX (Lots-Other), LLC; EPRE LLC; Equity Investment I, LLC; ETS of Virginia, Inc.; ETS of Washington, Inc.; Executive Trustee Services, LLC; GMAC Model Home Finance I, LLC; GMAC Mortgage USA Corporation; GMAC Mortgage, LLC; GMAC Residential Holding Company, LLC; GMACM Borrower LLC; GMACR Mortgage Products, LLC; GMAC-RFC Holding Company, LLC; GMACRH Settlement Services, LLC; HFN REO SUB II, LLC; Home Connects Lending Services, LLC; Homecomings Financial, LLC; Homecomings Financial Real Estate Holdings, LLC; Ladue Associates, Inc.; Passive Asset Transactions, LLC; PATI A, LLC; PATI B, LLC; PATI Real Estate Holdings, LLC; RAHI A, LLC; RAHI B, LLC; RAHI Real Estate Holdings, LLC; RCSFJV2004, LLC; Residential Accredit Loans, Inc.; Residential Asset Mortgage Products, Inc.; Residential Asset Securities Corporation; Residential Capital, LLC; Residential Consumer Services of Alabama, LLC; Residential Consumer Services of Ohio, LLC; Residential Consumer Services of Texas, LLC; Residential Consumer Services, LLC; Residential Funding Company, LLC; Residential Funding Mortgage Exchange, LLC; Residential Funding Mortgage Securities I, Inc.; Residential Funding Mortgage Securities II, Inc.; Residential Funding Real Estate Holdings, LLC; Residential Mortgage Real Estate Holdings, LLC; RFC Asset Holdings II, LLC; RFC Asset Management, LLC; RFC Borrower LLC; RFC Construction Funding, LLC; RFC SFJV-2002, LLC; and RFC-GSAP Servicer Advance, LLC.

[2]    <u>Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Motion.</u>

[2]    ~~Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Motion.~~

possession (collectively, the "**Debtors**") filed in these chapter 11 cases (the "**Chapter 11 Cases**")[3] for entry of **the** interim ~~and final orders~~**order entered May 16, 2012 [Docket No. 89] (the "Interim Order") and this final order (this "Final Order")** under sections 105, 361, 362, 363(c), and 364 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking:

(I)     authorization for

(a) GMAC Mortgage, LLC and Residential Funding Company, LLC (collectively, the "**Borrowers**") to use Cash Collateral and all other Prepetition Collateral (each as defined below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, as set forth herein;

(b) the Debtors to provide adequate protection to Ally Financial Inc. ("**AFI**")**:**

(~~x~~**i**) as lender under the Amended and Restated ~~Credit~~**Loan** Agreement, dated as of December 30, 2009 (as amended, supplemented or otherwise modified, the "**AFI Revolver Loan**"), among the Borrowers, Residential Capital, LLC, GMAC Residential Holding Company, LLC, GMAC-RFC Holding Company, LLC, and Homecomings Financial, LLC (together with certain other affiliates of the Borrowers as guarantors or obligors, collectively, the "**AFI Revolver Guarantors**"), AFI as initial lender (the "**AFI Revolver Lender**") and agent for the AFI Revolver Lender, and Wells Fargo Bank, N.A., as ~~F~~**f**irst ~~P~~**p**riority ~~C~~**c**ollateral ~~A~~**a**gent, and

---

[3]   ~~These Chapter 11 Cases were commenced on May 14, 2012 (the "*Petition Date*").~~

(~~y~~**ii**) as secured party under the Amended and Restated First Priority Pledge and Security Agreement and Irrevocable Proxy dated as of December 30, 2009 ~~(as amended, supplemented or otherwise modified, the "*AFI Revolver Security Agreement*,"~~**and the Real Estate Subsidiary Pledge and Security Agreement and Irrevocable Proxy dated as of December 30, 2009 among certain affiliates of Residential Capital, LLC, as grantors, Wells Fargo Bank, N.A., as collateral agent, AFI (f/k/a GMAC Inc.), as lender agent, U.S. Bank National Association, as trustee under the 2010 indenture, and U.S. Bank National Association, as trustee under the 2015 indenture (all of the foregoing security agreements, as amended, supplemented, or otherwise modified,** and together with **any other security documents executed  in connection with** the AFI Revolver Loan, collectively, the "*AFI Revolver*"~~"), among the Borrowers, the AFI Revolver Guarantors and certain other affiliates of the Borrowers, the AFI Revolver Lender, as agent for the AFI Revolver Lender, and Wells Fargo Bank, N.A. as First Priority Collateral Agent and Collateral Control Agent;~~ *Security Agreements***", and together with the AFI Revolver Loan, collectively, the "*AFI Revolver*"),**

(c) the Debtors to provide adequate protection to AFI**:**

(~~x~~**i**) as lender under the Amended and Restated Loan Agreement, dated as of December 30, 2009 (as amended, supplemented or otherwise modified, the "*AFI LOC Loan*"), by and among GMAC Mortgage, LLC and Residential Funding Company, LLC, as borrowers (in such capacity,

3

the "**AFI LOC Borrowers**"), Residential Capital, LLC, RFC Asset Holdings II, LLC, Passive Asset Transactions, LLC, GMAC Residential Holding Company, LLC, GMAC-RFC Holding Company, LLC, Homecomings Financial, LLC, and Equity Investment I, LLC as guarantors (the "**AFI LOC Guarantors**"), AFI as lender (the "**AFI LOC Lender**" and, together with the AFI Revolver Lender, collectively, the "**AFI Lender**") and agent for the AFI LOC Lender, and

(~~v~~**ii**) as a secured party under the Amended and Restated Pledge and Security Agreement and Irrevocable Proxy ~~(as amended, supplemented or otherwise modified,~~ the "~~**AFI LOC Security Agreement**,~~" and together ~~with the AFI LOC Loan, collectively~~, the "~~**AFI LOC**~~"), dated as of December 30, 2009, among the Borrowers and **certain of** the AFI LOC Guarantors**, as grantors**, and the AFI LOC Lender, ~~GMAC~~**Ally** Investment Management~~, LLC, as secured parties~~ **LLC (f/k/a GMAC Investment Management, LLC), as secured parties, and the Amended and Restated Pledge and Security Agreement and Irrevocable Proxy dated as of December 30, 2009 among RFC Assets Holdings II, LLC, Equity Investment I, LLC, Passive Asset Transactions, LLC, Residential Capital, LLC, Residential Funding Company, LLC, GMAC Mortgage, LLC, and certain of their affiliates from time to time parties hereto, as grantors, and AFI (f/k/a GMAC Inc.), as a secured party (all of the foregoing security agreements,** *as amended, supplemented or otherwise modified,* **and together with any other security documents executed in connection**

4

*with the AFI LOC Loan, collectively* **the "*AFI LOC Security Agreements*," and together with the AFI LOC Loan, collectively, the "*AFI LOC*")**; and

(d) the Debtors to provide adequate protection to**: (i)** the holders (the "*Junior Secured Noteholders*") of the 9.625% Junior Secured Guaranteed Notes due 2015 (the "*Junior Secured Notes*") issued under that certain Indenture (the "*Indenture*" and, together with the Junior Secured Notes, the Security Documents (as defined in the Indenture) and all other documents executed in connection therewith, the "*Junior Secured Notes Documents*") dated as of June 6, 2008, among Residential Capital, LLC, as issuer, GMAC Residential Holding Company, LLC, GMAC-RFC Holding Company, LLC, GMAC Mortgage, LLC, Residential Funding Company, LLC, and Homecoming Financial, LLC as guarantors (the "*Junior Secured Notes Guarantors*" and, together with the AFI Revolver Guarantors and the AFI LOC Guarantors, the "*Guarantors*"), and U.S. Bank National Association, as trustee (the "*Trustee*") for the benefit of the Junior Secured Noteholders; (ii) the Trustee, as trustee under the Indenture; and (iii) Wells Fargo Bank, N.A., as collateral agent *under the Junior Secured Note Documents* (the "*Collateral Agent*" and, together with the Junior Secured ~~Parties~~**Noteholders** and the Trustee, the "*Junior Secured Parties*") *under the Junior Secured Note Documents*.  All obligations of the Debtors arising under the Junior Secured Notes Documents shall collectively be referred to herein as the "*Junior Secured Notes Obligations*";

(II)     authorization for the Debtors' waiver and release of any right to surcharge against the Prepetition Collateral (hereinafter defined) and the AFI DIP Loan Collateral (hereinafter defined) pursuant to section 506(c) of the Bankruptcy Code, as set forth herein;

(III)     authorization for the Debtors' waiver and release of any right to seek a court order invalidating or otherwise voiding AFI Lender's and the Junior Secured Parties' security interests in their respective collateral pursuant to section 552(b)(1) of the Bankruptcy Code, as set forth herein;

(IV)     authorization for the AFI LOC Borrowers to request postpetition draws under the AFI LOC in an aggregate principal amount not to exceed $~~150~~**220** million **(the "AFI DIP Loan")**, no more than $85 million of which ~~will be~~**was made** available upon the entry of the Interim Order ~~(as hereinafter defined)~~ and the balance of which will be available upon the entry of ~~the Final Order (as hereinafter defined)~~**this Final Order subject to the terms of the Ally DIP *Amendment to the AFI LOC* dated as of May 25, 2012 and filed as Exhibit C [Docket No. 174] to the Motion (the "*AFI LOC Amendment*") and this Final Order**, *provided* ~~that up to an additional $70 million in postpetition draws may be made available to the AFI LOC Borrowers under the AFI LOC if the AFI LOC Borrowers and AFI agree upon written mutually satisfactory terms for such incremental $70 million before the Final Hearing, *provided further*~~ that the aggregate amount of AFI LOC prepetition and postpetition draws (plus any unpaid~~,~~ interest, expenses~~,~~ or other costs payable thereunder) **authorized under this Final Order** may not exceed $600 million ~~(the "*AFI DIP Loan*") pursuant to the terms of the Eighth *Amendment to the AFI LOC* (the "*AFI LOC Amendment*"), the principal terms of which are included on the term sheet that is attached the Motion as **Exhibit A**, and the terms of the Interim Order and Final Order (as hereinafter defined); and~~**;**

(V)    authorization for the AFI LOC Borrowers to execute the AFI LOC

Amendment, and perform such other and further acts as may be required in connection with the

AFI LOC Amendment and the AFI LOC; **and**

(VI)    the grant of superpriority administrative expense claims to the AFI Lender

in its capacity as the lender under the AFI DIP Loan (in such capacity, the "***AFI DIP Lender***");

~~(VII)    to schedule, pursuant to~~**WHEREAS, on May 16, 2012, the United States**

Bankruptcy ~~Rule 4001, an interim hearing (the "*Interim Hearing*") for this Court to consider entry~~

~~of the interim order~~**Court for the Southern District of New York** (the "***Court***") **entered the**

Interim Order~~") in substantially the form annexed to the Motion~~ authorizing the Borrowers

~~(collectively, the "*Loan Parties*")~~ to (a) use Cash Collateral and granting adequate protection to

AFI Lender and the Junior Secured Parties (collectively, as applicable, the "***Adequate Protection***

***Parties***"), and (b) to obtain postpetition secured superpriority financing under the AFI DIP Loan to

fund~~,~~ in a manner consistent with past practices, the repurchase of whole loans from Ginnie Mae

pools in order to (i) avoid GMAC Mortgage being in violation of delinquency triggers applicable

to it under Chapter 18 of the Ginnie Mae Guide, (ii) effect foreclosures, conveyances or other

normal course loss mitigation activities with respect to the related properties in connection with

the submission of HUD Claims (as hereinafter defined), and (iii) allow for trial modifications

under programs implemented by the Debtors for which the related loans and borrowers are

qualified, in each case, pursuant to the terms of the Interim Order and the Final Order;

~~(VIII)    to schedule~~**WHEREAS, the Court scheduled**, pursuant to Bankruptcy Rule 4001,

a final hearing (the "***Final Hearing***") for thi~~s~~**s** Court to consider entry of the ~~final order (the "~~Final

Order~~") in substantially the form annexed to the Motion~~ authorizing the ~~Loan Parties~~**Borrowers**

on a final basis to use Cash Collateral and obtain the AFI DIP Loan, and providing such additional

relief on a final basis as set forth ~~therein.~~**in the Motion;**

**WHEREAS, the Debtors have filed a notice of the Proposed Final Order (the**

**"*Supplemental Notice*"), dated June 15, 2012; and**

**WHEREAS**, the ~~Interim~~**Final** Hearing was held by th~~is~~**e** Court on ~~May 14,~~**June 18,** 2012

at ~~4~~**10**:00 ~~p~~**a**.~~a~~m.

