## IN THE COURT OF APPEALS, FRANKLIN COUNTY; OHIO
## TENTH DISTRICT COURT OF APPEALS

UNITED STATES OF AMERICA, EX REL.
GMAC, Mortgage Co., et al.,           :      APPELLATE NO. _____
    Plaintiffs/Creditor                         (related Case Nos. 02-MS-20; 05-JG-6455;
Vs.                                            :      05-CV-7346 (03-CV-7478); 03-CV-10836;
                                                05-CV-4555; 03-CV-6954)(11-AP-875)

Yvonne D. Lewis, et al.,              :      <u>STATEMENT OF FACTS AND LAW UNDER ASNA</u>
    Defendants/Discharged Debtors

## UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK;

| | | |
|---|---|---|
| In Re: Residential Capital, LLC., et al. | ) | Case No. 12-12020 (MG) |
| | ) | (Ch.11) |
| Debtor | ) | (Related BR Case No.07-bk-57237, S.D., OHIO) |
| | ) | (Related BR Case No. 12-bk-12032, S.D., N.Y.) |
| | ) | JUDGE: GLENN, MARTIN |

## UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF OHIO;
(at Columbus)

| | | |
|---|---|---|
| In Re: SIDNEY T. LEWIS, pro se, | ) | Case No. 2:07-bk-57237 |
| | ) | (Ch.7) |
| Debtor | ) | (Related Bankr Case No. 2:05-bk-75111) |
| | ) | |
| Social Security No.: xxx-xx-5959 | ) | JUDGE: HOFFMAN, JOHN, Jr. |

| | | |
|---|---|---|
| In Re: Yvonne D. Lewis, | ) | Case No. 2:05-bk-75111 |
| | ) | (Ch.7) |
| Debtor | ) | (Related Case No. 2:07-bk-57237) |
| | ) | |
| Social Security No.: xxx-xx-2390 | ) | JUDGE: HOFFMAN, JOHN, Jr. |

## IN THE UNITED STATES DISTRICT COURT, S. D. OF OHIO
## EASTERN DIVISION (at Columbus)

UNITED STATES of America, Ex Rel.,
Sidney T. Lewis, et al.,                )      Action No. 2:08-cv-1042
    Plaintiffs                              (Related Dist. Ct. Cases 2:08-cv-16; 2:96-cv-494;
Vs.                                     )      2:09-cv-179);
                                                JUDGE: HOLSCHUH
Larry McClatchey, et al.,               )      Magistrate Judge: KING
    Defendants.

**12APE 06 0506**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRIENDS OF THE EARTH, et al., ) Case: 1: 12-cv-00363
    Plaintiff, )
)
Vs. ) Assigned To: Jackson, Amy Berman, Judge
)
UNITED STATES E.P.A. and )
LISA JACKSON, Administrator, )
    Defendants. )

STATEMENT OF FACTS AND LAW UNDER THE AVIATION SAFETY AND NOISE ABATEMENT ACT (ASNA), 49 U.S.C. §§ 47501, et seq., 47504(a)(2)(D)&(E)

Now comes Petitioners, Sidney T. Lewis (creditor) and Yvonne D. Lewis (creditor) pursuant to Ohio Evidence Rule 201(D); 11 U.S.C. §§ 362, 524, 727; and Section 1001, of the United States Code, Title 18, (See: 18 U.S.C. §1001), pursuant to federal authority under 49 U.S.C. §§ 106, 47504(a)(2)(D)&(E) [14 CFR Part 150 (Part 150)[1]], (See: 14 CFR §150.21(e) citing 18 U.S.C. §1001), and "the Clean Air Act" (See: 42 U.S.C. § 7401(c)) as follows:

I. FACTS:

1. On September 25, 1987, the provisions of 49 U.S.C. Sections 47501, et seq. (the Aviation Safety and Noise Abatement Act, hereinafter referred to as "the Act") became effective as a "designated non-attainment area" for the aircraft noise and aircraft fuel emissions with lead additives (Av-gas) as pollution on the subject properties around Port Columbus International Airport (PCIA's) noise compatibility program in Argyle Park Subdivision and the exposure of individuals to that noise 49 U.S.C. § 47502 pursuant to federal authority under "the Clean Air Act" (See: 42 U.S.C. § 7401(c)) and "the Act" (See: 49 U.S.C. § 47504(a)(2)(E), [14 CFR § 150.21(e)]).

