**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------------------------- x | | |
| In re | : | |
| | : | **Chapter 11** |
| | : | |
| **RESIDENTIAL CAPITAL, LLC,** *et al.,* | : | **Case No. 12-12020 (MG)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| ----------------------------------------------------------- x | | |

**FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION,**
**AND (III) MODIFYING THE AUTOMATIC STAY**

Upon the motion, dated May 14, 2012 (the "**Motion**")[1] of Residential Capital, LLC and

its direct and indirect subsidiaries, each as a debtor and debtor in possession (collectively, the

"**Debtors**") in the above-captioned chapter 11 cases (collectively, with any successor case, the

"**Cases**") pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United States Code,

11 U.S.C. § 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the

Local Bankruptcy Rules of the Southern District of New York, seeking entry of an order (this

"**Final Order**"):

(i)      authorizing the Debtors' use of "cash collateral" (as defined in section

363(a) of the Bankruptcy Code) of Citibank (as defined herein) (the "**MSR Cash**

**Collateral**");

(ii)      providing adequate protection to Citibank and for any diminution in value

of its interest in the Prepetition MSR Collateral (as defined herein), including the MSR

Cash Collateral; and

---

[1] Capitalized terms used and not defined herein shall have the meanings ascribed in the Motion.

(iii)    vacating and modifying the automatic stay imposed by section 362 of the

Bankruptcy Code to the extent necessary to implement and effectuate the terms and

provisions of this Final Order.

The Court having considered the Motion, the Affidavit of James Whitlinger, Chief

Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day

Pleadings, sworn to on May 14, 2012, the exhibits attached thereto, and the evidence submitted

or adduced and the arguments of counsel made at the interim hearing held on May 14, 2012 (the

"**Interim Hearing**") and the final hearing held on June 18, 2012 (the "**Final Hearing**"); and

after due deliberation and consideration, and for good and sufficient cause appearing therefor;

## THE COURT HEREBY FINDS THAT[2]:

A.    _Petition Date_:  On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed

a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy

Court for the Southern District of New York (the "**Court**") commencing these Cases.

B.    _Debtors in Possession_.  The Debtors are continuing in the management and

operation of their businesses and properties as debtors in possession pursuant to sections 1107

and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    _Jurisdiction and Venue_.  This Court has jurisdiction, pursuant to 28 U.S.C.

§§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby.

Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue

for the Cases appears proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.

D.    *Statutory Committee*.  On May 16, 2012, the United States Trustee (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "**Statutory Committee**").

E.    *Notice.*  Notice was given by electronic mail, facsimile and/or overnight delivery of (1) the Interim Hearing, the Final Hearing, and the relief requested in the Motion, to (i) the 50 largest unsecured creditors of the Debtors on a consolidated basis; (ii) the Administrative Agent under the DIP Facility; (iii) the Collateral Agent under the DIP Facility; (iv) the DIP Lenders (as defined in the Motion); (v) the Prepetition Finance Parties;[3] (vi) Ally Financial Inc.; (vii) Ally Bank; (viii) Citibank, N.A., as secured lender under the Prepetition MSR Facility (as defined below); (ix) U.S. Bank National Association, as trustee for the Junior Secured Notes;[4]  (x) Wells Fargo Bank, N.A., as collateral agent for the Junior Secured Notes, as collateral agent for the Ally Senior Secured Credit Facility,[5]  and as collateral control agent under the Intercreditor Agreement;[6] (xi) BMMZ Holdings LLC, as buyer under the BMMZ Repo Facility; (xii) Fannie Mae (a/k/a The Federal National Mortgage Association); (xiii) Freddie Mac (a/k/a The Federal Home Loan Mortgage Corporation); (xiv) Ginnie Mae (a/k/a the Government National Mortgage Association; (xv) the GSAP Transferor (as defined below); (xvi) the servicers and sub-servicers

---

[3]     "**Prepetition Finance Parties**" means The Bank of New York Mellon, as indenture trustee under the Prepetition GSAP Facility (as defined in the DIP Credit Agreement) and Barclays, as administrative agent under the Prepetition GSAP Facility.

[4]     "**Junior Secured Notes**" means the 9.625% Junior Secured Guaranteed Notes due 2015 issued by ResCap pursuant to the Prepetition Junior Secured Indenture, in an initial aggregate face amount of $4,010,280,000, as amended or supplemented prior to the date hereof.  "**Prepetition Junior Secured Indenture**" means the Indenture, dated as of June 6, 2008, among ResCap, as issuer, the Subsidiaries of ResCap party thereto as guarantors, and U.S. Bank National Association, as trustee, as amended or supplemented prior to the date hereof.

[5]     The "**AFI Senior Secured Credit Facility**" means the credit facility under (a) the Amended and Restated Loan Agreement, dated as of December 30, 2009, by and among RFC, GMACM, ResCap, certain other affiliates of ResCap, Wells Fargo Bank, N.A., and GMAC Inc., as amended or supplemented prior to the date hereof, and related documents, as amended or supplemented prior to the date hereof.

