**Hearing Date: July 13, 2012 at 10:00 a.m. (ET)**
**Objection Deadline: July 6, 2012 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi

*Proposed Counsel for the*
  *Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------ ) | |
| In re:                                        ) | |
|                                               ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,      ) | |
|                                               ) | Chapter 11 |
|                          Debtors.             ) | |
|                                               ) | Jointly Administered |
|                                               ) | |
|                                               ) | |
| ------------------------------------------------ ) | |

**DEBTORS' APPLICATION FOR ORDER UNDER
BANKRUPTCY CODE SECTIONS 327(a) AND 328(a) AUTHORIZING
EMPLOYMENT AND RETENTION OF CENTERVIEW PARTNERS LLC
<u>AS INVESTMENT BANKER</u>**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

> The debtors and debtors in possession in the above-captioned cases

(collectively, the "Debtors")[1] hereby apply (the "Application")[2] for entry of an order, the

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on <u>Exhibit 1</u> to the Whitlinger Affidavit (defined below).

[2]    Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief requested in this Application may refer to http://www.kccllc.net/rescap for additional information.

proposed form of which is attached as <u>Exhibit 1</u>, under sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing the employment and retention of Centerview Partners LLC ("Centerview") as investment banker for the Debtors.  In support of this Application, the Debtors rely on the Declaration of Marc D. Puntus (the "Puntus Declaration"), a partner of Centerview and the co-head of its Restructuring Group, attached hereto as <u>Exhibit 2</u>.  In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 327(a) and 328 as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1.

## BACKGROUND

2.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases; however, the Court has directed that an examiner be appointed.

3.     On May 16, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

4.     The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc., which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage loan servicing business and the tenth largest residential mortgage loan origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings (D.E. No. 6) (the "Whitlinger Affidavit").

## RELIEF REQUESTED

5.     By this Application, the Debtors seek entry of an order authorizing the employment and retention of Centerview as the Debtors' investment banker, *nunc pro tunc* to the Petition Date, in accordance with the provisions of this Application, the Engagement Letter (as defined herein), and the proposed order submitted herewith.

## BASIS FOR RELIEF

6.     Centerview's services will be rendered upon the terms and conditions of an engagement letter dated October 18, 2011, by and between Centerview and the Debtors, as amended on March 13, 2012 (the "Engagement Letter"), a copy of which is attached hereto with the above-mentioned amendment as Exhibit 3 and incorporated by reference herein.

7.     Established in 2006, Centerview is a full-service investment banking boutique providing financial advisory services, including mergers and acquisitions and restructuring

3

advice, across a broad range of industries, including financial institutions.  Centerview serves

a diverse set of clients around the world from its offices in New York, Los Angeles, San

Francisco and London. Centerview's Restructuring Group, which was founded in 2011, has

expertise in designing and managing complex restructuring processes among a wide range of

stakeholders, and a demonstrated track record of designing, negotiating and implementing

amendments, exchange offers, financings, distressed merger and acquisitions transactions and

out-of-court and in-court restructurings.  Centerview and its principals have advised debtors,

lenders, committees and acquirors in many complex financial reorganizations.  The Firm's

professionals have been involved in transactions representing over $100 billion in restructured

debt.

8.      The Debtors selected Centerview as their investment banker based upon,

among other things, the Debtors' need to retain an investment banking firm to provide advice

with respect to the Debtors' restructuring activities and the extensive experience and excellent

reputation of Centerview's professionals in providing investment banking services in complex

chapter 11 cases.

9.      On October 18, 2011, prior to the Petition Date, the Debtors engaged

Centerview to provide general restructuring advice in connection with the Debtors' attempts

to complete a strategic restructuring, reorganization, recapitalization and/or M&A transaction

and, if necessary, to prepare for the Debtors' commencement of chapter 11 cases.

10.     In providing prepetition services to the Debtors in connection with these

matters, Centerview's professionals have worked closely with the Debtors' management and

other professionals and have become well-acquainted with the Debtors' financial history, debt

structure, creditors, business and operations and related matters.  Accordingly, Centerview has

ny-1011934

developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these cases.

11.     Specifically, Centerview's professionals, including while employed at other firms, have provided financial advisory, investment banking and other services in connection with the in-court restructuring of numerous companies, including: Acterna Corporation, Case No. 03-12837 (BRL) (Bankr. S.D.N.Y.); Amtrol Holdings, Inc., Case No. 06-11446 (KG) (Bankr. D. Del.); Bruno's Inc., Case Nos. 98-212 (SLR) through 98-223 (SLR) (Bankr. N.D. Ala.); Calpine Corporation, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y.); Charter Communications, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y.); Dana Corporation, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y.); Dura Automotive Systems, Inc., Case No. 06-11202 (KJC) (Bankr. D. Del.); Fairpoint Communications Inc., 09-16335 (BRL) (Bankr. S.D.N.Y.); General Growth Properties, Inc., Case No. 09-11977 (ALG) (Bankr. S.D.N.Y.); GW Limited 51, Inc., f/k/a GWLS Holdings, Inc., et al., Case No. 08-12430 (PJW) (Bankr. D. Del.); Interstate Bakeries Corporation, Case No. 04-45814 (JWV) (Bankr. W.D.Mo.); Lear Corporation, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y.); Magna Entertainment Corp., Case No. 09-10720 (MFW) (Bankr. D. Del.); MagnaChip Semiconductor Finance Company, et al., Case No. 09-12008 (PJW) (Bankr. D. Del.); McLeodUSA Incorporated, Case No. 05-63230 (JHS) (Bankr. D. Del.); Mirant Corporation, Case No. 03-46590 (DML) (Bankr. N.D. Tex.); Pegasus Satellite Television, Inc., Case No. 04-20878 (JBH) (Bankr. D. Me.); PSI Net Inc., 01-13213 (REG) (Bankr. S.D.N.Y.); The Reader's Digest Association, Inc., Case No. 09-23529 (RDD) (Bankr. S.D.N.Y.); Simmons Bedding Company, Case No. 09-14037 (MFW) (Bankr. D. Del.); and Stallion Oilfield Services Ltd., Case No. 09-13562 (BLS) (Bankr. D. Del.).  Centerview's professionals have also provided such services in the out-of-court

restructurings of numerous companies, including:  Autocam Corporation; Broder Bros Co.;

DS Waters of America, Inc.; Gate Gourmet, Inc.; Isola Group Ltd.; Keystone Automotive

Operations, Inc.; Mashantucket Pequot Gaming Enterprise, Inc. / Foxwoods Inc.; OSI

Restaurant Partners; LLC; PlayPower; and Vonage Holdings Corporation.

12.     The experienced professionals at an investment bank such as Centerview fulfill

a critical need that complements the services offered by the Debtors' other restructuring

professionals.  The Debtors believe they require the services of a capable and experienced

investment banking firm such as Centerview and that Centerview is crucial to the Debtors'

success in these Chapter 11 cases.

### SERVICES TO BE PROVIDED

13.     The terms and conditions of Centerview's engagement are governed by the

Engagement Letter, which reflects the substantial efforts that have been and will continue to

be required of Centerview in this engagement.  Pursuant to the terms of the Engagement

Letter, Centerview has and will continue to advise the Debtors in a variety of matters,

including, as reasonably requested:[3]

(a)     reviewing and analyzing the Debtors' business, operations, and
financial projections;

(b)     evaluating the Debtors' potential debt capacity in light of its projected
cash flows;

(c)     assisting in the determination of a capital structure for the Debtors;

(d)     assisting in the determination of a range of estimated values for the
Debtors on a going concern basis;

---

[3]     This summary is solely for the convenience of the Court and parties in interest.  To the extent that this
summary and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall
control.

ny-1011934

(e)     advising the Debtors on tactics and strategies for negotiating with the Stakeholders (defined below);

(f)     rendering financial advice to the Debtors and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;[4]

(g)     advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to a Restructuring;

(h)     advising and assisting the Debtors in evaluating potential Financing[5] transactions by the Debtors, and, subject to Centerview's agreement to so act and the execution of appropriate agreements, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such a Financing;

(i)     assisting the Debtors in preparing documentation within Centerview's area of expertise that is required in connection with a Restructuring;

(j)     assisting the Debtors in identifying and evaluating candidates for a potential Sale Transaction[6], advising the Debtors in connection with

---

[4]     As used in the Engagement Letter and this Application, the term "Restructuring" means any restructuring, reorganization (whether or not pursuant to chapter 11 of the Bankruptcy Code) and/or recapitalization transaction or series of related transactions in respect of all or a significant portion of the Debtors' outstanding indebtedness (including any debt to an affiliate, bank debt, bond debt, and other on and off balance sheet indebtedness), and which may also include trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, and other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through (i) a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); (ii) rescheduling of the maturities of Existing Obligations; (iii) a change in interest rates; (iv) repurchase, settlement, or forgiveness of Existing Obligations; (v) conversion of Existing Obligations into equity; (vi) an exchange offer involving the issuance of new securities in exchange for Existing Obligations; or (vii) the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests.

[5]     As used in the Engagement Letter and this Application, the term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of equity, equity-linked, or debt securities, instruments, or obligations of the Debtors entailing debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

[6]     As used in the Engagement Letter and this Application, the term "Sale Transaction" means any transaction or series of transactions consummated following a chapter 11 filing and involving (i) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Debtors are, directly or indirectly, combined with another company; (ii) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Debtors or possessing a majority of the outstanding voting power of the Debtors (except as may occur with current Stakeholders as a result of a Restructuring); (iii) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets,

*(cont'd)*

7

negotiations and aiding in the consummation of one or more Sale Transactions;

(k)     attending meetings of the Debtors' Board of Directors and its committees with respect to matters on which Centerview has been engaged to advise the Debtors;

(l)     providing testimony, as necessary, with respect to matters on which Centerview has been engaged to advise the Debtors in any proceeding before the Bankruptcy Court; and

(m)     providing (but only to the extent permitted by further orders of this Court) the Debtors with other financial restructuring advice as may be specifically agreed upon in writing by the Debtors and Centerview.

14.     Centerview will not, without further order of this Court, provide underwriting services to the Debtors in these Chapter 11 Cases (underwriting being understood as assumption of the risk of buying a new issue of securities and selling or reselling such securities).

## PROFESSIONAL COMPENSATION

15.     Centerview's decision to continue with its engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and to be compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

16.     Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable

---

*(cont'd from previous page)*
securities, or other interests of the Debtors; or (iv) the formation of a joint venture or partnership with the Debtors or direct investment in the Debtors for the purpose of effecting a transfer of all or substantially all of the interests in the Debtors to a third party.

ny-1011934

procedures and orders of the Court and consistent with the proposed terms of compensation set forth in the Engagement Letter (the "Fee Structure"). Further, because the Debtors are seeking to retain Centerview under Bankruptcy Code section 328(a), the Debtors believe that Centerview's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and should not constitute a "bonus" under applicable law. Notwithstanding anything herein to the contrary, the United States Trustee for the Southern District of New York shall retain all rights to respond or object to Centerview's interim and final applications for compensation and reimbursement of expenses on all grounds including, but not limited to, reasonableness, pursuant to section 330 of the Bankruptcy Code, and in the event the U.S. Trustee objects, the Court retains the right to review such interim and final applications pursuant to section 330 of the Bankruptcy Code.

17.    In summary, the Fee Structure provides for the following post-petition compensation to Centerview:

    (a)    A monthly financial advisory fee (the "Monthly Advisory Fee")[7] of $300,000, payable on the first day of each month through the conclusion of the engagement; provided, that 50% of Monthly Advisory Fees paid subsequent to the Petition Date shall be credited against a Transaction Fee (defined below); provided further, that such credit will only apply proportionately to the extent that such fees are approved by the Bankruptcy Court.

    (b)    A fee of $12,500,000, payable upon the consummation of a Restructuring or Sale Transaction that is consummated in Bankruptcy Court (the "Transaction Fee");[8] provided; that with respect to any Restructuring or Sale Transaction that is intended to be effected, in whole or in part, as a sale pursuant to Bankruptcy Code section 363 with a stalking horse bidder, or as a prepackaged, partial prepackaged,

---

[7]    Prior to the Petition Date, the Monthly Advisory Fee fluctuated between $300,000 and $400,000, as set forth in the Engagement Letter.

[8]    The Engagement Letter also provides for payment of a transaction fee in connection with a Restructuring or Sale Transaction consummated outside of the Bankruptcy Court.

or prearranged plan of reorganization, which plan may include a Sale Transaction (a "Prearranged Plan") the Transaction Fee shall be earned and payable (i) 50% upon, in the case of a sale pursuant to Bankruptcy Code section 363, execution of a stalking horse asset purchase agreement, or, in the case of a Prearranged Plan, upon obtaining indications of support from certain of the Company's key creditors that in the good faith judgment of the Board of Directors of the Company are sufficient to justify filing such Prearranged Plan, and (ii) 50% upon consummation of such Restructuring or Sale Transaction.

(c)     If the Debtors consummate any Financing, the Debtors will pay Centerview the following (the "Financing Fee"):

    (i)     1.0% of the aggregate amount of any indebtedness issued that is secured by a first lien;

    (ii)    3.0% of the aggregate amount of any indebtedness issued that (x) is secured by a second or junior lien, (y) is unsecured and/or (z) is subordinated;

    (iii)   5.0% of the aggregate amount of any equity or equity-linked securities or obligations issued; and

    (iv)    0.5% of the aggregate amount of any debtor-in-possession financing issued, plus 1.0% of the aggregate amount of any debtor-in-possession financing issued by new lenders, not to exceed $5,000,000 in the aggregate.

Any fee(s) paid under subparagraphs (c)(i), (ii) or (iii) shall be 50% credited (but only once) against a Transaction Fee subsequently paid under paragraph (b).

Any fee in excess of $500,000 paid out under subparagraph (c)(iv) shall be 50% credited against a Transaction Fee subsequently paid under paragraph (b).

(d)     If at any time during the term of Centerview's engagement or within the nine full months following the termination of the engagement the Debtors (i) receive a letter of intent to purchase all or substantially all of the Debtors' assets or (ii) receive a debtor-in-possession financing proposal, in either case, satisfactory to the Debtors, Centerview shall be due and paid a transaction fee equal to $1,200,000 (the "Interim Transaction Fee").

(e)     In addition to any fees that may be payable to Centerview and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse Centerview for all: (A) reasonable documented production charges and out-of-pocket expenses (including travel and

10

lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonably incurred fees and expenses, including expenses of counsel if engaged with the prior approval of the Debtors, which approval shall not be unreasonably withheld.

(f)    As part of the compensation payable to Centerview, the Debtors agree to the indemnification, contribution and other provisions (the "Indemnification Provisions") attached to the Engagement Letter as Exhibit B.

(g)    For the avoidance of doubt, if both a Restructuring and a Sale Transaction occur (in separate transactions or through a single transaction that meets both the definitions), the Company will be obligated to pay only one Transaction Fee.  One or more fees pursuant to paragraph (c) (as described above) may be payable in addition to a Restructuring Fee (subject to crediting as set forth above).

18.    The Fee Structure is consistent with and typical of compensation arrangements entered into by Centerview and its restructuring professionals and other comparable firms in connection with the rendering of similar services under similar circumstances.  Centerview and the Debtors believe that the foregoing compensation arrangements are both reasonable and market-based and consistent with Centerview's normal and customary billing practices for comparably sized and complex restructuring cases, both in- and out-of-court.

19.    In determining the level of compensation to be paid to Centerview and its reasonableness, the Debtors compared Centerview's fee proposal to the other proposals received by the Debtors in the investment banking selection process.  The Debtors also compared Centerview's proposed fees with the range of investment banking fees in other large and complex chapter 11 cases.  In both instances, the Debtors found Centerview's proposed fees to be reasonable and within the range of other comparable transactions.

