Hearing Date and Time: July 13, 2012 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: July 6, 2012 at 4:00 p.m. (prevailing Eastern Time)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Proposed Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                          :    Chapter 11
                                                :
Residential Capital, LLC, et al.,               :    Case No. 12-12020 (MG)
                                                :
Debtors.                                        :    Jointly Administered
                                                :
------------------------------------------------------------ x

**NOTICE OF APPLICATION PURSUANT TO SECTIONS 328 AND 1103 OF THE
BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014
FOR AN ORDER TO RETAIN AND EMPLOY MOELIS & COMPANY LLC AS
INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO THE DEBTORS, *NUNC PRO TUNC*, TO MAY 16, 2012**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On June 27, 2012 the Official Committee of Unsecured Creditors (the "**Committee**") of the above captioned debtors and debtors-in-possession filed the attached Application Pursuant to Sections 328 and 1103 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014 for and Order to Retain and Employ Moelis & Company LLC as Investment Banker to the Official Committee of Unsecured Creditors to the Debtors, Nunc Pro Tunc, to May 16, 2012 (the "**Application**").

2.      A hearing (the "**Hearing**") to consider the Application shall be held before the Honorable Martin Glenn, United States Bankruptcy Judge, in Room 501 of the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York, 10004, on **July 13, 2012 at 10:00 a.m.** (prevailing Eastern time).

3.      Any objections to the Application must be made in writing, filed with the Court (with a copy to Chambers) and served in accordance with the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures entered on May 23, 2012 [Docket No. 141] (the "**Case Management Order**"), so as to be received no later than **July 6, 2012 at 4:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**").

4.      If no objections to the Application are timely filed and served on or before the Objection Deadline, the Committee may submit to the Bankruptcy Court an order substantially in the form of the proposed order attached to the Application as **Exhibit A** (the "**Proposed Order**").

5.      A Copy of the Application can be obtained or viewed for a fee via PACER at www.pacer.gov or (without charge) on the Debtors' restructuring website at www.kccllc.net/rescap.

Dated:      June 27, 2012
             New York, New York

                              KRAMER LEVIN NAFTALIS & FRANKEL LLP


                              /s/ Kenneth H. Eckstein
                              Kenneth H. Eckstein
                              Douglas H. Mannal
                              1177 Avenue of the Americas
                              New York, New York 10036
                              Telephone: (212) 715-9100

                              *Proposed Counsel for the Official Committee*
                              *of Unsecured Creditors of*
                              *Residential Capital, LLC, et al.*

**Hearing Date and Time: July 13, 2012 at 10:00 a.m. (prevailing Eastern Time)**
**Response Deadline: July 6, 2012 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Proposed Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
In re:                                          :     Chapter 11
                                                :
RESIDENTIAL CAPITAL, LLC, et al.,               :     Case No. 12-12020 (MG)
                                                :
                                  Debtors.       :     Jointly Administered
------------------------------------------------------------------ x

**APPLICATION PURSUANT TO SECTIONS 328 AND 1103 OF THE BANKRUPTCY**
**CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 FOR AN ORDER**
**TO RETAIN AND EMPLOY MOELIS & COMPANY LLC**
**AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF THE DEBTORS *NUNC PRO TUNC* TO MAY 16, 2012**

# TABLE OF CONTENTS

JURISDICTION AND VENUE ................................................................................................1

GENERAL BACKGROUND..................................................................................................2

MOELIS' QUALIFICATIONS ...............................................................................................2

SERVICES TO BE PROVIDED .............................................................................................5

PROFESSIONAL COMPENSATION ......................................................................................6

INDEMNIFICATION, CONTRIBUTION AND REIMBURSEMENT  OF MOELIS AND
OTHER INDEMNIFIED PERSONS ........................................................................................9

EFFORTS TO AVOID DUPLICATION OF SERVICES ...........................................................10

MOELIS' ELIGIBILITY FOR EMPLOYMENT ......................................................................10

BASIS FOR RELIEF...........................................................................................................11

    A.   The Bankruptcy Code Permits the Employment and Retention of Moelis on Terms
        Substantially Similar to Those of the Engagement Letter ....................................................11

    B.   The Indemnification, Contribution, and Reimbursement Terms of the Engagement
        Letter are Appropriate........................................................................................................13

    C.   The Retention of Moelis is Critical to the Committee's Role ............................................14

NOTICE.............................................................................................................................14

NO PRIOR REQUEST ........................................................................................................14

# TABLE OF EXHIBITS

EXHIBIT A – Proposed Order

EXHIBIT B – Engagement Letter

EXHIBIT C – Dermont Declaration

Schedule 1 to Exhibit C – Conflict Checklist

Schedule 2 to Exhibit C – Moelis Disclosures

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of Residential Capital, LLC ("**ResCap**") and its affiliates that are chapter 11 debtors and debtors-in-possession (each a "**Debtor**" and collectively the "**Debtors**") in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), file this application (the "**Application**") for the entry of an order, pursuant to sections 328 and 1103 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Bankruptcy Rules of the Southern District of New York (the "**Local Bankruptcy Rules**"), substantially in the form attached hereto as **Exhibit A**, authorizing the Committee to retain and employ Moelis & Company LLC ("**Moelis**") as investment banker to the Committee *nunc pro tunc* to May 16, 2012 in accordance with the terms and conditions set forth in the engagement letter between the Committee and Moelis, dated as of May 30, 2012 (the "**Engagement Letter**"), a copy of which is annexed hereto as **Exhibit B** and incorporated by reference herein. In support of this Application, the Committee submits the Declaration of Jared J. Dermont, a Managing Director in the Recapitalization and Restructuring Group of Moelis (the "**Dermont Declaration**"), a copy of which is attached hereto as **Exhibit C,** and respectfully represents as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 328 and 1103 of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014-1.

## GENERAL BACKGROUND

4.      On May 14, 2012 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      On May 16, 2012, the United States Trustee for the Southern District of New York (the "**United States Trustee**"), pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in these Chapter 11 Cases.  The United States Trustee selected the following nine parties to serve as members of the Committee: (i) Wilmington Trust, N.A.; (ii) Deutsche Bank Trust Company Americas; (iii) The Bank of New York Mellon Trust Company, N.A.; (iv) MBIA Insurance Corporation; (v) Rowena L. Drennen; (vi) AIG Asset Management (U.S.), LLC; (vii) U.S. Bank National Association; (viii) Allstate Life Insurance Company; and (ix) Financial Guaranty Insurance Corporation.

6.      At a meeting of the Committee held on May 16, 2012, the Committee voted to retain Moelis as its investment banker.  Accordingly, this Application is made by the Committee for an order, pursuant to sections 328 and 1102 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2014-1, authorizing the Committee to retain Moelis as its investment banker, effective as of May 16, 2012.

7.      On June 18, 2012, the Court directed the United States Trustee to appoint an examiner in these Chapter 11 Cases.

## MOELIS' QUALIFICATIONS

8.      Moelis is an investment banking firm with an office located at 399 Park Avenue, 5th Floor, New York, NY 10022.  Moelis is a registered broker-dealer with the United States

Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Holdings LLC. Moelis & Company Holdings LLC, together with its subsidiaries, has approximately 600 employees located in offices in New York, Los Angeles, Boston, Chicago, Houston, Palo Alto, London, Frankfurt, Sydney, Hong Kong, Beijing and Dubai.

9.      Moelis provides a broad range of advice to its clients, including, among other things: (a) general corporate finance; (b) mergers, acquisitions and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.

10.      Moelis' business reorganization professionals have served as financial advisors or investment bankers in numerous recent chapter 11 cases, including: In re AMR Corp., No. 11-15463 (Bankr. S.D.N.Y. Nov. 29, 2011); In re General Maritime Corp., No. 11-15285 (Bankr. S.D.N.Y. Nov. 17, 2011); In re NewPage Corporation, No. 11-12804 (Bankr. D. Del. Sept. 7, 2011); In re Jackson Hewitt Tax Service, Inc., No. 11-11587 (Bankr. D. Del. June 30, 2011); In re Appleseeds Intermediate Holdings, LLC, No. 11-10160 (Bankr. D. Del. Feb. 23, 2011); In re Innkeepers USA Trust, No. 10-13800 (S.D.N.Y. July 19, 2010); In re Neenah Enters., Inc., No. 10-10360 (Bankr. D. Del. Feb. 3, 2010); In re Almatis B.V, No. 10-12308 (Bankr. S.D.N.Y. Apr. 30, 2010); In re Int'l. Aluminum Corp., No. 10-10003 (Bankr. D. Del. Jan. 27, 2010); In re Atrium Corp., No. 10-10150 (Bankr. D. Del. Jan. 20, 2010); In re Simmons Bedding Co., No. 09-14037 (Bankr. D. Del, Nov. 16, 2009); In re Reader's Digest Ass'n Inc., No. 09-23529 (Bankr. S.D.N.Y. Aug. 24, 2009); In re NV Broadcasting LLC, No. 09-12473 (Bankr. D. Del. July 13, 2009); In re

ION Media Networks Inc., No. 09-13125 (Bankr. S.D.N.Y. May 19, 2009); In re JG. Wentworth LLC, No. 09-11731 (Bankr. D. Del. May 19, 2009); In re Source Interlink Cos., No. 09-11424 (Bankr. D. Del. Apr. 27, 2009); In re Dayton Superior Corp., No. 09-11351 (Bankr. D. Del. Apr. 19, 2009); In re Idearc Inc., No. 09-31828 (Bankr. N.D. Tex. Mar. 31, 2009); In re Chemtura Corp., No. 09- 11233 (Bankr. S.D.N.Y. Mar. 18, 2009); In re Aleris Int'l. Inc., No. 09-10478 (Bankr. D. Del. Feb. 12, 2009); and In re Lyondell Chemical Co., No. 09-10023 (Bankr. S.D.N.Y. Jan. 6, 2009).

11.    The Debtors operate a large and complex enterprise and the Committee requires the services of an experienced investment banker such as Moelis to assist it in the critical tasks associated with guiding the Committee through the Debtors' reorganization efforts. The Committee has selected Moelis as its investment banker based upon, among other things, (a) the Committee's need to retain a skilled investment banking firm to provide advice with respect to the Debtors' complex restructuring activities, and (b) Moelis' extensive experience and excellent reputation in providing investment banking services in complex chapter 11 cases such as these. In light of the size and complexity of these Chapter 11 Cases, the resources, capabilities and experience of Moelis in advising the Committee are crucial to the success of these cases.

12.    The Committee's selection of Moelis as its investment banker reflects the Committee's belief that Moelis is the best candidate to provide the services to be provided and that its proposed compensation structure (which is summarized below and set forth in detail in the Engagement Letter) is competitive and appropriate given the Committee's understanding of the facts and circumstances of the Chapter 11 Cases.

13.     Accordingly, the Committee proposes to engage Moelis as its investment banker in these Chapter 11 Cases, and respectfully submits that Moelis' retention is in the best interests of the Committee, the Debtors, their estates, and other parties in interest.

## SERVICES TO BE PROVIDED

14.     Consistent with the terms of the Engagement Letter, Moelis' anticipated services in these Chapter 11 Cases include the following:[1]

(a)     assist the Committee in conducting a business and financial analysis of the Debtors;

(b)     assist the Committee in reviewing and analyzing proposals for any Restructuring,[2] and, to the extent requested, assist the Committee in soliciting and developing alternative proposals for a Restructuring;

(c)     advise and assist the Committee and, if the Committee requests, participate in negotiations of any Restructuring;

(d)     assist the Committee in valuing the Company's business;

(e)     be available to meet with the Committee, the Debtors' management, the Debtors' board of directors and other creditor groups, equity holders or other parties in interest (in each case who are institutional parties or represented by an advisor) to discuss any Restructuring;

(f)     participate in hearings before the Bankruptcy Court and provide testimony on matters mutually agreed upon in good faith; and

(g)     such other investment banking services in connection with a Restructuring as Moelis and the Committee may mutually agree upon.

---

[1] The summaries of Engagement Letter (including all Annexes thereto) terms throughout this Application, including without limitation with respect to services to be rendered, the fee structure, and indemnification, are qualified in their entirety by reference to the provisions of the Engagement Letter (including all Annexes thereto). To the extent there is any discrepancy between the summaries contained in the Application or this Declaration and the terms set forth in the Engagement Letter (including all Annexes thereto), the terms of the Engagement Letter shall control.

[2]     The Engagement Letter defines a "Restructuring" as "any restructuring, reorganization, rescheduling, recapitalization or repayment of all or any material portion of the Company's liabilities however such result is achieved, including, without limitation, through a plan or plans of reorganization or liquidation (a "Plan") confirmed in connection with Bankruptcy Cases, an exchange offer or consent solicitation, covenant relief, rescheduling of debt maturities, change in interest rates, settlement or forgiveness of debt, conversion of debt into equity, other amendments to the Company's debt instruments, repayment of the Company's debt instruments, issuance of new securities, raising of new debt or equity capital, or the sale or other transfer of equity, assets or other interests of the Company (for avoidance of doubt a sale or other transfer of all or substantially all of the Company or of all or substantially all of the Company's assets shall be a Restructuring)."

