MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------- )
                                                                           )
In re:                                                                     )    Case No. 12-12020 (MG)
                                                                           )
RESIDENTIAL CAPITAL, LLC, <u>et al</u>.,                                   )    Chapter 11
                                                                           )
                                                        Debtors.           )    Jointly Administered
                                                                           )
-------------------------------------------------------------------------- )

### DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014 FOR AUTHORIZATION TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS ADMINISTRATIVE AGENT *NUNC PRO TUNC* TO THE PETITION DATE

The debtors and debtors in possession in the above-captioned cases (the

"Debtors")[1] hereby submit this Application (the "Application")[2] for entry of an order,

substantially in the form annexed hereto as <u>Exhibit 1</u> (the "Order"), pursuant to section 327(a) of

title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2014-1 of the Local Bankruptcy

Rules of the Southern District of New York (the "Local Rules") authorizing, the Debtors to

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on <u>Exhibit 1</u> to the Whitlinger Affidavit (defined below).

[2]    Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief requested in this Motion may refer to http://www.kccllc.net/rescap for additional information.

employ and retain Kurtzman Carson Consultants LLC ("KCC") as administrative agent *nunc pro tunc* to the Petition Date (as defined herein).  In support of the Application, the Debtors rely upon and incorporate by reference the Declaration of Albert Kass, Vice President of Corporate Restructuring Services (the "Kass Declaration") annexed hereto as <u>Exhibit 2</u>.  In further support of the Application, the Debtors, by and through their undersigned counsel, respectfully represent:

**JURISDICTION AND VENUE**

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for relief are section 327 of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules.

**BACKGROUND**

1.        On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases; however, the Court has directed that an examiner be appointed.

2.        On May 16, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

3.        The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc., which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage servicing business and the tenth largest

2

mortgage origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on the Petition Date (the "Whitlinger Affidavit") [Docket No. 6].

## RELIEF REQUESTED

2.       By this Application, the Debtors respectfully request entry of an Order, pursuant to sections 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, authorizing the employment and retention of KCC as administrative agent for the Debtors under the terms set forth of the KCC Agreement for Services, annexed hereto as Exhibit 3 (the "KCC Agreement").

3.       On the Petition Date, the Debtors filed an application under 28 U.S.C. § 156(c) for authorization to retain KCC to serve as the notice and claims agent in these Chapter 11 cases (the "Section 156(c) Application"), under the terms set forth in the KCC Agreement. Given that the administration of the cases will require KCC to perform duties that may be outside the scope of 28 U.S.C. § 156(c), the Debtors hereby supplement the Section 156(c) Application with this Application.

## APPLICABLE AUTHORITY

4.       Title 11 U.S.C. § 327(a) provides that a debtor, subject to Court approval:

[M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

5.       Bankruptcy Rule 2014(a) requires that an application for retention include:

[S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

6.      In particular, the Debtors seek to retain KCC to provide, among other things, the following bankruptcy administrative services, if and to the extent requested (collectively, the "Administrative Services"):

(a) Assist with the preparation of the Debtors' Schedules of Assets and Liabilities and Statement of Financial Affairs by inputting and formatting data provided by the Debtors and their professionals;

(b) Tabulate votes and perform subscription services as may be requested or required in connection with any and all plans filed by the Debtors and provide ballot reports and related balloting and tabulation services to the Debtors and their professionals;

(c) Generate an official ballot certification and testify, if necessary, in support of the ballot tabulation results; and

(d) Perform such other ministerial and administrative services in connection with the foregoing as may be requested by the Debtors that are not otherwise allowed under the Order approving the Section 156(c) Application.

