# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**ORDER UNDER 11 U.S.C. §§ 105, 363(b) AND 365 (I) AUTHORIZING AND APPROVING SALE PROCEDURES, INCLUDING PAYMENT OF BREAK-UP FEES; (II) SCHEDULING BID DEADLINE, AUCTION (IF NECESSARY) AND SALE HEARING; (III) ESTABLISHING ASSUMPTION AND ASSIGNMENT PROCEDURES, INCLUDING PROCEDURES FOR FIXING CURE AMOUNTS; AND (IV) ESTABLISHING NOTICE PROCEDURES AND APPROVING FORMS OF NOTICE**

Upon the motion, dated May 14, 2012 (the "Motion"),[1] of Residential Capital, LLC ("ResCap") and certain of its affiliates, as debtors in possession (collectively, the "Debtors") for entry of an Order, under Bankruptcy Code sections 105, 363, 365, 503, 507 and 1123 of title 11, United States Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 for, among other things: (i) authorizing and approving the proposed sale procedures annexed hereto as Exhibit 1 (the "Sale Procedures") and the payment of (x) the Break-Up Fee to Nationstar of $24 million in cash under the terms set forth in the Nationstar APA[2] (the "Nationstar Break-Up Fee"); and (y) the Break-Up Fee to Berkshire Hathaway Inc. ("BH") of $10 million in cash ("the BH Break-Up Fee, together with the Nationstar Break-Up Fee, the "Break-Up Fees") under the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the Sale Procedures, or the APAs (as defined in the Motion). Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

[2] The defined term "Nationstar APA" as used herein shall refer to the asset purchase agreement between Nationstar and certain of the Debtors, as amended and filed on June 28, 2012 (Dkt. No. 534).

terms set forth in that certain asset purchase agreement dated June 28, 2012 to purchase the

Purchased Assets (as defined therein, and as referred to herein as the "BH Purchased Assets" or

the "Legacy Portfolio") executed by BH (the "BH Legacy APA", together with the Nationstar

APA, the "APAs"); (ii) scheduling a Bid Deadline, Auction (if necessary) and Sale Hearing,

(iv) establishing procedures for assuming and assigning the Assumed Contracts, including

procedures for fixing cure amounts (the "Cure Amounts") to be paid under section 365 of the

Bankruptcy Code, determining whether alleged defaults (if any) exist and evaluating the

Purchaser's ability to provide adequate assurance of future performance (the "Assumption and

Assignment Procedures"), and (v) establishing notice procedures and approving forms of notice;

and upon the (a) Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital

LLC in Support of the Chapter 11 Petitions and First Day Pleadings, pursuant to Local

Bankruptcy Rule 1007-2 (Dkt. No. 6); (b) the Declaration of Samuel M. Greene in Support of the

Proposed Sale of the Debtors' Assets (Dkt. No. 63); (c) the Amended Declaration of Peter

Giamporcaro in Support of the Proposed Sale of the Nationstar Purchased Assets Without a

Privacy Ombudsman (Dkt. No. 189); (d) the Debtors Omnibus Reply to Objection to Sale

Procedures Order (Dkt. No. 373); (e) the Supplemental Declaration of Samuel M. Greene in

Further Support of the Proposed Sale of Debtors' Assets (Dkt. No. 365); and (f) the Declaration

of R. Ted Weschler in Support of the Objection of Berkshire Hathaway Inc. to Debtors' Sale

Motion (Dkt. No. 287); and it appearing that this Court has jurisdiction to consider the Motion

pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases

and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing

that the proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and

sufficient notice of the Motion having been given under the particular circumstances and it

appearing that no further notice need be provided; and two hearings having been held on June

18-19, 2012, to consider the relief requested in the Motion (the "Sale Procedures Hearing"); and

upon the record of the Sale Procedures Hearing, and all of the proceedings before this Court; and

this Court having reviewed the Motion and the objections and responses thereto (the

"Objections") and found and determined that the relief sought in the Motion with respect to the

Sale Procedures as amended and modified as provided in this order is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon;

and sufficient cause appearing therefore, it is FOUND AND DETERMINED THAT:[3]

     A.     The statutory and legal predicates for the relief requested in the Motion are

sections 105, 363, 365, 503, 507 and 1123(a) of the Bankruptcy Code, and rules 2002, 6004,

6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the

Southern District of New York (the "Local Rules").

     B.     The Motion and this Order comply with all applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Guidelines for the Conduct of

Asset Sales established by the Bankruptcy Court on November 18, 2009 pursuant to General

Order M-383.

     C.     The Sale Procedures comply with the requirements of Local Rule 6004-1.

     D.     BH filed an objection to the Motion that sought approval of two separate

stalking-horse offers to purchase the Debtors' Servicing Platform and Legacy Portfolio, thereby

seeking to replace the stalking-horse offers of Nationstar and AFI, respectively.  In connection

with its objection, BH submitted executed asset purchase agreements to purchase the Servicing

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact when appropriate.  See Fed. R. Bankr. P. 7052.

Platform (as subsequently modified on June 18, 2012, the "BH Mortgage APA") and the Legacy Portfolio.

   E.  The BH Legacy APA proposes to purchase the Legacy Portfolio for $50 million more than the purchase price contained in the AFI APA and includes the BH Break-Up Fee.  The BH Legacy APA is designed to maximize the value of the Legacy Portfolio and is, therefore, in the best interests of the bankruptcy estates.

   F.  The Debtors have articulated compelling and sound business justifications for this Court to grant the Sale Procedures Relief, including this Court's (i) approval of BH as the stalking horse bidder for the Legacy Portfolio; (ii) approval of Nationstar as the stalking horse bidder for the Servicing Platform; (iii) approval of payment of the Nationstar Break-Up Fee under the circumstances, timing, and procedures set forth herein, in the Motion, and in the Nationstar APA; (iv) approval of payment of the BH Break-Up Fee under the circumstances, timing, and procedures set forth herein, in the Motion, and in the BH Legacy APA; (v) approval of the Sale Procedures; (vi) scheduling of the Bid Deadline, Auction, and Sale Hearing; (vii) approval of and authorization to serve the Sale Notice and the Assumption and Assignment Notice (each as hereinafter defined); and (viii) approval of and authorization to publish the Sale Notice.

   G.  The Debtors have set a Sale Hearing (as described below), where they will seek authorization of the sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts subject of the APAs free and clear of all liens, encumbrances, and interests to Nationstar and BH, respectively, or such other Successful Bidders as may result from the Auction.

