Wendy Alison Nora                                             Hearing Date: July 10, 2012
ACCESS LEGAL SERVICE                                          Hearing Time: 10:00 a.m.
210 Second Street NE
Minneapolis, Minnesota 55413
Telephone: (612) 333-4144
Facsimile: (612) 886-2444

Robert N. Michaelson
The Michaelson Law Firm
11 Broadway, Suite 615
New York, New York 10004
Telephone: 212.604.0685
Facsimile: 800.364.1291

*Counsel to Wendy Alison Nora*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
In re

Residential Capital, LLC *et al.*,                            Chapter 11

                                                              Case No. 12-12020 (MG)
.
                                      Debtors.                Administratively Consolidated


-------------------------------------------------------------------X

**OMNIBUS OBJECTION TO ENTRY OF FINAL ORDERS WHICH AUTHORIZE THE CONTINUATION OF THE OPERATIONS OF A RACKETEERING ENTERPRISE**

Wendy Alison Nora ("Claimant"), a contingent claimant in litigation, holding a claim in excess of Ten Billion Dollars US ($10,000,000,000.00 US) represented by an action pending in the United States District Court for the Western District of Wisconsin in *Nora v. Residential Funding Company, LLC, et. al.* as Case No. 10-cv-748 on her own behalf and for thousands of similarly situated homeowners, all of whom are victims of the racketeering enterprise operated by the Debtor RESCAP, LLC, its employees and agents and parent company, Ally Financial,

1

Inc. (AFI) and, as the owner of Claim #1 in these proceedings, files her Continuing Objection to the Entry of Final Orders by which the Debtors could claim court approval to continue its racketeering enterprise and specifically objects to and seeks relief from the following Interim Orders:

    1. Upon information and belief, the Debtor(s) have come to this Court to preferentially transfer their assets to their chosen banking and shadow-banking associates and their parent company and the interim orders entered to date constitute preferential transfers without adequate notice to creditors known to them, but selectively not named in the 50 largest creditors to prevent such creditors from participating in the selection of the hastily appointed Unsecured Creditors Committee.

    2. Claimant owns a claim which she brought in her personal name and stead based upon harm cause to her personally, which is representative of the harm caused to tens of thousands of homeowners throughout the United States of America.

    3. Upon information and belief, preferential transfers are being made or are planned to be made under the veil of Interim Orders objected to above and by Notice of Sale [*e.g.* Docket 66 and subsequent entries] to empty the estate of all valuable assets prior to the filing of the Schedules and Statement of Financial Affairs, under oath and subject to review of the creditors, the US Trustee, the Court and the public.

    4. Upon information and belief, the Court has been deceived into believing that it is its using powers to "protect" the Debtor(s) under the assumption that it is a vital and critical component of this nation's banking (and shadow banking) system, when they are, in fact, parts of a racketeering enterprise which had, at its core, the purpose and intent to use forged and

fabricated documents to judicially, non-judicially and by contractual power of sale defraud homeowners and courts into allowing the enterprise to take title to homes, which documents have been transmitted through the US mails and wires in violation of 18 USC §§ 1341 and 1343, respectively, in thousands of cases, which acts are predicate acts in prove of a racketeering enterprise, prohibited by 18 USC § 1961, *et seq*.

5. Upon information and belief, the other side of its racketeering venture was the sale of private label "mortgage-backed securities" to investors in REMIC (Real Estate Mortgage Investment Conduits) Trusts through a process known as securitization, when, in fact, those loans were never lawfully securitized by the delivery of the mortgage notes and assignments of the mortgages and the trusts are empty of any assets. Regrettably, government-sponsored entities, such as the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac) now in conservatorship under the Federal Housing Finance Authority (FHFA) guaranteed the securitization trusts in most instances, which resulted in false claims being brought against the United States of America by these Debtors.

6. The FHFA is listed as having a contingent claim against these Debtors for "securities" (50 largest creditors #10) and numerous pension funds are also listed as having contingent claims for "securities." (50 largest creditors 15-38.)

7. Upon information and belief, the securitization trusts are empty of any assets and the reason why the Debtors, primarily through GMAC Mortgage, LLC document creation (forgery) unit and its associated document mills, forge and fabricate mortgage notes and assignments of mortgages is to make it appear to homeowners, their counsel and the courts that the Debtors as mortgage "servicers" have standing to foreclose on homes, when they do not own the mortgage

note nor do they have the legal right to claim assignment of mortgages.

    8. Upon information and belief, the Debtors bankruptcy petitions have been filed in bad faith and the relief sought and granted to date cannot be granted by this Court acting in its equitable powers under 11 USC sec. 105 because the Debtors have unclean hands.

    9. The undersigned's claim is not a claim which was unknown to the Debtor at the time of filing. The failure to give list this contingent claimant among the 50 largest unsecured creditors is prima facie bad faith because the undersigned holds the largest contingent claim filed in litigation, which is presently subject to the automatic stay in these proceedings.

    10. It is impossible for this Court to make an informed judgment on the matters for which Final Orders are being sought without the filing of Debtors Schedules and Statements of Financial Affairs.

    11. No creditor can make an informed objection without meaningful notice and opportunity to be heard which require, at a minimum, that the Debtors' Schedules and Statements of Financial Affairs be filed.

