DUANE MORRIS LLP
Gerard S. Catalanello, Esq.
James Vincequerra, Esq.
William C. Heuer, Esq.
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
*Counsel for Plaintiff*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020(MG) |
| **RESIDENTIAL CAPITAL, LLC., et al.,** | **Chapter 11**<br>**Jointly Administered** |
| Debtors. | |
| **GREEN PLANET SERVICING, LLC,**<br>Plaintiff,<br>vs.<br>**GMAC MORTGAGE, LLC,**<br>Defendant. | Adversary Proc. No._____ |

### COMPLAINT SEEKING DECLARATORY JUDGMENT

Plaintiff, Green Planet Servicing, LLC ("Plaintiff" or "Green Planet"), a Delaware limited liability company, files this Complaint Seeking a Declaratory Judgment against the Defendant herein, GMAC Mortgage, LLC ("Defendant" or "Debtor"), a Delaware limited liability company, and states as follows:

**Nature of This Action**

1.  This is an action seeking a declaratory judgment determining that a contract[1] between Plaintiff and Defendant was both (i) materially breached by Defendant, and (ii) terminated by Plaintiff prior to Defendant's chapter 11 bankruptcy filing.

2.  It was necessary for Plaintiff to commence this action because, despite the prepetition termination of the contract between the parties, the Defendant continues to treat the contract as if it were in full force and effect, to the detriment and harm of Plaintiff. Indeed, it appears that Defendant intends to "assume and assign" the contract to a third party purchaser through Defendant's chapter 11 bankruptcy proceedings.

3.  Plaintiff therefore seeks a declaratory judgment in this controversy pursuant to 28 U.S.C. § 2201 *et. seq*, and Fed. R. Bankr. P. 7001.

**The Parties**

4.  Plaintiff is a Delaware limited liability company, with its principal place of business in Wallingford, Connecticut.

5.  Plaintiff is a mortgage servicing company that services residential mortgage loans in various states in the United States, including Maryland.

6.  Defendant is a Delaware limited liability company, with its principal place of business in Fort Washington, Pennsylvania. Defendant maintains offices in the State of Maryland and regularly conducts business in the State of Maryland.

7.  On May 14, 2012 (the "Petition Date"), Defendant, together with certain affiliated entities, filed a petition for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in this Court.

---

[1] A residential mortgage loan Servicing Agreement, as is noted below.

8. As part of its services, prior to the Petition Date, Defendant provided residential mortgage loan servicing.

## Jurisdiction and Venue

9. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

10. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## General Allegations

**I.    Servicing Rights for Residential Mortgage Loans**

12. Residential mortgage loans are a form of property that can be bought and sold. Similarly, the right to service such loans (generally referred to herein as "mortgage loan servicing rights") is an asset that can be bought and sold separately from the right to collect and retain the principal and interest owed under the mortgage loan.

13. A portion of Plaintiff's business involves purchasing residential mortgage loan servicing rights.

14. Servicing residential mortgage loans encompasses a number of services, including billing and collecting principal and interest payments on loans and remitting those payments to the owners of the loans, after deducting various fees and expenses.

15. A second function performed by mortgage loan servicers is handling delinquent loans. Delinquent loans often require a mortgage loan servicer to take steps to assess the risk associated with the loan and to mitigate the potential loss that may result from the borrower's default.

16. Steps that may be taken to mitigate losses on residential mortgage loans by loan servicers can include a variety of actions, including, but not limited to, assessing a borrower's circumstances, modifying loans, undertaking "short sales" of the property to which the loan applies, accepting a deed in lieu of foreclosure, charging off the loan, foreclosing on the mortgage and seeking a deficiency judgment against the borrower.

## II. The Servicing Agreement

17. In 2011, Plaintiff acquired the right to service a pool of approximately 30,000 residential mortgage loans, for which the total loan principal value was nearly $5.2 billion (the "GPS Loan Pool"). Over $169 million of the properties to which these loans relate are located in Maryland.

18. Also in 2011, Plaintiff began discussions with Defendant for Defendant to service the GPS Loan Pool as Plaintiff's sub-servicer.

19. On October 1, 2011, Plaintiff and Defendant entered into a Servicing Agreement, wherein Defendant agreed to act as a sub-servicer for the GPS Loan Pool (the "Servicing Agreement"). A copy of the Servicing Agreement is attached hereto as Exhibit "1." The Servicing Agreement is the contract at issue in this adversary proceeding.[2]

20. The Servicing Agreement requires, among other things, that all funds collected by Defendant be deposited into various bank accounts.

