DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1000
Fax: 212.692.1020
Gerard S. Catalanello, Esq.
James J. Vincequerra, Esq.

*Counsel to Green Planet Servicing, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**MOTION OF GREEN PLANET SERVICING, LLC
FOR ENTRY OF AN ORDER: (A) MODIFYING THE
AUTOMATIC STAY TO EFFECTUATE PRE-PETITION TERMINATION OF
SERVICING AGREEMENT; OR (B) ALTERNATIVELY, GRANTING RELIEF
FROM THE AUTOMATIC STAY TO ALLOW POST-PETITION TERMINATION
OF SERVICING AGREEMENT; AND (C) GRANTING RELATED RELIEF**

Green Planet Servicing, LLC ("**Green Planet**") hereby moves (the "**Motion**") for entry of an order, pursuant to § 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**"), modifying the automatic stay to effectuate a termination of the Servicing Agreement (defined below) between Green Planet and GMAC Mortgage, LLC, a debtor and debtor-in-possession in the above-captioned jointly administered chapter 11 cases ("**GMAC**" or the "**Debtor**," and collectively with its affiliated entities, also debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases, the "**Debtors**"), and granting related relief. In support of the Motion, Green Planet respectfully represents as follows:

## JURISDICTION

1. The Court has jurisdiction over the Debtors' case and this matter pursuant to 28 U.S.C. §§ 157 and 1134. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief sought herein is 11 U.S.C. § 362(d)(1).

## RELEVANT BACKGROUND

### A. The Servicing Agreement

3. On October 1, 2011, GMAC, as servicer, entered into a narrowly-tailored servicing agreement, pursuant to which GMAC acted as sub-servicer of certain mortgage loans on behalf of Green Planet (the "**Servicing Agreement**"). *See* Affidavit of Dennis E. Neubert (the "**Neubert Aff.**"), attached hereto as **Exhibit "A"**, ¶ 5. A true and correct copy of the Servicing Agreement is annexed hereto as **Exhibit "1"** to the Neubert Aff.

4. The Servicing Agreement allowed GMAC an extremely limited role with respect to a pool of approximately 30,000 residential mortgage loans with a total principal value of nearly $5.2 billion (the "**GPS Loan Pool**"). *See* Neubert Aff., ¶ 6. Prior to its pre-petition termination (described more fully below), pursuant to the Servicing Agreement, GMAC was authorized to perform various tasks on Green Planet's behalf, such as collecting all payments, including principal, interest and liquidation proceeds in connection with the GPS Loan Pool, as well as any net cash flow from the underlying properties (collectively, the "**Green Planet Servicing Funds**"). *See* Servicing Agreement §§ 2.03-2.04.

5. Pursuant to the explicit terms of the Servicing Agreement, GMAC was, and continues to be, required to segregate and hold the Green Planet Servicing Funds in custodial accounts (or escrow accounts in relation to escrow related payments) separate and apart from any of its own funds and assets. *See* Servicing Agreement §§ 2.04, 2.06. Beyond mere segregation,

2

these separate accounts are required to be specifically titled to indicate that the funds therein are held by GMAC in trust for Green Planet. *Id.*

6.  Throughout the parties' relationship, GMAC's limited role was clearly defined by the terms of the Servicing Agreement. *See* Neubert Aff., ¶ 6. Specifically, GMAC was limited to performing certain tasks associated with the service and administration of the GPS Loan Pool. *See* Servicing Agreement § 2.01. As a sub-servicer, GMAC <u>did</u> <u>not</u> <u>own</u> the corresponding servicing rights (the "**Servicing Rights**") regarding such loans. *See* Neubert Aff., ¶ 7. Rather, as definitively outlined in the Servicing Agreement, such Servicing Rights were at all times, and continue to be owned by Green Planet. Servicing Agreement § 6.07.

7.  In fact, under the terms of the Servicing Agreement, GMAC was even required to reflect Green Planet's ownership in relation to the GPS Loan Pool and the Servicing Rights on its own computer system. *See* Servicing Agreement § 2.01(h).

