Hearing Date: July 24, 2012 at 10:00 a.m.
Objection Deadline: July 17, 2012 at 4:00 p.m.

KLESTADT & WINTERS, LLP
Tracy L. Klestadt
Brendan M. Scott
570 Seventh Avenue, 17th Floor
New York, New York 10018
Tel: (212) 972-3000
Fax: (212) 972-2245

*Attorneys for Community South Bank*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
In re                                    :
                                         :        Chapter 11
RESIDENTIAL CAPITAL, LLC, *et al*.       :
                                         :        Case No. 12-12020 (MG)
           Debtors.                      :
                                         :        (Jointly Administered)
-------------------------------------------------------x

## MOTION FOR RELIEF FROM STAY

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Community South Bank ("CSB" or "Bank"), by and through its attorneys, Klestadt & Winters, LLP, as and for its motion for an order pursuant to 11 U.S.C. §362(d)(1) granting relief from the automatic stay to complete the foreclosure of the two mortgages and security interest it holds on lands and premises of Robert B. Chernin and Celeste Chernin with an address of 1882 East Mountain Road in Killington, Vermont (the "Mortgaged Property"), in which GMAC Mortgage, LLC ("GMAC") holds a subordinate debt and lien from Robert B. Chernin and Celeste Chernin; respectfully sets forth and represents:

### INTRODUCTION

1.  The Debtor and its related affiliates (collectively, the "Debtors") filed Chapter 11 petitions on May 14, 2012 (the "Petition Date") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and continued in the operation of their

businesses and properties as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.     On May 16, 2012, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this case, which consists of the following members: (i) Wilmington Trust, N.A., (ii) Deutsche Bank Trust Company Americas, (iii) The Bank of New York Mellon Trust Company, N.A., (iv) MBIA Insurance Corporation, (v) Rowena L. Drennen, (vi) AIG Asset Management (U.S.), LLC, (vii) U.S. Bank National Association, (viii) Allstate Life Insurance Company, and (ix) Financial Guaranty Insurance Company.

## JURISDICTION

3.     The Bankruptcy Court has jurisdiction over the Debtor's case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The statutory predicate for the relief sought herein is 11 U.S.C. §362(d).

## BACKGROUND

6.     The Mortgaged Property was acquired by Robert B. Chernin and Celeste Chernin in two deeds dated the same day, August 9, 1993, with one recorded in Book 135, Page 224 (Lot #3) and one recorded in Book 135, Page 227 (Lot #2). The lots are adjacent to each other, with the house on Lot #3 and the driveway on Lot #2 to access Lot #3.

7.     Lot #3 is described as:

Being all and the same lands and premises conveyed to Robert B. Chernin and Celeste Chernin by Warranty Deed of Gayle Gromada Zera dated August 9, 1993, and recorded in Book 135, Page 224 of the Town of Killington Land Records. ("Lot #3")

8.     Lot #2 is described as:

2

> Being all and the same lands and premises conveyed to Robert B. Chernin and Celeste Chernin by Warranty Deed of Paula S. Gromada Catalano, dated August 9, 1993, and recorded in Book 135, Page 227 of the Town of Killington Land Records.   ("Lot #2")

9.  On November 4, 2005, Robert B. Chernin and Celeste Chernin, executed and delivered to CSB a Mortgage to Lot #3 (the "2005 Mortgage").  The 2005 Mortgage was recorded in the Town of Killington Land Records on November 10, 2005, in Book 280, at Page 170.  A copy of the 2005 Mortgage is annexed hereto as to the Affidavit of Elizabeth A. Glynn, dated July 24, 2012 ("Glynn Affidavit"), as **Exhibit "A"**.

10. On February 15, 2007, Robert B. Chernin and Celeste Chernin, executed and delivered to CSB a Mortgage to Lot #3 and Lot #2 (the "2007 Mortgage", and together with the 2005 Mortgage, the "Mortgages").  The 2007 Mortgage was recorded in the Town of Killington Land Records on February 27, 2007, in Book 293, at Page 210.  A copy of the 2007 Mortgage is annexed to the Glynn Affidavit as **Exhibit "B"**.

