# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:11-cv-62424

| | |
|---|---|
| Christina Ulbrich, as an individual and as a representative of the classes, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GMAC Mortgage, LLC, formerly known as GMAC Mortgage Corporation, and Balboa Insurance Services, Inc., | ) ) ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Christina Ulbrich ("Plaintiff"), by and through her attorneys, Nichols Kaster, PLLP, and on behalf of herself, the Putative Classes set forth below, and in the public interest, brings the following Complaint against GMAC Mortgage, LLC, formerly known as GMAC Mortgage Corporation ("GMAC"), and Balboa Insurance Services, Inc. ("Balboa") (collectively referred to herein as "Defendants").

## PRELIMINARY STATEMENT

1.     Plaintiff and the Putative Class members have mortgage loans secured by residential property, and were charged for lender-placed (also known as "force-placed") insurance by GMAC.

2.     GMAC has systematically violated the legal rights of Plaintiff and other Putative Class members in two fundamental respects, as set forth below.

3.       First, GMAC unfairly, unjustly, and unlawfully force-placed backdated insurance on property owned by Plaintiff and other Putative Class members, and charged Plaintiff and other Putative Class members for coverage that already was expired, in whole or in part.  The National Association of Insurance Commissioners has condemned this practice, stating that policies "should not be back-dated to collect premiums for a time period that has already passed[.]"  *See Exhibit 1.*

4.       Second, GMAC unfairly, unjustly, and unlawfully profited from force-placing insurance on property owned by Plaintiff and other Putative Class members, by purchasing non-competitive force-placed coverage from Balboa and other insurance companies that paid kickbacks or commissions to GMAC and/or its affiliates.

5.       GMAC engaged in this conduct in bad faith, knowing that its actions were contrary to applicable law, reasonable commercial standards of fair dealing, and the reasonable expectations of borrowers upon entering into their mortgage agreements.

6.       Based on GMAC's conduct as described herein, Plaintiff asserts claims against GMAC for (1) breach of contract/breach of covenant of good faith and fair dealing; (2) unjust enrichment; (3) breach of fiduciary duty; and (4) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

7.       In addition, Plaintiff asserts a separate unjust enrichment claim (Count 5) against Balboa, based on Balboa's collection and retention of premium payments for backdated insurance policies that were force-placed by GMAC and provided no appreciable benefit to the named insureds for periods that already had expired.

8.       Plaintiff asserts these claims on behalf of two proposed classes and two proposed sub-classes of GMAC borrowers.

9.      Plaintiff asserts her breach of contract/breach of covenant of good faith and fair dealing claim (Count One) and unjust enrichment claim against GMAC (Count Two) on behalf of a putative Nationwide Force-Placed Class consisting of all persons with a residential mortgage loan or home equity line of credit with GMAC who were charged for force-placed insurance by GMAC on or after November 14, 2006.

10.     Plaintiff asserts her breach of fiduciary duty claim (Count Three) on behalf of a putative Escrow Sub-Class consisting of all persons in the Nationwide Force-Placed Class whose force-placed insurance premiums were escrowed by GMAC.

11.     Plaintiff asserts her FDUTPA claim (Count 4) on behalf of a putative Florida Class consisting of all persons with a residential mortgage loan or home equity line of credit with GMAC secured by real property in the State of Florida who were charged for force-placed insurance by GMAC on or after November 14, 2007.

12.     Finally, Plaintiff asserts her unjust enrichment claim against Balboa (Count 5) on behalf of a putative Balboa Sub-Class consisting of all persons in the Nationwide Force-Placed Class whose force-placed policies were purchased by GMAC through Balboa.

13.     Plaintiff and the Putative Classes seek injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief for Defendants' unlawful conduct, as described herein.

## **THE PARTIES**

14.     Individual and representative Plaintiff Christine Ulbrich resides in Fort Lauderdale, Florida.  Plaintiff is a member of each of the Putative Classes defined herein.

3

15.    GMAC is an indirect, wholly owned subsidiary of Ally Financial Inc., and is headquartered in Fort Washington, Pennsylvania.  GMAC does business in Florida and several other states throughout the country.

16.    Balboa is an insurance company headquartered in California.  Many of GMAC's lender-placed insurance policies are purchased through Balboa.

## JURISDICTION AND VENUE

17.    This Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the State of Florida, and Defendants are citizens of different states.  The amount in controversy in this action exceeds $5,000,000.00, and there are more than 100 members of each of the Putative Classes.

18.    Venue is proper in the United States District Court, Southern District of Florida, pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this District, Defendants conduct business in this District, and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

## FACTUAL ALLEGATIONS

I.    **Origination of Plaintiff's Mortgage Loan**

19.    On or about August 4, 2003, Plaintiff obtained a loan from GMAC Mortgage Corporation in the amount of $201,000, which was secured by a mortgage ("Mortgage") on her residential property ("Property") in Fort Lauderdale, Florida.  *See Exhibit 2.*[1]  GMAC Mortgage, LLC is the successor-in-interest to GMAC Mortgage Corporation, and is the servicer of this mortgage loan.

