MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Norman S. Rosenbaum

*Proposed Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------
|  )
In re:                                              )    Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, <u>et al</u>.,            )    Chapter 11
                                                    )
                               Debtors.             )    Jointly Administered
                                                    )
-------------------------------------------------------------------------

**<u>DEBTORS' OMNIBUS OBJECTION TO MOTIONS FOR RELIEF FROM THE
AUTOMATIC STAY SCHEDULED FOR HEARING ON JULY 10, 2012</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................. 2

I.    The Motions ............................................................................................. 3

    A.    The Burris Motion .............................................................................. 3

    B.    The Taggart Motion ........................................................................... 4

    C.    The Jackson Motion ........................................................................... 5

    D.    The Gilbert Motion ............................................................................ 5

    E.    The Gardner Motion ........................................................................... 6

    F.    The Lewis Motion .............................................................................. 7

OBJECTION ..................................................................................................... 7

I.    The Debtors' Cases Were Filed in Good Faith and Should not be Dismissed ................. 7

II.    Relief from the Automatic Stay Should Not Be Granted .................................. 9

    A.    The Policies Underlying the Automatic Stay Weigh in Favor of Denying
        the Relief Requested by the Movants .................................................. 9

    B.    The Movants have Failed to Establish Cause for Relief from the
        Automatic Stay ................................................................................ 11

        1.    The Lifting of the Automatic Stay Is Connected to and Will
            Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor
            No. 2) ...................................................................................... 13

        2.    No Specialized Tribunal Has Been Established to Hear the Actions
            (Sonnax Factor No. 4) ................................................................. 15

        3.    No Insurer Has Assumed Responsibility for [any] of the Actions
            (Sonnax Factor No. 5) ................................................................. 16

        4.    The Actions do not Primarily Involve Third Parties (Sonnax Factor
            No. 6) ...................................................................................... 16

        5.    Litigation of the Actions in Another Forum Would Prejudice the
            Interests of Other Creditors (Sonnax Factor No. 7) ......................... 17

        6.    The Interests of Judicial Economy and Economical Resolution of
            the Actions Are Best Served by Maintaining the Automatic Stay
            and None of the Actions is Ready for Trial (Sonnax Factor Nos ........... 17

        7.    The Balance of Harms Favors Maintaining the Automatic Stay
            (Sonnax Factor No. 12) ............................................................... 19

i

**TABLE OF CONTENTS**
**(continued)**

Page

III.    The Debtors' Filing of the Rehearing Motion with the Fourth Circuit was a
Protective Measure and does not Merit Award of Damages or Attorneys' Fees............. 20

CONCLUSION.......................................................................................................................... 20

Exhibits:

Exhibit 1:        Scoliard Declaration
Exhibit 2:        Appendix

ny-1047805

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow),
   126 F.3d 43 (2d Cir. 1997).................................................................12, 13

City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l Inc.),
   28 B.R. 324 (Bankr. S.D.N.Y. 1983) ........................................................17

GMAC Mortg., LLC v. Taggart,
   Case. No. 09-25338...........................................................................4

Gilbert v. Residential Funding LLC,
   Case No. 10-2295 (4th Cir. June 20, 2012) .................................................6

In re Bally Total Fitness of Greater N.Y., Inc.,
   402 B.R. 616 ...............................................................16, 18, 19, 20

In re C-TC 9th Ave. P'ship,
   113 F.3d 1304 (2d Cir. 1997).................................................................8

In re Cuyahoga Equip. Corp.,
   980 F.2d 110 (2d Cir. 1992)..................................................................17

In re Johns-Manville Corp.,
   36 B.R. 727 (Bankr. S.D.N.Y. 1984) ........................................................8

In re Leibowitz,
   147 B.R. 341 (Bankr. S.D.N.Y. 1992) ......................................................13

In re Motors Liquidation Co.,
   Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010)...........13

In re Northwest Airlines Corp.,
   No. 05-17930, 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 3, 2006) .......................19

In re Pioneer Commercial Funding Corp.,
   114 B.R. 45 (Bankr. S.D.N.Y. 1990)...................................................10, 15

Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.),
   920 F.2d 183 (2d Cir. 1990)...................................................................21

Burris v. U.S. Bank Nat'l Assoc.,
   Case No. 10-CV-00670 REB-MEH (D. Colo.) .............................................43

Mazzeo v. Lenhart (In re Mazzeo),
    167 F.3d 139 (2d Cir. 1999)..........................................................................12

Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection,
    474 U.S. 494 (1986)........................................................................................10

SEC v. Brennan,
    230 F.3d 65 (2d Cir. 2000)..............................................................................10

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
    907 F.2d 1280 (2d Cir. 1990).................................................................... passim

United States of Am., Ex. Rel. v. GMAC, Mortg. Co.,
    Case No. 12-01731 (MG) (Bankr. S.D.N.Y. June 22, 2012)............................7

**STATUTES**

11 U.S.C. § 362(a)(1)..................................................................................................9

11 U.S.C. § 362(d)....................................................................................................11

11 U.S.C. § 362(k)................................................................................................6, 20

12 U.S.C. § 2601 et. seq.............................................................................................4

15 U.S.C. § 1601 et. seq.,...........................................................................................4

15 U.S.C. § 1692 et. seq..............................................................................................4

18 U.S.C. §§ 666, 1962...............................................................................................7

31 U.S.C.A. §§ 3729 to 3733......................................................................................7

Fair Credit Extension Uniform Act, 73 P.S. § 2270.1 et. seq.....................................4

Mortgage Property Insurance Coverage Act, 7 P.S. § 6701 et. seq............................5

Ohio Rev. Code Ann. § 2323.52..................................................................................7

Pennsylvania Unfair Trade Practice and Consumer Protection Act, 73 P.S. § 201-1 et.
    seq. ...............................................................................................................4

**OTHER AUTHORITIES**

12 C.F.R. § 226.18(g), (h)...........................................................................................5

24 C.F.R. § 350...........................................................................................................4

Collier on Bankruptcy ¶ 362.03 (16th ed. rev. 2012) ...............................................10

iv

Residential Capital, LLC and its affiliated debtors and debtors in possession in the above-caption Chapter 11 cases (collectively, the "Debtors") file this omnibus objection (this "Omnibus Objection") to certain pending motions seeking (i) relief from the automatic stay and (ii) in one instance, dismissal of the Debtors' bankruptcy cases (collectively (i) and (ii), the "Motions"), filed by the parties identified below (the "Movants") seeking to pursue claims and causes of action against the Debtors in state and federal courts that are subject to the automatic stay.  In support of this Omnibus Objection, the Debtors submit the Declaration of Jennifer Scoliard (the "Scoliard Declaration"), attached hereto as <u>Exhibit 1</u>, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors by way of direct claims and counter-claims are defendants in over 1,900 lawsuits involving a wide range of causes of action asserted against them, including in their capacities as loan servicers and originators of mortgage loans, as well as causes of action against third parties for which the Debtors are contractually obligated to defend.[1]  A significant portion of the claims/lawsuits are subject to the automatic stay because they do not fall under any of the relief provided under this Court's order granting the Debtors' supplemental servicing motion.[2]  Although it is difficult to discern the nature of the relief requested in certain of the Motions, all but one appears to seek relief from the automatic stay to (i) continue prepetition

---

[1] This figure does not include the tens of thousands of foreclosure, eviction, or bankruptcy-related claims/lawsuits to which the Debtors are a party to in connection with servicing activities.

[2] Approximately one-third of the 1,900 claims/lawsuits include claims brought against the Debtors as defenses to foreclosure and bankruptcy matters or title disputes, which would be exempted from the automatic stay by the *Supplemental Order for Interim Relief Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses,* dated June 15, 2012 (the "Supplemental Servicing Order") [Docket No. 391].  (Scoliard Decl., at ¶ [ ].)

1

litigation and appeals pending and/or (ii) commence new litigation against the Debtors in non-bankruptcy forums.[3]  None of the Movants, however, has established entitlement to relief from the automatic stay.  Because such a showing is required for the requested relief, the Motions should be denied.

2.        Moreover, as a policy matter, the Debtors submit that it is simply too early in these highly complex cases for the Court to grant such relief.  These cases are less than two months old.  Granting such relief at this point would undoubtedly invite similar requests for relief from the automatic stay from the Debtors' myriad other prepetition claimants, opening the "floodgates" to litigation.  Forcing the Debtors to litigate even a fraction of the suits in which they are named as defendants would deprive them of the "breathing spell" the automatic stay is designed to provide and distract them from addressing the critical tasks necessary to achieve a successful resolution of these Chapter 11 cases.  Likewise, granting relief from the stay at this early stage would in effect require the Debtors to conduct the claims resolution process in hundreds of forums across the country.

3.        For the above reasons, and as more fully set forth below, the Debtors believe that nearly all of the applicable <u>Sonnax</u> Factors (as defined below) applied by courts in this jurisdiction to evaluate whether cause has been established to lift the automatic stay weigh decidedly in the Debtors' favor and against lifting the automatic stay.  Each Motion should therefore be denied.

**BACKGROUND**

4.        On the Petition Date, each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

---

[3] The Debtors understand the Taggart Motion (as defined below) seeks clarification of the scope of—as opposed to relief from—the automatic stay in this case.  The Debtors object to Mr. Taggart's Motion in this Omnibus Objection to the extent his Motion seeks relief from the automatic stay.

2

The Debtors are managing and operating their businesses as debtors in possession pursuant to

Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered

pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases;

however, the Court entered an order granting the appointment of an examiner on June 28, 2012.

5.    On May 16, 2012, the United States Trustee for the Southern District of

New York (the "U.S. Trustee") appointed a nine member official committee of unsecured

creditors (the "Creditors' Committee").

6.    The Debtors are a leading residential real estate finance company

indirectly owned by Ally Financial Inc. ("AFI"), which is not a Debtor.  The Debtors and their

non-debtor affiliates operate the fifth largest mortgage servicing business and the tenth largest

mortgage origination business in the United States.  A more detailed description of the Debtors,

including their business operations, their capital and debt structure, and the events leading to the

filing of these bankruptcy cases, is set forth in the Affidavit of James Whitlinger, Chief Financial

Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings

[Docket No. 6] (the "Whitlinger Affidavit").

I.    **The Motions**[4]

A.    **The Burris Motion**

7.    On June 4, 2012, Mark and Lori Burris (the "Burrises"), proceeding pro

se, filed the *Motion for Order for Relief from Stay Authorizing Debtor(s) to Honor Certain

Prepetition Obligations to Movants* [Docket No. 245] (the "Burris Motion").  The Burris Motion

seeks relief from the automatic stay to continue a prepetition action against non-debtors (U.S.

---

[4] The Debtors were able to resolve certain motions filed for relief from stay prior to the filing of this Omnibus
Objection, including motions filed by (i) certain plaintiffs in a putative class action in Maine, dated June 5, 2012
[Docket No. 224] and (ii) the National Association of Consumer Bankruptcy Attorneys, dated June 5, 2012 [Docket
No. 222].

Bank National Association and GMAC Bank) in the United States District Court for the District of Colorado (the "Burris Action").[5]  Prior to the Petition Date, the Burrises and counsel for the defendants executed a preliminary agreement setting forth the material terms of a settlement (the "Preliminary Settlement").  The parties, however, have not yet agreed to the final terms of the settlement.

### B.    The Taggart Motion

8.    On June 8, 2012, Kenneth Taggart, proceeding pro se, filed his *Motion for Leave to file Motion Pursuant Stay & Relief (and Clarification from Bankruptcy Court)* [Docket No. 263] (the "Taggart Motion").  Mr. Taggart is a defendant in a state court foreclosure action pending in Montgomery County Pennsylvania, captioned GMAC Mortg., LLC v. Taggart (Case No. 09-25338).  In connection with the pending foreclosure, on April 28, 2010, Mr. Taggart filed the *3rd Amended Counter Claim against GMAC Mortgage, LLC, LBA Financial Group, LLC, Eagle Nationwide Mortgage Company, et. al.* (the "Taggart Counterclaim Pleading").  The Taggart Counterclaim Pleading alleges thirty-two counterclaims against the Debtors and other defendants, including violations of numerous state and federal statutes including the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2601 et. seq., and related regulations, 24 C.F.R. § 350; and TILA.[6]

---

[5] Burris v. U.S. Bank Nat'l Assoc., Case No. 10-CV-00670 REB-MEH) (D. Colo.).  The Burris Action involves claims for (i) slander of title, (ii) wrongful title, (iii) denial of rights under the Fair Debt Collection Practices Act ("FDCPA"), (iv) violations of the Truth in Lending Act Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq., and (v) allegations of fraud.  Court documents cited herein are included in the index annexed hereto as Exhibit 2.  Although the Debtors are not party to the Burris Action, the Debtors object to the Burris Motion solely to the extent that the Burrises are seeking stay relief against the Debtors.

[6] In addition to the foregoing, the Taggart Counterclaim Pleading also alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et. seq.; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et. seq.; the Pennsylvania Unfair Trade Practice and Consumer Protection Act, 73 P.S. § 201-1 et. seq.; Regulation Z, 12 C.F.R. § 226.18(g), (h); [Quiet Title], the Fair Credit Extension Uniform Act, 73 P.S. § 2270.1 et. seq.; the Mortgage Property Insurance Coverage Act, 7 P.S. § 6701 et. seq.; and violations of Mr. Taggart's 1st and 4th Amendment rights of freedom of expression and due process.

### C.    The Jackson Motion

9.      On June 8, 2012, Corla Jackson, proceeding pro se, filed her *Motion for Relief of Stay* (the "Jackson Motion") [Docket No. 264].  Ms. Jackson commenced a lawsuit against GMAC Mortgage Corporation ("GMACMC") earlier this year in Alabama state court asserting numerous claims against the Debtors, including fraud.[7]  The state court case was removed to and is currently pending before the United States District Court for the Southern District of Alabama.  After Ms. Jackson filed her complaint, the Debtors moved to foreclose on her property.  The claims asserted in Ms. Jackson's lawsuit do not appear to be related to the foreclosure action.

### D.    The Gilbert Motion

10.     On June 11, 2012, Rex T. Gilbert, Jr. and Daniela L. Gilbert (the "Gilberts"), filed the *Motion to Dismiss Chapter 11 Bankruptcy for Cause or, in the Alternative, Motion for Relief from the Automatic Stay to Permit the Gilbert Litigation Now Pending in the United States Court of Appeals for the Fourth Circuit to Proceed in Federal Courts and Motion Seeking Damages for Willful Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362(h)* [Docket No. 274] (the "Gilbert Motion").  The Gilbert Motion seeks to have the Debtors' Chapter 11 cases dismissed, alleging that dismissal is "in the best interests of the [] numerous

---

The Debtors understand the Taggart Motion seeks clarification of the scope of—as opposed to relief from—the automatic stay as to which of his counterclaims can go forward in Mr. Taggart's state court proceeding.  Counsel spoke with Mr. Taggart on several occasions and explained the scope of the Supplemental Servicing Order, including the fact that any claims that could defeat the foreclosure may proceed, but that claims seeking only monetary damages may not.  The Debtors object to Mr. Taggart's Motion in this Omnibus Objection to the extent his Motion seeks relief from the automatic stay and submit that, pursuant to Supplemental Servicing Order, Mr. Taggart's state court proceedings are stayed except as to the foreclosure proceeding, a claim that Mr. Taggart's default was the result of insurance overcharges.

[7] Ms. Jackson asserts that GMAC had no interest in her mortgage at the time of foreclosure and seeks damages for the following claims: (i) securitization fraud; (ii) hate crime violations; and (iii) breach of contract and bad faith claims.  Jackson also asserts violations of her "civil human and constructional (sic.) rights as a citizens (sic.) of the United States."  Finally, Ms. Jackson appears to allege damages from the Debtors' failure to repair the subject property after it suffered hurricane damage, which claims were previously litigated and rejected.  (*See* Jackson Compl., p. 1-2.).

distressed homeowners with claims, defenses and counterclaims against the Debtors ….. "
(Gilbert Mot. ¶ 20.)  In the alternative, the Gilbert Motion seeks relief from the automatic stay to
permit the Court of Appeals for the Fourth Circuit to issue a mandate regarding the Debtors'
pending motion for rehearing en banc (the "Rehearing Motion") and, to the extent the mandate is
favorable to the Gilberts, to continue with further litigation against Debtors Residential Funding,
LLC and GMAC Mortgage, LLC in the Gilberts' action (the "Gilbert Action") pending in the
Eastern District of North Carolina (Case No. 09-CV-181-D) upon remand.[8]  (See Gilbert Mot.
¶¶ 24-25.)[9]  Moreover, the Gilberts seek imposition of sanctions against the Debtors under
Bankruptcy Code section 362(k),[10] alleging that the Debtors willfully violated the automatic stay
by filing the Rehearing Motion in the Fourth Circuit appeal on May 17, 2012.  (Gilbert Motion
¶ 1, 3, and 12.)

### E.    The Gardner Motion

11.    On June 13, 2012, Mary Gardner, filed her *Motion for Relief from Stay*
(the "Gardner Motion").  The Gardner Motion seeks relief from the automatic stay to continue a
prepetition action pending in the United States District Court for the Middle District of Alabama
(the "Gardner Action") involving claims for breach of contract and conversion resulting from the

---

[8] On June 20, 2012, the Fourth Circuit entered an order denying a rehearing en banc as to non-debtor Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Incorporated ("Deutsche Bank"), but stayed the mandate regarding a rehearing en banc as to the Debtor parties. *Order*, Gilbert v. Residential Funding LLC, Case No. 10-2295 (4th Cir. June 20, 2012).

[9] The action underlying the Gilbert Motion seeks damages against the Debtors for alleged violations of TILA and other consumer protection laws.  The Gilbert Action also sought equitable relief to stop an allegedly wrongful foreclosure brought by Deutsche Bank. Deutsche Bank filed a separate foreclosure action in North Carolina State Court.  None of the Debtors are party to the state court foreclosure action. (See Gilbert Mot. ¶¶ 24.)

[10] The Gilbert's motion indicates that they seek an award of damages and attorneys' fees under Bankruptcy Code section 362(h).  (Gilbert Mot. ¶ 1.)  The Debtors believe that the Gilberts intended to reference Bankruptcy Code section 362(k).

Debtors' and non-debtor defendant's alleged misapplication of insurance proceeds intended to cover hail damage repairs to Ms. Gardner's residence.[11]

### F.    The Lewis Motion

12.    On June 15, 2012, Sidney Lewis and Yvonne Lewis (the "Lewises"), proceeding pro se, filed their *Motion for Leave/Notice* [Docket No. 456] (the "Lewis Motion").[12] It is unclear to the Debtors what relief is sought in the Lewis Motion.  The Debtors initiated judicial foreclosure proceedings against the Lewises on April 22, 2005 in the Franklin County Court of Common Pleas in the state of Ohio ("Franklin County Court").  Due to the Lewises' intervening individual bankruptcy cases, entry of a judgment decree on the foreclosure proceedings was delayed until September 12, 2011.  The foreclosure sale was confirmed on June 6, 2012.  The Lewises appealed both the foreclosure judgment decree and the sale confirmation, but both appeals were dismissed.  In the dismissal order, the appellate court noted that Lewises had been "adjudicated vexatious litigators" by the Franklin County Court.[13]  On June 28, 2012, the Lewises filed an application to reconsider dismissal.[14]

---

[11] Mary Gardner v. GMAC Mortgage, Case No. 2:12-CV-131-WKW (M.D. Ala.).

[12] On June 22, 2012, the Lewises commenced an adversary proceeding against the Debtors in these cases by filing the *Adversary Complaint by Surplus Creditors for False Claims and Rico 31 U.S.C.A. §§ 3729 to 3733; 18 USC §§ 666, 1962; BR Rule 7008*.  United States of Am., Ex. Rel. v. GMAC, Mortg. Co., 12-01731 (MG) (Bankr. S.D.N.Y. June 22, 2012).

[13] *Journal Entry of Dismissal*, dated June19, 2012, Case No. 12-AP-506 (Ohio Ct. App. June 19, 2012).  The term "vexatious litigators" means that the Lewises have filed multiple actions that had no colorable basis or that were intended merely to harass.  Once declared "vexatious litigators," a party is required to obtain court approval to commence or continue an action, including an appeal, or file any motion or application.  Ohio Rev. Code Ann. § 2323.52 (West).

[14] To the extent the Lewises seek reconsideration of the foreclosure and sale, such actions may be permitted to proceed under the Supplemental Servicing Order.  However, the Debtors object to the Lewis Motion to the extent the Lewises seek to assert claims against the Debtors that are unrelated to the foreclosure and sale.

**OBJECTION**

**I.      The Debtors' Cases Were Filed in Good Faith and Should not be Dismissed**

13.      The Gilbert Motion seeks dismissal of the Debtors' Chapter 11 cases for

"cause," alleging that the Debtors' filed their bankruptcy cases in bad faith.  As described more

fully in the Whitlinger Affidavit, the Debtors filed their Chapter 11 cases in order to

(i) maximize the value of their assets for the benefit of their creditors through the asset sales

presented to this court and (ii) deal with impending debt maturities and overwhelming litigation

costs and potential liabilities, as well as due to financial difficulties associated with the general

economic downturn, which has hit the mortgage industry particularly hard.  (See Whitlinger

Affidavit ¶¶ 93-104.)  Each of these bases provides a valid justification for seeking the

protections of the Bankruptcy Code and does not provide any basis for an allegation that the

Debtors filed their Chapter 11 cases in bad faith.  See, e.g., In re Johns-Manville Corp., 36 B.R.

727, 737 (Bankr. S.D.N.Y. 1984) (bankruptcy filing in order to obtain a breathing spell from

litigation did not establish bad faith filing or cause for dismissal).

14.      The Gilberts argue, incorrectly, that the Court should dismiss the Debtors'

cases because dismissal would be in the best interests of the Gilberts and other distressed

homeowners with claims, defenses and counterclaims against the Debtors that have been "pulled

involuntarily into a bankruptcy court in a distant forum."  (Gilbert Motion ¶¶ 19-20.)  Section

1112(b) of the Bankruptcy Code permits conversion or dismissal for "cause," and includes a

non-exhaustive list of "cause" in subsection (b)(4).  The Gilbert Motion does not address the

enumerated examples in section 1112(b), but instead alleges that "bad faith" can constitute

cause.  (Gilbert Motion ¶ 15.)  To the extent that the Gilberts argue that the Debtors' Chapter 11

cases should be dismissed as bad faith filings, their request should be denied.  The Second

Circuit has identified eight factors indicative of a bad faith filing.  See In re C-TC 9th Ave.

P'ship, 113 F.3d 1304, 1311 (2d Cir. 1997); Inwood Heights Hous. Dev. Fund Corp., Case No.

11-13322 (MG) at 20 (Bankr. S.D.N.Y. Aug. 25, 2011). Those factors include:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors
> whose claims are small in relation to those of secured creditors; (3) the debtor's
> one asset is the subject of a foreclosure action as a result of arrearages or default
> on the debt; (4) the debtor's financial condition is, in essence, a two party dispute
> between the debtor and secured creditors which could be resolved in [a] pending
> state foreclosure action; (5) the timing of the debtor's filing evidences an intent to
> delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce
> their rights; (6) the debtor has little or no cash flow; (7) the debtor cannot meet
> current expenses including the payment of personal property and real estate taxes;
> and (8) the debtor has no employees.

15.    Not even one (1) of the C-TC 9th Avenue factors are present in the

Debtors' cases. The Debtors have multiple secured and unsecured creditors; were not subject to

a pending foreclosure action on any of their major assets; the Debtors have significant cash flows

and did not file in an attempt to delay or frustrate the legitimate efforts of secured creditors to

assert their rights. The Debtors employ over 3,600 employees and have been paying their

postpetition expenses as they come due. (See Whitlinger Affidavit ¶¶ 93-104, 129.) Moreover,

as described above, the Debtors had justifiable and legitimate reasons for seeking Chapter 11

relief and are working diligently to implement a highly complex rehabilitation and the sale of

their businesses as a going concern. For all of these reasons, the Gilberts' request to have the

Debtors' Chapter 11 cases dismissed should be denied.

## II.    Relief from the Automatic Stay Should Not Be Granted

### A.    The Policies Underlying the Automatic Stay Weigh in Favor of Denying the Relief Requested by the Movants

16.    Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that:

(a) ... a petition filed under section 301, 302, or 303 of this title ... operates as a
stay, applicable to all entities, of –

> (1) the commencement or continuation, including the issuance of
> employment of process, of a judicial, administrative, or other action or

9

proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

17.    The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection, 474 U.S. 494, 503 (1986). The automatic stay is of considerable importance in cases such as this, where the Debtors seek to sell all or substantially all of their assets. It maintains the status quo to protect the debtor's ability to control the sale or other disposition of property of the estate. Collier on Bankruptcy ¶ 362.03 (16th ed. rev. 2012). The automatic stay prevents the state-law "race to the courthouse," and is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." SEC v. Brennan, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted). In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

18.    One of the primary objectives of these Chapter 11 cases is the preservation of the Debtors' going concern value through the sale of their servicing platform and legacy assets through which the Debtors hope to maximize creditor recoveries.[15] The automatic stay is critical to the Debtors ability to achieve this objective because it will permit the Debtors' management and employees, including the Debtors' in-house legal department (the "Legal Department"), to focus without distraction on the tasks critical to achieve a successful resolution of these cases,

---

[15] In tandem with this effort, the Debtors have entered into plan support agreements with key constituents including AFI, certain holders of their junior secured notes, and certain investors in mortgage-backed securitizations sponsored by the Debtors.

including, but not limited to, the following:  (i) myriad due diligence and other issues with

respect to the proposed sales of the Debtors' servicing operations and legacy loan portfolios,

(ii) the negotiation and drafting of and solicitation of votes on a Chapter 11 plan and the drafting

of a related disclosure statement, (iii) producing documents and responding to requests for

information in connection with investigations by the Creditors' Committee and court-appointed

examiner, and (iv) obtaining approval for settlement agreements regarding potential claims to be

asserted by or against the Debtors' estates – all of which the Debtors' seek to accomplish on an

accelerated time frame before the end of the year.  Performing just these tasks in isolation is in

itself a huge burden given that the objective of these Chapter 11 cases are somewhat

unprecedented (i.e., the sale of a mortgage loan servicing and origination platform as a going

concern), and that the Debtors must address the concerns of multiple constituencies, including

United States government entities and governmental associations in the context of a Chapter 11

case (e.g., Fannie Mae; Freddie Mac; Ginnie Mae; Department of Housing and Urban

Development; and the U.S. Department of Justice (the "DOJ") (in connection with a joint

settlement among the Debtors, the DOJ, and State Attorneys General from 49 states); and the

Board of Governors of the Federal Reserve System (in connection with that certain Consent

Order, dated April 13, 2011)).  At the same time, the Debtors' personnel continue to operate the

Debtors' business; itself a full time endeavor.  These, and many other tasks related to the

restructuring, have and will continue to require the utmost attention from all of the Debtors'

employees.  Continuation of the breathing spell created by the automatic stay, therefore, is

essential to the Debtors' restructuring at this juncture, because it allows the Debtors to focus on

steps critical to achieving a successful resolution to these cases, including the continued

operation of the Debtors' business and consummation of the sales.  (See Scoliard Decl. at ¶ 10.)

### B.    The Movants have Failed to Establish Cause for Relief from the Automatic Stay.

19.    Section 362(d) of the Bankruptcy Code provides that the Court shall grant

relief from the automatic stay "for cause."  11 U.S.C. § 362(d).  The Bankruptcy Code does not,

however, define the phrase "for cause."  In the context of stayed prepetition litigation, though,

the Second Circuit has outlined a 12-factor test (the "Sonnax Factors") to determine whether

"cause" exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues,
> (2) the lack of any connection with or interference with the bankruptcy case,
> (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a
> specialized tribunal with the necessary expertise has been established to hear the
> cause of action, (5) whether the debtor's insurer has assumed full responsibility
> for defending the action, (6) whether the action primarily involves third parties,
> (7) whether litigation in another forum would prejudice the interests of other
> creditors, (8) whether the judgment claim arising from the other action is subject
> to equitable subordination, (9) whether movant's success in the other proceeding
> would result in a judicial lien avoidable by the debtor, (10) the interests of judicial
> economy and the expeditious and economical resolution of litigation,
> (11) whether the parties are ready for trial in the other proceeding and (12) the
> impact of the stay on the parties and the balance of harms.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280,

1285-1287 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d

Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not

applied the Sonnax factors, made only sparse factual findings and ultimately did not provide the

appellate court "with sufficient information to determine what facts and circumstances specific to

the present case the court believed made relief from the automatic stay appropriate."). Courts

have recognized that not all of the Sonnax factors will be applicable to every case, and the Court

may disregard irrelevant factors.  See In re Mazzeo, 167 F.3d at 143.

20.    In a request for stay relief, the moving party bears the initial burden to

demonstrate that good cause exists for lifting the stay, using the Sonnax factors, and the court

may deny the motion if the movant fails to make an initial showing of cause. See Sonnax, 907

F.2d at 1285; Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48

(2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if

the movant fails to make an initial showing of cause.") (quotation omitted).

      21.     The movant's burden is especially heavy if it is an unsecured creditor.

"[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1)

should not be granted relief from the stay unless extraordinary circumstances are established to

justify such relief." In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also In re

Motors Liquidation Co., Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17,

2010).

      22.     As an initial matter, each of the Burris, Gardner, Jackson, Lewis and

Taggart Motions fail to provide any analysis of how the Sonnax factors weigh in favor of lifting

the automatic stay.  Accordingly, each of these Movants has failed to meet its burden to show

"cause" for granting relief from the automatic stay.  See Sonnax, 907 F.2d at 1285; In re

Boodrow), 126 F.3d at 48.  With particular respect to the Lewis Motion, because the Lewises

have no pending lawsuit, and have already commenced a lawsuit against the Debtors through an

adversary proceeding, the Debtors respectfully submit that the Court should deny the Lewis

Motion on that basis alone.

      23.     Notwithstanding the foregoing, the Debtors submit that the application of

the Sonnax factors clearly indicate that granting relief from the automatic stay would be

inappropriate in any of the cases.[16]  Thus, each of the Motions should be denied.

---

[16] The Debtors acknowledge that continuation of any of the Actions may result in a complete resolution of the
relevant matter (Sonnax Factor number 1).  Taken in totality, however, the Debtors submit that the Sonnax Factors
weigh in favor of keeping the stay in place.  Sonnax Factors numbers 3 and 9 are not applicable to the facts here.
The Debtors do not address Sonnax Factor 8 in their objection, but reserve all right with regard thereto.

**1.**    *The Lifting of the Automatic Stay Is Connected to and Will Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor No. 2).*

24.    The second <u>Sonnax</u> Factor, lack of any connection with or interference with the bankruptcy case, militates against providing the Movants with relief from the automatic stay.  At best, allowing the Movants to litigate claims against the Debtors at this point in the cases would be a waste of estate assets.  It goes without saying that the Debtors' Chapter 11 cases are large and complex, and the issues and tasks facing the Debtors before achieving a successful resolution are difficult and numerous.  Lifting the automatic stay for any of the Motions will require the Legal Department and other employees of the Debtors to spend time and resources actively monitoring, analyzing, and evaluating the status of and various litigation strategies of each case, which will detract from their ability to contribute to moving these Chapter 11 cases forward.

25.    In particular, the Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have a contractual obligation to defend.  The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial.  The Legal

Department has been the primary group tasked with assisting in the development and

implementation of the Supplemental Servicing Order.  (Scoliard Decl. at ¶ 5.)  The

overwhelming task of managing hundreds of outside counsel and assisting them with automatic

stay and supplemental servicing issues as they arise will continue after the entry of the final

Supplemental Servicing Order.  (Scoliard Decl. at ¶ 6-7.)

      26.    On top of these duties, the Legal Department has also spent the better part

of the last month assisting in the preparation of the Debtors' schedules of assets and liabilities,

statements of financial affairs, and ordinary course professionals and special counsel retention

applications.  (Scoliard Decl., at ¶ 8.)  As these Chapter 11 cases proceed, the Legal Department

will be required to assist in the preparation of monthly operating reports on an ongoing basis,

address information requests related to the preparation of the Debtors' plan and disclosure

statement, the related sales, Creditors' Committee and examiner investigations, and various other

proposed settlements.  Adding to these responsibilities by permitting legal actions to continue

would divert the Legal Department's and other critical employees' attention from the critical

tasks of running the Debtors' business and would run counter to the policies behind the

automatic stay.  See In re Pioneer Commercial Funding Corp., 114 B.R. at 48 (noting that the

automatic stay is intended to provide the Debtors with a "breathing spell" to address the

immediate concerns related to the restructuring of the Debtors' businesses).

      27.    Therefore, for the above reasons, the second Sonnax factor weighs heavily

against lifting the stay.

      **2.**    *No Specialized Tribunal Has Been Established to Hear the Actions*
            *(Sonnax Factor No. 4).*

      28.    As far as the Debtors are aware, no specialized tribunal has been created to

hear any of the claims involved in any of the Actions.  (Scoliard Decl. ¶ 11.)  Instead, each of the

Actions raises ordinary state and federal civil claims, such as breach of contract, wrongful

conversion, foreclosure, or reconveyance, and violations of TILA, RESPA, and FDCPA.

(Scoliard Decl. ¶ 11.)  As a result, each of the actions is pending in federal or state civil court.

This Court has recognized that it can interpret and apply state law in resolving claims through the

bankruptcy process.  See, e.g., In re Bally Total Fitness of Greater N.Y., Inc., 402 B.R. 616, 624

(Bankr. S.D.N.Y. 2009 ("[t]his Court has significant experience in applying state law ….").

Accordingly, the fourth Sonnax factor weighs in favor of denying relief from the automatic stay.

> **3.**     *No Insurer Has Assumed Responsibility for Any of the Actions*
> *(Sonnax Factor No. 5).*

29.     For the most part, in the vast majority of the cases, including each of the

Actions, the Debtors pay their legal defense fees and costs out-of-pocket.  (Scoliard Decl. ¶ 12.)

As a result, requiring the Debtors to defend the Actions will result in an unnecessary diminution

in the value of the Debtors' estates.  Indeed, the Debtors' out-of-pocket defense costs averaged

approximately $14.8 million per month for the year prior to the Petition Date.  (Scoliard Decl.

¶ 12.)

30.     Moreover, none of the Movants has provided any evidence or indication

that judgments would be paid from third-party insurance proceeds as opposed to cash from the

Debtors' estates.  Even if judgments from the Actions would be paid out of insurance, the

Debtors' insurance policies carry high deductibles; therefore any amounts awarded as judgments

against the Debtors will be born directly by the Debtors.  (Scoliard Decl. ¶ 12.)

31.     Therefore, the fifth Sonnax Factor weighs against granting relief from the

automatic stay.

    **4.**    *The Actions do not Primarily Involve Third Parties (Sonnax Factor No. 6).*

32.    While some of the Actions involve the Debtors as co-defendants, (with the exception of the Lewis Motion and Burris Motion), each of the Actions that is the basis for the Motions has also been brought against the Debtors.  (Scoliard Decl. ¶ 32.)  As a result, in each case, the Debtors are required to actively participate in such Action order to avoid facing an adverse judgment and, accordingly, the fourth <u>Sonnax</u> Factor weighs against granting relief from the automatic stay.  <u>See</u> <u>City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l Inc.)</u>, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate, suggesting that continuance of the stay was proper.").

    **5.**    *Litigation of the Actions in Another Forum Would Prejudice the Interests of Other Creditors (Sonnax Factor No. 7).*

33.    Likely, each of the litigants in stayed actions would prefer to liquidate their claims through their pending lawsuits.  However, liquidation of these claims can and should be done in this Court as part of an organized claims resolution process.  Requiring the Debtors to defend the Actions in other forums (even for the sole purpose of liquidating the Movants' claims) would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court," <u>In re Cuyahoga Equip. Corp.</u>, 980 F.2d 110, 117 (2d Cir. 1992).  A successful case is in the interests of all of the Debtors' creditors and diverting the attention of the Debtors' employees, including the Legal Department, could have a detrimental effect on the Debtors' necessary loss mitigation efforts and the restructuring efforts in general.  As a result, the seventh <u>Sonnax</u> Factor also weighs in favor of denying relief from the automatic stay.

**6.**    *The Interests of Judicial Economy and Economical Resolution of the Actions Are Best Served by Maintaining the Automatic Stay and None of the Actions is Ready for Trial (Sonnax Factor Nos. 10 and 11).*

34.    Most of the Actions underlying the Motions are in their early stages. Accordingly, the state and federal courts in which those Actions are pending have not expended significant judicial resources and in several cases have not even entered an order setting a discovery schedule or a trial date.  For example:

- Gilbert Action: The Gilbert Action is on appeal to the Fourth Circuit as a result of dismissal on procedural grounds, with the Debtors' Rehearing Motion pending.  The Fourth Circuit entered an order denying rehearing as to Deutsche Bank, but stayed the mandate regarding a rehearing en banc as to the Debtor parties.  In the event the automatic stay were lifted, whether rehearing was granted or denied (and the case was therefore remanded for further litigation), either outcome would come at a cost to the Debtors' estates. (Scoliard Decl. ¶ 14.)

- Gardner Action: The Gardner Action was filed in May 2011 and, while much of the document discovery has already occurred, the Debtors believe at least five depositions are likely to be required prior to the motion for summary judgment or trial phase of this Action. (Scoliard Decl. ¶ 14.);

- Taggart Action: Mr. Taggart recently filed postpetition motions seeking (1) to extend the discovery deadline (which was originally set for June 24, 2012) and (2) to compel discovery from GMAC Mortgage, indicating there may be additional discovery in the case. [17]

- Lewis Action:  The Lewises currently have no Action pending which would require relief from the automatic stay.  Moreover, the Lewises have filed a complaint against the Debtors and launched an adversary proceeding in these Chapter 11 cases (Scoliard Decl. ¶ 14.); and

- Jackson Action: The Debtors have filed a motion to dismiss Jacksons' claims, which remains pending and no evidentiary/discovery schedule has been set. (Scoliard Decl. ¶ 14.)

---

[17] See *Certificate of Service*, GMAC Mortgage, LLC v. Kenneth J. Taggart, Case. No. 09-25338 (Mont. County, PA Ct. Dec. 30, 2010) (regarding service of discovery requests on GMAC Mortgage); *Order*, GMAC Mortgage, LLC v. Kenneth J. Taggart, Case. No. 09-25338 (Mont. County, PA Mar. 29, 2012) (setting discovery deadline and trial date); *Motion to Compel Discovery by GMAC and to comply with Deposition Order*, GMAC Mortgage, LLC v. Kenneth J. Taggart, Case. No. 09-25338 (Mont. County, PA June 22, 2012); *Motion to Extend Discovery Scheduling Order*, GMAC Mortgage, LLC v. Kenneth J. Taggart, Case. No. 09-25338 (Mont. County, PA June 22, 2012).

35.    Accordingly, it is clear that the courts in which the Actions are currently

pending have not expended significant judicial resources to get these Actions to the brink of trial

and, therefore, the eleventh Sonnax Factor weighs in favor of denying the stay relief in each

case.  See Bally, 402 B.R. at 624 (denying stay relief where the parties had not started

conducting extensive discovery and were not ready for trial).

**7.**    *The Balance of Harms Favors Maintaining the Automatic Stay*
*(Sonnax Factor No. 12).*

36.    The final Sonnax Factor, the balance of the harms, weighs heavily in favor

of maintaining the stay.  The Movants do not provide any evidence that they will suffer any

prejudice if the stay is not immediately lifted.  In contrast, the cost to the Debtors of lifting the

automatic stay at this early stage of the cases is substantial, as is the potential detriment to other

creditors.  Establishing a precedent for lifting the automatic stay at this point would inevitably

lead to additional relief from stay motions seeking to proceed with prepetition litigation.  With

the Debtors' named as defendants in over 1,900 prepetition actions and in addition, party to

several thousand foreclosure, eviction and borrower bankruptcy proceedings nationwide, relief

from stay motions filed by plaintiffs in even a relatively small percentage of the Debtors'

outstanding litigation would distract the Debtors' management, professionals and, more

importantly, the Legal Department, thus interfering with the Debtors' efforts to successfully

reorganize in these Chapter 11 cases.  See, e.g., In re Northwest Airlines Corp., No. 05-17930,

2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 3, 2006) (stating that "[t]o allow the automatic

stay to be lifted with respect to this action at this time would prompt similar motions and . . .

[t]he distraction and expense of defending such litigation would interfere with judicial economy

and the Debtors' process of reorganization.") (citing In re Ionosphere Clubs, Inc., 922 F.2d 984,

989 (2d Cir. 1990)); Bally, 402 B.R. at 623 ("allowing the actions to proceed would distract the

19

Debtors' management from the bankruptcy proceeding . . . thereby affecting the interests of other

creditors.").  During the pendency of the Debtors' Chapter 11 cases, the limited resources of the

Debtors' estates are much better spent on the Debtors' restructuring efforts, rather than litigating

borrower lawsuits spread throughout the country.  Forcing the Debtors to litigate the Actions, as

discussed above, would distract the Debtors from and hinder their reorganization efforts and

negate the important "breathing spell" necessary to allow them to restructure and preserve the

value of their assets for the benefit of all creditors.

37.    Permitting the Movants to liquidate their claims in state and federal courts

in other parts of the country would undoubtedly lead to numerous additional stay relief motions,

which would unnecessarily drain the Debtors' resources and distract them from restructuring at

this important early stage in the cases.   See Bally, 402 B.R. at 624 (holding that the overall

balance of harms weighed in favor of denying stay relief because forcing the debtors to litigate

would distract them from reorganizing, threaten to open the "floodgates" to other lift stay

motions, resources were better spent stabilizing operations and cash flows and no great hardship

had been demonstrated).  This concern is real; since the first of the Motions was filed, the

Debtors and counsel have received numerous inquiries requesting consent to relief from the stay.

The balance of the harms clearly favors maintaining the automatic stay with respect to the

Actions.[18]

## III.    The Debtors' Filing of the Rehearing Motion with the Fourth Circuit was a Protective Measure and does not Merit Award of Damages or Attorneys' Fees

38.    The Gilberts also request that this Court award them damages and

attorneys' fees pursuant to Bankruptcy Code section 362(k).  The Gilberts argue that damages

---

[18] The Debtors have already agreed to shoulder more of the burden and increased costs of defense through the Supplemental Servicing Order to permit a significant number of foreclosure, eviction and bankruptcy related claims against them to proceed.

and attorneys' fees are appropriate to punish the Debtors for their allegedly willful violation of the automatic stay when they filed the Rehearing Motion on May 17, 2012 in the Gilberts' appeal pending before the Fourth Circuit. The Gilberts request should be denied for several reasons.

39.    First, Bankruptcy Code section 362(k) was not intended to permit creditors to seek sanctions against a debtor. See Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.), 920 F.2d 183, 186-87 (2d Cir. 1990) ("We now hold that a bankruptcy court may impose sanctions pursuant to § 362(h) [now 362(k)] . . . only for violating a stay as to debtors who are natural persons."). The Gilberts have not cited to any authority in support of their argument to the contrary. Moreover, the Gilberts suffered no injury as a result of the Debtors' filing of their motion for rehearing. The Rehearing Motion was a joint motion prepared on behalf of the Debtors and their co-defendant, Deutsche Bank. The Debtors included their name on the brief simply to avoid any waiver of their rights upon expiration of the period for filing a motion for rehearing en banc. The Gilberts were not in any way injured because the Fourth Circuit's mandate on the Rehearing Motion was stayed as to the Debtors, and the Gilberts were required to respond to the Rehearing Motion as to Deutsche Bank in any event.

40.    Additionally, concurrently with the Rehearing Motion, the Debtors filed their *Notice of Bankruptcy and Effect of Automatic Stay, Case. No. 10-2295*, dated May 17, 2012. The Debtors stay notice was sufficient to provide the Fourth Circuit and the Gilberts with notice of the Debtors' Chapter 11 cases and the resulting stay, preventing any potential injury to the Gilberts and assuaging the need for the Gilberts to expend attorneys' fees to respond to the Rehearing Motion to the extent that it related to the Debtors.

41.     Because the Gilberts were not in any way injured by the Debtors

protective measure in filing the Rehearing Motion to avoid waiving their rights to seek a

rehearing en banc, the Gilberts request for damages and attorneys fees should be denied.

## CONCLUSION

42.     Based on the weight of settled authority and its application to the Motions

as described above, the Debtors respectfully submit that the Movants have failed to meet their

burden to show cause for lifting the automatic stay to permit the Actions to proceed in state and

federal courts in other parts of the country.  Substantially all of the applicable <u>Sonnax</u> Factors

weigh heavily in favor of maintaining the automatic stay.  As such, the Court should deny the

Motions.

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an

Order denying Motions and grant such other relief as the Court deems proper.


New York, New York                      /s/ Larren M. Nashelsky
Dated: July 3, 2012                     Larren M. Nashelsky
                                        Gary S. Lee
                                        Norman S. Rosenbaum
                                        MORRISON & FOERSTER LLP
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone: (212) 468-8000
                                        Facsimile: (212) 468-7900

                                        *Proposed Counsel to the Debtors and
                                        Debtors in Possession*