**EXHIBIT 2**

**<u>Index of Court Documents Cited Herein</u>**

ny-1047805

## **Appendix**

**Unpublished Decisions**

1.      Memorandum Opinion (I) Lifting the Automatic Stay for Cause Pursuant to 11 U.S.C. § 362(d)(1) and (II) Granting Other Relief, <u>Inwood Heights Housing Dev. Fund Corp.</u>, Case No. 11-13322 (MG) at 20 (Bankr. S.D.N.Y. Aug. 25, 2011).

2.      Memorandum Opinion and Order, <u>In re Motors Liquidation Co.,</u> 10 Civ. 36 (RJH) (S.D.N.Y. Nov. 17, 2010).

3.      Memorandum of Opinion and Order Denying Motion for Relief from Stay, <u>In re Northwest Airlines Corp.,</u> 2006 WL 687163 *2 (Bankr. S.D.N.Y. Mar. 10, 2006).

**Orders**

4.      June 20, 2012 Order by Fourth Circuit denying rehearing en banc as to non-debtor Deutsche Bank Trust Company Americas.

**Other Pleadings**

5.      3rd Amended Counter Claim against GMAC Mortgage, LLC, LBA Financial Group, LLC, Eagle Nationwide Mortgage Company, et al., <u>GMAC Mortg., LLC v. Taggart</u>, Case No. 09-25338 (Pa. Court of Common Pleas Apr. 28, 2010).

6.      Order, <u>GMAC Mortg., LLC v. Taggart</u>, Case No. 09-25338 (Pa. Court of Common Pleas Mar. 29, 2012).

7.      Certificate of Service, <u>GMAC Mortg., LLC v. Taggart</u>, Case No. 09-25338 (Pa. Court of Common Pleas Dec. 30, 2010).

8.      Motion to Extend Discovery Scheduling Order, <u>GMAC Mortg., LLC v. Taggart</u>, Case No. 09-25338 (Pa. Court of Common Pleas June 22, 2012).

9.      Motion to Compel Discovery by GMAC and to comply with Deposition Order, <u>GMAC Mortg., LLC v. Taggart</u>, Case No. 09-25338 (Pa. Court of Common Pleas June 22, 2012).

10.      Notice of Bankruptcy and Effect of Automatic Stay, <u>Gilbert v. Deutsche Bank Trust Co. Americas</u>, Case No. 10-2295 (4th Cir. May 17, 2012).

11.      Civil Complaint, <u>Jackson v. GMAC Mortg. Corp.</u>, Case No. CV 2012-00049 JCW (Ala. Cir. Jan. 18, 2012)

12.    Notice of Removal, <u>Jackson v. GMAC Mortg. Corp.,</u> Case No. 12-cv-00111 (D. Ala. Feb. 23, 2012)

13.    Complaint, <u>Burris v. U.S. Bank. Nat'l Assoc.,</u> Case No. 10-cv-00670 (D. Colo. March 22, 2010)

**1**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>INWOOD HEIGHTS HOUSING<br>DEVELOPMENT FUND CORPORATION,<br><br>                      Debtor. | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 11-13322 (MG) |

**MEMORANDUM OPINION (I) LIFTING THE AUTOMATIC STAY FOR CAUSE**
**PURSUANT TO 11 U.S.C. § 362(d)(1) AND (II) GRANTING OTHER RELIEF**

*A P P E A R A N C E S :*

CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorneys for the City of New York and Its Agencies*
100 Church Street, Room 5-223
New York, New York 10007
By:    Gabriela P. Cacuci, Esq.

PETER F. ANDERSON, JR., ESQ.
*Attorney for the Debtor*
370 East 149th Street, Suite C
Bronx, New York 10455
By:    Peter F. Anderson, Jr., Esq.

TRACY HOPE DAVIS
*United States Trustee for Region 2*
22 Whitehall Street, 21st Floor
New York, New York 10004
By:    Serene K. Nakano, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      New York City and its agencies, including the New York City Department of Housing

Preservation and Development ("HPD"), the New York City Department of Finance ("DOF"),

and the New York City Water Board (the "Water Board") (collectively, herein, "NYC" or the

"City") move pursuant to General Order M-389 to withdraw this case from mediation and move

pursuant to 11 U.S.C. § 1112(b) to dismiss this chapter 11 case for cause, including lack of good

faith, or in the alternative, to lift the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and/or (d)(2) (the "Motion").  (ECF Doc. # 9.)  Inwood Heights Housing Development Fund Corporation (the "Debtor") interposed an objection on August 8, 2011 (the "Objection").  (ECF Doc. # 13.)   A hearing on the Motion was held on August 22, 2011 (the "Hearing") and the Court took the matter under submission.

The Debtor has for many years demonstrated a shocking disregard for nearly every obligation imposed by law on this not-for-profit low income housing development corporation. It filed for bankruptcy on the eve of a foreclosure sale that would only result in a sale to a new entity legally committed to maintaining this housing for low income tenants.  None of the tenants currently occupying apartments in the Property (defined below)—at least if they are paying their very low rents—will be displaced or evicted from their apartments.  Indeed, the tenants will be far better off if the Property is owned and managed by responsible parties.

For the reasons explained below, the Court grants the City's request to vacate the automatic stay and withdraw the case from mediation.  Additionally, the motion to dismiss the case is granted, but entry of an order dismissing the case will be held in abeyance until NYC is able to complete a foreclosure sale of the Property.

## BACKGROUND

### A.  Incorporation of the Debtor

The Debtor was incorporated in 1992 pursuant to article XI of the Private Housing Finance Law and section 402 of the Not-for-Profit Corporation Law (the "N-PCL") of the State of New York as a Housing Development Fund Corporation ("HDFC").  The Debtor was created specifically for the purpose of operating low income and homeless housing under the City's

Special Initiatives Program ("SIP").  The SIP was created by the City in an effort to reduce urban

blight by providing shelter to low income and homeless City residents.  In accordance with the

SIP, and to ensure that 1484 Inwood Avenue, Bronx , New York (the "Property" or "Premises")

conveyed by the City would be operated to effectuate the City's desired public policy objectives,

the Debtor was required to execute, in addition to a note (the "Note") and mortgage (the

"Mortgage"), certain Project Loan Documents ("PLDs"), such as (a) a Land Disposition

Agreement (the "LDA"), (b) a regulatory agreement (the "Regulatory Agreement"), and (c) a

Special Initiatives Program Funding and Disbursement Agreement ("FDA") for Project

Reserves, all dated as of December 19, 1995 and recorded with the Note, Mortgage and the deed

(the "Deed") in the City's Register Office.  The Mortgage and the PLDs contain cross-references

and cross-default provisions and involve both monetary and non-monetary events of default.

(Motion Exs. 1–6.)

   As described in the City's Motion, the "special status and unique purpose of the Debtor is

reflected in all the legal documents executed by the Debtor in connection with the City's

conveyance of the Premises to the Debtor."  (Motion ¶ 16.)  The Debtor's Certificate of

Incorporation (the "Certificate") provides that the Debtor was founded as a single purpose entity

organized "exclusively for the purpose of developing a housing project for persons of low

income."  (ECF Doc. # 10 Ex. 1, Art. II.)  The Debtor's Certificate also dictates that during the

lifetime of the Regulatory Agreement with HPD, "the property or franchise of the Corporation

may be disposed of only with the consent of HPD."  (*Id.* Art. V.)

12-12020-mg   Doc 6682-2   Filed 07/03/12   Entered 07/03/12 15:59:21   Exhibit 2
(Part 1)   Pg 8 of 121

1.   **The Land Disposition Agreement and Subsequent Additions to the Debtor's
     Board of Directors**

The LDA, entered into on December 19, 1995, provided for the sale of the Property to the

Debtor for the nominal sum of $1.  The LDA further provided that in exchange for the Property,

the Debtor gave HPD a non-interest bearing "Enforcement Note" secured by an "Enforcement

Lien Mortgage" in the amount of $999,999.00, the equivalent appraised value of each multiple

dwelling within the disposition site, as rehabilitated by the City and delivered to the Debtor in

turnkey condition.  In addition to the financial terms of the conveyance, the LDA set forth Bronx

Heights Neighborhood Community Corporation's (the "Sponsor" or "Bronx Heights")  and the

Debtor's agreement to enter into and comply with the terms of the Regulatory Agreement and

FDA, both of which were annexed to and executed and recorded simultaneously with the LDA.

Paragraph 404B of the LDA provides that "any subsequent additions to the HDFC's

Board of Directors consisting of individuals who are not corporate officers of or directors of the

Sponsor which occur prior to the expiration of the Restriction Period[1] shall be subject to HPD

approval, which approval shall not be unreasonably withheld."  (Motion ¶ 22.)  The City

contends that the current incarnation of the Debtor's board of directors, or at least those on the

board who decided to file the bankruptcy petition, were never authorized by HPD and therefore

did not have the authority to file for bankruptcy.  The Debtor, in its Objection, states that "The

Board of Directors authorized the filing of the chapter 11 Bankruptcy Petition . . . . With respect

to the appointment of a new board or new management the board was not aware that it had to get

prior notice and consent as the Debtor has had many dealings with HPD . . . and no one apprised

it that they need approval of new offices [sic] or directors, even though HPD had been in contact

---

[1]       The Regulatory Agreement defines the term "Restriction Period" as the 32nd anniversary date of the 1995
date of the agreement, *i.e.*, until 2027.

with Sergio Clark [the person who the Board of Directors authorized to file the bankruptcy petition]." (Objection ¶ 4.)  At the Hearing, counsel for the Debtor conceded that the current purported board of directors never received approval from HPD, but indicated that HPD was aware of the change in board composition because of conversations between HPD and members of the current purported board.

### 2.  The Deed and Mortgage

The Deed provides, *inter alia*, that the Debtor, as Grantee, "accepts this Deed subject to all of the terms, covenants and conditions of the Land Disposition Agreement," that the Debtor agrees to comply with the LDA and the Regulatory Agreement, that the Regulatory Agreement is incorporated by reference in the Deed, and that the grantee's covenants "shall be covenants running with the land." (Motion Ex. 3.)  Similarly to the Certificate, the Deed contains an express prohibition against transfer or disposition of the Premises during the Restriction Period "without prior written approval of the Commissioner of HPD." (*Id.* ¶ 6.)  The Deed also provides for the reverter of the Property to HPD "in the event that the [Debtor] shall fail to perform or to abide by any of the covenants set forth herein." (*Id.* ¶ 7.)

As mentioned above, at the time the Property was conveyed to the Debtor for the nominal price of $1, the Mortgage in the amount of $999,999.00 attached, as collateral security for the payment of the Note in the sum of $999.999.00 made by the Debtor to the City on December 19, 1995.  Provided the Note was not otherwise in default, no monthly payments of principal or interest were required to be made.  However, the Mortgage required the Debtor to pay water, sewer charges and real estate taxes that were not otherwise abated.  Upon the thirty-second anniversary date of the execution of the Note and Mortgage (2027), provided the Mortgage was not then in default beyond any cure period, the Mortgage would be deemed forgiven.

5

12-12020-mg  Doc 682-2  Filed 07/03/12  Entered 07/03/12 15:59:21  Exhibit 2
(Part 1)  Pg 10 of 121

### 3.  The Regulatory Agreement

The Regulatory Agreement also provides that the HDFC and the Sponsor agree that the

registration of rents and procedures set forth with respect to rent registration under the Rent

Stabilization Code with the New York State Division of Housing and Community Renewal

("DHCR") will be followed.  Specifically, they agreed to comply with maximum collectible

rents, the eligibility of tenants and income determinations, the household size and dwelling

units/occupancy requirements, re-renting policy, prohibition against use of the property as a

condominium or cooperative conversion, marketing plans, management services, tenant

development, provision of social services, the establishment and maintenance of "a replacement

reserve account" and of an "operating reserve account," and the requirement that they file

"annual reports" including an annual budget management plan and social services plan.  (Motion

¶ 29.)

The Regulatory Agreement clearly sets forth a use restriction with regard to the Property,

stating that:

> Subject to the provisions of this agreement . . ., all apartments in the
> Disposition Area must remain as low and moderate income rental housing
> resources for the Restriction Period, during which time the Disposition Area
> must be owned by either a not-for-profit corporation which qualifies as such
> pursuant to 501(c)(3) of the Internal Revenue Code or a governmental
> entity.

 (*Id.* ¶ 30.)  The requirement that the HDFC maintain replacement and operating reserves is

important, because these coffers are what the HDFC is supposed to use to fund maintenance and

repairs of the Property.  The Debtor's failure to maintain these funds resulted in additional liens

on the Property, arising from the City's provision of hundreds of thousands of dollars to pay

heating, water and sewer bills so that tenants would not be without these most basic services.
(Motion ¶ 40.)

### 4. Debtor's Current Financial Position

For over six (6) years, the Debtor has failed to make the requisite financial disclosures to
HPD.  The Debtor failed to file annual rent registration reports with the DHCR until HPD
commenced its foreclosure action in 2008.  It was only then that the Debtor filed its DHCR
registration for the year *2005*.  According to the DHCR, the monthly rent for the Property, which
consists of 27 apartments, was $18,025.00.[2]  (Motion Ex. J.)  However, in the Debtor's Rule
1007-2 Affidavit (the "1007 Affidavit"), the Debtor estimated "cash receipts of approximately
$8,000 for the next 30 days."  (ECF Doc. # 1.)  At the Hearing, Debtor's counsel indicated that
many of the tenants had not paid rent in quite some time, and conceded that the current purported
board of directors had not initiated any Nonpayment Summary Proceedings against these tenants
in New York City Housing Court.

The City contends that the Debtor's schedules do not accurately reflect the Debtor's
liabilities, at least with regard to what is owed the City.  The City's statutory liens alone,
pursuant to section 11-301 of the New York City Administrative Code (the "Admin. Code"), for
unpaid real estate taxes were $309,445.36 as of July 1, 2011 and for unpaid water and sewer bills
were $198,246.65 as of July 12, 2011.  These statutory liens, which prime the Mortgage,
continue to accrue interest at the statutory rate until fully paid.  In addition, the Debtor owes
HPD $999,999.000 under a judgment of foreclosure issued by the state supreme court, plus post-
judgment interest and other costs recoverable in a foreclosure action.  Thus, the City alone has

---

[2]        At the Hearing, neither party knew whether all 27 units were currently occupied, but both parties
acknowledged that a significant number of tenants were not current with their rental payments.

7

liens in excess of $1.5 million, exceeding the value of the Property as professed in the Debtor's

own 1007 Affidavit.  The Petition and matrix also list $254,255 of unsecured debt due and owing

to the New York State Workers' Compensation Board, Colony Fuel Oil, and Express Plumbing

Sewer & Water Corp (the "Unsecured Creditors").

## B. Bankruptcy Filing

The Debtor filed a petition (the "Petition") for chapter 11 relief on July 11, 2011 (the

"Petition Date").  The Petition Date coincided with the day when the Debtor's sole asset, the

Property, was scheduled for foreclosure sale.  HPD was attempting to foreclose on the Property

pursuant to a mortgage foreclosure judgment, in the amount of $999,999.00 plus interest and

costs, awarded in *The City of New York vs. Inwood Heights Housing Development Fund

Corporation*, *et al.*, Index No. 251223/09, Supreme Court, Bronx County (the "Foreclosure

Action").  (Motion Exs. A, B.)  The Debtor is a "small business debtor" as defined in 11 U.S.C. §

101(51D) as well as a single asset real estate debtor within the meaning of 11 U.S.C. § 362(d)(3).

The Property was previously included, incorrectly, in the chapter 11 case of Bronx

Heights Neighborhood Community Corporation, Case No. 11-13104 (MG) ("Bronx Heights

Case").  There were several deficiencies with Bronx Heights' petition, so the City brought an

Order to Show Cause seeking dismissal of the Bronx Heights Case.  The City's motion was

granted and the Bronx Heights Case was dismissed by Order Dismissing Case dated July 7, 2011

signed by Judge Chapman.  (Motion Ex. E.)  Bronx Heights and this Debtor are represented by

the same counsel, Peter Anderson, Esq.  As mentioned above, Bronx Heights acted as the

"sponsor" in connection with the creation of various HDFCs, including Inwood Heights, which

is presumably why Mr. Anderson mistakenly indicated Bronx Heights as the Debtor in his first

filing attempt.

### C.  Debtor's Financial Difficulties and Alleged Commingling/Financial Mismanagement of Rental Receipts by Debtor's Prior Board of Directors

The Debtor's 1007 Affidavit indicates that "the companies' [sic] financial problems are

due to mismanagement and possibly misappropriation of funds by the previous executive of the

organization."  (1007 Aff. ¶ 3.)  At an evidentiary hearing held on October 20, 2008, as part of

HPD's consolidated foreclosure proceedings (including the Foreclosure Action against this

Debtor), before Justice Paul Victor, Ms. Gloria Devine Bhutta, as Treasurer of the Sponsor

(Bronx Heights) and President of the Debtor and other HDFCs being foreclosed, testified to the

commingling of funds between Bronx Heights and the corporate record-owners of the properties

being foreclosed (including Inwood Heights), unauthorized loans and write-downs of loans to

affiliated entities, the mismanagement of the properties and falsifying of business records.

(Motion ¶ 43.)  The Debtor contends that current management is running the Debtor responsibly

and that funds are not presently being mismanaged.  However, at the Hearing, counsel for the

Debtor indicated that the Debtor has not made any post-petition payments, and has not

commenced legal action against those tenants not paying their rent.  While Debtor's counsel was

not entirely sure, he stated at the Hearing that the Debtor's purported board of directors had

obtained an insurance proposal, but that he did not believe the Debtor was currently insured.

Such realities suggest that the Debtor's current purported board of directors is not responsibly

managing the Debtor's financial affairs.

9

**D.  City's General Arguments and the Debtor's Objection**

The City argues that for the reasons set forth in its Motion, "the chapter 11 filing was not authorized by the Debtor's board of directors approved by HPD, the debtor has no authority to transfer ownership of the Premises, modify the covenants or use restrictions encumbering the Premises, which run with the land, or to appoint a new board or management for the Debtor without HPD's prior written consent."  (ECF Doc. # 11 at 2.)  The City contends that dismissal, or the lifting of the automatic stay, is warranted because the Debtor filed its petition in bad faith. The Debtor's response was not particularly informative, and did not address the vast majority of the City's arguments.  The Debtor's Objection arguably conceded that the Debtor's purported board of directors did not have authority to file by acknowledging that the board was unaware of its duty to obtain HPD's consent to change its membership body.  The Debtor did not offer any legal authority in support of its Objection, simply concluding that the Debtor believes "it is in a position to reorganize and make the property a viable property with a reorganization under chapter 11." (Objection ¶ 9.)

## DISCUSSION

NYC contends (i) that cause exists for either dismissing the Debtor's case under section 1112(b) or lifting the automatic stay under section 362(d)(1) because the Petition was filed in bad faith and (ii) the automatic stay should be lifted under section 362(d)(2) because the Debtor lacks equity in the Property.[3]  Stay relief would enable NYC to utilize its state law remedies and proceed with a foreclosure sale of the Property.  For the following reasons, the Court grants the

---

[3]     Under section 362(d)(2), the court can grant stay relief if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."  11 U.S.C. § 362(d)(2).  The Court declines to grant stay relief under section 362(d)(2) because the Property is the Debtor's primary asset, and therefore, would be necessary to any reorganization.

motion to lift the automatic stay for cause and will enter an order dismissing the case after the

Property is sold at a foreclosure sale.[4]

### A.  11 U.S.C. §§ 362(d)(1) and 1112(b) Generally

Under section 362(d)(1) of the Bankruptcy Code, on request of a party in interest and

after notice and a hearing, the court shall grant relief from the automatic stay "such as by

terminating, annulling, modifying, or conditioning" the stay "for cause, including the lack of

adequate protection of an interest in property." 11 U.S.C. § 362(d)(1).  While section 362(d)(1)

explicitly identifies a lack of adequate protection as cause for stay relief, "there are other bases

for a cause finding." 3 COLLIER ON BANKRUPTCY ¶ 362.07[3] (16th ed. rev. 2011).

Section 1112(b) of the Bankruptcy Code governs conversion or dismissal of a debtor's

chapter 11 case. *See* 11 U.S.C. § 1112(b).  Under section 1112(b), a court can dismiss a chapter

11 case or convert it to a case under chapter 7 "for cause" so long as it is in the best interests of

both the creditors and the estate.  7 COLLIER ON BANKRUPTCY ¶ 1112.04.  Subsection (b)(4)

contains sixteen examples of events that may constitute cause.  This list, however, is "not

exhaustive" and courts are free to consider other factors. *See, e.g.*, *In re Ameribuild Const.*

*Mgmt., Inc.*, 399 B.R. 129, 131 n.3 (Bankr. S.D.N.Y. 2009) (citing legislative history).

### B.  Stay Relief and Subsequent Dismissal Are Warranted Because the Debtor Reasonably Cannot Rehabilitate in Bankruptcy

Although section 1112(b)(4)(A) explicitly states that cause exists for conversion or

dismissal when there is a "substantial or continuing loss to or diminution of the estate and the

absence of a reasonable likelihood of rehabilitation," 11 U.S.C. § 1112(b)(4)(A), the Court finds

---

[4]   Although NYC moved for dismissal (and stay relief in the alternative), the Court elects to lift the stay now and enter a dismissal order later to guard against the possibility that the Debtor may subsequently file a new bankruptcy case before a rescheduled foreclosure sale.

that, under the circumstances of this case, this same standard evidences cause in the context of stay relief under section 362(d)(1).[5]

In this case, the Court finds that there is a continuing diminution of the estate. At the Hearing, Debtor's counsel conceded that not all tenants are paying rent and that rent revenues are *not* expected to increase from $8,000 per month. Other than sending non-payment notices to delinquent tenants, the Debtor has not taken further action since the Petition Date to collect these arrearages. This pattern of behavior has persisted for several years prior to the Petition Date.[6] It is also equally clear that the Debtor lacks the funds to cover basic repairs or other daily operations. Specifically, HPD has already advanced funds in excess of $300,000 to maintain the Property. (Motion ¶ 17.)

In addition, any attempt by the Debtor to rehabilitate will be futile. Even if the Debtor received proper authority to file the Petition, any legitimate bankruptcy goal would be frustrated by the enforceable restrictions imposed on the Debtor by the Certificate, the LDA, the Regulatory Agreement and the Deed. Under the terms of these documents, a sale of the Property cannot occur because any such disposition would need to be approved by HPD. (Certificate Art. VIII) ("For thirty two (32) years from the date of the conveyance of title [December 19, 1995] to the building to the Corporation by the City of New York, the Corporation shall not sell, transfer,

---

[5]       In *In re Hinchliffe*, 164 B.R. 45, 49 (Bankr. E.D. Pa. 1994), the court noted that stay relief was justified under section 362(d)(1) because, *inter alia*, the debtor's "prospects for a successful reorganization [were] slim" due to a lack of sufficient income to fund a plan. It is also well-established that the bad faith filing of a bankruptcy petition warrants cause for either dismissal or conversion, or stay relief. *See In re Laguna Assocs., L.P.*, 30 F.3d 734, 737 (6th Cir. 1994) (finding that there is no substantive difference between the cause requirement for dismissal under section 1112(b) and the cause requirement for stay relief under section 362(d)(1)). In this case, lifting the stay and dismissing the case functionally achieve the same result—the City can sell the Property at a foreclosure sale. Therefore, it is appropriate for the Court to apply the requirements of section 1112(b)(4)(A) to the context of stay relief under section 362(d)(1).

[6]       The rent roll for the Property in 2005 was $18,025.00 per month. (Motion Ex. J.) However, based on the 1007 Affidavit, cash receipts are anticipated at only $8,000 for thirty days beginning July 9, 2011. (1007 Aff. ¶ 13.) It is abundantly clear that there has been a perpetual decrease in monthly rent collections for the past several years. Some tenants have rent arrears exceeding $20,000. (Motion Ex. K.)

exchange, mortgage or otherwise dispose of or lease all or substantially all of the building

without the prior written approval of the Commissioner of HPD."); (LDA § 402) ("Sponsor and

the HDFC represent that it shall not assign this Agreement nor sell, assign, transfer, mortgage,

lease . . ., transfer in any other mode or form, such [Property] . . . for the term of the Restriction

Period . . . without the prior written approval of the Commissioner of HPD."); (Deed at 2, 3)

("The Grantee agrees . . . to comply with the terms, covenants, and conditions of the LDA and

Regulatory Agreement . . . .  The Grantee covenants and agrees not to sell, transfer mortgage,

exchange or otherwise dispose of or lease all or substantially all of the [Property] for the term of

the Restriction Period without prior written approval of the Commissioner of [HPD].")  In

addition, any purported use of the Property must remain solely for the purpose of providing "low

and moderate income rental housing" until the Restriction Period expires.  (Regulatory

Agreement ¶ 13.)  This restriction, among others contained in the Regulatory Agreement, "run

with the land and bind Sponsor, the HDFC, the HDFC's successors, assigns, heirs, grantees, and

lessees" during the Restriction Period.  (*Id.* ¶ 19.)

The Debtor cannot relieve itself of these restrictions simply by selling the Property under

section 363(f).  Section 363(f) enables a trustee or debtor in possession to sell property of the

estate free and clear of all liens and interests if, among other things, "[a]pplicable nonbankruptcy

law permits sale of such property free and clear of such interests."  11 U.S.C. § 363(f)(1).  In *In*

*re 523 East Fifth Street Hous. Dev. Fund Corp.*, 79 B.R. 568 (Bankr. S.D.N.Y. 1987), the debtor,

which was a HDFC, sought an order pursuant to section 363(f)(1), permitting a sale of real estate

free and clear of all liens and encumbrances, including a covenant from NYC (located in the

deed) restricting the use of the property to low income housing.  *Id.* at 569, 571.  The court

analyzed applicable provisions of the New York Real Property Actions and Proceedings Law

(the "RPAPL") and found that "[b]ecause the covenant contained in the deed was created for a public purpose with a governmental unit, subdivision and agency of New York State, it is not voidable under [RPAPL] § 1955." *Id.* at 571; *see also* N.Y. REAL PROP. ACTS. LAW §§ 1951, 1955 (McKinney 2011). The court also concluded that the deed restrictions are restrictive covenants which run with the land. *523 East Fifth Street*, 79 B.R. at 574–75.[7] It follows that this case, which is factually similar to *523 East Fifth St.*, would lead to the same conclusion— namely, that the Debtor cannot use the Bankruptcy Code to obviate compliance with any sale restrictions contained in the Deed.

Nor is it likely that the Debtor can confirm a standalone plan. Assuming *arguendo* that the Debtor's $1.3 million value of the Property is accurate (1007 Aff. ¶ 5), NYC's security interest in the Property exceeds the Property's value. While the Debtor maintains that the "amount of claims on the property is approximately $1.1 million" (*Id.*), NYC received a foreclosure judgment in the amount of $999,999.00 (1007 Aff. ¶ 6; Motion ¶ 35) and has statutory liens in the amount of $309,445.36 for unpaid real estate taxes as of July 1, 2011 and $198,246.65 for unpaid water and sewer charges as of July 12, 2011. (Motion ¶ 46, Exs. N, O.) In the aggregate, NYC has a secured claim that exceeds the Debtor's own valuation of the Property.[8]

---

[7]  In *523 East Fifth St.*, the debtor also argued that equitable principles warranted relief under section 363(f)(5) (permitting a sale free and clear if "such entity could be compelled in a legal or equitable proceeding, to accept a money satisfaction of such interest"). *Id.* at 575. The court found that equitable grounds did not exist because, among other things, "[t]he City has not abandoned its objective in seeing the low income housing shortage problem alleviated via the Debtor's property. No acquiescence in violation has been established." *Id.* at 576.

[8]  Admin. Code § 11-301 provides that "taxes and all assessments and all sewer rents, sewer surcharges and water rents, and the interest and charges thereon, which may be laid or may have heretofore been laid, upon any real estate now in the city, shall continue to be, until  paid, a  lien thereon, and shall be preferred in payment to all other charges."

Furthermore, the Debtor has not shown that it can obtain financing from a third party to pay NYC's secured claim (among other claims) or explained how it can obtain the appropriate means to implement a plan.[9]  At the Hearing, Debtor's counsel indicated that several community groups were interested in assisting the Debtor to pay back the City.  However, Debtor's counsel did not indicate which community groups he was referencing, and did not represent that they had signed anything indicating an actual intent to assist the Debtor financially.  Even if the Debtor did obtain financing from a community group or a private entity, the loan would be likely subject to approval from HPD.  (LDA § 402.)  It is likewise clear that Debtor's rental income—even if all tenants were paying their rent stabilized rent—could not support debt service on the size of a loan required to fund a plan.  Here, HPD has expressed that it is committed to going forward with the "foreclosure sale and credit bid or transfer the Property to another HDFC."  (Motion ¶ 48.)

## C. NYC Is Not Adequately Protected

Stay relief is available to a party with an interest in estate property when the party's interest is not adequately protected.  *See* 3 COLLIER ON BANKRUPTCY ¶ 362.07[3][b].  The term "adequate protection" is not defined in the Bankruptcy Code, but section 361 "gives examples of what might constitute adequate protection and, at least in one instance, of what will not constitute adequate protection."  *Id.*  Specifically, adequate protection may be provided by:

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

---

[9]     The Petition indicates that the Debtor's total unsecured debt stands at approximately $254,255.00.  (Petition at 4–5.)

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

One common way of meeting the "indubitable equivalent" standard in section 361(3) is through the existence of an equity cushion. An equity cushion in property "provides adequate protection if it is sufficiently large to ensure that the secured creditor will be able to recover its entire debt from the security at the completion of the case." *In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994). "An equity cushion exists if the value of the collateral available to the creditor exceeds by a comfortable margin the amount of the creditor's claim." 3 COLLIER ON BANKRUPTCY ¶ 362.07[3][d][i]. The amount of equity cushion sufficient to provide adequate protection is determined on a case-by-case basis. *See, e.g.*, *In re James River Assoc.*, 148 B.R. 790, 796 (E.D. Va. 1992).

In this case, NYC is not adequately protected. To the contrary, at the Hearing, it became clear that the Debtor has not met any of its basic post-petition obligations—let alone attempt to provide adequate protection to NYC on account of its secured claim. Moreover, based on the value of the Property contained in the Debtor's 1007 Affidavit, the amount of NYC's liens significantly exceed the Property's value—thereby eliminating any potential for the existence of an equity cushion.

16

## D.  Lack of Authority to File the Petition and Bad Faith

NYC argues that contrary to the terms of the Certificate and LDA, HPD did not authorize Sergio Clark ("Clark"), the signatory on the Debtor's petition, or the purported management to act on behalf of the Debtor.  Accordingly, NYC believes that Clark lacked the requisite authority to file the Petition.  NYC's legal argument is further premised on the intersection of Clark's and the current purported board's alleged lack of authority and bad faith.  Specifically, NYC contends that the Petition was impermissibly filed in an attempt to forestall eventual foreclosure and transfer of the Property.

### 1.  Lack of Authority

Caselaw has long held that for a corporation, "the initiation of the [bankruptcy] proceedings, like the run of the corporate activities, is left to the corporation itself, i.e., to those who have the power of management."  *Price v. Gurney*, 324 U.S. 100, 104 (1945).  The source of such authority is derived from state law, the corporation's certificate of incorporation and the by-laws.  2 COLLIER ON BANKRUPTCY ¶ 301.04[2][b].  Typically, the authority to file rests with a corporation's board of directors.  *Id.*  Under N-PCL § 701(a), "[e]xcept as otherwise provided in the certificate of incorporation, a corporation shall be managed by its board of directors."  Under New York law, "[i]n the absence of any restriction, by statute or by the charter and by-laws, the power of the board to make a general assignment of the property of a corporation which is unable to meet its current obligations for the benefit of creditors or to apply for a receivership is to be presumed.  The voluntary petition for adjudication as a bankruptcy is tantamount to such proceedings."  *In re Guanacevi Tunnel Co.*, 201 F. 315, 318 (2d Cir. 1912) (internal citations omitted).

17

Moreover, a bankruptcy petition requires corporate action by the board of directors unless the board confers such authority on another individual. *In re Jefferson Casket Co.*, 182 F. 689, 691 (N.D.N.Y. 1910). Indeed, "[t]he important step of going into voluntary bankruptcy, ceasing to perform the corporate functions, and surrendering all its property to a trustee to be appointed by the court and creditors, same to be administered and distributed by the court, is one that can be authorized by the board of directors only, and the president . . . can only execute such a petition in the name of the corporation on being authorized so to do by the directors, managers, or trustees." *Id.*; *see also Regal Cleaners & Dyers, Inc. v. Merlis et al.*, 275 F. 915, 916 (2d Cir. 1921) ("There is no presumption of authority in an officer to make and file a voluntary petition in bankruptcy, and he may not do so without the consent of the directors."). One court has held that under New York law, a shareholder agreement can confer power to a certain shareholder to file for bankruptcy protection on behalf of the corporation. *In re Adorn Glass & Venetian Blind Corp.*, Case No. 05 Civ. 1890(RJH), 2005 WL 3481325, at *7 (S.D.N.Y. Dec. 16, 2005).

The various pleadings and documents contained in the record demonstrate the existence of disputed issues of fact with respect to whether Clark and/or the purported board had authority to file the Petition. For example, in response to the Motion, the Debtor alleges that "[t]he board of directors authorized Sergio Clark to file the bankruptcy petition." (Objection ¶ 2.) Moreover, while the Objection provides a tacit admission that Clark was not a member of the board because "the board was not aware that it had to get prior notice and consent . . . with [HPD]"[10] (*Id.* ¶ 4),

---

[10]     The Debtor executed the LDA which, *inter alia*, restricted the power of the Debtor to select board members without approval from HDP. Specifically, LDA § 404(B) states "[t]he [Debtor] hereby agrees that . . . any subsequent additions to the [Debtor's] Board of Directors consisting of individuals who are not corporate officers or directors of Sponsor which occur prior to the expiration of the Restriction Period, shall be subject to HPD approval, which approval shall not be unreasonably withheld." In addition, the Regulatory Agreement (which was incorporated in the Note and Mortgage) executed between NYC, the Debtor and the Sponsor gave HPD the authority to approve any "managing agent" vested with the responsibility of managing and maintaining the Property. (Regulatory Agreement at 7.)

Clark, in theory, may have been duly authorized to file the Petition.  *See In re Jefferson Casket Co.*, 182 F. 689, 691 (N.D.N.Y. 1910).  At the Hearing, Debtor's counsel also stated that HPD was aware that Clark was acting in a managerial capacity based on communications exchanged between Clark and HPD.

The resolution of disputed factual issues would require an evidentiary hearing.  No evidence was presented at the Hearing because Local Rule 9014-2 provides, subject to exceptions not applicable here, that the first scheduled hearing in a contested matter will *not* be an evidentiary hearing.  *See* Local Rule 9014-2.  At this time, in light of the Court's previous findings with respect to cause for stay relief and eventual dismissal, the Court concludes that it is unnecessary to decide whether Clark or the current purported board had authority to file the Petition—the automatic stay is lifted and the case will be dismissed without resolving the issue of authority.

### 2.  Bad Faith

The Debtor also disputes NYC's assertion that the Petition was filed in bad faith by stating that "[t]he filing was not a bad faith filing as the debtor as the debtor [sic] maintains that they had it in good faith [sic] had legal rights to maintain and administer assets and property in Chapter 11."  (Objection ¶ 5.)  NYC argues that, based on the Second Circuit's decision in *C-TC 9th Ave. P'Ship v. Norton Co. (In re C-TC 9th Ave. P'Ship)*, 112 F.3d 1304, 1311 (2d Cir. 1997), several indicia of bad faith are present, and consequently, NYC's requested relief is warranted on that ground.

"[T]he standard in [the Second Circuit] is that a bankruptcy petition will be dismissed if both objective futility of the reorganization process and subjective bad faith in filing the petition

are found." *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997); *see also*
*In re Gen. Growth Props.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (following the standard
articulated in *Kingston Square Assocs.*); *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837,
848 (E.D.N.Y. 1995).  A finding of bad faith "requires a full examination of all the
circumstances of the case; it is a highly factual determination but also one that may sweep
broadly." *C-TC 9th Ave. P'ship*, 113 F.3d at 1312.

Once the movant has established the existence of both subjective bad faith and objective
futility, "a rebuttable presumption of bad faith arises and the burden shifts to the debtor 'to
establish good and sufficient reasons why the relief should not be granted.'" *Squires Motel, LLC
v. Gance (In re Squires Motel, LLC)*, 426 B.R. 29, 34 (N.D.N.Y. 2010) (quoting *In re Yukon
Enters., Inc.*, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984)).  This essentially means that the debtor
must demonstrate the existence of "unusual circumstances" that establish that "dismissal is not in
the best interests of creditors and the estate."  11 U.S.C. § 1112(b)(1)–(2); *see also Squires
Motel*, 39 B.R. at 921.

The Second Circuit in *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311, identified eight
factors that were indicative of a bad faith filing:

(1) The debtor has only one asset;

(2) The debtor has few unsecured creditors whose claims are small in relation to those of
secured creditors;

(3) The debtor's one asset is the subject of a foreclosure action as a result of arrearages or
default on the debt;

(4) The debtor's financial condition is, in essence, a two party dispute between the debtor
and secured creditors which could be resolved in [a] pending state foreclosure action;

(5) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate
efforts of the debtor's secured creditors to enforce their rights;

(6) The debtor has little or no cash flow;

(7) The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

(8) The debtor has no employees.

*Id.* (citing *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky. 1992)); *see also In re Project Orange Assocs.*, 432 B.R. 89, 113 (Bankr. S.D.N.Y. 2010) (applying the *C-TC 9th Ave. P'ship* factors).

The Debtor's filing is possibly indicative of bad faith based on the application of the *C-TC 9th Ave. P'ship* factors. Additionally, based on the reasons previously discussed in the context of the Debtor's unlikelihood of rehabilitation, the Debtor's case is objectively futile. However, since a determination of subjective bad faith is necessarily a fact-intensive inquiry, the Court cannot find that the Petition was filed in bad faith unless and until disputed factual issues are resolved. As with the issue of authority to file the Petition, the Court concludes that it is unnecessary to resolve the bad faith issue as the relief ordered is warranted whether or not the filing was made in bad faith.

### E. Subsequent Dismissal, As Opposed to Conversion, Is Warranted

It is within the Court's discretion to convert *or* dismiss a chapter 11 case, provided the best interests of the creditors and the estate are served. *In re Acme Cake Co., Inc.*, No. 08-41965 (CEC), 2010 WL 4103761, at *2 (Bankr. E.D.N.Y. Oct. 18, 2010). In this case, dismissal clearly is in the best interests of creditors and the estate because the Property is not freely marketable. With such restrictions on alienation in place, a chapter 7 trustee would have very little (if anything) to distribute to creditors. Conversion would merely increase administrative costs with little attendant benefit to the estate and creditors. The U.S. Trustee appeared at the Hearing and supported dismissal of the case. In light of the disposition of the Motion, there is also no reason to continue mediation of this case.

# CONCLUSION

For the reasons discussed above, the Court grants the City's motion to vacate the automatic stay and to withdraw the case from mediation.  A foreclosure sale of the Property will have no adverse effect on the tenants, at least so long as they are paying their rent.  Throughout the foreclosure process, and subsequent conveyance of the Property to a new sponsor, the tenants are allowed to stay in their apartments at the same rent stabilized rates.  As mentioned above, the Court will hold an order dismissing the case in abeyance for ninety days, unless the foreclosure sale has not yet been completed and the City requests an extension of time, or the City notifies the Court that a foreclosure sale has been completed sooner.

A separate order will be entered lifting the automatic stay to permit the City to proceed with a foreclosure sale of the property and withdrawing the case from mediation.  The City should submit a proposed order dismissing the case when a foreclosure sale has been completed.

Dated: New York, New York
August 25, 2011

                                                    /s/Martin Glenn
                                                    MARTIN GLENN
                                              United States Bankruptcy Judge

**2**

ny-1048310

Westlaw.

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re MOTORS LIQUIDATION COMPANY, et al.,
Debtors.
Walter J. Lawrence, Appellant,
v.
Motors Liquidation Company, Appellee.

Nos. 09–50026 (REG), 10 Civ. 36(RJH).
Nov. 17, 2010.

### *MEMORANDUM OPINION AND ORDER*

RICHARD J. HOLWELL, District Judge.

**\*1** Appellant Walter J. Lawrence, appearing *pro se,* appeals from a judgment of the United States Bankruptcy Court for the Southern District of New York denying his motion for relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code. Appellant seeks relief to proceed with an action he filed against General Motors ("GM"), the predecessor in interest to Appellee Motors Liquidation Company ("MLC"). Appellant contends that the Bankruptcy Court lacked subject matter jurisdiction over his motion and that the Bankruptcy Court erred in denying him relief. For the reasons stated below, the Court finds that the Bankruptcy Court had jurisdiction to consider Appellant's motion to lift the stay and did not abuse its discretion in denying that motion.[FN1]

> **FN1.** On September 21, 2010, Appellant also filed a "Motion for the Court to Rule on Appellant's Pending Appeal from the United States Bankruptcy Court." (Docket No. 8.) The Court's disposition of Appellant's appeal in this order vitiates Appellant's motion, and that motion is hereby dismissed as moot.

### BACKGROUND

The following facts are taken from Appellant's motion for relief from the automatic stay filed in the bankruptcy court. *See In re Motors Liquidation Co.,* Ch. 11 Case No. 09–50026 (Bankr.S.D.N.Y.)

(Docket No. 4202) ("App.Mot."). Appellant was an employee of GM until he retired on March 1, 1993. (*See* App. Mot. at 2–3.) As such, Appellant was a beneficiary of the General Motors Hourly–Rate Employees Pension Plan ("the Pension Plan") which was governed by the General Motors/United Auto Workers Pension Plan Agreement ("the Agreement"). (*See* App. Mot. at 2–3.)

On May 14, 2007, the Pension Plan wrote to Appellant informing him that Appellant had received $32,985.00 in overpayments and that Appellant was required to remit such overpayments to the Pension Plan. (*See* App. Mot. at 24.) The Pension Plan sent Appellant a second notice in September 2007, but Appellant refused to remit the overpayments. The Pension Plan then began reducing Appellant's ongoing payments to satisfy the outstanding overpayments. (*See* App. Mot. at 24–25.)

Appellant brought suit against the Pension Plan and GM in the United States District Court for the Middle District of Florida on October 9, 2007 alleging that GM and the Pension Plan had violated the Employee Retirement Income Security Act ("ERISA") by wrongfully reducing his pension payments and diverting some of those payments to the IRS to satisfy a tax levy against Appellant. (*See Walter J. Lawrence v. General Motors Hourly–Rate Employee Pension Plan,* 5:07–CV–408 OC (M.D.Fla.) (Docket No. 1) ("the ERISA suit").) Appellant amended his complaint in February 2008 and the parties subsequently filed cross motions for summary judgment, which remain pending. (*See* App. Br. at 11; App. Mot. at 25–26, 31.)[FN2]

> **FN2.** Appellant also seems to have filed a series of other motions in his ERISA suit, including motions to strike affirmative defenses, various discovery motions, and a motion for recusal. (*See* App. Mot. at 31–33.) Thereafter, the United States District Court for the Middle District of Florida entered an order enjoining Appellant from filing any other documents with that court pending disposition of the parties' motions for summary judgment. (*See* App. Mot. at 33 .)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

On June 1, 2009, MLC—an entity formed in conjunction with the United States Treasury to reorganize GM—filed a Title 11 bankruptcy petition in the bankruptcy court in this district. Pursuant to 11 U .S.C. § 362(a), the bankruptcy petition triggered the so-called "automatic stay" of all pre-petition litigation against GM which, in MLC's case, included the ERISA suit. Appellant filed a motion in the bankruptcy court for this district seeking relief from the automatic stay to allow the ERISA suit to proceed. (*See* App. Mot .; App. Br. at 7.) In an opinion from the bench after a hearing on November 6, 2009, Bankruptcy Judge Gerber denied Appellant's motion and later entered an order to that effect on November 24, 2009. (*See id.; see also* Tr. of Hr'g, Nov. 6, 2009, *In re Motors Liquidation Co.,* 09–50026 (Bank.S.D.N.Y.) (Docket No. 4416) ("Hr'g Tr.").) On December 3, 2009, Appellant filed a notice of appeal of that order to this court.

**STANDARD OF REVIEW**

**\*2** "Pursuant to Bankruptcy Rule 8013, a District Court reviews a bankruptcy court's conclusions of law de novo and reviews findings of fact for clear error." *In re Cavalry Const., Inc.,* 428 B.R. 25, 29 (S.D.N.Y.2010); *see also In re Bayshore Wire Prods. Corp.,* 209 F.3d 100, 103 (2d Cir.2000) ( "Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, [and] its conclusions of law de novo ...." (internal citations omitted). A district court reviews a bankruptcy court's denial of a motion for relief from the automatic stay for abuse of discretion. *See In re Dairy Mart Convenience Stores, Inc.,* 351 F.3d 86, 91 (2d Cir.2003) ("The decision to lift an automatic stay is left to the discretion of the bankruptcy court...."); *In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1286 (2d Cir.1990). In such a review, the district court considers not whether it would have made the same decision, but only whether the decision was reasonable. *See In re Jamesway Corp.,* 179 B.R. 33, 39 (S.D.N.Y.1995).

**DISCUSSION**

**A. Subject Matter Jurisdiction**

Despite having moved the bankruptcy court to grant relief from the automatic stay, Appellant now contends that the bankruptcy court did not have jurisdiction over that motion. Appellant argues that, because the terms of the Agreement prohibited GM from transferring beneficial interests in the Pension

Plan, the pension benefits at issue in the ERISA suit are not part of the bankruptcy estate.

Appellant's arguments are misplaced. Section 1334 of title 28 of the United States Code provides that the federal "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Under 28 U.S.C. § 157(a), a "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). "In this district, by standing order under 28 U.S.C. § 157(a), the district court refers all cases 'arising under,' 'arising in,' or 'related to' Title 11 proceedings to the bankruptcy court." *In re 131 Liquidating Corp.,* 222 B.R. 209, 211 (S.D.N.Y.1998) (citing Order of Acting Chief Judge Robert J. Ward, July 10, 1984). Accordingly, the bankruptcy court had jurisdiction if Appellant's motion concerned a proceeding "arising under title 11, or arising in or related to cases under title 11."

Appellant's motion was plainly a proceeding "arising under title 11." Not only does the provision governing the automatic stay from which Appellant seeks relief appear in 11 U.S.C. § 362, but Title 11 also defines "motions to terminate, annul, or modify the automatic stay" as "core proceedings" which reside "at the heart of federal bankruptcy power." *Norkin v. DLA Piper Rudnick Gray Cary, LLP,* No. 05 Civ. 9137, 2006 WL 839079, at \*3 (S.D.N.Y. Mar. 31, 2006). Accordingly, courts in this Circuit have consistently held that bankruptcy courts have jurisdiction over motions for relief from the automatic stay. *See, e.g., Contemporary Mortg. Bankers, Inc. v. High Peaks Base Camp, Inc.,* 156 B.R. 890, 891 n. 2 (N.D.N.Y.1993) ("A motion to terminate, annul, or modify the automatic stay is a core proceeding within the meaning of 28 U.S.C. § 157(2)(G) and is, therefore, a proceeding properly referred to a bankruptcy judge under 28 U.S.C. § 157."); *In re Gibson & Cushman Dredging Corp.,* 100 B.R. 634, 637 (E.D.N.Y.1989) ("[A] motion to modify the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G). As such, the Bankruptcy Court was empowered to enter judgment on that branch of the motion.") The same was true of the bankruptcy court here.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

**B. Relief from the Automatic Stay**

**\*3** Motions for relief from the automatic stay are governed by 11 U.S .C. § 362(d), which provides in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (1) for cause, including the lack of adequate protec- tion of an interest in property of such party in in- terest;

> (2) with respect to a stay of an act against property under subsection (a) of this section, if—

> (A) the debtor does not have an equity in such property; and

> (B) such property is not necessary to an effective reorganization;

>    11 U.S.C. § 362(d).

Apparently challenging the substance of the bankruptcy court's denial of relief, Appellant argues that he "met his burden of proof under 11 U.S.C. § 362 ... because Debtor has no equity in the property that is excluded from the estate as a result of debtor's agreement with the UAW to include within the term of the GM/UAW ERISA and IRC supplemental pen- sion plan the anti-alienation and anti-assignment clause." (App. Br. at 2.) That is, Appellant appears to argue that the provisions of the Agreement prohibit- ing GM from transferring beneficial interests in the Pension Plan deprived MLC of any equity in the property for purposes of Section 362(d)(2).

This argument is directed at the wrong section of Section 362. "The legislative history makes clear that § 362(d)(2) is aimed at protecting a creditor's right to foreclose, *not* a creditor's right to pursue any form of litigation against the debtor in another court." *In re Northwest Airlines Corp.,* No. 05–17930, 2006 WL 2583647, at \*3 n. 2 (Bankr.S.D.N.Y. Aug. 28, 2006) (emphasis added); *see also* S.Rep. No. 95–589, at 5 (1978) ("In cases where the single asset of the debtor is *real property,* the court shall grant relief from the

stay if the debtor has no equity in the collateral, thereby allowing the creditor to proceed with his foreclosure.") (emphasis added). Since Appellant's ERISA action is not an action to enforce a secured interest in real property, Section 362(d)(2) does not apply and his motion for relief from the stay can only be granted for "cause" under Section 362(d)(1). *See Sonnax,* 907 F.2d at 1285 ("Because the instant case concerns a stay of a judicial proceeding, only Section 362(d)(1) is applicable.")

In considering whether "cause" exists to grant re- lief from an automatic stay under Section 362(d)(1), courts in this Circuit apply a multifactor test pursuant to the Second Circuit's decision in *In re Sonnax In- dustries, Inc., 907 F.2d 1280 (2d Cir.1990).* In *Son- nax,* the Second Circuit identified twelve factors relevant to a "cause" determination:

> (1) whether relief would result in a partial or com- plete resolution of the issues; (2) lack of any con- nection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tri- bunal with the necessary expertise has been estab- lished to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily in- volves third parties; (7) whether litigation in an- other forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subor- dination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial econ- omy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

**\*4** *Id.* at 1286. The bankruptcy court here con- cluded that the *Sonnax* factors weighed strongly against granting Appellant relief from the automatic stay. That decision was not an abuse of discretion.

Focusing on the second, seventh, and twelfth *Sonnax* factors, the bankruptcy court found that the *Sonnax* factors weighed against relief because, re- gardless of whether beneficial interests in the Pension Plan were property of the MLC estate, allowing Ap- pellant to proceed with the ERISA suit would force

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

MLC to expend estate resources to defend that action. Hence the bankruptcy court found that relief "would prejudice the interests of other creditors" and that there was no "lack of any connection with or interference with the bankruptcy case." (*See* Hr'g Tr. at 39:25–41:3.) By the same token, in assessing the "impact of the stay on the parties and the balance of harms," the bankruptcy court noted that denying Appellant relief would conserve the resources of the MLC estate without prejudicing Appellant because the ERISA suit against MLC could and would be adjudicated as part of the claims allowance process under Title 11. (*See* Hr'g Tr. at 41:4–42:4.) Far from an abuse of discretion, that reasoning accorded with the general rule that, "[ **g]enerally, unsecured claims should not be granted relief from the stay because to do so would result in a violation of one of the fundamental concepts of bankruptcy law**[:] **that there should be an equality of distribution among creditors. An unsecured claimant should not be entitled to obtain a distributive advantage over other unsecured claimants who are similarly enjoined from seeking distribution by any method other than in accordance with the distributive scheme under the Bankruptcy Code.**" ***In re Leibowitz*, 147 B.R. 341, 345 ( Bankr.S.D.N.Y. 1992)**.

The bankruptcy court also found that the first *Sonnax* factor, "whether relief would result in a partial or complete resolution of the issues", weighed against relief because allowing the ERISA suit to proceed would merely enable the United States District Court for the Middle District of Florida to resolve the pending cross motions for summary judgment. (Hr'g Tr. at 42:5–19.) The outcome of those motions is at best uncertain, and it seems unlikely that the Florida court will grant a *plaintiff's* motion for summary judgment. *Cf. Norden v. Samper,* 503 F.Supp.2d 130, 136 (D.D.C.2007) ("This is that rare case in which a plaintiff wins on summary judgment."). Hence the bankruptcy court reasonably found that granting Appellant relief from the stay would more likely expose MLC to protracted litigation rather than speedily resolve the ERISA suit.

For much the same reason, the bankruptcy court found that the parties were not ready for trial in the ERISA action and that the eleventh *Sonnax* factor weighed against relief. (*See* Hr'g Tr. at 46:19–23.) That analysis, too, was far from an abuse of discre-

tion. Appellant contends that he has completed discovery and that the "the district judge is right on the doorstep of resolving this case" (Hr'g Tr. at 25:7–8), but the dispositive motions filed in the ERISA suit were pending for over a year before the automatic stay came into effect, hardly an indication that the case was ready for trial.

**\*5** The bankruptcy court also found that the United States District Court for the Middle District of Florida was not a "specialized tribunal" with any unique expertise in adjudicating ERISA actions. (*See* Hr'g Tr. at 43:9–14.) That decision was more than reasonable, for this Court has found bankruptcy courts well-equipped to adjudicate statutory actions involving employee benefits. *See, e.g., See* In re Bally Total Fitness of Greater New York, Inc., 411 B.R. 142, 147l–148 (S.D.N.Y.2009) (finding no need for a specialized tribunal in wage and hour class action). *Cf. In re White Motor Corp.,* 42 B.R. 693, 705–706 (N.D.Ohio 1984) (finding no need for bankruptcy court to withdraw under Section 157 from suit involving ERISA and tax issues).

In addition, the bankruptcy court found that the presence of the Pension Plan as a defendant in Appellant's ERISA suit weighed against relief because the automatic stay would not apply to a suit against the Pension Plan alone. (Hr'g Tr. at 43:22–44:13.) *Cf. Buchanan v. Golden Castin Corp. Hourly Health Benefit Plan,* No. No. 4:03–CV–151, 2003 WL 22951936, at \*3 (S.D.Ind. Oct. 10, 2003) (holding that "a stay of claims against the employer does not stay claims against the employee benefit plan") (citing *Brengettys v. LTV Steel Hourly Pension Plan,* 241 F.3d 609, 609 n. 1 (7th Cir.2001)). Accordingly, Appellant could vitiate the effect of the automatic stay by severing the ERISA suit into two actions, one against the Pension Plan alone in the Middle District of Florida and another against MLC in the bankruptcy court. The fact that Appellant has the power to move his ERISA suit forward weighs strongly in favor of denying him relief.

Finally, the bankruptcy court found that "the interests of judicial economy and the expeditious and economical resolution of litigation" weighed against relief because allowing Appellant to proceed with his classic pre-petition action would open the "floodgates" to thousands of other litigants with garden variety claims against the MLC estate. (*See* Hr'g Tr.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

at 44:20–45:10.) That would usher in the very state of affairs the automatic stay was enacted to prevent. *See* In re Ionosphere Clubs, Inc., 922 F .2d 984, 989 (2d Cir.1990) ("[T]he automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.").

In making these findings, the bankruptcy court clearly did not abuse its discretion. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." S.Rep. No. 95–989, at 54–55 (1978). The only reason related to the *Sonnax* factors that Appellant has advanced as to why MLC should be stripped of the fundamental debtor protection embodied in the stay is that doing so would prevent the bankruptcy court from being "further burdened by more motions for pro hac vice attorneys to come in here and try to hear issues ... that have already been heard by the district court judge in Ocala, Florida...." (Hr'g Tr. at 23:9–24:13.) However, the minimal benefit, if any, of freeing the bankruptcy court of such routine motions is dwarfed by the burden on MLC of defending the ERISA suit outside the established claims process. Under *Sonnax,* that conclusion strongly militates against relief, particularly where Appellant could vitiate any burden to any party by severing his suit. In reaching the same conclusion, the bankruptcy court did not abuse its discretion.

### CONCLUSION

**\*6** For the foregoing reasons, the bankruptcy court's denial of Appellant's motion for relief from the automatic stay is AFFIRMED, Appellant's appeal [1] is DISMISSED, and Appellant's motion [8] to decide this appeal is DISMISSED as moot. The Clerk is directed to close this case.

SO ORDERED.

S.D.N.Y.,2010.
In re Motors Liquidation Co.
Not Reported in F.Supp.2d, 2010 WL 4966018

(S.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**3**

Westlaw.

Not Reported in B.R., 2006 WL 687163 (Bkrtcy.S.D.N.Y.), 46 Bankr.Ct.Dec. 39
**(Cite as: 2006 WL 687163 (Bkrtcy.S.D.N.Y.))**

H

United States Bankruptcy Court,
S.D. New York.
In re: NORTHWEST AIRLINES CORPORATION,
et al., Debtors.

No. 05–17930 (ALG).
March 10, 2006.

Cadwalader, Wickersham & Taft LLP, By: Bruce R. Zirinsky, Gregory M. Petrick, Nathan A. Haynes, New York, New York, for the Debtors.

Kozyak Tropin & Throckmorton, P.A., By: John W. Kozyak, Coral Gables, Florida, for the Movants.

MEMORANDUM OF OPINION AND ORDER DENYING MOTION FOR RELIEF FROM STAY
GROPPER, Bankruptcy J.

**\*1** Before the Court is a motion (the "Motion") by class action plaintiffs (the "Movants") seeking relief from the automatic stay to allow the Movants to pursue an antitrust class action in the United States District Court for the Eastern District of Michigan (the "District Court"), consolidated under the caption *In re Northwest Airlines Corp. et al. Antitrust Litigation,* Case No. 96–74711 (the "Antitrust Action"), against certain of the debtors in these Chapter 11 cases (the "Debtors").

The Antitrust Action was filed in 1996 against the Debtors and other airlines and complains of practices that allegedly prohibit or discourage "hidden city ticketing." In the Antitrust Action, the Movants seek to obtain a judgment for more than $1 billion in damages and to enjoin the Debtors from continuing allegedly anticompetitive business practices. For the reasons set forth below, the Movants have not demonstrated cause for obtaining relief from the automatic stay and the Motion is denied.

Discussion

The automatic stay imposed by § 362 of the Bankruptcy Code is a key provision of the Code designed to permit a Chapter 11 debtor to concentrate on rehabilitating its business without interference by actions of creditors or litigation that would hinder the reorganization process. *Eastern Refractories Co. v. Forty Eight Insulations, Inc.,* 157 F.3d 169, 172 (2d Cir.1998); *Teachers Ins. & Annuity Ass'n. of Am. V. Butler,* 803 F.2d 61, 64 (2d Cir.1986); *Fid. Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 53 (2d Cir.1976); *CAE Indus. Ltd. v. Aerospace Holdings Co.,* 116 B.R. 31, 32 (S.D.N.Y.1990). A party seeking to lift the automatic stay to pursue litigation in another court must make a threshold showing of "cause" under § 362(d)(1) of the Bankruptcy Code. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1285 (2d Cir.1990); *In re New York Med. Grp., P.C.,* 265 B.R. 408, 413 (Bankr.S.D.N.Y.2001) . [FN1] In determining whether cause exists to lift the automatic stay to allow litigation to proceed in another tribunal, courts consider a number of factors enumerated by the Second Circuit in *In re Sonnax:*

FN1. An alternative ground for lifting the stay, that the debtor has no equity in the property at issue and the property is not needed for an effective reorganization, is not relevant. 11 U.S.C. § 362(d)(2).

(1) whether relief would result in a partial or complete resolution of the issue;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interest of the creditors;

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2006 WL 687163 (Bkrtcy.S.D.N.Y.), 46 Bankr.Ct.Dec. 39
**(Cite as: 2006 WL 687163 (Bkrtcy.S.D.N.Y.))**

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether the movant's success in the other proceeding would result in a judicial lien avoidance action by the debtor;

**\*2** (10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*In re Sonnax,* 907 F.2d at 1286). "Not all of these factors will be relevant in every case," *Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 143 (2d Cir.1999), and a court need not give equal weight to each factor. *In re Burger Boys, Inc.,* 183 B .R. 682, 688 (S.D.N.Y.1994). As discussed below, the relevant *Sonnax* factors weigh against lifting the automatic stay to allow the Antitrust Action to go forward.

The critical factors that require denial of the Motion are the fact that prosecution of the Antitrust Action at this time would unduly interfere with the Debtors' bankruptcy proceedings (factor 2), that litigation would prejudice the interests of other creditors (factor 7), and that the balance of the harms favors denial of the Motion (factor 12). The Debtors are at a critical stage of their reorganization proceedings. They have just completed protracted and contested trials related to their labor costs and settlements have not been finalized. They thereafter have to proceed to the vital issues of plan financing and plan formulation. The Movants have indicated that they intend to call as witnesses the Debtors' CEO and other senior executives, all of whom are heavily involved in restructuring the Debtors' business operations and cannot afford to devote time and energy to preparing for and participating in a trial on the Antitrust Action. The Debtors have made a clear showing that they are dealing with complex and pressing bankruptcy issues and that a lifting of the stay would interfere with their efforts to reorganize at this critical stage in these Chapter 11 cases.

Turning to other factors, the possible readiness of the Antitrust Action for trial (factor 11) would ordinarily militate in favor of relief from the stay. Under the circumstances of this case, however, readiness for trial actually weighs against lifting the stay because proceeding to trial on the Antitrust Action would require the immediate attention of members of the Debtors' top management to defend a billion-dollar lawsuit.

Furthermore, as this Court has previously recognized in these bankruptcy proceedings, lifting the automatic stay with respect to cases such as the Antitrust Action would open the floodgates for similar motions and cause the Debtors to refocus their energies on litigation before other courts rather than emergence from Chapter 11. See *In re Northwest Airlines et al.,* No. 05–17930(ALG) (Bankr.S.D.N.Y. Jan. 12, 2006) ("Gladstone"). In comparison, the Movants have not shown any unusual prejudice by a continuance of the stay. The Movants argue that the public interest is involved in that they seek an injunction as well as treble damages, but there is no issue of public health or safety and no indication that the Movants' claims must be resolved before the Debtors can file a feasible plan. The impact of the stay and a balancing of the equities weigh strongly in favor of denial of the Motion.

Conclusion

**\*3** For the reasons set forth above, the Motion is denied. IT IS SO ORDERED.

Bkrtcy.S.D.N.Y.,2006.
In re Northwest Airlines Corp.
Not Reported in B.R., 2006 WL 687163 (Bkrtcy.S.D.N.Y.), 46 Bankr.Ct.Dec. 39

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**4**

FILED: June 20, 2012

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 10-2295
(4:09-cv-00181-D)
_____

REX T. GILBERT, JR.; DANIELA L. GILBERT,

       Plaintiffs – Appellants,

  v.

RESIDENTIAL FUNDING LLC; GMAC MORTGAGE LLC; DEUTSCHE
BANK TRUST COMPANY AMERICAS, as Trustee for Residential Accredit
Loans, Incorporated,

       Defendants – Appellees,

 and

DAVID A. SIMPSON, Substitute Trustee,

       Trustee.

_____

O R D E R
_____

Upon consideration of appellees' petition for rehearing and rehearing en banc,

we deny the petition as to appellees Deutsche Bank Trust Company Americas, as

Trustee for Residential Accredit Loans, Inc., and David Simpson, Substitute Trustee.
Consideration of the petition as to appellees Residential Funding LLC and GMAC
Mortgage LLC, however, is stayed pursuant to 11 U.S.C. § 362.  Therefore, the Clerk
shall issue the mandate as to appellees Deutsche Bank Trust Company Americas, as
Trustee for Residential Accredit Loans, Inc., and David Simpson, Substitute Trustee,
but stay the mandate as to appellees Residential Funding LLC and GMAC Mortgage
LLC.

Inasmuch as Bank of America has presented no compelling reason for the
untimely filing of its motion for leave to file an amicus curiae brief in support of
appellees' petition, and we have earlier made clear that an untimely submission such as
this is disfavored, LaRue v. DeWolff, Boberg & Assocs., Inc., 458 F.3d 359 (4th Cir.
2006), Bank of America's motion is denied.

Entered at the direction of Judge Floyd with the concurrence of Chief Judge
Traxler and Judge Childs.  No poll on the petition for rehearing en banc was requested.

For the Court

/s/ Patricia S. Connor, Clerk

**5**

# COURT OF COMMON PLEAS

# MONTGOMERY COUNTY, PA

OFFICE OF THE
PROTHONOTARY
MONTGOMERY COUNTY, PA

10 APR 28 PM 2: 09

Court of Common Pleas
Civil Division

Term # 09-25338

Montgomery County

GMAC Mortgage, LLC
1100 Virginia Dr,
P.O. Box 8300
Fort Washington, Pa 19034

Jamie McGinness, Esq
Phelan, Holliman & Schmieg,LLP
One Penn Center
Philadelphia, Pa 19103
215-563-7000

Fleischer, Fleischer & Suglia
Brian Fleischer, Esquire
Plaza 100 at Main St
Voorhees, N.J. 08053

Council for Plaintiff/ GMAC

LBA Financial Group, LLC
970 Loucks Rd
York, Pa. 17404

Eagle Nationwide Mortgage Company
789 East Lancaster Ave, suite #201
Villanova, Pa 19085

And Does

Plaintiff
v.
Kenneth J Taggart, Pro Se
45 Heron Rd
Holland, Pa 18966

Defendant

---

**3rd Amended Counter Claim against GMAC Mortgage, LLC, LBA Financial
Group, LLC, Eagle Nationwide Mortgage Company, et al    4/28/10**

---

*1*

This 3rd amended counter claim is being filed in compliance with Rule

1028 (c )(1) of the Pa Code. Kenneth J Taggart requests the court accept this

amended complaint to confirm the evidence and pleading.

This amended complaint in response to Eagle Nationwide Mortgage

Company's preliminary objections is considered timely;  Eagle Nationwide

Mortgage Company alleges to have served Kenneth J Taggart via first class

U.S. Mail on: March 29,2010, however the envelope received by Kenneth J

Taggart has no post mark whatsoever on it.  It appears that it was never

mailed through the U.S. Postal Service; A photo copy is attached. The

preliminary objections appeared in Kenneth J Taggart's mailbox on

April 9,2010; This was apparently placed in Kenneth J Taggart' s mail box

on April 9,2010 in violation of postal regulation that required only the

postal service to place mail that has been sent through the post office in a

residential mail box.

### Summary of Case

This is a Counter Claim filed by Kenneth J Taggart, Defendant, in regard

to the complaint for foreclosure action on the mortgage for the property located

at 521 Cowpath Rd; Telford, Pa .18966, Montgomery County, Pennsylvania.

The Defendant, Kenneth J Taggart in this case was served a complaint for a

mortgage foreclosure by the Bucks County Sheriff on August 24,2009. The

Defendant in this action, Kenneth J Taggart, is filing action  against GMAC

Mortgage LLC, Plaintiff and any "Does" to be disclosed, LLC  for violations of several laws in the servicing and origination of the loan in question on the subject property.

Defendant, Kenneth J Taggart, applied for a mortgage on or about May or June 2008 with Eagle Nationwide Mortgage (hereinafter called Eagle). Eagle then brokered the loan to LBA Financial Group, LLC (herein after called LBA). LBA shortly thereafter sold the loan to GMAC Mortgage, LLC ( hereinafter called GMAC). During the origination and closing of the loan, Eagle and LBA willfully and fraudulently violated, among other things, Federal Truth-in-Lending Laws (herein after know as TILA) and Real Estate Settlement & Procedures Act laws (herein after known as RESPA). Eagle and LBA willfully deceived and misled Kenneth J Taggart as to the true terms and cost of the loan by failing to provide TILA & RESPA disclosures required and charging undisclosed fees. Eagle and LBA, among other things charged at closing a processing fee of $175, an origination fee of $6,499, a discount fee of $8,245 and a commitment fee of $695. Eagle and LBA also failed to provide estimate of closing costs within 3 days of application, provide closing documents within 24 hours of closing, Did not provide proper Truth-In-Lending disclosure at closing that conformed to Regulation "Z" of TILA, and even changed the Annual Percentage Rate after closing of the loan. GMAC mortgage is liable for the origination and closing violations as a subsequent lender in the transaction.

GMAC violated , among other things, RESPA, Fair Credit Reporting Act (herein after known as FCRA)laws, Fair Debt Collection Practices Act ( herein

after known as FDCPA) during the servicing of the loan. GMAC violated the law

several times and did not resolve disputes by law. GMAC also illegally placed

"Forced Insurance" on Kenneth J Taggart in order to increase profits for the

company.

Kenneth J Taggart is entitled to relief from EAGLE, LBA, and GMAC as a

subsequent lender to the loan for the following willful violations of the law during

the origination and closing of the loan. Kenneth J Taggart has paid higher closing

Cost on the loan, paid a higher interest rate than disclosed, and has suffered,

among other things, severe emotional stress, defamation, and financial stress.

As a result, Kenneth J Taggart is entitled to compensatory damages suffered as

well as punitive damages, statutory damages, general damages, special

damages, treble damages, cost of suit, attorneys fees, rescission of the loan, as

well as any other relief the court deems just and proper.

Furthermore, Kenneth J Taggart is entitled to relief from GMAC for the

servicing violations during the servicing of the loan. GMAC , among other things,

charged late fees while in dispute, charged a higher escrow payment than

permitted by law, charged forced insurance when insurance was in place,

caused financial defamation by reporting inaccurate information to credit bureaus

as well as the government ( Housing and Urban Development - HUD).

As a result, Kenneth J Taggart is entitled to compensatory damages

suffered as well as punitive damages, statutory damages, general damages,

special damages, treble damages, cost of suit, attorneys fees, rescission of the

loan, as well as any other relief the court deems just and proper.

4

# JURISDICTION & VENUE

1) Jurisdiction and Venue is conferred as the property is located in

Montgomery County and all  transactions took place in Montgomery County and

Bucks County, State of Pennsylvania.

2) Defendant relies on Federal Statues and Pennsylvania State law

on which to base his claims ; The Real Estate Settlement & Procedures Act,

& The Consumer Protection Credit Act. 15 U.S.C. 1601,  The Federal Truth In

Lending Act & Regulation "Z", The Fair Credit Reporting Act, The Fair Debt

Collection Practices Act, - Pennsylvania State Law, The Pennsylvania Unfair

Trade, Practices and Consumer Protection, The Fair Credit Extension Uniformity

Act.
Act  15 U.S.C. 1601,  12 U.S.C.A. 2601, 12 U.S.C.A. 2603,12 U.S.C.A. 2604,

12 U.S.C.A. 2607,12 U.S.C.A. 2610.,12 U.S.C.A. 2603, 24 CFR 3500.14,

24 CFR 3500.6, 24 CFR 3500.7, CFR 3500.10, 12 CFR 226.20,

12 CFR 226.19(b), 12 CFR226.18, 12 CFR  226.18(g), 12 CFR 226.18(h),

12 CFR 226.31(c), 12 CFR 226.32(c), 15 U.S.C.1639(a),15 U.S.C.1639(b),

15 USC 1681, 12 USC 2605, 15 USC 1601,1692,1692-1622p.

UTPCPL 73 PS. 201-1 73 P.S.   201-9.2, 73 P.S. 2270.1

# PRELIMINARY ALLEGATIONS

3) At all times relevant herein,  Defendant, Kenneth J Taggart, is the

owner of a residential property whose address is ; 521 Cowpath Rd, Telford, Pa

18969

5

4) At times relevant herein, Defendant is informed and believe that the

all Plaintiffs, GMAC Mortgage, LLC, LBA Financial Group LLC and Eagle

Nationwide Mortgage Company are a Limited Liability Company, Corporation

or Limited Liability Partnership doing business in Montgomery County, State of

Pennsylvania.

5) At all times relevant herein, Defendant is informed and believes and

thereon alleges that the true names, and identities and capacities, whether

individual corporation, association, partnership or otherwise are at this time

unknown to Defendant who therefore sues said Plaintiff(s) by such fictitious

names and will so amend complaint to show the true names and capacities of

such Doe Defendant(s) when the same are ascertained.

6) At all times relevant herein, Plaintiff(s) are sued and were acting as

principal employer, and or agent, servant and employee of the said principal(s)

or employee(s), and all of the acts performed by them, or their agents, servants

And employees, were performed with the knowledge and under the control of

Said principal(s) or employer(s) and all such acts performed by such agents,

servants and/or employers, were performed within the course and scope of their

authority.

7) Plaintiff, GMAC Mortgage, LLC  shall  identify who or what companies

are " The Servicer ",which companies are the actual "Mortgage Company" , "The

Investor(s) and all parties who have an interest in any way to the subject loan".

Plaintiff, GMAC Mortgage, LLC, shall identify and amend the complaint to show

them as defendants in counterclaim and either accept service for the them

6

or allow the defendant time to amend and serve additional parties.

## Procedural History & Statement of Facts

8) About May or June 2008, defendant contacted a mortgage

company, Eagle Nationwide Mortgage Company to refinance a

property located at 521 Cowpath Rd, Telford, Pa 18969. Eagle

Nationwide Mortgage Company indicated that they would broker the

loan to LBA Financial Group. Inc. LBA Financial Group, LLC then

provided disclosures and terms of the loan and the loan closed on

July 11,2008.  LBA Financial Group, LLC (LBA) is the company who

Actually loaned the money to Kenneth J Taggart.


9)The loan was quickly sold to GMAC Mortgage, LLC (GMAC)

within a few weeks to 30 days. GMAC  owned the loan and GMAC

or it's affiliated company d/b/a GMAC  Mortgage has serviced the

loan since it was purchased from LBA Financial Group, LLC to the

best of defendants knowledge.

## Additional Statement of Facts & Recent Disputes

10)There have been several issues recently that have been in dispute

with Plaintiff, GMAC Mortgage by the Defendant, Kenneth J Taggart.

11) On January 11,2009 GMAC Mortgage sent a notification letter to

Defendant that  indicating that there is no insurance on the property and that

7

forced insurance coverage was being charged to the account. GMAC Mortgage,

Plaintiff obtained insurance with a premium amount of $7,261 per year

charged the escrow account.

12) This was an illegal and breach of contract by GMAC; GMAC is

the one who received the invoice and paid for the 1 year insurance policies on

8/1/08 and 9/1/09 for the property . Insurance information was also provided

again in November 2008 and faxed again in January 2009 by Defendant;

GMAC failed to document this. This was an absorbitant amount of money for

Insurance that was already paid for by GMAC out of Defendant's escrow account

that was not needed. To date, Defendant has not received  full audit of the

escrow account showing a full credit for this, even though it was disputed several

times and no response on the last request from June 29,2009.


13) On February 9, 2009 GMAC completed an escrow analysis (see

attached)  and would not remove forced insurance, even after Defendant

provided it again; The escrow letter stated that, "even if the shortage is paid in

full,  payment would be, $6,007 even though Defendant's taxes and insurance

were relatively the same or only a marginal difference . How did payment go up

over $400 a month even if paid in full. This is ambiguous and conflicting. This

was never disclosed in Truth-In-Lending documents.

14) Kenneth J Taggart, Defendant, then sent a qualified written request

dated April 24,2009 to GMAC Mortgage stating that the escrow portion of the

payment was in dispute. Kenneth J Taggart attempted to pay on-line the amount

not in dispute of $5,401.26 but the computer would not accept the payment or

Anything GMAC Mortgage considered less than full payment; This is in violation

of "RESPA - Section 6" of loan servicing. I also failed to receive

Acknowledgement of my qualified written request within 20 days as required by

RESPA Sec 6. Plaintiff , GMAC also failed to provide the name, phone number

and extension of a person who can resolve the problem.

15) On May 12,2009 GMAC Mortgage completed another escrow analysis

and concluded that the monthly payment was now only going to increase by

$209.00 month ($2,508.00 Yr), however insurance and taxes were close to the

same amount as the prior year or only a marginal increase. The letter returned

to Defendant also stated the wrong address as Defendant's address had

changed and GMAC had not  honored the request to change plaintiff's address.

GMAC  failed to update Defendants address change from the April 20,2009

letter requesting address change. Defendant did not receive the May 12,2009

escrow analysis until the beginning of June 2009.  Again, GMAC Mortgage

refused to accept any payments except what they deemed to be the right

payment. Furthermore, GMAC Mortgage kept charging Defendant late fees and

inspection fees while in dispute in violation of  RESPA -Sec 6. Plaintiff, GMAC

refused to remove any late fees or inspection fees charged while in dispute and

would not lower escrow payment or provide valid reason or proof for increase.

16) On May 28,2009 Kenneth J Taggart made a 2nd request for address

change. On June 9,2009 GMAC Mortgage finally acknowledged address change

by providing letter to Kenneth J Taggart.

17) On June 2,2009 GMAC sent a foreclosure notice to the wrong address and demanded payment in full with inspection fees and late fees charged while in dispute. Defendant made another attempt via the phone to speak to someone at GMAC who could remove illegally charged late fees and inspection fees from the account and Defendant would pay all payments that were due even though Defendant was still disputing the $209.00 month increase. GMAC Mortgage told Defendant on the phone they could not do this.

18) On June 29,2009 Defendant had sent another qualified written request indicating the escrow calculation was incorrect. GMAC never responded with a 20 day notification or acknowledgement of request. Defendant offered again in July 2009 to pay all payments up to date minus the late fees and inspection fees (while still in dispute) and they indicated there were now court costs or attorney fees added as well as late fees and inspections fees. GMAC indicated that they would only accept payment in full, including all costs they deemed appropriate, or offer a possible modification. Defendant called GMAC customer service in the beginning of August 2009 and customer service was going to contact supervisor or management and told Defendant to call back. When Defendant called GMAC Mortgage back, they could not do anything except as previously stated and then told Defendant to call their attorney (GMAC's attorney) as it was in their hands.

Plaintiff failed again to provide the name, phone number and extension of a person who can resolve the issue.

19) When Defendant contacted the GMAC Mortgage's attorney and

10

mentioned that GMAC was considering crediting inspection fees and late fees, they told me to call GMAC Mortgage. It went around and around from there until Kenneth J Taggart was served a Complaint for mortgage foreclosure on August 24,2009 from GMAC.

20)Defendant then retrieved and reviewed original mortgage documents and disclosures. The escrow agreement disclosure indicates that the escrow payments per month shall be $1,231.84. Less than one year later the payment Increased by $209 month; This was not disclosed in Truth-In-Lending documents (Taxes & insurance are relatively the same). It is apparent that this was not disclosed prior to or at settlement. Furthermore servicing of the loan was not disclosed properly in the mortgage servicing statement provided at settlement to Defendant.  It states that "We are able to service your loan" and We are not able to service your loan". It also does not disclose the "assign, sell or transfer disclosure properly on page #2.

21) It has also become apparent that the Plaintiff, LBA Financial provided two different Truth-In-Lending disclosures one on 7/10/08 with an APR or 7.091% and another on 7/14/08 with an APR of 7.092%: GMAC as a subsequent lender is responsible for the violation.

22) The original Mortgage company, LBA Financial Group, LLC did not extend rescission on 7/14/08 disclosure provided after closing, but did before disbursement. Disbursement was on 7/16/08 without LBA giving Kenneth J Taggart a three day rescission period. This is a Truth-In Lending/RESPA violation.

*ll*

23) The loan fees and escrow page provided by LBA & Eagle
also appear to have fees that were not disclosed prior to settlement. These are
TILA & RESPA violations. GMAC as a subsequent lender is responsible for the
violation. Eagle and LBA, among other things charged at closing a processing
fee of $175, an origination fee of $6,499, a discount fee of $8,245 and a
commitment fee of $695. Eagle and LBA also failed to provide estimate of
closing costs within 3 days of application,

24) During the dispute process GMAC Mortgage violated SEC 6 of
RESPA, "The Real Estate Settlement and Procedures Act", by not protecting the
credit rating of Kenneth J. Taggart while in dispute and charging inspection fees
while in dispute. GMAC also failed to provide the name and phone number of
someone who can help resolve my problem on several occasions. GMAC also
violated the "Fair Debt Collection Practices Act "(FDCP) and "The Fair Credit
Reporting Act" (FCRA). It has become apparent that RESPA was willfully
violated on several occasions; There are also violations of Sate law: The
Pennsylvania Unfair Trade Practice and Consumer Protection Act (UTPCPL).
GMAC also reported to The Department of Housing and Urban Development
Sometime prior to January 27, 2010 that Kenneth J Taggart was in default on his
Loan as a result of GMAC demanding higher payments than required regarding
escrow and late fees illegally charged.

25) GMAC has disregarded the law and has made no attempt to
resolve this and has shown no regard for consumer whatsoever.

12

26) Kenneth J Taggart requests that an injunction be issued against GMAC Mortgage to refrain from reporting and late payments, derogatory information or foreclosure information to the credit bureaus or any other party that would have need to use the payment history. This is currently causing "Defamation of Character" against Kenneth J Taggart.

27) By providing evidence of Truth-In-Lending & RESPA origination laws as well as RESPA Sec 6 servicing laws, Fair Debt Collection Practices and The Fair Credit Reporting Act, Kenneth J Taggart would like to motion to the court to Quiet title "dismiss all charges with prejudice" against Kenneth J Taggart. GMAC Mortgage filed an illegal foreclosure and should be dismissed.

28) Kenneth J Taggart would like to motion for the loan to be rescinded under violations of The Truth-In-Lending Act as well as the Real Estate Settlement and Procedures Act.

29) If the motion is not granted for any reason, a stay is requested for the foreclosure action on 521 Cowpath Rd; Telford, Pa 18969. The stay is requested until all litigation is been exhausted.

30) GMAC's foreclosure complaint should be "dismissed with prejudice" for lack of subject matter. GMAC refused to resolve simple escrow and payment issues. Furthermore, Truth-In-Lending and RESPA violations have also become Apparent and loan should be rescinded.

13

# FIRST CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELEIF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle &

GMAC as a subsequent lender, allege as follows:

31) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

32) Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, charged

undisclosed fees to Defendant. Plaintiff charged defendant unearned fees at

closing without prior disclosure. Eagle and LBA, among other things charged at

closing a processing fee of $175, an origination fee of $6,499, a discount fee of

$8,245 and a commitment fee of $695. Eagle and LBA also failed to provide

estimate of closing costs within 3 days of application,

33) Plaintiff's violated " The Real Estate Settlement and Procedures

Act" by not disclosing all fees and charges prior to settlement. RESPA 24 CFR

3500.14, 12 U.S.C. 2607

34) Plaintiff(s), and each of them, committed the acts herein alleged

maliciously, fraudulently, and oppressively, with reckless disregard of Defendants

rights. Conduct by the Plaintiff(s), and each of them, amounted to malice and

was carried out in a despicable, deliberate, cold, callous and intentional manor

thereby entitling Defendant to recover punitive damages from the Plaintiff(s) in

an amount according to proof.

35) Defendant is informed and believes that as a further result of

Plaintiff's conduct, defendant has suffered economic damages in the amount to

be proven at trial.

36)    Defendant is informed and believes and thereon alleges that as a result of the misrepresentations by the Plaintiff(s), Defendant has suffered Severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

# SECOND CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, allege as follows:

37) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein

38) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide all mortgage documents and HUD 1 statement at least 24 hours prior to settlement.

39) Plaintiff violated the " Real Estate Settlement and Procedures Act" RESPA 3500.10, 12 U.S.C. 2603

40)Plaintiff(s), and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff in an amount according to proof.

15

41) Defendant is informed and believes that as a further result of Plaintiff's conduct, defendant has suffered economic damages in the amount to be proven at trial.

42)    Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## THIRD CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, allege as follows:

43) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

44) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide all disclosures and estimate of closing costs 3 days after application. 24 CFR 3500.7

45) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender,  and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages

16

from the Plaintiff in an amount according to proof.

46) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

47)    Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), Defendant has suffered severe LBA, Eagle & GMAC as a subsequent lender, emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## FOURTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle & GMAC as a subsequent lender, allege as follows.

48) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

49) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to disclose the payment schedule per "Regulation Z " 12 C.R.F. 226.18(g) Creditors  must disclose the number, amounts, and timing of payments scheduled to repay the obligation. (Exhibit A5 & A6)

50) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the

17

Plaintiff, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

51) Defendant is informed and believes that as a further result of Plaintiff's,LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

52) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

# FIFTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, allege as follows

53) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

54) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to disclose the total payments, using that term, and a descriptive explanation such as " The amount you will have paid when you have made all scheduled

payments". 12 C.F.R. 226.18(h). The total payments & the sum of the payments disclosed 12 C. F. R. 226.18(g).

55) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s),LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

56) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

57) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## SIXTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(S),LBA, Eagle &
GMAC as a subsequent lender,  allege as follows

58) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

59) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to
provide proper disclosures under the " Home Owners equity Protection Act"
(HOEPA). The defendant(s) failed to deliver to the consumer special HOEPA
disclosure notice at least three days prior to closing of the loan. 15 U.S.C.
1639(b); 12 C.F.R. 226.31 (c)

60) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of
them, committed the acts herein alleged maliciously, fraudulently, and
oppressively, with reckless disregard of Defendants rights. Conduct by the
Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,
amounted to malice and was carried out in a despicable, deliberate, cold, callous
and intentional manor thereby entitling Defendant to recover punitive damages
from the Plaintiff (s), LBA, Eagle & GMAC as a subsequent lender, in an amount
according to proof.

61) Defendant is informed and believes that as a further result of
Plaintiff's,  LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

62)    Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## SEVENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle & GMAC as a subsequent lender,  allege as follows

63) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

64)  Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide proper disclosures under the " Home Owners equity Protection Act" (HOEPA). The defendant(s) failed to provide notice that " The consumer need not enter into the loan, and if he does enter the loan, he could loose his home and any money as put in it."  15 U.S.C. 1639(a); 12 C.F.R. 226.32(c)

65)Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s),LBA, Eagle & GMAC as a subsequent lender,  and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous

81

and intentional manor thereby entitling Defendant to recover punitive damages

from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount

according to proof.

66) Defendant is informed and believes that as a further result of

Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has

suffered economic damages in the amount to be proven at trial.

67)    Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a

subsequent lender, Defendant has suffered severe emotional distress in an

amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED


# EIGHTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle &

GMAC as a subsequent lender, allege as follows

68) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

69) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to

provide to Plaintiff HOEPA notices that include: an accurate statement of APR,

monthly payments, and a maximum payment amount on variable rate loans. 15

U.S.C. 1639 (a)(2); 12 C.F.R. 226.32(c)(2)-(4)

22

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide HOEPA disclosure to Plaintiff that must state the total amount borrowed. 12 C.F.R. 226.32(c)(3)-2.

70) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

71) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

72)    Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

23

# NINTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle &
GMAC as a subsequent lender, allege as follows

73) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

74)  Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to
disclose the loan term(s) throughout the loan when the rate or payment amount
is changed, including escrow payment RESPA Regulation "X" . 12 C.F.R. 226.20
(escrow disclosures attached - see Exhibits A4, A18-A23 and A35-A37)

75) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of
them, committed the acts herein alleged maliciously, fraudulently, and
oppressively, with reckless disregard of Defendants rights. Conduct by the
Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,
amounted to malice and was carried out in a despicable, deliberate, cold, callous
and intentional manor thereby entitling Defendant to recover punitive damages
from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount
according to proof.

76)  Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

77) Defendant is informed and believes and thereon alleges that as a
result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a

24

subsequent lender, Defendant has suffered severe emotional distress in an

amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## TENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(S),LBA, Eagle &

GMAC as a subsequent lender,  allege as follows

78) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

79) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to

provide proper disclosures under the " Home Owners equity Protection Act"

(HOEPA). The defendant(s) failed to deliver to the consumer special HOEPA

disclosure notice at least three days prior to closing of the loan. 15 U.S.C.

1639(b); 12 C.F.R. 226.31 (c)

80) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of

them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,

amounted to malice and was carried out in a despicable, deliberate, cold, callous

and intentional manor thereby entitling Defendant to recover punitive damages

from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount

according to proof.

25

81) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

82)    Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## ELEVENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle & GMAC as a subsequent lender,  allege as follows

83) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

84) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, ailed to provide and disclose all terms of the loan at the time of mortgage application in violation of "The Pennsylvania Unfair Trade Practices and Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1, 73 P.S. 201-9.2. Failed to disclose Interest Rate, Annual percentage Rate (APR), terms and escrow required.  APR changed After closing and escrow not correct. (see Exhibits A5, A6, A18 - A23, A35-A37)

85)  Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of

26

them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender,  and each of them,

amounted to malice and was carried out in a despicable, deliberate, cold, callous

and intentional manor thereby entitling Defendant to recover punitive damages

from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount

according to proof.

86)  Defendant is informed and believes that as a further result of

Plaintiff's, LBA, Eagle & GMAC as a subsequent lender,  conduct, defendant has

suffered economic damages in the amount to be proven at trial.

87) Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a

subsequent lender,  Defendant has suffered severe emotional distress in an

amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED


## TWELTH CLAIM FOR RELIEF


COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle &

GMAC as a subsequent lender, allege as follows

88) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.


27

89) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide and disclose all fees and cost of the loan at the time of mortgage application in violation of "The Pennsylvania Unfair Trade Practices and Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1, 73 P.S. 201-9.2. Failed to disclose all closing costs, total costs of the loan, and total payments per "Regulation Z". Total cost of loan was incorrect as tow APR's were provided at closing. ( see Exhibits

90) Plaintiff(s),LBA, Eagle & GMAC as a subsequent lender,  and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

91)  Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

92) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

28

## THIRTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle &

GMAC as a subsequent lender, allege as follows

93) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

94) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to

provide and disclosures all fees and cost of the loan at least 3 days prior to

closing of the loan.   "The Pennsylvania Unfair Trade Practices and Consumer

protection Law" ("UTPCPL"), 73 P.S. 201-1, 73 P.S. 201-9.2. Eagle and

LBA, among other things charged at closing a processing fee of $175, an

origination fee of $6,499, a discount fee of $8,245 and a commitment fee of

$695. Eagle and LBA also failed to provide estimate of closing costs within 3

days of application,

95) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of

them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff, and each of them, amounted to malice and was carried out in a

despicable, deliberate, cold, callous and intentional manor thereby entitling

Defendant to recover punitive damages from the Plaintiff(s),LBA, Eagle & GMAC

as a subsequent lender, in an amount according to proof.

29

96) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

97) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## FOURTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender,  allege as follows

98) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

99) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide closing documents and HUD 1 statement at least 24 hours prior to closing of the loan. "The Pennsylvania Unfair Trade Practices and Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1, 73 P.S. 201-9.2.

100) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the

30

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,
amounted to malice and was carried out in a despicable, deliberate, cold,
callous and intentional manor thereby entitling Defendant to recover punitive
damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in
an amount according to proof.

101) Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

102) Defendant is informed and believes and thereon alleges that as a
result of the misrepresentation of the Plaintiff,(s),LBA, Eagle & GMAC as a
subsequent lender, Defendant has suffered severe emotional distress in an
amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## FIFTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle &
GMAC as a subsequent lender, allege as follows

103) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

104) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, willfully

31

failed to disclose the payment schedule per "Creditors must disclose the number, amounts, and timing of payments scheduled to repay the obligation. A violation of TILA & RESPA Constitutes a violation of "The Pennsylvania Unfair Trade Practices and Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1,73 P.S. 201-9.2.

105) Plaintiff, LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

106) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

107) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

32

## SIXTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle &

GMAC as a subsequent lender, allege as follows

108) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

109)   Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to

disclose the total payments, using that term, and a descriptive explanation such

as " The amount you will have paid when you have made all scheduled

payments.  A violation of TILA & RESPA Constitutes a violation of

"The Pennsylvania Unfair Trade Practices and Consumer protection

Law" ("UTPCPL"), 73 P.S. 201-1,73 P.S. 201-9.2.

110) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of

them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,

amounted to malice and was carried out in a despicable, deliberate, cold, callous

and intentional manor thereby entitling  Defendant to recover punitive damages

from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount

according to proof.

111)  Defendant is informed and believes that as a further result of

Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has

suffered economic damages in the amount to be proven at trial.

33

112)    Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## SEVENTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, allege as follows

113) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

114)    Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide proper disclosures under the " Home Owners equity Protection Act" (HOEPA). The defendant(s) failed to deliver to the consumer special HOEPA disclosure notice at least three days prior to closing of the loan. . "The Pennsylvania Unfair Trade Practices and Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1,73 P.S. 201-9.2.

115) Plaintiff(s),LBA, Eagle & GMAC as a subsequent lender,  and each of them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff, and each of them, amounted to malice and was carried out in a

despicable, deliberate, cold, callous and intentional manor, thereby entitling

Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle &

GMAC as a subsequent lender, in an amount according to proof.

116)  Defendant is informed and believes that as a further result of

Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has

suffered economic damages in the amount to be proven at trial.

117)  Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a

subsequent lender, Defendant has suffered severe emotional distress in an

amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED


## EIGHTEENTH CLAIM FOR RELIEF


COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle &

GMAC as a subsequent lender, allege as follows

118)  Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

119)   Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to

35

provide proper disclosures under the " Home Owners equity Protection Act"

(HOEPA). The defendant(s) failed to provide notice that " The consumer need

not enter into the loan, and if he does enter the loan, he could loose his home

and any money as put in it." "The Pennsylvania Unfair Trade Practices and

Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1,73 P.S. 201-9.2

    120) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of

them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,

amounted to malice and was carried out in a despicable, deliberate, cold, callous

and intentional manor thereby entitling Defendant to recover punitive damages

from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount

according to proof.

    121)  Defendant is informed and believes that as a further result of

Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has

suffered economic damages in the amount to be proven at trial.

    122)   Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a

subsequent lender, Defendant has suffered severe emotional distress in an

amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

\

## NINETEENTH CLAIM FOR RELIEF

36

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(S) ,LBA, Eagle &

GMAC as a subsequent lender,  allege as follows

123)  Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

124)  Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to

disclose the loan term(s) throughout the loan when the rate or payment amount

is changed A violation of TILA & RESPA constitutes a violation of "The

Pennsylvania Unfair Trade Practices and Consumer protection  Law"

(UTPCPL"),  73 P.S. 201-1,73 P.S. 201-9.2.

125) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each

of them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,

amounted to malice and was carried out in a despicable, deliberate, cold, callous

and intentional manor thereby entitling Defendant to recover punitive damages

from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount

according to proof.

126)  Defendant is informed and believes that as a further result of

Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has

suffered economic damages in the amount to be proven at trial.

127)   Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff(s),LBA, Eagle & GMAC as a

37

subsequent lender,  Defendant has suffered severe emotional distress in an

amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED


# TWENTIETH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as

follows

    128)  Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

    129)   Defendant disputed the payment history, payments credited as well

as payment amount several times and plaintiff, GMAC, failed to follow the

procedure under " The Fair Credit Reporting Act".

    130)  Plaintiff, GMAC, failed to report to the Credit Bureaus that the loan

was in dispute, failed to make a consumer report disclosure, reported inaccurate

information to the credit bureaus, and damaged the character of the defendant.

    131)   4/09, 5/09,6/09,7/09,8/09 & 9/09  Plaintiff, GMAC,  failed

to report the account as "In Dispute" with the credit Bureaus.

    132).   4/09, 5/09,6/09,7/09,8/09 & 9/09  Plaintiff, GMAC, refused to credit

payments as required.

    133).  4/09, 5/09,6/09,7/09,8/09 & 9/09   Plaintiff , GMAC, reported

inaccurate and Derogatory information while in dispute in violation of "The Fair

Credit Reporting Act". 15 U.S.C. 1681

134) Plaintiff, GMAC, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff, GMAC, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff, GMAC, in an amount according to proof.

135) Defendant is informed and believes that as a further result of Plaintiff's, GMAC, conduct, defendant has suffered economic damages in the amount to be proven at trial.

136) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered Severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## TWENTY FIRST CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as follows

137) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

138) Defendant disputed the payment history, payments credited, as well as payment amount several times and Plaintiff, GMAC, failed to follow the

39

procedure under " Real Estate Settlement and Procedures Act".

Plaintiff , GMAC, failed to report to the Credit Bureaus that the loan was in

dispute, failed to make a consumer report disclosure, reported inaccurate

information to the credit bureaus, and damaged the character of the

Defendant.

139)    On 4/24/09 & 6/29/09 in writing as well as several times via the

phone, Plaintiff GMAC, failed to provide the name, person, and phone number

who can resolve the dispute.  Plaintiff, GMAC,  refused and failed to credit

payments as required.

140)    Plaintiff , GMAC, reported inaccurate and derogatory information

while in dispute in violation of Section six of "The Real Estate Settlement and

Procedures Act". 12 U.S.C. 2605.  Plaintiff failed  to protect the credit

rating of the Plaintiff, GMAC,  during the 60 day protection period while in dispute

4/09, 5/09,6/09,7/09,8/09 & 9/09 .

141) Plaintiff, GMAC,  committed the acts herein alleged maliciously,

fraudulently, and oppressively, with reckless disregard of Defendants rights.

conduct by the Plaintiff,  GMAC, amounted to malice and was carried out in a

despicable, deliberate, cold, callous and intentional manor thereby entitling

Defendant to recover punitive damages from the Plaintiff, GMAC,  in an amount

according to proof.

142)  Defendant is informed and believes that as a further result of

Plaintiff, GMAC's,  conduct, defendant has suffered economic damages in the

amount to be proven at trial.

143)    Defendant is informed and believes and thereon alleges that as a

40

result of the misrepresentation of the Plaintiff,  GMAC, Defendant has suffered

severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## TWENTY SECOND CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as

follows

144) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

145) Defendant disputed the payment history, payments credited as well

as payment amount several times and Plaintiff, GMAC, failed to follow the

procedure under " Fair Debt Collections Practices  Act". Plaintiff, GMAC,  failed

to report to the Credit Bureaus that the loan was in dispute, failed to make a

consumer report disclosure, reported inaccurate information to the credit

bureaus, and damaged the character of the Defendant.

146).   Plaintiff, GMAC,  failed on 4/09, 5/09,6/09,7/09,8/09 & 9/09

to report to credit bureaus "As Disputed". Section 807(f) 15 U.S.C. 1601,

15 U.S.C. 1692 ,1692-1622p

147).   Plaintiff, GMAC, on  failed to credit Defendant's payments

as required on 4/09, 5/09,6/09,7/09,8/09 & 9/09.

148).   Plaintiff, GMAC, on 4/09, 5/09,6/09,7/09,8/09 & 9/09 reported

*41*

inaccurate and derogatory information while in dispute in violation of "The Fair

Debt Collection Practices Act" Sec 809(b)Defendant(s) failed to protect the

credit rating of the Plaintiff, GMAC, without validating debt and while in dispute .

15 U.S.C. 1601, 15 U.S.C. 1692 1692-1622p

149) Plaintiff, GMAC, continued collection activity and reported

misinformation to credit bureaus even when debt was not validated. "Fair Debt

Collection Practices Act"809(b).

150) Plaintiff, GMAC, committed the acts herein alleged

maliciously, fraudulently, and oppressively, with reckless disregard of Defendants

rights. Conduct by the Plaintiff, GMAC, amounted to malice and

was carried out in a despicable, deliberate, cold, callous and intentional manor

thereby entitling Defendant to recover punitive damages from the Plaintiff,

GMAC, in an amount according to proof.

151) Defendant is informed and believes that as a further result of

Plaintiff's, GMAC, conduct, defendant has suffered economic damages in the

amount to be proven at trial.

152) Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered

Severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED


## TWENTY THIRD CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

42

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as follows

153) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

154)    Defendant is the owner in fee of title to property commonly known as: 521 Cowpath Rd. Plaintiff , GMAC, claims and assert interest in the above described real property which are adverse to Defendant. The claims of Plaintiff , GMAC, are based on the deeds of trust.

155)    The deeds of trust are invalid and void as to Defendant's property because Defendant is entitled to offsets against the promissory notes that are secured by deeds of trust, and these offsets are greater in amount than the sum that would otherwise be due under the promissory notes, and Defendant is entitled to rescission of the promissory notes and deeds of trust such that Plaintiff's, GMAC, claim to the property is released.

156).   Defendant seeks to Quiet Title  as of the date this counter claim is filed.

157) Plaintiff, LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling  Defendant to recover punitive damages from the Plaintiff in an amount according to proof.

158) Defendant is informed and believes that as a further result of

43

Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has

suffered economic damages in the amount to be proven at trial.

159)    Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a

subsequent lender, Defendant has suffered severe emotional distress in an

amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## TWENTY FOURTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle &

GMAC  as a subsequent lender allege as follows

160) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

162) Defendant is the owner in fee of title to property commonly known as:

521 Cowpath Rd, Telford, Pa 18966. Defendant contends that that a breach of

obligation secured by the deed of trust has occurred in that contends that he is

able to retain possessory rights to the property based on the willful intentions by

LBA, Eagle & GMAC as a subsequent lender to mislead, neglect, lack of material

disclosure, as well as other violations of the law throughout the loan application

process and servicing.

163) Plaintiff, LBA, Eagle & GMAC as a subsequent lender and each of

44

them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,

amounted to malice and was carried out in a despicable, deliberate, cold, callous

and intentional manor thereby entitling Defendant to recover punitive damages

from the Plaintiff in an amount according to proof.

164) Defendant is informed and believes that as a further result of

Plaintiff's , LBA, Eagle & GMAC as a subsequent lender conduct, defendant has

suffered economic damages in the amount to

be proven at trial.

165)    Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a

subsequent lender Defendant has suffered severe emotional distress in an

amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED


## TWENTY FIFTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(s),LBA, Eagle & GMAC

as a subsequent lender allege as follows

166) Defendant repeats and re pleads paragraphs 1 through 30 and

45

incorporates the allegations by reference as though fully set-forth herein.

167) Plaintiff(s) LBA, Eagle & GMAC as a subsequent lender, caused a
breach of contract by not honoring terms of the contract in regards to loan
payments, escrow, loan fees, servicing and origination of the loan in question.
GMAC charged a higher escrow amount than disclosed or required in the loan
documents. (see exhibits A4, A34, A18 - A23, A35-A37)

168) Plaintiff(s) ,LBA, Eagle & GMAC as a subsequent lender and each of
them, committed the acts herein alleged maliciously, fraudulently, and
oppressively, with reckless disregard of Defendants rights. Conduct by the
Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender and each of them,
amounted to malice and was carried out in a despicable, deliberate, cold, callous
and intentional manor thereby entitling Defendant to recover punitive damages
from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount
according to proof.

169)  Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender,  conduct, defendant has
suffered economic damages in the amount to be proven at trial.

170)   Defendant is informed and believes and thereon alleges that as a
result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a
subsequent lender, Defendant has suffered severe emotional distress in an
amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

46

## TWENTY SIXTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as

follows

171) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

172) Defendant disputed the payment history, payments credited, as well

as payment amount several times and Plaintiff, GMAC, failed to follow the

procedure under " Real Estate Settlement and Procedures Act"-Section Six;

Therefore, a violation of the UTPCPL 73 P.S. 201-1 & 201-9.2.

Plaintiff, GMAC, failed to report to the Credit Bureaus that the loan was in

dispute, failed to make a consumer report disclosure, reported inaccurate

information to the credit bureaus, and damaged the character of the

defendant..

173)  On 4/24/09 & 6/29/09 in writing as well as several times via the

phone Plaintiff, GMAC,  failed to provide the name, person, and phone number

who can resolve the dispute to Defendant.

174) Plaintiff, GMAC,  refused and failed to credit payments as required

And  reported inaccurate and derogatory information while in dispute in violation

of Section six of "The Real Estate Settlement and Procedures Act". 12 U.S.C.

2605. Plaintiff, GMAC,  failed  to protect the credit rating of the Defendant during

the 60 day protection period while in dispute on 4/09, 5/09,6/09,7/09,8/09 & 9/09

and continue to do so.

47

175) Plaintiff, GMAC, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff, GMAC, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff in an amount according to proof.

176) Defendant is informed and believes that as a further result of Plaintiff's, GMAC, conduct, defendant has suffered economic damages in the amount to be proven at trial.

177)    Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

# TWENTY SEVENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff,, GMAC, allege as follows

178) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

Defendant disputed the (with GMAC) payment history, payments credited, as well as payment amount, several times and Plaintiff, GMAC, failed to follow the

48

procedure under " The Fair Credit Reporting Act"; Therefore a violation of the
UTPCPL 73 P.S. 201-1 & 201-9.2.

179) Plaintiff , GMAC, failed to report to the Credit Bureaus that the loan
was in dispute, failed to make a consumer report disclosure, reported inaccurate
information to the credit bureaus, and damaged the character of the Defendant.

180)    On 4/09, 5/09,6/09,7/09,8/09 & 9/09  Plaintiff , GMAC, failed
to report the account as "In Dispute" with the credit Bureaus.

181).    On 4/09, 5/09,6/09,7/09,8/09 & 9/09  Plaintiff, GMAC,  refused to
credit  payments as required by law.

182).    On 4/09, 5/09,6/09,7/09,8/09 & 9/09  Plaintiff , GMAC,  reported
inaccurate and derogatory information about Defendant ,while in dispute, in
violation of "The Fair Credit Reporting Act". 15 U.S.C. 1681

183) Plaintiff,  GMAC,  committed the acts herein alleged maliciously,
fraudulently, and oppressively, with reckless disregard of Defendants rights.
conduct by the Plaintiff , GMAC, amounted to malice and was carried out in a
despicable, deliberate, cold, callous and intentional manor thereby entitling
Defendant to recover punitive damages from the Plaintiff , GMAC, in an amount
according to proof.

184)  Defendant is informed and believes that as a further result of
Plaintiff's , GMAC, conduct, defendant has suffered economic damages in the
amount to be proven at trial.

185)    Defendant is informed and believes and thereon alleges that as a

49

result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered

Severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## TWENTY EIGHTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as

follows:

186)  Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

187)   Defendant disputed the payment history, payments credited as well

as payment amount several times and Plaintiff , GMAC, failed to follow the

procedure under " Fair Debt Collections Practices  Act".Defendant(s) failed to

report to the Credit Bureaus that the loan was in dispute, failed to make a

consumer report disclosure, reported inaccurate information to the credit

bureaus, and damaged the character of the Defendant.

188).  Plaintiff, GMAC,  failed on 4/09, 5/09,6/09,7/09,8/09 & 9/09

to report to credit bureaus "As Disputed". Section 807(f) 15 U.S.C. 1601,

15 U.S.C. 1692 ,1692-1622p

189).  Plaintiff, GMAC,  on failed to credit Defendant's payments  as

required on 4/09, 5/09,6/09,7/09,8/09 & 9/09.

190).  On 4/09, 5/09,6/09,7/09,8/09 & 9/09 Plaintiff, GMAC,  reported

inaccurate and derogatory information about Defendant, while in dispute, in

50

violation of "The Fair Debt Collection Practices Act" Sec 809(b). Plaintiff,

GMAC, failed to protect the credit rating of the Defendant without validating

debt, and while in dispute 15 U.S.C. 1601, 15 U.S.C. 1692 1692-1622p;

Therefore this constitutes violations of "The Fair Credit Extension Uniformity Act"

73 P.S. 2270.1 & "The Unfair Trade Practices and Consumer Protection Law

UTPCPL 73 P.S. 201-1 & 201-9.2.

191) Plaintiff, GMAC, continued collection activity and reported

Misinformation to credit bureaus even when debt was not validated. "Fair Debt

Collection Practices Act"809(b).

192) Plaintiff, GMAC, committed the acts herein alleged

maliciously, fraudulently, and oppressively, with reckless disregard of Defendants

rights. Conduct by the Plaintiff, GMAC, amounted to malice and was carried out

in a despicable, deliberate, cold, callous and intentional manor thereby entitling

Defendant to recover punitive damages from the Plaintiff, GMAC, in an amount

according to proof.

193) Defendant is informed and believes that as a further result of

Plaintiff's, GMAC, conduct, defendant has suffered economic damages in the

amount to be proven at trial.

194) Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered

Severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## TWENTY NINTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle &

GMAC as a subsequent lender, allege as follows

195) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

196) Plaintiff(s) LBA, Eagle & GMAC as a subsequent lender

mischaracterized the debt as a result of a TILA, "Truth in Lending Act" violation

constituting a violation of the FCEUA, "The Fair Credit Extension Uniform Act".

73 P.S. 2270.4(b)(5)(ii) & 2270.49(b) (6)(I). Did not properly disclose all terms

per TILA; Mischaracterized the escrow disclosure, APR disclosure (provided 2

APR disclosures at settlement and did not disclose correct APR prior to closing),

Total payments on TILA/REG "Z" disclosure indicating total number of payments

per TILA.

197) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each

of them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff, LBA, Eagle & GMAC as a subsequent lender, and each of them,

amounted to malice and was carried out in a despicable, deliberate, cold, callous

and intentional manor thereby entitling Defendant to recover punitive damages

from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender in an amount

according to proof.

198)  Defendant is informed and believes that as a further result of

Plaintiff's, LBA, Eagle & GMAC as a subsequent lender conduct, defendant has

suffered economic damages in the amount to

be proven at trial.

199)    Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a

subsequent lender  Defendant has suffered severe emotional distress in an

amount to be proven at trial.


ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## THIRTIETH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC,  allege as

follows

200) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.


201) Plaintiff, GMAC, caused "Defamation of Character" of Defendant for

several reasons:  A) Plaintiff ,GMAC, reported derogatory, inaccurate and false

information to credit bureaus while in dispute with Plaintiff; The account

Is still in dispute with Plaintiff, GMAC, , i.e. legal action, and the Plaintiff , GMAC,

continued to defame Defendant by reporting derogatory, inaccurate, and false

information to the credit bureaus . B) Plaintiff , GMAC, defamed Defendant by

filing illegal foreclosure action in violation of RESPA and contract law defaming

Defendant and mischaracterizing the debt to the public. C) Reported false and

inaccurate information to HUD indicating Kenneth J Taggart was in default and

that Kenneth J Taggart has not made payments as per loan terms. If fact GMAC

Would not accept loan payments as per the loan terms and declared the loan

As "Delinquent or In Default".

202) Plaintiff,  GMAC, , committed the acts herein alleged maliciously,

fraudulently, and oppressively, with reckless disregard of Defendants rights.

Conduct by the Plaintiff,  GMAC, , amounted to malice and was carried out in a

despicable, deliberate, cold, callous and intentional manor thereby entitling

Defendant to recover punitive damages from the Plaintiff in an amount according

to proof.

203)  Defendant is informed and believes that as a further result of

Plaintiff's, GMAC,  conduct, defendant has suffered economic damages in the

amount to  be proven at trial.

204)   Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff, GMAC,  Defendant has suffered

severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

# THIRTY FIRST CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as

follows

205) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

206) Plaintiff , GMAC, violated Privacy Rights and U.S. Constitutional

Rights of Defendant by publicizing and filing foreclosure and submitting false

information to the public and government including HUD . Also requesting name

of person and personal information of residents in the property. Plaintiff, GMAC,

has no legal right to report any Payment or financial information to the credit

bureaus. Defendant has never given consent to Plaintiff to report private

information to any third party. The plaintiff, GMAC, has violated the Defendants

U.S. Constitutional Rights including the 1st Amendment of Freedom of

Expression by depriving defendant the right to be a FHA appraiser or participate

in any other government programs, The 4th Amendment by depriving defendant

of Life Liberty and Property without due process (The defendant has been barred

from participating In government programs including the participation as an FHA

Appraiser due to The inaccurate reporting without due process), The 14th

Amendment,  by depriving Defendant of life, liberty or property without due

process of the law and  denied the defendant within its jurisdiction the equal

protection of the laws. The actions by GMAC  has resulted in a permanent loss

of income by Defendant, Kenneth J Taggart.

55

207) Plaintiff, GMAC, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff,, GMAC, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff , GMAC, in an amount according to proof.

208) Defendant is informed and believes that as a further result of Plaintiff's, GMAC, conduct, defendant has suffered economic damages in the amount to be proven at trial.

209)   Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## THIRTY SECOND CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as follows

210) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

211) Plaintiff, GMAC, violated the "Mortgage Property Insurance

Coverage Act" 7 P.S. 6701, PA ST 7 P.S. 6701  & 6703  by attempting to

require more money in escrow than allowed by law and causing and/or illegally

filing foreclosure as a result of such breach. Lender , GMAC, also "Force Placed

Insurance" on Defendant even though Defendant had adequate insurance and

provided proof to Plaintiff, GMAC, ; Furthermore, GMAC,  is charging well

above market rates to increase profits for Plaintiff,  GMAC, and not returning this

to Defendant.  Plaintiff, GMAC,  is still currently refusing to return $7,800

insurance premium charged and is still charging more than required by law in

monthly escrow payments.

212) Plaintiff,  GMAC, committed the acts herein alleged maliciously,

fraudulently, and oppressively, with reckless disregard of Defendants rights.

Conduct by the Plaintiff, and each of them, amounted to malice and was carried

out in a despicable, deliberate, cold, callous and intentional manor thereby

entitling Defendant to recover punitive damages from the Plaintiff in an amount

according to proof.

213)  Defendant is informed and believes that as a further result of

Plaintiff's, GMAC,  conduct, defendant has suffered economic damages in the

amount to be proven at trial.

214)   Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff, GMAC, , Defendant has suffered

severe emotional distress in an amount to be proven at trial.


ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED


57

ALL FOR WHICH PLAINTIFF PRAY AS FOLLOWS

**On all Claims for Relief:**

1. Compensatory Damages in an amount to be proven at trial;

2. General Damages in the amount in excess of $5,000,000 or to be proven at trial;

3. Punitive Damages in the amount in excess of $5,000,000 or to be proven at trial;

4. Statutory Damages in the amount to be proven at trial;

5. Special Damages in the amount to be proven at trial;

6. Treble Damages in the amount to be proven at trial;

7. Rescission of Loan;

8. Cost of suit;

9. Attorneys fees; and,

10. Such other relief as the court deems just and proper

Dated _April 28th_ 2010

Kenneth J Taggart

Plaintiff

Pro Se

58

**6**

# IN THE COURT OF COMMON PLEAS OF

# MONTGOMERY COUNTY, PENNSYLVANIA

GMAC MORTGAGE, LLC,

        Plaintiff,

  v

KENNETH J TAGGART,

        Defendant,

  v

EAGLE NATIONWIDE MORTGAGE CO , and
LBA FINANCIAL GROUP, LLC

        Third Party Defendants

CIVIL ACTION – LAW

NO 2009-25338



2009-25338-0219
3/29/2012 9 23 29 AM
Order
Receipt #71484701    Fee   $0 00
Mark Levy - Montgomery County Prothonotary

## ORDER

AND NOW, this __26th__ day of __March__, 2012, following a
conference pursuant to Montgomery County Local Rule of Civil Procedure 212 1, it is hereby
ORDERED, as follows

    1    Discovery is to be completed within ninety (90) days of the date of this Order

    2    All dispositive motions are to be filed within one hundred twenty (120) days of
the date of this Order

    3    All responses to any dispositive motions shall be filed within thirty (30) days of
the filing of the dispositive motion to which the party is responding

    4    The case is to be placed on the Trial List by the signing of a Trial Praecipe, if
there are no dispositive motions by __7/25__, 2012

5    In the event that there are dispositive motions, the case is to be placed on the Trial

List by the signing of a Trial Praecipe within ten (10) days after said dispositive motions are

decided

BY THE COURT

_____

The Honorable Arthur R Tilson

Copies mailed on 3-27-12 To:
Brian Fleascher, Esquire
Andrew Brackemper, Esquire
Kenneth Taggart
LBA Financial LLC
Court Administration

Karen Crooter

2

**7**

## Certificate of Service

No: 09-25338

The undersigned certifies that on December 30, 2010, he caused a copy of

"Motion to Compel Discovery fro GMAC Mortgage , LLC & Request for Oral

Argument" to be hand delivered to the court.   Additionally, the undersigned

certifies that he caused a true and correct copy of the foregoing was sent via

USPS  on December 30 , 2010 to , council for  Eagle Nationwide  Mortgage

Company,  LBA Financial, LLC. And Council for Plaintiff/GMAC Mortgage Brian

Fleisher.

Council for Plaintiff/GMAC Mortgage
Brian Fleisher
Fleischer, Fleischer & Suglia
Plaza 1000 at Main St Suite #208
Voorhees, N.J. 08043

Council for Plaintiff/ Eagle Nationwide Mortgage Company
Proctor, Lindsey & Dixon, LLC
Charles Proctor
3 Dickenson Dr, Suite #204
Chadds Ford, Pa. 19317

LBA Financial, LLC
970 Loucks Rd
York, Pa 17404

2009-25338-0091
12/30/2010 2:28:49 PM
Affidavit Certificate of Service of
Receipt # Z1093683       Fee      $0.00
Mark Levy - Montgomery County Prothonotary

Kenneth J Taggart
Pro se

**8**

# COURT OF COMMON PLEAS

# MONTGOMERY COUNTY, PA

Court of Common Pleas                    Term # 09-25338
Civil Division

GMAC Mortgage, LLC, et al

And Does

Plaintiff

v.

Kenneth J Taggart, Pro Se

Defendant

## O R D E R

AND NOW, this_____ day of_____, 2012, upon consideration of

Defendant,  Kenneth J Taggart's, "Motion to Extend Scheduling Order" dated June

22, 2012, any response thereto,

   It is Ordered that Defendant's  Motion is GRANTED .

*The court extend the discovery deadlines and the current scheduling order by issuing a*

*new order extending discovery until 60 days after all discovery disputes and issues*

*regarding this case are resolved. It is further requested that all dispositive motions shall*

*be due 30 days after discovery has ended and any opposition thereto shall be due 30*

*days after the filing of dispositive motions.*

                    BY THE COURT:

                    _____

# COURT OF COMMON PLEAS

# OF MONTGOMERY COUNTY

No: 09-25338

---

GMAC Mortgage, LLC
LBA Financial Group, LLC
Eagle Nationwide Mortgage Company

Plaintiffs

v.

Kenneth J Taggart

Defendant

2009-25338-0287
6 22 2012 11:40:47 AM
Motion
Receipt # Z1558978      Fee    $0.00
Mark Levy - Montgomery County Prothonotary

---

## Motion to Extend Discovery Scheduling Order

---

**Notice: This Motion is being filed with the belief that is does not violate the "Stay" by the Bankruptcy Court Order regarding GMAC Mortgage,LLC. If this pleading is deemed to be in violation of the bankruptcy order, defendant shall immediately stay this filing until such time the "Stay" is lifted by the court.**

**History**

The court issued a scheduling order and deadlines for discovery as well as dispositive

motions on March 26, 2012. Since the court issued the scheduling order, there has been several

discovery disputes on either side that have not been resolved by the court. Not withstanding two

appeals to Superior Court that are current, there are Motions to compel on either side as well as

motions in opposition to subpoena request that have not been heard. There is also a Motion

submitted with the bankruptcy court, by defendant, for clarification of "Effect of Stay".

**CONCLUSION**

*For the foregoing reasons, defendant requests that the court extend the*

*discovery deadlines and the current scheduling order by issuing a new order extending*

*discovery until 60 days after all discovery disputes and issues regarding this case are*

*resolved. It is further requested that all dispositive motions shall be due 30 days after*

*discovery has ended and any opposition thereto shall be due 30 days after the filing of*

*dispositive motions.*

Respectfully submitted,

Kenneth J Taggart, Pro Se

June 22, 2012

## IN THE COURT OF COMMON PLEAS OF

### MONTGOMERY COUNTY. PENNSYLVANIA
### MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| GMAC MORTGAGE, LLC,<br><br>Plaintiff, | |
| v | |
| KENNETH J TAGGART, | CIVIL ACTION – LAW |
| Defendant, | NO 2009-25338 |
| v | |
| EAGLE NATIONWIDE MORTGAGE CO , and<br>LBA FINANCIAL GROUP, LLC | |
| Third Party Defendants | |



2009-25338-0219
3/29/2012 9 23 29 AM
Order
Receipt #7148-4701    Fee    $0 00
Mark Levy - Montgomery County Prothonotary

## ORDER

AND NOW, this __26th__ day of __March__, 2012, following a

conference pursuant to Montgomery County Local Rule of Civil Procedure 212 1, it is hereby

ORDERED, as follows

    1    Discovery is to be completed within ninety (90) days of the date of this Order

    2    All dispositive motions are to be filed within one hundred twenty (120) days of

the date of this Order

    3    All responses to any dispositive motions shall be filed within thirty (30) days of

the filing of the dispositive motion to which the party is responding

    4    The case is to be placed on the Trial List by the signing of a Trial Praecipe, if

there are no dispositive motions by __7/25__, 2012

5    In the event that there are dispositive motions, the case is to be placed on the Trial

List by the signing of a Trial Praecipe within ten (10) days after said dispositive motions are

decided

BY THE COURT

The Honorable Arthur R. Tilson

Copies mailed on 3-27-12 To:
Brian Fleascher, Esquire
Andrew Bonckemper, Esquire
Kenneth Taggart
LBA Financial LLC
Court Administration
Karen Coobbin

2

**9**

# COURT OF COMMON PLEAS

# MONTGOMERY COUNTY, PA

Court of Common Pleas        Term # 09-25338
Civil Division

GMAC Mortgage, LLC, et al

And Does

Plaintiff

v.

Kenneth J Taggart, Pro Se

Defendant

## O R D E R

AND NOW, this_____ day of_____, 2012, upon consideration of

Defendant, Kenneth J Taggart's, "Motion to Compel" GMAC Mortgage, LLC dated June

22, 2012, any response thereto,

It is Ordered that Defendant's Motion is GRANTED .

GMAC Mortgage, LLC to *comply with the Order and answer all of the outstanding*

*discovery questions in this case pursuant the letter dated April 2,2012 to GMAC*

*Mortgage, LLC & Mr. Suglia*

BY THE COURT:

_____



# COURT OF COMMON PLEAS

# OF MONTGOMERY COUNTY

No: 09-25338

---

GMAC Mortgage, LLC
LBA Financial Group, LLC
Eagle Nationwide Mortgage Company

Plaintiffs

v.

Kenneth J Taggart

Defendant

2009-25338-0289
6 22 2012 11:45:12 AM
Motion
Receipt #Z1558979
Mark Levy - Montgomery County Prothonotary    Fee    $0.00

---

**Motion to Compel Discovery by GMAC and to comply with Deposition Order**

**Notice:** **This Motion is being filed with the belief that is does not violate the "Stay" by the Bankruptcy Court Order regarding GMAC Mortgage, LLC. If this pleading is deemed to be in violation of the bankruptcy order, defendant shall immediately stay this filing until such time the "Stay" is lifted by the court.**

**History**

Stephan Maxwell of GMAC Mortgage, LLC attended a deposition on March 7, 2012.

Mr. Maxwell was representing GMAC Mortgage, LLC as both the custodian of record and as

corporate representative. Mr. Maxwell could not provide answers or information requested at the

deposition on several questions and documents. Mr. Maxwell, as well as counsel for GMAC

Mortgage, LLC,  Nicola Suglia, agreed during and after the deposition to provide a follow up to

question that could not be answers and document information that could not be fulfilled at the

time of the court ordered deposition. Mr. Suglia requested that a letter be submitted with

*1*

the list of questions that could not be answered and documents needed. (Exhibit "A")

**Non Complience**

Defendant, Taggart sent Mr. Suglia a letter on April 2, 2012 with the outstanding

information that was needed from the court ordered deposition; Defendant, Taggart has not

received any response as todays date.

**Motion to Compel**

Therefore, defendant Taggart, hereby motions the court to Compel GMAC Mortgage,

LLC to comply with the written request that was provided to them on April 2, 2012 with

outstanding discovery issues that were not resolved pursuant the court order.

**CONCLUSION**

GMAC Mortgage, LLC has not complied with the court order to provide all

discovery information at the deposition, nor has it provided the requested information

upon follow up letter as agreed; Therefore, defendant, Taggart requests the court issue

and "Order to Compel" GMAC Mortgage, LLC to *comply with the Order and answer all*

*of the outstanding discovery questions in this case pursuant the letter dated*

*April 2, 2012 to GMAC Mortgage, LLC & Mr. Suglia.*

Respectfully submitted,

Kenneth J Taggart, Pro Se

June 22, 2012

2

Kenneth J Taggart
45 Heron Rd
Holland, Pa 18966


April 2, 2012

Fleischer, Fleischer & Suglia
Brian Fleisher
Plaza 100 at Main St
Suite #208
Voorhees, New Jersey, 08043


RE:    GMAC Mortgage, LLC v. Kenneth J Taggart, Pro Se
       Case No 09-25338


Dear Mr.Suglia:

     I am following up with the conversation we had at the
deposition of Stephan Maxwell on March 7, 2012. As
requested, I am submitting to you the list of additional
information needed in this case that Mr. Maxwell was not
able to provide.


## Additional Questions and Information needed are as follows:


Stephan Maxwell could not answer several questions at all
or could not give complete answers to some questions. He
also stated that he was not familiar with the servicing and
would provide the name of someone who was familiar with the
servicing of this loan. Mr. Maxwell & counsel also stated
that they would provide the date and time documents were
received and received from whom if requested.    I am
providing from GMAC's Bates notes specific documents I need
the date & time received, … and whom they were received
from (their origin).


Discovery follow up letter. GMAC. 4.2.12      Page 1 of 5

# Addition Document Information

*Legible Documents that need to be provided as to legible or viewing in discovery.*

1.    Need Legible Documents from bates Notes provided by GMAC Mortgage, LLC:

Document Numbers, Bates Notes:# 98 – #104, #106 – #109

2.    For discovery *documents:* you agreed to provide, for specific documents requested, *dates received and received by whom (origin/source)* of the document upon written request.

Document numbers needing this information are your Bates Notes discovery document from GMAC numbers:

#248,256,263,284,325,326,329,330,412,413,477,478,479, 524,528,529,530,538,541

# Questions that could not be answered or needed more information.

### *Mortgage Note & Mortgage Ownership Questions*

1.    When did GMAC Mortgage, LLC acquire the note and mortgage.

2.    Were the note and mortgage acquired at the same time?

2(a)  When was each acquired?

2(b)  When could you provide a copy of the "Wet Ink
Note" and "Wet Ink Mortgage"?

2(c)  When would be a time that I could view the "Wet
Ink Note" and "Wet Ink Mortgage"?

2(d)  When would be a time that The court could view
the "Wet Ink Note" and "Wet Ink Mortgage"?

3.  Could you provide a history of ownership to the note
and the mortgage showing chain of title and ownership of
the note and mortgage since July 11,2008

4.  Does GMAC Mortgage, LLC own both the note and mortgage
now? **(Mr. Maxwell provided no answer to this at all)**

## Insurance & Escrow Questions

*Most questions regarding servicing and escrow Mr. Maxwell
could not answer and said he would provide someone who
could answer those questions.*

5.  Why was "Forced Placed Insurance" charged to Kenneth
Taggart on this loan when it was already in place and
required to be provided at the loan closing.

Discovery follow up letter. GMAC. 4.2.12    Page 3 of 5

5(a) Also, in August & September of 2008, the renewal premium(s) were also paid by GMAC Mortgage, LLC out of Taggart's escrow and GMAC,LLC knew there was insurance - why was insurance obtained when GMAC,LLC paid for the insurance, knew there was insurance, but still charged him for insurance?

## *Premiums/Fees charged to Kenneth Taggart*

6.   Was all "Forced Placed Insurance" credited back to Kenneth Taggart as of today's date?

7.   Why was school taxes for 2009, paid for by GMAC Mortgage, LLC, out of Taggart's escrow account in July 2009 when in fact they were not due until October 31,2009?

8.   Do you agree the escrow analysis provided by GMAC Mortgage, LLC dated May 5, 2009

   8(a) is accurate?

   8(b) how did you verify as accurate?

9.   Why was only a portion of the Forced Placed Insurance from January 2009 returned to Kenneth Taggart? 1/28/09 only a portion was credited.

10. Is Jeffrey Stephan still employed with GMAC Mortgage, its parent company, or an affiliate of GMAC Mortgage, LLC?

11. Did GMAC Mortgage, LLC use any other insurance company for "Forced Place Insurance" other than Balboa Insurance from July 2008 – September 2009?

12. What is the business arrangement between Balboa Insurance and GMAC Mortgage, LLC?

13. What percentage of "Forced Insurance" is placed by GMAC with Balboa Insurance?

14. Who can best answer loan servicing and escrow questions on this loan from GMAC Mortgage, LLC ?

You may contact me to discuss any or all of these issues by email or phone. You may contact me at: kentaggart@verizon.net or 267-987-3466.

Yours Truly,

Kenneth J Taggart, Pro Se

Discovery follow up letter. GMAC. 4.2.12    Page 5 of 5

**10**

No. 10-2295

_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**
_____◆_____

**REX T. GILBERT, JR.; DANIELA L. GILBERT,**

*Plaintiffs/Appellants,*

v.

**DEUTSCHE BANK TRUST COMPANY AMERICAS, AS**
**TRUSTEE FOR RESIDENTIAL ACCREDIT LOANS, INC.;**
**DAVID A. SIMPSON, P.C., SUBSTITUTE TRUSTEE;**
**RESIDENTIAL FUNDING LLC; GMAC MORTGAGE, LLC,**

**Defendant/Appellees.**

**NOTICE OF BANKRUPTCY**
**AND EFFECT OF AUTOMATIC STAY**

Appellees and debtors, Residential Funding LLC and GMAC Mortgage, LLC (collectively, the "Debtors"), by and through their undersigned counsel, in accordance and consistent with section 362(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), respectfully submit this Notice of Bankruptcy and Effect of Automatic Stay, and states as follows:

1.      On May 14, 2012 (the "Petition Date"), the Debtor and certain of their affiliates filed voluntary petitions (the "Petitions") under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408 (the "Bankruptcy Code").  The Debtors' cases are jointly administered under the Chapter 11 Case for the Debtor Residential Capital, LLC, et al., is indexed as case number 12-12020.

2.      The "automatic stay" is codified in section 362 of the Bankruptcy Code.  Section 362(a), *inter alia*, operates as an automatic stay of: (i) the commencement or continuation of a "judicial, administrative, or other action or proceeding" against the Debtors (11 U.S.C. § 362(a)(1)); (ii) acts to "obtain possession of property" of the Debtors' estates (11 U.S.C. § 362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtors arising prior to the Petition Date (11 U.S.C. § 362(a)(6)).

3.      The above-captioned action constitutes a "judicial, administrative, or other action or proceeding" against the Debtors, an act to obtain possession of the Debtors' property, and/or an act to collect or recover on a claim against the Debtor.

4.      Accordingly, the above-captioned lawsuit should be stayed pursuant to 11 U.S.C. § 362(a).

5.      Any action taken by the Plaintiff against the Debtors without obtaining relief from the automatic stay from the Bankruptcy Court may be void *ab initio* and may result in finding of contempt against Plaintiffs by the Bankruptcy Court.  The Debtors reserve and retain all of their statutory rights to seek relief in Bankruptcy Court from any action, judgment, order, or ruling entered in violation of the Automatic Stay.

/s/  Martin C. Bryce, Jr.
Martin C. Bryce, Jr.
Glenn A. Cline
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Telephone: 215.665.8500
Facsimile:  215.864.8999

Attorneys for Appellees

Dated:  May 17, 2012

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of May, 2012, a copy of the foregoing Notice of Bankruptcy and Effect of Automatic Stay was served on all parties or their counsel of record through the CM/ECF system.

/s/  Martin C. Bryce, Jr.
Martin C. Bryce, Jr.