**11**

ny-1048310

**JACKSON DEMANDS JURY TRIAL**

## IN THE CIRCUIT COURT OF MOBILE ALABAMA

| | | |
|---|---|---|
| **CORLA JACKSON** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | NO: _CV 2012-00049_ |
| | § | _JCW_ |
| **GMAC MORTGAGE** | § | |
| **CORPORATION, ET AL** | § | |
| | § | |
| **Defendants.** | § | |

## INJUCTION & QUIET TITLE
### SECURITLATION FRAUD
### BOTH STATE AND FEDERAL LAWS

### NEW DISCOVERY TO BACK FRAUD UNDER RULE (60b)
### STATE AND FEDERAL LAWS

### VIOLATION OF HATE CRIME UNDER LOANS AND LOAN MODIFICATION
### STATE AND FEDERAL LAWS

### BREACH OF CONTRACT AND BAD FAITH UNDER
### STATE AND FEDERAL LAWS

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW the Plaintiff,** (CORLA JACKSON) , under the Grounds of (GMAC
MORTGAGE CORPORATION) Did In Fact Commit Fraud Under Rule (60b) Under Federal
And State Laws As Well As Perjury and Obstruction of Justice.  Also They Committed
SECURITLATION FRAUD Under Both STATE AND FEDERAL LAWS, As Well As FRAUD
UNDER RULE (60b) Under Both STATE AND FEDERAL LAWS.

Total Documents Filed_____

"Rule 65(d)(2), Ala. R. Civ. P., requires:

" 'Every order granting an injunction shall set forth the reasons for its issuance; shall be
specific in terms; shall describe in reasonable detail, and not by reference to the
complaint or other document, the act or acts sought to be restrained . '

**JACKSON DEMANDS JURY TRIAL**

**JACKSON DEMANDS JURY TRIAL**

SECURITLATION FRAUD Under STATE AND FEDERAL LAWS, As Well As NEW
DISCOVERY OF FRAUD UNDER RULE (60b) Under Both STATE AND FEDERAL LAWS.

GMAC MORTGAGE did not comply with the terms of it's own Pooling and Servicing
Agreement and further did not comply with the Security's Exchange Laws Or Option
One Mortgage Notes Trustees in attempting to obtain assignment of plaintiff (Plaintiff's)
Jackson Property By Law…Preparing Paperwork Themselves…

Plaintiff (Jackson) is a third party beneficiary of the **Pooling and Servicing Agreement
created by the defendant trust** (Wells Fargo Bank) . Indeed without such Pooling and
Servicing Agreements Recorded And Signed By All Trust And Investors, Plaintiff
(Jackson) and other mortgages similarly situated like this would never have been able to
obtain financing anywhere. The Tile To The Property Has Been Clouded…By The
Defendants…And Major Damages Occurred For Making False Claims Forcing Plaintiff
Into Bankruptcy From (2005-2012) Which Is Fraud Under Rule (60b) With New
Discovery…Backed By The Defendants Own Evidence…

In Addition To The Above (Jackson) The Plaintiff Credit Has Been Destroyed By The
Defendants Making False Claims Over And Over Again Knowing They Did Not Own
The Notes By Law. Defendants Never Showed Their Original Notes, Original Deeds,
Original Assignments, Original Affidavits, Or A Copy Of Their Own Canceled Check
Purchasing This Note From The Original Lender.  In Addition To All Of The Above This
Note Was Written Under A HUD Settlement Statement Form Which Verified The
Conventional Loan Was Not And Insured Conventional Loan And Was Guaranteed To
Other Lending Remedy's To Prevent An Foreclosure By Any Other Lender Which Could
Not Be Done Because The Defendants Made False Claims When They Did Not Own The
Note…Period…This Was Information That Could Have Been Verified By Mers And The
SEC Security's Exchange Which Never Happen…

Instead The Defendants Provided Blank Alonges Made Payable To No One And Copy Of
A False Affidavits From Someone They Could Not Spell Their First Middle Or Last
Name As Appeared On The False Affidavits That Was Prepared By The Defendants
Making Notes Out To Themselves Illegally Against The Law…None Of This Was Ever
Verified By Law Or The Security's Exchange or Mers…Which Is Security's Fraud..

# In Addition To The Grounds Set Forth Above…

GMAC MORTGAGE Has Violated Acts Under The HATE CRIME Protection Acts That
Protected Jackson On Her Notes Backed By Security's And Policy's That They Committed Fraud
On As Well As Perjury On A Mortgage They Did Not Own Or Was Assigned From (2005-2012)
And On Mortgage Under False Pretense …The Damages Is In The Millions Of Dollars On What
They Did To Plaintiff…To Date…Demanding Jury Trial Is Necessary…

In Addition To This They Violated Jackson Civil Human And Constructional Rights As A
Citizens Of The United States And Refused Her A Loan Or A Loan Modification After
Destroying Her Credit And Clouding The Title To Her Home And Assets Illegally Against The

**JACKSON DEMANDS JURY TRIAL**

Law....They Violated LOAN MODIFICATION To Help Victims Like Jackson Under Federal Laws In Which They Did Not Do.

Jackson Was Released From Bankruptcy On January 20, 2010 When They Defrauded The State Courts They Owned Jackson Home And Was Assigned A Note Back In (2005) Which Was Not True That Lead To An Illegal Order Issued By Judges Youngpeter Under The Grounds Of False Pretense On Up The Later When They Did Not Even Own The Note Neither Were They Assigned Jackson Note At That Time...

Jackson Kept Going After Them And They Committed Fraud This Time To Prove They Committed Fraud Under Rule (60b) The First Time. This Now Is Returned Back To The Courts To Seek Legal Justice By Law. Under Demand By Jury Trial!

Rules of Civil Procedure, and as grounds therefore, shows as follows:

### *Factual Evidence through the Courts*

**Rule 60(b) provides, in pertinent part**: On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment, order, or proceeding was entered or taken."

1.      Our supreme court has stated: "'[T]he decision whether to grant or deny [a Rule 60(b)] motion is within the sound discretion of the trial judge, and the appellate

**JACKSON DEMANDS JURY TRIAL**

**JACKSON DEMANDS JURY TRIAL**

standard of review is whether the trial court abused its discretion. *Pierson v. Pierson*, 347

So. 2d 985 (Ala. 1977). In reviewing a ruling of a trial court on a Rule 60(b)(6) motion,

the trial court's decision will not be disturbed unless it is determined "that there is an

absence of reasonable cause, that rights of others subsequently arising would be

adversely affected, or that it is unjust." *Textron, Inc. v. Whitfield*, 380 So. 2d 259 (Ala.

1979), quoting *Nunn v. Stone*, 356 So. 2d 1212 (Ala. Civ. App. 1978).' "Ex parte

Dowling, 477 So. 2d 400, 402 (Ala. 1985)." *Osborn v. Roche*, 813 So. 2d 811, 815 (Ala.

2001).

2.    Our supreme court has further recognized that in certain cases

"aggravating- circumstances may allow a trial court to treat what would otherwise be a

Rule 60(b)(1) motion [or 60(b)(3) motion] as a Rule 60(b)(6) motion." *Ex parte Wal-

Mart Stores, Inc.*, 725 So. 2d 279, 284 (Ala. 1998). The supreme court has stated that the

aggravating- circumstances exception "applies to an extraordinary circumstance not

contemplated by Rule 60(b)(1) [or 60(b)(3)], for the purpose of protecting the public,

vindicating the judicial process, and promoting the public's confidence in the legal

system." *R.E. Grills, Inc. v. Davison*, 641 So. 2d 225, 230 (Ala. 1994).

3.    "The `catch all' provision of clause (6) of Rule 60(b) allows a trial court to

grant relief from a judgment for `any other reason justifying relief.' *Barnett v. Ivey*, 559

So. 2d 1082, 1084 (Ala. 1990).

4.    "Although grounds for relief under Rule 60(b)(1) generally cannot be

valid grounds under Rule 60(b)(6), this Court has recognized an exception when, in the

interest of justice, aggravating circumstances may be considered sufficient to allow the

trial court to treat what would otherwise be a Rule 60(b)(1) motion as within Rule

**JACKSON DEMANDS JURY TRIAL**

**JACKSON DEMANDS JURY TRIAL**

**JACKSON DEMANDS JURY TRIAL**

60(b)(6). *Chambers County Comm'rs v. Walker*, 459 So. 2d 861 (Ala. 1984); Giles v.

Giles, 404 So. 2d 649 (Ala. 1981); Rebel Oil Co. v. Pike, 473 So. 2d 529 (Ala. Civ. App.

1985)."

5.      It is the prevailing rule in Alabama "that a litigant ... has responsibility for

keeping track of his case and knowing its status." *D. & J. Mineral & Mining, Inc. v.*

*Wilson*, 456 So. 2d 1099, 1100 (Ala. Civ. App. 1984). Therefore, a trial court "owes no

duty to notify a party of the setting of a case or to continue a case because of the absence

of a party ...." *D. & J. Mineral*, 456 So. 2d at 1100-01.

6.      Our caselaw recognizes that the failure of a party to advise the clerk of a

proper service address may "fall into the category of excusable neglect...." *DeQuesada v.*

*DeQuesada, 698 So. 2d 1096, 1099 (Ala. Civ. App. 1996).*

B18W (Form 18W) (08/07)

# United States Bankruptcy Court

Southern District of Alabama
Case No. 05–13142
Chapter 13

**In re** Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Corla Reeves Jackson
13230 Tom Gaston Road
Mobile, AL 36695

Social Security / Individual Taxpayer ID No.:
xxx–xx–9711

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR AFTER COMPLETION
## OF CHAPTER 13 PLAN

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 1328(a) of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: 1/20/10

MARGARET A. MAHONEY
United States Bankruptcy Judge

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**



AOL | Mail | Toolbar

Location: Mobile, AL 36695 | Search History | Advanced Search | Settings

**Web**  Images | Videos | Maps | News | Shopping | more »

**What does it mean when a Hurricanes leave sags and dips**

Web Results 1 - 10 of about 2,660

### [PDF] SAFE REHABILITATION OF HURRICANE-DAMAGED HOMES
Roofs that sag in the middle or at the ends due to load-bearing walls that have shifted. ... a dip in the roof and sill beam. ribbon board, cracked floor joist ..... However if there is a lot of water damage, and/or mold growth ... in adults , lead poisoning may cause high blood pressure, fertility ...
hud.gov/offices/lead/library/misc/HUD_CSS_Booklet.pdf - Similar

### [PDF] Response to Floods and Water Damage for Libraries, ...
Jun 14, 2008 ... Go onto the roof if rising water makes it necessary as long as no thunderstorm is in progress. ... highway dips, where water may pool and pose threats. ... Emergency Drying Procedures for Water Damaged Collections. ... Pools of cool standing water (which can cause hypothermia if the water is less ...
www.loc.gov/preserv/emergprep/floodcomp.pdf - Similar

### Roofing: How dry does the deck need to be?, asphalt shingles, ...
Apr 30, 2009 ... Anything that might soak up water, like insulation must be ripped out as it can ... Several interior rooms beneath the damaged roof show obvious signs of warped ... one could SEE an extreme bow or sag, but are there degrees of tolerance in what ... Look for isolated humps or dips between rafters. ...
en.allexperts.com/q/Roofing-1598/2009/4/dry-deck-need... - Similar

### Hurricane Survival Tips - Hurricane Mitigation & Survival
The two huge masses of water do leave the land in much the same way,'.... When water kills or does damage, the wind put it up to it. .... and with major hurricanes, it ain't over until the National Guard arrives. .... Invest in a hurricane roof as the main hole you want to avoid is a big one with a view of Heaven. ...
www.hurricane-man.com/survival-tips.html - Similar

### General information | RAGBRAI
This may cause your group to be ineligible for the lottery. .... RAGBRAI is a major economic boost to every church, Boy Scout or Girl .... Your wristband also will give you priority to sag wagons, bicycle shop repairs and many other services. ... If you race ahead, lag behind or leave the official bicycle route, ...
ragbrai.com/index.php/about/general-information/ - Similar

### Antigua - Local Reports (Caribbean Hurricane Network)
that it does not necessarily mean that the case brought by ABITPC against govern – .... it was badly damaged by the 1990s hurricanes that kept visiting Antigua.. . ...... Whatever will cause this dip could occur earlier? I certainly hope not! ..... WHAT a way to start a week... with a 140 mph major hurricane on your ...
stormcarib.com/reports/2003/antigua.shtml - Similar

### Using Technology to Reduce Risk and Improve Worker Safety | ...
The root cause of this unwanted connection is often a result of insulation breakdown. ... equipment damage and present a fire and explosion risk to personnel (see photo 1). .... 5) To reduce the momentary line-voltage dip occasioned by the occurrence and ..... Utility Deregulation, What Does it Mean to Inspectors? ...
www.iaei.org/magazine/?p=2449 - Similar

### Pain in Maine, but they can measure rain « Climate Audit
But all the data sufficient to predict hurricanes is OK? ..... (Heck, if it's like my house, the whole electrical system voltage sags whenever a big ..... that CO2 is not a major factor in causing the earth to warm: You are a denier. ...... Does this mean that it's OK to shade the truth about AGW so that someone, ...
www.climateaudit.org/?p=1816 - Similar

**JACKSON DEMANDS JURY TRIAL**

PAGE  68/82

Date: 05/26/04

## ALLONGE TO NOTE
### (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: CORLA JACKSON
Loan #:
Property Address: 13230  TOM GASTON RD,  MOBILE, AL
Loan Amount: $240,000.00

Note Date: 05/26/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

Without Recourse

Option One Mortgage Corporation
A California Corporation

By

Jeanette Perrenoud

Assistant Secretary

USD3050.wp (03-14-03)

Case 11-01545   Claim 3-1 Part 3   Filed 07/25/11   Desc NOTE   Page 4 of 4

**WHAT THEY DID WAS WRONG THEY PROVIDED A BLANK COPY OF AN
ALLONGE WITHOUT ORIGINAL DEED OR COPY OF CHECK TO PROVE
THEY PURCHASED LOAN FOR THE DOLLAR SAID AMOUNT THEY
CLAIMED VICTIMS OWED ON NOTES THAT DID NOT BELONG TO THEM
AT ALL....HE NAMES THEY SIGNED ON THE ILLEGAL DOCUMENTS WAS NO**

**JACKSON DEMANDS JURY TRIAL**

JACKSON DEMANDS JURY TRIAL

LONGER WORKING FOR COMPANY **IT WAS SHUT DOWN LISTED BELOW
AND WAS NOT AUTHORIZED BY SECURITY'S EXCHANGE TO ASSIGN
ASSIGNMENTS ON CAMPANY'S ILLEGALLY AGAINST THE FEDERAL
LAWS VIOLATING SECURITY'S LAWS....**

YOU DO NOT MAKE ASSINGMENT OUT TO YOURSELF IF YOU OWN THE
ORIGINAL DEEDS BACKED BY SECURITYS OR WITHOUT SECURITY'S YOU
SHOW YOUR CANCELED CHECK YOU PAID FOR THE PROPERTY AS WELL AS
THE ORIGINAL NOTES AND LOAN DOCUMENTS WITH VALID SURVEYS BY
ORIGINAL LENDER....THIS DID NOT HAPPEN IN THIS CASE...

THEY COMMITED FRUAD UNDER SECURITY'S AND FRUAD UNDER RULE (60b)
USING A JUDGES THEY APPOINTED TO HELP THEM ON THESE
CASES...KNOWING THEY DID NOT OWN THE NOTES...THIS IS MAJOR
CORRUPTION AND CONSPIRACY'S TO KEEP THE CASES FROM BEING HEARD
BY JURY TRIAL AND PRIOR TO PROCESS OF SERVICE.... THE
AMOUNT OF DAMAGES IS YET TO BE DETERMAN BY JURY....FOR WHAT THEY
DID TO PLAINTIFF TO DATE MAKING FALSE CLAIMS THAT CAUSED HER
MAJOR DAMAGES AND PERSONAL INJURY'S DESTROYING HER HOME IN
CORRUPTION AND CONSPIRACY'S SO THEY COULD CASH IN ON WHAT SHE
OWNED BACKED BY POLICY'S AND SECURITY'S....THEY DEFENDANTS GMAC
MORTGAGE DID NOTE EVEN OWN THE NOTES...THIS COULD HAVE BEEN
VERIFIED BY THE SEC OR MERS...THEY DID NOT OWN THE PLAINTIFF NOTE
FROM THE VERY BEGINNNING FROM (2005-2012)...AND IS RESPONSIBLE FOR
MAJOR DAMAGES THEY KEPT HIDDEN UNTIL NOW...THEY MADE FALSE
CLAIMS ON A NOTE THEY DID NOT OWN BY LAW AND THEY KNEW THIS....

PLAINTIFF JACKSON NOTE WAS NOT CONVENTIONAL INS...WHICH ENTITLED
HER TO ALL OPTIONS WITH ALL OF HER ASSETS TO PREVENT
FORECLOSURED OR BANKRUPTCY HAD THEY NOT LIED MAKING FALSE
CLAIMS TO A NOTE AND PROPERTY THEY DID NOT OWN BY LAW...THEY
SHOULD BE PROSCUTED TO THE FULLUES EXTENT OF THE LAW FOR WHAT
THEY DID TO PLAINTIFF AND ALL THE OTHER VICTIMS IN A UNDERGROUND
BLACK MARKET CURRENCY RING ROBBING VICTIMS OF THEM HOMES AND
ASSETS UNDER FALSE PRETESNSE AS WELL AS THE GOVERNMENT AND
FEDERAL RESERVE ON BAIL OUT FUNDS TAX BREAKS AND TARP MONEY
THAT WAS SUPOSE TO HELP VICTIMS AND NOT THEM TO PROFIT OFF OF...

ROBBING VICTIMS UNDER FALSE PRETESE IS ILLEGAL AND AGAISNT THE
LAW THEY WERE NOT RECORDED ON A NEW DEED NEITHER WAS A NEW
ASSIGNMENT THE ORIGINALS NEVER HAPPEN BECAUSE THEY COULD NOT
JACKSON NOTE WAS BACKED BY SECURITY'S AND POLICY'S WHICH AND
UNDER A HUD SETTLEMENT STATEMENT FORM THAT GUARANTEED HER
HELP ON CONVENTIONAL UNINSURED NOTES/OR OTHER ASSETS....THE
DEFENDANTS CAUSED MAJOR DAMGES TO DATE...AND COVERED IT UP AND
NOW THE TRUTH IS OUT!

JACKSON DEMANDS JURY TRIAL

# **GMAC** Mortgage

P.O. Box 52052
Phoenix, AZ 85072

April 2, 2008

Corla Jackson
13230 Tom Gaston Rd
Mobile, AL 36695-0000

RE:  Property Address     : 13230 Tom Gaston Rd  Mobile, AL 36695-0000
     Account No.          : 0835002124
     Tracking No.         : 902022
     Date of Loss         : 3/13/2008

Dear Corla Jackson:

We realize how difficult a loss to your home can be, and we want to process your claim as quickly and efficiently as possible. Due to the status of your loan and investor requirements, we have the responsibility to ensure the damage is repaired. To assist in the claim-handling process, please submit the following items to our office:

1.  The insurance claim check(s) (SIGNED/ENDORSED BY ALL PARTIES LISTED ON THE CHECK(S).

2.  The enclosed *Homeowner's Statement* completed and signed by you.

3.  A copy of the insurance adjuster's detailed report or your contractor's detailed damage estimate for repairs.

4.  A copy of the signed contract between you and your contractor doing the repairs.

5.  The enclosed *Contractor Affidavit/Statement* needs to be completed and returned to our office once ALL REPAIRS HAVE BEEN COMPLETED.

Upon receipt of the fully endorsed insurance claim check and above required information, we will release a portion of the claim funds within 4-5 business days after receipt.  If all required items are not received, we are unable to proceed with a disbursement of the claim funds until the missing items are submitted.

Due to the amount of loss, partial funds will be released at various stages. After the first release of insurance funds, periodic property inspections will be needed to confirm repair progress. **FLORIDA PROPERTIES: Please contact our office 10 to 14 business days prior to needing additional funds to allow time for the property inspection.** NON-FLORIDA PROPERTIES: please contact our office 7-10 business days prior to needing additional funds.

If I may be of further assistance, please contact me at 1-866-354-7281.

Sincerely,
Insurance Claims Center
FAX!  (866)336-3811

GMAC TPA 13 (a)
HAZ6-NWCLMDQ

Enclosures
** BRE **

**JACKSON DEMANDS JURY TRIAL**



LOAN NUMBER:

STATE OF ALABAMA

COUNTY OF MOBILE

ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, OPTION ONE MORTGAGE CORPORATION (the "Assignor"), does hereby transfer, assign, and convey unto GMAC MORTGAGE, LLC (the "Assignee"), its successors, transferees, and assigns, all right, title and interest of said Assignor in and to that certain Mortgage executed by SINGLE WOMAN, to OPTION ONE MORTGAGE CORPORATION dated and filed for record in Book 5603, Page 1910, in the Probate Office of County, together with the note property described in said Mortgage, to the property described and all interest of the undersigned in and

It is expressly understood and agreed that said assignment of the said Mortgage is without warranty, representation or recourse.

IN WITNESS WHEREOF, said Assignor has set its signature this 19th day of June, 2008.

OPTION ONE MORTGAGE CORPORATION

By:  
      Brian D. McConnell  
      Assistant Secretary

STATE OF CALIFORNIA

COUNTY OF ORANGE }

I, R.A. Salazar, a Notary Public in and for the said County and State, do hereby certify that Brian D McConnell, whose name as Assistant Secretary of OPTION ONE MORTGAGE CORPORATION, is signed to the instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he/she, as such officer, and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this 19th day of June, 2008.

Notary Public

My Commission Expires:08/02/2011

R. A. SALAZAR  
Commission # 1757905  
Notary Public - California  
Orange County  
My Comm Expires Aug 2 2011

This instrument prepared by:  
Callum McCullough  
Sirote & Permutt, P.C.  
P. O. Box 55727  
Birmingham, AL  35255

**EXHIBITS ALSO ATTACHED** _____

**JACKSON DEMANDS JURY TRIAL**

**JACKSON DEMANDS JURY TRIAL**

They Could Note Even Spell Brian D. McConnell...And Option One Mortgage Was Closed At This Time...The Documents Were Prepared By Defendants Signing Over Notes To Themselves With False Affidavit's Without Originals Or Copy Of Their Canceled Checks To Prove They Purchased Loans Or Was Assigned Notes...If They Owned The Notes Why Wasn't It Recorded Or Why Would They Have To Get False Affidavit's And Black Allonges Not Showing The Currency Amount They Purchased Home For...They Did Not Even Own Jackson Note When They Filed The First False Claim And Then Came Back With Fake Documents To Rob Her Again...And Hung Their Own Selves Because They Did Not Own The Note When They Filed The First Claim Committing Fraud Under Rule (60b) And Security's Fraud!

JACKSON KEPT GOING AFTER THEM AND THEY TURNED THIS INTO A HATE CRIME....HATE CRIMES ARE NOT JUST FOR COLORED PEOPLE THEY CAN BE DONE TO ALL RACES IF THEY GO AFTER CROOKS LIKE THIS...THEY USE PEOPLE TO COMMIT HATE CRIMES TO HELP CORRUPT CASES IN CONSPIRACY'S...AND THEY USE JUDGES THAT HELP THEM IN EXCHANGE FOR PERSONAL GAIN AND FAVOR AND AVOID THE GOOD JUDGES THAT DO NOT TAKE PERSONAL GAIN AND FAVOR VERSUS FOLLOWING STATE AND FEDERAL LAWS....THEY CHOSE THEIR AFFILIATES TO GO AROUND NONE CROOKED JUDGES AND THAT IS HOW THEY DID ALL OF THIS!...

NO GOOD JUDGES WOULD HAVE ALLOWED THE FEDERAL LAWS TO BE BROKEN LIKE WHAT HAPPEN TO THE PLAINTIFF TO DATE, AFTER SHE KEPT FILING MOTION AFTER MOTION AFTER MOTION AND COMPALAINTS AND WAS HARASSED AND FALSELY ARRRESTED (2) TIMES IN A HATE CROME AND IF SHE DID NOT PAY A LAWYER SHE WOULD NOT HAVE BEEN AQUITED OF ALL THE FALSE CHARGES THAT THEY CONSPIRED AND PUT BEFORE HER TO GET RID OF HER BEFORE THEY ALL GOT EXPOSED IN THIS UNDERGROUND BLACK MARKET CURRENCY RING VIOLATING FEDERAL AND STATES LAWS....TO DATE!....

THIS IS MAJOR CORRUPTION THEY MADE FALSE CLAIMS TO CAUSE JACKSON HARDSHIP DAMAGES AND INJURRY'S WHEN THEY DID NOT EVEN OWN THE NOTE AND HER NOTE WAS BACKED BY POLICY'S THEY LIED ABOUT SAYING REPAIRS WERE COMPLETED IN WRITING WHEN THEY WERE NOT AND WAS TOLD BY GOVERNMENTAL OFFICIALS AND STRUCTURAL ENGINEERS.....!

HOW DID THEY BACK THIS HOUSE BY SECURITY WHEN THE VALUE WAS NEVER PUT BACK TO ITS ORIGINAL POSITION FOR THE DOLLAR AMOUNT THEY SAID THE HOME WAS WORTH...THAT IS WHY THEY REFUSED TO EXCKSIE THE APPRAISAL CLAUSE ON THE HOME THEY KNEW THEY HAD COMMITTED FRAUD UNDER RULE (60b) AND NEW DISCOVERY WAS DISCOVERED LATER IN THEIR OWN AFFIDAVATE ABOVE!....

**JACKSON DEMANDS JURY TRIAL**

**JACKSON DEMANDS JURY TRIAL**

## Quiet Title

An **action to quiet title** is a lawsuit brought in a court having jurisdiction over land disputes, in order to establish a party's title to as against anyone and everyone, and thus "quiet" any challenges or title. It comprises a complaint that the ownership (title) of a parcel of or other real property is defective in some fashion, typically where title to the property is ambiguous. A typical ground for complaint includes the **fraudulent conveyance** of a property, **perhaps by a forged deed or under coercion.**

Unlike acquisition through a deed of sale, a quiet title action will give the party seeking such relief no cause of action against previous owners of the property.

This Caused Jackson The Plaintiff Major Damages…To Date!
**Total Exhibits And Documents Filed _____**

WHEREFORE,

This the 18, day of January 2012

Respectfully submitted,

Plaintiff: _____
Corla Jackson
13230 Tom Gaston Road
Mobile, Alabama. 36695
Tel. (251) 554-1785
Fax. (251) 865-0735

**JACKSON DEMANDS JURY TRIAL**

**CONTINUED – 2005-12-06-1428**

**DESCRIPTION**

| QNTY | UNIT | RCV | DEPREC. | ACV | REVIEWED |
|------|------|-----|---------|-----|----------|

See additional pictures for verification of damages.

Hardwood floors
Lights- water from leaking roof inside electricals and outlets

Replacements

NuTone intercom system
Security Camera's
Temporary repairs
New Tarp (see roofing pictures)

X— The support is bent \ warped and has shifted causing major structural damage to the roof and dwelling throughout.

**Room Totals: 2005-12-06-1428**

|  | 27,535.92 | 0.00 | 27,535.92 |
|--|-----------|------|-----------|

**Grand Total Areas:**

| | | | | | |
|--|--|--|--|--|--|
| 0.00 | SF Walls | 0.00 | SF Ceiling | 0.00 | SF Walls & Ceiling |
| 0.00 | SF Floor | 0.00 | SY Flooring | 0.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 0.00 | LF Ceil. Perimeter |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 0.00 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | 0.00 | Area of Face 1 |

JACKSON, CORLA

JACKSON, CORLA

JACKSON DEMANDS JURY TRIAL


# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January 2012, I filed the foregoing document with the clerk of court, and deposited a copy of the same, registered mail to:

Registered Agent: GMAC Mortgage LLC

CSC-LAWYERS INCORPORATION SERVICES INCORPOERATED
150 SOUTH PERRY STREET
MONTGOMERY, ALABAMA. 36104

PRINCIPAL OFFICE: GMAC MORTGAGE
100 WITMER RAOD
HORSHAM, PA. 19044

**C.C. COPIES TO:**                                    **NOTARY**
PRESIDENT & VICE PRESIDENT OF THE UNITED STATES
UNITES STATES ATTORNEY GENERAL
GOVERNOR OF ALABAMA
ATTORNEY GENERAL OF ALABAMA
SECURITY'S EXCHANGE
HILLERY CLINTON
GOVERNOR RICK PERRY
BARRY FREEDMAN
IVAN PARKER
L.DANIEL MIMS
CNN NEWS
OPRAH WHINFREY STATION
TYLER PERRY PRODUCTIONS
STEPHEN STILBERG

OTHER NEWS STATIONS TO BE ADDED

Dated this 18, day of January, 2012
**JACKSON DEMAND BY JURY TRIAL**
NUMBER OF DOCUMENTS FILED WITH
CASE LAWS ATTACHED (1-2) PAGES

Corla Jackson                1/18/2012
13230 Tom Gaston Road
Mobile, Alabama. 36695
251.554.1785. 251.865.0735
Total Documents Filed: _____

State of Alabama
County of Mobile
Expiration 11-3-12

STATE OF ALA. MOBILE CO.
I HEREBY CERTIFY THE
PLEADING WAS FILED
2012 JAN 18 PM 4: 33
CLERK CIRCUIT COURT

JACKSON DEMANDS JURY TRIAL

# Exhibits & Case Laws

Number Of Pages:_____

As a result of the foregoing transaction, Smith and others ultimately initiated litigation against Walden in the Montgomery Circuit Court (case no. CV–95–1093), seeking a judgment declaring the ownership of certain property. Walden filed several counterclaims against Smith, seeking damages for default on a promissory note, breach of a joint-venture agreement, and fraudulent suppression. Because a detailed summary of the background of these disputes was provided in Walden v. Hutchinson, 987 So.2d 1109 (Ala.2007), from which we quote extensively below, we use the terms defined therein as defined terms in this opinion.



AlaFile E-Notice

57-CV-2008-000362.00

Judge: ALBERT L JOHNSON

To:  WOOTEN NICHOLAS HEATH
     nhwooten@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

PHYLLIS HORACE VS. LASALLE BANK NATIONAL ASSOCIATION, ET AL
57-CV-2008-000362.00

The following matter was FILED on 1/13/2011 5:43:39 PM

**C001 HORACE PHYLLIS**

MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

[Attorney: DICKSON NATHAN ANDREW II]

Notice Date:    1/13/2011 5:43:39 PM

KATHY S. COULTER
CIRCUIT COURT CLERK
RUSSELL COUNTY, ALABAMA
RUSSELL COUNTY JUDICIAL CENTER
PHENIX CITY, AL 36867

334-298-0516
kathy.coulter@alacourt.gov

**STATE OF ALABAMA**
Unified Judicial System

Revised 3/5/08

57-RUSSELL          ☐ District Court   ☑ Circuit Court

*(ELECTRONICALLY FILED)*
*1-13-2011 5:42 PM*
*CV-2008-000-82.00*
*CIRCUIT COURT OF*
*RUSSELL COUNTY, ALABAMA*
*KATHY S. COULTER, CLERK*

Case
CV20

| | |
|---|---|
| PHYLLIS HORACE VS. LASALLE BANK NATIONAL ASSOCIATION, ET AL | **CIVIL MOTION COVER SHEET** Name of Filing Party: C001 - HORACE PHYLLIS |

Name, Address, and Telephone No. of Attorney or Party. If Not Represented.

NATHAN A. DICKSON

POST OFFICE BOX 350
UNION SPRINGS, AL 36089

Attorney Bar No.: DIC031

☐ Oral Arguments Requested

## TYPE OF MOTION

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| | ☐ Consolidation |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during Trial) |
| ☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Disburse Funds |
| | ☐ Extension of Time |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ In Limine |
| | ☐ Joinder |
| ☐ Motion to Intervene ($297.00) | ☐ More Definite Statement |
| | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| ☐ Other _____ | ☐ New Trial |
| pursuant to Rule _____ ($50.00) | ☐ Objection of Exemptions Claimed |
| _____ | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| ☐ Local Court Costs $ _____ | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☑ Other ___ Memorandum in support of summary pursuant to Rule judgment ___ (Subject to Filing Fee) |

| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees) ☐ | Date: 1/13/2011 5:43:16 PM | Signature of Attorney or Party: /s NATHAN A. DICKSON |

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.

**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

ELECTRONICALLY FILED
... PM
... 2008
... OF
... COURT ... OF
KATHY S. COULTER, CLERK

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

PHYLLIS HORACE,

        PLAINTIFF,

VS.

LASALLE BANK NATIONAL ASSOCIATION
as Trustee for Certificate Holders of
BEAR STEARNS ASSET BACKED SECURITIES I, LLC
asset backed certificates, series 2006-EC2;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., ENCORE CREDIT CORP.,
EMC MORTGAGE CO., and BANK OF AMERICA,
As successor-in-interest to Lasalle Bank National
Assn.,

        DEFENDANTS.

CASE NUMBER:

CV-2008-362

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Phyllis Horace, through counsel, submits this memorandum of law in support of her motion for summary judgment on the issue of standing as to Defendant LaSalle Bank National Association ("LaSalle"). Plaintiff's Complaint claims that LaSalle did not have possession of the mortgage note when it notified her that foreclosure was forthcoming. Namely, LaSalle had no — and cannot have any — authority to institute foreclosure proceedings because LaSalle is not entitled to the money secured by the promissory note.

### **INTRODUCTION**

On November 11, 2005, Plaintiff borrowed $283,500.00 for the purchase of property at 3745 Knowles Road in Phenix City, Alabama. The loan was secured by a mortgage to the lender

Encore Credit Corp ("Encore"). The mortgage was recorded in the office of the probate judge on

August 11, 2006. At some unknown time after the signing of the mortgage documents, Encore

executed a blank endorsement.[1] No other assignments or endorsements are present in the record

provided to the Plaintiff.[2]

On October 16, 2008, LaSalle sent a "Notice of Acceleration of Promissory Note and

Mortgage" to Plaintiff. Plaintiff then filed the instant cause. The court enjoined the foreclosure

by order entered on November 20, 2008. Plaintiff currently lives in the subject property. Plaintiff

comes before the court today requesting a judgment that the foreclosure proceeding be

permanently enjoined as to the defendant Trustee LaSalle acting for its beneficiary trust (and

Bank of America as the successor-in-interest), the only entity to give notice of foreclosure and

for summary judgment on her claims related to the wrongful foreclosure of this real property.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when "there is no genuine issue as to any material

fact and ... the moving party is entitled to a judgment as a matter of law." ALA. R. CIV. PROC.

56(c)(3), *Young v. La Quinta Inns, Inc.*, 682 So.2d 402 (Ala.1996). A court considering a motion

for summary judgment will view the record in the light most favorable to the nonmoving party,

*Hurst v. Alabama Power Co.*, 675 So.2d 397 (Ala.1996), *Fuqua v. Ingersoll-Rand Co.*, 591

So.2d 486 (Ala. 1991); will accord the nonmoving party all reasonable favorable inferences from

the evidence, *Fuqua, supra, Aldridge v. Valley Steel Constr., Inc.*, 603 So.2d 981 (Ala. 1992);

and will resolve all reasonable doubts against the moving party. *Ex parte Brislin*, 719 So.2d 185

(Ala.1998).

---

1 Bates #: Horace v. LaSalle 29.
2 Bates #: Horace v. LaSalle 2.

## III. ARGUMENTS

### A. THE DEFENDANT TRUST HAS NO STANDING TO FORECLOSE BECAUSE THERE HAS BEEN NO VALID ENFORCEABLE ASSIGNMENT TO THE TRUSTEE OF THE TRUST

#### A-1.The Defendant Trust Is A New York Common Law Trust Governed By New York Law Based On Its Trust Agreement

The October 16, 2008 Notice sent to Plaintiff was on behalf of the legal entity,"LaSalle Bank National Association, as Trustee for Certificate holders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2006-EC2" (hereafter the "Trust"). LaSalle is not the originator of the mortgage, the servicer, or even a bank. Instead, this entity is a New York common law trust created by an agreement known as "Pooling and Service Agreement." Allegedly, the Plaintiff's loan, along with other loans, were pooled into a trust and converted into mortgage-backed securities ("MBS") that can be bought and sold by investors — a process known as securitization. The underlying promissory notes of each and every mortgage held by the Trust serve as generate a potential income stream for investors.

The Trust allegedly holding the Plaintiff's note was created on or about February 1, 2006, and is identified as "LaSalle Bank National Association, as Trustee for Certificate holders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2006-EC2."The Trust, by its terms, set a "closing date" of February 28, 2006.The terms of the Trust are contained in the Pooling and Servicing Agreement ("PSA" or the "Trust agreement"), which is an approximately 400-page document that creates the Trust and defines the rights, duties and

obligations of the parties to the Trust Agreement.[3]  The PSA is filed under oath with the

Securities and Exchange Commission and is attached to LaSalle's motion for summary judgment

as Exhibit 1.  The PSA also incorporates by reference a separate document called the Mortgage

Loan Purchase Agreement ("MLPA"). These various documents, and hence the acquisition of

the mortgage assets for the Trust, are governed under the law of the State of New York pursuant

to section 11.03 of the PSA (found at page 133 of 397 of the PSA).

The Trust, being sued through its trustee, is a New York Corporate Trust formed to act as

a "REMIC" trust (defined below) pursuant to the U.S. Internal Revenue Code ("IRC").  Pursuant

to the terms of the Trust and the applicable Internal Revenue Service ("IRS") regulations adopted

and incorporated into the terms of the Trust, the "closing date" of the Trust (February 28, 2006)

is also the "Startup Day" for the Trust under the REMIC provisions of the IRC.  The Startup Day

is significant because the IRC ties the limitations upon which a REMIC trust may be receive its

assets to this date.  The relevant portion of the IRC addressing the definition of a REMIC is:

> (a) General rule. For purposes of this title, the terms 'real estate mortgage
> investment conduit' and 'REMIC' mean any entity—
>     (1) to which an election to be treated as a REMIC applies for the taxable year
> and all prior taxable years,
>     (2) all of the interests in which are regular interests or residual interests,
>     (3) which has 1 (and only 1) class of residual interests (and all distributions, if
> any, with respect to such interests are pro rata),
>     (4) *as of the close of the 3rd month beginning after the startup day* and at all
> times thereafter, substantially all of the assets of which consist of qualified
> mortgages and permitted investments.

26 U.S.C.S. § 860D (emphasis added).

---

3It is settled that the duties and powers of a trustee are defined by the terms of the trust
agreement and are tempered only by the fiduciary obligation of loyalty to the beneficiaries (see,
United States Trust Co. v First Nat'l City Bank, 57 A.D.2d 285, 295-296, aff'd 45 NY2d 869;
Restatement [Second] of Trusts § 186, comments a, d). *See In re* IBJ Schroder Bank & Trust
Co., 271 A.D.2d 322 (N.Y. App. Div. 1st Dep't 2000)

The IRC also provides definitions of prohibited transactions and prohibited contributions

which are relevant to this case as well.  In the context of this case, the relevant statute is the

definition of *prohibited contributions* which is as follows:

> 26 U.S.C. 860G(d)(1) states:
>
> Except as provided in section 860G(d)(2), "if any amount is contributed to a
> REMIC after the startup day, there is hereby imposed a tax for the taxable year of
> the REMIC in which the contribution is received equal to 100 percent of the
> amount of such contribution."
>
> 26 U.S.C. 860G(d)(2) states:
> (2) Exceptions. Paragraph (1) shall not apply to any contribution which is made in
> cash and is described in any of the following subparagraphs:
>     (A) Any contribution to facilitate a clean-up call (as defined in regulations) or a
> qualified liquidation.
>     (B) Any payment in the nature of a guarantee.
>     (C) Any contribution during the 3-month period beginning on the startup day.
>     (D) Any contribution to a qualified reserve fund by any holder of a residual
> interest in the REMIC.
>     (E) Any other contribution permitted in regulations.

The PSA (primarily in section 9.12) addresses these sections of the IRC by obliging the

parties to the Trust to avoid any action which might jeopardize the tax status of any REMIC

and/or impose any tax upon the Trust for prohibited contributions or prohibited transactions.

These PSA provisions are important to the court's analysis of the facts in this case because of the

interplay between the New York trust law, the IRC's REMIC provisions, and the PSA's

incorporation of the IRC REMIC provisions.

## A-2. The Trust Instrument/PSA Sets Forth A Specific Time, Method And Manner Of Funding The Trust

The Trust seeking to foreclose on the Plaintiff has included in the terms of its Trust

agreement (the PSA) a specific time, method and manner of funding the Trust with its assets.

The *most critical* time is the Trust's closing date, February 28, 2006.[4]  According to the terms of

the PSA, all of the assets of the Trust were to be transferred to the Trust on or before the closing

date.[5]  This requirement is to ensure that the Trust will receive REMIC status and thus be

exempt from federal income taxation.  Section 2.02(a) of the PSA provides for a window of 90

days after the Trust closing date in which the Trust may complete any missing paperwork or

finalize any documents necessary to complete the transfers of assets from the depositor to the

Trust.[6]  Thus, for an asset to become an asset of the Trust it *must* have been transferred to the

Trust within the time set forth in the PSA.  The additional 90 days in the timeline requirement is

incorporated from the REMIC provisions of the IRC to provide a "clean-up period" for a REMIC

to complete the documents associated with the transfers of assets to a REMIC after the startup

day (which is also the Trust closing date).  Therefore, according to the plain terms of the Trust

agreement in this case, the closing date/startup date was February 28, 2006 and the last day for

transfer of assets into the Trust was May 29, 2006.

## B. THE TRUST AGREEMENT PROVIDES THE ONLY MANNER IN WHICH ASSETS MAY BE PROPERLY TRANSFERRED TO THE TRUST AND ANY ACT IN CONTRAVENTION OF THE TRUST AGREEMENT IS VOID

### B-1.  Transfer of Assets to the Trust Pursuant to the Trust Instrument/PSA

As a generic matter, there are several methods by which the underlying assets of the

Trust, specifically the individual promissory notes, might be transferred or conveyed.  A trust's

ability to transact is restricted to the actions authorized by its trust documents.  In this case, the

Trust documents permit only one specific method of transfer to the Trust.  That method is set

forth in Section 2.01 of the PSA:

---

4 http://sec.gov/Archives/edgar/data/1352655/000088237706000801/d431341.htm (last viewed 1/7/10) **This date is defined in the Trust instrument at page 25 of 397 in exhibit 1.**

5  This requirement is found at Section 2.01 on page 56 of 397.
6  This requirement is found at page 58 of 397.

Pursuant to the Mortgage Loan Purchase Agreement, each Seller sold, transferred, assigned, set over and otherwise conveyed to the Depositor, without recourse, all the right, title and interest of such Seller in and to the assets sold by it in the Trust Fund....

In connection with such sale, the Depositor has delivered to, and deposited with, the Trustee or the Custodian, as its agent, the following documents or instruments with respect to each Mortgage Loan so assigned: (i) the original Mortgage Note, including any riders thereto, endorsed without recourse (A) in blank or to the order of *"LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2006-EC2,"* or (B) in the case of a loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee,

The analysis of this transfer language requires the court to consider each part. In the second paragraph of the language in the Trust Agreement, the first statement is one of transfer, stating *"the Depositor has delivered to and deposited with the Trustee or the Custodian the following documents"*. The key document is the original mortgage note, which requires mandatory endorsements found in this language: *"the original mortgage note....endorsed without recourse"* followed by two alternatives which are phrased in the either/or format. The first labeled "A" states *"in blank or to the order of "LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities I LLC ,Asset-Backed Certificates, Series 2006-EC2."* The second possibility stated in "B" provides as the "or" proposition for transfer the following statement *"in the case of a loan registered on the MERS system, in blank..."* In each case, the affirmative language of the Trust agreement places a burden on the depositor to make a valid legal transfer in the terms required by the Trust instrument. The key language in the entire paragraph is the final statement trailing the "either/or" language of A & B which reads: *"and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee"*.

- 7 -

Stacked upon the top of this requirement of an unbroken chain of endorsements is the

requirement of certification of the final contents of the collateral file for the benefit of the Trust.

This requirement is found at Exhibit 1 to the MLPA (Mortgage Loan Purchase Agreement),

which is an attachment to and incorporated as a part of the PSA in Section 2.01. This Document

is found at Horace 391 and states as follows:

> With respect to each Mortgage Loan, the Mortgage File shall include each of the
> following items, which shall be available for inspection by the Purchaser or its
> designee, and which shall be delivered to the Purchaser or its designee pursuant to
> the terms of this Agreement.
>
> (a) The original Mortgage Note, including any riders thereto, endorsed without
> recourse to the order of *"LaSalle Bank National Association, as Trustee for
> certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed
> Certificates, Series 2006-EC2,"* and showing to the extent available to the related
> Mortgage Loan Seller an unbroken chain of endorsements from the original payee
> thereof to the Person endorsing it to the Trustee;

The foregoing requirement demonstrates clearly that while the parties to the securitization made

provisions whereby promissory notes for this Trust might be delivered in blank to the Trustee,

there were two requirements that were *mandatory*. First, all notes sold to the Trust were required

to have an unbroken chain of endorsements from the original payee to the person endorsing it to

the Trustee. This requirement stems from a particular business concern in securitization, namely

to evidence that there was in fact a "true sale" of the securitized assets and that they are in no

way still property of the originator, sponsor, or depositor, and thus not subject to the claims of

creditors of the originator, sponsor, or depositor. A fact testified to by the Plaintiff's

securitization expert, Thomas J. Adams, who explained under examination by Counsel for the

Trust as follows:

> Page 83
> 17 Q So what then I guess with respect to
> 18 notes is -- what's the purpose then of having a
> 19 chain of endorsements, if what I'm concerned

```
20 about is who currently owns it?
21 A My understanding is that it helps
22 establish how you came to possess it.
23 Q Okay. And why does that matter?
Page 84
1 A From an investor perspective in a
2 mortgage backed securities governed by a pooling
3 and servicing agreement, you want confidence
4 that the collateral for the file is properly
5 conveyed to it, that -- that the -- that they
6 will have the right to establish their ownership
7 as investors in that collateral.
```

Second, there was a requirement that ultimately, within 90 days of the Trust closing date,

the actual promissory note must be endorsed over to the trustee for the specific trust to

effectively transfer the asset into the trust and therefore make the Horace promissory note Trust

property. This requirement finds support in logic and law and is, in fact, the ancient and settled

law of New York on this issue.

## B-2. New York Law Governs The Mandatory Requirements To Effectively Transfer An Asset To A Trust

It is not contested that securitization trusts, such as the defendant, are subject to

the common law of New York.[7]  New York's trust law is ancient and settled.  There are

a few principles of New York Trust law that are particularly important to the analysis of

whether any particular asset is an asset of a given trust.  Under New York law, the

analysis of whether an asset is trust property is determined under the law of gifts.[8]  In

order to have a valid inter vivos gift, there must be a delivery of the gift (either by a

---

[7] As early as 1935, in Burgoyne v. James, 282 N.Y.S. 18, 21 (1935), the New York Supreme Court recognized that business trusts, also known as ""Massachusetts trusts",",are deemed to be common law trusts. See also In re Estate of Plotkin, 290 N.Y.S.2d 46, 49 (N.Y. Sur. 1968) (characterizing common stock trust funds as ""common law trust[s]""). Other jurisdictions are in accord. See, e.g., Mayfield v. First 'Nat'l Bank of Chattanooga, 137 F.2d 1013 (6th Cir. 1943) (applying common law trust principles to a pool of mortgage participation certificate holders).
[8] ""In the case of a trust where there is a trustee other than the grantor, transfer will be governed by the existing rules as to intent and delivery (the elements of a gift)""In re Becker, 2004 N.Y. Slip Op. 51773U, 4 (N.Y. Sur. Ct. 2004).

-9-

physical delivery of the subject of the gift) or a constructive or symbolic delivery (such

as by an instrument of gift) sufficient to divest the donor of dominion and control over

the property[9] and "what is sufficient to constitute delivery 'must be tailored to suit the

circumstances of the case'".[10]  The delivery rule requires that "'[the] delivery necessary

to consummate a gift must be as perfect as the nature of the property and the

circumstances and surroundings of the parties will reasonably permit.'"[11]

"Under New York law there are four essential elements of a valid trust of

personal property: (1) A designated beneficiary; (2) a designated trustee, who must not

be the beneficiary; (3) a fund or other property sufficiently designated or identified to

enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other

property, or of a legal assignment thereof to the trustee, with the intention of passing

legal title thereto to him as trustee."[12] There is no trust under the common law until there

is a valid delivery of the asset in question to the Trust.[13]  If the trust fails to acquire the

---

[9]   (see, Matter of *Szabo*, 10 N.Y.2d 94, 98-99, *supra*; Speelman v Pascal, 10 N.Y.2d 313, 318-320, supra; Beaver v. Beaver, 117 N.Y. 421, 428-429, supra; Matter of Cohn, 187 App. Div. 392, 395) as cited in Gruen v. Gruen, 68 N.Y.2d 48, 56 (N.Y. 1986).
[10](Matter of *Szabo*, supra, at p. 98).
[11]   (id.; Vincent v Rix, 248 N.Y. 76, 83; Matter of Van Alstyne, supra, at p 309; see, Beaver v. Beaver, supra, at p 428) as cited in Gruen v. Gruen, 68 N.Y.2d 48, 56-57 (N.Y. 1986) .

12   Brown v. Spohr, 180 N.Y. 201, 209-210 (N.Y. 1904).
13  Until the delivery to the trustee is performed by the settlor, or until the securities are definitely ascertained by the declaration of the settlor, when he himself is the trustee, no rights of the beneficiary in a trust created without consideration arise (cf. Riegel v. Central Hanover Bank & Trust Co., 266 App. Div. 586; Matter of Gurlitz [Lynde], 105 Misc 30, aff'd 190 App. Div. 907, supra; Marx v. Marx, 5 Misc 2d 42) as cited in Sussman v. Sussman, 61 A.D.2d 838 (N.Y. App. Div. 2d Dep't 1978).

property, then there is *no trust* over that property which may be enforced.[14] An attempt to convey to a trust will fail if there is no designated beneficiary in the conveyance.[15]

In the context of mortgage-backed securitization, it is clear that registration of the notes and mortgages in the name of the trustee for the trust is necessary for effective transfer to the trust. Within the Statutes of New York governing Trusts, Estates Powers and Trusts Law (EPTL) section 7-2.1(c) authorizes investment trusts to acquire real or personal property "in the name of the trust as such name is designated in the instrument creating said trust." Further, the actual contracts of the parties, which include the custodial agreements, the mortgage loan purchase agreements, and the trust instrument known as the "pooling and servicing agreement," prescribe a very specific method of transfer of the notes and mortgages to the Trust. Because the method of transfer is set forth in the Trust instrument, it is not subject to any variance or exception.[16] The Trust documents require that the promissory notes and mortgages be transferred to the Trustee, which under New York trust law requires valid delivery. The question then arises — "What constitutes valid delivery to the Trustee?"

---

14 In an action against the individual defendant as trustee, based on the theory of breach of fiduciary obligation, the complaint was properly dismissed on the ground that he had acquired no title or separate control of the goods and, hence, there was no actual trust over the property to breach. Kermani v. Liberty Mut. Ins. Co., 4 A.D.2d 603 (N.Y. App. Div. 3d Dep't 1957).

15 Wells Fargo Bank v. Farmer, 2008 N.Y. Misc Lexis 3248.

16 Courts may neither ignore the actual provisions of transaction documents nor create contractual remedies that were omitted from the governing contracts by the contracting parties. *See Schmidt v. Magnetic Head Corp.*, 468 N.Y.S.2d 649, 654 (N.Y. App.Div. 1983) (""It is fundamental that courts enforce contracts and do not rewrite them . . . An obligation undertaken by one of the parties that is intended as a promise . . . should be expressed as such, and not left to implication."" (citations omitted)); *Morlee Sales Corp. v. Manufacturers Trust Co.*, 172 N.E.2d 280, 282 (N.Y. 1961) (""[T]he courts may not by construction add or excise terms . . . and thereby 'make a new contract for the parties under the guise of interpret[ation].'"" (quoting *Heller v. Pope*, 250 N.E. 881, 882 (N.Y. 1928))

When the requirements of transfer to the trustee are viewed in the context of the corporate or business trust indenture, more information about compliance with these requirements becomes apparent. One must first understand that

> "[t]he corporate trustee has very little in common with the ordinary trustee . . . . The trustee under a corporate indenture . . . has his [or her] rights and duties defined, not by the fiduciary relationship, but exclusively by the terms of the agreement. His [or her] status is more that of a stakeholder than one of a trustee."[17]

Indeed, "[a]n indenture trustee is unlike the ordinary trustee. In contrast with the latter, some cases have confined the duties of the indenture trustee to those set forth in the indenture."[18] The indenture trustee, it has been said, resembles a stakeholder whose obligations are defined by the terms of the indenture agreement.[19] Moreover,"[i]t is settled that the duties and powers of a trustee are defined by the terms of the trust agreement and are tempered only by the fiduciary obligation of loyalty to the beneficiaries".[20]

The clear import of these cases and statutes is that the delivery of an asset to a trustee under the terms of a corporate indenture requires strict compliance with the mandatory transfer terms of the trust indenture. Thus the Trustee in this case can only take delivery in strict compliance with the terms of the PSA/Trust document. Further, given that New York Estates Powers and Trusts Law section 7-2.1(c) authorizes a trustee to acquire property "in the name of the trust as such name is designated in the

---

[17] AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co., 2008 N.Y. Slip Op. 5766, 7 (N.Y. 2008)

[18] Green v. Title Guarantee & Trust Co., 223 A.D. 12, 227 N.Y.S. 252 (1st Dept.), aff'd, 248 N.Y. 627 (1928); Hazzard v. Chase National Bank, 159 Misc. 57, 287 N.Y.S. 541 (Sup. Ct. 1936), aff'd, 257 A.D. 950, 14 N.Y.S.2d 147 (1st Dept.), aff'd, 282 N.Y. 652, cert. denied, 311 U.S. 708 (1940).

[19] See Meckel v. Continental Resources, 758 F.2d 811, 816 (2d Cir. 1985) as cited in Ambac Indem. Corp. v. Bankers Trust Co., 151 Misc. 2d 334, 336 (N.Y. Sup. Ct. 1991).

[20] see, United States Trust Co. v First Nat'l City Bank, 57 A.D.2d 285, 295-296, aff'd 45 NY2d 869; Restatement [Second] of Trusts § 186, comments a, d) as cited in In re IBJ Schroder Bank & Trust Co., 271 A.D.2d 322 (N.Y. App. Div. 1st Dep't 2000).

instrument creating said trust property," there should be little doubt that for transfer to an trustee to be effective, the property must be registered in the name of the trustee *for the particular trust.* Trust property cannot be, as the Defendant argues, held with incomplete endorsements and assignments that do not indicate that the property is held in trust by a trustee for a specific beneficiary trust. In fact, it is clear in the law of New York that an attempt to transfer to a trust which fails to specify both a trustee and a beneficiary is ineffective as a conveyance to the Trust. *"The failure to name a beneficiary for the Trustee renders the assignment without merit."*[21]

This position is further supported logically in the common law of New York by the following propositions:

(1) "Until the delivery to the trustee is performed by the settlor, or until the securities are definitely ascertained by the declaration of the settlor, when he himself is the trustee, no rights of the beneficiary in a trust created without consideration arise".[22]

(2) The delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit; there must be a change of dominion and ownership; intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given.[23] It is the consummation of the donor's intent to give that completes the transaction. Intention alone, no matter how fully established, is of no avail

---

[21] Wells Fargo Bank, N.A. v. Farmer, 2008 NY Slip Op 51133U, 6 (N.Y. Sup. Ct. 2008)
[22] (cf. Riegel v. Central Hanover Bank & Trust Co., 266 App. Div. 586; Matter of Gurlitz [Lynde], 105 Misc. 30, aff'd 190 App. Div. 907, supra; Marx v. Marx, 5 Misc 2d 42) as cited in Sussman v. Sussman, 61 A.D.2d 838 (N.Y. App. Div. 2d Dep't 1978).
[23] Vincent v. Putnam, 248 N.Y. 76, 82-84 (N.Y. 1928).

without the consummated act of delivery.[24]  How could one logically argue that

delivering a promissory note endorsed in blank (making it bearer paper) into a trustee's

vault is "delivery beyond the authority and control of the donor" when the vault is

managed by the agent of the donor?  If the donor were to claim that the promissory note

were its property, not the trustee's, there would be no evidentiary basis for the trustee to

claim ownership.  Accordingly, New York law expressly requires that for property to be

validly delivered to a trust, the property must pass completely out of the control of the

donor (and its agents):

> "If the donor delivers the property to the third person simply for the purpose of
> his delivering it to the donee as the agent of the donor, the gift is not complete
> until the property has actually been delivered to the donee. Such a delivery is not
> absolute, for the ordinary principle of agency applies, by which the donor can
> revoke the authority of the agent, and resume possession of the property, at any
> time before the authority is executed."[25]

Another case addressing this issue holds that "In order that delivery to a third person

shall be effective, he must be the agent of the donee. Delivery to an agent of the donor is

ineffective, as the agency could be terminated before delivery to the intended donee."[26]

Trustees for securitizations often occupy many roles simultaneously and

conflictingly both as document custodians and trustees for myriad thousands of

securitizations as well as for various parties who are active in the securitization process

including originators, servicers, sponsors and depositors.  Accordingly, it is

inconceivable that anything other than registration into "the name of the trust as such

---

[24]Phillippsen v. Emigrant Indus.Sav. Bank, 86 N.Y.S.2d 133, 137-138 (N.Y. Sup. Ct. 1948). (*Beaver v. Beaver,
supra,* 117 N.Y. 421, 428, 22 N.E. 940, 941, 6 L.R.A. 403, 15 Am.St.Rep. 531).

[25] (See, also, Grant Trust & Savings Co. v. Tucker, 49 Ind. App. 345; Furenes v. Eide, 109 Ia. 511; Dickeschied v.
Exchange Bank, 28 W. Va. 340; Love v. Francis, 63 Mich. 181; [**428] Merchant v. Building Co. [***15] , 17
Ohio Circuit Ct. 190.)

[26] In re Nat'l Commer. Bank & Trust Co., 257 A.D. 868, 869-870 (N.Y. App. Div. 3d Dep't 1939) citing Vincent v.
Rix, supra v. Rix, supra; Bump v. Pratt, 84 Hun, 201.

name is designated in the instrument creating said trust property"27 could ever qualify

as delivery to any particular securitization trust. Absent such registration, there would

be nothing that would indicate which of thousands of trusts in the care of a trustee a

particular promissory note might belong to or if it were the personal property of the

trustee itself. Absent such registration, a promissory note would simply be bearer paper,

and thus the property of anyone who obtained possession of it. Further, if anything less

constituted delivery, why are our courts overwhelmed with robo-signed mortgage

assignments and affidavits expressing legally-impossible transfers into the specific trusts

long *after* the trusts have closed for funding?

This point was recently slammed home to the public consciousness in a

watershed decision out of the State of Massachusetts. On January 7, 2011, the Supreme

Judicial Court of Massachusetts—the highest court in that state—rendered a unanimous

verdict in a case captioned *U.S. Natl. Bank Assn., Trustee, v. Ibanez, For ABFC 2005-*
*0PT 1 Trust, ABFC Asset Backed Certificates, Series 2005-0PT 1*, No. SJC-10694,

(Mass. Jan. 7, 2011). While that ruling is of course not binding upon this court, it is

very much contrary to the mortgage securitization industry's position in cases involving

the foreclosure of mortgage loans which have allegedly been securitized. The facts of

the case in Massachusetts and the facts of this instant case are similar. Both the

Massachusetts and the Horace cases concern an entity seeking to foreclose on the

mortgagor when the foreclosing entities did not possess the underlying promissory note

at the time of the foreclosure (or attempted foreclosure in the Horace situation). The case

was a ruling on two consolidated cases – both cases were filed by banks (as trustees for

---

27 EPTL 7-2.1(c)

- 15 -

two separate trusts) to quiet title on properties they had foreclosed and purchased at the foreclosure sale to satisfy the mortgagor's debt. The Massachusetts Supreme Judicial Court held that neither bank proved that its trust owned the mortgages when they foreclosed on the homes; therefore, neither had title to the foreclosed properties and that their foreclosures were void. Effectively, this put the borrowers back into the place they were before the foreclosure. The Massachusetts Supreme Judicial Court did not tell the homeowners they are allowed to shirk their obligation to pay their mortgages, which are still outstanding, valid obligations. The Massachusetts Supreme Judicial Court did, however, sharply instruct the banks that they must have the proper documentation which demonstrates a valid right to foreclose before a foreclosure can be carried out. It is well worth noting the conclusion of the Massachusetts *Ibanez* opinion. The Massachusetts Supreme Judicial Court noted that "The legal principles and requirements we set forth are well established in our case law and our statutes. All that has changed is the [banks'] apparent failure to abide by those principles and requirements in the rush to sell mortgage-backed securities." Just as the principles and requirements of Massachusetts law are well-founded, so too are those of New York law, and they should be upheld even if adherence to the law is inconvenient for banks rushing to sell mortgage-backed securities.

**B-3    THE INTENT TO TRANSFER AN ASSET TO THE TRUST *IS NOT A TRANSFER TO THE TRUST***

The contents of these statutes, cases and contracts lead to one inescapable conclusion: the intent of the parties and the requirements of the contracts were that the assets be conveyed to the Trusts by the Trust closing dates. For a transfer to any

- 16 -

particular trust to be effective, there should have been a registration of the assets into "the name of the trust as such name is designated in the instrument creating said trust property"—this is the only method by which these assets could have been "divested from the possession and title" of the donors.

In response to the lucidity of the controlling law on this issue, the mortgage foreclosure industry has chosen to argue that it is clear that it was the parties'"intent" to transfer these assets and therefore "no court" would ever declare that these assets were not transferred to these trusts. The controlling law is overwhelmingly against the industry in this position. The failure to deliver the notes and mortgages to these trusts as required by the trust instruments is a default under the terms of every agreement that these parties executed, including their agreements for payment guarantees with the monoline bond insurers. The securitization industry chose to create its securitization trusts under New York law precisely because the law was ancient and settled. Now that the actions of the foreclosure industry contradicts that law, parties such as the defendant trust are left to argue hope against precedent. The well-settled New York trust law provides that "A mere intention to make a gift which has not been carried into effect, confers no right upon the intended beneficiary. There must be also delivery beyond the power of further control and dominion."[28] Equity will not help out an incomplete delivery. If the agent of the donor has failed to make the delivery expected equity will

---

[28] (Vincent v. Rix, 248 N.Y. 76, 85 v. Rix, 248 N.Y. 76, 85; Matter of Green, 247 App. Div. 540; McCarthy v. Pieret, 281 N.Y. 407, 409.) as cited by In re FIRST TRUST & DEPOSIT CO., 264 A.D. 940, 941 (N.Y. App. Div. 4th Dep't 1942)

not declare him a trustee for the donee.[29]  "Thus, Thornton on Gifts and Advancements
(§140) notes:

> "In determining whether there has been a valid delivery, the situation of the
> subject of the gift must be considered. Thus if it is actually present, and capable
> of delivery without serious effort, it is not too much to say that there must be an
> actual delivery, although the donor need not in person or by agent hand the
> article to the donee, if the latter assumes the possession."

There was absolutely nothing in the physical nature of the papers to be delivered in this
case, or in the physical condition or the surroundings of the donor, that made a
symbolical delivery necessary."[30]  It is true that the old rule requiring an actual delivery
of the thing given has been very largely relaxed, but a symbolical delivery is sufficient
only when the conditions are so adverse to actual delivery as to make a symbolical
delivery as nearly perfect and complete as the circumstances will allow.[31]

Further, the failure to convey to a trust per the controlling trust document is not a
matter that may be cured by the breaching party.  New York law is unflinchingly clear
that a trustee has only the authority granted by the instrument under which he holds,
either deed or will. This fundamental rule has existed from the beginning and is still
law.[32] An indenture trustee is unlike the ordinary trustee. In contrast with the latter,
some cases have confined the duties of the indenture trustee to those set forth in the
indenture.[33] From this context springs the seminal rule of law that effectively causes the
parties to the Trust agreement and the Trust to be "gored by their own bull".  New

---

[29]Vincent v. Putnam, 248 N.Y. 76, 82-84 (N.Y. 1928)
[30]In re Van Alstyne, 207 N.Y. 298, 309-310 (N.Y. 1913).
[31] In re Van Alstyne, 207 N.Y. 298, 309-310 (N.Y. 1913).
[32]Allison & Ver Valen Co. v. McNee, 170 Misc. 144, 146 (N.Y. Sup. Ct. 1939).
[33]Ambac Indem. Corp. v. Bankers Trust Co., 151 Misc. 2d 334, 336 (N.Y. Sup. Ct. 1991).

- 18 -

York's law is so well-settled regarding the limitations of a trustee's power to act that

New York's Estates Powers and Trust Law Section 7-2.4 states:

> § 7-2.4 Act of trustee in contravention of trust
>
> If the trust is expressed in the instrument creating the estate of the trustee, every
> sale, conveyance or other act of the trustee in contravention of the trust, except as
> authorized by this article and by any other provision of law, is void.

Therefore, the trustees for these trusts may only acquire assets in the manner set forth in the trust

instrument and may not acquire assets in violation of the trust instrument. To the extent that any

assets were not conveyed to these trusts as required and when required by the trust instrument,

they are not assets of the trusts and the trustee cannot correct this deficiency now since the

funding period provided in the Trust instruments passed many years ago. The attempt to acquire

assets by these trusts which violate the terms of the Trust instrument are void. Therefore, late

assignments, improper chains of title, late endorsements, improper chains of title in the

endorsements and the attempt to transfer to the trusts by foreclosure deed are just a number of

the many examples of actions which are *void* if taken by a party to the indenture who is

attempting to transfer property to the Trustee for the Trust in violation of the trust instrument.

## C.    THE TRUST NEVER PROPERLY ACQUIRED THE MORTGAGE NOTE AND THE TRUST CANNOT CURE ITS FATAL STANDING DEFECT

Under New York law there is no trust over property that has not been properly transferred

to a trust. The Defendant Trust stated to the U.S. Securities and Exchange Commission in filings

under oath that it has assets in excess of $400 million.[34] To acquire assets, the Trust must be

---

[34] http://sec.gov/Archives/edgar/data/1352655/000088237706000801/d431341.htm (last viewed 1/7/10)

funded in accordance with the requirements of the PSA/Trust documents. The pertinent terms of

the agreement are found at §2.01 (Conveyance of Trust Fund) of the PSA.[35] This section details

how the mortgage notes in the instant case were transferred from Encore Credit Corp. (as

Originator) to EMC Mortgage Corp. (as the Sponsor and Master Servicer) to Bear Stearns Asset

Backed Securities I LLC (the Depositor) to LaSalle Bank National Association (the Trustee).

Bear Stearns as the Depositor was required to deliver to LaSalle the original mortgage note

showing an unbroken chain of endorsements from the original payee to the person endorsing it to

the Trustee. The person endorsing to the Trustee was the Bear Stearns entity.[36]

In the discovery provided to the Plaintiff, the only endorsement to the Horace mortgage

note is a blank endorsement "pay to the order of _____ without recourse Encore Credit Corp, A

California Corporation," signed by an unreadable name with an unreadable title.[37] The last

assignment of the mortgage was a blank endorsement with a stamp by Encore — nothing has

been submitted by the Trust to the Court indicating that Encore ever assigned the mortgage to

any other entity. Thus, based on the documents in this case, Encore, not LaSalle, is the mortgage

holder. LaSalle does not have the authority to foreclose the mortgage.

No later than May 29, 2006 there should have been — at a minimum — endorsements

from Encore Credit Corp. to EMC Mortgage Corp., then EMC Mortgage Corp. to Bear Stearns,

then Bear Stearns to LaSalle.[38] And yet, there is no "showing" of an unbroken chain of

endorsements in the documents provided to the Plaintiff. The affidavit of Thomas J. Adams,

expert for the Plaintiff, testified to this:

---

35 Bates #: Lasalle/Horace 0067.

[36] *See* Bates #: LaSalle/Horace 0067-0068: ""(A) in blank or to the order of ""LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2006-EC2,"" or (B) in the case of a loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee, . . .""

[37] Bates #: Horace v. LaSalle 29.

[38] Plaintiff states ""at a minimum"" because there may have been more transfers.

"According to the requirements set forth in the Trust Agreement I would expect to see a series of endorsements of the promissory note reflective of each party who had an interest in the promissory note reflective of each party who had an ownership interest in the promissory note culminating with a blank endorsement from the depositor at the very minimum."[39]

The Trust never possessed the mortgage note per the terms of the PSA (Pooling and Service Agreement). Further, in the PSA's exhibits, Exhibit One sets forth the contents of the collateral file for each mortgage loan that is trust property and further includes a final specific endorsement to the Trustee for the specific trust in this case to effect a final transfer to the Trust and to make the Horace promissory note trust property.

Any attempt by LaSalle, or Bank of America, to transfer the promissory note to the Trust at this late date would fail for numerous reasons, not the least of which is that the closing date of February 28, 2006 passed nearly 5 years ago. By the terms of the Trust and the applicable provision of the Internal Revenue Code incorporated into and a part of the Trust agreement, the promissory note cannot be transferred to the Trust.[40] Because the uncontradicted evidence in the case is that the Horace loan has never been conveyed to the Trust and a conveyance to the Trust at this time would be void as violating the terms of the PSA the Court is left with one clear and inescapable proposition: ***The Trust has never owned the Horace promissory note and the Trust can never own the Horace promissory note.***

## D.  THE TRUST IS NOT ENTITLED TO THE MONEY SECURED BY THE HORACE MORTGAGE AND CANNOT FORECLOSE

Per Ala. Code §35-10-12, the power to sell lands is held by the person who " . . . by assignment or otherwise, becomes entitled to the money thus secured." As outlined above, the

---

[39] Affidavit and Testimony of Thomas J. Adams, ¶ 12.
[40] Affidavit and Testimony of Thomas J. Adams, ¶17.

Trust has not provided documentation to show that it was or is entitled to the money secured by the mortgage of Horace's property. "The defendant Trust [LaSalle] has offered no proof of ownership and the collateral file offered by the defendant Trust clearly demonstrates that this loan was not securitized nor was it transferred to this Trust."[41]

## CONCLUSION

Based on the law, the terms of the Pooling and Service Agreement, the failure to show the proper chain of endorsements, and the arguments contained herein, Plaintiff moves this Court to permanently enjoin LaSalle Bank National Association (and Bank of America as its successor-in-interest) from foreclosing on the property at 3745 Knowles Road, Phenix City because they have failed to make the required showing that they are or ever were or ever could be the holder of the mortgage promissory note.

RESPECTFULLY SUBMITTED,

/s/ Nicholas H. Wooten
Nicholas H. Wooten – Ala. Bar No. Woo084
(Attorney for Plaintiff)
P.O. Box 3889
Auburn, AL 36831-3389
Tel. (334) 887-3000
Fax (334) 821-7720

**OF COUNSEL:**

Mr. Nick Wooten
**WOOTEN LAW FIRM, P.C.**
P.O. Box 3389
Auburn, Al. 36831
(334) 887-3000

---

41 Affidavit and Testimony of Thomas J. Adams, ¶14 and deposition testimony page 140, lines 4-8.

- 22 -

**JINKS, CROW, & DICKSON, P.C.**
PO Box 350
219 Prairie Street North
Union Springs, AL 36089


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the Defendants by providing an electronic copy on this the 13th day of January 2011.

All counsel of Record


_/s/ Nick Wooten_

OF COUNSEL

Defendant Trust and its agents declaring that the Trust has no interest in her promissory

note and may not pursue foreclosure against her and preserving for trial the issue of

damages against the Defendant trust and its agents.

RESPECTFULLY SUBMITTED,

/s/ Nicholas H. Wooten
Nicholas H. Wooten – Ala. Bar No. Woo084
(Attorney for Plaintiff)
P.O. Box 3889
Auburn, AL  36831-3389
Tel. (334) 887-3000
Fax (334) 821-7720

**OF COUNSEL:**

Mr. Nick Wooten
**WOOTEN LAW FIRM, P.C.**
P.O. Box 3389
Auburn, Al. 36831
(334) 887-3000

**JINKS, CROW, & DICKSON, P.C.**
PO Box 350
219 Prairie Street North
Union Springs, AL 36089

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the Defendants by
providing an electronic copy on this the 13th day of January 2011.

All counsel of Record

/s/ Nick Wooten
OF COUNSEL



**AlaFile E-Notice**

57-CV-2008-000362.00

Judge: ALBERT L JOHNSON

To:  WOOTEN NICHOLAS HEATH
nhwooten@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

PHYLLIS HORACE VS. LASALLE BANK NATIONAL ASSOCIATION, ET AL
57-CV-2008-000362.00

The following matter was FILED on 3/30/2011 2:12:06 PM

Notice Date:    3/30/2011 2:12:06 PM

KATHY S. COULTER
CIRCUIT COURT CLERK
RUSSELL COUNTY, ALABAMA
RUSSELL COUNTY JUDICIAL CENTER
PHENIX CITY, AL 36867

334-298-0516
kathy.coulter@alacourt.gov

ELECTRONICALLY FILED
PM
2 60
CIRCUIT
RUSSELL          BAMA
KATHY S. COULTER, CLERK

| | | |
|---|---|---|
| PHYLLIS HORACE, | ) | IN THE CIRCUIT COURT OF |
| Plaintiff, | ) | RUSSELL COUNTY, ALABAMA |
| VS. | ) | CASE NO. CV 08-362 |
| LASALLE BANK NATIONAL ASSOCIATION, et al., | ) | |
| Defendants, | ) | |

## ORDER

This cause comes before the court for hearing on March 21, 2011.

It is hereby

ORDERED, ADJUDGED, AND DECREED:

Following hearing and review of all submissions from the parties the Court has come to two conclusions necessary for the disposition of this case:

First, the Court is surprised to the point of astonishment that the defendant trust (LaSalle Bank National Association) did not comply with the terms of its own Pooling and Servicing Agreement and further did not comply with New York Law in attempting to obtain assignment of plaintiff Horace's note and mortgage.

Second, plaintiff Horace is a third party beneficiary of the Pooling and Servicing Agreement created by the defendant trust (LaSalle Bank National Association). Indeed without such Pooling and Servicing Agreements, plaintiff Horace and other mortgagors similarly situated would never have been able to obtain financing.

Consequently, plaintiff's motion for summary judgment is granted to the extent that

defendant trust (LaSalle Bank National Association) is permanently enjoined from foreclosing on the property at 3745 Knowles Road in Phenix City, Alabama.

Further, the Court is of the opinion there is no reason for further delay as to the entry of final judgment concerning the issue of foreclosure by the trust (LaSalle Bank National Association).

That notice shall issue to the parties.

DONE this the 25th day of March, 2011.

_____
ALBERT L. JOHNSON, CIRCUIT JUDGE

2011 MAR 30 PM 1:45