

**OPTION ONE**
M O R T G A G E
an H&R BLOCK company

 H&R BLOCK

018416/FL-RE-PI-

CORLA JACKSON
13230 TOM GASTON RD
MOBILE  AL  36695-8658

| | | |
|---|---|---|
| Payment Due Date | | 08/01/04 |
| Current Payment | $ | 1,920.64 |
| Past Due Payment(s) | $ | .00 |
| Unpaid Late Charges | $ | .00 |
| Other Charges | $ | .00 |
| Total Amount Due | $ | 1,920.64 |
| After 08/16/04 Add Late Charge Of | $ | 102.17 |
| Total Payment After 08/16/04 | $ | 2,022.81 |

**Account Information**

| Item Description | Amount | |
|---|---|---|
| **Balances** | | |
| Principal Balance | $ | 240,000.00 |
| Escrow Balance | $ | 871.14 |
| Unpaid Late Charges | $ | .00 |
| **Payment Factors** | | |
| Int Rate - First Mtg | | 7.650% |
| Principal & Interest | $ | 1,702.83 |
| Escrow Payment | $ | 217.81 |
| Other | $ | .00 |
| Total Payment Amount | $ | 1,920.64 |
| **Year to Date** | | |
| Interest | $ | 1,428.00 |
| Taxes | $ | .00 |

| | |
|---|---|
| Loan Number | 0013474848 |
| Property Address | 13230 TOM GASTON RD |
| | MOBILE  AL  36695 |
| Home Phone | 251-865-4440 |
| Work Phone | 702-524-3135 |

# Activity Since Last Statement

| Date | Description | Principal | Interest | Escrow | Misc. | Late/Other Charges | Total |
|---|---|---|---|---|---|---|---|
| 06/03 | NEW LOAN SET UP | $240,000.00- | | | | | |
| 06/03 | PREDIST PMT | | $1,428.00 | $871.14 | | | $2,299.14 |

Payments received after the statement date may not appear on this statement.

## WELCOME TO OPTION ONE

Option One Mortgage Corporation is pleased to welcome you as a customer. We are happy to have helped facilitate the financing of your home loan. For your convenience, we will send you a billing statement every month which includes a payment stub and an envelope that you can use to mail in your payments.

*Please verify the information on the billing statement, particularly your property and mailing addresses. You can use the back of the payment stub to indicate any corrections or changes needed.*

WELCOME

To access your account information online, you must first register as a new user. During the registration process, you will be asked to choose a user name and password. You will then use the user name and password you created to log in.

New Loan Verification Line: **888.323.4390**
Online account access: **www.optiononeonline.com**



DETACH AND SEND LOWER PORTION WITH PAYMENT

# GE Money
# Home Loans

PO BOX 25142
Santa Ana, CA 92799-9905

February 8, 2006

**Address**

RE: Account No.          : 0835002124
    Property Address     : 13230 Tom Gaston Rd  Mobile, AL 36695-0000
    File No.             : CRTN
    Date of Loss         : LDT

Dear Corla Jackson

We realize how difficult a loss to your home can be, and we want to process your claim as quickly and efficiently as possible. To assist in the claim- handling process, please submit the following items to our office:

1. The insurance claim check(s) (SIGNED/ENDORSED BY ALL PARTIES LISTED ON THE CHECKS».
2. The enclosed *Homeowner's Statement* completed and signed by you.
3. A copy of the insurance adjuster's detailed report or your contractor's detailed damage estimate for repairs.
4. A copy of the signed contract between you and your contractor doing the repairs.
5. The enclosed *Contractor Affidavit/Statement* needs to be completed and returned to our office once ALL REPAIRS HAVE BEEN COMPLETED.

Upon receipt of the fully endorsed insurance claim check and above required information, we will release a portion of the claim funds within 4-5 business days after receipt.  If all required items are not received, we are unable to proceed with a  disbursement of the claim funds until the missing items are submitted.

Due to the amount of loss, partial funds will be released at various stages. After the first release of insurance funds, periodic property inspections will be needed to confirm repair progress. Please contact our office seven to ten business days prior to needing additional funds to allow time for the property inspection.

If I may be of additional assistance, please call me at 1-866-354-7281.

Sincerely,

Insurance Claims Center
FAX:  (866)336-3811

GE TPA 13
HAZ6-NWCLMDP
Enclosures
BRE

Loan Number:   651003367                    Servicing Number:  001347464-8                    Date: 05/26/04

# INSTRUCTIONS TO CLOSING AGENT

BORROWER: CORLA JACKSON                         MONTHLY PAYMENT:
DOCUMENT DATE:  05/26/04                          P & I:   $1,702.83
DISBURSEMENT DATE:  06/01/04                      TAX:      $73.32
BRANCH: Atlanta House                            INS.:    $144.49
PROPERTY ADDRESS: 13230  TOM GASTON RD           FLOOD:    $0.00
  MOBILE, AL  36695-8658                          MISC:     $0.00
COUNTY: Mobile                                   TOTAL: $1,920.64

TO:  HERITAGE TITLE                              TITLE CO:  STEWART TITLE COMPANY
     2521 HILLCREST RD STE C                                5760 I-55 NORTH SUITE 200
     MOBILE, AL 36695                                       JACKSON, MS 39211
     CLOSING AGENT                                          CLOSING AGENT
     Phone: (251) 776-1661                                  Phone: (601) 977-9776
     Fax:   (251) 662-3336                                  Fax:   (601) 977-9790
     E-Mail:paigetitle@yahoo.com

CLOSING AGENT No./: JACKSON                      TITLE ORDER No.:  999010283

SALES PRICE:                    INTEREST RATE: 7.650%        FIRST PAYMENT DATE: August 01, 2004
LOAN AMOUNT: $240,000.00        LOAN TERM: 360               LAST PAYMENT DATE: July 01, 2034

## TITLE INSURANCE REQUIREMENTS

ALTA POLICY** must contain endorsements: 6.1, 8.1 (OR EQUIV)    CLTA 116 (OR EQUIV)

EAGLE TITLE POLICY **All Inclusive/Comprehensive (If Applicable)
  with liability in the amount of $ 240,000.00        on property described herein.

**Date and Time of Title Policy must be exactly as reflected on the Deed of Trust/Mortgage/Security Deed.**

** Please issue ALTA Short Form Policy when available.  For Second Mortgage Loans, Lender will accept CLTA or
   standard ALTA Policy in lieu of an Extended Coverage ALTA Policy.

LIABILITY SUBJECT ONLY TO: (Gen. & Spec. taxes) Fiscal Year; COUNTY/PARISH: All 2003 Paid
CITY:                                            SCHOOL:
CITY/SCHOOL:                                     SPECIAL DISTRICT:
TOWN/TOWNSHIP/BOROUGH/PLANTATION:
VILLAGE:                                         SURFACE WATER MANAGEMENT:

Funds may be used for account of the vestees or mortgagors, and you will record all instruments when you comply with the
following:

1.  Issue said form of Policy showing name of insured to read
        Option One Mortgage Corporation, a California Corporation, Its
                    Successors and/or Assigns

2.  Issue said form of Policy showing title vested as shown below.
    Title must be vested in individuals only.
    CORLA JACKSON, A SINGLE WOMAN

3.  Issue said form of Policy free from encumbrances except items
    . NONE

    of Preliminary Title Report or Title Commitment dated   05/03/04

4.  Survey exception, if applicable, MUST be removed from the title policy.  If survey is required to remove the survey exception
    and issue the title policy as requested, contact the Lender prior to disbursement of funds.

5.  VERIFICATION that vesting on Grant/Warranty Deed matches Deed of Trust/Mortgage/Security Deed.

6.  All liens, judgements, delinquent or outstanding personal and/or property taxes must be paid in full and released or a partial
    reconveyance issued releasing our subject property. INDEMNIFICATIONS are NOT ACCEPTABLE.  -PROOF OF PAYOFF
    IS REQUIRED.

7.  This loan MUST record in        ☒ First Lien Position        ☐ Second Lien Position.

8.  Forward original title policy in duplicate directly to lender within 90 days of closing (see page 5)

# NexTier Bank

1301 Grandview Avenue, Suite 120
Pittsburgh, PA 15211
Phone: 877-533-2784 Fax: 412-390-3535

To whom it may concern,

Based on the credit information supplied to me, Corla Jackson would qualify for a mortgage if all negative information regarding her mortgage were taking off the three credit bureaus. **(Trans Union, Equifax and Experian)** Then her credit scores would need to go back up in the 700 Range. Once her credit scores are increased and the negative reporting of her current mortgage company is removed she would be able to apply for a new mortgage.

This property is **uninhabitable to live in, it cannot be borrowed against, or used as a secured instrument to be sold as a primary residents** for anyone to live in until it is brought up to zoning coded, and all the structural damages are completed, for its intended use.

Based on our knowledge of all (Structural Damages) it must also comply, with high wind zoning laws first, which exceeds the limit of the mortgage of **($240,000)**, and the limit of insurance of **($312,000)**. We cannot put a mortgage against a property that cannot be lived in safely, or as permanent primary residents, to occupy per our appraisers guidelines.

This letter basically says (Ms. Jackson) would qualify for a mortgage, if she did not carry the liability on an insured uninhabitable home, which cannot legal be occupied, until it can be signed off on by (Mobile County Chief Building Inspector.

When we closed on Ms. Jackson's current property the lender required the homeowner to obtain homeowners insurance that would cover any damages whether from fire, flooding, hurricane or any other storm related damages to this property. **This insurance covers, the entire replacement cost.**

This case had nothing to do with mold, at the time of loss. This had to do with Structural Damages being completed on this Dwelling, at the time of loss. Because the Structural Damages was not completed, and not brought up to high wind codes, to prevent further and major damages at the time of loss mold set in, by not removing and replacing the wet contaminated rain water debris throughout out the entire Dwelling. This included inside the walls, structure, and hard wood floors throughout.

If you have any questions or concerns regarding this matter, please do not hesitate to call or e-mail me.

Sincerely,

*Steve J. Arthur*

**Steve Arthur**
**412-390-3530 Ext. 108**
**412-298-2748 Cell Phone** *(Evenings and Weekends)*
sarthur@fedmc.com
**********************************************************************
Federated Mortgage Corp. or any subsidiaries of Federated Mortgage Corp. shall not be liable for the contents contained in this electronic data. The views contained in this electronic document are the views of the individual sending this document.
**********************************************************************

| A. U.S. Department of Housing and Urban Development | | | OMB No. 2502-0265 |
|---|---|---|---|

| B. Type of Loan | | | |
|---|---|---|---|
| 1. [ ] FHA | 2. [ ] FMHA | | 3. [ ] Conv. Unins. |
| 4. [ ] VA | 5. [ ] Conv. Ins. | | [X] Other. |
| 6. File Number | | 7. Loan Number | |
| 401992 | | 651003367 | |
| 8. Mortgage Ins. Case No. | | | |

## Settlement Statement

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing; they are shown here for information purposes and are not included in the totals.

D. Name of Borrower: Cora Jackson

E. Name of Seller:

F. Name of Lender: Option One Mortgage Corporation, 1600 Parkwood Circle SE, Atlanta, GA 30339-2147

G. Property Location: 13230 Tom Gaston Rd, Mobile, AL 36695-9588

H. Settlement Agent: Heritage Title, LLC (228) 868-7152    TIN: 63-1283722
Place of Settlement:

I. Settlement Date: 5/28/2004    Proration Date: 6/1/2004

| | Gross amount due from borrower: | | | | Gross amount due to seller: | |
|---|---|---|---|---|---|---|
| 100. | Gross amount due from borrower: | | | 400. | Gross amount due to seller: | |
| 101. | Contract sales price | | | 401. | Contract sales price | |
| 102. | Personal property | | | 402. | Personal property | |
| 103. | Settlement charges to borrower (line 1400) | 234,768.18 | | 403. | | |
| 104. | Pay off of Vendors Lien | 5,000.00 | | 404. | | |
| 105. | Pay off Vendors Lien | 5,000.00 | | 405. | | |
| | | | | 406. | City/town taxes | |
| 106. | City/town taxes | | | 406. | City/town taxes | |
| 107. | County taxes | | | 407. | County taxes | |
| 108. | Assessments | | | 408. | Assessments | |
| 109. | | | | 409. | | |
| 110. | | | | 410. | | |
| 111. | | | | 411. | | |
| 112. | | | | 412. | | |
| 120. | Gross amount due from borrower: | 244,768.18 | | 420. | Gross amount due to seller: | 0.00 |
| 201. | Deposit or earnest money | | | 501. | Excess deposit (see instructions) | |
| 202. | Principal amount of new loan(s) | 240,000.00 | | 502. | Settlement charges to seller (line 1400) | 0.00 |
| 203. | Existing loan(s) taken subject to | | | 503. | Existing loan(s) taken subject to | |
| 204. | | | | 504. | Payoff of first mortgage loan | |
| 205. | | | | 505. | Payoff of second mortgage loan | |
| 206. | | | | 506. | | |
| 207. | | | | 507. | | |
| 208. | Lender Credit to Borrower | 4,800.00 | | 508. | | |
| 209. | | | | 509. | | |
| 210. | City/town taxes | | | 510. | City/town taxes | |
| 211. | County taxes | | | 511. | County taxes | |
| 212. | Assessments | | | 512. | Assessments | |
| 213. | | | | 513. | | |
| 214. | | | | 514. | | |
| 215. | | | | 515. | | |
| 216. | | | | 516. | | |
| 217. | | | | 517. | | |
| 218. | | | | 518. | | |
| 219. | | | | 519. | | |
| 220. | Total paid by/for borrower: | 244,800.00 | | 520. | Total reduction in amount due seller: | 0.00 |
| 301. | Gross amount due from borrower (line 120) | 244,768.18 | | 601. | Gross amount due to seller (line 420) | 0.00 |
| 302. | Less amount paid by/for borrower (line 220) | 244,800.00 | | 602. | Less total reduction in amount due seller (line 520) | 0.00 |
| 303. | CASH (X FROM) ( TO) BORROWER | 33.82 | | 603. | CASH ( FROM) ( TO) SELLER | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER INSTRUCTION - if this real estate was your principal residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Heritage Title, LLC (228) 868-7152 with your correct taxpayer identification number.

If you do not provide Heritage Title, LLC (228) 868-7152 with your correct taxpayer identification number, you may be subject to civil or criminal penalties.

| | | | | File Number: 491582 | |
|---|---|---|---|---|---|
| 700. | Total sales/broker commission | | | **Paid From** | **Paid From** |
| | Division of commission (line 700) as follows: | | | Borrower's | Seller's |
| 701. | $ | | | Funds at | Funds at |
| 702. | $ | | | Settlement | Settlement |
| 703. | Commission paid at settlement | | | | |
| 704. | | | | | |
| **800.** | **Items payable in connection with loan** | | | | |
| 801. | Loan origination fee | | | | |
| 802. | Loan discount | | | | |
| 803. | Appraisal fee | to | Colorado Federal Savings Bank | | |
| 804. | Credit report | | POC$ 300.00 | | |
| 805. | Lender's inspection fee | | | | |
| 806. | Mortgage insurance application fee | | | | |
| 807. | Assumption fee | | | | |
| 808. | Processing Fee | to | Colorado Federal Savings Bank | | |
| 809. | Application Fee | | | 375.00 | |
| 810. | Administration Fee | | | | |
| 811. | Tax Service Fee | to | Fidelity National Tax Service | | |
| 812. | Flood Certification Fee | to | First American Flood Data Services | 70.00 | |
| 813. | Broker Fee | to | Colorado Federal Savings Bank | 12.00 | |
| 814. | Funding Fee | to | Option One Mortgage Corporation | 3,120.00 | |
| 815. | Underwriting Fee | to | Option One Mortgage Corporation | 50.00 | |
| **816.** | **Items required by lender to be paid in advance** | | | 595.00 | |
| 901. | Interest from | 6/1/2004 to 7/1/2004 | at $51.0000/day for 30 days. | 1,530.00 | |
| 902. | Mortgage insurance premium for | | | | |
| 903. | Hazard insurance premium for | 1 yr. | to Farmers Insurance  POC$ 1739.82 | | |
| 904. | | | | | |
| **1000.** | **Reserves deposited with lender** | | | | |
| 1001. | Hazard insurance | 4 mo.@ $144.4900 per mo. | | 577.96 | |
| 1002. | Mortgage insurance | | | | |
| 1003. | City property taxes | | | | |
| 1004. | County property taxes | 11 mo.@ $73.3200 per mo. | | 806.52 | |
| 1005. | Annual assessments (maint.) | | | | |
| 1006. | | | | | |
| 1007. | | | | | |
| 1008. | | | | | |
| 1009. | Aggregate Accounting Adjustment  to  Corla Jackson | | | | |
| **1100.** | **Title charges** | | | (513.34) | |
| 1101. | Settlement or closing fee | to | Heritage Title, LLC | | |
| 1102. | Abstract or title search | to | Heritage Title, LLC | 350.00 | |
| 1103. | Title examination | | | 100.00 | |
| 1104. | Title insurance binder | | | | |
| 1105. | Document preparation | | | | |
| 1106. | Notary fees | | | | |
| 1107. | Attorney's fees to | | | | |
| | Includes above items no.: | | | | |
| 1108. | Title insurance | to | Heritage Title, LLC | 705.00 | |
| | Includes above items no.: | | | | |
| 1109. | Lender's coverage | $240,000.00 | $175.00 | | |
| 1110. | Owner's coverage | $240,000.00 | $530.00 | | |
| 1111. | | | | | |
| 1112. | Endorsement Fee | | | | |
| 1113. | Courier Fee | to | Heritage Title, LLC | 30.00 | |
| **1200.** | **Government recording and transfer charges** | | | | |
| 1201. | Recording fees: | Mortgage $434.00 | | | |
| 1202. | City/county tax/stamps: | | | 434.00 | |
| 1203. | State tax/stamps: | | | | |
| 1204. | | | | | |
| 1205. | | | | | |
| 1206. | | | | | |
| **1300.** | **Additional settlement charges** | | | | |
| 1301. | Survey | | | | |
| 1302. | Pest inspection | | | | |
| 1303. | Pay off Mortgage | to | Southtrust Bank | | |
| 1304. | Payoff Mortgage | to | Hibernia Bank | 44,834.80 | |
| 1305. | Pay on Account | to | NCO Financial | 181,398.15 | |
| 1400. | Total settlement charges (entered on lines 103, section J and 502, section K) | | | 291.00 | |
| | | | | 234,796.16 | |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

Corla Jackson    5/26/04

Corla Jackson

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

CJ000100





WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN: RECORDS MANAGEMENT

2004042906 Book-5605 Page-1910
Total Number of Pages: 11

*28.50*
*360.00*
*388.50*
*10.00*
*398.50*
*2.00*
*400.50*

Heritage Title, LLC     $240,000.00

Loan Number: 651003367
Servicing Number: 001347464-8

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  May 26, 2004          . The grantor is
CORLA JACKSON, A  SINGLE WOMAN

("Borrower"). This Security Instrument is given to

Option One Mortgage Corporation, a California Corporation

which is organized and existing under the laws of CALIFORNIA                          , and whose
address is
          3 Ada, Irvine, CA  92618

("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED FORTY THOUSAND
  . . . AND NO/100THs    Dollars (U.S.  $240,000.00            ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on  July 01, 2034            .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following
described property located in
                                      Mobile                        County, Alabama:
02-35-06-23-0-000-002.010
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

State of Alabama - Mobile County
I certify this instrument was filed on:
Thu, Jun-10-2004 @ 2:13:56PM

| | |
|---|---|
| RECORDING FEE | 28.50 |
| SURCHARGE | 10.00 |
| S. R. FEE | 2.00 |
| MORTGAGE TAX | 360.00 |
| TOTAL AMOUNT | $400.50 |

2004042906
Don Davis, Judge of Probate

which has the address of  13230  TOM GASTON RD, MOBILE

Alabama          36695-8658                ("Property Address");          [Street, City],
          [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever,
together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

ALABAMA - Single Family
Page 1 of 7

C.J.

ALD10011.wp (11-30-01)

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates or expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in thee manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If the Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower; (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the hold of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any

*C. D.*

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in

Mobile

County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirements for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not exceed or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph

17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the

Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charge, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

[Check applicable boxes]

[X] Adjustable Rate Rider          [ ] Condominium Rider          [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider    [ ] Planned Unit Development Rider    [ ] Occupancy Rider
[ ] Other(s) (specify)                                                           [ ]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____          _____(Seal)
                                                          -Borrower

_____          _____(Seal)
                                                          -Borrower

Carla Jackson    5/26/04 (Seal)     _____(Seal)
CORLA   JACKSON        -Borrower                          -Borrower

_____(Seal)   _____(Seal)
                        -Borrower                          -Borrower

STATE OF ALABAMA,                          Mobile      County ss:

On this    26th    day of    May              , 3004    , I,

hereby certify that    Corla Jackson    , a Notary Public in and for said county and in said state,

                                    , whose name(s)    is    signed to the foregoing conveyance, and who    is    known to me, acknowledged before me that, being informed of the contents of the conveyance,    she    he    executed the same voluntarily and as    she    act on the day the same bears date.

Given under my hand and seal of office this    26th    day of    May    , 2004

My Commission Expires: 5/8/2005                Asthea Patines
                                                Notary Public

This instrument was prepared by

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN:  RECORDS MANAGEMENT


CERTIFIED COPY
OF ORIGINAL

Loan Number: 651003367
Servicing Number: 001347464-9

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  May 26, 2004             . The grantor is
CORLA JACKSON, A  SINGLE WOMAN


("Borrower"). This Security Instrument is given to

        Option One Mortgage Corporation, a California Corporation


which is organized and existing under the laws of CALIFORNIA                  , and whose
address is
                    3 Ada, Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED FORTY THOUSAND
. . . AND NO/100THs          Dollars (U.S.  $240,000.00            ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on  July 01, 2034              .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following
described property located in
                    Mobile                          County, Alabama:
02-35-05-23-0-000-002.018
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.




which has the address of  13230  TOM GASTON RD, MOBILE                             [Street, City],

Alabama        36695-8658              ("Property Address");
               [Zip Code]


        TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever,
together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

ALABAMA - Single Family
Page 1 of 7                         C.J.                    ALD10011.usp (11-30-01)

CJ000182

4/21/2004 17:17    412-398-6135    Federated Mortgage Corp.    Blakeney Jennifer    6/6

## Supplemental Addendum

File No. 24-Jack

| Borrower/Client | Corie Jackson |
|---|---|
| Property Address | 12230 Tom Gaston Rd |
| City | Mobile | County | Mobile | State | AL | Zip Code | 36695-8658 |
| Lender | Colonial Federal Savings Bank |

Subject property value is $50,000 for three acres. This equates to roughly $17,000 per acre.

A $34,000 adjustment was made to each comparable sale to accommodate an additional two acres to subject and all sales.

The adjusted values of each comparable sale as well as the subject's indicated value will increase accordingly.

The subject and five acres will be, say, $340,000.

All sale line adjustments are in excess of 10% after the $34,000 addition. All other adjustments are within guidelines.

All comparable sales are in more defined and well developed subdivisions with higher per acre site values than subject.

The $34,000 adjustments for additional acreage attempts to reconcile all valuable variables involved while acknowledging a reasonable addition in values for this acreage.

Form TADD — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# GMAC Mortgage

P.O. Box 25144
Santa Ana, CA 92799-5144

September 6, 2006

Corla Jackson
13230 Tom Gaston Rd
Mobile, AL 36695-0000

RE: Property Address      :13230 Tom Gaston Rd  Mobile, AL 36695-0000
    File No.              : GMC002124
    Date of Loss         : 08/24/2005

To Whom It May Concern:

This letter is to confirm the following.  Hurrican Katrina damages on this property have been partially completed.  At this point we have confirmed that only the roof has been completed.

To date we received a total of 69,294.45 in checks payable to Ms. Jackson and GMAC.  The estimate provided by Town & Country Roofing was $59,800.00.  Leaving only 9,494.45 for the rest of repair to the property.

According to Ms. Jackson she has not received any additional funds for repair of the rest of the damages to the property.

Any further assistance need you may contact me at 866-354-7281 ext. 8534

Sincerely,

Insurance Claims Center
FAX: (866)336-3811

3451 Hammond Avenue
PO Box 780
Waterloo IA  50704-0780

**GMAC** Mortga

September 29, 2008

Corla Jackson
13230 Tom Gaston Rd
Mobile AL 36695

RE:    Account Number        0835002124
       Property Address       13230 Tom Gaston Rd
                              Mobile AL  36695

Dear Corla Jackson:

I am writing to confirm the review completed by our insurance claims division relating to your
insurance losses to the property at 13230 Tom Gaston Road.  Thank you for taking the time to
provide us with the documentation relative to this situation.

We have confirmed two insurance losses were filed on this property:

1.  Fire claim dated March 13, 2008.  Claim settlement of $18,213.23
2.  Hurricane loss dated August 24, 2005.  Claim settlement of $69,294.15

I understand you do not feel Farmers has properly handled the claims filed under your
homeowner's policy; however, this dispute is between you and your insurance provider.

GMAC Mortgage has no rights to file under the mortgage clause if the carrier has paid out on the
claim, which it appears Farmers has paid on both claims.  If Farmers denied the claim, we need
written documentation from Farmers to you indicating they are denying your claim.

Typically, if Farmers feels GMAC Mortgage should have filed under the mortgage clause they
would send a letter confirming this request.  We have no record of a letter of request to file under
the mortgage clause or a letter denying payment of the claim from Farmers Insurance.

Based on this review, there is no additional action required of GMAC Mortgage at this time.  We
must continue our attempts to collect the payments owed on this mortgage.

If I can be of additional assistance, please contact me at 1-800-627-0128, extension 2365385.

Sincerely,

Sharon Robinson

Sharon Robinson
Advocacy Resolution Specialist
Executive Offices

# Mold Reporter

**Home**

**About**

## News, Vol. 1, No. 3

Prev | Next | Volume 1, Number 3

Search

### The Final Solution: Mold-Contaminated House Burned to Ground

In February of this year, the Associated Press reported a Eugene, Oregon, couple's plan to burn their house to the ground, letting the fire department u it for a training exercise. It became contaminated while Mark and Mary Jan O'Hara were having it remodeled. They and their children were made sick result (headaches, respiratory problems, rapid weight loss, swollen and pain joints, chronic fatigue, profuse nosebleeds and severely inflamed sinuses). After the house is demolished, they plan to rebuild on the same 8-acre plot land.

The O'Haras are seeking $3.5 million in damages in a lawsuit that will probably be brought to trial this summer. They allege that their architect (Michael Cockram of Eugene) failed to control the quality of work by the general contractor, Stangland Construction, which failed to keep the inside the house dry during remodeling. These issues are being contested.

The family tried to decontaminate their personal belongings, but had to disca many of them.

### Melinda Ballard & Family win Large Settlement against Farmers Insurance

It was a lawsuit that made legal history. The Dripping Springs, Texas, family whose house was lost to mold last year was awarded $32 million by a jury in the first part of June, 2001. Farmers Insurance Exchange, they found, failed t adequately and swiftly cover repairs for a water leak. As a result, the mold Stachybotrys overran their 22-room house and severely damaged the parents' health and that of their child.

The award was broken down as follows:

- $6.2 million in actual damages. The house will have to be decontaminated, leveled, and rebuilt.
- $12 million in punitive damages.
- $5 million for mental anguish
- $8.9 million in lawyers' fees.

The award may be reduced by Judge John Dietz when he officially enters the judgment on June 25. Also: Farmers may appeal. And political pressure may ultimately release insurers from the necessity of covering conditions that may

 **FARMERS**

Farmers National Catastrophe Center of Excellence
17150 West 118th Terrace
Olathe, KS  66061

April 6, 2006

Ms. Corla Jackson
13230 Tom Gaston Rd
Mobile, AL   36695

RE:         **Claim:** 1007093144:
            **Policy:** 926495620:
            DATE OF LOSS:        **08/29/05**

Dear Ms. Jackson:

In regards to the estimate you have provided from Town and Country Roofing, LLC.  We have updated your estimate to include replacement of your shingles, roof decking, framing for rafter repair, insulation, and 10% overhead and 10% profit to cover contractor charges.  As has been addressed in previous letters, mold is specifically excluded from coverage therefore I will not be able to include the mold remediation from the estimate provided.

Sincerely,
Fire Insurance Exchange


James M. Jenkins
Catastrophe Claims Service Representative
National Catastrophe Center

# TOWN & COUNTRY
# ROOFING CONTRACTORS L.L.C.
## 633-8224 FAX 634-1655

### PROPOSAL FOR STRUCTURE DAMAGED ROOF

NAME:<u>CORLA JACKSON</u>
INS. COMPANY:<u>FARMERS INSURANCE</u>
STREET:<u>13230 TOM GASTON RD.</u>
CITY:<u>MOBILE</u>  STATE:<u>AL.</u>
PHONE:<u>228-235-8047</u>

<u>REROOF DUE TO HURRICAN'S IVAN & KATRINA</u>
REMOVE PRESENT ROOFING TO THE BASE,CLEAN DECK
THROUGHLY.APPLY FIFTEEN POUND FELT.INSTALL WEATHER
WATCH STROM GAURD IN ALL VALLEYS.REPLACE ALL ROOF
JACKS AND PIPE COLLARS.INSTALL TWO POWER
TURBINES.INSTALL WHITE ALUMINUM EAVE METAL
SURROUNDING PRIMMISES OF HOUSE.COVER ROOF WITH
FOURTY YEAR COMP. SHINGLES.
ROOF PITCH NINE ON TWELVE,FIFTY FOUR SQUARES.TOTAL
PRICE FOR ROOF $13,500.00

<u>WOOD WORK</u>
RAISE LOW RAFFTERS AND REPLACE DAMAGED SURRPORT
BEAMS AND TRUSSES.REMOVE AND REPLACE ALL
DECKING.INSTALL FIFTY FOUR HUNDRED SQUARE FEET OF
HALF INCH (OSB) DECKING.TOTAL PRICE $18,400.00 (NOT
INCLUDING FACIAL BOARDS OR SOFFITS)

Commercial • Residential          Roofing
                                  Since 1975
## TOWN & COUNTRY
## ROOFING, LLC
All Types Roofing & Waterproofing
**We Stop Leaks**
WRITTEN GUARANTEE - FREE ESTIMATES
LICENSED & BONDED
## 251-633-8224
Fax  633-4418        Presented by:___B.B.___

## TREATMENT
TREAT WOOD IN INTIRE ATTIC FOR MOLD.TOTAL PRICE
$4,750.00 *OR Remove Wet Damaged 2/4'S/Wood*

## INSULATION
REMOVE ALL INSULATION IN ATTIC AND REBLOW.TOTAL
PRICE $5,900.00

## DEBRIS
HAUL OFF ALL DEBRIS DEVELOPED FROM JOB AND CLEAN IN
WAY OF SAME.TOTAL PRICE $5,000.00

INSPECTION IS REQUIRED BY COUNTY ON THIS SEVERLY
STURCTURAL DAMAGED AND DANGEROUS ROOF.
ADDITIONAL FEES FOR STATE OF ALABAMA GENERAL
CONTRACTORS REQUIRED BY LAW AND EXPECT FEES
~~$10,000.00~~ *FRANK MOORE $12,250.00 (CONTRACTORS Licensing Fee Only)*
*OR WH Construction, Addinal Fees (FOR over seeing JOB Required B)*
THE ROOF STRUCTURE WAS DAMAGED BECAUSE THE ROOF
AND ITS SUPPORT WAS TIED INTO THE FRAMING OF THE
HOUSE WHICH CAUSE MAJOR DAMAGE.

THESE FEES SHOULD COVER THE INTIRE STUCTURAL
DAMAGED ROOF ONLY.

IF YOU HAVE ANY QUESTIONS PLEASE CALL THE NUMBER
LISTED ABOVE.

THANK YOU FOR CALLING TOWN & COUNTRY!



*Total $ 59,800*



| Dictionary | Thesaurus | Encyclopedia | Translator | Web | | Login | Register | Help |

[ mortgage clause ]

**Related Searches**

Standard mortgage c...
Bank mortgage claus...
Mortgagee clause
Exculpatory clause
Countrywide home lo...
Loss payee on prope...

**Nearby Words**

mortgage banker
mortgage bond
mortgage broker
**mortgage clause**
mortgage deed
mortgage holder
mortgage loan

## mortgage clause · 1 dictionary result

Bank of America® Mortgage
Take Advantage Of Low Refi Rates For Home Loans Up To $3 Million.
www.bankofamerica.com

Mortgage
Refinance Now and Save - No SSN Rqd Get 4 Free Quotes - Save Here!
MortgageRefinance.SmartQuote.com

See Todays Mortgage Rates
$180,000 **Mortgage** under $999/mo. As Seen on Good Morning America!
www.Mortgage.LowerMyBills.com

» Forum              • Style guide
» School gear        • Literary terms





**THE DAILY BEAST**

**Berlin Wall Legend Shattered**

**GET XTRA INSIGHT ▶**

### Legal Dictionary

Main Entry: **mortgage clause**
Function: *noun*
: a clause in an insurance contract (as for fire insurance) that entitles a named mortgagee to be paid for damage or loss to the property —see also OPEN MORTGAGE CLAUSE, STANDARD MORTGAGE CLAUSE

Merriam-Webster's Dictionary of Law, © 1996 Merriam-Webster, Inc.
Cite This Source

Bank of America® Mortgage
Take Advantage Of Low Refi Rates For Home Loans Up To $3 Million.
www.bankofamerica.com

Mortgage
Refinance Now and Save - No SSN Rqd Get 4 Free Quotes - Save Here!
MortgageRefinance.SmartQuote.com

Search another word or see **mortgage clause** on Thesaurus | Reference

**Search** faster for words with Dictionary.com Premium.

[ Sign Up Now ]



**SPELL YOUR WAY TO THE TOP OF THE GAME**
**PLAY**
Mike Spell's CRUSH
» A NEW word game from Dictionary.com

**Dictionary.com**

*Find out what 'truth' is...in Icelandic!*

*Use our multilingual dictionary to find words in 30 different languages.*



See Todays Mortgage Rates
$180,000 **Mortgage** under $999/mo. As Seen on Good Morning America!
www.Mortgage.LowerMyBills.com

4.25% Fixed Refinance
No Hidden Fees. Refi & Save w/ DPR® As Featured on CNNMoney and Forbes!
Mortgage.DeltaPrimeRefinance.com

[ mortgage clause ] 

**About** • Privacy Policy • Terms of Use • Ask Answers • Advertise with Us • Link to Us • Contact Us
Dictionary.com LLC Copyright © 2009. All rights reserved.

Follow us:    Twitter    Facebook

Home | Español

# RCS - Residential Credit Solutions

First Time Visitors
About Your Loan / About Us Contact Information
Existing Customers

**Customer Login**

User Name:

Password:

Log In

Forgot your Username?

Forgot your Password?

Not Registered Yet?

Escrow Account Information Insurance Information Payment Services Payment Counseling Payoff
Request End of Year FAQs Insurance Loss Draft FAQs Contact Information

Make A Payment

Investor Services
General Investor Information Corporate Information Contact Information
Existing Customers   Insurance Information



## Homeowner's Insurance Information

Insuring your home is an important way to protect your most
valuable asset. Maintaining adequate insurance means that
you will be covered in the unlikely event of a loss.

Having homeowner's insurance is an obligation under your
mortgage contract, and providing your lender with evidence of
adequate insurance coverage is an important responsibility of
home ownership. Everyone must have hazard insurance on
their property. If your property is located in a flood zone, you
must also obtain flood insurance on your property. In certain
states or geographic zones where windstorms, earthquakes, or
hurricanes occur, additional coverage against resulting
damage is required.



# Exhibits & Case Laws

Number Of Pages:_____

As a result of the foregoing transaction, Smith and others ultimately initiated litigation against Walden in the Montgomery Circuit Court (case no. CV–95–1093), seeking a judgment declaring the ownership of certain property. Walden filed several counterclaims against Smith, seeking damages for default on a promissory note, breach of a joint-venture agreement, and fraudulent suppression. Because a detailed summary of the background of these disputes was provided in Walden v. Hutchinson, 987 So.2d 1109 (Ala.2007), from which we quote extensively below, we use the terms defined therein as defined terms in this opinion.

State of Alabama
Unified Judicial System

Form ARClvP-93    Rev. 5/99

# COVER SHEET
## CIRCUIT COURT - CIVIL CASE
(Not For Domestic Relations Cases)

Case Number

CV·A·C·7·4·□·□·□·□·4·7·□

Date of Filing:    Judge Code:

0·7·/·1·8·/·2·0·1·2·□
Month    Day    Year

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF *Mobile* , **ALABAMA**

*Corla Jackson* v. *GMAC Mortgage*
Plaintiff    (Name of County)    Defendant

First Plaintiff    ☐ Business    ☒ Individual    First Defendant    ☐ Business    ☐ Individual
☐ Government    ☐ Other        ☐ Government    ☐ Other

## NATURE OF SUIT:    Select primary cause of action, by checking box *(check only one)* that best characterizes your action:

### TORTS: PERSONAL INJURY
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

### TORTS: PROPERTY INJURY
☐ TOPE - Personal Property
☐ TORE - Real Property

### OTHER CIVIL FILINGS
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

### OTHER CIVIL FILINGS (cont'd)
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellanous Circuit Civil Case

## ORIGIN (check one):
F ☐ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER: _____
R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

## HAS JURY TRIAL BEEN DEMANDED?    ☐ YES ☐ NO    Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

## RELIEF REQUESTED:    ☐ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

ATTORNEY CODE:
□·□·□·□·□·□·□·□    1/18/2012    *Corla Jackson*
Date    Signature of Attorney/Party filing this form

## MEDIATION REQUESTED:    ☐ YES ☐ NO ☐ UNDECIDED

**12**

ny-1048310

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **CORLA JACKSON** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 12-111 |
| **GMAC MORTGAGE** | ) | |
| **CORPORATION** | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF REMOVAL

**COMES NOW** GMAC Mortgage, LLC *f/k/a* GMAC Mortgage Corporation

("GMAC")  and pursuant to 28 U.S.C. §§ 1331 and 1446, hereby gives notice of

the removal of this action to the United States District Court for the Southern

District of Alabama, Southern Division  As grounds for this removal, GMAC

states as follows:

### I. Procedural Background

1.     On or about January 18, 2012, Plaintiff Corla Jackson ("Plaintiff")

commenced an initial action by filing her "Injunction & Quiet Title" ("Complaint")

against GMAC in the Circuit Court of Mobile, Alabama, case number 2012-00049.

(*See* Complaint, p. 1, attached as Exhibit 1)[1]  Plaintiff's Complaint seeks, *inter alia*, judgment for: "securitization fraud" under "state and federal laws; "hate crime" violations under "state and federal laws;" and "breach of contract and bad faith" claims under "state and federal laws." (*Id.*)  Plaintiff also asserts violations of her "civil human and constructional (sic.) rights as a citizens (sic.) of the United States." (*Id.*, p. 2)

2.     The Circuit Court of Mobile, Alabama is a state court embraced by this district, and the Southern Division is the proper division for removal pursuant to 28 U.S.C. § 81(c)(2).

3.     Attached hereto is a copy of all executed process in the case (Exhibit 2), a copy of the only pleading filed in the case (Exhibit 1), and a copy of the docket sheet (Exhibit 3).

4.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides, in pertinent part, as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in

---

[1] Pursuant to the Administrative Procedures for Filing, Signing and Verifying Documents by Electronic Means in the United States District Court for the Southern District of Alabama, § II(I), GMAC has redacted certain personal data identifiers from the Complaint and the exhibits attached to the Complaint, even though Plaintiff herself filed these documents in state court without redacting such information.

court and is not required to be served on the defendant,
whichever period is shorter.

5.       GMAC was served on January 27, 2012.  (*See* Exhibits 2 and 3)  This

notice of removal is timely pursuant to 28 U.S.C. 1446(b) because it is filed within

thirty (30) days of the service of Plaintiff's Complaint, and because this action was

commenced less than one (1) year ago.  *Murphy Bros., Inc. v. Michetti Pipe*

*Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (for removal purposes, "the 30-day

period begins to run on the date a defendant receives formal service of process.")

GMAC is the only Defendant named in this action.  No other activity has taken

place in this case.

6.       This case is properly removable pursuant to 28 U.S.C. § 1441, which

provides, in pertinent part, as follows:

> (a)      Except as otherwise expressly provided by Act of
> Congress, any civil action brought in a State court of
> which the district courts of the United States have
> original jurisdiction, may be removed by the defendant or
> the defendants, to the district court of the United States
> for the district and division embracing the place where
> such action is pending.  For purposes of removal under
> this chapter, the citizenship of defendants sued under
> fictitious names shall be disregarded.

7.       As shown herein, this case is properly removable based on federal

question jurisdiction and on diversity grounds.

## II. Federal Question Jurisdiction

3

8.    This action is properly removable pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

9.    Thus, "a civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).  To determine whether a complaint "arises under" federal law, a court must examine the "well pleaded" allegations of the complaint. *Id.*  A suit arises under the Constitution and laws of the United States only when the plaintiff's statement of her own cause of action shows that it is based upon federal law or the Constitution. (*Id.*)  Generally, a case is removable if the complaint affirmatively alleges a federal claim.  (*Id.*)

10.    Plaintiff makes specific allegations of violations of federal securities laws, hate crime laws and violations of the Constitution of the United States. (*See generally,* Complaint, Exhibit 1)  Thus, the Complaint facially advances claims arising under multiple federal laws.

11.    Because Plaintiff's claims arise under the laws of the United States, the United States District Court for the Southern District of Alabama has original jurisdiction under 28 U.S.C. § 1331.  Thus, this case is removable pursuant to 28 U.S.C. § 1441.

4

12.    To the extent Plaintiff's Complaint alleges state law claims, GMAC
requests that this Court take supplemental jurisdiction over such claims because
they are so related to Plaintiff's federal claims that they form part of the same case
or controversy. *See* 28 U.S.C. § 1367.

### III.  Diversity Jurisdiction

12.    In pertinent part, 28 U.S.C. § 1332(a) provides as follows:

> (a)    The district courts shall have original jurisdiction
> of all civil actions where the matter in controversy
> exceeds the sum of $75,000, exclusive of interest and
> costs, and is between –

> (1)    Citizens of different states.

**A.    Diversity of Citizenship**

13.    Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a
citizen of any State by which it has been incorporated and of the States where it
has its principal place of business..."

14.    Further, for purposes of diversity jurisdiction, "a limited liability
company is a citizen of any state of which a member of the company is a citizen."
*Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022
(11th Cir. 2004).

15.    GMAC Mortgage, LLC is a limited liability company organized under
the laws of the State of Delaware with its principal place of business in Minnesota.
None of its members are citizens of Alabama.

5

16.   Plaintiff is a resident citizen of Alabama.  (*See* Complaint)

17.   Therefore, complete diversity of citizenship exists under 28 U.S.C. § 1332(a).

**B.   Amount in Controversy**

18.   In addition to complete diversity, 28 U.S.C. § 1332 also requires that the amount in controversy exceed $75,000.00, exclusive of interest and costs.

19.   When a plaintiff makes a demand for an unspecified amount of damages, a defendant may remove the action by showing by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000.00 jurisdictional requirement.  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007)

20.   Although Plaintiff has sought an unspecified amount of damages, it is clear that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

21.   Plaintiff executed a Note and Mortgage on the property at issue in the amount of $240,000.00.  (*See* Mortgage, attached to Plaintiff's Complaint)  The Note and Mortgage establish, therefore, that the fair market value of Plaintiff's property interest exceeds the jurisdictional threshold. *See Mapp v. Deutsche Bank Nat'l Trust Co.*, 2009 WL 3664118, *4 (M.D. Ala. Oct. 28, 2009) (finding that the note and mortgage "are contracts that establish the fair market value of [the

6

plaintiff's] property interest, which indisputably exceeds the jurisdictional amount"); *Roper v. Saxon Mortgage Services, Inc.*, 2009 WL 1259193 (N.D. Ga. 2009) (citing *Waller v. Professional Ins. Corp.*, 296 F.2d 545, 547 (5th Cir. 1961)). Plaintiff clearly seeks to void GMAC's interest in the subject mortgage, alleging, *inter alia*, that it "did not own the Notes (sic.) by law." (*See e.g.* Complaint, p 2)

22.     Additionally, Plaintiff's Complaint clearly alleges damages based on violations of federal securities laws.  Specifically, Plaintiff alleges GMAC failed to "comply with the Security's (sic.) Exchange Laws...." (*Id.* at p. 2)  Moreover, she alleges, without explaining, that GMAC is liable for violations of federal hate crimes, fraud and violations of her "Civil Human and Constructional (sic.) Rights...." (*Id.*)  Plaintiff alleges that "The Damages Is (sic.) In The Millions Of Dollars On What They Did To Plaintiff..." (*Id.*)

23.     In determining whether the claims in a complaint meet the jurisdictional amount, the district court may "make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) *(quoting Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 768 (11th Cir. 2010)); *Johnson v. Ansell Protective Products, et al.*, 2008 WL 4493588 at *4 (S.D.Ala 2008)

("This Court is empowered to use its 'common sense and experience' in finding that the jurisdictional amount in controversy is met."))

24.   Plaintiff's Complaint meets the amount in controversy requirement under 28 U.S.C. § 1332 in that she demands in excess of $75,000.00, exclusive of interests and costs.

25.   Because complete diversity exists and the amount in controversy is satisfied, this action is properly removable under 28 U.S.C. § 1332.

### IV. All Other Procedural Requirements for Removal are Satisfied

26.   This case is a civil action within the meaning of the Acts of Congress relating to the removal of causes.

27.   GMAC has not previously removed this action.

28.   Removal at the present time will not result in any prejudice to Plaintiff as the matter is in the initial pleading stage and no discovery has occurred.

29.   Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of any of GMAC's rights to assert any defense or affirmative matter, whether pursuant to FED. R. CIV. P. 8(c), FED. R. CIV. P. 12(b), or otherwise, including, but not limited to, the defenses for failure to state a claim upon which relief can be granted.

30.   GMAC herein reserves the right to supplement its Notice of Removal by adding any jurisdictional defenses which may independently support a basis for removal.

31.   A copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Mobile, Alabama, as provided under 28 U.S.C. § 1446.  GMAC is also giving prompt written notice to Plaintiff of the filing of this Notice of Removal.

32.   There are no Co-Defendants in this action from whom consent is required.

**WHEREFORE, PREMISES CONSIDERED,** GMAC respectfully requests that this Court take jurisdiction of this action and issue all necessary orders and process to remove this action from the Circuit Court of Mobile, Alabama to the United States District Court for the Southern District of Alabama.

DATED this the _23rd_ day of February, 2012

/s/ Jon H. Patterson
Jon H. Patterson (PAT066)
jpatterson@babc.com
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 488-6403

*ATTORNEY FOR DEFENDANT GMAC MORTGAGE, LLC*

9

## CERTIFICATE OF SERVICE

I certify that on the 23rd day of February, 2012, I filed the foregoing document with the United States District Court for the District for the Southern District of Alabama using the ECF system. I also deposited a copy of the above and foregoing in the United States Mail, postage prepaid to following:

Corla Jackson
13230 Tom Gaston Road
Mobile, Alabama 36695
*Pro Se Plaintiff*

/s/ Jon H. Patterson
OF COUNSEL

Case 1:12-cv-00213-KD-B    Document 1-1    Filed 02/23/12    Page 1 of 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **CORLA JACKSON** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| **v.** | ) | CIVIL ACTION NO.: |
| | ) | <u>12-111</u> |
| **GMAC MORTGAGE** | ) | |
| **CORPORATION** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF REMOVAL

**COMES NOW** Defendant GMAC Mortgage, LLC, ("GMAC"), by and through counsel of record, and hereby certifies in accordance with 28 U.S.C. § 1446(d) that written notice was given to the adverse party in this action of the filing of a Notice of Removal in the above-styled action, and that a copy of the Notice of Removal was filed with the Circuit Court of Mobile County, Alabama on this the 23ʳᵈ day of February, 2012.

DATED this the 23ʳᵈ day of February, 2012

/s/ Jon H. Patterson
Jon H. Patterson (PAT066)
jpatterson@babc.com
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104

1

Telephone: (205) 521-8000
Facsimile: (205) 488-6403

*ATTORNEY FOR DEFENDANT GMAC*
*MORTGAGE, LLC*

## CERTIFICATE OF SERVICE

I certify that on the 23ʳᵈ day of February, 2012, I filed the foregoing document with the United States District Court for the District for the Southern District of Alabama using the ECF system.  I also deposited a copy of the above and foregoing in the United States Mail, postage prepaid to following:

Corla Jackson
13230 Tom Gaston Road
Mobile, Alabama 36695
*Pro Se Plaintiff*

/s/  Jon H. Patterson
OF COUNSEL

2

1/2279441.1

CV05
JDMD

**JACKSON DEMANDS JURY TRIAL**

## IN THE CIRCUIT COURT OF MOBILE ALABAMA

**CORLA JACKSON**
**Plaintiff,**                                  §
                                                §
                                                §
**V.**                                          §    NO: CV 2012-00049
                                                §                    JCW
                                                §
**GMAC MORTGAGE**                               §
**CORPORATION, ET AL**                          §
                                                §
**Defendants.**                                 §

## INJUCTION & QUIET TITLE
### SECURITLATION FRAUD
### BOTH STATE AND FEDERAL LAWS

**NEW DISCOVERY TO BACK FRAUD UNDER RULE (60b)**
**STATE AND FEDERAL LAWS**

**VIOLATION OF HATE CRIME UNDER LOANS AND LOAN MODIFICATION**
**STATE AND FEDERAL LAWS**

**BREACH OF CONTRACT AND BAD FAITH UNDER**
**STATE AND FEDERAL LAWS**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW the Plaintiff,** (CORLA JACKSON) , under the Grounds of (GMAC
MORTGAGE CORPORATION) Did In Fact Commit Fraud Under Rule (60b) Under Federal
And State Laws As Well As Perjury and Obstruction of Justice. Also They Committed
SECURITLATION FRAUD Under Both STATE AND FEDERAL LAWS, As Well As FRAUD
UNDER RULE (60b) Under Both STATE AND FEDERAL LAWS.

Total Documents Filed_____

"Rule 65(d)(2), Ala. R. Civ. P., requires:

" 'Every order granting an injunction shall set forth the reasons for its issuance; shall be
specific in terms; shall describe in reasonable detail, and not by reference to the
complaint or other document, the act or acts sought to be restrained .'

**JACKSON DEMANDS JURY TRIAL**

**EXHIBIT**
**1**

**JACKSON DEMANDS JURY TRIAL**

SECURITLATION FRAUD Under STATE AND FEDERAL LAWS, As Well As NEW
DISCOVERY OF FRAUD UNDER RULE (60b) Under Both STATE AND FEDERAL LAWS.

GMAC MORTGAGE did not comply with the terms of it's own Pooling and Servicing
Agreement and further did not comply with the Security's Exchange Laws Or Option
One Mortgage Notes Trustees in attempting to obtain assignment of plaintiff (Plaintiff's)
Jackson Property By Law…Preparing Paperwork Themselves…

Plaintiff (Jackson) is a third party beneficiary of the **Pooling and Servicing Agreement
created by the defendant trust** (Wells Fargo Bank) . Indeed without such Pooling and
Servicing Agreements Recorded And Signed By All Trust And Investors, Plaintiff
(Jackson) and other mortgages similarly situated like this would never have been able to
obtain financing anywhere. The Tile To The Property Has Been Clouded…By The
Defendants…And Major Damages Occurred For Making False Claims Forcing Plaintiff
Into Bankruptcy From (2005-2012) Which Is Fraud Under Rule (60b) With New
Discovery…Backed By The Defendants Own Evidence…

In Addition To The Above (Jackson) The Plaintiff Credit Has Been Destroyed By The
Defendants Making False Claims Over And Over Again Knowing They Did Not Own
The Notes By Law. Defendants Never Showed Their Original Notes, Original Deeds,
Original Assignments, Original Affidavits, Or A Copy Of Their Own Canceled Check
Purchasing This Note From The Original Lender.  In Addition To All Of The Above This
Note Was Written Under A HUD Settlement Statement Form Which Verified The
Conventional Loan Was Not And Insured Conventional Loan And Was Guaranteed To
Other Lending Remedy's To Prevent An Foreclosure By Any Other Lender Which Could
Not Be Done Because The Defendants Made False Claims When They Did Not Own The
Note…Period…This Was Information That Could Have Been Verified By Mers And The
SEC Security's Exchange Which Never Happen…

Instead The Defendants Provided Blank Alonges Made Payable To No One And Copy Of
A False Affidavits From Someone They Could Not Spell Their First Middle Or Last
Name As Appeared On The False Affidavits That Was Prepared By The Defendants
Making Notes Out To Themselves Illegally Against The Law…None Of This Was Ever
Verified By Law Or The Security's Exchange or Mers…Which Is Security's Fraud..

# In Addition To The Grounds Set Forth Above…

GMAC MORTGAGE Has Violated Acts Under The HATE CRIME Protection Acts That
Protected Jackson On Her Notes Backed By Security's And Policy's That They Committed Fraud
On As Well As Perjury On A Mortgage They Did Not Own Or Was Assigned From (2005-2012)
And On Mortgage Under False Pretense …The Damages Is In The Millions Of Dollars On What
They Did To Plaintiff…To Date…Demanding Jury Trial Is Necessary…

In Addition To This They Violated Jackson Civil Human And Constructional Rights As A
Citizens Of The United States And Refused Her A Loan Or A Loan Modification After
Destroying Her Credit And Clouding The Title To Her Home And Assets Illegally Against The

**JACKSON DEMANDS JURY TRIAL**

Law….They Violated LOAN MODIFICATION To Help Victims Like Jackson Under Federal Laws In Which They Did Not Do.

Jackson Was Released From Bankruptcy On January 20, 2010 When They Defrauded The State Courts They Owned Jackson Home And Was Assigned A Note Back In (2005) Which Was Not True That Lead To An Illegal Order Issued By Judges Youngpeter Under The Grounds Of False Pretense On Up The Later When They Did Not Even Own The Note Neither Were They Assigned Jackson Note At That Time…

Jackson Kept Going After Them And They Committed Fraud This Time To Prove They Committed Fraud Under Rule (60b) The First Time. This Now Is Returned Back To The Courts To Seek Legal Justice By Law. Under Demand By Jury Trial!

Rules of Civil Procedure, and as grounds therefore, shows as follows:

### *Factual Evidence through the Courts*

**Rule 60(b) provides, in pertinent part**: On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment, order, or proceeding was entered or taken."

1.     Our supreme court has stated: "'[T]he decision whether to grant or deny [a Rule 60(b)] motion is within the sound discretion of the trial judge, and the appellate

## JACKSON DEMANDS JURY TRIAL

standard of review is whether the trial court abused its discretion. *Pierson v. Pierson*, 347

So. 2d 985 (Ala. 1977). In reviewing a ruling of a trial court on a Rule 60(b)(6) motion,

the trial court's decision will not be disturbed unless it is determined "that there is an

absence of reasonable cause, that rights of others subsequently arising would be

adversely affected, or that it is unjust." *Textron, Inc. v. Whitfield*, 380 So. 2d 259 (Ala.

1979), quoting *Nunn v. Stone*, 356 So. 2d 1212 (Ala. Civ. App. 1978).' "Ex parte

Dowling, 477 So. 2d 400, 402 (Ala. 1985)." *Osborn v. Roche*, 813 So. 2d 811, 815 (Ala.

2001).

    2.    Our supreme court has further recognized that in certain cases

"aggravating- circumstances may allow a trial court to treat what would otherwise be a

Rule 60(b)(1) motion [or 60(b)(3) motion] as a Rule 60(b)(6) motion." *Ex parte Wal-*

*Mart Stores, Inc.*, 725 So. 2d 279, 284 (Ala. 1998). The supreme court has stated that the

aggravating- circumstances exception "applies to an extraordinary circumstance not

contemplated by Rule 60(b)(1) [or 60(b)(3)], for the purpose of protecting the public,

vindicating the judicial process, and promoting the public's confidence in the legal

system." *R.E. Grills, Inc. v. Davison*, 641 So. 2d 225, 230 (Ala. 1994).

    3.    "The `catch all' provision of clause (6) of Rule 60(b) allows a trial court to

grant relief from a judgment for `any other reason justifying relief.' *Barnett v. Ivey*, 559

So. 2d 1082, 1084 (Ala. 1990).

    4.    "Although grounds for relief under Rule 60(b)(1) generally cannot be

valid grounds under Rule 60(b)(6), this Court has recognized an exception when, in the

interest of justice, aggravating circumstances may be considered sufficient to allow the

trial court to treat what would otherwise be a Rule 60(b)(1) motion as within Rule

Case 9:12-cv-00415-KD-B Document 1-2    Filed 02/28/12    Page 5 of 54

JACKSON DEMANDS JURY TRIAL

**JACKSON DEMANDS JURY TRIAL**

60(b)(6). *Chambers County Comm'rs v. Walker*, 459 So. 2d 861 (Ala. 1984); Giles v.

Giles, 404 So. 2d 649 (Ala. 1981); Rebel Oil Co. v. Pike, 473 So. 2d 529 (Ala. Civ. App.

1985)."

     5.     It is the prevailing rule in Alabama "that a litigant ... has responsibility for

keeping track of his case and knowing its status." *D. & J. Mineral & Mining, Inc. v.

Wilson*, 456 So. 2d 1099, 1100 (Ala. Civ. App. 1984). Therefore, a trial court "owes no

duty to notify a party of the setting of a case or to continue a case because of the absence

of a party ...." *D. & J. Mineral*, 456 So. 2d at 1100-01.

     6.     Our caselaw recognizes that the failure of a party to advise the clerk of a

proper service address may "fall into the category of excusable neglect...." *DeQuesada v.

DeQuesada, 698 So. 2d 1096, 1099 (Ala. Civ. App. 1996).*

Case 1:12-cv-00411-KD-B   Document 1   Filed 06/28/12   Page 7 of 56

B18W (Form 18W) (08/07)

# United States Bankruptcy Court

### Southern District of Alabama

Case No. <u>05-13142</u>

**Chapter 13**

In re Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Corla Reeves Jackson
13230 Tom Gaston Road
Mobile, AL 36695

Social Security / Individual Taxpayer ID No.:
xxx-xx-9711

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR AFTER COMPLETION
## OF CHAPTER 13 PLAN

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 1328(a) of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: <u>1/20/10</u>

MARGARET A. MAHONEY
United States Bankruptcy Judge

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**



AOL | Mail | Toolbar

Location: Mobile, AL 36695 | Search History | Advanced Search | Settings

**Web**   Images | Videos | Maps | News | Shopping | more »

What does it mean when a Hurricanes leave sags and dips

Web Results 1 - 10 of about 2,660

[PDF] SAFE REHABILITATION OF HURRICANE-DAMAGED HOMES
Roofs that sag in the middle or at the ends due to load-bearing walls that have shifted. ... a dip
in the roof and sill beam. ribbon board, cracked floor joist .... However if there is a lot of water
damage, and/or mold growth ... in adults , lead poisoning may cause high blood pressure,
fertility ...
hud.gov/offices/lead/library/misc/HUD_CSS_Booklet.pdf - Similar

[PDF] Response to Floods and Water Damage for Libraries. ...
Jun 14, 2008 ... Go onto the roof if rising water makes it necessary as long as no thunderstorm
is in progress. ... highway dips, where water may pool and pose threats. ... Emergency Drying
Procedures for Water Damaged Collections. ... Pools of cool standing water (which can cause
hypothermia if the water is less ...
www.loc.gov/preserv/emergprep/floodcomp.pdf - Similar

Roofing: How dry does the deck need to be?, asphalt shingles, ...
Apr 30, 2009 ... Anything that might soak up water, like insulation must be ripped out as it
can ... Several interior rooms beneath the damaged roof show obvious signs of warped ... one
could SEE an extreme bow or sag, but are there degrees of tolerance in what ... Look for
isolated humps or dips between rafters. ...
en.allexperts.com/q/Roofing-1598/2009/4/dry-deck-need... - Similar

Hurricane Survival Tips - Hurricane Mitigation & Survival
The two huge masses of water do leave the land in much the same way, .... When water kills
or does damage, the wind put it up to it. .... and with major hurricanes, it ain't over until the
National Guard arrives. .... Invest in a hurricane roof as the main hole you want to avoid is a
big one with a view of Heaven. ...
www.hurricane-man.com/survival-tips.html - Similar

General information | RAGBRAI
This may cause your group to be ineligible for the lottery. .... RAGBRAI is a major economic
boost to every church, Boy Scout or Girl .... Your wristband also will give you priority to sag
wagons, bicycle shop repairs and many other services. ... If you race ahead, lag behind or
leave the official bicycle route, ...
ragbrai.com/index.php/about/general-information/ - Similar

Antigua - Local Reports (Caribbean Hurricane Network)
that it does not necessarily mean that the case brought by ABITPC against govern - .... It was
badly damaged by the 1990s hurricanes that kept visiting Antigua... . ...... Whatever will cause
this dip could occur earlier? I certainly hope not! ..... WHAT a way to start a week... with a 140
mph major hurricane on your ...
stormcarib.com/reports/2003/antigua.shtml - Similar

Using Technology to Reduce Risk and Improve Worker Safety | ...
The root cause of this unwanted connection is often a result of insulation breakdown. ...
equipment damage and present a fire and explosion risk to personnel (see photo 1). .... 5) To
reduce the momentary line-voltage dip occasioned by the occurrence and ..... Utility
Deregulation, What Does It Mean to inspectors? ...
www.iaei.org/magazine/?p=2449 - Similar

Pain in Maine, but they can measure rain « Climate Audit
But all the data sufficient to predict hurricanes is OK? ..... (Heck, if it's like my house, the
whole electrical system voltage sags whenever a big ..... that $CO_2$ is not a major factor in
causing the earth to warm: You are a denier. ...... Does this mean that it's OK to shade the
truth about AGW so that someone, ...
www.climateaudit.org/?p=1816 - Similar

Case 12-12020-KDE    Document 1    Filed 02/28/12    Page 5 of 54

## JACKSON DEMANDS JURY TRIAL

Date: 09/26/04

### ALLONGE TO NOTE
(INVESTOR)

This allonge makes reference to the following Note:

Borrowers:  CORDA  JACKSON
Loan #:
Property Address: 13230  TOM GASTON RD,  MOBILE, AL
Loan Amount: $240,000.00

Note Date:  09/26/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
Jeanette Pharraoud

Assistant Secretary

USD3050, rev 023-14-03)

Case 11-01545    Claim 3-1 Part 3    Filed 07/25/11    Desc NOTE    Page 4 of 4

**WHAT THEY DID WAS WRONG THEY PROVIDED A BLANK COPY OF AN
ALLONGE WITHOUT ORIGINAL DEED OR COPY OF CHECK TO PROVE
THEY PURCHASED LOAN FOR THE DOLLAR SAID AMOUNT THEY
CLAIMED VICTIMS OWED ON NOTES THAT DID NOT BELONG TO THEM
AT ALL….HE NAMES THEY SIGNED ON THE ILLEGAL DOCUMENTS WAS NO**

**JACKSON DEMANDS JURY TRIAL**

**JACKSON DEMANDS JURY TRIAL**

LONGER WORKING FOR COMPANY IT WAS SHUT DOWN LISTED BELOW
AND WAS NOT AUTHORIZED BY SECURITY'S EXCHANGE TO ASSIGN
ASSIGNMENTS ON CAMPANY'S ILLEGALLY AGAINST THE FEDERAL
LAWS VIOLATING SECURITY'S LAWS....

YOU DO NOT MAKE ASSINGMENT OUT TO YOURSELF IF YOU OWN THE
ORIGINAL DEEDS BACKED BY SECURITYS OR WITHOUT SECURITY'S YOU
SHOW YOUR CANCELED CHECK YOU PAID FOR THE PROPERTY AS WELL AS
THE ORIGINAL NOTES AND LOAN DOCUMENTS WITH VALID SURVEYS BY
ORIGINAL LENDER....THIS DID NOT HAPPEN IN THIS CASE...

THEY COMMITED FRUAD UNDER SECURITY'S AND FRUAD UNDER RULE (60b)
USING A JUDGES THEY APPOINTED TO HELP THEM ON THESE
CASES...KNOWING THEY DID NOT OWN THE NOTES...THIS IS MAJOR
CORRUPTION AND CONSPIRACY'S TO KEEP THE CASES FROM BEING HEARD
DEMAND BY JURY TRIAL AND PRIOR TO PROCESS OF SERVICE.... THE
AMOUNT OF DAMAGES IS YET TO BE DETERMAN BY JURY....FOR WHAT THEY
DID TO PLAINTIFF TO DATE MAKING FALSE CLAIMS THAT CAUSED HER
MAJOR DAMAGES AND PERSONAL INJURY'S DESTROYING HER HOME IN
CORRUPTION AND CONSPIRACY'S SO THEY COULD CASH IN ON WHAT SHE
OWNED BACKED BY POLICY'S AND SECURITY'S....THEY DEFENDANTS GMAC
MORTGAGE DID NOTE EVEN OWN THE NOTES...THIS COULD HAVE BEEN
VERIFIED BY THE SEC OR MERS...THEY DID NOT OWN THE PLAINTIFF NOTE
FROM THE VERY BEGINNNING FROM (2005-2012)...AND IS RESPONSIBLE FOR
MAJOR DAMAGES THEY KEPT HIDDEN UNTIL NOW...THEY MADE FALSE
CLAIMS ON A NOTE THEY DID NOT OWN BY LAW AND THEY KNEW THIS....

PLAINTIFF JACKSON NOTE WAS NOT CONVENTIONAL INS...WHICH ENTITLED
HER TO ALL OPTIONS WITH ALL OF HER ASSETS TO PREVENT
FORECLOSURED OR BANKRUPTCY HAD THEY NOT LIED MAKING FALSE
CLAIMS TO A NOTE AND PROPERTY THEY DID NOT OWN BY LAW...THEY
SHOULD BE PROSCUTED TO THE FULLUES EXTENT OF THE LAW FOR WHAT
THEY DID TO PLAINTIFF AND ALL THE OTHER VICTIMS IN A UNDERGROUND
BLACK MARKET CURRENCY RING ROBBING VICTIMS OF THEM HOMES AND
ASSETS UNDER FALSE PRETESNSE AS WELL AS THE GOVERNMENT AND
FEDERAL RESERVE ON BAIL OUT FUNDS TAX BREAKS AND TARP MONEY
THAT WAS SUPOSE TO HELP VICTIMS AND NOT THEM TO PROFIT OFF OF...

ROBBING VICTIMS UNDER FALSE PRETESE IS ILLEGAL AND AGAISNT THE
LAW THEY WERE NOT RECORDED ON A NEW DEED NEITHER WAS A NEW
ASSIGNMENT THE ORIGINALS NEVER HAPPEN BECAUSE THEY COULD NOT
JACKSON NOTE WAS BACKED BY SECURITY'S AND POLICY'S WHICH AND
UNDER A HUD SETTLEMENT STATEMENT FORM THAT GUARANTEED HER
HELP ON CONVENTIONAL UNINSURED NOTES/OR OTHER ASSETS....THE
DEFENDANTS CAUSED MAJOR DAMGES TO DATE...AND COVERED IT UP AND
NOW THE TRUTH IS OUT!

**JACKSON DEMANDS JURY TRIAL**

# **GMAC** Mortgage

P.O. Box 52052
Phoenix, AZ  85072

April 2, 2008

Corla Jackson
13230 Tom Gaston Rd
Mobile, AL 36695-0000

RE: Property Address      : 13230 Tom Gaston Rd  Mobile, AL 36695-0000
Account No.             : ●●●●●2124
Tracking No.            : 902022
Date of Loss            : 3/13/2008

Dear Corla Jackson:

We realize how difficult a loss to your home can be, and we want to process your claim as quickly and efficiently as possible. Due to the status of your loan and investor requirements, we have the responsibility to ensure the damage is repaired. To assist in the claim-handling process, please submit the following items to our office:

1. The insurance claim check(s) (SIGNED/ENDORSED BY ALL PARTIES LISTED ON THE CHECK(S).

2. The enclosed *Homeowner's Statement* completed and signed by you.

3. A copy of the insurance adjuster's detailed report or your contractor's detailed damage estimate for repairs.

4. A copy of the signed contract between you and your contractor doing the repairs.

5. The enclosed *Contractor Affidavit/Statement* needs to be completed and returned to our office once ALL REPAIRS HAVE BEEN COMPLETED.

Upon receipt of the fully endorsed insurance claim check and above required information, we will release a portion of the claim funds within 4-5 business days after receipt.  If all required items are not received, we are unable to proceed with a disbursement of the claim funds until the missing items are submitted.

Due to the amount of loss, partial funds will be released at various stages. After the first release of insurance funds, periodic property inspections will be needed to confirm repair progress.  **FLORIDA PROPERTIES: Please contact our office 10 to 14 business days prior to needing additional funds to allow time for the property inspection.** NON-FLORIDA PROPERTIES: please contact our office 7-10 business days prior to needing additional funds.

If I may be of further assistance, please contact me at 1-866-354-7281.

Sincerely,
Insurance Claims Center
FAX: (866)336-3811

GMAC TPA 13 (a)
HAZ6-NWCLMDQ

Enclosures
** BRE **

## JACKSON DEMANDS JURY TRIAL



LOAN NUMBER:

STATE OF ALABAMA

COUNTY OF MOBILE

ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned THE MORTGAGE CORPORATION (the "Assignor"), does hereby transfer, assign, ... into GMAC MORTGAGE, LLC (the "Assignee"), its successors, transferees, ... right, title and interest of said Assignor in and to that certain Mortgage executed by ... A SINGLE WOMAN, to OPTION ONE MORTGAGE CORPORATION dated ... 1910, in the Probate Of... ... that property described in said Mortgage, together with the note and ... ... and all interest of the undersigned in and in the property described ...

It is expressly understood and agreed that ... said assignment of the said Mortgage is without warranty, representation or recourse ...

IN WITNESS WHEREOF, said Assignor ... set its signature this 19th day of June , 2008.

OPTION ONE MORTGAGE CORPORATION

By: _____
        Brian D. McConnell
        Assistant Secretary

STATE OF CALIFORNIA)

COUNTY OF ORANGE )

I, R.A Salazar, a Notary Public in and for the said County and State, do hereby certify that Brian D McConnell, whose name ... Secretary of OPTION ONE MORTGAGE CORPORATION, is signed to the foregoing ... and who is known to me, acknowledged before me on this day that, being informed of ... the instrument, he/she, as such officer, and with full authority, executed the same voluntarily for and on behalf of said corporation.

Given under my hand and official seal this 19th day of June, 2008.

_____
Notary Public

My Commission Expires 08/02/2011

[SEAL]
R. A. SALAZAR
Commission # 1757905
Notary Public - California
Orange County
My Comm. Expires Aug 2, 2011

This instrument prepared by:
Coleen McCullough
Sirote & Permutt, P.C.
P. O. Box 55727
Birmingham, AL 35255

State of Alabama-Mobile County
I certify this instrument was filed on
...July 21, 2008   3:31:15 PM
S.D. FEE                     $7.00
RECORDING FEES        $7.00
TOTAL AMOUNT          $7.00

2500255035
Don Davis, Judge of Probate

**EXHIBITS ALSO ATTACHED** _____

## JACKSON DEMANDS JURY TRIAL

**JACKSON DEMANDS JURY TRIAL**

They Could Note Even Spell Brian D. McConnell…And Option One Mortgage Was Closed At This
Time…The Documents Were Prepared By Defendants Signing Over Notes To Themselves With False
Affidavit's Without Originals Or Copy Of Their Canceled Checks To Prove They Purchased Loans Or Was
Assigned Notes…If They Owned The Notes Why Wasn't It Recorded Or Why Would They Have To Get
False Affidavit's And Black Allonges Not Showing The Currency Amount They Purchased Home
For…They Did Not Even Own Jackson Note When They Filed The First False Claim And Then Came
Back With Fake Documents To Rob Her Again…And Hung Their Own Selves Because They Did Not
Own The Note When They Filed The First Claim Committing Fraud Under Rule (60b) And Security's
Fraud!

JACKSON KEPT GOING AFTER THEM AND THEY TURNED THIS INTO A HATE CRIME….HATE
CRIMES ARE NOT JUST FOR COLORED PEOPLE THEY CAN BE DONE TO ALL RACES IF THEY
GO AFTER CROOKS LIKE THIS…THEY USE PEOPLE TO COMMIT HATE CRIMES TO HELP
CORRUPT CASES IN CONSPIRACY'S…AND THEY USE JUDGES THAT HELP THEM IN
EXCHANGE FOR PERSONAL GAIN AND FAVOR AND AVOID THE GOOD JUDGES THAT DO
NOT TAKE PERSONAL GAIN AND FAVOR VERSUS FOLLOWING STATE AND FEDERAL
LAWS….THEY CHOSE THEIR AFFILIATES TO GO AROUND NONE CROOKED JUDGES AND
THAT IS HOW THEY  DID ALL OF THIS!...

NO GOOD JUDGES WOULD HAVE ALLOWED THE FEDERAL LAWS TO BE BROKEN LIKE
WHAT HAPPEN TO THE PLAINTIFF TO DATE, AFTER SHE KEPT FILING MOTION AFTER
MOTION AFTER MOTION AND COMPALAINTS AND WAS HARASSED AND FALSELY
ARRRESTED (2) TIMES IN A HATE CROME AND IF SHE DID NOT PAY A LAWYER SHE
WOULD NOT HAVE BEEN AQUITED OF ALL THE FALSE CHARGES THAT THEY CONSPIRED
AND PUT BEFORE HER TO GET RID OF HER BEFORE THEY ALL GOT EXPOSED IN THIS
UNDERGROUND BLACK MARKET CURRENCY RING VIOLATING FEDERAL AND STATES
LAWS….TO DATE!....

THIS IS MAJOR CORRUPTION THEY MADE FALSE CLAIMS TO CAUSE JACKSON HARDSHIP
DAMAGES AND INJURRY'S WHEN THEY DID NOT EVEN OWN THE NOTE AND HER NOTE
WAS BACKED BY POLICY'S THEY LIED ABOUT SAYING REPAIRS WERE COMPLETED IN
WRITING WHEN THEY WERE NOT AND WAS TOLD BY GOVERNMENTAL OFFICIALS AND
STRUCTURAL ENGINEERS…..!

HOW DID THEY BACK THIS HOUSE BY SECURITY WHEN THE VALUE WAS NEVER PUT
BACK TO ITS ORIGINAL POSITION FOR THE DOLLAR AMOUNT THEY SAID THE HOME WAS
WORTH…THAT IS WHY THEY REFUSED TO EXCKSIE THE APPRAISAL CLAUSE ON THE
HOME THEY KNEW THEY HAD COMMITTED FRAUD UNDER RULE (60b) AND NEW
DISCOVERY WAS DISCOVERED LATER IN THEIR OWN AFFIDAVATE ABOVE!....

**JACKSON DEMANDS JURY TRIAL**

## Quiet Title

An **action to quiet title** is a <u>lawsuit</u> brought in a <u>court</u> having <u>jurisdiction</u> over
land disputes, in order to establish a party's title to real property against anyone
and everyone, and thus "quiet" any challenges or claims to the title. It comprises
a complaint that the ownership (title) of a parcel of land or other real property is
defective in some fashion, typically where title to the property is ambiguous. A
typical ground for complaint includes the <u>**fraudulent conveyance**</u> of a property,
**perhaps by a forged deed or under <u>coercion</u>.**

Unlike acquisition through a <u>deed</u> of sale, a quiet title action will give the party
seeking such relief no cause of action against previous owners of the property.

This Caused Jackson The Plaintiff Major Damages...To Date!
**Total Exhibits And Documents Filed** _____

WHEREFORE,

This the <u>18,</u> day of January 2012

Respectfully submitted,

Plaintiff: _____
Corla Jackson
13230 Tom Gaston Road
Mobile, Alabama. 36695
Tel. (251) 554-1785
Fax. (251) 865-0735

**JACKSON DEMANDS JURY TRIAL**

CONTINUED – 2005-12-06-1428

## DESCRIPTION

| | QNTY | UNIT | RCV | DEPREC. | ACV | REVIEWE |
|---|---|---|---|---|---|---|

See additional pictures for verification of damages.

Hardwood floors
Lights- water from leaking roof inside electricals and outlets

Replacements

NuTone intercom system
Security Camera's
Temporary repairs
New Tarp (see roofing pictures)

The support is bent \ warped and has shifted causing major structural damage to the roof and dwelling throughout.

Room Totals: 2005-12-06-1428

| | 27,535.92 | 0.00 | 27,535.92 |
|---|---|---|---|

## Grand Total Areas:

| | | | |
|---|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SY Flooring | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 0.00 LF Ceil. Perimeter |
| 0.00 Floor Area | 0.00 Total Area | 0.00 Interior Wall Area |
| 0.00 Exterior Wall Area | 0.00 Exterior Perimeter of Walls | |
| 0.00 Surface Area | 0.00 Number of Squares | 0.00 Total Perimeter Length |
| 0.00 Total Ridge Length | 0.00 Total Hip Length | 0.00 Area of Face 1 |

JACKSON, CORLA                                                                 JACKSON, CORL

## JACKSON DEMANDS JURY TRIAL

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January 2012, I filed the foregoing document with the clerk of court, and deposited a copy of the same, registered mail to:

Registered Agent: GMAC Mortgage LLC

CSC-LAWYERS INCORPORATION SERVICES INCORPOERATED
150 SOUTH PERRY STREET
MONTGOMERY, ALABAMA. 36104

PRINCIPAL OFFICE: GMAC MORTGAGE
100 WITMER RAOD
HORSHAM, PA. 19044

**C.C. COPIES TO:**
PRESIDENT & VICE PRESIDENT OF THE UNITED STATES
UNITES STATES ATTORNEY GENERAL
GOVERNOR OF ALABAMA
ATTORNEY GENERAL OF ALABAMA
SECURITY'S EXCHANGE
HILLERY CLINTON
GOVERNOR RICK PERRY
BARRY FREEDMAN
IVAN PARKER
L.DANIEL MIMS
CNN NEWS
OPRAH WHINFREY STATION
TYLER PERRY PRODUCTIONS
STEPHEN STILBERG

OTHER NEWS STATIONS TO BE ADDED

**NOTARY**

Dated this 18, day of January, 2012
**JACKSON DEMAND BY JURY TRIAL**
NUMBER OF DOCUMENTS FILED WITH
CASE LAWS ATTACHED (1-2) PAGES

Corla Jackson
13230 Tom Gaston Road
Mobile, Alabama. 36695
251.554.1785. 251.865.0735
Total Documents Filed: _____

STATE OF ALA. MOBILE CO.
I HEREBY CERTIFY THE
PLEADING WAS FILED

2012 JAN 18 PM 4:33

CLERK CIRCUIT COURT

State of Alabama
County of Mobile
Expiration 11-3-12

## JACKSON DEMANDS JURY TRIAL

# Exhibits & Case Laws

Number Of Pages:_____

As a result of the foregoing transaction, Smith and others ultimately initiated litigation against Walden in the Montgomery Circuit Court (case no. CV–95–1093), seeking a judgment declaring the ownership of certain property. Walden filed several counterclaims against Smith, seeking damages for default on a promissory note, breach of a joint-venture agreement, and fraudulent suppression. Because a detailed summary of the background of these disputes was provided in Walden v. Hutchinson, 987 So.2d 1109 (Ala.2007), from which we quote extensively below, we use the terms defined therein as defined terms in this opinion.