UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: July 13, 2012 at 10:00 a.m.
Objection Deadline: July 6, 2012 at 4:00 p.m.

--------------------------------------------------------- x
                                          :
In re                                     :        Chapter 11
                                          :
RESIDENTIAL CAPITAL, LLC,                 :        Case No. 12-12020 (MG)
                                          :
                        Debtors.          :        Jointly Administered
                                          :
--------------------------------------------------------- x

**OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE TO
APPLICATIONS FOR SEPARATE ORDERS AUTHORIZING THE
EMPLOYMENT AND RETENTION OF (I) MORRISON & FOERSTER LLP
AS BANKRUPTCY COUNSEL; (II) CENTERVIEW PARTNERS LLC AS
INVESTMENT BANKER; (III) CARPENTER LIPPS & LELAND LLP AS
SPECIAL LITIGATION COUNSEL; (IV) DORSEY & WHITNEY LLP AS
SPECIAL SECURITIZATION AND INVESTIGATORY COUNSEL; (V)
ORRICK, HERRINGTON & SUTCLIFFE LLP AS SPECIAL
SECURITIZATION TRANSACTIONAL AND LITIGATION COUNSEL; (VI)
MERCER (US) INC. AS COMPENSATION CONSULTANT; (VII)
RUBENSTEIN ASSOCIATES, INC. AS CORPORATE COMMUNICATIONS
CONSULTANT; (VIII) FTI CONSULTING, INC. AS FINANCIAL ADVISOR;
(IX) CURTIS, MALLET-PREVOST, COLT & MOSLE LLP AS CONFLICTS
COUNSEL; (X) MOELIS & COMPANY LLC AS INVESTMENT BANKER;
(XI) ALIXPARTNERS LLP AS FINANCIAL ADVISOR; AND (XII)
PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS**

TRACY HOPE DAVIS
UNITED STATES TRUSTEE
Brian S. Masumoto
Michael T. Driscoll
Trial Attorneys
33 Whitehall Street, 21st Floor
New York, New York 10004
Tel. No. (212) 510-0500
Fax. No. (212) 668-2255

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ............................................................................................... iii

I.      SUMMARY STATEMENT ..................................................................................... 2

II.     BACKGROUND ..................................................................................................... 3
        A.      General ........................................................................................................ 3
        B.      Morrison & Foerster Application ............................................................... 4
        C.      Centerview Application .............................................................................. 6
        D.      Carpenter Lipps Application ...................................................................... 7
        E.      Dorsey & Whitney Application .................................................................. 9
        F.      Orrick Application ..................................................................................... 10
        G.      Mercer Application .................................................................................... 12
        H.      Rubenstein Application ............................................................................. 14
        I.      FTI Application .......................................................................................... 15
        J.      Curtis Application ...................................................................................... 16
        K.      Moelis Application ..................................................................................... 18
        L.      AlixPartners Application ........................................................................... 19

III.    DISCUSSION ........................................................................................................ 20
        A.      The Governing Law ................................................................................... 20
                1.      Section 327(a) .................................................................................. 20
                2.      Section 327(e) .................................................................................. 21
                3.      Sections 330 and 331 ....................................................................... 22
        B.      The Services to be Provided by Certain Professionals May
                Result in Duplication ................................................................................ 23
        C.      Additional Disclosures Are Required to Determine Whether
                Certain Professionals Are Disinterested or Not Adverse ........................ 24
                1.      Morrison & Foerster ......................................................................... 25
                2.      Centerview ....................................................................................... 26
                3.      Carpenter Lipps ............................................................................... 26
                4.      Dorsey & Whitney ........................................................................... 27
                5.      Orrick ............................................................................................... 27
                6.      Mercer .............................................................................................. 28
                7.      Rubenstein ....................................................................................... 28
                8.      FTI .................................................................................................... 29
                9.      Moelis ............................................................................................... 29
                10.     AlixPartners ..................................................................................... 30

D.    Professionals Should Provide Adequate Notice on Any Rate Increases ...............30

E.    Professionals Should Apply the Balance of the Retainers to the First
      Interim Fee Applications.........................................................................................32

F.    Professionals Should Not Charge Outside Counsel Fees as
      Expenses of the Estate ...........................................................................................34

G.    Professionals Should Submit Time Records in Compliance
      with the United States Trustee Guidelines.............................................................35

H.    The Debtors' OCP Motion Departs from the Typical Procedures
      in Cases of Similar Size and Complexity ..............................................................36

IV.    CONCLUSION.................................................................................................................37

# TABLE OF AUTHORITIES

**Cases**

Bank Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610
   (2d Cir. 1999) .................................................................................................22

Diamond Lumber v. Unsecured Creditors' Comm., 88 B.R. 773
   (Bankr. N.D. Tex 1998) ..................................................................................25

In re 419 Co., 133 B.R. 867 (Bankr. N.D. Ohio 1991) .....................................25

In re Borders Group, Inc., 465 B.R. 195 (Bankr. S.D.N.Y. 2011) ...............34

In re Brous, 370 B.R. 563 (Bankr. S.D.N.Y. 2007) .........................................35

In re Cenargo Intern., PLC, 294 B.R. 571 (Bankr. S.D.N.Y. 2003) ..............34

In re Crafts Retail Holding Corp., 378 B.R. 44 (Bankr. E.D.N.Y. 2007) .......34

In re Drexel Burham Lambert Group, 133 B.R. 13 (Bankr. S.D.N.Y. 1991) .........................34, 35

In re Engel, 124 F.3d 567 (3d Cir. 1997) .........................................................21

In re Fernandez, 441 B.R. 84 (Bankr. S.D. Tex. 2010) ...................................23

In re First Hartford Corp., 23 B.R. 729 (Bankr. S.D.N.Y. 1982) ..................23

In re Ginco, Inc., 105 B.R. 620 (Bankr. D. Colo. 1988) .................................22

In re Granite Partners, 219 B.R. 22 (Bankr. S.D.N.Y. 1998) ........................25

In re Insilco Tech., Inc., 291 B.R. 628 (Bankr. D. Del. 2003) ..............32, 33

In re JMK Constr. Group, Ltd., 441 B.R. 222 (Bankr. S.D.N.Y. 2010) .......21

In re Johns-Manville Corp., 32 B.R. 728 (S.D.N.Y. 1983) ...........................21

In re Keene Corp., 205 B.R. 690 (Bankr. S.D.N.Y. 1997) ............................25

In re Knudsen Corp., 84 B.R. 668 (9th Cir. B.A.P. 1988) .............................33

In re Leslie Fay Cos., 175 B.R. 525 (Bankr. S.D.N.Y. 1994) ................25, 30

In re Matco Elec. Group, Inc., 383 B.R. 848 (Bankr. N.D.N.Y. 2008) .........25

In re Nana Daly's Pub, Ltd., 67 B.R. 782 (Bankr. E.D.N.Y. 1986) ..........................................22, 23

In re Pillowtex, Inc., 304 F.3d 246 (3d Cir. 2002)...........................................................25

In re Rockaway Bedding, Inc., Case No. 07-14890, 2007 WL 1461319
        (Bankr. D.N.J. May 14, 2007) .......................................................................26

In re Saint Vincents Catholic Medical Center of New York, Case No. 07-14890 (CMG),
        (Bankr. E.D.N.Y. July 1, 2010) .....................................................................33

In re Value City Holdings, Case No. 08-14195 (JMP), 2010 WL 3705285
        (Bankr. S.D.N.Y. Sept. 22, 2010) ..................................................................35

In re Worldcom, Inc., 311 B.R. 151 (Bankr. S.D.N.Y. 2004) .......................................22

Rome v. Braunstein, 19 F.3d 54 (1st Cir. 1994).................................................25, 30

**Statutes & Rules**

11 U.S.C. § 327.................................................................................................... *passim*
11 U.S.C. § 328.................................................................................................... *passim*
11 U.S.C. § 330.................................................................................................... *passim*
11 U.S.C. § 331.................................................................................................... *passim*
11 U.S.C. § 503.....................................................................................................34
11 U.S.C. § 547.....................................................................................................25
28 U.S.C. § 586.......................................................................................................1
Fed. R. Bankr. P. 2014 ......................................................................................... *passim*

**Other Authorities**

Administrative Order M-104 ...................................................................................35
Administrative Order M-389 ...................................................................................35
Administrative Order M-412 ...................................................................................35
United States Trustee Guidelines for Reviewing Applications for Compensation and
Reimbursement of Expenses Filed Under 11 U.S.C. § 330.................................2, 31, 35

TO:    THE HONORABLE MARTIN GLENN,
         UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"),

in furtherance of the duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5), hereby

respectfully files her Objection (the "Objection") to the entry of interim and/or final orders

approving the retention applications of (i) Morrison & Foerster LLP ("Morrison & Foerster") as

Bankruptcy Counsel (the "Morrison & Foerster Application," ECF Docket No. 506); (ii)

Centerview Partners LLC ("Centerview") as Investment Banker (the "Centerview Application,"

ECF Docket No. 507); (iii) Carpenter Lipps & Leland LLP ("Carpenter Lipps") as  Special

Litigation Counsel (the "Carpenter Lipps Application," ECF Docket No. 508); (iv) Dorsey &

Whitney LLP ("Dorsey & Whitney") as Special Securitization and Investigatory Counsel (the

"Dorsey & Whitney Application," ECF Docket No. 509); (v) Orrick, Herrington & Sutcliffe LLP

("Orrick") as Special Securitization Transactional and Litigation Counsel (the "Orrick

Application," ECF Docket No. 510); (vi) Mercer (US) Inc. ("Mercer") as Compensation

Consultant (the "Mercer Application," ECF Docket No. 511); (vii) Rubenstein Associates, Inc.

("Rubenstein") as Corporate Communications Consultant (the "Rubenstein Application," ECF

Docket No. 512);  (viii) FTI Consulting, Inc. ("FTI") as Financial Advisor (the "FTI

Application," ECF Docket No. 526); (ix) Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis") as

Conflicts Counsel (the "Curtis Application," ECF Docket No. 527); (x) Moelis & Company LLC

("Moelis") as Investment Banker (the "Moelis Application," ECF Docket No. 528); (xi)

AlixPartners LLP ("AlixPartners") as Financial Advisor (the "AlixPartners Application," ECF

Docket No. 529 and, collectively with the other retention applications, the "Retention

Applications") and (xii) the motion seeking authority to employ and pay professionals utilized in

1

the ordinary course (the "OCP Motion," ECF Docket No. 514).  In support of the Objection, the

United States Trustee states as follows:

## I.  SUMMARY STATEMENT

The United States Trustee objects to each of the eleven Retention Applications and the

OCP Motion because these applications do not comply with the requirements of the Bankruptcy

Code, the Federal Rules of Bankruptcy Procedure, and/or the United States Trustee Guidelines.

Specifically, the United States Trustee raises the following issues:

- Morrison & Foerster, Carpenter Lipps, Dorsey & Whitney, and Orrick seek to perform services that may result in duplication.

- Morrison & Foerster, Centerview, Carpenter Lipps, Dorsey & Whitney, Orrick, Mercer, Rubenstein, FTI, Moelis, and AlixPartners do not disclose sufficient information to make a determination of whether the Debtors' professionals are disinterested and whether the Creditors' Committee's professionals hold an adverse interest.

- Morrison & Foerster, Carpenter Lipps, Dorsey & Whitney, Orrick, Mercer, Rubenstein, Curtis, and FTI do not disclose the amount of notice to be provided on hourly rate increases.

- Morrison & Foerster, Centerview, Carpenter Lipps, Dorsey & Whitney, Orrick, Curtis, and FTI are not clear as to whether the professionals seek to hold their respective retainers until the conclusion of the case rather than applying the balance of the retainers to the first interim fee application.

- Centerview, Mercer, Rubenstein, and Moelis seek to charge the Debtors' estates for their legal fees (not in connection with indemnification rights) as an expense of the estates.

- Mercer and Rubenstein, who will be compensated on an hourly basis, seek to submit time records in quarter hour increments in violation of the United States Trustee Guidelines.

- The Debtors' OCP Motion departs from the typical procedures in cases of similar size and complexity.

As set forth in detail below, absent modification of these provisions or absent

supplemental affidavits being filed to address the disclosure inquiries, the Retention Applications

should not be approved.[1]

## II. BACKGROUND

### A.    General

1.    On May 14, 2012 (the "Petition Date"), Residential Capital, LLC ("ResCap") and certain of its direct and indirect subsidiaries (collectively, the "Debtors") each filed petitions for relief under chapter 11, title 11, United States Code (the "Bankruptcy Code").  ECF Doc. No. 1.

2.    The Debtors' chapter 11 cases have been consolidated, for procedural purposes only, and are being jointly administered under Federal Rule of Bankruptcy Procedure ("Rule") 1015(b), pursuant to an order of the Court.  ECF Docket No. 59.

3.    On May 16, 2012, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in these cases.  ECF Doc. No. 102.

4.    The Debtors currently are operating their business and managing their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.    On July 3, 2012, the Court entered an order approving the United States Trustee's appointment of Arthur J. Gonzalez, Esq. as the Chapter 11 Examiner in these cases.  ECF Docket No. 674.

---

[1] The United States Trustee also requests that the retention orders for Moelis and AlixPartners include the following language:

> Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among Ally Financial Inc. ("AFI"), Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

6.      On June 26, 2012, the Debtors filed a motion seeking entry of an order
establishing procedures for interim compensation and reimbursement of expenses of
professionals ("Proposed Interim Compensation Order") that is also scheduled to be heard on
July 13, 2012.  See ECF Docket No. 513.  The Proposed Interim Compensation Order would
allow the retained professionals in this case to be paid 80% of their fees and 100% of their
expenses on a monthly basis following the filing of monthly statements and absent an objection
to the professionals' monthly fee statements.  Id.

7.      On June 26, 2010, the Debtors filed the OCP Motion.  ECF Docket No. 514.
Among other provisions, the Debtors seek authority to pay a professional up to $75,000 per
month (the "Monthly Limit") or in the aggregate of $750,000 during the pendency of the case
(the "Case Limit") without filing an application pursuant to Section 327.  Id. at ¶ 10(iii).   In
addition, the OCP Motion allows the Creditors' Committee to consent to raising the $75,000
Monthly Limit.  Id.  Further, under the OCP Motion, the Debtors reserve the right to seek the
raising of the Case Limit.  Id.

**B.      Morrison & Foerster Application**

8.      On June 26, 2012, the Debtors filed an application seeking the retention of
Morrison & Foerster as the Debtors' Bankruptcy Counsel pursuant to Section 327(a) of the
Bankruptcy Code  nunc pro tunc to the Petition Date.  ECF Docket No. 506.  The Morrison &
Foerster Application is supported by the Declaration of Larren M. Nashelsky, a partner of
Morrison & Foerster (the "Nashelsky Declaration").  Id., Ex. 2.

9.      According to the Morrison & Foerster Application, the Debtors seek approval to
employ Morrison & Foerster to provide the following services:

(a) advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

(b) attending meetings and negotiating with creditors and parties in interest;

(c) advising the Debtors in connection with any sale of assets in these Chapter 11 cases;

(d) taking all necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors' interests in negotiations concerning all significant litigation in which the Debtors are involved, including, but not limited to, objections to claims filed against the Debtors or their estates;

(e) preparing all motions, applications, answers, orders, reports, and papers necessary to the administration of the Chapter 11 cases;

(f) taking any necessary action on behalf of the Debtors to obtain approval of solicitation procedures, a disclosure statement and confirmation of a Chapter 11 plan;

(g) providing U.S. tax advice to the Debtors regarding restructuring matters;

(h) appearing before this Court, any appellate courts, and the United States Trustee for the Southern District of New York (the "United States Trustee") to protect the interests of the Debtors' estates before such Courts and the United States Trustee;

(i) performing other necessary legal services for the Debtors in connection with the Chapter 11 cases, including (i) analyzing the Debtors' leases and executory contracts and the assumption or assignment thereof, (ii) analyzing the validity of liens against the Debtors, and (iii) advising on corporate, litigation, and other legal matters; and

(j) taking all steps necessary and appropriate to bring the Chapter 11 cases to conclusion.

Id. at ¶ 7.

10.    According to the Morrison & Foerster Application, the Debtors paid Morrison & Foerster a retainer of $3,500,000 in December 2011.  Id. at ¶ 14.  The balance of the retainer as of June 26, 2012 was $2,637,816.96.  Id. at n.4.  The remaining retainer will be applied as "a

5

credit towards postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the procedures established by the Court for awarding fees and expenses to professionals during the Chapter 11 cases." Id. at ¶ 14.

11.    In the year prior to the Petition Date, the Debtors paid Morrison & Foerster compensation in the aggregate of $22,572,673 for "debt counsel services." Id. at ¶15.

12.    According to the Morrison & Foerster Application, "Morrison & Foerster will file with the Court and serve upon the U.S. Trustee and the Creditors' Committee appointed in these Chapter 11 cases a notice of any changes to its hourly billing rates for attorneys or other personnel performing services for the Debtors." Id. at n.1.

13.    According to the Nashelsky Declaration, Morrison & Foerster represented ResCap and Ally Financial Inc. by conducting an investigation into certain "robo-signing" allegations made by governmental authorities. Nashelsky Decl. at ¶ 26. This representation ended in April 2011. Id.

**C.    Centerview Application**

14.    On June 26, 2012, the Debtors filed an application seeking the retention of Centerview as the Debtors' Investment Banker pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code nunc pro tunc to the Petition Date. The Centerview Application is supported by the Declaration of Marc D. Puntus, a partner and co-head of the Restructuring Group of Centerview (the "Puntus Declaration"). Id., Ex. 2.

15.    According to the Centerview Application:

the Debtors paid Centerview an aggregate of $2,900,000 in full payment of the Monthly Advisory Fees for the months of October 2011 through May 2012 and $54,155 as reimbursement for Centerview's expenses billed through May 13, 2012. In addition, the Debtors paid Centerview $5,000,000 for the Financing Fee associated with the $1.45 billion and $150 million debtor-in-possession financings obtained by the Debtors, an Interim Transaction Fee of $1,200,000 and 50% of

6

the Restructuring Fee ($6,250,000), all pursuant to the terms of the Engagement
Letter.  Centerview also received an expense retainer of $50,000.

Id. at ¶ 28.

16.     According to the Puntus Declaration, Centerview has represented certain potential

parties-in-interest in matters related to the Debtors' bankruptcy case.  Puntus Decl., Schedule 2.

17.     According to the proposed order attached to the Centerview Application (the

"Proposed Centerview Retention Order"), "[t]he relief granted herein shall be binding upon any

chapter 11 trustee appointed in any of these chapter 11 cases, or upon any chapter 7 trustee

appointed in the event of a subsequent conversion of any of these chapter 11 cases to cases under

chapter 7."  Proposed Centerview Retention Order at ¶ 16.

## D.     Carpenter Lipps Application

18.     On June 26, 2012, the Debtors filed an application seeking the retention of

Carpenter Lipps as the Debtors' Special Litigation Counsel pursuant to Section 327(e) of the

Bankruptcy Code nunc pro tunc to the Petition Date.  ECF Docket No. 508.  The Carpenter Lipps

Application is supported by the Declaration of Jeffrey A. Lipps, a partner of Carpenter Lipps (the

"Lipps Declaration").  Id., Ex. 2.

19.     According to the Carpenter Lipps Application, the Debtors seek approval to

employ Carpenter Lipps to:

(a) litigation related to the outstanding securitizations sponsored by the Debtors
and advice concerning the Debtors' rights and responsibilities under the
transaction documents for these securitizations;

(b) litigation between the Debtors and the providers of financial guaranty
insurance for certain of the securitizations sponsored by the Debtors;

(c) responding to governmental investigations;

(d) assisting the Debtors in responding to other discovery requests and
investigations, such as the Rule 2004 examination by the Creditors' Committee,

7

the investigation that will be conducted by the examiner and discovery relating to various pending motions in the bankruptcy;

(e) litigation related to the Debtors' activities as servicer; and

(f) other defined and finite matters as they may arise for which the Debtors request that CLL render services.

Id. at ¶ 5.

20.    The Debtor paid Carpenter Lipps a pre-petition retainer of $500,000.  Id. at ¶ 21. After applying pre-petition fees and expenses, the remaining balance of the retainer was $118,886.15 as of June 26, 2012.  See Lipps Decl. at n.2.

21.    The remaining retainer will be applied as "a credit towards postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the procedures established by the Court for awarding fees and expenses to professionals during the Chapter 11 cases."  Id. at ¶ 17.  According to the proposed order attached to the Carpenter Lipps Application (the "Proposed Carpenter Lipps Retention Order"), Carpenter Lipps "shall apply any remaining amount of its prepetition retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the procedures established by the Court for awarding fees and expenses to [Carpenter Lipps]."  Proposed Carpenter Lipps Retention Order at ¶ 4.

22.    According to the Proposed Carpenter Lipps Retention Order, Carpenter Lipps "shall file with the Court and serve upon the U.S. Trustee and the Creditors' Committee appointed in these Chapter 11 cases a notice of any changes to its hourly billing rates for attorneys or other personnel performing services for the Debtors."  Id. at ¶ 4.

E.    **Dorsey & Whitney Application**

23.    On June 26, 2012, the Debtors filed an application seeking the retention of Dorsey

& Whitney as the Debtors' Special Securitization and Investigatory Counsel pursuant to Section

327(e) of the Bankruptcy Code  nunc pro tunc to the Petition Date.  ECF Docket No. 509.  The

Dorsey & Whitney Application is supported by the Declaration of Thomas Kelly, a partner of

Dorsey & Whitney (the "Kelly Declaration").  Id., Ex. 2.

24.    According to the Dorsey & Whitney Application, the Debtors seek approval to

employ Dorsey & Whitney in connection with:

> the Ongoing Matters involving private label securities suits (Allstate, Huntington,
> Stichting and Union, as identified on Schedule 1 to the Kelly Declaration), Dorsey
> & Whitney will continue its representation of non-debtor defendants, including
> former directors and officers of the Debtors under indemnification agreements, to
> the extent the protection of the stay is not extended to them.  Such representation
> is likely to include pursuit of motions to dismiss in Huntington and Stichting and,
> as necessary, discovery and trial. The nature of the work is described in detail in
> the Debtors' motion seeking to extend the protection of the stay to the non-debtor
> defendants.

Id. at ¶ 14.

25.    According to the Kelly Declaration, Dorsey & Whitney has not conducted a

review to determine whether individual Dorsey & Whitney attorneys received services from or

have a business relationship with the Debtors and other parties-in-interest.  See Kelly Decl. at ¶

22.  Dorsey & Whitney attorneys may have familial relationships with members of professional

firms involved or employed by parties-in-interest.  Id.  Dorsey & Whitney has not conducted a

review of whether the attorneys that prepared the Kelly Declaration have "banking, insurance,

brokerage or investment activities or familial connections" with the Debtors or other parties-in-

interest."  Id.

9

26.     With respect to hourly rates increase, Dorsey & Whitney states that "[s]uch hourly rates are subject to change from time to time in the regular course of Dorsey & Whitney's business."  See Dorsey & Whitney Application at ¶ 17.  According to the proposed order attached to the Dorsey & Whitney Application (the "Proposed Dorsey & Whitney Retention Order"), "Dorsey & Whitney shall file with the Court and serve upon the U.S. Trustee and the Creditors' Committee appointed in these Chapter 11 cases a notice of any changes to its hourly billing rates for attorneys or other personnel performing services for the Debtors."  Proposed Dorsey & Whitney Retention Order at ¶ 4.

27.     The Debtors paid Dorsey & Whitney a pre-petition retainer of $250,000 on December 23, 2011.  Kelly Decl. at ¶ 25.  According to the Kelly Declaration, "[t]he portion of the retainer not used to compensate Dorsey & Whitney for its prepetition services and expenses will be held by Dorsey & Whitney as a retainer for postpetition services and expenses . . . ."  Id. at ¶ 25; see also Proposed Dorsey & Whitney Retention Order at ¶ 5 ("Dorsey & Whitney shall apply any remaining amount of its prepetition retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the procedures established by the Court for awarding fees and expenses to Dorsey & Whitney.").

28.     According to the Kelly Declaration, in the ninety days prior to the Petition Date, "Dorsey & Whitney received payments for its work regarding the Ongoing Matters in an aggregate amount equal to $694,735.78."  Kelly Decl. at ¶ 25.

**F.     Orrick Application**

29.     On June 26, 2012, the Debtors filed an application seeking the retention of Orrick as the Debtors' Special Securitization Transactional and Litigation Counsel pursuant to Section 327(e) of the Bankruptcy Code  nunc pro tunc to the Petition Date.  ECF Docket No. 510.  The

10

Orrick Application is supported by the Declaration of Katharine I. Crost, a partner of Orrick (the "Crost Declaration").  Id., Exhibit 2.

30.     According to the Orrick Application, the Debtors seek approval to employ Orrick "to continue its performance of legal services in connection with, *inter alia*, (a) the Debtors' rights and obligations relating to their securitization and servicing agreements, (b) certain claims and litigation asserted by insurers, trustees and/or investors against the Debtors arising from or related to residential mortgage backed securities, and (c) the sale of the Debtors' assets."  Id. at ¶ 5.  Specifically, Orrick will provide the following services:

> (a) advise the Debtors regarding their rights and obligations relating to their securitization and servicing agreements (including various REMIC and tax issues), including matters that may arise in connection with amendments to, or notifications required under, the securitization and servicing agreements, as necessary or appropriate in connection with the asset purchase agreement, the settlement agreement, the debtor in possession financing agreement, any proposed plans of reorganization, or otherwise;

> (b) represent the Debtors in connection with claims and litigation asserted by insurers, trustees and/or investors against the Debtors arising from or related to residential mortgage-backed securities;

> (c) assist with the sale of the Debtors' assets;

> (d) assist the Debtors in responding to requests for documents and information in response to inquiries from government, law enforcement and litigants; and

> (e) provide any other tasks as mutually agreed upon by the Debtors and Orrick.

Id. at ¶ 16.

31.     With respect to hourly rates increases, Orrick states that "[s]uch hourly rates are subject to change from time to time in the regular course of Orrick's business."  Orrick Application at n.3.  According to the proposed order attached to the Orrick Application (the "Proposed Orrick Retention Order"), "Orrick shall file with the Court and serve upon the U.S. Trustee and the Creditors' Committee appointed in these Chapter 11 cases a notice of any

11

changes to its hourly billing rates for attorneys or other personnel performing services for the

Debtors." Proposed Orrick Retention Order at ¶ 4.

32.    According to the Crost Declaration, in the ninety days prior to the Petition Date,

the Debtors paid Orrick $1,437,922.55 for fees and expenses.  See Crost Decl. at ¶ 31.

33.    The Debtors paid Orrick pre-petition retainers that aggregate to $325,000.  Orrick

Application at ¶ 21; Crost Decl. at ¶ 30.  Orrick is seeking "to apply any remaining amounts of

the Retainer as a credit toward postpetition fees and expenses incurred to date and ongoing, after

such postpetition fees and expenses are approved by the Court."  Id.; see also Proposed Orrick

Retention Order at ¶ 4 ("Orrick shall apply any remaining amount of its prepetition Retainer as a

credit toward postpetition fees and expenses, after such postpetition fees and expenses are

approved pursuant to the procedures established by the Court for awarding fees and expenses to

Orrick.").

## G.    Mercer Application

34.    On June 26, 2012, the Debtors filed an application seeking the retention of Mercer

as the Debtors' Compensation Consultant pursuant to Section 327(a) of the Bankruptcy Code

nunc pro tunc to the Petition Date.  ECF Docket No. 511.  The Mercer Application is supported

by the Declaration of John Dempsey, a partner of Mercer (the "Dempsey Declaration").  Id.,

Exhibit 1.

35.    According to the Mercer Application, Mercer will maintain records of its services

in quarter-hour increments.  Id. at ¶ 16.  Mercer's billing system is unable to record time records

in tenth of an hour increments.  Id.  According to the proposed order attached to the Mercer

Application (the "Proposed Mercer Retention Order"), "Mercer and its professionals shall be

excused from maintaining time records in tenth of an hour increments, as set forth in the Fee

Guidelines; provided, however, that Mercer shall instead maintain time records in quarter hour increments. Proposed Mercer Retention Order at ¶ 4.

36.     According to the Proposed Mercer Retention Order, "Mercer shall file with the Court and serve upon the U.S. Trustee and the Creditors' Committee appointed in these Chapter 11 cases a notice of any changes to its hourly billing rates for personnel performing services for the Debtors." Id. at ¶ 5.

37.     According to the Mercer Application, the Debtors have agreed to indemnify and reimburse Mercer in accordance with the indemnification provisions set forth in the engagement letter attached to the Mercer Application (the "Mercer Engagement Letter"). Mercer Application at ¶ 17. According to the Mercer Engagement Letter, Mercer will charge the Debtors for "legal fees associated with our retention [and] subsequent fee application with the bankruptcy court . . . ." Mercer Engagement Letter at 3. According to the Proposed Mercer Retention Order, "[p]ursuant to the terms of the Engagement Letter, and in accordance with the Fee Guidelines, Mercer is entitled to reimbursement by the Debtors for reasonable expenses incurred in connection with the performance of its engagement, as set forth in the Engagement Letter." Proposed Mercer Retention Order at ¶ 6.

38.     According to the Proposed Mercer Retention Order, Mercer seeks entry of an indemnification provision contained "in section 8(B) on page 12 of the Engagement Letter." Proposed Mercer Retention Order at ¶ 7. This provision is not contained in the Mercer Engagement Letter attached to the Mercer Application.

39.     According to the Mercer Application, Mercer shall file with the Court and serve upon the U.S. Trustee and the Creditors' Committee appointed in these Chapter 11 cases a notice of any changes to its hourly billing rates for personnel performing services for the Debtors.

Mercer Application at n.4; <u>see also</u> Proposed Mercer Retention Order at ¶ 4 ("Mercer shall file

with the Court and serve upon the U.S. Trustee and the Creditors' Committee appointed in these

Chapter 11 cases a notice of any changes to its hourly billing rates for personnel performing

services for the Debtors.").

40.    According to the Mercer Application, the Debtors paid Mercer $51,000 prior to

the Petition Date.  <u>See</u> Mercer Application at ¶ 21.  "As of the Petition Date, Mercer held a

prepetition claim against the Debtors in the amount of $23,381.88 for fees and expenses related

to compensation consulting services.  Mercer, however, has agreed to waive this pre-petition

claim against the Debtors . . . ."  <u>Id</u>.

**H.    Rubenstein Application**

41.    On June 26, 2012, the Debtors filed an application seeking the retention of

Rubenstein as the Debtors' Corporate Communication Consultant pursuant to Section 327(a) of

the Bankruptcy Code <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date.  ECF Docket No. 512.  The Rubenstein

Application is supported by the Declaration of Howard Rubenstein, the President of Rubenstein

(the "Rubenstein Declaration").  <u>Id</u>., Ex. 1.

42.    According to the Rubenstein Application, the Debtors paid Rubenstein $150,000

from February 2012 to the Petition Date.  <u>Id</u>. at ¶ 19; <u>see also</u> Rubenstein Decl. at ¶ 12.

43.    According to the Rubenstein Application and the proposed order attached to the

Rubenstein Application (the "Proposed Rubenstein Retention Order"), Rubenstein intends to

maintain records of its services in quarter hour increments.  <u>See</u> Rubenstein Application at ¶ 16;

Proposed Rubenstein Retention Order at ¶ 4 ("Rubenstein shall instead present to the Court

reasonably detailed descriptions of those services provided on behalf of the Debtors, which shall

set forth a description of the services rendered by each professional and the amount of time in

quarter hour increments spent on each date by each such individual rendering services on behalf of the Debtors.").

44.     According to the Rubenstein Application, Rubenstein will provide a notice to the United States Trustee and the Creditors' Committee of any hourly rate increase.  See Rubenstein Application at n.3; Proposed Rubenstein Retention Order at ¶ 5.

45.     According to the Rubenstein Application, the Debtors have agreed, in accordance with the engagement letter attached to the Rubenstein Application (the "Rubenstein Engagement Letter"), to:

> indemnify and hold harmless Rubenstein for any and all third party claims, actions, damages, liabilities, costs and expenses, including reasonable attorneys' fees and expenses, arising out of Rubenstein's utilization of any authorized information.  However, such indemnification shall not apply to any losses, claims, damages, liability, costs or expenses Rubenstein incurs as a result of its gross negligence, bad faith, self dealing, breach of fiduciary duty or reckless or willful misconduct.

Rubenstein Application at ¶ 17.

46.     According to the Proposed Rubenstein Retention Order, Rubenstein is seeking reimbursement of Rubenstein's legal counsel fee, "which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise."  Proposed Rubenstein Retention Order at ¶ 6.

**I.     FTI Application**

47.     On June 27, 2012, the Debtors filed an application seeking the retention of FTI as the Debtors' Financial Advisor pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code nunc pro tunc to the Petition Date.  ECF Docket No. 526.  The FTI Application is supported by the Declaration of William J. Nolan, a Managing Director of FTI (the "Nolan Declaration").  Id., Ex. 2.

48.     According to the FTI Application, the Debtors paid FTI retainers totaling
$1,350,000 prior to the Petition Date.  See FTI Application at ¶ 23; Nolan Decl. at ¶ 19.  "FTI
will apply the remaining amount of its prepetition Retainer as a credit towards postpetition fees
and expenses, after such postpetition fees and expenses are approved pursuant to the procedures
established by the Court for awarding fees and expenses to professionals during the Chapter 11
cases."  FTI Application at ¶ 23; Nolan Decl. at ¶ 19.

49.     According to the Nolan Declaration, the Debtors paid FTI $7,241,578 in the
ninety days prior to the Petition Date.  Nolan Decl. at ¶ 18.

50.     According to the proposed order attached to the FTI Application (the "Proposed
FTI Retention Order"), "FTI shall file with the Court and serve upon the U.S. Trustee and the
Creditors' Committee appointed in these Chapter 11 cases a notice of any increases in the rates
set forth in the Application and/or the Engagement Agreement and/or the Addendum."  Proposed
FTI Retention Order at ¶ 8.

**J.      Curtis Application**

51.     On June 27, 2012, the Debtors filed an application seeking the retention of Curtis
as the Debtors' Conflicts Counsel pursuant to Sections 327(a) and 328(a) of the Bankruptcy
Code nunc pro tunc to the Petition Date.  ECF Docket No. 527.  The Curtis Application is
supported by the Declaration of Steven J. Reisman, a member of Curtis (the "Reisman
Declaration").  Id., Ex. 2.

52.     According to the Curtis Application, the Debtors seek to employ Curtis to the
provide the following services:

a. advise the Debtors with respect to their powers and duties as debtors-in-
possession in the continued management and operation of their businesses and
properties;

16

b. attend meetings and negotiate with representatives of creditors and other parties in interest;

c. take necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the estates;

d. prepare motions, applications, answers, orders, appeals, reports and papers necessary to the administration of the Debtors' estates;

e. take any necessary action on behalf of the Debtors to obtain approval of a disclosure statement and confirmation of one or more Chapter 11 plans;

f. represent the Debtors in connection with obtaining postpetition financing, including use of cash collateral;

g. advise the Debtors in connection with any potential sale of assets;

h. appear before the Court, any appellate courts and the U.S. Trustee, and protect the interests of the Debtors' estates before those Courts and the U.S. Trustee;

i. consult with the Debtors regarding tax matters; and

j. perform all other legal services for the Debtors in connection with these cases, as required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, (i) the analysis of the Debtors' leases and executory contracts and the assumption, rejection or assignment thereof, (ii) the analysis of the validity of liens against the Debtors, (iii) the analysis of issues concerning the transfer of claims against, and equity securities in, the Debtors as they may impact net operating losses of the Debtors; and (iv) advice on corporate, litigation, employment, intellectual property, governmental investigatory, regulatory and environmental matters.

Id. at ¶ 13.

53.    According to the Reisman Declaration, the Debtor paid Curtis a $250,000 retainer

on or about March 5, 2012.  See Reisman Decl. at ¶ 8.  According to the Curtis Application, the

balance of the retainer as of the Petition Date was approximately $118,354.  See Curtis

Application at ¶ 25.

17

54.     According to the proposed order attached to the Curtis Application (the "Proposed Curtis Retention Order"), "Curtis shall file with the Court and serve upon the U.S. Trustee and the Creditors' Committee appointed in these Chapter 11 cases a notice of any changes to its hourly billing rates for attorneys or other personnel performing services for the Debtors." Proposed Curtis Retention Order at ¶ 7.

### K.     Moelis Application

55.     On June 27, 2012, the Creditors' Committee filed an application seeking the retention of Moelis as the Creditors' Committee's Investment Banker pursuant to Sections 328 and 1103 of the Bankruptcy Code nunc pro tunc to May 16, 2012.  ECF Docket No. 529.  The Moelis Application is supported by the Declaration of Jared J. Dermont, a Managing Director of Moelis (the "Dermont Declaration").  Id., Ex. C.

56.     According to the proposed order seeking the retention of Moelis (the "Proposed Moelis Retention Order"), the Debtors are seeking the authority for the reimbursement of fees and expenses of outside legal counsel to Moelis.  Proposed Moelis Retention Order at ¶ 3.

57.     The Proposed Moelis Retention Order seeks to permit Moelis to maintain time records in one hour increments, exempt all non-restructuring professionals and personnel in administrative departments (including legal) from maintaining time records, and to exempt restructuring professionals from utilizing project categories.  Proposed Moelis Retention Order at ¶ 5.

58.     According to the engagement letter attached to the Moelis Application (the "Moelis Engagement Letter"), Moelis seeks to "expressly disclaim any fiduciary duty to any party." Moelis Engagement Letter at ¶ 6.

18

59.     The Moelis Engagement Letter specifies that "[o]ur affiliates, employees, officers and partners may at any time own the Company's securities or those of another entity involved in a transaction contemplated hereby."  Moelis Engagement Letter at ¶ 8.

60.     Annex A to the Moelis Engagement Letter specifies that "Indemnified Persons" under the Engagement Letters includes individuals associated with its affiliates.  The Moelis Engagement Letter does not specify whether Moelis will utilize any individuals associated with its affiliates during its engagement.  See Moelis Engagement Letter, Annex A.

61.     Schedule 2 attached to the Dermont Declaration indicates that Moelis has connections to certain "Potential Parties in Interest."  See Dermont Decl., Schedule 2.  In addition, Schedule 2 indicates that the identities of two affiliates of Potential Parties in Interest (as defined therein) have not been disclosed.  Id.

## L.     AlixPartners Application

62.     On June 27, 2012, the Creditors' Committee filed an application seeking the retention of AlixPartners as the Creditors' Committee's Financial Advisor pursuant to Sections 328 and 1103 of the Bankruptcy Code nunc pro tunc to May 21, 2012.  ECF Docket No. 530. The AlixPartners Application is supported by the Declaration of Harvey R. Kelly, a Managing Director of AlixPartners (the "Kelly Declaration").  Id., Ex. C.

63.     According to the AlixPartners Application, the Debtors state that under an engagement letter (the "AlixPartners Engagement Letter"), if AlixPartners finds it desirable to engage an Independent Contractor, AlixPartners will cause the Independent Contractor to file affidavit of disinterestedness.  Id. at ¶ 14.

64.     According to the AlixPartners Application, AlixPartners may use employees from each of its U.S. and non-U.S. subsidiaries.  See AlixPartners Application at ¶ 15.

65.     In the Kelly Declaration, AlixPartners states that the conflict search was performed and results were disclosed as to AlixPartners and each of its U.S. and non-U.S. subsidiary affiliates.  See Kelly Decl. at ¶ 5.  Among others, AlixPartners disclosed the following:  AlixPartners represents two undisclosed clients that are "unsecured creditors, mortgage/monoline insurers and counterparties to servicing agreements to the Debtors" in matters unrelated to the bankruptcy case.  Id. at ¶ 5.  AlixPartners also currently represents several undisclosed confidential clients "who are identified as or affiliated with parties identified as members of the creditors' committee, parties in litigation, unsecured creditors, and/or parties to servicing agreements related to the Debtors . . . in certain litigation matters related to the Debtors . . . ."  Id.  AlixPartners currently represents MBIA, a member of the Creditors' Committee, "in various litigation matters including matters related and unrelated to the Debtors." Id.  AlixPartners represents clients that are adverse parties to Residential Funding Company, LLC and affiliated entities in matters related to the Debtors.  Id.

66.     According to the AlixPartners Engagement Letter, "[n]othing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Committee, the Committee members or the Debtors." AlixPartners Engagement Letter at 5.

### III. DISCUSSION

**A.      The Governing Law**

The Objection relies on Sections 327(a), 327(e), 330 and 331 of the Bankruptcy Code.

**1.      Section 327(a)**

Pursuant to Section 327(a):

the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not

hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

"[A]pproval under Section 327 [of the Bankruptcy Code] establishes only that [a professional] may be employed by the debtor-in-possession, *and not that his employment will therefore or thereafter be compensated from estate funds*." In re Engel, 124 F.3d 567, 572 (3d Cir. 1997)(emphasis added); see also In re Johns-Manville Corp., 32 B.R. 728, 731 (S.D.N.Y. 1983)("section 327 approvals are merely preliminary 'go aheads' rather than conclusive determinations [of fees and expenses]").  Therefore, Section 327 establishes no guaranteed right to payment of fees.  Rather, this provision simply sets the guideposts for retention, such as requiring that the professional is disinterested and lacks any materially adverse interest.  See 11 U.S.C. § 327(a).

## 2.    Section 327(e)

Pursuant to Section 327(e):

The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

The "requirements for retention under section 327(a) that a professional not hold or represent an interest adverse to the estate apply equally to retention under section 327(e)." In re JMK Constr. Group, Ltd., 441 B.R. 222, 230-31 (Bankr. S.D.N.Y. 2010) (citation omitted).  The only substantive difference in application is that under section 327(e) the adverse interest analysis is with respect to "*the matter on which such attorney is to be employed*."  11

U.S.C. §327(e) (emphasis added); <u>see also</u> <u>In re Ginco, Inc.</u>, 105 B.R. 620, 621 (Bankr. D. Colo.

1988) (finding that under either Section 327(a) or 327(e), proposed counsel cannot represent an

interest adverse to the estate, with the only difference in the adverse interest standard being that

subsection (e) mandates that the interest not be adverse with respect to the matter on which the

attorney is to be employed).  The term adverse interest is not defined in the Bankruptcy Code.

However, the Second Circuit has defined the term as:

> (1) to possess or assert any economic interest that would tend to lessen the value
> of the bankruptcy estate or that would create either an actual or potential dispute
> in which the estate is a rival claimant; or (2) to possess a predisposition under
> circumstances that render such a bias against the estate.

<u>In re Worldcom, Inc.</u>, 311 B.R. 151, 163 (Bankr. S.D.N.Y. 2004)(quoting <u>Bank Brussels</u>

<u>Lambert v. Coan (In re AroChem Corp.)</u>, 176 F.3d 610, 623 (2d Cir.1999).

### 3.    Sections 330 and 331

Section 330(a) provides:

> After notice to the parties in interest and the United States Trustee and a hearing,
> and subject to sections 326, 328, and 329, the court may award to a trustee . . . an
> examiner, . . . or a professional person employed under section 327 or 1103-
>
> (A)    reasonable compensation for actual, necessary services rendered by the
> trustee, examiner, professional person, or attorney and by any
> paraprofessional person employed by any such person; and
> (B)    reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

Section 331 further permits a professional to apply to the court for compensation "before

such date as is provided under section 330 of this title."  11 U.S.C. § 331.  With respect to the

interim fee applications pursuant to Section 331, interim fee awards are discretionary, and are

subject to reexamination and adjustment during the course of the case.  <u>See</u> <u>In re Nana Daly's</u>

<u>Pub, Ltd.</u>, 67 B.R. 782, 787 (Bankr. E.D.N.Y. 1986) ("Any award of interim compensation is

within the discretion of the court and will be considered based upon the circumstances of the

particular case.")(citing In re First Hartford Corp., 23 B.R. 729 (Bankr. S.D.N.Y. 1982)(deferring

payment of interim compensation pending confirmation of a debtor's plan of reorganization));

see also In re Fernandez, 441 B.R. 84, 98-99 (Bankr. S.D. Tex. 2010) (noting that due to the

speculative nature of interim fee awards, they are "always subject to the court's reexamination

and adjustment during the course of the case.")(additional citations omitted).

**B.      The Services to be Provided by Certain Professionals May Result in Duplication**

The United States Trustee objects to the services to be provide by Morrison & Foerster,

Carpenter Lipps, Dorsey & Whitney, and Orrick on the grounds that these services may result in

unnecessary duplication unless efforts are made to eliminate such a risk.

Morrison & Foerster, as counsel to the Debtors has broad overall responsibility for all

aspects of the bankruptcy case, including matters relating to the securitization of loans, litigation

related thereto and any related investigations.  Nevertheless, the specialized knowledge and skills

necessary to handle efficiently such matters often justify the retention of special counsel or

counsels to deal with specific matters.  Here, the Debtors propose to retain three special counsel

– Carpenter Lipps, Dorsey & Whitney, and Orrick – to handle matters related to securitization,

related litigation and related investigations.

While each special counsel will handle discrete matters not handled by any other

professionals, the scope of the retentions – including, in particular, "catch all" provisions – are

broad enough to raise concerns over possible duplication of services.  As set forth in the

respective applications: (i) Carpenter Lipps' retention includes litigation relating to

securitizations, responding to discovery requests and investigations and "other defined and finite

matters as they may arise for which the Debtors request that [Carpenter Lipps] render services

23

(see Carpenter Lipps Application at ¶ 8); (ii) Orrick's retention includes advice and litigation

involving securitization and servicing agreements, assisting the Debtors in responding to requests

for documents and information in response to inquiries from the government, law enforcement

and litigants, "assist[ing] with the sale of the Debtors' assets," and "provid[ing] any other tasks

as mutually agreed upon by the Debtors and Orrick" (see Orrick Application at ¶ 16); and (iii)

Dorsey & Whitney's retention includes private label securities, government investigations, and

"any similar matters that may arise during the pendency of the cases." (see Dorsey & Whitney

Application at ¶¶ 9 and 13).

The "catch all" provisions should be replaced by references to specific services to be

rendered, and greater detail should be provided for potentially overlapping services, such as the

proposed services relating to securitization, discovery and investigations.[2]

C.      **Additional Disclosures Are Required to Determine Whether Professionals Are Disinterested or Not Adverse**

The United States Trustee objects to the approval of the below Retention Applications on

an interim or final basis until additional disclosures are provided in compliance with Rule 2014

of the Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule 2014").  Bankruptcy Rule 2014

provides that professionals seeking to be retained disclose "to the best of the applicant's

knowledge, all of the [professional's] connections with the debtor, creditors, any party in interest

. . . ."  Fed. R. Bankr. P. 2014(a).  The purpose of Bankruptcy Rule 2014 is to provide the

bankruptcy court and the United States Trustee with information to make an informed decision

---

[2] The United States Trustee suggests that the following provisions be included in the proposed retention orders:

ORDERED, that [Professional] shall use its best efforts to avoid any duplication of services provided by any of the Debtor(s)' other retained professionals in these chapter 11 cases.

ORDERED, that such other services as may be requested by the Debtors and agreed to by [Professional] shall be subject to separate approval by Court order.

as to whether the retained professional is disinterested.  Rome v. Bruanstein, 19 F.3d 54, 59 (1st

Cir. 1994); In re Leslie Fay Cos., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).

Such compliance is the responsibility and burden of each retained professional.  See In re

Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997).  The term "connections" is broad and

strictly construed for the purposes of Bankruptcy Rule 2014.  "It is equally clear that the level of

disclosure outlined in the Rule is mandatory, whether or not that disclosure would unearth a

conflict of interest."  In re Matco Elec. Group, Inc., 383 B.R. 848, 852 (Bankr. N.D.N.Y. 2008).

The requirement to disclose all connections is not subjective "whereby the professional discloses

only those 'connections' that he/she/it concludes are relevant."  Id. at 853; see also In re Granite

Partners, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998)(noting that the court should not have to

"rummage through files or conduct independent fact finding investigations" to determine

whether a professional should be disqualified).

###    1.    Morrison & Foerster

- Paragraph 14 of the Morrison & Foerster Application indicates that the
  Debtors paid a $3,500,000 retainer to Morrison & Foerster in December 2011.
  Footnote 4 of the Morrison & Foerster Application states that the balance of
  the retainer as of June 26, 2012 was $2,637,816.96.  The information,
  however, does not disclose the dates of invoices for which payment was
  received during the ninety-day period prior to the Petition Date, the period of
  time covering those invoices, and the date of payment for those invoices.  It is,
  therefore, not possible to determine whether Morrison & Foerster has received
  any preferential payments under Section 547(b) of the Bankruptcy Code,
  which could possibly raise concerns with respect to the firm's
  disinterestedness.  See, e.g., In re Pillowtex, Inc., 304 F.3d 246 (3d Cir. 2002);
  In re 419 Co., 133 B.R. 867, 869 (Bankr. N.D. Ohio 1991) (quoting Diamond
  Lumber v. Unsecured Creditors' Comm., 88 B.R. 773, 779 (N.D. Tex.
  1988)("[A]ny large or unusual payment by a Debtor to its counsel within the
  preference period are relevant to a conflicts analysis and therefore warrant
  scrutiny by the bankruptcy court when approval is sought to employ pre-
  petition counsel postpetition.").  Also, as noted infra at Section III(E) of this
  Objection, Morrison & Foerster has not indicated whether it will apply the
  retainer to its first interim fee application.

- Paragraph 26 of the Nashelsky Declaration indicates that Morrison & Foerster represented ResCap and Ally Financial Inc. by conducting an investigation into certain "robo-signing" allegations made by governmental authorities. Additional disclosures are required on whether Morrison & Foerster can be adverse to Ally Financial Inc.

### 2.    Centerview

- Paragraph 28 of the Centerview Application indicates that the Debtors paid Centerview various fees and expenses prior to the Petition Date.  The information, however, does not disclose the dates of invoices for which payment was received during the ninety-day period prior to the Petition Date, the period of time covering those invoices, and the date of payment for those invoices.

- Paragraph 28 of the Centerview Application also indicates that Centerview received an expense retainer of $50,000.  The information does not disclose the balance remaining of the retainer as of the Petition Date.  Also, as noted infra at Section III(E) of this Objection, Centerview has not indicated whether it will apply the retainer to its first interim fee application.

- Schedule 2 of the Puntus Declaration indicates that Centerview has represented certain potential parties-in-interest in matters related to the Debtors' bankruptcy case.  Additional disclosures are required for each potential party in interest as to whether the percentage of annual gross revenue that such representation generates for Centerview is above one percent.  See In re Rockaway Bedding, Inc., Case No. 07-14890, 2007 WL 1461319, *3 (Bankr. D.N.J. May 14, 2007)(noting that a professional's representation of PNC Bank was less than one percent of the professional's gross annual revenue as a factor in finding no conflict of interest).

- Paragraph 16 of the Proposed Centerview Retention Order seeks the following provision to be entered by the Court: "[t]he relief granted herein shall be binding upon any chapter 11 trustee appointed in any of these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of these chapter 11 cases to cases under chapter 7." Additional disclosure is required to ensure that Centerview does not seek to override Section 726, which affords the Chapter 7 Trustee administrative priority over the administrative expenses of a converted Chapter 11 case.  To the extent that Centerview seeks such an administrative priority over a Chapter 7 Trustee, the United States Trustee reserves her right to object.

### 3.    Carpenter Lipps

- Paragraph 21 of the Carpenter Lipps Application indicates that the Debtor paid Carpenter Lipps a pre-petition retainer of $500,000.  The information,

however, does not disclose the dates of invoices for which payment was received during the ninety-day period prior to the Petition Date, the period of time covering those invoices, and the date of payment for those invoices. Also, as noted infra at Section III(E) of this Objection, Carpenter Lipps has not indicated whether it will apply the retainer to its first interim fee application.

**4.    Dorsey & Whitney**

- Paragraph 22 of the Kelly Declaration states that Dorsey & Whitney has not conducted a review to determine whether individual Dorsey & Whitney attorneys have a business or familial relationship with the Debtors and other parties-in-interest.  Additional disclosures on these potential relationships are needed to ensure that Dorsey & Whitney does not have an adverse interest on the matter that it is being retained.

- Paragraph 25 of the Kelly Declaration indicates that the Debtors paid Dorsey & Whitney a pre-petition retainer of $250,000 on December 23, 2011.  The information does not disclose the balance remaining of the retainer as of the Petition Date.  Also, as noted infra at Section III(E) of this Objection, Dorsey & Whitney has not indicated whether it will apply the retainer to its first interim fee application.

- Paragraph 25 of the Kelly Declaration also indicates that in the ninety days prior to the Petition Date, "Dorsey & Whitney received payments for its work in an aggregate amount equal to $694,735.78."  The information, however, does not disclose the dates of invoices for which payment was received during the ninety-day period prior to the Petition Date, the period of time covering those invoices, and the date of payment for those invoices.

**5.    Orrick**

- Paragraph 21 of the Orrick Application indicates that the Debtors paid Orrick pre-petition retainers that aggregate $325,000.  The information does not disclose the balance remaining of the retainer as of the Petition Date.  Also, as noted infra at Section III(E) of this Objection, Orrick has not indicated whether it will apply the retainer to its first interim fee application.

- Paragraph 31 of the Crost Declaration indicates that during the ninety days prior to the Petition Date, the Debtors paid Orrick $1,437,922.55 for fees and expenses.  The information, however, does not disclose the dates of invoices for which payment was received during the ninety-day period prior to the Petition Date, the period of time covering those invoices, and the date of payment for those invoices.

27

6.      **Mercer**

- Paragraph 21 of the Mercer Application indicates that the Debtors paid Mercer $51,000 prior to the Petition Date. Id. at ¶ 21. The information, however, does not disclose the dates of invoices for which payment was received during the ninety-day period prior to the Petition Date, the period of time covering those invoices, and the date of payment for those invoices.

- Paragraph 7 of the Proposed Mercer Retention Order references an indemnification provision contained "in section 8(B) on page 12 of the [Mercer] Engagement Letter." This provision is not contained in the Mercer Engagement Letter attached to the Mercer Application. Additional disclosures are required to determine whether this language varies or departs from the United States Trustee's requested language on indemnification provisions.[3] To the extent that the indemnification provision at issue here does not comply, the United States Trustee reserves her rights to object to that provision.

7.      **Rubenstein**

- Paragraph 19 of the Rubenstein Application indicates that the Debtors paid Rubenstein $150,000 from February of 2012 to the Petition Date. The information, however, does not disclose the dates of invoices for which payment was received during the ninety-day period prior to the Petition Date, the period of time covering those invoices, and the date of payment for those invoices.

- Paragraph 17 of the Rubenstein Application indicates that the Debtors have agreed to indemnify Rubenstein as set forth in the Rubenstein Engagement

---

[3] ORDERED, that, notwithstanding anything to the contrary in the Engagement Letter, the indemnification provisions are hereby modified and restated in its entirety as follows:

All requests of [Professional] for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall [Professional] be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

In the event that [Professional] seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by [Professional] for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in [Professional's] own application (both interim and final) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

Letter and the Proposed Rubenstein Retention Order.  Additional disclosures are required to determine whether this language varies or departs from the United States Trustee's requested language on indemnification provisions.  To the extent that the indemnification provision at issue here does not comply, the United States Trustee reserves her rights to object to that provision.

8.    **FTI**

- Paragraph 23 of the FTI Application indicates that the Debtors paid FTI retainers totaling $1,350,000 prior to the Petition Date.  The information does not disclose the balance remaining of the retainers as of the Petition Date.  Also, as noted _infra_ at Section III(E) of this Objection, Orrick has not indicated whether it will apply the retainer to its first interim fee application.

- Paragraph 18 of the Nolan Declaration indicates that the Debtors paid FTI $7,241,578 in the ninety days prior to the Petition Date.  The information, however, does not disclose the dates of invoices for which payment was received during the ninety-day period prior to the Petition Date, the period of time covering those invoices, and the date of payment for those invoices.

9.    **Moelis**

- Annex A to the Moelis Engagement Letter specifies that "Indemnified Persons" under the Moelis Engagement Letters includes individuals associated with its affiliates.  Additional disclosures are required on whether Moelis will utilize any individuals associated with its affiliates during its engagement.[4]

- Schedule 2 attached to the Dermont Declaration indicates that Moelis has connections to certain "Potential Parties in Interest."  Schedule 2 does not specify whether the whether the percentage of annual gross revenue that such representation generates for Moelis is above one percent for each client.  In addition, Schedule 2 does not name the identities of two of the affiliates of Potential Parties in Interest.  Additional disclosures are required on both of these issues.

---

[4] The United States Trustee suggests the following provision be added to the Proposed Moelis Retention Order:

> ORDERED, that, notwithstanding anything in the Application or the Engagement letter to the contrary, [Professional] shall (i) to the extent that [Professional] uses the services of independent contractors, subcontractors or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in this(ese) case(s), [Professional] shall pass-through the cost of such Contractors to the Debtor(s) at the same rate that [Professional] pays the Contractors; (ii) seek reimbursement for actual costs only; and (iii) ensure that the Contractors are subject to the same conflict checks as required for [Professional] and (iv) shall file with the Court such disclosures required by Bankruptcy Rule 2014.

29

- Paragraph 6 of the Moelis Engagement Letter indicates that Moelis seeks to "expressly disclaim any fiduciary duty to any party." Moelis should disclose whether it seeks to disclaim its status as a fiduciary. See Leslie Fay, 175 B.R. at 532 (noting that the requirements of section 327 "serve the important policy of ensuring that all professionals appointed pursuant to [this section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities."); Rome, 19 F.3d at 58 (noting that professionals retained under Section 327 have fiduciary responsibilities.). To the extent that Moelis seeks to disclaim it fiduciary duties, the United States Trustee reserves her rights to object to Moelis' retention on those grounds.

- Paragraph 8 of the Moelis Engagement Letter indicates that "[o]ur affiliates, employees, officers and partners may at any time own the Company's securities or those of another entity involved in a transaction contemplated hereby." Additional disclosures are required on whether partners or individuals with similar duties as partners own securities of the Debtors or are involved in business transactions with the Debtors.

10.    **AlixPartners**

- Paragraph 5 of the Kelly Declaration indicates that AlixPartners represents two undisclosed clients that are "unsecured creditors, mortgage/monoline insurers and counterparties to servicing agreements to the Debtors" in matters unrelated to the bankruptcy case. Additional disclosures are required on the identity of these clients to ensure that AlixPartners is not adverse to the estate.

- Paragraph 5 of the Kelly Declaration indicates that AlixPartners represents undisclosed, confidential clients in certain litigation related to the Debtors. Additional disclosures are required on the identity of these clients and the nature of their representation by AlixPartners to ensure that AlixPartners is not adverse to the estate.

- Paragraph 5 of the Kelly Declaration also indicates that AlixPartners represents MBIA, a member of the Creditors' Committee, "in various litigation matters including matters related and unrelated to the Debtors." Additional disclosures are required on the nature of this representation by AlixPartners to ensure that AlixPartners is not adverse to the estate.

- Paragraph 5 of the Kelly Declaration indicates that AlixPartners represents clients that are adverse parties to Residential Funding Company, LLC and affiliated entities in matters related to the Debtors. Additional disclosures are required on the identity of these clients to ensure that AlixPartners is not adverse to the estate.

- Page 5 of the AlixPartners Engagement Letter states that "[n]othing in this Agreement is intended to create, nor shall be deemed or construed to create a

fiduciary or agency relationship between AlixPartners and the Committee, the Committee members or the Debtors." Additional disclosures are required on whether AlixPartners seeks to disclaim its status as a fiduciary. To the extent that AlixPartners seeks to disclaim it fiduciary duties, the United States Trustee reserves her rights to object to AlixPartners' retention on those grounds**.**

**D.     Professionals Should Provide Adequate Notice on Any Rate Increases**

The United States Trustee objects to the Retention Applications of Morrison & Foerster, Carpenter Lipps, Dorsey & Whitney, Orrick, Mercer, Rubenstein, Curtis, and FTI on the grounds that the applicants do not disclose the amount of notice to be provided on hourly rate increases.

Bankruptcy Rule 2014 expressly provides, among other things, that a retention application:

> shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, *any proposed arrangement for compensation* and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in office of the United States Trustee.

Fed. R. Bankr. P. 2014 (emphasis added). A professional's duty of disclosure under Bankruptcy Rule 2014 continues through the closure of the case. See, e.g., In Granite Partners, 219 B.R. at 35 (although Bankruptcy Rule 2014 does not expressly require supplemental or continuing disclosure, Section 327(a) implies a continuing duty of disclosure).

Further, the United States Trustee Guidelines require that every fee application provide, among other information, the "names and hourly rates of all applicant's professionals and paraprofessionals who billed time, explanation of any changes in hourly rates from those previously charged, and statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." See United States Trustee Guidelines (b)(1)(iii).

The concern is that without conspicuous disclosure of rate increases, the reviewer,

typically the United States Trustee or the Creditors' Committee, must sift through various

applications to determine whether a professional's rate increase went into effect at any time

during the fee application period.  The absence of this information significantly adds to the time

required to review such fee applications.[5]

**E.      Professionals Should Apply the Balance of the Retainers to the First Interim Fee
Applications**

The United States Trustee objects to the Retention Applications of Morrison & Foerster,

Centerview, Carpenter Lipps, Dorsey & Whitney, Orrick, Curtis, and FTI on the grounds that

these applications do not indicate whether the pre-petition retainers paid by the Debtors will be

applied to the first interim fee application or whether the firms will maintain an "evergreen

retainer."[6]  To the extent that these firms intend to maintain evergreen retainers, each has failed

to satisfy their burden that they are entitled to hold such retainers until the Bankruptcy Court's

approval of their final fee applications at the end of the case.

---

[5] In order to alleviate these concerns, the United States Trustee suggests, that the following provision be added to retention orders:

> ORDERED, that prior to any increases in [Professional's] rates, as set forth in paragraph [] of the Application, [Professional] shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the United States Trustee and any official committee.  The supplemental affidavit shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of the Bankruptcy Code and state whether Professional's client has consented to the rate increase.  The United States Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in Section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to Section 330 of the Bankruptcy Code.

[6] An evergreen retainer has been described as follows:

> The evergreen retainer is similar to a security retainer in that it is to secure payment of fees for future services.  But in the case of an evergreen retainer, the funds are not intended to be used to pay approved fees until approval of the final fee application.  Instead, the holder of an evergreen retainer intends to be paid its interim fees and expenses out of operating cash.

In re Insilco Tech., Inc., 291 B.R. 628, 632 (Bankr. D. Del. 2003).

In the Southern District of New York, retained professionals holding pre-petition retainers draw down on the pre-petition retainer upon the Court's approval of the professional's first interim fee application. See, e.g., In re AMR Corporation, Case No. 11-15463 (SHL); In re Old Carco LLC (f/k/a Chrysler LLC) Case No. 09-50002 (ALG); Motors Liquidation Company (f/k/s/ General Motors Corporation) Case No. 09-50026 (REG); In re Chemtura Corp., Case No. 09-11233 (REG); In re Almatis B.V., Case No. 10-12308 (MG).[7]

Evergreen retainers are used to minimize a professional's exposure to the risk of non-payment. Insilco, 291 B.R. at 632. Four findings are necessary to approve an evergreen retainer:

1.  The case is an unusually large one in which an exceptionally large amount of fees accrue each month;

2.  The court is convinced that waiting an extended period for payment would replace an undue hardship on counsel;

3.  The court is satisfied that counsel can respond to any reassessment; and

4.  The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

In re Knudsen Corp., 84 B.R. 668, 672-73 (9th Cir. B.A.P. 1988).

Under the first and second Knudsen factors, none of the professionals seeking retention in this case have demonstrated any basis for being treated differently from any other administrative creditors. First, while this is a large Chapter 11 case, its size and the potential professionals' fees are not unusually large in the Southern District of New York. Second, the professionals would not experience undue hardship because under the Proposed Interim Compensation Order, professionals would receive 80% of their fees and 100% of their expenses incurred each month.

---

[7] But see Saint Vincents Catholic Medical Center of New York, Case No. 05-14945 (CGM) (Bankr. S.D.N.Y. July 1, 2010) (bench decision) (overruling the United States Trustee's objection to an evergreen retainer held by Debtors' professionals).

For these reasons, the Court should deny the use of evergreen retainers in the case.

Consequently, each professional should be required to draw down on its retainer once the Court

approves the first interim fee application.[8]

**F.      Professionals Should Not Charge Outside Counsel Fees as Expenses of the Estate**

The United States Trustee objects to the Retention Applications of Centerview, Mercer,

Rubenstein, and Moelis because these professionals seek to charge the Debtors' estates for their

legal fees (not in connection with indemnification rights) as an expense of the estates.   The

United States Trustee acknowledges that this Court's ruling in In re Borders Group, Inc. et al.,

456 B.R. 195 (Bankr. S.D.N.Y. 2011) would permit the reimbursement of outside attorney fees

and expenses by the above-referenced professionals in accordance with its decision.   However,

given the differing rulings on the matter by the bankruptcy judges in the Southern District of

New York, the United States Trustee is compelled to take a consistent position regardless of the

Court in which she appears.   Accordingly, the United States Trustee maintains that such an

expense is not permitted.   For an attorney to be paid from a debtor's estate, that attorney must be

retained under Section 327 or compensated under Section 503(b)(4) of the Bankruptcy Code.

See In re Crafts Retail Holding Corp., 378 B.R. 44 (Bankr. E.D.N.Y. 2007)(financial advisor

precluded, as a matter of law, from being paid the fees of its attorney as a reimbursement of

expenses); In re Cenargo Intern., PLC, 294 B.R. 571 (Bankr. S.D.N.Y. 2003)(fees of barristers

that debtor's attorney used to assist in English administration proceedings could not be

compensated where barristers' retention was not approved by the bankruptcy court); see also

Drexel Burham Lambert Group, 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991)(fees to negotiate a

---

[8] The United States Trustee suggests that the following provision be added to retention orders:

ORDERED, that [Professional] shall apply any remaining amounts of its prepetition retainer as a
credit toward post-petition fees and expenses, after such post-petition fees and expenses are
approved pursuant to the first Order of the Court awarding fees and expenses to [Professional].

34

retention are part of an investment banker's overhead and are more than adequately covered by a retention fee). Accordingly, any request for authority to seek reimbursement of attorney fees (other than in connection with indemnification) should not be permitted.

### G.    Professionals Should Submit Time Records in Compliance with the United States Trustee Guidelines

The United States Trustee objects to the Retention Applications of Mercer and Rubenstein on the grounds that these professionals, who will be compensated on an hourly basis, seek to submit time records in quarter hour increments. These requests are in contravention of the "United States Trustee Guidelines for Reviewing Applications for Compensation" (the "United States Trustee Guidelines") and therefore should be denied.[9]

According to the United States Trustee Guidelines, "[t]ime entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour." United States Trustee Guidelines (b)(4)(v). The exception to this requirement is usually allowed only in the case of financial advisors that are retained pursuant to a flat fee structure. For hourly engagements, time entries in one-tenth of an hour increments are required to ensure that the Debtors' estate is not over-billed for a professional's services. Allowing quarter-hour increments would allow a professional to bill the estate for a quarter-hour of work even where the professional spend a few minutes performing a task. Other professionals who are being retained

---

[9] General Order 389, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases ("Administrative Order M-389") expressly states that "these Amended Guidelines are consistent with, and supplemental to, the requirements contained in the UST Guidelines and shall be followed by each applicant for allowance of compensation and reimbursement of expenses." Administrative Order M-389 further provides that "[t]he UST Guidelines are patterned in large measure after the guidelines promulgated pursuant to the order of Chief Judge Lifland dated June 24, 1991." That Order, Administrative Order M-104, required that "[e]ach professional and paraprofessional must record time in increment of tenths of an hour, and must keep contemporaneous time records on a daily basis." See also In re Brous, 370 B.R. 563, 569 n.8. (Bankr. S.D.N.Y. 2007)(adopting United States Trustee Guidelines); In re Value City Holdings, Inc., Case No. 08-14197 (JMP), 2010 WL 3705285, *3 (Bankr. S.D.N.Y. Sept. 22, 2010)("In addition to conforming to the requirements of the Bankruptcy Code, requests for professional compensation must also conform with the Bankruptcy Rules, UST Fee Guidelines and the SDNY Guidelines.").

in these cases on an hourly basis have agreed to maintain time records in one-tenth of an hour increments.  Accordingly, the United States Trustee requests that Mercer and Rubenstein maintain time records in one tenth of an hour increments.

## H.    The Debtors' OCP Motion Departs from the Typical Procedures in Cases of Similar Size and Complexity

The United States Trustee objects to the Debtors' OCP Motion to the extent that it departs from the typical ordinary course order in cases of similar size and complexity in the Southern District of New York.  As noted supra, the Debtors seek the authority to pay professionals utilized in the ordinary course up to a $75,000 Monthly Limit or a $750,000 Case Limit without being required to file a separate application pursuant to Section 327.  OCP Motion at ¶ 10(iii).  Additionally, the OCP Motion allows the Creditors' Committee to consent to raising the $75,000 Monthly Limit.  Id.  Further, under the OCP Motion, the Debtor reserves the right to seek to amend the Case Limit.  Id.

The United States Trustee objects to the Monthly Limit and the Case Limit on the grounds that these proposed limits are higher than in cases of similar size and complexity.  For example, in AMR Corporation, Case No. 12-15463 (SHL), ECF Docket No. 643, the monthly limit is $50,000 and the case limit is $500,000.  Here, the Monthly Limit and the Case Limit in this case represent a fifty percent increase from AMR Corporation without any justification for this departure.  The Debtors have not established that the typical compensation earned by these ordinary course professionals approaches the $75,000 Monthly Limit.  Similarly, the need for the $750,000 Case Limit has not been justified, taking into consideration the imminent sale of substantially all of the Debtors' assets.

As to the Creditors' Committee's ability to consent to the Monthly Limit, this appears to be an attempt to be incorporate a "roll over" monthly limit, which the United States Trustee has

routinely objected to in the past.  In addition, to the extent that the Debtors seek to amend the

Case Limit without Court approval, the United States Trustee objects to that relief.  Finally, the

OCP Motion lacks, as is used in <u>AMR Corporation</u>, for a quarterly report that shows the

aggregate amounts incurred and paid to each ordinary course professional and a general

summary of the services rendered during the reported quarter.

## IV.  CONCLUSION

**WHEREFORE,** the United States Trustee respectfully requests that the Court (a) sustain

the foregoing Objections, (b) deny the Retention Applications in their current forms, and (c)

grant such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
      July 6, 2012
                                        TRACY HOPE DAVIS
                                        UNITED STATES TRUSTEE

                        By:    */s/ Brian S. Masumoto*
                                 Brian S. Masumoto
                                 Michael T. Driscoll
                                 Trial Attorneys
                                 33 Whitehall Street, 21st Floor
                                 New York, New York 10004
                                 Tel. No. (212) 510-0500
                                 Fax. No. (212) 668-2255