1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Lead Case No. 12-12020-mg  Adv. Proc. No. 12-01671-mg

4  - - - - - - - - - - - - - - - - - - - -x

5  In the Matters of:

6  RESIDENTIAL CAPITAL, LLC, et al.,

7           Debtors.

8  - - - - - - - - - - - - - - - - - - - -x

9  RESIDENTIAL CAPITAL, LLC, et al.,

10                  Plaintiffs,

11           - against -

12  ALLSTATE INSURANCE COMPANY, et al.,

13                  Defendants.

14  - - - - - - - - - - - - - - - - - - - -x

15

16           United States Bankruptcy Court

17           One Bowling Green

18           New York, New York

19

20           July 10, 2012

21           10:07 AM

22

23  B E F O R E:

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

2

1

2   12-12020-mg   Residential Capital, LLC   Ch. 11

3   Adversary proceeding: 12-01671-mg   Residential Capital, LLC et

4   al v. Allstate Insurance Company et al.

5

6   Doc# 4,13 Evidentiary Hearing RE: Motion for Preliminary

7   Injunction Notice of Motion and Debtors Motion to Extend

8   Automatic Stay or, in the Alternative, for Injunctive Relief

9   Enjoining Prosecution of Certain Pending Litigation Against

10  Debtors Directors and Officers and Non-Debtor Corporate

11  Affiliates.

12

13  Adversary proceeding: 12-01671-mg Residential Capital, LLC et

14  al v. Allstate Insurance Company et al

15  Pre-trial Conference.

16

17  12-12020-mg   Residential Capital, LLC   Ch. 11

18

19  (CC: Doc no. 245) Motion for Relief from Stay Authorizing

20  Debtor(s) To Honor Certain Prepetition Obligations To Movants

21  filed by Mark and Lori Burris.

22

23  (Doc no. 456) Motion for Relief from Stay filed by Yvonne D.

24  Lewis, Sidney T. Lewis.

25

3

1

2  (Doc no. 263) Motion for Relief from Stay filed by Taggart

3  Kenneth.

4

5  (CC: Doc# 320) Status Conference RE: Debtors Motion Pursuant to

6  Fed. R. Bankr. P. 9019 for Approval of the RMBS Settlement

7  Agreements.

8

9  (CC: Doc# 319) Status Conference RE: Debtors Motion for Entry

10  of an Order under Bankruptcy Code Section 365 and Bankruptcy

11  Rule 6006 Authorizing the Debtors to Assume Plan Support

12  Agreements with Talcott Franklin Consenting Claimants.

13

14  (CC: Doc# 318) Status Conference RE: Debtors Motion for Entry

15  of an Order under Bankruptcy Code Section 365 and Bankruptcy

16  Rule 6006 Authorizing the Debtors to Assume Plan Support

17  Agreements with Steering Committee Consenting Claimants.

18

19  Doc# 224 Maine Action Plaintiffs Motion for Limited Relief From

20  the Automatic Stay To Permit the Maine Supreme Court to Issue a

21  Decision in the Case Currently Pending Between the Maine Action

22  Plaintiffs and the Debtor.

23  RESOLVED.

24

25

4

1    Doc# 222 Motion for Limited Relief From The Automatic Stay to

2    Permit Borrowers to Assert Claims, Counterclaims and Defenses

3    in Individual Bankruptcies.

4    RESOLVED.

5

6    (Doc# 90, 47) Final Hearing RE: Motion Authorizing The Debtors

7    To Continue To Perform Under The Ally Bank Servicing Agreements

8    In The Ordinary Course Of Business.

9

10   (CC: Doc# 181, 183) Hearing to consider the Debtors Motion for

11   Supplemental Order (1) Authorizing the Debtors to Continue

12   implementing Loss Mitigation Programs; (II) Approving

13   Procedures for Compromise and Settlement of Certain Claims,

14   Litigations and Causes of Action; (III) Granting Limited Stay

15   Relief to Permit Foreclosure and Eviction Proceedings, Borrower

16   Bankruptcy Cases, and Title Disputes to Proceed; and (IV)

17   Authorizing and Directing the Debtors to Pay Securitization

18   Trustee Fees and Expenses.

19

20   Transcribed by:  Penina Wolicki, Sharona Shapiro

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

5

1   A P P E A R A N C E S :

2   MORRISON & FOERSTER LLP

3        Attorneys for Debtors

4        1290 Avenue of the Americas

5        New York, NY 10104

6

7   BY:  ANTHONY PRINCI, ESQ.

8        JOEL C. HAIMS, ESQ.

9        GARY S. LEE, ESQ.

10       NORMAN S. ROSENBAUM, ESQ.

11       JAMIE A. LEVITT

12       JONATHAN C. ROTHBERG, ESQ.

13

14

15  KRAMER LEVIN NAFTALIS & FRANKEL LLP

16       Attorneys for Official Committee of Unsecured Creditors

17       1177 Avenue of the Americas

18       New York, NY 10036

19

20  BY:  KENNETH H. ECKSTEIN, ESQ.

21       DOUGLAS MANNAL, ESQ.

22       PHILIP BENTLEY, ESQ.

23       RACHAEL L. RINGER, ESQ.

24       P. BRADLEY O'NEILL, ESQ.

25       ELISE SCHERR FREJKA, ESQ.

6

1

2  WHITE & CASE LLP

3      Attorneys for Ad Hoc Group of Junior Secured Noteholders

4      1155 Avenue of the Americas

5      New York, NY 10036

6

7  BY:  HARRISON DENMAN, ESQ.

8      J. CHRISTOPHER SHORE, ESQ.

9

10

11  KIRKLAND & ELLIS LLP

12      Attorneys for Ally Financial & Ally Bank

13      655 Fifteenth Street, N.W.

14      Washington, DC 20005

15

16  BY:  JUDSON D. BROWN, ESQ.

17

18

19  KIRKLAND & ELLIS LLP

20      Attorneys for Ally Financial & Ally Bank

21      601 Lexington Avenue

22      New York, NY 10022

23

24  BY:  RAY C. SCHROCK, ESQ.

25      STEPHEN E. HESSLER, ESQ.

7

1

2   ALSTON & BIRD LLP

3        Attorneys for Wells Fargo Bank, N.A.

4        One Atlantic Center

5        1201 West Peachtree Street

6        Atlanta, GA 30309

7

8   BY:   JOHN C. WEITNAUER, ESQ.

9

10

11   LOWENSTEIN SANDLER PC

12        Attorneys for Cambridge Place et al.

13        1251 Avenue of the Americas

14        New York, NY 10020

15

16   BY:   MICHAEL S. ETKIN, ESQ.

17

18

19   DECHERT LLP

20        Attorneys for Bank of New York Mellon

21        1095 Avenue of the Americas

22        New York, NY 10036

23

24   BY:   GLENN E. SIEGEL, ESQ.

25

8

1

2  SEWARD & KISSEL LLP

3       Attorneys for U.S. Bank National Association

4          as Securitization Trustee

5       One Battery Park Plaza

6       New York, NY 10004

7

8  BY:  ARLENE R. ALVES, ESQ.

9       MARK D. KOTWICK, ESQ.

10

11

12  MORGAN, LEWIS & BOCKIUS LLP

13       Attorneys for Deutsche Bank, et al.

14       101 Park Avenue

15       New York, NY 10178

16

17  BY:  JAMES L. GARRITY, JR., ESQ.

18

19

20  MORGAN, LEWIS & BOCKIUS LLP

21       Attorneys for Deutsche Bank, et al.

22       One Market, Spear Street Tower

23       San Francisco, CA 94105

24

25  BY:  JOHN M. ROSENTHAL, ESQ.

9

1

2    MUNGER, TOLLES & OLSON LLP

3         Attorneys for Berkshire Hathaway Inc.

4         355 South Grand Avenue

5         35th Floor

6         Los Angeles, CA 90071

7

8    BY:  THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

9

10

11   GRAIS & ELLSWORTH, LLP

12        Attorneys for FDIC

13        1211 Avenue of the Americas

14        New York, NY 10036

15

16   BY:  KATHRYN E. MATTHEWS, ESQ.

17

18

19   WOLLMUTH MAHER & DEUTSCH LLP

20        Attorneys for Western & Southern

21        500 Fifth Avenue

22        New York, NY 10110

23

24   BY:  PAUL R. DEFILIPPO, ESQ.

25        STEVEN S. FITZGERALD, ESQ.

10

1

2  ROPES & GRAY LLP

3       Attorneys for RMBS Noteholders

4       1211 Avenue of the Americas

5       New York, NY 10036

6

7  BY:   KEITH H. WOFFORD, ESQ.

8

9

10  TALCOTT FRANKLIN P.C.

11       Attorneys for Consenting Claimant Group

12       208 N. Market Street

13       Suite 200

14       Dallas, TX 75202

15

16  BY:   TALCOTT J. FRANKLIN, ESQ.

17

18

19  CARTER LEDYARD & MILBURN LLP

20       2 Wall Street

21       New York, NY 10005

22

23  BY:   LEONARDO TRIVIGNO, ESQ.

24

25

11

```
1
2   CADWALADER, WICKERSHAM & TAFT LLP
3        Attorneys for MBIA Insurance Co.
4        700 Sixth Street, N.W.
5        Washington, DC 20001
6
7   BY:   MARK C. ELLENBERG, ESQ.
8
9
10  STORCH AMINI & MUNVES P.C.
11       Attorneys for NACBA
12       140 East 45th Street
13       New York, NY 10017
14
15  BY:   THOMAS M. MONAHAN, ESQ.
16
17
18  KILPATRICK TOWNSEND & STOCKTON LLP
19       Attorneys for Nordbank
20       607 14th Street, N.W.
21       Suite 900
22       Washington, DC 20005
23
24  BY:   MARK D. TAYLOR, ESQ. (TELEPHONICALLY)
25
```

12

ALSO PRESENT:  (TELEPHONICALLY)

    LORI BURRIS, Pro Se

    KENNETH TAGGART, Pro Se

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    13

P R O C E E D I N G S

1

2          THE COURT:  Please be seated.  Good morning.

3          MR. LEE:  Good morning, Your Honor.  Gary Lee from

4   Morrison & Foerster, proposed counsel to the debtors.  Your

5   Honor, we filed an amended agenda late last night.  I'm not

6   sure if --

7          THE COURT:  I have it.

8          MR. LEE: -- the Court has a copy.  Excellent.

9          Your Honor, before I turn the podium over to Mr.

10  Princi for the first matter, which is the status conference in

11  the 9019 motion with the RMBS holders, I just wanted to

12  mention, at Mr. Eckstein's request, one adjourned matter, which

13  is the first item on the agenda, the subservicing motion.

14         THE COURT:  Yes.

15         MR. LEE:  Your Honor, this is obviously a very

16  important motion, critical, and underpins a lot of what the

17  debtors are trying to do in this case.  There are discussions

18  ongoing between ResCap, the committee, and Ally regarding this

19  motion.  There's some informal discovery going on.  And we

20  hope, Your Honor, to report on Friday -- at Friday's hearing on

21  what progress has been made in that regard.

22         But I think that Mr. Eckstein just wanted to reflect

23  briefly to Your Honor on that matter before we moved ahead, if

24  that's okay.

25         THE COURT:  Mr. Eckstein?

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    14

1        MR. ECKSTEIN:  Your Honor, good morning.  Kenneth

2   Eckstein, proposed counsel for the official creditors'

3   committee.  I appreciate Mr. Lee giving me a brief opportunity

4   with respect to this motion.

5        Your Honor, the motion that is being referred to was a

6   motion that was filed on the first day of the case, and there

7   was an interim order that was entered.  That actually permitted

8   significant payments to be made during the course of the case

9   with respect to that motion.  The motion has been carried now

10  for several weeks, as Your Honor probably has observed, and

11  with the agreement of the debtor and Ally, has been continued

12  to July 24th.

13        We have, to date, avoided filing a pleading with

14  respect to the motion, and we -- the committee felt that it was

15  appropriate to continue to do due diligence with respect to the

16  facts which had been ongoing quite extensively over the last

17  several weeks.  And our response date currently is July 17th.

18        I did feel it was important, Your Honor, to bring this

19  motion to the Court's attention.  It does have significant

20  implications, as Mr. Lee indicated, to the case.  There is a

21  condition in the Ally DIP that requires the entry of an order

22  by July 31, today, approving the Ally subservicing agreement.

23  When the DIP order was submitted, we had noted in, I believe, a

24  cover letter, that there was a condition in the DIP that was

25  tied to this motion.  And this motion was adjourned; it was not

RESIDENTIAL CAPITAL, LLC, ET AL.                                    15

1   heard on the 18th.

2          And the motion itself involves significant

3   transactions between the debtor and its parent that, as Mr. Lee

4   indicated, we think do go very much to the heart of both the

5   debtors' business operations and to the pre-petition

6   transactions that have existed between the debtor and its

7   parent.

8          So at this point in time, we are going to continue

9   discussions.  We believe that if this matter cannot be

10  consensually resolved, we do expect that the committee will

11  file a pleading on the 17th.  And we would expect the need for

12  an evidentiary hearing to deal with this motion.  I don't know,

13  Your Honor, whether or not you're going to have time on the

14  24th to do that, or if a separate hearing will need to be

15  scheduled.  And I'm sure Your Honor will have to consult your

16  calendar.  But I did want to make sure that Your Honor was

17  aware that this would be a matter that would involve witnesses

18  and documents, if we are not able to reach a consensual

19  resolution to this significant business motion.

20         At this point, it may be that Your Honor wants to

21  reflect.  I think that it would make sense to maybe calendar

22  this for the 13th.  I know we do have a hearing on Friday

23  morning.  And it may be that we can have a further status

24  conference on this motion on the 13th.

25         THE COURT:  Let's do that.  What I'd like to do is --

1   because I need to get a better understanding about what the

2   issues are that may result in an evidentiary hearing, and if

3   necessary or appropriate I would enter a procedures order for

4   the hearing; whether the evidentiary hearing's on the 24th,

5   which is a ResCap omnibus day, but -- I haven't gone through

6   each of the matters, but there's a fairly long list already.

7   So I don't know how many witnesses are anticipated.  But let's

8   take it up --

9            MR. ECKSTEIN:  I think that on the 13th, if need to,

10  we can outline some of the issues and we can get a better sense

11  of what will be necessary.

12           THE COURT:  That's fine.  Thank you, Mr. Eckstein.

13           MR. ECKSTEIN:  Thank you, Your Honor.

14           MR. PRINCI:  Good morning, Your Honor.  Anthony Princi

15  of Morrison & Foerster on behalf of the debtors, and with

16  respect to the first item on the agenda, Your Honor, which is

17  an update on the 9019 motion.

18           THE COURT:  Yes.

19           MR. PRINCI:  So I'm happy to report, Your Honor, that

20  progress is being made.  Let me break down progress into two

21  parts.  First, and perhaps most importantly, as Your Honor may

22  recall from the last time we were addressing this motion, I was

23  informing the Court that we had had an increase in the number

24  of institutional investors who are signing up to the settlement

25  agreement and correspondingly providing the trustees with a

1  direction to adopt the terms of the settlement, and in

2  particular, the 8.7 billion dollar allowed claim.

3        And as Your Honor may recall, that number was

4  originally 290 of the trusts which were affected, in the sense

5  that you have twenty-five percent or more of at least one

6  tranche of those trusts providing the direction to the

7  trustees.  Well, that number has continued to increase since we

8  were last here.  We are now up to 337 of the 392 trusts.  And

9  at the end of the day, Judge, while it always will remain the

10 trustees' claim, it will therefore remain their determination

11 as to whether they will or will not accept this.  As everybody

12 in this courtroom knows, it is those people who have the skin

13 in the game.  So that is meaningful progress.

14        The other progress, Judge, is with respect to the

15 calendaring of the 9019 --

16        THE COURT:  Just let me --

17        MR. PRINCI:  Please.

18        THE COURT:  So when you say 337 of the 392 trusts, one

19 or more classes of -- twenty-five percent or more of holders of

20 one or more classes of RMBS securities within the trusts have

21 agreed to provide a direction to the trustees?

22        MR. PRINCI:  Have signed the settlement agreement and

23 have provided that direction.

24        THE COURT:  And within any given trust, how many

25 classes of securities -- or it probably varies.

1          MR. PRINCI:  It does vary, Your Honor.

2          THE COURT:  Okay.

3          MR. PRINCI:  I will say this.  And while this doesn't

4  end the inquiry that Your Honor or all of us might have, it is

5  important.  We are not aware of anyone, Judge, and I don't

6  believe anybody in this courtroom is aware of anyone, who holds

7  twenty-five percent in the other tranches, and otherwise has

8  directed the trustees.  In fact, I'm not aware of anybody --

9          THE COURT:  Say that again.  I didn't understand --

10          MR. PRINCI:  -- I'm not -- okay.

11          THE COURT:  -- where you were.

12          MR. PRINCI:  The debtors are not aware, Your Honor --

13  and I don't believe anybody else is in the courtroom, including

14  the trustees -- of any single holder of twenty-five percent or

15  more of any other tranche.  And I believe I can inform Your

16  Honor that no other party other than the parties that have

17  signed the settlement agreement has provided any direction to

18  the trustees.  Does that preclude that from happening tomorrow?

19          THE COURT:  So, in other words --

20          MR. PRINCI:  No.

21          THE COURT:  -- in any given trust, twenty-five percent

22  or more of the holders have not instructed the trustee not to

23  approve the settlement.

24          MR. PRINCI:  Correct.  Correct.  All right.  So that's

25  one piece of the progress.

1      The other, Your Honor, is that we, the debtors, have

2  been working with both the creditors' committee and the

3  trustees on the both need for some sort of a process with

4  respect to information exchange, formal and informal, and also

5  the calendaring of the various matters for the 9019 motion.

6  We've made progress on both fronts.  For example, with the

7  committee, we are talking about those very points:  what would

8  a discovery schedule deadline look like, both for fact and for

9  experts; the objection deadline; the hearing date; the opt-in

10  date for the trustees.

11      Having similar discussions with the trustees.  Also,

12  with the trustees, we're talking to them about matters that are

13  particular to them.  So there's issues relating to information

14  exchanges with respect to whether there are any cure notices

15  that are going to need to be filed, and the like.

16      So we are making progress.  We don't have a definitive

17  agreement with either the creditors' committee, on that front,

18  or the trustees.

19      THE COURT:  How many trustees are there?

20      MR. PRINCI:  Four, Your Honor.  But what we have

21  decided to do, Judge, because we are making progress -- and I

22  should mention two other things, I mean, in terms of progress.

23  One of the things that we've expressed to people, Judge, and

24  it's not a matter for debate today, just I'd point out to the

25  Court though, that the one thing the debtors are very mindful

RESIDENTIAL CAPITAL, LLC, ET AL.                    20

1    of is the November 5th hearing for the sale.  That to us, is

2    sacrosanct.  We do not want to allow -- we do not want to take

3    the risk that we could potentially lose the two billion dollar

4    proceeds from the Nationstar sale or from anybody else who

5    outbids Nationstar.  So we, the debtor, at least, are trying to

6    work backwards from that.  We recognize that people -- the

7    committee and the trustees have their individual issues.  And

8    we're trying to work as against that timeline to see if we can

9    make this happen and get back to you with a schedule.

10          On that front, Judge, what we're going to do is see if

11   we can back to you, with the Court's permission, on the hearing

12   on the 24th.  What we, the debtors, will do, Your Honor, is

13   hopefully with the consent of the committee and perhaps also

14   the consent of the trustees, we would like to bring to you a

15   complete schedule for the 9019 motion that will include very

16   specific dates for discovery, very specific dates for the

17   objection deadlines and the like, and the hearing date as well,

18   subject to the Court's calendar, of course.

19          But, Your Honor, in the absence of an agreement with

20   these parties, on the 24th the debtor is going to present to

21   the Court a schedule.  And if we, so-called, go it alone, at

22   that point, Judge, it will simply be, Judge, driven by our

23   desire to balance both their specific needs, the time they

24   would like to do everything they would like to do, and what we

25   believe to be the needs of this case, to make sure that we

1  don't risk either a meltdown, or in the shorter term, which

2  would really be a meltdown, not getting that sale done on the

3  5th.

4          So one way or the other, Judge, on the 24th, we're

5  going to present to you --

6          THE COURT:  Let me ask you.  Are the trustees' counsel

7  present in the courtroom?

8          MR. PRINCI:  I would ima -- I know I've seen one.

9          THE COURT:  Are all four --

10          MR. PRINCI:  I don't know if they are all present.

11          THE COURT:  Oh, I know, Mr. Siegel, you -- how many

12  trustees do you represent, Mr. Siegel?

13          MR. SIEGEL:  I represent one of the trustees --

14          THE COURT:  One.  Well, you spoke for most of them

15  last time.

16          MR. SIEGEL:  We have been working together, the four

17  trustees --

18          THE COURT:  You have to identify yourself.

19          MR. SIEGEL:  I'm sorry.  Glenn Siegel on behalf of

20  Bank of New York Mellon, one of the RMBS trustees.  There are

21  four RMBS trustees.  They are Bank of New York Mellon, Wells

22  Fargo, U.S. Bank, and Deutsche Bank.  We've been working

23  together.  You should assume I'm speaking for all of the

24  trustees, unless they contradict me.  But we've been working

25  together.  Well, I can't read their minds, right?  But we have

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                   22

1  been working together.

2        Your Honor, do you have a specific question?

3        THE COURT:  Well, here's what I think.  Mr. Princi

4  said that hopefully he will present an agreed schedule with the

5  trustees on July 24th.  And so that we don't have any surprises

6  on the 24th, I'm going to set a deadline of 5 o'clock Friday,

7  July 20th for either to file a proposed agreed schedule, and if

8  there is no agreement, for the respective parties to file their

9  proposed schedules.  So that when we have the hearing on the

10 24th, I will impose a schedule.  And if there's an agreed one,

11 I'll certainly be heavily influenced by it, subject to the

12 Court's calendar.

13        But so that we don't spin our wheels on the 24th and I

14 start hearing, no, we haven't agreed to this; we haven't agreed

15 to that, let's get all of the proposed schedules filed by

16 Friday the 20th at 5 o'clock.  And hopefully it will be a

17 single proposed schedule.  And when I take the bench on the

18 24th, I'll either agree to it as proposed or make adjustments

19 as necessary to the Court's calendar and deal with it that way.

20        MR. SIEGEL:  Your Honor, just one clarification.

21        THE COURT:  Okay.

22        MR. SIEGEL:  There are two different issues here, at

23 least in my view.  There is the schedule related to the sale

24 and there is the schedule related to the 9019.  I heard Mr.

25 Princi, that he believes they ought to be linked.  I'm not sure

RESIDENTIAL CAPITAL, LLC, ET AL.                              23

1  that the trustees are there on that point.  When you say --

2        THE COURT:  Just put that issue -- just give me your

3  proposed schedule.  Whether it's expressly linked or otherwise,

4  I'm going to set a schedule.  And --

5        MR. SIEGEL:  Understood.  Just --

6        THE COURT:  -- the debtor obviously wants to schedule

7  it with the November deadline hearing in mind.  And you may or

8  may not agree.  But let's see where we are when I see you on

9  the 20th, whether there is an agreed proposed schedule or not.

10 Okay?

11       MR. SIEGEL:  Okay.  Your Honor, as long as I'm up

12 here, I have one point of clarification that I need to make.

13 The debtor and others like to use the word "direct", when they

14 refer to the support that's been expressed by certificate

15 holders.  We do not dispute that there is a large group of

16 cert -- large group -- there is a significant group of

17 certificate holders who have expressed their support for the

18 agreement.

19       To date, we have not received a direction or an

20 instruction within the meaning of the applicable documents.

21 And as Mr. Princi did say, that means we have to act on our

22 own, and all of the issues that we discussed at the last

23 hearing remain present.  If that changes, we will advise you.

24 But of course, it's encouraging that there is a larger group of

25 certificate holders who've expressed their support.  But the

RESIDENTIAL CAPITAL, LLC, ET AL.                    24

1  significance of that to the overall process remains to be seen.

2              THE COURT:  That's fine.

3              MR. SIEGEL:  Thank you, Your Honor.

4              THE COURT:  Thank you, Mr. Siegel.  Mr. Princi?

5              MR. PRINCI:  Your Honor, the other -- only other

6  couple of points by way of progress.  We also have -- we can

7  inform everybody today on the record that we now have a secured

8  electronic data room.  All those for whom we have been

9  interfacing have signed confidentiality agreements --

10             THE COURT:  Hang on a second.

11             Whoever is on the phone, either put your phones on

12  mute, because papers are rattling or something is rattling

13  against the phone.  So if you don't want to get cut off from

14  the call, please put your phone on mute.

15             Go ahead, Mr. Princi.

16             MR. PRINCI:  Thank you, Judge.  So we have signed --

17  excuse me -- a number of parties have signed confidentiality

18  agreements.  We've reviewed their requests.  Pursuant to those

19  requests, we've made a voluminous amount of information

20  available now on a secured electronic data room.  And we'll

21  work to make sure everybody has the access to that.  But that

22  will be up and running -- that is, apparently, up and running

23  today.  The other point --

24             THE COURT:  How many NDAs have been signed?

25             MR. PRINCI:  Oh, goodness.  Excuse me, Judge.

1    There's three that have been signed.  I think there's

2  two others that have been requested, Judge.

3          THE COURT:  Okay.

4          MR. PRINCI:  And then the other thing we've done with

5  both the committee, Your Honor, and the trustees, is to begin

6  to explain to them the manner in which we intend to go forward,

7  ultimately, on the sale hearing date, with the, if you will,

8  leaving behind of the legacy put-back claims on the one hand,

9  but going forward and assuming and assigning the servicing

10  obligations, which is what Nationstar is buying.

11          And what we've explained to the trustees, Your Honor,

12  is the way we intend to do that -- and this will be subject to

13  further consultation with the Court with respect to scheduling

14  and the like -- is what we intend to do, Judge, is we're going

15  to have our debtor depositor entities -- these are the

16  companies, Judge, that literally sold the loans to the trusts;

17  and they are Chapter 11 debtors in this administratively

18  consolidated case.  Those parties are parties to a pooling and

19  service agreement, as are RFC and GMAC, which are the servicing

20  entities.

21          And the way the provisions in most, the vast, vast,

22  vast majority of those pooling and servicing agreements work,

23  is that the put-back obligations, in the event of a breach of

24  representation or warranty, are the obligation of the

25  depositor, but not the servicer entities.

1    So what we're going to do, Judge, is there will be a

2  motion at some point forthcoming, pursuant to which those

3  depositor entities will seek to reject those contracts.  And

4  then, at the time of the sale hearing, the servicing debtor

5  entities will be seeking to assume and assign those very same

6  contracts.

7    So we've explained to both the committee and to the

8  trustees that from a procedural vantage point, that's how we're

9  going to actually execute, if you will.  And that's also part

10  of our ongoing discussions with them, Judge.

11         THE COURT:  It's the same contract?

12         MR. PRINCI:  It is the same contract.  And --

13         THE COURT:  And you're telling me that it's legally

14  possible for one party --

15         MR. PRINCI:  It is, Judge.

16         THE COURT:  -- to reject and another to assume and

17  assign?

18         MR. PRINCI:  It is.  And that's why we're going to do

19  that, Judge.  Because the controlling law in this area allows

20  for two separate debtor entities --

21         THE COURT:  Am I going to be surprised when there are

22  objections to that?

23         MR. PRINCI:  Judge, I would be disappointed in my

24  colleagues if somebody can't find a way to object to everything

25  in this case.  Okay?  But that notwithstanding doesn't mean

RESIDENTIAL CAPITAL, LLC, ET AL.                                          27

1  that the law that I've referred to is not the controlling law.

2  we believe it is.

3          So I believe that's it, Your Honor.  And I'll just

4  pass the podium to Mr. Eckstein.

5          THE COURT:  Okay.

6          MR. ECKSTEIN:  Your Honor, Kenneth Eckstein on behalf

7  of the unsecured creditors' committee.  I'd like to ask my

8  partner, Philip Bentley, to make a few remarks on this.  Before

9  doing so, I may have misstated a particular date with respect

10  to the Ally subservicing motion.  I just want to correct that

11  for the record.  I believe the agreement has been to extend the

12  deadline for approval of the Ally subservicing motion to July

13  27th.  That was moved from July 13th.  I think I had said --

14          THE COURT:  You said the 31st.

15          MR. ECKSTEIN:  -- July 31st.  So --

16          THE COURT:  The 27th?

17          MR. ECKSTEIN:  -- I want to correct, and say the 27th.

18          THE COURT:  Okay.

19          MR. ECKSTEIN:  And with that, Your Honor, I'm going to

20  let my partner, Philip Bentley --

21          THE COURT:  Thank you.

22          MR. BENTLEY:  Good morning, Your Honor.  For the

23  record, Philip Bentley of Kramer Levin.

24          Your Honor, just to respond briefly to Mr. Princi's

25  comments.  We agree and we're appreciative of the efforts the

1   debtors have been making.  We've had a series of productive

2   discussions with them.  We haven't yet received, but we

3   understand we're going to receive later today, a lot of data

4   backing up the estimation of the aggregate put-back claims,

5   which are addressed in the declarations in support of their

6   9019 motion.  We're looking forward to getting that data.  We

7   think that will be very helpful in enabling us to move the ball

8   forward with respect to understanding the issues that underlie

9   this discussion, these discussions that we're having with them

10  about the schedule that Mr. Princi described.

11          As he said, we have had been having a series of

12  discussions with them about what's the right schedule.  And

13  frankly in our mind, the threshold issue, the biggest issue, is

14  not so much the details of the -- they're proposing a schedule

15  that would get the 9019 motion to Your Honor to be heard at

16  some point prior to the November 5 sale hearing.  There are

17  issues about the details of how you get there, but the

18  threshold issue, and frankly the bigger issue in our mind is,

19  is it appropriate to work through the process on quite a quick

20  basis, to have the 9019 motion heard at that relatively early

21  date?  Will it benefit the sale process?

22          And it may benefit the sale process.  It might help,

23  for example, with respect to the issue that Mr. Princi just

24  described, which we call the severability issue.  Can the

25  debtors sever the rights from the obligations?  It might help

RESIDENTIAL CAPITAL, LLC, ET AL.                                    29

1    to get that resolved in advance of the November 5 hearing, if

2    you could get the trustees --

3           THE COURT:  Go ahead.  Mr. Garrity is playing with the

4    lights.

5           MR. GARRITY:  Sorry, Your Honor.

6           MR. BENTLEY:  The hope is that if you can get the

7    trustees to sign on to this settlement -- and as Mr. Princi

8    said, they're certainly the real parties-in-interest here, or

9    the real parties who have the rights here -- if you can get

10   them to sign on before November 5, and perhaps if you can also

11   get the Court to approve of that settlement before November 5,

12   would that help moot the severability issues.  That's one big

13   issue.  We're hopeful that a few weeks from now, we will be

14   back -- or a week and a half from now, we will be back before

15   Your Honor with an agreement.

16          If Your Honor likes, I can walk you through briefly

17   one or two of the other principal issues that we're looking at

18   with respect to this issue, or we can defer that to the 24th.

19          THE COURT:  Let's defer it.  We have a pretty full

20   agenda for today.

21          MR. BENTLEY:  Okay.

22          THE COURT:  Let me just caution everybody.  In setting

23   the schedule, if there's going to be a contested evidentiary

24   hearing, and the debtors are desirous of a decision before

25   November 5th, don't think you're going to have an evidentiary

RESIDENTIAL CAPITAL, LLC, ET AL.                    30

1  hearing the day before and expect an immediate decision.  I

2  mean, I just -- so when I see the schedule, proposed schedule,

3  let's assume for the moment that it's an agreed proposed

4  schedule, I want to be sure that it provides me with sufficient

5  time to cogitate on what the decision ought to be.

6         MR. PRINCI:  Understood fully, Your Honor.

7         THE COURT:  Okay.  In light of a very, very full

8  calendar of other matters.  I'll just say that.  So we'll take

9  up in more detail what's -- let's see this work through a

10 little further --

11        MR. BENTLEY:  That makes sense, Your Honor.  And on

12 the immediate process front, we think the process Your Honor

13 has set forth, that we come back to you on the 20th, makes a

14 lot of sense.

15        THE COURT:  All right.  Thank you.

16        MR. BENTLEY:  So we will do that.

17        THE COURT:  Thank you very much, Mr. Bentley.

18        MR. PRINCI:  Your Honor, I apologize.  One thing I

19 should have mentioned earlier, just to be clear.  So the other

20 holding matter we had for today, the 10th, was with respect to

21 the trustees' reservation of rights pertaining to their

22 previously filed objections to the sale and bidding motion.

23 And we had allowed them to reserve a certain portion of those

24 objections, those specifically that go to, if you will, the

25 sales piece of it, until today.  Concomitant with our desire to

1  continue to work with them on this, we're going to put that off

2  to the 24th as well, with Your Honor's permission.

3           I also should note for the Court, Judge, I think just

4  sensibly and in fairness, to the extent that the 9019 motion is

5  going to be heard down the road a bit, we may even, if we need

6  to, come back to Your Honor and move that back even further.

7  But for now, with the trustees' consent, we'd like to move back

8  their reservation of rights on that to at least July 24th.

9           THE COURT:  All right.  I think we need -- on July

10 24th, I think we need sort of a fuller discussion about all of

11 these pieces that are coming up and what's going to be --

12          MR. PRINCI:  We'll put that in the --

13          THE COURT:  -- required.

14          MR. PRINCI:  -- we're going to put that -- Your Honor,

15 certainly the debtor will include that piece of it in our

16 proposed calendar.  And it will be part of any agreed upon

17 calendar as well, Judge.  Okay?

18          THE COURT:  All right.  Thank you.

19          MR. PRINCI:  Thank you, Judge.

20          MR. ELLENBERG:  If the Court please, Mark Ellenberg on

21 behalf of MBIA.  Your Honor, since we were here last, in fact,

22 the day after we were here last, we did have a productive

23 meeting with the debtors concerning the 9019 motion.  We have

24 another meeting scheduled for next week.  In the meantime,

25 we've been finalizing a confi and we hope to start receiving

RESIDENTIAL CAPITAL, LLC, ET AL.                                    32

1  discovery this week.

2         So I would say things today are significantly better

3  than they were the last time we were here.  We haven't

4  accomplished anything yet, really, but at least things are

5  moving in a better direction.  And we'll be back on the 24th.

6         THE COURT:  Thank you, Mr. Ellenberg.

7         All right.  Who's going forward for the debtor here?

8  Let's try and move forward.

9         MR. ROSENBAUM:  Good morning, Your Honor.  Norm

10  Rosenbaum, Morrison & Foerster, proposed counsel for the

11  debtors.  Your Honor, we're moving on to the contested matters.

12  And the first item on the agenda is the motion of NACBA for

13  relief from the automatic stay.  I really think this was really

14  couched as an objection to the -- what we call our supplemental

15  servicing motion.  And we have resolved that on consent with

16  NACBA and the other parties to that motion.  And we will

17  explain that when we get to the portion of the hearing on the

18  supplemental servicing motion.

19         THE COURT:  Okay.

20         MR. ROSENBAUM:  The next matter on the agenda was the

21  motion of the Maine action plaintiffs.

22         THE COURT:  Yes, I remember that.

23         MR. ROSENBAUM:  That was to allow the Maine --

24         THE COURT:  Allow the Maine Supreme Court to go ahead

25  and decide what's before them.

1    MR. ROSENBAUM:  We've consented to that relief, and

2    we'll submit an agreed order to Your Honor.

3              THE COURT:  Thank you.

4              MR. ROSENBAUM:  The next three items on the agenda,

5    Your Honor, are motions for relief from the automatic stay.

6    I'm not clear if the movants are in court today or if they're

7    on the phone.  The first one was number 3 --

8              THE COURT:  The Burris matter, Mark and Lori Burris?

9              MS. BURRIS:  Yes, Your Honor, we are on the phone.

10             THE COURT:  Okay.  Do you wish to be heard with

11   respect to your motion to lift the automatic stay?

12             MS. BURRIS:  Yes, we do.

13             THE COURT:  Go ahead.

14             MS. BURRIS:  We wish to have relief from the stay,

15   because we feel that we're engaged in a settlement of this

16   case, and we are working with the assistance of the Honorable

17   Michael Hegarty, the federal magistrate here in Denver,

18   Colorado.  And we feel that the parties have partially executed

19   terms of an agreement.  And it does not -- it has no effect on

20   the estate or the reorganization that is currently going on.

21             THE COURT:  Mr. Rosenbaum, do you want to respond to

22   that?

23             MR. ROSENBAUM:  Your Honor, we have no objection to

24   relief from the automatic stay to allow the parties to

25   consummate the settlement that's before the Court.  I believe

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    34

1   that's a fairly accurate statement of where the matter stands.

2   We believe that we have -- prior to the filing, had advanced a

3   settlement agreement.  And our concern is that the Burrises

4   have not, at this point, elected to execute it.  But subject to

5   moving forward and having that settlement agreement signed

6   and --

7              THE COURT:  Here's what I would like to do.  Because

8   it sounds like the parties are in agreement with respect to

9   this lift stay motion.  Mr. Rosenbaum, why don't you -- since

10  the Burrises are pro se -- why don't you prepare a proposed

11  order that would effect the lifting of the stay for the

12  purposes that you've described; share it with the Burrises.  If

13  it's an agreed -- in the form of an agreed order, submit it to

14  the Court and it will be entered.  If the parties disagree,

15  I'll have a separate short telephone hearing.  Hopefully that

16  won't be necessary, though.

17             MR. ROSENBAUM:  I'm happy to do that, Your Honor.

18  Just one point.  I think the committee would probably want to

19  see the terms of the settlement.  I agree with --

20             THE COURT:  Well, go ahead and share it with the

21  committee.

22             MR. ROSENBAUM:  -- I agree with Ms. Burris --

23             THE COURT:  That's fine.

24             MR. ROSENBAUM:  -- that there's no effect on the

25  estate, though.

RESIDENTIAL CAPITAL, LLC, ET AL.                          35

1        THE COURT:  Mr. and Mrs. Burris, so you understand how

2   we're going to proceed?  I'm going to have Mr. Rosenbaum or one

3   of his colleagues -- because they're in agreement to lift the

4   stay for the purposes of allowing this mediation, hopefully the

5   conclusion of a settlement, to proceed.  And the debtors'

6   counsel, Mr. Rosenbaum or one of his colleagues will get you a

7   proposed order.  If it's an agreeable form, let him know.  And

8   he'll share it also with the committee.  And hopefully no

9   further hearing will be required.  The order will be entered,

10  and you'll get notice of that.  Okay?

11       MS. BURRIS:  Thank you very much, Your Honor.

12       THE COURT:  Thank you.

13       MS. BURRIS:  We appreciate it.

14       THE COURT:  Thank you Mr. and Mrs. Burris.

15       Okay, next matter?

16       MR. ROSENBAUM:  Your Honor, the next motion for stay

17  relief was filed by Kenneth Taggart, who's also appearing pro

18  se.  I don't know if Mr. Taggart made an appearance or not.

19       THE COURT:  Mr. Taggart, are you on the phone?

20       MR. TAGGART:  Yes, I am.  Can you hear me?

21       THE COURT:  Yes, I can.  Go ahead and tell me what you

22  want to say.

23       MR. TAGGART:  Yeah, hi.  This is Ken Taggart calling

24  in reference to the motion that was filed in court.  I do

25  represent myself pro se.  And I'm requesting actually some

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    36

1  clarification on the stay or limited stay in the case filed by

2  GMAC v. Taggart, which was a foreclosure complaint filed in

3  Montgomery County, Pennsylvania against myself, representing

4  myself pro se.

5          And according to counsel and the filing of the limited

6  stay, they're claiming that only -- they're able to proceed

7  with the foreclosure complaint and -- I'm sorry, there's

8  counterclaims as well filed in the -- against GMAC.  And GMAC

9  is actually -- contends that only the claims that would be

10 defending the foreclosure complaint would proceed, and any

11 claims seeking monetary damages would be stayed until the stay

12 is lifted.  It's my contention that all the counterclaims

13 actually seek relief in the form of rescission of the loan,

14 which should proceed.

15         And in addition to that, in my complaint, it basically

16 states that I would be entitled to offsets for any claims that

17 were entered in my favor as far as a judgment -- monetary

18 claims would offset any judgment in GMAC's claims.  So it is my

19 opinion that all the claims should proceed and the stay should

20 be lifted in the entire case.

21         In addition to that, I've requested for quiet title on

22 the property, retaining possession.  And there's also claims

23 for breach of contract in the counterclaims as well.  So I'm

24 basically seeking relief from stay from all the counterclaims

25 that have been filed against GMAC in that case.  And GMAC, I

RESIDENTIAL CAPITAL, LLC, ET AL.                                    37

1   believe, it looks like in their brief -- I only just received

2   it today -- does not clarify what their position is.  But I'm

3   seeking a relief of stay from all counterclaims against GMAC.

4            THE COURT:  Mr. Taggart, are you represented by

5   counsel in that action?

6            MR. TAGGART:  I'm not, no.  It's pro se.

7            THE COURT:  Okay.  So the record --

8            MR. TAGGART:  I'm sorry.

9            THE COURT:  -- is clear, Mr. Taggart is a defendant in

10  a state court foreclosure action pending in Montgomery County,

11  Pennsylvania, captioned GMAC Mortgage LLC v. Kenneth Taggart.

12  And in connection with the pending foreclosure, on April 28th,

13  2010, Mr. Taggart filed a third amended counterclaim against

14  GMAC Mortgage LLC, LBA Financial Group LLC, Eagle Nationwide

15  Mortgage Company, et al.  And the Taggart counterclaim alleges

16  thirty-two counterclaims against the debtors and other

17  defendants, including violations of numerous state and federal

18  statutes including RESPA and TILA.

19            Mr. Rosenbaum, do you want to respond to Mr. Taggart's

20  argument?

21            MR. ROSENBAUM:  Thank you, Your Honor.  We -- at

22  Morrison & Foerster, one of my colleagues have had extensive

23  discussions with Mr. Taggart to explain to him the scope of the

24  supplemental order.  We've explained to Mr. Taggart, after

25  consultation with our counsel in the underlying action, that

1    there is one of the counts that he can proceed on.  That's

2    Count number 32.

3           Based on our discussions and the evaluation of our

4    counsel, none of the others would be permitted to go forward

5    under the supplemental order that we'll be revising today.

6    We'll explain that to Your Honor when we get to that motion.

7           I don't believe that Mr. Taggart had actually sought

8    that relief.  If he's amending his motion orally at this

9    hearing, we object to the breadth of the relief that he's

10   requesting.  We have struck a very careful balance in our

11   supplemental order on foreclosure proceedings.  And this would

12   basically obliterate everything we've worked hard to try to

13   achieve.  And this would be the type of floodgate-type relief

14   that we would be very concerned about, given the volume of

15   pending foreclosure actions we have.

16           THE COURT:  Are --

17           MR. ROSENBAUM:  We are more than willing to continue

18   to work with Mr. Taggart.  If there are, perhaps, one of the

19   other counterclaims -- as I said, there's thirty-two.

20           THE COURT:  What's the thirty-second that you're

21   willing to allow to proceed?

22           MR. ROSENBAUM:  Sorry, Your Honor.  I'm going to get

23   to it in a second.

24           MR. TAGGART:  Your Honor?

25           THE COURT:  No, just a second, Mr. Taggart, I'll let

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    39

1   Mr. --

2              MR. TAGGART:  Okay, sure.

3              THE COURT:  -- I'll give you another chance.  Just --

4              MR. TAGGART:  No problem.

5              THE COURT:  -- Mr. Rosenbaum is trying to find

6   something.

7              MR. ROSENBAUM:  Just bear with me one second, Your

8   Honor.  Sorry.

9              It's a claim under the Mortgage Property Insurance

10  Coverage Act, attempting to require more money in escrow than

11  allowed by law and causing and/or illegally filing foreclosure

12  as a result of such breach.  I believe this is --

13             THE COURT:  Why are you --

14             MR. ROSENBAUM:  -- a forced placed insurance --

15             THE COURT:  -- prepared to allow that to go forward,

16  but not the other thirty-one?

17             MR. ROSENBAUM:  Based on the opinion of our counsel --

18  our local counsel handling the matter, this would be a

19  defense -- a valid defense of the foreclosure action.

20             THE COURT:  And your view as to the other thirty-one

21  is that they're not valid defenses to foreclosure?

22             MR. ROSENBAUM:  Based on what our counsel has advised

23  us, yes.

24             THE COURT:  I mean, does this -- if your counsel

25  doesn't like what somebody alleges, they just say we don't like

RESIDENTIAL CAPITAL, LLC, ET AL.                                    40

1   it, and it shouldn't be allowed; and this one, we're allow --

2   we're okay with?  Is that what's happening here?

3              MR. ROSENBAUM:  No, Your Honor.  It was a very careful

4   analysis that was undertaken at our request.  I don't have a

5   declaration or affidavit from counsel.  If that's something

6   Your Honor would think would be necessary, we could adjourn the

7   matter.  And again, we're happy to continue and explain to Mr.

8   Taggart our position on each of the other thirty-one.  But they

9   are, for the most part, monetary claims or claims that

10  Pennsylvania law does not recognize as a defense to

11  foreclosure.

12             MR. TAGGART:  Hello?

13             THE COURT:  Just a second, Mr. Taggart.

14             In your opposition to the lift stay, I mean, have you

15  set forth why the -- why one is a defense and thirty-one of

16  them are not, and therefore the stay should not be lifted as to

17  thirty-one of them but you have no problem as to one?

18             MR. ROSENBAUM:  Well, we did not do that, Your Honor.

19  Because --

20             THE COURT:  I know.

21             MR. ROSENBAUM:  -- we -- Mr. Taggart -- and I

22  understand he's pro se, and we're trying to be sensitive to

23  that -- did not seek that specific relief.  He sought

24  clarification as to the order.

25             What the order provides is that monetary claims and

RESIDENTIAL CAPITAL, LLC, ET AL.                                    41

1  claims that are not a defense to the foreclosure, are stayed by

2  the supplemental order.  I understand his position now.  If

3  Your Honor would prefer to adjourn this, we can address the

4  thirty-one other counts.

5          THE COURT:  All right.  Mr. Taggart let me give you a

6  chance to reply, briefly.

7          You understand the point --

8          MR. TAGGART:  Okay.

9          THE COURT:  Wait, let me just before you do that.  Do

10 you understand the point?  Mr. Rosenbaum's arguing that you

11 can't proceed with your monetary claims.  To the extent that

12 any of your counterclaims under applicable Pennsylvania law

13 would be a defense to foreclosure, you can proceed with those.

14 He's saying, as I understand it, that the mortgagee's counsel

15 in Pennsylvania has stated that only the thirty-second

16 counterclaim would be a defense -- if established, would be a

17 defense to foreclosure.  The other thirty-one would not.

18         What is your reply, Mr. Taggart?

19         MR. TAGGART:  Yeah, I respectfully disagree.  It's

20 clearly an attempt for counsel to take advantage of a pro se

21 litigant.  But in response to that, Truth in Lending, TILA and

22 RESPA, Real Estate Settlement Procedures Act, are all defenses

23 recognized in foreclosure claims.

24         Breach of contract of the mortgage is a defense in

25 foreclosure claims, which has been alleged.  Unfair Trade

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                42

1   Practices Act, Consumer Protection Law, in Pennsylvania, are

2   all defenses and claims that can be made regarding

3   foreclosures, all of which have been alleged.  It's -- clearly

4   what counsel is saying for ResCap or GMAC is clearly erroneous.

5   They're all clearly defenses that are alleged here that are

6   valid as defenses in foreclosure claims.

7           THE COURT:  Are you seeking a monetary judgment

8   against the defendants, Mr. Taggart?

9           MR. TAGGART:  Yeah -- yes, I am.

10          THE COURT:  Okay.

11          MR. TAGGART:  I'm seeking monetary judgment in claims,

12  but I'm also seeking --

13          THE COURT:  Okay, but Mr. Taggart, the one thing I

14  want to be clear about is, I am not lifting -- I have not

15  lifted the stay, and I'm not going to lift the stay to permit

16  monetary claims to proceed against any of the debtors.  So --

17          MR. TAGGART:  Your Honor, I unders -- I fully

18  understand what you're saying.  I guess then -- I guess my

19  point would be that I should be able to proceed with the claims

20  regarding defenses.  I mean, obviously, if they're not able to

21  award monetary judgment at this point, and that would be

22  stayed.  Obviously, it's my right to allege breach of contract,

23  Truth in Lending and RESPA claims are all defenses, you know,

24  in the mortgage foreclosure defense.

25          THE COURT:  All right.  Let me stop you for a second,

**RESIDENTIAL CAPITAL, LLC, ET AL.**                     43

1  Mr. Taggart.

2            Mr. Rosenbaum, you disagree as to whether RESPA and

3  TILA are defenses to foreclosure?

4            MR. ROSENBAUM:  In Pennsylvania, I'm advised that

5  they're not, Your Honor.

6            THE COURT:  Okay.  Here's where we're going to

7  proceed.  Stop, Mr. Taggart.

8            MR. TAGGART:  I'm sorry.

9            THE COURT:  Mr. Rosenbaum, I'm not satisfied that

10 you've sufficiently addressed, other than telling me that your

11 counsel in Pennsylvania says they're not a defense to

12 foreclosure under Pennsylvania law.  So I'm going to adjourn

13 this matter.  I'm going to give you a further chance to see if

14 you can reach an agreement with Mr. Taggart as to which claims

15 could proceed or which could proceed.

16           It may be that the appropriate way to deal with it --

17 but I'm not compelling you to do this -- is to put it in an

18 agreed order that the claims can proceed only to the extent

19 that they would be a defense to foreclosure under Pennsylvania

20 law, and that no monetary judgment or award may be rendered,

21 and then leave it to a Pennsylvania judge to figure out what

22 Pennsylvania law is as to the thirty-two counterclaims.  I

23 don't particularly want to have to go through thirty-two

24 counterclaims and decide under Pennsylvania law which ones are

25 proper defenses to foreclosure and which are not.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    44

1    All I can say is, I don't believe your opposition to

2    this motion adequately addresses those issues.  So I don't feel

3    I can, at this stage, rule.  So I'm going to adjourn the matter

4    to July 24th.  In the meantime, you or your colleagues should

5    try to reach an agreement or understanding with Mr. Taggart.

6    If you do that and submit a consent order, I'll go ahead and

7    act on that without the necessity of the further hearing on

8    July 24th.  Otherwise, you're going to have to file an

9    additional brief --

10           MR. TAGGART:  Hello?

11           THE COURT:  Just a second, Mr. Taggart.

12           MR. TAGGART:  Hello?

13           THE COURT:  Just a second, Mr. Taggart.

14           MR. TAGGART:  Oh.

15           THE COURT:  The debtor will have to file an

16   additional -- if you can't resolve this, Mr. Rosenbaum, the

17   debtor's going to have to file an additional brief on or before

18   5 p.m. on July 17th, one week from today, addressing the issues

19   of whether these thirty-two counterclaims are a proper defense

20   to foreclosure under Pennsylvania law.

21           And Mr. Taggart, I will give you until 5 p.m. Friday,

22   July 20th, to file any reply.  So Mr. Rosenbaum, make sure that

23   Mr. Taggart -- because he may not have access to ECF -- that

24   you either arrange to fax him or e-mail him a copy of whatever

25   further brief you file, so that he has it promptly and has a

RESIDENTIAL CAPITAL, LLC, ET AL.                                45

1   chance by Friday the 20th at 5 p.m., to file any further reply.

2           And the matter will be continued to July 24th.  Okay.

3   Thank you, Mr. Taggart.

4           MR. TAGGART:  Your Honor, can I say one thing -- a

5   couple things here?

6           THE COURT:  Very brief.

7           MR. TAGGART:  Yes.  I will be out of town on July 24th

8   visiting family for ten days.  I just wonder if that could be

9   continued until --

10          THE COURT:  It -- look, you're participating by phone.

11  You can participate by phone from wherever you are.  Hopefully

12  you can work this out before then.  Are you going to be in

13  transit on the 24th?

14          MR. TAGGART:  On the 24th, let me check.  I don't

15  believe so.  No, I will not.  No.

16          THE COURT:  No.  You can participate by phone from

17  wherever you are.

18          MR. TAGGART:  Okay.  So the hearing's on the 24th at

19  what --

20          THE COURT:  Yes, it is.

21          MR. TAGGART:  -- do you have a time?

22          THE COURT:  At 10 a.m.

23          MR. TAGGART:  10 a.m.  Okay.  10 o'clock a.m.

24          THE COURT:  Mr. Taggart, just so we're clear.  I am

25  not going to lift the stay -- I want to make it crystal clear

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    46

1  to you -- I'm not going to lift the stay to permit you to

2  proceed with counterclaims seeking monetary relief.  Only -- I

3  will consider lifting it; I'm not saying I will -- I will

4  consider lifting it only to the extent that the counterclaims

5  you have asserted are defenses to foreclosure under

6  Pennsylvania law.

7         So hopefully, when you talk with Mr. Rosenbaum or one

8  of his colleagues, don't think that there's going to be an end

9  run about this rule.  Any order that gets entered, if I were to

10  lift the stay, the order will make clear that it does not

11  permit any counterclaims to proceed to the extent that they

12  seek any monetary relief.  Okay.

13         MR. TAGGART:  Okay, yeah.  I understand that.  Yes.

14         THE COURT:  All right.  We've got to move on to the

15  next matter.

16         MR. TAGGART:  Okay.  All right, thank you, Your Honor.

17         THE COURT:  Thank you, Mr. Taggart.  And you're

18  excused.

19         MR. TAGGART:  Thank you.

20         THE COURT:  Go ahead, Mr. Rosenbaum.

21         MR. ROSENBAUM:  The next motion is the motion of

22  Yvonne and Sidney Lewis for relief from the automatic stay.  I

23  don't know if they've made an appearance or not, Your Honor.

24         THE COURT:  All right.  Are Mr. or Mrs. Lewis on the

25  phone?

1    Go ahead, Mr. Rosenbaum.  I note no appearances by the

2    Lewises.  Go ahead.

3    MR. ROSENBAUM:  Your Honor, we did oppose this motion.

4    I would note, based on our review of the motion, we do believe

5    there's one pending action as part of their foreclosure

6    proceeding that they would be allowed to proceed.  It's a

7    reconsider -- it's a motion that they filed to reconsider

8    relief granted on a sale.  That would be covered by the

9    supplemental order.

10    As far as we can tell from our review of what they

11    filed and our discussions with our counsel handling the matter,

12    that is the only open matter between GMAC and the Lewises.  To

13    that extent, we don't oppose the relief, other than -- we don't

14    oppose the relief to the extent --

15    THE COURT:  Here's my understanding.

16    MR. ROSENBAUM:  -- it's covered by --

17    THE COURT:  Correct me if I'm wrong for what gives

18    rise to my concern.  The debtors' initiated a judicial

19    foreclosure proceeding against the Lewises on April 22, 2005 in

20    Franklin County Court of Common Pleas in the State of Ohio.

21    The Lewises filed individual bankruptcy cases, so entry of a

22    judgment on the foreclosure was delayed until September 12th,

23    2011.  The foreclosure sale was confirmed on June 6, 2012.  The

24    Lewises appealed both the foreclosure judgment decree and the

25    sale confirmation, but both appeals were dismissed.

RESIDENTIAL CAPITAL, LLC, ET AL.                    48

1              In the dismissal order, the appellate court noted that

2     the Lewises had been "adjudicated vexatious litigators" by the

3     Franklin County Court.  And it references journal entry of

4     dismissal dated June 19, 2012, case number 12-ap-506, Ohio

5     Court of Appeals, June 19, 2012.  And vexatious litigators are

6     defined by the Ohio Revised Code Annotated Section 2323.52.

7              And on June 28th, 2012, the Lewises filed an

8     application to reconsider the dismissal of the appeal.  Is that

9     what you're referring to?

10             MR. ROSENBAUM:  It's the dismissal of the sheriff's

11    sale, Your Honor; but, yes.  The order confirming the sheriff's

12    sale.

13             THE COURT:  I thought they had appealed that, and it

14    was dismissed?  The papers we reviewed showed that the Lewises

15    appealed both the foreclosure judgment decree and the sale

16    confirmation, but both appeals were dismissed.

17             MR. ROSENBAUM:  My understanding is they moved for

18    reconsideration on the -- of the sheriff's sale.

19             THE COURT:  Okay.  You're going to have to clarify,

20    because in reviewing the file, it appeared to us that it was

21    they sought reconsideration of the dismissal of their appeal

22    from confirmation of the sale.  It was the appeals that were

23    dismissed.

24             MR. ROSENBAUM:  If that's correct, Your Honor, and I'm

25    not suggesting it's not, that would still be covered by the

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    49

1    supplemental order.

2            THE COURT:  Okay.  Submit an order.  Is that in your

3    proposed order now?  Do you have a proposed order on this?

4            MR. ROSENBAUM:  On this?  No, Your Honor, we don't.

5            THE COURT:  All right.  Submit a proposed order.

6            MR. ROSENBAUM:  Thank you, Your Honor.

7            Bear with me one second, Your Honor.

8            THE COURT:  Yes.

9            MR. ROSENBAUM:  Shift gears here.

10           THE COURT:  Yes.  The supplemental servicing motion is

11   next?

12           MR. ROSENBAUM:  Yes, Your Honor.  It's helpful to have

13   my notes, Your Honor.

14           THE COURT:  Okay.

15           MR. ROSENBAUM:  Your Honor, this is the final hearing

16   on the supplemental servicing motion.

17           THE COURT:  Yes.

18           MR. ROSENBAUM:  On June 15th Your Honor granted the

19   motion on an interim basis.  That's docket number 391.  If Your

20   Honor recalls, at the prior hearing, there was discussion on

21   the scope of the stay relief on foreclosure and bankruptcy

22   proceedings.  Your Honor directed that the parties-in-interest

23   confer to see what additions, modifications, could be made to

24   the terms of the interim order.

25           Your Honor, I'm pleased to report that we did conduct

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    50

1   that meeting with representatives of NACBA, representatives of

2   the National Association of Chapter 13 Trustees, the creditors'

3   committee, the Office of the United States Trustee, and Heather

4   McKeever.  We did reach resolution and consent on modifications

5   to the supplemental order.  We filed those on June 29th.  And

6   they continue to be reflected in further revisions of the

7   order.  I'm happy to outline them briefly for Your Honor.

8           THE COURT:  Let me ask you this.  Do any objections

9   remain?

10          MR. ROSENBAUM:  No, Your Honor.

11          THE COURT:  There was an objection filed by Ms. Nora.

12          MR. ROSENBAUM:  I'm sorry, Your Honor.  I believe Ms.

13  Nora renewed her objection to this motion.

14          THE COURT:  All right.  Ms. Nora, are you on the

15  phone?

16          All right, no appearance by Ms. Nora.

17          Are all objections other than the Nora objection

18  resolved?

19          MR. ROSENBAUM:  Yes, Your Honor.

20          THE COURT:  All right.  With respect to the Nora

21  objection, Wendy Alison Nora filed an amended objection.  It's

22  ECF docket number 546, to among other things, a proposed final

23  supplemental servicing order.  Ms. Nora reasserts the same

24  arguments she made in her second amended objection to certain

25  of the first-day orders entered by the Court on June 5th, 2012,

1  see ECF docket number 227.  Throughout her objection, Ms. Nora

2  takes issue with the fact that the debtors have not filed their

3  schedules and statement of financial affairs.  However, on June

4  30th, 2012, following Ms. Nora's filing of her objection, the

5  debtors filed their schedules and statement of financial

6  affairs.

7         Ms. Nora also argues that the debtors filed these

8  cases in bad faith and are engaged in racketeering.  Ms. Nora

9  has asserted these arguments without any evidence.  And for

10  this reason, her objection is overruled.

11         All right.  Do you just want to outline what changes

12  have been made in response to any meetings that you had?  Just

13  briefly.

14         MR. ROSENBAUM:  Yes, Your Honor.  The significant

15  modifications were that parties to foreclosure actions may

16  assert claims for monetary relief as defense to the

17  foreclosure -- and that's something we can address with Mr.

18  Taggart -- only if it would be recognized as a defense of the

19  foreclosure.

20         We also agree that any party that wants to appear by

21  telephonic hearing on any further stay motion could do so.

22  We'll waive -- agree to waive, if it's acceptable to the Court,

23  any pro hac fee.

24         THE COURT:  I can't do that.

25         MR. ROSENBAUM:  We'd consent to it.  But we understood

RESIDENTIAL CAPITAL, LLC, ET AL.                    52

1    that it was subject to your --

2         THE COURT:  I don't -- this has been an issue that the

3    Court has addressed.  And I do not have the authority and will

4    now waive pro hac fees.  The order for pro hac fees is one

5    entered by the district court, not by the bankruptcy court.  I

6    do not have the authority to waive pro hac fees.

7         MR. ROSENBAUM:  Thank you, Your Honor.  With respect

8    to borrower bankruptcies, in connection with objections to

9    proofs of claim or actions to determine lien validity and

10   priority, debtors in bankruptcy or trustees can assert claims

11   for monetary relief as an objection and can assert claims for

12   violation of any local, state, or federal law, in connection

13   with loan origination.  That would be as an objection to a

14   proof of claim or to determine the validity of a lien.

15        In borrower bankruptcies we'll also allow setoff and

16   recoupment in connection with objections to proofs of claims

17   and motions or adversary proceedings to determine the validity,

18   priority, extent of a lien against the borrower's property.

19        Your Honor, in the interim we also had discussions

20   with the committee -- and I'll be brief -- in terms of the

21   balance of the relief requested in the supplemental order.

22   That related to loss mitigation, settlements, and relief that

23   was granted in connection with the RMBS trustees.  And I'm

24   pleased to report, there's full agreement with the committee.

25   We've agreed to caps on -- monetary caps on loss mitigation of

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    53

1    550,000 per month, with an aggregate cap of 4.2 million.

2              THE COURT:  Say that again.

3              MR. ROSENBAUM:  A 550,000 per month on loss mitigation

4    activities, and 4.2 million aggregate case cap.  We can exceed

5    those caps, either with the approval of the Court or the

6    consent of the committee.  And that's really referring to just

7    the debtors' actual out-of-pocket.  These are net of expenses

8    they may otherwise recover from the securitizations.

9              We've agreed to lower the cap on settlements in the

10   current draft.  In the current supplemental order, the debtors

11   have authority to settle between up to 40,000 -- it was

12   previously 50,000 in the supplemental order.  Between 40,000

13   and 100,000, the committee has consent rights.  Above 100,000

14   it would require the debtors to file a separate motion.

15             In addition, we've included changes, modifications to

16   the final supplemental order on the provision of the order that

17   deals with the payment of RMBS trustee fees.  We've built in an

18   objection process for the committee and the U.S. Trustee.  And

19   if there's a dispute as to the reasonableness of any fee they

20   submitted to payment to the debtors, that would be subject to

21   court review and a proceeding before Court.

22             If I've missed anything, I'm sure the committee will

23   point it out.

24             THE COURT:  Does anybody else wish to be heard with

25   respect to the supplemental servicing order?

RESIDENTIAL CAPITAL, LLC, ET AL.                                      54

1          MS. FREJKA:  Good morning, Your Honor.  Elise Frejka,

2     Kramer Levin, appearing on behalf of the committee.

3          THE COURT:  Good morning.

4          MS. FREJKA:  Good morning.  That appropriately

5     addresses the committee's concerns.  The committee has been

6     very involved in this process, very concerned about balancing

7     the rights of homeowners to defend as well as preserving the

8     assets of this estate.  The changes that have been made do

9     resolve the limited objection filed by the committee, and it

10    accurately reflects where we are.

11         THE COURT:  All right.  Anybody else wish to be heard?

12         MR. MONAHAN:  Good morning, Your Honor.  Thomas

13    Monahan; Storch, Amini & Munves.  We're counsel for the

14    National Association for Consumer Bankruptcy Attorneys.  Just

15    two brief points.  With respect to the waiver of pro hac fees,

16    we had -- I understand Your Honor's inability to do anything

17    there.

18         THE COURT:  Meaning, it's got to come out of the

19    order.

20         MR. MONAHAN:  Understood, Your Honor.  We do have

21    language related to the debtors agreeing not to object to any

22    parties' telephonic participation at the hearing on the motion

23    or other requirements to appear before the Court.

24         THE COURT:  That I have no problem with.

25         MR. MONAHAN:  Thank you, Your Honor.  The only concern

1  is whether individual bankruptcy debtors' attorneys would then

2  be able to appear telephonically without seeking pro hac for

3  the limited purpose of these hearings.  The concern, Your

4  Honor, being that --

5          THE COURT:  I understand the concern.

6          MR. MONAHAN:  And then the last point would be, in our

7  conversations with the debtor, NACBA has agreed that we will

8  work with the debtors, in the event that any other -- in any

9  instances where motions for relief are sought by other

10  bankruptcy attorneys beyond the scope of this order.

11          THE COURT:  Could I --

12          MR. MONAHAN:  Essentially assisting in the

13  understanding of the order.

14          THE COURT:  I'll just make a general observation.

15  Sometimes some questions are better not asked.

16          MR. MONAHAN:  Understood, Your Honor.  And then just

17  the last point is that the debtors have acknowledged that post-

18  petition they'll be bound by all the rules of the bankruptcy

19  court.  And I just wanted to make that clear for the record.

20          THE COURT:  All right.

21          MR. MONAHAN:  Thank you, Your Honor.

22          THE COURT:  Thank you.  Mr. Rosenbaum?

23          MR. ROSENBAUM:  I have no further comments.

24          THE COURT:  Does anybody else wish to be heard?

25          So you need to take out that one provision.  I need to

RESIDENTIAL CAPITAL, LLC, ET AL.                                    56

1  be -- submit the order with that final change.  I will review

2  it carefully.  And assuming I don't have any other issues about

3  it, it'll go ahead and get entered.  The motion will be granted

4  subject to my review of the proposed final order.

5          MR. ROSENBAUM:  Thank you, Your Honor.

6          THE COURT:  Thank you.  I guess that takes us to the

7  evidentiary hearing, doesn't it?  All right.  Let's take a

8  recess until 11:30; let people reorganize themselves.

9          Before we take the recess, let me -- how many

10  witnesses am I going to hear?  Am I going to hear any live

11  witnesses?

12          MR. HAIMS:  Your Honor, we have four declarations and

13  three declarants.

14          THE COURT:  Okay.  And do you know whether -- is there

15  going to be cross-examination of the declarants?

16          MR. ETKIN:  Very brief, Your Honor, but yes.

17          THE COURT:  Of all four?

18          MR. ETKIN:  No.  Just, I believe, Mr. -- I'm sorry --

19          THE COURT:  No, I just -- what I'd like you to do is

20  just confer and -- is there anybody else who anticipates cross-

21  examining witnesses?

22          UNIDENTIFIED SPEAKER:  We may, Your Honor.

23          THE COURT:  Okay.

24          UNIDENTIFIED SPEAKER:  We may, Your Honor.

25          THE COURT:  During the recess, just confer with

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    57

1    counsel, so they can figure out who's going to be cross-

2    examined.  And what I would suggest is then when we come -- are

3    there going to be objections to the declarations that have been

4    offered?  In other words -- because the first thing I'm going

5    to ask the debtors to do is offer the declarations in evidence.

6    Are there going to be objections to the declarations?

7          Any declaration that is offered in evidence, the

8    declarant has to be available for cross-examination.  So these

9    are all coming in, if they come in, subject to cross.  But I

10   just want to know, are there objections to the admission in

11   evidence of the declarations?

12          MR. ETKIN:  Your Honor, there'll be no objections from

13   us with respect to the factual averments in the declarations.

14   But there may be some issues that I can discuss with counsel.

15          THE COURT:  Okay.  Anybody else?

16          All right.  So we're going to take a recess until

17   11:30.  Just confer so you know who's going to be cross-

18   examined.  Are the objectors calling any witnesses?

19          MR. ETKIN:  We are not, Your Honor.

20          THE COURT:  Anybody calling any witnesses on that

21   side?

22          Okay.  We're in recess.

23       (Recess from 11:11 a.m. until 11:30 a.m.)

24          THE COURT:  Please be seated.

25          MR. HAIMS:  Good morning, Your Honor.  My name is Joel

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    58

1    Haims of Morrison & Foerster, proposed counsel to the debtors.

2           Your Honor, this is a hearing on the debtors' motion

3    to extend the automatic stay or for an injunction enjoining

4    certain cases filed against nondebtor affiliates.  With Your

5    Honor's permission, I'd first like to give an overview of the

6    motion.  Then I'd like to briefly walk through the legal and

7    factual bases for the motion.  Then I'll proffer our evidence,

8    and then I'll make our declarants available for cross-

9    examination.

10          THE COURT:  When you say proffer the evidence, you'll

11   offer the declarations into evidence?

12          MR. HAIMS:  Correct.  Correct, Your Honor.

13          I'll begin with an overview of the motion.  This

14   motion is made pursuant to both Section 362 and Section 105 of

15   the Code.  The relief we are seeking is an extension of the

16   automatic stay to affiliates of the debtor in six cases.  The

17   debtors resolved this motion with parties representing eighteen

18   of the initial twenty-seven cases, all of whom have agreed to a

19   stay through October 31.  Two additional cases were dismissed

20   entirely.  And Judge Cote withdrew the reference in the FHFA

21   case yesterday.

22          THE COURT:  And I saw the FDIC filed a motion to

23   withdraw the reference last night.

24          MR. HAIMS:  Correct.  Only six cases remain in issue

25   for the hearing today.  It's the FDIC, New Jersey Carpenters

**RESIDENTIAL CAPITAL, LLC, ET AL.** 59

1  Fund, Union Central, Western & Southern, and two Cambridge

2  Place Investment Management cases.

3        The procedural posture for each case is detailed in

4  the declarations of Mr. Lipps submitted with the motion papers

5  at ECF docket numbers 6 and 59.  All of these cases are based

6  on the debtors' issuance of mortgage-backed securities, and are

7  brought by investors in those securities.

8        The affiliates at issue in these cases are the

9  debtors' former directors and officers and four of the debtors'

10  corporate affiliates:  Ally Financial, the debtors' ultimate

11  parent; GMAC Mortgage Group, the debtors' immediate parent;

12  Ally Securities; and Ally Bank.  For the Court's convenience,

13  an organizational chart is attached as Appendix B to our

14  initial moving papers at ECF docket 4-2.

15        THE COURT:  I have that before me.

16        MR. HAIMS:  To put these cases in context, the

17  original twenty-seven cases we sought to stay involved more

18  than 660,000 loans with 83 billion dollars in original

19  principal balance.  Even just the remaining six cases involve

20  thirty-four separate securitizations with more than 150,000

21  loans and an original principal balance of more than 26 billion

22  dollars.

23        I'll now turn to the legal and factual bases for the

24  motion.  To frame the issue, I just want to point out that the

25  relief we are seeking here is well within the Court's

RESIDENTIAL CAPITAL, LLC, ET AL.                                    60

1    jurisdiction, is temporally limited through plan confirmation

2    only, and doesn't seek to stop the underlying cases as to any

3    other parties.  As I mentioned, the debtors seek an extension

4    of the stay under Section 362.

5         The basis for the requests are twofold.  First,

6    pursuant to Section 362(a)(1), there is such an identity of

7    interests that the actions against the nondebtors would have an

8    adverse impact on the debtors' estates and their efforts to

9    restructure.  Second, pursuant to 362(a)(3), the claims against

10   the nondebtor affiliates seek to obtain possession or exercise

11   control over the estates' property.

12        As set forth in detail in our moving papers, there are

13   four primary reasons why an extension of the stay is warranted

14   under Section 362.  First -- and I'll walk through them

15   briefly.  First, if these cases continue against the

16   nondebtors, the debtors risk being bound by factual and legal

17   findings that can significantly prejudice their rights in these

18   and other cases.  The debtors' alleged conduct, the issuance of

19   mortgage-backed securities, is the foundation for all of the

20   claims against the nondebtor affiliates.

21        All of the claims, no matter how they are titled,

22   arise out of the offering materials the debtors prepared and in

23   connection with the securitizations --

24        THE COURT:  Let me stop you.  Because in the proposed

25   stipulation you presented that settles eighteen of the cases,

1  you've agreed that the motions to dismiss that are pending in

2  some of those cases, the courts in those cases are going to

3  decide the motions, motions for reconsideration, or whatever

4  can be considered.  Why shouldn't any motions to dismiss in the

5  six cases continue and allow the judges to decide those as

6  you've agreed to do in the other -- it doesn't cover all

7  eighteen, but the ones you specifically go through the recitals

8  about where there are motions to dismiss pending?

9          MR. HAIMS:  And, Your Honor, we've offered that.  So

10 we are okay with anything that -- with allowing anything to go

11 forward that doesn't involve work or the depletion of resources

12 by the debtors.  So to the extent that any motion is pending

13 before the Court we've said the Court can go ahead and decide

14 that motion.  We've offered that, to the extent --

15         THE COURT:  Well, you did more than that.  Because it

16 specifically -- the stipulation specifically contemplated

17 motions for reconsideration and things of that nature, which,

18 if they're filed, will require additional work by the nondebtor

19 affiliates, I assume, in making such motions, or opposing

20 motions.

21         MR. HAIMS:  To the extent that we offered it to any of

22 those cases, Your Honor, we're okay with it for these cases as

23 well.  We want the same terms to everybody.

24         THE COURT:  In one of the cases there were -- motions

25 to dismiss were due on July --

**RESIDENTIAL CAPITAL, LLC, ET AL.**                     62

1          MR. HAIMS:  13th.

2          THE COURT:  There was one that was due July 6th.  Did

3   that get filed?  Were the pleadings --

4          MR. HAIMS:  July 6th?

5          MR. ETKIN:  Your Honor --

6          MR. HAIMS:  That's the --

7          MR. ETKIN:  -- if I can just try to help.  Michael

8   Etkin, Lowenstein Sandler, on behalf of --

9          THE COURT:  A lot of clients, yeah.

10         MR. ETKIN:  -- the lead plaintiffs, the Union Central

11  plaintiffs, and Cambridge Place Investment.

12         The July 6th date may refer to the discovery cutoff in

13  connection with the class certification issues in the -- that's

14  the only July 6th date that I can re --

15         MR. HAIMS:  Yeah --

16         MR. ETKIN:  Oh, there was a July 6th date for --

17         MR. HAIMS:  -- that was -- I'm sorry.

18         MR. ETKIN:  -- for all motion papers to be in on the

19  Cambridge Place cases --

20         THE COURT:  That's the date.

21         MR. ETKIN:  -- and there's an oral argument scheduled

22  for July 13th.

23         THE COURT:  So all oral argument -- all papers were

24  submitted by July 6th?

25         MR. ETKIN:  As far as I understand it, all papers have

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                                        63

1  been submitted, Your Honor.

2              THE COURT:  Okay, Thank you.

3              MR. HAIMS:  On July 6th?  The West --

4              THE COURT:  I know I read something --

5              MR. HAIMS:  In Western & Southern, there was an answer

6  that was filed on July 6th.

7              THE COURT:  Okay.

8              MR. HAIMS:  Yes, and that was filed.

9              THE COURT:  All right.  Go ahead, Mr. Haims.

10             MR. HAIMS:  So in these circumstances where there is

11 an identity of interest between the debtors and the nondebtors,

12 the courts in this district, including Your Honor in McHale,

13 have stayed cases against nondebtors.

14             Second, if these cases against the nondebtors are

15 allowed to continue, the debtors will face burdensome and

16 overwhelming discovery.  Because the debtors issued the

17 mortgage-backed securities, they have virtually all of the

18 relevant documents.  The debtors have the mortgage files, the

19 loan level performance data, the underwriting guidelines, the

20 due diligence materials, the deal documents, and all of the

21 e-mails relating to the deals.  To produce these materials in

22 these cases would be extremely expensive, would be a

23 substantial drain on both the debtors' monetary and human

24 resources and tax already overtaxed employees.

25             The witnesses will also be the employees of the

RESIDENTIAL CAPITAL, LLC, ET AL.                                    64

1   debtors since the debtors have the knowledge of the issues

2   raised in the complaints and the nondebtor affiliates, on the

3   other hand, have few employees, if any, who could speak to any

4   of the issues.

5           The MBIA cases against the debtors, which we discuss

6   at length in our moving papers and in the Lipps declaration,

7   are illustrative of the burdens that the debtors face in these

8   cases.  That discovery from the MBIA cases, Your Honor,

9   incidentally, can't be reused in other cases, because each case

10  involves different securitizations, different mortgage loans,

11  different underwriting guidelines, different documents,

12  different witnesses, and different facts.

13          And despite the fact that the cases against the

14  debtors are stayed, plaintiffs in the underlying cases still

15  seek document discovery and documents in the debtors'

16  possession.  In fact, as mentioned in our motion papers, the

17  FHFA has asked for permission to move --

18          THE COURT:  I guess I don't want to hear about FHFA.

19  They're not before me.

20          MR. HAIMS:  Well, I think that's just -- it's an

21  example of what the parties here will face or could face --

22  what the debtors could face if --

23          THE COURT:  Judge Cote withdrew the reference with

24  respect to FHFA.  That's not before me.

25          MR. HAIMS:  The debtors -- the FHFA, like Western &

RESIDENTIAL CAPITAL, LLC, ET AL.                                    65

1  Southern, which is before you here, have sought loan files

2  which are in debtors' possession --

3          THE COURT:  In looking at my notes I see that it was

4  in the Western & Southern action that Ally Securities was to

5  make filings in Ohio on July 6th.  Did they do that?

6          MR. HAIMS:  They did, Your Honor.

7          And the only reason I raised the FHFA case, and which

8  is similar to the Western & Southern case, because in the

9  absence of the stay here we expect the parties to continue to

10 seek discovery of documents in the debtors' possession from the

11 nondebtor affiliates in those cases, as the FHFA in fact --

12         THE COURT:  Let me just --

13         MR. HAIMS:  -- has done.

14         THE COURT:  We'll get to the discovery issues, but let

15 me -- I see that in the Union Central action, motions to

16 dismiss the amended complaint are due on July 13th.  Which of

17 the nondebtor affiliates is the defendant in that action?

18 That's before Judge Daniels, as I understand it?

19         MR. HAIMS:  Union Central has Ally Securities, Ally

20 Financial, and one of the individuals.

21         THE COURT:  And since I'm not likely to rule from the

22 bench today and so there will be no stay in effect, are those

23 nondebtor affiliates ready to file their motions to dismiss, if

24 they're going to, on July 13th?

25         MR. HAIMS:  Your Honor, I'm not counsel in those

RESIDENTIAL CAPITAL, LLC, ET AL.                                    66

1  cases.  My understanding is that there's no stay, and without a

2  stay in those cases the debtors would have to answer the

3  cases --

4            THE COURT:  The reason I'm --

5            MR. HAIMS:  -- or the nondebtor affiliates have to.

6            THE COURT:  The reason I'm pausing on the motions to

7  dismiss, I'm sort of -- I don't know, I haven't heard the

8  evidence and I'm not saying what I'm going to do yet on these

9  motions, but one of the things that strikes me, Mr. Haims, is

10  that looking at the end game in these cases, the debtors at

11  least have stated on the record that they intend to propose a

12  plan that would provide releases to all of the nondebtor

13  affiliates.  And that obviously presents legal and factual

14  issues not for today.

15            But at a minimum, if that's going to happen, it's

16  going to require an evaluation of the claims that are proposed

17  to be released.  And it does seem to me that central to that

18  effort is whether the claims that have been asserted, whether

19  the complaints that have been filed state claims for relief.

20  And where motions to dismiss have been made or will be made,

21  decisions by the state courts or district courts where those

22  actions are pending would certainly provide pertinent

23  information, relevant information in any evaluation of the

24  claims.

25            So even if I were persuaded to grant an injunction,

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    67

1   which remains to be seen, I would be very reluctant to do that

2   with respect to motions addressed to the pleadings, or even in

3   the cases before Judge Baer where discovery and briefing is

4   concluding on class certification -- it's not merits discovery

5   that most of your arguments are addressed to -- I would be

6   inclined to allow that to go forward.  I think the discovery

7   issues are a separate set of issues.

8           Your stipulation in the eighteen matters where you

9   have resolved obviously reflect that you're prepared to have

10  motions addressed and the pleadings go forward.  And whether it

11  requires nondebtor affiliates to file new pleadings over the

12  next couple of months or not, I'm not particularly moved by

13  your argument.

14          MR. HAIMS:  Thank you, Your Honor.  I mean, it is

15  clear, which is clear from the stipulation, that the crux of

16  the request goes to the discovery burden and it goes to the

17  costs that will be incurred to defend those, primarily as it

18  results from the cost of the discovery burden.  The discovery

19  burden is massive, and the costs of that will be massive.  You

20  know, I can't stay up here and say that briefing a motion to

21  dismiss is going to --

22          THE COURT:  Well, putting a label on it that the costs

23  would be massive is a conclusory statement.  I hear your

24  argument.

25          MR. HAIMS:  And we'll have -- Mr. Lipps will talk in

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    68

1  more detail about that later.

2              Your Honor, the debtors also have contractual

3  indemnity obligations to both the directors and officers and

4  their corporate affiliates for costs in these judgments, and

5  therefore --

6              THE COURT:  You focus on an E&O policy, and that, I

7  take it, provides entity coverage?

8              MR. HAIMS:  Yes.

9              THE COURT:  And that's a shared policy?

10             MR. HAIMS:  Yes.

11             THE COURT:  Who is the principal?  Who is the named

12 insured?

13             MR. HAIMS:  Ally Financial, Inc., the ultimate parent,

14 and it covers Ally and all its capital S subsidiaries.

15             THE COURT:  And how much is the policy for?

16             MR. HAIMS:  It --

17             THE COURT:  And is it stacked coverage?

18             MR. HAIMS:  Yeah, stacked coverage.

19             THE COURT:  What's the total?

20             MR. HAIMS:  Per -- for that year we -- I think it's

21 per year, the total coverage is -- and there's discussion

22 between the insurance -- it's a hundred million dollars per

23 year.

24             THE COURT:  Total is a hundred million?

25             MR. HAIMS:  It's a hundred million.  There's a

1  retention of twenty-five million under the policy.  So the

2  policy that we attached is -- we attached the primary policy

3  and they all follow suit.  So there's significant coverage, but

4  these are significant claims.

5         THE COURT:  And does Ally have D&O coverage that

6  provides coverage -- I mean, you focus on E&O policy which

7  provides entity coverage, and I guess it would cover officers

8  and employees as well as officers and directors, I suppose,

9  right?

10        MR. HAIMS:  Correct.

11        THE COURT:  What I don't have a complete picture of is

12  what the total insurance picture looks like.  And so I know you

13  argue it's a wasting policy; every dollar spent is a dollar not

14  available at the end of the day.  What I don't have a good

15  understanding of, and I don't know whether the evidence will

16  address that, is: is there -- you know, I'm picking numbers out

17  of the air -- is there another 500 million dollars of D&O

18  coverage that potentially covers officers and directors who

19  were named as defendants in all of these cases?

20        MR. HAIMS: Well, there is separate D&O coverage --

21        THE COURT:  How much?

22        MR. HAIMS:  I believe the D&O tower currently is 275

23  million dollars, and I don't know how many years that goes back

24  in that increment.  At some point it was raised; I just don't

25  know what year.

RESIDENTIAL CAPITAL, LLC, ET AL.                    70

1    We use the E&O policy because the insurer -- which is

2  in a letter attached in the exhibits -- the insurer

3  specifically acknowledged coverage for these cases under the

4  E&O policy.  So that's not disputed by the insurer.

5          THE COURT:  Have the D&O policies advanced or

6  reimbursed defense costs for any of the cover insureds in any

7  of the actions pending around the country?

8          MR. HAIMS:  I preface this by saying these are Ally

9  Financial policies and ResCap doesn't have the -- my

10  understanding is the answer is no to that.

11         THE COURT:  Well, let me just -- are individuals who

12  are named defendants who are officers and directors of ResCap

13  or its debtor affiliates, are they insureds under the AFI D&O

14  policies?

15         MR. HAIMS:  They are.  They're also indemnified by

16  ResCap and AFI, and currently these or these cases are -- sort

17  of, pre-bankruptcy there was a centralized fee system.  It was

18  billed to an Ally accounts payable but the costs were incurred

19  by ResCap for of these cases.  So none of them have hit the

20  policy yet.  ResCap has been paying the defense costs, to date,

21  in all of these cases.

22         THE COURT:  For all defendants?

23         MR. HAIMS:  Yes.  For all the Ally affiliated

24  defendants, that's correct.

25         THE COURT:  Why is that?

RESIDENTIAL CAPITAL, LLC, ET AL.                    71

1          MR. HAIMS:  Because these are ResCap -- these arose

2    out of the ResCap business.

3          THE COURT:  That doesn't answer my question.  Is there

4    a --

5          MR. HAIMS:  Because there's a contractual indemnity

6    between AFI and its -- AFI affiliates and ResCap that's been

7    contained in the --

8          THE COURT:  Has ResCap been paying Ally

9    Financial's --

10         MR. HAIMS:  Yeah.

11         THE COURT:  -- defense?

12         MR. HAIMS:  Yeah.  There's a provision in the amended

13   and restated operating agreement between ResCap and Ally that

14   provides that Al --

15         THE COURT:  None of that's happened post-petition, I

16   take it?

17         MR. HAIMS:  None of that has happened post-petition.

18   But there is a provision that provides, and I'll quote:  "To

19   the fullest extent permitted by law ResCap is to indemnify

20   defendant and hold harmless nondebtor affiliates from any and

21   all losses that relate to, arise out of, or result principally

22   from the business operations of ResCap."

23         THE COURT:  You just read something to me that says

24   the nondebtor affiliates.  When was that agreed to?

25         MR. HAIMS:  No, that was bracketed.

RESIDENTIAL CAPITAL, LLC, ET AL.                    72

1          THE COURT:  You had bracketed that language.

2          MR. HAIMS:  Yeah, bracketed.  So they've been

3   paying -- they have a duty to indemnify and have in fact been

4   covering the costs of these cases under the amended and

5   restated operating agreement.

6          And finally, the debtors satis -- we think the debtors

7   satisfied, in the alternative, all four factors to obtain 105

8   relief.  Three of them, irreparable harm and the ability to

9   restructure, balance of harm, and public policy, I think

10  that --

11         THE COURT:  Where's the irreparable harm?

12         MR. HAIMS:  Well, I think irreparable harm is the

13  depletion of --

14         THE COURT:  I mean, Ally Financial is certainly in a

15  position to pay the defense costs if the debtors can't.  Let's

16  put the discovery issue aside for a second, just for a moment.

17         MR. HAIMS:  Um-hum.

18         THE COURT:  I see it as a big issue, but it's not as

19  if the nondebtor defendants, individual or entities, are being

20  left without someone to pick up the defense costs if the

21  actions proceed against them.

22         MR. HAIMS:  Purely from a monetary point of view

23  you're right.  However, as I said, all of the discovery, all of

24  the documents, all of the witnesses are ResCap employees,

25  they're ResCap documents, they're housed at ResCap.  And the

RESIDENTIAL CAPITAL, LLC, ET AL.                    73

1   burden to produce those and to make these witnesses available

2   and to make these documents available is considerable.  And in

3   this short time frame between now and confirmation of the plan

4   all of these folks are completely overtaxed and, as we have and

5   you'll hear --

6              THE COURT:  Who is the underwriter?  Ally Securities?

7              MR. HAIMS:  Yes.

8              THE COURT:  You're telling me they don't have

9   documents?

10             MR. HAIMS:  They don't have --

11             THE COURT:  They're an underwriter and they don't have

12  documents?

13             MR. HAIMS:  They don't have the loan files and they

14  don't have the -- no, that's correct, Your Honor.  They have

15  some documents but they don't have the key doc --

16             THE COURT:  Why shouldn't they be -- to the extent

17  that the discovery proceeds in any of the actions, why

18  shouldn't Ally Securities have to produce whatever documents

19  are in its possession -- custody; I'll leave control out of it.

20  From what you're saying, if they've got documents that relate

21  to their underwriting activities, which they better have, why

22  shouldn't they have to produce those?  Let's put aside -- I'm

23  putting aside the issue --

24             MR. HAIMS:  From the debtor --

25             THE COURT:  -- of the documents that are in the

RESIDENTIAL CAPITAL, LLC, ET AL.                                74

1  possession of the debtors.

2         MR. HAIMS:  From the debtors' point of view, if Ally

3  Securities is going to produce documents solely that Ally

4  Securities has, that's not of concern to the debtor.

5         THE COURT:  I'm sorry?

6         MR. HAIMS:  That's okay with the debtor; the debtors

7  don't have an issue with that.

8         THE COURT:  So you're prepared to carve that out of

9  your request for injunctive relief, that the nondebtors --

10  there's no injunction against discovery requests to the

11  nondebtors to produce any documents that are in their

12  possession?

13         MR. HAIMS:  I don't know that I'm prepared to carve it

14  out without consulting, but I think that that --

15         THE COURT:  I'm just trying to understand what --

16         MR. HAIMS:  Yeah.  I --

17         THE COURT:  You're asking for very broad relief.

18         MR. HAIMS:  Um-hum.

19         THE COURT:  And you may be entitled to it all and you

20  may not; you may not be entitled to any of it.  But what I'm

21  trying to understand is you say all of the documents are in the

22  possession of the debtors, and that's not a hundred percent

23  accurate, right?

24         MR. HAIMS:  I said virtually all of the documents are

25  in there, and I think that that is accurate.  I don't know what

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    75

1   Ally Securities has.  I don't represent Ally Securities.  I'm

2   talking from the debtors' point of view; and from the debtors'

3   point of view, if the debtor has to go --

4          THE COURT:  Have you ever represented underwriters

5   before?

6          MR. HAIMS:  I have represented underwriters.

7          THE COURT:  And do you know what documents

8   underwriters typically have in their files in connection with

9   offerings they've done?

10         MR. HAIMS:  Yeah, and I think an underwriter -- they

11  may have an underwriting file.  I just don't know.  Again, I

12  don't represent Ally Securities here.  But from the debtors'

13  point of --

14         THE COURT:  No, but you're seeking relief on their

15  behalf.

16         MR. HAIMS:  Correct.  Again, principally addressed to

17  documents and information that the debtors have.

18         THE COURT:  Okay.

19         MR. HAIMS:  So in sum, Your Honor, we believe in

20  joining these claims against the nondebtor affiliates to avoid

21  harm to the debtors and allow them the time -- and again, we're

22  only asking for a few months -- to restructure, is, we submit,

23  far greater than allowing the plaintiffs to continue to

24  prosecute these private securities litigation cases during this

25  limited period.

RESIDENTIAL CAPITAL, LLC, ET AL.                          76

1        THE COURT:  The stipulation that you -- to resolve the

2   issue as to eighteen of the cases --

3        MR. HAIMS:  Um-hum.

4        THE COURT:  -- has an October 31 --

5        MR. HAIMS:  Correct.

6        THE COURT:  -- date for expiration of the stay.  But

7   yet in the blackline order that you filed last night you're

8   still asking for an injunction or a stay through confirmation.

9        MR. HAIMS:  That's correct, Your Honor.

10        THE COURT:  Why --

11        MR. HAIMS:  Well, that --

12        THE COURT:  Why should you get any more than October

13   31 when you agreed in eighteen of the cases to the October

14    31 --

15        MR. HAIMS:  Because we consensually agreed to that.

16   This was pre-hearing, before all the work that had to go into

17   this, and this was what we requested in our initial motion.

18   The other was subject to a settlement, and without a settlement

19   I'm not sure why we should go forward --

20        THE COURT:  Well, you need to persuade me why it would

21   be appropriate, in the first instance, to extend the stay

22   through confirmation.  You know in McHale v. Alvarez --

23        MR. HAIMS:  I do.

24        THE COURT:  -- I didn't grant a stay through

25   confirmation of a plan, but a hard date subject to possible

1  extension, and in fact the parties agreed to an extension of it

2  before the deadline.

3          MR. HAIMS:  Right.

4          THE COURT:  I was reluctant there and reluctant here

5  to include -- to not have a specific date and leave it subject

6  to other events.  People can always come back and ask to extend

7  it or shorten it, for that matter.  If events overtake it and

8  there's some change in circumstances that would justify

9  vacating an injunction, that's always possible too.

10         MR. HAIMS:  Your Honor, I think breathing room until

11 October 31, as we agreed to with the other parties, is

12 appropriate.  We've made this motion seeking for confirmation

13 through the plan.  It's not -- you know, October 31 -- we're

14 likely to be back here October 31, but if that's what Your

15 Honor is most comfortable with --

16         THE COURT:  I don't know.

17         MR. HAIMS:  -- we'd be -- that's okay with us.

18         THE COURT:  All right.

19         MR. HAIMS:  I now turn to the evidence.

20         THE COURT:  Why don't you offer whatever evidence --

21         MR. HAIMS:  Yes.  So the first declaration we offer

22 into evidence is the declaration of Jeffrey Lipps.  That's

23 dated May 24th, 2012.  The declaration is ECF docket number 6.

24 Mr. Lipps is outside counsel to the debtor in many of these

25 cases.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                     78

1    THE COURT:  Any objection to the Lipps declaration

2   being admitted into evidence?

3    MR. ETKIN:  Michael Etkin, Your Honor, Lowenstein

4   Sandler.  We have no objection.  We would just like to note for

5   the record that the Lipps declaration does contain statements

6   of law and legal argument.  We'll leave it to the Court to

7   separate the wheat from the chaff with respect to that.  I just

8   would like to note that for the record.

9    THE COURT:  Thank you, Mr. Etkin.

10    All right.  The Lipps declaration, which is ECF number

11   6, is admitted into evidence for the purposes of this hearing.

12   (Jeffrey Lipps declaration, dated May 24, 2010, ECF docket

13   number 6, was hereby received into evidence, as of this date.)

14    MR. HAIMS:  The second declaration that we offer into

15   evidence is the declaration of James Whitlinger, dated May

16   25th, 2012.  The declaration is ECF docket number 7.  Mr.

17   Whitlinger is the chief financial officer of debtor,

18   Residential Capital, LLC.

19    THE COURT:  Any objections to the Whitlinger

20   declaration?

21    All right.  The Whitlinger declaration is admitted

22   into evidence.

23   (James Whitlinger declaration, dated May 25, 2012, ECF docket

24   number 7, was hereby received into evidence, as of this date.)

25    MR. HAIMS:  The third declaration that we offer into

1  evidence is the declaration of Anne Janiczek, dated May 25th,

2  2012.   The declaration is ECF docket number 8.   Ms. Janiczek is

3  the chief human resources officer for the mortgage division at

4  ResCap.

5          THE COURT:   Any objections to the Janiczek

6  declaration?

7          All right.   The Janiczek declaration is admitted into

8  evidence.

9  (Anne Janiczek declaration, dated May 25th, 2010, ECF docket

10 number 8, was hereby received into evidence, as of this date.)

11         MR. HAIMS:   The fourth and final declaration that we

12 offer into evidence is the supplemental declaration of Jeffrey

13 Lipps dated July 6, 2012.   This declaration is ECF docket

14 number 59.

15         THE COURT:   Any objections to the supplemental Lipps

16 declaration?

17         MR. ETKIN:   No objection, Your Honor, just subject to

18 the same statement I made earlier.

19         THE COURT:   All right.   The Lipps supplemental

20 declaration is admitted into evidence.

21 (Supplemental declaration of Jeffrey Lipps, dated July 6, 2012,

22 ECF docket number 59. was hereby received into evidence, as of

23 this date.)

24         MR. HAIMS:   I next turn to the exhibits, Your Honor.

25 Your Honor should have in front of you a binder of exhibits

RESIDENTIAL CAPITAL, LLC, ET AL.                                      80

1   marked 1 to 31.

2           THE COURT:  I've got --

3           MR. HAIMS:  Yeah, it's a black one.

4           It is our intention to offer all of these into

5   evidence, so with the Court's permission, I would offer into

6   evidence Exhibits 1 to 31.

7           THE COURT:  Have the object -- you provided copies of

8   these to the objectors?

9           MR. HAIMS:  Yeah, we have.  Yes.

10           THE COURT:  Mr. Etkin, do you have objections to any

11   of the exhibits?

12           MR. ETKIN:  No, Your Honor.  In fact, to short circuit

13   the process a little bit, the parties have all agreed that all

14   exhibits set forth in the binders and the exhibit list filed

15   with the Court will be admitted into evidence in this

16   proceeding.

17           THE COURT:  Okay.  Anybody else want to be heard on

18   that point?

19           All right.

20           MR. HAIMS:  Thank you, Your Honor.  I have nothing

21   further at this time.

22           THE COURT:  In light of that statement, the debtors'

23   Exhibits 1 through 31 are admitted into evidence.

24   (Debtors' Exhibits 1 - 31 were hereby received into evidence,

25   as of this date.)

1        MR. HAIMS:  Thank you, Your Honor.  I have nothing

2   further at this time.

3        THE COURT:  Who would you wish to cross-examine, Mr.

4   Etkin?

5        MR. ETKIN:  Your Honor, with your permission, I heard

6   a couple of things in Mr. Haims' opening remarks that caused me

7   to just --

8        THE COURT:  Before you do that, let me just -- Mr.

9   Haims, do you rest?

10        MR. HAIMS:  Yes.

11        THE COURT:  Okay.

12        MR. ETKIN:  Good afternoon, Your Honor.  Michael

13   Etkin, Lowenstein Sandler, on behalf of the plaintiffs in four

14   of the remaining cases before you today in connection with the

15   motion to extend the stay or enforce stay under 105.

16        There may have been some miscommunication, Your Honor.

17   It's happened to me before, so I'm not going to lay this at

18   anyone's doorstep.  But I heard some things from Mr. Haims just

19   a moment ago that tie in with some of the discussions that we

20   had in connection with a resolution of this motion, short of a

21   full-blown hearing, that I was under the impression were not

22   acceptable to the debtor, but now it appears that they are.

23        THE COURT:  Well, let me ask you this question.  I

24   don't want to get -- you know, the parties often do better when

25   they settle matters themselves because sometimes when the Court

1  decides, somebody's going to be disappointed and it may be that

2  both sides are disappointed.  So based on what you heard, do

3  you believe that there is a realistic possibility that you can

4  resolve your differences with the debtors?

5          MR. ETKIN:  Yes.

6          THE COURT:  How much time do you think you would need

7  to discuss that?  I'm only talking about a short recess, but if

8  you think -- you're an experienced lawyer, if you think there's

9  a realistic chance that you can resolve the issues -- obviously

10 eighteen of the case it was resolved.  And so how much time do

11 you think you need to do that?

12         MR. ETKIN:  From my perspective, based upon what I

13 heard, not much time, Your Honor.  Maybe ten or fifteen

14 minutes, unless I'm misreading things.  You know, sometimes

15 some of the questions posed by the Court, initially, can also

16 cause parties to maybe rethink certain aspects of a case,

17 and --

18         THE COURT:  Sometimes courts do that for a reason.

19         MR. ETKIN:  That's --

20         THE COURT:  Let me --

21         MR. ETKIN:  So I don't think that long.

22         THE COURT:  Let me suggest this.  It's five after 12

23 on the clock in the court, which is a few minutes fast, but --

24 if we proceed, you're going to cross-examine one witness, is

25 that --

1          MR. ETKIN:  Two, Your Honor.

2          THE COURT:  Two?

3          MR. ETKIN:  Yes.

4          THE COURT:  Do you have an estimate of approximately

5    how much time you think your cross would take?

6          MR. ETKIN:  I advised debtors' counsel that I thought

7    that it would be in the range of a half an hour for each --

8          THE COURT:  Okay.

9          MR. ETKIN:  -- give or take.

10         THE COURT:  All right.  Let's do this.  Let's take our

11   lunch recess now until 1:30.  All right?  And I don't want to

12   deprive you of lunch, but why don't you see -- now, there are

13   other objectors as well.  I don't know whether you can speak

14   for anybody else.

15         Any of the other objectors also think there's cause to

16   believe you can resolve issues?

17         Why don't you identify yourself?

18         MR. DEFILIPPO:  Your Honor, Paul DeFilippo for Western

19   & Southern.

20         THE COURT:  Right.

21         MR. DEFILIPPO:  I'm always willing to talk, Your

22   Honor.  We didn't hear anything about one of the key issues to

23   us, which is the need for tolling of any time periods that run

24   against us.  I presume the debtors are willing to do that since

25   they didn't oppose that request in our papers, but they haven't

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    84

1    conceded they would.

2           THE COURT:  Yeah.  I mean, I -- I'm not deciding

3    anything right now, but I have a hard time thinking that I

4    would enter an order enjoining progress of the case without

5    including a provision that tolled limitations.

6           But Mr. Haims?

7           MR. HAIMS:  Maybe if I could just refer to that.  The

8    issue with respect to the tolling here is tolling of individual

9    former officers and directors who are not named in that law

10   suit.  So we've agreed to toll the corporate defendants who

11   were in the lawsuit and even the corporate defendants who are

12   not in the lawsuit.  What we didn't agree to do is to chase

13   former directors and officers who are no longer named in those

14   lawsuits to try to get them to toll.

15          MR. DEFILIPPO:  The problem with that, of course, is,

16   Your Honor, that those people were dismissed out of our action

17   on jurisdictional grounds.  And if they are the beneficiaries

18   of a stay now, without a tolling provision, we are going to run

19   into statute of limitation problems in August.  So that issue

20   is a live one for us.

21          And in addition, Your Honor, I think we're the only

22   party that has a discovery cutoff date, at least of the parties

23   that have objected, and that's April 4th, 2013.

24          THE COURT:  Where is your action pending?

25          MR. DEFILIPPO:  Ohio.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    85

1    THE COURT:  In state court?

2    MR. DEFILIPPO:  State court in Ohio.  We have a

3    discovery cutoff date.  We have nonaffiliated entities that are

4    defendants as well, underwriters like Citibank.  And we don't

5    have the means to address the problem of the discovery cutoff

6    date and the absence of a willingness on the part of the

7    debtors to provide their documents which are essential to us to

8    prosecute our claims against the parties that will not be the

9    beneficiaries of a stay under any circumstances.

10    THE COURT:  Okay.  You want -- yes?

11    MS. MATTHEWS:  Kathryn Matthews --

12    THE COURT:  Could you come up to the microphone so we

13    get a clear record?

14    MR. HAIMS:  Your Honor, if I could just address the

15    discovery stay for one second?

16    THE COURT:  Go ahead.

17    MR. HAIMS:  The discovery stay -- and we've talked

18    about it -- discovery cutoff is April of 2013, and we don't

19    think that should affect a limited stay --

20    THE COURT:  You'll talk about it --

21    MR. HAIMS:  -- through October 31.

22    THE COURT:  -- during the break.

23    Come on up.

24    MS. MATTHEWS:  Kathryn Matthews, Your Honor, from

25    Grais & Ellsworth on behalf of the FDIC as receiver for two

1  failed banks.

2          I'm not promising anything but we also think that we

3  could benefit, perhaps, from a little bit of time to talk to

4  the --

5          THE COURT:  Well, let's --

6          MS. MATTHEWS:  -- debtors' counsel.

7          THE COURT:  So I don't use up more of the time than

8  necessary, let's break until 1:30, come back, see whether

9  you're able to resolve issues.  Okay?  Let's see where we are

10  at 1:30, okay?

11          MS. MATTHEWS:  Thank you.

12          MR. HAIMS:  Thanks very much, Your Honor.

13          MR. DEFILIPPO:  Thank you, Your Honor.

14      (Recess at 12:05 p.m. until 1:35 p.m.)

15          THE COURT:  Please be seated.  All right.  We're back

16  on the record in Residential Capital, the Allstate Insurance

17  Co. adversary proceeding 12-01671.

18          MR. HAIMS:  Good afternoon, Your Honor.

19          THE COURT:  Mr. Haims.

20          MR. HAIMS:  I could report that we've had discussions

21  with all of the counsel, taken individually with Mr. Etkin and

22  his four clients -- his four cases.  We have agreed to a

23  resolution of this motion.

24          In the Cambridge Place case, two cases, we'll agree to

25  the motion to dismiss going forward to decision.

1      In the Union Central case, we'll agree to brief the

2  motion to dismiss towards decision.

3      In the New Jersey Carpenter's case, we'll agree to

4  have class certification go forward to decision.  In the New

5  Jersey Carpenter's case, if there is any cleanup discovery

6  against nondebtors under any existing discovery requests

7  relating to class certs -- and Mr. Etkin wasn't aware of any --

8  that would go forward.

9      And in the Cambridge case, we would agree to discovery

10  against Ally Securities of Ally Securities documents so long as

11  it doesn't cause the debtors expense or burden to produce those

12  documents.

13      So we have reached resolution with Mr. Etkin in these

14  four cases.

15      In the FDIC, we have -- that case was just filed after

16  the bankruptcy in May.  We have agreed that Ally Securities

17  would file a motion to dismiss.  We've agreed to the same

18  discovery with respect to Ally Securities, should that happen.

19  However, we've requested that the motion to --

20      THE COURT:  Just --

21      MR. HAIMS:  Sure.

22      THE COURT:  -- explain the discovery, how you resolved

23  the discovery issue there.

24      MR. HAIMS:  Well, we've agreed that Ally Securities*

25  would produce documents that Ally Securities* --

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                     88

1          THE COURT:  That it has in its possession.

2          MR. HAIMS:  -- has, and not documents that the

3   debtor --

4          THE COURT:  I assume you're going to document what

5   you're --

6          MR. HAIMS:  Yeah, we will.

7          THE COURT:  That's fine.

8          MR. HAIMS:  We'll work on language.

9          THE COURT:  Go ahead.

10          MR. HAIMS:  We just didn't have time.

11          THE COURT:  Go ahead.

12          MR. HAIMS:  For the FDIC, we've asked in return for

13   the motion to dismiss, and for the Ally Securities' production,

14   we've asked that the motion to withdraw and the motion to

15   dismiss before Your Honor be withdrawn or stayed till after the

16   discovery period -- the stay period, and we don't have

17   confirmation on that as of yet.

18          And lastly, with respect to Western & Southern, those

19   discussions were not fruitful.  Western & Southern is still

20   insisting on tolling agreements from the dismissed individuals,

21   which we cannot deliver.  And they've now asked for discovery

22   from the debtors, and we just are not going to agree to that.

23   So with respect to Western & Southern and perhaps the FDIC,

24   we're going to have to go forward with the hearing.

25          That's all I have, Your Honor.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    89

1    THE COURT:  Okay.  Mr. Etkin, anything you want to

2    add?

3         MR. ETKIN:  Those are the general contours, Your

4    Honor, of the agreement that we've worked out.  Of course we

5    have to reduce it to a stipulation, and other aspects of the

6    existing stipulation that's filed will be baked into ours as

7    well.  And we appreciate Your Honor giving us the time to

8    attempt to work it out.

9         THE COURT:  I'm glad you were able to work it out.

10        MR. ETKIN:  Thank --

11        THE COURT:  Thank you very much.

12        MR. ETKIN:  Thank you very much, Your Honor.  And may

13   I be excused?

14        THE COURT:  You're excused.

15        And who's representing FDIC?

16        MS. MATTHEWS:  I am, Your Honor.

17        THE COURT:  Why don't you come on up to the

18   microphone?  Tell me your name again, I'm sorry.

19        MS. MATTHEWS:  Kathryn Matthews from Grais &

20   Ellsworth.

21        THE COURT:  Okay, Ms. Matthews.  So where do things

22   stand from your standpoint?

23        MS. MATTHEWS:  Well, as Mr. Haims said, we have

24   reached an agreement that Ally Securities* would go ahead and

25   make a motion to dismiss in conformance with Judge Swain's

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    90

1  schedule and that should there be the opportunity --

2          THE COURT:  I thought there was no schedule yet.

3          MS. MATTHEWS:  Oh, there's a schedule in the motion to

4  dismiss.  The parties are to submit their briefing by July

5  30th.

6          THE COURT:  Okay.

7          MS. MATTHEWS:  And the motion is to be fully submitted

8  by the end of October.

9          THE COURT:  Okay.

10         MS. MATTHEWS:  There's no discovery that's pending

11 right now, but should there be the opportunity to take some

12 discovery, that we would be permitted to go ahead and serve

13 discovery on Ally Securities* itself for its own documents.  I

14 am just waiting to hear back from the client as to whether we

15 will be willing to agree to put our motion to withdraw the

16 reference and our motion to dismiss in abeyance until October

17 31st, and I just don't have an answer on that right now.

18         THE COURT:  Okay.  When do you -- so Mr. Haims, it was

19 a little unclear to me, you have the agreement on the other

20 issues, is everything dependent on -- is an agreement -- is it

21 all or nothing?  That's what I'm trying to understand.

22         MR. HAIMS:  Well, I think, Your Honor, otherwi -- I

23 mean, from our point of view, if we have to now then brief a

24 motion to dismiss, if the debtors now have to brief a motion to

25 dismiss, you know, we're here and this might as well go

1   forward, but you know, it's --

2          MS. MATTHEWS:  From our point of view, if the Court

3   lacks jurisdiction to go over this dispute, then that should be

4   decided, regardless of what we agree to as far as --

5          MR. HAIMS:  And we're not saying jurisdiction

6   shouldn't be decided.  All we're saying is put everything in

7   abeyance until October 31 and all of those issues can be

8   resolved then.

9          THE COURT:  Ms. Matthews, how is it that you propose

10  to proceed at this point?

11         MS. MATTHEWS:  If I cannot get my client on the phone

12  to hash this out then I will participate and cross-examine as

13  we had planned.

14         THE COURT:  And you've endeavored to get your client

15  and you can't?

16         MS. MATTHEWS:  I have.

17         THE COURT:  Are they going to be available later this

18  afternoon?

19         MS. MATTHEWS:  I would certainly think so.  It does

20  seem silly to go through with the cross-exam -- the witnesses

21  as to discovery burden when we've -- I think the parties have

22  agreed that the FDIC's action really does not --

23         THE COURT:  Right.

24         MS. MATTHEWS:  -- impose any discovery burden, and

25  nothing is really set to happen between now and October 31st

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    92

1  other than briefing on the motion to dismiss and perhaps

2  initial disclosures by the parties.

3          THE COURT:  And you think Judge Swain is going to have

4  a burning desire to deal with your motion to withdraw the

5  reference?

6          MS. MATTHEWS:  I can't speak to Judge Swain's desires.

7          THE COURT:  So you filed your motion to dismiss here.

8          MS. MATTHEWS:  We did.

9          THE COURT:  And that part of it let me make easy, I'm

10 just going to adjourn the motion -- as long as it remains here

11 in this court, I'll just simply adjourn briefing and argument

12 on the motion to dismiss until after October 31.

13         Now, you do have a motion to withdraw the reference.

14 I don't get to speak to that.

15         MS. MATTHEWS:  Shall we go ahead and hopefully in the

16 next fifteen, twenty minutes I can hear back from my client and

17 I --

18         THE COURT:  Sure.  Let me see where --

19         MS. MATTHEWS:  -- I'll, you know, perhaps I go last in

20 the line and hopefully by the time it would be my turn to

21 examine the witnesses I can report back.

22         THE COURT:  Yes, let's try and proceed that way.  It

23 does seem silly to me to go forward with your cross-

24 examination, but let's let me see where things stand.  All

25 right.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    93

1        MS. MATTHEWS:  Thank you.

2        THE COURT:  Who's representing W&S?

3        MR. DEFILIPPO:  Good afternoon, Your Honor.  Paul

4   DeFilippo for Western & Southern.

5        Your Honor, I don't think we're going to need to

6   cross-examine any of the declarants, so if it pleases the

7   Court, I could make a closing argument.  I'd need to move in --

8        THE COURT:  Yeah, you need to move your exhibits.

9        MR. DEFILIPPO:  I need to move my exhibits in, which

10  are Western & Southern A, B, and C attached to the Fitzgerald

11  declaration.  And I'm prepared to proceed with argument at Your

12  Honor's convenience.

13       THE COURT:  Well, let me just ask, are there any

14  objections as to Exhibits A, B, and C -- Western & Southern A,

15  B, and C?

16       MR. HAIMS:  No, Your Honor.

17       THE COURT:  All right.  They're admitted into

18  evidence.

19  (Western & Southern Life Insurance Co.'s Exhibits A, B, and C,

20  attached to the Fitzgerald declaration, were hereby received

21  into evidence, as of this date.)

22       THE COURT:  Let me just -- if I have to go ahead and

23  decide I'll go ahead and decide, but let me just -- I want to

24  make sure I understand what issues are separating you in terms

25  of resolving the matter.  You raised the issue before lunch

RESIDENTIAL CAPITAL, LLC, ET AL.                                94

1  that, as I understand it, there were some -- I don't know

2  whether they're present or former officers and directors who

3  were dismissed from the pending action.

4          MR. DEFILIPPO:  Former, Your Honor.

5          THE COURT:  Former?  Okay, who have been dismissed

6  from the -- was that pursuant to a decision of the Court?

7          MR. DEFILIPPO:  Yes, that decision is Exhibit W&S B,

8  and they were dismissed for lack of personal jurisdiction of

9  the Ohio court over them.  The debtors have informed us they

10 are unable to consent to the tolling provisions on behalf of

11 those parties.  Since they're former officers and directors,

12 the debtors don't represent them, and to my knowledge, they're

13 not otherwise represented in this proceeding.

14         THE COURT:  Well, let me stop you there.

15         Mr. Haims, you're asking -- are you asking for relief

16 as to those former officers and directors as well?

17         MR. HAIMS:  No, Your Honor.  Oh, yes -- yes, Your

18 Honor.

19         THE COURT:  Yes, you are.

20         MR. HAIMS:  I'm sorry, I --

21         THE COURT:  Well --

22         MR. HAIMS:  They were in the mo -- the motion to

23 dismiss came down after the --

24         THE COURT:  The decision on the motion to dismiss --

25         MR. HAIMS:  The decision came down after the initial

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    95

1  moving of the papers.

2         THE COURT:  I mean, I hear you about this, but if I

3  grant a preliminary injunction, in one fashion or another, I

4  would undoubtedly condition it on the agreement or consent of

5  any party for whose benefit the injunction is issued consents

6  to toll the statute of limitations.  I am not going to give --

7  I mean, it certainly -- the whole purpose of an injunction is

8  to maintain -- it's essentially to maintain the status quo.

9  And if the statute of limitations -- you know, the continuing

10  running of the statute of limitations as to any individual or

11  entity that would benefit from the injunction, that seems

12  inconsistent to me.

13         So I mean, I could understand you saying you don't

14  have the authority to agree on those individuals' behalf, since

15  you don't represent them, to a tolling of the statute of

16  limitations.  But any order that was crafted, either based on a

17  decision by me or through settlement with Mr. DeFilippo, could

18  provide that the stay applies to individuals or entities, to

19  the extent that they agree or consent to a tolling of any

20  applicable statute of limitations.  I mean, it seems -- I mean,

21  do you have any authority that says I ought to enjoin Mr.

22  DeFilippo's clients from attempting to proceed against anyone

23  but allow the statute of limitations to run in the meantime?

24         MR. HAIMS:  Your Honor, just to be -- I just want to

25  be clear.

1    THE COURT:  Come up to the microphone so we have a

2  clear record.

3    MR. HAIMS:  I'm sorry, I just want to be clear.  And

4  you're right, I don't have -- I don't represent them, I don't

5  know them, and I don't have authority to speak on their behalf,

6  but the motion, when it was filed and the relief we were

7  seeking was only seeking to stay the Ohio action and the claims

8  in the Ohio action.  The tolling agreement that's being

9  requested is far broader than that, because they're not parties

10  in the Ohio action.  And for that, that's a compl -- I think a

11  completely different --

12    THE COURT:  That's why I asked you --

13    MR. HAIMS:  -- topic.

14    THE COURT:  -- the question:  Are you seeking to have

15  the injunction apply to them?  First you said no --

16    MR. HAIMS:  Well --

17    THE COURT:  -- then you talked to somebody in the back

18  and then you said yes.

19    MR. HAIMS:  Well, in the --

20    THE COURT:  So you can't have it both ways.  If you

21  want the injunction to apply as to them, then you may not be

22  able to agree on their behalf to toll the statute of

23  limitations, but if I issue -- if I issue the injunction, I

24  could very well condition it on their consent to toll.  So are

25  you seeking an injunction on their behalf or not?

1    MR. HAIMS:  We certainly were when we made the motion

2  because the case was still --

3          THE COURT:  Well --

4          MR. HAIMS:  -- pending against them.

5          THE COURT:  -- but now you're here today and that's --

6          MR. HAIMS:  Now we're here today, and I -- I'd have to

7  consult.  I'd have to think about that one.  I just haven't

8  that one through.

9          THE COURT:  Well, Mr. DeFilippo, does that solve your

10  problem if --

11          MR. DEFILIPPO:  It goes a long way, Your Honor.  The

12  other issue is the Ally Securities*, which is the only

13  nondebtor affiliate that is still a defendant, and whether it's

14  appropriate to stay the action against them.  We don't think it

15  is.

16          THE COURT:  Well, look, that's -- then you may as well

17  just go ahead and fight this battle.

18          MR. DEFILIPPO:  Your Honor --

19          THE COURT:  I mean, everybody else who has agreed, and

20  now --

21          MR. DEFILIPPO:  Yes.  I hate to be -- we have the

22  deadline of April 4th, 2013 for completion of fact disc -- of

23  all discovery in that case.  I don't know if Ally Securities*

24  is going to be ultimately the beneficiary of a permanent stay

25  in a plan or otherwise, but if they're not, I can envision

1  difficultly complying with the Ohio court's deadlines if they

2  have to play catch-up in terms of their ability to defend that

3  action, which will proceed in their absence if you do stay it.

4  So I'm not in a position where I can consent to a stay against

5  them.  I understand that Your Honor has the power to do so and

6  the discretion to do so.  We don't think that requiring them to

7  defend themselves in any way threatens the debtors'

8  reorganization.  We don't believe there has been any showing --

9          THE COURT:  Well, that's the issue on the motion.

10          MR. DEFILIPPO:  Right.

11          THE COURT:  And you know, if it goes forward on a

12  contested basis, I'll decide that.

13          MR. DEFILIPPO:  We also ask Your Honor, if you do

14  impose a stay, not to permit it to be open ended till

15  confirmation.

16          THE COURT:  I've already -- I think I've sort of made

17  that point clear --

18          MR. DEFILIPPO:  I --

19          THE COURT:  -- before.  I didn't rule, but I pretty

20  well indicated.  That won't foreclose the debtor from coming

21  forward seeking to extend it or --

22          MR. DEFILIPPO:  Us seeking --

23          THE COURT:  -- the plaintiffs in the action coming

24  forward seeking to vacate it.  That --

25          MR. DEFILIPPO:  And I'd like to just correct one thing

1  Mr. Haims said earlier.  We understand we have to get Your

2  Honor's permission to take discovery of the debtors.  We're

3  going to file a motion to do that, so we will be back here

4  making the arguments that go to whether or not it's truly an

5  imposition on the debtors for them to produce --

6          THE COURT:  Well, we better hash that out then today.

7  You're too far apart.  I mean, if -- I mean, the issue of --

8  there is an automatic stay in place with respect to discovery

9  from the debtors.

10          MR. DEFILIPPO:  Yes, Your Honor.

11          THE COURT:  This motion has nothing to do with that.

12          MR. DEFILIPPO:  We agree with that.

13          THE COURT:  Okay.

14          MR. DEFILIPPO:  But we need the debtors --

15          THE COURT:  And if you make the motion to vacate the

16  stay, you're going to carry the burden.

17          MR. DEFILIPPO:  I understand that as well, Your Honor.

18  But we can't avoid the fact that (a), the debtor has all the

19  documents that we need and (b), we have to --

20          THE COURT:  Are you going to pay for them to produce

21  it all?

22          MR. DEFILIPPO:  I can't commit to that without talking

23  to our client, but --

24          THE COURT:  Well, I'm not going to decide -- that

25  issue is not before me today, but you or anyone else who is

**RESIDENTIAL CAPITAL, LLC, ET AL.**                          100

1   seeking to lift the stay to launch discovery against the

2   debtors is going to carry a very heavy burden.

3          MR. DEFILIPPO:  Understood, Your Honor.

4          THE COURT:  Okay.  Ms. Matthews, do you want to try

5   and see if you can track your client down again?

6          MS. MATTHEWS:  Sure.

7          THE COURT:  I just -- because it just doesn't --

8   before we -- if we're going to go forward, that's fine, we'll

9   go forward.  We're going to go forward anyway, but I want to

10  know -- I think you ought to know whether you need to actively

11  participate.

12         MS. MATTHEWS:  Yes.  Could I just have a five-minute

13  break?

14         THE COURT:  Let's -- we'll break till a quarter after

15  2, because it doesn't sound like -- we're not going to have any

16  cross-examination of any witnesses, so we'll just have

17  argument.  If you want to cross-examine, obviously you can, if

18  we're going to go forward with it.  So let's break until a

19  quarter after 2.  Okay?  Thank you.

20      (Recess from 13:54 p.m. until 14:16 p.m.)

21         THE COURT:  Please be seated.

22         MR. HAIMS:  Your Honor, I can report some additional

23  progress.  We've agreed with the FDIC that the motion to

24  dismiss will go forward, the motion to dismiss in the

25  underlying case, the Ally Securities*, if any discovery, will

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    101

1   go forward -- could go forward.  The motion to dismiss in this

2   adversary proceeding will be put off till October 31.  And --

3              THE COURT:  By that --

4              MR. HAIMS:  Well --

5              THE COURT:  -- a date after October 31 --

6              MR. HAIMS:  Yeah.

7              THE COURT:  -- that it gets set.

8              MR. HAIMS:  And while the FD -- counsel doesn't have

9   authority to withdraw the motion to withdraw, we have agreed

10  that if Judge Swain were to grant the motion to withdraw, they

11  would agree to the same terms of the stay --

12             THE COURT:  Okay.

13             MR. HAIMS:  -- till October 31.  So with that, I think

14  we have agreement with the FDIC.

15             THE COURT:  Ms. Matthews?

16             MS. MATTHEWS:  Yes, that's right.

17             THE COURT:  Okay, thank you very much.

18             MR. HAIMS:  And there's one further clarification with

19  respect to Western & Southern and the discussion on the tolling

20  agreement.  Again, I don't represent these --

21             THE COURT:  I know.

22             MR. HAIMS:  -- these individuals, but from the

23  debtors' point of view, we won't object to the tolling

24  agreement on the same terms of a tolling agreement that we have

25  in the stipulation with all the other eighteen defendants,

RESIDENTIAL CAPITAL, LLC, ET AL.                                          102

1  which tolls any claims that could be asserted by them in the

2  MBS action during the stay period.  That's all we ask for the

3  relief, and that's -- I think for that we wouldn't object.

4          THE COURT:  Okay.

5          MR. O'NEILL:  Your Honor, Brad O'Neill, Kramer Levin

6  on behalf of the committee.  Just a few brief comments.

7          The committee is generally supportive of the debtors'

8  application, subject to certain limitations.  We're mindful of

9  the fact that now all but one of the defendants in the

10 adversary have consented to the relief, including two members

11 of the committee or --

12         THE COURT:  I didn't understand that, but you'll

13 explain it.

14         MR. O'NEILL:  It is a fact, but our supportiveness,

15 however, is conditioned on two things which I think are

16 embodied in the stipulations that you've seen and I think

17 reflected in your comments this morning.  And that is that the

18 injunction should be finite and specifically limited through

19 October 31 and subject to a complete reservation of rights so

20 that all parties, when October 31 arrives, if there is a

21 dispute about the propriety of continuing the injunction, all

22 parties rights are reserved and all parties, including the

23 committee, can make whatever arguments are appropriate.

24         THE COURT:  Thank you.

25         MR. O'NEILL:  But on that basis -- and also, by the

RESIDENTIAL CAPITAL, LLC, ET AL.                                    103

1  way, the additional limitations Your Honor discussed this

2  morning seem appropriate.

3          THE COURT:  The additional limitations being --

4          MR. O'NEILL:  On the scope of the injunction to allow

5  motions to dismiss to go forward.  But subject to those

6  limitations, we're supportive of the debtors' application.

7          THE COURT:  Thank you very much.

8          Anybody else want to be heard before Mr. DeFilippo?

9          Okay, we don't have any movement with respect to you

10  and your clients?

11          MR. DEFILIPPO:  I have no authority to consent to the

12  injunction, Your Honor.

13          THE COURT:  Okay.  Mr. Haims, you want to argue?

14          MR. HAIMS:  Well, I --

15          THE COURT:  Well, let me say, do you rest, Mr.

16  DeFilippo?

17          MR. DEFILIPPO:  I rest, Your Honor.

18          THE COURT:  Okay.  So both sides have rested.

19          Go ahead, Mr. Haims, you want to argue?

20          MR. HAIMS:  Your Honor, I'm not going to repeat what I

21  said this morning.  I'll keep my remarks very brief.

22          We're talking about we have one case.  That case

23  involves, as I understand it, 23,000 loans.  They're second

24  lien loans, so in addition to --

25          THE COURT:  All second liens?

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    104

1       MR. HAIMS:  They're all second liens, 23,000, which

2  entail not only 23,000 second loan files, but in many cases

3  will involve first lien files as well.  The scope is large.

4  Just because it's one deal and because it's one case doesn't

5  lessen the burden at all.  We've said and we've agreed with

6  twenty-six now or twenty-five -- four of the twenty-five that

7  certain things can go forward.  The one thing that we have not

8  agreed and will not agree to go forward is discovery against

9  the debtors, and I think that's where we draw the line.

10      THE COURT:  Just so that I am clear --

11      MR. HAIMS:  Um-hum.

12      THE COURT:  -- give me the name of the case.  I just

13  want to make sure I --

14      MR. HAIMS:  Western & Southern.  It's -- I have the

15  full name here.  It's Western & Southern Life Insurance Co. v.

16  Residential Funding, Co.  It's in the Ohio -- it's in Ohio

17  state court.

18      THE COURT:  Hamilton County?

19      MR. HAIMS:  Hamilton County.

20      THE COURT:  Court of common pleas in Hamilton.

21      MR. HAIMS:  Right, and the individual defendants were

22  dismissed, and the only nondebtor affiliate in that case is

23  Ally Securities.  So we've gotten very broad discovery

24  requests.  The discovery requests -- or Ally Securities* has

25  gotten very broad discovery requests.  They request loan files.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    105

1   As I just said, the loan files are large, notwithstanding it's

2   one deal and one case.  We think those are -- we don't think

3   those are in Ally -- we think those are not subject to

4   production by Ally Securities* but we think an injunction here

5   is necessary so that we're not litigating this issue again as

6   to the scope of Ally Securities' production and whether those

7   documents have to be produced that are in the debtors'

8   possession, custody and control by Ally Securities*.  Now,

9   other than that, there's nothing --

10          THE COURT:  Tell me, this was listed as number 27 on

11   Exhibit B to the complaint.  It's the list that I'm --

12          MR. HAIMS:  It was alphabetically --

13          THE COURT:  -- that I'm looking at in front of me and

14   it was for me to keep track.  Who are the debtor defendants?  I

15   see the lead defendant was Residential Funding, which is a

16   debtor.

17          MR. HAIMS:  There was --

18          THE COURT:  Who are the -- what are you look -- do I

19   have something that -- a chart that shows --

20          MR. HAIMS:  You just have the complaint.  And we have

21   in the Lipps declaration, which is docket number 6, on page 13,

22   paragraph 34.  And the debtor entities that are named are --

23          THE COURT:  Hang on a second.

24          MR. HAIMS:  Your Honor, would it help if I just give

25   you a copy of it?

RESIDENTIAL CAPITAL, LLC, ET AL.                    106

1        THE COURT:  It would be.

2        MR. HAIMS:  Yes.

3        THE COURT:  It would.

4        MR. HAIMS:  Okay.

5        THE COURT:  Thank you.  Thank you.

6        MR. HAIMS:  And because there are abbreviations, the

7   debtors' names are:  Residential Funding, Co., LLC; GMAC

8   Mortgage, LLC; Residential Accredit Loans, Inc.; Residential

9   Asset Mortgage Products, Inc.; and Residential Funding Mortgage

10  Securities I, Inc.

11       THE COURT:  Okay.  And Ally Securities* is the only

12  remaining nondebtor affiliate?

13       MR. HAIMS:  Correct.

14       THE COURT:  And are there nonaffiliate defendants in

15  the case?  Do you know, Mr. DeFilippo, can you help me on that?

16       MR. DEFILIPPO:  Pardon me, Your Honor, I didn't hear

17  your question.

18       THE COURT:  Are there --

19       MR. HAIMS:  There are.

20       THE COURT:  -- defendants who are --

21       MR. DEFILIPPO:  Nonaffiliates?

22       THE COURT:  -- nondebtors or affiliates?

23       MR. DEFILIPPO:  There are six or seven underwriters

24  that are not debtors or affiliates of the debtors.

25       THE COURT:  Okay.  Let me just finish reading this.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    107

1              MR. HAIMS:  Yes, of course, Your Honor.

2         (Pause)

3              THE COURT:  Are any of the individual former directors

4    and officers still defendants in the case?

5              MR. HAIMS:  No, Your Honor --

6              THE COURT:  Everybody -- they were all dismissed on --

7              MR. HAIMS:  They were all dismissed on the motion

8    to --

9              THE COURT:  -- jurisdiction --

10             MR. HAIMS:  Correct.

11             THE COURT:  -- personal jurisdiction grounds?

12             MR. HAIMS:  Correct.

13             THE COURT:  Are there any unaffiliated individuals who

14   remain in the case?  Do you understand what I mean, Mr.

15   DeFilippo?

16             MR. DEFILIPPO:  Yeah, there are defendants.

17             MR. HAIMS:  Individuals, Your Honor?

18             THE COURT:  Yeah, individuals.

19             MR. DEFILIPPO:  Oh, individuals?

20             THE COURT:  They're all entities that remain as

21   defendants in that case.

22             MR. DEFILIPPO:  Correct.

23         (Pause)

24             THE COURT:  Go ahead, Mr. --

25             MR. HAIMS:  So the only thing I would add is that we

1   think the injunction should be granted.  If it's not granted

2   we're going to be back here, we're going to be fighting over

3   the production of documents over the -- in the debtors'

4   possession, custody and control, and we just think --

5                THE COURT:  Well, you may be back over that anyway.

6                MR. HAIMS:  We may be anyway, but --

7                THE COURT:  Because the only -- as I understand it

8   now, the only issue is whether I grant the preliminary

9   injunction, probably the October 31 date as to Ally Financial.

10               MR. HAIMS:  Ally Securities*.

11               THE COURT:  Ally Securities*, I'm sorry, Ally

12  Securities.  Ally Financial is out of the case too?

13               MR. HAIMS:  They're not in that case.  They were never

14  in that case.

15               THE COURT:  They're not --

16               MR. HAIMS:  That's just an Ally Securities* case.

17               THE COURT:  Okay, Ally Securities.  Whether I grant

18  the injunction as to Ally Securities, other than for the

19  motions to dismiss, which are pending.

20               MR. DEFILIPPO:  Already been heard and decided.

21               MR. HAIMS:  Already been decided.

22               THE COURT:  Already been decided.

23               MR. HAIMS:  That's in discovery.  That case is in

24  discovery.

25               THE COURT:  That case is in discovery.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    109

1          MR. HAIMS:  And that's the one with the discovery

2   cutoff in April.  So all we're saying is --

3          THE COURT:  Let me ask this.

4          MR. HAIMS:  -- a temporary hold till April.

5          THE COURT:  Let me ask this.  Has Ally Securities*

6   produced documents that are in its possession?

7          MR. HAIMS:  No, not yet.

8          THE COURT:  When -- you've receive document requests

9   for Ally Securities.

10          MR. HAIMS:  Requests, correct.

11          THE COURT:  Have you responded to the written

12   requests?

13          MR. HAIMS:   I believe we have, Your Honor, yes, we

14   did, just recently.

15          THE COURT:  And when were the documents -- absent an

16   injunction, when are Ally Securities* documents to be produced?

17          UNIDENTIFIED SPEAKER:  It's a rolling basis.

18          MR. HAIMS:  Yeah, it's a rolling basis.  There's no

19   schedule other than the discovery cutoff at the end --

20          THE COURT:  Okay.

21          MR. HAIMS:  -- answers and written responses were put

22   in, I believe it was last week.

23          THE COURT:  Have any -- you said it was a rolling

24   production.  Have any of Ally Securities* documents been

25   produced so far?

RESIDENTIAL CAPITAL, LLC, ET AL.                    110

1          MR. HAIMS:  In this case?

2          THE COURT:  In this -- in the Western & Southern case.

3          MR. HAIMS:  No, the written response was just put in

4   last week.

5          THE COURT:  Okay.

6          MR. HAIMS:  One of the issues -- as I understand it,

7   the parties are still negotiating a confidentiality agreement

8   which has been holding up the production.

9          THE COURT:  Are you able to tell me, by category or

10  type, what documents Ally Securities* has in its possession

11  that are responsive to the outstanding request?

12         MR. HAIMS:  I can't, Your Honor, because I'm not

13  counsel --

14         THE COURT:  Can any of your colleagues who are here?

15         MR. HAIMS:  Yes, yes, yes.

16         THE COURT:  Is counsel for Ally Securities* here?

17         MR. HAIMS:  Hang on.  Yes.

18         THE COURT:  Come on up to the microphone.

19         MR. HAIMS:  This is Mr. Lipps.

20         THE COURT:  The man with the declaration.

21         MR. LIPPS:  The man with two declarations.

22         THE COURT:  Two declarations, okay.

23         MR. LIPPS:  Jeff Lipps with Carpenter Lipps & Leland.

24  We are of-counsel right now for Ally Securities* but in the

25  process of transitioning out of that role.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    111

1        At this point in time you wanted to know what type of

2   documents --

3        THE COURT:  Yes.

4        MR. LIPPS:  -- Ally Securities* would have.  What we

5   understand they have is they typically would have a deal file

6   that would --

7        THE COURT:  They're going to have a due diligence

8   file.

9        MR. LIPPS:  Well, the deal file would have the due

10  diligence and the documentation in electronic form.  There is a

11  server that we call the Bethesda server, and there's a file

12  tree and we have to work through and identify which of those

13  files would actually relate to the particular deal at issue.

14  There's only one for Ally Securities*; it's in the Western &

15  Southern case.

16        There are also some electronic communications, either

17  instant messages or other communications like that that are

18  captured at the broker-dealer level that would probably have

19  communications that would relate to this securitization or any

20  work that they had done in it.

21        And then there is Outlook type e-mails that may or may

22  not require restoration, which are on the debtors' server, so

23  to speak.  They're on the debtors' backup tape, so there would

24  be --

25        THE COURT:  But not on your -- you don't have backup

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    112

1  tapes?

2          MR. LIPPS:  Not for that -- not for the Outlook e-mail

3  system.  It was managed through the ResCap organization, so for

4  those Ally Securities* employees that use the Outlook, those

5  backup tapes would be in the possession of the debtors.

6          THE COURT:  Okay.  Have you endeavored to determine

7  whether any of the individuals who worked on this matter from

8  Ally Securities* have files?  I mean, has a search been made of

9  their files as well?

10          MR. LIPPS:  We have collected files from the

11  individuals that were involved in these securitizations while

12  we were representing them as Ally Securities* and then pre-

13  petition when we were involved in that.  The people that were

14  in the securitization effort at Ally Securities* have now gone,

15  so there are no current employees there that had anything to do

16  with any of the securitizations.  So it would be a historic

17  capture that we have done.

18          THE COURT:  I mean, what you say is not evidence, but

19  can you at least -- I mean, what you're saying now as opposed

20  to what was in your declarations --

21          MR. LIPPS:  I hope I'm not inconsistent.

22          THE COURT:  No, well -- I mean, I would like you to

23  address, if you could, the effort or burden that would be

24  required to produce the documents, electronic or paper, that

25  are in the possession of Ally Securities*, not what's on the

RESIDENTIAL CAPITAL, LLC, ET AL.                                    113

1   debtors' servers but what's in the possession or custody of

2   Ally Securities*.

3           MR. LIPPS:  Well, if we're going to exclude the

4   Outlook, because I can speak to that.  That is a burden because

5   that's the burden that was similar to what we were addressing

6   with respect to e-mail searches in my declaration.  But as to

7   the Bethesda server, unfortunately there are no current

8   employees, so what we have, essentially, is a file tree, and

9   it's, like, thousands of entries on there.

10          Am I right on that?

11          Yeah, there's thousands of entries, and part of it is

12  we don't have any legacy knowledge, so there is a substantial

13  effort that has to go, and a lot of it's, like, hit and miss.

14  And so you'll be having IT people sort of hitting and missing.

15  And again, the IT people are people at ResCap.  They're not --

16  the broker-dealer at Ally Securities* does not have an

17  independent team of employees that are doing this.  So it would

18  be through the debtors, again, and you have to hit and miss and

19  try and find the right file trees with the right information.

20  So it is -- it has been slow undertaking and we've been in

21  process with it in a couple of these cases because until this

22  motion was heard we had an obligation to try and participate,

23  and it's been a slow haul.

24          THE COURT:  Well, who controls the Bethesda server?

25  Is that what you're referring to?

RESIDENTIAL CAPITAL, LLC, ET AL.                    114

1     MR. LIPPS:  It's sitting there on -- well, who has

2  possession of it?

3          UNIDENTIFIED SPEAKER:  It belongs to Ally Securities.

4          MR. LIPPS:  That's what I thought.  The Bethesda

5  server, when the company was closed down, at least for the

6  securitization side of it, that is owned by Ally Securities,

7  but the actual Bethesda server documentation is being handled

8  by the eDiscovery or IT people within ResCap.

9          THE COURT:  So Mr. Haims, the agreements that were

10  further reached in court would provide for Ally Securities* to

11  produce documents that are in its possession.  How are those

12  going to be gathered?  Have those been gathered?  How are they

13  going to be gathered?  Is it any different than --

14          MR. HAIMS:  It's no different than he's just

15  described.

16          THE COURT:  Okay.  Mr. DeFilippo?

17          MR. DEFILIPPO:  Yes, Your Honor.

18          THE COURT:  I don't know whether you were in court at

19  the earlier status conference or on the phone for -- I just

20  don't recall; I apologize for that.

21          MR. DEFILIPPO:  Earlier today, Your Honor?

22          THE COURT:  No, no, earlier in the -- because there

23  was -- very early in the case with the adversary we had a --

24          MR. DEFILIPPO:  I was not.

25          THE COURT:  -- status conference, and I had indicated

1  at that point, asking counsel for permission to speak with the

2  judges in the actions.  I have not spoken with the judge in

3  Ohio.

4         I mean, I'll report briefly.  I had previously spoken

5  to Judge Cote, Judge Swain, Judge Daniels.  Judge Baer's been

6  on vacation, so I haven't spoken to him.  I haven't spoken to

7  any of the state court judges.  Most of those matters were

8  resolved by agreement, in any event, so I have not -- did not

9  speak to the judge who has the matter.

10        In the conversations I had with the judges with whom I

11  spoke was basically just to tell them that this adversary had

12  been filed, there was a motion for a preliminary injunction.

13  The day I spoke to Judge Cote was the morning after the motion

14  to withdraw the reference was filed.  I think that was the

15  first news she had about it when I told her about it.  And

16  Judge Swain, it was a similar kind of conversation; the motion

17  to withdraw the reference hadn't been filed yet when I talked

18  to him. But I mean, your state court action -- your client's

19  state court action focuses solely on -- for shorthand I'll call

20  it ResCap RBS offerings.

21        MR. DEFILIPPO:  No, Your Honor.

22        THE COURT:  It doesn't?

23        MR. DEFILIPPO:  Less than half of our offerings are

24  ResCap --

25        THE COURT:  Okay.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    116

1    MR. DEFILIPPO:  -- RMBS.  There are other originators

2  that are part of the lawsuit -- loans originated by others than

3  ResCap and underwritten by the nonaffiliated underwriters.

4    THE COURT:  Okay.  How much of the case is made up of

5  the ResCap.

6    MR. DEFILIPPO:  May I consult with my --

7    THE COURT:  Yes.

8    MR. DEFILIPPO:  -- colleague?

9    THE COURT:  Please go ahead.

10    MR. DEFILIPPO:  Seventy million face of ResCap loans,

11  and ninety-five million of non-ResCap.

12    THE COURT:  Okay.  What's the schedule in your case?

13    MR. DEFILIPPO:  The schedule is, all discovery must be

14  completed by April 13th -- I'm sorry, April 4th, 2013.  And

15  there's a trial date set for January of 2014.  So we have a

16  little less than nine months to complete discovery.

17    THE COURT:  Fact and expert discovery?  Everything?

18    MR. DEFILIPPO:  All discovery.  And that's set forth

19  in Exhibit 3.

20    THE COURT:  And if you were enjoined from proceeding

21  with your -- enjoined until October 31 and subject to further

22  order from proceeding with your case against Ally Securities,

23  how to you envision proceeding with the balance of your case?

24    MR. DEFILIPPO:  Well, we would proceed against the

25  unaffiliated underwriters with respect to the nondebtor

1  documents.

2          THE COURT:  I mean, there's nothing that inextricably

3  links the ResCap piece of the case with the non-ResCap piece of

4  the case.

5          MR. DEFILIPPO:  Well, Your Honor, we'd hate to have to

6  try two cases, of course.

7          THE COURT:  No doubt.

8          MR. DEFILIPPO:  And I'm sure all the defendants would

9  hate to have to try two cases.  That would be extremely

10  wasteful.

11          THE COURT:  When you say "all the defendants" --

12          MR. DEFILIPPO:  The nondebtor defendants.

13          THE COURT:  They're not going to -- the affiliated

14  nondebtor defendants are only -- you know, if I enjoin -- if I

15  stay it, they're only going to try it once.  It may not be at

16  the same trial that you try --

17          MR. DEFILIPPO:  Right.

18          THE COURT:  -- against the -- on the non-ResCap --

19          MR. DEFILIPPO:  Yes.

20          THE COURT:  -- offerings.

21          MR. DEFILIPPO:  Correct, Your Honor.  What I was

22  trying to say was that it's our assumption that the parties and

23  the Court would probably prefer -- the Court in Ohio, that

24  is --

25          THE COURT:  To do it once?

1      MR. DEFILIPPO:  -- would probably prefer to do it

2  once.

3      THE COURT:  As I would only prefer to do it once.  No

4  doubt.

5      MR. DEFILIPPO:  Yes.

6      THE COURT:  What, if any good does it do you if --

7  because there are no pending motions.  They've been decided

8  already.

9      MR. DEFILIPPO:  Yes, Your Honor.

10     THE COURT:  What good would it do you if I permitted

11 you to obtain document production from Ally Securities?  I

12 mean, without all of the loan files from the debtors, you're

13 not going to be in a position, really, to move forward against

14 them, are you?

15     MR. DEFILIPPO:  That's most likely the case, Your

16 Honor.

17     THE COURT:  I mean, what's -- do you want to address

18 the issue of the burden or expense to the debtors if the action

19 proceeds against Ally Securities?

20     MR. DEFILIPPO:  Yes, Your Honor.  The debtors have

21 submitted a substantial amount of evidence to the effect that

22 Ally Securities has very limited documents.  So there should be

23 no burden to the debtors if Ally Securities is required to

24 defend itself, because:  a) it or its parent will pay its own

25 defense costs; and it should not be burdensome or expensive for

1  it to produce its very limited documents.  Nor should the

2  debtors' employees -- although we've learned today for the

3  first time, apparently that Ally Securities has no employees of

4  its own -- so I suppose either an employee of Ally Financial,

5  or another nondebtor, or perhaps an employee of the debtor, may

6  have to coordinate the production of Ally Securities documents.

7  But since the debtors are -- and Ally Securities is doing that

8  for other plaintiffs, it shouldn't be an additional burden of

9  consequence in our case.

10        The costs that Ally Securities may incur to defend

11  itself do not come out of the estate; do not threaten the

12  reorganization; nor do we think they in any way impair the

13  amounts available under the insurance coverage.  Because it's

14  our understanding that the debtors have not yet -- nor has Ally

15  Financial -- consumed the entire twenty-five million dollar

16  self-insured retention under those policies.  So until Ally

17  Financial pays twenty-five million out of its pocket, the

18  insurance carriers don't have to pay anything.

19        THE COURT:  Mr. Haims argued that Ally Financial and

20  Ally Securities have a contractual indemnification right from

21  the debtors -- from ResCap.  So why -- and take the twenty-five

22  million dollar self-insured retention, which has not -- no one

23  has argued that that's been hit yet.  So why isn't the cost of

24  defending Ally Securities in your action a cost to the debtors,

25  in light of contractual indemnification?

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    120

1          MR. DEFILIPPO:  These are securities fraud cases.  And

2    indemnity is disfavored in securities fraud cases, Your Honor.

3          THE COURT:  If Ally Securities prevailed in your

4    action, wouldn't it be entitled to contractual indemnification?

5    The point about indemnification being disfavored, that's

6    certainly true.  It may be impermissible depending on what the

7    theory of liability for Ally Securities is.

8          There's been some briefing -- I don't remember whether

9    it was in your brief or not -- but there's been some briefing

10   about the issue if it's a negligence-based claim, it's not

11   clear that indemnification would be prohibited.  If it's a

12   scienter-based claim and liability is found, indemnification

13   may be prohibited.  But if Ally Securities prevailed, wouldn't

14   it be entitled to contractual indemnification, if the contract

15   provided for it?

16         MR. DEFILIPPO:  I haven't studied the contract that

17   closely, Your Honor.  But let's assume it does for purposes of

18   this discussion.  I think there are something like fifteen

19   billion dollars' worth of claims in these cases, plus

20   potentially another eight billion for the put-back claims, if

21   the settlement's approved.  So the effect on this estate of

22   another few million dollars in indemnification claims by Ally

23   Securities is not going to be a game changer here.

24         THE COURT:  What is your theory of liability against

25   Ally Securities?

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                121

1    MR. DEFILIPPO:  There are a number of provisions of

2  the Ohio Securities Act that --

3    THE COURT:  Control person liability --

4    MR. DEFILIPPO:  No, no.

5    THE COURT:  -- under the Ohio Securities --

6    MR. DEFILIPPO:  Direct liability of an underwriter,

7  Your Honor.  I can cite you to those provisions, if you can

8  give me a second.  But they're all in our complaint.  But these

9  are --

10    THE COURT:  Do you include 33 Act claims --

11    MR. DEFILIPPO:  No, Your Honor.

12    THE COURT:  Just the Ohio State --

13    MR. DEFILIPPO:  Just Ohio Securities Act.  And not

14  control person.  Although we concede that the debtors' actions,

15  to the extent they were the creators of the prospectuses, have

16  an impact in our case.  It is in no way a derivative claim.

17    THE COURT:  Well, when you say "have an impact" in

18  your case, if you were to prevail, first of all, you would have

19  to show misrepresentations or omissions in the offering

20  documents, correct?

21    MR. DEFILIPPO:  Yes, Your Honor.

22    THE COURT:  And whether res judicata or collateral

23  estoppel applied against the debtors, I never understood that

24  strict res judicata or collateral estoppel was the test for

25  enjoining.  I mean, wouldn't it have a significant impact on

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    122

1  claims against the debtors if you established liability against

2  Ally Securities with a finding of misrepresentations or

3  omissions in the offering documents?

4          MR. DEFILIPPO:  Your Honor, no such issue is going to

5  be presented to either the Court or the jury in that action

6  before the end of the stay period that we're talking about

7  here.  The trial date is not until January of 2014.  And the

8  debtors have represented that they're on a fast track to

9  confirmation.  So in our view, the issue of the debtors'

10  liability to us and those like us will have to be decided by

11  Your Honor as part of either an estimation process or a claims

12  objection process, long before we go to trial in the Ohio case.

13          THE COURT:  I think your colleague's trying to hand

14  you something.

15          MR. DEFILIPPO:  Oh.  Thank you.  I --

16          THE COURT:  Go ahead, if you --

17          MR. DEFILIPPO:  No, I'm prepared to answer your next

18  question, Your Honor.

19          THE COURT:  No.  Is there any other point you want to

20  raise, at this point?

21          MR. DEFILIPPO:  No, thank you, Your Honor.

22          THE COURT:  Okay.  Thank you very much.

23          MR. DEFILIPPO:  Thank you.

24          THE COURT:  Mr. Haims, do you want to respond?

25          MR. HAIMS:  I have nothing further, Your Honor.

1  THE COURT:  I'm going to take a ten-minute recess and

2  come back and rule.  I'm going to take a ten-minute recess and

3  then come back and rule, okay?

4      (Recess from 2:48 p.m. until 3:46 p.m.)

5      THE COURT:  All right.  Please be seated.

6      All right.  The Court is going to rule.  Pending

7  before the Court is the debtors' motion to extend the automatic

8  stay, or in the alternative, for injunctive relief enjoining

9  prosecution of certain pending litigation against debtors,

10 directors, and officers, and nondebtor corporate affiliates.

11 I'll refer to it as "the motion".  It's at ECF docket number 4.

12 It's filed in the adversary proceeding styled Residential

13 Capital, LLC v. Allstate Insurance Co., et al.  It's adversary

14 proceeding number 12-01671.

15      Through the motion, the debtor seeks and extension of

16 the automatic stay, to stay or enjoin the continued prosecution

17 of what was originally twenty-seven lawsuits against the

18 debtors, nondebtor affiliates, or directors and officers, all

19 of which are based on the debtors' issuance or sale of

20 mortgage-backed securities.  Two of the twenty-seven cases were

21 dismissed before this injunction hearing was held.  Of the

22 remaining twenty-five cases, the injunction motion was resolved

23 in all but one of the cases, with terms set forth or to be set

24 forth in stipulations presented to the Court.

25      In those twenty-five cases, the cases insofar as the

RESIDENTIAL CAPITAL, LLC, ET AL.                    124

1  debtor affiliates are concerned, are stayed until October 31,

2  2012.   The stipulations provide or will provide that certain

3  motion practice in the underlying cases will be permitted to

4  proceed, as well as certain discovery, directed solely to the

5  nondebtor affiliates.   To be clear on this point, the nondebtor

6  affiliates will only be required to produce documents that are

7  in their custody or possession.   Documents in the possession of

8  the debtors will not have to be produced.

9         The only underlying case in which a resolution among

10  the parties has not been reached is the Western & Southern

11  case.   And that is Western & Southern Life Insurance Co. v.

12  Residential Funding Co., LLC, et al., number A-110-5042 in the

13  Ohio Court of Common Pleas, in Hamilton County.   Ally

14  Securities is the only remaining nondebtor affiliate that

15  remains a defendant in the underlying case.   There are other

16  defendants remaining in the action, concerning other RMBS

17  transactions not involving ResCap.

18         For the reasons I will explain, the debtors' motion

19  will be granted on terms substantially similar to the terms of

20  the extensions of the stays to the other RMBS actions.   And to

21  be clear, the stay does not apply with respect to other RMBS

22  transactions unrelated to the ResCap transactions.

23         During the hearing today, the Court admitted in

24  evidence testimony in the form of declarations offered by the

25  debtors.   The declarants were present in court, but no parties

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    125

1  requested cross-examination.  Western & Southern offered three

2  documents in evidence that were admitted without objection.

3       Having heard and considered the evidence and arguments

4  of counsel, both in court and in their briefs, the Court now

5  rules as follows:

6       The debtors argue -- and the ruling is to grant the

7  stay on substantially the terms applied in the other matters.

8  The debtors argue that the Court should extend the automatic

9  stay to enjoin the continuation of the Western & Southern

10 action against Ally Securities with the exceptions noted for

11 the following reasons.

12      One, the debtors will be exposed to a significant risk

13 of collateral estoppel, stare decisis, and evidentiary

14 prejudice if the Western & Southern action is allowed to

15 continue.  Two, the debtors will face very substantial and

16 burdensome discovery if the action continues.  Three, the

17 debtors will face indemnification claims if the Western &

18 Southern action against Ally Securities is allowed to continue.

19 And four, property of the debtors' estates, namely shared

20 insurance policies, will be depleted if the Western & Southern

21 action against Ally Securities is allowed to continue.  See In

22 re Quigley Co. Inc., 676 F.3d 45, 58 (2nd Cir. 2012).

23      Let me discuss the standard for issuance of a

24 preliminary injunction.  Section 362(a) of the Bankruptcy Code

25 "provides for a broad stay of legal proceedings against the

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    126

1   debtor that were or could have been commenced prior to the

2   commencement of the bankruptcy case ...", 3 Collier on

3   Bankruptcy, Paragraph 362.03 [3].

4        The automatic stay typically does not protect

5   nondebtors.  See 3 Collier on Bankruptcy, Section 362.03(3)(d),

6   ("The stay of litigation does not protect nondebtor parties who

7   may be subjected to litigation for transactions or events

8   involving the debtor.")

9        But the Second Circuit and courts and in the Southern

10  District have found certain limited circumstances where a

11  bankruptcy court may extend a Section 362 stay to nondebtors.

12  See, e.g., Queenie Ltd. v. Nygard International, 321 F.3d 282,

13  287 (2nd Cir. 2003), ("The automatic stay can apply to

14  nondebtors, but normally does so only when a claim against the

15  nondebtor will have an immediate adverse economic consequence

16  for the debtor's estate.")

17       See also 3 Collier on Bankruptcy Section 362.03(3)(d),

18  ("Although an action against third parties such as guarantors

19  or codefendants is not stayed under Section 362(a), the court

20  retains the power to enjoin the action if continuation of the

21  action would interfere substantially with the debtor's

22  reorganization.")

23       While the Second Circuit has not specified the precise

24  situations when a bankruptcy court may extend the automatic

25  stay to a third-party non debtor, courts in this district have

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    127

1   determined that extending the automatic stay is appropriate in

2   instances where:  1) the third party has a right of absolute

3   indemnity from the debtor; 2) where a creditor's action against

4   the third party would halt the nondebtor from contributing

5   funds to the reorganization; and 3) where the action sought to

6   be enjoined would "consume time and energy of the nondebtor

7   that would otherwise be devoted to the reorganization effort."

8   That's likewise a cite to Collier.

9           Courts find the power to extend the automatic stay to

10  nondebtors in Section 105 of the Bankruptcy Code.  See In re

11  United Healthcare Org., 210 B.R. 228, 232 (S.D.N.Y. 1997) ("The

12  source of authority to issue such an injunction is 11 U.S.C.

13  Section 105, which provides bankruptcy courts with general

14  equity powers to 'issue any order, process, or judgment that is

15  necessary or appropriate to carry out the provisions of this

16  title'.")

17          Extending the automatic stay pursuant to Section 105

18  is essentially identical to granting an injunction, halting the

19  actions of third-party nondebtors.  Some courts, including this

20  Court, in 2008, have found that Section 105(a) allows them to

21  issue injunctions without complying "with the traditional

22  requirements of Federal Rule of Civil Procedure 65", In re the

23  1031 Tax Group, LLC, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008).

24  See also In re Adelphia Communications Corp., 298 B.R. 49, 54,

25  (S.D.N.Y. 2003) ("The proof required to extend the stay is not

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    128

1  as rigorous as that normally required for injunctions.")

2       Indeed, this Court has previously reasoned that all "a

3  bankruptcy court must find" to enjoin a claim against a

4  nondebtor under Section 105(a) was that the claim would

5  "threaten to thwart or frustrate the debtor's reorganization

6  efforts...and that the injunction is important for

7  reorganization.", In re the 1031 Tax Group LLC, 397 B.R. 684

8  (quoting Granite Partners, 194 B.R. 337).

9       In addition, "The courts have recognized that a stay

10  should be provided to codefendants when the claims against them

11  and the claims against the debtor are 'inextricably interwoven,

12  presenting common issues of law and fact which can be resolved

13  in one proceeding'," In re Ionosphere Clubs, Inc., 111 B.R.

14  423, 434 (Bankr. S.D.N.Y. 1990) (citing Fed Life Insurance Co.

15  v. First Financial Group, Inc. 3 B.R. 375, 376 (S.D.Tx. 1980).

16       At least two district judges in the Southern District

17  disagree with this approach.  Judge Scheindlin examined and

18  rejected granting an injunction without a showing of the

19  traditional requirements needed for an injunction in In re

20  United Healthcare Organization.  Judge Scheindlin observed that

21  Section 105 injunctions may only be issued "as necessary or

22  appropriate to carry out the provisions of this title", and

23  observed that Collier suggested employing an essentially

24  traditional standard when granting injunctive relief to third-

25  party nondebtors under Section 105.  See 210 B.R. 234.

RESIDENTIAL CAPITAL, LLC, ET AL.                    129

1    Subsequent to In re United Health, Judge Castel noted

2    that injunctions under Section 105 may be used to extend the

3    automatic stay to nondebtors "where the action to be enjoined

4    is one that threatens the reorganization process." Hawaii

5    Structural Ironworkers Pension Trust Fund v. Calpine Corp.

6    06-cv-5358(PKC), 2006 WL 3755175*4 (S.D.N.Y. Dec. 20, 2006).

7        Judge Castel, however, agreed with Judge Scheindlin

8    that a more traditional standard of review should be employed

9    when granting injunctive relief to third parties.  Judge Castel

10   stated that if an action would threaten reorganization process,

11   "the threat to the reorganization process must be imminent,

12   substantial, and irreparable" for a preliminary injunction to

13   be issued on behalf of a nondebtor; Id.

14       Judge Castel then noted that there must also be a

15   showing of:  1) a "reasonable likelihood of a successful

16   reorganization"; 2) a balance of the harms; and 3) a balancing

17   of the public interest at stake, before granting injunctive

18   relief under Section 105(a) to third parties.

19       Building upon these two decisions, Judge Scheindlin,

20   in a later opinion announced four factors a court must examine

21   when determining whether to extend the automatic stay to third

22   parties.  1) whether there's a likelihood of successful

23   reorganization; 2) whether there is an imminent, irreparable

24   harm to the estate in the absence of an injunction; 3) whether

25   the balance of harms tips in favor of the moving party; and

RESIDENTIAL CAPITAL, LLC, ET AL.                    130

1   4) whether the public interest weighs in favor of an

2   injunction.  See Nevada Power Co. v. Calpine Corp., In re

3   Calpine Corp. 365 B.R. 401, 409 (S.D.N.Y. 2007).

4         Judge Gerber has recently employed the standard

5   articulated by Judge Scheindlin in the Lyondell bankruptcy.

6   See Lyondell Chemical Co. v. Centerpoint Energy Gas Services,

7   In re Lyondell Chemical Co. 402 B.R. 571, 587-89, Note 37

8   (Bankr. S.D.N.Y. 2009) (Observing that courts in this district

9   have held that "the usual grounds for injunctive relief ...

10  need not be shown for an injunction under Section 105(a)", but

11  employing the more traditional standard announced by Judge

12  Scheindlin.)

13        Collier concurs with this approach, noting that, "A

14  request for relief under Section 105 must meet traditional

15  requirements for an injunction," in noting the tests such as

16  the one articulated by Judge Scheindlin are "nothing more than

17  an evolution of the general requirements for a preliminary

18  injunction adapted for the bankruptcy context." 2 Collier on

19  Bankruptcy, paragraph 105.03(1) and (2).

20        Collier further observes that when extending the

21  automatic stay to third parties, "most courts have applied the

22  traditional test for the issuance of an injunction ...".  3

23  Collier on Bankruptcy, paragraph 362.04.

24        Let me deal with the Western & Southern objection.

25  Western & Southern, et al., are plaintiffs in an action pending

RESIDENTIAL CAPITAL, LLC, ET AL.                    131

1  in Ohio.  On June 29th, 2011, Western & Southern filed the Ohio

2  action alleging that certain debtors, certain nondebtor

3  affiliates, and the unaffiliated underwriters, committed fraud,

4  violated the Ohio Securities Act, and committed other tortious

5  conduct in connection with the sale of 120 million dollars of

6  residential mortgage-backed securities to Western & Southern.

7          Western & Southern joined in the other objections, all

8  of which have been resolved in the motion.  In December 2011,

9  defendants in the Ohio action filed motions to dismiss, arguing

10  that the claims were time barred and that Western & Southern

11  failed to plead actionable misrepresentations or the requisite

12  fraudulent intent.  The officers -- the former officers who

13  were defendants also moved for dismissal based on lack of

14  personal jurisdiction.

15          On the defendants' motion, discovery was stayed in the

16  Ohio action pending a decision on the motions to dismiss.  The

17  stay was granted in part because counsel for the debtors and

18  the nondebtor affiliates in the Ohio action assured the Court

19  that they would provide discovery immediately following a

20  ruling in the motions to dismiss.  This is in the Fitzgerald

21  declaration, Exhibit 1 at page 15, lines 10 through 19.

22          On June 6, 2012, the motions to dismiss the Ohio

23  action as against the unaffiliated underwriters and nondebtor

24  affiliate, Ally Securities, were denied, except with respect to

25  claims barred by the statute of repose, provided for under the

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    132

1  Ohio Securities Act.  The officer defendants were also

2  dismissed without prejudice from the case, for lack of personal

3  jurisdiction.  The Court did not rule on the motion as it

4  pertained to the debtors, because the claims against the

5  debtors were stayed.

6        The fact discovery deadline in the Ohio action is

7  April 4, 2013.  Trial in the Ohio action is set to begin on

8  January 6, 2014.  Western & Southern argues that any stay

9  should be conditioned on the nondebtor affiliates agreeing to

10 toll any applicable statute of limitations through the period

11 in which the stay is in place.  Debtors' counsel has stated

12 that he does not have authority to agree to toll the statute of

13 limitations on behalf of these former officers or directors.

14       In granting the stay, the Court determines, and any

15 order prepared embodying the ruling shall provide, that the

16 stay is effective as to the former officers and directors only

17 if they agree to toll all applicable statutes of limitations

18 from the period from today until the stay expires.

19       All right.  Let me provide my analysis of the claims

20 asserted in the Ohio action and the reasons for the stay.

21 Courts may extend the automatic stay to nondebtor litigants

22 where "there is such identity between the debtor and third-

23 party defendant that the debtor may be said to be the real

24 party defendant, in that a judgment against third-party

25 defendant will, in effect, be a judgment or a finding against

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    133

1  the debtor."  A.H. Robbins Co. v. -- I can't pronounce it --

2  Piccinin, 788 F.2d 994, 999 (4th Cir. 1986).

3        However, when a party holds an independent direct

4  claim against a nondebtor for violating the federal securities

5  laws, "there is no compelling basis by which a court must

6  extend the automatic stay provisions of Section 362 to the

7  nondebtor codefendants."  See In re First Century Financial

8  Corp. 238 B.R. 18 (Bankr. E.D.N.Y. 1999).

9        That principle is limited, however, where establishing

10 liability against the nondebtors hinges on establishing facts

11 that would likewise establish liability against the debtors.

12 And that is, in fact, the case here.  In the Western & Southern

13 action, all the claims essentially require the plaintiffs to

14 establish that the RMBS offering documents contained material

15 misstatements or omissions of fact.  Such a showing, of course,

16 would be required to establish liability on the part of the

17 debtors if the action was to proceed against them.

18        Here, the claims against Ally Securities are based on

19 the same nucleus of facts as the claims against the debtors.

20 Thus, the only way for the plaintiffs to prove liability

21 against Ally Securities is to make a prima facie case that the

22 debtors violated securities laws too.  Any decisions and

23 evidence generated would thus be later used against the

24 debtors, whether in the underlying lawsuits or in claims the

25 Western & Southern plaintiffs make against the debtors' estate

RESIDENTIAL CAPITAL, LLC, ET AL.                                134

1   in these Chapter 11 cases.  See McHale v. Alvarez, In re the

2   1031 Tax Group LLC, 397 B.R. 670, 685 (Bankr. S.D.N.Y. 2008)

3   (Staying lawsuits against debtors' former employees that could

4   lead to respondiat superior liability for debtors during the

5   reorganization.)

6            In re Johns Manville, 26 B.R. 420, 426 (Bankr.

7   S.D.N.Y. 1983) (Staying securities claims against the debtor's

8   directors and officers where claims were "in reality,

9   derivative of identical claims" that were or could be brought

10  against the debtors.)

11           The Western & Southern plaintiffs in the underlying

12  case have argued that the similarity in claims against the

13  debtors and the nondebtors will not result in stare decisis or

14  evidentiary prejudice.  In actuality, the debtors will have to

15  live with any decision in the case that was resolved as to the

16  nondebtor defendants.  See, e.g., Johns Manville, 26 B.R. 429

17  ("Even if the debtor is not so bound by collateral estoppel, it

18  may be disadvantaged in subsequent suits.")

19           Although the debtors will have the opportunity to

20  raise independent defenses to their own liability, the debtors

21  will have to live -- will have little or no chance to unring

22  the bell following a decision that could be used against them.

23  If the Court does not extend the stay in these cases, the

24  debtors will be faced with a choice of sitting on the sidelines

25  and being stuck with rulings on issues they did not litigate,

1  or be forced to litigate, the very thing the automatic stay is

2  supposed to prevent.  See Hawaii Structural, 2006 WL 3755175 *5

3  ("A prudent debtor would devote managerial and financial

4  resources to assisting in the defense of its affiliates,

5  because of the potential impact upon a claim or suit against

6  the debtor.").  In re Calpine Corp. 365 B.R. 401, 412 (S.D.N.Y.

7  2007) (This is especially so in situations where the debtor's

8  liability has not yet been established and where the nondebtor

9  affiliate has the ability to assert all of the debtor's factual

10 and legal defenses to liability.")

11         Indemnification rights.  Additionally, the debtors

12 have established that Ally Securities may be entitled to a

13 contractual indemnification from the debtors.  Where a

14 nondebtor party is entitled to absolute indemnity by the debtor

15 on account of any judgment that might result against them in

16 the case, extensions of the automatic stay may be appropriate.

17 A.H. Robbins 788 F.2d 989.

18         Here, the operating agreements apply to the underlying

19 actions, including the plaintiff -- the Western & Southern

20 lawsuit.  The operating agreements require the debtors to

21 indemnify the nondebtor corporate affiliates for "losses

22 related to" the debtors' "business and operations".  See the

23 Whitlinger declaration, Exhibit B at sections 1 and 3(c).

24         Because a fundamental part of the debtors' business

25 strategy consists of securitizing and selling mortgage loans

1   that they purchase or originate, the debtors thus are obligated

2   to indemnify the nondebtor corporate affiliates for losses

3   stemming from the debtors' issuance or sale of mortgage-backed

4   securities.  While indemnifications for specific judgments at

5   this time is still contingent, the debtors are still obligated

6   to pay defense costs for the indemnitees.  Whitlinger

7   declaration, Exhibit A, section 18(d)(i).

8           While such obligations will become unsecured claims in

9   bankruptcy pursuant to Section 502, they nonetheless increase

10  the debtors' total liabilities and detract from the overall

11  creditor recovery.  While complete indemnification of liability

12  for violations of federal or state securities laws may be

13  contrary to public policy, it is unclear whether a defendant

14  held liable in a negligence-based claim may be entitled to

15  indemnification.  And of course, if the defendant prevails in

16  the underlying action, it would appear that it would be

17  entitled to whatever contractual indemnification is available.

18          It appears at this stage of the proceedings, that the

19  debtors have established by a preponderance of the evidence,

20  that Ally Securities is entitled to contractual indemnification

21  unless it is ultimately determined to be liable in the

22  underlying action.  Indemnification will further reduce assets

23  available for distribution from the debtors' estates.

24          We discussed the discovery burdens.  The most

25  significant factor favoring extending the stay in this case is

1  the substantial discovery burden and expense the debtors would

2  face if the Western & Southern action goes forward against Ally

3  Securities.  The debtors put forward evidence in Mr. Lipps'

4  declaration setting forth in specific detail the cost and

5  burden of discovery in these lawsuits.  See the Lipps

6  declaration, paragraphs 70 through 78.

7        Western & Southern has never challenged the statements

8  in Mr. Lipps' declaration, either in deposition or in their

9  opposition.  Western & Southern offers nothing more than pure

10 conjecture that discovery in their case will not be burdensome.

11        The debtors have provided specific examples of cases

12 that involved a small number of securitizations, but still

13 produced millions of pages in discovery and upwards of eighty

14 days' worth of depositions from the debtors' current and former

15 employees.  See the Lipps declaration, paragraphs 28 and 29.

16        Any prospective discovery will also burden current and

17 former employees of the debtors.  "It matters little that some

18 of the individual defendants are no longer affiliated with the

19 debtor."  Because the ultimate discovery burden falls on

20 current employees who are critical to restructuring.  See

21 Hawaii Structural, 2006 WL 3755175 *5,6.

22        The debtors have adequately shown the negative impact

23 of continued litigation on the debtors' key employees.  See the

24 supplemental Lipps declaration, at paragraphs 31 through 33.

25        We'll briefly discuss proceeds of insurance policies

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    138

1  covering both the debtors and the nondebtor defendants.  The

2  debtors further assert that the Western & Southern action

3  impacts property of the estate in the E&O policy, a single line

4  of coverage applicable to just one of the several years

5  relevant to the Western & Southern action, with a twenty-five

6  million dollar retention or deductible.  The E&O policy has

7  been introduced into evidence.  It provides entity coverage and

8  is a wasting policy, meaning that every dollar spent of policy

9  proceeds reduces the amount available for claims by the

10 debtors.

11        According to the debtors, the primary E&O insurer,

12 Chubb, issued a letter setting forth its preliminary coverage

13 position that dispenses with both of these arguments.  As to

14 the policy period, Chubb's coverage letter makes clear that

15 "pursuant to Section 7(a) of the relevant policies, all loss

16 associated with the MBS actions shall be deemed one loss and

17 such loss shall be deemed to have originated during the '07-'08

18 BPL policy."  That's the policy attached to the Whitlinger

19 declaration.

20        Chubb's coverage letter also makes clear that the

21 Western & Southern action claims fall within the scope of the

22 insurance policy.  The coverage letter states that "the MBS

23 actions trigger cover under the broker-dealer services

24 liability clause of the '07-'08 BPL policy, because they are

25 civil proceedings brought by or on behalf of a broker-dealer

RESIDENTIAL CAPITAL, LLC, ET AL.                    139

1  customer against an insured for a broker-dealer wrongful act."

2         The coverage letter also notes that the lawsuit filed

3  by Western & Southern has been tendered and were included in

4  the MBS actions covered by the E&O policy.

5         The Court's conclusion.  The Court grants the

6  motion -- the debtors' motion to extend the stay on essentially

7  the terms agreed upon in the stipulated extensions of the stay

8  in the other cases.  The stay shall remain in place until

9  October 31, 2012, with all parties retaining all rights to seek

10 to extend or terminate the stay at that time.  Discovery may

11 proceed in the Western & Southern action only as to documents

12 in the possession of Ally Securities.

13        The parties shall draft and submit a proposed order

14 consistent with this oral bench opinion.  In the event the

15 parties cannot agree on the terms of the order, they may

16 arrange a telephone conference with the Court to resolve any

17 remaining issues.

18        That is the decision of the Court.

19        IN UNISON:  Thank you, Your Honor.

20        THE COURT:  Mr. Haims, is there anything else for me

21 to take up today?

22        MR. HAIMS:  No, Your Honor.

23        THE COURT:  So you have some work to do with respect

24 to the additional matters that -- as to which you were able to

25 resolve today by stipulation.  And you'll have to work with

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    140

1    counsel for Western & Southern to craft an appropriate order

2    consistent with my ruling.

3            MR. HAIMS:  We'll do that, Your Honor.

4            THE COURT:  Okay?

5            MR. HAIMS:  Thank you.

6            THE COURT:  All right.  Thank you very much,

7    everybody.

8        (Whereupon these proceedings were concluded at 4:14 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

141

## I N D E X

### E X H I B I T S

| DEBTORS' | DESCRIPTION | PAGE |
|---|---|---|
| -- | Jeffrey Lipps declaration | 78 |
| -- | James Whitlinger declaration | 78 |
| -- | Anne Janiczek, declaration | 79 |
| -- | Jeffrey Lipps supplemental declaration | 79 |
| 1 - 31 | Various | 80 |

WESTERN & SOUTHERN LIFE INSURANCE CO.'S

| A, B, C | Various | 93 |

### RULINGS

| | Page | Line |
|---|---|---|
| Debtors' counsel to share proposed order with Mr. and Mrs. Burris.  If agreeable, it will be entered and the stay will be lifted. | 35 | 8 |

142

## RULINGS

| | Page | Line |
| --- | --- | --- |
| Debtors to submit proposed order denying lifting the automatic stay re Mr. and Mrs. Lewis | 49 | 4 |
| Final supplemental servicing motion is granted pending review of modified order by the Court. | 56 | 3 |
| Debtors' motion to extend automatic stay in adversary proceeding, re Western & Southern is granted under substantially similar conditions to other stipulated agreements. | 124 | 18 |
| The automatic stay applies to former officers and directors only if they agree to toll statutes of limitations. | 132 | 14 |

C E R T I F I C A T I O N

We, Penina Wolicki and Sharona Shapiro, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

PENINA WOLICKI

AAERT Certified Electronic Transcriber CET**D-569


SHARONA SHAPIRO

AAERT Certified Electronic Transcriber CET**D-492


eScribers

700 West 192nd Street, Suite #607

New York, NY 10040


Date:   July 11, 2012

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

**#**

**#607 (1)**
4:22

**\***

**\*5 (1)**
135:2
**\*5,6 (1)**
137:21

**[**

**[3] (1)**
126:3

**A**

**A-110-5042 (1)**
124:12
**abbreviations (1)**
106:6
**abeyance (2)**
90:16;91:7
**ability (3)**
72:8;98:2;135:9
**able (10)**
15:18;36:6;42:19,
20;55:2;86:9;89:9;
96:22;110:9;139:24
**Above (1)**
53:13
**absence (5)**
20:19;65:9;85:6;
98:3;129:24
**absent (1)**
109:15
**absolute (2)**
127:2;135:14
**accept (1)**
17:11
**acceptable (2)**
51:22;81:22
**access (2)**
24:21;44:23
**accomplished (1)**
32:4
**according (2)**
36:5;138:11
**account (1)**
135:15
**accounts (1)**
70:18
**Accredit (1)**
106:8
**accurate (3)**
34:1;74:23,25
**accurately (1)**
54:10
**achieve (1)**
38:13

**acknowledged (2)**
55:17;70:3
**act (11)**
23:21;39:10;41:22;
42:1;44:7;121:2,10,
13;131:4;132:1;
139:1
**Action (60)**
3:19,21;4:14;
32:21;37:5,10,25;
39:19;47:5;65:4,15,
17;84:16,24;91:22;
94:3;96:7,8,10;
97:14;98:3,23;102:2;
115:18,19;118:18;
119:24;120:4;122:5;
124:16;125:10,14,16,
18,21;126:18,20,21;
127:3,5;129:3,10;
130:25;131:2,9,16,
18,23;132:6,7,20;
133:13,17;136:16,22;
137:2;138:2,5,21;
139:11
**actionable (1)**
131:11
**actions (16)**
38:15;51:15;52:9;
60:7;66:22;70:7;
72:21;73:17;115:2;
121:14;124:20;
127:19;135:19;
138:16,23;139:4
**actively (1)**
100:10
**activities (2)**
53:4;73:21
**actual (2)**
53:7;114:7
**actuality (1)**
134:14
**actually (7)**
14:7;26:9;35:25;
36:9,13;38:7;111:13
**Ad (1)**
6:3
**adapted (1)**
130:18
**add (2)**
89:2;107:25
**addition (6)**
36:15,21;53:15;
84:21;103:24;128:9
**additional (10)**
44:9,16,17;58:19;
61:18;100:22;103:1,
3;119:8;139:24
**Additionally (1)**
135:11
**additions (1)**
49:23
**address (7)**
41:3;51:17;69:16;

**addressed (7)**
28:5;43:10;52:3;
67:2,5,10;75:16
**addresses (2)**
44:2;54:5
**addressing (3)**
16:22;44:18;113:5
**Adelphia (1)**
127:24
**adequately (2)**
44:2;137:22
**adjourn (6)**
40:6;41:3;43:12;
44:3;92:10,11
**adjourned (2)**
13:12;14:25
**adjudicated (1)**
48:2
**adjustments (1)**
22:18
**administratively (1)**
25:17
**admission (1)**
57:10
**admitted (10)**
78:2,11,21;79:7,
20;80:15,23;93:17;
124:23;125:2
**adopt (1)**
17:1
**advance (1)**
29:1
**advanced (2)**
34:2;70:5
**advantage (1)**
41:20
**Adversary (10)**
2:3,13;52:17;
86:17;101:2;102:10;
114:23;115:11;
123:12,13
**adverse (2)**
60:8;126:15
**advise (1)**
23:23
**advised (1)**
39:22;43:4;83:6
**affairs (2)**
51:3,6
**affect (1)**
85:19
**affected (1)**
17:4
**affidavit (1)**
40:5
**affiliate (6)**
97:13;104:22;
106:12;124:14;
131:24;135:9
**affiliated (3)**
70:23;117:13;

**137:18**
**Affiliates (34)**
2:11;58:4,16;59:8,
10;60:10,20;61:19;
64:2;65:11,17,23;
66:5,13;67:11;68:4;
70:13;71:6,20,24;
75:20;106:22,24;
123:10,18;124:1,5,6;
131:3,18;132:9;
135:4,21;136:2
**AFI (4)**
70:13,16;71:6,6
**afternoon (4)**
81:12;86:18;91:18;
93:3
**again (12)**
18:9;40:7;53:2;
75:11,16,21;89:18;
100:5;101:20;105:5;
113:15,18
**Against (78)**
2:9;20:8;24:13;
36:3,8,25;37:3,13,16;
42:8,16;47:19;52:18;
58:4;60:7,9,15,20;
63:13,14;64:5,13;
72:21;74:10;75:20;
83:24;85:8;87:6,10;
95:22;97:4,14;98:4;
100:1;104:8;116:22,
24;117:18;118:13,
19;120:24;121:23;
122:1,1;123:9,17;
125:10,18,21,25;
126:14,18;127:3;
128:3,10,11;131:23;
132:4,24,25;133:4,
10,11,17,18,19,21,23,
25;134:3,7,10,12,22,
25;135:5,15;137:2;
139:1
**agenda (7)**
13:5,13;16:16;
29:20;32:12,20;33:4
**aggregate (3)**
28:4;53:1,4
**ago (1)**
81:19
**agree (24)**
22:18;23:8;27:25;
34:19,22;51:20,22;
84:12;86:24;87:1,3,
9;88:22;90:15;91:4;
95:14,19;96:22;
99:12;101:11;104:8;
132:12,17;139:15
**agreeable (1)**
35:7
**agreed (38)**
17:21;22:4,7,10,14,
14;23:9;30:3;31:16;
33:2;34:13,13;43:18;

**52:25;53:9;55:7;
58:18;61:1,6;71:24;
76:13,15;77:1,11;
80:13;84:10;86:22;
87:16,17,24;91:22;
97:19;100:23;101:9;
104:5,8;129:7;139:7**
**agreeing (2)**
54:21;132:9
**agreement (34)**
14:11,22;16:25;
17:22;18:17;19:17;
20:19;22:8;23:18;
25:19;27:11;29:15;
33:19;34:3,5,8;35:3;
43:14;44:5;52:24;
71:13;72:5;89:4,24;
90:19,20;95:4;96:8;
101:14,20,24,24;
110:7;115:8
**Agreements (11)**
3:7,12,17;4:7;24:9,
18;25:22;88:20;
114:9;135:18,20
**AH (2)**
133:1;135:17
**ahead (27)**
13:23;24:15;29:3;
32:24;33:13;34:20;
35:21;44:6;46:20;
47:1,2;56:3;61:13;
63:9;85:16;88:9,11;
89:24;90:12;92:15;
93:22,23;97:17;
103:19;107:24;
116:9;122:16
**air (1)**
69:17
**al (2)**
2:4,4,14,14;7:12;
8:13,21;37:15;71:14;
123:13;124:12;
130:25
**Alison (1)**
50:21
**allege (1)**
42:22
**alleged (4)**
41:25;42:3,5;60:18
**alleges (2)**
37:15;39:25
**alleging (1)**
131:2
**allow (5)**
20:2;32:23,24;
33:24;38:21;39:15;
40:1;52:15;61:5;
67:6;75:21;95:23;
103:4
**allowed (9)**
17:2;30:23;39:11;
40:1;47:6;63:15;
125:14,18,21

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document

RESIDENTIAL CAPITAL, LLC, et al. v.                 Pg 145 of 167                 Case No. 12-12020(MG)
ALLSTATE INSURANCE COMPANY, et al.                                                           July 10, 2012

**allowing (3)**
35:4;61:10;75:23
**allows (2)**
26:19;127:20
**Allstate (4)**
2:4,14;86:16;
123:13
**Ally (111)**
4:7;6:12,12,20,20;
13:18;14:11,21,22;
27:10,12;59:10,12,
12;65:4,19,19;68:13,
14;69:5;70:8,18,23;
71:8,13;72:14;73:6,
18;74:2,3;75:1,1,12;
87:10,10,16,18,24,
25;88:13;89:24;
90:13;97:12,23;
100:25;104:23,24;
105:3,4,6,8;106:11;
108:9,10,11,11,12,16,
17,18;109:5,9,16,24;
110:10,16,24;111:4,
14;112:4,8,12,14,25;
113:2,16;114:3,6,10;
116:22;118:11,19,22,
23;119:3,4,6,7,10,14,
16,19,20,24;120:3,7,
13,22,25;122:2;
124:13;125:10,18,21;
131:24;133:18,21;
135:12;136:20;
137:2;139:12
**alone (1)**
20:21
**alphabetically (1)**
105:12
**ALSTON (1)**
7:2
**Alternative (3)**
2:8;72:7;123:8
**although (4)**
119:2;121:14;
126:18;134:19
**Alvarez (2)**
76:22;134:1
**ALVES (1)**
8:8
**always (4)**
17:9;77:6,9;83:21
**amended (7)**
13:5;37:13;50:21,
24;65:16;71:12;72:4
**amending (1)**
38:8
**Americas (5)**
6:4;7:13,21;9:13;
10:4
**AMINI (2)**
11:10;54:13
**among (2)**
50:22;124:9
**amount (3)**

24:19;118:21;
138:9
**amounts (1)**
119:13
**analysis (2)**
40:4;132:19
**and/or (1)**
39:11
**Angeles (1)**
9:6
**Anne (2)**
79:1,9
**Annotated (1)**
48:6
**announced (2)**
129:20;130:11
**Anthony (1)**
16:14
**anticipated (1)**
16:7
**anticipates (1)**
56:20
**apart (1)**
99:7
**apologize (2)**
30:18;114:20
**apparently (2)**
24:22;119:3
**appeal (2)**
48:8,21
**appealed (3)**
47:24;48:13,15
**appeals (4)**
47:25;48:5,16,22
**appear (4)**
51:20;54:23;55:2;
136:16
**appearance (3)**
35:18;46:23;50:16
**appearances (1)**
47:1
**appeared (1)**
48:20
**appearing (2)**
35:17;54:2
**appears (2)**
81:22;136:18
**appellate (1)**
48:1
**Appendix (1)**
59:13
**applicable (6)**
23:20;41:12;95:20;
132:10,17;138:4
**application (3)**
48:8;102:8;103:6
**applied (3)**
121:23;125:7;
130:21
**applies (1)**
95:18
**apply (5)**
96:15,21;124:21;

126:13;135:18
**appreciate (3)**
14:3;35:13;89:7
**appreciative (1)**
27:25
**approach (2)**
128:17;130:13
**appropriate (14)**
14:15;16:3;28:19;
43:16;76:21;77:12;
97:14;102:23;103:2;
127:1,15;128:22;
135:16;140:1
**appropriately (1)**
54:4
**Approval (3)**
3:6;27:12;53:5
**approve (2)**
18:23;29:11
**approved (1)**
120:21
**Approving (2)**
4:12;14:22
**approximately (1)**
83:4
**April (10)**
37:12;47:19;84:23;
85:18;97:22;109:2,4;
116:14,14;132:7
**area (1)**
26:19
**argue (5)**
69:13;103:13,19;
125:6,8
**argued (3)**
119:19,23;134:12
**argues (2)**
51:7;132:8
**arguing (2)**
41:10;131:9
**argument (10)**
37:20;62:21,23;
67:13,24;78:6;92:11;
93:7,11;100:17
**arguments (7)**
50:24;51:9;67:5;
99:4;102:23;125:3;
138:13
**arise (2)**
60:22;71:21
**ARLENE (1)**
8:8
**arose (1)**
71:1
**around (1)**
70:7
**arrange (2)**
44:24;139:16
**arrives (1)**
102:20
**articulated (2)**
130:5,16
**aside (3)**

72:16;73:22,23
**aspects (2)**
82:16;89:5
**Assert (6)**
4:2;51:16;52:10,
11;135:9;138:2
**asserted (5)**
46:5;51:9;66:18;
102:1;132:20
**Asset (1)**
106:9
**assets (2)**
54:8;136:22
**assign (2)**
26:5,17
**assigning (1)**
25:9
**assistance (1)**
33:16
**assisting (2)**
55:12;135:4
**associated (1)**
138:16
**Association (3)**
8:3;50:2;54:14
**Assume (5)**
3:11,16;21:23;
26:5,16;30:3;61:19;
88:4;120:17
**assuming (2)**
25:9;56:2
**assumption (1)**
117:22
**assured (1)**
131:18
**Atlanta (1)**
7:6
**Atlantic (1)**
7:4
**attached (7)**
59:13;69:2,2;70:2;
93:10,20;138:18
**attempt (2)**
41:20;89:8
**attempting (2)**
39:10;95:22
**attention (1)**
14:19
**Attorneys (20)**
6:3,12,20;7:3,12,
20;8:3,13,21;9:3,12,
20;10:3,11;11:3,11,
19;54:14;55:1,10
**August (1)**
84:19
**authority (10)**
52:3,6;53:11;
95:14,21;96:5;101:9;
103:11;127:12;
132:12
**Authorizing (6)**
2:19;3:11,16;4:6,
11,17

**Automatic (27)**
2:8;3:20;4:1;
32:13;33:5,11,24;
46:22;58:3,16;99:8;
123:7,16;125:8;
126:4,13,24;127:1,9,
17;129:3,21;130:21;
132:21;133:6;135:1,
16
**available (11)**
24:20;57:8;58:8;
69:14;73:1,2;91:17;
119:13;136:17,23;
138:9
**Avenue (9)**
6:4,21;7:13,21;
8:14;9:4,13,21;10:4
**averments (1)**
57:13
**avoid (2)**
75:20;99:18
**avoided (1)**
14:13
**award (2)**
42:21;43:20
**aware (6)**
15:17;18:5,6,8,12;
87:7

## B

**back (23)**
20:9,11;29:14,14;
30:13;31:6,6,7;32:5;
69:23;77:6,14;86:8,
15;90:14;92:16,21;
96:17;99:3;108:2,5;
123:2,3
**backing (1)**
28:4
**backup (2)**
111:23,25;112:5
**backwards (1)**
20:6
**bad (1)**
51:8
**Baer (1)**
67:3
**Baer's (1)**
115:5
**baked (1)**
89:6
**balance (9)**
20:23;38:10;52:21;
59:19,21;72:9;
116:23;129:16,25
**balancing (2)**
54:6;129:16
**ball (1)**
28:7
**Bank (13)**
4:7;6:12,20;7:3,20;
8:3,13,21;21:20,21,

12-12020-mg   Doc 750   Filed 07/11/12   Entered 07/11/12 16:22:05   Main Document
RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.
Pg 146 of 167
Case No. 12-12020(MG)
July 10, 2012

22;22;59:12

**Bankr (7)**
3:6;127:23;128:14;
130:8;133:8;134:2,6

**Bankruptcies (3)**
4:3;52:8,15

**Bankruptcy (29)**
3:10,10,15,15;
4:16;47:21;49:21;
52:5,10;54:14;55:1,
10,18;87:16;125:24;
126:2,3,5,11,17,24;
127:10,13;128:3;
130:5,18,19,23;136:9

**banks (1)**
86:1

**barred (2)**
131:10,25

**Based (11)**
38:3;39:17,22;
47:4;59:5;82:2,12;
95:16;123:19;
131:13;133:18

**bases (2)**
58:7;59:23

**basically (4)**
36:15,24;38:12;
115:11

**basis (8)**
28:20;49:19;60:5;
98:12;102:25;
109:17,18;133:5

**Battery (1)**
8:5

**battle (1)**
97:17

**bear (2)**
39:7;49:7

**become (1)**
136:8

**begin (3)**
25:5;58:13;132:7

**behalf (18)**
16:15;21:19;27:6;
31:21;54:2;62:8;
75:15;81:13;85:25;
94:10;95:14;96:5,22,
25;102:6;129:13;
132:13;138:25

**behind (1)**
25:8

**believes (1)**
22:25

**bell (1)**
134:22

**belongs (1)**
114:3

**bench (3)**
22:17;65:22;
139:14

**beneficiaries (2)**
84:17;85:9

**beneficiary (1)**

97:24

**benefit (5)**
28:21,22;86:3;
95:5,11

**Bentley (9)**
27:8,20,22,23;29:6,
21;30:11,16,17

**Berkshire (1)**
9:3

**Bethesda (5)**
111:11;113:7,24;
114:4,7

**better (8)**
16:1,10;32:2,5;
55:15;73:21;81:24;
99:6

**beyond (1)**
55:10

**bidding (1)**
30:22

**big (3)**
29:12;72:18

**bigger (1)**
28:18

**biggest (1)**
28:13

**billed (1)**
70:18

**billion (6)**
17:2;20:3;59:18,
21;120:19,20

**binder (1)**
79:25

**binders (1)**
80:14

**BIRD (1)**
7:2

**bit (3)**
31:5;80:13;86:3

**black (1)**
80:3

**blackline (1)**
76:7

**BOCKIUS (2)**
8:12,20

**Borrower (3)**
4:15;52:8,15

**Borrowers (1)**
4:2

**borrower's (1)**
52:18

**both (21)**
15:4;19:2,3,6,8;
20:23;25:5;26:7;
47:24,25;48:15,16;
58:14;63:23;68:3;
82:2;96:20;103:18;
125:4;138:1,13

**bound (3)**
55:18;60:16;
134:17

**BPL (2)**
138:18,24

**BR (15)**
127:11,23,24;
128:7,8,13,15,25;
130:3,7;133:8;134:2,
6,16;135:6

**bracketed (3)**
71:25;72:1,2

**Brad (1)**
102:5

**breach (5)**
25:23;36:23;39:12;
41:24;42:22

**breadth (1)**
38:9

**break (6)**
16:20;85:22;86:8;
100:13,14,18

**breathing (1)**
77:10

**brief (15)**
14:3;37:1;44:9,17,
25;45:6;52:20;54:15;
56:16;87:1;90:23,24;
102:6;103:21;120:9

**briefing (7)**
67:3,20;90:4;92:1,
11;120:8,9

**briefly (10)**
13:23;27:24;29:16;
41:6;50:7;51:13;
58:6;60:15;115:4;
137:25

**briefs (1)**
125:4

**bring (2)**
14:18;20:14

**broad (4)**
74:17;104:23,25;
125:25

**broader (1)**
96:9

**broker-dealer (5)**
111:18;113:16;
138:23,25;139:1

**brought (3)**
59:7;134:9;138:25

**BROWN (1)**
6:16

**Building (1)**
129:19

**built (1)**
53:17

**burden (20)**
67:16,18,19;73:1;
87:11;91:21,24;
99:16;100:2;104:5;
112:23;113:4,5;
118:18,23;119:8;
137:1,5,16,19

**burdens (2)**
64:7;136:24

**burdensome (4)**
63:15;118:25;

125:16;137:10

**burning (1)**
92:4

**Burris (12)**
2:21;12:3;33:8,8,9,
12,14;34:22;35:1,11,
13,14

**Burrises (3)**
34:3,10,12

**Business (7)**
4:8;15:5,19;71:2,
22;135:22,24

**buying (1)**
25:10

## C

**CA (2)**
8:23;9:6

**CADWALADER (1)**
11:2

**calendar (8)**
15:16,21;20:18;
22:12,19;30:8;31:16,
17

**calendaring (2)**
17:15;19:5

**call (5)**
24:14;28:24;32:14;
111:11;115:19

**calling (1)**
35:23;57:18,20

**Calpine (4)**
129:5;130:2,3;
135:6

**Cambridge (6)**
7:12;59:1;62:11,
19;86:24;87:9

**came (2)**
94:23,25

**can (6)**
15:23;16:10,10;
18:15;20:8,11;24:6;
28:24;29:6,9,10,16,
18;35:20,21;38:1;
41:3,13;42:2;43:14,
18;44:1,3;45:4,11,12,
16;47:10;51:17;
52:10,11;53:4;57:1,
14;60:17;61:4,13;
62:7,14;77:6;82:3,9,
15;83:13,16;91:7;
92:16,21;97:25;98:4;
100:5,17,22;102:23;
104:7;106:15;
110:14;112:19;
113:4;121:7,7;
126:13;128:12

**cap (1)**
53:1,4,9

**Capital (8)**
2:2,3,13,17;68:14;
78:18;86:16;123:13

**caps (1)**
52:25,25;53:5

**captioned (1)**
37:11

**capture (1)**
112:17

**captured (1)**
111:18

**careful (1)**
38:10;40:3

**carefully (1)**
56:2

**Carpenter (1)**
110:23

**Carpenters (1)**
58:25

**Carpenter's (2)**
87:3,5

**carried (1)**
14:9

**carriers (1)**
119:18

**carry (4)**
99:16;100:2;
127:15;128:22

**CARTER (1)**
10:19

**carve (2)**
74:8,13

**Case (75)**
3:21;6:2;13:17;
14:6,8,20;20:25;
25:18;26:25;33:16;
36:1,20,25;48:4;
53:4;58:21;59:3;
64:9;65:7,8;82:10,
16;84:4;86:24;87:1,
3,5,9,15;97:2,23;
100:25;103:22,22;
104:4,12,22;105:2;
106:15;107:4,14,21;
108:12,13,14,16,23,
25;110:1,2;111:15;
114:23;116:4,12,22,
23;117:3,4;118:15;
119:9;121:16,18;
122:12;124:9,11,15;
126:2;132:2;133:12,
21;134:12,15;
135:16;136:25;
137:10

**Cases (71)**
4:16;47:21;51:8;
58:4,16,18,19,24;
59:2,5,8,16,17,19;
60:2,15,18,25;61:2,2,
5,22,22,24;62:19;
63:13,14,22;64:5,8,8,
9,13,14;65:11;66:1,2,
3,10;67:3;69:19;
70:3,16,19,21;72:4;
75:24;76:2,13;77:25;
81:14;86:22,24;

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
RESIDENTIAL CAPITAL, LLC, et al. v.    Pg 147 of 167    Case No. 12-12020(MG)
ALLSTATE INSURANCE COMPANY, et al.    July 10, 2012

87:14;104:2;113:21;
117:6,9;120:1,2,19;
123:20,22,23,25,25;
124:3;134:1,23;
137:11;139:8
**Castel (4)**
129:1,7,9,14
**catch-up (1)**
98:2
**category (1)**
110:9
**cause (3)**
82:16;83:15;87:11
**caused (1)**
81:6
**Causes (1)**
4:14
**causing (1)**
39:11
**caution (1)**
29:22
**CC (5)**
2:19;3:5,9,14;4:10
**Center (1)**
7:4
**Centerpoint (1)**
130:6
**Central (6)**
59:1;62:10;65:15,
19;66:17;87:1
**centralized (1)**
70:17
**Century (1)**
133:7
**cert (1)**
23:16
**Certain (15)**
2:9,20;4:13;30:23;
50:24;58:4;82:16;
102:8;104:7;123:9;
124:2,4;126:10;
131:2,2
**certainly (9)**
22:11;29:8;31:15;
66:22;72:14;91:19;
95:7;97:1;120:6
**certificate (3)**
23:14,17,25
**certification (1)**
62:13;67:4;87:4
**certs (1)**
87:7
**Ch (2)**
2:2,17
**chaff (1)**
78:7
**challenged (1)**
137:7
**chance (6)**
39:3;41:6;43:13;
45:1;82:9;134:21
**change (2)**
56:1;77:8

**changer (1)**
120:23
**changes (4)**
23:23;51:11;53:15;
54:8
**Chapter (3)**
25:17;50:2;134:1
**chart (2)**
59:13;105:19
**chase (1)**
84:12
**check (1)**
45:14
**Chemical (2)**
130:6,7
**chief (2)**
78:17;79:3
**choice (1)**
134:24
**CHRISTOPHER (1)**
6:8
**Chubb (1)**
138:12
**Chubb's (2)**
138:14,20
**Cir (3)**
125:22;126:13;
133:2
**circuit (3)**
80:12;126:9,23
**circumstances (4)**
63:10;77:8;85:9;
126:10
**cite (2)**
121:7;127:8
**Citibank (1)**
85:4
**citing (1)**
128:14
**Civil (2)**
127:22;138:25
**claim (14)**
17:2,10;39:9;52:9,
14;120:10,12;
121:16;126:14;
128:3,4;133:4;135:5;
136:14
**Claimant (1)**
10:11
**Claimants (2)**
3:12,17
**claiming (1)**
36:6
**Claims (66)**
4:2,13;25:8;28:4;
36:9,11,16,18,18,19,
22;40:9,9,25;41:1,11,
23,25;42:2,6,11,16,
19,23;43:14,18;
51:16;52:10,11,16;
60:9,20,21;66:16,18,
19,24;69:4;75:20;
85:8;96:7;102:1;

120:19,20,22;121:10;
122:1,11;125:17;
128:10,11;131:10,25;
132:4,19;133:13,18,
19,24;134:7,8,9,12;
136:8;138:9,21
**clarification (5)**
22:20;23:12;36:1;
40:24;101:18
**clarify (2)**
37:2;48:19
**class (4)**
62:13;67:4;87:4,7
**classes (3)**
17:19,20,25
**clause (1)**
138:24
**cleanup (1)**
87:5
**clear (21)**
30:19;33:6;37:9;
42:14;45:24,25;
46:10;55:19;67:15,
15;85:13;95:25;96:2,
3;98:17;104:10;
120:11;124:5,21;
138:14,20
**clearly (4)**
41:20;42:3,4,5
**client (6)**
90:14;91:11,14;
92:16;99:23;100:5
**clients (4)**
62:9;86:22;95:22;
103:10
**client's (1)**
115:18
**clock (1)**
82:23
**closed (1)**
114:5
**closely (1)**
120:17
**closing (1)**
93:7
**Clubs (1)**
128:13
**Co (14)**
11:3;86:17;104:15,
16;106:7;123:13;
124:11,12;125:22;
128:14;130:2,6,7;
133:1
**Code (6)**
3:10,15;48:6;
58:15;125:24;127:10
**codefendants (3)**
126:19;128:10;
133:7
**cogitate (1)**
30:5
**collateral (4)**
121:22,24;125:13;

134:17
**colleague (1)**
116:8
**colleagues (7)**
26:24;35:3,6;
37:22;44:4;46:8;
110:14
**colleague's (1)**
122:13
**collected (1)**
112:10
**Collier (9)**
126:2,5,17;127:8;
128:23;130:13,18,20,
23
**Colorado (1)**
33:18
**comfortable (1)**
77:15
**coming (4)**
31:11;57:9;98:20,
23
**commenced (1)**
126:1
**commencement (1)**
126:2
**comments (4)**
27:25;55:23;102:6,
17
**commit (1)**
99:22
**committed (2)**
131:3,4
**Committee (30)**
3:17;13:18;14:3,
14;15:10;19:2,7,17;
20:7,13;25:5;26:7;
27:7;34:18,21;35:8;
50:3;52:20,24;53:6,
13,18,22;54:2,5,9;
102:6,7,11,23
**committee's (1)**
54:5
**Common (4)**
47:20;104:20;
124:13;128:12
**communications (4)**
111:16,17,19;
127:24
**companies (1)**
25:16
**Company (4)**
2:4,14;37:15;114:5
**compelling (2)**
43:17;133:5
**compl (1)**
96:10
**complaint (8)**
36:2,7,10,15;
65:16;105:11,20;
121:8
**complaints (2)**
64:2;66:19

**complete (5)**
20:15;69:11;
102:19;116:16;
136:11
**completed (1)**
116:14
**completely (2)**
73:4;96:11
**completion (1)**
97:22
**complying (2)**
98:1;127:21
**Compromise (1)**
4:13
**concede (1)**
121:14
**conceded (1)**
84:1
**concern (6)**
34:3;47:18;54:25;
55:3,5;74:4
**concerned (3)**
38:14;54:6;124:1
**concerning (2)**
31:23;124:16
**concerns (1)**
54:5
**concluded (1)**
140:8
**concluding (1)**
67:4
**conclusion (2)**
35:5;139:5
**conclusory (1)**
67:23
**Concomitant (1)**
30:25
**concurs (1)**
130:13
**condition (4)**
14:21,24;95:4;
96:24
**conditioned (2)**
102:15;132:9
**conduct (3)**
49:25;60:18;131:5
**confer (1)**
49:23;56:20,25;
57:17
**Conference (9)**
2:15;3:5,9,14;
13:10;15:24;114:19,
25;139:16
**confi (1)**
31:25
**confidentiality (3)**
24:9,17;110:7
**confirmation (12)**
47:25;48:16,22;
60:1;73:3;76:8,22,
25;77:12;88:17;
98:15;122:9
**confirmed (1)**

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

47:23
**confirming (1)**
48:11
**conformance (1)**
89:25
**conjecture (1)**
137:10
**connection (11)**
37:12;52:8,12,16,
23;60:23;62:13;75:8;
81:14,20;131:5
**consensual (1)**
15:18
**consensually (2)**
15:10;76:15
**consent (15)**
20:13,14;31:7;
32:15;44:6;50:4;
51:25;53:6,13;94:10;
95:4,19;96:24;98:4;
103:11
**consented (2)**
33:1;102:10
**Consenting (3)**
3:12,17;10:11
**consents (1)**
95:5
**consequence (2)**
119:9;126:15
**consider (3)**
4:10;46:3,4
**considerable (1)**
73:2
**considered (2)**
61:4;125:3
**consistent (2)**
139:14;140:2
**consists (1)**
135:25
**consolidated (1)**
25:18
**consult (3)**
15:15;97:7;116:6
**consultation (2)**
25:13;37:25
**consulting (1)**
74:14
**consume (1)**
127:6
**consumed (1)**
119:15
**Consumer (2)**
42:1;54:14
**consummate (1)**
33:25
**contain (1)**
78:5
**contained (2)**
71:7;133:14
**contemplated (1)**
61:16
**contends (1)**
36:9

**contention (1)**
36:12
**contested (3)**
29:23;32:11;98:12
**context (2)**
59:16;130:18
**contingent (1)**
136:5
**continuation (2)**
125:9;126:20
**Continue (16)**
4:7,11;14:15;15:8;
31:1;38:17;40:7;
50:6;60:15;61:5;
63:15;65:9;75:23;
125:15,18,21
**continued (6)**
14:11;17:7;45:2,9;
123:16;137:23
**continues (1)**
125:16
**continuing (2)**
95:9;102:21
**contours (1)**
89:3
**contract (7)**
26:11,12;36:23;
41:24;42:22;120:14,
16
**contracts (2)**
26:3,6
**contractual (9)**
68:2;71:5;119:20,
25;120:4,14;135:13;
136:17,20
**contradict (1)**
21:24
**contrary (1)**
136:13
**contributing (1)**
127:4
**control (6)**
60:11;73:19;105:8;
108:4;121:3,14
**controlling (2)**
26:19;27:1
**controls (1)**
113:24
**convenience (2)**
59:12;93:12
**conversation (1)**
115:16
**conversations (2)**
55:7;115:10
**coordinate (1)**
119:6
**copies (1)**
80:7
**copy (3)**
13:8;44:24;105:25
**Corp (5)**
127:24;129:5;
130:2,3;133:8;135:6

**Corporate (8)**
2:10;59:10;68:4;
84:10,11;123:10;
135:21;136:2
**correspondingly (1)**
16:25
**Co's (1)**
93:19
**cost (4)**
67:18;119:23,24;
137:4
**costs (13)**
67:17,19,22;68:4;
70:6,18,20;72:4,15,
20;118:25;119:10;
136:6
**Cote (4)**
58:20;64:23;115:5,
13
**couched (1)**
32:14
**counsel (36)**
13:4;14:2;21:6;
32:10;35:6;36:5;
37:5,25;38:4;39:17,
18,22,24;40:5;41:14,
20;42:4;43:11;47:11;
54:13;57:1,14;58:1;
65:25;77:24;83:6;
86:6,21;101:8;
110:13,16;115:1;
125:4;131:17;
132:11;140:1
**Count (1)**
38:2
**counterclaim (3)**
37:13,15;41:16
**Counterclaims (15)**
4:2;36:8,12,23,24;
37:3,16;38:19;41:12;
43:22,24;44:19;46:2,
4,11
**country (1)**
70:7
**counts (2)**
38:1;41:4
**County (7)**
36:3;37:10;47:20;
48:3;104:18,19;
124:13
**couple (5)**
24:6;45:5;67:12;
81:6;113:21
**Course (10)**
4:8;14:8;20:18;
23:24;84:15;89:4;
107:1;117:6;133:15;
136:15
**Court (497)**
3:20;13:2,7,8,14,
25;15:25;16:12,18,
23;17:16,18,24;18:2,
9,11,19,21;19:19,25;

20:21;21:6,9,11,14,
18;22:3,21;23:2,6;
24:2,4,10,24;25:3,13;
26:11,13,16,21;27:5,
14,16,18,21;29:3,11,
19,22;30:7,15,17;
31:3,9,13,18,20;32:6,
19,22,24,24;33:3,6,8,
10,13,21,25;34:7,14,
20,23;35:1,12,14,19,
21,24;37:4,7,9,10;
38:16,20,25;39:3,5,
13,15,20,24;40:13,
20;41:5,9;42:7,10,13,
25;43:6,9;44:11,13,
15;45:6,10,16,20,22,
24;46:14,17,20,24;
47:15,17,20;48:1,3,5,
13,19;49:2,5,8,10,14,
17;50:8,11,14,20,25;
51:22,24;52:2,3,5,5;
53:2,5,21,21,24;54:3,
11,18,23,24;55:5,11,
14,19,20,22,24;56:6,
14,17,19,23,25;
57:15,20,24;58:10,
22;59:15;60:24;
61:13,13,15,24;62:2,
9,20,23;63:2,4,7,9;
64:18,23;65:3,12,14,
21;66:4,6;67:22;
68:6,9,11,15,17,19,
24;69:5,11,21;70:5,
11,22,25;71:3,8,11,
15,23;72:1,11,14,18;
73:6,8,11,16,25;74:5,
8,15,17,19,25;75:4,7,
14,18;76:1,4,6,10,12,
20;
24:7;7;4,14,18,21,23;
78:1,6,9,19;79:5,15,
19;80:2,7,10,15,17,
22;81:3,8,11,23,25;
82:6,15,18,20,22,23;
83:2,4,8,10,20;84:2,
24;85:1,1,2,10,12,16,
20,22;86:5,7,15,19;
87:20,22;88:1,4,7,9,
11;89:1,9,11,14,17,
21;90:2,6,9,18;91:2,
9,14,17,23;92:3,7,9,
11,18,22;93:2,7,8,13,
17,22;94:5,6,9,14,19,
21,24;95:2;96:1,12,
14,17,20;97:3,5,9,16,
19;98:9,11,16,19,23;
99:6,11,13,15,20,24;
100:4,7,14,21;101:3,
5,7,12,15,17,21;
102:4,12,24;103:3,7,
13,15,18,25;104:10,
12,17,18,20,20;
105:10,13,18,23;
106:1,3,5,11,14,18,

20,22,25;107:3,6,9,
11,13,18,20,24;
108:5,7,11,15,17,22,
25;109:3,5,8,11,15,
20,23;110:2,5,9,14,
16,18,20,22;111:3,7,
25;112:6,18,22;
113:24;114:9,10,16,
18,18,22,25;115:7,
18,19,22,25;116:4,7,
9,12,17,20;117:2,7,
11,13,18,20,23,23,25;
118:3,6,10,17;
119:19;120:3,24;
121:3,5,10,12,17,22;
122:5,13,16,19,22,
24;123:1,5,6,7,24;
124:13,23,25;125:4,
4,8;126:11,19,24;
127:20;128:2,3;
129:20;131:18;
132:3,14;133:5;
134:23;139:5,16,18,
20,23;140:4,6
**courtroom (4)**
17:12;18:6,13;21:7
**courts (14)**
61:2;63:12;66:21,
21;82:18;126:9,25;
127:9,13,19;128:9;
130:8,21;132:21
**Court's (10)**
14:19;20:11,18;
22:12,19;59:12,25;
80:5;98:1;139:5
**cover (5)**
14:24;61:6;69:7;
70:6;138:23
**Coverage (20)**
39:10;68:7,17,18,
21;69:3,5,6,7,18,20;
70:3;119:13;138:4,7,
12,14,20,22;139:2
**covered (4)**
47:8,16;48:25;
139:4
**covering (2)**
72:4;138:1
**covers (2)**
68:14;69:18
**craft (1)**
140:1
**crafted (1)**
95:16
**creators (1)**
121:15
**creditor (1)**
136:11
**creditors' (5)**
14:2;19:2,17;27:7;
50:2
**creditor's (1)**
127:3

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
Pg 149 of 167

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

**critical (2)**
13:16;137:20
**cross (2)**
57:9;83:5
**cross- (5)**
56:20;57:1,17;
58:8;92:23
**cross-exam (1)**
91:20
**cross-examination (4)**
56:15;57:8;100:16;
125:1
**cross-examine (5)**
81:3;82:24;91:12;
93:6;100:17
**crux (1)**
67:15
**crystal (1)**
45:25
**cure (1)**
19:14
**current (7)**
53:10,10;112:15;
113:7;137:14,16,20
**Currently (5)**
3:21;14:17;33:20;
69:22;70:16
**custody (5)**
73:19;105:8;108:4;
113:1;124:7
**customer (1)**
139:1
**cut (1)**
24:13
**cutoff (7)**
62:12;84:22;85:3,
5,18;109:2,19

**D**

**D&O (6)**
69:5,17,20,22;70:5,
13
**Dallas (1)**
10:14
**damages (1)**
36:11
**Daniels (2)**
65:18;115:5
**data (5)**
24:8,20;28:3,6;
63:19
**date (30)**
14:13,17;19:9,10;
20:17;23:19;25:7;
27:9;28:21;62:12,14,
16,20;70:20;76:6,25;
77:5;78:13,24;79:10,
23;80:25;84:22;85:3,
6;93:21;101:5;108:9;
116:15;122:7
**dated (9)**
48:4;77:23;78:12,

15,23;79:1,9,13,21
**dates (2)**
20:16,16
**day (7)**
14:6;16:5;17:9;
30:1;31:22;69:14;
115:13
**days (1)**
45:8
**days' (1)**
137:14
**DC (3)**
6:4;11:5,22
**deadline (6)**
19:8,9;22:6;23:7;
27:12;77:2;97:22;
132:6
**deadlines (2)**
20:17;98:1
**deal (11)**
15:12;22:19;43:16;
63:20;92:4;104:4;
105:2;111:5,9,13;
130:24
**deals (2)**
53:17;63:21
**debate (1)**
19:24
**Debtor (46)**
3:22;14:11;15:3,6;
20:5,20;23:6,13;
25:15;26:4,20;31:15;
32:7;44:15;55:7;
58:16;70:13;73:24;
74:4,6;75:3;77:24;
78:17;81:22;88:3;
98:20;99:18;105:14,
16,22;119:5;123:15;
124:1;126:1,8,25;
127:3;128:11;
132:22,23;133:1;
134:17;135:3,6,14;
137:19
**Debtors (135)**
2:7,10,20;3:5,9,11,
14,16;4:6,10,11,17;
13:4,17;16:15;18:12;
19:1,25;20:12;25:17;
28:1,25;29:24;31:23;
32:11;37:16;42:16;
51:2,5,7;52:10;53:10,
14,20;54:21;55:8,17;
57:5;58:1,17;60:3,16,
22;61:12;63:11,15,
16,18;64:1,1,5,7,14,
22,25;66:2,10;68:2;
72:6,6,15;74:1,6,22;
75:17,21;82:4;83:24;
85:7;87:11;88:22;
90:24;94:9,12;99:2,5,
9,14;100:2;104:9;
106:24,24;112:5;
113:18;118:12,18,20,

23;119:7,14,21,24;
121:23;122:1,8;
123:9,18;124:8,25;
125:6,8,12,15,17;
131:2,17;132:4,5;
133:11,17,19,22,24;
134:4,10,13,14,19,20,
24;135:11,13,20;
136:1,5,19;137:1,3,
11,17,22;138:1,2,10,
11
**debtors' (53)**
15:5;35:5;47:18;
53:7;55:1;58:2;59:6,
9,9,10,11;60:8,18;
63:23;64:15;65:2,10;
74:2;75:2,2,12;80:22,
24;83:6;86:6;98:7;
101:23;102:7;103:6;
105:7;106:7;108:3;
111:22,23;113:1;
119:2;121:14;122:9;
123:7,19;124:18;
125:19;132:11;
133:25;134:3;
135:22,24;136:3,10,
23;137:14,23;139:6
**debtor's (7)**
44:17;126:16,21;
128:5;134:7;135:7,9
**Dec (1)**
129:6
**December (1)**
131:8
**DECHERT (1)**
7:19
**decide (9)**
32:25;43:24;61:3,
5,13;93:23,23;98:12;
99:24
**decided (8)**
19:21;91:4,6;
108:20,21,22;118:7;
122:10
**decides (1)**
82:1
**deciding (1)**
84:2
**Decision (16)**
3:21;29:24;30:1,5;
86:25;87:2,4;94:6,7,
24,25;95:17;131:16;
134:15,22;139:18
**decisions (3)**
66:21;129:19;
133:22
**decisis (2)**
125:13;134:13
**declarant (1)**
57:8
**declarants (5)**
56:13,15;58:8;
93:6;124:25

**declaration (42)**
40:5;57:7;64:6;
77:21,22,23;78:1,5,
10,12,14,15,16,20,21,
23,25;79:1,2,6,7,9,11,
12,13,16,20,21;
93:11,20;105:21;
110:20;113:6;
131:21;135:23;
136:7;137:4,6,8,15,
24;138:19
**declarations (13)**
28:5;56:12;57:3,5,
6,11,13;58:11;59:4;
110:21,22;112:20;
124:24
**decree (2)**
47:24;48:15
**deductible (1)**
138:6
**deemed (2)**
138:16,17
**defend (7)**
54:7;67:17;98:2,7;
118:24;119:10
**defendant (11)**
37:9;65:17;71:20;
97:13;105:15;
124:15;132:23,24,25;
136:13,15
**defendants (30)**
37:17;42:8;69:19;
70:12,22,24;72:19;
84:10,11;85:4;
101:25;102:9;
104:21;105:14;
106:14,20;107:4,16,
21;117:8,11,12,14;
124:16;131:9,13;
132:1;134:16;
137:18;138:1
**defendants' (1)**
131:15
**defending (2)**
36:10;119:24
**defense (23)**
39:19,19;40:10,15;
41:1,13,16,17,24;
42:24;43:11,19;
44:19;51:16,18;70:6,
20;71:11;72:15,20;
118:25;135:4;136:6
**Defenses (13)**
4:2;39:21;41:22;
42:2,5,6,20,23;43:3,
25;46:5;134:20;
135:10
**defer (2)**
29:18,19
**DEFILIPPO (79)**
9:24;83:18,18,21;
84:15,25;85:2;86:13;
93:3,4,9;94:4,7;

95:17;97:9,11,18,21;
98:10,13,18,22,25;
99:10,12,14,17,22;
100:3;103:8,11,16,
17;106:15,16,21,23;
107:15,16,19,22;
108:20;114:16,17,21,
24;115:21,23;116:1,
6,8,10,13,18,24;
117:5,8,12,17,19,21;
118:1,5,9,15,20;
120:1,16;121:1,4,6,
11,13,21;122:4,15,
17,21,23
**DeFilippo's (1)**
95:22
**defined (1)**
48:6
**definitive (1)**
19:16
**delayed (1)**
47:22
**deliver (1)**
88:21
**denied (1)**
131:24
**DENMAN (1)**
6:7
**Denver (1)**
33:17
**dependent (1)**
90:20
**depending (1)**
120:6
**depleted (1)**
125:20
**depletion (2)**
61:11;72:13
**deposition (1)**
137:8
**depositions (1)**
137:14
**depositor (3)**
25:15,25;26:3
**deprive (1)**
83:12
**derivative (2)**
121:16;134:9
**described (4)**
28:10,24;34:12;
114:15
**desire (3)**
20:23;30:25;92:4
**desires (1)**
92:6
**desirous (1)**
29:24
**despite (1)**
64:13
**detail (4)**
30:9;60:12;68:1;
137:4
**detailed (1)**

12-12020-mg   Doc 750   Filed 07/11/12   Entered 07/11/12 16:22:05   Main Document

RESIDENTIAL CAPITAL, LLC, et al. v.   Pg 150 of 167
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

59:3

**details (2)**
28:14,17

**determination (1)**
17:10

**determine (4)**
52:9,14,17;112:6

**determined (2)**
127:1;136:21

**determines (1)**
132:14

**determining (1)**
129:21

**detract (1)**
136:10

**DEUTSCH (1)**
9:19

**Deutsche (3)**
8:13,21;21:22

**devote (1)**
135:3

**devoted (1)**
127:7

**didn't (1)**
102:12

**differences (1)**
82:4

**different (10)**
22:22;64:10,10,11,
11,12,12;96:11;
114:13,14

**difficultly (1)**
98:1

**diligence (4)**
14:15;63:20;111:7,
10

**DIP (3)**
14:21,23,24

**direct (3)**
23:13;121:6;133:3

**directed (3)**
18:8;49:22;124:4

**Directing (1)**
4:17

**direction (7)**
17:1,6,21,23;
18:17;23:19;32:5

**Directors (17)**
2:10;59:9;68:3;
69:8,18;70:12;84:9,
13;94:2,11,16;107:3;
123:10,18;132:13,16;
134:8

**disadvantaged (1)**
134:18

**disagree (1)**
34:14;41:19;43:2;
128:17

**disappointed (3)**
26:23;82:1,2

**disc (1)**
97:22

**disclosures (1)**

92:2

**discovery (70)**
13:19;19:8;20:16;
32:1;62:12;63:16;
64:8,15;65:10,14;
67:3,4,6,16,18;
72:16,23;73:17;
74:10;84:22;85:3,5,
15,17,18;87:5,6,9,18,
22,23;88:16,21;
90:10,12,13;91:21,
24;97:23;99:2,8;
100:1,25;104:8,23,
24,25;108:23,24,25;
109:1,19;116:13,16,
17,18;124:4;125:16;
131:15,19;132:6;
136:24;137:1,5,10,
13,16,19;139:10

**discretion (1)**
98:6

**discuss (5)**
57:14;64:5;82:7;
125:23;137:25

**discussed (3)**
23:22;103:1;
136:24

**discussion (6)**
28:9;31:10;49:20;
68:21;101:19;120:18

**discussions (14)**
13:17;15:9;19:11;
26:10;28:2,9,12;
37:23;38:3;47:11;
52:19;81:19;86:20;
88:19

**disfavored (2)**
120:2,5

**dismiss (33)**
61:1,4,8,25;65:16,
23;66:7,20;67:21;
86:25;87:2,17;88:13,
15;89:25;90:4,16,24,
25;92:1,7,12;94:23,
24;100:24,24;101:1;
103:5;108:19;131:9,
16,20,22

**dismissal (6)**
48:1,4,8,10,21;
131:13

**dismissed (15)**
47:25;48:14,16,23;
58:19;84:16;88:20;
94:3,5,8;104:22;
107:6,7;123:21;
132:2

**dispenses (1)**
138:13

**dispute (4)**
23:15;53:19;91:3;
102:21

**disputed (1)**
70:4

**Disputes (1)**
4:16

**distribution (1)**
136:23

**district (8)**
52:5;63:12;66:21;
126:10,25;128:16,16;
130:8

**division (1)**
79:3

**Doc (4)**
2:19,23;3:2;73:15

**Doc# (8)**
2:6;3:5,9,14,19;
4:1,6,10

**docket (15)**
49:19;50:22;51:1;
59:5,14;77:23;78:12,
16,23;79:2,9,13,22;
105:21;123:11

**document (4)**
64:15;88:4;109:8;
118:11

**documentation (2)**
111:10;114:7

**documents (50)**
15:18;23:20;63:18,
20;64:11,15;65:10;
72:24,25;73:2,9,12,
15,18,20,25;74:3,11,
21,24;75:7,17;85:7;
87:10,12,25;88:2;
90:13;99:19;105:7;
108:3;109:6,15,16,
24;110:10;111:2;
112:24;114:11;
117:1;118:22;119:1,
6;121:20;122:3;
124:6,7;125:2;
133:14;139:11

**doesn't (1)**
100:15

**dollar (8)**
17:2;20:3;69:13,
13;119:15,22;138:6,8

**dollars (7)**
59:18,22;68:22;
69:17,23;120:22;
131:5

**dollars' (1)**
120:19

**done (6)**
21:2;25:4;65:13;
75:9;111:20;112:17

**doorstep (1)**
81:18

**doubt (2)**
117:7;118:4

**down (6)**
16:20;31:5;94:23,
25;100:5;114:5

**draft (2)**
53:10;139:13

**drain (1)**
63:23

**draw (1)**
104:9

**driven (1)**
20:22

**due (7)**
14:15;61:25;62:2;
63:20;65:16;111:7,9

**during (8)**
14:8;56:25;75:24;
85:22;102:2;124:23;
134:4;138:17

**duty (1)**
72:3

**E**

**E&O (8)**
68:6;69:6;70:1,4;
138:3,6,11;139:4

**Eagle (1)**
37:14

**earlier (6)**
30:19;79:18;99:1;
114:19,21,22

**early (2)**
28:20;114:23

**East (1)**
11:12

**easy (1)**
92:9

**ECF (15)**
44:23;50:22;51:1;
59:5,14;77:23;78:10,
12,16,23;79:2,9,13,
22;123:11

**Eckstein (13)**
13:22,25;14:1,2;
16:9,12,13;27:4,6,6,
15,17,19

**Eckstein's (1)**
13:12

**economic (1)**
126:15

**eDiscovery (1)**
114:8

**EDNY (1)**
133:8

**effect (7)**
33:19;34:11,24;
65:22;118:21;
120:21;132:25

**effective (1)**
132:16

**effort (5)**
66:18;112:14,23;
113:13;127:7

**efforts (2)**
27:25;60:8

**effortsand (1)**
128:6

**eg (2)**

126:12;134:16

**eight (1)**
120:20

**eighteen (8)**
58:17;60:25;61:7;
67:8;76:2,13;82:10;
101:25

**eighty (1)**
137:13

**either (13)**
19:17;21:1;22:7,
18;24:11;44:24;53:5;
95:16;111:16;119:4;
122:5,11;137:8

**elected (1)**
34:4

**electronic (5)**
24:8,20;111:10,16;
112:24

**Elise (1)**
54:1

**ELLENBERG (4)**
11:7;31:20,20;32:6

**ELLIS (2)**
6:11,19

**ELLSWORTH (3)**
9:11;85:25;89:20

**else (13)**
18:13;20:4;53:24;
54:11;55:24;56:20;
57:15;80:17;83:14;
97:19;99:25;103:8;
139:20

**e-mail (3)**
44:24;112:2;113:6

**e-mails (2)**
63:21;111:21

**embodied (1)**
102:16

**embodying (1)**
132:15

**employed (2)**
129:8;130:4

**employee (2)**
119:4,5

**employees (16)**
63:24,25;64:3;
69:8;72:24;112:4,15;
113:8,17;119:2,3;
134:3;137:15,17,20,
23

**employing (2)**
128:23;130:11

**enabling (1)**
28:7

**encouraging (1)**
23:24

**end (8)**
17:9;18:4;46:8;
66:10;69:14;90:8;
109:19;122:6

**endeavored (2)**
91:14;112:6

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
RESIDENTIAL CAPITAL, LLC, et al. v.    Pg 151 of 167    Case No. 12-12020(MG)
ALLSTATE INSURANCE COMPANY, et al.    July 10, 2012

ended (1)
98:14
energy (2)
127:6;130:6
enforce (1)
81:15
engaged (2)
33:15;51:8
enjoin (6)
95:21;117:14;
123:16;125:9;
126:20;128:3
enjoined (4)
116:20,21;127:6;
129:3
Enjoining (5)
2:9;58:3;84:4;
121:25;123:8
entail (1)
104:2
enter (2)
16:3;84:4
entered (8)
14:7;34:14;35:9;
36:17;46:9;50:25;
52:5;56:3
entire (2)
36:20;119:15
entirely (1)
58:20
entities (11)
25:15,20,25;26:3,5,
20;72:19;85:3;95:18;
105:22;107:20
entitled (10)
36:16;74:19,20;
120:4,14;135:12,14;
136:14,17,20
entity (4)
68:7;69:7;95:11;
138:7
entries (2)
113:9,11
Entry (5)
3:9,14;14:21;
47:21;48:3
envision (2)
97:25;116:23
equity (1)
127:14
erroneous (1)
42:4
eScribers (1)
4:21
escrow (1)
39:10
especially (1)
135:7
ESQ (22)
6:7,8,16,24,25;7:8,
16,24;8:8,9,17,25;
9:8,16,24,25;10:7,16,
23;11:7,15,24

essential (1)
85:7
Essentially (7)
55:12;95:8;113:8;
127:18;128:23;
133:13;139:6
establish (3)
133:11,14,16
established (5)
41:16;122:1;135:8,
12;136:19
establishing (2)
133:9,10
estate (10)
33:20;34:25;41:22;
54:8;119:11;120:21;
126:16;129:24;
133:25;138:3
estates (3)
60:8;125:19;
136:23
estates' (1)
60:11
estimate (1)
83:4
estimation (2)
28:4;122:11
estoppel (4)
121:23,24;125:13;
134:17
et (11)
2:3,4,13,14;7:12;
8:13,21;37:15;
123:13;124:12;
130:25
ETKIN (38)
7:16;56:16,18;
57:12,19;62:5,7,8,10,
16,18,21,25;78:3,3,9;
79:17;80:10,12;81:4,
5,12,13;82:5,12,19,
21;83:1,3,6,9;86:21;
87:7,13;89:1,3,10,12
evaluation (3)
38:3;66:16,23
even (7)
31:5,6;59:19;
66:25;67:2;84:11;
134:17
event (4)
25:23;55:8;115:8;
139:14
events (3)
77:6,7;126:7
everybody (8)
17:11;24:7,21;
29:22;61:23;97:19;
107:6;140:7
Eviction (1)
4:15
evidence (40)
51:9;57:5,7,11;
58:7,10,11;66:8;

69:15;77:19,20,22;
78:2,11,13,15,22,24;
79:1,8,10,12,20,22;
80:5,6,15,23,24;
93:18,21;112:18;
118:21;124:24;
125:2,3;133:23;
136:19;137:3;138:7
Evidentiary (9)
2:6;15:12;16:2,4;
29:23,25;56:7;
125:13;134:14
evolution (1)
130:17
examination (2)
58:9;92:24
examine (2)
92:21;129:20
examined (3)
57:2,18;128:17
examining (1)
56:21
example (3)
19:6;28:23;64:21
examples (1)
137:11
exceed (1)
53:4
Excellent (1)
13:8
except (1)
131:24
exceptions (1)
125:10
exchange (1)
19:4
exchanges (1)
19:14
exclude (1)
113:3
excuse (2)
24:17,25
excused (3)
46:18;89:13,14
execute (2)
26:9;34:4
executed (1)
33:18
exercise (1)
60:10
exhibit (7)
80:14;94:7;105:11;
116:19;131:21;
135:23;136:7
exhibits (12)
70:2;79:24,25;
80:6,11,14,23,24;
93:8,9,14,19
existed (1)
15:6
existing (2)
87:6;89:6
expect (4)

15:10,11;30:1;65:9
expense (3)
87:11;118:18;
137:1
Expenses (2)
4:18;53:7
expensive (2)
63:22;118:25
experienced (1)
82:8
expert (1)
116:17
experts (1)
19:9
expiration (1)
76:6
expires (1)
132:18
explain (8)
25:6;32:17;37:23;
38:6;40:7;87:22;
102:13;124:18
explained (3)
25:11;26:7;37:24
exposed (1)
125:12
expressed (4)
19:23;23:14,17,25
expressly (1)
23:3
Extend (20)
2:7;27:11;58:3;
76:21;77:6;81:15;
98:21;123:7;125:8;
126:11,24;127:9,25;
129:2,21;132:21;
133:6;134:23;139:6,
10
extending (4)
127:1,17;130:20;
136:25
extension (6)
58:15;60:3,13;
77:1,1;123:15
extensions (3)
124:20;135:16;
139:7
extensive (1)
37:22
extensively (1)
14:16
extent (15)
31:4;41:11;43:18;
46:4,11;47:13,14;
52:18;61:12,14,21;
71:19;73:16;95:19;
121:15
extremely (2)
63:22;117:9

**F**

F2d (2)

133:2;135:17
F3d (2)
125:22;126:12
face (9)
63:15;64:7,21,21,
22;116:10;125:15,
17;137:2
faced (1)
134:24
facie (1)
133:21
fact (19)
18:8;19:8;31:21;
51:2;64:13,16;65:11;
72:3;77:1;80:12;
97:22;99:18;102:9,
14;116:17;128:12;
132:6;133:12,15
factor (1)
136:25
factors (2)
72:7;129:20
facts (4)
14:16;64:12;
133:10,19
factual (6)
57:13;58:7;59:23;
60:16;66:13;135:9
failed (2)
86:1;131:11
fairly (2)
16:6;34:1
fairness (1)
31:4
faith (1)
51:8
fall (1)
138:21
falls (1)
137:19
family (1)
45:8
far (8)
36:17;47:10;62:25;
75:23;91:4;96:9;
99:7;109:25
Fargo (1)
7:3;21:22
fashion (1)
95:3
fast (2)
82:23;122:8
favor (3)
36:17;129:25;
130:1
favoring (1)
136:25
fax (1)
44:24
FD (1)
101:8
FDIC (10)
9:12;58:22,25;

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
RESIDENTIAL CAPITAL, LLC, et al. v.                    Pg 152 of 167                    Case No. 12-12020(MG)
ALLSTATE INSURANCE COMPANY, et al.                                                      July 10, 2012

85:25;87:15;88:12,
23;89:15;100:23;
101:14
**FDIC's (1)**
91:22
**Fed (2)**
3:6;128:14
**federal (6)**
33:17;37:17;52:12;
127:22;133:4;136:12
**fee (3)**
51:23;53:19;70:17
**feel (4)**
14:18;33:15,18;
44:2
**Fees (6)**
4:18;52:4,4,6;
53:17;54:15
**felt (1)**
14:14
**few (7)**
27:8;29:13;64:3;
75:22;82:23;102:6;
120:22
**FHFA (7)**
58:20;64:17,18,24,
25;65:7,11
**fifteen (3)**
82:13;92:16;
120:18
**Fifteenth (1)**
6:13
**Fifth (1)**
9:21
**fight (1)**
97:17
**fighting (1)**
108:2
**figure (2)**
43:21;57:1
**file (22)**
15:11;22:7,8;44:8,
15,17,22,25;45:1;
48:20;53:14;65:23;
67:11;75:11;87:17;
99:3;111:5,8,9,11;
113:8,19
**filed (46)**
2:21,23;3:2;13:5;
14:6;19:15;22:15;
30:22;35:17,24;36:1,
2,8,25;37:13;47:7,11,
21;48:7;50:5,11,21;
51:2,5,7;54:9;58:4,
22;61:18;62:3;63:6,
8;66:19;76:7;80:14;
87:15;89:6;92:7;
96:6;115:12,14,17;
123:12;131:1,9;
139:2
**files (3)**
63:18;65:1;73:13;
75:8;104:2,3,25;

105:1;111:13;112:8,
9,10;118:12
**filing (5)**
14:13;34:2;36:5;
39:11;51:4
**filings (1)**
65:5
**Final (7)**
4:6;49:15;50:22;
53:16;56:1,4;79:11
**finalizing (1)**
31:25
**finally (1)**
72:6
**Financial (20)**
6:12,20;37:14;
51:3,5;59:10;65:20;
68:13;70:9;72:14;
78:17;108:9,12;
119:4,15,17,19;
128:15;133:7;135:3
**Financial's (1)**
71:9
**find (5)**
26:24;39:5;113:19;
127:9;128:3
**finding (2)**
122:2;132:25
**findings (1)**
60:17
**fine (5)**
16:12;24:2;34:23;
88:7;100:8
**finish (1)**
106:25
**finite (1)**
102:18
**first (21)**
13:10,13;14:6;
16:16,21;32:12;33:7;
57:4;58:5;60:5,14,
15;76:21;77:21;
96:15;104:3;115:15;
119:3;121:18;
128:15;133:7
**first-day (1)**
50:25
**FITZGERALD (4)**
9:25;93:10,20;
131:20
**five (1)**
82:22
**five-minute (1)**
100:12
**floodgate-type (1)**
38:13
**Floor (1)**
9:5
**focus (2)**
68:6;69:6
**focuses (1)**
115:19
**Foerster (5)**

13:4;16:15;32:10;
37:22;58:1
**folks (1)**
73:4
**follow (1)**
69:3
**following (4)**
51:4;125:11;
131:19;134:22
**follows (1)**
125:5
**forced (2)**
39:14;135:1
**foreclose (1)**
98:20
**Foreclosure (35)**
4:15;36:2,7,10;
37:10,12;38:11,15;
39:11,19,21;40:11;
41:1,13,17,23,25;
42:6,24;43:3,12,19,
25;44:20;46:5;47:5,
19,22,23,24;48:15;
49:21;51:15,17,19
**foreclosures (1)**
42:3
**form (5)**
34:13;35:7;36:13;
111:10;124:24
**formal (1)**
19:4
**former (15)**
59:9;84:9,13;94:2,
4,5,11,16;107:3;
131:12;132:13,16;
134:3;137:14,17
**forth (9)**
30:13;40:15;60:12;
80:14;116:18;
123:23,24;137:4;
138:12
**forthcoming (1)**
26:2
**forward (35)**
25:6,9;28:6,8;32:7,
8;34:5;38:4;39:15;
61:11;67:6,10;76:19;
86:25;87:4,8;88:24;
91:1;92:23;98:11,21,
24;100:8,9,9,18,24;
101:1,1;103:5;104:7,
8;118:13;137:2,3
**found (3)**
120:12;126:10;
127:20
**foundation (1)**
60:19
**Four (16)**
19:20;21:9,16,21;
56:12,17;59:9;60:13;
72:7;81:13;86:22,22;
87:14;104:6;125:19;
129:20

**fourth (1)**
79:11
**frame (2)**
59:24;73:3
**Francisco (1)**
8:23
**Franklin (5)**
3:12;10:10,16;
47:20;48:3
**frankly (2)**
28:13,18
**fraud (3)**
120:1,2;131:3
**fraudulent (1)**
131:12
**FREJKA (3)**
54:1,1,4
**Friday (6)**
13:20;15:22;22:6,
16;44:21;45:1
**Friday's (1)**
13:20
**front (5)**
19:17;20:10;30:12;
79:25;105:13
**fronts (1)**
19:6
**fruitful (1)**
88:19
**frustrate (1)**
128:5
**full (4)**
29:19;30:7;52:24;
104:15
**full-blown (1)**
81:21
**fuller (1)**
31:10
**fullest (1)**
71:19
**fully (3)**
30:6;42:17;90:7
**Fund (2)**
59:1;129:5
**fundamental (1)**
135:24
**Funding (5)**
104:16;105:15;
106:7,9;124:12
**funds (1)**
127:5
**further (21)**
15:23;25:13;30:10;
31:6;35:9;43:13;
44:7,25;45:1;50:6;
51:21;55:23;80:21;
81:2;101:18;114:10;
116:21;122:25;
130:20;136:22;138:2

---

**G**

---

**GA (1)**

7:6
**game (3)**
17:13;66:10;
120:23
**GARRITY (3)**
8:17;29:3,5
**Gary (1)**
13:3
**Gas (1)**
130:6
**gathered (3)**
114:12,12,13
**gears (1)**
49:9
**general (4)**
55:14;89:3;127:13;
130:17
**generally (1)**
102:7
**generated (1)**
133:23
**Gerber (3)**
130:4
**gets (2)**
46:9;101:7
**given (3)**
17:24;18:21;38:14
**gives (1)**
47:17
**giving (2)**
14:3;89:7
**glad (1)**
89:9
**GLENN (2)**
7:24;21:19
**GMAC (13)**
25:19;36:2,8,8,25,
25;37:3,11,14;42:4;
47:12;59:11;106:7
**GMAC's (1)**
36:18
**goes (6)**
67:16,16;69:23;
97:11;98:11;137:2
**Good (17)**
13:2,3;14:1;16:14;
27:22;32:9;54:1,3,4,
12;57:25;69:14;
81:12;86:18;93:3;
118:6,10
**goodness (1)**
24:25
**GRAIS (3)**
9:11;85:25;89:19
**Grand (1)**
9:4
**Granite (1)**
128:8
**grant (2)**
66:25;76:24;95:3;
101:10;108:8,17;
125:6
**granted (8)**

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

47:8;49:18;52:23;
56:3;108:1,1;124:19;
131:17
**Granting (7)**
4:14;127:18;
128:18,24;129:9,17;
132:14
**grants (1)**
139:5
**GRAY (1)**
10:2
**greater (1)**
75:23
**grounds (3)**
84:17;107:11;
130:9
**Group (12)**
6:3;10:11;23:15,
16,16,24;37:14;
59:11;127:23;128:7,
15;134:2
**guarantors (1)**
126:18
**guess (5)**
42:18,18;56:6;
64:18;69:7
**guidelines (2)**
63:19;64:11

**H**

**hac (6)**
51:23;52:4,4,6;
54:15;55:2
**HAIMS (183)**
56:12;57:25;58:1,
12,24;59:16;61:9,21;
62:1,4,6,15,17;63:3,
5,8,9,10;64:20,25;
65:6,13,19,25;66:5,9;
67:14,25;68:8,10,13,
16,18,20,25;69:10,
20,22;70:8,15,23;
71:1,5,10,12,17,25;
72:2,12,17,22;73:7,
10,13,24;74:2,6,13,
16,18,24;75:6,10,16,
19;76:3,5,9,11,15,23;
77:3,10,17,19,21;
78:14,25;79:11,24;
80:3,9,20;81:1,9,10,
18;84:6,7;85:14,17,
21;86:12,18,19,20;
87:21,24;88:2,6,8,10,
12;89:23;90:18,22;
91:5;93:16;94:15,17,
20,22,25;95:24;96:3,
13,16,19;97:1,4,6;
99:1;100:22;101:4,6,
8,13,18,22;103:13,
14,19,20;104:1,11,
14,19,21;105:12,17,
20,24;106:2,4,6,13,

19;107:1,5,7,10,12,
17,25;108:6,10,13,
16,21,23;109:1,4,7,
10,13,18,21;110:1,3,
6,12,15,17,19;114:9,
14;119:19;122:24,
25;139:20,22;140:3,5
**Haims' (1)**
81:6
**half (3)**
29:14;83:7;115:23
**halt (1)**
127:4
**halting (1)**
127:18
**Hamilton (4)**
104:18,19,20;
124:13
**hand (3)**
25:8;64:3;122:13
**handled (1)**
114:7
**handling (2)**
39:18;47:11
**Hang (3)**
24:10;105:23;
110:17
**happen (1)**
20:9;66:15;87:18;
91:25
**happened (3)**
71:15,17;81:17
**happening (2)**
18:18;40:2
**happy (4)**
16:19;34:17;40:7;
50:7
**hard (3)**
38:12;76:25;84:3
**harm (6)**
72:8,9,11,12;
75:21;129:24
**harmless (1)**
71:20
**harms (2)**
129:16,25
**HARRISON (1)**
6:7
**hash (2)**
91:12;99:6
**hate (3)**
97:21;117:5,9
**Hathaway (1)**
9:3
**haul (1)**
113:23
**Hawaii (3)**
129:4;135:2;
137:21
**Health (1)**
129:1
**Healthcare (2)**
127:11;128:20

**hear (11)**
35:20;56:10,10;
64:18;67:23;73:5;
83:22;90:14;92:16;
95:2;106:16
**heard (19)**
15:1;22:24;28:15,
20;31:5;33:10;53:24;
54:11;55:24;66:7;
80:17;81:5,18;82:2,
13;103:8;108:20;
113:22;125:3
**Hearing (40)**
2:6;4:6,10;13:20;
15:12,14,22;16:2,4;
19:9;20:1,11,17;22:9,
14;23:7,23;25:7;
26:4;28:16;29:1,24;
30:1;32:17;34:15;
35:9;38:9;44:7;
49:15,20;51:21;
54:22;56:7;58:2,25;
78:11;81:21;88:24;
123:21;124:23
**hearings (1)**
55:3
**hearing's (2)**
16:4;45:18
**heart (1)**
15:4
**Heather (1)**
50:3
**heavily (1)**
22:11
**heavy (1)**
100:2
**Hegarty (1)**
33:17
**held (3)**
123:21;130:9;
136:14
**Hello (3)**
40:12;44:10,12
**help (6)**
28:22,25;29:12;
62:7;105:24;106:15
**helpful (2)**
28:7;49:12
**hereby (6)**
78:13,24;79:10,22;
80:24;93:20
**here's (4)**
22:3;34:7;43:6;
47:15
**HESSLER (1)**
6:25
**hi (1)**
35:23
**hinges (1)**
133:10
**historic (1)**
112:16
**hit (4)**

70:19;113:13,18;
119:23
**hitting (1)**
113:14
**Hoc (1)**
6:3
**hold (2)**
71:20;109:4
**holder (1)**
18:14
**holders (6)**
13:11;17:19;18:22;
23:15,17,25
**holding (2)**
30:20;110:8
**holds (2)**
18:6;133:3
**homeowners (1)**
54:7
**Honor (203)**
2:20;13:3,5,9,15,
20,23;14:1,5,10,18;
15:13,15,16,20;
16:13,14,16,19,21;
17:3;18:1,4,12,16;
19:1,20;20:12,19;
22:2,20;23:11;24:3,
5;25:5,11,17;27:3,6,19,
22,24;28:15;29:5,15,
16;30:6,11,12,18;
31:6,14,21;32:9,11;
33:2,5,9,23;34:17;
35:11,16;37:21;38:6,
22,24;39:8;40:3,6,18;
41:3;42:17;43:5;
45:4;46:16,23;47:3;
48:11,24;49:4,6,7,12,
13,15,18,20,22,25;
50:7,10,12,19;51:14;
52:7,19;54:1,12,20,
25;55:4,16,21;56:5,
12,16,22,24;57:12,
19,25;58:2,12;61:9,
22;62:5;63:1,12;
64:8;65:6,25;67:14;
68:2;73:14;75:19;
76:9;77:10,15;78:3;
79:17,24,25;80:12,
20;81:1,5,12,16;
82:13;83:1,18,22;
84:16,21;85:14,24;
86:12,13,18;88:15,
25;89:4,7,12,16;
90:22;93:3,5,16;94:4,
17,18;95:24;97:11,
18;98:5,13;99:10,17;
100:3,22;102:5;
103:1,12,17,20;
105:24;106:16;
107:1,5,17;109:13;
110:12;114:7;115:21;
118:9,16,20;120:2,

17;121:7,11,21;
122:4,11,18,21,25;
139:19,22;140:3
**Honorable (1)**
33:16
**Honor's (5)**
31:2;54:16;58:5;
93:12;99:2
**hope (4)**
13:20;29:6;31:25;
112:21
**hopeful (1)**
29:13
**hopefully (10)**
20:13;22:4,16;
34:15;35:4,8;45:11;
46:7;92:15,20
**hour (1)**
83:7
**housed (1)**
72:25
**human (2)**
63:23;79:3
**hundred (1)**
68:22,24,25;74:22

**I**

**Id (1)**
129:13
**identical (2)**
127:18;134:9
**identify (3)**
21:18;83:17;
111:12
**identity (3)**
60:6;63:11;132:22
**II (1)**
4:12
**III (1)**
4:14
**illegally (1)**
39:11
**illustrative (1)**
64:7
**ima (1)**
21:8
**immediate (4)**
30:1;12;59:11;
126:15
**immediately (1)**
131:19
**imminent (2)**
129:11,23
**impact (6)**
60:8;121:16,17,25;
135:5;137:22
**impacts (1)**
138:3
**impair (1)**
119:12
**impermissible (1)**
120:6

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
RESIDENTIAL CAPITAL, LLC, et al. v.    Pg 154 of 167    Case No. 12-12020(MG)
ALLSTATE INSURANCE COMPANY, et al.                                                July 10, 2012

**implementing (1)**
4:12

**implications (1)**
14:20

**important (4)**
13:16;14:18;18:5;
128:6

**importantly (1)**
16:21

**impose (3)**
22:10;91:24;98:14

**imposition (1)**
99:5

**impression (1)**
81:21

**inability (1)**
54:16

**Inc (8)**
9:3;68:13;106:8,9,
10;125:22;128:13,15

**incidentally (1)**
64:9

**inclined (1)**
67:6

**include (4)**
20:15;31:15;77:5;
121:10

**included (2)**
53:15;139:3

**including (9)**
18:13;37:17,18;
63:12;84:5;102:10,
22;127:19;135:19

**inconsistent (2)**
95:12;112:21

**increase (3)**
16:23;17:7;136:9

**increment (1)**
69:24

**incur (1)**
119:10

**incurred (2)**
67:17;70:18

**Indeed (1)**
128:2

**indemnification (16)**
119:20,25;120:4,5,
11,12,14,22;125:17;
135:11,13;136:11,15,
17,20,22

**indemnifications (1)**
136:4

**indemnified (1)**
70:15

**indemnify (4)**
71:19;72:3;135:21;
136:2

**indemnitees (1)**
136:6

**indemnity (5)**
68:3;71:5;120:2;
127:3;135:14

**independent (3)**

113:17;133:3;
134:20

**indicated (4)**
14:20;15:4;98:20;
114:25

**Individual (10)**
4:3;20:7;47:21;
55:1;72:19;84:8;
95:10;104:21;107:3;
137:18

**individually (1)**
86:21

**individuals (11)**
65:20;70:11;88:20;
95:18;101:22;
107:13,17,18,19;
112:7,11

**individuals' (1)**
95:14

**inextricably (2)**
117:2;128:11

**influenced (1)**
22:11

**inform (2)**
18:15;24:7

**informal (2)**
13:19;19:4

**information (7)**
19:4,13;24:19;
66:23,23;75:17;
113:19

**informed (1)**
94:9

**informing (1)**
16:23

**initial (5)**
58:18;59:14;76:17;
92:2;94:25

**initially (1)**
82:15

**initiated (1)**
47:18

**Injunction (39)**
2:7;58:3;66:25;
74:10;76:8;77:9;
95:3,5,7,11;96:15,21,
23,25;102:18,21;
103:4,12;105:4;
108:1,9,18;109:16;
115:12;123:21,22;
125:24;127:12,18;
128:6,18,19;129:12,
24;130:2,10,15,18,22

**injunctions (4)**
127:21;128:1,21;
129:2

**Injunctive (7)**
2:8;74:9;123:8;
128:24;129:9,17;
130:9

**inquiry (1)**
18:4

**insisting (1)**

88:20

**insofar (1)**
123:25

**instance (1)**
76:21

**instances (2)**
55:9;127:2

**instant (1)**
111:17

**institutional (1)**
16:24

**instructed (1)**
18:22

**instruction (1)**
23:20

**Insurance (18)**
2:4,14;11:3;39:9,
14;68:22;69:12;
86:16;93:19;104:15;
119:13,18;123:13;
124:11;125:20;
128:14;137:25;
138:22

**insured (2)**
68:12;139:1

**insureds (2)**
70:6,13

**insurer (4)**
70:1,2,4;138:11

**intend (4)**
25:6,12,14;66:11

**intent (1)**
131:12

**intention (1)**
80:4

**interest (3)**
63:11;129:17;
130:1

**interests (1)**
60:7

**interfacing (1)**
24:9

**interfere (1)**
126:21

**interim (4)**
14:7;49:19,24;
52:19

**International (1)**
126:12

**interwoven (1)**
128:11

**into (26)**
16:20;58:11;76:16;
77:22;78:2,11,13,14,
22,24,25;79:7,10,12,
20,22;80:4,5,15,23,
24;84:19;89:6;93:17,
21;138:7

**introduced (1)**
138:7

**Investment (2)**
59:2;62:11

**investors (2)**

16:24;59:7

**involve (4)**
15:17;59:19;61:11;
104:3

**involved (5)**
54:6;59:17;112:11,
13;137:12

**involves (3)**
15:2;64:10;103:23

**involving (2)**
124:17;126:8

**Ionosphere (1)**
128:13

**Ironworkers (1)**
129:5

**irreparable (5)**
72:8,11,12;129:12,
23

**issuance (6)**
59:6;60:18;123:19;
125:23;130:22;136:3

**Issue (40)**
3:20;23:2;28:13,
13,18,18,23,24;
29:13,18;51:2;52:2;
58:24;59:8,24;72:16,
18;73:23;74:7;76:2;
84:8,19;87:23;93:25;
96:23,23;97:12;98:9;
99:7,25;105:5;108:8;
111:13;118:18;
120:10;122:4,9;
127:12,14,21

**issued (5)**
63:16;95:5;128:21;
129:13;138:12

**issues (32)**
16:2,10;19:13;
20:7;22:22;23:22;
28:8,17;29:12,17;
44:2,18;56:2;57:14;
62:13;64:1,4;65:14;
66:14;67:7,7;82:9;
83:16,22;86:9;90:20;
91:7;93:24;110:6;
128:12;134:25;
139:17

**item (3)**
13:13;16:16;32:12

**items (1)**
33:4

**IV (1)**
4:16

**J**

**JAMES (3)**
8:17;78:15,23

**Janiczek (5)**
79:1,2,5,7,9

**January (3)**
116:15;122:7;
132:8

**Jeff (1)**
110:23

**Jeffrey (4)**
77:22;78:12;79:12,
21

**Jersey (3)**
58:25;87:3,5

**Joel (1)**
57:25

**JOHN (2)**
7:8;8:25

**Johns (2)**
134:6,16

**joined (1)**
131:7

**joining (1)**
75:20

**journal (1)**
48:3

**JR (1)**
8:17

**Judge (51)**
17:9,14;18:5;
19:21,23;20:10,22,
22;21:4;24:16,25;
25:2,14,16;26:1,10,
15,19,23;31:3,17,19;
43:21;58:20;64:23;
65:18;67:3;89:25;
92:3,6;101:10;115:2,
5,5,5,5,9,13,16;
128:17,20;129:1,7,7,
9,14,19;130:4,5,11,
16

**judges (5)**
61:5;115:2,7,10;
128:16

**judgment (13)**
36:17,18;42:7,11,
21;43:20;47:22,24;
48:15;127:14;
132:24,25;135:15

**judgments (2)**
68:4;136:4

**judicata (2)**
121:22,24

**judicial (1)**
47:18

**JUDSON (1)**
6:16

**July (32)**
14:12,17,22;22:5,
7;27:12,13,15;31:8,9;
44:4,8,18,22;45:2,7;
61:25;62:2,4,12,14,
16,22,24;63:3,6;65:5,
16,24;79:13,21;90:4

**June (10)**
47:23;48:4,5,7;
49:18;50:5,25;51:3;
131:1,22

**Junior (1)**
6:3

12-12020-mg   Doc 750   Filed 07/11/12   Entered 07/11/12 16:22:05   Main Document
RESIDENTIAL CAPITAL, LLC, et al. v.   Pg 155 of 167   Case No. 12-12020(MG)
ALLSTATE INSURANCE COMPANY, et al.   July 10, 2012

jurisdiction (8)
60:1;91:3,5;94:8;
107:9,11;131:14;
132:3
jurisdictional (1)
84:17
jury (1)
122:5
justify (1)
77:8

## K

KATHRYN (4)
9:16;85:11,24;
89:19
keep (2)
103:21;105:14
KEITH (1)
10:7
Ken (1)
35:23
Kenneth (6)
3:3;12:4;14:1;
27:6;35:17;37:11
key (3)
73:15;83:22;
137:23
KILPATRICK (1)
11:18
kind (1)
115:16
KIRKLAND (2)
6:11,19
KISSEL (1)
8:2
knowledge (3)
64:1;94:12;113:12
knows (1)
17:12
KOTWICK (1)
8:9
Kramer (3)
27:23;54:2;102:5

## L

label (1)
67:22
lack (3)
94:8;131:13;132:2
lacks (1)
91:3
language (3)
54:21;72:1;88:8
large (4)
23:15,16;104:3;
105:1
larger (1)
23:24
last (16)
13:5;14:16;16:22;
17:8;21:15;23:22;

31:21,22;32:3;55:6,
17;58:23;76:7;92:19;
109:22;110:4
lastly (1)
88:18
late (1)
13:5
later (5)
28:3;68:1;91:17;
129:20;133:23
launch (1)
100:1
law (18)
26:19;27:1,1;
39:11;40:10;41:12;
42:1;43:12,20,22,24;
44:20;46:6;52:12;
71:19;78:6;84:9;
128:12
laws (3)
133:5,22;136:12
lawsuit (5)
84:11,12;116:2;
135:20;139:2
lawsuits (5)
84:14;123:17;
133:24;134:3;137:5
lawyer (1)
82:8
lay (1)
81:17
LBA (1)
37:14
lead (3)
62:10;105:15;
134:4
learned (1)
119:2
least (10)
17:5;20:5;22:23;
31:8;32:4;66:11;
84:22;112:19;114:5;
128:16
leave (4)
43:21;73:19;77:5;
78:6
leaving (1)
25:8
LEDYARD (1)
10:19
LEE (7)
13:3,3,8,15;14:3,
20;15:3
left (1)
72:20
legacy (2)
25:8;113:12
legal (7)
58:6;59:23;60:16;
66:13;78:6;125:25;
135:10
legally (1)
26:13

Leland (1)
110:23
Lending (2)
41:21;42:23
length (1)
64:6
LEONARDO (1)
10:23
Less (2)
115:23;116:16
lessen (1)
104:5
letter (7)
14:24;70:2;138:12,
14,20,22;139:2
level (2)
63:19;111:18
Levin (3)
27:23;54:2;102:5
Lewis (6)
2:24,24;8:12,20;
46:22,24
Lewises (8)
47:2,12,19,21,24;
48:2,7,14
Lexington (1)
6:21
liabilities (1)
136:10
liability (17)
120:7,12,24;121:3,
6;122:1,10;133:10,
11,16,20;134:4,20;
135:8,10;136:11;
138:24
liable (2)
136:14,21
lien (5)
52:9,14,18;103:24;
104:3
liens (2)
103:25;104:1
Life (4)
93:19;104:15;
124:11;128:14
lift (9)
33:11;34:9;35:3;
40:14;42:15;45:25;
46:1,10;100:1
lifted (4)
36:12,20;40:16;
42:15
lifting (4)
34:11;42:14;46:3,4
light (3)
30:7;80:22;119:25
lights (1)
29:4
likelihood (2)
129:15,22
likely (3)
65:21;77:14;
118:15

likes (1)
29:16
likewise (2)
127:8;133:11
limitation (1)
84:19
limitations (15)
84:5;95:6,9,10,16,
20,23;96:23;102:8;
103:1,3,6;132:10,13,
17
Limited (15)
3:19;4:1,14;36:1,5;
54:9;55:3;60:1;
75:25;85:19;102:18;
118:22;119:1;
126:10;133:9
line (3)
92:20;104:9;138:3
lines (1)
131:21
linked (2)
22:25;23:3
links (1)
117:3
Lipps (30)
59:4;64:6;67:25;
77:22,24;78:1,5,10,
12;79:13,15,19,21;
105:21;110:19,21,23,
23,23;111:4,9;112:2,
10,21;113:3;114:1,4;
137:5,15,24
Lipps' (2)
137:3,8
list (3)
16:6;80:14;105:11
listed (1)
105:10
literally (1)
25:16
litigant (1)
41:21
litigants (1)
132:21
litigate (2)
134:25;135:1
litigating (1)
105:5
Litigation (6)
2:9;75:24;123:9;
126:6,7;137:23
Litigations (1)
4:14
litigators (2)
48:2,5
little (7)
30:10;80:13;86:3;
90:19;116:16;
134:21;137:17
live (4)
56:10;84:20;
134:15,21

LLC (15)
2:2,3,13,17;4:21;
37:11,14,14;78:18;
106:7,8;123:13;
124:12;127:23;
128:7;134:2
LLP (15)
6:2,11,19;7:2,19;
8:2,12,20;9:2,11,19;
10:2,19;11:2,18
loan (9)
36:13;52:13;63:19;
65:1;73:13;104:2,25;
105:1;118:12
loans (10)
25:16;59:18,21;
64:10;103:23,24;
106:8;116:2,10;
135:25
local (2)
39:18;52:12
long (7)
16:6;23:11;82:21;
87:10;92:10;97:11;
122:12
longer (2)
84:13;137:18
look (4)
19:8;45:10;97:16;
105:18
looking (5)
28:6;29:17;65:3;
66:10;105:13
looks (2)
37:1;69:12
Lori (3)
2:21;12:3;33:8
Los (1)
9:6
lose (1)
20:3
Loss (7)
4:12;52:22,25;
53:3;138:15,16,17
losses (2)
71:21;135:21;
136:2
lot (5)
13:16;28:3;30:14;
62:9;113:13
LOWENSTEIN (4)
7:11;62:8;78:3;
81:13
lower (1)
53:9
Ltd (1)
126:12
lunch (2)
83:11,12;93:25
Lyondell (3)
130:5,6,7

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
Pg 156 of 167

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

# M

**magistrate (1)**
33:17
**MAHER (1)**
9:19
**Maine (6)**
3:19,20,21;32:21,
23,24
**maintain (2)**
95:8,8
**majority (1)**
25:22
**makes (4)**
30:11,13;138:14,
20
**making (5)**
19:16,21;28:1;
61:19;99:4
**man (2)**
110:20,21
**managed (1)**
112:3
**Management (1)**
59:2
**managerial (1)**
135:3
**manner (1)**
25:6
**Manville (2)**
134:6,16
**many (9)**
16:7;17:24;19:19;
21:11;24:24;56:9;
69:23;77:24;104:2
**Mark (6)**
2:21;8:9;11:7,24;
31:20;33:8
**marked (1)**
80:1
**Market (2)**
8:22;10:12
**massive (3)**
67:19,19,23
**material (1)**
133:14
**materials (3)**
60:22;63:20,21
**matter (24)**
13:10,12,23;15:9,
17;19:24;30:20;
32:20;33:8;34:1;
35:15;39:18;40:7;
43:13;44:3;45:2;
46:15;47:11,12;
60:21;77:7;93:25;
112:7;115:9
**matters (11)**
16:6;19:5,12;30:8;
32:11;67:8;81:25;
115:7;125:7;137:17;
139:24

**MATTHEWS (31)**
9:16;85:11,11,24,
24;86:6,11;89:16,19,
19,21,23;90:3,7,10;
91:2,9,11,16,19,24;
92:6,8,15,19;93:1;
100:4,6,12;101:15,16
**may (59)**
15:20,23;16:2,21;
17:3;23:7,8;27:9;
28:22;31:5;43:16,20;
44:23;51:15;53:8;
56:22,24;57:14;
62:12;74:19,20,20;
75:11;77:23;78:12,
15,23;79:1,9;81:16;
82:1;87:16;89:12;
96:21;97:16;108:5,6;
111:21,21;116:6;
117:15;119:5,10;
120:6,13;126:7,11,
24;128:21;129:2;
132:21,23;134:18;
135:12,16;136:12,14;
139:10,15
**maybe (4)**
15:21;82:13,16;
84:7
**MBIA (4)**
11:3;31:21;64:5,8
**MBS (4)**
102:2;138:16,22;
139:4
**McHale (3)**
63:12;76:22;134:1
**McKeever (1)**
50:4
**mean (30)**
19:22;26:25;30:2;
39:24;40:14;42:20;
67:14;69:6;72:14;
84:2;90:23;95:2,7,13,
20,20;97:19;99:7,7;
107:14;112:8,18,19,
22;115:4,18;117:2;
118:12,17;121:25
**meaning (3)**
23:20;54:18;138:8
**meaningful (1)**
17:13
**means (2)**
23:21;85:5
**meantime (3)**
31:24;44:4;95:23
**mediation (1)**
35:4
**meet (1)**
130:14
**meeting (3)**
31:23,24;50:1
**meetings (1)**
51:12
**Mellon (3)**

**7:20;21:20,21**
**meltdown (2)**
21:1,2
**members (1)**
102:10
**mention (2)**
13:12;19:22
**mentioned (3)**
30:19;60:3;64:16
**merits (1)**
67:4
**messages (1)**
111:17
**MICHAEL (5)**
7:16;33:17;62:7;
78:3;81:12
**microphone (4)**
85:12;89:18;96:1;
110:18
**might (5)**
18:4;28:22,25;
90:25;135:15
**MILBURN (1)**
10:19
**million (16)**
53:1,4;68:22,24,
25;69:1,17,23;
116:10,11;119:15,17,
22;120:22;131:5;
138:6
**millions (1)**
137:13
**mind (3)**
23:7;28:13,18
**mindful (2)**
19:25;102:8
**minds (1)**
21:25
**minimum (1)**
66:15
**minutes (3)**
82:14,23;92:16
**miscommunication (1)**
81:16
**misreading (1)**
82:14
**misrepresentations (3)**
121:19;122:2;
131:11
**miss (2)**
113:13,18
**missed (1)**
53:22
**missing (1)**
113:14
**misstated (1)**
27:9
**misstatements (1)**
133:15
**Mitigation (4)**
4:12;52:22,25;53:3
**mo (1)**
94:22

**modifications (4)**
49:23;50:4;51:15;
53:15
**moment (3)**
30:3;72:16;81:19
**MONAHAN (9)**
11:15;54:12,13,20,
25;55:6,12,16,21
**monetary (17)**
36:11,17;40:9,25;
41:11;42:7,11,16,21;
43:20;46:2,12;51:16;
52:11,25;63:23;
72:22
**money (1)**
39:10
**Montgomery (2)**
36:3;37:10
**month (2)**
53:1,3
**months (3)**
67:12;75:22;
116:16
**moot (1)**
29:12
**more (20)**
17:5,19,19,20;
18:15,22;30:9;38:17;
39:10;59:17,20,21;
61:15;68:1;76:12;
86:7;129:8;130:11,
16;137:9
**MORGAN (2)**
8:12,20
**morning (16)**
13:2,3;14:1;15:23;
16:14;27:22;32:9;
54:1,3,4,12;57:25;
102:17;103:2,21;
115:13
**Morrison (5)**
13:4;16:15;32:10;
37:22;58:1
**Mortgage (14)**
37:11,14,15;39:9;
41:24;42:24;59:11;
63:18;64:10;79:3;
106:8,9,9;135:25
**mortgage-backed (6)**
59:6;60:19;63:17;
123:20;131:6;136:3
**mortgagee's (1)**
41:14
**most (10)**
16:21;21:14;25:21;
40:9;67:5;77:15;
115:7;118:15;
130:21;136:24
**Motion (136)**
2:6,7,7,19,23;3:2,5,
9,14,19;4:1,6,10;
13:11,13,16,19;14:4,
5,6,9,9,14,19,25,25;

**15:2,12,19,24;16:17,
22;19:5;20:15;26:2;
27:10,12;28:6,15,20;
30:22;31:4,23;32:12,
15,16,18,21;33:11,11;
34:9;35:16,24;38:6,
8;44:2;46:21,21;
47:3,4,7;49:10,16,19;
50:13;51:21;53:14;
54:22;56:3;58:2,6,7,
13,14,17,22;59:4,24;
61:12,14;62:18;
64:16;67:20;76:17;
77:12;81:15,20;
86:23,25;87:2,17,19;
88:13,14,14;89:25;
90:3,7,15,16,24,24;
92:1,4,7,10,12,13;
94:22,24;96:6;97:1;
98:9;99:3,11,15;
100:23,24;101:1,9,
10;107:7;113:22;
115:12,13,16;123:7,
11,15,22;124:3,18;
131:8,15;132:3;
139:6,6
**motions (26)**
33:5;52:17;55:9;
61:1,3,3,4,8,17,19,20,
24;65:15,23;66:6,9,
20;67:2,10;103:5;
108:19;118:7;131:9,
16,20,22
**Movants (2)**
2:20;33:6
**move (10)**
28:7;31:6,7;32:8;
46:14;64:17;93:7,8,
9;118:13
**moved (5)**
13:23;27:13;48:17;
67:12;131:13
**movement (1)**
103:9
**moving (8)**
32:5,11;34:5;
59:14;60:12;64:6;
95:1;129:25
**Mrs (3)**
35:1,14;46:24
**much (18)**
15:4;28:14;30:17;
35:11;68:15;69:21;
82:6,10,13;83:5;
86:12;89:11,12;
101:17;103:7;116:4;
122:22;140:6
**MUNGER (1)**
9:2
**MUNVES (2)**
11:10;54:13
**must (7)**
116:13;128:3;

12-12020-mg   Doc 750   Filed 07/11/12   Entered 07/11/12 16:22:05   Main Document
Pg 157 of 167

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

129:11,14,20;130:14;
133:5
**mute (2)**
24:12,14
**myself (3)**
35:25;36:3,4

## N

**NA (1)**
7:3
**NACBA (5)**
11:11;32:12,16;
50:1;55:7
**name (4)**
57:25;89:18;
104:12,15
**named (6)**
68:11;69:19;70:12;
84:9,13;105:22
**namely (1)**
125:19
**names (1)**
106:7
**National (3)**
8:3;50:2;54:14
**Nationstar (3)**
20:4,5;25:10
**Nationwide (1)**
37:14
**nature (1)**
61:17
**NDAs (1)**
24:24
**necessary (9)**
16:3,11;22:19;
34:16;40:6;86:8;
105:5;127:15;128:21
**necessity (1)**
44:7
**need (24)**
15:11,14;16:1,9;
19:3,15;23:12;31:5,9,
10;55:25,25;76:20;
82:6,11;83:23;93:5,7,
8,9;99:14,19;100:10;
130:10
**needed (1)**
128:19
**needs (2)**
20:23,25
**negative (1)**
137:22
**negligence-based (2)**
120:10;136:14
**negotiating (1)**
110:7
**net (1)**
53:7
**Nevada (1)**
130:2
**New (19)**
4:23;6:5,22;7:14,

20,22;8:6,15;9:14,22;
10:5,21;11:13;21:20,
21;58:25;67:11;87:3,
4
**news (1)**
115:15
**next (12)**
31:24;32:20;33:4;
35:15,16;46:15,21;
49:11;67:12;79:24;
92:16;122:17
**night (3)**
13:5;58:23;76:7
**nine (1)**
116:16
**ninety-five (1)**
116:11
**non (1)**
126:25
**nonaffiliate (1)**
106:14
**nonaffiliated (2)**
85:3;116:3
**Nonaffiliates (1)**
106:21
**nondebtor (46)**
58:4;60:10,20;
61:18;64:2;65:11,17,
23;66:5,12;67:11;
71:20,24;72:19;
75:20;97:13;104:22;
106:12;116:25;
117:12,14;119:5;
123:10,18;124:5,5,
14;126:6,15;127:4,6;
128:4;129:13;131:2,
18,23;132:9,21;
133:4,7;134:16;
135:8,14,21;136:2;
138:1
**Non-Debtor (1)**
2:10
**nondebtors (18)**
60:7,16;63:11,13,
14;74:9,11;87:6;
106:22;126:5,11,14;
127:10,19;128:25;
129:3;133:10;134:13
**none (4)**
38:4;70:19;71:15,
17
**nonetheless (1)**
136:9
**non-ResCap (3)**
116:11;117:3,18
**Nor (3)**
119:1,12,14
**Nora (11)**
50:11,13,14,16,17,
20,21,23;51:1,7,8
**Nora's (1)**
51:4
**Nordbank (1)**

11:19
**Norm (1)**
32:9
**normally (2)**
126:14;128:1
**note (6)**
31:3;47:1,4;78:4,8;
130:7
**noted (5)**
14:23;48:1;125:10;
129:1,14
**Noteholders (2)**
6:3;10:3
**notes (3)**
49:13;65:3;139:2
**Notice (2)**
2:7;35:10
**notices (1)**
19:14
**noting (2)**
130:13,15
**notwithstanding (2)**
26:25;105:1
**November (7)**
20:1;23:7;28:16;
29:1,10,11,25
**nucleus (1)**
133:19
**number (26)**
16:23;17:3,7;
24:17;33:7;38:2;
48:4;49:19;50:22;
51:1;77:23;78:10,13,
16,24;79:2,10,14,22;
105:10,21;121:1;
123:11,14;124:12;
137:12
**numbers (2)**
59:5;69:16
**numerous (1)**
37:17
**NW (3)**
6:13;11:4,20
**NY (5)**
4:23;6:5,22;7:14,
22;8:6,15;9:14,22;
10:5,21;11:13
**Nygard (1)**
126:12

## O

**object (6)**
26:24;38:9;54:21;
80:7;101:23;102:3
**objected (1)**
84:23
**objection (23)**
19:9;20:17;32:14;
33:23;50:11,13,17,
21,21,24;51:1,4,10;
52:11,13;53:18;54:9;
78:1,4;79:17;122:12;

125:2;130:24
**objections (17)**
26:22;30:22,24;
50:8,17;52:8,16;57:3,
6,10,12;78:19;79:5,
15;80:10;93:14;
131:7
**objectors (2)**
57:18;80:8;83:13,
15
**obligated (2)**
136:1,5
**obligation (2)**
25:24;113:22
**Obligations (6)**
2:20;25:10,23;
28:25;68:3;136:8
**obliterate (1)**
38:12
**observation (1)**
55:14
**observed (3)**
14:10;128:20,23
**observes (1)**
130:20
**Observing (1)**
130:8
**obtain (3)**
60:10;72:7;118:11
**obviously (8)**
13:15;23:6;42:20,
22;66:13;67:9;82:9;
100:17
**o'clock (3)**
22:6,16;45:23
**October (22)**
58:19;76:4,12,13;
77:11,13,14;85:21;
90:8,16;91:7,25;
92:12;101:2,5,13;
102:19,20;108:9;
116:21;124:1;139:9
**of-counsel (1)**
110:24
**off (3)**
24:13;31:1;101:2
**offer (9)**
57:5;58:11;77:20,
21;78:14,25;79:12;
80:4,5
**offered (7)**
57:4,7;61:9,14,21;
124:24;125:1
**offering (4)**
60:22;121:19;
122:3;133:14
**offerings (4)**
75:9;115:20,23;
117:20
**offers (1)**
137:9
**Office (1)**
50:3

**officer (2)**
78:17;79:3;132:1
**Officers (20)**
2:10;59:9;68:3;
69:7,8,18;70:12;84:9,
13;94:2,11,16;107:4;
123:10,18;131:12,12;
132:13,16;134:8
**official (1)**
14:2
**offset (1)**
36:18
**offsets (1)**
36:16
**often (1)**
81:24
**Ohio (32)**
47:20;48:4,6;65:5;
84:25;85:2;94:9;
96:7,8,10;98:1;
104:16,16;115:3;
117:23;121:2,5,12,
13;122:12;124:13;
131:1,1,4,9,16,18,22;
132:1,6,7,20
**OLSON (1)**
9:2
**omissions (1)**
121:19;122:3;
133:15
**omnibus (1)**
16:5
**once (4)**
117:15,25;118:2,3
**One (74)**
7:4;8:5,22;13:12;
17:5,18,20;18:25;
19:23,25;21:4,8,13,
14,20;22:10,20;
23:12;25:8;26:14;
29:12,17;30:18;33:7;
34:18;35:2,6;37:22;
38:1,18;39:7;40:1,15,
17;42:13;44:18;45:4;
46:7;47:5;49:7;52:4;
55:25;61:24;62:2;
65:20;66:9;80:3;
82:24;83:22;84:20;
85:15;95:3;97:7,8;
98:25;101:18;102:9;
103:22;104:4,4,7;
105:2,2;109:1;110:6;
111:14;119:22;
123:23;125:12;
128:13;129:4;
130:16;138:4,16
**O'NEILL (5)**
102:5,5,14,25;
103:4
**ones (2)**
43:24;61:7
**ongoing (3)**
13:18;14:16;26:10

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
Pg 158 of 167

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

**only (38)**
24:5;36:6,9;37:1;
41:15;43:18;46:2,4;
47:12;51:18;54:25;
58:24;60:2;62:14;
65:7;75:22;82:7;
84:21;96:7;97:12;
104:2,22;106:11;
107:25;108:7,8;
111:14;117:14,15;
118:3;124:6,9,14;
126:14;128:21;
132:16;133:20;
139:11
**open (2)**
47:12;98:14
**opening (1)**
81:6
**operating (4)**
71:13;72:5;135:18,
20
**operations (3)**
15:5;71:22;135:22
**operations@escribersnet (1)**
4:25
**opinion (4)**
36:19;39:17;
129:20;139:14
**opportunity (4)**
14:3;90:1,11;
134:19
**oppose (4)**
47:3,13,14;83:25
**opposed (1)**
112:19
**opposing (1)**
61:19
**opposition (3)**
40:14;44:1;137:9
**opt-in (1)**
19:9
**oral (3)**
62:21,23;139:14
**orally (1)**
38:8
**Order (55)**
3:10,15;4:11;14:7,
21,23;16:3;33:2;
34:11,13;35:7,9;
37:24;38:5,11;40:24,
25;41:2;43:18;44:6;
46:9,10;47:9;48:1,
11;49:1,2,3,3,5,24;
50:5,7,23;52:4,21;
53:10,12,16,16,25;
54:19;55:10,13;56:1,
4;76:7;84:4;95:16;
116:22;127:14;
132:15;139:13,15;
140:1
**orders (1)**
50:25
**Ordinary (1)**

4:8
**Org (1)**
127:11
**organization (2)**
112:3;128:20
**organizational (1)**
59:13
**original (1)**
59:17,18,21
**originally (2)**
17:4;123:17
**originate (1)**
136:1
**originated (2)**
116:2;138:17
**origination (1)**
52:13
**originators (1)**
116:1
**others (4)**
23:13;25:2;38:4;
116:2
**otherwi (1)**
90:22
**otherwise (7)**
18:7;23:3;44:8;
53:8;94:13;97:25;
127:7
**ought (4)**
22:25;30:5;95:21;
100:10
**ours (1)**
89:6
**out (28)**
19:24;43:21;45:7,
12;53:23;54:18;
55:25;57:1;59:24;
60:22;69:16;71:2,21;
73:19;74:8,14;84:16;
89:4,8,9;91:12;99:6;
108:12;110:25;
119:11,17;127:15;
128:22
**outbids (1)**
20:5
**outline (3)**
16:10;50:7;51:11
**Outlook (4)**
111:21;112:2,4;
113:4
**out-of-pocket (1)**
53:7
**outside (1)**
77:24
**outstanding (1)**
110:11
**over (9)**
13:9;14:16;60:11;
67:11;91:3;94:9;
108:2,3,5
**overall (2)**
24:1;136:10
**overruled (1)**

51:10
**overtake (1)**
77:7
**overtaxed (2)**
63:24;73:4
**overview (2)**
58:5,13
**overwhelming (1)**
63:16
**own (5)**
23:22;90:13;
118:24;119:4;134:20
**owned (1)**
114:6

**P**

**page (2)**
105:21;131:21
**pages (1)**
137:13
**paper (1)**
112:24
**papers (12)**
24:12;48:14;59:4,
14;60:12;62:18,23,
25;64:6,16;83:25;
95:1
**paragraph (4)**
105:22;126:3;
130:19,23
**paragraphs (3)**
137:6,15,24
**Pardon (1)**
106:16
**parent (6)**
15:3,7;59:11,11;
68:13;118:24
**Park (2)**
8:5,14
**part (12)**
26:9;31:16;40:9;
47:5;85:6;92:9;
113:1;116:2;
122:11;131:17;
133:16;135:24
**partially (1)**
33:18
**participate (5)**
45:11,16;91:12;
100:11;113:22
**participating (1)**
45:10
**participation (1)**
54:22
**particular (4)**
17:2;19:13;27:9;
111:13
**particularly (2)**
43:23;67:12
**parties (45)**
18:16;20:20;22:8;
24:17;25:18,18;29:9;

32:16;33:18,24;34:8,
14;51:15;58:17;60:3;
64:21;65:9;77:1,11;
80:13;81:24;82:16;
84:22;85:8;90:4;
91:21;92:2;94:11;
96:9;102:20,22,22;
110:7;117:22;
124:10,25;126:6,18;
129:9,18,22;130:21;
139:9,13,15
**parties' (1)**
54:22
**parties-in-interest (2)**
29:8;49:22
**partner (2)**
27:8,20
**Partners (1)**
128:8
**parts (1)**
16:21
**party (13)**
18:16;26:14;51:20;
84:22;95:5;127:2,4;
128:25;129:25;
132:23,24;133:3;
135:14
**pass (1)**
27:4
**PAUL (3)**
9:24;83:18;93:3
**Pause (2)**
107:2,23
**pausing (1)**
66:6
**Pay (3)**
4:17;72:15;99:20;
118:24;119:18;136:6
**payable (1)**
70:18
**paying (3)**
70:20;71:8;72:3
**payment (2)**
53:17,20
**payments (1)**
14:8
**pays (1)**
119:17
**PC (3)**
7:11;10:10;11:10
**Peachtree (1)**
7:5
**Pending (21)**
2:9;3:21;37:10,12;
38:15;47:5;61:1,8,
12;66:22;70:7;84:24;
90:10;94:3;97:4;
108:19;118:7;123:6,
9;130:25;131:16
**Penina (1)**
4:20
**Pennsylvania (15)**
36:3;37:11;40:10;

41:12,15;42:1;43:4,
11,12,19,21,22,24;
44:20;46:6
**Pension (1)**
129:5
**people (11)**
17:12;19:23;20:6;
56:8;77:6;84:16;
112:13;113:14,15,15;
114:8
**per (5)**
53:1,3;68:20,21,22
**percent (6)**
17:5,19;18:7,14,
21;74:22
**Perform (1)**
4:7
**performance (1)**
63:19
**perhaps (9)**
16:21;20:13;29:10;
38:18;86:3;88:23;
92:1,19;119:5
**period (8)**
75:25;88:16,16;
102:2;122:6;132:10,
18;138:14
**periods (1)**
83:23
**permanent (1)**
97:24
**permission (8)**
20:11;31:2;58:5;
64:17;80:5;81:5;
99:2;115:1
**Permit (7)**
3:20;4:2,15;42:15;
46:1,11;98:14
**permitted (6)**
14:7;38:4;71:19;
90:12;118:10;124:3
**person (2)**
121:3,14
**personal (4)**
94:8;107:11;
131:14;132:2
**perspective (1)**
82:12
**persuade (1)**
76:20
**persuaded (1)**
66:25
**pertained (1)**
132:4
**pertaining (1)**
30:21
**pertinent (1)**
66:22
**petition (2)**
55:18;112:13
**Philip (3)**
27:8,20,23
**phone (13)**

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document

RESIDENTIAL CAPITAL, LLC, et al. v.                    Pg 159 of 167                    Case No. 12-12020(MG)
ALLSTATE INSURANCE COMPANY, et al.                                                                July 10, 2012

24:11,13,14;33:7,
9;35:19;45:10,11,16;
46:25;50:15;91:11;
114:19
**phones (1)**
24:11
**Piccinin (1)**
133:2
**pick (1)**
72:20
**picking (1)**
69:16
**picture (2)**
69:11,12
**piece (5)**
18:25;30:25;31:15;
117:3,3
**pieces (1)**
31:11
**Place (8)**
7:12;59:2;62:11,
19;86:24;99:8;
132:11;139:8
**placed (1)**
39:14
**plaintiff (1)**
135:19
**Plaintiffs (15)**
3:19,22;32:21;
62:10,11;64:14;
75:23;81:13;98:23;
119:8;130:25;
133:13,20,25;134:11
**Plan (8)**
3:11,16;60:1;
66:12;73:3;76:25;
77:13;97:25
**planned (1)**
91:13
**play (1)**
98:2
**playing (1)**
29:3
**Plaza (1)**
8:5
**plead (1)**
131:11
**pleading (2)**
14:13;15:11
**pleadings (4)**
62:3;67:2,10,11
**Pleas (3)**
47:20;104:20;
124:13
**Please (9)**
13:2;17:17;24:14;
31:20;57:24;86:15;
100:21;116:9;123:5
**pleased (2)**
49:25;52:24
**pleases (1)**
93:6
**plus (1)**

120:19
**pm (10)**
44:18,21;45:1;
86:14,14;100:20,20;
123:4,4;140:8
**pocket (1)**
119:17
**podium (2)**
13:9;27:4
**point (38)**
15:8,20;19:24;
20:22;23:1,12;24:23;
26:2,8;28:16;34:4,
18;41:7,10;42:19,21;
53:23;55:6,17;59:24;
69:24;72:22;74:2;
75:2,3,13;80:18;
90:23;91:2,10;98:17;
101:23;111:1;115:1;
120:5;122:19,20;
124:5
**points (3)**
19:7;24:6;54:15
**policies (7)**
70:5,9,14;119:16;
125:20;137:25;
138:15
**policy (23)**
68:6,9,15;69:1,2,2,
6,13;70:1,4,20;72:9;
136:13;138:3,6,8,8,
14,18,18,22,24;139:4
**pooling (2)**
25:18,22
**portion (2)**
30:23;32:17
**posed (1)**
82:15
**position (7)**
37:2;40:8;41:2;
72:15;98:4;118:13;
138:13
**possession (22)**
36:22;60:10;64:16;
65:2,10;73:19;74:1,
12,22;88:1;105:8;
108:4;109:6;110:10;
112:5,25;113:1;
114:2,11;124:7,7;
139:12
**possibility (1)**
82:3
**possible (3)**
26:14;76:25;77:9
**post- (1)**
55:17
**post-petition (2)**
71:15,17
**posture (1)**
59:3
**potential (1)**
135:5
**potentially (3)**

20:3;69:18;120:20
**power (4)**
98:5;126:20;127:9;
130:2
**powers (1)**
127:14
**practice (1)**
124:3
**Practices (1)**
42:1
**pre- (1)**
112:12
**pre-bankruptcy (1)**
70:17
**precise (1)**
126:23
**preclude (1)**
18:18
**preface (1)**
70:8
**prefer (4)**
41:3;117:23;118:1,
3
**pre-hearing (1)**
76:16
**prejudice (4)**
60:17;125:14;
132:2;134:14
**Preliminary (8)**
2:6;95:3;108:8;
115:12;125:24;
129:12;130:17;
138:12
**prepare (1)**
34:10
**prepared (8)**
39:15;60:22;67:9;
74:8,13;93:11;
122:17;132:15
**Prepetition (1)**
2:20
**pre-petition (1)**
15:5
**preponderance (1)**
136:19
**PRESENT (9)**
12:2;20:20;21:5,7,
10;22:4;23:23;94:2;
124:25
**presented (3)**
60:25;122:5;
123:24
**presenting (1)**
128:12
**presents (1)**
66:13
**preserving (1)**
54:7
**presume (1)**
83:24
**Pre-trial (1)**
2:15
**pretty (2)**

29:19;98:19
**prevail (1)**
121:18
**prevailed (2)**
120:3,13
**prevails (1)**
136:15
**prevent (1)**
135:2
**previously (4)**
30:22;53:12;115:4;
128:2
**prima (1)**
133:21
**primarily (1)**
67:17
**primary (3)**
60:13;69:2;138:11
**Princi (36)**
13:10;16:14,14,19;
17:17,22;18:1,3,10,
12,20,24;19:20;21:8,
10;22:3,25;23:21;
24:4,5,15,16,25;25:4;
26:12,15,18,23;
28:10,23;29:7;30:6,
18;31:12,14,19
**principal (4)**
29:17;59:19,21;
68:11
**principally (2)**
71:21;75:16
**principle (1)**
133:9
**Princi's (1)**
27:24
**prior (4)**
28:16;34:2;49:20;
126:1
**priority (2)**
52:10,18
**private (1)**
75:24
**Pro (15)**
12:3,4;34:10;
35:17,25;36:4;37:6;
40:22;41:20;51:23;
52:4,4,6;54:15;55:2
**probably (7)**
14:10;17:25;34:18;
108:9;111:18;
117:23;118:1
**problem (6)**
39:4;40:17;54:24;
84:15;85:5;97:10
**problems (1)**
84:19
**procedural (2)**
26:8;59:3
**Procedure (1)**
127:22
**Procedures (3)**
4:13;16:3;41:22

**Proceed (31)**
4:16;35:2,5;36:6,
10,14,19;38:1,21;
41:11,13;42:16,19;
43:7,15,15,18;46:2,
11;47:6;72:21;82:24;
91:10;92:22;93:11;
95:22;98:3;116:24;
124:4;133:17;139:11
**proceeding (14)**
2:3,13;47:6,19;
53:21;80:16;86:17;
94:13;101:2;116:20,
22,23;123:12,14
**proceeding' (1)**
128:13
**Proceedings (8)**
4:15;38:11;49:22;
52:17;125:25;
136:18;138:25;140:8
**proceeds (5)**
20:4;73:17;118:19;
137:25;138:9
**process (18)**
19:3;24:1;28:19,
21,22;30:12,12;
53:18;54:6;80:13;
110:25;113:21;
122:11,12;127:14;
129:4,10,11
**produce (14)**
63:21;73:1,18,22;
74:3,11;87:11,25;
99:5,20;112:24;
114:11;119:1;124:6
**produced (6)**
105:7;109:6,16,25;
124:8;137:13
**production (8)**
88:13;105:4,6;
108:3;109:24;110:8;
118:11;119:6
**productive (2)**
28:1;31:22
**Products (1)**
106:9
**proffer (2)**
58:7,10
**Programs (1)**
4:12
**progress (13)**
13:21;16:20,20;
17:13,14;18:25;19:6,
16,21,22;24:6;84:4;
100:23
**prohibited (2)**
120:11,13
**promising (1)**
86:2
**promptly (1)**
44:25
**pronounce (1)**
133:1

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document

RESIDENTIAL CAPITAL, LLC, et al. v.                    Pg 160 of 167                    Case No. 12-12020(MG)
ALLSTATE INSURANCE COMPANY, et al.                                                      July 10, 2012

**proof (2)**
52:14;127:25
**proofs (2)**
52:9,16
**proper (2)**
43:25;44:19
**property (6)**
36:22;39:9;52:18;
60:11;125:19;138:3
**propose (2)**
66:11;91:9
**proposed (24)**
13:4;14:2;22:7,9,
15,17,18;23:3,9;30:2,
3;31:16;32:10;34:10;
35:7;49:3,3,5;50:22;
56:4;58:1;60:24;
66:16;139:13
**proposing (1)**
28:14
**propriety (1)**
102:21
**prosecute (2)**
75:24;85:8
**Prosecution (3)**
2:9;123:9,16
**prospective (1)**
137:16
**prospectuses (1)**
121:15
**protect (2)**
126:4,6
**Protection (1)**
42:1
**prove (1)**
133:20
**provide (11)**
17:21;66:12,22;
85:7;95:18;114:10;
124:2,2;131:19;
132:15,19
**provided (7)**
17:23;18:17;80:7;
120:15;128:10;
131:25;137:11
**provides (10)**
30:4;40:25;68:7;
69:6,7;71:14,18;
125:25;127:13;138:7
**providing (2)**
16:25;17:6
**provision (6)**
53:16;55:25;71:12,
18;84:5,18
**provisions (7)**
25:21;94:10;121:1,
7;127:15;128:22;
133:6
**prudent (1)**
135:3
**public (4)**
72:9;129:17;130:1;
136:13

**purchase (1)**
136:1
**pure (1)**
137:9
**Purely (1)**
72:22
**purpose (2)**
55:3;95:7
**purposes (4)**
34:12;35:4;78:11;
120:17
**Pursuant (10)**
3:5;24:18;26:2;
58:14;60:6,9;94:6;
127:17;136:9;138:15
**put (16)**
23:2;24:11,14;
31:1,12,14;43:17;
59:16;72:16;73:22;
90:15;91:6;101:2;
109:21;110:3;137:3
**put-back (4)**
25:8,23;28:4;
120:20
**putting (2)**
67:22;73:23

## Q

**quarter (2)**
100:14,19
**Queenie (1)**
126:12
**quick (1)**
28:19
**quiet (1)**
36:21
**Quigley (1)**
125:22
**quite (2)**
14:16;28:19
**quo (1)**
95:8
**quote (1)**
71:18
**quoting (1)**
128:8

## R

**racketeering (1)**
51:8
**raise (2)**
122:20;134:20
**raised (4)**
64:2;65:7;69:24;
93:25
**range (1)**
83:7
**rattling (1)**
24:12,12
**RAY (1)**
6:24

**RBS (1)**
115:20
**RE (20)**
2:6;3:5,9,14;4:6;
62:14;125:22;
127:10,22,24;128:7,
13,19;129:1;130:2,7;
133:7;134:1,6;135:6
**reach (4)**
15:18;43:14;44:5;
50:4
**reached (4)**
87:13;89:24;
114:10;124:10
**read (3)**
21:25;63:4;71:23
**reading (1)**
106:25
**ready (1)**
65:23
**real (4)**
29:8,9;41:22;
132:23
**realistic (2)**
82:3,9
**reality (1)**
134:8
**really (8)**
21:2;32:4,13,13;
53:6;91:22,25;
118:13
**reason (5)**
51:10;65:7;66:4,6;
82:18
**reasonable (1)**
129:15
**reasonableness (1)**
53:19
**reasoned (1)**
128:2
**reasons (4)**
60:13;124:18;
125:11;132:20
**reasserts (1)**
50:23
**recall (3)**
16:22;17:3;114:20
**recalls (1)**
49:20
**receive (2)**
28:3;109:8
**received (9)**
23:19;28:2;37:1;
78:13,24;79:10,22;
80:24;93:20
**receiver (1)**
85:25
**receiving (1)**
31:25
**recently (2)**
109:14;130:4
**recess (13)**
56:8,9,25;57:16,22,

23;82:7;83:11;86:14;
100:20;123:1,2,4
**recitals (1)**
61:7
**recognize (2)**
20:6;40:10
**recognized (3)**
41:23;51:18;128:9
**reconsider (3)**
47:7,7;48:8
**reconsideration (4)**
48:18,21;61:3,17
**record (11)**
24:7;27:11,23;
37:7;55:19;66:11;
78:5,8;85:13;86:16;
96:2
**recoupment (1)**
52:16
**recover (1)**
53:8
**recovery (1)**
136:11
**reduce (2)**
89:5;136:22
**reduces (1)**
138:9
**refer (3)**
23:14;62:12;84:7;
123:11
**reference (4)**
35:24;58:20,23;
64:23;90:16;92:5,13;
115:14,17
**references (1)**
48:3
**referred (2)**
14:5;27:1
**referring (3)**
48:9;53:6;113:25
**reflect (3)**
13:22;15:21;67:9
**reflected (2)**
50:6;102:17
**reflects (1)**
54:10
**regard (1)**
13:21
**regarding (3)**
13:18;42:2,20
**regardless (1)**
91:4
**reimbursed (1)**
70:6
**reject (2)**
26:3,16
**rejected (1)**
128:18
**relate (4)**
71:21;73:20;
111:13,19
**related (5)**
22:23,24;52:22;

54:21;135:22
**relating (3)**
19:13;63:21;87:7
**relatively (1)**
28:20
**released (1)**
66:17
**releases (1)**
66:12
**relevant (4)**
63:18;66:23;138:5,
15
**Relief (49)**
2:8,19,23;3:2,19;
4:1,15;32:13;33:1,5,
14,24;35:17;36:13,
24;37:3;38:8,9,13;
40:23;46:2,12,22;
47:8,13,14;49:21;
51:16;52:11,21,22;
55:9;58:15;59:25;
66:19;72:8;74:9,17;
75:14;94:15;96:6;
102:3,10;123:8;
128:24;129:9,18;
130:9,14
**reluctant (3)**
67:1;77:4,4
**remain (8)**
17:9,10;23:23;
50:9;58:24;107:14,
20;139:8
**remaining (7)**
59:19;81:14;
106:12;123:22;
124:14,16;139:17
**remains (4)**
24:1;67:1;92:10;
124:15
**remarks (3)**
27:8;81:6;103:21
**remember (2)**
32:22;120:8
**rendered (1)**
43:20
**renewed (1)**
50:13
**reorganization (14)**
33:20;98:8;119:12;
126:22;127:5,7;
128:5,7;129:4,10,11,
16,23;134:5
**reorganize (1)**
56:8
**repeat (1)**
103:20
**reply (4)**
41:6,18;44:22;45:1
**report (8)**
13:20;16:19;49:25;
52:24;86:20;92:21;
100:22;115:4
**repose (1)**

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
RESIDENTIAL CAPITAL, LLC, et al. v.            Pg 161 of 167            Case No. 12-12020(MG)
ALLSTATE INSURANCE COMPANY, et al.                                      July 10, 2012

131:25

**represent (9)**
21:12,13;35:25;
75:1,12;94:12;95:15;
96:4;101:20

**representation (1)**
25:24

**representatives (2)**
50:1,1

**represented (5)**
37:4;75:4,6;94:13;
122:8

**representing (5)**
36:3;58:17;89:15;
93:2;112:12

**request (8)**
13:12;40:4;67:16;
74:9;83:25;104:25;
110:11;130:14

**requested (7)**
25:2;36:21;52:21;
76:17;87:19;96:9;
125:1

**requesting (2)**
35:25;38:10

**requests (11)**
24:18,19;60:5;
74:10;87:6;104:24,
24,25;109:8,10,12

**require (7)**
39:10;53:14;61:18;
66:16;111:22;
133:13;135:20

**required (8)**
31:13;35:9;112:24;
118:23;124:6;
127:25;128:1;133:16

**requirements (5)**
54:23;127:22;
128:19;130:15,17

**requires (2)**
14:21;67:11

**requiring (1)**
98:6

**requisite (1)**
131:11

**res (2)**
121:22,24

**ResCap (31)**
13:18;16:5;42:4;
70:9,12,16,19,20;
71:1,2,6,8,13,19,22;
72:24,25,25;79:4;
112:3;113:15;114:8;
115:20,24;116:3,5,
10;117:3;119:21;
124:17,22

**rescission (1)**
36:13

**reservation (3)**
30:21;31:8;102:19

**reserve (1)**
30:23

**reserved (1)**
102:22

**Residential (15)**
2:2,3,13,17;78:18;
86:16;104:16;
105:15;106:7,8,8,9;
123:12;124:12;131:6

**resolution (6)**
15:19;50:4;81:20;
86:23;87:13;124:9

**resolve (9)**
44:16;54:9;76:1;
82:4,9;83:16;86:9;
139:16,25

**RESOLVED (16)**
3:23;4:4;15:10;
29:1;32:15;50:18;
58:17;67:9;82:10;
87:22;91:8;115:8;
123:22;128:12;
131:8;134:15

**resolving (1)**
93:25

**resources (4)**
61:11;63:24;79:3;
135:4

**RESPA (4)**
37:18;41:22;42:23;
43:2

**respect (36)**
14:4,9,14,15;
16:16;17:14;19:4,14;
25:13;27:9;28:8,23;
29:18;30:20;33:11;
34:8;50:20;52:7;
53:25;54:15;57:13;
64:24;67:2;78:7;
84:8;87:18;88:18,23;
99:8;101:19;103:9;
113:6;116:25;
124:21;131:24;
139:23

**respectfully (1)**
41:19

**respective (1)**
22:8

**respond (3)**
27:24;33:21;37:19;
122:24

**responded (1)**
109:11

**respondiat (1)**
134:4

**response (4)**
14:17;41:21;51:12;
110:3

**responses (1)**
109:21

**responsive (1)**
110:11

**rest (3)**
81:9;103:15,17

**restated (2)**

**rested (1)**
103:18

**restoration (1)**
111:22

**restructure (3)**
60:9;72:9;75:22

**restructuring (1)**
137:20

**result (5)**
16:2;39:12;71:21;
134:13;135:15

**results (1)**
67:18

**retaining (2)**
36:22;139:9

**retains (1)**
126:20

**retention (4)**
69:1;119:16,22;
138:6

**rethink (1)**
82:16

**return (1)**
88:12

**reused (1)**
64:9

**review (6)**
47:4,10;53:21;
56:1,4;129:8

**reviewed (2)**
24:18;48:14

**reviewing (1)**
48:20

**Revised (1)**
48:6

**revising (1)**
38:5

**revisions (1)**
50:6

**RFC (1)**
25:19

**right (58)**
18:24;21:25;28:12;
30:15;31:9,18;32:7;
41:5;42:22,25;46:14,
16,24;49:5;50:14,16,
20;51:11;54:11;
55:20;56:7;57:16;
63:9;69:9;72:23;
74:23;77:3,18;78:10,
21;79:7,19;80:19;
83:10,11,20;84:3;
86:15;90:11,17;
91:23;92:25;93:17;
96:4;98:10;101:16;
104:21;110:24;
113:10,19,19;117:17;
119:20;123:5,6;
127:2;132:19;140:6

**rights (11)**
28:25;29:9;30:21;
31:8;53:13;54:7;

**71:13;72:5**

**rigorous (1)**
128:1

**rise (1)**
47:18

**risk (4)**
20:3;21:1;60:16;
125:12

**RMBS (13)**
3:6;10:3;13:11;
17:20;21:20,21;
52:23;53:17;116:1;
124:16,20,21;133:14

**road (1)**
31:5

**Robbins (2)**
133:1;135:17

**role (1)**
110:25

**rolling (3)**
109:17,18,23

**room (3)**
24:8,20;77:10

**ROPES (1)**
10:2

**ROSENBAUM (57)**
32:9,10,20,23;33:1,
4,21,23;34:9,17,22,
24;35:2,6,16;37:19,
21;38:17,22;39:5,7,
14,17,22;40:3,18,21;
43:2,4,9;44:16,22;
46:7,20,21;47:1,3,16;
48:10,17,24;49:4,6,9,
12,15,18;50:10,12,
19;51:14,25;52:7;
53:3;55:22,23;56:5

**Rosenbaum's (1)**
41:10

**ROSENTHAL (1)**
8:25

**Rule (11)**
3:11,16;44:3;46:9;
65:21;98:19;123:2,3,
6;127:22;132:3

**rules (2)**
55:18;125:5

**ruling (4)**
125:6;131:20;
132:15;140:2

**rulings (1)**
134:25

**run (4)**
46:9;83:23;84:18;
95:23

**running (3)**
24:22,22;95:10

---
**S**
---

**sacrosanct (1)**
20:2

**60:17;102:19,22;**
135:11;139:9

**rigorous (1)** *(see above)*

**sale (21)**
20:1,4;21:2;22:23;
25:7;26:4;28:16,21,
22;30:22;47:8,23,25;
48:11,12,15,18,22;
123:19;131:5;136:3

**sales (1)**
30:25

**same (11)**
26:5,11,12;50:23;
61:23;79:18;87:17;
101:11,24;117:16;
133:19

**San (1)**
8:23

**SANDLER (4)**
7:11;62:8;78:4;
81:13

**satis (1)**
72:6

**satisfied (2)**
43:9;72:7

**saw (1)**
58:22

**saying (12)**
41:14;42:4,18;
46:3;66:8;70:8;
73:20;91:5,6;95:13;
109:2;112:19

**schedule (27)**
19:8;20:9,15,21;
22:4,7,10,17,23,24;
23:3,4,6,9;28:10,12,
14;29:23;30:2,2,4;
90:1,2,3;109:19;
116:12,13

**scheduled (3)**
15:15;31:24;62:21

**schedules (4)**
22:9,15;51:3,5

**scheduling (1)**
25:13

**Scheindlin (7)**
128:17,20;129:7,
19;130:5,12,16

**SCHROCK (1)**
6:24

**scienter-based (1)**
120:12

**scope (7)**
37:23;49:21;55:10;
103:4;104:3;105:6;
138:21

**SDNY (10)**
127:11,23,25;
128:14;129:6;130:3,
8;134:2,7;135:6

**SDTx (1)**
128:15

**Se (9)**
12:3,4;34:10;
35:18,25;36:4;37:6;
40:22;41:20

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

**search (1)**
112:8
**searches (1)**
113:6
**seated (5)**
13:2;57:24;86:15;
100:21;123:5
**second (23)**
24:10;38:23,25;
39:7;40:13;42:25;
44:11,13;49:7;50:24;
60:9;63:14;72:16;
78:14;85:15;103:23,
25;104:1,2;105:23;
121:8;126:9,23
**Section (28)**
3:10,15;48:6;
58:14,14;60:4,6,14;
125:24;126:5,11,17,
19;127:10,13,17,20;
128:4,21,25;129:2,
18;130:10,14;133:6;
136:7,9;138:15
**sections (1)**
135:23
**Secured (3)**
6:3;24:7,20
**securities (71)**
17:20,25;59:6,7,
12;60:19;63:17;65:4,
19;73:6,18;74:3,4;
75:1,1,12,24;87:10,
10,16,18;104:23;
106:10;108:12,17,18;
109:9;114:3,6;
116:22;118:11,19,22,
23;119:3,6,7,10,20,
24;120:1,2,3,7,13,23,
25;121:2,5,13;122:2;
123:20;124:14;
125:10,18,21;131:4,
6,24;132:1;133:4,18,
21,22;134:7;135:12;
136:4,12,20;137:3;
139:12
**Securities' (2)**
88:13;105:6
**Securities* (30)**
87:24,25;89:24;
90:13;97:12,23;
100:25;104:24;
105:4,8;106:11;
108:10,11,16;109:5,
16,24;110:10,16,24;
111:4,14;112:4,8,12,
14,25;113:2,16;
114:10
**Securitization (5)**
4:17;8:4;111:19;
112:14;114:6
**securitizations (7)**
53:8;59:20;60:23;
64:10;112:11,16;

137:12
**securitizing (1)**
135:25
**seek (10)**
26:3;36:13;40:23;
46:12;60:2,3,10;
64:15;65:10;139:9
**seeking (21)**
26:5;36:11,24;
37:3;42:7,11,12;
46:2;55:2;58:15;
59:25;75:14;77:12;
96:7,7,14,24;98:21,
22,24;100:1
**seeks (1)**
123:15
**seem (4)**
66:17;91:20;92:23;
103:2
**seems (2)**
95:11,20
**self-insured (2)**
119:16,22
**selling (1)**
135:25
**sense (5)**
15:21;16:10;17:4;
30:11,14
**sensibly (1)**
31:4
**sensitive (1)**
40:22
**separate (8)**
15:14;26:20;34:15;
53:14;59:20;67:7;
69:20;78:7
**separating (1)**
93:24
**September (1)**
47:22
**series (2)**
28:1,11
**serve (1)**
90:12
**server (7)**
111:11,11,22;
113:7,24;114:5,7
**servers (1)**
113:1
**service (1)**
25:19
**servicer (1)**
25:25
**Services (2)**
130:6;138:23
**Servicing (11)**
4:7;25:9,19,22;
26:4;32:15,18;49:10,
16;50:23;53:25
**set (14)**
22:6;23:4;30:13;
40:15;60:12;67:7;
80:14;91:25;101:7;

116:15,18;123:23,23;
132:7
**setoff (1)**
52:15
**setting (3)**
29:22;137:4;
138:12
**settle (2)**
53:11;81:25
**Settlement (19)**
3:6;4:13;16:24;
17:1,22;18:17,23;
29:7,11;33:15,25;
34:3,5,19;35:5;
41:22;76:18,18;
95:17
**settlements (2)**
52:22;53:9
**settlement's (1)**
120:21
**settles (1)**
60:25
**seven (1)**
106:23
**Seventy (1)**
116:10
**sever (1)**
28:25
**severability (2)**
28:24;29:12
**several (3)**
14:10,17;138:4
**SEWARD (1)**
8:2
**Shall (6)**
92:15;132:15;
138:16,17;139:8,13
**Shapiro (1)**
4:20
**share (3)**
34:12,20;35:8
**shared (2)**
68:9;125:19
**Sharona (1)**
4:20
**sheriff's (3)**
48:10,11,18
**Shift (1)**
49:9
**SHORE (1)**
6:8
**short (5)**
34:15;73:3;80:12;
81:20;82:7
**shorten (1)**
77:7
**shorter (1)**
21:1
**shorthand (1)**
115:19
**show (1)**
121:19
**showed (1)**

48:14
**showing (4)**
98:8;128:18;
129:15;133:15
**shown (2)**
130:10;137:22
**shows (1)**
105:19
**side (2)**
57:21;114:6
**sidelines (1)**
134:24
**sides (2)**
82:2;103:18
**Sidney (2)**
2:24;46:22
**SIEGEL (13)**
7:24;21:11,12,13,
16,19,19;22:20,22;
23:5,11;24:3,4
**sign (2)**
29:7,10
**signed (8)**
17:22;18:17;24:9,
16,17,24;25:1;34:5
**significance (1)**
24:1
**significant (11)**
14:8,19;15:2,19;
23:16;51:14;69:3,4;
121:25;125:12;
136:25
**significantly (2)**
32:2;60:17
**signing (1)**
16:24
**silly (2)**
91:20;92:23
**similar (5)**
19:11;65:8;113:5;
115:16;124:19
**similarity (1)**
134:12
**simply (2)**
20:22;92:11
**single (3)**
18:14;22:17;138:3
**sitting (2)**
114:1;134:24
**situations (2)**
126:24;135:7
**six (5)**
58:16,24;59:19;
61:5;106:23
**Sixth (1)**
11:4
**skin (1)**
17:12
**slow (2)**
113:20,23
**small (1)**
137:12
**so-called (1)**

20:21
**sold (1)**
25:16
**solely (3)**
74:3;115:19;124:4
**solve (1)**
97:9
**somebody (3)**
26:24;39:25;96:17
**somebody's (1)**
82:1
**someone (1)**
72:20
**Sometimes (4)**
55:15;81:25;82:14,
18
**sorry (16)**
21:19;29:5;36:7;
37:8;38:22;39:8;
43:8;50:12;56:18;
62:17;74:5;89:18;
94:20;96:3;108:11;
116:14
**sort (6)**
19:3;31:10;66:7;
70:16;98:16;113:14
**sought (7)**
38:7;40:23;48:21;
55:9;59:17;65:1;
127:5
**sound (1)**
100:15
**sounds (1)**
34:8
**source (1)**
127:12
**South (1)**
9:4
**Southern (48)**
9:20;59:1;63:5;
65:1,4,8;83:19;88:18,
19,23;93:4,10,14,19;
101:19;104:14,15;
110:2;111:15;
124:10,11;125:1,9,
14,18,20;126:9;
128:16;130:24,25;
131:1,6,7,10;132:8;
133:12,25;134:11;
135:19;137:2,7,9;
138:2,5,21;139:3,11;
140:1
**speak (9)**
64:3;83:13;92:6,
14;96:5;111:23;
113:4;115:1,9
**SPEAKER (4)**
56:22,24;109:17;
114:3
**speaking (1)**
21:23
**Spear (1)**
8:22

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
Pg 163 of 167

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

**specific (9)**
20:16,16,23;22:2;
40:23;77:5;136:4;
137:4,11

**specifically (6)**
30:24;61:7,16,16;
70:3;102:18

**specified (1)**
126:23

**spent (2)**
69:13;138:8

**spin (1)**
22:13

**spoke (3)**
21:14;115:11,13

**spoken (4)**
115:2,4,6,6

**stacked (2)**
68:17,18

**stage (2)**
44:3;136:18

**stake (1)**
129:17

**stand (2)**
89:22;92:24

**standard (5)**
125:23;128:24;
129:8;130:4,11

**standpoint (1)**
89:22

**stands (1)**
34:1

**stare (2)**
125:13;134:13

**start (2)**
22:14;31:25

**state (14)**
37:10,17;47:20;
52:12;66:19,21;85:1,
2;104:17;115:7,18,
19;121:12;136:12

**stated (4)**
41:15;66:11;
129:10;132:11

**statement (6)**
34:1;51:3,5;67:23;
79:18;80:22

**statements (2)**
78:5;137:7

**states (3)**
36:16;50:3;138:22

**Status (8)**
3:5,9,14;13:10;
15:23;95:8;114:19,
25

**statute (11)**
84:19;95:6,9,10,15,
20,23;96:22;131:25;
132:10,12

**statutes (2)**
37:18;132:17

**Stay (107)**
2:8,19,23;3:2,20;

4:1,14;32:13;33:5,11,
14,24;34:9,11;35:4,
16;36:1,1,6,11,19,24;
37:3;40:14,16;42:15,
15;45:25;46:1,10,22;
49:21;51:21;58:3,16,
19;59:17;60:4,13;
65:9,22;66:1,2;
67:20;76:6,8,21,24;
81:15,15;84:18;85:9,
15,17,19;88:16;
95:18;96:7;97:14,24;
98:3,4,14;99:8,16;
100:1;101:11;102:2;
117:15;122:6;123:8,
16,16;124:21;125:7,
9,25;126:4,6,11,13,
25;127:1,9,17,25;
128:9;129:3,21;
130:21;131:17;
132:8,11,14,16,18,20,
21;133:6;134:23;
135:1,16;136:25;
139:6,7,8,10

**stayed (10)**
36:11;41:1;42:22;
63:13;64:14;88:15;
124:1;126:19;
131:15;132:5

**Staying (2)**
134:3,7

**stays (1)**
124:20

**Steering (1)**
3:17

**stemming (1)**
136:3

**STEPHEN (1)**
6:25

**STEVEN (1)**
9:25

**still (11)**
48:25;64:14;76:8;
88:19;97:2,13;107:4;
110:7;136:5,5;
137:12

**stipulated (1)**
139:7

**stipulation (9)**
60:25;61:16;67:8,
15;76:1;89:5,6;
101:25;139:25

**stipulations (3)**
102:16;123:24;
124:2

**STOCKTON (1)**
11:18

**stop (5)**
42:25;43:7;60:2,
24;94:14

**STORCH (2)**
11:10;54:13

**strategy (1)**

135:25

**Street (9)**
4:22;6:13;7:5;
8:22;10:12,20;11:4,
12,20

**strict (1)**
121:24

**strikes (1)**
66:9

**struck (1)**
38:10

**Structural (3)**
129:5;135:2;
137:21

**stuck (1)**
134:25

**studied (1)**
120:16

**styled (1)**
123:12

**subject (17)**
20:18;22:11;25:12;
34:4;52:1;53:20;
56:4;57:9;76:18,25;
77:5;79:17;102:8,19;
103:5;105:3;116:21

**subjected (1)**
126:7

**submit (9)**
33:2;34:13;44:6;
49:2,5;56:1;75:22;
90:4;139:13

**submitted (7)**
14:23;53:20;59:4;
62:24;63:1;90:7;
118:21

**Subsequent (2)**
129:1;134:18

**subserving (4)**
13:13;14:22;27:10,
12

**subsidiaries (1)**
68:14

**substantial (6)**
63:23;113:12;
118:21;125:15;
129:12;137:1

**substantially (3)**
124:19;125:7;
126:21

**successful (2)**
129:15,22

**sufficient (1)**
30:4

**sufficiently (1)**
43:10

**suggest (2)**
57:2;82:22

**suggested (1)**
128:23

**suggesting (1)**
48:25

**suit (3)**

69:3;84:10;135:5

**Suite (3)**
4:22;10:13;11:21

**suits (1)**
134:18

**sum (1)**
75:19

**superior (1)**
134:4

**Supplemental (23)**
4:11;32:14,18;
37:24;38:5,11;41:2;
47:9;49:1,10,16;50:5,
23;52:21;53:10,12,
16,25;79:12,15,19,
21;137:24

**Support (6)**
3:11,16;23:14,17,
25;28:5

**supportive (2)**
102:7;103:6

**supportiveness (1)**
102:14

**suppose (2)**
69:8;119:4

**supposed (1)**
135:2

**Supreme (2)**
3:20;32:24

**sure (17)**
13:6;15:15,16;
20:25;22:25;24:21;
30:4;39:2;44:22;
53:22;76:19;87:21;
92:18;93:24;100:6;
104:13;117:8

**surprised (1)**
26:21

**surprises (1)**
22:5

**Swain (4)**
92:3;101:10;115:5,
16

**Swain's (2)**
89:25;92:6

**system (2)**
70:17;112:3

---

**T**

**TAFT (1)**
11:2

**Taggart (62)**
3:2;12:4;35:17,18,
19,20,23,23;36:2;
37:4,6,8,9,11,13,15,
23,24;38:7,18,24,25;
39:2,4;40:8,12,13,21;
41:5,8,18,19;42:8,9,
11,13,17;43:1,7,8,14;
44:5,10,11,12,13,14,
21,23;45:3,4,7,14,18,
21,23,24;46:13,16,

135:25

17,19;51:18

**Taggart's (1)**
37:19

**Talcott (3)**
3:12;10:10,16

**talk (5)**
46:7;67:25;83:21;
85:20;86:3

**talked (2)**
85:17;96:17;
115:17

**talking (7)**
19:7,12;75:2;82:7;
99:22;103:22;122:6

**tape (1)**
111:23

**tapes (2)**
112:1,5

**tax (4)**
63:24;127:23;
128:7;134:2

**TAYLOR (1)**
11:24

**team (1)**
113:17

**telephone (2)**
34:15;139:16

**telephonic (2)**
51:21;54:22

**TELEPHONICALLY (4)**
9:8;11:24;12:2;
55:2

**telling (3)**
26:13;43:10;73:8

**temporally (1)**
60:1

**temporary (1)**
109:4

**ten (2)**
45:8;82:13

**tendered (1)**
139:3

**ten-minute (2)**
123:1,2

**term (1)**
21:1

**terminate (1)**
139:10

**terms (17)**
17:1;19:22;33:19;
34:19;49:24;52:20;
61:23;93:24;98:2;
101:11,24;123:23;
124:19,19;125:7;
139:7,15

**test (2)**
121:24;130:22

**testimony (1)**
124:24

**tests (1)**
130:15

**Thanks (1)**
86:12

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
Pg 164 of 167

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

**theory (2)**
120:7,24
**therefore (3)**
17:10;40:16;68:5
**there'll (1)**
57:12
**thinking (1)**
84:3
**third (9)**
37:13;78:25;
126:18;127:2,4;
129:9,18,21;130:21
**third- (2)**
128:24;132:22
**third-party (3)**
126:25;127:19;
132:24
**thirty-four (1)**
59:20
**thirty-one (7)**
39:16,20;40:8,15,
17;41:4,17
**thirty-second (2)**
38:20;41:15
**thirty-two (5)**
37:16;38:19;43:22,
23;44:19
**THOMAS (3)**
9:8;11:15;54:12
**though (3)**
19:25;34:16,25
**thought (4)**
48:13;83:6;90:2;
114:4
**thousands (2)**
113:9,11
**threat (1)**
129:11
**threaten (3)**
119:11;128:5;
129:10
**threatens (2)**
98:7;129:4
**three (6)**
25:1;33:4;56:13;
72:8;125:1,16
**threshold (2)**
28:13,18
**Throughout (1)**
51:1
**Thus (3)**
133:20,23;136:1
**thwart (1)**
128:5
**tie (1)**
81:19
**tied (1)**
14:25
**TILA (3)**
37:18;41:21;43:3
**till (6)**
88:15;98:14;
100:14;101:2,13;

109:4
**timeline (1)**
20:8
**tips (1)**
129:25
**Title (1)**
4:16;36:21;128:22
**title' (1)**
127:16
**titled (1)**
60:21
**today (27)**
14:22;19:24;24:7,
23;28:3;29:20;30:20,
25;32:2;33:6;37:2;
38:5;44:18;58:25;
65:22;66:14;81:14;
97:5,6;99:6,25;
114:21;119:2;
124:23;132:18;
139:21,25
**together (1)**
21:16,23,25;22:1
**told (1)**
115:15
**toll (8)**
84:10,14;95:6;
96:22,24;132:10,12,
17
**tolled (1)**
84:5
**TOLLES (1)**
9:2
**tolling (12)**
83:23;84:8,8,18;
88:20;94:10;95:15,
19;96:8;101:19,23,24
**tolls (1)**
102:1
**tomorrow (1)**
18:18
**topic (1)**
96:13
**tortious (1)**
131:4
**total (5)**
68:19,21,24;69:12;
136:10
**towards (1)**
87:2
**Tower (2)**
8:22;69:22
**town (1)**
45:7
**TOWNSEND (1)**
11:18
**track (3)**
100:5;105:14;
122:8
**Trade (1)**
41:25
**traditional (7)**
127:21;128:19,24;

129:8;130:11,14,22
**tranche (2)**
17:6;18:15
**tranches (1)**
18:7
**transactions (6)**
15:3,6;124:17,22,
22;126:7
**Transcribed (1)**
4:20
**transit (1)**
45:13
**transitioning (1)**
110:25
**tree (2)**
111:12;113:8
**trees (1)**
113:19
**trial (5)**
116:15;117:16;
122:7,12;132:7
**trigger (1)**
138:23
**TRIVIGNO (1)**
10:23
**true (1)**
120:6
**truly (1)**
99:4
**trust (3)**
17:24;18:21;129:5
**Trustee (6)**
4:18;8:4;18:22;
50:3;53:17,18
**trustees (30)**
16:25;17:7,21;
18:8,14,18;19:3,10,
11,12,18,19;20:7,14,
21:12,13,17,20,21,
24;22:5;23:1;25:5,
11;26:8;29:2,7;50:2;
52:10,23
**trustees' (4)**
17:10;21:6;30:21;
31:7
**trusts (6)**
17:4,6,8,18,20;
25:16
**Truth (2)**
41:21;42:23
**try (13)**
32:8;38:12;44:5;
62:7;84:14;92:22;
100:4;113:19,22;
117:6,9,15,16
**trying (10)**
13:17;20:5,8;39:5;
40:22;74:15,21;
90:21;117:22;122:13
**turn (5)**
13:9;59:23;77:19;
79:24;92:20
**twenty (1)**

92:16
**twenty-five (14)**
17:5,19;18:7,14,
21;69:1;104:6,6;
119:15,17,21;123:22,
25;138:5
**twenty-seven (4)**
58:18;59:17;
123:17,20
**twenty-six (1)**
104:6
**two (24)**
16:20;19:22;20:3;
22:22;25:2;26:20;
29:17;54:15;58:19;
59:1;83:1,2;85:25;
86:24;102:10,15;
110:21,22;117:6,9;
123:20;125:15;
128:16;129:19
**twofold (1)**
60:5
**TX (1)**
10:14
**type (4)**
38:13;110:10;
111:1,21
**typically (3)**
75:8;111:5;126:4

**U**

**ultimate (3)**
59:10;68:13;
137:19
**ultimately (3)**
25:7;97:24;136:21
**Um-hum (4)**
72:17;74:18;76:3;
104:11
**unable (1)**
94:10
**unaffiliated (4)**
107:13;116:25;
131:3,23
**unclear (2)**
90:19;136:13
**under (33)**
3:10,15;4:7;38:5;
39:9;41:12;43:12,19,
24;44:20;46:5;60:4,
14;69:1;70:3,13;
72:4;81:15,21;85:9;
87:6;119:13,16;
121:5;126:19;128:4,
25;129:2,18;130:10,
14;131:25;138:23
**underlie (1)**
28:8
**underlying (12)**
37:25;60:2;64:14;
100:25;124:3,9,15;
133:24;134:11;

135:18;136:16,22
**underpins (1)**
13:16
**unders (1)**
42:17
**Understood (7)**
23:5;30:6;51:25;
54:20;55:16;100:3;
121:23
**undertaken (1)**
40:4
**undertaking (1)**
113:20
**underwriter (4)**
73:6,11;75:10;
121:6
**underwriters (9)**
75:4,6,8;85:4;
106:23;116:3,25;
131:3,23
**underwriting (4)**
63:19;64:11;73:21;
75:11
**underwritten (1)**
116:3
**undoubtedly (1)**
95:4
**Unfair (1)**
41:25
**unfortunately (1)**
113:7
**UNIDENTIFIED (4)**
56:22,24;109:17;
114:3
**Union (5)**
59:1;62:10;65:15,
19;87:1
**UNISON (1)**
139:19
**United (4)**
50:3;127:11;
128:20;129:1
**unless (3)**
21:24;82:14;
136:21
**unrelated (1)**
124:22
**unring (1)**
134:21
**unsecured (2)**
27:7;136:8
**up (21)**
16:8,24;17:8;
23:11;24:22,22;28:4;
30:9;31:11;53:11;
67:20;72:20;85:12,
23;86:7;89:17;96:1;
110:8,18;116:4;
139:21
**update (1)**
16:17
**upon (5)**
31:16;82:12;

12-12020-mg    Doc 750    Filed 07/11/12    Entered 07/11/12 16:22:05    Main Document
Pg 165 of 167

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

129:19;135:5;139:7
**upwards (1)**
137:13
**USC (1)**
127:12
**use (4)**
23:13;70:1;86:7;
112:4
**used (3)**
129:2;133:23;
134:22
**usual (1)**
130:9

---

**V**

**vacate (2)**
98:24;99:15
**vacating (1)**
77:9
**vacation (1)**
115:6
**valid (3)**
39:19,21;42:6
**validity (3)**
52:9,14,17
**vantage (1)**
26:8
**varies (1)**
17:25
**various (1)**
19:5
**vary (1)**
18:1
**vast (3)**
25:21,21,22
**vexatious (2)**
48:2,5
**view (10)**
22:23;39:20;72:22;
74:2;75:2,3;90:23;
91:2;101:23;122:9
**violated (2)**
131:4;133:22
**violating (1)**
133:4
**violation (1)**
52:12
**violations (2)**
37:17;136:12
**virtually (2)**
63:17;74:24
**visiting (1)**
45:8
**volume (1)**
38:14
**voluminous (1)**
24:19

---

**W**

**W&S (2)**
93:2;94:7

**Wait (1)**
41:9
**waiting (1)**
90:14
**waive (4)**
51:22,22;52:4,6
**waiver (1)**
54:15
**walk (3)**
29:16;58:6;60:14
**Wall (1)**
10:20
**WALPER (1)**
9:8
**wants (3)**
15:20;23:6;51:20
**warranted (1)**
60:13
**warranty (1)**
25:24
**Washington (3)**
6:14;11:5,22
**wasteful (1)**
117:10
**wasting (2)**
69:13;138:8
**way (14)**
21:4;22:19;24:6;
25:12,21;26:24;
43:16;92:22;97:11;
98:7;103:1;119:12;
121:16;133:20
**ways (1)**
96:20
**week (6)**
29:14;31:24;32:1;
44:18;109:22;110:4
**weeks (3)**
14:10,17;29:13
**weighs (1)**
130:1
**WEITNAUER (1)**
7:8
**Wells (2)**
7:3;21:21
**Wendy (1)**
50:21
**West (3)**
4:22;7:5;63:3
**Western (46)**
9:20;59:1;63:5;
64:25;65:4,8;83:18;
88:18,19,23;93:4,10,
14,19;101:19;104:14,
15;110:2;111:14;
124:10,11;125:1,9,
14,17,20;130:24,25;
131:1,6,7,10;132:8;
133:12,25;134:11;
135:19;137:2,7,9;
138:2,5,21;139:3,11;
140:1
**what's (11)**

28:12;30:9;31:11;
32:25;38:20;40:2;
68:19;112:25;113:1;
116:12;118:17
**wheat (1)**
78:7
**wheels (1)**
22:13
**Where's (1)**
72:11
**Whereupon (1)**
140:8
**wherever (2)**
45:11,17
**WHITE (1)**
6:2
**Whitlinger (8)**
78:15,17,19,21,23;
135:23;136:6;138:18
**whole (1)**
95:7
**Who's (6)**
32:7;35:17;57:1,
17;89:15;93:2
**whose (1)**
95:5
**who've (1)**
23:25
**WICKERSHAM (1)**
11:2
**willing (5)**
38:17,21;83:21,24;
90:15
**willingness (1)**
85:6
**wish (6)**
33:10,14;53:24;
54:11;55:24;81:3
**withdraw (10)**
58:23;88:14;90:15;
92:4,13;101:9,9,10;
115:14,17
**withdrawn (1)**
88:15
**withdrew (2)**
58:20;64:23
**within (6)**
17:20,24;23:20;
59:25;114:8;138:21
**without (15)**
44:7;51:9;55:2;
66:1;72:20;74:14;
76:18;84:4,18;99:22;
118:12;125:2;
127:21;128:18;132:2
**witness (1)**
82:24
**witnesses (14)**
15:17;16:7;56:10,
11,21;57:18,20;
63:25;64:12;72:24;
73:1;91:20;92:21;
100:16

**WL (3)**
129:6;135:2;
137:21
**WOFFORD (1)**
10:7
**Wolicki (1)**
4:20
**WOLLMUTH (1)**
9:19
**wonder (1)**
45:8
**word (1)**
23:13
**words (2)**
18:19;57:4
**work (20)**
20:6,8;24:21;
25:22;28:19;30:9;
31:1;38:18;45:12;
55:8;61:11,18;76:16;
88:8;89:8,9;111:12,
20;139:23,25
**worked (3)**
38:12;89:4;112:7
**working (6)**
19:2;21:16,22,24;
22:1;33:16
**worth (2)**
120:19;137:14
**written (3)**
109:11,21;110:3
**wrong (1)**
47:17
**wrongful (1)**
139:1

---

**Y**

**year (4)**
68:20,21,23;69:25
**years (2)**
69:23;138:4
**yesterday (1)**
58:21
**York (15)**
4:23;6:5,22;7:14,
20,22;8:6,15;9:14,22;
10:5,21;11:13;21:20,
21
**Yvonne (2)**
2:23;46:22

---

**0**

**06-cv-5358PKC (1)**
129:6
**07-'08 (2)**
138:17,24

---

**1**

**1 (10)**
4:11;80:1,6,23,24;

127:2;129:15,22;
131:21;135:23
**1:30 (3)**
83:11;86:8,10
**1:35 (1)**
86:14
**10 (4)**
45:22,23,23;
131:21
**100,000 (2)**
53:13,13
**10004 (1)**
8:6
**10005 (1)**
10:21
**10017 (1)**
11:13
**10020 (1)**
7:14
**10022 (1)**
6:22
**10036 (4)**
6:5;7:22;9:14;10:5
**10040 (1)**
4:23
**101 (1)**
8:14
**10110 (1)**
9:22
**10178 (1)**
8:15
**1031 (3)**
127:23;128:7;
134:2
**105 (10)**
58:14;72:7;81:15;
127:10,13,17;128:21,
25;129:2;130:14
**105.031 (1)**
130:19
**105a (4)**
127:20;128:4;
129:18;130:10
**1095 (1)**
7:21
**10th (1)**
30:20
**11 (5)**
2:2,17;25:17;
127:12;134:1
**11:11 (1)**
57:23
**11:30 (3)**
56:8;57:17,23
**111 (1)**
128:13
**1155 (1)**
6:4
**12 (1)**
82:22
**12:05 (1)**
86:14
**120 (1)**

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

131:5
**1201 (1)**
  7:5
**12-01671 (2)**
  86:17;123:14
**12-01671-mg (2)**
  2:3,13
**1211 (2)**
  9:13;10:4
**12-12020-mg (2)**
  2:2,17
**1251 (1)**
  7:13
**12-ap-506 (1)**
  48:4
**12th (1)**
  47:22
**13 (2)**
  50:2;105:21
**13:54 (1)**
  100:20
**13th (9)**
  15:22,24;16:9;
  27:13;62:1,22;65:16,
  24;116:14
**14:16 (1)**
  100:20
**140 (1)**
  11:12
**14th (1)**
  11:20
**15 (1)**
  131:21
**150,000 (1)**
  59:20
**15th (1)**
  49:18
**17th (3)**
  14:17;15:11;44:18
**18 (1)**
  133:8
**181 (1)**
  4:10
**183 (1)**
  4:10
**18di (1)**
  136:7
**18th (1)**
  15:1
**19 (3)**
  48:4,5;131:21
**192nd (1)**
  4:22
**194 (1)**
  128:8
**1980 (1)**
  128:15
**1983 (1)**
  134:7
**1986 (1)**
  133:2
**1990 (1)**
  128:14

**1997 (1)**
  127:11
**1999 (1)**
  133:8

**2**

**2 (8)**
  10:20;100:15,19;
  127:3;129:16,23;
  130:18,19
**2:48 (1)**
  123:4
**20 (1)**
  129:6
**200 (1)**
  10:13
**20001 (1)**
  11:5
**20005 (2)**
  6:14;11:22
**2003 (2)**
  126:13;127:25
**2005 (1)**
  47:19
**2006 (4)**
  129:6,6;135:2;
  137:21
**2007 (2)**
  130:3;135:7
**2008 (3)**
  127:20,23;134:2
**2009 (1)**
  130:8
**2010 (3)**
  37:13;78:12;79:9
**2011 (3)**
  47:23;131:1,8
**2012 (16)**
  47:23;48:4,5,7;
  50:25;51:4;77:23;
  78:16,23;79:2,13,21;
  124:2;125:22;
  131:22;139:9
**2013 (5)**
  84:23;85:18;97:22;
  116:14;132:7
**2014 (3)**
  116:15;122:7;
  132:8
**208 (1)**
  10:12
**20th (6)**
  22:7,16;23:9;
  30:13;44:22;45:1
**210 (2)**
  127:11;128:25
**22 (1)**
  47:19
**222 (1)**
  4:1
**224 (1)**
  3:19

**227 (1)**
  51:1
**228 (1)**
  127:11
**23,000 (3)**
  103:23;104:1,2
**232 (1)**
  127:11
**2323.52 (1)**
  48:6
**234 (1)**
  128:25
**238 (1)**
  133:8
**24 (1)**
  78:12
**245 (1)**
  2:19
**24th (24)**
  14:12;15:14;16:4;
  20:12,20;21:4;22:5,6,
  10,13,18;29:18;31:2,
  8,10;32:5;44:4,8;
  45:2,7,13,14,18;
  77:23
**25 (1)**
  78:23
**25th (3)**
  78:16;79:1,9
**26 (3)**
  59:21;134:6,16
**263 (1)**
  3:2
**27 (1)**
  105:10
**275 (1)**
  69:22
**27th (3)**
  27:13,16,17
**28 (1)**
  137:15
**282 (1)**
  126:12
**287 (1)**
  126:13
**28th (2)**
  37:12;48:7
**29 (1)**
  137:15
**290 (1)**
  17:4
**298 (1)**
  127:24
**29th (2)**
  50:5;131:1
**2nd (2)**
  125:22;126:13

**3**

**3 (10)**
  33:7;116:19;126:2,
  5,17;127:5;128:15;

129:16,24;130:22
**3:46 (1)**
  123:4
**30309 (1)**
  7:6
**30th (2)**
  51:4;90:5
**31 (25)**
  14:22;58:19;76:4,
  13,14;77:11,13,14;
  80:1,6,23,24;85:21;
  91:7;92:12;101:2,5,
  13;102:19,20;108:9;
  116:21;124:1;
  137:24;139:9
**318 (1)**
  3:14
**319 (1)**
  3:9
**31st (4)**
  27:14,15;90:17;
  91:25
**32 (1)**
  38:2
**320 (1)**
  3:5
**321 (1)**
  126:12
**33 (2)**
  121:10;137:24
**337 (3)**
  17:8,18;128:8
**34 (1)**
  105:22
**355 (1)**
  9:4
**35th (1)**
  9:5
**362 (5)**
  58:14;60:4,14;
  126:11;133:6
**362.03 (1)**
  126:3
**362.033d (2)**
  126:5,17
**362.04 (1)**
  130:23
**362a (2)**
  125:24;126:19
**362a1 (1)**
  60:6
**362a3 (1)**
  60:9
**365 (4)**
  3:10,15;130:3;
  135:6
**37 (1)**
  130:7
**375 (1)**
  128:15
**3755175 (2)**
  135:2;137:21
**3755175*4 (1)**

129:6
**376 (1)**
  128:15
**391 (1)**
  49:19
**392 (2)**
  17:8,18
**397 (3)**
  127:23;128:7;
  134:2
**3c (1)**
  135:23

**4**

**4 (3)**
  123:11;130:1;
  132:7
**4,13 (1)**
  2:6
**4.2 (2)**
  53:1,4
**4:14 (1)**
  140:8
**40,000 (2)**
  53:11,12
**401 (2)**
  130:3;135:6
**402 (1)**
  130:7
**409 (1)**
  130:3
**412 (1)**
  135:6
**4-2 (1)**
  59:14
**420 (1)**
  134:6
**423 (1)**
  128:14
**426 (1)**
  134:6
**429 (1)**
  134:16
**434 (1)**
  128:14
**45 (1)**
  125:22
**456 (1)**
  2:23
**45th (1)**
  11:12
**47 (1)**
  4:6
**49 (1)**
  127:24
**4th (4)**
  84:23;97:22;
  116:14;133:2

**5**

**5 (9)**

RESIDENTIAL CAPITAL, LLC, et al. v.
ALLSTATE INSURANCE COMPANY, et al.

Case No. 12-12020(MG)
July 10, 2012

22:6,16;28:16;
29:1,10,11;44:18,21;
45:1
**50,000 (1)**
53:12
**500 (2)**
9:21;69:17
**502 (1)**
136:9
**54 (1)**
127:24
**546 (1)**
50:22
**550,000 (2)**
53:1,3
**571 (1)**
130:7
**58 (1)**
125:22
**587-89 (1)**
130:7
**59 (3)**
59:5;79:14,22
**5th (4)**
20:1;21:3;29:25;
50:25

## 6

**6 (10)**
47:23;59:5;77:23;
78:11,13;79:13,21;
105:21;131:22;132:8
**6006 (2)**
3:11,16
**601 (1)**
6:21
**607 (1)**
11:20
**65 (1)**
127:22
**655 (1)**
6:13
**660,000 (1)**
59:18
**670 (2)**
127:23;134:2
**676 (1)**
125:22
**684 (2)**
127:23;128:7
**685 (1)**
134:2
**6th (9)**
62:2,4,12,14,16,24;
63:3,6;65:5

## 7

**7 (2)**
78:16,24
**70 (1)**
137:6

**700 (2)**
4:22;11:4
**75202 (1)**
10:14
**78 (1)**
137:6
**788 (2)**
133:2;135:17
**7a (1)**
138:15

## 8

**8 (2)**
79:2,10
**8.7 (1)**
17:2
**83 (1)**
59:18

## 9

**90 (1)**
4:6
**900 (1)**
11:21
**90071 (1)**
9:6
**9019 (12)**
3:6;13:11;16:17;
17:15;19:5;20:15;
22:24;28:6,15,20;
31:4,23
**94105 (1)**
8:23
**973406-2250 (1)**
4:24
**989 (1)**
135:17
**994 (1)**
133:2
**999 (1)**
133:2