VOL: 480 PG: 286
Inst:-      490

## VERMONT HOUSING FINANCE AGENCY
### ASSIGNMENT OF MORTGAGE
#### Including all related Vermont Housing Finance Agency Riders
**Know all Persons by these Presents:**

THAT on this 26th day of _____ May _____, 2006,
Connecticut River Bank, NA _____ (herein designated as "Assignor") with a principal
place of business located at 245 Main Street, _____ in the Town / City of
Charlestown ___ in the County of Sullivan _____ and the State of
New Hampshire _____, for and in consideration of the sum of TEN AND MORE DOLLARS and
other good and valuable consideration, the receipt whereof is hereby acknowledged, does hereby assign to
Vermont Housing Finance Agency ("Assignee"), an instrumentality of the State of Vermont with its
principal office at Burlington, in the County of Chittenden and State of Vermont the following:

**Complete only the section that applies:**

### (A) Assignment of Mortgage and Uniform Mortgage Rider
A certain mortgage dated May 26 _____, 2006 _____including a fully executed Vermont Housing
Finance Agency Uniform Mortgage Rider and any and all other fully executed and related riders that are
made a part of and incorporated into the Mortgage given by Jason A Colburn and Susannah M
Colburn("Mortgagor(s)")on property located at 13 Eaton Avenue, _____
in the Town / City of Springfield _____ in the County of Windsor _____
and the State of Vermont (the "Property"), and recorded in Book 0369 Pages 0263 (include all recorded
pages), of the Springfield _____ Land Records, referred to herein as the "Mortgage" which secures
payment of a certain Note made by Borrower on the same date.

### (B) Assignment of Mortgage and Uniform Mortgage Rider (only when a Loan Modification Agreement is used)
A certain mortgage dated _____, _____ and recorded in Book _____ Pages
_____ (include all recorded pages of mortgage) of the _____ Land Records
(the "Mortgage"); and a fully executed VHFA Uniform Mortgage Rider dated
_____,_____ and recorded in Book _____ Pages _____ (include all
recorded pages of the riders) of the _____ Land Records that are made a part of and
incorporated into the Mortgage given by _____("Mortgagor(s)") on
property located at _____
in the Town / City of _____ in the County of _____
and the State of Vermont (the "Property") which secures payment of a certain Note and Loan
Modification Agreement related thereto.

TOGETHER with the Note, and additional security, if any, therein described, and the principal thereof
and interest thereon, TO HAVE AND TO HOLD, the same unto the Assignee, its successors and assigns,
forever, subject only to their terms. Assignor covenants with Assignee, its successors and assigns, that
Assignor has full right and lawful authority to assign, the said Mortgage, Note, and Additional Security (if
any), including all related documents of same, and that there are no set-offs, counterclaims or defenses
against the same, in law or in equity, nor have there been any modifications or other changes in the
original terms thereof.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be signed by its duly authorized
corporate officer and its corporate seal to be affixed hereto as of the date first written above.

ASSIGNOR: Connecticut River Bank, NA _____ (Legal Name of Lender)

BY: _____ (Duly Authorized Signer)

DATE SIGNED: 04/20/11

STATE OF New Hampshire ___ COUNTY OF Sullivan _____, SS.
In the Town/City of Charlestown _____ in said County this 20th _ day of April ___, 2011,
personally appeared Martha A. Brosnahan _____ to me to be the duly authorized agent of Assignor and
acknowledged the foregoing Assignment to be his/her free act and deed and the free act and deed of the
said Assignor.

Before Me, _____ My commission expires 2/7/12
Notary Public
VHFA Form #S-605 Rev. 4/07

Springfield, VT Received For Record
ON Apr 29, 2011 AT 11:02A
Recorded In Vol: 480 PG: 286

Meredith D. Kelley
Town Clerk

CINDY M. PAULUS
STATE OF
MY
COMMISSION
EXPIRES
FEBRUARY 7,
2012
NEW HAMPSHIRE
NOTARY PUBLIC

BK 0381 PG 0256

381/256

## MORTGAGE

MIN 100037506561830556

THIS MORTGAGE is made this 11 day of September 2006 , between the Mortgagor,
Jason A. Colburn and Susannah Colburn, Husband and Wife

10462434

(herein "Borrower"), and the Mortgagee, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
GMAC Mortgage Corporation DBA ditech.com

("Lender") is organized and existing under the laws of Commonwealth of Pennsylvania
and has an address of 3200 Park Center Dr. Suite 150, Costa Mesa, CA 92626

BORROWER, in consideration of the indebtedness herein recited, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of Windsor
State of Vermont:

which has the address of 13 Eaton Ave                                                    [Street] ,
Springfield                                    [City], Vermont 05156-2302 [ZIP Code](herein "Property Address");
TO HAVE AND TO HOLD such property unto MERS (solely as nominee for Lender and Lender's successors and assigns), and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.
TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated 09/11/2006
and extensions and renewals thereof (herein "Note"), in the principal sum of
U.S. $34,000.00                    , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on October 1, 2031                                        ;
the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained.
Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.
UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum

VERMONT - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

Amended by VMP 1/04
-76N(VT) (0308) 01                          Form 3846
Page 1 of 4                                          Initials
VMP Mortgage Solutions, Inc.

BK 0 3 2 1 PG 0 2 5 7

(herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

BK 0 3 8 1 PG 0 2 5 8

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

If Lender or Borrower invokes the power of sale, and the Property is judicially ordered to be sold pursuant to such power, Lender shall mail a copy of a notice of sale by registered mail to Borrower at the Property Address or at such other address as Borrower may subsequently deliver in writing to Lender for that purpose. Lender shall publish the notice of sale for the time and in the manner required by applicable law and, without further demand on Borrower, the Property shall be sold at the time and under the terms designated by the court and in the notice of sale. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in

BK 03P 1 3 259

paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, this Mortgage shall become null and void and Lender shall discharge this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Waiver of Homestead and Other Interests.** Borrower (including any co-signer) waives all rights of homestead exemption in the Property and relinquishes all statutory and common law rights in the Property in the nature of dower and curtesy.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Witnesses:

_Carol Ardrey_
Carol Ardrey

_Jason A. Colburn_                                    _____ (Seal)
Jason A. Colburn                                        -Borrower

_Christopher A. Faris_
Christopher A. Faris

_Susannah Colburn_                                   _____ (Seal)
Susannah Colburn                                        -Borrower

_____ (Seal)                        _____ (Seal)
                     -Borrower                                         -Borrower

_____ (Seal)                        _____ (Seal)
                     -Borrower                                         -Borrower

_____ (Seal)                        _____ (Seal)
                     -Borrower                                         -Borrower

*(Sign Original Only)*

**STATE OF VERMONT,**                        Windsor                 County ss:
    On this    11th    day of    September    2006    , personally appeared

Jason A. Colburn and Susannah Colburn

                                                                              , signer(s)
and sealer(s) of the foregoing written instrument and acknowledged the same to be his/her/their free act and deed.
Before me:    Christopher A. Faris. Notary Public

My Commission Expires:    02/10/07           _Christopher A. Faris_
                                              Notary Public
(Seal)

CHRISTOPHER A. FARIS
Notary Public, Vermont
My Commission Expires February 10, 2007

-76N(VT) (0308).01                    Page 4 of 4                    Form 3846

BK 0 3 8 1 PG 0 2 6 0

## EXHIBIT A

A CERTAIN PIECE OF LAND IN SPRINGFIELD, IN THE COUNTY OF WINDSOR, AND STATE OF VERMONT, DESCRIBED AS FOLLOWS, VIZ:

MEANING AND INTENDING HEREBY TO CONVEY A PORTION OF THE SAME LAND AND PREMISES AS CONVEYED TO JUDITH STASZKO BY DEED OF KATHLEEN C. DIX ND JUDITH STASZKO, DATED AUGUST 18, 2000 AND RECORDED  AUGUST 21, 2000 IN BOOK 214, PAGE 235 OF THE SPRINGFIELD LAND RECORDS.

BEING A PORTION OF THE SAME LAND AND PREMISES AS WERE CONVEYED TO KATHLEEN C. DIX AND JUDITH STASZKO BY QUIT CLAIM DEED OF KATHLEEN C. DIX, DATED SEPTEMBER 5, 1995 AND RECORDED SEPTEMBER 7, 1995 IN BOOK 142 PAGE, PAGES 274-275 OF THE SPRINGFIELD LAND RECORDS.

BEING A PORTION OF THE SAME LAND AND PREMISES AS WERE CONVEYED TO EDWARD L. DIX (NOW DECEASED) AND KATHLEEN C. DIX BY THE WARRANTY DEED OF LELAND G. CHASE AND MARY E. CHASE, SAID DEED DATED NOVEMBER 10, 1953 AND RECORDED NOVEMBER 12, 1953 IN BOOK 53, PAGE 406 OF THE SPRINGFIELD LAND RECORDS, AND IN SAID DEED BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE 1ST PARCEL BEING LOT NO. 4 AS DELINEATED ON A PLOT OF LOTS ENTITLED "PLAN OF PROPOSED LOTS, PROPERTY OF HAZEL A. EATON, SPRINGFIELD, VERMONT, A. G. BUXTON, C.E., JUNE 21, 1939", WHICH PLAN IS ON FILE IN THE SPRINGFIELD LAND RECORDS.

BEING A PORTION OF THE SAME LAND AND PREMISES AND PREMISES WITH THE BUILDINGS THEREON SITUATE WHICH WERE CONVEYED TO LELAND G. CHASE BY EVA H. FURMAN JOINED BY HER HUSBAND, FRED H. FURMAN BY WARRANTY DEED DATED AUGUST 2, 1944, RECORDED IN BOOK 49 AT PAGE 389 OF THE SPRINGFIELD LAND RECORDS.

10462436

BK 0381 FG 0261

EXHIBIT A
(continued)

REFERENCE IS HEREBY HAD TO THE AFORESAID PLAN THE AFORESAID
DEED, AND THE RECORD THEREOF, FOR A MORE PARTICULAR
DESCRIPTION OF THE SAID LOT NO. 4.

SAID LOT NO. 4 IS SUBJECT TO THE CONDITION THAT NO DWELLING
HOUSE COSTING LESS THAT 3,000 DOLLARS SHALL BE ERECTED OR
PLACED ON SAID LOT AND THAT NO USE SHALL BE MADE OF SAID
PREMISES EXCEPT FOR DWELLING PURPOSES.

THESE PREMISES CAN BE FURTHER DESCRIBED AS 13 EATON ROAD, IN
SPRINGFIELD, VERMONT, AND CONSISTING OF 25 MORE OR LESS
ACRES.

REFERENCE IS HEREBY MADE TO A QUITCLAIM DEED FROM JUDITH
STASZKO TO JUDITH STASZKO AND EDWIN STASZKO, DEED DATED APRIL
10, 2006, RECORDED APRIL 19, 2006 IN BOOK 366, PAGE 22 OF THE
SPRINGFIELD LAND RECORDS.

Permanent Parcel Number: 22-1-33
JASON A. COLBURN AND SUSANNAH H. COLBURN

13 EATON AVENUE, SPRINGFIELD VT 05156
Loan Reference Number  : MCNJ01/5848284
First American Order No: 10462436
Identifier: FIRST AMERICAN LENDERS ADVANTAGE

COLBURN
10462436
FIRST AMERICAN LENDERS ADVANTAGE
MORTGAGE

When recorded mail to:
*FIRST AMERICAN TITLE INSURANCE*
*LENDERS ADVANTAGE*
*1100 SUPERIOR AVENUE, SUITE 200*
*CLEVELAND, OHIO 44114*
*ATTN: FT1120*

SPRINGFIELD, VT RECEIVED FOR RECORD
Oct. 11, 2006 AT 1:55 PM
RECORDED IN VOL. 381 PAGE 256

*Bonnie L. Reynolds*
BONNIE L. REYNOLDS/TOWN CLERK