**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                                                                       :    Chapter 11
                                                                                                  :
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,              :    Case No. 12-12020 (MG)
                                                                                                  :
                                                    Debtors.                     :    Jointly Administered
------------------------------------------------------------x

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
**AS CONFLICTS COUNSEL FOR THE DEBTORS**
*<u>NUNC PRO TUNC</u>* **TO THE PETITION DATE**

Upon the Application[1] of Residential Capital, LLC and certain of its affiliates, as debtors and debtors-in-possession (each a "**Debtor**" and collectively, the "**Debtors**"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1, for entry of an order (this "**Order**") authorizing the Debtors to employ and retain Curtis, Mallet-Provost, Colt & Mosle LLP ("**Curtis**") as conflicts counsel for the Debtors, effective *nunc pro tunc* to the Petition Date, all as more fully described in the Application; and upon consideration of the Declaration of Steven J. Reisman, a partner of Curtis (the "**Reisman Declaration**"); and the Court having jurisdiction to consider the Application and the relief request therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided as reflected in the Application and the certificates of service on file in these Chapter 11 Cases, and

---

[1] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Application.

12581596

it appearing that no other or further notice need be provided; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before the Court (the "**Hearing**"); and the Court being satisfied based on the representations made in the Application and the Reisman Declaration that the partners, counsel and associates of Curtis who will be engaged in the Chapter 11 Cases represent no interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants with respect to the matters upon which it is to be engaged other than as disclosed in the Reisman Declaration; and that Curtis is disinterested as that term is defined under section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtors, their estates and creditors, and all parties in interest; and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore:

IT IS HEREBY ORDERED THAT:

1. The Application is granted as set forth herein.

2. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2014-1, the Debtors are authorized to employ and retain Curtis as their conflicts counsel on the terms set forth in the Application, the Reisman Declaration and that certain engagement letter attached hereto as **Exhibit 1-A** (the

"**Engagement Letter**") in accordance with Curtis' normal hourly rates and disbursement policies, effective *nunc pro tunc* to the Petition Date.

3. Curtis will render professional services to the Debtors for certain discrete matters, which may include the following services for matters where MoFo or other counsel for the Debtors, may not be able to act as a result of an actual or potential conflict of interest:

   a. advise the Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their businesses and properties;

   b. attend meetings and negotiate with representatives of creditors and other parties in interest;

   c. take necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the estates;

   d. prepare motions, applications, answers, orders, appeals, reports and papers necessary to the administration of the Debtors' estates;

   e. take any necessary action on behalf of the Debtors to obtain approval of a disclosure statement and confirmation of one or more Chapter 11 plans;

   f. represent the Debtors in connection with obtaining postpetition financing, including use of cash collateral;

   g. advise the Debtors in connection with any potential sale of assets;

   h. appear before the Court, any appellate courts and the U.S. Trustee, and protect the interests of the Debtors' estates before those Courts and the U.S. Trustee;

   i. consult with the Debtors regarding tax matters; and

   j. perform other necessary legal services and provide other necessary legal advice to the Debtors in connection with these cases, including (i) the analysis of the Debtors' leases and executory contracts and the assumption, rejection or assignment thereof, (ii) the analysis of the validity of liens against the Debtors' interests in property, (iii) the analysis of issues concerning the transfer of claims against, and equity securities in, the Debtors as they may impact net operating losses of the Debtors; and (iv) advice on corporate, litigation, employment, intellectual

-3-

property, governmental investigatory, regulatory and environmental matters.

4. Should the Debtors prior to confirmation of any plan of reorganization seek to expand the role of Curtis beyond conflicts matters, Curtis shall file with the Court a notice of expanded role, including a description of such expanded services, and serve such notice and description, on (a) the U.S. Trustee and (b) any official committee(s) appointed in these Chapter 11 Cases. All parties shall have seven (7) days from the date of such notice to object to such expanded role.

5. Curtis shall be compensated in accordance with and will file interim and final fee applications for allowance of its compensation and expenses and shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated November 25, 2009, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated November 25, 2009, and any order entered by the Court approving monthly compensation.

6. Curtis shall apply any remaining amounts of its prepetition retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the first Order of the Court awarding fees and expenses to Curtis.

7. Prior to any increases in Curtis' rates, as set forth in paragraph 22 of the Application, Curtis shall file a supplemental affidavit with the Court and provide ten (10) business days' notice to the Debtors, the U.S. Trustee and any official committee(s) appointed in these Chapter 11 Cases. The supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether Curtis' client has consented to the rate increase. The U.S. Trustee retains all rights to object to

-4-

any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

8. The U.S. Trustee's right to object to the reimbursement of any and all of the expenses described in the Application, the Reisman Declaration, or the Engagement Letter, are expressly reserved.

9. Notwithstanding anything to the contrary in the Application, Reisman Declaration, or Engagement Letter, Curtis shall not withdraw as Debtors' counsel prior to the effective date of any Chapter 11 plan confirmed in these Chapter 11 Cases without prior approval of the Court in accordance with Local Bankruptcy Rule 2090-1(e).

10. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application and the terms of the Engagement Letter executed by the Debtors and Curtis consistent with this Order as approved by the Court.

11. To the extent the terms of this Order are in any way inconsistent with the Application, Reisman Declaration, or Engagement Letter, the terms of this Order shall govern.

12. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13. The requirements set forth in Local Bankruptcy Rule 9013-1(a) are satisfied by the contents of the Application.

14. The Court retains jurisdiction with respect to all matters arising from, or related to, the interpretation and implementation of this Order.

15. Notice of the Application as provided herein shall be deemed good and sufficient notice of the Application.

16. Nothing contained in this Order shall prohibit the Debtors from seeking to expand the scope of Curtis' retention to the extent necessary in the future by separate application to the Court.

17. Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

18. Curtis shall be entitled to payment of fees and reimbursement of expenses for services provided by Curtis prior to the entry of this Order in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the Office of the U.S. Trustee, and further orders of this Court, to the same extent as if such services were provided subsequent to the entry of this Order.

Dated:  July 16, 2012
      New York, New York

                                        **/s/Martin Glenn**
                                      MARTIN GLENN
                          United States Bankruptcy Judge

12581596

# CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

| | | | |
|---|---|---|---|
| ALMATY | LONDON | | |
| ASTANA | MEXICO CITY | ATTORNEYS AND COUNSELLORS AT LAW | TELEPHONE 212-696-6000 |
| DUBAI | MILAN | | FACSIMILE 212-697-1559 |
| FRANKFURT | MUSCAT | 101 PARK AVENUE | WWW.CURTIS.COM |
| HOUSTON | PARIS | NEW YORK, NEW YORK 10178-0061 | |
| ISTANBUL | WASHINGTON, D.C. | | |

WRITER'S DIRECT:
TEL.: 212-696-6065
E-MAIL sreisman@curtis.com

March 5, 2012

**VIA EMAIL (tammy.hamzehpour@gmacrfc.com)**

Tammy P. Hamzehpour, Esq.
General Counsel
Residential Capital, LLC
1100 Virginia Drive
MC: 190_FTW-M01
Fort Washington, PA 19034

      Re:    **Engagement Agreement**

Dear Tammy:

      It was a pleasure meeting with you on February 10, 2012. Thank you for your time. We are pleased that Residential Capital, LLC and its subsidiaries (collectively, the "Client") have requested Curtis, Mallet-Prevost, Colt & Mosle LLP (the "Firm") to act as conflicts counsel in connection with the Client's restructuring and, to the extent necessary, any related Chapter 11 case or cases concerning the Client (collectively, the "Restructuring") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

      This engagement letter confirms the Firm's understanding concerning the Client's engagement of this Firm and the basis upon which the Firm will represent the Client in its Restructuring and such other matters as are assigned to the Firm in the future and that the Firm agrees to undertake (the "Engagement"). This engagement letter sets forth the terms of the Firm's arrangements for all matters, including staffing, fees and waivers, the scope of its engagement, the basis on which the Firm will present its bills for fees, services, related charges and disbursements, and certain limitations on the Firm's services arising from potential conflicts of interests. As usual, our Engagement is to represent the Client and not its individual directors, officers, employees or shareholders. However, the Firm anticipates that in the course of that Engagement, it may provide information or advice to directors, officers or employees in their corporate capacities or as otherwise consented to by the Firm including as described below.

11292993

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 2

Tammy P. Hamzehpour, Esq.
March 5, 2012

      I will be the principal member of the Firm who will be responsible for representing the Client in the Engagement. I will be assisted, as appropriate, by the other partner(s), counsel, associate(s) listed, with their billing rates, on Exhibit A-1.

      We understand that the Client has retained Morrison & Foerster LLP ("MoFo") as its lead restructuring counsel. The Firm will represent the Client as conflicts counsel in its efforts to work out its present financial circumstances, which may include restructuring its financial affairs and capital structure and providing legal advice to the Client with respect to proposals from one or more third-party investors or potential purchasers. The services to be provided by the Firm in connection with this Engagement will encompass all services normally and reasonably associated with this type of engagement which the Firm is requested and is able to provide and which are consistent with its ethical obligations.

      As legal counsel, the Firm is not in a position to, and the Client has not retained the Firm to, provide financial advice. With respect to this Engagement, we will closely coordinate with the Client and MoFo as to the nature of the services to be rendered by the Firm and the scope of its Engagement.

      This Engagement may involve advice as to corporate transactions and corporate governance, negotiations, out-of-court agreements with creditors, equity holders, prospective acquirers and investors, review of documents, preparation of agreements, review and preparation of pleadings, court appearances and such other activities that are deemed necessary and desirable. While the Client is pursuing diverse corporate strategies to address its current financial concerns, the Firm agrees that this Engagement also will include advice to, and representation of, the Client as debtors and debtors-in-possession, should the Client seek relief pursuant to the provisions of the Bankruptcy Code, subject to approval of the Firm's retention by the Bankruptcy Court.

      If the Client determines that the filing of reorganization case(s) under Chapter 11 of the Bankruptcy Code is appropriate, the Firm, as conflicts counsel, will perform services on the matters which MoFo cannot handle as a result of an actual or potential conflict of interest and other discrete duties as are assigned by MoFo to the Firm. Subject to ethical constraints regarding conflicts of interest, and such Bankruptcy Court approvals as may be necessary, the Firm believes that it will be available to represent the Client in any litigation which may arise in the Restructuring. In order to avoid duplication of effort, the Firm will work closely with both MoFo and the Client to arrive at an appropriate division of labor with respect to the legal tasks involved with particular attentiveness to efficiency and cost savings. In addition, the Client and the Firm understand that the United States Trustee retains all rights to object to the Firm's fee applications (including expense reimbursement) in connection with the Restructuring on all grounds, including, but not limited to, the reasonableness standard provided for in Section 330 of the Bankruptcy Code.

11292993

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
Attorneys and Counsellors at Law

Page 3

Tammy P. Hamzehpour, Esq.
March 5, 2012

       The Client and the Firm understand that to the extent this engagement letter is inconsistent with the terms of any order entered by the Bankruptcy Court in any Restructuring regarding the Client's retention of the Firm for the Engagement, the terms of such order shall govern.

       The enclosed Terms of Engagement contain the Firm's practices and policies on fees, billing, collection, conflicts and other material terms of our Engagement. Although it is not the Firm's intention to be unduly formal in its dealings with the Client, the rules covering the Firm's professional obligations require that the Firm establish a common understanding as to the terms and conditions of its engagement. The Firm acknowledges receipt of the Client's U.S. Law Firm Billing Policies and Procedures (the "Billing Policies"), and agrees to comply with the same, even to the extent that they may conflict with the Firm's Terms of Engagement.

       In connection with this Engagement, the Firm is requesting from the Client a retainer in the amount of $250,000, which will be paid through the Client's e-billing system, in as expedited manner as possible. The Firm will apply this advance toward its fees and charges as they are billed. At the time the Firm renders future Billing Statements, the Client will be asked to make an additional payment to the Firm to restore the advance to its initial level of $250,000. Any funds that the Client deposits with the Firm as an advance against the Firm's fees and charges will be treated as property of the Firm. However, any unused portion of such advance not necessary to pay for fees and expenses for this engagement after the Firm's services are concluded will be returned to the Client.

       If the contents of this letter and the attached Terms of Engagement meet with your approval and accurately reflect your understanding of your agreement with the Firm, please sign one copy of this agreement and return it to my attention by fax at (212) 697-1559 or by e-mail in PDF format at sreisman@curtis.com with an original signature to follow by mail. By signing on behalf of the Client in the space provided below, you hereby represent that you are duly authorized to enter into this engagement agreement on behalf of the Client.

       We look forward to working with you on this matter.

Sincerely,

*/s/ Steven J. Reisman*

Steven J. Reisman
A Member of the Firm

Attachments

11292993

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 4

Tammy P. Hamzehpour, Esq.
March 5, 2012

AGREED AND ACKNOWLEDGED
as of March 5, 2012:

Residential Capital, LLC and its subsidiaries

By:  */s/ Tammy P. Hamzehpour*
Name:  Tammy P. Hamzehpour
Title:   General Counsel


cc:   Larren M. Nashelsky, Esq. (w/ attachment, *Via* E-mail:  lnashelsky@mofo.com)
       (Morrison & Foerster LLP)

11292993

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**

**TERMS OF ENGAGEMENT**

We appreciate your decision to retain Curtis, Mallet-Prevost, Colt & Mosle LLP (the "<u>Firm</u>") as your legal counsel. This document explains the policies and practices that apply to our Engagement. In addition to our professional obligation, experience has shown that an understanding of these matters will contribute to a better relationship between us, which in turn will make our efforts more productive.

1. *Scope of Engagement*

You understand that the Firm is not your general counsel, and that our representation is limited to the matter identified as the "<u>Engagement</u>" in the accompanying letter. We would be pleased to consider representing you in other matters designated by you. For any new matters, however, we must first confirm that we will be able to expand the scope of the Engagement as you request, and then provide you with written confirmation as to our agreement. Unless otherwise agreed in writing, the terms set forth in these Terms of Engagement and the accompanying letter shall apply to the new matter.

In all matters in which we represent you, we will provide services of a strictly legal nature. You will not rely on us for business, investment or accounting decisions, nor to assess the character or creditworthiness of persons with whom you may deal. You will provide us with the factual information and materials we require to perform the services identified in the letter.

2. *Fees for Legal Services*

Our fees for professional services are based on hourly rates for the attorneys or paralegals who render services. In determining a reasonable fee for the time and effort required for a particular matter, we consider the ability, experience and reputation of the lawyer or lawyers in our Firm who perform the services. To facilitate this determination, we internally assign to each lawyer an hourly rate based on these factors. Our internal hourly rates are adjusted periodically, usually September 1 of each year for associates, to account for increases in our cost of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation. Attached as **Exhibit A-1** is a schedule of our current billing rates for those individual partners and other legal personnel that we anticipate would provide legal services to you under this engagement. If we provide any estimate of fees and expenses, it will be based on our best professional judgment, but it is always subject to the clear understanding that it is not a maximum or fixed fee quotation.

3. *Chargeable Costs and Disbursements*

A description of some of the disbursements and internal charges that we typically charge or allocate can be found on **Exhibit A**, but we will not charge you for any such disbursements or internal charges that would be in violation of the Billing Policies.

11292993

4.  *Outside Experts*

In the course of this engagement it may be appropriate to retain persons of special training or expertise to assist in our provision of legal services. Because there are privileges that may apply to services that an attorney requests from a third party, it may be advisable for the Firm to assume responsibility for hiring such experts, with your prior consent. You will be obligated to pay the invoices for the fees and expenses of such experts, whether they are retained by the Firm or by you directly.

5.  *Billing*

We want our clients to be satisfied with both the quality of our services and the reasonableness of our invoices and we invite questions or comments you may have about any of our fees and disbursement or the format of our invoices. Our practice is to bill on a monthly basis for the fees and chargeable costs and disbursements incurred in the preceding month. Our invoices are due upon receipt. Please notify us promptly as to any amount in such invoices that you question. The Client agrees to promptly remit the amount due to the Firm in accordance with the Client's Billing Policies, and will do so in an expedited fashion as practicable.

Payments will be made as set forth in **Exhibit B.**

6.  *Confidentiality*

For our relationship with you to succeed, it is essential for you to provide us with all factual information reasonably relevant and material to the subject matter of our engagement. A lawyer has an ethical obligation to preserve the confidences and secrets of a client. That duty is one we regard with the utmost seriousness. In instances in which we represent a corporation, partnership, or other legal entity, our relationship is with, and hence this duty of confidentiality is owed to, the entity and not to the entity's parent or subsidiary corporations, or its shareholders, members, officers, directors or partners.

7.  *Conflicts of Interest*

The Firm has conducted a customary conflicts search and is not currently adverse to Residential Capital, LLC or any of its subsidiaries on any matters, except that the Firm acts as conflicts counsel to Lehman Brothers Holdings Inc. and its affiliated debtors, etc., as well as non-debtor subsidiaries and affiliates (collectively, "Lehman") in its Chapter 11 cases pending before the Bankruptcy Court for the Southern District of New York, and in that capacity, acts for Lehman on certain nominal matters related to GMAC Mortgage Corporation and GMAC Mortgage, LLC (the "GMAC Matters"). The GMAC Matters relate to an avoidance action, a claim objection, and related matters in which the aggregate amount in dispute is less than $3 million. The Firm understands that the Client has separate counsel to deal with the GMAC Matters and that the Firm will not be asked to address the GMAC Matters in connection with the Engagement.

The attorneys at the Firm who represent Lehman in connection with the GMAC Matters will be screened completely from matters relating to this Engagement. As

such, by signing the accompanying letter for the Engagement, the Client agrees to a waiver of conflicts with respect to the GMAC Matters in the Lehman Chapter 11 cases discussed in the immediately preceding paragraph.

We wish to avoid any circumstances in which you would regard our representation of another client to be inconsistent with our duties to you. Because we represent a large number of clients in a wide variety of legal matters around the world, it is possible that, while you are a client, we will be asked to represent an existing or prospective client whose interests are actually or potentially adverse to your interests, including in negotiations, workouts and litigation. In addition, our practice includes representing debtors, official and unofficial committees of creditors and equity holders, as well as affiliates of the foregoing parties in interest (collectively, "Bankruptcy Parties"), in bankruptcy cases and foreign insolvency proceedings that are pending now, or that may be filed in the future, in the United States or foreign jurisdictions. In connection with such cases and proceedings, it is possible that we may be called upon to represent one or more Bankruptcy Parties in connection with matters that are, or become, adverse to your interests, including litigated matters.

We wish to be able to represent Bankruptcy Parties and to consider the representation of the other entities, as well as other persons who may have interests that are potentially adverse to you, but only with respect to matters that are not substantially related to our representation of you in this Engagement. The ethics that govern us permit us to accept such multiple representations, assuming certain requirements are met. During the term of the Engagement, we agree that we will not accept any representation of another client to pursue interests that, to our knowledge, are directly adverse to your interests unless the following criteria are met: (i) we notify you of a potential conflict with the other client and you consent in writing to the representation; (ii) there is no substantial relationship between this Engagement and the matter for the other client; (iii) any confidential information that we have received from you will not be utilized by the lawyers and other Firm personnel involved in the representation of the other client; (iv) our effective representation of you and the discharge of our professional responsibilities to you will not be prejudiced by our representation of the other client; and (v) the other client has also consented in writing to our undertaking the two representations.

8. *Retention of Records*

We are required by certain laws or regulations to retain records of our Engagement for minimum periods of time. Barring a legal duty or other obligation to retain records associated with an Engagement for a longer period, the Firm currently expects to discard those records (whether in paper or electronic form) when ten years have lapsed since the termination of the Engagement. However, we retain the discretion to shorten this period upon notice to you, and we will discuss alternative record retention arrangements with you if your own policies dictate longer retention periods. If we are required to maintain paper records in an offsite facility, we retain the right to charge you for the Firm's cost of continued storage and handling of those records.

11292993

We will retain the "work product" accumulated during the course of the Engagement, which will be owned by the Firm. "Work product" includes documents intended for internal law office review or otherwise reflecting preliminary or tentative conclusions of an attorney that are not ultimately communicated to the Client, and Firm administrative records such as client screening documents. All other documents created or accumulated during the course of the Engagement will be the property of the Client and returned to the Client upon its written request; provided that we may retain copies for our file and document retention purposes only.

9. *No Representations*

You should know that we cannot make any promises or guarantees to you concerning the outcome of the matter for which you have retained us and nothing in the cover letter or terms of engagement will be construed as such a promise or guarantee. If the matter does not go forward or reach a successful conclusion for any reason, you are still directly responsible for all fees and disbursements charged by the Firm in the Engagement. Additionally, your obligation to pay our fees and disbursements will not be affected by any agreement that you may have with another party to pay your legal fees and costs or any failure by that party to comply with such agreement.

10. *Termination*

We hope and trust that our relationship with you will be mutually satisfactory. Nevertheless, you are free to terminate our Engagement at any time, unless judicial approval is required for us to withdraw, in which event we agree not to oppose such withdrawal. Subject always to any applicable rule of court, we may terminate our Engagement to represent you if you fail to honor the terms of our Engagement or if, in our professional judgment, we are unable to continue the representation consistent with our ethical obligations. Notwithstanding any such termination, you will remain liable to pay all of our fees and charges incurred up to the date of termination.

Our attorney-client relationship will be terminated upon our completion of the specific services that you have retained us to perform. If you later retain us to perform further or additional services, our attorney-client relationship will be revived, subject to these and any supplemental terms of the new Engagement. The fact that we may inform you from time to time of developments which may be of interest to you, by newsletter or otherwise, should not be understood to be a renewal of an attorney-client relationship. Moreover, we have no obligation to inform you of such developments in the law unless we are specifically engaged in writing to do so.

11. *Renewal Notices of Security Interests and Liens*

If this or any subsequent Engagement involves the taking of a security interest or lien on the property of another, you are advised that applicable law may provide that public filings giving notice of security interests or liens must be preserved by further public filing prior to expiration of a prescribed period of time (e.g., five years in the case of renewal notices of security interests granted under the New York Commercial Code). Failure to make

11292993

timely renewal filings could result in the loss of the security interest or lien. We do <u>not</u> undertake to schedule or make renewal filings in your behalf. However, if you need assistance in making renewal filings in the future, we will be pleased to assist you at that time.

12. ***Applicable Law; Dispute Resolution***

This Engagement agreement, and any disputes arising out of or relating to the Engagement, will be governed by and construed in accordance with the laws of the State of New York. In the event there are any disputes regarding our invoices, you may be entitled to require arbitration under a procedure established in New York State for resolution of certain fee disputes pursuant to Part 137 of the Rules of the Chief Administrator, New York Unified Court System.

11292993

## Exhibit A

## Billing Rates and Internal Charges

[Note: This exhibit should consist of a list of the lawyers and paralegals who you reasonably anticipate would be providing services under the engagement, along with their current hourly rates. Our Billing Policies do not permit invoicing for any time spent by clerks, librarians, secretaries, etc.]

| CATEGORY | HOURLY RATE |
|---|---|
| Partners | $730-$830 |
| Of Counsel | $510-$625 |
| Associates | $300-$590 |
| Legal Assistants | $190-$230 |
| Managing Clerk | $450 |
| Other Support Personnel | $55-$325 |

The Firm charges for all third party expenses at its actual cost, except that internal charges for the items listed below are billed in accordance with the following schedule:

| DESCRIPTION OF EXPENSE | CHARGE |
|---|---|
| Document Processing | $.015 per second of edit time |
| Facsimile | Actual cost of telephone call |
| Lexis-Westlaw | Billed at firm discounted rate |
| Photocopies | $.10 per page |
| Color Copy | $.50 per page |
| Proofreading | $60.00 per hour |
| Long Distance Telephone | Sprint Regular Toll Service |

The Firm agrees that none of the above internal charges will be billed to the Client if such charge would be in violation of the Billing Policies.

The Firm acknowledges receipt of the Client's Billing Policies, and agrees to comply with the same, even to the extent that they may conflict with the Firm's Terms of Engagement.

11292993

# Exhibit A-1
**Curtis Engagement Letter with Residential Capital**

**List of Initial Attorneys and Paralegals for Engagement**

## Partners

| NAME | RATE |
|---|---|
| Timothy A. Barnes | $785 |
| Evan S. Borenstein | $785 |
| Jerrold L. Bregman | $730 |
| Michael A. Cohen | $730 |
| Eduardo A. Cukier | $785 |
| Theresa A. Foudy | $730 |
| Martin L. Forman | $675 |
| Daniel R. Lenihan | $785 |
| Jeffrey N. Ostrager | $830 |
| Steven J. Reisman | $830 |
| Andrew H. Seiden | $785 |
| Turner P. Smith | $830 |

## Counsel

| NAME | RATE |
|---|---|
| Catherine M. Baecher | $625 |
| Maryann Gallagher | $625 |

## Associates

| NAME | RATE |
|---|---|
| Peter J. Buenger | $425 |
| Dienna Ching | $425 |
| Joseph F. Clyne | $425 |
| James V. Drew | $590 |
| Joshua Geller | $550 |
| Heather Hiznay | $345 |
| Thomas Reilly | $550 |
| Jennifer Ryan | $385 |
| Heather E. Saydah | $550 |
| James Zimmer | $345 |
| Andrew Zinman | $590 |

## Paralegals

| NAME | RATE |
|---|---|
| Georgia Faust | $230 |
| Katerina Mantel | $230 |
| Stephanie Morales | $220 |
| Martine Read | $230 |
| Melissa Rutman | $220 |

11292993

**Exhibit B**

**Payment Instructions**

Payments of our invoices should be made as follows:

Curtis, Mallet-Prevost, Colt & Mosle LLP
General Post Office
PO Box 27930
New York, N.Y.  10087-7930
Re:  Residential Capital, LLC

11292993