## UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK;

| | |
|---|---|
| In Re: Residential Capital, LLC., et al., And,<br>In Re: GMAC, Mortgage Co., et al,<br>    Debtors | ) Case No. 12-bk-12020 (MG)<br>) Chapter   (Ch.11, Joint Admin. )<br>) (Related BR Case No.07-bk-57237, S.D., OHIO)<br>) (Related BR Case No. 12-bk-12032, S.D., N.Y.)<br>) JUDGE: GLENN, MARTIN |
| UNITED STATES of America, Ex Rel.,<br>Yvonne D. Lewis, et al.,<br>    Plaintiffs/ Surplus Creditors<br>Vs.<br><br>GMAC, Mortgage Co., et al,<br>    Defendants/ Bankrupt Debtor, | )<br>)<br>)<br>) Adversary Case No.: <u>12-01731</u><br>) (Related Case No. 12-bk-12020 (MG);<br>) 05-CV-7346 (03-CV-7478); 03-CV-10836;<br>) 05-CV-4555; 03-CV-6954);(11-AP-875,<br>) COA10th Dist., OHIO), (10-AP-110, COA10th<br>) Dist., OH.); (2:96-cv-494, USDC, SD, OH., E. Div.) |

### PRAECIPE



## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO;
### EASTERN DIVISION

RECEIVED
JUL 16 2012
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

| | |
|---|---|
| In Re: SIDNEY T. LEWIS, pro se,<br><br>Debtor<br><br>Social Security No.: xxx-xx-5959 | )    Case No. 07-bk-57237<br>)       (Ch.7 )<br>) (Related Bankr Case No. 05-bk-75111)<br>)<br>)    JUDGE: HOFFMAN, JOHN, Jr. |
| In Re: Yvonne D. Lewis,<br><br>Debtor<br><br>Social Security No.: xxx-xx-2390 | )    Case No. 05-bk-75111<br>)       (Ch.7 )<br>) (Related Case No. 07-bk-57237)<br>)<br>)    JUDGE: HOFFMAN, JOHN, Jr. |

## IN THE UNITED STATES DISTRICT COURT, S. D. OF OHIO
### EASTERN DIVISION (at Columbus)

| | |
|---|---|
| UNITED STATES of America, Ex Rel.,<br>Sidney T. Lewis, et al.,<br>    Plaintiffs,<br>Vs.<br><br>Larry McClatchey, et al., | )    Action No. <u>2:08-cv-1042</u><br>) (Related Dist. Ct. Cases <u>2:08-cv-16</u>; <u>2:96-cv-494</u>;<br>)    2:09-cv-179);<br>)    JUDGE: HOLSCHUH<br>)    Magistrate Judge: <u>KING</u> |

Emens, Hurd, Kegler & Ritter nka
Emens, Kegler, Brown, Hill & Ritter, LPC.
    Defendants.             )

# IN THE COURT OF APPEALS, FRANKLIN COUNTY; OHIO
## TENTH DISTRICT COURT OF APPEALS

[APP. RULE 26, 12(A); U.S. Exec. Order 12630 (see 53 FR 8859 & 53 FR 2800)]

UNITED STATES OF AMERICA, EX REL.
GMAC, Mortgage Co., et al.,
    Plaintiffs/Creditor

Vs.

Yvonne D. Lewis, et al.,
    Defendants/Discharged Debtors

:  Case No. 12-AP-506, COA10th Dist., Ohio
   (Related Case Nos. 02-MS-20; 05-JG-6455;
:  05-CV-7346 (03-CV-7478); 03-CV-10836;
   05-CV-4555; 03-CV-6954)(11-AP-875; 05-AP-
:  748; 12-AP-49; 12-AP-88)

# UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF OHIO;
## (at Columbus)

In Re: SIDNEY T. LEWIS, pro se,    )  Case No. 2:07-bk-57237
                          )      (Ch.7 )
    Debtor                )  (Related Bankr Case No. 2:05-bk-75111)
                          )
Social Security No.: xxx-xx-5959   )  JUDGE: HOFFMAN, JOHN, Jr.

In Re: Yvonne D. Lewis,        )  Case No. 2:05-bk-75111
                          )      (Ch.7 )
    Debtor                )  (Related Case No. 2:07-bk-57237)
                          )
Social Security No.: xxx-xx-2390   )  JUDGE: HOFFMAN, JOHN, Jr.

# IN THE UNITED STATES DISTRICT COURT, S. D. OF OHIO
## EASTERN DIVISION (at Columbus)

UNITED STATES of America, Ex Rel.,  )
Sidney T. Lewis, et al.,        )
    Plaintiffs           )     Action No. 2:08-cv-1042
Vs.                      )  (Related Dist. Ct. Cases 2:08-cv-16; 2:96-cv-494;
                       )  2:09-cv-179);
Larry McClatchey, et al.,       )       JUDGE: HOLSCHUH
    Defendants         )   Magistrate Judge: KING

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

[CLEAN AIR ACT, 42 U.S.C.A. §§ 7401–7671q, 7407(d)(1)(C)(i) and (5) "LEAD"; AND ASNA[1], 49 U.S.C.A. §§ 47501 et seq., 47504 (14 CFR § 150.21(e)); 18 USC §§ 666, 1001]

| | |
|---|---|
| FRIENDS OF THE EARTH, et al., <br>     Plaintiff, <br><br> Vs. <br><br> UNITED STATES E.P.A. and <br> LISA JACKSON, Administrator, <br>     Defendants. | Case: <u>1: 12-cv-00363</u> <br><br> Assigned To: Jackson, Amy Berman, Judge |

## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION <br>     Plaintiff, <br><br> vs. <br><br> AMERICAN EQUITY INVESTMENT LIFE <br> HOLDING COMPANY; <br> DAVID J. NOBLE; and <br> WENDY C. WAUGAMAN, <br>     Defendants. | Case No. <u>4:10-cv-87</u> <br><br> (Related US Dist. Ct. Case: 2:96-cv-494, S.D., Ohio) |

## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY;
### LOUISVILLE DIVISION
[18 USC§§ 664, 1962] [26 USC §§101(f)(3), 267(b)(1)& (c)(4)]

| | |
|---|---|
| BEVERLY S. MALONE, Living Trust Beneficiary, <br>     Plaintiff, <br><br> vs. | Case No. 3:01-cv-259(H) <br> [15 USC §§ 77c(a)(8), 77k; 26 USC §101(f)(3)] <br><br> JUDGE: JOHN HEYBURN |

---

[1] "ASNA, codified at 49 U.S.C. § 47501 et seq., directs the Secretary of Transportation to establish "a single system of measuring noise" from aircraft operations and the exposure of individuals to that noise. 49 U.S.C. § 47502."(See: Nat'l Bus. Aviation Ass'n v. City of Naples Airport Auth., 162 F. Supp. 2d 1343, 1350 (2001))

AMERICAN EQUITY INVESTMENT LIFE          )
HOLDING COMPANY ("AEL") et al., and      )
ADDISON INSURANCE MARKETING (AIM)        )
    Defendants.                          )

### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA; CENTRAL DIVISION (at Orlando)

[18 USC§§664, 1962] [26 USC §§101(f)(3), 267(b)(1)& (c)(4)]

Charles Strube, Trustee and Living Trust Settlor, et al.      )
    Plaintiff,                                               )
                                  )    Case No. 6:01-cv-1236-ORL-19-DAB
                                  )
vs.                                                          )
                                  )
AMERICAN EQUITY INVESTMENT LIFE          )    JUDGE: _____
HOLDING COMPANY ("AEL") et al., and      )
ADDISON INSURANCE MARKETING (AIM)        )
    Defendants.                          )

---

### PRAECIPE

---

To:  Clerk of Courts for the U.S. Bankruptcy Crt. for the S. D. of New York, at Manhattan

Please find enclosed and file the following:

1. NOTICE AND APPLICATION FOR RECONSIDERATION OF ENTRY OF DENIAL FILED JULY 6, 2012; ON GROUNDS OF FEDERAL PRE-EMPTIONS UNDER "AVIA-TION SAFETY AND NOISE ABATEMENT ACT" ("ASNA ACT") 49 USC §§ 47504(a)(2)(D)&(E), 44715(c) FOR IMPACTED ARGYLE PARK SUBDIVISION PROPER-TIES EFFECTIVE SEPT. 25, 1987; INCLUDING FEDERAL PROTECTIONS UNDER U.S. EXECUTIVE ORDERS, E.O. # 13610 REPORTED MAY 14, 2012; E.O. # 13406 REPORTED JUNE 23, 2006; AND E.O. # 12630 REPORTED MARCH 15, 1988- "GOVERNMENTAL ACTIONS AND INTERFERENCE WITH CONSTITUTIONALLY PROTECTED PROPERTY RIGHTS";

Dated: June 18, 2012   _Sidney Lewis_          Dated: June 18, 2012   _Yvonne D. Lewis_
              Sidney T. Lewis, pro se                                    Yvonne D. Lewis, pro se
              1875 Alvason Avenue                                        1875 Alvason Avenue
              Columbus, Ohio  43219                                      Columbus, Ohio  43219
              (614) 940-3306                                             (614) 940-3306

FILED
COURT OF APPEALS
FRANKLIN CO. OHIO
2012 JUL 10 PM 4:45
CLERK OF COURTS

IN THE COURT OF APPEALS, FRANKLIN COUNTY; OHIO
TENTH DISTRICT COURT OF APPEALS

[APP. RULE 26, 12(A); U.S. Exec. Order 12630 (see 53 FR 8859 & 53 FR 2800[1])]

UNITED STATES OF AMERICA, EX REL.
GMAC, Mortgage Co., et al.,        :    Case No. 12-AP-506, COA10th Dist., Ohio
        Plaintiffs/Creditor             (Related Case Nos. 02-MS-20; 05-JG-6455;
Vs.                                :    05-CV-7346 (03-CV-7478); 03-CV-10836;
                                        05-CV-4555; 03-CV-6954)(11-AP-875; 05-AP-
Yvonne D. Lewis, et al.,           :    748; 12-AP-49; 12-AP-88)
        Defendants/Discharged Debtors


**NOTICE AND APPLICATION FOR RECONSIDERATION OF ENTRY OF DENIAL
FILED JULY 6, 2012; ON GROUNDS OF FEDERAL PRE-EMPTIONS UNDER "AVIA-
TION SAFETY AND NOISE ABATEMENT ACT" ("ASNA ACT") 49 USC §§
47504(a)(2)(D)&(E), 44715(c) FOR IMPACTED ARGYLE PARK SUBDIVISION PROPER-
TIES EFFECTIVE SEPT. 25, 1987; INCLUDING FEDERAL PROTECTIONS UNDER U.S.
EXECUTIVE ORDERS, E.O. # 13610 REPORTED MAY 14, 2012; E.O. # 13406 REPORT-
ED JUNE 23, 2006; AND E.O. # 12630 REPORTED MARCH 15, 1988- "GOVERNMENTAL
ACTIONS AND INTERFERENCE WITH CONSTITUTIONALLY PROTECTED PROP-
ERTY RIGHTS";**


UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK;

In Re: Residential Capital, LLC., et al., And,    )   Case No. 12-bk-12020 (MG)
In Re: GMAC, Mortgage Co., et al,                  )   Chapter      (Ch.11, Joint Admin. )
        Debtors                                    ) (Related BR Case No.07-bk-57237, S.D., OHIO)
                                                   ) (Related BR Case No. 12-bk-12032, S.D., N.Y.)
                                                   )   JUDGE: GLENN, MARTIN
                                                   )
UNITED STATES of America, Ex Rel.,                 )
Yvonne D. Lewis, et al.,                           )       Adversary Case No.: 12-01731
        Plaintiffs/ Surplus Creditors              )   (Related Case No. 12-bk-12020 (MG);
Vs.                                                )   05-CV-7346 (03-CV-7478); 03-CV-10836;
                                                   )   05-CV-4555; 03-CV-6954);(11-AP-875,
GMAC, Mortgage Co., et al,                         )   COA10th Dist., OHIO), (10-AP-110, COA10th

---

[1] "EFFECTIVE DATE: The effective date of the FAA's approval of the Port Columbus Interna-
tional Airport noise compatibility program is **September 25, 1987** *** Program elements underlined approved
consist of operational controls, such as establishment of **departure tracks** to the west***." (See: 53
FR 2800)

Defendants/ Bankrupt Debtor,       )  Dist., OHIO)

## UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF OHIO;
### (at Columbus)

[18 USC §§ 242, 245(b)(2)(B), 664, 666, 1962][29 USC §§ 1109, 1131, 1132(h), 1140]
[26 USC §§ 101(h), 267(b)(1)][42 USC §§7413(a)(3[2]), (c) and (g), 4651(3[3])][49 USC § 44715(c)[4]]

| | |
|---|---|
| In Re: SIDNEY T. LEWIS, pro se,    ) | Case No. 2:07-bk-57237 |
|      Debtor                ) | (Ch.7 ) |
|                        ) | (Related Bankr Case No. 2:05-bk-75111) |
| Social Security No.: xxx-xx-5959   ) | JUDGE: HOFFMAN, JOHN, Jr. |

| | |
|---|---|
| In Re: Yvonne D. Lewis,        ) | Case No. 2:05-bk-75111 |
|      Debtor                 ) | (Ch.7 ) |
|                        ) | (Related Case No. 2:07-bk-57237) |
| Social Security No.: xxx-xx-2390   ) | JUDGE: HOFFMAN, JOHN, Jr. |

## IN THE UNITED STATES DISTRICT COURT, S. D. OF OHIO
### EASTERN DIVISION (at Columbus)

[FALSE CLAIMS, ERISA, AND RICO, 31 U.S.C.A. §§ 3729 to 3733; 18 USC §§ 664, 666, 1962]

| | |
|---|---|
| UNITED STATES of America, Ex Rel.,   ) | |
| Sidney T. Lewis, et al.,           ) | Action No. <u>2:08-cv-1042</u> |
|     Plaintiffs          ) | (Related Dist. Ct. Cases 2:08-cv-16; 2:96-cv- |
| 494;                       | |
| Vs.                       ) | 2:09-cv-179); |
|                       ) | JUDGE: HOLSCHUH |
| Larry McClatchey, et al.,     ) | Magistrate Judge: KING |
|     Defendants | |

---

[2] (See: 42 USC § 7413(a)(3)- FEDERAL ENFORCEMENT reads: "(3) EPA enforcement)

[3] 42 U.S.C. § 4651(3) reads: "(3) Before the initiation of negotiations for real property, **the head of the Federal agency concerned shall establish an amount which he believes to be just compen-sation** therefor and **shall make a prompt offer to acquire the property** for the full amount so es-tablished."

[4] **49 U.S.C. § 44715(c) reads: "(c) Proposed Regulations of Administrator of Environmental Protection Agency.— The Administrator of the Environmental Protection Agency shall sub-mit to the Administrator of the Federal Aviation Administration proposed regulations to con-trol and abate aircraft noise ***."**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

[CLEAN AIR ACT, 42 U.S.C.A. §§ 7401–7671q, 7407(d)(1)(C)(i) and (5) "LEAD"; AND ASNA[5],
49 U.S.C.A. §§ 47501 et seq., 47504 (14 CFR § 150.21(e)); 18 USC §§ 666, 1001]

| | | |
|---|---|---|
| FRIENDS OF THE EARTH, et al.,<br>     Plaintiff, | ) )<br>) | Case: 1: 12-cv-00363 |
| Vs. | )<br>) | Assigned To: Jackson, Amy Berman, Judge |
| UNITED STATES E.P.A. and<br>LISA JACKSON, Administrator,<br>     Defendants. | )<br>)<br>)<br>) | |

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>     Plaintiff, | )<br>) | |
| vs. | )<br>) | Case No. 4:10-cv-87 |
| AMERICAN EQUITY INVESTMENT LIFE<br>HOLDING COMPANY;<br>DAVID J. NOBLE; and<br>WENDY C. WAUGAMAN,<br>     Defendants. | ) (Related US Dist. Ct. Case: 2:96-cv-494, S.D., Ohio)<br>)<br>)<br>)<br>) | |

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY;
LOUISVILLE DIVISION**
[18 USC§§ 664, 1962] [26 USC §§101(f)(3), 267(b)(1)& (c)(4)]

| | | |
|---|---|---|
| BEVERLY S. MALONE, Living Trust Beneficiary,<br>     Plaintiff, | )<br>) | Case No. 3:01-cv-259(H) |
| §101(f)(3)]<br>vs. | )<br>) | [15 USC §§ 77c(a)(8), 77k; 26 USC |
| | ) | |

---

[5] "ASNA, codified at 49 U.S.C. § 47501 et seq., directs the Secretary of Transportation to establish "a single system of measuring noise" from aircraft operations and the exposure of individuals to that noise. 49 U.S.C. § 47502."(See: Nat'l Bus. Aviation Ass'n v. City of Naples Airport Auth., 162 F. Supp. 2d 1343, 1350 (2001))

AMERICAN EQUITY INVESTMENT LIFE        )        JUDGE: JOHN HEYBURN
HOLDING COMPANY ("AEL") et al., and    )
ADDISON INSURANCE MARKETING (AIM)      )
    Defendants.                        )
                                       )

## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA; CENTRAL DIVISION (at Orlando)

[18 USC§§664, 1962] [26 USC §§101(f)(3), 267(b)(1)& (c)(4)]

Charles Strube, Trustee and Living Trust Settlor, et al.    )
    Plaintiff,                                              )        Case No. 6:01-cv-1236-ORL-19-DAB
                                                            )
vs.                                                         )
                                                            )
                                                            )        JUDGE: _____
AMERICAN EQUITY INVESTMENT LIFE                             )
HOLDING COMPANY ("AEL") et al., and                         )
ADDISON INSURANCE MARKETING (AIM)                           )
    Defendants.                                             )
                                                            )

## NOTICE

TO: Bankrupt Debtor GMAC Mortgage, LLC., as alleged debtor-in-possession/ mortgage servicer [See: 15 U.S.C. §1639A(a)(1) "servicer"] and to the Bankruptcy Creditor Huntington National Bank (HNB), as alleged residential mortgage loan originator [See: 15 U.S.C. §1639B "loan originator"] collectively as alleged "MORTGAGEES" ("Transferors") in support of the "at issue" "Fraudulent Writ of Possession" to FEDERAL HOME MORTGAGE ASSOCIATION (i.e. "Fannie Mae") ("Transferee"). [See: 12 USC § 1452 - FEDERAL HOME LOAN MORTGAGE CORPORATION; 24 CFR §81.86(a) ("Enforcement and Jurisdiction -If a GSE fails to comply with a **final decision**, the Secretary may request the **Attorney General of the United States** to bring an action in the United States District Court for the District of Columbia for the enforcement of the notice or order- **(a) For a cease-and-desist order**")]

PLEASE TAKE NOTICE that under the authorities set forth in **MISTRETTA V. UNITED STATES, 488 U.S. 361, 380[6] (U.S. 1989)** citing, **MORRISON V. OLSON**, 487 U.S. 654, 685-696 (1988) and **BOWSHER V. SYNAR**, 478 U.S., at 725, pursuant to the *"non-delegation doctrine"* as rooted in the *"SEPARATION OF POWERS CLAUSE[7]"* under Article I, § 1, of the United States

---

[6] "***the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty. See, e. g., Morrison v. Olson, 487 U.S. 654, 685-696 (1988); Bowsher v. Synar, 478 U.S., at 725. (See: **Mistretta v. United States, 488 U.S. 361, 380 (U.S. 1989)**);

[7] ("The non-delegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of government."). (See: **Cent. N.Y. Fair Bus. Ass'n v. Salazar, 2010 U.S. Dist. LEXIS 17772 (N.D.N.Y Mar. 1, 2010))**(also see: **United States v. Am. Elec. Power Serv. Corp.,**

Constitution (See: Article I, § 1, of the U.S. Const., at "separation of powers"), the undersigned Appellants/Defendants, SIDNEY LEWIS and YVONNE D. LEWIS (Relators/"whistleblowers") and U.S. Attorney General, of the US DOJ, by GLENN D. GILLETTE, Civil Division, and MARK KAPPELHOFF, Chief, Criminal Section; and S.E.C. by Sean McKessy, Chief of the Office of the Whistleblower (Ex. Relators pursuant to **26 USC § 7201;** 15 USC § 78j(a)&(b)[8] for "at issue" RICO/Securities transactions exempted from the registration requirements of section 5 of the Securities Act of 1933 (the Act) (15 U.S.C.77a *et seq.,* as amended), (see: 17 C.F.R. §§ 230.500 et seq.); and 18 U.S.C. §§ 371, 664, 666, 1962 in Securities/ERISA/RICO case nos. 96-cv-494, USDC, S.D. of **OHIO**, E. Div.; 4:10-cv-87, USDC, S.D. of **IOWA**, Cent. Div.; 1:12-cv-00363, USDC, **DISTRICT OF COLUMBIA**.; and 12-bk-12020, USBC, S.D. of **NEW YORK**; 01-cv-259, USDC, W.D. of **KENTUCKY**, at Louisville Div.; and 6:01-cv-1236-ORL-19-DAB, USDC, M.D. of **FLORIDA**, at Orlando), and ("Transferees") will move the Tenth District Court of Appeals, OHIO on JULY 10, 2012, or as soon thereafter as Ex. Relator as counsel can be heard, for an Order to dismiss the instant and related "Foreclosure Actions" for Lots 11 and 17, in the impacted Argyle Park Subdivision ("APS") under CPC case nos. 05-CV-4555 and 03-CV-6954, Franklin County, Ohio on the ground(s) that on **MAY 14, 2012** Appellee, GMAC Mortgage LLC as an alleged "Debtor-In-Possession" of aforesaid APS property as owner entitled to Federal Agency's **Notice to owner** of **"Regulatory Taking**[9]**"** (See: 49 CFR 24.102(B) "**Notice to owner**") in the Federal "ASNA" program by and through Debtor GMAC's false statement of "2012 possession" contrary to the federal protections in "1988 E.O. 12630" (See: **EXHIBIT B-3**) and the affirmed "Regulatory Taking" by "aircraft Av-gas emissions[10]" in "2012 E.P.A. Admission" (See: **EXHIBIT C**) in support of its voluntary petition in violation of 11 U.S.C. §§ 1203, 1204(a) and 42 U.S.C. §§ 4651, 7413, 7545(m)& (j) "REGULATION OF FUELS", in the United States Bankruptcy Court for the

---

**218 F. Supp. 2d 931, 944 (S.D. Ohio 2002))**

[8] See: 15 USC § 78j(a)&(b) - MANIPULATIVE AND DECEPTIVE DEVICES READ IN PERTINENT PART: "***any securities-based swap agreement [1] any manipulative or deceptive device***" (See: 15 USC § 78J(b));

[9] See: **50 FR 9386** at "Executive Order (E.O.) 12291 requires the preparation of a *regulatory impact analysis* (RIA) for major rules*** EPA determined that the proposed regulations met the definition of a major rule under E.O. 12291, and prepared a preliminary RIA."

[10] See: **50 FR 9386** at (Secs. 211 and 301(a) of the Clean Air Act, as amended *(42 U.S.C. 7545 and 7601(a)))*

Southern District of New York in case no. 12-bk-12032 and 12-bk-12020 (MG); and Appellee GMAC failed to obtain a "Due Process" evidentiary hearing as a preliminary hearing to "cure" or "purge" the false Process Server's Affidavit before the "vesting" of the "Affirmative Defense" filed by Appellants on May 31, 2005 to effect its status as a Debtor in Possession of the "at issue" real property of Argyle Park Subdivision in Columbus, OHIO for transfer possession of the Chapter 11 Trustees for Region 2, being the **US Trustees for the Southern District of NY.,** TRACY HOPE DAVIS, LINDA A. RIFFKIN and BRIAN S. MASUMOTO, 33 Whitehall St 21st Fl, Region 2,New York, NY 10004, pursuant to 11 U.S.C. §§ 362, 541, 703, 704, and 28 U.S.C. §§ 547, 586. (See: 28 U.S.C. §§ 547, 586 and 11 U.S.C. §§ 362, 541(a), 703, 704)


Respectfully submitted,

Dated: June 27, 2012._____      Dated: June 27, 2012. _____
      Sidney T. Lewis, pro se                      Yvonne D. Lewis, pro se
      1875 Alvason Avenue                          1875 Alvason Avenue
      Columbus, Ohio 43219                         Columbus, Ohio 43219
      (614) 940-3306                               (614) 940-3306


## APPLICATION FOR RECONSIDERATION

Appellants SIDNEY LEWIS and YVONNE D. LEWIS defendant-appellant herein, requests a reconsideration of the decision announced by this Court on **JULY 6, 2012**, and in support thereof respectfully states:


1. The Court, in its Entry of Denial filed **JULY 6, 2012** (See Attached: EXHIBIT 1, ORDER, dated July 6, 2012), has failed to satisfy the requirements of the "*non-delegation doctrine*" as rooted in the "*SEPARATION OF POWERS CLAUSE* (See: Mistretta Id., Supra, 488 U.S. at pp. 380), that "ASNA, codified at 49 U.S.C. § 47501 et seq., directs the Federal Secretary of Transportation to regulate "uncompensated acquisitions", "uncompensated aviation

easements" or otherwise uncompensated APS property rights from FAA, FAR part 150, "Regulatory Takings" effective Sept. 25, 1987 under 49 U.S.C. § 47504(a)(2)(E). (See: Nat'l Bus. Aviation Ass'n Id., Supra, 162 F. Supp. 2d at pp. 1350)

## "DOCTRINE OF SEPARATION OF POWERS"

"Article II of the Constitution gives the Executive Branch of the government "exclusive authority and absolute discretion to decide whether to prosecute a case." United States v. Nixon, 418 U.S. 683, 693, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974).

The doctrine of separation of powers prohibits any Branch of the federal government from exercising "control or coercive influence, direct or indirect," over either of the other Branches. Mistretta v. United States, 488 U.S. 361, 380, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989) (internal quotation marks omitted)."

**(See: United States v. Jennings, 652 F.3d 290, 300 (2d Cir. 2011))(Also See: United States v. Traficant, 368 F.3d 646, 650 (6th Cir. Ohio 2004))**

It follows that EO 13610 (See: **EXHIBIT B-1**) and EO 12630 (See: **EXHIBIT B-3**) and gives the Executive Branch of the government (See: fnt. 5, Supra, Secretary of Transportation) "exclusive authority and absolute discretion" to decide whether or not to prosecute case no 05-CV-4555 and prohibits the judicial Branch (i.e. Common Pleas and Bankruptcy Courts) of the state and federal government from exercising "control or coercive influence, direct or indirect," over APS property rights after a FAA, FAR part 150, "Regulatory Taking[11]" in violation of the **Just Compensation Clause of the Fifth Amendment** effective Sept. 25, 1987 (See: **EXHIBIT A**)

---

[11] "When the burden on the landowner "results from governmental action that amounted to a taking, the **Just Compensation Clause of the Fifth Amendment** requires that the government pay the landowner for the value of the use of the land during this period. * * * Invalidation of the ordinance or its successor ordinance after this period of time, though converting the taking into a 'temporary' one, is not a sufficient remedy to meet the demands of the Just Compensation Clause." First English, 482 U.S. at 319, 107 S. Ct. 2378, 96 L. Ed. 2d 250." (See: **State ex rel. Shemo v. City of Mayfield Heights, 95 Ohio St. 3d 59, 67 (Ohio 2002))**

through May 14, 2012 under 49 U.S.C. § 47504(a)(2)(E) and 42 U.S.C. § 4651(3) (See: fnt. 3, Supra).

Reconsideration is requested since Appellants continues to have an adequate defense relating to service of process as an **affirmative defense** for **insufficiency of service of process since May 31, 2005.**

""A defendant who raises an **affirmative defense** for **insufficiency of service of process** before actively participating in the case *continues to have an adequate defense relating to service of process.*" Coke v. Mayo (Feb. 4, 1999), 10th Dist. No. 98AP-550, 1999 Ohio App. LEXIS 346, citing First Bank of Marietta v. Cline (1984), 12 Ohio St.3d 317, 12 Ohio B. 388, 466 N.E.2d 567."

(See: DeLarosa v. Taylor Edwards Addison Transp., 2005 Ohio 1130, P10 (Ohio Ct. App., Wayne County Mar. 16, 2005)

Respectfully submitted,

Dated: July 10, 2012. _____ Dated: July 10, 2012. _____
Sidney T. Lewis, pro se                    Yvonne D. Lewis, pro se
1875 Alvason Avenue                        1875 Alvason Avenue
Columbus, Ohio 43219                       Columbus, Ohio 43219
(614) 940-3306                             (614) 940-3306

I certify that I have mailed or otherwise delivered a copy of this Notice and Application for Reconsideration under EO 13610 (See: **EXHIBIT B-1**) and EO 12630 (See: **EXHIBIT B-3**) to all counsel of record this 10th day of July, 2012.

Dated: July 10, 2012. _____ Dated: July 10, 2012. _____
Sidney T. Lewis, pro se                    Yvonne D. Lewis, pro se

20873 - J90

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

FILED
OF APPEALS
FRANKLIN CO. OHIO

?0?? JUL -6 AM 8: 50

CLERK OF COURTS

GMAC Mortgage Corporation,          :

        Plaintiff-Appellee,          :

v.          :          No. 12AP-506

Yvonne D. Lewis aka          :          (ACCELERATED CALENDAR)
Yvonne D. Webb-Lewis et al.,

        Defendants-Appellants.          :

                  :

## JOURNAL ENTRY

       This appeal was dismissed on June 18, 2012.  Appellants' June 19, 2012 motion for a stay of the trial court's confirmation of sale order is denied.

_____
Judge William A. Klatt

_____
Judge Peggy Bryant

_____
Judge John A. Connor

EX. 1

20869 − H70

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

FILED
~~COURT~~ OF APPEALS
~~FIRST~~ ~~N CO. OHIO~~

2012 JUN 18 AM 10: 55

CLERK OF COURTS

GMAC Mortgage Corporation,                     :

            Plaintiff-Appellee,                :

v.                                             :          No. 12AP-506

Yvonne D. Lewis aka                            :          (ACCELERATED CALENDAR)
Yvonne D. Webb-Lewis et al.,

            Defendants-Appellants.             :

                                               :


<u>JOURNAL ENTRY OF DISMISSAL</u>


            Appellants not demonstrating that there are reasonable grounds for this
appeal, and appellants having been adjudicated vexatious litigators by the Franklin
County Court of Common Pleas, appellants' June 12, 2012 motion for leave to file an
appeal challenging the trial court's confirmation of sale order is denied, and this appeal
is hereby dismissed.


_____
Judge William A. Klatt

_____
Judge Peggy Bryant

_____
Judge John A. Connor

EXHIBIT A

Page 1

DEPARTMENT OF TRANSPORTATION

Federal Aviation Administration

AGENCY: Federal Aviation Administration, DOT.

*53 FR 2800*

February 1, 1988

Approval of Noise Compatibility Program; **Port Columbus International Airport, Columbus,** OH
ACTION: Notice.

SUMMARY: The Federal Aviation Administration (FAA) announces its findings on the noise compatibility program
submitted by the City of **Columbus,** Department of Public Utilities and Aviation under the provisions of Title I of the
Aviation Safety and Noise Abatement Act of 1979 (Pub. L. 96-193) and 14 CFR Part 150. These findings are made in
recognition of the description of Federal and nonfederal responsibilities in Senate Report Number 96-52 (1980). On July
28, 1987, the FAA determined that the noise exposure maps submitted by the City of **Columbus,** Department of Public
Utilities and Aviation under Part 150 were in compliance with applicable requirements. On September 25, 1987, the
Administrator approved the **Port Columbus International Airport** noise compatibility program. All of the recommen-
dations of the program were approved except one measure, A.3., which relates to specific flight procedures requiring
additional information and analysis.

EFFECTIVE DATE: The effective date of the FAA's approval of the **Port Columbus International Airport** noise
compatibility program is September 25, 1987.

FOR FURTHER INFORMATION CONTACT: Prescott C. Snyder, Federal Aviation Administration, Great Lakes Re-
gion, **Airports** Division, AGL-611, 2300 East Devon Avenue, Des Plaines, Illinois 60018, (312) 694-7538. Documents
reflecting this FAA action may be reviewed at this same location.

TEXT: SUPPLEMENTARY INFORMATION: This notice announces that the FAA has given its overall approval to
the noise compatibility program for **Port Columbus International Airport,** effective September 25, 1987.

Under section 104(a) the Aviation Safety and Noise Abatement Act (ASNA) of 1979, (hereinafter referred to as
"the ACT") an **airport** operator who has previously submitted a noise exposure map may submit to the FAA a noise
compatibility program which sets forth the measures taken or proposed by the **airport** operator for the reduction of ex-
isting noncompatible land uses and prevention of additional noncompatible land uses within the area covered by the
noise exposure maps. The Act requires such programs to be developed in consultation with interested and affected par-
ties including local communities, government agencies, **airport** users, and FAA personnel.

Each **airport** noise compatibility program developed in accordance with Federal Aviation Regulation (FAR) Part
150 is a local program, not a Federal program. The FAA does not substitute its judgment for that of the **airport** proprie-
tor with respect to which measures should be recommended for action. The FAA's approval or disapproval of FAR Part
150 program recommendations is measured according to the standards expressed in Part 150 and the Act and is limited
to the following determinations:

a. The noise compatibility program was developed in accordance with the provisions and procedures of FAR Part
150;

b. Program measures are reasonably consistent with achieving the goals of reducing existing noncompatible land
uses around the **airport** and preventing the introduction of additional noncompatible land uses;

EXHIBIT X A

c. Program measures would not create an undue burden on interstate or foreign commerce, unjustly discriminate against types or classes of aeronautical uses, violate the terms of **airport** grant agreements, or intrude into areas preempted by the Federal Government; and

d. Program measures relating to the use of flight procedures can be implemented within the period covered by the program without derogating safety, adversely affecting the efficient use and management of the navigable airspace and air traffic control systems, or adversely affecting other powers and responsibilities of the Administrator prescribed by law.

Specific limitations with respect to FAA's approval of an **airport** noise compatibility program are delineated in FAR Part 150, section 150.5. Approval is not a determination concerning the acceptability of land uses under Federal, state, or local law. Approval does not by itself constitute an FAA implementing action. A request for Federal action or approval to implement specific noise compatibility measures may be required, and an FAA decision on the request may require an environmental assessment of the proposed action. Approval does not constitute a commitment by the FAA to financially assist in the implementation of the program nor a determination that all measures covered by the program are eligible for grant-in-aid funding from the FAA. Where Federal funding is sought, requests for project grants must be submitted to the FAA Detroit **Airports** District Office in Belleville, Michigan.

The City of **Columbus,** Public Utilities and Aviation Department submitted to the FAA on March 26, 1987, the noise exposure maps, descriptions, and other documentation produced during the noise compatibility planning study conducted from May 3, 1985 through March 26, 1987. The **Port Columbus International Airport** noise exposure maps were determined by the FAA to be in compliance with applicable requirements on July 28, 1987. Notice of this determination was published in the Federal Register on August 10, 1987.

The **Port Columbus International Airport** study contains a proposed noise compatibility program comprised of actions designed for phased implementation by **airport** management and adjacent jurisdictions from the date of study completion to beyond the year 1992. It was requested that the FAA evaluate and approve this material as a noise compatibility program as described in section 104(b) of the Act. The FAA began its review of the program on March 26, 1987, and was required by a provision of the Act to approve or disapprove the program within 180 days (other than the use of new flight procedures for noise control). Failure to approve or disapprove such program within the 180-day period would have been deemed to be an approval of such program.

The submitted program contained nineteen (19) proposed actions for noise mitigation, on and off the **airport.** The FAA completed its review and determined that the procedural and substantive requirements of the Act and FAR Part 150 have been satisfied. The overall program, therefore, was approved by the Administrator effective September 25, 1987.

Outright approval was granted for eighteen (18) of nineteen (19) specific program elements submitted. One measure, A.3, was not approved at this time, because it relates to specific flight procedures which require additional information and analysis. Program elements approved consist of operational controls, such as establishment of departure tracks to the west, use of standard noise abatement departure profile, restrictions on maintenance run ups and other noise relief procedures. Also, included are land use strategies such as land acquisition, easements, soundproofing, zoning restrictions, and building code requirements. Finally, program management elements are included such as establishing and staffing a noise abatement office to monitor **airport** noise, document noise complaints, educate the public on **airport** noise, and update the noise compatibility program.

These determinations are set forth in detail in a Record of Approval endorsed by the Administrator on September 25, 1987.

The Record of Approval, as well as other evaluation materials and the documents comprising the submittal, are available for review at the FAA office listed above and at the administrative offices of the City of **Columbus,** Department of Public Utilities and Aviation.

Issued in Des Plaines, Illinois, on December 29, 1987.

Monte R. Belger,

Acting Director, Great Lakes Region.
[FR Doc. 88-1964 Filed 1-29-87; 8:45 am]

EX. # A

Page 1

FEDERAL REGISTER

Vol. 62, No. 174

Notices

DEPARTMENT OF **TRANSPORTATION** (DOT)

Federal Aviation Administration (FAA)

**Notice of Intent To Rule on Application To Impose a Passenger Facility Charge (PFC) at Port Columbus International Airport and Use the Revenue at Port Columbus International and Bolton Field Airports, Columbus, OH**

*62 FR 47528*

**DATE:** Tuesday, September 9, 1997

**ACTION:** Notice of intent to rule on application.

**[*47528]**

**SUMMARY:** The FAA proposes to rule and invites public comment on the application to impose a PFC at Port **Columbus** International and use the revenue at Port **Columbus** International and Bolton Field Airports under the provisions of the Aviation Safety and Capacity Expansion Act of 1990 (Title IX of the Omnibus Budget Reconciliation Act of 1990) (Pub. L. 101-508) and part 158 of the Federal Aviation Regulations (14 CFR part 158).

**DATES:** Comments must be received on or before October 9, 1997.

**ADDRESSES:** Comments on this application may be mailed or delivered in triplicate to the FAA at the following address: Federal Aviation Administration, Detroit Airports District Office, Willow Run Airport, East, 8820 Beck Road, Belleville, Michigan 48111.

In addition, one copy of any comments submitted to the FAA must be mailed or delivered to Mr. Larry Hedrick, Executive Director of the **Columbus** Municipal Airport Authority at the following address: Port **Columbus** International Airport, 4600 International Gateway, **Columbus, Ohio** 43219.

Air carriers and foreign air carriers may submit copies of written comments previously provided to the **Columbus** Municipal Airport Authority under § 158.23 of part 158.

**FOR FURTHER INFORMATION CONTACT:** Ms. Mary W. Jagiello, Program Manager, Federal Aviation Administration, Detroit Airports District Office, Willow Run Airport, East, 8820 Beck Road, Belleville, Michigan 48111, (313) 487-7296. The application may be reviewed in person at this same location.

**SUPPLEMENTARY INFORMATION:** The FAA proposes to rule and invites public comment on the application to impose a PFC at Port **Columbus** International and use the revenue at Port **Columbus** International and Bolton Field Airports under the provisions of the Aviation Safety and Capacity Expansion Act of 1990 (Title IX of the Omnibus Budget Reconciliation Act of 1990) (Pub. L. **[*47529]** 101-508) and part 158 of the Federal Aviation Regulations (14 CFR part 158).

On August 14, 1997, the FAA determined that the application to impose and use the revenue from a PFC submitted by **Columbus** Municipal Airport Authority was substantially complete within the requirements of § 158.25 of part 158. The FAA will approve or disapprove the application, in whole or in part, no later than November 13, 1997.

The following is a brief overview of the application.

*EXHIBIT No A*

EXHIBIT B-1



# FEDERAL REGISTER

Vol. 77          Monday,

No. 93           May 14, 2012

Part V

## The President

Executive Order 13610—Identifying and Reducing Regulatory Burdens

28469

Federal Register

Vol. 77, No. 93

Monday, May 14, 2012

# Presidential Documents

Title 3—

The President

Executive Order 13610 of May 10, 2012

## Identifying and Reducing Regulatory Burdens

By the authority vested in me as President by the Constitution and the laws of the United States of America, and in order to modernize our regulatory system and to reduce unjustified regulatory burdens and costs, it is hereby ordered as follows:

**Section 1.** *Policy.* Regulations play an indispensable role in protecting public health, welfare, safety, and our environment, but they can also impose significant burdens and costs. During challenging economic times, we should be especially careful not to impose unjustified regulatory requirements. For this reason, it is particularly important for agencies to conduct retrospective analyses of existing rules to examine whether they remain justified and whether they should be modified or streamlined in light of changed circumstances, including the rise of new technologies.

Executive Order 13563 of January 18, 2011 (Improving Regulation and Regulatory Review), states that our regulatory system "must measure, and seek to improve, the actual results of regulatory requirements." To promote this goal, that Executive Order requires agencies not merely to conduct a single exercise, but to engage in "periodic review of existing significant regulations." Pursuant to section 6(b) of that Executive Order, agencies are required to develop retrospective review plans to review existing significant regulations in order to "determine whether any such regulations should be modified, streamlined, expanded, or repealed." The purpose of this requirement is to "make the agency's regulatory program more effective or less burdensome in achieving the regulatory objectives."

In response to Executive Order 13563, agencies have developed and made available for public comment retrospective review plans that identify over five hundred initiatives. A small fraction of those initiatives, already finalized or formally proposed to the public, are anticipated to eliminate billions of dollars in regulatory costs and tens of millions of hours in annual paperwork burdens. Significantly larger savings are anticipated as the plans are implemented and as action is taken on additional initiatives.

As a matter of longstanding practice and to satisfy statutory obligations, many agencies engaged in periodic review of existing regulations prior to the issuance of Executive Order 13563. But further steps should be taken, consistent with law, agency resources, and regulatory priorities, to promote public participation in retrospective review, to modernize our regulatory system, and to institutionalize regular assessment of significant regulations.

**Sec. 2.** *Public Participation in Retrospective Review.* Members of the public, including those directly and indirectly affected by regulations, as well as State, local, and tribal governments, have important information about the actual effects of existing regulations. For this reason, and consistent with Executive Order 13563, agencies shall invite, on a regular basis (to be determined by the agency head in consultation with the Office of Information and Regulatory Affairs (OIRA)), public suggestions about regulations in need of retrospective review and about appropriate modifications to such regulations. To promote an open exchange of information, retrospective analyses of regulations, including supporting data, shall be released to the public online wherever practicable.

**Sec. 3.** *Setting Priorities.* In implementing and improving their retrospective review plans, and in considering retrospective review suggestions from the

public, agencies shall give priority, consistent with law, to those initiatives that will produce significant quantifiable monetary savings or significant quantifiable reductions in paperwork burdens while protecting public health, welfare, safety, and our environment. To the extent practicable and permitted by law, agencies shall also give special consideration to initiatives that would reduce unjustified regulatory burdens or simplify or harmonize regulatory requirements imposed on small businesses. Consistent with Executive Order 13563 and Executive Order 12866 of September 30, 1993 (Regulatory Planning and Review), agencies shall give consideration to the cumulative effects of their own regulations, including cumulative burdens, and shall to the extent practicable and consistent with law give priority to reforms that would make significant progress in reducing those burdens while protecting public health, welfare, safety, and our environment.

**Sec. 4.** *Accountability.* Agencies shall regularly report on the status of their retrospective review efforts to OIRA. Agency reports should describe progress, anticipated accomplishments, and proposed timelines for relevant actions, with an emphasis on the priorities described in section 3 of this order. Agencies shall submit draft reports to OIRA on September 10, 2012, and on the second Monday of January and July for each year thereafter, unless directed otherwise through subsequent guidance from OIRA. Agencies shall make final reports available to the public within a reasonable period (not to exceed three weeks from the date of submission of draft reports to OIRA).

**Sec. 5.** *General Provisions.* (a) For purposes of this order, "agency" means any authority of the United States that is an "agency" under 44 U.S.C. 3502(1), other than those considered to be independent regulatory agencies, as defined in 44 U.S.C. 3502(5).

(b) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to a department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(c) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(d) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*May 10, 2012.*

[FR Doc. 2012–11798
Filed 5–11–12; 11:15 am]
Billing code 3295–F2–P

EXHIBIT B-2

36973

Federal Register

Vol. 71, No. 124

Wednesday, June 28, 2006

# Presidential Documents

Title 3—

The President

Executive Order 13406 of June 23, 2006

## Protecting the Property Rights of the American People

By the authority vested in me as President by the Constitution and the laws of the United States of America, and to strengthen the rights of the American people against the taking of their private property, it is hereby ordered as follows:

Section 1. *Policy.* It is the policy of the United States to protect the rights of Americans to their private property, including by limiting the taking of private property by the Federal Government to situations in which the taking is for public use, with just compensation, and for the purpose of benefiting the general public and not merely for the purpose of advancing the economic interest of private parties to be given ownership or use of the property taken.

Sec. 2. *Implementation.* (a) The Attorney General shall:

(i) issue instructions to the heads of departments and agencies to implement the policy set forth in section 1 of this order; and

(ii) monitor takings by departments and agencies for compliance with the policy set forth in section 1 of this order.

(b) Heads of departments and agencies shall, to the extent permitted by law:

(i) comply with instructions issued under subsection (a)(i); and

(ii) provide to the Attorney General such information as the Attorney General determines necessary to carry out subsection (a)(ii).

Sec. 3. *Specific Exclusions.* Nothing in this order shall be construed to prohibit a taking of private property by the Federal Government, that otherwise complies with applicable law, for the purpose of:

(a) public ownership or exclusive use of the property by the public, such as for a public medical facility, roadway, park, forest, governmental office building, or military reservation;

(b) projects designated for public, common carrier, public transportation, or public utility use, including those for which a fee is assessed, that serve the general public and are subject to regulation by a governmental entity;

(c) conveying the property to a nongovernmental entity, such as a telecommunications or transportation common carrier, that makes the property available for use by the general public as of right;

(d) preventing or mitigating a harmful use of land that constitutes a threat to public health, safety, or the environment;

(e) acquiring abandoned property;

(f) quieting title to real property;

(g) acquiring ownership or use by a public utility;

(h) facilitating the disposal or exchange of Federal property; or

(i) meeting military, law enforcement, public safety, public transportation, or public health emergencies.

Sec. 4. *General Provisions.* (a) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(b) Nothing in this order shall be construed to impair or otherwise affect:



EXHIBIT A B-2

(i) authority granted by law to a department or agency or the head thereof; or

(ii) functions of the Director of the Office of Management and Budget relating to budget, administrative, or legislative proposals.

(c) This order shall be implemented in a manner consistent with Executive Order 12630 of March 15, 1988.

(d) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity against the United States, its departments, agencies, entities, officers, employees, or agents, or any other person.

THE WHITE HOUSE,
June 23, 2006.

[FR Doc. 06–5828
Filed 6–27–06; 8:45 am]
Billing code 3195–01–P

EXHIBIT B-3

# Executive Order 12630--Governmental actions and interference with constitutionally protected property rights

**Source:** The provisions of Executive Order 12630 of Mar. 15, 1988, appear at 53 FR 8859, 3 CFR, 1988 Comp., p. 554, unless otherwise noted.

By the authority vested in me as President by the Constitution and laws of the United States of America, and in order to ensure that government actions are undertaken on a well-reasoned basis with due regard for fiscal accountability, for the financial impact of the obligations imposed on the Federal government by the Just Compensation Clause of the Fifth Amendment, and for the Constitution, it is hereby ordered as follows:

**Section 1.** *Purpose.* (a) The Fifth Amendment of the United States Constitution provides that private property shall not be taken for public use without just compensation. Government historically has used the formal exercise of the power of eminent domain, which provides orderly processes for paying just compensation, to acquire private property for public use. Recent Supreme Court decisions, however, in reaffirming the fundamental protection of private property rights provided by the Fifth Amendment and in assessing the nature of governmental actions that have an impact on constitutionally protected property rights, have also reaffirmed that governmental actions that do not formally invoke the condemnation power, including regulations, may result in a taking for which just compensation is required.

(b) Responsible fiscal management and fundamental principles of good government require that government decision-makers evaluate carefully the effect of their administrative, regulatory, and legislative actions on constitutionally protected property rights. Executive departments and agencies should review their actions carefully to prevent unnecessary takings and should account in decision-making for those takings that are necessitated by statutory mandate.

(c) The purpose of this Order is to assist Federal departments and agencies in undertaking such reviews and in proposing, planning, and implementing actions with due regard for the constitutional protections provided by the Fifth Amendment and to reduce the risk of undue or inadvertent burdens on the public fisc resulting from lawful governmental action. In furtherance of the purpose of this Order, the Attorney General shall, consistent with the principles stated herein and in consultation with the Executive departments and agencies, promulgate Guidelines for the Evaluation of Risk and Avoidance of Unanticipated Takings to which each Executive department or agency shall refer in making the evaluations required by this Order or in otherwise taking any action that is the subject of this Order. The Guidelines shall be promulgated no later than May 1, 1988, and shall

be disseminated to all units of each Executive department and agency no later than July 1, 1988. The Attorney General shall, as necessary, update these guidelines to reflect fundamental changes in takings law occurring as a result of Supreme Court decisions.

**Sec. 2.** *Definitions.* For the purpose of this Order: (a) "Policies that have takings implications" refers to Federal regulations, proposed Federal regulations, proposed Federal legislation, comments on proposed Federal legislation, or other Federal policy statements that, if implemented or enacted, could effect a taking, such as rules and regulations that propose or implement licensing, permitting, or other condition requirements or limitations on private property use, or that require dedications or exactions from owners of private property. "Policies that have takings implications" does not include:

(1) Actions abolishing regulations, discontinuing governmental programs, or modifying regulations in a manner that lessens interference with the use of private property;

(2) Actions taken with respect to properties held in trust by the United States or in preparation for or during treaty negotiations with foreign nations;

(3) Law enforcement actions involving seizure, for violations of law, of property for forfeiture or as evidence in criminal proceedings;

(4) Studies or similar efforts or planning activities;

(5) Communications between Federal agencies or departments and State or local land-use planning agencies regarding planned or proposed State or local actions regulating private property regardless of whether such communications are initiated by a Federal agency or department or are undertaken in response to an invitation by the State or local authority;

(6) The placement of military facilities or military activities involving the use of Federal property alone; or

(7) Any military or foreign affairs functions (including procurement functions thereunder) but not including the U.S. Army Corps of Engineers civil works program.

(b) Private property refers to all property protected by the Just Compensation Clause of the Fifth Amendment.

(c) "Actions" refers to proposed Federal regulations, proposed Federal legislation, comments on proposed Federal legislation, applications of Federal regulations to specific property, or Federal governmental actions physically invading or occupying private property, or other policy statements or actions related to Federal regulation or direct physical invasion or occupancy, but does not include:

(1) Actions in which the power of eminent domain is formally exercised;

(2) Actions taken with respect to properties held in trust by the United States or in preparation for or during treaty negotiations with foreign nations;

(3) Law enforcement actions involving seizure, for violations of law, of property for forfeiture or as evidence in criminal proceedings;

(4) Studies or similar efforts or planning activities;

(5) Communications between Federal agencies or departments and State or local land-use planning agencies regarding planned or proposed State or local actions regulating private property regardless of whether such communications are initiated by a Federal agency or department or are undertaken in response to an invitation by the State or local authority;

(6) The placement of military facilities or military activities involving the use of Federal property alone; or

(7) Any military or foreign affairs functions (including procurement functions thereunder), but not including the U.S. Army Corps of Engineers civil works program.

**Sec. 3.** *General Principles.* In formulating or implementing policies that have takings implications, each Executive department and agency shall be guided by the following general principles:

(a) Governmental officials should be sensitive to, anticipate, and account for, the obligations imposed by the Just Compensation Clause of the Fifth Amendment in planning and carrying out governmental actions so that they do not result in the imposition of unanticipated or undue additional burdens on the public fisc.

(b) Actions undertaken by governmental officials that result in a physical invasion or occupancy of private property, and regulations imposed on private property that substantially affect its value or use, may constitute a taking of property. Further, governmental action may amount to a taking even though the action results in less than a complete deprivation of all use or value, or of all separate and distinct interests in the same private property and even if the action constituting a taking is temporary in nature.

(c) Government officials whose actions are taken specifically for purposes of protecting public health and safety are ordinarily given broader latitude by courts before their actions are considered to be takings. However, the mere assertion of a public health and safety purpose is insufficient to avoid a taking. Actions to which this Order applies asserted to be for the protection of public health and safety, therefore, should be undertaken only in response to real and substantial threats to public health and safety, be designed to advance significantly the health and safety purpose, and be no greater than is necessary to achieve the health and safety purpose.

(d) While normal governmental processes do not ordinarily effect takings, undue delays in decision-making during which private property use if interfered with carry a risk of being held to be takings. Additionally, a delay in processing may increase significantly the size of compensation due if a taking is later found to have occurred.

(e) The Just Compensation Clause is self-actuating, requiring that compensation be paid whenever governmental action results in a taking of private property regardless of whether the underlying authority for the action contemplated a taking or authorized the payment of compensation. Accordingly, governmental actions that may have a significant impact on the use or value of private property should be scrutinized to avoid undue or unplanned burdens on the public fisc.

**Sec. 4.** *Department and Agency Action.* In addition to the fundamental principles set forth in Section 3, Executive departments and agencies shall adhere, to the extent permitted by law, to the following criteria when implementing policies that have takings implications:

(a) When an Executive department or agency requires a private party to obtain a permit in order to undertake a specific use of, or action with respect to, private property, any conditions imposed on the granting of a permit shall:

   (1) Serve the same purpose that would have been served by a prohibition of the use or action; and

   (2) Substantially advance that purpose.

(b) When a proposed action would place a restriction on a use of private property, the restriction imposed on the use shall not be disproportionate to the extent to which the use contributes to the overall problem that the restriction is imposed to redress.

(c) When a proposed action involves a permitting process or any other decision-making process that will interfere with, or otherwise prohibit, the use of private property pending the completion of the process, the duration of the process shall be kept to the minimum necessary.

(d) Before undertaking any proposed action regulating private property use for the protection of public health or safety, the Executive department or agency involved shall, in internal deliberative documents and any submissions to the Director of the Office of Management and Budget that are required:

   (1) Identify clearly, with as much specificity as possible, the public health or safety risk created by the private property use that is the subject of the proposed action;

   (2) Establish that such proposed action substantially advances the purpose of protecting public health and safety against the specifically identified risk;

   (3) Establish to the extent possible that the restrictions imposed on the private property are not disproportionate to the extent to which the use contributes to the overall risk; and

   (4) Estimate, to the extent possible, the potential cost to the government in the event that a court later determines that the action constituted a taking.

In instances in which there is an immediate threat to health and safety that constitutes an emergency requiring immediate response, this analysis may be done upon completion of the emergency action.

**Sec. 5.** *Executive Department and Agency Implementation.* (a) The head of each Executive department and agency shall designate an official to be responsible for

ensuring compliance with this Order with respect to the actions of that department or agency.

(b) Executive departments and agencies shall, to the extent permitted by law, identify the takings implications of proposed regulatory actions and address the merits of those actions in light of the identified takings implications, if any, in all required submissions made to the Office of Management and Budget. Significant takings implications should also be identified and discussed in notices of proposed rule-making and messages transmitting legislative proposals to the Congress, stating the departments' and agencies' conclusions on the takings issues.

(c) Executive departments and agencies shall identify each existing Federal rule and regulation against which a takings award has been made or against which a takings claim is pending including the amount of each claim or award. A "takings" award has been made or a "takings" claim pending if the award was made, or the pending claim brought, pursuant to the Just Compensation Clause of the Fifth Amendment. An itemized compilation of all such awards made in Fiscal Years 1985, 1986, and 1987 and all such pending claims shall be submitted to the Director, Office of Management and Budget, on or before May 16, 1988.

(d) Each Executive department and agency shall submit annually to the Director, Office of Management and Budget, and to the Attorney General an itemized compilation of all awards of just compensation entered against the United States for takings, including awards of interest as well as monies paid pursuant to the provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4601.

(e)(1) The Director, Office of Management and Budget, and the Attorney General shall each, to the extent permitted by law, take action to ensure that the policies of the Executive departments and agencies are consistent with the principles, criteria, and requirements stated in Sections 1 through 5 of this Order, and the Office of Management and Budget shall take action to ensure that all takings awards levied against agencies are properly accounted for in agency budget submissions.

(2) In addition to the guidelines required by Section 1 of this Order, the Attorney General shall, in consultation with each Executive department and agency to which this Order applies, promulgate such supplemental guidelines as may be appropriate to the specific obligations of that department or agency.

**Sec. 6.** *Judicial Review.* This Order is intended only to improve the internal management of the Executive branch and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any person.

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRIENDS OF THE EARTH,                )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        No. 1:12-CV-00363-ABJ
                                     )
U.S. ENVIRONMENTAL PROTECTION        )
AGENCY, and LISA JACKSON,            )
Administrator, United States         )
Environmental Protection Agency,     )
                                     )
            Defendants.              )
                                     )

## ANSWER

Defendants United States Environmental Protection Agency and Lisa Jackson,

Administrator, United States Environmental Protection Agency ("Defendants" or "EPA"),

hereby respond to the correspondingly numbered paragraphs of Plaintiff's complaint:

1.      The first and third sentences of Paragraph 1 characterize Plaintiff's complaint, and

require no response.  EPA denies the allegations in the first clause of the second sentence of

Paragraph 1.  The remainder of the second sentence of Paragraph 1 characterizes an

administrative petition filed by Plaintiff, which speaks for itself.  To the extent that the

allegations in the remainder of the second sentence are inconsistent with the cited petition, EPA

denies those allegations.

2.      EPA admits the allegations in the first sentence of Paragraph 2.  With respect to

the remainder of Paragraph 2, EPA admits that it has not responded to Plaintiff's administrative

petition and that at the time of the filing of Plaintiff's complaint, over five years had elapsed

since the petition was first submitted.  EPA further admits that it has not determined whether

lead emissions from aircraft engines cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare, or promulgated emission standards for lead from general aviation aircraft using aviation gasoline. EPA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2.

3.    Paragraph 3 characterizes Plaintiff's complaint, and requires no response.

4.    Paragraph 4 states legal conclusions that require no response.

5.    The first sentence of Paragraph 5 states a legal conclusion that requires no response. The first sentence of Paragraph 5 also refers to the contents of a provision of the Clean Air Act, which speaks for itself. With respect to the second sentence of Paragraph 5, EPA admits that Plaintiff on May 26, 2011, notified EPA by certified mail of Plaintiff's intent to file suit against EPA. The remainder of the second sentence of Paragraph 5 characterizes Plaintiff's notice, which speaks for itself. To the extent that the allegations in the remainder of the second sentence are inconsistent with the cited notice, EPA denies those allegations. EPA admits the allegations in the third and fourth sentences of Paragraph 5. With respect to the allegations in the fifth sentence of Paragraph 5, EPA admits that November 28, 2011, is more than 180 days after May 31, 2011.

6.    Paragraph 6 states legal conclusions that require no response.

7.    Paragraph 7 states legal conclusions that require no response.

8.    EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.    EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 9.

10.    EPA admits the allegations in the first sentence of Paragraph 10.  EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 10.  EPA admits the allegation in the third sentence of Paragraph 10 that Bluewater Network submitted a letter to EPA asking it to make an endangerment finding.  EPA lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in the third sentence of Paragraph 10.  EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 10.

11.    EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 11.

12.    EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

13.    EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14.    EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15.    EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16.    EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.    The first sentence of Paragraph 17 states legal conclusions that no require no response, and EPA lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of Paragraph 17.    EPA lacks knowledge and

information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 17.

18.     EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 18. With respect to the third sentence of Paragraph 18, EPA admits that Bluewater Network submitted a letter to EPA asking it to make an endangerment finding. The letter speaks for itself. To the extent that the allegations in the third sentence are inconsistent with the cited letter, EPA denies those allegations. With respect to the fourth sentence of Paragraph 18, EPA admits that Plaintiff has requested that EPA respond to its 2006 petition.

19.     The first sentence of Paragraph 19 states legal conclusions that require no response. EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 19.

20.     Paragraph 20 states legal conclusions that require no response.

21.     EPA admits the allegations in the first sentence of Paragraph 21. The remainder of Paragraph 21 states legal conclusions that require no response.

22.     With respect to the first sentence of Paragraph 21, EPA admits that Defendant Lisa P. Jackson is the Administrator of the United States Environmental Protection Agency. The remainder of the first sentence of Paragraph 21 states legal conclusions that require no response. EPA admits the allegations in the second and third sentences of Paragraph 22.

23.     Paragraph 23 characterizes a published EPA notice. This notice speaks for itself. To the extent that the allegations in Paragraph 23 are inconsistent with this notice, EPA denies those allegations.

24.     Paragraph 24 characterizes a published EPA notice.  This notice speaks for itself.
To the extent that the allegations in Paragraph 24 are inconsistent with this notice, EPA denies
those allegations.

25.     Paragraph 25 characterizes published EPA notices.  These notices speak for
themselves.  To the extent that the allegations in Paragraph 25 are inconsistent with these
notices, EPA denies those allegations.

26.     Paragraph 26 characterizes a published EPA notice.  This notice speaks for itself.
To the extent that the allegations in Paragraph 26 are inconsistent with this notice, EPA denies
those allegations.

27.     Paragraph 27 characterizes a published EPA notice.  This notice speaks for itself.
To the extent that the allegations in Paragraph 27 are inconsistent with this notice, EPA denies
those allegations.

28.     Paragraph 28 characterizes a published EPA notice.  This notice speaks for itself.
To the extent that the allegations in Paragraph 28 are inconsistent with this notice, EPA denies
those allegations.

29.     Paragraph 29 characterizes a published EPA notice.  This notice speaks for itself.
To the extent that the allegations in Paragraph 29 are inconsistent with this notice, EPA denies
those allegations.

30.     The first sentence of Paragraph 30, and the first clause of the second sentence of
Paragraph 30, characterize published EPA notices.  These notices speak for themselves.  To the
extent that the allegations in Paragraph 30 are inconsistent with these notices, EPA denies those
allegations.  With respect to the second clause of the second sentence of Paragraph 30, EPA
admits that it has not proposed emission standards for lead emissions from avgas-fueled aircraft.

- 5 -

31.    Paragraph 31 characterizes published EPA notices. These notices speak for themselves. To the extent the allegations in Paragraph 31 are inconsistent with these notices, EPA denies those allegations.

32.    Paragraph 32 characterizes a published EPA notice. This notice speaks for itself. To the extent that the allegations in Paragraph 32 are inconsistent with this notice, EPA denies those allegations.

33.    Paragraph 33 characterizes a published EPA document and a published EPA notice. This document and this notice speak for themselves. To the extent the allegations in Paragraph 33 are inconsistent with the document and notice, EPA denies those allegations.

34.    Paragraph 34 characterizes a published document. This document speaks for itself. To the extent that the allegations in Paragraph 34 are inconsistent with this document, EPA denies those allegations.

35.    The first sentence of Paragraph 35 characterizes a published EPA notice. This notice speaks for itself. To the extent that the allegations in the first sentence of Paragraph 35 are inconsistent with this notice, EPA denies those allegations. EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 35.

36.    The first sentence of Paragraph 36 characterizes a published EPA notice. This notice speaks for itself. To the extent that the allegations in the first sentence of Paragraph 36 are inconsistent with this notice, EPA denies those allegations. EPA lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 36.

37.    Paragraph 37 states legal conclusions that require no response.

12-12020-mg    Doc 787    Filed 07/16/12    Entered 07/16/12 15:45:48    Main Document
Pg 39 of 42

38.     Paragraph 38 states legal conclusions that require no response.  Paragraph 38 also refers to the contents of a provision of the Clean Air Act, which speaks for itself.

39.     Paragraph 39 states legal conclusions that require no response.  Paragraph 39 also refers to the contents of a provision of the Clean Air Act, which speaks for itself.

40.     EPA admits the allegations in Paragraph 40.

41.     The first and second sentences of Paragraph 41 refer to Plaintiff's 2006 petition. This petition speaks for itself.  To the extent the allegations are inconsistent with this petition, they are denied.  With respect to the third sentence of Paragraph 41, EPA admits that April 1, 2007, is 180 days after October 3, 2006.  EPA admits the allegations in the fourth sentence of Paragraph 41.

42.     In response to the allegations in Paragraph 42, EPA admits that Plaintiff on May 26, 2011, notified EPA of Plaintiff's intent to file suit against EPA.  Plaintiff's notice speaks for itself.  To the extent the allegations in Paragraph 42 are inconsistent with Plaintiff's notice, they are denied.

43.     In response to the allegations in Paragraph 43, EPA admits that November 28, 2011, is at least 180 days after May 26, 2011.

44.     Paragraph 44 characterizes a published EPA notice.  This notice speaks for itself. To the extent that the allegations in Paragraph 44 are inconsistent with this notice, EPA denies those allegations.

45.     EPA admits the allegations in Paragraph 45.

46.     Paragraph 46 characterizes a published EPA notice.  This notice speaks for itself. To the extent that the allegations in Paragraph 46 are inconsistent with this notice, EPA denies those allegations.

- 7 -

47.     EPA admits the allegations in the first sentence of Paragraph 47. The statements in the second sentence of Paragraph 47 are too vague and ambiguous for EPA to formulate a response. Accordingly, EPA lacks sufficient knowledge or information to form a belief as to the truth of the allegations of the second sentence of Paragraph 47.

48.     The statements in Paragraph 48 are too vague and ambiguous for EPA to formulate a response. Accordingly, EPA lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 48.

49.     In response to the allegations in the first sentence of Paragraph 49, EPA admits that agency staff met with representatives of pilots and the aviation industry in Alaska in February 2011. Paragraph 49 otherwise characterizes the contents of a published article which speaks for itself. To the extent the allegations are inconsistent with the published article, they are denied.

50.     In response to the allegations in Paragraph 50, EPA admits that agency staff made a presentation to the Federal Aviation Administration Rulemaking Committee in March 2011. Paragraph 50 otherwise refers to the contents of a publicly available document, which speaks for itself. To the extent the allegations are inconsistent with the publicly available document, they are denied.

51.     In response to the allegations in Paragraph 51, EPA admits that it has not promulgated a final rule to regulate lead emissions from avgas-fueled general aviation aircraft engines.

### FIRST CLAIM FOR RELIEF

52.     EPA incorporates by reference its answers to Paragraph 1-51 of the Complaint.

53.     Paragraph 53 states legal conclusions that require no response.

54.    In response to the allegations in Paragraph 54, EPA admits that it has not issued a final response to Plaintiff's October 2006 petition.

55.    Paragraph 55 states legal conclusions that require no response.

56.    Paragraph 56 states legal conclusions that require no response.

## SECOND CLAIM FOR RELIEF

57.    EPA incorporates by reference its answers to Paragraph 1-56 of the Complaint.

58.    Paragraph 58 states legal conclusions that require no response.

59.    In response to the allegations in Paragraph 59, EPA admits that it has not issued a final response to Plaintiff's October 2006 petition.

60.    Paragraph 60 states legal conclusions that require no response.

61.    Paragraph 61 states legal conclusions that require no response.

## THIRD CLAIM FOR RELIEF

62.    EPA incorporates by reference its answers to Paragraphs 1-61 of the Complaint.

63.    Paragraph 63 states legal conclusions that require no response. Paragraph 63 also refers to the contents of a provision of the Clean Air Act, which speaks for itself.

64.    Paragraph 64 states legal conclusions that require no response. Paragraph 64 also refers to the contents of a provision of the Clean Air Act, which speaks for itself.

65.    EPA admits the allegations in Paragraph 65.

66.    Paragraph 66 states legal conclusions which require no response.

67.    Paragraph 67 states legal conclusions which require no response.

## PRAYER FOR RELIEF

The remaining allegations in the Complaint are Plaintiff's Prayer for Relief, which requires no response. To the extent a response is required, Defendant denies that Plaintiff is entitled to such relief.

### GENERAL DENIAL

Any factual allegations in the Complaint not specifically admitted are denied

WHEREFORE, EPA denies that Plaintiffs are entitled to any relief from the Court and requests that the Court dismiss the Complaint with prejudice.


RESPECTFULLY SUBMITTED this 14th day of May, 2012.

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

/s/Eric G. Hostetler
ERIC G. HOSTETLER
D.C. Bar # 445917
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7644
Washington, DC 20044
(202) 305-2326 (Hostetler)
Fax: (202) 514-8865
eric.hostetler@usdoj.gov

OF COUNSEL:

MICHAEL W. THRIFT
Office of General Counsel
U.S. EPA
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460