**Hearing Date:  July 24, 2012 at 10:00 am (prevailing Eastern time)**

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
Turner P. Smith
Maryann Gallagher

*Conflicts Counsel for the Debtors and*
  *Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re:                                                   :    Case No. 12-12020 (MG)
                                                         :
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                :    Chapter 11
                                                         :
                                          Debtors.       :    Jointly Administered
-------------------------------------------------------------x

**DEBTORS' OBJECTION TO MOTION OF WELLS FARGO BANK, N.A. FOR RELIEF
FROM THE AUTOMATIC STAY TO PERMIT NON-BANKRUPTCY FORUM
ACTION AGAINST DEBTOR EXECUTIVE TRUSTEE SERVICES, LLC, OR, TO
PERMIT WELLS FARGO BANK, N.A. TO CONDUCT DISCOVERY AND TO ISSUE
<u>TRIAL SUBPOENAS DIRECTED AT EXECUTIVE TRUSTEE SERVICES, LLC</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................... 1

BACKGROUND ...................................................................................... 4

WELLS FARGO'S MOTION FOR RELIEF FROM STAY .............................. 5

OBJECTION .......................................................................................... 7

I.      Relief From the Automatic Stay Should Not Be Granted ...................... 7

    A.      The Policies Underlying the Automatic Stay Weigh in Favor of
Denying the Relief Requested by Movant ................................... 7

    B.      Movant Has Failed to Establish Cause for Relief From the Automatic
Stay ........................................................................................ 9

        1.      Whether Relief Would Result in Partial or Complete Resolution
of the Action (Sonnax Factor Number 1) ........................ 11

        2.      The Lifting of the Automatic Stay is Connected to and Will
Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor
Number 2) ................................................................... 12

        3.      No Specialized Tribunal Has Been Established to Hear the
Actions (Sonnax Factor Number 4) ................................. 14

        4.      No Insurer Has Assumed Responsibility for Any of the Actions
(Sonnax Factor Number 5) ............................................. 15

        5.      The Action Does Not Primarily Involve Third Parties (Sonnax
Factor Number 6) .......................................................... 16

        6.      Litigation of the Action in Another Forum Would Prejudice the
Interests of Other Creditors (Sonnax Factor Number 7) ................. 17

        7.      The Interests of Judicial Economy and Economical Resolution of
the Action is Best Served by Maintaining the Automatic Stay and
the Action is Not Ready for Trial (Sonnax Factor Numbers 10
and 11) ........................................................................ 18

        8.      The Balance of Harms Favors Maintaining the Automatic Stay
(Sonnax Factor Number 12) ........................................... 18

# TABLE OF CONTENTS
## (continued)

**Page**

II.     Wells Fargo Should Not Be Authorized to Satisfy Any Judgment From Insurance
        Proceeds, if any, or From Non-Estate Property or Income ......................................  20

III.    Relief From the Fourteen Day Stay Imposed by Bankruptcy Rule 4001(a)(3)
        Should be Denied ..................................................................................................  21

CONCLUSION ..............................................................................................................  22

Exhibits:

Exhibit 1:     Scoliard Declaration
Exhibit 2:     Appendix

12580319

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow),
    126 F.3d 43 (2d Cir. 1997) ............................................................... 10

City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l Inc.),
    28 B.R. 324 (Bankr. S.D.N.Y. 1983) ................................................ 16

Fed. Life Ins. Co. v. First Fin. Grp. Inc.,
    3 B.R. 375 (S.D. Tex. 1980) ............................................................ 12

In re Bally Total Fitness of Greater N.Y., Inc.,
    402 B.R. 616 (Bankr. S.D.N.Y. 2009) ................................. 15, 18, 19, 20

In re Ionosphere Clubs, Inc.,
    111 B.R. 423 (Bankr. S.D.N.Y. 1990) .............................................. 12

In re Leibowitz,
    147 B.R. 341 (Bankr. S.D.N.Y. 1992) .............................................. 10

In re Motors Liquidation Co.,
    Case No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010) ......... 10

In re Northwest Airlines Corp.,
    Case No. 05-17930, 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 3, 2006) ............ 19

In re Pioneer Commercial Funding Corp.,
    114 B.R. 45 (Bankr. S.D.N.Y. 1990) ............................................. 8, 14

Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.),
    40 B.R. 219 (S.D.N.Y. 1984) .......................................................... 12

MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.),
    837 F.2d 89 (2d Cir. 1988) .............................................................. 17

Mazzeo v. Lenhart (In re Mazzeo),
    167 F.3d 139 (2d Cir. 1999) ............................................................ 10

Midatlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection,
    474 U.S. 494 (1986) ......................................................................... 7

Pfizer, Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.),
    676 F.3d 45 (2d Cir. 2012) .......................................................... 17, 21

Publicker Indus. v. Salomon (In re Cuyahoga Equip. Corp.),
    980 F.2d 110 (2d Cir. 1992) ............................................................ 17

## TABLE OF AUTHORITIES
### (continued)

**Cases**                                                                                    **Page(s)**

SEC v. Brennan,
    230 F.3d 65 (2d Cir. 2000) ............................................................................................... 8

Shugrue v. Air Line Pilots Assoc., Int'l (In re Ionosphere Clubs, Inc.),
    922 F.2d 984 (2d Cir. 1990) ......................................................................................... 19

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
    907 F.2d 1280 (2d Cir. 1990) .................................................................................passim

**Statutes**

11 U.S.C. § 362(a)(1) ....................................................................................................... 7

11 U.S.C. § 362(d) ............................................................................................................ 9

11 U.S.C. § 503(b) .......................................................................................................... 21

11 U.S.C. § 507(a)(2) ...................................................................................................... 21

**Rules**

Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure ............................... 5, 21

**Other Authorities**

Collier on Bankruptcy ¶ 362.03 (16th ed. rev. 2012) ..................................................... 7

Collier on Bankruptcy ¶ 4001.05 (16th ed. rev. 2012) ................................................. 21

Executive Trustee Services, LLC ("**ETS**"), an affiliate of Residential Capital, LLC and its related debtors and debtors in possession (the "**Debtors**"), and a debtor in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"), on behalf of itself and the other Debtors, files this objection (the "**Objection**") to the *Motion for Relief From the Automatic Stay to Permit Prosecution of Non-Bankruptcy Forum Action Against Debtor Executive Trustee Services, LLC, or, in the Alternative, to Permit Movant to Conduct Discovery and to Issue Trial Subpoenas Directed at Debtor in the Non-Bankruptcy Action* [Docket No. 540] (the "**Motion**").  In support of this Objection, the Debtors submit the Declaration of Jennifer Scoliard (the "**Scoliard Declaration**"), attached hereto as Exhibit 1, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Wells Fargo Bank, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB ("**Wells Fargo**" or "**Movant**") seeks (i) relief from the automatic stay to proceed with the prosecution of a cross-complaint against ETS in the matter styled as Franciska Susilo v. Wells Fargo Bank, N.A., et al., Case No. 2:11-cv-1814-CAS (PJW) (the "**Action**"), which is currently pending in the United States District Court for the Central District of California (the "**District Court**") or, in the alternative, (ii) relief from the automatic stay to conduct discovery directed at ETS and to permit Movant to issue trial subpoenas requiring certain officers, directors, and employees to appear and produce documents at trial in the Action.

2.      The Debtors by way of direct claims and counter-claims are defendants in over 1,900 lawsuits, currently being handled by the Legal Department (as hereinafter defined), involving a wide range of causes of action asserted against them, including in their capacities as loan servicers and originators of mortgage loans, as well as causes of action against third parties

for which the Debtors are contractually obligated to defend.[1]  Two-thirds of the approximately

1900 currently pending cases being handled by the Legal Department are excepted from the

automatic stay either in whole or in part by the Supplemental Servicing Order or because the stay

is not otherwise applicable.[2]  Notwithstanding this relief, there are still a significant amount of

cases – one-third of the approximately 1900, or approximately 690 – that are stayed and Movant

has not articulated any special facts or circumstances warranting relief from the automatic stay to

permit it to proceed with its cross-complaint or discovery in the Action.

        3.        As a policy matter, the Debtors and ETS submit that it is far too early in

the Debtors' highly complex Chapter 11 cases for the Court to grant the relief that Movant is

requesting.  These cases are just a little more than two months old.  Granting such relief at this

point would undoubtedly invite similar requests for relief from the automatic stay from the

Debtors' numerous other prepetition claimants, opening the "floodgates" to litigation which

would impose a burden on the Debtors and their estates at a time when their limited resources

should be devoted to disposing of their remaining assets in an orderly and value maximizing

manner and proceeding with the Chapter 11 process.  Forcing the Debtors to address motions for

relief from the stay and potentially litigate even a fraction of the suits in which they are named as

defendants, including Wells Fargo's cross-complaint against ETS in the Action, would deprive

ETS of the "breathing spell" the automatic stay is designed to provide and distract ETS and the

Debtors from addressing the tasks imperative to achieving a successful resolution in the Chapter

---

[1]  This figure does not include the tens of thousands of foreclosure, eviction, or bankruptcy-related matters to which
the Debtors are a party to in connection with servicing activities.

[2]  On July 13, 2012, the Court entered the *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362,
363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing
Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims,
Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction
Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the*

12580319

11 Cases.  The Bankruptcy Code provides an orderly claims process in a centralized forum

meant to prevent a debtor from being forced to litigate claims in a piecemeal, ad hoc manner.

Granting relief from the automatic stay at this juncture in the Chapter 11 Cases would essentially

force the Debtors to conduct the claims resolution process in multiple forums, instead of the

Debtors' forum, as provided by the Bankruptcy Code (as hereinafter defined).

4.      As a practical matter, even though the plaintiff in the Action has not

sought relief from the automatic stay to pursue its claims against ETS, granting the Motion to

allow Wells Fargo to prosecute its cross-complaint against ETS is tantamount to lifting the stay

as to the entire Action.  Defending against the cross-complaint would require ETS to participate

fully in further discovery and at trial, or face serious risk of collateral estoppel or stare decisis in

future proceedings relating to claims asserted in the Action.  Accordingly, there is not much

difference regarding the relief sought in the Motion and lifting the automatic stay with respect to

the entire Action.

5.      ETS further submits that granting Movant's alternative request for relief

from the automatic stay to conduct discovery of ETS's employees and to issue trial subpoenas

directed at ETS and its employees, officers and directors would be (i) unduly burdensome to

ETS, (ii) potentially prejudicial to ETS, and (iii) a distraction from achieving a successful

resolution in the Chapter 11 Cases.

6.      The burden imposed on the Debtors in terms of time and resources

necessary to defend ETS in the Action far outweighs any prejudice to Movant in preserving the

automatic stay as to the Debtors and the Debtors therefore oppose the Motion so that their estates

---

*Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "**Supplemental Servicing Order**").

12580319

and other creditors are not burdened and prejudiced by such litigation proceeding against the Debtors.

7.      For the above reasons, and as more fully set forth below, the Debtors believe that all of the applicable Sonnax Factors (as hereinafter defined) applied by courts in this jurisdiction to evaluate whether cause has been established to lift the automatic stay weigh decidedly in ETS's favor and against lifting the automatic stay.  Therefore, the Motion should be denied.

## **BACKGROUND**

8.      On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**").  The Debtors are managing and operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  No trustee has been appointed in the Chapter 11 Cases.[3]  However, the Court entered an order directing the appointment of an examiner on June 28, 2012 [Docket No. 536].

9.      On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

---

[3]  The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc. ("**AFI**"), which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6].

12580319

10.    On July 3, 2012, the Court authorized the U.S. Trustee's appointment of the Honorable Arthur. T. Gonzalez, former Chief Judge of the United States Bankruptcy Court for the Southern District of New York, as examiner (the "**Examiner**") [Docket No. 674].

## WELLS FARGO'S MOTION FOR RELIEF FROM STAY

11.    On June 29, 2012, Wells Fargo filed the Motion seeking relief from the automatic stay to permit it to (i) continue prosecution of its cross-complaint against ETS in the Action or, in the alternative, (ii) conduct discovery directed at ETS, including the issuance of deposition and records subpoenas, and issue trial subpoenas requiring certain officers, directors, agents and/or employees of ETS to appear and to produce documents at trial in the Action.  In addition, the Motion provides that if the Court allows Wells Fargo to continue prosecution of its cross-complaint it should permit Wells Fargo to seek to enforce any final judgment by collecting from proceeds of an as yet-to-be determined insurance policy and/or from "*non-estate property or earnings*" (Motion at 2) (emphasis supplied).[4]

12.    The Action, in which Movant and ETS are named as defendants, has been pending since January 21, 2011, when it was originally filed by Franciska Susilo ("**Susilo**") in the Los Angeles County Superior Court of the State of California.  The Action was removed to the District Court on March 2, 2011.[5]

13.    In the Action, Susilo seeks, among other things, damages of no less than $250,000 and Wells Fargo seeks, pursuant to its cross-complaint against ETS, equitable indemnity for fees and costs of the Action as well as any damages it incurs in the Action.  The Action centers around Susilo's alleged attempts at reinstatement of a defaulted residential real

---

[4]  The Motion also requests a waiver of the fourteen day stay provided by Bankruptcy Rule 4001(a)(3) be included in any order granting the relief requested in the Motion.

[5]  See Docket Sheet for Action as of July 17, 2012 included in the Appendix attached to this Objection as Exhibit 2.

12580319

estate loan before foreclosure.[6]  The loan at issue was made by a predecessor to Wells Fargo, memorialized by a promissory note, and secured by a deed of trust encumbering the real estate owned by Susilo.  ETS acted as the foreclosure trustee under the deed of trust and Wells Fargo was the beneficiary under the foreclosure.  Among the issues disputed in the Action are (i) Susilo's written and oral communications with ETS and Wells Fargo, (ii) allegations that ETS failed to properly prepare and serve the statutorily required pre-foreclosure notices on Susilo, (iii) and Wells Fargo's conduct in connection with Susilo's efforts to reinstate her loan. (Motion at 4).

14.    On March 30, 2012, Movant and ETS filed cross-complaints against each other, seeking indemnification to the extent either was found liable to Susilo in the Action. Movant's cross-complaint asserts a single cause of action for equitable indemnity against ETS. ETS's cross-complaint asserts four causes of action against Movant including equitable indemnity, comparative indemnity, comparative contribution, and declaratory relief.  (Motion at 4, Shulman Decl. Ex. B and C).

15.    On May 17, 2012, the District Court was notified of the automatic stay as a result of the Chapter 11 Cases.  In response to such notification, on May 21, 2012 the District Court ordered a stay of all proceedings, including discovery, involving ETS, but permitting a trial to go forward on Susilo's claims against Wells Fargo.  (Motion at 3, Shulman Decl. ¶ 6, Shulman Decl. Ex. D).

---

[6]  See Susilo's Second Amended Complaint attached as Exhibit A and Wachovia Mortgage's Cross-Complaint Against ETS Services, LLC attached as Exhibit B to the *Declaration of Jeremy E. Shulman in Support of Wells Fargo's Motion for an Order (A) Granting Relief From Automatic Stay Permitting Prosecution of Non-Bankruptcy Forum Action Against Debtor Executive Trustee Services, LLC, or, in the Alternative, (B) Permitting Movant to Conduct Discovery and to Issue Trial Subpoenas Directed at Debtor in the Non-Bankruptcy Action* [Docket No. 542] (the "**Shulman Declaration**").

12580319

16.    Pursuant to an order granting a stipulation to continue the trial and related dates, a trial has been set to commence on December 4, 2012.  (*Order Granting Stipulation to Continue Trial and Related Dates* ¶ 1 [Action Docket No. 93]) (included in the Appendix #3 attached hereto as Exhibit 2).  Although discovery with respect to Susilo's claims has taken place, no discovery with respect to Movant's and ETS's cross-complaints has occurred as of the date of this Objection.

17.    Susilo has not sought relief from the automatic stay to allow continued prosecution of her claims against ETS.

## OBJECTION

I.    **Relief From the Automatic Stay Should Not Be Granted**

A.    **The Policies Underlying the Automatic Stay Weigh in Favor of Denying the Relief Requested by Movant**

18.    Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that:

(a) ... a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of –

(1)  the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

19.    The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws."  Midatlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection, 474 U.S. 494, 503 (1986).  The automatic stay is of considerable importance in cases such as this, where the Debtors seek to sell all or substantially all of their assets.  It maintains the status quo to protect the debtor's ability to control the sale or other disposition of property of the estate.  COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2012).  The automatic stay prevents the

7

state-law "race to the courthouse", and is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." SEC v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000) (internal quotation omitted). In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

20.     One of the primary objectives of the Chapter 11 Cases is the preservation of the Debtors' going concern value through the sale of their servicing platform and legacy assets through which the Debtors hope to maximize creditor recoveries.[7] The automatic stay is critical to the Debtors' ability to achieve this objective because it will permit the Debtors' management and employees, including the Debtors' in-house legal department (the "**Legal Department**"), to focus without distraction on the tasks critical to achieve a successful resolution of these cases, including, but not limited to, the following:  (i) the myriad of due diligence and other issues with respect to the proposed sales of the Debtors' servicing operations and legacy loan portfolios, (ii) the negotiation and drafting of and solicitation of votes on a Chapter 11 plan and the drafting of a related disclosure statement, (iii) producing documents and responding to requests for information in connection with investigations by the Creditors' Committee and the Examiner, and (iv) obtaining approval for settlement agreements regarding potential claims to be asserted by or against the Debtors' estates – all of which the Debtors' seek to accomplish on an accelerated time frame before the end of the year.  Performing these tasks alone is a significant burden given that the objective of the Chapter 11 Cases are somewhat unprecedented (*i.e.*, the

---

[7]   In tandem with this effort, the Debtors have entered into plan support agreements with key constituents, including AFI, certain holders of their junior secured notes, and certain investors in mortgage-backed securitizations sponsored by the Debtors.

12580319

sale of a mortgage loan servicing and origination platform as a going concern), and that the

Debtors must address the concerns of multiple constituencies, including United States

governmental entities and governmental associations.

21.     At the same time, the Debtors' personnel continue to stabilize and operate

the Debtors' business, which is in and of itself a full time endeavor.  These, and many other tasks

related to the Debtors' restructuring, have and will continue to require the utmost attention from

all of the Debtors' employees.  Continuation of the breathing spell created by the automatic stay,

therefore, is essential to the Debtors' restructuring at this juncture, because it allows the Debtors

to focus on steps critical to achieving a successful resolution to these cases, including the

continued operation of the Debtors' business and consummation of the sales.

### B.    Movant Has Failed to Establish Cause for Relief From the Automatic Stay

22.     Section 362(d) of the Bankruptcy Code provides that the Court shall grant

relief from the automatic stay "for cause."  11 U.S.C. § 362(d).  The Bankruptcy Code does not,

however, define the phrase "for cause."  In the context of stayed prepetition litigation, though,

the Second Circuit has outlined a 12-factor test (the "**Sonnax Factors**") to determine whether

"cause" exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues, (2) the
> lack of any connection with or interference with the bankruptcy case, (3) whether the
> other proceeding involves the debtor as a fiduciary, (4) whether a specialized tribunal
> with the necessary expertise has been established to hear the cause of action, (5) whether
> the debtor's insurer has assumed full responsibility for defending the action, (6) whether
> the action primarily involves third parties, (7) whether litigation in another forum would
> prejudice the interests of other creditors, (8) whether the judgment claim arising from the
> other action is subject to equitable subordination, (9) whether movant's success in the
> other proceeding would result in a judicial lien avoidable by the debtor, (10) the interests
> of judicial economy and the expeditious and economical resolution of litigation,
> (11) whether the parties are ready for trial in the other proceeding, and (12) the impact of
> the stay on the parties and the balance of harms.

12580319

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280,

1285-87 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir.

1999) (vacating a district court order granting stay relief where the bankruptcy court had not

applied the Sonnax Factors, made only sparse factual findings and ultimately did not provide the

appellate court "with sufficient information to determine what facts and circumstances specific to

the present case the court believed made relief from the automatic stay appropriate."). Courts

have recognized that not all of the Sonnax Factors will be applicable to every case, and the Court

may disregard irrelevant factors. See In re Mazzeo, 167 F.3d at 143.

23.     In a request for stay relief, the moving party bears the initial burden to

demonstrate that good cause exists under the Sonnax Factors for lifting the stay, and the court

may deny the motion if the Movant fails to make an initial showing of cause. See Sonnax, 907

F.2d at 1285; Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48

(2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if

the Movant fails to make an initial showing of cause.") (quotation omitted).

24.     A movant's burden is especially heavy if it is an unsecured creditor, such

as is the case with Movant.  "[T]he general rule is that claims that are not viewed as secured in

the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary

circumstances are established to justify such relief."  In re Leibowitz, 147 B.R. 341, 345 (Bankr.

S.D.N.Y. 1992); see also In re Motors Liquidation Co., Case No. 10 Civ. 36 (RJH), 2010 WL

4966018 (S.D.N.Y. Nov. 17, 2010).

25.     Movant claims that "cause" exists for granting the relief requested.  The

Debtors respectfully submit that Movant is wrong on its application of the law.  The application

12580319

of the Sonnax Factors clearly indicate that granting Wells Fargo relief from the automatic stay

would be inappropriate.[8]   Thus, the Motion should be denied.

> 1.   *Whether Relief Would Result in Partial or Complete Resolution of the Action (Sonnax Factor Number 1).*

26.   Wells Fargo contends that allowing prosecution of its cross-complaint

would resolve all issues in the Action.  While granting the relief in the Motion might resolve

several claims involving Wells Fargo, Wells Fargo's assertion ignores the fact that allowing

Wells Fargo's indemnity cross-complaint to proceed is premature, because no liability has been

determined with respect to either defendant in the Action.  At this point in time Wells Fargo's

claim against ETS is purely speculative and contingent.  In addition, as the automatic stay

remains in place in the Action with respect to Susilo's claims against ETS and ETS's cross-

complaint against Wells Fargo, further proceedings involving Wells Fargo will likely be required

to liquidate those claims.   Even if a judgment were ultimately rendered against ETS in the

Action with respect to Movant's cross-complaint, such judgment would merely entitle Movant to

a general unsecured claim to be paid proportionately with the thousands of other claims in

accordance with the terms of a confirmed plan.  There is no reason Movant must liquidate its

general unsecured claim ahead of similarly-situated creditors, which are substantial in number.

See *Debtors' Amended Schedules F* [Docket Nos. 683-688].

27.   Moreover, while Susilo has not sought relief from the automatic stay,

granting the relief requested in the Motion would impose upon the Debtors virtually the same

burden as lifting the stay with respect to the entire Action because the Debtors would be required

---

[8]   Sonnax Factors numbers 3 and 9 are not relevant to the facts here.  ETS does not address Sonnax Factor number 8 in the Objection, but reserves all right with regard thereto.

12580319

to participate fully in discovery and at trial or face the risk of an adverse judgment, collateral

estoppel or stare decisis as to the remaining issues in the Action.[9]

28.       Therefore, for the above reasons, the first Sonnax Factor weighs against

lifting the automatic stay.

> **2.**    *The Lifting of the Automatic Stay is Connected to and Will Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor Number 2).*

29.       The second Sonnax Factor, lack of any connection with or interference

with the bankruptcy case, militates against providing Movant with relief from the automatic stay.

At best, allowing Movant to proceed with the Action at this point in the Chapter 11 Cases would

be a waste of estate assets, particularly as Movant's claims against ETS are speculative and

Susilo has not sought relief from the stay.  Accordingly, additional proceedings to resolve the

claims raised in the Action may be required.

30.       It goes without saying that the Chapter 11 Cases are large and complex,

and the issues and tasks facing the Debtors before achieving a successful resolution are difficult

and numerous.  As noted above, by virtue of the Supplemental Servicing Order, the Debtors,

while not required to, have voluntarily relinquished a significant amount of the protection

afforded to them under the automatic stay.  Indeed, as a result of the Supplemental Servicing

Order, two-thirds of the approximately 1900 currently pending cases being handled by the Legal

Department are excepted from the automatic stay either in whole or in part (Scoliard Decl. ¶ 4).

---

[9]    Cf. Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.), 40 B.R. 219, 224-25 (S.D.N.Y. 1984) (holding that bankruptcy court did not abuse its discretion in continuing a stay which prohibited a co-defendant of debtor in numerous asbestos-related cases from obtaining pretrial discovery documents and depositions for its own use in those suits from which debtor had been severed); In re Ionosphere Clubs, Inc., 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990) ("[A] stay should be provided to codefendants when the claims against them and the claims against the debtor are inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding" (citing Fed. Life Ins. Co. v. First Fin. Group Inc., 3 B.R. 375, 376 (S.D. Tex. 1980))).

12580319

To grant a general unsecured creditor, such as Movant, relief from the automatic stay to liquidate

its speculative claim, where there is no special need to liquidate its claim and no compelling

reason why the processing of its claim should be treated any differently than other general

unsecured creditors of the Debtors, would set a precedent that would result in multiple motions

for relief from the stay by creditors whose actions are stayed – such actions constituting

approximately one-third of the estimated 1900 cases, or approximately 690 cases.  To allow

creditors such as Movant to proceed with liquidating its claims would reduce what little

protection remains under the automatic stay after entry of the Supplemental Servicing Order and

narrow the Debtors' "breathing spell."

     31.    This would impose a heavy burden on the Debtors' valuable time and

scarce resources when the Debtors' focus should be on, among other things, determining how to

dispose of their remaining assets in an orderly and value-maximizing manner and proceeding

with an organized Chapter 11 claims resolution process.

     32.    The Legal Department is tasked with managing litigation in which the

Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as

well as managing litigation for third parties for which the Debtors have a contractual obligation

to defend.  The Legal Department plays a very active role in analyzing and strategizing on active

litigation matters, working with various departments within the Debtors' various regional offices,

collecting all documents and information necessary to analyze each case, including, but not

limited to, the following:  (i) reviewing documents and information related to discovery;

(ii) reviewing all draft pleadings and discovery responses; (iii) witness preparation of deposition

and trial witnesses; (iv) directing settlement negotiations; (v) coordinating discussion with

internal business personnel; (vi) maintaining a legal staff database, (vii) coordinating with local

13

litigation counsel and bankruptcy counsel; (viii) attending mediations and settlement
conferences; and (ix) preparing for trial.  (Scoliard Decl. ¶ 11).

33.     On top of these duties, the Legal Department has also spent the better part
of the last month assisting in the preparation of the Debtors' schedules of assets and liabilities,
statements of financial affairs, and ordinary course professionals and special counsel retention
applications and other filings, as well as performing various bankruptcy related tasks.  (Scoliard
Decl. ¶ 15).  As the Chapter 11 Cases proceed, the Legal Department will be required to assist in
the preparation of monthly operating reports on an ongoing basis, address information requests
related to the preparation of the Debtors' plan and disclosure statement, the related sales,
Creditors' Committee and Examiner investigations, and various other proposed settlements.
Adding to these responsibilities by permitting the Action to continue and allowing Movant to
serve discovery requests upon ETS and to engage in the deposition of various officers, directors,
agents and/or employees of ETS would divert the Legal Department's and other critical
employees' attention from the critical tasks of running the Debtors' business and would run
counter to the policies behind the automatic stay.  See In re Pioneer Commercial Funding Corp.,
114 B.R. at 48 (noting that the automatic stay is intended to provide the Debtors with a
"breathing spell" to address the immediate concerns related to the restructuring of the Debtors'
businesses).

34.     Therefore, for the above reasons, the second Sonnax Factor weighs
heavily against lifting the automatic stay.

**3.**     *No Specialized Tribunal Has Been Established to Hear the Actions*
         (*Sonnax Factor Number 4*).

35.     As far as the Debtors are aware, no specialized tribunal has been created to
hear any of the claims involved in the Action.  (Scoliard Decl. ¶ 19).  Instead, the Action raises

14

12580319

ordinary state law civil claims, including the causes of action for equitable indemnity, comparative indemnity, comparative contribution, and declaratory relief asserted in the cross-complaints. (Scoliard Decl. ¶ 19). While the District Court may be more familiar with the Action, the same could be said for the courts in which every prepetition case was filed against the Debtors. Notwithstanding this reality, the Bankruptcy Code specifically contemplates resolving prepetition claims against the Debtors via a centralized claims resolution process. This Court has recognized that it can interpret and apply state law in resolving claims through the bankruptcy process. See, e.g., In re Bally Total Fitness of Greater N.Y., Inc., 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009) ("[t]his Court has significant experience in applying state law ...."). Movant's claims are no exception.

36.    Accordingly, the fourth Sonnax Factor weighs in favor of denying relief from the automatic stay.

**4.**    *No Insurer Has Assumed Responsibility for Any of the Actions (Sonnax Factor Number 5).*

37.    With respect to the Action, despite Wells Fargo's suggestion that insurance coverage likely exists to cover the claims asserted in the Wells Fargo cross-complaint, ETS pays its legal defense fees and costs out-of-pocket. (Scoliard Decl. ¶ 21). As a result, requiring ETS to defend against the claims raised by Wells Fargo in its cross-complaint in the Action will result in increased out-of-pocket defense costs, which based upon the Debtors' records for the year prior to the Petition Date averaged a total of approximately $5.7 million per month.[10] (Scoliard Decl. ¶ 5). Permitting the Action to proceed would only further add to such potential costs to the estate.

---

[10]    In Ms. Scoliard's prior declaration, dated July 3, 2012 [Docket No. 682], based on the Debtors' records and in consultation with other members of the Legal Department, Ms. Scoliard stated that the Debtors' average out-of-pocket defense costs for the 12 months prior to the Petition Date was approximately $14.8 million per month.

12580319

38.     Further, while the Debtors carry customary E&O Insurance that may

potentially provide coverage for the claims of Movant, that E&O Insurance provides for a

deductible that is significantly higher than the amount of damages that Movant might be awarded

if it prevailed on its indemnification claim against ETS and thus, any amounts awarded to

Movant as a judgment against ETS will be borne directly by the Debtors.  (Scoliard Decl. ¶ 20).

39.     For these reasons, the fifth Sonnax Factor weighs against granting relief

from the automatic stay.

**5.**     *The Action Does Not Primarily Involve Third Parties (Sonnax*
*Factor Number 6).*

40.     As previously stated, if the Motion is granted, ETS will be required to

actively participate in the Action in order to avoid facing an adverse judgment on the claims

raised by Wells Fargo in its cross-complaint and the potential risk of collateral estoppel or stare

decisis with respect to Susilo's claims against ETS.  Accordingly, the sixth Sonnax Factor

weighs against granting relief from the automatic stay.  See City Ins. Co. v. Mego Int'l Inc. (In re

Mego Int'l Inc.), 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic

stay where the debtor was more than a mere conduit for the flow of proceeds and the action

impacted the "property and administration of [the debtor's] estate, suggesting that continuance of

the stay was proper.").

**6.**     *Litigation of the Action in Another Forum Would Prejudice the*
*Interests of Other Creditors (Sonnax Factor Number 7).*

41.     Although it is obvious that Movant would prefer to resolve its claim

against ETS through litigation of the Action in District Court, it is essential that resolution of

---

While this straight average is accurate, upon subsequent review of the Debtors' records, the out-of-pocket
defense costs for the months of December 2011 and April 2012 appeared to be unusually high and may have
skewed the straight 12-month average.  Eliminating these outlier months from the calculation, the Debtors'
monthly out-of-pocket defense costs averaged approximately $5.7 million for the 12 months prior to the Petition
Date, reflecting a more conservative view of their average monthly legal costs.

12580319

Movant's claim (as well as the claims of Susilo against ETS) be conducted in this Court as part

of an organized claims resolution process.  Requiring ETS to defend any of the causes of action

asserted in the Action in the District Court (even for the sole purpose of liquidating Movant's

claim) would upend the "strong bankruptcy code policy that favors centralized and efficient

administration of all claims in the bankruptcy court."  Publicker Indus. v. Salomon (In re

Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992).  A successful Chapter 11 case is in

the interests of all of the Debtors' creditors and diverting the attention of the Debtors'

employees, including the Legal Department, could have a detrimental effect on the Debtors'

necessary loss mitigation efforts and the restructuring efforts in general.

        42.      Moreover, although ETS does not believe that there is insurance coverage

for the claims asserted by Wells Fargo in its cross-complaint, if such coverage did exist, it would

be property of the Debtors' estates, which should not be depleted for the benefit of individual

creditors, particularly in the context of litigation proceedings outside of this Court.  See Pfizer,

Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.), 676 F.3d 45, 53 (2d Cir. 2012)

(stating that insurance policies are property of the estate) (citations omitted); see also MacArthur

Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 92 (2d Cir. 1988)

(finding that "[n]umerous courts have determined that a debtor's insurance policies are property

of the estate.").  Thus, allowing Movant the opportunity to litigate its claim to judgment and to

potentially recover from insurance could diminish the recoveries of other similarly situated

claimants of the Debtors.

        43.      As a result, the seventh Sonnax Factor weighs in favor of denying relief

from the automatic stay.

**7.**    *The Interests of Judicial Economy and Economical Resolution of the Action is Best Served by Maintaining the Automatic Stay and the Action is Not Ready for Trial* (*Sonnax Factor Numbers 10 and 11*).

44.    Although the Action underlying the Motion is in a relatively advanced stage of litigation, it is still not trial ready as discovery on Movant's and ETS's cross-complaints has not even commenced and dispositive motions have not yet been filed on said cross-complaints.  (Scoliard Decl. ¶ 23, Action Case Docket included in the Appendix #4 attached hereto as Exhibit 2).  Accordingly, the District Court in which the Action is pending has not yet expended significant judicial resources in addressing the issues raised in the Action, including the indemnification issues raised in the cross-complaints.  Indeed, should trial in the District Court proceed with respect to the underlying claims against Movant, it is possible that Movant will have no liability and that its cross-complaint against ETS will be rendered moot.

45.    Accordingly, the tenth and eleventh Sonnax Factors weigh in favor of denying the requested stay relief.  See Bally, 402 B.R. at 624 (denying stay relief where the parties had not started conducting extensive discovery and were not ready for trial).

**8.**    *The Balance of Harms Favors Maintaining the Automatic Stay* (*Sonnax Factor Number 12*).

46.    The last Sonnax Factor, the balance of the harms, weighs heavily in favor of maintaining the automatic stay.  Movant has not provided sufficient evidence that it would suffer significant prejudice if the stay is not immediately lifted.  Movant has been actively involved in litigation in the Action since its inception, and only recently filed its cross-complaint against ETS.  Movant is a sophisticated party who can without any undue harm or prejudice address its equitable indemnity claims against ETS in claims proceedings before this Court.  In contrast, the cost to ETS, and the Debtors' estates, of lifting the automatic stay at this early stage of the Chapter 11 Cases is substantial, as is the potential detriment to other creditors.

18

Establishing a precedent for lifting the automatic stay at this point even if only to allow

discovery and require participation by ETS at trial in the Action to assist Wells Fargo in its

defense would inevitably lead to additional relief from stay motions seeking to proceed with

prepetition litigation.

47.    With over 1900 matters currently being handled by the Legal Department

in which the Debtors are named as defendants or respondents or are contractually obligated to

defend a third party, pending in jurisdictions all over the country, granting relief from stay

motions in even a relatively small percentage of the Debtors' outstanding litigation would

distract the Debtors' management, professionals and, more importantly, the Legal Department,

thus interfering with the Debtors' efforts to successfully reorganize in the Chapter 11 Cases.

See, e.g., In re Northwest Airlines Corp., No. 05-17930, 2006 WL 694727, at *2 (Bankr.

S.D.N.Y. Mar. 3, 2006) (stating that "[t]o allow the automatic stay to be lifted with respect to

this action at this time would prompt similar motions and ... [t]he distraction and expense of

defending such litigation would interfere with judicial economy and the Debtors' process of

reorganization.") (citing Shugrue v. Air Line Pilots Assoc., Int'l (In re Ionosphere Clubs, Inc.),

922 F.2d 984, 989 (2d Cir. 1990)); Bally, 402 B.R. at 623 ("allowing the actions to proceed

would distract the Debtors' management from the bankruptcy proceeding ... thereby affecting the

interests of other creditors.").  During the pendency of the Chapter 11 Cases, the limited

resources of the Debtors' estates are much better spent on the Debtors' restructuring efforts,

rather than litigating the Action and other litigations subject to the automatic stay.  Forcing ETS

to defend against Wells Fargo's cross-complaint in the Action or assist Wells Fargo in its

defense of the Action through burdensome and potentially prejudicial discovery and appearance

at trial, as discussed above, would distract the Debtors from and hinder their reorganization

19

efforts and negate the important "breathing spell" necessary to allow them to restructure and preserve the value of the Debtors' assets for the benefit of all creditors.

48.    Permitting Wells Fargo to litigate its speculative claim against ETS in the District Court, in another part of the country, would undoubtedly lead to numerous additional stay relief motions, which would unnecessarily drain the Debtors' resources and distract them from restructuring at this important early stage in the Chapter 11 Cases.  See Bally, 402 B.R. at 624 (holding that the overall balance of harms weighed in favor of denying stay relief because forcing the debtors to litigate would distract them from reorganizing, threaten to open the "floodgates" to other lift stay motions, resources were better spent stabilizing operations and cash flows and no great hardship had been demonstrated).  This is of real concern, as at least 16 motions seeking relief from the automatic stay have been filed with the Court, the Debtors and their counsel have received several inquiries requesting consent to relief from the stay.  The balance of harms clearly favors maintaining the automatic stay with respect to the Action.

## II.    Wells Fargo Should Not Be Authorized to Satisfy Any Judgment From Insurance Proceeds, if any, or From Non-Estate Property or Income

49.    The Motion requests that if the Court grants Wells Fargo relief from the automatic stay to allow the continued prosecution of Wells Fargo's cross-complaint against ETS, the order should also authorize Wells Fargo to enforce any judgment against ETS by collecting against available insurance and/or proceeding against ETS "*as to non-estate property or earnings*."  (Motion at 2) (emphasis supplied).  This request should be denied as it not only seeks authorization to gain preferred access to valuable property of the Debtors' estate, but also appears to violate the priority scheme for claims as set forth in the Bankruptcy Code.

50.    While the Debtors have E&O Insurance, the high deductible aside, that insurance and any such proceeds would be property of the estate.  See In re Quigley Co., Inc.,

12580319

676 F.3d at 53.  Rather than allowing such property of the estate to be depleted by litigants on a first-come first-served basis, the access to insurance should be determined following careful consideration of numerous issues and facts that are not currently before this Court.

51.    In addition, by seeking authority to collect a judgment for its prepetition claims against ETS from non-estate property or income of the Debtors, it appears that Wells Fargo is attempting to elevate its status from a general unsecured creditor asserting a contingent and disputed litigation claim to that of a creditor entitled to administrative priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code.  As Wells Fargo has provided no basis for this extraordinary request, it should be denied.

## III.  Relief From the Fourteen Day Stay Imposed by Bankruptcy Rule 4001(a)(3) Should be Denied

52.    The Motion requests that any order granting the relief requested include a waiver of the fourteen day stay provided by Bankruptcy Rule 4001(a)(3).  The purpose of the fourteen day stay provided by Bankruptcy Rule 4001(a)(3) is to permit the debtor or other party opposing relief from the stay to seek a stay pending appeal of the order granting relief from the stay.  See COLLIER ON BANKRUPTCY ¶ 4001.05 (16th ed. rev. 2012).  Wells Fargo has provided no basis for depriving the Debtors of the opportunity to seek a stay pending appeal of any order granting the relief requested in the Motion.  Accordingly, should the Court grant any of the relief requested in the Motion, Wells Fargo's request for a waiver of the fourteen day stay provided by Bankruptcy Rule 4001(a)(3) should be denied.

*[remainder of page intentionally left blank]*

21

12580319

## CONCLUSION

53.     Based on the weight of settled authority and its application to the Motion as described above, the Debtors respectfully submit that Wells Fargo has failed to meet its burden to show cause for lifting the automatic stay to (i) permit the Action to proceed in the District Court or, in the alternative, (ii) permit Wells Fargo to conduct discovery in the Action directed at ETS and issue trial subpoenas directed at ETS or any of its officers, directors, and employees.  Substantially all of the applicable Sonnax Factors weigh heavily in favor of maintaining the automatic stay.  As such, the Court should deny the Motion.

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an Order denying the Motion and grant such other relief as the Court deems proper.

Dated:    July 17, 2012                                            Respectfully submitted,
          New York, New York

                                                    **CURTIS, MALLET-PREVOST,**
                                                    **COLT & MOSLE LLP**

                                                    By: /s/ *Steven J. Reisman*
                                                        Steven J. Reisman
                                                        Turner P. Smith
                                                        Maryann Gallagher
                                                    101 Park Avenue
                                                    New York, New York  10178-0061
                                                    Telephone:  (212) 696-6000
                                                    Facsimile:  (212) 697-1559
                                                    Email:    sreisman@curtis.com
                                                              tsmith@curtis.com
                                                              mgallagher@curtis.com

                                                    *Conflicts Counsel for the Debtors and*
                                                    *Debtors in Possession*

12580319