**EXHIBIT 1**

**<u>Scoliard Declaration</u>**

12614549

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
Steven J. Reisman
Turner P. Smith
Maryann Gallagher
*Conflicts Counsel for the Debtors and*
  *Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Case No. 12-12020 (MG) |
| | : | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | : | Chapter 11 |
| | : | |
| Debtors. | : | Jointly Administered |

---------------------------------------------------------------x

**DECLARATION OF JENNIFER SCOLIARD, IN-HOUSE BANKRUPTCY
COUNSEL AT RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF DEBTORS'
OBJECTION TO MOTION OF WELLS FARGO BANK, N.A. FOR RELIEF FROM
THE AUTOMATIC STAY TO PERMIT NON-BANKRUPTCY FORUM ACTION
AGAINST DEBTOR EXECUTIVE TRUSTEE SERVICES, LLC, OR, TO PERMIT
WELLS FARGO BANK, N.A. TO CONDUCT DISCOVERY AND TO ISSUE
<u>TRIAL SUBPOENAS DIRECTED AT EXECUTIVE TRUSTEE SERVICES, LLC</u>**

      I, Jennifer Scoliard, declare as follows:

      1.      I serve as In-House Bankruptcy Counsel in the Legal Department at

Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of

the state of Delaware and the parent or indirect parent of the other debtors and debtors in

possession in the above-captioned Chapter 11 cases, (collectively, the "**Debtors**"), including

Executive Trustee Services, LLC ("**ETS**"). I have held this position since September 2010.

Prior to that date, I served in various legal roles supporting GMAC Mortgage, LLC from January

2008 to September 2010. I joined ResCap in January 2008.

12614549

2.       In my role as In-House Bankruptcy Counsel at ResCap, I am responsible for the management of all non-routine bankruptcy litigation nationwide, including contested bankruptcy matters.  I am authorized to submit this declaration (the "**Declaration**") in further support of *Debtors' Objection to Motion of Wells Fargo Bank, N.A. for Relief From the Automatic Stay to Permit Non-Bankruptcy Forum Action Against Debtor Executive Trustee Services, LLC, or, to Permit Wells Fargo Bank, N.A. to Conduct Discovery and to Issue Trial Subpoenas Directed at Executive Trustee Services, LLC* (the "**Objection**"), as set forth below.[1]

3.       In my capacity as In-House Bankruptcy Counsel, I am generally familiar with the Debtors' litigation matters, including the Action.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' litigation case files, books and records as well as other relevant documents; my discussions with other members of the Legal Department; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' litigation matters, financial condition and history.  In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

4.       The Debtors by way of direct claims and counter-claims are defendants, respondents, or are contractually obligated to defend third parties, in more than 1,900 pending

---

[1]    Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

litigation and contested foreclosure and bankruptcy matters filed in jurisdictions all around the country.[2]  Approximately one-third of these matters concern either (i) defenses asserted in foreclosure, eviction or borrower bankruptcy proceedings or (ii) title disputes, both of which are exempted from the automatic stay by the Supplemental Servicing Order.  In addition to the forgoing, approximately one-third of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not subject to the stay, notwithstanding the Supplemental Servicing Order.  Thus, approximately two-thirds of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not stayed and continue to proceed in various jurisdictions across the country.  This is in addition to the tens of thousands of foreclosure actions and borrower bankruptcies the Debtors are parties to in actions pending throughout the fifty states primarily managed by the Debtors' mortgage default group.   Notwithstanding the application of the Supplemental Servicing Order, there are still a substantial number of cases – one-third of approximately 1,900 (approximately 690) – that are stayed by the automatic stay, including the Action.

5.      The Debtors' monthly legal defense expenses are significant.  Based upon the Debtors' records for the year prior to the Petition Date, the Debtors' out-of-pocket legal defense costs averaged approximately $5.7 million per month.[3]

---

[2]   This figure does not include the tens of thousands of foreclosure, eviction, or bankruptcy-related claims/lawsuits to which the Debtors are a party in connection with servicing activities.

[3]   In my prior declaration, dated July 3, 2012 [Docket No. 682], based on the Debtors' records and in consultation with other members of the Legal Department, I stated that the Debtors' average out-of-pocket defense costs for the 12 months prior to the Petition Date was approximately $14.8 million per month.  However, while this straight average is accurate, upon subsequent review of the Debtors' records, it was noted that the out-of-pocket defense costs for the months of December 2011 and April 2012 appeared to be unusually high and may have skewed the straight 12-month average.  Eliminating these outlier months from the calculation, the Debtors' monthly out-of-pocket defense costs averaged approximately $5.7 million for the 12 months prior to the Petition Date, reflecting a more conservative view of their average monthly legal costs.

A.    **Background of the Action**

6.    I am generally familiar with the litigation against ETS and Wells Fargo

styled as <u>Franciska Susilo v. Wells Fargo Bank, N.A., et al.,</u> Case No. 2:11-cv-1814-CAS (PJW)

(the "**Action**") and various members of the Legal Department have been involved in its defense

since the Action was commenced by plaintiff Franciska Susilo ("**Susilo**") in the Los Angeles

County Superior Court of the State of California in January 2011.  In the Action, Susilo seeks,

among other things, damages of no less than $250,000 and Wells Fargo seeks, pursuant to its

cross-complaint against ETS, equitable indemnity for fees and costs of the Action as well as any

damages it incurs in the Action.

7.    The Action, in which Movant and ETS are named as defendants, was

removed to the United States District Court for the Central District of California (the "**District

Court**").  A certain amount of motion practice has ensued.  I understand that the District Court

ordered mediation, but the mediation did not result in a settlement of the Action.

8.    On May 17, 2012,  the District Court was notified of the automatic stay as

a result of the Chapter 11 Cases.  In response to such notification, on May 21, 2012, the District

Court ordered a stay of all proceedings, including discovery, involving ETS, but permitted a trial

to go forward on Susilo's claims against Wells Fargo.  (Motion at 3).

9.    Pursuant to the *Order Granting Stipulation To Continue Trial and Related

Dates* entered by the District Court on July 11, 2012 [Action Docket No. 93], the trial in the

Action has been continued to December 4, 2012, the cut off for discovery is September 17, 2012,

and dispositive motions must be made by September 28, 2012.

10.     I understand that although formal and informal discovery with respect to Susilo's claims against Movant and ETS has taken place, no discovery with respect to Movant's and ETS's cross-complaints has occurred as of the date of this Objection.

**B.     Lifting the Automatic Stay Will Interfere With the Chapter 11 Cases**

11.     The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have contractual obligations to defend.  The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial.

12.     In addition to the above, the Legal Department has been the primary group tasked with assisting in the development and implementation of the Supplemental Servicing Order and assisting outside counsel with application of the automatic stay to various direct claims and counterclaims asserted in foreclosure actions and borrower bankruptcies in light of the blanket relief from the automatic stay granted at the Debtors' request by Supplemental Servicing Order.

-6-

13.     As a result of the Debtors' bankruptcy filings and the entry of the Supplemental Servicing Order, the Legal Department has been called upon and will continue to be called upon to assist in the review and analysis of individual claims as they arise in conjunction with internal business personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability of this Court's orders regarding stay relief.

14.     The Legal Department also fields inquiries daily from both its outside litigation counsel and its mortgage default counsel regarding the application of the Supplemental Servicing Order and will continue to do so as new legal actions arise.

15.     Moreover, several employees from the Legal Department have also spent the better part of the last month assisting in the preparation of the Debtors' schedules of assets and liabilities, statements of financial affairs, and ordinary course professionals and special counsel retention applications and other filings, as well as performing related tasks in support of the administration of the Chapter 11 Cases.

16.     Given the comprehensive and detailed role the Legal Department plays in (i) the managing of the Debtors' litigation and contested foreclosure and bankruptcy matters; (ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy counsel and financial advisors with various motions and other filings in the Debtors' bankruptcy case, carrying out its ordinary course tasks while at the same time discharging its duties in the Chapter 11 Cases has been and will continue to be a monumental task.

17.     Permitting legal actions otherwise stayed by the Debtors' bankruptcy to proceed, therefore, would create a significant burden on the Debtors by adding an additional workload of up to (approximately) 690 cases, diverting the Legal Department's and other critical

-7-

employees' attention from the critical tasks of running the Debtors' businesses, and significantly increasing the Debtors' out-of-pocket legal costs.

**C.    Relief from the Automatic Stay Will Not Result in Complete Resolution of the Action**

18.    Granting the relief requested in the Motion would impose upon the Debtors virtually the same burden as lifting the stay with respect to the entire Action because the Debtors would be required to participate fully in discovery and at trial.

**D.    No Specialized Tribunal has Been Established to Hear the Action**

19.    To the best of my knowledge, no specialized tribunal has been created to hear any of the claims involved in the Action.  The Action raises ordinary state law claims, such as breach of contract, wrongful foreclosure, conversion, fraud or negligent misrepresentation, and the indemnity and contribution causes of actions asserted in the cross-complaints filed by Wells Fargo and ETS in the Action.

**E.    No Insurer has Assumed Responsibility for the Action.**

20.    While the Debtors have customary errors and omissions insurance coverage ("E&O Insurance") that may potentially provide coverage for the claims Movant asserts against the Debtors, that E&O Insurance policy provides for a deductible that is significantly higher than the amount of damages sought by Susilo in the Action; any amounts awarded, therefore, to Movant as a judgment against the Debtors will be born directly by the Debtors' estates.

21.    In addition, in the vast majority of the cases, including this Action, the Debtors pay their legal defense fees and costs out-of-pocket.  As a result, requiring the Debtors to defend the Action will result in increased out-of-pocket defense costs.  As noted above, based

12614549

upon the Debtors' records for the year prior to the Petition Date these costs averaged approximately $5.7 million per month.

### F.    The Action does not Primarily Involve Third Parties

22.    The Action involves ETS as co-defendant with Wells Fargo to the claims asserted by Susilo and as defendant to Wells Fargo's cross-complaint and does not primarily involve third parties other than Wells Fargo, the only party seeking relief from the automatic stay in the Action.  In the Action, I understand that the individual defendants have been dismissed, and the other parties named as defendants have never appeared.  Thus, the Action does not primarily involve third parties.

### G.    The Action is Not Trial Ready

23.    While both informal and formal discovery has occurred in connection with the allegations raised by Susilo, no discovery in connection with the cross-complaints and cross-claims between Wells Fargo and ETS has taken place.  In addition, dispositive motions have not yet been filed in the Action.  At this time, the Action is not ready to proceed to trial.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 17, 2012

By:      /s/ Jennifer Scoliard
Name:  Jennifer Scoliard
Title:    In-House Bankruptcy Counsel for
          Residential Capital, LLC

12614549