# EXHIBIT 1

## Scoliard Declaration

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Norman Rosenbaum

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF JENNIFER SCOLIARD,**
**IN HOUSE BANKRUPTCY COUNSEL AT RESIDENTIAL**
**CAPITAL, LLC, IN SUPPORT OF DEBTORS' OBJECTION TO MOTION OF**
**AURORA BANK, FSB FOR ORDER PURSUANT TO BANKRUPTCY CODE 362(d),**
**BANKRUPTCY RULE 4001 AND LOCAL BANKRUPTCY RULE 4001-1 MODIFYING**
**AUTOMATIC STAY TO ALLOW CONTINUATION OF PRE-PETITION LITIGATION**

I, Jennifer Scoliard, declare as follows:

1. I serve as In-House Bankruptcy Counsel in the Legal Department at Residential Capital, LLC ("***ResCap***"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "***Debtors***"). I have held this position since September 2010. Prior to that date, I served in various legal roles supporting GMAC Mortgage, LLC from January 2008 to September 2010. I joined ResCap in January 2008. In my role as In-House Bankruptcy Counsel at ResCap, I am responsible for the management of all non-routine

bankruptcy litigation nationwide, including contested bankruptcy matters.  I am authorized to submit this declaration (the "***Declaration***") in further support of the *Debtors' Objection To Motion Of Aurora Bank, FSB for Order Pursuant to Bankruptcy Code 362(d), Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-1 Modifying Automatic Stay to Allow Continuation Of Pre-Petition Litigation*, dated July 17, 2012 (the "***Objection***"), as set forth below.[1]

2. In my capacity as In-House Bankruptcy Counsel, I am generally familiar with the Debtors' litigation matters, including the California Actions.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' litigation case files, books and records as well as other relevant documents; my discussions with other members of the Legal Department; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' litigation matters, financial condition and history.  In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

3. The Debtors by way of direct claims and counter-claims are defendants, respondents, or are contractually obligated to defend third parties in excess of 1,900 pending litigation and contested foreclosure and bankruptcy matters filed in jurisdictions all around the country.  Approximately one-third of these matters concern either (ii) defenses asserted in

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

foreclosure, eviction or borrower bankruptcy proceedings or (ii) title disputes, both of which are exempted from the automatic stay by the Supplemental Servicing Order. In addition to the forgoing, approximately one-third of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not subject to the stay, notwithstanding the Supplemental Servicing Order. Thus, approximately two-thirds of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not stayed and continue to proceed in various jurisdictions across the country. This is in addition to the tens of thousands of foreclosure actions and borrower bankruptcies the Debtors are parties to in actions pending throughout the fifty states primarily managed by the Debtors' mortgage default group. Notwithstanding the application of the Supplemental Subservicing Order, there are still a substantial number of cases – one-third of approximately 1,900 (approximately 690) – that are stayed by the automatic stay, including the California Actions.

        **A.**      **Lifting the Automatic Stay Will Interfere With the Debtors Chapter 11 Cases**

        4.      The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have contractual obligations to defend. The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with

3

local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial.

5. In addition to the above, the Legal Department has been the primary group tasked with assisting in the development and implementation of the Supplemental Servicing Order and assisting outside counsel with the application of the automatic stay to various direct claims and counterclaims asserted in foreclosure actions and borrower bankruptcies in light of the blanket relief from the automatic stay granted at the Debtors' request by the Supplemental Servicing Order.

6. As a result of the Debtors' bankruptcy filings and the entry of the Supplemental Servicing Order, the Legal Department has been called upon and will continue to be called upon to assist in the review and analysis of individual claims as they arise in conjunction with internal business personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability of this Court's orders regarding stay relief.

7. The Legal Department also fields inquiries daily from both its outside litigation counsel and its mortgage default counsel regarding the application of the Supplemental Servicing Order and will continue to do so as new legal actions arise.

8. Moreover, several employees from the Legal Department have also spent the better part of the last month assisting in the preparation of the Debtors' schedules of assets and liabilities, statements of financial affairs, ordinary course professionals and special counsel retention applications and other filings, as well as performing related tasks in support of the administration of the Chapter 11 Cases.

9. Given the comprehensive and detailed role the Legal Department plays in (i) the managing of the Debtors' litigation and contested foreclosure and bankruptcy matters;

(ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy counsel and financial advisors with various motions and other filings in the Debtors' bankruptcy case, carrying out its ordinary course tasks while at the same time discharging its duties in the Chapter 11 Cases has been and will continue to be a monumental task.  Permitting legal actions otherwise stayed by the Debtors' bankruptcy to proceed, therefore, would create a significant burden on the Debtors by adding an additional workload of up to (approximately) 690 cases, diverting the Legal Department's and other critical employees' attention from the critical tasks of running the Debtors' businesses, and significantly increasing the Debtors' out-of-pocket legal costs.

      **B.**      **Relief from the Automatic Stay Would Not Result in a Partial or Complete Resolution of the Issues**

      10.      If the stay were lifted, the California Actions would still have to be litigated against the Debtor Defendants.  Both the Rogers Action and the Joint Action are in their very early stages.  Only limited discovery has occurred with respect to Movant's counterclaim against the Debtors in the Rogers Action, which was stayed pending the outcome of the initial mediation, and no discovery has taken place in the Joint Action.  To date, limited discovery has occurred, no dispositive briefing or motions have been filed, and no trial date has been set.

      11.      As of the Petition Date, in the Joint Action, no initial case management conference has been held, the Debtor Defendants have not filed an answer to Movant's complaint, there is no set discovery schedule and no discovery has taken place, no motions for dispositive relief have been filed, and no trial date has been set.

      12.      Litigating the California Actions to completion would require the Debtors to draft an answer and potentially motions for dismissal and/or summary judgment, present oral

arguments and, if summary judgment is not granted, conduct written discovery, depositions, possibly engage expert witnesses and prepare for and conduct a trial.

13. Even if judgments were awarded in favor of Movant in the California Actions, a determination of the amount of damages to which Movant would be entitled will mandate fact-intensive inquiries that would require potentially costly discovery, testimony, briefing, and oral argument.

**C.     No Specialized Tribunal has Been Established to Hear the California Actions**

14. As far as I am aware, no specialized tribunal has been created to hear any of the claims involved in the California Actions. The California Actions raise state law wrongful reconveyance claims.

**D.     No Insurer has Assumed Responsibility for Any of the California Actions**

15. While the Debtors have customary errors and omissions insurance coverage ("E&O Insurance") that may potentially provide coverage for the claims Movant asserts against the Debtors, that E&O Insurance policy provides for a deductible that is significantly higher than the amount of damages sought by Movant; any amounts awarded, therefore, to Movant as a judgment against the Debtors will be born directly by the Debtors' estates.

16. In addition, in the vast majority of the cases, including the California Actions, the Debtors pay their legal defense fees and costs out-of-pocket. As a result, requiring the Debtors to defend the California Actions will result in increased out-of-pocket defense costs,

which based upon the Debtors' records for the year prior to the Petition Date averaged approximately $5.7 million per month.[2]

### E. Movant Claims Against the Debtor Defendants in the California Actions do not Involve Third Parties

17. The only named defendants in the Joint Action are Debtor Defendants and Movant's counterclaim is only against the Debtors Defendants in the Rogers Action.

### F. Attempted Mediation and Resolution Through Mediation

18. In July of 2011, Movant and the Debtor Defendants agreed to (i) attend mediation to attempt to settle the disputes and (ii) suspend all deadlines pending mediation. The Debtor Defendants and Movant attended mediation in September 2011 with respect to Movant's counterclaims in the Rogers Action, but failed to reach a settlement. Notwithstanding the fact that the Debtors were under no binding obligation to do so, the parties attempted to schedule a second round of mediation with respect to the issues arising in connection with the Rogers Action and the Joint Action. The Debtors did not engage in any dilatory tactics to delay setting a date for further meditation; rather they attempted in good faith to schedule another mediation date. Beginning in February 2012, counsel for the Debtor Defendants had numerous communications with counsel for Movant to attempt to set a date for further mediation, but the parties were ultimately unable to come to agreement due to mutual scheduling conflicts.

19. It is unclear whether these matters will be resolved in mediation and therefore it is too early to forecast whether any members of the Debtors' management team may

---

[2] In my prior declaration, dated July 3, 2012 [Docket No. 682], based on the Debtors' records and in consultation with other members of the Legal Department, I stated that the Debtors' average out-of-pocket defense costs for the 12 months prior to the Petition Date is approximately $14.8 million per month. While this straight average is accurate, upon subsequent review of the Debtors' records, the out-of-pocket defense costs for the months of December 2011 and April 2012 appeared to be unusually high and may have skewed the straight 12-month average. Eliminating these outlier months from the calculation, the Debtors' monthly out-of-pocket defense costs averaged approximately $5.7 million for the 12 months prior to the Petition Date, reflecting a more conservative view of their average monthly legal costs.

be called to testify at trial.  If these matters were to proceed, I would be required to devote substantial time analyzing and preparing the California Actions for mediation and potentially trial.  Further, the preparation of the California Actions for mediation and/or litigation would require the time and resources of the Debtors' other departments and employees.  Finally, as I am based in the Debtors' Fort Washington, Pennsylvania office, the Debtors would be required to incur the expense for my travel.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 17, 2012

*/s/ Jennifer Scoliard*
Jennifer Scoliard
In-House Bankruptcy Counsel for
Residential Funding, LLC