Patrick J Hopper                                                                                    July 17, 2012
Case 09-11026
220 McCartney Dr
Moon Twp Pa 15108
Telephone: (239) 293-0432
pjh.gmacbk@gmail.com (preferred contact)

*Pro-Se, non attorney Movant*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
In re
Residential Capital, LLC *et al.,* Chapter 11
Case No. 12-12020 (MG)

Debtors. Administratively Consolidated
-----------------------------------------------------------------X

**LIMITED OBJECTION OF PATRICK HOPPER TO DEBTORS MOTION TO
EMPLOY AND RETAIN BRADLEY ARANT BOULT CUMMINGS LLP AS SPECIAL
LITIGATION AND COMPLIANCE COUNSEL TO THE DEBTORS**

MOVANT, Patrick J Hopper, pro-se, a contingent claimant in litigation represented by an

action pending in the Circuit Court of the Twentieth Judicial Circuit of Florida, Collier County in

*GMAC Mortgage LLC v. Patrick Hopper et al.* as Case # 09-11026 on his own behalf and for

similarly situated homeowners, files this Limited Objection to the Motion to Employ, (Docket

No. 721; **" Authorization to Employ and Retain Bradley Arant Boult Cummings LLC as

Special Litigation and Compliance Counsel to the Debtors"**.

**PRELIMINARY STATEMENT**

The MOVANT hereby files this limited objection on the appointment under sections

327(e) along with the proposed fee schedule. The standard applied under Section 327(e) where

counsel is being engaged for a special purpose is whether it is in the best interest of the estate to

do so. *In re Woodworker's Warehouse, Inc*, 323 B.R. 403, 406 (D. Del. 2005). As noted in the

legislative history, subsection (e) "will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation." H.R. Rep. No. 595, 95th Cong., 1st Sess. 328.

This bankruptcy was filed on the heels of allegations of massive fraud. For the past 5 years, debtors were party to numerous litigations and investigations as well as alleged violations of state and federal laws including possible IRS review of tax exempt status of REMIC trusts for failure to properly transfer mortgages. As stated in Debtors filing docket #741 "The Debtors' bankruptcy cases are among the most complex cases ever filed" and further states "Many of the matters on which these professionals had been assisting the Debtors prior to the Petition Date will be of intense focus during these bankruptcy cases."

Debtor now seeks to employ and retain the Law firm of **Bradley Arant Boult Cummings LLC** ("BABC") as **Special Litigation and Compliance Counsel** nunc pro tunc [1]. For reasons stated in the Maddox affidavit [2,3], BABC's retention would be in the best interest of the Debtors' estate, their creditors, and other parties in interest.

---

[1] Professional may be appointed nunc pro tunc only (1) if bankruptcy court finds, after a hearing, that professional is disinterested, such that he would have been appointed initially; and (2) if court, in exercise of its discretion, determines that particular circumstances exist which are so extraordinary that they warrant retroactive appointment. Bankr.Code, 11 U.S.C.A. § 330.

[2] BABC has extensive knowledge of and experience with the Debtors' mortgage loan servicing and sub-servicing businesses, applicable laws and regulations regarding the operation of their businesses, and ongoing litigation against the Debtors and the investors they represent relating to the Debtors' mortgage servicing operations.

[3] BABC has assisted the Debtors in the negotiation of, and compliance with their obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011 (the "Consent Order"), by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012 (the "Consent Judgment"), and (c) all related agreements with the Debtors and their respective affiliates (the "Related Agreements" and, together with the Consent Order and the Consent Judgment, the "Compliance Matters," and, together with the Litigation Matters, the Servicing Matters, the Prelitigation Matters, the REO Matters, and the Government Matters, the "Prepetition Matters").

**GROUNDS FOR LIMITED OBJECTION**

BABC has made statements regarding their familiarity with the complexity, servicing platform, litigation files and consent order requirements supporting the benefit engagement would provide to the estate. It therefore appears prudent for Debtor to request under Section § 327(e) to take advantage of BABC's special knowledge and experience provided that it would substantially benefit the estate.

Prior to approving such request, past practices and relationships of BABC with Debtor need to be considered to ensure fee arrangements are not compensating BABC for past practices of defending litigation based on known false documents which inflates legal fees.

1) In 2011 when selecting firms to conduct the independent review, reporters of the Wall Street Journal D. Fitzpatrick and R. Simon are quoted :

   "U.S. regulators are barring certain law firms from assisting in ferreting out foreclosure abuses, citing their perceived coziness with the mortgage-servicing industry, people familiar with the situation said. In one instance, the Federal Reserve rejected a GMAC Mortgage LLC proposal that Bradley Arant Boult Cummings LLP would assist with an independent, U.S.-mandated review of past home seizures, these people said."

2) The written testimony of Thomas A Cox Before the House Judiciary Committee, December 2, 2010, **Foreclosed Justice: Causes and Effects of the Foreclosure Crisis** discusses BABC actions and conduct when confronted with false evidence:

   **"COVER-UP -** When GMAC Mortgage was confronted with the evidence of Jeffrey Stephan's dishonest affidavits in Maine, its first effort was an attempt to silence me rather than to have its lawyers immediately go to the Maine courts and admit that GMAC had presented dishonest affidavits from Jeffery Stephan all across the State of Maine.13 I deposed Stephan on June 7, 2010. On June 22, 2010, GMAC replaced its lawyers in that $85,000 foreclosure case with national litigation counsel out of Birmingham, Alabama, and a major national law firm based in Portland, Maine. Their first action in that case, taken on June 25, 2010, was not to notify the court that false evidence had been presented and to seek to withdraw Stephan's dishonest affidavits. Rather their first act was to file a motion for protective order in an attempt to bury the Jeffrey Stephan transcript. "

   **"DISCOVERY ABUSES** The servicers routinely abuse the pretrial discovery system with extraordinary delaying tactics, and voluminous objections to reasonable discovery requests, even objecting constantly to requests for production of the original promissory note. These obstructive discovery tactics further burden the court systems with protracted court hearings of discovery disputes. In addition this tactic increases legal expense for homeowners and decreases their ability to fairly defend themselves."

As stated in MOVANTs' filing Docket No. 421, significant time and effort has been spent by MOVANT and others litigants in similar situations on defending actions in State Court proceedings based on inaccurate, false and misleading statements and discovery.[4] [5]

> As of July 6, 2012, BABC continues to pursue litigation in state action that is not in compliance with the various settlements and consent order, ignores the requirements established in the new servicing standards and is continuing to engage in a fraud on the court by not removing inaccurate assignments, affidavits and continuing to rely on significant inaccurate admissions and discovery abuses. BABC indicated to Movant that the servicing standards only apply to new loans and therefore not relevant.
> Following are a few continuing violations:
> A. Standards for Documents Used in Foreclosure and Bankruptcy Proceedings.
>    a. BABC continues to rely on documents executed by GMAC as owner not servicer
> B. Requirements for Accuracy and Verification of Borrower's Account Information.
>    a. GMAC continues to claim Redwood trust as the investor per the MERS system a fact it has known is inaccurate for over 2 years.
> C. **Documentation of Note, Holder Status and Chain of Assignment**.
>    a. GMAC continues to rely on a false assignment filed by robo-signer Jeffrey Stephan

MOVANT contends that the retention of BABC, without proper guidelines, may create a conflict of interest, that is an "end run" around the various consent orders and governmental settlements as BABC lacks the impartiality required of a professional representing the estate under Section 327. BABC is well entrenched in the complex piecemeal litigation process.[6]

---

[4] In MOVANT's case, DEBTOR obtained unchallenged relief of stay in a chapter 7 bankruptcy proceeding in 2009, acting as servicer for SQMT 2004-08 Trust and embarked on foreclosure proceedings as the owner of the note based on an assignment of rights in Dec 2009. (Debtor relied on an assignment created specifically to foreclose. Such assignment conflicts with filings in Ch7 bankruptcy court). c) Identified Wells Fargo as owner to OFR regulators via writing in March 2011. (Confirmed verbally to the OFR two months after signing the Consent order that such statement is accurate.) and d) identifies Redwood Trust as the owner on the MERS system (MERS has a duty to protect title and the MERS rules delegate this authority to servicers to maintain accuracy in information recorded on the MERS system and correct known discrepancies. This issue was first raised with MERS, Redwood Trust and DEBTOR in early 2010.

[5] MOVANT, with debtors approval, negotiated a sale agreement which fully satisfied the first lien and fully protected the rights of the trust. Such transaction could only be consummated in MOVANT's chapter 7 bankruptcy case via a 363 sale. Despite the Ch.7 trustee agreeing to consider such 363 approach and DEBTOR's then counsel Oscar Gomez of the law firm David Stern, stated "**it made too much sense not to do. However the ball is in their court**" DEBTOR chose not to pursue such route seeking foreclosure and the deal cratered. The reasons for such a decision where self serving as for reasons articulated in MOVANT's state court filings, many of which are addressed in the OCC order, but are still continuing.

[6] BABC is familiar with the facts and history of the Debtors' servicing platform, their litigation files in more than a dozen states, their foreclosure and loss mitigation departments, their negotiation of the nationwide Attorney General settlement in 2012, the implementation of the Consent Order issued by the Federal Reserve Board (FRB), the Debtors' review and revision of their policies and procedures related to document execution and notary practices, their internal quality control processes, as well as their mortgage servicing policies and procedures."

**RELIEF SOUGHT**

Prior to further engaging in costly litigation MOVANT requests a process for appointment of an independent **Special Counsel** on a limited fee basis, to "evaluate and correct" inaccuracies in current filings and if possible settle within the framework established by the court prior to proceeding with prosecution by **Special Litigation and Compliance Counsel.**

**Special Litigation and Compliance Counsel** engagement should not be approved nunc pro tunc to avoid rewarding BABC for pursuing actions that have been since been deemed questionable. BABC charged Debtor a significant amount of fees in defending actions based on known inaccuracies and then determining how to selectively correct inaccurate filings.

Within 20 days of engaging **Special Litigation and Compliance Counsel** a sworn statement should be prepared and signed by counsel verifying compliance accuracy and proof of properly remove and re-file corrected documents, including corrected admissions, proper assignments, documented assignment trails, accurate affidavits and facts , prior to embarking on special litigation. Such procedure is prudent to ensure BABC does not engage in unnecessary legal cost.

When properly followed, the securitization process is quite simple, (despite crossing multiple practices of law) provided all proper steps have been taken without impairing the basic constitutional rights to acquire, possess and protect property. The complexity arose when MERS assumed the role of the County Land Records to protect property rights by assuming a thin, very specific, fiduciary duty with Borrowers. MERS rules further delegate's maintenance of its duties to servicers to track title assignment enabling a "clear and marketable title" to be ultimately transferred back to the property owner. With proper procedures in place, the securitization

process is quite simple provided proper procedures have not been adhered to. (Exhibit A). The complexity arose with the fabrication of documents to cover mistakes made in the securitization process. (Exhibit B-Movants case).

**WHEREFORE**, the undersigned, a non attorney, makes this limited objection in good faith, for the protection of the public, protection of his rights and the integrity of the Court.

Dated: July 17, 2012

Patrick J Hopper
220 McCartney Dr
Moon Twp Pa, 15108
Telephone (239) 293-0432
pjh.gmacbk@gmail.com (preferred contact)

# EXHIBIT A



# EXHIBIT B



BABC continues to defend litigation that states GMACM is servicer on behalf of

1) Wells Fargo (The Master Servicer) the owner of the note as disclosed to the Florida OFR

2) Redwood Trust (A parent company of RWT that never had ownership) **per the MERS reporting system as of 7/16/12**

3) SEQMT (true owner) per original ch. 7 bk filing

The complexity arises due to the landmines created throughout the bankruptcy and foreclosure process that need to be avoided by counsel familiar with the misleading documents.