Hearing Date: August 14, 2012 at 10:00 a.m. (ET)
Objection Deadline Date: August 7, 2012 at 4:00 p.m. (ET)

DAVID J. BROWN
1135 Ulloa Street
San Francisco, CA 94127
Telephone: (415) 716-7786
E-Mao;: djbrown2008@gmail.com

Attorney for Gerard Wiener

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X
**In re:**                                                        :
                                                                  : **Chapter 11**
**Residential Capital, LLC,** *et al.*,                           :
                                                                  : **Case No. 12-12020**
                    **Debtors,**                                  :
                                                                  : **Jointly Administered**
-------------------------------------------------------X

### MOTION OF GERARD WIENER FOR RELIEF FROM AUTOMATIC STAY AS TO GMAC MORTGAGE, LLC

Gerard Wiener for himself and as representative of the Estate of Roland Wiener moves for relief from the automatic stay as to debtor GMAC Mortgage, LLC pursuant to 11 U.S.C. § 362 in order to complete discovery and proceed to trial to liquidate his claims, individually and for his father's estate, in the case captioned *Gerard Wiener et al. v. Bankers Trust, et al.,* Civ. No. 11-10770 (which was pending in final discovery stages at the time of GMAC Mortgage, LLC's Chapter 11 filing), currently pending in the United States District Court for the Eastern District of Michigan, Southern Division. Cause exists under § 362(d)(1) in light of the advanced stage of the litigation, the extensive knowledge and experience of the trial court, the negligible burden on

1

the debtor involved in proceeding through trial, and ability to resolve the dispute for all parties in the case.

This motion is based on the memorandum of points and authorities filed herewith, the declaration of David J. Brown and exhibits to the memorandum of points and authorities, the records on file in this action, and such other evidence and oral argument as will be permitted by the Court. The proposed order is attached hereto.

    Dated:  July 16, 2012
    San Francisco, California

                                        Respectfully Submitted

                                        **DAVID J. BROWN**

                                        /s/ David J. Brown
                                        David J. Brown, CA Bar No. 56628
                                        1123 Ulloa Street
                                        San Francisco, CA 94127
                                        Telephone:  (415) 716-7786
                                        E-Mail:  djbrown2008@gmail.com

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF GERARD WIENER FOR RELIEF FROM AUTOMATIC STAY AS TO GMAC MORTGAGE, LLC

## Table of Contents

| Contents | Page No. |
|---|---|
| 1. Introduction | 7 |
| 2. Background | 7 |
| 3. The Current Parties to the Litigation | 11 |
| 4. History of the Litigation | 12 |
|     a. State Court Action | 12 |
|     b. Lis Pendens | 12 |
|     c. State Court Order Tolling Running of the Redemption | 12 |
|     d. Parties Added | 12 |
|     e. Removal to Federal Court | 12 |
|     f. Final Amendment of the Complaint | 13 |
|     g. Pending Motions for Summary Judgment and Dismissal | 13 |
|     h. Open Discovery Regarding GMAC | 13 |
|     i. Current Status of Michigan Case | 13 |
| 5. Relief From Stay Considerations When an Already Pending Action Is Affected by One of the Parties Filing a Bankruptcy Petition | 14 |
|     a. Bankruptcy Court Expertise Is Not Required Here | 16 |
|     b. Efficiency and Fairness Will Result from Relief from the Stay in This Matter | 16 |

**Contents**                                                                                                       **Page No.**

   c.  Gerard Wiener Agrees that Any Result in the District Court                                   17
that Affects GMAC Will Be Brought to This Court for
Appropriate Administration and Handling

   d.  No Prejudice to GMAC or Other Creditors                                                      17

6.  The Stay May Well Not Apply to the Discovery Aspect of This                                                    18
Case to the Extend The Discovery Pertains to third Parties

                                                                                                                                                                                                                         19

7.  Conclusion

# Table of Authorities

## Cases

| Case | Page |
|---|---|
| *In re Anton,* 145 B.R. 767 (Bankr.E.D.N.Y.1992) | 17 |
| *In re Burger Boys, Inc.*, 183 B.R. 682 (S.D.N.Y. 1994) | 15 |
| *In re Curtis,* 40 B.R. 795 (Bankr.D.Utah 1984) | 14, 19 |
| *In re Gatke Corp.,* 117 B.R. 406 (Bankr.N.D.Ind. (1989) | 17 |
| *In re Helen Touloumis,* 170 B.R. 825 (Bankr.S.D.N.Y.1994) | 15 |
| *In re Hillsborough Holdings Corp.*, 130 B.R. 603 (Bankr. M.D. Fla. 1991) | 18 |
| *Holtkamp v. Littlefield (In re Holtkamp),* 669 F2d 505 (7th Cir. 1982) | 17 |
| *In re Keene Corporation,* 171 B.R. 180, 183 (Bankr.S.D.N.Y.1994)) | 15 |
| *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969 (N.D. Ill. 1992) | 18 |
| *In re Project Orange Associates, LLC*, 432 B.R. 89 (Bankr. S.D.N.Y. 2010) | 14, 16 |
| *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990) | 14 |
| *In re The Royal Scot, Ltd.,* 8 CBC 239 (B.C.W.D. Mich.1976) | 17 |

## Statutes and Rules

| Statute or Rule | Page |
|---|---|
| Bankruptcy Code § 362(a) | 15 |
| Bankruptcy Code § 362(d)(1) | 14 |
| Michigan -- MCL 600.3205a-c | 8, 12 |

## Other Authorities

| Authority | Page |
|---|---|
| *Collier on Bankruptcy* ¶ 362.07(3), at 362-65 to -67 (footnotes omitted) | 14 |
| S.REP. No. 989, 95TH CONG.2D. SESS. 50, U.S.Code Cong. & Admin.News 1978, 5787, 5836. | 15 |

1. **Introduction**

This motion seeks automatic stay relief with respect to GMAC Mortgage, LLC ("GMAC"). At the time GMAC filed its Chapter 11, May 14, 2012, it was and is one of the prime defendants in a lawsuit pending in the United States District Court, Eastern District of Michigan, Case No. 11-10770-GCS-PJK. The plaintiff in that case, Gerard Wiener is seeking relief against GMAC as servicer for and agent of the Federal Home Loan Mortgage Corporation ("Freddie Mac") with respect to the wrongful foreclosure on a mortgage owned by Freddie Mac. GMAC had agreed to some last minute discovery by the Gerard Wiener of two GMAC witnesses but before that happened, GMAC filed its Chapter 11 thereafter has resisted the discovery and further participation in the case based on the automatic stay.

The Movant here strongly believes that this case falls within the category of cases where judicial efficiency, fairness to all parties in the District Court litigation, and practicality all lead to the conclusion that the stay should be lifted, subject only to an order of this Court that any final result as to GMAC will be governed by and administered appropriately by this Court with respect to GMAC.

2. **Background**

Gerard Wiener's father, Roland C. Wiener ("Roland. Wiener"), now deceased, purchased the real property located at 1946 Parmenter Boulevard, Apartment 305, Building 53, Segment 19 Royal Oak, Michigan in May, 1972. In 1997, to refinance the purchase of the property, Roland Wiener obtained a loan from Homecomings Financial Network, The loan was secured by a mortgage. In 2003 Freddie Mac purchased the loan and held it thereafter until foreclosure occurred in early 2010. GMAC was the servicer of the mortgage,

7

who collected amounts due on the mortgage, and took all actions on behalf of Freddie Mac with respect to the mortgage.

On January 23, 2009, Roland Wiener died intestate. Then, Gerard Wiener, after not being able to effectively communicate with GMAC because it refused to deal with him, opened an estate for Roland Wiener and was appointed as the estate's representative on June 30, 2009.

After Roland Wiener's death Gerard Wiener called GMAC numerous times to discuss the mortgage and provided GMAC with documentation of his father's death. In addition, Gerard Wiener's attorney timely provided GMAC Mortgage's Assumptions Department with Gerard Wieners letters of authority. Due to GMAC's consistent untimely responses or non-responses, and lack of professionalism, Gerard Wiener attempted to communicate with GMAC Mortgage some 53 times to discuss the mortgage and possible payoff or loan modification between February 4 and August 7, 2009.

Much to Gerard Wiener's disbelief, on August 13, 2009, Gerard Wiener learned that GMAC had noticed a foreclosure sale on the property securing the mortgage and had scheduled a sheriff's sale for September 8, 2009. Gerard Wiener immediately objected to the foreclosure sale and contacted Orlans Associates, PC ("Orlans") GMAC Mortgage's foreclosure attorneys. Indeed, Gerard Wiener's attorney provided Orlans with all necessary documentation including Gerard Wiener's letters of authority and Roland Wiener's death certificate. In addition, Gerard Wiener's attorney sent an overnight letter to Orlans requesting a meeting pursuant to Michigan's foreclosure statute (MCL 600.3205a-c), but that request was denied on the incredible basis that Orlans had sent an effective notice of the foreclosure to the then deceased Roland Wiener on July 10, 2009.

On August 25, 2009, Gerard Wiener received a voice mail message from a GMAC person named Patricia Scully ("Scully"), who stated that she was authorized to act on behalf of GMAC with regards to "loss mitigation." Scully offered to adjourn the pending sheriffs sale for 30 days. Through email, Gerard Wiener and Scully attempted to arrange a meeting to discuss the mortgage, but prior to the meeting, Gerard Wiener suffered a stroke. Treatment of and recovery from that medical event interfered to a degree with Gerard Wiener's ability to deal with the affairs of the estate for a period of time.

On October 8, 2009, Scully proposed a six-month "forbearance agreement" to delay the sheriff's sale while Gerard Wiener and GMAC had their meeting and tried to reach a longer term agreement regarding a loan modification. The interim agreement was conditioned on Gerard Wiener making an initial payment of $480.79. Accordingly, Gerard Wiener's attorney contacted Scully to accept the agreement requesting a minor change to the due date of the monthly payment. GMAC clearly answered the questions and accepted the arrangement.

Gerard Wiener attempted to pay GMAC the agreed-upon revised amount, but discovered that he could no longer access the account connections by which he or his sister had made prior payments. Gerard Wiener immediately informed Scully of the problem and asked her for an alternative way to make the payment. Scully responded by stating that GMAC was not willing to accept the payment because the program had been changed by Freddie Mac, and it did not have an agreement signed by Gerard Wiener. In response, Gerard Wiener told Scully that he had accepted the offer and desired to pay the agreed upon amount. Scully in these communications indicated that she was checking with Freddie Mac as to what she could or could not do with respect to the mortgage.

On November 19, 2009, Scully, in recognition of her error, emailed Gerard Wiener a plan she described as the bottom line. The plan included a reduced monthly payment for six months at 70 percent of the regular payment and also purported to give the estate time to figure out what it wanted to do. In this process, Scully also said that the plan required Gerard Wiener or someone connected with the estate to live at the property. Gerard Wiener told Scully that one of his sister's would live in the home.

Scully indicated that she needed certain financials, including a "HAMP pkg" from Gerard Wiener to consummate the agreement. Gerard Wiener then faxed the necessary paperwork to Scully the following day.

Three days later, Scully confirmed receipt of the necessary paperwork and indicated that she would have Gerard Wiener's sister complete the assumption package. Scully also advised that the foreclosure sale had been adjourned until December 29, 2009. On December 23, 2009, Gerard Wiener's sister faxed the assumption package forms to Scully.

Gerard Wiener's attorney subsequently emailed Scully and also left Scully multiple voicemail messages to remind her to adjourn the sheriff's sale while the loan workout was being reviewed and discussed. With no response from Scully regarding the documents which had been submitted or the status of the matter, Gerard Wiener contacted GMAC on January 8, 2010. Much to his dismay and disbelief, he was told that the property had been sold at a sheriff's sale on January 5, 2010.

During the redemption period, Gerard Wiener and his counsel contacted GMAC and Scully in an attempt to ascertain what had occurred. Neither GMAC, nor Scully have explained to Gerard Wiener why the last offered deal was not further negotiated and was apparently abandoned as a workout.

10

On June 22, 2010, Gerard Wiener for himself and as representative of his father's estate filed suit in Michigan State Court Naming Banker's Trust and GMAC Mortgage, LLC as defendants. *See* Exhibit B, a true and correct copy of the original complaint filed in Michigan State Court that evolved to the currently effective Third Amended Complaint now pending in the District Court in the Eastern District of Michigan. *See* Brown Declaration at ¶ 8. A lis pendens was filed and recorded on that date as well. *See* Exhibit C, a true and correct copy of the original complaint filed in Michigan State Court that evolved to the currently effective Third Amended Complaint now pending in the District Court in the Eastern District of Michigan. *See* Brown Declaration at ¶ 5.

On June 30, 2010 the Michigan State Court entered an Order tolling the statutory redemption period until further notice of the Court. Exhibit E. Brown Declaration at ¶ 6 Significantly, GMAC as the loan servicer continued to act for both itself and Freddie Mac and stipulated to the Entry of the Order. However, Freddie Mac sold the property to Jeffrey Baskin and Lauren Newman on or about September 20, 2010.

    3. **The Current Parties to the Litigation**

        a. Gerard Wiener as plaintiff for himself and as the representative of his father's estate.

        b. GMAC Mortgage, LLC ("GMAC") (the relevant debtor in this Court).

        c. Federal Home Loan Mortgage Corporation ("Freddie Mac").

        d. Jeffrey Baskin (purchaser from Freddie Mac After the foreclosure sale to Freddie Mac).

        e. Lauren Newman (purchaser from Freddie Mac after the foreclosure sale to Freddie Mac).

  f. Fifth third Mortgage-MI, LCC (Lender to Baskin and Newman with Mortgage on the Property).

4. **History of the Litigation**

  a. **State Court Action**

As noted above, Gerard Wiener filed an action in Michigan State Court on June 22, 2010 seeking damages and equitable relief for the wrongful foreclosure on the property which was the security for the loan to his father.

  b. **Lis Pendens**

Also as noted above, when the action was filed, a lis pendens was filed with the court and recorded in Oakland County Michigan, the county in which the property was located. A true and correct copy of the Lis Pendens is Exhibit C. Brown Declaration at ¶ 6.

  c. **State Court Order Tolling Running of the Redemption Period**

Michigan has a 6 month redemption following the purchase of security through foreclosure by advertisement. Michigan Revised Judicature Act, Section 600.3240 That running of that period was tolled by court order and remains tolled at this time. A true and correct copy of the Tolling Order is Exhibit E. Brown Declaration at ¶ 5.

  d. **Parties Added**

When it was learned that the property had been sold to Baskin and Newman despite the Lis Pendens and the Order tolling the running of the redemption period, Freddie Mac, Baskin, Newman and Fifth Third Mortgage-MI, LCC were added as defendants to the action.

  e. **Removal to Federal Court**

Thereafter, Freddie Mac removed the case to the United States District Court, Eastern District of Michigan where is where it now resides.

### f. Final Amendment of the Complaint

The current version of the Complaint now pending in the Michigan Federal District Court is the Third Amended Complaint, a true copy of which is Exhibit D. Brown Declaration at ¶ 8.

### g. Pending Motions for Summary Judgment and Dismissal

All of the defendants including GMAC brought Summary Judgment Motions and Motions to Dismiss. Except as to GMAC (because of the automatic stay), those motions were argued and taken under advisement by the District Court on June 18, 2010. No ruling has been made on the motions except Banker's Trust and Gerard Wiener agreed that the Court could dismiss Banker's Trust without prejudice to or any affect upon the remaining disputes among the other parties.

### h. Open Discovery Regarding GMAC

Prior to GMAC's Chapter 11 filing, it had agree that Gerard Wiener could take two depositions of GMAC persons, Ms Scully and a Person Most Knowledgeable about certain subjects. Dates for those deposition were discussed but once the Chapter 11 was filed and thereafter, GMAC has asserted the automatic stay as a bar to that discovery occurring. It has said that it will not provide the deponents unless and until the automatic stay is lifted and that it will not agree to a lifting of the stay. *See* Brown Declaration at ¶ 9.

### i. Current Status of Michigan Case

Until July 16, 2012, the Michigan case was currently set for trial in early August of this year. Gerard Wiener has pending an ex parte motion asking the Michigan Court for a

delay/continuance of the trial date to allow this motion for relief from stay to be filed, heard and ruled upon. The Court has not ruled on that motion. Yesterday, the District Court ordered the final pretrial and trial dates to be suspended pending the District Court's rulings on the pending dispositive motions. *See* Brown Declaration at ¶ 9.

5. **Relief From Stay Considerations When an Already Pending Action Is Affected by One of the Parties Filing a Bankruptcy Petition**

Bankruptcy Code Section 362(d)(1) authorizes a court to terminate, annul, modify or condition the automatic stay for "cause." The Bankruptcy Code does not define "cause" and, therefore, courts determine cause on a case-by-case basis. *See In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). However, courts should consider whether granting relief from the stay would "permit pending litigation involving the debtor to continue in a non-bankruptcy forum" because "it will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." *In re Project Orange Associates, LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) [Internal Citations omitted]

"Actions . . . which involve the rights of third parties often will be permitted to proceed in another forum. * * * [T]he liquidation of a claim may be more conveniently and speedily determined in another forum." *Collier on Bankruptcy* ¶ 362.07(3), at 362-65 to -67 (footnotes omitted).

*In re Curtis,* 40 B.R. 795 (Bankr.D.Utah 1984) catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum. These are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding

14

involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *See id.* at 799-800.

The legislative history of Bankruptcy Code § 362(a) supports the notion that the drafters envisioned lifting the stay to allow other proceedings to continue, where appropriate:

> It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S.REP. No. 989, 95TH CONG.2D. SESS. 50, U.S.Code Cong. & Admin.News 1978, 5787, 5836.

Only those factors relevant to a particular case need be considered, and a court need not assign them equal weight. *In re Burger Boys, Inc.*, 183 B.R. 682, 688 (S.D.N.Y. 1994) (*citing In re Helen Touloumis,* 170 B.R. 825, 828 (Bankr.S.D.N.Y.1994).

As stated in *In re Keene Corporation,* 171 B.R. 180, 183 (Bankr.S.D.N.Y.1994)):

15

>In *Sonnax,* however, the Court adopted twelve factors, [footnote omitted] enunciated in *In re Curtis,* 40 B.R. 795, 799-800 (Bankr.D.Utah 1984), which are weighed to determine whether to allow a creditor to continue litigation in another forum. Only those factors relevant to a particular case need be considered, *Sonnax Industries,* 907 F.2d at 1285, and the Court need not assign them equal weight. *In re Anton,* 145 B.R. 767, 770 (Bankr.E.D.N.Y.1992). When applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate. *In re M.J. & K. Co.,* 161 B.R. at 590 (citing *In re Mego International, Inc.,* 28 B.R. 324, 326 (Bankr.S.D.N.Y.1983)).

### a. Bankruptcy Court Expertise Is Not Required Here

Mr. Wiener's dispute with the foreclosure sale and subsequent sale of the property by Freddie Mac (the purchaser at the foreclosure) sale concerns Michigan foreclosure and redemption law; thus, the expertise of the bankruptcy court is not required. In fact, Judge Steeh, the Judge before whom the case is pending, was a Michigan State Court Judge for a number of years and has several wrongful foreclosure cases as a Federal District Court Jurist. *See* Brown Declaration at ¶ 11.

The claims in the District Court action concern Michigan loan workout law, foreclosure law and redemption law, as well as Michigan *Lis Pendens* and State Court Order matters. These claims are better adjudicated by a court in which the claims are presently being adjudicated, a court in Michigan. *See, e.g., See In re Project Orange Associates, LLC*, 432 B.R.at 112.

### b. Efficiency and Fairness Will Result from Relief from the Stay in This Matter

Providing relief from the stay would promote judicial economy and the expeditious and economical resolution of the litigation. The relief in the Federal Michigan Court would result in a complete resolution of the issues among all the parties, where resolution of the litigation in this Court would leave the issues among Mr. Wiener and the other defendants unresolved. Also,

resolution of all the issues in the Michigan Federal Court would avoid the possibility of inconsistent results on certain issues. The parties are more ready to litigate the issue before the Michigan Federal Court where the case is close to trial as opposed to this Court where Mr. Wiener's claim has not even been filed. Finally, the balance of hardships, weighs heavily in favor of relief from the stay for Mr. Wiener and other parties to the District Court lawsuit. *See, e.g., In re Gatke Corp.,* 117 B.R. 406 (Bankr.N.D.Ind. (1989); and *Holtkamp v. Littlefield (In re Holtkamp),* 669 F2d 505 (7th Cir. 1982).

    c. **Gerard Wiener Agrees that Any Result in the District Court that Affects GMAC Will Be Brought to This Court for Appropriate Administration and Handling**

This Court is empowered to prevent any final action from being taken without further order of the Court. *See In re The Royal Scot, Ltd.,* 8 CBC 239, 246 (B.C.W.D. Mich.1976). This Court may order that no final action regarding the disposition of the Michigan case as it affect GMAC Mortgage may be taken without further order of the Court.

    d. **No Prejudice to GMAC or Other Creditors**

Lifting the automatic stay in this matter brings no real prejudice to GMAC. It will have to litigate the issues either in the District Court Case or in this Court. Since much has been done already in the District Court case, and litigating here in a claims context would be starting anew, with some costs already paid having to be paid again, no real prejudice will occur to GMAC. "The cost of defending litigation, by itself, has not been regarded as constituting 'great prejudice,' precluding relief from the automatic stay." *In re Anton,* 145 B.R. at 770.

Other creditors are not prejudiced either. The estate will incur the litigation costs either way, and if GMAC were to prevail, the creditors might even benefit to some small degree.

**6. The Stay May Well Not Apply to the Discovery Aspect of This Case to the Extent The Discovery Pertains to Third Parties**

17

There is a body of authority that suggests the automatic stay does not apply to the extent that Gerard Wiener wants the GMAC depositions for Use Against Freddie Mac and Others. *See, e.g., In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 977 (N.D. Ill. 1992) (the debtor and its employees are not protected by the automatic stay with respect to discovery relating to claims against non-debtor co-defendants and the debtor "has no ground to interfere with or disrupt discovery that is calculated to lead to evidence admissible against" his solvent co-defendant); *In re Hillsborough Holdings Corp.*, 130 B.R. 603, 605 (Bankr. M.D. Fla. 1991) (the automatic stay did not prevent discovery aimed at debtor as long as the discovery pertained to claims and defenses of a non-debtor party).

Since Freddie Mac is a codefendant here on claims that relate to whether post-foreclosure actions by GMAC were in some fashion chargeable to Freddie Mac, e.g., GMAC agreeing to the State Court Order tolling the redemption period, discovery of GMAC and its relationship with and actions for Freddie Mac, the owner of the loan and mortgage at issue, are fair game. This consideration on top of the valid reasons to lift the stay as to GMAC and to allow the current District Court case to proceed against GMAC, adds to ruling in Movant's favor here.[1]

### 7. Conclusion

The Michigan District Court Case was initially brought in Michigan State Court on June 22, 2010. It was removed to the Michigan Federal District Court February 24, 2011, and has been there since then. It is in the final pretrial stages with certain dispositive motions by the defendants pending after being argued and taken under advisement by the Court. Fairness, economy of judicial and economic resources, and the District Court's familiarity with Michigan

---

[1] Interestingly enough Docket Number 810 by the Federal Housing Finance Agency acting as conservator for the Federal Home Loan Mortgage Corporation makes this "automatic stay not applicable" argument.

18

mortgage, foreclosure and related law (both as a State Court judge and then as a District court judge) all make relief from the automatic stay logical and appropriate under these circumstances.

The relevant *Curtis* case factors seem to cut strongly in Movant's favor.  Hence the Movant respectfully requests and urges this Court to grant his motion.

Dated:  July 16, 2012
      San Francisco, California

          Respectfully Submitted

          **DAVID J. BROWN**

/s/ David J. Brown_____
David J. Brown, CA Bar No. 56628
1135 Ulloa Street
San Francisco, CA 94127
Telephone:  (415) 716-7786
E-Mail:  djbrown2008@gmail.com