Exhibit B

COMPLAINT FILED BY GERARD WIENER IN THE OAKLAND COUNTY
CIRCUIT COURT AS PLAINTIFF JUNE 22, 2010 AGAINST BANKERS
TRUST COMPANY AND GMAC MORTGAGE, LLC

STATE OF MICHIGAN
IN THE OAKLAND COUNTY CIRCUIT COURT

GERARD WIENER, individually, and as
 Personal Representative of the
ESTATE OF ROLAND C. WIENER,

        Plaintiff,

-vs-                                                        CASE NO. 10-

                                                            HON.
BANKERS TRUST COMPANY,
 a foreign company;

GMAC MORTGAGE, LLC.,
 a Delaware Corporation,

        Defendants.
_____/

THE LAW FIRM OF WALTER POOKRUM
By: WALTER POOKRUM   P 26058
    Attorney for Plaintiff
    645 Griswold Street, Suite 1862
    Detroit, MI  48226
    313 .963-7300
_____/

OAKLAND
COUNTY    10-111283-CH

JUDGE WENDY L. POTTS
WIENER,GERARD  v  BANKERS TRUS
         CH

        There is no other pending or resolved action arising out
        of the same transaction or occurrences in this Complaint.

        COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

    PLAINTIFF GERARD WIENER, by his attorney Walter Pookrum, states as follows:

                Parties, Jurisdiction, and Venue

    1. Plaintiff Gerard Wiener is an individual person, the son of the late Roland C. Wiener, and

the Personal Representative of the Estate of Roland C. Wiener (the Estate).

    2. The real property which is subject matter of this litigation and an asset of the estate is

located at 1946 Parmenter Blvd., Bldg. 53, Apt 305, Royal Oak, Oakland County, Michigan 48073

(the property).  Among other things, this lawsuit involves the determination of interests in this property.

3.  On information and belief, Defendant Bankers Trust Company (Bankers Trust ) is a foreign corporation that engages in, among other things, purchasing mortgages from other entities, which mortgages secured loans on real properties in Michigan, including the subject property, and is therefore amenable to the court's general personal jurisdiction pursuant to MCL 600.711.

4.  Defendant GMAC Mortgage, LLC. (GMAC), is a Delaware corporation that engages in continuous, systematic business in Michigan, and is therefore amenable to the court's general personal jurisdiction under MCL 600.711.

5.  Venue is appropriate in this court because the property that is a subject matter of this lawsuit is located in Royal Oak, Oakland County, Michigan; thus the Estate was opened in Oakland County Probate Court; and because some of the acts giving rise to this lawsuit occurred in Oakland County, Michigan.

## Common Allegations

6.  Plaintiff realleges and incorporates by reference the allegations in paragraph one through five.

7.  On February 12, 1997, the deceased Roland Wiener purchased the subject real property located at 1946 Parmenter Blvd., Apt. 305, Building 53, Segment 19, Royal Oak, Michigan 48073, more particularly described as:

Apartment 305, Building 53, of Coventry Parkhomes-Segment 19 Condominium, according to the Master Deed recorded in Liber 5753, page 52, last amended by amendment recorded in Liber 14227, Page 725, Oakland County Records and designated as Oakland County Condominium Subdivision Plan No. 240, and any amendments thereto, together with an undivided interest in the general common elements and limited common elements as set forth in the above-described Master Deed

2

in Act 59 or the Public Acts of 1978, as amended.  Parcel Identification No. 63-72-20-32-476-086.

8.  On February 12. 1997, to finance his purchase of the property. Roland Wiener borrowed

money from Homecomings Financial Network.  The loan was secured by a mortgage, now held by

defendant Bankers Trust as Trustee by assignment.

9.  On information and belief. as of February 2010, the amount due and owing on the

mortgage was approximately $69,000.00.

10.  On information and belief, defendant GMAC does not own or hold the mortgage, but

is the servicer of the mortgage who collects amounts due on behalf of the owner or holder of the

mortgage.

11.  On January 23, 2009, Roland Wiener died intestate.  On June 30. 2009, Gerard Wiener

opened Roland Wiener's estate and became its personal representative.  (Oakland County Probate

Court case number 2009-324047-DE.)

12.  In addition to Gerard Wiener, there are two other heirs of Roland Wieners' estate: Alice

Wiener and Charlotte Wiener, the daughters of Roland Wiener and sisters of Plaintiff Gerard

Wiener.

13.  In November 2008, some two months prior to his father's death, Plaintiff contacted

GMAC as attorney-in-fact for Roland Wiener, seeking to refinance the mortgage.

14.  Subsequent to Roland Wiener's death in January 2009, Plaintiff had dealings/contacts

with GMAC as follows:

15.  On or about February 4, 2009, Plaintiff called GMAC to discuss the mortgage.  He was

kept on hold for 46 minutes, then transferred to the Assumptions Department, which told him they

could not speak with him unless they had a probate court letter of authority.  He advised them that

3

an estate had not been opened, but that he would send the death certificate. He also provided all of his contact information and requested that they add it to the file. He continued to make the mortgage payments.

16. On February 20 and 27 and March 6 and 13. 2009, Plaintiff called GMAC to discuss the mortgage and whether there was mortgage life insurance. He was either disconnected, improperly routed, or informed that they had not received the death certificate and, therefore, could not speak with him. Plaintiff offered them his attorney's name and contact information.

17. On March 3, 2009, Plaintiff sent a letter to Defendant GMAC's Waterloo, Iowa, Assumptions Department explaining the status of matters.

18. On March 27, 2009, Plaintiff called GMAC and informed them that the estate had difficulty making the mortgage payments. He was advised that they still had not received the death certificate.

19. On April 15, 2009, Plaintiff called GMAC again. He was on hold for 42-plus minutes and disconnected before the Assumptions Department refused to deal with him, except for recommending that the estate quit-claim the property to them. They advised him that they would speak with him when they received his letters of authority. He requested to speak with a supervisor or someone else in authority. They refused.

20. On April 29 and May 6, 2009, Plaintiff called GMAC again. He again provided his contact information.

21. On June 30, 2009, Plaintiff called GMAC again to inform them that the estate had been opened. They instructed him to fax his letters of authority and the death certificate to the Assumptions Department. He was told that it would take about a week. He gave them the probate

4

case number.

22. On July 6, 2009, he called GMAC to say he would send the documents by mail, and that GMAC could verify the information online. They said they did not confirm online and advised that the best course was to fax them the documents.

23. On July 7, 2009, Plaintiff called GMAC again. They would not speak with him without having his letters of authority. Plaintiff's attorney immediately faxed plaintiff's letters of authority to the GMAC Assumptions Department.

24. On July 9, 2009, Plaintiff called GMAC to confirm receipt with the Assumptions Department. They had not received them. They transferred him to the Collections Department, who said it looked like they had something from him, but that they needed to "access the file." He was then transferred back to Assumptions, which assured him they had received nothing. He was told that it could take "up to a couple weeks" for them to receive the fax.

25. On July 16, 2009, Plaintiff again called GMAC. He was told that they still had not received the documents. They advised him to wait two more weeks to "give it time to get into their system" and, in response to his inquiry, said it would not do any good to speak with anyone else there (such as a supervisor). Plaintiff again provided his contact information.

26. On July 28, 2009, Plaintiff called GMAC again, informing them that he was able to personally hand-deliver the documents in the Detroit area if they still had not received them. They had not received the documents and requested that he re-fax them.

27. On July 30, 2009, Plaintiff's attorney re-faxed Plaintiff's letters of authority and the death certificate to GMAC.

28. From February 4 through August 7, 2009, as documented by Paypal transactions, Skype

5

and AT&T telephone records, e-mail records and his personal notes. Gerard Wiener attempted to communicate with some GMAC 53 times to discuss the mortgage and possible payoff or loan modification options, and the cessation of monthly payments for costly "add-ons" which plaintiff deemed to be worthless.

29. On August 7, 2009, Plaintiff called GMAC again. He was informed that GMAC had not received anything, and to wait 30-45 days. On the same date, Plaintiff's attorney again re-faxed the documents to GMAC. On the same date, Plaintiff e-mailed GMAC detailing his frustration in dealing with them, and requesting assistance.

30. On August 11, 2009, Plaintiff received an e-mail response from GMAC, apologizing for his "phone experience" and advising him that his information had not been updated in their system. They wrote that it was "taking about 30 days for the Assumptions Department to process incoming mail and/or faxes." Plaintiff called them, saying it had been much more than 30 days since he first sent the documents. He was advised to continue to wait. He then sent another e-mail to GMAC and was sent the same form response (to wait 30 days).

31. On August 13, 2009, Plaintiff learned that Defendant GMAC had foreclosed on the mortgage, and that the property was scheduled for a September 8, 2009 sheriff's sale. He called Orlans Associates, PC (Orlans), GMAC's foreclosure attorneys, objecting to the foreclosure and sale. Orlans said they would let GMAC know, and for Plaintiff to have his attorney send the letters of authority and death certificate to Orlans. On August 14, 2009, Plaintiff's attorney faxed both documents to Orlans.

32. On August 17, 2009, Plaintiff's attorney sent an overnight letter to Orlans requesting a meeting under the July 5, 2009 Michigan foreclosure statute (MCL 600.3205a-c). His attorney was

6

informed that the request was too late because Orlans had sent a notice to Roland Wiener on July 10, 2009 (three days after plaintiff's attorney first faxed plaintiff's letters of authority to GMAC), and that the 14 days provided for by the statute for such a request had passed.

33. In an August 18. 2009 telephone conference with Orlans, plaintiff's attorney learned that the first-class letter/notice to Roland Wiener regarding foreclosure had been returned to Orlans on July 30, 2009 marked, "Deceased—Unable To Forward," and that the same letter, sent by certified mail, had been returned, unsigned for. on August 7, 2009.

34. On August 21, 2009. Plaintiff's attorney spoke with the GMAC Assumptions Department. They confirmed receipt of plaintiff's letters of authority and Roland Wiener's death certificate. On the same date, Plaintiff himself spoke with GMAC. He requested a meeting with GMAC as provided for by the new statute. GMAC said it was up to Orlans at that point. On the same date, Plaintiff's attorney called Orlans and left two voice mail messages requesting a meeting with GMAC.

35. On August 24, 2009, Plaintiff's attorney sent Orlans Associates a letter by overnight mail and telefax, requesting adjournment of the foreclosure sale while plaintiff explored a loan modification with GMAC. The letter detailed Plaintiff's six months of contacts and attempted contacts with GMAC since approximately February 4, 2009, and contended that GMAC knew or had reason to know that Roland Wiener had died, and that neither the deceased Mr. Wiener (obviously) nor his estate had been provided with the required statutory notice of GMAC's intent to foreclose.

36. On information and belief, HOPE/KEYCHAIN ALLIANCE, Detroit Hope Partnership (HOPE), is a program created and operated by Defendant GMAC to assist mortgagors in saving their homes from foreclosure.

7

37.    Patricia Scully (Scully) was at all times pertinent to this lawsuit the Community Relations Manager for HOPE, acting for, on behalf, and as the agent of Defendant GMAC.

38.  On August 25, 2009, Plaintiff's attorney received a voice mail message from "Patricia Scully from GMAC. I am the community relations person in loss mitigation right here in St. Clair Shores, Michigan, and I'm the person you need to speak with."  She apologized for "all this brouhaha" over the last several months.  During a phone conversation with Plaintiff's attorney the same day, she said that she had authority to act on behalf of GMAC regarding "loss mitigation." She said she would adjourn the sheriff's sale for 30 days. She e-mailed Plaintiff's attorney a copy of her e-mail to Orlans requesting that the September 8, 2009 sheriff's sale be adjourned to October 13, 2009 "to allow more time for loss mitt." (The sale was actually adjourned to October 20.)

39. Patricia Scully's e-mail information identified her as the Community Relations Manager, GMAC ResCap, Homecomings Financial/Keychain Alliance, Detroit HOPE Partnership.

40.  Also on August 25, Plaintiff's attorney received a call from "Ms. Ross" of GMAC. She reported that GMAC had received the death certificate but needed a loss mitigation plan in order to adjourn the sheriff's sale. I informed her that I had spoken with Scully, who had already adjourned the sale. She said she would defer to Scully, then, and would call her. She said that she, Ross, was merely calling because GMAC Waterloo (Iowa) had requested that she do so.

41.  On September 10, 2009, following telephone conversations with her, Plaintiff e-mailed Scully requesting to meet with her. On September 15, Scully replied regarding when within the next two weeks would be a good time for plaintiff to meet.

42.  On or about September 28, 2009, Plaintiff's attorney learned that Plaintiff had suffered a stroke. On September 30 , Plaintiff's attorney therefore called Scully and left voice mail messages

8

on her office and mobile phones requesting the full 90 days provided for by the statute to work out a modification of the mortgage loan. Plaintiff's attorney called Scully again on October 5 and left messages. He also sent Scully an e-mail message indicating, among other things, that a successor personal representative might have to be appointed. requiring additional time to continue the mortgage modification discussions with her.

43. On October 5, 2009, plaintiff's attorney received an e-mail from Scully, saying she had spoken with Plaintiff's sister regarding Plaintiff's condition. and that she, Scully, would adjourn the sale.

44. On October 8, 2009, Scully sent a proposed six-month "forbearance agreement" to forestall the sheriff's sale while Plaintiff and GMAC came to an agreement regarding a modification. The agreement provided for a monthly payment of one-half the usual amount. beginning November 10, 2009.

45. On October 14, 2009, Plaintiff's attorney e-mailed Scully that the estate was inclined to enter the forbearance agreement, with a requested change of the payment-due date from the 10th to the 15th; that Plaintiff would sign the agreement; and to please advise by what means Plaintiff should submit the agreement. On the same date, Scully adjourned the sheriff's sale from October 20 to November 17, 2009 "to allow more time for loss mitt options."

46. On November 13 and November 16, 2009, though Scully had not yet responded to his requested due-date change in the forbearance agreement or to say how the agreement should be submitted, plaintiff attempted to pay GMAC the agreed-upon revised amount by the same method he had used to make the regular mortgage payments. He could no longer access the account. He e-mailed Scully to that effect.

9

47. On November 16, 2009 Scully e-mailed plaintiff in response that he probably could not access the account because she had not received confirmation that plaintiff would sign the special forbearance agreement, and that the 50 percent payment amount was no longer an option. She wrote that she needed "all the financials/HAMP pkg." She questioned her ability to adjourn the November 17 sale on such short notice, but she e-mailed the application forms Plaintiff needed to submit.

48. On November 17, 2009, Scully e-mailed plaintiff's attorney that she had adjourned the sale for one week, or until November 24. She wrote that she "needed the HAMP pkg completed so I can submit it for loss mitigations options."

50. On November 19, 2009, Scully e-mailed plaintiff offering a plan she described as "the bottom line": The payment would reduced for six months to 70 percent of the regular amount, "to give the estate time to figure out what they want to do." She needed the paperwork submitted by the next day to request the "Special Forbearance." Otherwise, she would assume that Plaintiff had decided to let the property "go to FC sale on 11/24."

51. On November 20, 2009, Plaintiff faxed the paperwork to Scully. On November 23, 2009, Scully e-mailed Plaintiff and his attorney that she had "received the fax you sent over last week," and that she would have Plaintiff's sister "complete the assumption pkg" that had been sent to Plaintiff in September 2009. She also advised that *the FC [foreclosure] sale has been adjourned to 12/29/2009*.

52. On December 23, 2009, Plaintiff e-mailed Scully that his sister had completed the forms, which were faxed to Scully that date. Plaintiff reminded Scully that the sheriff's sale was scheduled for December 29.

53. On December 28, 2009, Plaintiff's attorney e-mailed Scully, reminding her to adjourn

10

the sheriff's sale while the loan workout was underway. His attorney also called Scully on her

mobile phone and left a voice mail message. Plaintiff also called and e-mailed her.

54. On December 29, 2009, Plaintiff's attorney called Scully again and left a message.

Scully never responded in any way to the application/documents which were submitted, or to the

telephone and e-mail messages which Plaintiff and his attorney left for her.

55. With Scully still having not responded, on January 8, 2010, plaintiff contacted defendant

GMAC. He learned that the property had been sold at sheriff's sale on January 5, 2010. The

property was purchased by the Federal Home Loan Mortgage Corporation for $65,000.00.

56. The redemption period under the sheriff's sale expires on July 5, 2010.

57. Neither Defendant GMAC nor Scully have ever said, in writing or otherwise, why they

abandoned the mortgage workout effort which was underway with the estate and caused the property

to be sold at the sheriff's sale.

## COUNT I: VIOLATION OF MCL 600.3205a-c

58. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through

57.

59. Pursuant to MCL 600.3205a(1), Defendants were required to serve a written notice on

Plaintiff that contained the following information, in part:

      d. ...   [T]he borrower may request a meeting with the designated agent to attempt

                  to work out  a modification of the mortgage loan to avoid foreclosure;

      e.   That if the borrower requests the meeting, foreclosure proceedings will not

11

be commenced until 90 days after the notice is sent; . . .

g.      If the borrower meets the criteria for a modification under 600.3205c(1), but

borrower is not offered a modification, the foreclosure must proceed before

a judge instead of by advertisement.

60. On or about August 18, 2009, Plaintiff's attorney obtained from the Orlans law firm the

notice which had been sent to Roland Wiener on July 10.

61. Thereafter, as set forth above, Defendant offered and Plaintiff accepted the offer to

submit an application to forestall further foreclosure of the mortgage and the sheriff's sale of the

property "to give the estate time to figure out what it wanted to do."

62. While the forbearance arrangement and Plaintiff's sister's assumption application were

pending, Defendant GMAC abandoned consideration and review of Plaintiff's application, and

despite its representations to the contrary, continued with the foreclosure proceedings, including the

sheriff's sale.

63. By abandoning the workout process mid-stream, Defendant GMAC thwarted Plaintiff

estate's right to have Defendant GMAC determine whether the estate met the criteria for a

modification under MCL 600.3205c(1)(a).

64. MCL 600.3205c(1)(b) required Defendant GMAC to modify the terms of the mortgage

using one or more of the features provided for therein. Plaintiff submits that, applying the features,

it likely would have been eligible for a loan modification.

65. If Plaintiff met the criteria but was not offered a modification, the foreclosure would

have to proceed before a judge, pursuant to MCL 600.3101 *et seq.*, rather than by advertisement.

66. Although Plaintiff may be eligible for a loan modification, Defendant GMAC is

12

foreclosing on the subject mortgage by advertisement.

67. Defendants GMAC and Bankers Trust are in violation of MCL 600.3205a-c in ways including, but not necessarily limited to, the following:

    a. By failing to provide Plaintiff with a copy of the calculations made to determine its eligibility for a loan modification, in violation of MCL 600.3205c(5)(a);

    b. By failing to provide Plaintiff with a copy of the program, process, or guidelines under which Defendant GMAC would make its determination, in violation of MCL 600.3205c(5)(b); and

    c. By failing to proceed to foreclose by judicial action, and, instead, proceeding by advertisement, in violation of MCL 600.3405c(6).

WHEREFORE, Plaintiff Gerard Wiener, individually and as Personal Representative of the Estate of Roland C. Wiener, respectfully requests that this Court enter an order:

A) Staying and holding in abeyance the redemption period on the sheriff's sale of the subject property;

B) Rescinding, cancelling, voiding and/or setting aside the sheriff's sale of the subject property;

C) Restraining Defendants GMAC and Bankers Trust, and permanently enjoining Defendants from conveying, selling, or otherwise encumbering the property, and from commencing any eviction or summary proceedings against Plaintiff;

D) Enjoining Defendants GMAC and Bankers Trust, and its agents or attorneys, from foreclosing by advertisement on the subject mortgage; and ordering that Defendants foreclose, if at all, by judicial action under MCL 600.3101 *et seq.*;

13

E) That Defendants GMAC and Bankers Trust and their agents provide Plaintiff with a copy of the calculations they made to determine Plaintiff's eligibility for a loan modification;

F) That Defendants GMAC and BANKERS and their agents provide Plaintiff with a copy of the program, process, or guidelines under which they make their loan modification calculations;

G) Any other relief this Court deems just and necessary in the interests of justice.

## COUNT II: NEGLIGENCE

68. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 67.

69. Defendants GMAC and Bankers Trust owed Plaintiff a duty to exercise the appropriate standard of care, to follow through with the special forbearance and other proceedings it initiated with Plaintiff regarding modification of the mortgage at issue, to determine whether Plaintiff was eligible for a loan modification using the process and calculations set forth in MCL 600.3205c(1)(a) and (b), and otherwise to follow the law as set forth in MCL 600.3205a-c.

70. Defendants GMAC and Bankers Trust breached their duty in several ways including, but not limited to:

a. By abandoning the loan modification process in which Plaintiff was engaged without justification and without notice to Plaintiff;

b. By failing to adjourn the December 29, 2009 sheriff's sale to a date which would accommodate the forbearance agreed to and relied upon by Plaintiff;

c. By failing to determine Plaintiff's eligibility for a loan modification; and/or

d. By failing to provide Plaintiff with a copy of the calculations Defendants GMAC and

14

Bankers Trust made to determine Plaintiff's eligibility for a loan modification; and/or

e. By failing to provide Plaintiff with a copy of the program, process, or guidelines under which Defendants GMAC and Bankers Trust make their loan modification calculations;

71. As an actual, direct and proximate result of Defendant GMAC's and Bankers Trust's breach of their duties, Plaintiff was injured by, among other things, having suffered significant mental and emotional injuries and substantial economic loss, having expended substantial resources for maintenance, improvement and other expenses relative to the subject property, and economic losses due to the incidental and consequential costs, including legal fees, of Defendants' negligence and outrageous, unjustifiable conduct. Plaintiff is therefore entitled to damages.

WHEREFORE, Plaintiff Gerard Wiener, individually and as Personal Representative of the Estate of Roland Wiener, respectfully requests this honorable court to enter an award of actual damages in excess of $25,000, as well as exemplary damages in Plaintiff's favor and against Defendants, and award such other relief as this court deems necessary in the interests of justice.

## COUNT III: BREACH OF CONTRACT

72. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 71.

73. On or about November 20, 2009, Plaintiff entered a forbearance agreement with Defendants GMAC and Bankers Trust, whereby the mortgage loan payment would be reduced for a period of six months to allow Plaintiff time to do a loan modification agreement or otherwise to save the property from foreclosure and sheriff's sale.

74. On or about November 20, 2009, Plaintiff submitted the paperwork necessary for the

15

agreement and for having his sister, an heir of Roland Wiener and an interested party of the estate, considered to assume the mortgage.

75. Defendants GMAC and Bankers Trust breached the agreement by not reducing the mortgage loan payment as agreed, by not providing Plaintiff time to be considered for a loan modification agreement or for Plaintiff's sister to assume the mortgage, as agreed, and by not holding the foreclosure and sheriff's sale in abeyance, as agreed.

76. As a direct and proximate result of Defendants GMAC and Bankers Trust's breach of the agreement, Plaintiff has suffered and continues to suffer economic losses in excess of $25,000.00 due to the incidental and consequential costs, including the accruing costs of this lawsuit, of Defendants' breach of the agreement.

WHEREFORE, Plaintiff Gerard Wiener, individually and as Personal Representative of the Estate of Roland Wiener, respectfully requests this honorable court to enter an award of actual dam-damages in excess of $25,000, as well as exemplary damages in Plaintiff's favor and against Defendants, and award such other relief as this court deems necessary in the interests of justice.


## COUNT IV: AGENCY/RESPONDEAT SUPERIOR

77. Plaintiff incorporates all previous allegations and relies upon them as though fully stated herein.

78. At all relevant times, Patricia Scully held herself out as an employee of Defendant GMAC., and identified herself as the person Plaintiff needed to speak with regarding mortgage loan loss mitigation.

79. At all relevant times, Scully was acting with actual, implied or apparent authority and

16

within the scope of her employment with Defendant GMAC.

80. At all relevant times, Defendant GMAC was acting with actual, implied or apparent authority and within the scope of its responsibilities as the agent and servicer of the mortgage loan owned by Defendant Bankers Trust.

81. Accordingly, Defendant GMAC aand Bankers Trust are liable for Scully's tortious acts as set forth in this Complaint, pursuant to doctrines of agency and respondeat superior.

WHEREFORE, Plaintiff Gerard Wiener, individually and as Personal Representative of the Estate of Roland Wiener, respectfully requests this honorable court to enter an award of actual dam-damages against Defendants in excess of $25,000, and award such other relief as this court deems necessary in the interests of justice.


## COUNT V: TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION

82. Plaintiff incorporates all previous allegations and relies upon them as though fully stated herein.

83. Plaintiff was eligible for a loan modification using the process and calculations set forth in MCL 600.3205c(1)(a) and (b) and/or was in the process of being considered by Defendants GMAC and Bankers Trust for such loan modification or other relief, and/or had not been ruled ineligible by Defendants.

84. Despite that Plaintiff was eligible for a loan modification, was in the process of being considered for same, or had not been ruled ineligible for such modification, Defendants GMAC and Bankers Trust are foreclosing by advertisement rather than by judicial action, in violation of MCL

17

600.3101 *et seq.*

85. Defendants GMAC and Bankers Trust have violated MCL 600.3205c(5)(a) by failing to make calculations and/or to provide Plaintiff with a copy of the calculations they made to determine Plaintiff's eligibility for a loan modification.

86. Defendants GMAC and Bankers Trust have violated MCL 600.3205c(5)(b) by failing to make a determination and/or to provide Plaintiff with a copy of the program, process or guidelines under which they made their loan modification determination regarding Plaintiff's application and eligibility for a loan modification.

87. Based upon the foregoing facts, Plaintiff is entitled to injunctive relief that, among other things, enjoins Defendants from continuing to foreclose on the mortgage by advertisement, that sets aside the sheriff's sale, and that stays the running of the redemption period that expires on July 5, 2010.

88. In addition to the statutory violations set forth above, Plaintiff has stated valid causes of action against Defendants. Unless the Court stays the running of the redemption period, Plaintiff will suffer an irreparable injury in that he will be wrongfully dispossessed of his deceased's father's home and the property of the estate, and of his rights under MCL 600.3205a-c.

89. Defendants will not be unfairly prejudiced by the issuance of a temporary restraining order because their right to foreclosure, if any, is still preserved.

90. Plaintiff is likely to prevail on the merits of the underlying causes of action.

91. In the absence of injunctive relief, Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff Gerard Wiener respectfully requests this Court to enter an order as follows:

18

A) Staying and holding in abeyance the redemption period on the sheriff's sale of the subject property;

B) Rescinding, cancelling, voiding and/or setting aside the sheriff's sale of the subject property;

C) Restraining Defendants GMAC and Bankers Trust, and permanently enjoining Defendants from conveying, selling, or otherwise encumbering the property, and from commencing any eviction or summary proceedings against Plaintiff;

D) Enjoining Defendants GMAC and Bankers Trust, and its agents or attorneys, from foreclosing by advertisement on the subject mortgage; and ordering that Defendants foreclose, if at all, by judicial action under MCL 600.3101 *et seq.*;

E) That Defendants GMAC and Bankers Trust and their agents provide Plaintiff with a copy of the calculations they made to determine Plaintiff's eligibility for a loan modification;

F) That Defendants GMAC and BANKERS and their agents provide Plaintiff with a copy of the program, process, or guidelines under which they make their loan modification calculations;

G) Any other relief this Court deems just and necessary in the interests of justice.

Respectfully submitted,

THE LAW FIRM OF WALTER POOKRUM

By: _____
Walter Pookrum        P 26058
Attorney for Plaintiff
645 Griswold St., Suite 1862
Detroit, MI  48226
313   963-7300

June 22, 2010

19