1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, ET AL.,


                Debtors.


- - - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                July 13, 2012

                10:05 AM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

2

1

2  (Doc# 90, 47) Status Conference RE: Motion Authorizing The

3  Debtors To Continue To Perform Under The Ally Bank Servicing

4  Agreements In The Ordinary Course Of Business.

5

6  (CC: Doc no. 509) Debtors' Application Under Section 327(e) of

7  the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule

8  2014-1 for Authorization to Employ and Retain Dorsey & Whitney

9  LLP as Special Securitization and Investigatory Counsel to the

10  Debtors, Nunc Pro Tunc to May 14, 2012 filed by Larren M.

11  Nashelsky on behalf of Residential Capital, LLC..

12

13  (CC: Doc no. 512) Debtors' Application for Order Authorizing

14  the Employment and Retention of Rubenstein Associates, Inc. as

15  Corporate Communications Consultant to the Debtors Nunc Pro

16  Tunc to the Petition Date.

17

18  (CC: Doc no. 511) Debtors' Application for an Order Authorizing

19  Employment and Retention of Mercer (US) Inc. as Compensation

20  Consultant to the Debtors Nunc Pro Tunc to the Petition Date

21  filed by Larren M. Nashelsky on behalf of Residential Capital,

22  LLC.

23

24

25

3

1

2   (CC: Doc no. 508) Debtors' Application Under Section 327(e) of

3   the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule

4   2014-1 for Authorization to Employ and Retain Carpenter Lipps &

5   Leland LLP as Special Litigation Counsel to the Debtors, Nunc

6   Pro Tunc to May 14, 2012 filed by Larren M. Nashelsky on behalf

7   of Residential Capital, LLC.

8

9   (CC: Doc no. 510) Debtors' Application Under Section 327(e) of

10  the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule

11  2014-1 for Authorization to Employ and Retain Orrick,

12  Herrington & Sutcliffe LLP as Special Securitization

13  Transactional and Litigation Counsel to the Debtors, Nunc Pro

14  Tunc to May 14, 2012 filed by Larren M. Nashelsky on behalf of

15  Residential Capital, LLC.

16

17

18  (CC: Doc no. 506) Debtors' Application Pursuant to Section

19  327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016

20  and Local Rules 2014-1 and 2016-1, for Entry of an Order

21  Authorizing the Retention and Employment of Morrison & Foerster

22  LLP as Bankruptcy Counsel to the Debtors Nunc Pro Tunc to the

23  Petition Date filed by Larren M. Nashelsky on behalf of

24  Residential Capital, LLC.

25

4

1   (CC: Doc no. 528) Application Pursuant to Sections 328 and 1103

2   of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure

3   2014 for an Order to Retain and Employ Kramer Levin Naftalis &

4   Frankel LLP as Counsel to the Official Committee of Unsecured

5   Creditors of the Debtors, Nunc Pro Tunc, to May 16, 2012 filed

6   by Kenneth H. Eckstein on behalf of Official Committee Of

7   Unsecured Creditors.

8

9   (Doc no. 527) Debtors' Application for Order Under Bankruptcy

10  Code Sections 327(a) and 328(a), Bankruptcy Rule 2014(a) and

11  Local Rule 2014-1 Authorizing the Employment and Retention of

12  Curtis, Mallet-Prevost, Colt & Mosle LLP as Conflicts Counsel

13  Nunc Pro Tunc to the Petition Date filed by Larren M. Nashelsky

14  on behalf of Residential Capital, LLC.

15

16  (CC: Doc# 513) Debtors Motion for Order Pursuant to Bankruptcy

17  Code Sections 105(a) and 331 Establishing Procedures for

18  Interim Compensation and Reimbursement of Expenses of

19  Professionals.

20

21  (CC: Doc# 514) Debtors Motion for Order Under Bankruptcy Code

22  Sections 105(a), 327 and 330 and Bankruptcy Rule 2014

23  Authorizing Employment and Payment of Professionals Utilized in

24  the Ordinary Course of Business Nunc Pro Tunc to the Petition

25  Date.

5

1

2    Doc# 531 Debtors' Application Pursuant to 11 U.S.C. Section

3    327(a) and Fed. R. Bankr. P. 2014 for Authorization to Employ

4    and Retain Kurtzman Carson Consultants LLC as Administrative

5    Agent Nunc Pro Tunc to the Petition Date filed by Larren M.

6    Nashelsky on behalf of Residential Capital, LLC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Penina Wolicki

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

6

A P P E A R A N C E S :

MORRISON & FOERSTER, LLP

     Attorneys for Debtors

     1290 Avenue of the Americas

     New York, NY 10104


BY:   LORENZO MARINUZZI, ESQ.

     GARY S. LEE, ESQ.



CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

     Conflicts Counsel for Debtors

     101 Park Avenue

     New York, NY 10178


BY:   MICHAEL A. COHEN, ESQ.

     STEVEN J. REISMAN, ESQ.

7

1

2  U.S. DEPARTMENT OF JUSTICE

3        Office of the U.S. Trustee

4        33 Whitehall Street

5        21st Floor

6        New York, NY 10004

7

8  BY:   BRIAN S. MASUMOTO, ESQ.

9

10

11  KRAMER LEVIN NAFTALIS & FRANKEL LLP

12        Attorneys for Official Creditors' Committee

13        1177 Avenue of THE Americas

14        New York, NY 10036

15

16  BY:   KENNETH H. ECKSTEIN, ESQ.

17        DOUGLAS MANNAL, ESQ.

18        RACHAEL L. RINGER, ESQ.

19        P. BRADLEY O'NEILL, ESQ.

20

21

22

23

24

25

1

2   KIRKLAND & ELLIS LLP

3        Attorneys for Ally Financial Inc. and Ally Bank

4        601 Lexington Avenue

5        New York, NY 10022

6

7   BY:   CRAIG A. BRUENS, ESQ.

8

9

10  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

11        Attorneys for Barclays Bank PLC

12        Four Times Square

13        New York, NY 10036

14

15  BY:   JONATHAN H. HOFER, ESQ.

16

17

18  SIDLEY AUSTIN

19        Attorneys for Nationstar Mortgage

20        One South Dearborn

21        Chicago, IL 60603

22

23  BY:   JESSICA BOELTER, ESQ. (TELEPHONICALLY)

24        LARRY NYHAN, ESQ. (TELEPHONICALLY)

25

9

FREEBORN & PETERS LLP

     Attorneys for Mercer

     311 South Wacker Drive

     Suite 3000

     Chicago, IL 60606


BY:   DEVON J. EGGERT, ESQ. (TELEPHONICALLY)



DORSEY & WHITNEY LLP

     Proposed Investigatory Counsel to Debtors

     50 South Sixth Street

     Suite 1500

     Minneapolis, MN 55402


BY:   THOMAS O. KELLY, III, ESQ.



ALSO PRESENT:

     CORLA JACKSON, Pro Se

     JOHN DEMPSEY, Mercer (TELEPHONICALLY)

     ALAN TESSLER, Rubenstein & Associates (TELEPHONICALLY)

P R O C E E D I N G S

1

2          THE COURT:  Please be seated.  We're here in

3   Residential Capital, LLC, number 12-12020.  Mr. Marinuzzi?

4          MR. MARINUZZI:  Good morning, Your Honor.  For the

5   record, Lorenzo Marinuzzi, Morrison & Foerster, proposed

6   bankruptcy counsel for the debtors.

7          Your Honor, first of all, thank you for making

8   yourself and your staff available this morning for a hearing.

9   And I promise to do my best to move as quickly as possible.

10          Your Honor, we're here on a number of mostly

11  uncontested retention applications filed by the debtors and one

12  filed by the committee, as well as a status conference on the

13  subservicing matter.  And if I proceed in the order in which

14  matters are listed in the agenda, Your Honor, you'll note that

15  the retention applications filed by the committee and the

16  debtors for the financial advisors FTI and Centerview, Moelis

17  and AlixPartners, have been adjourned to the hearing on the

18  24th.  And Your Honor, if it's okay, we'll skip the status

19  conference and deal with the retentions, so the professionals

20  that are here can leave.

21          Your Honor under uncontested matters is the motion to

22  approve interim compensation and reimbursement of expenses.

23  There were changes requested by the committee, which we've

24  incorporated into the order.  I believe chambers has seen a

25  copy of the marked order, but I'm happy to walk through the

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    11

1  changes if Your Honor would like.

2          THE COURT:  No, that is okay.  Let me ask, does

3  anybody else wish to be heard with respect to the interim

4  compensation order.

5          All right.  It's approved.

6          MR. MARINUZZI:  Thank you, Your Honor.  The next item

7  on the agenda is the debtors' application to retain under

8  327(a) Kurtzman Carson Consultants, as administrative agents,

9  nunc pro tunc.  Your Honor, there was one change requested by

10  the committee to the order.  KCC's been retained as the

11  noticing agent, and they have a retainer for expenses, as is

12  provided in the general order.  We picked up that retainer

13  concept unintentionally in the order for 327(a), so we just

14  deleted it.

15          THE COURT:  Okay.

16          MR. MARINUZZI:  There were no objections.

17          THE COURT:  Does anybody wish to be heard with respect

18  to the Kurtzman Carson retention?

19          It's approved.

20          MR. MARINUZZI:  Thank you, Your Honor.  The next item

21  is the motion requesting the -- authorizing the preliminary

22  payment of ordinary-course professionals.  Your Honor, there

23  was an objection to the motion filed by the United States

24  Trustee, in particular with respect to the amounts, because we

25  had proposed 75,000 and 750.  And in revisiting and scrubbing

RESIDENTIAL CAPITAL, LLC, ET AL.                                    12

1   the numbers with the company again, we decided that we can work

2   within the request of the U.S. Trustee for 50,000 per month and

3   500,000 dollars over the course of the case.  So we've made

4   those changes to the order.

5           There's one other concept that was not in the motion

6   as filed, but it was raised in discussions regarding

7   retentions.  And as I'll get to, the professionals on the

8   debtors' side have agreed, whatever retainers they have,

9   they're going to apply to the first fees paid out.  And we want

10  to incorporate that concept with respect to ordinary-course

11  professionals, to the extent that they're holding retainers.

12  We'd like them to apply the retainers against the first fees

13  paid; and we've built that into the order.

14          THE COURT:  Anybody wish to be heard with respect to

15  the retention of ordinary course professionals?

16          All right, that's granted.

17          MR. MARINUZZI:  Your Honor, the next item on the

18  agenda is the debtors' application to retain Curtis Mallet as

19  conflicts counsel.

20          THE COURT:  Yes.

21          MR. MARINUZZI:  No objections to that motion, Your

22  Honor.  Unless Your Honor has any questions, we'd ask that that

23  application be granted.

24          THE COURT:  Anybody wish to be heard with respect to

25  the Curtis Mallet retention application?

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    13

1      All right, it's granted.

2          MR. MARINUZZI:  Thank you, Your Honor.  Under

3      contested matters is the application to retain Morrison &

4      Foerster.  The U.S. Trustee filed an objection raising

5      duplication issues that we'll talk about, as it pertains to the

6      327(e) professionals as well, and asked for additional

7      disclosures, which we've made, as did the other professionals.

8          We believe, subject to negotiating a form of order for

9      the United States Trustee that satisfies them on the

10     duplication issue, and we think that a template for that is

11     really set forth in the supplemental declarations provided by

12     the 327(e) professionals, that provides a finer point on the

13     services they're going to be provided, we think we've resolved

14     the U.S. Trustee's objection.

15         THE COURT:  Mr. Masumoto?

16         MR. MASUMOTO:  Good morning, Your Honor.  Brian

17     Masumoto for the Office of the United States Trustee.  Counsel

18     is correct.  But if I may state for the record, some of the

19     concepts that we had wanted to incorporate.  One is with

20     respect to the catchall provision that exists.  We're hoping to

21     narrow it down to indicate that any of the, at the moment,

22     undefined services that may be provided for by the

23     professionals would be within the scope of the services that

24     they're hired at this point.  Anything beyond that scope,

25     they'd have to get a separate order of the Court.

1    In addition, we're asking that as they expand their

2    services within the scope of the area for which they're

3    retained, they would file supplemental declarations to indicate

4    that they're doing these additional services.

5          What we're also hoping to work out and include in the

6    order is the concept that with respect -- between and among

7    debtors' counsel and the special counsel, that project

8    categories be as uniform as possible, to allow for a -- to

9    facilitate the review of any potential duplication.

10         THE COURT:  I think that's the key.  Because at least

11   one -- certainly one of the keys from our standpoint -- "our

12   standpoint" meaning my chambers' -- we do review fee

13   applications quite carefully.  When it becomes most difficult

14   is when there's no uniform set of project categories among

15   professionals.  So to the extent possible, that should be done.

16   Because it does really help facilitate our review.

17         MR. MASUMOTO:  Yes, Your Honor.  And we're hoping to

18   incorporate that within the context of the order.

19         THE COURT:  All right.  Mr. Marinuzzi, where do things

20   stand in terms of trying to negotiate language for the order?

21         MR. MARINUZZI:  We just had a conversation this

22   morning, Your Honor.

23         THE COURT:  Okay.

24         MR. MARINUZZI:  We knew conceptually that we were

25   going to get to the point of just finding the right language.

RESIDENTIAL CAPITAL, LLC, ET AL.                                    15

1  But I think we've resolved it, subject to the language that

2  we're going to negotiate after the hearing.

3           THE COURT:  All right.  Anybody else wish to be heard

4  with respect to the Morrison & Foerster retention application?

5           Mr. Eckstein?

6           MR. ECKSTEIN:  Your Honor, good morning.  Kenneth

7  Eckstein, proposed counsel for the creditors' committee.

8  Judge, generally, we had filed a reservation of rights on a

9  similar point with respect to avoiding duplication.  It's a

10 complicated case.  There are the need for a lot of different

11 professionals and expertise.  And we thought it was just worth

12 noting that I think all parties are going to have to work both

13 on the legal and the financial side to really ensure that there

14 is no duplication and that there's efficiency.  I think that's

15 something we have to focus on prospectively.

16          THE COURT:  Okay.  I mean, one of the things that's a

17 little unusual or a little different in this case is that the

18 debtors expressed from the start, I think with the support of

19 the committee, that ResCap be able to conduct business as

20 usual.  Part of their business as usual involves a lot of

21 litigation around the country.  The Court's already entered an

22 order lifting the stay as to various types of claims and

23 things.  And there are lawyers representing ResCap in those

24 cases.  And when I reviewed the retention applications, a

25 number of them are involved in the representation of the

1  debtors in ongoing litigation.

2         So I certainly -- while the Court is always concerned

3  about proliferation of professionals in a case, I certainly

4  fully understand that the nature of this case requires it, but

5  it also requires the effort to monitor that there isn't

6  unnecessary -- there isn't duplication of effort and that Mr.

7  Marinuzzi, you know, at the end of the day, from the debtors'

8  side, the buck stops with your firm.  And if the U.S. Trustee

9  or the Court begins to raise questions about duplication, you

10 and your colleagues are the ones who are going to have to make

11 sure that that doesn't happen.  Okay?

12        MR. ECKSTEIN:  We're all counting on Morrison &

13 Foerster.

14        THE COURT:  Yes, I know.

15        MR. MARINUZZI:  Thank you, Your Honor.

16        THE COURT:  All right.  Anybody else wish to be heard?

17        All right, the Morrison & Foerster retention is

18 approved subject to the Court's review of a proposed order when

19 that's submitted.

20        MR. MARINUZZI:  Thank you, Your Honor.

21        THE COURT:  Okay.

22        MR. MARINUZZI:  The next application is the debtors'

23 application to retain Carpenter Lipps & Leland as special

24 counsel under 327 --

25        THE COURT:  That's one of the firms I had specifically

1  in mind, because they're representing the debtors in

2  litigation.

3          MR. MARINUZZI:  Yes.  On litigation that's been

4  ongoing for years.

5          THE COURT:  Right.

6          MR. MARINUZZI:  There was one objection.  And we'll

7  deal the same way we'll deal with Morrison & Foerster and the

8  other 327(e), with crafting language with the U.S. Trustee.

9  The same resolution will apply to Carpenter --

10         THE COURT:  There's also the Lewis application --

11         MR. MARINUZZI:  Exactly.

12         THE COURT:  -- Lewis objection.  It's overruled.

13         MR. MARINUZZI:  Thank you, Your Honor.

14         THE COURT:  Does anybody else wish to be heard with

15 respect to the Carpenter Lipps & Leland retention application?

16         All right, it's approved, subject again, to reviewing

17 the order.

18         MR. MARINUZZI:  Thank you, Your Honor.  And that

19 brings us to the debtors' application to retain Dorsey &

20 Whitney as special securitization and investigatory counsel

21 under Section 327(e).  Same resolution with the U.S. Trustee,

22 Your Honor.

23         THE COURT:  Explain to me a little bit more about what

24 is -- in terms of investigations, what's -- who's doing what

25 among the professionals for the debtor?

RESIDENTIAL CAPITAL, LLC, ET AL.                    18

1    MR. MARINUZZI:  Your Honor, there were investigations

2  and actions that commenced before the petition date where the

3  company retained, in this case, Dorsey & Whitney.  And

4  depending upon how long ago these proceedings began, there was

5  either a great deal of work done or not so much work done.  And

6  whatever work had been done, is work that, to the extent

7  Morrison & Foerster is going to take over the work -- now many

8  of these are stayed, but who knows what might happen in the

9  future and how we have to resolve these claims as part of a

10  plan process -- as we progress in the case, I anticipate with

11  respect to the activities and Dorsey & Whitney, that they'll

12  become Morrison & Foerster activities.

13    But we're going to need their cooperation.  We're

14  going to need the information they've already obtained,

15  whatever progress has happened in the case to date, for us to

16  actually have a smooth transition from Dorsey & Whitney to

17  Morrison & Foerster.

18    In court today is Tom Kelly, to the extent that Your

19  Honor has any specific questions that I can't answer.

20    THE COURT:  Well, one --

21    MR. MARINUZZI:  I'm sure he'd be happy to answer them.

22    THE COURT:  -- question I have, and this may apply to

23  others.  Dorsey & Whitney had a pre-petition retainer at

24  250,000 dollars.  What's not clear to the Court is how much of

25  that remains.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    19

1          MR. MARINUZZI:  Your Honor, I don't know.  I'll defer

2    to Dorsey & Whitney.  I thought it might have been addressed in

3    the supplemental declaration.  But if it's not --

4          THE COURT:  Maybe it was and I missed it.

5          I guess it is, because I see Mr. Masumoto pointing to

6    it.

7          MR. KELLY:  It was addressed, Your Honor --

8          THE COURT:  Okay.

9          MR. KELLY:  -- in the supplemental declaration.  We

10   have not applied any of it, because the case was filed and we

11   hadn't --

12         THE COURT:  Right.

13         MR. KELLY:  -- done so.  We have 227,000 dollars'

14   worth of pre-petition fees and disbursements that we want to

15   apply.

16         THE COURT:  Against the 250,000 dollar retainer?

17         MR. KELLY:  Right.  So we'll have 22,000 left

18   afterwards.

19         THE COURT:  Okay.  All right, thank you very much.

20         Does anybody else wish to be heard with respect to the

21   Dorsey & Whitney retention application?

22         All right, it's granted.

23         MR. MARINUZZI:  Thank you, Your Honor.  That brings us

24   to the debtors' application to retain Orrick, Herrington &

25   Sutcliffe under 327(e).  Your Honor, the simplest way I could

1  describe Orrick is that they wrote many of the securitization

2  documents that we're going to need some help analyzing during

3  the case.

4           THE COURT:  Okay.  Anybody wish to be heard with

5  respect to the Orrick, Herrington & Sutcliffe retention

6  application?

7           All right, it's granted.

8           MR. MARINUZZI:  Thank you very much, Your Honor.  Your

9  Honor, that brings us to the debtors' application to retain

10  Mercer as compensation consultant.  Your Honor, the objection

11  was filed by the U.S. Trustee regarding the payment of

12  attorneys' fees, which was the subject of Your Honor's decision

13  in Borders.  I'll turn over the podium to Mr. Masumoto to

14  prosecute his objection.

15           THE COURT:  Okay.

16           MR. MASUMOTO:  Good morning, Your Honor.  Brian

17  Masumoto for the Office of the United States Trustee.  Your

18  Honor, with respect to the Mercer application, we had several

19  objections, all of which have been resolved.  I just wanted to

20  mention the two, sort of, that remained at the end, were the

21  concept that they're hourly compensa -- their quarter-hour

22  increment in terms of their records.  The supplement addresses

23  it in somewhat of a convoluted fashion, but it seems --

24           THE COURT:  They ought to change their system to

25  tenths of an hour, but --

1          MR. MASUMOTO:  I understand, Your Honor.  But it

2    appears that over fifteen minutes, they'll be rounding down for

3    the first ten, and for the last five, they would round up,

4    which seems to be consistent with the tenths of an hour

5    increment, and avoiding the concern of overbilling to the

6    estate.  So that appears to have been resolved.

7          The remaining issue is the one that Mr. Marinuzzi

8    alluded to.  And as we have indicated in our papers, as we

9    understand the Court's decision in Borders --

10          THE COURT:  Well, I think -- you know, I read your

11    objection.  You obviously continued the objection.  But I

12    thought you actually went a little too light on it, in the

13    sense that the Borders decision first -- I mean, it was

14    distinguishable from this case, because Borders makes clear

15    that the objection to the Mercer application did not arise

16    until the first fee application.  That at the time of the

17    retention the Office of the U.S. Trustee had asserted a general

18    reservation of rights but had not specifically objected to the

19    expense reimbursement provision as being the source of

20    authority for counsel retention.

21          So I think there's more to your objection here than

22    there was in Borders.  Now, that, of course, isn't the end of

23    the story.  The supplemental declaration submitted answers

24    maybe part of the question.  But in the Borders opinion, which

25    I reread again this morning, I focused on let's deal solely

1   with the reimbursement of outside counsel in connection with

2   retention.  I asked, in that opinion, a series of questions

3   about whether the professional in that case and in this case,

4   Mercer, charges its clients both for bankruptcy matters and

5   nonbankruptcy matters for counsel fees in connection with

6   retention.  I specifically raised the question in the Borders

7   decision whether it is or should be considered part of

8   overhead.  There were a whole -- there were a series of

9   questions that I raised.

10          Certainly, here you've raised the objection, and it is

11   at the retention stage, not at the fee application stage.  I

12   guess the one thing that I said and would still adhere to here

13   is that 327 is not the issue.  And I guess the supplemental

14   declaration says that -- the supplemental declaration of John

15   Dempsey, paragraph 8:  "Mercer customarily requests and

16   receives similar reimbursement rights from its clients."

17          That same paragraph 8 says that, "To date, Mercer's

18   outside legal fees are estimated at less than $6,000.  Mercer

19   will only seek reimbursement from the debtors of those legal

20   fees that were performed solely on behalf of Mercer."

21          I guess -- I'll let you -- you can say more if you

22   want.  I don't know how far you explored this.  I mean, I don't

23   think -- the Borders -- I adhere to what I said in Borders.

24   But what I said in Borders is more complicated in a situation

25   such as the one where you've raised your objection now.

RESIDENTIAL CAPITAL, LLC, ET AL.                              23

1    MR. MASUMOTO:  Well, Your Honor, as to -- it seems

2    that the issue of inquiry as to whether it would be part of

3    overhead is actually part of the objection that the U.S.

4    Trustee has raised --

5            THE COURT:  I know.

6            MR. MASUMOTO:  -- in the past.  And I don't know

7    whether or not, again, within the parameters of the judge's

8    decision in Borders, indicating that if they customarily bill

9    it outside, whether that disposes of the inquiry as to whether

10   or not it's treated as part of their overhead.

11           In addition, we assume that even in accordance with

12   the Borders decision, going forward, to the extent that they

13   have -- if they use outside counsel to review their time

14   records and so forth, within the prohibited categories, that

15   that would still be subject to an objection and disallowance at

16   the fee application stage.

17           THE COURT:  All right.

18           MR. MASUMOTO:  As to whether or not fee app

19   preparation, on the other hand, I think that may be probably

20   the most outstanding issue related to going forward, the issue

21   of whether or not outside counsel could prepare their fee

22   application and include that as reimbursement, is a frequent

23   concern that arises.

24           At this stage, the services for being retained are

25   identified at 6,000.  But going forward, the ones that we've

1  seen to be included among the permissible services argued by

2  the financial advisors is that fee application preparation

3  should also be included and permitted by outside counsel.  If

4  the Court's inclined to clarify that point at the outset, I

5  think it might help the parties.  I think they're on notice

6  with respect to the impermissible types of services.

7          THE COURT:  Well, let me say, if I approve the

8  retention as presented, I believe, and I'm making it clear now,

9  that because it's -- it then becomes part of actual necessary

10  expenses, and the issue under actual and necessary expenses

11  leaves it to the Court to review the detailed application.  As

12  occurred in Borders, I think initially it was just listed as an

13  expense item and the Court requested and received detailed fee

14  statement from Freeborn & Peters, which I guess is also the

15  same counsel here.

16          MR. MASUMOTO:  Same firm.

17          THE COURT:  And we reviewed that in detail for

18  reasonableness; also looked at it and disallowed a very small

19  portion of the fees because it appeared to the Court to be work

20  for the estate as opposed solely for Mercer.  And the

21  engagement letter here, I think make clear.  It says on page 3,

22  "In addition to such compensation, we also bill for necessary

23  travel and other expenses related to the services requested,

24  including legal fees associated with our retention, subsequent

25  fee application with the U.S. Bankruptcy Court, if required,

1  and any request of participation in contested matters of

2  litigation, such as depositions, responding to subpoenas or

3  discovery requests and court testimony."

4          So I mean, in Borders I decided, and would adhere to,

5  that because lawyers can charge for preparation of their fee

6  applications that other professionals can.  And it would

7  frequently be the case that lawyers would be used in connection

8  with retaining it.  When I review the fees to conclude whether

9  they're reasonable, and I'm definitely going to -- assuming I

10 approve the application -- everybody ought to understand,

11 Mercer needs to understand, I would do it expressly with the

12 understanding, the Court reserve the right to review the

13 specific amount of fees sought in connection with preparation

14 of fee applications.

15         In Borders I think I cited some cases that

16 distinguished between preparation of fee applications and the

17 cost of "defending" a fee application if it's challenged.  That

18 may or may not -- Judge Bernstein -- I cited to one of Judge

19 Bernstein's decisions on that.  And I do see that distinction

20 and would adhere to that distinction.

21         And Mr. Masumoto, are you objecting to the indemnity

22 concept?

23         MR. MASUMOTO:  No.  With respect to indemnity,

24 usually, in fact, explicitly the provisions under the indemnity

25 provisions allow attorneys representing the professional with

RESIDENTIAL CAPITAL, LLC, ET AL.                    26

1  respect to indemnification issues.  That is one attorneys' fees

2  that we explicitly allow, subject to, again, all of the normal

3  guideline restrictions that apply.

4          THE COURT:  You know, I said in Borders at 456 B.R.

5  208, "Professionals may only be compensated in bankruptcy cases

6  for reasonable fees and expenses, taking into consideration

7  customary fees in bankruptcy and nonbankruptcy matters,"

8  referring to General Order M-389.  "If a professional does not

9  charge for counsel fees for negotiating retention in

10 nonbankruptcy matters, then such charges are inappropriate in

11 bankruptcy cases.  Expense reimbursement should also bear a

12 reasonable relationship to the likely amount of the

13 professional's compensation.  Caps on the amount of

14 reimbursable expenses can also be negotiated.  But where the

15 fees are incurred in representing the professionals and not in

16 performing work for the debtor, Section 327 does not apply."

17         Mr. Marinuzzi, is there an estimate of what the total

18 fees for Mercer are likely to be in the case?  I mean, nobody

19 took me up on my invitation to negotiate a cap for what -- I

20 mean, I don't know.  Has the clock stopped running on the fees

21 on retention?

22         MR. MARINUZZI:  Well, Your Honor, I think in theory --

23 well, actually no, insofar as counsel is on the phone right

24 now.  I --

25         THE COURT:  Well, I hope they like listening.  But I'm

1    not sure I would reimburse them for the expenses of listening

2    in today.  Okay?

3              MR. MARINUZZI:  Okay.  I guess --

4              THE COURT:  They might take that into account when

5    then put in a fee application.

6              MR. MARINUZZI:  -- I guess, Your Honor, my response

7    is, it will depend in large measure on how much work is done in

8    connection with the KEIP KERP and frankly how much opposition

9    there is to the KEIP KERP.

10             THE COURT:  Well, the U.S. Trustee always objects to a

11   KEIP KERP.

12             MR. MARINUZZI:  And we hope to work through those

13   issues before we actually file the motion.  We intend to

14   provide them with a draft.  We hope to work through the issues

15   with the committee.  We really want to try to minimize the time

16   in front of the Court as well as deposition time.

17             In the context of this case, Your Honor, obviously,

18   this is not going to be a large expense.  Having said that, I

19   don't know that I can suggest a cap.  I just don't know.

20   They've incurred 6,000 to date.  If they have to attend and

21   prepare for depositions --

22             THE COURT:  I'm just talking about retention right

23   now.

24             MR. MARINUZZI:  Retention?  I --

25             THE COURT:  The indemnification issue, I think Mr.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    28

1  Masumoto has already indicated -- if Mercer's going to be

2  deposed in connection with a KEIP and KERP, for example, Mr.

3  Masumoto, I guess you wouldn't disagree they're entitled to

4  have counsel represent their people at a deposition?

5          MR. MASUMOTO:  That's correct, Your Honor.

6          THE COURT:  Okay.

7          MR. MASUMOTO:  To the extent that they need to

8  represent --

9          THE COURT:  So that's not the issue, Mr. Marinuzzi.

10         MR. MARINUZZI:  Okay.  All right.  Your Honor, if

11 we're talking specifically about retention issues, I would just

12 defer to counsel for Mercer, who is on the phone now.

13         THE COURT:  Okay.

14         MR. EGGERT:  Yes, Your Honor.  This is Devon Eggert of

15 Freeborn & Peters on behalf of Mercer.  In the supplemental

16 declaration, we indicated that to date for retention the amount

17 was less than 6,000.  And assuming the retention application

18 would be granted today, there would be no more time for

19 retention.  And we're mindful of the Court's request to not

20 seek reimbursement for the time spent for this hearing.

21         THE COURT:  Thank you.  You could seek it, but --

22         MR. MARINUZZI:  Your Honor, we agreed that they

23 wouldn't fly out here for this hearing to save expense.

24         THE COURT:  Is someone here from Mercer?

25         MR. MARINUZZI:  Your Honor, the declarant, John

RESIDENTIAL CAPITAL, LLC, ET AL.                                                29

1  Dempsey is on the phone.

2          THE COURT:  All right.  Mr. Dempsey, what I would like

3  to know is, you say in your supplemental declaration that

4  Mercer customarily requests and receives similar reimbursement

5  rights from its clients.  What I'd like to know is, outside of

6  bankruptcy matters, do you regularly receive -- not request,

7  but receive reimbursement for counsel fees in connection with

8  your engagement?

9          MR. DEMPSEY:  We receive reimbursement for our -- for

10  when we engage outside counsel in connection with litigation.

11          THE COURT:  That wasn't my question.  That wasn't my

12  question.  My question -- I'm focusing -- the issue in my mind,

13  Mr. Dempsey, is whether retention is really built into

14  overhead.  And so my question specifically is with respect to

15  your retention, whether you regularly charge for and receive

16  reimburse -- do you use outside counsel for retention in

17  nonbankruptcy matters?

18          MR. DEMPSEY:  No we do not.  But --

19          THE COURT:  Do you --

20          MR. EGGERT:  Your Honor, this is --

21          THE COURT:  Just a second.

22          MR. EGGERT:  -- Devon Eggert of --

23          THE COURT:  No.  Let's -- answer my questions.  Then

24  I'll let you say what you want.

25          Do you have inside counsel?

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    30

1      MR. DEMPSEY:  We do.  Which is corporate counsel.

2 They're not specialists in bankruptcy.

3      THE COURT:  Well, but do they review -- your

4 engagement letter is boilerplate.  Does your inside counsel

5 review retention applications before they're signed in

6 nonbankruptcy matters?

7      MR. DEMPSEY:  Only -- well, there are not retention

8 applications --

9      THE COURT:  Well, not applications.  Engagement

10 letters.  I mean, look, Mr. Marinuzzi, here's the thing that's

11 bothering me, and I said this in the Borders opinion.  I wanted

12 to know -- in order to get reimbursed for counsel expenses in

13 connection with retention, you have to look to both bankruptcy

14 and nonbankruptcy matters.  And I mean their engagement letter

15 is pure boilerplate, okay.  And I don't -- yes, engagement in a

16 bankruptcy matter, retention in a bankruptcy matter, requires

17 more work than in a nonbankruptcy matter.  But it seems -- do

18 you know whether they have been reimbursed for their outside

19 counsel fee -- do they use outside counsel, Mr. Marinuzzi, in

20 their retention in all bankruptcy matters?

21      MR. MARINUZZI:  Your Honor, I don't know the answer to

22 that.

23      THE COURT:  So I want to see another supplemental

24 declaration.  I want to know whether they use outside counsel

25 in retentions in all bankruptcy matters; whether they have

RESIDENTIAL CAPITAL, LLC, ET AL.                                    31

1    received reimbursement for outside counsel fees in all

2    bankruptcy matters.  I don't want it to become automatic that

3    if they apply for retention in the Southern District of New

4    York, they simply get it.  That was -- I mean, in Borders I

5    made clear, it would be a different -- it was a different issue

6    if the objection was raised at the time of retention.  That's

7    what's happened here.

8              And so I'm not satisfied -- I mean, the 6,000 dollars

9    standing alone is not an inordinately high figure.  That's not

10   my problem with it.  But I don't understand why it's not built

11   into their overhead.  Are they using the same rates -- do they

12   use the same rates in bankruptcy and nonbankruptcy matters?  I

13   want to know more.

14             MR. MARINUZZI:  That's fine, Your Honor.

15             THE COURT:  Okay.

16             MR. MARINUZZI:  We'll work with Mercer to provide --

17             MR. EGGERT:  Your Honor, this is Devon Eggert.  May I

18   just add just a small point of clarification?

19             THE COURT:  Go ahead.

20             MR. EGGERT:  If I may?  The question about if Mercer

21   uses outside counsel outside of bankruptcy.  The amounts

22   incurred to date relating to retention, that does not have any

23   time with respect to negotiating the engagement letter.  That

24   deals only with the retention application.  So if Mr. Dempsey

25   is negotiating with a potential client on an engagement letter

RESIDENTIAL CAPITAL, LLC, ET AL.                                    32

1   for compensation services, we are typically not involved at

2   that point.

3           THE COURT:  Does Mercer have a different fee structure

4   for matters involving companies that are in a Chapter 11

5   proceeding versus nonbankruptcy matters?

6           MR. EGGERT:  I think I would have to defer to John

7   Dempsey on that question.

8           THE COURT:  Mr. Dempsey?

9           MR. DEMPSEY:  Yes, this is John Dempsey.  No, we

10  charge the same hourly rates inside and outside of bankruptcy.

11  And we charge -- we are reimbursed for legal expenses

12  associated with work on behalf of the client.  And the contract

13  negotiation of engagement letters, as Devon has noted, is a

14  separate process from this process of getting retained in

15  Court, which is unique to bankruptcy.  And we have -- we always

16  have this provision for seeking reimbursement, because it's a

17  special thing we do on behalf of our clients because we are

18  asked by the debtor's counsel to go down this process of

19  getting retained.

20          THE COURT:  So --

21          MR. DEMPSEY:  This is something the client is

22  triggering that we have to do.

23          THE COURT:  Mr. Marinuzzi, I specifically said in the

24  Borders decision at 456 B.R. 208, "If a professional does not

25  charge for counsel fees for negotiating retention in

1  nonbankruptcy matters, then such charges are inappropriate in

2  bankruptcy cases."

3       MR. MARINUZZI:  What I think I heard is they're not

4  charging for negotiation of the engagement letter; it's the

5  retention application that they're charging for.

6       THE COURT:  And this said retention, it didn't say

7  engagement letters.  So --

8       MR. EGGERT:  Well, Your Honor, Devon Eggert for

9  Mercer.  Just one last point.  I mean, there really aren't any

10  charges for retention outside of bankruptcy.  And I think that

11  was what Mr. Dempsey was getting at, is that the unique nature

12  of a bankruptcy case and needing to be retained is why there's

13  a charge for retention in a bankruptcy case, but there's no

14  charge for retention outside of bankruptcy.

15       And when he enters into these engagements before a

16  company files for bankruptcy, this provision is in here in the

17  event the bankruptcy actually occurs.  There are engagements

18  where he has this provision but the company does not file for

19  bankruptcy.  But that provision is still in those engagement

20  letters.

21       MR. MASUMOTO:  Excuse me, Your Honor.  If I may?  I

22  believe you quoted to the supplement previously in paragraph 8

23  where it says, "Mercer customarily requests and receives

24  similar reimbursement rights from its clients," which seems to

25  suggest that they are asking for reimbursement for attorneys'

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    34

1   fees outside of bankruptcy, contrary to, I guess, what was just

2   stated.  So maybe just a --

3          THE COURT:  Well, I think what they're saying is they

4   don't -- the language may be there, but outside of bankruptcy

5   they don't need -- they have the right, but outside of

6   bankruptcy they don't use outside counsel, because they don't

7   have to do a retention application.  So --

8          MR. EGGERT:  That's correct, Your Honor.  It's never

9   triggered.

10          THE COURT:  -- right, it's not triggered.  The

11   language is there, it's just not triggered.  And look, I'm

12   mindful of that.  I guess -- is there somewhere in the

13   declarations that it indicates that Mercer charges the same

14   hourly rates for matters that are in bankruptcy and outside of

15   bankruptcy?

16          MR. EGGERT:  Your Honor, in paragraph 15 of the

17   original declaration, it says, "The fee structure and other

18   provisions of the engagement letter are consistent with the

19   terms of other Mercer engagements, both in and out of

20   bankruptcy court proceedings."

21          THE COURT:  Okay, thank you.  Mr. Masumoto?

22          MR. MASUMOTO:  Your Honor, if Your Honor is satisfied

23   that the overhead issue has been resolved, we'll defer to the

24   Court's order.  But if they're only charging for the retention

25   application, which does not exist outside of bankruptcy, the

RESIDENTIAL CAPITAL, LLC, ET AL.                    35

1   issue of overhead is not fully addressed.

2           From our standpoint, we believe that it should be,

3   even in the bankruptcy context, part of the cost of doing

4   business.  I mean, many people interview before committees and

5   they incur the cost of what we refer to as a "beauty contest".

6   And if they're not, obviously, selected, they can't apply to

7   the estate for the cost of seeking to be retained.  Similarly,

8   the cost of being retained in the bankruptcy context, we

9   believe, should be absorbed by the professional.

10          And particularly so in cases, as with Mercer, where

11  you have a sometimes not strictly an hourly rate.  Particularly

12  with financial advisors, there's always the concern that in

13  essence, they're sort of farming off the cost of the expense.

14          THE COURT:  I think the financial advisor, because the

15  fee structure is different, it's not an hourly basis, raises a

16  bigger issue about whether it's part of overhead or not, than a

17  professional that's billing strictly on an hourly basis.

18          MR. MASUMOTO:  Understood, Your Honor.  It's just

19  that, from our standpoint, we believe that even with hourly

20  professionals -- as Your Honor indicated, we're particularly

21  concerned with the financial advisors and fixed monthly

22  compensation -- but even with the hourly professionals, as

23  indicated, we believe that the cost of being retained should be

24  borne by the professional.

25          Many times, Your Honor, especially in the large cases,

1  you have complex issues.  And some of those complexities and

2  conflicts arise because of the nature of the professionals

3  themselves.  It's not the bankruptcy per se, but the nature of

4  their relationships to other parties and so forth.  And if they

5  undertake to be retained under that circumstance, it seems only

6  fair that they should bear the cost, and not the estate.  It's

7  not the estate that has established those connections, it's the

8  professionals.

9          And so whatever is unique to that professional -- if a

10 professional comes in with no conflicts at all, there should be

11 very little cost to that professional and presumptively to the

12 estate, if the estate bears the cost.  So from our standpoint,

13 it should be, for all professionals, hourly or not, a matter of

14 their costs.

15          MR. MARINUZZI:  Your Honor --

16          THE COURT:  Go ahead, Mr. Marinuzzi.

17          MR. MARINUZZI:  -- if I could just respond to that?  I

18 also, obviously, read the Borders decision.  And what I took

19 away from it on the overhead issue is that it wasn't overhead

20 for Mercer, as the Court ruled last time, notwithstanding the

21 context.  I don't know that it made a difference whether the

22 objection was asserted at the beginning or the end, for

23 purposes of determining whether these fees are overhead.  And

24 Your Honor concluded it wasn't overhead for the same firm, less

25 than a year ago.  I don't know that the fact that it's being

1  asserted now versus at the fee application time changes that

2  conclusion.  But obviously, it's Your Honor's decision.

3        THE COURT:  Anybody else wish to be heard with respect

4  to the Mercer retention?

5       (Pause)

6        THE COURT:  I'm going to approve the Mercer retention

7  application with the following caveats.  I intend to review the

8  fees incurred, as will be with expenses, very carefully.  So

9  because simply saying that fees in connection with retention

10  should be reimbursable expenses, I am very mindful of the issue

11  that Mr. Masumoto raises about conflicts.  So where protracted

12  work is required in connection with retention, because of the

13  professional's connections and contacts and potential

14  conflicts, I might well disallow those fees.

15       There's no question that because bankruptcy requires a

16  retention application for professionals such as Mercer, and

17  that this is a legal context, and therefore it does seem

18  appropriate to the Court for them to use professionals in doing

19  so, I'm not categorically excluding reimbursement for those

20  expenses.  It becomes a question of why don't they use their

21  own inside counsel for doing it versus outside counsel.

22  Mercer's been using outside counsel for it.

23       But when I review the fee application, I don't know at

24  this stage -- I know they've said it's approximately less than

25  6,000 dollars that's been incurred to date -- I don't know

1   without looking at the detailed time entries what that 6,000

2   dollars was incurred for doing -- what did they do for that.

3            So if the Court subsequently determines that the

4   issues in a particular retention arose because of conflicts

5   issues, for example, I might well conclude no, that shouldn't

6   be a reimbursable expense.  If the professional decides they

7   want this engagement and their other -- work for other clients

8   presents complications for them, and they're seeking advice

9   from counsel on that, I might well just disallow it.  I'm not

10  categorically -- in saying I will approve the engagement that

11  includes reimbursement for their expenses in connection with

12  retention, that should not be taken as a categorical approval

13  of whatever shows up in a fee application.

14           And if the fee application is not sufficiently

15  revealing of what they did, I'm going to ask for more detail

16  about it.  Okay?  So that will be -- I will approve the

17  retention application.

18           I think, just so we're clear, the preparation of fee

19  applications, there, as I said in the Borders decision, subject

20  to reviewing the fees for reasonableness, I think that's

21  appropriate.  And Mr. Masumoto's raised no question about the

22  indemnity issue.  Okay.

23           MR. MARINUZZI:  Thank you, Your Honor.

24           THE COURT:  Thank you, Mr. Masumoto.  Thank you, Mr.

25  Marinuzzi.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                          39

1     MR. MARINUZZI:  Thank you, Your Honor.  Your Honor,

2   the last retention application on the calendar today is the

3   committee's application to retain counsel, Kramer Levin.  I'd

4   cede the podium to Kramer Levin.

5          THE COURT:  Is Rubenstein on?

6          MR. MARINUZZI:  Oh, I apologize, I missed it.  You're

7   right.  Thank you.  Your Honor, the last retention application

8   on the debtors' side is the debtors' application to retain

9   Rubenstein Associates as corporate communications consultants.

10   There was an objection by the U.S. Trustee regarding billing in

11   quarter hour increments, and they've decided to bill in tenths

12   of an hour increments to satisfy that objection.

13          THE COURT:  And the Court noted that with respect to

14   the reimbursement for counsel fees, it did not include -- in

15   connection with retention -- it was essentially the indemnity.

16          MR. MARINUZZI:  Indemnity, right.

17          THE COURT:  Mr. Masumoto, anything that you want --

18          MR. MASUMOTO:  No, thank you, Your Honor.

19          THE COURT:  All right.  That's approved.

20          MR. MARINUZZI:  Thank you, Your Honor.  And now I'll

21   cede the podium to Kramer Levin.

22          THE COURT:  Okay.

23          MR. ECKSTEIN:  Your Honor, good morning.  Kenneth

24   Eckstein, Kramer Levin, proposed counsel for the creditors'

25   committee.  I was hoping I could rely on Mr. Marinuzzi, but I

RESIDENTIAL CAPITAL, LLC, ET AL.                                            40

1   guess I couldn't on this one, so I'll present it myself.

2         Your Honor, we submitted our retention application in

3   connection with our representation of the creditors' committee.

4   We reviewed it with the U.S. Trustee.  We didn't receive any

5   objections.  So unless Your Honor has any questions, we would

6   respectfully request approval of the motion.

7         THE COURT:  Does anybody wish to be heard with respect

8   to the Kramer Levin retention application?

9         All right.  It's approved as well.

10         MR. ECKSTEIN:  Thank you, Your Honor.

11         THE COURT:  Thank you.

12         MR. LEE:  Good morning, Your Honor.  Gary Lee from

13   Morrison & Foerster, counsel for the debtors.  I think I can

14   say that now, subject to the order.  The last item, I think, on

15   the agenda, is the status conference on our motion for a final

16   order approving the servicing agreement between the debtors and

17   Ally Bank.

18         Your Honor, there have been very serious discussions

19   between the debtors, the committee, and Ally, regarding this

20   motion.  And the parties have agreed that it would be the

21   professionally responsible thing to do to give the business

22   principals some time to talk here about the motion.  It's an

23   important motion.  I think, as we said, it's one of the

24   cornerstones of the entire case.  And so in that regard, the

25   proposal, Your Honor, is, that the debtors will adjourn the

RESIDENTIAL CAPITAL, LLC, ET AL.                                        41

1   status conference until July the 24th, and the hearing until

2   August the 8th.

3          The debtors are going to file a supplemental

4   declaration, Your Honor on Monday.  We've shared a draft of

5   that declaration with the committee.  And it will set out

6   further details regarding the motion and why it's a critical

7   component of the case.

8          We are working on a discovery schedule with the

9   committee.  If there is a need for an evidentiary hearing on

10  August the 8th -- and in the meantime there have been informal

11  productions of documents.  We've received a formal request, and

12  we're in the process of compiling that.  So in the event there

13  is a hearing, nobody is caught by surprise and loses any time.

14         THE COURT:  Mr. Lee, tell me, the anticipated schedule

15  is that it'll come before the Court when?

16         MR. LEE:  On August the 8th.

17         THE COURT:  And are you requesting that the August 8th

18  hearing be an evidentiary hearing if necessary?

19         MR. LEE:  Your Honor, in the event that the parties

20  are unable to reach any kind of resolution -- and we hope to be

21  at a report on that by July the 24th -- the committee's

22  indicated that they believe the next hearing will need to be an

23  evidentiary hearing.  The intend to call witnesses.  And I

24  believe the debtors will need to do the same.  So, yes, Your

25  Honor, if possible, August the 8th would be an evidentiary

1  hearing.

2          THE COURT:  I don't think so.  Because I have MF

3  Global in the morning and the ResCap KEIP KERP motion --

4          MR. LEE:  Which is also mine, Your Honor.

5          THE COURT:  -- is scheduled for 2 o'clock.  It's on

6  the calendar for 2 o'clock.  I don't want to anticipate whether

7  the U.S. Trustee or the creditors' committee will object to the

8  KEIP KERP motion, but I haven't seen a KEIP or KERP that hasn't

9  been objected to -- I don't think ever, but --

10          MR. LEE:  Well, Your Honor, we'll work very hard

11  between now and then to ensure that there aren't any.  We've

12  actually had discussions with the committee regarding the KEIP

13  and KERP, and we are in the process of engaging with the U.S.

14  Trustee on that too.  But you're right, it might be ambitious.

15          But for various reasons, Your Honor -- I apologize for

16  interrupting -- there are some fairly important reasons why it

17  can't slip much beyond August the 8th.  The reason is because

18  the bank, which is the counterparty to this agreement, is a

19  regulated entity.  And the FDIC is watching what we're doing

20  quite carefully and we wanted to get the --

21          THE COURT:  Yes --

22          MR. LEE:  -- I appreciate -- every regulator under the

23  sun is watching what we're doing quite carefully.  But we are

24  under a certain amount of pressure to get the first hearing

25  date that we can.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    43

1            THE COURT:  Well, I don't find that to be -- the fact

2    that the FDIC is keeping a close watch is not necessarily

3    persuasive of having an evidentiary hearing on it.  Part of my

4    problem is that I'm out of town the week before.  I'm committed

5    to always being prepared when I have a hearing in advance.

6            MR. LEE:  I have had that experience, Your Honor, yes.

7            THE COURT:  And so the question is, will the schedule

8    allow enough time for me to feel fully prepared.  I'm not sure

9    if I can do that.  I'm not asking you to give me a preview all

10   of the issues, but what issue do you -- if there has to be an

11   evidentiary hearing, what issues do you anticipate will require

12   an evidentiary hearing?

13           MR. LEE:  I'm going to try and keep my comments

14   neutral, because the parties are engaged in --

15           THE COURT:  I understand that.

16           MR. LEE:  -- fairly sensitive negotiations.  I think,

17   Your Honor, the principal issues --

18           THE COURT:  Well, let me stop you for a second.

19           MR. LEE:  Yes.

20           THE COURT:  I don't want to do anything to upset --

21           MR. LEE:  Thank you, Your Honor.

22           THE COURT:  -- delicate discussions in an effort to

23   work this out..  You're going to be back here on July 24th?

24           MR. LEE:  Yes, Your Honor.

25           THE COURT:  We're going to put this on for a status

RESIDENTIAL CAPITAL, LLC, ET AL.                    44

1   conference on July 24th.

2          MR. LEE:  Yes, Your Honor.

3          THE COURT:  And at that time, I expect a fuller

4   discussion.  And if necessary, we'll talk about exactly what

5   the Court requires if there's going to be an evidentiary

6   hearing, and what that will -- you're also on the calendar for

7   August 14th.

8          MR. LEE:  Yes.

9          THE COURT:  I don't know -- I mean I see a lot of

10  matters listed on the calendar for August 14th.  There's a lot

11  of stay relief motions.  I don't know if we will have them or

12  not it or not, or whether -- what those will entail.

13         So it's possible, Mr. Lee, that August 14th will be

14  the date for an evidentiary hearing.  And if necessary, start

15  thinking now about which of the ResCap matters that are on the

16  calendar for August 14th can be moved.  Right now there's

17  nothing on the calendar on August 14th other than lift stays.

18         MR. LEE:  Your Honor, may I ask a quick question?  Did

19  we have a holding date on the 9th, or has that gone already?

20         THE COURT:  You're on the calendar for the 9th.  You

21  have retention applications for Deloitte, KPMG, continued

22  hearing if necessary for KEIP and KERP.

23         MR. LEE:  I hope not, Your Honor.

24         THE COURT:  I didn't put these entries in there.  I've

25  got Borders for the 10th.

1          MR. LEE:  Would it be possible, Your Honor, just to

2     tentatively set it for the 9th?

3          THE COURT:  Well, it comes back --

4          MR. LEE:  Or is that --

5          THE COURT:  -- to the same problem.

6          MR. LEE:  Okay.

7          THE COURT:  How much preparation is going to be

8     required for me.

9          MR. LEE:  I understand, Your Honor.

10         THE COURT:  And I'm away the prior week.  It's -- I'm

11    not -- let's talk about it on the 24th.

12         MR. LEE:  Okay.  And I'll commit, there'll be a full

13    preview of the issues on the 24th.  We would have done it

14    today, but for the fact that the parties are engaged.

15         THE COURT:  That's fine.

16         MR. LEE:  Thank you.

17         THE COURT:  I don't want to upset discussions that are

18    constructive discussions.

19         Just, ordinarily, Mr. Lee, on anything that's a

20    contested matter requiring an evidentiary hearing that's at all

21    complicated, I want papers a week in advance.

22         MR. LEE:  I see.

23         THE COURT:  And that may be possible for you, but I

24    won't be here for -- I'll be here for part of the week, but not

25    all of the week.  And it limits my preparation.

RESIDENTIAL CAPITAL, LLC, ET AL.                                        46

1        MR. LEE:  And I can guarantee it will be complicated,

2   so.

3        THE COURT:  We'll see on the 24th.

4        MR. LEE:  Okay, thank you, Your Honor.

5        THE COURT:  Thank you.  Mr. Eckstein?

6        MR. ECKSTEIN:  Your Honor, Kenneth Eckstein, of Kramer

7   Levin, counsel for the creditors' committee.  I'm going to

8   begin by concurring with Mr. Lee that this will be complicated.

9   And I think it will be --

10        THE COURT:  Sufficiently complicated that if there's

11   an evidentiary hearing, it's going to be more than one day?

12        MR. ECKSTEIN:  Potentially, yes.  I think that in the

13   first instance, we concur with the judgment to adjourn today's

14   status conference.  There were fairly significant discussions

15   that took place this week among the professionals about this

16   motion.  And I think all parties have concurred that it would

17   be appropriate for the principals to meet.

18        THE COURT:  And I'm not pressing the issue --

19        MR. ECKSTEIN:  I understand.  I do think, Your Honor,

20   that there are issues about this motion that do require

21   significant additional disclosure.  And we have been assured by

22   Mr. Lee that a significant additional submission is going to be

23   made, which we think will be very important, and obviously

24   would be something that all parties are going to want to react

25   to.  And I think that would also justify adjourning the motion.

RESIDENTIAL CAPITAL, LLC, ET AL.                    47

1      The issue does go to the heart of the relationships

2   between ResCap and Ally and the operations of the business and

3   what is and is not appropriate in terms of payments during the

4   Chapter 11 case, in contrast to what might be appropriate to be

5   dealt with in connection with a plan, both in terms of pre-

6   petition obligations and post-petition obligations and how

7   those should be allocated.

8           We think it would be useful if we can bring to the

9   Court a resolution.  We think that would be worthwhile to

10  pursue.  We think that we should use the 24th as a date to

11  review the issues.  And I think that that could advance the

12  ball quite significantly, because I think Your Honor will hear

13  the issues.  And my sense is that without an evidentiary

14  hearing we can probably frame a lot of the factual issues,

15  which are, I think, more important in many respects, and more

16  difficult than the legal issues.  I think the legal issues are

17  important, obviously, but I don't think that's where the big

18  controversy and complexity arises.

19          So I think using the 24th will allow everybody to

20  assess what is necessary.  And there's obviously a real

21  possibility that by the 24th we'll have made business progress.

22  And I imagine if we can make progress, maybe we'll be able to

23  arrange to submit an order earlier and get the matter resolved

24  without the need for a lengthy and contentious hearing.

25          But at this point, I think, we're prepared to proceed

1    along the lines of let's have the discussions.  They're going

2    to be scheduled for next week.  And I think, for now, it would

3    probably be useful if we could use a response holding date for

4    either August 1st or August 2nd, which would be a week in

5    advance of August 8th or August 9th, which is what we were

6    anticipating.  I think the intention was to work out a

7    discovery schedule with Mr. Lee, which I imagine we'll have in

8    place, certainly before the 24th.  We haven't had any problems

9    in working out discovery.  And we can bring back the specific

10   issues to Your Honor on the 24th, depending upon where the

11   matter stands.

12            THE COURT:  Okay.  Let's see where things stand on the

13   24th.  Okay?

14            MR. ECKSTEIN:  Thank you.

15            THE COURT:  Thank you, Mr. Eckstein.

16            Mr. Marinuzzi?  I'm sorry.  Go ahead, Mr. Lee.

17            MR. LEE:  Apologies, Your Honor.  Just one additional

18   point.  Gary Lee from Morrison & Foerster.  Ally has agreed to

19   extend the provision in the DIP that would otherwise

20   automatically default by virtue of the fact that we won't have

21   gotten approval for this agreement by, I believe it's the end

22   of the month.  So we're able to carry over.  I just wanted to

23   bring that to the Court's attention, that they've agreed to

24   work with us on that, too.

25            THE COURT:  Thank you, Mr. Lee.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                          49

1          MR. LEE:  Thank you.

2          THE COURT:  All right.  Anything else, anybody wants

3    to raise?  Mr. Marinuzzi?

4          MR. LEE:  No, Your Honor.  Thank you very much, again.

5          THE COURT:  All right.  We're adjourned.  Thank you

6    very much.  Everybody have a good weekend.

7        (Whereupon these proceedings were concluded at 11:04 AM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

50

1

2                                **I N D E X**

3

4                                     RULINGS

5                                                    Page        Line

6    Debtors' interim compensation order granted.    11          5

7    Debtors' application to retain Rubenstein       39          19

8    Associates as corporate communications

9    consultants is granted

10   Application of creditors' committee to retain   40          9

11   Kramer Levin as counsel is approved.

12   Debtors' motion for retention of Kurtzman       11          19

13   Carson Consultants, granted.

14   Debtors' retention of ordinary course           12          16

15   professionals motion, granted.

16   Debtors' application to retain Curtis Mallet    13          1

17   as conflicts counsel, granted.

18   Morrison & Foerster retention application       16          17

19   approved subject to Court's review of

20   proposed order.

21   Debtors' application to retain Carpenter        17          16

22   Lipps & Leland approved subject to review of

23   proposed order.

24

25

51

1                                          RULINGS

2                                                          Page        Line

3    Dorsey & Whitney retention application is      19          22

4    granted.

5    Orrick, Herrington & Sutcliffe retention       20          7

6    application is granted.

7    Application to retain Mercer is granted with   37          6

8    the limitations as delineated on the record.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

52

# C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a
true and accurate record of the proceedings.


_____

PENINA WOLICKI

AAERT Certified Electronic Transcriber CET**D-569


eScribers

700 West 192nd Street, Suite #607

New York, NY 10040


Date:  July 16, 2012

12-12020-mg   Doc 821   Filed 07/16/12   Entered 07/18/12 11:43:35   Main Document
Pg 53 of 62

In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020(MG)
July 13, 2012

**#**

**#607 (1)**
5:22

**$**

**$6,000 (1)**
22:18

**A**

**able (3)**
15:19;47:22;48:22
**absorbed (1)**
35:9
**accordance (1)**
23:11
**account (1)**
27:4
**actions (1)**
18:2
**activities (2)**
18:11,12
**actual (2)**
24:9,10
**actually (7)**
18:16;21:12;23:3;
26:23;27:13;33:17;
42:12
**add (1)**
31:18
**addition (3)**
14:1;23:11;24:22
**additional (5)**
13:6;14:4;46:21,
22;48:17
**addressed (3)**
19:2,7;35:1
**addresses (1)**
20:22
**adhere (4)**
22:12,23;25:4,20
**adjourn (2)**
40:25;46:13
**adjourned (2)**
10:17;49:5
**adjourning (1)**
46:25
**Administrative (2)**
5:4;11:8
**advance (4)**
43:5;45:21;47:11;
48:5
**advice (1)**
38:8
**advisor (1)**
35:14
**advisors (4)**
10:16;24:2;35:12,
21
**afterwards (1)**

**19:18**

**again (6)**
12:1;17:16;21:25;
23:7;26:2;49:4
**against (2)**
12:12;19:16
**agenda (4)**
10:14;11:7;12:18;
40:15
**Agent (2)**
5:5;11:11
**agents (1)**
11:8
**ago (2)**
18:4;36:25
**agreed (5)**
12:8;28:22;40:20;
48:18,23
**agreement (3)**
40:16;42:18;48:21
**Agreements (1)**
2:4
**ahead (3)**
31:19;36:16;48:16
**ALAN (1)**
9:23
**AlixPartners (1)**
10:17
**allocated (1)**
47:7
**allow (5)**
14:8;25:25;26:2;
43:8;47:19
**alluded (1)**
21:8
**Ally (7)**
2:3;8:3,3;40:17,19;
47:2;48:18
**alone (1)**
31:9
**along (1)**
48:1
**always (5)**
16:2;27:10;32:15;
35:12;43:5
**ambitious (1)**
42:14
**Americas (1)**
7:13
**among (5)**
14:6,14;17:25;
24:1;46:15
**amount (5)**
25:13;26:12,13;
28:16;42:24
**amounts (2)**
11:24;31:21
**analyzing (1)**
20:2
**anticipate (3)**
18:10;42:6;43:11
**anticipated (1)**
41:14

**anticipating (1)**
48:6
**Apologies (1)**
48:17
**apologize (2)**
39:6;42:15
**app (1)**
23:18
**appeared (1)**
24:19
**appears (2)**
21:2,6
**Application (54)**
2:6,13,18;3:2,9,18;
4:1,9;5:2;11:7;12:18,
23,25;13:3;15:4;
16:22,23;17:10,15,
19;19:21,24;20:6,9,
18;21:15,16;22:11;
23:16,22;24:2,11,25;
25:10,17;27:5;28:17;
31:24;33:5;34:7,25;
37:1,7,16,23;38:13,
14,17;39:2,3,7,8;
40:2,8
**applications (12)**
10:11,15;14:13;
15:24;25:6,14,16;
30:5,8,9;38:19;44:21
**applied (1)**
19:10
**apply (9)**
12:9,12;17:9;
18:22;19:15;26:3,16;
31:3;35:6
**appreciate (1)**
42:22
**appropriate (5)**
37:18;38:21;46:17;
47:3,4
**approval (3)**
38:12;40:6;48:21
**approve (6)**
10:22;24:7;25:10;
37:6;38:10,16
**approved (6)**
11:5,19;16:18;
17:16;39:19;40:9
**approving (1)**
40:16
**approximately (1)**
37:24
**area (1)**
14:2
**argued (1)**
24:1
**arise (2)**
21:15;36:2
**arises (2)**
23:23;47:18
**arose (1)**
38:4
**around (1)**

**15:21**

**ARPS (1)**
8:10
**arrange (1)**
47:23
**asserted (3)**
21:17;36:22;37:1
**assess (1)**
47:20
**associated (2)**
24:24;32:12
**Associates (3)**
2:14;9:23;39:9
**assume (1)**
23:11
**assuming (2)**
25:9;28:17
**assured (1)**
46:21
**attend (1)**
27:20
**attention (1)**
48:23
**Attorneys (6)**
7:12;8:3,11,19;9:3;
25:25
**attorneys' (3)**
20:12;26:1;33:25
**August (15)**
41:2,10,16,17,25;
42:17;44:7,10,13,16,
17;48:4,4,5,5
**AUSTIN (1)**
8:18
**authority (1)**
21:20
**Authorization (4)**
2:8;3:4,11;5:3
**Authorizing (7)**
2:2,13,18;3:21;
4:11,23;11:21
**automatic (1)**
31:2
**automatically (1)**
48:20
**available (1)**
10:8
**Avenue (2)**
7:13;8:4
**avoiding (2)**
15:9;21:5
**away (2)**
36:19;45:10

**B**

**back (3)**
43:23;45:3;48:9
**ball (1)**
47:12
**Bank (3)**
2:3;8:3,11;40:17;
42:18

**Bankr (1)**
5:3
**Bankruptcy (53)**
2:7,7;3:3,3,10,10,
19,19,22;4:2,2,9,10,
16,21,22;10:6;22:4;
24:25;26:5,7,11;
29:6;30:2,13,16,16,
20,25;31:2,12,21;
32:10,15;33:2,10,12,
13,14,16,17,19;34:1,
4,6,14,15,20,25;35:3,
8;36:3;37:15
**Barclays (1)**
8:11
**basis (2)**
35:15,17
**bear (2)**
26:11;36:6
**bears (1)**
36:12
**beauty (1)**
35:5
**become (2)**
18:12;31:2
**becomes (5)**
14:13;24:9;37:20
**began (1)**
18:4
**begin (2)**
46:8
**beginning (1)**
36:22
**begins (1)**
16:9
**behalf (12)**
2:11,21;3:6,14,23;
4:6,14;5:6;22:20;
28:15;32:12,17
**Bernstein (1)**
25:18
**Bernstein's (1)**
25:19
**best (1)**
10:9
**beyond (1)**
13:24;42:17
**big (1)**
47:17
**bigger (1)**
35:16
**bill (3)**
23:8;24:22;39:11
**billing (2)**
35:17;39:10
**bit (1)**
17:23
**BOELTER (1)**
8:23
**boilerplate (2)**
30:4,15
**Borders (22)**
20:13;21:9,13,14,

12-12020-mg    Doc 821    Filed 07/16/12    Entered 07/18/12 11:43:35    Main Document
Pg 54 of 62
In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020(MG)
July 13, 2012

22,24;22:6,23,23,24;
23:8,12;24:12;25:4,
15;26:4;30:11;31:4;
32:24;36:18;38:19;
44:25
**borne (1)**
35:24
**both (5)**
15:12;22:4;30:13;
34:19;47:5
**bothering (1)**
30:11
**BR (2)**
26:4;32:24
**BRADLEY (1)**
7:19
**BRIAN (3)**
7:8;13:16;20:16
**bring (3)**
47:8;48:9,23
**brings (3)**
17:19;19:23;20:9
**BRUENS (1)**
8:7
**buck (1)**
16:8
**built (3)**
12:13;29:13;31:10
**Business (8)**
2:4;4:24;15:19,20;
35:4;40:21;47:2,21

**C**

**calendar (7)**
39:2;42:6;44:6,10,
16,17,20
**call (1)**
41:23
**can (16)**
10:20;12:1;22:21;
25:5,6;26:14;27:19;
40:13;42:25;43:9;
44:16;46:1;47:8,14,
22;48:9
**cap (2)**
26:19;27:19
**Capital (8)**
2:11,21;3:7,15,24;
4:14;5:6;10:3
**Caps (1)**
26:13
**carefully (4)**
14:13;37:8;42:20,
23
**Carpenter (4)**
3:4;16:23;17:9,15
**carry (1)**
48:22
**Carson (3)**
5:4;11:8,18
**case (21)**
12:3;15:10,17;

16:3,4;18:3,10,15;
19:10;20:3;21:14;
22:3,3;25:7;26:18;
27:17;33:12,13;
40:24;41:7;47:4
**cases (7)**
15:24;25:15;26:5,
11;33:2;35:10,25
**catchall (1)**
13:20
**categorical (1)**
38:12
**categorically (2)**
37:19;38:10
**categories (3)**
14:8,14;23:14
**caught (1)**
41:13
**caveats (1)**
37:7
**CC (9)**
2:6,13,18;3:2,9,18;
4:1,16,21
**cede (2)**
39:4,21
**Centerview (1)**
10:16
**certain (1)**
42:24
**certainly (5)**
14:11;16:2,3;
22:10;48:8
**challenged (1)**
25:17
**chambers (1)**
10:24
**chambers' (1)**
14:12
**change (2)**
11:9;20:24
**changes (4)**
10:23;11:1;12:4;
37:1
**Chapter (2)**
32:4;47:4
**charge (8)**
25:5;26:9;29:15;
32:10,11,25;33:13,14
**charges (5)**
22:4;26:10;33:1,
10;34:13
**charging (3)**
33:4,5;34:24
**Chicago (1)**
8:21;9:6
**circumstance (1)**
36:5
**cited (2)**
25:15,18
**claims (2)**
15:22;18:9
**clarification (1)**
31:18

**clarify (1)**
24:4
**clear (6)**
18:24;21:14;24:8,
21;31:5;38:18
**client (3)**
31:25;32:12,21
**clients (6)**
22:4,16;29:5;
32:17;33:24;38:7
**clock (1)**
26:20
**close (1)**
43:2
**Code (8)**
2:7;3:3,10,19;4:2,
10,17,21
**colleagues (1)**
16:10
**Colt (1)**
4:12
**commenced (1)**
18:2
**comments (1)**
43:13
**commit (1)**
45:12
**committed (1)**
43:4
**Committee (18)**
4:4,6;7:12;10:12,
15,23;11:10;15:7,19;
27:15;39:25;40:3,19;
41:5,9;42:7,12;46:7
**committees (1)**
35:4
**committee's (2)**
39:3;41:21
**Communications (2)**
2:15;39:9
**companies (1)**
32:4
**company (4)**
12:1;18:3;33:16,18
**compensa (1)**
20:21
**compensated (1)**
26:5
**Compensation (9)**
2:19;4:18;10:22;
11:4;20:10;24:22;
26:13;32:1;35:22
**compiling (1)**
41:12
**complex (1)**
36:1
**complexities (1)**
36:1
**complexity (1)**
47:18
**complicated (6)**
15:10;22:24;45:21;
46:1,8,10

**complications (1)**
38:8
**component (1)**
41:7
**concept (6)**
11:13;12:5,10;
14:6;20:21;25:22
**concepts (1)**
13:19
**conceptually (1)**
14:24
**concern (3)**
21:5;23:23;35:12
**concerned (2)**
16:2;35:21
**conclude (2)**
25:8;38:5
**concluded (2)**
36:24;49:7
**conclusion (1)**
37:2
**concur (1)**
46:13
**concurred (1)**
46:16
**concurring (1)**
46:8
**conduct (1)**
15:19
**Conference (7)**
2:2;10:12,19;
40:15;41:1;44:1;
46:14
**Conflicts (7)**
4:12;12:19;36:2,
10;37:11,14;38:4
**connection (15)**
22:1,5;25:7,13;
27:8;28:2;29:7,10;
30:13;37:9,12;38:11;
39:15;40:3;47:5
**connections (2)**
36:7;37:13
**consideration (1)**
26:6
**considered (1)**
22:7
**consistent (2)**
21:4;34:18
**constructive (1)**
45:18
**Consultant (3)**
2:15,20;20:10
**Consultants (3)**
5:4;11:8;39:9
**contacts (1)**
37:13
**contentious (1)**
47:24
**contest (1)**
35:5
**contested (3)**
13:3;25:1;45:20

**context (6)**
14:18;27:17;35:3,
8;36:21;37:17
**Continue (1)**
2:3
**continued (2)**
21:11;44:21
**contract (1)**
32:12
**contrary (1)**
34:1
**contrast (1)**
47:4
**controversy (1)**
47:18
**conversation (1)**
14:21
**convoluted (1)**
20:23
**cooperation (1)**
18:13
**copy (1)**
10:25
**CORLA (1)**
9:21
**cornerstones (1)**
40:24
**Corporate (1)**
2:15;30:1;39:9
**cost (10)**
25:17;35:3,5,7,8,
13,23;36:6,11,12
**costs (1)**
36:14
**Counsel (50)**
2:9;3:5,13,22;4:4,
12;9:12;10:6;12:19;
13:17;14:7,7;15:7;
16:24;17:20;21:20;
22:1,5;23:13,21;24:3,
15;26:9,23;28:4,12;
29:7,10,16,25;30:1,4,
12,19,19,24;31:1,21;
32:18,25;34:6;37:21,
21,22;38:9;39:3,14,
24;40:13;46:7
**counterparty (1)**
42:18
**counting (1)**
16:12
**country (1)**
15:21
**Course (5)**
2:4;4:24;12:3,15;
21:22
**COURT (131)**
10:2;11:2,15,17;
12:14,20,24;13:15,
25;14:10,19,23;15:3,
16;16:2,9,14,16,21,
25;17:5,10,12,14,23;
18:18,20,22,24;19:4,
8,12,16,19;20:4,15,

12-12020-mg    Doc 821    Filed 07/16/12    Entered 07/18/12 11:43:35    Main Document
In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.
Pg 55 of 62
Case No. 12-12020(MG)
July 13, 2012

24;21:10;23:5,17;
24:7,11,13,17,19,25;
25:3,12;26:4,25;27:4,
10,16,22,25;28:6,9,
13,21,24;29:2,11,19,
21,23;30:3,9,23;
31:15,19;32:3,8,15,
20,23;33:6;34:3,10,
20,21;35:14;36:16,
20;37:3,6,18;38:3,24;
39:5,13,13,17,19,22;
40:7,11;41:14,15,17;
42:2,5,21;43:1,7,15,
18,20,22,25;44:3,5,9,
20,24;45:3,5,7,10,15,
17,23;46:3,5,10,18;
47:9;48:12,15,25;
49:2,5

**Court's (7)**
15:21;16:18;21:9;
24:4;28:19;34:24;
48:23

**crafting (1)**
17:8

**CRAIG (1)**
8:7

**Creditors (2)**
4:5,7

**Creditors' (6)**
7:12;15:7;39:24;
40:3;42:7;46:7

**critical (1)**
41:6

**Curtis (3)**
4:12;12:18,25

**customarily (4)**
22:15;23:8;29:4;
33:23

**customary (1)**
26:7

**D**

**Date (18)**
2:16,20;3:23;4:13,
25;5:5;18:2,15;
22:17;27:20;28:16;
31:22;37:25;42:25;
44:14,19;47:10;48:3

**day (2)**
16:7;46:11

**deal (5)**
10:19;17:7,7;18:5;
21:25

**deals (1)**
31:24

**dealt (1)**
47:5

**Dearborn (1)**
8:20

**debtor (2)**
17:25;26:16

**Debtors (24)**

2:3,10,15,20;3:5,
13,22;4:5,16,21;9:12;
10:6,11,16;15:18;
16:1;17:1;22:19;
40:13,16,19,25;41:3,
24

**Debtors' (19)**
2:6,13,18;3:2,9,18;
4:9;5:2;11:7;12:8,18;
14:7;16:7,22;17:19;
19:24;20:9;39:8,8

**debtor's (1)**
32:18

**decided (3)**
12:1;25:4;39:11

**decides (1)**
38:6

**decision (10)**
20:12;21:9,13;
22:7;23:8,12;32:24;
36:18;37:2;38:19

**decisions (1)**
25:19

**declarant (1)**
28:25

**declaration (11)**
19:3,9;21:23;
22:14,14;28:16;29:3;
30:24;34:17;41:4,5

**declarations (3)**
13:11;14:3;34:13

**default (1)**
48:20

**defending (1)**
25:17

**defer (4)**
19:1;28:12;32:6;
34:23

**definitely (1)**
25:9

**deleted (1)**
11:14

**delicate (1)**
43:22

**Deloitte (1)**
44:21

**DEMPSEY (16)**
9:22;22:15;29:1,2,
9,13,18;30:1,7;31:24;
32:7,8,9,9,21;33:11

**DEPARTMENT (1)**
7:2

**depend (1)**
27:7

**depending (2)**
18:4;48:10

**deposed (1)**
28:2

**deposition (2)**
27:16;28:4

**depositions (2)**
25:2;27:21

**describe (1)**

20:1

**detail (2)**
24:17;38:15

**detailed (3)**
24:11,13;38:1

**details (1)**
41:6

**determines (1)**
38:3

**determining (1)**
36:23

**DEVON (6)**
9:8;28:14;29:22;
31:17;32:13;33:8

**difference (1)**
36:21

**different (6)**
15:10,17;31:5,5;
32:3;35:15

**difficult (2)**
14:13;47:16

**DIP (1)**
48:19

**disagree (1)**
28:3

**disallow (2)**
37:14;38:9

**disallowance (1)**
23:15

**disallowed (1)**
24:18

**disbursements (1)**
19:14

**disclosure (1)**
46:21

**disclosures (1)**
13:7

**discovery (4)**
25:3;41:8;48:7,9

**discussion (1)**
44:4

**discussions (8)**
12:6;40:18;42:12;
43:22;45:17,18;
46:14;48:1

**disposes (1)**
23:9

**distinction (2)**
25:19,20

**distinguishable (1)**
21:14

**distinguished (1)**
25:16

**District (1)**
31:3

**Doc (8)**
2:6,13,18;3:2,9,18;
4:1,9

**Doc# (4)**
2:2;4:16,21;5:2

**documents (2)**
20:2;41:11

**dollar (1)**

19:16

**dollars (5)**
12:3;18:24;31:8;
37:25;38:2

**dollars' (1)**
19:13

**done (7)**
14:15;18:5,5,6;
19:13;27:7;45:13

**Dorsey (9)**
2:8;9:11;17:19;
18:3,11,16,23;19:2,
21

**DOUGLAS (1)**
7:17

**down (3)**
13:21;21:2;32:18

**draft (2)**
27:14;41:4

**Drive (1)**
9:4

**duplication (7)**
13:5,10;14:9;15:9,
14;16:6,9

**during (2)**
20:2;47:3

**E**

**earlier (1)**
47:23

**Eckstein (16)**
4:6;7:16;15:5,6,7;
16:12;39:23,24;
40:10;46:5,6,6,12,19;
48:14,15

**efficiency (1)**
15:14

**effort (3)**
16:5,6;43:22

**EGGERT (14)**
9:8;28:14,14;
29:20,22,22;31:17,
17,20;32:6;33:8,8;
34:8,16

**either (2)**
18:5;48:4

**ELLIS (1)**
8:2

**else (7)**
11:3;15:3;16:16;
17:14;19:20;37:3;
49:2

**Employ (5)**
2:8;3:4,11;4:3;5:3

**Employment (5)**
2:14,19;3:21;4:11,
23

**end (5)**
16:7;20:20;21:22;
36:22;48:21

**engage (1)**
29:10

**engaged (2)**
43:14;45:14

**engagement (15)**
24:21;29:8;30:4,9,
14,15;31:23,25;
32:13;33:4,7,19;
34:18;38:7,10

**engagements (2)**
33:15,17;34:19

**engaging (1)**
42:13

**enough (1)**
43:8

**ensure (2)**
15:13;42:11

**entail (1)**
44:12

**entered (1)**
15:21

**enters (1)**
33:15

**entire (1)**
40:24

**entitled (1)**
28:3

**entity (1)**
42:19

**entries (2)**
38:1;44:24

**Entry (1)**
3:20

**eScribers (1)**
5:21

**especially (1)**
35:25

**ESQ (11)**
7:8,16,17,18,19;
8:7,15,23,24;9:8,17

**essence (1)**
35:13

**essentially (1)**
39:15

**established (1)**
36:7

**Establishing (1)**
4:17

**estate (7)**
21:6;24:20;35:7;
36:6,7,12,12

**estimate (1)**
26:17

**estimated (1)**
22:18

**even (4)**
23:11;35:3,19,22

**event (3)**
33:17;41:12,19

**everybody (3)**
25:10;47:19;49:6

**evidentiary (12)**
41:9,18,23,25;43:3,
11,12;44:5,14;45:20;
46:11;47:13

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(3) Court's - evidentiary

12-12020-mg    Doc 821    Filed 07/16/12    Entered 07/18/12 11:43:35    Main Document
Pg 56 of 62
In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020(MG)
July 13, 2012

**Exactly (2)**
17:11;44:4
**example (2)**
28:2;38:5
**excluding (1)**
37:19
**Excuse (1)**
33:21
**exist (1)**
34:25
**exists (1)**
13:20
**expand (1)**
14:1
**expect (1)**
44:3
**expense (7)**
21:19;24:13;26:11;
27:18;28:23;35:13;
38:6
**Expenses (15)**
4:18;10:22;11:11;
24:10,10,23;26:6,14;
27:1;30:12;32:11;
37:8,10,20;38:11
**experience (1)**
43:6
**expertise (1)**
15:11
**Explain (1)**
17:23
**explicitly (2)**
25:24;26:2
**explored (1)**
22:22
**expressed (1)**
15:18
**expressly (1)**
25:11
**extend (1)**
48:19
**extent (6)**
12:11;14:15;18:6,
18;23:12;28:7

**F**

**facilitate (2)**
14:9,16
**fact (5)**
25:24;36:25;43:1;
45:14;48:20
**factual (1)**
47:14
**fair (1)**
36:6
**fairly (3)**
42:16;43:16;46:14
**far (1)**
22:22
**farming (1)**
35:13
**fashion (1)**

20:23
**FDIC (2)**
42:19;43:2
**Fed (1)**
5:3
**Federal (1)**
4:2
**fee (23)**
14:12;21:16;22:11;
23:16,18,21;24:2,13,
25;25:5,14,16,17;
27:5;30:19;32:3;
34:17;35:15;37:1,23;
38:13,14,18
**feel (1)**
43:8
**fees (28)**
12:9,12;19:14;
20:12;22:5,18,20;
24:19,24;25:8,13;
26:1,6,7,9,15,18,20;
29:7;31:1;32:25;
34:1;36:23;37:8,9,
14;38:20;39:14
**fifteen (1)**
21:2
**figure (1)**
31:9
**file (4)**
14:3;27:13;33:18;
41:3
**filed (17)**
2:10,21;3:6,14,23;
4:5,13;5:5;10:11,12,
15;11:23;12:6;13:4;
15:8;19:10;20:11
**files (1)**
33:16
**final (1)**
40:15
**Financial (7)**
8:3;10:16;15:13;
24:2;35:12,14,21
**find (1)**
43:1
**finding (1)**
14:25
**fine (2)**
31:14;45:15
**finer (1)**
13:12
**firm (3)**
16:8;24:16;36:24
**firms (1)**
16:25
**first (8)**
10:7;12:9,12;21:3,
13,16;42:24;46:13
**five (1)**
21:3
**fixed (1)**
35:21
**FLOM (1)**

8:10
**Floor (1)**
7:5
**fly (1)**
28:23
**focus (1)**
15:15
**focused (1)**
21:25
**focusing (1)**
29:12
**Foerster (12)**
3:21;10:5;13:4;
15:4;16:13,17;17:7;
18:7,12,17;40:13;
48:18
**following (1)**
37:7
**form (1)**
13:8
**formal (1)**
41:11
**forth (3)**
13:11;23:14;36:4
**forward (3)**
23:12,20,25
**Four (1)**
8:12
**frame (1)**
47:14
**Frankel (2)**
4:4;7:11
**frankly (1)**
27:8
**FREEBORN (3)**
9:2;24:14;28:15
**frequent (1)**
23:22
**frequently (1)**
25:7
**front (1)**
27:16
**FTI (1)**
10:16
**full (1)**
45:12
**fuller (1)**
44:3
**fully (3)**
16:4;35:1;43:8
**further (1)**
41:6
**future (1)**
18:9

**G**

**Gary (2)**
40:12;48:18
**general (3)**
11:12;21:17;26:8
**generally (1)**
15:8

**Global (1)**
42:3
**Good (7)**
10:4;13:16;15:6;
20:16;39:23;40:12;
49:6
**granted (6)**
12:16,23;13:1;
19:22;20:7;28:18
**great (1)**
18:5
**guarantee (1)**
46:1
**guess (11)**
19:5;22:12,13,21;
24:14;27:3,6;28:3;
34:1,12;40:1
**guideline (1)**
26:3

**H**

**hand (1)**
23:19
**happen (2)**
16:11;18:8
**happened (2)**
18:15;31:7
**happy (2)**
10:25;18:21
**hard (1)**
42:10
**hear (1)**
47:12
**heard (12)**
11:3,17;12:14,24;
15:3;16:16;17:14;
19:20;20:4;33:3;
37:3;40:7
**hearing (25)**
10:8,17;15:2;
28:20,23;41:1,9,13,
18,18,22,23;42:1,24;
43:3,5,11,12;44:6,14,
22;45:20;46:11;
47:14,24
**heart (1)**
47:1
**help (3)**
14:16;20:2;24:5
**here's (1)**
30:10
**Herrington (3)**
3:12;19:24;20:5
**high (1)**
31:9
**hired (1)**
13:24
**HOFER (1)**
8:15
**holding (3)**
12:11;44:19;48:3
**Honor (95)**

10:4,7,10,14,18,21;
11:1,6,9,20,22;12:17,
22,22;13:2,16;14:17,
22;15:6;16:15,20;
17:13,18,22;18:1,19;
19:1,7,23,25;20:8,9,
10,16,18;21:1;23:1;
26:22;27:6,17;28:5,
10,14,22,25;29:20;
30:21;31:14,17;33:8,
21;34:8,16,22,22;
35:18,20,25;36:15,
24;38:23;39:1,1,7,18,
20,23;40:2,5,10,12,
18,25;41:4,19,25;
42:4,10,15;43:6,17,
21,24;44:2,18,23;
45:1,9;46:4,6,19;
47:12;48:10,17;49:4
**Honor's (2)**
20:12;37:2
**hope (5)**
26:25;27:12,14;
41:20;44:23
**hoping (4)**
13:20;14:5,17;
39:25
**hour (4)**
20:25;21:4;39:11,
12
**hourly (9)**
20:21;32:10;34:14;
35:11,15,17,19,22;
36:13

**I**

**I'm (2)**
10:25;48:16
**identified (1)**
23:25
**III (1)**
9:17
**IL (2)**
8:21;9:6
**imagine (2)**
47:22;48:7
**impermissible (1)**
24:6
**important (5)**
40:23;42:16;46:23;
47:15,17
**inappropriate (2)**
26:10;33:1
**Inc (3)**
2:14,19;8:3
**inclined (1)**
24:4
**include (3)**
14:5;23:22;39:14
**included (2)**
24:1,3
**includes (1)**

12-12020-mg    Doc 821    Filed 07/16/12    Entered 07/18/12 11:43:35    Main Document
Pg 57 of 62

In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020(MG)
July 13, 2012

38:11
**including (1)**
  24:24
**incorporate (3)**
  12:10;13:19;14:18
**incorporated (1)**
  10:24
**increment (2)**
  20:22;21:5
**increments (2)**
  39:11,12
**incur (1)**
  35:5
**incurred (6)**
  26:15;27:20;31:22;
  37:8,25;38:2
**indemnification (2)**
  26:1;27:25
**indemnity (6)**
  25:21,23,24;38:22;
  39:15,16
**indicate (2)**
  13:21;14:3
**indicated (6)**
  21:8;28:1,16;
  35:20,23;41:22
**indicates (1)**
  34:13
**indicating (1)**
  23:8
**informal (1)**
  41:10
**information (1)**
  18:14
**initially (1)**
  24:12
**inordinately (1)**
  31:9
**inquiry (2)**
  23:2,9
**inside (4)**
  29:25;30:4;32:10;
  37:21
**insofar (1)**
  26:23
**instance (1)**
  46:13
**intend (3)**
  27:13;37:7;41:23
**intention (1)**
  48:6
**Interim (3)**
  4:18;10:22;11:3
**interrupting (1)**
  42:16
**interview (1)**
  35:4
**into (7)**
  10:24;12:13;26:6;
  27:4;29:13;31:11;
  33:15
**investigations (2)**
  17:24;18:1

**Investigatory (3)**
  2:9;9:12;17:20
**invitation (1)**
  26:19
**involved (2)**
  15:25;32:1
**involves (1)**
  15:20
**involving (1)**
  32:4
**issue (20)**
  13:10;21:7;22:13;
  23:2,20,20;24:10;
  27:25;28:9;29:12;
  31:5;34:23;35:1,16;
  36:19;37:10;38:22;
  43:10;46:18;47:1
**issues (19)**
  13:5;26:1;27:13,
  14;28:11;36:1;38:4,
  5;43:10,11,17;45:13;
  46:20;47:11,13,14,
  16,16;48:10
**item (5)**
  11:6,20;12:17;
  24:13;40:14

**J**

**JACKSON (1)**
  9:21
**JESSICA (1)**
  8:23
**JOHN (5)**
  9:22;22:14;28:25;
  32:6,9
**JONATHAN (1)**
  8:15
**Judge (3)**
  15:8;25:18,18
**judge's (1)**
  23:7
**judgment (1)**
  46:13
**July (4)**
  41:1,21;43:23;44:1
**JUSTICE (1)**
  7:2
**justify (1)**
  46:25

**K**

**KCC's (1)**
  11:10
**keep (1)**
  43:13
**keeping (1)**
  43:2
**KEIP (9)**
  27:8,9,11;28:2;
  42:3,8,8,12;44:22
**KELLY (6)**

9:17;18:18;19:7,9,
13,17
**Kenneth (5)**
  4:6;7:16;15:6;
  39:23;46:6
**KERP (9)**
  27:8,9,11;28:2;
  42:3,8,8,13;44:22
**key (1)**
  14:10
**keys (1)**
  14:11
**kind (1)**
  41:20
**KIRKLAND (1)**
  8:2
**knew (1)**
  14:24
**knows (1)**
  18:8
**KPMG (1)**
  44:21
**Kramer (8)**
  4:3;7:11;39:3,4,21,
  24;40:8;46:6
**Kurtzman (7)**
  5:4;11:8,18

**L**

**language (6)**
  14:20,25;15:1;
  17:8;34:4,11
**large (1)**
  27:7,18;35:25
**Larren (7)**
  2:10,21;3:6,14,23;
  4:13;5:5
**LARRY (1)**
  8:24
**last (6)**
  21:3;33:9;36:20;
  39:2,7;40:14
**lawyers (3)**
  15:23;25:5,7
**least (1)**
  14:10
**leave (1)**
  10:20
**leaves (1)**
  24:11
**LEE (38)**
  40:12,12;41:14,16,
  19;42:4,10,22;43:6,
  13,16,19,21,24;44:2,
  8,13,18,23;45:1,4,6,9,
  12,16,19,22;46:1,4,8,
  22;48:7,16,17,18,25;
  49:1,4
**left (1)**
  19:17
**legal (8)**
  15:13;22:18,19;

24:24;32:11;37:17;
47:16,16
**Leland (3)**
  3:5;16:23;17:15
**lengthy (1)**
  47:24
**less (4)**
  22:18;28:17;36:24;
  37:24
**letter (7)**
  24:21;30:4,14;
  31:23,25;33:4;34:18
**letters (4)**
  30:10;32:13;33:7,
  20
**Levin (8)**
  4:3;7:11;39:3,4,21,
  24;40:8;46:7
**Lewis (2)**
  17:10,12
**Lexington (1)**
  8:4
**lift (1)**
  44:17
**lifting (1)**
  15:22
**light (1)**
  21:12
**likely (2)**
  26:12,18
**limits (1)**
  45:25
**lines (1)**
  48:1
**Lipps (3)**
  3:4;16:23;17:15
**listed (3)**
  10:14;24:12;44:10
**listening (2)**
  26:25;27:1
**Litigation (8)**
  3:5,13;15:21;16:1;
  17:2,3;25:2;29:10
**little (5)**
  15:17,17;17:23;
  21:12;36:11
**LLC (10)**
  2:11,22;3:7,15,24;
  4:14;5:4,6,21;10:3
**LLP (11)**
  2:9;3:5,12,22;4:4,
  12;7:11;8:2,10;9:2,
  11
**Local (5)**
  2:7;3:3,10,20;4:11
**long (1)**
  18:4
**look (3)**
  30:10,13;34:11
**looked (1)**
  24:18
**looking (1)**
  38:1

**Lorenzo (1)**
  10:5
**loses (1)**
  41:13
**lot (5)**
  15:10,20;44:9,10;
  47:14

**M**

**M-389 (1)**
  26:8
**makes (1)**
  21:14
**making (2)**
  10:7;24:8
**Mallet (2)**
  12:18,25
**Mallet-Prevost (1)**
  4:12
**MANNAL (1)**
  7:17
**many (5)**
  18:7;20:1;35:4,25;
  47:15
**Marinuzzi (56)**
  10:3,4,5;11:6,16,
  20;12:17,21;13:2;
  14:19,21,24;16:7,15,
  20,22;17:3,6,11,13,
  18;18:1,21;19:1,23;
  20:8;21:7;26:17,22;
  27:3,6,12,24;28:9,10,
  22,25;30:10,19,21;
  31:14,16;32:23;33:3;
  36:15,16,17;38:23,
  25;39:1,6,16,20,25;
  48:16;49:3
**marked (1)**
  10:25
**MASUMOTO (28)**
  7:8;13:15,16,17;
  14:17;19:5;20:13,16,
  17;21:1;23:1,6,18;
  24:16;25:21,23;28:1,
  3,5,7;33:21;34:21,22;
  35:18;37:11;38:24;
  39:17,18
**Masumoto's (1)**
  38:21
**matter (8)**
  10:13;30:16,16,17;
  36:13;45:20;47:23;
  48:11
**matters (22)**
  10:14,21;13:3;
  22:4,5;25:1;26:7,10;
  29:6,17;30:6,14,20,
  25;31:2,12;32:4,5;
  33:1;34:14;44:10,15
**May (17)**
  2:10;3:6,14;4:5;
  13:18,22;18:22;

12-12020-mg    Doc 821    Filed 07/16/12    Entered 07/18/12 11:43:35    Main Document
In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.
Pg 58 of 62
Case No. 12-12020(MG)
July 13, 2012

23:19;25:18,18;26:5;
31:17,20;33:21;34:4;
44:18;45:23
**Maybe (4)**
19:4;21:24;34:2;
47:22
**MEAGHER (1)**
8:10
**mean (13)**
15:16;21:13;22:22;
25:4;26:18,20;30:10,
14;31:4,8;33:9;35:4;
44:9
**meaning (1)**
14:12
**meantime (1)**
41:10
**measure (1)**
27:7
**meet (1)**
46:17
**mention (1)**
20:20
**Mercer (29)**
2:19;9:3,22;20:10,
18;21:15;22:4,15,18,
20;24:20;25:11;
26:18;28:12,15,24;
29:4;31:16,20;32:3;
33:9,23;34:13,19;
35:10;36:20;37:4,6,
16
**Mercer's (1)**
22:17
**Mercer's (2)**
28:1;37:22
**MF (1)**
42:2
**might (9)**
18:8;19:2;24:5;
27:4;37:14;38:5,9;
42:14;47:4
**mind (2)**
17:1;29:12
**mindful (3)**
28:19;34:12;37:10
**mine (1)**
42:4
**minimize (1)**
27:15
**Minneapolis (1)**
9:15
**minutes (1)**
21:2
**missed (2)**
19:4;39:6
**MN (1)**
9:15
**Moelis (1)**
10:16
**moment (1)**
13:21
**Monday (1)**

41:4
**monitor (1)**
16:5
**month (2)**
12:2;48:22
**monthly (1)**
35:21
**more (11)**
17:23;21:21;22:21,
24;28:18;30:17;
31:13;38:15;46:11;
47:15,15
**morning (10)**
10:4,8;13:16;
14:22;15:6;20:16;
21:25;39:23;40:12;
42:3
**Morrison (12)**
3:21;10:5;13:3;
15:4;16:12,17;17:7;
18:7,12,17;40:13;
48:18
**Mortgage (1)**
8:19
**Mosle (1)**
4:12
**most (2)**
14:13;23:20
**mostly (1)**
10:10
**Motion (20)**
2:2;4:16,21;10:21;
11:21,23;12:5,21;
27:13;40:6,15,20,22,
23;41:6;42:3,8;
46:16,20,25
**motions (1)**
44:11
**move (1)**
10:9
**moved (1)**
44:16
**much (10)**
18:5,24;19:19;
20:8;27:7,8;42:17;
45:7;49:4,6
**myself (1)**
40:1

**N**

**Naftalis (2)**
4:3;7:11
**narrow (1)**
13:21
**Nashelsky (7)**
2:11,21;3:6,14,23;
4:13;5:6
**Nationstar (1)**
8:19
**nature (4)**
16:4;33:11;36:2,3
**necessarily (1)**

43:2
**necessary (8)**
24:9,10,22;41:18;
44:4,14,22;47:20
**need (10)**
15:10;18:13,14;
20:2;28:7;34:5;41:9,
22,24;47:24
**needing (1)**
33:12
**needs (1)**
25:11
**negotiate (3)**
14:20;15:2;26:19
**negotiated (1)**
26:14
**negotiating (5)**
13:8;26:9;31:23,
25;32:25
**negotiation (2)**
32:13;33:4
**negotiations (1)**
43:16
**neutral (1)**
43:14
**New (5)**
5:23;7:6,14;8:5,13;
31:3
**next (6)**
11:6,20;12:17;
16:22;41:22;48:2
**nobody (2)**
26:18;41:13
**nonbankruptcy (10)**
22:5;26:7,10;
29:17;30:6,14,17;
31:12;32:5;33:1
**normal (1)**
26:2
**note (1)**
10:14
**noted (2)**
32:13;39:13
**notice (1)**
24:5
**noticing (1)**
11:11
**noting (1)**
15:12
**notwithstanding (1)**
36:20
**number (3)**
10:3,10;15:25
**numbers (1)**
12:1
**Nunc (11)**
2:10,15,20;3:5,13,
22;4:5,13,24;5:5;
11:9
**NY (5)**
5:23;7:6,14;8:5,13
**NYHAN (1)**
8:24

**O**

**object (1)**
42:7
**objected (2)**
21:18;42:9
**objecting (1)**
25:21
**objection (19)**
11:23;13:4,14;
17:6,12;20:10,14;
21:11,11,15,21;
22:10,25;23:3,15;
31:6;36:22;39:10,12
**objections (4)**
11:16;12:21;20:19;
40:5
**objects (1)**
27:10
**obligations (2)**
47:6,6
**obtained (1)**
18:14
**obviously (8)**
21:11;27:17;35:6;
36:18;37:2;46:23;
47:17,20
**occurred (1)**
24:12
**occurs (1)**
33:17
**o'clock (2)**
42:5,6
**off (1)**
35:13
**Office (4)**
7:3;13:17;20:17;
21:17
**Official (3)**
4:4,6;7:12
**One (21)**
8:20;10:11;11:9;
12:5;13:19;14:11,11;
15:16;16:25;17:6;
18:20;21:7;22:12,25;
25:18;26:1;33:9;
40:1,23;46:11;48:17
**O'NEILL (1)**
7:19
**ones (1)**
16:10;23:25
**ongoing (2)**
16:1;17:4
**only (6)**
22:19;26:5;30:7;
31:24;34:24;36:5
**operations (1)**
47:2
operations@escribersnet (1)
5:25
**opinion (3)**
21:24;22:2;30:11

**opposed (1)**
24:20
**opposition (1)**
27:8
**Order (30)**
2:13,18;3:20;4:3,9,
16,21;10:13,24,25;
11:4,10,12,13;12:4,
13;13:8,25;14:6,18,
20;15:22;16:18;
17:17;26:8;30:12;
34:24;40:14,16;
47:23
**ordinarily (1)**
45:19
**Ordinary (3)**
2:4;4:24;12:15
**ordinary-course (2)**
11:22;12:10
**original (1)**
34:17
**Orrick (4)**
3:11;19:24;20:1,5
**others (1)**
18:23
**otherwise (1)**
48:19
**ought (2)**
20:24;25:10
**out (9)**
12:9;14:5;28:23;
34:19;41:5;43:4,23;
48:6,9
**outset (1)**
24:4
**outside (26)**
22:1,18;23:9,13;
21;24:3;29:5,10,16;
30:18,19,24;31:1,21,
21;32:10;33:10,14;
34:1,4,5,6,14,25;
37:21,22
**outstanding (1)**
23:20
**over (5)**
12:3;18:7;20:13;
21:2;48:22
**overbilling (1)**
21:5
**overhead (12)**
22:8;23:3,10;
29:14;31:11;34:23;
35:1,16;36:19,19,23,
24
**overruled (1)**
17:12
**own (1)**
37:21

**P**

**page (1)**
24:21

12-12020-mg    Doc 821    Filed 07/16/12    Entered 07/18/12 11:43:35    Main Document
Pg 59 of 62

In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020(MG)
July 13, 2012

**paid (2)**
12:9,13
**papers (2)**
21:8;45:21
**paragraph (4)**
22:15,17;33:22;
34:16
**parameters (1)**
23:7
**Part (12)**
15:20;18:9;21:24;
22:7;23:2,3,10;24:9;
35:3,16;43:3;45:24
**participation (1)**
25:1
**particular (2)**
11:24;38:4
**particularly (3)**
35:10,11,20
**parties (9)**
15:12;24:5;36:4;
40:20;41:19;43:14;
45:14;46:16,24
**past (1)**
23:6
**Pause (1)**
37:5
**Payment (3)**
4:23;11:22;20:11
**payments (1)**
47:3
**Penina (1)**
5:20
**people (2)**
28:4;35:4
**per (2)**
12:2;36:3
**Perform (1)**
2:3
**performed (1)**
22:20
**performing (1)**
26:16
**permissible (1)**
24:1
**permitted (1)**
24:3
**persuasive (1)**
43:3
**pertains (1)**
13:5
**PETERS (3)**
9:2;24:14;28:15
**Petition (8)**
2:16,20;3:23;4:13,
24;5:5;18:2;47:6
**phone (3)**
26:23;28:12;29:1
**picked (1)**
11:12
**place (2)**
46:15;48:8
**plan (2)**

18:10;47:5
**PLC (1)**
8:11
**Please (1)**
10:2
**podium (3)**
20:13;39:4,21
**point (10)**
13:12,24;14:25;
15:9;24:4;31:18;
32:2;33:9;47:25;
48:18
**pointing (1)**
19:5
**portion (1)**
24:19
**possibility (1)**
47:21
**possible (7)**
10:9;14:8,15;
41:25;44:13;45:1,23
**post-petition (1)**
47:6
**potential (3)**
14:9;31:25;37:13
**Potentially (1)**
46:12
**pre- (1)**
47:5
**preliminary (1)**
11:21
**preparation (8)**
23:19;24:2;25:5,
13,16;38:18;45:7,25
**prepare (2)**
23:21;27:21
**prepared (3)**
43:5,8;47:25
**pre-petition (2)**
18:23;19:14
**PRESENT (2)**
9:20;40:1
**presented (1)**
24:8
**presents (1)**
38:8
**pressing (1)**
46:18
**pressure (1)**
42:24
**presumptively (1)**
36:11
**preview (2)**
43:9;45:13
**previously (1)**
33:22
**principal (1)**
43:17
**principals (2)**
40:22;46:17
**prior (1)**
45:10
**Pro (12)**

2:10,15,20;3:6,13,
22;4:5,13,24;5:5;
9:21;11:9
**probably (3)**
23:19;47:14;48:3
**problem (3)**
31:10;43:4;45:5
**problems (1)**
48:8
**Procedure (1)**
4:2
**Procedures (1)**
4:17
**proceed (2)**
10:13;47:25
**proceeding (1)**
32:5
**proceedings (3)**
18:4;34:20;49:7
**process (6)**
18:10;32:14,14,18;
41:12;42:13
**productions (1)**
41:11
**professional (11)**
22:3;25:25;26:8;
32:24;35:9,17,24;
36:9,10,11;38:6
**professionally (1)**
40:21
**Professionals (26)**
4:19,23;10:19;
11:22;12:7,11,15;
13:6,7,12,23;14:15;
15:11;16:3;17:25;
25:6;26:5,15;35:20,
22;36:2,8,13;37:16,
18;46:15
**professional's (2)**
26:13;37:13
**progress (4)**
18:10,15;47:21,22
**prohibited (1)**
23:14
**project (2)**
14:7,14
**proliferation (1)**
16:3
**promise (1)**
10:9
**proposal (1)**
40:25
**Proposed (6)**
9:12;10:5;11:25;
15:7;16:18;39:24
**prosecute (1)**
20:14
**prospectively (1)**
15:15
**protracted (1)**
37:11
**provide (2)**
27:14;31:16

**provided (4)**
11:12;13:11,13,22
**provides (1)**
13:12
**provision (7)**
13:20;21:19;32:16;
33:16,18,19;48:19
**provisions (3)**
25:24,25;34:18
**pure (1)**
30:15
**purposes (1)**
36:23
**Pursuant (4)**
3:18;4:1,16;5:2
**pursue (1)**
47:10
**put (3)**
27:5;43:25;44:24

**Q**

**quarter (1)**
39:11
**quarter-hour (1)**
20:21
**quick (1)**
44:18
**quickly (1)**
10:9
**quite (4)**
14:13;42:20,23;
47:12
**quoted (1)**
33:22

**R**

**RACHAEL (1)**
7:18
**raise (2)**
16:9;49:3
**raised (8)**
12:6;22:6,9,10,25;
23:4;31:6;38:21
**raises (2)**
35:15;37:11
**raising (1)**
13:4
**rate (1)**
35:11
**rates (4)**
31:11,12;32:10;
34:14
**RE (1)**
2:2
**reach (1)**
41:20
**react (1)**
46:24
**read (2)**
21:10;36:18
**real (1)**

47:20
**really (6)**
13:11;14:16;15:13;
27:15;29:13;33:9
**reason (1)**
42:17
**reasonable (3)**
25:9;26:6,12
**reasonableness (2)**
24:18;38:20
**reasons (2)**
42:15,16
**receive (3)**
29:6,7,9,15;40:4
**received (3)**
24:13;31:1;41:11
**receives (3)**
22:16;29:4;33:23
**record (2)**
10:5;13:18
**records (1)**
20:22;23:14
**refer (1)**
35:5
**referring (1)**
26:8
**regard (1)**
40:24
**regarding (6)**
12:6;20:11;39:10;
40:19;41:6;42:12
**regularly (1)**
29:6,15
**regulated (1)**
42:19
**regulator (1)**
42:22
**reimbursable (3)**
26:14;37:10;38:6
**reimburse (2)**
27:1;29:16
**reimbursed (3)**
30:12,18;32:11
**Reimbursement (19)**
4:18;10:22;21:19;
22:1,16,19;23:22;
26:11;28:20;29:4,7,
9;31:1;32:16;33:24,
25;37:19;38:11;
39:14
**related (2)**
23:20;24:23
**relating (1)**
31:22
**relationship (1)**
26:12
**relationships (2)**
36:4;47:1
**relief (1)**
44:11
**rely (1)**
39:25
**remained (1)**

12-12020-mg    Doc 821    Filed 07/16/12    Entered 07/18/12 11:43:35    Main Document
In the Matter of:                                    Pg 60 of 62                                    Case No. 12-12020(MG)
RESIDENTIAL CAPITAL, LLC, et al.                                                            July 13, 2012

20:20

**remaining (1)**
21:7

**remains (1)**
18:25

**report (1)**
41:21

**represent (2)**
28:4,8

**representation (2)**
15:25;40:3

**representing (4)**
15:23;17:1;25:25;
26:15

**request (6)**
12:2;25:1;28:19;
29:6;40:6;41:11

**requested (4)**
10:23;11:9;24:13,
23

**requesting (2)**
11:21;41:17

**requests (4)**
22:15;25:3;29:4;
33:23

**require (2)**
43:11;46:20

**required (3)**
24:25;37:12;45:8

**requires (5)**
16:4,5;30:16;
37:15;44:5

**requiring (1)**
45:20

**reread (1)**
21:25

**ResCap (5)**
15:19,23;42:3;
44:15;47:2

**reservation (2)**
15:8;21:18

**reserve (1)**
25:12

**Residential (8)**
2:11,21;3:7,15,24;
4:14;5:6;10:3

**resolution (4)**
17:9,21;41:20;47:9

**resolve (1)**
18:9

**resolved (6)**
13:13;15:1;20:19;
21:6;34:23;47:23

**respect (23)**
11:3,17,24;12:10,
14,24;13:20;14:6;
15:4,9;17:15;18:11;
19:20;20:5,18;24:6;
25:23;26:1;29:14;
31:23;37:3;39:13;
40:7

**respectfully (1)**
40:6

**respects (1)**
47:15

**respond (1)**
36:17

**responding (1)**
25:2

**response (2)**
27:6;48:3

**responsible (1)**
40:21

**restrictions (1)**
26:3

**Retain (14)**
2:8;3:4,11;4:3;5:4;
11:7;12:18;13:3;
16:23;17:19;19:24;
20:9;39:3,8

**retained (11)**
11:10;14:3;18:3;
23:24;32:14,19;
33:12;35:7,8,23;36:5

**retainer (4)**
11:11,12;18:23;
19:16

**retainers (3)**
12:8,11,12

**retaining (1)**
25:8

**Retention (64)**
2:14,19;3:21;4:11;
10:11,15;11:18;
12:15,25;15:4,24;
16:17;17:15;19:21;
20:5;21:17,20;22:2,6,
11;24:8,24;26:9,21;
27:22,24;28:11,16,
17,19;29:13,15,16;
30:5,7,13,16,20;31:3,
6,22,24;32:25;33:5,6,
10,13,14;34:7,24;
37:4,6,9,12,16;38:4,
12,17;39:2,7,15;40:2,
8;44:21

**retentions (3)**
10:19;12:7;30:25

**revealing (1)**
38:15

**review (13)**
14:9,12,16;16:18;
23:13;24:11;25:8,12;
30:3,5;37:7,23;47:11

**reviewed (1)**
15:24;24:17;40:4

**reviewing (2)**
17:16;38:20

**revisiting (1)**
11:25

**right (31)**
11:5;12:16;13:1;
14:19,25;15:3;16:16,
17;17:5,16;19:12,17,
19,22;20:7;23:17;
25:12;26:23;27:22;

28:10;29:2;34:5,10;
39:7,16,19;40:9;
42:14;44:16;49:2,5

**rights (5)**
15:8;21:18;22:16;
29:5;33:24

**RINGER (1)**
7:18

**round (1)**
21:3

**rounding (1)**
21:2

**Rubenstein (4)**
2:14;9:23;39:5,9

**Rule (10)**
2:7,7;3:3,3,10,10;
4:2,10,11,22

**ruled (1)**
36:20

**Rules (2)**
3:19,20

**running (1)**
26:20

**S**

**same (13)**
17:7,9,21;22:17;
24:15,16;31:11,12;
32:10;34:13;36:24;
41:24;45:5

**satisfied (2)**
31:8;34:22

**satisfies (1)**
13:9

**satisfy (1)**
39:12

**save (1)**
28:23

**saying (3)**
34:3;37:9;38:10

**schedule (4)**
41:8,14;43:7;48:7

**scheduled (2)**
42:5;48:2

**scope (3)**
13:23,24;14:2

**scrubbing (1)**
11:25

**Se (2)**
9:21;36:3

**seated (1)**
10:2

**second (2)**
29:21;43:18

**Section (7)**
2:6;3:2,9,18;5:2;
17:21;26:16

**Sections (4)**
4:1,10,17,22

**Securitization (4)**
2:9;3:12;17:20;
20:1

**seek (3)**
22:19;28:20,21

**seeking (3)**
32:16;35:7;38:8

**seem (1)**
37:17

**seems (6)**
20:23;21:4;23:1;
30:17;33:24;36:5

**selected (1)**
35:6

**sense (2)**
21:13;47:13

**sensitive (1)**
43:16

**separate (2)**
13:25;32:14

**series (2)**
22:2,8

**serious (1)**
40:18

**services (10)**
13:13,22,23;14:2,
4;23:24;24:1,6,23;
32:1

**Servicing (2)**
2:3;40:16

**set (4)**
13:11;14:14;41:5;
45:2

**several (1)**
20:18

**shared (1)**
41:4

**shows (1)**
38:13

**side (4)**
12:8;15:13;16:8;
39:8

**SIDLEY (1)**
8:18

**signed (1)**
30:5

**significant (3)**
46:14,21,22

**significantly (1)**
47:12

**similar (4)**
15:9;22:16;29:4;
33:24

**Similarly (1)**
35:7

**simplest (1)**
19:25

**simply (2)**
31:4;37:9

**situation (1)**
22:24

**Sixth (1)**
9:13

**SKADDEN (1)**
8:10

**skip (1)**

10:18

**SLATE (1)**
8:10

**slip (1)**
42:17

**small (2)**
24:18;31:18

**smooth (1)**
18:16

**solely (3)**
21:25;22:20;24:20

**someone (1)**
28:24

**sometimes (1)**
35:11

**somewhat (1)**
20:23

**somewhere (1)**
34:12

**sorry (1)**
48:16

**sort (2)**
20:20;35:13

**sought (1)**
25:13

**source (1)**
21:19

**South (3)**
8:20;9:4,13

**Southern (1)**
31:3

**Special (7)**
2:9;3:5,12;14:7;
16:23;17:20;32:17

**specialists (1)**
30:2

**specific (3)**
18:19;25:13;48:9

**specifically (6)**
16:25;21:18;22:6;
28:11;29:14;32:23

**spent (1)**
28:20

**Square (1)**
8:12

**staff (1)**
10:8

**stage (5)**
22:11,11;23:16,24;
37:24

**stand (2)**
14:20;48:12

**standing (1)**
31:9

**standpoint (5)**
14:11,12;35:2,19;
36:12

**stands (1)**
48:11

**start (2)**
15:18;44:14

**state (1)**
13:18

In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020(MG)
July 13, 2012

**stated (1)**
34:2
**statement (1)**
24:14
**States (4)**
11:23;13:9,17;
20:17
**Status (7)**
2:2;10:12,18;
40:15;41:1;43:25;
46:14
**stay (2)**
15:22;44:11
**stayed (1)**
18:8
**stays (1)**
44:17
**still (3)**
22:12;23:15;33:19
**stop (1)**
43:18
**stopped (1)**
26:20
**stops (1)**
16:8
**story (1)**
21:23
**Street (3)**
5:22;7:4;9:13
**strictly (2)**
35:11,17
**structure (3)**
32:3;34:17;35:15
**subject (9)**
13:8;15:1;16:18;
17:16;20:12;23:15;
26:2;38:19;40:14
**submission (1)**
46:22
**submit (1)**
47:23
**submitted (3)**
16:19;21:23;40:2
**subpoenas (1)**
25:2
**subsequent (1)**
24:24
**subsequently (1)**
38:3
**subservicing (1)**
10:13
**sufficiently (2)**
38:14;46:10
**suggest (2)**
27:19;33:25
**Suite (3)**
5:22;9:5,14
**sun (1)**
42:23
**supplement (2)**
20:22;33:22
**supplemental (11)**
13:11;14:3;19:3,9;

21:23;22:13,14;
28:15;29:3;30:23;
41:3
**support (1)**
15:18
**sure (4)**
16:11;18:21;27:1;
43:8
**surprise (1)**
41:13
**Sutcliffe (3)**
3:12;19:25;20:5
**system (1)**
20:24

**T**

**talk (4)**
13:5;40:22;44:4;
45:11
**talking (2)**
27:22;28:11
**TELEPHONICALLY (5)**
8:23,24;9:8,22,23
**template (1)**
13:10
**ten (1)**
21:3
**tentatively (1)**
45:2
**tenths (3)**
20:25;21:4;39:11
**terms (6)**
14:20;17:24;20:22;
34:19;47:3,5
**TESSLER (1)**
9:23
**testimony (1)**
25:3
**theory (1)**
26:22
**therefore (1)**
37:17
**there'll (1)**
45:12
**thinking (1)**
44:15
**THOMAS (1)**
9:17
**thought (3)**
15:11;19:2;21:12
**Times (2)**
8:12;35:25
**today (5)**
18:18;27:2;28:18;
39:2;45:14
**today's (1)**
46:13
**Tom (1)**
18:18
**took (3)**
26:19;36:18;46:15
**total (1)**

26:17
**town (1)**
43:4
**Transactional (1)**
3:13
**Transcribed (1)**
5:20
**transition (1)**
18:16
**travel (1)**
24:23
**treated (1)**
23:10
**triggered (3)**
34:9,10,11
**triggering (1)**
32:22
**Trustee (18)**
7:3;11:24;12:2;
13:4,9,17;16:8;17:8,
21;20:11,17;21:17;
23:4;27:10;39:10;
40:4;42:7,14
**Trustee's (1)**
13:14
**try (2)**
27:15;43:13
**trying (1)**
14:20
**Tunc (11)**
2:10,16,20;3:6,14,
22;4:5,13,24;5:5;
11:9
**turn (1)**
20:13
**two (1)**
20:20
**types (2)**
15:22;24:6
**typically (1)**
32:1

**U**

**unable (1)**
41:20
**uncontested (2)**
10:11,21
**undefined (1)**
13:22
**Under (17)**
2:3,6;3:2,9;4:9,21;
10:21;11:7;13:2;
16:24;17:21;19:25;
24:10;25:24;36:5;
42:22,24
**Understood (1)**
35:18
**undertake (1)**
36:5
**uniform (2)**
14:8,14
**unintentionally (1)**

11:13
**unique (3)**
32:15;33:11;36:9
**United (4)**
11:23;13:9,17;
20:17
**Unless (2)**
12:22;40:5
**unnecessary (1)**
16:6
**Unsecured (2)**
4:4,7
**unusual (1)**
15:17
**up (4)**
11:12;21:3;26:19;
38:13
**upon (2)**
18:4;48:10
**upset (2)**
43:20;45:17
**USC (1)**
5:2
**use (10)**
23:13;29:16;30:19,
24;31:12;34:6;37:18,
20;47:10;48:3
**used (1)**
25:7
**useful (2)**
47:8;48:3
**uses (1)**
31:21
**using (3)**
31:11;37:22;47:19
**usual (2)**
15:20,20
**usually (1)**
25:24
**Utilized (1)**
4:23

**V**

**various (2)**
15:22;42:15
**versus (3)**
32:5;37:1,21
**virtue (1)**
48:20

**W**

**Wacker (1)**
9:4
**walk (1)**
10:25
**wants (1)**
49:2
**watch (1)**
43:2
**watching (2)**
42:19,23

**way (2)**
17:7;19:25
**week (3)**
43:4;45:10,21,24,
25;46:15;48:2,4
**weekend (1)**
49:6
**West (1)**
5:22
**what's (3)**
17:24;18:24;31:7
**Whereupon (1)**
49:7
**Whitehall (1)**
7:4
**Whitney (9)**
2:8;9:11;17:20;
18:3,11,16,23;19:2,
21
**whole (1)**
22:8
**who's (1)**
17:24
**wish (11)**
11:3,17;12:14,24;
15:3;16:16;17:14;
19:20;20:4;37:3;40:7
**within (6)**
12:2;13:23;14:2,
18;23:7,14
**without (2)**
38:1;47:13,24
**witnesses (1)**
41:23
**Wolicki (1)**
5:20
**work (22)**
12:1;14:5;15:12;
18:5,5,6,6,7;24:19;
26:16;27:7,12,14;
30:17;31:16;32:12;
37:12;38:7;42:10;
43:23;48:6,24
**working (2)**
41:8;48:9
**worth (2)**
15:11;19:14
**worthwhile (1)**
47:9
**wrote (1)**
20:1

**Y**

**year (1)**
36:25
**years (1)**
17:4
**York (6)**
5:23;7:6,14;8:5,13;
31:4

12-12020-mg    Doc 821    Filed 07/16/12    Entered 07/18/12 11:43:35    Main Document
Pg 62 of 62

In the Matter of:
RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020(MG)
July 13, 2012

**1**

**10004 (1)**
7:6
**10022 (1)**
8:5
**10036 (2)**
7:14;8:13
**10040 (1)**
5:23
**105a (2)**
4:17,22
**10th (1)**
44:25
**11 (3)**
5:2;32:4;47:4
**11:04 (1)**
49:7
**1103 (1)**
4:1
**1177 (1)**
7:13
**12-12020 (1)**
10:3
**14 (3)**
2:10;3:6,14
**14th (5)**
44:7,10,13,16,17
**15 (1)**
34:16
**1500 (1)**
9:14
**16 (1)**
4:5
**192nd (1)**
5:22
**1st (1)**
48:4

**2**

**2 (2)**
42:5,6
**2012 (4)**
2:10;3:6,14;4:5
**2014 (4)**
3:19;4:3,22;5:3
**2014-1 (5)**
2:8;3:4,11,20;4:11
**2014a (4)**
2:7;3:3,10;4:10
**2016 (1)**
3:19
**2016-1 (1)**
3:20
**208 (2)**
26:5;32:24
**21st (1)**
7:5
**22,000 (1)**
19:17
**227,000 (1)**

19:13
**24th (14)**
10:18;41:1,21;
43:23;44:1;45:11,13;
46:3;47:10,19,21;
48:8,10,13
**250,000 (2)**
18:24;19:16
**2nd (1)**
48:4

**3**

**3 (1)**
24:21
**3000 (1)**
9:5
**311 (1)**
9:4
**327 (4)**
4:22;16:24;22:13;
26:16
**327a (5)**
3:19;4:10;5:3;11:8,
13
**327e (8)**
2:6;3:2,9;13:6,12;
17:8,21;19:25
**328 (1)**
4:1
**328a (1)**
4:10
**33 (1)**
7:4
**330 (1)**
4:22
**331 (1)**
4:17

**4**

**456 (2)**
26:4;32:24
**47 (1)**
2:2

**5**

**50 (1)**
9:13
**50,000 (1)**
12:2
**500,000 (1)**
12:3
**506 (1)**
3:18
**508 (1)**
3:2
**509 (1)**
2:6
**510 (1)**
3:9
**511 (1)**

2:18
**512 (1)**
2:13
**513 (1)**
4:16
**514 (1)**
4:21
**527 (1)**
4:9
**528 (1)**
4:1
**531 (1)**
5:2
**55402 (1)**
9:15

**6**

**6,000 (6)**
23:25;27:20;28:17;
31:8;37:25;38:1
**601 (1)**
8:4
**60603 (1)**
8:21
**60606 (1)**
9:6

**7**

**700 (1)**
5:22
**75,000 (1)**
11:25
**750 (1)**
11:25

**8**

**8 (3)**
22:15,17;33:22
**8th (7)**
41:2,10,16,17,25;
42:17;48:5

**9**

**90 (1)**
2:2
**973406-2250 (1)**
5:24
**9th (4)**
44:19,20;45:2;48:5