ANGLIN, FLEWELLING, RASMUSSEN,
  CAMPBELL & TRYTTEN LLP
199 S. Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel: (626) 535-1900
Fax: (626) 577-7764
Jeremy E. Shulman
*Attorneys for Movant*
*Wells Fargo Bank, N.A., successor*
*by merger with Wells Fargo Bank*
*Southwest, N.A., f/k/a Wachovia Mortgage,*
*FSB, f/k/a World Savings Bank, FSB*
*("Wells Fargo")*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------ | Case No. 12-12020 (MG) |
| In re: ) | |
| ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al.</u>, ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | (Re Debtor Executive Trustee Services, LLC, |
| ------------------------------------------------------ | Case No. 12-12028) |

**REPLY TO DEBTORS' OBJECTION TO MOTION OF WELLS FARGO BANK, N.A. FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT NON-BANKRUPTCY FORUM ACTION AGAINST DEBTOR EXECUTIVE TRUSTEE SERVICES, LLC, OR, TO PERMIT WELL FARGO BANK, N.A. TO CONDUCT DISCOVERY AND TO ISSUE <u>TRIAL SUBPOENAS DIRECTED AT EXECUTIVE TRUSTEE SERVICES, LLC</u>**

95451/000660/00433618-1

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  AT MINIMUM, THE COURT SHOULD GRANT WELLS FARGO'S
REQUEST TO CONDUCT DISCOVERY NECESSARY TO DEFEND
ITSELF IN THE ACTION. .....................................................................................2

III.  CAUSE EXISTS FOR RELIEF FROM STAY AUTHORIZING
CONTINUED PROSECUTION OF THE CROSS-COMPLAINT AGAINST
DEBTOR.................................................................................................................6

   Sonnax Factor No. 1:  Whether Relief will result in Partial or Complete
      Resolution of the Action. ........................................................................6

   Sonnax Factor No. 2:  Whether lifting of the Automatic Stay will Interfere
      with Debtor's Chapter 11 Case................................................................6

   Sonnax Factor No. 4:  Whether a Special Tribunal has been Created to Hear
      any of the Claims. ....................................................................................8

   Sonnax Factor No. 5:  Whether an Insurer Has Assumed Responsibility for
      the Action................................................................................................10

   Sonnax Factor No. 6:  Whether the Action Primarily Involves Third Parties. .............10

   Sonnax Factor No. 7:  Whether litigation of the Action would prejudice the
      interests of other Creditors....................................................................11

   Sonnax Factor No. 10 and 11:  Judicial Economy and Whether the Parties are
      Ready for Trial........................................................................................11

   Sonnax Factor No. 12:  Impact of the Stay on the Parties and the Balance of
      Harms.......................................................................................................12

IV.  RELIEF FROM THE 14-DAY STAY IMPOSED BY BANKRUPTCY
RULE 4001(a)(3) SHOULD BE GRANTED...........................................................12

V.  CONCLUSION.......................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re 360networks (USA), Inc.*,
   282 B.R. 756 (Bankr. S.D.N.Y. 2001)...................................................................................12

*In re Bally Total Fitness of Greater N.Y., Inc.*,
   402 B.R. 616 (Bankr. S.D.N.Y. 2009)..................................................................8, 9, 10, 11

*In re Bison Resources, Inc.*,
   230 B.R. ..................................................................................................................................10

*In re G.S. Distribution, Inc.*,
   331 B.R. 552 (Bankr. S.D.N.Y. 2005).....................................................................................8

*In re Johns-Manville Corp.*,
   41 B.R. 926 (S.D.N.Y. 1984)....................................................................................................4

*In re Miller*,
   262 B.R. 499 (9th Cir. BAP 2001)....................................................................................3, 4, 5

*In re Project Orange Assocs., LLC*,
   432 B.R. 89 (Bankr. S.D. NY 2010)....................................................................................9, 10

*In re Traylor*,
   94 B.R. 292 (Bankr. E.D.N.Y. 1989)........................................................................................4

*Signature Bank v. Ahava Food Corp.*,
   2008 U.S. Dist. LEXIS 67464 (S.D.N.Y. 2008)......................................................................4

*Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
   907 F.2d 1280 (2d Cir. 1990)................................................................................................5, 9

**FEDERAL STATUTES**

11 U.S.C. § 362.................................................................................................................................9

11 U.S.C. § 362(a) .......................................................................................................................2, 4

11 U.S.C. § 362(d)............................................................................................................................5

**RULES**

Fed. R. Civ. P. 23..............................................................................................................................9

Fed. R. Civ. P. 4001(a)(3)........................................................................................................12

**OTHER AUTHORITIES**

H.R. Rep. No. 95-595, at 341 (1977)........................................................................................9

S. Rep. No. 95-989 (1978) ........................................................................................................9

U.S. Code. Cong. & Admin. News 1978, at 5787, 5836 ...........................................................9

U.S. Code Cong. & Admin. News 1978, at 5963, 6297 ............................................................9

## I.    INTRODUCTION

Movant Wells Fargo Bank, N.A., successor, by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB ("Wells Fargo" and "Movant") hereby replies to Debtors' Objection (the "Objection") to Wells Fargo's motion for relief from stay seeking continued prosecution of its cross-complaint against debtor Executive Trustee Services, LLC ("ETS" or "Debtor") in the action entitled *Franciska Susilo v. Wells Fargo Bank, N.A.*, et al., Case No. 2:11-cv-1814-CAS (PJW) (the "Action") and alternative relief to permit Wells Fargo to conduct discovery directed at ETS and to permit Movant to issue trial subpoenas requiring certain officers, directors, and employees to appear and to produce documents at trial in the Action.[1]

In opposition, Debtors' claim that granting relief from stay, including the alternative relief of permitting discovery, threatens Debtors' ability to reorganize.[2] Debtors' position is unsupportable. The Supplemental Servicing Order issued July 13, 2012 (Docket No. 774, ¶ 14) permits the continued prosecution of two-thirds of ResCap's pending litigation and contested foreclosure and bankruptcy matters. (Scoliard Decl. ¶ 4.) In addition, Debtors are engaged in

---

[1] ETS is an affiliate of Residential Capital, LLC ("ResCap"). ResCap is the parent or indirect parent of the other debtors and debtors in possession in the above-entitled Chapter 11 Case (collectively "Debtors") (Scoliard Decl. ¶ 1.)

[2] The Objection relies on the declaration of Jennifer Scoliard, in-house bankruptcy counsel for Residential Capital, LLC ("ResCap"). Ms. Scoliard purports to testify concerning the Action, yet it is apparent that her day-to-day responsibilities do not in any way involve management of outside litigation involving the types of claims asserted in the Action. Ms. Scoliard indicates that she is "In-House Bankruptcy Counsel at ResCap . . . responsible for the management of all non-routine bankruptcy litigation nationwide, including contested bankruptcy matters." (Scoliard Decl. ¶ 2.) The Action, on the other hand, has nothing to do with bankruptcy litigation. The Action is pending in the United States District Court for the Central District of California and involves certain lender liability claims, including borrower's claimed attempts at reinstatement. Ms. Scoliard's knowledge of non-bankruptcy forum litigation is apparently derived from her "discussions with other members of the Legal Department". (Scoliard Decl. ¶ 3.) It is submitted that the members of the Legal Department who are directly involved in non-bankruptcy forum litigation are more competent to testify concerning the manner in which Debtors handle outside litigation, including litigation involving one of ResCap's subsidiaries – ETS.

"tens of thousands of foreclosure actions and borrower bankruptcies" throughout the fifty states. (Scoliard Decl. ¶ 4.)  With this volume of litigation, it is inconceivable that the continued prosecution of the subject lender liability action - or the alternative relief permitting discovery directed at Debtor – will tip the scales and prevent Debtors from moving forward with a successful reorganization.  Further, the Supplemental Servicing Order contemplates that motions for relief from stay will be  brought seeking to prosecute other litigation matters not exempted from the automatic stay in this bankruptcy.  (Supplemental Servicing Order, ¶ 14(f).[3])

The balance of harms favors granting relief from stay:  Movant will be prejudiced in its ability to fully defend the Action without the benefit of discovery regarding plaintiff's communications with Debtor concerning plaintiff's attempts at loan reinstatement.  Debtor is in sole possession of this information.  Movant should be permitted to continue prosecution of its cross-complaint of Debtor to obtain needed discovery and to compel Debtor's participation at trial.  Alternatively, the court should grant relief to permit Movant to conduct discovery and to issue trial subpoenas directed at certain employees of Debtor.

## II. AT MINIMUM, THE COURT SHOULD GRANT WELLS FARGO'S REQUEST TO CONDUCT DISCOVERY NECESSARY TO DEFEND ITSELF IN THE ACTION.

By this motion, Wells Fargo seeks relief to conduct discovery of ETS as a fact witness. In response, ETS offers little-to-no opposition to this portion of the motion.  In sum, Wells Fargo seeks to conduct discovery of ETS that is absolutely necessary for Wells Fargo to defend itself in the Action.  With ETS in sole control of critical information and witnesses, Wells Fargo will be put in the impossible position of being unable to rebut certain facts alleged by plaintiff Susilo unless ETS, at minimum, participates as a fact witness.

---

[3] The Supplemental Servicing Order, ¶ 14(f) provides:  "nothing set forth herein shall preclude or limit any Interested Party [defined to include lienholders such as Movant] from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest." (Docket No. 774, at p. 9.)

In connection with the foreclosure sale at issue in the Action, ETS served as foreclosure trustee for Wells Fargo.  In that capacity, ETS both engaged in key communications with the borrower and her representatives regarding loan reinstatement.  Also, ETS was solely responsible for pre-foreclosure notices including the Notice of Default and the Notice of Trustee's Sale. Notably, the Second Amended Complaint ("SAC") makes the following allegations regarding ETS' conduct and involvement:

(1)    The Notice of Default (NOD) was not prepared or served in compliance with applicable law or delivered to plaintiff Susilo in Singapore.  (SAC ¶ 13.)

(2)    ETS failed and refused to provide plaintiff with reinstatement information.  (SAC ¶ 15.)

(3)    ETS had communications with Plaintiff in October 2010 regarding a reinstatement amount of $46,800.00.  (SAC ¶ 16.)

(4)    Pursuant to ETS' instructions, plaintiff alleges that she delivered payment to Wells

Fargo for reinstatement, which Wells Fargo rejected because it was not in the form of certified funds as required by Wells Fargo.  (SAC ¶¶ 17, 28.)

(5)    Plaintiff did not receive any Notice of Trustee's Sale as required by California law.  (SAC  ¶ 19.)

As explained in the moving papers, the above conduct is arguably charged to Wells Fargo as the principal of ETS in the foreclosure process.  Wells Fargo cannot defend the Action without being able to take the depositions of ETS representatives on oral communications with plaintiff and her agents, as well as discovery regarding ETS' compliance with the pre-foreclosure Notice of Default and Notice of Sale procedures.  Furthermore, Wells Fargo cannot defend the Action without being able to subpoena necessary ETS representatives for trial, if necessary.

95451/000660/00433618-1                                          3

The bankruptcy stay was not intended to insulate a debtor from providing information in

a lawsuit as a fact witness.  Case law routinely holds that a debtor must provide discovery in

such situations.  *In re Miller*, 262 B.R. 499 (9th Cir. BAP 2001).  In fact, *In re Miller* held that

relief from stay is not even necessary where, as here, the debtor is being asked for discovery as a

mere fact witness since parties must be allowed to defend themselves against litigation:

> [T]o the extent that [the co-defendant non-debtor] was eliciting Debtor's
> testimony for purposes other than to continue the prosecution of her claims
> against Debtor, the proposed discovery did not violate the automatic stay, unless
> the issuance of subpoenas itself constitutes "issuance or employment of process"
> against Debtor or a "judicial proceeding" against Debtor.  If this were true, a
> debtor could never be called as a witness (even in actions where the debtor is not
> a party) without relief from the stay. Such an interpretation of section 362(a)
> defies common sense and the spirit of the Code. Information is information, and
> we believe the discovery of it as part of the development of a case against non-
> debtor parties is permissible, even if that information could later be used against
> the party protected by the automatic stay."

*Id.* at 505.

The District Court in *Signature Bank v. Ahava Food Corp.*, 2008 U.S. Dist. LEXIS 67464

(S.D.N.Y. 2008) reached the same conclusion as the Ninth Circuit in *In re Miller*.  There,

plaintiff sought depositions of debtor defendant for reasons other than to prosecute its claims

against Ahava (AOC).  In permitting discovery, the District Court rejected applying the

automatic stay and held that: "[t]he automatic litigation stay provision found in 11 U.S.C.

§ 362(a) does not prevent discovery in the current lawsuit even if the depositions in question

unearth information that may be relevant to the Bank's stayed claims against AOC."

The District Court in *In re Johns-Manville Corp.*, 41 B.R. 926 (S.D.N.Y. 1984) addressed

and rejected arguments similar to those raised by debtor here, namely conclusory assertions that

providing discovery will be a burdensome distraction from the reorganization process.  In

dismissing debtor's arguments for stay protection, the District Court held that: "[d]enial of that

evidence to a litigant . . . .works a degree of hardship and prejudice which no court should

countenance, absent overwhelming policy considerations pointing the other way.  In the case at

bar, I am not satisfied that Manville has made such a showing." See also, *In re Traylor*, 94 B.R. 292, 293 (Bankr. E.D.N.Y. 1989) ("the debtor, whether discharged or not, is under the same obligations as would be any witness, regardless of the inconvenience to him, to attend any trial that may take place if the relief is granted").

ETS fails to address the argument that an inability by Wells Fargo to obtain fact discovery puts it in an impossible position of not being able to mount a defense. In conformity with the *In re Miller* rule that discovery of a debtor as a fact witness does not violate the automatic stay, Wells Fargo simply could have issued subpoenas to ETS. However, Wells Fargo reasonably believed that such an effort would have been futile following communications from ETS' counsel that it would not provide any information unless ordered to do so by the Bankruptcy Court. (See Supplemental Shulman Decl., ¶ 4; Exh. A to the Supplemental Shulman Declaration.) As evidenced in the attached Supplemental Declaration of Jeremy E. Shulman, Wells Fargo attempted to solicit the necessary information from ETS by voluntary declarations, and without the need for depositions, to which ETS' counsel responded that relief from stay would be required. (See Supplemental Shulman Decl., ¶ 4; Exh. A to the Supplemental Shulman Decl.)

Pursuant to the authority briefed above, Wells Fargo submits that it would be entirely inequitable and irretrievably prejudicial for Wells Fargo to be deprived of information from ETS as a fact witness. ETS offers no credible opposition that two to three depositions and the possible appearance as trial witnesses will compromise the reorganization effort in any meaningful way. As such, this Court should grant Wells Fargo's alternative request for relief by allowing it to conduct necessary oral and written discovery of ETS with respect to its role in the subject foreclosure sale.

### III.    CAUSE EXISTS FOR RELIEF FROM STAY AUTHORIZING CONTINUED PROSECUTION OF THE CROSS-COMPLAINT AGAINST DEBTOR.

Section 362(d) of the Bankruptcy Code authorizes relief from stay for "cause".  While "cause" is not defined by the Bankruptcy Code, the Second Circuit has applied a 12-factor test to determine whether "cause" exists to lift the stay to permit pre-petition litigation to proceed. *Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285-87 (2d Cir. 1990).  In the Objection, Debtors argue that application of the "Sonnax Factors" weigh against lifting of the automatic stay.  These factors are discussed herein in the order presented in the Objection.  For the reasons set forth herein, the application of the Sonnax Factors demonstrate that relief from stay is warranted to permit continued prosecution of the Action.

**Sonnax Factor No. 1:  Whether Relief will result in Partial or Complete Resolution of the Action.**

The adjudication of Debtor's liabilities to Movant will resolve all claims by Movant against Debtor in the Action.  It is acknowledged that plaintiff in the Action has named Debtor as a defendant and that plaintiff has not sought relief from stay to allow prosecution of plaintiff's claims against Debtor in the Action.  However, prosecution of Movant's cross-complaint against Debtor will permit Movant to conduct necessary discovery and to issue necessary trial subpoenas directed at employees of Debtor.  This discovery and the ability to compel Debtor's participation in the trial, is critical to Movant's defense.  (Shulman Decl. ¶ 7.)

**Sonnax Factor No. 2:  Whether lifting of the Automatic Stay will Interfere with Debtor's Chapter 11 Case.**

Debtor makes the unsupportable argument that the litigation of the Action will somehow interfere with its attempts at reorganization, arguing the "heavy burden" that this will impose on Debtor to defend this one lawsuit.  (Opp. ¶ 31 at p. 13.)  Debtor argues that granting relief in this

case would open the "floodgates" of other litigation, denying Debtor the "breathing spell"

afforded by the automatic stay.  (Opp. ¶ 3, at p. 2.)

While the Action will require some attention of its in-house counsel, the Action has been

principally defended by outside counsel.  (See Cross-Complaint of Debtor, Ex. C to the Decl. of

Jeremy E. Shulman, showing that Debtor is represented by outside counsel Foley & Mansfield,

PLLP, located in Los Angeles, California.)

It is inconceivable that this litigation would somehow have any significant impact on

debtor's ability to reorganize.

First, Debtors note that they operate the fifth largest mortgage servicing business and the

tenth largest mortgage origination business in the United States.  (Opp. fn. 3 at p. 4.)  With

business operations of this size, it is inconceivable that relief from stay to allow prosecution of a

cross-complaint in a lender liability case would significantly impact the ability of Debtors to

reorganize in this case.  Debtor in In re Johns-Manville Corporation, 41 B.R. 926 (Bankr.

S.D.N.Y. 1984), made a similar argument regarding the burden that responding to discovery

would impose on the corporation in its reorganization efforts.  Rejecting this argument, the court

stated: "Manville is a giant corporation of vast resources.  It can well afford the expense of

furnishing fairly demanded disclosure without prejudice to either the interests of its creditors or

the ability to reorganize."  41 B.R. at 932 (quoting Judge Leval in In re Johns-Manville

Corporation, reported at CCH Bankruptcy Law Reports, para. 69,862 at 85,083 (S.D.N.Y. April

24, 1984).  The position that the defense of the Action will impose a significant burden on

Debtors is not credible.

Second, Counsel for Debtors testifies that debtors are engaged "in more than 1,900

pending litigation, contested foreclosure and bankruptcy matters filed in jurisdictions all around

the country ."  (Scoliard Decl., ¶ 4, pp. 3-4.)  Counsel notes:  "This figure does not include the

tens of thousands of foreclosure, eviction, or bankruptcy-related claims/lawsuits to which the

Debtors are a party in connection with servicing activities." (Scoliard Decl., fn. 2, at p. 4.)  With this volume of litigation, it is inconceivable that relief from stay would interfere with Debtor's Chapter 11 case.  And even assuming that other creditors will come forward with motions for relief from stay, the Supplemental Servicing Order expressly authorizes relief from stay "on appropriate motion and notice to Debtors".  (Supplemental Servicing Order, Docket 774, ¶ 14(f), p. 9.

Debtors note that over two-thirds of the approximately 1900 currently pending cases being handled by the Legal Department are excepted from the automatic stay under the terms of the July 13, 2012 Supplemental Servicing Order.  (Docket No. 774.)  And that the remaining cases (approximately 690 cases) are not excepted from the stay under the Supplemental Servicing Order.  (Opp. ¶ 30, pp. 12-13.)

Debtors suggest that allowing Movant to proceed with the Action would "impose a heavy burden on Debtors' valuable time and scarce resources." (Opp. ¶ 31, p. 13.)  In light of the volume of litigation that Debtors manage, the argument that the defense of the Action will impose a heavy burden is not credible, particularly when the court considers that outside counsel is directly handling the defense of the Action.

**Sonnax Factor No. 4:  Whether a Special Tribunal has been Created to Hear any of the Claims.**

This factor was not discussed in the moving papers.  However, it was made clear in the motion that the District Court is best suited to determine the respective liabilities of the multiple parties in the Action.  To require that this determination be made through the claims procedures of the Bankruptcy Code, will necessitate duplicative litigation.  If testimony is required, this would necessitate witnesses regarding a California foreclosure to testify in a New York Bankruptcy Court.  This calls for a waste of judicial resources not to mention an extraordinary burden on the litigants.

95451/000660/00433618-1                                  8

In the Objection, Debtors contend that because no specialized tribunal has been established to determine Movant's claims against Debtor, it is more appropriate to have this claim adjudicated in the Bankruptcy Court. Relying on *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009), Debtors claim that this court has significant experience in applying state law. In *In re Bally Total Fitness*, the bankruptcy court determined that it was capable of adjudicating the class action claims of plaintiffs against debtor and therefore denied relief from stay to permit the class action to proceed in state court. There, class certification of the class action had not yet occurred. And the bankruptcy court noted that class members would need to be noticed and then given an opportunity to "opt out" under Rule 23, followed by merits discovery on both sides and ending with a lengthy trial. *In re Bally Total Fitness*, 402 B.R. at 623. In denying relief from stay, the bankruptcy court concluded that the *Sonnax* factors weighed heavily against lifting the automatic stay. Clearly, the non-bankruptcy litigation in *In re Bally* was in its early stages. Here, the Action is in advanced stages of litigation with a trial date set for December 2012. And the litigation in *In re Bally*, the debtor was the only defendant. Here, Debtor is not the only defendant in the Action.

As analyzed by this court in *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D. NY 2010): "[T]he legislative history of 362 reveals that Congress intended 'that one of the factors to consider when determining whether to modify the stay is whether doing so would permit pending litigation involving the debtor to continue in a nonbankruptcy forum,' as '[i]t will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere.' H.R. Rep. No. 95-595, at 341 (1977), U.S. Code Cong. & Admin. News 1978, at 5963, 6297; S. Rep. No. 95-989, at 50 (1978), U.S. Code. Cong. & Admin. News 1978, at 5787, 5836."

Here, to require that the parties now litigate their claims in the New York bankruptcy court is contrary to the legislative intent of Bankruptcy Code section 362.

**Sonnax Factor No. 5:  Whether an Insurer Has Assumed Responsibility for the Action.**

It appears from the objection that Debtors maintain Errors and Omissions (E&O) insurance coverage, but the deductible exceeds the amount of the claim.  (Scoliard Decl. ¶ 20.) In addition, Debtor is apparently advancing its own legal fees.  (Scoliard Decl. ¶ 21.)  Without the benefit of a review of Debtor's E&O policies, it is not possible to determine the veracity of these representations.  But assuming these statements to be true, the mere fact that Debtors will incur expense is not grounds for denial of relief from stay.  As held by this court in *In re Project Orange Assocs., LLC*, 432 B.R. 89, 105-106, "[w]hile the cost of defense is a factor to be considered, that factor, standing alone, is ordinarily insufficient reason to deny relief from the automatic stay." (Quoting *In re Bison Resources, Inc.*, 230 B.R. at 613.  The court in *In re Bison Resources, Inc*. "allow[ed] the State Court Action to proceed to judgment," but refused to permit the lessors to "take any steps to enforce said judgment against [the debtor]."  Id. at 619.  Here, Movant does not seek to enforce any judgment against assets of the estate of debtor, but only to proceed against "available insurance" and/or "non-estate property or earnings."  (Proposed Order, Ex. 1 to the Motion at p. 2.)

**Sonnax Factor No. 6:  Whether the Action Primarily Involves Third Parties.**

Applying this sixth factor, in *In re Bally Total Fitness*, *supra*, 402 B.R. 616, the court observed that the state court class action "does not involve any third parties; Bally is the only party adverse to the Carrera Plaintiffs."  Based on this, and other facts, the court denied relief from stay to permit continued prosecution of the state court class action.  In contrast, Debtor is not the only defendant in the Action.  If the court were to deny relief from stay, the adjudication of the liabilities of the parties in multiple fora could yield conflicting results, not to mention an unnecessary waste of judicial resources and duplication of trial proceedings.

95451/000660/00433618-1                                    10

**Sonnax Factor No. 7:  Whether litigation of the Action would prejudice the interests of other Creditors.**

In its objection, Debtors take the position that, while there is no insurance coverage that covers the claims in this case, if the coverage did exist, the recovery against any insurance policy would "diminish the recoveries of other similarly situated claimants of the Debtors."  (Opp. ¶ 42, at p. 17.)  Of course, if there is no insurance that covers either defense or indemnity costs in this case (Scoliard Decl. ¶¶ 20 and 21), then this argument seems irrelevant to the discussion.  While Debtors will incur legal costs associated with the defense of the Action, the mere fact that Debtors will incur legal expense is not ground for denial of relief from stay.  *In re Bison Resources, Inc.*, *supra*, 230 B.R. at 613.  Moreover, with regard to enforcement of any judgment, Movant does not seek to proceed against assets of the bankruptcy estate.  (See Proposed Order, Ex. 1 to the Motion.)  To the extent that there is available insurance – as Debtors hypothesize – and to the extent that Movant's recovery of insurance proceeds diminishes the recoveries of similarly situated claimants, it seems that the appropriate resolution is for this court to limit Movant's enforcement rights in its order granting relief from stay – not an outright denial of the motion for relief from stay.

**Sonnax Factor No. 10 and 11:  Judicial Economy and Whether the Parties are Ready for Trial.**

Clearly, the interests of judicial economy are served by continued prosecution of the cross-complaint and resolution of the Action in the non-bankruptcy forum.  In its objection, Debtors take the position that the District Court in the Action has "not yet expended significant judicial resources in addressing the issues raised in the Action, including the indemnification issues raised in the cross-complaints."  (Objection, ¶ 44 at p. 18.)  As noted in the motion, the Action was filed in January 2011 and the matter was set to commence trial in October 2012 (now December 2012).  Debtors' reliance on *In re Bally Total Fitness*, 402 B.R. 616 is unavailing:

95451/000660/00433618-1                                       11

Clearly, this case is much more progressed than the facts in *In re Bally Total Fitness*, a class

action in which the class had not even been certified.  402 B.R. at 623.

**Sonnax Factor No. 12:  Impact of the Stay on the Parties and the Balance of Harms.**

Movant has established that it will be "irretrievably harmed" if it is not permitted

continued prosecution of its cross-complaint, including the ability to conduct discovery directed

at Debtor regarding the liability issues in the Action.  (Shulman Decl. ¶ 7:  "Because Debtor, as

foreclosure trustee, acts as a dual agent for plaintiff/borrower and Movant/lender, Wells Fargo

could potentially be liable for actions of Debtor in regards to the foreclosure while being unable

to obtain key factual information from Debtor due to the automatic stay. . . The inability of Wells

Fargo to conduct discovery directed at Debtor concerning plaintiff's claim will irretrievably

prejudice Wells Fargo in its defense.")  The Action centers around plaintiff's attempt at

reinstatement, through plaintiff's written and oral communications with Debtor.  (Shulman Decl.

¶ 7.)  Movant cannot adequately defend itself in the Action without Debtor's responses to

discovery and Debtor's participation as a trial witness.  Debtor's participation is best

accomplished by way of the continued prosecution of Movant's cross-complaint against Debtor.

However, if the court determines that grounds do not exist to allow continued prosecution of the

cross-complaint, at a minimum, Movant should be permitted to conduct discovery and to issue

trial subpoenas directed at certain employees of Debtor.

IV.    **RELIEF FROM THE 14-DAY STAY IMPOSED BY BANKRUPTCY RULE**
**4001(a)(3) SHOULD BE GRANTED.**

Waiver of the 14-day stay under Rule 4001(a)(3) of the Federal Rules of Bankruptcy

Procedure is appropriate in circumstances where the movant seeks immediate relief.  See *In re*

*360networks (USA), Inc.*, 282 B.R. 756, 765 (Bankr. S.D.N.Y. 2001) (waiving the then 10-day

stay period of Rule 4001(a)(3), allowing the order for relief from stay to take effect immediately

in light of immediate state law deadlines facing movant).  The purpose of Rule 4001(a)(3) is to

permit any party affected by the order for relief to file a timely appeal.  Here, with a trial set to

commence on December 4, 2012, Movant seeks the ability to move promptly in initiating

discovery directed at Debtor.  Here, with the discovery cutoff now moved to September 17,

2012, and a trial set to commence on December 4, 2012, Movant seeks the ability to move

promptly in initiating discovery directed at Debtor.

## V.    CONCLUSION.

Based on the foregoing, the court should grant relief from stay authorizing continued

prosecution of Movant's cross-complaint against Debtor in the Action.  Alternatively, the court

should grant relief from stay allowing Movant to conduct discovery of ETS and to permit

Movant to issue trial subpoenas directed at employees of ETS in the Action.


Dated:  Pasadena, California
   July 20, 2012

          Respectfully Submitted,

          ANGLIN, FLEWELLING, RASMUSSEN,
           CAMPBELL & TRYTTEN LLP


          By:  */s/ Jeremy E. Shulman*
            Jeremy E. Shulman
          199 S. Los Robles Avenue, Suite 600
          Pasadena, California 91101-2459
          Tel: (626) 535-1900
          Fax: (626) 577-7764
          *Attorneys for Movant*
          *Wells Fargo Bank, N.A., successor*
          *by merger with Wells Fargo Bank*
          *Southwest, N.A., f/k/a Wachovia Mortgage,*
          *FSB, f/k/a World Savings Bank, FSB*