| | |
|---|---|
| **MORGAN, LEWIS & BOCKIUS LLP**<br>James L. Garrity, Jr.<br>John C. Goodchild, III (*pro hac*)<br>101 Park Avenue<br>New York, New York 10178-0600<br>Telephone: (212) 309-6000<br>Facsimile: (212) 309-6001<br>*Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustee of Certain Mortgage Backed Securities Trusts* | **DECHERT LLP**<br>Glenn E. Siegel<br>Hector Gonzalez<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Telephone: (212) 698-3500<br>Facsimile: (212) 698-3599<br>*Counsel to The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage Backed Securities Trusts* |
| **ALSTON & BIRD LLP**<br>Martin G. Bunin<br>John C. Weitnauer (*pro hac*)<br>90 Park Avenue<br>New York, NY 10016<br>Telephone: (212) 210-9400<br>Facsimile: (212) 210-9444<br>*Counsel for Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts* | **SEWARD & KISSEL LLP**<br>Ronald L. Cohen<br>Arlene R. Alves<br>One Battery Park Plaza<br>New York, New York 10004<br>Telephone: (212) 574-1200<br>Facsimile: (212) 480-8421<br>*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage Backed Securities Trusts* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | Case No. 12-12020 (MG) |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

### SUBMISSION IN SUPPORT OF SCHEDULING ORDER
### JOINTLY PROPOSED BY CERTAIN RMBS TRUSTEES

The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, U.S. Bank National Association and Wells Fargo Bank, N.A., solely in their capacities as trustees or indenture trustees for over 500 mortgage or home equity lines of credit backed securities trusts (collectively, the "**Trustees**"[1]

---

[1] This Motion is filed by the Trustees solely in their capacity as trustees of the RMBS Trusts (defined below) and not in any of their capacities as members of the Official Committee of Unsecured Creditors (the "**Committee**").

and the "**Trusts**"), under which billions of dollars in securities are outstanding, by and through their undersigned counsel, hereby file this submission (the "**Submission**"), pursuant to sections 105(a), 365(b) and 502(c) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of a scheduling order substantially in the form annexed hereto as Exhibit A (the "**Proposed Scheduling Order**") that sets forth a timeline for (i) resolving the only issue that must be determined before the October 23, 2012 auction (the "**Auction**") of the Debtors' servicing business and operations; (ii) allowing the Trustees (and other parties in interest) to investigate and quantify their claims, and to evaluate the RMBS Trust Settlement Proposals (defined below), and (iii) either obtaining Court approval of any Settlement Motions (as defined below) or, if and only if this settlement process fails, litigating the Trustees' claims. In support of their request for the entry of the Proposed Scheduling Order, the Trustees respectfully state as follows:

## PRELIMINARY STATEMENT

1.   At the July 10, 2012 hearing, Debtors' counsel indicated that if the Debtors were unable to reach a consensual agreement with the Trustees over the scheduling of procedures associated with the resolution of the Trustees' pending objections to the assumption and assignment of the Debtors' servicing business, the Debtors would seek an order at the July 24, 2012 hearing providing for a resolution of all of the Trustees' objections prior to November 5, 2012 – the date on which the Debtors contemplate that the Court will enter an order approving the assumption and assignment of the servicing business to the successful bidder. The Trustees' sale objections relate to the scope of the obligations to be assumed by the assignee of the servicing agreements, the ability of the assignee to

perform under the servicing agreements, and the size of the cure claims that would need to be satisfied as a condition of the assignment.

2.  This proposed schedule, as described by the Debtors, would also require the resolution of the Debtors' pending, but adjourned *sine die*, motion seeking approval of their intent to offer to settle all of the Trustees' outstanding claims in this case. The motion, while styled as one seeking approval of a settlement under Rule 9019, is actually unnecessary. There is no "settlement" – only a potential "offer to settle" – and the Debtors do not need Court authority to make an offer to settle the Trustees' claims. The offer to settle is based upon a negotiation the Debtors conducted with certain certificate holders of certain of the RMBS Trusts, as a result of which the Debtors agreed to offer a settlement of certain claims held by the RMBS Trusts (the "**RMBS Trust Settlement Proposals**"). Counsel to these certificate holders have sent letters to the Trustees which "urge the Trustees to accept [the RMBS Settlement Proposals]," but do not require the Trustees to accept the settlement proposals through a contractually binding instruction and indemnity. To the contrary, the letter from the certificate holders' counsel, which the Debtors have characterized as an "directions" in statements to this Court, expressly states that "the Trustees will need to exercise their independent judgment, and the care and skill of a prudent investor, to decide whether the claims should be settled on these terms. . . . [T]his is not a binding instruction. . . ." Letter dated May 24, 2012 from Kathy Patrick of Gibbs & Bruns to the Trustees (emphasis added). Copies of both of the so-called "instruction" letters sent by certificateholders to the Trustees are attached hereto as Exhibit B.

3.  The Trustees have advised the Court, the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and other parties in interest that the Trustees must

perform due diligence regarding their claims, determine the appropriate response to the RMBS Trust Settlement Proposals, and obtain appropriate court approval of their actions – and that the Debtors' proposed schedule does not allow enough time to complete those steps. Accordingly, because the Debtors' proposed schedule does not allow for enough time for the Trustees to consider settling, it would force the Trustees to litigate. That result is not in the best interest of the estates or any party in interest.

4. Recognizing the need to balance the goal of obtaining the highest and best offer for the assignment of the servicing rights with the potential for reaching a settlement of the Trustees' claims, the Trustees have, in collaboration with the Committee, drafted the Proposed Scheduling Order, which the Trustees believe strikes an appropriate balance for the benefit of all stakeholders and allows the sale of the servicing business to proceed as scheduled.

5. The Proposed Scheduling Order also would provide time for the Trustees to provide appropriate notice to the certificate holders of the Trusts of the terms of the RMBS Trust Settlement Proposals and give them the opportunity to be heard. All the while, the Debtors' proposed sale and auction process would continue unimpeded, thereby allowing the Debtors to maximize value for the estates and preventing undue delay in the administration of the Debtors' chapter 11 cases.

## THE PROPOSED SCHEDULING ORDER

6. The Proposed Scheduling Order contemplates a concurrent, bifurcated process that the Trustees believe will allow for the sale to proceed on schedule while preserving the possibility of reaching a negotiated settlement of the Trustees' claims, including those claims related to their objections to the assumption and assignment of the servicing agreements, in an expeditious manner.

7. This procedure is made possible by the Trustees' agreement that, if the Proposed Scheduling Order is entered, the Trustees' assertion of many of their objections and claims related to the sale that might otherwise chill the bidding or otherwise prevent the scheduled auction from concluding will be reserved until after the auction and will, if successful, at most result in claims that attach to the proceeds of the sale. If the Court accepts the Proposed Scheduling Order, those reserved objections would include:

- The issue of whether the assignee is responsible for the payment of the "put back" claims asserted against the Debtors as originator, depositor, or servicer;

- The issue of whether the Debtors have breached their obligations under the loan servicing agreements that the Debtors propose to assume and assign in connection with the servicing sale and whether any such breaches have inflicted damages to the Trusts, including, inter alia, damages arising from the Debtors' alleged violations of law that gave rise to the Debtors' settlement with the United States of America and 49 States concerning loan servicing practices (a settlement which itself took over a year to achieve);

- The ability of the Trusts to assert setoff or recoupment claims against the assignee; and

- The inability of the Debtors to pay the cure claims proven by the Trustees because they exceed or potentially exceed the proceeds of the sale.

8. What remains to be resolved before the auction, should the Court accept the Proposed Scheduling Order, are only those objections and claims that directly relate to the assignee's performance under the servicing agreements after assignment – the resolution of which is necessary to facilitate the bidding and auction process. In particular, the Debtors' sales motion [Docket No. 60] states the following limitation of the assignee's obligation to perform the servicing agreements:

*Future Performance of Servicing Contracts:* The Nationstar APA provides that:

> *Nationstar is not assuming* and parties will be enjoined from asserting against Nationstar any claims or *obligations relating to the pre-closing period* under any Assumed Contract, whether such claims or obligations are known, unknown, fixed, contingent, unliquidated or liquidated at the time of the Closing, *including*, without limitation, any claims or liabilities relating to any act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date, and any *indemnification claims or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date*.

Sales motion [Docket No. 60] at p. 32 (emphasis added). This condition is inconsistent with the requirement that a debtor can assign an executory contract only if "adequate assurance of future performance by the assignee ... is provided ...." 11 U.S.C. § 365(f)(2)(B). This issue must be resolved prior to the Auction, as a decision that the servicing agreements cannot be unilaterally amended in this fashion may impact the bids.

9.   Thus, the only objections that will need to be resolved prior to the entry of the order approving the assumption and assignment and sale of the servicing business relate to the scope of the loan servicing obligations to be assumed by the assignee of the servicing agreements (specifically excluding thorny issues regarding the severance of Debtor servicers' obligations with respect to defectively underwritten mortgage loans), and the ability of the assignee to perform under the assumed servicing agreements. The Trustees will also agree to limit their cure claims to the proceeds of the sale of the assigned servicing agreements by providing, in the order approving the assumption and assignment, that the Trustees' claims will attach to the proceeds.

10.  All other matters, *i.e.,* the resolution of the cure claims and the possibility of agreeing to accept the RMBS Trust Settlement Proposals or to settle on some other basis, will proceed simultaneously in a process which must either result in an order acceptable to

the Trustees by March 31, 2013 or the litigation of the objections to the sale and the objections to the Trustees' claims.

11.    This track contemplates a period of time for the Trustees to first determine the value of their claims and whether they wish to (a) accept the RMBS Trust Settlement Proposals, (b) negotiate for a different settlement of the claims, or (c) litigate the claims. This process would end on or before March 31, 2013. In the event a settlement is reached with the Trustees, the Debtors and the Trustees would file a motion (the "Settlement Motion"), on or before November 30, 2012, seeking an order from this Court (or the District Court), satisfactory to the Debtors, the Trustees and the Committee, allowing for the settlement to proceed. The Settlement Motion would give certificate holders of the Trusts an opportunity to be heard in opposition or in support of the RMBS Trust Settlement Proposals or other proposed settlement.

12.    In the event an order acceptable to the Trustees is not entered by March 31, 2013, litigation on the claims would proceed. In the event a settlement is not reached, litigation would proceed at the time the settlement approval process was contemplated to start.

## CONCLUSION

The Trustees submit that the attached Proposed Scheduling Order provides the parties with an appropriate framework for resolving complex issues that might otherwise affect the bidding and auction process on a schedule that both allows the Debtors to move forward with the proposed sale and the chapter 11 cases, and affords the Trustees and other parties in interest with adequate time to work toward an overall consensual resolution including consideration of the RMBS Trust Settlement Proposals.

**WHEREFORE**, for the reasons set forth herein, the Trustees request that the Court enter the Proposed Scheduling Order substantially in the form annexed hereto as <u>Exhibit A</u> and grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
July 20, 2012

Respectfully submitted,

| **MORGAN, LEWIS & BOCKIUS LLP** | **DECHERT LLP** |
|---|---|
| By: _s/James L. Garrity, Jr._____<br>James L. Garrity, Jr.<br>John C. Goodchild, III (*pro hac*)<br>101 Park Avenue<br>New York, New York 10178-0600<br>Telephone: (212) 309-6000<br>Facsimile: (212) 309-6001<br><br>*Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustees of Certain Mortgage Backed Securities Trusts* | By: _s/Glenn E. Siegel_____<br>Glenn E. Siegel<br>Hector Gonzalez<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Telephone: (212) 698-3500<br>Facsimile: (212) 698-3599<br><br>*Counsel to The Bank of New York Mellon Trust Company, N.A., as Trustees of Certain Mortgage Backed Securities Trusts* |
| **ALSTON & BIRD LLP** | **SEWARD & KISSEL LLP** |
| By: _s/John C. Weitnauer_____<br>Martin G. Bunin<br>John C. Weitnauer (*pro hac*)<br>90 Park Avenue<br>New York, NY 10016<br>Telephone: (212) 210-9400<br>Facsimile: (212) 210-9444<br><br>*Counsel to Wells Fargo Bank, N.A., as Trustees of Certain Mortgage Backed Securities Trusts* | By: _s/Arlene R. Alves_____<br>Ronald L. Cohen<br>Arlene R. Alves<br>One Battery Park Plaza<br>New York, New York 10004<br>Telephone: (212) 574-1200<br>Facsimile: (212) 480-8421<br><br>*Counsel to U.S. Bank National Association, as Trustees of Certain Mortgage Backed Securities Trusts* |