ALSTON & BIRD LLP
Martin G. Bunin
John C. Weitnauer (*pro hac vice*)
90 Park Avenue
New York, NY 10016
(212) 210-9400 (telephone)
(212) 210-9444 (facsimile)

*Attorneys for Wells Fargo Bank, N.A. as*
*Master Servicer of Certain Mortgage*
*Backed Securities Trusts*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | |
|---|---|
| IN RE: | Chapter 11 |
| | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Jointly Administered |
| Debtors. | |

------------------------------------------------------------------x

### PARTIAL JOINDER OF WELLS FARGO BANK, N.A., AS MASTER SERVICER FOR RESIDENTIAL MORTGAGE BACKED SECURITIES TRUSTS TO "SUBMISSION IN SUPPORT OF SCHEDULING ORDER JOINTLY PROPOSED BY CERTAIN RMBS TRUSTEES"

Wells Fargo Bank, N.A. ("**Wells Fargo**"), solely in its capacity as master servicer for certain mortgaged backed securities trusts (in such capacity, the "**Master Servicer**"), hereby files its Limited Joinder (the "**Joinder**") to the "Submission in Support of Scheduling Order Jointly Proposed by Certain RMBS Trustees."

In support of its Partial Joinder, the Master Servicer respectfully states as follows:

1. Wells Fargo, solely in its capacity as trustee or indenture trustee for certain mortgaged backed securities trusts, and together with Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, The Bank of New York Mellon Trust Company, N.A., and U.S. Bank National Association, each solely in their

1

respective capacity as trustees of certain mortgage backed securities trusts (the "**RMBS Trustees**"), jointly filed a "Submission in Support of Scheduling Order Jointly Proposed by Certain RMBS Trustees" (the "**Submission**").

2.  Wells Fargo is the Master Servicer for certain other securitization trusts serviced in whole or in part by certain Debtor entities.[1] Wells Fargo's role as Master Servicer of certain mortgage backed securities trusts is separate and distinct from its role as one of the RMBS Trustees and its claims, as Master Servicer are separate and distinct from its claims arising from its role as one of the RMBS Trustees. Wells Fargo does not serve simultaneously as the master servicer and trustee of any residential mortgaged-backed securities trust. The trusts for which Wells Fargo serves as Master Servicer are *not* included in the RMBS Settlement Motion.

3.  The Debtors were active participants in private label securitizations sponsored by third parties not affiliated with the Debtors and upon information and belief,

---

[1] Additional detail regarding Wells Fargo' separate roll as Master Servicer are set forth in the "Joinder of Wells Fargo Bank, N.A. as Master Servicer for Residential Mortgage Backed Securities Trusts to: (A) Limited Objection of Certain Trustees for Residential Mortgage Backed Securities Trusts to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief; and (B) Limited Objection of Certain Trustees for Residential Mortgage Backed Securities Trusts to the Debtors' Postpetition Financing Motions," (Docket 292) (the "**First Joinder**"). The First Joinder was accompanied by a Declaration of Martin G. Bunin (Docket 296) (the "**Bunin Declaration**") that attached three "exemplar" documents. In the first exemplar document a Debtor (and another unaffiliated servicer) is a direct party to the pooling and servicing agreement along with the Master Servicer and certain other parties (Exhibit A to the Bunin Declaration, the "**PSA Exemplar 1**"). The second uses very different documentation. The trust is formed pursuant to a pooling and servicing agreement (Exhibit B-1 to the Bunin Declaration, the "**PSA Exemplar 2**") to which neither the Debtor nor any of the other seven (7) servicers in the transaction is a party. Rather the Debtor (and the other servicers) is a party to a separate servicing agreement which is assigned ultimately to the trustee of the trust so formed via an Assignment Assumption & Recognition agreement (attached as Exhibit B-2 to the Bunin Declaration, the "**AAR Exemplar 2**"). Though the trustee is the assignee of such rights, the PSA Exemplar 2 and the AAR Exemplar 2 make clear that the Master Servicer is charged with monitoring the performance and enforcing the obligations of the Debtor.

2

contributed loans and/or provided servicing for loans placed into such private label securitizations. The trusts formed under such private label securitizations are known herein as the "**PLS Trusts**"). *Id*. ¶ 23 n.15.

4.      The Master Servicer acts as master servicer for hundreds of PLS Trusts, which contain billions of dollars in principal amount of mortgage loans serviced by Debtor entities.

5.      Under the PLS Trusts master serviced by Wells Fargo, the Debtor acts as a primary servicer (often along with other primary servicers). While the terms of specific transactions vary, they generally provide that Debtors are responsible for all tasks relating to the primary servicing of the PLS Trusts' mortgage loan assets (billing, collecting, foreclosing, maintaining and selling REO properties), the investment of mortgage loan cash flows pending distribution to the Master Servicer or securities administrator for distribution to the RMBS Investors, and the compilation, computation and reporting of mortgage loan performance data. *See, e.g.*, PSA Exemplar 1, at Art. III ("Administration and Servicing of the Mortgage Loans; Accounts"). In many of these transactions the applicable Debtor, as servicer, has certain financial obligations or indemnification obligations to the Master Servicer or the trust formed in connection with the transaction. *See, e.g.*, PSA Exemplar 1, at §§ 3.27 ("Indemnification") and 4.03(c) ("Monitoring of Servicers").

6.      On these transactions, the Master Servicer is generally responsible for (among other things) supervising, overseeing and monitoring the performance by the Debtor (and the other primary servicers, if applicable) of its obligations under the relevant servicing agreement. *See, e.g.*, PSA Exemplar 1, at Art. IV ("Administration and

3

Master Servicing of the Mortgage Loans by the Master Servicer"); PSA Exemplar 2 at Art. III.

7.      If the Debtor defaults in its performance under the Servicing Agreement, it is the Master Servicer's obligation to pursue appropriate remedies against the Debtor to the extent provided in the transaction documents. *See, e.g.*, PSA Exemplar 1, at § 4.03 ("Monitoring of Servicers"); PSA Exemplar 2, at § 3.01 ("Master Servicing of the Mortgage Loans"); AAR Exemplar 2, at ¶ 4.

8.      The Debtors' have stated that their primary and most valuable operations consist of servicing mortgage loans and that, since 2008, mortgage loan servicing has been the Debtors' main source of ongoing revenue. Whitlinger Aff. ¶ 6, ¶ 25.[2] The Debtors propose to sell their "ongoing Origination and Servicing business"[3] and have stated that the "assumption and assignment of the Assumed Contracts[4] are part and parcel of the Sale Transaction with Nationstar."[5]

9.      However, the Sales Motion states that:

*Nationstar is not assuming and parties will be enjoined from asserting against Nationstar any claims or obligations relating to the pre-closing period under any Assumed Contract*, whether such claims or obligations are known, unknown, fixed, contingent, unliquidated or liquidated at the

---

[2] Capitalized terms used herein but not defined herein have the meaning given in the First Joinder.

[3] See para. 14 of "Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing And Approving Asset Purchase Agreements Thereto; (Iii) Approving The Assumption And Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief" (Docket 61) (the "**Sales Motion**").

[4] Wells Fargo believes that the Assumed Contracts, as that term was used in the Sales Motion, will include all of the agreements pursuant to which any of the Debtors are servicers in transactions where Wells Fargo is the Master Servicer, and in this pleading, uses the term "**Assumed Contracts**" to be so limited and defined.

[5] Sales Motion at para. 60.

4

> time of the Closing, *including, without limitation, any claims or liabilities relating to any act or omission of any* originator, holder or *servicer* of mortgage loans *prior to the Closing Date, and any indemnification claims or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date.*

Sales Motion at p. 32 (emphasis added) (the "**Limitation of Future Performance**").

10. The Submission points out that this condition is inconsistent with the requirement that a debtor can assign an executory contract only if "adequate assurance of future performance by the assignee ... is provided ...." 11 U.S.C. § 365(f)(2)(B). In fact, the Limitation of Future Performance *guarantees* that Section 365(f)(2)(B) cannot be satisfied. Accordingly, as the Submission points out, this issue must be resolved prior to the October 23, 2012 auction (the "**Auction**") because an order of this Court that the Limitation of Future Performance may impact the bids made at the Auction.

11. The same is true for any portions or provisions of the Assumed Contracts that the Debtors contend they will not assume because they claim such portions or provisions may be "severed" from the Assumed Contracts (the "**Severed Provisions**") or which the Debtors otherwise claim will not be enforceable after the Sale, including, without limitation, any provisions that the Debtors believe are unenforceable against the Debtors or any prospective purchaser under Bankruptcy Code § 365(f)(1) or any other provisions of the Bankruptcy Code (the "**Unenforceable Provisions**").

12. Wells Fargo as Master Servicer joins in those portions of the Submission that relate to the critical problems caused by the Limitation of Future Performance, the Severed Provisions and the Unenforceable Provisions. The Master Servicer objects, and continues to object, to any assumption and assignment of the Assumed Contracts that includes any Limitation of Future Performance or that are modified by any Severed Provisions or any Unenforceable Provisions.

5

13. In addition, in connection with the assumption and assignment of any Assumed Contract, Wells Fargo as Master Servicer has (i) the claims associated with existing defaults under the Assumed Contracts; (ii) to the extent that a court determines that the Limitation of Future Performance is permitted as part of the assumption and assignment of the Assumed Contracts, claims that will arise with respect to the Assumed Contracts after the closing of the Servicing Sale that are attributable to the Limitation of Future Performance; and (iii) to the extent that a court determines that provisions of the Assumed Contracts can be, and are, severed, or are unenforceable, claims that will arise by virtue of the non-performance of such Severed Provisions after the closing of the Servicing Sale (collectively, the "**Cure Claims**").

14. Wells Fargo, as Master Servicer, is entitled to all the protections of its Cure Claim in the same manner, and to the same extent, as the protections to be provided to the RMBS Trustees for their Cure Claims.

15. In order to participate fully in the resolution of these issues, and to protect and quantify its Cure Claims, Wells Fargo, as Master Servicer, should be included in all proceedings relating to the resolution of these issues, including the Pre-Auction Objections and the Cure Claims including but not limited to those matters discussed in paragraphs 2 - 5 of the proposed order attached as Exhibit A to the Submission.

WHEREFORE, for the reasons set forth herein, the Master Servicer respectfully requests that this Court grant the relief sought herein.

Dated: New York, New York  
July 20, 2012

Respectfully submitted,

ALSTON & BIRD LLP

/s/ Martin G. Bunin  
Martin G. Bunin  
John C. Weitnauer  
90 Park Avenue  
New York, NY 10016  
(212) 210-9400 (telephone)  
(212) 210-9444 (facsimile)  
marty.bunin@alston.com  
kit.weitnauer@alston.com

*Attorneys for Wells Fargo Bank, N.A. as Master Servicer of Certain Mortgage Backed Securities Trusts*