**Hearing Date and Time: July 24, 2012 at 10:00 a.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip Bentley
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
In re:                                    :    Chapter 11
                                          :
Residential Capital, LLC, et al.,         :    Case No. 12-12020 (MG)
                                          :
                    Debtors.              :    Jointly Administered
                                          :
------------------------------------------------------------ X

### STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF SCHEDULING ORDER JOINTLY PROPOSED BY COMMITTEE AND CERTAIN RMBS TRUSTEES

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby files this statement in support of the scheduling order jointly proposed by the Committee and the four RMBS trustees – namely, The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, U.S. Bank National Association and Wells Fargo Bank N.A., in their capacities as trustees or indenture trustees for certain residential mortgage-backed securities trusts (collectively, the "Trustees") – pursuant to the Court's direction at the July 10, 2012 status conference. In support of the proposed

scheduling order, which is annexed as Exhibit A hereto, the Committee respectfully represents as follows:

1. As the Court is aware, the Debtors filed a motion (the "Rule 9019 Motion") last month seeking approval of the settlement they reached prior to the petition date with certain RMBS investors (the "Investors") as to the Debtors' aggregate liability for so-called "putback" claims that they expect the Trustees to file. We understand that the Debtors now intend to ask the Court to schedule the Rule 9019 motion for a hearing in mid-October, and to fix a subsequent date in late October for the Trustees to accept or reject that settlement.

2. Over the past several weeks, the Committee has been engaged in intensive discussions with the Debtors, the Investors and the Trustees concerning the Debtors' proposed schedule, as well as potential alternatives. Based on those discussions, the Committee has come to the conclusion that the schedule proposed by the Debtors is not in the estates' best interests. The Committee's principal concern is that the Debtors' schedule would force the parties to litigate contentious and potentially destabilizing objections to the sale of the Debtors' mortgage servicing platform business in September and October, a course of action that could adversely affect the sale process. In particular, the Trustees have already raised multiple objections to the sale, including that (i) the governing RMBS agreements supposedly cannot be severed, but instead must be assumed and assigned *in toto* (including origination, as well as servicing, obligations); (ii) at minimum, the Debtors must assume all servicing obligations, which will require payment of allegedly enormous cure costs; and (iii) the buyer's claims for repayment of servicing advances allegedly will be subject to the Trustees' claims for set-off and recoupment. The Committee believes that these objections are largely devoid of merit – i.e., that the governing agreements *can* be severed, that any servicing-related cure costs will be relatively modest, and that no basis exists for either set-off or recoupment. Nevertheless, the Committee is

concerned that forcing these contentious and fact-intensive issues to be litigated concurrently with the auction and prior to approval of a sale, as the Debtors' schedule would do, poses a risk of delay that could unsettle bidders and threaten the sale process.

3.  It is in the estates' best interest that the sale process not be put at risk in this fashion. The Committee has therefore focused its efforts on the development of an alternative process – one that would defer most of the Trustees' sale objections until *after* the completion of the auction and the November 5 sale hearing, while at the same time providing the necessary assurances to potential buyers. A further objective of the Committee has been to structure a process that, in addition to deferring much of the sale-related litigation, would put maximum pressure on the parties to reach a global settlement of the RMBS (and by extension, sale) issues.

4.  These objectives – particularly the goal of deferring potentially disruptive sale objections until after the completion of the sale process – cannot be achieved without the agreement of the Trustees. The Committee therefore has sought to negotiate an appropriate agreement with the Trustees, and these efforts have proved successful. This afternoon, the Committee finalized an agreement with the Trustees that, in the Committee's view, is well designed to accomplish the dual goals of deferring sale-related litigation and putting maximum pressure on the parties to reach a global RMBS and sale settlement.

5.  Specifically, the Committee and the Trustees have reached agreement on the terms set forth in the proposed scheduling order (Exhibit A hereto), subject to the entry thereof. That proposed order includes the following key features:

    a.  Most significantly, the Trustees agree not to object to the sale of the Debtors' mortgage servicing platform, subject to certain limited exceptions. Among other things, the Trustees consent to the buyer taking the assets free and clear, and the Trustees agree

to cap their cure claims, if any,[1] at an amount not to exceed the sale proceeds attributable to the mortgage servicing rights of their trusts. These agreements will facilitate a robust bidding and sale process, by obviating any potential concerns by Nationstar or other bidders that the Trustees' objections might delay a sale.

                b.        The agreement also sets forth a series of deadlines, the effect of which is to bifurcate the RMBS settlement and litigation process – requiring the parties first to attempt to reach agreement on a global settlement, and deferring litigation of all RMBS matters and most of the Trustees' sale objections until after the settlement process has run its course. These deadlines include the following:

- By November 1, 2012, the Trustees must complete their evaluation of the settlement offer set forth in the Debtors' agreement with the Investors.

- By November 15, 2012, any settlement between the Debtors and the Trustees – whether on the terms now proposed or on modified terms – must be finalized and filed with the Court.

- If a settlement is reached by that date, then (a) the Debtors must file an amended Rule 9019 motion by November 30, 2012 seeking approval of that settlement, and (b) any motion by the Trustees seeking court approval of the settlement must also be filed by that date.

- If a settlement is not reached by November 15, then litigation will proceed as to the Trustees' cure claims and other sale-related claims, with a final hearing to be held not later than March 15, 2013.

        6.        As noted above, this agreement will protect the auction and sale process from the potential disruption that could result were the Trustee's sale objections to be litigated concurrently with that process, as the Debtors' schedule contemplates. At the same time, the agreement will create a process conducive to a global RMBS settlement – by giving the Trustees sufficient time to complete their evaluation of the Debtors' current offer, followed by a deadline

---

[1] As noted above, the Committee believes that the Trustees' cure claims will be relatively modest – i.e., that the amount of these claims will be at most a tiny fraction of the sales proceeds attributable to the mortgage servicing rights of these trusts.

to finalize and file a settlement, and by providing for the prompt commencement of litigation in the event a settlement is not reached by the latter deadline.

7. In addition to avoiding disruption to the sale process, this process is likely to be more conducive to a settlement than the Debtors' proposed process. The Debtors' pending Rule 9019 motion seeks relief that is highly unusual, if not altogether unprecedented: It asks the Court to approve a proposed settlement offer *before* that offer has been accepted by the parties (here, the Trustees) whose claims would be resolved. In their Rule 9019 motion papers, the Debtors seek to justify this extraordinary relief by contending that their counterparties (the Investors) have "directed" the Trustees to accept the Debtors' settlement offer. What the Debtors fail to point out is that the governing RMBS agreements provide that any "direction" by the Investors is *not a binding instruction*; instead, it is a request as to which the Trustees are required to exercise their independent judgment. The non-binding nature of the Investors' request is expressly acknowledged in the very letter that the Investors' lead counsel recently sent to the Trustees, purporting to direct them to enter into the Debtors' proposed settlement. The letter states, in pertinent part:

> *The decision whether to accept the settlement offered by the Debtors is the Trustees' decision to make.* In light of the bankruptcy filing, the Trustees will need to exercise their independent judgment, and the care and skill of a prudent investor, to decide whether the claims should be settled on these terms. . . . *[T]his is not a binding instruction . . . ."*

May 24, 2012 letter from Kathy Patrick of Gibbs & Bruns to the Trustees (emphasis added).[2]

8. A further benefit of the schedule proposed by the Committee and the

---

[2] The Committee recognizes that, although the Investors' direction does not have the binding effect suggested by the Debtors' Rule 9019 motion, it is not without significance. We note that the modified process that the Committee has negotiated with the Trustees does not diminish the significance and potential impact of the Investors' direction. Our process merely defers this Court's approval of the RMBS settlement until after the parties whose claims are being settled – the Trustees – have accepted the Debtors' settlement offer.

- 5 -

Trustees is that, unlike the Debtors' proposal, it permits adequate time for the parties to evaluate and, if necessary, to challenge any global RMBS settlement agreement.  The Committee shares the Debtors' view that a global settlement, if fair and reasonable, would be much preferable to a litigation or estimation of the Debtors' aggregate RMBS liability; as noted above, the Committee has taken pains to design a process conducive to such a settlement.  At the same time, however, the Committee has not yet had a sufficient opportunity to determine whether the proposed $8.7 billion allowed claim fairly reflects the merits of the Trustees' claims.  If the Committee ultimately determines that this amount, or whatever other amount is ultimately negotiated by the Trustees, is unfair – in particular, that the aggregate allowed claim is too high – the Committee will need a reasonable opportunity to object to the settlement, as will any other party in interest that reaches a similar conclusion.  The Debtors' proposed schedule, which provides for a Rule 9019 hearing in October, does not provide an adequate opportunity for any such objection.  In

contrast, the schedule proposed by the Committee and the Trustees gives the Court flexibility to determine the appropriate amount of time that parties will need to challenge the settlement.

9. For the reasons set forth above, the Committee requests that the Court approve the scheduling order jointly proposed by the Committee and the Trustees.

Dated: New York, New York
July 20, 2012

                                  KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                  /s/ Philip Bentley
                                  Kenneth H. Eckstein
                                  Philip Bentley
                                  Douglas H. Mannal
                                  Stephen D. Zide
                                  1177 Avenue of the Americas
                                  New York, New York 10036
                                  Telephone: (212) 715-9100
                                  Facsimile: (212) 715-8000

                                  *Counsel for the Official Committee*
                                  *of Unsecured Creditors*

## **EXHIBIT A**

**Proposed Scheduling Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**SCHEDULING ORDER RELATING TO RMBS TRUSTEES' CLAIMS AND OBJECTIONS TO SALE OF SERVICING ASSETS**

Whereas, The Bank of New York Mellon Trust Company, N.A.; Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, U.S. Bank National Association and Wells Fargo Bank N.A., in their capacities as trustees or indenture trustees for certain mortgage or home equity lines of credit backed securities trusts (collectively, the "**RMBS Trustees**"), each acting as the Trustee of some but not all of the Residential Mortgage-Backed Securitization Trusts ("**RMBS Trusts**"), with respect to which one or more of the Debtors is the sponsor, depositor, and/or servicer (all as more particularly described in the specific contracts relating to each such RMBS Trust) are party to certain Pooling and Servicing Agreements, Mortgage Loan Purchase Agreements, Indentures, Servicing Agreements and/or Trust Agreements (collectively, the "**PSAs**") with certain of the Debtors;[1]

Whereas, on May 14, 2012, the Debtors filed the *Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form*

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings*. Additional subsidiaries and affiliates of the Debtors may have filed or may file chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

*and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "**Sale Motion**") [Docket No. 61], seeking (i) the Court's approval of, and relief related to, the sale of assets comprising the transfer of the Debtors' servicing business and operations (the "**Servicing Sale**"), (ii) the Court's approval of, and relief related to, the sale of the Debtors' "legacy" portfolio consisting mainly of mortgage loans and other residual financial assets (the "**Legacy Asset Sale**," and collectively with the Servicing Sale, the "**Sales**"), and (iii) entry of an Order establishing certain deadlines and procedures in connection with the Sales;

Whereas, in the Sale Motion, the Debtors indicated that they intend to seek authority to assume or reject a number of executory contracts in connection with the Sales, and further indicated that they intend to assume and assign only those portions of the PSAs relating to the Debtors' servicing obligations (the "**Severing Provisions**");

Whereas, on June 11, 2012, the RMBS Trustees filed the *Limited Objection of Certain Trustees for Residential Mortgage Backed Securities Trusts to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the*

2

*Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "**RMBS Trustee Objection**") [Docket No. 291], in which the RMBS Trustees raised a number of arguments in opposition to the Sale Motion, and also identified on a non-exclusive basis a number of potential objections to the Sale Motion, including, without limitation, objections relating to the Severing Provisions;

Whereas, on June 28, 2012 the Court, after notice and hearing, entered the *Order Under 11 U.S.C. §§ 105, 363(b) and 365 (I) Authorizing and Approving Sale Procedures, Including Payment of Break-Up Fees; (II) Scheduling Bid Deadline, Auction (If Necessary) and Sale Hearing; (III) Establishing Assumption and Assignment Procedures, Including Procedures for Fixing Cure Amounts; and (IV) Establishing Notice Procedures and Approving Forms of Notice* (the "**Initial Sale Procedures Order**") [Docket No. 538], which resolved some but not all of the disputes among the Debtors and the RMBS Trustees relating to the Sale Motion;

Whereas, on June 11, 2012 the Debtors filed the *Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* (the "**RMBS Compromise Motion**") [Docket No. 320], seeking authority to propose a settlement to the RMBS Trustees under which all the claims of each accepting RMBS Trust (including, without limitation, claims relating to the Debtors' alleged breach of obligations relating to the Servicing Sale and to the servicing of loans owned by the RMBS Trusts) would be allowed as general, non-priority claims against one or more of the Debtors' estates (the "**Proposed RMBS Claim Settlement**");

Whereas, the Court adjourned the response and return dates to the RMBS Compromise Motion, *sine die*;

Whereas, the RMBS Trustees and the Official Committee of Unsecured Creditors in these cases (the "**Committee**") contend that they need adequate time to investigate the

3

magnitude of the claims of RMBS Trusts against the Debtors and, in light of the results of such investigations, consider the merits of the Proposed RMBS Claim Settlement;

Whereas, the RMBS Trustees also contend that resolution of the amount and priority of the claims of the RMBS Trusts (including consideration of the Proposed RMBS Claim Settlement) is linked to approval of the Servicing Sale as it has been structured by the Debtors, in that, according to the RMBS Trustees, some of the claims that would be settled under the Proposed RMBS Claim Settlement are (i) the claims associated with existing defaults under executory contracts that the Debtors propose to be assumed and assigned in connection with the Servicing Sale, (ii) to the extent that the Severed Provisions (as defined below) are found not to be severable, claims that will arise with respect to such Severed Provisions after the closing of the Servicing Sale, and (iii) to the extent the Limitation of Future Performance (as defined below) is permitted as part of the assumption and assignment of the Assumed Contracts, claims that will arise with respect to the Assumed Contracts after the closing of the Servicing Sale that are attributable to the Limitation of Future Performance (the "**Cure Claims**"), and that the Cure Claims might, depending on the determination of complex issues of law and fact affecting each RMBS Trust and related contracts, exceed the expected proceeds of the Sales;

Whereas, the RMBS Trustees also contend that the objections to the Servicing Sale that will need to be resolved prior to the entry of the order approving the assignment will relate to the scope of the obligations to be assumed by the assignee of the servicing agreements (including the proposed limitation of future performance described in the second bulleted paragraph on page 32 of the Sale Motion (the "**Limitation of Future Performance**")), and the ability of the assignee to perform under the assumed servicing agreements. Because the resolution of the scope of the

4

obligations that must be assumed may impact the bidding at the Auction which will be held on October 23, 2012, this issue must be resolved prior to October 23, 2012;

Whereas, the RMBS Trustees contend, and the Committee agrees, that in advance of the Servicing Sale, the Court need not fix the amount of the Cure Claims, because the RMBS Trustees will not object to the assumption and assignment of the PSAs free and clear of any lien, claim or encumbrance, including the Cure Claims, provided that (a) the RMBS Trustees' and Committee's objections to the RMBS Compromise Motion, Cure Claims and Severing Provisions are preserved in all respects and (b) all orders approving the Sale Motion (the "**Sale Orders**") provide that, to the extent allowed, the Cure Claims, if any, shall have administrative expense priority in these cases and shall attach to, and in no event shall exceed the amount of, the proceeds of (i) the Servicing Sale that are attributable to the mortgage servicing rights under the PSAs that have been assumed and assigned and (ii) any servicer advances that are subject to valid rights of setoff or recoupment of the RMBS Trustees (the "**Sale Proceeds**"), subject to the liens provided in the DIP Orders;[2]

Whereas, on July 10, 2012, the Court, after notice and hearing, directed the Debtors, the Committee, and the RMBS Trustees to propose a schedule for the litigation and resolution of the issues raised in the RMBS Compromise Motion, including the litigation and resolution of any related issues in connection with the Sale Motion;

---

[2] For purposes of this order, the term DIP Orders shall refer to the following: (i) *Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter Into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables and (B) to Obtain Post Petition Financing on a Secured Superpriority Basis and (II) Granting Related Relief* [Docket No. 490] and (ii) *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* [Docket No. 491].

Whereas, the RMBS Trustees have indicated that, as long as their objections to the Sales are preserved and as long as their Cure Claims, if any, attach to the Sale Proceeds, the RMBS Trustees consent to the assumption and assignment of the PSAs free and clear of any lien, claim or encumbrance, including the Cure Claims, and the RMBS Trustees and the Committee jointly support the entry of this order; and

Whereas, the Court has considered the materials submitted on July 20, 2012 by the Debtors, the Committee and the RMBS Trustees regarding the schedule for the litigation and resolution of the issues raised in the RMBS Compromise Motion and the Sale Motion.

**It is hereby Ordered that:**

1.      Except as expressly modified by this Order, all provisions of the Interim Sales Procedures Order remain in full force and effect.

2.      On or before July 31, 2012, in furtherance of the Servicing Sale, the Debtors shall file a motion (the "**Assumption and Assignment Motion**") to assume and assign those contracts that it seeks to transfer in connection with the Servicing Sale that relate to any RMBS Trust (the "**Assigned RMBS Contracts**"). In the Assumption and Assignment Motion, the Debtors shall, *inter alia* (i) identify any and all existing defaults associated with the Assigned RMBS Contracts and any cure amounts associated with such defaults (the "**Proposed Cure Amounts**"); and (ii) include an inventory (the "**RMBS Inventory**"), with respect to all Assigned RMBS Contracts, of the specific provisions of the Assigned RMBS Contracts that the Debtors contend they will not assume pursuant to the Severing Provisions (the "**Severed Provisions**") or which otherwise will not be enforceable after the Servicing Sale, including, without limitation, any provisions that the Debtors believe are unenforceable against the Debtors or any prospective purchaser under

Bankruptcy Code § 365(f)(1) or any other provisions of the Bankruptcy Code (the "**Unenforceable Provisions**").

      3.      On or before August 20, 2012, the Committee, the RMBS Trustees or any other party in interest may file any objections to the Assumption and Assignment Motion relating to (a) the RMBS Inventory, (b) the severing of the Severed Provisions other than any Severed Provision imposing any obligation or liability on any Debtor in respect of the origination and sale of mortgage loans to the RMBS Trusts (including, without limitation, representations and warranties made in connection with such sale and the noticing and enforcement of any remedies in respect of alleged breaches of such representations and warranties) (collectively "**Origination-Related Provisions**") and (c) the enforceability of the Unenforceable Provisions other than any Origination-Related Provisions included in the Unenforceable Provisions (collectively, the "**Pre-Auction Objections**").  The following deadlines and hearing dates shall apply:

    (a)  The time to respond to any request for discovery under Rules 7026-7037 shall be shortened to ten (10) days after service, irrespective of the form of service;

    (b)  Fact discovery may commence immediately and shall be completed on or before September 14, 2012;

    (c)  All pre-hearing briefs in support of or oppositions to the Pre-Auction Objections and pre-hearing motions and disclosures of witnesses, exhibits, and deposition designations shall be filed on or before October 4, 2012;

    (d)  Objections to pre-hearing motions and to exhibits, and counter-designations of deposition testimony, shall before filed on or before October 11, 2012; and

    (e)  An evidentiary hearing on the Pre-Auction Objections shall be held on October ____, 2012.

4.      Except as to the Pre-Auction Objections, all objections and Cure Claims of the RMBS Trustees in connection with the Sale Motion are reserved notwithstanding the entry of any order entered in connection with the Sale Motion; provided however, notwithstanding the foregoing or any other provision of this Order, the RMBS Trustees will not object to the assumption and assignment of the PSAs free and clear of any lien, claim or encumbrance, including the Cure Claims, provided that the Sale Order provides that, to the extent allowed, the Cure Claims, if any, shall have administrative expense priority in these cases and shall attach to the Sales Proceeds, subject to the liens provided in the DIP Orders. For the avoidance of doubt, the amount of the Cure Claims shall not exceed the Sale Proceeds.

5.      All reserved objections, together with any disputes regarding the amount and priority of any claims held by any RMBS Trust and any RMBS Trustee (including without limitation, Cure Claims and the consideration of the Proposed RMBS Claim Settlement) (collectively, the "**Disputed Matters**"), shall be subject to the following deadlines and hearing dates:

  (a) Discovery may commence immediately and by [DATE] the RMBS Trustees and the Debtors shall submit proposed discovery scheduling orders for the Court's consideration.

  (b) The RMBS Trustees shall complete their evaluation of the Proposed RMBS Claim Settlement on or before November 1, 2012;

  (c) If a settlement of the Disputed Matters is finalized and filed with the Court on or before November, 15, 2012 (the "RMBS Settlement"), then (a) on or before November 30, 2012, the Debtors shall file a motion under Bankruptcy Rule 9019 seeking approval of such settlement, and (b) on or before November 30, 2012, the RMBS Trustees may file a motion seeking court approval of the settlement.

8

(d) If a settlement of the Disputed Matters is not finalized and filed with the Court on or before November 15, 2012, then the parties shall submit to the Court a litigation schedule on the Disputed Matters, which shall provide for a final hearing on the Disputed Matters to be held on or before March 15 2013.

(e) In the event that, by March 31, 2013, any court order that is a condition to the effectiveness of the RMBS Settlement, other than an order under Bankruptcy Rule 9019, has not been entered, then, unless the RMBS Trustees have agreed to waive that condition, the Debtors and the Committee shall each have the right to terminate the RMBS Settlement, and in that event the parties will submit to the Court a litigation schedule on the Disputed Matters..

Dated: July ___, 2012  
New York, New York

_____  
UNITED STATES BANKRUPTCY JUDGE