1  Alan Moss
   P.O. Box 721
2  Moss Beach CA 94038
   Telephone:   (415)494-8314
3  Facsimile:   (650)728-0738

4  Attorney *In Pro Per*

5

6

7

8

9

10

11

                    IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE SOUTHERN DISTRICT OF NEW YORK
                              MANHATTAN DIVISION

|  |  |
|---|---|
| In Re: | Bankruptcy No.  12-12028-MG |
|  | Chapter 11 |
| EXECUTIVE TRUSTEE SERVICES, LLC | **MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR ORDER DISSOLVING THE AUTOMATIC STAY** |
| Debtor.) |  |

## MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR ORDER
### DISSOLVING AUTOMATIC STAY

**ALAN IRVING MOSS** (hereinafter "Movant") hereby moves this Court for

an Order terminating the automatic stay imposed by 11 USC §362(a), as it relates to Executive

Trustee Services, LLC(hereinafter "ETS"), permitting Movant to go forward with his State

Court action entitled *Moss vs. Executive Trustee Services, LLC,* Action No. CIV505386, now

1  pending in the Superior Court of California, County of San Mateo(hereinafter "ETS").

2

3                                              I.

4              STATEMENT OF FACTS AND PROCEDURAL HISTORY

5

6  **A. PROCEDURAL HISTORY**

7

8              On May 5, 2011, Movant filed suit against ETS in the Superior Court of San

9  Mateo County, California.  Because defendant failed to answer after being duly served, and

10  as compelled by the local rules of court, Movant took the default of ETS on June 17, 2011.

11  A day before the "prove-up" hearing to set damages and enter judgment, ETS appeared and

12  filed a motion to set aside the default;  the motion was set to be heard on March 6, 2012.  The

13  motion was withdrawn and subsequently re-filed on May 14, 2012 to be heard on May 31,

14  2012.  On the day that ETS's reply was due, ETS filed the Notice of Automatic Stay pursuant

15  to this bankruptcy filing.

16              Unbeknownst to movant, ETS is evidently wholly-owned by GMAC, which is

17  wholly-owned by Residential Capital, which is wholly-owned by Ally Bank.  It is unknown

18  at this time what the relationship is between ETS and Residential Capital, or whether ETS was

19  in any kind of financial difficulty warranting a bankruptcy filing.

20

21  **B. FACTUAL BACKGROUND**

22

23              This is a California foreclosure case.  California is a non-judicial foreclosure

24  state; i.e., the process of foreclosing on, and re-possessing a person's residence, occurs with-

25  out any involvement or oversight of the judicial system.  There is no judicial oversight of the

26

1  entire process. The system relies on non-judicial entities/individuals and financial institutions

2  to strictly comply with statutory procedures contained in California's Civil Code.

3        In brief, there are virtually no mortgages in California. Instead, there are deeds

4  of trust, where the "note" is incorporated into the deed of trust, which provides the authority

5  to foreclose. In this system, the homeowner/borrower is the trustor, the lender is the benefi-

6  ciary, and a third entity, a "trustee," is named in the deed of trust and serves to conduct the

7  foreclosure proceeding once requested to do so by the beneficiary. The trustee is supposed

8  to be neutral, and to treat both the trustor and beneficiary equally. The deed of trust can be

9  assigned, and the trustee can be replaced and a new trustee substituted in and named by the

10  current beneficiary. There are strict statutory procedures to be followed in this proceeding.

11        This action alleges and asserts that these statutory requirements were violated

12  in the most fundamental of way. ETS was the trustee who initiated the foreclosure process

13  and carried out all of the necessary steps to consummate the foreclosure. The lawsuit alleges

14  that ETS had no authority to carry out any of these acts because the entity who did the substi-

15  tution was not then currently a beneficiary, and would not become the beneficiary via assign-

16  ment for at least one year. These allegations are based upon the recorded documents in this

17  matter. Under California law, this renders the foreclosure sale invalid *ab initio*. *See* e.g., *Di-*

18  *mock vs. Emerald Properties* (2000) 81 Cal.App.4[th] 868.

19        Under California law, the trustee owes an equal duty to both the beneficiary and

20  the trustor; a violation of that duty is actionable in negligence.

21        The lawsuit alleges that ETS breached its duty to movant herein, in that it failed

22  to ascertain that it had no authority to conduct the non-judicial foreclosure process before it

23  proceeded to foreclose on movant's residence.[1] Because of these statutory violations, this

24

25      [1] The defendant(hereinafter "ETS") was illegally substituted in as trustee, and thereafter is-
sued a Notice of Default, a Notice of Trustee Sale, conducted the sale, and thereafter issued a Trus-

26

1  case seeks monetary damages from ETS.  Under long established California law, a trustee in

2  a foreclosure action owes an equal duty to both beneficiary *and trustor* to act with due care

3  and in good faith, and to insure that the entire process was legally and correctly done.[2]

4         A companion case, perhaps unaffected by this bankruptcy proceeding, seeks re-

5  versal of the sale of plaintiff's residence.[3]  Although this case is against The Bank of New

6  York, the defense is being handled by GMAC, which is wholly-owned by Ally Bank, the ow-

7  ner of the debtor herein.  It is also interesting to note that ETS is wholly owned by Ally as

8  well.  The entire record of the multiple assignments, documents notarized before and after the

9  date of sig-nature being notarized, and delayed recordings in this case are evidence of the ram-

10  pant "robo-signing" that was taking place throughout this time.  Thus, this instant lawsuit is

11  founded in negligence and negligence-related causes of action against ETS for breaching its

12  duty to plaintiff.

13

14                              **II.**

15                      **LAW AND ARGUMENT**

16

17         Pursuant to 11 USCA §362(d)(1), the automatic stay invoked by 11 USC §362

18  (a) may be lifted for "cause."  Bankruptcy courts have broad discretion in deciding whether

19  to grant relief from an automatic stay, and they determine whether there is sufficient cause to

20

21  tee's Deed.  Thus, the defendant had no power to issue any of the required notices, had no power to
conduct the sale and had no power to issue the Trustee's Deed.

22  [2] *See Munger vs. Moore* (1970) 11 Cal.App.3rd 1;  *Kerivan vs. Title Insurance and Trust Company*

23  (1983) 147 Cal.App.3rd 225;  *Residential Capital, LLC vs. Cal-Western Reconveyance Corp.* (2003) 108 Cal.
App.4th 807;  *Pro Value Properties, Inc. Vs. Quality Loan Service Corp.* (2009) 170 Cal.App.4th 579.

24  [3] *Moss vs. Bank of New York*, No. 10-1734, U.S. District Court, Northern District of Califor-

25  nia.  The case was removed to the District Court from the Superior Court of the County of San Ma-
teo, No. CIV486130.

26

1   lift or modify a stay on an case-by-case basis. *Matter of Reitnauer* (1998) 152 F.3rd 341, 343,

2   n. 4; *In re Robinson* (1992) 964 F.2nd 342, 345. Movant need only "make an initial showing

3   of 'cause' for relief from the stay." *In re Sonnax Industries, Inc.* (1990) 907 F.2nd 1280, 1285;

4   *In re Mazzeo* (1999) 167 F.3rd 139, 142. After making such a showing, "the burden then lies

5   with the debtor to demonstrate that it is entitled to the stay." *In re Unioil* (Bankr. D. Colo.

6   1985) 54 B.R. 192, 194. As Movant demonstrates *infra*, such cause exists in the instant mat-

7   ter and this Court should therefore terminate or modify the automatic stay to allow Movant's

8   State action to proceed.

9

10  **A. Movant Has Standing to Bring this Action**

11

12          The party moving for relief from an automatic stay must have current status as

13  a creditor. *In re Comcoach Corp.* (1983) 698 F.2nd 571, 573. A "creditor" is one who has a

14  right to payment or an equitable remedy, whether or not that right is contingent. 11 USC§ 101

15  (5). Here, movant filed his complaint against Debtor in State court on May 5, 2011 seeking

16  damages for Debtor's wrongdoing. (*See* Declaration of Alan Moss(hereinafter "Moss Declar-

17  ation") at ¶2. As a party with a right to payment of damages, movant is currently a creditor,

18  within the meaning of 11 USC §101(5). Debtor filed for bankruptcy on May 14, 2012. Par-

19  ties to pending litigation in state or federal district court may seek relief from the automatic

20  stay to proceed with litigation in the non-bankruptcy forum. *In re Blan* (Bankr. 8th Cir. 1999)

21  237 F.3rd 737, 739; *In re Wardrobe* (2009) 559 F. 3rd 932, 937. Therefore, movant has stand-

22  ing to bring this motion as creditor.

23

24  **B.      Movant Is Entitled To Relief From The Automatic Stay Because Debtor
            Willfully And Maliciously Caused The Injuries Complained Of In Mo-**

25  **        vant's State Action.**

26

The prospective nondischargeability of a claim constitutes "cause" under the meaning of 11 USC §362(d)(1). *Acevedo vs. Van Dorm Plastic Machinery Co.* (Bankr. E.D. N.Y. 1986) 68 B.R. 495,498. Pursuant to 11 USC §523(a)(6), a debtor is not discharged from any debt "for wilful and malicious injury by the debtor to another entity or to the property of another entity." 11 USC §523. Under the discharge exception set forth in 11 USC §523(a) (6), a malicious injury involves: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without cause or excuse." *In re Jerich* (2001) 238 F.3rd 1202, 1209, quoting *In re Bammer* (1997) 131 F.3rd 788, 791. In other words, "it is the wrongful act that must be committed intentionally rather than the injury itself." *In re Sicroff* (2005) 401 F.3rd 1101, 1106. An injury may be deemed "wilful" under 11 USC §523(a)(6) upon a showing that the defendant "intended to cause [the] injury or knew that such injury was substantially certain to result from his conduct." *In re Assevero* (Bankr. N.D. GA 1995) 185 B.R. 951, 955. In *In re Doyan* (Bankr. S.D. FL 1996) 204 B.R. 250, 259, the court found that a cosmetic surgeon acted wilfully and maliciously by inducing the plaintiff to undergo a procedure in which the physician failed to meet the applicable standard of care and deviated from established guidelines.

Similarly, as discussed in detail *infra*, movant's complaint encompasses causes of action that demonstrate that defendant/debtor engaged in wilful and malicious misconduct within the meaning of 11 USC§523(a)(6). ETS knew or should have known, from the face of the recorded title documents, that it was named as substitute trustee by an entity that would not become a beneficiary for more than a year hence; and further, that the very document by which said entity became beneficiary was fatally flawed because it was notarized more than six months after the assignment document was even signed by a corporate officer.

Bankruptcy law governs whether a claim is nondischargeable under 11USC §523 (a)(6), but the Court first looks to State law to determine whether the underlying torts

1  are malicious and wilful in nature. *In re Bailey* (1999) 197 F.3rd 997, 1000; *Lockerby vs. Sier-*

2  *ra* (2008) 535 F.3rd 1038, 1041. Movant's complaint clearly sets forth causes of actions that

3  allege that Debtor intentionally committed unexcused wrongful acts and that it was substan-

4  tially certain its conduct would result in the injuries that ultimately led to movant's damages.[4]

5  The Ninth Circuit has held that the misconduct underlying the tort of fraud substantiates a

6  finding that a debt is nondischargeable under 11 USC §523(a)(6). *In re Diamond* (2002) 285

7  F.3rd 822, 828. In light of movant's numerous causes of action alleging debtor's intentional

8  and malicious misconduct and the prospective nondischargeability of a State court judgment,

9  the stay should be lifted.

10

11  **C.    THE AUTOMATIC STAY SHOULD BE LIFTED TO PERMIT MOVANT TO CONTINUE HIS
    STATE ACTION DUE TO DEBTOR'S ABUSE OF THE JUDICIAL PROCESS AND BAD**

12  **FAITH FILING FOR BANKRUPTCY**

13
        Courts have recognized a variety of relevant factors for determining whether

14
    bad faith constitutes "cause" under 11 USC §362(d)(1), including whether the debtor demon-

15
    strated an "intent to abuse the judicial process and the purposes of the reorganization provi-

16
    sions." *(In re Albany Partners, Ltd.* (1984) 749 F.2nd 670, 674; *In re Natural Land Corp.*

17
    (1987) 825 F.2nd 296, 298). Other factors include the time the debtor filed for bankruptcy, the

18
    use of bankruptcy proceedings despite the apparent good financial health of the debtor, and

19
    whether the petition was filed to circumvent pending litigation. *(In re Dixie Broadcasting,*

20
    *Inc.* (1989) 871 F. 2nd 1023, 1027; *Matter of Holtkamp* (1982) 669 F.2 nd 505, 508).

21
        Given that Debtor filed for bankruptcy a week before the prove-up hearing, it

22
    is clear that Debtor's initiation of bankruptcy proceedings constituted a "bad faith" circum-

23

24  ─────────────────────

25      [4] *See*, e.g. Third Cause of Action for fraud and Fourth Cause of Action for Intentional
    Infliction of Emotional Distress, attached to the Moss Declaration at ¶2..

26

1  vention of litigation. Therefore, this Court should terminate the automatic stay and allow mo-

2  vant's state court action to proceed.

3        Additionally, whereas Residential Mortgage may have been experiencing diffi-

4  cult financial times(a premise difficult to fathom given the hundreds of millions of tax dollars

5  given to their parent in a "bailout"), there is absolutely no evidence that ETS was experiencing

6  the same kind of difficulties. It is noted that ETS is an incorporated business entity in Cali-

7  fornia.

8

9  **D.    THE BALANCE OF THE PARTIES HARMS AND HARDSHIPS WEIGHS IN FAVOR OF LIFTING THE STAY**

10

11        In determining whether a motion for relief from an automatic stay should be

12  granted,  the Court must consider the balance of harms between the parties. *In re San Cle-*

13  *mente Estates* (Bankr. SD Cal. 1980) 5 B.R. 605, 611; *In re Curtis* (Bankr.D.Utah 1984) 40

14  B.R. 795, 799-800; *In re Sonnax Industries, Inc., supra,* 907 F.2nd at 1286; *In re Hakim*

15  (Bank. N.D. Cal. 1997) 212 B.R. 632, 639-640. The Court in *In re San Clemente Estates* ac-

16  knowledged that bankruptcy courts -- as courts of equity -- "must fully consider the individual

17  circumstances of the parties and weigh the so-called "balance of hurt" that results from its de-

18  cisions." *Supra* 5 B.R. 611.

19        Movant would be severely prejudiced without relief from the automatic stay,

20  whereas the debtor will not suffer significant, or indeed any, harm if the present stay is lifted.

21  Allowing the State court to render a judgment on debtor's liability would greatly simplify the

22  process of dischargeability. Conversely, allowing the stay to remain in effect would unequi-

23  vocally and irreversibly compromise movant's entire State action. Therefore, the prejudice

24  to movant that would result from a continued stay far outweighs any prejudice to debtor if the

25  stay is lifted. Moreover, even if the court denies movant's motion, the court would still have

26

1 to assess movant's claims when resolving the debtor's bankruptcy affairs. Debtor will have

2 to expend resources to address movant's claims regardless of venue.

3        28 USC §157(b)(5) explicitly states that bankruptcy courts should refrain from

4 hearing cases like movant's State action: "The district court shall order that personal injury

5 tort and ....actions claims shall be tried in the district court in which the bankruptcy case is

6 pending, or in the district court in the district in which the claims arose, as determined by the

7 district court in which the bankruptcy case is pending." Allowing the State court proceeding

8 to move forward would therefore not only simplify the management of debtor's bankruptcy

9 estate, it would also promote judicial economy by allowing courts to handle claims that tradi-

10 tionally fall under their purview.

11

12 **E.    THIS COURT SHOULD TERMINATE OR MODIFY THE AUTOMATIC STAY IN THE INTEREST OF JUDICIAL ECONOMY**

13

14        The Court in *In re Murray Industries, Inc.* (Bankr. M.D.Fla. 1990) 121 B.R. 635

15 noted that "allowing a matter to proceed to another forum may constitute 'cause' to lift the

16 stay." The court further acknowledged that the relevant legislative history of the Bankruptcy

17 Code indicated that "it will often be more appropriate to permit proceedings to continue in

18 their place of origin, when no great prejudice to the bankruptcy estate would result, in order

19 to leave the parties to their chosen forum, and to relieve the bankruptcy court from any duties

20 that may be handled elsewhere." (*Id.* at 636 (citing S.Rep. 95-989, at 50(1978). In fact, "the

21 Court should restrain from exercising its jurisdictional power to supersede the state court in

22 the interest of, not only of cooperation and comity between the courts, but in the interest of

23 judicial economy and the expeditious and economical determination of litigation for the par-

24 ties." (*In re Pembeton Pub Inc.* (Bankr.D. Mass. 1981) 16 B.R. 275, 277; see also *In re Cur-*

25 *tis,* 40 B.R. at 799).

26

1        It is well settled that bankruptcy courts can lift automatic stays, allow parties to

2 litigate in another forum, and mandate that "no action be taken to enforce any resulting judg-

3 ment until the bankruptcy court has ruled." (*In re Erikson*, 330 B.R. 346, 350 (D.Conn.

4 2005). This Court therefore has the option to allow the San Mateo County Superior Court to

5 handle movant's State action against the debtor and wait to interpret the significance of that

6 judgment in the bankruptcy context. This route is desirable because while this Court is emi-

7 nently qualified to decide how dischargeable debts affect a party's Chapter 11 reorganization,

8 the state court remains better equipped to determine whether movant has met his burden of

9 proof in establishing that debtor committed various state law torts. As noted above, 28 USC

10 §157(b)(5) acknowledges that bankruptcy courts are ill suited for hearing and making deter-

11 minations about personal injury claims. Here the Superior Court in San Mateo County could

12 render final determinations of movant's complex claims and make it easier for this Court to

13 manage debtor's bankruptcy affairs, thus promoting the interests of judicial economy.

14        Terminating or modifying the stay would reduce the burden on this Court and

15 would not compromise movant's ability to advance its state court claim. It will be necessary

16 for a court to bring in the defendants in movant's state court action in order to fully evaluate

17 movant's claims, and the Superior Court in San Mateo County is the only court that has juris-

18 diction over all of the parties and is capable of ruling on these claims. Moreover, as described

19 more fully above, movant will be prejudiced if the claims in their state court action are re-

20 solved without debtor participation. On the other hand, debtor will not suffer prejudice if

21 compelled to participate in movant's state court action because – regardless of whether this

22 court denies the present motion – debtor and this court will still have to address movant's

23 claims as a creditor when resolving debtor's bankruptcy affairs. Lifting the stay and obliging

24 debtor to participate in the state court action would give the state court a complete picture of

25 the facts and events that gave rise to this lawsuit. By lifting the stay, the state court will be

26

1 able to determine the fault of all parties to the litigation. With the benefit of a clear determin-

2 ation from the state court, this court could then easily manage debtor's bankruptcy estate.

3    Thus, terminating or at least modifying the stay best serves the interest of judi-

4 cial economy.

5

6 **III.**

7 **CONCLUSION**

8

9    For the foregoing reasons, Movant respectfully requests that this Court issue an

10 Order terminating (or at least modifying) the automatic stay of 11 USC 362(a) and permitting

11 movant to go forward with his action in the Superior Court in and for the County of San Ma-

12 teo, California.

13

14 Dated: July 19, 2012

15            ALAN MOSS

16            In Pro Per

17

18

19

20

21

22

23

24

25

26

1  Alan Moss
   P.O. Box 721
2  Moss Beach CA 94038
   Telephone:   (415)494-8314
3  Facsimile:   (650)728-0738

4  Attorney *In Pro Per*

5

6

7

8
              IN THE UNITED STATES BANKRUPTCY COURT
9             FOR THE SOUTHERN DISTRICT OF NEW YORK
                     MANHATTAN DIVISION
10

11                                    )
12                                    )    Bankruptcy No.  12-12028-MG
    IN RE:                            )
13                                    )    Chapter 11
                                      )
14  EXECUTIVE TRUSTEE SERVICES,)          **DECLARATION OF ALAN MOSS IN**
    LLC                               )    **SUPPORT OF NOTICE OF MOTION**
15                                    )    **AND MOTION FOR ORDER DIS-**
                                      )    **SOLVING THE AUTOMATIC STAY**
16                          Debtor.)
17  _____)

18

19        I, ALAN MOSS, declare as follows:

20        1. I am the movant herein, and the plaintiff in the case of *Moss vs. Executive*

21  *Trustee Services, LLC,* Action No. CIV505386, now pending in the Superior Court of Califor-

22  nia, County of San Mateo(hereinafter "ETS").  I am familiar with the following factual mat-

23  ters, and if called to testify, I would state under oath as follows.

24        2. On May 5, 2011, I filed suit against ETS in the Superior Court of San Mateo

25  County, California, seeking monetary damages for its unlawful behavior.  A true and correct

26

1   copy of the complaint is attached hereto and made a part hereof as Exhibit One. Because

2   defendant failed to answer after being duly served, and as compelled by the local rules of

3   court, I took the de-fault of ETS on June 17, 2011. A day before the "prove-up" hearing to

4   set damages and enter judgment, ETS appeared and filed a motion to set aside the default; the

5   motion was set to be heard on March 6, 2012. This motion was improperly set and a new

6   motion was filed to be heard on May 31, 2012. On the day that ETS's reply was due, they

7   filed Notice of Automatic Stay pursuant to this bankruptcy filing.

8          3. Unbeknownst to movant, ETS was wholly-owned by GMAC, which is whol-

9   ly-owned by Residential Mortgage, which is wholly-owned by Ally Bank. There is no indica-

10  tion known of ETS's financial condition. ETS is a California corporation.

11         4. This case arises from a California foreclosure of my home and residence of

12  over twenty-five years. California is a non-judicial foreclosure state; i.e., the process of fore-

13  closing on, and re-possessing a person's residence, occurs with-out any involvement or over-

14  sight of the judicial system. There is no judicial oversight of the entire process. The system

15  relies on non-judicial entities/individuals and financial institutions to strictly comply with sta-

16  tutory procedures contained in California's Civil Code.

17         5. This action alleges and asserts that these statutory requirements were violated

18  in the most fundamental of ways. ETS was the [supposed] trustee who initiated the foreclo-

19  sure process and carried out all of the necessary steps to consummate the foreclosure. The

20  lawsuit alleges that ETS had no authority to carry out any of these acts because the entity who

21  did the substitution was not then currently a beneficiary, and would not become the benefi-

22  ciary via assignment for at least one year. These allegations are based upon the recorded do-

23  cuments in this matter. Under California law, the trustee owes an equal duty to both the bene-

24  ficiary and the trustor; a violation of that duty is actionable in negligence. The lawsuit alleges

25  that ETS breached its duty to movant herein, in that it failed to ascertain that it had no author-

26

1  ity to conduct the non-judicial foreclosure process before it proceeded to foreclose on mo-

2  vant's residence.  Because of these statutory violations, this case seeks monetary damages

3  from ETS.

4        6. A companion case, unaffected by this bankruptcy proceeding, seeks reversal

5  of the sale of plaintiff's residence (*Moss vs. Bank of New York,* No. 10-1734, U.S. District

6  Court, Northern District of California.)  The case was removed to the District Court from the

7  Superior Court of the County of San Mateo, No. CIV486130). . Although this case is against

8  The Bank of New York, the defense is being handled by GMAC, which is wholly-owned by

9  Ally Bank, the owner of the debtor herein.  It is also interesting to note that ETS is wholly

10  owned by Ally as well.  The entire record of the multiple assignments, documents notarized

11  before and after the date of signature being notarized, and delayed recordings in this case are

12  evidence of the rampant "robo-signing" that was taking place throughout this time.

13        7. ETS is a California corporation, qualified to do business within the State of

14  California. None of its official documents filed with the California Secretary of State mention

15  that it is wholly-owned by GMAC and Residential Mortgage.

16        8. I would be severely prejudiced if the automatic stay provisions were not lift-

17  ed from my case against ETS in California.  I was essentially one day away from getting a

18  judgment against ETS when this automatic stay was filed.  Prior to that time, there was no in-

19  dication that ETS was part of Ally Financial, or that this bankruptcy was eminent.  The entire

20

21

22

23

24

25  / / /

26

1  case is based in tort under California law.

2

3       I declare under penalty of perjury under the laws of the State of California that

4  the foregoing is true and correct.  Executed on the ___19___ day of July 2012 at San Francisco

5  California.

6

7

8                                                ALAN MOSS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT ONE

1  Alan Moss
   P.O. Box 721
2  Moss Beach CA 94038
   Telephone:  (415)296-7500
3  Facsimile:   (650)728-0738

4  Attorney *In Pro Per*

5

6

7

8

9
                    SUPERIOR COURT OF CALIFORNIA
                 IN AND FOR THE COUNTY OF SAN MATEO

10

11  ALAN IRVING MOSS,              )
                                   )        Action No.
12              Plaintiff,)        )
                                   )
13                                 )        COMPLAINT FOR
                                   )        (1). Negligence
14      vs.                        )        (2). Negligence *per se*
                                   )        (3). Fraud
15  EXECUTIVE TRUSTEE SERVICES, LLC )        (4). Intentional Infliction of
    F/K/A EXECUTIVE TRUSTEE SERVICES, )          Emotional Distress
16  INC., AND DOES 1-50, INCLUSIVE )        (5). Negligent Infliction of
                                   )           Emotional Distress
17                                 )
                                   )
18              Defendants.)       )
    _____   )

19  Plaintiff ALAN IRVING MOSS alleges as follows:

20          1. Plaintiff ALAN IRVING MOSS is, and at all times hereinafter mentioned

21  was, an individual residing in the County of San Mateo, California.

22          2. Defendant  EXECUTIVE TRUSTEE SERVICES, LLC F/K/A EXECU-

23  TIVE TRUSTEE SERVICES, INC., (hereinafter "ETS") is, and at all times hereinafter men-

24  tioned was, a business of unknown legal origin and form.

25

26

3. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as Does I through 50, inclusive, are unknown to plaintiff, who sue said defendants by such fictitious names; plaintiff will amend this Complaint to show the true names and capacities if and when the same are ascertained; and plaintiff is informed and believes, and thereon alleges, that said defendants, and each of them, are responsible in some manner for plaintiff's damages as herein alleged.

4. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the defendants was the agent of the remaining defendants and, in doing the things herein alleged, was acting within the course and scope of such agency.

5. Plaintiff has owned and resided in the property located at 86 San Lucas, Moss Beach, California(the "property"), within the County of San Mateo, continuously from 1984 to the present. The legal description of the property, as contained in the official records of San Mateo County,  is APN No. 037-275-120, Lots 22 and 23, Blk. 13, Riviera Ocean Villa.

6. According to actions taken by defendant hereinafter described, the subject property also included Parcel No. 037-275-170, Lot 20 when it was encumbered by the financial instrument which is the subject of this lawsuit. Lot 20 is not contiguous to Lots 22 and 23, but rather is separated by a legally separate lot, Lot 21.

7. On or about June 22, 2005, plaintiff took out a loan against the subject property, as evidenced by a Note. Plaintiff was the borrower. CJ Mortgage, Inc. was the lender.

8. The Note was secured by a Deed of Trust, in which the purported parties were: CJ Mortgage, Inc. as the beneficiary, Alliance Title was the trustee, and  plaintiff was the trustor. Said Deed of Trust described the property as APN 037-275-170-6. Said instrument was recorded on July 5, 2005.

9. The County of San Mateo does not contain any APN number with the des-

1  cription 037-275-170-6.

2    10.  The original lender, CJ Mortgage, Inc. drafted both the Note and Deed of

3  Trust.  Plaintiff took no part in the drafting of these documents, which were drafted so as to

4  bifurcate the debt(Note) from the security(Deed of Trust) in order to, on information and be-

5  lief, facilitate the creation of certain securitized investment vehicles.

6    11.  According to public records on file with the Recorders Office of San Mateo

7  County, on or about June 27, 2005, said property was allegedly assigned to Option One Mort-

8  gage Corporation by CJ Mortgage Inc.  The trustee listed in said assignment was Alliance

9  Title.  Said alleged assignment was recorded on April 4, 2007.  A true and correct copy of said

10  assignment as contained in the official records of the County of San Mateo is attached hereto

11  as Exhibit 2.  Plaintiff herein never received notice of said assignment.  Said instru-ment was

12  recorded on July 5, 2005.

13    12.  On or about October 26, 2005, Option One Mortgage Corporation prepared

14  a document entitled "Substitution of Trustee," in which it substituted Premier Trust Deed Ser-

15  vices Inc. as trustee in place and stead of Alliance Title.  Said document was recorded on

16  February 3, 2006.  A true and correct copy of said assignment as contained in the official re-

17  cords of the County of San Mateo is attached hereto as Exhibit 3.

18    13.  On or about October 26, 2005, an entity set forth as "TCIF REO2, LLC"

19  prepared a document entitled "Substitution of Trustee," in which it claims to be the "present

20  beneficiary" and claims to substitute "Executive Trust Deed Services, LLC FKA Executive

21  Trust Deed Services, Inc." as trustee in place and stead of, on information and belief, Premier

22  Trust Deed Services Inc.  Said document was recorded on November 10, 2006.  This docu-

23  ment was signed in Pennsylvania by a Margie Kwaitanowski, as vice-president of TCIP

24  REO2, LLC. On or about October 25, 2005, Ms. Kwaitanowski was actually employed by

25  GMAC in Pennsylvania, a business entity of unknown legal form.  In addition, the notary on

26

1 | the document was Brenda Staehle, who was also an employee of GMAC. A true and correct

2 | copy of said assignment as contained in the official records of the County of San Mateo is at-

3 | tached hereto as Exhibit 4.

4 |       14. On or about October 26, 2005, TCIF REO2, LLC was not the present bene-

5 | ficiary under the deed of trust referred to hereinabove, nor had it been assigned the deed of

6 | trust as of that date.

7 |       15. On or about November 10, 2006, TCIF REO2, LLC was not the present be-

8 | neficiary under the deed of trust, nor had it been assigned the deed of trust as of that date.

9 |       16. According to public records on file with the Recorders Office of San Mateo

10 | County, on or about September 15, 2007, said property was allegedly assigned to "TCIF,

11 | LLC" by Option One Mortgage Inc. The signature of the officer of the assignor was notar-

12 | ized more than four months prior to the signature of the representative of the assignor, on May

13 | 7, 2007; the date of May 7, 2007 was interlineated by handwriting after a typed date of May

14 | 8, 2008 was crossed out. The document was allegedly notarized on May 7, 2007; the "7" of

15 | the "2007" date was written by hand over the "8" of the typed "2008." Plaintiff is informed

16 | and believes, and on that basis alleges, that this document was actually signed and notarized

17 | on My 8, 2008. Said alleged assignment was recorded on June 16, 2008. A true and correct

18 | copy of said assignment as contained in the official records of the County of San Mateo is at-

19 | tached hereto as Exhibit 5. Plaintiff herein never received notice of said assignment.

20 |       17. According to public records on file with the Recorders Office of San Mateo

21 | County, on or about September 17, 2007, a Notice of Default was recorded against said pro-

22 | perty. Said document was issued by "TCIF REO2, LLC c/o Executive Trustee Services

23 | LLC." The document was signed by "Executive Trustee Services, LLC as agent for benefi-

24 | ciary." The document was recorded on September 18, 2007. A true and correct copy of said

25 | assignment as contained in the official records of the County of San Mateo is attached hereto

26 |

1   as Exhibit 6.

2         18. Plaintiff never received notice of any Notice of Default up to and including

3   the present time.

4         19. According to public records on file with the Recorders Office of San Mateo

5   County, on or about April 29, 2008, said property was allegedly assigned to The Bank of New

6   York Trust Company by TCIF, LLC. Said alleged assignment was recorded on June 16, 2008.

7   A true and correct copy of said assignment as contained in the official records of the County

8   of San Mateo is attached hereto as Exhibit 7. Plaintiff herein never received notice of said

9   assignment.

10        20. According to public records on file with the Recorders Office of San Mateo

11   County, on or about May 19, 2008, a Notice of Trustees Sale was recorded on said property

12   by ETS Services, LLC, which was, on information and belief, a sub-entity of Executive Trus-

13   tee Services. A true and correct copy of this document as contained in the official records of

14   the County of San Mateo is attached hereto as Exhibit 8.

15        21. On or about May 7, 2009, unbeknownest to plaintiff, a Trustee Sale took

16   place, conducted by defendant ETS, pursuant to the Notice of Default and Notice of Trustees

17   Sale, regarding the foreclosure on the property, in which defendant ETS as trustee, sold the

18   property.

19        22. On or about May 12, 2009, defendant ETS prepared a document entitled

20   Trustee's Deed Upon Sale which purported to grant to The Bank of New York Trust Com-

21   pany, title to said property. The document states that "grantee was the foreclosing benefi-

22   ciary." On information and belief, this was a full credit purchase sale, and no cash changed

23   hands, in derogation of the specific language of the Notice of Trustees Sale. The Bank of

24   New York Trust Company was not a BFP. A true and correct copy of this document as con-

25   tained in the official records of the County of San Mateo is attached hereto as Exhibit 9.

26

# FIRST CAUSE OF ACTION

## (NEGLIGENCE)

23. Plaintiff re-alleges and re-asserts, as though fully set forth herein, Paragraphs 1 - 22 inclusive.

24. At all relevant times herein, defendant ETS, acting as trustee, owed plaintiff an affirmative duty of care, that in fulfilling its responsibilities as trustee, and in particular to exercise the power of sale of residential real property, to faithfully comply and strictly comport with the laws of California and the provisions of the deed of trust referred to hereinabove. In particular, because ETS was acting under a power of sale whose actions could result in the removal of plaintiff from his residence, and because ETS had an affirmative duty of care to plaintiff, ETS had an affirmative duty of care to plaintiff to treat plaintiff fairly, in a manner equal to the manner in which it was treating the alleged beneficiary, and in conformance with the law.

25. Prior to issuing the Notice of Default and the Notice of Trustees Sale, defendant ETS negligently failed to examine the chain-of-title of the subject property and negligently failed to determine that it had not in fact been legally and properly substituted in as trustee, and had no power and authority to issue said Notice of Default and Notice of Trustee Sale.

26. At the time that defendant ETS was allegedly made trustee by virtue of said substitution of trustee prepared and recorded by TCIF REO2, LLC , TCIF REO2, LLC was not the present beneficiary of the deed of trust. Therefore, defendant ETS could not, and did not, legally acquire the power of sale from the purported substitution; therefore, ETS had no power and authority to issue said notices.

27. Prior to conducting the trustee's sale which resulted in plaintiff allegedly

1   losing his property, defendant ETS negligently failed to examine the chain-of-title of the sub-

2   ject property and negligently failed to determine that it had in fact been legally and properly

3   substituted in as trustee, and had the power and authority to conduct said trustee's sale.

4       28. At the time that defendant ETS was allegedly made trustee by virtue of said

5   substitution of trustee prepared and recorded by TCIF REO2, TCIF REO2, LLC was not the

6   present beneficiary of the deed of trust. Therefore, defendant ETS could not, and did not, le-

7   gally acquire the power of sale from the purported substitution; therefore, ETS had no power

8   and authority to conduct said trustee sale.

9       29. Prior to issuing the Trustees Deed referred to hereinabove, defendant ETS

10  negligently failed to examine the chain-of-title of the subject property and negligently failed

11  to determine that it had in fact been legally and properly substituted in as trustee, and had the

12  power and authority to issue said Trustees Deed.

13      30. At the time that defendant ETS was allegedly made trustee by virtue of said

14  substitution of trustee prepared and recorded by TCIF REO2, TCIF REO2, LLC was not the

15  present beneficiary of the deed of trust Therefore, ETS could not, and did not, legally acquire

16  the power of sale from the purported substitution; therefore, ETS had no power and authority

17  to issue said Trustees Deed.

18      31. By doing the acts aforementioned mentioned, and each of them, defendant

19  ETS breached the duty of care it owed to plaintiff.

20      32. As a direct and proximate result of the negligence of defendant ETS, as set

21  forth hereinabove, plaintiff sustained damage, both physically, emotionally and financially,

22  and plaintiff prays judgment against defendant as hereinafter set forth.

23                     **SECOND CAUSE OF ACTION**

24                     **(NEGLIGENCE *PER SE*)**

25      33. Plaintiff re-alleges and re-asserts, as though fully set forth herein, para-

26

1    graphs 1 - 32 inclusive.

2         34. On or about September 21, 2006, defendant ETS was allegedly substituted

3    in as trustee of the Note and Deed of Trust as set forth hereinabove.

4         35. As the purported trustee under a Deed of Trust, ETS believed it had ac-

5    quired the powers enunciated in the Deed of Trust and the relevant statutes of the State of

6    California, i.e., Civil Code §§ 2924b and 2934, including the power of sale.

7         36. Acting under this supposed power, defendant ETS negligently issued a No-

8    tice of Default dated September 17, 2007 regarding the subject property.

9         37. Acting under this supposed power, ETS negligently issued a Notice of Trus-

10    tees Sale dated May 19, 2008.

11         38. Acting under this supposed power, defendant ETS negligently conducted

12    a Trustees Sale on said property, in which The Bank of New York Trust Company "bought"

13    the property on a credit bid and acting as the "foreclosing beneficiary."

14         39. Acting under this supposed power, defendant ETS negligently issued a

15    Trustees Deed to the Bank of New York Trust Company, purporting to pass title to said pro-

16    perty to The Bank of New York Trust Company.

17         40. At all relevant times herein, there was in effect California Civil Code §§

18    2924b and 2934 which provided the only method by which a beneficiary could substitute in

19    a new trustee and instill on said trustee all the powers of the previous trustee and trust deed.

20    Pursuant to said statute, only the beneficiary or beneficiaries had the power to substitute a new

21    trustee. On the date that ETS was substituted in as new trustee by TCIF REO2, LLC, TCIF

22    REO2, LLC was not the beneficiary under said Deed of Trust, because it was not assigned the

23    deed of trust until May 7, 2007 at the earliest.

24         41. Civil Code §§ 2924b and 2934 are a statutory scheme designed specifically

25    for the protection of trustors under a deed of trust, specifically in this case the plaintiff herein.

26

1    42.  As a result of defendant ETS acting in derogation of the aforementioned

2  statutes, plaintiff was directly and proximately injured as hereinafter prayed and set forth.

3    43.  As a direct and proximate result of the negligence of defendant ETS, as set

4  forth hereinabove, plaintiff sustained damaged, both physically, emotionally and financially,

5  and plaintiff prays judgment against defendant as hereinafter set forth.

6

7                        **THIRD CAUSE OF ACTION**

8                                **(FRAUD)**

9    44.  Plaintiff re-alleges and re-asserts, as though fully set forth herein, para-

10  graphs 1 - 43 inclusive.

11    45.  At the time that defendant ETS issued the Notice of Default and the Notice

12  of Trustee Sale, defendant ETS knew or should have known, that it did not have the legal au-

13  thority to issue said notices.

14    46.  At the time that defendant ETS conducted the trustees sale set forth here-

15  inabove, defendant ETS knew or should have known, that it did not have the legal authority

16  to conduct said sale.

17    47.  At the time that defendant ETS issued the Trustees Deed on said property,

18  as set forth hereinabove, defendant ETS knew or should have known, that it did not have the

19  legal authority to issue said Trustees Deed.

20    48.  As a direct result of these aforementioned actions of defendant ETS, and

21  because of direct representations of defendant ETS to plaintiff, plaintiff was caused to believe

22  that his property was subject to being sold at a trustees sale and that said sale would not be

23  cancelled unless and until plaintiff reached an agreement with the loan servicer, GMAC.

24    49. Defendant ETS, by doing the acts hereinabove complained of, intended that

25  plaintiff rely on its official capacity and representations, and that plaintiff had to reach agree-

26

1   ment with GMAC to cancel said sale.

2           50.  Due to the fraudulent misrepresentations made to plaintiff by defendant

3   ETS, and others purporting to act on behalf of those purporting to hold a beneficial interests

4   in the property, and their principals, agents, assignors, assignees and predecessor, plaintiff was

5   induced to reasonably rely on their express and implied assurance regarding loan forbearance

6   and forgiveness, cancellation and postponement of the foreclosure process.

7           51.  Plaintiff reasonably relied on said representations in paying $50,000.00 to

8   the loan servicer in order to cancel said sale; plaintiff reasonably and in good faith relied on

9   said representations that the sale would be cancelled;  as a direct result, plaintiff believed that

10  defendant ETS cancelled said scheduled trustees sale.

11          52.  In reliance on said representations, Plaintiff did not receive notice of any

12  subsequently scheduled trustee sale.

13          53.  As a result of the fraudulent activities by defendant ETS, Does 1 through

14  50 and their assignors ad predecessors in interest, plaintiff has been damaged in an amount

15  to be determined at trial, both as to compensatory and punitive damages.

16          54.  As a direct and proximate result of the negligence of defendant ETS, as set

17  forth hereinabove, plaintiff sustained damaged, both physically, emotionally and financially,

18  and plaintiff prays judgment against defendant as hereinafter set forth.

19

20                          **FOURTH CAUSE OF ACTION**

21              **(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

22

23          55.  Plaintiff re-alleges and re-asserts, as though fully set forth herein, para-

24  graphs 1 through 54 inclusive.

25          56.  Defendant's conduct, as hereinabove set forth, was intentional and mali-

26

1 cious and done for the purpose of causing plaintiff to suffer humiliation, mental anguish, and

2 emotional and physical distress. Defendant's conduct in confirming and ratifying that conduct

3 was done with knowledge that plaintiff's emotional and physical distress would thereby in-

4 crease, and was done with a wanton and reckless disregard of the consequences to plaintiff.

5      57. As a direct and proximate result of the acts alleged above, plaintiff suffered

6 humiliation, mental anguish and emotional and physical distress, and has been injured in mind

7 and body, all to plaintiff's damage.

8      58. By reason of the acts alleged above, plaintiff was prevented from attending

9 to plaintiff's usual occupation and thereby lost earnings. Plaintiff is informed and believes

10 and thereon alleges, that plaintiff will thereby be prevented form attending to plaintiff's usual

11 occupation for a period in the future which plaintiff cannot ascertain, and will thereby sustain

12 further loss of earnings.

13      59. The acts of defendants alleged above were willful, wanton, malicious, and

14 oppressive, and justify the awarding of exemplary and punitive damages.

15      60. Defendant ETS, Does 1 through 50 and any of their agents, principals, as-

16 signors, assignees, predecessor and related entities are in the business of real estate and knew

17 or should have known of the requirements of State law regarding the sale of real property.

18 Defendants, and each of them, deliberately and carelessly, or with such callous disregard for

19 State law that it amounted to deliberateness, violated the requirements of State law as set forth

20 hereinabove.

21      61. Defendants intentionally, with callous disregard for plaintiff, and with ma-

22 lice aforethought violated numerous requirements of State law, and as a direct and proximate

23 result, plaintiff was severely injured and made to suffer for months on end as this process

24 went forward.

25      62. As a direct and proximate result of the negligence of defendant ETS, Does

26

NOTICE OF MOTION AND MOTION FOR OR-
DER DISSOLVING THE AUTOMATIC STAY    - 29 -    BANKRUPTCY ACTION NO. 12-12028-mg

1   1 -50, and their agents, as set forth hereinabove, plaintiff sustained damages, both physically,

2   emotionally and financially, and plaintiff prays judgment against defendant as hereinafter set

3   forth.

4

5                               **FIFTH CAUSE OF ACTION**

6               **(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

7

8               63. Plaintiff realleges and re-assets, as though fully set forth herein, para-graphs

9   1 through 62 inclusive.

10              63. Defendant ETS, Does 1 - 50, and their agents, knew or should have known,

11  that its failure to exercise due care in the performance of its acts, as set forth hereinabove,

12  would cause plaintiff severe emotional distress.

13              64. Defendant's, and each of them, in their acts in defiance of the law, and in

14  a manner designed to be in derogation of California statute and the deed of trust, was a direct

15  breach of the law and statutes and deed of trust.

16              65. As a direct and proximate result of defendant's, and each of them, acts and

17  omissions, plaintiff suffered extreme emotional distress and threatened, and as of this date,

18  actual, loss of his property.

19              66. As a further proximate result of defendant's breach of duty and the conse-

20  quences proximately caused by it, as hereinabove alleged, plaintiff suffered severe emotional

21  distress and mental suffering, all to his damage.

22              67. As a direct and proximate result of the negligence of defendant ETS, as set

23  forth hereinabove, plaintiff sustained damaged, both physically, emotionally and financially,

24  and plaintiff prays judgment against defendant as hereinafter set forth.

25

26

1    WHEREFORE, plaintiff prays for judgment against Defendant ETS and Does

2   1 through 50 as follows:

3

4   AS TO THE FIRST CAUSE OF ACTION:

5   1.  For special and general damages according to proof at time of trial.

6   2.  For incidental damages in an amount to be determined at trial;

7   3.  For reasonable attorney fees;

8   4.  For costs of suit incurred; and

9   5.  For such other and further relief as the court may deem just and proper.

10

11   AS TO THE SECOND CAUSE OF ACTION:

12   1.  For special and general damages according to proof at time of trial.

13   2.  For incidental damages in an amount to be determined at trial;

14   3.  For reasonable attorney fees;

15   4.  For costs of suit incurred; and

16   5.  For such other and further relief as the court may deem just and proper.

17

18   AS TO THE THIRD CAUSE OF ACTION:

19   1.  For monetary damages, both compensatory and punitive, in an amount to be determined

20   at trial;

21   2.  For reasonable attorney fees;

22   3.  For costs of suit incurred; and

23   4.  For such other and further relief as the court may deem just and proper.

24

25   AS TO THE FOURTH CAUSE OF ACTION:

26

1. For special and general damages according to proof at time of trial.

2. For incidental damages in an amount to be determined at trial;

3. For punitive damages according to proof at trial.

4. For reasonable attorney fees;

5. For costs of suit incurred; and

6. For such other and further relief as the court may deem just and proper.

AS TO THE FIFTH CAUSE OF ACTION:

1. For special and general damages according to proof at time of trial.

2. For incidental damages in an amount to be determined at trial;

3. For reasonable attorney fees;

4. For costs of suit incurred; and

5. For such other and further relief as the court may deem just and proper.

Dated: May _____ , 2011.                    Respectfully submitted,

_____

ALAN IRVING MOSS

Attorney In Pro Per

# PROOF OF SERVICE

**COURT:**    U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**CASE NAME:**  IN RE: EXECUTIVE TRUSTEE SERVICES, LLC

**ACTION NO.:**        Bankruptcy NO. 12-12028-MG
Jointly Administered under 12-12020-MG
(San Mateo County No. CIV505386)

I am employed in the County of San Francisco, California. I am over the age of 18 and not a party to the within action. On this date, I served the foregoing document(s) described as:

## NOTICE OF MOTION AND MOTION FOR ORDER DISSOLVING THE AUTOMATIC STAY

on the party(ies) set out in said document by causing a true copy thereof to be:

[ ]    Telecopied via facsimile to the addressee's facsimile number listed below per CRC 2008(b).

[ ]    Telecopied via facsimile to the addressee's telephone number listed below, and thereafter mailed according to the procedures set forth immediately hereinbelow.

[ X ]  By U.S. mail, by placing said document(s) in a sealed envelope with first class postage thereon fully prepaid, and then deposited in a U.S. Post Office..

[ ]    By U.S. mail, Return Receipt Requested, by placing said document(s) in a sealed envelope with appropriate postage thereon fully prepaid and then placed in the designated office area for outgoing mail.

[ ]    Delivered by hand to the person set forth below, or by handing said document in a sealed envelope to a messenger service for delivery as addressed.

[ ]    Sent via Priority overnight mailing, by handing said document in a sealed envelope to an agent for the USPS for overnight delivery.

and if mailed, addressed as follows and sent to the following address(es):

Larren M. Nashelsky
Morrison & Forster LLP
1290 Avenue of the Americas
NY NY 10104
**SPECIAL SERVICE LIST ON FOLLOWING PAGE**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ___nd day of July, 2012, at San Francisco, California.

_____

1  SPECIAL SERVICE LIST: VIA E-MAIL

2  **1. Office of the United States Trustee for the Southern District of New York**
   Office of the United States Trustee 33 Whitehall Street
3  21st Floor
   New York, NY 10004
4  Attn: Tracy Hope Davis, Esq.
   Email: Tracy.Davis2@usdoj.gov

5
   **2. Office of the United States Attorney General**
6  U.S. Department of Justice
   950 Pennsylvania Avenue NW
7  Washington, DC 20530-0001
   Attn: US Attorney General, Eric H. Holder, Jr.
8  Email: AskDOJ@usdoj.com

9  **3. Office of the New York Attorney General**
   Office of the New York State Attorney General The Capitol
10 Albany, NY 12224-0341
   Attn: Nancy Lord, Esq.
11 Email: Nancy.Lord@OAG.State.NY.US

12 **4. Office of the U.S. Attorney for SDNY**
   Office of U.S. Attorney for the Southern District of New York One St. Andrews Plaza
13 New York, NY 10007
   Attn: Joseph N. Cordaro, Esq.,
14
   **5. Debtors**
15 Residential Capital, LLC
   1177 Avenue of the Americas
16 New York, NY 10036
   Email: Tammy.Hamzehpour@gmacrescap.com
17 **Counsel to the Debtors**
   Morrison & Foerster LLP
18 1290 Avenue of the Americas New York, NY 10104
   Attn: Larren Nashelskly, Esq.
19 Email: LNasheiskiy@mofo.com

20 **6. Counsel to the Creditors' Committee**
   Kramer Levin Naftalis & Frankel LLP 1177 Avenue of the Americas
21 New York, NY 10036
   Attn: Ken Eckstein
22 Email: keckstein@kramerlevin.com

23 **7. Prepetition Lenders**
   Citibank N.A.
24 390 Greenwich Street, 6th Floor
   New York, NY 10013
25 Attn: Bobbie Theivakurnaran

26

---

NOTICE OF MOTION AND MOTION FOR OR-          **- 34 -**          BANKRUPTCY ACTION NO. 12-12028-mg
DER DISSOLVING THE AUTOMATIC STAY

1  Email: bobbie.theivakurnaran@citi.com
   Fannie Mae
2  3900 Wisconsin Avenue NW
   Mail Stop 8H-504
3  Washington DC 20016
   Email: john_s_forlines@fanniemae.com
4
   **8. Counsel to Ally Financial Inc.**
5  Kirkland & Ellis
   601 Lexington Avenue New York, NY 10022 Attn: Ray C. Schrock
6  Email: richard.cieri@kirkland.com
7  **9. Indenture Trustees**
   Deutsche Bank Trust Company Americas 25 DeForest Avenue
8  Summit, NJ 07901
   The Bank of New York Mellon Asset Backed Securities Group 101 Barclay Street 4W
9  New York, NY 10286
   U.S. Bank National Association 50 South 16th Street, Suite 2000 Philadelphia, PA 19102
10 Attn: George Rayzis
   Email: george.rayzis@usbank.com
11 U.S. Bank National Association
   60 Livingston Avenue EP-MN-WS1D
12 St. Paul, MN 55107
   Attn: Irina Palchuk
13 Email: irinia.palchuk@usbank.com
14 10. **Counsel to U.S. Bank National Association**
   Kelley Drye & Warren LLP 101 Park Avenue
15 New York, NY 10178 Attn: James S. Carr
   Email: kdwbankruptcydepartment@kelleydrye.com
16 Wells Fargo Bank, N.A.
   P.O. Box 98
17 Columbia, MD 21046
   Attn: Corporate Trust Services, GMACM Home Equity Notes 2004 Viable Funding Trust
18
   **11. Counsel to Administrative Agent for the Debtors' Providers of Debtor in Possession**
19 **Financing**
   Skadden Arps Slate Meagher & Flom LLP Four Times Square
20 New York, NY 10036
   Email: jhofer@skadden.com
21
   **12. Nationstar Mortgage LLC**
22 Nationstar Mortgage LLC 350 Highland Drive Lewisville, TX 75067 Attn: General Counsel
   Phone: (469) 549-2000 Facsimile: (972) 315-8637
23 **Counsel to Nationstar Mortgage LLC**
   Sidley Austin LLP One Dearborn Chicago, IL 60603 Attn: Larry J. Nyhan
24 Email: lnyhan@sidley.com jboelter@sidley.com
25
26

**13. Internal Revenue Service**
Internal Revenue Service P.O. Box 7346
Philadelphia, PA 19101-7346 Facsimile: (267) 941-1015
Overnight mail should be directed to: Internal Revenue Service
2970 Market Street
Mail Stop 5-Q30.133
Philadelphia, PA 19104-5016

**14. U.S. Securities and Exchange Commission**
Securities and Exchange Commission, New York Regional Office 3 World Financial Center,
Suite 400
New York, NY 10281-1022
Email: newyork@sec.gov

1    1. For special and general damages according to proof at time of trial.

2    2. For incidental damages in an amount to be determined at trial;

3    3. For punitive damages according to proof at trial.

4    4. For reasonable attorney fees;

5    5. For costs of suit incurred; and

6    6. For such other and further relief as the court may deem just and proper.

7

8    AS TO THE FIFTH CAUSE OF ACTION:

9    1. For special and general damages according to proof at time of trial.

10    2. For incidental damages in an amount to be determined at trial;

11    3. For reasonable attorney fees;

12    4. For costs of suit incurred; and

13    5. For such other and further relief as the court may deem just and proper.

14

15    Dated: May _____ , 2011.                    Respectfully submitted,

16

17

18                                         _____

19                                              ALAN IRVING MOSS

20                                              Attorney In Pro Per

21

22

23

24

25

26

1

## PROOF OF SERVICE

2 COURT:    U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

3 CASE NAME:  IN RE: EXECUTIVE TRUSTEE SERVICES, LLC

4 ACTION NO.:      Bankruptcy NO. 12-12028-MG
Jointly Administered under 12-12020-MG
5 (San Mateo County No. CIV505386)

6          I am employed in the County of San Francisco, California.  I am over the age
of 18 and not a party to the within action.  On this date, I served the foregoing document(s)
7 described as:

8     **NOTICE OF MOTION AND MOTION FOR ORDER DISSOLVING THE AU-
TOMATIC STAY**
9

10 on the party(ies) set out in said document by causing a true copy thereof to be:

11 [ ]      Telecopied via facsimile to the addressee's facsimile number listed below per
CRC 2008(b).
12 [ ]      Telecopied via facsimile to the addressee's telephone number listed below, and
thereafter  mailed  according  to  the  procedures  set  forth  immediately
13 hereinbelow.
[ X ]     By U.S. mail, by placing said document(s) in a sealed envelope with first class
14 postage thereon fully prepaid, and then deposited in a U.S. Post Office..
[ ]      By U.S. mail, Return Receipt Requested, by placing said document(s) in a
15 sealed envelope with appropriate postage thereon fully prepaid and then placed
in the designated office area for outgoing mail.
16 [ ]      Delivered by hand to the person set forth below, or by handing said document
in a sealed envelope to a messenger service for delivery as addressed.
17 [ ]      Sent via Priority overnight mailing, by handing said document in a sealed
envelope to an agent for the USPS for overnight delivery.
18

and if mailed, addressed as follows and sent to the following address(es):
19

Larren M. Nashelsky
20 Morrison & Forster LLP
1290 Avenue of the Americas
21 NY NY 10104
**SPECIAL SERVICE LIST ON FOLLOWING PAGE**
22

23          I declare under penalty of perjury under the laws of the State of California that
the foregoing is true and correct.

24          Executed this 10 nd day of July, 2012, at San Francisco, California.

25

26

NOTICE OF MOTION AND MOTION FOR OR-
DER DISSOLVING THE AUTOMATIC STAY        - 33 -        BANKRUPTCY ACTION NO. 12-12028-mg

1  SPECIAL SERVICE LIST: VIA E-MAIL

2  **1. Office of the United States Trustee for the Southern District of New York**
   Office of the United States Trustee 33 Whitehall Street
3  21st Floor
   New York, NY 10004
4  Attn: Tracy Hope Davis, Esq.
   Email: Tracy.Davis2@usdoj.gov

5
   **2. Office of the United States Attorney General**
6  U.S. Department of Justice
   950 Pennsylvania Avenue NW
7  Washington, DC 20530-0001
   Attn: US Attorney General, Eric H. Holder, Jr.
8  Email: AskDOJ@usdoj.com

9  **3. Office of the New York Attorney General**
   Office of the New York State Attorney General The Capitol
10 Albany, NY 12224-0341
   Attn: Nancy Lord, Esq.
11 Email: Nancy.Lord@OAG.State.NY.US

12 **4. Office of the U.S. Attorney for SDNY**
   Office of U.S. Attorney for the Southern District of New York One St. Andrews Plaza
13 New York, NY 10007
   Attn: Joseph N. Cordaro, Esq.,

14
   **5. Debtors**
15 Residential Capital, LLC
   1177 Avenue of the Americas
16 New York, NY 10036
   Email: Tammy.Hamzehpour@gmacrescap.com
17 **Counsel to the Debtors**
   Morrison & Foerster LLP
18 1290 Avenue of the Americas New York, NY 10104
   Attn: Larren Nashelskly, Esq.
19 Email: LNashelskly@mofo.com

20 **6. Counsel to the Creditors' Committee**
   Kramer Levin Naftalis & Frankel LLP 1177 Avenue of the Americas
21 New York, NY 10036
   Attn: Ken Eckstein
22 Email: keckstein@kramerlevin.com

23 **7. Prepetition Lenders**
   Citibank N.A.
24 390 Greenwich Street, 6th Floor
   New York, NY 10013
25 Attn: Bobbie Theivakurnaran

26

1  Email: bobbie.theivakurnaran@citi.com
Fannie Mae
2  3900 Wisconsin Avenue NW
Mail Stop 8H-504
3  Washington DC 20016
Email: john_s_forlines@fanniemae.com

4

**8. Counsel to Ally Financial Inc.**
5  Kirkland & Ellis
601 Lexington Avenue New York, NY 10022 Attn: Ray C. Schrock
6  Email: richard.cieri@kirkland.com

7  **9. Indenture Trustees**
Deutsche Bank Trust Company Americas 25 DeForest Avenue
8  Summit, NJ 07901
The Bank of New York Mellon Asset Backed Securities Group 101 Barclay Street 4W
9  New York, NY 10286
U.S. Bank National Association 50 South 16th Street, Suite 2000 Philadelphia, PA 19102
10  Attn: George Rayzis
Email: george.rayzis@usbank.com
11  U.S. Bank National Association
60 Livingston Avenue EP-MN-WS1D
12  St. Paul, MN 55107
Attn: Irina Palchuk
13  Email: irinia.palchuk@usbank.com

14  10. **Counsel to U.S. Bank National Association**
Kelley Drye & Warren LLP 101 Park Avenue
15  New York, NY 10178 Attn: James S. Carr
Email: kdwbankruptcydepartment@kelleydrye.com
16  Wells Fargo Bank, N.A.
P.O. Box 98
17  Columbia, MD 21046
Attn: Corporate Trust Services, GMACM Home Equity Notes 2004 Viable Funding Trust

18

**11. Counsel to Administrative Agent for the Debtors' Providers of Debtor in Possession**
19  **Financing**
Skadden Arps Slate Meagher & Flom LLP Four Times Square
20  New York, NY 10036
Email: jhofer@skadden.com

21

**12. Nationstar Mortgage LLC**
22  Nationstar Mortgage LLC 350 Highland Drive Lewisville, TX 75067 Attn: General Counsel
Phone: (469) 549-2000 Facsimile: (972) 315-8637
23  **Counsel to Nationstar Mortgage LLC**
Sidley Austin LLP One Dearborn Chicago, IL 60603 Attn: Larry J. Nyhan
24  Email: lnyhan@sidley.com jboelter@sidley.com

25

26

**13. Internal Revenue Service**
Internal Revenue Service P.O. Box 7346
Philadelphia, PA 19101-7346 Facsimile: (267) 941-1015
Overnight mail should be directed to: Internal Revenue Service
2970 Market Street
Mail Stop 5-Q30.133
Philadelphia, PA 19104-5016

**14. U.S. Securities and Exchange Commission**
Securities and Exchange Commission, New York Regional Office 3 World Financial Center,
Suite 400
New York, NY 10281-1022
Email: newyork@sec.gov