**Hearing Date: August 14, 2012 at 10 a.m. a.m. (EST)**
**Objection Deadline: August 7, 2012 at 4:00 p.m. (EST)**

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Victoria L. Safran
Assistant Attorney General
Of Counsel
Nassau Regional Office
200 Old Country Road, Suite 240
Mineola, New York 11501
Telephone: (516) 248-3302
Fax: 516-747-6432

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

|   |   |
|---|---|
| Residential Capital, LLC, et al., | Chapter 11<br>Case No. 12-12020 (MG)<br>Jointly Administered<br>Re: Debtor GMAC Mortgage LLC |
| Debtors. | |

-------------------------------------------------------------------X

## DECLARATION OF VICTORIA L. SAFRAN IN SUPPORT OF MOTION BY THE PEOPLE OF THE STATE OF NEW YORK FOR ORDER DETERMINING EXEMPTION FROM THE AUTOMATIC STAY AS TO GMAC MORTGAGE LLC PURSUANT TO 11 U.S.C. § 362(b)(4)

**VICTORIA L. SAFRAN**, an attorney duly admitted to practice in the courts of the State

of New York, hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.    I am an Assistant Attorney General in the Nassau Regional Office of the Attorney

General of the State of New York.  I am familiar with the facts and circumstances of this action.

2.    The facts set forth in this Declaration are based upon personal knowledge and

information contained in the files of the Attorney General and are believed to be true and correct.

The Attorney General seeks an order: (a) determining that the civil litigation now pending in the Supreme Court, Nassau County, *State of New York v. Empire Property Solutions, LLC et al.* (Index No. 09-017767), is exempt, pursuant to section 362(b)(4) of the Bankruptcy Code, from the automatic stay; (b) alternatively, in the event the Bankruptcy Court holds that the automatic stay applies, granting relief from the stay pursuant to section 362(d)(1) of the Bankruptcy Code; or (c) alternatively, in the event the Court holds that the stay applies and that relief from the stay is not warranted, determining that the automatic stay operates to stay the pending civil action only as it applies to the debtor, GMAC Mortgage, LLC, ("GMAC") and not as it applies to the remaining parties.

3.      The Bankruptcy Court has jurisdiction over the debtor's case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought herein is 11 U.S.C. § 362(b)(4).

## FACTS

### A.    The State Court Action

4.      In September 2009, the Attorney General filed the pending civil action, *State of New York v. Empire Property Solutions, LLC et al.* (Index No. 09-017767), in Nassau Supreme Court pursuant to New York Executive Law § 63(12) against Empire Property Solutions, LLC, its principals, John Rutigliano and Kenneth Kiefer (collectively "the Empire Defendants"), and co-defendants, including attorneys, a mortgage broker and a title company, who participated in a fraudulent and illegal foreclosure rescue scam pursuant to which homeowners were defrauded out of the title to their homes.  The lenders or assignees who claim interests in mortgages held on the properties at issue in the action, including GMAC, are named as necessary parties pursuant to

CPLR § 1001.  The Attorney General does not seek damages or any relief against the necessary parties.  (A copy of the Verified Complaint filed in that action is annexed as Exhibit A.)

5.      The Verified Complaint alleges that from in or about December 2005 until at least sometime in 2007, the Empire Defendants spearheaded an illegal scheme to defraud financially-distressed consumers by inducing them to "sell" their homes to the Empire Defendants or third-party straw buyers based on the Empire Defendants' false and misleading statements that they could "save" consumers' homes from foreclosure.  Specifically, the Empire Defendants induced homeowners to enter into "sales/leaseback" agreements. (Exhibit A, Verified Complaint ¶ 39).

6.      The Empire Defendants misrepresented to homeowners that they could save their homes by giving title to the Empire Defendants or to straw buyers who could apply for loans that would purportedly be used to save the homes.  The homeowners were told that they could continue to live in their homes and pay the mortgage payments or "rent."  The Empire Defendants falsely represented that the homeowners would be able to save up enough money and re-build their credit, so that, in about one year's time, they would then be financially able to repurchase their homes from the Empire Defendants.  (Exhibit A, Verified Complaint ¶ 39).  The Empire Defendants knew such representations were false, and their sole motive for entering into the sale/leaseback transactions was to steal the title to and equity in the homes.  (Exhibit A, Verified Complaint ¶ 46).

7.      Co-defendants, including the attorneys, mortgage broker and title company, aided, and participated in, the illegal scheme by facilitating the closings of the real estate transactions and cloaking them with an air of legitimacy. (Exhibit A, Verified Complaint, Prelim. Statement and ¶¶ 12, 15, 61-72, 94-95).

8.      The Verified Complaint alleges that the Empire Defendants and their co-conspirators violated Executive Law § 63(12), by engaging in persistent and repeated acts of fraud and illegality.  They walked away with the proceeds from the closing, while the homeowners were robbed of the title to and equity in their homes.  The homes ended up in foreclosure, and, thus, contributed to the widespread foreclosure crisis facing the country today, with its wide-reaching public impacts. (Exhibit A, Verified Complaint Prelim. State. and ¶¶ 46, 70, 73-75, 105-106).

### B.  The History of the State Court Action.

9.      The People of the State of New York commenced the state court action in September 2009 with a Verified Complaint and order to show cause for a temporary restraining order prohibiting defendants from engaging in their fraudulent acts and practices, and staying the foreclosure proceedings pending against the properties that were the subject of the scam.

10.      Various defendants, including several lenders who hold mortgages on the properties at issue, filed motions to dismiss the Verified Complaint.  In a 33-page decision and order dated November 15, 2011, the Court denied all the pending motions to dismiss the complaint. (A copy of the Court's decision is annexed as Exhibit B).  GMAC answered the Verified Complaint and opposed the Attorney General's application for a preliminary injunction staying the pending foreclosure proceedings, including a foreclosure proceeding brought by GMAC.  By a Decision and Order dated January 27, 2012, the Court granted the Attorney General's motion for a preliminary injunction staying all pending foreclosure proceedings.  (A copy of the Court's decision is annexed as Exhibit C).  On February 22, 2012, the Court granted the Attorney General's motion for a default judgment against defendants Empire Property Solutions, LLC, John Rutigliano and Kenneth Kiefer.  On April 10, 2012, the Court denied the

motion by certain of the attorney defendants and the title company for leave to reargue their motion to dismiss the complaint.  (A copy of the Court's decision is annexed as Exhibit D).

11.    On June 7, 2012, GMAC served a Notice of Bankruptcy and Effect of Automatic Stay.  At that time, the parties in the state court action were in the process of responding to written discovery requests but had not yet commenced depositions.  The court had scheduled a discovery conference to discuss the scheduling of depositions. Two motions are currently pending before it, a motion to compel discovery and a motion by one of the necessary parties to dismiss the action as against it.  The state court action is stayed pending a determination by this bankruptcy court as to the applicability of the automatic stay.

12.    Following GMAC's service of its Notice of Bankruptcy, the Attorney General has communicated with counsel for GMAC in the pending state action, as well as counsel for GMAC in this action, in an effort to resolve the issues which are the subject of this motion, but such efforts have not been successful.

## CONCLUSION

13.    The pending state action was brought by the Attorney General to protect the public from a fraudulent and illegal scheme perpetrated against New York homeowners. It represents a proper exercise of the Attorney General's police and regulatory powers granted to him under Executive Law § 63(12), and advances his general obligations to safeguard the health, safety, and welfare of the People of the State of New York. Accordingly, this Court should hold that the action is exempt from the automatic stay pursuant to section 362(b)(4) of the Bankruptcy Code. Permitting the Attorney General to proceed in its civil suit is essential to protect the public from further harm, to deter others, and to effectuate the public policy objectives of the Attorney General.

14.     There has been no prior application for the relief sought herein.

15.     Accordingly, for all the foregoing reasons, it is respectfully requested that the

Attorney General's request for relief be granted.

Dated: Mineola, New York
       July 24, 2012

                                        /s/ Victoria L. Safran
                                        Victoria L. Safran
                                        Assistant Attorney General

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------X
PEOPLE OF THE STATE OF NEW YORK by
ANDREW M. CUOMO, Attorney General of the
State of New York,

                            Plaintiffs,

                -against-

EMPIRE PROPERTY SOLUTIONS, LLC,
JOHN RUTIGLIANO, KENNETH KIEFER,
Individually and as Members of EMPIRE PROPERTY
SOLUTIONS, LLC, ZORNBERG & HIRSCH, BARRY
ZORNBERG and NANCY HIRSCH, Individually and
as Partners of ZORNBERG & HIRSCH, CORY
COVERT, BILL TSOUMPELIS, H & Z ABSTRACT,
INC., BARRY ZORNBERG and NANCI HIRSCH,
Individually and as Officers of H & Z ABSTRACT,
INC., LEONIE NEUFVILLE d/b/a NEUFVILLE
MORTGAGE, PAUL HARRIS, FRANK LUSCAVAGE,
AMERICAN HOME MORTGAGE SERVICING INC.,
AMERICA'S SERVICING CO., AVELO MORTGAGE,
LLC, BANK OF AMERICA, N.A., DEUTSCHE BANK
NATIONAL TRUST COMPANY, GMAC MORTGAGE
LLC, GOLDMAN SACHS GROUP, INC., SELECT
PORTFOLIO SERVICING, INC., U.S. BANK
NATIONAL ASSOCIATION, WELLS FARGO BANK,
N.A., AMERICAN EXPRESS CENTURION BANK,
CAPITAL ONE BANK, DEL NORTE REFI, LLC,
KAREN L. KIEFER, MDC CREDIT CORP.,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., ROBERT L. PRYOR, CHAPTER 7
TRUSTEE OF THE BANKRUPTCY ESTATE OF
FRANK LUSCAVAGE, UNITED STATES OF
AMERICA, ACTING BY AND THROUGH FARMERS
HOME ADMINISTRATION, UNITED STATES
DEPARTMENT OF AGRICULTURE AND JOHN DOES,

                        Defendants.
------------------------------------------------------------------------X

**VERIFIED COMPLAINT**

Index No. 09-017767
RJI No.

**RECEIVED**

SEP 0 1 2009

NASSAU COUNTY
COUNTY CLERK'S OFFICE

The People of the State of New York, by its attorney, ANDREW M. CUOMO, Attorney General

of the State of New York, allege upon information and belief:

## PRELIMINARY STATEMENT

Plaintiffs, the People of the State of New York, by Andrew M. Cuomo, Attorney

General of the State of New York, bring this action pursuant to New York Executive Law

§63(12) and General Business Law §§ 349 and 350.  Plaintiffs seek to: (a) permanently enjoin

defendants Empire Property Solutions, LLC ("Empire"), John Rutigliano and Kenneth Kiefer,

individually and as officers of Empire, Zornberg & Hirsch, Barry Zornberg and Nancy Hirsch,

individually and as partners of Zornberg & Hirsch, Cory Covert, Bill Tsoumpelis and H & Z

Abstract, Inc., Barry Zornberg and Nanci Hirsch, individually and as officers of H & Z Abstract,

Inc. and Leonie Neufville d/b/a Neufville Mortgage from engaging in deceptive, fraudulent and

illegal business practices in connection with Empire's foreclosure rescue program, and real estate

transactions with New York consumers; (b) nullify any transfer of title to real property, and

rescind any other agreements that arose out of or were incident to these unlawful practices; and

(c) obtain restitution and damages for individuals injured by these unlawful practices, and civil

penalties and costs to be paid to the State of New York.

Empire, and its principals, Rutigliano and Kiefer, engaged in a foreclosure rescue scam to

defraud homeowners of the title to and equity in their homes by inducing them to enter into

sale/leaseback agreements.  The attorneys involved in the real estate transactions, Zornberg &

Hirsch, Zornberg, Hirsch, Covert and Tsoumpelis, actively engaged in, carried on or had

knowledge of the fraudulent, illegal and deceptive practices alleged in this Complaint.  They also

2

committed egregious breaches of fiduciary duty and an attorney's duty of care. The title

company involved in the transactions, H & Z Abstract, was owned and controlled by defendants

Zornberg and his wife, Hirsch, and also participated in the fraud. The mortgage broker, Leonie

Neufville d/b/a Neufville Mortgage, prepared loan applications that contained misrepresentations

as to the borrowers' income, employment history and other material facts. As a result of these

fraudulent practices, banks issued mortgage loans approaching the full value, or in excess of the

full value, of the properties. The defendants who participated in the fraud walked away with the

proceeds from the closing, while the homeowners were robbed of the title to and equity in their

homes. Most of these loans are now in foreclosure status.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action: (a) pursuant to Executive Law §

63(12), which empowers the Attorney General to seek injunctive relief, restitution, damages and

costs against any person engaging in repeated or persistent fraud or illegality in the conduct of

business; and (b) pursuant to General Business Law §§ 349 and 350 which empowers the

Attorney General to seek injunctive relief, restitution, penalties and costs against any person

engaging in deceptive acts, or false and misleading advertising, in the conduct of business.

2.      Venue is proper in this Court pursuant to New York CPLR §503(a) because

plaintiffs reside and have an office in Nassau County.

## PARTIES

3.      Plaintiffs, the People of the State of New York, are represented by their chief

legal officer, Andrew M. Cuomo, Attorney General of the State of New York.

**Defendants Against Whom Relief is Sought**

4.     Defendant Empire Property Solutions, LLC is a New York limited liability company with offices at 3923 Berger Avenue, Bethpage, New York 11714. At all relevant times herein, Empire held itself out as a home foreclosure rescue specialist to consumers who were having difficulty paying their mortgages.

5.     Defendant John Rutigliano is an individual residing at 3923 Berger Avenue, Bethpage, New York 11714. Rutigliano is the director, chief managing member and 50% owner of Empire.

6.     Defendant Kenneth Kiefer is an individual residing at 7 Harlem Avenue, Medford, New York 11763. Kiefer is a member, director and 50% owner of Empire.

7.     At all relevant times herein, Rutigliano and Kiefer directed, managed and controlled Empire and actively engaged in, carried on or had knowledge of the fraudulent, illegal and deceptive practices alleged herein.

8.     Defendants Rutigliano and Kiefer, at all relevant times, were the sole officers and members of Empire, and Empire had no employees. Neither Rutigliano nor Kiefer were ever licensed by or registered with the New York Superintendent of Banking as a mortgage broker.

9.     Defendants Empire Property Solutions, Rutigliano and Kiefer are hereinafter collectively referred to as "the Empire Defendants."

10.     Defendant Zornberg & Hirsch is a law firm with offices at 1775 Expressway Drive, Hauppauge, New York 11788.

11.     Defendant Barry Zornberg, at all relevant times, was a general partner, and his

4

wife, defendant Nanci Hirsch, is a general partner of Zornberg & Hirsch. Both reside at 4

Highland Avenue, Dix Hills, New York 11746. Defendants Zornberg & Hirsch, Barry Zornberg

and Nanci Hirsch are collectively referred to as "the Zornberg Defendants." The Zornberg

Defendants acted as attorneys for the lenders in most if not all of the transactions at issue, acted

as both attorneys for the lenders and attorneys for the sellers in some transactions, and acted as

both attorneys for the lenders and attorneys for the purchasers in other transactions. The

Zornberg Defendants actively engaged in, carried on or had knowledge of the fraudulent, illegal

and deceptive practices alleged herein.

12.    Defendant Cory Covert is an attorney licensed to practice in the State of New

York with offices at 1775 Expressway Drive North, Hauppauge, New York 11788. Covert acted

as attorney for the sellers in some of the sale/leaseback transactions at issue, and as attorney for

the purchasers in other transactions at issue. Covert actively engaged in, carried on or had

knowledge of the fraudulent, illegal and deceptive practices alleged herein.

13.    Defendant Bill Tsoumpelis is an attorney licensed to practice in the State of New

York with offices at 200 Old Country Road, Mineola, New York 11501. Tsoumpelis acted as

attorney for the sellers in some of the transactions at issue, and actively engaged in, carried on or

had knowledge of the fraudulent, illegal and deceptive practices alleged herein.

14.    The Zornberg Defendants, Cory Covert and Bill Tsoumpelis are hereinafter

collectively referred to as "the Attorney Defendants."

15.    Defendant H & Z Abstract, Inc. is a title insurance company located at 1775

Expressway Drive North, Hauppauge, New York 11788. Barry Zornberg and his wife, Nanci

Hirsch, are owners and officers of H & Z Abstract. H & Z Abstract, Zornberg and Hirsch are

5

hereinafter collectively referred to as "the H & Z Abstract Defendants." The H & Z Abstract Defendants actively engaged in, carried on or had knowledge of the fraudulent, illegal and deceptive practices alleged herein.

16.    Defendant Leonie Neufville d/b/a Neufville Mortgage (hereinafter "Neufville Mortgage") at all relevant times was a mortgage broker registered with the New York State Superintendent of Banking with offices at 2901 Bayview Avenue, Baldwin, New York 11510. Neufville Mortgage acted as the broker on the sale/leaseback transactions, and actively engaged in, carried on or had knowledge of the fraudulent, illegal and deceptive practices alleged herein.

**Necessary Party Defendants**

17.    Defendant Paul Harris is an individual residing at 3877 Berger Avenue, Bethpage, New York 11714. Harris acted as a straw buyer in one of the sale/leaseback transactions at issue. He is the borrower on a loan secured by a mortgage on 21 Sylvan Place, Wading River, New York 11792. Harris is joined as a necessary party without whom complete relief cannot be accorded.

18.    Defendant Frank Luscavage is an individual residing at 6 Hines Road, Middle Island, New York 11953. Luscavage acted as a straw buyer in three of the sale/leaseback transactions at issue. He is the borrower on loans secured by mortgages on 1770 Andrea Road, East Meadow, New York 11554, 7 Donald Court, Elmont, New York 11003 and 143 Camp Avenue, Merrick, New York 11556. Luscavage is joined as a necessary party without whom complete relief cannot be accorded.

19.     Defendant American Home Mortgage Servicing Inc. is a corporation organized and existing under the laws of the Delaware, with its principal place of business at 4600 Regent Boulevard, Irving, Texas 75063, and holds a mortgage on 10 Red Oak Court, Baiting Hollow, New York 11933.  Defendant American Home Mortgage Servicing Inc. is joined as a necessary party without whom complete relief cannot be accorded.

20.     Defendant America's Servicing Co. is a corporation organized and existing under the laws of the Iowa, with its principal place of business at 1 Home Campus, Des Moines, Iowa 50328, and holds a mortgage on 34 Jean Drive, North Babylon, New York 11703.  Defendant America's Servicing Co. is joined as a necessary party without whom complete relief cannot be accorded.

21.     Defendant Avelo Mortgage, LLC is a corporation organized and existing under the laws of the State of Texas, with its principal place of business at 250 John W. Carpenter Freeway, Suite 300, Irving, Texas 75062, and holds a mortgage on 1770 Andrea Road, East Meadow, New York 11554.  Defendant Avelo Mortgage, LLC is joined as a necessary party without whom complete relief cannot be accorded.

22.     Defendant Bank of America, N.A. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 401 N. Tryon Street, Charlotte, North Carolina 28255, and holds mortgages on 7 Donald Court, Elmont, New York 11544, 8 Terry Court, Glen Head, New York 11545, 21 Sylvan Place, Wading River, New York 11792, 2911 Devon Ave., Medford, New York 11763 and 5 Kirby Lane, Commack, New York

11725. Defendant Bank of America, N.A. is joined as a necessary party without whom complete relief cannot be accorded.

23.    Defendant Deutsche Bank National Trust Company is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 60 Wall Street, New York, New York 10005, and holds mortgages on 105 Flanders Blvd., Flanders, New York 11901, 86 Eatondale Avenue, Blue Point, New York 11715, 21 Sylvan Place, Wading River, New York 11792 and 5 Kirby Lane, Commack, New York 11725.   Defendant Deutsche Bank National Trust Company is joined as a necessary party without whom complete relief cannot be accorded.

24.    Defendant GMAC Mortgage LLC is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034, and holds a mortgage on 2 The Lane, Rocky Point, New York 11778.  Defendant GMAC Mortgage LLC is joined as a necessary party without whom complete relief cannot be accorded.

25.    Defendant Goldman Sachs Group, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 85 Broad Street, New York, New York 10004, and holds mortgages on 1770 Andrea Road, East Meadow, New York 11554 and 143 Camp Avenue, Merrick, New York 11566.  Defendant Goldman Sachs Group, Inc. is joined as a necessary party without whom complete relief cannot be accorded.

26.    Defendant Select Portfolio Servicing, Inc. is a corporation organized and existing under the laws of the State of Utah, with its principal place of business at 3815 S. West Temple,

8

Salt Lake City, Utah 84115 and holds a mortgage on 8 Terry Court, Glen Head, New York

11545. Defendant Select Portfolio Servicing, Inc. is joined as a necessary party without whom

complete relief cannot be accorded.

27.    Defendant U.S. Bank National Association is a national banking association, with

its principal place of business at 800 Nicollet Mall, Minneapolis, Minnesota 55402, holds

mortgages on 10 Red Oak Court, Baiting Hollow, New York, 11933, 8 Terry Court, Glen Head,

New York 11545 and 34 Jean Drive, North Babylon, New York 11703, and is joined as a

necessary party without whom complete relief cannot be accorded.

28.    Defendant Wells Fargo Bank, N.A., is a corporation organized and existing under

the laws of the State of California, with its principal place of business at located at 2388 W.

Royal Palm Road, Phoenix, Arizona 85021, and holds mortgages on 21 Sylvan Place, Wading

River, New York 11792, 2911 Devon Ave., Medford, New York 11763 and 5 Kirby Lane,

Commack, New York 11725. Defendant Wells Fargo Bank, N.A. is joined as a necessary party

without whom complete relief cannot be accorded.

29.    Defendant American Express Centurion Bank is a corporation organized and

existing under the laws of the State of Utah, with its principal place of business at 4315 S. 2700

W., Salt Lake City, Utah 84184, and is named as a defendant in an action for foreclosure of a

mortgage on 8 Terry Court, Glen Head, New York 11545. Defendant American Express

Centurion Bank is joined as a necessary party without whom complete relief cannot be

accorded.

30.     Defendant Capital One Bank is a corporation organized and existing under the laws of the State of Virginia, with its principal place of business at 4851 Cox Road, Glen Allen, Virginia 23060, and is named as a defendant in an action for foreclosure of a mortgage on 1770 Andrea Road, East Meadow, New York 11554. Defendant Capital One Bank is joined as a necessary party without whom complete relief cannot be accorded.

31.     Defendant Del Norte Refi, LLC is a limited liability company organized and existing under the laws of the State of Alaska, with its principal place of business at 323 5th Street, Eureka, California 95501, and is named as a defendant in an action for foreclosure of a mortgage on 105 Flanders Boulevard, Flanders, New York 11901. Defendant Del Norte Refi, LLC is joined as a necessary party without whom complete relief cannot be accorded.

32.     Defendant Karen L. Kiefer is an individual residing at 198 Longfellow Drive, Mastic Beach, New York 11951, is named as a defendant in actions for foreclosure of mortgages on 105 Flanders Boulevard, Flanders, New York 11901 and 86 Eatondale Avenue, Blue Pont, New York 11715, and is joined as a necessary party without whom complete relief cannot be accorded.

33.     Defendant MDC Credit Corp., f/k/a Midatlantic Home Mortgage Corporation, is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 625 N. Flagler Drive, Suite 600, West Palm Beach, Florida 33401, and is named as a defendant in an action for foreclosure of a mortgage on 34 Jean Drive, North Babylon, New York 11703. Defendant MDC Credit Corp. is joined as a necessary party without whom complete relief cannot be accorded.

10

34.    Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") is organized under the laws of Delaware, with its principal place of business at 1818 Library Street, Reston, Virginia 20130.  MERS, as nominee for New Century Mortgage Corporation, is named as a defendant in actions for foreclosure of a mortgage on 1770 Andrea Road, East Meadow, New York 11554 and 21 Sylvan Place, Wading River, New York 11792.  MERS, as nominee for Lehman Brothers Bank, FSB, is named as a defendant in an action for foreclosure of a mortgage on 10 Red Oak Court, Baiting Hollow, New York 11933.  MERS, as nominee for First Franklin, a division of National City Bank, is named as a defendant in an action for foreclosure of a mortgage on 7 Donald Court, Elmont, New York 11003 and 8 Terry Court, Glen Head, New York 11545. MERS, as nominee for Greenpoint Mortgage Funding, Inc., is named as a defendant in an action for foreclosure of a mortgage on 2 The Lane, Rocky Point, New York 11778.  MERS is joined as a necessary party without whom complete relief cannot be accorded.

35.    Defendant Robert L Pryor, Chapter 7 Trustee of the Bankruptcy Estate of Frank M. Luscavage, has offices at 675 Old Country Road, Westbury, New York 11590, is named as a defendant in an action for foreclosure of a mortgage on 7 Donald Court, Elmont, New York 11003, and is joined as a necessary party without whom complete relief cannot be accorded.

36.    Defendant United States of America, acting by and through Farmers Home Administration, United States Department of Agriculture, located at 1400 Independence Avenue SW, Washington, DC 20250, is named as a defendant in an action for foreclosure of a mortgage

11

on 105 Flanders Boulevard, Flanders, New York 1190, and is joined as a necessary party without whom complete relief cannot be accorded.

37.    Defendants John Does are individuals and entities whose identities are unknown to plaintiffs at this time, but who acted with one or more of the defendants in furtherance of the unlawful activities about which plaintiffs complain.

38.    Pursuant to GBL §349-c, plaintiffs determined that it was not in the public interest to provide notice to defendants prior to the commencement of this action.

## FACTS

### The Fraudulent Foreclosure Rescue Scheme

39.    From in or about December 2005 and continuing until at least sometime in 2007, the Empire Defendants engaged in an illegal scheme to defraud financially-distressed homeowners by inducing them to "sell" their homes to Mr. Rutigliano, Mr. Kiefer, or third-party straw buyers based on the Empire Defendants' false and misleading statements that they could "save" homeowners' homes from foreclosure. Specifically, the Empire Defendants induced homeowners to enter into "sale/leaseback" agreements. The Empire Defendants misrepresented to homeowners that they could save their homes by giving title to the Empire Defendants or to straw buyers who could apply for loans which would purportedly be used to save the homes. Homeowners were induced to deed their properties to the Empire Defendants or straw buyers, causing the homeowners to give up their ownership interest in the homes and any equity they may have accrued. The homeowners were told that they could continue to live in their homes and pay the mortgage payments or "rent," during which time they would have an opportunity to

12

build up their credit, so that after about one year's time, title would be returned to the homeowners and their homes would be saved.

40.    The Empire Defendants represented to consumers that they had helped many other homeowners, and that a sale/leaseback arrangement was the only means available to save the consumers' homes. They failed to disclose the substantial risks inherent in the program. They failed to disclose or misrepresented the costs to the homeowners and the total amount of fees that the Empire Defendants and other defendants would receive. Furthermore, they misrepresented the homeowners' ability to meet the conditions necessary for the repurchase of their homes at the expiration of the leases. In some instances, they concealed the fact that the consumers' homes would be sold to individual buyers who would become responsible for the mortgages on the properties. They falsely represented that consumers' credit ratings would improve as a result of the program, and that consumers would be financially able to purchase their homes at the expiration of the lease. Contrary to the Empire Defendants' representations that homeowners would benefit from their services, the homeowners ended up losing both their properties and whatever equity they had accrued.

## The Empire Defendants Falsely Advertise Their Foreclosure Rescue Program

41.    In furtherance of their fraudulent scheme, the Empire Defendants marketed their "foreclosure rescue" program through newspaper, internet and recorded telephone advertisements. The newspaper advertisements promised a "Unique Program" and "Free service to credit impaired homeowners with no equity. The opportunity to save home, eliminate foreclosure & instantly create equity in your home." The internet and telephone advertisements also promised to "help" the homeowner avoid foreclosure and offered "free" services. These

advertisements offered a "foreclosure rescue program" to help "credit-impaired homeowners and families in foreclosure" "safely save their real estate from foreclosure totally free of charges and fees." The Empire Defendants represented that their program was a "successful" one.

42.    When a consumer telephoned the Empire Defendants' 1-800 hotline number, the consumer would hear a recorded telephone message advertising the foreclosure rescue services offered by the Empire Defendants. When a consumer left a message, the Empire Defendants would telephone the consumer, hold the Empire Defendants out as mortgage experts, represent that they could help save the consumer's home from foreclosure and schedule a meeting at the consumer's home.

## The Empire Defendants Lure Consumers In With Promises to Save Their Homes

43.    The Empire Defendants employed various means to induce consumers to enter into the sale/leaseback transactions. In some cases, the Empire Defendants orally represented to the consumer that they would try to work out a restructuring of the loan with the consumer's mortgagee, then days later told the consumer that the mortgagee was unwilling to negotiate, and that a sale/leaseback arrangement was the only other alternative.

44.    In other cases, the Empire Defendants caused homeowners to enter into "Loan Modification Agreements" which provided that "Empire Property Solutions will professionally try to work out with Homeowners Banking establishment a loan modification that will eliminate foreclosure through restructuring of the original loan," and required the homeowner to pay a fee "equal to one mortgage payment." The Agreements provided that the fees would be refunded, in whole or in part, in the event the Empire Defendants were unsuccessful in obtaining the loan

14

modification. The Empire Defendants would then tell the homeowners that they had been unsuccessful in obtaining the loan modification (in some cases failing to refund the fees), and would propose a sale/leaseback transaction as the only viable alternative.

45.    In some instances, consumers were misled into believing that the Empire Defendants were merely assisting them in re-financing their current mortgages on more favorable terms. The Empire Defendants instructed them not to make any further payments on their existing mortgages, because the new refinancing would fully satisfy the existing mortgages. The consumers were led along to believe that the refinancing deal was progressing smoothly, until the very last moment at the closing when the Empire Defendants suddenly announced that the refinancing agreement had fallen through. The consumers were then pressured into immediately entering into a sale/leaseback transaction, which was presented as the only possible option for preventing foreclosure.

46.    In all cases, the Empire Defendants misrepresented that their goal was to save the consumers' homes from foreclosure, when, in fact, the Empire Defendants' only purpose was to ascertain whether they could profit by taking title to the consumers' properties. Accordingly, the Empire Defendants considered only whether the equity in the property was sufficient to enable them to obtain a mortgage loan large enough to satisfy the liens on the property, pay third-party settlement costs, and pay the Empire Defendants' and other participating defendants' substantial fees.

47.    The Empire Defendants misrepresented to some consumers that the "rent" payments they would make after title was transferred to the Empire Defendants would be less than the mortgage payments they were currently making, when, in fact, the Empire Defendants

knew the "rent" payments would be higher, and that the consumers would not be able to afford them.

48.    With respect to some consumers, the Empire Defendants falsely represented they would retain a financial advisor to help the consumers repair and rebuild their credit, so that they would be financially able to repurchase their homes at the expiration of the lease period.

49.    The Empire Defendants promised at least one consumer that they would finance needed repairs to her property after title was transferred to them, and then failed to provide such finances.

50.    The Empire Defendants falsely represented to consumers that they would pay all taxes owing on the properties after the titles were transferred, but then failed to pay those taxes. Because the Empire Defendants did not properly record the transfers of the deeds, the notices of nonpayment of taxes were addressed and delivered to the homeowners.

51.    The Empire Defendants misrepresented to consumers that they would have the financial ability to repurchase their properties upon the leases' expirations. In many, if not all, instances, the Empire Defendants misrepresented that the mortgage payments the consumers would pay after title was transferred back to them would be less than the mortgage payments the consumers were paying before the transfer of title. The Empire Defendants knew that the new mortgage payments would in fact be higher, and knew the homeowners would not be able to afford them.

16

## The Empire Defendants' Use of Straw Buyers

52.    In certain instances, Rutigliano and Kiefer acted as purchasers of the properties in the sale/leaseback transactions. Other times, the Empire Defendants recruited individuals with good credit scores to act as straw buyers. These straw buyers included necessary party defendants Frank Luscavage and Paul Harris. The straw buyers were told by the Empire Defendants that they were helping save a homeowner from foreclosure, and were paid a fee of about ten thousand dollars per property for taking out mortgage loans in their names. Immediately after the straw buyer took title to the property, the property was then transferred from the straw buyer to Empire, although the straw buyer remained personally liable for the mortgage loans. The Empire Defendants represented to the straw buyers that the Empire Defendants would make all the payments required under the mortgage loans, and would indemnify them for any losses.

53.    In a number of instances, the Empire Defendants misrepresented that Empire would be taking title to the homeowners' property and taking out a new mortgage, and failed to disclose the pivotal role of Rutigliano, Kiefer or the third-party straw buyer as the initial purchaser of the property and the holder of the mortgage.

54.    The Empire Defendants' failure to disclose or explain the role of Rutigliano, Kiefer, or the third-party straw buyers, and the subsequent transfers of deeds to Empire, was particularly significant because the new mortgage loans contained a "due-on-sale" provision. This provision provided that the lender could require full and immediate repayment of the loan if the property was transferred, and required that the lender be notified of such transfer. The Empire Defendants' use of Rutigliano, Kiefer and third-party straw buyers always resulted in a

17

subsequent transfer of the property to Empire that would trigger the lender's rights under the due-on-sale provision. Thus, the consumers' ability to remain in their properties – the primary objective of the sale/leaseback program -- was subject to the control of the lenders, and the Empire Defendants had no basis for making any representation that the consumers had the right to remain in their properties for the duration of the lease agreements.

55.    When the property was transferred to Empire, at or immediately after the closing, the Empire Defendants routinely failed to file and record the deed, or delayed in filing and recording the deed, with the clerk of the county in which the property was located, and did not disclose the title transfer as required under the due-on-sale provisions in the mortgages.

**The Fraudulent Mortgage Applications**

56.    Rutigliano, Kiefer and the straw buyers did not have the income or assets necessary to repay or collateralize the mortgage loans. In order to fraudulently improve the borrowers' credit worthiness, the Empire Defendants and Neufville Mortgage submitted loan applications that misrepresented material facts such as the individual's income, assets, employment and liabilities.

57.    The loan applications exaggerated the income of the borrowers, and misrepresented their employment histories. Rutigliano, as the borrower, represented that he was the 100% owner of Empire when, in fact, he was a 50% owner. In certain instances, the loan applications represented that the borrowers were purchasing the properties as their primary residences, when, in fact, the homes were already occupied by the distressed homeowners who had a right to remain there under the terms of the lease agreements. In addition, in some cases

18

the applications identified as the borrowers' real estate assets one or more properties that the

borrowers did not own, because they had transferred title to the properties to Empire.

58.    In certain instances, the Empire Defendants and Nuefville Mortgage obtained

mortgage loans from different lenders in the name of one individual, without disclosing that fact

to the lenders.  To minimize the risk of detection by the lenders, the loans were either processed

simultaneously, or closed one after another within a very short time period.

59.    Neufville Mortgage misrepresented on at least one loan application that it had

interviewed the third-party straw buyer, when it, in fact, did not.  Instead, Neufville Mortgage

communicated only with the Empire Defendants in regard to the loan application.

60.    The Empire Defendants and Neufville Mortgage knowingly falsified the loan

applications, or had knowledge of the material misrepresentations.

**Fraudulent Conduct by the Attorney Defendants**

61.    The Empire Defendants hired the Attorney Defendants to act as attorneys for the

purchasers and as attorneys for the sellers.  The Zornberg Defendants referred the Empire

Defendants to Neufville Mortgage as clients, and in return for the referral, it was agreed between

the Zornberg Defendants, the H & Z Abstract Defendants, Neufville Mortgage and the Empire

Defendants that the Zornberg Defendants would act as attorneys for the lenders, and that the

H & Z Abstract Defendants would act as the title company in the transactions.

62.    In some transactions, either the Zornberg Defendants or Covert acted as attorneys

for the homeowner sellers.  In other transactions, the Zornberg Defendants, Covert or

Tsoumpelis acted as attorneys for the purchasers.  The Attorney Defendants had the

responsibility to review the contracts of sale, the lease agreements and closing documents, and to

19

ensure the legitimacy of the transactions. Through their active participation in the sale/leaseback transactions, the Attorney Defendants facilitated, and participated in, the fraud perpetrated on the homeowners, and deceived lenders into believing that legitimate transactions had occurred as stated in the closing documents.

63.    When acting as attorneys for the homeowner sellers, the Attorney Defendants did not meet the homeowners who they were purportedly representing until the day of the closing. In certain instances, the homeowners were uncertain whether they had an attorney, or did not know which of the attorneys present at the closing was supposed to be their attorney.  In one case, a homeowner had been told by the Empire Defendants that they would be 'sharing' attorneys.  The straw buyers, Harris and Luscavage, also understood that they would be 'sharing' attorneys with the Empire Defendants.

64.    The Attorney Defendants did not explain the nature of the sale/leaseback transaction with their "clients." They did not review the documents at the closing with the consumers to make sure that their clients understood them.   They did not advise their clients of their legal rights or responsibilities under the sale/leaseback transactions.  They did not advise their clients that the terms of the sale/leaseback transactions, including the transfer of title from Rutigliano, Kiefer or the third-party straw buyer to Empire, would violate the terms of the mortgages. They did nothing to protect their clients' rights.  In short, they did not act as attorneys for the consumers at all.

20

65.    Moreover, in some instances, the Attorney Defendants knowingly misrepresented to the homeowners that the sale/leaseback agreements were in their best interests and that the homeowners had nothing to worry about.

66.    The homeowners were required to sign, and did sign, lease agreements stating that they had "had a full opportunity to consult with counsel in this matter," and that the Attorney Defendants representing them had "fully discussed all available options other than the sale and lease of said premises." The lease agreements further stated that the homeowner "was in fact advised to sell the subject premises through a realtor on the open market, but instead elected to move forward with this transaction." The Attorney Defendants knew that such statements were false, but advised their clients or caused their clients to initial the statements and to sign the lease agreements.

67.    In some if not all of the real estate transactions, the Zornberg Defendants acted as the attorneys for the lender. In many of these transactions, the Zornberg Defendants simultaneously acted as attorneys for the sellers or attorneys for the purchaser.

68.    In addition, in some if not all the transactions, H&Z Abstract acted as the title insurance company, and riders to certain contracts of sale obligated the sellers, as well as the buyers, to accept the H & Z Abstract Defendants as the title company.

69.    The HUD-1 Settlement Statements ("HUD-1s") prepared by the Zornberg Defendants, as the lender attorneys, were incomplete and omitted material issues of fact. For example, the HUD-1s intentionally omitted the name of the title company used in the transactions, in order to minimize the risk that the lenders and others would detect the

relationship between the lender attorneys and the title company, and the fact that H & Z was

wholly-owned by the lender attorneys, the Zornberg Defendants.

70.    In some instances, the HUD-1s represented that substantial amounts were owing

to the homeowners as "cash due" at the closing, but these sums, in fact, were not delivered to

the homeowners at the closing or anytime afterwards. The Attorney Defendants representing the

homeowner sellers caused their clients to sign the HUD-1s verifying that the terms set forth

therein accurately reflected the disbursements made at the closing, and the Attorney Defendants

representing the Empire Defendants or straw buyers caused their clients to sign them as well,

even though the Attorney Defendants and Empire Defendants knew that the homeowners had not

received the substantial payments set forth in the HUD-1s.

71.    The HUD-1s prepared by Zornberg & Hirsch and containing the material

misrepresentations and omissions of material facts, of which the Attorney Defendants and

Empire Defendants had knowledge, were then submitted to the lenders.

72.    In numerous cases, the homeowners were not provided with copies of the closing

documents, in order to decrease the risk that the fraudulent nature of the transactions would be

discovered.

## The Defaults by the Empire Defendants

73.    The Empire Defendants failed to make the mortgage payments on the new loans

as promised to the homeowners and failed to pay real estate taxes, and other expenses, as

promised. Accordingly, most of the properties went into foreclosure. On at least two occasions,

the Empire Defendants offered for re-sale, or re-sold, the properties to third parties before the

expiration of the homeowners' lease agreements, in direct contravention of the terms of the agreements that title to the home would be returned to the homeowners.

74.     In some cases, the Empire Defendants offered to re-convey the properties to the homeowners, but the Empire Defendants had increased the mortgages on the properties so that they approached or exceeded the full value of the properties. Consequently, there was, of course, no way that the homeowners, who had experienced trouble making their smaller mortgage payments in the first place, could now, by any means, afford the new higher mortgage payments.

75.     As a result of the scheme to defraud, the homeowners lost title to their homes, and lost any equity they had in their homes. Some were forced to abandon their homes. Others face eviction. The straw buyers owe lenders hundreds of thousands of dollars they are unable to pay, and the lenders have suffered losses from the defaulted loans.

## FIRST CAUSE OF ACTION
## PURSUANT TO EXECUTIVE LAW § 63(12)--
## FRAUD
### (Against the Empire Defendants, the Attorney Defendants
### The H &Z Abstract Defendants and Neufville Mortgage)

76.     Plaintiffs repeat and re-allege allegations 1 through 75 of the Complaint.

77.     Executive Law §63(12) prohibits repeated fraudulent acts or persistent fraud in the carrying on, conducting or transacting of business.

78.     As set forth above, the Empire Defendants, the Attorney Defendants, the H & Z Abstract Defendants and Neufville Mortgage engaged in repeated and persistent fraudulent conduct in violation of Executive Law §63(12).

## SECOND CAUSE OF ACTION
### PURSUANT TO EXECUTIVE LAW § 63(12)--
### VIOLATION OF GBL § 349--DECEPTIVE PRACTICES
#### (Against the Empire Defendants, the Attorney Defendants
#### The H &Z Abstract Defendants and Neufville Mortgage)

79.    Plaintiffs repeat and re-allege allegations 1 through 78 of the Complaint.

80.    GBL § 349 declares it unlawful to engage in deceptive acts or practices in the
conduct of any business, trade or commerce or in the furnishing of any service in the State of
New York.

81.    As set forth above, the Empire Defendants, the Attorney Defendants, the H & Z
Abstract Defendants and Neufville Mortgage engaged in repeated and persistent deceptive acts
and practices in violation of GBL § 349.

82.    The violations of GBL § 349 by the Empire Defendants, the Attorney Defendants,
the H & Z Abstract Defendants and Neufville Mortgage constitute repeated and persistent illegal
conduct in violation of Executive Law § 63(12).

## THIRD CAUSE OF ACTION
### VIOLATION OF GBL § 349--DECEPTIVE PRACTICES
#### (Against the Empire Defendants, the Attorney Defendants
#### The H &Z Abstract Defendants and Neufville Mortgage)

83.    Plaintiffs repeat and re-allege allegations 1 through 82 of the Complaint.

84.    GBL § 349 declares it unlawful to engage in deceptive acts or practices in the
conduct of any business, trade or commerce or in the furnishing of any service in the State of
New York.

24

85.     As set forth above, the Empire Defendants, the Attorney Defendants, the H & Z

Abstract Defendants and Neufville Mortgage engaged in deceptive acts and practices in violation

of GBL § 349.

## FOURTH CAUSE OF ACTION
### PURSUANT TO EXECUTIVE LAW § 63(12) --
### VIOLATION OF GBL §350---FALSE ADVERTISING
### (Against the Empire Defendants)

86.     Plaintiffs repeat and re-allege allegations 1 through 85 of the Complaint.

87.     GBL § 350 declares unlawful any false advertising in the conduct of any business,

trade or commerce in the state of New York.

88.     As set forth above, the Empire Defendants engaged in repeated and persistent

false advertising in violation of GBL§ 350.

89.     The Empire Defendants' violations of GBL § 350 constitute repeated and

persistent illegal conduct in violation of Executive Law § 63(12).

## FIFTH CAUSE OF ACTION
### VIOLATION OF GBL §350---FALSE ADVERTISING
### (Against the Empire Defendants)

90.     Plaintiffs repeat and re-allege allegations 1 through 89 of the Complaint.

91.     GBL § 350 declares unlawful any false advertising in the conduct of any business,

trade or commerce in the state of New York.

92.     As set forth above, the Empire Defendants engaged in false advertising in

violation of GBL § 350.

### SIXTH CAUSE of ACTION
### NEW YORK EXECUTIVE LAW § 63(12)--
### BREACH OF FIDUCIARY DUTY AND DUTY OF CARE
#### (Against the Zornberg Defendants and Covert)

93.    Plaintiffs repeat and re-allege allegations 1 through 92 of the Complaint.

94.    When acting as the attorneys for the consumers in any of the transactions, the Zornberg Defendants and Covert had a fiduciary duty to exercise the utmost good faith and loyalty toward their clients, as well as a duty of care. The Zornberg Defendants and Covert breached their fiduciary duty and duty of care, for the reasons alleged above, including but not limited to, failing to adequately advise their clients, and failing to disclose or explain the true nature of the sale/leaseback transactions. The Zornberg Defendants and Covert also failed to review the closing documents for accuracy and compliance with law. The Zornberg Defendants and Covert knew or should have known that the documents were false and misleading, and were obligated to report these facts to their clients, and to ensure that the payments due to their clients at the closing were actually made. The Zornberg Defendants and Covert further breached their fiduciary duty to their clients by failing to disclose that they had been hired by the Empire Defendants, the Zornberg Defendants, the H & Z Abstract Defendants and/or Neufville Mortgage, and that they had ongoing relationships with these defendants.

95.    When acting as attorneys for the lenders, the Zornberg Defendants had a fiduciary duty to exercise the utmost good faith and loyalty toward their clients, as well as a duty of care. The Zornberg Defendants breached their fiduciary duty and duty of care, for the reasons alleged above, including but not limited to submitting to the lenders HUD-1s containing material misrepresentations and omissions. The Zornberg Defendants knew or should have known that

26

the documents were false and misleading. In failing to report the true details of the transactions to the lenders, the Zornberg Defendants breached their duty to their clients. In representing both the lenders and the sellers simultaneously, the Zornberg Defendants breached their fiduciary duty owing to each client.

96.     The repeated breaches of the duties owed by the Zornberg Defendants and Covert toward their clients during the course of the transactions constitute repeated and persistent illegal conduct in violation of New York Executive Law 63 § (12).

97.     The Zornberg Defendants and Covert have thereby further violated New York Executive Law § 63(12).

### SEVENTH CAUSE of ACTION
### NEW YORK EXECUTIVE LAW § 63(12)--
### VIOLATION OF REAL PROPERTY LAW § 440 et seq.
### (Against the Empire Defendants)

98.     Plaintiffs repeat and re-allege allegations 1 through 97 of the Complaint.

99.     New York Real Property Law § 440 makes it unlawful for any person who "for another and for a fee, commission or other valuable consideration. . .sells. . . or offers or attempts to negotiate a sale. . . of an interest in real estate" without a real estate broker's license.

100.     The Empire Defendants, for a fee, attempted to negotiate sales of, and did sell, interests in real estate by finding homeowners to enter into the sale/leaseback transactions, finding straw buyers, securing Neufville Mortgage to process the mortgage loan applications and securing the Attorney Defendants to act as attorneys for the parties in the transactions.

101.    By engaging in such conduct, the Empire Defendants acted as real estate brokers, and were required to have real estate brokers' licenses pursuant to New York Real Property Law § 440.  The Empire Defendants, at all relevant times, had no such brokers' licenses.

102.    The Empire Defendants' violations of New York Real Property Law § 440 constitute repeated and persistent illegal conduct in violation of Executive Law § 63(12).

103.    The Empire Defendants have thereby further violated New York Executive Law § 63(12).

### EIGHTH CAUSE OF ACTION
### PURSUANT TO EXECUTIVE LAW § 63(12)--
### COMMON LAW CONVERSION
### (Against the Empire Defendants, the Attorney Defendants
### And the H &Z Abstract Defendants)

104.    Plaintiffs repeat and re-allege allegations 1 through 103 of the Complaint.

105.    The consumers in the sale/leaseback transactions had a right to possession of the proceeds of the closings in accordance with the terms set forth in the HUD-1s.

106.    The Empire Defendants, the Attorney Defendants and H & Z Abstract Defendants, without right or title, misappropriated the funds, and converted them for their own personal use and benefit.

107.    The acts of the Empire Defendants, the Attorney Defendants and H & Z Abstract Defendants constitute repeated and persistent illegal conduct in violation of Executive Law § 63(12).

108.    The Empire Defendants, the Attorney Defendants and H & Z Abstract Defendants have thereby further violated New York Executive Law § 63(12).

28

WHEREFORE, plaintiffs request that the Court grant relief pursuant to Executive Law § 63(12) and GBL §§ 349 and 350 by issuing an order and judgment as follows:

1.      permanently enjoining defendants Empire Property Solutions, LLC, and John Rutigliano and Kenneth Kiefer, individually and as members of Empire Property Solutions, LLC, and any other entity through which they may act, from engaging in any foreclosure rescue business that deals with consumers in the State of New York;

2.      permanently enjoining defendants Empire Property Solutions, LLC, John Rutigliano and Kenneth Kiefer, individually and as members of Empire Property Solutions, Zornberg & Hirsch, Barry Zornberg and Nanci Hirsch, individually and as partners of Zornberg & Hirsch, Bill Tsoumpelis, Cory Covert, H & Z Abstract, Inc., Barry Zornberg and Nanci Hirsch, individually and as officers of H & Z Abstract, Inc., Leonie Neufville d/b/a Neufville Mortgage, and any other entity through which they may act, from engaging in the fraudulent, deceptive and illegal practices alleged herein;

3.      directing defendants Empire Property Solutions, LLC, John Rutigliano and Kenneth Kiefer, individually and as members of Empire Property Solutions, Zornberg & Hirsch, Barry Zornberg and Nanci Hirsch, individually and as partners of Zornberg & Hirsch, Bill Tsoumpelis, Cory Covert, H & Z Abstract, Inc., Barry Zornberg and Nanci Hirsch, individually and as officers of H & Z Abstract, Inc., and Leonie Neufville d/b/a Neufville Mortgage to make full monetary restitution and pay damages to aggrieved consumers, known and unknown;

4.      directing defendants Empire Property Solutions, LLC, John Rutigliano and Kenneth Kiefer, individually and as members of Empire Property Solutions, Zornberg & Hirsch, Barry Zornberg and Nanci Hirsch, individually and as partners of Zornberg & Hirsch, Bill

29

Tsoumpelis, Cory Covert, H & Z Abstract, Inc., Barry Zornberg and Nanci Hirsch, individually

and as officers of H & Z Abstract, Inc., and Leonie Neufville d/b/a Neufville Mortgage to

provide plaintiffs a full accounting for all monies received from consumers in connection with

the foreclosure rescue business of Empire Property Solutions, LLC, John Rutigliano and Kenneth

Kiefer, and in connection with mortgage loans, mortgage loan applications, real estate

transactions or any other services that arose out of, or were incident to, such foreclosure rescue

business;

     5.    directing defendants Empire Property Solutions, LLC, and John Rutigliano and

Kenneth Kiefer, individually and as members of Empire Property Solutions, to pay a penalty of

four times the compensation earned by their conduct as unlicensed real estate brokers pursuant to

New York Real Property Law § 442-e;

     6.    directing defendants Empire Property Solutions, LLC, John Rutigliano and

Kenneth Kiefer, individually and as members of Empire Property Solutions, Zornberg & Hirsch,

Barry Zornberg and Nanci Hirsch, individually and as partners of Zornberg & Hirsch, Bill

Tsoumpelis, Cory Covert, H & Z Abstract, Inc., Barry Zornberg and Nanci Hirsch, individually

and as officers of H & Z Abstract, Inc. and Leonie Neufville d/b/a Neufville Mortgage to pay a

civil penalty, pursuant to GBL § 350-d, in the sum of $5,000.00 to the State of New York for

each instance of violation of GBL Article 22-A that occurred after July 3, 2007, and in the sum

of $500.00 for each violation of GBL Article 22-A that occurred before July 3, 2007;

     7.    awarding plaintiffs costs in the amount of $2,000.00 each against defendants

Empire Property Solutions, LLC, John Rutigliano and Kenneth Kiefer, individually and as

members of Empire Property Solutions, Zornberg & Hirsch, Barry Zornberg and Nanci Hirsch, individually and as partners of Zornberg & Hirsch, Bill Tsoumpelis, Cory Covert, H & Z Abstract, Inc., Barry Zornberg and Nanci Hirsch, individually and as officers of H & Z Abstract, Inc. and Neufville Mortgage pursuant to CPLR § 8303(a)(6);

8.    declaring null and void any transfer of title to real property, and rescinding any other agreement that arose out of or was incident to the fraudulent, deceptive and illegal practices alleged herein; and

9.    granting plaintiffs such other and further relief as this court deems just and proper.

Dated: August 21, 2009
Mineola, New York

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Plaintiffs
By: _____
    VICTORIA L. SAFRAN
Assistant Attorney General
Nassau Regional Office
200 Old Country Road, Suite 240
Mineola, New York 11501
Telephone (516) 248-3302

## VERIFICATION

STATE OF NEW YORK )
                       ) ss.:
COUNTY OF NASSAU  )

        VICTORIA L. SAFRAN, being duly sworn deposes and says:

        I am an Assistant Attorney General in the Office of ANDREW M. CUOMO, Attorney

General of the State of New York, and am authorized to make this verification.

        I have read the foregoing, know the contents thereof and believe them to be true, based on

documents contained in the files of the Attorney General's office.

        This verification is not made by Petitioners, because Petitioners are a body politic, and the

Attorney General is their authorized representative.

VICTORIA L. SAFRAN

Sworn to before me this
21st day of August 2009.

Notary Public

DERRICK J. ROBINSON
Notary Public, State of New York
No. 4959887
Qualified in Suffolk County
Commission Expires March 7, 2010

32

# EXHIBIT B

SHORT FORM ORDER

**SUPREME COURT - STATE OF NEW YORK**

Present:

**HON. STEVEN M. JAEGER,**

Acting Supreme Court Justice

---

PEOPLE OF THE STATE OF NEW YORK by
ANDREW M. CUOMO, Attorney General of the
State of New York,

Plaintiff,

-against-

EMPIRE PROPERTY SOLUTIONS, LLC, et al.,

Defendants.

---

TRIAL/IAS, PART 43
NASSAU COUNTY
INDEX NO.: 017767-09

MOTION SUBMISSION
DATE: 9-27-11

MOTION SEQUENCE
NOS. 2, 3, 4, 5

The following papers read on this motion:

| | |
|---|---|
| Notice of Motion, Affirmation, and Exhibit (Mot. Seq. 2) | X |
| Notice of Motion, Affirmation, and Exhibits (Mot. Seq. 3) | X |
| Notice of Motion, Affirmation, and Exhibit (Mot. Seq. 4) | X |
| Notice of Cross-Motion and Affirmation (Mot. Seq. 5) | X |
| Memorandum of Law In Support (Mot. Seq. 3) | X |
| Reply Affirmation to Cross-Motion to Dismiss (Mot. Seq. 5) | X |
| Memorandum of Law in Opposition to Plaintiff's Motion and in support of Cross-Motion (Mot. Seq. 5 &1) | X |
| Reply Memorandum in Further Support of Motion to Dismiss (Mot. Seq. 4) | X |
| Plaintiff's Memorandum of Law in Opposition and In Support of Plaintiffs' Motion (Mot. Seq. 4) | X |
| Reply Affirmation to Motion to Dismiss (Mot. Seq. 4) | X |
| Affidavit in Opposition to Plaintiff's Motion and In Support of Cross-Motion (Mot. Seq. 1) | X |
| Memorandum of Law in Support of Motion to Dismiss (Mot. Seq. 4) | X |
| Memorandum of Law in Support to Dismiss (Mot. Seq. 2) | X |
| Memorandum of Law in Reply to Opposition and Further Support of Motion (Mot. Seq. 2) | X |
| Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss (Mot. Seq. 2) | X |
| Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss (Mot. Seq. 3) | X |

| | |
|---|---|
| Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss and Reply in Support of Plaintiffs' Motion (Mot. Seq. 5) | X |
| Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss (Mot. Seq. 3) | X |
| Affirmation in Opposition (Mot. Seq. 5) | X |
| Defendants' Reply Memorandum of Law in Further Support of Cross-Motion (Mot. Seq. 5 & 1) | X |
| Affidavit (Mot. Seq. 4) | X |

Motion (seq. no 2) by the attorneys for the defendant Cory Covert (Covert) seeks an order dismissing the complaint against Covert pursuant to CPLR 3211(a)(7) on the grounds that each of the causes of action in the complaint fails to state a cause of action against him; dismissing the first, second, and sixth causes of action in the complaint against Covert pursuant to CPLR 3016(b) for failing to particularize the fraud and breach of fiduciary duty causes of action; and dismissing the third, sixth and eighth causes of action in the complaint against Covert pursuant to CPLR 3211(a)(5) because of the expiration of the statute of limitations.  Motion (seq. no. 3) by the attorneys for the defendants Zornberg & Hirsch, Barry Zornberg, Nanci Hirsch and H&Z Abstract, Inc. seeks an order pursuant to CPLR 3211(a)(7), 3211(a)(5) and CPLR 3016 (b) dismissing the complaint against them are determined as hereinafter set forth.  Motion (seq. no 4) by the attorneys for the defendant Select Portfolio Servicing, Inc., as Servicing Agent and Attorney-in Fact for U.S. Bank National Association as Trustee, for the

2

property located at 8 Terry Court, Glen Head, New York seeks an order pursuant to CPLR 3211 dismissing the action against Select.  Cross-motion (seq. no. 5) by the attorneys for the defendants Deutsche Bank National Trust Company, as Trustee for HASCO 2007-NC1 (incorrectly sued herein as "Deutsche Bank National Trust Company,"), U.S. Bank National Association, as Trustee for Asset-Backed Pass-Through Certificates Series 2006-NC2 (incorrectly sued herein as "U.S. Bank National Association,"), and America's Servicing Company for the properties located at 34 Jean Drive and 86 Eatondale Avenue seek an order pursuant to CPLR 1003, 3211(a)(5) and (7) dismissing the complaint as to these defendants and denying the application to declare null and void any transfer of title to real property and rescinding any agreements that arose out of the subject mortgage transactions are both denied without prejudice.

This action is against various individuals and entities for allegedly operating fraudulent foreclosure rescue programs that allegedly defrauded homeowners of the title to their homes by inducing them to enter into putative sale/lease-back agreements.

The plaintiff, the People of the State of New York, is now represented by Eric Schneiderman, Attorney General of the State of New York.  The Court *sua sponte* directs the caption be modified to reflect this change.

3

Defendant Empire Property Solutions, LLC held itself out as a home foreclosure rescue specialist to consumers who were having difficulty paying their mortgages. Defendant John Rutigliano is the director and part owner of Empire. Defendant Kenneth Kiefer is also an owner of Empire. Defendants Rutigliano and Kiefer were the sole officers of Empire. Defendants Empire Property Solutions, Rutigliano and Kiefer will be referred to collectively as the Empire Defendants.

Defendant Zornberg & Hirsch is a law firm. Defendants Barry Zornberg and his wife Nanci Hirsch were general partners of Zornberg & Hirsch. Defendants Zornberg and Hirsch, Barry Zornberg and Nanci Hirsch shall be referred to as the Zornberg Defendants.

Defendant Cory Covert is an attorney licensed to practice in the state of New York. Defendant Bill Tsoumpelis is an attorney licensed to practice in the state of New York. The complaint also refers to the Zornberg Defendants, Cory Covert and Bill Tsoumpelis collectively as the "Attorney Defendants."

Defendant H&Z Abstract, Inc. is a title insurance company. Barry Zornberg and his wife Nanci Hirsch are owners and officers of H&Z Abstract, Inc. H&Z Abstract, Inc., Zornberg and Hirsch are also collectively referred in the complaint to as the H&Z Abstract Defendants.

4

Defendant Leonie Neufville d/b/a Zneufuille Mortgage (Neufville) was a mortgage broker allegedly registered with the New York State Superintendent of Banking.

The complaint sets forth the following allegations. The previously named defendants engaged in a foreclosure rescue scam to defraud homeowners of the title to and equity in their homes from about December 2005 until sometime in 2007 in a series of transactions that involved common players and common fraudulent practices. The Empire Defendants advertised and held themselves out as foreclosure rescue specialists and, repeatedly, set out to induce financially-distressed consumers to "sell" their homes based on false and misleading statements that they could "save" the homeowners' properties from foreclosure. The homeowners were told that they could continue to live in their homes and pay the mortgage payments or "rent." The Empire Defendants falsely represented that the homeowners would be able to save up enough money and re-build their credit, so that in about one year's time they would then be financially able to repurchase their homes. (Verified Complaint ¶¶ 39-40). They were aided by the Zornberg Defendants who sought out Leonie Neufville, introduced her to the Empire Defendants, persuaded her to act as the mortgage broker, and helped set in motion the chain of events to perpetuate the fraud. (Verified Complaint ¶ 61). The

Zornberg Defendants arranged it so that their title company, H&Z Abstract, would be the title company in the series of real estate transactions. The Zornberg Defendants acted as attorneys for the lenders. (Verified Complaint ¶ 61). The Zornberg Defendants expanded their participation in the fraud by sometimes acting as attorneys for the buyers or attorneys for the sellers in the transactions. (Verified Complaint ¶ 62). Defendents Covert and Tsoumpelis also sometimes acted as the attorney for the seller, and sometimes acted as attorney for the purchaser.

Plaintiff alleges this was a concerted effort by participants in a scheme to defraud consumers that in fact did defraud consumers, depriving them of their homes and all the equity they had accrued. In addition, the plaintiff alleges the previously named defendants failed to disclose the substantial risks inherent in the transactions; failed to disclose or misrepresented the costs to the homeowners and total fees that the Empire Defendants and other defendants would receive; and misrepresented the homeowners' ability to meet the conditions necessary for the repurchase of their homes at the expiration of the "leases."

It is alleged that an integral aspect of the scheme involved the Empire Defendants applying for and procuring a mortgage on the property as mortgagor. The Empire Defendants failed to make the mortgage payments on the new loans as

6

promised to the homeowners, and failed to pay real estate taxes and other

expenses. The homeowners ended up losing both their property and whatever

equity they had accrued. Some were forced to abandon their homes; other's face

eviction.

The allegations in the complaint are further amplified by the facts outlining

the individual cases of fraud allegedly perpetrated by Empire on four of the

consumers as detailed in the affirmation of Victoria L. Safran, in support of the

Order to Show Cause (seq. no. 1) and the consumer affidavits that accompany the

affirmation and also summarized in the affirmation of Ms. Safran. A copy of the

affirmation of Ms. Safran and copies of the affidavits are marked as Exhibit B to

the Notice of Motion (seq. no. 3) by the attorneys for the Zornberg Defendants.

Plaintiff has submitted copies of purported sale/lease-back agreements

between Empire and Napolitano dated October 26, 2006 and between Empire and

Conforti dated July 25, 2006. Each of the sale/lease-back agreements contain the

following language.

> "This lease agreement is completely independent of the purchase
> by Landlord of the subject premises on this date, and was only
> negotiated for the sole benefit of the Tenant.
>
> TENANT HAS HAD A FULL OPPORTUNITY TO CONSULT
> WITH COUNSEL IN THIS MATTER, AND WAS IN FACT
> REPRESENTED BY CORY J. COVERT, ESQ., COUNSEL,

7

WHO, THROUGH OF COUNSEL AT THE TIME OF
CLOSING FULLY DISCUSSED ALL AVAILABLE OPTIONS
OTHER THAN THE SALE AND LEASE OF SAID
PREMISES.

Tenant has read each and every word of this lease agreement and
these disclosures and fully understands them.

Tenant has not been forced or in any way compelled to enter into
this agreement by any party, nor have there been any promises
made by anyone other than the terms in this agreement been
made to the Tenant in consideration of this agreement.

Tenant was in fact advised to sell the subject premises through a
realtor on the open market, but instead elected to move forward
with this transaction."

In further support of the allegations in the complaint, the plaintiff refers to seven

(7) additional properties subject to foreclosure due to the alleged wrongful

conduct of the defendants.

The first cause of action pursuant to Executive Law § 63(12) alleges fraud

against the Empire Defendants, the Attorney Defendants, the H&Z Abstract

Defendants and Neufville Mortgage.  Executive Law § 63(12) prohibits repeated

fraudulent acts or persistent fraud in the carrying on, conducting, or transaction of

business.

The second cause of action pursuant to Executive Law § 63(12) alleges a

violation of GBL § 349 Deceptive Practices against the Empire Defendants, the

8

Attorney Defendants, the H&Z Abstract Defendants and Neufville Mortgage. GBL § 349 provides that it is unlawful to engage in deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any services in the State of New York.

The third cause of action alleges a violation of GBL § 349 Deceptive Practices against the Empire Defendants, the Attorney Defendants, the H&Z Abstract Defendants and Neufville Mortgage.

The fourth cause of action pursuant to Executive Law § 63(12) alleges violation of GBL § 350 False Advertising against the Empire Defendants. GBL § 350 makes it unlawful to engage in false advertising in the conduct of any business or trade or commerce in New York State. The plaintiff contends that the Empire Defendants' violations of GBL § 350 constituted repeated and persistent illegal conduct in violation of Executive Law § 63(12) by engaging in false advertising.

The fifth cause of action also alleges violation of GBL § 350 False Advertising against the Empire Defendants.

The sixth cause of action alleges violations of New York Executive Law § 63(12) Breach of Fiduciary Duty and Duty of Care against the Zornberg Defendants and Covert by repeatedly representing both the sellers and the lenders in the same transactions.

The seventh cause of action alleges violations of New York Executive Law § 63(12) and of Real Property Law § 440 *et seq.* against the Empire Defendants.

The eighth cause of action pursuant to Executive Law § 63(12) alleges common law conversion against the Empire Defendants, the Attorney Defendants and the H&Z Abstract Defendants. The plaintiff alleges the consumers in the sale/lease-back transactions have the right to possession of the mortgage proceeds at the closing which were misappropriated and converted by them for their own use without right or title.

On a motion to dismiss pursuant to CPLR 3211(a)(7), the Court must accept as true, the facts "alleged in the complaint and submissions in opposition to the motion, and accord plaintiffs the benefit of every possible favorable inference," determining only "whether the facts as alleged fit within any cognizable legal theory" (*Sokoloff v Harriman Estates Development Corp.*, 96 NY2d 409, 414; *see, People ex rel. Cuomo v Coventry First LLC*, 13 NY3d 108; *Polonetsky v Better Homes Depot*, 97 NY2d 46, 54; *Leon v Martinez*, 84 NY2d 83, 87-88; *Feldman v Finkelstein & Partners, LLP,* 76 AD3d 703. A motion to dismiss pursuant to CPLR 3211(a)(7) will fail if, taking all facts alleged as true and according them every possible inference favorable to the plaintiff, "the complaint states in some recognizable form any cause of action known to our law" (*Sheroff v Dreyfus Corp.*, 50 AD3d 877.

10

Notably, on a motion to dismiss, the plaintiff is not obligated to demonstrate

evidentiary facts to support the allegations contained in the complaint (*see, Stuart*

*Realty Co. v Rye Country Store, Inc.*, 296 AD2d 455; *Paulsen v Paulsen*, 148

AD2d 685, 687, *Palmisano v Modernismo Publ.*, 98 Ad2d 953, 954; *Aurora Loan*

*Services, LLC v Cambridge Home Capital, LLC*, 12 Misc3d 1152[A] (Supreme

Court Nassau County 2006]), and "[w]hether a plaintiff can ultimately establish its

allegations is not part of the calculus in determining a motion to dismiss" (*ECT 1,*

*Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19; *International Oil Field Supply*

*Services Corp. v Fadeyi,* 35 AD3d 372).

"However, 'allegations consisting of bare legal conclusions as well as

factual claims flatly contradicted by documentary evidence are not entitled to any

such consideration' " (*Morris v Morris*, 306 AD2d 449; *see, Maas v Cornell*

*University*, 94 NY2d 87, 91-92, quoting *Gertler v Goodgold*, 107 AD2d 481, 485,

aff'd, 66 NY2d 946; *see also, Godfrey v Spano*, 13 NY3d 358). "[A]ffidavits may

be used freely to preserve inartfully pleased, but potentially meritorious, claims. "

*Rovello v Orofino Realty Co.*, 40 NY2d 633, 635. "In assessing a motion under

CPLR 3211(a0(7) a court may freely consider affidavits submitted by the plaintiff

to remedy and defects in the complaint," and if the court does so, "the criterion is

whether the proponent of the pleading has a cause of action, not whether he has

11

stated one" (Leon v Martinez, supra, at p. 88; *see also, Uzzle v Nunzie Court Homeowners Ass'n, Inc..*, 55 AD3d 723).

Executive Law § 63(12) empowers the Attorney General to seek injunctive relief, restitution and/or damages whenever any person or business engages in "repeated fraudulent or illegal acts or otherwise demonstrate(s) persistent fraud or illegality in the carrying on . . . or transcation of business." Under the statute, fraud is defined as "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provision." The definition of fraud under Executive Law § 63(12) is broadly construed so as to include acts which are misleading or dishonest irrespective of an intent to defraud. *See People v Apple Health & Sports Clubs*, 206 AD2d 266, 267; *see also people v General Electric Co.*, 302 AD2d 314, 315. The test of whether conduct is fraudulent under Executive Law § 63(12) is whether the particular act "has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud.*" People v General Electric Company, Inc.*, 302 AD2d 314.

General Business Law § 349 is a broad consumer protection statute which declares "deceptive acts or practices in the conduct of any business, trade or commerce" to be unlawful (*see Stutman v Chemical Bank,* 95 NY2d 24). "As a

12

threshold matter, in order to satisfy General Business Law § 349, plaintiffs' claims must be predicated on a deceptive act or practice that is 'consumer oriented' " (*Gaidon v Guardian Life Ins. Co. of Am.*, 96 NY2d 330, 344, quoting *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20,24-25). Deceptive acts or practices may be considered "consumer oriented" when they have a broad impact on consumers at large (*see Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20, 25).  In contrast, private contract disputes which are unique to the parties do not fall within the ambit of the statute (*id.* at 25).

First, Second and Third Causes of Action

The complaint adequately alleges that the consumers who were defrauded suffered injury as a result of the deceptive acts of the Zornberg Defendants, H&Z Abstract Defendants, and Covert.  Construed liberally, the complaint adequately alleges conduct by Zornberg, H&Z Abstract and Covert that had "the capacity or tendency to deceive" or create an atmosphere conducive to fraud.  Barry Zornberg and his wife, Nanci Hirsch are also the owners and officers of H&Z Abstract, Inc. The complaint alleges wrongdoing on behalf of the H&Z Abstract Defendants. The participation of a title company was essential in order to close the real estate transactions and consummate the alleged fraud on the consumers by deceiving the

13

consumers into believing they were legitimate deals. There are factual allegations

in the complaint permitting the inference that the Zornberg Defendants knew or

intended to aid the other defendants in the alleged commission of the fraudulent

real estate scheme. *See Velazquez v Decaudin*, 49 AD3d 712, 716; *Compare,*

*Robinson v Crawford*, 46 AD3d 252.

The attorneys for Covert's argument that Covert was not adequately

apprised of the claims against him is misplaced. Even if the Court finds any

insufficiencies in the pleadings, the Court "may freely consider the affidavits

submitted by the plaintiff to remedy any defects in the complaint." *See Leon v*

*Martinez, supra*. The affirmation submitted by the plaintiff's attorney identified

properties that were alleged to be subject to the defendants' foreclosure rescue

scam. Further, two of the consumers submitted affidavits that identify Covert as

an attorney they met at closing. The compliant adequately alleges specific actions

by the defendants that were misleading and deceptive in violation of Executive

Law § 63(12) and GBL§ 349 . A cause of action for violation of GBL § 349

requires a finding of deceptive acts or practice. The cause of action for violation

of Executive Law § 63(12) based on violations of GBL§ 349 requires a finding

that defendants engaged in repeated or persistent deceptive acts and practices. An

inference can be made that the complaint sets forth a viable cause of action based

14

on persistent acts rather than single isolated acts. The Attorney General can bring

an action alleging violations of both statutes. *See, People v Applied Card Systems,*

*Inc.,* 11 NY3d 105.

Therefore, the motions to dismiss the first, second, and third causes of

action against the Zornberg Defendants, the Covert Defendant and H&Z Abstract

Defendants are **denied,** except as set forth below as to the Statute of Limitations.

Statute of Limitations

As to the second and third causes of action, it appears settled that the State's

claims based on violations of GBL §349 are governed by the three year statute of

limitations. *Gaidon v. Guardian Life Ins. Co.*, 96 NY2d 201, 210 (2001); *Morelli*

*v. Weider Nutrition Group, Inc.,* 275 AD2d 607 (2d Dept. 2000). Thus all claims

that accrued prior to September 1, 2006 are time barred.

However, as to the first cause of action, the Court rejects the defendants'

claim that enforcement proceedings brought by the Attorney General under Exec

Law §63(12) are not governed by the six-year residual statute of limitations set

forth in CPLR 213(1). The Court has already determined that the complaint

sufficiently alleges both common law fraud (first cause of action) and violations of

GBL §349 (second and third causes of action).

15

CPLR 214(2) prescribes a three-year statute of limitations for "an action to recover upon liability, penalty or forfeiture created or imposed by statute...." However, this limitations period does not "automatically apply to all causes of action in which a statutory remedy is sought, but rather only where liability would not exist but for a statute". (*Matter of Meyer*, 62 AD3d 133, 138 [1st Dept. 2009], quoting *Aetna Life & Cas. Co. v. Nelson*, 67 NY2d 169, 174 [1986]). Thus, the Court must "look to the essence of plaintiff's claim and not to the form in which it is pleaded" (*State of New York v. Cortelle Corp.*, 38 NY2d 83, 86 [1975]).

Exec Law §63(12) allows the Attorney General to obtain injunctive relief, restitution and/or damages from any person who engages "in repeated fraudulent or illegal acts ... in the carrying on, conducting or transaction of business." As used in this statute, the term "fraud" includes "any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions" (*id.*). Thus, Exec Law §63(12) applies to fraudulent conduct actionable at common law, as well as to conduct for which liability arises solely from statute. *People v. Liberty Mutual*, 15 Misc3d 1110(A) at *4 (Sup. Ct., NY Co. 2007).

Here plaintiff has plead both the elements of common law fraud and statutory violations which might not rise to the level of fraud and include "a far

16

greater range of claims that were never legally cognizable before [their]

enactment". *Gaidon, supra*. Thus, the six-year limitation period applies to the

first cause of action since the conduct alleged is sufficient to constitute common-

law fraud independent of the statutory violations. *State of New York v. Cortelle*

*Corp.*, 38 NY2d 83 (1975); *see*, *Gaidon, supra*; *cf. State of New York v. Daciel*

*Chem. Indus.*, 42 AD3d 301 [1st Dept. 2007]) (claims that do not allege all

elements of fraud governed by three year statute); *see also*, *People v. Pharmacia*

*Corp.*, 27 Misc3d 368, 373 (Sup. Ct. Albany Co. 2010); *People v. City Model and*

*Talent*, 29 Misc3d 1205(A) (Sup. Ct. Suffolk Co. 2010).

Sixth Cause of Action

The sixth cause of action alleges breach of fiduciary duty in violation of

Executive Law § 63(12). This cause of action alleges the same facts and law as

the first cause of action for fraud in violation of Executive Law § 63(12). The

claim of breach of fiduciary duty in violation of Executive Law § 63(12) warrants

dismissal since it is duplicative of the plaintiff's second and third causes of action

for fraud. There is nothing in plaintiff's allegations for breach of fiduciary duty

which cannot be remedied by its request for relief involving the first to third

causes of action. The sixth cause of action is duplicative and is **dismissed** against

all named defendants.

17

Eighth Cause of Action

Plaintiff's complaint fails to state a claim for conversion.  A conversion

takes place when someone, intentionally and without authority, assumes or

exercises control over personal property, belonging to someone else, interfering

with that person's right of possession. The two elements of conversion are (1)

plaintiff's possessory right or interest in the property and (2) defendant's dominion

over the property or interference with it, in derogation of plaintiff's rights.

*Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 50.  In the instant

action, the plaintiff is the Attorney General of the State of New York.  The

Attorney General did not have a possessory right or interest in any property that is

the subject of the foreclosure rescue transaction referred to in plaintiff's

complaint.  Thus, the first element of conversion has not been met.  The eighth

cause of action sounding in conversion is **dismissed** as to the moving defendants.

Necessary Parties

Select Portfolio Servicing, Inc. (SPS") as the servicing agent and attorney-

in-fact for defendant U.S. Bank National Association, as Trustee for First Franklin

Mortgage Loan Trust 2006-4-FF14, Mortgage Pass-Through Certificates, Series

2006-FF14 ("U.S. Bank") ("SPS and U.S. Bank Defendants") is named as a

necessary defendant.  The attorney for U.S. Bank and SPS in the affirmation in

support states that U.S. Bank is trustee for the First Franklin Mortgage Loan Trust

2006-4-FF14, Mortgage Pass-Through Certificates, Series 2006-FF14, which

currently holds a note executed by Defendant John Rutigliano on June 29, 2006

("Note"), in the principal sum of $580,000 secured by a mortgage of the same date

("Mortgage") giving a security interest in property located at 8 Terry Court, Glen

Head, New York ("Property").  SPS is the servicing agent for U.S. Bank

Mortgage.  U.S. Bank and SPS are named as Necessary Party Defendants in this

action.

Defendant Deutsche Bank National Trust Company, the Trustee for HASCO

2007-NC1 ("Deutsche Bank"), and defendant U.S. Bank National Association, the

Trustee for Asset-Backed Pass-Through Certificate Series 2006-NC2 ("U.S.

Bank") and defendant American's Servicing Co. ("ASC") servicing agent for the

property located at 34 Jean Drive and 86 Eatondale Ave. are also named as

Necessary Party Defendants.  None of the allegations by the plaintiff is against any

of the named Necessary Party Defendants.

In support of the motion to dismiss the complaint as to the Necessary Party

Defendants, the attorney submits an affidavit sworn to May 3, 2011 by Mary Ellen

Burst, the Default Litigation Specialist of Wells Fargo Bank, N.A. successor by

merger to Wells Fargo Home Mortgage, Inc. d/b/a America's Servicing Company

("ASC"). Ms. Burst's affidavit is in support of defendants defendant Deutsche

Bank National Trust Company, as Trustee for HASCO 2007-NC1 ("Deutsche

Bank"), U.S. Bank National Association, as Trustee for Asset-Backed Pass-

Through Certificate Series 2006-NC2 ("U.S. Bank") and states that:

> "ASC services two of the mortgage loans at issue in the above
> captioned action, specifically those that relate to properties
> located at 34 Jean Drive and 84 Eatondale Avenue.  The trustee
> of the trust that owns the former is defendant U.S. Bank and as
> to the latter is Deutsche Bank.  ASC does not own or hold a
> beneficial interest in the loans or mortgages at issue in this
> action.

> As servicer of these loans, ASC collected and posted payments,
> maintained the escrow account, handled all aspects of customer
> service, and referred each loan for foreclosure when the
> mortgagees defaulted on their payments.  Therefore, I, as Default
> Litigation Specialist for ASC, have reviewed the books and
> records maintained by ASC concerning this loan.  The
> statements set forth herein are based upon my personal
> knowledge and my review of ASC's records and files.

> *On our about July 11, 2006, defendant John Rutigliano
> ("Rutigliano") obtained a mortgage loan from New Century
> Mortgage Corp. ("New Century") for $336,000 in principal,
> memorialized by a note ("Jean Drive Note") and secured by a
> mortgage on the property located at 34 Jean Drive.  ("Jean
> Drive Mortgage").  A true and correct copy of the Jean Drive
> Note and Mortgage is attached hereto as Exhibit 1 (emphasis
> added).*

Subsequently, New Century assigned the Jean Drive Note and
Mortgage to U.S. Bank, as evidenced by an Assignment of

20

Mortgage, dated September 22, 2008 ("Jean Drive Assignment"). A true and correct copy of the Jean Drive Assignment is attached hereto as Exhibit 2. The transfer of the Note from New Century to U.S. Bank is reflected in the Allonge, a true and correct copy of which is annexed to Exhibit 1.

U.S. Bank is the current holder of the Jean Drive Note and Jean Drive Mortgage.

Rutigliano failed to make the required loan payments that became due and payable in October 2007 and thereafter failed to cure his default. No payments have been made on the Jean Drive loan since September 2007, nor has Rutigliano paid taxes on the Jean Drive property, or insured the mortgaged property. ASC, acting for the trust holding the mortgage, has made those payments since the time of the default.

On or about December 22, 2006 defendant Kenneth Kiefer ("Kiefer") obtained a mortgage loan from New Century for $441,750 in principal, memorialized by a note ("Eatondale Note") and secured by a mortgage on the property located at 86 Eatondale Avenue ("Eatondale Mortgage"). A true and correct copy of the Eatondale Note and Mortgage is attached hereto as Exhibit 3. The Note was indorsed in blank by New Century.

New Century assigned the Eatondale Note and Mortgage to Deutsche Bank, as evidenced by an Assignment of Mortgage, dated January 29, 2008 ("Eatondale Assignment"). Annexed hereto as Exhibit 4 is a true and correct copy of the Eatondale Assignment.

Deutsche Bank is the current holder of the Eatondale Note and Eatondale Mortgage.

A promissory note secured by a mortgage is a negotiable instrument. *See Mortgage Electronic Registration Systems Inc. v Coakley*, 41 AD3d 674.

A basic concept of contract law is that an assignee of a mortgage takes

subject to all defenses and counterclaims that can be asserted against the assignor.

*See, Hammelurger v Foursome Inn Corp.*, 54 NY2d 580, 586; *Crispino v*

*Greenpoint Mortg. Corp.*, 304 AD2d 608, *State Street Bank & Trust Co. v Boayke*,

249 AD2d 535; *Caprara v Charles Ct. Assoc.*, 216 AD2d 722; *Granick v Mobach*,

13 AD2d 534.

New Century Mortgage Corporation was a subsidiary of New Century

Financial Corporation.  New Century Mortgage Corporation originated,

purchased, sold and serviced mortgage loans secured primarily by first mortgge on

single-family residences.  As of January 1, 2007, New Century was the second

biggest subprime mortgage lender in the United States.  Subprime mortgage loans

were riskier loans in that they were made to borrowers unable to qualify under

traditional, more stringent criteria due to a limited or blemished credit history.

Subprime borrowers were generally defined as individuals with limited income or

having FICO credit scores between 500 and 620 on a sale that ranges from 300 to

850.  Subprime mortgage loans have a much higher rate of default than prime

mortgage loans and are priced based on the risk assumed by the lender.

On March 9, 2007, New Century Financial Corporation of which New

Century Mortgage Corporation was a subsidiary, reported that it had failed to meet

22

certain minimum financial targets required by the warehouse lenders and disclosed that it was the subject of a federal criminal investigation.  On March 20, 2007, New Century Financial Corporation said that it could no longer sell mortgage loans to Fannie Mae or act as the primary servicer of mortgage loans for the government sponsored enterprise.  In a filing with the Securities and Exchange Commission, New Century Financial Corporation said that Fannie Mae terminated "for cause" a mortgage selling and servicing contract with it citing alleged breaches of that contract and others.  New Century Financial Corporation said it received a notice of breach and termination on March 14, 2007.

On April 2, 2007,  New Century Financial Corporation and its related entities filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, District of Delaware located in Wilmington, Delaware.  On March 26, 2008, an unsealed report by the bankruptcy court examiner outlined a number of "significant improper and imprudent practices related to its loan originations, operations, accounting and financial reporting process".  On our about August 1, 2008, New Century Financial Corporation went out of business pursuant to its Chapter 11 liquidation filing under bankruptcy.  *See* hhttp://en.wikipedia. org/wiki/New_Century viewed on October 31, 2011.

23

In commenting on the potential for lack of transparency with mortgage transactions involving MERS, former Chief Judge Judith Kaye of the court of Appeals, in a dissent in *MERS Corp., Inc. v Romaine,* 8 NY3d 90, 104, made the following prescient statement:

> Although creating efficiencies for its members, there is little evidence that the MERS system provides equivalent benefits to home buyers and borrowers and, in fact, some evidence that it may create substantial disadvantages. While MERS necessarily opted for a system that tracks both the beneficial owner of the loan and the servicer of the loan, its 800 number and Web site allow a borrower to access information regarding only his or her loan services, not the underlying lender. The lack of disclosure may create substantial difficulty when a homeowner wishes to negotiate the terms of his or her mortgage or enforce a legal right against the mortgagee and is unable to learn the mortgagee's identity. Public records will no longer contain this information as, if it achieves the success it envisions, the MERS system will render the public record useless by masking beneficial ownership of mortgages and eliminating records of assignments altogether. Not only will this information deficit detract from the amount of public data accessible for research and monitoring of industry trends, but it may also function, perhaps unintentionally, to insulate a noteholder from liability, mask lender error and hide predatory lending practices (emphasis added).

In this era of allegations of predatory lending, subprime mortgages and short sales, the equity powers of the Court inherent in a mortgage foreclosure action are triggered. *See Note v Darien Const.*, 41 NY2d 1055. Once equity is invoked the Court's power is as broad as equity and justice requires. *See Norstar Bank v*

*Morabito*, 201 AD2d 545, 546.

In 1974 Congress passed the Real Estate Settlement Procedure Act
(RESPA) after determining that reforms were needed to insure that Americans
involved in real estate transaction would receive timely information on the nature
and cost of the refinance process and would be protected from abusive practices.
Now, over 35 years later, after numerous amendments to RESPA and New York
State laws to protect the consumer, the failure to disclose the true cost of the
mortgage is as rampant now as it was when Senator William Proxmine urged the
passage of RESPA. In *Bank of New York v Allen Walden, et al.*, 194 Misc2d 461
(Nassau Supr. Ct., 2002), 751 NYS2d 341, 2002 NY Misc Lexis 1513 Justice
Ralph Franco (retired), in one of the first cases in this Court to address the issue of
predatory lending and/or subprime loans, stated that ". . . the legislative intent is
crystal clear–protection of the public from sharp lending practices."

It is incomprehensible that New Century did not have an underwriting
department to ascertain the veracity of the transactions.  It is a reasonable
inference that the putative sale/lease-back deals were in reality mortgage
refinances used to circumvent various state and federal statutes.  A mortgagor
would be entitled to a three day right of recession in a mortgage refinance
transaction.  The fact that there may be irregularities on the HUD-1 statements

25

raises issues as to whether the lender was in violation of the disclosure laws. *See* Truth in Lending Law (15 U.S.C. Sections 1601, et seq.).

Courts have found that the lender and mortgage broker may have such a relationship as to impute their joint action as being fraudulent. *See Mathurin v Lost & Found Recovery, LLC*, 65 AD3d 617; *compare Chemical Bank v Bowers*, 228 AD2d 407. In *Thomas v LaSalle Bank National Association et al.*, 79 AD3d 1015, 1017, the Appellate Division Second Department stated that:

> Considering the complaint and all evidentiary material submitted, including the closing documents, the plaintiff has a cause of action for rescission of the subject mortgage transactions on a theory that the appellants are not *bona fide* encumbrancers for value. A mortgagee's interest in the property is protected unless it has notice of a previous fraud affecting the title of its grantor. "[A] mortgagee is under a duty to make an inquiry where it is aware of facts that would lead a reasonable, prudent lender to make inquiries of the circumstances of the transaction at issue." "A mortgagee who fails to make such an inquiry is not a bona fide encumbrancer for value" (internal citations omitted).
>
> Here the documentary evidence establishes circumstances which would lead a reasonable, prudent lender to make inquires concerning the transaction. Thus, under the first cause of action alleged in the complaint, the plaintiff has a cause of action against the appellants for rescission of the subject mortgages (internal citations omitted). *Compare Deutsche Bank Nat. Trust Co. v Gordon*, 84 AD3d 443 and *G.E. Capital Mortg. Services, Inc. v Holbrooks*, 245 AD2d 170.

In an action by mortgagors against a mortgagee and its assignee, it was undisputed

26

that the loan was advanced in connection with the construction and purchase of a single family home, that the home was uninhabitable at the time of closing, and the builder was convicted of fraud in federal court for crimes committed in the construction and sale of the plaintiff mortgagors' home, as well as other residences. Although a mortgagee generally has no duty to a mortgagor with respect to the structural soundness of a dwelling, the workmanship, on the issuance of a Certificate of Occupancy, the highly unusual circumstance established that an issue of fact existed as to the mortgagee's knowledge of the fraud. *Barnes v Countrywide Home Loans, Inc.*, N.Y.L.J., August 1, 2001, at 22, col. 3 (Sup. Ct., Suffolk County [Dunn, J.]).

New Century Mortgage filed for bankruptcy protection prior to the lender defendants procuring the assignment of mortgages.

An attorney for defendant Deutsche Bank National Trust Company submitted a one and one-half page reply affidavit stating that:

> A true and correct copy of the cover page of the Pooling and Servicing Agreements ("PSAs") for 34 Jean Drive and 86 Eatondale Avenue loans, reflecting that "Wells Fargo Bank, NA" is servicer of the loans, are annexed collectively hereto as Exhibit I. A full copy of the PSAs are available online at hhtp://www.sec.gov/Archives/edgar/data/1374759/00008823770 6003528/d569152ex4_1.htm. and hhtp://www.sec.gov/Archives/ edgar/data/1399479/0001144204070328-51/v078746_4-1.htm.

At the request of this Court the attorneys for Deutsche Bank National Trust

Company, as Trustee for HASCO 2007-NC1 ("Deutsche Bank") and U.S. Bank

National Association, as Trustee for Asset-Backed Pass-Through Certificates

Series 2006-NC2 ("U.S. Bank") (together, "Defendants") in the within captioned

action, furnished the Court with copies of the Pooling & Servicing Agreements

related to the mortgages held by Deutsche Bank and U.S. Bank, as trustees for the

above-referenced trusts with respect to the properties at issue in this action.  The

Policy and Service Agreement dated May 1, 2007, is over 223 pages, and provides

at pg. 49 that upon discovery that any of the mortgages are defective that make up

the pool, the sponsor shall remove the:

> Mortgage Loan from the Trust Fund and substitute in its place a
> Substitute Mortgage Loan, in the same manner and subject to the
> same conditions set forth in this Section 2.03 or (ii) repurchase
> such Mortgage Loan at the Repurchase Price; provided,
> however, that any such substitution pursuant to clause (i) above
> shall not be effected prior to the delivery to the Custodian of a
> Request for Release substantially in the form of Exhibit J, and
> the delivery of the Mortgage File to the Custodian for any such
> Substitute Mortgage Loan.  It is understood and agreed that the
> obligations of the Sponsor under this Agreement to cure,
> repurchase or substitute any Mortgage Loan as to which a breach
> of a representation and warranty has occurred and is continuing,
> together with any related indemnification obligations of the
> Sponsor set forth in Section 2.03(b), shall constitute the sole
> remedies against the Sponsor available to the Certificateholders,
> the Depositor and any of its affiliates, or the Trustee on their
> behalf.

28

The Pooling and Servicing Agreements dated September 1, 2006 is almost 200 pages. The Court further notes that the Pooling and Servicing Agreements are dated May 1, 2007 and September 1, 2006, respectively, while assignments were not made until September 2008. The moving lender defendants are assignees of New Century and "stand in its shoes."

The Pooling and Servicing Agreement dated September 1,2006 requires the production of a title insurance policy pertaining to the mortgaged property (pg. 76). Section 2:05 of the Pooling Agreement Representations, Warranties and Covenants of the Servicer states that thee are no actions or proceedings against, or investigations known to the Servicer before a court or administrative agency that might prohibit or materially and adversely affect the performance by the servicer of its obligations under or the validity or enforceability of the Agreement (p. 84). The Servicer had an obligation to furnish and "continue to fully furnish" accurate and complete information on its borrow credit files to named credit agencies in a timely manner (p. 84). The Pooling and Service Agreements provided protection to the assignees/trustees. When the servicer, the assignee and/or trustee acquired the subject mortgages they were aware of New Century's precarious legal situation. New Century put the toxic mortgages into the stream of commerce. The "lender" defendants cannot use the Pooling and Serviding Agreements as a

29

defense without a judicial determination that the Agreements vitiate the time

honored obligation of assignees that they take all liabilities associated with an

assignment. *See, Hammelurger v Foursome Inn Corp.*, 54 NY2d 580, 586;

*Crispino v Greenpoint Mortg. Corp.*, 304 AD2d 608, *State Street Bank & Trust

Co. v Boayke*, 249 AD2d 535; *Caprara v Charles Ct. Assoc.*, 216 AD2d 722;

*Granick v Mobach*, 13 AD2d 534. The attorney for the lenders have failed to

demonstrate any basis in the law or the facts to permit the trustee assignees to

walk away from their *obligations* as beneficiaries of the assignment and at the

same time assert the *right*s pursuant to the assignment while precluding the

consumers from asserting a viable cause of action for fraud and misrepresentation.

*See JP Morgan Chase Bank v Munoz*, 85 AD3d 1124. At the very least, the lender

defendants may be entitled to an equitable subrogation cause of action for the

amount of money loaned on behalf of the consumers (*LaSalle Bank Nat'l. Assn. v

Ally*, 39 AD3d 597). The sanctity of a contractual obligation is fundamental.

*Pimpinello v Swift & Co.*, 253 NY 159; *Connelly v Blitzer Realty Inc. v Elwyn*, 111

AD2d 555. It would be inequitable for the consumers to have the Court rescind

the respective mortgages and end up with a house that is free and clear of any

liens. Justice should be a shield to protect those taken advantage of by

30

unscrupulous individuals, not a sword to unjustly enrich and reward the consumers

with a windfall to which they are not entitled. *Norstar Bank v Morabito, supra.*

Moreover, this Court finds plaintiff's reliance on *State of New York by*

*Abrams v Harris Home Design, Inc.*, 1989 WL 88690 (S.D.N.Y.) to be persuasive.

In that case, as here, the Attorney General sought relief under Executive Law §

63(12). The complaint therein alleged that certain defendants had fraudulently

induced consumers into entering into home improvement sales contracts. Before

the case was removed to federal court, the plaintiffs had sought joinder under

CPLR 1001(a) of assignee banks and FSLIC who had acquired the mortgages and

notes executed in the underlying transactions. On a motion to dismiss brought by

the assignees, the federal court held that joinder of the assignees as necessary

parties pursuant to CPLR 10019(a) had been required, even though no cause of

action was alleged against them. The court held that "plaintiff need not allege any

wrongdoing in order to join" the banks and FSLIC as parties. "Since these

defendants hold the consumers' mortgages as security for the obligations they

purchased, any relief the Court may award plaintiff could be meaningless."

In addition, the Court reasoned that if the assignee banks and FSLIC

foreclosed on the mortgages, the defrauded consumers would unduly go through

excessive litigation. This, after all, would undermine the rationale behind CPLR

1001(a): "to avoid excessive and multiple litigation."  The Federal Court cited

*Mahr, v NUF Ins. Society*, 127 NY452, *Rothenberg v Wolfman*, 16 Misc 2d 124

(Sup. Ct. 1958); *Estate of Anita Emons*, 93 Mis2d 615 (Sup. Ct. 1978).

Conclusions

The sixth and eighth causes of action are dismissed.

Under the second and third causes of action, all claims that accrued prior to

September 1, 2006 are time barred.

Motions sequences  no. 4 and no. 5 by the lender banks, assignees, trustees,

servicing agents are denied.

Any other relief not specifically granted herein is denied.

Parties shall have 20 days from today's date to serve verified answers.

Counsel for all parties shall appear at the scheduled conference in Part 43 of

the Nassau County Supreme Court on December 7, 2011, at 9:30 a.m.  Counsel

shall be prepared to enter into a scheduling order for discovery and further

proceedings in this action.  The attorneys for the plaintiff shall serve a copy of this

order on the attorneys for the defendants.

This constitutes the Decision and Order of the Court.

Dated: November 15, 2011

STEVEN M. JAEGER, A.J.S.C.

**ENTERED**

NOV 17 2011

**NASSAU COUNTY**
**COUNTY CLERK'S OFFICE**

33

# EXHIBIT C

_Scan_

SHORT FORM ORDER

## SUPREME COURT - STATE OF NEW YORK

Present:

### HON. STEVEN M. JAEGER,
Acting Supreme Court Justice

---------------------------------------------------------------------

PEOPLE OF THE STATE OF NEW YORK by
ANDREW M. CUOMO, Attorney General of the
State of New York,

            Plaintiff,

        -against-

EMPIRE PROPERTY SOLUTIONS, LLC, JOHN
RUTIGLIANO, KENNETH KIEFER, Individually and
as Members of EMPIRE PROPERTY SOLUTIONS,
LLC, ZORNBERG & HIRSCH, BARRY ZORNBERG
and NANCY HIRSCH, Individually and as Partners of
ZORNBERG & HIRSCH, CORY COVERT, BILL
TSOUMPELIS, H & Z ABSTRACT, INC., BARRY
ZORNBERG and NANCI HIRSCH, Individually and
as Officers of H & Z ABSTRACT, INC., LEONIE
NEUFVILLE d/b/a NEUFVILLE MORTGAGE, PAUL
HARRIS, FRANK LUSCAVAGE, AMERICAN
HOME MORTGAGE SERVICING INC., AMERICA'S
SERVICING CO., AVELO MORTGAGE LLC, BANK OF
AMERICA, N.A., DEUTSCHE BANK NATIONAL TRUST
COMPANY, GMAC MORTGAGE LLC, GOLDMAN
SACHS GROUP, INC., SELECT PORTFOLIO SERVICING,
INC., U.S. BANK NATIONAL ASSOCIATION, WELLS
FARGO BANK, N.A., AMERICAN EXPRESS
CENTURION BANK, CAPITAL ONE BANK, DEL NORTE
REFI, LLC., KAREN L. KIEFER, MDC CREDIT CORP.,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., ROBERT L. PRYOR, CHAPTER 7 TRUSTEE OF THE
BANKRUPTCY ESTATE OF FRANK LUSCAVAGE,
UNITED STATES OF AMERICA, ACTING BY AND
THROUGH FARMERS HOME ADMINISTRATION,
UNITED STATES DEPARTMENT OF AGRICULTURE
AND JOHN DOES,

            Defendants.

---------------------------------------------------------------------

TRIAL/IAS, PART 43
NASSAU COUNTY
INDEX NO.: 09-017767

MOTION SUBMISSION
DATE: 12-16-11

MOTION SEQUENCE
NO. 1

The following papers read on this motion:

| | |
|---|---|
| Order to Show Cause with Temporary Restraining Order, Affirmation, and Exhibits | X |
| Plaintiffs' Reply Memorandum of Law in Support of Motion | X |
| Memorandum of Law of Defendants, Avelo Mortgage LLC and GMAC Mortgage LLC in Opposition | X |
| Affirmation in Opposition | X |

Order to show cause by the plaintiff, the People of the Sate of New York for, *inter alia*, an order: (1) enjoining the defendants Empire Property Solutions, LLC, John Rutigliano, and Kenneth Kiefer, *et., al.,* from transferring, selling, or otherwise disposing of any assets owned, possessed or controlled by them in the State of New York; and (2) staying certain mortgage foreclosures actions.

In August of 2011, the People of the State of New York ["the plaintiff"], commenced the within action as against, *inter alia*, Empire Property Solutions, LLC ["Empire"] and its principals. The verified complaint alleges that Empire engaged in a fraudulent, mortgage "foreclosure rescue scheme" in violation of Executive Law § 63[12] and General Business Law §§ 349, 350 (Cmplt., ¶¶ 39-72; 76-108 *see also, People v. Empire Property Solutions, LLC,* ___Misc.3d___, 2011 WL 5901372 [Supreme Court, Nassau County, 2011][Order of Jaeger, J.]; Cmplt., ¶¶ 40-44, 52-53).

In sum, the plaintiff alleges that victimized homeowners were instructed to convey their homes to – and then lease them back from – so-called "straw buyers" supplied by Empire. The Empire straw buyers would then submit fraudulent

2

applications for mortgage loans on which they later defaulted, thereby exposing the

homeowners' properties to loss through subsequently commenced foreclosure

proceedings (Cmplt., ¶¶ 39-42, 43-73).

Based upon these allegations and others, the complaint: (1) interposes several

causes of action grounded on Executive Law § 63[12] and General Business Law §§

349, 350; and (2) demands, *inter alia*, permanent injunctive relief and a declaration

rescinding and/or "voiding any transfer of title to real property" or any other

agreement "that arose out of * * * the fraudulent, deceptive and illegal" mortgage

scheme (Wherefore Clause, ¶¶ 1-8).

Notably, among the defendants named as necessary parties to the action are

various lenders, including codefendants Avelo Mortgage LLC ["Avelo"] and GMAC

Mortgage LLC ["GMAC"]. Both Avelo and GMAC obtained title to their mortgages

and notes (which were already in default at the time) through assignments – and both

are now attempting to foreclose upon those mortgages, *i.e.*, mortgages originally

made by other lenders to Empire's fraudulent, "straw buyers" (Cmplt., ¶¶ 39-72).

Contemporaneously with the service of its summons and verified complaint,

the plaintiff brought on the instant application for preliminary injunctive relief,

coupled with a temporary restraining order. Among other things, the temporary

restraining order – which the Court signed – requested relief staying certain

3

foreclosure proceedings commenced by the defendant-lenders, including those instituted by Avelo and GMAC (*see,* OSC 4th decretal paragraph).

In support of its motion for injunctive relief, the plaintiff contends that a stay of the Avelo and GMAC foreclosure proceedings is required to avoid irreparable injury; maintain the status quo; and avoid the dissipation of property which could render any judgment for the relief sought ineffectual (CPLR 6301). More particularly, the plaintiff contends that if the foreclosure proceedings are permitted to conclude – and the victim's former homes are acquired by third party purchasers – the residences could be irrevocably lost (*e.g., Masjid Usman, Inc. v. Beech 140, LLC,* 68 AD3d 942). The plaintiff further contends, among other things, that the underlying loan transactions were already in default when the movants received their respective assignments, and were replete with "red flag" type anomalies, including, *inter alia,* mortgage applications containing inaccuracies; incomplete and inaccurate HUD-1 statements; purchasers who were not residing in the homes acquired when the assignments were made (*cf.,HSBC Mortg. Services, Inc. v. Alphonso,* 58 AD3d 598, 600); and numerous instances where lender-attorneys simultaneously acted as counsel for sellers and/or purchasers (Pltff's Brief at 5-6, 17-18, 19-20).

Upon the papers submitted, the plaintiff has demonstrated its entitlement to the injunctive relief sought.

4

More specifically, the evidentiary record before the Court depicts in detail, the

manner in which the alleged mortgage rescue scheme was perpetrated in violation of

statutory proscriptions and establishes both a likelihood of success on the merits and

a balancing of the equities in the plaintiff's favor (*see, Thomas v. Lasalle Bank Nat.*

*Ass'n*, 79 AD3d 1015; *People v. Property Solutions, LLC*, *supra*, 2011 WL 5901372

*see also, Masjid Usman, Inc. v. Beech 140, LLC*, *supra*, 68 AD3d 94). The evidence

further supports the plaintiff's assertions that if the *status quo* is not maintained

through the granting of provisional relief, the victims of the scheme could sustain

irreparable harm through the foreclosure sale and irrevocable loss of the homes to

third parties.

Although the defendant-lenders Avelo and GMAC contend that they

themselves have they not been accused of violating the statute, the two homes

encumbered by their mortgages were titled in the names of the accused wrongdoers,

who acquired the deeds through false pretenses and/or an allegedly fraudulent scheme

plainly violative of, *inter alia*, Executive Law § 63[12]). It is settled that "[a] deed

based on forgery or obtained by false pretenses is void *ab initio*, and a mortgage

based on such a deed is likewise invalid" (*Cruz v. Cruz*, 37 AD3d 754 *see, U.S. Bank*

*Nat. Ass'n v. Mayala*, 87 AD3d 691, 692; *First Nat. Bank of Nevada v. Williams*, 74

AD3d 740, 742; *GMAC Mtge. Corp. v Chan*, 56 AD3d 521 *see generally, Marden v*

5

*Dorthy*, 160 NY 39, 49 [1899]; *Wargo v. Jean*, 77 AD3d 919, 921; *National City Home Loan Services, Inc. v. Arango*, 72 AD3d 915, 916; *Johnson v. Melnikoff*, 65 AD3d 519; *People v. Property Solutions, LLC, supra*, 2011 WL 5901372). Further, "a mortgagee is under a duty to make an inquiry where it is aware of facts that would lead a reasonable, prudent lender to make inquiries of the circumstances of the transaction at issue, and one who does not do so "is not a bona fide encumbrancer for value" (*JP Morgan Chase Bank v. Munoz*, 85 AD3d 1124, 1126; *LaSalle Bank Natl. Assn. v Ally*, 39 AD3d 597 *see, Thomas v LaSalle Bank N.A.,supra*, 79 AD3d 1015, 1017; *Stracham v Bresnick*, 76 AD3d 1009, 1010; *First Nat. Bank of Nevada v. Williams, supra*; *HSBC Mortg. Services, Inc. v. Alphonso, supra*, 58 AD3d 598, 600).

Lastly, while the Court agrees that the plaintiff has made an adequate showing of irreparable injury, nevertheless "[t]raditional concepts of irreparable damage which apply to private parties do not govern this public interest field" (*State of New York v Terry Buick*, 137 Misc.2d 290, 296 [Supreme Court, Dutchess County 1987]). This is because "[t]he irreparable injury to be enjoined is an injury to the public, which need not be focused upon an individual to be actionable" (*State of New York v Terry Buick, supra see also, Spitzer v. Lev*, ___Misc.3d.___, 2003 WL 21649444, at 2 [Supreme Court, New York County 2003] *see generally, People ex rel. Bennett v Laman*, 277 NY 368, 383 [1938]; *Incorporated Vil. of Plandome Manor v Ioannou*, 54 AD3d

6

364; *State of New York v Brookhaven Aggregates*, 121 AD2d 440, 442; *Town of Islip v Clark*, 90 AD2d 500, 501 *cf., F.T.C. v. Crescent Pub. Group, Inc., supra,* 129 F.Supp.2d 311, 319 [S.D.N.Y. 2001]).

The Court has considered the defendants' remaining contentions and concludes that they are lacking in merit.

Accordingly, it is,

**ORDERED** that the order to show cause by the People of the Sate of New York for a preliminary injunction is granted, and it is further,

**ORDERED** that the directives contained in the restraining order signed by the Court upon the initial submission of the plaintiff's motion on September 1, 2011, shall be continued pending the conclusion of the action or until further order of this Court.

The foregoing constitutes the Decision and Order of the Court.

Dated: January 27, 2012

_____
STEVEN M. JAEGER, A.J.S.C.

ENTERED

JAN 3 1 2012

NASSAU COUNTY
COUNTY CLERK'S OFFICE

7

# EXHIBIT D

Scan

SHORT FORM ORDER

## SUPREME COURT - STATE OF NEW YORK

Present:

### HON. STEVEN M. JAEGER,
Acting Supreme Court Justice

-----------------------------------------------------------------

PEOPLE OF THE STATE OF NEW YORK by
ANDREW M. CUOMO, Attorney General of
the State of New York,

                                    Plaintiff,

                    -against-

EMPIRE PROPERTY SOLUTIONS, LLC, et al.,

                                    Defendants.

-----------------------------------------------------------------

TRIAL/IAS, PART 41
NASSAU COUNTY

INDEX NO.: 09-017767

MOTION SUBMISSION
DATE: 3-2-12

MOTION SEQUENCE
NO. 006

The following papers read on this motion:

| | |
|---|---|
| Notice of Motion, Affirmation, and Exhibits | X |
| Memorandum of Law in Opposition | X |

Motion by the attorney for defendants Zornberg & Hirsch, Barry Zornberg, Nancy Hirsch, and H&R Abstract, Inc. (the Zornberg defendants) for an order pursuant to CPLR 2221 for leave to reargue their motion to dismiss the complaint is granted, and upon reargument the court adheres to its decision dated November 15, 2011 denying the application to dismiss the complaint pursuant to CPLR 3211(a)(7) and CPLR 3016(b) against the Zornberg defendants.

It is well settled that a motion for reargument is addressed to the sound discretion of the court, and may be granted upon a showing that the court overlooked

or misapprehended the relevant facts or misapplied any controlling principle of law (*see McGill v Goldman*, 261 AD2d 593, 594). It is not designed, however, to provide an unsuccessful party with successive opportunities to reargue issues previously decided, or to present arguments different from those originally presented (*McGill v Goldman, supra*; *Pahl Equip. Corp. v Kassis*, 182 AD2d 22, 27).

The complaint and pleadings allege the Zornberg defendants facilitated the closings of the real estate transactions and cloaked them with an air of legitimacy, thereby aiding in the fraudulent scheme of the co-defendants. The pleadings also allege that the Zornberg defendants engaged in a persistent fraud by permitting the transactions to go forward despite alleged obvious irregularities, disbursements of the loan proceeds in a manner not authorized by the lenders, and then misrepresenting the terms of the transaction to the lenders.

Although the strict pleading requirements of CPLR 3016(b) apply to common law fraud claims, the general notice pleading requirement of CPLR 3013 apply to Executive Law § 63(12) claims. The strict pleading requirements for causes of action sounding in common law fraud (CPLR 3016) do not apply to causes of action alleging violation of Executive Law 63(12). *See Joannou v Blue Ridge Ins. Co.*, 289 AD2d 531. *People v Wells Fargo Ins. Services,* Inc., 62 AD3d 404 is the only case cited by defendants in support of their argument that a claim under Executive Law §

2

63(12) must meet the pleading requirements of CPLR 3016(b).  Contrary to

defendants' assertion, that case does not so hold.  While the court did state that the

fraud claim was not stated with sufficient particularity, the court's reasoning was

based entirely on the fact that the complaint failed to state "wrongdoing within the

meaning of Law (Executive  § 63[12])."  *People v Wells Fargo Ins. Services, Inc.*

*supra,* p. 495.  The court never stated that it was applying CPLR 3016(b), and in

affirming the case, the Court of Appeals never applied the standards of CPLR

3016(b), nor suggested, in any way that they applied.  *People v Wells Fargo Ins.*

*Service, Inc.*, 16 NY3d 166.

The claim for fraud under Executive Law § 63(12) is not based solely on

omissions or a failure to act.  The complaint alleges that the Zornberg defendants and

H&Z Abstract defendants reached an agreement with the other defendants that the

Zornberg defendants would act as attorneys for the lenders in the transaction, and the

H&Z Abstract defendants would act as the title company (Verified Complaint ¶ 61).

Both the Zornberg and H&Z defendants acted affirmatively in their roles as attorneys

and as the title company, even though they allegedly had knowledge of the fraudulent

nature of the transactions, and thus enabled the fraud to be consummated.  It is

alleged that when representing consumers, the attorney defendants, including the

Zornberg defendants, advised their clients or caused their clients to initial statements

3

on the lease agreements that the attorneys knew were false, and advised or caused their clients to sign the lease agreements. (Verified Complaint ¶ 66). In their role as attorneys for the lenders, the Zornberg defendants knowingly prepared HUD-1 Settlement Statements containing material misrepresentations and omissions of material fact (Verified Complaint ¶¶ 69-71), and in their role as attorneys for the buyers or sellers, caused their clients to sign the HUD-1s, even though they knew they were inaccurate. (Verified Complaint ¶ 70).

Contrary to defendants' argument, the fraud claim does not merely allege that the Zornberg defendants made false representations to parties they did not represent. Instead, it specifically alleges, for example, that they defrauded the sellers when acting in their role as attorneys for the sellers by knowingly preparing materially misleading documents and causing their clients to sign documents that they knew to be false and misleading (Verified Complaint ¶¶ 66-70). For example, when the Zornberg defendants prepared the HUD-1 Settlement Statement, it is alleged they intentionally omitted the names of the title company used in the transactions in order to minimize the risk the lenders would detect the relationship between the lender attorneys and their title company, and the fact that H&Z was wholly owned by the lender attorneys, the Zornberg defendants (Verified Complaint ¶ 69). The complaint also alleges that the Zornberg defendants and H&Z Abstract defendants wrongfully

4

profited from the fraud by sharing in the proceeds of the closing, and

misappropriating funds that rightfully belonged to the consumers.  (Verified

Complaint, Prelim. Statement ¶¶ 46, 70, 105-06).

Movants' assertion that any title company would have done the same or that the

transactions were "single, shot private contract disputes unique to the parties" rather

than "a series of transactions" involving common players and common fraudulent

practices is speculative and conclusory, not sufficient to oppose a motion to dismiss

for failure to state a cause of action pursuant to CPLR 3211.  A motion to dismiss

pursuant to CPLR 3211(a)(7) will fail if taking all facts alleged as true and according

them every possible inference favorable to the plaintiff, the complaint states in some

recognizable form any cause of action known to the law.  *Sheroff v Dreyfus Corp.*, 50

AD3d 877.

The complaint and accompanying pleadings set forth with specificity the names

of consumers allegedly wronged.  Moreover, the court recognizes that "sale-and-

lease-back agreements" are not inherently illegal, fraudulent or deceptive.

Counsel for movants relies on *National Westminster Bank USA v Weksel*, 124

AD2d 144, a case where the attorneys to the transaction only discovered the allegedly

fraudulent transaction at a subsequent time.  In the within action it is alleged the

fraudulent acts existed from the inception, *i.e.*, the allegation that *ab initio* counsel

5

failed to comply with the reporting requirements when completing the HUD-1.

Movants' reliance on *National Westminster Bank USA v Weksel*, *supra*, for the

proposition that "there is no case where mere inaction by a defendant has been held

sufficient to support aider and abettor liability for fraud" is overly broad, and

specifically criticized in *Vereins-Und Westbank, AG v Carter*, 691 F.Supp. 704 at pp.

704-716. Under New York law, a defendant may be charged with substantially

assisting in advancing the commission of the fraud when a defendant affirmatively

assists or helps conceal or fails to act when required to do so thereby enabling the

fraud, which is what is alleged in the within action. *See Nathan v Siegel*, 592

F.Supp.2d 452,; *Oster v Kirschner*, 77 AD3d 51.

A claim under GBL Section 349 must as a threshold matter charge conduct of

the defendant that is consumer-oriented. It is conduct that potentially affects

similarly situated consumers. *Oswego Laborers' Local 214 Pension Fund v Marine

Midland Bank, N.A.*, 85 NY2d 20. To make out a *prima facie* case under GBL

Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were

directed at consumers, (2) the acts are misleading in a material way, and (3) the

plaintiff has been injured as a result. *Maurizio v Goldsmith*, 230 F.3d 518, 521.

"Deceptive acts" are defined objectively "as acts that are likely to mislead a

reasonable consumer acting reasonably under the circumstances." *Id*. (internal

6

quotations omitted).  Although contacts unique to the parties are not covered by GBL

Section 349, "plaintiff . . . need not show that the defendant committed the

complained-of acts repeatedly – either to the same plaintiff or to other consumers –

but instead must demonstrate that the acts or practices have a broader impact on

consumers at large."  *Oswego Laborers' Local 214 Pension Fund v Marine Midland*

*Bank, N.A.*, *supra*, at p. 25.  The allegations adequately support the claim that the

actions of the movants affected the public interest in New York.  GBL Section 349

covers real estate transactions and principals of the companies that undertake the

deceptive practice.  *Polenetsky v Better Home Depot, Inc.*, 97 NY2d 46, 53-55.  It is

not a "single-shot" transaction that is unique to the parties as asserted by the Zornberg

defendants but rather a complaint that sets forth allegations involving consumer-

oriented behavior as defined by New York courts.  *Oswego Laborers' Local 214*

*Pension Fund v Marine Midland Bank, N.A.*, *supra*, at p. 25.  BCL § 349 prohibits

"acts or practices [that] have a broader impact on consumers at large."  BCL§ 349 "is

a remedial statute" that requires "a liberal construction and application."  *New York*

*Public Interest Research Group, Inc. v Insurance Information Institute*, 140 Misc 2d

920 [Supreme Court New York County 1988], *aff'd* 161 AD2d 504.  The plaintiff has

alleged that the homeowners were the victims of a deceptive act or practice; that the

Zornberg defendants knew of the deceptive practices; that they lent substantial

7

assistance to the co-defendants by structuring the closing so as to hinder the ability of

the buyers and sellers to timely review the documents.

A review of the movant's submissions establishes that the instant application

for reargument is, in substance, founded upon the same theory which this court

already considered and rejected in connection with the original application. None of

the movant's presently asserted allegations warrants a result different from that

reached by the court in its order dated November 5, 2011. Accordingly, and inasmuch

as the movant's papers fail to establish that the court misapprehended or overlooked

relevant facts or misapplied any controlling principle of law with respect to his

claims, the motion must be denied.

The foregoing constitutes the decision and order of this Court.

Dated: April 10, 2012

_____
STEVEN M. JAEGER, A.J.S.C.

**ENTERED**

**APR 13 2012**

NASSAU COUNTY
COUNTY CLERK'S OFFICE

8