Hearing Date: August 14, 2012 at 10 a.m. (EST)
Objection Deadline:  August 7, 2012 at 4:00 p.m. (EST)

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Victoria L. Safran
Assistant Attorney General
Of Counsel
Nassau Regional Office
200 Old Country Road, Suite 240
Mineola, New York 11501
Telephone: (516) 248-3302
Fax: 516-747-6432

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

      Residential Capital, LLC, et al.,

                        Debtors.
------------------------------------------------------------------X

Chapter 11
Case No. 12-12020 (MG)
 Jointly Administered
 Re: Debtor GMAC Mortgage LLC

**MEMORANDUM OF LAW BY THE PEOPLE OF THE STATE OF NEW YORK
IN SUPPORT OF AN ORDER DETERMINING EXEMPTION FROM THE
<u>AUTOMATIC  STAY PURSUANT TO 11 U.S.C. § 362(b)(4)</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT. .................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT .................................................................................................................... 5

POINT I
    THE STATE COURT ACTION IS AN EXERCISE
    OF THE STATE'S POLICE POWER AND IS NOT
    SUBJECT TO THE AUTOMATIC BANKRUPTCY STAY ........................................ 5

    A.   Actions Under A Governmental Unit's Police And Regulatory Power
        Are Exempt From The Automatic Stay .................................................................. 5

    B.   The State Court Action Under New York Executive Law § 63(12) Is Exempt
        From The Stay Under Both The Pecuniary Purpose And Public Policy Tests........ 7

    C.   Government Actions That Serve To Protect The Interests Of The Public Are
        Exempt From The Automatic Stay ...................................................................... 11

POINT II
    THERE IS CAUSE TO GRANT RELIEF FROM THE
    AUTOMATIC STAY TO PROSECUTE THE STATE COURT ACTION .............. 13

POINT III
    EVEN IF GMAC WERE ENTITLED TO AN AUTOMATIC STAY,
    SUCH RELIEF SHOULD NOT BE EXTENDED
    TO THE REMAINING DEFENDANTS .................................................................. 17

CONCLUSION .............................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986) ..................................17, 18

*Alpern v. Lieb*,
  11 F.3d 689 (7th Cir. 1993) ...........................................................................................11

*Berry Estates v. State of New York*,
  812 F.2d 67 (2d Cir. 1987) ............................................................................................11

*CAE Industries Ltd. v. Aerospace Holdings Co.*,
  116 B.R. 31 (Bankr. S.D.N.Y. 1990)..............................................................................17

*City of New York v. Exxon Corp.*,
  932 F.2d 1020 (2d Cir. 1991) ....................................................................................11-12

*EEOC v. McLean Trucking Co.*,
  834 F.2d 398 (4th Cir. 1987) .........................................................................................11

*In re Burger Boys, Inc.*,
  183 B.R. 682 (Bankr. S.D.N.Y. 1994), *aff'd in part, vacated in part*, 94 F.3d 755 (2d
  Cir. 1996)......................................................................................................................13

*In re Cicale*,
  2007 WL 1893301 (Bankr. S.D.N.Y. 2007)..................................................................14

*In re Commerce Oil Co.*,
  847 F.2d 291 (6th Cir. 1988) ...........................................................................................6

*In re Fischer*,
  202 B.R. 341 (Bankr. E.D.N.Y. 1996) ....................................................................13, 14

*In re Fucilo*,
  2002 WL 1008935 (Bankr. S.D.N.Y. 2002)......................................6, 7, 8-9, 10, 14, 16

*In re Laventhol & Horwath*,
  139 B.R. 109 (Bankr. S.D.N.Y. 1992)....................................................................13, 14

*In re Ngan Gung Restaurant, Inc.*,
  183 B.R. 689 (Bankr. S.D.N.Y. 1995)....................................................................6, 9, 10

*In re Pollock*, 402 B.R. 534 (N.D.N.Y.
  2009)…………………………………………………………………………………..11

iii

*In re Project Orange Associates, LLC,*
    432 B.R. 89 (Bankr. S.D.N.Y. 2010)..........................................................................15,16

*In re Synergy Development Corp.,*
    140 B.R. 958 (Bankr. S.D.N.Y. 1992)..............................................................................12

*In re Sonnax Industries, Inc.,*
    901 F.2d 1280 (2d Cir. 1990) ..........................................................................14, 15, 16

*In re Universal Life Church,*
    128 F.3d 1294 (9th Cir. 1997) .....................................................................................6, 7

*In re W.R. Grace & Co.,*
    2004 WL 954772 (Bankr. D. Del. 2004)..........................................................................18

*Janis v. Janis,*
    179 Misc.2d 199, 684 N.Y.S.2d 426 (Sup. Ct., Westchester County, 1998) .................6

*NLRB v. Continental Hagen Corp.,*
    932 F.2d 828 (9th Cir. 1991) ......................................................................................6, 7

*NLRB v. Edward Cooper Painting, Inc.,*
    804 F.2d 934 (6th Cir. 1996) ...........................................................................................7

*People v. Apple Health & Sports Clubs,*
    206 A.D.2d 266 (1st Dep't), *appeal dismissed and denied*, 84 N.Y.2d
    1004 (1994).........................................................................................................................8

*Queenie, Ltd. v. Nygard International,*
    321 F.3d 282 (2d Cir. 2003) ...........................................................................................17

*Securities and Exchange Commission v. Towers Financial Corp.,*
    205 B.R. 27 (Bankr. S.D.N.Y. 1997)..........................................................................6, 12

*Teachers Ins. and Annuity Ass'n of Am. v. Butler,*
    803 F.2d 61 (2d Cir. 1986) .............................................................................................17

*Thomassen v. Division of Med. Quality Assurance (In re Thomassen),*
    15 B.R. 907 (9th Cir. 1981) ..............................................................................................7

*United States v. Commonwealth Cos.,*
    913 F.2d 518 (8th Cir. 1990) ............................................................................................7

*Vantage Petroleum Corp. v. United States Department of Energy,*
    25 B.R. 471 (Bankr. E.D.N.Y. 1982) ..............................................................................12

## Federal Statutes

11 U.S.C. § 101(27)...........................................................................................................6

11 U.S.C. § 362(a)(1) .......................................................................................................5

11 U.S.C. § 362(b)(4) ................................................................................................passim

11 U.S.C. § 362(d)(1) ..................................................................................................13-17

11 U.S.C. § 362(g)(1) and (2).........................................................................................13

## State Statutes

Executive Law § 63(12) ...............................................................................................7-10

## Legislative History

H.R. Rep. No. 95-595, 95th Cong., St. Sess. 311 (1977)......................................................6

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

                                               Chapter 11

      Residential Capital, LLC, et al.,             Case No. 12-12020 (MG)

                              Debtors.
----------------------------------------------------------------X

## MEMORANDUM OF LAW BY THE PEOPLE OF THE STATE OF NEW YORK IN SUPPORT OF AN ORDER DETERMINING EXEMPTION FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(b)(4)

The Attorney General of the State of New York, on behalf of the People of the State of New York, submits this memorandum of law: (a) in support of a declaration that the civil litigation now pending in the Supreme Court, Nassau County, *State of New York v. Empire Property Solutions, LLC et al.* (Index No. 09-017767) is exempt, pursuant to section 362(b)(4) of the Bankruptcy Code, from the automatic stay; (b) alternatively, in the event the Bankruptcy Court holds that the automatic stay applies, for relief from the stay pursuant to section 362(d)(1) of the Bankruptcy Code; and (c) alternatively, in the event the Court holds that the stay applies and that relief from the stay is not warranted, in support of a declaration that the automatic stay operates to stay the pending civil action only as it applies to the debtor, GMAC Mortgage, LLC ("GMAC"), and not as it applies to the remaining parties.

### PRELIMINARY STATEMENT

The pending civil action filed by the Attorney General seeks to protect the public from a fraudulent and illegal scheme perpetrated against New York homeowners and is an exercise of the State's police powers, pursuant to its general obligation to safeguard the

health, safety, and welfare of the People of the State of New York. Thus, the civil action

falls squarely within the exemption from the automatic bankruptcy stay as set forth in 11

U.S.C. § 362(b)(4). Alternatively, in the event the Bankruptcy Court were to find that the

civil action is not exempt from that stay, then the Court should, in the interest of justice,

grant the Attorney General relief from the stay pursuant to section 362(d)(1) of the

Bankruptcy Code.

    As a final alternative, in the event the Bankruptcy Court finds that the automatic

stay applies, and relief from the stay is unwarranted, the Court should hold that the

automatic stay operates only to stay the action as against the debtor, GMAC, and not as

against the remaining parties.

## STATEMENT OF FACTS

### A. The Nature of the State Court Action

    In September 2009, the Attorney General commenced the pending civil action in

Nassau Supreme Court pursuant to New York Executive Law § 63(12). As set forth in

the accompanying declaration of Victoria L. Safran, dated July 24, 2012 ("Safran Decl."),

the Verified Complaint in that action alleges that Empire Property Solutions, LLC, its

principals, John Rutigliano and Kenneth Kiefer (collectively "the Empire Defendants"),

and co-defendants, including attorneys, a mortgage broker and a title company,

participated in a fraudulent and illegal foreclosure rescue scam pursuant to which

homeowners were defrauded out of the title to their homes. The lenders or assignees who

claim interests in mortgages held on the properties at issue in the action, including

GMAC, are named as necessary parties pursuant to CPLR § 1001. The Attorney General

does not seek damages or any relief against GMAC or the other necessary parties. (Safran Decl. ¶ 4).

The Verified Complaint alleges that from in or about December 2005 until at least sometime in 2007, the Empire Defendants spearheaded an illegal scheme to defraud financially-distressed consumers by inducing them to enter into "sales/leaseback" agreements. (Safran Decl. ¶ 5). The Empire Defendants misrepresented to homeowners that they could save their homes from foreclosure by giving title to the Empire Defendants or to straw buyers who could apply for loans that would purportedly be used to save the homes. The homeowners were told that they could continue to live in their homes and pay the mortgage payments or "rent." The Empire Defendants falsely represented that the homeowners would be able to save up enough money and re-build their credit, so that, in about one year's time, they would then be financially able to repurchase their homes from the Empire Defendants. (Safran Decl. ¶ 6). The Empire Defendants knew such representations were false, and their sole motive for entering into the sale/leaseback transactions was to steal the title to and equity in the homes. (Safran Decl. ¶ 6).

Co-defendants, including the attorneys, mortgage broker and title company, aided, and participated in, the illegal scheme by facilitating the closings of the real estate transactions and cloaking them with an air of legitimacy. (Safran Decl. ¶ 7).

The Verified Complaint alleges that the Empire Defendants and their co-conspirators violated New York Executive Law § 63(12), by engaging in persistent and repeated acts of fraud and illegality. They walked away with the proceeds from the closing, while the homeowners were robbed of the title to and equity in their homes. The

homes ended up in foreclosure, and, thus, contributed to the widespread foreclosure crisis

facing the country today, with its wide-reaching public impacts. (Safran Decl. ¶ 8).

### B.    The Procedural History of the State Court Action

The People of the State of New York commenced the action in September 2009

with a Verified Complaint and order to show cause for a temporary restraining order

prohibiting defendants from engaging in their fraudulent acts and practices, and staying

the foreclosure proceedings pending against the properties that were the subject of the

scam. (Safran Decl. ¶ 9). The Verified Complaint seeks to permanently enjoin

defendants' fraudulent, illegal and deceptive business practices, and to obtain restitution

for defrauded consumers, rescission, damages, penalties, and costs.

Various defendants, including attorneys and the title company who are alleged to

have participated in the illegal scheme, and several lenders who hold mortgages on the

properties at issue, filed motions to dismiss the Verified Complaint. (Safran Decl. ¶ 10).

By a decision and order dated November 15, 2011, the Court denied all the

pending motions to dismiss the complaint. (Safran Decl. ¶ 10).

GMAC answered the Verified Complaint and opposed the Attorney General's

application for a preliminary injunction staying the pending foreclosure proceedings,

including a foreclosure proceeding brought GMAC. By a Decision and Order dated

January 27, 2012, the Court granted the Attorney General's motion for a preliminary

injunction staying the pending foreclosure proceedings. (Safran Decl. ¶ 10).

On February 22, 2012, the Court issued an order granting the Attorney General's

motion for a default judgment against defendants Empire Property Solutions, LLC, John

Rutigliano and Kenneth Kiefer. (Safran Decl. ¶ 10).

On April 10, 2012, the Court denied the motion by certain attorney defendants and the title company for leave to reargue their motion to dismiss the complaint. (Safran Decl. ¶ 10).

The parties were in the process of responding to written discovery requests but had not yet commenced depositions when the Attorney General learned that GMAC had filed a bankruptcy petition. (Safran Decl. ¶ 11). At that time, the Court had scheduled a conference to discuss the scheduling of depositions, and two motions were pending before it, a motion to compel discovery and a motion by a necessary party to dismiss the action as against it. (Safran Decl. ¶ 11). The state court action is stayed pending a determination by the Bankruptcy Court as to the application of the automatic stay. (Safran Decl. ¶ 11).

## ARGUMENT

### POINT I

### THE STATE COURT ACTION IS AN EXERCISE OF THE STATE'S POLICE POWER AND IS NOT SUBJECT TO THE AUTOMATIC BANKRUPTCY STAY

**A.    Actions Under A Governmental Unit's Police And Regulatory Power Are Exempt From The Automatic Stay**

The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, expressly excepts from the automatic stay[1] "the continuation of an action or proceeding by a

---

[1] The Code's automatic stay provision provides, in pertinent part, that:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, . . . operates as a stay, applicable to all entities, of --

[T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

governmental unit . . . to enforce such governmental unit's. . .police and regulatory

power, including the enforcement of a judgment other than a money judgment, obtained

in an action or proceeding by the governmental unit to enforce such governmental unit's .

. . police or regulatory power." 11 U.S.C. § 362(b)(4).[2] A "governmental unit" includes

a State. 11 U.S.C. § 101(27); H.R. Rep. No. 95-595, at 311 (1978), reprinted in 1978

U.S.C.A.A.N. 5983, 6268. The phrase 'police or regulatory power' refers to the

enforcement of laws affecting health, welfare, morals and safety. . . ." *In re Universal*

*Life Church*, 128 F.3d 1294, 1297 (9th Cir. 1997) (citation omitted). The Office of the

Attorney General of the State of New York is a governmental unit within the definition of

§ 101(27). *See In re Fucilo*, 2002 WL 1008935,*14 (Bankr. S.D.N.Y. Jan. 24, 2002).

Two tests exist for determining whether government actions fit within the "police

or regulatory power" exemption: (1) the pecuniary purpose test; and (2) the public policy

test. *See NLRB v. Cont'l Hagen Corp.*, 932 F.2d 828, 833-34 (9th Cir. 1991); *In re

Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988); *In re Ngan Gung Restaurant, Inc.*,

183 B.R. 689, 691-92 (Bankr. S.D.N.Y. 1995); *Sec. & Exch. Comm'n v. Towers Fin.

Corp.*, 205 B.R. 27, 29-30 (S.D.N.Y. 1997); *Janis v. Janis*, 179 Misc. 2d 199, 203-204,

684 N.Y.S.2d 426, 430 (Sup. Ct., Westchester Co., 1998).

Under the pecuniary purpose test, the court must determine whether the

government action relates primarily to matters of public safety, health, and welfare, or

primarily to protection of the government's pecuniary interest in the debtor's property.

---

11 U.S.C. § 362(a)(1).

[2] Section 362(b)(4) was amended and section 363(b)(5) was repealed on October 21, 1998. The amended section 362(b)(4) incorporates the language of the previous sections 362(b)(4) and (b)(5) into one encompassing subsection without any substantive change which is relevant to this matter.

*See Cont'l Hagen Corp.*, 932 F.2d at 833; *Universal Life Church*, 128 F.3d at 1297;

*Commerce Oil Co.*, 847 F.2d at 291; *Fucilo*, at *14. Thus, a government action is exempt

from the automatic stay unless its purpose is solely to obtain an interest in the debtor's

property in order to further the government's pecuniary interest. *See Universal Life*

*Church*, 128 F.3d at 1297 (citing *Thomassen v. Div. of Med. Quality Assurance (In re*

*Thomassen)*, 15 B.R. 907, 909 (9th Cir. 1981)).

The public policy test distinguishes "between [government actions] that effectuate

public policy, and those that adjudicate private rights." *Cont'l Hagen Corp.*, 932 F.2d at

833. "[T]he appropriate analysis under § 362(b)(4) is one which focuses on the purposes

underlying the law that the government is attempting to enforce." *United States v.*

*Commonwealth Cos.*, 913 F.2d 518, 523 n.6 (8th Cir. 1990) (citing *EEOC v. Rath*, 787

F.2d 318, 324-25). If the governmental unit's action effectuates public policy, then it

falls under the section 362(b)(4) exemption. *Id*. If the governmental unit's action is

purely an adjudication of private citizens' rights, then it does not fall within the statutory

exemption. *Id.*; *see also NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th

Cir. 1996).

Under both tests set forth above, the Attorney General's action against defendants

in state court is exempt from the automatic stay, because its purpose is to promote the

public welfare, not merely to advance the pecuniary interests of the State, and it is

motivated by public policy rather than by private interests.

**B.      The State Court Action Under New York Executive Law § 63(12) Is Exempt
         From The Stay Under Both The Pecuniary Purpose And Public Policy Tests**

The state court action under Executive Law § 63(12) is brought pursuant to the

Attorney General's police and regulatory powers. Its purpose is to promote the public

welfare rather than to further the State's pecuniary interests. Further, it is motivated by public policy, not by private interests. The action, therefore, fits within the "police or regulatory power" exemption of section 362(b)(4) and is not subject to the automatic stay.

New York Executive Law § 63(12) grants the Attorney General statutory power to bring an action against any person or business that engages in persistent or repeated "fraud or illegality." Thus, it grants the Attorney General police and regulatory powers to protect the public from a broad range of deceptive and misleading practices. *See People v. Apple Health & Sports Clubs*, 206 A.D.2d 266, 267 (1st Dep't), *appeal dismissed and denied*, 84 N.Y.2d 1004 (1994).

The Attorney General's motivation in the state court action is to protect consumers from the fraudulent scheme perpetrated by the Empire Defendants and their co-conspirators, and to deter others, by seeking a permanent injunction, restitution on behalf of consumers injured by defendants, and related relief. The Attorney General is not acting to advance its pecuniary interests, but rather is acting pursuant to its statutory authority to prevent and deter consumer fraud and punish those who have taken advantage of consumers. By deterring mortgage fraud, the action serves to advance public policy, not private interests.

The courts have held similar cases filed by the Attorney General pursuant to Executive Law § 63(12) to be exempt from the automatic stay. In *Fucilo*, the Attorney General initiated a proceeding in state court for an injunction and restitution pursuant to New York Executive Law § 63(12) and General Business Law Article 23-A ("The Martin Act"). 2002 WL 1008935, at *2. It was alleged that Fucilo, a registered securities

salesman, participated in a scheme to defraud unsophisticated investors. *Id.* at *4.
Following Fucilo's filing of a chapter 7 petition, the Attorney General filed a motion with
the Bankruptcy Court for an order determining that it was exempt from the automatic stay
under section 362(b)(4).

The Court held that the state action qualified as an exercise of the Attorney
General's police and regulatory powers under both the pubic policy and pecuniary
purpose tests. The Court explained that, based on a reading of the Executive Law, the
Martin Act, and the complaint, it was clear that the State was attempting to deter behavior
(defrauding investors), and to effectuate a public policy in order to protect the public. *Id.*
at *12-13. Likewise, in the case at hand, a reading of the Executive Law and the Verified
Complaint demonstrate that the Attorney General is attempting to deter those who take
advantage of unsophisticated homeowners by defrauding them, to protect the public from
their fraudulent acts, and, consistent with public policy objectives, to address the
pervasive problem of mortgage fraud that has contributed to the nation's economic crisis.
Furthermore, in *Fucilo*, the Court held that the remedies sought by the Attorney General,
injunctive relief and restitution, were not designed to advance the government's pecuniary
interests. *See id.* at *15.

In *Ngan Gung Restaurant, Inc.*, 183 B.R. 689 (S.D.N.Y. 1995), as in this case, the
Attorney General filed an action in state court under Executive Law § 63(12), in
accordance with its police and regulatory powers, based on defendant's repeated and
persistent fraudulent and illegal activities in violating state labor and wage laws. The
Attorney General sought an injunction, restitution in the amount of unpaid wages and
tips, and damages. *Id.* at 690-91. The court determined that the state action was exempt

from the stay under section 362(b)(4) because the Attorney General was acting within its

police and regulatory authority under Executive Law § 63(12).  The court rejected the

debtor's argument that the action was not exempt because it sought only to redress past

wrongs.  Additionally, the court specifically noted that "under Executive Law § 63(12),

the Attorney General is empowered to seek injunctive relief even if the improper conduct

has ceased because 'voluntary discontinuance of improper or illegal activity is no

assurance that such activity will not be resumed.'"  *Id.* at 693 (quoting *State v. Midland

Equities*, 117 Misc. 2d 203 (Sup. Ct., N.Y. Co. 1982)).  Furthermore, the Court rejected

the debtor's argument that because the Attorney General was recovering unpaid wages on

behalf of employees, the action was an attempt to adjudicate private rights.  It explained

that the fact that the Attorney General was seeking restitution in the form of unpaid

wages for employees did "not alter the fact that it is acting pursuant to its police and

regulatory authority.  Those enforcement measures further public policy by protecting

employees. . . .." *Id.* at 694.

The same result follows here.  As in *Fucilo* and *Ngan Gung*, the Attorney General

is acting pursuant to its police and regulatory powers under Executive Law § 63(12).  In

this case, the Attorney General's aim is to protect New York consumers from foreclosure

fraud, to prevent defendants from being able to continue their fraudulent and deceptive

business practices, to deter others from engaging in similar fraudulent acts, and to

effectuate a public policy that addresses the far-reaching effects of the mortgage fraud

crisis.  Therefore, this Court should likewise find that the state court action filed by the

Attorney General pursuant to Executive Law § 63(12) is exempt from the automatic stay.

**C.    Government Actions That Serve To Protect The Interests Of The Public Are Exempt From The Automatic Stay**

The courts have recognized the application of the exemption in a broad range of actions brought by governmental units, when those actions serve to protect public interests.

Courts have applied the section 362(b)(4) exemption broadly to include cases in which the government sought to protect the interests of its citizens, including citizens' pecuniary interests. *See Berry Estates v. State of New York*, 812 F.2d 67, 69 (2d Cir. 1987) (applying exemption to a state action to enforce wage laws and provide restitution to workers); *see also Alpern v. Lieb*, 11 F.3d 689 (7th Cir. 1993) (applying exemption to a proceeding to impose sanctions against a private litigant under Fed. R. Civ. P. 11); *EEOC v. McLean Trucking Co.*, 834 F.2d 398, 400-02 (4th Cir. 1987) (applying exemption to an action seeking back pay and damages for employment discrimination even though employer was no longer in business); *In re Pollock*, 402 B.R. 524, 537 (N.D.N.Y. 2009) (applying exemption to proceeding by the Department of Labor to liquidate debtor's liability for failure to comply with labor laws governing overtime, and noting that legislative history of section 362(b)(4) demonstrates that exemption should apply whenever a governmental unit sues "to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws, or attempting to fix damages for violation of such law. . . ."").

Even in cases where the pecuniary interest at issue might appear to be that of the governmental unit rather than that of members of the public, the exemption has been applied where the suit had other public interest objectives. *City of New York v. Exxon*

11

*Corp*, 932 F.2d 1020, 1024 (2d Cir. 1991) (applying exemption to suit to recover costs of removing hazardous wastes found in city landfills, where suit also served a deterrent purpose); *Towers Fin.*, 205 B.R. 27 (applying exemption to action seeking disgorgement and injunctive relief for violation of the registration and anti-fraud provisions of the federal securities laws, where disgorgement served to redress unfairness and promote investor confidence in securities transactions); *In re Synergy Dev. Corp.*, 140 B.R. 958 (Bankr. S.D.N.Y. 1992) (applying exemption to action to enjoin debtor from selling or renewing memberships in its health club until it posted a $50,000 bond, where bond requirement protected consumers who purchased memberships in the event the health club closed); *Vantage Petroleum Corp. v. U.S. Dep't of Energy,* 25 B.R. 471 (Bankr. E.D.N.Y. 1982) (applying exemption to action seeking to fine the debtor for violation of gas price controls instituted in response to a national energy crisis).

As such, because the action in state court is not primarily motivated to advance the government's monetary interests, the "pecuniary interests" test mandates that the Attorney General's suit be exempt from the automatic bankruptcy stay.

The same result follows under the public policy test. It is clear that the Attorney General is not litigating any private rights by the state court action. The purpose of the Attorney General's action is to further the public policy of protecting consumers from fraudulent and deceptive business practices in order to preserve the health, safety, and welfare of the citizens of New York as statutorily allowed under the Executive Law.

Under both the "pecuniary purpose" test and the "public policy" test, the Attorney General's state court action is exempt from the automatic bankruptcy stay, as it is not motivated by any financial interest, but is motivated by the Attorney General's

mandate to enforce public policy and protect consumers from fraudulent business practices. For these reasons, this Court should grant the Attorney General's request for an exemption from the automatic stay under section 362(b)(4).

**POINT II**

**THERE IS CAUSE TO GRANT RELIEF FROM THE AUTOMATIC STAY TO PROSECUTE THE STATE COURT ACTION**

Assuming *arguendo* that the Court were to find that the state court action is not exempt from the automatic stay pursuant to section 362(b)(4) of the Bankruptcy Code, then the Attorney General submits that the Court should grant relief from the stay pursuant to section 362(d)(1) of the Bankruptcy Code.

Section 362(d)(1) provides that the court shall grant relief from an automatic stay for cause. 11 U.S.C. § 362(d)(1). Congress granted the courts broad latitude in deciding what constitutes grounds for "cause" to modify an automatic stay. *See In re Sonnax Indus. Inc.*, 907 F.2d 1280, 1288 (2d Cir. 1990); *see also In re Burger Boys, Inc.*, 183 B.R. 682, 687-88 (Bankr. S.D.N.Y. 1994), *aff'd in part, vacated in part*, 94 F.3d 755 (2d Cir. 1996). A court can find cause when there is "a desire to permit an action to proceed to completion in another tribunal." *In re Laventhol & Horwath*, 139 B.R. 109, 116 (Bankr. S.D.N.Y. 1992) (citing H.R. Rep. No. 95-595 at 343-44 (1978)); *see also In re Fischer*, 202 B.R. 341 (Bankr. E.D.N.Y. 1996). Once the petitioner demonstrates an initial showing of cause, the debtor has the burden of proof to establish lack of cause. 11 U.S.C. § 362(g)(1) and (2).

The factors a court should consider when determining whether it should modify a stay for cause and allow a suit to proceed in another court include:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286; *see also In re Cicale*, 2007 WL 1893301, *2 (Bankr.

S.D.N.Y. 2007). The court does not need to assign each factor equal weight and does not

need to take every factor into consideration. *See Laventhol & Horwath*, 139 B.R. at 117;

*see also Fischer*, 202 B.R. at 355.

In this case, the *Sonnax* test demonstrates that the Court should lift the stay to

allow for the prosecution of the Attorney General's action in state court. The state court

action primarily involves third parties. The interests of judicial economy, the expeditious

and economical resolution of litigation, and the balance of harms favor lifting the stay to

allow the state court to adjudicate the Attorney General's action.

First, the Attorney General's action involves multiple parties. When an action by a

governmental agency involves multiple defendants, including a defendant who later files

for bankruptcy, it is against judicial economy to separate the State's case against the

debtor and allow the bankruptcy court to adjudicate the State's claims. *See Fucilo*, at *9.

Second, the state court action primarily involves third parties. The crux of the action is

directed against the defendants who participated in the fraudulent foreclosure rescue

scheme. GMAC is named only as a necessary party because it holds a mortgage on one

of the properties at issue. Thus, a stay of the litigation would have the impact of

thwarting the Attorney General's primary efforts to exercise its police and regulatory

powers in ways that are unrelated to GMAC. Thus, this factor favors granting relief from

the stay. *Sonnax*, 907 F.2d at 1286.

Third, the New York court not only has expertise in matters of New York law,

and, thus, is in a position to adjudicate the issues in this case, it also has been actively

managing the case, deciding motions, and granting orders since the Fall of 2009. The

court, in *In re Project Orange Associates, LLC*, held that the state court action should

proceed in spite of the bankruptcy proceedings because the state court was very familiar

with the facts and history of the case, already ruled on some of the issues, and ultimately

decided that the bankruptcy court would be "better equipped to determine any remaining

bankruptcy law issues, including any assumption motion, more quickly" if the court

granted relief from the automatic stay. *Project Orange*, 432 B.R. 89, 108 (Bankr.

S.D.N.Y. 2010).

The state court has been managing this case since it was filed in September 2009.

The court has heard and decided numerous substantive motions, and, therefore, has

substantial knowledge of the facts of the case. (Safran Decl. ¶¶ 9-11). Among the

motions it has decided, the Court issued a thirty-three page decision on November 17,

2011 denying the motions of multiple parties to dismiss the complaint, and, after

considering the papers in opposition submitted by defendants, including GMAC, granted

the Attorney General's request for a preliminary injunction staying the foreclosure

proceedings relating to the properties at issue in the action. (Safran Decl. ¶ 10). At the

time the Attorney General learned of the filing of GMAC's bankruptcy petition, the Court

had scheduled a discovery conference to discuss the scheduling of depositions.  Two

motions, a motion to compel discovery and a motion to dismiss the complaint, are

pending before it.  (Safran Decl. ¶ 11).  In light of this, it would be imprudent to refuse

the Attorney General relief from the stay and allow this Court to determine the Attorney

General's case when another court with competent jurisdiction has been reviewing the

case and deciding motions for the past three years.  *Id.*

Additionally, granting the Attorney General's request for relief from the

automatic stay will not interfere with GMAC's bankruptcy case.  *Sonnax*, 907 F.2d at

1286.  The state court action is in the beginning stages of discovery and is not close to

resolution.  (Safran Decl. ¶ 11).  *See Fucilo*, at *15.  Furthermore, granting relief from the

automatic stay will not prejudice the interests of any of GMAC's other creditors, because

lifting the automatic stay "would not alter the right of any creditor to participate in a

distribution from the Debtor's bankruptcy case."  *Fucilo*, at *9.  Moreover, because the

New York Supreme Court is more familiar with the issues of the case, particularly in

light of the fact that it has been overseeing the case for three years, it is more likely to be

able to provide speedy resolutions on the matters, which would actually benefit, not

harm, GMAC.  *See Project Orange*, 432 B.R. at 108.

Denying the Attorney General's request would overwhelmingly cause more harm

to the parties than allowing the stay to remain in place.  If the automatic stay remains in

effect, the Attorney General will be thwarted in its efforts to carry out its responsibility to

protect the public from the fraudulent and illegal business practices committed by the

defendants in the state court action.

In consideration of the relevant and most significant *Sonnax* factors, the Court should grant the Attorney General's request for relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code.

## POINT III

### EVEN IF GMAC WERE ENTITLED TO AN AUTOMATIC STAY, SUCH RELIEF SHOULD NOT BE EXTENDED TO THE REMAINING DEFENDANTS

In the event the Court holds that the stay applies and that relief from the stay is not warranted, the Attorney General respectfully requests that the Court issue an order determining that the automatic stay operates to stay the pending civil action only as it applies to GMAC, and not as it applies to the remaining parties.

Courts have consistently held that the section 362(a) automatic stay granted to the debtor does not extend to the non-debtor co-defendants. *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003); *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 32 (Bankr. S.D.N.Y. 1990); *Teachers Ins. and Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65-65 (2d Cir. 1986) (stating that section 362(a) automatic stays are limited to debtors and do not encompass non-debtor co-defendants).

Bankruptcy courts will extend a stay to non-bankrupt co-defendants only in unusual circumstances that are not present in this case. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986) (extending the stay to co-defendants because there was the "unusual situation" where the debtor was the real party defendant in an action against a third-party defendant). Automatic stays are generally only extended to non-debtor co-defendants in the "unusual situation" when an action against the non-debtor co-defendant is essentially an action against the debtor

defendant. *See In re W.R. Grace & Co.*, 2004 WL 954772, *2 (Bankr. D. Del. 2004). The rationale for extending the automatic stay in these limited cases is that if the plaintiffs were to obtain a judgment against the non-debtor co-defendants, the judgment would be imputed to the debtor co-defendant. Moreover, non-debtor co-defendants bear the burden of proof to establish that they are entitled to an extension of the stay under the *A.H. Robins* "unusual situation" standard. *A.H. Robins*, 288 F.2d at 999. These unusual circumstances are absent here, and, thus, GMAC cannot meet this burden.

## CONCLUSION

For all of the reasons set forth herein, and in the Declaration of Victoria L. Safran, Esq., the Attorney General respectfully requests an order determining that the Attorney General's action in the Supreme Court of the State of New York is an exercise of its police and regulatory powers, and, therefore, exempt from the automatic stay.

Alternatively, in the event the Bankruptcy Court holds that the automatic stay applies, the Attorney General respectfully requests an order granting relief from the stay pursuant to section 362(d)(1) of the Bankruptcy Code.

As a final alternative, in the event the Court finds that the automatic stay applies and relief from the stay is unwarranted, the Court should hold that the automatic stay

operates only to stay the action as against the debtor, GMAC, and not as it applies to the

remaining parties.

Dated: Mineola, New York
       July 24, 2012

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
By: /s/ Victoria L. Safran
      VICTORIA L. SAFRAN
Assistant Attorney General
Nassau Regional Office
200 Old Country Road, Suite 240
Mineola, NY 11501
(516) 248-3302