76-35867-98

# THIRD FEDERAL SAVINGS AND LOAN ASSOCIATION
## OF CLEVELAND

CUYAHOGA COUNTY RECORDER
199811191006    PAGE 1 of 4

### OPEN-END MORTGAGE DEED AND SECURITY AGREEMENT

TOTAL INDEBTEDNESS, EXCLUDING INTEREST AND SUMS ADVANCED IN ACCORDANCE HEREWITH, NOT TO EXCEED $ __109,000.00__

THIS MORTGAGE AND SECURITY AGREEMENT ("Security Instrument") is given on __11/16/98__. The mortgagor is **ADAM T DUSEK, UNMARRIED AND JENNIFER L KALL, UNMARRIED** _____ ("Borrower").

This Security Instrument is given to THIRD FEDERAL SAVINGS AND LOAN ASSOCIATION OF CLEVELAND, which is organized and existing under the laws of United States of America, and whose address is 7007 Broadway Avenue, Cleveland, Ohio 44105, ("Lender"). Borrower owes Lender the principal sum of **One Hundred Nine Thousand and No/100** -------------------------------------------------- Dollars (U.S. $ __109,000.00__ ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable __30__ years from the date hereof. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under this Security Instrument, or the Note; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property which has the address of

**3355 SUNHAVEN OVAL
PARMA, OH 44134-5836
PPN: 453-07-008**

Situated in the City of Parma, County of Cuyahoga and State of Ohio: and known as being Sublot No. 87 in Bonny Subdivision No. 5 of a part of Original Parma Township Lot No. 31 and 32, Ely Tract, as shown by the recorded plat in Volume 169 of Maps, Page 14 of Cuyahoga County Records, and being 75.0 feet front on the Southerly side of Sunhaven Oval and extending back between parallel lines 200.00 feet, as appears by said plat, be the same more or less, but subject to all legal highways.    X /s/    X /s/

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY
MORT 11/19/1998 03:43:26 PM
**199811191006**



TOGETHER WITH all of the buildings and improvements now or hereafter erected thereon, including all heating, air conditioning, plumbing, lighting fixtures and equipment and all apparatus of a similar nature, whether affixed to the premises or merely placed therein, which is now or which may hereafter be placed in any building or improvement now or hereafter on the property together with all the estate, right, title and interest of the said Borrower in and to said property, including easements, rights, appurtenances, water rights and stock, and the rents, royalties, mineral, oil and gas rights and profits arising from the property, and the issues and profits thereof, all of which are hereby assigned transferred and set over unto the Lender, including all rents royalties, issues and profits now due or which may hereafter become due.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for easements, rights of way and restrictions of record, if any, and zoning ordinances, if any. Borrower warrants and will defend the title to the Property against all claims and demands, subject to any encumbrances permitted under the terms of this Security Instrument.   CUYAHOGA COUNTY RECORDER

COVENANTS. Borrower and Lender covenant and agree as follows:    199811191006    PAGE 2 of 4

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment charges, late charges or other charges due under the Note or under this Security Instrument.

2. **Funds for Taxes and Insurance.** Unless waived in writing by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments on the Property which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; (d) yearly flood insurance premiums, if any, and (e) yearly mortgage insurance premiums, if any. These items are called "escrow items." In addition to the escrow items, Borrower shall pay to Lender as part of the Funds such additional reserve amounts (not to exceed one-sixth of the aggregate annual amount of the escrow items) as requested by Lender. Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The funds shall be held by Lender. Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items. Lender shall not be required to pay borrower any interest or earnings on the Funds. Lender may co-mingle the Funds with other like funds or its own funds at its option. Lender shall make available to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose of which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If, as a result of an analysis, Lender determines that a surplus, shortage or deficiency exists in the Funds for payment of any of the escrow items; Lender shall refund such surplus or require payment of such shortage or deficiency in accordance with applicable Federal or State laws and regulations in effect at the time Lender performs the analysis.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately upon the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien, in legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard and Flood Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards including within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval, which shall not be unreasonably withheld.

Borrower shall also maintain flood insurance if said property is located in a flood hazard area as defined by applicable federal regulations. This insurance shall be maintained in the amounts and for the period that Lender requires.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may, but is not required to make proof of loss if not made promptly by Borrower.

Unless Lender otherwise agrees, in writing, which agreement shall define the terms and conditions for the payment of the insurance proceeds, the insurance proceeds shall be applied to the sum secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due, at its option. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument.

6. **Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees, entering on the Property to make repairs, and making such repairs as Lender may deem necessary to protect its interest in the Property. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

8. **Inspection.** Lender or its agent may make reasonable entries upon and inspection of the Property at any reasonable time.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total or partial taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of sums secured by this Security Instrument granted by Lender or any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

12. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

13. **Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by written notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Completion of Improvements.** Borrower will, if applicable, construct and complete the buildings and improvements upon the Property in accordance with the terms of the loan application made by or on behalf of the Borrower to the Lender for the loan secured by this Security Instrument or any modification or amendment thereof and the other loan papers which accompany the application. Borrower will commence work on said buildings and improvements within __NA__ days from the date hereof, and will complete the same within __NA__ months from the date hereof. If there is a failure to complete the buildings and improvements in accordance with the foregoing schedule, Lender may, at its option, consider the loan to be completed for the amount disbursed up to said time and said obligation shall there upon become fully due and payable, at Lender's option.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold, transferred, or assigned (or if a beneficial interest in Borrower is sold, transferred, or assigned and Borrower is not a natural person) either voluntarily or involuntarily without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Security Instrument; (b) the creation of a purchase money security interest for household appliances; (c) transfer by devise, descent or by operation of law upon the death of a joint tenant; or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

18. **Partial Release.** Borrower acknowledges that there will be a charge made by Lender for preparation of Partial Release Documents in the event of the sale or release of any portion of the Property and a charge will be made by Lender for handling the cancellation of this mortgage upon payment in full.

19. **Acceleration; Remedies.** If Borrower shall default in the payment of any installment, when the same becomes due, including any additional payments required under the Note or this Security Instrument or in the event Borrower shall default in the observance or performance of any of the covenants terms or conditions of the Note or this Security Instrument, or in the event that proceedings are brought to foreclose or marshall liens on the Property, or in the event that Borrower is adjudicated a bankrupt, Lender, at its option may require immediate payment in full of all sums secured by this Security Instrument without notice or demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to all expenses incurred in pursuing any remedies provided for in this Security Instrument including, but not limited to court costs, attorney fees and costs of title evidence.

The rights and remedies herein provided for are cumulative, and the holder of the Note may recover judgment thereon, issue execution therefor, and resort to any other right or remedy available at law or in equity, without first exhausting and without affecting or impairing the security of any right or remedy afforded by this Security Instrument, and the failure of said holder of the Note to exercise any option or right given or reserved by this Security Instrument or the Note shall not estop the exercising of any such right or option at any future time. No waiver of any covenant or condition herein shall be construed to be a waiver of any subsequent breach of the same or any other covenant or condition herein.

20. **Lender in Posession.** Upon acceleration under paragraph 19 or abandonment of the Property, Lender shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or any judicially appointed receiver shall be applied first to payment of the costs of management of the property and collection of rents, including but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Security Instrument.

21. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

22. **Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

23. **Future Advances.** At the request of Borrower, Lender, at Lender's option, may make future advances. Such future advances, with interest thereon, shall be secured by this Security Instrument and evidenced by promissory notes stating that the notes are secured hereby. Any and all monies advanced by Lender hereunder together with interest theron shall have the same priority as the debt originally advanced. At no time shall the principal amount of the indebtedness secured by this Security Instrument, not including sums advanced in accordance with this Security Instrument to protect the security of this Security Instrument exceed $ __109,000.00__ .

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument [Check applicable box(es)]

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Other (Specify)_____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, the Grantors have hereunto set their hands at Cleveland, Ohio, this __16TH__ day of __November__, 19 __98__.

Signed and acknowledged in the presence of:

_Jill M Chisnell_  
Jill M Chisnell

_Adam T Dusek_  
ADAM T DUSEK

_Jennifer L Kall_  
JENNIFER L KALL

---

STATE OF OHIO ) ss:  
Cuyahoga County )

**INDIVIDUAL ACKNOWLEDGMENT**

Before me, a notary public in and for said county, personally appeared the above named **ADAM T DUSEK , JENNIFER L KALL,**

who acknowledged that they have read and did sign the foregoing instrument and that the same is their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at __Parma__ Ohio, this __16TH__ day of __November__, 19 __98__.

Notary Public  
My commission expires: **ELAINE HORNSBY, Notary Public STATE OF OHIO My Commission Expires OCT. 6, 2003**

---

STATE OF OHIO ) ss:  
Cuyahoga County )

**CORPORATE ACKNOWLEDGMENT**

Before me, a notary public in and for said county, personally appeared the above named_____

by _____, its _____, and _____, its _____, who acknowledge that they did sign the foregoing instrument and that the same is the free act and deed or said corporation and the free act and deed of each of them personally and such officers.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _____

Ohio, this ____ day of _____, 19 ____.

Notary Public  
My commission expires:_____

This Instrument prepared by  
Third Federal Savings and Loan  
Association of Cleveland

**CANCELLATION**

Cleveland, Ohio, _____, 19 ____

The conditions of this mortgage have been complied with, and the same hereby is satisfied and discharged.

THIRD FEDERAL SAVINGS AND LOAN ASSOCIATION OF CLEVELAND

By _____

LMTG1 - 9/96  
094ESC70079

### CUYAHOGA COUNTY RECORDER

Department Of Records

Received the following fees for this document

11/19/1998 15:43:26

AFN # 199811191006    4 Page(s)    Receipt # 4873

| Fee | Amount |
|---|---|
| Basic Recording $4 Computer Fee | $4.00 |
| Basic Recording Fee | $18.00 |
| **Total Fees Paid** | $22.00 |



# 199811191006