**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**ORDER UNDER SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014(a) AND LOCAL RULE 2014-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO MAY 14, 2012**

Upon the application (the "Application")[1] of the Debtors for entry of an order, under Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rule 2014, and Local Rule 2014-1, authorizing the employment of FTI Consulting, Inc., together with its wholly owned subsidiaries, agents, and independent contractors ("FTI") as financial advisors for the Debtors *nunc pro tunc* to May 14, 2012; and upon the Nolan Affidavit and the Supplemental Affidavit in Support of the Application (the "Supplemental Nolan Affidavit"); and it appearing that this Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Application is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Application having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having considered the Application and any opposition and responses thereto; and it appearing that FTI neither holds nor represents any interest adverse to the Debtors' estates; and it appearing that FTI is "disinterested," as that term is defined in

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application. Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11

Bankruptcy Code section 101(14); and it appearing that the relief requested by the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and after the Court finding that such relief is not duplicative of the retention and services provided by any other professionals retained in this matter; and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Application is GRANTED as set forth herein.

2. In accordance with Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rule 2014 and Local Rule 2014-1, the Debtors are authorized to employ and retain FTI as their financial advisor, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in the Application, the Engagement Agreement, the Addendum to the Engagement Agreement dated July 18, 2012 (the "Addendum"), the Indemnification Provisions (as modified by this Order), the Nolan Affidavit and the Supplemental Nolan Affidavit.

3. As Financial Advisor, FTI is authorized to provide the following services in connection with the Debtors' cases:

   (a) assist with the preparation of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

   (b) assist the Debtors with certain aspects of claims management and resolution, specifically (i) the development of a claims management database based on the schedules of liabilities (schedules D, E and F), and (ii) the analysis of creditor claims and assistance with claims management and resolution efforts;

   (c) advise the Debtors on specific accounting matters related to the bankruptcy filing and as required by SOP 90-7, including quantification and categorization of liabilities and fresh start accounting;

   (d) assist with the identification and implementation of short-term cash management procedures;

cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

2

(e) advise and assist with the development and implementation of key employee retention and other critical employee benefit programs;

(f) assist with and advise the Debtors with respect to the identification of core business assets and the disposition of assets or liquidation of unprofitable operations;

(g) assist with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

(h) assist with the valuation of the present level of operations and identification of areas of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

(i) assist in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(j) attend meetings and assist in discussions with potential investors, banks and other secured lenders, any official committee appointed in these Chapter 11 cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(k) assist in the preparation of information and analysis necessary for the confirmation of a plan in these Chapter 11 proceedings; and

(l) assist in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers.

4. In accordance with the Engagement Agreement and the Addendum, FTI shall be compensated on an hourly basis, subject to a Monthly Cap and a Rollover Provision, and shall receive reimbursement of actual and necessary expenses incurred by FTI and a Completion Fee. All hourly compensation and reimbursement of expenses to be paid to FTI shall be subject to section 330 of the Bankruptcy Code, and the Completion Fee shall be subject to section 328(a) of the Bankruptcy Code.

5. FTI shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy

Rules, the Local Rules, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated November 25, 2009, the United States Trustee Fee Guidelines and any other orders of the Court.

6. The U.S. Trustee retains all rights to respond or object to FTI's interim and final applications for compensation and reimbursement of expenses on all grounds including, but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code; provided further, that in the event the U.S. Trustee objects, the Court retains the right to review the interim and final applications pursuant to section 330 of the Bankruptcy Code.

7. None of the fees payable to FTI shall constitute a "bonus" or fee enhancement under applicable law.

8. Prior to any increases in FTI's rates, as set forth in paragraph 5 of the Supplemental Nolan Affidavit, FTI shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the United States Trustee and any official committee. The supplemental affidavit shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of the Bankruptcy Code and state whether FTI's client has consented to the rate increase. The United States Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in Section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to Section 330 of the Bankruptcy Code.

9. FTI shall apply any remaining amounts of its prepetition Retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the first Order of the Court awarding fees and expenses to FTI. The first interim fee application shall include the pre-petition time records in the amount of $150,000 that had not been offset against the pre-petition retainer as of the filing date.

10. All of FTI's personnel who provide services to or on behalf of the Debtors, with the exception of clerical staff, shall keep contemporaneous records of the services they have performed in one-half hour increments.

11. FTI shall not be entitled to the reimbursement of attorney fees and legal expenses other than in connection with (a) indemnification, as set forth in paragraph 13 below and (b) this retention application and future fee applications as approved by the court.

12. The following indemnification provisions are approved:

(a) Subject to the provisions of subparagraph (b), infra, the Debtors are authorized to indemnify, and shall indemnify, FTI in accordance with the Engagement Agreement for any claim arising from, related to or in connection with the services provided for, whether prepetition or postpetition, in the Engagement Agreement;

(b) Notwithstanding any provisions of the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify FTI or provide contribution or reimbursement to FTI for any claim or expense that is either (i) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of FTI, or (ii) settled prior to a judicial determination as to FTI's willful misconduct, gross negligence, bad faith or self-dealing, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), infra, to be a claim or expense for which FTI should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement; and

(c) If, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 cases, FTI believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement, including without limitation the advancement of defense costs, FTI must file an application therefore in this Court, and the Debtors may not pay any such amounts to FTI before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification, contribution or reimbursement by FTI and not a provision limiting the duration of the Debtors' obligation to indemnify FTI.

13. All requests by FTI for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be

5

subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought.

14. In the event that FTI seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in FTI's own applications, both interim and final, and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

15. The Debtors are authorized, empowered and directed to take all actions necessary to implement the relief granted pursuant to this Order.

16. To the extent this Order is inconsistent with the Engagement Agreement, the Addendum, Indemnification Provisions (as modified by this Order), the Application, the Nolan Affidavit or the Supplemental Nolan Affidavit, this Order shall govern.

17. Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

18. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:   July 25, 2012
         New York, New York

                                           __/s/Martin Glenn_____
                                           MARTIN GLENN
                                           United States Bankruptcy Judge