**Hearing Date:    August 9, 2012 at 10:00 a.m. (ET)**
**Objection Deadline:  August 2, 2012 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
                                                        )
In re:                                                  )
                                                        )    Case No. 12-12020 (MG)
RESIDENTIAL CAPITAL, LLC, et al.,                       )
                                                        )    Chapter 11
                                       Debtors.         )
                                                        )    Jointly Administered
                                                        )
---------------------------------------------------------------------  )

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**DELOITTE & TOUCHE LLP AS INDEPENDENT AUDITOR**
**AND ATTEST SERVICE PROVIDER TO THE**
**DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

        The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors")[1] hereby apply (the "Application")[2] for entry of an order, the proposed form of

which is attached as Exhibit 1, under sections 327(a) and 328(a) of title 11 of the United States

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on
       Exhibit 1 to the Whitlinger Affidavit (defined below).

[2]    Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
       requested in this Application may refer to http://www.kccllc.net/rescap for additional information.

Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules for the United States

Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing the

employment and retention of Deloitte & Touche LLP ("Deloitte & Touche")[3] as independent

auditor and attest service provider, *nunc pro tunc* to the Petition Date (as defined herein).  In

support of this Application, the Debtors rely on the Declaration of Tom A. Robinson (the

"Robinson Declaration"), a partner of Deloitte & Touche, attached hereto as <u>Exhibit 2</u>.  In further

support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Application under 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and

this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory

predicates for the relief requested herein are Bankruptcy Code sections 327(a) and 328(a),

Bankruptcy Rule 2014 and Local Rule 2014-1.

## BACKGROUND

2.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a

voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors

are managing and operating their businesses as debtors in possession pursuant to Bankruptcy

Code sections 1107(a) and 1108.  No trustee has been appointed in these Chapter 11 cases.

---

[3]     Contemporaneously with the submission of the Application, the Debtors are also seeking to retain
        KPMG.  Deloitte & Touche provides audit and attest services; whereas, KPMG provides tax compliance and IT
        services unrelated to the audit and attest services for which Deloitte & Touche seeks to be retained.

ny-1051418

3.        On May 16, 2012, the Office of the United States Trustee (the "U.S.
Trustee") appointed the nine-member statutory creditors' committee (the "Committee").

4.        On June 20, 2012, the Court directed that an examiner be appointed
[Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner
[Docket No. 674].

5.        The Debtors are a leading residential real estate finance company
indirectly owned by Ally Financial Inc., which is not a Debtor.  The Debtors and their non-
debtor affiliates operate the fifth largest mortgage loan servicing business and the tenth largest
residential mortgage loan origination business in the United States.  A more detailed description
of the Debtors, including their business operations, their capital and debt structure, and the
events leading to the filing of these bankruptcy cases, is set forth in the Affidavit of James
Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11
Petitions and First Day Pleadings (the "Whitlinger Affidavit") [Docket No. 6].

**RELIEF REQUESTED**

6.        In light of the size, complexity, and expedited timeline of these Chapter 11
Cases, the Debtors require the services of an independent auditor and attest service provider that
is familiar with the Debtors' businesses, operations, and the Chapter 11 process.  Accordingly,
by this Application, the Debtors seek entry of an order: (i) authorizing the retention and
employment of Deloitte & Touche as the Debtors' independent auditor and attest service
provider, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set
forth in (a) the engagement letter between Residential Capital, LLC and Deloitte & Touche,
dated July 9, 2012 (the "ResCap Audit Services Letter"), (b) the engagement letter between
Residential Funding Company, LLC and GMAC Mortgage, LLC and Deloitte & Touche, dated

3

July 9, 2012 (the "RFC/GMAC Audit Services Letter" and together with the ResCap Audit

Services Letter, the "July 9, 2012 Financial Statement Audit Letters"), (c) the engagement letter

between GMAC Mortgage, LLC and Residential Funding Company, LLC. and Deloitte &

Touche dated April 23, 2012 for servicing compliance (the "GMAC/RFC USAP Letter"), and (d)

the engagement letter between GMAC Mortgage, LLC and Residential Funding Company, LLC.

and Deloitte & Touche dated April 23, 2012 for servicing compliance (the "GMAC/RFC Reg.

AB Letter" (together, the "April 23, 2012 Engagement Letters") and, collectively with the July 9,

2012 Financial Statement Audit Letters and the GMAC/RFC USAP Letter, the "Engagement

Letters") copies of which are attached hereto as Exhibit 3, and (ii)  approving the terms of the

Engagement Letters, including the proposed compensation arrangement (the "Fee Structure").

7.      At the request of the Debtors, Deloitte & Touche has been providing

services to the Debtors since the Petition Date.  Such services were important to the Debtors

because they enabled the Debtors to meet or stay on schedule to meet various audit and financial

and compliance reporting deadlines.  During this time, Deloitte & Touche also worked diligently

to determine its connections to the parties in interest in these Chapter 11 cases, as discussed in

more detail in the Robinson Declaration.  Accordingly, the Debtors request that Deloitte &

Touche be retained effective as of the Petition Date.

## DELOITTE & TOUCHE'S QUALIFICATIONS

8.      The Debtors previously employed Deloitte & Touche to provide audit and

review and attest services.  As a result, Deloitte & Touche is already familiar with the Debtors'

businesses, operations, capital structure and their business practices to the extent necessary for

the scope of the ongoing and anticipated services.  Deloitte & Touche will be able to leverage the

work of the professionals already engaged to increase the overall efficiency of the work

ny-1051418

performed by individuals providing services under this Application.  Accordingly, the Debtors

believe that Deloitte & Touche is well-qualified and able to provide the Debtors with effective

and efficient audit services attest service provider in these Chapter 11 cases.

9.    The Debtors also selected Deloitte & Touche as their audit and attest

service provider because of Deloitte & Touche's extensive experience in delivering such services

to large and complex business entities, like the Debtors', in other Chapter 11 cases.  See, e.g., In

re Mesa Air Grp., Inc., No. 10-10018 (MG) (Bankr. S.D.N.Y. Apr. 16, 2010) [Docket No. 655]

(tax compliance and tax consulting services including assistance with audits);  In re Neff Corp.,

No. 10-12610 (SCC) (Bankr. S.D.N.Y. Jul. 16, 2010) [Docket No. 281]; In re Citadel Broad,

Corp., No. 09-17442 (BRL) (Bankr. S.D.N.Y. Mar. 1, 2010) [Docket No. 157]; In re Gen.

Growth Props., Inc., No. 09-11977 (ALG) (Bankr. S.D.N.Y. Aug. 13, 2009) [Docket No. 1337].

As such, the Debtors submit that the retention of Deloitte & Touche in these circumstances is in

the best interests of the Debtors and all of their stakeholders.

## SERVICES TO BE PROVIDED

10.    The retention of Deloitte & Touche shall be based on the terms and

conditions set forth herein and in accordance with the Engagement Letters, and as may be agreed

to by Deloitte & Touche and the Debtors.

11.    Deloitte & Touche has provided and agrees to continue to provide

assistance to the Debtors in accordance with the terms and conditions set forth in the Application

and the Engagement Letters.  In particular, Deloitte & Touche is anticipated to provide the

following services:

**Financial Statement Audit (Services Performed under the July 9, 2012 Financial
Statement Audit Letters)**

5

- a financial statement audit with respect to Residential Capital, LLC ("Residential Capital"), a Debtor, for the year ending December 31, 2012; and

- review of Residential Capital's interim financial information for each of the quarters in the year ending December 31, 2012.

- a financial statement audit with respect to GMAC Mortgage, LLC ("GMAC Mortgage"), a Debtor, for the year ending December 31, 2012.

- a financial statement audit with respect to Residential Funding Company, LLC ("Residential Funding"), a Debtor, for the year ending December 31, 2012.

**Servicing Compliance (Services Performed under the April 23, 2012 Engagement Letters and the RFC/GMAC Audit Services Letter)**

- examine the assertion of (i) GMAC Mortgage as it relates to Residential Capital's primary servicing platform, and (ii) Residential Funding as it relates to Residential Capital's master servicing platform, each regarding compliance with their minimum servicing standards as of December 31, 2012 and for the period January 1, 2012 through December 31, 2012.

- examine the assertion of (i) GMAC Mortgage as it relates to Residential Capital's primary servicing platform, and (ii) Residential Funding Company as it relates to Residential Capital's master servicing platform, each regarding compliance with the servicing criteria set forth in section 229.1122 of the Securities and Exchange Commission's Asset-Backed Securities Regulation (Regulation AB) as of December 31, 2012 and for the period January 1, 2012 through December 31, 2012.

- examine the compliance of (i) GMAC Mortgage and (ii) Residential Funding, as it relates to the Department of Housing and Urban Development's Consolidated Audit Guide for Audits of HUD Programs, for the year ending December 31, 2012.

12.     If the Debtors seek to expand the scope of Deloitte & Touche's retention, a supplemental affidavit will be filed with the Court and served on the U.S. Trustee and the Committee.  Subject to the Court's approval of the Application, Deloitte & Touche is willing to serve as the Debtors' independent auditor and attest service provider to perform the services described in the Engagement Letters on the terms set forth therein.

6

## PROFESSIONAL COMPENSATION

13.        For the above referenced Financial Statement Audit services the Debtors

propose to compensate Deloitte & Touche at the following hourly rates as set forth in the

applicable July 9, 2012 Financial Statement Audit Letters:

| **Personnel Classification** | **Applicable Hourly Rates** |
|---|---|
| Partner/Principal/Director | $ 365 |
| Senior Manager | $ 290 |
| Manager | $ 265 |
| Senior Staff | $ 215 |
| Staff | $ 175 |

14.        For the above referenced servicing compliance services, Deloitte &

Touche will be compensated by a fixed fee of $1,465,000 of which $300,000 was billed and paid

prior to the Petition Date.[4]  The Debtors and Deloitte & Touche have agreed that, subject to

applicable compensation procedures in these Chapter 11 cases, the remainder of this fixed fee

will be billed in accordance with the following billing schedule.

| **Invoice Date** | **Amount** |
|---|---|
| July 1, 2012 | $100,000 |
| August 1, 2012 | $ 200,000 |
| October 1, 2012 | $ 200,000 |

---

[4]    The April 23, 2012 Engagement Letters contemplate a single fee of $1,465,000 for services under both
agreements.  For the sake of clarity, Deloitte & Touche has agreed that this amount will be deemed to be a fixed
fee to be billed in accordance with the above billing schedule subject to the compensation procedures in the
Cases.  This fixed fee also includes Servicing Compliance services set forth in the RFC/GMAC Audit Services
Letter.

7

| November 1, 2012 | $ 200,000 |
| December 1, 2012 | $ 200,000 |
| February 1, 2013 | $ 165,000 |
| March 1, 2013 | $ 100,000 |

15.     Deloitte & Touche intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines of the U.S. Trustee (the "Trustee Guidelines"), and any other applicable procedures and orders of the Court.  Deloitte & Touche also intends to submit requests for compensation and reimbursement in accordance with the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals approved by the Court on July 17, 2012 [Docket No. 797] (the "Interim Compensation Order").

16.     The Fee Structure is designed to compensate Deloitte & Touche fairly for the work of its professionals and to cover fixed and routine overhead expenses.  In the normal course of business, Deloitte & Touche revises its hourly rates to reflect changes in responsibilities, increased experience, geographic differentials and increased costs of doing business.  Deloitte & Touche will file a supplemental affidavit with the Court and give 10 days notice to the U.S. Trustee and the Creditors' Committee prior to any increases in the rates set forth in the Application describing any such increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code.

17.     The Debtors believe that the Fee Structure provided for in the Engagement

Letters is consistent with, and typical of, arrangements entered into by Deloitte & Touche and

other similar professional services firms with respect to providing comparable services for clients

similar to the Debtors, both in and outside of bankruptcy proceedings.

18.     As of the Petition Date, the Debtors do not owe Deloitte & Touche any

fees for pre-petition services performed or expenses incurred under the Engagement Letters or

otherwise.  According to the Debtors' books and records, during the 90-day period before the

Petition Date, Deloitte & Touche received approximately $600,000 for professional services

performed.  Deloitte & Touche does not hold any retainer.

19.     The terms of the Engagement Letters were fully negotiated at arm's-length

between the Debtors and Deloitte & Touche and the Debtors respectfully submit that these terms

and provisions are reasonable and comparable to those generally obtained by professional

services firms of similar stature to Deloitte & Touche and for comparable engagements.

## DELOITTE & TOUCHE'S DISINTERESTEDNESS

20.     A more fully described in the Robinson Declaration, Deloitte & Touche

has reviewed the list of parties-in-interest provided by the Debtors.  To the best of Deloitte &

Touche's knowledge as of the date hereof, after reasonable inquiry, and except to the extent

disclosed herein and in the Robinson Declaration and schedules thereto, Deloitte & Touche: (i) is

a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (ii) does

not hold or represent an interest adverse to the Debtors' estates; and (iii) has no connection to the

Debtors, their significant creditors or other significant parties in interest as were identified by the

Debtors to Deloitte & Touche.

9

21.        Given the large number of parties-in-interest in these Chapter 11 cases, despite the efforts to identify and disclose Deloitte & Touche's relationships with parties-in-interest in these Chapter 11 cases, Deloitte & Touche is unable to state with certainty that every client relationship or other connection has been disclosed in the Robinson Declaration.  If Deloitte & Touche discovers additional material information that it deems requires disclosure, Deloitte & Touche will promptly file a supplemental disclosure with the Court.

22.        The Debtors are informed that Deloitte & Touche will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any non-affiliated entity, to the extent required by section 504 of the Bankruptcy Code.

23.        To the extent there is any inconsistency between this Application, the Engagement Letters, and the order approving this Application (the "Retention Order"), the Retention Order shall govern.

## BASIS FOR RELIEF

**A.        The Bankruptcy Code Permits the Employment and Retention of Deloitte & Touche Pursuant to the Terms of the Engagement letters**

24.        Section 327(a) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

25.        Section 328(a) of the Bankruptcy Code provides that a debtor subject to court approval:

> [May] employ or authorize the employment of a professional
> under Section 327 or 1103 of this title, as the case may be,
> on any reasonable terms and conditions of employment, including
> on a retainer, on an hourly basis, on a fixed or percentage fee basis,
> or on a contingent fee basis.

26.     Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the
> name of the [firm] to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all
> of the [firm's] connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the
> United States trustee, or any person employed in the Office of the
> United States trustee.

Fed. R. Bankr. P. 2014.

27.     The terms and conditions of the Engagement Letters were negotiated by the Debtors and Deloitte & Touche at arm's-length and in good faith. The fees generally described herein and set forth in the Engagement Letters are consistent with and typical of arrangements entered into by Deloitte & Touche and other professional services providers when rendering similar services to clients such as the Debtors. Deloitte & Touche and the Debtors believe that the foregoing compensation arrangement is both reasonable and market-based.

28.     The Debtors respectfully submit that the professional services provided by Deloitte & Touche are important to the success of these Chapter 11 cases and request that the Court approve the immediate retention of Deloitte & Touche and the terms and conditions of the Engagement Letters in substantially the form attached hereto.

**B.      Indemnification**

29.     As part of the overall compensation payable to Deloitte & Touche under the terms of the Engagement Letters, dated April 23, 2012, the Debtors have agreed to indemnify

ny-1051418

and hold Deloitte & Touche harmless under certain circumstances.  The Debtors believe that the

indemnification provisions of the Engagement Letters dated April 23, 2012, subject to the

limitations and modifications provided for in the Retention Order, are customary and reasonable

for engagements of this nature.

**C.    Dispute Resolution**

30.    Pursuant to the Engagement Letters, the Debtors have agreed to certain

procedures in connection with the resolution of disputes arising out of or relating to services

performed under the Engagement Letters.  The Debtors believe that the dispute resolution

provisions contained in the Engagement Letters, subject to limitations and modifications

provided for in the Retention Order, are customary and reasonable for engagements of this

nature.

**D.    Nunc Pro Tunc**

31.    As noted above, prior to filing the Application, Deloitte & Touche

provided interim audit services and Deloitte & Touche commenced certain services in

connection with these Chapter 11 cases.  Deloitte & Touche has and will continue to only

perform services as directed by the Debtors.  Accordingly, it is appropriate that Deloitte &

Touche be retained *nunc pro tunc* to the Petition Date.

**NOTICE**

32.    Notice of this Motion has been provided by facsimile, electronic

transmission, overnight delivery, or hand delivery to the following parties, or in lieu thereof, to

their counsel: (a) the Office of the United States Trustee for the Southern District of New York;

(b) the Office of the United States Attorney General; (c) the Office of the New York Attorney

General; (d) the Office of the United States Attorney for the Southern District of New York; (e)

12

the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) each of the

Debtors' prepetition lenders, or their agents, if applicable; (h) each of the indenture trustees for

the Debtors' outstanding notes issuances; (i) Ally Financial Inc.; (j) Barclays Bank PLC, as

administrative agent for the lenders under the debtor in possession financing facility;

(k) Nationstar Mortgage LLC and its counsel; (l) the Committee; (m) the parties included on the

Debtors' list of fifty (50) largest unsecured creditors; and (n) all parties requesting notice

pursuant to Bankruptcy Rule 2002. The Debtors submit that, in view of the facts and

circumstances, such notice is sufficient and no other or further notice need be provided.

### NO PREVIOUS REQUEST

33.      No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

### CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order

(i) substantially in the form attached hereto as Exhibit 1, granting the relief requested in the

Application, (ii) approving the terms of the Engagement Letters, and (iii) granting such other and

further relief to the Debtors as the Court may deem just and proper.


Dated: July 25, 2012                        RESIDENTIAL CAPITAL, LLC,
                                            on behalf of itself and each of its Debtor
                                            subsidiaries


                                            By: /s/ James Whitlinger
                                                 Name: James Whitlinger
                                                 Title: Chief Financial Officer


13

## **EXHIBIT 1**

## **Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------

|   |   |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) Case No. 12-12020 (MG) |
|  | ) |
| Debtors. | ) Jointly Administered |
|  | ) |

-------------------------------------------------------------------------

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF DELOITTE & TOUCHE LLP AS INDEPENDENT AUDITOR**
**AND ATTEST SERVICE PROVIDER TO**
**THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application (the "Application")[1] of the Debtors for entry of an order (the

"Order") pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014(a) of the

Bankruptcy Rules and Rule 2014-1 of the Local Rules, authorizing the Debtors to retain and

employ Deloitte & Touche LLP ("Deloitte & Touche") as their independent auditor and attest

service provider, *nunc pro tunc* to the Petition Date, and the Court having jurisdiction to consider

the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334;

and consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Application being adequate and appropriate

under the particular circumstances; and a hearing having been held to consider the relief

requested in the Application (the "Hearing"); and upon consideration of the Application, the

Robinson Declaration, the record of the Hearing and all proceedings had before the Court; and

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Application.  Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11
cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

1

the Court having found and determined that the relief sought in the Application is in the best

interests of the Debtors' estates, their creditors and other parties-in-interest, and that the legal and

factual bases set forth in the Application and the Robinson Declaration establish just cause for

the relief granted herein and the Court being satisfied based on the representations made in the

Application, the Robinson Declaration that (i) Deloitte & Touche does not hold or represent an

interest adverse to the Debtors' estates and (ii) Deloitte & Touche is a "disinterested person" as

defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the

Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1; and after due deliberation and

sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Application is granted in its entirety as set forth herein.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code,

Bankruptcy Rule 2014(a) and Local Rule 2014-1, the Debtors are authorized to employ and

retain Deloitte & Touche as their independent auditor and attest service provider, *nunc pro tunc*

to the Petition Date in these Chapter 11 cases, in accordance with the terms and conditions set

forth in the Engagement Letters and to pay fees to Deloitte & Touche on the terms specified in

the Engagement Letters.

3.      Deloitte & Touche is authorized to perform all actions and services set

forth in the Engagement Letters.

4.      Deloitte & Touche shall maintain records of all services showing dates,

categories of services, fees charged and expenses incurred, and shall serve monthly fee

statements in accordance with the order entered in connection with the Interim Compensation

Order.

ny-1051418

5.      Prior to any increases in Deloitte & Touche's hourly rates, Deloitte &

Touche shall file a supplemental affidavit with the Court and provide ten business days' notice to

the Debtors, the United States Trustee and any official committee.  The supplemental affidavit

shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of

the Bankruptcy Code and state whether Deloitte & Touche's client has consented to the rate

increase.  The United States Trustee retains all rights to object to any rate increase on all grounds

including, but not limited to, the reasonableness standard provided for in section 330 of the

Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section

330 of the Bankruptcy Code.

6.      Deloitte & Touche shall apply to the Court for allowances of

compensation and reimbursement of expenses in accordance with the procedures set forth in

sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rules, the Local Rules and any

applicable order of this Court regarding Interim Compensation and Reimbursement of Expenses

of Professionals.

7.      All requests by Deloitte & Touche for the payment of indemnification as

set forth in the Engagement Letters shall be made by means of an application (interim or final as

the case may be) to the Court and shall be subject to review by the Court to ensure that payment

of such indemnity conforms to the terms of the Engagement Letters and is reasonable under the

circumstances of the litigation or settlement in respect of which indemnity is sought, provided,

however, that in no event shall Deloitte & Touche be indemnified in the case of its own bad-

faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

8.      In the event that Deloitte & Touche seeks reimbursement from the Debtors

for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant

to the Engagement letters, the invoices and supporting time records from such attorneys shall be

included in Deloitte & Touche's own applications, both interim and final, and such invoices and

time records shall be subject to the United States Trustee's Guidelines for compensation and

reimbursement of expenses and the approval of the Bankruptcy Court pursuant to sections 330

and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained

under section 327 of the Bankruptcy Code and without regard to whether such attorneys'

services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.     With respect to the April 23, 2012 Engagement Letters, solely as it relates to

services for the Debtors from the inception of the Chapter 11 cases to the effective date of

any plan of reorganization of the Debtors:

a)  The term "gross negligence (as defined under New York law existing as of the date
    hereof)," shall be deemed included in the first sentence of sections 1(a) and 1(c) of
    Appendix B to such Engagement Letters prior to the phrase "bad faith";

b)  The second sentence of section 1(a) of the Appendix B of such Engagement Letters
    shall be deemed deleted;

c)  Nothing contained in section 2 of the Appendix B of such Engagement Letters shall
    alter the duties imposed by law on Deloitte & Touche in respect of the services to be
    provided thereunder.  It is understood and agreed that Deloitte & Touche is an
    independent contractor and that it is not, and will not be considered to be, an agent,
    partner, or representative of the Debtors

d)  Section 8 of Appendix B of such Engagement Letters shall be deemed deleted and
    replaced with the following:

    Any Dispute (as defined below) arising out of or relating to services performed under
    the engagement letter prior to the effective date of (a) a plan of reorganization of the
    Company or (b) a court order dismissing the Company's Chapter 11 case or cases (the
    "Effective Date") shall be brought in the Bankruptcy Court (or the District Court
    (each as defined below), if such District Court withdraws the reference to the
    Bankruptcy Court).  All other Disputes, including, without limitation, Disputes
    arising out of or relating to services performed after the Effective Date and Disputes
    over which the Bankruptcy Court (or the District Court) does not have, retain or
    exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth
    in the Dispute Resolution Provision attached hereto as Appendix G and made a part
    hereof (the "Dispute Resolution Provision").  The parties each hereby irrevocably

4

waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute. Except with respect to the interpretation and enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the Federal Arbitration Act), the laws of the State of New York (without giving effect to its choice of law principles) shall apply in arbitration or any other forum in connection with any Dispute. The foregoing shall be binding upon the parties and any and all of their respective permitted successors and assigns. This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

For Purposes of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement, (b) "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York and (c) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit.

10.     The Debtors are authorized to take all actions necessary to comply with all the duties set forth in the Application.

11.     To the extent that there may be any inconsistency between the terms of the Application, the Retention Agreement, or this Order, the terms of this Order shall govern.

12.     This Order shall be immediately effective and enforceable upon its entry.

13.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

14.     Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

Dated: New York, New York
            _____, 2012


_____

THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

6

## **EXHIBIT 2**

## **Declaration of Tom A. Robinson**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------

|   |   |
|---|---|
| In re: | ) |
|  | ) |
|  | ) Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) |
|  | ) Chapter 11 |
| Debtors. | ) |
|  | ) Jointly Administered |

---------------------------------------------------------------------

**DECLARATION OF TOM A. ROBINSON IN SUPPORT OF THE APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF DELOITTE & TOUCHE LLP AS INDEPENDENT AUDITOR AND ATTEST SERVICE PROVIDER OF THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO MAY 14, 2012**

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Tom A. Robinson, under penalty of perjury, declares as follows:

1. I am a partner of the firm of Deloitte & Touche LLP ("Deloitte & Touche"), which has an office at 200 Renaissance Center, Suite 3900, Detroit, Michigan. I am duly authorized to make and submit this declaration (the "Declaration") on behalf of Deloitte & Touche in accordance with sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") in support of the application of the above-caption debtors (the "Debtors") for entry of an order authorizing the employment and retention of Deloitte & Touche as independent auditor and attest service provider to the Debtors (the "Application"), *nunc pro tunc* to May 14, 2012 (the "Petition Date"), pursuant to the terms and conditions set forth in the four engagement agreements, dated April 23, 2012, April 23, 2012, July 9, 2012, and July 9, 2012 between Deloitte & Touche and the Debtors, attached as Exhibit 3 to the Application (collectively, the "Engagement Agreements").

### Disinterestedness

2.       The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte & Touche or its affiliates.

3.       Subject to the foregoing, except as set forth herein, and in the attachments hereto, to the best of my information, knowledge and belief based on reasonable inquiry, (1) neither I, Deloitte & Touche, nor any partner, principal or director of Deloitte & Touche that is anticipated to provide the services for which Deloitte & Touche is to be retained (the "Deloitte & Touche Engagement Partners/Principals/Directors") holds any interest adverse to the Debtors with respect to the matters on which Deloitte & Touche is to be retained in the above-captioned Chapter 11 cases (the "Cases"), and (2) Deloitte & Touche and the Deloitte & Touche Engagement Partners/Principals/Directors have no relationship to the Debtors, their significant creditors, certain other parties-in-interest herein, or to the attorneys that are known to be assisting the Debtors in the Cases, except as stated herein or on any attachment hereto.  Additionally, the Deloitte & Touche professionals performing services for the Debtors described herein are not currently, and have not been, within the two years before the Petition Date, officers, directors or employees of the Debtors.

4.       Based on a review of the executive officers and directors since 2009 identified by the Debtors, no current personnel of Deloitte & Touche are such officers or directors or were such officers or directors of the Debtors within the two years before the Petition Date.

5.       From time to time, Deloitte & Touche and its affiliates have provided or may currently provide services and likely will continue to provide services, to certain creditors of the

2

Debtors and various other parties potentially adverse to the Debtors in matters unrelated to the Cases except as set forth herein or in the attachments hereto.

6.      In connection with Deloitte & Touche's retention by the Debtors in these Cases, Deloitte & Touche undertook a search to determine, and to disclose, whether it or its affiliates is or has been employed by or has other relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals or other entities with significant relationships with the Debtors identified on a schedule provided to Deloitte & Touche.  Specifically, Deloitte & Touche obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties-in-interest in these Cases. To check upon and disclose possible relationships with significant parties-in-interest in these Cases, Deloitte & Touche researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, equity security holders, professionals or other such entities with significant relationships with the Debtors.

7.      Except as set forth herein or in the attachments hereto, Deloitte & Touche and its affiliates have or may have provided professional services to or may currently provide professional services to, and may in the future provide professional services in matters unrelated to these Cases to certain of the Debtors' potential parties-in-interest.  Additionally, certain of these potential parties-in-interest have or may have provided goods or services to or may currently provide goods or services to, and may in the future provide goods or services to, Deloitte & Touche or its affiliates and the Deloitte & Touche Engagement Partners/Principals/Directors in matters unrelated to these Cases.

3

8.      Deloitte & Touche provided prepetition services to the Debtors.   Deloitte & Touche and Deloitte Tax LLP ("Deloitte Tax"), an affiliate of Deloitte & Touche LLP, also perform certain services for non-debtor affiliates of the Debtors.  The Debtors paid Deloitte & Touche approximately $600,000 in the ninety (90) days prior to the Petition Date.   These payments were made as follows:

| Invoice Amount | Invoice Date | Payment Date |
| --- | --- | --- |
| $200,000 | February 1, 2012 | February 25, 2012 |
| $100,000 | March 1, 2012 | March 16, 2012 |
| $300,000 | April 25, 2012 | April 27, 2012 |

As of the Petition Date, no amounts were outstanding with respect to invoices issued to the Debtors by Deloitte & Touche prior to the Petition Date.  Deloitte & Touche does not hold a retainer.

9.      Despite the efforts described above to identify and disclose Deloitte & Touche's connections with the potential parties-in-interest in these Cases, because Deloitte & Touche is a nationwide firm with thousands of personnel, and because the Debtors are a large enterprise, Deloitte & Touche is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if Deloitte & Touche discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

10.     From the internal search discussed above, Deloitte & Touche has determined that certain relationships should be disclosed as follows.

       a.  Deloitte & Touche and/or its affiliates provide services in matters unrelated to these Cases to certain of the Debtors' largest unsecured creditors and other potential parties-in-interest listed on Schedule 1 or their affiliates.  Based on preliminary financial results for the last full fiscal year of Deloitte & Touche

4

and its affiliates, no potential party in interest listed on Schedule 1 accounts for greater than 2% of the combined net service revenue of Deloitte & Touche and its affiliates.

b.  Law firms identified on <u>Schedule 1</u>, including Gibbs & Bruns LLP; Kelley, Drye & Warren LLP; Kirkland & Ellis LLP; Kramer, Levin Naftalis & Frankel LLP; Mayer Brown LLP; Morrison & Foerster LLP; Morrison Cohen LLP; Ropes & Gray LLP; Sidley Austin LLP; Skadden, Arps, Slate, Meagher & Flom LLP; and White & Case, have provided, currently provide and may in the future provide legal services to Deloitte & Touche or its affiliates in matters unrelated to these Cases, and/or Deloitte & Touche or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

c.  In the ordinary course of its business, Deloitte & Touche and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be potential parties-in-interest in these Cases. For example, from time to time, Deloitte & Touche and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

d.  Certain financial institutions or their respective affiliates (including AIG Asset Management (U.S.), LLC; Bank of America, N.A.; Bank of Nova Scotia; Barclays Bank PLC; Citibank, N.A.; Genworth Mortgage Insurance Corporation; ING Direct; JP Morgan Chase Bank, N.A.; Suntrust; US Bank, N.A.; Wachovia Bank; and Wells Fargo) listed on <u>Schedule 1</u> (i) are lenders to an affiliate of Deloitte & Touche (Deloitte & Touche is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte Touche and its affiliates. Additionally, certain financial institutions or their respective affiliates listed on <u>Schedule 1</u> (including The Vanguard Group, Inc.) provide asset management services to certain retirement plans of Deloitte & Touche and its affiliates.

e.  Certain firms around the world, including Deloitte LLP, an affiliate of Deloitte & Touche, are members of Deloitte Touche Tohmatsu Limited ("DTTL"), a United Kingdom company limited by guaranty. Certain of the non-US member firms of DTT or their affiliates (the "DTT Member Firms") have provided, currently provide or may in the future provide professional services to certain of the Debtors' affiliates.[1] In particular, the DTT Member Firm in Canada, among others, provides services to a non-debtor affiliate of the Debtors.

---

[1]  Each of the DTT Member firms is a separate and independent legal entity. It is not Deloitte & Touche's practice to undertake conflicts checks with DTT Member Firms for the purpose of identifying relationships that they may have with the Debtors and other parties-in-interest and Deloitte & Touche does not maintain a database for the purpose of identifying all such relationships.

f.  Deloitte & Touche currently acts as the independent auditor of the parent of the Debtors, Ally Financial Inc. ("Ally") and its affiliates.  I, along with other members of the team providing the services described herein, provide these audit services to Ally.  Deloitte & Touche and its affiliates provide other professional services for Ally and certain non-debtor affiliates thereof in matters unrelated to these Cases.

g.  Personnel of Deloitte & Touche and its affiliates may be ordinary course customers of the Debtors; however, Deloitte & Touche has not conducted any research to determine whether, in fact, such relationships exist.

h.  Certain potential parties-in-interest may be adverse to and/or involved in litigation matters with Deloitte & Touche or its affiliates in connection with matters unrelated to these Cases.

11.    Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte & Touche or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in the Cases, United States Trustee for Region 2, the Assistant United States Trustee for the Southern District of New York and the attorney therefor assigned to these Cases.

12.    Except as may be disclosed herein, to the best of my knowledge, Deloitte & Touche and the Deloitte & Touche Engagement Partners/Principals/Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte & Touche and the Deloitte & Touche Engagement Partners/Principals/Directors are "disinterested persons" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

## Services and Professional Compensation

13.    Deloitte & Touche has provided and agrees to continue to provide assistance to the Debtors in accordance with the terms and conditions set forth in the Application and the Engagement Agreements.   In particular, Deloitte & Touche is anticipated to provide the following services:

6

**Financial Statement Audit (Services Performed under the July 9, 2012 Engagement Agreements)**

a.  a financial statement audit with respect to Residential Capital, LLC ("Residential Capital"), a Debtor, for the year ending December 31, 2012; and

b.  review of Residential Capital's interim financial information for each of the quarters in the year ending December 31, 2012.

c.  a financial statement audit with respect to GMAC Mortgage, LLC ("GMAC Mortgage"), a Debtor, for the year ending December 31, 2012.

d.  a financial statement audit with respect to Residential Funding Company, LLC ("Residential Funding"), a Debtor, for the year ending December 31, 2012.

**Servicing Compliance (Services Performed under the April 23, 2012 Engagement Agreements and the July 9, 2012 Engagement Agreement Regarding Residential Funding and GMAC Mortgage)**

a.  examine the assertion of (i) GMAC Mortgage as it relates to Residential Capital's primary servicing platform, and (ii) Residential Funding as it relates to Residential Capital's master servicing platform, each regarding compliance with their minimum servicing standards as of December 31, 2012 and for the period January 1, 2012 through December 31, 2012.

b.  examine the assertion of (i) GMAC Mortgage as it relates to Residential Capital's primary servicing platform, and (ii) Residential Funding Company as it relates to Residential Capital's master servicing platform, each regarding compliance with the servicing criteria set forth in section 229.1122 of the Securities and Exchange Commission's Asset-Backed Securities Regulation (Regulation AB) as of December 31, 2012 and for the period January 1, 2012 through December 31, 2012.

c.  examine the compliance of (i) GMAC Mortgage and (ii) Residential Funding, as it relates to the Department of Housing and Urban Development's Consolidated Audit Guide for Audits of HUD Programs, for the year ending December 31, 2012.

14.  For the Financial Statement Audit services referenced above, Deloitte & Touche will bill at the following hourly rates as set in the applicable Engagement Agreement:

7

| Personnel Classification | Applicable Hourly Rates |
|---|---|
| Partner/Principal/Director | $ 365 |
| Senior Manager | $ 290 |
| Manager | $ 265 |
| Senior Staff | $ 215 |
| Staff | $ 175 |

15.    In the normal course of business, Deloitte & Touche revises its hourly rates to reflect changes in responsibilities, increased experience, geographic differentials and increased costs of doing business.  Changes in the foregoing rates will be noted on the monthly statements for the first time period in which the revised rates become effective.

16.    For the Servicing Compliance services referenced above, Deloitte & Touche will be compensated by a fixed fee of $1,465,000 of which $300,000 was billed and paid prior to the Petition Date.[2]   The Debtors and Deloitte &Touche have agreed that, subject to applicable compensation procedures in these Cases, the remainder of this fixed fee will be billed in accordance with the following billing schedule:

| Invoice Date | Amount |
|---|---|
| July 1, 2012 | $ 100,000 |
| August 1, 2012 | $ 200,000 |
| October 1, 2012 | $ 200,000 |
| November 1, 2012 | $ 200,000 |
| December 1, 2012 | $ 200,000 |
| February 1, 2013 | $ 165,000 |
| March 1, 2013 | $ 100,000 |

---

[2]    The April 23, 2012 Engagement Agreements contemplate a single fee of $1,465,000 for services under both agreements.  For the sake of clarity, Deloitte & Touche has agreed that this amount will be deemed to be a fixed fee to be billed in accordance with the above billing schedule subject to the compensation procedures in the Cases.  This fixed fee also includes Servicing Compliance services set forth in the July 9, 2012 Engagement Agreement relating to Residential Funding and GMAC Mortgage (the "Residential Funding/GMAC Engagement Agreement").  The Residential Funding/GMAC Engagement Agreement also includes certain Financial Statement Audit services which will be billed at the hourly rates set forth in paragraph 14.  See subparts c. and d. under Financial Statement Audit in paragraph 13. Deloitte & Touche invoices will separate time for Servicing Compliance services from time spent on Financial Statement Audit services.

8

17.    Deloitte & Touche intends to apply to the Court for allowance of compensation and reimbursement of expenses consistent with the terms of the Engagement Agreement, the Application and this Declaration, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of bankruptcy procedures, the United States Trustee Guidelines and the Orders of this Court.

18.    Deloitte & Touche requests that it be permitted to submit monthly invoices for services rendered and expenses incurred.  Such invoices will contain reasonable detail consistent with any rules, guidelines and/or administrative orders promulgated by the Court that apply to these Cases subject to the exceptions referenced in the Application.  Deloitte & Touche requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders, if any, that would apply to interim payments.  All payments rendered pursuant to Deloitte & Touche's retention by the Debtors must be approved by an Order of this Court and based upon the filing by Deloitte & Touche of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

19.    Deloitte & Touche has completed a reorganization of some of its businesses, including its financial advisory services, tax services, solutions, human capital and outsourcing businesses.  This reorganization is intended to align the organizational structure more closely with the manner in which business is conducted.  These businesses are now being conducted by entities affiliated with Deloitte & Touche, including Deloitte Financial Advisory Services LLP, Deloitte Tax and Deloitte Consulting LLP.  Some services incidental to the tasks to be performed by Deloitte & Touche in these Cases may be performed by personnel now employed by or associated with these affiliates of Deloitte & Touche or their respective subsidiaries, including

9

subsidiaries located outside of the United States.  The fees and expenses with respect to such services will be included on the fee applications of Deloitte & Touche.

20.    Deloitte & Touche has received no promises regarding compensation in these Cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. Deloitte & Touche has no agreement with any nonaffiliated entity to share any compensation paid by the Debtors.

Dated: July 25, 2012

By: /s/ Tom A. Robinson
Tom A. Robinson
Partner
Deloitte & Touche LLP

11

## Schedule 1

Potential parties-in-interest or their affiliates for whom Deloitte & Touche or its affiliates has provided or is currently providing services in matters unrelated to these Cases, except as set forth above, or with whom such parties have other relationships, including banking relationships.

Abovenet Communications Inc.
Acacia Life Insurance Company
ACE Group, The
Aegis Usa Inc.

AIG Asset Management (U.S.), LLC
AlixPartners
AllianceBernstein Advisors
Allstate Life Insurance Company
Ally Financial Inc.
Ambac Assurance Corp
American Enterprise Investment Services Inc.
American Heritage Life Insurance Company
Ameritas Life Insurance Corp.
Appaloosa Management L.P.
Assured Guaranty Corp
AT&T
Aurora Loan Services LLC
Avenel at Montgomery Square
Bank of America, N.A.
Bank of New York Mellon, The
Bank of Nova Scotia
Bank One, National Association
Barclays Bank PLC
Berkshire Hathaway Inc.
Berman, Richard M.
BlackRock Global Investors
BMMZ Holdings LLC
Brandywine Cityplace LP
BREOF Convergence LP
Brookfield Real Estate Opportunity Fund
Caliber Funding LLC
California Housing Finance Agency
Canada Mortgage Acceptance Corporation
Center Point Energy
Centerview Partners LLC

CenturyLink

Cerberus Capital Management, L.P.

Charles Schwab Corporation, The

Chase Bank of Texas, N.A.

Chubb Group of Insurance Companies

Cisco Systems Capital Corporation

Citibank

Citigroup/Salomon Brothers

Citizens Financial Group

Colonial Properties Services Ltd. Partnership

Columbus Life Insurance Company

Comcast

Credit Suisse Securities (USA) LLC

Cuna Mutual Group Mortgage Insurance Company

David Lerner Associates, Inc.

Detroit Police & Fire Retirement System

Deutsche Bank AG

Deutsche Zentral-genossenschaftsbank

Dish Network

ditech, LLC

DOA Holding Properties, LLC

DRA CLP Esplanade LP

DZ Bank AG

E*Trade Clearing LLC

Edward D. Jones & Co.

EMC Mortgage LLC

EPRE LLC

Equity Investment I, LLC

ETS of Virginia, Inc.

EverBank

Evercore

Executive Trustee Services LLC

Federal Home Loan Bank

Federal Home Loan Mortgage Corporation (Freddie Mac)

Federal Housing Administration (FHA)

Federal Housing Finance Agency

Federal Insurance Group

Federal National Mortgage Association (Fannie Mae)

Fifth Third Bank

FIM Holdings LLC

Financial Guaranty Insurance Co.

First Colonial Insurance Company
First Southwest Company
Foreign Obligation Exchange Inc.
Fortress Investment Group, LLC
FTI Consulting, Inc.
General Electric Mortgage Insurance Corporation
General Motors Company
Genesys Conferencing
Genworth Mortgage Insurance Corporation
Gibbs & Bruns, LLP
Global Capacity Group Inc.
GMAC Model Home Finance I, LLC
Goldman, Sachs & Co.
Government National Mortgage Association (Ginnie Mae)
Greenwich Capital Financial Products, Inc.
Hall, William, Jr.
HFN REO SUB II, LLC
High Street Home Loans Limited
Home Connects Lending Services, LLC
Homecomings Financial
Houlihan Lokey
HSBC Bank USA
HSH Nordbank
Huntington Bancshares Inc.
IB Finance Holding Company LLC
IKB Deutsche Industriebank AG
Impac Funding Corporation
Indecomm Global Services
ING Direct
Integrity Life Insurance Company
Interactive Brokers Retail Equity Clearing
Intercall
Intervoice Inc.
Iowa Public Employees Retirement System
Irvine Company LLC, The
Janney Montgomery Scott, Inc.
John Deere Community Credit Union
JPMorgan Chase
Kelly Drye & Warren LLP
Kennett Capital Inc.
Kirkland & Ellis LLP

Kramer Levin Naftalis & Frankel LLP

Kurtzman Carson Consultants LLC

Ladue Associates, Inc.

LaSalle Bank National Association

Lehman Brothers Holdings, Inc.

Level 3 Communications LLC

Liberty Property LP

Loomis Sayles & Company

LPL Financial Corporation

M&T Bank

Massachusetts Mutual Life Insurance Company

Mayer Brown LLP

MBIA, Inc.

MCA Finance Limited

MediaCom

Mercer

Merrill Lynch Safekeeping

MidAmerican Energy

Moelis & Company

Morgan Stanley & Co. LLC

Morrison & Foerster LLP

Morrison Cohen LLP

Mortgage Guaranty Insurance Corporation

MortgageIT Inc.

National Credit Union Administration Board

National Financial Services LLC

National Guarantee plc

National Motors Bank FSB

Nationstar Mortgage, LLC

New Jersey Carpenters Health Fund

Nomura Credit & Capital, Inc.

NorthMarq Real Estate Services

Ohio, State of

Oppenheimer & Co., Inc.

OptionXpress, Inc

Oregon Housing & Community Services Department

Passive Asset Transactions, LLC

PATI Real Estate Holdings, LLC

Paulson & Co. Inc.

Penson Financial Services, Inc.

Pentwater Capital Management

Pershing LLC

Pinnacle Capital

Private Label Group Limited

Putnam Investment Management

RAHI Real Estate Holdings, LLC

Raymond, James & Associates, Inc.

RBC Capital Markets, LLC

RCSFJV2004, LLC

Regus Management Group LLC

Republic Mortgage Insurance Company

Residential Asset Securities Corporation

Residential Capital LLC (ResCap)

Residential Consumer Services

Residential Funding Company, LLC

Residential Mortgage Real Estate Holdings, LLC

RFC - GSAP Servicer Advance, LLC

Ropes & Gray LLP

Scottrade, Inc.

Security Investors LLC

Security Pacific National Company

Sidley Austin LLP

Silver Point Capital, L.P.

Skadden Arps Slate Meagher & Flom LLP

Sprint

State Street Bank & Trust Company

Stichting Pensioenfonds ABP

Stifel, Nicolaus & Company, Inc.

Structured Asset Securities Corporation

Suntrust

Taconic Capital Advisors, L.P.

TCF Bank

TD Ameritrade Clearing, Inc.

Teachers Insurance & Annuity Association (TIAA)

Thrivent Financial for Lutherans

Timber Hill LLC

Time Warner Telecom

Treasury Bank NA (nka Countrywide Financial)

Treasury, U.S. Department of

U.S. Central Federal Credit Union

UBS Securities LLC

Union Central Life Insurance Company, The

United Guaranty Residential Insurance Company
US Bank National Association
Vanguard Marketing Corporation
Verizon
Wachovia Bank
Waste Management
Wells Fargo
Western & Southern Financial Group
Western Asset Management Company
Western Corporate Federal Credit Union
White & Case
Wilmington Trust
Xcel Energy

**EXHIBIT 3**

**Engagement Letters**

# Deloitte.

Deloitte & Touche LLP
200 Renaissance Center
Suite 3900
Detroit, 48243
USA

Tel: +1 313 396 3000
Fax: +1 313 666 3616
www.deloitte.com

April 23, 2012

Mr. Joseph Pensabene
Executive Vice President, GMAC Mortgage, LLC
Chief Servicing Officer, GMAC Mortgage, LLC
Executive Vice President, Residential Funding Company, LLC
1100 Virginia Drive
Fort Washington, PA 19034

Dear Mr. Pensabene:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as the independent registered public accounting firm to examine the separate assertions of GMAC Mortgage, LLC as it relates to the Company's primary servicing platform and of Residential Funding Company, LLC as it relates to the Company's master servicing platform, both wholly-owned subsidiaries of Residential Capital, LLC (the "Company"), which is a wholly-owned subsidiary of Ally Financial Inc. (the "Parent Company") regarding the Company's compliance with the servicing criteria set forth in Section 229.1122 ("Item 1122(d)") of the Securities and Exchange Commission's Asset-Backed Securities Regulation ("Regulation AB") (the "Servicing Policy") as of December 31, 2012 and for the period January 1, 2012 through December 31, 2012 ("Management's Assertions"). Mr. Tom Robinson will be responsible for the services that D&T performs for the Company hereunder.

This engagement to perform an examination of Management's Assertions will be conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants ("AICPA Standards"), as adopted by the Public Company Accounting Oversight Board (PCAOB), subject to the terms and conditions set forth herein.

## Examination of Management's Assertions

An examination includes examining, on a test basis, evidence supporting Management's Assertions and performing such other procedures as D&T considers necessary in the circumstances. An examination conducted in accordance with AICPA Standards, as adopted by the PCAOB, is designed to obtain reasonable, rather than absolute, assurance about Management's Assertions taken as a whole. An examination is not designed to express an opinion on individual amounts or statements within an assertion. An examination is not designed to provide assurance on internal control over compliance or to identify deficiencies in internal control.

The objective of the examination is the expression of an opinion on whether Management's Assertions are presented or fairly stated, in all material respects, based on the criteria set forth in the Servicing Policy. Our ability to express an opinion and the wording thereof will, of course, be dependent on the facts and circumstances at the date of our attest report. If, for any reason, we are unable to complete the

Member of
Deloitte Touche Tohmatsu

Regulation AB
Engagement Letter
Page 2

examination or are unable to form or have not formed an opinion, we may decline to express an opinion
or decline to issue a report as a result of this engagement. If we are unable to complete the examination or
if the attest report to be issued by D&T as a result of this engagement requires modification, the reasons
therefor will be discussed with management and the Company's Audit Committee, or the Parent
Company's Audit Committee, as appropriate.

## Management's Responsibilities

Appendix A describes management's responsibilities for (1) Management's Assertions, (2) providing us
with a representation letter, (3) the process for obtaining preapproval of services, (4) independence
matters relating to financial interests and providing certain services, and (5) independence matters relating
to hiring.

## Responsibility of the Audit Committee

We acknowledge that the Parent Company's Audit Committee is directly responsible for the appointment,
compensation, and oversight of our work; accordingly, except as otherwise specifically noted, we will
report directly to the Parent Company's Audit Committee, as appropriate. You have advised us that the
services to be performed under this engagement letter, including, where applicable, the use by D&T of
affiliates or related entities as subcontractors in connection with this engagement, have been approved by
the Parent Company's Audit Committee in accordance with its established preapproval policies and
procedures.

## Other Communications Arising from the Examination

In connection with the performance of the examination, we may have other comments for management on
matters observed by us and possible ways to improve the efficiency of the Company's operations or other
recommendations concerning internal control over compliance. With respect to these other
communications, it is our practice to discuss all comments, if appropriate, with the level of management
responsible for the matters, prior to their communication to senior management or the Company's Audit
Committee and the Parent Company's Audit Committee.

## Fees

D&T's fees are based on the amount of time required at various levels of responsibility. Our fees will be
invoiced as part of our overall fees for the Company's mortgage servicing compliance engagements
which are expected to approximate $1,465,000.

## Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites

If the Company intends to publish or otherwise reproduce in any document our attest report, or otherwise
make reference to D&T in a document that contains other information in addition to Management's
Assertions (e.g., in a periodic filing with the Securities and Exchange Commission), thereby associating
D&T with such document, the Company agrees that its management will provide D&T with a draft of the
document to read and obtain our approval for the inclusion or incorporation by reference of our attest
report, or the reference to D&T, in such document before the document is printed and distributed. The
inclusion or incorporation by reference of our attest report in any such document would constitute the
reissuance of our report. The Company also agrees that its management will notify us and obtain our
approval prior to including our attest report on an electronic site.

Regulation AB
Engagement Letter
Page 3


Our engagement to perform the services described herein does not constitute our agreement to be associated with any such documents published or reproduced by or on behalf of the Company. Any request by the Company to reissue our attest report, to consent to or acknowledge D&T's awareness of its inclusion or incorporation by reference in an offering or other document, or to agree to its inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request. The estimated fees outlined herein do not include any services that would need to be performed in connection with any such request; fees for such services (and their scope) would be subject to the mutual agreement of the Company and D&T at such time as D&T is engaged to perform the services and would be described in a separate engagement letter.

* * * * *

This engagement letter, including Appendices A – C attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes all other prior and contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

Deloitte & Touche LLP

Accepted and agreed to by GMAC Mortgage, LLC and Residential Funding Company, LLC:

By: _____

Title: _EVP/Chief Servicing Officer_

Date: _4/26/12_____

**APPENDIX A**

**MANAGEMENT'S RESPONSIBILITIES**
**GMAC Mortgage, LLC and Residential Funding Company, LLC**
**Engagement Letter Dated April 23, 2012**

This Appendix A is part of the engagement letter dated April 23, 2012 between Deloitte & Touche LLP and GMAC Mortgage, LLC and Residential Funding Company, LLC.

**Examination of Management's Assertions**

Management's Assertions are the responsibility of the Company's management. In this regard, management has the responsibility for, among other things:

- Determining that the Servicing Policy is appropriate for its purpose and determining which criteria of Item 1122(d) of Regulation AB are not applicable

- Establishing and maintaining effective internal control over the Company's compliance with the servicing criteria set forth in the Servicing Policy

- Identifying and ensuring that the Company complies with the laws and regulations applicable to its activities and informing us of any known material violations of such laws or regulations

- Properly recording transactions in the Company's servicing records

- Adjusting Management's Assertions to correct material misstatements

- Making determinations as to the relevancy of information to be included

- Making appropriate estimates and assumptions that affect reported information

- The overall accuracy of Management's Assertions and its conformity with the servicing criteria set forth in the Servicing Policy

- Making all records relevant to Management's Assertions and related information available to us

**Representation Letter**

We will make specific inquiries of the Company's management about the representations embodied in Management's Assertions. As part of our examination procedures, we will request that management provide us with a representation letter acknowledging management's responsibility for complying with the servicing criteria specified in Item 1122(d) of Regulation AB and for Management's Assertions, stating management's written assertion about the subject matter based on the criteria, and confirming certain representations made to us during our examination. The responses to those inquiries and related written representations of management required by the AICPA Standards, as adopted by the PCAOB, are part of the evidential matter that D&T will rely on in forming an opinion on Management's Assertions.

**Process for Obtaining Preapproval of Services**

Management is responsible for the coordination of obtaining the preapproval of the Parent Company Audit Committee, in accordance with the Parent Company Audit Committee's preapproval process, for any services to be provided by D&T to the Company.

**Independence Matters Relating to Financial Interests and Providing Certain Services**

In connection with our engagement, D&T, management of the Company, working together with management of the Parent Company, and the Parent Company Audit Committee will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence and ensuring compliance with the securities laws and regulations. D&T will communicate to its partners, principals, and employees that the Company is an attest client. Management of the Company, working together with management of the Parent Company, will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, has policies and procedures in place for the purpose of ensuring that neither the Company nor any such subsidiary or other entity will act to engage D&T or accept from D&T any service that either has not been subjected to their or the Parent Company's preapproval process or that under SEC or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Tom Robinson.

In connection with the foregoing, the Company, working together with the Parent Company, agrees to furnish to D&T and keep D&T updated with respect to (1) a corporate tree that identifies the legal names of the Company's affiliates (e.g., parents, subsidiaries, investors, or investees), together with the ownership relationship among such entities, and (2) equity and debt securities of the Company and its affiliates (including, without limitation, tax-advantaged debt of such entities that is issued through governmental authorities) that are available to individual investors (whether through stock, bond, commodity, futures or similar markets, or equity, debt, or any other securities offerings), together with related securities identification information (e.g., ticker symbols or CUSIP®, ISIN®, or Sedol® numbers). The Company acknowledges and consents that such information may be treated by D&T as being in the public domain.

**Independence Matters Relating to Hiring**

Management, working together with management of the Parent Company, will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees for certain positions. Management of the Company, working together with management of the Parent Company, will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, also has policies and procedures in place for purposes of ensuring that D&T's independence will not be impaired by hiring a former or current D&T partner, principal, or professional employee in an accounting or servicing role or financial reporting oversight role that would cause a violation of securities laws and regulations. Any employment opportunities with the Company for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Tom Robinson and approved by the Parent Company's Audit Committee before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee, if such opportunity relates to serving (1) as chief executive officer, controller, chief financial officer, chief accounting officer, or any equivalent position of the Company or in a comparable position at a significant subsidiary of the Company; (2) on the board of directors of the Parent Company or the Company; (3) as a member of the Audit Committee of Residential Capital, LLC or the Parent Company's Audit Committee; or (4) in any other position that would cause a violation of securities laws and regulations.

For purposes of the preceding four paragraphs, "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu, and its member firms; and, in all cases, any successor or assignee.

APPENDIX B

**GENERAL BUSINESS TERMS**
**GMAC Mortgage, LLC and Residential Funding Company, LLC**
**Engagement Letter Dated April 23, 2012**

This Appendix B is part of the engagement letter dated April 23, 2012 between Deloitte & Touche LLP and GMAC Mortgage, LLC and Residential Funding Company, LLC.

1.  Limitation on Liability, Release, and Indemnification.

    a)  The Company agrees that D&T (as defined below) and its personnel will not be liable to the Company for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by the Company to D&T pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of D&T. In no event will D&T or its personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this engagement.

    b)  The Company agrees to release and indemnify D&T and its personnel from all Claims attributable to any misrepresentation by the Company's management.

    c)  The Company agrees to indemnify and hold harmless D&T and its personnel from all Claims, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of D&T.

    d)  The provisions of this Paragraph 1 will apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise. In circumstances where all or any portion of the provisions of this Paragraph 1 are finally judicially determined to be unavailable, D&T's aggregate liability for any Claim shall not exceed an amount that is proportional to the relative fault that D&T's conduct bears to all other conduct giving rise to such Claim.

2.  Independent Contractor. D&T is an independent contractor and that D&T is not, and will not be considered to be, an agent, partner, fiduciary, or representative of the Company or the Audit Committee of Residential Capital, LLC.

3.  Survival. The agreements and undertakings of the Company contained in the engagement letter to which these terms are attached (the "engagement letter"), together with the appendices to the engagement letter including these terms, will survive the completion or termination of this engagement.

4.  Assignment and Subcontracting. Except as provided below, no party may assign any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other parties. The Company hereby consents to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

5.  Severability. If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

Regulation AB
Engagement Letter
Page 7

6.  <u>Force Majeure</u>.  No party shall be deemed to be in breach of this engagement letter (including its appendices) as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

7.  <u>Protection of Personal information</u>.  To the extent that any information obtained by D&T from or on behalf of the Company or its employees in connection with the performance of services under the engagement letter relates to a resident of Massachusetts and constitutes "Personal Information" as defined in 201 CMR 17.02 (as may be amended), D&T shall comply with the obligations of 201 CMR 17.00 et. seq. (as may be amended), entitled "Standards for the Protection of Personal Information of Residents of the Commonwealth," with respect to such information.

8.  <u>Dispute Resolution</u>.  Any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement (a "Dispute") shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix C and made a part hereof.

**APPENDIX C**

**DISPUTE RESOLUTION PROVISION**
**GMAC Mortgage, LLC and Residential Funding Company, LLC**
**Engagement Letter Dated April 23, 2012**

This Appendix C is part of the engagement letter dated April 23, 2012 between Deloitte & Touche LLP and GMAC Mortgage, LLC and Residential Funding Company, LLC.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of Disputes and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

<u>Mediation:</u> All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

<u>Arbitration Procedures:</u> If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the laws of the State of New York (without giving effect to its choice of law principles) in connection with the Dispute. The arbitrators shall have no power to award punitive, exemplary, or other damages not based on a party's actual damages (and the parties expressly waive their right to receive such damages). The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

<u>Costs:</u> Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

# Deloitte.

Deloitte & Touche LLP
200 Renaissance Center
Suite 3900
Detroit, 48243
USA

Tel: +1 313 396 3000
Fax: +1 313 586 3618
www.deloitte.com

April 23, 2012

Mr. Joseph Pensabene
Executive Vice President, GMAC Mortgage, LLC
Chief Servicing Officer, GMAC Mortgage, LLC
Executive Vice President, Residential Funding Company, LLC
1100 Virginia Drive
Fort Washington, PA 19034

Dear Mr. Pensabene:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as independent accountants to examine the assertion of GMAC Mortgage, LLC as it relates to the Company's primary servicing platform and the assertion of Residential Funding Company, LLC as it relates to the Company's master servicing platform, both, wholly-owned subsidiaries of Residential Capital, LLC (the "Company"), which is a wholly-owned subsidiary of Ally Financial Inc. (the "Parent Company") regarding compliance with their minimum servicing standards (the "Servicing Policy") as of December 31, 2012 and for the period from January 1, 2012 through December 31, 2012 ("Management's Assertions"). Mr. Tom Robinson will be responsible for the services that D&T performs for the Company hereunder.

This engagement to perform an examination of Management's Assertions will be conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants ("AICPA standards").

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions set forth herein and in the accompanying appendices. Such terms and conditions shall be effective as of the date of the commencement of such services.

**Examination of Management's Assertions**

An examination includes examining, on a test basis, evidence supporting Management's Assertions and performing such other procedures as D&T considers necessary in the circumstances. An examination conducted in accordance with AICPA standards is designed to obtain reasonable, rather than absolute, assurance about Management's Assertions taken as a whole. An examination is not designed to express an opinion on individual amounts or statements within an assertion. An examination is not designed to provide assurance on internal control or to identify deficiencies in internal control.

The objective of the examination is the expression of an opinion on whether Management's Assertions is presented or fairly stated, in all material respects, based on the criteria set forth in the Servicing Policy. Our ability to express an opinion, and the wording thereof, will, of course, be dependent on the facts and circumstances at the date of our attest report. If, for any reason, we are unable to complete the

Member of
Deloitte Touche Tohmatsu

USAP
Engagement Letter
Page 2

examination or are unable to form or have not formed an opinion, we may decline to express an opinion
or decline to issue a report as a result of this engagement. If we are unable to complete the examination or
if the attest report to be issued by D&T as a result of this engagement requires modification, the reasons
therefor will be discussed with management and the Company's Audit Committee or the Parent
Company's Audit Committee, as appropriate.

### Management's Responsibilities

Appendix A describes management's responsibilities for (1) Management's Assertions, (2) providing us
with a representation letter, (3) the process for obtaining preapproval of services (4) independence matters
relating to financial interests and providing certain services, and (5) independence matters relating to
hiring.

### Responsibility of the Audit Committee

We acknowledge that the Parent Company's Audit Committee is directly responsible for the appointment,
compensation, and oversight of our work; accordingly, except as otherwise specifically noted, we will
report directly to the Parent Company's Audit Committee, as appropriate. You have advised us that the
services to be performed under this engagement letter, including, where applicable, the use by D&T of
affiliates or related entities as subcontractors in connection with this engagement, have been approved by
the Parent Company's Audit Committee in accordance with its established preapproval policies and
procedures.

### Other Communications Arising From the Examination

In connection with the performance of the examination, we may have other comments for management on
matters observed by us and possible ways to improve the efficiency of the Company's operations or other
recommendations concerning internal control. With respect to these other communications, it is our
practice to discuss all comments, if appropriate, with the level of management responsible for the matters,
prior to their communication to senior management or the Company's Audit Committee and the Parent
Company's Audit Committee.

### Fees

D&T's fees are based on the amount of time required at various levels of responsibility.  Our fees will be
invoiced as part of our overall fees for the Company's mortgage servicing compliance engagements
which are expected to approximate $1,465,000.

### Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites

If the Company intends to publish or otherwise reproduce in any document our attest report, or otherwise
make reference to D&T in a document that contains other information in addition to Management's
Assertions (e.g., in a periodic filing with a regulator, in a debt or equity offering circular, or in a private
placement memorandum), thereby associating D&T with such document, the Company agrees that its
management will provide D&T with a draft of the document to read and obtain our approval for the
inclusion or incorporation by reference of our attest report, or the reference to D&T, in such document
before the document is printed and distributed. The inclusion or incorporation by reference of our attest
report in any such document would constitute the reissuance of our report. The Company also agrees that
its management will notify us and obtain our approval prior to including our attest report on an electronic
site.

USAP
Engagement Letter
Page 3

Our engagement to perform the services described herein does not constitute our agreement to be associated with any such documents published or reproduced by or on behalf of the Company. Any request by the Company to reissue our attest report, to consent to or acknowledge D&T's awareness of its inclusion or incorporation by reference in an offering or other document, or to agree to its inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request. The estimated fees outlined herein do not include any services that would need to be performed in connection with any such request; fees for such services (and their scope) would be subject to the mutual agreement of the Company and D&T at such time as D&T is engaged to perform the services and would be described in a separate engagement letter.

\* \* \* \* \*

This engagement letter, including the Appendices A – C attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes all other prior and contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

Deloitte & Touche LLP

Accepted and agreed to by GMAC Mortgage, LLC and Residential Funding Company, LLC:

By: _Joseph (Amidone_

Title: _EVP/Chief Servicing Officer_

Date: _4/26/12_

**APPENDIX A**

**MANAGEMENT'S RESPONSIBILITIES**
**GMAC Mortgage, LLC and Residential Funding Company, LLC**
**Engagement Letter Dated April 23, 2012**

This Appendix A is part of the engagement letter dated April 23, 2012 between Deloitte & Touche LLP and GMAC Mortgage, LLC and Residential Funding Company, LLC.

**Examination of Management's Assertions**

Management's Assertions are the responsibility of the Company's management. In this regard, management has the responsibility for, among other things:

- Determining that the criteria selected are appropriate for its purposes

- Establishing and maintaining effective internal control over the Company's compliance with the servicing criteria as set forth in the Servicing Policy

- Identifying and ensuring that the Company complies with the laws and regulations applicable to its activities and informing us of any known material violations of such laws or regulations

- Properly recording transactions in the Company's records

- Adjusting Management's Assertions to correct material misstatements

- Making determinations as to the relevancy of information to be included

- Making appropriate estimates and assumptions that affect reported information

- The overall accuracy of the Management's Assertions and its conformity with the criteria set forth in the Servicing Policy

- Making all records relevant to Management's Assertions and related information available to us

**Representation Letter**

We will make specific inquiries of the Company's management about the representations embodied in Management's Assertions. As part of our examination procedures, we will request that management provide us with a representation letter acknowledging management's responsibility for Management's Assertions and for selecting the criteria, stating management's written assertion about the subject matter based on the criteria, and confirming certain representations made to us during our examination. The responses to those inquiries and related written representations of management required by the AICPA standards are part of the evidential matter that D&T will rely on in forming an opinion Management's Assertions.

**Process for Obtaining Preapproval of Services**

Management is responsible for the coordination of obtaining the preapproval of the Parent Company Audit Committee, in accordance with the Parent Company Audit Committee's preapproval process, for any services to be provided by D&T to the Company.

**Independence Matters Relating to Financial Interests and Providing Certain Services**

In connection with our engagement, D&T, management of the Company, working together with management of the Parent Company, and the Parent Company Audit Committee will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence and ensuring compliance with the securities laws and regulations. D&T will communicate to its partners, principals, and employees that the Company is an attest client. Management of the Company, working together with management of the Parent Company, will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, has policies and procedures in place for the purpose of ensuring that neither the Company nor any such subsidiary or other entity will act to engage D&T or accept from D&T any service that either has not been subjected to their or the Parent Company's preapproval process or that under the Securities and Exchange Commission (SEC) or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Tom Robinson.

In connection with the foregoing, the Company agrees to furnish to D&T and keep D&T updated with respect to (1) a corporate tree that identifies the legal names of the Company's affiliates (as defined in SEC Rule 2-01(f)(4) of Regulation S-X) (e.g., parents, subsidiaries, investors, or investees), together with the ownership relationship among such entities, and (2) equity and debt securities of the Company and its affiliates (including, without limitation, tax-advantaged debt of such entities that is issued through governmental authorities) that are available to individual investors (whether through stock, bond, commodity, futures, or similar markets, or equity, debt, or any other securities offerings), together with related securities identification information (e.g., ticker symbols or CUSIP®, ISIN®, or Sedol® numbers). The Company acknowledges and consents that such information may be treated by D&T as being in the public domain.

**Independence Matters Relating to Hiring**

Management, working together with management of the Parent Company, will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees for certain positions. Management of the Company, working together with the management of the Parent Company, will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, also has policies and procedures in place for purposes of ensuring that D&T's independence will not be impaired by hiring a former or current D&T partner, principal, or professional employee in an accounting role or financial reporting oversight role that would cause a violation of securities laws and regulations. Any employment opportunities with the Company for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Tom Robinson and approved by the Parent Company's Audit Committee before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee, if such opportunity relates to serving (1) as chief executive officer, controller, chief financial officer, chief accounting officer, or any equivalent position of the Company or in comparable position at a significant subsidiary of the Company; (2) on the board of directors of the Parent Company or Company; (3) as a member of the Audit Committee of Residential Capital, LLC or the Parent Company's Audit Committee; or (4) in any other position that would cause a violation of securities laws and regulations.

For purposes of the preceding four paragraphs, "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu, and its member firms; and, in all cases, any successor or assignee.

**APPENDIX B**

**GENERAL BUSINESS TERMS**
**GMAC Mortgage, LLC and Residential Funding Company, LLC**
**Engagement Letter Dated April 23, 2012**

This Appendix B is part of the engagement letter dated April 23, 2012 between Deloitte & Touche LLP and GMAC Mortgage, LLC and Residential Funding Company, LLC.

1. Limitation on Liability, Release, and Indemnification.

   a) The Company agrees that D&T (as defined below) and its personnel will not be liable to the Company for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by the Company to D&T pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of D&T. In no event will D&T or its personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this engagement.

   b) The Company agrees to release and indemnify D&T and its personnel from all Claims attributable to any misrepresentation by the Company's management.

   c) The Company agrees to indemnify and hold harmless D&T and its personnel from all Claims, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of D&T.

   d) The provisions of this Paragraph 1 will apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise. In circumstances where all or any portion of the provisions of this Paragraph 1 are finally judicially determined to be unavailable, D&T's aggregate liability for any Claim shall not exceed an amount that is proportional to the relative fault that D&T's conduct bears to all other conduct giving rise to such Claim.

2. Independent Contractor. D&T is an independent contractor and that D&T is not, and will not be considered to be, an agent, partner, fiduciary, or representative of the Company or the Audit Committee of Residential Capital, LLC.

3. Survival. The agreements and undertakings of the Company contained in the engagement letter to which these terms are attached (the "engagement letter"), together with the appendices to the engagement letter including these terms, will survive the completion or termination of this engagement.

4. Assignment and Subcontracting. Except as provided below, no party may assign any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other parties. The Company hereby consents to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

5. <u>Severability.</u> If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

6. <u>Force Majeure</u>. No party shall be deemed to be in breach of this engagement letter (including its appendices) as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

7. <u>Protection of Personal information</u>. To the extent that any information obtained by D&T from or on behalf of the Company or its employees in connection with the performance of services under the engagement letter relates to a resident of Massachusetts and constitutes "Personal Information" as defined in 201 CMR 17.02 (as may be amended), D&T shall comply with the obligations of 201 CMR 17.00 et, seq, (as may be amended), entitled "Standards for the Protection of Personal Information of Residents of the Commonwealth," with respect to such information.

8. <u>Dispute Resolution.</u> Any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement (a "Dispute") shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix C and made a part hereof,

APPENDIX C

**DISPUTE RESOLUTION PROVISION**
**GMAC Mortgage, LLC and Residential Funding Company, LLC**
**Engagement Letter Dated April 23, 2012**

This Appendix C is part of the engagement letter dated April 23, 2012 between Deloitte & Touche LLP and GMAC Mortgage, LLC and Residential Funding Company, LLC.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of Disputes and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

<u>Mediation:</u>  All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions.  If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

<u>Arbitration Procedures:</u>  If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York.  The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators.  Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules.  No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision.  Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the laws of the State of New York (without giving effect to its choice of law principles) in connection with the Dispute.  The arbitrators shall have no power to award damages inconsistent with the terms of the engagement letter or its appendices, including, without limitation, the limitation on liability, release and indemnification provisions contained therein.  The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules.  Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests.  Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

<u>Costs:</u>  Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

# Deloitte.

Deloitte & Touche LLP
200 Renaissance Center
Suite 3900
Detroit, MI 48243-1895
USA

Tel:  +1 313 396 3000
Fax:  +1 313 396 3618
www.deloitte.com

July 9, 2012

Ms. Pamela West
Chairperson of the Audit Committee
Residential Capital, LLC
One Meridian Crossings
Minneapolis, MN 55423

Mr. James Whitlinger
Chief Financial Officer
Residential Capital, LLC
1100 Virginia Drive
Fort Washington, PA 19034

Dear Ms. West and Mr. Whitlinger:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as independent auditors for Residential Capital, LLC (the "Company").  Mr. Tom Robinson will be responsible for the services that we perform for the Company hereunder.

In addition to the audit and review services we are engaged to provide under this engagement letter, we would also be pleased to assist the Company on issues as they arise throughout the year. Hence, we hope that you will call Mr. Robinson whenever you believe D&T can be of assistance. This assistance will require approval by the Company's Audit Committee in accordance with its preapproval policies and procedures.

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions set forth herein and in the accompanying appendices.  This engagement letter, together with the accompanying appendices  amends and restates the engagement letter dated April 20, 2012. Such terms and conditions shall be effective as of the date of the commencement of such services.

**Audit of Financial Statements**

Our engagement is to perform a financial statement audit in accordance with auditing standards generally accepted in the United States of America ("generally accepted auditing standards"). The objective of a financial statement audit conducted in accordance with generally accepted auditing standards is to express an opinion on the fairness of the presentation of the Company's financial statements for the year ending December 31, 2012, in conformity with accounting principles generally accepted in the United States of America ("generally accepted accounting principles"), in all material respects.

Appendix A contains a description of our responsibilities and a financial statement audit under generally accepted auditing standards.

Our ability to express an opinion and the wording thereof will, of course, be dependent on the facts and circumstances at the date of our report. If, for any reason, we are unable to complete the financial statement audit or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of this engagement. If we are unable to complete our financial statement audit or if the report to be issued by D&T as a result of this engagement requires modification, the reasons therefor will be discussed with the Audit Committee and management of the Company.

**Reviews of Interim Financial Information**

Residential Capital, LLC – Engagement Letter
Page 2

At the request of management, we will also perform reviews of the Company's interim financial information in accordance with standards established by the American Institute of Certified Public Accountants ("interim review standards") for each of the quarters in the year ending December 31, 2012. The objective of a review of interim financial information performed in accordance with interim review standards is to provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with generally accepted accounting principles.

Appendix B contains a description of an interim review under the interim review standards.

We will issue a written review report upon completion of each of our reviews indicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with generally accepted accounting principles.

If we become aware of deficiencies in internal control so significant that they would preclude management's preparation of interim financial information in conformity with generally accepted accounting principles, we may be precluded from completing our review and, accordingly, we would be unable to issue a review report on the interim financial information. If, for any reason, we are unable to complete our review, the reasons therefor will be discussed with the Audit Committee and management of the Company.

## Management's Responsibilities

Appendix C describes management's responsibilities for (1) the financial statements, (2) representation letters, (3) the process for obtaining preapproval of services, (4) program and subscription services, (5) independence matters relating to providing certain services and (6) independence matters relating to hiring.

## Audit Committee's Responsibility and Auditor Communications

As independent auditors of the Company, we acknowledge that the Audit Committee of Residential Capital, LLC is directly responsible for the appointment, compensation, and oversight of our work, and accordingly, except as otherwise specifically noted, we will report directly to the Audit Committee of Residential Capital, LLC. You have advised us that the services to be performed under this engagement letter, including, where applicable, the use by D&T of affiliates or related entities as subcontractors in connection with this engagement, have been approved by the Company's Audit Committee in accordance with its established preapproval policies and procedures.

Appendix D describes various matters that we are required by generally accepted auditing standards and interim review standards to communicate with the Audit Committee and management of the Company.

## Fees

Our fees for this engagement will be billed based on the actual amount of time incurred, by the level of resource and rates per hour as follows:

| Level of Resource | Rate per Hour |
| --- | --- |
| Partner, Principal, or Director | $365 |
| Senior Manager | $290 |

Residential Capital, LLC – Engagement Letter
Page 3

| Manager | $265 |
| Senior or equivalent | $215 |
| Staff or equivalent | $175 |

Based on the rates noted above, we estimate that our fees for the audit of the financial statements will approximate between $2 and $2.5 million, and our fees for the second and third quarter interim reviews will approximate between $300 and $650 thousand (in total). We will notify you promptly of any circumstances we encounter that could significantly affect the amount of our fees and discuss with you any additional fees, as necessary.

Additional services requested beyond the scope of services described herein would be subject to the mutual agreement of the Company and D&T at such time as D&T is engaged to perform the services and would be described in a separate engagement letter.

**Proposed Transaction and Report Distribution**

We understand that the Company has filed for protection under Chapter 11 of the U.S. Bankruptcy Code and is considering various strategic alternatives, including a sale of assets to a buyer(s) (the "Buyer") (the "Potential Transaction"). The Company agrees that the independent auditor's report of D&T to be issued on the Company's financial statements for the year ending December 31, 2012 and the review reports of D&T to be issued for any of the quarters in the year ending December 31, 2012 will not be included, incorporated by reference, or referred to in any public filings with the Securities and Exchange Commission ("SEC") without D&T's prior written consent. The Company also agrees that it will provide a copy of this engagement letter to the Buyer for the Buyer's information; D&T acknowledges that the Company will provide a copy of this letter to Nationstar Mortgage LLC and any other potential buyer. The Company also agrees that, before a Buyer will be permitted to obtain or read a copy of any of our reports, the Company will obtain from such Buyer for our benefit and will provide to us the Buyer's written agreement (in the form appended to this letter as Appendix E) regarding the use and distribution of our reports.

For purposes of this engagement letter, together with the appendices attached hereto, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

With respect to the conduct of the audit and reporting the results thereof, materiality will be evaluated and determined in the context of the financial statements taken as a whole. We have not evaluated materiality on the basis of any Potential Transaction; consequently, matters may exist or have existed that would be assessed differently by the Company or a Buyer.

An audit cannot be a substitute for a party's own due diligence investigation, nor is it intended or designed to do so. Likewise, an audit does not comprehend all matters pertinent or necessary to a party's evaluation of a Potential Transaction, and we make no representation as to the sufficiency of this audit for the Company's or a Buyer's purposes in connection with a Potential Transaction.

**Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites**

If the Company intends to publish or otherwise reproduce in any document our report on the Company's financial statements issued as a result of this engagement, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements (e.g., in a periodic filing with the SEC or other regulator, in a debt or equity offering circular, in a registration statement, or in a private placement memorandum), thereby associating D&T with such document, the Company agrees that its management will provide or cause the buyer to provide D&T with a draft of the

Residential Capital, LLC – Engagement Letter
Page 4

document to read and obtain our approval for the inclusion or incorporation by reference of any of our reports, or the reference to D&T, in such document before the document is filed, printed and distributed. The inclusion or incorporation by reference of any of our reports in any such document would constitute the reissuance of such reports. The Company also agrees that its management will notify us and obtain our approval prior to including any of our reports on an electronic site.

Our engagement to perform the services described herein does not constitute our agreement to be associated with any such documents published or reproduced by or on behalf of the Company. Any request by the Company to reissue any report issued as a result of this engagement, to consent to any such report's inclusion or incorporation by reference in an offering or other document, or to agree to its inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request. Fees for such services (and their scope) would be subject to the mutual agreement of the Company and D&T at such time as D&T is engaged to perform the services.

* * * * * *

The Company agrees that it will promptly seek the Bankruptcy Court's approval of this agreement. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to us in all respects. In addition to D&T's other rights or remedies hereunder, we may, in our sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects to D&T's retention by the Company in the case on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of D&T is not issued by the Bankruptcy Court on or before sixty (60) days from the date hereof on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to us, or (c) the Application is denied by the Bankruptcy Court. In such event, the Company hereby agrees to withdraw or amend, promptly upon D&T's request, any application filed, or to be filed with the Bankruptcy Court to retain D&T's services in the bankruptcy proceeding.

Residential Capital, LLC – Engagement Letter
Page 5

This engagement letter, including Appendices A through G attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

Deloitte & Touche LLP

Acknowledged and approved on behalf of the
Audit Committee of Residential Capital, LLC:

By: _____

Title: _____

Date: _____

Accepted and agreed to by
Residential Capital, LLC:

By: _____

Title: CFO

Date: 7/16/12

Residential Capital, LLC – Engagement Letter
Page 6

**APPENDIX A**

## DESCRIPTION OF OUR RESPONSIBILITIES AND A FINANCIAL STATEMENT AUDIT UNDER GENERALLY ACCEPTED AUDITING STANDARDS
### Residential Capital, LLC
### Year Ending December 31, 2012

This Appendix A is part of the engagement letter dated July 9, 2012 (which amends and restates the engagement letter, dated April 20, 2012) between Deloitte & Touche LLP and Residential Capital, LLC and approved by the Audit Committee of Residential Capital, LLC.

### Our Responsibilities

Our responsibilities under generally accepted auditing standards include forming and expressing an opinion about whether the financial statements that have been prepared by management with the oversight of the Audit Committee of Residential Capital, LLC are presented fairly, in all material respects, in conformity with generally accepted accounting principles. The audit of the financial statements does not relieve management or the Audit Committee of Residential Capital, LLC of their responsibilities.

### Components of a Financial Statement Audit

A financial statement audit includes the following:

- Obtaining an understanding of the Company and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing, and extent of further audit procedures

- Consideration of internal control over financial reporting, as a basis for designing audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting

- Examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements

- Inquiring directly of the Audit Committee of Residential Capital, LLC regarding its views about the risks of fraud and whether the Audit Committee of Residential Capital, LLC has knowledge of any fraud or suspected fraud affecting the Company

- Assessing the accounting principles used and significant estimates made by management

- Evaluating the overall financial statement presentation

### Reasonable Assurance

An audit is planned and performed to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud. However, because of the characteristics of fraud, a properly planned and performed audit may not detect a material misstatement. Therefore, an audit conducted in accordance with generally accepted auditing standards is designed to obtain reasonable, rather than absolute, assurance that the financial statements are free of material misstatement. Also, a financial statement audit is not designed to detect error or fraud that is immaterial to the financial statements, nor is it designed to provide assurance on internal control or to identify control deficiencies.

Residential Capital, LLC – Engagement Letter
Page 7

**APPENDIX B**

**DESCRIPTION OF AN INTERIM REVIEW UNDER THE INTERIM REVIEW STANDARDS**
**Residential Capital, LLC**
**Year Ending December 31, 2012**

This Appendix B is part of the engagement letter dated July 9, 2012 (which amends and restates the engagement letter, dated April 20, 2012) between Deloitte & Touche LLP and Residential Capital, LLC and approved by the Audit Committee of Residential Capital, LLC.

A review of interim financial information is substantially less in scope than an audit conducted in accordance with auditing standards generally accepted in the United States of America, the objective of which is the expression of an opinion regarding the financial information taken as a whole. Accordingly, we will not express an opinion on the interim financial information.

A review consists principally of performing analytical procedures and making inquiries of persons responsible for financial and accounting matters, and does not contemplate (a) tests of accounting records through inspection, observation, or confirmation; (b) tests of controls to evaluate their effectiveness; (c) the obtainment of corroborating evidence in response to inquiries; or (d) the performance of certain other procedures ordinarily performed in an audit. A review may bring to our attention significant matters affecting the interim financial information, but it does not provide assurance that we will become aware of all significant matters that would be identified in an audit.

A review also includes obtaining sufficient knowledge of the Company's business and its internal control as it relates to the preparation of both annual and interim financial information to:

- Identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence

- Select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with generally accepted accounting principles.

A review is not designed to provide assurance on internal control or to identify significant deficiencies and material weaknesses in internal control.

Residential Capital, LLC – Engagement Letter
Page 8

**APPENDIX C**

**MANAGEMENT'S RESPONSIBILITIES**
**Residential Capital, LLC**
**Year Ending December 31, 2012**

This Appendix C is part of the engagement letter dated July 9, 2012 (which amends and restates the engagement letter, dated April 20, 2012) between Deloitte & Touche LLP and Residential Capital, LLC and approved by the Audit Committee of Residential Capital, LLC.

**Financial Statements**

The overall accuracy of the financial statements, including interim financial information, and their conformity with generally accepted accounting principles is the responsibility of the Company's management. In this regard, management has the responsibility for, among other things:

- Selecting and applying the accounting policies

- Establishing and maintaining effective internal control over financial reporting

- Designing and implementing programs and controls to prevent and detect fraud

- Identifying and ensuring that the Company complies with the laws and regulations applicable to its activities and informing us of any known material violations of such laws or regulations

- Adjusting the financial statements to correct material misstatements

- Providing D&T with (1) access to all information of which management is aware that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters, (2) additional information that we may request from management for the purpose of our audit, and (3) unrestricted access to personnel within the Company from whom we determine it necessary to obtain evidence

**Representation Letters**

We will make specific inquiries of the Company's management about the representations embodied in the financial statements. Additionally, we will request that management provide to us the written representations the Company is required to provide to its independent auditors under generally accepted auditing standards and the interim review standards. As part of our audit procedures, we will request that management provide us with a representation letter that includes, among other things:

- Acknowledgment of management's responsibility for the preparation of the financial statements

- Affirmation of management's belief that the effects of any uncorrected financial statement misstatements aggregated by us during the current audit engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole

Residential Capital, LLC -- Engagement Letter
Page 9

We will also request that management confirm certain representations made to us during our audit. The responses to those inquiries and related written representations of management required by generally accepted auditing standards are part of the evidential matter that D&T will rely on in forming its opinion on the Company's financial statements.

We will also request a similar representation letter as part of our interim review procedures.

**Process for Obtaining Preapproval of Services**

Management is responsible for the coordination of obtaining the preapproval of the Audit Committee of Residential Capital, LLC in accordance with its preapproval process, for any services to be provided by D&T to the Company.

**Program and Subscription Services**

D&T makes available to clients and non-clients, primarily free of charge, but in some cases with a fee, various educational programs and seminars as well as informational and other tools. Such programs, seminars, and tools may take the form of, among other things, live programs, webcasts, podcasts, websites, database subscriptions, checklists, research reports, surveys, and similar or related tools and services ("programs and subscriptions"). These programs and subscriptions may include, among other things, local office seminars, the Dbrief Webcasts series, Technical Library, Deloitte Recap, the CFO Conference. In some instances, D&T may include complimentary rooms and meals as part of the programs or seminars. The Company hereby confirms that any use or receipt by the Company or its affiliates of these subscriptions or attendance at these programs will be approved by the Audit Committee of Residential Capital, LLC in accordance with its established preapproval policies and procedures.

**Independence Matters Relating to Providing Certain Services**

In connection with our engagement, D&T, management of the Company and the Audit Committee of Residential Capital, LLC will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence and ensuring compliance with the securities laws and regulations. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, has policies and procedures in place for the purpose of ensuring that neither the Company nor any such subsidiary or other entity will act to engage D&T or accept from D&T any service that either has not been subjected to their or the Company's preapproval process or that under SEC or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Robinson.

**Independence Matters Relating to Hiring**

Management will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees for certain positions. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, also has policies and procedures in place for purposes of ensuring that D&T's independence will not be impaired by hiring a former or current D&T partner, principal, or professional employee in an accounting role or financial reporting oversight role that would cause a violation of securities laws and regulations. Any employment opportunities with the Company for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Robinson and approved by the Audit Committee of Residential Capital, LLC before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee, if such opportunity relates to serving (1) as chief executive officer, controller, chief financial officer, chief accounting officer, or any equivalent position for the Company or in a comparable position at a significant subsidiary of the Company; (2) on the board of directors of the Company; (3) as a member of the Audit Committee of Residential Capital, LLC; or (4) in any other position that would cause a violation of securities laws and regulations.

Residential Capital, LLC – Engagement Letter
Page 10

For purposes of the preceding four paragraphs, "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu and its member firms; and, in all cases, any successor or assignee.

Residential Capital, LLC – Engagement Letter
Page 11

**APPENDIX D**

**COMMUNICATIONS WITH THE AUDIT COMMITTEE**
**Residential Capital, LLC**
**Year Ending December 31, 2012**

This Appendix D is part of the engagement letter dated July 9, 2012 (which amends and restates the engagement letter, dated April 20, 2012) between Deloitte & Touche LLP and Residential Capital, LLC and approved by the Audit Committee of Residential Capital, LLC.

**Significant Matters**

We are responsible for communicating significant matters related to the audit that are, in our professional judgment, relevant to the responsibilities of the Audit Committee of Residential Capital, LLC in overseeing the financial reporting process.

**Fraud and Illegal Acts**

We will report directly to the Audit Committee of Residential Capital, LLC any fraud of which we become aware that involves senior management and any fraud (whether caused by senior management or other employees) of which we become aware that causes a material misstatement of the financial statements. We will report to senior management any fraud perpetrated by lower-level employees of which we become aware that does not cause a material misstatement of the financial statements; however, we will not report such matters directly to the Audit Committee of Residential Capital, LLC unless otherwise directed by the Audit Committee of Residential Capital, LLC.

We will inform the appropriate level of senior management of the Company and determine that the Audit Committee of Residential Capital, LLC is adequately informed with respect to illegal acts that have been detected or have otherwise come to our attention in the course of our audit or reviews, unless the illegal acts are clearly inconsequential.

**Internal Control Matters**

We will report directly, in writing, to the Audit Committee of Residential Capital, LLC and the Company's management all significant deficiencies and material weaknesses identified during the audit and interim reviews as required by generally accepted auditing standards. Our written communication will distinguish clearly between those matters considered by D&T to be significant deficiencies and those considered by D&T to be material weaknesses. If we become aware that the oversight of the Company's external financial reporting and internal control over financial reporting, as defined by generally accepted auditing standards, by the Audit Committee of Residential Capital, LLC is ineffective, we will communicate that information in writing to the board of directors of the Company.

A significant deficiency is a deficiency, or a combination of deficiencies, in internal control over financial reporting, that is less severe than a material weakness, yet important enough to merit attention by those responsible for oversight of the company's financial reporting. A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual financial statements will not be prevented or detected on a timely basis.

Residential Capital, LLC – Engagement Letter
Page 12

**Other Matters**

Generally accepted auditing standards do not require us to design procedures for the purpose of identifying other matters to communicate with the Audit Committee of Residential Capital, LLC. However, we will communicate to the Audit Committee of Residential Capital, LLC matters required by generally accepted auditing standards.

**Communications Related to Interim Reviews**

We will report to the Audit Committee and management of the Company, matters that cause us to believe that material modifications should be made to the interim financial information for it to conform with generally accepted accounting principles. When conducting our review of interim financial information, we will also determine whether any other matters required by regulations as they relate to interim financial information have been identified. If such matters have been identified, we will communicate them to the Audit Committee of Residential Capital, LLC prior to the issuance of interim financial information or, if such communication cannot be made before the issuance, as soon as practicable under the circumstances.

Residential Capital, LLC – Engagement Letter
Page 13

**APPENDIX E**

**BUYER SUPPLEMENT**
**Residential Capital, LLC**
**Year Ending December 31, 2012**

This Appendix E is part of the engagement letter dated July 9, 2012 (which amends and restates the engagement letter, dated April 20, 2012) between Deloitte & Touche LLP and Residential Capital, LLC and approved by the Audit Committee of Residential Capital, LLC.

This Appendix is to be provided to a Buyer for its signature and an executed copy returned to Deloitte & Touche LLP before such Buyer may be provided a copy of the independent auditors' report or review report of Deloitte & Touche LLP.

[*Name of prospective buyer*], referred to throughout the attached engagement letter and this Appendix as the "Buyer," agrees that the independent auditors' report of Deloitte & Touche LLP ("D&T") on Residential Capital, LLC's financial statements for the year ending December 31, 2012 and any review reports of D&T to be issued for any of the quarters in the year ending December 31, 2012 will not be included, incorporated by reference, or referred to in any public filings with the Securities and Exchange Commission without D&T's prior written consent.

If [*name of prospective buyer*], or those acting on its behalf, intends to publish or otherwise reproduce in any document D&T's report on the financial statements referred to above, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements referred to above (e.g., in a periodic filing with a regulator, in a debt or equity offering circular, in a registration statement, or in a private placement memorandum), thereby associating D&T with such document, [*name of prospective buyer*] agrees that its management will provide D&T with a draft of the document to read and obtain D&T's approval for the inclusion or incorporation by reference of D&T's report, or the reference to D&T, in such document before the document is printed and distributed. The inclusion or incorporation by reference of D&T's report in any such document would constitute the reissuance of D&T's report. [*Name of prospective buyer*] also agrees that its management will notify D&T and obtain D&T's approval prior to permitting D&T's report to be included on an electronic site.

D&T's engagement with Residential Capital, LLC to perform the services described in the engagement letter between D&T and Residential Capital, LLC does not constitute D&T's agreement to be associated with any such documents published or reproduced by or on behalf of [*name of prospective buyer*]. Any request by [*name of prospective buyer*] to reissue D&T's report, to consent to its inclusion or incorporation by reference in an offering or other document, or to agree to its inclusion on an electronic site will be considered by D&T based on the facts and circumstances existing at the time of such request.

Accepted and agreed to by [*name of prospective buyer*]:

By:_____
Title:_____
Date:_____

Residential Capital, LLC – Engagement Letter
Page 14

**APPENDIX F**

**GENERAL BUSINESS TERMS**
**Residential Capital, LLC**
**Year Ending December 31, 2012**

This Appendix F is part of the engagement letter to which these terms are attached (the engagement letter, including its appendices, the "engagement letter") dated July 9, 2012 (which amends and restates the engagement letter, dated April 20, 2012) between Deloitte & Touche LLP and Residential Capital, LLC and approved by the Audit Committee of Residential Capital, LLC.

1.   Independent Contractor. Nothing contained in these terms shall alter in any way the duties imposed by law on D&T in respect of the services to be provided by D&T under this engagement.  D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner, or representative of the Company or the Audit Committee of Residential Capital, LLC.

2.   Survival. The agreements and undertakings of the Company and the Audit Committee of Residential Capital, LLC contained in the engagement letter to which these terms are attached (the "engagement letter"), together with the appendices to the engagement letter including these terms, will survive the completion or termination of this engagement.

3.   Assignment and Subcontracting. Except as provided below, no party may assign any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other parties. The Company and the Audit Committee of Residential Capital, LLC hereby consent to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

4.   Severability. If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

5.   Force Majeure. No party shall be deemed to be in breach of the engagement letter (including its appendices) as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6.   Protection of Personal information.  To the extent that any information obtained by D&T from or on behalf of the Company or its employees in connection with the performance of services under the engagement letter relates to a resident of Massachusetts and constitutes "Personal Information" as defined in 201 CMR 17.02 (as may be amended), D&T shall comply with the obligations of 201 CMR 17.00 et. seq. (as may be amended), entitled "Standards for the Protection of Personal Information of Residents of the Commonwealth," with respect to such information.

7.   Dispute Resolution. Any Dispute (as defined below) arising out of or relating to services performed under the engagement letter prior to the effective date of (a) a plan of reorganization of the Company or (b) a court order dismissing the Company's chapter 11 case or cases (the "Effective Date") shall be brought in the Bankruptcy Court (or the District Court (as defined below), if such District Court withdraws the reference to the Bankruptcy Court).  All other Disputes, including, without limitation, Disputes arising out of or relating to services performed after the Effective Date and Disputes over which the Bankruptcy Court (or the District Court) does not have, retain or exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as

Residential Capital, LLC – Engagement Letter
Page 15

Appendix G and made a part hereof (the "Dispute Resolution Provision"). The parties each hereby irrevocably waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute. Except with respect to the interpretation and enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the Federal Arbitration Act), the laws of the State of New York (without giving effect to its choice of law principles) shall apply in arbitration or any other forum in connection with any Dispute. The foregoing shall be binding upon the parties and any and all of their respective permitted successors and assigns. This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

For Purposes of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement, and (b) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit.

Residential Capital, LLC – Engagement Letter
Page 16

**DISPUTE RESOLUTION PROVISION**
**Residential Capital, LLC**
**Year Ending December 31, 2012**

This Appendix G is part of the engagement letter dated July 9, 2012 (which amends and restates the engagement letter, dated April 20, 2012) between Deloitte & Touche LLP and Residential Capital, LLC and approved by the Audit Committee of Residential Capital, LLC.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of certain Disputes (as set forth in Appendix F) and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

Mediation: All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

Arbitration Procedures: If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

Costs: Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

# Deloitte.

Deloitte & Touche LLP
200 Renaissance Center
Suite 3900
Detroit, MI 48243-1895
USA

Tel: +1 313 396 3000
Fax: +1 313 396 3618
www.deloitte.com

July 9, 2012

Mr. James Whitlinger
Chief Financial Officer
Residential Capital, LLC
1100 Virginia Drive
Fort Washington, PA 19034

Dear Mr. Whitlinger:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as independent auditors for Residential Funding Company, LLC and GMAC Mortgage, LLC (collectively, the "Companies"), which are subsidiaries of Residential Capital, LLC (the "Parent Company"). Mr. Tom Robinson will be responsible for the services that we perform for the Companies hereunder.

In addition to the audit and review services we are engaged to provide under this engagement letter, we would also be pleased to assist the Companies on issues as they arise throughout the year. Hence, we hope that you will call Mr. Robinson whenever you believe D&T can be of assistance.

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions set forth herein and in the accompanying appendices. Such terms and conditions shall be effective as of the date of the commencement of such services.

## Audit of Financial Statements and Other Reporting

Our engagement is to perform audits in accordance with (1) auditing standards generally accepted in the United States ("generally accepted auditing standards"), (2) auditing standards applicable to financial audits contained in *Government Auditing Standards* issued by the Comptroller General of the United States ("generally accepted government auditing standards"), and (3) the Department of Housing and Urban Development (HUD) Handbook 2000.04 REV-2 CHG-2, *Consolidated Audit Guide for Audits of HUD Programs* (the "Guide"), as applicable. The objectives of an audit conducted in accordance with the aforementioned standards are to:

### For GMAC Mortgage, LLC as a Major Ginnie Mae Issuer of Mortgage-Backed Securities:

- Express an opinion on the fairness of the presentation of GMAC Mortgage, LLC's basic financial statements as they relate to its HUD mortgage banking programs for the year ended December 31, 2012, in conformity with accounting principles generally accepted in the United States of America (generally accepted accounting principles), in all material respects.

- Express an opinion on whether the supplementary information that accompanies the basic financial statements are presented fairly, in all material respects, in relation to the basic financial statements taken as a whole.

- Express an opinion on compliance with specific requirements applicable to a Ginnie Mae Issuer of Mortgage-Back Securities.

- Report on internal control related to our audit of the basic financial statements and related compliance with

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 2

requirements applicable to a Ginnie Mae Issuer of Mortgage-Backed Securities (i.e., whether the internal control provides reasonable assurance of compliance with laws and regulations where noncompliance could have a material effect on the basic financial statements or compliance with the requirements for a Ginnie Mae Issuer of Mortgage-Backed Securities).

- Report on illegal acts, findings and questioned costs, and comment on audit resolution matters relating to HUD programs, depending on the results of audit procedures performed.

## For GMAC Mortgage, LLC as a Major HUD-Approved Title II Nonsupervised Mortgagee:

- Express an opinion on the fairness of the presentation of GMAC Mortgage, LLC's basic financial statements as they relate to its HUD mortgage banking programs for the year ended December 31, 2012, in conformity with generally accepted accounting principles, in all material respects.

- Express an opinion on whether the supplementary information that accompanies the basic financial statements are presented fairly, in all material respects, in relation to the basic financial statements taken as a whole.

- Report on internal control related to our audit of the basic financial statements and related compliance with requirements applicable to a HUD-Approved Title II Nonsupervised Mortgagee (i.e., whether the internal control provides reasonable assurance of compliance with laws and regulations where noncompliance could have a material effect on the basic financial statements or compliance with requirements for a HUD-Approved Title II Nonsupervised Mortgagee).

- Express an opinion on compliance with specific requirements applicable to a HUD-Approved Title II Nonsupervised Mortgagee.

- Report on illegal acts, findings and questioned costs, and comment on audit resolution matters relating to HUD programs, depending on the results of audit procedures performed.

## For Residential Funding Company, LLC as a Minor HUD-Approved Title II Nonsupervised Mortgagee:

- Express an opinion on the fairness of the presentation of Residential Funding Company, LLC's basic financial statements as they relate to its HUD mortgage banking program for the year ended December 31, 2012, in conformity with generally accepted accounting principles, in all material respects.

- Express an opinion on whether the supplementary information that accompanies the basic financial statements are presented fairly, in all material respects, in relation to the basic financial statements taken as a whole.

- Report on compliance with specific program requirements for transactions selected for testing applicable to a HUD-Approved Title II Nonsupervised Mortgagee.

- Report on internal control related to our audit of the basic financial statements and related compliance with requirements applicable to a HUD-Approved Title II Nonsupervised Mortgagee (i.e., whether the internal control provides reasonable assurance of compliance with laws and regulations where noncompliance could have a material effect on the basic financial statements or compliance with requirements for a HUD-Approved Title II Nonsupervised Mortgagee).

- Report on illegal acts, findings and questioned costs, and comment on audit resolution matters relating to HUD programs, depending on the results of audit procedures performed.

Residential Funding Company, LLC and GMAC Mortgage, LLC-- Engagement Letter
Page 3

Appendix A contains a description of our responsibilities and the components of an audit under generally accepted auditing standards, generally accepted government auditing standards, and the Guide.

Our ability to express such opinions and the wording thereof will, of course, be dependent on the facts and circumstances at the date of our reports. If, for any reason, we are unable to complete the audits or are unable to form or have not formed such opinions, we may decline to express any opinion or decline to issue any report as a result of this engagement. If we are unable to complete our audits or if any report to be issued by D&T as a result of these engagements requires modification, the reasons therefore will be discussed with the Board of Directors of Residential Funding Company, LLC or the Board of Directors of GMAC Mortgage, LLC (collectively, the "Boards of Directors"), as appropriate, and the Companies' management.

Our reports on the Companies' internal control on administering the HUD-assisted programs and our reports on the Companies' compliance will state that they are intended solely for the information and use of the Boards of Directors and the Companies' management, Ginnie Mae, and HUD and are not intended to be and should not be used by or circulated, quoted, disclosed, or distributed to anyone other than these specified parties.

**Management's Responsibilities**

Appendix B describes management's responsibilities for (1) the basic financial statements, internal control over financial reporting, and compliance (2) representation letters, (3) independence matters relating to providing certain services and (4) independence matters relating to hiring.

**Responsibilities of the Boards of Directors**

As the independent auditor of the Companies, we acknowledge that the Boards of Directors are directly responsible for the appointment, compensation, and oversight of our work, and accordingly, except as otherwise specifically noted, we will report directly to the Boards of Directors. You have advised us that the services to be performed under this engagement letter, including, where applicable, the use by D&T of affiliates or related entities as subcontractors in connection with this engagement, have been approved by the Boards of Directors in accordance with its established preapproval policies and procedures.

**Communications with the Boards of Directors**

Appendix C describes various matters that we are required by generally accepted auditing standards, generally accepted government auditing standards, and the Guide to communicate with the Boards of Directors, and management.

**Fees**

Our fees for this engagement will be billed based on the actual amount of time incurred, by the level of resource and rates per hour as follows:

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 4

| Level of Resource | Rate per Hour |
|---|---|
| Partner, Principal, or Director | $365 |
| Senior Manager | $290 |
| Manager | $265 |
| Senior or equivalent | $215 |
| Staff or equivalent | $175 |

Based on the rates above we estimate that our fees for the incremental work to issue the separate financial statements for the Companies will approximate between $200,000 and $300,000. The remaining fees for the audit and compliance procedures detailed within this engagement letter have been included in the estimates or amounts provided in the separate engagement letters dated July 9, 2012 and April 23, 2012. We will notify you promptly of any circumstances we encounter that could significantly affect the amount of our fees and discuss with you any additional fees, as necessary.

Additional services requested beyond the scope of services described herein would be subject to the mutual agreement of the Companies and D&T at such time as D&T is engaged to perform the services and would be described in a separate engagement letter.

### Proposed Transaction and Report Distribution

We understand that the Companies have filed for protection under Chapter 11 of the U.S. Bankruptcy Code and are considering various strategic alternatives, including a sale of assets to a buyer(s) (the "Buyer") (the "Potential Transaction"). The Companies agree that the independent auditor's reports of D&T to be issued on the Companies' basic financial statements for the year ending December 31, 2012 will not be included, incorporated by reference, or referred to in any public filings with the Securities and Exchange Commission ("SEC") without D&T's prior written consent. The Companies also agree that it will provide a copy of this engagement letter to the Buyer for the Buyer's information. D&T acknowledges that the Companies will provide a copy of this letter to Nationstar Mortgage LLC and any other potential buyer. The Companies also agree that, before a Buyer will be permitted to obtain or read a copy of any of our reports, the Companies will obtain from such Buyer for our benefit and will provide to us the Buyer's written agreement (in the form appended to this letter as Appendix D) regarding the use and distribution of our reports.

For purposes of this engagement letter, together with the appendices attached hereto, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

With respect to the conduct of the audits and reporting the results thereof, materiality will be evaluated and determined in the context of the basic financial statements taken as a whole. We have not evaluated materiality on the basis of any Potential Transaction; consequently, matters may exist or have existed that would be assessed differently by the Companies or a Buyer.

An audit cannot be a substitute for a party's own due diligence investigation, nor is it intended or designed to do so. Likewise, an audit does not comprehend all matters pertinent or necessary to a party's evaluation of a Potential

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 5

Transaction, and we make no representation as to the sufficiency of these audits for the Companies' or a Buyer's purposes in connection with a Potential Transaction.

### Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites

If the Companies intend to publish or otherwise reproduce in any document any report issued as a result of this engagement, or otherwise makes reference to D&T in a document that contains other information in addition to the audited basic financial statements (e.g., in a periodic filing with the SEC or other regulator, in a debt or equity offering circular, in a registration statement, or in a private placement memorandum), thereby associating D&T with such document, the Companies agree that their management will provide or cause the buyer to provide D&T with a draft of the document to read and obtain our approval for the inclusion or incorporation by reference of any of our reports, or the reference to D&T, in such document before the document is filed, printed and distributed. The inclusion or incorporation by reference of any of our reports in any such document would constitute the reissuance of such reports. The Companies also agree that their management will notify us and obtain our approval prior to including any of our reports on an electronic site.

Our engagement to perform the services described herein does not constitute our agreement to be associated with any such documents published or reproduced by or on behalf of the Companies. Any request by the Companies to reissue any report issued as a result of this engagement, to consent to any such report's inclusion or incorporation by reference in an offering or other document, or to agree to any such report's inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request. The estimated fees outlined herein do not include any services that would need to be performed in connection with any such request; fees for such services (and their scope) would be subject to the mutual agreement of the Companies and D&T at such time as D&T is engaged to perform the services and would be described in a separate engagement letter.

### Access to Working Papers by Regulators

In accordance with the requirements of generally accepted government auditing standards, we are required to make all audit-related documents, including auditor's reports, working papers, and management letters, available to a federal agency or the Comptroller General of the United States upon their request for their regulatory oversight purposes. If such a request is made, we will inform you prior to providing such access. The working papers for this engagement are the property of D&T and constitute D&T's confidential information. We may request confidential treatment of D&T information. If we are requested to make photocopies of audit-related documents, we will maintain control over duplication of all information. The Companies hereby grant us permission to provide access to and to make and permit others to make photocopies of all audit-related documents, including auditor's reports, working papers, and management letters, to representatives of the United States General Accounting Office, HUD's Office of Inspector General, or other appropriate government audit staffs. D&T may require its personnel to supervise the photocopying of audit-related documents and may specify the location at which such documents may be photocopied. All professional and administrative services relating to such access (including photocopying) will be charged as an additional expense to the engagement.  The working papers relating to this audit will be retained by us for a minimum of three years from the date of the reports issued, or such longer period as required to satisfy legal and administrative requirements.

* * * * * *

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 6

The Companies agree that they will promptly seek the Bankruptcy Court's approval of this agreement.  The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to us in all respects.  In addition to D&T's other rights or remedies hereunder, we may, in our sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects to D&T's retention by the Companies in the case on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of D&T is not issued by the Bankruptcy Court on or before sixty (60) days from the date hereof on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to us, or (c) the Application is denied by the Bankruptcy Court.  In such event, the Companies hereby agree to withdraw or amend, promptly upon D&T's request, any application filed, or to be filed with the Bankruptcy Court to retain D&T's services in the bankruptcy proceeding.

This engagement letter, including Appendices A through F attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

*Deloitte & Touche LLP*


Accepted and agreed to by
Residential Funding Company, LLC and GMAC Mortgage, LLC:

By: _____

Title: _____CFO_____

Date: _____7/6/12_____

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 7

**APPENDIX A**

**DESCRIPTION OF OUR RESPONSIBILITIES AND AN AUDIT UNDER GENERALLY ACCEPTED AUDITING STANDARDS, GENERALLY ACCEPTED GOVERNMENT AUDITING STANDARDS, AND THE GUIDE
Year Ending December 31, 2012**

This Appendix A is part of the engagement letter dated July 9, 2012 between Deloitte & Touche LLP and Residential Funding Company, LLC and GMAC Mortgage, LLC.

**Our Responsibilities**

Our responsibilities under generally accepted auditing standards, generally accepted government auditing standards, and the Guide include:

- Forming and expressing an opinion about whether the basic financial statements that have been prepared by management with the oversight of the Boards of Directors are presented fairly, in all material respects, in conformity with generally accepted accounting principles.

- Reporting on the scope and results of testing of the Company's internal control over financial reporting and compliance with laws, regulations, and provisions of contracts and grant agreements.

The audit of the basic financial statements does not relieve management or the Boards of Directors of their responsibilities.

**Components of an Audit in Accordance with Generally Accepted Auditing Standards, Generally Accepted Auditing Standards, Generally Accepted Government Standards, and the Guide**

An audit includes the following:

- Obtaining an understanding of the Companies and its environment, including internal control, sufficient to assess the risks of material misstatement of the basic financial statements and to design the nature, timing, and extent of further audit procedures

- Consideration of internal control over financial reporting, as a basis for designing audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of the Companies' internal control over financial reporting

- Examining, on a test basis, evidence supporting the amounts and disclosures in the basic financial statements and whether they were prepared in accordance with HUD instructions

- Inquiring directly of the Boards of Directors regarding its views about the risks of fraud and whether the Boards of Directors have knowledge of any fraud or suspected fraud affecting the Companies

- Assessing the accounting principles used and significant estimates made by management

- Evaluating the overall basic financial statement presentation.

**Reasonable Assurance**

We will plan and perform our audit to obtain reasonable assurance about whether the basic financial statements are free of material misstatement, whether caused by error or fraud. However, because of the characteristics of fraud, a properly planned

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 8

and performed audit may not detect a material misstatement or material noncompliance. Therefore, an audit conducted in accordance with generally accepted auditing standards, generally accepted government auditing standards, and the Guide, is designed to obtain reasonable, rather than absolute, assurance that the basic financial statements are free of material misstatement. An audit is not designed to detect error or fraud that is immaterial to the basic financial statements or to detect immaterial instances of noncompliance, nor is it designed to provide assurance on internal control or to identify deficiencies in internal control.

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 9

**APPENDIX B**

**MANAGEMENT'S RESPONSIBILITIES**
**Year Ending December 31, 2012**

This Appendix B is part of the engagement letter dated July 9, 2012 between Deloitte & Touche LLP and Residential Funding Company, LLC and GMAC Mortgage, LLC.

### Financial Statements, Internal Control, and Compliance

The overall accuracy of the basic financial statements and their conformity with generally accepted accounting principles is the responsibility of the Companies' management. In this regard, management has the responsibility for, among other things:

- Selecting and applying the accounting policies

- Establishing and maintaining effective internal control over financial reporting and compliance with laws, regulations, and provisions of contracts or grant agreements

- Designing and implementing programs and controls to prevent and detect fraud

- Identifying and ensuring that the Companies comply with the laws and regulations applicable to its activities and the provisions of contracts or grant agreements, and informing us of any known material violations of such laws, regulations, or provisions

- Adjusting the basic financial statements to correct material misstatements

- Making all financial records and related information available to us

- Taking timely and appropriate steps to remedy fraud, illegal acts, violations of provisions of contracts or grant agreements, or abuse that we report

- Having a process to track the status of audit findings and recommendations

### Representation Letters

We will make specific inquiries of the Companies' management about the representations embodied in the basic financial statements. Additionally, we will request that management provide to us the written representations the Companies are required to provide to its independent auditors under generally accepted auditing standards, generally accepted government auditing standards, and the Guide. As part of our audit procedures, we will request that management provide us with a representation letter that includes, among other things:

- Acknowledgment of management's responsibility for the preparation of the basic financial statements and all accompanying information, and for compliance with laws and regulations applicable to HUD-assisted programs

- Acknowledgment of management's responsibility for the design and implementation of programs and controls to prevent and detect fraud

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 10

- Affirmation of management's knowledge of any fraud or suspected fraud affecting the Companies involving management, employees who have significant roles in internal control over financial reporting, and others where the fraud could have a material effect on the basic financial statements

- Affirmation of management's knowledge of any allegations of fraud or suspected fraud affecting the Companies

- Affirmation of management's belief that the effects of any uncorrected basic financial statement misstatements aggregated by us during the current audit engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the basic financial statements taken as a whole.

We will also request that management confirm certain representations made to us during our audits. The responses to those inquiries and related written representations of management required by generally accepted auditing standards, generally accepted government auditing standards, and the Guide are part of the evidential matter that D&T will rely on in forming its opinions.

### Independence Matters Relating to Providing Certain Services

In connection with our engagement, D&T, management of the Companies and the Boards of Directors will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence. Management of the Companies will ensure that the Companies other entities that comprise the Companies for purposes of the consolidated basic financial statements, has policies and procedures in place for the purpose of ensuring that neither the Companies or other entity will act to engage D&T or accept from D&T any service that under American Institute of Certified Public Accountants (AICPA), generally accepted government auditing standards or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Robinson.

### Independence Matters Relating to Hiring

Management will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees in a key position, as defined in the AICPA *Code of Professional Conduct*, that would cause a violation of the AICPA *Code of Professional Conduct* or other applicable independence rules. Any employment opportunities with the Companies for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Robinson and approved by the Board of Directors before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee.

For purposes of the preceding three paragraphs, "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu Limited, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu Limited and its member firms; and, in all cases, any successor or assignee.

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 11

**APPENDIX C**

**COMMUNICATIONS WITH THE BOARDS OF DIRECTORS**
**Year Ending December 31, 2012**

This Appendix C is part of the engagement letter dated July 9, 2012 between Deloitte & Touche LLP and Residential Funding Company, LLC and GMAC Mortgage, LLC.

**Significant Matters**

We are responsible for communicating significant matters related to the audit that are, in our professional judgment, relevant to the responsibilities of the Boards of Directors in overseeing the financial reporting process.

**Fraud and Illegal Acts**

We will report directly to the Boards of Directors any fraud of which we become aware that involves senior management and any fraud (whether caused by senior management or other employees) of which we become aware that causes a material misstatement of the basic financial statements. We will report to senior management any fraud perpetrated by lower-level employees of which we become aware that does not cause a material misstatement of the basic financial statements; however, we will not report such matters directly to the Boards of Directors unless otherwise directed by the Boards of Directors.

We will inform the appropriate level of management of the Companies and determine that the Boards of Directors are adequately informed with respect to illegal acts that have been detected or have otherwise come to our attention in the course of our audit or reviews, unless the illegal acts are clearly inconsequential.

**Internal Control Matters**

We will report directly to management and the Board of Directors all significant deficiencies and material weaknesses identified during the audit as required by AICPA AU 325, *Communicating Internal Control Related Matters Identified in an Audit*. Our written communication will identify those matters considered by D&T to be significant deficiencies and those considered by D&T to be material weaknesses or material instance of noncompliance with the requirements of the applicable HUD mortgage banking program.

A significant deficiency is a deficiency, or a combination of deficiencies, in internal control, that is less severe than a material weakness, yet important enough to merit attention by those charged with governance. A material weakness is a deficiency, or combination of deficiencies, in internal control, such that there is a reasonable possibility that a material misstatement of the company's annual financial statements will not be prevented or detected on a timely basis.

**Other Matters**

Generally accepted auditing standards and generally accepted government auditing standards do not require us to design procedures for the purpose of identifying other matters to communicate with the Boards of Directors. However, we will communicate to the Boards of Directors matters required by AICPA AU 380, *The Auditor's Communication With Those Charged With Governance*.

As part of our audit, we will be alert to situations or transactions that could be indicative of abuse as defined by generally accepted government auditing standards, which involves behavior that is deficient or improper when compared with behavior that a prudent person would consider reasonable and necessary business practice given the facts and circumstances. Abuse also includes misuse of authority or position for personal financial interests or those of an immediate or close family member

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 12

or business associate. The determination of abuse is subjective; generally accepted government auditing standards do not require us to provide reasonable assurance of detecting abuse, and we will not design the audit to detect abuse. However, if we become aware of abuse that could be quantitatively or qualitatively material to the basic financial statements, we will apply procedures specifically directed to ascertain the potential effect on the basic financial statements or other financial data significant to the audit objectives. Under generally accepted government auditing standards, we may be required to directly report fraud, illegal acts, violations of provisions of contracts or grant agreements, and abuse to outside parties.

We may communicate to management and the Board of Directors on internal control, compliance, or other matters we observe and possible ways to improve the Companies' operational efficiency and effectiveness or otherwise improve its internal control or other policies and procedures. In addition, as required by generally accepted government auditing standards, our report on internal control and on compliance and other matters will include our findings of material violations of provisions of contracts and grant agreements and material abuse.

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 13

**APPENDIX D**

**BUYER SUPPLEMENT**
**Year Ending December 31, 2012**

This Appendix D is part of the engagement letter dated July 9, 2012 between Deloitte & Touche LLP and Residential Funding Company, LLC and GMAC Mortgage, LLC.

This Appendix is to be provided to a Buyer for its signature and an executed copy returned to Deloitte & Touche LLP before such Buyer may be provided a copy of the independent auditors' report of Deloitte & Touche LLP.

[*Name of prospective buyer*], referred to throughout the attached engagement letter and this Appendix as the "Buyer," agrees that the independent auditors' report of Deloitte & Touche LLP ("D&T") on Residential Funding Company, LLC and GMAC Mortgage, LLC financial statements for the year ending December 31, 2012 will not be included, incorporated by reference, or referred to in any public filings with the Securities and Exchange Commission without D&T's prior written consent.

If [*name of prospective buyer*], or those acting on its behalf, intends to publish or otherwise reproduce in any document D&T's report on the basic financial statements referred to above, or otherwise make reference to D&T in a document that contains other information in addition to the audited basic financial statements referred to above (e.g., in a periodic filing with a regulator, in a debt or equity offering circular, in a registration statement, or in a private placement memorandum), thereby associating D&T with such document, [*name of prospective buyer*] agrees that its management will provide D&T with a draft of the document to read and obtain D&T's approval for the inclusion or incorporation by reference of D&T's report, or the reference to D&T, in such document before the document is printed and distributed. The inclusion or incorporation by reference of D&T's report in any such document would constitute the reissuance of D&T's report. [*Name of prospective buyer*] also agrees that its management will notify D&T and obtain D&T's approval prior to permitting D&T's report to be included on an electronic site.

D&T's engagement with Residential Funding Company, LLC and GMAC Mortgage, LLC to perform the services described in the engagement letter between D&T and Residential Funding Company, LLC and GMAC Mortgage, LLC does not constitute D&T's agreement to be associated with any such documents published or reproduced by or on behalf of [*name of prospective buyer*]. Any request by [*name of prospective buyer*] to reissue D&T's report, to consent to its inclusion or incorporation by reference in an offering or other document, or to agree to its inclusion on an electronic site will be considered by D&T based on the facts and circumstances existing at the time of such request.

Accepted and agreed to by [*name of prospective buyer*]:

By:_____
Title:_____
Date:_____

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 14

**APPENDIX E**

**GENERAL BUSINESS TERMS**
**Year Ending December 31, 2012**

This Appendix E is part of the engagement letter to which these terms are attached (the engagement letter, including its appendices, the "engagement letter") dated July 9, 2012 between Deloitte & Touche LLP and Residential Funding Company, LLC and GMAC Mortgage, LLC.

1. <u>Independent Contractor.</u> Nothing contained in these terms shall alter in any way the duties imposed by law on D&T in respect of the services to be provided by D&T under this engagement. D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner or representative of the Companies or the Boards of Directors of the Companies.

2. <u>Survival.</u> The agreements and undertakings of the Companies and the Boards of Directors of the Companies contained in the engagement letter to which these terms are attached (the "engagement letter"), together with the appendices to the engagement letter including these terms, will survive the completion or termination of this engagement.

3. <u>Assignment and Subcontracting.</u> Except as provided below, no party may assign any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other parties. The Companies and the Boards of Directors of the Companies hereby consent to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

4. <u>Severability.</u> If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

5. <u>Force Majeure.</u> No party shall be deemed to be in breach of the engagement letter (including its appendices) as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6. <u>Protection of Personal information.</u> To the extent that any information obtained by D&T from or on behalf of the Companies or its employees in connection with the performance of services under the engagement letter relates to a resident of Massachusetts and constitutes "Personal Information" as defined in 201 CMR 17.02 (as may be amended), D&T shall comply with the obligations of 201 CMR 17.00 et. seq. (as may be amended), entitled "Standards for the Protection of Personal Information of Residents of the Commonwealth," with respect to such information.

7. <u>Dispute Resolution.</u> Any Dispute (as defined below) arising out of or relating to services performed under the engagement letter prior to the effective date of (a) a plan of reorganization of the Companies or (b) a court order dismissing the Companies' chapter 11 case or cases (the "Effective Date") shall be brought in the Bankruptcy Court (or the District Court (as defined below), if such District Court withdraws the reference to the Bankruptcy Court). All other Disputes, including, without limitation, Disputes arising out of or relating to services performed after the Effective Date and Disputes over which the Bankruptcy Court (or the District Court) does not have, retain or exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix G and made a part hereof (the "Dispute Resolution Provision"). The parties each hereby irrevocably waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute. Except with respect to the interpretation and enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 15

Federal Arbitration Act), the laws of the State of New York (without giving effect to its choice of law principles) shall apply in arbitration or any other forum in connection with any Dispute. The foregoing shall be binding upon the parties and any and all of their respective permitted successors and assigns. This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

For Purposes of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement, and (b) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit..

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 16

**APPENDIX F**

## DISPUTE RESOLUTION PROVISION
### Year Ending December 31, 2012

This Appendix F is part of the engagement letter dated July 9, 2012 between Deloitte & Touche LLP and Residential Funding Company, LLC and GMAC Mortgage, LLC.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of certain Disputes (as set forth in Appendix F) and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

<u>Mediation:</u> All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions.  If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

<u>Arbitration Procedures:</u> If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York.  The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators.  Each of the Companies and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

<u>Costs:</u> Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

Residential Funding Company, LLC and GMAC Mortgage, LLC– Engagement Letter
Page 16

**APPENDIX F**

**DISPUTE RESOLUTION PROVISION**
**Year Ending December 31, 2012**

This Appendix F is part of the engagement letter dated July 9, 2012 between Deloitte & Touche LLP and Residential Funding
Company, LLC and GMAC Mortgage, LLC.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of
certain Disputes (as set forth in Appendix F) and shall apply to the fullest extent of the law, whether in contract, statute, tort
(such as *negligence*), or otherwise.

Mediation: All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and
shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and
all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or
settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and
Resolution ("CPR"), at the written request of a party, shall designate a mediator.

Arbitration Procedures: If a Dispute has not been resolved within 90 days after the effective date of the written notice
beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and
the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be solely between
the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at
the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the
"Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Companies and Deloitte & Touche LLP
shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two
party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel
unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this
Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. The arbitrators may
render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate
opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the
Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure
permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to
protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

Costs: Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees
and expenses of both the mediators and the arbitrators equally.