Wendy Alison Nora
ACCESS LEGAL SERVICE
210 Second Street NE
Minneapolis, Minnesota 55413
Telephone: (612) 333-4144
Facsimile: (612) 886-2444

Proposed Hearing Date: August 14, 2012
Proposed Hearing Time: 10:00 a.m.

*Counsel to Wendy Alison Nora and, by Limited Appearance, for Ray Elliott of Rapid City, South Dakota and Paul Papas of Phoenix, Arizona*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

In re

Residential Capital, LLC *et al.*,                              Chapter 11

                                                                Case No. 12-12020 (MG)
.                                        Debtors.               Administratively Consolidated

-----------------------------------------------------------------X

**MOTION FOR RECONSIDERATION OF**
**FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(A), 362, 363, 502, 1107(A) AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS; (II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND EXPENSES [DOCKET NO. 774] AUTHORIZING THE CONTINUATION OF THE OPERATIONS OF DEBTORS' RACKETEERING ENTERPRISE**

Pursuant to Federal Rules of Civil Procedure 60(b)(1), (3) and (6) and Bankruptcy Rule 9023, Wendy Alison Nora , a contingent claimant in litigation, holding a claim in excess of Ten Billion Dollars US ($10,000,000,000.00 US) represented by an action pending in the United States District Court for the Western District of Wisconsin in *Nora v. Residential Funding*

1

*Company, LLC, et. al.* as Case No. 10-cv-748 on her own behalf and for thousands of similarly situated homeowners, all of whom are victims of the racketeering enterprise operated by the Debtor RESCAP, LLC, its employees and agents and its parent company, Ally Financial, Inc. (<u>AFI</u>) and, as counsel by limited appearance for Ray Elliott of Rapid City, South Dakota and Paul Papas of Papas of Phoenix, Arizona, moves for reconsideration of the Order entered on July 13, 2012 upon the following grounds:

1. The Agenda prepared by the Debtors for the July 10, 2012 did not state whether or not the Objection of Wendy Alison Nora to what the Debtor calls the "Supplemental Servicing Order" would be going forward or be adjourned and it was unclear from the Agenda when the Nora Objection would be heard.

2. Co-counsel for Wendy Alison Nora, Attorney Robert Michaelson, was present in the courtroom prior to the commencement of the hearing on July 10, 2012 and Wendy Alison Nora was on the live conference call line at 10:00 a.m. Eastern Time.

3. Attorney Nora had another telephone conference hearing set for 9:45 a.m. Central Time (10:45 a.m. Eastern Time) and Attorney Michaelson informed Debtors' counsel of Attorney Nora' scheduling conflict and inquired when her Objection was likely to be heard.

4. Attorney Michaelson was informed and believed that the hearing on the Nora Objection would be at the end of the day.

5. He advised Attorney Nora that the hearing would be at the end of the day and that he would return to the Court to inform her of the time at which her Objection would be heard.

6. Attorney Nora had assumed that Attorney Michaelson had conferred with the Court Deputy to ascertain the order of matters to be heard, but was later informed by Attorney

2

Michaelson that he had conferred with Debtors' counsel to obtain the order for hearings on matters on July 10, 2012.

7. Attorney Nora remained on the court conference line live until she was informed that her hearing would be later in the day and then disconnected the line so that she could be available for the telephone hearing with the United States Bankruptcy Court for the Eastern District of Wisconsin which was scheduled to take place in the first hour of this Court's Agenda for July 10, 2012.

8. According to the record of the proceedings on July 10, 2012 which she obtained from the Court, the Motions for Modification of the Automatic Stay filed by various Interested Parties were heard within the first hour of the hearing on July 10, 2012, and at minute mark 54.21-55.36, the Nora Objection was called, after Debtors' counsel informed the Court that there were no further matters pertaining to the modification of the automatic stay and the Court specifically inquired about the Nora Objection.

9. Debtors' counsel initially misrepresented to this Court, in their response to her Objection, that the Court had overruled her Objection and Nora replied that her Objection to the entry of the Final "Supplemental Servicing Order" had not been overruled at the hearing on that matter on June 10, 2012 any more than the NACBA Objection or the Objection of the Unsecured Creditors Committee had been overruled on that day.  Objections to the entry of the Interim "Supplemental Servicing Order" were overruled and the matter was set for hearing on the final Order.

10.  When, on July 10, 2012, Judge Glenn asked if there were any other parties who were to be heard on the "Supplemental Servicing Order," Debtors' counsel stated that there were no

other Objections to be heard, Judge Glenn inquired about the Nora Objection and Debtors' counsel misrepresented that the Nora Objection had been "renewed," persisting in its unsupported position that the Nora Objections to various First Day Orders had been overruled on June 18, 2012.

11.  There was no hearing on the entry of the "Final Supplemental Servicing Order" on June 18, 2012 and the Nora Objection was continuing since the June 10, 2012 hearing.

12.  The Nora Objection to the entry of the Final "Supplemental Servicing Order" was not renewed, it was continuing, and, although she filed a Reply to the Debtors' Response to the Objection to the entry of the Final Order in which she argued, from the evidence in the record as a result of the Debtors' filing of Schedules and the partial Statement of Financial Affairs on June 30, 2012, that the Schedules and Statements, along with the Affidavit of James Whitlinger, constituted evidence of the bad faith filing which justified the setting of an evidentiary hearing on the issue of misuse of the bankruptcy court's automatic stay as a shield to continue foreclosures and evictions base upon forged documents created by the Debtors to create the appearance of standing to steal homes throughout the nation.

13.  In the one minute and 15 seconds during which Nora was unavailable due to a scheduling conflict of which Debtors' counsel had been informed by Attorney Michaelson, the Court found that Nora was continuing to object to the failure of the Debtors to file the Schedules and Statements, when her Reply, which was filed after the filing of the Debtors' Schedules and Statements demonstrated that those filings contained prima facie evidence of fraud and supported Nora's request for an evidentiary hearing on the relief requested by the Debtors in their proposed Final "Supplemental Servicing Order."

4

14. The denial of Nora's Objection to the entry of the Final "Supplemental Servicing Order" in one minute and 15 seconds of time on the record was based upon Nora's continuing Objection which pre-dated the filing of the Schedules and Statements and not the Nora Reply to the Debtors' Response which it is clear from the Finding of Fact and Conclusions of Law made at minute mark 54.21-55.36 that the Court had not read.

15. Debtors attempted to deny Nora any hearing on her continuing Objection to the entry of the Final Order in the following ways:

a. They negotiated with NACBA and the Unsecured Creditors Committee to frame an agreeable modification of the automatic stay for purposes of the entry of the Final "Supplemental Servicing Order" but entirely disregarded the Nora Objection[1] and made no effort to include the concerns of homeowners who are the victims of the racketeering enterprise, who should have received the same degree of input as the NACBA and Unsecured Creditors Committee in the fashioning of the Final Order.

---

[1] The Debtors were emboldened in this approach to the Nora positions on behalf of homeowners in these proceedings by Judge Glenn's aggressive disregard of the validity of Nora's objections to the entry of other First Day Orders on June 18, 2012. Nora should have been more aggressive in her personal appearance on June 18, 2012 but she was saddened by Judge Glenn's arrogant confusion of his own identity with that of the Court when she was arguing that the "Court cannot possibly understand" the matters before it without the filing of the Schedules and Statements. Nora was referring to the Court as the forum for administration of justice in which the people are allowed to participate and be heard on their issues and not the understanding of Judge Glenn, who is not the Court, but is the presiding judge over this case before the Court. When Judge Glenn took offense at Nora's statement that the Court cannot possibly understand the matters before it, the criminal conspiracy proceeding before this Court rejoiced because one voice on behalf of the people's right to know and participate in the administration of justice had been chastised by Judge Glenn, who is not the Court. They have tried to use the judge's intemperance in refusing to hear Nora on June 18, 2012 as a bar to Nora and those interests she represents from receiving hearing on the matters continued from June 10, 2012 to July 10, 2012: the Final "Supplemental Servicing Order."

5

b. They did not establish the status of the Nora Objection in the Agenda for the hearing on July 18, 2012 to make it clear that the Nora Objection was going forward which made Nora uncertain as to order of the proceedings.

c. They failed to inform the Court that Attorney Michaelson had informed them that Nora was available but for a slight scheduling conflict at 10:45 a.m.

d. They failed to inform the Court that Attorney Michaelson had been informed that the Nora Objection would be heard later in the day.

e. They falsely claimed that the Nora Objection had been overruled on June 18, 2012 when it was not heard on June 18, 2012 to imply that the proceedings on June 18, 2012 had res judicata effect, when the matter for consideration on July 10, 2012 was heard on June 10, 2012 and set for final hearing.

f. They falsely claimed that no other objections to the entry of the Final "Supplemental Servicing Order" remained to be heard on July 18, 2012 and when confronted by Judge Glenn, who was aware of the Nora Objection yet unresolved, they falsely represented that the Nora Objection had been "renewed" (again implying res judicata effect.)

16. The Court Deputy was aware that Nora was on the live line prior to the commencement of the hearing and was seeking to be heard.

17. Nora and those who she represents were denied procedural and substantive due process guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States because the hearing was called and conducted in one minute and 15 seconds, during which time Debtors' counsel had been informed that she had a slight scheduling conflict and that she had wanted to assure that she would be heard.

6

18. It is required of courts that litigants be given an opportunity to be heard.

19. It is required of officers of the court that they not misrepresent matters of fact and law to the Court.

20. As a matter of fact, Nora was seeking to be heard and counsel for the Debtors knew of her slight scheduling conflict.

21. Counsel for the Debtors, as officers of the court, were required to advise the Court that Nora was seeking to be heard, that they had been advised of a slight scheduling conflict and had been informed that her Objection would be heard later in the day.

22. In spite of the deceptive efforts by Debtors' counsel to disregard Nora's Objection and to prevent it from being heard on July 10, 2012 (which is a symptom of the disease which infects this scandalous bankruptcy proceeding whereby the stolen homes and misappropriated funds of homeowners are being used to fund the criminal enterprise) Nora is entitled to reconsideration of the Order of July 13, 2012 as a matter of fact and law.

23. The Court erred when it disposed of her Objection as if it were a replication of her initial objections to the First Day Orders, when, in fact, it was a specific Objection to the entry of the Final "Supplemental Servicing Order."

24. The Court erred when it based its Findings of Fact and Conclusions of Law based on the Nora Objection which was filed prior to the Debtors' filing of Schedules and Statements as if that Objection had been resolved merely by filing of the Schedules and Statements on June 30, 2012 when the Nora Amended Reply to the Debtors' Response clearly states that the filing of the Schedules and Statements is the evidence upon which her argument then rested and requested an evidentiary hearing.

7

25. The Court specifically made Findings of Fact and Conclusions of Law which were based on the Objection filed prior to the filing of the Schedules and Statement of Financial Affairs and not the Nora Reply which argued the Objection on the basis of the filed Schedules and Statement of Financial Affairs and the Affidavit of James Whitlinger constitutes evidence upon which Nora relied in her Reply to the Debtors' Response to her Objection.

26. The Court erred in concluding as a matter of fact that the Nora Objection was not supported by evidence in the record when the Reply clearly relied upon the evidence provided by the Debtors which is in the record.

27. The Court erred in concluding as a matter of law that the Nora Objection was a restatement of her Objections to the First Day Orders, when it was a specific Objection to the Final "Supplemental Servicing Order."

28. The Court erred as a matter of law in holding a one minute and 15 second hearing on Nora's Objection which, because she had a scheduling conflict for that brief moment in time of which Debtors' counsel were informed and failed to inform the Court that Nora was seeking to be heard, deprived Nora of the opportunity to direct the Court's attention to the Reply which was based on evidence in the record.

29. The Court erred as a matter of law in failing to consider the Nora Reply.

30. The Court erred as a matter of law in failing to consider the Nora Reply and grant her request for an evidentiary hearing on the basis of prima facie of evidence of fraud based upon the Debtors' own filings: the Affidavit of James Whitlinger in Support of the First Day Orders and the Scheduled and Statements filed on June 30, 2012.

31. It is a patent miscarriage of justice for the Debtors to obtain global and admittedly

unprecedented[2] relief holding prior to the filing of the Schedules and Statements, to require an objection deadline prior to the filing of the Schedules and Statements and then to fail to consider a Reply to a Response relying on the filing of the Schedules and Statements when the Reply in reliance thereon requests an evidentiary hearing on prima facie evidence of fraud.

      32. The homes of hundreds of homeowners are included in the Schedules of Assets of these Debtors who are servicers and cannot schedule the homes as assets of their own, but must schedule those real estate assets as property held for another, namely their undisclosed principals.

      33. The fact that the real estate assets are listed as assets of the Debtors when they are merely the servicers of the loans upon which the real estate assets were unlawfully taken by foreclosures, judicial and nonjudicial, is prima facie evidence of the fraud which underlies these proceedings.

      34. Nora made an offer of proof that these assets were procured through the use of forged documents to give the appearance of the Debtors' standing to foreclose on the assets, which Debtors do not have.

      35. The Statements set forth hundreds of pending actions to take homes in litigation by these Debtors who are acting as servicers for undisclosed principals, including the home of Ray Elliott, for whom Nora is acting as limited counsel for purposes of objecting to the continuation of foreclosure proceedings in their own names on behalf of an undisclosed principal.

      36. Had Nora been allowed to be heard on his behalf, Ray Elliott would have made an offer of proof that he is seeking the identity of the securitization trust for which Debtors are purportedly the servicer and has been denied access to the Pooling and Servicing Agreement for

---

[2] Affidavit of Thomas Marano.

the alleged trust.

37. The Schedules fail to list numerous real estate assets in which Paul Papas claims an interest which Debtors are seeking to sell and is committing fraud on the Court by failure to disclose those assets.

38. Had Nora been allowed to be heard on his behalf, Paul Papas would have made an offer of proof that he has received Notice of Sale from the Debtors of real estate assets not disclosed on the Debtors Schedules.

39. The Debtors have failed to disclose their derivative position valued in the First Day Affidavit of James Whitlinger in excess of 18 million dollars.

40. The Debtors must not be allowed to continue using forged and perjurious documents in their foreclosure and eviction activities under the auspices of the Order of this Court entered on July 13, 2012.

41. Finally, no Interested Party was even allowed to see the Final Order entered as Document 774 before it as entered to make any objections to its final form.

42. These proceedings in their entirety are the penultimate example of Star Chamber proceedings in which one party controls the information which is heard by the Court and the other parties are excluded from being heard through the Debtors' control of the information presented and the schedule upon which the matters are heard without consideration of the interests of the people whose resources are being appropriated for redistribution under the Whitlinger "Priority Scheme."

43. Without the unlawfully seized properties of the homeowners and the stream of income from homeowners whose titles are clouded by the securitization process, these Debtors

would have no assets or income with which to reorganize.

44. 11 USC 105 has been invoked for all of the extraordinary relief provided by this Court to the Debtors to date whereas the broad equitable powers of this Court cannot be made available to the Debtors to continue to engage in crimes of forgery, perjury and fraud masquerading as "servicing" of loans.

45. Counsel for the Debtors stated on the record of the proceedings on July 10, 2012 that the securitization trusts are the parties with "skin in the game." This statement is another patent misrepresentation of the interests in these proceedings. The investors in the securitization trusts were defrauded in the racketeering scheme by being sold interests in empty trusts but the homeowners are having their properties seized and they are the other class of interests who have the "skin in the game."

47. The Debtors are seeking to cram the investor class into an 8.7 billion dollar unsecured claim and make no provision for homeowner claims.

48. The two classes of interested parties: homeowners and investors have at least equal "skin in the game."

49. All that Nora, Elliott, Papas and others[3] are seeking is to be heard on the unlawful and wholly inequitable treatment of homeowners interests in these proceedings, all of which was properly pleaded by Nora and was erroneously not considered on July 10, 2012.

50. Nora, Elliott and Papas reserve all of their rights to be heard on this Motion for Reconsideration.

---

[3] Such as Kenneth Taggart, who will be heard on August 14, 2012 because he was able to be heard on July 10, 2012 and was not prevented from being heard by the misrepresentations of Debtors' counsel as Nora was.

11

**WHEREFORE**, the undersigned brings this Motion for Reconsideration of the Court's Order of July 13, 2012.

Dated: July 26, 2012 at Minneapolis, Minnesota.

                ACCESS LEGAL SERVICES

                */s/ Wendy Alison Nora*
                Wendy Alison Nora, pro hac vice
                210 Second Street NE
                Minneapolis, Minnesota 55413
                Telephone (612) 333-4144
                Facsimile (612) 886-2444
                *Counsel to Wendy Alison Nora*
                *and, by Limited Appearance,*
                *for Ray Elliott of Rapid City, South*
                *Dakota and Paul Papas of Phoenix,*
                *Arizona*