**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, et al., | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |

------------------------------------------------------------ x

**ORDER APPROVING SCOPE OF**
**INVESTIGATION OF ARTHUR J. GONZALEZ, EXAMINER**

The Court having reviewed the Preliminary Statement of Arthur J. Gonzalez, Examiner, Regarding the Scope and Timing of his Investigation attached hereto as Exhibit "A" (the "Preliminary Statement"); the Court having heard and considered the parties' statements with respect to any disagreements regarding the scope of and timing for the Examiner's investigation (the "Investigation"); the Court being satisfied based on the statements made by the parties at the Chambers conference held on July 24, 2012 that the Preliminary Statement sets forth a reasonable scope of the Investigation; and after due deliberation and sufficient cause appearing therefor; it is hereby

ORDERED that the scope of the Investigation as set forth in the Preliminary Statement is approved; and it is further

ORDERED that within ten (10) days of the entry of this Order, the Examiner shall file a formal work plan that will include, among other information, (i) the Examiner's estimate of fees and expenses to be incurred in connection with the Investigation and (ii) such other matters

1

2

or information as are customarily included in work plans submitted by examiners appointed in other chapter 11 cases; and it is further

ORDERED that this order is without prejudice to the Examiner's right to seek modifications of the scope of the Investigation.

Dated:   July 27, 2012
         New York, New York

                                          **/s/Martin Glenn**
                                          MARTIN GLENN
                               United States Bankruptcy Judge

12-12020-mg    Doc 925    Filed 07/27/12    Entered 07/27/12 11:59:31    Main Document
Pg 2 of 9

# EXHIBIT A

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
N. Theodore Zink, Jr.
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

*Proposed Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Residential Capital, LLC et al., | Case No. 12-12020 (MG) |
| | Jointly Administered |
| Debtors. | |

**PRELIMINARY STATEMENT OF ARTHUR J. GONZALEZ, EXAMINER,
REGARDING THE SCOPE AND TIMING OF HIS INVESTIGATION**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Arthur J. Gonzalez, the Court-appointed Examiner for Residential Capital, LLC and its affiliated debtors (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), by his proposed undersigned counsel, hereby submits his preliminary statement regarding the scope and timing of his investigation.

1

INTRODUCTION

1.      On June 28, 2012, the Court entered an Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (the "Examiner Order") directing the United States Trustee (the "U.S. Trustee") to appoint an examiner (the "Examiner") in the Chapter 11 Cases.

2.      The Examiner Order directs the Examiner to conduct an investigation (the "Investigation").

3.      On July 3, 2012, the U.S. Trustee appointed Arthur J. Gonzalez, Esq. as Examiner in the Chapter 11 Cases and filed (i) a notice of such appointment and (ii) an application for an Order approving such appointment.

4.      On July 3, 2012, the Court entered an Order approving the appointment of the Examiner.

5.      In its Memorandum Opinion and Order Granting Berkshire Hathaway's Motion to Appoint an Examiner Under 11 U.S.C. §1104(c) dated June 20, 2012, the Court noted that

> The scope, timing and budget for the examiner's investigation will be set by the Court after the examiner is appointed and confers with other parties in interest. In the first instance, the scope of the investigation established by the 2004 Order sets the appropriate scope parameter for the investigation, subject to later adjustment if necessary.[1]

---

[1] As used herein, the "2004 Order" shall refer to the Order Authorizing the Official Committee of Unsecured Creditors to Issue Subpoenas Compelling the Production of Documents and Provision of Testimony by the Debtors and Others Pursuant to Federal Rule of Bankruptcy Procedure 2004 entered in the Chapter 11 Cases on June 5, 2012.

6. On July 11, 2012, the Examiner selected Chadbourne & Parke LLP ("<u>Chadbourne</u>") as his proposed counsel. Chadbourne filed its Application for Retention as Examiner's Counsel on July 16, 2012, following discussion with and review by the U.S. Trustee.

7. On July 24, 2012, a Chambers conference was conducted by Judge Martin Glenn at which the Examiner and his counsel and counsel for various parties in interest presented their respective views regarding the appropriate scope of the Investigation and estimates of the time necessary to complete the Investigation and prepare a report.

## THE EXAMINER'S ACTIVITIES TO DATE

8. Beginning on July 18, 2012, the Examiner conducted a series of meetings and/or telephonic calls with representatives of the Debtors, the Official Committee of Unsecured Creditors, Berkshire Hathaway, Ally Financial Inc., and certain holders of the Debtors' unsecured notes. The principal purpose of these meetings was to learn more about the cases and to ascertain each party's preliminary views regarding the scope and timing of the Investigation. The Examiner invited the parties to share their views on these matters, as well as on the legal and factual issues implicated by the Investigation.

9. In addition, the Examiner and his proposed professionals have begun the Investigation by undertaking various activities including reviewing the various pleadings, documents and materials relevant to the issues to be investigated.

## SCOPE OF EXAMINATION

10. As previously noted, the scope of the Investigation in the first instance is established by the 2004 Order. Accordingly, after review of the 2004 Order and discussions with various parties in interest, the Examiner has determined that, at a minimum, he will examine the following in his report:

a. all material prepetition transactions and all material verbal or written agreements or contracts between or among the Debtors on the one hand and any one or more of Ally Financial Inc., f/k/a GMAC LLC, and any of its current and former, direct and indirect affiliates and subsidiaries (collectively, "AFI"), Cerberus Capital Management, L.P. and any of its current and former direct and indirect affiliates and subsidiaries including Cerberus FIM, LLC, Cerberus FIM Investors LLC, and FIM Holdings LLC. (collectively, "Cerberus") and/or Ally Bank, a commercial state non-member bank chartered under the laws of the State of Utah (f/k/a GMAC Bank) ("Ally Bank") on the other hand including (i) material agreements concerning transfers of cash, assets, property, stock, contracts, or other items of value including any servicing agreements, repurchase transactions, exchange offers, hedging arrangements, derivative agreements or contracts, swap agreements or contracts, or foreign exchange agreements or contracts, (ii) any payments, dividends or capital contributions, (iii) any extension of loans or lines of credit including any factoring arrangements, (iv) any debt, or liens related thereto, or the transfer, assignment, repayment or forgiveness of such debt, (v) any claims and all payments made on account of such claims, and (vi) any transfers of cash, assets, property, stock, contracts, or other items of value (collectively, the "Prepetition Transactions and Agreements");[2]

b. the negotiation and entry into any plan sponsor, plan support, or settlement agreement, the debtor-in-possession financing with AFI, and the stalking horse asset purchase agreement with AFI, and any servicing agreement with Ally Bank (collectively, the "Postpetition Transactions and Agreements");

c. (i) the activities of the Debtors' officers and board of directors (including any subcommittee thereof) concerning (A) the Prepetition Transactions and Agreements, (B) the Postpetition Transactions and Agreements, and (C) the investigation of the validity of claims against AFI, and (ii) the recruitment, compensation and indemnification of the Debtors' officers and the members of the Debtors' board of directors (including any subcommittee thereof);

d. the corporate relationships between or among the Debtors, AFI, Cerberus and/or Ally Bank and the conduct of each of these entities in connection with the Debtors' decisions (i) to file (or to refrain from filing, or delaying the filing of) voluntary petitions under

---

[2] The Examiner's Investigation of certain of the Debtors' entry into and performance under the "Consent Order," "DOJ/AG Settlement" and "CMP," each as defined and described in paragraphs 86 through 90 of the of the "Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petition and First Day Pleadings," dated May 14, 2012 will be limited to the propriety of the allocation of obligations as among the Debtors and AFI under the "Consent Order," "DOJ/AG Settlement" and "CMP."

4

    Chapter 11 of the United States Bankruptcy Code, (ii) to pursue (or refrain from pursuing) a sale of substantially all of their assets, and (iii) to enter into the Prepetition Transactions and Agreements and the Postpetition Transactions and Agreements;

e. all state and federal law claims or causes of action of the Debtors against current or former directors and officers of the Debtors, and against AFI and/or its insiders including current and former directors, officers, and shareholders;

f. all state and federal law claims or causes of action the Debtors propose to release or to be released as part of their plan including (i) preference and fraudulent transfer claims, (ii) equitable subordination claims, (iii) alter ego and veil piercing claims, (iv) debt recharacterization claims, (v) constructive trust and unjust enrichment claims, (vi) breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims, (vii) securities law claims, and (viii) claims held by third parties, i.e., parties that are not affiliates of the Debtors, against current and former directors and officers of the Debtors and against AFI and its insiders including current and former directors, officers, and shareholders; and in respect of the claims identified in subclause (viii) of this paragraph f, the Examiner will (A) investigate the merits of such claims, (B) analyze the sufficiency of the consideration to be provided for such third party releases, and (C) solicit the parties' views concerning the merits of such claims and the potential amount of damages arising from such claims, but the Examiner will not attempt to independently quantify such damages;

g. the value of the releases contemplated by the Debtors including the releases by the Debtors' estates of all claims against current or former directors and officers of the Debtors, and against AFI and its insiders including current and former directors, officers, and shareholders, and the proposed releases by third parties of claims against AFI; and

h. other matters affecting the Debtors' assets, liabilities, and financial condition including all intercompany claims and the Debtors' solvency, capital adequacy and ability to pay debts as such debts become due at various dates prior to the Petition Date.

### TIMING OF THE SUBMISSION OF THE EXAMINER'S REPORT

    11.    At this juncture, the Examiner anticipates that a substantial amount of time will be expended by his professionals to prepare a report containing the Examiner's findings regarding the Investigation. Based upon his discussion with his counsel and the parties, the Examiner believes that a realistic time frame for the preparation of such a report is six (6)

months, subject to adjustment if after meaningful due diligence a different time period appears to be more reasonable.

## INFORMATION GATHERING

12.     In furtherance of the Investigation, the Examiner will request documents and other information from various parties including, the Debtors, AFI, Ally Bank and Cerberus and their respective current and former officers, directors and professionals.  To ensure compliance with the Examiner's information requests, the Examiner may need to serve subpoenas on entities that refuse to produce information.  Accordingly, the Examiner intends to promptly file a motion under rule 2004 of the Federal Rules of Bankruptcy Procedure and seek authority to serve rule 2004 subpoenas on any entity that may be in possession of information relevant to the Investigation.  In connection therewith, the Examiner intends to ask the Court to approve a protocol, including a form confidentiality agreement, that would govern production from all parties.

## ESTIMATED FEES AND EXPENSES

13.     This statement does not address budget issues for the Investigation. Subject to the Court's further direction, the Examiner will file a formal work plan that will include, among other information, the Examiner's estimate of fees and expenses to be incurred in connection with the Investigation.

[Signature page to follow]

Dated: July 27, 2012
New York, New York

Respectfully submitted,
Arthur J. Gonzalez, Examiner


*By:* /s/ Howard Seife
Chadbourne & Parke LLP
Howard Seife
David M. LeMay
N. Theodore Zink, Jr.
30 Rockefeller Plaza
New York, New York 10112
Telephone:   (212) 408-5100
Facsimile:   (212) 541-5369
E-mail:   hseife@chadbourne.com

Proposed Counsel to the Examiner

7