REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Diane A. Bettino
Maria T. Guerin
*Counsel for GMAC Mortgage, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**DEBTORS' MEMORANDUM OF LAW REGARDING COUNTERCLAIMS ASSERTED BY KENNETH TAGGART IN STATE COURT FORECLOSURE PROCEEDINGS**

**TABLE OF AUTHORITIES**

**OTHER AUTHORITIES**

*Birchall v. Countrywide Home Loans, Inc.*,
No. 08-2447, 2009 WL 3822201 (E.D.P.A. Nov. 12, 2009) ............ iv, ix

*Cunningham v. McWilliams*,
714 A.2d 1054 ............ v

*Fairway Consumer Discount Co. v Mulhern*,
7 Pa. D. & C.4th 405 (Luzerne Cty. 1990) ............ v, vi, xiii

*First Federal Savings & Loan Assoc. of Erie v. McAfee,*
15 Pa. D. & C.3d 287 (Erie Cty. 1980) ............ passim

*Harris v. EMC Mortgage Corp.*,
No. 01-4868, 2002 U.S. Dist. LEXIS 12251 (E.D. Pa. Apr. 10, 2002) ............ viii

*In re Apaydin*,
201 B.R. 716 (Bankr. E.D. Pa. 1996) ............ vi, viii

*In re Calabria*,
418 B.R. 862 (W.D. Pa. 2009) ............ iv

*In re Madera*,
586 F.3d 228 (3rd Cir. 2009) ............ iv

*Insilco Corp. v. Rayburn*,
543 A.2d 120 (Pa. Super. 1988) ............ iii

*Johnson v Hyundai Motor Am.*,
698 A.2d 631 (Pa. Super. 1997) ............ x

*Kondour Capital Corp. v. Marshall L. Williams*,
Civ. No. 2011-0235, 2011 WL 4352214 (Pa. Com. Pl. Sept. 1, 2011) ............ iv

*Loften v. Diolosa*,
No. 3:CV-05-1193, 2008 U.S. Dist. LEXIS 60919 (M.D. Pa. July 31, 2008) ............ xi

*New York Guardian Mortgage Corp. v. Dietzel*,
524 A.2d 951 (Pa. Super. 1987) ............ iv, vi, xiii, xiv

*Rocco v. J.P. Morgan Chase Bank*,
255 Fed. App'x. 638 (3d Cir. 2007) ............ iv, v

*Second Federal Savings and Loan Association v. Brennan*,
598 A.2d 997 (1991) ............ iv

*Signal Consumer Discount Co. v. Babuscio*,
390 A.2d 266 (Pa. Super. 1978) ............ iv

*Straker v. Deutsche Bank National Trust*,
2010 WL 500412 (M.D. Pa. 2010) ............ iv

*Wilson v. Parisi*,
549 F. Supp.2d 637 (M.D. Pa. 2008) ............ xi

*Youndt v. First National Bank of Port Allegheny*,
868 A.2d 539 (Pa. Super. 2005) ............ v, xiv

## REGULATIONS

12 U.S.C. § 1639(b) .......... viii
12 U.S.C. § 2603 .......... ix
12 U.S.C. § 2605 .......... ix
12 U.S.C. § 2607 .......... ix
12 U.S.C. § 2615 .......... ix
15 U.S.C. § 1635 .......... vii
15 U.S.C. § 1639 et seq. .......... viii
15 U.S.C. § 1639(a) .......... viii
15 U.S.C. § 1640 .......... vi
15 U.S.C. § 1681 et seq. .......... xii
15 U.S.C. § 1692 et seq. .......... vii
15 U.S.C. §§ 1601, 1692 and 1692-1622p .......... xi
Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 .......... i

**Rule 1141 of the Pennsylvania Rules of Civil Procedure .......... iii**

**12 C.F.R. § 226.18(g) .......... vi**
**12 C.F.R. § 226.31(c) .......... viii**
**12 C.F.R. § 226.32(c) .......... viii**
**12 C.F.R. §226(g)-(h) .......... vi**
**12 CFR 226.20 .......... ix**
**231 Pa. Code Rule 1141(a) .......... iv**
**24 C.F.R. § 3500.10 .......... ix**
**24 C.F.R. § 3500.14 .......... ix**
**24 C.F.R. § 3500.7 .......... ix**

GMAC Mortgage, LLC hereby submits this memorandum of law (the "Memorandum") in further support of their opposition to the *Motion for Leave to File Motion Pursuant to Stay & Relief (and Clarification from Bankruptcy Court)* [Docket No. 263], filed by Kenneth Taggart on June 8, 2012 (the "Motion").

## DISCUSSION

### I. The Supplemental Servicing Order

The Debtors' *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* (the "Supplemental Servicing Order") modifies the automatic stay in the Debtors' Chapter 11 cases in order, among other things, to permit borrowers to proceed with limited types of defenses and counter-claims in state court foreclosure proceedings initiated by the Debtors.[1] *See* Supplemental Servicing Order ¶ 14. In particular, the Supplemental Servicing Order permits borrowers to continue to "prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the

[1] At the time the Motion was filed, the Debtors were operating under *Supplemental Order for Interim Relief Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 391]. However, on July 10, 2012, the Court entered the Supplemental Servicing Order.

purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure," but prevents any claims (i) for monetary relief against the Debtors "except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure" (each a "Mandatory Monetary Claim") and (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction . . . ."

As more fully addressed below, Mr. Taggart cannot, in the pending *in rem* foreclosure action pursue any *in personam* damages, but may defend the foreclosure by disputing the validity of his mortgage (the "Mortgage") as well as the allegations by GMAC Mortgage LLC ("GMAC Mortgage") of Mr. Taggart's defaults under the Mortgage.

To the extent that this Court has asked the Debtors to brief whether any of his 32 Counterclaims could be asserted or arguably construed to assert a permissible defense in the pending foreclosure action, and without waiver or prejudice to GMAC Mortgage's rights to assert all available legal and factual arguments on the non-applicability or merits of any of his Counterclaims in that litigation, Debtors herein offer an overview of authorities addressing the very limited scope of permissible counterclaims and defenses in an *in rem* foreclosure action in Pennsylvania.[2]

Pursuant to Pennsylvania law, a mortgagor defending an *in rem* foreclosure action is limited to attempting to defeat a foreclosure action by challenging the validity of the mortgage or a mortgagee's allegation of default under the mortgage.

[2] Debtors' use the terms "permissible" or "valid" with regard to defenses asserted in an *in rem* foreclosure action does not, nor should it be interpreted to mean that such an asserted defense would be meritorious or successful. Debtors' limited analysis in this briefing does not constitute a representation as to the ultimate merits of any of Mr. Taggart's Counterclaims and allegations in the pending foreclosure action.

In short summary, counterclaims unrelated to the formation of or default under the Mortgage, namely, Counterclaims 20 (FCRA), 22 (FDCPA), 30 (Defamation), 31 (Constitutional Violations) clearly cannot proceed under the Supplemental Servicing Order, nor as defenses to a foreclosure action under Pennsylvania law.[3] And while it is not GMAC Mortgage's position that the remaining Counterclaims are properly asserted nor meritorious in the foreclosure action, for purposes of this briefing and resolution of the instant Motion, GMAC Mortgage would consent to relief from the automatic stay to allow all of Mr. Taggart's Counterclaims to proceed and allowing the state court to for the limited purpose of proceeding through any dispositive motions.

## II. Certain Factual Allegations And Counterclaims May Be Construed to Assert a Permissible Defense to the Foreclosure.

In Pennsylvania, counterclaims for monetary damages may not be pursued in the context of the pending foreclosure action, which is an *in rem* action, because the plaintiff, here GMAC Mortgage, is enforcing its rights only as to its secured interest in the property, and is not seeking a judgment of personal liability against the borrower. "An action in mortgage foreclosure is strictly an *in rem* action and may not include an *in personam* action to enforce personal liability." *Insilco Corp. v. Rayburn*, 543 A.2d 120, 123 (Pa. Super. 1988) (citing the definition in Rule 1141 of the Pennsylvania Rules of Civil Procedure of a foreclosure action as

[3] It should be noted that the Counterclaims are not individually named by Mr. Taggart, and most include various bases for alleged violations of more than one statute or asserted right. Certain allegations in a given Counterclaim may not necessarily comport with one or more of the causes of action and/or statutes cited in that Counterclaim. E.g., many Counterclaims assert violations at loan origination and during the loan servicing as bases for the cause of action. Accordingly, for purposes of this briefing, GMAC Mortgage herein labels the claims based on what appears to be the primary gist of each counterclaim. Because numerous Counterclaims contain wide ranging allegations, this briefing attempts to extract from each any allegation that could arguably be construed to assert a defense to the foreclosure, namely, a challenge to the validity of the mortgage or GMAC's allegation of default.

one not including an action to enforce a personal liability). "The very definition of a mortgage foreclosure action under [231 Pa. Code] Rule 1141(a) excludes 'an action to enforce a personal liability'; this restriction is essential to preserve the '*de terris*' identity of a mortgage foreclosure action and is equally binding on a mortgagee-plaintiff and a mortgagor-defendant." *Signal Consumer Discount Co. v. Babuscio*, 390 A.2d 266, 270 (Pa. Super. 1978); *see also New York Guardian Mortgage Corp. v. Dietzel*, 524 A.2d 951, 953 (Pa. Super. 1987) (recognizing that foreclosure actions in PA are *in rem* only and disallowing pursuit of TILA damages asserted by counterclaim); *Birchall v. Countrywide Home Loans, Inc.*, No. 08-2447, 2009 WL 3822201, 6 (E.D.P.A. Nov. 12, 2009) ("a mortgage foreclosure action, as an action *in rem*, does not allow either party to pursue an action *in personam*, such as an action for damages."); *Kondour Capital Corp. v. Marshall L. Williams*, Civ. No. 2011-0235, 2011 WL 4352214 (Pa. Com. Pl. Sept. 1, 2011) (mortgagor's counterclaims impermissibly sought monetary damages and indemnification or contribution); *Rocco v. J.P. Morgan Chase Bank*, 255 Fed. App'x. 638, 643 (3d Cir. 2007) ("Claims for money damages, including recoupment claims [] cannot be brought in a foreclosure action.") (citing *New York Guardian*, 524 A.2d at 953).

Furthermore, in Pennsylvania, "[a]ny defense must go to the existence and validity of the mortgage," *First Federal Savings & Loan Assoc. of Erie v. McAfee,* 15 Pa. D. & C.3d 287, 288 (Erie Cty. 1980), because the viability of a mortgage foreclosure action depends upon the existence of a valid mortgage. *See Straker v. Deutsche Bank National Trust*, 2010 WL 500412 at *3 (M.D. Pa. 2010) (Vanaskie, J.) (quoting *In re Madera*, 586 F.3d 228, 232 (3rd Cir. 2009)); *In re Calabria*, 418 B.R. 862, 866-867 (W.D. Pa. 2009) ("In Pennsylvania, actions in mortgage foreclosure are dependent on the existence of a valid mortgage.").

Mortgages are governed by the law of contracts and interpreted accordingly. *See, e.g., Second Federal Savings and Loan Association v. Brennan*, 598 A.2d 997, 999 (1991). It is a fundamental precept of contract law that if a party is fraudulently induced to enter into an agreement (*i.e.*, "but for" fraudulent misrepresentation(s) the contract would not have been executed by the innocent party), the agreement is void or voidable at the option of the injured party. *Youndt v. First National Bank of Port Allegheny*, 868 A.2d 539, 546 (Pa. Super. 2005).

Accordingly, a mortgagor may assert as a valid defense to an *in rem* foreclosure, that fraud in the inducement as to the mortgage formation renders it void. *See, e.g., Cunningham v. McWilliams*, 714 A.2d 1054, 1056 ("Thus, a counterclaim in a foreclosure action is cognizable if it alleges fraud in the inducement to the mortgage, but not if it alleges fraud in the inducement to the contract of sale."); *Rocco*, 255 Fed. App'x. at 643 ("A claim for rescission under the Truth-in-Lending Act can be brought in a foreclosure action.").

Despite the restrictive language of the foregoing authorities, courts in Pennsylvania recognize that a mortgagor may dispute a mortgagee's allegation of default under the Mortgage, but setoffs for alleged origination or servicing errors may not be pursued in an *in rem* action. *See, e.g., Fairway Consumer Discount Co. v Mulhern*, 7 Pa. D. & C.4th 405, 407 (Luzerne Cty. 1990) (where borrower's defense did not attack "the existence of the mortgage or [the alleged] default, but rather only challenged the mortgage lender's failure to disclose credit costs as required by [TILA], . . . such a defense is considered a claim for a setoff and cannot therefore be asserted in such actions because mortgage foreclosure actions are considered *in rem* and not actions for personal judgment"); *Rocco*, 255 Fed. App'x. at 643 ("Claims for money damages, including recoupment claims [] cannot be brought in a foreclosure action.").

Pursuant to the foregoing authorities, Mr. Taggart cannot pursue *in personam* damages, but may defend the foreclosure allegations by disputing the validity and enforceability of the Mortgage, as well as GMAC Mortgage's allegation of his default under the terms of the Mortgage.

**A. Truth-in-Lending Act Claims**

In Counterclaims 4-5 and 29, Mr. Taggart alleges violations of the Truth in Lending Act ("TILA")[4] including, e.g.:

- Failure to disclose Mr. Taggart's payment schedule as required by Regulation Z; 12 C.F.R. § 226.18(g). Counterclaim 4, ¶ 49.
- Failure to disclose aggregate payments to be made under the loan, 12 C.F.R. §226(g)-(h). Counterclaim 5, ¶ 54.

While TILA claims may be raised as an affirmative claim, or as a counterclaim for set-off or recoupment in "an action to collect amounts owed" or "an action to collect the debt," see 15 U.S.C. § 1640, neither TILA damages nor TILA set-off claims may be pursued in an *in rem* foreclosure action in Pennsylvania. Pennsylvania courts have repeatedly concluded that a counterclaim under TILA for damages or setoffs may not be brought in a foreclosure action because the foreclosure action is strictly an *in rem* action. *See, e.g., In re Apaydin*, 201 B.R. 716, 721 (Bankr. E.D. Pa. 1996) ("Pennsylvania courts have ruled that a defendant may not raise TILA as a counterclaim in a mortgage foreclosure action"). In Pennsylvania, an *in rem* foreclosure action is not "'an action to collect amounts owed' or 'an action to collect the debt' as required under § 1640(h) and (e) of the Truth-In-Lending Act." *New York Guardian*, 524 A.2d at 953. "Therefore, a set-off for an alleged violation of the Truth-In-Lending Act cannot be asserted

[4] As addressed below, Mr. Taggart also alleges that TILA violations would serve as bases for additional claims asserted under Pennsylvania statutes. *See, e.g.*, discussion of Counterclaim 29 in ¶¶ 15-16, *infra*.

as a counter-claim in a mortgage foreclosure action." *Id. See also Fairway Consumer Discount, supra* at 407 (borrowers' claim for TILA disclosure failures was impermissible in the foreclosure action).

For the foregoing reasons, Mr. Taggart's TILA Counterclaims for damages or setoffs under TILA could not provide him relief in the pending *in rem* foreclosure proceeding.

While a TILA rescission claim may be raised as a defense in a foreclosure proceeding, the Counterclaims do not specifically invoke 15 U.S.C. § 1635, although Mr. Taggart does assert a right of rescission. However, as described below, he bases his rescission claim on an argument that he is owed setoffs that exceed the amounts owing under the Mortgage, such that it should be "rescinded." This is not a valid rescission claim. Because the Debtors are not seeking a money judgment in the Foreclosure Proceeding, such a set-off claim is unavailable as a defensive claim for rescission. To the extent Mr. Taggart's Counterclaims were construed to assert a claim for rescission based on allegedly deficient disclosures (as opposed to setoffs) under TILA or HOEPA, Debtors acknowledge that rescission for certain violations of TILA or HOEPA may be permissibly asserted in defense of an *in rem* foreclosure action.

In Counterclaim 29, Mr. Taggart raises a claim under the Fair Credit Extension Uniformity Act, ("FCEUA"), specifically citing provisions 73 P.S. §§ 2270.4(b)(5)(ii) and 2270.4(b)(6)(i), and alleging that Plaintiff mischaracterized the debt in violation of TILA, did not properly disclose all terms per TILA, mischaracterized the escrow disclosure, provided improper APR disclosures, and total payments on TILA/REGZ, which thereby constituted a violation under the FCEUA.

While the FCEUA provides that a debt collector's violation of the Fair Debt Collection Practices Act (Public Law 95-109, 15 U.S.C. § 1692 et seq.), shall constitute "an

unfair or deceptive debt collection act or practice under this act," it does not provide that a creditor's violation of TILA would constitute a violation of FCEUA. However, as otherwise noted herein, a TILA rescission claim may be asserted in defense to an *in rem* foreclosure.

**B. Homeowners Equity Protection Act Claims**

In Counterclaims 6-8 and 10, Mr. Taggart alleges that GMAC Mortgage violated the Homeowners Equity Protection Act, 15 U.S.C. § 1639 *et seq.* In particular, Mr. Taggart claims that GMAC Mortgage:

- "[F]ailed to deliver the consumer special HOEPA disclosure notice," in violation of 12 U.S.C. § 1639(b) and 12 C.F.R. § 226.31(c). Counterclaims 6 and 10, ¶¶ 59, 79.

- Failed to provide a notice that the borrower need not enter into the loan, in violation of 15 U.S.C. § 1639(a) and 12 C.F.R. § 226.32(c). Counterclaim 7, ¶ 64.

- Failed to disclose "an accurate statement of APR," in violation of 15 U.S.C. § 1639(a) & 12 C.F.R. § 226.32(c). Counterclaim 8, ¶ 69.

HOEPA is an amendment to TILA and is subject to the same remedial scheme and limitations. *See* 15 U.S.C. § 1639; *see also, Harris v. EMC Mortgage Corp.,* No. 01-4868, 2002 U.S. Dist. LEXIS 12251, *6 (E.D. Pa. Apr. 10, 2002); HOEPA is part of TILA, providing similar remedies to those available under other provisions in TILA. As described above, Pennsylvania courts have repeatedly concluded that TILA counterclaims and set-off claims may not be brought in a foreclosure action because the foreclosure action is an *in rem* proceeding and not "an action to collect amounts owed' or 'an action to collect the debt' as required under § 1640(h) and (e) of the Truth-In-Lending Act." *See, e.g., In re Apaydin,* 201 B.R. at 721.

Notwithstanding the foregoing, rescission claims based on alleged HOEPA violations may be asserted as a permissible defense in Pennsylvania *in rem* foreclosure actions.

### C. Real Estate Settlement Procedures Act Claims

In Counterclaims 1-3, 9, and 21, Mr. Taggart alleges violations of the Real Estate Settlement Practices Act ("RESPA"). In particular, Mr. Taggart's allegations include alleged violations under:

- 12 U.S.C. § 2607 and 24 C.F.R. § 3500.14 by not providing disclosures required in conjunction with the loan. Counterclaim 1, ¶¶ 32-33.
- 12 U.S.C. § 2603 and 24 C.F.R. § 3500.10 by not providing a HUD-1 statement prior to the settlement date. Counterclaim 2, ¶¶ 38-39.
- 24 C.F.R. § 3500.7 by failing to provide certain closing cost disclosures within three days of closing. Counterclaim 3, ¶ 44.
- RESPA "Regulation X" [but citing a TILA regulation, at 12 CFR 226.20] by failing to disclose certain loan terms, including escrow payments. Counterclaim 9, ¶ 49.
- RESPA, 12 U.S.C. § 2605, based on failure to follow RESPA procedures for reporting a dispute, reporting inaccurate information to credit bureaus, damaging the character of Defendant, failing to provide information relating to resolving the dispute, failing to credit payments as required, and reporting derogatory credit information while in dispute in violation of RESPA. Counterclaim 21, ¶¶ 138-40.

RESPA violations do not constitute a valid defense to mortgage foreclosure. As the statute specifically states, "[n]othing in this Chapter shall affect the validity or enforceability of any… loan, loan agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan." 12 U.S.C. § 2615. Therefore, RESPA violations may not be asserted as a counterclaim or defense in a Pennsylvania foreclosure proceeding. *See McAfee*, 15 Pa. D. & C.3d at 288 ("[a]ny defense must go to the existence and validity of the mortgage."); *Birchall*, 2009 WL 3822201 at *6 (*in personam* actions, such as actions for damages, impermissible in foreclosure proceeding).

Furthermore, as previously set forth, Counterclaims for damages and setoffs are not permissible in Pennsylvania *in rem* actions.

Notwithstanding the foregoing, Debtors acknowledge that Mr. Taggart may defend the foreclosure action by disputing the allegation of his default under the terms of the Mortgage, which dispute may involve servicing related allegations.

**D. Pennsylvania Unfair Trade Practices & Consumer Protection Law ("UTPCPL") Claims**

In Counterclaims 11-19 and 26-28, Mr. Taggart alleges that GMAC Mortgage violated the UTPCPL. Mr. Taggart's allegations that GMAC Mortgage violated 73 P.S. §§ 201-1 and 201-9.2, include:

- Failures to disclose interest rates and escrow requirements. Counterclaim 11, ¶ 84.
- Violations of Reg Z, discussed above, for failing to disclose closing costs, the total cost of the loan and aggregate payments to be made under the loan. Counterclaim 12, ¶ 89.
- Failing to provide an estimate of closing costs. Counterclaim 13, ¶ 94.
- Failing to provide a HUD-1 statement after closing. Counterclaim 14.
- Violations of TILA and RESPA. Counterclaim 15, ¶ 104.
- Failing to provide disclosures regarding the total payments to be made under the loan. Counterclaim 16, ¶¶ 109.
- Violating HOEPA as specified in Counterclaims 7 and 10, *supra*. Counterclaims 17-18, ¶¶ 114, 119.
- Violations of TILA and RESPA by "failing to disclose the loan term(s) throughout the loan when the rate or payment amount is changed." Counterclaim 19, ¶ 124.
- Failing to follow the procedures of RESPA "Section Six" related to credit reporting when the borrower has disputed the payment history. Counterclaim 26, ¶ 172.

The UTPCPL was enacted to protect the public from fraud and unfair or deceptive business practices. *Johnson v Hyundai Motor Am.*, 698 A.2d 631 (Pa. Super. 1997).

The UTPCPL provides a private right of action to consumers who purchase or lease goods or services primarily for personal, family or household purposes, including residential real estate, and suffer an ascertainable loss as a direct result of an unlawful act or practice. *Wilson v. Parisi*, 549 F. Supp.2d 637, 665 (M.D. Pa. 2008). To assert a private action under 73 P.S. § 201-9.2(a), a protected consumer must show that he suffered an ascertainable loss as a direct result of an unlawful act or practice. *Id.* at 670.

The UTPCPL enumerates twenty "unfair methods of competition" and "unfair or deceptive acts or practices" and contains a catch-all provision proscribing "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Loften v. Diolosa*, No. 3:CV-05-1193, 2008 U.S. Dist. LEXIS 60919, at *25 (M.D. Pa. July 31, 2008) (discussing 73 P.S. § 201-2(4)(I)-(xxi)).

While the catch-all provision has been recognized as applying to certain residential real estate transactions, Defendant has not identified which of the twenty-one provisions of the UTPCPL serves as the basis for his claims.

Notwithstanding the foregoing, the Debtors recognize, based on certain factual allegations included in these claims, that Mr. Taggart may dispute the validity of the Mortgage and GMAC Mortgage's allegation of his default under the Mortgage, which disputes could constitute permissible defenses to foreclosure.

**E. Fair Debt Collection Practices Act Claims**

In Counterclaims 22 and 28, Mr. Taggart alleges that GMAC Mortgage violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1601, 1692 and 1692-1622p, (and thereby also violated the FCEUA and the UTPCPL) because after he "disputed [his] payment history, payments credited as well as payment amount several times," GMAC Mortgage failed to report to the credit bureaus that the loan was in dispute, failed to make consumer report

disclosures, and reported inaccurate information to the credit bureaus, thereby damaging the character of the Defendant, failed to protect the credit rating of Plaintiff without validating the debt." Counterclaim ¶¶ 145-148, 187-190.

Mr. Taggart also claims that GMAC Mortgage failed to credit payments as required. Counterclaims 22, 28, ¶¶ 147, 181.

For the reasons set forth above, an affirmative claim under the FDCPA cannot proceed in the instant *in rem* foreclosure action, nor does improper debt collection constitute a challenge to the validity of the Mortgage or GMAC Mortgage's allegation of default, so as to constitute a permissible defense to the instant *in rem* foreclosure action. *See Birchall, supra*.

Notwithstanding the foregoing, the Debtors recognize that Mr. Taggart may dispute GMAC Mortgage's allegation of his default under the Mortgage, which dispute could constitute a permissible defenses to foreclosure.

**F. Fair Credit Reporting Act Claims**

In Counterclaims 20 and 27, Mr. Taggart alleges that GMAC Mortgage violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). *See* Counterclaims, ¶¶ 128-136, 178-185. Specifically, he claims that each month from April 2009 through September 2009, Plaintiff: 1) failed to report the account as "in dispute;" 2) failed to credit payments as required; and 3) reported inaccurate and derogatory information while in dispute, in violation of 15 U.S.C. § 1681. Counterclaims ¶¶ 130-133; 179-182. Mr. Taggart also claims that although he disputed the payment history, payments credited, and payment amount, GMAC Mortgage "failed to follow the procedure under" the FCRA, thereby constituting a violation of the UTPCPL, and that GMAC Mortgage "failed to report to the Credit Bureaus that the loan was in dispute, failed to make a consumer report disclosure reported inaccurate information to the credit bureaus, and damaged the character of the Defendant." Counterclaim ¶ 178.

For the reasons set forth above, an affirmative claim under the FCRA cannot proceed in the instant *in rem* foreclosure action, nor does improper credit reporting constitute a challenge to the validity of the Mortgage or GMAC Mortgage's allegation of Mr. Taggart's default, so as to constitute a permissible defense to the instant *in rem* foreclosure action. *See Birchall, supra*.

Notwithstanding the foregoing, The Debtors recognize that Mr. Taggart may dispute GMAC Mortgage's allegation of his default under the Mortgage, which dispute could constitute a permissible defenses to foreclosure.

**G. Quiet Title - Counterclaims 23 and 24**

In Counterclaim 23, Mr. Taggart seeks to "Quiet Title" and alleges that he is "the owner in fee of title" who is "entitled to rescission of the promissory notes and deeds of trust such that Plaintiff's [] claim to the property is released" because the "deeds of trust are invalid and void [] because [Mr. Taggart] is entitled to offsets against the promissory notes that are secured by deeds of trust, and these offsets are greater in amount than the sum that would otherwise be due under the promissory notes." Counterclaim ¶¶ 154-157.

Here, Mr. Taggart appears to seek rescission based on an argument that he is owed setoffs that exceed the amounts owing under the Mortgage, such that it should be deemed to be "rescinded." Setoffs may not be pursued in a Pennsylvania foreclosure action. *See, e.g., New York Guardian*, *supra* (TILA setoffs are unavailable in mortgage foreclosure actions in Pennsylvania); *see also Mulhern*, 7 Pa. D. & C.4th 407 (setoff of damages claim sought under TILA not permissible). In contrast to a claim that the Mortgage is invalid or unenforceable, which may be asserted as a defense in an *in rem* foreclosure. *See McAfee*, 15 Pa. D. & C.3d at 288 ("[a]ny defense must go to the existence and validity of the mortgage.").

In Counterclaim 24, arguably asserted as a breach of contract claim, but asserting fee title ownership, Mr. Taggart claims that "a breach of obligation secured by the deed of trust has occurred in that [Mr. Taggart] contends that he is able to retain possessory rights to the property based on the willful intentions [] to mislead, neglect, lack of material disclosure," and "other violations of the law throughout the loan application process and servicing." Counterclaim ¶ 162.

In this Counterclaim, Mr. Taggart appears to seek rescission based on alleged errors in loan origination and servicing.

Alleged errors in servicing do not challenge the validity of a Mortgage and therefore do not provide a basis for rescission. *See McAfee*, 15 Pa. D. & C.3d at 288 ("[a]ny defense must go to the existence and validity of the mortgage."). However, a mortgagor may assert as a defense to foreclosure that he was fraudulently induced to enter into a Mortgage or that certain origination issues render a transaction rescindable. *See Youndt*, 868 A.2d at 546.

To the extent that Mr. Taggart may dispute the validity of the Mortgage and GMAC Mortgage's allegation of his default under the Mortgage, those disputes could constitute permissible defenses to foreclosure and proceed in the foreclosure action.

**H. Breach of Contract Claim**

In Counterclaim 25, Mr. Taggart alleges that GMAC Mortgage "caused a breach of contract by not honoring terms of the contract in regards to loan payments, escrow, loan fees, servicing and origination of the loan" and that GMAC Mortgage "charged a higher escrow amount than disclosed or required in the loan documents." Counterclaim 25, ¶ 167.

To the extent that this Counterclaim seeks damages or setoffs for alleged origination or servicing errors, it cannot proceed in the foreclosure action. *See New York Guardian, supra* (setoff of damages claim sought under TILA not permissible).

However, to the extent that Mr. Taggart disputes as a defense the validity of the Mortgage and/or GMAC Mortgage's allegation of his default under the Mortgage, those disputes could constitute permissible defenses to foreclosure and can proceed in the foreclosure action.

**I. Defamation Claim**

In Counterclaim 30, Mr. Taggart claims that GMAC Mortgage "caused 'Defamation of Character' of Defendant" by reporting derogatory and inaccurate information to credit bureaus while in dispute, by filing an illegal foreclosure action in violation of RESPA and contract law, by defaming Mr. Taggart and mischaracterizing the debt to the public, and by reporting false and inaccurate information to HUD indicating that he was in default when he claims that it was GMAC Mortgage who "[w]ould not accept loan payments as per the loan terms." Counterclaim ¶ 201.

For the reasons set forth above, an affirmative claim for damages allegedly caused by defamation or improper credit reporting cannot proceed in the instant *in rem* foreclosure action, *see Birchall*, *supra*, nor do allegations of common law defamation or credit reporting constitute challenges to the validity of the Mortgage or GMAC Mortgage's allegation of default, so as to constitute a permissible defense to the instant *in rem* foreclosure action. *See McAfee*, 15 Pa. D. & C.3d at 288 ("[a]ny defense must go to the existence and validity of the mortgage.").

Accordingly, Counterclaim 30 for Defamation cannot proceed in the foreclosure action, but Debtors recognize that by alleging in this Counterclaim that GMAC Mortgage would not accept loan payments, Mr. Taggart may be disputing GMAC Mortgage's allegation of his default under the Mortgage, which dispute could constitute a permissible defense to foreclosure, albeit not in the context of a defamation claim.

**J. Constitutional Claims**

In Counterclaim 31, Mr. Taggart alleges that GMAC Mortgage violated his privacy rights, U.S. Constitutional rights and 1st, 4th, and 14th Amendment rights by reporting incorrect credit information and filing the foreclosure action, by submitting false information to the public and to HUD, and by depriving him of the right to be an FHA appraiser. Counterclaim ¶ 206.

For the reasons set forth above, an affirmative claim for constitutional violations and damages alleged to arise from credit reporting cannot proceed in the instant *in rem* foreclosure action, nor do these allegations of events occurring after the mortgage formation and alleged default constitute permissible defenses to foreclosure.

**K. Mortgage Property Insurance Coverage Act ("MPICA") Claims**

In Counterclaim 32, Mr. Taggart claims that GMAC Mortgage violated the MPICA, 7 P.S. 6701 *et seq.*, by attempting to require "more money in escrow than allowed by law and causing and/or illegally filing foreclosure as a result of such breach;" that Debtor force-placed insurance despite existing insurance; that the Debtor is "charging well above market rates to increase profits for [themselves]," and are still charging more than required by law in monthly escrow payments. Counterclaim ¶ 211.

The Mortgage Property Insurance Coverage Act ("MPICA"), 7 P.S. § 6701 *et seq*., provides that:

> No lender may require a borrower, as a condition of obtaining or maintaining a secured loan, to obtain property insurance coverage which exceeds the replacement value of buildings and structures situate on the land used to secure the loan. A borrower on a loan secured by real property may not be required to insure the value of the land.

7 P.S. § 6703.

This is the only substantive provision of the MPICA, nowhere in the statute does is it grant a private right of action for individuals, and no courts have opined on the Act since it was enacted in 2008.

Even if a private right of action were available, an affirmative claim for damages could not proceed for the reasons addressed *supra*. However, and as previously represented to this Court, under the umbrella of this claim, Mr. Taggart most clearly alleges that he believes the foreclosure is improper, and/or that he did not default, which would constitute a permissible defense to foreclosure.

Accordingly, GMAC Mortgage suggests that this claim may proceed for the limited purpose of asserting a defensive challenge to the default and foreclosure.

## CONCLUSION

Pursuant to the foregoing authorities, Mr. Taggart cannot pursue *in personam* damages, but may defend the foreclosure allegations by disputing the validity and enforceability of the Mortgage, as well as GMAC Mortgage's allegation of his default under the terms of the Mortgage.

Dated: August 1, 2012

/s/ Diane A. Bettino
/s/ Maria T. Guerin
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

*Counsel for GMAC Mortgage LLC*