1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


                Debtors.


- - - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                July 26, 2012

                1:17 PM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

2

1

2    (Doc# 90, 47)  Telephone Status Conference, on the Record, RE:

3    Motion Authorizing The Debtors To Continue To Perform Under The

4    Ally Bank Servicing Agreements In The Ordinary Course Of

5    Business.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:           David Rutt

21                              eScribers, LLC

22                              700 West 192nd Street, Suite #607

23                              New York, NY 10040

24                              (973)406-2250

25                              operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8  BY:   STEFAN W. ENGELHARDT, ESQ. (TELEPHONICALLY)

9        GARY S. LEE, ESQ. (TELEPHONICALLY)

10        JAMES TANNENBAUM, ESQ. (TELEPHONICALLY)

11

12

13  KRAMER LEVIN NAFTALIS & FRANKEL, LLP

14        Attorneys for Official Creditors' Committee

15        1177 Avenue of the Americas

16        New York, NY 10036

17

18  BY:   KENNETH ECKSTEIN, ESQ. (TELEPHONICALLY)

19        P. BRADLEY O'NEILL, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

4

KIRKLAND & ELLIS LLP

      Attorneys for Ally Financial, Inc. and Ally Bank

      601 Lexington Avenue

      New York, NY 10022


BY:    RAY C. SCHROCK, ESQ. (TELEPHONICALLY)



KIRKLAND & ELLIS LLP

      Attorneys for Ally Financial, Inc. and Ally Bank

      555 California Street

      San Francisco, CA 94104


BY:      MARK E. MCKANE, ESQ. (TELEPHONICALLY)

RESIDENTIAL CAPITAL, LLC, ET AL.                    5
P R O C E E D I N G S

1

2        THE COURT:  All right.  This is Judge Glenn.  We're on

3  the record in Residential Capital, LLC, number 12-12020.  I

4  apologize for being late for the hearing.

5        I have the list of appearances in front of me.

6        Mr. Eckstein, are you going to begin?

7        MR. ECKSTEIN:  Your Honor, thank you very much.  I'm

8  going to have my partner, Brad O'Neill, actually handle the

9  discovery issues, if that's acceptable.

10        THE COURT:  Okay.

11        MR. O'NEILL:  Good morning, Judge Glenn.  This is Brad

12  O'Neill.

13        As I see it, there are two principal issues from the

14  perspective of the committee for this hearing on the 24th, and

15  they relate, actually, not surprisingly, to documents and to

16  depositions.  We served document requests on the debtors back

17  on July the 6th and on AFI on, I believe, the beginning of this

18  week after receiving the Marano declaration the week before

19  that.

20        To date, we have received comparatively few documents.

21  We are promised additional documents, but as of now, we don't

22  have any electronic discovery, we don't have complete board

23  minutes, and we don't have other material documents.  We are

24  told that -- and I believe that parties are working to produce

25  those documents, but we're told by the debtors that they can't

**RESIDENTIAL CAPITAL, LLC, ET AL.** 6

1   get us the first wave of electronic discovery until Monday, and

2   they don't think they can complete production until

3   Wednesday -- or late Tuesday, maybe Wednesday, they say.  And

4   AFI is prepared, I guess, subject to the resolution of some

5   issues relating to a protective order and the committee's

6   willingness to accept the documents pending resolution of that

7   on a professionals-eyes-only basis, to begin production this

8   evening but, again, can't commit to finishing production before

9   mid-next week.

10        That presents a problem, Your Honor, because there are

11   three declarants in the case, all of whom need to be deposed,

12   and as well as we've asked for a 30(b)(6) from Ally Bank and a

13   witness from AFI, so that's five depositions.  Even if we were

14   to double or triple track, which I think we're prepared to do

15   in light of Your Honor's schedule, it's extremely tight, almost

16   impossible, I think, to get properly prepared for those

17   depositions if we don't have documents before, at a minimum,

18   the very beginning of next week.

19        So that's issue number 1.  And I guess issue number 2

20   is depositions which I've described for you, as well.  I

21   believe the debtors are interested in obtaining some form of

22   preview of our arguments, but I'll let them speak for

23   themselves on that issue.

24        THE COURT:  Who's going to speak for the debtors?

25        MR. ENGELHARDT:  Good afternoon, Your Honor.  This is

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    7

1   Stefan Engelhardt from Morrison & Foerster.

2           THE COURT:  Go ahead.

3           MR. ENGELHARDT:  With respect to the discovery, we are

4   making all due efforts to complete our discovery as promptly as

5   possible.  The hold-up here is technical.  We received proposed

6   search terms from the committee on Sunday night.  On Monday,

7   the debtors made efforts to identify where the electronic

8   information would be stored and gathered; that was done.  The

9   data was collected on Tuesday and Wednesday and is now being

10  sent for processing today.  We imagine that will be ready for

11  review internally by attorneys for production and privilege

12  commencing hopefully tomorrow.  We will be rolling it out in

13  waves on a rolling production to get this into the creditors'

14  committee's hands as quickly as possible.

15          MR. O'NEILL:  Your Honor, Brad O'Neill.  If I may

16  respond.

17          THE COURT:  Sure.

18          MR. O'NEILL:  Our original request delivered on July

19  6th requested electronic discovery, and it was not until the

20  very end of last week that we learned that the debtors had not

21  conducted any form of search for electronic information, and

22  that's why search terms were delivered late.  But basically we

23  assumed they were searching, and they were not.

24          MR. ENGELHARDT:  Your Honor, Stefan Engelhardt for the

25  debtors.

RESIDENTIAL CAPITAL, LLC, ET AL.                    8

1        The discovery request that the committee sent to the

2    debtors on July 6th was an informal letter discovery request.

3        THE COURT:  That's usually enough, as far as I'm

4    concerned.

5        MR. ENGELHARDT:  It was contemplating a hearing on

6    July 24th with production to start within a couple of days and

7    end within a week.  Under that time frame, it would have been

8    impossible to conduct any type of electronic discovery review,

9    and we didn't contemplate that the debtors were seeking -- in

10   the absence of proposed search terms or requesting a meet and

11   confer, on those -- what the scope of electronic discovery

12   would be, we did not contemplate that the committee would be

13   seeking electronic discovery.  As soon as we learned that they

14   would like electronic discovery, we kicked up the process

15   immediately and it's proceeding forthwith.

16       MR. O'NEILL:  Your Honor, the informal request -- and

17   I'm sure everyone on this call was sent out one of these

18   requests -- it's a letter with a document request attached to

19   it, a formal document request that doesn't have a caption on

20   it, and it's got all the standard definitions, and it's quite

21   clear that it seeks electronic information.  There was no

22   ambiguity about it.

23       THE COURT:  Well, as far as I'm concerned, where the

24   parties are working on an expedited basis, it's much more

25   common, certainly in bankruptcy, to have -- you want to call

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    9

1  them informal, I don't think there's very much informal about

2  them -- letter requests for documents.  I've always considered

3  them and treated them the same way as a formal document

4  request.  You can't sit back and ignore the request.  If you're

5  going to do that, you've got to put the other side back on

6  notice that we'll consider your request when you serve formal

7  request.

8        The reality here is that the underlying issues are

9  complex, and the committee is entitled to its discovery before

10 a contested hearing goes forward.  I understand the need for

11 expeditious hearings, but the parties are entitled to discovery

12 before they have to go to a contested evidentiary hearing.

13        So what is it, Mr. O'Neill, what is it that you would

14 like?

15        MR. O'NEILL:  Well, Your Honor, I think the schedule

16 would be more manageable if there were an additional week.

17 Then documents could be produced next week, we could conduct

18 the depositions in a more orderly fashion the following week,

19 and then Your Honor could have the hearing the week after that,

20 or rather we could submit all the materials ahead of time so

21 Your Honor could be properly prepared for the hearing when we

22 get to that.  I think right now we're on for the 14th; I think

23 a hearing the following week with the schedule adjusted in that

24 fashion would be appropriate.

25        MR. ENGELHARDT:  Your Honor, that would present great

1   problems --

2           THE COURT:  This is Mr. Engelhardt speaking?

3           MR. ENGELHARDT:  I'm sorry, Your Honor.  Yes, this is

4   Stefan Engelhardt on behalf of the debtors.

5           That would present incredible problems on behalf of

6   all the estates here.  The current servicing agreement under

7   which the debtors are operating expires, I believe, on August

8   20th.  As soon as that is gone, there is no servicing

9   agreement.  There is a great risk, from what I understand from

10  AFI, that the FDIC could very well instruct the servicing of

11  the loans to be pulled, and it would cause catastrophic damage

12  to the estates.

13          THE COURT:  Well, that's very nice.  So then you put

14  in another twenty people to produce all electronic discovery by

15  Monday.  Is that what you want?  I want everything produced;

16  you make everybody available for deposition.  If you haven't

17  produced all of the requested discovery by Monday, I will take

18  appropriate action.  Do you want sanctions?  Tell me what you

19  want.

20          You can't -- I understand you're saying it's urgent

21  that this hearing go forward.  It is also essential that the

22  objectors, and this is not a case -- look, I'm coming across

23  probably too hard.  I'm not accusing anybody of bad faith on

24  either side, but it's the debtor that's driving this very

25  aggressive schedule.  If the discovery that the committee is

1   seeking to take is reasonable -- nobody has suggested it's

2   not -- you can't expect to go forward with an evidentiary --

3   they can't be expected to go forward with depositions without

4   the documents they need to conduct the depositions.  Okay,

5   that's point 1.

6          You've not suggested that the discovery they've

7   requested is unreasonable.  And so there are a couple of

8   choices.  Either I just order that you do the impossible,

9   you're saying it's impossible.  You just -- I don't care what

10  resources you have to put to it; you do it.  You tell your

11  client they've got to do it.  If they don't do it, we'll deal

12  with it.  I'll just tell you, just look at my order in In Re:

13  Velo imposing sanctions.  I continued a preliminary injunction,

14  in effect, beyond the fourteen days that the rules permit

15  because the nondebtor defendant in that case didn't produce all

16  of the discovery including electronic discovery within the time

17  required for a hearing.

18         And, I mean, look, you've got to do one of two things:

19  either you find a way to accommodate the committee's discovery

20  request, putting whatever resources are necessary to get them

21  the information, not rolling production.  If you can't live

22  with it -- if you can't get them the information by Monday,

23  then it seems to me the hearing shouldn't go forward, because

24  without the documents, they can't go ahead and take the

25  depositions.

1    What is it that -- let me ask you, the committee has

2    said what they want, what is it that you want, Mr. Engelhardt?

3         MR. ENGELHARDT:  Your Honor, I would -- this is Stefan

4    Engelhardt.  Your Honor, I was hopeful that the debtors would

5    be able to commence a rolling production on Monday concluding

6    by Wednesday with depositions on Thursday and Friday.

7         THE COURT:  So, Mr. O'Neill, why isn't -- tell me why

8    that's not reasonable.

9         MR. O'NEILL:  Because I believe, Your Honor, that

10   we're going to get a huge data dump, and we are not going to be

11   able to get through it in time to uniquely prepare for the

12   depositions.  Frankly, I think getting this stuff by Monday is

13   tight, but getting it by Wednesday, I think, is impossible.

14        THE COURT:  Tell me what the issues for this

15   evidentiary hearing are from the committee's standpoint.

16        MR. O'NEILL:  The issues are going to relate to the

17   debtors' exercise of its business judgment, Your Honor, and in

18   particular, whether they acted with appropriate -- whether they

19   were disinterested in the transaction, whether they acted with

20   due care and in good faith and can sufficiently satisfy

21   heightened standards because we believe this transaction is an

22   interested-party transaction, at least as relates to the

23   parent, and also depending on if Your Honor decides to apply

24   just the standard business judgment rule, whether they can

25   satisfy the requirements to meet that.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                                13

1    THE COURT:  Mr. Engelhardt, what do you see the issues

2    as?

3            MR. ENGELHARDT:  Your Honor, I see the issues as it is

4    an exercise of the business judgment of the debtors.  The

5    committee has raised principally the negotiation and execution

6    of two documents, the first being what has been termed the

7    January 30th, 2012, support letter, and also the execution of

8    the new servicing agreement which is under the Court's

9    consideration on this motion.  So whether the debtors exercised

10   their business judgment given the fiscal realities that they

11   were facing and, in the backdrop of the DOJ settlement, as to

12   whether they exercised their business judgment, this --

13           THE COURT:  Is it entire fairness standard?

14           MR. ENGELHARDT:  It would be the business judgment

15   standard, Your Honor.

16           THE COURT:  Well, is it a related-party transaction?

17           MR. ENGELHARDT:  It is a related-party transaction,

18   Your Honor.

19           THE COURT:  And was it approved by a majority of the

20   independent directors?

21           MR. ENGELHARDT:  I believe it was.  I cannot speak

22   definitively to that, Your Honor.

23           MR. O'NEILL:  That's interesting, Your Honor, because

24   when I asked about board minutes relating to the servicing

25   agreement, I was told there weren't any and that there hadn't

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    14

1  been a meeting.  So, I mean, that's the sort of factual issue I

2  think you're going to be ask to consider on the 14th.

3          THE COURT:  And if the entire fairness doctrine

4  applies, what is the -- what do you anticipate the evidentiary

5  showings for each side to be?

6          MR. O'NEILL:  Your Honor, from the committee side, we

7  believe there is a preexisting indemnification from AFI to Ally

8  Bank entered into at the inception of the DOJ's investigation,

9  and the transactions that we're questioning here effectively

10  transferred that liability to the debtors, and the current

11  motion seeks to pay that liability in its entirety out of

12  debtors for the benefit of the parent and for the benefit of a

13  nondebtor subsidiary.

14          THE COURT:  How many people are working on -- Mr.

15  Engelhardt, how many people, lawyer and nonlawyers and

16  consultants or whoever, is working on production of electronic

17  and paper information?

18          MR. ENGELHARDT:  Your Honor, right now, we are

19  currently gathering a team of all available associates to

20  commence the review process.  Counsel at Carpenter Lipps, who

21  have been conducting the 2004 electronic discovery which has

22  been going on simultaneously, is conducting all -- is gathering

23  all available associates.  We will see what that availability

24  shows, and then we will endeavor to go firm-wide at Morrison &

25  Foerster to devote as many resources as necessary to get this

**RESIDENTIAL CAPITAL, LLC, ET AL.**                     15

1    production complete.

2           THE COURT:  Who's doing the electronic discovery?  I

3    mean, you've got to have nonlawyers, professional and

4    consultants who are -- how is that being done?

5           MR. ENGELHARDT:  We are doing it through a company

6    called DTI, which is loading it onto a review database.

7           THE COURT:  What's the period -- the time period

8    that's covered by the electronic discovery request?

9           MR. ENGELHARDT:  We are -- the time period goes back

10   to -- that was requested goes back to January -- goes back to

11   2010.  I informed the committee earlier in the week that all of

12   that is on tapes and will not be able to be loaded.  We have

13   gathered materials on the server for January 2012, so the

14   review will be from 2012 onward.

15          MR. O'NEILL:  They did inform us of that, Your Honor,

16   and although -- I suppose we'd like to go back -- we don't need

17   to go back to the beginning of 2010; we'd like to go back to

18   the first -- the last couple months of 2011, but we understand

19   the difficulties of getting things on tape and the

20   practicalities of the timetable here, so we haven't pushed it.

21   From January 1, 2012, forward would be sufficient, if possible.

22          THE COURT:  And that's all on hard drives, Mr.

23   Engelhardt?

24          MR. ENGELHARDT:  That is correct.  That has been

25   collected as of last night, and it's going through the

RESIDENTIAL CAPITAL, LLC, ET AL.                                16

1  processing process, as we speak.  It will be filtered under the

2  requested search terms provided by committee counsel and made

3  available for review as quickly as possible.

4          MR. O'NEILL:  Your Honor, we might be able to bridge

5  the gap here.  I don't know what Your Honor's calendar looks

6  like, but if Your Honor has availability at the end of the week

7  of the 14th, that might introduce three additional days into

8  the schedule that would allow them to produce and allow proper

9  preparation for the depositions.  And that would also avoid --

10 that would also get a hearing in before the expiration of the

11 prior servicing agreement.

12         THE COURT:  What's that expiration date again?

13         MR. ENGELHARDT:  The expiration date, I believe, is

14 August 20.

15         MR. SCHROCK:  Your Honor, it's Ray Schrock on behalf

16 of Ally Financial and Ally Bank.  That's correct.

17         THE COURT:  Look, all well and good for you, but it

18 leaves me no time for a decision.  I'm not going to be put in a

19 corner.

20         MR. SCHROCK:  Your Honor, it's Ray Schrock again.  We

21 appreciate that.  We feel at Ally Financial and Ally Bank we're

22 between a rock and a hard place; we're getting pressure from

23 our regulators at this point.

24         THE COURT:  Well, tell the regulators to come in here

25 and let me talk to them because it's fine for them to put

1  pressure on, but there's only so -- I don't want to hear that,

2  oh, there's all this pressure, there's all this pressure.  This

3  is moving forward expeditiously.

4          MR. SCHROCK:  Certainly.

5          THE COURT:  The committee is entitled to an

6  opportunity -- no one has suggested, and certainly from nothing

7  I've observed, that the committee is dragging its feet on any

8  of this.  You all want to get a prompt resolution, but the

9  committee is entitled to a fair opportunity to take its

10  discovery, prepare its case, present its objections if they

11  can't be worked out.  I don't want to be told that, well, if

12  you move the hearing to the 16th and 17th, that's before the

13  Monday deadline of the 20th, because then it doesn't leave me

14  any time to do what I might need to do at that point to

15  consider the evidence, come to a reasoned decision.

16          MR. SCHROCK:  Your Honor, it's Ray Schrock.  Again,

17  I'm very sensitive to that.  If I can make a suggestion, just

18  let us know what you're availability is, and we'll go back and

19  speak to them.  And if there's an issue, we could always come

20  back to the Court and deal with it.  But I fully appreciate how

21  full your calendar is, and we appreciate the expeditious time

22  frame.  We're not looking to jam anyone here, Your Honor.  We

23  had this motion up for a couple months, so we're just trying to

24  move it along.

25          THE COURT:  How many witnesses to people anticipate

RESIDENTIAL CAPITAL, LLC, ET AL.                    18

1   for an evidentiary hearing?

2          Mr. O'Neill?

3          MR. O'NEILL:  I'm sorry, Your Honor.  I didn't hear

4   you.

5          THE COURT:  How many witnesses do you anticipate

6   testifying at an evidentiary hearing?

7          MR. O'NEILL:  I think -- Your Honor, it's a little bit

8   tough to say before the depositions, but I think most of these

9   witnesses are their witnesses who would be presented by them

10  through deposition, then maybe would be subject to cross to the

11  extent, if necessary, beyond what we get out of the deposition

12  transcripts and the designations that will be submitted to you.

13  There might be testimony from the Ally or AFI witness, and it's

14  probably on an adverse basis.

15         MR. MCKANE:  And Your Honor, this is Mark McKane on

16  behalf of AFI.  If you just look at the number of depositions

17  that they have requested, I believe that they've asked for six.

18  So to the extent that you're going to be evaluating written

19  directs and having cross-examination live, which is your

20  practice, there's a chance for up to six witnesses and possibly

21  more, depending on what the committee requests.  As it relates

22  to AFI, we have not actually received the 30(b)(6) notice yet,

23  that they've asked for, but we've -- they've given us generally

24  the topics, and we're going to do what we can to make a witness

25  available and have already worked on that process even before

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    19

1    we got the request.

2           MR. ENGELHARDT:  Your Honor, this is Stefan Engelhardt

3    of Morrison & Foerster for the debtors.  The debtors' case will

4    go on three declarations, and that would be our direct case as

5    we anticipate it, and then the witnesses will be made available

6    for cross-examination.  So while I understand what Mr. McKane

7    is saying, there may be as few as three live witnesses.

8           (Pause)

9           THE COURT:  Okay.  The pause is I'm looking at my

10   calendar.

11          (Pause)

12          THE COURT:  Okay.  I mean, I certainly realize the

13   burden, particularly from electronic discovery, and it is

14   difficult, often, to predict precisely how much time is going

15   to be required to complete it.  I'm prepared to move the

16   evidentiary hearing as follows -- just hold on a second again.

17          Further delay caused by my computer freezing up.  Just

18   bear with me.

19          (Pause)

20          THE COURT:  I mean, I can move the hearing a couple

21   days.  I'm prepared to start it on August 16th, which is a

22   Thursday, beginning at 8:30 in the morning and going until 7

23   o'clock at night.  I have two other short matters scheduled

24   that need to go forward; they'll be very short.  They're

25   scheduled for 10 o'clock.  I estimate that at most it will take

RESIDENTIAL CAPITAL, LLC, ET AL.                                                20

1   a half hour, so we would break to do that.  I need to end by 7

2   o'clock because of other commitments in the evening.  We'd

3   resume, if necessary, at 8:30 on Friday morning and continue no

4   later than 5 o'clock, if necessary.

5          My willingness to do that is contingent on the

6   deadline for the expiration date of the servicing agreement

7   until Friday, August 24th, at 5 p.m.  The purpose of that is to

8   allow me sufficient time to consider and rule.  Whether it's

9   going to take me all that time, and I'm going to try and do it

10  as expeditiously as possible, but I have -- every day the week

11  of the 20th, I've got a calendar, which I'm not altering.

12         If AFI or Ally Bank is unwilling to extend the

13  expiration date -- who are the parties to the agreement?

14         MR. SCHROCK:  Your Honor, Ray Schrock for AFI and Ally

15  Bank.  It's Ally Bank and the debtors.

16         THE COURT:  Okay.

17         MR. O'NEILL:  GMAC Mortgage.

18         THE COURT:  All right.  If Ally Bank and the debtors

19  can't agree on that extension -- and let me say, with this,

20  even if it's only moving the dates a few days, that would leave

21  in place that document production begins on Monday, is

22  concluded by Wednesday of next week.  If Ally Bank is unwilling

23  to move the expiration date, then the hearing remains the 14th.

24  All document production must be completed by 12 noon, Monday,

25  July 30th.  If that doesn't happen, the committee can make

1  application to me, and I'll take such action as is appropriate

2  under the circumstances.  So basically, it comes down to, if

3  the debtors need those couple of extra days to complete their

4  production, they better persuade Ally Bank to agree to an

5  extension.  I don't --

6          MR. SCHROCK:  Your Honor, it's Ray Schrock.

7          THE COURT:  I don't --

8          MR. SCHROCK:  We'll certainly take that back to Ally

9  Bank, and I think, on behalf of my client, they would certainly

10  agree to that; it's just a matter of running it down with the

11  FDIC and making sure that we're all on the same page.

12          THE COURT:  Okay.  I want to make clear, I'm not

13  committing as to how quickly I would decide things.  It may be

14  that it should only happen that I'm able to rule from the bench

15  at the conclusion of the hearing.  I hope it isn't going to

16  take as much time as I've set aside for the hearing.  It won't

17  take more than that; let me put it that way.

18          When we get closer to the date, we can talk more

19  specifically about it.  I mean, I frequently -- I shouldn't say

20  frequently because most cases settle, and we don't have that

21  many trials, but I do time trials.  If it's going to be more

22  than a day or something like that, I do a time trial; I

23  allocate time to both sides, use it any way you wish.

24          I think I've been pretty fair in allocating the time.

25  The fact of the matter is whenever I've done it, no one's ever

RESIDENTIAL CAPITAL, LLC, ET AL.                                    22

1   complained they didn't have enough time.  In fact, the sides

2   have usually not used all the allocated time.  I think what

3   it's done is caused them to streamline their cases.  So I don't

4   know whether -- we'll see whether that's going to be necessary

5   here or not; hopefully not.

6            Is there any hope that you'll be able to resolve these

7   issues without going forward with an evidentiary hearing?

8            MR. ENGELHARDT:  Your Honor, this is Stefan Engelhardt

9   for the debtor.  I have not been involved in those discussions.

10  I've been focused on the discovery and litigation matters.

11  Perhaps I'll defer to Mr. Eckstein and Mr. Schrock who I

12  believe have been involved in those discussions with Mr. Lee.

13           MR. ECKSTEIN:  Your Honor, it's Kenneth Eckstein.  As

14  I indicated on Tuesday at the status conference on this matter,

15  we did meet last week.  We had extensive in-person meetings

16  with the businesspeople for ResCap with executives from Ally

17  Bank, and then we had an extensive meeting with senior

18  executives from AFI that were substantive business discussions,

19  but I'm told that at this point in time we should assume that

20  this is going to go to a hearing.  But I do tend to always sort

21  of be optimistic that we can find our way there, and obviously,

22  the committee would like to try to do that.

23           THE COURT:  Okay.  Look, in whatever -- you either

24  will or won't be able to do it.  I don't doubt that there will

25  be good faith efforts to try and resolve it.  If it has to go

1    forward, I want to be sure -- because the applicable -- you

2    both seem to agree that, in one form or another, a business

3    judgment standard may be the appropriate standard to apply,

4    because the parties seem to -- do agree that it's a

5    related-party transaction.  That raises -- I don't know.  I

6    mean, as soon as I heard that, that's when entire fairness came

7    to mind.  I don't know whether that's the applicable standard,

8    but I definitely want the parties to address what standard the

9    Court is to apply in its review of the transaction.

10          MR. LEE:  Your Honor, this is Gary Lee.  I just wanted

11   to comment on the -- sorry -- from Morrison & Foerster.  I just

12   wanted to comment on the state of the negotiations between the

13   parties.

14          THE COURT:  Go ahead.

15          MR. LEE:  I don't want to give undue hope, but at the

16   last hearing, I did remark that we had disagreements with both

17   the committee and with Ally, and we were sort of reaching

18   towards a tentative agreement with Ally.  So the debtors intend

19   to continue -- obviously to do what they can to see how the

20   parties can bridge their disagreements.

21          And the other observation I wanted to make, Your

22   Honor, is I don't think anybody is disagreeing that we need

23   this agreement.  I think where the disagreement lies, Your

24   Honor, is who has to pay the indemnity which, to my mind, is a

25   fundamentally different issue to whether this agreement should

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                   24

1   be approved.  I think everybody recognizes that it's absolutely

2   in the debtors' and the estate's and the creditors' interests

3   that the agreement be approved.  The question is on what terms,

4   and then what terms, if any, will be imposed upon the parties

5   that neither of -- that nobody likes, but everybody can live

6   with.

7            MR. ECKSTEIN:  And Your Honor, we think there are

8   legal issues raised in that context.  We could certainly be

9   prepared to address those at the hearing.

10           THE COURT:  Well, I think from the committee's

11  standpoint, I understood this from the last hearing, it's a

12  real large dollar amount that's being currently paid in

13  indemnity payments; there's a lot of money involved.  You all

14  seem to agree that servicing should go forward, but the issue

15  is the quantum of this indemnity obligation with the committee

16  taking the position that responsibility should be with AFI and

17  AFI certainly taking the position that it's not.  I mean, I

18  only have probably an imprecise understanding of the dispute at

19  this point, but --

20           MR. SCHROCK:  Your Honor, it's Ray Schrock.  I think

21  that there's not a huge gap between -- dollars-wise between the

22  committee and other parties at this point, but we'll certainly

23  work at it.  We do have to go forward at a hearing.  We believe

24  that there are issues around what's the entirety of the

25  agreement, as well as other legal argument would have to be

RESIDENTIAL CAPITAL, LLC, ET AL.                              25

1  made in that regard.  We don't really have a copy of an

2  objection, I know, the committee had stated previously that it

3  was working on.  Not filing an objection was very sensitive to

4  the sensitive nature of these proceedings, and we appreciate

5  that.  At the same time, we'd like to be able to address any

6  legal issues that are raised.

7        THE COURT:  Mr. Schrock, I think you probably have a

8  pretty good idea, Mr. Eckstein doesn't seem like one to hold

9  back on what his issues are, but --

10        MR. SCHROCK:  Certainly.

11        THE COURT:  So I think you have a pretty clear

12  understanding of what the issues are, whether they're in a form

13  of a filed objection or not.  Am I wrong in that?

14        MR. LEE:  Your Honor, could I just intercede here

15  because I don't think this is a necessary debate.  I think that

16  the committee counsel has indicated that they are prepared to

17  consider providing on an informal basis a letter that sets out

18  in some fashion or another what objections they might have.

19  And the reason why there might be some value in that, Your

20  Honor, is if we're going to both be submitting simultaneous

21  briefs on August the 7th, it might go some way to narrowing the

22  issues if we all, for example, have common grounds that the

23  agreement needs to be reached -- I'm sorry -- needs to be

24  approved and that what we're discussing, Your Honor, isn't the

25  existential threat that's created by rejecting the agreement or

1   not approving it but rather under what terms it's to be

2   approved.

3          THE COURT:  Let me ask you this.

4          MR. LEE:  If we could --

5          THE COURT:  Have you sat down in the same room

6   together and Mr. Eckstein laid out for you specifically what

7   his problems, legal and factual, are and you've had a chance to

8   respond to that on an informal basis?  Has that happened?

9          MR. LEE:  Mr. Eckstein and I have the habit of

10  speaking to each other several times every day.

11         THE COURT:  But have been in the same room when you've

12  done this?

13         MR. LEE:  Only in relation, Your Honor, to what I

14  would describe as the factual predicate.  I think that where we

15  are, I'd suggest, not one hundred percent clear is on the legal

16  issues and the legal principals.  And if he were kind enough to

17  just --

18         THE COURT:  Well, here, I've got a 2 o'clock calendar,

19  so let me just stop you there.

20         MR. LEE:  Yeah.

21         THE COURT:  I was supposed to be out of town next

22  week, and I've had to alter those plans.  I'd like to schedule

23  another telephone, on-the-record, status conference for

24  Wednesday, August 1st, at 4 o'clock.  There's a very slight

25  chance I might have to alter that, but I think I should be

RESIDENTIAL CAPITAL, LLC, ET AL.                                    27

1   able -- that time should work for me.

2         And what I want to happen is, before -- no later than

3   Tuesday, the 31st, Mr. Eckstein, I want you to meet with Mr.

4   Lee and Mr. Schrock and whoever else needs to be part of this

5   discussion.  You need to be in the same room with each other.

6   I know you've been talking to each other about a lot of these

7   things, but I really want you to sit down face-to-face, see

8   whether you can narrow -- hopefully, resolve the issues, if

9   not, narrow them.  The committee -- I'm sure the committee is

10  talking about this regularly, but you want to be in a position

11  to know with authority what the committee is prepared to accept

12  or recommend for approval.

13        MR. ECKSTEIN:  Your Honor, I'm -- and I know you have

14  a hearing, I know you have a calendar, and I will ultimately do

15  whatever Your Honor would like me to do.  That said, I think,

16  on this one, I have to say, I -- and I think I was pretty clear

17  on Tuesday about exactly what our views are on this motion.

18  And I spent three full days, really at the request of Mr.

19  Schrock, meeting with my clients with Mr. Marana, who's the CEO

20  of the debtor, with the CEO of Ally Bank, and with the general

21  counsel and the executive vice president of AFI on three

22  consecutive days.  Each meeting was several hours --

23        THE COURT:  Okay.

24        MR. ECKSTEIN:  -- with counsel and clients, and they

25  know exactly what our issues are, factual and legal.  And to

1  suggest that there's any misunderstanding, a formal proposal

2  was made by the committee to which there has not been a

3  response.

4          THE COURT:  Okay.

5          MR. ECKSTEIN:  And I'm happy to go to whatever

6  meetings I'm told to go to, but I don't want it left suggested

7  that we have not gone over and above what I would think a

8  committee would do to try to frankly solicit a resolution of

9  this issue.

10          THE COURT:  Okay.  Mr. Schrock?

11          MR. SCHROCK:  Yes?

12          THE COURT:  Why haven't you responded with a

13  substantive response to Mr. Eckstein's proposal?

14          MR. SCHROCK:  We did respond, Your Honor.

15          THE COURT:  Okay.  Let's --

16          MR. ECKSTEIN:  Respectfully, Your Honor, it was --

17          THE COURT:  Okay.

18          MR. ECKSTEIN:  -- they did not change their position

19  from the position that was filed in the Marano declaration.

20          THE COURT:  All right.  We'll just go forward.  I want

21  to know -- let me know tomorrow whether the hearing is being

22  moved or whether it's going forward on the 14th.  If we're

23  going forward on the 14th, that's fine, except that when I say

24  it's fine, if the debtors haven't completed all of -- all, all,

25  electronic, everything -- if they haven't completed all

1  discovery production by Monday at noon, contact the Court, Mr.

2  Eckstein, and the Court will take appropriate action at that

3  point.  So I think you all know what the options are.

4         Forget the point about the face-to-face meeting.  I do

5  want to have a status conversation by telephone, as I

6  indicated.

7         MR. ECKSTEIN:  Your Honor, I -- and I will assure Your

8  Honor, and I was pleased to hear Mr. Schrock say that he

9  doesn't think we're that far apart.  And if that suggests that

10 there are going to be further discussions, I will assure Your

11 Honor that we will be at those meetings.  There is no

12 reluctance to sit down and try.  As Mr. Lee said, there's a lot

13 of dialogue in this case.

14        THE COURT:  I have never perceived that there was any

15 reluctance on your part to sit down and try and resolve issues.

16 So that --

17        MR. ECKSTEIN:  If I may, Your Honor, I know you have

18 to go, but there is the simple issue of we have negotiated a

19 confidentiality agreement with AFI.

20        THE COURT:  Yes.

21        MR. ECKSTEIN:  We've also completed confi's with

22 ResCap and with Cerberus.  AFI has now raised the suggestion

23 that there needs to be a protective order.  We have not had

24 protective orders in this case with any other party.  We didn't

25 think a protective order was needed.  We had a separate confi

1  in addition to bylaws.  We have a professional-eyes-only

2  carve-out.  But before we sort of raise this to the level of

3  protective order, we frankly wanted to raise it; we thought a

4  confi was sufficient, and we were really unclear why there's a

5  need for a court protective order in order to simply have

6  documents exchanged.

7          THE COURT:  Mr. Schrock.

8          MR. ECKSTEIN:  And so right now, there's a delay in

9  any documents coming from AFI until that issue got sorted out.

10          THE COURT:  Mr. Schrock, what's your answer?

11          MR. SCHROCK:  Your Honor, I feel I'm a bit unarmed on

12  that one.  My litigator, Mr. McKane, I believe is in the Hawker

13  Beechcraft KEIP hearing at the moment.  He had to drop for the

14  2 o'clock hearing.  I am aware of the issue.  I didn't believe

15  that there was any delay in getting documents over to the

16  committee.  In fact, I was told they were going over on a

17  professional-eyes-only basis that I heard Mr. O'Neill say

18  earlier.  So we'll work it out, Your Honor, and we'll get to

19  the bottom of it.  I just don't have an answer for you at the

20  moment.

21          THE COURT:  Mr. Eckstein?

22          MR. ECKSTEIN:  Given the speed with which we would

23  have to proceed, I just don't want this to hold up our ability

24  to receive documents, and I can't accept every document on a

25  professional-eyes-only basis; that's just not reasonable.

RESIDENTIAL CAPITAL, LLC, ET AL.                                31

1      MR. SCHROCK:  Yeah.  Mr. Eckstein's right; we're not

2   looking to be unreasonable.

3      THE COURT:  I just -- look, the committee needs to

4   have a full and fair opportunity to prepare for and present its

5   case.  If there are roadblocks, stumbling blocks that are put

6   in the way of that, I'll just move the hearing; that's what the

7   result is.  I don't need to deal with that today.  I'm just

8   telling you right now, we'll have a conference call next

9   Wednesday, and I'll see where things are.  But before that, I

10  want to know by tomorrow whether the dates -- I need to know

11  whether the dates of the hearing are being moved or not.  That

12  I need to know by tomorrow.  So you need to come to some

13  agreement among yourselves about that, okay?

14      All right.  I have to adjourn this because I've got

15  to --

16      MR. SCHROCK:  That's fine, Your Honor.

17      THE COURT:  -- start my next hearings.  All right.

18      MR. ECKSTEIN:  Your Honor, can I assume that if we

19  move to the 16th, that the pleadings are due seven days in

20  advance?

21      THE COURT:  Yes.

22      MR. ECKSTEIN:  All right.  Thank you, Your Honor.

23      THE COURT:  Yes.

24      Okay.  Thank you, everybody.

25      IN UNISON:  Thank you, Your Honor.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                              32

1          THE COURT:  All right.

2          MR. LEE:  Thank you, Your Honor.

3     (Whereupon these proceedings were concluded at 2:06 PM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

33

**C E R T I F I C A T I O N**

I, David Rutt, certify that the foregoing transcript is a true

and accurate record of the proceedings.

_____

DAVID RUTT

AAERT Certified Electronic Transcriber CET**D-635

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  July 27, 2012

**A**

**ability** (1)
30:23
**able** (9)
12:5,11;15:12;
16:4;21:14;22:6,24;
25:5;27:1
**above** (1)
28:7
**absence** (1)
8:10
**absolutely** (1)
24:1
**accept** (3)
6:6;27:11;30:24
**acceptable** (1)
5:9
**accommodate** (1)
11:19
**accusing** (1)
10:23
**across** (1)
10:22
**acted** (2)
12:18,19
**action** (3)
10:18;21:1;29:2
**actually** (3)
5:8,15;18:22
**addition** (1)
30:1
**additional** (3)
5:21;9:16;16:7
**address** (3)
23:8;24:9;25:5
**adjourn** (1)
31:14
**adjusted** (1)
9:23
**advance** (1)
31:20
**adverse** (1)
18:14
**AFI** (17)
5:17;6:4,13;10:10;
14:7;18:13,16,22;
20:12,14;22:18;
24:16,17;27:21;
29:19,22;30:9
**afternoon** (1)
6:25
**again** (5)
6:8;16:12,20;
17:16;19:16
**aggressive** (1)
10:25
**agree** (6)
20:19;21:4,10;
23:2,4;24:14
**agreement** (16)
10:6,9;13:8,25;

**16:11;20:6,13;23:18,**
**23,25;24:3,25;25:23,**
**25;29:19;31:13**
**ahead** (4)
7:2;9:20;11:24;
23:14
**allocate** (1)
21:23
**allocated** (1)
22:2
**allocating** (1)
21:24
**allow** (3)
16:8,8;20:8
**Ally** (22)
4:3,3,11,11;6:12;
14:7;16:16,16,21,21;
18:13;20:12,14,15,
18,22;21:4,8;22:16;
23:17,18;27:20
**almost** (1)
6:15
**along** (1)
17:24
**alter** (2)
26:22,25
**altering** (1)
20:11
**although** (1)
15:16
**always** (3)
9:2;17:19;22:20
**ambiguity** (1)
8:22
**among** (1)
31:13
**amount** (1)
24:12
**anticipate** (4)
14:4;17:25;18:5;
19:5
**apart** (1)
29:9
**apologize** (1)
5:4
**appearances** (1)
5:5
**applicable** (2)
23:1,7
**application** (1)
21:1
**applies** (1)
14:4
**apply** (3)
12:23;23:3,9
**appreciate** (4)
16:21;17:20,21;
25:4
**appropriate** (6)
9:24;10:18;12:18;
21:1;23:3;29:2
**approval** (1)
27:12

**approved** (5)
13:19;24:1,3;
25:24;26:2
**approving** (1)
26:1
**argument** (1)
24:25
**arguments** (1)
6:22
**around** (1)
24:24
**aside** (1)
21:16
**associates** (2)
14:19,23
**assume** (2)
22:19;31:18
**assumed** (1)
7:23
**assure** (2)
29:7,10
**attached** (1)
8:18
**Attorneys** (3)
4:3,11;7:11
**August** (6)
10:7;16:14;19:21;
20:7;25:21;26:24
**authority** (1)
27:11
**availability** (3)
14:23;16:6;17:18
**available** (6)
10:16;14:19,23;
16:3;18:25;19:5
**Avenue** (1)
4:4
**avoid** (1)
16:9
**aware** (1)
30:14

**B**

**back** (13)
5:16;9:4,5;15:9,10,
10,16,17,17;17:18,
20;21:8;25:9
**backdrop** (1)
13:11
**bad** (1)
10:23
**Bank** (15)
4:3,11;6:12;14:8;
16:16,21;20:12,15,
15,18,22;21:4,9;
22:17;27:20
**bankruptcy** (1)
8:25
**basically** (2)
7:22;21:2
**basis** (7)
6:7;8:24;18:14;

**25:17;26:8;30:17,25**
**bear** (1)
19:18
**Beechcraft** (1)
30:13
**begin** (2)
5:6;6:7
**beginning** (4)
5:17;6:18;15:17;
19:22
**begins** (1)
20:21
**behalf** (5)
10:4,5;16:15;
18:16;21:9
**bench** (1)
21:14
**benefit** (1)
14:12,12
**better** (1)
21:4
**beyond** (2)
11:14;18:11
**bit** (2)
18:7;30:11
**blocks** (1)
31:5
**board** (2)
5:22;13:24
**both** (4)
21:23;23:2,16;
25:20
**bottom** (1)
30:19
**Brad** (3)
5:8,11;7:15
**break** (1)
20:1
**bridge** (2)
16:4;23:20
**briefs** (1)
25:21
**burden** (1)
19:13
**business** (8)
12:17,24;13:4,10,
12,14;22:18;23:2
**businesspeople** (1)
22:16
**bylaws** (1)
30:1

**C**

**CA** (1)
4:13
**calendar** (6)
16:5;17:21;19:10;
20:11;26:18;27:14
**California** (1)
4:12
**call** (3)
8:17,25;31:8

**called** (1)
15:6
**came** (1)
23:6
**can** (14)
6:2;12:20,24;
17:17;18:24;19:20;
20:25;21:18;22:21;
23:19,20;24:5;27:8;
31:18
**Capital** (1)
5:3
**caption** (1)
8:19
**care** (2)
11:9;12:20
**Carpenter** (1)
14:20
**carve-out** (1)
30:2
**case** (9)
6:11;10:22;11:15;
17:10;19:3,4;29:13,
24;31:5
**cases** (2)
21:20;22:3
**catastrophic** (1)
10:11
**cause** (1)
10:11
**caused** (2)
19:17;22:3
**CEO** (1)
27:19,20
**Cerberus** (1)
29:22
**certainly** (10)
8:25;17:4,6;19:12;
21:8,9;24:8,17,22;
25:10
**chance** (1)
18:20;26:7,25
**change** (1)
28:18
**choices** (1)
11:8
**circumstances** (1)
21:2
**clear** (5)
8:21;21:12;25:11;
26:15;27:16
**client** (2)
11:11;21:9
**clients** (2)
27:19,24
**closer** (1)
21:18
**collected** (2)
7:9;15:25
**coming** (1)
10:22;30:9
**commence** (2)
12:5;14:20

**commencing (1)**
7:12
**comment (2)**
23:11,12
**commit (1)**
6:8
**commitments (1)**
20:2
**committee (29)**
5:14;7:6;8:1,12;
9:9;10:25;12:1;13:5;
14:6;15:11;16:2;
17:5,7,9;18:21;
20:25;22:22;23:17;
24:15,22;25:2,16;
27:9,9,11;28:2,8;
30:16;31:3
**committee's (5)**
6:5;7:14;11:19;
12:15;24:10
**committing (1)**
21:13
**common (2)**
8:25;25:22
**company (1)**
15:5
**comparatively (1)**
5:20
**complained (1)**
22:1
**complete (6)**
5:22;6:2;7:4;15:1;
19:15;21:3
**completed (4)**
20:24;28:24,25;
29:21
**complex (1)**
9:9
**computer (1)**
19:17
**concerned (2)**
8:4,23
**concluded (2)**
20:22;32:3
**concluding (1)**
12:5
**conclusion (1)**
21:15
**conduct (3)**
8:8;9:17;11:4
**conducted (1)**
7:21
**conducting (2)**
14:21,22
**confer (1)**
8:11
**conference (3)**
22:14;26:23;31:8
**confi (2)**
29:25;30:4
**confidentiality (1)**
29:19
**confi's (1)**

29:21
**consecutive (1)**
27:22
**consider (5)**
9:6;14:2;17:15;
20:8;25:17
**consideration (1)**
13:9
**considered (1)**
9:2
**consultants (2)**
14:16;15:4
**contact (1)**
29:1
**contemplate (2)**
8:9,12
**contemplating (1)**
8:5
**contested (2)**
9:10,12
**context (1)**
24:8
**contingent (1)**
20:5
**continue (2)**
20:3;23:19
**continued (1)**
11:13
**conversation (1)**
29:5
**copy (1)**
25:1
**corner (1)**
16:19
**Counsel (5)**
14:20;16:2;25:16;
27:21,24
**couple (6)**
8:6;11:7;15:18;
17:23;19:20;21:3
**COURT (65)**
5:2,10;6:24;7:2,17;
8:3,23;10:2,13;12:7,
14;13:1,13,16,19;
14:3,14;15:2,7,22;
16:12,17,24;17:5,20,
25;18:5;19:9,12,20;
20:16,18;21:7,12;
22:23;23:9,14;24:10;
25:7,11;26:3,5,11,18,
21;27:23;28:4,10,12,
15,17,20;29:1,2,14,
20;30:5,7,10,21;31:3,
17,21,23;32:1
**Court's (1)**
13:8
**covered (1)**
15:8
**created (1)**
25:25
**creditors' (2)**
7:13;24:2
**cross (1)**

18:10
**cross-examination (2)**
18:19;19:6
**current (1)**
10:6;14:10
**currently (2)**
14:19;24:12

**D**

**damage (1)**
10:11
**data (2)**
7:9;12:10
**database (1)**
15:6
**date (7)**
5:20;16:12,13;
20:6,13,23;21:18
**dates (3)**
20:20;31:10,11
**day (3)**
20:10;21:22;26:10
**days (9)**
8:6;11:14;16:7;
19:21;20:20;21:3;
27:18,22;31:19
**deadline (2)**
17:13;20:6
**deal (3)**
11:11;17:20;31:7
**debate (1)**
25:15
**debtor (3)**
10:24;22:9;27:20
**debtors (22)**
5:16,25;6:21,24;
7:7,20,25;8:2,9;10:4,
7;12:4;13:4,9;14:10,
12;19:3;20:15,18;
21:3;23:18;28:24
**debtors' (3)**
12:17;19:3;24:2
**decide (1)**
21:13
**decides (1)**
12:23
**decision (2)**
16:18;17:15
**declarants (1)**
6:11
**declaration (2)**
5:18;28:19
**declarations (1)**
19:4
**defendant (1)**
11:15
**defer (1)**
22:11
**definitely (1)**
23:8
**definitions (1)**
8:20

**definitively (1)**
13:22
**delay (3)**
19:17;30:8,15
**delivered (2)**
7:18,22
**depending (2)**
12:23;18:21
**deposed (1)**
6:11
**deposition (3)**
10:16;18:10,11
**depositions (13)**
5:16;6:13,17,20;
9:18;11:3,4,25;12:6,
12;16:9;18:8,16
**describe (1)**
26:14
**described (1)**
6:20
**designations (1)**
18:12
**devote (1)**
14:25
**dialogue (1)**
29:13
**different (1)**
23:25
**difficult (1)**
19:14
**difficulties (1)**
15:19
**direct (1)**
19:4
**directors (1)**
13:20
**directs (1)**
18:19
**disagreeing (1)**
23:22
**disagreement (1)**
23:23
**disagreements (2)**
23:16,20
**discovery (28)**
5:9,22;6:1;7:3,4,
19;8:1,2,8,11,13,14;
9:9,11;10:14,17,25;
11:6,16,16,19;14:21;
15:2,8;17:10;19:13;
22:10;29:1
**discussing (1)**
25:24
**discussion (1)**
27:5
**discussions (4)**
22:9,12,18;29:10
**disinterested (1)**
12:19
**dispute (1)**
24:18
**doctrine (1)**
14:3

**document (7)**
5:16;8:18,19;9:3;
20:21,24;30:24
**documents (16)**
5:15,20,21,23,25;
6:6,17;9:2,17;11:4,
24;13:6;30:6,9,15,24
**DOJ (1)**
13:11
**DOJ's (1)**
14:8
**dollar (1)**
24:12
**dollars-wise (1)**
24:21
**done (5)**
7:8;15:4;21:25;
22:3;26:12
**double (1)**
6:14
**doubt (1)**
22:24
**down (6)**
21:2,10;26:5;27:7;
29:12,15
**dragging (1)**
17:7
**drives (1)**
15:22
**driving (1)**
10:24
**drop (1)**
30:13
**DTI (1)**
15:6
**due (3)**
7:4;12:20;31:19
**dump (1)**
12:10

**E**

**earlier (2)**
15:11;30:18
**Eckstein (24)**
5:6,7;22:11,13,13;
24:7;25:8;26:6,9;
27:3,13,24;28:5,16,
18;29:2,7,17,21;30:8,
21,22;31:18,22
**Eckstein's (2)**
28:13;31:1
**effect (1)**
11:14
**effectively (1)**
14:9
**efforts (3)**
7:4,7;22:25
**either (4)**
10:24;11:8,19;
22:23
**electronic (18)**
5:22;6:1;7:7,19,21;

8:8,11,13,14,21;
10:14;11:16;14:16,
21;15:2,8;19:13;
28:25
**ELLIS (2)**
4:2,10
**else (1)**
27:4
**end (4)**
7:20;8:7;16:6;20:1
**endeavor (1)**
14:24
**ENGELHARDT (29)**
6:25;7:1,3,24,24;
8:5;9:25;10:2,3,4;
12:2,3,4;13:1,3,14,
17,21;14:15,18;15:5,
9,23,24;16:13;19:2,2;
22:8,8
**enough (3)**
8:3;22:1;26:16
**entered (1)**
14:8
**entire (3)**
13:13;14:3;23:6
**entirety (2)**
14:11;24:24
**entitled (4)**
9:9,11;17:5,9
**ESQ (2)**
4:7,15
**essential (1)**
10:21
**estates (2)**
10:6,12
**estate's (1)**
24:2
**estimate (1)**
19:25
**evaluating (1)**
18:18
**Even (3)**
6:13;18:25;20:20
**evening (2)**
6:8;20:2
**everybody (4)**
10:16;24:1,5;31:24
**everyone (1)**
8:17
**evidence (1)**
17:15
**evidentiary (8)**
9:12;11:2;12:15;
14:4;18:1,6;19:16;
22:7
**exactly (2)**
27:17,25
**example (1)**
25:22
**except (1)**
28:23
**exchanged (1)**
30:6

**execution (2)**
13:5,7
**executive (1)**
27:21
**executives (2)**
22:16,18
**exercise (2)**
12:17;13:4
**exercised (2)**
13:9,12
**existential (1)**
25:25
**expect (1)**
11:2
**expected (1)**
11:3
**expedited (1)**
8:24
**expeditious (2)**
9:11;17:21
**expeditiously (2)**
17:3;20:10
**expiration (6)**
16:10,12,13;20:6,
13,23
**expires (1)**
10:7
**extend (1)**
20:12
**extension (2)**
20:19;21:5
**extensive (2)**
22:15,17
**extent (2)**
18:11,18
**extra (1)**
21:3
**extremely (1)**
6:15

## F

**face-to-face (2)**
27:7;29:4
**facing (1)**
13:11
**fact (3)**
21:25;22:1;30:16
**factual (4)**
14:1;26:7,14;27:25
**fair (3)**
17:9;21:24;31:4
**fairness (3)**
13:13;14:3;23:6
**faith (3)**
10:23;12:20;22:25
**far (3)**
8:3,23;29:9
**fashion (3)**
9:18,24;25:18
**FDIC (1)**
10:10;21:11
**feel (2)**

16:21;30:11
**feet (1)**
17:7
**few (3)**
5:20;19:7;20:20
**filed (2)**
25:13;28:19
**filing (1)**
25:3
**filtered (1)**
16:1
**Financial (4)**
4:3,11;16:16,21
**find (2)**
11:19;22:21
**fine (4)**
16:25;28:23,24;
31:16
**finishing (1)**
6:8
**firm-wide (1)**
14:24
**first (3)**
6:1;13:6;15:18
**fiscal (1)**
13:10
**five (1)**
6:13
**focused (1)**
22:10
**Foerster (4)**
7:1;14:25;19:3;
23:11
**following (2)**
9:18,23
**follows (1)**
19:16
**Forget (1)**
29:4
**form (4)**
6:21;7:21;23:2;
25:12
**formal (4)**
8:19;9:3,6;28:1
**forthwith (1)**
8:15
**forward (15)**
9:10;10:21;11:2,3,
23;15:21;17:3;19:24;
22:7;23:1;24:14,23;
28:20,22,23
**fourteen (1)**
11:14
**frame (2)**
8:7;17:22
**Francisco (1)**
4:13
**Frankly (3)**
12:12;28:8;30:3
**freezing (1)**
19:17
**frequently (2)**
21:19,20

**Friday (3)**
12:6;20:3,7
**front (1)**
5:5
**full (3)**
17:21;27:18;31:4
**fully (1)**
17:20
**fundamentally (1)**
23:25
**Further (2)**
19:17;29:10

## G

**gap (2)**
16:5;24:21
**Gary (1)**
23:10
**gathered (2)**
7:8;15:13
**gathering (2)**
14:19,22
**general (1)**
27:20
**generally (1)**
18:23
**given (3)**
13:10;18:23;30:22
**Glenn (2)**
5:2,11
**GMAC (1)**
20:17
**goes (4)**
9:10;15:9,10,10
**Good (6)**
5:11;6:25;12:20;
16:17;22:25;25:8
**great (2)**
9:25;10:9
**grounds (1)**
25:22
**guess (2)**
6:4,19

## H

**habit (1)**
26:9
**half (1)**
20:1
**handle (1)**
5:8
**hands (1)**
7:14
**happen (3)**
20:25;21:14;27:2
**happened (1)**
26:8
**happy (1)**
28:5
**hard (3)**
10:23;15:22;16:22

**Hawker (1)**
30:12
**hear (3)**
17:1;18:3;29:8
**heard (2)**
23:6;30:17
**hearing (33)**
5:4,14;8:5;9:10,12,
19,21,23;10:21;
11:17,23;12:15;
16:10;17:12;18:1,6;
19:16,20,20;23;
21:15,16;22:7,20;
23:16;24:9,11,23;
27:14;28:21;30:13,
14;31:6,11
**hearings (2)**
9:11;31:17
**heightened (1)**
12:21
**hold (3)**
19:16;25:8;30:23
**hold-up (1)**
7:5
**Honor (62)**
5:7;6:10,25;7:15,
24;8:16;9:15,19,21,
25;10:3;12:3,4,9,17,
23;13:3,15,18,22,23;
14:6,18;15:15;16:4,6,
15,20;17:16,22;18:3,
7,15;19:2;20:14;
21:6;22:8,13;23:10,
22,24;24:7,20;25:14,
20,24;26:13;27:13,
15;28:14,16;29:7,8,
11,17;30:11,18;
31:16,18,22,25;32:2
**Honor's (2)**
6:15;16:5
**hope (3)**
21:15;22:6;23:15
**hopeful (1)**
12:4
**hopefully (3)**
7:12;22:5;27:8
**hour (1)**
20:1
**hours (1)**
27:22
**huge (2)**
12:10;24:21
**hundred (1)**
26:15

## I

**idea (1)**
25:8
**identify (1)**
7:7
**ignore (1)**
9:4

**imagine (1)**
7:10
**immediately (1)**
8:15
**imposed (1)**
24:4
**imposing (1)**
11:13
**impossible (5)**
6:16;8:8;11:8,9;
12:13
**imprecise (1)**
24:18
**Inc (2)**
4:3,11
**inception (1)**
14:8
**including (1)**
11:16
**incredible (1)**
10:5
**indemnification (1)**
14:7
**indemnity (3)**
23:24;24:13,15
**independent (1)**
13:20
**indicated (3)**
22:14;25:16;29:6
**inform (1)**
15:15
**informal (6)**
8:2,16;9:1,1;25:17;
26:8
**information (6)**
7:8,21;8:21;11:21,
22;14:17
**informed (1)**
15:11
**injunction (1)**
11:13
**in-person (1)**
22:15
**instruct (1)**
10:10
**intend (1)**
23:18
**intercede (1)**
25:14
**interested (1)**
6:21
**interested-party (1)**
12:22
**interesting (1)**
13:23
**interests (1)**
24:2
**internally (1)**
7:11
**into (3)**
7:13;14:8;16:7
**introduce (1)**
16:7

**investigation (1)**
14:8
**involved (3)**
22:9,12;24:13
**issue (11)**
6:19,19,23;14:1;
17:19;23:25;24:14;
28:9;29:18;30:9,14
**issues (19)**
5:9,13;6:5;9:8;
12:14,16;13:1,3;
22:7;24:8,24;25:6,9,
12,22;26:16;27:8,25;
29:15

**J**

**jam (1)**
17:22
**January (4)**
13:7;15:10,13,21
**Judge (2)**
5:2,11
**judgment (7)**
12:17,24;13:4,10,
12,14;23:3
**July (5)**
5:17;7:18;8:2,6;
20:25

**K**

**KEIP (1)**
30:13
**Kenneth (1)**
22:13
**kicked (1)**
8:14
**kind (1)**
26:16
**KIRKLAND (2)**
4:2,10

**L**

**laid (1)**
26:6
**large (1)**
24:12
**last (6)**
7:20;15:18,25;
22:15;23:16;24:11
**late (3)**
5:4;6:3;7:22
**later (2)**
20:4;27:2
**lawyer (1)**
14:15
**learned (2)**
7:20;8:13
**least (1)**
12:22
**leave (2)**

17:13;20:20
**leaves (1)**
16:18
**Lee (12)**
22:12;23:10,10,15;
25:14;26:4,9,13,20;
27:4;29:12;32:2
**left (1)**
28:6
**legal (7)**
24:8,25;25:6;26:7,
15,16;27:25
**letter (5)**
8:2,18;9:2;13:7;
25:17
**level (1)**
30:2
**Lexington (1)**
4:4
**liability (2)**
14:10,11
**lies (1)**
23:23
**light (1)**
6:15
**likes (1)**
24:5
**Lipps (1)**
14:20
**list (1)**
5:5
**litigation (1)**
22:10
**litigator (1)**
30:12
**little (1)**
18:7
**live (4)**
11:21;18:19;19:7;
24:5
**LLC (1)**
5:3
**LLP (2)**
4:2,10
**loaded (1)**
15:12
**loading (1)**
15:6
**loans (1)**
10:11
**look (7)**
10:22;11:12,18;
16:17;18:16;22:23;
31:3
**looking (3)**
17:22;19:9;31:2
**looks (1)**
16:5
**lot (3)**
24:13;27:6;29:12

**M**

**majority (1)**
13:19
**making (2)**
7:4;21:11
**manageable (1)**
9:16
**many (6)**
14:14,15,25;17:25;
18:5;21:21
**Marana (1)**
27:19
**Marano (2)**
5:18;28:19
**MARK (2)**
4:15;18:15
**material (1)**
5:23
**materials (2)**
9:20;15:13
**matter (3)**
21:10,25;22:14
**matters (2)**
19:23;22:10
**may (5)**
7:15;19:7;21:13;
23:3;29:17
**maybe (2)**
6:3;18:10
**MCKANE (5)**
4:15;18:15,15;
19:6;30:12
**mean (8)**
11:18;14:1;15:3;
19:12,20;21:19;23:6;
24:17
**meet (4)**
8:10;12:25;22:15;
27:3
**meeting (5)**
14:1;22:17;27:19,
22;29:4
**meetings (3)**
22:15;28:6;29:11
**mid-next (1)**
6:9
**might (8)**
16:4,7;17:14;
18:13;25:18,19,21;
26:25
**mind (2)**
23:7,24
**minimum (1)**
6:17
**minutes (2)**
5:23;13:24
**misunderstanding (1)**
28:1
**moment (2)**
30:13,20
**Monday (11)**
6:1;7:6;10:15,17;
11:22;12:5,12;17:13;
20:21,24;29:1

**money (1)**
24:13
**months (2)**
15:18;17:23
**more (7)**
8:24;9:16,18;
18:21;21:17,18,21
**morning (3)**
5:11;19:22;20:3
**Morrison (4)**
7:1;14:24;19:3;
23:11
**Mortgage (1)**
20:17
**most (3)**
18:8;19:25;21:20
**motion (4)**
13:9;14:11;17:23;
27:17
**move (7)**
17:12,24;19:15,20;
20:23;31:6,19
**moved (2)**
28:22;31:11
**moving (2)**
17:3;20:20
**much (5)**
5:7;8:24;9:1;
19:14;21:16
**must (1)**
20:24

**N**

**narrow (2)**
27:8,9
**narrowing (1)**
25:21
**nature (1)**
25:4
**necessary (7)**
11:20;14:25;18:11;
20:3,4;22:4;25:15
**need (15)**
6:11;9:10;11:4;
15:16;17:14;19:24;
20:1;21:3;23:22;
27:5;30:5;31:7,10,12,
12
**needed (1)**
9:25
**needs (5)**
25:23,23;27:4;
29:23;31:3
**negotiated (1)**
29:18
**negotiation (1)**
13:5
**negotiations (1)**
23:12
**neither (1)**
24:5
**New (2)**

4:5;13:8
**next (6)**
6:18;9:17;20:22;
26:21;31:8,17
**nice (1)**
10:13
**night (3)**
7:6;15:25;19:23
**nobody (2)**
11:1;24:5
**nondebtor (2)**
11:15;14:13
**nonlawyers (2)**
14:15;15:3
**noon (2)**
20:24;29:1
**notice (2)**
9:6;18:22
**number (4)**
5:3;6:19,19;18:16
**NY (1)**
4:5

### O

**objection (3)**
25:2,3,13
**objections (2)**
17:10;25:18
**objectors (1)**
10:22
**obligation (1)**
24:15
**observation (1)**
23:21
**observed (1)**
17:7
**obtaining (1)**
6:21
**obviously (2)**
22:21;23:19
**o'clock (7)**
19:23,25;20:2,4;
26:18,24;30:14
**often (1)**
19:14
**one (8)**
8:17;11:18;17:6;
23:2;25:8;26:15;
27:16;30:12
**O'Neill (21)**
5:8,11,12;7:15,15,
18;8:16;9:13,15;
12:7,9,16;13:23;
14:6;15:15;16:4;
18:2,3,7;20:17;30:17
**one's (1)**
21:25
**only (5)**
17:1;20:20;21:14;
24:18;26:13
**on-the-record (1)**
26:23

**onto (1)**
15:6
**onward (1)**
15:14
**operating (1)**
10:7
**opportunity (3)**
17:6,9;31:4
**optimistic (1)**
22:21
**options (1)**
29:3
**order (8)**
6:5;11:8,12;29:23,
25;30:3,5,5
**orderly (1)**
9:18
**orders (1)**
29:24
**original (1)**
7:18
**out (10)**
7:12;8:17;14:11;
17:11;18:11;25:17;
26:6,21;30:9,18
**over (3)**
28:7;30:15,16

### P

**page (1)**
21:11
**paid (1)**
24:12
**paper (1)**
14:17
**parent (2)**
12:23;14:12
**part (2)**
27:4;29:15
**particular (1)**
12:18
**particularly (1)**
19:13
**parties (10)**
5:24;8:24;9:11;
20:13;23:4,8,13,20;
24:4,22
**partner (1)**
5:8
**party (1)**
29:24
**Pause (4)**
19:8,9,11,19
**pay (2)**
14:11;23:24
**payments (1)**
24:13
**pending (1)**
6:6
**people (4)**
10:14;14:14,15;
17:25

**perceived (1)**
29:14
**percent (1)**
26:15
**Perhaps (1)**
22:11
**period (3)**
15:7,7,9
**permit (1)**
11:14
**perspective (1)**
5:14
**persuade (1)**
21:4
**place (2)**
16:22;20:21
**plans (1)**
26:22
**pleadings (1)**
31:19
**pleased (1)**
29:8
**pm (2)**
20:7;32:3
**point (8)**
11:5;16:23;17:14;
22:19;24:19,22;29:3,
4
**position (5)**
24:16,17;27:10;
28:18,19
**possible (5)**
7:5,14;15:21;16:3;
20:10
**possibly (1)**
18:20
**practicalities (1)**
15:20
**practice (1)**
18:20
**precisely (1)**
19:14
**predicate (1)**
26:14
**predict (1)**
19:14
**preexisting (1)**
14:7
**preliminary (1)**
11:13
**preparation (1)**
16:9
**prepare (3)**
12:11;17:10;31:4
**prepared (9)**
6:4,14,16;9:21;
19:15,21;24:9;25:16;
27:11
**present (4)**
9:25;10:5;17:10;
31:4
**presented (1)**
18:9

**presents (1)**
6:10
**president (1)**
27:21
**pressure (4)**
16:22;17:1,2,2
**pretty (4)**
21:24;25:8,11;
27:16
**preview (1)**
6:22
**previously (1)**
25:2
**principal (1)**
5:13
**principally (1)**
13:5
**principals (1)**
26:16
**prior (1)**
16:11
**privilege (1)**
7:11
**probably (4)**
10:23;18:14;24:18;
25:7
**problem (1)**
6:10
**problems (3)**
10:1,5;26:7
**proceed (1)**
30:23
**proceeding (1)**
8:15
**proceedings (2)**
25:4;32:3
**process (4)**
8:14;14:20;16:1;
18:25
**processing (2)**
7:10;16:1
**produce (4)**
5:24;10:14;11:15;
16:8
**produced (3)**
9:17;10:15,17
**production (14)**
6:2,7,8;7:11,13;
8:6;11:21;12:5;
14:16;15:1;20:21,24;
21:4;29:1
**professional (1)**
15:3
**professional-eyes-only (3)**
30:1,17,25
**professionals-eyes-only (1)**
6:7
**promised (1)**
5:21
**prompt (1)**
17:8
**promptly (1)**
7:4

**proper (1)**
16:8
**properly (2)**
6:16;9:21
**proposal (2)**
28:1,13
**proposed (2)**
7:5;8:10
**protective (6)**
6:5;29:23,24,25;
30:3,5
**provided (1)**
16:2
**providing (1)**
25:17
**pulled (1)**
10:11
**purpose (1)**
20:7
**pushed (1)**
15:20
**put (7)**
9:5;10:13;11:10;
18:18,25;21:17;31:5
**putting (1)**
11:20

### Q

**quantum (1)**
24:15
**quickly (3)**
7:14;16:3;21:13
**quite (1)**
8:20

### R

**raise (2)**
30:2,3
**raised (4)**
13:5;24:8;25:6;
29:22
**raises (1)**
23:5
**rather (2)**
9:20;26:1
**RAY (7)**
4:7;16:15,20;
17:16;20:14;21:6;
24:20
**Re (1)**
11:12
**reached (1)**
25:23
**reaching (1)**
23:17
**ready (1)**
7:10
**real (1)**
24:12
**realities (1)**
13:10

**reality (1)**
9:8
**realize (1)**
19:12
**really (4)**
25:1;27:7,18;30:4
**reason (1)**
25:19
**reasonable (3)**
11:1;12:8;30:25
**reasoned (1)**
17:15
**receive (1)**
30:24
**received (3)**
5:20;7:5;18:22
**receiving (1)**
5:18
**recognizes (1)**
24:1
**recommend (1)**
27:12
**record (1)**
5:3
**regard (1)**
25:1
**regularly (1)**
27:10
**regulators (2)**
16:23,24
**rejecting (1)**
25:25
**relate (2)**
5:15;12:16
**related-party (3)**
13:16,17;23:5
**relates (2)**
12:22;18:21
**relating (2)**
6:5;13:24
**relation (1)**
26:13
**reluctance (2)**
29:12,15
**remains (1)**
20:23
**remark (1)**
23:16
**request (14)**
7:18;8:1,2,16,18,
19;9:4,4,6,7;11:20;
15:8;19:1;27:18
**requested (6)**
7:19;10:17;11:7;
15:10;16:2;18:17
**requesting (1)**
8:10
**requests (4)**
5:16;8:18;9:2;
18:21
**required (2)**
11:17;19:15
**requirements (1)**

12:25
**ResCap (2)**
22:16;29:22
**Residential (1)**
5:3
**resolution (4)**
6:4,6;17:8;28:8
**resolve (4)**
22:6,25;27:8;29:15
**resources (3)**
11:10,20;14:25
**respect (1)**
7:3
**Respectfully (1)**
28:16
**respond (3)**
7:16;26:8;28:14
**responded (1)**
28:12
**response (2)**
28:3,13
**responsibility (1)**
24:16
**result (1)**
31:7
**resume (1)**
20:3
**review (7)**
7:11;8:8;14:20;
15:6,14;16:3;23:9
**right (12)**
5:2;9:22;14:18;
20:18;28:20;30:8;
31:1,8,14,17,22;32:1
**risk (1)**
10:9
**roadblocks (1)**
31:5
**rock (1)**
16:22
**rolling (4)**
7:12,13;11:21;12:5
**room (3)**
26:5,11;27:5
**rule (3)**
12:24;20:8;21:14
**rules (1)**
11:14
**running (1)**
21:10

**S**

**same (6)**
9:3;21:11;25:5;
26:5,11;27:5
**San (1)**
4:13
**sanctions (2)**
10:18;11:13
**sat (1)**
26:5
**satisfy (2)**

12:20,25
**saying (3)**
10:20;11:9;19:7
**schedule (6)**
6:15;9:15,23;
10:25;16:8;26:22
**scheduled (2)**
19:23,25
**SCHROCK (29)**
4:7;16:15,15,20,
20;17:4,16,16;20:14,
14;21:6,6,8;22:11;
24:20,20;25:7,10;
27:4,19;28:10,11,14;
29:8;30:7,10,11;31:1,
16
**scope (1)**
8:11
**search (5)**
7:6,21,22;8:10;
16:2
**searching (1)**
7:23
**second (1)**
19:16
**seeking (3)**
8:9,13;11:1
**seeks (2)**
8:21;14:11
**seem (4)**
23:2,4;24:14;25:8
**seems (1)**
11:23
**senior (1)**
22:17
**sensitive (3)**
17:17;25:3,4
**sent (3)**
7:10;8:1,17
**separate (1)**
29:25
**serve (1)**
9:6
**served (1)**
5:16
**server (1)**
15:13
**servicing (8)**
10:6,8,10;13:8,24;
16:11;20:6;24:14
**set (1)**
21:16
**sets (1)**
25:17
**settle (1)**
21:20
**settlement (1)**
13:11
**seven (1)**
31:19
**several (2)**
26:10;27:22
**short (2)**

19:23,24
**showings (1)**
14:5
**shows (1)**
14:24
**side (4)**
9:5;10:24;14:5,6
**sides (2)**
21:23;22:1
**simple (1)**
29:18
**simply (1)**
30:5
**simultaneous (1)**
25:20
**simultaneously (1)**
14:22
**sit (4)**
9:4;27:7;29:12,15
**six (2)**
18:17,20
**slight (1)**
26:24
**solicit (1)**
28:8
**soon (2)**
8:13;10:8;23:6
**sorry (4)**
10:3;18:3;23:11;
25:23
**sort (4)**
14:1;22:20;23:17;
30:2
**sorted (1)**
30:9
**speak (5)**
6:22,24;13:21;
16:1;17:19
**speaking (2)**
10:2;26:10
**specifically (2)**
21:19;26:6
**speed (1)**
30:22
**spent (1)**
27:18
**standard (8)**
8:20;12:24;13:13,
15;23:3,3,7,8
**standards (1)**
12:21
**standpoint (2)**
12:15;24:11
**start (3)**
8:6;19:21;31:17
**state (1)**
23:12
**stated (1)**
25:2
**status (3)**
22:14;26:23;29:5
**Stefan (6)**
7:1,24;10:4;12:3;

19:2;22:8
**stop (1)**
26:19
**stored (1)**
7:8
**streamline (1)**
22:3
**Street (1)**
4:12
**stuff (1)**
12:12
**stumbling (1)**
31:5
**subject (2)**
6:4;18:10
**submit (1)**
9:20
**submitted (1)**
18:12
**submitting (1)**
25:20
**subsidiary (1)**
14:13
**substantive (2)**
22:18;28:13
**sufficient (3)**
15:21;20:8;30:4
**sufficiently (1)**
12:20
**suggest (2)**
26:15;28:1
**suggested (4)**
11:1,6;17:6;28:6
**suggestion (2)**
17:17;29:22
**suggests (1)**
29:9
**Sunday (1)**
7:6
**support (1)**
13:7
**suppose (1)**
15:16
**supposed (1)**
26:21
**Sure (5)**
7:17;8:17;21:11;
23:1;27:9
**surprisingly (1)**
5:15

**T**

**talk (2)**
16:25;21:18
**talking (2)**
27:6,10
**tape (1)**
15:19
**tapes (1)**
15:12
**team (1)**
14:19

technical (1)
7:5
telephone (2)
26:23;29:5
TELEPHONICALLY (2)
4:7,15
telling (1)
31:8
tend (1)
22:20
tentative (1)
23:18
termed (1)
13:6
terms (7)
7:6,22;8:10;16:2;
24:3,4;26:1
testifying (1)
18:6
testimony (1)
18:13
thought (1)
30:3
threat (1)
25:25
three (6)
6:11;16:7;19:4,7;
27:18,21
Thursday (2)
12:6;19:22
tight (2)
6:15;12:13
times (1)
26:10
timetable (1)
15:20
today (2)
7:10;31:7
together (1)
26:6
told (7)
5:24,25;13:25;
17:11;22:19;28:6;
30:16
tomorrow (4)
7:12;28:21;31:10,
12
topics (1)
18:24
tough (1)
18:8
towards (1)
23:18
town (1)
26:21
track (1)
6:14
transaction (7)
12:19,21,22;13:16,
17;23:5,9
transactions (1)
14:9
transcripts (1)

18:12
transferred (1)
14:10
treated (1)
9:3
trial (1)
21:22
trials (2)
21:21,21
triple (1)
6:14
try (6)
20:9;22:22,25;
28:8;29:12,15
trying (1)
17:23
Tuesday (5)
6:3;7:9;22:14;27:3,
17
twenty (1)
10:14
two (4)
5:13;11:18;13:6;
19:23
type (1)
8:8

U

ultimately (1)
27:14
unarmed (1)
30:11
unclear (1)
30:4
Under (6)
8:7;10:6;13:8;
16:1;21:2;26:1
underlying (1)
9:8
understood (1)
24:11
undue (1)
23:15
uniquely (1)
12:11
UNISON (1)
31:25
unreasonable (2)
11:7;31:2
unwilling (2)
20:12,22
up (5)
8:14;17:23;18:20;
19:17;30:23
upon (1)
24:4
urgent (1)
10:20
use (1)
21:23
used (1)
22:2

usually (2)
8:3;22:2

V

value (1)
25:19
Velo (1)
11:13
vice (1)
27:21
views (1)
27:17

W

wave (1)
6:1
waves (1)
7:13
way (7)
9:3;11:19;21:17,
23;22:21;25:21;31:6
Wednesday (8)
6:3,3;7:9;12:6,13;
20:22;26:24;31:9
week (17)
5:18,18;6:9,18;
7:20;8:7;9:16,17,18,
19,23;15:11;16:6;
20:10,22;22:15;
26:22
weren't (1)
13:25
What's (4)
15:7;16:12;24:24;
30:10
whenever (1)
21:25
Whereupon (1)
32:3
Who's (3)
6:24;15:2;27:19
willingness (2)
6:6;20:5
wish (1)
21:23
within (3)
8:6,7;11:16
without (3)
11:3,24;22:7
witness (3)
6:13;18:13,24
witnesses (7)
17:25;18:5,9,9,20;
19:5,7
work (3)
24:23;27:1;30:18
worked (2)
17:11;18:25
working (5)
5:24;8:24;14:14,
16;25:3

written (1)
18:18
wrong (1)
25:13

Y

York (1)
4:5

1

1 (3)
6:19;11:5;15:21
10 (1)
19:25
10022 (1)
4:5
12 (1)
20:24
12-12020 (1)
5:3
14th (6)
9:22;14:2;16:7;
20:23;28:22,23
16th (3)
17:12;19:21;31:19
17th (1)
17:12
1st (1)
26:24

2

2 (3)
6:19;26:18;30:14
2:06 (1)
32:3
20 (1)
16:14
2004 (1)
14:21
2010 (2)
15:11,17
2011 (1)
15:18
2012 (4)
13:7;15:13,14,21
20th (3)
10:8;17:13;20:11
24th (3)
5:14;8:6;20:7

3

30b6 (2)
6:12;18:22
30th (2)
13:7;20:25
31st (1)
27:3

4

4 (1)
26:24

5

5 (2)
20:4,7
555 (1)
4:12

6

601 (1)
4:4
6th (3)
5:17;7:19;8:2

7

7 (2)
19:22;20:1
7th (1)
25:21

8

8:30 (2)
19:22;20:3

9

94104 (1)
4:13