1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, ET AL.,

9

10             Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14             United States Bankruptcy Court

15             One Bowling Green

16             New York, New York

17

18             August 2, 2012

19             5:06 PM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

1

2 Doc# 941 Notice of Telephonic Conference Regarding Debtors'

3 Motion for an Order Pursuant to Sections 363(b)(1) and

4 503(c)(3) of the Bankruptcy Code Authorizing (I) Implementation

5 of (A) A Key Employee Retention Plan for Certain Non-Insiders

6 and (B) A Key Employee Incentive Plan for Certain Insiders and

7 (II) Payment of Any Obligations Arising Thereunder As

8 Administrative Expenses (related document(s) 812) Document #941

9

10

11

12

13

14

15

16

17

18

19

20 Transcribed by:  David Rutt

21 eScribers, LLC

22 700 West 192nd Street, Suite #607

23 New York, NY 10040

24 (973)406-2250

25 operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4         Attorneys for Debtors

5         1290 Avenue of the Americas

6         New York, NY 10104

7

8  BY:   LORENZO MARINUZZI, ESQ. (TELEPHONICALLY)

9         GARY S. LEE, ESQ. (TELEPHONICALLY)

10

11

12  KIRKLAND & ELLIS LLP

13         Attorneys for Ally Financial, Inc. & Ally Bank

14         601 Lexington Avenue

15         New York, NY 10022

16

17  BY:   STEPHEN E. HESSLER, ESQ. (TELEPHONICALLY)

18

19

20

21

22

23

24

25

1

2   KRAMER LEVIN NAFTALIS & FRANKEL LLP

3         Attorneys for Official Committee of Unsecured Creditors

4         1177 Avenue of the Americas

5         New York, NY 10036

6

7   BY:   KENNETH H. ECKSTEIN, ESQ. (TELEPHONICALLY)

8         STEPHEN D. ZIDE, ESQ. (TELEPHONICALLY)

9         DOUGLAS H. MANNAL, ESQ. (TELEPHONICALLY)

10

11

12   MCKOOL SMITH

13         Attorneys for Freddie Mac

14         600 Travis Street

15         Suite 7000

16         Houston, TX 77002

17

18   BY:   KIRK S. CHENEY, ESQ. (TELEPHONICALLY)

19

20

21

22

23

24

25

1

2  SIDLEY AUSTIN LLP

3         Attorneys for Nationstar Mortgage

4         One South Dearborn

5         Chicago, IL 60603

6

7  BY:   JESSICA BOELTER, ESQ. (TELEPHONICALLY)

8

9

10  CLEARY GOTTLIEB STEEN & HAMILTON LLP

11         Attorneys for Certain Unsecured Noteholders

12         One Liberty Plaza

13         New York, NY 10006

14

15  BY:   SEAN A. O'NEAL, ESQ. (TELEPHONICALLY)

16

17

18  LOEB & LOEB LLP

19         Attorneys for Wilmington Trust, National Association

20         345 Park Avenue

21         New York, NY  10154

22

23  BY:   WALTER H. CURCHACK, ESQ. (TELEPHONICALLY)

24         DEBRA MINOFF, ESQ. (TELEPHONICALLY)

25         VADIM J. RUBINSTEIN, ESQ. (TELEPHONICALLY)

1

2  THE UNITED STATES DEPARTMENT OF JUSTICE

3       Office of the United States Trustee

4       33 Whitehall Street

5       21st Floor

6       New York, NY 10004

7

8  BY:   BRIAN S. MASUMOTO, ESQ. (TELEPHONICALLY)

9        MICHAEL DRISCOLL, AUST (TELEPHONICALLY)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, ET AL.                                    7

1                    P R O C E E D I N G S

2              THE COURT:  Residential Capital, number 12-12020.

3              Can I have the appearances, please?

4              MR. MASUMOTO:  This is Brian Masumoto and Michael

5      Driscoll from the Office of the United States Trustee.

6              THE COURT:  Okay.

7              MR. HESSLER:  Good afternoon.  This is Steve Hessler

8      of Kirkland & Ellis on behalf of Ally Financial and Ally Bank.

9              MR. ECKSTEIN:  Good afternoon, Judge.  It's Ken

10     Eckstein and Stephen Zide from Kramer Levin on behalf of the

11     official creditors' committee.

12             MR. MARINUZZI:  Good afternoon, Your Honor.  Lorenzo

13     Marinuzzi and Gary Lee on behalf of the debtors.

14             THE COURT:  Anyone else?

15             MR. O'NEAL:  Sean O'Neal of Cleary Gottlieb.

16             THE COURT:  I'm sorry.  Just say it again.

17             MR. O'NEAL:  Sean O'Neal, Cleary Gottlieb, on behalf

18     of unsecured noteholders.

19             THE COURT:  Thank you.

20             MR. CHENEY:  Kirk Cheney of McKool Smith for Freddie

21     Mac.

22             THE COURT:  Anyone else?

23             All right.  This is a status call regarding the

24     KEIP/KERP motion, which is currently scheduled to be heard next

25     week.

1          Mr. Masumoto, I'm out of the office so I haven't been

2     able to review yet the objection that you filed today.  I did

3     review, and I have some questions about, the statement of Ally

4     Financial regarding the KEIP/KERP that was filed on August 1st.

5     But Mr. Masumoto, do you want to first tell me about your

6     objection and, I guess, specifically, whether you intend to

7     call any witnesses or cross-examine anyone with respect to the

8     KEIP/KERP if the hearing goes forward this week?

9          MR. MASUMOTO:  Yes, Your Honor.  This is Brian

10    Masumoto from the U.S. Trustee's office.

11          Your Honor, our objection raised questions regarding

12    the KEIP as well as the KERP.  We analyzed the KEIP in the

13    context of its requirements under Section 503(c)(1) because we

14    took the position that the debtors had not established that it

15    was not primarily retentive or that it wasn't primarily an

16    incentive program.  Accordingly, we objected on that basis.

17          Prior to our filing our objection, we did receive, on

18    Monday, copies of additional spreadsheets listing the base

19    salaries of the various recipients under both the KEIP and the

20    KERP, as well as job functions and reporting supervisors with

21    respect to the employees.  And based upon that information,

22    with respect to the KERP, we did, at least at this point unless

23    we have any contradictory evidence or new evidence at the

24    hearing, made a determination that, as to the KERP program,

25    that it did not appear to apply to any insiders.  We do,

1  however, as mentioned with respect to the KEIP, maintain that

2  it is primarily retentive.  With respect to the KERP and the

3  KEIP, we also analyzed it under 503(c)(3) and determined that

4  the debtor had not satisfied his business judgment test under

5  that approach.

6          With respect to any evidence at the hearing, at this

7  point, Your Honor, our office does not intend to produce any

8  answers at the hearing; however, we do reserve the right to

9  cross-examine any witnesses that the debtor may put on.

10          THE COURT:  Thank you, Mr. Masumoto.

11          Mr. Marinuzzi, Mr. Lee, do one of you want to address

12  this?

13          MR. LEE:  Yes, Your Honor.  Gary Lee from Morrison &

14  Foerster for the debtors.

15          Your Honor, if we are unable to resolve the U.S.

16  Trustee's objection -- and we will endeavor to do whatever we

17  can in advance of the hearing next week -- we will have four --

18  three or potentially four witnesses available for cross-

19  examination.  Those are the three declarants in support of the

20  motion, and there are some additional issues that were raised

21  by the U.S. Trustee in relation to their objection that might

22  call for a fourth declarant from ResCap's compensation

23  committee.  And we will be, Your Honor, ready to proceed on, I

24  guess it's next Wednesday if we can't resolve things.

25          And in that regard, Your Honor, we reached out to the

1    U.S. Trustee's office in advance of filing the motion just as

2    we did in relation to the official creditors' committee and

3    then reached out to them after we filed the motion.  We have

4    provided them with supplemental information and will continue

5    to engage with them to the extent they're able and able to

6    narrow the issues down.

7          MR. MASUMOTO:  Your Honor, this is Brian Masumoto.

8    After we filed our objection this morning, we had additional

9    conversation with debtor's counsel at which time we requested

10   certainly additional information, and the representation was

11   they would endeavor to provide that to us.  So to the extent

12   that they may narrow the need for live witness testimony,

13   hopefully we can achieve that.

14         THE COURT:  Okay.  Mr. Eckstein and Mr. Zide, do you

15   want to go?

16         MR. ECKSTEIN:  Thank you, Your Honor.  As Your Honor

17   may have observed, the committee has not filed an objection to

18   this motion, which may be somewhat unusual with these types of

19   cases.  I do want to assure Your Honor that the committee has

20   spent over a month looking carefully at this motion.  There's

21   been a fair amount of both internal analysis and negotiation.

22   It was important to the committee to observe that this does not

23   include the 3 top officers of the debtor and it primarily

24   covers 170 middle management employees.

25         The committee was focused very much on the fact that

1   we have over four billion dollars of asset sales that are in

2   process, and we very much are focused on making sure that we

3   have a structure in place to accomplish those asset sales.  And

4   similar to our focus on the RMBS motion, we felt this motion

5   needed to be used to maximize those proceeds, and the

6   modifications we have made were further designed to be tied to

7   not just getting through a time period but actually getting to

8   a closed sale.

9        And we further have negotiated that forty percent of

10  the amounts that are covered would only get paid upon the

11  effective date of a plan, which from our perspective, is really

12  what is most important, and we felt that having these payments

13  only paid when a plan of reorganization gets confirmed was very

14  incentive-based driven.  And while the numbers are not small

15  dollars, in the context of a case where we have four billion

16  dollars of sales, the fact that we're talking about between

17  fourteen and seventeen million dollars was a factor that the

18  committee felt mitigated in favor of not raising objections.

19       So I want Your Honor to appreciate that this did get a

20  lot of attention, and the committee got advice from its

21  financial advisor as to how the terms of this KEIP and KERP

22  shaped up relative to what's been proposed in other cases.  And

23  given all those factors and the modifications that have been

24  made, we've agreed not to object to the motions.  We understand

25  the U.S. Trustee's policies, but we're going to -- we're not

RESIDENTIAL CAPITAL, LLC, ET AL.                    12

1   going to pass through (ph.) an objection, Your Honor.

2            MR. LEE:  Your Honor, it's Gary Lee from the debtors.

3   I just wanted to note that the reason why we're filing this

4   motion two-plus months into the case as opposed to earlier in

5   the case that we did want to work both with the committee and

6   with the U.S. Trustee to try and resolve any objections to the

7   KEIP/KERP motion before we filed it and it was heard.  And Mr.

8   Eckstein and his -- and the advisor's of the committee did

9   spend quite a lot of time with us, and it did result in some

10  fairly material modifications to the KEIP/KERP plan as a

11  result.

12           THE COURT:  Does anybody --

13           MR. ECKSTEIN:  One last observation, Your Honor.  I

14  don't know whether you have -- you've observed it in -- there

15  was a pleading that was filed, I believe, yesterday by AFI that

16  makes reference to a separate plan that does relate to the top

17  three officers and others.  That is not something that is

18  before the Court, and that's something that we're only becoming

19  aware of very, very recently, and that does not get implicated

20  by this motion, but I wanted to make sure Your Honor understood

21  that there was another shoe, so to speak, that has not dropped

22  on executive compensation, and that's going to clearly be

23  something that's going to get very careful attention.

24           THE COURT:  I think maybe that's part of my question.

25  I read the AFI statement -- I guess it's denominated a

1  statement although it says "regarding debtor's KEIP/KERP

2  motion," and it identifies a TARP issue, which, I will confess,

3  I have not dealt with before and am not familiar with the legal

4  principles that apply.  They weren't addressed in the debtor's

5  motion, and, I mean, it is certainly an issue that I want a

6  full -- I need a full understanding of it before I'm going to

7  rule.

8            So let me ask, Mr. Hessler --

9            MR. HESSLER:  Yes, Your Honor?

10           THE COURT:  -- does the statement you filed relate to

11  the KEIP/KERP motion that's on the calendar for Wednesday?

12           MR. HESSLER:  It does, Your Honor.  And to clarify the

13  purpose of the statement, it was twofold.  The first directly

14  relates to the KEIP and the KERP motion.  And what we were

15  trying to do was, by filing the statement, ensure that if

16  necessary we would have to opportunity to be heard next

17  Wednesday in the unlikely event that we, AFI and the debtors,

18  are unable to finalize our requested revisions to the proposed

19  final order.  We're very nearly done, and we're very optimistic

20  that we'll get the TARP protective provisions in the final

21  order.

22           The debtors have been very accommodating and very

23  constructive in that respect, but just -- we wanted to make

24  sure that in the event it did remain a live issue as of next

25  Wednesday, that we weren't raising it for the first time then.

1  But to be clear, we have no objection to the motion, and we

2  fully expect that the requisite prophylactic language to avoid

3  any TARP problems will be added to the order.

4          THE COURT:  Well, it's all well and good that AFI and

5  the debtors are close to working out what you describe as

6  prophylactic language for that TARP, but what your statement

7  has done is raised more questions in my mind than provide

8  answers.  Until I understand what those TARP issues are, what

9  the legal principles that apply, what any factual issues that

10  arise from TARP with respect to the KEIP or KERP, I don't plan

11  to approve it.

12          So let me ask just some factual questions.  In reading

13  that statement, what's unclear to me is, has AFI been paying

14  any portion of the compensation to any of the people who are

15  covered by the KEIP/KERP?

16          MR. HESSLER:  Let me make sure I understand the

17  question, Your Honor.  The proposed recipients of the KEIP and

18  KERP -- are you asking has AFI been paying any portion of their

19  compensation?

20          THE COURT:  That's the question, yes.

21          MR. HESSLER:  The answer, Your Honor, I believe, is

22  yes, and it's nuanced.  And the reason for that is this relates

23  back to the debtor's wages motion as well as the supplemental

24  declaration that the debtors filed post-petition that

25  explained, because of TARP, the role that AFI has in these

1  circumstances as something of the payroll processor for the

2  debtors' employees.  And for the debtors' top executives, they

3  are receiving compensation that is, again, as a requirement of

4  TARP, that's deferred compensation that was awarded

5  pre-petition but that is in the process of being monetized

6  post-petition.

7          If I could just add, Your Honor, this subject and this

8  issue dovetails into the second purpose of our statement, which

9  was, although the KEIP and KERP motion and the tentative

10  agreement that we begin to outline on pre- and post-petition

11  compensation, those two things are literally distinct, meaning

12  next Wednesday on the docket is only the KEIP and KERP motion,

13  not this other type of agreement that we highlighted, but given

14  that both issues do involve, on a general level, compensation

15  for the debtor's executives, Ally very much wanted to ensure

16  that there was disclosure to the Court and all parties-in-

17  interest in advance of any hearing on compensation issues.

18          THE COURT:  And I appreciate that, but I guess --

19          Mr. Lee, can you lay out for me -- I mean, it's one

20  thing if AFI or Ally Bank, in effect, is -- and it's probably

21  the wrong term to apply to it, but the payment agent is still

22  currently handling payroll for any of the debtors.  Is that

23  their role or is some portion of the compensation, whether it

24  relates to pre-petition periods or post-petition periods, is

25  some portion of the compensation being provided by AFI for any

1  of the individuals who would be the subject of the KEIP or

2  KERP?

3           MR. LEE:  Your Honor, I'm going to have to break this

4  down because you've asked a question that deserves sort of a

5  breakdown between the pre- and post-petition periods.  So, if I

6  may, Your Honor, I'll start with the pre-petition stage.

7           Prior to the date of the bankruptcy, AFI issues,

8  pursuant to TARP, awards letters to employees of ResCap.  So

9  for example, any of the employees that were in what the special

10  master and the TARP regulations call "the next seventy-five

11  employees" have the way in which they're paid restricted

12  pursuant to TARP, not the amount of their payment but the way

13  in which they're paid.  And they're to be paid in salary,

14  stock, and it is to be deferred over a period of time.

15          With respect to those pre-petition payments, which is

16  part of the disclosure that Ally has made, there was a dispute

17  between the parties as to when AFI was going to abide by that

18  obligation.  What has happened is that in this disclosure, AFI

19  has agreed that with respect to pre-petition deferred payments,

20  wages of employees prior to the date of the petition, they are

21  going to pay what is owed to those employees.  The retentive

22  element, the employees could be anywhere, and they're going to

23  be paid.  That is the first half of the answer to Your Honor's

24  question.

25          With respect to the period after the petition date,

1  you have to make a division between the top three executives,

2  none of whom are part of the KEIP and the KERP, and everybody

3  else.  With respect to the top three employees of ResCap who

4  are not part of the KEIP or not part of the KERP, Ally, in

5  effect, pursuant to the TARP rules, is required to set not just

6  the compensation but the structure of the compensation, have it

7  approved by the special master.  And that compensation and the

8  way that it is paid out is governed by the Treasury

9  regulations.

10        So, for example, those top three are paid in different

11  types of salary, stock, and other grants.  The only entity that

12  can effectively transfer that value and those grants, pursuant

13  to the regulations, is AFI; it's the entity that's subject to

14  the TARP restrictions.  So in that regard, Your Honor, there is

15  a payment by AFI to the top three employees who are not subject

16  to the KEIP and the KERP, and then there is concomitantly a

17  reimbursement with respect to post-petition amounts to AFI.

18        I'm not sure if I've answered -- I think I've answered

19  the question, Your Honor.  You have to tell me whether or not I

20  covered everything you were asking.

21        THE COURT:  What is the form -- let me just make sure

22  I understand this now.

23        MR. LEE:  Yeah.

24        THE COURT:  The top three executives are not covered

25  by the current KEIP/KERP motion.

1        MR. LEE:  And cannot be, as a matter of law.

2        THE COURT:  All right.  But am I understanding you

3   correctly that, whether it's the next seventy-five employees or

4   others, they are subject to the TARP regulations and they are

5   covered by the KEIP/KERP.  Am I right so far?

6        MR. LEE:  Right.  The next seventy-five are covered by

7   the TARP regulations, and there is a subset of the insiders

8   that are covered by the incentive plan who are suggest to the

9   TARP regulations.

10       THE COURT:  Okay.

11       MR. LEE:  And their KEIP and KERP, unlike the other

12   employees, Your Honor, cannot be paid out in the same way that

13   you or I receive our salary monthly --

14       THE COURT:  Okay.

15       MR. LEE:  -- for example.  So they are subject to an

16   additional set of restrictions.  And what Mr. Hessler was

17   referring to is something that makes the payment to the

18   recipients of KEIP who are subject to Treasury regulations, it

19   makes those restrictions -- sorry -- it adds restrictions to

20   when they can be paid.

21       THE COURT:  In what form -- is it just when -- do they

22   receive cash --

23       MR. LEE:  Exactly, Your Honor.

24       THE COURT:  -- and is it a question of when or is it

25   the form of compensation?

1      MR. LEE:  No.  It's the "when", Your Honor.  It's the

2   timing of the receipt.  So in other words, notwithstanding the

3   fact that we have agreed to a KEIP with respect to some of the

4   insiders that are with -- the next seventy-five that

5   effectively should pay them on a plan, there is an overlay of

6   TARP restrictions that may -- and this will be subject to, I

7   think, going back to the special master -- may and possibly

8   will require those payments to be made later in time.  So it's

9   not less restrictive, Your Honor; it will become more

10  restrictive.

11      THE COURT:  And does the special master have a right

12  to approve or disapprove payments that are proposed to be made

13  under the KEIP?

14      MR. LEE:  No, Your Honor.  What the special master has

15  is the ability to approve the timing of the payments and the

16  form of the payments but not the amount of the payments.

17      THE COURT:  What do you mean by the form of the

18  payments?

19      MR. LEE:  In other words, Your Honor, a TARP recipient

20  that's in the next seventy-five has a restriction on the amount

21  of actual cash that person can or can't receive during the

22  course of the year.  So there are some additional restrictions

23  that we will need to build into the order in order to make sure

24  that we are TARP compliant.  So we've actually made things --

25  well, it will make the restrictions worse for the employees

1    rather than better.

2            THE COURT:  Does it simply defer amounts that they

3    would be entitled to under the KEIP, or does it say you can't

4    receive more than X dollars?

5            MR. LEE:  My understanding, Your Honor, and we're

6    starting to now get beyond the expertise of anybody who lives

7    outside of Washington, D.C., is that it's triggered by hitting

8    500,000 dollars so, in effect, the amount that you receive.

9            THE COURT:  How many of the proposed KEIP recipients

10   have annual compensation above 500,000 dollars?

11           MR. LEE:  Your Honor, I cannot tell you right now how

12   many, but I believe that it's not that it's -- I believe that

13   eight, and it may be more of the seventeen insiders, are

14   subject to being in the next seventy-five.

15           THE COURT:  Okay.  And I expect to be prepared by next

16   week, but I will say that I'm not fully prepared now.  So let

17   me ask this question.

18           MR. LEE:  Yeah.

19           THE COURT:  Is an explanation -- I didn't see, in what

20   I've looked at --

21           MR. LEE:  Yeah.

22           THE COURT:  -- again, in only the limited amount of

23   time that I had to devote to it, I didn't see any discussion of

24   the facts or the law applicable to this overlay of TARP

25   regulations with respect to the KEIP.  Is there something I

1  missed?

2          MR. LEE:  No.  Your Honor, there is -- you missed

3  absolutely nothing, and I think as part and parcel of what we

4  have to file on Monday, we're going to need to address, and we

5  will address, the additional restrictions that exist under TARP

6  with respect to a subgroup of the insiders and why it makes,

7  effectively, the incentive plan more restrictive than it

8  currently appears to be as to those people.

9          THE COURT:  What is it that you're -- are you filing

10  additional -- you know, it's one thing to address it in the

11  brief.  But I also need a complete factual basis on which to

12  rule.  Do you plan to file a supplemental declaration that

13  addresses the facts with respect to the individuals, whether --

14  I'm not so much concerned whether they're named, whether I know

15  precisely who they are, but how many, what their compensation

16  is, how TARP impacts the timing or amount of what they can

17  receive.  Do you plan to file a supplemental declaration

18  addressing that?

19          MR. LEE:  Your Honor, we will.  And I think that the

20  point behind filing the supplemental declaration as well as the

21  form of an amended order is to demonstrate to the Court that

22  the impact of TARP, in effect, makes the KEIP program

23  infinitely more restrictive as regards those individuals that

24  are caught by the TARP regulations.

25          And so I think it's -- you know, in our view, it's a

1   showing we understand we need to make.  But I think in sum and

2   substance, all it basically demonstrates, Your Honor, is that

3   those employees are actually in a worse position as opposed to

4   what one might have anticipated.  And that will be in the form

5   of a supplemental declaration.

6         And with respect to the disclosure that was made by

7   AFI, again, it was our intention, Your Honor, and it remains

8   our intention to also set out something that describes the way

9   TARP works in relation to the top three employees as well, as

10  part and parcel of something that's supplemental to the wages

11  motion, so that there's a full picture in front of Your Honor.

12        THE COURT:  Hello?

13        MR. LEE:  Yes, Your Honor.

14        THE COURT:  All right, Mr. Lee --

15        MR. LEE:  Yes.

16        THE COURT:  -- my phone just completely cut out, and I

17  had to call back in.  So I apologize for that.  But you were

18  starting to explain to me -- I asked questions about whether

19  you were going to cover this in a supplemental declaration.

20  You may have continued on, but I didn't hear any of it.

21        MR. LEE:  Your Honor, the answer is correct, we will

22  file a supplemental declaration on Monday the purpose of which

23  is to demonstrate why the impact of TARP is to add additional

24  restrictions on the timing of the payments that are to be made

25  to those insiders that are caught by the TARP restrictions.

1        THE COURT:  Okay.  Mr. Masumoto, let me ask you.  Is

2    this something that your office is also focusing on, the impact

3    of TARP?

4        MR. MASUMOTO:  Yes, Your Honor.  After we filed our

5    objection, as indicated, we had a conversation.  And the

6    debtors' counsel represented that they would provide us the

7    additional information of the impact of TARP, including a list

8    of the affected -- we were told -- seven individuals; Mr. Lee

9    mentioned eight.  But whatever --

10       MR. LEE:  Yes, your recollection is better than mine,

11   Mr. Masumoto.

12       MR. MASUMOTO:  So whatever recipients were affected by

13   TARP, we would get an idea of how TARP affected the payments to

14   be made under the KEIP and the KERP plan.

15       THE COURT:  Okay.  Mr. Masumoto, I know that your

16   office is quite familiar with the law regarding KEIPs and

17   KERPs.  Have you dealt with the issue of the impact of TARP on

18   a KEIP before?

19       MR. MASUMOTO:  This is the first time for me, Your

20   Honor.  And I'm not sure if anybody else -- I'll check.  But I

21   don't believe anyone else had to deal with it previously.

22       THE COURT:  The reason I'm asking that, Mr. Lee, is

23   that I mean, yes, you need to cover this with one or more

24   declarations, because I need a full factual basis.  But I will

25   tell you, I mean, the issue was first flagged for me by reading

1  the AFI statement, which flagged the issue, properly so, but

2  didn't address any of the legal principles that apply.

3        So you're going to need to address that.  Whether we

4  go forward on Wednesday, in part, is going to depend on whether

5  Mr. Masumoto or his colleagues tell me they need more time to

6  address any legal or factual issues that you raise regarding

7  TARP.  I mean, what it sounds to me as if with respect to the

8  more typical issues regarding KEIP, from what Mr. Masumoto has

9  said, he is prepared to go forward on Wednesday, cross-

10 examining witnesses, to the extent appropriate; does not intend

11 to offer his own evidence in support of the objection.  But the

12 impact of TARP is something I'm just not -- I've written a

13 whole bunch of KEIP opinions, and this has not come up in any

14 of them.

15       So that, I'm going to have to be comfortable about.

16 And any other parties-in-interest who see what you file on

17 Monday, likewise, are going to have to be comfortable about it.

18 But I think we'll just have to see, after you file your reply

19 and supplemental declarations.

20       Mr. Eckstein, is this something that the committee has

21 focused on?

22       MR. ECKSTEIN:  Your Honor, we've only begun to focus

23 on the TARP issues when we learned about the supplemental

24 employee issues that are primarily applying to the three senior

25 execs plus others.  So it's something that's relatively new in

1   terms of our consideration.

2           MR. LEE:  Your Honor, if I may?  I appreciate we're

3   dealing with a completely foreign subject.  And I have to

4   admit --

5           THE COURT:  Well, foreign to me, but maybe not to

6   others.

7           MR. LEE:  Yeah.  The point that I'm trying to make,

8   probably not very elegantly, is while we're dealing with a

9   relatively new topic here, in relation to the individuals that

10  are subject to the application for a KEIP program, the net

11  effect of TARP here is simply to defer the time when they

12  receive payment.  There's nothing in the motion in and of

13  itself that -- other than that fact.  That is sort of the

14  principal crux of what TARP does here.

15          Clearly the employees are subject to other types of

16  restriction in relation to TARP.  But the net effect of all of

17  those things is to make the circumstances under which you get

18  paid and the ability to claw back payments from individual

19  employees more restrictive.  What it does not do is prevent us

20  from moving forward with -- presuming we are able to satisfy

21  the Bankruptcy Code in a way that's consistent with Your

22  Honor's orders in Borders and Mesa -- it does not prevent us

23  from obtaining the relief that we're seeking.  It just simply

24  adds an additional overlay of restriction to the recipients.

25  And --

1          THE COURT:  Mr. Lee --

2          MR. LEE:  Yes.

3          THE COURT:  -- you'll forgive me.  But you represent

4    the moving party.  You're an advocate arguing your position.

5    This is an adversary process.  Until the matter is fully

6    briefed and I'm satisfied that I've gotten -- from my

7    standpoint, this issue dropped into the case yesterday when AFI

8    filed a statement.  It was an issue that had not previously

9    been identified.  You may be absolutely correct.  No one may

10   take issue with what you set out in supplemental declarations

11   or in your reply memorandum that addresses the legal issues.

12          I'm just telling you now, as I've already said, that

13   you're going to have to lay this out carefully as a factual and

14   legal matter.  Most everything I'm hearing, I'm hearing for the

15   first time now.  The role of the special master; what their

16   role is; I'm not familiar with the special master's function,

17   role, how it impacts on compensation.

18          I do recall at the outset of the case knowing that, as

19   I remember it, this is the issue of sort of AFI as the

20   paymaster, a term I'm using.  That wasn't necessarily the term

21   applied.  But as I understood, you were trying to unwind that.

22   And now I'm hearing that no, because of TARP, AFI must pay

23   compensation.  I will see the briefs that you file and the

24   supplemental memorandums, and we'll see where we are.

25          MR. LEE:  Yes, absolutely understood, Your Honor.  I

1   was just simply making an observation that you're going to get

2   all of that, and it is complex, and it is unusual.  But

3   hopefully everybody will ultimately agree with the advocacy.

4           THE COURT:  Okay.  Anything else anyone wants to raise

5   with me?

6           Okay.  Thank you very much.  We're adjourned.

7           IN UNISON:  Thank you, Your Honor.

8       (Whereupon these proceedings were concluded at 5:39 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          C E R T I F I C A T I O N

3

4    I, David Rutt, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8

9    _____

10   DAVID RUTT

11   AAERT Certified Electronic Transcriber CET**D-635

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  August 3, 2012

18

19

20

21

22

23

24

25