**Exhibit 1**

ny-1052616

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


   IN RE:                            .    Chapter 11
                                     .
   DIAMOND GLASS, INC.,              .    Case No. 08-10601(CSS)
   et al.,                           .    (Jointly Administered)
                                     .
             Debtors.                .    May 8, 2008 (10:27 a.m.)
                                     .    (Wilmington)


                      TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
                 UNITED STATES BANKRUPTCY COURT JUDGE
```

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1   I'm not sure, frankly, that I agree with Mr. Carroll's

2   comment that every Chapter 11 doesn't deserve an incentive

3   plan and that somehow it has to be unique, and that sort of

4   goes to the (c)(3) issue, but in any event, whether it's, you

5   know, needs to be a reasonable justification of the debtors'

6   business judgment or whether it needs to be justified by the

7   facts and circumstances, or whether it needs to be an actual

8   and necessary expense of the debtors' estate, whatever

9   criteria is applicable, I think the evidentiary record in

10  this case is met, and the debtors have satisfied that.  The

11  testimony of Mr. Cogswell and Mr. Victor clearly establish

12  the motivational aspects of the program.  The program is tied

13  and it's important to get to the certain benchmarks.  The

14  testimony is clearly - it establishes that all the covered

15  employees are performing above and beyond their normal job

16  responsibilities, some extraordinarily so.  I don't think

17  that's particularly surprising.  Chapter 11 is an expensive

18  process for the professionals because we know how much work

19  they have to do, and it's an expensive and time consuming

20  process for management.  That is the nature of Chapter 11,

21  and that's, you know, I take issue with Mr. Carroll's sort of

22  blanket statement that every Chapter 11 doesn't deserve some

23  sort of incentive management program.  Certainly not every

24  case can afford it, and some cases maybe call out for it more

25  than others.  A business like this where we're talking about

1   a very volatile, competitive, people-intensive business is

2   really a poster child for a management incentive program,

3   especially in a sales process where people are working

4   themselves out of a job.  All right, so let's deal with the

5   retentive effect.  I don't think that - I kind of rethought

6   this issue, frankly, even if the only thing management has to

7   do and the covered employees have to do is hold this company

8   together for the stalking horse bidder to close, I don't find

9   that in and of itself primarily retentive.  I have another

10  case where management and the professionals worked their

11  tails off for three months to hold the case together to get

12  the stalking horse bid in place, and it all fell apart, and

13  that case is going to convert on Friday.  It's a big case.  A

14  lot of people are going to lose their jobs.  That can happen.

15  Stalking horse cases, stalking horse bidders walk away.

16  There are material adverse changes that occur.  This is not a

17  healthy economy, and the pressures are intense.  I expect

18  that the price of raw materials is rising for the debtors,

19  without knowing, I'm speculating, so I won't rely on that in

20  making my ruling, but I don't find that just getting to a

21  plan or just getting to a closing by a stalking horse bidder

22  in and of itself is retentive.  I think there's a lot that

23  can go wrong.  So I don't find the fact that some of the

24  elements deal with simply getting the closing of a stalking

25  horse bid or simply getting a plan confirmed to be in and of