**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
N. Theodore Zink, Jr.
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

*Proposed Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                             :    Chapter 11
                                                   :
RESIDENTIAL CAPITAL, LLC, et al.,                  :    Case No. 12-12020 (MG)
                                                   :
                Debtors.                           :    Jointly Administered
------------------------------------------------------------ x

**WORK PLAN OF**
**ARTHUR J. GONZALEZ, EXAMINER**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Arthur J. Gonzalez, the Court-appointed Examiner (the "Examiner") for Residential Capital, LLC and its affiliated debtors (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), by his proposed undersigned counsel, hereby submits his work plan.

**INTRODUCTION**

1.  On June 28, 2012, the Court entered an Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (the "Examiner Order") directing the United States Trustee (the "U.S. Trustee") to appoint an examiner (the "Examiner") in the Chapter 11 Cases.

2. The Examiner Order directs the Examiner to conduct an investigation (the "<u>Investigation</u>").

3. On July 3, 2012, the U.S. Trustee appointed Arthur J. Gonzalez, Esq. as Examiner in the Chapter 11 Cases and filed (i) a notice of such appointment and (ii) an application for an order approving such appointment.

4. On July 3, 2012, the Court entered an order approving the appointment of the Examiner.

5. On July 27, 2012, the Court entered an order approving the scope of the Investigation (the "<u>Scope Approval Order</u>") as set forth in the Preliminary Statement of Arthur J. Gonzalez, Examiner, Regarding the Scope and Timing of his Investigation attached to the Scope Approval Order as Exhibit "A" (the "<u>Preliminary Statement</u>"). As set forth in the Preliminary Statement, the Examiner believes that a realistic time frame for the preparation of such a report containing his findings regarding the Investigation is six months, subject to adjustment if after meaningful due diligence a different time period appears to be more reasonable.

6. The Scope Approval Order provides that within ten days of its entry, "the Examiner shall file a formal work plan that will include, among other information, (i) the Examiner's estimate of fees and expenses to be incurred in connection with the Investigation and (ii) such other matters or information as are customarily included in work plans submitted by examiners appointed in other chapter 11 cases."

7. This work plan generally follows the format and level of detail of the plans submitted by Examiners in <u>In re Dynegy Holdings, LLC</u>, No. 11-38111 (CGM) (Bankr. S.D.N.Y.), <u>In re Lehman Brothers Holdings, Inc.</u>, No. 08-13555 (JMP) (Bankr. S.D.N.Y.), <u>In re SemCrude</u>, L.P., No. 08-11525 (BLS) (Bankr. Del.), <u>In re Tribune Co.</u>, No. 08-13141 (KJC)

2

(Bankr. Del.), and In re Extended Stay Inc., No. 09-13764 (JMP) (Bankr. S.D.N.Y.). The Examiner believes this work plan contains the appropriate level of detail to inform the Court and the parties without interfering with the overriding goal of an independent investigation.

## THE EXAMINER'S ACTIVITIES TO DATE

8.  Beginning on July 18, 2012, the Examiner conducted a series of meetings and/or telephonic calls with representatives of the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), Berkshire Hathaway, Ally Financial Inc., and certain holders of the Debtors' unsecured notes. The principal purpose of the initial round of meetings was to learn more about the cases and to ascertain each party's preliminary views regarding the scope and timing of the Investigation. The Examiner invited the parties to share their views on these matters, as well as on the legal and factual issues implicated by the Investigation.

9.  On July 24, 2012, the Court held a Chambers conference at which the Examiner and his counsel and counsel for various parties in interest presented their respective views regarding the appropriate scope of the Investigation and estimates of the time necessary to complete the Investigation and prepare a report. After the Chambers conference, the Examiner discussed the terms of the Scope Approval Order with the various parties in interest. On July 27, 2012, the Court entered the Scope Approval Order.

10.  The Examiner and his proposed professionals have begun the Investigation by undertaking various activities including reviewing the various pleadings, documents and materials relevant to the issues to be investigated and by scheduling and conducting further meetings to develop an understanding of the major issues and the parties' substantive positions and contentions.

11. The Examiner has entered into a provisional confidentiality agreement with the Debtors in order to obtain immediate access to documents and other materials germane to the Investigation. The review of those documents is underway. Given the apparent size and complexity of the transactions that are the subject of the Investigation, the Examiner expects to receive voluminous additional document productions from numerous parties.

12. In order to facilitate the Examiner's ability to timely and efficiently complete a comprehensive investigation and fulfill his duties, the Examiner will file a motion (the "Examiner Discovery Motion") with the Court, in which the Examiner will seek an order (i) authorizing the Examiner to issue subpoenas for the production of documents and the examination of persons and entities determined by the Examiner to have information relevant to the Investigation, (ii) establishing procedures governing responses to those subpoenas, (iii) approving the establishment of a central document depository and procedures to govern its use, and (iv) approving a uniform protective order for the Examiner's discovery. Essentially, the Examiner Discovery Motion, if granted, will provide the Examiner with (a) the authority to compel discovery, (b) an efficient mechanism by which to share relevant discovered information with parties in interest in the Chapter 11 Cases and (c) a protective order safeguarding any confidential information that is produced. The Examiner's proposed counsel has been discussing the terms of the order granting the Examiner Discovery Motion with counsel to the principal parties in an attempt to achieve, if possible, a consensual proposed order.

13. The Examiner has informed the parties that he expects their cooperation in the Investigation.

4

**SCOPE OF EXAMINATION**

14. Pursuant to the Scope Approval Order, the Court approved the Examiner's proposed scope of the Investigation. Accordingly, the Examiner is authorized to, at a minimum, address the following transactions, agreements, claims, causes of actions, and issues in his report:[1]

a. all material prepetition transactions and all material verbal or written agreements or contracts between or among the Debtors on the one hand and any one or more of Ally Financial Inc., f/k/a GMAC LLC, and any of its current and former, direct and indirect affiliates and subsidiaries (collectively, "AFI"), Cerberus Capital Management, L.P. and any of its current and former direct and indirect affiliates and subsidiaries including Cerberus FIM, LLC, Cerberus FIM Investors LLC, and FIM Holdings LLC. (collectively, "Cerberus") and/or Ally Bank, a commercial state non-member bank chartered under the laws of the State of Utah (f/k/a GMAC Bank) ("Ally Bank") on the other hand including (i) material agreements concerning transfers of cash, assets, property, stock, contracts, or other items of value including any servicing agreements, repurchase transactions, exchange offers, hedging arrangements, derivative agreements or contracts, swap agreements or contracts, or foreign exchange agreements or contracts, (ii) any payments, dividends or capital contributions, (iii) any extension of loans or lines of credit including any factoring arrangements, (iv) any debt, or liens related thereto, or the transfer, assignment, repayment or forgiveness of such debt, (v) any claims and all payments made on account of such claims, and (vi) any transfers of cash, assets, property, stock, contracts, or other items of value (collectively, the "Prepetition Transactions and Agreements");[2]

b. the negotiation and entry into any plan sponsor, plan support, or settlement agreement, the debtor-in-possession financing with AFI, and the stalking horse asset purchase agreement with AFI, and any servicing agreement with Ally Bank (collectively, the "Postpetition Transactions and Agreements");

c. (i) the activities of the Debtors' officers and board of directors (including any subcommittee thereof) concerning (A) the Prepetition Transactions and Agreements, (B) the Postpetition Transactions and Agreements, and (C) the investigation of the validity of claims against AFI, and (ii) the recruitment, compensation and indemnification of the

---

[1] The following recitation appears verbatim in the Scope Approval Order.
[2] The Examiner's Investigation of certain of the Debtors' entry into and performance under the "Consent Order," "DOJ/AG Settlement" and "CMP," each as defined and described in paragraphs 86 through 90 of the of the "Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petition and First Day Pleadings," dated May 14, 2012 will be limited to the propriety of the allocation of obligations as among the Debtors and AFI under the "Consent Order," "DOJ/AG Settlement" and "CMP."

5

    Debtors' officers and the members of the Debtors' board of directors (including any subcommittee thereof);

d. the corporate relationships between or among the Debtors, AFI, Cerberus and/or Ally Bank and the conduct of each of these entities in connection with the Debtors' decisions (i) to file (or to refrain from filing, or delaying the filing of) voluntary petitions under Chapter 11 of the United States Bankruptcy Code, (ii) to pursue (or refrain from pursuing) a sale of substantially all of their assets, and (iii) to enter into the Prepetition Transactions and Agreements and the Postpetition Transactions and Agreements;

e. all state and federal law claims or causes of action of the Debtors against current or former directors and officers of the Debtors, and against AFI and/or its insiders including current and former directors, officers, and shareholders;

f. all state and federal law claims or causes of action the Debtors propose to release or to be released as part of their plan including (i) preference and fraudulent transfer claims, (ii) equitable subordination claims, (iii) alter ego and veil piercing claims, (iv) debt recharacterization claims, (v) constructive trust and unjust enrichment claims, (vi) breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims, (vii) securities law claims, and (viii) claims held by third parties, i.e., parties that are not affiliates of the Debtors, against current and former directors and officers of the Debtors and against AFI and its insiders including current and former directors, officers, and shareholders; and in respect of the claims identified in subclause (viii) of this paragraph f, the Examiner will (A) investigate the merits of such claims, (B) analyze the sufficiency of the consideration to be provided for such third party releases, and (C) solicit the parties' views concerning the merits of such claims and the potential amount of damages arising from such claims, but the Examiner will not attempt to independently quantify such damages;

g. the value of the releases contemplated by the Debtors including the releases by the Debtors' estates of all claims against current or former directors and officers of the Debtors, and against AFI and its insiders including current and former directors, officers, and shareholders, and the proposed releases by third parties of claims against AFI; and

h. other matters affecting the Debtors' assets, liabilities, and financial condition including all intercompany claims and the Debtors' solvency, capital adequacy and ability to pay debts as such debts become due at various dates prior to the Petition Date.

## THE EXAMINER'S PROPOSED WORK PLAN

    15.    The Examiner has developed this proposed work plan after considering the Examiner Order, various pleadings filed regarding the subject matter of the Investigation, various non-public documents provided by the parties regarding that subject matter, and his discussions with the parties.

6

16. Accordingly, the Examiner's work plan for the Investigation includes, but is not limited to, the following:

### A. Information Gathering and Verification

17. The Examiner will need to ascertain the volume and breadth of documents he will need to review to complete the Investigation. At this stage, the Examiner has had access to just a small subset of the documents that will be made available to the Examiner through the course of the Investigation. Based on his discussion with various parties, the Examiner estimates that the quantity of data will include tens of thousands of emails (which may or may not be in searchable format) and terabytes of other electronic data. In particular, the Examiner intends to request that emails be produced on an expedited basis because he believes those materials will be especially critical to his analysis.

18. The Examiner intends to take a staged approach to the Investigation. The Examiner will initially seek documents and other information from the Debtors, AFI, Cerberus and their respective current and former officers, directors and professionals. These parties, to date, have informed the Examiner that they intend to cooperate with the Investigation. However, if necessary (and if granted authority under the Examiner Discovery Motion), the Examiner intends to serve Rule 2004 subpoenas on entities that refuse to produce information voluntarily. Once this initial information has been gathered and a thorough review is underway, the Examiner will identify any additional third parties that may be in possession of information relevant to the Investigation.

19. In order to facilitate in a cost- and time-efficient manner the sharing of discovery relevant to the Investigation that is produced to the Examiner, the Examiner will

request, as part of the Examiner Discovery Motion, the approval and establishment of, and a set of procedures to govern, the use and operation of a central document depository (the "<u>Document Depository</u>") into which the majority of documents ("<u>Discovery Material</u>") provided to the Examiner will be placed. Additionally, to safeguard the confidentiality of such Discovery Material as necessary, the Examiner will also request in the Examiner Discovery Motion approval of a uniform protective order (the "<u>Protective Order</u>"), which will govern the discovery, production, disclosure and use of all Discovery Material provided to the Examiner. The establishment of such a Document Depository has been requested by both the Debtors and the Committee, and will expedite the Investigation itself as well as potential discovery activity that may be relevant to future proceedings in these Chapter 11 Cases. The Document Depository will be an electronic, Internet-accessible resource that will enable relevant parties to download or otherwise obtain discovery materials produced to the Examiner in the forms in which they were produced to the Examiner, which those parties can each load and review on the software platform(s) of their choosing. The Protective Order will act as a uniform order governing all parties with access to the Document Depository and protecting proprietary information from public disclosure and from usage outside of these Chapter 11 Cases. This uniform order will alleviate the burden on the Examiner of having to negotiate, enter into and monitor numerous separate confidentiality arrangements among and between a multitude of parties.

### B. <u>Witness Interviews and Potential Depositions</u>

20. At this juncture, the Examiner anticipates that he will conduct interviews with numerous witnesses. The Examiner will generally seek to conduct voluntary interviews of witnesses with respect to the issues subject to the Investigation. But in order to facilitate the

Examiner's ability to timely and efficiently complete a comprehensive Investigation and fulfill his duties, the Examiner Discovery Motion will seek the necessary authority to quickly issue subpoenas in those instances where witnesses decline to voluntarily cooperate with the Examiner's requests or condition their cooperation on the issuance of a subpoena.

### C. Maintaining Open Lines of Communication

21.     During the course of the Investigation, the Examiner will continue to maintain open lines of communication with the U.S. Trustee, the Debtors, the Committee and other interested parties.

22.     The Examiner, through his counsel, will provide such periodic status and progress reports as the Court may direct.

23.     Some of the interested parties have raised the possibility of interim reports. The Examiner does not yet know whether any of the issues to be investigated will lend themselves to early resolution, but the Examiner will consider providing interim reports to the extent that it appears possible and constructive to do so.

### D. Monitoring of Bankruptcy Cases

24.     The Examiner's proposed counsel will continue to monitor and review pertinent filings with the Bankruptcy Court regarding or involving any issues related to the Investigation.

### E. Retention of Professionals

25.     In accordance with the provisions of the Examiner Order, the Examiner has determined that it is necessary and appropriate to employ and retain, subject to approval of this Court, certain professionals in order to fully discharge his fiduciary and statutory duties.

26.     The Examiner has moved for authorization to retain as counsel the firm of Chadbourne & Parke LLP.  In addition, the Examiner has determined that he cannot adequately conduct the Investigation without advice from an independent financial advisor.  After interviewing a number of well-qualified candidates, the Examiner has decided upon the retention of Mesirow Financial Consulting ("<u>Mesirow</u>") as his financial advisor.  Mesirow is a full-service financial and operational consulting firm with substantial experience and expertise in the areas in which the Examiner will need independent assistance.  The Examiner will, after consultation with the U.S. Trustee, move for authorization to retain Mesirow as independent financial advisor.  The Examiner reserves the right to move for authorization to retain additional professionals as he deems appropriate.

F.     **<u>Preparation of Examiner's Report</u>**

27.     At this juncture, based upon his discussions with his counsel and the parties, the Examiner believes that a realistic time frame for the preparation of his report is six months from the date of this submission, subject to adjustment if after meaningful due diligence a different time period appears to be more reasonable.  The scope of the Investigation approved by the Court is broad, and the Examiner believes that the size and complexity of the transactions, agreements, claims, and issues to be examined make the proposed six month timeframe an ambitious one.  However, the Examiner recognizes the importance of completing his Investigation as soon as possible.  Therefore, the Examiner intends to do everything reasonably possible to ensure that the Investigation is completed within the six month period.

**G.      Estimated Fees and Expenses**

28.     The Examiner is not yet able to assess the full scope of the efforts he will need to undertake, making it difficult to develop an accurate budget at present. The Examiner does not yet know when requested discovery will be produced and does not yet know whether and to what extent he will obtain cooperation on document production and access to persons he presently believes are material witnesses. These and other issues could significantly alter the Examiner's current estimates, which are based upon the Examiner's present assumptions about the materials he is likely to receive from the parties and his expectations of cooperation. The Examiner currently estimates the total fees for the Examiner and his advisors will range from $29 million to $36 million, assuming timely cooperation is provided and the report can be timely filed as a result. The fees will not necessarily be incurred at the same amount each month, but will fluctuate over the course of the Investigation. The Examiner will promptly advise the Court and the parties as the Investigation proceeds if costs are expected to vary significantly from this preliminary estimate.

29.     In accordance with the terms of the Examiner Order, the fees and expenses of the professional persons retained by the Examiner are subject to the filing of applications therefor and allowance by the Court after notice and a hearing.

**RESERVATION OF RIGHTS**

30.     The Examiner's work plan is based upon currently available information and presumes the full and complete cooperation of the Debtors, AFI, Ally Bank, Cerberus, and other parties in interest in accordance with the Examiner Order. Given the early stage of the Investigation and the volume of potentially relevant data in this matter, it will take significant

time to assemble, review and analyze the documents and related information.  As the process unfolds, the Examiner's work plan may need to be amended to fulfill the Court's direction to deliver a comprehensive report.  The Examiner reserves his right to modify the work plan accordingly and will promptly notify the Court if modifications are necessary.

Dated:    August 6, 2012
          New York, New York

                                        Respectfully submitted,
                                        Arthur J. Gonzalez, Examiner

                            By:  */s/ Howard Seife*
                                        Chadbourne & Parke LLP
                                        Howard Seife
                                        David M. LeMay
                                        N. Theodore Zink, Jr.
                                        30 Rockefeller Plaza
                                        New York, New York 10112
                                        Telephone:  (212) 408-5100
                                        Facsimile:   (212) 541-5369

                                        *Proposed Counsel to the Examiner*