| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>　　　　　　　　　　　　　　　Debtors. | Case No. 12-12020 (MG)<br><br>Jointly Administered |

# MEMORANDUM OPINION AND ORDER DENYING AURORA BANK'S MOTION TO MODIFY THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)

*A P P E A R A N C E S*:

MORRISON & FOERSTER LLP
*Counsel for the Debtors and Debtors in Possession*
1290 Avenue of the Americas
New York, New York 10104
By:　Aaron Klein, Esq.
　　　Larren M. Nashelsky, Esq.
　　　Gary S. Lee, Esq.
　　　Anthony Princi, Esq.

GREEN & HALL, APC
*Counsel for the Aurora Bank, FSB*
1851 E. First Street, 10th Floor
Santa Ana, CA 92705
By:　James M. Lloyd, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

　　　　Aurora Bank, FSB ("Aurora") moves pursuant to section 362(d) of the Bankruptcy Code,

Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local

Bankruptcy Rule 4001-1 to modify the automatic stay (the "Motion"). (ECF Doc. # 451.)

Aurora seeks to proceed with prepetition claims for damages (asserted in a complaint in one

action and as counterclaims in another action) against Debtors GMAC Mortgage, LLC

("GMACM") and Executive Trustee Services ("ETS" and, together with GMACM, the "Debtor

Defendants") in two separate actions pending in California state courts (the "California Actions"). Residential Capital, LLC ("ResCap") and its affiliated debtors (the "Debtors") oppose the Motion (the "Objection"). (ECF Doc. # 807.) Aurora filed a reply to the Objection (the "Reply"). (ECF Doc. # 864.) The Court held a hearing on the Motion on July 24, 2012.

Aurora's Motion to lift the stay is denied. At the same time, however, the Debtors may not proceed with their claim for declaratory relief against Aurora, asserted in one of the California Actions, while the stay remains in effect barring Aurora from prosecuting its claims or counterclaims against the Debtors. In other words, the Court will not permit the automatic stay to be used as both a sword and a shield. The Debtors must seek approval from this Court before litigating their claims against Aurora in the California Actions.

## I. BACKGROUND

The Debtors (including the Debtor Defendants) filed voluntary petitions under chapter 11 of the Bankruptcy Code on May 14, 2012 (the "Petition Date"), and the Court authorized joint administration of the cases. (ECF Doc. # 59.) On July 13, 2012, the Court entered the Supplemental Servicing Order[1] lifting the automatic stay and permitting approximately two-thirds of the approximately 1900 direct claims and counterclaims against the Debtors pending in courts around the country to continue to be litigated; but the automatic stay remains in place with respect to the remaining one-third of such claims, including in the California Actions.[2] Objection ¶ 2. The Debtors are a residential real estate finance company owned by non-debtor

---

[1] On July 13, 2012, the Court entered the *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* (the "Supplemental Servicing Order"). (ECF Doc. # 774.)

[2] The claims and counterclaims asserted against the Debtors exempted from the automatic stay include claims brought against the Debtors as defenses to foreclosure and bankruptcy matters and title disputes.

2

Ally Financial Inc. The Debtors and their non-debtor affiliates operate the fifth-largest mortgage servicing business and the tenth-largest mortgage origination business in the United States. Objection ¶ 6 n.5.

As of the Petition Date, the California Actions were pending in California Superior Court in El Dorado County (the "Rogers Action")[3] and in Orange County (the "Joint Action").[4] *See* Mot. ¶¶ 5, 7. On or about September 25, 2009, the Debtor Defendants filed the Rogers Action, a home foreclosure action. In the Rogers Action, Aurora asserts a counterclaim against the Debtor Defendants for money damages in excess of $332,800 arising from the Debtor Defendants' allegedly wrongful reconveyance of a deed of trust being serviced by Aurora. Mot. ¶¶ 1, 5. In July 2011, Aurora and the Debtor Defendants agreed to attend mediation to attempt to settle the disputes and to suspend all deadlines pending mediation. Declaration of Jennifer Scoliard (the "Scoliard Declaration") ¶ 18. On September 23, 2011, the Debtor Defendants and Aurora attended mediation, but the parties were unable to reach a settlement. *See* Mot. ¶ 6; Scoliard Decl. ¶ 18. To date, limited discovery has occurred, no dispositive briefing or motions have been filed, and no trial date has been set. Scoliard Decl. ¶ 10.

Aurora also alleges damages from similar wrongful conveyance claims against the Debtor Defendants in three other matters (collectively, the "King, Thomas, and Tozier Matters"). On or about January 24, 2012, Aurora filed the Joint Action against the Debtor Defendants alleging damages from wrongful reconveyance of deeds of trust being serviced by Aurora with respect to the King, Thomas, and Tozier Matters. *See* Mot. ¶ 7. As of the Petition Date, no initial case management conference has been held, the Debtor Defendants have not filed an

---

[3]   *See GMAC Mortgage, LLC, et al. v. Rogers, et al.*, No. PC200900603 (El Dorado Cnty. Super. Ct. filed Sept. 25, 2009).

[4]   *See Aurora Bank, FSB v. GMAC Mortgage, LLC, et al.*, No. 30-2012-00539541-CU-OR-CJC (Orange Cnty. Super. Ct. filed Apr. 26, 2012).

answer to Aurora's complaint, there is no set discovery schedule, no discovery has taken place, no motions for dispositive relief have been filed, and no trial date has been set. Scoliard Decl. ¶ 11.

The parties attempted to schedule a second round of mediation but were unable to reach an agreement.[5] Mot. ¶ 7; Scoliard Decl. ¶ 11. Aurora seeks to proceed with its prepetition litigation because, it contends, the Debtor Defendants' reconveyances render Aurora unable to foreclose upon or enforce its security interest in the properties at issue. Mot. ¶¶ 1-4. Although Aurora asserts that only legal issues remain in the California Actions and believes that neither mediation nor litigation would require testimony from the Debtor Defendants' senior management, the Debtors demonstrate that their legal department (the "Legal Department") would be called upon to assist in the significant work related to either mediation or a trial, including a fact-intensive inquiry to determine the amount of damages. *Id.* at ¶ 19; Scoliard Decl. ¶¶ 4-9, 13. The Debtor Defendants have an errors and omissions insurance policy ("E&O Insurance") with a deductible that is significantly higher than the amount of damages Aurora seeks, and they most often pay their legal defense fees and costs out-of-pocket. Scoliard Decl. ¶ 15. In aggregate, Aurora asserts claims against the Debtor Defendants in the Rogers Action and the Joint Action in excess of $1.4 million.

## II. DISCUSSION

### A. The Automatic Stay is Fundamental to the Chapter 11 Process

#### 1. Policies Underlying the Automatic Stay Favor Giving Debtors a Breathing Spell

Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition:

---

[5] The Parties dispute whether the Debtors made a good faith attempt to agree on a date for a second mediation or if scheduling attempts failed due to the Debtor Defendants' unreasonable delay. (Mot. ¶ 7; Scoliard Decl. ¶ 11.)

4

>
> operates as a stay, applicable to all entities, of –
>> (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection*, 474 U.S. 494, 503 (1986). It maintains the status quo and protects the debtor's ability to formulate a plan for the sale or other disposition of property of the estate. COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2012). The automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted). In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990). The stay is not meant, however, to be used by a debtor to pursue its creditors, as "more litigation is hardly consistent with the concept of a 'breathing spell' for the debtor." *Sternberg v. Johnston*, 582 F.3d 1114, 1124 (9th Cir. 2009). Instead, "[t]he stay is a shield, not a sword" that should "help the debtor deal with his bankruptcy for the benefit of himself and his creditors alike." *Id.*

2. <u>Movant Must Establish Cause for Relief from the Automatic Stay</u>

Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not, however, define the

5

phrase "for cause."  In determining whether "cause" exists to lift the stay for prepetition litigation, courts consider the following twelve factors (the "*Sonnax* Factors"):

    (1) whether relief would result in a partial or complete resolution of the issues,
    (2) the lack of any connection with or interference with the bankruptcy case,
    (3) whether the other proceeding involves the debtor as a fiduciary,
    (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
    (5) whether the debtor's insurer has assumed full responsibility for defending the action,
    (6) whether the action primarily involves third parties,
    (7) whether litigation in another forum would prejudice the interests of other creditors,
    (8) whether the judgment claim arising from the other action is subject to equitable subordination,
    (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
    (10) the interests of judicial economy and the expeditious and economical resolution of litigation,
    (11) whether the parties are ready for trial in the other proceeding, and
    (12) the impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re New York Medical Grp., PC*, 265 B.R. 408 (Bankr. S.D.N.Y. 2001). Not all of the *Sonnax* Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis.  *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)).

    In a request for stay relief, the moving party bears the initial burden to demonstrate, using the *Sonnax* Factors, that cause exists for lifting the stay, and the court may deny the motion if the movant fails to make an initial showing of "cause."  *See Sonnax*, 907 F.2d at 1285; *Capital Comm. Fed. Credit Union v. Boodrow* (*In re Boodrow*), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") (internal quotation omitted).

6

If the movant is an unsecured creditor, the policies underlying the automatic stay weigh against granting the relief requested. "[T]he general rule is that claims that are not viewed as secured in the context of section 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Leibowitz,* 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); *see also Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 17, 2010).

### B. Application to the Debtors' Case

#### 1. Vacating the Automatic Stay Would Contravene Its Intended Purpose

The automatic stay is critical to a debtor because it allows a debtor to focus on its reorganization instead of ligation. *Pioneer,* 114 B.R. at 48. Here, the Debtors have already obtained an order modifying the automatic stay allowing claims asserted as defenses to foreclosure actions being prosecuted by or on behalf of the Debtors to continue outside of the bankruptcy court. But the stay remains in place with respect to affirmative claims against the Debtors seeking to recover damages. Claims for damages against the Debtors are the usual grist for the bankruptcy claims allowance process and absent unusual circumstances the bankruptcy court remains the appropriate forum to resolve such claims. Permitting courts around the country to adjudicate claims risks diverting the attention of Debtors' personnel from pressing issues in the chapter 11 case.[6] As further explained below, the automatic stay should remain in place to preserve the Debtors' "breathing spell" with respect to the claims asserted by Aurora in the California Actions.

---

[6] The evidence shows that the Debtors' Legal Department takes an active role in pending litigation including: "(i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial." Scoliard Decl. ¶ 4.

7

At the same time the Debtors may not pursue their claim for declaratory relief against Aurora. *Sternberg v. Johnston*, 582 F.3d 1114, 1123-24 (9th Cir. 2009) ("[W]e have explained that the stay gives the debtor time to put finances back in order, offers the debtor an opportunity to reorganize so that creditors can be satisfied to the greatest extent possible, and prevents creditors from racing to devour the debtor's estate . . . . We have never said the stay should aid the debtor in pursuing his creditors . . . . The stay is a shield, not a sword." (internal quotation marks and citations omitted)).

  2. <u>The *Sonnax* Factors Weigh Against Relief from Stay</u>

Under section 362(d)(1), Aurora must make an initial showing of cause to lift the stay, and if it cannot meet this burden, the court should deny relief without requiring the Debtors to demonstrate that they are entitled to continued protection. *See Sonnax*, 907 F.2d at 1285. Not all of the *Sonnax* Factors apply to Aurora's case, but the relevant *Sonnax* Factors weigh strongly in favor of denying the stay relief requested by Aurora.

    *a.* *Relief Would Not Result in a Partial or Complete Resolution of the Issues (Sonnax Factor No. 1)*

The first *Sonnax* Factor does not support relief from the stay because lifting the stay would not bring about a resolution of the issues. Both the Rogers Action and Joint Action are in their initial stages, with little or no discovery having taken place. Scoliard Decl. ¶ 10. There has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims, counterclaims or defenses. Discovery, trial preparation and, absent a settlement, trial all remain to be done. If a California court ultimately rendered a judgment against the Debtor Defendants, Aurora would still hold a general unsecured claim that is to be paid proportionally and in accordance with a confirmed chapter 11 plan. *Id.* Where lifting the stay would not result

8

in partial or complete resolution of the issues, the first *Sonnax* Factor weighs against lifting the stay.

        b.    *Lifting the Automatic Stay is Connected to and Will Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor No. 2)*

The second *Sonnax* Factor does not support lifting the stay because lifting the stay will interfere with the Debtors' chapter 11 cases by depleting estate resources. The Debtors' Legal Department would be called upon to assist in the significant work related to either mediation or a trial, including a fact-intensive inquiry to determine the amount of damages. *See* Scoliard Decl. ¶¶ 13, 19. The time and expense involved in such work would divert the Legal Department's attention and resources from the resolution of the Debtors' chapter 11 cases. *Id.* ¶ 9. The second *Sonnax* Factor therefore weighs against lifting the automatic stay.

        c.    *No Specialized Tribunal Has Been Established to Hear the Actions (Sonnax Factor No. 4)*

The fourth *Sonnax* Factor does not support relief from the stay. To date, no specialized tribunal has been established to hear the California Actions involving state law. *See* Scoliard Decl. ¶ 14. This Court can and does interpret and apply state law to resolve claims through the bankruptcy process. *See, e.g.*, *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009) ("This Court has significant experience in applying state law . . . ."). Accordingly, despite Aurora's argument that the California courts should decide issues of California real property law, this Court has the authority to adjudicate and render judgment on the state law claims Aurora asserts against the Debtor Defendants.

        d.    *No Insurer Has Assumed Responsibility for Any of the Actions (Sonnax Factor No. 5)*

The fifth *Sonnax* Factor does not support relief from the stay. At this point in the California Actions, no insurer has assumed responsibility to pay for damages. Aurora believes

9

that the Debtor Defendants have insurance coverage for some or all of any judgment rendered against them, but the Objection shows that this belief is mistaken. *See* Mot. ¶ 15; Objection ¶ 30. Although the Debtor Defendants have E&O Insurance, the deductible is significantly higher than the amount of damages Aurora seeks, meaning that an adverse judgment would require the Debtor Defendants to pay damages directly. Scoliard Decl. ¶ 15. Additionally, the Debtor Defendants typically pay their legal defense fees and costs out-of-pocket. *Id*. The fifth *Sonnax* Factor weighs in favor of denying relief from the automatic stay because any damages awarded to Aurora would be paid directly by the Debtor Defendants.

     e.  *The Actions do not Primarily Involve Third Parties (Sonnax Factor No. 6)*

  The sixth *Sonnax* Factor does not support granting relief from the stay. The only named defendants in the Joint Action are the Debtor Defendants, and Aurora's counterclaim is directed only against the Debtor Defendants in the Rogers Action. Mot. ¶ 33. As a result, the Debtor Defendants are the primary parties, and the California Actions require their active involvement. The court should not grant relief from the stay under the sixth *Sonnax* Factor if the debtor is the main party to the litigation. *See City Ins. Co. v. Mego Int'l Inc. See* (*In re Mego Int'l Inc.*), 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate, suggesting that continuance of the stay was proper."). That Aurora anticipates adding additional third parties to the action should it proceed does not change the analysis as it presently relates to the Debtor Defendants, which are the only parties involved as of the Petition Date.

      *f.*  *Litigation of the Actions in Another Forum Would Prejudice the Interests of Other Creditors (Sonnax Factor No. 7)*

  The seventh *Sonnax* Factor does not support relief from the stay. Requiring the Debtors to defend the California Actions in California state court would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *Publiker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992). Other creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization.

      *g.*  *The Interests of Judicial Economy and Economical Resolution of the Actions Are Best Served by Maintaining the Automatic Stay (Sonnax Factor No. 10)*

  The tenth *Sonnax* Factor does not support the relief from the stay. It is unclear that mediation will resolve the disputed issues. Both factual and legal issues remain in the California Actions, and a judgment for Aurora in either action would require a fact-intensive inquiry that may involve costly discovery, witness testimony, briefing, and oral argument. Scoliard Decl. ¶¶ 12-13. Further, the interests of judicial economy and the economical resolution of litigation are best served by resolving Aurora's claims against the Debtor Defendants through the uniform bankruptcy claims process, particularly because these chapter 11 cases are large, complex, and involve a debtor with thousands of potential claimants and hundreds of pending actions against it. *See In re Motors Liquidation Company f/k/a General Motors Corp.*, No. 09-50026 (REG), H'rg Tr. at 44:20-25 (Nov. 5, 2009) ("The economical way of doing [prepetition litigation] is dealing with [prepetition litigation] by the claims allowance process, as all of the other thousands of claims against this estate are."). Aurora's claims are more efficiently addressed under a claims allowance process.

> h.  *The Movant's Case is Not Ready for Trial (Sonnax Factor No. 11)*

The eleventh *Sonnax* factor does not support the relief from the stay because neither the Rogers Action nor the Joint Action is ready for trial. *See Bally*, 402 B.R. at 624 (denying stay relief where the parties had not started conducting extensive discovery and were not ready for trial). As of the Petition Date, no initial case management conference has been held, the Debtor Defendants have not filed an answer to Aurora's complaint, there is no set discovery schedule, no discovery has taken place, no motions for dispositive relief have been filed, and no trial date has been set. Scoliard Decl. ¶ 11. Because the parties to the California Actions have not begun significant discovery or undertaken other tasks in preparation for trial, the eleventh *Sonnax* Factor weighs in favor of maintaining the automatic stay.

> i.  *The Balance of Harms Favors Maintaining the Automatic Stay (Sonnax Factor No. 12)*

The twelfth *Sonnax* Factor weighs in favor of maintaining the stay because the time, cost, and attention that would be necessary to defend the Debtor Defendants in the California Actions would detract from the resources directed to the chapter 11 proceedings. *See*, *e.g.*, *In re Northwest Airlines Corp.*, No. 05-17930, 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 3, 2006) (stating that "[t]o allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and . . . [t]he distraction and expense of defending such litigation would interfere with judicial economy and the Debtors' process of reorganization") (citing *Shugrue v. Air Lines Pilots Assn. (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990)); *Bally*, 402 B.R. at 623 (stating that "allowing the actions to proceed would distract the Debtors' management from the bankruptcy proceeding . . . thereby affecting the interests of other creditors"). Requiring the Debtor Defendants to litigate the California Actions would

negatively impact the chapter 11 reorganization by diminishing the estates' resources and requiring the Debtors to defend against additional motions for stay relief. Further, Aurora has not demonstrated that it will be unreasonably harmed if stay relief is granted; its claims will still be addressed, along with those of other creditors, at a later point in the Debtors' bankruptcy proceedings. Accordingly, the twelfth *Sonnax* factor weighs against lifting the stay.

### III.   CONCLUSION

For the foregoing reasons, Aurora's Motion to modify the automatic stay is **DENIED**.

**IT IS SO ORDERED.**

Dated:   August 7, 2012
         New York, New York


                                            ____*Martin Glenn*_____
                                               MARTIN GLENN
                                          United States Bankruptcy Judge