MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Norman S. Rosenbaum

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

———————————————————  )
In re:                                                     )      Case No. 12-12020 (MG)
                                                              )
RESIDENTIAL CAPITAL, LLC, et al.,        )      Chapter 11
                                                              )
                                   Debtors.            )      Jointly Administered
———————————————————  )

**DEBTORS' OMNIBUS OBJECTION TO MOTIONS FOR RELIEF FROM
THE AUTOMATIC STAY FILED BY ALAN MOSS [DOCKET NO. 877 AND 878],
KENNETH TAGGART [DOCKET NO. 882], AND HEDEYA
HAROUTUNIAN [DOCKET NO. 894]**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

    A.    The Moss Motion ................................................................................................ 2

    B.    The Second Taggart Motion ............................................................................... 4

    C.    The Haroutunian Motion .................................................................................... 6

OBJECTION ..................................................................................................................... 7

I.    THE SUPPLEMENTAL SERVICING ORDER DOES NOT GRANT RELIEF
FROM THE STAY TO PURSUE ANY OF THE ACTIONS ........................................ 7

    A.    None of the Actions Involve Debtor-Initiated Foreclosure or Eviction
Proceedings ........................................................................................................ 8

    B.    None of the Actions in Non-Judicial Foreclosure States seek to Unwind or
Defend a Foreclosure or Eviction ..................................................................... 9

II.    RELIEF FROM THE AUTOMATIC STAY SHOULD NOT BE GRANTED ............. 10

    A.    The Policies Underlying the Automatic Stay Weigh in Favor of Denying
the Relief Requested by the Movants ............................................................... 10

    B.    The Movants have Failed to Establish Cause for Relief from the
Automatic Stay ................................................................................................. 12

        1.    Relief From the Stay Would Not Result in a Complete Resolution
of the Issues (Sonnax Factor No. 1) ..................................................... 14

        2.    The Lifting of the Automatic Stay Is Connected to and Will
Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor
No. 2) ..................................................................................................... 15

        3.    No Specialized Tribunal Has Been Established to Hear the Actions
(Sonnax Factor No. 4) ........................................................................... 16

        4.    No Insurer Has Assumed Responsibility for Any of the Actions
(Sonnax Factor No. 5) ........................................................................... 17

        5.    The Actions do not Primarily Involve Third Parties (Sonnax Factor
No. 6) ..................................................................................................... 18

        6.    Litigation of the Actions in Another Forum Would Prejudice the
Interests of Other Creditors (Sonnax Factor No. 7) .............................. 18

i

**TABLE OF CONTENTS**
**(continued)**

Page

7.    The Interests of Judicial Economy and Economical Resolution of the Actions Are Best Served by Maintaining the Automatic Stay and None of the Actions is Ready for Trial (Sonnax Factor Nos. 10 and 11) ................................................. 19

8.    The Balance of Harms Favors Maintaining the Automatic Stay (Sonnax Factor No. 12) ........................................................... 20

CONCLUSION ..................................................................................................... 22

Exhibits:

Exhibit 1:    Scoliard Declaration
Exhibit 2:    Taggart Postpetition Complaint
Exhibit 3:    Taggart Prepetition Complaint
Exhibit 4:    Taggart Prepetition Action Summons

ny-1051874

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow),
126 F.3d 43 (2d Cir. 1997)........................................................................................13

City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l Inc.),
28 B.R. 324 (Bankr. S.D.N.Y. 1983) ......................................................................18

In re Bally Total Fitness of Greater N.Y., Inc.,
402 B.R. 616 17, 20, 21 .............................................................................17, 20, 21

In re Cuyahoga Equip. Corp.,
980 F.2d 110 (2d Cir. 1992)....................................................................................18

In re Ionosphere Clubs, Inc.,
922 F.2d 984, 989 (2d Cir. 1990)............................................................................21

In re Leibowitz,
147 B.R. 341 (Bankr. S.D.N.Y. 1992) ...................................................................13

In re Motors Liquidation Co.,
Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010)..........13

In re Northwest Airlines Corp.,
No. 05-17930, 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 3, 2006) ........................20

In re Pioneer Commercial Funding Corp.,
114 B.R. 45 (Bankr. S.D.N.Y. 1990) .............................................................10, 16

Mazzeo v. Lenhart (In re Mazzeo),
167 F.3d 139 (2d Cir. 1999)....................................................................................13

Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection,
474 U.S. 494 (1986)................................................................................................10

SEC v. Brennan,
230 F.3d 65 (2d Cir. 2000)......................................................................................10

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
907 F.2d 1280 (2d Cir. 1990)........................................................................ passim

**STATUTES**

11 U.S.C. § 362......................................................................................................................1

11 U.S.C. § 362(a)(1)........................................................................................................9, 10

11 U.S.C. § 362(d).................................................................................................................12

**OTHER AUTHORITIES**

COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2012) .............................................................10

Residential Capital, LLC and its affiliated debtors and debtors in possession in the above-caption Chapter 11 cases (collectively, the "Debtors") hereby submit this omnibus objection (the "Objection") to (i) Alan Moss's *Notice of Motion and Motion for Order Dissolving the Automatic Stay* [Docket No. 877] and associated *Memorandum of Law in Support of Notice of Motion and Motion for Order Dissolving the Automatic Stay* [Docket No. 878], each filed July 23, 2012 (collectively, the "Moss Motion"); (ii) Kenneth Taggart's *Motion for Leave to File Motion Pursuant to Stay & Relief Oral Argument & Hearing Requested*, filed on July 23, 2012 [Docket No. 882] (the "Second Taggart Motion,"); and Hedeya Haroutunian's *Motion for Relief from the Automatic Stay under 11 U.S.C. § 362*, dated July 24, 2012 [Docket No. 894] (the "Haroutunian Motion," and together with the Moss Motion and the Second Taggart Motion, the "Motions"). In support hereof, the Debtors submit the Declaration of Jennifer Scoliard ("Scoliard Decl."), attached hereto as <u>Exhibit 1</u>, and respectfully represent:

## PRELIMINARY STATEMENT

1.      With few exceptions, each of the Motions seeks relief from the automatic stay to pursue claims for monetary damages against the Debtors. As the Court confirmed at the hearing on July 10, 2012, the Supplemental Servicing Order (defined below) is clear that the automatic stay remains in full force and effect with respect to continuation of litigation to prosecute such damages claims against the Debtors. Regardless, the *Sonnax* factors clearly weigh in favor of denial of each of the Motions. Additionally, to the extent that the Motions seek relief from the automatic stay to pursue equitable relief, the modification of the automatic stay provided for under the Supplemental Servicing Order does not extend to the requests.

1

## BACKGROUND

2.        On the Petition Date, each of the Debtors filed a voluntary petition in this

Court for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

The Debtors are managing and operating their businesses as debtors in possession pursuant to

Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered

pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.

On July 3, 2012, the Office of the United States Trustee for the Southern District of New York

(the "United States Trustee") appointed the Honorable Arthur T. Gonzalez, former Chief Judge

of the United States Bankruptcy Court for the Southern District of New York as examiner.

3.        On May 16, 2012, the United States Trustee appointed a nine member

official committee of unsecured creditors (the "Creditors' Committee").

4.        On July 13, 2012, the Court entered the *Final Supplemental Order Under*

*Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019*

*(I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving*

*Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action;*

*(III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower*

*Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the*

*Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "Supplemental

Servicing Order").

### A.        The Moss Motion

5.        On July 23, 2012, Mr. Alan Moss, appearing *pro se*, filed the Moss

Motion seeking relief from the automatic stay to proceed with an action in the Superior Court of

California, captioned <u>Alan Irving Moss v. Executive Trustee Services, LLC</u>, Case No.

CIV505386 (Ca. Sup.) (the "Moss State Court Action"). The Moss State Court Action,

commenced on May 5, 2011, seeks the imposition of damages against Debtor Executive Trustee

Services, LLC ("ETS").  See Moss Motion ¶ 1.  Mr. Moss has also filed a separate action,

captioned Moss v. The Bank of New York Trust Company, CV 10-1734-JSW, which is pending

in the United States District Court for the Northern District of California (the "Moss Federal

Court Action").  Scoliard Decl. ¶ 6.  The Moss State Court Action was filed while the Moss

Federal Court Action was pending.  Scoliard Decl. ¶ 6.  The Moss Federal Court Action and the

Moss State Court Action are based on the same allegedly wrongful foreclosure.  Scoliard Decl.

¶ 7.

       6.     The Moss Federal Court Action involves claims against Bank of New

York Mellon Trust Company ("BONYT"), the purchaser at the trustee's sale of Mr. Moss's

house, seeking, among other things, to set aside the May 7, 2009 trustee's sale due to alleged

deficiencies in the deed of trust's chain of title.[1]  Scoliard Decl. ¶¶ 6.  None of the Debtors are

defendants in the Moss Federal Court Action.  Scoliard Decl. ¶ 6.  In the Moss State Court Action,

however, Mr. Moss seeks only damages.  See Moss Motion at 5-6 ("[b]ecause of these statutory

violations, this case seeks monetary damages from ETS"); see also Moss Complaint[2] at 31-32.

First, Mr. Moss seeks damages based on ETS's alleged negligence and fraud in foreclosing upon

and selling his house.  Moss Complaint at 24-28.   Additionally, Mr. Moss seeks damages for

alleged negligent and intentional infliction of emotional distress arising out of the same series of

events. Moss Complaint at 28-31.

---

[1] Mr. Moss contends that TCIF REO2, LLC, which substituted ETS as trustee under the deed of trust prior to the trustee's sale of Mr. Moss's house, was not the beneficiary under the deed of trust at the time it substituted ETS.

[2] The "Moss Complaint" refers to Exhibit One to Mr. Moss's *Memorandum of Law in Support of Notice of Motion and Motion for Order Dissolving the Automatic Stay* [Docket No. 878].

ny-1051874

### B.    The Second Taggart Motion

7.    On July 23, 2012, Mr. Kenneth Taggart, appearing *pro se*, filed the Second Taggart Motion.  As the Court is aware, Mr. Taggart is a defendant in a state court foreclosure proceeding pending in the Court of Common Pleas of Montgomery County, Pennsylvania, captioned GMAC Mortgage, LLC v. Taggart, Case No. 09-25338 (the "Taggart Foreclosure Proceeding").  See First Taggart Motion (defined below) at 1.  Mr. Taggart alleges thirty-two (32) counter-claims against Debtor GMAC Mortgage, LLC ("GMAC Mortgage") in the Taggart Foreclosure Proceeding and Mr. Taggart previously filed a motion seeking clarification of the impact of the automatic stay on the Taggart Foreclosure Proceeding.

8.    On July 10, 2012, the Court held a hearing on Mr. Taggart's first relief from stay motion (the "First Taggart Motion"), filed on June 8, 2012 [Docket No. 263].  At the July 10 hearing, the Court directed the parties to confer and attempt to reach a resolution regarding the First Taggart Motion.   In the absence of a consensual resolution, the Court directed the Debtors to file a brief describing which of Mr. Taggart's counter-claims in the Foreclosure Proceeding could proceed under the Supplemental Servicing Order.  The Court adjourned the matter to July 24, 2012.

9.    By agreement, the parties further adjourned the matter to August 14, 2012. In the interim, the parties communicated by email and telephone, but could not reach a resolution of the First Taggart Motion. As a result, on August 1, 2012, the Debtors filed the supplemental briefing requested by the Court in relation to the First Taggart Motion.[3]

---

[3] *See Debtors' Supplement in Further Opposition to Motion of Kenneth Taggart for Leave to File Motion Pursuant Stay & Relief (and Clarification from Bankruptcy Court)* [Docket No. 968] and *Debtors' Memorandum of Law Regarding Counterclaims Asserted by Kenneth Taggart in State Court Foreclosure Proceedings* [Docket No. 969].

10.     Mr. Taggart has also filed three separate civil actions in the United States

District Court for the Eastern District of Pennsylvania.[4]  The Second Taggart Motion seeks relief

from the automatic stay to pursue two of these actions.  Most recently, on July 18, 2012, in

violation of the automatic stay, Mr. Taggart filed a civil action, captioned Taggart v. GMAC

Mortgage, LLC, Case No. 12-4077 (E.D. Pa.) (the "Taggart Postpetition Action"), in which Mr.

Taggart also names as defendants several GMAC Mortgage employees and its attorneys in the

Taggart Foreclosure Proceeding.[5]  The complaint in Taggart Postpetition Action (the "Taggart

Postpetition Complaint," attached hereto as Exhibit 2) alleges that GMAC Mortgage and the

other defendants named in the Taggart Postpetition Action engaged in "Racketeering and

Conspiracy to Commit Fraud, Deceit, Pennsylvania Unfair Trade Practice Act & Consumer

Protection Laws, Tortuous Actions, [and] Breach of Contract" based on allegedly wrongful

application of force-placed insurance, increases in escrow payments beyond allowable amounts,

utilizing false affidavits and mortgage assignments in pursuit of a foreclosure of Mr. Taggart's

house, and violating other foreclosure laws. Mr. Taggart also alleges that a number of

defendants, including GMAC Mortgage, engaged in mail and wire fraud and he seeks to quiet

title on his property.  See Taggart Postpetition Complaint at 37-70.

11.     Prepetition, Mr. Taggart also filed a civil action captioned Taggart v.

GMAC Mortgage, LLC, Case No. 2:2012- cv00415 (the "Taggart Prepetition Action").[6]  The

Taggart Prepetition Action was filed on January 26, 2012.  Scoliard Decl. ¶ 8.  In the Taggart

---

[4] The Second Taggart Motion does not address the third federal court action, captioned Taggart v. Court of
Common Pleas of Montgomery County – State of Pennsylvania, Case No. 12-cv-01913-WD, which names the
Montgomery County Court of Common Pleas and the Prothonotary of Montgomery County as defendants, with
GMAC Mortgage named as a third-party defendant.
[5] Mr. Taggart brought the Taggart Postpetition Action in the name of "Kenneth J. Taggart and others
similarly situated."  However, the claims for relief appear to relate only to the allegedly wrongful pending
foreclosure of Mr. Taggart's home.
[6] A copy of the amended complaint filed in the Taggart Prepetition Action (the "Taggart Prepetition
Complaint") is attached hereto as Exhibit 3.

5

Prepetition Action, Mr. Taggart alleges, against GMAC Mortgage,[7] various claims for lack of due process, defamation, lack of a fair trial, "tortuous," violations of Unfair Trade Practices Act & Consumer Protection Laws, and violations of the Pennsylvania and United States Constitutions. See Taggart Prepetition Complaint at 9-35. GMAC Mortgage was not served with Mr. Taggart's amended complaint in Taggart Prepetition Action until May 22, 2012, eight days after the Debtors filed for bankruptcy.[8] Summons at 2, Taggart v. GMAC Mortgage, LLC, Case No. 12-cv-00415-WD (E.D. Pa. June 4, 2012) [ECF No. 12]. The Debtors have not filed an answer in the Taggart Prepetition Action. See Scoliard Decl. ¶ 21.

12. The Taggart Prepetition Action and the Taggart Postpetition Action each stem from the allegedly wrongful initiation of the Foreclosure Proceeding. Scoliard Decl. ¶ 9.

## C. The Haroutunian Motion

13. On July 24, 2012, Ms. Hedeya Haroutunian filed the Haroutunian Motion. Ms. Haroutunian seeks to proceed with an appeal of the dismissal of her civil suit against Debtor GMAC Mortgage, LLC, pending in the Court of Appeals for the State of California, Second Appellate District, and captioned Haroutunian v. GMAC Mortgage, LLC, Case No. B237722 (the "Haroutunian Action," and, together with the Taggart Postpetition Action, the Taggart Prepetition Action, and the Moss State Court Action, the "Actions"). See Haroutunian Motion at 1. The Haroutunian Action involves an appeal of a civil suit filed by Ms. Haroutunian in the Superior Court of the State of California, in which Ms. Haroutunian originally sought damages against Debtor GMAC Mortgage for (i) breach of contract, (ii) intentional and negligent

---

[7] The Department of Housing and Urban Development, the United States of America, and the Federal Housing Administration are also named as defendants in the Taggart Prepetition Action. The Taggart Prepetition Complaint asserts several other claims against these entities.

[8] The Debtors Taggart Prepetition Complaint was not served on the Debtors until after the Petition Date. Additionally, the Debtors previously informed Mr. Taggart that the Taggart Postpetition Action was filed in violation of the automatic stay and should be dismissed as to Debtor GMAC Mortgage. While the Debtors do not, at this point, seek imposition of sanctions against Mr. Taggart, should Mr. Taggart continue to attempt to prosecute these civil suits in violation of the automatic stay, the Debtors reserve the right to seek sanctions at a future date.

misrepresentation, (iii) declaratory relief, (iv) unfair business practices, (v) unlawful business

practices, (vi) unjust enrichment and (vii) fraud, all stemming from a trustee's sale of Ms.

Haroutunian's property on April 8, 2010.  Scoliard Decl. ¶ 10.  In December 2010, the California

state court sustained GMAC Mortgage's demurrer as to all counts in Ms. Haroutunian's Second

Amended Complaint, granting Ms. Haroutunian leave to amend only her fraud and California

unlawful business practices claims.  Scoliard Decl. ¶ 11.  After additional motion practice, on

September 30, 2011, the California state court again sustained GMAC Mortgage's demurrer to

Ms. Haroutunian's Fourth Amended Complaint, this time without leave to further amend.

Scoliard Decl. ¶ 11.  On December 9, 2011, the California state court entered judgment in favor

of GMAC Mortgage.  Scoliard Decl. ¶ 11.  Ms. Haroutunian appealed the trial court's decision.

Scoliard Decl. ¶ 12.  The appeal is currently pending, but no briefing has been done.  Scoliard

Decl. ¶ 12.

## OBJECTION

I.    **The Supplemental Servicing Order Does Not Grant Relief from the Stay to Pursue Any of the Actions**

14.    The Supplemental Servicing Order provides certain limited relief from the

automatic stay to permit borrowers to proceed, in Debtor-initiated foreclosure proceedings, with

defenses, counter-claims, and Mandatory Monetary Claims (as such term is defined in the

Supplemental Servicing Order) that could defeat a foreclosure.  See Supplemental Servicing

Order ¶ 14(a)-(b).[9]  Additionally, the Supplemental Servicing Order grants additional limited

---

[9] The Supplemental Servicing Order states, in relevant part:

The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:

relief from the automatic stay – in non-judicial foreclosure states – to continue to prosecute

certain borrower-initiated actions for purposes of defending, unwinding, or challenging a

foreclosure where any applicable challenge period has not yet expired.  Supplemental Servicing

Order ¶ 14(a).  However, the Supplemental Servicing Order specifies that the automatic stay

remains in full force and effect with regard to any direct claims or counterclaims for monetary

damages "of any kind or nature against the Debtors, except where a monetary claim must be

plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or

preclude a foreclosure."  Supplemental Servicing Order ¶ 14(b).

15.     As described further below, the limited relief from the automatic stay

provided by the Supplemental Servicing Order is inapplicable to each of the Actions.

**A.      None of the Actions Involve Debtor-Initiated Foreclosure or Eviction Proceedings**

16.     First, none of the Actions involve foreclosure or eviction proceedings.

Mr. Moss's and Ms. Haroutunian's properties were previously foreclosed upon and sold at

trustees' sales.  See Scoliard Decl. ¶¶ 6, 10.  Ms. Haroutunian subsequently purchased her house

---

(a) except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or eviction has been awarded or, with respect to completed foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to prosecute appeals with respect to any such direct claims or counter-claims;

(b) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action . . . .

Supplemental Servicing Order ¶ 14.

8

from the third-party purchaser at the trustee's sale.  See Haroutunian Motion ¶ 18.  As a result of

these events, the Debtors no longer service Ms. Haroutunian's loan.  Scoliard Decl. ¶ 10.

17.     Mr. Moss was previously subject to an unlawful detainer action initiated

by BONYT, the purchaser of Mr. Moss's house at the trustee's sale.  Scoliard Decl. ¶ 6.

However, BONYT later voluntarily dismissed the unlawful detainer action.  Scoliard Decl. ¶ 6.

Accordingly, no Debtor-initiated unlawful detainer or eviction proceedings are pending against

Mr. Moss.  Scoliard Decl. ¶ 6.

18.     Similarly, while Mr. Taggart is currently involved in the Taggart

Foreclosure Proceeding, which does involve a foreclosure, the Second Taggart Motion seeks

relief from the stay to continue prosecuting only the Taggart Prepetition Action and the Taggart

Postpetition Action, which do not involve Debtor-initiated foreclosure proceedings.

### B.     None of the Actions in Non-Judicial Foreclosure States seek to Unwind or Defend a Foreclosure or Eviction

19.     Two of the Actions – the Haroutunian Action and the Moss State Court

Action – are pending in California, a non-judicial foreclosure state.[10]  However, each of these

Actions only asserts damages claims, not claims that could result in the unwinding of a past

foreclosure sale.  As described in the Moss Motion, Mr. Moss seeks damages for GMAC

Mortgage's alleged negligence, fraud and intentional and negligent infliction of emotional

distress.  See Moss Motion at 5-6 ("[b]ecause of these statutory violations, this case seeks

monetary damages from ETS"); see also Moss Complaint at 31-32.  Similarly, Ms. Haroutunian

is already in possession of her house, so at this point, Ms. Haroutunian appears to be pursuing

only damages.  See Haroutunian Motion ¶ 18.

---

[10] The Taggart Prepetition Action and the Taggart Postpetition Action are pending in Pennsylvania, a judicial foreclosure state.  Scoliard Decl. ¶ 8.  As a result, the Supplemental Servicing Order's grant of limited relief to certain borrower-initiated actions is not relevant to these actions.

ny-1051874

20.     Based on the foregoing, none of the Actions fall within the scope of the

limited relief from the automatic stay provided by the Supplemental Servicing Order.

## II.     Relief from the Automatic Stay Should Not Be Granted

### A.     The Policies Underlying the Automatic Stay Weigh in Favor of Denying the Relief Requested by the Movants

21.     Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that:

(a) ... a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of –

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

22.     The automatic stay affords "one of the fundamental debtor protections

provided by the bankruptcy laws." Midlantic Nat'l Bank v. New Jersey Dep't of Evntl.

Protection, 474 U.S. 494, 503 (1986). The automatic stay is of considerable importance in cases

such as this, where the Debtors seek to sell all or substantially all of their assets. It maintains the

status quo to protect the debtor's ability to control the sale or other disposition of property of the

estate. COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2012). The automatic stay prevents

the state-law "race to the courthouse," and is intended to "allow the bankruptcy court to

centralize all disputes concerning property of the debtor's estate so that reorganization can

proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." SEC v. Brennan,

230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted). In this regard, the automatic stay

"promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." In re Pioneer

Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

10

23.     One of the primary objectives of these Chapter 11 cases is the preservation of the Debtors' going concern value through the sale of their servicing platform and legacy assets, through which the Debtors hope to maximize creditor recoveries.[11]  The automatic stay is critical to the Debtors ability to achieving this objective because it will permit the Debtors' management and employees, including the Debtors' in-house legal department (the "Legal Department"), to focus on the tasks critical to achieving a successful resolution of these cases, including, but not limited to, the following:  (i) myriad due diligence and other issues with respect to the proposed sales of the Debtors' servicing operations and legacy loan portfolios, (ii) the multitude of tasks related to preparing and filing a plan and disclosure statement and obtaining the requisite court approvals of the disclosure statement, solicitation procedures and ultimately, confirmation of the plan, (iii) producing documents and responding to requests for information in connection with investigations by the Creditors' Committee and court-appointed examiner, and (iv) obtaining approval for settlement agreements regarding potential claims to be asserted by or against the Debtors' estates[12] – all of which the Debtors' seek to accomplish on an accelerated time frame before the end of the year.  Performing just these tasks in isolation is in itself a huge burden given that the objective of these Chapter 11 cases are somewhat unprecedented (i.e., the sale of a mortgage loan servicing and origination platform as a going concern), and that the Debtors must address the concerns of multiple constituencies, including United States government entities and governmental associations in the context of a Chapter 11 case (e.g., Fannie Mae; Freddie Mac; Ginnie Mae; Department of Housing and Urban

---

[11] In tandem with this effort, the Debtors have entered into plan support agreements with key constituents including AFI, certain holders of their junior secured notes, and certain investors in mortgage-backed securitizations sponsored by the Debtors.

[12] *See Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (II) the RMBS Trustees' Limited Objection to the Sale Motion* [Docket No. 945] (scheduling discovery related deadlines for the Debtors' proposes residential mortgage backed securities trust settlement through October, 2012).

Development; and the U.S. Department of Justice (the "DOJ") (in connection with a joint

settlement among the Debtors, the DOJ, and State Attorneys General from 49 states); and the

Board of Governors of the Federal Reserve System (in connection with that certain Consent

Order, dated April 13, 2011)).  At the same time, the Debtors' personnel continue to operate the

Debtors' business; itself a full time endeavor.  These, and many other tasks related to prosecution

of the Chapter 11 cases, have and will continue to require the utmost attention from all of the

Debtors' employees.  Continuation of the breathing spell created by the automatic stay, therefore,

is essential to the Debtors' restructuring at this juncture, because it allows the Debtors to focus

on steps critical to achieving a successful resolution to these cases, including the continued

operation of the Debtors' businesses and consummation of the sales.

### B.    The Movants have Failed to Establish Cause for Relief from the Automatic Stay.

24.    Section 362(d) of the Bankruptcy Code provides that the Court shall grant

relief from the automatic stay "for cause."  11 U.S.C. § 362(d).  The Bankruptcy Code does not,

however, define the phrase "for cause."  In the context of stayed prepetition litigation, though,

the Second Circuit has outlined a 12-factor test (the "Sonnax Factors") to determine whether

"cause" exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues,
> (2) the lack of any connection with or interference with the bankruptcy case,
> (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a
> specialized tribunal with the necessary expertise has been established to hear the
> cause of action, (5) whether the debtor's insurer has assumed full responsibility
> for defending the action, (6) whether the action primarily involves third parties,
> (7) whether litigation in another forum would prejudice the interests of other
> creditors, (8) whether the judgment claim arising from the other action is subject
> to equitable subordination, (9) whether movant's success in the other proceeding
> would result in a judicial lien avoidable by the debtor, (10) the interests of judicial
> economy and the expeditious and economical resolution of litigation,
> (11) whether the parties are ready for trial in the other proceeding and (12) the
> impact of the stay on the parties and the balance of harms.

12

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280,

1285-1287 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d

Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not

applied the Sonnax Factors, made only sparse factual findings and ultimately did not provide the

appellate court "with sufficient information to determine what facts and circumstances specific to

the present case the court believed made relief from the automatic stay appropriate."). Courts

have recognized that not all of the Sonnax Factors will be applicable to every case, and the Court

may disregard irrelevant factors. See In re Mazzeo, 167 F.3d at 143.

      25.     In a request for stay relief, the moving party bears the initial burden to

demonstrate that good cause exists for lifting the stay, using the Sonnax Factors, and the court

may deny the motion if the movant fails to make an initial showing of cause. See Sonnax, 907

F.2d at 1285; Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48

(2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if

the movant fails to make an initial showing of cause.") (quotation omitted).

      26.     The movant's burden is especially heavy if it is an unsecured creditor.

"[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1)

should not be granted relief from the stay unless extraordinary circumstances are established to

justify such relief." In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also In re

Motors Liquidation Co., Case No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17,

2010).

      27.     The Second Taggart Motion fails to provide any analysis of how the

Sonnax factors weigh in favor of lifting the automatic stay.  The Second Taggart is devoid of any

reason why relief from the automatic stay should be granted. The Debtors respectfully submit

that the Court should deny the Second Taggart Motion on that basis alone.

28.      Additionally, the Debtors submit that the application of the <u>Sonnax</u> factors

clearly indicates that granting relief from the automatic stay would be inappropriate with respect

to any each of the Motions.[13]  Thus, each of the Motions should be denied.

**1.**      *Relief From the Stay Would Not Result in a Complete Resolution of the Issues (Sonnax Factor No. 1)*

29.      The first <u>Sonnax</u> Factor does not support relief from the stay because

lifting the stay would not result in resolution of the issues.  If the stay were lifted, the Actions

would still have to be litigated against the Debtor defendants involved in each Action.  Each of

the Actions is in its initial stages with no discovery schedule set in any of the Actions.[14]  <u>See</u>

Scoliard Decl. ¶ 21.  Litigating the Actions to completion would require the Debtors to prepare

answers and potentially motions for dismissal and/or summary judgment, present oral arguments

and, if summary judgment is not granted, conduct written discovery, depositions, prepare for and

conduct a trial.  <u>See</u> Scoliard Decl. ¶ 21.  Even if judgments were ultimately rendered against the

Debtors in the Actions, such judgments would merely entitle the respective movant to a general

unsecured claim to be paid proportionally with thousands of other similar claims in accordance

with the terms of a confirmed Chapter 11 plan.  There is no reason why the movants should be

afforded the opportunity to liquidate their general unsecured claims ahead of the thousands of

similarly-situated creditors.

---

[13] <u>Sonnax</u> Factors numbers 3 and 9 are not applicable to the facts here.  The Debtors do not address <u>Sonnax</u> Factor 8 in their objection, but reserve all right with regard thereto.

[14] Although some document discovery has occurred in the Haroutunian Action.

14

      **2.**      *The Lifting of the Automatic Stay Is Connected to and Will Interfere with the Debtors' Chapter 11 Cases (<u>Sonnax</u> Factor No. 2).*

30.      The second <u>Sonnax</u> Factor, lack of any connection with or interference with the bankruptcy case, militates against granting any of the Motions.  At best, allowing the Actions to proceed against the Debtors at this point in the Debtors' Chapter 11 cases would be a waste of estate assets.  The Debtors' Chapter 11 cases are large and exceedingly complex, and the issues and tasks facing the Debtors before achieving a successful resolution are difficult and numerous.  Lifting the automatic stay as requested in the Motions would require the Legal Department and other employees of the Debtors to spend time and resources actively monitoring, analyzing, and evaluating the status of and various litigation strategies of each case, at the expense of time they could devote to advancing the Chapter 11 cases to a successful resolution.

31.      In particular, the Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have a contractual obligation to defend.  The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' regional offices, and performing any number of other litigation related duties. <u>See</u> Scoliard Decl. ¶¶ 13-14 (describing some of the Legal Department's functions).

32.      Additionally, as a result of the Debtors' bankruptcy filings and the entry of the Supplemental Servicing Order, the Legal Department's responsibility have increased to include (i) the review and analysis of individual claims as they arise in conjunction with internal business personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation counsel and its mortgage default counsel regarding the application of the Supplemental

Servicing Order (and will continue to do so as new legal actions arise); (iii) assisting Chapter 11

counsel with the preparation of various motions, responses to motions for relief from stay and

other Court filings[15], as well as various bankruptcy related tasks; (iv) assisting Chapter 11

counsel and internal business personnel with Chapter 11 reporting requirements; and (v) assisting

with matters pertaining into the pending sale of the Debtors' servicing and origination platform

and legacy assets.  See Scoliard Decl. ¶ 14.  These responsibilities are ongoing and will continue

and will likely expand as these Chapter 11 cases progress.  See Scoliard Decl. ¶ 14.  Adding to

these responsibilities by permitting legal actions to continue would divert the Legal

Department's and other critical employees' attention from the critical tasks of running the

Debtors' business and would run counter to the policies behind the automatic stay.  See In re

Pioneer Commercial Funding Corp., 114 B.R. at 48 (noting that the automatic stay is intended to

provide the Debtors with a "breathing spell" to address the immediate concerns related to the

restructuring of the Debtors' businesses).

        33.     Therefore, for the above reasons, the second Sonnax factor weighs heavily

against lifting the automatic stay.

        **3.**     *No Specialized Tribunal Has Been Established to Hear the Actions
(Sonnax Factor No. 4).*

        34.     As far as the Debtors are aware, no specialized tribunal has been created to

hear any of the claims involved in any of the Actions and each is pending in either state or

federal court.  Scoliard Decl. ¶ 17.  Instead, each of the Actions raises ordinary state and federal

civil claims.  For example, the Taggart Prepetition Action and Taggart Postpetition Action raise,

---

[15] By way of example, the Legal Department had a significant role in the drafting of the Supplemental Servicing Motion and the Interim Supplemental Servicing Order [Docket No. 181] and participated in the negotiation of the Supplemental Servicing Order.  The Legal Department also, *inter alia*, assisted in the preparation of the Debtors' Schedules and Statement of Financial Affairs, and Ordinary Course Professionals Motion and all of the responses to the motions for relief from the automatic stay filed to date.

among others, claims for fraud, racketeering, unfair trade practice, and breach of contract.

Taggart Postpetition Complaint at 37-70; Taggart Prepetition Complaint at 9-35.  Likewise, the

Moss Action raises claims for fraud, negligence, and negligent and intentional infliction of

emotional distress.  Moss Complaint at 24-32.  Finally, the Haroutunian Action raises allegations

of fraud, misrepresentation, unjust enrichment, breach of contract, and unfair business practices.

Scoliard Decl. ¶ 10.  As a result, each of the actions is pending in federal or state civil court.

This Court has recognized that it can interpret and apply state law in resolving claims through the

bankruptcy process.  See, e.g., In re Bally Total Fitness of Greater N.Y., Inc., 402 B.R. 616, 624

(Bankr. S.D.N.Y. 2009 ("[t]his Court has significant experience in applying state law ….").

Accordingly, the fourth Sonnax factor weighs in favor of denying relief from the automatic stay.

       **4.**    *No Insurer Has Assumed Responsibility for Any of the Actions*
            *(Sonnax Factor No. 5).*

      35.    For the most part, in the vast majority of their cases, including each of the

Actions, the Debtors pay their legal defense fees and costs out-of-pocket.   Scoliard Decl. ¶¶ 18-

19.  As a result, requiring the Debtors to defend the Actions will result in an unnecessary

diminution in the value of the Debtors' estates.  Indeed, prior to the Petition Date, the Debtors'

out-of-pocket defense costs averaged approximately $5.7 million per month.  Scoliard Decl.

¶ 19.

      36.    Moreover, none of the Movants has provided any evidence or indication

that judgments would be paid from third-party insurance proceeds as opposed to cash from the

Debtors' estates.  Even if judgments from the Actions would fall within the scope of the Debtors'

insurance policy coverage, the Debtors' insurance policies carry high deductibles; therefore any

amounts awarded as judgments against the Debtors will be born directly by the Debtors.

Scoliard Decl. ¶¶ 18.

37.     Therefore, the fifth <u>Sonnax</u> Factor weighs against granting relief from the automatic stay.

**5.**     *The Actions do not Primarily Involve Third Parties (Sonnax Factor No. 6).*

38.     While some of the Actions involve the Debtors as co-defendants, Debtor entities are alleged to have been the primary actor in each of the multi- defendant Actions – the Taggart Prepetition Action, Taggart Postpetition Action, and the Haroutunian Action.   <u>See</u> Scoliard Decl. ¶ 20.  As a result, in each case, the Debtors are required to actively participate in such Action in order to avoid facing an adverse judgment and, accordingly, the fourth <u>Sonnax</u> Factor weighs against granting relief from the automatic stay.  <u>See</u> <u>City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l Inc.)</u>, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate, suggesting that continuance of the stay was proper.").

**6.**     *Litigation of the Actions in Another Forum Would Prejudice the Interests of Other Creditors (Sonnax Factor No. 7).*

39.     Likely, each of the litigants in stayed actions would prefer to liquidate their claims through their pending lawsuits.  However, liquidation of these claims can and should be done in this Court as part of an organized claims resolution process.  Requiring the Debtors to defend the Actions in other forums (even for the sole purpose of liquidating the movants' claims) would require the Debtors to utilize estate assets and resources at a time when the Debtors' employees should be focused on the sale processes, and would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court," <u>In re Cuyahoga Equip. Corp.</u>, 980 F.2d 110, 117 (2d Cir. 1992).  A successful resolution of these Chapter 11 cases is in the interests of all of the Debtors' creditors and diverting the

attention of the Debtors' employees, including the Legal Department, to creditor litigation, not to mention the significant costs associated therewith, could have a detrimental effect on the restructuring effort. As a result, the seventh <u>Sonnax</u> Factor also weighs in favor of denying relief from the automatic stay.

> **7.**    *The Interests of Judicial Economy and Economical Resolution of the Actions Are Best Served by Maintaining the Automatic Stay and None of the Actions is Ready for Trial (Sonnax Factor Nos. 10 and 11).*

40.    Each of the Actions underlying the Motions is in its early stages. Accordingly, the state and federal courts in which those Actions are pending have not expended significant judicial resources and the courts overseeing the currently pending Actions have not even entered orders setting a discovery schedule or a trial dates. Scoliard Decl. ¶ 21. In particular:

- <u>Taggart Postpetition Action</u>:    The Taggart Postpetition Action was filed less than three weeks ago. Accordingly, even if the filing of this action was not void as to GMAC Mortgage, this action would clearly be in the very early stages.

- <u>Taggart Prepetition Action:</u> The Taggart Prepetition Action also has not progressed very far. In fact, although Mr. Taggart's amended complaint in the Taggart Prepetition Action was filed on March 21, 2012, GMAC Mortgage was not served until May 22, 2012, eight days after the Debtors filed for bankruptcy. Summons at 2, <u>Taggart v. GMAC Mortgage, LLC</u>, Case No. 12-cv-00415-WD (E.D. Pa. June 4, 2012) [ECF No. 12].[16] As a result, the Debtors have not yet filed an answer. Scoliard Decl. ¶ 21.

- <u>Moss State Court Action</u>: The Moss State Court Action is in the relatively early stages. The Moss State Court Action was filed on May 5, 2011. The California state court entered a default, but ETS did not learn of the default until March 3, 2012. Scoliard Decl. ¶ 21. As a result, ETS filed a Motion to Set Aside Default on March 6, 2012, which was pending as of the Petition Date. Scoliard Decl. ¶ 21.

- <u>Haroutunian Action</u>: As described above, the state court in the Haroutunian Action sustained several demurrers to Ms. Haroutunian's amended complaints. <u>See</u> Scoliard Decl. ¶ 21. Prior to dismissal, some document

---

[16] A copy of the Summons is attached hereto as <u>Exhibit 4</u>.

discovery had occurred at the trial court level, but no depositions had been taken. Scoliard Decl. ¶ 21. Ms. Haroutunian has appealed the state court's dismissal of the action. See Haroutunian Motion at 7. The Haroutunian Action remains at the very early stage in the litigation even if Ms. Haroutunian was successful on appeal.

41. Accordingly, it is clear that the courts in which the Actions are currently pending have expended limited judicial resources on these Actions; none are trial ready and with either no or limited discovery has conducted in the Actions. Therefore, the eleventh Sonnax Factor weighs in favor of denying the stay relief in each case. See Bally, 402 B.R. at 624 (denying stay relief where the parties had not started conducting extensive discovery and were not ready for trial).

**8.** *The Balance of Harms Favors Maintaining the Automatic Stay (Sonnax Factor No. 12).*

42. The final Sonnax Factor, the balance of the harms, weighs heavily in favor of maintaining the stay. The movants do not provide any evidence that they will suffer any prejudice if the stay is not immediately lifted. In contrast, the cost to the Debtors of lifting the automatic stay at this early stage of the cases is substantial, as is the potential detriment to other creditors. Establishing a precedent for lifting the automatic stay at this point would inevitably lead to additional relief from stay motions seeking to proceed with prepetition litigation. With the Debtors' defending over 1,900 prepetition actions and in addition, party to tens of thousands of foreclosure, eviction and borrower bankruptcy proceedings nationwide, relief from stay motions filed by plaintiffs in even a relatively small percentage of the Debtors' outstanding litigation would distract the Debtors' management, professionals and the Legal Department, thus interfering with the Debtors' efforts to successfully reorganize in these Chapter 11 cases. See Scoliard Decl. ¶ 5; see also, e.g., In re Northwest Airlines Corp., No. 05-17930, 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 3, 2006) (stating that "[t]o allow the automatic stay to be

ny-1051874

lifted with respect to this action at this time would prompt similar motions and . . . [t]he distraction and expense of defending such litigation would interfere with judicial economy and the Debtors' process of reorganization.") (citing In re Ionosphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir. 1990)); Bally, 402 B.R. at 623 ("allowing the actions to proceed would distract the Debtors' management from the bankruptcy proceeding . . . thereby affecting the interests of other creditors.").  During the pendency of the Debtors' Chapter 11 cases, the limited resources of the Debtors' estates are much better spent on the Debtors' restructuring efforts, rather than litigating borrower lawsuits spread throughout the country.  Forcing the Debtors to litigate the Actions, as discussed above, would distract the Debtors from and hinder their reorganization efforts and negate the important "breathing spell" necessary to allow them to restructure and preserve the value of their assets for the benefit of all creditors.

43.    Permitting the Movants to liquidate their claims in state and federal courts in other parts of the country would undoubtedly lead to numerous additional stay relief motions, which would unnecessarily drain the Debtors' resources and distract them from restructuring at this important early stage in the cases.   See Bally, 402 B.R. at 624 (holding that the overall balance of harms weighed in favor of denying stay relief because forcing the debtors to litigate would distract them from reorganizing, threaten to open the "floodgates" to other lift stay motions, resources were better spent stabilizing operations and cash flows, and no great hardship had been demonstrated).  This concern is real; even at this early stage in the Debtors' Chapter 11 cases, the Debtors and counsel have received numerous inquiries requesting consent to relief

21

from the stay and at least twenty-five (25) relief from stay motions have been filed.  The balance

of the harms clearly favors maintaining the automatic stay with respect to the Actions.[17]

## CONCLUSION

44.    Based on the weight of settled authority and its application to the Motions

as described above, the Debtors respectfully submit that each of the movants has failed to meet

its burden to show cause for lifting the automatic stay to permit the Actions to proceed in state

and federal courts in other parts of the country.  Substantially all of the applicable <u>Sonnax</u>

Factors weigh heavily in favor of maintaining the automatic stay.  As such, the Court should

deny the Motions.

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an

Order denying the Motions and grant such other relief as the Court deems proper.


New York, New York            /s/ Norman S. Rosenbaum
Dated: August 7, 2012         Larren M. Nashelsky
                              Gary S. Lee
                              Norman S. Rosenbaum
                              MORRISON & FOERSTER LLP
                              1290 Avenue of the Americas
                              New York, New York 10104
                              Telephone: (212) 468-8000
                              Facsimile: (212) 468-7900

                              *Counsel to the Debtors and*
                              *Debtors in Possession*

---

[17] The Debtors have already agreed to shoulder more of the burden and increased costs of defense through the Supplemental Servicing Order to permit a significant number of foreclosure, eviction and bankruptcy related claims against them to proceed.

ny-1051874