MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Norman Rosenbaum

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF JENNIFER SCOLIARD, IN HOUSE BANKRUPTCY COUNSEL AT RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF DEBTORS' OMNIBUS OBJECTION TO MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY FILED BY ALAN MOSS [DOCKET NO. 877 AND 878], KENNETH TAGGART [DOCKET NO. 882], AND HEDEYA HAROUTUNIAN [DOCKET NO. 894]**

I, Jennifer Scoliard, declare as follows:

1.    I serve as In-House Bankruptcy Counsel in the Legal Department at Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors"). I have held this position since September 2010. Prior to that date, I served in various legal roles supporting GMAC Mortgage, LLC from January 2008 to September 2010. I joined ResCap in January 2008.

2.    In my role as In-House Bankruptcy Counsel at ResCap, I am responsible for the management of all non-routine bankruptcy litigation nationwide, including contested

ny-1053028

bankruptcy matters. However, as a result ResCap's Chapter 11 filing, my role has significantly expanded to include assisting the Debtors and their professional advisors ("Bankruptcy Counsel") in connection with the administration of the Chapter 11 cases, in addition to my litigation work. Specifically, my expanded duties and responsibilities as to the Debtors' Chapter 11 cases include, but are not limited to: (i) frequently communicating with Bankruptcy Counsel, usually daily, on various mortgage litigation and other matters; (ii) assisting Bankruptcy Counsel in the analysis of and drafting of responses to motions for relief from stay, objections to various filings, and motions critical to the functions of the Debtors' business; (iii) working with Bankruptcy Counsel, other in-house attorneys and business personnel on bankruptcy issues impacting the Debtors' business operations; and (iv) providing guidance to the Legal Department regarding orders entered in this case, filings by other parties and the Chapter 11 process.

3.  I am authorized to submit this declaration (the "Declaration") in further support of the *Debtors' Omnibus Objection To Motions for Relief from the Automatic Stay Filed By Alan Moss [Docket No. 877 and 878], Kenneth Taggart [Docket No. 882], and Hedeya Haroutunian [Docket No. 894]* (the "Objection").[1]

4.  In my capacity as In-House Bankruptcy Counsel, I am generally familiar with the Debtors' litigation matters, including each of the Actions that are the subject of the Debtors' Objection. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' litigation case files, books and records as well as other relevant documents; my discussions with other members of the Legal Department; information supplied by the Debtors' consultants; or my opinion based upon

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

ny-1053028                           2

experience, expertise, and knowledge of the Debtors' litigation matters, financial condition and history. In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

5.      As of August 3, 2012, the Debtors by way of direct claims and counter-claims are defendants, respondents, or are contractually obligated to defend third parties in 1,910 pending litigation and contested foreclosure and bankruptcy matters filed in jurisdictions all around the country. Approximately fifty-eight percent (58%) of these matters concern either (ii) defenses asserted in foreclosure, eviction or borrower bankruptcy proceedings or (ii) title disputes, both of which are exempted from the automatic stay by the Supplemental Servicing Order; fourteen percent (14%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not subject to the stay, notwithstanding the Supplemental Servicing Order; twenty-four (24%) are stayed and four percent (4%) are still under review for their status. Thus, approximately seventy-two percent (72%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not stayed and continue to proceed in various jurisdictions across the country. This is in addition to the tens of thousands of foreclosure actions and borrower bankruptcies the Debtors are parties to in actions pending throughout the fifty states primarily managed by the Debtors' mortgage default group.

A.      **The Moss Action**

6.      Bank of New York Mellon Trust Company ("BONYT") purchased Mr. Moss's house at a trustee sale held by Debtor Executive Trustee Services ("ETS") on May 7,

ny-1053028                                                3

2009. After purchasing Mr. Moss's house at the trustee's sale, BONYT commenced an unlawful detainer action which was later voluntarily dismissed. Accordingly, no Debtor-initiated unlawful detainer or eviction proceedings are pending against Mr. Moss. While BONYT's unlawful detainer action was pending, on July 22, 2009, Mr. Moss initiated the Moss Federal Court Action against BONYT. The Moss Federal Court Action seeks, among other things, to set aside the May 7, 2009 trustee's sale of Mr. Moss's house due to alleged deficiencies in the deed of trust's chain of title. None of the Debtors are defendants in the Moss Federal Court Action. The Moss Federal Court Action was remanded to the San Mateo County Superior Court on June 26, 2012. Mr. Moss filed a motion for reconsideration of the remand order on July 23, 2012, which is currently pending. In addition to the Moss Federal Court Action, and with said action still pending, on May 5, 2011, Alan Moss commenced the Moss State Court Action against Debtor ETS seeking damages for ETS's alleged negligence, fraud, and negligent and intentional infliction of emotional distress in relation to the trustee's sale of Mr. Moss's house. The California state court entered a default against Debtor ETS, but ETS did not learn of the default until March 3, 2012 and, on March 6, 2012 filed a Motion to Set Aside Default, which was pending as of the Petition Date.

7.  The Moss Federal Court Action and the Moss State Court Action arise out of the same allegedly wrongful foreclosure of Mr. Moss's house.

    B.    **The Taggart Prepetition and Postpetition Actions**

8.  The Taggart Prepetition Action was filed on January 26, 2012. Subsequently, without leave of the Court, the Taggart Postpetition Action was commenced on July 18, 2012.[2] Each of these actions is pending in Pennsylvania, which is a judicial foreclosure

---

[2] Mr. Taggart's also filed a third civil case in the United States District Court for the Eastern District of Pennsylvania, captioned <u>Taggart v. Court of Common Pleas of Montgomery County – State of Pennsylvania</u>, Case

state, and each is in the very early stages of the litigation. The Debtors were served, also without leave of the Court, with an amended complaint in the Taggart Prepetition Action only after the debtors filed for Chapter 11 relief.

9. The Taggart Prepetition Action and the Taggart Postpetition Action each stem from the allegedly wrongful initiation of the Foreclosure Proceeding pending in the Court of Common Pleas of Montgomery County, Pennsylvania which is the subject of the First Taggart Motion.

C. **The Haroutunian Action**

10. The Haroutunian Action, originally commenced in April 2010, is currently pending in the California Court of Appeals. The Haroutunian Action arises out of GMAC Mortgage LLC's ("GMAC Mortgage") allegedly wrongful sale of Ms. Haroutunian's house at a trustee's sale on April 8, 2010, and the original complaint asserted claims against GMAC Mortgage for (i) breach of contract, (ii) intentional and negligent misrepresentation, (iii) declaratory relief, (iv) unfair business practices, (v) unlawful business practices, (vi) unjust enrichment and (vii) fraud. As a result of the prior trustee's sale, GMAC Mortgage no longer services Ms. Haroutunian's loan.

11. In December 2010, the California state court sustained GMAC Mortgage's demurrer as to all counts in Ms. Haroutunian's Second Amended Complaint, granting Ms. Haroutunian leave to amend only her fraud and California unlawful business practices claims. After additional motion practice, on September 30, 2011, the California state court granted GMAC Mortgage's demurrer to Ms. Haroutunian's Fourth Amended Complaint, this time

---

No. 12-cv-01913-WD. This third case names the Montgomery County Court of Common Pleas and the Prothonotary of Montgomery County as defendants, with GMAC Mortgage named as a third-party defendant.

ny-1053028                                                5

without leave to further amend. Subsequently, on December 9, 2011, the California state court entered judgment in favor of GMAC Mortgage.

12. Ms. Haroutunian appealed the trial court's decision. The appeal remains pending; however, no briefing has been conducted and the appeal was stayed by the commencement of the Debtors' Chapter 11 cases.

### D. Lifting the Automatic Stay Will Interfere With the Debtors Chapter 11 Cases

13. The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have contractual obligations to defend. The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial.

14. As a result of the Debtors' bankruptcy filings and the entry of the Supplemental Servicing Order, the Legal Department's responsibility have increased to include (i) the review and analysis of individual claims as they arise in conjunction with internal business personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability of the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation counsel and its mortgage default counsel regarding the application of the Supplemental Servicing

Order (and will continue to do so as new legal actions arise); (iii) assisting Chapter 11 counsel with the preparation of various motions, responses to motions for relief from stay and other Court filings[3], as well as various bankruptcy related tasks; (iv) assisting Chapter 11 counsel and internal business personnel with Chapter 11 reporting requirements; and (v) assisting with matters pertaining to the pending sale of the Debtors' servicing and origination platform and legacy assets. These responsibilities are ongoing and will continue and possibly increase as these Chapter 11 cases progress.

15.     Given the comprehensive and detailed role the Legal Department plays in (i) the managing of the Debtors' litigation and contested foreclosure and bankruptcy matters; (ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy counsel and financial advisors with various motions and other filings in the Debtors' bankruptcy case, carrying out its ordinary course tasks while at the same time discharging its duties in the Chapter 11 Cases has been and will continue to be a monumental task. Permitting legal actions otherwise stayed by the Debtors' bankruptcy to proceed, therefore, would create a significant burden on the Debtors by adding an additional workload of up to (approximately) 690 cases, diverting the Legal Department's and other critical employees' attention from the critical tasks of running the Debtors' businesses, and significantly increasing the Debtors' out-of-pocket legal costs.

---

[3] By way of example, the Legal Department had a significant role in the drafting of the Supplemental Servicing Motion and the Interim Supplemental Servicing Order [Docket No. 181] and participated in the negotiation of the Supplemental Servicing Order. The Legal Department also, *inter alia*, assisted in the preparation of the Debtors' Schedules and Statement of Financial Affairs, Ordinary Course Professionals Motion, Non-GA Servicing Motion and all of the responses to the motions for relief from the automatic stay filed to date.

### E. Relief from the Automatic Stay Would Not Result in Complete Resolution of the Issues

16. Each of the Actions is still in the early stages of litigation. Litigating the Actions to completion could require the Debtors to prepare answers and potentially motions for dismissal and/or summary judgment, present oral arguments and, if summary judgment is not granted, conduct written discovery, depositions, prepare for and conduct a trial.

### F. No Specialized Tribunal has Been Established to Hear the Actions

17. As far as I am aware, no specialized tribunal has been created to hear any of the claims involved in the Actions.

### G. No Insurer has Assumed Responsibility for Any of the Actions

18. While the Debtors have customary errors and omissions insurance coverage ("E&O Insurance") that may potentially provide coverage for the claims the movants asserts against the Debtors, that E&O Insurance policy provides for a deductible that is significantly higher than the amount of damages sought by the movants. Accordingly, any amounts awarded to the movants as judgments against the Debtors will be born directly by the Debtors' estates.

19. In addition, in the vast majority of the cases, including the Actions, the Debtors pay their legal defense fees and costs out-of-pocket. As a result, requiring the Debtors to defend the Actions will result in increased out-of-pocket defense costs, which based upon the

ny-1053028                                                8

Debtors' records for the year prior to the Petition Date averaged approximately $5.7 million per month.[4]

### H. The Movants' Claims Against the Debtors in the Actions do not Primarily Involve Third Parties

20. GMAC Mortgage is the only named defendant in the Haroutunian Action. The Moss State Court Action names only Debtor ETS and the Moss Federal Court Action does not name any Debtor entity. Finally, although the Taggart Prepetition Action and the Taggart Postpetition Action involve claims against other defendants, many of the claims in these Actions involve allegations of a wrongful foreclosure by GMAC Mortgage.

### I. The Actions are Still in the Early Stages

21. Each of the Actions underlying the Motions is in their early stages of the respective litigation, and the courts overseeing the currently pending Actions have not even entered orders setting a discovery schedules or a trial dates. In particular:

- <u>Taggart Postpetition Action</u>: The Taggart Postpetition Action was filed less than three weeks ago.

- <u>Taggart Prepetition Action</u>: The Taggart Prepetition Action has not progressed very far. The Debtors have not filed an answer.

- <u>Moss State Court Action</u>: The Moss State Court Action is also in the relatively early stages. The Moss State Court Action was filed in on May 5, 2011. The California state court entered a default, but ETS did not learn of the default until March 3, 2012. As a result, ETS filed a Motion to Set Aside Default on March 6, 2012, which was pending as of the Petition Date.

---

[4] In a prior declaration, dated July 3, 2012 [Docket No. 682], based on the Debtors' records and in consultation with other members of the Legal Department, I stated that the Debtors' average out-of-pocket defense costs for the 12 months prior to the Petition Date is approximately $14.8 million per month. While this straight average is accurate, upon subsequent review of the Debtors' records, the out-of-pocket defense costs for the months of December 2011 and April 2012 appeared to be unusually high and may have skewed the straight 12-month average. Eliminating these outlier months from the calculation, the Debtors' monthly out-of-pocket defense costs averaged approximately $5.7 million for the 12 months prior to the Petition Date, reflecting a more conservative view of their average monthly legal costs.

- <u>Haroutunian Action</u>: As described above, the state court in the Haroutunian Action sustained several demurrers to Ms. Haroutunian's complaint and amended complaints. While some document discovery had occurred at the trial level, no depositions had been taken. As a result, the Haroutunian Action, as well, is in the early stages of litigation and Ms. Haroutunian's appeal has yet to be briefed.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 7, 2012

>                              */s/* Jennifer Scoliard
>                              Jennifer Scoliard
>                              In-House Bankruptcy Counsel for
>                              Residential Funding, LLC