MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Norman S. Rosenbaum

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' OBJECTION TO MOTION OF ONEWEST BANK FOR ORDER
PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING
RULE 2004 EXAMINATION OF HOMECOMINGS
FINANCIAL, LLC AND REQUIRING PRODUCTION OF DOCUMENTS**

ny-1050431

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .......................................................................................................................... 1

OBJECTION .................................................................................................................................. 3

       A.      The Motion Seeks Bankruptcy Rule 2004 Discovery for an Improper Purpose ............................................................................................................ 4

       B.      OneWest Bank has Not Carried its Burden of Showing Good Cause Exists to Grant the Motion ........................................................................................ 5

       C.      The Scope of OneWest Bank's Requests Would Impose an Unreasonable Burden on the Debtors' Estates ...................................................................... 7

CONCLUSION ............................................................................................................................. 9

Exhibits:

Exhibit 1:        Scoliard Declaration
Exhibit 2:        ProtoStar Transcript

ny-1050431

# TABLE OF AUTHORITIES

Page(s)

**CASES**

In re Bennett Funding Grp., Inc.,
    203 B.R. 24 (Bankr. N.D.N.Y. 1996) ..................................................................................3

In re Bd. of Dirs. Of Hopewell Int'l Indus., Ltd.,
    258 B.R. 580 (Bankr. S.D.N.Y. 2001) ................................................................................3

In re Coffee Cupboard,
    128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) .......................................................................4

In re Drexel Burnham Lambert Grp., Inc.,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ............................................................................3, 5

In re Duratech Indus.,
    241 B.R. 283 (E.D.N.Y. 1999) ...........................................................................................3

In re Eagle Picher,
    169 B.R. 130 (Bankr. S.D. Ohio 1994) .............................................................................4

In re Enron Corp.,
    281 B.R. 836 (Bankr. S.D.N.Y. 2002) ...............................................................................3

In re GHR Energy Corp.,
    35 B.R. 534 (Bankr. D. Mass. 1983) .................................................................................3

In re ProtoStar Ltd.,
    Case No. 09-12659 (Bankr. D. Del. Sept. 23, 2009) ......................................................5, 6

In re Texaco,
    79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) .........................................................................4

In re Thomases,
    32 B.R. 678 (Bankr. S.D.N.Y. 1983) .................................................................................3

In re Wilcher,
    56 B.R. 56 B.R. 428 ........................................................................................................4, 7

**STATUTES**

Bankruptcy Code
    Section 1107(a) ..................................................................................................................2
    Section 1108 ......................................................................................................................2

**OTHER AUTHORITIES**

Bankruptcy Rules

Rule 1015(b) ................................................................................................................2
Rule 2004 ..........................................................................................................1, 3, 4, 5,7
Rule 7026 ......................................................................................................................5
Rule 7028-7037............................................................................................................5
Rule 9014 ......................................................................................................................5

ny-1050431

Residential Capital, LLC and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors") hereby submit this opposition (the "Objection") to the *Motion Of OneWest Bank for Order Pursuant to Bankruptcy Rule 2004 Authorizing Rule 2004 Examination of Homecomings Financial, LLC and Requiring Production of Documents* [Docket No. 763] (the "Motion"). In support of hereof, the Debtors submit the Declaration of Jennifer Scoliard (the "Scoliard Declaration"), attached hereto as <u>Exhibit 1</u>, and respectfully represent:

## PRELIMINARY STATEMENT

1. The Motion seeks to utilize Bankruptcy Rule 2004 to circumvent the claims resolution process and allow for an investigation of one potential claim against the Debtors through burdensome document production and depositions. OneWestBank will have an opportunity to file a proof of claim (even in an unknown and unliquidated amount) and it will have a full and fair opportunity to take discovery should an objection to any such claim be interposed. Instead, at this very early stage in these Chapter 11 cases, OneWest Bank seeks to jump ahead of thousands of other creditors and force the Debtors to assist it with its internal investigation at the Debtors' expense.

2. Even if OneWest Bank could suggest an appropriate purpose for the requested examination – which it cannot – the Motion patently fails to provide any evidence of "good cause" for the relief requested. There is simply no good reason why the Debtors should, at the expense of their estates, be compelled to participate in inconvenient and time consuming discovery efforts to satisfy the parochial interests of one party.

## BACKGROUND

3. On the Petition Date, each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

1

ny-1050431

The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). No trustee has been appointed in these Chapter 11 cases. On July 3, 2012, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Honorable Arthur T. Gonzalez, former Chief Judge of the United States Bankruptcy Court for the Southern District of New York as examiner (the "Examiner").

4. On May 16, 2012, the U.S. Trustee appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

5. On July 12, 2012, OneWest Bank filed the Motion, seeking to compel Debtor Homecomings Financial, LLC ("Homecomings") to produce documents and conduct email searches in relation to a mortgage loan (the "Loan") secured by property located at 8234 E. Desert Cove Ave., Scottsdale, AZ 85260 (the "Property"). In particular, OneWest Bank seeks the following information about the Loan to "determine the amount of its claim against Homecomings: (i) "[a]ll documents relating to the Loan," (ii) "[a]ll communications relating to the Loan," (iii) "[a]ll documents evidencing, referencing, or relating to any payments received by [the Debtors]", (iv) "[a]ll documents evidencing or relating to the payment history of the Loan," (v) "[a]ll periodic statements . . . relating to the Loan," (vi) "[a]ll documents and communications relating to any offer to sell . . . the Loan" and (vii) "[a]ll documents relating to policies and/or procedures . . . regarding release of liens upon loan payoff." In addition, the Motion requests that Homecomings be compelled to appear for oral examination.

6. The Loan was originated in March of 2005 and the Debtors have not serviced the loan since April 2011. Scoliard Declaration ¶ 5.

2

ny-1050431

**OBJECTION**

7. Bankruptcy Rule 2004 permits discovery "relate[d] only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004. While the scope of discovery under Bankruptcy Rule 2004 is broad, "the availability of [Bankruptcy] Rule 2004 as a discovery tool is not unlimited." In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (internal citations omitted); In re Duratech Indus., 241 B.R. 283, 289 (E.D.N.Y. 1999) ("There are . . . limits to the scope of Rule 2004 examinations"). Indeed, at least one court in this district has recognized that "[t]he object of the examination of the bankrupt and other witnesses is to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved." In re Drexel Burnham Lambert Grp., Inc., 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991); accord In re Bennett Funding Grp., Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("The purpose of such a broad discovery tool is to assist the trustee in revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed.")

8. A court considering a Rule 2004 motion must, in the first instance, determine whether the proposed discovery is for a proper purpose. In re Enron, 281 B.R. at 842; In re GHR Energy Corp., 35 B.R. 534, 538 (Bankr. D. Mass. 1983). Even if the moving party identifies a proper purpose, the court may exercise its discretion to decide whether or not to grant discovery. In re Enron, 281 B.R. at 840; In re Bd. of Dirs. Of Hopewell Int'l Indus., Ltd., 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) ("Rule 2004 provides that the Court 'may' order disclosure thereunder, giving the Court significant discretion."); In re Thomases, 32 B.R. 678,

3

ny-1050431

679 (Bankr. S.D.N.Y. 1983) ("It is within the discretion of the court to decide in each particular case what constitutes sufficient cause and whether to require examination of a party.").

9. Assuming a movant can identify a proper purpose for its inquiry, courts apply a two-pronged test to determine whether to grant Bankruptcy Rule 2004 discovery. First, the moving party must show good cause for the requested discovery. In re Eagle Picher, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994); In re Wilcher, 56 B.R. 56 B.R. 428, 434-35 (Bankr. N.D. Ill. 1985) ("[T]he examiner bears the burden of proving that good cause exists for taking the requested discovery."). "Good cause" requires the movant to "show some reasonable basis [for] examin[ing] the material sought to be discovered." Id. Second, presuming the moving party successfully shows good cause for its requested discovery, the court weighs the relevance of the discovery against the burden it will impose upon the producing party. In re Wilcher, 56 B.R. at 434. As described by the court in In re Coffee Cupboard, "[Bankruptcy] Rule 2004 requires that we balance the compelling interests of the parties, weighing the relevance of and necessity of the information sought by examination." 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); see also In re Texaco, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("[T]he examination should not be so broad as to be more disruptive and costly to the [producing party] than beneficial to the [requesting party].").

10. Only after the moving party has demonstrated good cause for discovery and shown that the discovery's relevance will exceed its burden upon the producing party, will a court order Bankruptcy Rule 2004 discovery.

A. **The Motion Seeks Bankruptcy Rule 2004 Discovery for an Improper Purpose**

11. Given the existence of several thousand claimants and potential claimants and the inherent complexities of these Chapter 11 cases, Bankruptcy Rule 2004 should not, in these circumstances, be used as a discovery tool to circumvent the claims resolution process. As

4

ny-1050431

indicated by the <u>Drexel</u> court, Bankruptcy Rule 2004 is intended to permit the Debtors and other estate fiduciaries and court-appointed officers, as needed, to determine the extent of the estates' assets and recover those assets for the benefit of creditors.  <u>Drexel</u>, 123 B.R. at 708.

12. In this case, OneWest Bank seeks discovery regarding potential claims, which even if valid, would amount to one claim among several thousand.  <u>See</u> generally, <u>e.g.</u>, *Schedules of Assets and Liabilities for GMAC Mortgage, LLC (Case No. 12-12032 (MG))* [Docket No. 550].  Such requests by creditors or potential creditors should be denied.  Instead, should OneWest Bank choose to file a proof of claim in the Debtors' bankruptcy cases, the Debtors will be given an opportunity to object and OneWest Bank would, at that point, be entitled to seek discovery in the context of the resulting contested matter.  <u>See</u> Bankruptcy Rule 9014 (making Bankruptcy Rules 7026 and 7028-7037 applicable in contested matters).  OneWest Bank's Motion was interposed for the improper purpose of investigating a potential unsecured claim against the Debtors less than three months into their Chapter 11 cases.

**B.    OneWest Bank has Not Carried its Burden of Showing Good Cause Exists to Grant the Motion**

13. Even if OneWest Bank was able to provide a proper purpose for its Bankruptcy Rule 2004 request, it has not carried its burden of showing that good cause exists to grant the Motion, especially this early in the case.  Permitting unsecured creditors (or entities that believe they could potentially be unsecured creditors) to compel discovery at the onset of the bankruptcy case would eviscerate the "breathing spell" that the filing of a bankruptcy case is intended to provide, and potentially bury the Debtors in discovery requests at an enormous cost.

14. In an analogous case, <u>In re ProtoStar Ltd.</u>, the debtors' largest unsecured creditor sought a Bankruptcy Rule 2004 examination, in part, to determine the extent of its claims against the debtors.  <u>See</u> Transcript of September 14, 2009 Telephonic Hearing at 4, <u>In re</u>

ProtoStar Ltd., Case No. 09-12659 (Bankr. D. Del. Sept. 23, 2009), ECF No. 278.[1] The court denied the creditor's request to investigate direct claims, permitting discovery related only to certain derivative claims against the debtor-in-possession ("DIP") lenders that would be released under the court's DIP order and certain claims that would affect the sale of the debtors' assets. See id. at 18-19. Otherwise, the court explained, the discovery requests were too broad and "not necessary at [that] stage." Id. at 19. Instead, the court indicated that "the debtor ha[d] to concentrate on the sale process." Id.

15. As in Protostar, the Debtors are focused on working toward sales of their assets, consummation of complex settlements and confirming a plan. Granting the Motion would open the Debtors up to requests for loan files, related documents requests and depositions from literally any number of the hundreds of thousands of borrowers whose loans the Debtors own or service. For example, the Federal Housing Finance Agency motion seeking production of anywhere from 43,000 to 105,000 loan files provides a preview of the sheer size of requests that could be made by other securitization trustees, mortgage insurers, and investors. See *Motion of the Federal Housing Finance Agency Pursuant to July 11, 2012 Order of the Honorable Denise L. Cote Seeking Limited Discovery from the Debtors and, if Necessary to that Purpose, Relief from the Automatic Stay* [Docket No. 810].

16. At this stage, the Debtors' employees are required to respond to significant requests for information and discovery from the Creditors' Committee and Examiner, which must be given top priority.. See Scoliard Declaration ¶ 6. While OneWest Bank's is only a single request, it is quite broad, involving requests for emails, loan origination, servicing, and default information related to the Loan extending back nearly six (6) years as well as a

---

[1] A copy of the hearing transcript is included in the appendix, attached hereto as Exhibit 2.

deposition. It is easy to see how truly burdensome such requests could become given the vast scope of the Debtors' creditor constituents. The Debtors' employees and retained professionals should not now be required to respond to distracting Bankruptcy Rule 2004 requests, especially when such requests seek to investigate claims that are more properly dealt with through the claims resolution process.

        C.        **The Scope of OneWest Bank's Requests Would Impose an Unreasonable Burden on the Debtors' Estates**

        17.        As described above, in determining whether to grant Bankruptcy Rule 2004 motions, courts must weigh the relevance of the discovery requested by the movant against the burden it will impose upon the producing party. In re Wilcher, 56 B.R. at 434. The Motion is devoid of any evidence permitting the Court to make this assessment. However, as described above, the burden imposed on the Debtors is clear from the face of the request—seven separate requests related to a loan made in 2005, to be followed by an oral exam. It is by no means clear in the Motion whether the oral exam would be limited to a single deponent.

        18.        As set forth in the Scoliard Declaration, the relief requested in the Motion would require the Debtors' employees to spend several days or weeks compiling and reviewing documents. See Scoliard Declaration ¶ 8. Production of the emails requested by OneWest Bank, for example, requires much more than simply a computer search. Instead, the Debtors' must, among other things, identify all "custodians" that may have had communications regarding the subject matter requested in the Motion, then restore back-up tapes for each custodian for the specified data range – here six (6) years – and then review the emails for privilege, relevancy, and proprietary content. Scoliard Declaration ¶ 8. Moreover, OneWest Bank's deposition request, if granted, would require one or more Homecomings employees, along with in-house attorneys from the Debtors' legal department and outside counsel, to spend anywhere from a full

7

ny-1050431

day and potentially longer, preparing for deposition. Scoliard Declaration ¶ 9. Likewise, it is possible that the Debtors' in-house legal staff would be required to attend the deposition(s) along with the Homecomings employee(s) and outside counsel. Scoliard Declaration ¶ 9. Diverting Debtor resources to permit OneWest Bank to attempt to determine if it has an unsecured claim against the Debtors' estates is simply not warranted, especially at this juncture.

19. The Debtors should also not be required to produce Homecomings' policies and procedures related to loan payoffs and lien releases as this is proprietary and confidential information. First, because Homecomings ceased servicing loans in 2009, it is unclear whether the Debtors even have an accessible copy of the relevant policies and proceeds. Scoliard Declaration ¶ 10. However, even if the Debtors have copies of the foregoing, the Debtors consider their policies and procedures as confidential and/or proprietary. Scoliard Declaration ¶ 10. While the Debtors' policies and procedures describe the appropriate process for employees to complete specific servicing related tasks, they also contain sensitive commercial information such as non-public investor guidelines of non-Governmental Association investors as to certain servicing activities, and/or proprietary information related to the waiving of fees, write-offs and other adjustments to borrower's accounts as well as other business decisions made by the Debtors. Scoliard Declaration ¶ 10. As a result, the Debtors are particularly sensitive about producing these types of documents, particularly in the absence of litigation and they should not be required to disclose their policies and procedures to every entity that thinks it may have a claim against the Debtors' estates. See Scoliard Declaration ¶ 10.

20. For each of these reasons as well, the Motion should be denied.

ny-1050431

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an order denying the Motion and grant such other relief as the Court deems proper.

New York, New York  /s/ Norman S. Rosenbaum
Dated: August 7, 2012  Larren M. Nashelsky
Gary S. Lee
Norman S. Rosenbaum
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors and Debtors in Possession*

9

ny-1050431