# **Exhibit 1**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Norman Rosenbaum

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF JENNIFER SCOLIARD,
IN-HOUSE BANKRUPTCY COUNSEL AT RESIDENTIAL
CAPITAL, LLC, IN SUPPORT OF DEBTORS' OBJECTION TO MOTION OF
ONEWEST BANK FOR ORDER PURSUANT TO BANKRUPTCY RULE 2004
AUTHORIZING RULE 2004 EXAMINATION OF HOMECOMINGS FINANCIAL, LLC
AND REQUIRING PRODUCTION OF DOCUMENTS**

I, Jennifer Scoliard, declare as follows:

1.     I serve as In-House Bankruptcy Counsel in the Legal Department at Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors"). I have held this position since September 2010. Prior to that date, I served in various legal roles supporting GMAC Mortgage, LLC from January 2008 to September 2010. I joined ResCap in January 2008.

ny-1052860

2. In my role as In-House Bankruptcy Counsel at ResCap, I am responsible for the management of all non-routine bankruptcy litigation nationwide, including contested bankruptcy matters. However, as a result ResCap's Chapter 11 filing, my role has significantly expanded to include assisting the Debtors and their professional advisors ("Bankruptcy Counsel") in connection with the administration of the Chapter 11 cases, in addition to my litigation work. Specifically, my expanded duties and responsibilities as to the Debtors' Chapter 11 cases include, but are not limited to: (i) frequently communicating with Bankruptcy Counsel, usually daily, on various mortgage litigation and other matters; (ii) assisting Bankruptcy Counsel in the analysis of and drafting of responses to motions for relief from stay, objections to various filings, and motions critical to the functions of the Debtors' business; (iii) working with Bankruptcy Counsel, other in-house attorneys and business personnel on bankruptcy issues impacting the Debtors' business operations; and (iv) providing guidance to the Legal Department regarding orders entered in this case, filings by other parties and the Chapter 11 process.

3. I am authorized to submit this declaration (the "Declaration") in further support of the *Debtors' Objection to Motion Of OneWest Bank for Order Pursuant to Bankruptcy Rule 2004 Authorizing Rule 2004 Examination of Homecomings Financial, LLC and Requiring Production of Documents* (the "Objection").[1]

4. In my capacity as In-House Bankruptcy Counsel, I am generally familiar with the Debtors' litigation matters and their practices related to discovery requests. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' litigation case files, books and records as well as other

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

ny-1052860                                    2

relevant documents; my discussions with other members of the Legal Department; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' litigation matters, financial condition and history. In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

      5.      The Loan was originated by Debtor, Homecomings Financial Network, Inc. n/k/a Homecomings Financial, LLC ("Homecomings") in March of 2005. Thereafter, Homecomings (and later Debtor GMAC Mortgage, LLC) serviced the Loan until it was service released in April 2011.

      6.      If compelled to comply with OneWest Bank's discovery request, the Debtors will be required to expend several hours, days or even weeks of employee time and the Legal Department's time in retrieving, compiling and reviewing the documents requested, as well as preparing one or more witnesses for deposition. Given the significant discovery requests from the Creditors' Committee and the Examiner and the priority that must be afforded to these requests, requiring the Debtors to engage in time consuming discovery for the benefit of a single creditor would place an additional undue burden on the Debtors and detract the Debtors' employees from addressing the Creditors' Committee's and Examiner's requests.

      7.      For example, document requests 2 and 6 of the Motion seek all communications relating to the loan and "any offer to sell, sale and assignment, and/or any transfer of the Loan." The term "communication" in the Motion is defined to include emails. As

ny-1052860      3

the Loan was originated by Debtor Homecomings in March 2005, requests 2 and 6 would require the Debtors to engage in a time-consuming and burdensome electronic search of six (6) years worth of emails.

8.  A search for emails is not simply running a query on a database.[2] Emails are "custodian driven," which means that before the Debtors can even begin searching for any emails, the Debtors would have to go through the process of identifying all the individuals who would or may have had communications regarding the specified subject matter. Once the individual "custodians" are identified, the Debtors would then be required to restore the back-up tapes for each employee identified for the date range specified. Given that the date range likely covers six (6) years, this step could involve the restoration and review of potentially hundreds of back-up tapes depending on the number of custodians identified. Once the emails are located, the Debtors' Legal Department and their outside litigation counsel (likely at significant cost) would have to review each email for relevancy, privilege, proprietary nature, etc. Thus, to undertake the production of emails alone could easily take several weeks or longer.

9.  In addition, the Motion requests the deposition of a witness who can testify as to the information regarding the seven document requests. This could require more than one witness.[3] In my experience, in addition to the employee time required to attend a deposition, preparing for a deposition regarding even a relatively discrete issue or set of issues can often take anywhere from a full day or longer, depending on the witness and the subject matter for which the witness or witnesses will testify. Further, one of the in-house attorneys in

---

[2] In fact, because of the labor intensive nature of email discovery, the Debtors typically provide email discovery in class action and other significant litigation, but will not typically agree to email discovery in single plaintiff or bankruptcy matters.

[3] If more than one witness is required, preparation for testimony could become more burdensome as the witnesses could be based in different states where the Debtors have an office.

ny-1052860                                   4

the Debtors' Legal Department would have to participate in the preparation and possibly attend the deposition(s), and any deposition(s) would require the Debtors to utilize outside counsel to prepare for and defend the contemplated deposition(s).

10. In addition to the cost and employee time that would be required if the Motion was granted, OneWest Bank's request for production of the Debtors' policies and procedures related to loan payoff and releases of liens raises additional concerns. Homecomings ceased servicing loans in July of 2009. As a result, it is unclear whether the Debtors still have accessible copies of Homecomings' policies and procedures. Moreover, even if the Debtors still have accessible copies, the Debtors view their policies and procedures as confidential and/or proprietary. While the Debtors' policies and procedures describe the appropriate process for employees to complete specific servicing related tasks, the policies and procedures also contain sensitive information, including: (i) investor guidelines set forth in non-public contractual agreements with non-Governmental Association investors for such things as default servicing and loss mitigation, which may not be accorded to other servicers of the investors; and/or (ii) proprietary information related to the waiving of fees, write-offs and other adjustments to borrower's accounts as well as other business decisions made by the Debtors. As a result, the Debtors are particularly sensitive about producing these types of documents.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  August 7, 2012

*/s/* Jennifer Scoliard
Jennifer Scoliard
In-House Bankruptcy Counsel for
Residential Funding, LLC

ny-1052860                              5