## Exhibit 2

```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE

IN RE:                        . Case No. 09-12659 (MFW)
                              .
                              .
PROTOSTAR LTD., et al.,       .
                              . 824 North Market Street
                              . Wilmington, Delaware  19801
            Debtors.  .
                              . September 14, 2009
. . . . . . . . . . . . . . . . 10:30 a.m.

              TRANSCRIPT OF TELEPHONIC HEARING
                BEFORE HONORABLE MARY WALRATH
              UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:              Milbank, Tweed, Hadley &
                                McCloy, LLP
                              By:  MATTHEW S. BARR, ESQ.
                                   ANDREW LeBLANC, ESQ.
                              1 Chase Manhattan Plaza
                              New York, NY  10005

                              Pachulski, Stang, Ziehl & Jones,
                                LLP
                              By:  JAMES E. O'NEILL, ESQ.
                              919 N. Market Street
                              17th Floor
                              Wilmington, DE  19899

For Philippine Long Distance  Morris, Nichols, Arsht & Tunnell
Telephone Company:            By: DANIEL B. BUTZ, ESQ.
                                  ERIC D. SCHWARTZ, ESQ.
                              1201 North Market Street
                              Wilmington, DE  19899

For Official Committee of     Lowenstein Sandler, PC
Unsecured Creditors:          By:  JASON DiBATTISTA, ESQ.
                              65 Livingston Avenue
                              Roseland, NJ 07068

Audio Operator:               Brandon McCarthy
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

2

**APPEARANCES (Contd')**

For Credit Suisse:          Weil, Gotshal & Manges LLP
                            By: LORI FIFE, ESQ.
                            767 Fifth Avenue
                            New York, NY  10153

                            Womble Carlyle Sandridge & Rice
                            By:  STEVEN KORTANEK, ESQ.
                            222 Delaware Avenue, Suite 1501
                            Wilmington, DE

For ProtoStar 1 Lenders:    Richards, Kibbe & Orbe
                            By:  MICHAEL FRIEDMAN, ESQ.
                                 KEITH SAMBUR, ESQ.
                            One World Financial Center
                            29th Floor
                            New York, NY

                            Morris James LLP
                            By: STEPHEN MILLER, ESQ.
                            500 Delaware Avenue
                            Wilmington, DE

For John McKenna:           Shearman & Sterling, LLP
                            By:  JAMES GARRITY, ESQ.
                            599 Lexington Avenue
                            New York, NY  10022

3

1              THE COURT:  All right.  The parties are on the phone?

2  Are counsel on the phone?

3              UNIDENTIFIED MALE ATTORNEYS:  Yes, Your Honor.

4              THE COURT:  All right, let's start with the moving

5  party, Philippine Long Distance Telephone Company.

6              MR. BUTZ:  Yes, Your Honor, good morning.  This is

7  Daniel Butz from Morris, Nichols, Arsht & Tunnell on behalf of

8  the Philippine Long Distance Telephone Company.

9              First, I wanted to thank Your Honor for scheduling

10  this on somewhat of an expedited basis.  The reason why PLDT,

11  Philippine Long Distance Telephone Company, filed this motion,

12  to investigate two areas of inquiry and the first is, the facts

13  and circumstances surrounding the negotiation and execution of

14  certain agreements between PLDT and the debtors, information

15  which only the debtors possess, because -- well, one of the

16  main reasons why this is the case, is because the point person

17  for PLDT, for Philippine Long Distance Telephone Company, on

18  the various agreements that give rise to PLDT's claims, his

19  name is Mark Gilroy.  A few months after this deal he left

20  Philippine Long Distance Telephone Company's employ and is now

21  working with the debtors, he's an employee of the debtors.

22              The other area that we wanted to look at were the

23  facts and circumstances surrounding the transfer of what we

24  define as the priority deposit.  It's 27 and a half million

25  dollars that PLDT transferred to the debtors, on or around

4

1  September 17th.  This priority deposit the 27 and a half

2  million dollars, as the debtors admit in their pleadings, is

3  the single largest unsecured claim in the case and makes up

4  approximately half, it appears, of the unsecured creditor pool.

5  So, we are by far, according to the debtors' own admission, the

6  single largest unsecured creditor in these cases.

7           The reason why PLDT is looking for this information

8  is for a number of different reasons.  We're not looking to

9  burden the debtors or otherwise prejudice them.  What we need

10 to discover or what we're trying to figure out, is whether the

11 priority deposit that was transferred to the debtors is, in

12 fact, property of the estate, whether PLDT possesses causes of

13 action or claims against third parties, including the officers

14 and directors, as well as the lenders; and thirdly, what causes

15 of action we might have against the debtors.

16          And, as the debtors set forth in their papers that

17 they filed early this morning, they do note that for an

18 unsecured claim, you can simply file your proof of claim and

19 then hash it out in the context of a claims objection.  I don't

20 think we deny that, but that's not what we're looking for here.

21          Our request, and to the extent it's expedited, our

22 expedited request, is only necessary because of the debtors'

23 scheduling in these cases.  The proposed sale is for October

24 22nd.  That sale might include releases to a purchaser, I don't

25 know if that sale is going to end up going to -- if the lenders

**J&J COURT TRANSCRIBERS, INC.**

5

1  are going to credit bid, and so we need to have the information

2  before then.

3         The debtors have informed us that they're looking to

4  confirm a plan in November, a plan will certainly have

5  releases.  And so we need to have the information before then.

6         The deadline by which to bring claims against the

7  debtors alleged secured lenders is only about four weeks away

8  from today.  We need to see this information before that

9  deadline arrives.  So, we're under, PLDT is under enormous

10  pressure to get this information and all we're looking for is

11  to get this information in a time that will enable us to

12  analyze it and then act on it before any of these deadlines

13  come up.

14         And one last thing I wanted to note in the debtors'

15  objection, they talk about how our discovery is over broad and

16  they say -- and they stated that they were willing to give us a

17  sources and uses of cash statement so that we could determine

18  what happened to this priority deposit, the 27 and a half

19  million dollars.

20         Now, while we appreciated that, however, the debtors

21  couldn't commit that if we needed additional detail, it would

22  give it to us, so we would get a reasonably detailed cash

23  statement after about a week or so, but then be in a position

24  where if we needed additional information, we would have no

25  recourse and we would be one week further down the line, one

**J&J COURT TRANSCRIBERS, INC.**

6

1  week further closer to all of these deadlines I've talked

2  about.  And for those reasons, Your Honor, we respectfully

3  request that you allow us, or authorize us, to have the debtors

4  answer these questions that we've put to them.

5          THE COURT:  All right.  Does the debtor wish to

6  respond?

7          MR. LeBLANC:  Yes, Your Honor, this is Andrew LeBlanc

8  from Milbank, Tweed, Hadley & McCloy. Your Honor, just as a

9  procedural housekeeping matter, we filed a pro hac vice motion

10 for me, I believe it was filed this morning.

11         THE COURT:  That's fine.

12         MR. LeBLANC:  Mr. O'Neill from Pachulski Stang is on

13 the line if you need confirmation of that.

14         THE COURT:  You can be heard, go ahead.

15         MR. LeBLANC:  Thank you, Your Honor.  Your Honor, I

16 will respond, I believe relatively briefly.  I think we've laid

17 this out in our papers.  The propriety of Rule 2004 is,

18 obviously, an area within the Court's discretion.  When we

19 received the request, when it first came as an informal

20 request, we contacted PLDT's counsel, Morris, Nichols, and

21 sought genuinely to try to cooperate with them to see if

22 there's a way to avoid the very call that we're having here

23 today in an effort to try to avoid having to burden the Court

24 with this.  And we propose what we believe to be a reasonable

25 compromise for dealing with this issue.

**J&J COURT TRANSCRIBERS, INC.**

7

1         It was as was suggested by Mr. Butz, we couldn't --

2   we weren't going to commit that we would at any point respond

3   to their discovery request because we do think that they're

4   improper, but we tried to work something out and unfortunately,

5   we weren't able to do so.  So, our position as we sit here

6   today is that the discovery request as we've told them before,

7   are improper at this time.

8         We don't think there's any question that at some

9   point in time they would be entitled to get the discovery that

10  they're seeking.  Fundamentally, however, Your Honor, what they

11  have failed to do and they failed to do it when we asked them

12  and they failed to do it in their papers to the Court, to

13  explain how their claim could be anything other than an

14  unsecured claim against the debtors.  While they may want to

15  investigate claims they may have against third parties, those

16  third parties can't possibly include the lenders here.  They've

17  not articulated any grounds to have a claim by PLDT against the

18  lenders, the people who have a release that is -- or a claims

19  release that is upcoming.

20        So in the absence of that, Your Honor, we go back to

21  the basic proposition that they want to investigate the

22  propriety or the basis for their unsecured claims against the

23  debtor.  Well, that may be entirely proper at some point in

24  time, it's wholly inappropriate at this point in time.  Where

25  we sit in the midst of the very early stages of a case that is

8

1  proceeding, it is proceeding rapidly, but rapidly to a sale

2  process and the debtors' efforts should be focused on achieving

3  the best possible outcome in that sale process, not responding

4  to a discovery request that -- and that I'll talk about in a

5  moment, Your Honor, that are extraordinarily broad.

6        Although PLDT may be the largest unsecured creditor,

7  it can't possibly be the case that the largest unsecured

8  creditor in every case gets to jump in front of the line and

9  take whatever discovery they seek to take, to investigate their

10 unsecured claims because that would surely lead to claims from

11 the second largest unsecured creditor seeking to investigate

12 their claims.  There is a slippery slope here, Your Honor, that

13 in the absence of any articulated basis for their claims to be

14 anything other than unsecured claims, the slippery slope that

15 exists is one that could lead to all unsecured creditors

16 getting whatever discovery they would like to have at the very

17 early stages of the process, leading to crippling the debtor in

18 responding to discovery requests rather than dealing with

19 operating a business as a debtor-in-possession and in this

20 case, leading to a sale process and a Chapter 11 plan process.

21       With respect to claims against the lenders, Your

22 Honor, as I said, they've not articulated any basis for them to

23 have claims against the lenders.  I will note, Your Honor, that

24 the Creditors' Committee is actively investigating claims

25 during the claims investigation period.  They provided -- on

**J&J COURT TRANSCRIBERS, INC.**

9

 1 Friday, they provided a request to us, we are working with them

 2 to comply with that.  We've already provided them a substantial

 3 quantum of documents, as relates to their investigation of

 4 claims of the lenders.  And so, that investigation is ongoing,

 5 this investigation is wholly unrelated to that investigation.

 6         Now, with respect to the scope and the breadth of the

 7 request, Your Honor, you can write -- when one sits down to

 8 write requests you always say, well, they're narrowly tailored

 9 because they're very specific words, particular words, but the

10 reality is, these are anything other than narrowly tailored

11 requests.

12         The requests -- PLDT does not contend nor could they

13 contend, that the priority deposit that they paid to ProtoStar

14 had any limits on how it would be used.  So, it was general

15 corporate cash, could be used for any corporate operations, and

16 it was, in kind.  Over the course of -- since it was received

17 on September 16th of 2008, it was used in that way.

18         One of their requests, and actually several of their

19 requests, get to the question of, show us how the priority

20 deposit was used.  Responding to that request, Your Honor,

21 would require, if we really had to respond to the request as

22 those are framed, would require us literally to produce every

23 transaction entered into by the debtor, because this money was

24 not segregated for a particular purpose, it wasn't earmarked

25 for a particular purpose, it was just general corporate funds,

1  used with all other corporate funds.  And so short of giving

2  them literally every document that shows every transaction

3  entered into by the debtors, after September 16th, 2008, we

4  couldn't possibly respond to it.  It was for that reason we

5  offered to do additional work, work that we didn't otherwise

6  have to do, to create a document, to help them understand

7  exactly what they were asking.  That was rejected in favor of

8  filing the motion.

9        And so, responding to the scope of the request, it's

10  almost hard for us even to contemplate how we would do that

11  without turning over literally every document that's been

12  created by this debtor since September 16th, 2008, because

13  surely every one of them could be argued to relate to how the

14  priority deposit, the 27 and a half million dollars that was

15  paid by PLDT was used.  But at the end of the day, however that

16  money was used, it isn't going to be anything other than an

17  unsecured claim against these debtors.  A claim that PLDT could

18  make today, with the information available to it.

19        And so for those reasons, Your Honor, we think the

20  motion should be denied.  To the extent that Your Honor was

21  entertaining the motion, there are issues in particular with

22  the order, the proposed form of order that we would raise, but

23  I'll reserve on that, Your Honor, in the event that Your Honor

24  wanted to deal with the specifics of the order.  We're happy to

25  discuss that.  But I'm happy to answer any questions Your Honor

**J&J COURT TRANSCRIBERS, INC.**

1   has, but we urge the Court to deny this request and really not

2   deny it, but just defer it to a more appropriate time when the

3   parties know what they're actually fighting about for unsecured

4   claimants.

5            THE COURT:  All right, any reply?

6            MR. BUTZ:  Yes, Your Honor, thank you.  Once again,

7   this is Daniel Butz from Morris Nichols on behalf of PLDT.

8            Just a few brief comments.  First, PLDT has

9   articulated a basis for why -- in both its papers and in

10  discussions with debtors' counsel as to why it might not have

11  just an unsecured claim.  Because it was a priority deposit,

12  depending upon the facts and circumstances, we might be able to

13  maintain a constructive trust action when we reference that the

14  priority deposit might not have been property of the estate, so

15  we have articulated grounds.

16           Also, as far as the lenders are concerned, the

17  debtors asked for articulation as to what sorts of actions we

18  might have against the lenders.  Perhaps unjust enrichment,

19  perhaps, if the debtors inappropriately paid over the priority

20  deposit to the lenders.

21           Now, we don't know what causes of action we have

22  because we haven't been able to investigate them yet.  This is

23  what we're asking to do.

24           Finally, coming back to the breadth of our requests,

25  I understand what the debtors are saying, it's one of those

12

 1  sorts of discovery drafting issues, you will always draft your

 2  discovery broad, in order to encompass all of the documents.

 3  I don't -- if it came down to it, I do not think that we would

 4  demand every single document regarding a relevant issue, as

 5  long as we had sufficient documents to determine the answer to

 6  the question that we're asking.

 7          I mean -- and if the debtors want to lodge specific

 8  objections to the breadth of particular questions and we can

 9  work together to limit them, we are more than willing to do

10  that and we don't believe that that would be a ground to deny

11  what we're looking for.

12          And just to conclude, the only reason we're looking

13  for this information on such a short time line is because of

14  the debtors' insistence on trying to wrap this case up by

15  November.  These issues can't wait, when we have to investigate

16  things that might involve the sale, that might involve the

17  lenders, and so all of these things need to be determined by

18  October.  And so, that's why we need this information now.

19          We're more than willing to work with the debtors to

20  come up with a decent discovery plan but we can't -- and we

21  urge Your Honor to not push this off where PLDT's rights might

22  be harmed in the meantime because the deadline to initiate

23  actions against the lenders is passed.

24          Now, again, I don't know if we have anything, but we

25  deserve the right to look or whether or not a sale goes through

1  that might release parties, or a plan is confirmed that might

2  release parties.

3          We're simply asking to be able to conduct this

4  investigation before these things occur which could prejudice

5  PLDT's rights.  Thank you.

6          THE COURT:  All right.  Well, let me say this.  I

7  think that PLDT is entitled to some discovery.  To the extent

8  that the sale process is seeking a release of the lenders, or

9  excuse me -- to the extent that the deadline for filing claims

10 against the lenders contemplates only claims of the estate, I

11 don't think discovery with respect to claims of the lenders is

12 necessary, but as I understand it, the sale process

13 contemplates, perhaps, broader claims being released.  Is that

14 correct?  I'll ask the debtor that question.

15         MR. LeBLANC:  Your Honor, my partner, Matt Barr, is

16 on who may be able to give a more fulsome answer, but I don't

17 believe it's contemplated -- I don't know what the contours of

18 any potential reliefs are at this point, in a future sale.  The

19 process is ongoing right now.  But I don't know if Mr. Barr is

20 on a live line.

21         MR. BARR:  I believe I am, if you can hear me.

22         MR. LeBLANC:  Yes, yes.

23         MR. BARR:  Your Honor, it's Matt Barr from Milbank on

24 behalf of ProtoStar.  I'm, frankly, not sure I fully understand

25 what PLDT was referring to.  If they're referring to a

1  potential buyer asking for releases in connection with a sale

2  process and I wouldn't expect that and, obviously, if that was

3  the case that would be in front of the Court and the propriety

4  or something like that would be in front of this Court, but we

5  haven't heard anything from any of the potential buyers for

6  anything like that.

7        With respect to the lenders, it's the same time

8  frame that's under the DIP financing order that PLDT's counsel

9  has already referred to.  So I, frankly, am not sure I

10 understand the link between the sale and the lenders, Your

11 Honor.

12        THE COURT:  Well, then let me -- I mean with respect

13 to the DIP, is it contemplated -- you've heard PLDT articulate

14 their potential claims against the lenders, unjust enrichment,

15 or to the extent they were a transferee of the priority

16 deposit, would either of those claims be released by the terms

17 of the DIP?

18        MR. BARR:  Your Honor, I believe that the DIP

19 financing makes it clear that third party claims against the

20 lenders are preserved and that was actually PLDT's objection in

21 the context of the DIP financing.  I believe that what would be

22 waived and what we stipulated to, would be claims by the

23 estate.

24        So, unless PLDT has a different view or the lenders

25 do, and I believe some of them may be on the phone, I do not

1  believe that anything in the DIP order would release the

2  lenders from third party claims.

3        THE COURT:  Then let me ask PLDT why it needs

4  information with respect to the lenders' claims at this time.

5        MR. BUTZ:  Your Honor, with all due respect to

6  counsel for the debtors, I don't think -- the debtors didn't

7  really answer Your Honor's question when you asked if these

8  claims that we might have against the lenders would be released

9  by the lapse of the investigation period.  Judge Council talked

10 about, well, third party claims are preserved.  Well, therein

11 lies the question.  Are these some sort of derivative claim or

12 not, are these direct or indirect?  We don't know yet, Your

13 Honor.

14        I mean, if the debtors and the lenders are willing to

15 say, any claims that PLDT might have against the lenders are

16 preserved because they're not -- because PLDT isn't the estate,

17 then I think which would be fine but because we don't know the

18 answer to that question, and PLDT doesn't want to be in a

19 position where it might be barred down the line, because it

20 waited and then the lenders, of course, will jump up and down

21 saying we sat on our rights.  We don't want that to happen.

22 So, if we have an agreement, then we'd be fine.

23        THE COURT:  Are counsel for the lenders on the phone?

24        MR. FRIEDMAN:  Yes, Your Honor, Michael Friedman,

25 Richards, Kibbe & Orbe on behalf of the PS 1 Lenders.

1          Your Honor, to the extent there are any claims that

2     relate to -- that are derivative of the debtors' claims, those

3     claims are being investigated presently by the committee of

4     which PLDT is the chair of the committee.  We've already been

5     served with an informal document request, which we are in the

6     process of responding to and as debtors' counsel mentioned, all

7     third party claims have been preserved and are not part -- are

8     not in any way disturbed by the order.

9          So, other than tweeting a duplication of effort, of

10    responding to both the committee request and separate PLDT

11    requests, we don't see these requests as being appropriate at

12    this time.

13         THE COURT:  All right.  Well, I agree with the

14    lenders, then, to the extent they are derivative claims, the

15    committee in the first instance is pursuing them and I don't

16    think there should be duplicative requests.

17         MR. BUTZ:  Your Honor, with all due respect, this is,

18    once again, it's Daniel Butz from Morris Nichols.  We don't

19    think these requests are duplicative because at this time, the

20    lenders are investigating the liens, they're not investigating

21    other causes of action, to our knowledge.  Oh, and one other

22    thing is, PLDT is not the chairman of the committee.

23         THE COURT:  Well, the committee, you're saying, is

24    investigating the liens, only.

25         MR. DiBATTISTA:  Your Honor, this is Jason DiBattista

1  from Lowenstein Sandler, representing the committee.  That's

2  correct.   The committee has currently served document requests

3  on the lenders as well as the debtors, informal document

4  requests.  We're hopeful to be working those issues out in

5  terms of production of documents as quickly as possible.

6  Obviously, if not, then we may be seeking similar relief to Mr.

7  Butz's client in a quick time frame because I know Mr. LeBlanc

8  has said that we're in the early stages of the case, but we're

9  a little concerned given that it really isn't the early stages

10 of the case.  As Mr. Butz has noted, the debtors have

11 repeatedly let everyone know that they're going to seek

12 confirmation in November.  You know, that's a month and a half

13 away, so to say that this is at the early stages of the case

14 when we have a bar date coming up very soon as well, it's just

15 not accurate, this is the heart of the case right now and I

16 think that is why the committee definitely supports Mr. Butz's

17 client's requests and as I said, may need to make a similar

18 application if we are unable to get the documents that we need

19 on a very, very expedited basis.

20       THE COURT:  Well, I'm not going to allow both to

21 pursue the same claims or discovery regarding the same claims

22 and I just don't see any basis for PLDT to be -- or any

23 deadline for PLDT to be pursuing any direct claims it has

24 against the lenders at this time.

25       MR. BUTZ:  Your Honor, this is Daniel Butz, from

**J&J COURT TRANSCRIBERS, INC.**

1 Morris, Nichols, may I speak just a little bit more.

2          To the extent that any of the discovery that the

3 committee and PLDT are looking for is duplicative, well, I

4 mean, we can work together, obviously, to make sure it's not

5 duplicative.  I don't believe that our requests are at all

6 duplicative of what the committee has asked for.  Number one.

7          And number two, at no point in either the lenders'

8 colloquy or what the debtors have said, have they said that the

9 claims that we're investigating aren't going to be barred by

10 the deadline, the investigation period deadline.  We don't know

11 that yet and we won't be able to know that until we look at

12 this information and get this information from the debtors.

13          And so, if they're willing to stipulate right now

14 that that period won't lapse, or that lapse of the

15 investigation period won't affect PLDT's rights, all of PLDT's

16 rights, then we're in fine, but --

17          THE COURT:  I understand, Mr. Butz, but the

18 committee, in the first instance, has the fiduciary duty to

19 investigate all claims against the lenders and I will not have

20 another creditor doing the same.  Whether there are duplicative

21 discovery requests out there is irrelevant.  The issue is that

22 the committee is investigating those claims or at least has the

23 duty to investigate those claims.  So, I'm not inclined to

24 grant that at this stage.

25          With respect to claims you may have against directors

1 and officers, I don't see any reason at this point to grant

2 that either and I will certainly, however, listen to your

3 argument if at any stage in this proceeding there is any

4 request that there be releases of anybody.  I'll deal with it

5 then and whether that slows down the debtors' case or not,

6 that's fine.  It'll be -- the debtor will be aware of the

7 consequences of any request to give a release to anybody.

8        But I just think that at this stage, other than the

9 summary of the tracing of the cash, if you will, I'll allow

10 that.  I will also allow you to pursue any discovery related to

11 your constructive trust theory, because that is an issue that

12 is relevant to any sale.  But other than those two areas, I

13 think that the discovery is too broad, and not necessary at

14 this stage.  I think the debtor has to concentrate on the sale

15 process.

16        MR. BUTZ:  Your Honor, this is Daniel Butz once again

17 for PLDT.  One -- I understand Your Honor's ruling, number one

18 and number two, I was wondering, as far as the sources and uses

19 of cash, to show us where the deposit went, one of our concerns

20 initially was that the debtors wouldn't agree to provide any

21 sort of backup information to the extent that we thought it was

22 necessary and that's one of the reasons why we brought this

23 motion, because we think that the backup information may very

24 well be necessary.  I just want --

25        THE COURT:  Well, we don't know that, we don't know

1  that at this stage.  If you need it you can request it.

2          MR. BUTZ:  Okay.  Thank you, Your Honor.

3          MR. LeBLANC:  Your Honor, this Andrew LeBlanc from

4  Milbank Tweed.  We're happy to work with Mr. Butz and his

5  clients to provide them whatever information they believe is

6  necessary, as long as we can have a meeting of the minds and

7  have it not distract as substantially as the request would from

8  our proceeding in the case.

9          THE COURT:  Well, you know the danger of not

10 cooperating, you're the one that wants the process to go

11 quickly, so, I think you have an incentive to get this done.

12         MR. LeBLANC:  We understand, Your Honor.

13         THE COURT:  All right.  I guess I'll ask the parties

14 to work together on a form of order.

15         MR. BUTZ:  Thank you, Your Honor.

16         MR. LeBLANC:  We will, Your Honor, thank you.

17         THE COURT:  Thank you, we'll stand adjourned.

18

19                        *  *  *  *  *

20

21

22

23

24

25

# C E R T I F I C A T I O N

I, ELAINE HOWELL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

/s/  Elaine Howell          Date:  September 21, 2009

ELAINE HOWELL

J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**