# EXHIBIT 1

# Delehey Declaration

i

ny-1052186

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Norman Rosenbaum

*Proposed Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF LAUREN GRAHAM DELEHEY,
IN-HOUSE LITIGATION COUNSEL AT RESIDENTIAL CAPITAL, LLC,
IN SUPPORT OF DEBTORS' OBJECTION TO MOTION OF CHRISTINA ULBRICH
FOR RELIEF FROM THE AUTOMATIC STAY AS TO GMAC MORTGAGE, LLC**

I, Lauren Graham Delehey, declare as follows:

1.    I serve as In-House Litigation Counsel in the Legal Department at Residential Capital, LLC ("***ResCap***"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "***Debtors***"). I have held this position since I joined ResCap on August 1, 2011. In my role as In-House Litigation Counsel at ResCap, I am responsible for the management of residential mortgage-related litigation, including class actions, mass actions and multi-district litigation. I am authorized to submit this declaration (the

ny-1052143

"***Declaration***") in support of the *Debtors' Objection To Motion of Christina Ulbrich for Relief from the Automatic Stay as to GMAC Mortgage, LLC*, dated August 7, 2012 (the "***Objection***").[1]

2.     In my capacity as In-House Litigation Counsel, I am generally familiar with the Debtors' litigation matters, including the Ulbrich Action and the Other Insurance Putative Class Actions. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' litigation case files, books and records as well as other relevant documents; my discussions with other members of the Legal Department; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' litigation matters, financial condition and history. In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

3.     As of August 3, 2012, the Debtors by way of direct claims and counter-claims are defendants, respondents, or are contractually obligated to defend third parties in 1,910 pending litigation and contested foreclosure and bankruptcy matters filed in jurisdictions all around the country. Approximately fifty-eight percent (58%) of these matters concern either (ii) defenses asserted in foreclosure, eviction or borrower bankruptcy proceedings or (ii) title disputes, both of which are exempted from the automatic stay by the Supplemental Servicing

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

ny-1052143                                      2

Order; fourteen percent (14%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not subject to the stay, notwithstanding the Supplemental Servicing Order; twenty-four (24%) are stayed and four percent (4%) are still under review for their status. Thus, approximately seventy-two percent (72%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not stayed and continue to proceed in various jurisdictions across the country. This is in addition to the tens of thousands[2] of foreclosure actions and borrower bankruptcies the Debtors are parties to in actions pending throughout the fifty states primarily managed by the Debtors' mortgage default group. Notwithstanding the application of the Supplemental Servicing Order, there are still a substantial number of cases – approximately 24% of 1,910 (or 458) cases – that are stayed by the automatic stay, including the Ulbrich Action and the Other Insurance Putative Class Actions.

      B.    **Lender-Placed Insurance Putative Class Actions**

      4.    In addition to the Ulbrich Action, there are three other putative class actions pending in different forums that raise substantially similar claims against GMAC Mortgage regarding lender-placed insurance, including: (i) two in the United States District court for the Eastern District of Pennsylvania, including (a) <u>Cronk vs GMAC Mortgage, LLC</u>, filed on August 12, 2011; and (b) <u>Throm v. GMAC Mortgage, LLC</u>, filed on October 31, 2011, and (ii) one in the United States District court for the Southern District of New York, <u>Rothstein v. GMAC Mortgage, LLC et al.</u>, filed on April 30, 2012. While each is in various stages of litigation, each of the Ulbrich Action and the Other Insurance Putative Class Actions seek to litigate claims for lender-placed insurance on behalf of broadly defined classes.

---

[2] As of the end of July, 2012, the Debtors currently have 62,618 accounts in foreclosure and 50,258 in bankruptcy.

ny-1052143          3

5.  In addition to the Ulbrich Action and the Other Insurance Putative Class Actions, the Debtors are defendants in approximately forty (40) other putative or certified class actions pending in various forums across the United States.

**C.  Lifting the Automatic Stay Will Interfere With the Chapter 11 Cases**

6.  The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have contractual obligations to defend.  The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) preparation of deposition and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial.

7.  As a result of the Debtors' bankruptcy filings and the entry of the Supplemental Servicing Order, the Legal Department's responsibilities have increased to include (i) the review and analysis of individual claims as they arise in conjunction with internal business personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability of the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation counsel and its mortgage default counsel regarding the application of the Supplemental Servicing Order (and will continue to do so as new legal actions arise); (iii) assisting Chapter 11 counsel with the preparation of various motions, responses to motions for relief from stay and other

Court filings[3], as well as various bankruptcy related tasks; (iv) assisting Chapter 11 counsel and internal business personnel with Chapter 11 reporting requirements; and (v) assisting with matters pertaining into the pending sale of the Debtors' servicing and origination platform and legacy assets. These responsibilities are ongoing and will continue and possibly increase as these Chapter 11 cases progress.

8.  Given the comprehensive and detailed role the Legal Department plays in (i) the managing of the Debtors' existing litigation and contested foreclosure and bankruptcy matters; (ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy counsel and financial advisors with various motions and other filings in the Debtors' bankruptcy case, carrying out its ordinary course tasks while at the same time discharging its duties in the Chapter 11 Cases has been and will continue to be a monumental task. Permitting class actions otherwise stayed by the Debtors' bankruptcy to proceed, therefore, would create a significant burden on the Debtors, diverting the Legal Department's and other critical employees' attention from the critical tasks of running the Debtors' businesses, and significantly increasing the Debtors' out-of-pocket costs for legal fees and expenses.

9.  Due to its size and complexity, litigation of the Ulbrich Action threatens to interfere with the administration of the Chapter 11 Cases on a much higher magnitude than any single general liability claim.

---

[3] By way of example, the Legal Department had a significant role in the drafting of the motion to approve the Supplemental Servicing Order and the interim Supplemental Servicing Order [Docket No. 181] and participated in the negotiation of the final Supplemental Servicing Order. The Legal Department also, *inter alia*, assisted in the preparation of the Debtors' schedules and statement of financial affairs, their motion to approve ordinary course professionals, their motion regarding servicing of non-governmental association mortgages, and all of the responses to the motions for relief from the automatic stay filed to date.

ny-1052143                    5

**D.  Relief from the Automatic Stay Would Not Result in a Partial or Complete Resolution of the Issues**

10. If the stay were lifted, the Ulbrich Action would still have to be litigated. To date, the parties have conducted limited factual discovery, have not prepared for mandatory mediation, have not briefed or filed summary judgment motions, have not yet engaged expert witnesses, conducted discovery with respect thereto, or prepared any expert reports. With respect to Movant's individual claims, the Motions to Dismiss must be resolved. If these Motions to Dismiss are decided in Movant's favor, the parties must engage in extensive factual discovery, which potentially could involve thousands of pages of document production and numerous witnesses and depositions, and must prepare for and engage in mandatory mediation and brief and file summary judgment motions. Barring dismissal or resolution through mandatory mediation, the parties will need to prepare expert witnesses and conduct expert discovery and proceed to trial. Should Ulbrich move to certify a class, the parties will likely engage in extensive discovery necessary to make a determination on class certification and will have to brief and prepare for a pivotal class certification hearing. A trial on the merits for a certified class could be significantly more lengthy and complex than a trial involving just Movant's claims.

**E.  No Specialized Tribunal has Been Established to Hear the Ulbirch Action**

11. As far as I am aware, no specialized tribunal has been created to hear any of the claims involved in the Ulbrich Action. The Ulbrich Action raises state law claims.[4]

---

[4] The Ulbrich Action and the Other Insurance Putative Class Actions are identified in a motion pending before the United States Judicial Panel on Multidistrict Litigation seeking to include them and several other "related" matters raising claims for lender-placed insurance in a proposed consolidated multidistrict litigation (MDL) proceedings (MDL Docket No. 2388) (the "***MDL Motion***"). The MDL Motion was filed by three plaintiffs in another action for lender-placed insurance claims, styled Alberto Barreto, et. v. Chase Home Finance, et al., No. 12-cv-21988, which is currently pending before the United States District Court for the Southern District of Florida (an action to which GMAC is not a party). If the automatic stay were lifted, the formation of an MDL could significantly escalate the burden and cost of defending the Ulbrich Action and the Other Insurance Putative Class Actions. This would

**F.**     **No Insurer has Assumed Responsibility for Any of the Florida Actions**

12.     In addition, in the vast majority of the cases, including the Ulbich Action, the Debtors pay their legal defense fees and costs out-of-pocket. As a result, requiring the Debtors to defend the Ulbrich Action will result in increased out-of-pocket defense costs, which based upon the Debtors' records for the year prior to the Petition Date averaged approximately $5.7 million per month.

---

require coordination of discovery proceedings in multiple actions against multiple defendants. Given the substantial variations among claims and the marked differences between the insurance programs of GMAC and those of other mortgage servicers, such coordination efforts could become extremely complex.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 7, 2012

*/s/ Lauren Graham Delehey*
Lauren Graham Delehey
In-House Litigation Counsel for Residential Capital, LLC