| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br><br>In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*<br><br>Debtors. | **NOT FOR PUBLICATION**<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

**MEMORANDUM OPINION DENYING THE GILBERT
MOTION TO DISMISS OR TO VACATE THE AUTOMATIC STAY**

*A P P E A R A N C E S*:

KATHERINE S. PARKER-LOWE
*Counsel for Rex T. Gilbert, Jr. and Daniela L. Gilbert*
35 Miss Elecia Lane, Suite 101
Post Office Box 730
Ocracoke, North Carolina 27860
By:    Katherine S. Parker-Lowe, Esq.

MORRISON & FOERSTER LLP
*Counsel for the Debtors*
1290 Avenue of the Americas
New York, New York 10104
By:    Norman S. Rosenbaum, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

   Rex T. Gilbert, Jr. and Daniela L. Gilbert (the "Gilberts") move to dismiss this chapter 11 case pursuant to section 1112(b) of the Bankruptcy Code or, alternatively, to lift the automatic stay pursuant to sections 105(a) and 362(d) (the "Motion"). (ECF Doc. # 274.) The Gilberts seek to proceed with their case now pending in the United States Court of Appeals for the Fourth Circuit. Additionally, the Gilberts move for damages for willful violation of the automatic stay

under section 362(h) of the Bankruptcy Code[1] by Debtors Residential Funding LLC ("Residential Funding") and GMAC Mortgage LLC ("GMACM," and together with Residential Funding, the "Debtor Defendants"). Residential Capital, LLC ("ResCap") and its affiliated debtors (the "Debtors") submitted an omnibus objection opposing the Motion (the "Objection").[2] (ECF Doc. # 682.) The Court held a hearing on the Motion on July 24, 2012. For the reasons discussed below, the Court denies the Motion in its entirety.

## I.    BACKGROUND

The Debtors (including the Debtor Defendants) filed voluntary petitions under chapter 11 of the Bankruptcy Code on May 14, 2012 (the "Petition Date"), and the Court authorized joint administration of the cases. (ECF Doc. # 59.) On July 13, 2012, the Court entered the Supplemental Servicing Order[3] lifting the automatic stay and permitting approximately two-thirds of the approximately 1900 direct claims and counterclaims against the Debtors pending in courts around the country to continue to be litigated; but the automatic stay remains in place with respect to the remaining one-third of such claims, including in the case brought by the Gilberts.[4] Objection ¶ 1. The Debtors are a residential real estate finance company owned by non-debtor

---

[1] The Gilberts' Motion indicates that they seek an award of damages and attorneys' fees under Bankruptcy Code section 362(h). (Mot. ¶ 1.) The Gilberts likely intended to reference Bankruptcy Code section 362(k) since the 2005 Amendments to the Bankruptcy Code redesignated former subsection (h) as subsection (k). Pub. L. 109-8, § 305(1)(B)-(C).

[2] Citibank, N.A. ("Citibank") filed a limited objection to the Motion. (ECF Doc. # 661.) Citibank objects to the dismissal of the bankruptcy cases, but takes no position regarding the Gilberts' requests for relief from the automatic stay or for damages for the alleged willful violation of the stay.

[3] On July 13, 2012, the Court entered the *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* (the "Supplemental Servicing Order"). (ECF Doc. # 774.)

[4] The claims and counterclaims asserted against the Debtors exempted from the automatic stay include claims brought against the Debtors as defenses to foreclosure and bankruptcy matters and title disputes.

Ally Financial Inc. The Debtors and their non-debtor affiliates operate the fifth-largest mortgage servicing business and the tenth-largest mortgage origination business in the United States. Objection ¶ 6.

The Gilberts own a house and lot in Ocracoke, North Carolina. Mot. ¶ 6. On May 5, 2006, the Gilberts refinanced their property with a loan for $525,000.00 from the First National Bank of Arizona (the "Mortgage"). *Id*. By 2009, however, Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc. Series 2006-QA6 ("Deutsche Bank") claimed to be the owner and holder of the Mortgage. *Id*. at ¶ 7. The Debtor Defendants served as the master servicer and sub-servicer of the Mortgage. *Id*. On March 12, 2009, Deutsche Bank commenced a foreclosure action in the Hyde County Superior Court. *In re David A. Simpson, P.C.*, 711 S.E.2d 165, 167 (N.C. App. 2011). On April 5, 2009, the Gilberts attempted to rescind the Mortgage under the federal Truth in Lending Act ("TILA"), but on April 24, 2009, GMACM refused to rescind the Mortgage. Mot. ¶ 7.

The Gilberts disputed Deutsche Bank's right to foreclose on the property. Nevertheless, on June 17, 2009, the Clerk of the Hyde County Superior Court entered an order holding that Deutsche Bank had the right to proceed with the foreclosure sale. *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 274 (4th Cir. 2009). The Gilberts unsuccessfully appealed in the Hyde County Superior Court. *Id*. Subsequently, they appealed to the North Carolina Court of Appeals (the "N.C. Court of Appeals"). *Id*. On May 3, 2011, the N.C. Court of Appeals reversed the lower court's ruling on the foreclosure sale.[5] *Simpson,* 711 S.E.2d at 175. None of the Debtors are party to the state court foreclosure action. Objection, n.9; Mot. ¶ 24.

---

[5] The N.C. Court of Appeals reversed the trial court's order, holding that that "the record is lacking of competent evidence sufficient to support that [Deutsche Bank] is the owner and holder of Mr. Gilbert's note and deed of trust" and found that the trial court had been wrong in allowing the foreclosure proceedings to go forward. *See David A. Simpson*, 711 S.E.2d at 174-175. Further, the court found it "troubling that [GMACM] was recently

3

On September 14, 2009, while their appeal to the foreclosure action was pending, the Gilberts brought an action in the General Court of Justice for the County of Hyde, North Carolina (the "Gilbert Litigation"), alleging, *inter alia*, claims based upon violations of TILA against Deutsche Bank, Residential Funding, and GMACM (the "Defendants"). Mot. ¶ 4. In October 2009, the Defendants removed the Gilbert Litigation to the United States District Court for the Eastern District of North Carolina (the "District Court"), and immediately filed a motion to dismiss the case for failure to state a claim.[6] *Id*. On July 7, 2010, the District Court granted the Defendants' motion to dismiss. *Gilbert*, 678 F.3d at 275. The Gilberts appealed to the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit"). Mot. ¶ 4. On May 3, 2012, the Fourth Circuit reversed the District Court's dismissal and reinstated all but one of the Gilberts' claims. *Id.* On May 17, 2012, after the Debtors' bankruptcy filing, the Defendants (including the Debtor Defendants) filed in the Fourth Circuit a petition for rehearing or rehearing en banc (the "Rehearing Petition"). *Id.* On June 20, 2012, the Fourth Circuit denied the Rehearing Petition and ordered the mandate issued with respect to Deutsche Bank and David Simpson, Substitute Trustee, but stayed the mandate with respect to GMACM and Residential Funding pursuant to section 362 of the Bankruptcy Code. *See Gilbert v. Residential Funding LLC*, No. 10-2295 (4th Cir. June 20, 2012).

The Gilberts assert that the filing of the Rehearing Petition is void as to the Debtor Defendants because they did not seek relief from the automatic stay before petitioning for

---

found to have submitted a false affidavit by Signing Officer Jeffrey Stephan in a motion for summary judgment against a mortgagor in the United States District Court of Maine" where GMACM was subsequently sanctioned for having submitted Stephan's false affidavit in bad faith. *Id*. at 173, n.2 (citing *James v. U.S. Bank Nat. Ass'n*, 272 F.R.D. 47, 48 (D. Me. 2011)). However, the N.C. Court of Appeals said the rescission of the loan was an equitable defense not properly before the trial court. *Id.* at 165.

[6]  The Defendants removed the case on October 13, 2009, and filed their motion to dismiss on October 14, 2009. *See Gilbert v. Deutsche Bank Trust Co. Ams.*, No. 09–CV–181–D, 2010 WL 2696763 at *3 (E.D.N.C. July 7, 2010).

rehearing or rehearing en banc. Mot. ¶ 4. The Gilberts also asserted during argument that because the Fourth Circuit, in denying the Rehearing Petition, did not issue the mandate as to the Debtor Defendants, it leaves the Gilberts in limbo how to proceed with their case in the District Court and whether, for example, Deutsche Bank's time to file a petition for writ of certiorari to the United States Supreme Court is altered by the automatic stay as to the Debtor Defendants.

The Gilberts seek the dismissal of the Debtors' chapter 11 bankruptcy cases on alleged "bad faith and misconduct" of the Debtors. *Id*. at ¶ 3. Alternatively, the Gilberts seek relief from the automatic stay on the grounds that the Mortgage is not "an asset of the Debtors' bankruptcy estate," the Debtors are "merely unsubstantiated servicers," and there is litigation pending in the Fourth Circuit. *Id*. Additionally, the Gilberts seek actual damages for alleged willful violation of the automatic stay, as well as attorney's fees. They aver that after filing for bankruptcy, the Debtor Defendants filed the Rehearing Motion and failed to vacate it after the automatic stay was in effect, preventing the Gilberts from responding without first obtaining approval of this Court. The Gilberts assert that this unfairly and unreasonably placed the burden upon the Gilberts to seek relief from the automatic stay. *Id*.

## II.     DISCUSSION

The Court concludes that these chapter 11 cases were filed in good faith and that cause does not exist to lift the automatic stay to permit the Gilbert Litigation to continue against the Debtor Defendants. And, while the automatic stay applied to bar the Debtor Defendants from filing the Fourth Circuit Rehearing Petition after these chapter 11 cases were commenced, the Gilberts may not recover damages for violation of the automatic stay.

### A. The Debtors Filed Their Petitions in Good Faith

The Gilberts seek to dismiss the Debtors' cases pursuant to section 1112(b) due to the Debtors' alleged bad faith. Bad faith can constitute adequate "cause" under section 1112(b) to justify the dismissal of a case. 11 U.S.C. § 1112(b); *see C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310 (2d Cir. 1997). "'[T]he standards for bad faith as evidence of cause,' whether in the context of dismissal or relief from the stay, 'are not substantively different from each other.'" *In re Eclair Bakery Ltd.*, 255 B.R. 121, 138 (Bankr. S.D.N.Y. 2000) (citing *In re 234-6 West 22nd St. Corp.,* 214 B.R. 751, 757 (Bankr. S.D.N.Y.1997)). "The good faith standard applied to bankruptcy petitions furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy." *Eclair Bakery*, 255 B.R. at 137 (citation and internal quotation marks omitted.) The court in *C-TC 9th Ave.* identified eight factors weighing in favor of dismissing a case for bad faith (the "*C-TC* Factors"):

(1) The debtor has only one asset;
(2) The debtor has few unsecured creditors whose claims are small in relation to those of secured creditors;
(3) The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
(4) The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which could be resolved in [a] pending state foreclosure action;
(5) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
(6) The debtor has little or no cash flow;
(7) The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and
(8) The debtor has no employees.

*C-TC 9th Avenue*, 113 F.3d at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky. 1992)).

None of the *C-TC* Factors apply to the Debtors. The Debtors have multiple secured and unsecured creditors, were not subject to a pending foreclosure action on any of their major assets, have significant cash flow, and did not file in an attempt to delay or frustrate the legitimate efforts of secured creditors to assert their rights. Objection ¶ 15. Additionally, the Debtors employ over 3,600 employees and have been paying their postpetition expenses as they come due. *See* Whitlinger First Day Aff. ¶¶ 50-52. Moreover, the Debtors filed their cases in order to maximize the value of their assets for the benefit of their creditors and to deal with impending debt maturities and overwhelming litigation costs and potential liabilities. *Id*. ¶¶ 93-104. Each of these reasons provides a valid justification for seeking the protections of the Bankruptcy Code. The amount of litigation faced by a debtor, on its own, does not provide a basis for an allegation of bad faith. *See In re Johns-Manville Corp.*, 36 B.R. 727, 737 (Bankr. S.D.N.Y. 1984) (concluding that bankruptcy filing to obtain a breathing spell from litigation did not establish bad faith filing or cause for dismissal). Applying these factors, the Court concludes that the Debtors filed their cases in good faith.

**B. Policies Underlying the Automatic Stay Favor Giving the Debtors a Breathing Spell**

Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition:

operates as a stay, applicable to all entities, of –

> (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection*, 474 U.S. 494, 503 (1986).  It maintains the status quo and protects the debtor's ability to formulate a plan for the sale or other disposition of property of the estate. COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2012).  The automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted).  In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." *In re Pioneer Commercial Funding Corp.,* 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

The automatic stay is critical to debtors because it allows them to focus on their reorganization instead of ligation. *Id*. at 48.  Here, the Debtors have already obtained an order modifying the automatic stay allowing claims asserted as defenses to foreclosure actions being prosecuted by or on behalf of the Debtors to continue outside of the bankruptcy court.  Declaration of Jennifer Scoliard (the "Scoliard Declaration") ¶ 3.  But the stay remains in place with respect to affirmative claims against the Debtors seeking to recover damages.  Claims for damages against the Debtors are the usual grist for the bankruptcy claims allowance process and absent unusual circumstances the bankruptcy court remains the appropriate forum to resolve such claims.  Permitting courts around the country to adjudicate claims risks diverting the attention of Debtors' personnel from pressing issues in the chapter 11 case.  As further explained below, the automatic stay should remain in place to preserve the Debtors' "breathing spell" with respect to the claims asserted by the Gilberts.

### C. The Automatic Stay Should Not Be Lifted to Permit the Gilbert Litigation to Proceed

Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not, however, define the phrase "for cause." In determining whether "cause" exists to lift the stay for prepetition litigation, courts consider the following factors (the "*Sonnax* Factors"):

(1) whether relief would result in a partial or complete resolution of the issues,
(2) the lack of any connection with or interference with the bankruptcy case,
(3) whether the other proceeding involves the debtor as a fiduciary,
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
(5) whether the debtor's insurer has assumed full responsibility for defending the action,
(6) whether the action primarily involves third parties,
(7) whether litigation in another forum would prejudice the interests of other creditors,
(8) whether the judgment claim arising from the other action is subject to equitable subordination,
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
(10) the interests of judicial economy and the expeditious and economical resolution of litigation,
(11) whether the parties are ready for trial in the other proceeding and
(12) the impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re New York Medical Grp., PC*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001). Not all of the *Sonnax* Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)).

9

In a request for stay relief, the moving party bears the initial burden to demonstrate that "cause" exists to lift the stay. *See Sonnax*, 907 F.2d at 1285; *Capital Comm. Fed. Credit Union v. Boodrow* (*In re Boodrow*), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") (internal quotation omitted).

If the movant is an unsecured creditor, the policies of the automatic stay weigh against granting the relief requested. "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Leibowitz,* 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); *see also Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 17, 2010).

Under section 362(d)(1), the Gilberts, as the movants, bear the initial burden of showing "cause" to lift the stay.[7] *In re Mazzeo*, 167 F.3d at 142. "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax*, 907 F.2d at 1285. Not all of the *Sonnax* Factors apply in the Gilberts' case, but the relevant *Sonnax* Factors weigh overwhelmingly in favor of maintaining the automatic stay.

   1. *Relief Might Not Result in a Partial or Complete Resolution of the Issues (Sonnax Factor No. 1)*

While relief may eventually result in partial or complete resolution of the issue at hand,[8] the resolution may not be immediate. Although the parties had engaged in lengthy litigation prior to the bankruptcy filing, the Gilbert Litigation is in its early stages. The Defendants have

---

[7]    The Gilberts incorrectly assert that the Debtors have the initial burden of proof in opposing the Motion. *See* Mot. ¶ 22.

[8]    The Debtors concede this possibility in their Objection. *See* Objection n.16.

10

not even filed an answer to the complaint because the case was initially dismissed for failure to state a claim. Other than this initial motion to dismiss, there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses. Discovery, trial preparation and, absent a settlement, trial all remain to be done. Therefore, since the Gilbert Litigation is in its early stages, the first *Sonnax* Factor weighs against lifting the stay.

> 2. *Lifting the Automatic Stay Is Connected to and Will Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor No. 2)*

Lifting the stay would allow the Gilberts to proceed with claims against the Debtors, open the floodgates for other movants seeking stay relief, and force the Debtors to litigate in courts separate from this Court. The new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases. Accordingly, the second *Sonnax* factor does not support relief from the stay because lifting the stay is connected to and will interfere with the Debtors' chapter 11 cases.

> 3. *The Other Proceeding Does Not Involve the Debtors as Fiduciaries (Sonnax Factor No. 3)*

The Gilberts assert that "the Gilbert Litigation involves the Debtors as fiduciaries." Mot. ¶ 22. "[G]enerally, proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *In re Curtis*, 40 B.R. 795, 799 (Bankr. Utah 1984) (internal citation omitted). Here, the Motion did not include evidentiary support for the Gilberts' assertion that the Debtor Defendants are merely fiduciaries in the litigation. Therefore, the third *Sonnax* Factor weighs against lifting the stay because the Debtor Defendants are not fiduciaries in the Gilbert Litigation and the proceedings bear significant relationship to the purpose of the automatic stay.

11

> 4. *No Specialized Tribunal Has Been Established to Hear the Actions (Sonnax Factor No. 4)*

The fourth *Sonnax* Factor does not support relief from the stay. As an initial matter, no specialized tribunal has been established to hear the Gilbert Litigation. The action was dismissed in the District Court before any substantive responsive pleadings were filed. Since no other court has made any substantive determination in the Gilbert Litigation, this Court may interpret and apply state law in resolving claims through the bankruptcy process. *See, e.g.*, *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009) ("This Court has significant experience in applying state law . . . ."). Accordingly, the fourth *Sonnax* Factor weighs in favor of denying relief from the automatic stay.

> 5. *No Insurer Has Assumed Responsibility for the Action (Sonnax Factor No. 5)*

No insurer has assumed responsibility for the action here, and the Debtors would therefore need to pay all expenses in litigating the action with out-of-pocket with funds from the bankruptcy estate. Scoliard Decl. ¶ 12. As a result, the fifth *Sonnax* Factor does not support relief from the stay.

> 6. *The Actions do not Primarily Involve Third Parties (Sonnax Factor No. 6)*

Two of the three Defendants in the Gilberts' claim—GMACM and Residential Funding—are Debtors. Therefore, even though one of the Defendants is not a Debtor, it cannot be said that the action primarily involves third parties. The court should not grant relief from the stay under the sixth *Sonnax* Factor if the debtor is the main party to the litigation. *See City Ins. Co. v. Mego Int'l Inc.* (*In re Mego Int'l Inc.*), 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate,

12

suggesting that continuance of the stay was proper"). Thus, the sixth *Sonnax* Factor does not support granting relief from the stay.

> 7. *Litigation of the Actions in Another Forum Would Prejudice the Interests of Other Creditors (Sonnax Factor No. 7)*

Requiring the Debtors to defend the Gilbert action in other forums would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *Public Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992). Allowing the Gilberts to bring their claims now, in a different forum, would be unfair to other creditors who must bring their claims in this Court at a later date. Any litigation costs would diminish the bankruptcy estate. The Gilberts must be treated as any other unsecured creditors and litigate their claims in this Court along with the Debtors' other similarly situated creditors. The seventh *Sonnax* Factor thus weighs against relief from stay.

> 8. *The Interests of Judicial Economy and Economical Resolution of the Actions Are Best Served by Maintaining the Automatic Stay (Sonnax Factor No. 10)*

Stay relief would require issuance of the mandate by the Fourth Circuit as well as the overall resolution of the Gilbert Litigation. Resolution of these issues would be costly in terms of both judicial resources and the value of the bankruptcy estate. Accordingly, the tenth *Sonnax* Factor does not support granting relief from the stay.

> 9. *The Movant's Case is Not Ready for Trial (Sonnax Factor No. 11)*

Because the District Court dismissed the case for failure to state a claim and the Fourth Circuit recently reversed, there has been little progress in the District Court, which has not set a discovery schedule or trial date. Objection ¶ 34. As a result, the Gilbert Litigation is not ready to go to trial. Accordingly, the eleventh *Sonnax* Factor weighs against relief from the stay.

13

> *10. The Balance of Harms Favors Maintaining the Automatic Stay (Sonnax Factor No. 12)*

The twelfth *Sonnax* Factor, the balance of the harms, weighs in favor of maintaining the stay because the burden imposed on the Debtors in terms of the time, financial resources, and attention necessary to defend them in the Gilbert Litigation is great in light of their ongoing chapter 11 cases.

As all of the applicable *Sonnax* Factors weigh in the Debtors' favor, the Gilberts have failed to make an initial showing of cause for removal of the stay. For the foregoing reasons, the Court denies the motion to lift the automatic stay.

### D. The Gilberts Are Not Entitled to Damages for the Willful Violation of the Automatic Stay

The Gilberts also request damages and attorneys' fees pursuant to Bankruptcy Code section 362(k) for the Debtor Defendants' allegedly willful violation of the automatic stay when the Defendants filed the Rehearing Petition. First, the Gilberts are correct that after the Debtors filed their chapter 11 cases, the automatic stay applied even to action initiated by the Debtors, such as the Rehearing Petition, in any case in which the Debtors were defendants at the time the case was initially filed. *See Teachers Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 64-65 (2d Cir. 1986) ("We recognize that there are compelling policy reasons why an appeal *initiated by the debtor* should not be considered a proceeding 'against the debtor' within the meaning of § 362(a); that is, such action can only inure to the benefit of the debtor and the debtor will not be forced to defend frivolous or vexatious lawsuits since the litigation is within its control. Nonetheless, we conclude that the debtor's status must be determined in accordance with its status at the time of the original proceeding. The determination should not shift depending upon which party is ahead at a particular stage in the litigation.") (emphasis in

14

original; citations omitted). Joining in the Rehearing Petition three days after the chapter 11 petitions were filed may well have been an inadvertent violation of the automatic stay by the Debtors, but it was a stay violation. But the violation was of no real consequence since the Gilbert Litigation was not stayed as to Deutsche Bank, and it had to timely file a Rehearing Petition if it chose to do so.

Second, the Gilberts cannot recover damages against the Debtors under section 362(k). That section was not intended to permit creditors to seek sanctions against a debtor. *See Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-87 (2d Cir. 1990) ("We now hold that a bankruptcy court may impose sanctions pursuant to § 362(h) [now 362(k)] . . . only for violating a stay as to debtors who are natural persons.").

Third, the Debtors filed their Notice of Bankruptcy and Effect of Automatic Stay at the same time that they filed the Rehearing Petition, thereby providing notice to the Fourth Circuit and the Gilberts of the Debtors' bankruptcy filing and the resulting stay. The Gilberts were on notice of the automatic stay and did not have to incur any additional costs to respond to the Debtor Defendant's Rehearing Petition. Deutsche Bank's time to file a petition for rehearing was not stayed by the Debtors' bankruptcy filing, and the Gilberts chose to oppose the petition. The Fourth Circuit denied the Rehearing Petition and issued the mandate as to Deutsche Bank. While the case cannot proceed against the Debtor Defendants, the case returns to the District Court with no stay in effect as to Deutsche Bank. The case does not remain in limbo; the District Court can determine whether or how the action should proceed against Deutsche Bank. The Gilberts are, of course, able to file a proof of claim against the Debtor Defendants in this bankruptcy case.

15

### III. CONCLUSION

For the foregoing reasons, the Motion to dismiss the case or in the alternative to vacate the automatic stay is **DENIED**.  Additionally, the Gilberts' Motion for damages under 362(k) is **DENIED**.

**IT IS SO ORDERED.**

Dated:    August 8, 2012
         New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge