**Hearing Date and Time:  August 14, 2012 at 10:00 a.m. (prevailing Eastern Time)**

QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone: (602) 229-5200
Facsimile: (602) 229-5690
Lori L. Winkelman, Esq. (admitted *pro hac vice*)
lori.winkelman@quarles.com
Walter J. Ashbrook, Esq. (admitted *pro hac vice*)
walter.ashbrook@quarles.com

*Counsel for OneWest Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020-MG (Jointly Administered) |
| Debtors. | |

**REPLY OF ONEWEST BANK IN SUPPORT OF MOTION FOR ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING RULE 2004 EXAMINATION OF HOMECOMINGS FINANCIAL, LLC AND REQUIRING PRODUCTION OF DOCUMENTS**

QB\136701.00059\17714488.2

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

OneWest Bank ("**OneWest**"), a party-in-interest and a potential creditor in the above-captioned, jointly administered Chapter 11 cases of RESIDENTIAL FUNDING COMPANY, LLC, et al. ("**Debtors**"), by and through undersigned counsel, hereby files this Reply in support of the "Motion of OneWest Bank for Order Pursuant to Bankruptcy Rule 2004 Authorizing Rule 2004 Examination of Homecomings Financial, LLC and Requiring Production of Documents" (the "**2004 Motion**").  In further support of the 2004 Motion, OneWest respectfully alleges as follows:

## INTRODUCTION

1. OneWest made precise, narrow requests to the Debtors which are undeniably proper under Rule 2004 standards:  produce regularly kept banking records which relate to Debtors' failure to close a single line of credit and release the related mortgage lien in Arizona.  Debtors' failure to close the line of credit and release the mortgage lien, which occurred after Debtors received a payoff of the line of credit which was funded by OneWest's refinancing money, led to OneWest's mortgage lien being foreclosed out and OneWest to lose hundreds of thousands of dollars in collateral.

2. Debtors object to OneWest's requests.  Distilled to its essence, the Debtors' Objection argues that Debtors should be relieved from responding to OneWest's 2004 Motion because this is a big case, Debtors have better things to do, and OneWest's potential claim of several hundred thousand dollars is so insignificant that OneWest ought to not mind waiting years before it can invoke its rights under the Bankruptcy Rules.  Debtors simply don't want to be bothered with "inconvenient and time consuming discovery efforts to satisfy the parochial interests of one party."  Objection, ¶2.

3. Debtors attempt to clothe this untenable argument with an air of legitimacy by submitting a multi-paragraph declaration from an "in house" bankruptcy counsel, a nine-page objection, and a 21 page transcript from an entirely different case.  Remarkably, even a cursory review of those materials show that Debtors haven't even attempted to meaningfully

determine how burdensome it would be to find and produce the requested records. Debtors simply make a conclusory statement that it might take "several hours, days, or even weeks" to gather the materials. Objection, Exhibit "1" thereto, ¶6. Which is it - hours, days, or weeks?

4.  Even more striking is the fact that while Debtors apparently have both the time and money to have their outside and in house counsel draft, revise, and submit the Objection, they don't have the time or resources to ask a clerical-level individual to pull a single loan file, limited correspondence, a summary history of payment on that one loan, and certain policies and procedures related to payoffs of loans. Indeed, it is a good bet that the attorneys' fees and time spent on the Objection by Debtors was far more than what it would be to simply pull the requested records, particularly if the task will take "hours" as suggested in the Objection.

5.  While the Debtors make abundantly clear in their Objection that they would very much prefer not to have to respond to 2004 requests filed by "potential creditors", they cite no authority for the proposition that Rule 2004 is unavailing to persons who wish to determine whether they have claims against a debtor. Objection, ¶12. Indeed, the purpose of Rule 2004 has been expressly recognized to include determination of the existence of a claim against a debtor.

6.  Debtors claim OneWest has not established "good cause" to grant the 2004 Motion. Good cause exists because documents and information obtained by OneWest have raised questions as to whether Homecomings' acts or omissions give rise to a claim against the Homecomings in favor of OneWest.

7.  Debtors assert that the 2004 Motion, if granted, would burden the Debtors. That is not the case. Given what the Debtors concede is OneWest's "parochial" interest in these cases, and the narrow scope of OneWest's requests, the burden on the Debtors to produce the documents requested is not unreasonable. On the contrary, denial of the 2004 Motion would require OneWest to expend untold attorneys fees monitoring the daily happenings in these cases for a period of perhaps years, before the claims resolution process begins. And at that point, and

-3-

after the very same discovery requested herein is undertaken, OneWest may discover it has no claim against the Debtors, or that the statute of limitations has run against potential third parties.

## BACKGROUND REGARDING ONEWEST'S CLAIM

8. Upon information and belief, on or around September 2, 2005, a refinancing transaction (the "**Refinance**") was completed in which borrower Mayra Hernandez, residing at 8234 E. Desert Cove, Scottsdale, AZ 85260 (the "**Property**"), borrowed approximately $640,000 from Indymac Bank to pay off (a) an existing first mortgage held by Citi Mortgage in the amount of approximately $543,151.88, and (b) a home equity line of credit ("**HELOC**") held by Debtor Homecomings in the amount of approximately $101,846.28.

9. The foregoing is evidenced by a payoff statement attached hereto as **Exhibit "A"** and incorporated herein by this reference.

10. After the Refinance, OneWest succeeded to Indymac Bank as holder of the refinanced debt.

11. Despite apparently having being paid in full when the Refinance closed, Debtors have not disputed that Homecomings failed to release its lien upon the Property, and later purported to sell the HELOC to a third party ("**EZ Homes**").

12. Thus, Homecomings Financial's lien which presumably should have been released, remained of record and was improperly senior to OneWest's lien.

13. EZ Homes completed a non-judicial foreclosure of its lien, purporting to wipe out OneWest's collateral position.

14. Thus Homecomings Financial's acts and/or omissions have potentialy caused hundreds of thousands of dollars to OneWest. Pursuant to Arizona's anti-deficiency statute, OneWest could only have satisfied its unpaid loan from the Property. Having been foreclosed out from that Property, OneWest has recovered nothing so far.

15. Through the 2004 Motion, OneWest seeks to confirm what happened during the Refinance and to determine its claim against Homecomings. The Payoff Statement and other documents OneWest has reviewed raise serious questions which necessitate additional,

targeted discovery: Did Homecomings Financial receive payment in full of the HELOC upon the close of the Refinance? If so, why was its lien not released? Why did it later sell a paid-off HELOC, and what did it tell EZ Homes regarding the Refinance, if anything?

16. Rule 2004 offers an appropriate and targeted mechanism for this inquiry.

## THE OBJECTION SHOULD BE OVERRULED

### A. The Purpose Of The 2004 Motion Is Proper.

7. Rule 2004 permits the Court, on motion of a party-in-interest, to order the examination of any entity if the examination relates "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . and any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b).

8. A Rule 2004 examination allows parties to discover the extent of the bankruptcy estate, find assets, examine transactions, or reveal wrongdoing. In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

9. OneWest filed the 2004 Motion to preserve OneWest's rights as a creditor of the Debtors, and, specifically, to determine the existence and scope of its claim against Debtor Homecomings, a matter which is relevant to the administration of the Debtors' bankruptcy estate. Thus, the 2004 Motion was brought for a proper purpose under the express language of Rule 2004.

### B. OneWest Has Carried Its Burden Of Showing Good Cause Exists To Grant The 2004 Motion.

10. To the extent the Court finds OneWest has a burden to show "good cause" exists to grant the 2004 Motion, OneWest has met that standard.

11. Good cause is generally shown "if the Rule 2004 examination is **necessary to establish the claim of the party seeking the examination**, or if denial of such request would cause the examiner undue hardship or injustice". In re Metiom, Inc., 318 B.R. 263 (S.D. NY. 2004) (emphasis added).

12.     To establish good cause, a movant need only "show some reasonable basis to examine the material and that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." In re Grabill Corp., 109 B.R. 329, 334 (N.D. Ill. 1989); In re Hammond, 140 B.R. 197, 201 (S.D. Ohio 1992) (good cause established to grant 2004 motion where movant "has shown that such an examination is reasonably necessary for the protection of its legitimate interests").

13.     Good cause does not require oral or written statements under oath. Metiom, 318 B.R. at 269 ("Given the absence of any authority suggesting that oral or written statements must be made under oath in order to support a finding of good cause for a Rule 2004 examination, and the existence of case law to the contrary, this Court finds no reason to doubt the soundness of the Bankruptcy Court's decision to rely on . . . representations of . . . counsel and the [unauthenticated] e-mail in determining that there was good cause for the Rule 2004 examination."); In re Dinubilo, 177 B.R. 932, 943 (E.D. Cal. 1993) (finding "good cause was presented" and no abuse of discretion in granting 2004 examination where only evidence presented was unsupported statement of movant's attorney that discovery was necessary to respond to a motion).

14.     OneWest has carried its burden to show good cause exists to grant the 2004 Motion. Among other things, the 2004 document production is necessary to establish OneWest's claim against Homecomings. As noted above, documents obtained by OneWest, including the Payoff Statement attached hereto, suggest Homecomings' HELOC may have been paid in full in connection with the Refinance. Yet, Homecomings Financial later sold the debt under the pretense that it was senior to OneWest's lien. If established, this would give rise to a claim against Homecomings in favor of OneWest. Thus, good cause exists to grant the 2004 Motion.

15.     Because OneWest has demonstrated that good cause exists to grant the 2004 Motion, the burden shifts to the Debtor to prove that the requested examination is improper. In re Buick, 174 B.R. 299, 304 (Bankr. D. Colo. 1994). Debtor's Objection fails to

-6-

carry this burden. OneWest's request is quite precise—a simple request for documents related to a single transaction. See In re Hyde, 222 B.R. 214, 219 (Bankr. S.D.N.Y. 1998) (finding a similarly tailored request to be precise and not burdensome). Debtor's unfounded arguments about OneWest's request taking hundreds of man-hours or opening the floodgates to hundreds of discovery requests in no way establish that the 2004 Motion is improper.

        C.    **The Scope Of OneWest's Document Requests Would Not Place An Undue Burden Upon The Debtors.**

        14.    Courts have routinely held that the scope of a Rule 2004 exam is broad, even broader than discovery under the Federal Rules of Civil Procedure. See id.; In re GHR Cos., Inc., 41 B.R. 655, 660 (Bankr. D. Mass. 1984) ("Rule 2004 is peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure does.").

        15.    The scope of a Rule 2004 examination is far-reaching and often likened to that of a "fishing expedition". In re Johns-Manville Corp., 42 B.R. 362, 364 (S.D.N.Y. 1984); In re French, 145 B.R. 991, 992 (Bankr. D.S.D. 1992) ("Bankruptcy Rule 2004 is designed to be a quick 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case."); In re GHR Energy Corp., 33 B.R. 451, 453 (Bankr. D. Mass. 1983) (noting that a Rule 2004 exam may be "exploratory and groping").

        16.    An inquiry initiated under Rule 2004 may "cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him." Id. (quoting In re Mantolesky, 14 B.R. 973, 976 (Bankr. D. Mass. 1981)). Rule 2004 is intended to give parties an opportunity to examine individuals with knowledge of the debtor's financial affairs "in order to preserve the rights of creditors." In re GHR Cos., Inc., 41 B.R. at 660.

        17.    On the issue of "burden", Debtors cite In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) for the proposition that at least some evidence must be submitted by a movant to allow a court "weigh the relevance of the discovery requested by the movant against

-7-

the burden it will impose upon the producing party". Objection ¶17. This misstates the Wilcher decision, which acknowledges that the standard under 2004 is "imprecise" and that the Wilcher court was required to "exercise its discretion and balance the competing interests between the examiner's right to expose alleged chicanery and [the witness's] right to privacy in his business affairs." Wilcher, 56 B.R. at 434. In Wilsher, it was clear the movant was engaging in a "fishing expedition" with no evidence of any wrongdoing on the part of the witness. Id.

18.     In contrast, here, some evidence exists that Homecomings received approximately $100,000 to close out the HELOC. See Exhibit "A". The Debtors have not disputed that Homecomings later sold the HELOC, for which it apparently had previously been paid in full. Thus, the facts are distinguishable from Wilsher because, among other things, there is some evidence that a claim exists in favor of OneWest.

19.     Finally, although "fishing expeditions" are certainly permitted under Rule 2004, the discovery sought through 2004 Motion is not a fishing expedition, but a targeted attempt to confirm or rule out a claim against Homecomings in favor of OneWest.

**D.     Discovery Under Rule 2004 Is Appropriate Prior To Commencement Of A Contested Matter.**

20.     The need and propriety of conducting discovery now, as opposed to what may be years from now in connection with Debtors' forthcoming claims objection process, is underscored by the recognized purpose of Rule 2004 as a "quick factual fix." In re Dinubilo, 177 B.R. 932, 941 (E.D. Cal. 1993). "[A] Rule 2004 examination is normally employed at the **pre-litigation stage** of a bankruptcy case." Id. (emphasis added).

21.     Time is of the essence. OneWest cannot delay discovery until some yet-to-be-determined date. To the extent the discovery shows OneWest has claims against non-Debtor third-parties, the statute of limitations may have run by the time of the Debtors' claims objection process. This would place upon OneWest the ultimate burden—the loss of its claim—which far exceeds any burden the Debtors now assert to produce a few e-mails and policy documents. The balance of the burdens favors discovery now.

-8-

## CONCLUSION

Accordingly, for the reasons set forth herein, OneWest respectfully requests (a) that the Objection be overruled; (b) that the 2004 Motion be granted in all respects; and (c) that the Court grant OneWest such other and further relief as is just and appropriate under the circumstances.

Dated: August 9, 2012
      Phoenix, Arizona

                /s/ Walter J. Ashbrook
                Lori L. Winkelman
                Walter J. Ashbrook

                QUARLES & BRADY LLP
                One Renaissance Square
                Two North Central Avenue
                Phoenix, AZ  85004-2391
                Telephone: (602) 229-5200
                Facsimile: (602) 229-5690

                Attorneys for OneWest Bank