UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>Debtors. | Case No. 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |

**FEDERAL HOUSING FINANCE AGENCY'S REPLY IN FURTHER SUPPORT OF ITS
MOTION PURSUANT TO ORDERS OF THE HONORABLE DENISE L. COTE
SEEKING LIMITED DISCOVERY FROM THE DEBTORS AND, IF NECESSARY
TO THAT PURPOSE, RELIEF FROM THE AUTOMATIC STAY**

Andrew K. Glenn (aglenn@kasowitz.com)
Matthew B. Stein (mstein@kasowitz.com)
Daniel A. Fliman (dfliman@kasowitz.com)
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Federal Housing Finance Agency,
as Conservator for the Federal Home Loan
Mortgage Corporation*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

REPLY ........................................................................................................................................ 4

I.  THE AUTOMATIC STAY DOES NOT SHIELD THE DEBTORS FROM
    THIRD PARTY DISCOVERY ........................................................................................ 4

II. THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY, IF
    THE COURT BELIEVES IT APPLIES, SO AS TO PERMIT ACCESS TO THIS
    CRUCIAL INFORMATION IN ACCORDANCE WITH JUDGE COTE'S
    ORDER ............................................................................................................................ 9

CONCLUSION......................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Hillsborough Holdings Corp.*,
 130 B.R. 603 (Bankr. M.D. Fla. 1991) .......................................................................................8

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*,
 140 B.R. 969 (N.D. Ill. 1992) ....................................................................................................7

*In re Miller*,
 262 B.R. 499 (B.A.P. 9th Cir. 2001).......................................................................................6,7

*In re Richard B. Vance & Co.*,
 289 B.R. 692 (Bankr. C.D. Ill. 2003).........................................................................................8

*In re Sonnax Indus.*,
 907 F.2d 1280 (2d Cir. 1990).....................................................................................................9

*Signature Bank v. Ahava Food Corp.*,
 2008 WL 4126248 (S.D.N.Y. Aug. 19, 2008).......................................................................8, 9

*United Nat'l Funding, LLC v. JetDirect Aviation, Inc.*,
 2012 U.S. Dist. LEXIS 89587 (D. Nev. June 27, 2012)............................................................7

The Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for the Federal Home Loan Mortgage Corporation, respectfully submits this reply (the "Reply") (1) in further support of its motion, [Docket No. 810] (cited herein as "FHFA Br."), and its supplemental motion, [Docket No. 859] (cited herein as "FHFA Supp. Br.") (collectively, the "Motion")[1] seeking certain information in the possession of the above-captioned debtors (collectively, the "Debtors") in connection with the FHFA Case and, if necessary for that purpose, further seeking relief from the automatic stay for FHFA to obtain such access and (2) in response to the *Debtors' Objection to Motion of Federal Housing Finance Agency For Relief From the Automatic Stay*, [Docket No. 1023] (cited herein as "Opp. Br.") (the "Opposition").

## PRELIMINARY STATEMENT

The Debtors and the Non-Debtor Affiliates have imposed every imaginable roadblock to stop FHFA from prosecuting its claims in the FHFA Case against the Non-Debtor Affiliates and unrelated non-debtors. To prosecute the FHFA Case and other cases before Judge Cote, FHFA requires discovery of certain basic – but essential – information on the loans in the securitizations at issue. FHFA has sought that information for years: long before the Petition Date or the filing of the FHFA Case. Indeed, as early as July 2010, FHFA, in its capacity as Conservator, served conservator subpoenas to certain of the Debtors and the Non-Debtor Affiliates that demanded production of, among other things, the same information FHFA seeks today. That information has never been provided. In connection with the FHFA Case, the Non-Debtor Affiliates allege that they do not possess the documents at issue, that the documents are property of the Debtors' estates and that the automatic stay precludes them from obtaining the

---

[1] Capitalized terms used but not defined in the Reply shall have the meanings ascribed to them in the Motion. FHFA submitted the Motion and submits this Reply at the direction of Judge Cote at hearings held on July 11 and 17, 2012. FHFA does not otherwise submit to the jurisdiction of this Court and reserves all rights with respect to such jurisdiction.

documents from the Debtors.  Judge Cote has directed FHFA – before moving to compel production from the Non-Debtor Affiliates in the FHFA Case – first to seek from this Court access to the information with the cooperation of Ally Financial, Inc.[2]

As set forth in the Motion, FHFA should be provided access to relevant information in the Debtors' possession because the automatic stay does not preclude parties from seeking third-party discovery from a debtor.  Moreover, even if the Court concludes that the stay does apply, FHFA has proven that cause exists to lift the stay.  In furtherance of their agenda of impeding the FHFA Case at all costs to protect the Non-Debtor Affiliates, the Debtors strenuously object to the Motion.

The Debtors argue that the automatic stay does apply to the discovery sought here, but provide no argument or authority to support that position.  Rather, the Debtors feebly attempt to distinguish the precedent confirming what is clear from the text of the Bankruptcy Code, i.e., that the automatic stay does not cover third-party discovery directed to a debtor.  The Debtors fail to raise any legitimate challenge to any of the cases cited in the Motion, each of which supports the relief that FHFA seeks.  Instead, most of the Opposition is dedicated to arguing that allowing FHFA to take discovery from the Debtors in connection with the FHFA Case will impose insurmountable costs and prejudice to the Debtors, their estates and the reorganization process.  Here, the Opposition contains the same alarmist rhetoric, cautioning of immense harm and a derailed bankruptcy process, that the Debtors put in their papers to extend the automatic stay to non-debtor affiliates.  Indeed, the Debtors make virtually the same arguments that they already argued to Judge Cote and that she rejected, including that allowing the FHFA Case to progress would expose the Debtors to the risks of res judicata and indemnification claims, deplete

---

[2] Judge Cote directed "Ally to cooperate fully in [this] application that FHFA [is] making to the bankruptcy court," (July 17 Leung Decl., Ex. J at 10:12-14,), but Ally Financial, Inc. has not cooperated thus far.

2

insurance proceeds and will distract employees.  The Debtors raise those same failed arguments in the Opposition in an apparent attempt to re-litigate them.  However, as the evidence will show, the Debtors once again overstate the perceived harms, which are vastly outweighed by the immense benefits and judicial efficiencies from allowing FHFA to obtain the discovery it deserves.

Importantly, a point that the Debtors repeatedly ignore is that eventually the Debtors will have to provide discovery to FHFA.  That is inevitable.  When FHFA asserts its claims against the Debtors, FHFA will be entitled to discovery from the Debtors.  The issue, therefore, is *when*, not *if,* the Debtors must comply with FHFA's discovery and *when*, not *if*, the Debtors will have to bear the related costs and burdens.  Delaying discovery would bring no meaningful benefit to the Debtors or their estates.  On the other hand, delaying FHFA's access to this discovery will harm FHFA and the progress of 16 cases before Judge Cote.

The Debtors claim that FHFA's request seeks 105,000 loan files.  This is simply wrong.  The Debtors' counsel, who is intimately involved in the FHFA Case because it represents other defendants not subject to the stay, knows that FHFA has sought to limit the number of loan files produced through sampling and other statistical analyses.  Thus, in a good faith effort to minimize the alleged burden on the Debtors, FHFA has agreed to limit its request at this time to a sample of only 5,000 loan files to be chosen by FHFA without prejudice to request more if necessary.  The cost and burden of such a small sample mitigates – if not eliminates – the Debtors' concerns.  Accordingly, FHFA respectfully submits that the Court should grant the Motion and overrule the Opposition.

**REPLY**

**I.**

**THE AUTOMATIC STAY DOES NOT SHIELD THE
DEBTORS FROM THIRD PARTY DISCOVERY.**

1.  As set forth in the Motion, the third-party discovery sought from the Debtors in connection with the FHFA Case falls outside the scope of the automatic stay. (FHFA Br. ¶¶ 16-18.) The Bankruptcy Code's automatic stay only applies to the enumerated actions listed in Section 362(a), but none of those actions covers third-party discovery directed to a debtor. For instance, Section 362(a)(1) plainly does not apply where, as here, the debtor is not a party to the underlying litigation and, therefore, third-party discovery cannot amount to an "action or proceeding against the debtor." Here, the Debtors have been removed as Defendants from the Amended Complaint in the FHFA Case, which seeks redress only from non-debtor third parties. (*See* Opp. Br., Ex. 1 (*Declaration of Jeffrey A. Lipps*) at Ex. A.) In addition, Section 362(a)(3) does not apply where, as here, a party is seeking copies of documents and information, which the debtor will continue to possess and which will remain available to other constituents. Thus, such discovery cannot amount to obtaining possession or exercising control of property of the estate or property from the estate. Based on this plain reading of the unambiguous text of the Bankruptcy Code, courts have consistently held that the automatic stay does not preclude a party from seeking third-party discovery against a debtor. (*See* FHFA Br. ¶ 18 (citing cases).)

2.  The Debtors do not identify any provision of Section 362(a) imposing a stay on third-party discovery sought from a debtor. Instead, the Debtors attempt to distract from the clear and binding language of the Bankruptcy Code by rearguing their motion to extend the automatic stay beyond its statutory limit. (*See* Opp. Br. ¶ 48 ("While it is true that the Debtors are no longer parties to the FHFA Litigation, they were until just after their bankruptcy filing,

4

*and claims against their affiliated entities in that case are tantamount to claims against the Debtors. That is because the claims in the FHFA Litigation are based on the Debtors' conduct and because the Debtors have indemnification obligations to and shared insurance policies with Ally.*") (emphasis added); *id.* ¶ 69 ("[T]he costs and burdens to the Debtors are of course not the only harm: lifting the stay will allow FHFA to immediately pursue its case against the Non-Debtor Affiliates *and lead to indemnification claims against the Debtors, depletion of their shared insurance proceeds, as well as risks of res judicata, law of the case, and/or collateral estoppel*. Put another way, the huge burden and massive costs that FHFA is trying to foist upon the Debtors will not benefit the Debtors or any creditor (other than FHFA) while allowing FHFA to prosecute its case against the Non-Debtor Affiliates, and ultimately the Debtors.") (emphasis added).) Judge Cote already denied the Debtors' attempt to stay the FHFA Case based on precisely the same arguments. (*See* FHFA Supp. Br., Ex. A at 17:14-19:14 (finding that the Debtors will need to participate in discovery eventually anyways and that the potential costs of discovery are therefore unavoidable, Judge Cote stated that "it seems to me that when it comes down to the arguments with respect to indemnification for defense costs or wasting insurance policies that those arguments have to be weighed in the context of understanding that this discovery is going to occur and there will be a cost to participation in this discovery and that the cost is affecting the economics of the restructuring, whether or not the documents are produced today or in the future" and "ResCap has the loan files. They are going to have to be produced some day. There is going to be a cost associated with the production of those loan files, whether it is today or next year."); *id.* at 26:17-23 ("I know the parties are familiar with the Johns Manville case from 1984, which can be found in 40 BR 219. But even there the test is, as articulated in that court, one of significant interference with a debtor's reorganization efforts. For

5

all the reasons I have already described, I don't think that the limited production of loan tapes and loan files can meet that test . . .").) This is now law of the case. The FHFA Case *is* proceeding against the Non-Debtor Affiliates and other third-parties, and the Debtors cannot thwart the FHFA Case by withholding relevant discovery.

3.  Rather than confronting the applicability of the stay directly, the Debtors attempt to conflate the distinct question of whether the automatic stay applies with the question of whether the Debtors will suffer harm. (*See* Opp. Br. ¶ 42 ("[C]ourts in this district have found that the automatic stay extends to efforts to compel third-party discovery from a debtor, especially where that discovery would be costly and interfere with the reorganization process. . . ."), ¶ 43 ("Courts in other circuits have similarly held that the automatic stay applies to third-party discovery where that discovery affects the property of the estate, and/or interferes with the debtor's restructuring efforts.").) The two inquiries are separate.[3] While such harm is relevant to a request for stay relief, that issue is germane only if the stay applies, which it does not.

4.  The Debtors' transparent efforts to refute FHFA's legal authorities fail. The Debtors argue that "[o]n its face, *In re Miller* had nothing to do with the kind of complex, multibillion-dollar Chapter 11 reorganization or extensive document discovery at issue here." (Opp. Br. ¶ 48.) (citing *In re Miller*, 262 B.R. 499 (B.A.P. 9th Cir. 2001)). However, the question of whether the automatic stay applies is a legal question untethered to the size or complexity of a bankruptcy. Those factual questions are relevant only to a Section 105 injunction. Thus, the *Miller* court's holding "that section 362(a) does not preclude generation of information regarding claims by or against a non-debtor party," 262 B.R. at 505, applies with equal force here. The Debtors assert that "*Miller* in fact counsels against the relief FHFA is

---

[3]   Indeed, the Debtors rely on cases concerning motions to *extend* the automatic stay. (*See* Opp. Br. ¶¶ 42, 43 citing *In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y. 1984); *Lane v. Phila. Newspapers, LLC (In re Phila. Newspapers, LLC)*, 423 B.R. 98 (E.D. Pa. 2010).)

6

seeking because it on its face only applies where the 'discovery requests . . . pertain[] only to the [creditors'] claims against the other, nondebtor defendants.'" (Opp. Br. ¶ 47.) The court in *In re Miller*, however, directly rejected this very argument when it stated: "Information is information, and we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, *even if that information could later be used against the party protected by the automatic stay*." 262 B.R. at 506 (emphasis added).[4] Accordingly, *In re Miller* is good law and is applicable here.[5]

5.      The Debtors try to distinguish *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 977 (N.D. Ill. 1992), by claiming that discovery beyond a scheduled deposition "could be curtailed by the automatic stay" and that the automatic stay applied to the case. (Opp. Br. ¶ 49.) The Debtors are wrong. There, the court was regulating the conduct of discovery based on ordinary discovery disputes:

> Kendall [the debtor] has no ground to interfere with or disrupt discovery that is calculated to lead to evidence admissible against IMPRA [a non-debtor]. That a given witness used to work for Kendall (or still works for Kendall) is irrelevant, if the discovery has utility other than to facilitate recovery against Kendall. Working out the details will require a degree of cooperation among counsel that is sadly missing at the moment. Bickering has been at a high level throughout the case . . . . I will be available by telephone to resolve any disputes as they arise, and will issue orders as the need arises clarifying the permitted scope of discovery.

---

[4]   The Debtors contend that "*Miller* was premised, at least in part, on the rationale that the automatic stay does not bar actions based on a Chapter 13 debtor's post-petition conduct, and it does not bar postpetition defensive action relating to a pre-petition suit brought by a debtor." (Opp. Br. ¶ 48.) But that discussion is in a separate portion of the opinion -- addressing whether a party seeking discovery violated the automatic stay by seeking sanctions against the debtor for its conduct – which is irrelevant to the question of whether the automatic stay applies to third-party discovery. 262 B.R. at 507-08.

[5]   *See also United Nat'l Funding, LLC v. JetDirect Aviation, Inc.*, 2012 U.S. Dist. LEXIS 89587,*9-10 (D. Nev. June 27, 2012) ("The automatic stay does not protect a debtor from complying with discovery requests . . . where the requests for discovery pertain to claims against other non-debtor Defendants").

7

Thus, the court was not "contemplating that discovery beyond the scheduled deposition could be curtailed by the automatic stay." It was offering to help resolve anticipated discovery disputes.

6. The Debtors contend that the court in *In re Hillsborough Holdings Corp.*, 130 B.R. 603, 606 (Bankr. M.D. Fla. 1991) ruled that, "'assuming without conceding' that the automatic stay did apply, the party seeking discovery carried its burden and showed that it was entitled to relief from the automatic stay." (Opp. Br. ¶ 50.) This is wrong. In fact, the court held that "[b]ased on the undisputed facts, it is clear that a literal reading of § 362(a) leaves no doubt that the automatic stay would not prevent American Pipe from conducting the proposed discovery to be used for its defense in the suit filed by the City." 130 B.R. at 605. The remainder of the opinion – which is not relevant here – addressed the debtor's alternative request that "§ 362(a) *should be extended* to prohibit American Pipe to obtain discovery from the employees of U.S. Pipe." *Id.* (emphasis added). The "assuming without conceding" language that the Debtors quote was provided in the context of an *extension* of the stay beyond its statutory language. *See id.* at 606.[6]

7. As the Debtors note, Judge Cote cited *Signature Bank v. Ahava Food Corp.*, 2008 WL 4126248 (S.D.N.Y. Aug. 19, 2008) and *In re Miller* with approval in finding that the automatic stay does not preclude discovery from the Debtors in the FHFA Case. (*See* Opp. Br., n.7.) In *Signature Bank*, the debtor first argued that the automatic stay precluded depositions of its employees. Judge Dolinger rejected that argument, holding that "11 U.S.C. § 362(a) does not prevent discovery in the current lawsuit even if the depositions in question unearth information that may be relevant to the Bank's stayed claims against AOC." *Id.* at *1. The debtor there also

---

[6] The Debtors fail to distinguish *In re Richard B. Vance & Co.*, 289 B.R. 692 (Bankr. C.D. Ill. 2003). (Opp. Br. ¶ 51.) The debtor there argued that subpoenas directed to its control persons "are also protected by the automatic stay." *Id.* at 696. The court held that "it is now generally accepted that discovery pertaining to claims against the bankrupt's codefendants is not stayed, even if the discovery requires a response from the debtor, and even if the information discovered could later be used against the debtor." *Id.* at 697.

8

argued, alternatively, that the court should extend the automatic stay and enjoin the depositions. It is in this context, i.e., *extending* the stay, that, as the Debtors observe, the "court noted that the debtor had failed to make any case that the already-scheduled depositions would interfere with reorganization in any way." (Opp. Br., n.7.) But arguments concerning an extension of the stay simply do not apply here.[7]

8.    The Debtors fail to distinguish the cases cited in the Motion or to provide any credible authority to rebut the clear language in Section 362(a), which does not apply to third-party discovery from a debtor. Accordingly, the Court should grant the Motion.

## II.

### THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY, IF THE COURT BELIEVES IT APPLIES, TO PERMIT ACCESS TO THIS CRUCIAL INFORMATION IN ACCORDANCE WITH JUDGE COTE'S ORDER.

9.    Assuming *arguendo* that the automatic stay applies to the discovery sought by FHFA based on the Debtors' possession of this discovery, "cause" exists to grant relief from the automatic stay under the circumstances extant here. As the Debtors acknowledge, the Court should apply the factors adopted by the Second Circuit in *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990) to decide whether cause exists to lift the stay. (*See* Opp. Br. ¶¶ 53, 54.) The Debtors make three primary, but flawed, arguments on the *Sonnax* factors.

10.    First, the Debtors argue that "lifting the stay will undoubtedly interfere with the bankruptcy case (*Sonnax* Factor 2) and prejudice the interests of other creditors (*Sonnax* Factor 7) because it will deplete estate resources." (Opp. Br. ¶ 65.) In support of this contention, the Debtors provide extensive testimony via declarations concerning the process for identifying,

---

[7]    Finally, the Debtors' statement that "the court in *Signature Bank* explicitly stated that it was applying Ninth Circuit law because the underlying bankruptcy was pending in California, and to that end it followed *In re Miller* without question" is a mischaracterization. Judge Dolinger made the referenced comment in discussing the standard for *extending* the automatic stay.

9

locating, gathering, reviewing and producing the relevant discovery. (*See* Opp. Br. ¶¶ 10-37.) Inasmuch as the first hearing concerning the Motion is non-evidentiary pursuant to Paragraph 13(g) of the case management procedures approved in these Cases [Docket No. 141], this Reply does not respond to or address the evidence that the Debtors submit with the Opposition. FHFA reserves all rights to challenge such evidence on any substantive, procedural or evidentiary basis, at the appropriate time. However, and without prejudice to any other arguments or objections, FHFA points out the following flaws in the Debtors' purported proof of burdens:

- The Debtors argue that they are overburdened by compiling and producing loan files for the Debtors' sale processes and investigations conducted by the Creditors Committee and the Examiner. (Mongelluzzo Decl. ¶ 60.) The Debtors need to explain how they concluded that the burdens of those other productions are manageable, but that those related to the discovery sought by FHFA are intolerable. In any event, FHFA has agreed to limit its request to 5,000 loan files without prejudice to seeking additional loan files.

- The Debtors claim that they "have received no formal request for the discovery FHFA is seeking other than the Motion." (Opp. Br. ¶ 8.) This is disingenuous. FHFA served conservator subpoenas on certain of the Debtors over two years ago in July 2010, which requested, among other things, the same loan files sought by FHFA in the Motion.

- Mr. Mongelluzzo testifies about the burdens of identifying loan numbers and states that "[s]imply identifying the loan numbers and creating this spreadsheet to define the search parameters for the thousands of loans at issue would take significant time." (Mongelluzzo Decl. ¶ 12.) However, the data located on the Debtors' public website already contains spreadsheets listing loan numbers, organized by securitization. There is no need for the Debtors to recreate those spreadsheets.

11.    <u>Second</u>, the Debtors oppose stay relief by arguing that the FHFA Case is in an early stage and far from going to trial. (Opp. Br. ¶¶ 63, 64.) The Debtors overlook that Judge Cote has ordered a carefully orchestrated schedule requiring that all cases pending before her proceed contemporaneously. Denying FHFA the requested discovery will have a severely disruptive effect on the FHFA Case and also on the other 15 cases pending before Judge Cote because the document discovery phase of those cases, which is highly accelerated by Court order, substantially ends in less than two months.

12. <u>Third</u>, the Debtors argue that "various plaintiffs have brought dozens of MBS Actions against the defendants," "[d]ozens more plaintiffs have brought suits related to foreclosures, servicing, RESPA, among other claims," and that "[a]ll of those plaintiffs are likely to want discovery from the Debtors, and lifting the stay and requiring the Debtors to produce documents to FHFA would inevitably open the 'floodgates' to similar requests from those plaintiffs, leading to an even greater potential expenditure of estate resources." (Opp. Br. ¶ 68.) The floodgates will not open. To the contrary, FHFA is the only litigant that successfully opposed the Debtors' motion to extend the stay to the Non-Debtor Affiliates. Accordingly, FHFA is the only party allowed to continue to pursue claims against Non-Debtor Affiliates and, thus, the only party that on that basis can seek third-party discovery from the Debtors. The floodgate concern is wholly misplaced. Accordingly, as set forth in the Motion, the automatic stay, if it applies, should be lifted to allow FHFA to obtain discovery essential to the FHFA Case.

## **CONCLUSION**

For the foregoing reasons, the Court should permit FHFA access to the information sought and grant any such other and further relief to FHFA deemed just and proper.

DATED:   August 10, 2012
         New York, New York

                                        KASOWITZ, BENSON, TORRES &
                                            FRIEDMAN LLP

                                        /s/ Andrew K. Glenn
                                        Andrew K. Glenn (aglenn@kasowitz.com)
                                        Daniel A. Fliman (dfliman@kasowitz.com)
                                        1633 Broadway
                                        New York, New York 10019
                                        Telephone: (212) 506-1700
                                        Facsimile: (212) 506-1800

                                        *Attorneys for Federal Housing
                                        Finance Agency, as Conservator for the Federal
                                        Home Loan Mortgage Corporation*

11