Hearing Date: August 16th, 2012 at 2:00 p.m. (ET)
Objection Deadline: August 15th, 2012 at 10:00 a.m. (ET)

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- x
In re:                                                      :    Chapter 11
                                                            :
RESIDENTIAL CAPITAL, LLC, et al.,[1]                        :    Case No. 12-12020 (MG)
                                                            :
             Debtors.                                       :    Jointly Administered
----------------------------------------------------------- x

**MOTION OF THE EXAMINER FOR ENTRY OF AN ORDER (I)
GRANTING AUTHORITY TO ISSUE SUBPOENAS FOR THE
PRODUCTION OF DOCUMENTS AND AUTHORIZING THE
EXAMINATION OF PERSONS AND ENTITIES, (II) ESTABLISHING
PROCEDURES FOR RESPONDING TO THOSE SUBPOENAS, (III)
APPROVING ESTABLISHMENT OF DOCUMENT DEPOSITORY
AND PROCEDURES TO GOVERN USE, AND (IV) APPROVING
PROTECTIVE ORDER**

Arthur J. Gonzalez, the Court-appointed Examiner (the "Examiner") for Residential

Capital, LLC and its affiliated debtors (collectively, the "Debtors") in the above-captioned cases

(the "Chapter 11 Cases"), hereby moves (the "Motion"), pursuant to 11 U.S.C. §§ 105(a),

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

1106(a)(3)-(4), 1106(b), 1109(b), Fed. R. Bankr. P. 2004 ("Rule 2004") and the Court's Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (the "Examiner Order"), for an order substantially in the form attached hereto as Exhibit A (the "Proposed Order"), (i) authorizing the Examiner to issue subpoenas for the production of documents and the examination of persons and entities determined by the Examiner to have information relevant to the issues the Court has, and may, direct the Examiner to investigate, (ii) establishing procedures governing responses to those subpoenas, (iii) approving the establishment of a central document depository and procedures to govern its use, and (iv) approving a uniform protective order for Examiner discovery. In support thereof, the Examiner respectfully states as follows:

## PRELIMINARY STATEMENT

1.       In order to facilitate the diligent discharge of his duties under both section 1106 of the Bankruptcy Code and the Examiner Order, the Examiner requests the power to issue subpoenas for the production of documents and the examination of persons. The Examiner Order mandated an investigation, the scope and timing of which were to be set by the Court after the Examiner conferred with other parties in interest. After the requisite consultations, the Court has mandated that the Examiner conduct an investigation (the "Investigation") covering the topics set forth in the Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner dated July 27, 2012 (the "Scope Order") and issue a written report within approximately six months. The Examiner is cognizant of the need for speed and the magnitude of the tasks of gathering, on an expedited basis, facts relevant to the Investigation. For those reasons, the Examiner requests the ability to issue subpoenas without the need to file separate Rule 2004 applications for each and every respondent that becomes relevant to the Investigation, subject to

2

the rights of all respondents to contest the scope and burden of any subpoenas at the appropriate time.

2. The Examiner expects that, in accordance with the Examiner Order, the Debtors, the Official Committee of Unsecured Creditors (the "Committee") and all other parties in interest will cooperate with the Investigation by, among other things, voluntarily identifying and providing documents relevant to the Investigation and voluntarily submitting themselves and/or their professionals to interviews with the Examiner and his professionals. Nevertheless, the Examiner seeks the relief requested in this Motion in an abundance of caution, in order to ensure that the Investigation is timely and efficiently completed.

3. To further guarantee an orderly and efficient Investigation, the Examiner also seeks the implementation of standard procedures in connection with the Examiner's issuance of subpoenas, including, among other things, deadlines for witnesses to produce documents, appear for examinations, file responses and/or objections to the subpoena and procedures for witnesses to assert claims of privilege.

4. Finally, the Examiner requests the approval of the establishment of, and a set of procedures to govern, the use and operation of a central document depository (the "Document Depository") into which the majority of documents and other information ("Discovery Material") provided to the Examiner will be placed, as well as a uniform protective order (the "Protective Order") which will govern the disclosure, discovery, production and use of all Discovery Material provided to the Examiner. The establishment of such a Document Depository has been requested by both the Debtors and the Committee, and will facilitate sharing of evidence relevant to the Investigation in a cost- and time-efficient manner, expediting the Investigation itself as well as potential discovery activity that may be relevant to future

3

proceedings in these Chapter 11 Cases. The Protective Order will act as a uniform order governing all parties with access to the Document Depository and protecting confidential, proprietary or private information from public disclosure and from usage outside of these Chapter 11 Cases. This will alleviate the burden of negotiating, entering into and monitoring numerous separate confidentiality arrangements between the Examiner and a multitude of parties.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 105(a), 1106 and 1109(b) of Title 11, United States Code, as amended (the "Bankruptcy Code"); Rules 2004, 7030, 9014 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rules 30 and 45 of the Federal Rules of Civil Procedure.

## BACKGROUND

6. The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code on May 14, 2012, and the Court authorized joint administration of the cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On June 4, 2012, Berkshire Hathaway, Inc. filed a motion for the appointment of an examiner pursuant to 11 U.S.C. § 1104(c) (the "Examiner Motion"). On June 20, 2012, the Court issued a Memorandum Opinion and Order granting the Examiner Motion (the "Memorandum Decision"). On June 28, 2012, the Court entered the Examiner Order.

4

8.      On July 3, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed Arthur J. Gonzalez as Examiner in the Chapter 11 Cases, subject to Court approval. On that same date, the Court entered an order approving the appointment.

9.      On July 17, 2012, the Examiner filed the Application of the Examiner for Order Authorizing the Examiner to Employ and Retain Chadbourne & Parke LLP as Counsel to the Examiner *Nunc Pro Tunc* to July 11, 2012, which Application was approved on August 9, 2012.

10.     Pursuant to the Examiner Order, and in accordance with the Memorandum Decision, the Examiner is directed to conduct the Investigation, the scope and timing of which was to be determined by the Court after the Examiner conferred with various parties in interest. Examiner Order at p. 2. After the requisite consultations, the Court determined that the scope of the Investigation includes, among other things, the issues set forth in the Scope Order.

## RELIEF REQUESTED

11.     By this Motion, the Examiner respectfully requests entry of the Proposed Order attached as Exhibit A. The Proposed Order would authorize the Examiner, among other things, to issue subpoenas directing the production of documents and the examination of witnesses pursuant to Rule 2004, without separate application to this Court for each subpoena or witness, and in accordance with the procedures set forth therein. The Examiner respectfully believes that pre-approval to issue Rule 2004 subpoenas is critical to ensuring an efficient Investigation that will provide the Examiner with timely access to all relevant information necessary to complete a comprehensive report. Further, the Examiner requests that the Court approve the establishment of the Document Depository and the proposed protocols and

5

procedures relating to the Document Depository, as well as the Protective Order, which would govern the disclosure of all Discovery Material produced to the Examiner.

## BASIS FOR RELIEF

### A. The Examiner Requires Subpoena Power to Fulfill His Statutory Duties

12. Having the authority to issue subpoenas to compel document production and oral examinations under Rule 2004 is central to the Examiner's ability to fulfill his statutory and court-ordered obligations. Such authority is provided for under applicable law.

13. Under Rule 2004(a), "the court may order the examination of any entity" based on the "motion of any party in interest." The Examiner is a "party in interest" as set forth in the Examiner Order ("the Examiner shall have the standing of a party in interest with respect to matters that are within the scope of the Investigation…"). Examiner Order at p. 2. A Rule 2004 subpoena may compel production of documents or attendance of entities or persons for deposition or other testimony. See Fed. R. Bankr. P. 2004(c).

14. The scope of a Rule 2004 subpoena has been described as "very broad[,]" Rule 2004 adv. comm. notes, and "unfettered[,]" In re Bazemore, 216 B.R. 1020, 1023 (Bankr. S.D. Ga. 1999) (citation omitted). Under Rule 2004(a), subpoenas may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge…[or to] the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefore, and any other matter relevant to the case or to the formulation of a plan."

15. The latitude ordinarily permitted to parties in interest under Rule 2004 is particularly expansive for examiners, given their significant statutory duties. See In re Ionosphere Clubs, Inc., 156 B.R. 414, 432 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994) ("[t]he investigation of an examiner in bankruptcy, unlike civil discovery under Rule 26(c), is supposed to be a 'fishing expedition,' as exploratory and groping as appears proper to the Examiner[]") (citation omitted). "Any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." Id.

16. In order to timely discharge his obligations, the Examiner requires such broad access to documents and information that are relevant to the Investigation. As noted, the Examiner expects that most of the information will come voluntarily from parties in interest, and expects the parties will honor the Court's mandate that as much be achieved cooperatively as possible. To these ends, to date the Examiner has met and spoken extensively with the Debtors, the Committee and several other parties in interest. These parties in interest have indicated their intent to cooperate fully with the Investigation. Going forward, the Examiner intends to seek voluntary production of documents and interviews at mutually agreeable dates, times and places as much as possible, issuing subpoenas to compel a witness's appearance for examination only when necessary. Nevertheless, the Examiner requires the ability to promptly propound discovery if a party in interest with relevant information declines to cooperate.

17. Rule 2004 authority will best ensure that the Examiner gains immediate and complete access to information in three ways: First, it will help ensure voluntary cooperation with the Investigation. Second, where such cooperation does not occur, the subpoena authority will provide the Examiner with an important tool to access relevant information. Third, particularly with certain corporations and governmental entities, it is

7

common that the production of documents and/or providing testimony is conditioned upon the issuance of a subpoena to such entities. In such cases, ready subpoena authority will ensure expeditious access to relevant information.

18. Bankruptcy courts in this District have granted examiners such pre-approval to issue Rule 2004 subpoenas in similar circumstances. See, e.g., Dynegy Holdings, LLC, et al., (Case No. 11-38111) (Bankr. S.D.N.Y.); Lehman Brothers Holdings Inc., et al., (Case No. 08-13555) (Bankr. S.D.N.Y.). Orders granted January 27, 2012 and February 11, 2009, in Dynegy and Lehman respectively, both granted the examiner pre-approval to issue Rule 2004 subpoenas. Similarly, other courts have extended such relief to examiners. See, e.g., Tribune Company, et al., (Case No. 08-13141) (Bankr. D. Del.); SemCrude, L.P., et al., (Case No. 08-11525) (Bankr. D. Del.); New Century TRS Holdings, Inc., et al., (Case No. 07-10416) (Bankr. D. Del.). The Examiner respectfully requests that the Court follow the precedents set in Dynegy, Lehman, Tribune, SemCrude and New Century. The same considerations for expedience, thoroughness and fulfillment of statutory mandates apply here.

B. A Streamlined Subpoena Process is Necessary for Efficient Investigation

19. By this Motion, the Examiner also seeks to establish streamlined procedures governing subpoenas issued during the Investigation. These procedures are necessary for the Examiner to ensure maximum coordination of effort and services among the parties, and to complete his Investigation as soon as practicable.

20. Specifically, the Proposed Order seeks to establish the following procedures in connection with the Examiner's issuance of subpoenas: (A) except as otherwise agreed by the Examiner, within ten days of service of the Examiner's subpoena (except as otherwise provided herein), witnesses shall be directed to produce, on a rolling basis, all

8

documents responsive to the Examiner's subpoena (except any documents withheld under a claim of privilege) or, within ten days of service of the Examiner's subpoena, to file all objections and/or responses to the Examiner's subpoena with the Bankruptcy Court, with a hearing promptly scheduled; (B) if a witness withholds any documents based upon a claim of privilege, the witness must provide the Examiner with a privilege log containing the information required under Bankruptcy Rule 7026 within ten days of the service of a subpoena upon such witness (unless otherwise agreed by the Examiner and except as otherwise provided herein); (C) the witness is directed to submit to oral examination upon reasonable notice and, absent other agreement with the Examiner, in no event more than fifteen days from the service of a deposition subpoena upon a witness; and (D) in accordance with Bankruptcy Rules 2004 and 9016, the Clerk of the Court shall issue subpoenas, signed but otherwise in blank, as requested by the Examiner. Notwithstanding the foregoing, witnesses shall not be subject to the ten day time limitation set forth in subsections (A) and (B) of this paragraph with respect to the production of electronic documents (or an applicable privilege log), but witnesses shall use their reasonable best efforts to either produce such electronic documents or a privilege log, as applicable, as soon as is reasonably practicable, including on a rolling basis.

21. Similar procedures were adopted by the courts in both <u>Dynegy</u> and <u>Lehman</u>. The Examiner respectfully suggests that these procedures should govern here.

22. The Examiner respectfully submits that, based upon the circumstances of these Chapter 11 Cases, the proposed procedures are necessary and appropriate. The establishment of (and adherence to) deadlines for compliance with the subpoenas is crucial to the timely completion of the Investigation.

23. The Proposed Order does not limit the substantive rights of witnesses or other parties under applicable law to object to or oppose any subpoena the Examiner may serve.

24. This Motion is without prejudice to the Examiner's right to file further motions, as warranted, seeking additional documents and testimony pursuant to Rule 2004 or any other applicable law.

        C.        <u>A Document Depository Will Expedite Discovery and the Investigation</u>

25. Establishing a Document Depository will satisfy the requests of several parties in interest in this matter, as well as expedite both discovery and the Investigation. As such, the Examiner proposes the establishment of the Document Depository as well as a set of procedures to govern the use and operation of the Document Depository. Such document depositories have been used in other large bankruptcy cases involving numerous parties where there was extensive production of discovery materials in which many parties had a legitimate interest. <u>See</u>, <u>e.g.</u>, <u>Tribune</u>, (order dated Dec. 15, 2009) (the "<u>Tribune Depository Order</u>," attached hereto as <u>Exhibit C</u>). The Debtors and the Committee have expressed interest in having such a Document Depository established in this case for the Discovery Material that is produced to the Examiner.

26. The establishment and maintenance of the Document Depository will enable certain relevant parties to obtain access to Discovery Material (other than "Highly Confidential" Discovery Material, as set forth in the Protective Order) gathered by the Examiner, for use by them in connection with these Chapter 11 Cases, including with respect to providing any input that the Examiner may from time to time request from such parties with respect to particular issues in the Investigation. The establishment of such a Document Depository will facilitate sharing of evidence relevant to the Investigation in a cost- and time-efficient manner,

10

which will help expedite the Investigation itself, as well as potential discovery activity that may be relevant to future proceedings in these Chapter 11 Cases.

27.     The proposed procedures, as set forth in the Proposed Order, address what material the Document Depository will contain; the protection of "Confidential," "Professionals' Eyes Only" and "Highly Confidential" material submitted to the Examiner; what persons or entities will be given access to the material in the Document Depository initially; procedures to govern how additional parties may obtain access to the materials in the Document Depository; procedures to address any disputes regarding requests by additional parties to obtain access to the materials in the Document Depository; and procedures for notification when material is added to the Document Depository.

28.     Accordingly, the Examiner requests that the Court approve the proposed protocols, as set forth in the Proposed Order, for the establishment and operation of a Document Depository for Discovery Material in this matter.

D.     <u>A Uniform Protective Order is Required</u>

29.     The Debtors, the Committee and various parties in interest, either voluntarily, or, if approved and required, subject to the subpoena power discussed above, will be producing voluminous information to the Examiner, some of which may be confidential, proprietary or private information (the "<u>Confidential Information</u>").  Certain of this information will also be shared with other parties in interest (the "<u>Depository Designees</u>") via the Document Depository as provided for in the procedures referenced above.  The Examiner recognizes that the protection of this information will be paramount to the producing parties.  Accordingly, the Examiner petitions this Court for the approval of the Protective Order, attached hereto as <u>Exhibit</u>

11

<u>B</u>.    This Protective Order will supersede any prior confidentiality agreement entered into between the Examiner and any party in interest that relates to these Chapter 11 Cases.

30.    Such a Protective Order will act to streamline the discovery process. As mentioned, the majority of Discovery Material provided to the Examiner will be placed into the central Document Depository. Certain parties in interest, the Depository Designees, will also be granted access to the Discovery Material which is placed in the Document Depository. In such a situation where there are multiple parties both producing and receiving documents, it is critical to the efficient conduct of the Investigation that there be a single uniform protocol governing the disclosure and use of the Discovery Material and any Confidential Information.

31.    The Examiner proposes that the terms of the Protective Order govern the disclosure and use (by both the Examiner and the Depository Designees) of all Discovery Material produced to the Examiner, including that which is placed into the Document Depository. The Examiner would require that all Depository Designees execute the "Acknowledgement and Agreement to be Bound" attached to the Protective Order as <u>Schedule 1</u>.

32.    This serves multiple purposes. First, the Confidential Information will be sufficiently protected. Additionally, the Examiner submits that this proposed procedure will minimize the disruption of the Investigation, as the Examiner will not be forced to negotiate and enter into numerous separate and possibly inconsistent confidentiality agreements with the various respondents who may have relevant information. This will also act to lessen the possibility of the Court being required to hear multiple disputes regarding the disclosure or designation of Confidential Information.

33.    While the promulgation of such a standard order has not, to date, been the customary practice of Examiners in complex chapter 11 cases such as these, such a procedure

has in fact been suggested by at least one past examiner. In a letter to the U.S. Trustee for District 2 dated April 1, 2010 (the "Valukas Letter"), written after the completion of his examination, Anton R. Valukas, examiner in the Lehman bankruptcy, provided suggestions regarding best practices of examiners. Examiner Valukas stated that he had entered into 16 different formal confidentiality arrangements and 5 different informal arrangements. He surmised that "[i]n retrospect, this is the one area where I might have acted differently than I did." Valukas Letter at p. 8. While according to Examiner Valukas there were relatively few disputes in the Lehman case, he asserts that "if there had been more disputes, the Court and I would have had to sort out all of these different agreements with slightly different terms. If I had to do it over, I might have asked the Court to approve a single form of protective order to govern production from all parties." Id.

34.     Further, the uniform process proposed here is similar to the terms of the Tribune Depository Order. While the circumstances there were slightly different, that order imposed certain uniform rules governing confidentiality issues, specifically with respect to a similar document depository.

35.     Accordingly, the Examiner requests that the Court approve the Protective Order, which would apply to all Discovery Material produced to the Examiner, and bind all parties that produce such material or may have access to it via the Document Depository. The Protective Order has already been reviewed and/or commented on by the Debtors, the Committee, the U.S. Trustee, Ally Financial Inc., Cerberus Capital Management L.P. and the Ad Hoc Group of Unsecured Bondholders, and is substantially similar to confidentiality arrangements previously entered into by other parties in interest in this matter with respect to discovery. While not all comments received (some of which conflicted) could be accomodated,

13

the Examiner believes that the Protective Order should generally be acceptable to the parties in interest in these Chapter 11 Cases and is appropriate given the Examiner's responsibilities.

## NOTICE

36.    Notice of this Motion has been provided in accordance with the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures entered by this Court on May 23, 2012 [Docket No. 141] (the "Case Management Order"), and notice has been given to (i) the Office of the U.S. Trustee, (ii) the Debtors, (iii) the Official Committee of Unsecured Creditors, (iv) the parties identified on the Monthly Service List (as defined in the Case Management Order), and (v) Cerberus Capital Management L.P.  The Examiner submits that, in light of the nature of the relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

37.    No prior application for the relief requested herein has been made by the Examiner to this or any other court.

WHEREFORE, the Examiner respectfully requests that this Court grant the Motion and enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) authorizing the Examiner to issue subpoenas for the production of documents and the examination of persons and entities determined by the Examiner to have information relevant to the issues the Court may direct the Examiner to investigate, (ii) establishing procedures governing responses to those subpoenas, (iii) approving the establishment of a central document depository and procedures to govern its use, and (iv) approving the uniform Protective Order, and granting the Examiner such other and further relief as the Court deems just and proper.

Dated: August 10, 2012
      New York, New York

                            **CHADBOURNE & PARKE LLP**

                            By: */s/ Howard Seife*
                            Howard Seife
                            David M. LeMay
                            30 Rockefeller Plaza
                            New York, New York 10112
                            Telephone: (212) 408-5100
                            Facsimile: (212) 541-5369

                            *Counsel to the Examiner*