**Hearing Date:  August 29, 2012 at 10:00 a.m. (prevailing Eastern time)**
**Objection Deadline:  August 22, 2012 at 4:00 p.m. (prevailing Eastern time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:      (212) 468-8000
Facsimile:      (212) 468-7900
Todd M. Goren
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------  )
                                                                        )
In re:                                                                  )    Case No. 12-12020 (MG)
                                                                        )
RESIDENTIAL CAPITAL, LLC, et al.,            )    Chapter 11
                                                                        )
                                          Debtors.            )    Jointly Administered
-----------------------------------------------------------------------  )
                                                                        )

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 TO**
**(A) ESTABLISH PROCEDURES FOR THE SALE OR DISPOSAL OF**
***DE MINIMIS* ASSETS; AND (B) AUTHORIZE THE DEBTORS TO (I) PAY**
**RELATED FEES AND EXPENSES AND (II) ASSUME, ASSIGN, OR REJECT**
**RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

        The debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors")[1] hereby move this Court (the "Motion")[2] for entry of an order, pursuant to 11 U.S.C.

§§ 105, 363, and 365 to: (a) establish procedures for the sale or disposal of *de minimis* assets;

and (b) authorize the Debtors to pay related fees and expenses.

        In support of this Motion, the Debtors represents as follows:

---

[1]     The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit
        1 to the Whitlinger Affidavit (defined below).  Additional subsidiaries and affiliates of the Debtors may file
        Chapter 11 petitions on a rolling basis.  As used herein, the term "Debtors" includes any such entities.
[2]     Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
        requested in this Motion may refer to http://www.kccllc.net/rescap for additional information.

## JURISDICTION

1.        This Court has subject matter jurisdiction to consider this Motion pursuant to

28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these

cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.        Chapter 11 Case Background**

2.        On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary

petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are

managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.  No trustee has been appointed in these Chapter 11 cases.

3.        On May 16, 2012, the United States Trustee for the Southern District of New

York appointed a nine member official committee of unsecured creditors (the "Creditors'

Committee").

4.        On June 20, 2012, the Court directed that an examiner be appointed, and on

July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket Nos. 454, 674].

5.        The Debtors are a leading residential real estate finance company indirectly

owned by Ally Financial, Inc. ("AFI"), which is not a Debtor.  The Debtors and their non-debtor

affiliates operate the fifth largest servicing business and the tenth largest mortgage origination

business in the United States.  A more detailed description of the Debtors, including their

business operations, their capital and debt structure, and the events leading to the filing of these

bankruptcy cases, is set forth in the Whitlinger Affidavit.  [Docket No. 6].

**B.        The Debtors' Need for *De Minimis* Asset Sale Procedures**

6.        The Debtors are charged with winding down these Chapter 11 cases to maximize

the value of the estates' assets for the benefit of creditors.  As part of that duty, the Debtors must

sell their remaining assets, some of which will constitute *de minimis* asset sales, to generate the maximum recovery.  In addition, in the ordinary course of business, the Debtors sell certain assets that may be subject to liens, claims, interests, and encumbrances (collectively, the "Liens").  By way of example, in the ordinary course of business, the Debtors, in their capacity as servicer, sell charged off loans (i.e., uncollectible loans for which the principal and accrued interest were written off from the Debtors' anticipated receivables) from time to time to third parties.[3]  While such sales constitute ordinary course sales, in light of the bankruptcy proceedings and the difficulty involved in obtaining lien releases from the Debtors' secured lenders, the Debtors require streamlined procedures in order to sell these assets free and clear of Liens.  As such, the Debtors submit that establishing procedures for the sale of *de minimis* assets free and clear of Liens, both in the ordinary course of business and otherwise, is prudent and warranted.

7.    While many, if not most, of the sales the Debtors intend to consummate pursuant to these procedures will be ordinary course sales, the Debtors must seek this Court's approval pursuant to Bankruptcy Code Section 363 because the Debtors are seeking to sell such assets "free and clear."  Obtaining Court approval with respect to each *de minimis* asset sale, however, would be burdensome to this Court and the estates, both administratively and financially. In some cases, the cost and delay associated with seeking Court approval for each individual sale could eliminate, or substantially undermine, the economic benefit of the transaction to the estates. Further, in certain instances, the Debtors' inability to consummate an asset sale quickly may hinder or eliminate an otherwise advantageous but time-sensitive opportunity.

---

[3]  A substantial majority of these loans are owned by third parties; however, a small portion of these loans are owned by the Debtors.  The participation of the Debtors in the sale of charged off loans owned by third parties is covered by orders of this Court authorizing the Debtors to continue servicing mortgage loans in the ordinary course of business.  [Docket Nos. 401, 402]

8.      To alleviate the cost and delay of having to file a separate motion with respect to each proposed sale of *de minimis* assets, the Debtors hereby seek approval of the procedures described herein (the "*De Minimis* Sale Procedures").  These *De Minimis* Sale Procedures are intended to streamline the process for obtaining Court approval for the sale of *de minimis* assets within specified economic parameters.  The Debtors propose the *De Minimis* Sale Procedures to facilitate a more expeditious and cost-effective review by Interested Parties (defined below) of asset sales than would otherwise be available absent such procedures.

## RELIEF REQUESTED

9.      The Debtors seek authority, pursuant to Bankruptcy Code Sections 105, 363, and 365:

> (i) to sell certain assets of the Debtors with relatively *de minimis* value pursuant to the *De Minimis* Sale Procedures; and

> (ii) to pay reasonable commissions and fees to third-party sales agents in connection with such sales, if necessary.

## THE PROPOSED *DE MINIMIS* SALE PROCEDURES

10.     The proposed *De Minimis* Sale Procedures will apply only to asset sales in any individual transaction or series of related transactions to a single buyer or group of related buyers involving, in each case, an aggregate selling price of $15 million or less, as measured by the amount of cash and other consideration the Debtors are to receive in respect of the sale of such assets (each, a "*De Minimis* Sale").  The Debtors will not consummate any *De Minimis* Sales pursuant to the *De Minimis* Sale Procedures to AFI or its affiliates.  Pursuant to the *De Minimis* Sale Procedures, the Debtors will be permitted to sell assets that are encumbered by Liens only if the transaction satisfies at least one of the five enumerated requirements of Bankruptcy Code Section 363(f).

**A.    Sale Price Less Than or Equal to $2.5 Million.**

11.    The Debtors hereby seek authorization to sell their assets in any individual

transaction or series of related transactions to a single buyer or group of related buyers for total

consideration of less than or equal to $2.5 million (each, a "Limited Notice *De Minimis* Sale")

without further Court approval, by filing such notice with the Court and providing specific notice

of the Limited Notice *De Minimis* Sale by (i) email (if known); and (ii) facsimile, overnight

delivery, or hand delivery only to the following parties:

> (i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Brian S. Masumoto, Esq.);
>
> (ii) counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas New York, NY 10036, (Attn: Kenneth H. Eckstein and Douglas H. Mannal);
>
> (iii) counsel to Ally Financial, Inc., Kirkland & Ellis, 601 Lexington Avenue, New York, New York 10022 (Attn: Ray C. Schrock and Anthony Grossi);
>
> (iv) counsel to Barclays Bank, PLC, as Administrative Agent for the DIP Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Ken Ziman and Jonathan H. Hofer);
>
> (v) co-counsel to the Ad Hoc Group of Junior Secured Noteholders, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Attn: David Thatch);
>
> (vi) co-counsel to the Ad Hoc Group of Junior Secured Noteholders, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Gerard Uzzi);
>
> (vii) counsel to U.S. Bank, N.A., as Trustee for the Junior Secured Notes, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178 (Attn: Eric R. Wilson); and
>
> (viii) any other known parties holding or asserting liens, claims, interests and encumbrances (the "Liens") on the assets that are the subject of the proposed Limited Noticed *De Minimis* Sale and, if known, their respective counsel.

12.     The Debtors also request authority to take any actions that are reasonable and necessary to close the Limited Notice *De Minimis* Sale and obtain the sale proceeds, including paying reasonable commissions and fees to any properly retained third-party sale agents in connection with the Limited Notice *De Minimis* Sale.  To the extent necessary, the Debtors will seek Court authority to retain any brokers or liquidators to assist the Debtors in *De Minimis* Sales.

13.     If the Debtors seek to assume, assign, or reject executory contracts or unexpired leases relating to and in connection with an asset sale that would otherwise qualify as a Limited Notice *De Minimis* Sale, the Debtors will seek to sell those assets pursuant to the Noticed *De Minimis* Sale Procedures (as defined below).

**B.     Sale Price Greater Than $2.5 Million but Less Than or Equal to $15 Million**

14.     The Debtors also seek approval to sell their assets in any individual transaction or series of related transactions to a single buyer or group of related buyers for total consideration of more than $2.5 million but less than $15 million (each, a "Noticed *De Minimis* Sale") without further Court approval, after providing notice only to the Interested Parties (as defined below).

15.     If the Debtors propose a Noticed *De Minimis* Sale, the Debtors will file a notice of such proposed sale (referred to herein, together with the notice of the Limited Notice *De Minimis* Sale, as the "Sale Notice") and serve it by (i) email (if known); and (ii) facsimile, overnight delivery, or hand delivery only on the following parties:

> (i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Brian S. Masumoto, Esq.);
>
> (ii) counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas New York, NY 10036, (Attn: Kenneth H. Eckstein and Douglas H. Mannal); and

(iii) the Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, Third Floor, New York, New York 10007;

(iv) counsel to Ally Financial, Inc., Kirkland & Ellis, 601 Lexington Avenue, New York, New York 10022 (Attn: Ray C. Schrock and Anthony Grossi);

(v) counsel to Barclays Bank, PLC, as Administrative Agent for the DIP Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Ken Ziman and Jonathan H. Hofer);

(vi) co-counsel to the holders of Junior Secured Notes, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Attn: David Thatch);

(vii) co-counsel to the holders of Junior Secured Notes, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Gerard Uzzi);

(viii) counsel to U.S. Bank, N.A., as Trustee for the Junior Secured Notes, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178 (Attn: Eric R. Wilson);

(ix) any other known parties holding or asserting Liens on the assets that are the subject of the proposed Noticed *De Minimis* Sale and, if known, their respective counsel; and

(x) any counterparty (or any such counterparty's counsel) to any executory contracts or unexpired leases related to the property as described in the Sale Notice that the Debtors are seeking to assume and assign to the purchaser of the assets, or reject, in connection with this sale.

16.      ((i)-(x) shall be referred to herein collectively with the notice parties for the

Limited Notice *De Minimis* Sales as the "Interested Parties").  Interested Parties shall have (i)

five (5) business days from service of the Sale Notice to file and serve any objections to a

Limited Notice *De Minimis* Sale and (ii) ten (10) business days from service of the Sale Notice

to file and serve any objections to a Noticed *De Minimis* Sale (the "Notice Period"); provided,

however, the Debtors shall consult with the Creditors' Committee as soon as practicable upon

the commencement of any marketing process that the Debtors expect will culminate in a *De*

*Minimis* Sale, including providing the Creditors' Committee with (i) the information, to the extent known, described in a Sale Notice, (ii) any offering documents provided to prospective purchasers related to the *De Minimis* Sale, and (iii) any additional information reasonably requested by the Creditors' Committee.

17.    With respect to all *De Minimis* Sales, the Sale Notice will specify:[4]

(i) a description of the asset(s) proposed to be sold;

(ii) (a) an identification of the executory contracts and unexpired leases, if any, to be assumed, assumed and assigned, or rejected in connection with the sale, (b) the amounts the Debtors believe are required to cure any defaults pursuant to Bankruptcy Code Section 365(b), (c) a statement regarding the adequate assurance of future performance by the proposed assignee, consistent with Bankruptcy Code Section 365, and (d) with respect to executory contracts and unexpired leases to be rejected, (x) the proposed effective date for the rejection, (y) notice of the bar date for claims arising from the rejection, and (z) that if any of the Debtors has deposited funds with the counterparty as a security deposit or other arrangement, such counterparty may not set off or otherwise use such deposit without the prior authority of the Court or agreement between the counterparty and the Debtors;

(iii) the identities of any parties holding or asserting Liens in the property and a statement indicating how the Debtors propose to satisfy Bankruptcy Code Section 363(f) with respect thereto;

(iv) a statement identifying the broker, if any, and the amount of the proposed commissions;

(v) identification of the financing facility to which the asset is pledged, if any;

---

[4]    As noted above, the Debtors, in their capacity as servicer, may sell their assets together with assets belonging to third parties. In these situations, the Sale Notice will provide information only relating to the proposed sale of the Debtors' assets and will not be required to contain information regarding the sale of third party assets.

In addition, the Debtors anticipate that they will be selling certain pools of charged off loans in the ordinary course of business pursuant to the *De Minimis* Sale Procedures within the next 20-30 days. Sales of charged off loans typically occur on an expedited basis once the loans are marketed, a purchaser is selected, and the purchaser completes its diligence review. To avoid any delays in this process, the Debtors propose that they file and serve the proposed Sale Notice for certain of these sales prior to the proposed hearing on the Motion and, barring any objections, that they be permitted to consummate such sale promptly following the later of (a) the expiration of the Notice Period and (b) entry of the order granting this Motion.

(vi) instructions regarding the procedures to assert objections to the *De Minimis* Sale;

(vii) the identity of the proposed purchaser (including a statement indicating whether the proposed purchaser is an "insider" as defined in Bankruptcy Code Section 101(31)); and

(viii) the major economic terms and conditions of the *De Minimis* Sale, including net proceeds.[5]

18.        The Debtors propose that objections to all *De Minimis* Sales, including objections that relate to the assumption, assignment, or rejection of related contracts (the "Objections"), be in writing, filed with the Court, and served on the applicable Interested Parties and counsel to the Debtors so as to be received by all such parties prior to 4:00 p.m. (prevailing Eastern Time) on the last day of the Notice Period.  Further, the Debtors propose that each Objection state with specificity the grounds for the Objection.

19.        If any significant economic terms of a *De Minimis* Sale are amended in a negative manner after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the Debtors will serve a revised Sale Notice on all applicable Interested Parties describing the proposed *De Minimis* Sale, as amended. If a revised Sale Notice is required, the Notice Period will expire on the later of the original Notice Period expiration date or five (5) business days from service of the revised Sale Notice.

20.        If an Objection to a *De Minimis* Sale is properly filed and served by an Interested Party:

(i) The Debtors may negotiate with the objecting party and may change the terms of the sale without the requirement of extending the Notice Period, as long as (a) the revised terms are no more onerous to the Debtors than those set forth in the Sale Notice, and (b) the revised terms do not adversely affect the rights of any other

---

[5]        This information may, but is not required to, be provided by attaching the applicable contract or contracts to the Sale Notice.

Interested Parties; provided, however, that the Debtors shall provide notice of all changes as soon as reasonably practicable to the Interested Parties, whether or not such changes impact the Interested Parties.

(ii) The *De Minimis* Sale may not proceed absent written resolution of the Objection; or (b) entry of an order by the Court specifically approving the *De Minimis* Sale.

(iii) The Debtors may schedule a hearing on the proposed *De Minimis* Sale in accordance with the Court's order establishing case management procedures, and, upon the scheduling of such a hearing, the Debtors will provide notice of the hearing on the party filing the Objection and the Interested Parties.

21.     If no Objection to a *De Minimis* Sale is filed or served by an Interested Party consistent with the *De Minimis* Sale Procedures, upon the expiration of the relevant Notice Period, such *De Minimis* Sale will be deemed final and fully authorized by the Court under the terms of the Order approving this Motion, including the payment of related brokers' commissions, if applicable, and the assumption, assignment, or rejection of executory contracts or unexpired leases, if applicable (including the payment of cure costs related thereto), and no further notice or Court approval to consummate the *De Minimis* Sale will be required or necessary. The Debtors may consummate a *De Minimis* Sale prior to the expiration of the applicable Notice Period if they obtain each Interested Party's written consent to such *De Minimis* Sale.

**EFFECTS OF SALE**

22.     All buyers will take assets sold by the Debtors pursuant to the *De Minimis* Sale Procedures subject to the terms of the documentation executed in connection with the sale, which may, but is not required to, include provisions that the buyers are taking the assets "as is" and "where is," without any representations or warranties from the Debtors or the estates as to the quality or fitness of such assets for either their intended purpose or any particular purpose.

23.     Pursuant to Bankruptcy Code Section 363(f), all sales of assets and interests in assets pursuant to this Motion shall be free and clear of all Liens, if any, and any such valid, and where applicable perfected, Liens will attach to the proceeds of the sale with the same force, validity, priority, perfection and effect as such Liens had on the assets and interests in assets immediately prior to the sale, subject to the rights, claims, defenses and objections, if any, of the Debtors or the Creditors' Committee. Notwithstanding the foregoing, nothing in this Motion shall be construed to invalidate or subordinate any duly perfected, non-voidable, valid liens of governmental units for personal property taxes, real property taxes, special taxes, special assessments, and infrastructure improvement taxes arising before or after the commencement of these Chapter 11 cases to the extent that such liens of governmental units take priority over previously granted and perfected consensual liens or security interests in assets of the Debtors under applicable non-bankruptcy law.

## THE QUARTERLY REPORT

24.     On or before the 30th day following each calendar quarter in which the Debtors consummate a *De Minimis* Sale, commencing with the calendar quarter beginning on August 1, 2012, the Debtors will file and serve on the Creditors' Committee a report summarizing all Limited Notice *De Minimis* Sales and Noticed *De Minimis* Sales that were consummated during the immediately preceding calendar quarter (each, a "Quarterly Report").  With respect to each applicable sale, each Quarterly Report shall include:

(i) a description of the assets sold;

(ii) the identity of the purchaser and any relationship such party has with the Debtors and their estates;

(iii) the total consideration received in connection with the sale; and

(iv) the identity of any broker(s), and the amount of the commissions paid to such broker(s).

25.     The Debtors respectfully submit that the proposed *De Minimis* Sale Procedures represent the exercise of sound business judgment, are fair and appropriate, and balance the need for an expeditious reduction of burdensome costs to the estates with the provision of advance notice of proposed asset dispositions.

## BASIS FOR THE RELIEF REQUESTED

26.     For the reasons discussed herein, the Court should grant the relief requested and approve the proposed *De Minimis* Sale Procedures. The Court should approve the *De Minimis* Sale Procedures because they: (a) constitute an exercise of the Debtors' sound business judgment; (b) satisfy the notice and hearing requirements of Section 363(b)(1) and implicit in Section 365(a); (c) satisfy the requirements of Section 363(f), which allows the Debtors to sell property free and clear of liens, claims, and encumbrances; and (d) enable the Debtors to maximize the value of the assets for the benefit of the estates' stakeholders, while providing adequate procedural safeguards, free from prejudice to any party.  Indeed, as discussed below in greater detail, similar procedures are frequently approved in large or complex cases such as these.

**B.      The Proposed *De Minimis* Sale Procedures are an Exercise of the Debtors' Sound Business Judgment.**

27.     Bankruptcy Code Section 363 allows for the use (or sale) of property of the debtor's estate outside of the ordinary course of business.  Specifically, Section 363(b)(1) states that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b)(1).  Courts in the Second Circuit have explained that, in determining whether to allow a use or lease of property of the estate other than in the ordinary course of business, courts "have required that it be based upon the sound

business judgment of the debtor." *In re RSL COM Primeall, Inc.*, No. 01-11457, 2002 Bankr.

LEXIS 367, at *27 (Bankr. S.D.N.Y. Apr. 11, 2002).[6]  When considering whether Section 363(b)

applies, the Second Circuit, "requires that a judge… expressly find from the evidence presented

before him at the hearing a good business reason to grant such an application." *In re The Lionel

Corp.*, 722 F.2d at 1071.

28.     In addition, this Court has recognized that the business judgment of the estate

representative is entitled to great deference by the Court.

> Indeed 'the trustee or DIP is entitled to great judicial deference in
> deciding which bid to accept as the best and highest bid on the sale
> of the Debtor's assets; and although the trustee's or DIP's
> discretion is not without limit, the Court should not step in and
> assume a role and responsibility properly placed by the Code in
> another's hands.'

*In re Borders Group, Inc.*, 453 B.R. 477, at 483 (Bankr. S.D.N.Y. 2011) (internal citations

omitted); *see also In re Lakeside Dev., LLC*, No. 11-05211, 2012 Bankr. LEXIS 695, at *10

(Bankr. D.S.C. Feb. 24, 2012) ("An exercise of such business judgment includes disposition of

property if the trustee determines that such disposition is in the best interest of the estate.").

29.     Bankruptcy Code Section 105 provides that "[t]he Court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a).  The Debtors submit that the sale of property upon the terms set forth herein is

both an exercise of sound business judgment and in the best interests of the estates and their

creditors.  Disposing of these *de minimis* assets in the manner proposed herein is the most

efficient and cost-effective means of maximizing the value to be realized without compromising

---

[6] *See also Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a
substantial part of a Chapter 11 estate…may be conducted if a good business reason exists to support it."); *Official
Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141 (2d Cir. 1992) (holding that
there must be a good business reason to grant a motion to sell assets under Bankruptcy Code section 363(b)); *Comm.
of Equity Sec. Holders v. Lionel Corp (In re The Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

fundamental procedural safeguards for the proper administration of the estates.  Obtaining Court

approval for each such sale transaction would result in unnecessary time delays and

administrative costs, as well as fees incurred by attorneys for Court appearances, which could

drastically reduce the ultimate net value of these assets.  The proceeds generated by many of the

*De Minimis* Sales do not warrant the incurrence of such expenses. The Debtors have significant

experience with these types of sales and, as a result, are capable of obtaining the best sale price

possible.

        30.     Notably, while the Debtors request authorization to sell assets for a purchase price

of up to $15 million, the Debtors believe that many individual transactions will be for

substantially less. Further, in light of the size of the Debtors' estates, the proposed sale price

limitations are relatively modest and appropriate. The estates are further protected by the

opportunity for Interested Parties, including the Creditors' Committee and the U.S. Trustee, to

review and object to any *De Minimis* Sale.

**C.**     **The Proposed *De Minimis* Sale Procedures Satisfy the Notice and Hearing
Requirements of Bankruptcy Code Section 363(b)(1).**

        31.     The notice and hearing requirements contained in Bankruptcy Code Section

363(b)(1) are satisfied if appropriate notice and an opportunity for a hearing are given in light of

the particular circumstances of the proposed sale.  *See* 11 U.S.C. § 102(1)(A).  Generally,

Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty (20) days' notice of

proposed sales of property outside the ordinary course of business be provided by mail to "the

debtor, the trustee, all creditors and indenture trustees" and any committee appointed under

Bankruptcy Code Section 1102, unless the Court for "cause" shown shortens the time or directs

another method of giving notice.  Moreover, courts are authorized to limit notice of asset sales

outside of the ordinary course of a debtor's business, even without a prior showing of cause, to

any official committee appointed under Bankruptcy Code Section 1102 and any creditor or equity holder requesting notice. *See* Bankruptcy Rule 2002(i).

32.    Furthermore, notwithstanding the requirement under Section 363(b)(1) for "notice and a hearing," sales are authorized without an actual hearing if no party in interest timely requests such a hearing. *See* 11 U.S.C. § 102(1)(B)(i) (notwithstanding the statutory requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an actual hearing if such notice is given properly and if such hearing is not requested timely by a party in interest.").

33.    The Debtors submit that sufficient cause exists to implement the modified notice provisions proposed herein because these modified notice procedures will improve the efficiency of the sale process for *de minimis* assets and maximize the value of the assets for the benefit of their estates and creditors. In addition, the Debtors will have provided proper notice of this Motion, and notice of this Motion serves the purpose of notice and a hearing.  Furthermore, if the sales are to be free and clear of Liens or involve the assumption, assignment, or rejection of executory contracts, the relevant parties in interest will receive appropriate notice and an opportunity to object.

**D.    Broker Commissions Should be Approved.**

34.    The payment of commissions and fees to brokers engaged by the Debtors to sell *de minimis* assets is in the best interest of the Debtors' estates and their creditors. The Debtors believe that the use of a broker will, in certain circumstances, expedite the disposition process and maximize the value of the *de minimis* assets.[7]

35.    Approving the commissions and fees as part of the *De Minimis* Sale Procedures will save the fees associated with preparing and prosecuting fee applications. The commissions

---

[7]    As noted above, to the extent not previously authorized by this Court or as otherwise required by applicable law, the Debtors will seek Court authority to retain any brokers or liquidators to assist the Debtors in *De Minimis* Sales.

and fees will represent only a fraction of the value of any *de minimis* asset sold pursuant to the

*De Minimis* Sale Procedures and are not significant relative to the aggregate size of the Debtors'

estates.

**E.     The Proposed *De Minimis* Sale Procedures Satisfy the Requirements of Bankruptcy
Code Section 363(f) to Permit the Debtors to Sell Property Free and Clear of Liens,
Claims, and Encumbrances**

36.     Bankruptcy Code Section 363(f) permits a debtor to sell property free and clear of

another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free

and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price

of the property exceeds the value of all liens on the property; (d) the interest is in bona fide

dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to

accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f). *See Smart World Techs., LLC v.*

*Juno Online Servcs., Inc. (In re Smart World Techs,. LLC)*, 423 F.3d 166, 169 n.3 (2d Cir. 2005)

("Section 363 permits sales of assets free and clear of claims and interests. It thus allows

purchasers . . . to acquire assets [from a debtor] without any accompanying liabilities.");

*Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994)

(failure to object to sale free and clear of liens, claims and encumbrances satisfies Section

363(f)(2)); *Citicorp Homeowners Servs. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988)

(finding that court may approve sale "free and clear" provided at least one of the subsections

above is met, and that failure to object on notice satisfies 363(f)(2)); *In re Dundee Equity Corp.*,

No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in

the disjunctive, such that the sale of the interest concerned may occur if any one of the conditions

of § 363(f) have been met."); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass.

1994) (interpreting Section 363(f)(5) to mean "a payment constituting less than full payment of

the underlying debt.").  Pursuant to the Debtors' cash collateral and cash management orders, the

Debtors segregate cash generated from specific items of collateral, including cash proceeds from any sale of collateral, to specific accounts for the benefit of the financing facilities to which the assets were pledged. The Debtors will maintain these practices with any sale proceeds from *De Minimis* Sales.

37.    Assets encumbered by interests held by other parties may be sold pursuant to the *De Minimis* Sale Procedures only if the transaction satisfies at least one of the five enumerated requirements of Bankruptcy Code Section 363(f). Accordingly, any sale consummated pursuant to the *De Minimis* Sale Procedures will satisfy Section 363(f) and will be sold free and clear of Liens. Moreover, as noted above, the Debtors propose that such Liens attach to the proceeds of the sales.

### F.    The Assumption, Assignment, or Rejection of Related Executory Contracts or Unexpired Leases Should be Approved

38.    The Bankruptcy Code authorizes the Debtors to assume, assign or reject executory contracts and unexpired leases, "subject to the Court's approval," under Section 365. 11 U.S.C. § 365. Subject to consent from the court, Section 365 "permits the . . . debtor-in-possession . . . to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *COR Route 5 Co. v. Penn Traffic Co. (In re The Penn Traffic Co.)*, 524 F.3d 373, 382 (2d. Cir. 2008) (quoting *In re Orion*, 4 F.3d at 1098). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate…." *In re Orion*, 4 F.3d at 1098. The applicable standard for approval of assumption or rejection is whether the debtor's decision is made within its sound business judgment. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984). Indeed, the

application of the business judgment standard in determining whether to permit a debtor to assume or reject executory contracts underscores the principle that the Debtors' interests are paramount in making the determination. *See In re The Penn Traffic Co.*, 524 F.3d at 383.

39.     In some cases, the Debtors anticipate that the assumption or assumption and assignment of certain executory contracts or unexpired leases related to certain *de minimis* assets will enhance the Debtors' ability to maximize the consideration paid for the related asset. Moreover, the Debtors anticipate that purchasers may require certainty regarding whether the purchaser will take assignment of the related contracts or leases in connection with the sale.  In other cases, it is possible that the sale of an asset will render a particular executory contract or unexpired lease of no use to the estates, thereby justifying rejection. The decision whether to assume, assign, or reject such contracts and leases is within the Debtors' business judgment and will be made in the best interests of the estates and creditors. *See In re MF Global Holdings Ltd.*, No. 11-15059 (MG), 466 B.R. 239, 241-242 (Bankr. S.D.N.Y. 2012) and the cases cited therein. The non-debtor counterparties to such contracts and leases are not prejudiced because the *De Minimis* Sale Procedures require that they receive notice, including proposed cure amounts, and provide an opportunity for such parties to object. Accordingly, the requirements of Bankruptcy Code Section 365 will be satisfied under the Sale Notice Procedures.

**G.     Similar Procedures Have Been Approved in Other Cases**

40.     Courts in this district have recognized the benefits of streamlined procedures to dispose of *de minimis* assets and the legal justifications described above, and have approved similar procedures. *See, e.g., In re Borders Group Inc.,* Case No. 11-10614 (MG) (Bankr. S.D.N.Y. May 16, 2011) (Docket No. 843) (approving similar procedures for the sale of assets up to $1 million, including notice procedures with a 5 day notice period, and a finding regarding good faith after the submission of a declaration to the court.); *In re Mesa Air Group, Inc.*, Case

No. 10-10018 (MG) (Bankr. S.D.N.Y. Feb. 25, 2010) (Docket No. 371) (approving similar

procedures for the sale of assets up to $750,000, including notice procedures with a 5 day notice

period and a finding regarding good faith after the submission of a declaration to the court.); *In

re Old Carco LLC*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. June 18, 2009) (Docket No.

4122) (approving similar procedures for non-noticed sales up to $1 million and noticed sales up

to $10 million, whether by private sale or by auction, including a finding regarding good faith,

payment of related fees and commissions, and the assumption, assignment, or rejection of certain

related contracts); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y.

Apr. 15, 2009) (Docket No. 187) (approving similar procedures for the sale of assets up to $15

million, including notice procedures with a 5 day notice period and a finding regarding good

faith); *In re Lyondell Chem. Co.*, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Mar. 12, 2009)

(Docket No. 1196) (approving similar procedures for non-noticed sales up to $1 million and

noticed sales up to $10 million, including market rate broker commissions, sales free and clear

pursuant to Section 363(f), quarterly reporting, and a finding regarding good faith); *In re Motors

Liquidation Co.,* Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Aug. 18, 2009) (Docket No. 3830)

(approving procedures for non-noticed and noticed asset sales at certain sale price thresholds,

sales free and clear pursuant to Bankruptcy Code Section 363(f), quarterly reporting, and a

finding of good faith).

     41.    Copies of the referenced orders for each of Borders Group, MF Global, Old Carco

LLC, Charter, and Lyondell are attached as Exhibits A, B, C, D, and E respectively.  Each order

was entered on a final basis after notice and a hearing, although the extent to which each Court

relied on the relevant provisions is not clear from the orders.  With respect to factual findings,

each order indicates that sufficient notice was provided, and that the transactions are deemed to be arm's-length transactions.

## NOTICE

42.    Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the office of the United States Attorney General; (c) the office of the New York Attorney General; (d) the office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) each of the Debtors' prepetition lenders, or their agents, if applicable; (h) each of the indenture trustees for the Debtors' outstanding notes issuances; (i) counsel for AFI Financial Inc.; (j) counsel for Barclays Bank PLC, as administrative agent for the lenders under the debtor in possession financing facility; (k) Nationstar Mortgage LLC and its counsel; (l) counsel for the Creditors' Committee; and (m) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

*[Remainder of page intentionally left blank]*

## <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: August 10, 2012

New York, New York

*/s/* Todd M. Goren
Todd M. Goren
Samantha Martin
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*