# <u>Exhibit A</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| **BORDERS GROUP, INC.,** *et al.*,[1] | Case No. 11-10614 (MG) |
| Debtors. | (Jointly Administered) |

### ORDER APPROVING PROCEDURES FOR THE SALE OR TRANSFER OF DE MINIMIS ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES WITHOUT FURTHER COURT APPROVAL

Upon the Motion,[2] dated April 20, 2011, of Borders Group, Inc. ("BGI") and its debtor subsidiaries, including Borders, Inc., as debtors and debtors in possession (collectively, the "Debtors") for an Order (this "Order") Approving Procedures of the Sale or Transfer of De Minimis Assets Free and Clear of Liens, Claims and Encumbrances Without Further Court Approval; and the Court having jurisdiction to consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors having provided notice of the Motion and Hearing (as defined below) to the Notice Parties; and the Court having held a hearing to consider the requested relief (the "Hearing"); and upon the record of the Hearing, and all of the proceedings before the Court, the Court having rendered a written opinion, dated May 12, 2011; and the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

Court finds and determines that the requested relief is in the best interests of the Debtors, their estates, creditors, and all parties in interest; the Debtors have provided due and proper notice of the Motion and Hearing and no further notice is necessary; the legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested herein; IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as provided herein.

2.      Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to sell or transfer De Minimis Assets in accordance with the following De Minimis Asset Sale Procedures:

a.      With regard to the sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price less than or equal to $300,000:

(i)      the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of the estates, without further order of the Court or notice to any party, other than the: (i) the DIP Agents in accordance with the terms and conditions of the DIP Credit Agreement; (ii) counsel for the official committee of unsecured creditors; (iii) the Office of the United States Trustee for the Southern District of New York, and (iv) any known affected creditor asserting a Lien on the relevant De Minimis Assets, in the form and manner described in sections b(iii) and (iv) below; and any objections will be governed in accordance with sections b(v) and (vi) below; and

(ii)      any such transactions shall be free and clear of all Liens with such Liens attaching only to the sale proceeds with the same validity, extent and priority existing immediately prior to the transaction.

b.      With regard to the sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price greater than $300,000 and less than or equal to $1,000,000:

(i)    the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of the estates, without further order of the Court, subject to the procedures set forth herein;

(ii)    any such transactions shall be free and clear of all Liens with such Liens attaching only to the sale proceeds with the same validity, extent and priority existing immediately prior to the transaction;

(iii)    the Debtors shall, at least five (5) business days prior to the date of closing such sale or effectuating such transfer, provide a Sale Notice via email or overnight mail to (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, New York, New York 10004 (Attn: Tracy Davis, Esq. and Linda Riffkin, Esq.); (ii) Lowenstein Sandler PC, counsel for the official committee of unsecured creditors, 65 Livingston Avenue, Roseland, New Jersey 07068 (Attn: Bruce D. Buechler, Esq. and Paul Kizel, Esq.), and 1251 Avenue of the Americas, New York, New York 10020 (Attn: Bruce S. Nathan, Esq.); (iii) counsel for the DIP Agents: (a) Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178-0060 (Attn: Wendy Walker, Esq.), and 225 Franklin Street, 16th Floor, Boston, Massachusetts 02110-4104 (Attn: Sandra Vrejan, Esq.), counsel for the Working Capital Agent, and (b) Choate Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110 (Attn: Kevin Simard, Esq.), counsel for GA Capital LLC; (iv) Kelley Drye & Warren LLP, attorneys for certain landlords, 101 Park Avenue, New York, New York 10178 (Attn: James S. Carr, Esq., Robert L. LeHane, Esq., and Benjamin D. Feder, Esq.); (v) Bingham McCutchen LLP, attorneys for Bank of America, N.A., One Federal Street, Boston, Massachusetts 02110-1726 (Attn: Julia Frost-Davies, Esq. and Andrew Gallo, Esq.); (vi) any known affected creditor asserting a Lien on the relevant De Minimis Assets; and (vii) those parties requesting notice pursuant to Bankruptcy Rule 2002 (the parties set forth above other than in clause (iii), collectively, the "Notice Parties"); and the Debtors shall file a copy of the Sale Notice on the Court's electronic filing system; and

(iv)    the content of the Sale Notice shall consist of:  (a) identification of the De Minimis Assets being sold or transferred; (b) identification of the purchaser of the assets; (c) the net book value of the assets, if known (d) the purchase price; and (e) the significant terms of the sale or transfer (which may include attaching the transaction agreement);

(v)    if no written objections are filed with the Court and timely served on counsel for the Debtors by the Notice Parties by 4:00 p.m. (Eastern Time) on the fifth (5th) business day after service of such Sale Notice, the Debtors are authorized to immediately consummate such transaction; and

(vi)     if a written objection is received from a Notice Party within such five business day (5-day) period that cannot be resolved, the relevant De Minimis Assets shall only be sold upon withdrawal of such written objection or further order of the Court.

c.     Any sale or transfer of De Minimis Assets shall be subject to the Debtors' compliance with the terms and conditions of the DIP Credit Agreement including, without limitation, all notice and consent requirements set forth therein

3.     Sales to "insiders," as that term is defined in section 101 of the Bankruptcy Code, are excluded from this Order.

4.     If any party who received proper notice did not object to the relief requested in the Motion and did not file a timely objection to the sale or transfer of De Minimis Assets in accordance with the terms of this Order, then such party shall be determined to "consent" to such sale or transfer within the meaning of section 363(f)(2) of the Bankruptcy Code. Notwithstanding the forgoing, nothing herein shall be deemed consent by the DIP Lenders or DIP Agent.

5.     Except as specifically provided in the applicable sale or transfer document, sales and transfers of De Minimis Assets shall be free and clear of all Liens, with such Liens attaching to the proceeds of such sale or transfer with the same validity, enforceability, extent and priority as had attached to such De Minimis Assets immediately prior to the closing of such sale or transfer.

6.     The Sale Notice with regard to the sale or transfer of De Minimis Assets substantially in the form attached to the Motion as **Exhibit B** is hereby authorized and approved.

7.     All consideration for sale or transfer of De Minimis Assets shall be in cash or cash equivalents, and no other form of consideration is authorized or approved by this Order.

8.     The Debtors shall provide a written report to the Court and Notice Parties beginning with the calendar quarter ending on June 30, 2011, and each calendar quarter

4

thereafter, no later than fifteen (15) days after the end of each such calendar quarter, concerning any such sales or transfers made during the preceding calendar quarter pursuant hereto, including the names of the purchasing parties and the types and amounts of the sales or transfers; provided that the Debtors shall have no additional reporting obligations with respect to sales of De Minimis Assets following the Debtors' filing a report pursuant to this Order thirty (30) days after confirmation of a chapter 11 plan.

9.      This Order does not apply to any sale or transfer of De Minimis Assets with an aggregate selling price of greater than $1,000,000.

10.     Service of the Sale Notice is sufficient notice of the sale or transfer of such De Minimis Assets.

11.     If the Debtors wish to provide any buyer with the protections of 11 U.S.C. § 363(m), the Debtors shall file with the Court a declaration (a "Section 363(m) Declaration") of appropriate parties attesting to the buyer's good faith in connection with the proposed transaction for purposes of protection under section 363(m) of the Bankruptcy Code.  If no written objections are filed with the Court and timely served on counsel for the Debtors within five business days (5) after service of such Section 363(m) Declaration, the Debtors may file a proposed order on presentment.

12.     The Debtors will seek Court authority to retain any brokers, auctioneers or liquidators assisting the Debtors in the sale or transfer of De Minimis Assets.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5

15.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

16.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the local rules of the Court are satisfied by such notice.

17.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: May 16, 2011
      New York, New York

                                       **/s/Martin Glenn**
                                      UNITED STATES BANKRUPTCY JUDGE

# **Exhibit B**

12-12020-mgg   Doc 6204-2   Filed 08/20/12   Entered 08/20/13 17:48:15   Exhibits A-
E   Pg 10 of 48

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                       :

In re                       :  Chapter 11
                       :

MF GLOBAL HOLDINGS LTD., *et al.*,  :  Case No. 11-15059 (MG)
                       :

         Debtors.        :  (Jointly Administered)
                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, AND 365 TO (A) ESTABLISH**
**PROCEDURES FOR THE SALE OR DISPOSAL OF *DE MINIMIS* ASSETS; AND**
**(B) AUTHORIZE THE TRUSTEE TO (I) PAY RELATED FEES, AND (II) ASSUME,**
**ASSUME AND ASSIGN, OR REJECT RELATED EXECUTORY CONTRACTS**
**OR UNEXPIRED LEASES**

Upon the motion (the "Motion"),[1] dated March 22, 2012, of Louis J. Freeh (the

"Trustee"), Chapter 11 Trustee of MF Global Holdings Ltd., MF Global Finance USA Inc., MF

Global Capital LLC, MF Global FX Clear LLC, MF Global Market Services LLC, and MF

Global Holdings USA Inc. (collectively, the "Debtors"), pursuant to Sections 105(a), 363 and

365 of title 11 of the United States Code, for entry of an order establishing procedures for the

sale of *de minimis* assets, whether by private sale or auction, including the payment of related

brokers' commissions and auctioneer fees, and the assumption, assumption and assignment, or

rejection of related executory contracts or unexpired leases, all as more fully set forth in the

Motion; and it appearing that proper and adequate notice of the Motion has been given and that

no other or further notice is necessary; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it is hereby:

ORDERED THAT:

      1.     The relief requested in the Motion is GRANTED as provided herein.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2.      The *De Minimis* Sale Procedures are approved as follows:

**B.      Sale Price Less than or Equal to $500,000**

3.      The Trustee is hereby authorized to sell the Debtors' assets in any individual transaction or series of related transactions to a single buyer or group of related buyers for total consideration of less than or equal to $500,000 (each, a "Limited Notice *De Minimis* Sale") without further Court approval, and by providing notice of the Limited Notice *De Minimis* Sale, whether by private sale or by auction, only to the following parties:

> (i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004;
>
> (ii) counsel to the Statutory Creditors' Committee, Dewey & Lebouef, 1301 Avenue of the Americas, New York, NY 10019 (Attn: Martin Bienenstock and Michael Kessler)
>
> (iii) counsel to the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004-1482 (Attn: Ethan Litwin)
>
> (iv) the Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: Joseph Cordaro, Esq.);
>
> (v) any known affected creditor asserting a lien on the relevant *de minimis* asset.

4.      The Trustee is further authorized to take any actions that are reasonable and necessary to close the Limited Notice *De Minimis* Sale and obtain the sale proceeds, including paying reasonable commissions and fees to third-party sale agents or auctioneers in connection with the Limited Notice *De Minimis* Sale, upon further authorization by the Court.

5.      If the Trustee seeks to assume, assume and assign, or reject executory contracts or unexpired leases relating to and in connection with an asset sale that would otherwise qualify as a Limited Notice *De Minimis* Sale, the Trustee shall seek to sell those assets pursuant to the Noticed *De Minimis* Sale Procedures (as defined below).

**C.    Sale Price Greater Than $500,000 But Less Than or Equal to $2 Million.**

6.    The Trustee is hereby authorized to sell the Debtors' assets in any individual transaction or series of related transactions to a single buyer or group of related buyers for total consideration of more than $500,000 but less than $2 million (each, a "Noticed *De Minimis* Sale") without further Court approval, after providing notice to the Interested Parties.

7.    If the Trustee proposes a Noticed *De Minimis* Sale, the Trustee shall serve a notice of such proposed sale (a "Sale Notice") by facsimile, email, overnight delivery, or hand delivery on the following parties:

> (i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004;
>
> (ii) counsel to the Statutory Creditors' Committee, Dewey & Lebouef, 1301 Avenue of the Americas, New York, NY 10019 (Attn: Martin Bienenstock and Michael Kessler);
>
> (iii) counsel for the Debtors' prepetition financing facility;
>
> (iv) counsel to the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004-1482 (Attn: Ethan Litwin)
>
> (v) the Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: Joseph Cordaro, Esq.);
>
> (vi) all known parties holding or asserting liens, claims, interests or encumbrances on the assets that are the subject of the proposed Noticed *De Minimis* Sale and, if known, their respective counsel; and
>
> (vii) any counterparty (or any such counterparty's counsel) to any executory contracts or unexpired leases related to the property as described in the Sale Notice that the Trustee is seeking to assume, assume and assign to the purchaser of the assets, or reject, in connection with this sale.

((i)-(vi) shall be referred to herein collectively with the notice parties for the Limited Notice *De Minimis* Sales as the "Interested Parties").  Interested Parties shall have (i) five (5) business days

from service of the Sale Notice to file and serve any objections to a Limited Notice *De Minimis* Sale and (ii) ten (10) business days from service of the Sale Notice to file and serve any objections to a Noticed *De Minimis* Sale (the "Notice Period").

8.      With respect to all *De Minimis* Sales, the Sale Notice will specify:

(i) a description of the asset proposed to be sold and its location;

(ii) (a) an identification of the executory contracts and unexpired leases, if any, to be assumed, assumed and assigned, or rejected in connection with the sale, (b) the amounts the Trustee believes are required to cure any defaults pursuant to Bankruptcy Code Section 365(b), (c) a statement regarding the adequate assurance of future performance by the proposed assignee, consistent with Bankruptcy Code Section 365, and (d) with respect to executory contracts and unexpired leases to be rejected: (I) the proposed effective date for the rejection, (II) notice of the bar date for claims arising from the rejection, and (III) that if any of the Debtors has deposited funds with the counterparty as a security deposit or other arrangement, such counterparty may not set off or otherwise use such deposit without the prior authority of the Court or agreement between the counterparty and the Trustee;[2]

(iii) the identities of any parties holding or asserting liens, claims, interests or encumbrances in the property and a statement indicating how the Trustee proposes to satisfy Bankruptcy Code Section 363(f) with respect thereto; and

(iv) instructions regarding the procedures to assert objections to the Noticed *De Minimis* Sale.

9.      If the transaction is to be a private sale, the Sale Notice will also specify:

(i) the identity of the proposed purchaser (including a statement indicating whether the proposed purchaser is an "insider" as defined in Bankruptcy Code Section 101(31)); and

(ii) the major economic terms and conditions of the Noticed *De Minimis* Sale.[3]

---

[2] For the avoidance of doubt, the rejection procedures described herein shall relate solely to executory contracts and unexpired leases that are rejected in connection with *De Minimis* Sales and are distinct from the procedures prescribed in the *Order Signed on 3/15/2012 Approving Procedures Regarding the Future Rejection of Executory Contracts* (Docket No. 566).

[3] This information may be provided by attaching the applicable contract or contracts to the Sale Notice.

10.     If the transaction is to be by auction, the Sale Notice will also specify:

    (i) the date, time and place of the auction;

    (ii) the minimum acceptable bid; and

    (iii) any terms and conditions of sale to be imposed at the auction, including minimum overbids, acceptable payment methods or required deposits.

11.     Objections to all *De Minimis* Sales, including objections that relate to the assumption, assignment, or rejection of related contracts (the "Objections"), shall be in writing, filed with the Court, and served on the applicable Interested Parties and counsel to the Trustee so as to be received by all such parties prior to 4:00 p.m. (prevailing Eastern Time) on the last day of the Notice Period. Each Objection must state with specificity the grounds for the Objection.

12.     If any significant economic terms of a *De Minimis* Sale are amended in a negative manner after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the Trustee shall serve a revised Sale Notice on all applicable Interested Parties describing the proposed *De Minimis* Sale, as amended. If a revised Sale Notice is required, the Notice Period will expire on the later of the original Notice Period expiration date or five (5) calendar days from service of the revised Sale Notice.

13.     If an Objection to a *De Minimis* Sale is properly filed and served by an Interested Party:

    (i) The Trustee may negotiate with the party filing the Objection and may change the terms of the sale without the requirement of further notice, as long as the revised terms are no more onerous to the Trustee than those set forth in the Sale Notice.

    (ii) The *De Minimis* Sale may not proceed absent (a) withdrawal of the Objection; or (b) entry of an order by the Court specifically approving the *De Minimis* Sale.

(iii) The Trustee may schedule a hearing on the *De Minimis* Sale and, upon the scheduling of such a hearing, the Trustee will provide notice of the hearing on the party filing the Objection and the Interested Parties.

14.      If no Objection to a *De Minimis* Sale is filed and served by an Interested Party consistent with the *De Minimis* Sale Procedures, such *De Minimis* Sale will be deemed final and fully authorized by the Court under the terms of this Order, including the payment of related brokers' commissions or auctioneer fees, if applicable, and the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, if applicable (including the payment of cure costs related thereto), and no further notice or Court approval to consummate the *De Minimis* Sale will be required or necessary. The Trustee may consummate a *De Minimis* Sale prior to the expiration of the applicable Notice Period if he obtains each Interested Party's written consent to such *De Minimis* Sale.

15.      In the case of a Sale Notice for a transaction to proceed by auction, the Trustee may sell the applicable *de minimis* asset at the auction for any price above the minimum bid, even if the sale price exceeds the applicable threshold for the *De Minimis* Sale Procedures.

**D.      Effects of Sale**

16.      Pursuant to Bankruptcy Code Section 363(f), all sales of property and interests in property pursuant to this Order shall be free and clear of all liens, claims, interests and encumbrances (the "Liens"), if any, and any such valid, and where applicable perfected, Liens will attach to the proceeds of the sale, subject to the rights, claims, defenses and objections, if any, of the Trustee or the Statutory Creditors' Committee. Notwithstanding the foregoing, nothing in this Order shall be construed to invalidate or subordinate any duly perfected, non-voidable, valid liens of governmental units for personal property taxes, real property taxes, special taxes, special assessments, and infrastructure improvement taxes arising before or after

6

the commencement of these Cases to the extent that such liens of governmental units take priority over previously granted and perfected consensual liens or security interests in property of the Trustee under applicable non-bankruptcy law.

17.    All buyers will take assets sold by the Trustee pursuant to the *De Minimis* Sale Procedures subject to the terms of the documentation executed in connection with the sale, which may include provisions that the buyers are taking the assets "as is" and "where is," without any representations or warranties from the Trustee as to the quality or fitness of such assets for either their intended purpose or any particular purpose.

18.    If the Trustee desires to provide any buyer with the protections of Section 363(m), the Trustee shall file with the Court a declaration or declarations of appropriate parties attesting to the buyer's good faith in connection with the proposed transaction for purposes of protection under Bankruptcy Code Section 365(m) (the "§ 363(m) Declaration").  If no written objections are filed with the Court and timely served on counsel for the Trustee within the applicable Notice Period after service of such § 363(m) Declaration, the Trustee may file a proposed order, on notice of presentment, which finds that the transaction comports with Section 365(m).

19.    Upon the closing of a private sale or auction pursuant to the Noticed *De Minimis* Sale Procedures above, the Trustee may (a) assume any executory contract or unexpired lease to be assigned to a proposed purchaser or other third party as a part of the proposed sale and provide for the payment of the related cure amount, and (b) reject any executory contract or unexpired lease identified for rejection in the Sale Notice. The counterparties to any executory contracts or unexpired leases identified in the Sale Notice pursuant to the Noticed *De Minimis* Sale Procedures are hereby barred from asserting any further cure claims in respect of such

executory contracts or unexpired leases after the objection period for a Noticed *De Minimis* Sale has passed.

20.     With respect to all Limited Notice *De Minimis* Sales and Noticed *De Minimis* Sales consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and all such sales consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies ,recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

## E.     The Quarterly Report

21.     On or before the 30th day after the commencement of each fiscal quarter commencing with the fiscal quarter beginning on April 1, 2012, the Trustee shall file and serve on the Statutory Creditors' Committee a report summarizing all Limited Notice *De Minimis* Sales and Noticed *De Minimis* Sales that were consummated during the immediately preceding fiscal quarter (each, a "Quarterly Report"). With respect to each applicable sale, each Quarterly Report shall include:

> (i) a description of the assets sold;
>
> (ii) the identity of the purchaser and any relationship such party has with the Debtors and their estates; and

(iii) the total consideration received in connection with the sale.

**F.     Miscellaneous**

22.     The Trustee will seek Court authority to retain any brokers, auctioneers or liquidators assisting the Trustee in *De Minimis* Sales.

23.     Any sale to an "insider," as defined in Bankruptcy Code Section 101(31) is excluded from this Order.

24.     To the extent applicable, the 14-day stay of Federal Rule of Bankruptcy Procedure 6004(h) is hereby waived, and this Order shall be effective immediately. Furthermore, *De Minimis* Sales shall be deemed authorized pursuant to the terms of this Order and no further or additional waivers of the 14-day stay of Federal Rule of Bankruptcy Procedure 6004(h) shall be required for the Trustee to consummate a Limited Notice *De Minimis* Sale or a Noticed *De Minimis* Sale, subject to compliance with the notice and other procedures set forth herein.

25.     The Trustee is authorized, in consultation with the Creditors' Committee, to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

26.     Nothing in this Order or any purchase agreement entered into under this Order releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order shall be deemed to allow the Trustee to abandon real or personal property in violation of any applicable state or federal laws or regulations, including but not limited to environmental laws and regulations.

27.     Nothing in this Order shall be construed to prevent the Trustee, in his sole discretion, from seeking this Court's approval at any time of any proposed sale after notice and an opportunity for a hearing.

28.     No further orders of this Court are necessary to effectuate the terms set forth herein for the transactions contemplated herein.

29.     Nothing in this Order shall authorize the Trustee to sell assets not already owned by the Debtors or their estates.

30.     The terms and conditions of this Order shall be immediately effective upon its entry.

31.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:   New York, New York
         April 12, 2012


                                        _____/s/Martin Glenn_____
                                              MARTIN GLENN
                                        United States Bankruptcy Judge

# Exhibit C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
In re                                                        :    Chapter 11
                                                             :
Old Carco LLC                                                :    Case No. 09-50002 (AJG)
(f/k/a Chrysler LLC), et al.,                                :
                                                             :    (Jointly Administered)
                                Debtors.                     :
                                                             :
-------------------------------------------------------------x
```

## ORDER, PURSUANT TO SECTIONS 105, 363 AND 365 OF THE BANKRUPTCY CODE, APPROVING PROCEDURES TO SELL CERTAIN *DE MINIMIS* ASSETS, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND TO PAY MARKET RATE COMMISSIONS AND FEES IN CONNECTION WITH SUCH SALES WITHOUT FURTHER COURT APPROVAL

This matter coming before the Court on the Motion of Debtors and Debtors in Possession, Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, for an Order Approving Procedures to Sell or Transfer Certain *De Minimis* Assets, Free and Clear of Liens, Claims and Encumbrances, and to Pay Market Rate Broker Commissions in Connection With Such Sales Without Further Court Approval (the "Motion"),[1] filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); objections to the Motion having been filed by (a) the Treasurer of Wayne County, Michigan, the Treasurer of Oakland County, Michigan and the Treasurer for the City of Detroit, (b) the Michigan Department of Environmental Quality, (c) the Ohio Attorney General and (d) the State of Missouri (collectively, the "Objections"); the Court having reviewed the Motion and the Objections and having considered the statements of counsel with respect to the Motion at a hearing before the Court

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(the "Hearing"); the Debtors having determined, in consultation with the Official Committee of

Unsecured Creditors in these cases (the "Creditors' Committee") and in response to the

Objections, to modify the proposed order sought by the Motion; and the Court having found that

(a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a

core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was

sufficient under the circumstances, (d) a sound business purpose exists to grant the relief

requested herein and (e) there is good cause to waive the ten-day stay imposed by Bankruptcy

Rules 6004(h) and 6006(d);

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED as set forth herein.

2.    Any Objections or responses to the Motion that have not been withdrawn,

waived or settled prior to the entry of this Order are hereby OVERRULED.

3.    The Debtors are authorized to consummate, without further Court

approval, arms'-length sales (each, a "Private Sale") or public auctions (each, an "Auction"),

including real and personal property (the "De Minimis Assets"), outside of the ordinary course of

business when the purchase price for a Private Sale is $10 million or less, or the book value of

assets to be sold at Auction is equal to or less than $10 million, for each transaction or in the

aggregate for a related series of transactions; provided, however, that under no circumstances

shall the Debtors consummate a Private Sale to an insider (as defined in the Bankruptcy Code)

without the prior consent of the Creditors' Committee or an order of the Court.  Any sales of

De Minimis Assets shall be free and clear of all liens, claims and encumbrances, pursuant to

section 363(f) of the Bankruptcy Code, with any such liens, claims and encumbrances attaching

to the net sale proceeds with the same force, validity, priority, perfection and effect as such liens

had on the property immediately prior to the sale.  All such sales shall be subject to the Sale

Notice Procedures (as such term is defined below) and other terms of this Order.

4.      The Debtors hereby are authorized to pay, without further Court approval,

market rate broker commissions (the "Broker Commissions") and auction fees (the "Auction

Fees" and, together with the Broker Commissions, the "Commissions") for brokers and

auctioneers utilized in connection with any sales of De Minimis Assets upon satisfaction of the

disclosure and other requirements provided herein (including obligations to consult with the

Creditors' Committee).

5.      Except with respect to sales of real property located in Michigan, Missouri

and Ohio, Private Sales of De Minimis Assets for consideration that is less than $1 million, and

Auctions where the book value of such assets is less than or equal to $1 million in the aggregate,

may be consummated by the Debtors (in consultation with the Creditors' Committee) without

further notice and hearing.  Private Sales of De Minimis Assets for more than $1 million but less

than $10 million, and Auctions where the book value of such assets is more than $1 million but

less than or equal to $10 million and any sales of real property located in Michigan, Missouri and

Ohio, are approved subject to the following notice procedures (the "Sale Notice Procedures"):

(a)      The Debtors will serve a notice of each Proposed Sale (the "Sale Notice")
on:  (i) the Office of the United States Trustee for the Southern District of
New York (the "U.S. Trustee"); (ii) counsel to the Creditors' Committee;
(iii) counsel to the DIP Lender; (iv) counsel to the administrative agent for
the First Lien Prepetition Lenders; (v) any known holder of Other Liens
asserted against the specific assets to be sold; (vi) the proposed purchaser
if the transaction is to be completed by Private Sale (the "Proposed
Purchaser"); (vii) any known interested party in the De Minimis Assets
proposed to be sold; (viii) with respect to any Proposed Sales involving
real property located in Michigan, Missouri or Ohio, the state
environmental agency for the applicable state in which such real property
is located; (ix) with respect to any Proposed Sales involving (A) real
property or (B) personal property to be sold for more than $1 million but
less than $10 million, and Auctions where the book value of such assets is

more than $1 million but less than or equal to $10 million, located in Oakland County, Michigan, Wayne County, Michigan or Detroit, Michigan, counsel to such entities; and (x) if applicable, the nondebtor counterparties to all executory contracts or unexpired leases that the Debtors propose to assume and assign or reject in connection with such Proposed Sale (collectively, the "Sale Notice Parties").  The Sale Notice will be served on the Sale Notice Parties by facsimile or e-mail, if possible, and by overnight mail.

If the transaction is to be completed by a Private Sale, the Sale Notice will specify:  (i) the assets to be sold; (ii) the identity of the Proposed Purchaser (including a statement indicating whether the Proposed Purchaser is an "insider" as defined in section 101(31) of the Bankruptcy Code); (iii) the proposed cash sale price and other consideration to be exchanged; (iv) the primary economic terms and conditions of the Proposed Sale; (v) a copy of any documentation executed in contemplation of the transaction; and (vi) the identities of any parties holding or asserting liens on other interests or potential interests in the property.  If the transaction is to be completed by Auction, the Sale Notice will specify:  (i) the assets to be sold; (ii) the date, time and place of the Auction; (iii) the minimum acceptable bid (the "Minimum Bid"); (iv) any terms and conditions of sale to be imposed at the Auction; and (v) a copy of any documentation executed or to be executed in contemplation of the transaction (including any lead bid).

In addition, any Sale Notice will specify:  (i) the identities of any parties holding or asserting liens or other interests or potential interests in the property; (ii) the executory contracts and unexpired leases, if any, that the applicable Debtor or Debtors propose to be assumed and assigned or rejected as part of the Proposed Sale; (iii) for any assumption and assignment of an executory contract or unexpired lease, the amounts required to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (collectively, the "Cure Claims"), and a statement regarding the adequate assurance of future performance by the purchaser, consistent with section 365 of the Bankruptcy Code; and (iv) an affidavit of the broker or auctioneer, if any, pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), that identifies the broker or auctioneer and the amount of the proposed Commissions and contains the disclosures required by Bankruptcy Rule 2014.  The Debtors may, but are not required to, file a copy of the Sale Notice with the Court.

(b)    The Sale Notice Parties will have until 5:00 p.m. (prevailing New York Time) on the tenth business day following the service of the Sale Notice (the "Objection Deadline") to object to the Proposed Sale and the payment of any Commissions.  Any such objection (an "Objection") must be: (i) made in writing, stating the objection with specificity; and (ii) filed with the Court and served on counsel to the Debtors and the other Sale

Notice Parties so as to be received by the Objection Deadline. The Objection Deadline and required service addresses will be identified in the Sale Notice.

(c)     If no Objection is properly filed and served by the Objection Deadline, the Debtors (having previously consulted with the Creditors' Committee) will be authorized, without further notice and without further Court approval to: (i) either (A) for De Minimis Assets to be sold by Private Sale, consummate the Proposed Sale in accordance with the terms and conditions of the underlying contract or contracts or (B) for De Minimis Assets to be sold at Auction, conduct the Auction and sell the assets at the Auction, provided, however, that no sale at an Auction may be completed for consideration below the Minimum Bid identified in the applicable Sale Notice;[2] and (ii) take such other actions as are necessary to close the transaction and collect the proceeds of such sale, including, without limitation, payment of any Commissions, and assumption and assignment or rejection of the executory contracts and unexpired leases described in the Sale Notice and payment of the Cure Claims proposed in such notice.

(d)     If a Sale Notice Party files and serves an Objection to the Proposed Sale by the Objection Deadline, the Debtors and such objecting party will use good faith efforts to resolve the objection consensually. If the Debtors and the objecting Sale Notice Party are unable to resolve the objection, the Debtors will not consummate the proposed transaction without first obtaining Court approval of such Proposed Sale, including the payment of any Commissions, upon notice and a hearing; provided, however, that, with the agreement of the Proposed Purchaser, the Debtors may consummate any portion of the Proposed Sale that is not a subject of the Objection.

(e)     Any valid and enforceable liens on the property to be sold shall attach to the net proceeds of the Proposed Sale in the same priority as existed prior to such sale and subject to any claims and defenses that the Debtors may possess with respect thereto. To the extent not inconsistent with the Final DIP Order or other orders of the Court providing access to financing or cash collateral, net sale proceeds shall be held for distribution in a segregated account, subject to distribution under a chapter 11 plan, or other appropriate order of the Court.

(f)     If the sale transaction is to be completed by a Private Sale, to the extent that a competing bid is received for the purchase of De Minimis Assets in

---

[2]     If no Notice Party files an Objection to the Minimum Bid proposed for an Auction, or any such Objections are resolved so that the Auction may proceed, the Debtors may (in consultation with the Creditors' Committee) sell the applicable De Minimis Asset at the Auction for any price above the Minimum Bid, even if the sale price exceeds $10 million.

a particular Proposed Sale after service of the Sale Notice that, in the Debtors' sound business judgment in consultation with the Creditors' Committee, materially exceeds the value of the purchase price contained in the Sale Notice, then the Debtors may file and serve an amended Sale Notice for the Proposed Sale to the subsequent bidder pursuant to the Sale Notice Procedures, even if the proposed purchase price exceeds $10 million.

(g)     The relevant Debtor or Debtors may consummate a Proposed Sale prior to the expiration of the applicable Objection Deadline if the Debtor or Debtors obtain each Notice Party's written consent to the Proposed Sale. The applicable Proposed Sale, including the assumption and assignment or rejection of executory contracts and unexpired leases proposed in connection with the sale, will be deemed final and fully authorized by the Court upon either (i) for a Private Sale, (A) the expiration of the Objection Deadline without the assertion of any Objections or (B) the written consent of all Notice Parties; or (ii) for a sale by Auction, (A) the expiration of the Objection Deadline without the assertion of any Objections or the written consent of all Notice Parties and (B) the Debtors' acceptance of a qualifying bid equal to or in excess of the Minimum Bid at the Auction.

(h)     If the sale transaction is completed at an Auction, the applicable Debtor or Debtors will file with the Court and serve upon the Notice Parties a report of the results of the Auction within ten days after the conclusion of the Auction.

6.     On July 30, 2009, and on the last business day of each calendar month thereafter, the Debtors shall file and serve upon counsel to the Creditors' Committee a report containing the following information concerning Reportable Sales (as defined below) made during the prior calendar month:  (a) a description of the assets actually sold; (b) the buyer(s) for each such transaction; and (c) for each sale, the total consideration actually received. "Reportable Sales" means Proposed Sales that have not been described in a Sale Notice and involve the sale of De Minimis Assets for consideration that is greater than $250,000.

7.     Upon the closing of a Private Sale or Auction, the Debtors may (a) assume any executory contract or unexpired lease to be assigned to a Proposed Purchaser or other non-Debtor third party as a part of the Proposed Sale and provide for the payment of the Cure Claims

disclosed in the Sale Notice (either directly or by the Proposed Purchaser consistent with the terms of the Proposed Sale) and (b) reject any executory contract or unexpired lease identified for rejection in the Sale Notice. No executory contract or unexpired lease shall be assumed absent concurrent assignment to a Proposed Purchaser or other non-Debtor third party. The nondebtor parties to any executory contracts or unexpired leases are hereby barred from asserting any further cure claims in respect of such executory contracts or unexpired leases after the objection period for a Proposed Sale has passed.

8.     The ten-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) is hereby waived with respect to each Proposed Sale conducted in accordance with this Order, and the Debtors may close Proposed Sales as set forth herein without reference to such stay.

9.     Nothing in the Sale Notice Procedures or otherwise provided in this Order shall prevent the Debtors, in their sole discretion, from seeking Court approval of any Proposed Sale upon notice and a hearing or, if necessary to comply with a condition on a sale imposed by a purchaser, to submit a separate order to the Court along with a notice of presentment to be entered without need for a hearing on the matter.

10.     Sales of De Minimis Assets conducted in accordance with this Order shall be deemed to be arm's-length transactions entitled to the protections of section 363(m) of the Bankruptcy Code.

11.     All purchasers shall take De Minimis Assets sold by the Debtors pursuant to the authority granted in this Order "as is" and "where is" without any representations or warranties from the Debtors as to quality or fitness for either their intended purposes or any particular purposes.

12.      The Debtors (in consultation with the Creditors' Committee) and their respective officers, employees and agents are authorized to perform all obligations, take whatever actions may be necessary or appropriate and issue, execute and deliver whatever documents may be necessary or appropriate to implement and effectuate any disposition of De Minimis Assets.

13.      Each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary or appropriate to consummate the disposition of De Minimis Assets.  The registrar or recorder of deeds (or other similar recording agency) is hereby directed to accept and include a certified copy of this Order along with any other appropriate conveyance documents used to record and index the transfer of any De Minimis Assets in the appropriate public records.

14.      Pursuant to the terms of the DIP Financing Agreement and Final DIP Order, the DIP Lender holds valid, duly perfected security interests in and liens upon the De Minimis Assets.  Nothing contained herein shall be deemed a waiver by the DIP Lender of any required approval or disapproval of any sale, whether pursuant to this Order or otherwise.

15.      No further orders of this Court are necessary to effectuate the terms set forth herein for the transactions contemplated herein.

16.      The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.


Dated: New York, New York
          June 18, 2009                              **s/ Arthur J. Gonzalez**
                                                     UNITED STATES BANKRUPTCY JUDGE

# **Exhibit D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CHARTER COMMUNICATIONS, INC., <u>et al.</u>, | ) Case No. 09-11435 (JMP) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## ORDER APPROVING PROCEDURES FOR THE SALE, TRANSFER OR ABANDONMENT OF DE MINIMIS ASSETS

Upon the motion (the "<u>Motion</u>") of the above-captioned debtors (collectively, the

"<u>Debtors</u>")[1] for the entry of an order (the "<u>Order</u>") approving procedures of the sale, transfer or

---

[1]   The Debtors in these cases include:  Ausable Cable TV, Inc.; Hometown TV, Inc.; Plattsburgh Cablevision, Inc.; Charter Communications Entertainment I, LLC; Falcon First Cable of New York, Inc.; Charter Communications, Inc.; Charter Communications Holding Company, LLC; CCHC, LLC; Charter Communications Holdings, LLC; CCH I Holdings, LLC; CCH I, LLC; CCH II, LLC; CCO Holdings, LLC; Charter Communications Operating, LLC; American Cable Entertainment Company, LLC; Athens Cablevision, Inc.; Cable Equities Colorado, LLC; Cable Equities of Colorado Management Corp.; CC 10, LLC; CC Fiberlink, LLC; CC Michigan, LLC; CC Systems, LLC; CC V Holdings, LLC; CC VI Fiberlink, LLC; CC VI Operating, LLC; CC VII Fiberlink, LLC; CC VIII Fiberlink, LLC; CC VIII Holdings, LLC; CC VIII Leasing of Wisconsin, LLC; CC VIII Operating, LLC; CC VIII, LLC; CCH I Capital Corp.; CCH I Holdings Capital Corp.; CCH II Capital Corp.;  CCO Fiberlink, LLC; CCO Holdings Capital Corp.; CCO NR Holdings, LLC; CCO Purchasing, LLC; Charter Advertising of Saint Louis, LLC; Charter Cable Leasing of Wisconsin, LLC; Charter Cable Operating Company, L.L.C.; Charter Cable Partners, L.L.C.; Charter Communications Entertainment, LLC; Charter Communications Entertainment I, DST; Charter Communications Entertainment II, LLC; Charter Communications Holdings Capital Corporation; Charter Communications Operating Capital Corp.; Charter Communications Properties LLC; Charter Communications V, LLC; Charter Communications Ventures, LLC; Charter Communications VI, LLC; Charter Communications VII, LLC; Charter Communications, LLC; Charter Distribution, LLC; Charter Fiberlink – Alabama, LLC; Charter Fiberlink AR-CCVII, LLC; Charter Fiberlink AZ-CCVII, LLC; Charter Fiberlink CA-CCO, LLC; Charter Fiberlink CA-CCVII, LLC; Charter Fiberlink CC VIII, LLC; Charter Fiberlink CCO, LLC; Charter Fiberlink CT-CCO, LLC; Charter Fiberlink – Georgia, LLC; Charter Fiberlink ID-CCVII, LLC; Charter Fiberlink – Illinois, LLC; Charter Fiberlink IN-CCO, LLC; Charter Fiberlink KS-CCO, LLC; Charter Fiberlink LA-CCO, LLC; Charter Fiberlink MA-CCO, LLC; Charter Fiberlink – Michigan, LLC; Charter Fiberlink – Missouri, LLC; Charter Fiberlink MS-CCVI, LLC; Charter Fiberlink NC-CCO, LLC; Charter Fiberlink NC-CCVII, LLC; Charter Fiberlink – Nebraska, LLC; Charter Fiberlink NH-CCO, LLC; Charter Fiberlink NM-CCO, LLC; Charter Fiberlink NV-CCVII, LLC; Charter Fiberlink NY-CCO, LLC; Charter Fiberlink NY-CCVII, LLC; Charter Fiberlink OH-CCO, LLC; Charter Fiberlink OK-CCVII, LLC; Charter Fiberlink OR-CCVII, LLC; Charter Fiberlink SC-CCO, LLC; Charter Fiberlink SC-CCVII, LLC; Charter Fiberlink – Tennessee, LLC; Charter Fiberlink TX-CCO, LLC; Charter Fiberlink UT-CCVII, LLC; Charter Fiberlink VA-CCO, LLC; Charter Fiberlink VT-CCO, LLC; Charter Fiberlink WA-CCVII, LLC; Charter Fiberlink – Wisconsin, LLC; Charter Fiberlink WV-CCO,



abandonment of De Minimis Assets;[2] and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED

1. The Motion is granted as set forth herein in its entirety.

2. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to sell or transfer the De Minimis Assets in accordance with the following procedures (the "De Minimis Asset Sale Procedures"):

  a. With regard to sales or transfers of the De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price[3] equal to or less than $1,000,000:

---

LLC; Charter Fiberlink, LLC; Charter Gateway, LLC; Charter Helicon, LLC; Charter Investment, Inc.; Charter RMG, LLC; Charter Stores FCN, LLC; Charter Video Electronics, Inc.; Dalton Cablevision, Inc.; Enstar Communications Corporation; Falcon Cable Communications, LLC; Falcon Cable Media, a California Limited Partnership; Falcon Cable Systems Company II, L.P.; Falcon Cablevision, a California Limited Partnership; Falcon Community Cable, L.P.; Falcon Community Ventures I, LP; Falcon First Cable of the Southeast, Inc.; Falcon First, Inc.; Falcon Telecable, a California Limited Partnership; Falcon Video Communications, L.P.; Helicon Partners I, L.P.; HPI Acquisition Co., L.L.C.; Interlink Communications Partners, LLC; Long Beach, LLC; Marcus Cable Associates, L.L.C.; Marcus Cable of Alabama, L.L.C.; Marcus Cable, Inc.; Midwest Cable Communications, Inc.; Peachtree Cable TV, L.P.; Peachtree Cable T.V., LLC; Renaissance Media LLC; Rifkin Acquisition Partners, LLC; Robin Media Group, Inc.; Scottsboro TV Cable, Inc.; Tennessee, LLC; The Helicon Group, L.P.; Tioga Cable Company, Inc.; and Vista Broadband Communications, LLC.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

[3] For purposes of these procedures, selling price shall refer to the Debtors' estimate of the net proceeds of any sale transaction.

2

i.    The Debtors are authorized to consummate such transaction(s) without further order of the Court if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interests of the estates, subject to the procedures set forth herein;

ii.   The Debtors are authorized to consummate such transaction(s) without further order of the Court if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interests of the estates, subject to the procedures set forth herein;

iii.  Any such transaction(s) shall be free and clear of all Liens, with such Liens attaching only to the sale or transfer proceeds with the same validity, extent and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer;

iv.   The Debtors shall give written notice of each such sale or transfer (a "Sale Notice") to (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and (b) counsel to the Committee at least five (5) business days prior to the closing of such sale or transfer;

v.    The content of the Sale Notice shall consist of (a) identification of the De Minimis Assets being sold or transferred, (b) identification of the purchaser of the assets, (c) the purchase price and (d) the significant terms of the sale or transfer agreement;

vi.   If no written objections from (a) the U.S. Trustee or (b) counsel to the Committee are received by the Debtors within five (5) business days after the date of receipt of such Sale Notice, then the Debtors are authorized to immediately consummate such sale or transfer after entry of an order approving such Sale under certification of counsel;

vii.  If (a) the U.S. Trustee or (b) counsel to the Committee submits a written objection to any such sale or transfer to the Debtors within five (5) business days after receipt of such Sale Notice, then the relevant De Minimis Asset shall only be sold or transferred upon either the consensual resolution of

3

the objection by the parties in question or further order of the Court after notice and a hearing; and

viii. The Debtors will provide a written report to the Court, the U.S. Trustee, counsel to the Committee and those parties requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), beginning with the calendar quarter ending on March 31, 2009, and each calendar quarter thereafter, no later than 30 days after the end of each such calendar quarter, concerning any such sales made during the preceding calendar quarter pursuant hereto, including the names of the purchasing parties and the types and amounts of the sales (each, a "<u>Quarterly Report</u>").

b. With regard to the sales or transfers of the De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price greater than $1,000,000 and up to or equal to $15,000,000:

i. The Debtors are authorized to consummate such transaction(s) without further order of the Court if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interests of the estates, subject to the procedures set forth herein;

ii. Any such transaction(s) shall be free and clear of all Liens, with such Liens attaching only to the sale or transfer proceeds with the same validity, extent and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer;

iii. The Debtors shall give a Sale Notice to (a) the U.S. Trustee; (b) counsel to the Committee; (c) any known affected creditor(s), including counsel to any creditor asserting a Lien on the relevant De Minimis Asset(s); and (d) those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>") at least five (5) business days prior to the closing of such sale or transfer;

iv. The content of the Sale Notice shall consist of (a) identification of the De Minimis Assets being sold

4

or transferred, (b) identification of the purchaser of the assets, (c) the purchase price and (d) the significant terms of the sale or transfer agreement;

v.    If no written objections from any of the Notice Parties are filed with this Court within five (5) business days after the date of receipt of such Sale Notice, then the Debtors are authorized to immediately consummate such sale or transfer after entry of an order approving such Sale under certification of counsel; and

vi.    If any Notice Party files a written objection to any such sale or transfer with the Court within five (5) business days after receipt of such Sale Notice, then the relevant De Minimis Asset shall only be sold or transferred upon either the consensual resolution of the objection by the parties in question or further order of the Court after notice and a hearing.

3.    Sales to "insiders," as that term is defined in Section 101 of the Bankruptcy Code, are not covered by this Order.

4.    Sales of De Minimis Assets shall be deemed arm's-length transactions entitled to the protections of Section 363(m) of the Bankruptcy Code.

5.    No objection to the relief requested in the Motion combined with no timely objection to the sale or transfer of the De Minimis Assets in accordance with the terms of this Order shall be determined to be "consent" to such sale or transfer within the meaning of 11 U.S.C. § 363(f)(2).

6.    The Debtors are authorized pursuant to section 554(a) of the Bankruptcy Code to abandon De Minimis Assets in accordance with the following procedures (the "De Minimis Asset Abandonment Procedures"):

a.    The Debtors shall give written notice of the abandonment (the "Abandonment Notice") to the Notice Parties;

b.    The Abandonment Notice shall contain a description in reasonable detail of the De Minimis Assets to be

abandoned and the Debtors' reasons for such abandonment;

    c.    If no written objections from any of the Notice Parties are filed with the Court within five (5) business days after the date of receipt of such Abandonment Notice, then the Debtors are authorized to immediately proceed with the abandonment; and

    d.    If a written objection from any Notice Party is filed with the Court within five (5) business days after receipt of such Abandonment Notice, then the relevant De Minimis Asset shall only be abandoned upon either the consensual resolution of the objection by the parties in question or further order of the Court after notice and a hearing.

7.    The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this order in accordance with the Motion, including paying those necessary fees and expenses incurred in the sale or abandonment of De Minimis Assets (including, but not limited to, commission fees to agents, brokers, auctioneers and liquidators).

8.    The terms and conditions of this Order shall be immediately effective and enforceable upon entry of the Order.

9.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York  
Date:  April 15, 2009

*s/ James M. Peck*  
United States Bankruptcy Judge

# **<u>Exhibit E</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------x
                                        :
In re:                                  :
                                        :          Chapter 11
                                        :
LYONDELL CHEMICAL COMPANY, et al.,      :          Case No. 09-10023
                                        :
                                        :          Jointly Administered
                        Debtors.        :
                                        :
---------------------------------------------------------------x
```

**ORDER PURSUANT TO SECTIONS 105(A), 363 AND 554 OF THE BANKRUPTCY
CODE APPROVING PROCEDURES FOR (A) THE SALE OF CERTAIN ASSETS
FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND THE
PAYMENT OF MARKET RATE BROKER COMMISSIONS IN CONNECTION
WITH SALES AND (B) THE ABANDONMENT OR DONATION OF
CERTAIN PERSONAL PROPERTY**

Upon consideration of the motion (the "Motion")[1] of Lyondell Chemical

Company and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession in the

above-captioned chapter 11 cases (collectively, the "Debtors" and each, a "Debtor"), seeking

entry of an order pursuant to sections 105(a), 363 and 554 of title 11 of the United States Code,

11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") approving procedures for (a) the

sale of certain assets free and clear of liens, claims and encumbrances and the payment of market

rate broker commissions in connection with those sales and (b) the abandonment or donation of

certain personal property; and the Court having jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. § 1334; and upon consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided; and it appearing that no other further notice need be provided;

---

[1] Capitalized terms not defined herein shall be as defined in the Motion.

and the relief requested being in the best interest of the Debtors and their estates and creditors;

and the Court having reviewed the Motion and having heard the statements in support of the

relief requested therein at the hearing before the Court (the "Hearing"); and the Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein; and all objections to the Motion having been overruled or

resolved; and upon all of the proceedings had before the Court and after due deliberation and

sufficient cause appearing therefor, it is hereby

   **ORDERED** that the Motion is granted as set forth herein; and it is further

   **ORDERED** that, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code,

the Debtors are hereby authorized to sell in accordance with the procedures set forth herein,

certain property and interests in property without further order of the Court; and it is further

   **ORDERED** that the procedures set forth below for the sale by the Debtors of

property and interest in property are hereby authorized and established in these chapter 11 cases:

> a. If the sale price[2] is less than $1,000,000, the Debtors are authorized to sell property in an arms' length transaction, without further notice or further order of the Court, <u>provided,</u> <u>however,</u> (i) that the Debtors have provided or will provide to the United States Department of Justice, to the Committee, to the DIP Agents (as defined herein), to the Prepetition Secured Lenders (as defined herein), to counsel to the Texas Commission on Environmental Quality and to the Ad Hoc Group of Senior Secured Lenders, a list of all property that they own or operate where there is a known environmental contamination and that the Debtors will not sell any such property for a sale price of less than $1,000,000 without 10 days notice to such parties; and the procedures detailed in subparagraph (b) shall apply only to the Department of Justice, the Texas Commission on Environmental Quality and the Committee with respect to any such sales; and (ii) that the sale for less than $1,000,000 of any individual asset having a book value, reasonably ascertainable by the Debtors, of $3,000,000 or more shall be governed by subparagraph (b) below. Any sale

---

[2]   For purposes of the Sale Procedures, the sale price is the net benefit estimated to be realized by the Debtors' estates (which shall include but not be limited to any liabilities to be assumed by the purchaser (to the extent quantifiable or reasonably estimable)).

shall be free and clear of all liens, claims and encumbrances, with any liens, claims and encumbrances attached to the net sale proceeds with the same force, validity, priority, perfection and effect as those liens had on the property immediately prior to the sale, subject to any claims and defenses that the Debtors may possess with respect thereto.  Net sale proceeds will be utilized by the Debtors in accordance with the terms of the Debtor-In-Possession Credit Agreement, dated as of March 3, 2009 (as amended, supplemented or otherwise modified from time to time, the "Term DIP Credit Agreement"), and the Debtor-In-Possession Credit Agreement, dated as of March 3, 2009 (as amended, supplemented or otherwise modified from time to time, the "ABL DIP Credit Agreement"; together with the Term DIP Credit Agreement, the "DIP Credit Agreement") governing the use of those proceeds.

b.  If the sale price is from $1,000,000 to $10,000,000:

(i)     The Debtors will give notice via e-mail, facsimile, or overnight delivery service of each proposed sale to (i) the Office of the United States Trustee, 33 Whitehall Street, New York, NY 10004 (Attn: Paul Schwartzberg, Esq.); (ii) Davis Polk & Wardwell, counsel to the ABL DIP Credit Agreement Agent, 450 Lexington Avenue, New York, New York 10017 (Attn: Marshall S. Huebner, Esq.) and Simpson Thacher & Bartlett LLP, counsel to the Term DIP Credit Agreement Agent, 425 Lexington Avenue, New York, New York 10017 (Attn: Kathrine A. McLendon, Esq. and Anne L. Knight, Esq.) (the ABL DIP Credit Agreement Agent and the Term DIP Credit Agreement Agent, together, the "DIP Agents"); (iii) counsel to each agent or indenture trustee for its prepetition secured lenders (together, the "Prepetition Secured Lenders"); (iv) counsel to the Committee; (v) counsel to the Ad Hoc Group of Senior Secured Lenders, Milbank, One Chase Manhattan Plaza, New York, New York 10005 (Attn: Matthew Barr, Esq.); (vi) the United States Department of Justice, 86 Chambers Street, New York, New York 10007 (Attn: Pierre G. Armand, Esq.); (vii) counsel to Occidental Chemical Company, Haynes and Boone, LLP,  2323 Victory Ave., Suite 700, Dallas, Texas 75219 (Attn: Scott Everett, Esq.); (viii) counsel to Oracle USA, Inc., Day Pitney LLP, 7 Times Square, New York, New York 10036 (Attn: Amish R. Doshi, Esq.) and Buchalter Nemer, PC, 333 Market Street San Francisco, California 94105 (Attn: Shawn M. Christianson, Esq.); (ix) counsel to the Texas Commission on Environmental Quality, Office of Attorney General of Texas, Bankruptcy & Collections Division, P.O. Box 12548, Austin, Texas 78711 (Attn: Hal F. Morris, Esq. and Ashley F. Bartram, Esq.) and (x) any other party that the Debtors believe has an interest in or lien on, or that has asserted an interest in or lien on, the relevant assets to be sold (together, the "Notice

<u>Parties</u>").  The notice will specify the assets to be sold, the identity of the purchaser, the sale price and any applicable Broker Commission (as defined herein) (the "<u>Sale Notice</u>").

(ii)     The Notice Parties will have 10 business days from the date on which the Sale Notice is sent to object to the proposed transaction.  Any objection must be in writing and delivered to counsel to the Debtors, Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY 10281 (Attn: Deryck A. Palmer, Esq. and Christopher R. Mirick, Esq.) and counsel to the Committee, Brown Rudnick LLP, Seven Times Square, New York, NY 10036 (Attn: Ed Weisfelner, Esq.).  If no timely written objection is received by Debtors' counsel, the Debtors will be authorized to consummate the proposed arms' length sale transaction and to take any actions as are reasonable or necessary to close the transaction, obtain the sale proceeds and pay the Broker Commission.  The Debtors may consummate a proposed sale promptly upon obtaining approval by the Notice Parties or passing of the 10-day period without objection.

(iii)    If any Notice Party delivers a timely objection to the proposed transaction, the Debtors and the objecting Notice Party will use good faith efforts to resolve the objection.  If the Debtors and the objecting Notice Party are unable to achieve a consensual resolution, the Debtors will not proceed with the proposed transaction pursuant to these Sale Procedures absent Court approval of the proposed transaction, which approval may be sought upon expedited notice and a hearing, subject to the Court's availability.

(iv)    If the Debtors, after service of a Sale Notice but prior to expiration of the 10-day period, receive a competing bid for an asset, that the Debtors, in their business judgment, believe exceeds the value of the sale price contained in the Sale Notice, the Debtors may file and serve an amended Sale Notice for the proposed sale to the subsequent bidder pursuant to the Sale Procedures, even if the new proposed purchase price exceeds $10,000,000.

(v)     Any sale shall be free and clear of all liens, claims and encumbrances, with any liens, claims and encumbrances attached to the net sale proceeds with the same force, validity, priority, perfection and effect as these liens had on the property immediately prior to the sale, subject to any claims and defenses that the Debtors may possess with respect thereto or that the Committee may possess, if any, on behalf of the Debtors with respect thereto.  Net sale proceeds will be utilized by the Debtors

in accordance with the terms of any postpetition financing agreement provisions governing the use of those proceeds.

(vi)    Nothing in the foregoing Sale Procedures will prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time of any proposed transaction upon notice and a hearing.

c.  If the sale price is greater than $10,000,000, the Debtors will file a motion with the Court requesting approval of the sale pursuant to section 363 of the Bankruptcy Code.

d.  The Debtors will file with the Court, on a quarterly basis beginning 90 days after entry of this Order, reports of all sales by the Debtors with a sale price of $10,000,000 or less during that quarter pursuant to the authority requested in the Motion.  The reports will set forth a description of the property, the name of the purchaser, the sale price and any applicable Broker Commission.  The Debtors shall file each report within 30 days after the end of each calendar quarter;

and it is further

**ORDERED** that no agreement for the sale of any asset under these Sale Procedures is final and binding on the Debtors, or any other party, unless and until all provisions of the Sale Procedures have been met; and it is further

**ORDERED** that, pursuant to section 363(f) of the Bankruptcy Code, all sales of property and interests in property pursuant to this Order shall be free and clear of all liens, claims and encumbrances (collectively, "Liens"), if any, with any and all valid and perfected Liens to attach to net proceeds of the sales with the same validity, priority, force and effect those Liens had on the property immediately prior to the sale, and subject to the rights, claims, defenses and objections, if any, of the Debtors or any rights, claims defenses and objections that the Committee may possess, if any, on behalf of the Debtors and of all interested parties with respect to any asserted Liens; provided, however, that if any liens exist or have been asserted against the property proposed to be sold for between $1,000,000 and $10,000,000 other than those asserted by the DIP Lenders or the lenders represented by the Prepetition Secured Lenders, (a) the lack of any timely objection by any alleged lienholder to the proposed sale shall be deemed consent by

that lienholder; and (b) if there is an objection by an alleged lienholder that the Debtors are unable to resolve, the Debtors reserve the right to request a hearing before the Court to demonstrate that section 363(f) of the Bankruptcy Code has been satisfied; and it is further

**ORDERED** that purchasers of property sold by the Debtors pursuant to this Order shall be entitled to the protections afforded by section 363(m) of the Bankruptcy Code in the event of a reversal or modification on appeal of this Order; and it is further

**ORDERED** that the sale transactions consummated pursuant to this Order shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order; and each and every federal, state, and local governmental agency or department is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title to any particular purchaser, and such agency or department shall rely upon this Order in consummating the transactions contemplated hereby; and it is further

**ORDERED** that the Debtors are authorized to pay, without further Court approval, market rate broker commissions (collectively, the "Broker Commissions" and each, a "Broker Commission") for brokers utilized in the ordinary course of the Debtors' business in connection with any sales of property and interests in property made pursuant to the Sale Procedures as provided herein; and it is further

**ORDERED** that the Debtors are authorized to abandon or donate personal property that, in their business judgment, is not needed in their ongoing businesses and

reorganization efforts, that is of inconsequential value to the estates or for which the costs associated with its sale exceed the proceeds that would be generated therefrom; and it is further

**ORDERED** that the following procedures for abandonment or donation of personal property by the Debtors are hereby authorized and established in these chapter 11 cases:

a.  The Debtors shall give notice via e-mail, facsimile, or overnight delivery service of each proposed abandonment or donation to the Notice Parties and to any party known to the Debtors as having an interest in the property to be abandoned or donated (collectively with the Notice Parties, the "Abandonment Notice Parties").  As required by Local Bankruptcy Rule 6007-1, the notice will describe the property to be abandoned or donated, the reason for the abandonment or donation, the parties known to the Debtors as having an interest in the property to be abandoned, and the entity to which the personal property is to be abandoned or donated (the "Abandonment Notice").

b.  Abandonment Notice Parties will have 10 business days from the date on which the Abandonment Notice is sent to object to the proposed abandonment or donation.  Any objection must be in writing and delivered to counsel to the Debtors, Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY 10281 (Attn: Deryck A. Palmer, Esq. and Christopher R. Mirick, Esq.).  If no timely written objection is received by Debtors' counsel, the Debtors will be authorized to abandon or donate the property.  The Debtors may abandon or donate the property promptly upon obtaining approval by the Abandonment Notice Parties or upon the expiration of the 10-day period with no objection.

c.  If any Abandonment Notice Party timely delivers an objection to the proposed abandonment or donation, the Debtors and the objecting Abandonment Notice Party will use good faith efforts to resolve the objection. If the Debtors and the objecting Notice Party are unable to achieve a consensual resolution, the Debtors will not proceed with the proposed transaction pursuant to these procedures absent Court approval of the proposed transaction which approval may be sought upon expedited notice and a hearing, subject to the Court's availability.

d.  Nothing in the foregoing procedures will prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time for any proposed abandonment or donation upon notice and a hearing.

e.  The Debtors will file with the Court, on a quarterly basis beginning 90 days after entry of this Order, reports of all abandonments or donations by the Debtors during that quarter pursuant to the authority requested in this Motion. The reports will set forth a description of the property, the reason for the

abandonment, and the party to which the property was abandoned.  The Debtors shall file each report within 30 days after the end of each calendar quarter;

and it is further

**ORDERED** that nothing in this Order or any purchase agreement entered into under this Order, releases, nullifies or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; and it is further

**ORDERED** that nothing in this Order shall be deemed to allow the Debtors to abandon real or personal property in violation of any applicable state or federal laws or regulations, including but not limited to environmental laws and regulations; and it is further

**ORDERED** that, notwithstanding any other provision of this Order, the Debtors shall not abandon any radiation equipment or radioactive materials in the state of Texas.  In the event of a sale of radiation equipment or radioactive materials in Texas, the Debtors shall ascertain that the purchaser is authorized under applicable laws and regulations to possess the equipment being sold and shall notify the Texas Department of State Health Services within 24 hours of the transfer.  The Debtors shall comply with all applicable state laws and regulations, including 25 T.A.C.§§ 289.203-205, 289.226, 289.228 and 289.231.

**ORDERED** that any purchase agreement entered into under this Order shall state that "This sale agreement is subject to the terms of" this Order; and it is further

**ORDERED** that, notwithstanding anything herein to the contrary, (i) for any sale assignment, transfer, abandonment or other disposition of assets where the sale price is less than $1 million, and such transaction includes any software, license or service agreement that is the subject of an executory contract or unexpired lease between one or more of the Debtors and Oracle USA, Inc. (the "Oracle Agreements"), the Debtors shall not sell, assign, transfer, abandon

or otherwise dispose of the Oracle Agreements, without prior written notice to counsel for Oracle USA Inc. ("Oracle") and an opportunity for hearing on any Oracle objection filed thereto (the notice and time period to object to such transactions shall, for Oracle, be the same as if the sale price was from $1 million to $10 million under subparagraph (b) of the Sale Procedures above); (ii) the Debtors shall not sell, assign, transfer or abandon or otherwise dispose of any railcars in which Occidental Chemical Company ("Occidental") has asserted an interest or in which the Debtors reasonably believe Occidental has an interest, for $1 million or less, without prior written notice to Occidental's counsel and an opportunity for hearing on any Occidental objection filed thereto (the notice and period to object to such transactions shall, for Occidental, be the same as if the sale price was from $1 million to $10 million under subparagraph (b) of the Sale Procedures above); (iii) the Debtors shall not sell, assign, transfer or abandon or otherwise dispose of any assets from the ethylene manufacturing facility that is currently idled in Lake Charles Louisiana, together with the pipelines appurtenant thereto owned by Occidental for $1 million or less without prior written notice to Occidental's counsel and an opportunity for hearing on any Occidental objection filed thereto (the notice and period to object to such transactions shall, for Occidental, be the same as if the sale price was from $1 million to $10 million under subparagraph (b) of the Sale Procedures above); (iv) the Debtors will not sell, assign, transfer or abandon or otherwise dispose of any property on which any of Greif, Inc. or its affiliates;[3] Jacobs Field Services North America, Inc.; Veolia ES Industrial Services, Inc.; Altech Inspections, Inc.; Lonesome Dove Capital, L.P. d/b/a South Texas Valve & Controls; Tiger Tower Services, LLC; M&I Electric Industries, Inc.; Gajeske, Inc.; Diamond Refractory Services, L.P.; WHM Custom Services, Inc.; or J.V. Industrial Companies, Ltd. assert a valid

---

[3] For the purposes of this Order, the affiliates of Greif, Inc. are Delta Petroleum Company, Inc.; Greif Packaging LLC; and Greif International Holding B.V.

and perfected prepetition statutory or possessory lien without sending written notice to the respective alleged lienholder (the "Purported Lienholder") and its counsel of the proposed sale, assignment, transfer or abandonment, and providing an opportunity for hearing on any Purported Lienholder's objection thereto (the notice and period to object to such transaction shall, for the respective Purported Lienholders, be the same as if the sale price was from $1 million to $10 million under subparagraph (b) of the Sale Procedures above).  Concerning utilization of the net proceeds of any sale, transfer or assignment authorized hereunder, the Purported Lienholder will have 10 business days from the date of the written notice of the proposed sale to advise the Debtors and the DIP Agents in writing that it believes it possesses a valid and perfected prepetition statutory or possessory lien that has priority over the liens of the Debtors' lenders under the DIP Credit Agreement with respect to the relevant property.  If the Purported Lienholder asserts that it has a valid and perfected prepetiton statutory or possessory lien that has priority over the liens of the Debtors' lenders under the DIP Credit Agreement, the Debtors will place that portion of the proceeds of the sale, assignment or transfer equal to the prepetition claim that is allegedly secured by the Purported Lienholder's alleged lien in a segregated account to be distributed in accordance with the priority scheme for the relevant property, once determined by the Court or as agreed among the relevant lienholders.  If the Purported Lienholder fails to timely assert that it has a valid and perfected prepetition statutory or possessory lien that has priority over the liens of the Debtors' lenders under the DIP Credit Agreement with respect to the relevant property, the proceeds will be utilized by the Debtors in accordance with the terms of any postpetition financing agreement provisions governing the use of those proceeds; provided, however that, to the extent the Debtors wish to sell, assign, transfer or abandon any such assets without following this procedure, the Debtors may seek authorization

of this Court pursuant to section 363 of the Bankruptcy Code (upon notice and a hearing, which may be expedited if necessary subject to the Court's schedule) and other applicable law to sell, assign, transfer or abandon the property (without prejudice to the rights of any party in interest in such a proceeding); and it is further

**ORDERED** that nothing in this Order shall be construed to prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time of any proposed sale transaction or abandonment of property after notice and an opportunity for a hearing; and it is further

**ORDERED** that the Court shall retain jurisdiction over any and all disputes arising under or otherwise relating to the construction and enforcement of the procedures established by this Order and the transactions consummated thereunder; and it is further

**ORDERED** that the Debtors are authorized to execute and deliver all instruments and documents, and take any other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

Dated:    New York, New York
**_March 12, 2009_**          **_s/ Robert E. Gerber_**
          UNITED STATES BANKRUPTCY JUDGE