**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF WILLIAM TYSON IN SUPPORT OF THE DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 TO (A) ESTABLISH PROCEDURES FOR THE SALE OR DISPOSAL OF *DE MINIMIS* ASSETS; AND (B) AUTHORIZE THE DEBTORS TO (I) PAY RELATED FEES AND EXPENSES AND (II) ASSUME, ASSIGN, OR REJECT RELATED EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES</u>**

I, William Tyson, under penalty of perjury, declare as follows:

1.  I am a Senior Vice President of GMAC Mortgage, LLC ("GMACM"), a limited liability company organized under the laws of the state of Delaware and one of the debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors"). I joined GMACM in May 2012, and I have served as Senior Vice President and Manager of the Asset Disposition Group since June 2012. Prior to joining GMACM, I was employed by Ally Financial, Inc. ("AFI"), where I served in a number of positions, including, most recently, as Manager of the Special Asset Group and Chief Risk Officer. As Manager of the Asset Disposition Group of GMACM, I am responsible for disposing of and liquidating all assets and loans that are not subject to the Debtors' asset purchase agreements with Nationstar Mortgage LLC and Berkshire Hathaway, Inc., winding up and dissolving certain non-debtor affiliates (primarily international companies), and managing servicing and sub-servicing contracts in connection with the sale of the servicing platform.

ny-1053800

2. In my capacities as Senior Vice President and Manager of the Asset Disposition Group, I am familiar with the Debtors' day-to-day operations, financial condition, business affairs, and books and records. Except as otherwise indicated, all statements in this Declaration are based upon: my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' books and records as well as other relevant documents; my discussions with other members of the Debtors' management team; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' operations, financial condition and history. In making my statements based on my review of the Debtors' books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants to accurately record, prepare, collect, and/or verify any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

**A.  The Debtors' Need for *De Minimis* Asset Sale Procedures**

3. In the ordinary course of business, the Debtors sell certain assets that may be subject to liens, claims, interests, and encumbrances (collectively, the "Liens"). By way of example, in the ordinary course of business, the Debtors, in their capacity as servicer, sell charged off loans (i.e., uncollectible loans for which the principal and accrued interest were written off from the Debtors' anticipated receivables) from time to time to third parties.[1] While such sales constitute ordinary course sales, in light of the bankruptcy proceedings and the difficulty involved in obtaining lien releases from the Debtors' secured lenders, the Debtors believe that the implementation of streamlined procedures to sell assets free and clear of Liens,

---

[1] A substantial majority of these loans are owned by third parties; however, a small portion of these loans are owned by the Debtors.

whether in the ordinary course or otherwise (the "*De Minimis* Sale Procedures"), is prudent and warranted.  Also, I believe the proposed *De Minimis* Sale Procedures will facilitate a more expeditious and cost-effective review by interested parties of asset sales than would otherwise be available absent such procedures.

**B.     The Proposed *De Minimis* Sale Procedures are an Exercise of the Debtors' Sound Business Judgment.**

4.     I believe that the proposed *De Minimis* Sale Procedures represent the exercise of sound business judgment, are fair and appropriate, are in the best interests of the estates and their creditors, and balance the need for an expeditious reduction of burdensome costs to the estates with the provision of advance notice of proposed asset dispositions.  Disposing of these *de minimis* assets in the manner proposed herein is the most efficient and cost-effective means of maximizing the value to be realized without compromising fundamental procedural safeguards for the proper administration of the estates.  To the extent we are selling charged off loans under the *De Minimis* Sale Procedures, such sales will need to be consummated quickly following the negotiations between the Debtors and purchaser.  In the ordinary course, these sales typically close within a few days of selecting a buyer and setting a price because the purchasers of these loans tend to be regional buyers who may lose interest if a deal takes too long to close and divert their attention to a different deal.  Further, obtaining Court approval for each such sale transaction would result in unnecessary time delays and administrative costs, as well as fees incurred by attorneys for Court appearances, which could drastically reduce the ultimate net value of these assets.  The proceeds generated by many of the *De Minimis* Sales do not warrant the incurrence of such expenses. The Debtors have significant experience with these types of sales and, as a result, are capable of obtaining the best sale price possible.  Moreover, in light of

the size of the Debtors' estates, the proposed sale price limitations are relatively modest and appropriate.

**C.     Broker Commissions.**

5.      The payment of commissions and fees to brokers engaged by the Debtors to sell *de minimis* assets is in the best interest of the Debtors' estates and their creditors. The Debtors believe that the use of a broker will, in certain circumstances, expedite the disposition process and maximize the value of the *de minimis* assets.[2]

6.      Approving the commissions and fees as part of the *De Minimis* Sale Procedures will save the fees associated with preparing and prosecuting fee applications. The commissions and fees will represent only a fraction of the value of any *de minimis* asset sold pursuant to the *De Minimis* Sale Procedures and are not significant relative to the aggregate size of the Debtors' estates.

**D.     The Assumption, Assignment, or Rejection of Related Executory Contracts or Unexpired Leases Should be Approved**

7.      In some cases, the Debtors anticipate that the assumption or assumption and assignment of certain executory contracts or unexpired leases related to certain *de minimis* assets will enhance the Debtors' ability to maximize the consideration paid for the related asset. Moreover, the Debtors anticipate that purchasers may require certainty regarding whether the purchaser will take assignment of the related contracts or leases in connection with the sale.  In other cases, it is possible that the sale of an asset will render a particular executory contract or unexpired lease of no use to the estates, thereby justifying rejection.  The non-debtor counterparties to such contracts and leases are not prejudiced because the *De Minimis* Sale

---

[2]     To the extent not previously authorized by this Court or as otherwise required by applicable law, the Debtors will seek Court authority to retain any brokers or liquidators to assist the Debtors in *De Minimis* Sales.

ny-1053800                                      4

Procedures require that they receive notice, including proposed cure amounts, and provide an opportunity for such parties to object.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 10, 2012

                                             /s/ William Tyson
                                            William Tyson
                                            Senior Vice President of
                                            GMAC Mortgage, LLC