# EXHIBIT "A"

MIN #:
Loan Number :

**Multistate**

# NOTE

FHA Case No.

June 20th, 2003
[Date]

1908  W. TILL ROAD FORT WAYNE, IN 46818
[Property Address]

**1. PARTIES**
   "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
Cendant Mortgage Corporation

and its successors and assigns.
**2. BORROWER'S PROMISE TO PAY; INTEREST**
   In return for a loan received from Lender, Borrower promises to pay the principal sum of Fifty-Nine Thousand
Forty Dollars and Zero Cents

Dollars (U.S. $ 59,040.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of Five and Three Quarters
percent (      5.750 %) per year until the full amount of principal has been paid.
**3. PROMISE TO PAY SECURED**
   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.
**4. MANNER OF PAYMENT**
   (A)  Time
      Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
August 1st        , 2003      . Any principal and interest remaining on the first day of July
2033        , will be due on that date, which is called the "Maturity Date."
   (B)  Place
      Payment shall be made at 3000 Leadenhall Road Mount Laurel, NJ 08054
                              or at such place as Lender may designate in writing
by notice to Borrower.
   (C)  Amount
      Each monthly payment of principal and interest will be in the amount of U.S. $ 344.55        . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.
   (D)  Allonge to this Note for payment adjustments
      If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

   ☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**
   Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes.

-1R (0210)      FHA Multistate Fixed Rate Note – 10/95
          VMP MORTGAGE FORMS – (800)521-7291
Page 1 of 2                          Initials:

6/19/2003 4:46 PM

**Original**

## 6. BORROWER'S FAILURE TO PAY

### (A)  Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four                    percent (        4.00%) of the overdue amount of each payment.

### (B)  Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C)  Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Gina L Grant_ _____ (Seal)                    _____ (Seal)
GINA L. GRANT                    -Borrower                                                    -Borrower

_____ (Seal)                    _____ (Seal)
                    -Borrower                                                    -Borrower

_____ (Seal)                    _____ (Seal)
                    -Borrower                                                    -Borrower

_____ (Seal)                    _____ (Seal)
                    -Borrower                                                    -Borrower

-1R (0210)                    Page 2 of 2

6/15/2003 4:45 PM

**Original**

# SIGNATURE/NAME AFFIDAVIT

DATE: June 20th, 2003

LOAN #:

BORROWER: GINA L GRANT

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

GINA L GRANT

_____            _____
(Print or Type Name)                                             Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

Gina Grant
_____            _____
(Print or Type Name)                                             Signature

_____            _____
(Print or Type Name)                                             Signature

_____            _____
(Print or Type Name)                                             Signature

_____            _____
(Print or Type Name)                                             Signature

and that    Gina L Grant and Gina Grant                                        are one

and the same person.

State/Commonwealth of IN
County/Parish of ALLEN

Subscribed and sworn (affirmed) before me
this 20th        day of  June                   , 2003

[Notary Seal: MICHAEL R. MUELLER
Notary Public, State of Indiana
RESIDENT OF ALLEN COUNTY, INDIANA
My Commission Expires 7/20/09]

_____
Notary Public in and for    Michael R Mueller
the State/Commonwealth of IN
County/Parish of ALLEN
My Commission Expires; 7-20-09

VMP-304 (0103)                    VMP MORTGAGE FORMS - (800)521-7291                    3/01

6/19/2003 4:45 PM

203065851

RECORDED
07/02/2003 09:02:12
RECORDER
PATRICIA J BRICK
ALLEN COUNTY,IN

Doc. No.   203065851
Receipt No.   23475

DCFD        3.00
MTG        22.00
Total      25.00

FLTC # 0306-019

---

[Space Above This Line For Recording Data]

State of Indiana

# MORTGAGE

FHA Case No.

Record and Return to:
Cendant Mortgage Corporation
2001 Bishops Gate Blvd. Mount
Laurel, NJ 08054

Loan #:

THIS MORTGAGE ("Security Instrument") is given on June 20th, 2003
The Mortgagor is GINA L GRANT * A MARRIED WOMAN

*formerly known as Gina L. Best

("Borrower"). This Security Instrument is given to   Cendant Mortgage Corporation

which is organized and existing under the laws of New Jersey                      , and
whose address is 3000 Leadenhall Road Mount Laurel, NJ 08054
                                         ("Lender"). Borrower owes Lender the principal sum of
Fifty-Nine Thousand Forty Dollars and Zero Cents
                                    Dollars (U.S. $59,040.00              ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on July 1st, 2033
                      . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA Indiana Mortgage - 4/96

-4R(IN) (9607).05

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 8                                    Initials:

Original

of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in ALLEN                                                                                      County, Indiana:

~~See preliminary title report.~~

*See Attached*

which has the address of  1908    W. TILL ROAD    FORT WAYNE                            [Street, City],
Indiana  46818                                      [Zip Code]  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

    1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
    2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4.  In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary.  Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

-4R(IN) (9607).05                                    Page 2 of 8                                    Initials:

Original

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

Original

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

   6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

   7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

   If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

   Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

   Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

   8. Fees. Lender may collect fees and charges authorized by the Secretary.

   9. Grounds for Acceleration of Debt.

      (a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

         (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

         (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

      (b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Original

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Original

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

4R(IN) (9601).05                    Page 8 of 8                    Initials: _____

Original

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

**20. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _Gina L Grant_____ (Seal)
                                 GINA L GRANT        -Borrower

_____          _____ (Seal)
                                                     -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                       -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                       -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                       -Borrower

VMP-4R(IN) (0607).05              Page 7 of 8

Original

STATE OF INDIANA, ALLEN                                        County ss:

On this 20th        day of June        , 2003        , before me, the undersigned, a Notary
Public in and for said County, personally appeared , GINA L GRANT

, and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

My Commission Expires:        7-20-09

Notary Public        Michael R Mueller

This instrument was prepared by:    Kevin Glover, Cendant
Mortgage Corporation
3000 Leadenhall Road Mount
Laurel, NJ 08054

-4R(IN) (9907).05                        Page 8 of 8                        Initials:

Original

The land referred to in this commitment/policy is situated in the State of Indiana, County of Allen and is described as follows:

The West One Hundred and Five (105) feet of that portion of the South Half (1/2) of the Southeast Quarter of the Northwest Quarter of Section Three (3), Township Thirty-one (31) North, Range Twelve (12) East, beginning at a stake 419.5 feet East of the Northwest corner; thence running East 419.5 feet to a stake; thence South 667 feet to a stake; thence West 421 feet to a stake; thence North 658 feet to the Place of Beginning, containing One and Six Tenths (1.6) acres, more or less.

STATE OF NEW JERSEY
DEPARTMENT OF TREASURY
SHORT FORM STANDING

PHH MORTGAGE CORPORATION
0100051189
*With the Previous or Alternate Name*
COLDWELL BANKER MORTGAGE (Alternate Name)
INSTAMORTGAGE.COM (Alternate Name)
PHH MORTGAGE SERVICES (Alternate Name)
CENDANT MORTGAGE SERVICES CORPORATION (Previous Name)
PHH MORTGAGE SERVICES CORPORATION (Previous Name)
UNITED STATES MORTGAGE CORPORATION (Previous Name)
US MORTGAGE CORPORATION (Previous Name)
PHH US MORTGAGE CORPORATION (Previous Name)
MORTGAGESAVE.COM (Alternate Name)
CENTURY 21 MORTGAGE (Alternate Name)
ERA MORTGAGE (Alternate Name)
MORTGAGEQUESTIONS.COM (Alternate Name)
CENDANT MORTGAGE CORPORATION (Previous Name)

I, the Treasurer of the State of New Jersey, do
hereby certify that the above-named
New Jersey Domestic Profit Corporation was
registered by this office on November 16, 1977.

As of the date of this certificate, said business
continues as an active business in good standing
in the State of New Jersey, and its Annual Reports
are current.

*Continued on next page . . .*

STATE OF NEW JERSEY
DEPARTMENT OF TREASURY
SHORT FORM STANDING

PHH MORTGAGE CORPORATION

I further certify that the registered agent and
registered office are:

Corporation Service Company
830 Bear Tavern Rd
West Trenton, NJ 08628

IN TESTIMONY WHEREOF, I have
hereunto set my hand and
affixed my Official Seal
at Trenton, this
26th day of April, 2006

*Bradley Abelow*

Bradley I. Abelow
State Treasurer

12/16/2004 15:31 FAX    7324965454        CENDANT LEGAL DEPT                    ☑002/002

C-102A Rev 1995

New Jersey Division of Revenue

Certificate of Amendment to the Certificate of Incorporation
(For Use by Domestic Profit Corporations)

```
┌──────────────────────┐
│        FILED         │
│      JAN 7  2005     │
│   STATE TREASURER    │
└──────────────────────┘
```

Pursuant to the provisions of Section 14A:9-2 (4) and Section 14A:9-4 (3), Corporations, General, of the New Jersey statutes, the undersigned corporation executes the following Certificate of Amendment to its Certificate of Incorporation:

1. The name of the corporation is:
    Cendant Mortgage Corporation

2. The following amendment to the Certificate of Incorporation was approved by the directors and thereafter duly adopted by the shareholders of the corporation on the 15th day of December , 2004

    Resolved, that Article FIRST of the Certificate of Incorporation be amended to read as follows:
    "FIRST:  The name of the Corporation is PHH Mortgage Corporation."

3. The number of shares outstanding at the time of the adoption of the amendment was: 1000
The total number of shares entitled to vote thereon was: 1000

If the shares of any class or series of shares are entitled to vote thereon as a class, set forth below the designation and number of outstanding shares entitled to vote thereon of each such class or series. (Omit if not applicable)

4. The number of shares voting for and against such amendment is as follows: (If the shares of any class or series are entitled to vote as a class, set forth the number of shares of each such class and series voting for and against the amendment, respectively)

| Number of Shares Voting for Amendment | Number of Shares Voting Against Amendment |
|---|---|
| 1000 | 0 |

5. If the amendment provides for an exchange, reclassification or cancellation of issued shares, set forth a statement of the manner in which the same shall be effected. (Omit if not applicable)

6. Other provisions: (Omit if not applicable)
    Effective date of this amendment to the certificate of incorporation shall
    be February 1, 2005.

BY: _____
    Lynn A. Feldman, Vice President

Dated the 16th day of December , 2004

May be executed by the Chairman of the Board, or the President, or a Vice President of the Corporation

CM0051189

12/16/2004 15:31 FAX 9734986864        CENDANT LEGAL DEPT                    @001/002

C-102A Rev 12/93

**New Jersey Division of Revenue**

**Certificate of Amendment to the Certificate of Incorporation**
(For Use by Domestic Profit Corporations)

FILED
JAN 7 - 2005
STATE TREASURER

Pursuant to the provisions of Section 14A:9-2 (4) and Section 14A:9-4 (3), Corporations, General, of the New Jersey Statutes, the undersigned corporation executes the following Certificate of Amendment to its Certificate of Incorporation:

1. The name of the corporation is:
   Cendant Mortgage Corporation

2. The following amendment to the Certificate of Incorporation was approved by the directors and thereafter duly adopted by the shareholders of the corporation on the 15th day of December ,2004

   Resolved, that Article FIRST of the Certificate of Incorporation be amended to read as follows:
   "FIRST: The name of the Corporation is PHH Mortgage Corporation."

3. The number of shares outstanding at the time of the adoption of the amendment was 1000
   The total number of shares entitled to vote thereon was 1000

   If the shares of any class or series of shares are entitled to vote thereon as a class, set forth below the designation and number of outstanding shares entitled to vote thereon of each such class or series. (Omit if not applicable).

4. The number of shares voting for and against such amendment is as follows: (If the shares of any class or series are entitled to vote as a class, set forth the number of shares of each such class and series voting for and against the amendment, respectively)

   | Number of Shares Voting for Amendment | Number of Shares Voting Against Amendment |
   |---|---|
   | 1000 | 0 |

5. If the amendment provides for an exchange, reclassification or cancellation of issued shares, set forth a statement of the manner in which the same shall be effected. (Omit if not applicable).

6. Other provisions: (Omit if not applicable)
   Effective date of this amendment to the certificate of incorporation shall be February 1, 2005.

                                                    BY
                                                    Lynn R. Feldman, Vice President

Dated this 16th day of December ,20 04

May be executed by the Chairman of the Board, or the President, or a Vice President of the Corporation.

1500305
2843042                    0100051189

STATE OF NEW JERSEY
DEPARTMENT OF TREASURY
FILING CERTIFICATION (CERTIFIED COPY)

PHH MORTGAGE CORPORATION

I, the Treasurer of the State of New Jersey,
do hereby certify, that the above named business
did file and record in this department the below
listed document(s) and that the foregoing is a
true copy of the
certificate of amendment
as the same is taken from and compared with the
original(s) filed in this office on the date set
forth on each instrument and now remaining on file
and of record in my office.



IN TESTIMONY WHEREOF, I have
hereunto set my hand and
affixed my Official Seal
at Trenton, this
14th day of January, 2005

John E McCormac, CPA
State Treasurer

CERTIFICATE OF AMENDMENT TO THE

CERTIFICATE OF INCORPORATION OF

CGN

F I L E D

FHH Mortgage Services Corporation
(For Use by Domestic Corporations Only)

NOV 24 1997

LONNA R. HOOKS
Secretary of State

To:     The Secretary of State
        State of New Jersey

Pursuant to the provisions of Section 14A:9-2(4) and Section 14A:9-4(3), Corporations, General, of the New Jersey Statutes, the undersigned corporation executes the following Certificate of Amendment to its Certificate of Incorporation:

1. The name of the corporation is FHH Mortgage Services Corporation .

2. The following amendment to the Certificate of Incorporation was approved by the directors and thereafter duly adopted by the shareholders of the corporation on the 14th day of November , 19 97 :

Resolved, that Article First of the Certificate of Incorporation be amended to read as follows:
"First:  The name of the Corporation is Cendant Mortgage Services Corporation"

3. The number of shares entitled to vote upon the amendment was 1000 .

If the shares of any class or series are entitled to vote thereon as a class, set forth below the designation and number of shares entitled to vote thereon of each such class or series. (Omit if not applicable.)

(Use the following paragraph if amendment adopted by shareholders at a meeting)

4.      The number of shares voting for and against such amendment is as follows: (If the shares of any class or series are entitled to vote as a class, set forth the number of shares of each such class and series voting for and against the amendment, respectively.)

Number of Shares Voting For Amendment              Number of Shares Voting Against Amendment
            1000

(Use the following paragraph if the amendment was adopted by the written consents of the shareholders without a meeting, in the manner authorized by N.J.S. Sec. 14A:5-6)

4. That in lieu of a meeting and vote of the shareholders and in accordance with the provisions of Section 14A:5-6, the amendment was adopted by the shareholders without a meeting pursuant to the written consents of the shareholders and the number of shares represented by such consents is 1000 shares. (If any class or series are entitled to vote as a class, set forth the number of shares of any class or series entitled to vote as a class and indicate that the amendment was also approved by the written consent of that class of shareholders and the number of shares of said class or series represented by the consents.)

(If the amendment is accompanied by a reduction of stated capital, the following clause may be inserted in the Certificate of Amendment, in lieu of filing a Certificate of Reduction under Section 14A:7-19, Corporations, General, of the New Jersey Statutes. Omit this clause if not applicable.)

333.321
6032011

(N.J. - 2003 - 8/6/92)                    -1-

5. The stated capital of the corporation is reduced in the following amount: _____.
The manner in which the reduction is effected is as follows:

The amount of stated capital of the corporation after giving effect to the reduction is $ _____.
(Must be set forth in dollars.)

6. If the amendment provides for an exchange, reclassification or cancellation of issued shares, set forth a statement of the manner in which the same shall be effected. (Omit if not applicable.)

(Use the following only if an effective date, not later that 30 days subsequent to the date of filing is desired.)

7. The effective date of this Amendment to the Certificate of Incorporation shall be
January 1, 1998 _____.

Dated this ___17th_____ day of ___November_____, 19 97.

                                        ___PHH Mortgage Services Corporation___
                                                (Corporate Name)

                           By _____ *


                                                    Executive Vice
                                ___James E. Buckman___ President___
                                        (Type or Print Name and Title)

(*May be executed by the chairman of the board, or the president, or a vice president of the corporation.)

(N.J. - 2003)                          -2-

Mail to: Secretary of State, CN-308, Trenton, NJ 08625

TYPE ALL INFORMATION EXCEPT
SIGNATURE

/ × / Title 14A:1-6(5) New Jersey Business Corporation Act (File in DUPLICATE)

/    / Title 15A:1-7(e) New Jersey Nonprofit Corporation Act (File in TRIPLICATE)

CERTIFICATE OF CORRECTION OF:

Corporation Name: PHH Mortgage Services Corporation

Corporation Number: ____0100-0511-89____
(For use by Domestic, Foreign, Profit and Nonprofit Corporations)

The undersigned hereby submits for filing a Certificate of Correction executed on behalf of the above named Corporation, pursuant to the provisions of the appropriate Statute, checked above, of the New Jersey Statutes.

1. The Certificate to be corrected is:

   See 1 in Addendum                    Date Filed: November 24, 1997

2. The inaccuracy in the Certificate is (indicated inaccuracy or defect):
   The name of the corporation should be changed to Cendant Mortgage Corporation and not Cendant Mortgage Services Corporation, as was indicated on the Certificate of Amendment in error.

3. The Certificate of Correction hereby reads as follows:
   Resolved, that Article First of the Certificate of Incorporation be amended to read as follows: "First: The name of hte Corporation is Cendant Mortgage Corporation"

Signature: _James R. Buckman_

Name: James R. Buckman

Title: Executive Vice President          Date: December 5, 1997
(Must be Ch. of Bd., Pres. or Vice Pres.)

The purpose of this form is to simplify the filing requirements of the Secretary of State and does not replace the need for competent legal advice.

COR
FILED

(N.J. - 2437 - 3/6/92)                    DEC 8 1997

343485  678355  0100051189

LONNA R. HOOKS
Secretary of State

# Addendum

1.   Certificate of Amendment of the Certificate of Incorporation

1 OF 1