**Proposed Hearing Date: August 16, 2012 at 2:00 p.m. (ET)**
                             **Objection Deadline: August 15, 2012 at 10:00 a.m. (ET)**

**SCHULTE ROTH & ZABEL LLP**
Adam C. Harris
Howard O. Godnick
919 Third Avenue
New York, New York 10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955

*Counsel to Cerberus Capital Management, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                                        :  Chapter 11
                                                              :
Residential Capital, LLC, et al.,[1]                          :  Case No. 12-12020 (MG)
                                                              :
                         Debtors.                :  Jointly Administered
------------------------------------------------------------ x

**LIMITED OBJECTION OF CERBERUS CAPITAL MANAGEMENT, L.P.
TO MOTION OF THE EXAMINER FOR ENTRY OF AN ORDER (I)
GRANTING AUTHORITY TO ISSUE SUBPOENAS FOR THE
PRODUCTION OF DOCUMENTS AND AUTHORIZING THE
EXAMINATION OF PERSONS AND ENTITIES, (II) ESTABLISHING
PROCEDURES FOR RESPONDING TO THOSE SUBPOENAS, (III)
APPROVING ESTABLISHMENT OF DOCUMENT DEPOSITORY
AND PROCEDURES TO GOVERN USE, AND (IV) APPROVING
<u>PROTECTIVE ORDER</u>**

       Cerberus Capital Management, L.P. ("Cerberus") hereby submits this limited

objection to the Motion of the Examiner for Entry of An Order (I) Granting Authority to Issue

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012.  Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis.  As used herein, the term "Debtors" includes any such entities.

Subpoenas For The Production Of Documents And Authorizing The Examination Of Persons And Entities, (II) Establishing Procedures For Responding To Those Subpoenas, (III) Approving Establishment Of Document Depository And Procedures To Govern Use, And (IV) Approving Protective Order, dated August 10, 2012 (ECF Doc. # 1093 (the "Examiner's Motion")), and in support thereof respectfully represents as follows:

## PRELIMINARY STATEMENT

1. On May 14, 2012, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code, and the Court authorized joint administration of the cases (the "Chapter 11 Cases"). (ECF Doc. # 59.) On May 15, 2012, the United States Trustee appointed certain creditors to the Official Committee of Unsecured Creditors (the "Committee") (ECF Doc. #102), and on June 5, 2012, following a motion by the Committee (to which Cerberus did not object), the Court authorized the Committee, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), to conduct an investigation principally focused on certain enumerated transactions by and among the Debtors, Ally Financial, Inc. and/or Cerberus (ECF Doc. #217). On June 18, 2012, the Committee served a subpoena on Cerberus Capital Management, L.P. (ECF Doc. #450), seeking the production of virtually all documents in the possession or control of Cerberus and any of its affiliates, agents, or employees concerning or referencing the Debtors, among an array of other topics, created during the eight and a half year period between January 1, 2004 and June 15, 2012.

2. By Order dated June 20, 2012, and upon a motion by Berkshire Hathaway, Inc., the Court authorized the appointment of an examiner in the Chapter 11 Cases under 11 U.S.C. § 1104(c)(2) (ECF Doc. #454 (the "Examiner Order")). On July 3, 2012, the Court

2

approved the appointment of Arthur J. Gonzalez (the "Examiner") by the United States Trustee. (ECF Doc. #674.)

          3.      On July 27, 2012, consistent with the Examiner Order, the Examiner presented a Preliminary Statement to the Court indicating that the scope of his investigation will include, among other things, "all material prepetition transactions and all material verbal or written agreements or contracts" between the Debtors and Cerberus and its current and former affiliates, among others, as well as the "corporate relationships between or among" the Debtors and Cerberus, among others. (ECF Doc. #925, Exhibit A at 4.) The Court approved the scope of the Examiner's proposed investigation (the "Investigation") the same day. (*Id.*) Cerberus has been informed by counsel for the Examiner that the Examiner will treat the Committee's discovery requests on Cerberus as a "starting place," while reserving the right to seek additional documents and/or testimony.[2]

          4.      The Examiner has since moved for entry of an order (ECF Doc. #1093-1 (the "Examiner's Proposed Discovery Order")) granting him authority to issue subpoenas for the production of documents and authorizing the examination of persons and entities pursuant to Rule 2004, establishing procedures and protocols that will govern the parties' responses to the Examiner's discovery requests, including the establishment of a document depository into which virtually all discovery material produced to the Examiner will be placed and including procedures to determine other parties to whom such information will be readily available, as well as a proposed Uniform Protective Order for Examiner Discovery (ECF Doc. #1093-2 (the "Examiner's Proposed Protective Order" and, together with the Examiner's Proposed Discovery Order, the "Examiner's Proposed Orders")). The apparent purpose of Examiner's Proposed

---

[2] *See* Email from Robert A. Schwinger to Adam Harris and Michael Cutini dated Aug. 13, 2012 (Exhibit C).

Orders is to promote voluntary cooperation with the Investigation while enhancing cost efficiencies to the estate, by ensuring that the confidentiality of sensitive information produced during the Investigation, and made more widely available to other parties through the document depository, will be adequately protected and parties' ability to use the information accessible in the document depository appropriately restricted.

5. Cerberus does not dispute the Examiner's need for access to an array of information from various parties – including certain categories of information that may be highly sensitive, non-public and/or proprietary – in order to conduct his Investigation.[3] Nor does Cerberus object generally to the establishment of a document depository, or to the entry of a uniform protective order. Cerberus previously advised the Examiner's counsel that certain provisions in the Examiner's Proposed Orders will likely lead to parties being less willing to voluntarily cooperate with the Investigation, and otherwise trigger an avalanche of time-consuming and costly litigation, as they do not (a) adequately protect large swaths of confidential information likely to be produced in connection with the Investigation, (b) appropriately tailor the proposed list of parties that will be given access to the document depository, or (c) meaningfully restrict the use of the information sought to be produced. Accordingly, Cerberus objects on a limited basis to the Examiner's Proposed Orders and suggests certain revisions thereto, as reflected in the attached Exhibit A ("Cerberus' Proposed Discovery Order") and Exhibit B ("Cerberus' Proposed Protective Order," and, together with Exhibit A, "Cerberus' Proposed Orders"), in order to further the Examiner's stated goals of promoting voluntary cooperation with the Investigation and reasonably enhancing time and cost efficiencies in the Chapter 11 Cases.

---

[3] Cerberus reserves its right to object to the scope of any discovery conducted in connection with the Investigation, including with respect to the Committee's subpoena.

4

**OBJECTION**

6.      The Examiner recognizes that the Debtors, the Committee, Cerberus, and various parties-in-interest "will be producing voluminous information to the Examiner, some of which may be confidential, proprietary, or private information[.]"  (ECF Doc. #1093 at ¶ 29.) But the Examiner's Proposed Orders fail to provide adequate protection to that information (the "Rule 2004 Materials") for several reasons.  First, the Examiner proposes that a wide and ever-increasing number of individuals be granted access to the database into which produced materials will be placed (the "Document Depository"), many of whom have no apparent need for access to the Rule 2004 Materials.  Second, although the Examiner proposes that certain information be allowed heightened protection through designation as "Highly Confidential" or "Professional's Eyes Only," the proposed definitions of such materials are far too narrow, and whatever minimal level of initial protection may be afforded to certain materials is effectively eviscerated by other provisions.  Finally, the Examiner's Proposed Orders lack appropriate restrictions on the use of the Rule 2004 Materials.  Cerberus agrees that promoting voluntary cooperation with the Investigation is critical to the Examiner's ability to complete the Investigation quickly, and Cerberus intends to do all it can to cooperate with the Examiner and his professionals.  However, Cerberus respectfully submits that its suggested modifications to the Examiner's Proposed Orders will further that objective by limiting access to the Rule 2004 Materials to those parties who are estate fiduciaries or are otherwise actively involved in the Investigation, consistent with the Bankruptcy Code and Rule 2004, and simultaneously minimizing both any prejudice to the producing parties and the likelihood of a stream of discovery-related disputes.

      A.    <u>The Special Service List Includes Individuals And Entities That Have No Legitimate Need For Access To The Information Being Collected.</u>

7.    The Examiner's Proposed Discovery Order provides that access to the Document Depository shall be automatically granted to "[t]hose persons and entities currently on the Special Service List as set forth in the Case Management Order or in these Chapter 11 Cases, or who may be added to the Special Service List in the future[.]" (ECF Doc. #1093-1 at 4.) The use of the Special Service List to define the entities entitled to access the Document Depository is arbitrary, and needlessly prejudices parties producing information to the Examiner during the course of his Investigation by providing automatic access to that information by persons and entities that have no apparent need for such access.

8.    In general, "Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate … and for discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Enron Corp.*, 291 B.R. 836, 840 (S.D.N.Y. 2002) (citations omitted). As the Examiner points out, some courts have described the scope of Rule 2004 examinations as "broad" and "unfettered," (ECF #1093 ¶¶ 14-15), and have otherwise noted that Rule 2004 discovery "can be legitimately compared to a fishing expedition." *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (S.D.N.Y 1991) (citation omitted); *see also Enron*, 281 B.R. at 840. Notably, however, the broad parameters of Rule 2004 discovery are not without their limits.

9.    When evaluating requests for access to Rule 2004 discovery, courts are required to balance the competing interests of the parties-in-interest and the parties from whom discovery is sought; "the burden of showing good cause" for access to the information sought "is an affirmative one[.]" *Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 703-04, 712 (granting the FDIC access to Rule 2004 examination transcripts, exhibits and documents on the grounds

6

that it "is a party in interest and good cause is shown why [the FDIC] should have the requested documents"). Parties unable to carry their burden of establishing a proper need and purpose for Rule 2004 discovery are routinely denied such access. *See, e.g., Enron*, 281 B.R. at 840 (denying access to document database containing Rule 2004 materials produced by Arthur Andersen, LLP, among others, sought by plaintiffs in the Enron securities litigation, on the grounds that plaintiffs were "attempting to employ Rule 2004 for discovery in the [securities action] and not for the purpose of asserting their rights as a party in interest in this bankruptcy case.").

10. Cerberus expects that the Investigation will focus principally on various transactions that occurred between and among the Debtors, Ally Financial, Inc., and Cerberus, for the purpose of identifying causes of action that may belong to the estate and allowing the parties-in-interest to evaluate the propriety of the proposed settlement between Ally Financial, Inc. and the Debtors. (ECF Doc. #925, Exhibit A at 4.) If, as a result of the Investigation, the Examiner concludes that causes of action do exist, the only parties entitled to prosecute those claims would be the Debtors and any other party granted standing by the Court. Individual creditors are rarely, if ever, granted standing to prosecute such claims, because they belong to the estate and are pursued for the benefit of the estate.

11. Cerberus does not object to certain parties beyond the Examiner and his retained professionals, obtaining access to Rule 2004 Materials, including the Committee, the Debtors and any other statutory committee that may be appointed in the Chapter 11 Cases. These are the entities properly charged with the task of reviewing and/or participating in the review of the transactions and the proposed settlements at issue in these Chapter 11 Cases. Nor does Cerberus object to the U.S. Trustee for the Southern District of New York or Ally

Financial, Inc., as the parent of the Debtors, having access to the Rule 2004 Materials, as each will obviously have an important role in the conduct of the Investigation.[4]

12. The Special Service List includes a large number of private parties, such as: (i) each of the Debtors' pre-petition lenders, or their agents; (ii) each of the indenture trustees for the Debtors' outstanding note issuances; (iii) counsel to the administrative agent for the Debtors' providers of debtor in possession financing; and (iv) Nationstar Mortgage LLC and its counsel. (ECF Doc. #141 at 5-6.) The Special Service List also includes a variety of governmental agencies having no defined role in protecting or advancing the interests of the estate, such as: (i) the Office of the United States Attorney General; (ii) the Office of the New York Attorney General; (iii) the Office of the United States Attorney for the Southern District of New York; (iv) the Internal Revenue Service; and (v) the Securities and Exchange Commission. (ECF Doc. #141 at 5-6.) None of these parties has sought to establish good cause under Rule 2004 to support access to the Rule 2004 Materials, or how any such request would advance the purposes for which the Investigation is being conducted, and their mere inclusion on the Special Service List fails to support any such showing.

13. Further, as recognized under the Case Management Order, additional parties may seek to be added to the Special Service List, either by obtaining the consent of the Debtors or by serving a motion seeking approval from the Court. (ECF Doc. #141 at 6.) This process would bypass the notice and objection provisions set out in paragraphs (h) and (i) of the Examiner's Proposed Discovery Order, and all but ensures that parties producing Rule 2004

---

[4] If, after the Examiner's report is issued, other parties-in-interest determine that they need access to the Rule 2004 Materials in order to evaluate possible challenges to the proposed settlement between the Debtors and Ally Financial, Inc., that issue can be better addressed at that time, without having needlessly expanded the well-established parameters of Rule 2004 at this juncture and sacrificed the producing parties' clear interest in protecting the confidentiality of their information to do so.

8

Materials will be forced to object to proposed additions to the Special Service List – even as to parties who have no interest in obtaining or reviewing the Rule 2004 Materials – on the ground that inclusion on the Special Service List automatically grants such parties unfettered access to the Document Depository pursuant to the Examiner's Proposed Discovery Order.  (ECF Doc. #1093-1 at 4.)

14.     Restricting Document Depository access initially to a circumscribed set of parties is consistent with the approach taken in the *Tribune* case relied upon by the Examiner.[5] There, under the order authorizing the establishment of a document depository, which contained only documents relating to specific set of transactions, access was granted only to "such persons and their representatives and professionals who appear to be material to the negotiations" regarding the specific set of transactions and plan negotiations, "and who are designated by the Debtors from time to time, in consultation with the Initial Negotiating Parties … and who agree to be Negotiating Parties."  *In re Tribune Co., et al.*, No. 08-13141 (KJC) (Bankr. D. Del) (order dated Dec. 15, 2009 at 2-3) (ECF Doc. #1093-3).  Here, by contrast, the Examiner's Proposed Order would allow access to parties appearing on the Special Service List even though they are not material to the Investigation and have not been deliberately designated by the Debtors in consultation with the other relevant parties.  Allowing such widespread and arbitrary access to the Rule 2004 Materials is inconsistent with the limitations imposed on Rule 2004 and the Examiner's stated goals of adequately protecting the confidentiality of the Rule 2004 Material and streamlining the Investigation process.

---

[5] To the extent parties beyond those identified above desire access to the Rule 2004 Materials, they may request such access pursuant to the procedures described by the Examiner and, if necessary, by making the proper showing of good cause to this Court typically required under Rule 2004.

9

B. **The Examiner's Proposed Orders Provide Insufficient Protection For Sensitive Information.**

15. As a threshold matter, Cerberus agrees it is appropriate to have a "Confidential" designation that allows documents to be shown, in the first instance, to the Examiner, the Debtors, the U.S. Trustee for the Southern District of New York, the Committee, and other official committees that may be established and approved by the Court. The nature and breadth of information likely to be sought in the Investigation requires that the uniform protective order also adopt meaningful levels of higher confidentiality designations. While the Examiner's Proposed Protective Order appropriately establishes "Professional's Eyes Only" and "Highly Confidential" designations, the protections currently afforded to information so designated by producing parties under the Examiner's Proposed Protective Order are patently insufficient.

16. *Professional's Eyes Only Information*. Cerberus generally agrees with the Examiner's definition of material to be designated "Professional's Eyes Only." But Cerberus proposes that the Examiner's definition be modified to restrict access to any Rule 2004 Material that may present a risk of harm to the Disclosing Party — not merely "competitive" harm, as the Examiner proposes. Further, the Examiner's definition of "Professional's Eyes Only" applies to analyses regarding claims in connection with "the sale of mortgages or mortgage backed securities." Cerberus proposes that this definition be expanded to also include the "sale or transfer of Debtors' assets." Cerberus' internal analyses are a proprietary aspect of Cerberus' business and are entitled to enhanced protection from further disclosure, whether those analyses are focused on mortgages, mortgage backed securities, or any other type of asset, and regardless of whether the harm that Cerberus may suffer from unwarranted disclosure of that information fits squarely into the term "competitive harm."

10

17. In addition, Cerberus objects to the Examiner's Proposed Protective Order insofar as it would permit information designated "Professional's Eyes Only" to be disclosed to a Committee member's financial advisor, under any circumstances. The Committee has been appointed by the Court to represent the collective interests of the Debtors' creditors. The Committee will be a "Receiving Party" under the Examiner's Proposed Orders, and any Advisors representing or working for the Committee in the Chapter 11 Cases, including financial advisors, are entitled to access the Rule 2004 Materials (other than Highly Confidential materials, discussed below) in furtherance of the Committee's fiduciary obligations to its constituent members. There is simply no legitimate reason that the financial advisors of individual Committee members also need access to the Rule 2004 Materials. To the extent the individual members of the Committee want to independently become a Receiving Party, they should make a request and an appropriate showing of why access should be granted. *See Enron*, 281 B.R. at 841 ("Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."); *In re J&R Trucking, Inc.*, 431 B.R. 818, 822-23 (N.D. Ind. 2010) (denying Rule 2004 discovery to creditors seeking to identify third parties who may be liable to them for debtor's obligations).

18. <u>Highly Confidential Information</u>. The Examiner's Proposed Protective Order defines "Highly Confidential" to merely encompass information that "contains attorney work product or privileged information." Such a restricted definition of "Highly Confidential" information provides cold comfort to producing parties, including Cerberus, that have no intention of disclosing privileged information during the course of the Investigation. More significantly however, given the stated scope of the Investigation, it is very possible — indeed,

11

probable — that the Examiner's requests will seek to capture other highly sensitive information that parties may be willing to share with the Examiner in the spirit of cooperation but which nevertheless warrants the heightened protection afforded "Highly Confidential" material to ensure that such information is not subsequently disclosed to other parties to whom Cerberus would not otherwise make such disclosures. There is no logical justification for potentially putting producing parties at odds with the Examiner with respect to certain limited categories of highly sensitive information simply because no viable mechanism exists to appropriately restrict access to that information to the Examiner and his professionals.

19. Accordingly, and as was proposed in a prior draft of the Examiner's Proposed Protective Order, Cerberus proposes that this category also encompass "information related to the Disclosing Party's ongoing business operations the disclosure of which would result in direct and imminent competitive harm to the Disclosing Party's ongoing business or harm to the contemplated asset sales in these Chapter 11 Cases." Cerberus also proposes that "highly sensitive personal, financial, commercial or proprietary information the disclosure of which could cause significant commercial harm" likewise be included in the definition of "Highly Confidential." Depending on the scope of the requests ultimately issued by the Examiner, it is unlikely that Cerberus' proposed definition will result in a large volume of documents fitting the definition of "Highly Confidential." Nevertheless, recognizing that there may be instances in which information of this type is potentially germane to the Examiner's Investigation, it is entitled to the highest form of protection.

20. It goes without saying that the Examiner in this action will have access to all documents, whatever their designation. If the Examiner believes that Producing Parties are over-designating documents as "Professional's Eyes Only" or "Highly Confidential," the

12

Producing Parties are obligated under the Proposed Orders to confer with the Examiner on those designations, and consider amending them as warranted. And, if the parties are unable to satisfactorily resolve their differing views, such issues can be raised with and resolved by the Court. Allowing for meaningful protection of the most sensitive proprietary information is one of the easiest ways to assure that parties will continue to cooperate with the Investigation and save the Examiner – and the Court – from needless litigation regarding the production of documents in response to the Examiner's requests.[6]

        C.    The Examiner's Proposed Orders Lack Appropriate Restrictions On The Use Of The Rule 2004 Materials.

21. The problems presented by the overbreadth of the Special Service List and the inadequacy of the protections afforded under the Examiner's Proposed Protective Order are compounded by the unfettered ability of Receiving Parties to use the Rule 2004 Materials "in connection with Chapter 11 Cases," because it is not clear what that limitation means, or whether it imposes any true limit at all. The Court has already determined that the interests of the estates and all parties-in-interest will be better served by the appointment of an independent Examiner to carry out the Investigation, and for good reason. As an independent court-appointed representative, the Examiner functions to assure all interested parties that the Investigation is be conducted objectively and impartially and that sensitive or proprietary information disclosed during the Investigation will be adequately protected, and to encourage parties with potentially relevant information to cooperate in providing the information needed for the Investigation so

---

[6] Further, as requested in the Examiner's Motion and reflected in Exhibit A hereto, Cerberus also suggests that, in light of the scope of the document requests the Examiner is likely to propound and to avoid unnecessary disputes, the Examiner's Proposed Discovery Order be modified to specify that, unless otherwise agreed to by the Examiner or objected to by a disclosing party, the production of responsive documents to the Examiner shall commence "on a rolling basis" within 10 days of service of a subpoena. (*Compare* Cerberus' Proposed Discovery Order at 2 *with* ECF Doc. #1093 at ¶ 20.) Cerberus similarly proposes that privilege logs be produced on a rolling basis. (Cerberus' Proposed Discovery Order at 3.)

13

that it may be completed in a timely and efficient manner. Access to and use of the Rule 2004 Materials placed in a Document Depository should be governed by the same principle.

22. Rule 2004 provides:

> The examination of an entity under this rule . . . may relate *only* to acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge … [or] to the operation of any business and desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefore, and any other matter relevant to the case or to the formulation of a plan.

*See* Fed. R. Bankr. P. 2004(b) (emphasis added). The scope of the Examiner's Investigation is premised upon this Rule. Courts have the discretion to grant Rule 2004 discovery to a party-in-interest upon a showing by of good cause. *Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 703-04, 712; *Enron*, 281 B.R. at 840. Without such a showing, entities appearing on the Special Service List may use the Rule 2004 Materials to institute private litigation against Cerberus and other third parties, so long as they can argue in some fashion that the dispute is "in connection with the Chapter 11 Cases."[7]

23. At a minimum, Receiving Parties should agree that they "will not use or allow any Confidential Information to be used for any purpose other than for the purpose of performing their duties in connection with the Examiner's Investigation." This language will provide some assurance that the information will not be used for purposes inconsistent with Rule 2004 or the Investigation, and will encourage parties to continue to participate in a spirit of cooperation. Cerberus intends to continue to support the efficient administration of the estate,

---

[7] This definition is so broad that it would include virtually every contested matter and adversary proceeding commenced in the Chapter 11 Cases.

including the Investigation, and would prefer that all parties avoid unnecessary adversarial posturing.

## CONCLUSION

WHEREFORE, Cerberus respectfully requests that this Court deny the Examiner's Motion except to the extent the form of the Examiner's Discovery Order and the Examiner's Protective Order are modified as requested by Cerberus and as reflected in the attached Exhibit A and Exhibit B, and granting Cerberus such other and further relief as the Court deems just and proper.

Dated: August 14, 2012
      New York, New York

**SCHULTE ROTH & ZABEL LLP**

By:  /s/ Howard O. Godnick
Adam C. Harris
Howard O. Godnick
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel to Cerberus Capital Management, L.P.*