**Status Conference Date and Time: August 16, 2012 at 11:00 a.m. (Eastern time)**

PREET BHARARA
United States Attorney for the
Southern District of New York
By:  JOSEPH N. CORDARO
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2745
Facsimile: (212) 637-2686
E-mail: joseph.cordaro@usdoj.gov

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**STATEMENT OF THE UNITED STATES OF AMERICA CONCERNING
MOTION FOR ORDERS AUTHORIZING THE DEBTORS TO CONTINUE TO
PERFORM UNDER THE ALLY BANK SERVICING AGREEMENTS**

1.      The United States of America (the "United States" or the "Government"), by its

attorney Preet Bharara, United States Attorney for the Southern District of New York,

respectfully submits this Statement in connection with *Debtors' Motion for Interim and Final*

*Orders Under Bankruptcy Code Sections 105(a) and 363 Authorizing the Debtors to Continue to*

*Perform Under the Ally Bank Servicing Agreements in the Ordinary Course of Business* [Docket

No. 47] (the "Motion").  The Government has no objection to the Motion or approval of the

requested final order.  Nevertheless, the Government files this Statement in response to the

declaration of Thomas Marano, chief executive officer of Residential Capital LLC ("ResCap"),

dated July 16, 2012, submitted in further support of the Motion [Dkt. No. 793] (the "Marano

Declaration").  According to the Marano Declaration, because of a dispute between Debtors,

Ally Financial Inc., and Ally Bank, Debtors have "suspended all further solicitations" of borrowers in Ally Bank's loan portfolio. Marano Decl. ¶ 18. Were Rescap to impose an indefinite suspension of all such solicitations, as the Marano Declaration could be read to indicate, that suspension would violate the historic mortgage servicing agreement (the "DOJ/AG Settlement") reached earlier this year with the United States and 49 state attorneys general.

2.       Under the DOJ/AG Settlement, in exchange for a release of claims alleging misconduct that contributed to the Nation's housing crisis, five major mortgage servicers agreed, in addition to paying $25 billion in cash payments to governments and relief to borrowers, to make broad reforms that will reduce consumer confusion, improve service, and ensure more accurate representations in foreclosure and bankruptcy proceedings.[1] Among other things, ResCap and AFI committed to a national loan modification program whereby they would solicit eligible homeowners experiencing economic hardship and provide certain specified relief—for example, reductions in interest or principal—to those borrowers who accepted loan modifications under certain conditions.

3.       The commitments that ResCap and AFI undertook in the Consent Judgment must be fulfilled. As Mr. Marano acknowledged in his declaration, "[t]he Debtors' continued compliance with the DOJ/AG Settlement is a cornerstone of these chapter 11 cases." Marano Decl. ¶ 6. Nevertheless, the Marano Declaration also indicates that as a result of disputes among ResCap, AFI, and Ally Bank, ResCap is facing obstacles to performing certain loan modifications that are required under the Consent Judgment. Those disputes apparently arise out

---

[1]       On April 5, 2012, the DOJ/AG Settlement was entered as five consent judgments in the United States District Court for the District of Columbia in the matter styled *United States of America, et al. v. Bank of America Corp., et al.,* No. 12-cv-00361-RCC. The relevant consent judgment (the "Consent Judgment") was entered at Docket #13. The servicers who are parties to that Consent Judgment are ResCap, AFI, and GMAC Mortgage, LLC.

a January 30, 2012 letter agreement between Debtors and AFI that, in Debtors' view, caps

Debtors' obligation to reimburse AFI and Ally Bank in connection with modifications to Ally

Bank loans (the "Reimbursement Cap"). *See id.* at ¶¶ 9-10. Mr. Marano states that "[a]s a result

of the determination that we had reached the Reimbursement Cap, on June 18, 2012, the Debtors

suspended all further solicitations of Ally Bank loans." *Id.* at ¶ 18.

4.       The relief to consumers obtained in the DOJ/AG Settlement is critical to

homeowners, important to the housing market, and an essential element of ResCap's obligations

under the Consent Judgment. Other servicers in the settlement agreed to provide relief to

consumers in certain aggregate dollar amounts within three years, and were incentivized to

provide relief quickly by receiving "extra credit" for relief provided within the first year.

ResCap undertook the obligation to reach a monetary target and—in exchange for a reduced cash

payment obligation—agreed to solicit *all* borrowers who met certain criteria, and further to

provide relief to *any* of those eligible borrowers who accept a modification under certain

conditions, regardless of whether ResCap had also met its monetary target. Consent J., Ex. I at

§§ 3, 4, & 5. Unlike the other servicers, ResCap's obligations impose an additional requirement

that the solicitations "commence as soon as reasonably practicable following the entry of the

Consent Judgment." *Id.*, Ex. I at § 6(a)(i).[2]

5.       ResCap's obligation to solicit eligible borrowers as soon as reasonably practicable

serves an important purpose. The circumstances of individual homeowners and families can

change quickly, and dramatically. A family that was eligible for relief as of March 1, 2012,

---

[2]        The obligation to solicit all eligible borrowers expressly includes all but a specified
handful of the loans owned by Ally Bank not at issue here. *Id.*, Ex. I at § 4(a) (requiring
solicitation of "all borrowers [who meet certain criteria] *in the owned loan portfolios of the
ResCap Parties, AFI and its affiliates* with the exception of Ally Bank-owned CMG loans as of
March 1, 2012") (emphasis added).

could have, in the months that have elapsed, fallen irreparably behind on its mortgage, sold its

home at a severe loss or become the subject of foreclosure proceedings.  If the solicitations and

resulting relief owed under the DOJ/AG Settlement are suspended or unnecessarily delayed,

some families to whom relief is owed may no longer be in a position to be helped.  In addition,

the United States and the state attorneys general will not have received the full measure of relief

to which they were entitled.  With respect to ResCap and AFI, who committed to solicit and

provide relief to a particular universe of eligible borrowers, stopping or slowing down

solicitations would undermine the purpose of the obligation under the Consent Judgment to

"commence [solicitations] as soon as reasonably practicable." *Id.*, Ex. I at § 6(a)(i).

6.      The purported obstacles to continued solicitations appear to be disputes over who

will bear the financial burdens that arise from the continued solicitations.  While there may be a

variety of ways to resolve those disputes, they should not be resolved by imposing those

financial burdens on the underwater homeowners for whom the United States and 49 state

attorneys general obtained historic relief.  An indefinite suspension of solicitations would impose

just such a burden and would violate the Consent Judgment.

7.      While cognizant that the foregoing concerns do not present an obstacle to

issuance of the proposed final order approving the Motion, the United States raises these issues

in order to make all interested parties aware of the Government's position with respect to the

critical obligations of the Consent Judgment.  The United States reserves the right to seek

appropriate enforcement of the terms of the Consent Judgment, and to file an objection in this

bankruptcy proceeding to any motion, including a motion to approve a transfer of assets, on the

ground that it does not provide for continued fulfillment by the purchaser of the non-monetary

obligations of the DOJ/AG Settlement that are critical to protecting homeowners and deterring

future abuse.[3]

Dated: New York, New York
       August 15, 2012

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        *Attorney for the United States of America*


                          By:     */s/ Joseph N. Cordaro*
                                        JOSEPH N. CORDARO
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Telephone: (212) 637-2745
                                        Facsimile:  (212) 637-2686
                                        Email: joseph.cordaro@usdoj.gov

---

[3]      For purposes of completeness, the United States reiterates the concerns it raised in its *Statement of the United States of America Concerning Debtors' Motion to Approve Sale Procedures*, dated June 11, 2012 [Dkt. No. 290] (the "June 11 Statement").  As the June 11 Statement indicates, under the current version of the Asset Purchase Agreement between Debtors and Nationstar Mortgage LLC, the purchaser agrees to comply with only a subset of the DOJ/AG Settlement obligations, without enforcement requirements related to the independent monitor, a review of service member mortgages, or a mechanism whereby the Government may seek specific performance directly against the purchaser in the event of a failure to perform the obligations of the DOJ/AG Settlement.  *See* June 11 Statement at ¶ 10. These remain matters of great concern to the Government.