# EXHIBIT 3

## AMENDED AND RESTATED RMBS TRUST SETTLEMENT AGREEMENT WITH THE TALCOTT FRANKLIN GROUP

**EXECUTION COPY**

## AMENDED AND RESTATED RMBS TRUST SETTLEMENT AGREEMENT

This Amended and Restated RMBS Trust Settlement Agreement is entered into as of August 15, 2012, by and between Residential Capital, LLC and its direct and indirect subsidiaries (collectively, "ResCap" or the "Debtors"), on the one hand, and the Institutional Investors (as defined below), on the other hand (the "Settlement Agreement"), and amends and restates in its entirety the RMBS Trust Settlement Agreement entered into as of May 13, 2012, by and between ResCap, on the one hand, and the Institutional Investors, on the other hand. Each of ResCap and the Institutional Investors may be referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, certain ResCap entities were the Seller, Depositor, Servicer and/or Master Servicer for the securitizations identified on the attached Exhibit A (the "Settlement Trusts");

WHEREAS, certain ResCap entities are parties to certain applicable Pooling and Servicing Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Purchase Agreements and/or other agreements governing the Settlement Trusts (the "Governing Agreements"), and certain ResCap entities have, at times, acted as Master Servicer and/or Servicer for the Settlement Trusts pursuant to certain of the Governing Agreements;

WHEREAS, pursuant to the Governing Agreements, certain ResCap entities have contributed or sold loans into the Settlement Trusts (the "Mortgage Loans");

WHEREAS, the Institutional Investors have alleged that certain loans held by the Settlement Trusts were originally contributed in breach of representations and warranties contained in the Governing Agreements, allowing the Investors in such Settlement Trusts to seek to compel the trustee or indenture trustee (each, a "Trustee") to take certain actions with respect to those loans, and further have asserted past and continuing covenant breaches and defaults by various ResCap entities under the Governing Agreements;

WHEREAS, the Institutional Investors have indicated their intent under the Governing Agreements for each Settlement Trust in which the Institutional Investors collectively hold or are authorized investment managers for holders of at least 25% of a particular tranche of the Securities (as defined below) held by such Settlement Trust either to seek action by the Trustee for such Settlement Trust or to pursue claims, including but not limited to claims to compel ResCap to cure the alleged breaches of representations and warranties, and ResCap disputes such claims and allegations of breach and waives no rights, and preserves all of its defenses, with respect to such allegations and putative cure requirements;

WHEREAS, the Institutional Investors are jointly represented by Talcott Franklin P.C. ("Talcott Franklin"); Miller, Johnson, Snell & Cummiskey, P.L.C. ("Miller Johnson"); and Carter Ledyard & Milburn LLP ("Carter Ledyard") and have, through counsel, engaged in arm's length settlement negotiations with ResCap that included the exchange of confidential materials;

**EXECUTION COPY**

WHEREAS, ResCap filed petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, ResCap and the Institutional Investors have reached agreement concerning all claims of the Settlement Trusts under the Governing Agreements; and

WHEREAS, the Parties therefore enter into this Settlement Agreement to set forth their mutual understandings and agreements for terms for resolving the disputes regarding the Governing Agreements:

## AGREEMENT

NOW, THEREFORE, after good faith, arm's length negotiations without collusion, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

### ARTICLE I.    DEFINITIONS.

As used in this Settlement Agreement, in addition to the terms otherwise defined herein, the following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and the plural forms of each term defined if both forms of such term are used in this Settlement Agreement).  Any capitalized terms not defined in this Settlement Agreement shall have the definition given to them in the Governing Agreements.

Section 1.01    "Bankruptcy Code" shall mean title 11 of the United States Code.

Section 1.02    "Covered Trusts" means the Settlement Trusts listed in Exhibit D hereto and any other Settlement Trusts for which the Institutional Investors in the aggregate hold, and/or are authorized investment managers for holders of, 25% or more of the voting rights in one or more classes of notes, bonds and/or certificates backed by mortgage loans held by the Trusts.

Section 1.03    "Depositor Entity" means, for each individual Settlement Trust, the entity from the following list that the Governing Agreements define as the "Company" for that Settlement Trust, including but not limited to: Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Asset Securities Corp., Residential Accredit Loans, Inc., and Residential Asset Mortgage Products, Inc.

Section 1.04    "Direction" shall mean the direction by the Institutional Investors, to the extent permitted by the Governing Agreements, directing any Trustee to take or refrain from taking any action; *provided*, *however*, that in no event shall the Institutional Investors be required to provide a Trustee with any security or indemnity for action or inaction taken at the direction of the Institutional Investors and the Institutional Investors shall not be required to directly or indirectly incur any costs, fees, or expenses to compel any action or inaction by a Trustee, except that the Institutional Investors shall continue to retain contingency counsel.

Section 1.05    "Effective Date" shall have the meaning ascribed in Section 2.01.

-2-

**EXECUTION COPY**

Section 1.06    "Governmental Authority" shall mean any United States or foreign government, any state or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory, or administrative functions of or pertaining to the foregoing, or any other authority, agency, department, board, commission, or instrumentality of the United States, any State of the United States or any political subdivision thereof or any foreign jurisdiction, and any court, tribunal, or arbitrator(s) of competent jurisdiction, and any United States or foreign governmental or non-governmental self-regulatory organization, agency, or authority (including the New York Stock Exchange, Nasdaq, and the Financial Industry Regulatory Authority).

Section 1.07    "Institutional Investors" shall mean the authorized investment managers and Investors identified in the attached signature pages.

Section 1.08    "Investors" shall mean all certificateholders, bondholders and noteholders in the Settlement Trusts, and their successors in interest, assigns, pledgees, and/or transferees.

Section 1.09    "Net Losses" means, with respect to any Settlement Trust, the amount of net losses for such Settlement Trust that have been or are estimated to be borne by that trust from its inception date to its expected date of termination, as determined by the Expert (as defined in Exhibit B) in accordance with the methodology described in Exhibit B. For the avoidance of doubt, a loss on a mortgage loan that has been reimbursed or indemnified by reason of applicable policies of mortgage or bond insurance shall be considered a loss on a mortgage loan and included within the calculation of "Net Losses."

Section 1.10    "Person" shall mean any individual, corporation, company, partnership, limited liability company, joint venture, association, trust, or other entity, including a Governmental Authority.

Section 1.11    "Petition Date" means the date on which ResCap files petitions under chapter 11 of the Bankruptcy Code.

Section 1.12    "Plan" shall mean a chapter 11 plan of reorganization for the Debtors.

Section 1.13    "Purchaser" means Nationstar Mortgage LLC or any other successful bidder for any or all of the Debtors' mortgage loan origination and servicing platform.

Section 1.14    "Scheduling Order" shall mean the Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (II) the Trustees' Limited Objection to the Sale Motion, entered by the Bankruptcy Court on July 31, 2012.

Section 1.15    "Securities" shall mean securities, notes, bonds, certificates, and/or other instruments backed by mortgage loans held by Settlement Trusts.

Section 1.16    "Seller Entity" means, for each Settlement Trust, the entity from the following list that the Governing Agreements define as the "Seller" for that Trust, including but

not limited to: Residential Funding Company LLC (f/k/a Residential Funding Corporation) and GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation).

## ARTICLE II.  SETTLEMENT PROCESS.

Section 2.01    Effective Date.  This Settlement Agreement shall be effective immediately except as to the granting of allowed claims to the Accepting Trusts (as defined below in Section 5.01) and the releases set forth herein.  The claims allowance and releases shall only be effective, with respect to a specific Accepting Trust on the date on which a Trustee accepts the settlement with respect to such Settlement Trust (the "Effective Date").  However, for the sake of clarity, the Debtors' obligations hereunder are subject to the approval of this Settlement Agreement by the Court.

Section 2.02    Bankruptcy Court Approval.  The Debtors (a) orally presented this Settlement Agreement in court on the Petition Date, including the agreed amount of the Total Allowed Claim (as defined below in Section 5.01), and (b) shall comply with the schedule for the approval of this Settlement Agreement set forth in the Scheduling Order.  The Trustee for each Settlement Trust may accept the offer of a compromise contemplated by this Settlement Agreement on behalf of such Settlement Trust, within the time set forth in the Scheduling Order, by a writing substantially in the form of acceptance included in the proposed order for approval of this Settlement Agreement to be submitted to the Bankruptcy Court.

Section 2.03    Standing.  The Debtors agree that the Institutional Investors are parties in interest in the chapter 11 cases of ResCap for the purposes of enforcing rights and complying with obligations under this Settlement Agreement.  The Parties further agree that they will not oppose any effort of the Institutional Investors or any other Investor(s) in seeking status as a party in interest in the Chapter 11 Cases.

## ARTICLE III. REPRESENTATIONS AND WARRANTIES.

Section 3.01    Holdings and Authority.  As of August 15, 2012, lead counsel to the Institutional Investors, Talcott Franklin, has represented to ResCap that the Institutional Investors hold Securities representing in aggregate 25% of the voting rights in one or more classes of the Securities issued by each of the Settlement Trusts identified on the attached Exhibit D.  Each Institutional Investor represents that (i) it has the authority to take the actions contemplated by this Settlement Agreement, to the extent that it has the authority with respect to any other entities, account holders, or accounts for which or on behalf of which it is signing this Settlement Agreement, and (ii) it holds, or is the authorized investment manager for the holders of, the Securities listed in Exhibit D hereto, in the respective amounts set forth therein by CUSIP number, that such schedule was accurate as of the date set forth for the respective institution, and that since the date set forth for the Institutional Investor, the Institutional Investor has not, in the aggregate, materially decreased the Institutional Investor's holdings in the Securities.  The Parties agree that the aggregate amounts of Securities collectively held by the Institutional Investors for each Settlement Trust may be disclosed publicly, but that the individual holdings of the Institutional Investors shall remain confidential, subject to review only by ResCap, the Bankruptcy Court, the Office of the United States Trustee, the Trustees, and the official committee of unsecured creditors appointed in the Chapter 11 Cases.

-4-

Section 3.02    Holdings Retention.  As of August 15, 2012, the Institutional Investors hold Securities representing in aggregate 25% of the voting rights in one or more classes of the Securities issued by each of the Settlement Trusts identified on the attached Exhibit D.  The Institutional Investors, collectively, shall maintain holdings aggregating 25% of the voting rights in one or more classes of Securities of not less than 80% of the Covered Trusts ("Requisite Holdings") until the earliest of: (i) confirmation of a plan of reorganization, (ii) December 31, 2012, (iii) a Consenting Claimant Termination Event, or (iv) a Debtor Termination Event (as the terms in subsections (iii) and (iv) were defined in the plan support agreement agreed to by the Parties); *provided, however,* that any reduction in Requisite Holdings caused by exclusion of one or more trusts due to the exercise of voting rights by a third party guarantor or financial guaranty provider, shall not be considered in determining whether the Requisite Holdings threshold has been met.  If the Requisite Holdings are not maintained, ResCap shall have the right to terminate the Settlement Agreement, but ResCap shall not terminate the Settlement Agreement before  it has conferred in good faith with the Institutional Investors concerning whether termination is warranted.  For the avoidance of doubt, other than as set forth above, this Settlement Agreement shall not restrict the right of any Institutional Investor to sell or exchange any Securities issued by a Settlement Trust free and clear of any encumbrance.  The Institutional Investors will not sell any of the Securities for the purpose of avoiding their obligations under this Settlement Agreement, and each Institutional Investor commits to maintain at least one position in one of the Securities in one of the Settlement Trusts until the earliest of the dates set forth above.  If the Debtor reaches a similar agreement to this with another bondholder group, the Debtor will include a substantially similar proportionate holdings requirement in that agreement as contained herein.

ARTICLE IV. DIRECTION TO TRUSTEES AND INDENTURE TRUSTEES.

Section 4.01    Direction to Trustees and Indenture Trustees.  The relevant Institutional Investors for each Settlement Trust shall, by the time of the filing of a motion to approve this Settlement Agreement, provide the relevant Trustee with Direction to accept the settlement and compromises set forth herein.  The Institutional Investors hereby agree to confer in good faith with ResCap as to any further or other Direction that may be reasonably necessary to effectuate the settlement contemplated herein, including filing motions and pleadings with the Bankruptcy Court and making statements in open court in support of the Debtors' restructuring.

Section 4.02    No Inconsistent Directions.  Except for providing Directions in accordance with Section 4.01, the Institutional Investors agree that (i) between the date hereof and the Effective Date, with respect to the Securities issued by the Settlement Trusts, they will not, individually or collectively, direct, vote for, or take any other action that they may have the right or the option to take under the Governing Agreements or to join with any other Investors or the Trustee of any note, bond or other security issued by the Settlement Trusts, to cause the Trustees to enforce (or seek derivatively to enforce) any representations and warranties regarding the Mortgage Loans or the servicing of the Mortgage Loans, and (ii) to the extent that any of the Institutional Investors have already taken any such action, the applicable Institutional Investor will promptly rescind or terminate such action.  Nothing in the foregoing shall restrict the ability of the Institutional Investors to demand that any Investor who seeks to direct the Trustee for a Settlement Trust post any indemnity or bond required by the Governing Agreements for the applicable Settlement Trust.

Section 4.03    <u>Amendments to Governing Agreements Regarding Financing of Advances.</u>  The Institutional Investors agree to use commercially reasonable efforts (which shall not require the giving of any indemnity or other payment obligation or expenditure of out-of-pocket funds) to negotiate any request by the Debtors or the Trustees for any Settlement Trusts with respect to which the servicing rights are being assumed and assigned to the Purchaser, and if any Trustee shall require a vote of the certificate or note holders with respect thereto, shall vote in favor of (to the extent agreement is reached) any amendment to the relevant Governing Agreements and related documents requested by the Debtors in order to permit "Advances" (as it or any similar term may be defined in the Governing Agreements) to be financeable and to make such other amendments thereto as may be reasonably requested by the Debtors in accordance with any agreement to acquire all or substantially all of the Debtors' servicing assets, so long as such changes would not cause material financial detriment to the Settlement Trusts, their respective trustees, certificate or note holders, or the Institutional Investors.

## ARTICLE V.  <u>ALLOWANCE OF CLAIM.</u>

Section 5.01    <u>The Allowed Claim.</u>  ResCap hereby makes an irrevocable offer to settle, expiring at 5:00 p.m. prevailing New York time on the date that is set forth in the Scheduling Order, with each of the Settlement Trusts (the Settlement Trusts that timely agree to the terms of this Settlement Agreement being the "<u>Accepting Trusts</u>").  In consideration for such agreement, ResCap will provide a general unsecured claim of $8,700,000,000 in the aggregate against the Seller Entities and the Depositor Entities (as the Depositor Entities are jointly liable for such claim), and which claim is subject to the HoldCo Election (as defined below) right (the "<u>Total Allowed Claim</u>"), all of which shall be allocated and implemented as provided in Section 6.01. For the avoidance of doubt, the Total Allowed Claim shall be allocated among the Accepting Trusts, subject to the provisions of this Settlement Agreement.  Subject to the provisions of this Settlement Agreement, the Accepting Trusts shall be allowed an aggregate claim in an amount calculated as set forth below (such claim, including any claim provided pursuant to the HoldCo Election, the "<u>Allowed Claim</u>"), which aggregate claim shall be allocated to each Accepting Trust pursuant to Article VI herein.  The amount of the Allowed Claim shall equal (i) $8,700,000,000, less (ii) $8,700,000,000 multiplied by the percentage represented by (a) the total dollar amount of original principal balance for the Settlement Trusts not accepting the offer outlined above, divided by (b) the total dollar amount of original principal balance for all Settlement Trusts.

Section 5.02    <u>Waiver of Setoff and Recoupment.</u>  By accepting the offer to settle contained in Section 5.01, each Accepting Trust irrevocably waives any right to setoff and/or recoupment such Accepting Trust may have against ResCap, subject to the exclusions set forth in Section 8.06 of this agreement.

## ARTICLE VI. <u>ALLOCATION OF ALLOWED CLAIM.</u>

Section 6.01    <u>The Allocation of the Allowed Claim.</u>  Each Accepting Trust shall, subject to the HoldCo Election, be allocated a share of the Allowed Claim against its Seller Entity (each, an "<u>Allocated Seller Claim</u>") and its Depositor Entity (each, an "<u>Allocated Depositor Claim</u>" and each Allocated Depositor Claim together with the Allocated Seller Claim as to a particular

**EXECUTION COPY**

Accepting Trust, subject to the HoldCo Election, an "Allocated Claim"), calculated as set forth on Exhibit B hereto.

Section 6.02    HoldCo Election.    At any time prior to confirmation of a chapter 11 plan in the Chapter 11 Cases, each Accepting Trust shall have the option to, by written notice to the Debtors, make one or more elections (each, a "HoldCo Election"), with respect to all or any portion of the amount of each Accepting Trust's Allocated Claim (subject to an aggregate cap equal to 20% of such Accepting Trust's Allocated Claim), to receive in lieu of such elected portion a general unsecured claim against Residential Capital, LLC ("HoldCo"). For each Accepting Trust as to which a HoldCo Election is made, such Accepting Trust shall have an allowed claim against HoldCo in the amount of the HoldCo Election(s) so made (subject to the aggregate cap described above) (the "Allowed Holdco Claim") and the amount of the Allocated Seller Claim and Allocated Depositor Claim of that Accepting Trust shall be reduced by the amount of such Trust's Allowed HoldCo Claim.

Section 6.03    In the event the Bankruptcy Court does not approve the Allowed Claim as to a particular Seller Entity, Depositor Entity, or the HoldCo, after giving effect to the HoldCo Election, the settlement shall remain in full force with respect to any other Seller Entity, Depositor Entity, or HoldCo (pursuant to the HoldCo Election), as applicable; *provided, however,* that if the Allowed Claim in the amounts proposed herein is not approved as to any of the Seller Entities, Depositor Entities, or HoldCo (pursuant to the HoldCo Election), the Institutional Investors shall have the right to terminate this Settlement Agreement upon written notice to the Debtors; *provided, further,* that in the event that the Bankruptcy Court does not approve the Allowed Claim as to a particular Seller Entity, Depositor Entity, or HoldCo (pursuant to the HoldCo Election), that particular Seller Entity, Depositor Entity, or, in the case of disapproval of the HoldCo Election, HoldCo shall not receive any release, waiver, or discharge of any Released Claims pursuant to Article VII.

Section 6.04    Legal Fees.

(a) ResCap and the Institutional Investors agree that Talcott Franklin, Miller Johnson, and Carter Leydard shall, on the Effective Date, be allocated legal fees as follows, as an integrated and nonseverable part of this Settlement Agreement. First, Talcott Franklin, Miller Johnson, and Carter Leydard, as counsel to the Institutional Investors, shall be allocated by ResCap without conveyance to the Trustees the percentages of the Allowed Claim set forth on the fee schedule attached hereto as Exhibit C, without requirement of submitting any form of estate retention or fee application, for their work relating to these cases and the settlement. Second, the Debtors and Institutional Investors may further agree at any time, that the Debtors may pay Talcott Franklin, Miller Johnson, and Carter Leydard in cash, in an amount that Talcott Franklin, Miller Johnson, and Carter Leydard respectively agree is equal to the cash value of their respective portions of the Allowed Claim, and in any such event, no estate retention application, fee application or further order of the Bankruptcy Court shall be required as a condition of the Debtors making such agreed allocation. Third, the Debtors agree and the settlement approval order shall provide that the amount of the Allowed Claim payable to Talcott Franklin, Miller Johnson, and Carter Leydard may be reduced to a separate claim stipulation for convenience of the parties.

-7-

(b)   In the event that, prior to acceptance of this compromise by a Trustee for a Settlement Trust other than a Covered Trust, counsel to Investors in such Settlement Trust cause a direction to be given by more than 25% of the holders of a tranche of such Settlement Trust to accept this compromise, then the same provisions as contained in Section 6.02(a) shall apply to such counsel, solely as to the amounts allocated to such Settlement Trust. Such counsel shall be entitled to a share of the fee for such trust equal to the ratio of (a) 25% minus the percentage of such tranche held by Institutional Investors divided by (b) 25%. Counsel would be required to identify itself and satisfy the Debtors and Institutional Investors as to the holdings of client-investors and that counsel caused such directions.

ARTICLE VII.        RELEASES.

Section 7.01    Releases.   Except as set forth in Article VIII, as of the Effective Date, with respect to each and every Accepting Trust, and in exchange for the Allowed Claim, the Institutional Investors, Accepting Trusts, Trustees in respect of such trusts, and any Persons claiming by, through or on behalf of such Accepting Trust or the Trustees of such trusts (including Investors claiming derivatively) (collectively, the "Releasors"), irrevocably and unconditionally grant a full, final, and complete release, waiver, and discharge of all alleged or actual claims, demands to repurchase, demands to cure, demands to substitute, counterclaims, defenses, rights of setoff, rights of rescission, liens, disputes, liabilities, losses, debts, costs, expenses, obligations, demands, claims for accountings or audits, alleged events of default, damages, rights, and causes of action of any kind or nature whatsoever, whether asserted or unasserted, known or unknown, suspected or unsuspected, fixed or contingent, in contract, tort, or otherwise, secured or unsecured, accrued or unaccrued, whether direct or derivative, arising under law or equity, against ResCap and its officers, directors, and employees (but in no case does this section apply to Ally Financial Inc. ("AFI") or any person who is an officer or director of AFI) that arise under the Governing Agreements. Such released claims include, but are not limited to, claims arising out of and/or relating to (i) the origination and sale of mortgage loans to the Accepting Trusts (including, without limitation, the liability of any Debtors that are party to a Pooling and Servicing Agreement with respect to representations and warranties made in connection with such sale or with respect to the noticing and enforcement of any remedies in respect of alleged breaches of such representations and warranties) (collectively, the "Origination-Related Provisions"), (ii) the documentation of the Mortgage Loans held by the Accepting Trusts including with respect to allegedly defective, incomplete, or non-existent documentation, as well as issues arising out of or relating to recordation, title, assignment, or any other matter relating to legal enforceability of a Mortgage or Mortgage Note, or any alleged failure to provide notice of such defective, incomplete or non-existent documentation, (iii) the servicing of the Mortgage Loans held by the Accepting Trusts (including any claim relating to the timing of collection efforts or foreclosure efforts, loss mitigation, transfers to subservicers, advances or servicing advances) (the "Servicing Claims"), but only to the extent assumed pursuant to Section 365 of the Bankruptcy Code by an assignee to the applicable Debtor in its capacity as Master Servicer or Servicer under any Governing Agreement (the "Assumed Servicing Claims"), (iv) any duty of a debtor as master servicer, servicer or sub-servicer to notice and enforce remedies in respect of alleged breaches of representations and warranties (together with the Assumed Servicing Claims, the "Released Servicing Claims"), (v) setoff or recoupment

-8-

under the Governing Agreements against ResCap with respect to the Origination-Related Provisions or the Released Servicing Claims, and (vi) any loan seller that either sold loans to ResCap or AFI that were sold and transferred to such Accepting Trust or sold loans directly to such Accepting Trust, in all cases prior to the Petition Date (collectively, all such claims being defined as the "Released Claims").  For the avoidance of doubt, this release does not include individual direct claims for securities fraud or other disclosure-related claims arising from the purchase or sale of Securities.

Section 7.02    Release of Claims Against Investors, Accepting Trusts, and Trustees. Except as set forth in Article VIII, as of the Effective Date, ResCap irrevocably and unconditionally grants to the Accepting Trusts, Trustees in respect of such trusts, and Investors in such trusts, as well as such Accepting Trusts', Trustees' and Investors' respective officers, directors, and employees, a full final, and complete release, waiver, and discharge of all alleged or actual claims from any claim it may have under or arising out of the Governing Agreements.

Section 7.03    Agreement Not to Pursue Relief from the Stay.  The Institutional Investors agree that neither they nor their successors in interest, assigns, pledges, delegates, affiliates, subsidiaries, and/or transferees, will seek relief from the automatic stay imposed by section 362 of the Bankruptcy Code in order to institute, continue or otherwise prosecute any action relating to the Released Claims; provided, however, nothing contained herein shall preclude the Institutional Investors or their advised clients from seeking any such relief with respect to direct claims for securities fraud or other disclosure-related claims arising from the purchase or sale of Securities.  ResCap reserves its rights and defenses therewith.

Section 7.04    Inclusion of Accepting Trusts and Trustees in Plan Release and Exculpation Provisions.  The Accepting Trusts and the Trustees in respect of any such Accepting Trust and their respective counsel shall be entitled to the benefit of any releases and plan exculpation provisions, if any, included in the Plan, which provisions shall be no less favorable than the releases and plan exculpation provisions extended to similarly situated creditors or parties in interest who are parties to any plan support agreement with ResCap.

ARTICLE VIII.    CLAIMS NOT RELEASED

Section 8.01    Administration of the Mortgage Loans.  The releases and waivers in Article VII herein do not include: (i) claims that first arise after the Effective Date and are based in whole or in part on any actions, inactions, or practices of the Master Servicer, Servicer, or Subservicer as to the servicing of the Mortgage Loans held by the Accepting Trusts, and (ii) any Servicing Claim that is not an Assumed Servicing Claim and for which the Court finds a cure or rejection claim exists pursuant to Section 365 of the Bankruptcy Code (it being understood that such cure or rejection claims, if any, are not intended to be affected by such releases and waivers).

Section 8.02    Financial-Guaranty Provider Rights and Obligations. To the extent that any third party guarantor or financial-guaranty provider with respect to any Settlement Trust has rights or obligations independent of the rights or obligations of the Investors, the Trustees, or the Settlement Trusts, the releases and waivers in Article VII are not intended to and shall not release such rights.

-9-

Section 8.03    Settlement Agreement Rights. The Parties do not release or waive any rights or claims against each other to enforce the terms of this Settlement Agreement or the Allowed Claim.

Section 8.04    Disclosure Claims.  The releases and waivers in Article VII do not include any claims based on improper disclosures under federal or state securities law.

Section 8.05    Reservation of Rights.  Notwithstanding anything in this Settlement Agreement to the contrary, the Institutional Investors have not waived their right to file an objection to a motion of the holders of the ResCap 9 5/8% bonds requesting payment of any interest on account of their ResCap 9 5/8% bond claims that may be due and owing after the Petition Date.

Section 8.06    HoldCo Election.  Notwithstanding anything in this Agreement, the right to make a HoldCo Election set forth in Section 6.02 is not released by this Agreement.

ARTICLE IX. RELEASE OF UNKNOWN CLAIMS.

Each of the Parties acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR."

The Parties acknowledge that inclusion of the provisions of this Article IX to this Settlement Agreement was a material and separately bargained for element of this Settlement Agreement.

ARTICLE X.  OTHER PROVISIONS

Section 10.01  Voluntary Agreement.  Each Party acknowledges that it has read all of the terms of this Settlement Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right and enters into this Settlement Agreement voluntarily and without duress.

Section 10.02  No Admission of Breach or Wrongdoing.  ResCap has denied and continues to deny any breach, fault, liability, or wrongdoing.  This denial includes, but is not limited to, breaches of representations and warranties, violations of state or federal securities laws, and other claims sounding in contract or tort in connection with any securitizations, including those for which ResCap was the Seller, Servicer and/or Master Servicer.  Neither this Settlement Agreement, whether or not consummated, any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, whether or not consummated,

-10-

shall be construed as, or deemed to be evidence of, an admission or concession on the part of ResCap with respect to any claim or of any breach, liability, fault, wrongdoing, or damage whatsoever, or with respect to any infirmity in any defense that ResCap has or could have asserted.

Section 10.03  <u>No Admission Regarding Claim Status</u>.  ResCap expressly states that in the event this Settlement Agreement is not consummated or is terminated prior to the Effective Date, then neither this Settlement Agreement, nor any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, shall be construed as, or deemed to be evidence of, an admission or concession on the part of ResCap that any claims asserted by the Institutional Investors are not contingent, unliquidated or disputed.  The Institutional Investors expressly state that in the event this Settlement Agreement is not consummated or is terminated prior to the Effective Date, neither this Settlement Agreement, nor any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, shall be construed as, or deemed to be evidence of, an admission or concession on the part of the Institutional Investors that any claims asserted by the Institutional Investors and Trustees are not limited to the amounts set forth in this Settlement Agreement or are of any particular priority.

Section 10.04  <u>Counterparts</u>.  This Settlement Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Settlement Agreement.  Delivery of a signature page to this Settlement Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Settlement Agreement.

Section 10.05  <u>Joint Drafting</u>.  This Settlement Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Settlement Agreement, no provision shall be construed and interpreted for or against any of the Parties because such provision or any other provision of the Settlement Agreement as a whole is purportedly prepared or requested by such Party.

Section 10.06  <u>Entire Agreement</u>.  This document contains the entire agreement between the Parties, and may only be modified, altered, amended, or supplemented in writing signed by the Parties or their duly appointed agents.  All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this Settlement Agreement.

Section 10.07  <u>Specific Performance</u>.  It is understood that money damages are not a sufficient remedy for any breach of this Settlement Agreement, and the Parties shall have the right, in addition to any other rights and remedies contained herein, to seek specific performance, injunctive, or other equitable relief from the Bankruptcy Court as a remedy for any such breach. The Parties hereby agree that specific performance shall be their only remedy for any violation of this Agreement.

Section 10.08  <u>Authority</u>.  Each Party represents and warrants that each Person who executes this Settlement Agreement on its behalf is duly authorized to execute this Settlement Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Settlement Agreement.

-11-

**EXECUTION COPY**

Section 10.09  <u>No Third Party Beneficiaries</u>.  There are no third party beneficiaries of this Settlement Agreement.

Section 10.10  <u>Headings.</u>  The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

Section 10.11  <u>Notices</u>.  All notices or demands given or made by one Party to the other relating to this Settlement Agreement shall be in writing and either personally served or sent by registered or certified mail, postage paid, return receipt requested, overnight delivery service, or by electronic mail transmission, and shall be deemed to be given for purposes of this Settlement Agreement on the earlier of the date of actual receipt or three days after the deposit thereof in the mail or the electronic transmission of the message.  Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with this Section, such notices or demands shall be sent as follows:

> To:    Institutional Investors
> c/o Talcott Franklin P.C.
> 208 N. Market Street
> Suite 200
> Dallas, TX 75202
> Tel: 214-736-8730
> Email: tal@talcottfranklin.com
> -and-
> Miller, Johnson, Snell & Cummiskey, P.L.C.
> 250 Monroe Avenue NW
> Suite 800
> P.O. Box 306
> Grand Rapids, MI 49501-0306
> Tel:  618-831-1748
> Email: sarbt@millerjohnson.com
> -and-
> Carter Ledyard & Milburn LLP
> 2 Wall Street
> New York, New York 10005
> Tel: 212-238-8607
> Email: gadsden@clm.com


> To:    ResCap
> c/o Gary S. Lee
> Jamie A. Levitt
> Morrison & Foerster LLP
> 1290 Avenue of the Americas
> New York, NY 10104
> Tel: 212-468-8000

-12-

**EXECUTION COPY**

Email: glee@mofo.com
jlevitt@mofo.com

Section 10.12  Disputes.  This Settlement Agreement, and any disputes arising under or in connection with this Settlement Agreement, are to be governed by and construed in accordance with the laws of the State of New York, without giving effect to the choice of laws principles thereof.  Further, by its execution and delivery of this Settlement Agreement, each of the Parties hereto hereby irrevocably and unconditionally agrees that the United States District Court for the Southern District of New York shall have jurisdiction to enforce this Settlement Agreement, *provided*, *however*, that, upon commencement of the Chapter 11 Cases, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of or in connection with this Settlement Agreement.

Section 10.13  The Parties have agreed to include the following statement in the proposed order attached to the Debtors' motion to approve this Settlement Agreement: "Nothing contained in the RMBS Trust Settlement Agreement, the order approving the RMBS Trust Settlement Agreement, and any associated expert reports, including exhibits, schedules, declarations, and other documents attached thereto or referenced therein, or in any declarations, pleadings, or other documents or evidence submitted to, or filed in, the Bankruptcy Court in connection therewith, shall be construed as an admission of, or to prejudice in any way, Ally Financial Inc. and its non-Debtor direct and indirect subsidiaries and affiliates (collectively, "Ally") and may not be used as evidence against Ally in any court proceeding."

Section 10.14  Notwithstanding anything to the contrary in this Settlement Agreement, nothing herein is intended to or shall be deemed to amend any of the Governing Agreements for any Settlement Trust.

**[REST OF PAGE INTENTIONALLY LEFT BLANK]**

-13-

**EXECUTION COPY**

Dated the 15th day of August, 2012.


Talcott Franklin P.C. on behalf of the
Institutional Investors

Signature:

Name:  Talcott J. Franklin

Title:    Principal, Talcott Franklin P.C.

-14-

**EXECUTION COPY**

Dated the 15th day of August, 2012.


Residential Capital, LLC
for itself and its direct and indirect subsidiaries

Signature: _____

Name: _Tammy Hamzehpour_

Title: _General Counsel_

-15-

## Exhibit A- Trusts

| Deal Name | Original Issue Balance (in Thousands) | Deal Name | Original Issue Balance (in Thousands) |
|---|---|---|---|
| 2004-AR1 | 635.0 | 2004-QS12 | 424.3 |
| 2004-AR2 | 510.1 | 2004-QS13 | 129.2 |
| 2004-GH1 | 224.1 | 2004-QS14 | 212.9 |
| 2004-HE1 | 1,292.3 | 2004-QS15 | 213.7 |
| 2004-HE2 | 711.5 | 2004-QS16 | 534.7 |
| 2004-HE3 | 977.3 | 2004-QS2 | 292.3 |
| 2004-HE4 | 1,018.0 | 2004-QS3 | 207.8 |
| 2004-HE5 | 700.0 | 2004-QS4 | 320.6 |
| 2004-HI1 | 235.0 | 2004-QS5 | 293.7 |
| 2004-HI2 | 275.0 | 2004-QS6 | 156.5 |
| 2004-HI3 | 220.0 | 2004-QS7 | 449.2 |
| 2004-HLTV1 | 175.0 | 2004-QS8 | 271.0 |
| 2004-HS1 | 477.1 | 2004-QS9 | 105.1 |
| 2004-HS2 | 604.1 | 2004-RP1 | 199.5 |
| 2004-HS3 | 284.0 | 2004-RS1 | 1,400.0 |
| 2004-J1 | 401.0 | 2004-RS10 | 1,250.0 |
| 2004-J2 | 400.6 | 2004-RS11 | 925.0 |
| 2004-J3 | 350.0 | 2004-RS12 | 975.0 |
| 2004-J4 | 600.1 | 2004-RS2 | 875.0 |
| 2004-J5 | 551.9 | 2004-RS3 | 600.0 |
| 2004-J6 | 408.0 | 2004-RS4 | 1,100.0 |
| 2004-KR1 | 2,000.0 | 2004-RS5 | 1,050.0 |
| 2004-KR2 | 1,250.0 | 2004-RS6 | 1,000.0 |
| 2004-KS1 | 950.0 | 2004-RS7 | 1,183.7 |
| 2004-KS10 | 986.0 | 2004-RS8 | 900.0 |
| 2004-KS11 | 692.7 | 2004-RS9 | 950.0 |
| 2004-KS12 | 541.8 | 2004-RZ1 | 485.0 |
| 2004-KS2 | 990.0 | 2004-RZ2 | 475.0 |
| 2004-KS3 | 675.0 | 2004-RZ3 | 360.0 |
| 2004-KS4 | 1,000.0 | 2004-RZ4 | 276.6 |
| 2004-KS5 | 1,175.0 | 2004-S1 | 307.7 |
| 2004-KS6 | 1,000.0 | 2004-S2 | 362.0 |
| 2004-KS7 | 850.0 | 2004-S3 | 228.3 |
| 2004-KS8 | 600.0 | 2004-S4 | 460.3 |
| 2004-KS9 | 600.0 | 2004-S5 | 423.5 |
| 2004-PS1 | 100.1 | 2004-S6 | 527.2 |
| 2004-QA1 | 201.3 | 2004-S7 | 105.3 |
| 2004-QA2 | 365.1 | 2004-S8 | 311.0 |
| 2004-QA3 | 320.1 | 2004-S9 | 645.9 |
| 2004-QA4 | 290.2 | 2004-SA1 | 250.1 |
| 2004-QA5 | 325.1 | 2004-SL1 | 632.9 |
| 2004-QA6 | 720.3 | 2004-SL2 | 499.0 |
| 2004-QS1 | 319.9 | 2004-SL3 | 222.5 |
| 2004-QS10 | 216.6 | 2004-SL4 | 206.5 |
| 2004-QS11 | 217.5 | 2004-SP1 | 233.7 |

| Deal Name | Original Issue Balance (in Thousands) | Deal Name | Original Issue Balance (in Thousands) |
|---|---|---|---|
| 2004-SP2 | 145.1 | 2005-KS8 | 1,165.8 |
| 2004-SP3 | 306.9 | 2005-KS9 | 487.0 |
| 2004-VFT | 820.7 | 2005-NC1 | 870.8 |
| 2005-AA1 | 265.6 | 2005-QA1 | 296.7 |
| 2005-AF1 | 235.5 | 2005-QA10 | 621.8 |
| 2005-AF2 | 296.9 | 2005-QA11 | 525.1 |
| 2005-AHL1 | 463.7 | 2005-QA12 | 285.2 |
| 2005-AHL2 | 434.2 | 2005-QA13 | 560.2 |
| 2005-AHL3 | 488.8 | 2005-QA2 | 501.0 |
| 2005-AR1 | 399.8 | 2005-QA3 | 500.0 |
| 2005-AR2 | 458.4 | 2005-QA4 | 525.2 |
| 2005-AR3 | 523.7 | 2005-QA5 | 241.8 |
| 2005-AR4 | 386.1 | 2005-QA6 | 575.5 |
| 2005-AR5 | 597.2 | 2005-QA7 | 575.0 |
| 2005-AR6 | 592.0 | 2005-QA8 | 519.5 |
| 2005-EFC1 | 1,101.5 | 2005-QA9 | 650.5 |
| 2005-EFC2 | 679.3 | 2005-QO1 | 711.1 |
| 2005-EFC3 | 731.9 | 2005-QO2 | 425.1 |
| 2005-EFC4 | 707.8 | 2005-QO3 | 500.6 |
| 2005-EFC5 | 693.3 | 2005-QO4 | 797.0 |
| 2005-EFC6 | 672.7 | 2005-QO5 | 1,275.1 |
| 2005-EFC7 | 698.2 | 2005-QS1 | 214.6 |
| 2005-EMX1 | 792.8 | 2005-QS10 | 265.7 |
| 2005-EMX2 | 620.4 | 2005-QS11 | 213.6 |
| 2005-EMX3 | 674.5 | 2005-QS12 | 528.9 |
| 2005-EMX4 | 492.6 | 2005-QS13 | 639.2 |
| 2005-EMX5 | 380.0 | 2005-QS14 | 615.8 |
| 2005-HE1 | 991.1 | 2005-QS15 | 431.5 |
| 2005-HE2 | 1,113.5 | 2005-QS16 | 428.0 |
| 2005-HE3 | 988.0 | 2005-QS17 | 540.1 |
| 2005-HI1 | 240.0 | 2005-QS2 | 213.0 |
| 2005-HI2 | 240.0 | 2005-QS3 | 475.6 |
| 2005-HI3 | 224.9 | 2005-QS4 | 211.7 |
| 2005-HS1 | 853.8 | 2005-QS5 | 214.0 |
| 2005-HS2 | 577.5 | 2005-QS6 | 265.1 |
| 2005-HSA1 | 278.8 | 2005-QS7 | 370.0 |
| 2005-J1 | 525.5 | 2005-QS8 | 104.1 |
| 2005-KS1 | 708.8 | 2005-QS9 | 371.0 |
| 2005-KS10 | 1,299.2 | 2005-RP1 | 343.1 |
| 2005-KS11 | 1,339.3 | 2005-RP2 | 301.1 |
| 2005-KS12 | 1,117.2 | 2005-RP3 | 282.5 |
| 2005-KS2 | 543.4 | 2005-RS1 | 975.0 |
| 2005-KS3 | 413.5 | 2005-RS2 | 725.0 |
| 2005-KS4 | 411.1 | 2005-RS3 | 741.3 |
| 2005-KS5 | 401.8 | 2005-RS4 | 522.4 |
| 2005-KS6 | 596.2 | 2005-RS5 | 497.5 |
| 2005-KS7 | 387.6 | 2005-RS6 | 1,183.2 |

| Deal Name | Original Issue Balance (in Thousands) | Deal Name | Original Issue Balance (in Thousands) |
|---|---|---|---|
| 2005-RS7 | 493.0 | 2006-HI4 | 272.7 |
| 2005-RS8 | 660.0 | 2006-HI5 | 247.5 |
| 2005-RS9 | 1,179.0 | 2006-HLTV1 | 229.9 |
| 2005-RZ1 | 203.8 | 2006-HSA1 | 461.4 |
| 2005-RZ2 | 333.7 | 2006-HSA2 | 447.9 |
| 2005-RZ3 | 340.0 | 2006-HSA3 | 201.0 |
| 2005-RZ4 | 411.2 | 2006-HSA4 | 402.1 |
| 2005-S1 | 463.1 | 2006-HSA5 | 295.6 |
| 2005-S2 | 260.9 | 2006-J1 | 550.0 |
| 2005-S3 | 183.1 | 2006-KS1 | 840.1 |
| 2005-S4 | 259.4 | 2006-KS2 | 977.5 |
| 2005-S5 | 258.2 | 2006-KS3 | 1,125.9 |
| 2005-S6 | 412.9 | 2006-KS4 | 687.8 |
| 2005-S7 | 311.7 | 2006-KS5 | 687.1 |
| 2005-S8 | 312.3 | 2006-KS6 | 529.1 |
| 2005-S9 | 366.6 | 2006-KS7 | 532.7 |
| 2005-SA1 | 295.2 | 2006-KS8 | 535.9 |
| 2005-SA2 | 500.8 | 2006-KS9 | 1,197.1 |
| 2005-SA3 | 675.2 | 2006-NC1 | 536.8 |
| 2005-SA4 | 850.5 | 2006-NC2 | 745.2 |
| 2005-SA5 | 355.3 | 2006-NC3 | 504.9 |
| 2005-SL1 | 370.5 | 2006-QA1 | 603.9 |
| 2005-SL2 | 168.9 | 2006-QA10 | 375.5 |
| 2005-SP1 | 831.0 | 2006-QA11 | 372.4 |
| 2005-SP2 | 490.2 | 2006-QA2 | 394.0 |
| 2005-SP3 | 285.7 | 2006-QA3 | 398.5 |
| 2006-AR1 | 508.7 | 2006-QA4 | 304.4 |
| 2006-AR2 | 373.0 | 2006-QA5 | 695.6 |
| 2006-EFC1 | 593.2 | 2006-QA6 | 625.8 |
| 2006-EFC2 | 387.6 | 2006-QA7 | 588.2 |
| 2006-EMX1 | 424.6 | 2006-QA8 | 795.1 |
| 2006-EMX2 | 550.1 | 2006-QA9 | 369.2 |
| 2006-EMX3 | 773.6 | 2006-QH1 | 337.9 |
| 2006-EMX4 | 661.7 | 2006-QO1 | 901.2 |
| 2006-EMX5 | 580.2 | 2006-QO10 | 895.7 |
| 2006-EMX6 | 620.5 | 2006-QO2 | 665.5 |
| 2006-EMX7 | 495.3 | 2006-QO3 | 644.8 |
| 2006-EMX8 | 698.6 | 2006-QO4 | 843.2 |
| 2006-EMX9 | 728.8 | 2006-QO5 | 1,071.6 |
| 2006-HE1 | 1,274.2 | 2006-QO6 | 1,290.3 |
| 2006-HE2 | 626.2 | 2006-QO7 | 1,542.4 |
| 2006-HE3 | 1,142.3 | 2006-QO8 | 1,288.1 |
| 2006-HE4 | 1,159.1 | 2006-QO9 | 895.6 |
| 2006-HE5 | 1,244.5 | 2006-QS1 | 323.8 |
| 2006-HI1 | 214.2 | 2006-QS10 | 533.6 |
| 2006-HI2 | 237.4 | 2006-QS11 | 751.5 |
| 2006-HI3 | 223.2 | 2006-QS12 | 541.3 |

| Deal Name | Original Issue Balance (in Thousands) | Deal Name | Original Issue Balance (in Thousands) |
|---|---|---|---|
| 2006-QS13 | 641.0 | 2006-SP3 | 291.9 |
| 2006-QS14 | 753.7 | 2006-SP4 | 303.9 |
| 2006-QS15 | 538.6 | 2007-EMX1 | 692.9 |
| 2006-QS16 | 752.1 | 2007-HE1 | 1,185.9 |
| 2006-QS17 | 537.0 | 2007-HE2 | 1,240.9 |
| 2006-QS18 | 1,181.9 | 2007-HE3 | 350.6 |
| 2006-QS2 | 881.7 | 2007-HI1 | 255.0 |
| 2006-QS3 | 969.8 | 2007-HSA1 | 546.8 |
| 2006-QS4 | 752.3 | 2007-HSA2 | 1,231.4 |
| 2006-QS5 | 698.0 | 2007-HSA3 | 796.4 |
| 2006-QS6 | 858.8 | 2007-KS1 | 415.6 |
| 2006-QS7 | 537.5 | 2007-KS2 | 961.5 |
| 2006-QS8 | 966.3 | 2007-KS3 | 1,270.3 |
| 2006-QS9 | 540.1 | 2007-KS4 | 235.9 |
| 2006-RP1 | 293.0 | 2007-QA1 | 410.1 |
| 2006-RP2 | 317.0 | 2007-QA2 | 367.0 |
| 2006-RP3 | 290.4 | 2007-QA3 | 882.4 |
| 2006-RP4 | 357.4 | 2007-QA4 | 243.5 |
| 2006-RS1 | 1,173.6 | 2007-QA5 | 504.1 |
| 2006-RS2 | 785.6 | 2007-QH1 | 522.3 |
| 2006-RS3 | 741.6 | 2007-QH2 | 348.4 |
| 2006-RS4 | 887.5 | 2007-QH3 | 349.5 |
| 2006-RS5 | 382.6 | 2007-QH4 | 401.0 |
| 2006-RS6 | 372.2 | 2007-QH5 | 497.5 |
| 2006-RZ1 | 483.8 | 2007-QH6 | 597.0 |
| 2006-RZ2 | 368.6 | 2007-QH7 | 347.0 |
| 2006-RZ3 | 688.3 | 2007-QH8 | 560.1 |
| 2006-RZ4 | 851.8 | 2007-QH9 | 594.4 |
| 2006-RZ5 | 505.1 | 2007-QO1 | 625.1 |
| 2006-S1 | 367.1 | 2007-QO2 | 529.3 |
| 2006-S10 | 1,087.7 | 2007-QO3 | 296.3 |
| 2006-S11 | 623.2 | 2007-QO4 | 502.8 |
| 2006-S12 | 1,204.3 | 2007-QO5 | 231.2 |
| 2006-S2 | 260.6 | 2007-QS1 | 1,297.4 |
| 2006-S3 | 337.8 | 2007-QS10 | 435.8 |
| 2006-S4 | 313.9 | 2007-QS11 | 305.8 |
| 2006-S5 | 678.1 | 2007-QS2 | 536.7 |
| 2006-S6 | 599.6 | 2007-QS3 | 971.6 |
| 2006-S7 | 469.7 | 2007-QS4 | 746.9 |
| 2006-S8 | 416.3 | 2007-QS5 | 432.7 |
| 2006-S9 | 442.3 | 2007-QS6 | 808.3 |
| 2006-SA1 | 275.1 | 2007-QS7 | 803.3 |
| 2006-SA2 | 791.3 | 2007-QS8 | 651.8 |
| 2006-SA3 | 350.9 | 2007-QS9 | 707.0 |
| 2006-SA4 | 282.3 | 2007-RP1 | 334.4 |
| 2006-SP1 | 275.9 | 2007-RP2 | 263.3 |
| 2006-SP2 | 348.1 | 2007-RP3 | 346.6 |

| Deal Name | Original Issue Balance (in Thousands) |
|---|---|
| 2007-RP4 | 239.2 |
| 2007-RS1 | 478.3 |
| 2007-RS2 | 376.8 |
| 2007-RZ1 | 329.3 |
| 2007-S1 | 522.5 |
| 2007-S2 | 472.2 |
| 2007-S3 | 575.3 |
| 2007-S4 | 314.5 |
| 2007-S5 | 524.8 |
| 2007-S6 | 707.7 |
| 2007-S7 | 419.1 |
| 2007-S8 | 488.8 |
| 2007-S9 | 172.4 |
| 2007-SA1 | 310.8 |
| 2007-SA2 | 385.1 |
| 2007-SA3 | 363.8 |
| 2007-SA4 | 414.9 |
| 2007-SP1 | 346.6 |
| 2007-SP2 | 279.3 |
| 2007-SP3 | 298.1 |
| **Grand Total** | **220,987.7** |

**EXECUTION COPY**

## **EXHIBIT B**

## **ALLOCATION OF ALLOWED CLAIM**

1.      The Allowed Claim shall be allocated amongst the Accepting Trusts by the Trustees pursuant to the determination of a qualified financial advisor (the "Expert") who will make any determinations and perform any calculations required in connection with the allocation of the Allowed Claim among the Accepting Trusts.  To the extent that the collateral in any Accepting Trust is divided by the Governing Agreements into groups of loans ("Loan Groups") so that ordinarily only certain classes of investors benefit from the proceeds of particular Loan Groups, those Loan Groups shall be deemed to be separate Accepting Trusts for purposes of the allocation and distribution methodologies set forth below.  The Expert is to apply the following allocation formulas:

(i)   *First,* the Expert shall calculate the amount of Net Losses for each Accepting Trust as a percentage of the sum of the Net Losses for all Accepting Trusts (such amount, the "Net Loss Percentage");

(ii)   *Second,* the Expert shall calculate the "Allocated Depositor Claim" for each Accepting Trust by multiplying (A) the amount of the Allowed Claim by (B) the Net Loss Percentage for such Accepting Trust, expressed as a decimal; provided that the Expert shall be entitled to make adjustments to the Allocated Depositor Claim of each Accepting Trust to ensure that the effects of rounding do not cause the sum of the Allocated Depositor Claims for all Accepting Trusts to exceed the amount of the Allowed Claim; and

(iii)   *Third,* the Expert shall calculate the "Allocated Seller Claim" for each Accepting Trust by multiplying (A) the amount of the Allowed Claim by (B) the Net Loss Percentage for such Accepting Trust, expressed as a decimal; provided that the Expert shall be entitled to make adjustments to the Allocated Seller Claim of each Accepting Trust to ensure that the effects of rounding do not cause the sum of the Allocated Seller Claims for all Accepting Trusts to exceed the amount of the Allowed Claim.

(iv)   Any HoldCo Claim provided to an Accepting Trust making one or more HoldCo Elections, and any reduction to the Allocated Depositor Claim and Allocated Seller Claim of that Accepting Trust, shall be calculated pursuant to Section 6.02.

(v)   For the avoidance of doubt, and subject to the HoldCo Election, each Accepting Trust shall receive an Allocated Claim only against its Seller Entity, which Allocated Claim its Depositor Entity is jointly liable for.

(vi)   If applicable, the Expert shall calculate the portion of the Allocated Claim that relates to principal-only certificates or notes and the portion of the Allocated Claim that relates to all other certificates or notes.

2.      All distributions from the Estate to an Accepting Trust on account of any Allocated Claim shall be treated as Subsequent Recoveries, as that term is defined in the Governing Agreement for that trust; provided that if the Governing Agreement for a particular Accepting

Trust does not include the term "Subsequent Recovery," the distribution resulting from the Allocated Claim shall be distributed as though it was unscheduled principal available for distribution on that distribution date; *provided, however*, that should the Bankruptcy Court determine that a different treatment is required to conform the distributions to the requirements of the Governing Agreements, that determination shall govern and shall not constitute a material change to this Settlement Agreement.

3.      Notwithstanding any other provision of any Governing Agreement, the Debtors and all Servicers agree that neither the Master Servicer nor any Subservicer shall be entitled to receive any portion of any distribution resulting from any Allocated Claim for any purpose, including without limitation the satisfaction of any Servicing Advances, it being understood that the Master Servicer's other entitlements to payments, and to reimbursement or recovery, including of Advances and Servicing Advances, under the terms of the Governing Agreements shall not be affected by this Settlement Agreement except as expressly provided here.  To the extent that as a result of the distribution resulting from an Allocated Claim in a particular Accepting Trust a principal payment would become payable to a class of REMIC residual interests, whether on the distribution of the amount resulting from the Allocated Claim or on any subsequent distribution date that is not the final distribution date under the Governing Agreement for such Accepting Trust, such payment shall be maintained in the distribution account and the relevant Trustee shall distribute it on the next distribution date according to the provisions of this section.

4.      In addition, after any distribution resulting from an Allocated Claim pursuant to section 3 above, the relevant Trustee will allocate the amount of the distribution for that Accepting Trust in the reverse order of previously allocated Realized Losses, to increase the Class Certificate Balance, Component Balance, Component Principal Balance, or Note Principal Balance, as applicable, of each class of Certificates or Notes (or Components thereof) (other than any class of REMIC residual interests) to which Realized Losses have been previously allocated, but in each case by not more than the amount of Realized Losses previously allocated to that class of Certificates or Notes (or Components thereof) pursuant to the Governing Agreements.  For the avoidance of doubt, for Accepting Trusts for which the Credit Support Depletion Date shall have occurred prior to the allocation of the amount of the Allocable Share in accordance with the immediately preceding sentence, in no event shall the foregoing allocation be deemed to reverse the occurrence of the Credit Support Depletion Date in such Accepting Trusts.  Holders of such Certificates or Notes (or Components thereof) will not be entitled to any payment in respect of interest on the amount of such increases for any interest accrual period relating to the distribution date on which such increase occurs or any prior distribution date.  Any such increase shall be applied pro rata to the Certificate Balance, Component Balance, Component Principal Balance, or Note Principal Balance of each Certificate or Note of each class.  For the avoidance of doubt, this section 4 is intended only to increase Class Certificate Balances, Component Balances, Component Principal Balances, and Note Principal Balances, as provided for herein, and shall not affect any distributions resulting from Allocated Claims provided for in section 3 above.

5.      Nothing in this Settlement Agreement amends or modifies in any way any provisions of any Governing Agreement.  To the extent any credit enhancer or financial guarantee insurer receives a distribution on account of the Allowed Claim, such distribution shall be credited at least dollar for dollar against the amount of any claim it files against the Debtor that does not arise under the Governing Agreements.

6.      In no event shall the distribution to an Accepting Trust as a result of any Allocated Claim be deemed to reduce the collateral losses experienced by such Accepting Trust.

## Exhibit C -- Fee Schedule

Percentage of the Allowed Claim (being the sum of the Allocated Allowed Claims) allocable to trusts that accept the settlement, subject to adjustment pursuant to section 6.02(b) for trusts other than original "Covered Trusts."

If Effective Date of Plan occurs on or before Sept. 2, 2012, 5.225%

If Effective Date of Plan occurs after Sept. 2, 2012 and on or before Dec. 2, 2012, 5.4625%

If Effective Date of Plan occurs after Dec. 3, 2012 and on or before May 2, 2013, 5.605%

If Effective Date of Plan occurs after May 2, 2013, 5.7%

All fees shall be allocated between: (i) Talcott Franklin P.C.; (ii) Miller, Johnson, Snell & Cummiskey, P.L.C.; and (iii) Carter Ledyard & Milburn LLP, based on lodestar as calculated per agreement between co-counsel.

| Deal Name | Cusip | Class | Group Class Sum | Original Class Face |
|---|---|---|---|---|
| GMACM 2004-J2 | 36185N2C3 | A6 | $14,062,500.00 | $14,062,500.00 |
| GMACM 2005-AF1 | 36185MAS1 | M1 | $4,946,000.00 | $6,946,000.00 |
| GMACM 2005-AR3 | 36185N7J3 | 4A4 | $4,000,000.00 | $4,000,000.00 |
| GMACM 2005-HE1 | 361856ED5 | A1VN | $16,970,000.00 | $28,762,000.00 |
| RAAC 2004-SP3 | 76112BET3 | MII1 | $3,485,000.00 | $3,485,000.00 |
| RAAC 2005-RP1 | 76112BJQ4 | M1 | $7,000,000.00 | $28,000,000.00 |
| RAAC 2005-RP3 | 76112BP87 | M1 | $15,289,000.00 | $22,839,000.00 |
| RAAC 2005-SP2 | 76112BF62 | 2M1 | $2,000,000.00 | $7,356,000.00 |
| RAAC 2005-SP3 | 76112BS50 | M1 | $12,590,000.00 | $12,590,000.00 |
| RAAC 2006-RP1 | 76112B2W9 | M2 | $6,914,000.00 | $14,914,000.00 |
| RAAC 2006-RP2 | 74919MAB2 | M1 | $2,660,000.00 | $8,000,000  ** Pending Verification |
| RAAC 2006-SP1 | 76112B3F5 | M1 | $9,069,000.00 | $21,069,000.00 |
| RAAC 2006-SP1 | 76112B3G3 | M2 | $11,449,000.00 | $17,173,000.00 |
| RAAC 2006-SP4 | 74919VAC0 | A3 | $15,000,000.00 | $47,545,000.00 |
| RAAC 2007-RP4 | 74919LAE8 | M1 | $9,000,000.00 | $25,513,000.00 |
| RAAC 2007-SP2 | 74919XAH5 | M2 | $5,000,000.00 | $17,961,000.00 |
| RAAC 2007-SP2 | 74919XAG7 | M1 | $17,049,000.00 | $23,049,000.00 |
| RAAC 2007-SP3 | 74978FAB5 | M1 | $8,000,000.00 | $24,496,000.00 |
| RALI 2004-QA3 | 76110HXU8 | M1 | $6,401,000.00 | $6,401,000.00 |
| RALI 2004-QA6 | 76110HJ26 | M1 | $14,408,900.00 | $14,408,900.00 |
| RALI 2004-QR1 | 76110HB99 | A5 | $20,054,123.00 | $20,054,123.00 |
| RALI 2004-QS1 | 76110HQA0 | M2 | $1,568,600.00 | $3,518,600.00 |
| RALI 2004-QS10 | 76110HWF2 | A4 | $58,278,444.00 | $69,278,444.00 |
| RALI 2004-QS12 | 76110HYY9 | M1 | $2,500,000.00 | $9,546,300.00 |
| RALI 2004-QS14 | 76110HA41 | AV | $212,904,630.00 | $212,904,630.00 |
| RALI 2004-QS15 | 76110HE47 | A1 | $122,235,023.00 | $122,235,023.00 |
| RALI 2004-QS15 | 76110HF46 | AV | $213,702,042.00 | $213,702,042.00 |
| RALI 2004-QS16 | 76110HJ67 | 1A2 | $7,500,000.00 | $15,000,000.00 |
| RALI 2004-QS2 | 76110HQP7 | AV | $292,339,189.00 | $292,339,189.00 |
| RALI 2004-QS3 | 76110HRC5 | AV | $207,818,903.00 | $207,818,903.00 |
| RALI 2004-QS5 | 76110HSY6 | A8 | $21,109,053.00 | $21,109,053.00 |
| RALI 2004-QS5 | 76110HTA7 | AV | $293,661,892.00 | $293,661,892.00 |
| RALI 2004-QS8 | 76110HUY3 | AV | $271,022,934.00 | $271,022,934.00 |
| RALI 2005-QA12 | 761118NC8 | NB5 | $15,959,000.00 | $41,969,000.00 |
| RALI 2005-QA7 | 76110H7J2 | M1 | $5,300,000.00 | $14,664,000.00 |
| RALI 2005-QA9 | 761118FG8 | CBI1 | $46,241,000.00 | $82,941,000.00 |

| Deal Name | Cusip | Class | Group Class Sum | Original Class Face |
|---|---|---|---|---|
| RALI 2005-QS1 | 76110HP45 | A5 | $25,378,000.00 | $76,378,000.00 |
| RALI 2005-QS10 | 761118DB1 | AP | $1,864,997.00 | $1,864,997.00 |
| RALI 2005-QS13 | 761118HC5 | 2A3 | $40,050,000.00 | $130,000,000.00 |
| RALI 2005-QS13 | 761118GX0 | 1A6 | $29,500,000.00 | $73,261,000.00 |
| RALI 2005-QS13 | 761118HB7 | 2A2 | $82,000,000.00 | $139,000,000.00 |
| RALI 2005-QS14 | 761118JH2 | 2A1 | $43,918,000.00 | $115,613,000.00 |
| RALI 2005-QS14 | 761118JM1 | 1AP | $1,302,649.00 | $1,302,649.00 |
| RALI 2005-QS14 | 761118JP4 | 2AP | $7,998,674.00 | $7,998,674.00 |
| RALI 2005-QS15 | 761118KH0 | 2A | $25,000,000.00 | $43,296,000.00 |
| RALI 2005-QS16 | 761118MA3 | A1 | $50,000,000.00 | $132,500,000.00 |
| RALI 2005-QS16 | 761118MF2 | A6 | $14,504,565.00 | $14,504,565.00 |
| RALI 2005-QS16 | 761118MJ4 | A9 | $94,233,000.00 | $94,233,000.00 |
| RALI 2005-QS17 | 761118PS1 | A3 | $10,000,000.00 | $25,000,000.00 |
| RALI 2005-QS17 | 761118PU6 | A5 | $20,057,500.00 | $38,457,500.00 |
| RALI 2005-QS17 | 761118PR3 | A2 | $25,000,000.00 | $25,000,000.00 |
| RALI 2005-QS17 | 761118PT9 | A4 | $25,000,000.00 | $25,000,000.00 |
| RALI 2005-QS17 | 761118PV4 | A6 | $21,443,500.00 | $21,443,500.00 |
| RALI 2005-QS2 | 76110HR35 | AV | $212,988,702.00 | $212,988,702.00 |
| RALI 2005-QS3 | 76110HX61 | 1A21 | $98,000,000.00 | $167,418,000.00 |
| RALI 2005-QS3 | 76110HY60 | 1AV | $371,599,754.00 | $371,599,754.00 |
| RALI 2005-QS4 | 76110H3V9 | AV | $211,687,240.00 | $211,687,240.00 |
| RALI 2005-QS5 | 76110H2Z1 | A3 | $83,591,000.00 | $83,591,000.00 |
| RALI 2005-QS6 | 76110H5P0 | AP | $902,809.00 | $902,809.00 |
| RALI 2005-QS6 | 76110H5K1 | A5 | $12,787,000.00 | $12,787,000.00 |
| RALI 2005-QS6 | 76110H5Q8 | AV | $265,144,243.00 | $265,144,243.00 |
| RALI 2005-QS9 | 761118AU2 | A1 | $35,000,000.00 | $133,249,500.00 |
| RALI 2006-QH1 | 75115GAA6 | A1 | $74,315,000.00 | $192,035,000.00 |
| RALI 2006-QO1 | 761118RM2 | 3A1 | $82,758,000.00 | $309,242,000.00 |
| RALI 2006-QO5 | 75114HAJ6 | 3A3 | $16,094,000.00 | $32,687,000.00 |
| RALI 2006-QS1 | 761118SE9 | A6 | $11,343,992.00 | $11,343,992.00 |
| RALI 2006-QS1 | 761118SJ8 | AP | $2,784,565.00 | $2,784,565.00 |
| RALI 2006-QS10 | 751155AG7 | A7 | $24,638,000.00 | $24,638,000.00 |
| RALI 2006-QS12 | 751151AX9 | 2A18 | $40,072,903.00 | $49,972,903.00 |
| RALI 2006-QS13 | 75115DAK1 | 1A10 | $16,000,000.00 | $19,338,000.00 |
| RALI 2006-QS14 | 74922GAT1 | A18 | $30,113,677.00 | $30,113,677.00 |
| RALI 2006-QS16 | 74922LAL7 | A11 | $15,040,000.00 | $15,540,000.00 |

| Deal Name | Cusip | Class | Group Class Sum | Original Class Face |
|-----------|-------|-------|-----------------|---------------------|
| RALI 2006-QS16 | 74922LAD5 | A4 | $43,131,000.00 | $43,131,000.00 |
| RALI 2006-QS16 | 74922LAH6 | A8 | $6,092,000.00 | $6,092,000.00 |
| RALI 2006-QS17 | 74922SAD0 | A4 | $21,500,000.00 | $45,000,000.00 |
| RALI 2006-QS17 | 74922SAE8 | A5 | $177,061,000.00 | $187,061,000.00 |
| RALI 2006-QS17 | 74922SAH1 | A8 | $28,792,000.00 | $28,792,000.00 |
| RALI 2006-QS18 | 74922RAX8 | 3AV | $104,211,499.00 | $104,211,499.00 |
| RALI 2006-QS2 | 761118VF2 | 2AP | $1,618,278.00 | $1,623,637.00 |
| RALI 2006-QS2 | 761118VD7 | 1AP | $3,239,836.00 | $3,240,432.00 |
| RALI 2006-QS2 | 761118UK2 | 1A4 | $14,457,800.00 | $14,457,800.00 |
| RALI 2006-QS2 | 761118VG0 | 2AV | $131,448,942.00 | $131,448,942.00 |
| RALI 2006-QS2 | 761118UR7 | 1A10 | $60,000,000.00 | $105,672,000.00 |
| RALI 2006-QS3 | 761118XP8 | 1A11 | $49,722,000.00 | $49,722,000.00 |
| RALI 2006-QS4 | 749228AH5 | A8 | $32,000,000.00 | $41,010,000.00 |
| RALI 2006-QS4 | 749228AN2 | AP | $1,376,144.00 | $1,376,144.00 |
| RALI 2006-QS5 | 75114TAC5 | A3 | $39,129,000.00 | $96,590,000.00 |
| RALI 2006-QS5 | 75114TAF8 | A6 | $21,193,500.00 | $43,630,000.00 |
| RALI 2006-QS6 | 74922EAR0 | 1A16 | $12,623,750.00 | $47,495,000.00 |
| RALI 2006-QS6 | 74922EAQ2 | 1A15 | $12,819,000.00 | $16,769,000.00 |
| RALI 2006-QS6 | 74922EAL3 | 1A11 | $53,101,000.00 | $53,101,000.00 |
| RALI 2006-QS6 | 74922EAX7 | 2AV | $106,652,100.00 | $106,652,100.00 |
| RALI 2006-QS7 | 748940AE3 | A5 | $76,050,000.00 | $193,750,000.00 |
| RALI 2006-QS7 | 748940AC7 | A3 | $67,018,000.00 | $75,009,000.00 |
| RALI 2006-QS8 | 75115AAE1 | A5 | $348,750,000.00 | $348,750,000.00 |
| RALI 2006-QS9 | 75115CAD9 | 1A4 | $9,000,000.00 | $15,354,000.00 |
| RALI 2006-QS9 | 75115CAF4 | 1A6 | $25,000,000.00 | $25,000,000.00 |
| RALI 2007-QA1 | 74923GAB9 | A2 | $13,670,000.00 | $13,670,000.00 |
| RALI 2007-QH3 | 74922WAA7 | A1 | $50,000,000.00 | $198,727,000.00 |
| RALI 2007-QH3 | 74922WAC3 | A3 | $20,000,000.00 | $49,682,000.00 |
| RALI 2007-QH4 | 74922TAC0 | A3 | $56,537,000.00 | $56,537,000.00 |
| RALI 2007-QH9 | 749241AA3 | A1 | $120,220,000.00 | $452,924,200.00 |
| RALI 2007-QO2 | 75116AAA8 | A1 | $102,221,000.00 | $388,219,000.00 |
| RALI 2007-QO3 | 74923TAA3 | A1 | $77,329,000.00 | $162,302,000.00 |
| RALI 2007-QO4 | 74923LAB8 | A1A | $44,479,000.00 | $146,700,000.00 |
| RALI 2007-QO4 | 74923LAA0 | A1 | $74,176,000.00 | $125,568,000.00 |
| RALI 2007-QS1 | 74922KAB1 | 1A2 | $104,191,250.00 | $166,706,000.00 |
| RALI 2007-QS1 | 74922KAR6 | 2A10 | $60,194,000.00 | $88,250,000.00 |

| Deal Name | Cusip | Class | Group Class Sum | Original Class Face |
|-----------|-------|-------|-----------------|---------------------|
| RALI 2007-QS1 | 74922KAN5 | 2A7 | $2,000,000.00 | $2,558,600.00 |
| RALI 2007-QS2 | 74923CAA0 | A1 | $17,775,000.00 | $20,000,000.00 |
| RALI 2007-QS2 | 74923CAB8 | A2 | $8,770,000.00 | $8,800,000.00 |
| RALI 2007-QS3 | 75116BAA6 | A1 | $254,000,000.00 | $300,000,000.00 |
| RALI 2007-QS3 | 75116BAD0 | A4 | $19,620,000.00 | $19,620,000.00 |
| RALI 2007-QS5 | 74923JAH0 | A8 | $40,000,000.00 | $100,132,000.00 |
| RALI 2007-QS5 | 74923JAA5 | A1 | $32,782,000.00 | $73,592,000.00 |
| RALI 2007-QS6 | 75116CBW5 | A45 | $32,105,874.00 | $56,475,000.00 |
| RALI 2007-QS6 | 74922UAE3 | A5 | $30,000,000.00 | $35,643,000.00 |
| RALI 2007-QS6 | 75116CAN6 | A13 | $6,267,536.00 | $6,267,536.00 |
| RALI 2007-QS8 | 74922UAH6 | A8 | $19,375,000.00 | $48,375,000.00 |
| RALI 2008-QR1 | 74925FAD5 | 1A4 | $9,300,000.00 | $14,920,000.00 |
| RAMP 2004-RS1 | 760985P54 | MII6 | $3,500,000.00 | $13,500,000.00 |
| RAMP 2004-RS10 | 76112BEF3 | MII4 | $7,000,000.00 | $21,400,000.00 |
| RAMP 2004-RS10 | 76112BEC0 | MII1 | $30,000,000.00 | $68,900,000.00 |
| RAMP 2004-RS11 | 76112BFL9 | M4 | $5,500,000.00 | $18,500,000.00 |
| RAMP 2004-RS11 | 76112BFJ4 | M2 | $21,000,000.00 | $48,563,000.00 |
| RAMP 2004-RS11 | 76112BFM7 | M5 | $10,875,000.00 | $13,875,000.00 |
| RAMP 2004-RS2 | 760985R37 | MII1 | $14,000,000.00 | $46,500,000.00 |
| RAMP 2004-RS2 | 760985Q79 | MI3 | $1,500,000.00 | $4,813,000.00 |
| RAMP 2004-RS2 | 760985R45 | MII2 | $20,000,000.00 | $36,000,000.00 |
| RAMP 2004-RS3 | 760985V81 | M3 | $5,000,000.00 | $10,500,000.00 |
| RAMP 2004-RS4 | 7609853J8 | MII2 | $21,000,000.00 | $37,100,000.00 |
| RAMP 2004-RS4 | 7609853H2 | MII1 | $45,200,000.00 | $64,400,000.00 |
| RAMP 2004-RS5 | 7609854B4 | AI6 | $11,000,000.00 | $40,000,000.00 |
| RAMP 2004-RS5 | 7609854H1 | MII2 | $10,500,000.00 | $30,875,000.00 |
| RAMP 2004-RS5 | 7609854J7 | MII3 | $4,000,000.00 | $8,125,000.00 |
| RAMP 2004-RS6 | 7609855M9 | MII2 | $11,250,000.00 | $33,250,000.00 |
| RAMP 2004-RS6 | 7609855N7 | MII3 | $4,375,000.00 | $8,750,000.00 |
| RAMP 2004-RS7 | 7609857F2 | AI6 | $22,500,000.00 | $40,000,000.00 |
| RAMP 2004-RS8 | 76112BAD2 | AI4 | $15,000,000.00 | $47,894,000.00 |
| RAMP 2004-RS8 | 76112BAP5 | MII3 | $8,375,000.00 | $12,375,000.00 |
| RAMP 2004-RS9 | 76112BCQ1 | MII4 | $4,000,000.00 | $15,200,000.00 |
| RAMP 2004-RS9 | 76112BCF5 | AI4 | $16,300,000.00 | $56,800,000.00 |
| RAMP 2004-RS9 | 76112BCG3 | AI5 | $15,000,000.00 | $37,700,000.00 |
| RAMP 2004-RS9 | 76112BCH1 | AI6 | $15,357,000.00 | $27,500,000.00 |

| Deal Name | Cusip | Class | Group Class Sum | Original Class Face |
|---|---|---|---|---|
| RAMP 2004-RS9 | 76112BCP3 | MII3 | $15,200,000.00 | $15,200,000.00 |
| RAMP 2004-RZ2 | 7609854S7 | AI4 | $11,530,000.00 | $43,700,000.00 |
| RAMP 2004-RZ4 | 76112BHM5 | M6 | $700,000.00 | $2,100,000.00 |
| RAMP 2004-RZ4 | 76112BHQ6 | B | $2,800,000.00 | $2,800,000.00 |
| RAMP 2005-EFC1 | 76112BRR3 | M6 | $5,262,000.00 | $17,262,000.00 |
| RAMP 2005-EFC2 | 76112BVW7 | M8 | $3,000,000.00 | $10,186,000.00 |
| RAMP 2005-EFC2 | 76112BVU1 | M6 | $7,889,000.00 | $10,889,000.00 |
| RAMP 2005-EFC4 | 76112BC73 | M4 | $6,196,000.00 | $13,196,000.00 |
| RAMP 2005-EFC6 | 76112BK41 | M3 | $12,500,000.00 | $17,000,000.00 |
| RAMP 2005-RS1 | 76112BHX1 | AI5 | $8,100,000.00 | $27,843,000.00 |
| RAMP 2005-RS4 | 76112BPF1 | M5 | $4,875,000.00 | $7,875,000.00 |
| RAMP 2005-RS6 | 76112BTX8 | M6 | $9,500,000.00 | $16,800,000.00 |
| RAMP 2005-RS6 | 76112BTV2 | M4 | $16,000,000.00 | $21,000,000.00 |
| RAMP 2005-RS7 | 76112BWX4 | M2 | $3,750,000.00 | $12,250,000.00 |
| RAMP 2005-RS7 | 76112BXA3 | M5 | $2,500,000.00 | $5,000,000.00 |
| RAMP 2005-RS7 | 76112BWY2 | M3 | $5,000,000.00 | $6,500,000.00 |
| RAMP 2005-RS7 | 76112BXB1 | M6 | $4,750,000.00 | $4,750,000.00 |
| RAMP 2005-RS8 | 76112BZJ2 | M1 | $20,000,000.00 | $20,283,000.00 |
| RAMP 2005-RZ1 | 76112BMB3 | M4 | $4,100,000.00 | $4,100,000.00 |
| RAMP 2005-RZ2 | 76112BWJ5 | M3 | $3,800,000.00 | $7,547,000.00 |
| RAMP 2005-RZ2 | 76112BWG1 | M1 | $10,000,000.00 | $18,615,000.00 |
| RAMP 2005-RZ2 | 76112BWL0 | M5 | $8,050,000.00 | $8,050,000.00 |
| RAMP 2005-RZ3 | 76112BZY9 | A2 | $36,100,000.00 | $116,001,000.00 |
| RAMP 2006-EFC1 | 76112BV80 | M2 | $10,980,000.00 | $21,960,000.00 |
| RAMP 2006-EFC2 | 749238AF8 | M2 | $6,600,000.00 | $13,200,000.00 |
| RAMP 2006-EFC2 | 749238AE1 | M1 | $15,000,000.00 | $15,000,000.00 |
| RAMP 2006-NC1 | 76112BX47 | M2 | $6,800,000.00 | $16,500,000.00 |
| RAMP 2006-NC3 | 76112B4R8 | M3 | $3,500,000.00 | $10,140,000.00 |
| RAMP 2006-NC3 | 76112B4Q0 | M2 | $10,000,000.00 | $17,680,000.00 |
| RAMP 2006-RS2 | 76112B2E9 | M1 | $5,000,000.00 | $18,400,000.00 |
| RAMP 2006-RS4 | 75156WAE3 | M1 | $14,875,000.00 | $35,613,000.00 |
| RAMP 2006-RS5 | 75156YAC3 | A3 | $44,776,000.00 | $104,776,000.00 |
| RAMP 2006-RS5 | 75156YAE9 | M1 | $5,725,000.00 | $10,725,000.00 |
| RAMP 2006-RZ1 | 76112BZ45 | M3 | $5,000,000.00 | $9,750,000.00 |
| RAMP 2006-RZ1 | 76112BZ52 | M4 | $9,000,000.00 | $9,000,000.00 |
| RAMP 2006-RZ2 | 75156UAE7 | M2 | $4,000,000.00 | $11,812,000.00 |

Exhibit 34
Page 31 of 34

| Deal Name | Cusip | Class | Group Class Sum | Original Class Face |
|-----------|-------|-------|-----------------|---------------------|
| RAMP 2006-RZ2 | 75156UAD9 | M1 | $6,000,000.00 | $13,688,000.00 |
| RAMP 2006-RZ3 | 75156MAF2 | M3 | $6,620,000.00 | $15,620,000.00 |
| RAMP 2006-RZ5 | 749239AE9 | A3 | $12,760,000.00 | $32,720,000.00 |
| RAMP 2006-RZ5 | 749239AH2 | M3 | $10,960,000.00 | $10,960,000.00 |
| RASC 2004-KS1 | 74924PAN2 | MII2 | $17,250,000.00 | $35,750,000.00 |
| RASC 2004-KS10 | 76110WG67 | M4 | $4,500,000.00 | $10,000,000.00 |
| RASC 2004-KS10 | 76110WG59 | M3 | $8,000,000.00 | $15,000,000.00 |
| RASC 2004-KS12 | 76110WL20 | M3 | $3,500,000.00 | $8,200,000.00 |
| RASC 2004-KS12 | 76110WL79 | SB | $8,250,228.00 | $8,250,228.00 |
| RASC 2004-KS2 | 76110WWP7 | M22 | $4,500,000.00 | $38,500,000.00 |
| RASC 2004-KS3 | 76110WXF8 | MII1 | $16,500,000.00 | $30,875,000.00 |
| RASC 2004-KS6 | 76110WZW9 | MI3 | $1,000,000.00 | $4,000,000.00 |
| RASC 2004-KS6 | 76110WZN9 | AI5 | $6,000,000.00 | $20,617,000.00 |
| RASC 2004-KS6 | 76110WZY5 | MII2 | $13,500,000.00 | $42,000,000.00 |
| RASC 2004-KS6 | 76110WZV1 | MI2 | $2,750,000.00 | $5,500,000.00 |
| RASC 2004-KS8 | 76110WD52 | MII1 | $7,800,000.00 | $25,600,000.00 |
| RASC 2004-KS9 | 76110WE77 | AI6 | $4,000,000.00 | $15,000,000.00 |
| RASC 2004-KS9 | 76110WE51 | AI4 | $11,750,000.00 | $21,100,000.00 |
| RASC 2005-AHL2 | 76110W5J1 | M2 | $3,526,000.00 | $13,626,000.00 |
| RASC 2005-AHL2 | 76110W5K8 | M3 | $2,605,000.00 | $9,605,000.00 |
| RASC 2005-AHL3 | 76110W6L5 | A2 | $58,490,000.00 | $187,495,000.00 |
| RASC 2005-AHL3 | 76110W6P6 | M2 | $13,025,786.00 | $15,500,000.00 |
| RASC 2005-EMX1 | 76110WQ90 | M5 | $3,000,000.00 | $10,800,000.00 |
| RASC 2005-EMX1 | 76110WQ82 | M4 | $5,800,000.00 | $10,800,000.00 |
| RASC 2005-EMX1 | 76110WR24 | M6 | $10,800,000.00 | $10,800,000.00 |
| RASC 2005-EMX1 | 76110WR40 | SB | $7,210,111.00 | $7,210,111.00 |
| RASC 2005-EMX2 | 76110W2L9 | M5 | $4,175,000.00 | $10,592,000.00 |
| RASC 2005-EMX2 | 76110W2N5 | M7 | $3,800,000.00 | $9,308,000.00 |
| RASC 2005-EMX2 | 76110W2P0 | M8 | $3,500,000.00 | $8,345,000.00 |
| RASC 2005-EMX2 | 76110W2M7 | M6 | $8,950,000.00 | $9,950,000.00 |
| RASC 2005-EMX2 | 76110W2S4 | SB | $21,510,156.00 | $21,510,156.00 |
| RASC 2005-EMX3 | 75405MAJ3 | M4 | $4,000,000.00 | $12,250,000.00 |
| RASC 2005-EMX4 | 76110W6A9 | M2 | $5,000,000.00 | $18,540,000.00 |
| RASC 2005-KS10 | 75405WAG7 | M3 | $7,614,931.00 | $25,799,000.00 |
| RASC 2005-KS11 | 76110W7G5 | M4 | $6,161,000.00 | $22,080,000.00 |
| RASC 2005-KS11 | 76110W7D2 | M1 | $16,680,000.00 | $49,680,000.00 |

| Deal Name | Cusip | Class | Group Class Sum | Original Class Face |
|---|---|---|---|---|
| RASC 2005-KS12 | 753910AG3 | M4 | $9,208,000.00 | $20,125,000.00 |
| RASC 2005-KS2 | 76110WN77 | M2 | $10,000,000.00 | $28,875,000.00 |
| RASC 2005-KS3 | 76110WS64 | M6 | $3,481,000.00 | $7,481,000.00 |
| RASC 2005-KS4 | 76110WU61 | M1 | $9,740,000.00 | $20,927,000.00 |
| RASC 2005-KS4 | 76110WU87 | M3 | $6,363,000.00 | $7,873,000.00 |
| RASC 2005-KS8 | 76110W3U8 | M4 | $7,500,000.00 | $21,000,000.00 |
| RASC 2005-KS9 | 754058AJ4 | M6 | $3,750,000.00 | $7,750,000.00 |
| RASC 2006-EMX2 | 75406AAB5 | A2 | $51,000,000.00 | $203,139,000.00 |
| RASC 2006-EMX2 | 75406AAE9 | M2 | $6,375,000.00 | $21,375,000.00 |
| RASC 2006-EMX2 | 75406AAD1 | M1 | $9,085,000.00 | $23,085,000.00 |
| RASC 2006-EMX2 | 75406AAG4 | M4 | $8,115,000.00 | $11,115,000.00 |
| RASC 2006-EMX3 | 76113ACG4 | M6 | $5,000,000.00 | $13,600,000.00 |
| RASC 2006-EMX3 | 76113ACA7 | A3 | $16,260,000.00 | $29,750,000.00 |
| RASC 2006-EMX4 | 75406DAF0 | M2 | $7,500,000.00 | $25,002,000.00 |
| RASC 2006-EMX6 | 754065AC4 | A3 | $37,752,000.00 | $106,095,000.00 |
| RASC 2006-EMX6 | 754065AD2 | A4 | $24,011,000.00 | $39,011,000.00 |
| RASC 2006-EMX8 | 74924UAL5 | M6 | $3,500,000.00 | $12,045,000.00 |
| RASC 2006-EMX8 | 74924UAH4 | M3 | $8,000,000.00 | $16,060,000.00 |
| RASC 2006-EMX9 | 74924VAL3 | M6 | $3,000,000.00 | $11,020,000.00 |
| RASC 2006-KS2 | 75406BAG2 | M3 | $5,000,000.00 | $20,000,000.00 |
| RASC 2006-KS2 | 75406BAK3 | M6 | $5,000,000.00 | $15,500,000.00 |
| RASC 2006-KS2 | 75406BAH0 | M4 | $11,000,000.00 | $18,000,000.00 |
| RASC 2006-KS3 | 76113ABL4 | M1 | $15,000,000.00 | $43,700,000.00 |
| RASC 2006-KS3 | 76113ABP5 | M4 | $8,000,000.00 | $20,700,000.00 |
| RASC 2006-KS4 | 75406EAE1 | M1 | $15,000,000.00 | $26,614,000.00 |
| RASC 2006-KS4 | 75406EAF8 | M2 | $16,000,000.00 | $24,863,000.00 |
| RASC 2006-KS5 | 75406VAG8 | M3 | $4,000,000.00 | $14,350,000.00 |
| RASC 2006-KS5 | 75406VAH6 | M4 | $4,000,000.00 | $12,950,000.00 |
| RASC 2006-KS6 | 75406WAF8 | M2 | $6,508,000.00 | $18,508,000.00 |
| RASC 2006-KS7 | 75406XAM1 | M8 | $2,000,000.00 | $7,700,000.00 |
| RASC 2006-KS7 | 75406XAE9 | M1 | $17,175,000.00 | $21,175,000.00 |
| RASC 2007-KS1 | 74924SAK2 | M6 | $2,250,000.00 | $6,768,000.00 |
| RASC 2007-KS1 | 74924SAH9 | M4 | $3,900,000.00 | $7,826,000.00 |
| RASC 2007-KS1 | 74924SAC0 | A3 | $35,455,000.00 | $79,455,000.00 |
| RASC 2007-KS2 | 74924WAF4 | M1 | $14,374,990.00 | $42,000,000.00 |
| RASC 2007-KS2 | 74924WAD9 | AI4 | $25,000,000.00 | $65,200,000.00 |

| Deal Name | Cusip | Class | Group Class Sum | Original Class Face |
|---|---|---|---|---|
| RASC 2007-KS3 | 74924YAF0 | M1S | $37,181,000.00 | $56,069,000.00 |
| RASC 2007-KS4 | 74924NAB3 | A2 | $11,775,000.00 | $29,400,000.00 |
| RFMS2 2004-HS1 | 76110VQE1 | AII | $63,000,000.00 | $172,125,000.00 |
| RFMS2 2006-HI1 | 76110VUE6 | M8 | $2,877,000.00 | $5,727,000.00 |
| RFMSI 2004-S2 | 76111XFY4 | IA6 | $17,500,000.00 | $17,500,000.00 |
| RFMSI 2004-S3 | 76111XGT4 | M2 | $456,600.00 | $456,600.00 |
| RFMSI 2004-S5 | 76111XKC6 | 1AV | $322,312,635.00 | $322,312,635.00 |
| RFMSI 2004-S6 | 76111XLY7 | 2A4 | $1,111,000.00 | $1,111,000.00 |
| RFMSI 2004-S6 | 76111XMX8 | 1AV | $175,743,890.00 | $175,743,890.00 |
| RFMSI 2004-S6 | 76111XMZ3 | 2AV | $196,429,039.00 | $196,429,039.00 |
| RFMSI 2004-S8 | 76111XPB3 | AV | $311,005,474.00 | $311,005,474.00 |
| RFMSI 2004-S9 | 76111XQE6 | 1A2 | $35,700,000.00 | $35,700,000.00 |
| RFMSI 2004-S9 | 76111XRJ4 | 1AV | $518,853,762.00 | $518,853,762.00 |
| RFMSI 2005-S1 | 76111XSH7 | 1AV | $259,777,920.00 | $259,777,920.00 |
| RFMSI 2005-S2 | 76111XTV5 | A6 | $11,600,000.00 | $23,484,000.00 |
| RFMSI 2005-S4 | 76111XUW1 | AV | $259,355,464.00 | $259,355,464.00 |
| RFMSI 2005-S5 | 76111XWW9 | AP | $472,373.00 | $472,374.00 |
| RFMSI 2005-S5 | 76111XWX7 | AV | $258,235,737.00 | $258,235,737.00 |
| RFMSI 2005-S6 | 76111XXT5 | AV | $412,859,719.00 | $412,859,719.00 |
| RFMSI 2005-S8 | 76111XC84 | AP | $1,370,905.00 | $1,370,905.00 |
| RFMSI 2005-S9 | 76111XE82 | A8 | $4,486,000.00 | $15,986,000.00 |
| RFMSI 2005-S9 | 76111XE66 | A6 | $32,000,000.00 | $32,000,000.00 |
| RFMSI 2006-S11 | 74958FAC7 | A3 | $2,360,000.00 | $4,643,000.00 |
| RFMSI 2006-S12 | 74958EAT3 | 3A10 | $11,625,000.00 | $11,625,000.00 |
| RFMSI 2006-S12 | 74958EAZ9 | 3AV | $364,207,747.00 | $364,207,747.00 |
| RFMSI 2006-S3 | 76111XN74 | A1 | $66,950,000.00 | $76,950,000.00 |
| RFMSI 2006-S4 | 762010AE6 | A5 | $12,000,000.00 | $40,487,000.00 |
| RFMSI 2006-S4 | 762010AM8 | AV | $153,917,718.00 | $313,917,718.00 |
| RFMSI 2006-S4 | 762010AG1 | A7 | $20,200,000.00 | $30,300,000.00 |
| RFMSI 2006-S7 | 74958AAM6 | AV | $180,000,000.00 | $469,651,185.00 |
| RFMSI 2006-S8 | 74957XAC9 | A3 | $25,000,000.00 | $25,000,000.00 |
| RFMSI 2006-S8 | 74957XAG0 | A7 | $6,250,000.00 | $6,250,000.00 |
| RFMSI 2006-S8 | 74957XAD7 | A4 | $2,866,667.00 | $2,866,667.00 |
| RFMSI 2006-SA3 | 749575AD8 | 2A3 | $26,150,000.00 | $33,150,000.00 |
| RFMSI 2007-S1 | 749581AL8 | A7 | $22,000,000.00 | $82,000,000.00 |
| RFMSI 2007-S2 | 749583AD2 | A4 | $39,000,000.00 | $65,000,000.00 |

| Deal Name | Cusip | Class | Group Class Sum | Original Class Face |
|---|---|---|---|---|
| RFMSI 2007-S2 | 749583AA8 | A1 | $35,058,000.00 | $35,058,000.00 |
| RFMSI 2007-S3 | 74958BAK8 | 1A4 | $20,000,000.00 | $20,000,000.00 |
| RFMSI 2007-S5 | 749580AA4 | A1 | $250,000,000.00 | $250,000,000.00 |
| RFMSI 2007-S6 | 762009AK4 | 1A10 | $13,500,000.00 | $43,184,000.00 |
| RFMSI 2007-S6 | 762009BB3 | 2A4 | $25,000,000.00 | $50,233,000.00 |
| RFMSI 2007-S9 | 74958VAB4 | 1A2 | $1,425,000.00 | $5,400,000.00 |
| RFMSI 2007-SA1 | 74958WAG1 | 4A | $38,604,000.00 | $38,604,000.00 |
| RFSC 2001-RM2 | 760985FR7 | A1 | $35,249,800.00 | $75,249,800.00 |