**MCKEEVER LAW OFFICES PLLC**
Heather Boone McKeever, Esq.
P.O. Box 1181
Isle of Palms, South Carolina 29451
Telephone: 843-323-1174
Facsimile: 859-327-3277

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC, et al., ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered |

## DECLARATION OF CREDITOR'S COUNSEL
## HEATHER BOONE MCKEEVER, ESQ.

Under penalty of perjury the undersigned states the following:

1. I represent the Creditor farm owner, Shane M. Haffey and am a joint tenant by entirety in the family farm in question.

2. Prior to 2006, I practiced in the area of corporate and insurance defense. Since 2006, I have devoted my practice exclusively to consumer and commercial mortgage and banking fraud litigation.

3. I have been a regular practicing attorney in the state of Kentucky since 1990. I am admitted and have practiced before the United States District Court for the Eastern and Western Districts of Kentucky, the 6th Circuit Court of Appeals and the United States Supreme Court.

4. I will be serving as counsel of record in at least six Proofs of Claim for my Kentucky and South Carolina clients against the Debtors; two of which are Class

1

EXHIBIT B

Actions.

5. In relation to my other clients, I have previously filed a RICO class action against the Debtors, MERS and the Debtors attorneys, *Foster v. MERS, GMAC Mortgage LLC, et al.* 3:10-cv-611, United States District Court Western District of Kentucky Louisville Division, (filed September 28, 2010.)

6. I am counsel for record for two cases currently listed on the schedules of the Debtors Chapter 11 as unsecured claims.

7. The cases are consolidated in both the District Court and the 6th Circuit Court of Appeals and involve five separate cases.

8. One of the five cases, 09-362, (a lien enforcement,) names as the Plaintiff, Deutsche Bank Americas Trustee for an alleged Mortgage Security REMIC, 2007 QS-10.

9. 2007 QS-10 is not registered with the SEC or the IRS as a Mortgage Backed Security or a IRS REMIC.

10. The alleged Promissory Note at the center of the lien enforcement case was never purchased by the named Deutsche MBS Plaintiff.

11. The Note is not on the collateral list of the named 2007 Deutsche MBS Plaintiff.

12. The copy of the Note attached to the lien enforcement Complaint is specifically endorsed to GMAC Bank.

13. Upon information and belief, the Debtor's law firm, Bradley Arant Boult Cummings, ("BABC,) while counsel of record for GMAC Mortgage LLC, has prosecuted a lien enforcement on behalf of a 2007 Deutsche MBS Trust without

authority or a retainer agreement from the named Deutsche Bank Trust.

14. Upon information and belief, BABC, has invoiced GMAC Mortgage LLC for its legal fees in its representation of Deutsche Bank.

15. The records of the Fayette County Clerk reveals the recording of a May 14, 2007, Mortgage to the Bank of the Bluegrass and Trust and a May 14, 2007, Assignment of Mortgage from the Bank of the Bluegrass to Mortgage Electronic Registration Systems, Inc. (MERS.)

16. The authenticity of the May 14, 2007, Note, the recorded Mortgage, and the May 14, 2007 Assignment of Mortgage to MERS, and the signatures thereto, have been challenged; the Note and Mortgage having been executed on May 18, 2007, four days subsequent to the dates affixed to the Note and Mortgage. *See also. Haffey Dec.*

17. MERS was the grantee of the Assignment of Mortgage in its own right, not as a nominee of any lender.

18. The Assignment of Mortgage to MERS was executed four days before any legitimate mortgage ever existed, a Mortgage having been executed on May 18, 2007.

19. The Note was never assigned to MERS and MERS has admitted that it has never made a pecuniary claim to the Note.

20. The owners' signatures to both the Note and the Mortgage were not witnessed or notarized in relation to the Note and Mortgage executed between the farm owners and the bank of the Bluegrass and Trust Company on May 18, 2007. *See also. Haffey Dec.*

21. Upon information and belief, the original of both the Note and Mortgage do not exist.

22. In 2009, the public record shows that an employee of GMAC Mortgage LLC,

Patricia Kelleher, executed an Assignment of Mortgage posing as an employee of MERS.

23. The Assignment was made two years after the named Deutsche 2007 MBS REMIC Plaintiff was allegedly formed and closed as an IRS REMIC for the purposes of purchasing mortgage loans.

24. The 2009 Assignment from MERS was executed and recorded while a Slander/ Quiet Title against MERS was pending.

25. There is no named grantee to the Assignment of Mortgage from MERS is Deutsche Bank Americas as Trustee. There is no Trust Corpus listed.

26. Under Kentucky law, a Trustee must be registered with the Kentucky Secretary of State and may not record deeds or mortgages in its own name without a Trust corpus specifically referenced.

27. The Assignment of Mortgage from MERS to Deutsche Bank, executed by an employee of GMAC Mortgage LLC, has been deemed a forgery by expert witness Hon. Lynn Szymoniak.

28. The Creditor's Expert Witness, Hon. Lynn Szymoniak is a Relator and Expert Witness for the Department of Justice in regards to the Quit Tam mortgage document fraud, case, which is incorporated into the 2012 Federal and Attorney General multi-billion dollar settlement with the Debtors.

29. Based on the Department of Justice's web site, the DOJ has deemed the acts of drafting and executing of fraudulent and forged Assignments of Mortgage, mortgage fraud, calling forgeries "robo signing," and the forgers, "robo signers."

30. In April 2012, at the request of the Department of Justice, undersigned counsel

met with and was interviewed by, United States Attorney, Hon. Fran Trapp, at the Department of Justice in Charleston, South Carolina.

31. United States Attorney Fran Trapp is the prosecutor in charge of the *Qui Tam* foreclosure fraud prosecution, *United States ex. Rel. Szymoniak v. GMAC/RESCAP, et al.*, which led to the 95 million dollar settlement with four of the five Defendants. *See Ms. Trapp's Press Release.* http://www.justice.gov/usao/sc/LivePressReleases/3.12.12%20Szymoniak.pdf.

32. The Szymoniak Settlement is part of the universal Consent Judgment reached with both the Federal Government and the 50 Attorney Generals in regards to robo signing and other accusations of mortgage fraud.

33. The GMAC debtors are parties to and are currently bound by the Federal multi-billion dollar, Universal Settlement.

34. At the time of undersigned counsel's interview with the Department of Justice, and upon information and belief, the GMAC debtors, had not settled with the Department of Justice in the Szymoniak case and the prosecution against the GMAC debtors was moving forward.

35. Upon information and belief, the Expert witness Affidavit of Hon. Lynn Szymoniak and the GMAC robo signed Assignment of Mortgage from MERS to Deutsche Bank, in the Creditor's cases are in the possession of the Department of Justice and are part of the evidentiary record to be used in the prosecution of GMAC Mortgage LLC and the other debtors by the Department of Justice.

36. Upon information and belief, the Department of Justice Settlement only concerns the payment of funds to the US and State Treasuries, and in no way

compensates or precludes claims by the individual taxpayers and their families who actually suffered the damages. The potential damages for homeowners exceed 95 million.

37. Upon information and belief, and relying on information given directly by the Department of Justice, the Debtors' Settlement with the DOJ does not include claims against the law firms retained by the Debtors in regards to both their role as co-conspirators with the Debtors and the remittance and payment of improper legal fees by the Debtors to the Debtor's individual litigation firms, such as BABC. This includes both private pay invoices to Mortgage Servicers and files invoiced to and/or ultimately paid by the GSE, Fannie Mae.

38. Upon information and belief, Debtors' law firms, such as BABC, and the individual files for which the firms are counsel of record are currently being investigated and audited by the Department of Justice.

39. Upon information and belief, as special counsel to the Debtors in the Federal and Attorney General prosecutions and Consent Judgment, attorneys for BABC, had unique and specific knowledge as to the specific loan files flagged for fraud and those for which Expert Witness Lynn Szymoniak had audited for the Department of Justice; as well as those for which she had previously testified as an expert witness. (Such as the Creditor's cases at hand.)

40. The law firm, BABC is a potential Third party Defendant to the cases, and a potential Class Action Co-Defendant in the Proofs of Claim in this Bankruptcy.

41. BABC has had Notice of such claims from the onset, while serving as simultaneous counsel of record for Co-Creditor, Deutsche Bank of Americas and the

GMAC entities.

42. Upon information and belief, BABC has litigated these cases in bad faith and for its own benefit; in order to a.) artificially inflate legal fees paid exclusively by the Debtors on behalf of the Debtors and for third parties (Deutsche an MERS) and b.) protect itself from the multi-million dollar potential liability the firm is exposed to for its unique role as an active player and willing partner in the Debtors' systemic mortgage fraud.

43. In January 2011, in relation to the Creditor's cases, undersigned counsel and Hon. Christopher Thorsen of BABC, agreed to attend Mediation in order to obtain a universal settlement of the claims contained in all five lawsuits.

44. The Mediation was scheduled for April 2011, in Christopher Thorsen's home base of Nashville, Tennessee, with the Mediator of his choice.

45. The parties agreed to suspend discovery pending mediation.

46. Less than 2 weeks before the scheduled Mediation, Mr. Thorsen informed undersigned counsel that he had made the unilateral decision that the Mediation would not take place.

47. A second Mediation was scheduled and a contract signed with a Mediator in Lexington, Kentucky.

48. Less than 2 weeks before the second scheduled Mediation, Mr. Thorsen, for the second time, informed undersigned counsel that he had made the unilateral decision that the Mediation would not take place.

49. It was at this point that undersigned counsel confirmed what she had already suspected; that she had been the victim of Mr. Thorsen's "dirty pool" and that she had been fraudulently induced into delaying discovery.

50. No documents, including the originals of the Note and Mortgage, were produced by Mr. Thorsen, pursuant to the initial Rule 26 Discovery Order.

51. Upon information and belief, Mr. Thorsen never intended to attend mediation or attempt to settle the matter.

52. Upon information and belief, Mr. Thorsen and BABC are not working in the best interest of the Debtors, but in the best interest of "the firm" in milking files for the sole financial gain of the firm and to protect the firm from multi-million dollar liability as a Co-Defendant and/or Co-Conspirator of the Debtors.

53. The legal fees invoiced to the Debtors in this case are in excess of $119,000.00; which equates to nearly 40% of the net present value of the farm.

54. The legal fees of BABC in relation to the best case scenario recovery for the Debtors, and the usually required cost vs. benefit analysis, shocks the conscious and is unprecedented in undersigned counsel's experience as a large corporate defense litigator.

55. Upon information and belief, there is no check whatsoever on BABC's litigation fees in this or any other cases for which BABC is counsel of record for the Debtors.

56. Upon information and belief, there are no repercussions for BABC's unabated actions, due to the fact that the Debtors are 74% owned by the citizens of the United States; the Debtors having been "bought out" by the United States Treasury.

57. Unlike all other of the major private investment Banks, such as Bank of America and JP Morgan Chase, who answer to private shareholders, it has become apparent that since the tax payers fund BABC's fees, there is no limit to the fees.

58. Quite simply, the foxes are watching the legal fee hen house.

59. Since 2007, I have dealt with over two dozen different law firms, both regional and national counsel, for different mortgage "creditors" in regards to my consumer practice; including attorneys for Bank of America, JP Morgan Chase, Aurora, US Bank, Citi, American Home Mortgage, Wells Fargo, Regions, Nationstar, MERS and IndyMac.

60. Although, many of the firms were guilty of sins of both omission and commission, under Rule 11 due to ignorance of the law, Mr. Thorsen and BABC's are uniquely educated as to the fraud involved in the individual cases they currently litigate for the debtors. BABC's level of arrogance and dishonesty is unprecedented in my twenty years as a litigator.

61. Upon information and belief, the US taxpayers also fund individual BABC attorneys salaries as registered Lobbyists for the Debtors.

62. Under the Kentucky Revised Statutes, the acts of GMAC employee Patricia Kelleher in regards to both the execution and recording of the Assignment of Mortgage and based on the expert witness Affidavit could be charged by the Fayette County Attorney as criminal felonies.

63. Under the Kentucky Revised Statutes, those who have knowledge and conspire with forgers, can be charged with the crime of conspiracy and in some cases be charged with both criminal and civil RICO claims simultaneously.

Further, the Declarant sayeth not.

Dated: August 16, 2012

Respectfully submitted,

/s/ Heather Boone McKeever
MCKEEVER LAW OFFICES PLLC
P.O. Box 1181
Isle of Palms, SC 29451
Tel. 843-323-1174
Fax. 859-327-3277
COUNSEL FOR CREDITOR
SHANE M. HAFFEY