MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Norman S. Rosenbaum

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ---------------------------------------------------------------- ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ---------------------------------------------------------------- ) | | |

**DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM THE**
**AUTOMATIC STAY FILED BY JULIO PICHARDO [DOCKET NOS. 1026 AND 1212]**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ................................................................................. 1

OBJECTION ..................................................................................... 3

I.    THE SUPPLEMENTAL SERVICING ORDER DOES NOT GRANT RELIEF
      FROM THE STAY TO PURSUE THE CALIFORNIA ACTION .................................. 3

II.   RELIEF FROM THE AUTOMATIC STAY SHOULD NOT BE GRANTED ................ 4

      A.    The Policies Underlying the Automatic Stay Weigh in Favor of Denying
            the Relief Requested by the Movant ...................................................... 4

      B.    The Movant has Failed to Establish Cause for Relief from the Automatic
            Stay. .................................................................................................. 6

            1.    *Relief From the Stay Would Not Result in a Complete Resolution of
                  the Issues (Sonnax Factor No. 1)* ............................................... 8

            2.    *The Lifting of the Automatic Stay Is Connected to and Will
                  Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor
                  No. 2)* ...................................................................................... 9

            3.    *No Specialized Tribunal Has Been Established to Hear the
                  California Action (Sonnax Factor No. 4).* ................................ 11

            4.    *No Insurer Has Assumed Responsibility for the California Action
                  (Sonnax Factor No. 5).* ............................................................ 11

            5.    *The California Action does not Primarily Involve Third Parties
                  (Sonnax Factor No. 6).* ............................................................ 12

            6.    *Litigation of the California Action in Another Forum Would
                  Prejudice the Interests of Other Creditors (Sonnax Factor No. 7).* ......... 12

            7.    *The Interests of Judicial Economy and Economical Resolution of
                  the California Action Are Best Served by Maintaining the
                  Automatic Stay and the California Action is Not Ready for Trial
                  (Sonnax Factor Nos. 10 and 11).* ........................................... 13

            8.    *The Balance of Harms Favors Maintaining the Automatic Stay
                  (Sonnax Factor No. 12).* .......................................................... 14

CONCLUSION ................................................................................. 15

i

## TABLE OF CONTENTS
### (continued)

<u>Exhibits:</u>

Exhibit 1:      Campbell Declaration
Exhibit 2:      Complaint
Exhibit 3:      Notice of Bankruptcy and Suggestion of Automatic Stay

ny-1055031

# TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.),
    835 F.2d 427 (2d Cir. 1987).................................................................................................13

Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow),
    126 F.3d 43 (2d Cir. 1997)...................................................................................................7

City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l Inc.),
    28 B.R. 324 (Bankr. S.D.N.Y. 1983)...................................................................................12

In re Bally Total Fitness of Greater N.Y., Inc.,
    402 B.R. 616 (Bankr. S.D.N.Y. 2009)...................................................................11,13,14,15

In re Cuyahoga Equip. Corp.,
    980 F.2d 110 (2d Cir. 1992).................................................................................................12

In re Ionosphere Clubs, Inc.,
    922 F.2d 984, 989 (2d Cir. 1990).........................................................................................14

In re Leibowitz,
    147 B.R. 341 (Bankr. S.D.N.Y. 1992)...................................................................................8

Maritime Elec. Co. v. United Jersey Bank,
    959 F.2d 1194 (3d Cir. 1991)...............................................................................................13

In re Motors Liquidation Co.,
    Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010)............................8

In re Northwest Airlines Corp.,
    No. 05-17930, 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 3, 2006) .........................................14

In re Pioneer Commercial Funding Corp.,
    114 B.R. 45 (Bankr. S.D.N.Y. 1990)................................................................................5,10

Mazzeo v. Lenhart (In re Mazzeo),
    167 F.3d 139 (2d Cir. 1999)..................................................................................................7

Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection,
    474 U.S. 494 (1986).............................................................................................................5

Rexnord Holdings, Inc. v. Bidermann,
    21 F.3d 522 (2d Cir. 1994)...................................................................................................13

SEC v. Brennan,
    230 F.3d 65 (2d Cir. 2000)............................................................................................5

Shimer v. Fugazy (In re Fugazy Express, Inc.),
    982 F.2d 769 (2d Cir. 1992)........................................................................................13

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
    907 F.2d 1280 (2d Cir. 1990)........................................................................................7


**STATUTES**

11 U.S.C. § 362(a)(1)..................................................................................................4,5

11 U.S.C. § 362(d) .......................................................................................................6


**OTHER AUTHORITIES**

COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2012) ..............................................5

ny-1055031

Residential Capital, LLC and its affiliated debtors and debtors in possession in the above-caption Chapter 11 cases (collectively, the "**Debtors**") hereby submit this objection (the "**Objection**") to the letter of Julio Pichardo (appearing *pro se*) dated June 2, 2012 requesting relief from the automatic stay [Docket No. 1026], filed on August 6, 2012 (the "**Letter Request**"), as amended and supplemented by Mr. Pichardo's motion for relief from stay filed on August 17, 2012 (the "**Supplement**" and, together with the Letter Request, the "**Motion**").  In support hereof, the Debtors submit the Declaration of Natasha Campbell ("**Campbell Decl.**"), attached hereto as Exhibit 1, and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Motion seeks relief to proceed with a civil action that was filed in violation of the automatic stay, and which asserts claims consisting solely of monetary damages against the Debtors.  The *Sonnax* factors clearly weigh in favor of denial of the Motion.  Further, the relief sought pursuant to the Motion does not fall within the scope of the Supplemental Servicing Order (defined below).

## BACKGROUND

2.      On May 14, 2012, (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.  On July 3, 2012, the Office of the United States Trustee for the Southern District of New York (the "**United States Trustee**") appointed the Honorable Arthur T.

1

Gonzalez, former Chief Judge of the United States Bankruptcy Court for the Southern District of New York as examiner (the "**Examiner**").

3.      On May 16, 2012, the United States Trustee appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

4.      On July 13, 2012, the Court entered the *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "**Supplemental Servicing Order**").

5.      On July 6, 2012, without leave of this Court, Mr. Pichardo, represented by counsel, commenced an action against Debtor GMAC Mortgage, LLC ("**GMAC Mortgage**") in the Superior Court of California, captioned <u>Julio Pichardo v. GMAC Mortgage; Does 1 to 10</u>, Case No. CIV581642 (Ca. Sup.) (the "**California Action**").  The California Action seeks the imposition of monetary damages against GMAC Mortgage.  <u>See</u> Complaint, attached as <u>Exhibit 2</u> hereto, at 6-7.  Specifically, Mr. Pichardo seeks compensatory and punitive damages, restitution, and attorneys' fees for GMAC Mortgage's alleged (a) violation of the Fair Debt Collection Practices Act ("**FDCPA**"); (b) unfair business practices and false advertising in violation of California Business and Professions Code sections 17200 and 17500, respectively; and (c) negligent misrepresentation, which conduct Mr. Pichardo alleges began prepetition and is currently ongoing.  Complaint at 3-7.

2

6.      On July 30, 2012, the Debtors caused a notice of bankruptcy and
suggestion of automatic stay to be served on Mr. Pichardo's counsel in the California Action.
See Exhibit 3 attached hereto.

7.      By the Motion, Mr. Pichardo, appearing *pro se*, seeks relief from the
automatic stay to proceed with the California Action.

## OBJECTION

**I.     The Supplemental Servicing Order Does Not Grant Relief from the Stay to Pursue
the California Action**

8.      The Supplemental Servicing Order provides certain limited relief from the
automatic stay to permit borrowers to proceed, in Debtor-initiated foreclosure proceedings, with
defenses, counter-claims, and Mandatory Monetary Claims (as such term is defined in the
Supplemental Servicing Order) that could defeat a foreclosure.  See Supplemental Servicing
Order ¶ 14(a)-(b).[1]  Additionally, the Supplemental Servicing Order grants additional limited

---

[1]     The Supplemental Servicing Order states, in relevant part:

The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions
initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and
future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is
hereby modified pursuant to the following terms and conditions:

(a) except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled
to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of
the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or
precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a
final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has
been exhausted) permitting the foreclosure or eviction has not been awarded or, with respect to completed
foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to
prosecute appeals with respect to any such direct claims or counter-claims;

(b) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all
pending and future Interested Party direct claims and counter-claims:  (i) for monetary relief of any kind and of
any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to
a assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary
Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a
foreclosure or eviction; or (iii) asserted in the form of a class action or collective action . . . .

Supplemental Servicing Order ¶ 14.

---

relief from the automatic stay – in non-judicial foreclosure states – to continue to prosecute

certain borrower-initiated actions for purposes of defending, unwinding, or challenging a

foreclosure where any applicable challenge period has not yet expired.  Supplemental Servicing

Order ¶ 14(a).

9.      The California Action does not involve a foreclosure or eviction

proceeding.  GMAC Mortgage is the servicer for Mr. Pichardo's loan.  Campbell Decl. ¶ 6.

GMAC Mortgage has no record of any foreclosure proceeding being commenced against Mr.

Pichardo's property, and is not currently prosecuting any such action.  Campbell Decl. ¶ 6.  To

the contrary, the Debtors' loan files reflect that Mr. Pichardo entered into a mortgage loan

modification agreement effective as of December 1, 2009, and that Mr. Pichardo is current on

payments under the modified mortgage loan.  Campbell Decl. ¶ 6.

10.     The California Action only asserts damages claims, not claims that could

result in the unwinding of a past foreclosure sale.  As described in the Complaint, Mr. Pichardo

seeks damages for GMAC Mortgage's alleged violation of the FDCPA, unfair business practices,

and negligent misrepresentation.  See Complaint at 3-7.  Based on the foregoing, the California

Action does not fall within the scope of the limited relief from the automatic stay provided by the

Supplemental Servicing Order.

## II.     Relief from the Automatic Stay Should Not Be Granted

### A.      The Policies Underlying the Automatic Stay Weigh in Favor of Denying the Relief Requested by the Movant

11.     Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that:

(a) ... a petition filed under section 301, 302, or 303 of this title ... operates as a
stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or
employment of process, of a judicial, administrative, or other action or
proceeding against the debtor that was or could have been commenced

ny-1055031

before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

12.    11 U.S.C. § 362(a)(1).  The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws."  Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection, 474 U.S. 494, 503 (1986).  The automatic stay is of considerable importance in cases such as this, where the Debtors seek to sell all or substantially all of their assets.  It maintains the status quo to protect the debtor's ability to control the sale or other disposition of property of the estate.  COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2012).  The automatic stay prevents the state-law "race to the courthouse," and is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  SEC v. Brennan, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted).  In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell."  In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

13.    One of the primary objectives of these Chapter 11 cases is the preservation of the Debtors' going concern value through the sale of their servicing platform and legacy assets, through which the Debtors hope to maximize creditor recoveries.[2]  The automatic stay is critical to the Debtors' ability to achieve this objective because it will permit the Debtors' management and employees, including the Debtors' in-house legal department (the "**Legal Department**"), to focus on the tasks critical to achieving a successful resolution of these cases, including, but not limited to, the following:  (i) myriad due diligence and other issues with respect to the proposed sales of the Debtors' servicing operations and legacy loan portfolios,

---

[2]    In tandem with this effort, the Debtors have entered into plan support agreements with key constituents including AFI, certain holders of their junior secured notes, and certain investors in mortgage-backed securitizations sponsored by the Debtors.

5

(ii) the multitude of tasks related to preparing and filing a plan and disclosure statement and

obtaining the requisite court approvals of the disclosure statement and confirmation of the plan,

(iii) producing documents and responding to requests for information in connection with

investigations by the Creditors' Committee and the Examiner, and (iv) obtaining approval for

settlement agreements regarding potential claims to be asserted by or against the Debtors'

estates[3] – all of which the Debtors' seek to accomplish on an accelerated time frame.  Performing

just these tasks in isolation is in itself a huge burden given that the objective of these Chapter 11

cases are somewhat unprecedented (i.e., the sale of a mortgage loan servicing and origination

platform as a going concern), and that the Debtors must address the concerns of multiple

constituencies, including United States government entities and governmental associations in the

context of a Chapter 11 case.  At the same time, the Debtors' personnel continue to operate the

Debtors' business; itself a full time endeavor.  These, and many other tasks related to prosecution

of the Chapter 11 cases, have and will continue to require the utmost attention from all of the

Debtors' employees.  Continuation of the breathing spell created by the automatic stay, therefore,

is essential to the Debtors' restructuring at this juncture, because it allows the Debtors to focus

on steps critical to achieving a successful resolution to these cases, including the continued

operation of the Debtors' businesses and consummation of the sales.

### B.    The Movant has Failed to Establish Cause for Relief from the Automatic Stay.

14.    Section 362(d) of the Bankruptcy Code provides that the Court shall grant

relief from the automatic stay "for cause."  11 U.S.C. § 362(d).  The Bankruptcy Code does not,

however, define the phrase "for cause."  In the context of stayed prepetition litigation, though,

---

[3]    *See Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (II) the RMBS Trustees' Limited Objection to the Sale Motion* [Docket No. 945] (scheduling discovery related deadlines for the Debtors' proposes residential mortgage backed securities trust settlement through October, 2012).

the Second Circuit has outlined a 12-factor test (the "**Sonnax Factors**") to determine whether

"cause" exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues, (2) the lack of any connection with or interference with the bankruptcy case, (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, (5) whether the debtor's insurer has assumed full responsibility for defending the action, (6) whether the action primarily involves third parties, (7) whether litigation in another forum would prejudice the interests of other creditors, (8) whether the judgment claim arising from the other action is subject to equitable subordination, (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor, (10) the interests of judicial economy and the expeditious and economical resolution of litigation, (11) whether the parties are ready for trial in the other proceeding and (12) the impact of the stay on the parties and the balance of harms.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280,

1285-1287 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d

Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not

applied the Sonnax Factors, made only sparse factual findings and ultimately did not provide the

appellate court "with sufficient information to determine what facts and circumstances specific to

the present case the court believed made relief from the automatic stay appropriate"). Courts

have recognized that not all of the Sonnax Factors will be applicable to every case, and the Court

may disregard irrelevant factors.  See In re Mazzeo, 167 F.3d at 143.

15.     In a request for stay relief, the moving party bears the initial burden to

demonstrate that good cause exists for lifting the stay, using the Sonnax Factors, and the court

may deny the motion if the movant fails to make an initial showing of cause.  See Sonnax, 907

F.2d at 1285; Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48

(2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if

the movant fails to make an initial showing of cause.") (quotation omitted).

16.    The movant's burden is especially heavy if it is an unsecured creditor.
"[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1)
should not be granted relief from the stay unless extraordinary circumstances are established to
justify such relief." In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also In re
Motors Liquidation Co., Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17,
2010).

17.    The Motion fails to provide any analysis of how the Sonnax factors weigh
in favor of lifting the automatic stay, and is devoid of any reason why *nunc pro tunc* relief from
the automatic stay should be granted in order to allow the post-petition California Action to
proceed.  The Debtors respectfully submit that the Court should deny the Motion on that basis
alone.

18.    Additionally, the Debtors submit that the application of the Sonnax factors
clearly indicates that granting relief from the automatic stay would be inappropriate with respect
to the Motion.[4]  Thus, the Motion should be denied.

1.    *Relief From the Stay Would Not Result in a Complete Resolution of
the Issues (Sonnax Factor No. 1)*

19.    The first Sonnax Factor does not support relief from the stay because
lifting the stay would not result in resolution of the issues.  If the stay were lifted, the entire
California Action would still have to be litigated against GMAC Mortgage.  The California
Action is in its initial stages, and an initial case conference has not yet been held.  See Campbell
Decl. ¶ 14.  Litigating the California Action to completion would require the Debtors to prepare
an answer and potentially motions for dismissal and/or summary judgment, present oral

---

[4]    Sonnax Factors numbers 3 and 9 are not applicable to the facts here.  The Debtors do not address Sonnax Factor
8 in their objection, but reserve all right with regard thereto.

arguments and, if summary judgment is not granted, conduct written discovery, depositions,

prepare for and conduct a trial.  See Campbell Decl. ¶ 14.  Even if a judgment was ultimately

rendered against GMAC Mortgage in the California Action, such judgment would merely entitle

Mr. Pichardo to a general unsecured claim to be paid proportionally with thousands of other

similar claims in accordance with the terms of a confirmed Chapter 11 plan.  There is no reason

why Mr. Pichardo should be afforded the opportunity to liquidate his general unsecured claim

ahead of the thousands of similarly-situated creditors.

> 2.    *The Lifting of the Automatic Stay Is Connected to and Will Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor No. 2).*

20.     The second Sonnax Factor, lack of any connection with or interference

with the bankruptcy case, militates against granting the Motion.  At best, allowing the California

Action to proceed against the Debtors at this point in the Debtors' Chapter 11 cases would be a

waste of estate assets.  The Debtors' Chapter 11 cases are large and exceedingly complex, and

the issues and tasks facing the Debtors before achieving a successful resolution are difficult and

numerous.  Lifting the automatic stay as requested in the Motion would require the Legal

Department and other employees of the Debtors to spend time and resources actively monitoring,

analyzing, and evaluating the status of and litigation strategy related to the case, at the expense of

time they could devote to advancing the Chapter 11 cases to a successful resolution.

21.     In particular, the Legal Department is tasked with managing litigation in

which the Debtors are defendants or respondents in state and federal court, including bankruptcy

courts, as well as managing litigation for third parties for which the Debtors have a contractual

obligation to defend.  The Legal Department plays a very active role in analyzing and

strategizing on active litigation matters, working with various departments within the Debtors'

regional offices, and performing any number of other litigation related duties.  See Campbell

Decl. ¶¶ 11-13 (describing some of the Legal Department's functions).

22.       Additionally, as a result of the Debtors' bankruptcy filings and the entry of

the Supplemental Servicing Order, the Legal Department's responsibility have increased to

include (i) the review and analysis of individual claims as they arise in conjunction with internal

business personnel, local litigation counsel and ResCap bankruptcy counsel to determine the

applicability the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside

litigation counsel and its mortgage default counsel regarding the application of the Supplemental

Servicing Order (and will continue to do so as new legal actions arise); (iii) assisting Chapter 11

counsel with the preparation of various motions, responses to motions for relief from stay and

other Court filings[5], as well as various bankruptcy related tasks; (iv) assisting Chapter 11 counsel

and internal business personnel with Chapter 11 reporting requirements; (v) assisting with

matters pertaining to the pending sale of the Debtors' servicing and origination platform and

legacy assets; and (vi) assisting with matters pertaining to the Examiner's investigation.  See

Campbell Decl. ¶ 12.  These responsibilities are ongoing and will continue and will likely

expand as these Chapter 11 cases progress.  See Campbell Decl. ¶ 12.  Adding to these

responsibilities by permitting legal actions to continue would divert the Legal Department's and

other critical employees' attention from the critical tasks of running the Debtors' business and

would run counter to the policies behind the automatic stay.  See In re Pioneer Commercial

Funding Corp., 114 B.R. at 48 (noting that the automatic stay is intended to provide the Debtors

---

[5]     By way of example, the Legal Department had a significant role in the drafting of the Supplemental Servicing
Motion and the Interim Supplemental Servicing Order [Docket No. 181] and participated in the negotiation of
the Supplemental Servicing Order.  The Legal Department also, *inter alia*, assisted in the preparation of the
Debtors' Schedules and Statement of Financial Affairs, and Ordinary Course Professionals Motion, and all of
the responses to the motions for relief from the automatic stay filed to date.

with a "breathing spell" to address the immediate concerns related to the restructuring of the

Debtors' businesses).

23.    Therefore, for the above reasons, the second <u>Sonnax</u> factor weighs heavily

against lifting the automatic stay.

> 3.    *No Specialized Tribunal Has Been Established to Hear the*
> *California Action (Sonnax Factor No. 4).*

24.    No specialized tribunal has been created to hear any of the claims involved

in the California Action. Campbell Decl. ¶ 15. Instead, the California Action raises ordinary

state and federal civil claims, and is pending in the Superior Court of California. <u>See</u> Complaint.

This Court has recognized that it can interpret and apply state law in resolving claims through the

bankruptcy process. <u>See</u>, <u>e.g.</u>, <u>In re Bally Total Fitness of Greater N.Y., Inc.</u>, 402 B.R. 616, 624

(Bankr. S.D.N.Y. 2009) ("[t]his Court has significant experience in applying state law ....").

Accordingly, the fourth <u>Sonnax</u> factor weighs in favor of denying relief from the automatic stay.

> 4.    *No Insurer Has Assumed Responsibility for the California Action*
> *(Sonnax Factor No. 5).*

25.    For the most part, in the vast majority of their cases, including the

California Action, the Debtors pay their legal defense fees and costs out-of-pocket. Campbell

Decl. ¶ 17. As a result, requiring the Debtors to defend the California Action will result in an

unnecessary diminution in the value of the Debtors' estates. Indeed, prior to the Petition Date,

the Debtors' out-of-pocket defense costs averaged approximately $5.7 million per month.

Campbell Decl. ¶ 17.

26.    Moreover, the claims asserted by Mr. Pichardo in the California Action do

not fall within the scope of the Debtors' insurance policy coverage. Campbell Decl. ¶ 16.

Therefore any amounts awarded as judgments against the Debtors will be born directly by the

Debtors. Campbell Decl. ¶ 16.

27.    Therefore, the fifth <u>Sonnax</u> Factor weighs against granting relief from the automatic stay.

     5.    *The California Action does not Primarily Involve Third Parties (Sonnax Factor No. 6).*

28.    Debtor GMAC Mortgage is alleged to have been the primary actor in the California Action.  Campbell Decl. ¶ 18.  As a result, the Debtors are required to actively participate in the California Action in order to avoid facing an adverse judgment and, accordingly, the fourth <u>Sonnax</u> Factor weighs against granting relief from the automatic stay. <u>See</u> <u>City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l Inc.)</u>, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate, suggesting that continuance of the stay was proper.").

     6.    *Litigation of the California Action in Another Forum Would Prejudice the Interests of Other Creditors (Sonnax Factor No. 7).*

29.    Likely, each of the litigants in stayed actions would prefer to liquidate their claims through their pending lawsuits.  However, liquidation of Mr. Pichardo's claims can and should be done in this Court as part of an organized claims resolution process.  Requiring the Debtors to defend the California Action in another forum would require the Debtors to utilize estate assets and resources at a time when the Debtors' employees should be focused on the administration of the Chapter 11 cases, and would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court," <u>In re Cuyahoga Equip. Corp.</u>, 980 F.2d 110, 117 (2d Cir. 1992).  A successful resolution of these Chapter 11 cases is in the interests of all of the Debtors' creditors and diverting the attention of the Debtors' employees, including the Legal Department, to creditor litigation, not to mention the significant costs associated therewith, could have a detrimental effect on the restructuring

effort.  As a result, the seventh Sonnax Factor also weighs in favor of denying relief from the automatic stay.

> 7.  *The Interests of Judicial Economy and Economical Resolution of the California Action Are Best Served by Maintaining the Automatic Stay and the California Action is Not Ready for Trial (Sonnax Factor Nos. 10 and 11).*

30.     As noted above, the California Action underlying the Motion is in its early stages.  Campbell Decl. ¶ 19.  In fact, the California Action was commenced in violation of the automatic stay, rendering it void absent *nunc pro tunc* stay relief.  See Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994) ("The stay is effective immediately upon the filing of the petition, and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." (citing Shimer v. Fugazy (In re Fugazy Express, Inc.), 982 F.2d 769, 776 (2d Cir. 1992); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991); 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.), 835 F.2d 427, 431 (2d Cir. 1987)).

31.     A notice of the Debtors' bankruptcy cases and the injunction imposed pursuant to the automatic stay was promptly served following commencement of the California Action.  Campbell Decl. ¶ 9; see also Exhibit 3.  The state court in which the California Action is pending has not even entered an order setting a discovery schedule or a trial dates.  Campbell Decl. ¶ 19.  Accordingly, that court has not expended significant judicial resources, if any, overseeing the California Action.  Therefore, the eleventh Sonnax Factor weighs in favor of denying the stay relief in each case.  See Bally, 402 B.R. at 624 (denying stay relief where the parties had not started conducting extensive discovery and were not ready for trial).

13

8.      *The Balance of Harms Favors Maintaining the Automatic Stay
(Sonnax Factor No. 12).*

32.      The final <u>Sonnax</u> Factor, the balance of the harms, weighs heavily in favor

of maintaining the stay.  Mr. Pichardo does not provide any evidence that he will suffer prejudice

if the stay is not immediately lifted.  In contrast, the cost to the Debtors of lifting the automatic

stay at this early stage of the cases is substantial, as is the potential detriment to other creditors.

Establishing a precedent for lifting the automatic stay at this point would inevitably lead to

additional relief from stay motions seeking to proceed with prepetition litigation.  With the

Debtors defending over 1,900 prepetition actions and in addition, party to tens of thousands of

foreclosure, eviction and borrower bankruptcy proceedings nationwide, relief from stay motions

filed by plaintiffs in even a relatively small percentage of the Debtors' outstanding litigation

would distract the Debtors' management, professionals and the Legal Department, thus

interfering with the Debtors' efforts to successfully reorganize in these Chapter 11 cases.  <u>See</u>

Scoliard Decl. ¶ 5; <u>see also</u>, <u>e.g.</u>, <u>In re Northwest Airlines Corp.</u>, No. 05-17930, 2006 WL

694727, at *2 (Bankr. S.D.N.Y. Mar. 3, 2006) (stating that "[t]o allow the automatic stay to be

lifted with respect to this action at this time would prompt similar motions and . . . [t]he

distraction and expense of defending such litigation would interfere with judicial economy and

the Debtors' process of reorganization.") (citing <u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d 984, 989

(2d Cir. 1990)); <u>Bally</u>, 402 B.R. at 623 ("allowing the actions to proceed would distract the

Debtors' management from the bankruptcy proceeding . . . thereby affecting the interests of other

creditors.").  During the pendency of the Debtors' Chapter 11 cases, the limited resources of the

Debtors' estates are much better spent on the Debtors' restructuring efforts, rather than litigating

borrower lawsuits spread throughout the country.  Forcing the Debtors to litigate the California

Action, as discussed above, would distract the Debtors from and hinder their reorganization

efforts and negate the important "breathing spell" necessary to allow them to restructure and preserve the value of their assets for the benefit of all creditors.

33.    Permitting Mr. Pichardo to commence an action in violation of the automatic stay in order to liquidate his claims in state court would undoubtedly lead to numerous additional stay relief motions and, potentially, encourage other individuals to similarly disregard the automatic stay and violate the Bankruptcy Code, which would unnecessarily drain the Debtors' resources and distract them from restructuring at this important early stage in the cases. See Bally, 402 B.R. at 624 (holding that the overall balance of harms weighed in favor of denying stay relief because forcing the debtors to litigate would distract them from reorganizing, threaten to open the "floodgates" to other lift stay motions, resources were better spent stabilizing operations and cash flows, and no great hardship had been demonstrated). This concern is real; even at this early stage in the Debtors' Chapter 11 cases, the Debtors and counsel have received numerous inquiries requesting consent to relief from the stay and at least several dozen relief from stay motions have been filed to date. The balance of the harms clearly favors maintaining the automatic stay with respect to the California Action.[6]

## CONCLUSION

34.    Based on the weight of settled authority, the Debtors respectfully submit that Mr. Pichardo has failed to meet his burden to show cause for lifting the automatic stay to permit the California Action to proceed in California state court. All of the applicable Sonnax Factors weigh heavily in favor of maintaining the automatic stay. As such, the Court should deny the Motion.

---

[6]    The Debtors have already agreed to shoulder more of the burden and increased costs of defense through the Supplemental Servicing Order to permit a significant number of foreclosure, eviction and bankruptcy related claims against them to proceed.

ny-1055031

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an

Order denying the Motion and grant such other relief as the Court deems proper.

New York, New York                      /s/ Norman S. Rosenbaum
Dated: August 22, 2012              Gary S. Lee
                                    Lorenzo Marinuzzi
                                    Norman S. Rosenbaum
                                    MORRISON & FOERSTER LLP
                                    1290 Avenue of the Americas
                                    New York, New York 10104
                                    Telephone: (212) 468-8000
                                    Facsimile: (212) 468-7900

                                    *Counsel to the Debtors and
                                    Debtors in Possession*

16