# EXHIBIT 1

## **Campbell Declaration**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Norman Rosenbaum

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF NATASHA CAMPBELL,**
**IN-HOUSE COUNSEL AT RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF**
**DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM THE**
**AUTOMATIC STAY FILED BY JULIO PICHARDO [DOCKET NOS. 1026, 1212]**

I, Natasha Campbell, declare as follows:

1.    I serve as In-House Counsel in the Legal Department, and manage the Core Mortgage Litigation Group at Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**"). I have held this position since 2011.  Prior to that date, I was Associate Counsel handling litigation for ResCap.

2.    In my role as In-House Counsel at ResCap, I am responsible for the management of all core mortgage litigation nationwide, which includes the management and

supervision of five litigation attorneys and fifteen litigation case managers. I also supervise and manage the subpoena response team and the depositions and discovery team. However, as a result ResCap's Chapter 11 filing, my role has significantly expanded to include assisting the Debtors and their professional advisors in connection with the administration of the Chapter 11 cases, in addition to my litigation work. Specifically, my expanded duties and responsibilities as to the Debtors' Chapter 11 cases include, but are not limited to: (i) frequently communicating with the Debtors' bankruptcy counsel, usually daily, on various mortgage litigation and other matters; (ii) assisting the Debtors' bankruptcy counsel in the analysis of and drafting of responses to motions for relief from stay, objections to various filings, and motions critical to the functions of the Debtors' business; (iii) working with Bankruptcy Counsel, other in-house attorneys and business personnel on bankruptcy issues impacting the Debtors' business operations; and (iv) providing guidance to the Legal Department regarding orders entered in this case, filings by other parties and the Chapter 11 process.

3. I am authorized to submit this declaration (the "**Declaration**") in support of the *Debtors' Objection To Motion for Relief from the Automatic Stay Filed By Julio Pichardo [Docket Nos. 1026 and 1212]* (the "**Objection**").[1]

4. In my capacity as In-House Counsel, I am generally familiar with the Debtors' litigation matters, including the California Action that is the subject of the Debtors' Objection. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' litigation case files, books and records as well as other relevant documents; my discussions with other members of the Legal

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

ny-1055096                                    2

Department; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' litigation matters, financial condition and history. In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

5. As of August 3, 2012, the Debtors by way of direct claims and counter-claims are defendants, respondents, or are contractually obligated to defend third parties in 1,910 pending litigation and contested foreclosure and bankruptcy matters filed in jurisdictions all around the country. Approximately fifty-eight percent (58%) of these matters concern either (ii) defenses asserted in foreclosure, eviction or borrower bankruptcy proceedings or (ii) title disputes, both of which are exempted from the automatic stay by the Supplemental Servicing Order; fourteen percent (14%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not subject to the stay, notwithstanding the Supplemental Servicing Order; twenty-four percent (24%) are stayed and four percent (4%) are still under review for their status. Thus, approximately seventy-two percent (72%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not stayed and continue to proceed in various jurisdictions across the country. This is in addition to the tens of thousands of foreclosure actions and borrower bankruptcies the Debtors are parties to in actions pending throughout the fifty states primarily managed by the Debtors' mortgage default group.

A.	**Mr. Pichardo's Mortgage Loan History**

6.	GMAC Mortgage is the servicer for Mr. Pichardo's loan. My staff has reviewed the relevant loan files and GMAC Mortgage has no record of any foreclosure proceeding being commenced against Mr. Pichardo's property, nor is it currently prosecuting any such action. To the contrary, the Debtors' loan files reflect that Mr. Pichardo entered into a mortgage loan modification agreement effective as of December 1, 2009. My staff's review of the loan files and payment history also shows that, as of the date hereof, Mr. Pichardo was current on his mortgage loan.

B.	**The California Action**

7.	On July 6, 2012, without leave of this Court and in violation of the automatic stay, Mr. Pichardo, represented by counsel, commenced an action against GMAC Mortgage in the Superior Court of California, captioned Julio Pichardo v. GMAC Mortgage; Does 1 to 10, Case No. CIV581642 (Ca. Sup.) (the "**California Action**").

8.	The California Action seeks the imposition of monetary damages against GMAC Mortgage. See Complaint, attached to the Objection as Exhibit 2, at 6-7. Specifically, Mr. Pichardo seeks compensatory and punitive damages, restitution, and attorneys' fees for GMAC Mortgage's alleged (a) violation of the Fair Debt Collection Practices Act ("**FDCPA**"); (b) unfair business practices and false advertising in violation of California Business and Professions Code sections 17200 and 17500, respectively; and (c) negligent misrepresentation, which conduct Mr. Pichardo alleges began prepetition and is currently ongoing. See Complaint at 3-7.

9.	On July 30, 2012, the Debtors' outside counsel, Severson & Werson, P.C., served a notice of bankruptcy and suggestion of automatic stay on Mr. Pichardo's counsel in the California Action. See Exhibit 3 to the Objection.

10. To date, I understand that Mr. Pichardo's counsel has not withdrawn the California Action.

### C.  Lifting the Automatic Stay Will Interfere With the Debtors Chapter 11 Cases

11. The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have contractual obligations to defend. The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial.

12. As a result of the Debtors' bankruptcy filings and the entry of the Supplemental Servicing Order, the Legal Department's responsibilities have increased to include (i) the review and analysis of individual claims as they arise in conjunction with internal business personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability of the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation counsel and its mortgage default counsel regarding the application of the Supplemental Servicing Order (and will continue to do so as new legal actions arise); (iii) assisting the Debtors' banruptcy counsel with the preparation of various motions, responses to motions for relief from

ny-1055096                                    5

stay and other Court filings[2], as well as various bankruptcy related tasks; (iv) assisting Chapter 11 counsel and internal business personnel with Chapter 11 reporting requirements; (v) assisting with matters pertaining to the pending sale of the Debtors' servicing and origination platform and legacy assets; and (vi) assisting with matters pertaining to the Examiner's investigation. These responsibilities are ongoing and will continue and likely expand as these Chapter 11 cases progress.

13.    Given the comprehensive and detailed role the Legal Department plays in (i) the managing of the Debtors' litigation and contested foreclosure and bankruptcy matters; (ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy counsel and financial advisors with various motions and other filings in the Debtors' bankruptcy case, carrying out its ordinary course tasks while at the same time discharging its duties in the Chapter 11 Cases has been and will continue to be a monumental task. Permitting legal actions otherwise stayed by the Debtors' bankruptcy to proceed (not to mention allowing entirely new actions to be commenced), therefore, would create a significant burden on the Debtors by adding an additional workload of up to (approximately) 690 cases, diverting the Legal Department's and other critical employees' attention from the critical tasks of running the Debtors' businesses, and significantly increasing the Debtors' out-of-pocket legal costs.

---

[2]    By way of example, the Legal Department had a significant role in the drafting of the Supplemental Servicing Motion and the Interim Supplemental Servicing Order [Docket No. 181] and participated in the negotiation of the Supplemental Servicing Order. The Legal Department also, *inter alia*, assisted in the preparation of the Debtors' Schedules and Statement of Financial Affairs, the Ordinary Course Professionals Motion, and all of the responses to the motions for relief from the automatic stay filed to date.

    **D.**    **Relief from the Automatic Stay Would Not Result in Complete Resolution of the Issues**

    14.    The California Action was commenced less than two months ago, and an initial case conference has not yet been held. Litigating the California Action to completion could require the Debtors to prepare an answer and potentially motions for dismissal and/or summary judgment, present oral arguments and, if summary judgment is not granted, conduct written discovery, depositions, prepare for and conduct a trial.

    **E.**    **No Specialized Tribunal has Been Established to Hear the California Action**

    15.    As far as I am aware, no specialized tribunal has been created to hear any of the claims involved in the California Action.

    **F.**    **No Insurer Has Assumed Responsibility for the California Action**

    16.    While the Debtors have customary errors and omissions insurance coverage ("**E&O Insurance**"), that E&O Insurance policy does not provide coverage for the claims Mr. Pichardo asserts against the Debtors. Accordingly, any amounts awarded to Mr. Pichardo as judgments against the Debtors will be born directly by the Debtors' estates.

    17.    In addition, in the vast majority of the cases, including the California Action, the Debtors pay their legal defense fees and costs out-of-pocket. As a result, requiring the Debtors to defend the California Action will result in increased out-of-pocket defense costs, which, based upon the Debtors' records for the year prior to the Petition Date, averaged approximately $5.7 million per month.

    **G.**    **Mr. Pichardo's Claims Against the Debtors in the California Action do not Primarily Involve Third Parties**

    18.    GMAC Mortgage is the only named defendant in the California Action.

### H. The California Actions Is Still in the Early Stages

19. As noted above, the California Action underlying the Motion is in its early stages of litigation. Nothing has been filed except for the Complaint. No answer has been filed by GMAC Mortgage, and the court overseeing the California Action has not even entered an order setting a discovery schedule or a trial date.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 22, 2012

*/s/* Natasha Campbell
Natasha Campbell
In-House Counsel for
Residential Capital, LLC