Hearing Date: TBD
Objection Deadline: August 23, 2012

**MORGAN, LEWIS & BOCKIUS LLP**
James L. Garrity, Jr.
John C. Goodchild, III (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustees of Certain Mortgage Backed Securities Trusts*

**DECHERT LLP**
Glenn E. Siegel
Craig P. Druehl
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage Backed Securities Trusts*

**ALSTON & BIRD LLP**
Martin G. Bunin
John C. Weitnauer (*pro hac vice*)
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts*

**SEWARD & KISSEL LLP**
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York  10004
Telephone:  (212) 574-1200
Facsimile:  (212) 480-8421

*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage Backed Securities Trusts*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 12-12020 (MG) |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) Jointly Administered |

**PRE-AUCTION OBJECTIONS OF THE RMBS TRUSTEES
TO THE DEBTORS' SALE MOTION**
_____

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT. ............................................................................................... 1

II. OBJECTIONS. ............................................................................................................................ 4

    2.01   The Sale Motion Seeks to Impermissibly Limit the Scope of Obligations to be Assumed and Assigned. ................................................................................................. 4

          (a) The Limitation of Future Performance. ..................................................................... 4

          (b) The List of Servicing Obligations. .............................................................................. 7

    2.02   The Trustees Must be Provided with Adequate Assurance of Future Performance under any Assumed Contract. ................................................................. 10

    2.03   The Assumed Contracts Cannot be Assigned Absent the Consent of Certain Parties. ......................................................................................................................... 11

III. Conclusion. ............................................................................................................................. 13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Androse Assocs. of Allaire, LLC v. A&P (In re A&P)*,
    2012 U.S. Dist. LEXIS 65193 (S.D.N.Y. May 8, 2012)..........................................................10

*Cinicola v. Sharffenberger*,
    248 F.3d 110 (3rd Cir. 2001) ..................................................................................................6

*In re Access Beyond Technologies, Inc.*,
    237 B.R. 32 (Bankr. D. Del. 1999) ..........................................................................................6

*In re Fleming Cos.*,
    499 F.3d 300 (3d Cir. 2007)............................................................................................6, 13

*In re Gen. Oil Distribs., Inc.*,
    18 B.R. 654 (Bankr. E.D.N.Y. 1982).....................................................................................10

*In re MF Global Holdings Ltd.*,
    466 B.R. 239 (Bankr. S.D.N.Y. 2012) ...................................................................................12

*In re Joshua Slocum Ltd.*,
    922 F.2d 1081, 1091 (3d Cir. 1990.......................................................................................13

*In re Res. Tech., Corp.*,
    2008 U.S. Dist. LEXIS 91148 (N.D. Ill. Nov. 7, 2008)..........................................................10

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (U.S. 1984).......................................................................................................12

*The Leslie Fay Companies, Inc. v. Corporate Property Associates 3 (In re The Leslie Fay
    Companies, Inc.)*,
    166 B.R. 802 (Bankr. S.D.N.Y. 1994)...................................................................................12

**STATUTES**

11 U.S.C. § 363...............................................................................................................................6

11 U.S.C. § 365........................................................................................................................ passim

The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, U.S. Bank National Association and Wells Fargo Bank, N.A., solely in their respective capacities as trustees or indenture trustees for certain mortgaged backed securities trusts (collectively, the "**RMBS Trustees**"),[1] submit their **Pre-Auction Objections** (as defined below) to the Debtors' **Sale Motion**[2] as permitted by this Court's **Scheduling Order**.[3]  The RMBS Trustees respectfully state as follows:

## I. PRELIMINARY STATEMENT.

1.  Prior to the collapse of the mortgage industry in 2007, the Debtors sponsored private label securitizations which they pooled into securitization trusts and contributed loans and provided servicing to private label securitizations sponsored by third parties (collectively, the "**RMBS Trusts**").[4]

2.  The RMBS Trustees are trustees for over 400 RMBS Trusts, which the RMBS Trustees believe currently contain in excess of $100 billion in principal amount of mortgage loans. The beneficial owners of the mortgage loans held by the RMBS Trusts are investors in residential mortgage-backed securities ("**RMBS**").

---

[1]  The RMBS Trustees file this Objection solely in their capacity as trustees of RMBS Trusts and not, in the case of all of the RMBS Trustees other than Wells Fargo, N.A., in any of their capacities as members of the Official Committee of Unsecured Creditors (the "**Committee**").  Wells Fargo, N.A. is not a member of the Committee.

[2]  **Sale Motion** refers to *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (I)(A) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expenses Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (Docket No. 61).

[3]  **Scheduling Order** refers to *Revised Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (II) the RMBS Trustees' Limited Objection to the Sale Motion* (Docket No. 945).

[4]  *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petition and First Day Pleadings*, ¶ 23 n.15. (Docket No. 6) (the "**Whitlinger Aff.**").

1

3. Each RMBS Trust was formed pursuant to either a "Pooling and Servicing Agreement" or a highly-integrated set of "Servicing Agreements," "Mortgage Loan Purchase Agreements," "Indentures," and/or "Trust Agreements," which, when combined, provided for administration of trust assets and the related RMBS. For convenience of reference, the integrated contract governing each RMBS Trust will be referred to herein as a "**PSA**."[5]

4. In connection with the proposed transfer of the Debtors' **Servicing Platform**[6] the Debtors propose to assume and assign all of the PSAs to the ultimate purchaser of the Servicing Platform – which will either be Nationstar Mortgage LLC ("**Nationstar**") or some other party making the highest and best offer at the scheduled auction (the "**Purchaser**").

5. The Debtors have explained that they intend to accomplish the assumption and assignment of the PSAs by using what they call the **Assumption/Rejection Procedure** – whereby the Debtors that serve as servicer (collectively, the "**Servicer Debtors**") will assume the PSAs, and any other Debtors (collectively, the "**Depositor Debtors**") will reject their obligations under the PSAs - thus severing any obligations or liability in respect of the origination and sale of mortgage loans to the RMBS Trusts (including, without limitation, the liability of any Debtors that are party to a PSA with respect to representations and warranties made in connection with such sale, or with respect to the noticing and enforcement of any remedies against a Debtor in respect of alleged breaches of such representations and warranties) (collectively the "**Origination - Related Provisions**") from the PSAs being assumed and

---

[5] Although there are groups of PSAs whose terms are quite similar, there are material differences among many of the PSAs affected by the Motion. Two exemplar PSAs are attached as Exhibits A-1 and A-2, respectively, to the *Affidavit of James L. Garrity, Jr. in Support of the Limited Objections of Certain Trustees for Residential Mortgage Backed Securities Trusts to the Debtors' Sale Motion and Postpetition Financing Motions*, Docket No. 300.

[6] **Servicing Platform** was defined by the Debtors as "the Debtors' mortgage loan origination and servicing platform." Sale Motion at p. 7.

2

assigned.[7] The RMBS Trustees agreed, and the Scheduling Order provides, that the RMBS Trustees will not object to the assignment of the PSAs "free and clear" of the Origination-Related Provisions.[8]

6. By contrast, the Scheduling Order provides that, on or before August 23, 2012, the RMBS Trustees may file their Pre-Auction Objections to the Sale Motion. The Pre-Auction Objections are those objections relating to:

(a) the *scope of the obligations to be assumed* by the assignee of the Servicing Agreements;

(b) the *ability of the assignee to perform* under the assumed Servicing Agreements; and

(c) the *enforceability of any provisions that the Debtors believe are unenforceable* against the Debtors or any prospective purchaser.

*See* ¶ 16 of the Scheduling Order.

7. The Pre-Auction Objections were singled out for early resolution – prior to the date set for the Auction (October 23, 2012) – because the resolution of these issues could affect the bidding at the Auction. Said another way, a determination of these issues in favor of the RMBS Trustees only *after* the Auction would mean that the time and effort devoted to the Auction may have been for naught, to the detriment of the estate and its creditors.

8. The RMBS Trustees are currently working with Nationstar and the Debtors in the hope that the Pre-Auction Objections can be resolved. However, mindful of the possibility that the RMBS Trustees might not be able to reach a satisfactory resolution of all of these issues with Nationstar and, further, that Nationstar might not be the assignee and that a different assignee might not timely resolve all of the Pre-Auction Objections, the RMBS Trustees hereby assert their Pre-Auction Objections as permitted by the Scheduling Order.

---

[7] *See* page 3 of the Scheduling Order.
[8] Scheduling Order at ¶ 17.

## II. OBJECTIONS.

*2.01    The Sale Motion Seeks to Impermissibly Limit the Scope of Obligations to be Assumed and Assigned.*

**(a)    The Limitation of Future Performance.**

9.    The Sale Motion states:

> Nationstar is not assuming and parties will be enjoined from asserting against Nationstar any claims or obligations relating to the pre-closing period under any Assumed Contract, whether such claims or obligations are known, unknown, fixed, contingent, unliquidated or liquidated at the time of the Closing, including, without limitation, any claims or liabilities relating to any act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date, and any indemnification claims or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date. Any parties holding any such claims or obligations will be required to respond to the Debtors' cure notice if they disagree with the amounts set forth therein.

Sale Motion at p. 32 (the "**Limitation of Future Performance**").

10.    The Debtors are seeking permission to assume and assign future servicing duties (and the valuable revenues associated therewith) without obligating the assignee to perform future servicing duties that could be traced to any pre-Closing "acts or omissions." For example, the Limitation of Future Performance would permit Nationstar to refuse to perform a repair on an REO property on the basis that the condition necessitating the repair first arose pre-Closing, whether or not the Debtors caused that condition to exist. Similarly, the Limitation of Future Performance would permit Nationstar to drop the defense of hundreds (if not thousands) of lawsuits against the RMBS Trusts and/or the RMBS Trustees that the Debtors, in their role as servicer, were defending pre-bankruptcy – and that the Debtors are continuing to defend during this bankruptcy.[9]

---

[9]    *See, e.g., Debtors' Application Under Section 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 for Authorization to Employ and Retain Severson & Werson PC as Special California Litigation Counsel to the Debtors,* Nunc Pro Tunc *to May 14, 2012* (Docket No. 720) (seeking to retain California counsel "familiar with Debtors' ... loan servicing practices" and handling approximately 390 open matters such as "(a) claims brought by individual borrowers pertaining to consumer lending issues and foreclosure issues, including

4

11. The Limitation of Future Performance is inconsistent with the requirement that a debtor can assign an executory contract only if "adequate assurance of future performance by the assignee ... is provided...." 11 U.S.C. § 365(f)(2)(B). In fact, the Limitation of Future Performance *guarantees* that § 365(f)(2)(B) cannot be satisfied, because it would authorize Nationstar to walk away from any claim arising from any servicing "act or omission" occurring prior to the Closing and from any "claims or obligations relating to the pre-closing period under any Assumed Contract." Accordingly, the PSAs cannot be assigned if such assignment is qualified by the Limitation of Future Performance (or any comparable provision that absolves an assignee from performing the obligations contained in the PSA).

12. The Sale Motion attempts to divert attention from this obvious infirmity by pretending that the Limitation of Future Performance is just a "cure" claim. *See* Sale Motion, 60

---

but not limited to, allegations of wrongful foreclosure, irregularities in the foreclosure process, standing to foreclose issues, breach of alleged oral modification, breach of promises to forebear from foreclosing, partition actions, and other mortgage lending issues; (b) class action claims regarding alleging improprieties with loan origination and/or servicing; (c) mass tort actions relating to allegations of failure to comply with recording requirements; (d) qui tam actions attacking the Mortgage Electronic Registration System business structure; and (e) claims objections, contested relief from stay motions and adversary proceedings related to consumer lending issues brought by individual borrowers in their respective bankruptcy cases pending in California." Some of the claims being handled by this firm clearly pertain to alleged acts or alleged omissions of the Debtors, as servicer.

See also *Debtors' Application Under Section 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 for Authorization (i) to Employ and Retain Bradley Arant Boult Cummings LLP as Special Litigation and Compliance Counsel to the Debtors,* Nunc Pro Tunc *to May 14, 2012, and (ii) to Approve Alternative Billing Arrangement* (Docket No. 721), seeking to retain that firm for the following matters, including servicing related matters:

> (a) to continue to represent the Debtors and/or the investors for which the Debtors provide servicing or sub-servicing services in existing or future litigation concerning claims related to mortgage loans and related servicing practices brought by borrower against the Debtors and/or such investors primarily, but not exclusively, within the jurisdictions of Alabama, Florida, Kentucky, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, and Texas (the "Covered States");
>
> (b) to continue to represent the Debtors and/or the investors for which the Debtors provide servicing or sub-servicing services in existing or future consumer and class action litigation relating to the Debtors' mortgage servicing operations;
>
> ...
>
> (d) to continue to advise the Debtors regarding compliance with various federal, state, and local laws, statutes, regulations, orders, and similar restrictions regarding the ... the performance of their obligations under their servicing, sub-servicing, and related contracts and agreements; ....

The "investors for which the Debtors provide servicing or sub-servicing services" refers, in many cases, to the RMBS Trusts and/or the RMBS Trustees.

5

("Any parties holding any such claims or obligations [i.e., those arising from the Limitation of Future Performance] will be required to respond to the Debtors' cure notice if they disagree with the amounts set forth therein."). A "cure" payment relates specifically to a *prior* default under an executory contract or unexpired lease. *See* 11 U.S.C. § 365(b). A cure payment is not intended to excuse the assignee from its obligation of future performance. Rather, it is the assignee that must provide adequate assurance of future performance. 11 U.S.C. § 365(f)(2)(B). "*The statutory requirement of 'adequate assurance of future performance by the assignee' affords 'needed protection to the non-debtor party* because the assignment relieves the trustee and the bankruptcy estate from liability *for breaches arising after the assignment.*'" *In re Fleming Cos.*, 499 F.3d 300, 305 (3d Cir. 2007) (*quoting Cinicola v. Sharffenberger*, 248 F.3d 110, 120 (3rd Cir. 2001)) (emphasis added).

13. The assumption of an executory contract makes the debtor's estate liable for performance of all obligations arising thereunder; assignment of an assumed contract obligates the assignee to the same terms. *See, e.g., American Flint Glass Workers Union vs. Anchor Resolution Corp.*, 197 F.3d 76, 81 (3d Cir. 1999) ("[A]n assignment of a contract as such involves a commitment by the assignee to perform all obligations under the contract, as well as to acquire all rights created by the contract.").

14. Section 365 of the Bankruptcy Code is not § 363(f), and does not allow the assumption and assignment of an agreement free and clear of the obligations expressly set forth in such agreement. *See Cinicola*, 248 F.3d at 124 ("[T]he sale of an executory contract triggers the protections afforded sales of bankruptcy estate property but also requires satisfaction of the requirements for assuming and/or assigning the same executory contract."); *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 48 (Bankr. D. Del. 1999) (holding that an executory contract

does not become part of a debtor's estate until it is assumed, and that "[a] debtor cannot avoid the requirements of § 365 by saying it is 'selling' a lease or executory contract, rather than assuming and assigning it.").

15.     There is simply no provision of the Bankruptcy Code that permits assumption and assignment of PSAs stripped of the ongoing duty to perform all obligations and honor all liabilities.  If the Debtors' obligation to perform lies in the future, then there can be no default that must be cured at the time of assignment, because the time for performance of those obligations has not arrived.  An assignee cannot receive an assignment of any PSA, and all of its benefits, without also accepting all of the obligations arising under it.  Accordingly, the RMBS Trustees submit that the PSAs cannot be assumed and assigned subject to the Limitation on Future Performance (or any similar provision).

**(b)     The List of Servicing Obligations.**

16.     The Sale Motion also seeks to rewrite and narrow Nationstar's duties and obligations as the servicer under the PSAs after they have been assumed and assigned. Such a limitation is not permitted for all the reasons described above.

17.     This rewriting of the PSAs is implemented as follows.  The asset purchase agreement with Nationstar (the "**Nationstar APA**")[10] does not use the term "PSA," instead, it uses the term "Servicing Agreements."[11]  The Servicing Agreements are a category of the executory contracts to be assumed and assigned under the Nationstar APA.[12]  A condition of

---

[10]     The Nationstar APA is attached as Exhibit B to the Sale Motion (Docket No. 61-2).
[11]     The Nationstar APA defines "Servicing Agreements" to mean "all Contracts pursuant to which any Seller provides servicing, including primary servicing or master servicing and related activities (including duties as a REMIC Administrator), and includes the Agency Contracts listed on Schedule F, and the Private Investor Servicing Agreements and Servicing Agreements for Other Serviced Loans, in each case as listed on Schedule E."
[12]     Nationstar APA at § 2.2(b).  Nationstar has the ability to exclude specific contracts from the list of executory contracts to be assumed.  The RMBS Trustees have been given to understand that all of the PSAs will be assumed and assigned to Nationstar, but if any are excluded, any affected RMBS Trustee reserves all of its rights with respect to any PSAs that are not either assumed, or assumed and assigned, by the Debtors.

7

closing is the entry of the Sales Order, which "shall not have been modified ... in any manner adverse to Purchaser unless agreed to in writing by Purchaser in its sole discretion...."[13] The Sales Order does not provide for Nationstar to assume all obligations under the PSA's (Servicing Agreements); instead, Nationstar's obligations under the Servicing Agreements are limited to obligations and agreements related to the following list (the "**List of Servicing Obligations**"):

> (a) collections with respect to, or the administration or servicing or subservicing or master servicing of, or reporting in respect of, Mortgage Loans, (b) servicing fees or ancillary income, (c) the disbursement of collections with respect to Mortgage Loans, (d) the making of delinquency advances and servicing advances in connection with the servicing or subservicing or master servicing of Mortgage Loans, (e) payment of expenses associated with the administration, servicing or subservicing or master servicing of Mortgage Loans, (f) the limitation on liability of, and indemnification in favor of, the servicer, subservicer or master servicer thereunder, or (g) representations, warranties and covenants running in favor of the servicer, subservicer or master servicer thereunder....[14]

18. The List of Servicing Obligations does, of course, include a few of the obligations of a servicer. But, whether by inadvertence or design, the List of Servicing Obligations is extraordinarily narrow. Even a summary description of a servicer's obligations

---

[13] Nationstar APA at § 8.1(ii).

[14] The proposed Sales Order (Docket No. 113-2) rewrites the Servicing Agreements in a roundabout way. Paragraph P of the Sales Order (at p. 10 thereof) starts by saying "The Servicing Agreements being assumed and assigned to the Purchaser pursuant to the Nationstar APA consist solely of enforceable contracts for providing servicing, subservicing or master servicing for Mortgage Loans. ... The Servicing Agreements do not include any Other Agreements, regardless of whether such Other Agreements arise from, or are memorialized in, the same writing as the Servicing Agreements, and to the extent any Servicing Agreement arises from, or is memorialized in, one or more writings which include an Other Agreement, such Servicing Agreement is severable from any Other Agreements."

There are two parts to the definition of Other Agreements. One category of Other Agreements is any "right, *obligation*, representation, covenant or agreement, ... (ii) that relates to mortgage loan origination, or the sale of mortgage loans...." Sales Order, paragraph P, at p. 10-11 thereof. This is similar to the Origination – Related Provisions.

The other category is phrased in the negative – an Other Agreement is any "right, obligation, representation, covenant or agreement (i) contained in a Servicing Agreement that is **not** related to (a) collections with respect to, or the administration or servicing or subservicing or master servicing of, or reporting in respect of, Mortgage Loans, (b) servicing fees or ancillary income, (c) the disbursement of collections with respect to Mortgage Loans, (d) the making of delinquency advances and servicing advances in connection with the servicing or subservicing or master servicing of Mortgage Loans, (e) payment of expenses associated with the administration, servicing or subservicing or master servicing of Mortgage Loans, (f) the limitation on liability of, and indemnification in favor of, the servicer, subservicer or master servicer thereunder, or (g) representations, warranties and covenants running in favor of the servicer, subservicer or master servicer thereunder...." *id*. (emphasis added).

What is left then, as the redefined scope of the Servicing Agreements to be assumed and assigned, is any "right, obligation, representation, covenant or agreement related to" the list quoted above.

8

demonstrates that a servicer's obligations are far broader than the List of Servicing Obligations - in general, the PSAs provide that Debtors, as servicer, are responsible for *all* tasks relating to the administration of the RMBS Trusts' *mortgage loan assets* (billing, collecting, *foreclosing, maintaining and selling REO properties*), the *investment of mortgage loan cash flows* pending distribution to securities holders, and the compilation, computation and reporting of mortgage loan performance data.[15] Under many of the PSAs, Debtors, as servicer, are required to *pay all fees and expenses of the RMBS Trustees, and to indemnify, defend and hold the RMBS Trustees* harmless from all loss, liability, cost or expense arising from the RMBS Trustees' administration of the RMBS Trusts.[16]

19.     Notably, the List of Servicing Obligations focuses on the day-to-day servicing of Mortgage Loans, and does not even include any mention of dealing with foreclosures of defaulted Mortgage Loans or maintenance or liquidation of foreclosed properties (known as REO Property). In fact, underscoring the distinction – and the impact of the restricted List of Servicing Obligations – the Nationstar APA specifically defines Mortgage Loans separately from REO Property, effectively carving REO Property altogether out of Nationstar's responsibilities.[17]

20.     In addition, no mention is made – and therefor the proposed Sales Order would negate – Nationstar's obligation to pay the expenses of, and to indemnify, the RMBS Trustees.[18]

21.     For all the reasons set out above, neither the Debtors nor Nationstar can rewrite the PSAs as the List of Servicing Obligations seeks to do.[19]

---

[15]  *See, e.g.*, PSA Exemplar 1 at Article III, Administration and Servicing of Mortgage Loans, beginning at pp. 165 of Docket No. 300-1.
[16]  *See, e.g.,* PSA Exemplar 1 § 8.05(c), at pp. 218-19 of Docket No. 300-1.
[17]  Nationstar APA at p.22 ("'REO Property' means real property acquired under servicing agreements, whether or not Servicing Agreements, through foreclosure, acceptance of a deed in lieu of foreclosure or otherwise in connection with the default or imminent default of a Mortgage Loan.").
[18]  *See, e.g.*, PSA Exemplar 1 § 8.05(c), at pp. 218-19 of Docket No. 300-1.
[19]  The RMBS Trustees have consented to the severance of the Origination – Related Provisions.

9

*2.02    The Trustees Must be Provided with Adequate Assurance of Future Performance under any Assumed Contract.*

22.    Section 365(f)(2)(B) of the Bankruptcy Code requires that the RMBS Trustees be provided with "adequate assurance of future performance" by the Purchaser with respect to any PSA that will be assumed and assigned by the Debtors.  *See* 11 U.S.C. § 365(f)(2)(B). Furthermore, "[w]hat constitutes adequate assurance is a factual question to be determined on a case by case basis with due regard to the nature of the parties, their past dealings and present commercial realities." *In re Gen. Oil Distribs., Inc.*, 18 B.R. 654, 658 (Bankr. E.D.N.Y. 1982); *see also Androse Assocs. of Allaire, LLC v. A&P (In re A&P)*, 2012 U.S. Dist. LEXIS 65193 (S.D.N.Y. May 8, 2012) ("[C]ourts have determined that whether 'adequate assurance of future performance' has been provided is determined by the facts and circumstances of each case.") (internal quotation omitted).  Factors that courts have considered in determining whether adequate assurance of future performance has been provided include "financial data submitted by the debtor or movant, ... industry outlooks, the nature and relationship of the parties, past dealings of the parties, and the willingness of the parties to fund payments." *In re Res. Tech., Corp.*, 2008 U.S. Dist. LEXIS 91148 (N.D. Ill. Nov. 7, 2008).

23.    In this case, the RMBS Trustees have significant ongoing rights and obligations (financial and otherwise) under the PSAs, and a thorough examination of the financial wherewithal and other qualifications and ability of the Purchaser to assume the Debtors' obligations is required to provide the RMBS Trustees with adequate assurance of future performance.  The PSAs that the Debtors seek to assume and assign pursuant to the Sale Motion form the basis of their loan servicing business, which the Debtors acknowledge is operationally complex and requires substantial financial wherewithal.[20]  Indeed, the Debtors attribute the

---

[20]    *See* Whitlinger Aff., ¶¶ 9, 49-52.

10

required size of the large DIP financing facility that they secured to the financial demands of advancing in accordance with the requirements of the PSAs.[21]  As evidenced by the Debtors' discussion of their legal affairs, including the federal and state investigations of mortgage servicing practices, failure to service loans in accordance with applicable servicing standards and law may subject the servicer and the RMBS trusts themselves to legal significant liabilities.[22]

24.   Debtors have provided certain financial information about Nationstar, and the parties have discussed a meeting of business persons so that the RMBS Trustees can get a better understanding of Nationstar's business operations.  The RMBS Trustees are continuing to work with Nationstar and the Debtors to ensure that all necessary financial and other information is provided to the RMBS Trustees in order to determine Nationstar's ability to perform under the PSAs.  The RMBS Trustees will continue to evaluate the information they receive in this process.  However, the RMBS Trustees hereby object to approval of the Sale Motion to the extent that the RMBS Trustees are not provided with adequate assurance of Nationstar's or any other Purchaser's ability to perform under the Assumed Contracts.

*2.03   The Assumed Contracts Cannot be Assigned Absent the Consent of Certain Parties.*

25.   The RMBS Trustees also object to the proposed sale to the extent the Debtors seek to render unenforceable any provisions of any PSAs that are to be assumed and assigned to Nationstar or any other prospective purchaser by virtue of § 365(f)(1) or any other provision of the Bankruptcy Code.  First, it is worth noting that assignment of the PSAs is not prohibited; rather, the PSAs affirmatively allow assignment to a qualified person.[23]  But, many of the PSAs

---

[21] *See id.*, ¶¶ 53, 196.
[22] *See id.*, ¶¶ 89-92; 166.
[23] *See, e.g.*, PSA Exemplar 2, § 6.02, at p. 142 of Docket No. 300-2, which provides, in pertinent part:

> The Master Servicer may assign its rights and delegate its duties and obligations under this Servicing Agreement; *provided* that the Person accepting such assignment or delegation shall be a Person which is qualified to service Home Loans is reasonably satisfactory to the Indenture Trustee (as pledgee of the

11

also provide that the Debtors' servicing rights and responsibilities can only be assigned if (among other things) the credit rating agencies that rated RMBS issued thereunder have confirmed in writing that the assignment and delegation will not result in a downgrade of such securities ratings.[24]  Certain of the PSAs also include provisions that may require the consent of the applicable insurer or another third party, prior to assignment.[25]  The Debtors have informed the RMBS Trustees that the Debtors believe that such provisions (requiring that such third parties, where applicable, give their approval to the assignee) can be overridden by § 365(f)(1). The RMBS Trustees disagree: these requirements are part and parcel of adequate assurance of future performance and are of material benefit to the Certificateholders; they are not arbitrary or *ipso facto* restrictions on assignment that would hamstring a debtor's effort to realize value from an executory contract.

26.    It is well settled that executory contracts must be assumed and assigned *cum onere* and that assumption and assignment cannot deprive non-debtor contract counterparties of the full benefit of the contracts they bargained for. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (U.S. 1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*."); *In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits."); *The Leslie Fay Companies,*

---

Home Loans), the Credit Enhancer and the Issuer, is willing to service the Home Loans and executes and delivers to the Indenture Trustee and the Issuer an agreement in form and substance reasonably satisfactory to the Credit Enhancer, the Indenture Trustee and the Issuer, which contains an assumption by such Person of its due and punctual performance and observance of each covenant and condition to be performed or observed by the Master Servicer under this Servicing Agreement; *provided further* that each Rating Agency's rating of the Securities in effect immediately prior to such assignment and delegation will not be qualified, reduced or withdrawn as a result of such assignment and delegation (as evidenced by a letter to such effect from each Rating Agency), if determined without regard to the Credit Enhancement Instrument, and *provided further* that the Owner Trustee receives an Opinion of Counsel to the effect that such assignment or delegation shall not cause the Trust to be treated as a corporation for federal or state income tax purposes.

[24]    *See, e.g., PSA Exemplar 1*, §6.02(c), at pp. 208-09 of Docket No. 300-1.
[25]    *Id*.

12

*Inc. v. Corporate Property Associates 3 (In re The Leslie Fay Companies, Inc.)*, 166 B.R. 802 (Bankr. S.D.N.Y. 1994) ("If an executory contract is assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens."); *see also In re Fleming Cos.*, 499 F.3d at 305 ("[A] bankruptcy court . . . must be sensitive to the rights of the non-debtor contracting party . . . and the policy requiring that the non-debtor receive the full benefit of his or her bargain." (*quoting In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1091 (3d Cir. 1990)). The RMBS Trustees hereby object to any attempt by the Debtors to abrogate any provisions of the very PSAs they seek to assume and assign other than the Origination – Related Provisions. With that one exception, the Trustees assert that the Debtors should be required to assume each PSA in its entirety in accordance with the Bankruptcy Code.

### III. Conclusion.

27. The PSAs cannot be assumed and assigned if they are rewritten by the Limitation of Future Performance, the Limitation of Servicing Obligations, or by striking other provisions that the Debtors deem "unenforceable" as the proposed Sales Order would do.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, for the reasons set forth herein, the Trustees respectfully request that this Court deny the Sale Motion to the extent set forth herein and grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
Respectfully submitted, August 23, 2012

| **MORGAN, LEWIS & BOCKIUS LLP** | **DECHERT LLP** |
|---|---|
| By:/s/ James L. Garrity, Jr. | By: /s/ Glenn E. Siegel |
| James L. Garrity, Jr. | Glenn E. Siegel |
| John C. Goodchild, III (*pro hac vice*) | Craig P. Druehl |
| 101 Park Avenue | 1095 Avenue of the Americas |
| New York, New York 10178-0600 | New York, New York 10036-6797 |
| Telephone: (212) 309-6000 | Telephone: (212) 698-3500 |
| Facsimile: (212) 309-6001 | Facsimile: (212) 698-3599 |
| *Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustees of Certain Mortgage Backed Securities Trusts* | *Counsel to The Bank of New York Mellon Trust Company, N.A., as Trustees of Certain Mortgage Backed Securities Trusts* |
| **ALSTON & BIRD LLP** | **SEWARD & KISSEL LLP** |
| By: /s/ John C. Weitnauer | By:/s/ Arlene R. Alves |
| John C. Weitnauer (*pro hac vice*) | Ronald L. Cohen |
| Martin G. Bunin | Arlene R. Alves |
| William Hao | One Battery Park Plaza |
| 90 Park Avenue | New York, New York 10004 |
| New York, NY 10016 | Telephone: (212) 574-1200 |
| Telephone: (212) 210-9400 | Facsimile: (212) 480-8421 |
| Facsimile: (212) 210-9444 | |
| *Counsel to Wells Fargo Bank, N.A., as Trustees of Certain Mortgage Backed Securities Trusts* | *Counsel to U.S. Bank National Association, as Trustees of Certain Mortgage Backed Securities Trusts* |