**Hearing Date: TBD**
**Objection Deadline: August 23, 2012**

ALSTON & BIRD LLP
Martin G. Bunin
John C. Weitnauer (*pro hac vice*)
90 Park Avenue
New York, NY 10016
(212) 210-9400 (telephone)
(212) 210-9444 (facsimile)

*Attorneys for Wells Fargo Bank, N.A. as*
*Master Servicer of Certain Mortgage*
*Backed Securities Trusts*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 12-12020 (MG) |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) Jointly Administered |

**JOINDER OF WELLS FARGO BANK, N.A., AS**
**MASTER SERVICER FOR RESIDENTIAL MORTGAGE**
**BACKED SECURITIES TRUSTS TO "PRE-AUCTION OBJECTIONS**
**OF THE RMBS TRUSTEES TO THE DEBTORS' SALE MOTION"**

Wells Fargo Bank, N.A. ("**Wells Fargo**"), solely in its capacity as master servicer for certain mortgaged backed securities trusts (in such capacity, the "**Master Servicer**"), hereby files its Joinder (the "**Joinder**") to the *Pre-Auction Objections of the RMBS Trustees to the Debtors' Sale Motion* (the "**Trustees' Pre-Auction Objection**"). The Master Servicer respectfully states as follows:

**I. PRELIMINARY STATEMENT.**

1.   Wells Fargo, solely in its capacity as trustee or indenture trustee for certain mortgaged backed securities trusts, and together with Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, The Bank of New York Mellon Trust Company, N.A., and U.S. Bank National Association, each solely in their

respective capacity as trustees of certain mortgage backed securities trusts (the "**RMBS Trustees**"), jointly filed their *Pre-Auction Objections of the RMBS Trustees to the Debtors' Sale Motion*[1] as permitted by this Court's **Scheduling Order**.[2]

2.    Wells Fargo is the Master Servicer for certain other securitization trusts serviced in whole or in part by certain Debtor entities.[3] Wells Fargo's role as Master Servicer of certain mortgage backed securities trusts is separate and distinct from its role as one of the RMBS Trustees and its claims, as Master Servicer, are separate and distinct from its claims arising from its role as one of the RMBS Trustees. Wells Fargo does not

---

[1]    **Sale Motion** refers to *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (I)(A) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expenses Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (Docket No. 61).

[2]    **Scheduling Order** refers to *Revised Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (II) the RMBS Trustees' Limited Objection to the Sale Motion* (Docket No. 945).

[3] Additional detail regarding Wells Fargo's separate role as Master Servicer are set forth in the "Joinder of Wells Fargo Bank, N.A. as Master Servicer for Residential Mortgage Backed Securities Trusts to: (A) Limited Objection of Certain Trustees for Residential Mortgage Backed Securities Trusts to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief; and (B) Limited Objection of Certain Trustees for Residential Mortgage Backed Securities Trusts to the Debtors' Postpetition Financing Motions," (Docket 292) (the "**First Joinder**"). The First Joinder was accompanied by a Declaration of Martin G. Bunin (Docket 296) (the "**Bunin Declaration**") that attached three "exemplar" documents. In the first exemplar document a Debtor (and another unaffiliated servicer) is a direct party to the pooling and servicing agreement along with the Master Servicer and certain other parties (Exhibit A to the Bunin Declaration, the "**PSA Exemplar 1**"). The second uses very different documentation. The trust is formed pursuant to a pooling and servicing agreement (Exhibit B-1 to the Bunin Declaration, the "**PSA Exemplar 2**") to which neither the Debtor nor any of the other seven (7) servicers in the transaction is a party. Rather the Debtor (and the other servicers) is a party to a separate servicing agreement which is assigned ultimately to the trustee of the trust so formed via an Assignment Assumption & Recognition agreement (attached as Exhibit B-2 to the Bunin Declaration, the "**AAR Exemplar 2**"). Though the trustee is the assignee of such rights, the PSA Exemplar 2 and the AAR Exemplar 2 make clear that the Master Servicer is charged with monitoring the performance and enforcing the obligations of the Debtor.

serve simultaneously as the master servicer and trustee of any residential mortgage-backed securities trust.

3. Prior to the collapse of the mortgage industry in 2007, the Debtors sponsored private label securitizations which they pooled into securitization trusts, and contributed loans and provided servicing to private label securitizations sponsored by third parties (collectively, the "**RMBS Trusts**").[4]

4. The Master Servicer acts as master servicer for hundreds of RMBS Trusts, which contain billions of dollars in principal amount of mortgage loans serviced by Debtor entities. The beneficial owners of the mortgage loans held by the RMBS Trusts are investors in residential mortgage-backed securities ("**RMBS**"). Under the RMBS Trusts master serviced by Wells Fargo, the Debtor acts as a primary servicer (often along with other primary servicers). While the terms of specific transactions vary, they generally provide that Debtors are responsible for all tasks relating to the primary servicing of the RMBS Trusts' mortgage loan assets (billing, collecting, foreclosing, maintaining and selling REO properties), the investment of mortgage loan cash flows pending distribution to the Master Servicer or securities administrator for distribution to the RMBS investors, and the compilation, computation and reporting of mortgage loan performance data.[5] In many of these transactions the applicable Debtor, as servicer, has certain financial obligations or indemnification obligations to the Master Servicer or the trust formed in connection with the transaction.[6]

---

[4] *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petition and First Day Pleadings*, ¶ 23 n.15. (Docket No. 6) (the "**Whitlinger Aff.**").

[5] *See, e.g.*, PSA Exemplar 1, at Art. III ("Administration and Servicing of the Mortgage Loans; Accounts")

[6] *See, e.g.*, PSA Exemplar 1, at §§ 3.27 ("Indemnification") and 4.03(c) ("Monitoring of Servicers").

3

5. On these transactions, the Master Servicer is generally responsible for (among other things) supervising, overseeing and monitoring the performance by the Debtor (and the other primary servicers, if applicable) of its obligations under the relevant servicing agreement.[7]

6. If the Debtor defaults in its performance under the servicing agreement, it is the Master Servicer's obligation to pursue appropriate remedies against the Debtor to the extent provided in the transaction documents.[8]

7. Each RMBS Trust was formed pursuant to either a "Pooling and Servicing Agreement" or a highly-integrated set of "Servicing Agreements," "Mortgage Loan Purchase Agreements," "Indentures," and/or "Trust Agreements," which, when combined, provided for administration of trust assets and the related RMBS. For convenience of reference, the integrated contract governing each RMBS Trust will be referred to herein as a "**PSA**."

8. In connection with the proposed transfer of the Debtors' **Servicing Platform**[9] the Debtors propose to assume and assign all of the PSAs to the ultimate purchaser (the "**Purchaser**") of the Servicing Platform – which will either be Nationstar Mortgage LLC ("**Nationstar**") or the party making the highest and best offer at the scheduled auction.

---

[7] *See, e.g.*, PSA Exemplar 1, at Art. IV ("Administration and Master Servicing of the Mortgage Loans by the Master Servicer"); PSA Exemplar 2 at Art. III.
[8] *See, e.g.*, PSA Exemplar 1, at § 4.03 ("Monitoring of Servicers"); PSA Exemplar 2, at § 3.01 ("Master Servicing of the Mortgage Loans"); AAR Exemplar 2, at ¶ 4.
[9] **Servicing Platform** was defined by the Debtors as "the Debtors' mortgage loan origination and servicing platform." Sale Motion at p. 7.

4

9. The Scheduling Order provides that, on or before August 23, 2012, any party in interest may file their Pre-Auction Objections to the Sale Motion. The Pre-Auction Objections are those objections relating to:

(a) the scope of the obligations to be assumed by the assignee of the Servicing Agreements (including the proposed limitation of future performance described in the second bulleted paragraph on page 32 of the Sale Motion);

(b) the ability of the assignee to perform under the assumed Servicing Agreements; and

(c) the enforceability of any provisions that the Debtors believe are unenforceable against the Debtors or any prospective purchaser, including but not limited to those under Bankruptcy Code § 365(f)(1) or any other provisions of the Bankruptcy Code.

*See* ¶ 16 of the Scheduling Order.

10. The Pre-Auction Objections were singled out for early resolution – prior to the date set for the Auction (October 23, 2012) – because the resolution of these issues could affect the bidding at the Auction. Said another way, a determination of these issues in favor of the Master Servicer only after the Auction would mean that the time and effort devoted to the Auction may have been for naught, to the detriment of the estate and its creditors.

11. The Master Servicer is currently working with Nationstar and the Debtors in the hope that the Pre-Auction Objections can be resolved. However, mindful of the possibility that the Master Servicer might not be able to reach a satisfactory resolution of all of these issues with Nationstar, and further that Nationstar might not be the Purchaser and that a different Purchaser might not timely resolve all of the Pre-Auction Objections, the Master Servicer hereby asserts its Pre-Auction Objections as permitted by the Scheduling Order.

## II.  OBJECTIONS.

*2.01    The Sale Motion Seeks to Impermissibly Limit the Scope of Obligations to be Assumed and Assigned.*

**(a)    The Limitation of Future Performance.**

12.    The Master Servicer hereby incorporates by reference paragraphs 9 to 15 of the Trustees' Pre-Auction Objection.

**(b)    The List of Servicing Obligations.**

13.    The Master Servicer hereby incorporates by reference paragraphs 16 to 21 of the Trustees' Pre-Auction Objection.

14.    As explained in more detail in the Trustees' Pre-Auction Objection, the List of Servicing Obligations[10] is extraordinarily narrow and does not include many of the servicing tasks that Debtors are responsible for under the PSAs. In general, the PSAs provide that Debtors are responsible for *all* tasks relating to the administration of the RMBS Trusts' *mortgage loan assets* (billing, collecting, *foreclosing, maintaining and selling REO properties*), the *investment of mortgage loan cash flows* pending distribution to securities holders, and the compilation, computation and reporting of mortgage loan performance data.  As noted above, under many of the PSAs, Debtors, as servicer, have certain financial obligations or indemnification obligations to the Master Servicer or the trust formed in connection with the transaction[11] and if the Debtor defaults in its performance under the servicing agreement, it is the Master Servicer's obligation to pursue appropriate remedies against the Debtor to the extent provided in the transaction

---

[10]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Trustees' Pre-Auction Objection.

[11]    *See, e.g.*, PSA Exemplar 1, at §§ 3.27 ("Indemnification") and 4.03(c) ("Monitoring of Servicers").

documents.[12] Accordingly, the Master Servicer objects to the Sale Motion to the extent it seeks to rewrite and narrow Nationstar's, or any other Purchaser's, duties and obligations as the servicer under the PSAs after they have been assumed and assigned.

*2.02 The Trustees Must be Provided with Adequate Assurance of Future Performance under any Assumed Contract*

15. The Master Servicer hereby incorporates by reference paragraphs 22 to 24 of the Trustees' Pre-Auction Objection

16. Like the RMBS Trustees, the Master Servicer has significant ongoing rights and obligations (financial and otherwise) under the PSAs, and a thorough examination of the financial wherewithal and other qualifications and ability of the Purchaser to assume the Debtors' obligations is required to provide the Master Servicer with adequate assurance of future performance. Debtors have provided the Master Servicer with certain financial information about Nationstar, and the parties have discussed a meeting of business persons to get a better understanding of Nationstar's business operations. The Master Servicer is continuing to work with Nationstar and the Debtors to ensure that all necessary financial and other information is provided to the Master Servicer in order to determine Nationstar's ability to perform under the PSAs. The Master Servicer will continue to evaluate the information it receives in this process. However, the Master Servicer hereby objects to approval of the Sale Motion to the extent that the Master Servicer is not provided with adequate assurance of Nationstar's or any other Purchaser's ability to perform under the Assumed Contracts.

---

[12] *See, e.g.*, PSA Exemplar 1, at § 4.03 ("Monitoring of Servicers"); PSA Exemplar 2, at § 3.01 ("Master Servicing of the Mortgage Loans"); AAR Exemplar 2, at ¶ 4.

7

*2.03    The Assumed Contracts Cannot be Assigned Absent the Consent of Certain Parties*

17.     The Master Servicer hereby incorporates by reference paragraphs 25 to 26 of the Trustees' Pre-Auction Objection.

### III.    Conclusion.

18.     The Master Servicer hereby incorporates by reference paragraph 27 of the Trustees' Pre-Auction Objection.

WHEREFORE, for the reasons set forth herein, the Master Servicer respectfully requests that this Court grant the relief sought herein.

Dated: New York, New York
August 23, 2012

    Respectfully submitted,

    ALSTON & BIRD LLP

    /s/ Martin G. Bunin
    Martin G. Bunin
    John C. Weitnauer (*pro hac vice*)
    90 Park Avenue
    New York, NY 10016
    (212) 210-9400 (telephone)
    (212) 210-9444 (facsimile)
    marty.bunin@alston.com
    kit.weitnauer@alston.com

    *Attorneys for Wells Fargo Bank, N.A. as Master Servicer of Certain Mortgage Backed Securities Trusts*