Douglas C. Wigley (*pro hac vice*)
**DESSAULES LAW GROUP**
2700 North Central Avenue, Suite 1250
Phoenix, Arizona 85004
Tel. 602.274.5400
Fax 602.274.5401
dwigley@dessauleslaw.com

*Attorney for Creditor Gregory Balensiefer*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Residential Capital, LLC, *et al.*<br>Debtors. | Chapter 11<br>Case No.12-12020 (MG)<br>(Jointly Administered) |

## MOTION FOR CLARIFICATION REGARDING

## RELIEF FROM AUTOMATIC STAY

Gregory Balensiefer ("Balensiefer"), by and through undersigned counsel, hereby seeks clarification of the Court's Final Supplemental Order of July 13, 2012 (Docket Entry No. 774) (the "July 13 Order"), as it applies to an action currently pending in the Arizona Superior Court in and for Maricopa County: *Gregory Balensiefer vs. Homecomings Financial, LLC; GMAC Mortgage, LLC, f/k/a GMAC Mortgage Corporation; and Executive Trustee Services, LLC*, CV2011-00390 (the "Superior Court action").[1] The July 13 Order granted, *inter alia*, limited stay relief to permit foreclosure and eviction proceedings and defenses (including though prospectively brought as claims against the Debtors) thereto, but ordered that the automatic stay remain in full force and

---

[1] For purposes of this Motion, "Debtors" is used to refer collectively to those entities (or those entities' successors) that are specifically named as defendants in the Superior Court action, acknowledging that not all "Debtors" in this bankruptcy are involved.

effect with respect to other claims against Debtors. Although the Order appears to lift the stay as to Balensiefer's Superior Court claims for specific performance of a settlement agreement wherein Debtors agreed to a permanent loan modification (which is Balensiefer's defense to Debtors' noticed trustee's sale) and the related equitable relief, Balensiefer seeks clarification that he is not precluded from liquidating an ancillary award of attorneys' fees and costs in that action in the event that he prevails. Arizona law mandates that the judge order such an award pursuant to the terms of the contract Balensiefer is seeking to specifically enforce. Balensiefer acknowledges that the collection of any award of attorneys' fees and costs would be stayed and would only result in a liquidated claim to be made in the Bankruptcy proceedings. The following Memorandum of Law and all exhibits attached hereto support this Motion.

## MEMORANDUM OF LAW

### Introduction

The Superior Court action arises from Debtors' refusal to fulfill their obligations under a Settlement Agreement and Mutual Release dated January 22, 2010 (the "Settlement Agreement").[2]

In September 2008, Balensiefer and Debtors agreed on a permanent loan modification (the "Modification Agreement"). Between October 2008 and April 2009, Balensiefer made payments pursuant to the Modification Agreement. Debtors accepted the first six payments under the Modification Agreement, but then refused to accept Balensiefer's April 2009 payment and noticed a trustee's sale of the property that secures the modified loan. Balensiefer initiated litigation in the Arizona Superior Court in and for Maricopa County against Debtors to enjoin the trustee's sale and enforce the Modification Agreement (the "2009 Lawsuit").

---

[2] A copy of the Settlement Agreement is attached hereto as Exhibit A.

In January 2010, Balensiefer and Debtors and entered into the Settlement Agreement, wherein Debtors agreed, among other things, to (i) honor the terms of the Modification Agreement, (ii) correct Balensiefer's credit reporting, and (iii) record a Cancellation of Trustee's Sale. Debtors, however, failed to take any of these actions, and instead, ten months later, proposed a new and materially different modification agreement that improperly added more than $17,000.00 to the principal amount of the Note. Despite the fact that within the Settlement Agreement Debtors agreed to waive "all interest, fees, and penalties accruing on the Loan for reason of non-payment during the period of time from September 2008 to present," Debtors added what they believe to be past due interest to the principal balance. When Balensiefer refused to accept the changed terms, Debtors moved ahead with the trustee's sale that they had failed to cancel.[3] Debtors' actions constitute an unexcused breach of the Settlement Agreement.

On February 16, 2011, Balensiefer filed a second lawsuit against Debtors in the Maricopa County Superior Court (the "2011 Lawsuit"). In the 2011 Lawsuit, Balensiefer states claims for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Declaratory Judgment, and Preliminary and Permanent Injunctive Relief, and seeks relief in the form of specific performance of the Settlement Agreement, compensatory and consequential damages incurred in the breach of the Settlement Agreement, an injunction preventing Debtors from proceeding with the trustee's sale, and costs of suit and reasonable attorneys' fees. The Settlement Agreement specifically provides as follows with respect to an award of attorneys' fees.

> [I]n the event that litigation is instituted to enforce or interpret any provision of or right pursuant to this Agreement, the prevailing Party in that litigation shall be entitled to an award of all taxable and non-taxable costs, actual attorneys' fees, and other expenses (through trial and appeal) against the unsuccessful Party.

---

[3] Arizona allows for non-judicial foreclosure by private trustee sale.

On February 29, 2012, Balensiefer amended his complaint, but maintained the same causes of action and prayers for relief. On March 1, 2012, Balensiefer filed a motion for partial summary judgment in the 2011 Lawsuit. Debtors' response was due, but its filing of the Chapter 11 proceedings here stayed the 2011 Lawsuit, until this Court lifted the stay by its July 13 Order.

On July 20, 2012, shortly after receiving this Court's July 13 Order, Debtors filed an Amended Notice of Bankruptcy and Suggestion of Automatic Stay in the Superior Court (the "Amended Notice").[4] The Amended Notice stated that, "[t]o the extent that certain defenses, claims and counter-claims asserted by … Balensiefer do not constitute Permitted Claims, they remain subject to the automatic stay and the continued prosecution of these claims is prohibited." The Amended Notice gives the Superior Court no analysis or input as what claims are "Permitted" or not. After the Amended Notice was filed, the Superior Court affirmed its view that the automatic stay still applied by issuing a minute entry that stated "the Court will take no action on Plaintiff's Motion for Partial Summary Judgment until the parties notify the Court that the bankruptcy stay has been lifted." Balensiefer's repeated requests to Debtors' counsel in the 2011 Lawsuit to announce its position regarding the effect of the July 13 Order on the 2011 Lawsuit have gone unanswered. As such, Balensiefer seeks clarification from this Court.

It is Balensiefer's position that in addition to pursuing his claims for equitable relief, he may also liquidate an award of attorneys' fees and costs in the event that he prevails. Although the collection of such fees and costs would be subject to further order of the Bankruptcy Court, the stay should be lifted as to the determination and amount of any award of any attorneys' fees and costs because this monetary relief is simply incidental to the equitable relief sought and is mandatory under applicable Arizona law.

---

[4] Amended Notice of Bankruptcy and Suggestion of Automatic Stay, dated July 20, 2012, attached without exhibit hereto as Exhibit B.

Balensiefer now seeks clarification from this Court that he may continue prosecuting his Superior Court claims seeking equitable relief, as well as clarification that the attorneys' fees and costs related to those claims are not "monetary relief" within the purview of the July 13 Order.

## Argument

### I. BALENSIEFER IS PERMITTED TO PURSUE HIS STATE COURT CLAIMS FOR EQUITABLE RELIEF.

Pursuant to the terms of this Court's July 13 Order, Balensiefer should be permitted to continue prosecuting his Superior Court claims for specific performance and injunctive relief against the Debtors. The Order states:

> Except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or served by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or Non-Judicial State… where a final judgment … permitting the foreclosure or eviction has not been awarded…[5]

Balensiefer is an "Interested Party," whose claims are direct claims, relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor, and he is seeking to enjoin or preclude a foreclosure. In other words, Balensiefer's equitable claims are his defense to Debtor's attempts to foreclose on the property through a private trustee's sale. Thus, the stay appears to be lifted as to Balensiefer's claims seeking equitable relief to enjoin the Debtors from foreclosing on his home and requiring the Debtors to comply with the terms of the Settlement Agreement. Debtors' litigation counsel has indicated, however, that they may not agree with Balensiefer's interpretation of the Order. To eliminate any confusion surrounding these issues, Balensiefer seeks confirmation that the Order applies to his action in the event Debtors dispute its application.

---

[5] Final Supplemental Order, July 13, 2012.

## II.  THE COURT'S ORDER DOES NOT PRECLUDE AN AWARD OF BALENSIEFER'S ATTORNEYS' FEES AND COURT COSTS.

### A.  Attorneys' Fees Do Not Constitute Monetary Relief.

The Order provides that "the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims … for monetary relief of any kind and of any nature against the Debtors…" While claims seeking monetary damages are admittedly claims for monetary relief, a request for attorneys' fees and costs is not an independent cause of action and should not be considered "monetary relief" to the extent that the attorneys' fees and costs are incidental to the equitable relief.

Indeed, courts have routinely found that attorneys' fees are separate and distinct from "monetary relief," as they are simply ancillary to an underlying claim, whether that claim is itself one for monetary relief or non-monetary relief (such as declaratory or injunctive relief).[6] As such, Balensiefer's request for an award of attorneys' fees and costs, if he is successful on his primary claims, should be subject to the Order lifting the stay in this case for the same reasons that his claims for equitable and injunctive relief are subject to the Order lifting the stay.

### B.  An Attorneys' Fees Award is Mandatory in Balensiefer's Case Under the Terms of the Agreement at Issue.

The Superior Court action arises out of the January 2010 Settlement Agreement between Balensiefer and Debtors. That Agreement contains the following provision:

---

[6] *See, e.g.*, *Reynolds v. Alabama Dept. of Transp.*, CV-85-T-665-MHT, 2012 WL 1119559 (M.D. Ala. Mar. 8, 2012) ("Since non-monetary claims such as those for injunctive relief do not add value to a bankruptcy estate, they are not affected by the judicial estoppel doctrine and so… [a] claim for injunctive and declaratory relief, and [the accompanying] claim for attorneys' fees and costs [was] allowed to proceed."); *Crommie v. State of Cal.*, C 89-4433 BAC, 1993 WL 106472 (N.D. Cal. Apr. 5, 1993) (citing 29 U.S.C. § 626(b); 29 U.S.C. § 216(b)) ("*In addition to monetary relief*, plaintiffs who prevail on ADEA claims are entitled to *equitable relief, costs, and attorneys' fees*.") (emphasis added).

>  **Attorneys' Fees and Costs.** Each Party agrees to bear its own attorneys' fees, expenses, and costs incurred in connection with the negotiation and preparation of this Agreement. However, in the event that litigation is instituted to enforce or interpret any provision of or right pursuant to this Agreement, the prevailing Party in that litigation shall be entitled to an award of all taxable and non-taxable costs, actual attorneys' fees, and others [*sic*] expenses (through trial and appeal) against the unsuccessful Party.[7]

Under Arizona law, "[a] contractual provision for attorneys' fees will be enforced according to its terms . . . Unlike fees awarded under [Arizona's discretionary attorneys' fees statute], the court lacks discretion to refuse to award fees under the contractual provision."[8] Arizona courts have further held that: "Indeed it is well-settled in Arizona that '[c]ontracts for payment of attorneys' fees are enforced in accordance with the terms of the contract.'"[9] Arizona's fee statute specifically dictates that it "shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney fees."[10] Thus, should Balensiefer prevail on his equitable claims in the Superior Court action, an award of his fees and costs would be mandatory.

Again, Balensiefer acknowledges that whether and in what amount he could collect on a final judgment awarding him costs and fees would be subject to this Court's final determination. All that the Arizona court can do is determine the propriety and amount of an award of fees and costs to the successful party. But allowing the Superior Court in that case to do so would simply result in a liquidated claim to be presented to this Court rather than have the attorneys' fees severed from the claims from which they derive and decided by two separate courts.

---

[7] Exhibit A (Settlement Agreement, ¶ 12).

[8] *Chase Bank of Arizona v. Acosta*, 880 P.2d 1109, 1121 (Ariz. Ct. App. 1994) (citations omitted).

[9] *McDowell Mountain Ranch Community Ass'n, Inc. v. Simons*, 216 Ariz. 266, 165 P.3d 667 (2007).

[10] A.R.S. § 12-341.01(A), which also provides, *inter alia*, that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."

### C. Balensiefer Cannot Obtain Judgment on His Equitable Claims Until the Issue of Attorneys' Fees and Costs is Resolved.

With respect to cases pending in Arizona state courts, interpreting this Court's Order to prevent a prevailing party from seeking an attorneys' fees award would, in most instances, also prevent that party from obtaining a final judgment even on non-monetary claims. Under Rule 58(g), Arizona Rules of Civil Procedure, "a judgment shall not be entered until claims for attorneys' fees have been resolved and are addressed in the judgment." In other words, even if Balensiefer proceeds with his Superior Court action and wins on the merits of his claims for specific performance and injunctive relief, it is unlikely that he would be able to get an enforceable judgment against the Debtors absent a determination of his demand for attorneys' fees. This would unfairly deny him the stay relief the Order is intended to provide and leave him in exactly the same position as where he stands today, despite the fact that his primary claims are non-monetary. In essence, Balensiefer arguably would be placed in a permanent state of limbo, having technically prevailed on his claims yet unable to obtain a final judgment on his claims.

Furthermore, the Order states that "under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any *judgment or award related to any direct claim or counter-claim* for which the automatic stay has been lifted by the terms of this Order…" This language suggests that an award for attorneys' fees and costs related to a claim for equitable relief may be entered against the Debtors, as long as the Interested Party does not attempt to collect on that award during the pendency of the bankruptcy. This is precisely the relief that Balensiefer seeks.

Based on the foregoing, Balensiefer should not only be allowed to pursue his claims for specific performance and injunctive relief, but should also be allowed to seek an award of his attorneys' fees and costs in conjunction with those claims, which would be mandatory if he prevails. Because the Order prevents Balensiefer from collecting on

an award of attorneys' fees and costs while the bankruptcy is pending, such relief will not adversely affect the rights of the other creditors.

**Conclusion**

It is illogical to permit Balensiefer to pursue his non-monetary claims but prevent him from getting a judgment in his favor if he succeeds, or, alternatively, to deny him an award of attorneys' fees altogether because of the pending bankruptcy, even if he would ordinarily be entitled to such an award. Before continuing with his Superior Court action, Balensiefer requests this Court's clarification as to the application of the Order to the pending litigation. Specifically, Balensiefer requests that this Court clarify that the Superior Court has the authority to continue hearing Balensiefer's claims for equitable and injunctive relief and to liquidate an award of his attorneys' fees and costs pursuant to Arizona law in the event he prevails.

DATED this 23rd day of August, 2012.
Phoenix, Arizona

By: /s/ Douglas C. Wigley
Douglas C. Wigley (*pro hac vice*)
DESSAULES LAW GROUP
2700 North Central Avenue, Suite 1250
Phoenix, Arizona 85004
Tel. 602.274.5400
dwigley@dessauleslaw.com