# EXHIBIT A

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

1. **Recitals.**

   A. The Parties to this Agreement are as follows: Plaintiff Greg Balensiefer ("Balensiefer"); and Defendants Homecomings Financial, L.L.C. ("Homecomings") and GMAC Mortgage, L.L.C. (f/k/a GMAC Mortgage Corporation) ("GMAC Mortgage") (hereinafter Defendants shall be collectively referred to as "GMAC"). Use of the terms the "Party" or "Parties" shall be understood to refer to GMAC and Balensiefer unless otherwise expressly provided.

   B. Balensiefer has a loan secured by a note and deed of trust on certain real property located at 2808 W Rosewood Dr. Chandler, Arizona 85224 ("the Property") which is held by and being serviced by GMAC under Account No. 7440913960 ("Loan").

   C. The intent of this Settlement Agreement and Mutual Release (hereinafter "Agreement"), is to mutually, amicably and finally resolve, compromise, and settle all issues, disputes and claims concerning Greg Balensiefer's action seeking injunctive relief barring the foreclosure and sale of the Property by Homecomings Mortgage Electronic Registration Systems, Inc., Executive Trustee Services, LLC, and GMAC Mortgage, including all losses, damages, demands, and causes of action raised and/or that could have been raised, including any and all claims arising out of or relating to, the lawsuit styled as *Greg Balensiefer v. Homecomings Financial, LLC, et al.*, No. CV2009-091967 pending in the Superior Court of the State of Arizona in and for Maricopa County (the "Lawsuit").

2. **Consideration.** In consideration for this Agreement and the mutual promises and undertakings described herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in full settlement of all claims and damages alleged in the Lawsuit, including attorneys' fees and costs, the Parties hereby agree as follows:

A. **Loan Modification.** GMAC and Balensiefer agree to enter into a certain Loan Modification Agreement, originally dated October 2008 (the "Modification Agreement") each and every express term of which is incorporated herein by reference. A true and correct copy of the Modification Agreement is attached hereto as Exhibit "A." The Modification Agreement shall be updated and finalized within thirty (30) days from the date of this Agreement and payments Balensiefer under the Modification Agreement shall begin thereafter, but in no event shall payments be demanded or made prior to March, 2010.

B. **Correction of Credit Reporting.** GMAC agrees to contact all credit agencies to which GMAC previously reported the alleged defaults on the Loan to correct such credit reporting by GMAC with regard to Balensiefer and to further inform the same of the satisfaction of the alleged defaults from 2008 until present, and that is the subject of the Lawsuit.

C. **Cancellation of Trustee's Sale.** GMAC agrees to record, or cause to be recorded, a Cancellation of Trustee's Sale, cancelling the Notice of Trustee's Sale of the Property, recorded as document number 2009-0338837 with the County Recorder, Maricopa County, Arizona within thirty (30) days of the date of this Agreement.

D. **Wavier of Interest, Fees and Penalties.** GMAC shall waive all interest, fees, and penalties accruing on the Loan for reason of nonpayment during the period of time from September 2008 to present, or the time period of the dispute over the Loan and the Lawsuit.

E. **Balensiefer's Release of Claims and Covenant Not to Sue.** In consideration of the mutual promises and undertakings contained in this Agreement, (and except for any obligations created by this Agreement), Balensiefer does hereby unconditionally and irrevocably forever release, relieve and discharge GMAC, and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, owners, partners, joint venturers, principals, trustees,

2

creditors, attorneys, representatives, employees, managers, parents, subsidiaries, divisions, subdivisions, departments, affiliates, predecessors, successors, assigns and assignees, or any agent acting or purporting to act for them or on their behalf, from any and all claims, demands, costs, expenses, damages, actions, causes of action, liabilities and obligations, of whatever kind or nature, both at law or in equity, whether known or unknown, contingent or fixed, arising out of or in any way relating to, or which could have been raised in the Lawsuit as defined above in Paragraph 1.C. Balensiefer specifically covenants not to sue or take any action against GMAC and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, owners, partners, joint venturers, principals, trustees, creditors, attorneys, representatives, employees, managers, parents, subsidiaries, divisions, subdivisions, departments, affiliates, predecessors, successors, assigns and assignees, or any agent acting or purporting to act for them or on their behalf with respect to any claims that have been asserted or that could have been asserted in the Lawsuit or that may exist as of the date of this Agreement and that have been released by this Agreement.

E. **GMAC's Release of Claims and Covenant Not to Sue.** In consideration of the promises and undertakings contained in this Agreement, (and except for any obligations created by this Agreement), GMAC does hereby unconditionally and irrevocably forever release, relieve and discharge Balensiefer, and any of his heirs and assigns, from any and all claims, demands, costs, expenses, damages, actions, causes of action, liabilities and obligations, of whatever kind or nature, both at law or in equity, whether known or unknown, contingent or fixed, arising out of or in any way relating to, or which could have been raised in the Lawsuit as defined above in Paragraph 1.C. GMAC specifically covenants not to sue or take any action against Balensiefer, or any of his heirs and assigns, with respect to any claims that have been asserted or that could have been asserted in the Lawsuit or that may exist as of the date of this Agreement and that have been released by this Agreement.

1211956.1
1/22/10

3

F. **Dismissal of Lawsuit with Prejudice.** Balensiefer and GMAC covenant and hereby agree that no later than thirty (30) days after execution of this Agreement, GMAC shall, through counsel, circulate and execute a stipulation providing dismissal with prejudice of the Lawsuit with each party to bear his, her or its own attorneys' fees and costs ("Stipulation"), and that once approved by each Party, said Stipulation shall be filed as promptly as possible, but in no case more than fourteen (14) days after receiving approval of each of the Parties, with the State of Arizona Superior Court in and for the County of Maricopa.

G. **No Assignment of Released Claims.** Balensiefer and GMAC hereby each represent and warrant that it is the sole and lawful owner of all right, title, and interest in and to each of the claims released herein and has not heretofore assigned or transferred, or purported to assign or transfer, to any individual, entity or organization any of the claims released herein. Balensiefer and GMAC hereby agree to indemnify, defend, and hold harmless each other from and against any claim subsequently brought against the other that is specifically based upon or arising out of or in connection with any assignment or transfer, or purported assignment or transfer, of any of the claims released herein.

4.     **Confidentiality.** Balensiefer and GMAC hereby acknowledge and agree that the terms of this Agreement are confidential and have not and shall not be disclosed, discussed or revealed to any other persons, entities or organizations. Notwithstanding the foregoing, any of the Parties may reveal the terms of the Agreement to their lawyers, accountants or other professional advisors on condition that such person(s) agrees to be bound by this Confidentiality provision. Nothing in this Agreement shall be construed to prohibit any of the Parties from revealing this Agreement to law enforcement officials or other legal or judicial authority as may be required by law. If any of the Parties is asked

4

about the disposition of this lawsuit, that party may state only that the dispute was resolved and its terms are confidential and cannot be disclosed. The Parties agree to instruct counsel, personal tax advisors, and others to whom disclosure is allowed under the terms hereof, that this Agreement and its terms are strictly confidential and shall not be disclosed to any other individual, organization or entity. The Parties and any persons, organizations or entities identified by category above who are made aware of the terms of this Agreement are advised that if this Confidentiality provision is breached, the Parties retain the right to bring an action in law for any resulting damage alleged to have been caused by the breaching person, organization or entity irrespective of their participation or nonparticipation in the Lawsuit and/or in the execution of this Agreement.

5. **No Admission of Liability.** By entering into this Agreement, GMAC does not admit to any liability or wrongdoing whatsoever to Balensiefer or with respect to any claims asserted by Balensiefer, and GMAC expressly deny any and all such liability and wrongdoing. By settling this lawsuit Balensiefer does not concede that any claim asserted in the Lawsuit lacked merit. The Parties agree that this Agreement may be used as evidence in any action to enforce the terms of this Agreement.

6. **Severability, Jurisdiction and Governing Law.** If any of the provisions herein are determined to be invalid by a court, arbitrator, or government agency of competent and ultimate jurisdiction, the Parties agree that such determination shall not affect the enforceability of the other provisions herein and the remaining provisions of this Agreement nevertheless shall be construed, performed, and enforced as if the invalidated or unenforceable provision had not been included in the text of the Agreement. Arizona law shall govern the validity and interpretation of this Agreement without regard for Arizona's conflicts of law principles. The Parties stipulate that jurisdiction and venue shall lie exclusively in the State of Arizona Superior Court in and for the County of Maricopa for any action involving the validity, interpretation or

enforcement of this Agreement, or for any claim for breach of this Agreement, for damages, and for other relief sought under this Agreement.

8.  **Plain Meaning.** This Agreement shall be interpreted in accordance with the plain meaning of its terms and not for or against any of the Parties hereto. No inference shall be asserted or drawn by anyone based on the Party that may have drafted any language or part of this Agreement.

9.  **Scope of Agreement and Acknowledgment.** This Agreement constitutes the entire understanding of the Parties on the subjects covered and supersedes any and all prior oral or written agreements, representations, discussions or negotiations between the Parties with respect to the subject matter. Balensiefer understands and agrees that he: has carefully read and fully understands all the provisions of this Agreement and the Modification Agreement; knowingly and voluntarily agrees to all of the terms set forth in this Agreement and the Modification Agreement of his own free will and free from any duress or coercion; knowingly and voluntarily intends to be legally bound by the same; was advised and hereby is advised in writing to consider the terms of this Agreement and the Modification Agreement and that he can and may wish to consult with a licensed attorney of his choosing prior to executing the same.

10. **Warranty.** Each person signing below represents and warrants that he/she has the full power and authority to enter into this Agreement and, if executing this Agreement in a representative capacity, warrants that he/she has been duly authorized to do so by all appropriate actions.

11. **Good Faith Settlement.** This Agreement reflects a good faith resolution of all claims reached after arm's-length negotiations and without coercion and not in reliance upon any representation or promise not contained in this Agreement.

6

12. **Attorneys' Fees and Costs.** Each Party agrees to bear its own attorneys' fees, expenses, and costs incurred in connection with the negotiation and preparation of this Agreement. However, in the event that litigation is instituted to enforce or interpret any provision of or right pursuant to this Agreement, the prevailing Party in that litigation shall be entitled to an award of all taxable and non-taxable costs, actual attorneys' fees, and others expenses (through trial and appeal) against the unsuccessful Party.

13. **Counterpart Execution.** This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one agreement. Signature pages may be detached from the counterparts and attached to a single copy of this Agreement to physically form one legally effective document. Signatures submitted by facsimile or telecopy transmission shall be considered effective in all respects as original signatures and fully binding on the Parties.

14. **Successors and Assigns.** The provisions of this Agreement shall be binding upon and inure to the benefit of each of the Parties hereto, and to their respective successors in interest and assigns.

15. **Headings.** The headings of this Agreement are inserted solely for convenience of the Parties for reference and are not intended to govern, limit or define the meaning of any provision of this Agreement.

Dated: 1-22-2010

_____
Greg Balensiefer, a single man.
**PLAINTIFF**

Dated: Jan 22, 2010

_____
By  Kara Ricupero
**GMAC MORTGAGE, L.L.C., (F/K/A
GMAC MORTGAGE CORPORATION;
HOMECOMINGS FINANCIAL, L.L.C.**

1211956.1
1/22/10

7

# EXHIBIT "A"

Record & Return To:
Homecomings Financial, LLC
Attention: Loss Mitigation
3451 Hammond Avenue
Waterloo, IA 50702

―――――――――――――――――――――――――[Space Above This Line For Recorder's Use]――――――――――――――

# INTEREST ONLY ADJUSTABLE RATE LOAN MODIFICATION AGREEMENT

This Interest Only Adjustable Rate Loan Modification Agreement ("Agreement") made this 1st day of October, 2008, ("Effective Date") between Gregory W Balensiefer ("Borrower") and Homecomings Financial, LLC Lender\Servicer or Agent for Lender\Servicer ("Lender"), amends and supplements that certain promissory note ("Note") dated December 2, 2005, in the original principal amount of One Hundred Thirteen Thousand Dollars and No Cents ($113,000.00) executed by Borrower. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and recorded in the real property records of Maricopa County, AZ. Said Security Instrument covers the real and, if applicable, personal property described in such Security Instrument (the "Property") located at 2808 W Rosewood Dr, Chandler, AZ 85224 which real property is more particularly described as follows:

**(Legal Description – Attach as Exhibit if Recording Agreement)**

Borrower acknowledges that Lender is the Agent for, or the legal holder and the owner of the Note and Security Instrument and further acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be the Lender as defined in this Agreement.

Borrower has requested, and Lender/ has agreed to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and secured by the Security Instrument (the "Principal Balance") is One Hundred Thirteen Thousand One Hundred Eighty Four Dollars and Ninety Two Cents ($113,184.92). Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of the "Lender" the Principal Balance which consists of the amount(s) loaned to Borrower by "Lender" plus any accrued and unpaid amounts due under the Note or Security Instrument capitalized by Lender. Borrower also agrees to pay any unpaid interest and taxes, insurance premiums and other costs or expenses that Lender has paid to protect or enforce its interest in, or otherwise due under, the Note and the Security Instrument.

2. Interest will be charged on the new unpaid Principal Balance until the full amount of principal has been paid. Borrower will pay interest at a yearly rate of 6.1250% beginning on October 1, 2008. The interest rate Borrower will pay will change in accordance with this Agreement. The interest rate required by this Agreement is the rate Borrower will pay both before and after any default under the terms of the Note, as amended by this Agreement.

3. Borrower promises to make a payment every month. This monthly payment will consist of interest only payments of $577.71 starting on November 1, 2008 and ending on January 1, 2011 (the 'Interest Only Payment Period'). Thereafter Borrower will begin making payments consisting of principal and interest for the remaining term of the loan. The date of the borrower's first payment consisting of both principal and interest shall be February 1, 2011. Borrower will make these payments every month until all of the principal and interest and any other charges that Borrower may owe under this Agreement have been repaid. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If on January 1, 2036 ("Maturity Date"), Borrower still owes any amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, IA 50702 or at such other place as Lender may require.

4. The monthly payment may change based on changes in the unpaid principal of the loan and/or the interest rate Borrower must pay. Lender will determine the new interest rate and any change in the amount of the monthly payment in accordance with this Agreement. The interest rate Borrower will pay may change on October 1, 2013, and on that day every six months thereafter. Each date on which the interest rate could change is called a "Change Date".

5. Beginning with the next Change Date, any change in the borrower's interest rate, will be based on a change in an Index. The Index is the "Index" provided for in the Note. The most recent Index figure available as of the date provided for in the Note that is prior to the next Change Date is called the "Current Index." If the Index is no longer available, the Lender will choose a new Index, which is based upon comparable information, as provided for in the Note. Lender will give the Borrower notice of this choice.

6. Before each Change Date, Lender will calculate the new interest rate by adding Three And Twenty Five Thousandths percentage points (3.0250%) to the Current Index. Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated below, this rounded amount will be the new interest rate until the next Change Date. Lender will then determine, as applicable, (i) the amount of the monthly interest only payment based on the unpaid principal balance and the new interest rate, if still within the Interest Only Payment Period, or (ii) the amount of the monthly principal and interest payment that would be sufficient to repay the unpaid principal that Borrower is expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments, if after the Interest Only Payment Period. The result of this calculation will be the new amount of the monthly payment. Borrower will pay the amount of the new monthly payment beginning on the first monthly payment date after the Change Date until the amount of the monthly payment changes again. The monthly payments will be applied first to the payment of interest due and then to principal.

7. The interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1 %) from the rate of interest Borrower has been paying for the preceding six months. The interest rate will never be greater than 13.1250% or less than 6.1250%.

8. Before the effective date of any change, Lender will deliver or mail to Borrower notice of any changes in the interest rate and the amount of the monthly payment. The notice will include information required by law to be given to Borrower and also the title and telephone number of a person who will answer any questions Borrower may have. Unless applicable law requires a different method, any notice that must be given to Borrower under this Agreement will be given by delivering it or mailing it by first class mail to Borrower at the property address stated above or at a different address if Borrower gives Lender notice of Borrower's different address. Any notice that must be given to Lender under this Agreement will be given by mailing it first class mail to the Lender at the address stated in Paragraph 3 above or at a different address if Borrower is given notice of that different address.

9. If Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date on which the payment is due, Borrower will pay a late charge to Lender in an amount calculated in accordance with the Borrower's original Note, or as otherwise provided by law. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

10. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

11. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without "Lender's" prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by "Lender" if such exercise is prohibited by applicable law. If Lender exercises this option, "Lender" shall give Borrower notice of acceleration and \or any other notices that may be required by law. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, "Lender" may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

12. As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound

by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

13. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement. EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed/effective as of the day and year first above written.

_____        _____
Gregory W Balensiefer                   (Borrower)

                                 _____
                                        (Borrower)

Homecomings Financial, LLC

By: _____

Title: __Limited Signing Officer__

**BORROWER ACKNOWLEDGMENT**

State of Arizona
County of Maricopa

On this 14 day of October 2008 before me, the undersigned, a Notary Public in and for said county and state, personally appeared Gregory W Balensiefer personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

                                 _____
                                 Notary Public
V. HERRERA                       My Commission Expires: 01/15/2011
Notary Public - ARIZONA
MARICOPA COUNTY
My Commission Expires
...  ...5, 2011

**LENDER ACKNOWLEDGMENT**

State of IOWA
County of BLACKHAWK

On this ___ day of _____, 200__, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _____ of Homecomings Financial, LLC, said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

    Witness my hand and official seal.

                                                _____
                                                Notary Public
                                                My Commission Expires: _____

# EXHIBIT B

**RYLEY CARLOCK & APPLEWHITE**
One North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4417
Telephone: 602/258-7701
Telecopier: 602/257-9582

John C. Lemaster – 011588
jlemaster@rcalaw.com
Kara A. Ricupero – 020647
kricupero@rcalaw.com
Kevin R. Heaphy – 026266
kheaphy@rcalaw.com

Attorneys for Defendants

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| GREGORY BALENSIEFER,<br><br>Plaintiff,<br><br>v.<br><br>HOMECOMINGS FINANCIAL, LLC, an Iowa corporation; GMAC MORTGAGE, L.L.C., f/k/a GMAC MORTGAGE CORPORATION, a foreign corporation; EXECUTIVE TRUSTEE SERVICES, L.L.C., a California corporation; JOHN and JANE DOES I-X; ABC CORPORATIONS I-X; and BLACK and WHITE COMPANIES I-X,<br><br>Defendants. | Case No. CV2011-003908<br><br>**AMENDED NOTICE OF BANKRUPTCY AND SUGGESTION OF AUTOMATIC STAY**<br><br>(Assigned to the<br>Honorable Judge Dean M. Fink) |

Defendants and debtors, Homecomings Financial, LLC ("Homecomings"), GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation ("GMAC") and Executive Trustee Services, LLC ("ETS"), by and through their undersigned counsel, in accordance and consistent with section 362(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), respectfully submit this Amended Notice of Bankruptcy and Suggestion of

2346727.1
7/19/12

Automatic Stay, and state as follows:

1. On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), including Homecomings, GMAC, and ETS, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408 (the "Bankruptcy Court").

2. The Debtors' Chapter 11 cases are being jointly administered, indexed at case number 12-12020 (MG), and are captioned as follows:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | Chapter 11 |
|---|---|
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

3. As a result of the Bankruptcy Filing, on the Petition Date, the protections of the automatic stay codified in section 362(a) of the Bankruptcy Code arose with regard to the Debtors. Section 362(a), among other things, operates as an automatic stay of: (i) "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding" against the Chapter 11 Debtors (11 U.S.C. § 362(a)(1)); (ii) acts to "obtain possession of property" of the Debtors' Chapter 11 estates (11 U.S.C. § 362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtors arising prior to the Petition Date (11 U.S.C. § 362(a)(6)).

4. On July 13, 2012, the Bankruptcy Court entered a final supplemental order granting, among other things, the Debtors' motion for limited relief from the automatic stay to permit non-Debtor parties in foreclosure and eviction proceedings, borrower bankruptcy cases and title disputes to continue to assert and prosecute certain defenses, claims and counter-claims

(the "Final Supplemental Order"). Paragraphs 14, 15, 16 and 17 of the Final Supplemental Order identify the categories of defenses, claims and counter-claims for which the automatic stay has been modified (the "Permitted Claims"). A copy of the Final Supplemental Order is attached hereto as "**Exhibit A**."

5. To the extent that certain defenses, claims and counter-claims asserted by Plaintiff Gregory Balensiefer do not constitute Permitted Claims, they remain subject to the automatic stay and the continued prosecution of these claims is prohibited.

6. Pursuant to paragraph 23 of the Final Supplemental Order, any dispute regarding the extent, application and/or effect of the automatic stay under the Final Supplemental Order, must be heard and determined in the United States Bankruptcy Court for the Southern District of New York, jointly administered under Case No. 12-12020, in accordance with the Case Management Order entered in the Debtors' case [Docket No. 141] and such other and further orders as may be entered by the United States Bankruptcy Court for the Southern District of New York.[1]

RESPECTFULLY SUBMITTED this 20th day of July, 2012.

RYLEY CARLOCK & APPLEWHITE

By /s/ Kara A. Ricupero
John C. Lemaster
Kara A. Ricupero
Kevin R. Heaphy
One North Central Avenue, Suite 1200
Phoenix, Arizona  85004-4417
Attorneys for Defendants

---

[1] A copy of the Case Management Order may be obtained at no charge at http:/www.kccllc.net/rescap.

1  ORIGINAL of the foregoing e-filed this 20th day of July, 2012, with Clerk of the Court.

2

3  COPY of the foregoing emailed and mailed this 20<sup>h</sup> day of July, 2012, to:

4  Jonathon A. Dessaules
5  Rachel Maron
   Dessaules Law Group
6  2700 N. Central Ave. Suite 1250
   Phoenix, Arizona 85004

7

8  By  /s/Kim Kotzbach

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28