MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Todd M. Goren

*Counsel for the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
|  | ) |  |
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
---------------------------------------------------------------------

**NOTICE OF DEBTORS' MOTION FOR THE ENTRY OF AN ORDER**
**EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A**
**CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

**PLEASE TAKE NOTICE** that on August 23, 2012, the Debtors and Debtors in

possession in the above-captioned cases (collectively, the "Debtors") filed the attached Debtors'

Motion for Entry of an Order Extending Their Exclusive Periods to File a Chapter 11 Plan and

Solicit Acceptances Thereof (the "Motion") with the United States Bankruptcy Court for the

Southern District of New York (the "Bankruptcy Court").  A hearing to consider the Motion is

scheduled for **September 11, 2012 at 10:00 a.m. (prevailing Eastern Time)** before the

Honorable Martin Glenn, United States Bankruptcy Judge, in Courtroom 501 at the Bankruptcy

Court, One Bowling Green, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE** that any objection to the Motion must be

in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules

for the Southern District of New York, and the Notice, Case Management, and Administrative

Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by

registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to

be received no later than **September 4, 2012 at 4:00 p.m. (prevailing Eastern Time)**, upon (a)

counsel for the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York,

NY 10104 (Attn: Gary S. Lee, Lorenzo Marinuzzi and Todd Goren); (b) the Office of the United

States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York,

NY 10004 (Attn: Tracy Hope Davis, Linda A. Riffkin and Brian S. Masumoto); (c) the Office of

the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW,

Washington, DC 20530-0001 (Attn: US Attorney General, Eric H. Holder, Jr.); (d)  Office of the

New York State Attorney General, The Capitol, Albany, NY 12224-0341 (Attn: Nancy Lord,

Esq. and Enid N. Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New

York, One St. Andrews Plaza, New York, NY 10007 (Attn: Joseph N. Cordaro, Esq.); (f) counsel

for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attn:

Richard M. Cieri); (g) counsel to Barclays Bank PLC, as administrative agent for the DIP lenders,

Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036

(Attn: Ken Ziman and Jonathan H. Hofer); (h) counsel for the committee of unsecured creditors,

Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036

(Attn: Kenneth Eckstein and Douglas Mannal); (i) counsel for Nationstar Mortgage LLC, Sidley

Austin LLP, One South Dearborn, Chicago, Illinois 60603 (Attn: Jessica C.K. Boelter);

(j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by overnight mail,

to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016); and (k) Securities

and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite 400,

new York, NY 10281-1022 (Attn: George S. Canellos, Regional Director).

       **PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not

timely filed and served, the Bankruptcy Court may enter an order granting the relief requested in

the Motion without further notice or opportunity to be heard afforded to any party.

Dated:  August 23, 2012
       New York, New York

      /s/ Gary S. Lee
      Gary S. Lee
      Lorenzo Marinuzzi
      Todd M. Goren
      MORRISON & FOERSTER LLP
      1290 Avenue of the Americas
      New York, New York 10104
      Telephone: (212) 468-8000
      Facsimile: (212) 468-7900

      *Counsel for the Debtors and*
      *Debtors in Possession*

**Hearing Date:  September 11, 2012 at 10:00 a.m. (ET)**
**Objection Deadline:  September 4, 2012 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Todd M. Goren

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| --------------------------------------------------------------- ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| --------------------------------------------------------------- ) | | |

**DEBTORS' MOTION FOR THE ENTRY OF AN ORDER**
**EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A**
**CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

# **TABLE OF CONTENTS**

**Page (s)**

PRELIMINARY STATEMENT ............................................................................... 1

JURISDICTION ................................................................................................. 4

BACKGROUND ................................................................................................ 4

RELIEF REQUESTED......................................................................................... 6

BASIS FOR THE RELIEF ................................................................................... 6

    A.    The Requested Extension of the Exclusive Periods is Justified by the Size
and Complexity of the Debtors' Chapter 11 Cases................................................ 9

    B.    The Circumstances of These Chapter 11 Cases Necessitate an Extension of
the Exclusive Period ........................................................................................ 10

    C.    The Debtors' Have Made Good Faith Progress Toward Reorganization
and in Negotiations With Creditors ................................................................... 11

    D.    The Debtors Have Been Paying Their Bills as They Come Due ......................... 12

    E.    The Debtors are not Seeking an Extension of the Exclusive Periods to
Pressure  Creditors ........................................................................................... 12

    F.    An Unresolved Contingency Exists That Justifies an Extension of the
Exclusive Period .............................................................................................. 12

    G.    Terminating Exclusivity Would Adversely Affect Administration of these
Chapter 11 Cases............................................................................................. 13

CONCLUSION.................................................................................................. 14

NOTICE........................................................................................................... 14

NO PRIOR REQUEST ...................................................................................... 14

-i-

# TABLE OF AUTHORITIES

**Page(s)**

CASES

In re Adelphia Commc'ns. Corp.,
  352 B.R. 578 (Bankr. S.D.N.Y. 2006) ...................................................................7,8

In re Ames Dep't Stores Inc.,
  1991 WL 259036 (S.D.N.Y. Nov. 25, 1991) ..............................................................7

In re Amko Plastics, Inc.,
  197 B.R. 74 (Bankr. S.D. Ohio 1996) ......................................................................11

In re Borders Grp., Inc.,
  460 B. R. 818 (Bankr. S.D.N.Y. 2011) ........................................................7, 8, 9, 13

In re Express One Int'l,
  194 B.R. 98 (Bankr. E.D. Tex. 1996) .........................................................................8

In re Interco, Inc.,
  137 B.R. 999 (Bankr. E.D. Mo. 1992) ........................................................................8

In re Lionel L.L.C.,
  2007 WL 2261539 (Bankr. S.D.N.Y. 2007) ..............................................................8

In re McLean Indus.,
  87 B.R. 830 (Bankr. S.D.N.Y. 1987) .....................................................................9,12

In re Residential Capital, LLC,
  No. 12-12020 (MG), 2012 WL 2328223 (Bankr. S.D.N.Y. June 20, 2012) ...........11

In re United Press Int'l, Inc.,
  60 B.R. 265 (Bankr. D.C. 1986) ..............................................................................13

STATUTES

11 U.S.C. § 1121(d)(1) ...............................................................................................7

11 U.S.C. § 1121(d)(2) ...............................................................................................7

OTHER AUTHORITIES

H.R. Rep. No. 95-595 (1978), reprinted in 1978 U.S.C.C.A.N. 5963 ......................7

H.R. Rep. No. 95-595 (1978), reprinted in 1978 U.S.C.C.A.N. 5787 ......................9

ny-1054288

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively,

the "<u>Debtors</u>")[1], hereby move (the "<u>Motion</u>") for the entry of an order (i) extending the exclusive

period during which only the Debtors may file a Chapter 11 plan by nine months, and (ii)

extending the period during which the Debtors have the exclusive right to solicit acceptances

thereof by 60 days following the expiration of such period.  In support of this Motion, the

Debtors respectfully state as follows:

## **PRELIMINARY STATEMENT**

1.     On May 14, 2012, the Debtors commenced these unprecedented Chapter 11 cases.

The administration of these cases has not been a simple task, yet the Debtors have achieved

many of their goals set at the onset of these cases.  The majority of the Debtors' time and

resources have been devoted to completing the transition to operating under Chapter 11 and

maximizing the value of their assets in order to consummate sales of a substantial portion of

those assets that is expected to yield approximately $4 billion, and all while being inundated

with contested matters, as well as hundreds of requests for information regarding the impact of

these Chapter 11 cases.

2.     The sheer magnitude of matters have required and continue to require

considerable and continuing efforts on the part of the Debtors and their professionals to address

the many complex issues and problems that are presented by these cases.  Nonetheless, since the

filing of these Chapter 11 cases, the Debtors have achieved remarkable progress.  As one of the

largest mortgage companies in the United States, the Debtors' main lines of business include

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on <u>Exhibit 1</u>
to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11
Petitions and First Day Motions (the "<u>Whitlinger Affidavit</u>") [Docket No. 6].

mortgage loan servicing and mortgage loan origination.  Despite the filing of these Chapter 11

cases, the Debtors have continued to successfully run their businesses, even in the face of the

additional challenges brought on by a bankruptcy.  Additionally, at the onset of these cases, the

Debtors set out to remain a leader in mortgage loan modifications, an industry standard

implemented following the dramatic collapse of the housing market in 2008.  These lofty goals

– of remaining an industry leader in all aspects of the business – have been met by the Debtors

with success.

3.      Also noteworthy is the Debtors' having remained in compliance with certain

prepetition settlements that were the result of investigations carried out by certain governmental

agencies.[2]  The Debtors' have continued to satisfy all of their requirements under the

Government Settlements.  The Debtors' ability to comply with the various obligations under the

Government Settlements is key to the sale of their assets.

4.      Much of the aforementioned progress has been driven by the goal of

consummating a sale of the Debtors' assets.  When the Debtors' embarked on these Chapter 11

cases, Nationstar Mortgage LLC ("Nationstar") was the pre-negotiated stalking horse bidder for

the sale of the Debtors' mortgage loan origination and servicing businesses (the "Platform

Sale"), and Ally Financial Inc. ("AFI") was the proposed stalking horse bidder for the sale of

the Debtors' "legacy" portfolio consisting mainly of mortgage loans and other residual financial

---

[2] On April 13, 2011, as a result of an examination by the Federal Reserve, the FDIC, Residential Capital, LLC
("ResCap") and GMAC Mortgage ("GMAC") and certain non-debtor affiliates entered into a consent order (the
"Consent Order").  The Consent Order requires ResCap and GMAC to make improvements to various aspects of
their residential mortgage loan servicing business and to undertake a risk assessment of their mortgage servicing
operations.  On February 9, 2012, AFI, ResCap and certain other Debtors, along with the four largest servicers of
mortgage loans in the United States, reached an agreement in principle with the federal government, forty nine State
Attorneys General, and forty eight state banking departments that resolved most potential claims of the government
parties arising out of origination and servicing matters and foreclosure matters (the "DOJ/AG Settlement").  On
February 9, 2012, AFI and ResCap agreed with the Federal Reserve Board on a civil money penalty related to the
same activities that were the subject of the DOJ/AG Settlement (the "Civil Penalty," collectively with the Consent
Order and DOJ/AG Settlement, the "Government Settlements").

assets (the "Legacy Sale," together with the Platform Sale, the "Asset Sales"). Following intense

negotiations, Berkshire Hathaway Inc. replaced AFI as the stalking horse bidder for the Legacy

Sale and Nationstar raised its bid for the Platform sale, increasing the collective purchase price

by $175 million.  Another mark of the tremendous progress of these cases.

5.      Moreover, the Debtors have worked diligently and in good faith with institutional

investors negotiating a settlement of an allowed claim of up to $8.7 billion against certain

Debtors, to be offered and allocated amongst certain securitization trusts in accordance with two

settlement agreements.[3]  Likewise, the consensual scheduling order negotiated with the

investors and trustees (the "RMBS Investors") relating to the settlement and Asset Sales was the

result of intense negotiations between the parties and should clear the way for a largely

consensual sale hearing with such parties.

6.      The Debtors also filed these cases with support for a pre-arranged plan that

incorporates a settlement with AFI (the "AFI Settlement").  The Debtors continue to believe that

such a plan is in the best interest of the Debtors' estates.  Since the appointment of Arthur J.

Gonzalez as examiner (the "Examiner") in these cases, the Debtors have endeavored to

cooperate with the Examiner in all aspects of his investigation.  The Debtors' anticipate that

such cooperation will result in a fair and efficient investigation.  The Examiner is reviewing a

number of significant transactions with AFI and the AFI Settlement, incorporated in the

proposed plan, which will likely impact negotiations between and among the stakeholders in

these cases.  Because the Court has made it clear that the Debtors will not be permitted to solicit

votes on any plan until the investigation is complete, the Debtors are requesting a nine month

extension of their exclusive period to file a Chapter 11 plan and solicit acceptances of such plan,

---

[3] On August 15, 2012, the Debtors file the *Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [Docket No. 1176].

without prejudice to seek further extensions thereof.  Given the substantial progress the Debtors

have made in the early stages of these cases and the impact of the Examiner's investigation on

the Debtors' ability to prosecute a plan, the proposed extension is reasonable.

7.    There is still much work to be done to file and seek confirmation of a Chapter 11

plan.  The Debtors anticipate that such time will be well spent working cooperatively with their

key parties in interest in working towards a consensual Chapter 11 plan.

## JURISDICTION

8.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

9.    On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary

petition with the Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are

managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy

Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.

10.    On May 16, 2012, the United States Trustee for the Southern District of New

York (the "U.S. Trustee") appointed a nine-member official committee of unsecured creditors

(the "Creditors' Committee").

11.    On June 20, 2012, the Court directed that an examiner be appointed [Docket No.

454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the Examiner [Docket No.

674].

4

12.    On July 27, 2012, the Court entered an Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner [Docket No. 925] (the "Examiner Investigation Order"), including the issuance of a report (the "Examiner's Report").

13.    On the Petition Date, the Debtors filed the Sale Motion[4], and on June 28, 2012, the Court entered an order approving the sale and bid procedures for the sale of the Debtors' assets [Docket No. 62].

14.    The Debtors are a leading residential real estate finance company indirectly owned by AFI, which is not a Debtor.  The Debtors' primary and most valuable business operations consist of servicing mortgage loans for investors, including loans originated by the Debtors, the Debtors' non-debtor affiliate, Ally Bank, and other third parties.  As of March 31, 2012, the Debtors were the fifth largest servicer of residential mortgage loans in the United States, servicing over 2.4 million domestic mortgage loans with an aggregate unpaid principal balance of approximately $374.2 billion.  In addition, prior to the Petition Date, the Debtors and their non-debtor affiliates, including Ally Bank, were collectively the tenth largest originator of residential mortgage loans in the United States, producing approximately $56.3 billion and $8.6 billion in loan origination volume during the year ended December 31, 2011 and the three months ended March 31, 2012, respectively.   A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit.

---

[4] *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m), 365 and 1123 and Fed R. Bank. P. 2002, 6004, 6006 and 9014 for Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Hearing and Sale Deadline; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief and (B)(I)  Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "Sale Motion") [Docket No. 61].

## RELIEF REQUESTED

15.     The Debtors hereby move the Court, pursuant to section 1121(d) of the

Bankruptcy Code, for an order: (a) extending the period of during which the Debtors have the

exclusive right to file a Chapter 11 plan (the "Exclusive Plan Period") by nine months and (b)

extending the period during which the Debtors have the exclusive right to solicit acceptances

thereof (the "Solicitation Period" and together with the Exclusive Plan Period, the "Exclusive

Periods") approximately 60 days after the expiration of the Exclusive Plan Period, as extended.

16.     Prior to the Petition Date, the Debtors obtained support from AFI, holders of

Residential Capital, LLC's ("ResCap") junior secured notes (the "JSBs") and the RMBS

Investors for a restructuring plan premised upon the Asset Sales and the AFI Settlement.

17.     Over the course of these Chapter 11 cases, the Debtors have worked diligently

with parties in interest to create a Chapter 11 plan that maximizes value for stakeholders.

18.     However, as discussed in more detail below, because the outcome of the

Examiner's investigation is a predicate to any Chapter 11 plan, additional time is needed to

complete a Chapter 11 plan.  Currently, the Exclusive Plan Period expires on September 11,

2012, and the Exclusive Solicitation Period expires on November 10, 2012.  The Debtors submit

that an extension of the Exclusive Periods as requested herein is necessary and appropriate to

finalize and seek confirmation of a Chapter 11 plan after the Examiner's investigation is

complete.

## BASIS FOR THE RELIEF

19.     Sections 1121(b) and (c) of the Bankruptcy Code provide, respectively, that a

debtor has the exclusive right to propose a Chapter 11 plan for the first 120 days of a Chapter 11

case and the exclusive right to solicit votes for its plan for an additional 60 days.

20.    Section 1121(d) of the Bankruptcy Code provides that the Court may, "for cause," extend these periods: "[o]n request of a party in interest…and after notice and a hearing, the Court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."  11 U.S.C. § 1121(d)(1).  However, the 120-day period "may not be extended beyond a date that is 18 months after the [petition] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [petition] date."  11 U.S.C. § 1121(d)(2).

21.    A decision to extend exclusivity for "cause" is a fact specific inquiry and the Court has broad discretion in doing so.  In re Borders Grp., Inc., 460 B. R. 818, 821-22 (Bankr. S.D.N.Y. 2011) (in granting an 120 day extension, this Court noted that "The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity")[5]; In re Adelphia Commc'ns. Corp., 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006).  Although the Bankruptcy Code does not define "cause," legislative history indicates that "cause" is intended to be a flexible standard that balances the competing interest of a debtor and its creditors.  See H.R. Rep. No. 95-595 at 231, 232 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191.  This flexibility is intended to give a debtor an adequate opportunity to stabilize its business operations at the outset of the case and to then negotiate a plan with its creditors.  See In re Ames Dep't Stores Inc., 1991 WL 259036 at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors.")[6].

22.    Furthermore, a number of courts, including this Court, have identified factors to consider when determining whether "cause" exists to increase a debtor's exclusivity period. The factors considered include:

---

[5] This Court further extended the Borders' exclusive period to file a Chapter 11 plan by an additional 90 days.

[6] A copy of this decision is attached hereto as Exhibit 3.

7

(a) the size and complexity of the case;

(b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

(c) the existence of good faith progress toward reorganization;

(d) the fact that the debtor is paying its bills as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress in negotiations with creditors;

(g) the amount of time which has elapsed in the case;

(h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(i) whether an unresolved contingency exists.

In re Borders Grp., Inc., 460 B.R. at 822 (citing In re Adelphia Commc'ns Corp., 352 B.R. at 587); In re Lionel L.L.C., 2007 WL 2261539 at *6 (Bankr. S.D.N.Y. 2007).[7]

23.    Not all of these factors are relevant in every case, and a finding that any one of these factors exists may justify extending a debtor's exclusive periods.  See In re Express One Int'l, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (relying on four factors in determining that cause existed to extend exclusive periods); In re Interco, Inc., 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (the existence of four factors supported allowing the debtors to retain exclusivity). As expanded below, the facts and circumstances of these Chapter 11 cases satisfy the foregoing factors and demonstrate that sufficient cause exists to grant the Debtors' requested extensions of the Exclusive Periods.

---

[7] A copy of this decision is attached hereto as Exhibit 3.

### A. The Requested Extension of the Exclusive Periods is Justified by the Size and Complexity of the Debtors' Chapter 11 Cases

24.     The size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive period to file a plan.  "[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need extra time in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595, at 231, 232, 406 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362.

25.     These Chapter 11 cases, which involve 51 Debtors that constitute a large and extremely complex organization, are unquestionably amongst the largest and most complex cases ever filed and thus easily satisfy this factor, which alone justifies an extension of the Exclusive Periods.  As noted above, the Debtors and their non-debtor affiliates operate the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.  The Debtors' schedules list over $14 billion in assets and over $20 billion in liabilities.  The Debtors were parties to numerous complex commercial relationships and anticipate that thousands of claims will be filed in these cases.[8]

26.     A review of the docket reveals the substantial and significant activity by the Debtors.  To date, over 1,100 docket entries have been recorded.  Numerous complex motions have been heard by this Court.  See In re Borders Grp., Inc., 460 B.R. at 823 (citing In re McLean Indus., 87 B.R. 830, 831 (Bankr. S.D.N.Y. 1987) in considering they number of docket entries as a reflection of the size and complexity of the bankruptcy case).  Additionally, this Court should consider certain of the various pleadings filed by the Debtors, including the approval of (i) the continuation of the Debtors' servicing businesses, (ii) a shared services

---

[8]  On August 6, 2012, the Debtors filed the *Debtors' Application for Order Establishing Deadline for filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*  requesting that the Court set November 9, 2012 as the bar date in these Chapter 11 cases [Docket No. 1014].

agreement with AFI, (iii) debtor in possession financing and cash collateral, (iv) employee

incentive and retention plans, (v) the retention of numerous professionals.  Moreover, the

Debtors have been inundated with motions for relief from the automatic stay, often by *pro se*

movants.   Collectively, these pleadings illustrate the complex nature of these Chapter 11 cases.

27.    As described above, these are extremely large and complex cases.  This

complexity alone supports the requested extension of the Exclusive Periods.  The large scale and

sophisticated nature of the Debtors' cases by themselves pose a number of issues that make the

filing of a Chapter 11 plan, by September 11, 2012, impracticable.

**B.  The Circumstances of These Chapter 11 Cases Necessitate an Extension of the Exclusive Period**

28.    The next factor - the necessity of sufficient time to permit the Debtors to negotiate

a plan of reorganization and prepare adequate information - also favors the Debtors' retention of

exclusivity.

29.    Specifically, the Examiner's preliminary statement, approved by Examiner

Investigation Order, anticipates that the Examiner's Report will take 6 months to prepare.  See

Examiner Investigation Order, Ex. A ¶ 11.  The Debtors and their advisors will need sufficient

time to review the Examiner's Report and incorporate such findings into any proposed Chapter

11 plan.

30.    Moreover the Court has advised that the Debtors will not be permitted to solicit

votes in support of a Chapter 11 plan until after the Examiner has completed his investigation.

In the opinion appointing the Examiner, dated June 20, 2012, the Court stated as follows:

> Because the Debtors hope to exit these cases quickly, with third-party non-debtor releases in favor of Ally and others, it is important that the investigation be conducted expeditiously.  Until an independent evaluation has been completed of any potential claims that would be released under a proposed plan, the Court will be unable to conclude whether the Debtors will be permitted to solicit votes in support of such a plan.

ny-1054288

In re Residential Capital, LLC, 12-12020 (MG), 2012 WL 2328223, at *7 (Bankr. S.D.N.Y. June 20, 2012).

31.    An extension of the Exclusive Periods is justified by the Court's recognition that the Debtors cannot solicit votes on a plan prior to the completion of the Examiner's investigation.

### C. The Debtors' Have Made Good Faith Progress Toward Reorganization and in Negotiations With Creditors

32.    In considering an extension of a debtor's exclusive periods, courts often assess a debtor's progress towards rehabilitation and development of a consensual plan. See, e.g. In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).  The Debtors have made good faith progress during the course of these Chapter 11 cases thus far, warranting an extension of the Exclusive Periods.  Prior to the Petition Date, the Debtors obtained support for a restructuring plan from AFI, the JSBs, and the RMBS Investors.  Since that time, the Debtors have worked diligently in crafting the proposed form of Chapter 11 plan, a copy of which is attached hereto as Exhibit 1.  In addition, the Debtors have successfully negotiated the RMBS Trust Settlement, which is an integral component of the Debtors' efforts to restructure.  The Debtors have continued to work diligently and in good faith with many relevant constituencies, including the Creditors' Committee and the Examiner.

33.    Although the plan will need to be reconciled with the Examiner's findings and although further negotiation with each of the Debtors' key creditor constituencies including the Creditors' Committee is necessary, the existence of this pre-arranged plan supported by certain key creditor constituencies is indicative of the Debtors' good faith progress.  The Debtors recognize that there is still much work to be done, but hope to use the extended period to find a path forward that will allow the plan to proceed on a largely consensual basis.

**D.  <u>The Debtors Have Been Paying Their Bills as They Come Due</u>**

34.    The next factor – the debtor's payment of bills as they become due – is also satisfied here.  The Debtors intend to continue to satisfy their postpetition obligations as they become due and believe that their existing financing facilities provide them with sufficient liquidity to continue to do so.

**E.  <u>The Debtors are not Seeking an Extension of the Exclusive Periods to Pressure Creditors</u>**

35.    The Debtors further submit that the extension of the Exclusive Periods requested herein will not harm the Debtors' creditors or other parties in interest and will be used for a proper purpose – to work toward a consensual plan with the support of various parties in interest.  The Debtors have maintained consistent and regular communications with their key constituencies during the course of these Chapter 11 cases.  The Debtors submit that neither their creditors not any other party in interest would be harmed by the requested extension of the Exclusive Periods.

**F.  <u>An Unresolved Contingency Exists That Justifies an Extension of the Exclusive Period</u>**

36.    Courts have also relied on the need to resolve an important contingency as a justification for extending a debtor's exclusivity period.  <u>See</u> <u>McLean Indus.</u>, 87 B.R. at 834.  As noted above, the Court has already indicated that the Examiner's investigation is such a contingency.  The Examiner's investigation and issuance of the Examiner's Report is expected to take 6 months.  Without knowing the results of the Examiner's Report and the report's effect on the Debtors' proposed plan, the plan cannot be completed and the solicitation of votes cannot occur.

12

### G. Terminating Exclusivity Would Adversely Affect Administration of these Chapter 11 Cases

37.    As noted by this Court in In re Borders Grp., Inc., Courts may also consider practical factors in determining that "cause" exists to extend the Exclusive Periods.  See In re Borders Group, Inc., 460 B.R. at 827-28 (noting that it was important for the Court to consider practical factors in refusing to terminate exclusivity).  Refusing to grant this Motion and extend the Exclusive Periods at this stage would adversely affect the Debtors' administration of these Chapter 11 cases.

38.    Terminating exclusivity at this time could result in various parties in interest proposing competing plans.  Allowing this to occur would be detrimental to the current successful path these Chapter 11 cases are headed on.  This was one of the reasons this Court refused to terminate the Debtors' exclusivity in In re Borders Grp., Inc., quoting the following from In re United Press Int'l, Inc., 60 B.R. 265 (Bankr. D. C. 1986):

> "'Opening the floodgates' to allow each and every one of the [debtor's creditors] to file a plan, no matter how poorly conceived or supported would not serve 'to secure the expeditious and economical administration of' this case nor 'to carry out the provisions of' the Bankruptcy Code."

In re Borders Grp., Inc., 460 B.R. at 828.

39.    Denying the Motion, which would result in a termination of exclusivity would be destabilizing and foster a chaotic environment in these complex Chapter 11 cases during the time the Debtors are focused on further negotiating a consensual Chapter 11 plan with their key parties in interest. As this Court is aware there have been more than a few frivolous pleadings filed in these cases, including no fewer than two motions to dismiss these cases while neither was supported by any law or facts warranting such relief, the filings still required attention of the Debtors and this Court.  Given this history, terminating exclusivity in these cases would undoubtedly be detrimental to all of the progress that has already been accomplished to date.

13

## CONCLUSION

40.     The Debtors' prospects of successfully achieving their goal of confirming a

Chapter 11 plan with significant creditor support will be enhanced if the Debtors are allowed to

continue working with key parties in interest toward such a plan.  Denial of this Motion would

jeopardize the significant progress made to date in these Chapter 11 cases.

41.     For the reasons set forth above, the Debtors respectfully submit that ample cause

exists under the Bankruptcy Code and the applicable case law for the requested extensions of

the Exclusive Periods.

42.     The Debtors reserve the right to request further extensions of the Exclusive

Periods pursuant to section 1121(d) of the Bankruptcy Code.

## NOTICE

43.     The Debtors have provided notice of this Motion in accordance with the Case

Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## NO PRIOR REQUEST

44.     No prior request for the relief sought in this Motion has been made to this or any

other court.

14

ny-1054288

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form attached hereto as <u>Exhibit 2</u>, granting the relief requested herein and

granting such other relief as is just and proper.

| | |
|---|---|
| New York, New York<br>Dated: August 23, 2012 | /s/ Gary S. Lee<br>Gary S. Lee<br>Lorenzo Marinuzzi<br>Todd M. Goren<br>MORRISON & FOERSTER LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>Telephone: (212) 468-80000<br>Facsimile: (212) 468-7900<br><br>*Counsel to the Debtors*<br>*and Debtors in Possession* |