**NOW THEREFORE**, upon the record established at the Interim ~~Hearing~~**and Final**

**Hearings**, and all objections to the entry of th~~is~~**e** Interim **Order and this Final** Order having been

withdrawn, resolved or overruled by the Court, and after due deliberation and consideration, and

sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

**1.       *Petition Date.*  On May 14, 2012 (the "*Petition Date*"), each of the Debtors filed**

**separate voluntary petitions under chapter 11 of the Bankruptcy Code in the Court**

**commencing the Chapter 11 Cases.**

**2.       *Debtors-in-Possession.* The Debtors have continued in the management and**

**operation of their businesses and property as debtors-in-possession pursuant to sections**

**1107 and 1108 of the Bankruptcy Code. No trustee has been appointed in these cases.  On**

**May 16, 2012, the United States Trustee appointed the Creditors' Committee in these Cases.**

**3.**       ~~1.~~*Jurisdiction.*  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**4.**       ~~2.~~*Notice.*  Notice of the Motion, the relief requested therein and the ~~Interim~~**Final**

Hearing was given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the

8

United States Trustee for the Southern District of New York; (b) the office of the United States Attorney General; (c) the office of the New York Attorney General; (d) the office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Administrative Agent and its counsel; (h) the Collateral Agent; (i) Barclays Bank PLC ("*Barclays*"), as the Administrative Agent under**administrative agent, collateral agent, syndication agent, documentation agent, bookrunner and lead arranger for** the Barclays DIP Facility[3] **and counsel to Barclays**; (j**h**) The Bank of New York Mellon, as indenture trustee under the Pre-Petition GSAP Facility; (k**i**) Barclays Bank PLC, as administrative agent under the Pre-Petition GSAP Facility; (l**j**) Ally Financial, Inc. and its counsel, Kirkland & Ellis LLP; (m**k**) Ally Bank and its counsel, Kirkland & Ellis LLP; (n**l**) Citibank, N.A.**,** as secured lender under the MSR Facility; (o**Amended and Restated Loan and Security Agreement, dated as of June 30, 2010 (as amended, supplemented or otherwise modified, including pursuant to Amendment Number Ten, dated March 30, 2012 ( the "*Citibank MSR Facility*"); (m**) U.S. Bank National Association, as Trustee for the Junior Secured Notes, and its counsel, Kelley Drye & Warren LLP**; (n) Wells Fargo Bank, N.A.,** as collateral agent for the Prepetition Junior Secured Notes, as collateral agent for the Prepetition Ally**AFI** Revolver, and as collateral control agent under the Intercreditor Agreement, dated as June 6, 2008; (q) BMMZ, as buyer under the Pre-Petition Ally Repo Facility; (r**o**) Fannie Mae; (s**p**) Freddie Mac; (t**q**) Ginnie Mae; (u**r**) servicers and sub-servicers under the Designated Servicing Agreements and the Specified Servicing Agreements (each term as defined in the **Barclays** DIP Credit Agreement**Facility**); (v**s**) the MBS Trustees (as defined in the **Barclays** DIP Credit Agreement**Facility**); (x**t**) Nationstar Mortgage LLC and its counsel; and

---

[3]   The "*Barclays DIP Facility*" shall mean the DIP Facilities (as defined in the Barclays DIP Order).

(y**(u)** counsel for the official committee of unsecured creditors of the Debtors (the "***Creditors'*** ***Committee***"); and (v**)** the parties included on the Debtors' list of fifty (50) largest unsecured creditors (collectively, the "***Notice Parties***").  The Court finds that, in view of the facts and circumstances, such notice**, together with the Supplemental Notice,** is sufficient and no other or further notice need be provided.

**5.**    3.*Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 28 below), the Debtors admit, stipulate and agree that:

(a)    the Debtors' proposed**intend to propose a** chapter 11 plan (the "***Plan***") **that** incorporates a**the** settlement between AFI and the Debtors of all claims held by AFI and Ally Bank (together with their subsidiaries and affiliates, excluding Residential Capital, LLC and its subsidiaries, "***Ally***") against the Debtors, and of all claims held by the Debtors against Ally, **including claims, defenses, or causes of action against the AFI LOC Lender and the AFI Revolver Lender with respect to the AFI LOC or the AFI Revolver (such claims related to the AFI LOC or AFI Revolver, the "*Ally Debt Claims*"),** as set forth in the Settlement and Plan Sponsor Agreement dated as of May 14, 2012 (the "***Ally Settlement Agreement***"), and**, as provided in the Ally Settlement Agreement,** the Debtors have agreed to use commercially reasonable efforts to seek thi**se** Court's approval of the Plan (and the Ally Settlement Agreement, whether under the Plan or otherwise);

(b)    As of the Petition Date, the aggregate principal amount outstanding (i) under the AFI Revolver was at least $749,000,000.**747,000,000,** (ii) under the AFI LOC was at least $380,000,000, and (iii) under the Junior Secured Notes Documents was at least $2,120,452,000, in each case plus accrued and unpaid interest thereon, reimbursement obligations

10

in respect thereof and additional fees and expenses and other amounts now or hereafter due**, including** under the Junior Secured Notes Documents (including any fees and expenses of the Junior Secured Parties' attorneys and financial advisors that are chargeable or reimbursable under the Junior Secured Notes Documents) and other obligations incurred in connection therewith (collectively, the "***Prepetition Obligations***");

(c)    the Junior Secured Notes Obligations constitute legal, valid and binding obligations of ~~the Loan Parties~~ **Residential Capital LLC and the Junior Secured Notes Guarantors**, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(d)    no portion of the Junior Secured Notes **Obligations** is subject to avoidance, recharacterization, recovery, subordination, setoff, or counterclaim pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(e)    the Debtors have granted liens and security interests to the AFI Lender pursuant to and in connection with the AFI LOC, including the liens and security interests in **the following:**

**(i)** ~~(x)~~ certain of the accounts described in the *~~Amended Interim~~**Final** Order (A) Authorizing, But Not Directing, the Debtors to Continue Their Existing Cash Management System, Bank Accounts and Business Forms, (B) Granting Postpetition Intercompany Claims Administrative Expense Priority, (C) Authorizing Continued Investment of Excess Funds in Investment Accounts and (D) Authorizing Continued Intercompany Arrangements and Historical Practices*, which was entered by th~~is~~**e** Court on ~~May 15,~~**June 12,** 2012 [Docket No. ~~69~~**309**] (the "***~~Interim~~Final*** *Cash Management Order*"), **including account number**

**796682920 established with JPMorgan Chase Bank, N.A. (the "*Ally DIP Account*"):** and

**(ii)** ~~(y) in the~~ other personal and real property constituting "Collateral" under, and as defined in, the AFI LOC (the "*AFI LOC Collateral*"), and such liens and security interests are presently subject and subordinate only to (A) the Carve Out, as defined in paragraph ~~14~~**16**(g), (B) certain liens and security interests granted to secure the Adequate Protection Obligations (as defined in paragraph ~~14~~**16** below), and (C) certain liens and security interests granted to secure the AFI DIP Loan;

(f)      the Debtors have granted liens and security interests to **secure** the AFI Lender pursuant to and in connection with the AFI Revolver, including the liens and security interests in certain of the accounts described in the ~~Interim~~**Final** Cash Management Order, and in the other personal and real property constituting "Collateral" under, and as defined in, the AFI Revolver (the "*AFI Revolver Collateral*," and together with the AFI LOC Collateral, collectively, the "*AFI Lender Collateral*"), and such liens and security interests are presently subject and subordinate only to (A) the Carve Out, as defined in paragraph ~~14~~**16**(g), and (B) certain liens and security interests granted to secure the Adequate Protection Obligations (as defined in paragraph ~~14~~**16** below);

(g)      the liens and security interests granted to **secure** the Junior Secured Parties pursuant to the Junior Secured Notes Documents and in connection with Junior Secured Notes (the "*Junior Secured Notes Liens*") are valid, binding, perfected, and enforceable first priority liens on and security interests in the personal and real property constituting "Collateral" under, and as defined in, the Junior Secured Notes Documents (together with the AFI Lender Collateral, the

ny- 1040970K&E 22457667

"***Prepetition Collateral***") and (i) were granted to, or for the benefit of, the Junior Secured Parties for fair consideration and reasonably equivalent value; (ii) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iii) are subject and subordinate only to (A) the liens and security interests granted to the AFI Lender under the AFI Revolver, all subject to the terms and conditions of the Intercreditor Agreement, dated as of June 6, 2008 (as amended, the "***Intercreditor Agreement***" and, together with the instruments and agreement evidencing or providing for the issuance of the Prepetition Obligations, the "***Existing Agreements***"), (B) the Carve Out, and (C) the liens and security interests granted to secure the Adequate Protection Obligations (as defined in paragraph ~~14~~**16** below); ~~and~~

(h)    the ~~C~~**c**ollateral securing the Junior Secured Notes Obligations includes, among others, the ~~categories of assets set forth on~~ **Exhibit A** ~~hereto~~**Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order) or any residual value therefrom and the residual value of the Initial Purchased Assets securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the equity interests of the entities owning the equity interests of the owners of such Initial Purchased Assets, and the categories of assets under the columns labeled "Ally Revolver" and "Blanket" set forth on Exhibit A to this Final Order**;

(i)    no setoffs, recoupments, offsets, defenses or counterclaims to any of the Junior Secured Notes Obligations exist, and no portion of the Junior Secured Notes Obligations or any payments made to any or all of the Junior Secured Parties are subject to avoidance, recharacterization, recovery, subordination, attach, recoupment, offset, counterclaim, defense, or

ny- 1040970K&E 22457667

"claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except for the priming contemplated herein;

(j)     there are no claims, defenses, or causes of action against the Junior Secured Parties with respect to the Junior Secured Notes Documents (the "***Junior Secured Parties Claims***");

(k)     subject to the reservation of rights set forth in paragraph ~~26~~**27** below, each Debtor and its estate shall be deemed to have forever waived, discharged and released each of the Junior Secured Parties in their respective capacities as such and their respective affiliates, members, managers, equity security holders, agents, attorneys, financial advisors, consultants, officers, directors, and employees of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights, whether arising at law or in equity, relating to and/or otherwise in connection with the Junior Secured Notes Obligations and the Junior Secured Notes Liens, or the debtor creditor relationship between the Junior Secured Parties and the Debtors, including, without limitation, (x) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law or municipal law, and (y) any right or basis to challenge or object to the amount, validity or enforceability of the Junior Secured Notes Obligations, or the validity, enforceability, priority or non-avoidability of the Junior Secured Notes Liens securing the Junior Secured Notes Obligations;

(l)     the Adequate Protection Parties retain, and have not waived or otherwise prejudiced, any of their rights, claims, defenses or counterclaims at law or in equity with respect to the Debtors or any other Person or Governmental Unit (each such term as defined in the Bankruptcy Code); and

ny- 1040970K&E 22457667

(m)    prior to the Petition Date, the AFI LOC Borrowers funded the repurchase of whole loans (the "**Repurchased Loans**") from Ginnie Mae pools in order (i) to avoid GMAC Mortgage being in violation of delinquency triggers applicable to it under Chapter 18 of the Ginnie Mae Guide, (ii) to effect foreclosures, conveyances or other normal course loss mitigation activities of the related properties in connection with the submission of HUD Claims (as defined below), and (iii) to allow for trial modifications under programs implemented by the Debtors for which the related loans and borrowers are qualified (collectively, the "**GNMA Buyouts**"), and for additional reasons determined at the Debtors' discretion. Following the GNMA Buyouts, the AFI LOC Borrowers submit a claim to the Secretary of the U.S. Department of Housing and Urban Development (such a claim, a "**HUD Claim**") for payments of amounts related to the Repurchased Loans insured by the Federal Housing Administration (the "**FHA**") or guaranteed by the U.S. Department of Veterans Affairs ("**VA**"), as applicable. Following a period of review and processing of a HUD Claim, it is typically converted to cash that is remitted to the AFI LOC Borrowers. The AFI LOC Borrowers will continue to fund GNMA Buyouts with the proceeds of the AFI DIP Loan on a postpetition basis and with Cash Collateral (as hereinafter defined) under the AFI Revolver Loan and submit HUD Claims in the ordinary course of business.

**6.**    4. *Certain Findings Regarding the Use of Cash Collateral and the AFI DIP Loan*.

(a)    Good cause has been shown for entry of this Interim**Final** Order. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of Cash Collateral. The use of Cash Collateral, will, therefore, help preserve the going concern value of the Debtors and their estates and will enhance the prospects for successful Chapter 11 Cases.

(b)    The Debtors ~~have an immediate~~ need to obtain the **full amount of the** financing available under the AFI DIP Loan in order to permit the orderly continuation of the operation of their businesses, including the continued funding of **the** GNMA Buyouts to ensure their compliance with the ~~GNMA~~**Ginnie** Mae Guide and maintain their current issuer status.  The Debtors' access to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)    The Debtors are unable to obtain financing on more favorable terms from sources other than the AFI DIP Lender under the AFI DIP Loan.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the AFI DIP Lender, subject to the Carve Out (as defined below) as provided for herein, the AFI DIP Liens (as defined below) and the AFI Superpriority Claims (as defined below) upon the terms and conditions set forth in this ~~Interim~~**Final** Order and in the AFI DIP Loan.

(d)    ~~The~~**Based on the record established in the Court at the Interim and Final Hearings, the** terms of the AFI DIP Loan are fair and reasonable, **and** reflect the Debtors' **and their respective managers' and directors'** exercise of prudent business judgment consistent with their fiduciary duties.  **Entry of this Final Order is in the best interests of the Debtors' estates and creditors.**

(e)    The AFI DIP Loan has been negotiated in good faith and at arm's length among the Debtors and the AFI DIP Lender, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the AFI DIP Loan **as well as the rights granted in the Interim Order**, including (i) all future draws remitted to the AFI LOC Borrowers pursuant

to the AFI DIP Loan, and (ii) any other obligations under the AFI DIP Loan (clauses (i) and (ii) collectively, the "***AFI DIP Obligations***"), shall be deemed to have been extended by the AFI DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this ~~Interim~~**Final** Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)    Based on the record established in the Court at the Interim ~~Hearing~~**and Final Hearings**, the terms of the Debtors' use of Cash Collateral appear to be fair and reasonable, and reflect the Debtors' and their respective managers' and directors' exercise of prudent business judgment consistent with their fiduciary duties.  Entry of this ~~Interim~~**Final** Order is in the best interests of the Debtors' estates and creditors.

(g)    The terms of the use of the Cash Collateral have been the subject of extensive negotiations conducted in good faith and at arm's-length among the Debtors and the Adequate Protection Parties, and the Adequate Protection Parties are found to have acted in "good faith" in connection with the negotiation and entry of this ~~Interim~~**Final** Order, and are entitled to the protections provided to good faith lenders under section 364(e) of the Bankruptcy Code.

(h)    The Debtors have requested entry of this ~~Interim~~**Final** Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Absent granting the relief set forth in this ~~Interim~~**Final** Order, the Debtors' estates will be ~~immediately and~~ irreparably harmed.  Consummation of the AFI DIP Loan in accordance with this ~~Interim~~**Final** Order is therefore in the best interest of the Debtors' estates.

**7.** ~~5. Authorization~~ *Authorization for the AFI LOC Amendment and for Continued Borrowings Under the AFI LOC.*

(a)     The Debtors are hereby authorized and directed to continue to perform under the AFI LOC.  Further, the AFI LOC Borrowers **and AFI LOC Guarantors** are hereby authorized to execute **and perform under** the AFI LOC Amendment.  Each of the AFI LOC Borrowers is hereby authorized to borrow money pursuant to the AFI DIP Loan, and the AFI ~~DIP Loan~~**LOC** Guarantors (as defined in the AFI LOC Amendment) are hereby authorized to unconditionally guaranty (on a joint and several basis) such borrowings and the AFI LOC Borrowers' joint and several obligations with respect to such borrowings up to an aggregate principal or face amount not to exceed $~~150 million, no more than $__ of which will be available upon the entry of this Interim Order and the balance of which will be available upon the entry of the Final Order, provided that up to an additional $70 million in postpetition draws may be made available to the AFI LOC Borrowers under the AFI LOC if the AFI LOC Borrowers and AFI agree upon written mutually satisfactory terms for such incremental $70 million before the Final Hearing, provided further~~**220 million; *provided*** that the aggregate amount of AFI LOC prepetition and postpetition draws (plus any unpaid~~,~~ interest, expenses**,** or other costs payable thereunder) authorized under th~~e~~**is** Final Order may not exceed $600 million~~.~~**; *provided further* that notwithstanding any provision in the AFI LOC Amendment to the contrary, the amount available under the AFI DIP Loan shall be $200 million, and any additional borrowings in excess of $200 million shall be made at the sole discretion of the AFI DIP Lender, all borrowings of which are at the same interest rate as provided for in the AFI LOC Amendment.**

18

(b)    **In furtherance of the foregoing and without further approval of the Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including the execution or recordation of security agreements, mortgages and financing statements), and to accrue all fees, payment of which shall be waived subject to consummation of the Plan pursuant to the terms of the Ally Settlement Agreement, that may be reasonably required or necessary for the Debtors' performance of their obligations under the AFI DIP Loan, including:**

(i)    the execution, delivery**,** and performance of the AFI LOC Amendment;

(ii)    the performance of all other acts required under or in connection with the AFI DIP Loan pursuant to the AFI LOC, as amended by the AFI LOC Amendment (including the indemnity provisions contained therein).

(c)    ~~Upon execution and delivery of~~**The AFI LOC Amendment has been duly executed and delivered and** the AFI LOC Amendment~~,~~**and** the AFI DIP Loan ~~shall~~ constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with their terms and this **Final** Order.  No obligation, payment, transfer**,** or grant of security under the AFI DIP Loan or this ~~Interim~~**Final** Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

**8.**    ~~6.~~ *AFI DIP Loan Liens*.  As security for the AFI DIP Obligations, effective and perfected upon the date of this ~~Interim~~**Final** Order and without the necessity of the execution, recordation or filing of mortgages, security agreements, control agreements, pledge agreements,

ny- 1040970K&E 22457667

financing statements or other similar documents, or the possession or control by the AFI **DIP** Lender, the following security interests and liens are hereby granted to the AFI **DIP** Lender (all tangible and intangible property, whether real or personal, identified in clauses (a) ~~and~~**,** (b)**, and (c)** below being collectively referred to as the "***AFI DIP Loan Collateral***"); all such liens and security interests granted to the AFI **DIP** Lender pursuant to this ~~Interim~~**Final** Order~~,~~ **(**the "***AFI DIP Liens***"**)**, subject and subordinate only to the payment of the Carve Out:

(a)      Pursuant to section~~s~~ 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority security interest in and lien upon all right, title and interest in all Repurchased Loans (including the related mortgage notes, mortgage, or any assignments of mortgage) and HUD Claims funded with the proceeds of the AFI DIP Loan, together with all proceeds, products, and supporting obligations with respect thereto; ~~and~~

(b)      Pursuant to section~~s~~ 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected priming security interest in and lien upon all property of the Debtors, whether existing on the Petition Date or thereafter arising, coming into existence or acquired, whether tangible or intangible, whether real or personal, together with all proceeds and products thereof, that constitutes the AFI LOC Collateral (other than the property described in (a) of this paragraph)**; and**

**(c)      Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority security interest in the Ally DIP Account.**

**9.**      ~~7.~~ *Superpriority Claims*.

(a)      Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the AFI DIP Obligations shall constitute allowed claims against each of the Debtors (without the need to file a

20

proof of claim) with priority over any and all administrative expenses, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under section 105, 326, 328, 330, 331, 503(b), 506(c) (upon entry of the Final Order, to the extent therein approved), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, including any superpriority claims granted as adequate protection in favor of the Debtors' pre-petition secured lenders or other secured parties in the Cases, but not including the proceeds of Chapter 5 avoidance actions (the "*Superpriority Claims*"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Superpriority Claims shall be subject only to the Carve Out to the extent specifically provided for herein and shall be junior to the "Superpriority Claims" granted in respect of the obligations under the Barclays DIP Facility (as defined hereinafter) pursuant to section 364(c)(1) of the Bankruptcy Code (the "*Barclays 364(c)(1) Claims*") as provided in paragraph 11**14** of the Barclays DIP Order;[4] *provided*, that the Barclays 364(c)(1) Claims are junior to the AFI Lender's rights in the AFI DIP Loan Collateral and all proceeds and other consideration received upon the sale, exchange, transfer**,** or other disposition thereof.

---

[4]  The "*Barclays DIP Order*" means either the *Interim Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m),  364(c)(1),  364(c)(2),  364(c)(3),  364(d)(1)  and  Bankruptcy  Rules  4001  and  6004  (I) Authorizing Debtors (A) to Enter into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase  and  Contribution  Agreements  Relating  to  Initial  Receivables  and  Mortgage  Loans  and  Receivables Pooling Agreements Relating to Additional Receivables, and (B) to Obtain Post-Petition Financing on a Secured Superpriority  Basis,  (II)  Scheduling  Final  Hearing  Pursuant  to  Bankruptcy  Rules  4001(B)  and  (C)  and  (III) Granting Related Relief* or the  **the** *Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) to Obtain Post-Petition Financing on a Secured Superpriority Basis,* ***and*** *(II) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) and (III) Granting Related Relief, as applicable.*

ny-1040970K&E 22457667

**10.**    ~~8.~~  *Perfection of the AFI DIP Liens.*

(a)    The AFI DIP Lender is hereby authorized, but not required, to file or record financing statements, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted hereunder.  Whether or not the AFI DIP Lender shall, in its sole discretion, choose to file such financing statements, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of ~~this~~**the Interim** Order.

(b)    A certified copy of this ~~Interim~~**Final** Order may, in the discretion of the AFI DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this ~~Interim~~**Final** Order for filing and recording.  For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the AFI Lender, and the Secured Parties to take all actions, as applicable, referenced in this paragraph ~~8~~**10.**

**11.**    ~~9.~~  *Use of AFI DIP Loan Proceeds.*[5]    The proceeds of the AFI DIP Loan shall be used solely to fund GNMA Buyouts to the extent necessary in order to (a) avoid Debtor GMAC Mortgage being in violation of delinquency triggers applicable to it under Chapter 18 of the Ginnie Mae Guide, (b) effect foreclosures, conveyances or other normal course loss mitigation activities of the related properties in connection with the submission of HUD Claims, and (c) allow for trial

---

[5]    **In the event of any inconsistencies between the use restrictions contained in the AFI LOC Amendment and this Final Order, the terms of this Final Order shall govern.**

~~ny- 1040970~~K&E 22457667

modifications under programs implemented by the Debtors for which the related loans and borrowers are qualified.  For the avoidance of doubt, no proceeds **of the AFI DIP Loan** may be used to fund the purchase of whole loans for any other purpose, including for non-compliance with eligibility representations, lack of insurance or guaranty, or for title defects, or for any other purpose other than as identified in the first sentence of this paragraph**; *provided* that up to $50 million of the proceeds of the AFI DIP Loan million may be used for general corporate purposes; *provided further* that the use of any borrowings in excess of $200 million shall be at the sole discretion of the AFI DIP Lender**.

**12.**    ~~10.~~ *Conditions Precedent to AFI DIP Loan Draws*.  Notwithstanding the terms of the AFI DIP Loan, the AFI LOC Borrowers shall not be permitted to draw under the AFI DIP Loan unless the following conditions are satisfied:

(a)    the Debtors shall have performed and shall be current on all of their obligations required under (~~a~~**i**) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (~~b~~**ii**) the consent judgment entered by the District Court for the District of Columbia, dated February 9, 2012, (~~c~~**and (iii)**) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, ~~2012, and (d) all related agreements with Ally~~**2012** (collectively, the "***Consent Obligations***");

(b)    the ~~Bankruptcy~~ Court shall have entered the *~~Interim~~**Final*** *Order Pursuant to Sections 105(A) and 363 of the Bankruptcy Code Authorizing the Debtors to Continue to Perform under the Ally Bank Servicing Agreement in the Ordinary Course of Business* in form and substance satisfactory to the AFI Lender;

(c)     the ~~Bankruptcy~~ Court shall have entered the ~~Interim~~**Final** Cash Management Order in form and substance reasonably satisfactory to the AFI Lender; ~~and~~

(d)     the Debtors shall use good faith efforts to comply with all requirements attendant to their position as subsidiaries of a ~~Bank Holding Company;~~**bank holding company; and**

(e)     no Termination Event (as hereinafter defined) shall have occurred and be continuing.

**13.**     ~~11.~~ *Cash Collateral.*   The Debtors' cash and cash equivalents on deposit or maintained in any account or accounts by the Debtors that is subject to a **perfected** security interest in favor of the AFI Lender or the Junior Secured Parties and cash and cash equivalents generated by the collection of accounts receivable, sale of inventory**,** or other disposition of the Prepetition Collateral constitutes proceeds of the Prepetition Collateral and, therefore, are and shall be deemed to be cash collateral of the Adequate Protection Parties within the meaning of section 363(a) of the Bankruptcy Code for the purposes hereof and under the terms hereof (collectively, and together with all cash and cash equivalents otherwise constituting Prepetition Collateral and the AFI DIP Loan Collateral, the "***Cash Collateral***").

**14.**     ~~12.~~ *Reporting.*   The Debtors have delivered to the Adequate Protection Parties a 20-week forecast of anticipated cash receipts and disbursements for such period (the "***Initial 20-Week Forecast***"), a copy of which is attached ~~hereto~~ as **Exhibit B to the Motion**.  In lieu of the reporting requirements set forth in the documents underlying the Prepetition Obligations, the Debtors shall deliver to the Adequate Protection Parties **and the Creditors' Committee**: (i) beginning on the first Monday immediately following five (5) weeks after the Petition Date (or if the Petition Date is a Monday, beginning five (5) weeks after the Closing Date), as soon as

ny- 1040970K&E 22457667

available, but not later than 1:00 p.m. (New York City time) on the sixth (6th) business day following each four-week period ended six (6) business days prior to such date, an updated 20-week forecast (an "***Updated Forecast***") for the following 20-week period (each such subsequent forecast delivered after the Initial 20-Week Forecast shall be, for the period of its applicability, referred to herein as the "***Forecast***") that is in form satisfactory to the AFI Lender; (ii) beginning on the first Monday immediately following three (3) weeks after the Petition Date (or if the Petition Date is a Monday, beginning three (3) weeks after the Petition Date), as soon as available, but not later than 1:00 p.m. (New York City time) on the sixth (6th) business day following the two-week period ended six (6) business days prior to such date, a bi-weekly variance report for each prior two (2) week period setting forth, for such two-week period (x) actual results noting therein aggregate variances from amounts set forth for the two-week period in the relevant Forecast, (y) with respect to the AFI LOC, a report, in form and detail satisfactory to the AFI Lender, of all deposits into and withdrawals from the concentration account established and maintained pursuant to the AFI LOC, and (z) with respect to the AFI Revolver, a report, in form and detail satisfactory to the AFI Lender, of all deposits into and withdrawals from the concentration account established and maintained pursuant to the AFI Revolver; *provided* that on any date on which an Updated Forecast is provided, the variance report shall set forth actual results against the amounts projected in the relevant Forecast for the prior four-week period; and (iii) no later than the fifteenth (15) business day of each calendar month, a collateral report that reflects updated values as of the end of the prior calendar month (each such revised report, for the period of its applicability, to be referred to herein as the "***Collateral Report***"). Thereafter, promptly following request by ~~either~~**the** AFI Lender**, the Creditors' Committee,** or the Trustee, the

Debtors shall make themselves reasonably available to discuss such Forecast and the details thereof.

**15.** ~~13.~~ *Authorization of Use of Cash Collateral.*  Subject to the terms hereof, including all reservations of rights herein, the ~~Loan Parties~~**Borrowers** are authorized to use Cash Collateral during the period from the Petition Date through and including the Termination Date (as defined in paragraph ~~18~~**20** below) solely for the purposes detailed within the Initial 20-Week Forecast and each subsequent Forecast and, in the case of **Cash Collateral of** the AFI Revolver ~~Loan Cash Collateral~~**(the "*AFI Revolver Cash Collateral*")**, to fund GNMA Buyouts, subject to the restriction on the use thereof for such purpose set forth in the first sentence of paragraph ~~9.~~**11.** Each Forecast will be subject to the written approval of the AFI Lender, ~~which~~**and the AFI Lender** shall use reasonable efforts to deliver its approval, or non-approval, as the case may be, to the Debtors within two business days of the receipt of the Forecast.  The Debtors ~~are enjoined and prohibited from using~~**shall not use** Cash Collateral and other Prepetition Collateral at any time, except as set forth in this ~~Interim~~**Final** Order.

**16.** ~~14.~~ *Adequate Protection.*  Subject to the provisions of paragraph ~~27~~**28** hereof, the Adequate Protection Parties are entitled, pursuant to sections 362, 363(c)(2), and 364 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Collateral to the extent of their interests therein, including any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of any Prepetition Collateral, including Cash Collateral, the priming of the AFI Lenders' liens on the AFI LOC Collateral by the Carve Out and AFI DIP Loan, and the automatic stay pursuant to section 362 of the Bankruptcy Code (such

ny- 1040970K&E 22457667

diminution in value, if any, the "***Adequate Protection Obligations***").  As adequate protection, the Adequate Protection Parties are granted the following:

      (a)      The AFI Lender, in its capacity as AFI LOC Lender, shall receive:

            (i)      as security for the Adequate Protection Obligations, effective and perfected upon the Petition Date and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the AFI Lender of any collateral, additional and replacement continuing, valid, binding, enforceable, non-avoidable and automatically perfected security interests and liens *(the "**Adequate Protection Liens")*** on all of the collateral securing the AFI LOC ~~*(the "**Adequate Protection Liens")***~~**and any additional collateral purchased, funded, or financed through the use of Cash Collateral of the AFI LOC**.  The Adequate Protection Liens shall not be subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of the ~~Loan Parties~~**Debtors** and their estates under section 551 of the Bankruptcy Code.  The Adequate Protection Liens shall be (i) senior to the (A) existing liens granted to the AFI Lender under the AFI LOC, (B) junior liens  in the AFI LOC Collateral granted under paragraph ~~11~~**14** of the Barclays DIP Order to secure the obligations under the Barclays DIP Facility ~~under the Debtors' postpetition debtor-in-possession financing facility ("**Barclays DIP Facility**"~~), (C) Adequate Protection Liens granted to the AFI Lender in its capacity as AFI Revolver Lender, and (D) Adequate Protection Liens granted to the Junior Secured Parties, and (ii) junior to the Carve Out and the AFI DIP Liens;

(ii)    superpriority administrative expense claims as and to the extent provided in section 507(b) of the Bankruptcy Code with priority in payment over any and all unsecured claims and administrative expense claims, now existing or after arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including sections 326, 328, 330, 331, 503(b), 506(c) and 726 of the Bankruptcy Code  (a "**507(b) Claim**"), which 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, and shall at all times be senior to the rights of the ~~Loan Parties~~**Debtors**, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code subject and subordinate only to the Carve Out and that shall be (x) senior to the 507(b) Claims granted to the Junior Secured Parties, and (y) *pari passu* with the 507(b) Claims granted to Citibank, N.A. and the AFI Lender on account of **the AFI Revolver; *provided* that notwithstanding any other provision of this Final Order, no 507(b) Claim shall be payable to the AFI Lender from (1) unencumbered property until the Adequate Protection Parties have exhausted recoveries from their collateral and (2) the proceeds of actions brought under chapter 5 of the Bankruptcy Code with respect to the AFI LOC or** the AFI Revolver; and

(iii)    adequate protection payments ("**Adequate Protection Payments**") consisting of accrued and unpaid prepetition interest as well as current postpetition payments of interest at the non-default rate set forth in the AFI LOC (the foregoing to include all unpaid prepetition interest) **;**

(b)    **the** AFI Lender, in its capacity as the AFI Revolver Lender, shall receive:

(i)    Adequate Protection Liens on all of the collateral securing the AFI Revolver and ~~on the Repurchased Loans on the repurchase of which is~~**any additional collateral purchased,** funded**, or financed** through the use of AFI Revolver ~~Loan~~ Cash Collateral, **including the Repurchased Loans and related HUD Claims,** which shall be (x) junior only to the existing liens granted to the AFI Revolver Lender under the AFI Revolver, and (y) senior to (A) the existing liens granted to the Junior Secured Parties, and (B) Adequate Protection Liens granted to the Junior Secured Parties;

(ii)    additional Adequate Protection Liens on all of the collateral securing the AFI LOC, which shall be (x) junior to the (A) existing liens granted to the AFI Lender under the AFI LOC, (B) Adequate Protection Liens granted to the AFI LOC Lender, (C) the liens granted under paragraph ~~11~~**14** of the Barclays DIP Order to secure the obligations under the Barclays DIP Facility (the "*Barclays DIP Liens*") and (D) the AFI DIP Liens, and (y) senior to the Adequate Protection Liens granted to the Junior Secured Parties on the collateral securing the AFI LOC as set forth below;

(iii)    507(b) Claims that are (x) senior to the 507(b) Claims granted to the Junior Secured Parties and (y) *pari passu* with the 507(b) Claims granted to Citibank**, N.A.** and the AFI Lender on account of the AFI LOC (but senior to the claims referred to in this clause (y) to the extent relating to Cash Collateral that is used to fund GNMA Buyouts); ~~and~~

(iv)    Additional Adequate Protection Liens on all of the equity of GMACM Borrower, LLC and RFC Borrower, LLC (**each as defined in the**

**Barclays DIP Facility and collectively referred to herein as** the "**Barclays DIP Borrowers**"), which shall be senior to the Adequate Protection Liens granted to the Junior Secured Parties on the equity of the ~~DIP Borrowers;~~ **Barclays DIP Borrowers; *provided* that the Adequate Protection Liens on the equity of the Barclays DIP Borrowers shall only be to the extent that the Adequate Protection Parties were secured by valid liens on (a) the Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order) or any residual value therefrom and/or (b) the residual value of the Initial Purchased Assets securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the equity interests of the entities owning the equity interests of the owners of such Initial Purchased Assets; and**

(v)     Adequate Protection Payments consisting of accrued and unpaid prepetition interest as well as current postpetition payments of interest at the non-default rate set forth in the AFI Revolver (the foregoing to include all unpaid prepetition interest) calculated based on the AFI Revolver balance of $400 million; *provided* that if that certain Plan Support Agreement between AFI, certain Junior Secured Noteholders, and the Debtors **dated as of May 13, 2012 and attached as Exhibit 9 to the Whitlinger Affidavit [Docket No. 6]** (the "***Junior Notes PSA***") is terminated pursuant to its terms, the AFI Lenders shall be entitled to payment of interest on the full amount outstanding under the AFI Revolver, including all accrued and unpaid interest thereon; and

(c)          the Junior Secured Parties shall receive:

ny- 1040970K&E 22457667

(i)    Adequate Protection Liens on all of the collateral securing the AFI Revolver, which shall be junior to the (x) existing liens granted to the AFI Lender under the AFI Revolver, (y) Adequate Protection Liens granted to the AFI Lender in its capacity as AFI Revolver Lender and (z) existing liens granted to the Junior Secured Parties, *provided,* that the enforcement of the Adequate Protection Liens shall be subject to, in all respects, the Intercreditor Agreement and paragraph 21**23** below;

(ii)    additional Adequate Protection Liens on all of the collateral securing the AFI LOC, which shall be junior to (x) all existing liens and Adequate Protection Liens granted to the AFI Lender (on both the AFI LOC and the AFI Revolver), (y) the Barclays DIP Liens and (z) the AFI DIP Liens;

(iii)    additional Adequate Protection Liens on all of the equity interests of the **Barclays** DIP Borrowers, which shall be junior to the Adequate Protection Liens granted to the AFI Revolver Lender on the equity of the DIP Borrowers;**Barclays DIP Borrowers; *provided* that such Adequate Protection Liens on the equity of the Barclays DIP Borrowers shall only be to the extent that the Junior Secured Parties were secured by valid liens on (a) the Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order) or any residual value therefrom and/or (b) the residual value of the Initial Purchased Assets Securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the equity interests of the entities owning the equity interests of the owners of such Initial Purchased Assets.**

ny- 1040970K&E 22457667

(iv)   to the extent the Adequate Protection Liens are insufficient to provide adequate protection, 507(b) Claims **against each Debtor** that are junior to the 507(b) Claims granted to the ~~DIP Lenders~~**lenders** under the **Barclays** DIP Facility and all 507(b) Claims granted to the AFI ~~Revolver~~ Lender but *pari passu* with any and all other 507(b) Claims**; *provided* that notwithstanding any other provision of this Final Order, no 507(b) Claim shall be payable to the Junior Secured Parties from (1) unencumbered property until the Adequate Protection Parties have exhausted recoveries from their collateral and (2) the proceeds of actions brought under chapter 5 of the Bankruptcy Code with respect to the Junior Secured Notes Documents**; and

(v)   The Debtors shall promptly pay the reasonable fees and expenses ~~of (i)~~**, whether accrued prepetition or postpetition, (i) of** the Trustee (including the reasonable fees and expenses of Kelley Drye & Warren LLP), and (ii) **of** that certain Ad Hoc Committee of Holders of Junior Secured Notes represented by White & Case LLP (including the reasonable fees and expenses of White & Case LLP and Houlihan Lokey); *provided* that none of such fees and expenses as ~~a~~**A**dequate ~~p~~**P**rotection ~~p~~**P**ayments hereunder shall be subject to further approval by the Court or the United States Trustee Guidelines, but such professional**s** shall provide copies of summary invoices and statements (subject in all respects to applicable privilege or work product doctrines) to the ~~official committee of unsecured creditors appointed in the Cases (the "*Committee*")~~**Debtors, Creditors' Committee,** and the U.S. Trustee, and the Debtors shall promptly pay all reasonable fees and expenses not subject to objection of the U.S. Trustee ~~within~~

32

ten**on the eleventh** business days after the receipt of such invoices.  No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Court shall have jurisdiction to determine any dispute concerning such invoices, *provided*, *further*, however, that nothing shall prejudice the rights of any party to seek to recharacterize any such payments, upon motion and further order of the Court, as payments of principal under the Junior Secured Notes.

(d)     Notwithstanding anything to the contrary in this **Final** Order, the sum of the obligations under the (x) AFI DIP Loan, **plus** (y) the AFI LOC Loan and**plus** (z) the Adequate Protection Obligations**, including any unpaid interest, expenses, or other costs payable with respect to such obligations in (x), (y) and (z),** in respect of the AFI LOC Loan that shall be senior to the Barclays DIP Liens in the AFI LOC Collateral granted in paragraph 11**14** of the Barclays DIP Order, in the aggregate, shall not exceed $600,000,000.

(e)     All 507(b) c**C**laims granted herein are junior and subordinate to all administrative expense claims granted priority under section 364(c)(1) of the Bankruptcy Code whether under this order, the Barclays DIP Order, or otherwise.

(f)     All reasonable, documented fees, and expenses incurred or accrued by the AFI Lender, including reasonable documented fees and expenses of counsel, shall accrue during the Chapter 11 Cases and be waived by AFI Lender subject to confirmation of the Plan that is in accordance with the terms of the Ally Settlement Agreement.   In the event that a  Plan incorporating the Ally Settlement Agreement in accordance with the terms thereof is confirmed, AFI Lenders reserves all rights to assert claims against the Debtors' estates for payment of all such fees and expenses.   In the event that a**the** Plan incorporating the Ally Settlement Agreement in

accordance with the terms thereof is not confirmed, the Debtors shall pay all of ~~the~~**such** AFI Lender~~s such~~**'s** fees and expenses.

(g)    For purposes hereof, the "***Carve Out***"[56] shall mean the sum of: (i) all fees required to be paid to the Clerk of the ~~Bankruptcy~~ Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, and (ii) at any time after the first business day after the occurrence and during the continuance of a Termination Event hereunder, and delivery of notice thereof to the U.S. Trustee and each of the lead counsel for the Debtors (the "***Carve Out Notice***"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of accrued and unpaid fees and expenses incurred by the professionals retained in the **Chapter 11** Cases and reimbursement of out-of-pocket expenses of the members of any official committee appointed in the **Chapter 11** Cases**, including the Creditors' Committee** (collectively, the "***Professional Fees***") incurred by persons or firms whose retention is approved pursuant to sections 327 and 1103 of the Bankruptcy Code after the Business Day following delivery of the Carve Out Notice and allowed by th~~is~~**e** Court, in an aggregate amount not exceeding $25 million (the "***Carve Out Cap***") (plus all unpaid Professional Fees allowed by th~~is~~**e** Court at any time that were incurred on or prior to the Business Day following delivery of the Carve Out Notice, whether paid or unpaid); provided further that (A) the Carve Out shall not be available to pay any such Professional Fees incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Adequate Protection Parties, (B) so long as no event of default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and

---

[56]   The Carve Out is intended to mirror the Barclays' Carve Out (and not be in addition to).  Allocation of the $25 million Carve Out monies between the Barclays' DIP collateral and ~~AFI Collateral TBD.~~ **Collateral of AFI shall be pro rata based on amounts outstanding under the (a) Barclays DIP, and (b) the aggregate amount of the AFI LOC, AFI Revolver, and AFI DIP Loan.**

expenses allowed by this~~e~~ Court and payable under sections 328, 330 and 331 of the Bankruptcy

Code, and (C) nothing in this ~~Interim~~**Final** Order shall impair the right of any party to object to any

such fees or expenses to be paid by the Debtors' estates.

**17.**    ~~15.~~ *Replacement Liens*.  Pursuant to section 363(e) and (f) of the Bankruptcy Code

or otherwise, the AFI Revolver Lender shall receive first priority replacement liens and the Junior

Secured Parties shall receive second priority replacement liens (collectively, the "***Replacement***

***Liens***"), junior only to the Replacement Liens granted to the AFI Revolver Lender, on all of the

equity of the **Barclays** DIP Borrowers as adequate protection for the transfer of the Initial

Purchased Assets (as defined in the Barclays DIP Order)**; *provided* that the Replacement Liens**

**on the equity of the Barclays DIP Borrowers shall only be to the extent that the AFI**

**Revolver Lender and the Junior Secured Parties were secured by valid liens on (a) the**

**Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order) or any residual value**

**therefrom and/or (b) the residual value of the Initial Purchased Assets securing the**

**Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the**

**equity interests of the entities owning the equity interests of the owners of such Initial**

**Purchased Assets**.

**18.**    ~~16.~~ *Additional Adequate Protection.*

(a)    <u>Covenants</u>:  As additional adequate protection:

(i)    the Debtors shall maintain (x) their cash management

system and (y) the treatment of any and all claims on account of postpetition

distributions and transfers by the ~~Loan Parties~~**Borrowers** to any Affiliated Debtor

(the "***Priority Intercompany Claim***"), in each case, in a manner consistent with

such arrangements and treatment described in the ~~Interim~~**Final** Cash Management Order, without further modification thereto;

(ii)      the Debtors shall use good faith efforts to be in compliance with all requirements attendant to their position as subsidiaries of a ~~B~~**b**ank ~~H~~**h**olding ~~C~~**c**ompany;

(iii)     the Debtors shall continue to perform and remain current with, and require that all of the Debtors continue to perform and remain current with, all of their obligations under the Consent Obligations;

(iv)     the Debtors shall comply with the terms of the Amended and Restated Servicing Agreement by and between Ally Bank, as Owner, and GMAC Mortgage, LLC, as Servicer, dated as of May ~~[___],~~**11,** 2012;

(v)      the Debtors shall comply with the terms of the *~~Interim Order Pursuant to Sections 105(A) and 363 of the Bankruptcy Code Authorizing the Debtors to Continue to Perform under the Ally Bank Servicing Agreement in the Ordinary Course of Business,~~* ~~which was entered by this Court on _____, 2012~~ ~~[Docket No. ____], and the~~*Final Order Pursuant to Sections 105(A) and 363 of the Bankruptcy Code Authorizing the Debtors to Continue to Perform under the Ally Bank Servicing Agreement in the Ordinary Course of Business*;

(vi)     the Debtors shall *use the AFI DIP Loan proceeds* ~~to fund only the GNMA Buyouts; and~~**have closed all accounts with Wells Fargo Bank, N.A., and its subsidiaries and affiliates, by June 12, 2012; *provided* that GMAC Mortgage LLC account number 2000042898689 shall have been closed by June 15, 2012;**

36

(vii)   the Debtors shall ~~perform and comply with all obligations under the Ally Settlement~~ *use the AFI DIP Loan proceeds* in accordance with the ~~terms thereof.~~**use restrictions contained in this Final Order; and**

**(viii)   the effective date of the Plan that, for the avoidance of doubt, incorporates the terms of the Ally Settlement Agreement shall occur by December 15, 2012.**

(b)   <u>Reporting</u>:  As further adequate protection hereunder, the Debtors shall comply with the reporting requirements set forth in paragraph ~~12~~**14** (the "***Reporting Requirements***").  Further, the Adequate Protection Parties **and the Creditors' Committee** shall receive copies of all reports provided to the ~~DIP Lenders~~**lenders** pursuant to the **Barclays** DIP Facility and the **Barclays** DIP order.

(c)   <u>Section 552 Waiver</u>.  ~~Upon entry of the Final Order, the~~**The** "equities of the case" exception contained in section 552(b) of the Bankruptcy Code is ~~deemed~~**hereby** waived **by the Debtors** with respect to the Prepetition Collateral.

**19.**   ~~17.~~ *Exercise of Rights and Remedies against Deposit Accounts*.  Notwithstanding anything to the contrary contained in any instrument or agreement to which the ~~Loan Parties~~**Borrowers**, or any ~~Loan Party~~**Debtor**, are party or subject, or in any order entered by thi~~s~~**e** Court, no Person (as defined by the Bankruptcy Code) that holds or has lien or other security interest on any demand deposit or other accounts of a ~~Loan Party~~**Debtor** may exercise any rights or remedies against any such account (including by way of set off), whether pursuant to an account control agreement or otherwise, without first providing seven days written notice (by facsimile electronic mail, overnight mail or hand delivery) to the U.S. Trustee, counsel to the Debtors, counsel to ~~any statutory committee appointed in the Debtors' chapter 11 cases~~**the Creditors'**

**Committee**, counsel for the AFI Lender, counsel to the Junior Secured Notes, counsel for Citibank, N.A. and counsel for Barclays (the "*Account Notice Parties*").  The AFI Lender hereby acknowledges and stipulates that its liens on any demand deposit or other account, whether such lien arises under a prepetition control agreement or under this **Final** Order, attach only to the proceeds of its collateral, and such liens do not attach to amounts on deposit in any such account to the extent such amount constitutes the proceeds of any other Person's collateral or property that was unencumbered prior to its being deposited in such an account.  In the event any Person asserts the occurrence and continuance of a default or an event of default and the right to exercise remedies with respect to such an account, the Debtors within three days will prepare and serve on the Account Notice Parties a detailed accounting of each Person**'**s interest in the amounts on deposit in such account.  All parties rights to review and object to such accounting are hereby preserved.  Each Account Notice Party shall serve on the others a notice of objections with respect to such accounting within 5 days following service thereof. Any unresolved disputes with the Debtors' accounting shall be determined by th~~is~~**e** Court at a hearing to be held on not less than 15 days written notice to the Account Notice Parties.  All amounts in dispute shall remain on deposit in such account pending Court order.  No commingling of amounts on deposit in any such account shall in any way adversely affect, detract from, or otherwise impair the perfection of any Person's lien on such proceeds.

    **20.** ~~18.~~ *Termination*.  The ~~Loan Parties~~**Borrowers**' right to use Prepetition Collateral, including Cash Collateral, **and the AFI DIP Loan,** pursuant to this ~~Interim~~**Final** Order shall automatically terminate (the date of any such termination, the "*Termination Date*") without further notice or order of the ~~e~~**C**ourt (x) on the effective date of a Plan for any Debtor or (y) upon written notice (the "*Termination Notice*") ~~to the Loan Parties~~**by the AFI Lender (or, if the AFI**

**Revolver has been paid in full, by the Junior Secured Parties) to the Borrowers** (with a copy to counsel ~~for the official committee of unsecured creditors (the "~~**to the** Creditors' Committee~~"~~ ~~and~~**,** the Administrative Agent and the Collateral Agent under the Barclays DIP Facility~~), if appointed in the Chapter 11 Cases~~, and the United States Trustee) after the occurrence and during the continuance of any of the following events (unless waived by the Adequate Protection Parties, "***Termination Events***") beyond any applicable grace period set forth below:

(a)     the occurrence and continuance of an event of default under the Barclays DIP Facility~~, or if the Barclays DIP Facility has been paid in full, an event, condition or occurrence that would have been event of default under the Barclays DIP Facility~~;

(b)     the occurrence and continuance of an event of default under the AFI DIP Loan;

(c)     the Debtors seek to reject under section 365 of the Bankruptcy Code, or otherwise, either the Master Servicing Agreement (1st Lien Mortgages Servicing Released) dated as of April 16, 2006 and amended as of June 1, 2007 between Residential Funding Company, LLC (f/k/a Residential Funding Corporation) and Ally Bank (f/k/a GMAC Bank) or the Master Servicing Agreement (1st Lien Mortgages Servicing Retained) dated as of August 15, 2005 and amended as of March 31, 2006 between Residential Funding Company, LLC (f/k/a Residential Funding Corporation) and Ally Bank (f/k/a GMAC Bank);

(d)     failure to perform or remain current on all of the Consent Obligations;

(e)     failure to obtain entry of the *~~Interim~~**Final** Order Pursuant to Sections 105(A)and 363 of the Bankruptcy Code Authorizing the Debtors to Continue to Perform under the Ally Bank Servicing Agreement in the Ordinary Course of Business* in form and substance satisfactory to the AFI Lender within ~~five~~**50** days of the Petition Date;

(f)     failure to satisfy the Reporting Requirements that continues unremedied for a period of five (5) business days after the date of such failure;

(g)     failure of the ~~Loan Parties~~**Borrowers** to comply with any other covenant or agreement specified in this ~~Interim~~**Final** Order that continues unremedied for a period of five (5) business days after the date of such failure;

(h)     any **default,** event of default, early amortization event, ~~termination event or other similar event (other than as a result of the commencement of the Chapter 11 Cases) shall occur under any material document or agreement that relates to the Prepetition Collateral and such event could reasonably be expected to be materially adverse to the rights and interests of the Adequate Protection Parties, as applicable;~~

~~(i)     any event of default, early amortization event,~~**or** termination ~~event or other similar~~ event (other than as a result of the commencement of the Chapter 11 Cases) shall occur under any material document or agreement that relates to the Prepetition Collateral and such event could reasonably be expected to be materially adverse to the rights and interests of the Adequate Protection Parties, as applicable;

**(i)**     ~~(j)~~ any of the material Chapter 11 Cases shall be dismissed or converted to a chapter 7 case; or a chapter 11 trustee with plenary powers, a responsible officer or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the material Chapter 11 Cases;

**(i)**     ~~(k)~~ appointment of a trustee (or comparable person) or a responsible officer or examiner with expanded powers in any of the material Chapter 11 Cases (or any of the Debtors or their affiliates seeking or supporting such appointment);

40

**(k)**    ~~(l) this~~**the** Court shall enter an order granting relief from the automatic stay as to any Prepetition Collateral which has an aggregate value in excess of $25 million and such order shall not, at any time, be subject to stay pending appeal;

**(l)**    ~~(m)~~ a court shall enter an order amending, supplementing, staying, vacating or otherwise modifying ~~the Cash Collateral Orders~~**this Final Order** except as otherwise agreed to in writing by the Adequate Protection Parties, or ~~the Cash Collateral Orders~~**this Final Order** shall cease to be in full force and effect; provided that no event of default shall occur to the extent that any such amendment, supplement or other modification is made in compliance with ~~the Cash Collateral Orders~~**this Final Order** and is not adverse, in the reasonable judgment of the Adequate Protection Parties, as applicable;

**(m)**    ~~(n)~~ entry of a Bankruptcy Court order granting any superpriority claim (or claim of equivalent status) that is senior to or *pari passu* with the claims of the Adequate Protection Parties or any lien or security interest that is senior to or *pari passu* with the liens and security interests securing the **AFI DIP Loan,** AFI Revolver, the AFI LOC, or the Junior Secured Notes, except as provided herein;

**(n)**    ~~(o)~~ entry of an order authorizing recovery from Prepetition Collateral, including Cash Collateral, for any cost of preservation or disposition thereof, under section 506(c) of the Bankruptcy Code or otherwise, other than as may be provided in ~~the Cash Collateral Orders~~**this Final Order**, or certain *de minimis* amounts as may be agreed to by the Adequate Protection Parties;

**(o)**    ~~(p)~~ any judgment in excess of $10 million as to any postpetition obligation not covered by insurance shall be rendered against the Debtors and the enforcement thereof shall not effectively be stayed at all times; or there shall be rendered against the Debtors a non-monetary

judgment with respect to a postpetition event which has or could reasonably be expected to have a material adverse effect on the property, business or condition (financial or otherwise) of the Debtors taken as a whole or the ability of the Debtors to perform their obligations under this ~~Interim~~**Final** Order; or

**(p)** ~~(q)~~ any ~~Loan Party~~**Debtor** shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness or payables (including reclamation claims) other than payments authorized by the Court.

The ~~Loan Parties~~**Borrowers** shall, within two business days of an occurrence of a Termination Event, provide the corresponding Termination Notice to the parties set forth above.

**21.** ~~19.~~ *Remedies After Termination Event.*

(a)   The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit

(i)   the Adequate Protection Parties to, immediately upon the occurrence and during the continuation of a Termination Event, and issuance of a the Termination Notice, terminate the right of the ~~Loan Parties~~**Borrowers** to use Prepetition Collateral, including Cash Collateral;

(ii)   In no event shall the Adequate Protection Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral.  The delay or failure of the Adequate Protection Parties to exercise rights and remedies under the Prepetition Obligations or this ~~Interim~~**Final** Order shall not constitute a waiver of their respective rights hereunder, thereunder

or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the Prepetition Obligations; and

(iii)      the AFI DIP Lender to exercise all rights and remedies under the AFI DIP Loan, and, to the extent provided for in the AFI DIP Loan, to take any or all of the following actions without further order of or application to th~~is~~c Court: (a) cease to make any extensions of credit or loans or advances to the Debtors; (b) declare all AFI DIP Obligations to be immediately due and payable without presentment, demand, protest or notice; (c) the AFI DIP Lender shall exercise any and all remedies available to it under the AFI DIP Loan; (d) take any other actions or exercise any other rights or remedies permitted under this Order, the AFI DIP Loan, or applicable law to realize upon the AFI DIP Loan Collateral and/or effect the repayment and satisfaction of the DIP Obligations~~; subject to the AFI DIP Lender providing seven (7) days written notice (by facsimile, telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtors~~ ~~,counsel to any Committee and counsel to the Administrative Agent and Collateral Agent under the Barclays DIP Facility, prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the rights described in clauses (a) and (b) above (to the extent they might be deemed remedies in respect of the Collateral) and other than with respect to the placement of administrative holds on any other deposit accounts or securities accounts).  All rights of the AFI DIP Lender and Adequate Protection Parties are subject to paragraphs~~ ~~13 (e)-(g) of the Barclays DIP Order.~~.

(b)    ~~In any hearing regarding any exercise of rights or remedies by the AFI Lender, the only issue that may be raised by the Debtors and any party in interest shall be whether, in fact, a Termination Event has occurred and is continuing, and neither the Debtors nor any party in interest shall be entitled to seek relief, including under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the AFI DIP Lender set forth in this Order or the AFI DIP Loan.  In no event shall the AFI DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the AFI DIP Loan Collateral.~~ **The rights of the AFI DIP Lender to exercise the remedies in paragraph 21(a)(iii) above are** *subject to the AFI DIP Lender providing seven (7) days written notice (by facsimile, telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtors***, counsel to the Junior Secured Parties,** *counsel to any Committee and counsel to the Administrative Agent and Collateral Agent under the Barclays DIP Facility* **(collectively, the "Termination Notice Parties")***, prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the rights described in clauses* **21(a)(iii)***(a) and (b) above (to the extent they might be deemed remedies in respect of the Collateral) and other than with respect to the placement of administrative holds on any other deposit accounts or securities accounts).  All rights of the AFI DIP Lender and Adequate Protection Parties are subject to paragraphs* **16** *(e)-(g) of the Barclays DIP Order.  In any hearing regarding any exercise of rights or remedies by the AFI Lender, the only issue that may be raised by the Debtors and any party in interest shall be whether, in fact, a Termination Event has occurred and is continuing, and neither the Debtors nor any party in interest shall be entitled to seek relief, including under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the AFI DIP Lender set forth in this Order or the AFI DIP Loan.  In no event shall the AFI DIP Lender*

*be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the AFI DIP Loan Collateral.*  **The Adequate Protection Parties may exercise the remedies in paragraph 21(a)(i) three (3) business days after giving the Termination Notice to the Borrowers with a copy to the Termination Notice Parties;** ***provided*** **that the Debtors and the Creditors' Committee shall be entitled to an emergency hearing before this Court within seven (7) days after the Termination Notice has been given to the Borrowers.  If the Debtors or the Creditors' Committee do not contest the Termination Event with such seven (7) day period, or if the Debtors or the Creditors' Committee do timely contest the occurrence of a Termination Event and the Court after notice and hearing (within such seven (7) day period) declines to stay the enforcement thereof, the Termination Date shall be deemed to have occurred for all purposes of the automatic stay.  Nothing herein shall preclude the Adequate Protection Parties from seeking an order of the Court upon written notice (electronically, including via facsimile, in a manner that generates a receipt for delivery, or via overnight mail) to the Borrowers and Termination Notice Parties authorizing the Adequate Protection Parties to exercise any enforcement rights or remedies with respect to the Prepetition Collateral on less than seven (7) days' notice, or the Debtors' right to contest such relief.**

(c)     Subject to the provisions of the Junior Notes PSA or further order of the Court, following the occurrence of an event of default under the Prepetition Obligations, the Junior Secured Parties may not exercise any rights or remedies under the Junior Secured Notes Documents or this ~~Interim~~**Final** Order unless and until all the indebtedness of the AFI Lender attributable to the AFI Revolver, including the Adequate Protection Liens, 507(b) Claims, and Adequate Protection Payments granted to the AFI Lender on account the AFI Revolver pursuant to

the terms of this ~~Interim~~**Final** Order (collectively, the "***AFI Revolver Payable***"), has been paid in full in cash and all commitments under the AFI Revolver and AFI Revolver Payable have been terminated or an amount sufficient to satisfy the AFI Revolver Payable has been escrowed by the Debtors (calculated in accordance with the Junior Notes PSA to the extent then in effect).  If, prior to the payment in full in cash of all of the AFI Revolver Payable and all commitments under the AFI Revolver and AFI Revolver Payable having been terminated, the Junior Secured Parties or any other party holding a claim junior to the AFI Revolver Payable receive(s) any Prepetition Collateral or proceeds thereof, such Prepetition Collateral or proceeds thereof shall be considered to be held in trust for the benefit of the AFI Revolver Lender and shall be immediately payable to the AFI Revolver Lender.  For the avoidance of doubt, other than the use of the Carve Out in accordance with the terms of this ~~Interim~~**Final** Order, ~~the Loan Parties~~**and as set forth in paragraph 30, the Borrowers** may not use the Prepetition Collateral or Cash Collateral to challenge in any manner the claims and liens of the Adequate Protection Parties.

**22.**   ~~20.~~ *Limitation ~~On~~**on** Charging Expenses Against Prepetition Collateral and AFI DIP Loan Collateral.*  ~~Subject only to, and effective upon entry of, the Final Order, and only to the extend provided for therein, except~~**Except** to the extent of the Carve Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral and AFI DIP Loan Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Adequate Protection Parties or AFI DIP Lender, as applicable and no such consent shall be implied from any other action, inaction, or acquiescence by the Adequate Protection Parties or AFI DIP Lender, as applicable.

**23.**   ~~21.~~ *Reservation ~~Of~~**of** Rights ~~Of~~**of** The Adequate Protection Parties.*  The ~~A~~**a**dequate
~~P~~**p**rotection provided herein is reasonable and sufficient to protect the interests of the Adequate
Protection Parties.   Notwithstanding any other provision hereof, the grant of ~~A~~**a**dequate
~~P~~**p**rotection to the Adequate Protection Parties pursuant hereto is without prejudice to the right of
the Adequate Protection Parties to seek modification of the grant of ~~A~~**a**dequate ~~P~~**p**rotection
provided hereby so as to provide different or additional Adequate Protection, and without
prejudice to the right of the Debtors or any other party in interest to contest any such modification.
Nothing herein shall be deemed to waive, modify or otherwise impair the rights of the Adequate
Protection Parties under the Existing Agreements, and the Adequate Protection Parties expressly
reserve all rights and remedies that the Adequate Protection Parties now or may in the future have
under the Existing Agreements and/or applicable law in connection with all defaults and events of
default.   Except as expressly provided herein, nothing contained in this ~~Interim~~**Final** Order
(including the authorization to use any Prepetition Collateral, including Cash Collateral) shall have
the effect of, or shall be construed as having the effect of, amending or waiving any covenant, term
or provision of the Existing Agreements, or any rights or remedies of the Adequate Protection
Parties thereunder, including any right to argue that failure to strictly comply with any such
covenant, term or provision during the course of the Chapter 11 Cases or that any use of
Prepetition Collateral, including Cash Collateral, permitted or contemplated hereby constitutes a
default or event of default that is not subject to cure under section 1124 of the Bankruptcy Code or
otherwise despite any consent or agreement contained herein.

**24.**   ~~22.~~ *Reservation ~~Of~~**of** Rights ~~of~~**of** The Debtors.*   The foregoing ~~A~~**a**dequate
~~P~~**p**rotection provisions contained in this ~~Interim~~**Final** Order shall be without prejudice to the rights
of the Debtors **or the Creditors' Committee** to object to the Adequate Protection Parties' request

for any other, further or additional Adequate Protection.  Nothing in this ~~Interim~~**Final** Order shall be deemed to waive, modify or otherwise impair the respective rights of the Debtors under the Existing Agreements, and the Debtors expressly reserve all rights and remedies that each has now or may in the future have under the Existing Agreements and/or applicable law (subject to paragraphs ~~3~~**5** and ~~26~~**27**).

**25.**    ~~23.~~ *Reservation of Rights of the Junior Secured Parties*.  The Junior Secured Parties hereby reserve their rights to assert arguments that the adequate protection provided hereunder is insufficient on account of diminution in value of the AFI Revolver Collateral resulting from the Barclays DIP Loan; *provided*, that the Junior Secured Parties shall not assert any such arguments, if at all, prior to January 1, 2013, with such date subject to extension solely at the discretion of the Junior Secured Parties, and that the assertion of such arguments may in no way adversely affect Ally.

~~24.    *Reservation of Rights of Wells Fargo*.  In resolution of Wells Fargo's objection filed with the Court on the Petition Date, the rights of all parties are reserved as to the breadth of Wells Fargo's subordination rights provided for in the Commercial Deposit Agreement For Large Corporate Customers, which Wells Fargo asserts was amended effective as of April 25, 2012 (the "Deposit Agreement"); provided, however, that if AFI provides financing to the Debtors, then there shall be no such reservation of rights for Wells Fargo with respect to and to the extent of the AFI DIP Loan.  Moreover, Wells Fargo shall be entitled to adequate protection to the extent of its setoff rights and security interests, if any, with respect to the Deposit Agreement, in an amount no greater than the account balance as of the Petition Date, and the parties hereto reserve their right as to the priority of any adequate protection claim asserted by Wells Fargo.~~

**26.**   25.  *Perfection Ofof Adequate Protection Liens.*  The Adequate Protection Parties are authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over or take any other action in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the Adequate Protection Parties shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the Petition Date.

**27.**   26.  *Preservation Ofof Rights Granted Under Tthe InterimFinal Order.*

(a)   Except as permitted in this InterimFinal Order, no claim or lien having a priority senior to or *pari passu* with those granted by thisc Interim Order to the Adequate Protection Parties shall be granted or allowed while any portion of the Adequate Protection Obligations remain outstanding, and Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan PartiesBorrowers' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)   Except as otherwise provided for herein, no claim or lien having a priority superior to or *pari passu* with those granted by this **Final** Order to the AFI DIP Lender shall be granted or allowed while any portion of the AFI DIP Loan or the commitments thereunder or the DIP Obligations remain outstanding, and the AFI DIP Liens shall not be (i) subject or junior to any

ny- 1040970K&E 22457667

lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise (other than the Carve Out and as expressly provided in this **Final** Order).

(c)    Unless all AFI DIP Obligations shall have been indefeasibly paid in full, the Debtors shall not seek (i) any modifications or extensions of this **Final** Order without the prior written consent of the AFI DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the AFI DIP Lender, or (ii) an order converting or dismissing any of the Chapter 11 Cases.  If an order dismissing any of the Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims and AFI DIP Liens granted to the AFI DIP Lender pursuant to this ~~Interim~~**Final** Order shall continue in full force and effect, shall maintain their priorities as provided in this ~~Interim~~**Final** Order and shall, notwithstanding such dismissal, remain binding on all parties in interest until all AFI DIP Obligations shall have been indefeasibly paid in full in cash and the commitments under the AFI DIP Loan have been terminated in accordance with the AFI DIP Loan and (ii) ~~this Bankruptcy~~**the** Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claims and AFI DIP Liens.

(d)    If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the 507(b) Claims, the other administrative claims granted pursuant to this ~~Interim~~**Final** Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this ~~Interim~~**Final**

Order until all Adequate Protection Obligations shall have been paid and satisfied in full (and that such 507(b) Claims, the other administrative claims granted pursuant to this ~~Interim~~**Final** Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) th~~is~~**e** Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (i) above.

(e)    If any or all of the provisions of this ~~Interim~~**Final** Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Adequate Protection Parties of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Prepetition Collateral, including Cash Collateral, or any Adequate Protection Obligations incurred by the ~~Loan Parties~~**Borrowers** hereunder, as the case may be, prior to the actual receipt of written notice by the Adequate Protection Parties of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this ~~Interim~~**Final** Order, and the Adequate Protection Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in this ~~Interim~~**Final** Order with respect to all uses of Prepetition Collateral, including Cash Collateral, and all Adequate Protection Obligations.

(f)    If any or all of the provisions of this **Final** Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations incurred prior to the actual receipt by the AFI Lender of written notice of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of the AFI DIP Liens and Superpriority Claims authorized or created hereby or

51

pursuant to the AFI DIP Loan with respect to any DIP Obligations.  Notwithstanding any such reversal, stay, modification or vacation, the DIP Obligations incurred by the Debtors pursuant to the AFI DIP Loan, prior to the actual receipt by the AFI DIP Lender of written notice of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this ~~Interim~~**Final** Order, and the AFI DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this ~~Interim~~**Final** Order and pursuant to the AFI DIP Loan.

(g)      ~~The~~**Except as provided in this paragraph 27(g), the** Adequate Protection**s** Payments shall not be subject to counterclaim, setoff, subordination, recharacterization, defense**,** or avoidance in the Chapter 11 Cases or any subsequent chapter 7 case**, *provided* that if the Adequate Protection Parties' respective Prepetition Obligations are determined by this Court to be undersecured, any party in interest may seek, subject to further order entered by this Court, to recharacterize and recredit to the principal balance of such Prepetition Obligations, any interest payments or payment of fees to the applicable Adequate Protection Parties permitted hereunder as Adequate Protection Payments**.

(h)      Except as expressly provided in this ~~Interim~~**Final** Order or in the Prepetition Obligations, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the Adequate Protection Parties granted by the provisions of this ~~Interim~~**Final** Order and the Prepetition Obligations shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or by any other act or omission, or (ii) the entry of an order confirming a Plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as

to any remaining Adequate Protection Obligations.  The terms and provisions of this ~~Interim~~**Final** Order and the Prepetition Obligations shall continue in the Chapter 11 Cases, in any successor cases, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the 507(b) Claims, the other administrative claims granted pursuant to this ~~Interim~~**Final** Order, and all other rights and remedies of the Adequate Protection Parties granted by the provisions of this ~~Interim~~**Final** Order and the Prepetition Obligations shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash. Notwithstanding anything contained in this paragraph, nothing in this ~~Interim~~**Final** Order shall (i) limit the Debtors' rights, if any, with respect to unimpairment of the Debtors' prepetition debt or (ii) be deemed to modify the Prepetition Obligations.

(i)     Except as expressly provided in this ~~Interim~~**Final** Order or in the AFI DIP Loan, the AFI DIP Liens, the Superpriority Claims **of the AFI DIP Lender** and all other rights and remedies of the AFI DIP Lender granted by the provisions of this ~~Interim~~**Final** Order and the AFI DIP Loan shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this ~~Interim~~**Final** Order and the AFI DIP Loan shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the AFI DIP Liens, the Superpriority Claims **of the AFI DIP Lender** and all other rights and remedies of the

AFI DIP Lender granted by the provisions of this ~~Interim~~**Final** Order and the AFI DIP Loan shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

**28.**   ~~27.~~ *Effect ~~Of~~of Stipulations ~~On~~on Third Parties.*   The stipulations, admissions, and releases contained in paragraph 3**5**(b)-3**5**(~~h~~**k**) of this **Final** Order, shall be binding on the Debtors upon entry of this ~~Interim~~**Final** Order, subject to the terms of paragraph ~~3, effective as of the Petition Date.~~**5.**   The stipulations, admissions, and releases contained in paragraph 3**5**(b)-3**5**(~~h~~**k**) of this Order, shall be binding on all parties in interest, including ~~any~~**the Creditors'** Committee, unless, and solely to the extent that, any party in interest files an objection to this ~~Interim~~**Final** Order challenging such stipulations, admissions, releases, or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against the Junior Secured Parties (an "***Objection***"), in each case no later than the later of ~~seventy-five (75~~**sixty (60**) days after entry of this ~~Interim Order~~**Final Order** *(the "Challenge Deadline"); provided that if the Creditors' Committee files a motion seeking* **standing to bring causes of action against the Junior Secured Parties** *prior to the Challenge Deadline, the Challenge Deadline shall be tolled until adjudication of such motion, which will be heard at the next omnibus hearing following the filing of the motion or as determined by the Court*.   If no such Objection is timely filed then, without further order of th~~is~~**e** Court, all of the stipulations, admissions and releases set forth in paragraph 3**5** shall be binding on all parties in interest in the Chapter 11 Cases and shall not be subject to challenge or modification in any respect.   If such an Objection is timely filed, the stipulations, admissions and releases shall nonetheless remain binding on all parties in interest and shall be preclusive except to the extent that any such stipulations, admissions and releases are expressly challenged pursuant to such timely filed Objection, and there is an order sustaining such Objection.   Notwithstanding anything to the contrary, if the Junior Notes PSA is terminated, the

stipulation contained in paragraph 3**5**(g)(~~ii~~**iii**)(A) or this ~~Interim~~**Final** Order shall not be binding on the Junior Secured Notes.   **For the avoidance of doubt, the Challenge Deadline does not apply to the Ally Debt Claims.**

**29.**    ~~28.~~ *Reservation of Rights.*    Notwithstanding anything herein to the contrary, this **Final** Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, the Consent Obligations.

**30.**    ~~29.~~ *Limitation ~~On~~on Use ~~Of~~of Prepetition Collateral and Proceeds of AFI DIP Loan.*  The ~~Loan Parties~~**Borrowers** shall use the proceeds of the Prepetition Collateral, including Cash Collateral, and the proceeds of the AFI DIP Loan solely as provided in this ~~Interim~~**Final** Order.  Notwithstanding anything herein or in any other order of th~~is~~**e** Court to the contrary, no Prepetition Collateral, including Cash Collateral, or the proceeds thereof, or the proceeds of the AFI DIP Loan, or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Prepetition Obligations, or to any of the liens or claims granted under this ~~Interim~~**Final** Order or the Prepetition Obligations, (b) assert any claims and defenses or any other causes of action against the AFI Lender or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the AFI Lender's assertion, enforcement or realization on the Prepetition Collateral in accordance with the Prepetition Obligations or this ~~Interim~~**Final** Order, (d) seek to modify any of the rights granted to the AFI Lender hereunder or under the Prepetition Obligations, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of th~~is~~**e** Court and (ii) permitted hereunder; *provided*, that without duplication of the limitations on the use

of the Carve Out, up to $~~100,000~~**125,000** in the aggregate of such proceeds may be used to pay allowed fees and expenses of professionals to ~~any Court-appointed committee~~**the Creditors' Committee** to investigate (but not initiate or prosecute any claims with respect to) any Ally Debt Claims or Junior Secured Parties Claims.

**31.    *Proofs of Claim.*  The Junior Secured Parties, the AFI Lender, and the AFI DIP Lender shall not be required to file proofs of claim in any of the Chapter 11 Cases for any claim allowed herein.  The Debtors' stipulations contained in paragraph 5 of this Final Order with respect to the Junior Secured Parties and the AFI Lender, and paragraph 7 with respect to the AFI DIP Lender, shall be deemed to constitute a timely filed proof of claim for the Junior Secured Parties, the AFI Lender, and the AFI DIP Lender, and, upon approval of this Final Order, the Junior Secured Parties, the AFI Lender, and the AFI DIP Lender shall be treated under section 502(a) of the Bankruptcy Code as if they have filed a proof of claim. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases to the contrary, the Trustee, for the benefit of itself and the Junior Secured Noteholders, the AFI Lender, and the AFI DIP Lender are hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases for any claim allowed herein with respect to the Junior Secured Parties, the AFI Lender, and the AFI DIP Lender.**

**32.    *Modifications and Amendments to Provisions to AFI LOC Amendment.*  This Final Order hereby modifies and amends certain event of default provisions of the AFI LOC Amendment.  Specifically, Section 2.6 of the AFI LOC Amendment is modified as follows:**

**(a)    Section 8.03(q) is hereby deleted in its entirety; and**

(b)      Section 8.03(r) is hereby deleted in its entirety and replaced with the following text: "(i) the failure of an order of the Bankruptcy Court, which approves a sale of assets pursuant to a Sale Agreement, to direct that the proceeds of such sale shall be used to repay the secured parties whose collateral was sold or (ii) the failure by the Debtors at the closing of the transactions approved by the order of the Bankruptcy Court referenced in the foregoing paragraph 8.03(r)(i) to repay the secured parties whose collateral was sold pursuant to such a sale; or".

**33.**    30. *Waiver of Setoff and Recoupment Rights*.  The parties on whose behalf the Borrowers are making servicer advances hereby waive any and all rights of setoff or recoupment against the Debtors and AFI to the extent such advances are directly funded by Cash Collateral.

**34.**    31. *Notice to MBS Trustees Regarding Advance Facility and Debtors' Status as an Advancing Person/Advancing Counterparty*.  The**Service by the** Debtors shall serve this**of the** Interim Order and the**a** notice of the Final Hearing on all MBS trustees or other persons for which it is servicing mortgage loans.  Service of this Interim Order in accordance with the preceding sentence shall constitute**constituted** notice and payment direction by the Debtors as the master servicer and servicer to each MBS trustee  or other person for which it is servicing mortgage loans (other than the GSEs) to pay, or cause to be paid, all collections with respect to, and all other proceeds of, receivables to the applicable Debtor, as the party to whom the master servicer's or servicer's advance reimbursement rights**, servicing fees, or servicing rights** have been sold, assigned and/or pledged, and each MBS trustee shall pay, or cause to be paid, all collections with respect to, and all other proceeds of, receivables to the applicable Debtor, as the party to whom the master servicer's or servicer's advance reimbursement rights have been sold, assigned and/or pledged (as such party may be otherwise defined) as so provided.

ny- 1040970K&E 22457667

**35.** ~~32.~~ *Waiver of Claims and Causes of Action.* Without prejudice to the rights of any other party, the Debtors waive any and all claims and causes of action against the AFI Lender and its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors related to this ~~Interim~~**Final** Order or the negotiation of the terms thereof.

**36.** ~~33.~~ *Reservation of Rights.* Notwithstanding anything herein to the contrary, this **Final** Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

~~34.    *Future Debtors.*    Upon notice to the parties and no objection having been interposed, an affiliated debtor shall be deemed to be a "Future Debtor" upon the Court's entry of an order authorizing the joint administration of such Future Debtor's Chapter 11 case with the Chapter 11 cases of the Debtors.    Upon notice to the parties and no objection having been interposed, the relief granted by this Order shall apply to the Future Debtor in these jointly-administered cases.~~

**37.** ~~35.~~ *Binding Effect; Successors and Assigns.* Subject to paragraph ~~26,~~**28,** the provisions of this ~~Interim~~**Final** Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including the Adequate Protection Parties, the Creditors' Committee and the Debtors and their respective successors and assigns (including any

chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Adequate Protection Parties and the Debtors and their respective successors and assigns, *provided*, that, except to the extent expressly set forth in this ~~Interim~~**Final** Order, the Adequate Protection Parties shall have no obligation to permit the use of Prepetition Collateral, including Cash Collateral, or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  **Further, nothing in this Final Order providing for the release of non-Debtors or injunction of actions against non-Debtors shall apply to (a) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies and liabilities of the United States and any agency thereof, (b) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of any State or any agency of any State, under state or federal environmental laws, or (c) any criminal liability under the laws of the United States.**

**38.**  ~~36.~~ *Limitation of Liability.*  ~~Subject to entry of the Final Order, solely~~**Solely** in connection with permitting the use of Prepetition Collateral, including Cash Collateral, or exercising any rights or remedies as and when permitted pursuant to this ~~Interim~~**Final** Order or the Prepetition Obligations, the Adequate Protection Parties shall not be deemed, from and after the Petition Date, to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors **so long as the Adequate Protection Parties' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a**

**vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the**

**federal or state government or the status of responsible person or managing agent to exist**

**under applicable law** (as such terms, or any similar terms, are used in the United States

Comprehensive Environmental Response, Compensation and Liability Act, ~~29~~**42** U.S.C. §§ 9601

et seq.~~,~~ **,** as amended, or any similar federal or state statute**).  Nothing in this Final Order or the**

**AFI DIP Loan shall permit the Debtors to violate 28 U.S.C. § 959(b**).  Furthermore, nothing in

this ~~Interim~~**Final** Order shall in any way be construed or interpreted to impose or allow the

imposition upon the Adequate Protection Parties any liability for any claims arising from the

prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined

in section 101(2) of the Bankruptcy Code).

**39.**    ~~37.~~ *No Impact on Certain Contracts/ Transactions.*  No rights of any entity under

sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this

~~Interim~~**Final** Order as to any contract or transaction of the kind listed in such sections of the

Bankruptcy Code.

**40.**    ~~38.~~ *Effectiveness.*  This ~~Interim Order shall take effect immediately upon entry and~~

~~shall constitute findings of fact and conclusions of law.  This Interim Order is effective~~ *~~nunc pro~~*

*~~tunc~~ ~~as of the Petition Date.~~***Final Order shall constitute findings of fact and conclusions of law**

**and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately**

**upon the entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d),**

**7062, and 9024, or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil**

**Procedure, this Final Order shall be immediately effective and enforceable upon its entry,**

**and there shall be no stay of execution or effectiveness of this Final Order.**

39.     *Final Hearing Notice.*  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties that received notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any committee after the same has been appointed, or committee counsel, if the same shall have been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York, 10104, Attn:  Larren Nashelsky, Gary Lee and Todd Goren; (b) counsel for Ally Bank, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Richard M. Cieri, Ray C. Schrock, and Stephen E. Hessler; (c) counsel to U.S. Bank National Association, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: Eric R. Wilson and Benjamin D. Feder; (d) counsel to the Ad Hoc Group of Junior Secured Notes, White & Case LLP, 1155 Avenue of the Americas, New York, New York, 10036, Attn.:  Gerard Uzzi and Harrison Denman; (e) the Office of the United States Trustee for the Southern District of New York at 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn.:  Tracy Hope Davis, Linda Riffkin and Brian S. Masumoto; (f) the Debtors' postpetition lenders; and (g) counsel to any official statutory committee appointed in these cases and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, in each case to allow actual receipt by the foregoing no later than June 5, 2012 at 4:00 p.m. prevailing Eastern time.

**41.     *The Interim Order.*  Except as specifically amended, supplemented or otherwise modified hereby, all of the provisions of the Interim order shall remain in effect and are hereby ratified by this Final Order.  In the event of any inconsistency between the**

**terms of this Final Order and the terms of the Interim Order, the terms of this Final Order shall govern.**

**42.** 40. *Objections Overruled.  Any objection that has not been withdrawn or resolved is, to the extent not resolved, hereby overruled.*

Dated:    _____ __, 2012
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

ny- 1040970K&E 22457667