(See: EXHIBIT A, 53 FR 2800, Port Columbus International Airport's noise compatibility program)

---

[1] "*** the provisions of 49 U.S.C. Sections 47501, et seq. (the Aviation Safety and Noise Abatement Act, hereinafter referred to as "the Act") (See: 73 FR 32622)

2. On May 14, 2012, the provisions of the Clean Air Act were "non-attained" "By Operation of Law" pursuant to 42 U.S.C. § 7407(d)(1)(C) and (5) (See: 42 U.S.C. § 7407(d)(1)(C) and (5)), due to the unregulated aircraft fuel emissions with lead additives (Av-gas) as pollution on the subject private properties in Argyle Park Subdivision as a "non-attainment area". In the lawsuit Friends of the Earth (FoE) vs. The U.S. EPA (US EPA), case no. 12-cv-363, USDC, S.D., DC, (AJ), the US EPA admitted that it fails to regulate "Av-gas" emissions from Aircraft in America on May 14, 2012 which cause the U.S. District Court to issue its Scheduling Order on June 1, 2012.

(See: EXHIBIT B, Doc. 20, Scheduling Order, case no. 12-cv-363, entered on June 1, 2012 concerning Port Columbus International Airport's noise compatibility program)

## II. LAW:

1. EXPOSURE OF INDIVIDUALS TO NOISE:

> "ASNA, codified at 49 U.S.C. § 47501 et seq., directs the Secretary of Transportation to establish "a single system of measuring noise" from aircraft operations and the exposure of individuals to that noise. 49 U.S.C. § 47502.

(See: Nat'l Bus. Aviation Ass'n v. City of Naples Airport Auth., 162 F. Supp. 2d 1343, 1350 (2001))

It follows that the Secretary of Transportation pursuant to authority under 49 U.S.C. §106(a)(2)(A)(ii) regulates the subject aircraft operations for private properties in Argyle Park Subdivision and EXPOSURE OF INDIVIDUALS TO NOISE in such "non-attainment area" under 49 U.S.C. §§ 47501, 47502.

2. REGULATIONS:

> "The FAA implements ASNA through regulations found at 14 C.F.R. § 150 ("Part 150")."

(See: Nat'l Bus. Aviation Ass'n, Id, 162 F. Supp. 2d at 1350 (M.D. Fla. 2001))

It follows that the Secretary of Transportation by and through its "administrator" of the FAA implements ASNA pursuant to authority under 14 C.F.R. § 150.21(e) for the "at issue" 1989 Noise

Exposure Map (See: 1989 NEM for PCIA's noise compatibility program).

3. PREEMPTION OF LOCAL CONTROLS:

49 U.S.C. § 40103(a) (expressly pre-empting, inter alia, local regulation of aircraft noise by regulating flight paths) and City of Burbank, 411 U.S. at 633, 93 S. Ct. at 1859-60 (concluding that "pervasive nature" of federal regulation impliedly pre-empts local control of aircraft noise).

(See: Id., 162 F. Supp. 2d 1343, 1352 (M.D. Fla. 2001)

It follows that in 1989 City of Columbus and PCIA illegally designed the flight paths (See: Exhibit A, Departure Flight Tracks) under 49 U.S.C. § 40103(a) for the 1989 NEM to travel thru private aviation easements for properties in Argyle Park Subdivision (See: City of Burbank, 411 U.S. at 633) which issues are subject to federal regulations of the U.S. EPA and Secretary of Transportation to be set forth in the Motion for Summary Judgment in case no. 12-cv-363, on or before July 20, 2012 and after the GMAC Creditor's Meeting scheduled for June 25, 2012 in case no. 12-bk-12020.

(See: EXHIBIT B, Motion for Summary Judgment due by July 20, 2012, case no. 12-cv-363)

Respectfully Submitted,

Dated: June 12, 2012. _____  Dated: June 12, 2012. _____
　　　　　　　　　　　Sidney T. Lewis, pro se　　　　　　　　　　　　　　　Yvonne D. Lewis, pro se
　　　　　　　　　　　1875 Alvason Avenue　　　　　　　　　　　　　　　　1875 Alvason Avenue
　　　　　　　　　　　Columbus, Ohio 43219　　　　　　　　　　　　　　　Columbus, Ohio 43219
　　　　　　　　　　　(614) 940-3306　　　　　　　　　　　　　　　　　　(614) 940-3306

## CERTIFICATE OF SERVICE

I, Sidney T. Lewis, certify that on June 12, 2012 the STATEMENT OF LAW AND FACTS were served on the United States Attorneys and parties, by personal delivery, e-mail, or ordinary U.S. Mail.

Dated: June 12, 2012. _____  Dated: June 12, 2012. _____
　　　　　　　　　　　Sidney T. Lewis, pro se　　　　　　　　　　　　　　　Yvonne D. Lewis, pro se
　　　　　　　　　　　1875 Alvason Avenue　　　　　　　　　　　　　　　　1875 Alvason Avenue
　　　　　　　　　　　Columbus, Ohio 43219　　　　　　　　　　　　　　　Columbus, Ohio 43219
　　　　　　　　　　　(614) 940-3306　　　　　　　　　　　　　　　　　　(614) 940-3306

EXHIBIT A

12-12020-mg    Doc 456-5    Filed 06/15/12    Entered 06/20/12 11:23:14    Exhibit Stmt. of Facts    Pg 5 of 17

DEPARTMENT OF TRANSPORTATION

Federal Aviation Administration

AGENCY: Federal Aviation Administration, DOT.

*53 FR 2800*

February 1, 1988

Approval of Noise Compatibility Program; **Port Columbus International Airport, Columbus,** OH
ACTION: Notice.

SUMMARY: The Federal Aviation Administration (FAA) announces its findings on the noise compatibility program submitted by the City of **Columbus,** Department of Public Utilities and Aviation under the provisions of Title I of the Aviation Safety and Noise Abatement Act of 1979 (Pub. L. 96-193) and 14 CFR Part 150. These findings are made in recognition of the description of Federal and nonfederal responsibilities in Senate Report Number 96-52 (1980). On July 28, 1987, the FAA determined that the noise exposure maps submitted by the City of **Columbus,** Department of Public Utilities and Aviation under Part 150 were in compliance with applicable requirements. On September 25, 1987, the Administrator approved the **Port Columbus International Airport** noise compatibility program. All of the recommendations of the program were approved except one measure, A.3., which relates to specific flight procedures requiring additional information and analysis.

EFFECTIVE DATE: The effective date of the FAA's approval of the **Port Columbus International Airport** noise compatibility program is September 25, 1987.

FOR FURTHER INFORMATION CONTACT: Prescott C. Snyder, Federal Aviation Administration, Great Lakes Region, **Airports** Division, AGL-611, 2300 East Devon Avenue, Des Plaines, Illinois 60018, (312) 694-7538. Documents reflecting this FAA action may be reviewed at this same location.

**TEXT:** SUPPLEMENTARY INFORMATION: This notice announces that the FAA has given its overall approval to the noise compatibility program for **Port Columbus International Airport,** effective September 25, 1987.

Under section 104(a) the Aviation Safety and Noise Abatement Act (ASNA) of 1979, (hereinafter referred to as "the ACT") an **airport** operator who has previously submitted a noise exposure map may submit to the FAA a noise compatibility program which sets forth the measures taken or proposed by the **airport** operator for the reduction of existing noncompatible land uses and prevention of additional noncompatible land uses within the area covered by the noise exposure maps. The Act requires such programs to be developed in consultation with interested and affected parties including local communities, government agencies, **airport** users, and FAA personnel.

Each **airport** noise compatibility program developed in accordance with Federal Aviation Regulation (FAR) Part 150 is a local program, not a Federal program. The FAA does not substitute its judgment for that of the **airport** proprietor with respect to which measures should be recommended for action. The FAA's approval or disapproval of FAR Part 150 program recommendations is measured according to the standards expressed in Part 150 and the Act and is limited to the following determinations:

a. The noise compatibility program was developed in accordance with the provisions and procedures of FAR Part 150;

b. Program measures are reasonably consistent with achieving the goals of reducing existing noncompatible land uses around the **airport** and preventing the introduction of additional noncompatible land uses;

EXHIBIT A

c. Program measures would not create an undue burden on interstate or foreign commerce, unjustly discriminate against types or classes of aeronautical uses, violate the terms of **airport** grant agreements, or intrude into areas preempted by the Federal Government; and

d. Program measures relating to the use of flight procedures can be implemented within the period covered by the program without derogating safety, adversely affecting the efficient use and management of the navigable airspace and air traffic control systems, or adversely affecting other powers and responsibilities of the Administrator prescribed by law.

Specific limitations with respect to FAA's approval of an **airport** noise compatibility program are delineated in FAR Part 150, section 150.5. Approval is not a determination concerning the acceptability of land uses under Federal, state, or local law. Approval does not by itself constitute an FAA implementing action. A request for Federal action or approval to implement specific noise compatibility measures may be required, and an FAA decision on the request may require an environmental assessment of the proposed action. Approval does not constitute a commitment by the FAA to financially assist in the implementation of the program nor a determination that all measures covered by the program are eligible for grant-in-aid funding from the FAA. Where Federal funding is sought, requests for project grants must be submitted to the FAA Detroit **Airports** District Office in Belleville, Michigan.

The City of **Columbus,** Public Utilities and Aviation Department submitted to the FAA on March 26, 1987, the noise exposure maps, descriptions, and other documentation produced during the noise compatibility planning study conducted from May 3, 1985 through March 26, 1987. The **Port Columbus International Airport** noise exposure maps were determined by the FAA to be in compliance with applicable requirements on July 28, 1987. Notice of this determination was published in the Federal Register on August 10, 1987.

The **Port Columbus International Airport** study contains a proposed noise compatibility program comprised of actions designed for phased implementation by **airport** management and adjacent jurisdictions from the date of study completion to beyond the year 1992. It was requested that the FAA evaluate and approve this material as a noise compatibility program as described in section 104(b) of the Act. The FAA began its review of the program on March 26, 1987, and was required by a provision of the Act to approve or disapprove the program within 180 days (other than the use of new flight procedures for noise control). Failure to approve or disapprove such program within the 180-day period would have been deemed to be an approval of such program.

The submitted program contained nineteen (19) proposed actions for noise mitigation, on and off the **airport.** The FAA completed its review and determined that the procedural and substantive requirements of the Act and FAR Part 150 have been satisfied. The overall program, therefore, was approved by the Administrator effective September 25, 1987.

Outright approval was granted for eighteen (18) of nineteen (19) specific program elements submitted. One measure, A.3, was not approved at this time, because it relates to specific flight procedures which require additional information and analysis. Program elements approved consist of operational controls, such as establishment of departure tracks to the west, use of standard noise abatement departure profile, restrictions on maintenance run ups and other noise relief procedures. Also, included are land use strategies such as land acquisition, easements, soundproofing, zoning restrictions, and building code requirements. Finally, program management elements are included such as establishing and staffing a noise abatement office to monitor **airport** noise, document noise complaints, educate the public on **airport** noise, and update the noise compatibility program.

These determinations are set forth in detail in a Record of Approval endorsed by the Administrator on September 25, 1987.

The Record of Approval, as well as other evaluation materials and the documents comprising the submittal, are available for review at the FAA office listed above and at the administrative offices of the City of **Columbus,** Department of Public Utilities and Aviation.

Issued in Des Plaines, Illinois, on December 29, 1987.

Monte R. Belger,

Acting Director, Great Lakes Region.
[FR Doc. 88-1964 Filed 1-29-87; 8:45 am]

EX1 A





Exhibit 2L — 1991 Aircraft Noise Exposure

EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRIENDS OF THE EARTH,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　　　)　　Civil Action No. 12-0363 (ABJ)
　　　　　　　　　　　　　　　　　　　　　)
UNITED STATES ENVIRONMENTAL　　　　)
PROTECTION AGENCY, *et al.*,　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendants.　　　　　　　)

## SCHEDULING ORDER

In light of the joint report submitted by the parties pursuant to Local Civil Rule 16.3, [Dkt. # 19], it is **ORDERED**:

1. that defendants must file their motion for summary judgment on or before July 20, 2012, and that the Court will establish the schedule for further proceedings after it has received and reviewed the motion. Discovery and plaintiff's obligation to respond to the motion are suspended until further notice by the Court.

2. that the counsel read and comply with all of the Local Rules of this Court, particularly LCvR 5.1(b), 5.2(a), and 5.4. All rules will be enforced by the Court whether or not they are specifically reiterated in this Scheduling Order.

## DISCOVERY

Counsel are required to confer in good faith in an effort to resolve all discovery disputes before bringing any dispute to the Court. If counsel are unable to resolve the matter themselves, they may arrange a telephone conference with the Court and counsel for all parties by contacting

12-12020-mg    Doc 456-5    Filed 06/15/12    Entered 06/20/12 11:23:14    Exhibit Stmt.
of Facts    Pg 12 of 17
Case 1:12-cv-00363-ABJ    Document 20-2    Filed 06/01/12    Page 2 of 6

chambers. **No written discovery motion may be filed without a prior conference with the Court and leave of Court.** Disputes brought to the Court for resolution may be subject to the sanctions provisions set forth in Fed. R. Civ. Proc. 37 and LCvR. 26.2(a).

## SCHEDULING MATTERS

Counsel are directed to contact the Court's Courtroom Deputy in the first instance to request the rescheduling of court appearances. The party seeking the change in schedule must first confer with counsel for all other parties and be prepared to provide the Courtroom Deputy with proposed mutually agreeable dates.

Extensions of time to file dispositive motions, status reports, or expert witness designations, or to complete discovery, will be granted as a matter of course if all parties consent and if the extensions will not require a change in any scheduled court appearance (status conference, motion hearing, pretrial conference, trial). But **any motion to extend a deadline set by the Court must be filed at least two business days prior to the date to be extended.** Motions that do not comply with this requirement, including consent motions, will be denied absent a statement demonstrating good cause for the failure to do so.

## MOTIONS

Motions that do not comply with LCvR 7 may be denied or stricken *sua sponte*.

A party may not file a sur-reply without first requesting leave of the Court.

Motions for reconsideration of prior rulings are strongly discouraged. They may be filed only when the requirements of Fed. R. Civ. P. 54(b), Fed. R. Civ. P. 59(e), and/or Fed. R. Civ. P. 60(b) are met. If such a motion is filed, it shall not exceed ten (10) pages in length. Moreover, the Court may strike: (a) motions which simply reassert arguments previously raised and rejected

12-12020-mg    Doc 456-5    Filed 06/15/12    Entered 06/20/12 11:23:14    Exhibit Stmt.
of Facts    Pg 13 of 17
Case 1:12-cv-00363-ABJ    Document 20    Filed 06/01/12    Page 3 of 6

by the Court; or (b) arguments which should have been previously raised, but are being raised for the first time. *See Nat'l Trust v. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1995).

## MOTIONS FOR SUMMARY JUDGMENT

Counsel should take care to comply with LCvR 7(h). In circumstances in which Rule 7(h)(1) is applicable, the parties must abide by the following guidelines in complying with the rule:

1. The memorandum of points and authorities shall list the elements of any count for which summary judgment is sought.

2. The statement described in LCvR 7(h)(1) listing the facts as to which the moving party contends there is no material issue must be a separate document.

3. Each material fact included in the statement must be numbered individually, and a citation to the evidentiary support in the record must be provided for each numbered fact.

4. The moving party shall indicate which element is supported by the material fact.

5. The Court will not consider any fact (a) not supported by a reference to evidence; (b) supported by a citation to a pleading rather than to evidence; (c) that states a legal conclusion; or (d) that is asserted in a brief and not in the movant's statement of material facts.

6. The opposition to a motion for summary judgment must be accompanied by a separate document that responds directly and individually to the movant's material facts.

7. The response must contain numbered responses that correspond to each numbered material fact listed in the moving party's statement and indicate whether or not a dispute exists as to each. (The Court would greatly appreciate a response that provides this information in the form of a table with two columns – one for the movant's numbered material facts, and one for the response to each.)

8. For each fact that is disputed, the response should contain (in the appropriately numbered individual paragraph) a concise, non-argumentative response and a citation to the evidence supporting that response.

9. The Court will deem the movant's citations to be supportive of its facts unless the respondent specifically informs the Court to the contrary in its response.

10. The opposition to a motion for summary judgment must also include the statement of genuine issues described in LCvR 7(h)(1) that lists any additional facts which the

12-12020-mg    Doc 456-5    Filed 06/15/12    Entered 06/20/12 11:23:14    Exhibit Stmt.
of Facts    Pg 14 of 17
Case 1:12-cv-00363-ABJ    Document 20-4    Filed 06/01/12    Page 4 of 6

respondent contends are material and present a genuine issue for trial. The statement must comply with the guidelines set out in paragraphs 1-3 above.

11. If a respondent provides a statement of additional material facts which are in dispute, then, within the time permitted for a reply, the movant may file a concise and supported response to each of the respondent's facts, also in a numbered format that corresponds to the numbers in the respondent's statement.

In cases where LCvR 7(h)(2) would be applicable, the same guidelines apply with the exception that the citations should refer to specific pages of the administrative record.

## JOINT PRETRIAL STATEMENT

The parties must prepare a Joint Pretrial Statement in accordance with LCvR 16.5(d)(5) rather than separate pretrial statements for each party. Counsel for plaintiffs shall file and serve the statement, and submissions of all counsel must be included in the filing.

The Joint Pretrial Statement shall include:

1. The information required by LCvR 16.5(b) (whether or not those items are further described in this order).

2. Stipulated facts (both already agreed and proposed).

3. A list of proposed exhibits for each side by exhibit number, title, and date, specifying any exhibits to which there is any objection. Exhibits will be presumed authentic unless an objection to their authenticity is noted in the Joint Pretrial Statement, and any objections to the admissibility of trial exhibits on any other grounds, with the exception of relevance, must be contained in the Joint Pretrial Statement.

4. A designation of depositions, or portions thereof, to be offered by either party, as described in LCvR 16.5(b)(7). All objections to the use of depositions and all additions proposed pursuant to F.R.E. 106 must be set forth in the Joint Pretrial Statement.

5. A list of motions to be decided before or at the commencement of trial.

6. Proposed amendments to the pleadings.

7. An estimate of trial time.

In addition, if demand for a jury has been made by either party, the Joint Pretrial Statement must also include:

8. Any waiver of jury trial.

9. Proposed *voir dire* questions that indicate:

   a.   the *voir dire* questions on which the parties agree; and

   b.   the *voir dire* questions on which the parties disagree, with specific objections noted below each disputed question and supporting legal authority (if any).

10. Proposed jury instructions that indicate:

   a.   the instructions on which the parties agree; and

   b.   the instructions on which the parties disagree, with specific objections noted below each disputed instruction and supporting legal authority (if any).

Any instructions contained in the Standardized Civil Jury Instructions for the District of Columbia should not be separately provided to the Court, but should be identified by number only. Any other proposed instructions must be provided to the Court in their entirety and should be formatted so that each individual jury instruction begins on a new page, with the source and supporting authority noted at the bottom of the page.

## THE PRETRIAL CONFERENCE

Plaintiff must attend the pretrial conference, as must someone with settlement authority for the defendant.

At the conference, counsel must jointly provide the Court with two copies of a notebook containing copies of all exhibits that either side will seek to introduce – pre-marked with their exhibit numbers -- with an index or table of contents to the notebooks, and two copies of a

separate notebook containing excerpts from any depositions that either side may seek to introduce.

## SETTLEMENT

Counsel are expected to continue to evaluate their respective cases for settlement purposes, and the parties may notify chambers at any time if they jointly conclude that the case would benefit from the assistance of the Court's Mediation Program or a Magistrate Judge. If the case settles in whole or in part, plaintiff's counsel shall advise the Court by promptly filing a stipulation.

**SO ORDERED.**

*/s/ Amy B. Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: June 1, 2012

(Plat map: ARGYLE PARK, Book 36 Page 6 — illegible surveyor's plat drawing with lot numbers, street names including Enderly Drive, Argyle Drive, Alvason Avenue, Dysart Avenue, and signature/certification blocks dated April/May 1963.)