[6]     The "**Intercreditor Agreement**" means the Intercreditor Agreement, dated as of June 6, 2008, relating to the Junior Secured Notes and the AFI Senior Secured Credit Facility.

under the Designated Servicing Agreements and the Specified Servicing Agreements (each term

as defined in the DIP Credit Agreement); (xvii) the MBS Trustees (as defined in the DIP Credit

Agreement); (xviii) Nationstar Mortgage LLC and its counsel; and (xix) the U.S. Trustee

(collectively, the "**Initial Notice Parties**"), and (2) the Final Hearing only, to (i) the Statutory

Committee and (ii) those parties who have requested notice pursuant to Bankruptcy Rule 2002

(collectively, together with the Initial Notice Parties, the "**Notice Parties**").  Such notice

constitutes good and sufficient notice of the Motion, the Interim Hearing and the Final Hearing

under the circumstances in accordance with Bankruptcy Rule 4001(b), the Local Bankruptcy

Rules and section 102(1) of the Bankruptcy Code, as required by sections 363(c) and 363(e) of

the Bankruptcy Code.

        F.       *The Prepetition MSR Facility*.  Pursuant to that certain Amended and Restated

Loan and Security Agreement, dated as of June 30, 2010 (as amended, supplemented or

otherwise modified, including pursuant to Amendment Number Ten, dated March 30, 2012,

pursuant to which Citibank agreed, among other things, to the extension of the Loan Repayment

Date (as defined in the Amended and Restated Loan and Security Agreement) to May 30, 2012,

the "**Prepetition MSR Agreement**" and, together with all other loan and security documents

related to, referenced in or executed in connection with the Prepetition MSR Agreements, the

"**Prepetition MSR Credit Documents**"), among GMAC Mortgage, LLC ("**GMAC**

**Mortgage**"), as Borrower, Residential Capital LLC, as Guarantor, and Citibank, N.A., as Lender

("**Citibank**"), Citibank provided a credit facility to GMAC Mortgage (the "**Prepetition MSR**

**Facility**").  The Prepetition MSR Facility provided the Debtors with financing to provide

funding for the origination or acquisition of certain mortgage loan servicing rights (as defined in

the Prepetition MSR Agreement, the "**Servicing Rights**").  GMAC Mortgage's obligations under

4

the Prepetition MSR Facility are guaranteed by Residential Capital, LLC, a Debtor in these Cases.

G.     _Debtors' Stipulations Regarding the Prepetition MSR Facility_.  Without prejudice to the rights of parties in interest as set forth in Paragraph 16 herein, the Debtors admit, stipulate and agree to, and with, the following with respect to the Prepetition MSR Facility (collectively, the "**Debtors' Stipulations**"):

(iv)    _Prepetition MSR Obligations_.  As of the Petition Date, the outstanding principal amount of all loans under the Prepetition MSR Agreement was not less than $152 million (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition MSR Credit Documents, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorney's fees, related expenses and disbursements), reimbursement obligations, indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof to the extent and as provided for in the Prepetition MSR Credit Documents, including all "Obligations" as described in the Prepetition MSR Agreement, the "**Prepetition MSR Obligations**").  Subject to Paragraph 16, in light of the Prepetition MSR Obligations and the value of the MSR Prepetition Collateral with respect thereto, Citibank is oversecured and, accordingly, is entitled to interest and fees with respect to the Prepetition MSR Obligations in accordance with the Prepetition MSR Credit Documents.

(v)    _Prepetition MSR Liens and Prepetition MSR Collateral_.  As more fully set forth in the Prepetition MSR Credit Documents, prior to the Petition Date, the Debtors granted security interests in and liens on, among other things, all of the Debtors' existing and after acquired Servicing Rights, to the full extent of the Debtors' interest therein and regardless of

where located, whether or not yet accrued, earned, due or payable, as well as all other present and future rights and interests of GMAC Mortgage in such Servicing Rights, all contracts with Fannie Mae and Freddie Mac relating to the Servicing Rights, and all monies due or to become due with respect to and all proceeds of the Servicing Rights, including the MSR Cash Collateral, and related collateral (collectively, the "**Prepetition MSR Collateral**") to Citibank (the "**Prepetition MSR Liens**").

(vi)     *Validity and Perfection of Prepetition MSR Liens and Prepetition MSR Obligations*.  Subject to the provisions of Paragraph 16 of this Final Order, each of the Debtors acknowledges and agrees that: (a) as of the Petition Date, the Prepetition MSR Liens on the Prepetition MSR Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) the Prepetition MSR Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (c) other than the Agency Interests (as defined herein), to the extent set forth in the Agency Acknowledgement Agreements (as defined herein), no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition MSR Liens or Prepetition MSR Obligations exist; (d) no portion of the Prepetition MSR Liens or Prepetition MSR Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under the Bankruptcy Code, against Citibank or its affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to its loans to the Debtors under the Prepetition MSR Credit Documents.

(vii)    *Priority of Prepetition MSR Liens*.  As of the Petition Date, the Prepetition

MSR Liens were senior in priority over any and all other liens on the Prepetition MSR

Collateral, subject only to the interests (collectively, the "**Agency Interests**") of Freddie Mac

and Fannie Mae as set forth in (a) the Prepetition MSR Agreement, (b) the Federal Home Loan

Mortgage Corporation Acknowledgement Agreement among Freddie Mac, GMAC Mortgage

and Citibank, N.A. dated March 12, 2009 (the "**Freddie Mac Acknowledgement Agreement**"),

and (c) the Acknowledgement Agreement (Single Secured Party) among Citibank, N.A., GMAC

Mortgage and Fannie Mae dated September 7, 2007 (the "**Fannie Mae Acknowledgement**

**Agreement**" and, together with the Freddie Mac Acknowledgement Agreement, the "**Agency**

**Acknowledgement Agreements**").

(viii)    *Cash Collateral*.  Each Debtor represents that all of the Debtors' cash

proceeds of the Servicing Rights and related collateral, including but not limited to all cash on

deposit in that certain "Collection Account," as defined in the Prepetition MSR Agreement and

the MSR Concentration Account (as defined herein), constitutes the MSR Cash Collateral of

Citibank.

(ix)    *Section 552(b)*.  The Debtors have agreed not to assert any "equities of the

case" claims under section 552(b) of the Bankruptcy Code against Citibank with respect to

proceeds, products, offspring or profits of any of the Prepetition MSR Collateral.

H.    *Adequate Protection*.  Citibank is entitled to receive adequate protection to the

extent of any diminution in value of its interests in the Prepetition MSR Collateral, including the

MSR Cash Collateral, resulting from the use of MSR Cash Collateral without the continued

maintenance of the Borrowing Base (as defined in the Prepetition MSR Agreement) in

accordance with the terms of the Prepetition MSR Agreement or as a result of the imposition of

the automatic stay pursuant to section 362 of the Bankruptcy Code.  Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, (a) Citibank will receive (i) the MSR Adequate Protection Liens (as defined below); (ii) the Adequate Protection Superpriority Claim (as defined below); and (iii) the Adequate Protection Payments (as defined below) and (b) the Debtors agree that they will seek authority in any order approving the sale of the Prepetition MSR Collateral to provide that the net proceeds of such sale shall be applied by the Debtors to repay the Obligations under the Prepetition MSR Credit Documents, provided the Agency Interests are satisfied through such sale (together with the MSR Adequate Protection Liens, the Adequate Protection Superpriority Claim and the Adequate Protection Payments, the "**Adequate Protection**").  Notwithstanding the foregoing, if the Prepetition MSR Obligations are determined by this Court to be undersecured, interest payments and payment of fees permitted hereunder may be recharacterized and recredited to the principal balance of such Prepetition MSR Obligations pursuant to further order entered by this Court.

I.      *Necessity of Relief Requested*.  The ability of the Debtors to finance their operations requires, in addition to the Debtors' proposed DIP Facility and use of the Ally Cash Collateral and Junior Secured Notes Cash Collateral, the use of MSR Cash Collateral, absent which immediate and irreparable harm will result to the Debtors, their estates and creditors, and the possibility for a successful chapter 11 case.  In the absence of the use of MSR Cash Collateral, the continued operation of the Debtors' businesses would not be possible and serious and irreparable harm to the Debtors, their estates and their creditors would occur.  The relief requested in the Motion, therefore. is necessary for the continued operation of the Debtors' businesses and the preservation of their property.  Citibank and the Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of MSR Cash Collateral as set forth

herein to fund the continued operation of the Debtors' businesses during the Specified Period (as

defined below).  Entry of this Final Order is in the best interests of the Debtors and their estates.

Based upon the foregoing findings and conclusions, the Motion and the record before the

Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    <u>Motion Granted</u>.  The Motion is granted as set forth herein, and the use of MSR

Cash Collateral is authorized, subject to the terms of the interim order of the Court entered on

May 15, 2012 granting the Motion on an interim basis [Docket No. 79] (the "**Interim Order**")

and this Final Order.

2.    <u>Objections Overruled</u>.  All objections to the Motion to the extent not withdrawn

or resolved are overruled.

3.    <u>Authorization to Use MSR Cash Collateral</u>.  Subject to the terms and conditions

of this Final Order, the Debtors are authorized to use the MSR Cash Collateral for the period (the

"**Specified Period**") from the date of entry of this Final Order through the date that is the earliest

to occur of (a) the expiration of the Remedies Notice Period, (b) the date on which maturity of

the DIP Facility is accelerated pursuant to the DIP Loan Agreement as a result of an event of

default thereunder, (c) the effective date of a Chapter 11 plan for any Debtor with assets

exceeding $10 million, or (d) the initial scheduled date of maturity of the DIP Facility, up to a

maximum of eighteen (18) months from the closing date of the DIP Facility.  The MSR Cash

Collateral may be used during the Specified Period solely (x) to fund the cash needs related to

the operations and assets of the assets that comprise the Prepetition MSR Collateral, including

funding advances or repurchase obligations owed by the Debtors with respect to such Prepetition

MSR Collateral, and (y) to fund an allocated portion of the Debtors' costs of administering these

Cases based on the value of the Prepetition MSR Collateral relative to the value of the Debtors'

other assets (any such MSR Cash Collateral used to pay such allocated administrative costs, the

"**Allocated MSR Cash Collateral**") in accordance with the budget previously approved by

Citibank, a copy of which is attached hereto as **Exhibit A** (as may be amended as provided

herein, the "**Budget**").

      4.    <u>MSR Adequate Protection Liens</u>.

      (a)    *MSR Adequate Protection Liens*.  As adequate protection of the interests

of Citibank, pursuant to sections 361 and 363(e) of the Bankruptcy Code, in an amount equal to

the aggregate diminution in value of the MSR Prepetition Collateral to the extent of Citibank's

interests therein, the Debtors were, pursuant to the Interim Order, and hereby are authorized and

deemed to have granted additional and replacement continuing valid, binding, enforceable, non-

avoidable, and automatically perfected post-petition security interests in and liens (the "**MSR**

**Adequate Protection Liens**") on any and all presently owned and hereafter acquired assets of

the Debtors and their estates that do or would (absent the commencement of the Cases) constitute

Prepetition MSR Collateral under the Prepetition MSR Credit Documents, including but not

limited to all cash in the MSR Concentration Account (as defined herein) (such assets, together

with the Prepetition MSR Collateral, the "**MSR Collateral**").

      (b)    *Priority of MSR Adequate Protection Liens*.

      (i)    The MSR Adequate Protection Liens shall be senior to all other

security interests in, liens on, or claims against any of the MSR Collateral, subject only to

the Agency Interests.

      (ii)    The MSR Adequate Protection Liens shall be enforceable against

the Debtors, their estates and any successors thereto, including without limitation, any

trustee or other estate representative appointed in the Cases, or any case under chapter 7

of the Bankruptcy Code upon the conversion of any of the Cases, or in any other

proceedings superseding or related to any of the foregoing (collectively, "**Successor**

**Cases**").  Except as provided herein, the MSR Adequate Protection Liens shall not be

made subject to or *pari passu* with any lien or security interest heretofore or hereinafter

granted in the Cases or any Successor Cases, and the MSR Adequate Protection Liens

shall be valid and enforceable against any trustee or other estate representative appointed

in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or

Successor Cases.  The MSR Adequate Protection Liens shall not be subject to sections

510, 549, or 550 of the Bankruptcy Code, and no lien or interest avoided and preserved

for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be

made *pari passu* with or senior to the Prepetition MSR Liens or the MSR Adequate

Protection Liens.

> 5.    Adequate Protection Superpriority Claim.

> (a)    *Adequate Protection Superpriority Claim*.  As further adequate protection

of the interests of Citibank in the MSR Prepetition Collateral against any diminution in value of

such interests in the Prepetition MSR Collateral, Citibank was, pursuant to the Interim Order,

and hereby is granted as and to the extent provided by sections 503(b) and 507(b) of the

Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases

and any Successor Cases including, without limitation, the proceeds of chapter 5 avoidance

actions other than the proceeds of an avoidance action, if any, received from Citibank (the

"**Adequate Protection Superpriority Claim**"); provided, however, that Citibank agrees to use

commercially reasonable efforts to seek payment from the MSR Cash Collateral to satisfy the

11

Adequate Protection Superpriority Claim prior to seeking payment from the unencumbered assets of the Debtors' estates.

(b)    *Priority of the Adequate Protection Superpriority Claim*.  The Adequate Protection Superpriority Claim shall have priority over all administrative expenses and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, except the Adequate Protection Superpriority Claim (i) shall be junior to the superpriority administrative expense claims granted to the Debtors' proposed providers of debtor in possession financing and the Carve Out (as defined herein), and (ii) may be *pari passu* with the superpriority administrative expense claims granted to any parties that provide the Debtors with use of cash collateral (collectively, the "**Permitted Superpriority Claims**").

6.    Adequate Protection Payments and Protections.

(a)    *Adequate Protection Payments*.  As further adequate protection, each Debtor was, pursuant to the Interim Order, and hereby is authorized and directed to provide adequate protection payments to Citibank (the "**Adequate Protection Payments**"), in the form of: (i) payments of interest on the Prepetition MSR Obligations at the non-default rate set forth in the Prepetition MSR Agreement, (ii) any fees of Citibank pursuant to the Prepetition MSR Agreement payable at the times specified in the Prepetition MSR Agreement; and (iii) ongoing payment of the reasonable fees, costs and expenses of Citibank, including, without limitation, the payment of the reasonable fees and expenses of legal and other professionals retained by Citibank in accordance with Paragraph 11 hereof.

(b)      The Debtors shall seek authority from the Court in any order approving

the sale, transfer, lease, encumbrance or other disposition of any portion of the MSR Collateral

issued prior to payment in full of the Prepetition MSR Obligations, that such approval be

conditioned upon the repayment of the loans under the Prepetition MSR Facility with the

proceeds thereof, provided the Agency Interests are satisfied through such sale.

7.      <u>MSR Concentration Account</u>.  As a condition to the authorization to use MSR

Cash Collateral, the Debtors shall segregate the MSR Cash Collateral from the Debtors' other

cash by depositing the MSR Cash Collateral into a newly formed separate concentration account

(the "**MSR Concentration Account**") at JP Morgan Chase Bank, N.A. ("**JPM**"), and subject to

a deposit account control agreement entered into among JPM, GMAC Mortgage, and Citibank.

8.      <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Bankruptcy

Code section 362(a) is modified as necessary to effectuate all of the terms and provisions of this

Final Order, including, without limitation, to: (a) permit the Debtors to grant the MSR Adequate

Protection Liens and Adequate Protection Superpriority Claim; (b) permit the Debtors to perform

such acts as Citibank may request in its reasonable discretion to assure the perfection and priority

of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to

Citibank under this Final Order; (d) permit the Debtors to open the MSR Concentration Account,

as necessary and execute a deposit account control agreement with respect thereto without

further order of this Court; and (e) authorize the Debtors to pay, and Citibank to retain and apply

payments made in accordance with the terms of this Final Order; <u>provided</u>, <u>however</u>, that any

stay of relief with respect to the exercise of remedies shall be in accordance with Paragraph 13

below or as otherwise ordered by this Court.

9.      <u>Perfection of MSR Adequate Protection Liens</u>.  The Interim Order and this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the MSR Adequate Protection Liens and the liens on the MSR Cash Collateral Account without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the MSR Adequate Protection Liens and the liens on the MSR Cash Collateral Account, or to entitle Citibank to the priorities granted herein.  Notwithstanding the foregoing, Citibank is authorized to file, as it deems necessary or advisable, such financing statements, notices of liens and other instruments or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable MSR Adequate Protection Liens, liens on the MSR Cash Collateral Account, and all such financing statements, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such filing or recordation shall be necessary or required in order to create, evidence or perfect the MSR Adequate Protection Liens including the liens on the MSR Cash Collateral Account.  The Debtors are authorized and directed to execute and deliver promptly upon demand to Citibank all such financing statements, notices, instruments and other documents as Citibank may reasonably request.  Citibank, in its sole discretion, may file a copy of the Interim Order and this Final Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, instrument, or similar document.

10.     <u>Additional Covenants of the Debtors</u>.  The Debtors shall:

14

(a)       Remit all MSR Cash Collateral, as and when received, for deposit to the

MSR Concentration Account to be used in accordance with the Interim Order, this Final Order,

the Budget and the Cash Management Order (as defined herein);

(b)       Provide to Citibank and the Statutory Committee (i) monthly servicing

tapes required under the MSR Prepetition Agreement; (ii) on a bi-weekly basis, variance reports

on actual versus projected cash flows of the operations with respect to the MSR Collateral;

(iii) every four weeks, updated Budgets; (iv) monthly collateral reports and such other monthly,

quarterly or annual financial reports as the Debtor is required to provide pursuant to the DIP

Facility; and (v) notice of any changes in tier rating of GMAC Mortgage by Freddie Mac or

Fannie Mae.

(c)       Serve Citibank and its counsel, and counsel to any Statutory Committee,

with a copy of each monthly report filed by the Debtors in these Cases as required by the Court,

the U.S. Trustee or applicable law.

11.      <u>Payment of Professional Fees</u>.  Professionals for Citibank shall not be required to

comply with the U.S. Trustee fee guidelines for the payment of fees and expenses, but each

professional shall provide detailed fee and expense statements (redacted if necessary for

privilege) to the U.S. Trustee, counsel for the Statutory Committee, counsel for the

Administrative Agent under the DIP Facility, and counsel for the Debtors (the "**Fee Notice**

**Parties**").  On the eleventh (11th) business day after receipt of any invoice for such fees and

expenses by the Fee Notice Parties, the Debtors shall pay all fees and expenses not subject to

objection.  To the extent any of the Fee Notice Parties has an objection to the fees and expenses

of any such professional, they shall so advise the professional.  If any such objection is raised

and not resolved and/or withdrawn, the parties shall submit any dispute to this Court for adjudication.

12.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived in writing by Citibank, shall constitute an event of default (collectively, the "**Events of Default**"):

(a)    the occurrence and continuance of an event of default under the DIP Facility (as defined in the Motion);

(b)    the failure of the Debtors to provide any report or certificate due under Paragraph 10 that continues unremedied for a period of five (5) business days after the date that such report or certificate was due;

(c)    any event of default, early amortization event, or termination event (other than as a result of the commencement of the Cases) shall occur under any material document or agreement that relates to the Prepetition MSR Agreement or the MSR Collateral and such event could reasonably be expected to be materially adverse to the rights and interests of Citibank;

(d)    any liens, claims and other interests created by the Interim Order or this Final Order shall cease to be valid, perfected and enforceable and of the same priority purported to be created hereby or any of the Debtors or their subsidiaries shall challenge in any action the validity, perfection, enforceability or priority thereof;

(e)    dismissal of the Case of any Debtor with assets exceeding $10 million (or any of the Debtors or their affiliates seeking or supporting such any such dismissal) or conversion of the Case of any Debtor with assets exceeding $10 million to a case under chapter 7 of the Bankruptcy Code (or any of the Debtors or their affiliates seeking or supporting any such conversion);

(f)        appointment of a trustee (or such other comparable responsible person) or a responsible officer or examiner with expanded powers in the Case of any Debtor with assets exceeding $10 million (or any of the Debtors or their affiliates seeking or supporting any such appointment);

(g)        entry of an order granting relief from the automatic stay as to the MSR Collateral with a value in excess of $10 million (or any of the Debtors or their affiliates seeking or supporting any such relief) (i) to allow any creditor to execute upon or enforce a lien on or security interest in any MSR Collateral, or (ii) with respect to any lien of or the granting of any lien on any MSR Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors;

(h)        entry an order amending, supplementing, staying, vacating, reversing or otherwise modifying this Final Order except as otherwise agreed to in writing by Citibank, or this Final Order shall cease to be in full force and effect;

(i)        entry of an order granting any superpriority claim (or claim of equivalent status) that is senior to or *pari passu* with the claims of Citibank or any lien or security interest that is senior to or *pari passu* with the liens and security interests securing the Prepetition MSR Facility, except for the Permitted Superpriority Claims, which superpriority claims may be senior or *pari passu* with the Adequate Protection Superpriority Claim as provided in paragraph 5(b);

(j)        entry of an order authorizing recovery from the MSR Collateral for any cost of preservation or disposition thereof, under section 506(c) of the Bankruptcy Code or otherwise, other than as may be provided in this Final Order.

(k)        upon written notice from Citibank, any material misrepresentation of a

material fact made after the Petition Date by any of the Debtors or their agents to Citibank or its

agents about the financial condition of the Debtors, or any of them, the nature, extent, location or

quality of any MSR Collateral, or the disposition or use of any MSR Collateral, including MSR

Cash Collateral;

(l)        the sale after the Petition Date of any portion of the MSR Collateral except

pursuant to an order that provides for the repayment of the Prepetition MSR Obligations from the

proceeds of such sale, provided the Agency Interests are satisfied through such sale;

(m)        upon written notice from Citibank, the material failure to make Adequate

Protection Payments or other payments to Citibank when due, subject to a cure period of five (5)

days; and

(n)        the failure by the Debtors to perform or observe in any respect any terms,

provisions, conditions, covenants, agreements or obligations under this Final Order that is not

otherwise specified as an Event of Default and that remains unremedied for fifteen (15) business

days; <u>provided</u>, however, that a variance from the Budget shall not be deemed an Event of

Default hereunder;

13.        Rights and Remedies Upon Event of Default.  Upon the occurrence of an Event of

Default and at any time thereafter during the continuance thereof, with seven (7) days' prior

written notice (an "**Enforcement Notice**") of any such occurrence, in each case given to (i) the

Debtors and their counsel, (ii) counsel to the Administrative Agent and Collateral Agent under

the DIP Facility, (iii) counsel to the Statutory Committee, (iv) the U.S. Trustee, (v) counsel to

Ally, (vi) counsel to the Junior Secured Notes, (vii) Freddie Mac, and its counsel, and

(viii) Fannie Mae, and its counsel, Citibank shall be entitled to exercise Citibank's rights and

remedies as set forth in the Prepetition MSR Documents or under applicable law (including the right to setoff monies of the Debtors in accounts maintained with Citibank and delivery of a shifting control notice with respect to the MSR Collateral Account). Any Enforcement Notice shall also be filed with the Court. This Final Order shall not prejudice the rights of any party in interest to oppose the exercise of Citibank's remedies; *provided* that the only issue that may be raised by any party in opposition thereto shall be whether an Event of Default has in fact occurred and is continuing, and the Debtors hereby waive their right to seek any relief, whether under section 105 of the Bankruptcy Code or otherwise, that would in any way impair, limit or restrict, or delay the exercise or benefit of, the rights and remedies of Citibank under the Prepetition MSR Documents, the Interim Order or this Final Order. Upon the expiration of the seven (7) day period (the "**Remedies Notice Period**"), in the absence of a determination by the Court that an Event of Default has not occurred or is not continuing, Citibank shall be entitled to pursue all remedies under the Prepetition MSR Documents or applicable law without further order of the Court, and the automatic stay is hereby deemed modified to permit the pursuit of such remedies.

14. Carve Out. As used in this Final Order, the "**Carve Out**" means the Carve Out as defined in any order of the Court approving the DIP Facilities provided by Barclays Bank PLC and Ally Financial Inc.. Notwithstanding anything to the contrary herein, the Carve Out shall be junior in priority to the Prepetition MSR Liens and the MSR Adequate Protection Liens. No payment of any Carve Out amount shall reduce any Prepetition MSR Obligations.

15. Limitations on the Use of MSR Cash Collateral. Other than the Allocated MSR Cash Collateral, the MSR Cash Collateral may not be used in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any

type (a) adverse to the interests of Citibank, or its rights and remedies under the Prepetition MSR

Credit Documents or this Final Order, including, without limitation, for the payment of any

services rendered by the professionals retained by the Debtors or the Statutory Committee in

connection with the assertion of or joinder in any claim, counterclaim, action, proceeding,

application, motion, objection, defense or other contested matter, the purpose of which is to seek,

or the result of which would be to obtain, any order, judgment, determination, declaration or

similar relief adverse to the interests of Citibank, or their rights and remedies under the

Prepetition MSR Credit Documents or this Final Order, (b) invalidating, setting aside,

recharacterizing, avoiding or subordinating, in whole or in part, the Prepetition MSR

Obligations, (c) objecting to or challenging in any way the claims, liens, or interests (including

interests in the MSR Collateral) held by or for the benefit of Citibank; (d) asserting, commencing

or prosecuting any claims or causes of action whatsoever, including, without limitation, any

actions under chapter 5 of the Bankruptcy Code, against Citibank; (e) prosecuting an objection

to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection,

priority, characterization or enforceability of any of the Prepetition MSR Obligations or

Prepetition MSR Liens or any other rights or interests of Citibank; or (f) preventing, hindering or

otherwise delaying the exercise by Citibank of any rights and remedies granted under this Final

Order; provided that such restrictions shall not prohibit any investigation by any Statutory

Committee of any of the foregoing.

16.    <u>Reservation of Certain Statutory Committee and Third Party Rights and Bar of

Challenges and Claims</u>.  Nothing in this Final Order shall prejudice the rights of a Statutory

Committee to seek to avoid, object to or otherwise challenge the findings or Debtors'

Stipulations regarding (a) the validity, extent, priority, or perfection of the mortgages, security

interests, and liens of Citibank; or (b) the validity, allowability, priority, fully secured status or amount of the Prepetition MSR Obligations.  The Statutory Committee (or any other official committee  appointed by the Court in these cases) must commence, as appropriate, a contested matter or adversary proceeding raising such claim, objection, defense, or other challenge, including, without limitation, any claim against Citibank in the nature of a setoff, counterclaim or defense to the applicable Prepetition MSR Obligations, or file a pleading for standing to commence such contested matter or adversary proceeding (each, a "**Challenge**") within one hundred and twenty (120) calendar days after entry of the Final Order subject to further extension by written agreement between the parties (in each case, a "**Challenge Period**" and the date of expiration of each Challenge Period being a "**Challenge Period Termination Date**"). Upon the expiration of the Challenge Period Termination Date, without the filing of a challenge (or if any such challenge is filed and overruled):  (x) any and all such Challenges by any party (including, without limitation, the Statutory Committee, any chapter 11 trustee, examiner or other estate representative appointed or elected in these Cases, and any chapter 7 trustee, examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released and barred, and (y) all of the Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to Citibank's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, holders of interests, and other parties in interest in these Cases and any successor cases.

      17.    No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

18.     <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been

or may be incurred in the Cases at any time shall be charged against Citibank or its claims or the

MSR Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise,

without the prior express written consent of Citibank, and no such consent shall be implied,

directly or indirectly, from any other action, inaction, or acquiescence by Citibank.

19.     <u>No Marshaling/Applications of Proceeds</u>.  Citibank shall not be subject to the

equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the

Prepetition MSR Collateral, as the case may be, and proceeds shall be received and applied in

accordance with this Final Order notwithstanding any other agreement or provision to the

contrary.

20.     <u>Section 552(b)</u>.  The Debtors agree that they shall not assert the "equities of the

case" exception under section 552(b) of the Bankruptcy Code against Citibank with respect to

proceeds, products, offspring or profits of any of the Prepetition MSR Collateral.

21.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of

this Final Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly: (a) Citibank's right to seek any other or supplemental relief in respect of any Debtor,

including the right to seek additional adequate protection (without prejudice to the Debtors' or

any other person's right to object to or otherwise oppose such additional adequate protection);

(b) any of the rights of Citibank under the Bankruptcy Code or under non-bankruptcy law,

including, without limitation, the right to (i) request modification of the automatic stay of section

362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases,

conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or

examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the

Bankruptcy Code, a chapter 11 plan or plans.  Other than as expressly set forth in this Final

Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of Citibank

are preserved, including Citibank's rights under section 507(b) of the Bankruptcy Code.

22.     No Waiver by Failure to Seek Relief.  The failure of Citibank to seek relief or

otherwise exercise its rights and remedies under the Interim Order, this Final Order, the

Prepetition MSR Credit Documents, or applicable law, as the case may be, shall not constitute a

waiver of any of the rights hereunder, thereunder, or otherwise of Citibank.

23.     Proofs of Claim.  Citibank will not be required to file proofs of claim in any of the

Cases or Successor Cases for any claim allowed herein, and the Debtors' Stipulations in

Paragraph G herein shall be deemed to constitute a timely filed proof of claim for Citibank.

Notwithstanding any order entered by the Court in relation to the establishment of a bar date in

any of the Cases or Successor Cases to the contrary, Citibank is hereby authorized and entitled,

in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a

proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any

claim allowed herein.

24.     Good Faith.  Citibank has acted in good faith in connection with the Interim Order

and this Final Order and its reliance on the Interim Order and this Final Order is in good faith.

25.     Reservation of Rights.  Nothing in this Order shall discharge, release, or

otherwise preclude any setoff or recoupment right of the United States of America, its agencies,

departments, or agents.  Notwithstanding anything herein to the contrary, this Order shall not

modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

26.    Binding Effect of Final Order.  Immediately upon entry by this Court

(notwithstanding any applicable law or rule to the contrary), the terms and provisions of this

Final Order shall become valid and binding upon and inure to the benefit of the Debtors,

Citibank, all other creditors of any of the Debtors, the Statutory Committee or any other official

committee appointed by the Court in any of the Cases, and all other parties in interest and their

respective successors and assigns, including any trustee or other fiduciary hereafter appointed in

any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.  In the

event of any inconsistency between the provisions of this Final Order and the Prepetition MSR

Credit Documents or any other order (including any "first-day" order), the provisions of this

Final Order shall govern and control.  Any payments to be made under any order (including any

"first-day" order) shall be made in accordance with this Final Order.

27.    No Modification of Final Order.  The Debtors irrevocably waive any right to seek

any amendment, modification or extension of this Final Order without the prior written consent

of Citibank, and no such consent shall be implied by any other action, inaction or acquiescence

of Citibank.  In the event any or all of the provisions of this Final Order are hereafter modified,

amended or vacated by a subsequent order of this Court or any other court, such modification,

amendment or vacatur shall not affect the validity, perfection, priority, allowability,

enforceability or non-avoidability of any advances previously made or made hereunder, or lien,

claim or priority authorized or created hereby. Any liens or claims granted to Citibank hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

28.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order that may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; (d) discharging any Debtor; or (e) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to Citibank pursuant to this Final Order, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all Prepetition MSR Obligations have been indefeasibly paid in full in cash, notwithstanding the expiration of the Specified Period or any earlier termination of the Debtors' authorization to use MSR Cash Collateral.

29.    <u>Acknowledgement Agreements</u>.  Nothing in this Final Order affects the rights, duties or obligations of (a) Freddie Mac or Citibank under the Freddie Mac Acknowledgement Agreement or (b) Fannie Mae or Citibank under the Fannie Mae Acknowledgement Agreement.

30.    <u>Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

31.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce

this Final Order according to its terms.

Dated:  June 20, 2012
        New York, New York


_____**/s/Martin Glenn**_____
MARTIN GLENN
United States Bankruptcy Judge

**<u>Exhibit A</u>**

**Budget**

**Weekly Cash Flow Projections - Citi MSR**

| ($ millions) | | W/B 14-May-12 Week 1 | W/B 21-May-12 Week 2 | W/B 28-May-12 Week 3 | W/B 4-Jun-12 Week 4 | W/B 11-Jun-12 Week 5 | W/B 18-Jun-12 Week 6 | W/B 25-Jun-12 Week 7 | W/B 2-Jul-12 Week 8 | W/B 9-Jul-12 Week 9 | W/B 16-Jul-12 Week 10 | W/B 23-Jul-12 Week 11 | W/B 30-Jul-12 Week 12 | W/B 6-Aug-12 Week 13 | W/B 13-Aug-12 Week 14 | W/B 20-Aug-12 Week 15 | W/B 27-Aug-12 Week 16 | W/B 3-Sep-12 Week 17 | W/B 10-Sep-12 Week 18 | W/B 17-Sep-12 Week 19 | W/B 24-Sep-12 Week 20 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **CITI MSR CASH FLOWS** | | | | | | | | | | | | | | | | | | | | | |
| 1 | FNMA / FHLMC Net Repurchases | $ (0.8) | $ (0.8) | $ (0.9) | $ (0.9) | $ (0.6) | $ (0.9) | $ (0.9) | $ (0.9) | $ (1.1) | $ (1.1) | $ (1.1) | $ (1.0) | $ (1.0) | $ (1.0) | $ (1.0) | $ (1.0) | $ (0.9) | $ (1.2) | $ (1.2) | $ (1.4) | $ (19.4) |
| 2 | Servicing / Ancillary Fees | 4.0 | 2.6 | 5.4 | 3.9 | 4.8 | 2.7 | 4.0 | 5.6 | 3.8 | 3.9 | 2.6 | 6.7 | 3.8 | 3.9 | 2.3 | 2.9 | 5.5 | 3.7 | 3.8 | 4.2 | 80.0 |
| 3 | Interest | - | - | (1.1) | - | - | - | - | (1.1) | - | - | - | (1.1) | - | - | - | - | (1.1) | - | - | - | (4.6) |
| 4 | Operating Expenses / Professional Fees | (1.4) | (2.8) | (1.0) | (2.8) | (2.4) | (2.8) | (1.3) | (2.4) | (1.2) | (5.0) | (1.2) | (2.6) | (1.2) | (5.2) | (1.2) | (2.5) | (1.1) | (5.7) | (1.4) | (2.7) | (47.9) |
| 5 | **Net Cash Flow** | **1.8** | **(1.0)** | **2.3** | **0.3** | **1.8** | **(0.9)** | **1.8** | **1.2** | **1.5** | **(2.2)** | **0.3** | **2.0** | **1.6** | **(2.3)** | **0.2** | **(0.6)** | **2.3** | **(3.1)** | **1.3** | **0.0** | **8.2** |
| | **CASH BALANCE ROLL-FORWARD** | | | | | | | | | | | | | | | | | | | | | |
| 6 | Beginning Cash Balance | - | 1.8 | 0.8 | 3.1 | 3.4 | 5.2 | 4.3 | 6.1 | 7.3 | 8.8 | 6.5 | 6.8 | 8.8 | 10.4 | 8.2 | 8.4 | 7.7 | 10.0 | 6.9 | 8.2 | - |
| 7 | Net Cash Flow | 1.8 | (1.0) | 2.3 | 0.3 | 1.8 | (0.9) | 1.8 | 1.2 | 1.5 | (2.2) | 0.3 | 2.0 | 1.6 | (2.3) | 0.2 | (0.6) | 2.3 | (3.1) | 1.3 | 0.0 | 8.2 |
| 8 | **Ending Cash Balance** | **1.8** | **0.8** | **3.1** | **3.4** | **5.2** | **4.3** | **6.1** | **7.3** | **8.8** | **6.5** | **6.8** | **8.8** | **10.4** | **8.2** | **8.4** | **7.7** | **10.0** | **6.9** | **8.2** | **8.2** | **8.2** |