20.    Centerview's strategic and financial expertise as well as its capital markets knowledge, financing skills, expertise in financial institution transactions, restructuring capabilities and mergers and acquisitions expertise, all of which have been and will continue

11

to be required by the Debtors during the term of Centerview's engagement, were all important

factors in determining the Fee Structure.  The Debtors believe that the ultimate benefit of

Centerview's services hereunder cannot be measured by reference to the number of hours

expended by Centerview's professionals in the performance of such services.  Indeed, the

Debtors and Centerview agreed upon the Fee Structure in anticipation that a substantial

commitment of professional time and effort would be required of Centerview and its

professionals prior to and in connection with these chapter 11 cases and in light of the fact

that such commitment would foreclose other opportunities for Centerview, and the actual time

and commitment required of Centerview and its professionals to perform its services under

the Engagement Letter would vary substantially from week to week and month to month,

creating "peak load" issues for Centerview.

21.    The Debtors are advised by Centerview that it is not the general practice of

investment banking and financial services firms to keep detailed time records similar to those

customarily kept by attorneys.  Notwithstanding the foregoing, Centerview intends to file

interim and final fee applications for the allowance of compensation for services rendered and

reimbursement of expenses incurred in accordance with applicable provisions of the

Bankruptcy Code, the Guidelines, the Bankruptcy Rules and any applicable orders of this

Court.  Such applications will include time records setting forth, in a summary format, a

description of the services rendered by each professional, and the amount of time spent on

each date by each such individual in rendering services on behalf of the Debtors.  Because

Centerview does not ordinarily maintain contemporaneous time records in one-tenth hour (.1)

increments or provide or conform to a schedule of hourly rates for its professionals,

Centerview intends to file time records in one half (.5) hour increments.  Centerview will also

maintain detailed records of any actual and necessary costs and expenses incurred in

connection with the services discussed above.  Centerview's applications for compensation

and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter

upon approval by this Court.

## TERMINATION OF ENGAGEMENT

22.      Centerview's engagement may be terminated by the Debtors or Centerview at

any time without liability or continuing obligation to the Debtors or Centerview except that

following such termination and any automatic termination upon termination of these Chapter

11 cases, Centerview shall remain entitled to any fees accrued but not yet paid prior to such

termination and to reimbursement of expenses.  If the Debtors terminate Centerview's

engagement or the engagement automatically terminates upon termination of these Chapter 11

cases, Centerview shall remain entitled to full payment of all fees contemplated by the

Engagement Letter in respect of any Restructuring, any Financing, and any Sale Transaction,

including fees that may be payable pursuant to the nine month "tail" provisions in the

Engagement Letter.

## INDEMNIFICATION AND CONTRIBUTION PROVISIONS

23.      The Debtors have agreed to indemnify, to make certain contributions to, and to

reimburse Centerview in accordance with the provisions set forth in the Indemnification

Provisions.  The Indemnification Provisions provide, among other things, that the Debtors

will indemnify Centerview and other Indemnified Persons (as defined therein), except to the

extent that any loss, claim, damage, demand, liability (joint or several) or action or proceeding

is finally judicially determined to have resulted from such Indemnified Person's willful

misconduct or gross negligence.

ny-1011934

24.     As set forth in more detail below, the indemnification, contribution and reimbursement provisions reflected in the Indemnification Provisions are customary and reasonable provisions included in engagement letters for investment bankers such as Centerview for proceedings both out of court and in Chapter 11.

25.     The terms of the Indemnification Provisions were fully negotiated between the Debtors and Centerview at arm's-length, and the Debtors respectfully submit that the Indemnification Provisions, as modified by the Order requested herein, are reasonable and in the best interests of the Debtors, their estates, and creditors.  Accordingly, as part of this Application, the Debtors request that this Court approve the Indemnification Provisions.

## NO DUPLICATION OF SERVICES

26.     The Debtors intend for Centerview's services to complement, and not duplicate, the services to be rendered by any other professional retained in these Chapter 11 cases.  Centerview understands that the Debtors have retained and may retain additional professionals during the term of the engagement, Centerview has worked and will continue to work cooperatively, as requested by the Debtors, with other professionals retained by the Debtors to integrate any respective work conducted by the professionals on behalf of the Debtors.

## CENTERVIEW'S DISINTERESTEDNESS

27.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Puntus Declaration, Centerview (a) is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), (b) does not hold or represent an interest adverse to the Debtors' estates, and (c) has no connection to the Debtors, their creditors, or their related parties.

28.    Prior to the Petition Date, the Debtors paid Centerview an aggregate of $2,900,000 in full payment of the Monthly Advisory Fees (for the months of October 2011 through May 2012) and $54,155 as reimbursement for Centerview's expenses billed through May 13, 2012. In addition, the Debtors paid Centerview $5,000,000 for the Financing Fee associated with the $1.45 billion and $150 million debtor-in-possession financings obtained by the Debtors, an Interim Transaction Fee of $1,200,000 and 50% of the Transaction Fee ($6,250,000), all pursuant to the terms of the Engagement Letter. Centerview also received an expense retainer of $50,000.

29.    Upon the completion of the proposed sales of the Debtors' legacy loan portfolio and mortgage loan origination and servicing businesses and assets,[9] and/or other Restructuring, Centerview will be entitled to receive the remaining 50% of the Transaction Fee ($6,250,000), which amount is subject to crediting of certain amounts pursuant to the terms of the Engagement Letter.

30.    Centerview has received no other compensation from the Debtors pursuant to the Engagement Letter. As of the Petition Date, Centerview did not hold a prepetition claim against the Debtors for fees or expenses related to services rendered in connection with the engagement.

31.    Centerview will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent that any new

---

[9]    See *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 For Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (D.E. 61).

ny-1011934

relevant facts or relationships bearing on the matters described herein during the period of Centerview's retention are discovered or arise, Centerview will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## **BASIS FOR RELIEF**

32.      The Debtors seek approval of the Engagement Letter, including the Fee Structure contained therein, pursuant to Bankruptcy Code sections 327 and 328(a).  Section 328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Accordingly, section 328(a) permits the compensation of professionals, including investment bankers, on flexible terms that reflect the nature of their services and prevailing market conditions for those services.

33.      As set forth above, notwithstanding approval of the Engagement Letter under Bankruptcy Code section 328(a), Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases M-389 (Nov. 25, 2009), and the United States Trustee Guidelines currently in effect, and any other applicable procedures and orders of the Court and consistent with the Fee Structure set forth in the Engagement Letter.

16

34.     The Debtors believe that the Fee Structure appropriately reflects the nature and

scope of services to be provided by Centerview in these complex chapter 11 cases,

Centerview's substantial experience with respect to investment banking services, and the fee

structures typically utilized by Centerview and other leading investment banks that do not bill

their clients on an hourly basis.

35.     Courts in this district have approved similar arrangements that contain

reasonable terms and conditions under section 328 of the Bankruptcy Code in other large

chapter 11 cases.  See, e.g., In re AMR Corp., Case No. 11-15463 (SHL) (Bankr. S.D.N.Y.

March 2, 2012) (ECF No. 1557); In re Penton Business Media Holdings, Inc., Case No. 10-

10689 (AJG) (Bankr. S.D.N.Y. Mar. 5, 2010) (ECF No. 83); In re FairPoint Communications,

Inc., Case No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan 11, 2010) (ECF No. 328); In re Mark

IV Indus., Inc., No. 09-12795 (SMB) (Bankr. S.D.N.Y. May 27, 2009) (ECF No. 167); In re

Charter Communications, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009)

(ECF No. 183); In re Calpine Corp., Case No. 05-60200 (Bankr. S.D.N.Y. April 26, 2006)

(ECF No. 1370); and In re Delphi Corp., Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30,

2005) (ECF No. 1363).

36.     Likewise, similar indemnification arrangements have been approved and

implemented in other large chapter 11 cases by courts in this District.  See, e.g., In re AMR

Corp., Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. March 2, 2012) (ECF No. 1557); In re

Penton Business Media Holdings, Inc., Case No. 10-10689 (AJG) (Bankr. S.D.N.Y. Mar. 5,

2010) (ECF No. 83); In re FairPoint Commc'ns, Inc., Case No. 09-16335 (BRL) (Bankr.

S.D.N.Y. Jan 11, 2010) (ECF No. 328); In re Mark IV Indus., Inc., No. 09-12795 (SMB)

(Bankr. S.D.N.Y. May 27, 2009) (ECF No. 167); In re Charter Commc'ns, Inc., Case No. 09-

11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009) (ECF No. 183); In re Calpine Corp., Case No.

05-60200 (Bankr. S.D.N.Y. April 26, 2006) (ECF No. 1370); and In re Delphi Corp., Case

No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005) (ECF No. 1363).

37.    In the light of the foregoing, and given the numerous matters that Centerview

may be required to address in the performance of its services hereunder, Centerview's

commitment to the variable level of time and effort necessary to address all such issues as

they arise and the market rate charged for comparable services both in and out of chapter 11,

the Debtors believe that the terms and conditions of the Engagement Letter are fair and

reasonable under the standards set forth in Bankruptcy Code section 328(a).  In particular, the

Debtors believe the Fee Structure creates a proper balance between fixed, monthly fees and

contingency fees based on the successful raises of new capital and the overall success of these

Chapter 11 cases.  Moreover, Centerview's substantial experience with respect to investment

banking services, coupled with the nature and scope of work already performed by

Centerview before the commencement of these chapter 11 proceedings, further suggest the

reasonableness of the Fee Structure.

38.    Denial of the relief requested herein will deprive the Debtors of the assistance

of uniquely qualified investment banking advisors and would effect an unjust disadvantage to

the Debtors and all parties in interest.  Indeed, the Debtors would be forced to engage new

investment bankers who lack a thorough understanding of the Debtors' business and the

restructuring initiatives that have been implemented over the course of the last few months

and which will continue through the pendency of these cases.  It would require the

commitment of significant resources for a newly retained investment banking advisor to get

ny-1011934

up to speed given the steep learning curve involved.  Moreover, comparable investment

bankers would charge an equivalent level of fees.

## NOTICE

39.    Notice of this Application will be given to the following parties, or in lieu

thereof, to their counsel: (a) the Office of the United States Trustee for the Southern District

of New York; (b) the Office of the United States Attorney General; (c) the Office of the New

York Attorney General; (d) the Office of the United States Attorney for the Southern District

of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission;

(g) each of the Debtors' prepetition lenders, or their agents, if applicable; (h) each of the

indenture trustees for the Debtors' outstanding notes issuances; (i) Ally Financial Inc.;

(j) Barclays Bank PLC, as administrative agent for the lenders under the debtor in possession

financing facility; (k) Nationstar Mortgage LLC and its counsel; (l) the Committee; (m) the

parties included on the Debtors' list of fifty (50) largest unsecured creditors; and (n) all parties

requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in view of the

facts and circumstances, such notice is sufficient and no other or further notice need be

provided.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order

(i) substantially in the form attached hereto as Exhibit 1, granting the relief requested in the

Application, (ii) approving the terms of the Engagement Letter, and (iii) granting such other

and further relief to the Debtors as the Court may deem just and proper.


Dated:  June 26, 2012                    RESIDENTIAL CAPITAL, LLC,
                                                             on behalf of itself and each of its
                                                             Debtor subsidiaries


                                                        By:   /s/ James Whitlinger
                                                             Name:  James Whitlinger
                                                             Title:  Chief Financial Officer

20

## EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- )
                                                       )
In re:                                                 )     Case No. 12-12020 (MG)
                                                       )
RESIDENTIAL CAPITAL, LLC, et al.,       )     Chapter 11
                                                       )
                                    Debtors.        )     Jointly Administered
                                                       )
-------------------------------------------------------------------- )

**ORDER UNDER BANKRUPTCY CODE SECTIONS 327(a) AND 328(a)**
**AUTHORIZING EMPLOYMENT AND RETENTION OF CENTERVIEW**
**PARTNERS LLC AS DEBTORS' INVESTMENT BANKER**
***NUNC PRO TUNC* TO PETITION DATE**

Upon the application, dated June 26, 2012 (the "Application"),[1] of the above-

captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order

(the "Order"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the

"Bankruptcy Code"), and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules for the United States

Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing the

Debtors to employ and retain Centerview Partners LLC ("Centerview") as investment banker to

the Debtors on the terms set forth in its engagement letter dated as of October 18, 2011, as

amended March 13, 2012 (the "Engagement Letter"), as more fully set forth in the Application;

and upon consideration of the Declaration of Marc Puntus in support of the Application (the

"Puntus Declaration"); and the Court having jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431 dated

January 31, 2012 (Preska, C.J.); and consideration of the Application and the relief requested

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
       Application.  Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11
       cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the terms and conditions of

Centerview's employment, including but not limited to the Fee Structure as set forth in the

Engagement Letter, being reasonable as required by section 328(a) of the Bankruptcy Code; and

Centerview not holding or representing any interest adverse to the Debtors' estates; and

Centerview being a "disinterested person," as that term is defined in Bankruptcy Code section

101(14), as modified by section 1107(b), of the Bankruptcy Code; and this Court having found

that the relief requested herein is in the best interests of the Debtors' estates, their creditors and

other parties in interest; and due and proper notice of the Application having been provided, and

it appearing that no other or further notice need be provided; and a hearing having been held on

June 18, 2012 to consider the relief requested in the Application; and upon the record of the

hearing, and of all of the proceedings had before the Court; and any objections to the Application

having been withdrawn, resolved or overruled; and the Court having found and determined that

the legal and factual bases set forth in the Application establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

## ORDERED, ADJUDGED AND DECREED THAT:

1.      The Application is granted as set forth herein.

2.      In accordance with Bankruptcy Code sections 327(a) and 328(a) and Bankruptcy

Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ

and retain Centerview as their investment banker in accordance with the terms and conditions set

forth in the Application and the Engagement Letter, effective nunc pro tunc to the Petition Date.

3.      Notwithstanding anything to the contrary in the Engagement Letter, the

Application or the Puntus Declaration, to the extent that the Debtors request that Centerview

perform any services other than (a) those detailed in the Engagement Letter and (b) such other investment banking services directly related to services detailed in the Engagement Letter, the Debtors shall seek further approval by the Court, including any related modifications to the Engagement Letter, and the application seeking such approval shall set forth, in addition to the additional services to be performed, any additional fees sought to be paid.

4.    Centerview shall be compensated in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of the Court, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases M-389 (Nov. 25, 2009), and the United States Trustee Guidelines currently in effect (collectively, the "Compensation Guidelines").

5.    Notwithstanding the prior paragraph and subject to paragraph 12 hereof, the fees payable to Centerview pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code.

6.    Centerview shall file fee applications for monthly, interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in the Compensation Guidelines and any other applicable procedures and orders of the Court. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, orders of this Court or any guidelines regarding submission and approval of fee applications, in light of services to be provided by Centerview and the structure of Centerview's compensation pursuant to the Engagement Letter, Centerview and its professionals shall be excused from maintaining time records as set forth in the Compensation Guidelines in connection with the services to be rendered pursuant to the Engagement Letter; provided, however, that Centerview shall instead

3

present to the Court reasonably detailed time records in one half (.5) hour increments containing

descriptions of those services provided on behalf of the Debtors, the approximate time expended

in providing those services and the individuals who provided professional services on behalf of

the Debtors.

7.      Pursuant to the terms of the Engagement Letter, and in accordance with the Fee

Guidelines, Centerview is entitled to reimbursement by the Debtors for reasonable expenses

incurred in connection with the performance of its engagement under the Engagement Letter,

including, without limitation, the fees, disbursements and other charges of Centerview's counsel

(which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy

Code or otherwise).

8.      The Engagement Letter, including, without limitation, the Indemnification

Provisions, is incorporated herein by reference and approved in all respects except as otherwise

set forth herein.

9.      All requests by Indemnified Persons for the payment of indemnification as set

forth in the Engagement Letter shall be made by means of an application to the Court and shall

be subject to review by the Court to ensure that payment of such indemnity conforms to the

terms of the Engagement Letter and is reasonable under the circumstances of the litigation or

settlement in respect of which indemnity is sought; provided, however, that in no event shall an

Indemnified Person be indemnified to the extent that any loss or expense for which

indemnification is sought resulted from the own bad faith, self-dealing, breach of fiduciary duty

(if any), gross negligence, willful misconduct or fraud of that or any other Indemnified Person.

10.     In the event that an Indemnified Person seeks reimbursement from the Debtors for

attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to

ny-1011936

the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Centerview's own applications, both interim and final, and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

11.     To the extent that there may be any inconsistency between the terms of this Order and either the Application, the Puntus Declaration, and/or the Engagement Letter, the terms of this Order shall govern.

12.     Notwithstanding anything in this Order to the contrary, the United States Trustee for the Southern District of New York shall retain all rights to respond or object to Centerview's interim and final applications for compensation and reimbursement of expenses on all grounds, including, but not limited to, reasonableness, pursuant to section 330 of the Bankruptcy Code, and in the event the U.S. Trustee objects, the Court retains the right to review such interim and final applications pursuant to section 330 of the Bankruptcy Code.

13.     Centerview shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

14.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order in accordance with the Application.

15.     Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

5

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

16.    The relief granted herein shall be binding upon any chapter 11 trustee appointed

in any of these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a

subsequent conversion of any of these chapter 11 cases to cases under chapter 7.

17.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062 or

9014, or otherwise, the terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.

18.    This Court shall retain jurisdiction with respect to all matters relating to the

interpretation or implementation of this Order.

Dated:        New York, New York
                      , 2012


_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

ny-1011936

**EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- )
                                                  )
In re:                                            )         Case No. 12-12020 (MG)
                                                  )
RESIDENTIAL CAPITAL, LLC, et al.,                 )         Chapter 11
                                                  )
                              Debtors.            )         Jointly Administered
                                                  )
                                                  )
                                                  )
                                                  )
-------------------------------------------------------------------- )

### DECLARATION OF MARC D. PUNTUS IN SUPPORT OF DEBTORS' APPLICATION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 327(a) AND 328(a) AUTHORIZING EMPLOYMENT AND RETENTION OF CENTERVIEW PARTNERS LLC AS INVESTMENT BANKER

I, Marc D. Puntus, under penalty of perjury, declares as follows:

1.      I am a Partner and co-head of the Restructuring Group of Centerview Partners

LLC ("Centerview" or the "Firm"), which has its principal office at 31 West 52nd Street, New

York, NY 10019.  I am authorized to make this declaration on behalf of Centerview and in

support of the application (the "Application")[1] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an order authorizing the Debtors to employ

and retain Centerview as investment banker for the Debtors in connection with the above-

captioned chapter 11 cases (the "Chapter 11 Cases") pursuant to that certain engagement letter,

dated as of October 18, 2011, by and between Centerview and the Debtors, as amended on

March 9, 2012 (the "Engagement Letter"), a copy of which is attached as Exhibit 3 to the

Application.  I submit this declaration in accordance with sections 327(a) and 328(a) of title 11

---

[1]      Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Application or the Engagement Letter, as appropriate.

of the United States Code (the "Bankruptcy Code"), Rules 2014(a), 2016 and 5002 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the

Local Rules for the United States Bankruptcy Court for the Southern District of New York (the

"Local Rules").  Unless otherwise stated in this declaration, I have personal knowledge of the

matters set forth herein.

### Centerview's Qualifications

2.      Established in 2006, Centerview is a full-service investment banking boutique

providing financial advisory services, including mergers and acquisitions and restructuring

advice, across a broad range of industries, including Financial Institutions.  Centerview serves a

diverse set of clients around the world from its offices in New York, Los Angeles, San Francisco

and London. Centerview's Restructuring Group, which was founded in 2011, has expertise in

designing and managing complex restructuring processes among a wide range of stakeholders,

and a demonstrated track record of designing, negotiating and implementing amendments,

exchange offers, financings, distressed merger and acquisitions transactions and out-of-court and

in-court restructurings.  Centerview and its principals have advised debtors, lenders, committees

and acquirors in many complex financial reorganizations.  The Firm's professionals have been

involved in transactions representing over $100 billion in restructured debt.

3.      Specifically, Centerview's professionals, including while employed at other firms,

have provided financial advisory, investment banking and other services in connection with the

in-court restructuring of numerous companies, including: Acterna Corporation, Case No. 03-

12837 (BRL) (Bankr. S.D.N.Y.); Amtrol Holdings, Inc., Case No. 06-11446 (KG) (Bankr. D.

Del.); Bruno's Inc., Case Nos. 98-212 (SLR) through 98-223 (SLR) (Bankr. N.D. Ala.); Calpine

Corporation, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y.); Charter Communications, Inc., Case

No. 09-11435 (JMP) (Bankr. S.D.N.Y.); Dana Corporation, Case No. 06-10354 (BRL) (Bankr.

2

S.D.N.Y.); Dura Automotive Systems, Inc., Case No. 06-11202 (KJC) (Bankr. D. Del.);

Fairpoint Communications Inc., 09-16335 (BRL) (Bankr. S.D.N.Y.); General Growth Properties,

Inc., Case No. 09-11977 (ALG) (Bankr. S.D.N.Y.); GW Limited 51, Inc., f/k/a GWLS Holdings,

Inc., et al., Case No. 08-12430 (PJW) (Bankr. D. Del.); Interstate Bakeries Corporation, Case No.

04-45814 (JWV) (Bankr. W.D.Mo.); Lear Corporation, Case No. 09-14326 (ALG) (Bankr.

S.D.N.Y.); Magna Entertainment Corp., Case  No. 09-10720 (MFW) (Bankr. D. Del.);

MagnaChip Semiconductor Finance Company, et al., Case No. 09-12008 (PJW) (Bankr. D. Del.);

McLeodUSA Incorporated, Case No. 05-63230 (JHS) (Bankr. D. Del.); Mirant Corporation,

Case No. 03-46590 (DML) (Bankr. N.D. Tex.); Pegasus Satellite Television, Inc., Case No. 04-

20878 (JBH) (Bankr. D. Me.); PSI Net Inc., 01-13213 (REG) (Bankr. S.D.N.Y.); The Reader's

Digest Association, Inc., Case No. 09-23529 (RDD) (Bankr. S.D.N.Y.); Simmons Bedding

Company, Case No. 09-14037 (MFW) (Bankr. D. Del.); and Stallion Oilfield Services Ltd., Case

No. 09-13562 (BLS) (Bankr. D. Del.).  Centerview's professionals have also provided such

services in the out-of-court restructurings of numerous companies, including: Autocam

Corporation; Broder Bros Co.; DS Waters of America, Inc.; Gate Gourmet, Inc.; Isola Group

Ltd.; Keystone Automotive Operations, Inc.; Mashantucket Pequot Gaming Enterprise, Inc. /

Foxwoods Inc.; OSI Restaurant Partners, LLC; PlayPower; and Vonage Holdings Corporation.

     4.     Since the Debtors retained Centerview on October 18, 2011, Centerview has

employed a "Core Team" of seven professionals in connection with the subject engagement for

the Debtors. The team includes me, Samuel Greene, Stephen Crawford, Karn Chopra, Dan

Dunay, Ryan Kielty and Ben Weingarten. Centerview has provided a broad range of financial

advisory services to the Debtors, including: (i) evaluation of out-of-court alternatives;

(ii) conducting asset sale processes; (iii) leading the Debtors' debtor-in-possession financing

process and other financing-related processes; (iv) negotiations with, among others, the Debtors'

parent, Ally Financial Inc. ("AFI"), the advisors to and members of the ad hoc committee of

Junior Secured Bondholders, investors in securitization deals and their representatives,

government-related organizations and other key constituencies; (v) leading pre-petition

negotiations to revise and restructure the Debtors' various secured credit facilities; and (vi)

assisting the Debtors in preparing for these proceedings, including assisting in preparation of first

day motions and discussions regarding operational readiness.

5.      Upon Centerview's retention in October 2011, Centerview conducted significant

due diligence, including multiple on-site and telephonic meetings, in an effort to become familiar

with the Debtors' businesses and prior sale/restructuring processes, including the 2010 sale

process for Ally's mortgage operations. After familiarizing itself with the Debtors' operations,

Centerview assisted the Debtors in evaluating strategic alternatives, including out-of-court

transaction alternatives. In exploring out-of-court transaction alternatives, Centerview assisted

the Debtors in:

(a)      analyzing the merits and challenges of continuing to operate the "status quo" business, including analyzing the Debtors' cash flows and the capital required for the Debtors to operate without a liquidity enhancing or other transformational transaction;

(b)      developing a complex and flexible servicing and origination financial model that allowed the Debtors to toggle variables in an effort to evaluate out-of-court solutions;

(c)      evaluating a sale of the Debtors both as a whole and in pieces through one or more out-of-court sale transactions, including assisting the Debtors in developing business plans and financial models illustrating the potential financial performance of such asset combinations as well as analyzing the capital required to support such business plans; and

(d)      exploring an out-of-court sale to a third-party, including facilitating extensive due diligence with several in-person meetings, negotiating the structure of a potential transaction and assisting the Company in developing multiple presentation documents in connection therewith.

4

<u>Sale Activities</u>

6.      When out-of-court alternatives proved unworkable, Centerview shifted its focus
to assisting the Debtors in evaluating in-court transaction alternatives, including coordinating a
marketing process to sell substantially all of the Debtors' assets through an in-court transaction.
In connection with such effort, Centerview assisted the Debtors with a broad range of matters,
including the following:

(a)     evaluating each of the Debtors' assets and developing presentation
materials for the Debtors and their Board of Directors describing the
highlights and challenges of marketing certain asset combinations;

(b)     evaluating capital required to support a pro forma business based on
various asset combinations;

(c)     developing a marketing strategy for the Debtors' assets, including
developing a list of potentially interested buyers, and contacting and
negotiating confidentiality agreements with such potential buyers;

(d)     assisting the Debtors' in developing financial projections and
comprehensive marketing materials;

(e)     assisting the Debtors' in developing a management presentation for
delivery to bidders;

(f)     facilitating extensive bidder due diligence over the course of eight weeks,
including attending over 80 hours of in-person meetings, developing and
populating an electronic data room with over 1.2 million pages of
electronic diligence, assisting the Debtors in creating presentation
materials describing certain of their operations and assets, responding to
bidder due diligence questions and coordinating multiple on-site diligence
sessions for bidders and their potential debt financing sources;

(g)     preparing presentation materials for the Debtors and their Board of
Directors comparing non-binding indications of interest;

(h)     assisting the Debtors and their other advisors in drafting and negotiating
the terms of asset purchase agreements and accompanying documents;

(i)     participating in multiple conversations with bidders about transaction
structure; and

(j)     negotiating the exclusion or inclusion of various assets (e.g., servicing
advances, whole loan portfolio) based on buyer diligence, availability of

5

financing, fit within broader platform, etc. to determine best transaction(s) to maximize value.

<u>Financing Activities</u>

7.      In parallel with the Debtors' marketing process, Centerview assisted the Debtors in several financing-related matters, including conducting a process to raise debtor-in-possession financing to support the Debtors' reorganization and negotiating to refinance, revise and restructure certain pre-petition credit facilities to provide the Debtors with additional time to negotiate the terms of their restructuring. In connection with such financing-related matters, Centerview assisted the Debtors with a broad range of matters, including the following:

(a)      negotiating the restructuring of the GSAP Facility with Barclays Capital (increased financing from $350 million to $800 million and extended maturity);

(b)      negotiating an extension of the maturity of the Debtors' Citi MSR Facility;

(c)      negotiating an extension of the Debtors' Ally LOC and Revolving Credit Facilities;

(d)      evaluating the Debtors' pre-petition capital structure and organizational structure, together with FTI Consulting, to determine the optimal structure and collateral package for a potential debtor-in-possession financing facility;

(e)      assisting the Debtors and their other advisors, specifically FTI Consulting, in determining the Debtors' need for post-petition financing and subsequently analyzing the requisite size of a debtor-in-possession financing facility;

(f)      assisting the Debtors in developing a list of potential debtor-in-possession financing sources, including incumbent pre-petition creditors and third-party financing sources, approaching said potential financing sources and negotiating confidentiality agreements with interested potential financing sources;

(g)      facilitating the due diligence process of potential financing sources and their respective advisors;

(h)      assisting the Debtors and Barclays Capital in preparation of syndication materials, including a lender presentation, bank book and rating agency presentation;

6

(i)     subsequent to running an initial financing process to select a lead arranger, conducting a secondary process to assess the cost/benefits of adding a co-lead arranger;

(j)     developing presentation materials for the Debtors and their Board of Directors describing debtor-in-possession financing proposals received by the Debtors in connection with their financing process and comparing the benefits, challenges and relative all-in yield of each proposal;

(k)     assisting the Debtors and their other advisors in negotiating the terms of a debtor-in-possession commitment letter and subsequent credit agreement with Barclays; and

(l)     assisting the Debtors and their other advisors in negotiating the terms of a separate debtor-in-possession financing facility with AFI to fund post-petition Ginnie Mae buybacks.

<u>Settlement Activities</u>

8.      In advance of and during the Debtors' marketing and debtor-in-possession financing processes, the Debtors and their advisors approached certain of the Debtors' key constituents to build consensus and support for a transaction.  The Debtors' key constituents include secured and unsecured creditor constituencies, the Debtors' parent, AFI, key customers, government-related organizations and certain litigation claimants and their representatives, among others. Discussions with the Debtors' parent, AFI, have been ongoing since Centerview was retained, including discussions relating to, among other things, providing capital support for an out-of-court sale transaction, potentially acquiring the Debtors or certain of their assets through an out-of-court transaction, providing debtor-in-possession financing to support a restructuring process, and the terms of an AFI settlement and asset purchase agreement for the Debtors' legacy loan portfolio.  Various normal course operational negotiations were also conducted, including with respect to reorganizing the mortgage origination pipeline/Ginnie Mae loan purchase and sale arrangement between AFI and ResCap.  Contemporaneously with the AFI discussions, the Debtors and their advisors spent significant time with the governmental

7

organizations with which the Debtors' conduct business, including, but not limited to, Fannie

Mae, Freddie Mac, Ginnie Mae, Federal Housing Finance Agency, and the United Services

Automobile Association in an effort to obtain their support for a transaction.  In order to obtain

the support of such organizations, the Debtors and their advisors engaged in constant dialogue,

through multiple weekly meetings, in-person management presentations and substantive

discussions, including with the bidder for the Debtors' assets.  Ultimately, after the Debtors

selected an exclusive bidder and debtor-in-possession financing lead-arranger, the Debtors and

their advisors approached certain of the Debtors' creditor constituencies to negotiate the terms of

a restructuring transaction.  Centerview was and remains an active participant in

conversations/negotiations with many of the Debtors' key constituents, specifically assisting the

Debtors with a broad range of matters, including the following:

> (a)    developing presentation materials to support the Debtors' communications with government-related organizations;
>
> (b)    facilitating the on-going due diligence of government-related organizations, including by participating in several in-person meetings;
>
> (c)    participating in weekly update and strategy calls with Fannie Mae, Freddie Mac and/or Ginnie Mae (collectively, the "Governmental Associations") and frequent update calls with other government-related organizations;
>
> (d)    assisting the Debtors in drafting the terms of Governmental Association support letters and negotiating Governmental Association support letters, in some cases;
>
> (e)    assisting the Debtors, FTI Consulting and the Debtors' other advisors in developing a waterfall analysis to provide a framework for restructuring negotiations with key constituencies;
>
> (f)    assisting the Debtors' independent directors in negotiating the terms of a settlement with AFI;
>
> (g)    facilitating the due diligence processes of advisors to certain key creditor constituencies, including participating in frequent meetings and calls with such advisors;

8

(h)     assisting the Debtors and their other advisors in negotiations with respect to the restructuring of the Debtors' Mexican affiliate, GMAC Financiera S.A.; and

(i)     assisting the Debtors in negotiating the terms of various restructuring support agreements.

9.      In providing professional services to the Debtors, Centerview has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations and related matters.  Having worked with the Debtors' management and their other advisors for over seven months, Centerview has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases.  Accordingly, Centerview is both well qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner.

## Services to Be Provided[2]

10.     The terms and the conditions of the Engagement Letter were negotiated between the Debtors and Centerview, and they reflect the parties' mutual agreement as to the substantial efforts that have been and will continue to be required of Centerview in this engagement. Subject to further order of this Court and consistent with the Engagement Letter, Centerview will continue to provide a broad range of necessary financial advisory and investment banking services as Centerview and the Debtors shall deem necessary in order to advise the Debtors in the course of these Chapter 11 Cases, which may include:

(a)     reviewing and analyzing the Debtors' business, operations, and financial projections;

(b)     evaluating the Debtors' potential debt capacity in light of their projected cash flows;

---

[2]     The summaries of the Engagement Letter contained herein are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control.

9

(c)     assisting in the determination of a capital structure for the Debtors;

(d)     assisting in the determination of a range of estimated values for the Debtors on a going concern basis;

(e)     advising the Debtors on tactics and strategies for negotiating with their stakeholders;

(f)     rendering financial advice to the Debtors and participating in meetings or negotiations with their stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g)     advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to a Restructuring;

(h)     advising and assisting the Debtors in evaluating potential financing transactions by the Debtors, and, subject to Centerview's agreement to so act and the execution of appropriate third party agreements, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such a Financing;

(i)     assisting the Debtors in preparing documentation within Centerview's area of expertise that is required in connection with a Restructuring;

(j)     assisting the Debtors in identifying and evaluating candidates for a potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of one or more Sale Transactions;

(k)     attending meetings of the Debtors' Board of Directors and its committees with respect to matters on which Centerview has been engaged to advise the Debtors;

(l)     providing testimony, as necessary, with respect to matters on which Centerview has been engaged to advise the Debtors in any proceeding before the Bankruptcy Court; and

(m)     providing (but only to the extent permitted by further orders of this Court) the Debtors with other financial restructuring advice as may be specifically agreed upon in writing by the Debtors and Centerview.

11.     Centerview will not, without further order of this Court, provide underwriting

services to the Debtors in these Chapter 11 Cases (underwriting being understood as assumption

of the risk of buying a new issue of securities and selling or reselling such securities).

ny-1011935

12.     The services that Centerview will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates.  All of the services that Centerview will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in these Chapter 11 Cases.  Centerview will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

## **Professional Compensation**

13.     Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines and any other applicable procedures and orders of this Court, the Debtors will compensate Centerview in accordance with the terms and conditions of the Engagement Letter, which provides in relevant part for the following compensation structure (the "Fee Structure"):

(a)     A monthly financial advisory fee (the "Monthly Advisory Fee")[3] of $300,000, due and payable on the first day of each month through the conclusion of the engagement; provided, that 50% of Monthly Advisory Fees paid subsequent to the Petition Date shall be credited against a Transaction Fee (defined below); provided further, that such credit will only apply proportionately to the extent that such fees are approved by the Bankruptcy Court.

(b)     A fee of $12,500,000, payable upon the consummation of a Restructuring or Sale Transaction that is consummated in Bankruptcy Court (the "Transaction Fee");[4] provided; that with respect to any Restructuring or Sale Transaction that is intended to be effected, in whole or in part, as a sale pursuant to Bankruptcy Code section 363 with a stalking horse bidder, or as a prepackaged, partial prepackaged, or prearranged plan of reorganization, which plan may include a Sale Transaction (a "Prearranged Plan") the Transaction Fee shall be earned and payable

---

[3]     Prior to the Petition Date, the Monthly Advisory Fee fluctuated between $300,000 and $400,000, as set forth in the Engagement Letter.

[4]     The Engagement Letter also provides for payment of a Transaction Fee in connection with a Restructuring or Sale Transaction consummated outside of the Bankruptcy Court.

ny-1011935

(i) 50% upon, in the case of a sale pursuant to Bankruptcy Code section 363, execution of a stalking horse asset purchase agreement, or, in the case of a Prearranged Plan, upon obtaining indications of support from certain of the Company's key creditors that in the good faith judgment of the Board of Directors of the Company are sufficient to justify filing such Prearranged Plan, and (ii) 50% upon consummation of such Restructuring or Sale Transaction.

(c) If the Debtors consummate any Financing, the Debtors will pay Centerview the following (the "Financing Fee"):

    (i)    1.0% of the aggregate amount of any indebtedness issued that is secured by a first lien;

    (ii)    3.0% of the aggregate amount of any indebtedness issued that (x) is secured by a second or junior lien, (y) is unsecured and/or (z) is subordinated;

    (iii)    5.0% of the aggregate amount of any equity or equity-linked securities or obligations issued; and

    (iv)    0.5% of the aggregate amount of any debtor-in-possession financing issued, plus 1.0% of the aggregate amount of any debtor-in-possession financing issued by new lenders, not to exceed $5,000,000 in the aggregate.

Any fee(s) paid under subparagraphs (c)(i), (ii) or (iii) shall be 50% credited (but only once) against a Transaction Fee subsequently paid under paragraph (b).

Any fee in excess of $500,000 paid out under subparagraph (c)(iv) shall be 50% credited against a Transaction Fee subsequently paid under paragraph (b).

(d) If at any time during the term of Centerview's engagement or within the nine full months following the termination of the engagement the Debtors (i) receive a letter of intent to purchase all or substantially all of the Debtors' assets or (ii) receive a debtor-in-possession financing proposal, in either case, satisfactory to the Debtors, Centerview shall be due and paid a transaction fee equal to $1,200,000 (the "Interim Transaction Fee").

(e) In addition to any fees that may be payable to Centerview and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse Centerview for all: (A) reasonable documented production charges and out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonably incurred fees and expenses,

12

including expenses of counsel if engaged with the prior approval of the Debtors, which approval shall not be unreasonably withheld.

(f)     As part of the compensation payable to Centerview, the Debtors agree to the indemnification, contribution and other provisions (the "Indemnification Provisions") attached to the Engagement Letter as Exhibit B.

(g)     For the avoidance of doubt, if both a Restructuring and a Sale Transaction occur (in separate transactions or through a single transaction that meets both the definitions), the Company will be obligated to pay only one Transaction Fee. One or more fees pursuant to paragraph (c) (as described herein) may be payable in addition to a Restructuring Fee (subject to crediting as set forth above).

14.     The Fee Structure is consistent with and typical of compensation arrangements entered into by Centerview and its restructuring professionals and other comparable firms in connection with the rendering of similar services under similar circumstances. Centerview and the Debtors believe that the foregoing compensation arrangements are both reasonable and market-based and consistent with Centerview's normal and customary billing practices for comparably sized and complex restructuring cases, both in- and out-of-court.

15.     In providing pre-petition services to the Debtors in connection with these matters, Centerview's professionals have worked closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' financial history, debt structure, creditors, business and operations and related matters. Accordingly, Centerview has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these cases.

16.     It is not the general practice of investment banking and financial services firms, including Centerview, to keep detailed time records similar to those customarily kept by attorneys. Notwithstanding the foregoing, Centerview intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of

13

expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Guidelines, the Bankruptcy Rules and any applicable orders of this Court. Such applications will include time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. Because Centerview does not ordinarily maintain contemporaneous time records in one-tenth hour (.1) increments or provide or conform to a schedule of hourly rates for its professionals, Centerview intends to file time records in one half (.5) hour increments. Centerview will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above. Centerview's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter upon approval of the Engagement Letter by this Court.

17.    The Fee Structure has been agreed upon in anticipation that a substantial commitment of professional time and effort will be required of Centerview and its professionals in connection with these cases and in light of the fact that such commitment may foreclose other opportunities for Centerview. The actual time and commitment required of Centerview and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Centerview.

18.    The Debtors and Centerview negotiated the Fee Structure to function as and be an interrelated, integrated unit, in correspondence with Centerview's services, which Centerview renders not in parts, but as a whole. It would be contrary to the intention of Centerview and the Debtors for any isolated component of the entire Fee Structure to be treated as sufficient consideration for any isolated portion of Centerview's services. Instead, the Debtors and

Centerview intend that Centerview's services be considered as a whole, for which Centerview is to be compensated by the Fee Structure in its entirety.

19.    Centerview's strategic and financial expertise as well as its capital markets knowledge, financing skills, expertise in Financial Institution transactions, restructuring capabilities and mergers and acquisitions expertise, all of which has been and will continue to be required by the Debtors during the term of Centerview's engagement, were all important factors in determining the Fee Structure.  Centerview believes that the ultimate benefit of Centerview's services hereunder cannot be measured by reference to the number of hours to be expended by Centerview's professionals in the performance of such services.

20.    In sum, in the light of the foregoing and given the numerous matters which Centerview may be required to address in the performance of its services hereunder and Centerview's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Centerview's services for engagements of this nature both out-of-court and in a chapter 11 context, Centerview believes that the Fee Structure is fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

21.    Accordingly, as more fully described below, Centerview believes that this Court should approve its retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that its compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

22.    Centerview has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## **Indemnification**

23.    As part of the overall compensation payable to Centerview under the terms of the Engagement Letter, and as more fully described in Exhibit B thereto, the Debtors have agreed to

15

certain indemnification, contribution and reimbursement obligations as described in the

Engagement Letter and Exhibit B thereto (the "Indemnification Provisions").  Specifically, the

Indemnification Provisions state that the Debtors will indemnify and hold Centerview and each

of its affiliates, their respective members, directors, officers, employees and controlling persons,

and each of their respective successors and assigns (the "Indemnified Persons") harmless against

liabilities arising out of or in connection with its engagement by the Debtors, except for any

liability for losses, claims, damages, demand and liabilities (joint or several), or actions or

proceedings in respect thereof that is or are finally, judicially determined to have resulted from

the willful misconduct or gross negligence of an Indemnified Person.

24.     The Indemnification Provisions reflected in the Engagement Letter are customary

and reasonable terms of consideration for financial advisors and investment bankers such as

Centerview for engagements both out-of-court and in chapter 11.  The terms of the Engagement

Letter, including the Indemnification Provisions, were fully negotiated between the Debtors and

Centerview at arm's-length, and Centerview respectfully submits that the Indemnification

Provisions are reasonable and in the best interests of the Debtors, their estates and creditors.

### Centerview's Disinterestedness

25.     In connection with its proposed retention by the Debtors in these Chapter 11

Cases, Centerview undertook to determine whether it had any conflicts or other relationships that

might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.  In

connection with this inquiry, Centerview obtained from the Debtors and their professionals the

names of individuals and entities that may be parties-in-interest in these Chapter 11 Cases (the

"Potential Parties-in-Interest").  A categorized summary of the Potential Parties-in-Interest is

provided on Schedule 1 annexed hereto.

26.        As part of its diverse practice, Centerview appears in numerous cases, proceedings and transactions involving many different attorneys, accountants, investment bankers and financial consultants, some of whom may represent Potential Parties-in-Interest in these Chapter 11 Cases.  Further, Centerview has in the past, and may in the future, be represented by attorneys and law firms, some of whom may be involved in these proceedings.  In addition, Centerview has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these Chapter 11 Cases in which it works with or against or has mutual clients with other professionals involved in these Chapter 11 Cases.  Based on our current knowledge of the professionals listed as Potential Parties-in-Interest in these Chapter 11 Cases, and to the best of my knowledge, none of these business relations constitute interests adverse to the Debtors.

27.        Centerview has researched its electronic client files and records to determine its commercial or other professional connections with the Debtors and any Potential Parties-in-Interest.  To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, Centerview has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these Chapter 11 Cases.

28.        Furthermore, to the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, none of the principals or employees of Centerview working on or connected to this engagement on the Debtors' behalf has had, or will have in the future, direct contact concerning these Chapter 11 Cases with the Potential Parties-in-Interest herein, the United States Trustee, or anyone employed in the Office of the United States Trustee, other than in connection with this engagement for the Debtors.

17

29.     To the extent that I have been able to ascertain that Centerview has been retained within the last three years to represent any of the Potential Parties-in-Interest in matters unrelated to these cases, such parties are referenced on Schedule 2 annexed hereto.  Centerview's representation of each entity referenced on Schedule 2 is only in connection with matters that are unrelated to the Debtors or these Chapter 11 Cases.

30.     Other than as referenced on Schedule 2, I am unaware of any client relationships that Centerview has had with the Potential Parties-in-Interest herein.  If Centerview's proposed retention by the Debtors is approved by this Court, Centerview will not accept any engagement or perform any service for any entity or person other than the Debtors in the Chapter 11 Cases. Given the size of the Firm and the breadth of Centerview's client base, it is possible that Centerview may now or in the future be retained by one or more of the Potential Parties-in-Interest in matters unrelated to the Debtors or these Chapter 11 Cases without my knowledge. In addition, the Debtors may have customers, creditors, competitors and other parties with whom they maintain business relationships that are not listed as Potential Parties-in-Interest and with whom Centerview may now or in the future maintain commercial or other professional relationships.  To the extent that Centerview discovers any, or enters into any new, material commercial or other professional relationship with Potential Parties-in-Interest, it will supplement this disclosure to the Court promptly.

31.     I am not related or connected to and, insofar as I have been able to ascertain after reasonable inquiry, no other professional of Centerview is related or connected to, any United States Bankruptcy Judge for the Southern District of New York, any of the District Judges for the Southern District of New York, the U.S. Trustee for the Southern District of New York or any employee in the Office of the U.S. Trustee for the Southern District of New York.

ny-1011935

32.     To the best of my knowledge and belief, insofar as I have been able to ascertain

after reasonable inquiry, none of the professionals of Centerview has had, or will have in the

future, direct contact concerning the Chapter 11 Cases with the Debtors' creditors, other parties

in interest, the U.S. Trustee or anyone employed in the Office of the U.S. Trustee other than in

connection with performing financial advisory and investment banking services on behalf of the

Debtors.

33.     To the best of my knowledge and belief, insofar as I have been able to ascertain

after reasonable inquiry, Centerview has no agreement with any other entity to share with such

entity any compensation received by Centerview in connection with these Chapter 11 Cases.  No

promises have been received by Centerview as to compensation for Centerview in connection

with these Chapter 11 Cases other than in accordance with the Engagement Letter.

34.     Prior to the Petition Date, the Debtors paid Centerview an aggregate of

$2,900,000 in full payment of the Monthly Advisory Fees for the months of October 2011

through May 2012 and $54,155 as reimbursement for Centerview's expenses billed through May

13, 2012.  In addition, the Debtors paid Centerview $5,000,000 for the Financing Fee associated

with the $1.45 billion and $150 million debtor-in-possession financings obtained by the Debtors,

an Interim Transaction Fee of $1,200,000 and 50% of the Restructuring Fee ($6,250,000), all

pursuant to the terms of the Engagement Letter. Centerview also received an expense retainer of

$50,000.

35.     Upon the completion of the proposed sales of the Debtors' legacy loan portfolio

and mortgage loan origination and servicing businesses and assets,[5] and/or other Restructuring,

---

[5]     See *Debtors' Motion Pursuant to 11 U.S.C.  §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 For Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form*
*(cont'd)*

ny-1011935

Centerview will be entitled to receive the remaining 50% of the Transaction Fee ($6,250,000), which amount is subject to crediting of certain amounts pursuant to the terms of the Engagement Letter.

36.    Centerview has received no other compensation from the Debtors pursuant to the Engagement Letter.  As of the Petition Date, Centerview did not hold a prepetition claim against the Debtors for fees or expenses related to services rendered in connection with the engagement.

37.    Accordingly, other than as disclosed herein, and insofar as I have been able to determine after reasonable inquiry, Centerview has no relationship with the Debtors of which I am aware.  Based upon the foregoing, I believe that Centerview is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Centerview and its professionals:

(a)    are not creditors, equity security holders or insiders of the Debtors;

(b)    were not, within two years before the Petition Date, a director, officer or employee of the Debtors; and

(c)    do not have an interest materially adverse to the Debtors, their respective estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

38.    Centerview will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Centerview's retention

---

*(cont'd from previous page)*
*and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (D.E. 61).*

are discovered or arise, Centerview will use reasonable efforts to file promptly a supplemental

declaration, as required by Bankruptcy Rule 2014(a).

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the

foregoing is true and correct.

Executed on June 26, 2012

CENTERVIEW PARTNERS LLC

By:    /s/ Marc Puntus
        Marc Puntus
        Partner

21

## SCHEDULE 1

### RESIDENTIAL CAPITAL, LLC ET AL.
### Case No. 12-12020 (MG)

### List of Parties Searched

**Debtors and Subsidiaries**
ditech, LLC
DOA Holding Properties, LLC
DOA Properties IX (Lots-Other), LLC
EPRE LLC
Equity Investment I, LLC
ETS of Virginia, Inc.
ETS of Washington, Inc.
Executive Trustee Services LLC
GMAC – RFC Holding Company, LLC
GMAC Model Home Finance I, LLC
GMAC Mortgage USA Corporation
GMAC Mortgage, LLC
GMAC Residential Holding Company, LLC
GMAC RH Settlement Service, LLC
GMACM Borrower LLC
GMACM REO LLC
GMACR Mortgage Products, LLC
HFN REO SUB II, LLC
Home Connects Lending Services, LLC
Homecomings Financial Real Estate Holdings, LLC
Homecomings Financial, LLC
Ladue Associates, Inc.
Passive Asset Transactions, LLC
PATI A, LLC
PATI B, LLC
PATI Real Estate Holdings, LLC
RAHI A, LLC
RAHI B, LLC
RAHI Real Estate Holdings, LLC
RCSFJV2004, LLC
Residential Accredit Loans, Inc.
Residential Asset Mortgage Products, Inc.
Residential Asset Securities Corporation
Residential Capital, LLC
Residential Consumer Services of Alabama, LLC
Residential Consumer Services of Ohio, LLC
Residential Consumer Services of Texas, LLC
Residential Consumer Services, LLC
Residential Funding Company, LLC
Residential Funding Mortgage Exchange, LLC
Residential Funding Mortgage Securities I, Inc.
Residential Funding Mortgage Securities II, Inc.
Residential Funding Real Estate Holdings, LLC
Residential Mortgage Real Estate Holdings, LLC
RFC – GSAP Servicer Advance, LLC
RFC Asset Holdings II, LLC
RFC Asset Management, LLC
RFC Borrower LLC
RFC Construction Funding, LLC
RFC REO LLC
RFC SFJV-2002, LLC

**Foreign Subsidiaries**
Canada Mortgage Acceptance Corporation
Foreign Obligation Exchange, Inc. 2003-H12
Foreign Obligation Exchange, Inc. 2003-H14
Foreign Obligation Exchange, Inc. 2004-H11
Foreign Obligation Export, Inc.
GMAC Financiera S.A. de C.V. Sociedad
    Financiera de Objecto Multiple
GMAC Residential Funding of Canada Limited
GMAC-RFC (No. 2) Limited
GMAC-RFC Auritec, S.A.
GMAC-RFC Direct Limited
GMAC-RFC Espana Hipotecas SL
GMAC-RFC Europe Limited
GMAC-RFC Holdings Limited
GMAC-RFC Property Finance Limited
High Street Home Loans Limited
MCA Finance Limited
National Guarantee plc
Private Label Group Limited
Private Label Mortgage Services Limited

**Officers and Directors**
Abreu, Steven M.
Aretakis, James
Dondzila, Catherine M.
Fleming, Patrick
Hamzehpour, Tammy
Harney, Anthony J.
Hills, Garry
Horner, Jill M.
III, Edward F. Smith,
Ilany, Jonathan
Mack, John E.
Marano, Thomas
Meyer, Darsi
Nees, Louis A.
Pensabene, Joseph A.
Riddle, Mindy
Strauss, Thomas M.
Tyson, William N.
West, Pamela E.
Whitlinger, James
Wilkinson, Winston Carlos

**Parties to Funding Agreements**
Ally Financial Inc (f/k/a GMAC Inc.)
Barclays Bank PLC
Citibank, N.A.
Wells Fargo Bank, N.A.
BMMZ Holdings LLC

1

US Bank National Association
Deutsche Bank Trust Company Americas

**Bondholders**
AllianceBernstein Advisors
American Enterprise Investment Services Inc.
Appaloosa Management L.P.
Bank of New York Mellon, (The)/Barclays Capital - London
Bank of Nova Scotia/CDS
BARC/FIXED
Barclays Capital Inc. /LE
Berkshire Hathaway Inc.
BlackRock Global Investors
Charles Schwab & Co., Inc.
CITIBK/GRP
Citigroup Global Markets Inc.
Citigroup Global Markets Inc. /Salomon Brothers
Credit Suisse Securities (USA) LLC
David Lerner Associates, Inc.
Deutsche Bank Securities, Inc.
E*Trade Clearing LLC
Edward D. Jones & Co.
First Clearing, LLC
First Southwest Company
Goldman Sachs International
Goldman, Sachs & Co.
Interactive Brokers Retail Equity Clearing
J.P. Morgan Clearing Corp.
J.P. Morgan Securities LLC
Janney Montgomery Scott Inc.
Loomis Sayles & Company
LPL Financial Corporation
Merrill Lynch Safekeeping
Morgan Stanley & Co. LLC
Morgan Stanley Smith Barney LLC
National Financial Services LLC
Oppenheimer & Co. Inc.
OptionXpress, Inc
P. Schoenfeld Asset Management
Paulson & Co. Inc.
Penson Financial Services, Inc./Ridge.
Pershing LLC
Pentwater Capital Management
Putnam Investment Management
Raymond, James & Associates, Inc.
RBC Capital Markets, LLC
Scottrade, Inc.
Security Investors LLC
Silver Point Capital, L.P.
Stifel, Nicolaus & Company Incorporated
Taconic Capital Advisors, L.P.
TD Ameritrade Clearing, Inc.
Timber Hill LLC
UBS Financial Services LLC
UBS Securities LLC
Vanguard Marketing Corporation
Western Asset Management Company

**Landlords and Tenants**
2155 Northpark Lane LLC
2255 Partners, L.P. c/o M. David Paul Development LLC
Avenel Realty Company d / b / a Avenel at Montgomery Square
Brandywine Cityplace LP
BREOF Convergence LP c/o Brookfield Real Estate Opportunity Fund
Business Suites (Texas) LTD
Center Township of Marion County
Del Amo Financial Center, LP
DRA CLP Esplanade LP c/o Colonial Properties Services Ltd Partnership
Euclid Plaza Associates, LLC
GBM Properties, LLC
Homeowners Alliance
Liberty Property Limited Partnership
National Default Servicing, LLC
New Towne Center Inc.
PBC San Jose, LLC
PBC Walnut Creek, LLC
Realty World - Graham/Grubbs and Associates
Regus Management Group LLC
Teachers Insurance and Annuity Association of America c/o Northmarq RES
The Irvine Company LLC
The Office Annex, Inc.
Veridian Credit Union f/k/a John Deere Community Credit Union
W.E.G., Jr., Inc. d / b / a Highland-March Beverly Suites

**Parties to Litigation**
Acacia Life Insurance Company
Allstate Bank (f/k/a Allstate Federal Savings Bank)
Allstate Insurance Company
Allstate Life Insurance Company
Allstate Life Insurance Company of New York, Allstate Retirement Plan
Allstate New Jersey Insurance Company
American Heritage Life Insurance Company
Ameritas Life Insurance Corp.
Assured Guaranty Municipal Corp.
Boilermaker Blacksmith National Pension Trust
Brown County, Ohio
Cambridge Place Investment Management Inc.
Church-Dellinger, Victoria Jean
Columbus Life Insurance Company
Deutsche Zentral-genossenschaftsbank, New York Branch, d/b/a DZ Bank AG, New York Branch
DG Holding Trust
Federal Home Loan Bank of Boston
Federal Home Loan Bank of Chicago
Federal Home Loan Bank of Indianapolis
Federal Home Loan Mortgage Corporation
Federal Housing Finance Agency
Financial Guaranty Insurance Company
First Colonial Insurance Company
Fort Washington Active Fixed Income LLC

Fort Washington Investment Advisors, Inc.
HSH Nordbank AG
HSH Nordbank AG, Luxembourg Branch
HSH Nordbank AG, New York Branch
HSH Nordbank Securities S.A.
Huntington Bancshares Inc.
IKB Deutche Industriebank AG
IKB International S.A. (in Liquidation)
Integrity Life Insurance Company
Kennett Capital, Inc.
Kral, Kenneth L.
Laster, Marteal
Massachusetts Mutual Life Insurance Company
MBIA Insurance Corporation
Mitchell, Ruth
Mitchell, Steven
National Credit Union Administration Board
National Integrity Life Insurance Company
New Jersey Carpenters Health Fund
New Jersey Carpenters Vacation Fund
Rio Debt Holdings (Ireland) Limited
Sall, Mohammed A.
Sealink Funding Ltd.
State of Ohio
Stichting Pensioenfonds ABP
The Charles Schwab Corporation
The Union Central Life Insurance Company
The Western and Southern Life Insurance Company
Thrivent Balanced Fund
Thrivent Balanced Portfolio
Thrivent Bond Index Portfolio
Thrivent Core Bond Fund
Thrivent Financial Defined Benefits Plan Trust
Thrivent Financial for Lutherans
Thrivent Income Fund
Thrivent Limited Maturity Bond Fund
Thrivent Limited Maturity Bond Portfolio
U.S. Central Federal Credit Union
West Virginia Investment Management Board
Western Corporate Federal Credit Union
Western-Southern Life Assurance Company

**U.S. Trustee's Office (Region 2 Trial Attorneys)**
Davis, Tracy Hope
Driscoll, Michael
Gasparini, Elisabetta
Golden, Susan
Khodorovsky, Nazar
Masumoto, Brian S.
Morrissey, Richard C.
Nakano, Serene
Riffkin, Linda A.
Schwartz, Andrea B.
Schwartzberg, Paul K.
Velez-Rivera, Andy
Zipes, Greg M.

**Bankruptcy Judges (New York)**
Bernstein, Stuart M.
Chapman, Shelley C.

Drain, Robert
Gerber, Robert E.
Glenn, Martin
Gropper, Allan L.
Lane, Sean H.
Lifland, Burton R.
Morris, Cecelia G.
Peck, James M.

**District Court Judges (New York)**
Baer, Harold
Batts, Deborah A.
Berman, Richard M.
Briccetti, Vincent L.
Buchwald, Naomi Reice
Carter, Andrew L.
Castel, P. Kevin
Cedarbaum, Miriam Goldman
Cote, Denise L.
Crotty, Paul A.
Daniels, George B.
Duffy, Kevin T.
Engelmayer, Paul A.
Forrest, Katherine B.
Gardephe, Paul G.
Griesa, Thomas P.
Haight, Charles S.
Hellerstein, Alvin K.
Jones, Barbara S.
Kaplan, Lewis A.
Karas, Kenneth M.
Koeltl, John G.
Marrero, Victor
McKenna, Lawrence M.
McMahon, Colleen
Nathan, Alison J.
Oetken, J. Paul
Owen, Richard
Patterson, Robert P.
Pauley, William H.
Preska, Loretta A.
Rakoff, Jed S.
Ramos, Edgardo
Sand, Leonard B.
Scheindlin, Shira A.
Seibel, Cathy
Stanton, Louis L.
Stein, Sidney H.
Sullivan, Richard J.
Swain, Laura Taylor
Sweet, Robert W.
Wood, Kimba M.

**Depositing Banks**
Ally Bank
Bank of America, N.A.
Bank of New York Mellon
Citibank, N.A.
Deutsche Bank Trust Company Americas
JPMorgan Chase Bank, N.A.

M&T Bank
State Street Bank and Trust Company
U.S. Bank National Association
Wachovia Bank, National Association

**Consultants & Professionals**
Barclays Bank PLC
Centerview Partners LLC
Deloitte & Touche
Evercore
Fortress Investment Group, LLC
FTI Consulting, Inc.
Kirkland & Ellis LLP
Kurtzman Carson Consultants LLC
Mayer Brown LLP
Mercer
Nationstar Mortgage, LLC
PricewaterhouseCoopers
Rubenstein Associates, Inc.
Sidley Austin LLP
Skadden, Arps, Slate, Meagher & Flom LLP

**HELOC Investors**
5th 3rd bank
Aurora Loan Services LLC
Bank One, Texas N.A.
Deutsche Bank National Trust Co.
Everbank
JP Morgan Chase
Macquarie Mortgages USA Inc
Suntrust
The Bank of New York Mellon
Treasury Bank, N.A.
Us Bank, N.A.
Wachovia Bank Na
Wells Fargo Bank, N.A.

**Servicing Counterparties**

**Government Entities and GSEs**
Federal Home Loan Mortgage Corporation (Freddie Mac)
Federal Housing Administration (FHA)
Federal National Mortgage Association (Fannie Mae)
Government National Mortgage Association (Ginnie Mae)

**Housing and Local Agencies**
California Housing Finance Agency
CitiMortgage, Inc., as administrator for Texas Veterans Land Board
Connecticut Housing Finance Authority
Delaware Housing Authority
Hawaii Housing (Hula Mae)
Housing Opportunities Commission of Montgomery County, Maryland
Mississippi Home Corporation
Neighborhood Housing Services of America and Philadelphia N.H.S.

Oregon Housing and Community Services Department
Redevelopment Authority of the County of Berks
Rural Housing
The Housing and Redevelopment Authority in and for the City of Minneapolis
The Industrial Commission of North Dakota

**Mortgage and Monoline Insurers**
The ACE Group
Ambac
Assured Guaranty Corp.
Cuna Mutual Group Mortgage Insurance Company
FGIC
Financial Security Assurance Inc
Federal Insurance Group (a subsidiary of the Chubb Group of Insurance Companies)
General Electric Mortgage Insurance Corporation
Genworth Mortgage Insurance Corporation
MBIA
Mortgage Guaranty Insurance Corp.
PMI Mortgage Insurance Co.
Radian Asset Assurance Inc.
Radian Guaranty Inc.
Republic Mortgage Insurance Company
Triad Guaranty Insurance Corporation
United Guaranty Residential Insurance Company

**Trustees**
Bank One, National Association
BNY Midwest Trust Company
Chase Bank of Texas, N.A.
Citibank, N.A.
Deutsche Bank National Trust Company
Deutsche Bank Trust Company Americas
HSBC Bank USA, National Association
JPMorgan Chase Bank, N.A.
LaSalle Bank National Association
Security Pacific National Company
The Bank of New York Mellon
U.S. Bank National Association
US National Association
Wells Fargo Bank Minnesota, N.A.
Wells Fargo Bank, National Association
Wilmington Trust Company

**Other Counterparties to Servicing Agreements**
50 BY 50, LLC
ABN AMRO Mortgage Croup, Inc.
Access National Mortgage Corporation
Ace Home Equity Loan Trust, Series 2007-SL3
ACE Securities Corp.
ACT Mortgage Capital
Advantage Bank
Aegis Mortgage Corporation
Aegon USA Realty Advisors
Alliance Bancorp
Alliance Securities Corp.
Ally Bank
Ally Financial Inc.

Ally Investment Management LLC
Alternative Finance Corporation
Amalgamated Bank of New York
American Equity Mortgage, Inc.
American Home Mortgage
American Home Mortgage Acceptance, Inc.
American Home Mortgage Investment Trust 2005-2
American Home Mortgage Investment Trust 2005-4A
American Home Mortgage Investment Trust 2006-2
American Home Mortgage Investment Trust 2007-A
American Home Mortgage Servicing, Inc.
American Home Mortgage Trust 2004-4
American Home Mortgage Trust 2005-1
American Home Mortgage Trust 2005-2
American Home Mortgage Trust 2005-4A
American Residential Equities XXVII, LLC
American Residential Equities, LLC
Ameriquest Mortgage Company
Andover Bank
Arbor Commercial Mortgage, LLC
Asset Management Holding of South Florida, LLC
Assured Guaranty Municipal Corp
Atlantic Financial Federal
Audobon Savings Bank
Aurora Loan Services Inc.
Aurora Loan Services LLC
Banc of America Funding 2005-3 Trust
Banc of America Funding 2005-8 Trust
Banc of America Funding 2006-1 Trust
Banc of America Funding 2006-4 Trust
Banc of America Funding Corporation
Banc of America Mortgage Capital Corporation
Bancap
Banco Mortgage Company
Banco Popular North America
Bank of America, National Association
Bank of Hawaii
Bank One, Texas, N.A.
Bank Rhode Island
Bank United, FSB
Bankatlantic, A Federal Savings Bank
Bankers Saving
Bankers Trust Company
Banknorth Mortgage
Bay Atlantic Federal Credit Union
Bay Financial Savings Bank, FSB
Bayrock Mortgage Corporation
Bayview Acquisitions, LLC
Bayview Financial Asset Trust
Bayview Financial Property Trust
Bayview Financial Securities Company, LLC
Bayview Financial Trading Group, L.P.
Bayview Financial, L.P.
Bear Stearns Asset Backed Securities I, LLC
Bear Stearns Mortgage Capital Corporation
Bear Stearns Second Lien Trust 2007-1
Bear Stearns Second Lien Trust 2007-SV1
Bell Federal Savings and Loan Association

BellaVista Funding Corporation
Belvedere Trust Finance Corporation
Bluebonnet Savings Bank FSB
BMMZ Holdings LLC
Broadway Federal Bank, FSB
Brothers Bank, FSB
Butte Savings and Loan Association
Caliber Funding, LLC
California Banking Association
California Federal Bank, FSB
California Public Employees' Retirement System
Cambridge Place Collateral Management LLC
Canada Mortgage Acceptance Corporation
Capital Crossing Bank
Capitol Federal Savings and Loan Association
Capstead Mortgage Corporation
CDC Mortgage Capital Inc. (Natixis)
Cenfed Bank, a Federal Savings Bank
Cenlar FSB
CenterState Bank of Florida, N.A.
Central Bank of Jefferson County, Inc.
Century Bank, FSB
CFX Bank
Charter One Bank, FSB
Charter One Bank, N.A.
Chase Manhattan Mortgage Corporation
Chemical Mortgage Company
Citi Financial Mortgage Co., Inc
Citibank (West), FSB
Citigroup Global Markets Realty Corp.
Citigroup Mortgage Loan Trust Inc.
CitiMortgage, Inc.
Citizens Bank of Connecticut
Citizens Bank of Massachusetts
Citizens Bank of New Hampshire
Citizens Bank of Pennsylvania
Citizens Bank, N.A.
Citizens Federal Bank, FSB
Clayton Fixed Income Services Inc.
Clayton National, Inc.
CMC Investment Partnership
Coastal Banc Capital Corporation
Coastal Banc SSB
Coastal States Mortgage Corporation
Collective Federal Savings Bank
Colonial Mortgage Service Company
Comerica Bank
Community Lending, Incorporated
Communityone Bank, N.A.
ComUnity Lending, Incorporated
Copperfield
Core, Cap Inc.
Corona Asset Management III, LLC
Countrywide Bank, N.A.
Countrywide Home Loans Servicing, LP
Countrywide Home Loans, Inc.
Credit Suisse First Boston Mortgage Securities Corp.
CSX
CTCE Federal Credit Union

CTX Mortgage Company, LLC
DB Structured Products, Inc.
Deutsche Alt-A Securities, Inc.
Deutsche Bank AG New York Branch
Deutsche Mortgage Securities, Inc.
DLJ Mortgage Acceptance Corp.
DLJ Mortgage Capital, Inc.
Dollar Bank, FSB
Drawbridge Consumer Funding Ltd
Dynex Securities Corporation
E*Trade Bank
E*Trade Mortgage
E*Trade Wholesale Lending Corp.
EAB Mortgage Company, Inc.
EMC Mortgage Corporation
Empire Mortgage X, Inc.
Encore Bank and National Association
Encore Savings Bank
Erie Savings Bank
Eurekabank
EverBank
Fairbanks Capital Corp.
Fairfax Savings Bank
Family Bank, FSB
Family Lending Services, Inc.
FBS Mortgage Corporation
Federal Home Loan Bank of Atlanta
Federal Trust Bank, FSB
Fidelity Federal Bank
Fidelity Savings and Loan
Fifth Third Bank
Financial Asset Securities Corp.
First Bank Incorporated
First Bank, Inc.
First Cap Holdings, Inc.
First Citizens Bank and Trust Company
First Citizens Mortgage Company
First Community Bank N.A.
First Federal of Michigan
First Federal Savings and Loan Association of
    Storm Lake
First Guaranty Mortgage Corporation
First Horizon Home Loan Corporation
First Indiana Bank
First Internet Bank of Indiana
First Massachusetts Bank, N.A.
First National Bank and Trust Company
First National Bank of Arizona
First National Bank of El Dorado
First Nationwide Mortgage Corporation
First NLC
First Rate Capital Corporation
First Savings Mortgage Corporation
First Tennessee Bank National Association
First Tennessee Capital Assets Corporation
First Trust Savings Bank
First Union National Bank
First-Citizens Bank & Trust Company
Firstrust Bank
Fleet National Bank

Flex Point Funding Corporation
Flick Mortgage Investors, Inc.
FNBA
Fortress Credit Corp.
FPA Corporation
Franklin Bank, SSB
Franklin Credit
Franklin Credit Management Corporation
Gateway Credit Union
Gateway Funding Diversified Mortgage Services,
    LP
GE Capital Consumer Card Co.
GE Mortgage Services, LLC
Geneva Mortgage Corporation
Germantown Savings Bank
Gibraltar Savings Association
Ginn Financial Services, LLC
Goldman Sachs Mortgage Company
Gonzalo Residential Asset Trust
Great American First Savings Bank
Great American Savings Bank
Green Planet Servicing, LLC
Green Tree Servicing LLC
GreenPoint Mortgage Funding Trust 2005-HE4
GreenPoint Mortgage Funding Trust 2006-HE1
GreenPoint Mortgage Funding, Inc.
Greenwich Capital Acceptance, Inc.
Greenwich Capital Financial Products, Inc.
Greenwich Universal Portfolio
GS Mortgage Securities Corp.
GSAA Home Equity Trust 2005-9
GSMPS Mortgage Loan Trust 2005-LT1
GSR Mortgage Loan Trust 2006-AR2
GSR Trust 2007-HEL1
Guardian Savings Bank
Hanover Capital Mortgage Holdings, Inc.
HarborView Mortgage Loan trust 2004-10
Healthcare Employees Federal Credit Union
Home Equity Loan Trust 2005-HS2
Home Equity Loan Trust 2006-HSA2
Home Equity Loan Trust 2006-HSA3
Home Equity Loan Trust 2006-HSA5
Home Equity Loan Trust 2007-HSA1
Home Equity Loan Trust 2007-HSA3
Home Federal Savings & Loan Association of
    Rome, Ga.
Home Loan Corporation
Home Loan Series 09-2028
HomeBanc Mortgage
HomEq Servicing Corporation
Horsham Funding Inc.
HSI Asset Securitization Corporation
Hudson & Keyse, LLC
Hudson City Savings Bank
Huntington Federal Savings & Loan Association
Hyperion Capital Group LLC
IMPAC CMB Trust Series 2005-6
IMPAC Funding Companies
IMPAC Funding Corporation
IMPAC Mortgage Holdings, Inc.

IMPAC Secured Assets Corp.
Imperial Credit Industries, Inc.
Independent Bank East Michigan
IndyMac Bank, FSB (now OneWest Bank, FSB)
IndyMac MBS, Inc.
IndyMac Mortgage Holdings, Inc.
ING Bank, FSB
Investment Capital Group
Irwin Union Bank and Trust Company
Ixis Real Estate Capital Inc
Jackson Federal Bank
Just Mortgage, Inc.
Kaiser Federal Bank
Keystone Nazareth Bank & Trust Company
Kidder Peabody Mortgage Capital Corporation
Lacera
Lebank
Lehman Brothers Bank, FSB
Lehman Brothers Holdings Inc.
Lehman Capital, a division of Lehman Brothers
    Holdings Inc.
Liberty Home Lending, Inc.
Liberty Savings Bank, FSB
Linden Assemblers Federal Credit Union
Litton Loan Servicing, LP
LNV Corporation
Loan Center of California
Loan Link Financial Services
Local #38 and Associates Credit Union
Lomas Mortgage USA, Inc.
Los Angeles County Employees Retirement
    Association
Los Angeles Federal Savings
LPP Mortgage Ltd.
Luminent Mortgage Capital, Inc.
Lydian Private Bank
Macquarie Mortgage Funding Trust 2007-1
Macquarie Mortgages USA, Inc.
MAIA Mortgage Finance Statutory Trust
Marine Bank
Market Street Mortgage Corporation
Massachusetts Mutual Life Insurance Co.
Matrix Capital Bank
Medway Savings Bank
Mellon Bank
Mellon/McMahon Real Estate Advisors Inc.
Merck Sharp & Dohme Federal Credit Union
Mercury Mortgage Finance Statutory Trust
Meridian Mortgage Corporation
Merrill Lynch Bank & Co.
Merrill Lynch Hunton Paige
Merrill Lynch Mortgage Capital Inc.
Merrill Lynch Mortgage Holdings, Inc.
Merrill Lynch Mortgage Investors, Inc.
Merrill Lynch Mortgage Lending, Inc.
Metlife Bank, N.A.
Metrocities Mortgage Corp., LLC
Metropolitan Life Insurance Company
Mid America Bank, FSB

MidFirst Bank
Midland Financial Savings and Loan Association
Mint I, LLC
Mint II, LLC
Money Bank Investment Corporation
Monterey I Holdings
Morgan Stanley Capital I Inc.
Morgan Stanley Mortgage Capital Inc.
Morgan Stanley Mortgage Loan Trust 2005-3AR
Mortgage Asset Securitization Transactions, Inc.
Mortgage Asset Securitization Trust
Mortgage Interest Networking Trust II
Mortgage Investors Corporation
MortgageIT Holdings Inc.
MortgageIT Securities Corp.
MortgageIT Trust 2005-4
MortgageIT, Inc
MRF 3 LLC
Mrit Securities Corporation
Mutual Savings & Loan Association of Charlotte,
    N.C.
Mutual Savings Bank
National Bank of Commerce
NETBANK
Network Funding L.P.
Neuwest Equity Partners
New Century Mortgage Securities, Inc.
New Cumberland Federal Credit Union
New Penn Financial, LLC
New York Life Insurance and Annuity Corporation
New York Life Insurance Company
Nomura Asset Acceptance Corporation
Nomura Credit & Capital, Inc.
Nomura Home Equity Loan, Inc.
North Jersey Federal Credit Union, Inc.
Northwest Funding, Inc.
Northwestern National Bank of Minneapolis
Norwest Bank Minnesota, National Association
Norwest Mortgage, Inc.
Ocwen Federal Bank FSB
Ocwen Loan Servicing, LLC
Ohio Savings Bank
Opteum Financial Services, LLC
Option One Mortgage Corporation
Paine Webber Real Estate Securities Inc.
Parkside Lending, LLC
Parkvale Savings Bank
Paul Financial, LLC
People Savings Bank, Inc., SSB
Peoples Heritage Savings Bank
PHH Mortgage
Philadelphia Federal Credit Union
Pinnacle Capital Mortgage Corporation
Pinnacle Financial Corporation
Plaza Home Mortgage, Inc.
PMC Bancorp
PNC Bank, N.A.
PNC Mortgage Securities Corp.
Pomona First Federal Bank and Trust
Principal Asset Markets, Inc.

Principal Bank
Principal Mutual Life Insurance Company
Private Capital Group
Quaker City Bank
Quicken Loans Inc.
RBS Citizens, National Association
Real Time Resolutions, Inc.
Real Time Solutions
Realty Mortgage Corporation
Redlands Federal Bank, FSB
Redwood Trust, Inc.
Reliance Federal Credit Union
Residential Mortgage Assistance Enterprise, LLC
Resolution Capital Advisors, LLC
Ridgewood Savings Bank
Riggs Bank N.A.
Rochester Community Savings Bank
Roosevelt Management Company, LLC
RWT Holdings, Inc.
Ryland Acceptance Corporation Four
SACO I Trust 2005-GP1
SACO I Trust 2006-8
Salomon Brothers Realty Corp.
Saxon Mortgage Funding Corporation
Sea Breeze Financial Services, Inc.
Sebring Capital
Secured Bankers Mortgage Company
Security National
Security Pacific National Bank
Select Portfolio Servicing Inc.
Sequoia Funding Trust
Sequoia Residential Funding, Inc.
Shearson Lehman Government Securities, Inc.
Shellpoint Mortgage LLC
Sierra Pacific Mortgage, Inc
Silver State Financial Services, Inc.
Silvergate Bank
Skyline Financial Corp.
SMFC Funding Corporation
SN Servicing Corporation
SNBOA, LLC
Southbank
Southern Pacific Thrift and Loan Association
SouthStar Funding, LLC
Southwest Savings and Loan Association
Sovereign Bank, FSB
Specialized Loan Servicing LLC
St. Paul Federal Bank for Savings
Stanwich Mortgage Acquisition Company, LLC
Sterling Savings Bank
Steward Financial, Inc.
Stonebridge Bank
Structured Asset Mortgage Investments II Inc.
Structured Asset Mortgage Investments, Inc.
Structured Asset Securities Corporation
Structured Mortgage Investments II Inc.
Summit Savings & Loan Association
Suntrust Asset Funding, LLC
Superior Bank
Susquehanna Bank

Syncora Guarantee Inc.
Taylor, Bean Whitaker
TCF National Bank
TCIF, LLC
TeleBank
Terwin Advisors LLC
Terwin Mortgage Trust 2006-6
Terwin Securitization LLC
The Canada Trust Company
The Chase Manhattan Bank
The First Boston Corporation
The First National Bank of Glens Falls
The Frost National Bank
The Mortgage Store Financial, Inc.
The New York Mortgage Company, LLC
The Travelers Indemnity Company
The Winter Group
Treasury Bank, N.A.
Tri Counties Bank
Tri Country Area Federal Credit Union
Truman Capital Securitization LLC
UBS Real Estate Securities Inc.
UBS Warburg Real Estate Securities Inc.
UBS Warburg, LLC
United Capital Mortgage, LLC
United Federal Savings Bank
United Financial Mortgage Corporation
United Savings Association of Texas, FSB
Unity Bank
Universal Master Servicing, LLC
US Bank Home Mortgage
USAA Federal Savings Bank
Valley Independent Bank
Vermont Mortgage Group, Inc.
Wachovia Bank, National Association
Wachovia Mortgage Corporation
Walter Mortgage Company
Washington Mutual Bank
Washington Mutual Mortgage Securities Corp.
Webster Bank
Western Financial Savings Bank, FSB
WestStar Mortgage, Inc.
Wilshire Credit Corporation
Winter Group
Witmer Funding LLC
WMCC Clayton / Washington Mutual Bank
WMD Capital Markets, LLC

**Utilities**
Abovenet Communications Inc.
AT&T
AT&T Mobility
Center Point Energy
CenturyLink
Cisco Systems Capital Corporation
City of Eden Prairie
Comcast
Dish Network
Genesys Conferencing
Global Capacity Group Inc.

IEX Corporation
Inova Solutions
Intercall
Intervoice Inc.
Level 3 Communications LLC
MediaCom
Micro-Tel Center
MidAmerican Energy
Sprint
Time Warner Cable
Time Warner Telecom
Verizon
Verizon Business
Verizon California
Verizon Wireless
Waste Management
Waterloo Water Works
Xcel Energy

**Consolidated Top 50 Creditors**
Aegis Usa Inc.
Alan Gardner
Allstate Insurance
Ambac Assurance Corp
Assured Guaranty Corp.
BNYMellon
Boilermaker Blacksmith National Pension Trust
Brian Kessler, et al
Cambridge Place Investment Management Inc.
Credstar
Deutsche Bank AG, New York
Deutsche Bank Trust Company Americas
Don E. Diane M. Patterson
Donna Moore
Emortgage Logic
Federal Home Loan Bank of Boston
Federal Home Loan Bank of Chicago
Federal Home Loan Bank of Indianapolis
Federal Housing Finance Agency
Financial Guaranty Insurance Co.
Huntington Bancshares Inc.
Indecomm Global Services
Iowa Public Employees Retirement System
Lehman Brothers Holdings, Inc.
Loan Value Group
Massachusetts Mutual Life Insurance Company
MBIA, Inc.
Midwest Operating Engineers Pension Trust Fund
National Credit Union Administration Board
New Jersey Carpenters Health Fund
New Jersey Carpenters Vacation Fund
Orange County Employees Retirement System
Police and Fire Retirement System of the City of
   Detroit
Sealink Funding Limited
Steven And Ruth Mitchell
Stichting Pensioenfonds ABP
The Charles Schwab Corporation
The Union Central Life Insurance Company
Thrivent Financial for Lutherans

Tiffany Smith
US Bank
Wells Fargo & Company
Wells Fargo Bank N.A
West Virginia Investment Management Board
Western & Southern

**Members of the Creditors' Committee**
Allstate Life Insurance Company
AIG Asset Management (U.S.), LLC
The Bank of New York Mellon Trust Company,
   N.A.
Deutsche Bank Trust Company Americas
Drennen, Rowena L.
Financial Guaranty Insurance Company
MBIA Insurance Corporation
U.S. Bank National Association
Wilmington Trust, N.A.

**Rule 2004 Motion Parties**
AlixPartners
Cerberus Capital Management, L.P.
Cerberus FIM Investors LLC
Cerberus FIM, LLC
FIM Holdings LLC
General Motors Company
Gibbs & Bruns, LLP
GMAC Bank
GMAC Commercial Finance, LLC
GMAC LLC
GMAC Mortgage Group, LLC
Houlihan Lokey
IB Finance Holding Company, LLC
Kelly Drye & Warren LLP
Kramer Levin et al
Moelis & Company
Morrison & Foerster LLP
Morrison Cohen LLP
National Motors Bank FSB
Ropes & Gray LLP
White & Case

**SCHEDULE 2**

**Centerview Relationships with Potential Parties-in-Interest**

Centerview has represented each of the Potential Parties-in-Interest listed below in connection with matters completely unrelated to the Debtors' Chapter 11 Cases:

Ambac Assurance Corporation

Cisco Systems, Inc.

Citigroup, Inc. / Phibro LLC

GMAC Common Equity Trust I (owns 132,280 shares of Ally Financial, Inc.)

HSBC Bank USA

ING Bank

**EXHIBIT 3**

CENTER|VIEW PARTNERS

October 18, 2011

Residential Capital, LLC
1177 Avenue of the Americas
16th Floor
New York, NY 10036

Attention:    Thomas Marano
              Chief Executive Officer

Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Centerview Partners LLC (the "Advisor" or "Centerview") and Residential Capital, LLC and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

_Assignment Scope_:

1.    The Company hereby retains Advisor as its investment banker to provide the Company with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction and/or Financing (each as defined below) on the terms and conditions set forth herein. By signing this Agreement, we hereby accept our appointment as your investment banker under the terms hereof. The individuals listed on Exhibit A will constitute the core team (the "Core Team"), and we agree that the Core Team will, as appropriate, devote its full time and attention to this engagement.

As used in this Agreement:

(a)    "Restructuring" shall mean any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization transaction or series of related transactions in respect of all or a significant portion of the Company's outstanding indebtedness (including any debt to an affiliate, bank debt, bond debt, and other on and off balance sheet indebtedness), and which may also include trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, and other liabilities (collectively, the "Existing Obligations"), and that is achieved, without limitation, through (i) a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); (ii) rescheduling of the maturities of Existing Obligations; (iii) a change in interest rates; (iv) repurchase, settlement or forgiveness of Existing Obligations; (v) conversion of Existing Obligations into equity; (vi) an exchange offer involving the issuance of new securities in exchange for Existing

31 WEST 52ND STREET, 22ND FLOOR, NEW YORK, NY 10019
PHONE: (212) 380-2650   FAX: (212) 380-2651   WWW.CENTERVIEWPARTNERS.COM

NEW YORK  •  LONDON  •  SAN FRANCISCO  •  LOS ANGELES.

Obligations; or (vii) the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests. Notwithstanding the foregoing, neither (1) settlements of the matters described on Exhibit C hereto nor (2) capital contributions by the member of the Company, affiliates of the member, or the U.S government in the ordinary course of business, including for the purpose of satisfying the Company's financial covenants under its debt facilities or agreements with Fannie Mae or other government sponsored or owned entity, and which do not otherwise involve a Restructuring, Sale Transaction or Financing shall be deemed a Restructuring.

(b)     "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of equity, equity-linked, or debt securities, instruments, or obligations of the Company entailing debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code. Notwithstanding the foregoing, capital contributions by the member of the Company, affiliates of the member, or the U.S. government shall not be deemed a Financing, except if the member of the Company or affiliates of the member provide debtor-in-possession financing.

(c)     "Sale Transaction" means any transaction or series of transactions, whether consummated before or after a filing pursuant to Chapter 11 of the United States Bankruptcy Code, and involving (i) an acquisition, merger, consolidation, or other business combination pursuant to which all or substantially all of the business or assets of the Company are, directly or indirectly, combined with another company; (ii) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (iii) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of all or substantially all of the assets, securities or other interests of the Company or (iv) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of all or substantially all of the interests in the Company to a third party.

*Description of Services*:

2.     Advisor agrees, in consideration of the compensation provided in Section 3 below, to perform such of the following investment banking services as the Company may reasonably request:

(a)     Reviewing and analyzing the Company's business, operations and financial projections;

(b)     Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c)     Assisting in the determination of a capital structure for the Company;

(d)     Assisting in the determination of a range of values for the Company on a going concern basis;

(e)     Advising the Company on tactics and strategies for negotiating with the Stakeholders;

(f)     Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g)     Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

(h)     Advising and assisting the Company in evaluating potential Financing transactions by the Company, and, subject to our agreement to so act and the execution of appropriate agreements in the case of any public issuance of securities or other circumstances where additional agreements may be customary between the Company and Advisor or an entity described in Section 13 below that is acting as underwriter or placement agent therefor, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such a Financing;

(i)     Assisting the Company in preparing documentation within our area of expertise that is required in connection with the Restructuring;

(j)     Assisting the Company in identifying and evaluating candidates for a potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of one or more Sale Transactions;

(k)     Attending meetings of the Company's Board of Directors and its committees with respect to matters on which we have been engaged to advise you;

(l)     Providing testimony, as necessary, with respect to matters on which we have been engaged to advise you in any proceeding before the Bankruptcy Court; and

(m)     Providing the Company with other financial restructuring advice as may be specifically agreed upon in writing by the Company and the Advisor.

*Fees and Expense Reimbursement; Indemnification*:

3.       As consideration for the services to be provided, the Company shall pay Advisor the following fees:

(a)       A monthly financial advisory fee of $300,000 (the "Monthly Advisory Fee"), the first payment of which shall be due and paid by the Company upon execution of this Agreement and thereafter on each monthly anniversary thereof during the term of this engagement. Advisor will issue a written invoice to the Company for the initial and each subsequent Monthly Advisory Fee. 50% of Monthly Advisory Fees paid in excess of $1,800,000 shall be credited (but only once) against an Out-of-Court Transaction Fee, an In-Court Transaction Fee or a Limited Transaction Fee (each as defined below) payable; provided, that in the event of a Chapter 11 filing such credit will only apply proportionately to the extent that such fees are approved by the Bankruptcy Court, if applicable.

(b)       If at any time during the term of this engagement or within the nine full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (x) any Restructuring or Sale Transaction is consummated outside of Bankruptcy Court or (y)(1) an agreement in principle, definitive agreement or plan to effect a Restructuring or Sale Transaction is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Restructuring or Sale Transaction is consummated outside of Bankruptcy Court, Centerview shall be entitled to receive a transaction fee (an "Out-Of-Court Transaction Fee"), contingent upon the consummation of a Restructuring or Sale Transaction and payable at the closing thereof equal to $15,000,000; provided, however, that if (x) any Restructuring or Sale Transaction is consummated in Bankruptcy Court or (y)(1) an agreement in principle, definitive agreement or plan to effect a Restructuring or Sale Transaction is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Restructuring or Sale Transaction is consummated in Bankruptcy Court, Centerview shall be entitled to receive a transaction fee (an "In-Court Transaction Fee"), contingent upon the consummation of a Restructuring or Sale Transaction and payable at the closing thereof equal to $12,500,000; provided, further, that if an agreement in principle or definitive agreement to effect a Sale Transaction is entered into prior to the six month anniversary of this Agreement and concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Sale Transaction is consummated (i) outside of Bankruptcy Court; and (ii) with the party disclosed separately to Centerview on the date hereof with whom the Company is currently engaged in pending negotiations (the "Disclosed Party"), Centerview shall be entitled to receive a transaction fee (a "Limited Transaction Fee") equal to $7,500,000. Notwithstanding anything to the contrary in this subparagraph 3(b), in connection with any Restructuring or Sale Transaction that is intended to be effected, in

4

whole or in part, as a prepackaged, partial prepackaged or prearranged plan of reorganization anticipated to involve the solicitation of acceptances of such plan in compliance with the Bankruptcy Code, by or on behalf of the Company, from holders of any class of the Company's securities, indebtedness or obligations (a "Prepackaged Plan") the Transaction Fee shall be earned and payable (x) 50% upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to the plan and (y) 50% upon consummation of such Restructuring or Sale Transaction; provided, however, that if the Advisor is paid 50% of the Transaction fee in connection with a Prepackaged Plan and a plan of reorganization is not consummated, the Advisor will return such fee to the Company.

(c)    If at any time during the Fee Period, the Company consummates any Financing, the Company will pay Advisor the following:

i.    1.0% of the aggregate amount of any indebtedness issued that is secured by a first lien;

ii.    3.0% of the aggregate amount of any indebtedness issued that (x) is secured by a second or junior lien, (y) is unsecured and/or (z) is subordinated;

iii.    5.0% of the aggregate amount of any equity or equity-linked securities or obligations issued; and

iv.    0.5% of the aggregate amount of any debtor-in-possession financing issued, plus 1.0% of the aggregate amount of any debtor-in-possession financing issued to new lenders, not to exceed $5,000,000 in the aggregate (or, if such financing is provided by a member of the Company, affiliates of the member, the U.S. government or by the Disclosed Party, not to exceed $500,000).

Any fee(s) paid under subparagraphs 3(c)(i), 3(c)(ii) and 3(c)(iii) shall be 50% credited (but only once) against an Out-of-Court Transaction Fee, an In-Court Transaction Fee or a Limited Transaction Fee subsequently paid under subparagraph 3(b).

Any fee in excess of $500,000, paid under subparagraph 3(c)(iv) shall be 50% credited (but only once) against an Out-of-Court Transaction Fee, an In-Court Transaction Fee or a Limited Transaction Fee subsequently paid under subparagraph 3(b).

(d)    In addition to any fees that may be payable to Advisor and, regardless of whether any transaction occurs, the Company shall promptly reimburse Advisor for all:

(A) reasonable documented production charges and out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonably incurred fees and expenses, including reasonable expenses of counsel if engaged with the prior approval of the Company, which approval shall not be unreasonably withheld.

(e) As part of the compensation payable to Advisor hereunder, the Company agrees to the indemnification, contribution and related provisions (the "Indemnification Provisions") attached to this Agreement as Exhibit B and incorporated herein in their entirety. Nothing contained in this Paragraph 3 shall be deemed to limit in any manner the Company's obligations under the Indemnification Provisions.

(f) All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

For the avoidance of doubt, if both a Restructuring and a Sale Transaction occur (in separate transactions or through a single transaction that meets both definitions) the Company will be obligated to pay the Advisor either an Out-of-Court Transaction Fee or an In-Court Transaction Fee but not both. One or more fees pursuant to subparagraph 3(c) may be payable in addition to an In-Court Transaction Fee (subject to the crediting set forth above).

*Retention in Chapter 11 Proceedings:*

4. In the event of the commencement of proceedings pursuant to Chapter 11 of the United States Bankruptcy Code during the term of this Agreement or during the period until nine months following any termination of this Agreement by the Company, the Company agrees that it will use commercially reasonable efforts to obtain prompt authorization from the Bankruptcy Court to retain Advisor on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Advisor agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Advisor with a draft of the application and proposed retention order authorizing Advisor's retention sufficiently in advance of the filing of such application and proposed order to enable Advisor and its counsel to review and comment thereon. Advisor shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Advisor's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Advisor. In so agreeing to seek Advisor's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Advisor's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the

benefit of the Company in pursuing any Restructuring, Sale Transaction or Financing, that the value to the Company of Advisor's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the various contingent fees set forth herein are reasonable regardless of the number of hours to be expended by Advisor's professionals in the performance of the services to be provided hereunder.

*Other*:

     5.     No fee payable to any other person, by the Company or by any other party, shall reduce or otherwise affect any fee payable or expense reimbursement hereunder to the Advisor.

     6.     The Company will furnish or cause to be furnished to Advisor such current and historical financial information and other information regarding the business of the Company as Advisor may request in connection with this engagement. The Company will keep Advisor advised of all developments materially affecting the Company or its financial position. In performing its services pursuant to this Agreement, including in connection with any valuation of the Company, Advisor shall be entitled to rely upon information furnished to it by the Company or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Advisor will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect thereto. With respect to any forecasts or projections that may be furnished to Centerview by the Company Centerview will assume that they have been reasonably prepared on bases reflecting the best then currently available estimates and judgments of the management of the Company as to the matters covered thereby. In connection with the services described above, the Company authorizes us to transmit any memorandum prepared by the Company describing the Company and its assets, properties, or businesses in connection with a Sale Transaction or Financing to potential parties to a Sale Transaction or Financing. The Company will be solely responsible for the contents of any such memorandum.

     7.     In performing its services pursuant to this Agreement, Advisor is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Sale Transaction, Financing, or other transaction. Advisor shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Advisor be responsible for providing any tax, legal or other specialist advice.

     8.     It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Advisor or any of its affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

9.    In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Advisor of any discussions, negotiations, or inquiries regarding a potential Restructuring, Sale Transaction or Financing, including any such material discussions or inquiries that have occurred during the six-month period prior to the date of this Agreement to the extent relevant to this engagement. In the event that Advisor receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

10.    The Company agrees that neither Centerview nor any of its affiliates, their respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Centerview Persons" and each individually, a "Centerview Person") shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on behalf of or in right of the Company for or in connection with this engagement or any transactions or conduct in connection herewith, except to the extent that any losses, claims, damages or liabilities incurred by the Company are finally judicially determined to have resulted directly from the willful misconduct or gross negligence of such Centerview Person.

11.    Advisor's engagement hereunder will automatically terminate upon termination of any Chapter 11 proceedings involving the Company and may be terminated by you or us at any time without liability or continuing obligation to you or us, except that following any such termination (a) Advisor shall remain entitled to any fees accrued pursuant to Section 3 but not yet paid prior to such termination, and to reimbursement of reasonable documented production charges and out-of-pocket expenses incurred prior to such termination as provided in subparagraph 3(d) hereof, (b) the Indemnification Provisions shall survive termination indefinitely and (c) in the case of automatic termination or termination by the Company, Advisor shall remain entitled to full payment of all fees contemplated by Section 3 hereof in respect to any Restructuring, any Sale Transaction and any Financing.

12.    The Company recognizes that Advisor has been engaged only by the Company with duties solely to the Company, and that the Company's engagement of Advisor is not deemed to be on behalf of and is not intended to confer rights upon any member, shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto as against Advisor or any of its affiliates or any of their respective directors, officers, members, agents, employees or representatives. No one, other than senior management or the Board of Directors of the Company is authorized to rely upon the Company's engagement of Advisor or use or rely upon (in their capacities as such and not in any individual capacities) any statements, advice, opinions or conduct by Advisor. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or management in the course of the Company's engagement of Advisor are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating any Restructuring, Sale Transaction or Financing, as the case may be, and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with the Restructuring, Sale Transaction or Financing. Any advice, written or oral, rendered by Advisor may not be reproduced, disseminated, disclosed publicly or made available to third

parties at any time, in any manner or for any purpose, without the prior written consent of Advisor. Notwithstanding the foregoing, nothing herein shall prohibit you from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure. Advisor's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a fiduciary or agency relationship between Advisor and the Company or its Board of Directors or any other party. Centerview is not assuming any duties or obligations other than those expressly set forth in this Agreement

13.    In connection with the services to be provided hereunder, Advisor may employ the services of its affiliates and may share with any such entity any information concerning the Company, *provided* that Advisor and such entities shall hold any non- public information confidential in accordance with the Confidentiality Agreement, dated October 12, 2011 (the "Confidentiality Agreement") and their respective customary policies relating to nonpublic information. Any such entity so employed shall be entitled to all of the benefits afforded to Advisor hereunder, including the Indemnification Provisions and shall be entitled to be reimbursed for its costs and expenses on the same basis as Advisor.

14.    The provisions hereof and the Indemnification Provisions shall inure to the benefits of and be binding upon the successors and assigns of the Company, Advisor and any other person entitled to indemnity under the Indemnification Provisions. The Company's obligations pursuant to this Agreement are joint and several. This Agreement, including the Indemnification Provisions, and the Confidentiality Agreement embody the entire agreement and understanding among the parties hereto and supersedes any and all prior agreements, arrangements, and understandings, related to the matters provided for herein. No waiver, amendment or other modification of this Agreement, including the Indemnification Provisions, shall be effective unless in writing and signed by each party to be bound thereby.

15.    This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) and the Indemnification Provisions shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Advisor pursuant to, or the performance by Advisor of the services contemplated by, this Agreement.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

CENTERVIEW PARTNERS LLC

By: _____

Marc Puntus
Partner

Accepted and Agreed to as of the date first written above.

RESIDENTIAL CAPITAL, LLC, on behalf of itself
and its controlled subsidiaries

By: _____

Thomas Marano
Chief Executive Officer

10

**Exhibit A**
**Core Team**

Stephen Crawford – Partner
Samuel Greene - Partner
Marc Puntus – Partner
1 Managing Director
1-2 Principals
2 Associates
2-3 Analysts

**Exhibit B**
**Indemnification Provisions**

**Attached Hereto**

**Exhibit C**
**Litigation and Claims**

The settlement or compromise of any of the following matters will not be deemed to constitute a
"Restructuring" for purposes of this Engagement:

1. Pending investigations, lawsuits or claims by any state attorney general, state banking
   department, US Department of Justice, US Department for Housing and Urban
   Development, or similar bodies or agencies relating to mortgage servicing and related
   issues

2. Pending lawsuits or claims by the Federal Housing Finance Authority in respect of
   mortgage loan repurchase or mortgage-backed securities claims



**Exhibit B**

October 18, 2011

Centerview Partners LLC
31 West 52nd Street, 22nd Floor
New York, NY 10019

Gentlemen:

In connection with the engagement (the "Engagement") of Centerview Partners LLC ("Centerview") by the undersigned (the "Company") to render financial advisory services to the Company pursuant to a letter agreement dated the date hereof (the "Engagement Agreement"), the Company hereby agrees as follows:

1.  Except as provided in paragraph 3. below, the Company agrees to indemnify and hold harmless Centerview and each of its affiliates, their respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Indemnified Persons" and each individually, an "Indemnified Person") from and against any and all losses, claims, damages, demands and liabilities, joint or several, or actions or proceedings in respect thereof, brought by or against any person (collectively, "Losses"), which are related to or arise out of the Engagement or any matter or transaction contemplated thereby.

2.  The Company agrees to reimburse each Indemnified Person promptly upon request for all costs and expenses (including fees, disbursements and other charges of legal counsel) as they are incurred in connection with investigating, preparing for, pursuing, defending against or providing evidence in, any pending or threatened action, claim, suit, investigation or other proceeding brought by or against any person in any jurisdiction related to or arising out of the Engagement or any matter or transaction contemplated thereby (whether or not Centerview or any other Indemnified Person is a named party or witness, and whether or not any liability to any person results therefrom), including in connection with enforcing the terms hereof.

3.  Notwithstanding the foregoing, the Company shall have no obligation to indemnify and hold harmless any Indemnified Person under this letter agreement in respect of any Losses to the extent that such Losses are finally judicially determined to have resulted from the willful misconduct or gross negligence of such Indemnified Person.

4.  The Company agrees that it will not, without Centerview's prior written consent (which consent shall not be unreasonably withheld or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, claim, suit, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Centerview or any other Indemnified Person is an actual or potential party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from all liability arising out of such action, claim, suit, investigation or proceeding and does not impose any monetary or financial obligation on any Indemnified Person or contain any admission of culpability or liability on the part of any Indemnified Person. No Indemnified Person seeking indemnification, reimbursement or contribution under this letter agreement will, without the Company's prior written consent (which consent shall not be unreasonably withheld or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

31 WEST 52ND STREET, 22ND FLOOR, NEW YORK, NY 10019
PHONE: (212) 380-2650   FAX: (212) 380-2651   WWW.CENTERVIEWPARTNERS.COM

NEW YORK  •  LONDON  •  SAN FRANCISCO  •  LOS ANGELES.

5.  If the foregoing indemnification provided for herein is determined to be unavailable to an Indemnified Person for any reason (other than as specified in paragraph 3. hereof) or is insufficient to hold it harmless in respect of any Losses referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses (and expenses related thereto) (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and to Centerview, on the other hand, with respect to the Engagement or (ii) if the allocation provided by clause (i) of this paragraph is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the fault of the Company and Centerview and any other relevant and equitable considerations; provided, however, that in no event shall the aggregate contribution of the Indemnified Persons to the amounts so paid or payable exceed the aggregate amount of all fees actually received by Centerview from the Company in connection with the Engagement (excluding any amounts received by Centerview as reimbursement of expenses pursuant to the Engagement Agreement).  For purposes of this letter agreement, the relative benefit to the Company and Centerview of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by the Company in the transaction or transactions that are the subject of the Engagement, whether or not such transaction is proposed or completed, bears to (b) the fees paid or to be paid to Centerview under the Engagement Agreement.

6.  The Company agrees that neither Centerview nor any other Indemnified Person shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on behalf of or in right of the Company for or in connection with the Engagement or any transactions or conduct in connection therewith,  except to the extent that any losses, claims, damages or liabilities incurred by the Company  are finally judicially determined to have resulted from the willful misconduct or gross negligence of such  Indemnified Person.

7.   This letter agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of laws. Solely for purposes of enforcing this letter agreement, the Company hereby consents to personal jurisdiction of, service in and waives any objection to venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, this letter agreement is brought against Centerview or any other Indemnified Person.  ANY RIGHTS OF TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THIS LETTER AGREEMENT OR THE ENGAGEMENT IS HEREBY WAIVED.

8.  The indemnity, contribution, reimbursement and other obligations of the Company hereunder shall be in addition to any liability that the Company may have, at common law or otherwise, and shall be binding on its successors and permitted assigns.  The obligations of the Company hereunder cannot be assigned without the prior written consent of Centerview.

9.  Prior to or at the time a public announcement is made concerning the Company entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth herein, the Company will notify Centerview in writing thereof and, if requested by Centerview, shall use commercially reasonable efforts to arrange in connection therewith alternative means of providing for the obligations of the Company set forth herein.

10. The terms of this letter agreement shall apply to all services provided by Centerview to the Company in connection with the matters contemplated by the Engagement, including those provided prior to the date of this letter agreement. The provisions of this letter agreement shall apply to any subsequent amendment to or modification of the Engagement Agreement, and shall survive the termination or completion of the Engagement.

Very truly yours

Residential Capital, LLC

By: _____

Thomas Marano
Chief Executive Officer

Accepted:

CENTERVIEW PARTNERS LLC

By: _____

Marc Puntus
Partner

March 13, 2012

Residential Capital, LLC
1177 Avenue of the Americas
16th Floor
New York, NY 10036

Attention: Thomas Marano
Chief Executive Officer

Ladies and Gentlemen:

Reference is made to that certain engagement letter dated October 18, 2011 (the "Engagement Letter"), between Centerview Partners LLC ("Centerview") and the Company (as such term is defined in the Engagement Letter). This agreement (the "Amendment") amends the Engagement Letter as follows:

Centerview and the Company mutually agree that Paragraph 3(a) and 3(b) of the Engagement Letter are hereby replaced with the following:

(a)     A monthly financial advisory fee (the "Monthly Advisory Fee") of $300,000, the first payment of which shall be due and paid by the Company upon execution of the Engagement Letter and thereafter on each monthly anniversary thereof through January 1, 2012. Thereafter, a Monthly Advisory Fee of $400,000, the first payment of which shall be due and paid by the Company on January 1, 2012 ("Revised Monthly Invoice Date") and thereafter on each monthly anniversary thereof through the earlier of the date the Company files chapter 11 (the "Petition Date") and the conclusion of this engagement. Subsequent to the Petition Date, a Monthly Advisory Fee of $300,000, the first payment of which shall be due and paid by the Company on the first monthly anniversary of the Revised Monthly Invoice Date occurring after the Petition Date, and thereafter on each monthly anniversary thereof during the term of this engagement. Advisor will issue a written invoice to the Company for the initial and each subsequent Monthly Advisory Fee. 50% of Monthly Advisory Fees paid subsequent to the Petition Date shall be credited (but only once) against an Out-of-Court Transaction Fee, an In-Court Transaction Fee or a Limited Transaction Fee (each as defined below) payable; provided, that in the event of a Chapter 11 filing such credit will only apply proportionately to the extent that such fees are approved by the Bankruptcy Court, if applicable.

(b)     If at any time during the term of this engagement or within the nine full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (x) any Restructuring or Sale Transaction is consummated outside of Bankruptcy Court or (y)(1) an agreement in principle, definitive agreement or plan to effect a

Restructuring or Sale Transaction is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Restructuring or Sale Transaction is consummated outside of Bankruptcy Court, Centerview shall be entitled to receive a transaction fee (an "Out-Of-Court Transaction Fee"), contingent upon the consummation of a Restructuring or Sale Transaction and payable at the closing thereof equal to $15,000,000; provided, however, that if (x) any Restructuring or Sale Transaction is consummated in Bankruptcy Court or (y)(1) an agreement in principle, definitive agreement or plan to effect a Restructuring or Sale Transaction is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Restructuring or Sale Transaction is consummated in Bankruptcy Court, Centerview shall be entitled to receive a transaction fee (an "In-Court Transaction Fee"), contingent upon the consummation of a Restructuring or Sale Transaction and payable at the closing thereof equal to $12,500,000; provided, further, that if an agreement in principle or definitive agreement to effect a Sale Transaction is entered into prior to the six month anniversary of this Agreement and concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Sale Transaction is consummated (i) outside of Bankruptcy Court; and (ii) with the party disclosed separately to Centerview on the date hereof with whom the Company is currently engaged in pending negotiations (the "Disclosed Party"), Centerview shall be entitled to receive a transaction fee (a "Limited Transaction Fee") equal to $7,500,000.    Notwithstanding anything to the contrary in this subparagraph 3(b), in connection with any Restructuring or Sale Transaction that is intended to be effected, in whole or in part, as a §363 sale with a stalking horse bidder, or as a prepackaged, partial prepackaged or prearranged plan of reorganization, which plan may include a sale transaction (a "Prearranged Plan"), the Transaction Fee shall be earned and payable (x) 50% upon, in the case of a §363 sale, execution of a stalking horse asset purchase agreement, or, in the case of a Prearranged Plan, upon obtaining indications of support from certain of the Company's key creditors that in the good faith judgment of the Board of Directors of the Company are sufficient to justify filing such Prearranged Plan, and (y) 50% upon consummation of such Restructuring or Sale Transaction.

Centerview and the Company mutually agree that the following paragraph shall be added to section 3:

(g)    If at any time during the Fee Period the Company (x) receives a letter of intent to purchase all or substantially all of the Company's assets or (y) receives a debtor-in-possession financing proposal, in either case, satisfactory to the Company, Centerview shall be due and paid a transaction fee ("Interim Transaction Fee") equal to $1,200,000.

The Company and Centerview hereby agree that except as specifically set forth above, nothing contained in this Amendment shall affect any of the terms of the Engagement Letter, or any of the terms of the separate indemnification agreement, dated October 18, 2011 and referenced in paragraph 3(e) of the Engagement Letter (the "Indemnification Agreement").

This Amendment may be executed in counterparts, each of which together shall be considered a single document. This Amendment shall be binding on Centerview and the Company and their respective successors and assigns. This Amendment is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or on any other person not a party hereto other than the indemnified persons referenced in the Indemnification Agreement referenced in paragraph 3(e) of the Engagement Letter. This Amendment shall be governed by and construed in accordance with the laws of the State of New York.

Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this Amendment, which shall thereupon constitute a binding agreement between the Company and Centerview.

Very truly yours,

CENTERVIEW PARTNERS LLC

By: _____

Name:  Marc Puntus
Title:   Partner

ACCEPTED AND AGREED TO:

Residential Capital LLC

By: _____
Name:  Thomas Marano
Title:   CEO