## PROFESSIONAL COMPENSATION

15.     Specifically, the Engagement Letter provides for the following compensation structure (the "**Fee Structure**"):

a.     <u>Monthly Fee</u>. During the term of the agreement set forth in the Engagement Letter, a non-refundable cash fee of $225,000 per month (the "**Monthly Fee**"), payable in advance of each month.  Whether or not a Restructuring has taken place or will take place, Moelis shall earn and be paid the Monthly Fee beginning on May 16, 2012 until the expiration or termination of the Engagement Letter.  For the month of May 2012, Moelis' Monthly Fee would be pro-rated to reflect that Moelis began providing services on May 16, 2012.  The first payment for the pro-rated portion of May 2012 and for June 2012 would be payable upon entry of this Court's order approving Moelis' engagement, and each subsequent payment shall be payable upon the first day of each subsequent month.

b.     <u>Restructuring Fee.</u> Upon the consummation of any Restructuring, a non-refundable cash fee (the "**Restructuring Fee**") of $7,750,000.  The Restructuring Fee would be offset by one-half (50%) of the aggregate Monthly Fees actually paid by the Company in cash, commencing with the tenth full Monthly Fee.  For the avoidance of doubt, no portion of the first nine full Monthly Fees received by Moelis would be applied to offset or reduce any portion of the Restructuring Fee.

16.     The Engagement Letter also provides that if at any time during the 12 months following the expiration or termination of the Engagement Letter (other than a termination for Cause)[3], either (a) a Restructuring is consummated or (b) the Company or any entity formed or invested in to consummate a Restructuring enters into an agreement for a Restructuring or a plan of reorganization is filed and a Restructuring is subsequently consummated at any time, then the Company and its bankruptcy estates shall pay to Moelis the Restructuring Fee in full and in cash immediately upon the consummation of the Restructuring.

---

[3] Termination for "Cause" is defined in the Engagement Letter as termination by the Committee prior to the Company entering into a definitive agreement or filing a Plan with respect to a Restructuring because of the gross negligence or willful misconduct by Moelis in performing this engagement which conduct is not substantially remedied by Moelis after 15 days written notice from the Committee stating that the Committee believes such conduct constitutes Cause.

17.    In addition to any fees payable to Moelis, Moelis will charge the Debtors for all reasonable out-of-pocket expenses incurred in connection with the engagement and its retention in the Chapter 11 Cases. Such expenses include without limitation document production costs, travel costs, meals, and the fees, disbursements, and other charges of Moelis' external legal counsel (without the need for such legal counsel to be retained as a professional in the Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

18.    As customary in this District, the Committee and Moelis request that, except with respect to the U.S. Trustee, Moelis' compensation, expense reimbursement, indemnification, contribution and reimbursement provisions not be subject to any standard of review other than section 328(a) of the Bankruptcy Code.

19.    The Committee understands that Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases in accordance with the applicable procedures of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, General Order M-389, and any other compensation procedures adopted by this Court (to the extent compliance is not waived therein or in the order approving Moelis' retention).  Moelis also will maintain records in support of any actual, necessary costs and expenses incurred in connection with its rendering of services in the Chapter 11 Cases.

20.    However, because the Committee understands (a) that it is not the general practice of investment banking firms like Moelis to keep detailed time records similar to those customarily kept by attorneys; (b) Moelis does not ordinarily keep time records on a "project category" basis; and (c) Moelis' compensation is based on a flat Monthly Fee and a flat Restructuring Fee, the

Committee respectfully requests that only Moelis' restructuring professionals be required to maintain records (in summary format) of the services rendered for the Committee, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments) and the identity of the restructuring professionals who provided those services. Moelis will present such records to the Court in its fee applications. Moreover, the Committee respectfully requests that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that Moelis' non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that Moelis not be required to provide or conform to any schedule of hourly rates. To the extent that Moelis would otherwise be required to submit more detailed time records by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, General Order M-389, or other applicable procedures and orders of the Court, the Committee respectfully requests that this Court waive such requirements.

21.    The Committee and Moelis have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these Chapter 11 Cases and in light of the facts that (a) such commitment may foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

22.    Moelis has informed the Committee that the Fee Structure is consistent with, and typical of, compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances. Moelis also

discussed the terms of its retention in arm's-length negotiations with the Committee. The Committee believes the Fee Structure is reasonable, market-based and designed to compensate Moelis fairly for its work.

23.    The Committee understands that Moelis' decision to advise and assist the Committee in connection with the Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code (except that, as customary in this District, only the U.S. Trustee may challenge the reasonableness of Moelis' compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code).

24.    Moelis is not a pre-petition creditor of the Debtors. According to Moelis' books and records, during the 90-day period immediately before the commencement of the Chapter 11 Cases, Moelis received no payments from the Debtors.

### INDEMNIFICATION, CONTRIBUTION AND REIMBURSEMENT OF MOELIS AND OTHER INDEMNIFIED PERSONS

25.    As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Committee has agreed to certain indemnification, contribution, and reimbursement obligations set forth in Annex A to the Engagement Letter and incorporated herein by reference. The Committee negotiated the Engagement Letter, including the Indemnification Provisions, with Moelis in good faith and at arm's length.

26.    Specifically, Annex A of the Engagement Letter provides that the Debtors and certain related parties would indemnify, and pay certain contribution and reimbursement to, Moelis and other Indemnified Persons (as defined in Annex A of the Engagement Letter) in accordance with the terms and conditions set forth in the Engagement Letter, including the annexes thereto (collectively, such provisions, the "**Indemnification Provisions**"), and

specifically do not apply to losses that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct (including bad faith) of Moelis.  The Committee believes that the Indemnification Provisions are customary and reasonable terms of consideration for Moelis in connection with in-court and out-of-court restructuring activities.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

27.    The Committee intends for Moelis' services to complement, and not duplicate, the services to be rendered by any other professional retained by the Committee in the Chapter 11 Cases.  The Committee seeks to retain other professionals during the term of Moelis' engagement, including AlixPartners, LLP as financial advisor.  To avoid unnecessary duplication of services during the pendency of the Chapter 11 Cases to the extent practicable, Moelis will use its reasonable efforts to work cooperatively with the Committee's other professionals to integrate any respective work performed by those professionals on behalf of the Committee.

## MOELIS' ELIGIBILITY FOR EMPLOYMENT

28.    Moelis has informed the Committee that, except as may be set forth in the Dermont Declaration, it does not represent in connection with these Chapter 11 Cases any other entity having an adverse interest to the Committee or the Debtors, and therefore believes it is eligible to represent the Committee under section 1103(b) of the Bankruptcy Code.

29.    The Committee understands that given the large number of parties in interest in these Chapter 11 Cases, despite the efforts to identify and disclose Moelis' relationships with such parties in interest. Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Dermont Declaration. The Committee also understands that Moelis will make continued inquiries following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

30.    The Committee is informed that Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than other principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.[4]

## BASIS FOR RELIEF

### A.    The Bankruptcy Code Permits the Employment and Retention of Moelis on Terms Substantially Similar to Those of the Engagement Letter

31.    The Committee seeks approval of the Engagement Letter, including the Fee Structure and the indemnification, contribution and reimbursement provisions, pursuant to section 328(a) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in relevant part, that a committee "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ."  11 U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be

_____

[4] In the ordinary course of its business, Moelis regularly retains the services of senior advisors with specific industry or other expertise to supplement the financial advisory services offered by Moelis' regular employees to Moelis' clients. Upon Moelis' engagement on a particular assignment, one or more such senior advisors may be assigned to assist the other Moelis professionals for such engagement. Such advisor acts under the management of the Moelis Managing Director who retains the lead role and primary responsibility for such assignment. The fees and expenses of such senior advisor are paid solely by Moelis. The Committee submits that such senior advisors are regular associates of Moelis within the meaning of section 504 of the Bankruptcy Code.

> subject to the uncertainties of what a judge thought the work was
> worth after it had been done. That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the court
> award to professional consultants "reasonable compensation" based
> on relevant factors of time and comparable costs, etc. Under present
> § 328 the professional may avoid that uncertainty by obtaining court
> approval of compensation agreed to with the trustee (or debtor or
> committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

32.      Further, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this
> title, with the court's approval, may employ or authorize the
> employment of a professional person under section 327 or 1103 of
> this title, as the case may be, on any reasonable terms and conditions
> of employment, including on a retainer, on an hourly basis, *on a
> fixed or percentage fee basis, or on a contingent fee basis*.

See 11 U.S.C. § 328(a) (emphasis added).  Section 328(a) of the Bankruptcy Code, as amended, now makes clear that a professional may be retained, subject to bankruptcy court approval, on a fixed fee and contingent fee basis such as the Fee Structure in the Engagement Letter.

33.      Given the numerous issues that Moelis may be required to address in the performance of its services for the Committee, Moelis' commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Moelis' services for engagements of this nature, the Committee believes that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

34.      The Committee believes that the Fee Structure appropriately reflects the nature and scope of services to be provided by Moelis, Moelis' substantial experience with respect to investment banking services and the fee structures typically utilized by Moelis and other leading

investment banks that do not bill their clients on an hourly basis. Indeed, monthly fee and transaction fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this District. <u>See, e.g.</u>, <u>In re General Maritime Corporation</u>, No. 11-15285 (MG) (Bankr. S.D.N.Y. Jan. 12, 2012); <u>In re Ion Media Networks, Inc.</u>, No. 09-13125 (Bankr. S.D.N.Y. Aug. 6, 2009); <u>In re Charter Commc'ns, Inc.</u>, No. 09- 11435 (Bankr. S.D.N.Y. July 22, 2009); <u>In re Motors Liquidation Co. (f/k/a Gen. Motors  Corp.)</u>, No. 09-50026 (REG) (Bankr. S.D.N.Y. Aug. 18, 2009); and <u>In re Bally Total Fitness of Greater New York, Inc.</u>, No. 08-14818 (BRL) (Bankr. S.D.N.Y. Feb. 10, 2009).

**B.      The Indemnification, Contribution, and Reimbursement Terms
of the Engagement Letter are Appropriate**

35.      The indemnification, contribution and reimbursement provisions in the Engagement Letter were fully negotiated between the Committee and Moelis. The Committee and Moelis believe that the indemnification provisions of the Engagement Letter—which specifically do not apply to losses that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct (including bad faith) of Moelis—are customary and reasonable for investment banking engagements both out of court and in chapter 11 cases. <u>See, e.g.</u>, <u>In re Sbarro, Inc.</u>, No. 11-11527 (SCC) (Bankr. S.D.N.Y. May 18, 2011) (order authorizing retention of Mesirow Financial Consulting, LLC); <u>In re Great Atlantic & Pacific Tea Co.</u>, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Mar. 10, 2011) (final order authorizing retention of FTI Consulting, Inc.); <u>In re Motors Liquidation Co. (f/k/a Gen. Motors Corp.)</u>, No. 09-50026 (REG) (Bankr. S.D.N.Y. Aug. 18, 2009) (same).  Accordingly, the Committee respectfully submits that the terms of the indemnification provisions are reasonable and customary and should be approved in these Chapter 11 Cases.

**C.     The Retention of Moelis is Critical to the Committee's Role**

36.     Denial of the relief requested herein would deprive the Committee of the assistance of well-qualified investment bankers. Moreover, as Moelis has provided over a month of services to the Committee, denial of Moelis' employment would result in an unjust disadvantage to the Committee and all parties in interest because of Moelis' current  understanding of the Debtors' operations.   Indeed, if the Committee were forced to engage a new investment banker, such change would mandate the commitment of significant and costly resources to educate a replacement.

37.     Based on the foregoing, the Committee respectfully submits that it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Committee to retain and employ Moelis in these Chapter 11 Cases on the terms described herein and in the Engagement Letter, *nunc pro tunc* to May 16, 2012.

## NOTICE

38.     In accordance with the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 141] (the "**Case Management Order**"), notice of this Application has been given to all parties listed on the Monthly Service List (as defined in the Case Management Order). Because of the nature of the relief requested, the Committee submits that such notice is sufficient and that no further notice of the relief requested in the Application need be provided.

## NO PRIOR REQUEST

39.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Committee respectfully requests that the Court enter the Order granting the relief requested therein and such other and further relief as the Court may deem proper.

Dated: New York, New York
June 27, 2012

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,**

By:  /s/ John S. Dubel
John S. Dubel, Chief Executive Officer
Financial Guaranty Insurance Company

Co-Chair, Official Committee of Unsecured Creditors of Residential Capital, LLC, <u>et al</u>.

## **<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re:                                    :        Chapter 11
                                          :
RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>.,    :        Case No. 12-12020 (MG)
                                          :
                    Debtors.              :        Jointly Administered
----------------------------------------------------------------x

### ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER TO THE COMMITTEE *NUNC PRO TUNC* TO MAY 16, 2012

Upon the application (the "**Application**")[1] of the Committee for entry of an order (the "**Order**") pursuant to sections 328(a) and 1103 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules and Rules 2014-1 and 2016-1 of the Local Rules, authorizing the Committee to retain and employ Moelis & Company LLC ("**Moelis**") as its investment banker in accordance with the terms and conditions set forth in the Engagement Letter, *nunc pro tunc* to May 16, 2012, as described in the Application and the Dermont Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application being adequate and appropriate under the particular circumstances having been given; and a hearing having been held to consider the relief requested by the Application (the "**Hearing**"); and upon consideration of the Application, the Dermont Declaration, the record of the Hearing and all proceedings had before the Court; and the Court having found and determined that the

---

[1] Capitalized Terms used and not otherwise defined herein shall have the meanings set forth for such terms in the Application.

relief sought in the Application is in the best interests of the Committee, the Debtors' estates,

their creditors and other parties in interest, and that the legal and factual bases set forth in the

Application and the Dermont Declaration establish just cause for the relief granted herein; and

any objections to the requested relief having been withdrawn or overruled on the merits; and the

Court being satisfied based on the representations made in the Application and the Dermont

Declaration, and the Court hereby finds, that (a) Moelis does not represent in connection with

these chapter 11 cases any other party having an adverse interest to the Committee or the Debtors

and (b) Moelis is eligible for retention by the Committee pursuant to sections 328(a) and 1103 of

the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1; and after due deliberation

and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.       The Application is granted as set forth herein, and the provisions set forth in the

Engagement Letter (and all attachments thereto) are hereby approved, except as otherwise

expressly provided herein to the contrary.

2.       In accordance with sections 328(a) and 1103 of the Bankruptcy Code, Bankruptcy

Rule 2014 and Local Rule 2014-1, the Committee is authorized to employ and retain Moelis in

accordance with the terms and conditions set forth in the Engagement Letter, *nunc pro tunc* to

May 16, 2012.

3.       All of Moelis' fees and reimbursement of expenses under the Engagement Letter

(including without limitation the reimbursement of the fees and expenses of Moelis' external

legal counsel, without the need for such legal counsel to be retained as a professional in these

chapter 11 cases and without regard to whether such legal counsel's services satisfy section

330(a)(3)(C) of the Bankruptcy Code), and the indemnification, contribution and reimbursement

provisions of the Engagement Letter, are all hereby approved pursuant to section 328(a) of the

Bankruptcy Code.    The Debtors are authorized and directed to perform their payment,

indemnification, contribution and reimbursement obligations and its non-monetary obligations

under the Engagement Letter, except as otherwise expressly provided herein.    Subject to

Paragraph 4 of this Order, all compensation, reimbursement of expenses, indemnification,

contribution and reimbursement to Moelis and any Indemnified Person (as defined in the

Engagement Letter) under the Engagement Letter shall be subject to review only pursuant to the

standards set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any

other standard of review including but not limited to that set forth in section 330 of the

Bankruptcy Code.

4.    This Order and the record relating to the Court's consideration of the Application

shall not prejudice or otherwise affect the rights of the U.S. Trustee only to challenge the

reasonableness of Moelis' compensation and expense reimbursements under sections 330 and

331 of the Bankruptcy Code.  Accordingly, nothing in this Order or the record shall constitute a

finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with

respect to the reasonableness of Moelis' compensation.

5.    Moelis will file applications for interim and final allowance of compensation and

reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the

Bankruptcy Code and such Bankruptcy Rules as may then be applicable, from time to time, and

such procedures as may be fixed by order of this Court; *provided, however*, that the requirements

of the Bankruptcy Code, the Bankruptcy Rules, the Trustee Guidelines and Local Rule 2016-1

and any other compensation procedures adopted by this Court are hereby modified such that

Moelis' restructuring professionals shall be required only to keep summary time records in one-

hour increments, Moelis' non-restructuring professionals and personnel in administrative

departments (including legal) shall not be required to keep any time records, Moelis'

restructuring professionals shall not be required to keep time records on a project category basis,

and Moelis shall not be required to provide or conform to any schedule of hourly rates.

6.      The indemnification, contribution and reimbursement provisions of <u>Annex A</u> to

the Engagement Letter are approved, subject to the following:

a.      Subject to the provisions of subparagraphs (b), (c) and (d) below, the Debtors are authorized to indemnify, and shall indemnify, the Indemnified Persons (as defined in the Engagement Letter) in accordance with the Engagement Letter and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Moelis' performance of the services described in the Engagement Letter;

b.      All requests by Indemnified Persons for the payment of indemnification as set forth in the Engagement Letter shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter; <u>provided</u>, <u>however</u>, that in no event shall any Indemnified Person be indemnified to the extent that a court determines by final order that such person acted in its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

c.      In no event shall any Indemnified Person be indemnified to the extent the Debtors or a representative of the estate asserts a claim for, and the Court determines by final order that such claim arose out of, such Indemnified Person's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and

d.      If Moelis or any Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Moelis' own applications, both interim and final, and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and

without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

7.    In the event of a conflict between the Engagement Letter, the Application, and the express terms of this Order, the express terms of this Order shall govern.

8.    The Committee and Moelis are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

9.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.    Notwithstanding any provision to the contrary in the Application or the Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order during the pendency of these cases.

Dated: New York, New York

_____, 2012


_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Engagement Letter**

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

M O E L I S  &  C O M P A N Y

May 30, 2012

PRIVILEGED AND CONFIDENTIAL

The Official Committee of Unsecured Creditors of Residential Capital, LLC, et al.
c/o Kramer, Levin, Naftalis, & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Ladies & Gentlemen:

We are pleased to confirm that since May 16, 2012 (the "Commencement Date"), the Official Committee of Unsecured Creditors (the "Committee" or "you") appointed in the chapter 11 cases (the "Bankruptcy Cases") of Residential Capital, LLC ("ResCap") and its affiliates and subsidiaries that are or later become debtors in the Bankruptcy Cases (collectively with all affiliates and all entities formed or invested in to consummate a Restructuring Transaction, and with any successor to or assignee of all or any portion of the assets and/or businesses pursuant to a Plan or otherwise, the "Company" or the "Debtors"), which Bankruptcy Cases are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), has engaged Moelis & Company LLC ("Moelis" , "we", "our" or "us") to act as its exclusive investment banker in connection with a potential Restructuring (as defined below).

"Restructuring" means any restructuring, reorganization, rescheduling, recapitalization or repayment of all or any material portion of the Company's liabilities however such result is achieved, including, without limitation, through a plan or plans of reorganization or liquidation (a "Plan") confirmed in connection with the Bankruptcy Cases, an exchange offer or consent solicitation, covenant relief, rescheduling of debt maturities, change in interest rates, settlement or forgiveness of debt, conversion of debt into equity, other amendments to the Company's debt instruments, repayment of the Company's debt instruments, issuance of new securities, raising of new debt or equity capital, or the sale or other transfer of equity, assets or other interests of the Company (for avoidance of doubt a sale or other transfer of all or substantially all of the Company or of all or substantially all of the Company's assets shall be a Restructuring).

1. As part of our engagement we will, if appropriate and requested:

(a)    assist the Committee in conducting a business and financial analysis of the Company;

(b)    assist the Committee in reviewing and analyzing proposals for any Restructuring, and, to the extent requested, assist the Committee in soliciting and developing alternative proposals for a Restructuring;

(c)    advise and assist the Committee and, if the Committee requests, participate in negotiations of any Restructuring;

(d)    assist the Committee in valuing the Company's business;

-1-

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

# MOELIS & COMPANY

(e)     be available to meet with the Committee, the Company's management, the Company's board of directors and other creditor groups, equity holders or other parties in interest (in each case who are institutional parties or represented by an advisor) to discuss any Restructuring;

(f)      participate in hearings before the Bankruptcy Court and provide testimony on matters mutually agreed upon in good faith; and

(g)     such other investment banking services in connection with a Restructuring as Moelis and the Committee may mutually agree upon.

Please note that Moelis does not provide, and will not be providing, legal, tax, accounting or actuarial advice to the Committee or any other party.

2. (a) As compensation for our services hereunder, the Company and its bankruptcy estates will pay us the fees set forth below. We acknowledge that neither the Committee, nor any of its individual members, nor any of the Committee's advisors or professionals (including, but not limited to, counsel to the Committee), shall have any obligation to pay our fees or expenses or any indemnity amounts. The payment of these fees shall be subject to the applicable procedures of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and applicable local rules, guidelines and Bankruptcy Court orders:

Monthly Fee

(i)      During the term of this agreement, a non-refundable cash fee of $225,000 per month (the "Monthly Fee"), payable in advance of each month. Whether or not a Restructuring has taken place or will take place, we shall earn and be paid the Monthly Fee beginning on the Commencement Date until the expiration or termination of this agreement. For the month of May 2012, Moelis' Monthly Fee shall be pro-rated to reflect that Moelis began providing services hereunder on the Commencement Date. The first payment for the pro-rated portion of May 2012 and for June 2012 shall be payable upon entry of the Bankruptcy Court order approving Moelis' engagement under this agreement and each subsequent payment shall be payable upon the first day of each subsequent month.

Restructuring Fee

(ii)     Upon the consummation of any Restructuring, a non-refundable cash fee (the "Restructuring Fee") of $7,750,000. The Restructuring Fee shall be offset by one-half (50%) of the aggregate Monthly Fees actually paid by the Company in cash, commencing with the tenth full Monthly Fee. For the avoidance of doubt, no portion of the first nine full Monthly Fees received by Moelis shall be applied to offset any portion of the Restructuring Fee.

If, at any time during the 12 months following the expiration or termination of this agreement (other than a termination for Cause (as defined below)), either (a) a Restructuring is consummated or (b) the Company or any entity formed or invested in to consummate a Restructuring enters into an agreement

-2-

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

MOELIS & COMPANY

for a Restructuring or a plan of reorganization is filed and a Restructuring is subsequently consummated at any time, then the Company and its bankruptcy estates shall pay us the Restructuring Fee in full and in cash immediately upon the consummation of the Restructuring (the "Tail Provision"). Termination for "Cause" means termination by the Committee prior to the Company entering into a definitive agreement or filing a Plan with respect to a Restructuring because of the gross negligence or willful misconduct by Moelis in performing this engagement which conduct is not substantially remedied by Moelis after 15 days written notice from the Committee stating that the Committee believes such conduct constitutes Cause.

The Committee agrees not to object to our request to the Bankruptcy Court and any appellate court for allowance and payment of Moelis' fees that are consistent with this agreement.

(b)     Whether or not the Company consummates a Restructuring, the Company and its bankruptcy estates will reimburse us for all of our reasonable out-of-pocket expenses, including the costs of our legal counsel (without the need for such legal counsel to be retained as a professional in the Bankruptcy Cases), as they are incurred in entering into this agreement, becoming retained in the Bankruptcy Cases and receiving payment of its fees and expenses, and in connection with the performance of services pursuant to this agreement. We agree to provide the Company with reasonable support for our expenses at the Company's request or at the Bankruptcy Court's direction.     The Committee agrees not to object to our request to the Bankruptcy Court and any appellate court for allowance and payment of Moelis' reasonable out-of-pocket expenses.

(c)     The obligation of the Company and its bankruptcy estates (subject to any necessary Bankruptcy Court approval) to pay any fee, expense or indemnity set forth herein is not subject to any reduction by way of setoff, recoupment or counterclaim.

(d)     Notwithstanding the obligations of the Company and its bankruptcy estates hereunder, including, but not limited to, their obligation to pay the fees and expenses of Moelis and to indemnify Moelis, it is understood and agreed that Moelis' sole and exclusive client is the Committee. Moelis will in no circumstance be deemed to be a financial advisor or investment banker to, or have any obligation whatsoever to, the Company or any other party, including individual members of the Committee.

(e)     Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for us. Moreover, the actual time and effort required for the engagement may vary substantially from time to time. In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that will be required in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Committee that Moelis will be available to advise and assist it throughout the Bankruptcy Cases.

3.     (a) In the Bankruptcy Cases, the Committee shall use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing the employment of Moelis as its investment banker pursuant to the terms of this agreement (including, without limitation, the fee, expense, and indemnification provisions hereof) pursuant to, and subject to the standards of review set forth in, Section

-3-

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

MOELIS & COMPANY

328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in Section 330 of the Bankruptcy Code), nunc pro tunc to the Commencement Date. The retention application and the proposed order(s) authorizing Moelis' retention must be acceptable to Moelis in its sole discretion. In agreeing to seek Moelis' retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges that it believes that Moelis' general restructuring experience and expertise, its knowledge of the capital markets and its restructuring capabilities will inure to the benefit of the Committee, that the value to the Committee of Moelis' services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees set forth in Section 2 hereof are reasonable, regardless of the number of hours expended by Moelis' professionals in the performance of the services provided hereunder.

(b)    Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under Section 328(a) of the Bankruptcy Code as soon as reasonably practicable after the execution of this agreement. If such order is not obtained in a commercially reasonable period of time, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to any requirements that the Bankruptcy Court might provide.

(c)    Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of *Annex A* shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. Following entry of an order authorizing our retention, the Committee will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Committee will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing relating to Moelis' fee applications.

(d)    The Committee shall use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed Plan in the Bankruptcy Cases contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, members, agents and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company, the Committee, any Plan or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.    The Company will furnish us with all information concerning the Company that we reasonably deem appropriate (collectively, the "Information") to perform this engagement and the Company will provide us with access to the officers, directors, employees, accountants, counsel and other representatives of the Company. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. In addition, the

-4-

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

# MOELIS & COMPANY

Company will promptly advise us of any material event or change in the business, affairs, condition (financial or otherwise) of the Company that occurs during the term of our engagement hereunder. The Committee understands and agrees that we, in performing our services hereunder, will be entitled to use and rely upon the Information as well as publicly available information without independent verification. We are not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities, of the Company. We will also be entitled to assume that financial forecasts and projections the Company makes available to us have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company as to the matters covered thereby.

We will use all nonpublic Information concerning the Company solely for the performance of our services hereunder and will treat it confidentially for as long as it remains nonpublic. Except as otherwise required by subpoena or court order and for private disclosure to our financial regulatory authorities, we will not disclose nonpublic Information to a third party without the Company's or the Committee's consent. Moelis shall use its commercially reasonable efforts to comply with any applicable confidentiality agreement between the Debtors and the Committee which is provided to Moelis containing customary terms (until one year following the earlier of (i) the effective date of a Plan, (ii) the dismissal of the chapter 11 cases, or (iii) the conversion of the chapter 11 cases to cases under chapter 7), provided, however, that Moelis may disclose confidential information as required by subpoena or court order and in private disclosure to Moelis' financial regulatory authorities and Moelis may retain documents as necessary to evidence compliance with applicable broker-dealer regulations.

5.    The Committee will not disclose, summarize or refer to any of our advice or opinion publicly or to any third party without our prior written consent. In the event disclosure is required by subpoena or court order, the Company will provide us reasonable advance notice and permit us to comment on the form and content of the disclosure. The Committee acknowledges that we may, at our option and expense after announcement of any Restructuring, place announcements and advertisements or otherwise publicize such transaction and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our website and in such financial and other newspapers and journals as we may choose, stating that we have acted as exclusive investment banker to the Committee in connection with any Restructuring.

6.    We are an independent contractor with the contractual obligations described herein owing solely to the Committee. We expressly disclaim any fiduciary duty to any party. We also expressly disclaim any obligations whatsoever to any party other than the Committee. The Company agrees to the indemnity and other provisions set forth in the attached *Annex A* and the Committee agrees to the limitation on Moelis' liability set forth in *Annex A*. The Company's obligations set forth in *Annex A* are in addition to any rights that any Indemnified Person may have at common law or otherwise. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement. Please also review our privacy and business continuity policies attached as *Annex B*.

7.    Our engagement hereunder shall extend until the earliest of (i) the final effective date of a Plan confirmed in the Bankruptcy Cases, (ii) the conversion of the Bankruptcy Cases to Chapter 7 of the Bankruptcy Code, (iii) dismissal of the Bankruptcy Cases and (iv) the dissolution of the Committee; provided, however, that our engagement may be (x) terminated earlier, with or without cause, either by us or by the Committee upon 30 days' prior written notice thereof to the other party, (y) terminated earlier as

-5-

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

# MOELIS & COMPANY

provided elsewhere herein or (z) extended, in writing, by the Committee and us. Notwithstanding the foregoing, in the event of any expiration or termination of our engagement hereunder, (i) we will continue to be entitled to payment by the Company and its bankruptcy estates of all fees payable prior to such expiration or termination pursuant to Section 2 of this agreement and all fees payable pursuant to the Tail Provision in Section 2(a), (ii) we will be entitled to payment by the Company and its bankruptcy estates of all unreimbursed expenses incurred by us in connection with the services rendered on or prior to the date of expiration or termination, and (iii) (A) the indemnification and other obligations set forth in *Annex A* hereto and (B) the provisions of Sections 4 through 9 hereof, all shall remain operative and in full force and effect regardless of any such termination or expiration.

8.      We are a securities firm engaged in a number of merchant banking, asset management and investment banking activities. We have no duty to disclose to the Committee or utilize for the Committee's benefit any nonpublic information acquired in the course of our providing services to any other person, engaging in any transaction (on our own account or otherwise) or carrying on our other businesses. Our affiliates, employees, officers and partners may at any time own the Company's securities or those of another entity involved in a transaction contemplated hereby. We recognize our obligations under applicable securities laws in connection with the purchase and sale of such securities.

9.      This agreement shall be governed by and construed in accordance with the internal laws of the State of New York, embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Committee and us (and if the obligations of the Company are adversely affected, the Company). If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. This agreement is the product of arm's length negotiations among sophisticated parties, and each of the parties hereto has consulted (or has had the opportunity to consult) with legal counsel of its own choosing. Therefore, the parties acknowledge and agree that any otherwise applicable rule of contract construction or interpretation that ambiguities shall be construed against the draftsman (and all similar rules of contract construction or interpretation) shall not apply to this agreement. This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. This agreement shall be binding upon the Committee, the Company and its bankruptcy estates, and us, as well as their and our respective successors and permitted assigns. All actions and proceedings arising out of or relating to this agreement shall be heard and determined by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in the city and county of New York, to whose jurisdiction we and the Committee hereby irrevocably submit. WE, THE COMMITTEE AND THE COMPANY(ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) HEREBY AGREE TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THE ENGAGEMENT OR OUR PERFORMANCE THEREOF.

*(Signature page follows)*

-6-

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

# MOELIS & COMPANY

We are delighted to accept this engagement and look forward to working with the Committee. Please sign and return the enclosed duplicate of this agreement. The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears directly above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____

Name:  Jared Dermont
Title:  Managing Director

Agreed to as of the date first written above:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF RESIDENTIAL CAPITAL, LLC, ET AL.

By: _____

Name:  John S. Dubel, Chief Executive Officer, FGIC
Title:  Co-Chair, Official Committee of Unsecured Creditors

MOELIS & COMPANY

## ANNEX A

In the event that Moelis & Company LLC or any of its current or former directors, officers, partners, managers, agents, representatives or employees or those of any of our affiliates, or any other person controlling us or any of our affiliates (collectively, "Indemnified Persons") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "Action") arising out of, related to or in connection with the engagement or any matter referred to in this agreement, ResCap and its affiliates and subsidiaries that are or later become debtors, their bankruptcy estates, reorganized ResCap and/or its reorganized affiliates and subsidiaries after the consummation of any Plan, and any entity or entities that may be formed or invested in to consummate a Restructuring (all such entities, the "Company") will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing our engagement letter (including, without limitation, Annex A), as they are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company and the Committee agree that no Indemnified Person shall have any liability to any party (including the Company or the Committee or their respective  affiliates or member or their respective owners, directors, officers, employees, security holders or creditors) for, any losses, claims, damages or liabilities (collectively, "Losses") (A) related to or arising out of oral or written statements or omissions made or information provided by the Committee, the Company or their respective agents or (B) otherwise arising out of, related to or in connection with the engagement, except that this clause (B) shall not apply to Losses that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct (including bad faith) of such Indemnified Person.

If such indemnification is for any reason other than by virtue of its express terms not available or insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company and the Committee, on the one hand, and by us, on the other hand, with respect to the engagement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company or the Committee on the one hand and of us on the other hand, and any other relevant equitable considerations; *provided, however,* that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be responsible for amounts that exceed the fees actually received by us from the Company and its bankruptcy estates in connection with the engagement. To the extent required by the Bankruptcy Court or any other court having jurisdiction, relative benefits to the Company, on the one hand, and us, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its debt and security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by the engagement bears to (ii) the fees actually received by us in connection with the engagement.

The Company and the Committee will not without our prior written consent (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action in respect of which indemnification is or may be sought hereunder unless such Settlement includes a release of each Indemnified Person from any Losses arising out of such Action. The Company and the Committee will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's or the Committee's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action.

MOELIS & COMPANY

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding debt or other securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company or the Committee will notify us in writing of the arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company, the Committee and us.

MOELIS & COMPANY

## ANNEX B

### PRIVACY STATEMENT

One of the most important components of our relationship with you is the trust that you have placed in us to keep your nonpublic information private.

Moelis uses the information you provide it for purposes of advising and guiding you regarding certain transactions. Employees of Moelis do not discuss client information with anyone outside Moelis (other than our attorneys and accountants) unless you specifically authorize them to do so. We keep information we collect and record about you confidential. We maintain security procedures and standards designed to protect your nonpublic information at all times.

Except where we are required by law to disclose it, we do not share such information with any unaffiliated entity. In the event that we change this policy and determine that it is beneficial to share your information with an unaffiliated third party, we will notify you beforehand and give you the opportunity to opt-out of such information sharing.

If you and we have a confidentiality undertaking or agreement, it will control the non-disclosure of information protected thereby.

### BUSINESS CONTINUITY DISCLOSURE

Moelis maintains a business continuity plan that addresses interruptions to our normal course of business. This plan is reviewed annually and updated as necessary. Our disclosure statement is available on our website at www.moelis.com and is available in written form upon request.

The plan outlines the actions Moelis will take in the event of a single-building, citywide or regional business interruption, including the use of an office location not affected by the interruption, retrieval of off-site back up data, use of primary and alternate vendors for continued communication, notification to active clients to provide interim information and relocation of personnel to an unaffected site.

### USA PATRIOT ACT

In order to comply with the USA Patriot Act, Moelis must obtain, verify and record information that identifies each entity (or individual) that enters into a business relationship with us. In addition to obtaining our client/customer's corporate name and address, Moelis may seek to obtain your tax identification number and certain other information. Moelis may also request relevant entity formation and other identifying documents.

## EXHIBIT C

**Dermont Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re:                                         :        Chapter 11
                                               :
RESIDENTIAL CAPITAL, LLC, et al.,              :        Case No. 12-12020 (MG)
                                               :
                        Debtors.               :        Jointly Administered
-------------------------------------------------------------------x
```

**DECLARATION OF JARED J. DERMONT IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS ITS INVESTMENT BANKER *NUNC PRO TUNC* TO MAY 16, 2012**

Pursuant to 28 U.S.C. § 1746, I, Jared J. Dermont, hereby declare as follows under penalty of perjury:

1.      I am a Managing Director in the Recapitalization and Restructuring Group of Moelis & Company LLC ("**Moelis**"), resident in Moelis' New York office, located at 399 Park Avenue, 5th Floor, New York, New York 10022.

2.      I am authorized to submit this declaration (the "**Declaration**") in support of the application (the "**Application**") of the Official Committee of Unsecured Creditors (the "**Committee**") of Residential Capital, LLC ("**ResCap**") and its affiliates that are chapter 11 debtors and debtors-in-possession (each a "**Debtor**" and collectively the "**Debtors**," and together with their non-Debtor affiliates, the "**Company**") in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**") for (a) the entry of an order, authorizing the Committee to retain and employ Moelis as investment banker to the Committee *nunc pro tunc* to May 16, 2012, pursuant to sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), (b) approving the provisions of the Engagement Letter, including the compensation and expense reimbursement arrangements and indemnification, contribution and reimbursement provisions set forth therein, (c) modifying the time-keeping requirements of

Bankruptcy Rule 2016, Local Rule 2016-1, the guidelines (the "**Trustee Guidelines**") of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), and this Court's General Order M-389 in connection with Moelis' engagement.

3.      The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, or upon client matter records kept in the ordinary course of business that were reviewed either by me or other employees of Moelis under my general supervision and direction.  If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

## Moelis' Qualifications

4.      Moelis is an investment banking firm with an office located at 399 Park Avenue, 5th Floor, New York, NY 10022. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Holdings LLC.  Moelis & Company Holdings LLC, together with its subsidiaries, has approximately 600 employees located in offices in New York, Los Angeles, Boston, Chicago, Houston, Palo Alto, London, Frankfurt, Sydney, Hong Kong, Beijing, and Dubai.

5.      Moelis provides a broad range of advice to its clients, including, with respect to, among other things: (a) general corporate finance; (b) mergers, acquisitions and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings. Moelis' business reorganization professionals have served as financial advisors or investment bankers in

numerous recent chapter 11 cases, including: <u>In re AMR Corp.</u>, No. 11-15463 (Bankr. S.D.N.Y. Nov. 29, 2011); <u>In re General Maritime Corp.</u>, No. 11-15285 (Bankr. S.D.N.Y. Nov. 17, 2011); <u>In re NewPage Corporation</u>, No. 11-12804 (Bankr. D. Del. Sept. 7, 2011); <u>In re Jackson Hewitt Tax Service, Inc.</u>, No. 11-11587 (Bankr. D. Del. June 30, 2011); <u>In re Appleseeds Intermediate Holdings, LLC</u>, No. 11-10160 (Bankr. D. Del. Feb. 23, 2011); <u>In re Innkeepers USA Trust</u>, No. 10-13800 (S.D.N.Y. July 19, 2010); <u>In re Neenah Enters., Inc</u>., No. 10-10360 (Bankr. D. Del. Feb. 3, 2010); <u>In re Almatis B.V.</u>, No. 10- 12308 (Bankr. S.D.N.Y. Apr. 30, 2010); <u>In re Int'l. Aluminum Corp.</u>, No. 10-10003 (Bankr. D. Del. Jan. 27, 2010); <u>In re Atrium Corp.</u>, No. 10-10150 (Bankr. D. Del. Jan. 20, 2010); <u>In re  Simmons Bedding Co.</u>, No. 09-14037 (Bankr. D. Del, Nov. 16, 2009); <u>In re Reader's Digest Ass'n Inc</u>., No. 09-23529 (Bankr. S.D.N.Y. Aug. 24, 2009); <u>In re NV Broadcasting LLC</u>, No. 09-12473 (Bankr. D. Del. July 13, 2009); <u>In re ION Media Networks Inc</u>., No. 09-13125 (Bankr. S.D.N.Y. May 19, 2009); <u>In re JG. Wentworth LLC</u>, No. 09-11731 (Bankr. D. Del. May 19, 2009); <u>In re Source Interlink Cos</u>., No. 09-11424 (Bankr. D. Del. Apr. 27, 2009); <u>In re Dayton Superior Corp</u>., No. 09-11351 (Bankr. D. Del. Apr. 19, 2009); <u>In re Idearc Inc</u>., No. 09-31828 (Bankr. N.D. Tex. Mar. 31, 2009); <u>In re Chemtura Corp</u>., No. 09-11233 (Bankr. S.D.N.Y. Mar. 18, 2009); <u>In re Aleris Int'l. Inc</u>., No. 09-10478 (Bankr. D. Del. Feb. 12, 2009); and <u>In re Lyondell Chemical Co</u>., No. 09-10023 (Bankr. S.D.N.Y. Jan. 6, 2009).

6.     Moelis has been advising the Committee on the Debtors' current status and on strategic and restructuring initiatives for over a month pursuant to the conditions set forth in the engagement letter between the Debtors and Moelis, dated as of May 30, 2012, a copy of which is annexed as Exhibit B of the Application (the "**<u>Engagement Letter</u>**").

7.      As a result of its work, Moelis has developed valuable institutional knowledge about the Debtors' businesses, operations, capital structure and other material information, and has become acquainted with the Debtors' business operations and capital structure. In addition, Moelis has developed a working relationship with the Debtors' professionals and certain of the Committee's constituents.  Accordingly, I believe Moelis is well qualified and able to represent the Committee in a cost-effective, efficient and timely manner, and that the employment and retention of Moelis is in the best interests of the Committee, the Debtors' estates and all parties in interest.

### Services to Be Provided

8.      Pursuant to the terms of the Engagement Letter, Moelis' anticipated services include:[1]

(a)     assist the Committee in conducting a business and financial analysis of the Debtors;

(b)     assist the Committee in reviewing and analyzing proposals for any Restructuring,[2] and, to the extent requested, assist the Committee in soliciting and developing alternative proposals for a Restructuring;

(c)     advise and assist the Committee and, if the Committee requests, participate in negotiations of any Restructuring;

---

[1] The summaries of Engagement Letter (including all Annexes thereto) terms throughout the Application and this Declaration, including without limitation with respect to services to be rendered, the fee structure, and indemnification, are qualified in their entirety by reference to the provisions of the Engagement Letter (including all Annexes thereto). To the extent there is any discrepancy between the summaries contained in the Application or this Declaration and the terms set forth in the Engagement Letter (including all Annexes thereto), the terms of the Engagement Letter shall control.

[2]     The Engagement Letter defines a "Restructuring" as "any restructuring, reorganization, rescheduling, recapitalization or repayment of all or any material portion of the Company's liabilities however such result is achieved, including, without limitation, through a plan or plans of reorganization or liquidation (a "Plan") confirmed in connection with Bankruptcy Cases, an exchange offer or consent solicitation, covenant relief, rescheduling of debt maturities, change in interest rates, settlement or forgiveness of debt, conversion of debt into equity, other amendments to the Company's debt instruments, repayment of the Company's debt instruments, issuance of new securities, raising of new debt or equity capital, or the sale or other transfer of equity, assets or other interests of the Company (for avoidance of doubt a sale or other transfer of all or a material portion of the Company or of all or a material portion of the Company's assets shall be a Restructuring)."

(d)     assist the Committee in valuing the Company's business;

(e)     be available to meet with the Committee, the Debtors' management, the Debtors' board of directors and other creditor groups, equity holders or other parties in interest (in each case who are institutional parties or represented by an advisor) to discuss any Restructuring;

(f)     participate in hearings before the Bankruptcy Court and provide testimony on matters mutually agreed upon in good faith; and

(g)     such other investment banking services in connection with a Restructuring as Moelis and the Committee may mutually agree upon.

### **Professional Compensation**

9.     The Engagement Letter provides for the following compensation structure (the "**Fee Structure**"):[3]

     a.     <u>Monthly Fee</u>. During the term of the agreement set forth in the Engagement Letter, a non-refundable cash fee of $225,000 per month (the "**Monthly Fee**"), payable in advance of each month. Whether or not a Restructuring has taken place or will take place, Moelis shall earn and be paid the Monthly Fee beginning on May 16, 2012 until the expiration or termination of the Engagement Letter.  For the month of May 2012, Moelis' Monthly Fee would be pro-rated to reflect that Moelis began providing services on May 16, 2012.  The first payment for the pro-rated portion of May 2012 and for June 2012 would be payable upon entry of this Court's order approving Moelis' engagement, and each subsequent payment shall be payable upon the first day of each subsequent month.

     b.     <u>Restructuring Fee.</u> Upon the consummation of any Restructuring, a non-refundable cash fee (the "**Restructuring Fee**") of $7,750,000. The Restructuring Fee would be offset by one-half (50%) of the aggregate Monthly Fees actually paid by the Company in cash, commencing with the tenth full Monthly Fee. For the avoidance of doubt, no portion of the first nine full Monthly Fees received by Moelis would be applied to offset or reduce any portion of the Restructuring Fee.

---

[3]   Capitalized Terms used and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

10.    The Engagement Letter also provides that if at any time during the 12 months following the expiration or termination of the Engagement Letter (other than a termination for Cause)[4], either (a) a Restructuring is consummated or (b) the Company or any entity formed or invested in to consummate a Restructuring enters into an agreement for a Restructuring or a plan of reorganization is filed and a Restructuring is subsequently consummated at any time, then the Company and its bankruptcy estates shall pay to Moelis the Restructuring Fee in full and in cash immediately upon the consummation of the Restructuring.

11.    In addition to any fees payable to Moelis, Moelis will charge the Debtors for all reasonable out-of-pocket expenses incurred in connection with the engagement and its retention in the Chapter 11 Cases. Such expenses include without limitation document production costs, travel costs, meals, and the fees, disbursements, and other charges of Moelis' external legal counsel (without the need for such legal counsel to be retained as a professional in the Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

12.    As customary in this District, the Committee and Moelis request that, except with respect to the U.S. Trustee, Moelis' compensation, expense reimbursement, indemnification, contribution and reimbursement provisions not be subject to any standard of review other than section 328(a) of the Bankruptcy Code.

13.    Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases in accordance

---

[4] Termination for "Cause" is defined in the Engagement Letter as termination by the Committee prior to the Company entering into a definitive agreement or filing a Plan with respect to a Restructuring because of the gross negligence or willful misconduct by Moelis in performing this engagement which conduct is not substantially remedied by Moelis after 15 days written notice from the Committee stating that the Committee believes such conduct constitutes Cause.

with the applicable procedures of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, General Order M-389, and any other compensation procedures adopted by this Court (to the extent compliance is not waived therein or in the order approving Moelis' retention).   Moelis also will maintain records in support of any actual, necessary costs and expenses incurred in connection with its rendering of services in the Chapter 11 Cases.

14.    However, because (a) it is not the general practice of investment banking firms like Moelis to keep detailed time records similar to those customarily kept by attorneys; (b) Moelis does not ordinarily keep time records on a "project category" basis; and (c) Moelis' compensation is based on a flat Monthly Fee and a flat Restructuring Fee, Moelis respectfully requests that only its restructuring professionals be required to maintain records (in summary format) of the services rendered for the Committee, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments) and the identity of the restructuring professionals who provided those services.   Moelis will present such records to the Court in its fee applications.   Moreover, Moelis respectfully requests that its restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates.   To the extent that Moelis would otherwise be required to submit more detailed time records by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, General Order M-389 or other applicable procedures and orders of the Court, Moelis respectfully requests that this Court waive such requirements.

15.    The Committee and Moelis have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its

7

professionals in connection with these Chapter 11 Cases and in light of the facts that (a) such commitment may foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

16.    I believe that the Fee Structure is consistent with, and typical of, compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances. In determining the Fee Structure to be paid to Moelis and the reasonableness of such compensation, Moelis considered the rate structures that it has used in other investment banking matters, as well as similar comparable precedent. Moelis also discussed the terms of its retention in arm's-length negotiations with the Committee.  After such comparison and arm's-length negotiations, I believe the Fee Structure is reasonable, market-based and designed to compensate Moelis fairly for its work.

17.    Moelis' decision to advise and assist the Committee in connection with the Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code (except that, as customary in this District, only the U.S. Trustee may challenge the reasonableness of Moelis' compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code).

18.    Moelis is not a pre-petition creditor of the Debtors.  According to Moelis' books and records, during the 90-day period immediately before the commencement of the Chapter 11 Cases, Moelis received no payments from the Debtors.

**Indemnification, Contribution and Reimbursement
of Moelis and Other Indemnified Persons**

19.     Annex A of the Engagement Letter provides that the Debtors and certain related

parties would indemnify, and pay certain contribution and reimbursement to, Moelis and other

Indemnified Persons (as defined in Annex A of the Engagement Letter) in accordance with the

terms and conditions set forth in the Engagement Letter, including the annexes thereto

(collectively, such provisions, the "**Indemnification Provisions**"). I believe that the

Indemnification Provisions are customary and reasonable terms of consideration for Moelis in

connection with in-court and out-of-court restructuring activities. Moelis negotiated the

Engagement Letter, including the Indemnification Provisions, with the Committee in good faith

and at arm's length.

**Efforts to Avoid Duplication of Services**

20.     Moelis' services are intended to complement, and not duplicate, the services to be

rendered by any other professional retained by the Committee in the Chapter 11 Cases.  Moelis

understands that the Committee seeks to retain and may retain additional professionals during the

term of Moelis' engagement, including AlixPartners LLP as financial advisor.   To avoid

unnecessary duplication of services during the pendency of the Chapter 11 Cases to the extent

practicable, Moelis will use its reasonable efforts to work cooperatively with the Committee's

other professionals to integrate any respective work performed by those professionals on behalf

of the Committee.

**Moelis' Eligibility for Employment in These Chapter 11 Cases**

21.     Moelis has undertaken to determine whether it has any conflicts or other

relationships that might cause it not to be eligible for employment by the Committee in the

Chapter 11 Cases.  Specifically, Moelis obtained from the Debtors the names of individuals and

entities that may be parties in interest in the Chapter 11 Cases.  Moelis then (a) researched its internal records to determine whether Moelis has any connections with the Debtors and the parties listed on <u>Schedule 1</u> attached hereto (the "**Potential Parties in Interest**")[5] and (b) issued a general inquiry to certain of its officers with respect to the Debtors and certain Potential Parties in Interest.

22.     Based on the foregoing inquiry it is my understanding that, other than in connection with this engagement or as otherwise disclosed herein, Moelis does not represent in connection with these Chapter 11 Cases any other entity having an adverse interest to the Committee or the Debtors.  Accordingly, I believe that Moelis does not represent any other entity having an adverse interest in connection with these Chapter 11 Cases.

23.     Neither I nor any of the Moelis professionals who will provide services for the Committee is related to the Judge presiding over the Chapter 11 Cases, the U.S. Trustee or Assistant U.S. Trustee for this District, or the U.S. Trustee trial attorney assigned to the Chapter 11 Cases.

24.     To the extent that I have been able to ascertain to date that Moelis has been engaged within the last two years or is currently engaged by any of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are disclosed on <u>Schedule 2</u> attached hereto.  <u>Schedule 2</u> also sets forth certain other relationships Moelis has with certain Potential Parties in Interest. In addition to the facts disclosed on <u>Schedule 2</u>, Moelis may in the future be engaged by parties that that are or may become parties

---

[5] The list of potential parties in interest attached hereto as Schedule 1 includes those potential parties in interest provided to the Committee by Debtors' counsel on May 17, 2012.  On June 26, 2012 the Debtors filed retention applications for certain of the Debtors' professionals and included an updated list of potential parties in interest with those retention applications. We are reviewing the updated retention checklist, will follow the procedures set forth herein with respect to additional parties not previously provided, and will file a supplemental declaration with additional disclosures if necessary.

in interest in the Chapter 11 Cases.  As these cases progress, new parties may become parties in interest in the Chapter 11 Cases and similarly, Moelis may have been engaged, may be currently engaged and may in the future be engaged by such new parties in interest in matters unrelated to the Chapter 11 Cases.  Also, Moelis may have engaged or had mutual clients with, may have a current engagement or have mutual clients with and may in the future engage or have mutual clients with certain law firms, financial advisors, accounting firms and other professionals that are Potential Parties in Interest or may become parties in interest, all in matters unrelated to the Chapter 11 Cases. In addition, Moelis may have also been engaged by, be currently engaged by or in the future be engaged by persons who are creditors or shareholders of, otherwise have a business relationship with the Debtors, or who are competitors of or customers of the Debtors. Potential Parties in Interest, persons that may become parties in interest in the Chapter 11 Cases, and persons that have business relationships with the Debtors, are competitors of the Debtors or that are customers of the Debtors, may be: (a) parties in interest in other bankruptcy cases where Moelis is acting as financial advisor or investment banker to the debtors or to other parties in interest or (b) may be affiliates of or creditors of persons who Moelis may have been engaged, is currently engaged, or may in the future be engaged.  In the ordinary course of its business, Moelis may also purchase services or products from Potential Parties in Interest and other persons that are or may become parties in interest in these cases.

25.    Given the large number of parties in interest in the Chapter 11 Cases, despite the efforts described above to identify and disclose Moelis' relationships with parties in interest in the Chapter 11 Cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed. In particular, among other things, Moelis may have relationships with persons who are beneficial owners of parties in interest and persons whose

11

beneficial owners include parties in interest or persons who otherwise have relationships with parties in interest. Moreover, Moelis employees may have relationships with Potential Parties in Interest, persons that may become parties in interest in these cases, and/or persons that have business relationships with the Debtors, are competitors of the Debtors or that are customers of the Debtors. Continued inquiry will be made following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

26.     Before the Committee was formed in the Chapter 11 Cases, Moelis was retained by Financial Guaranty Insurance Company ("**FGIC**") (which is now a Committee member) to provide financial advisory services with respect to an understanding of ResCap's capital structure, financial condition, certain pre-petition transactions involving ResCap, as well as a general financial analysis of a potential ResCap bankruptcy filing. With FGIC's consent, Moelis' engagement by FGIC in respect of the Debtors terminated prior to the Committee deciding to engage Moelis to be its investment banker, and Moelis no longer provides services to FGIC with respect to that engagement. Moelis has been paid approximately $700,000 in connection with that engagement. It is my understanding that there is no outstanding balance due to Moelis by FGIC as a result of this engagement. I believe that Moelis' prior engagement by FGIC will not affect Moelis' engagement by the Committee and does not constitute a conflict of interest that would disqualify Moelis from providing the services described in the Engagement Letter.

27.     Moelis' parent company, Moelis & Company Holdings LLC ("**Moelis Holdings**"), has a separate private equity business ("**Moelis Capital Partners**"), which holds investment positions in various entities, some of which may be parties in interest in these Chapter 11 Cases. To the best of my knowledge, Moelis Capital Partners does not hold any

investment positions that constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter. The Moelis professionals providing services to the Committee will not share confidential or otherwise non-public information they receive in the course of this engagement with Moelis Capital Partners. Accordingly, I believe that Moelis Capital Partners' investment activities do not constitute a conflict of interest that would disqualify Moelis from providing the services described in the Engagement Letter.

28.     Moelis Holdings has acquired a separate investment management business, Gracie Credit. Gracie Credit will continue to be operated as a separate business from Moelis, and Gracie Credit will continue to be operated in separate legal and operating entities from Moelis. Gracie Credit employees will not be working on the Chapter 11 Cases and Moelis employees working on the Chapter 11 Cases will not have any involvement in Gracie Credit's investment decisions. Moelis and Gracie Credit will maintain strict compliance information barriers between Moelis on the one hand and Gracie Credit on the other hand to ensure that: (a) no Moelis employee will disclose any non-public information concerning the Debtors or these cases to any Gracie Credit employee and (b) no Gracie Credit employee will disclose any non-public information concerning a Gracie Credit position or Gracie Credit's intentions with respect to any consent, waiver, tender or vote decision to any Moelis employee.  Moelis and Gracie Credit currently have separate offices in separate buildings and use the separate Internet email addresses (@moelis.com and @graciecap.com, respectively).  In the future if Moelis and Gracie Credit move to the same location, they intend to maintain physically separate offices with access to the other's offices physically restricted.  Gracie Credit may in the ordinary course from time to time hold investment positions in the Debtors and parties in interest in these cases. Based on the business separation and compliance information barriers referred to above, Gracie

Credit's investment activities do not constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.

29.     Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than other principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.[6]

---

[6] In the ordinary course of its business, Moelis regularly retains the services of senior advisors with specific industry or other expertise to supplement the financial advisory services offered by Moelis' regular employees to Moelis' clients. Upon Moelis' engagement on a particular assignment, one or more such senior advisors may be assigned to assist the other Moelis professionals for such engagement. Such advisors act under the management of the Moelis Managing Director who retains the lead role and primary responsibility for such assignment. The fees and expenses of such senior advisors are paid solely by Moelis. The Committee submits that such senior advisors are regular associates of Moelis within the meaning of section 504 of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my information, knowledge and belief.

Executed on: June 27, 2012

MOELIS & COMPANY LLC

By:    /s/ Jared J. Dermont
   Jared J. Dermont
   Managing Director

## SCHEDULE 1

## Residential Capital, LLC

### *Conflict Checklist*

**Debtors and Subsidiaries**
ditech, LLC
DOA Holding Properties, LLC
DOA Properties IX (Lots-Other), LLC
EPRE LLC
Equity Investment I, LLC
ETS of Virginia, Inc.
ETS of Washington, Inc.
Executive Trustee Services LLC
GMAC – RFC Holding Company, LLC
GMAC Model Home Finance I, LLC
GMAC Mortgage USA Corporation
GMAC Mortgage, LLC
GMAC Residential Holding Company, LLC
GMAC RH Settlement Service, LLC
GMACM Borrower LLC
GMACM REO LLC
GMACR Mortgage Products, LLC
HFN REO SUB II, LLC
Home Connects Lending Services, LLC
Homecomings Financial Real Estate Holdings, LLC
Homecomings Financial, LLC
Ladue Associates, Inc.
Passive Asset Transactions, LLC
PATI A, LLC
PATI B, LLC
PATI Real Estate Holdings, LLC
RAHI A, LLC
RAHI B, LLC
RAHI Real Estate Holdings, LLC
RCSFJV2004, LLC
Residential Accredit Loans, Inc.
Residential Asset Mortgage Products, Inc.
Residential Asset Securities Corporation
Residential Capital, LLC
Residential Consumer Services of Alabama, LLC
Residential Consumer Services of Ohio, LLC
Residential Consumer Services of Texas, LLC
Residential Consumer Services, LLC
Residential Funding Company, LLC
Residential Funding Mortgage Exchange, LLC
Residential Funding Mortgage Securities I, Inc.
Residential Funding Mortgage Securities II, Inc.
Residential Funding Real Estate Holdings, LLC
Residential Mortgage Real Estate Holdings, LLC
RFC – GSAP Servicer Advance, LLC
RFC Asset Holdings II, LLC
RFC Asset Management, LLC

RFC Borrower LLC
RFC Construction Funding, LLC
RFC REO LLC
RFC SFJV-2002, LLC

**Foreign Subsidiaries**
Canada Mortgage Acceptance Corporation
Foreign Obligation Exchange, Inc. 2003-H12
Foreign Obligation Exchange, Inc. 2003-H14
Foreign Obligation Exchange, Inc. 2004-H11
Foreign Obligation Export, Inc.
GMAC Financiera S.A. de C.V. Sociedad Financiera de Objecto Multiple
GMAC Residential Funding of Canada Limited
GMAC-RFC (No. 2) Limited
GMAC-RFC Auritec, S.A.
GMAC-RFC Direct Limited
GMAC-RFC Espana Hipotecas SL
GMAC-RFC Europe Limited
GMAC-RFC Holdings Limited
GMAC-RFC Property Finance Limited
High Street Home Loans Limited
MCA Finance Limited
National Guarantee plc
Private Label Group Limited
Private Label Mortgage Services Limited

**Officers and Directors**
Abreu, Steven M.
Aretakis, James
Dondzila, Catherine M.
Fleming, Patrick
Hamzehpour, Tammy
Harney, Anthony J.
Hills, Garry
Horner, Jill M.
III, Edward F. Smith,
Ilany, Jonathan
Mack, John E.
Marano, Thomas
Meyer, Darsi
Nees, Louis A.
Pensabene, Joseph A.
Riddle, Mindy
Strauss, Thomas M.
Tyson, William N.
West, Pamela E.
Whitlinger, James
Wilkinson, Winston Carlos

**Parties to Funding Agreements**
Ally Financial Inc (f/k/a GMAC Inc.)
Barclays Bank PLC
Citibank, N.A.
Wells Fargo Bank, N.A.
BMMZ Holdings LLC
US Bank National Association

Deutsche Bank Trust Company Americas

**<u>Bondholders</u>**
AllianceBernstein Advisors
American Enterprise Investment Services Inc.
Appaloosa Management L.P.
Bank of New York Mellon, (The)/Barclays Capital - London
Bank of Nova Scotia/CDS
BARC/FIXED
Barclays Capital Inc. /LE
Berkshire Hathaway Inc.
BlackRock Global Investors
Charles Schwab & Co., Inc.
CITIBK/GRP
Citigroup Global Markets Inc.
Citigroup Global Markets Inc. /Salomon Brothers
Credit Suisse Securities (USA) LLC
David Lerner Associates, Inc.
Deutsche Bank Securities, Inc.
E*Trade Clearing LLC
Edward D. Jones & Co.
First Clearing, LLC
First Southwest Company
Goldman Sachs International
Goldman, Sachs & Co.
Interactive Brokers Retail Equity Clearing
J.P. Morgan Clearing Corp.
J.P. Morgan Securities LLC
Janney Montgomery Scott Inc.
Loomis Sayles & Company
LPL Financial Corporation
Merrill Lynch Safekeeping
Morgan Stanley & Co. LLC
Morgan Stanley Smith Barney LLC
National Financial Services LLC
Oppenheimer & Co. Inc.
OptionXpress, Inc
P. Schoenfeld Asset Management
Paulson & Co. Inc.
Penson Financial Services, Inc./Ridge.
Pershing LLC
Pentwater Capital Management
Putnam Investment Management
Raymond, James & Associates, Inc.
RBC Capital Markets, LLC
Scottrade, Inc.
Security Investors LLC
Silver Point Capital, L.P.
Stifel, Nicolaus & Company Incorporated
Taconic Capital Advisors, L.P.
TD Ameritrade Clearing, Inc.
Timber Hill LLC
UBS Financial Services LLC
UBS Securities LLC
Vanguard Marketing Corporation
Western Asset Management Company

**Landlords and Tenants**
2155 Northpark Lane LLC
2255 Partners, L.P. c/o M. David Paul Development LLC
Avenel Realty Company d / b / a Avenel at Montgomery Square
Brandywine Cityplace LP
BREOF Convergence LP c/o Brookfield Real Estate Opportunity Fund
Business Suites (Texas) LTD
Center Township of Marion County
Del Amo Financial Center, LP
DRA CLP Esplanade LP c/o Colonial Properties Services Ltd Partnership
Euclid Plaza Associates, LLC
GBM Properties, LLC
Homeowners Alliance
Liberty Property Limited Partnership
National Default Servicing, LLC
New Towne Center Inc.
PBC San Jose, LLC
PBC Walnut Creek, LLC
Realty World - Graham/Grubbs and Associates
Regus Management Group LLC
Teachers Insurance and Annuity Association of America c/o Northmarq RES
The Irvine Company LLC
The Office Annex, Inc.
Veridian Credit Union f/k/a John Deere Community Credit Union
W.E.G., Jr., Inc. d / b / a Highland-March Beverly Suites

**Parties to Litigation**
Acacia Life Insurance Company
Allstate Bank (f/k/a Allstate Federal Savings Bank)
Allstate Insurance Company
Allstate Life Insurance Company
Allstate Life Insurance Company of New York, Allstate Retirement Plan
Allstate New Jersey Insurance Company
American Heritage Life Insurance Company
Ameritas Life Insurance Corp.
Boilermaker Blacksmith National Pension Trust
Brown County, Ohio
Cambridge Place Investment Management Inc.
Church-Dellinger, Victoria Jean
Columbus Life Insurance Company
Deutsche Zentral-genossenschaftsbank, New York Branch, d/b/a DZ Bank AG, New York Branch
DG Holding Trust
Federal Home Loan Bank of Boston
Federal Home Loan Bank of Chicago
Federal Home Loan Bank of Indianapolis
Federal Home Loan Mortgage Corporation
Federal Housing Finance Agency
Financial Guaranty Insurance Company
First Colonial Insurance Company
Fort Washington Active Fixed Income LLC
Fort Washington Investment Advisors, Inc.
HSH Nordbank AG
HSH Nordbank AG, Luxembourg Branch
HSH Nordbank AG, New York Branch
HSH Nordbank Securities S.A.

Huntington Bancshares Inc.
IKB Deutche Industriebank AG
IKB International S.A. (in Liquidation)
Integrity Life Insurance Company
Kennett Capital, Inc.
Kral, Kenneth L.
Laster, Marteal
Massachusetts Mutual Life Insurance Company
MBIA Insurance Corporation
Mitchell, Ruth
Mitchell, Steven
National Credit Union Administration Board
National Integrity Life Insurance Company
New Jersey Carpenters Health Fund
New Jersey Carpenters Vacation Fund
Rio Debt Holdings (Ireland) Limited
Sall, Mohammed A.
Sealink Funding Ltd.
State of Ohio
Stichting Pensioenfonds ABP
The Charles Schwab Corporation
The Union Central Life Insurance Company
The Western and Southern Life Insurance Company
Thrivent Balanced Fund
Thrivent Balanced Portfolio
Thrivent Bond Index Portfolio
Thrivent Core Bond Fund
Thrivent Financial Defined Benefits Plan Trust
Thrivent Financial for Lutherans
Thrivent Income Fund
Thrivent Limited Maturity Bond Fund
Thrivent Limited Maturity Bond Portfolio
U.S. Central Federal Credit Union
West Virginia Investment Management Board
Western Corporate Federal Credit Union
Western-Southern Life Assurance Company

**U.S. Trustee's Office (Region 2 Trial Attorneys)**
Davis, Tracy Hope
Driscoll, Michael
Gasparini, Elisabetta
Golden, Susan
Khodorovsky, Nazar
Masumoto, Brian S.
Morrissey, Richard C.
Nakano, Serene
Riffkin, Linda A.
Schwartz, Andrea B.
Schwartzberg, Paul K.
Velez-Rivera, Andy
Zipes, Greg M.

**Bankruptcy Judges (New York)**
Bernstein, Stuart M.
Chapman, Shelley C.
Drain, Robert

Gerber, Robert E.
Glenn, Martin
Gonzalez, Arthur J.
Gropper, Allan L.
Lane, Sean H.
Lifland, Burton R.
Morris, Cecelia G.
Peck, James M.

**District Court Judges (New York)**
Baer, Harold
Batts, Deborah A.
Berman, Richard M.
Briccetti, Vincent L.
Buchwald, Naomi Reice
Carter, Andrew L.
Castel, P. Kevin
Cedarbaum, Miriam Goldman
Cote, Denise L.
Crotty, Paul A.
Daniels, George B.
Duffy, Kevin T.
Engelmayer, Paul A.
Forrest, Katherine B.
Gardephe, Paul G.
Griesa, Thomas P.
Haight, Charles S.
Hellerstein, Alvin K.
Jones, Barbara S.
Kaplan, Lewis A.
Karas, Kenneth M.
Koeltl, John G.
Marrero, Victor
McKenna, Lawrence M.
McMahon, Colleen
Nathan, Alison J.
Oetken, J. Paul
Owen, Richard
Patterson, Robert P.
Pauley, William H.
Preska, Loretta A.
Rakoff, Jed S.
Ramos, Edgardo
Sand, Leonard B.
Scheindlin, Shira A.
Seibel, Cathy
Stanton, Louis L.
Stein, Sidney H.
Sullivan, Richard J.
Swain, Laura Taylor
Sweet, Robert W.
Wood, Kimba M.

**Depositing Banks**
Ally Bank
Bank of America, N.A.

Bank of New York Mellon
Citibank, N.A.
Deutsche Bank Trust Company Americas
JPMorgan Chase Bank, N.A.
M&T Bank
State Street Bank and Trust Company
U.S. Bank National Association
Wachovia Bank, National Association

## Consultants & Professionals

Barclays Bank PLC
Centerview Partners LLC
Deloitte & Touche
Evercore
Fortress Investment Group, LLC
FTI Consulting, Inc.
Kirkland & Ellis LLP
Kurtzman Carson Consultants LLC
Mayer Brown LLP
Mercer
Nationstar Mortgage, LLC
PricewaterhouseCoopers
Rubenstein Associates, Inc.
Sidley Austin LLP
Skadden, Arps, Slate, Meagher & Flom LLP

## HELOC Investors

5th 3rd bank
Aurora Loan Services LLC
Bank One, Texas N.A.
Deutsche Bank National Trust Co.
Everbank
JP Morgan Chase
Macquarie Mortgages USA Inc
Suntrust
The Bank of New York Mellon
Treasury Bank, N.A.
Us Bank, N.A.
Wachovia Bank Na
Wells Fargo Bank, N.A.

## Servicing Counterparties

**Government Entities and GSEs**
Federal Home Loan Mortgage Corporation (Freddie Mac)
Federal Housing Administration (FHA)
Federal National Mortgage Association (Fannie Mae)
Government National Mortgage Association (Ginnie Mae)

**Housing and Local Agencies**
California Housing Finance Agency
CitiMortgage, Inc., as administrator for Texas Veterans Land Board
Connecticut Housing Finance Authority
Delaware Housing Authority
Hawaii Housing (Hula Mae)
Housing Opportunities Commission of Montgomery County, Maryland

Mississippi Home Corporation
Neighborhood Housing Services of America and Philadelphia N.H.S.
Oregon Housing and Community Services Department
Redevelopment Authority of the County of Berks
Rural Housing
The Housing and Redevelopment Authority in and for the City of Minneapolis
The Industrial Commission of North Dakota

**Mortgage and Monoline Insurers**
Ambac
Assured Guaranty Corp.
Cuna Mutual Group Mortgage Insurance Company
FGIC
Financial Security Assurance Inc
General Electric Mortgage Insurance Corporation
Genworth Mortgage Insurance Corporation
MBIA
Mortgage Guaranty Insurance Corp.
PMI Mortgage Insurance Co.
Radian Asset Assurance Inc.
Radian Guaranty Inc.
Republic Mortgage Insurance Company
Triad Guaranty Insurance Corporation
United Guaranty Residential Insurance Company

**Trustees**
Bank One, National Association
BNY Midwest Trust Company
Chase Bank of Texas, N.A.
Citibank, N.A.
Deutsche Bank National Trust Company
Deutsche Bank Trust Company Americas
HSBC Bank USA, National Association
JPMorgan Chase Bank, N.A.
LaSalle Bank National Association
Security Pacific National Company
The Bank of New York Mellon
U.S. Bank National Association
US National Association
Wells Fargo Bank Minnesota, N.A.
Wells Fargo Bank, National Association
Wilmington Trust Company

**Other Counterparties to Servicing Agreements**
50 BY 50, LLC
ABN AMRO Mortgage Croup, Inc.
Access National Mortgage Corporation
Ace Home Equity Loan Trust, Series 2007-SL3
ACE Securities Corp.
ACT Mortgage Capital
Advantage Bank
Aegis Mortgage Corporation
Aegon USA Realty Advisors
Alliance Bancorp
Alliance Securities Corp.
Ally Bank

Ally Financial Inc.
Ally Investment Management LLC
Alternative Finance Corporation
Amalgamated Bank of New York
American Equity Mortgage, Inc.
American Home Mortgage
American Home Mortgage Acceptance, Inc.
American Home Mortgage Investment Trust 2005-2
American Home Mortgage Investment Trust 2005-4A
American Home Mortgage Investment Trust 2006-2
American Home Mortgage Investment Trust 2007-A
American Home Mortgage Servicing, Inc.
American Home Mortgage Trust 2004-4
American Home Mortgage Trust 2005-1
American Home Mortgage Trust 2005-2
American Home Mortgage Trust 2005-4A
American Residential Equities XXVII, LLC
American Residential Equities, LLC
Ameriquest Mortgage Company
Andover Bank
Arbor Commercial Mortgage, LLC
Asset Management Holding of South Florida, LLC
Assured Guaranty Municipal Corp
Atlantic Financial Federal
Audobon Savings Bank
Aurora Loan Services Inc.
Aurora Loan Services LLC
Banc of America Funding 2005-3 Trust
Banc of America Funding 2005-8 Trust
Banc of America Funding 2006-1 Trust
Banc of America Funding 2006-4 Trust
Banc of America Funding Corporation
Banc of America Mortgage Capital Corporation
Bancap
Banco Mortgage Company
Banco Popular North America
Bank of America, National Association
Bank of Hawaii
Bank One, Texas, N.A.
Bank Rhode Island
Bank United, FSB
Bankatlantic, A Federal Savings Bank
Bankers Saving
Bankers Trust Company
Banknorth Mortgage
Bay Atlantic Federal Credit Union
Bay Financial Savings Bank, FSB
Bayrock Mortgage Corporation
Bayview Acquisitions, LLC
Bayview Financial Asset Trust
Bayview Financial Property Trust
Bayview Financial Securities Company, LLC
Bayview Financial Trading Group, L.P.
Bayview Financial, L.P.
Bear Stearns Asset Backed Securities I, LLC
Bear Stearns Mortgage Capital Corporation

Bear Stearns Second Lien Trust 2007-1
Bear Stearns Second Lien Trust 2007-SV1
Bell Federal Savings and Loan Association
BellaVista Funding Corporation
Belvedere Trust Finance Corporation
Bluebonnet Savings Bank FSB
BMMZ Holdings LLC
Broadway Federal Bank, FSB
Brothers Bank, FSB
Butte Savings and Loan Association
Caliber Funding, LLC
California Banking Association
California Federal Bank, FSB
California Public Employees' Retirement System
Cambridge Place Collateral Management LLC
Canada Mortgage Acceptance Corporation
Capital Crossing Bank
Capitol Federal Savings and Loan Association
Capstead Mortgage Corporation
CDC Mortgage Capital Inc. (Natixis)
Cenfed Bank, a Federal Savings Bank
Cenlar FSB
CenterState Bank of Florida, N.A.
Central Bank of Jefferson County, Inc.
Century Bank, FSB
CFX Bank
Charter One Bank, FSB
Charter One Bank, N.A.
Chase Manhattan Mortgage Corporation
Chemical Mortgage Company
Citi Financial Mortgage Co., Inc
Citibank (West), FSB
Citigroup Global Markets Realty Corp.
Citigroup Mortgage Loan Trust Inc.
CitiMortgage, Inc.
Citizens Bank of Connecticut
Citizens Bank of Massachusetts
Citizens Bank of New Hampshire
Citizens Bank of Pennsylvania
Citizens Bank, N.A.
Citizens Federal Bank, FSB
Clayton Fixed Income Services Inc.
Clayton National, Inc.
CMC Investment Partnership
Coastal Banc Capital Corporation
Coastal Banc SSB
Coastal States Mortgage Corporation
Collective Federal Savings Bank
Colonial Mortgage Service Company
Comerica Bank
Community Lending, Incorporated
Communityone Bank, N.A.
ComUnity Lending, Incorporated
Copperfield
Core, Cap Inc.
Corona Asset Management III, LLC

Countrywide Bank, N.A.
Countrywide Home Loans Servicing, LP
Countrywide Home Loans, Inc.
Credit Suisse First Boston Mortgage Securities Corp.
CSX
CTCE Federal Credit Union
CTX Mortgage Company, LLC
DB Structured Products, Inc.
Deutsche Alt-A Securities, Inc.
Deutsche Bank AG New York Branch
Deutsche Mortgage Securities, Inc.
DLJ Mortgage Acceptance Corp.
DLJ Mortgage Capital, Inc.
Dollar Bank, FSB
Drawbridge Consumer Funding Ltd
Dynex Securities Corporation
E*Trade Bank
E*Trade Mortgage
E*Trade Wholesale Lending Corp.
EAB Mortgage Company, Inc.
EMC Mortgage Corporation
Empire Mortgage X, Inc.
Encore Bank and National Association
Encore Savings Bank
Erie Savings Bank
Eurekabank
EverBank
Fairbanks Capital Corp.
Fairfax Savings Bank
Family Bank, FSB
Family Lending Services, Inc.
FBS Mortgage Corporation
Federal Home Loan Bank of Atlanta
Federal Trust Bank, FSB
Fidelity Federal Bank
Fidelity Savings and Loan
Fifth Third Bank
Financial Asset Securities Corp.
First Bank Incorporated
First Bank, Inc.
First Cap Holdings, Inc.
First Citizens Bank and Trust Company
First Citizens Mortgage Company
First Community Bank N.A.
First Federal of Michigan
First Federal Savings and Loan Association of Storm Lake
First Guaranty Mortgage Corporation
First Horizon Home Loan Corporation
First Indiana Bank
First Internet Bank of Indiana
First Massachusetts Bank, N.A.
First National Bank and Trust Company
First National Bank of Arizona
First National Bank of El Dorado
First Nationwide Mortgage Corporation
First NLC

First Rate Capital Corporation
First Savings Mortgage Corporation
First Tennessee Bank National Association
First Tennessee Capital Assets Corporation
First Trust Savings Bank
First Union National Bank
First-Citizens Bank & Trust Company
Firstrust Bank
Fleet National Bank
Flex Point Funding Corporation
Flick Mortgage Investors, Inc.
FNBA
Fortress Credit Corp.
FPA Corporation
Franklin Bank, SSB
Franklin Credit
Franklin Credit Management Corporation
Gateway Credit Union
Gateway Funding Diversified Mortgage Services, LP
GE Capital Consumer Card Co.
GE Mortgage Services, LLC
Geneva Mortgage Corporation
Germantown Savings Bank
Gibraltar Savings Association
Ginn Financial Services, LLC
Goldman Sachs Mortgage Company
Gonzalo Residential Asset Trust
Great American First Savings Bank
Great American Savings Bank
Green Planet Servicing, LLC
Green Tree Servicing LLC
GreenPoint Mortgage Funding Trust 2005-HE4
GreenPoint Mortgage Funding Trust 2006-HE1
GreenPoint Mortgage Funding, Inc.
Greenwich Capital Acceptance, Inc.
Greenwich Capital Financial Products, Inc.
Greenwich Universal Portfolio
GS Mortgage Securities Corp.
GSAA Home Equity Trust 2005-9
GSMPS Mortgage Loan Trust 2005-LT1
GSR Mortgage Loan Trust 2006-AR2
GSR Trust 2007-HEL1
Guardian Savings Bank
Hanover Capital Mortgage Holdings, Inc.
HarborView Mortgage Loan trust 2004-10
Healthcare Employees Federal Credit Union
Home Equity Loan Trust 2005-HS2
Home Equity Loan Trust 2006-HSA2
Home Equity Loan Trust 2006-HSA3
Home Equity Loan Trust 2006-HSA5
Home Equity Loan Trust 2007-HSA1
Home Equity Loan Trust 2007-HSA3
Home Federal Savings & Loan Association of Rome, Ga.
Home Loan Corporation
Home Loan Series 09-2028
HomeBanc Mortgage

HomEq Servicing Corporation
Horsham Funding Inc.
HSI Asset Securitization Corporation
Hudson & Keyse, LLC
Hudson City Savings Bank
Huntington Federal Savings & Loan Association
Hyperion Capital Group LLC
IMPAC CMB Trust Series 2005-6
IMPAC Funding Companies
IMPAC Funding Corporation
IMPAC Mortgage Holdings, Inc.
IMPAC Secured Assets Corp.
Imperial Credit Industries, Inc.
Independent Bank East Michigan
IndyMac Bank, FSB (now OneWest Bank, FSB)
IndyMac MBS, Inc.
IndyMac Mortgage Holdings, Inc.
ING Bank, FSB
Investment Capital Group
Irwin Union Bank and Trust Company
Ixis Real Estate Capital Inc
Jackson Federal Bank
Just Mortgage, Inc.
Kaiser Federal Bank
Keystone Nazareth Bank & Trust Company
Kidder Peabody Mortgage Capital Corporation
Lacera
Lebank
Lehman Brothers Bank, FSB
Lehman Brothers Holdings Inc.
Lehman Capital, a division of Lehman Brothers Holdings Inc.
Liberty Home Lending, Inc.
Liberty Savings Bank, FSB
Linden Assemblers Federal Credit Union
Litton Loan Servicing, LP
LNV Corporation
Loan Center of California
Loan Link Financial Services
Local #38 and Associates Credit Union
Lomas Mortgage USA, Inc.
Los Angeles County Employees Retirement Association
Los Angeles Federal Savings
LPP Mortgage Ltd.
Luminent Mortgage Capital, Inc.
Lydian Private Bank
Macquarie Mortgage Funding Trust 2007-1
Macquarie Mortgages USA, Inc.
MAIA Mortgage Finance Statutory Trust
Marine Bank
Market Street Mortgage Corporation
Massachusetts Mutual Life Insurance Co.
Matrix Capital Bank
MB Financial Bank N.A.
Medway Savings Bank
Mellon Bank
Mellon/McMahon Real Estate Advisors Inc.

Merck Sharp & Dohme Federal Credit Union
Mercury Mortgage Finance Statutory Trust
Meridian Mortgage Corporation
Merrill Lynch Bank & Co.
Merrill Lynch Hunton Paige
Merrill Lynch Mortgage Capital Inc.
Merrill Lynch Mortgage Holdings, Inc.
Merrill Lynch Mortgage Investors, Inc.
Merrill Lynch Mortgage Lending, Inc.
Metlife Bank, N.A.
Metrocities Mortgage Corp., LLC
Metropolitan Life Insurance Company
Mid America Bank, FSB
MidFirst Bank
Midland Financial Savings and Loan Association
Mint I, LLC
Mint II, LLC
Money Bank Investment Corporation
Monterey I Holdings
Morgan Stanley Capital I Inc.
Morgan Stanley Mortgage Capital Inc.
Morgan Stanley Mortgage Loan Trust 2005-3AR
Mortgage Asset Securitization Transactions, Inc.
Mortgage Asset Securitization Trust
Mortgage Interest Networking Trust II
Mortgage Investors Corporation
MortgageIT Holdings Inc.
MortgageIT Securities Corp.
MortgageIT Trust 2005-4
MortgageIT, Inc
MRF 3 LLC
Mrit Securities Corporation
Mutual Savings & Loan Association of Charlotte, N.C.
Mutual Savings Bank
National Bank of Commerce
NETBANK
Network Funding L.P.
Neuwest Equity Partners
New Century Mortgage Securities, Inc.
New Cumberland Federal Credit Union
New Penn Financial, LLC
New York Life Insurance and Annuity Corporation
New York Life Insurance Company
Nomura Asset Acceptance Corporation
Nomura Credit & Capital, Inc.
Nomura Home Equity Loan, Inc.
North Jersey Federal Credit Union, Inc.
Northwest Funding, Inc.
Northwestern National Bank of Minneapolis
Norwest Bank Minnesota, National Association
Norwest Mortgage, Inc.
Ocwen Federal Bank FSB
Ocwen Loan Servicing, LLC
Ohio Savings Bank
Opteum Financial Services, LLC
Option One Mortgage Corporation

Paine Webber Real Estate Securities Inc.
Parkside Lending, LLC
Parkvale Savings Bank
Paul Financial, LLC
People Savings Bank, Inc., SSB
Peoples Heritage Savings Bank
PHH Mortgage
Philadelphia Federal Credit Union
Pinnacle Capital Mortgage Corporation
Pinnacle Financial Corporation
Plaza Home Mortgage, Inc.
PMC Bancorp
PNC Bank, N.A.
PNC Mortgage Securities Corp.
Pomona First Federal Bank and Trust
Principal Asset Markets, Inc.
Principal Bank
Principal Mutual Life Insurance Company
Private Capital Group
Quaker City Bank
Quicken Loans Inc.
RBS Citizens, National Association
Real Time Resolutions, Inc.
Real Time Solutions
Realty Mortgage Corporation
Redlands Federal Bank, FSB
Redwood Trust, Inc.
Reliance Federal Credit Union
Residential Mortgage Assistance Enterprise, LLC
Resolution Capital Advisors, LLC
Ridgewood Savings Bank
Riggs Bank N.A.
Rochester Community Savings Bank
Roosevelt Management Company, LLC
RWT Holdings, Inc.
Ryland Acceptance Corporation Four
SACO I Trust 2005-GP1
SACO I Trust 2006-8
Salomon Brothers Realty Corp.
Saxon Mortgage Funding Corporation
Sea Breeze Financial Services, Inc.
Sebring Capital
Secured Bankers Mortgage Company
Security National
Security Pacific National Bank
Select Portfolio Servicing Inc.
Sequoia Funding Trust
Sequoia Residential Funding, Inc.
Shearson Lehman Government Securities, Inc.
Shellpoint Mortgage LLC
Sierra Pacific Mortgage, Inc
Silver State Financial Services, Inc.
Silvergate Bank
Skyline Financial Corp.
SMFC Funding Corporation
SN Servicing Corporation

SNBOA, LLC
Southbank
Southern Pacific Thrift and Loan Association
SouthStar Funding, LLC
Southwest Savings and Loan Association
Sovereign Bank, FSB
Specialized Loan Servicing LLC
St. Paul Federal Bank for Savings
Stanwich Mortgage Acquisition Company, LLC
Sterling Savings Bank
Steward Financial, Inc.
Stonebridge Bank
Structured Asset Mortgage Investments II Inc.
Structured Asset Mortgage Investments, Inc.
Structured Asset Securities Corporation
Structured Mortgage Investments II Inc.
Summit Savings & Loan Association
Suntrust Asset Funding, LLC
Superior Bank
Susquehanna Bank
Syncora Guarantee Inc.
Taylor, Bean Whitaker
TCF National Bank
TCIF, LLC
TeleBank
Terwin Advisors LLC
Terwin Mortgage Trust 2006-6
Terwin Securitization LLC
The Canada Trust Company
The Chase Manhattan Bank
The First Boston Corporation
The First National Bank of Glens Falls
The Frost National Bank
The Mortgage Store Financial, Inc.
The New York Mortgage Company, LLC
The Travelers Indemnity Company
The Winter Group
Treasury Bank, N.A.
Tri Counties Bank
Tri Country Area Federal Credit Union
Truman Capital Securitization LLC
UBS Real Estate Securities Inc.
UBS Warburg Real Estate Securities Inc.
UBS Warburg, LLC
United Capital Mortgage, LLC
United Federal Savings Bank
United Financial Mortgage Corporation
United Savings Association of Texas, FSB
Unity Bank
Universal Master Servicing, LLC
US Bank Home Mortgage
USAA Federal Savings Bank
Valley Independent Bank
Vermont Mortgage Group, Inc.
Wachovia Bank, National Association
Wachovia Mortgage Corporation

Walter Mortgage Company
Washington Mutual Bank
Washington Mutual Mortgage Securities Corp.
Webster Bank
Western Financial Savings Bank, FSB
WestStar Mortgage, Inc.
Wilshire Credit Corporation
Winter Group
Witmer Funding LLC
WMCC Clayton / Washington Mutual Bank
WMD Capital Markets, LLC

**Utilities**
Abovenet Communications Inc.
AT&T
AT&T Mobility
Center Point Energy
CenturyLink
Cisco Systems Capital Corporation
City of Eden Prairie
Comcast
Dish Network
Genesys Conferencing
Global Capacity Group Inc.
IEX Corporation
Inova Solutions
Intercall
Intervoice Inc.
Level 3 Communications LLC
MediaCom
Micro-Tel Center
MidAmerican Energy
Sprint
Time Warner Cable
Time Warner Telecom
Verizon
Verizon Business
Verizon California
Verizon Wireless
Waste Management
Waterloo Water Works
Xcel Energy

**Consolidated Top 50 Creditors**
Aegis Usa Inc.
Alan Gardner
Allstate Insurance
Ambac Assurance Corp
Assured Guaranty Corp.
BNYMellon
Boilermaker Blacksmith National Pension Trust
Brian Kessler, et al
Cambridge Place Investment Management Inc.
Credstar
Deutsche Bank AG, New York
Deutsche Bank Trust Company Americas

Don E. Diane M. Patterson
Donna Moore
Emortgage Logic
Federal Home Loan Bank of Boston
Federal Home Loan Bank of Chicago
Federal Home Loan Bank of Indianapolis
Federal Housing Finance Agency
Financial Guaranty Insurance Co.
Huntington Bancshares Inc.
Indecomm Global Services
Iowa Public Employees Retirement System
Lehman Brothers Holdings, Inc.
Loan Value Group
Massachusetts Mutual Life Insurance Company
MBIA, Inc.
Midwest Operating Engineers Pension Trust Fund
National Credit Union Administration Board
New Jersey Carpenters Health Fund
New Jersey Carpenters Vacation Fund
Orange County Employees Retirement System
Police and Fire Retirement System of the City of Detroit
Sealink Funding Limited
Steven And Ruth Mitchell
Stichting Pensioenfonds ABP
The Charles Schwab Corporation
The Union Central Life Insurance Company
Thrivent Financial for Lutherans
Tiffany Smith
US Bank
Wells Fargo & Company
Wells Fargo Bank N.A
West Virginia Investment Management Board
Western & Southern

## SCHEDULE 2

Moelis has been engaged within the last two years or is currently engaged by the following Potential Parties in Interest (or one or more of their affiliates, as the case may be) in matters unrelated to these cases*: AboveNet Inc., AllianceBernstein, AT&T, FGIC,  Syncora, Taconic Capital Advisors, HSH Nordbank AG, IKB Deutsche Industriebank AG, JP Morgan, UBS, Fortress, Goldman Sachs, Bank of America, Barclays, Western Asset Management Company, Wilmington Trust, State of Ohio, Comcast, M&T Bank Corporation, Mortgage Investors Corporation, Penson Financial Services, New York Life Insurance Company, Oppenheimer & Company, Inc., CenterPoint Energy, Bank of NY Mellon, State Street Bank & Trust, BlackRock, Nomura, Silver Point Capital, U.S. Bank, HSBC, RBC Capital Markets, Royal Bank of Scotland, Brookfield Asset Management, CDC Mortgage Capital Inc., Citibank / Citigroup, Credit Suisse, Deutsche Bank, GE Capital, ING Bank, Morgan Stanley and Macquarie Mortgages.

- Bank of America Merrill Lynch, Barclays, Citigroup, Credit Suisse, Goldman Sachs, JP Morgan, Nomura, Deutsche Bank, Morgan Stanley, HSBC and UBS may from time to time pay Moelis introduction fees in connection with introducing such parties to potential fixed income transactions (other than in connection with these Chapter 11 Cases).

- An affiliate of one of the Potential Parties in Interest under Mortgage and Monoline Insurers and an affiliate of one of the Potential Parties in Interest under Other Counterparties to Servicing Agreements each has a passive limited partnership interests of less than 1% in the parent of Moelis.

- An affiliate of one of the Potential Parties in Interest under Bondholders, an affiliate of one of the Potential Parties in Interest under Mortgage and Monoline Insurers and an affiliate of one of the Potential Parties in Interest under Other Counterparties to Servicing Agreements, each has a limited partner commitments to Moelis Capital Partners, a private equity fund whose General Partner is an affiliate of the parent of Moelis.

- Joseph Simon, CFO of Moelis' parent, was CFO at Financial Security Assurance for seven years prior to joining Moelis in 2010.  Mr. Simon will not be part of the investment banking team working on this engagement.

- The spouse of Adam Waldman, an Associate of Moelis who is working on this engagement, is a law clerk for Judge Katherine Forrest.

* Note: Includes Potential Parties of Interest (or their affiliates, as the case may be) who were members of an official or ad hoc creditor, lender or equity committee or group.