## RETENTION OF KCC

7.      KCC is one of the country's leading Chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of Chapter 11 cases.  KCC has substantial experience in matters of this size and complexity, and has provided administrative services in numerous cases in this district. *See, e.g.,* In re Jobson, Case No. 12-10434 (Bankr. S.D.N.Y. Feb. 3, 2012) (Docket No. 29); In re The Connaught Group, Case No. 12-10512 (Bankr. S.D.N.Y. Mar. 5, 2012) (Docket No. 101); In re Grubb & Ellis, Case No. 12-10685 (Bankr. S.D.N.Y. Mar. 8, 2012) (Docket No. 99); In re

Eastman Kodak Company, Case No. 12-10202 (Bankr. S.D.N.Y. Feb. 15, 2012) (Docket No. 365); In re Hostess Brands, Inc., Case No. 12-22052 (Bankr. S.D.N.Y. Jan. 27, 2012) (Docket No. 200); In re Marco Polo Seatrade B.V., Case No. 11-13634 (Bankr. S.D.N.Y. Sept. 15, 2011) (Docket No. 138).

8.      The Debtors submit that utilizing KCC to provide the Administrative Services will provide the most cost-effective and efficient administrative service for these Chapter 11 cases.    The Debtors chose KCC based on its experience, reputation and the competitiveness of its fees.  Accordingly, the Debtors believe that KCC is well qualified to serve in the capacity of administrative agent, and that KCC's retention in such capacity is in the best interests of the Debtors' estates and their creditors.

9.      By appointing KCC as the administrative agent in these Chapter 11 cases, the administration of the cases will be expedited, so the Debtors and the Debtors' professionals will be relieved of handling the Administrative Services as necessary for the successful prosecution of the case.

### TERMS OF RETENTION

10.      KCC intends to apply to the Court for allowances of compensation and reimbursement of out-of-pocket expenses incurred after the Petition Date in connection with the performance of Professional Services in these Chapter 11 cases, subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, General Order M-412, the guidelines established by the U.S. Trustee, and further orders of this Court.

11.      As part of the overall compensation payable to KCC under the terms of the KCC Agreement, the Debtors have agreed to certain indemnification and contribution

obligations. The KCC Agreement provides that the Debtors will indemnify and hold harmless KCC, its officers, employees and agents under certain circumstances specified in the KCC Agreement, except in circumstances of gross negligence or willful misconduct. Both the Debtors and KCC believe that such provisions are customary and reasonable for notice and claims agents in Chapter 11 cases.

12.     KCC has informed the Debtors that, subject to Court approval, it will bill at its standard hourly rates, which are set forth in the KCC Agreement. The Debtors believe that these rates are consistent with market rates for comparable services. KCC will maintain detailed records of actual and necessary costs and expenses incurred in connection with the Professional Services described above.

## KCC'S DISINTERESTEDNESS

13.     The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors. KCC has not and will not represent the separate interests of any such creditor in these cases. Additionally, KCC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors. For example, one or more of KCC's employees may have obligations outstanding with financial institutions that are creditors of the Debtors or may have used the Debtors' services.

14.     To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Kass Declaration, KCC has represented that it neither holds nor represents any interest adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person," as referenced in Bankruptcy Code § 327(a) and as defined in Bankruptcy Code § 101(14), as modified by Bankruptcy Code § 1107(b). KCC

will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

## NOTICE

15.     The Debtors have provided notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the office of the United States Attorney General; (c) the office of the New York Attorney General; (d) the office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) each of the Debtors' prepetition lenders, or their agents, if applicable; (h) each of the indenture trustees for the Debtors' outstanding notes issuances; (i) Ally Financial Inc. and its counsel; (j) counsel for Barclays Bank PLC, as administrative agent for the lenders under the debtor in possession financing facility; (k) Nationstar Mortgage LLC and its counsel; (l) counsel for the Committee; and (m) all entities which have requested notice with the Court pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order

substantially in the form attached hereto as <u>Exhibit 1</u> granting the relief requested in the Motion;

and (ii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated: June 28, 2012
      New York, New York

                                   RESIDENTIAL CAPITAL, LLC,

                                   on behalf of itself and each of its Debtor subsidiaries

                                   By: <u>/s/ James Whitlinger</u>
                                   Name:  James Whitlinger
                                   Title: Chief Financial Officer

**EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

In re:

RESIDENTIAL CAPITAL, LLC, et al.,

                                    Debtors.

-----------------------------------------------------------------

Case No. 12-12020 (MG)

Chapter 11

Jointly Administered

## ORDER PURSUANT TO 11 U.S.C. § 327(A) AND FED. R. BANKR. P. 2014 AUTHORIZING THE EMPLOYMENT AND RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS ADMINISTRATIVE AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

Upon consideration of the application (the "Application")[1] of Residential Capital, LLC,

as debtors and debtors in possession (the "Debtors") for entry of an order (the "Order") pursuant

to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2014-1 of

the Local Bankruptcy Rules of the Southern District of New York (the "Local Rules")

authorizing the retention of Kurtzman Carson Consultants LLC ("KCC") as administrative agent

in the Debtors' Chapter 11 cases *nunc pro tunc* to May 14, 2012 on the terms and conditions set

forth in the agreement between the Debtor and KCC (the "KCC Agreement") and all as

described more fully in the Application; and upon the Declaration of Albert Kass, KCC's Vice

President of Corporate Restructuring Services, (the "Kass Declaration"); and the Debtors having

estimated that the size and complexity of their cases warrants the retention of an agent to assist

with certain administrative duties; and the Court being satisfied that KCC has the capability and

experience to provide such services and that KCC does not hold an interest adverse to the

Debtors or their estates respecting matters upon which it is to be engaged; and it appearing that

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

1

the Court has jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. § 157(b)(2)(A), (B), and (O); and it appearing that venue is proper in this district pursuant to 28 U.S.C. § 1408; and it appearing that KCC is disinterested and eligible for retention pursuant to sections 101(14) and 327(a) of the Bankruptcy Code and that the terms of the KCC Agreement, as modified by the terms of this Order and as applicable, are reasonable and appropriate; and good and sufficient notice of the Application having been given and no other or further notice being required; and it appearing that the employment of KCC is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.    The Application is granted to the extent provided herein.

2.    The Debtors are authorized pursuant to section 327(a) of the Bankruptcy Code to retain and employ KCC as administrative agent, *nunc pro tunc* to the Petition Date, subject to the terms of the Application and the KCC Agreement, and to perform the Professional Services specifically listed in the Application subject to the terms of this Order.

3.    KCC shall use its best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 cases.

4.    KCC is authorized to take such other action to comply with all duties set forth in the Application.

5.    This Order shall not apply to any services KCC was authorized to render pursuant to the Section 156(c) Application, which was approved by the Court.

6.    KCC shall apply to the Court for allowances of compensation and reimbursement of out-of-pocket expenses incurred in this case after the Petition Date in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

2

Local Rules, General Order M-412, the guidelines established by the U.S. Trustee, and further orders of this Court.

       7.     To the extent that KCC increases its rates under the terms of the KCC Agreement, KCC shall promptly file with the Court, and serve upon the Debtors, the U.S. Trustee and any official committee, an affidavit setting forth all changes in rates for each individual.

       8.     Notwithstanding anything to the contrary in the KCC Agreement, the indemnification provisions are hereby modified and restated as follows:

    (a) All requests of KCC for payment of indemnity pursuant to the KCC Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that such indemnity conforms to the terms of the KCC Agreement, and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided*, however, that in no event shall KCC be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

    (b) In the event that KCC seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by KCC for payment of indemnity pursuant to the KCC Agreement, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in KCC's own application (both interim and final) and such invoices and time records shall be subject to the guidelines established by the United States Trustee for Region 2 and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code;

    (c) KCC shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of KCC's counsel other than those incurred in connection with a request of KCC for payment of indemnity; and

    (d) In no event shall KCC be indemnified if the Debtors or representatives of the estates assert a claim for, and a court determines by final order that such claim arose out of, KCC's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

9.      Notwithstanding anything contained in the KCC Agreement to the contrary, KCC's liability shall neither be limited to (i) the total amount billed or billable to the Debtors for the portion of the particular work which gave rise to the loss or damage nor (ii) the total amount billed to the Debtors and paid to KCC for the services contemplated under the KCC Agreement.

10.      Prior to the Petition Date, and as disclosed in the Section 156 Application, the Debtors provided KCC a retainer in the amount of $100,000.  KCC may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, KCC may hold its retainer under the KCC Agreement during the Chapter 11 cases as security for the payment of fees and expenses incurred under the KCC Agreement.

11.      To the extent that the Application or the KCC Agreement is inconsistent with this Order, the terms of the Order shall govern.

12.      The KCC Agreement may not be assigned by KCC without permission of the Court.

13.      The Debtors and KCC are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14.      The terms and conditions of this Order are immediately effective and enforceable upon its entry.

15.      Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

4

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

        16.     Notwithstanding any provision to the contrary in the Application or KCC

Agreement, the Court retains jurisdiction with respect to all matters arising from or related to the

implementation of this Order.

New York, New York
Date:  _____, 2012

                                        _____
                                          THE HONORABLE MARTIN GLENN
                                          UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

------------------------------------------------------------------

**DECLARATION OF ALBERT KASS IN SUPPORT OF DEBTORS' APPLICATION**
**FOR AN ORDER APPOINTING KURTZMAN CARSON CONSULTANTS LLC AS**
**<u>ADMINISTRATIVE AGENT FOR THE DEBTORS PURSUANT TO 28 U.S.C. § 327</u>**

I, Albert Kass, being duly sworn, deposes and says:

1.      I am the Vice President of Corporate Restructuring Services of Kurtzman

Carson Consultants LLC ("KCC"), which maintains an office at 2335 Alaska Avenue, El

Segundo, California and I am authorized to submit this declaration ("Declaration") on behalf of

KCC.  I submit this Declaration in support of the Debtors' Application Pursuant to 11 U.S.C. §

327(a) and Fed. R. Bankr. P. 2014 for Authorization to Employ and Retain Kurtzman Carson

Consultants LLC as Administrative Agent *Nunc Pro Tunc* to the Petition Date (the "327

Application").  Except as otherwise noted, I have personal knowledge of the matters set forth

herein.

2.      KCC specializes in providing consulting and data processing services to

Chapter 11 debtors in connection with, among other services, claims administration,

reconciliation, and negotiations and solicitation of votes to accept or reject plans of

reorganization. KCC has provided identical or substantially similar services in other Chapter 11

cases in this district, including <u>In re The Connaught Group</u>, Case No. 12-10512 (Bankr. S.D.N.Y.

2012); <u>In re Grubb & Ellis</u>, Case No. 12-10685 (Bankr. S.D.N.Y. 2012); <u>In re Eastman Kodak

Company</u>, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. 2012); <u>In re Hostess Brands, Inc., et al.</u>,

Case No. 12-22052 (Bankr. S.D.N.Y. 2012); In re AGH Liquidating, LLC, Case No. 11-14220

(ALG) (Bankr. S.D.N.Y. 2011); In re Getty Petroleum Marketing Inc., Case No. 11-15606 (SCC)

(Bankr. S.D.N.Y. 2011); In re Marco Polo Seatrade B.V., Case No. 11-13634 (JMP) (Bankr.

S.D.N.Y. 2011).

       3.      KCC is well qualified to provide the Debtors with experienced services as

administrative agent in connection with these Chapter 11 cases.  KCC is fully equipped to handle

the volume involved in properly handle soliciting, balloting and facilitate other administrative

aspects of these Chapter 11 cases.

       4.      To the best of my knowledge and belief, insofar as I have been able to

ascertain after research and inquiry and except as disclosed herein, I believe that the members

and employees of KCC:  (a) do not have any material adverse connection with the Debtors, the

Debtors' creditors or any other party in interest or its respective attorneys and accountants, the

United States Trustee, or any person employed in the Office of the United States Trustee with

respect to the matters for which KCC will be employed; and (b) do not hold or represent an

interest materially adverse to the Debtors' estates.

       5.      The Debtors have many creditors, and accordingly, KCC may have

rendered and may continue to render services to certain of these creditors in matters unrelated to

these cases, either as vendors or in cases where KCC serves in a neutral capacity as a bankruptcy

claims and noticing agent or class action settlement administrator.  KCC has not and will not

represent the separate interests of any such creditor in these cases.  To the best of my knowledge,

neither KCC, nor any of its professional personnel, have any relationship with the Debtors that

would impair KCC's ability to serve as administrative agent.  KCC has working relationships

with certain of the professionals retained by the Debtors and other parties herein, but such

2

relationships are completely unrelated to the Debtors' cases.  In addition, KCC personnel may

have relationships with some of the Debtors' creditors.  Such relationships are, however, of a

personal, financial nature and are wholly unrelated to the Debtors' cases.  KCC has and will

continue to represent clients in matters unrelated to the Debtors' cases and has had and will

continue to have relationships in the ordinary course of its business with certain vendors and

professionals in connection with matters unrelated to these cases.

      6.     KCC is an indirect subsidiary of Computershare Limited

("Computershare").  Computershare is a financial services and technologies provider for the

global securities industry.  Within the Computershare corporate structure, KCC operates as a

separate, segregated business unit.  As such, any relationships that Computershare and its

affiliates maintain do not create an interest of KCC that would be materially adverse to the

Debtors' estates or any class of creditors or equity security holders.

      7.     To the best of my knowledge and belief, insofar as I have been able to

ascertain after research and inquiry, I believe that KCC is a "disinterested person" as that term is

defined in section 101(14) of the Bankruptcy Code, as qualified by section 1107(b) of the

Bankruptcy Code, in that its members and employees:

      (a)     Are not creditors, equity security holders or insiders of the Debtors;

      (b)     Are not and were not, within 2 years before the date of the fling of
            the petition, a director, officer, or employee of the Debtors; and

      (c)     Do not have an interest adverse to the interests of the Debtors'
            estates or of any class of creditors or equity security holders, by
            reason of any direct or indirect relationship to, connection with, or
            interest in, the Debtors, or for any other reason.

      8.     On behalf of KCC, I hereby represent that

      (a)     KCC will not consider itself employed by the United States
            government (the "Government") and will not seek any

3

compensation from the Government in its capacity as the
Administrative Agent in this Chapter 11 case;

(b) By accepting employment in these Chapter 11 cases, KCC waives
any right to receive compensation from the Government in
connection with these Chapter 11 cases;

(c) In its capacity as administrative agent, KCC is not an agent of the
Government and is not acting on behalf of the Government;

(d) KCC will not intentionally misrepresent any fact to the public; and

(e) KCC will not employ any past or present employees of the Debtors
in connection with its work as the Administrative Agent in these
Chapter 11 cases.

9. Prior to the Petition Date, and as disclosed in the Section 156 Application,
the Debtors provided KCC a retainer in the amount of $100,000.  KCC will apply the retainer to
all prepetition invoices, and thereafter, to hold the retainer under the KCC Agreement during
these Chapter 11 cases as security for the payment of fees and expenses incurred under the KCC
Agreement.

10. As compensation for its services, KCC will charge the rates set forth in the
KCC Agreement.  These rates are comparable to those charged by other providers of similar
services and they are at least as favorable as the rates KCC charges to other Chapter 11 debtors
for similar services.

11. I declare under penalty of perjury that the foregoing is true and correct.
Executed on this 27th day of June 2012.

/s/ Albert Kass
Albert Kass
Vice President of Corporate Restructuring
Services
Kurtzman Carson Consultants LLC

4

**<u>EXHIBIT 3</u>**

ny-1043372



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 21st day of February, 2012, between Residential Capital, LLC (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.    SERVICES

A.    KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.    KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.    Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.    The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part. Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders. Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.    The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement. The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

information were provided by the Company. The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

## II.    PRICES, CHARGES AND PAYMENT

A.    KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect as of the date of this Agreement in accordance with the KCC Fee Structure. KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.    The Company agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with services provided under this Agreement, including but not limited to, transportation, lodging, and meals.

C.    In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.    Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.    KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. However, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company. The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice. Late charges shall not accrue on any amounts in dispute. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.    In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with

2



# KCC AGREEMENT FOR SERVICES

the Bankruptcy Court seeking entry of an order pursuant to Section 156(c) approving this Agreement in its entirety (the "Section 156(c) Order"). The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G.    To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $100,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III.    RIGHTS OF OWNERSHIP

A.    The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.    The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

IV.    NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

V.    CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

3



# KCC AGREEMENT FOR SERVICES

VI.    SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.      In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C.      Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days, KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

4



# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company. To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement. The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss. In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement. In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information. KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

5



# KCC AGREEMENT FOR SERVICES

### X.    FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

### XI.    INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

### XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC
2335 Alaska Ave.
El Segundo, CA  90245
Attn:  Drake D. Foster
Tel: (310) 823-9000
Fax: (310) 823-9133
E-Mail: dfoster@kccllc.com

Residential Capital, LLC
1100 Virginia Drive
Fort Washington, PA 19034
Attn: Tammy Hamzehpour
Tel: (215) 682-1307
Fax:

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

### XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

### XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this

6



# KCC AGREEMENT FOR SERVICES

Agreement, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

XV.   COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XVI.   ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

XVII.   ARBITRATION

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in Los Angeles County, State of California.

XVIII. ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]

7



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the
first date mentioned above.

Kurtzman Carson Consultants LLC

BY: _Albert H Kass_____ DATE: _3/6/2012_

TITLE: VP, Corporate Restructuring

Residential Capital, LLC

BY: Jim Whitlinger     DATE: 3/6/12

TITLE: Chief Financial Officer

Kurtzman Carson Consultants LLC   599 Lexington Avenue, 39th Floor, New York, New York 10022   PHONE 917-281-4800   FAX 917-281-4900   kccllc.com


KURTZMAN
CARSON
CONSULTANTS

## KCC CORPORATE RESTRUCTURING
## FEE STRUCTURE

### FEES

#### Consulting Services & Rates[1]

| | |
|---|---|
| Clerical | $38.25 - $55.25 per hour |
| Project Specialist | $68.00 - $119.00 per hour |
| Consultant | $150.00 - $223.00 per hour |
| Senior Consultant | $232.00 - $250.25 per hour |
| Senior Managing Consultant | $268.50 - $295.75 per hour |
| Technology/Programming Consultant | $123.25 - $165.75 per hour |
| Weekend, holidays and overtime | Waived |

### EXPENSES[2]

#### KCC CaseView – Application Licensing, Web Hosting & Database Storage

| | |
|---|---|
| Case configuration | Applicable consulting fees |
| Remote set-up; training | Applicable consulting fees |
| Permitted users | Waived |
| License fee and data storage | $0.05 per creditor per month |
| | $0.01 per image per month |
| Case-specific public website set-up | Waived |
| Case-specific public website hosting | Waived |
| Case-specific voicemail box for creditor inquiries | Waived |
| Case-specific e-mail box for creditor inquiries | Waived |

#### Claims Management & Administration

| | |
|---|---|
| Creditor import | Waived |
| Proof of Claim input | $0.25 per claim |

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.
[2] Expenses shall be consistent with the general practice procedures authorized in the Southern District of New York.

Kurtzman Carson Consultants LLC  599 Lexington Avenue, 39th Floor, New York, New York 10022  TEL 917-281-4800  FAX 917-281-4900  kccllc.com



## KCC CORPORATE RESTRUCTURING
## FEE STRUCTURE

### Notice Printing & Publication Services

| | |
|---|---|
| Set-up | Waived |
| Insert creditor information into customized documents | $0.12 per piece |
| Electronic noticing (e-mail) | $100.00 per 1,000 |
| Electronic noticing (domestic facsimile) | $0.15 per page |
| Claim Acknowledgement Card | $0.25 per notice |
| Document folding and inserting | $0.07 per document |
| Finishing – tape binding[3] | $1.25 per document |
| Legal notice publishing | Quote prior to publishing |
| Public Debt and Equity Holder noticing. | Quote as required, based on nature and type of securities |

### Document Management/Imaging

| | |
|---|---|
| Electronic imaging (scanning & bar-coding) | $0.10 per imaged page |
| Virtual data room | Quote prior to VDR set-up[4] |

### Standard and Customized Reporting

*The following services are available at consulting rates:*

- Preparation of Service Lists
- Preparation of Claims Registers & Claims Reports
- Claims Reconciliation
- Preparation of Claims Objection Exhibits
- Custom Data Extraction & Forensics
- Preference Data Compilation