H.     Entry into each of the APAs with Nationstar and BH, respectively, is in the best interests of the Debtors and the Debtors' estates and creditors.  The APAs will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates.  The terms of the Nationstar APA were negotiated by the Debtors and Nationstar in good faith and at arm's length.  The terms of the BH Legacy APA were negotiated by the Debtors and BH in good faith and at arm's length.  For the avoidance of doubt, nothing in this Order or the BH Legacy APA shall be deemed to release or transfer any claims that the Debtors may have against AFI and its affiliates, or that AFI  and its affiliates may have against the Debtors.

I.     The Nationstar APA amends and restates in its entirety the APA by and between certain of the Debtors and Nationstar dated as of May 13, 2012.  The AFI APA was executed by the Debtors before commencing these cases. Sellers' obligation to consummate the closing subject of the AFI APA was subject to Bankruptcy Court approval.  The BH Mortgage APA was only executed by BH.  Neither the BH Mortgage APA nor the AFI APA are approved. The replacement of AFI with BH as the stalking horse bidder for the Legacy Portfolio and the efforts of BH to replace Nationstar as the stalking horse bidder for the Purchased Assets under the Nationstar APA were done in good faith and benefitted the Debtors' estates and their creditors and other stakeholders.

J.     The Break-Up Fees subject of the APAs are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

K.     The Debtors' payment of the Nationstar Break-Up Fee under the conditions set forth in the Nationstar APA was negotiated by the parties in good faith and at arm's length and is (i) an actual and necessary cost of preserving the Debtors' estates within the

meaning of section 503(b) of the Bankruptcy Code; (ii) of substantial benefit to the Debtors'

estates and creditors and all parties in interest; (iii) reasonable and appropriate; and (iv)

necessary to ensure that Nationstar will continue to pursue the proposed Nationstar APA to

undertake the sale of the Purchased Assets subject of the Nationstar APA.  Notwithstanding

anything to the contrary in this or any other order of this Court, the Nationstar Break-Up Fee

shall constitute an allowed administrative expense with priority pursuant to sections 503(b) and

507(a)(2) of the Bankruptcy Code.

       L.    The Debtors' payment of the BH Break-Up Fee to BH under the

conditions set forth in the BH Legacy APA was negotiated by the parties in good faith and at

arm's length and is (i) an actual and necessary cost of preserving the Debtors' estates within the

meaning of section 503(b) of the Bankruptcy Code; (ii) of substantial benefit to the Debtors'

estates and creditors and all parties in interest; (iii) reasonable and appropriate; and (iv)

necessary to ensure that BH will continue to pursue the proposed BH Legacy APA to undertake

the sale of the Purchased Assets subject of the BH Legacy APA.  Notwithstanding anything to

the contrary in this or any other order of this Court, the BH Break-Up Fee shall constitute an

allowed administrative expense with priority pursuant to sections 503(b) and 507(a)(2) of the

Bankruptcy Code.

       M.    The Sale Procedures, a copy of which is annexed hereto as <u>Exhibit 1</u>, are

fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale

of the Purchased Assets subject of the APAs.

       N.    The Notice of Auction and Sale Hearing (the "Sale Notice"), a copy of

which is annexed hereto as <u>Exhibit 2</u>, is reasonably calculated to provide parties in interest with

proper notice of the proposed sale of the Purchased Assets subject of each APA, the Sale

Procedures, the Sale Transactions, the Auction (if necessary), and the Sale Hearing, and no other or further notice is required.

O.      Publication of the Sale Notice is reasonably calculated to provide all unknown creditors and parties not otherwise required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of the proposed sale of the Purchased Assets subject of each APA, the Sale Procedures, the Sales, the Auction (if necessary), and the Sale Hearing, and no other or further notice is required.

P.      The Assumption and Assignment Notice, a copy of which is annexed hereto as Exhibit 3, is reasonably calculated to provide all counterparties to the Assumed Contracts with proper notice of the potential assumption and assignment of their respective executory contracts or Leases, any Cure Amounts relating thereto, and the Assumption and Assignment Procedures.

Q.      Due, sufficient, and adequate notice of the relief requested in the Motion and granted herein has been given to parties in interest and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order (including with respect to the proposed Sale Procedures and the Break-Up Fees) has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

R.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

## The Sale Procedures

1.      The Sale Procedures Relief requested in the Motion is granted to the

extent provided herein and subject to the modifications necessary to substitute BH as the

stalking-horse bidder for the Legacy Portfolio pursuant to the terms of the BH Legacy APA.

2.      The Objections that have not been adjourned, withdrawn, or resolved are

overruled.

3.      The Sale Procedures, attached hereto as <u>Exhibit 1</u>, which are incorporated

herein by reference, are approved and shall govern all bids and sale procedures relating to the

Purchased Assets subject of each APA.  The Debtors are authorized to take any and all actions

necessary or appropriate to implement the Sale Procedures.

4.      This Order and the Sale Procedures shall govern the sale of the Purchased

Assets.

5.      The Limited Objection of Certain Trustees for Residential Mortgage

Backed Securities (Dkt. No. 291) to the Sale Motion and the Joinder of Wells Fargo Bank, N.A.,

as Master Servicer to such limited objection (Dkt. No. 292) (collectively, the "Limited

Objection"), and all of the objections contained therein, are hereby adjourned until July 10, 2012,

and no relief granted in this Order including, without limitation, paragraphs 25, 26, 27, 28 and 31

hereof, shall prejudice any rights of The Bank of New York Mellon Trust Company, N.A.,

Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, U.S. Bank

National Association and Wells Fargo Bank, N.A., in their capacities as trustees, indenture

trustees or master servicers (the "Limited Objectors"), in connection with the prosecution of the

Limited Objection (including, without limitation, the jurisdictional challenge alleged therein) or

the filing of any additional or supplemental objections, declarations, joinders or other pleadings

with respect to the Sale Motion, provided however, that the Limited Objectors agree that none of

them will object to (x) the dates set forth in this Order for (i) the Bid Deadline; (ii) the date and

time of the Auction; or (iii) the deadline to file objections to the Sale Approval Orders (for the

avoidance of doubt, the parties acknowledge that if the Limited Objectors object to the date and

time set for the Sale Hearing and the Court sets a new date for the Sale Hearing, the Court may,

in its discretion, change the deadline to file objections to the Sale Approval Orders) or (y) (i) the

Break-Up Fees or any terms in this Order or the APAs pertaining to the Break-Up Fees; or (ii)

any of the terms contained in the "Bid Requirements" and "Auction" sections of the Sale

Procedures.

       6.     The Limited Objection of The Frost National Bank ("Frost Bank") (Dkt.

286) to the Sale Motion and the specific objections contained therein in paragraphs 12, 13, and

17 (the "Frost Objection") are hereby preserved until the Sale Hearing, and no relief granted in

this Order shall prejudice any rights of Frost Bank, in connection with the prosecution of the

Frost Objection; provided however, that Frost Bank agrees that it will not object to (x) the dates

set forth in this Order for (x) (i) the Bid Deadline; (ii) the date and time of the Auction; or (iii)

the deadline to file objections to the Sale Approval Orders or (y) (i) the Break-Up Fees or any

terms in this Order or the APAs pertaining to the Break-Up Fees; or (ii) any of the terms

contained in the "Bid Requirements" and "Auction" sections of the Sale Procedures.

       7.     The Limited Objection of Digital Lewisville, LLC ("Digital") to the Sale

Motion (Dkt No. 278), and all Digital's objections contained therein pertaining to the assumption

and assignment of unexpired leases, shall, in no way, be affected or impaired by the terms of this

Order or the entry thereof and Digital shall retain all rights to object to the proposed assumption

and assignment of its lease on or prior to the Cure Objection Deadline;  provided however,

that Digital agrees that it will not object to (x) the dates set forth in this Order for (x) (i) the Bid

Deadline; (ii) the date and time of the Auction; or (iii) the deadline to file objections to the Sale

Approval Orders or (y) (i) the Break-Up Fees or any terms in this Order or the APAs pertaining

to the Break-Up Fees; or (ii) any of the terms contained in the "Bid Requirements" and

"Auction" sections of the Sale Procedures.

8.     Notwithstanding anything set forth in the Sale Procedures to the contrary,

each of (i) the right of any Qualified Bidder that holds a lien on any of the Purchased Assets to

submit a credit bid as part of its Bid Proposal, and (ii) the right of the Debtors to seek a further

order of the Court denying such Qualified Bidder the rights to credit bid "for cause" pursuant to

section 363(k) of the Bankruptcy Code, are hereby expressly reserved; provided that U.S. Bank

National Association, in its capacity as Indenture Trustee (the "Indenture Trustee") with respect

to certain 9.625% Junior Secured Guaranteed Notes Due 2015 (the "Junior Secured Notes"),

shall be required to provide notice to the Debtors by July 31, 2012 regarding whether it has

received direction to credit bid all outstanding debt under the Junior Secured Notes in respect of

any Bid Proposal. If the Indenture Trustee fails to provide such notice by July 31, 2012 (unless

such date is waived or extended by the Debtors and Nationstar, in consultation with the

Creditors' Committee), credit bidding rights are waived. In the event (i) a majority of the

Consenting Holders direct the Indenture Trustee to preserve credit bidding rights by July 31,

2012; or (ii) the Indenture Trustee has not received such a direction by July 31, 2012 (unless

such date is waived or extended by the Debtors and Nationstar, in consultation with the

Creditors' Committee) and the Indenture Trustee does not agree in the notice it gives to the

Debtors to waive credit bidding rights, the Debtors reserve their rights to request a hearing before

the Bankruptcy Court to determine the credit bidding issue.

9.      Furthermore, the Debtors and the Indenture Trustee have agreed that upon either (i) the giving of notice of no direction; (ii) the waiving of credit bidding rights by failing to give notice by July 31, 2012 (or any extended date agreed to by the Debtors and Nationstar, in consultation with the Creditors' Committee); or (iii) a final order of the Court denying credit bidding rights, the Indenture Trustee shall be deemed to be a consultation party to the same extent as the Creditors' Committee pursuant to the Sale Procedures; provided that the Indenture Trustee will not, without the written consent of the Debtors (such consent not to be unreasonably withheld), share or disclose information regarding any Bid Proposal with any holder of the Junior Secured Notes.

10.      The Sale Procedures shall apply to (i) except as otherwise provided in the Sale Procedures or the respective APAs, Nationstar and BH, respectively; (ii) Potential Bidders and Qualified Bidders; (iii) the conduct of the Sales; and (iv) the Auction.

11.      Each of Nationstar and BH, respectively, shall constitute a Qualified Bidder for all purposes and in all respects regarding the Sale Procedures.

12.      In light of the extensive prepetition negotiations culminating in the Nationstar APA in addition to Nationstar's payment of the Nationstar Deposit, Nationstar is excused from submitting an additional deposit.  The Nationstar Deposit shall be deemed Nationstar's Good Faith Deposit (as defined in the Sale Procedures) for all purposes under the Sale Procedures.

13.      BH shall be excused from submitting a Good Faith Deposit (as defined in the Sale Procedures) required of Qualified Bidders in light of the negotiations culminating in the BH Legacy APA.

14.    The deadline for submitting a Qualified Bid shall be October 19, 2012 at
5:00 p.m. (Eastern Time) (the "Bid Deadline"), as further described in the Sale Procedures.

**The Break-Up Fees**

15.    The Debtors are authorized and directed to pay the Nationstar Break-Up
Fee (of which 9.77% is allocable to the Ginnie Mae MSRs and 90.23% is allocable to the
remaining Nationstar Purchased Assets) under the terms set forth in the Nationstar APA, without
the need for any application, motion, or further order of this Court.

16.    The Debtors' obligations to pay the Nationstar Break-Up Fee in
accordance with the terms of the Nationstar APA, shall survive termination of the Nationstar
APA, shall constitute allowed administrative expense claims against each Debtors' estates, shall
be entitled to priority under sections 503(b)(1)(A) and 507(a)of the Bankruptcy Code, and shall,
to the extent not already paid in full, be (i) fully payable from proceeds of the Successful Bid
upon closing or (ii) payable from proceeds of any deposit forfeited to the Debtors in the event
that the Successful Bid does not close or otherwise by the Debtors if any such deposit is
insufficient.

17.    The Debtors are authorized and directed to pay to BH the BH Break-Up
Fee under the terms set forth in the BH Legacy APA, without the need for any application,
motion, or further order of this Court.

18.    The Debtors' obligations to pay the BH Break-Up Fee in accordance with
the terms of the BH Legacy APA, shall survive termination of the BH Legacy APA, shall
constitute allowed administrative expense claims against each Debtors' estates, shall be entitled
to priority under sections 503(b)(1)(A) and 507(a)of the Bankruptcy Code, and shall, to the
extent not already paid in full, be (i) fully payable from proceeds of the Successful Bid upon

closing or (ii) payable from proceeds of any deposit forfeited to the Debtors in the event that the Successful Bid does not close or otherwise by the Debtors if any such deposit is insufficient.

**Notice Procedures**

19.     The Assumption and Assignment Notice is sufficient to provide effective notice of the assumption and assignment of the Assumed Contracts and Cure Amounts to all non-debtor parties to the Assumed Contracts, any known third party beneficiaries to such Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any other parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, Servicing Agreements, subservicing agreements or similar agreements, pursuant to Bankruptcy Rules 2002 and 6006, and are hereby approved.

20.     The Sale Notice and the Publications Notice are sufficient to provide effective notice to all interested parties of the Sale Procedures, the Auction (if any), and the Sale Transactions, pursuant to Bankruptcy Rules 2002(a)(2) and 6004, and are hereby approved.

21.     The notices described in subparagraphs (a)-(d) below are approved and shall be good and sufficient, and no other or further notice shall be required if given as follows:

(a)     The Debtors (or their agent) serve, within three (3) days after entry of this Order (the "Mailing Deadline"), by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, a copy of this Order and the Notice of Auction and Sale Hearing upon: (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for ResCap's prepetition secured credit facilities, (iv) the attorneys for the agent under the Debtors' prepetition amended and restated secured revolving credit agreement, (v) the attorneys for the Creditors' Committee, (vi) the attorneys for the ad hoc bondholders' committee, (vii) the attorneys for the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Government National Mortgage Association, (viii) any party who, in the past year, expressed in writing to the Debtors an interest in the Purchased Assets and who the Debtors and their representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transaction contemplated in the APA,

13

(ix) each non-debtor counterparty to the Assumed Contracts, any known third party beneficiaries to such Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, Servicing Agreements, subservicing agreements or similar agreements; (x) all parties who are known to have asserted or believed by Debtors to hold any lien, claim, encumbrance, or interest in or on the Purchased Assets, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all applicable state attorneys' general, and local authorities, (xiv) all applicable state and local taxing authorities, (xv) the Federal Trade Commission, (xvi) the United States Department of Justice, (xvii) the United States Attorney's Office, (xviii) the office of the New York Attorney General; and (xix) all entities that requested notice in these Chapter 11 cases under Bankruptcy Rule 2002; and

(b)     On or before the Mailing Deadline, the Debtors (or their agent) serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, the Sale Notice, substantially in the form annexed hereto as Exhibit 2, upon any other known creditors and interestholders.

(c)     On the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall cause the Sale Notice, substantially in the form annexed hereto as Exhibit 2, to be published (i) once (a) in the global edition of *The Wall Street Journal* and (b) the national edition of *The New York Times*, and (ii) on the website of the Debtors' proposed claims and noticing agent Kurtzman Carson Consultants, LLC at http://www.kccllc.net.

(d)     On or before July 25, 2012 the Debtors shall file a schedule (the "Schedule") of contracts that Nationstar has designated to be assumed and assigned (the "Assumed Contracts"), including the cure amounts relating to such Assumed Contracts (the "Cure Amount"), and serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, a notice of the assumption and assignment of the Assumed Contracts and the proposed Cure Amounts relating to the Assumed Contracts (the "Assumption and Assignment Notice"), substantially in the form annexed hereto as Exhibit 3, upon (i) each counterparty to the Assumed Contracts (including the Servicing Agreements); (ii) any known third party beneficiaries to such Assumed Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, Servicing Agreements, subservicing agreements or similar agreements and (iii) all trustees that are parties to the Pooling and Servicing Agreements.  In addition, Debtors will use their commercially reasonable efforts to identify and provide notice of the terms of the proposed assumption and assignment of the relevant Assumed Contracts to investors and certificateholders.

14

22.    Subject to certain exceptions expressly provided for in the Nationstar

APA, Nationstar shall be entitled to remove any Assumed Contract from the relevant Schedule

until two business days prior to the Closing Date, in which case the contract or lease shall cease

to be an Assumed Contract.  The counterparty to such removed Assumed Contract shall be

furnished promptly with notice of such removal.

**Objection Deadlines**

23.    Any party that seeks to object to the relief requested in the Motion

pertaining to approval of the Sales shall file a formal objection that complies with the objection

procedures as set forth in the Motion.  Each objection shall state the legal and factual basis of

such objection.

24.    Any and all objections as contemplated by this Order must be: (i) in

writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the

Bankruptcy Rules, the Local Rules, and the Order Under Bankruptcy Code Sections 102(2),

105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule

2002-2 Establishing Certain Notice, Case Management and Administrative Procedures (the

"CMO"); (iv) filed with the Bankruptcy Court; and (v) served on (a) the Debtors; (b) Morrison &

Foerster LLP, proposed counsel to the Debtors; (c) Sidley Austin LLP, counsel to Nationstar;

(d) Kirkland & Ellis LLP, counsel to AFI; (e) Kramer Levin Naftalis & Frankel LLP, proposed

counsel to the Creditors' Committee; (f) Munger, Tolles & Olson LLP, counsel to BH; (g) the

Notice Parties in accordance with the CMO (the "Objection Notice Parties") so as to be received

on or before the appropriate deadline as set forth below.

25.    The deadline for objecting to approval of any Cure Amounts (a "Cure

Objection") shall be September 28, 2012, at 5:00 p.m. (Eastern Time) (the "Cure Objection

Deadline").  The deadline for objecting to the assumption by the Debtors and assignment to

Nationstar or BH, as the case may be, of an Assumed Contract (an "Assignment Objection")

shall be September 28, 2012, at 5:00 p.m. (Eastern Time) provided, however, that in the event

the Sale Procedures result in a Successful Bidder other than Nationstar (in respect of the

Nationstar Purchased Assets) or BH (in respect of the BH Purchased Assets), the deadline for an

Assignment Objection shall be at the Sale Hearing.  The deadline for objecting to approval of the

Sale Transactions, including the sale of the Purchased Assets free and clear of liens, claims,

encumbrances, and interests (including rights or claims based on any successor or transferee

liability) shall be **October 29, 2012, at 5:00 p.m.** (Eastern Time).

26.     Failure to object to the relief requested in the Motion shall be deemed to

be "consent" for purposes of section 363(f) of the Bankruptcy Code and shall be a bar to the

assertion, at the Sale Hearing or thereafter, of any objection to the Motion, and to the

consummation and performance of the Sale Transactions contemplated by the APAs (including

the transfer free and clear of all liens, claims, encumbrances, and interests, including rights or

claims based on any successor or transferee liability, of each of the Purchased Assets transferred

as part of the Sale Transactions).

27.     If a timely objection is raised either to the proposed assumption and

assignment of an Assumed Contract or to the proposed Cure Amount (a "Contract Objection"),

(i) the Debtors; (ii) with respect to assumption and assignment of an Assumed Contract in

connection with the Servicing Platform, Nationstar (or other Successful Bidder for the Servicing

Platform, as applicable) or with respect to assumption and assignment of an Assumed Contract in

connection with the Legacy Portfolio, BH (or other Successful Bidder for the Legacy Portfolio,

as applicable); (iii) the Creditors' Committee; and (iv) the objecting party (the "Necessary

Parties") may meet and confer in good faith to attempt to resolve any such objection without

Court intervention. If the Necessary Parties resolve any Contract Objection, they may enter into

a written stipulation, which stipulation is not required to be filed with or approved by the

Court. If a Contract Objection cannot be consensually resolved, it shall be heard by the Court

either at the Sale Hearing or such other date as determined by the Court (such other date being no

later than the Sale Hearing).

28.     Any Contract Objection that challenges a Cure Amount, or otherwise

asserts that there exist outstanding defaults under an Assumed Contract, must set forth with

specificity the Cure Amount being claimed by the objecting party or the nature of the asserted

default, as applicable, and must include appropriate documentation in support thereof

satisfactory to the Debtors and Nationstar or BH, as applicable. If no objection to the Cure

Amount or the proposed assumption and assignment of an Assumed Contract is timely filed and

served, the pertinent Debtor may assume and assign the Assumed Contract to Nationstar or BH

(or, alternatively, to the Successful Bidder for the applicable Purchased Assets), and the Cure

Amount set forth in the Assumption and Assignment Notice shall be binding upon all non-debtor

parties to the Assumed Contracts, any known third party beneficiaries to such Assumed

Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any

parties to any pooling and servicing agreements, assignment, assumption and recognition

agreements, Servicing Agreements, subservicing agreements or similar agreements (collectively,

the "Assumption Notice Parties"), for all purposes in such Debtor's Chapter 11 case. The

respective Assumption Notice Parties shall be forever barred from (i) objecting to the assumption

and assignment of the relevant Assumed Contract and/or Cure Amount, and (ii) asserting at any

time any condition to assignment, default, claims, obligations or breach and/or any additional

cure, damage or other amount with respect to the respective Assumed Contract on the basis of

events of any kind of nature occurring or arising prior to the Closing Date, whether such events

constituted acts or omissions by the Debtors or other person and regardless of whether such

events are known or unknown, including, without limitation, claims or liabilities relating to any

act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date,

and any indemnification obligations, claims or liabilities relating to any act or omission of the

Sellers or any other person prior to the Closing Date.

29.    All Assumed Contracts will be assumed and assigned to Nationstar or BH

on the Closing Date of the Nationstar APA or BH Legacy APA, as applicable, except as may be

otherwise set forth therein or agreed between the Debtors and Nationstar or BH, as applicable.

30.    The Court shall conduct the Sale Hearing on **November 5, 2012 at

10:00 a.m.** (Eastern Time), at which time the Court will consider approval of the Sale

Transactions to the Successful Bidder.

31.    The Sale Hearing may be adjourned or rescheduled without further notice

by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing

agenda.

### **Other Relief Granted**

32.    In the event the Debtors receive, on or before the Bid Deadline, one or

more Qualified Bids in addition to the Nationstar or BH bids, the Debtors will conduct an

Auction, commencing at **10:00 a.m. (Eastern Time) on October 23, 2012** at the offices of

Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104, or such

later time on such date or other location as shall be timely communicated in accordance with the

Sale Procedures.

33.     If (i) no Qualified Bids with respect to the Nationstar Purchased Assets other than Nationstar's Qualified Bid are timely received or (ii) the Debtors only timely receive Qualified Bids for the Ginnie Mae MSRs and do not timely receive a Qualified Bid for the remaining Nationstar Purchased Assets other than Nationstar's Qualified Bid, the Debtors shall not conduct the Auction with respect to such Nationstar Purchased Assets for which no Qualified Bids were received (other than Nationstar's Qualified Bid), and instead shall seek approval of the sale of the relevant Nationstar Purchased Assets to Nationstar pursuant to the provisions of the Nationstar APA at the Sale Hearing.

34.     If no Qualified Bids with respect to the BH Purchased Assets under the BH Legacy APA other than BH's Qualified Bid are timely received, the Debtors shall not conduct the Auction with respect to such BH Purchased Assets under the BH Legacy APA for which no Qualified Bids were received (other than BH's Qualified Bid), and instead shall seek approval of the sale of the relevant BH Purchased Assets to BH pursuant to the provisions of the BH Legacy APA at the Sale Hearing.

35.     The Debtors are authorized to conduct the Sale Transactions without the necessity of complying with any state or local bulk transfer laws or requirements.

36.     In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

37.     Notwithstanding any possible applicability of Bankruptcy Rules 6004 or 6006, or otherwise, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.  For the avoidance of doubt, the Break-Up Fee approved by this Order shall be immediately appealable and failure to appeal in accordance with the Bankruptcy Rules or other applicable law shall constitute a waiver of such rights.

38.     The Sales do not alter the provisions of section 363(o) of the Bankruptcy
Code.

39.     Subject to the provisions of this Order governing payment of the Break-
Up Fee, all net proceeds from the consummation of the Sale Transactions or a Competing
Transaction (as defined in the APAs) shall be treated in accordance with the terms of the
Debtors' postpetition secured debtor-in-possession financing (the "DIP Financing") and any
order of this Court approving the DIP Financing.

40.     With the exception of this Order's provisions pertaining to the Break-Up
Fee, to the extent that any inconsistency exists between this Order and the terms of the DIP
Financing or any order of this Court approving such DIP Financing, the terms of the DIP
Financing and the order approving the same shall control.

41.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

42.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

43.     Notwithstanding anything herein to the contrary, this Order shall not
modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board
of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among
AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal
Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment
entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,
(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the
Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related
agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

44.     Notwithstanding anything contained herein to the contrary, and otherwise in accordance with the terms and conditions set forth herein, the Debtors may, with the consent of Nationstar or the Successful Bidder for the Nationstar Purchased Assets (such consent to be given in the sole discretion of Nationstar or the Successful Bidder as applicable) and the consent of the Committee in connection with the Nationstar Purchased Assets seek Bankruptcy Court approval of the Nationstar APA under section 1123 of the Bankruptcy Code (the "Plan Sale"); provided, however, that in the event the Committee  does  not consent (and Nationstar or the Successful Bidder, as applicable, has consented), the Debtors may seek approval to proceed with the Plan Sale in the Bankruptcy Court.

45.     The Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: June 28, 2012
       New York, New York

                                    _____**/s/Martin Glenn**_____
                                          MARTIN GLENN
                                    United States Bankruptcy Judge

<u>**EXHIBIT 1**</u>

**SALE PROCEDURES**

## SALE PROCEDURES

By the motion dated May 14, 2012 (the "Motion"), Residential Capital LLC ("ResCap") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"), requested, among other things, approval of the process and procedures through which it will determine the highest or otherwise best price for the purchase of certain assets (collectively, the "Purchased Assets") of the Debtors under two separate asset purchase agreements, each as described below.  On June 28, 2012, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Procedures Order"),[1] which, among other things, authorized the Debtors to determine the highest or otherwise best price for the Purchased Assets through the process and procedures set forth below (the "Sale Procedures").

On November 5, 2012, as further described below, in the Motion, and in the Sale Procedures Order, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing"), at which the Debtors shall seek entry of orders (each, a "Sale Order") authorizing and approving the sale of the Purchased Assets (the "Sale Transactions") pursuant to (i) that certain Asset Purchase Agreement (the "Nationstar APA") between certain of the Debtors and Nationstar Mortgage LLC ("Nationstar"), providing for the sale of certain assets as identified therein (the "Nationstar Purchased Assets") (Dkt. No. 534), subject to the submission of higher or better offers in an auction process (the "Auction"); and (ii) that certain Asset Purchase Agreement (the "BH Legacy APA", together with the Nationstar APA, the "APAs") between certain of the Debtors and Berkshire Hathaway Inc. ("BH"), providing for the sale of certain assets identified therein (the "BH Purchased Assets") (Dkt. No. 535), subject to the submission of higher or better offers in an Auction.  The Sale Hearing may be conducted in connection and in accordance with a hearing to consider confirmation of a plan of reorganization proposed in these Chapter 11 cases by the Debtors.

## Participation Requirements

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in purchasing the Purchased Assets (a "Potential Bidder") must first deliver the following materials to the Debtors, c/o Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Gary S. Lee and Larren M. Nashelsky), Centerview Partners, 31 West 52nd Street, New York, NY 10019 (Attn: Samuel M. Greene and Marc D. Puntus), and the Creditors' Committee, c/o Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, N Y 10036 (Attn: Kenneth H. Eckstein (keckstein@kramerlevin.com) and Douglas H. Mannal (dmannal@kramerlevin.com) and Moelis & Company, 399 Park Ave, 5th Floor, New York, NY 10022 (Attn: Jared Dermont (jared.dermont@moelis.com) and Syed Hasan (syed.hasan@moelis.com):

(i)    An executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors; and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion and the Sale Procedures Order, as applicable.

(ii)    Evidence of corporate authority to commit to the Sale Transaction(s), including the most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of the Sale Transaction(s), (a) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors, and (b) a written commitment acceptable to the Debtors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the Sale Transaction(s).

A "Qualified Bidder" is a Potential Bidder whose Financials (or the Financials of its equity holder(s), if applicable) demonstrate the financial capability to consummate the Sale Transaction(s), whose bid meets all of the Bid Requirements described below *and* that the Debtors, in their discretion, and in consultation with the Creditors' Committee determine is likely to consummate the Sale Transaction(s), if selected as the Successful Bidder, after taking into account all relevant legal, regulatory, and business considerations.

## Obtaining Due Diligence Access

The Debtors shall afford Qualified Bidders reasonable due diligence, including the ability to access information from a confidential electronic data room concerning the Purchased Assets (the "Data Room").

Neither the Debtors nor any of their affiliates (or any of their respective representatives) are obligated to furnish any information relating to the Sellers subject of the APAs, the Purchased Assets, and/or the Sale Transactions to any person except to Nationstar and BH, respectively, or another Qualified Bidder.  The Debtors shall promptly give Nationstar and BH, respectively, any confidential memoranda (the "Confidential Memoranda") containing information and financial data and any other relevant materials or information that Nationstar or BH, as applicable, may reasonably request with respect to the Purchased Assets and access to all due diligence information provided to any other Qualified Bidder.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  If the Debtors determine that due diligence material requested by such Qualified Bidder is reasonable and appropriate under the circumstances, but such material has not previously been provided to any other Qualified Bidder, the Debtors shall post such materials in the Data Room and provide notification of such posting by electronic transmission to such Qualified Bidders, the Creditors' Committee and Nationstar and BH, respectively.

Unless the Debtors determine otherwise, the availability of additional due diligence to a Qualified Bidder will cease after the Bid Deadline (as defined below).

2

## Bid Deadline

**The deadline for submitting Bid Packages (as defined below) by a Qualified Bidder shall be October 19th, 2012, at 5:00 p.m. (Eastern Time) (the "Bid Deadline").**

On or prior to the Bid Deadline, a Qualified Bidder that desires to make a bid shall deliver (i) one written copy of its bid (a "Bid Proposal"); (ii) a copy of such bidder's proposed APA(s) that has been marked to show amendments and modifications to the Nationstar APA and/or the BH Legacy APA, as applicable, including price and terms, and with respect to which the Qualified Bidder agrees to be bound (each a "Marked Agreement"); and (iii) a list of executory contracts and leases that the Qualified Bidder intends to assume (the "Proposed Assumption Contracts" and together with a Bid Proposal and a Marked Agreement, a "Bid Package") to the Debtors, c/o Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Gary S. Lee (glee@mofo.com) and Larren M. Nashelsky (lnashelsky@mofo.com), Centerview Partners, 31 West 52nd Street, New York, NY 10019 (Attn: Samuel M. Greene (sgreene@centerviewpartners.com) and Marc Puntus (mpuntus@centerviewpartners.com), and the Creditors' Committee, c/o Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Kenneth H. Eckstein (keckstein@kramerlevin.com) and Douglas H. Mannal(dmannal@kramerlevin.com) and Moelis & Company, 399 Park Ave, 5th Floor, New York, NY 10022 (Attn: Jared Dermont (jared.dermont@moelis.com) and Syed Hasan (syed.hasan@moelis.com).

On the Bid Deadline, the Debtors will provide copies of the Bid Packages to counsel to the Creditors' Committee, Nationstar (with respect to the Nationstar Purchased Assets), and BH (with respect to the BH Purchased Assets).

A Qualified Bidder may submit Bid Proposals and Bid Packages for the Nationstar Purchased Assets and/or the BH Purchased Assets; provided, however, that a Qualified Bidder that bids on both the Nationstar Purchased Assets and the BH Purchased Assets must provide separate Bid Proposals for the Nationstar Purchased Assets and the BH Purchased Assets.  The Debtors will consider Qualified Bids for all of the Nationstar Purchased Assets or for only the Ginnie Mae MSRs (as defined in the Nationstar APA); provided that to the extent a Qualified Bidder seeks to bid only on the Ginnie Mae MSRs, such bid must also be provided separately.  Under no other circumstances may a Qualified Bidder submit separate bids for any portion of the Nationstar Purchased Assets (other than in respect of the Ginnie Mae MSRs) or the BH Purchased Assets.  Only bulk bids for these assets will be deemed Qualified Bids (as defined below) provided the other requirements are met.

## Due Diligence from Bidders

The Debtors and their advisors shall be entitled to due diligence from a Qualified Bidder, upon execution of a confidentiality agreement that is reasonably satisfactory to the Debtors.  Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors.  The Debtors shall promptly provide copies of any information received from a Qualified Bidder to the Creditors'

Committee.  Failure of a Qualified Bidder to fully comply with requests for additional
information and due diligence access will be a basis for the Debtors to determine that a bid made
by the Qualified Bidder is not a Qualified Bid.

## Bid Requirements

A Bid Proposal must be a written irrevocable offer from a Qualified Bidder
(i) stating that the Qualified Bidder offers to consummate a Sale Transaction pursuant to the
Marked Agreement(s), (ii) confirming that the offer shall remain open until the closing of a
Sale Transaction to the Successful Bidder (as defined below), (iii) enclosing a copy of the
Marked Agreement(s) and Proposed Assumption Contracts, and (iv)(A) in the case of the
Nationstar APA, including a certified or bank check, or wire transfer, in the amount of
$72 million (of which $7,034,400 shall apply only to the Ginnie Mae MSRs) to be held in
escrow as a "Good Faith Deposit"; (B) in the case of the BH Legacy APA including a certified or
bank check, or wire transfer, in the amount of $25 million to be held in escrow as a Good Faith
Deposit.  Nationstar has made a deposit in the amount of $72 million in connection with its
execution of the Nationstar APA, which shall be deemed to be its Good Faith Deposit for all
purposes under these Sale Procedures.

All Good Faith Deposits will be non-refundable if the Qualified Bidder is selected
as the Successful Bidder and fails to consummate the Sale Transaction (other than as a result of a
breach by the respective Sellers under the APAs) and refundable if it is not selected as the
Successful Bidder (other than as a result of its own breach).

In addition to the foregoing requirements, a Bid Proposal or Bid Proposals must:

(i)     not be conditioned on the outcome of unperformed due diligence by the
bidder;

(ii)    not request or entitle the bidder to any breakup fee, expense
reimbursement, or similar type of payment;

(iii)   fully disclose the identity of each entity that will be bidding for the
Purchased Assets or otherwise participating in connection with such bid,
and the complete terms of any such participation;

(iv)    for a Bid Proposal on all of the BH Purchased Assets provide
consideration solely in the form of cash;

(v)     for a Bid Proposal on the Nationstar Purchased Assets, except as provided
in subclause (vi) below, provide consideration for the Purchased Assets
solely in the form of cash;

(vi)    for a Bid Proposal on the Nationstar Purchased Assets provide
consideration for the Purchased Assets in cash and seller debt financing
excluding credit bidding ("Seller Financing") if, prior to or

4

contemporaneous with the submission of such bid, the Debtors, in
consultation with the Creditors' Committee, have permitted Nationstar to
modify the APA to substitute Seller Financing, on terms identical to those
contained in such bid, for cash consideration on a dollar for dollar basis;
and

(a) for a Bid Proposal on all of the Nationstar Purchased Assets, provide
for the aggregate cash and Seller Financing (if any) portions of such
bid being at least equal to the sum of (1) the cash portion of the
consideration provided for in the Nationstar APA, plus (2) the Seller
Financing portion (if any) of the consideration provided for in the
Nationstar APA following a permitted amendment under subclause
(vi) above, plus (3) the amount of the Break-Up Fee, plus (4) an
amount of cash equal to $5 million; or

(b) for a Bid Proposal on only the Ginnie Mae MSRs, provide for the
aggregate cash and Seller Financing (if any) portions of such bid being
at least equal to the sum of (1) the cash portion of the consideration
provided for in the Nationstar APA for the Ginnie Mae MSRs, plus
(2) the Seller Financing portion (if any) of the consideration provided
for in the Nationstar APA following a permitted amendment under
subclause (vi) above, plus (3) the proportional amount of the Break-Up
Fee allocable to the Ginnie Mae MSRs based upon the allocation of
the Purchase Price (as defined in the Nationstar APA) between the
Ginnie Mae MSRs and the other Nationstar Purchased Assets, plus
(4) an amount of cash equal to $2 million.

(vii)    for a Bid Proposal on the BH Purchased Assets, provide for the aggregate
cash portion of such bid being at least equal to the sum of (1) the cash
portion of the consideration provided for in the BH Legacy APA, plus
(2) the amount of the BH Break-Up Fee, plus (3) an amount of cash equal
to $5 million.

A timely Bid Proposal received from a Qualified Bidder and that meets the
requirements set forth above (collectively, the "Bid Requirements") will be considered a
Qualified Bid if the Debtors and their advisors, in consultation with the Creditors' Committee,
reasonably believe that such bid would be consummated if selected as the Successful Bid (as
defined below).  For all purposes hereof, Nationstar's and BH's respective offers to acquire the
Purchased Assets in accordance with each of the APAs, shall each constitute a Qualified Bid.
The Debtors shall notify Nationstar promptly after qualifying any bidder as a Qualified Bidder or
receiving any Qualified Bids for the Nationstar Purchased Assets or the Ginnie Mae MSRs.  The
Debtors shall notify BH promptly after qualifying any bidder as a Qualified Bidder or receiving
any Qualified Bids for the BH Purchased Assets.

5

## Auction

In the event that, on or before the Bid Deadline, the Debtors receive one or more Qualified Bid Packages, the Debtors will conduct one or more separate auctions in accordance with the following procedures upon notice to all Qualified Bidders. The Auction will commence at 10:00 a.m., Eastern Time, on October 23, 2012, at the offices of Morrison & Foerster LLP, 1290 Avenue of the America, New York, NY 10104 or such later time on such date or other place as the Debtors shall timely notify Nationstar, BH, all other Qualified Bidders and the Notice Parties. The Auction shall conclude within five (5) business days following the Bid Deadline. If (a) no Qualified Bids with respect to the Nationstar Purchased Assets other than Nationstar's Qualified Bid are timely received or (b) the Debtors only timely receive Qualified Bids for the Ginnie Mae MSRs and do not timely receive a Qualified Bid for the remaining Nationstar Purchased Assets other than Nationstar's Qualified Bid, no auction will be held with respect to such Nationstar Purchased Assets for which no Qualified Bids were received (other than Nationstar's Qualified Bid), and the Debtors will request that the Bankruptcy Court enter a Sale Order approving the sale of the relevant Nationstar Assets to Nationstar pursuant to the Nationstar APA. If no Qualified Bids with respect to the BH Purchased Assets other than BH's Qualified Bid are timely received, no auction will be held with respect to such assets for which no Qualified Bids were received (other than BH's Qualified Bid), and the Debtors will request that the Bankruptcy Court enter a Sale Order approving the sale of the BH Purchased Assets to BH pursuant to the BH Legacy APA.

Unless the Debtors otherwise determine, only the Debtors, Nationstar (in the case of the Nationstar APA), and BH (in the case of the BH Legacy APA), a representative of each of the Creditors' Committee, each of the Limited Objectors, and any Qualified Bidder (and the legal and financial advisors to each of the foregoing), will be entitled to attend the Auction, and only Nationstar and BH, respectively, and Qualified Bidders will be entitled to make any subsequent bids at the Auction.

The Debtors may, in consultation with the Creditors' Committee, employ and announce at the Auction additional procedural rules that they determine appropriate under the circumstances for conducting the Auction, provided that such rules (i) are not inconsistent with the Sale Procedures Order, the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court entered in connection herewith; (ii) are disclosed to each Qualified Bidder; and (iii) do not provide any Qualified Bidder with more favorable treatment than that afforded to Nationstar or BH.

Each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale Transaction(s).

Bidding at the Auction for the Nationstar Purchased Assets and the BH Purchased Assets will begin with the Qualified Bid selected and announced by the Debtors (after consultation with the Creditors' Committee) (the "Starting Bid") and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid

6

(a "Subsequent Bid"), and (ii) the Debtors determine, in consultation with the Creditors' Committee, that such Subsequent Bid is (a) for the first round, a higher or otherwise better offer than the Starting Bid, and (b) for subsequent rounds, a higher or otherwise better offer than the leading bid.  In the case of the Nationstar Purchased Assets, for purposes of determining whether a Subsequent Bid is a higher or otherwise better offer, the BH Purchased Assets shall be excluded.

With respect to all of the Nationstar Purchased Assets (including the Ginnie Mae MSRs), the initial minimum bid increment at the Auction shall be $5 million, and cannot be reduced or increased without the consent of Nationstar and the Creditors' Committee.  To the extent applicable, and only for the Ginnie Mae MSRs, the initial minimum bid increment at the Auction shall be $2 million, and cannot be reduced or increased without the consent of Nationstar.  With respect to the BH Purchased Assets, the initial minimum bid increment at the Auction shall be $5 million, and cannot be reduced or increased without the consent of BH and the Creditors' Committee.  Thereafter, in each circumstance, minimum bid increments at the Auction shall be determined by the Debtors in consultation with the Creditors' Committee.

For purposes of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Nationstar or BH), the Debtors will give Nationstar and BH a credit equal to the sum of their respective Break-Up Fees.  To the extent the Ginnie Mae MSRs may be sold under a separate auction process, the Nationstar Break-Up Fee may be proportionally allocated between the Ginnie Mae MSRs and the other assets subject of the Nationstar APA based on the allocation of the Purchase Price (as such term is defined in the Nationstar APA) between the Ginnie Mae MSRs and the other assets subject of the Nationstar APA.

No additional bids may be considered after the Auction is closed.

Following any Auction, the Debtors, in consultation with the Creditors' Committee, shall determine the highest or best bid (the "Successful Bid") and the bidder with respect thereto, the ("Successful Bidder").  The next highest bidder after the Successful Bidder shall be deemed the ("Next-Highest Bidder").  The Next-Highest Bidder shall be required to hold open its bid until the closing of the sale to the Successful Bidder (the "Back-Up Bid Release Date"); provided, however, that the terms of the Nationstar APA and the BH Legacy APA shall apply in all respects with respect to the period of time Nationstar and BH, respectively are required to hold their bids open.

## Acceptance of Qualified Bids

The Debtors shall present the Successful Bid to the Bankruptcy Court at the Sale Hearing.  At the Sale Hearing, certain findings will be sought from the Bankruptcy Court, including that (i) the Successful Bidder was selected in accordance with these Sale Procedures, and (ii) consummation of the Sale Transactions as contemplated by the Successful Bid will provide the highest or otherwise best result and is in the best interests of the Sellers and their estates in these Chapter 11 cases.

In the event that, for any reason, the Successful Bidder fails to close the relevant Sale Transaction contemplated by its Successful Bid, then, without notice to any other party or further Bankruptcy Court order, the Debtors shall be authorized to close with the Next-Highest Bidder.

## Return of Good Faith Deposit

Except as otherwise provided in this paragraph with respect to the Successful Bidder and the Next-Highest Bidder, the Good Faith Deposits of all Qualified Bidders required to submit such a deposit under the Sale Procedures shall be returned upon or within two (2) business days after entry of the Sale Order.  The Good Faith Deposit of the Successful Bidder shall be held until the closing of the Sale Transaction and applied in accordance with the Successful Bid.  The Good Faith Deposit of the Next-Highest Bidder shall be retained in escrow until the Back-Up Bid Release Date and returned to the Next-Highest Bidder within two (2) business days of such date.  Until the return of the Good Faith Deposit in accordance with the above, the Debtors shall hold such deposits in an interest-bearing escrow account.  If the closing does not occur, the disposition of Good Faith Deposits shall be as provided in the Successful Bid and Next-Highest Bidder Bid, as applicable.  The Nationstar APA (including any escrow agreement entered into in connection therewith) shall apply in all respects to the application or return of the Good Faith Deposit of Nationstar and the provisions of this paragraph shall not apply.

## Modification of Sale Procedures

The Debtors may modify any non-material provision of the Sale Procedures with the consent of the Creditors' Committee, BH, and Nationstar or by order of the Court.