    12. Earnest efforts by the Unsecured Creditors Committee to investigate the pre-petition and post-petition transactions and the laudable Order of Judge Glenn appointing an Examiner on Motion of secured creditor Berkshire Hathaway notwithstanding, the creditors and the public are yet unable to ascertain the location, nature, characteristics and value of the assets claimed to be owned, held or serviced by the consolidated Debtors because the Debtors have not filed their Schedules and Statement of Financial Affairs, having obtained a first extension to June 30, 2012 and may have obtained further extensions unknown to this creditor, who, despite having and argued in these proceedings has not yet been able to receive the documents in these

4

proceedings through CM/ECF and must, instead, sign on to the Court website, pay for the docket report at $.10 per page and then open each document filed at a cost of $.10 per page in order to view the documents filed in these proceedings.

    13. Despite having requested the service of all papers, documents, notices and records in these proceedings, the claimant is receiving seemingly stray documents and random documents in hard copy or stray and random e-mails linking to documents which have been selected by the Debtors' chosen "professional" bankruptcy notice firm without and coherence to or reason for the certain documents to be selected and forwarded to her. Therefore, she has stopped serving herself with each and every document at a personal expense and will await that day upon which she is able to receive the documents by CM/ECF. This may mean that she is not immediately up to date as to the contents of every filing in this case and she advises the Court that she cannot spend her time and financial resources going to the court's docket to retrieve every document in this case in real time. If, for example, the Debtors have requested a further extension of time to file their Schedules and Statements of Financial Affairs, she will object to such a Motion. For now, she seeks only to assert that the failure to prepare and file Schedules and Statements of Financial Affairs prior to requesting the vast and expansive powers to continue stealing homes with forged and perjured documents, when these Debtors have been able to file thousands of pages of requests for relief in these bankruptcy proceedings which have been clearly planned for many months, according to the Debtors' own filings, without disclosing to the Court, the creditors and the public record, what assets they claim to own, hold and service (Schedules A and B), what their liabilities are (Schedules B, C, D, E and F), what executory contracts they are accepting or rejecting (Schedule G), what entities

5

are co-obligors for their liabilities (Schedule H), what their income and expenses are (Schedules I and J), and any matters required to be disclosed on their Statement of Financial Affairs, including but not limited to, specifying all matters in which they have been sued or are suing others, warrants the denial of their Motion for their self-designed and self-determined Motion to Modify the Automatic Stay, to which this objection is specifically made.

14.  Not only is there no urgent public interest to be protected by granting the Debtors the extraordinary relief represented by their request to pick and choose which matters may be litigated and how those matters may be litigated, whether they can sell homes they have taken by forged and perjured documents, whether they can continue to seize the property of persons who owe no debt to them, whether appeals may go forward to be heard and decided to which they are parties, without disclosing their assets, liabilities and litigation positions to the Court.   To the contrary, the Debtors have spent all of their time and considerable legal resources for which the seek compensation as priority claims in fashioning the relief they "want" without disclosing their assets, liabilities, income, expenses and litigation profile require by law.  Until those required disclosures are made, it is impossible make it possible to determine what, if any, relief they may be entitled to receive from this Court in law and equity.

15.  Claimant #1 in these proceedings asserts that this consolidated bankruptcy proceeding is intended to allow the Debtors to shield their parent companies, Ally Financial, Inc. (AFI) and Ally Bank from liability and litigation expenses while they seek leave of this Court to allow them to continue to engage in criminal conduct by which they are seizing homes for debt not owed to them without the supervision of this Court.  They even continue

6

to participate in the global derivatives market (which participation, if they are indeed insolvent, should be immediately terminated–they claim that 19 billion dollars US is involved) as "the ordinary course of business."

16. Debtors have obtained the Interim Order Modifying the Automatic Stay and now seek a Final Order to proceed in litigation of their choosing prior to the filing of the Schedules and Statements of Financial Affairs by which the Court and the creditors might determine that their litigation practices must be stopped in the best interests of the estate.

17. The Debtors have chosen this forum and they should be required to resolve their litigation matters in this forum or the stay should be globally released as requested by the National Association of Consumer Bankruptcy Attorneys.

18. The relief requested by Claimant #1 is simple and meets the requirements of the Bankruptcy Code: Debtors must not be allowed to use this bankruptcy as a shield while continuing to litigate in state and federal courts at will.   They must at least be denied any further relief from this Court until their Schedules and Statements of Financial Affairs are filed and then seek specific relief as to the specific assets and liabilities involved.

19.  If the bankruptcy law does not work for their litigation and property seizure business plan, for which they seek to fashion a form of impunity, then they should dismiss this case.

20. There is no proof that these Debtors are even insolvent at this time.  Rather, they are cleverly trying to use the great power of a sale free and clear of claims and liens under 11 USC sec. 363 to avoid liability on behalf of their parent companies and shareholders: their hedge fund shareholder, Cerberus Capital Management, LP and the United States Treasury (the

which owns more than 74% of its stock on behalf of the taxpayers, some of whom are the very same homeowners whose property these Debtors are illegally seizing and selling.

**WHEREFORE**, the undersigned makes this objection in good faith, for the protection of the public and the integrity of the Court and seeks to be heard at the hearing now set for July 10, 2012 or any continued or adjourned date or dates of any hearings on the attempts of the Debtors modify the automatic stay in these proceedings until they have filed their Schedules and Statement of Financial Affairs and show cause why the automatic stay should be modified.

Dated: June 29, 2012
    Minneapolis, Minnesota.

    ACCESS LEGAL SERVICES

    */s/ Wendy Alison Nora*

    Wendy Alison Nora, pro hac vice
    210 Second Street NE
    Minneapolis, Minnesota 55413
    Telephone (612) 333-4144
    Facsimile (612) 886-2444

    *Counsel to Wendy Alison Nora*