21. The funds deposited in those accounts belong to Plaintiff and are held by Defendant in trust for the benefit of Plaintiff.

22. The Servicing Agreement permits Defendant to deduct its proper fees and expenses from the those accounts.

---

[2] Section 12.07 of the Servicing Agreement provides that the Servicing Agreement "shall be construed in accordance with the laws of the State of Illinois."

4

23. The Servicing Agreement identifies the tasks that must be undertaken by Defendant, and also sets the standard of performance that must be achieved by Defendant.

24. Section 2.01(d) of the Servicing Agreement provides that "In servicing and administering the Mortgage Loans and REO Properties, the Servicer shall comply in all material respects with Applicable Law and employ Accepted Servicing Practices."

25. Accepted Servicing Practices was defined in Section 1.01 of the Servicing Agreement, as follows:

> With respect to any Portfolio Loan or REO Property, (i) the Fannie Mae Guides, (ii) any applicable mortgage insurer guides, (iii) the VA Regulations applicable for any VA Mortgage Loan and FHA regulations applicable for any FHA Mortgage Loans, and (iv) to the extent not inconsistent therewith, those mortgage servicing practices of mortgage lending institutions which service mortgage loans of the same type as such Portfolio Loan or REO Property in the jurisdiction where the related Mortgaged Property is located, exercising a reasonable standard of care in performing those practices. With respect to any Agency Loan, (i) the applicable Agency Guide including the VA Regulations applicable for any VA Mortgage Loan and FHA regulations applicable for any FHA Mortgage Loans, (ii) any applicable mortgage insurer guides and (iii) to the extent not inconsistent therewith, those mortgage servicing practices of mortgage lending institutions which service mortgage loans of the same type as such Agency Loan in the jurisdiction where the related Mortgaged Property is located, exercising a reasonable standard of care in performing those practices.

26. Defendant also made a number of representations and warranties to Plaintiff in the Servicing Agreement about its ability to properly service the loans.

27. Section 7.04 of the Servicing Agreement provides Defendant's representation and warranty that: "The Servicer does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement."

28. Section 7.06 of the Servicing Agreement provides Defendant's representation and warranty that: "No litigation or administrative proceeding of or before any court, tribunal or

5

governmental body is currently pending or to the knowledge of the Servicer threatened, against the Servicer or with respect to this Agreement, which if adversely determined would have a material adverse effect on the transactions contemplated by this Agreement."

29. Critical to Plaintiff's receiving the benefit of its bargain under the Servicing Agreement is Plaintiff's ability to forbid or restrict any mortgage loan servicer with which Plaintiff contracts from depleting, diminishing or reducing the pool of mortgages being serviced by such servicer.

30. The Servicing Agreement contains express provisions prohibiting Defendant from undertaking such efforts or engaging in such conduct.

31. Specifically, Section 12.13 of the Servicing Agreement provides that neither Defendant, nor any affiliate of Defendant, would solicit a mortgagor in the GPS Loan Pool for the purpose of prepayment or refinancing of its loan without the written consent of Plaintiff.

32. Section 12.13 states, in clear and unambiguous terms:

> . . . Servicer shall not, nor shall it take any action that would permit any Affiliate of Servicer, to solicit the Mortgagors for purpose of prepayment or refinance of the Mortgage Loans, without the written consent of the Owner . . . .

33. Without the protections agreed upon in Section 12.13 of the Servicing Agreement, Plaintiff would not have entered into the Servicing Agreement with Defendant.

34. The Servicing Agreement also provides detailed instructions to Defendant regarding how Defendant must service delinquent loans.

35. In servicing delinquent loans, from time to time decisions had to be made on various actions, such as, for example, loss mitigation, foreclosure and bankruptcy of an underlying borrower. The Servicing Agreement included an "Approval Matrix" that set forth specific parameters for Defendant's decision making in its role as sub-servicer of Plaintiff. This

6

Approval Matrix was created to ensure that proper steps were taken by Defendant at each stage in the servicing of these delinquent loans.

### III.     Defendant Repeatedly Breached the Servicing Agreement Prior to the Petition Date

36.     Defendant breached the Servicing Agreement in a number of material respects in the period of time preceding the Petition Date.

37.     First, Defendant improperly solicited a significant number of loans from the GPS Loan Pool for refinancing, in clear breach of Section 12.13 of the Servicing Agreement.

38.     A breach by Defendant of Section 12.13 of the Servicing Agreement constitutes a "Servicer Event of Default" pursuant to Section 9.01(b) of the Servicing Agreement.

39.     Plaintiff has suffered substantial harm as a result of Defendant's impermissible solicitations in breach of the Servicing Agreement, in that Plaintiff can no longer receive any servicing fees for the loans that were refinanced.

40.     Plaintiff has also lost the benefit of the bargain for the funds it spent to acquire the rights to service the now-refinanced loans as a direct result of Defendant's breach of Section 9.01(b).

41.     There is no way to "cure" or "fix" such a default.

42.     Second, Defendant breached the Servicing Agreement by failing to abide by Accepted Servicing Practices, Agency Guidelines and the Approval Matrix, in the following respects:

   a.   Defendant failed to discover a bankruptcy filing prior to demanding that Plaintiff wire funds to repurchase a foreclosed property. As a result, Defendant failed to notify Plaintiff that the foreclosure sale had been rescinded, even though Defendant was aware of this fact prior to the buyout date. Plaintiff lost hundreds of thousands of dollars when it was required to repurchase this loan, because of Defendant's failure.

   b.   Defendant failed to comply with the Approval Matrix when it agreed to a loan modification without first obtaining Plaintiff's approval.

7

        c.        Defendant failed to comply with the Approval Matrix by conducting numerous short sales without prior approval by Plaintiff.

43.      There is no way to "cure" or fix these defaults.

44.      These breaches, like the breach noted above, constitute Servicer Events of Default pursuant to Section 9.01(b) of the Servicing Agreement.

45.      Defendant also breached the representations and warranties it made to Plaintiff in the Servicing Agreement by failing to notify Plaintiff that Defendant would not be able to properly service the GPS Loan Pool in accordance with Accepted Servicing Practices, as a result of various investigations of Defendant's mortgage loan servicing practices by federal authorities and the settlement of those investigations.

46.      Like the other breaches noted above, Defendant is unable to "cure" its past default of failure to properly and adequately service the GPS Loan Pool, and there is nothing to indicate that Defendant (now in chapter 11 and trying to sell its assets but still dealing with the underlying investigations that caused Defendant to breach the Servicing Agreement) is able to cure this breach on a going-forward basis.

47.      These breaches, like the breaches noted above, constitute Servicer Events of Default pursuant to Section 9.01(b) of the Servicing Agreement.

48.      Defendant likewise breached the Servicing Agreement by improperly deducting expenses from GPS Loan Pool accounts that Defendant was not entitled to deduct, and which were caused by Defendant's improper and deficient servicing of the GPS Loan Pool.

49.      These breaches, like the breaches noted above, constitute Servicer Events of Default pursuant to Section 9.01(b) of the Servicing Agreement.

**IV.    The Servicing Agreement Was Terminated Prior to the Petition Date**

50.    Article XI, Section 11.01 of the Servicing Agreement is entitled "Termination," and provides that Plaintiff may immediately terminate the Servicing Agreement, "with cause, upon the occurrence of a Servicer Event of Default as provided in Section 9.01."

51.    In response to Defendant's repeated and material breaches of the Servicing Agreement noted above, Plaintiff terminated the Servicing Agreement, for cause, on March 23, 2012.

52.    After terminating the Servicing Agreement, Plaintiff contacted Defendant and requested that Defendant cooperate with Plaintiff to transfer the loans to a new servicer, as Defendant was required to do by Section 11.02 of the Servicing Agreement.  Specifically, Plaintiff requested access to the loan files and data (the "Loan Files" and "Data") relating to servicing of the GPS Loan Pool.

53.    The data files requested by Plaintiff are the property of Plaintiff.  Defendant has no lawful right to these Loan Files and Data.

54.    Defendant has refused to cooperate with Plaintiff in the transfer of the servicing of the Loan Pool and in providing Plaintiff with the Loan Files and Data necessary to effectuate the transfer of the servicing of the GPS Loan Pool.

55.    Defendant continues to wrongfully use the GPS Loan Pool accounts by improperly deducting expenses from those accounts – expenses for which Defendant has no right or entitlement.  The funds in these accounts are the property of Plaintiff, not Defendant.

# COUNT I
# DECLARATION OF BREACH OF CONTRACT

56. Plaintiff repeats the allegations contained in paragraphs 1 through 55 above, as if fully set forth herein.

57. Defendant breached the Servicing Agreement, for each of the reasons set forth above.

58. Plaintiff respectfully requests a declaration that Defendant has breached the Servicing Agreement.

# COUNT II
# DECLARATION OF OWNERSHIP

59. Plaintiff repeats the allegations contained in paragraphs 1 through 58 above, as if fully set forth herein.

60. Plaintiff owns the Loan Files and Data.

61. Defendant has no ownership or other interest in, or claim upon or to, the Loan Files and Data.

62. Plaintiff respectfully requests a declaration that Plaintiff owns the Loan Files and Data, and that Defendant has no ownership or other interest in, or claim upon or to, the Loan Files and Data.

# COUNT III
# DECLARATION OF PREPETITION TERMINATION

63. Plaintiff repeats the allegations contained in paragraphs 1 through 62 above, as if fully set forth herein.

64. Defendant breached the Servicing Agreement prior to the Petition Date.

65. Defendant's breaches are not susceptible to "cure".

66. Plaintiff properly terminated the Servicing Agreement, for cause, on March 23, 2012.

67. Plaintiff respectfully requests a declaration that the Servicing Agreement was properly terminated by Plaintiff prior to the Petition Date.

## COUNT IV
## DECLARATION THAT SERVICING AGREEMENT CANNOT BE ASSUMED AND ASSIGNED

68. Plaintiff repeats the allegations contained in paragraphs 1 through 67 above, as if fully set forth herein.

69. Defendant breached the Servicing Agreement prior to the Petition Date.

70. Plaintiff properly terminated the Servicing Agreement for cause prior to the Petition Date.

71. Because the Servicing Agreement was properly terminated by Plaintiff prior to the Petition Date, it cannot be "assumed" and assigned pursuant to 11 U.S.C. §§ 365, 363, or otherwise, through Defendant's pending chapter 11 bankruptcy case.

72. Plaintiff respectfully requests a declaration that the Servicing Agreement cannot be assumed and assigned by Defendant through Defendant's bankruptcy proceedings.

## COUNT V
## DECLARATION THAT SERVICING AGREEMENT CANNOT BE ASSUMED AND ASSIGNED

73. Plaintiff repeats the allegations contained in paragraphs 1 through 72 above, as if fully set forth herein.

74. Defendant breached the Servicing Agreement prior to the Petition Date.

75. Defendant's breach of Section 12.13 of the Servicing Agreement is a material breach that goes to the heart of the Servicing Agreement.

11

76. Defendant's breach of Section 12.13 of the Servicing Agreement cannot be cured.

77. Because Defendant's breach of the Servicing Agreement cannot be cured, even if the Servicing Agreement was not properly terminated by Plaintiff prior to the Petition Date, the Servicing Agreement cannot be "assumed" and assigned pursuant to 11 U.S.C. §§ 365, 363, or otherwise, through Defendant's pending chapter 11 bankruptcy case.

78. Plaintiff respectfully requests a declaration that the Servicing Agreement cannot be assumed and assigned by Defendant through Defendant's bankruptcy proceedings.

[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK]

## Conclusion

WHEREFORE, Plaintiff, Green Planet Servicing, LLC, respectfully requests that the Court enter judgment against Defendant, GMAC Mortgage, LLC, and in favor of Plaintiff, as follows:

a. Plaintiff respectfully requests a declaration that Defendant has breached the Servicing Agreement; and

b. Plaintiff respectfully requests a declaration that Plaintiff owns the Loan Files and Data, and that Defendant has no ownership or other interest in, or claim upon or to, the Loan Files and Data; and

c. Plaintiff respectfully requests a declaration that the Servicing Agreement was properly terminated by Plaintiff prior to the Petition Date; or, in the alternative,

d. Plaintiff respectfully requests a declaration that the Servicing Agreement cannot be assumed and assigned, pursuant to 11 U.S.C. §§ 365, 363, or otherwise, through Defendant's chapter 11 bankruptcy proceedings; and

e. Such other and further relief as this Court deems just, equitable and proper.

Dated: July 2, 2012
New York, New York

By: /s/ Gerard S. Catalanello
Gerard S. Catalanello

DUANE MORRIS LLP
Gerard S. Catalanello, Esq.
James Vincequerra, Esq.
William C. Heuer, Esq.
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
*Attorneys for Plaintiff, Green Planet Servicing, LLC*

13

DM3\2216922.2