8.  The Servicing Agreement also directly prohibits solicitation of existing borrowers regarding loans contained in the GPS Loan Pool for the purposes of encouraging such borrowers to refinance or prepay their existing mortgage loans. *See* Servicing Agreement, § 12.13. Specifically, the Servicing Agreement states as follows:

> Unless in accordance with Section 2.03 for the purposes of loss mitigation, from and after the date hereof, [GMAC] shall not, nor shall it take any action that would permit any affiliate of [GMAC], to solicit the Mortgagors for purposes of prepayment or refinance of the Mortgage Loans, without the written consent of [Green Planet][.]

*See id.*

9.  In negotiating the Servicing Agreement, Green Planet's primary focus was the inclusion of the non-solicitation provision, as such provision was critical with respect to the protection of Green Planet's business interests. *See* Affidavit of Sandra Jarish (the "**Jarish**

3

**Aff.**"), annexed hereto as **Exhibit "B"**, ¶ 7. In fact, absent the inclusion of the non-solicitation provision, Green Planet would not have entered into the Servicing Agreement with GMAC. *Id.* at ¶ 9.

10. The Servicing Agreement also provides Green Planet with termination rights, with or without cause, as follows:

> (b)    [Green Planet] may terminate, at its sole option, this Agreement with respect to some or all of the Mortgage Loans or REO Property, **without cause**, upon ninety (90) days advance written notice to [GMAC] . . .
>
> *    *    *
>
> (d)    [Green Planet] may terminate, at is sole option, this Agreement with respect to some or all of the Mortgage Loans or REO Property, **with cause, upon the occurrence of a Servicer Event of Default** as provided in Section 9.01.

*See* Servicing Agreement, § 11.01(b), (d) (emphasis added).

**B.    GMAC's Pre-Petition Breaches Of The Servicing Agreement**

11. On March 9, 2012, prior to the Debtors' bankruptcy filing, Green Planet was contacted by Matt Detwiler ("**Detwiler**"), the Senior Vice President of Fee Based Servicing for GMAC. *See* Neubert Aff., ¶ 8. Detwiler advised Green Planet that GMAC had unlawfully solicited loans from the GPS Loan Pool, in violation of the Servicing Agreement. *Id.*

12. Specifically, Detwiler explained that a GMAC senior employee had allowed access to the GPS Loan Pool to establish a solicitation list and that the GPS Loan Pool had been added to an active solicitation list. *Id.* at ¶ 9. As a result, mortgagors of the mortgage loans in the GPS Loan Pool were solicited regarding the potential prepayment or refinancing of such loans. *Id.* at ¶ 10.

13. Detwiler further advised that GMAC would determine the number of loans that were solicited, and would provide that information to Green Planet. *Id.* at ¶ 11. Subsequently,

Detwiler provided Green Planet with a list (the "**Solicited Loan List**") identifying at least one hundred twenty nine (129) loans in the GPS Loan Pool that had been unlawfully solicited by GMAC, which loans were voluntarily prepaid in full and refinanced as a result. *Id.* at ¶ 12. The Solicited Loan List was not comprehensive, nor has a revised list been provided which accounts for additional solicited loans that were prepaid and refinanced since the creation of the Solicited Loan List. *Id.* at ¶ 13.

14. GMAC advised Green Planet that, as of March 9, 2012, all solicitations of loans contained in the GPS Loan Pool had ceased, and that the GPS Loan Pool had been removed from all solicitation lists and cues. *Id.* at ¶ 14.

15. After GMAC's disclosure of the unlawful solicitation, Green Planet hired Collateral Analytics, a third party vendor, to perform lien searches in the public records of various states to identify loans paid off during the time period February 1, 2012 through March 19, 2012, where the most recent loan vendor was an affiliate of GMAC. *Id.* at ¶ 15.

16. The results of Collateral Analytics' lien search identified at least thirty one (31) additional residential mortgage loans from the GPS Loan Pool that: (a) were refinanced by a GMAC affiliate, and (b) were not included on the Solicited Loan List. *Id.* at ¶ 16.

17. A further review of notes contained on GMAC's computer system identified at least one additional loan from the GPS Loan Pool that was solicited and refinanced by GMAC or one of its affiliates <u>after</u> GMAC advised Green Planet that all solicitation activity had ceased. *Id.* at ¶ 17.

18. In the time period since GMAC's unlawful solicitation, Green Planet has identified that the amount of loans in the GPS Loan Pool that were voluntarily prepaid and

refinanced has increased by four hundred seventy-five percent (475%). *Id.* at ¶ 18. This dramatic increase cannot be reasonably explained by any market forces. *Id.*

C.   **Green Planet's Pre-Petition Termination Of The Servicing Agreement**

19. In response to GMAC's breaches of the Servicing Agreement, on March 23, 2012, Green Planet forwarded GMAC a written Notification of Breach of Contract and Termination of Servicing Agreement (the "**Default Notice**"). *See* Neubert Aff., ¶ 19. A true copy of the Default Notice is annexed to the Neubert Aff. as **Exhibit "2."**

20. The Default Notice advised GMAC that, *inter alia*, its unlawful solicitation of the loans in the GPS Loan Pool constituted a breach of Section 12.13 of the Servicing Agreement. The Default Notice also advised GMAC that, a result of its breach of Section 12.13 of the Servicing Agreement, along with other miscellaneous breaches of the Servicing Agreement described in the Default Notice (collectively, the "**Defaults**"), Green Planet was exercising its right to terminate the Servicing Agreement, for cause, pursuant to Section 11.01(d) of the Servicing Agreement. *See* Default Notice, ¶ 1, 2.

21. The Default Notice also advised GMAC that, as a result of the termination of the Servicing Agreement, GMAC must comply with the explicit transfer procedures outlined in Section 11.02 of the Servicing Agreement, including cooperating with Green Planet regarding the transition of the GPS Loan Pool back to Green Planet and/or to a new sub-servicer. *Id.* at ¶ 3. *See also* Servicing Agreement, § 11.02.

22. Pursuant to Section 11.02 of the Servicing Agreement, upon the termination of the Servicing Agreement, GMAC must, among other things:

> (a)   reasonably cooperate with Green Planet and with any party designated as GMAC's successor, in transferring the GPS Loan Pool to GMAC's successor; and

6

  (b) within five (5) days of the termination, deliver to its successor any and all mortgage files in GMAC's possession, as well as the net funds held in GMAC's escrow account relating to such mortgage loans.

*See* Servicing Agreement, § 11.02(a).

23. GMAC responded to the Default Notice via letter dated March 29, 2012, arguing that it be allowed an opportunity to cure the existing defaults. A true copy of the March 29, 2012 response is attached to the Neubert Aff. as **Exhibit "4."**

24. GMAC, however, cannot cure the Defaults. While the actual monetary damages resulting from GMAC's unlawful solicitation may be calculated, the damage to Green Planet's business interest in the GPS Loan Pool, including loss of competitive position and servicing rights cannot be reduced to money damages. Neubert Aff., ¶ 23-24. Such damages are also difficult to assess with any degree of accuracy, particularly because future damages and losses attributable to GMAC's unlawful solicitation are impossible to quantify at this time. *Id.* at ¶ 25.

25. Subsequently, on or about May 7, 2012, Green Planet filed a civil complaint (the "**Complaint**") against GMAC in the Circuit Court for Baltimore City, alleging breach of the Servicing Agreement as outlined by the allegations contained in the Default Notice. *Id.* at ¶ 20. A true and correct copy of the Complaint is annexed to the Neubert Aff. as **Exhibit "3."**

26. The Complaint further sought a permanent injunction enjoining GMAC from soliciting any loans from the GPS Loan Pool, requiring GMAC to transfer the GPS Loan Pool files and barring GMAC from withdrawing funds from the custodial accounts linked to the GPS Loan Pool. *See* Complaint ¶ 30 -37.

**D.     The Debtors' Bankruptcy Filing And
        Continued Post-Petition Breaches Of The Servicing Agreement**

27.     On May 14, 2012 (the "**Petition Date**"), the Debtors, including GMAC, filed a petition for relief under chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

28.     On May 16, 2012, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") in this case, comprised of the following members: (i) Wilmington Trust, N.A., (ii) Deutsche Bank Trust Company Americas, (iii) The Bank of New York Mellon Trust Company, N.A., (iv) MBIA Insurance Corporation, (v) Rowena L. Drennen, (vi) AIG Asset Management (U.S.), LLC, (vii) U.S. Bank National Association, (viii) Allstate Life Insurance Company, and (ix) Financial Guaranty Insurance Company [Docket No. 102].

29.     Despite GMAC's representation that all improper solicitation of the GPS Loan Pool's respective borrowers ceased prior to the Petition Date, GMAC's breaches of the Servicing Agreement have continued subsequent to the Petition Date. *See* Neubert Aff., ¶ 26.[1]

---

[1] Green Planet reserves its rights to conduct discovery regarding all matters including, but not limited to, the extent of GMAC's post-petition breaches, and to supplement the within Motion accordingly.

**RELIEF REQUESTED**

30. Green Planet respectfully submits that, as set forth in the facts detailed above, the Servicing Agreement was terminated in accordance with its own terms prior to the Debtors' bankruptcy filing.[2] As a result, no affirmative post-petition act is required in order to effectuate the termination of the Servicing Agreement. Green Planet has, however, filed this Motion out of an abundance of caution and, accordingly, by this Motion, seeks an order modifying the automatic stay to allow Green Planet to effectuate the pre-petition termination of the Servicing Agreement.

31. Alternatively, in the event that this Court does not agree that the Servicing Agreement was effectively terminated prior to the Petition Date, by this Motion, Green Planet seeks an order granting relief from the automatic stay in order to terminate the Servicing Agreement as a result of GMAC's post-petition breaches.

32. Under § 362(d) of the Bankruptcy Code, a bankruptcy court shall lift the automatic stay "for cause," as follows:

> on request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay –
>
> (a) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

33. The *Bankruptcy* Code does not define "cause." Thus, a bankruptcy court must determine on a case-by-case basis whether "cause" exists, and whether discretionary relief from

---

[2] In fact, simultaneously with the filing of this Motion, Green Planet has filed a separate adversary proceeding seeking a declaration that the Servicing Agreement was terminated in accordance with its own terms prior to the Petition Date. *See* Adv. Pro. No. 12-01739, Docket No. 1.

9

the stay is appropriate pursuant to § 362(d). *In re Balco Equities, Ltd., Inc.*, 312 B.R. 734, 748 (Bankr. S.D.N.Y. 2004) (citing *Manhattan King David Rest., Inc. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y. 1993) (internal citations omitted)).

34. The moving party "has the burden to make a *prima facie* showing that 'cause' exists for relief from the stay." *Balco Equities*, 312 B.R. at 749 (citing *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). The burden of proof regarding all remaining issues, however, rests on the debtor. *Id.* (citing 11 U.S.C. § 362 (g)).

A. **Because The Servicing Agreement Was Terminated Pre-Petition, And No Affirmative Post-Petition Act Is Required To Effectuate The Termination, The Automatic Stay Should Be Modified To Allow Green Planet To Treat The Servicing Agreement As Terminated**

35. As set forth above, based upon GMAC's pre-petition breaches, Green Planet provided GMAC with written notice, in accordance with the terms of the Servicing Agreement, advising that it was exercising its right to terminate the Servicing Agreement for cause.

36. As further set forth above, GMAC's breaches of the Servicing Agreement cannot be cured. Accordingly, no further post-petition affirmative act is required to terminate the Servicing Agreement, beyond the mere passage of time.

37. The automatic stay does not prevent a contract from terminating by its own terms where termination does not hinge on an affirmative post-petition act. *See In re St. Casimir Dev. Corp.*, 358 B.R. 24, 44-45 (S.D.N.Y. 2007) (citing *In re Margulis*, 323 B.R. 130, 134-35 (Bankr. S.D.N.Y. 1985)). Specifically, courts – including this court – have found that the "automatic stay does not toll or restrain the mere passage of time" and does not prevent a contract from terminating by its own terms when no act is required to complete such termination. *Margulis*, 323 B.R. at 133. *See also Intelligent Mailing Solutions, Inc. v. Ascom Hasler Mailing Systems*, 2006 LEXIS 6488 (N.D. Ohio 2006) (where non-debtor party exercised its right to terminate pre-

petition, and contract terminated by its own terms, the court found that no motion to lift the automatic stay was necessary in order for the non-debtor party to effectuate the termination of the contract).

38. As such, Green Planet asserts that § 362(a) of the Bankruptcy Code does not prevent the Servicing Agreement from terminating by its own terms. In an abundance of caution, however, Green Planet makes this Motion to obtain an order modifying the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code to the extent necessary or required to permit the Servicing Agreement's termination, and to permit Green Planet to effectuate the termination in accordance with the Servicing Agreement's own terms.

**B. Alternatively, Even If The Servicing Agreement Was Not Terminated Pre-Petition, Green Planet Is Entitled To Relief From The Automatic Stay In Order To Terminate The Servicing Agreement Based Upon GMAC's Post-Petition Breaches Of Same**

39. Assuming, *arguendo*, that this Court does not agree that the Servicing Agreement was terminated by its own terms prior to the Petition Date, Green Planet is nevertheless entitled to relief from the automatic stay to effectuate a post-petition termination based upon GMAC's continued and ongoing post-petition breaches of the Servicing Agreement.

40. As set forth above, despite its representations to the contrary, GMAC has, during the time period subsequent to the Petition Date, continued to breach the Servicing Agreement. *See* Neubert Aff., ¶ 26. Further, as noted above, neither the pre- nor post-petition breaches by GMAC are curable. While the monetary damages resulting from the loss of servicing fees in connection with the refinanced loans may be quantifiable, the damage to Green Planet's business interest in the GPS Loan Pool, including loss of competitive position and servicing rights cannot be reduced to money damages. *Id.* at ¶ 24.

11

41.     Moreover, such damages are also difficult to assess with any degree of accuracy, particularly because future damages and losses attributable to GMAC's unlawful solicitation are impossible to quantify at this time. *Id.* at ¶ 25.

42.     A debtor's noncurable default under a contract constitutes cause under § 362(d)(1) to modify the automatic stay. *See In re New Breed Realty Enters., Inc.*, 278 B.R. 314, 325 (Bankr. E.D.N.Y. 2002). *See also In re Williams*, 299 B.R. 684, 686-87 (Bankr. S.D. Ga. 2003); *In re Deppe*, 110 B.R. 898, 906-07 (Bankr. D. Minn. 1990); *In re Ruiz*, 98 B.R. 636, 638-39 (Bankr. D.P.R. 1998).

43.     This principle is based on the fact that a debtor's rights under an executory contract are property of the estate and, pursuant to § 365(b), the debtor may either assume or reject such rights. If the debtor cannot assume the contract in accordance with the requirements of § 365(b) (because the default(s) under the contract cannot be cured), there is no reason to prohibit a non-debtor party from exercising its right under the contract in question, including exercising the right to terminate that contract. *See New Breed Realty*, 278 B.R. at 320 (finding that the relevant inquiry as to whether a debtor is barred from assuming an agreement is whether the debtor is in default of a non-monetary obligation that, "by definition is incapable of cure").

44.     Noncurable defaults, like GMAC's pre- and post-petition defaults under the Servicing Agreements, are typically non-monetary defaults, and are in the nature of "historical fact." *Id.* at 320 (citing *In re GP Express Airlines, Inc.*, 200 B.R. 222, 233 (Bankr. D. Neb. 1996) (noting that airline's failure to meet performance standards relating to completion and timely arrival of flights were incurable because they were "historical facts" and the debtor could not essentially go back in time to cure such breaches)).

45. The portions of GMAC's breaches that are not able to be reduced to money damages (namely, the damage to Green Planet's business interest in the GPS Loan Pool) are noncurable. Here, GMAC cannot go back in time and "un-solicit" the loans from the GPS Loan Pool, nor can GMAC reverse the prepayment or refinancing of such loans and return them to the GPS Loan Pool.

46. To determine whether noncurable breaches, such as GMAC's breaches, are sufficient to preclude assumption, courts use a "materially and economically significant" standard. *See New Breed Realty*, 278 B.R. at 321 (citing *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990). This standard does not require that the damages from the breach be "materially and economically significant," rather, courts look at the materiality and economic significance of the applicable <u>term</u> of the contract at issue. *Id.*

47. Thus, to preclude assumption, a noncurable default must (i) be a default of a term in the contract at issue that is integral to the bargain struck between the parties (a "material" term), and (ii) deny a party the full benefit of that bargain (rendering the term, and the breach thereof "economically significant"). *See In re Fleming Cos.*, 499 F.3d 300, 305-06 (3d Cir. 2007) (citing *Joshua Slocum*, 922 F.2d at 1092 (explaining the "materially and economically significant" standard).

48. Here, the non-solicitation provision of the Servicing Agreement is unequivocally a <u>material</u> <u>term</u> of the Servicing Agreement, and violation(s) of the non-solicitation provision deny Green Planet the full benefit of its bargain by undercutting the means by which Green Planet earns revenue as a loan servicer. *See* Jarish Aff., ¶ 6, 9.

49. As noted above, Green Planet earns its revenue by servicing the loans in the GPS Loan Pool. *Id.* at ¶ 6. If a loan is paid off early, Green Planet no longer receives a servicing fee.

13

*Id.* Thus, it was <u>essential</u> to Green Planet that the Servicing Agreement contained a non-solicitation clause to prevent GMAC from soliciting loans in the GPS Loan Pool to be refinanced by GMAC or one of its affiliates. *Id.* at ¶ 7. In fact, Green Planet would not have entered into any version of the Servicing Agreement that did not contain a non-solicitation clause. *Id.* at ¶ 9.

50. Thus, GMAC's post-petition breaches of the non-solicitation clause contained in Section 12.13 of the Servicing Agreement are noncurable breaches, which would preclude GMAC's assumption of the Servicing Agreement.

51. Accordingly, Green Planet respectfully submits that, based upon GMAC's noncurable post-petition breaches of the Servicing Agreement, "cause" exists under § 362(d)(1) to grant relief from the automatic stay to allow Green Planet to exercise its rights to terminate the Servicing Agreement for cause on account of GMAC's post-petition breaches.

## NOTICE

52. Notice of this Motion has been served upon: (a) the Debtors and their counsel; (b) counsel to the Committee; (c) the Office of the United States Trustee for the Southern District of New York; (d) the Office of the United States Attorney General; (e) the Office of the New York Attorney General; (f) the Office of the United States Attorney for the Southern District of New York; (g) each of the Debtors' prepetition lenders, or their agents; and (h) those parties who filed a request for notice in the Debtors' cases.

**WHEREFORE**, Green Planet respectfully requests that this Court enter an order: (a) modifying the automatic stay to permit Green Planet to effectuate its pre-petition termination of the Servicing Agreement; or (b) granting relief from the automatic stay to allow Green Planet to exercise its rights to terminate the Servicing Agreement, for cause, on account of GMAC's post-petition breaches; and (c) granting Green Planet such other and further relief as may be appropriate.

Dated: New York, New York
July 2, 2012

                                      **DUANE MORRIS LLP**

                                      */s/ Gerard S. Catalanello*
                                      Gerard S. Catalanello, Esq.
                                      James J. Vincequerra, Esq.
                                      1540 Broadway
                                      New York, New York 10036-4086
                                      (212) 692-1000
                                      (212) 692-1020 (facsimile)
                                      gcatalanello@duanemorris.com
                                      jvincequerra@duanemorris.com

                                      *Counsel to Green Planet Servicing, LLC*