11. On November 4, 2005, Robert B. Chernin executed and delivered to CSB an Unconditional Guarantee (the "RBC $990,000 Guaranty") of the indebtedness owed by Walzik Risk Analysis, LLC pursuant to a Note from Walzik Risk Analysis, LLC to CSB dated November 4, 2005 in the original principal amount of $990,000 (the "RBC $990,000 Note").

12. On November 4, 2005, Celeste Chernin executed and delivered to CSB a Guarantee (the "CC $990,000 Guaranty") of the indebtedness owed by Walzik Risk Analysis, LLC pursuant to a Note from Walzik Risk Analysis, LLC to CSB dated November 4, 2005 in the original principal amount of $990,000 (the "CC $990,000 Note").  The guaranty of Celeste Chernin was limited to her interest in the Mortgaged Property.

13. On February 15, 2007, Robert B. Chernin executed and delivered to CSB an Unconditional Guarantee (the "RBC $264,000 Guaranty") of the indebtedness owed by Walzik

3

Risk Analysis, LLC pursuant to a Note from Walzik Risk Analysis, LLC to CSB dated February 15, 2007 in the original principal amount of $264,000 (the "RBC $264,000 Note"). The RBC $264,000 Guaranty is secured by the 2007 Mortgage.

14. On February 19, 2007, Celeste Chernin executed and delivered to CSB a Guarantee (the "CC $264,000 Guaranty") of the indebtedness owed by Walzik Risk Analysis, LLC pursuant to a Note from Walzik Risk Analysis, LLC to CSB dated February 15, 2007 in the original principal amount of $264,000 (the "CC $264,000 Note"). The guaranty of Celeste Chernin was limited to her interest in the Mortgaged Property.

15. A foreclosure action to foreclose the Mortgages was commenced by CSB in the Rutland, Vermont Superior Court, docket number 593-8-09 Rdcv by Complaint dated August 11, 2009 (the "State Court Foreclosure Action").

16. Notably, CitiMortgage holds a first mortgage on Lot #3 (the "CitiMortgage Mortgage"). A prior mortgage given by Robert B. Chernin and Celeste Chernin to North American Savings Bank, F.S.B. as lender dated March 31, 2004 and recorded in Book 252, Page 516 of the Town of Killington Land Records, was assigned to CitiMortgage, Inc. by Assignment of Mortgage dated December 23, 2009 and recorded March 14, 2010 in the Town of Killington Land Records. CitiMortgage, Inc. was substituted as a defendant in the State Court Action for North American Savings Bank, F.S.B.

17. A mortgage was granted by Robert B. Chernin and Celeste Chernin to Mortgage Electronic Registration System, Inc. (MERS) solely as nominee for GMAC Mortgage, LLC dated March 15, 2007 in the face amount of $242,000.00, and recorded in Book 294, Page 370 of the Town of Killington Land Records (the "GMAC Mortgage"). A copy of the GMAC Mortgage is annexed to the Glynn Affidavit as **Exhibit "C"**.

4

18. The GMAC Mortgage is subordinate to the CitiMortgage Mortgage and CSB's 2005 Mortgage and the 2007 Mortgage.

19. The mortgages on the two parcels are recorded as follows:

| House Lot-Lot #3 | Adjacent Lot-Lot #2 |
| --- | --- |
| North American Savings Bank Mortgage (now held by CitiMortgage) ($333,700) | 2007 Mortgage to Community Savings Bank |
| 2005 Mortgage to Community Savings Bank | GMAC Mortgage ($242,000) |
| 2007 Mortgage to Community Savings Bank | |
| GMAC Mortgage ($242,000) | |

20. The GMAC Mortgage was given to secure indebtedness owed to GMAC. That GMAC Mortgage involves MERS, solely as nominee for GMAC Mortgage, LLC. No indebtednesses is owed to MERS, as MERS is only an electronic registry.

21. According to the MERS registry GMAC, the original Lender, is the servicer of that mortgage. GMAC is the Lender in the mortgage. MERS is only an electronic registry.

22. The Judgment Order and Decree of Foreclosure was issued in the State Court Foreclosure Action dated December 30, 2010, as amended July 27, 2011 and as amended April 6, 2012 (collectively, the "Judgment Order and Decree of Foreclosure"). See **Exhibit "D"** annexed to the Glynn Affidavit.

23. The GMAC Mortgage is referenced in the Judgment Order and Decree of Foreclosure with GMAC having a right to redeem. The Judgment Order and Decree of Foreclosure provides the same right to redeem to MERS. GMAC and MERS were given the right to redeem.

5

24. The redemption periods have all expired for the subordinate mortgage holders. The public sale of the Mortgaged Property needs to be scheduled to complete the foreclosure. It was scheduled for the end of June, 2012, but has been canceled because of the need to obtain relief from stay in the GMAC chapter 11 case so as not to violate any automatic stay in completing the foreclosure.

25. CSB seeks relief from the automatic stay to complete the State Court Foreclosure Action.

26. As set forth above, GMAC holds no equity in the Mortgaged Property on account of the GMAC Mortgage or the corresponding debt.

27. Pursuant to the Judgment Order and Decree of Foreclosure, CSB is owed $1,180,207.19 plus interest accruing at the rate of $153.46 from 6/12/10 to 7/27/10 and thereafter at the per diem rate of $350.92 from 7/28/10 to the date of redemption.

28. CitiMortgage is owed $329,314.87 as of June 8, 2012. See **Exhibit "E"**, annexed to the Glynn Affidavit.

29. Lot #3 was appraised at $760,000, as of October 7, 2011. See **Exhibit "F"**, annexed to the Glynn Affidavit.

30. Lot #2 was appraised at $50,000 as of October 21, 2011. See **Exhibit "G"**, annexed to the Glynn Affidavit.

## RELIEF REQUESTED AND BASIS FOR RELIEF

31. Section 362(a) of the Bankruptcy Code imposes a stay of, among other things:

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce a lien against property of the estate;

6

>   (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
>   (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . .

11 U.S.C. § 362(a)(6).

32. The Bankruptcy Code allows for relief from the automatic stay through Section 362(d), which states, in relevant part, that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
>   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
>   (2) with respect to a stay of an act against property under subsection
>
>   (a) of this section if –
>      (A) the debtor does not have an equity in such property; and
>      (B) such property is not necessary to an effective reorganization;

See 11 U.S.C. § 362(d).

## ARGUMENT

### I. Relief From the Automatic Stay Should Be Granted Under 11 U.S.C. § 362(d)(2).

a. The Debtor lacks equity in the Mortgaged Property and is barred from asserting any rights under the GMAC Mortgage.

33. The allocation of burdens of proof in an action seeking relief from the automatic stay is set forth in section 362(g). The moving party carries the burden of proof only as to the debtor's equity in the property. The party opposing the lifting of the stay carries the burden as to *all other* issues. In re 160 Bleecker Street Associates, 141 B.R. 275, 281 (Bankr. S.D.N.Y. 1993) (emphasis added). In Roxrun Estates, Inc., 74 B.R. 997, 1002 (S.D.N.Y. 1987) ("The party moving for relief from the stay carries the burden of proof on the issue of the debtor's equity. . .

7

while the party opposing such relief bears the burden of proof on all other issues."); In re Garsal Realty, Inc., 89 B.R. 140, 153-156.

34. Equity is the "difference between the property value and the total amount of liens against it." In re Stewart, 745 F.2d 1194, 1195 (9th Cir. 1984); In re Garsal Realty, Inc., 98 B.R. 140, 154 (Equity is "the remaining interest belonging to one who has pledged or mortgaged his property, or the surplus of value which may remain after the property has been disposed of for the satisfaction of liens.")

35. Lot #3 was appraised at $760,000, as of October 7, 2011. See **Exhibit "F"**, annexed to the Glynn Affidavit.

36. As set forth above, CitiMortgage holds a first position mortgage on Lot #3 in the amount of $333,000. CSB holds a second position mortgage on Lot #3 in an amount that exceeds the appraised value of Lot #3. Consequently, GMAC could not possibly hold any equity with respect to Lot #3.

37. Lot #2 was appraised at $50,000 as of October 21, 2011. See **Exhibit "G"**, annexed to the Glynn Affidavit.

38. CSB holds a first position mortgage on Lot #2 in an amount that exceeds the appraised value of the Lot #2. Consequently, GMAC could not possibly hold any equity with respect to Lot #2.

39. Significantly, pursuant to the terms of the Judgment Order and Decree of Foreclosure, GMAC forever waived and is barred from asserting any right of redemption in Mortgaged Property under the GMAC Mortgage because it failed to redeem the Mortgaged Property prior to July 1, 2011.

b. <u>The Mortgaged Property is not a necessary part of the Debtors' reorganization efforts</u>.

8

40. In <u>United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.</u>, 484 U.S. 365, 376, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1998), the Supreme Court held that to establish that collateral is necessary for an effective reorganization under section 362(d)(2), a debtor must show that the "property is essential for an effective reorganization that is in prospect."

41. Here, GMAC has demonstrated that it does not deem the Mortgaged Property to be an important part of its reorganization efforts. Prior to the Petition Date, GMAC waived its right to redeem the Mortgaged Property. GMAC's decision was no doubt based on GMAC's acknowledgement that the value of CSB's senior liens on the Mortgaged Property far exceed the total value of the Mortgaged Property. In light of the value of CBS's valid perfected liens, GMAC is completely under secured with respect to the Mortgaged Property.

42. In consideration of the facts, GMAC will be unable to establish that it holds equity in the Mortgaged Property or that the Mortgaged Property is necessary to its reorganization.

43. For the foregoing reasons, CSB should be granted relief from the automatic stay.

**II. Relief From the Automatic Stay Should Be Granted Under 11 U.S.C. § 362(d)(1).**

44. Moreover, upon information and belief, the value of the Mortgaged Property is decreasing, or not increasing at the same rate as the indebtedness owed to CSB is increasing.

45. Therefore, CSB's interest in the Mortgaged Property is not adequately protected.

46. CSB does not know whether the Mortgaged Property, including but not limited to CSB's interest in the Mortgaged Property, is properly insured. Therefore, CSB's interest in the Mortgaged Property is not adequately protected.

47. CSB does not know whether the Mortgaged Property is being properly maintained. Therefore, CSB's interest in the Mortgaged Property is not adequately protected.

48. A continued stay of CSB's action against the Mortgaged Property will cause CSB significant prejudice.

49. Therefore, cause exists to terminate the automatic stay to permit CSB to exercise its non-bankruptcy rights and remedies with respect to the Mortgaged Property pursuant to § 362(d)(1) of the Bankruptcy Code.

## NOTICE

50. Notice of this Motion will be provided in accordance with the provisions set forth in the *Order Under Bankruptcy Code Sections 102(1), 105(A) and 105(D), Bankruptcy Rules 1015(C), 2002(M) And 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures* [Docket Entry No. 141]. CSB respectfully submits that the foregoing notice is good and sufficient, and no further or additional notice need be given of this application n or the relief sought herein.

## NO PRIOR RELIEF

51. No other application for the relief sought herein has been made by Movant to this or any other court.

10

**WHEREFORE**, CSB respectfully requests that this Court enter an order (i) granting it relief from the automatic stay allowing it to proceed with a confirmation hearing on the sale of the Mortgaged Property and apply the proceeds to satisfy its lien, and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 2, 2012

KLESTADT & WINTERS LLP

By: */s/ Brendan M. Scott*
Tracy L. Klestadt
Brendan M. Scott
570 Seventh Avenue, 17th Floor
New York, New York 10018
Tel: (212) 972-3000
Fax: (212) 972-2245

*Counsel for Community South Bank*