---

[1] This mortgage loan refinanced an earlier mortgage loan that Plaintiff previously had obtained from GMAC Mortgage Corporation on June 12, 2002.

20.     Paragraph 5 of Plaintiff's Mortgage states that Plaintiff is obligated keep the improvements on the Property insured against loss by fire and other hazards "for which Lender requires insurance[.]"  It further states that "[i]f borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense."   However, it does **not** state that GMAC may purchase backdated insurance coverage, does not state that GMAC may arrange for commissions for itself or its affiliates in connection with lender-placed insurance coverage, and does not give GMAC the right to engage in the other conduct alleged herein.

## II.     GMAC Repeatedly Purchases Backdated Insurance for Plaintiff's Property

### A.     Backdated (and Duplicative) Hazard Insurance

21.     As of July 6, 2010, Plaintiff maintained $254,800 worth of hazard insurance coverage on her property through Nationwide Insurance, which was effective through July 6, 2011.  *See Exhibit* 3.  GMAC was listed as a beneficiary under this hazard insurance policy, and received a copy of the policy declarations page.

22.     In spite of this hazard insurance coverage, GMAC sent Plaintiff a form letter ("Initial Hazard Insurance Letter") on or about January 3, 2011, falsely claiming that there was "no evidence of current hazard insurance coverage" on the Property.  *See Exhibit 4.*  This Initial Hazard Insurance Letter further stated: "In order to prevent us from purchasing lender-placed hazard insurance coverage on your property, we must be provided with evidence of insurance coverage with an effective date of 07/06/2010."

23.     On or about February 17, 2011, GMAC sent Plaintiff a second form letter ("Second Hazard Insurance Letter"), falsely reasserting that there was "no evidence of a

hazard insurance policy in effect for the above property[.]"  *See Exhibit 5*.  In this Second

Hazard Insurance Letter, GMAC further stated:

> Since we have not received evidence of hazard coverage, we will secure
> hazard insurance coverage, also known as lender-placed hazard insurance.
> This coverage will provide protection to us for loss to your dwelling up to a
> limit of $254,800.00 with a deductible of $1,000.
>
> * * *
>
> The effective date of this coverage will be 07/06/2010.  You are responsible
> for reimbursing us for the cost of this coverage in the amount of $12,786.64[.]

*Id.*  The amount demanded by GMAC for this force-paced coverage ($12,786.64) was ***more***

***than 14 times the premium*** for Plaintiff's existing hazard insurance policy ($892.41).

24.    GMAC had no legal right or reason to purchase force-placed hazard insurance

coverage because Plaintiff already had a hazard insurance policy in place, with an effective

date of July 6, 2010, providing for $254,800 worth of coverage and a $1,000 deductible.  *See*

*supra* at ¶ 21.  GMAC's attempt to force-place this hazard insurance coverage was unfair,

unconscionable, unjustified, and unlawful.[2]

**B.    Backdated Wind Insurance**

25.    Plaintiff's Mortgage does not require her to carry wind insurance, and GMAC

did not require her to carry wind insurance when she entered into her Mortgage.  In fact,

shortly before Plaintiff refinanced with GMAC and entered into this Mortgage, a GMAC

representative explicitly stated that Plaintiff did not have to carry wind coverage.  *See Exhibit*

*6* (account note dated June 5, 2003).

---

[2] GMAC apparently recognized this after sending Plaintiff the Second Hazard Insurance
Letter.  For reasons that were never explained, GMAC eventually aborted its attempt to
force-place hazard insurance coverage on Plaintiff's Property and did not charge Plaintiff's
account for such coverage.

26.     More than seven years later, however, GMAC suddenly claimed that Plaintiff was required to maintain wind insurance on her Property.

27.     On or about December 19, 2010, GMAC sent Plaintiff a form letter ("Initial Windstorm Letter"), which stated:

> This notice is to advise you that your hazard policy[3] furnished to us does not include windstorm (hurricane) and hail coverage. Insurance coverage against the perils of "windstorm and hail" is a requirement under the terms of your mortgage/deed of trust.

*Exhibit 7.* This Initial Windstorm Letter further informed Plaintiff that if she did not provide "proof of acceptable insurance coverage," GMAC would purchase $277,871 worth of wind insurance coverage for her at a premium cost of $9,708.12.

28.     On or about February 2, 2011, GMAC sent Plaintiff a second form letter relating to wind insurance ("Second Windstorm Letter"). *See Exhibit 8.* This Second Windstorm Letter reasserted that Plaintiff was required to obtain windstorm insurance for her Property, and renewed GMAC's threat to force-place windstorm coverage on her Property if she did not obtain such coverage on her own.

29.     On March 23, 2011, GMAC sent Plaintiff a third form letter, entitled "Notice of Windstorm Coverage Placement." *See Exhibit 9.* In the Notice of Windstorm Coverage Placement, GMAC informed Plaintiff that it had purchased $277,871 worth of windstorm coverage through Balboa at a premium cost of $9,708.12. ***This force-placed windstorm coverage was backdated more than 17 months*** to reflect an effective policy period of October 1, 2009 through October 1, 2010. As a result, ***the windstorm policy had fully expired nearly five months before GMAC purchased it***.

---

[3] GMAC's reference to Plaintiff's hazard policy in the Initial Windstorm Letter belies its statement in the Initial Hazard Letter (just two weeks later) that "we have no evidence of current hazard insurance coverage on your property." *See Exhibit 4.*

30.     GMAC and/or its affiliates received a kickback or commission from Balboa on this force-placed policy.[4]

31.     On the very same day that GMAC sent Plaintiff the Notice of Windstorm Coverage Placement (March 23, 2011), it sent her a "Windstorm Insurance Renewal Notice." *See Exhibit 10.* In the Windstorm Insurance Renewal Notice, GMAC stated that "the windstorm insurance coverage we placed on your account has expired." GMAC further stated that "the windstorm coverage will be renewed if a replacement windstorm policy is not received."[5]

32.     Approximately one month later, on April 27, 2011, GMAC sent Plaintiff a second Notice of Windstorm Coverage Placement ("Second Notice of Windstorm Coverage Placement"). This Second Notice of Windstorm Coverage Placement informed Plaintiff that GMAC had force-placed a second windstorm policy through Balboa, which provided $276,889 worth of coverage at a premium cost of $9,673.80. *See Exhibit 11.* This coverage was **backdated more than six months**, showing an effective policy period of October 1, 2010, through October 1, 2011. Notably, the effective date of this policy predates GMAC's first letter to Plaintiff alleging her wind coverage was insufficient by more than two months.

33.     GMAC and/or its affiliates also received a kickback or commission from Balboa on this lender-placed policy.

34.     The premiums for these backdated windstorm policies were charged to Plaintiff's mortgage escrow account on March 22, 2011 and April 26, 2011. Prior to this

---

[4] The commission arrangements between major banks and insurance companies that issue force-placed coverage (including Balboa) have been reported in an award-winning investigative article in *American Banker* magazine. *See Exhibit 1.*

[5] According to this Windstorm Insurance Renewal Notice, there are many "disadvantages" to such force-placed insurance coverage, including the fact that such coverage is "substantially more expensive" than typical policies. *Id.*

time, Plaintiff's monthly mortgage payment was $1,227.52 (including $1,141.26 in principal and interest and $86.26 in escrows). However, after these charges for force-placed windstorm insurance posted to her account, her monthly payment more than doubled to $2,695.59 (still reflecting $1,141.26 in principal and interest, but now reflecting $1,554.33 in monthly escrow charges).[6]

35.     This severe increase in Plaintiff's monthly mortgage payments has placed a crushing financial burden on her. As of Plaintiff's February 2011 statement, she was current on her mortgage and capable of meeting her monthly payment obligation. However, after these charges posted to her account, she was unable to meet the increased payment amount, and GMAC refused to accept payments from her for less than the full payment amount.[7] As a result, GMAC is now threatening to foreclose on her Property.

**C.     Backdated (and Duplicative) Flood Insurance**

36.     Shortly after GMAC force-placed this backdated windstorm insurance on Plaintiff's Property, it also purchased backdated flood insurance for Plaintiff's property, even though she already had flood insurance coverage.

37.     As of April 28, 2011, Plaintiff had $250,000 worth of flood insurance coverage on her property. *See Exhibit 12.* This is the maximum amount of coverage

---

[6] In order to avoid further charges for force-placed windstorm insurance, Plaintiff has now purchased her own windstorm insurance policy for her Property, even though this coverage was not required when she took out her mortgage.

[7] Plaintiff increased her mortgage payment from $1,227.52 to $1,957.45 in May of 2011 (the amount demanded by GMAC after the charge for the first windstorm policy posted to her account). However, she was unable to increase her mortgage payment to $2,695.59 after the charge for the second windstorm policy posted to her account. Although she attempted to pay her normal mortgage payment, GMAC rejected her payment because it did not include the additional escrow amount, and GMAC continues to refuse payments from Plaintiff on the same basis.

9

available under the National Flood Insurance program for single family homes such as Plaintiff's residence.

38.     GMAC was listed as a beneficiary under this flood insurance policy, and received a copy of the policy declarations page.

39.     In spite of this flood insurance coverage, GMAC sent Plaintiff a form letter ("Initial Flood Insurance Letter") on or about May 11, 2011, falsely claiming that "[o]ur loan file does not contain evidence of flood insurance in force on your property."  *See Exhibit 13*. In this Initial Flood Insurance Letter, GMAC threatened to purchase a lender-placed flood insurance policy for Plaintiff's Property if she did not provide "evidence that a flood insurance policy is in effect[.]"

40.     The following month, on June 30, 2011, GMAC sent Plaintiff a "Notice of Flood Insurance Placement," indicating that GMAC had purchased $250,000 worth of flood insurance coverage through Southwest Business Corporation at a premium cost of $4,274.50. *See Exhibit 14.*  This duplicative coverage was backdated to April 28, 2011 (the effective date of Plaintiff's already-existing flood insurance policy).   The amount demanded by GMAC for this force-paced coverage ($4,274.50) was ***more than 7 times the premium*** for Plaintiff's existing flood insurance policy ($577.00).

41.     GMAC and/or its affiliates also received a kickback or commission on this force-placed flood insurance policy.

42.     Plaintiff's escrow account was charged $4,274.50 for this force-placed flood insurance.  As a result, GMAC increased Plaintiff's mortgage payment, in August 2011, to $4,780.45 per month (still reflecting $1,141.26 in principal and interest, but now reflecting

10

$3,639.19 in monthly escrow charges).[8]  This payment amount is approximately ***three times***

the amount that Plaintiff was required to pay in February 2011, and the escrow portion of the

payment ($3,639.19) is ***more than 40 times*** the previous escrow amount.  *See supra* at ¶ 34.

### III.    Grudging Cancellation of Certain Policies in Response to Persistent Complaints

43.    Plaintiff attempted to address this situation herself by contacting GMAC on

numerous occasions.  However, her concerns fell on deaf ears.

44.    On September 8, 2011, a representative from Plaintiff's insurance agency

(The Sena Group) also contacted GMAC in an effort to address the situation.  In response, a

GMAC representative claimed that lender-placed insurance had been purchased for

Plaintiff's Property because she refinanced her mortgage in December 2010.    This

representation was false.  Plaintiff did not refinance her mortgage in December 2010, and has

not refinanced since she entered into her Mortgage with GMAC in August 2003.

45.    The following day, on September 9, 2011, The Sena Group wrote a letter to

GMAC in another attempt to "help get the insurance records corrected at GMAC."  *See*

*Exhibit 15.*  Shortly thereafter, GMAC cancelled the force-placed flood insurance policy on

September 15, 2011, and cancelled the first force-placed windstorm policy on September 22,

2011.  However, it still has not refunded any portion of the second backdated windstorm

policy, and has not sent Plaintiff any updated mortgage statements or escrow statements.

46.    Moreover, GMAC is continuing to threaten to foreclose on Plaintiff's

Property, even though the alleged arrearages on her Mortgage are entirely attributable to (1)

the unjustified and unlawful charges that GMAC imposed for force-placed insurance, and (2)

---

[8] On the same statement, GMAC claimed an alleged escrow shortage of -$22,926.49.

its continuing refusal to accept mortgage payments from Plaintiff that do not include additional escrow amounts for force-placed coverage.

## IV.    GMAC's History of Mortgage Abuse

47.    The above conduct is part of a larger pattern and practice of abusive mortgage practices and force-placed insurance practices by GMAC.

48.    In October 2010, the Ohio Attorney General's Office filed one of the first lawsuits in the nation against a mortgage servicer over fraudulent affidavits filed in foreclosure cases. This lawsuit charged GMAC Mortgage, LLC and its parent, Ally Financial Inc., of filing fraudulent affidavits to mislead courts in hundreds of Ohio foreclosures. *See* http://www.ohioattorneygeneral.gov/SpeakOutOhio/Blog/October-2010/Finding-problems-with-foreclosures (last visited Nov. 10, 2011).

49.    On April 13, 2011, GMAC Mortgage, LLC and several of its affiliates stipulated to a Consent Order to resolve similar allegations by the Board of Governors of the Federal Reserve System and the Federal Deposit Insurance Corporation.

50.    In addition, GMAC's forced-placed insurance practices are currently under scrutiny by state attorneys general from all 50 states. *See Exhibit 16.*

51.    GMAC also has been the subject of several class action lawsuits relating to its mortgage practices and force-placed insurance practices. *See, e.g., Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384 (3d Cir. 2005) (finding plaintiff stated valid claim against GMAC for unlawful mark-ups and kickbacks); *Acree v. Gen. Motors Acceptance Corporation*, 92 Cal. 4th 385 (3d Dist. Ct. App. 2001) (upholding jury verdict finding GMAC affiliate breached covenant of good faith and fair dealing in connection with force-placed auto insurance coverage).

52.     Further, GMAC's mortgage loan customers have published a litany of complaints against GMAC online.  The following complaint, posted by "Wilbur" on July 24, 2010, is one example:

> **IS IT LEGAL for GMAC Mortgage to charge us insurance for last year that we didn't know about?**
>
> We just got a letter telling us that for 2009/2010 we don't have sufficient home/wind insurance and they will add it to our mortgage payment, doubling it, unless we pay them $6,000.   My husband went immediately to our insurance agent, got the SAME COVERAGE, for $3,000 and we thought that was that.   Then we got the monthly mortgage that doubles our payments anyway and called!  We were told that this was to pay for the insurance for 2008/2009 that they, GMAC[,] had written and paid for us – even though we didn't know it, had no idea, and were never advised that according to GMAC, we didn't have the insurance they want us to have for last year either.
>
> * * *
>
> One mortgage company, not GMAC, told me he's been in the business for years and this sounds like a high class scheme to rip off the mortgage customers and that they can't charge for last years insurance costs that the customer never took out or knew about.
>
> * * *
>
> We called and spoke with the Insurance dept and also Customer Service but the phone agents said over and over in one way or another that this is the way it is.   We always thought GMAC was a reputable company but we don't any more.  Hope somebody has some good info for me.  I wish I had the telephone to call our president but – oh, well.  We don't.  WE could lose our house now on account of this.

*Exhibit 17.*

53.     This type of conduct and the other conduct alleged in this Complaint is unfair, unreasonable, unconscionable, unjust, and inconsistent with commercial standards of good faith and fair dealing.

## V.   Balboa's Participation in GMAC's Misconduct

54.   Balboa has actively facilitated and participated in GMAC's abusive force-placed insurance practices.

55.   Balboa accepted handsome premium payments for backdated insurance policies that were force-placed by GMAC, including but not limited to the windstorm policies referenced above. *See supra* at ¶¶ 29, 32.

56.   Balboa paid kickbacks or commissions to GMAC in connection with these force-placed insurance policies. *See supra* at ¶¶ 30, 33.

57.   In addition, Balboa performed insurance tracking services for GMAC, and communicated with GMAC borrowers on behalf of GMAC when their existing coverage was deemed to be deficient and/or lacking by GMAC and Balboa.   As one former Balboa employee has explained:

> when you call in to customer service, for say, GMAC, you're not actually speaking to a GMAC employee. You're actually speaking to a Bank of America associate working for Balboa Insurance[9] who is required by their business to business contract with GMAC to state that they are, in fact, an employee of GMAC. The reasoning is that if you do not realize you're speaking to a Bank of America/Balboa Insurance employee, you have no reason to question the validity of the information you are receiving from them. If you call your insurance agent and ask them for the lienholder information for your GMAC/Wells Fargo/etc lien (home or auto) you will be provided with their name, but the mailing address will be a PO Box at one of Balboa's 3 main tracking locations (Moon Township/Coreaopolis [sic], PA, Dallas/Ft Worth, TX, or Phoenix/Chandler, AZ).

*Exhibit 18*.

58.   The form letters that were sent on GMAC letterhead to Plaintiff reference a Coraopolis, PA post office box address. *See, e.g., Exhibits 7-11*.  On information and belief, these letters were sent by Balboa on behalf of GMAC.

---

[9] Bank of America recently sold certain assets of Balboa to QBE Insurance Group.

14

59.     At all relevant times, Balboa and GMAC conspired to enrich themselves at the expense of GMAC's borrowers in connection with force-placed insurance coverage, by backdating coverage, charging borrowers inflated premiums for force-placed coverage, and skimming the excess for themselves.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

61.     Plaintiff asserts her breach of contract/breach of covenant of good faith and fair dealing claim (Count One) and unjust enrichment claim against GMAC (Count Two) on behalf of a putative Nationwide Force-Placed Class defined as follows:

> **Proposed Nationwide Force-Placed Class:**  All persons with a residential mortgage loan or home equity line of credit with GMAC who were charged for force-placed insurance by GMAC on or after November 14, 2006.

62.     Plaintiff asserts her breach of fiduciary duty claim (Count 3) on behalf of a putative Escrow Sub-Class defined as follows:

> **Proposed Escrow Sub-Class:**  All persons in the Nationwide Force-Placed Class whose force-placed insurance premiums were escrowed by GMAC.

63.     Plaintiff asserts her FDUTPA claim (Count 4) on behalf of a putative Florida Class defined as follows:

> **Proposed Florida Class:**  All persons with a residential mortgage loan or home equity line of credit with GMAC secured by real property in the State of Florida who were charged for force-placed insurance by GMAC on or after November 14, 2007.

64.     Plaintiff asserts her unjust enrichment claim against Balboa (Count 5) on behalf of putative Balboa Sub-Class defined as follows:

> **Proposed Balboa Sub-Class:**  All persons in the Nationwide Force-Placed Class whose force-placed policies were purchased by GMAC through Balboa.

15

65.    <u>Numerosity</u>:    The Putative Classes are so numerous that joinder of all class members is impracticable.    Plaintiff is informed and believes that thousands of GMAC's customers satisfy the definition of the Putative Classes.

66.    <u>Typicality</u>:    Plaintiff's claims are typical of the members of the Putative Classes.    Plaintiff is informed and believes that her mortgage documents are typical of those of other Putative Class members; that the form letters she received were typical of those received by other Putative Class members; that GMAC treated her consistent with other Putative Class members in accordance with GMAC's uniform policies and practices; that it was typical for GMAC to purchase backdated insurance policies from Balboa and other insurance companies; that it was typical for GMAC to charge customers for coverage that already was expired, in whole or in part; and that was typical for GMAC and/or its affiliates to receive kickbacks or commissions from Balboa and other insurance companies on force-placed insurance coverage purchased by GMAC at customers' expense.

67.    <u>Adequacy</u>:    Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation, including litigation relating to force-placed insurance.

68.    <u>Commonality</u>: Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

a)    whether GMAC has a pervasive policy and practice of purchasing backdated force-placed insurance coverage for periods that already have expired;

b) whether GMAC and/or its affiliates receive kickbacks or commissions in connection with force-placed insurance;

c) whether the mortgage documents relied upon by GMAC authorize GMAC to backdate force-placed insurance coverage;

d) whether the mortgage documents relied upon by GMAC authorize GMAC to charge customers in excess of the net costs incurred by GMAC for force-placed insurance;

e) whether GMAC owes its customers a duty of good faith and fair dealing and, if so, whether GMAC breached this duty by, *inter alia*, (1) purchasing backdated force-placed insurance coverage, at the expense of its customers, for periods that already had expired; (2) arranging for kickbacks or commissions for itself and/or its affiliates in connection with force-placed insurance; and (3) changing insurance requirements for borrowers after-the-fact for improper purposes.

f) whether GMAC owes its customers a fiduciary duty in connection with mortgage escrow accounts, and if so, whether it breached its fiduciary duty by (1) purchasing backdated force-placed insurance coverage out of escrow for periods that already had expired; and (2) arranging for kickbacks or commissions for itself and/or its affiliates in connection with force-placed insurance purchased out of escrow;

g) whether GMAC's conduct as described herein violates the FDUTPA;

h) whether GMAC was unjustly enriched by its conduct;

i) whether Balboa was unjustly enriched by its conduct;

17

j)    the appropriateness and proper form of any declaratory or injunctive relief; and

k)   the proper measure of damages and other monetary relief.

69.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual class members would result in inconsistent or varying adjudications and create a risk of incompatible standards of conduct for Defendants.  Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

70.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

71.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary charges for force-placed insurance and related charges that are readily calculable from Defendants' records and other class-wide evidence. Members of the Putative Classes do not have an interest in pursuing separate individual actions against Defendants, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution.  Class certification also will

obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

72. Plaintiff intends to send notice to all members of the Putative Classes to the extent required by Rule 23. The names and addresses of the Putative Class members are available from Defendants' records.

## FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT / BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Asserted Against GMAC)

73. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

74. GMAC is bound by the terms of Plaintiff's Mortgage.

75. Plaintiff's Mortgage does not authorize GMAC to purchase backdated insurance for periods of time that already have expired, or to charge Plaintiff for backdated insurance.

76. Plaintiff's Mortgage does not authorize GMAC to profit from force-placed insurance, or to arrange for kickbacks or commissions for itself and/or its affiliates in connection with force-placed insurance.

77. In these respects, Plaintiff's Mortgage is typical of other mortgages held and serviced by GMAC.

78. GMAC breached the terms of Plaintiff's Mortgage and the mortgage agreements of other Nationwide Force-Placed Class members by (1) charging Plaintiff and

other class members for backdated force-placed insurance coverage for periods of time that already had expired; and (2) arranging for kickbacks or commissions for itself and/or its affiliates in connection with force-placed insurance.

79.     GMAC also breached the implied covenant of good faith and fair dealing inherent in Plaintiff's Mortgage and the mortgage agreements of other Nationwide Force-Placed Class members.

80.     GMAC owed Plaintiff and the Nationwide Force-Placed Class a duty of good faith and fair dealing, by virtue of GMAC's contractual relationship with Plaintiff and the Nationwide Force-Placed Class members.

81.     GMAC breached this duty by (1) charging Plaintiff and other Nationwide Force-Placed Class members for backdated force-placed insurance coverage for periods of time that already had expired; (2) arranging for kickbacks or commissions for itself and/or its affiliates in connection with force-placed insurance; and (3) changing insurance requirements for borrowers after-the-fact for improper purposes.

82.     GMAC willfully engaged in the foregoing conduct in bad faith, for the purpose of (1) unfairly and unconscionably maximizing revenue from Plaintiff and other Nationwide Force-Placed Class members; (2) generating commissions, kickbacks, or other compensation for GMAC and/or its affiliates; (3) forcing Plaintiff and the other Nationwide Force-Placed Class members to procure unnecessary and unauthorized insurance; (4) gaining unwarranted contractual and legal advantages; and (5) depriving Plaintiff and other Nationwide Force-Placed Class members of their contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase backdated insurance.

83. The foregoing breaches were willful and not the result of mistake or inadvertence. On information and belief, GMAC systematically and pervasively breached its contractual duties to other Nationwide Force-Placed Class members in the same manner.

84. As a direct result of GMAC's breaches of the covenant of good faith and fair dealing, Plaintiff and the Nationwide Force-Placed Class have been injured, and have suffered actual damages and monetary losses, in the form of increased insurance premiums, interest payments, and other charges, and unnecessary burdens on their property rights.

85. Plaintiff and the Nationwide Force-Placed Class are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(Asserted Against GMAC)**

86. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

87. GMAC and its affiliates have been unjustly enriched as a result of the conduct described in this Complaint and other inequitable conduct.

88. GMAC received a benefit from Plaintiff and other Nationwide Force-Placed Class members in the form of payment for force-placed insurance, and GMAC and/or its affiliates retained a portion of these payments as kickbacks or commissions.

89. Retention of these payments by GMAC and/or its affiliates would be unjust and inequitable.

90. The kickbacks or commissions that GMAC and/or its affiliates received in connection with force-placed insurance coverage were not legitimately earned, and came at the ultimate expense of Plaintiff and other members of the Nationwide Force-Placed Class who had insurance force-placed on their property by GMAC. Moreover, to the extent that

this force-placed insurance coverage was backdated (i.e., expired in whole or in part), such coverage provided no appreciable value to Plaintiff or other Nationwide Force-Placed Class members.

91.  Because it would be unjust and inequitable for GMAC and/or its affiliates to retain such payments, Plaintiff and the Nationwide Force-Placed Class are entitled to restitution of all monies unjustly and inequitably retained.  GMAC and its affiliates cannot retain these payments in good conscience.

**THIRD CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY**
**(Asserted Against GMAC)**

92.  Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

93.  Plaintiff's Mortgage is a standard Fannie Mae/Freddie Mac form mortgage that contains an escrow provision in Paragraph 3 of the Mortgage, which is typical of other mortgages held and serviced by GMAC.

94.  Paragraph 3 of Plaintiff's Mortgage provides that "Borrower shall pay to Lender on the day Periodic Payments are due . . . premiums for any and all insurance required by Lender[.]"

95.  Paragraph 3 of Plaintiff's Mortgage further provides that the sums included in Plaintiff's monthly payment for insurance premiums are to be held in escrow by her lender. These funds are to be used for the purpose of paying her insurance premiums when due, and any excess funds are to be returned to Plaintiff under the terms of her Mortgage.

96.  GMAC was obligated to hold Plaintiff's escrow funds and the mortgage escrow funds of other borrowers in trust, and owed Plaintiff and the Escrow Sub-Class a fiduciary duty with respect to handling of such funds.

97.     GMAC breached its fiduciary duty to Plaintiff and other members of the Escrow Sub-Class by (1) unilaterally using escrow funds to purchase unauthorized backdated insurance policies that were expired, in whole or in part, and (ii) self-dealing and profiteering in connection with force-placed insurance policies that were purchased from escrow funds at the expense of Plaintiff and other class members.

98.     These actions were undertaken by GMAC in bad faith for its own benefit and were not intended to benefit Plaintiff or other borrowers.

99.     As a direct result of GMAC's actions and its subversion of its borrowers' interest to its own, Plaintiff and the Escrow Sub-Class have suffered injury in the form of unnecessary and excessive escrow charges, a loss of funds from their escrow accounts, increased mortgage payments due to alleged escrow "shortages," and related injuries.

100.    Plaintiff and the Escrow Sub-Class are entitled to damages for GMAC's breaches of its fiduciary obligations and misappropriation of escrow funds.  In addition, Plaintiff and the Escrow Sub-Class are entitled to punitive damages because GMAC acted in bad faith and in deliberate and/or reckless disregard of their rights and its obligation to hold their escrow funds in trust.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. §§ 501.204, *et seq.***
**(Asserted against GMAC)**

101.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

102.    The FDUTPA provides: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Fla. Stat. § 501.204(1).

103.    GMAC has pervasively violated the FDUTPA, and continues to violate the FDUTPA, by virtue of its unfair, unconscionable, and deceptive mortgage servicing practices.

104.    Among other things, GMAC has violated the FDUTPA by:

a)  unfairly and unconscionably purchasing backdated insurance coverage for periods of time that already have expired;

b)  unfairly and unconscionably arranging for kickbacks, commissions, or other compensation for itself and/or its affiliates in connection with force-placed insurance purchased for Plaintiff and other Florida Class members;

c)  misappropriating and/or misusing mortgage escrow funds that belong to Plaintiff and other Florida Class members;

d)  deceptively claiming that its conduct was authorized under Plaintiff's Mortgage and the mortgages of other Florida Class members; and

e)  engaging in other unfair and/or deceptive conduct as set forth in this Complaint.

105.    GMAC engaged in such violations for the purpose of (1) unfairly and unconscionably maximizing revenue from Plaintiff and other Florida Class members; (2) generating commissions, kickbacks, or other compensation for GMAC and/or its affiliates; (3) forcing Plaintiff and other Florida Class members to procure unnecessary and unauthorized insurance; (4) gaining unwarranted contractual and legal advantages; and (5) depriving Plaintiff and other Florida Class members of their contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase backdated insurance.

106.    As a result of GMAC's violations of the FDUTPA, Plaintiff and the Florida
Class have been injured and have suffered actual damages and monetary losses in the form of
increased insurance premiums, interest payments, and other charges, and unnecessary
burdens on their property rights.

107.    Plaintiff and the Putative Florida Class are entitled to actual damages,
declaratory and injunctive relief, attorneys' fees and costs, and any other remedies available
under the FDUTPA or in equity for GMAC's violations of the FDUTPA.

**FIFTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(Asserted Against Balboa)**

108.    Plaintiff alleges and incorporates by reference the allegations in the preceding
paragraphs.

109.    Balboa actively facilitated and participated in GMAC's abusive force-placed
insurance practices, and conspired with GMAC to take advantage of Plaintiff and other
Balboa Sub-Class members.  *See supra* at ¶¶ 54-59.

110.    Balboa's unjust insurance practices and cozy relationship with mortgage
servicers, including GMAC, are the subject of published news reports, including an award-
winning article in *American Banker* magazine.  *See Exhibits 1, 18.*

111.    The practices alleged in this case – including backdating of force-placed
insurance policies and kickbacks to GMAC in return for handsome premium payments to
Balboa – are consistent with the unjust insurance practices outlined in these reports.

112.    Balboa has been unjustly enriched as a result of the conduct described in this
Complaint and further described in these reports.

113.    Balboa received a benefit from Plaintiff and other Balboa Sub-Class members in the form of premiums for force-placed insurance, and Balboa retained a portion of these payments.

114.    Retention of these premium payments by Balboa would be unjust and inequitable because (1) backdated (i.e., expired) insurance coverage provides no appreciable value to borrowers, (2) Balboa did not provide anything of real value in return for the premium payments that it received for already-expired coverage, and (3) Balboa secured handsome premium payments through improper means by offering GMAC kickbacks in connection with force-placed insurance coverage.

115.    Because it would be unjust and inequitable for Balboa to retain such payments, Plaintiff and the Balboa Sub-Class are entitled to restitution of all monies unjustly and inequitably retained.  Balboa cannot retain these payments in good conscience.

## PRAYER FOR RELIEF

116.    WHEREFORE, Plaintiff, on behalf of herself and the Putative Classes, prays for relief as follows:

a)  Determining that this action may proceed as a class action under Rules 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure;

b)  Designating Plaintiff's counsel as counsel for the Putative Classes;

c)  Designating Plaintiff as class representative for the Putative Classes;

d)  Issuing proper notice to the Putative Classes at Defendants' expense;

e)  Declaring that GMAC breached its contracts with Plaintiff and the Nationwide Force-Placed Class and its duty of good faith and fair dealing to Plaintiff and the Nationwide Force-Placed Class;

f)   Declaring that GMAC breached its fiduciary duty to Plaintiff and the Escrow Sub-Class;

g)   Declaring that GMAC's actions as described herein violate the FDUTPA;

h)   Declaring that GMAC's conduct was inequitable and that GMAC was unjustly enriched by such conduct;

i)   Declaring that Balboa's conduct was inequitable and that Balboa was unjustly enriched by such conduct;

j)   Declaring that Defendants acted willfully in deliberate or reckless disregard of applicable law and the rights of Plaintiff and other Putative Class members;

k)   Awarding appropriate equitable relief, including but not limited to an injunction requiring GMAC to reverse all unlawful, unfair, or otherwise improper charges for force-placed insurance and related charges; allowing customers to close loans or credit lines without first paying unlawful, unfair, or otherwise improper charges for force-placed insurance; prohibiting GMAC and its affiliates from accepting commissions (and prohibiting Balboa from paying commissions to GMAC) in connection with force-placed insurance; prohibiting GMAC from purchasing backdated force-placed insurance policies (and prohibiting Balboa from issuing backdated policies to GMAC); requiring Defendants to cease and desist from engaging in further unlawful conduct in the future; requiring GMAC to immediately cancel any efforts to foreclose on property owned by Plaintiff or other Putative Class members; and prohibiting GMAC from

initiating any judicial or non-judicial foreclosure measures against Plaintiff or other Putative Class members in the absence of a proper accounting and leave of Court;

l)  Awarding actual damages, punitive damages, and interest;

m) Awarding reasonable attorneys' fees and costs and expenses; and

n)  Granting such other and further relief, in law or equity, as this Court may deem appropriate and just.

### DEMAND FOR JURY TRIAL

117.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,  Plaintiff and the Putative Classes demand a trial by jury.

Respectfully submitted,

Dated:  November 14, 2011

 /s/ Timothy C. Selander
Timothy C. Selander, FL Bar No. 0036468
E-mail: selander@nka.com
Kai Richter, MN Bar No. 0296545*
E-mail: krichter@nka.com
E. Michelle Drake, MN Bar No. 0387366*
E-mail: drake@nka.com
**NICHOLS KASTER, PLLP**
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870

*pro hac vice* applications forthcoming

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASSES**