## <u>EXHIBIT 1</u>

**Draft Plan of Reorganization**

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12010 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ----------------------------------------------------------------------- | ) | |

---

**JOINT CHAPTER 11 PLAN OF RESIDENTIAL CAPITAL, LLC, <u>et al.</u>**

---

Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi
Todd M. Goren
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900

- and -

Alexandra Steinberg Barrage
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW, Suite 6000
Washington, DC 20006-1888
Telephone:    (202) 887-1500
Facsimile:    (202) 887-0763

*Counsel for Debtors and Debtors-in-Possession*

Dated: August 23, 2012
        New York, New York

THIS PLAN IS BEING SUBMITTED FOR APPROVAL BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE, 11 U.S.C. § 1125.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED A DISCLOSURE STATEMENT.

TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF CONSTRUCTION, COMPUTATION OF TIME, AND GOVERNING LAW ................................................................................................... 1

A.    Defined Terms ................................................................................................ 1

B.    Rules of Construction...................................................................................... 14

C.    Computation of Time ...................................................................................... 15

D.    Governing Law ............................................................................................... 15

ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL CLAIMS, DIP CLAIMS, PRIORITY TAX CLAIMS, U.S. TRUSTEE FEES, JSN INDENTURE TRUSTEE FEES AND INFORMAL JSN GROUP FEES ................................................................... 15

A.    Administrative Expense Claims ...................................................................... 15

B.    Professional Claims......................................................................................... 16

    1.    Final Fee Applications ........................................................................ 16

    2.    Professional Fee Escrow Account ...................................................... 16

    3.    Professional Fee Reserve Amount ...................................................... 16

    4.    Post-Effective Date Fees and Expenses .............................................. 17

C.    Barclays DIP Facility Claims ......................................................................... 17

D.    Ally DIP Facility Claims ................................................................................ 17

E.    Priority Tax Claims.......................................................................................... 17

F.    U.S. Trustee Fees............................................................................................. 17

G.    JSN Indenture Trustee Fees and Informal JSN Group Fees ........................... 18

ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND EQUITY INTERESTS ................................................................................................... 18

A.    Summary of Classification of Claims and Equity Interests............................ 18

    1.    ResCap Debtors ................................................................................... 19

    2.    GMACM Debtors ................................................................................ 19

    3.    RFC Debtors ........................................................................................ 20

B.    Treatment of Claims and Equity Interests ...................................................... 21

    1.    Claims Against and Equity Interests in the ResCap Debtors .............. 21

    2.    Claims Against and Equity Interests in the GMACM Debtors............ 23

    3.    Claims Against and Equity Interests in the RFC Debtors................... 27

C.    Subordinated Claims ....................................................................................... 30

D.    Elimination of Vacant Classes ....................................................................... 30

ARTICLE IV. IMPLEMENTATION OF THE PLAN ................................................................ 30

A.    Sources of Consideration for Plan Distributions ........................................... 30

B.    Sales of Assets ................................................................................................ 31

C.    The Liquidating Trust and the Plan Oversight Committee ............................. 31

D.    Cancellation of Securities, Indentures, and Other Documents Evidencing Claims and Equity Interests ........................................................................... 31

E.     Corporate Action ................................................................................ 32

F.     Effectuating Documents; Further Transactions ................................... 32

G.     Exemption from Certain Taxes and Fees .......................................... 32

H.     Preservation of Causes of Action ...................................................... 33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 34

A.     Assumption and Rejection of Executory Contracts and Unexpired Leases ................................... 34

B.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ................................... 34

C.     Claims Based on Rejection of Executory Contracts and Unexpired Leases ................................... 35

D.     Nonoccurrence of Effective Date ...................................................... 35

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ........................................................... 35

A.     Record Date for Distributions ............................................................ 35

B.     Timing and Calculation of Amounts to be Distributed ..................... 36

      1.     Distributions on Account of Claims Allowed as of the Effective Date ......................... 36

      2.     Distributions on Account of Claims Allowed After the Effective Date....................... 36

C.     Disbursing Agent ............................................................................... 36

      1.     Generally ................................................................................. 36

      2.     Rights and Powers of the Disbursing Agent ........................... 36

      3.     Expenses Incurred On or After the Effective Date ................. 37

D.     Delivery of Distributions and Undeliverable or Unclaimed Distributions .................................. 37

      1.     Delivery of Distributions ......................................................... 37

      2.     Distributions to Holders of Disputed Claims .......................... 37

      3.     Surrender of Existing Publicly Traded Securities .................... 37

      4.     Minimum Distributions; Foreign Exchange Rate; and Other Distribution Limitations ................................... 38

      5.     Undeliverable Distributions and Unclaimed Property ............ 38

E.     Compliance with Tax Requirements ................................................... 39

F.     Allocations ......................................................................................... 40

G.     Setoffs and Recoupment .................................................................... 40

H.     Claims Paid or Payable by Third Parties ........................................... 40

      1.     Claims Paid by Third Parties ................................................... 40

      2.     Claims Payable by Third Parties.............................................. 40

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ........................... 41

A.     Resolution of Disputed Claims .......................................................... 41

      1.     Allowance of Claims ............................................................... 41

      2.     Prosecution of Objections to Claims....................................... 41

      3.     Claims Estimation ................................................................... 41

      4.     Expungement or Adjustment of Claims Without Objection ............................ 41

ii

|   |   | 5. | Deadline to File Claims Objections | 42 |
|   | B. | | Disallowance of Claims | 42 |
|   | C. | | Amendments to Claims | 42 |
| ARTICLE VIII. THE LIQUIDATING TRUST; THE LIQUIDATING TRUSTEE | | | | 42 |
|   | A. | | Generally | 42 |
|   | B. | | Purpose of the Liquidating Trust | 43 |
|   | C. | | Transfer of Assets to the Liquidating Trust | 43 |
|   | D. | | Funding Expenses of the Liquidating Trust | 44 |
|   | E. | | Termination of the Liquidating Trust and the Liquidating Trustee | 44 |
|   | F. | | Exculpation; Indemnification; Insurance | 45 |
| ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS | | | | 45 |
|   | A. | | Compromise and Settlement of Claims, Equity Interests, and Controversies | 45 |
|   |   | 1. | Generally | 45 |
|   |   | 2. | The Ally Settlement | 45 |
|   | B. | | Release of Liens | 46 |
|   | C. | | Releases by the Debtors | 46 |
|   | D. | | Releases by Holders of Claims and Equity Interests | 47 |
|   | E. | | Releases by Settling Parties | 48 |
|   | F. | | Exculpation | 49 |
|   | G. | | Injunction | 49 |
| ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN | | | | 51 |
|   | A. | | Conditions Precedent to the Effective Date | 51 |
|   | B. | | Waiver of Conditions | 52 |
|   | C. | | Effect of Nonoccurrence of Conditions | 52 |
| ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN | | | | 53 |
|   | A. | | Modification and Amendments | 53 |
|   | B. | | Effect of Confirmation on Modifications | 53 |
|   | C. | | Revocation or Withdrawal of the Plan | 53 |
| ARTICLE XII. RETENTION OF JURISDICTION | | | | 53 |
| ARTICLE XIII. MISCELLANEOUS PROVISIONS | | | | 55 |
|   | A. | | Immediate Binding Effect | 55 |
|   | B. | | Additional Documents | 55 |
|   | C. | | Payment of Statutory Fees | 55 |
|   | D. | | Dissolution of Committee | 56 |
|   | E. | | Reservation of Rights | 56 |
|   | F. | | Successors and Assigns | 56 |

G.      Service of Documents ........................................................................................................ 56

H.      Further Assurances............................................................................................................. 58

I.       Term of Injunctions or Stays............................................................................................. 58

J.       Entire Agreement ............................................................................................................... 58

K.      Exhibits and Related Documents ...................................................................................... 58

L.      Severability of Plan Provisions ........................................................................................ 58

M.      Closing of Chapter 11 Case............................................................................................... 59

N.      Waiver or Estoppel Conflicts ............................................................................................ 59

O.      Conflicts.............................................................................................................................. 59

ny-1023124 v10

## INTRODUCTION

ResCap and the other Debtors in the Chapter 11 Cases jointly propose this Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding claims against and interests in each Debtor pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Equity Interests set forth in ARTICLE III will be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate the substantive consolidation of any of the Debtors.

## ARTICLE I.

## DEFINED TERMS, RULES OF CONSTRUCTION, COMPUTATION OF TIME, AND GOVERNING LAW

### A.    Defined Terms

1.    "Accrued Professional Compensation" means, at any date, all of a Professional's accrued and unpaid fees (including success fees) and reimbursable expenses for services rendered in the Chapter 11 Cases through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses. No amount of a Professional's fees and expenses denied under a Final Order is Accrued Professional Compensation.

2.    "Administrative Expense Claim" means any Claim for costs and expenses of administration under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date until and including the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

3.    "Administrative Expense Claim Bar Date" means the deadline for filing requests for payment of Administrative Expense Claims, which shall be sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, except with respect to Professional Claims, which shall be subject to the provisions of ARTICLE II.

4.    "Affiliate" means an "affiliate" as such term is defined in section 101(2) of the Bankruptcy Code.

5.    "AFI" means Ally Financial Inc.

6.    "AFI LOC" means that certain Amended and Restated Loan Agreement, dated as of December 30, 2009 (as amended, supplemented or otherwise modified), by and among AFI as lender and agent, RFC and GMACM as borrowers, and ResCap and certain other affiliates of the borrowers as guarantors.

7.      "<u>AFI LOC Claim</u>" means any Claim arising under, derived from, or based upon the AFI LOC.

8.      "<u>AFI Revolver</u>" means that certain Amended and Restated Credit Agreement, dated as of December 30, 2009 (as amended, supplemented or otherwise modified), by and among AFI as initial lender and agent, Wells Fargo, N.A. as first priority collateral agent, RFC and GMACM as borrowers, and ResCap and certain other affiliates of the borrowers as guarantors.

9.      "<u>AFI Revolver Claim</u>" means any Claim arising under, derived from, or based upon the AFI Revolver.

10.      "<u>Allowed</u>" means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent nor unliquidated, and for which no Proof of Claim has been timely filed, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Expense Claim, as applicable, Filed by the applicable Bar Date, and as to which the Debtors or other parties in interest have not Filed an objection to the allowance thereof by the Claims Objection Deadline, or (b) a Claim that is Allowed under the Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court.

11.      "<u>Ally</u>" means, collectively, AFI and its direct and indirect subsidiaries, excluding the Debtors and their direct and indirect subsidiaries.

12.      "<u>Ally DIP Facility Claim</u>" means any Claim arising under, derived from, or based upon the Ally DIP Financing Facility.

13.      "<u>Ally DIP Financing Facility</u>" means the debtor-in-possession financing facility provided to the Debtors by Ally under (a) that certain Debtor-in-Possession Financing Amendment, dated as of May 25, 2012 (as amended, supplemented or otherwise modified) and (b) the June 25, 2012 *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties*.

14.      "<u>Ally Plan Support Agreement</u>" means the Settlement and Plan Sponsor Agreement, by and between Ally and the Debtors, dated May 14, 2012, as may be amended, modified, or supplemented from time to time.

15.      "<u>Ally Settlement</u>" means the settlement between Ally and the Debtors set forth in the Ally Plan Support Agreement, pursuant to which Ally is the sponsor of the Plan.  For the avoidance of doubt, Ally is not a proponent of the Plan.

16.      "<u>Ally Settlement Released Parties</u>" means Ally, and each of Ally's and the Debtors' respective successors and assigns, members, partners, non-Debtor affiliates, and Representatives, each in its capacity as such.

17.      "<u>Asset Sales</u>" means, collectively, the HFS Sale and the Platform Sale.

2

18.    "Assumption Schedule" means the schedule in the Plan Supplement setting forth certain executory contracts and unexpired leases for assumption under section 365 of the Bankruptcy Code in accordance with ARTICLE V.

19.    "Avoidance Actions" means any and all avoidance, recovery, subordination, or other actions or remedies that may be brought on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553.

20.    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

21.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, or any other court having jurisdiction over the Chapter 11 Cases.

22.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court.

23.    "Bar Date" means, collectively, the Administrative Expense Claim Bar Date, the Rejection Damages Claim Bar Date, and any deadline by which a Proof of Claim must be filed under the Bar Date Order, as applicable.

24.    "Bar Date Order" means the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, entered by the Bankruptcy Court on [____], 2012 [Docket No. __], as amended, supplemented, or modified.

25.    "Barclays DIP Facility Claims" means any Claim arising under, derived from, or based upon the Barclays DIP Financing Facility.

26.    "Barclays DIP Financing Facility" means that certain Debtor-in-Possession Credit Agreement, dated on or around May 16, 2012, by and between the Debtors and Barclays Bank PLC.

27.    "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

28.    "Cash" means legal tender of the United States of America or the equivalent thereof.

29.    "Cause of Action" means any and all Claims, actions, causes of action, choses in action, rights, demands, liabilities, encumbrances, suits, lawsuits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off or recoupment, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct, indirect, derivative or otherwise, choate or inchoate,

3

asserted or unasserted, existing or hereafter arising, held in a personal or representative capacity, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases through the Effective Date.

30.  "Chapter 11 Cases" means the chapter 11 cases commenced by the Debtors, which are jointly administered, styled *In re Residential Capital, LLC, et al.*, Case No. 12-12020 (KG), and currently pending before the Bankruptcy Court, or any of such cases as applicable.

31.  "Claim" means a "claim" as such term is defined in section 101(5) of the Bankruptcy Code.

32.  "Claims Objection Deadline" means (a) with respect to Filed Proofs of Claim, one hundred eighty (180) days after the Effective Date or such other date as established by the Bar Date Order, or (b) such later date as may be fixed by order of the Bankruptcy Court.

33.  "Claims Register" means the official register of Claims in these Chapter 11 Cases maintained by Kurtzman Carson Consultants LLC, in its capacity as the Debtors' notice and claims agent.

34.  "Class" means a category of holders of Claims or Equity Interests under section 1122(a) of the Bankruptcy Code.

35.  "Committee" means the statutory committee of unsecured creditors in the Chapter 11 Cases.

36.  "Confirmation" means the entry on the docket of the Chapter 11 Cases of the Confirmation Order.

37.  "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

38.  "Confirmation Hearing" means the hearing before the Bankruptcy Court under section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as the same may be continued from time to time.

39.  "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan, as amended, supplemented, or modified, under, among others, section 1129 of the Bankruptcy Code.

40.  "Consent Obligations" means the various obligations under and in connection with the Order of Assessment, the Consent Order, and the DOJ/AG Settlement.

41.  "Consent Order" means the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMACM, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation.

4

42.    "<u>Consenting Claimants</u>" means the investor parties to the RMBS Plan Support Agreements so long as the RMBS Plan Support Agreements are in effect and have not been terminated before the Effective Date.

43.    "<u>Consenting Holders</u>" means the holders of Junior Secured Note Claims that are party to the Junior Secured Notes Plan Support Agreement so long as the Junior Secured Notes Plan Support Agreement is in effect and has not been terminated before the Effective Date.

44.    "<u>Consummation</u>" means the occurrence of the Effective Date.

45.    "<u>Creditor</u>" means a "creditor" as defined in section 101(10) of the Bankruptcy Code.

46.    "<u>Cure Claim</u>" means a Claim based upon a monetary default, if any, by a Debtor under an executory contract or unexpired lease as of the time such contract or lease is assumed by such Debtor under sections 365 or 1123 of the Bankruptcy Code.

47.    "<u>Debtor Released Parties</u>" means each of the following in its capacity as such: (a) the Ally Settlement Released Parties; (b)  if applicable, the Consenting Holders; (c) if applicable, the Consenting Claimants, Settling Trusts, and the Trustees for the Settling Trusts; (d) the Committee and each of its members; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity's successors and assigns, members, affiliates, subsidiaries, and Representatives.

48.    "<u>Debtors</u>" means ditech, LLC; DOA Holding Properties, LLC; DOA Properties IX (Lots-Other), LLC; EPRE LLC; Equity Investment I, LLC; ETS of Virginia, Inc.; ETS of Washington, Inc.; Executive Trustee Services, LLC; GMAC-RFC Holding Company, LLC; GMAC Model Home Finance I, LLC; GMAC Mortgage USA Corporation; GMACM; GMAC Residential Holding Company, LLC; GMACRH Settlement Services, LLC; GMACM Borrower LLC; GMACM REO LLC; GMACR Mortgage Products, LLC; HFN REO SUB II, LLC; Home Connects Lending Services, LLC; Homecomings Financial Real Estate Holdings, LLC; Homecomings Financial, LLC; Ladue Associates, Inc.; Passive Asset Transactions, LLC; PATI A, LLC; PATI B, LLC; PATI Real Estate Holdings, LLC; RAHI A, LLC; RAHI B, LLC; RAHI Real Estate Holdings, LLC; RCSFJV2004, LLC; Residential Accredit Loans, Inc.; Residential Asset Mortgage Products, Inc.; Residential Asset Securities Corporation; ResCap; Residential Consumer Services of Alabama, LLC; Residential Consumer Services of Ohio, LLC; Residential Consumer Services of Texas, LLC; Residential Consumer Services, LLC; RFC; Residential Funding Mortgage Exchange, LLC; Residential Funding Mortgage Securities I, Inc.; Residential Funding Mortgage Securities II, Inc.;  Residential Funding Real Estate Holdings, LLC; Residential Mortgage Real Estate Holdings, LLC; RFC – GSAP Servicer Advance, LLC; RFC Asset Holdings II, LLC; RFC Asset Management, LLC; RFC Borrower LLC; RFC Construction Funding, LLC; RFC REO LLC; RFC SFJV-2002, LLC.

49.    "<u>Deficiency Claim</u>" means any Claim of the Junior Secured Noteholders under the Junior Secured Notes to the extent such Claims are not Secured Claims.

50.    "<u>DIP Claims</u>" means the Ally DIP Facility Claims and the Barclays DIP Facility Claims.

51.    "<u>Disbursing Agent</u>" means the Entity or Entities chosen by the Debtors to make or facilitate distributions pursuant to the Plan.

52.    "<u>Disclosure Statement</u>" means the Disclosure Statement for Joint Chapter 11 Plan of Residential Capital, LLC, *et al.*, as amended, supplemented, or modified in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

53.    "<u>Disputed Claim</u>" means any Claim that is not Allowed.

54.    "<u>Distribution Date</u>" means, except as otherwise set forth herein, the date or dates occurring on, and/or as soon as reasonably practicable after, the Effective Date, in the Liquidating Trustee's sole discretion, upon which the Disbursing Agent will make distributions to holders of Allowed Claims entitled to receive distributions under the Plan; <u>provided</u>, that the first Distribution Date will occur on or before ten days after the Effective Date.

55.    "<u>Distribution Record Date</u>" means the Confirmation Date, which is the date for determining which holders of Allowed Claims, excluding Allowed Junior Secured Notes Claims and Allowed Senior Unsecured Notes Claims, are entitled to receive distributions under the Plan.

56.    "<u>DOJ/AG Settlement</u>" means the Consent Judgment entered by the District Court for the District of Columbia, dated February 9, 2012.

57.    "<u>Effective Date</u>" means the first Business Day after the Confirmation Date on which no stay of the Confirmation Order is in effect and all of the conditions precedent to the Effective Date specified in ARTICLE X.A have been satisfied or waived pursuant to ARTICLE X.B.

58.    "<u>Entity</u>" means an "entity" as such term is defined in section 101(15) of the Bankruptcy Code.

59.    "<u>Equity Interest</u>" means any "equity security", as defined in section 101(16) of the Bankruptcy Code, of a Debtor existing immediately prior to the Effective Date.

60.    "<u>Estate</u>" means, for each Debtor, the bankruptcy estate of the Debtor created under section 541 of the Bankruptcy Code.

61.    "<u>Exculpated Party</u>" means each of the following in its capacity as such: (a) the Debtors; (b) the Ally Settlement Released Parties; (c) if applicable, the Consenting Holders; (d) if applicable, the Consenting Claimants, Settling Trusts, and the Trustees for the Settling Trusts; (e) the Committee and the members thereof; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entity's successors and assigns, members, affiliates, subsidiaries, officers, directors, partners, principals, employees, and Representatives.

62.    "<u>Fannie Mae</u>" means the Federal National Mortgage Association.

63.    "<u>File</u>" or "<u>Filed</u>" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or, in the case of a Proof of Claim, with the Debtors' notice and claims agent.

64.    "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court, or any other court of competent jurisdiction, which has not been modified, amended, reversed, vacated, or stayed, is in full force and effect, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; <u>provided</u>, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order, shall not cause an order not to be a Final Order.

65.    "<u>FNMA EAF Claim</u>" means any Secured Claim of Fannie Mae arising under the FNMA EAF Facility.

66.    "<u>FNMA EAF Facility</u>" means that certain Term Sheet dated August 10, 2010, as amended and restated as of January 18, 2011, and as further amended on July 29, 2011.

67.    "<u>General Unsecured Claim</u>" means any Claim against a Debtor that is not a/an: (a) Administrative Expense Claim; (b) Priority Tax Claim; (c) Other Priority Claim; (d) Secured Lender Claim; (e) Junior Secured Notes Claim; (f) Other Secured Claim; (g) Senior Unsecured Notes Claim; (h) Deficiency Claim; (i) Rep and Warranty Contract Claim; (j) Intercompany Claim; (k) Section 510(b) Claim; or (l) Professional Claim.

68.    "<u>GMACM</u>" means GMAC Mortgage, LLC.

69.    "<u>GMACM Debtors</u>" means each of the Debtor subsidiaries of GMACM Holding.

70.    "<u>GMACM Holding</u>" means GMAC Residential Holding Company, LLC.

71.    "<u>GMACM Unsecured Claims Distribution Property</u>" means, for each GMACM Debtor, the property of such GMACM Debtor that is remaining and available for distribution under the Plan after distributions have been made under the Plan to each holder of an Allowed Administrative Expense Claim, Priority Tax Claim, Other Priority Tax Claim, Secured Lender Claim, Junior Secured Notes Claim, and Other Secured Claim against such GMACM Debtor other than any Deficiency Claims related thereto.

72.    "<u>Governmental Unit</u>" means "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

73.    "<u>HFS Asset Purchase Agreement</u>" means that certain asset purchase agreement by and between Berkshire Hathaway Inc. and certain of the Debtors, dated June 28, 2012, or such other asset purchase agreement by and between the Debtors and the applicable Purchaser.

7

74.    "HFS Sale" means the asset sale consummated in accordance with the terms and conditions of the HFS Asset Purchase Agreement.

75.    "Impaired" means, with respect to any Class, a Class that is impaired as set forth in section 1124 of the Bankruptcy Code.

76.    "Indenture Trustees" means the Junior Secured Notes Indenture Trustee and the Senior Unsecured Notes Indenture Trustee.

77.    "Indentures" means the Junior Secured Notes Indenture and the Senior Unsecured Notes Indenture.

78.    "Informal JSN Group" means, if applicable, certain of the Consenting Holders holding at least 50% in face amount of all outstanding Junior Secured Notes that are referred to in the Junior Secured Noteholders Plan Support Agreement as the "Ad Hoc Group."

79.    "Informal JSN Group Fees" means the reasonable and documented fees and expenses, including professional fees and expenses, of the Informal JSN Group incurred after the Petition Date.

80.    "Intercompany Claim" means any Claim of a Debtor against another Debtor.  For the avoidance of doubt, Intercompany Claims do not include any Claim that Ally may assert against a Debtor.

81.    "Interim Compensation Order" means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, entered by the Bankruptcy Court on July 17, 2012 [Docket No.797], as amended, supplemented, or modified.

82.    "Joint Collateral" means certain of the Debtors' assets that secure the AFI Revolver Claims and the Junior Secured Notes Claims, as described in the Amended and Restated First Priority Pledge and Security Agreement and the Amended and Restated Third Priority Pledge and Security Agreement and Irrevocable Proxy.

83.    "JSN Indenture Trustee Fees" means the reasonable and documented fees and expenses, including professional fees and expenses, of the Junior Secured Notes Indenture Trustee incurred pursuant to the Junior Secured Notes Indenture after the Petition Date in connection with carrying out its duties as provided for under the Junior Secured Notes Indenture, service on the Committee, and making distributions under the Plan.

84.    "Junior Secured Noteholders" means the holders of Junior Secured Notes.

85.    "Junior Secured Notes" means the 9.625% junior secured notes due 2015 issued by ResCap pursuant to the Junior Secured Notes Indenture.

86.    "Junior Secured Notes Claim" means any Claim arising from or relating to the Junior Secured Notes, excluding the JSN Indenture Trustee Fees, which shall be paid pursuant to ARTICLE II.G.

87.     "<u>Junior Secured Notes Indenture</u>" means that certain Indenture, dated as of June 6, 2008, among ResCap, as issuer, GMAC Holding, GMAC-RFC Holding Company, LLC, GMACM, RFC, and Homecoming Financial, LLC as guarantors, and the Junior Secured Notes Indenture Trustee.

88.     "<u>Junior Secured Notes Indenture Trustee</u>" means U.S. Bank National Association, as indenture trustee or successor indenture trustee under the Junior Secured Notes Indenture, together with its respective successors and assigns in such capacity.

89.     "<u>Junior Secured Notes Plan Support Agreement</u>" means the agreement to support the Plan, by and among the Debtors, Ally, and certain holders of the Junior Secured Notes, dated May 13, 2012.

90.     "<u>Lien</u>" means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

91.     "<u>Liquidating Trust</u>" means that certain trust to be created on the Effective Date in accordance with the provisions of ARTICLE VIII and the Liquidating Trust Agreement for the benefit of certain holders of Allowed Claims.

92.     "<u>Liquidating Trust Agreement</u>" means that certain trust agreement that, among other things: (a) establishes and governs the Liquidating Trust; (b) describes the powers, duties and responsibilities of the Liquidating Trustee and the liquidation and distribution of proceeds of the Liquidating Trust Assets; and (c) describes the powers, duties, and responsibilities of the Plan Oversight Committee, a copy of which shall be filed with the Plan Supplement.

93.     "<u>Liquidating Trust Assets</u>" means all property held from time to time by the Liquidating Trust, including the Remaining Assets.

94.     "<u>Liquidating Trust Budget</u>" means the budget detailing expenses for liquidating and distributing the Liquidating Trust Assets and administering the Liquidating Trust projected to be paid by the Liquidating Trust, in form and substance satisfactory to the Plan Oversight Committee.

95.     "<u>Liquidating Trustee</u>" means Tammy Hamzehpour and her designees, who, subject to the supervision of the Plan Oversight Committee, shall be responsible for implementing the applicable provisions of the Plan and administering the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

96.     "<u>MSR Facility</u>" means that certain $158 million revolving financing facility provided to the Debtors by the MSR Lender pursuant to the Amended and Restated Loan and Security Agreement, dated as of June 30, 2010.

97.     "<u>MSR Lender</u>" means Citibank, N.A.

98.     "<u>MSR Lender Claim</u>" means any Claim arising under, derived from, or based upon the MSR Facility.

9

99.    "Order of Assessment" means the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012.

100.    "Other Priority Claim" means any Claim other than an Administrative Expense Claim or Priority Tax Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

101.    "Other Secured Claim" means any Secured Claim other than a DIP Claim, a Secured Lender Claim or a Junior Secured Notes Claim.

102.    "Person" means a "person" as such term is defined in section 101(41) of the Bankruptcy Code.

103.    "Petition Date" means May 14, 2012.

104.    "Petition Date Collateral" means each of the items of collateral identified on Schedule 1 to the Junior Notes Plan Support Agreement and any proceeds of such collateral.

105.    "Plan" means this Joint Chapter 11 Plan of Residential Capital, LLC, *et al.*, including all exhibits hereto and the Plan Supplement, each of which is incorporated herein by reference, as may be amended, modified, or supplemented from time to time.

106.    "Plan Oversight Committee" means a three-member committee to be established on the Effective Date and initially comprised of an individual selected by each of:  (a) the Debtors; (b) the Committee; and (c) if applicable, the Informal JSN Group, which members shall be further described in the Plan Supplement.

107.    "Plan Supplement" means, with respect to the Plan, all exhibits, appendices, Plan supplement documents and related documents to be filed by the Debtors no later than ten (10) days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, except as otherwise provided under the Plan, on notice to parties in interest, and any additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

108.    "Plan Support Agreements" means, collectively, the Junior Secured Notes Plan Support Agreement, the RMBS Plan Support Agreements, and the Ally Plan Support Agreement.

109.    "Platform Asset Purchase Agreement" means that certain asset purchase agreement, by and between Nationstar Mortgage LLC and the Debtors, dated June 28, 2012, or such other asset purchase agreement by and between the Debtors and the applicable Purchaser.

110.    "Platform Sale" means the asset sale consummated in accordance with the terms and conditions of the Platform Asset Purchase Agreement.

111.    "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

112.    "Pro Rata" means: (a) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class; (b) for purposes of distributions under the Plan to holders of Allowed Claims in Classes R-4 (solely with respect to Deficiency Claims), R-5, R-6, and R-7, if applicable, the proportion that an Allowed Claim against a ResCap Debtor bears to the aggregate amount of Allowed Claims in such Classes against such ResCap Debtor; (c) for purposes of distributions under the Plan to holders of Allowed Claims in Classes GS-7 (solely with respect to Deficiency Claims), GS-8, GS-9, and GS-10, if applicable, the proportion that an Allowed Claim against a GMACM Debtor bears to the aggregate amount of Allowed Claims in such Classes against such GMACM Debtor; and (d) for purposes of distributions under the Plan to holders of Allowed Claims in Classes RS-5 (solely with respect to Deficiency Claims), RS-6, RS-7, and RS-8, if applicable, the proportion that an Allowed Claim against an RFC Debtor bears to the aggregate amount of Allowed Claims in such Classes against such RFC Debtor.

113.    "Professional" means any Person or Entity:  (a) employed in the Chapter 11 Cases under a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code and compensated for services rendered prior to or on the Effective Date under sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) for which the Bankruptcy Court has Allowed compensation and reimbursement under section 503(b)(4) of the Bankruptcy Code.

114.    "Professional Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred from and after the Petition Date through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

115.    "Professional Fee Escrow Account" means an interest-bearing escrow account in an amount equal to the Professional Fee Reserve Amount to be funded by the Debtors or the Liquidating Trustee, as applicable, on the Effective Date solely for the purpose of paying all Allowed Professional Claims.

116.    "Professional Fee Reserve Amount" means the aggregate Accrued Professional Compensation through the Effective Date as estimated by the Professionals in accordance with ARTICLE II.B.3.

117.    "Proof of Claim" means a proof of Claim Filed against any Debtor in the Chapter 11 Cases.

118.    "Purchaser" means, with respect to each Asset Sale, the Person or Entity that submits the winning bid in accordance with the bidding procedures associated with such sale and has such bid and accompanying asset purchase agreement approved by Final Order of the Bankruptcy Court.

119.    "Registered Holder" means the registered holders of the Junior Secured Notes and the Senior Unsecured Notes issued pursuant to the Indentures.

120.    "Rejection Damages Claim Bar Date" means the date that is (a) with respect to an executory contract or unexpired lease that is rejected pursuant to the Plan, forty-five (45) days after the rejection, as set forth in ARTICLE V, or (b) with respect to an executory contract or

11

unexpired lease that is otherwise rejected, the applicable bar date established by the Bar Date Order.

121.   "Remaining Assets" means all property of the Estates that is not divested, or distributed to a holder of an Allowed Claim under this Plan, as of the Effective Date, including any proceeds from Sales Transactions.

122.   "Rep and Warranty Contract Claim" means any and all Claims against the Debtors arising out of alleged breaches of the representations and warranties contained in documents governing the creation and/or operation of Debtor-sponsored securitization trusts, including, for the avoidance of doubt, (a) such Claims settled in accordance with the RMBS Trust Settlement Agreements and (b) such Claims against the Debtors brought by any (i) Trustee for a Trust that does not accept the offer to settle contained in the RMBS Trust Settlement Agreements, or (ii) trustee for a trust that is not Trust, and (c) such Claims against the Debtors brought by a monoline insurer or other credit enhancer that is not settled under the RMBS Trust Settlement Agreements.

123.   "Representatives" means a Person's or Entity's officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, each solely in its capacity as such.

124.   "ResCap" means Residential Capital LLC.

125.   "ResCap Debtors" means ResCap, GMACM Holding, and RFC Holding.

126.   "ResCap Unsecured Claims Distribution Property" means, for each ResCap Debtor, the property of such ResCap Debtor that is remaining and available for distribution under the Plan after distributions have been made under the Plan to each holder of an Allowed Administrative Expense Claim, Priority Tax Claim, Other Priority Tax Claim, Secured Lender Claim, Junior Secured Notes Claim, and Other Secured Claim against such ResCap Debtor other than any Deficiency Claims related thereto.

127.   "RFC" means Residential Funding Company, LLC.

128.   "RFC Debtors" means each of the Debtor subsidiaries of RFC Holding.

129.   "RFC Holding" means GMAC-RFC Holding Company, LLC.

130.   "RFC Unsecured Claims Distribution Property" means, for each RFC Debtor, the property of such RFC Debtor that is remaining and available for distribution under the Plan after distributions have been made under the Plan to each holder of an Allowed Administrative Expense Claim, Priority Tax Claim, Other Priority Tax Claim, Secured Lender Claim, Junior Secured Notes Claim, and Other Secured Claim against such RFC Debtor other than any Deficiency Claims related thereto.

131.   "RMBS Plan Support Agreements" means the two agreements to support the Plan, dated May 13, 2012, as amended on May 25, 2012, by and among the Debtors, Ally, various creditors asserting Claims against the Debtors, including Rep and Warranty Contract

Claims, and the Trusts agreeing to become party to such agreements in accordance with the terms thereof.

132.    "Rmbs Trust Settlement Agreements" means the two agreements dated May 13, 2012, as amended on May 25, 2012, by and among the Debtors, various creditors asserting Claims against the Debtors, including Rep and Warranty Contract Claims, and the Settling Trusts.

133.    "Sales Transactions" means sales of any property of the Estates or of the Liquidating Trust, as applicable, including the Asset Sales.

134.    "Schedules" means the Debtors' schedules of assets and liabilities and statements of financial affairs, Filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

135.    "Section 510(b) Claim" means any Claim arising from rescission of a purchase or sale of a security (including any Equity Interest) of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

136.    "Secured Claim" means any Claim that is (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or (b) subject to a valid right of setoff under section 553 of the Bankruptcy Code.

137.    "Secured Lender Claim" means any AFI Revolver Claim, AFI LOC Claim, MSR Lender Claim, or FNMA EAF Claim.

138.    "Senior Unsecured Notes Claim" means any Claim of a Senior Unsecured Noteholder under the Senior Unsecured Notes.

139.    "Senior Unsecured Noteholders" means holders of Senior Unsecured Notes.

140.    "Senior Unsecured Notes" means the United States dollar denominated notes maturing between June 2012 and June 2015, euro denominated notes maturing in May 2012, and U.K. sterling denominated notes maturing between May 2013 and July 2014, each issued by ResCap pursuant to the Senior Unsecured Notes Indenture.

141.    "Senior Unsecured Notes Indenture" means that certain Indenture, dated as of June 24, 2005, between Residential Capital Corporation, any guarantors party thereto, and the Senior Unsecured Notes Indenture Trustee, as supplemented from time to time.

142.    "Senior Unsecured Notes Indenture Trustee" means Deutsche Bank Trust Company Americas, as indenture trustee or successor indenture trustee under the Senior Unsecured Notes Indenture, together with its respective successors and assigns in such capacity.

143.    "Settling Parties" means each of the following in its capacity as such: (a) Ally; (b) if applicable, the Consenting Holders; and (c) with respect to each of the Entities in clauses

13

(a) and (b), such Entity's successors and assigns and current and former affiliates, subsidiaries, and Representatives.

144.    "Settling Trusts" means the Trusts that are party to the RMBS Trust Settlement Agreements and any monoline insurer or other credit enhancer agreeing to become party to such agreements in accordance with the terms thereof, in each case so long as the RMBS Trust Settlement Agreements are in effect and have not been terminated before the Effective Date.

145.    "Third Party Release" means the release set forth in ARTICLE IX.D.

146.    "Trustees" means the trustees of the Trusts.

147.    "Trusts" means the securitization trusts identified on Exhibit A to each of the RMBS Trust Settlement Agreements.

148.    "Unimpaired" means, with respect to any Class, a Class that is not Impaired.

149.    "United States" means the United States of America, its agencies, departments, and agents.

150.    "U.S. Trustee Fees" means fees arising under 28 U.S.C. § 1930, and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

151.    "Voting Deadline" means the date set forth in the order of the Bankruptcy Court approving the Disclosure Statement as the deadline for, among other things, voting to accept or reject the Plan.

152.    "Wind-Down Expenses" means the amount of Cash estimated by the Debtors to adequately fund the administration and contemplated functions of the Liquidating Trust in accordance with the Liquidating Trust Budget.

**B.    Rules of Construction**

For the purposes of the Plan:  (1) any term used in capitalized form that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (2) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender include the masculine, feminine, and the neuter gender; (3) unless otherwise stated herein, any reference in the Plan to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (4) except as otherwise provided in the Plan, all references in the Plan to "Articles" are references to Articles of the Plan; (5) except as otherwise provided in the Plan, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) the rules of construction set forth in Bankruptcy Code section 102 shall apply; and (8) any immaterial effectuating provisions may be

interpreted by the Liquidating Trustee in a manner that is consistent with the overall purpose and intent of the Plan, all without further order of the Bankruptcy Court.

## C.    Computation of Time

Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan.

## D.    Governing Law

Unless a rule of law or procedure is supplied by federal law or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, securities, instruments, or other documents executed or delivered in connection with the Plan (except as otherwise set forth in those documents, in which case the governing law of such documents shall control); provided, however, that corporate governance matters relating to the Debtors, as applicable, shall be governed by the laws of the State of incorporation or formation of each respective Debtor.

## ARTICLE II.

## ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL CLAIMS, DIP CLAIMS, PRIORITY TAX CLAIMS, U.S. TRUSTEE FEES, JSN INDENTURE TRUSTEE FEES AND INFORMAL JSN GROUP FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Claims, DIP Claims, Priority Tax Claims, JSN Indenture Trustee Fees, and Informal JSN Group Fees have not been classified and, therefore, are excluded from the Classes of Claims and Equity Interests set forth in ARTICLE III and shall have the following treatment:

## A.    Administrative Expense Claims

Unless otherwise agreed to by the holder of an Allowed Administrative Expense Claim and the Debtors or the Liquidating Trustee, as applicable, or set forth in an order of the Bankruptcy Court, the Debtors or the Liquidating Trustee, as applicable, will pay each holder of an Allowed Administrative Expense Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) the full unpaid amount of such Claim in Cash:  (1) on the Effective Date, or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due, or as soon as practicable thereafter); (2) if the Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed, or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due, or as soon as practicable thereafter); or (3) if the Allowed Administrative Expense Claim arises in the ordinary course of the Debtors' business, in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

Except as provided for in the Barclays DIP Financing Facility, the Ally DIP Financing Facility, or other order of the Bankruptcy Court, holders of Administrative Expense Claims (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) must File and serve on the Debtors or the Liquidating Trustee, as applicable, requests for the payment of such Administrative Expense Claims not already Allowed by Final Order in accordance with the procedures specified in the Confirmation Order on or before the Administrative Expense Claim Bar Date or be forever barred, estopped, and enjoined from asserting such Claims against the Debtors, the Liquidating Trustee, or their assets or properties, and such Claims shall be deemed discharged as of the Effective Date.

The Debtors or Liquidating Trustee, as applicable, may settle and pay any Administrative Expense Claim in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

## B.    Professional Claims

### 1.    Final Fee Applications

All final requests for Professional Claims must be Filed no later than sixty (60) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims will be determined by the Bankruptcy Court.

### 2.    Professional Fee Escrow Account

On the Effective Date, the Debtors will establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account will be maintained in trust for the Professionals.  The funds in such account will not be property of the Debtors or the Liquidating Trust.  The amount of Professional Claims owing to the Professionals will be paid in Cash to such Professionals by the Liquidating Trustee, or at the Liquidating Trustee's direction, from the Professional Fee Escrow Account, without interest or other earnings therefrom, when such Claims are Allowed by Final Order; provided, that the Debtors' or the Liquidating Trust's liability for Professional Claims shall not be limited nor be deemed to be limited to the funds available from the Professional Fee Escrow Account.  When all Professional Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, will be paid to the Liquidating Trust.

### 3.    Professional Fee Reserve Amount

To receive payment for unbilled fees and expenses incurred through the Effective Date, subject to Final Order, Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and deliver such estimate to the Debtors no later than seven (7) business days prior to the Effective Date.  If a Professional does not provide such estimate, the Liquidating Trustee may estimate the unbilled fees and expenses of such Professional.  The total amount so estimated by Professionals and/or the Liquidating Trustee, as applicable, will comprise the Professional Fee Reserve Amount; provided that such estimate will not be considered an admission or limitation with respect to the fees and expenses of such Professional.

16

4.        **Post-Effective Date Fees and Expenses**

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Debtors or the Liquidating Trust, as applicable, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Liquidating Trust, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

**C.        Barclays DIP Facility Claims**

Notwithstanding anything to the contrary herein, and subject to the terms of the Barclays DIP Financing Facility, on the Effective Date, the Barclays DIP Facility Claims will be paid in full and in Cash as an indefeasible payment in full and final satisfaction, settlement, release and discharge of and in exchange for the Barclays DIP Facility Claims.

**D.        Ally DIP Facility Claims**

Notwithstanding anything to the contrary herein, and subject to the terms of the Ally DIP Financing Facility, on the Effective Date, the Ally DIP Facility Claims will be paid in full and in Cash as an indefeasible payment in full and final satisfaction, settlement, release and discharge of and in exchange for the Ally DIP Facility Claims.

**E.        Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, the Debtors or the Liquidating Trustee, as applicable, will pay such holder of an Allowed Priority Tax Claim, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Tax Claim, the full unpaid amount of such Allowed Priority Tax Claim in Cash on, or as soon as practicable after, the latest of:  (1) the Effective Date; (2) the date such Allowed Priority Tax Claim becomes Allowed; or (3) in installment payments over a period of time not to exceed five (5) years after the Petition Date, in accordance with Bankruptcy Code section 1129(a)(9)(C); provided, that such election shall be without prejudice to the Debtor's right to prepay such Allowed Priority Tax Claim in full or in part without penalty.

**F.        U.S. Trustee Fees**

On the Effective Date or as soon as practicable thereafter, the Debtors shall pay all U.S. Trustee Fees that are due and owing on the Effective Date.  For the avoidance of doubt, nothing in the Plan shall release the Debtors from their obligation to pay all U.S. Trustee Fees due and owing after the Effective Date before an order or final decree is entered by the Bankruptcy Court concluding or closing the Chapter 11 Cases.

G.      **JSN Indenture Trustee Fees and Informal JSN Group Fees**

On or before thirty (30) days after the Effective Date, the Liquidating Trustee shall pay in Cash all unpaid JSN Indenture Trustee Fees and Informal JSN Group Fees, without the need for the Junior Secured Notes Indenture Trustee or the Informal JSN Group to File fee applications; provided, that (i) each of the Junior Secured Notes Indenture Trustee and the Informal JSN Group shall provide the Debtors and the Committee with any invoices for which it seeks payment within ten (10) days after the Effective Date; and (ii) the Debtors and the Committee do not object to the reasonableness of the JSN Indenture Trustee Fees or the Informal JSN Group Fees; provided further, that, notwithstanding the foregoing, the Liquidating Trustee shall not be required to pay any Informal JSN Group Fees unless the Informal JSN Group votes to accept the Plan. If the Debtors or the Committee objects to the reasonableness of any portion of the JSN Indenture Trustee Fees or the Informal JSN Group Fees, the Liquidating Trustee shall not be required to pay such disputed portion until either such objection is resolved or a further order of the Bankruptcy Court is entered providing for payment of such disputed portion. Notwithstanding anything in the Plan to the contrary, the Junior Secured Notes Indenture Trustee's Lien against distributions or property held or collected by it for fees and expenses and priority rights pursuant to the Junior Secured Notes Indenture shall be discharged solely upon payment of the JSN Indenture Trustee Fees in full and the termination of the Junior Secured Notes Indenture Trustee's duties under the Junior Secured Notes Indenture.

## ARTICLE III.

## CLASSIFICATION, TREATMENT, AND VOTING
## OF CLAIMS AND EQUITY INTERESTS

A.      **Summary of Classification of Claims and Equity Interests**

Except for Claims addressed in ARTICLE II, all Claims and Equity Interests are classified in the Classes set forth in ARTICLE III in accordance with section 1122 of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below are tables assigning each Class a letter and number designation for purposes of identifying each separate Class:

### 1.    ResCap Debtors

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| R-1 | Other Priority Claims | Unimpaired | No (presumed to accept) |
| R-2 | AFI Revolver Claims | Unimpaired | No (presumed to accept) |
| R-3 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| R-4 | Junior Secured Notes Claims | Impaired | Yes |
| R-5 | Senior Unsecured Notes Claims | Impaired | Yes |
| R-6 | General Unsecured Claims | Impaired | Yes |
| R-7 | Intercompany Claims | Impaired | No |
| R-8 | Section 510(b) Claims | Impaired | No (deemed to reject) |
| R-9 | Equity Interests | Impaired | No (deemed to reject) |

### 2.    GMACM Debtors

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| GS-1 | Other Priority Claims | Unimpaired | No (presumed to accept) |
| GS-2 | AFI Revolver Claims | Unimpaired | No (presumed to accept) |
| GS-3 | AFI LOC Claims | Unimpaired | No (presumed to accept) |
| GS-4 | MSR Lender Claims | Unimpaired | No (presumed to accept) |
| GS-5 | FNMA EAF Claims | Unimpaired | No (presumed to accept) |
| GS-6 | Other Secured Claims | Unimpaired | No (presumed to accept) |

19

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| GS-7 | Junior Secured Notes Claims | Impaired | Yes |
| GS-8 | Rep and Warranty Contract Claims | Impaired | Yes |
| GS-9 | General Unsecured Claims | Impaired | Yes |
| GS-10 | Intercompany Claims | Impaired | No |
| GS-11 | Section 510(b) Claims | Impaired | No (deemed to reject) |
| GS-12 | Equity Interests | Impaired | No (deemed to reject) |

### 3.    RFC Debtors

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| RS-1 | Other Priority Claims | Unimpaired | No (presumed to accept) |
| RS-2 | AFI Revolver Claims | Unimpaired | No (presumed to accept) |
| RS-3 | AFI LOC Claims | Unimpaired | No (presumed to accept) |
| RS-4 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| RS-5 | Junior Secured Notes Claims | Impaired | Yes |
| RS-6 | Rep and Warranty Contract Claims | Impaired | Yes |
| RS-7 | General Unsecured Claims | Impaired | Yes |
| RS-8 | Intercompany Claims | Impaired | No |
| RS-9 | Section 510(b) Claims | Impaired | No (deemed to reject) |
| RS-10 | Equity Interests | Impaired | No (deemed to reject) |

20

**B.      Treatment of Claims and Equity Interests**

Except to the extent that a holder of an Allowed Claim or Equity Interest, as applicable, agrees to a less favorable treatment, such holder shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Equity Interest, receive the treatment described below under the Plan.

**1.      Claims Against and Equity Interests in the ResCap Debtors**

(a)      Class R-1 – Other Priority Claims

    (i)      <u>Classification</u>:  Class R-1 consists of all Other Priority Claims against the ResCap Debtors.

    (ii)      <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of an Allowed Other Priority Claim in Class R-1 shall be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; <u>provided</u>, that Other Priority Claims that arise in the ordinary course of the Debtors' business and that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

    (iii)      <u>Voting</u>:  Class R-1 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class R-1 Claims are conclusively presumed to accept the Plan.

(b)      Class R-2 – AFI Revolver Claims

    (i)      <u>Classification</u>: Class R-2 consists of all AFI Revolver Claims against the ResCap Debtors.

    (ii)      <u>Allowance</u>:  The AFI Revolver Claims in Class R-2 shall be Allowed in the aggregate amount of not less than $747,000,000, plus accrued and unpaid postpetition interest.

    (iii)      <u>Treatment</u>:  Except as otherwise provided under the Ally Plan Support Agreement, on the Effective Date, each holder of an Allowed AFI Revolver Claim in Class R-2 shall be paid in full in Cash, subject to the Junior Secured Notes Plan Support Agreement if the Junior Secured Notes Plan Support Agreement is in effect and has not been terminated before the Effective Date.

    (iv)      <u>Voting</u>:  Class R-2 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class R-2 Claims are conclusively presumed to accept the Plan.

(c)      Class R-3 – Other Secured Claims

    (i)      <u>Classification</u>:  Class R-3 consists of all Other Secured Claims against the ResCap Debtors.

       (ii)    <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of an Allowed Other Secured Claim in Class R-3 shall (A) be paid in full in Cash, including any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (B) receive the collateral securing its Allowed Other Secured Claim.

       (iii)    <u>Voting</u>:  Class R-3 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class R-3 Claims are conclusively presumed to accept the Plan.

(d)    Class R-4 – Junior Secured Notes Claims

       (i)    <u>Classification</u>:  Class R-4 consists of all Junior Secured Notes Claims against the ResCap Debtors.

       (ii)    <u>Allowance</u>:  The Junior Secured Notes Claims shall be Allowed in the aggregate amount of not less than $2,222,498,753.

       (iii)    <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of a Junior Secured Notes Claim in Class R-4 shall receive, after giving full effect to the terms of the Junior Secured Notes Plan Support Agreement, (A) with respect to its Secured Claim, treatment consistent with section 1129(b)(2)(A)(ii) of the Bankruptcy Code, and (B) with respect to its Deficiency Claim, Cash in an amount equal to its Pro Rata share of the ResCap Unsecured Claims Distribution Property; <u>provided</u>, that, at the Debtors' option, if the Junior Secured Notes Plan Support Agreement remains effective on the Effective Date, each holder of a Junior Secured Notes Claim will be deemed to have waived its right to receive any, and shall receive no, recovery on account of such Deficiency Claim.

       (iv)    <u>Voting</u>: Class R-4 is Impaired.  Holders of Allowed Class R-4 Claims are entitled to vote to accept or reject the Plan.

(e)    Class R-5 – Senior Unsecured Notes Claims

       (i)    <u>Classification</u>:  Class R-5 consists of all Senior Unsecured Notes Claims against the ResCap Debtors.

       (ii)    <u>Allowance</u>:  The Senior Unsecured Notes Claims in Class R-5 shall be Allowed in the aggregate amount of $[__].

       (iii)    <u>Treatment</u>:  As soon as practicable after the Effective Date, each holder of an Allowed Senior Unsecured Notes Claim in Class R-5 shall receive Cash in an amount equal to its Pro Rata share of the ResCap Unsecured Claims Distribution Property.

       (iv)    <u>Voting</u>:  Class R-5 is Impaired.  Holders of Allowed Class R-5 Claims are entitled to vote to accept or reject the Plan.

(f)    Class R-6 – General Unsecured Claims

    (i)    <u>Classification</u>:  Class R-6 consists of all General Unsecured Claims against the ResCap Debtors.

    (ii)    <u>Treatment</u>:  As soon as practicable after the Effective Date, each holder of an Allowed General Unsecured Claim in Class R-6 shall receive Cash in an amount equal to its Pro Rata share of the ResCap Unsecured Claims Distribution Property.

    (iii)    <u>Voting</u>: Class R-6 is Impaired.  Holders of Allowed Class R-6 Claims are entitled to vote to accept or reject the Plan.

(g)    Class R-7 – Intercompany Claims

    (i)    <u>Classification</u>:  Class R-7 consists of all Intercompany Claims against the ResCap Debtors.

    (ii)    <u>Treatment</u>:  As soon as practicable after the Effective Date, each holder of an Allowed Intercompany Claim in Class R-7 shall receive an amount equal to its Pro Rata share of the ResCap Unsecured Claims Distribution Property.

    (iii)    <u>Voting</u>:  Class R-7 is Impaired.  Holders of Allowed Class R-7 Claims are not entitled to vote on the Plan.

(h)    Class R-8 – Section 510(b) Claims

    (i)    <u>Classification</u>:  Class R-8 consists of all Section 510(b) Claims against the ResCap Debtors.

    (ii)    <u>Treatment</u>:  Holders of Section 510(b) Claims in Class R-8 shall receive no recovery on account of such Claims.

    (iii)    <u>Voting</u>:  Class R-8 is Impaired.  Pursuant to Bankruptcy Code section 1126(g), holders of Allowed Class R-8 Claims are deemed to reject the Plan.

(i)    Class R-9 – Equity Interests

    (i)    <u>Classification</u>:  Class R-9 consists of all Equity Interests in the ResCap Debtors.

    (ii)    <u>Treatment</u>:  Holders of Equity Interests in Class R-9 shall receive no recovery on account of such Equity Interests.

    (iii)    <u>Voting</u>:  Class R-9 is Impaired.  Pursuant to Bankruptcy Code section 1126(g), holders of Allowed Class R-9 Equity Interests are deemed to reject the Plan.

**2.    Claims Against and Equity Interests in the GMACM Debtors**

(a)    Class GS-1 – Other Priority Claims

    (i)    <u>Classification</u>:  Class GS-1 consists of all Other Priority Claims against the GMACM Debtors.

(ii)  <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of an Allowed Other Priority Claim in Class GS-1 shall be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; <u>provided</u>, that Other Priority Claims that arise in the ordinary course of the Debtors' business, and that are not due and payable on or before the Effective Date, shall be paid in the ordinary course of business in accordance with the terms thereof.

(iii)  <u>Voting</u>:  Class GS-1 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class GS-1 Claims are conclusively presumed to accept the Plan.

(b)  Class GS-2 – AFI Revolver Claims

(i)  <u>Classification</u>: Class GS-2 consists of all AFI Revolver Claims against the GMACM Debtors.

(ii)  <u>Allowance</u>:  The AFI Revolver Claims in Class GS-2 shall be Allowed in the aggregate amount of not less than $747,000,000, plus accrued and unpaid post-petition interest.

(iii)  <u>Treatment</u>:  Except as otherwise provided under the Ally Plan Support Agreement, on the Effective Date, each holder of an Allowed AFI Revolver Claim in Class GS-2 shall be paid in full in Cash, subject to the Junior Secured Notes Plan Support Agreement if the Junior Secured Notes Plan Support Agreement is in effect and has not been terminated before the Effective Date.

(iv)  <u>Voting</u>:  Class GS-2 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class GS-2 Claims are conclusively presumed to accept the Plan.

(c)  Class GS-3 – AFI LOC Claims

(i)  <u>Classification</u>:  Class GS-3 consists of all AFI LOC Claims against the GMACM Debtors.

(ii)  <u>Allowance</u>:  The AFI LOC Claims in Class GS-3 shall be Allowed in the aggregate amount of not less than $380,000,000, plus accrued and unpaid post-petition interest.

(iii)  <u>Treatment</u>:  Except as otherwise provided under the Ally Plan Support Agreement, on the Effective Date, each holder of an Allowed AFI LOC Claim in Class GS-3 shall be paid in full in Cash.

(iv)  <u>Voting</u>:  Class GS-3 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class GS-3 Claims are conclusively presumed to accept the Plan.

(d)    Class GS-4 – MSR Lender Claims

    (i)    <u>Classification</u>:  Class GS-4 consists of all MSR Lender Claims against the GMACM Debtors.

    (ii)    <u>Allowance</u>:  The MSR Lender Claims in Class GS-4 shall be Allowed in the aggregate amount of $[__], plus accrued and unpaid post-petition interest, and associated fees and costs.

    (iii)    <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of an Allowed MSR Lender Claim in Class GS-4 shall be paid in full in Cash.

    (iv)    <u>Voting</u>:  Class GS-4 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class GS-4 Claims are conclusively presumed to accept the Plan.

(e)    Class GS-5 – FNMA EAF Claims

    (i)    <u>Classification</u>:  Class GS-5 consists of all FNMA EAF Claims against the GMACM Debtors.

    (ii)    <u>Allowance</u>:  The FNMA EAF Claims in Class GS-5 shall be Allowed in the aggregate amount of $[__].

    (iii)    <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of an Allowed FNMA EAF Claim in Class GS-5 shall be paid in full in Cash.

    (iv)    <u>Voting</u>:  Class GS-5 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class GS-5 Claims are conclusively presumed to accept the Plan.

(f)    Class GS-6 – Other Secured Claims

    (i)    <u>Classification</u>:  Class GS-6 consists of all Other Secured Claims against the GMACM Debtors.

    (ii)    <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of an Allowed Other Secured Claim in Class GS-6 shall (A) be paid in full in Cash, including any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (B) receive the collateral securing its Allowed Other Secured Claim.

    (iii)    <u>Voting</u>:  Class GS-6 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class GS-6 Claims are conclusively presumed to accept the Plan.

(g)    Class GS-7 – Junior Secured Notes Claims

    (i)    <u>Classification</u>:  Class GS-7 consists of all Junior Secured Notes Claims against the GMACM Debtors.

    (ii)    <u>Allowance</u>:  The Junior Secured Notes Claims shall be Allowed as in the aggregate amount of not less than $2,222,498,753.

(iii)  <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of a Junior Secured Notes Claim in Class GS-7 shall receive, after giving full effect to the terms of the Junior Secured Notes Plan Support Agreement, (A) with respect to its Secured Claim, treatment consistent with section 1129(b)(2)(A)(ii) of the Bankruptcy Code, and (B) with respect to its Deficiency Claim, Cash in an amount equal to its Pro Rata share of the GMACM Unsecured Claims Distribution Property, in accordance with, and to the extent modified by, the Junior Secured Notes Plan Support Agreement.

(iv)  <u>Voting</u>:  Class GS-7 is Impaired.  Holders of Allowed Class GS-7 Claims are entitled to vote to accept or reject the Plan.

(h)  Class GS-8 – Rep and Warranty Contract Claims

(i)  <u>Classification</u>:  Class GS-8 consists of all Rep and Warranty Contract Claims against the GMACM Debtors.

(ii)  <u>Treatment</u>:  Subject to the terms of the RMBS Trust Settlement Agreements, as soon as practicable after the Effective Date, each holder of an Allowed Rep and Warranty Contract Claim in Class GS-8 shall receive Cash in an amount equal to its Pro Rata share of the GMACM Unsecured Claims Distribution Property.

(iii)  <u>Voting</u>:  Class GS-8 is Impaired.  Holders of Allowed Class GS-8 Claims are entitled to vote to accept or reject the Plan.

(i)  Class GS-9 – General Unsecured Claims

(i)  <u>Classification</u>:  Class GS-9 consists of all General Unsecured Claims against the GMACM Debtors.

(ii)  <u>Treatment</u>:  As soon as practicable after the Effective Date, each holder of an Allowed General Unsecured Claim in Class GS-9 shall receive an amount equal to its Pro Rata share of the GMACM Unsecured Claims Distribution Property.

(iii)  <u>Voting</u>:  Class GS-9 is Impaired.  Holders of Allowed Class GS-9 Claims are entitled to vote to accept or reject the Plan.

(j)  Class GS-10 – Intercompany Claims

(i)  <u>Classification</u>:  Class GS-10 consists of all Intercompany Claims against the GMACM Debtors.

(ii)  <u>Treatment</u>:  As soon as practicable after the Effective Date, each holder of an Allowed Intercompany Claim in Class GS-10 shall receive an amount equal to its Pro Rata share of the GMACM Unsecured Claims Distribution Property.

(iii)  <u>Voting</u>:  Class GS-10 is Impaired.  Holders of Allowed Class GS-10 Claims are not entitled to vote on the Plan.

26

(k)    Class GS-11 – Section 510(b) Claims

(i)    <u>Classification</u>:  Class GS-11 consists of all Section 510(b) Claims against the GMACM Debtors.

(ii)    <u>Treatment</u>:  Holders of Section 510(b) Claims in Class GS-11 shall receive no recovery on account of such Claims.

(iii)    <u>Voting</u>:  Class GS-11 is Impaired.  Pursuant to Bankruptcy Code section 1126(g), holders of Allowed Class GS-11 Claims are deemed to reject the Plan.

(l)    Class GS-12 – Equity Interests

(i)    <u>Classification</u>:  Class GS-12 consists of all Equity Interests in the GMACM Debtors.

(ii)    <u>Treatment</u>:  Holders of Equity Interests in Class GS-12 shall receive no recovery on account of such Equity Interests.

(iii)    <u>Voting</u>:  Class GS-12 is Impaired.  Pursuant to Bankruptcy Code section 1126(g), holders of Allowed Class GS-12 Equity Interests are deemed to reject the Plan.

**3.    Claims Against and Equity Interests in the RFC Debtors**

(a)    Class RS-1 – Other Priority Claims

(i)    <u>Classification</u>:  Class RS-1 consists of all Other Priority Claims against the RFC Debtors.

(ii)    <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of an Allowed Other Priority Claim in Class RS-1 shall be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; <u>provided</u>, that Other Priority Claims that arise in the ordinary course of the Debtors' business, and that are not due and payable on or before the Effective Date, shall be paid in the ordinary course of business in accordance with the terms thereof.

(iii)    <u>Voting</u>:  Class RS-1 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class RS-1 Claims are conclusively presumed to accept the Plan.

(b)    Class RS-2 – AFI Revolver Claims

(i)    <u>Classification</u>:  Class RS-2 consists of all AFI Revolver Claims against the RFC Debtors.

(ii)    <u>Allowance</u>:  The AFI Revolver Claims in Class RS-2 shall be Allowed in the aggregate amount of not less than $747,000,000, plus accrued and unpaid post-petition interest.

(iii)    <u>Treatment</u>:  Except as otherwise provided under the Ally Plan Support Agreement, on the Effective Date, each holder of an

27

Allowed AFI Revolver Claim in Class RS-2 shall be paid in full in Cash, subject to the Junior Secured Notes Plan Support Agreement if the Junior Secured Notes Plan Support Agreement is in effect and has not been terminated before the Effective Date.

    (iv)    <u>Voting</u>:  Class RS-2- is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class RS-2 Claims are conclusively presumed to accept the Plan.

(c)    Class RS-3 – AFI LOC Claims

    (i)    <u>Classification</u>:  Class RS-3 consists of all AFI LOC Claims against the RFC Debtors.

    (ii)    <u>Allowance</u>:  The AFI LOC Claims in Class RS-3 shall be Allowed in the aggregate amount of not less than $380,000,000, plus accrued and unpaid post-petition interest.

    (iii)    <u>Treatment</u>:  Except as otherwise provided under the Ally Plan Support Agreement, on the Effective Date, each holder of an Allowed AFI LOC Claim in Class RS-3 shall be paid in full in Cash.

    (iv)    <u>Voting</u>:  Class RS-3 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class RS-3 Claims are conclusively presumed to accept the Plan.

(d)    Class RS-4 – Other Secured Claims

    (i)    <u>Classification</u>:  Class RS-4 consists of all Other Secured Claims against the RFC Debtors.

    (ii)    <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of an Allowed Other Secured Claim in Class RS-4 shall (A) be paid in full in Cash, including any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (B) receive the collateral securing its Allowed Other Secured Claim.

    (iii)    <u>Voting</u>:  Class RS-4 is Unimpaired.  Pursuant to Bankruptcy Code section 1126(f), holders of Allowed Class RS-4 Claims are conclusively presumed to accept the Plan.

(e)    Class RS-5 – Junior Secured Notes Claims

    (i)    <u>Classification</u>:  Class RS-5consists of all Junior Secured Notes Claims against the RFC Debtors.

    (ii)    <u>Allowance</u>:  The Junior Secured Notes Claims shall be Allowed in the aggregate amount of not less than $2,222,498,753.

    (iii)    <u>Treatment</u>:  On, or as soon as practicable after, the Effective Date, each holder of a Junior Secured Notes Claim in Class RS-5 shall receive, after giving full effect to the terms of the Junior Secured

28

Notes Plan Support Agreement, (A) with respect to its Secured Claim, treatment consistent with section 1129(b)(2)(A)(ii) of the Bankruptcy Code, and (B) with respect to its Deficiency Claim, Cash in an amount equal to its Pro Rata share of the RFC Unsecured Claims Distribution Property in accordance with, and to the extent modified by, the Junior Secured Notes Plan Support Agreement.

    (iv)    <u>Voting</u>:  Class RS-5 is Impaired.  Holders of Allowed Class RS-5 Claims are entitled to vote to accept or reject the Plan.

(f)    Class RS-6 – Rep and Warranty Contract Claims

    (i)    <u>Classification</u>:  Class RS-6 consists of all Rep and Warranty Contract Claims against the RFC Debtors.

    (ii)    <u>Treatment</u>:  Subject to the terms of the RMBS Trust Settlement Agreements, as soon as practicable after the Effective Date, each holder of an Allowed Rep and Warranty Contract Claim in Class RS-6 shall receive Cash in an amount equal to its Pro Rata share of the RFC Unsecured Claims Distribution Property.

    (iii)    <u>Voting</u>:  Class RS-6 is Impaired.  Holders of Allowed Class RS-6 Claims are entitled to vote to accept or reject the Plan.

(g)    Class RS-7 – General Unsecured Claims

    (i)    <u>Classification</u>:  Class RS-7 consists of all General Unsecured Claims against the RFC Debtors

    (ii)    <u>Treatment</u>:  As soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim in Class RS-7 shall receive Cash in an amount equal to its Pro Rata share of the RFC Unsecured Claims Distribution Property.

    (iii)    <u>Voting</u>:  Class RS-7 is Impaired.  Holders of Allowed Class RS-7 Claims are entitled to vote to accept or reject the Plan.

(h)    Class RS-8 – Intercompany Claims

    (i)    <u>Classification</u>:  Class RS-8 consists of all Intercompany Claims against the RFC Debtors.

    (ii)    <u>Treatment</u>:  As soon as practicable after the Effective Date, each holder of an Allowed Intercompany Claim in Class RS-8 shall receive an amount equal to its Pro Rata share of the RFC Unsecured Claims Distribution Property.

    (iii)    <u>Voting</u>:  Class RS-8 is Impaired.  Holders of Allowed Class RS-8 Claims are not entitled to vote on the Plan.

(i)    Class RS-9 – Section 510(b) Claims

    (i)    <u>Classification</u>:  Class RS-9 consists of all Section 510(b) Claims against the RFC Debtors.

29

        (ii)     <u>Treatment</u>:  Holders of Section 510(b) Claims in Class RS-9 shall receive no recovery on account of such Claims.

        (iii)    <u>Voting</u>:  Class RS-9 is Impaired.  Pursuant to Bankruptcy Code section 1126(g), holders of Allowed Class RS-9 Claims are deemed to reject the Plan.

   (j)     Class RS-10 – Equity Interests

        (i)     <u>Classification</u>:  Class RS-10 consists of all Equity Interests in the RFC Debtors.

        (ii)     <u>Treatment</u>:  Holders of Equity Interests in Class RS-10 shall receive no recovery on account of such Equity Interests.

        (iii)    <u>Voting</u>:  Class RS-10 is Impaired.  Pursuant to Bankruptcy Code section 1126(g), holders of Allowed Class RS-10 Equity Interests are conclusively presumed to reject the Plan.

## C.    Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  The Debtors or the Liquidating Trustee, as applicable, reserve the right to re-classify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto under section 510 of the Bankruptcy Code.

## D.    Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not include at least one holder of a Claim or Equity Interest that is Allowed as of the Confirmation Hearing will be eliminated from the Plan for purposes of voting to accept or reject the Plan.

## ARTICLE IV.

## IMPLEMENTATION OF THE PLAN

## A.    Sources of Consideration for Plan Distributions

The sources of consideration for distributions to holders of Allowed Claims under the Plan include: (i) Sales Transactions; (ii) the Ally Settlement; (iii) proceeds from the prosecution of any Causes of Action; and (iv) Cash of the Estates as of the Effective Date.

Subject to the terms and conditions of the Ally Settlement, Ally will contribute $750 million to the Estates on the Effective Date for purposes of funding distributions to holders of certain Allowed Claims under the Plan.  This contribution of consideration for Plan distributions will be allocated as follows:  (i) $[__] million to be included in the estate of ResCap; (ii) $[__]

million to be included in the estate of GMACM; and (iii) $[__] million to be included in the estate of RFC.

**B.     Sales of Assets**

Pursuant to the Confirmation Order, the Debtors and the Liquidating Trustee, as applicable, will be authorized to take any actions as may be necessary or appropriate to effect the Sales Transactions, including the Asset Sales under the Plan free and clear of all Claims, Liens, and other encumbrances and Equity Interests under the terms of each of the HFS Asset Purchase Agreement and the Platform Asset Purchase Agreement and in accordance with section 1123 of the Bankruptcy Code, and to effect transactions, including conversions, dissolutions, transfers, liquidations, or other corporate transactions, as may be determined by the Debtors or the Liquidating Trustee, as applicable, to be necessary or appropriate to implement to terms of the Plan.  After the Confirmation Date, the Debtors and the Liquidating Trustee, as applicable, may utilize the aforementioned authority without any further notice to or action, order or approval of the Bankruptcy Court.

**C.     The Liquidating Trust and the Plan Oversight Committee**

As described further in ARTICLE VIII, on the Effective Date, the Debtors will execute the Liquidating Trust Agreement and take all other steps necessary to establish the Liquidating Trust, and appoint the Liquidating Trustee, in accordance with the Liquidating Trust Agreement and the Plan. The Liquidating Trustee, as trustee for the Liquidating Trust, will implement the Plan, including to effect the liquidation, abandonment, or other disposition of the Liquidating Trust Assets for the benefit of holders of Allowed Claims not satisfied as of the Effective Date, subject to consultation with the Plan Oversight Committee established on the Effective Date to oversee the administration of the Liquidating Trust.

If a seat on the Plan Oversight Committee is vacated, a replacement member shall be selected by the party that selected the vacating member; provided, that if the holders of Junior Secured Notes Claims are paid in full on account of such Claims or if the Junior Secured Notes Plan Support Agreement is not in full force and effect as of the Effective Date, then the member of the Plan Oversight Committee selected by the Informal JSN Group shall be removed and the Committee shall select that member's replacement.  The reasonable and documented fees and expenses of the Liquidating Trustee and the members of the Plan Oversight Committee will be paid from the property of the Debtors' Estates or the Liquidating Trust Assets, as applicable, as they come due.

The Plan Oversight Committee will dissolve automatically, and its members and retained Professionals shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases on the date that there are no Liquidating Trust Assets remaining for distribution to holders of Allowed Claims.

**D.     Cancellation of Securities, Indentures, and Other Documents Evidencing Claims and Equity Interests**

Subject to the assumption of executory contracts and unexpired leases as set forth in the Plan, on the Effective Date, all notes, stock, instruments, certificates, indentures, guarantees, and

31

other documents or agreements evidencing a Claim against or Equity Interest in the Debtors will be deemed automatically cancelled and shall be of no further force or effect, whether such document is surrendered for cancellation or not, and the obligations of the Debtors, or the Liquidating Trustee, if applicable, thereunder or in any way related thereto will be discharged; provided, any such document that governs the rights of a holder of an Allowed Claim not satisfied on the Effective Date will continue in effect solely for purposes of allowing such holder to receive, and until such holder has received, a distribution, if any, in satisfaction of such Allowed Claim under the Plan.

**E.      Corporate Action**

Except as otherwise provided in the Plan, each of the matters provided for by the Plan involving corporate or related actions to be taken by or required of Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by holders of Claims or Equity Interests, directors of the Debtors, or any other Entity.  On or prior to the Effective Date, the appropriate officers of the Debtors shall be authorized and directed to issue, execute, and deliver the agreements, securities, instruments, or other documents contemplated by the Plan, or necessary or desirable to effect the transactions contemplated by the Plan, in the name of and on behalf of the Liquidating Trustee. Notwithstanding any requirements under nonbankruptcy law, the authorizations and approvals contemplated by this provision shall be effective.

On the Effective Date, upon the appointment of the Liquidating Trustee, the persons acting as directors and officers of the Debtors prior to the Effective Date will be released from all further authority, duties, responsibilities, and obligations relating to and arising from operations of the Debtors or the Chapter 11 Cases and, upon such release and discharge, the Liquidating Trustee will be charged with the authority, duties, responsibilities, and obligations relating to and arising from operations of the Debtors and these Chapter 11 Cases.

**F.      Effectuating Documents; Further Transactions**

On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents, except for those expressly required by the Plan.

**G.      Exemption from Certain Taxes and Fees**

Pursuant to Bankruptcy Code section 1146(a), any transfers of property pursuant to the Plan shall not be subject to any stamp, real estate transfer, mortgage reporting, sales, use tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for

filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

## H.    Preservation of Causes of Action

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan (including the Ally Plan Support Agreement), or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Liquidating Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Liquidating Trust may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trusts. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Liquidating Trust will not pursue any and all available Causes of Action against them.   The Debtors and the Liquidating Trust expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Liquidating Trust expressly reserves all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, the Plan does not release any Causes of Action that the Debtors or the Liquidating Trust have or may have now or in the future against any Entity other than the Debtor Released Parties.

Except as otherwise provided in the Plan or in a Final Order, the Liquidating Trust reserves and shall retain Causes of Action notwithstanding the rejection of any executory contract or unexpired lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity that is not released under the Plan or a separate settlement approved by Final Order shall vest in the Liquidating Trust.  The Liquidating Trust, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. Except as may be otherwise required under the Liquidating Trust Agreement, the Liquidating Trust has the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE V.

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases**

Except as otherwise provided in the Plan or in a Final Order, each of the Debtors' executory contracts and unexpired leases in existence as of the Effective Date will be deemed rejected effective on the Effective Date, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, under section 365 of the Bankruptcy Code, unless such executory contract or unexpired lease (i) was assumed prior to the Effective Date by Final Order; (ii) is the subject of a motion to assume or reject Filed on or before the Effective Date, which is still pending on the Effective Date; or (iii) is identified in the Assumption Schedule. The assumption of executory contracts and unexpired leases under the Plan may include the assignment of certain of such contracts to a Purchaser or the vesting of such contracts in the Liquidating Trust.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the above described assumptions, assignments, vesting, and rejections. Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to amend, modify, or supplement the Assumption Schedule at any time before the Effective Date.

**B.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any defaults under each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, in accordance with section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash as, and subject to the limitations, described below, or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree.  On or before twenty-five (25) days prior to the Voting Deadline, the Debtors will File, and serve upon counterparties to executory contracts and unexpired leases proposed for assumption and upon Bankruptcy Rule 2002 notice parties, a notice that will: (a) include the Assumption Schedule, which will include proposed payment amounts on account of Cure Claims listed by executory contract and unexpired lease; (b) describe the procedures for filing objections to a proposed assumption or payment on account of a Cure Claim; and (c) explain the process by which related disputes will be resolved by the Bankruptcy Court.  Any objection to the assumption of an executory contract or unexpired lease, or to the amount proposed for payment of an associated Cure Claim, must be Filed, served, and actually received by counsel to the Debtors and the Committee on or before ten [10] days after the Voting Deadline or, otherwise, the counterparty to such executory contract or unexpired lease will be deemed to have assented to such assumption and proposed cure amount.

In the event of a dispute regarding (i) the amount of any payments to cure such a default, (ii) the ability of the Debtors or any assignee to provide "adequate assurance of future performance," within the meaning of Bankruptcy Code section 365, under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

34

A Cure Claim will be satisfied by the Debtors or their assignee, if any, or the Liquidating Trustee, if applicable, by payment of the proposed cure amount in Cash within fourteen (14) days after the Effective Date, or as soon as practicable thereafter, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties to the applicable executory contract or unexpired lease without any further notice to or action, order, or approval of the Bankruptcy Court.  Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption.  Any provisions or terms of the executory contracts or unexpired leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by payment of the proposed cure amount or by an agreed-upon waiver of such Cure Claim.

## C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases

All Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, including any executory contracts or unexpired leases rejected or deemed rejected under the Plan, must be Filed in accordance with the procedures set forth in the Bar Date Order by the Rejection Damages Claim Bar Date or such Claims will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trustee, or their assets or properties without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtors' executory contracts or unexpired leases will be classified as General Unsecured Claims against the applicable Debtors and treated in accordance with the terms of ARTICLE III.  The deadline to object to Claims arising from the rejection of executory contracts or unexpired leases, if any, shall be the Claims Objection Deadline.

## D.    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request, pursuant to Bankruptcy Code section 365(d)(4), to extend the deadline for assuming or rejecting executory contracts and unexpired leases.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Record Date for Distributions

As of the Distribution Record Date, the transfer registers for each Class of Claims or Equity Interests, as maintained by the Debtors or their agents, shall be deemed closed and there shall be no further changes made to reflect any new record holders of any Claims or Equity Interests.  Except with respect to Allowed Junior Secured Notes Claims and Allowed Senior Unsecured Notes Claims, the Debtors shall have no obligation to recognize any transfer of Claims or Equity Interests occurring on or after the Distribution Record Date.

ny-1023124 v10

**B.**     **Timing and Calculation of Amounts to be Distributed**

**1.**     **Distributions on Account of Claims Allowed as of the Effective Date**

Except as otherwise provided in the Plan, on the Effective Date or as soon as practicable thereafter, each holder of an Allowed Claim against the Debtors as of the Effective Date shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**2.**     **Distributions on Account of Claims Allowed After the Effective Date**

If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made in accordance with the provisions set forth in ARTICLE VII of the Plan.  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on a Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim.

Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**C.**     **Disbursing Agent**

**1.**     **Generally**

On the Effective Date or as soon as practicable thereafter, all distributions under the Plan shall be made by the Debtors or the Liquidating Trustee, as applicable, as Disbursing Agent or such other Entity designated by the Debtors as a Disbursing Agent.  Except as otherwise ordered by the Bankruptcy Court, a Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

**2.**     **Rights and Powers of the Disbursing Agent**

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, securities, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated by the Plan; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

### 3. Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Liquidating Trustee from the Liquidating Trust.

## D. Delivery of Distributions and Undeliverable or Unclaimed Distributions

### 1. Delivery of Distributions

Except as otherwise provided in the Plan, the Disbursing Agent shall make distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' books and records as of the date of any such distribution or as set forth in any Proof of Claim Filed by such holder; provided, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent.  If a holder holds more than one Allowed Claim in any one Class, all Allowed Claims of the holder in a single Class will be aggregated into one Allowed Claim and one distribution will be made with respect to the aggregated Allowed Claim.

Distributions under the Plan to holders of Allowed Junior Secured Notes Claims shall be made to the Junior Secured Notes Indenture Trustee for the benefit of the holders of Allowed Junior Secured Notes Claims, and shall be deemed completed when made to the Junior Secured Notes Indenture Trustee.  Distributions under the Plan to holders of Allowed Senior Unsecured Notes Claims shall be made to the Senior Unsecured Notes Indenture Trustee for the benefit of the holders of Allowed Senior Unsecured Notes Claims, and shall be deemed completed when made to the Senior Unsecured Notes Indenture Trustee.

### 2. Distributions to Holders of Disputed Claims

Except as otherwise provided in the Plan or agreed to by the relevant parties:  (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or expunged.  Any distributions arising from property distributed to holders of Allowed Claims in a Class and paid to such holders under the Plan shall be paid also, in the applicable amounts, to any holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such distributions were earlier paid to holders of Allowed Claims in such Class.

### 3. Surrender of Existing Publicly Traded Securities

On the Effective Date, or as soon as reasonably practicable thereafter, each Indenture Trustee, with the cooperation of the Debtors or the Liquidating Trustee, as applicable, shall cause The Depository Trust Company or other securities depository to surrender the Junior Secured Notes or the Senior Unsecured Notes, as applicable, the applicable Indenture Trustee.  No

distributions under the Plan shall be made for or on behalf of a Registered Holder unless and until (a) such debt securities have been received by the applicable Indenture Trustee or appropriate instructions from the applicable securities depository have been received by the applicable Indenture Trustee in accordance with the respective indenture; or (b) the loss, theft, or destruction of such debt securities has been established to the reasonable satisfaction of the applicable Indenture Trustee, which satisfaction may require such Registered Holder to submit a lost instrument affidavit and an indemnity bond holding the Debtors, the Liquidating Trustee, and the applicable Indenture Trustee harmless in respect of such debt securities and distributions made in respect thereof.  Each Registered Holder shall be deemed to have surrendered such debt securities as of the date it has complied with the foregoing conditions.  On the surrender date, holders of Allowed Junior Secured Notes Claims and Senior Unsecured Notes Claims shall be entitled to receive distributions pursuant to the Plan.   Any Registered Holder that fails to surrender such debt securities or, if applicable, satisfactorily explain the loss, theft, or destruction of such debt securities to the respective Indenture Trustee within one (1) year of the Effective Date shall be deemed to have no further Claim against the Debtors, the Liquidating Trustee, or the applicable Indenture Trustee in respect of such Claim and shall not be entitled to receive any distribution under the Plan.   All property in respect of such forfeited distributions, including interest thereon, shall be promptly returned to the Liquidating Trustee by the respective Indenture Trustee and any such debt securities shall be cancelled.

4.      **Minimum Distributions; Foreign Exchange Rate; and Other Distribution Limitations**

No Cash payment of less than $50 shall be made to a holder of an Allowed Claim on account of such Allowed Claim.  If a holder of an Allowed Claim would be entitled to receive less than $50 as of the time of a particular distribution, but would be entitled to receive more than $50 in combination with later distributions, the Liquidating Trustee will combine such distributions with later distributions to such holder of an Allowed Claim so that such holder may eventually be entitled to a distribution of at least $50 in value.

Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

Except as otherwise provided in the Plan or a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than United States dollars shall be automatically deemed converted to the equivalent United States dollar value using the exchange rate as of [*day of week*], [*month / day*], 2012 as quoted at 4:00 p.m. (EDT), mid-range spot rate of exchange for the applicable currency as published in The Wall Street Journal, National Edition, on [*day of week*], [*month / day*], 2012.

5.      **Undeliverable Distributions and Unclaimed Property**

(i)      **Failure to Claim Undeliverable Distributions**

In the event that any distribution to a holder of an Allowed Claim is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent

has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under Bankruptcy Code section 347(b) at the expiration of six (6) months from the applicable Distribution Date.  After such date, all unclaimed property or interests in property shall revert to the Liquidating Trust (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

(ii)     <strong>Failure to Present Checks</strong>

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the issuance of such check.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the relevant Allowed Claim with respect to which such check originally was issued.  Any holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within ninety (90) days after the issuance of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the Debtors, the Liquidating Trustee, or their assets and properties.

## E.     Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed upon it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  The Disbursing Agent has the right, but not the obligation, not to make a distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such withholding tax obligations and, if the Disbursing Agent fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse the Disbursing Agent.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate.  The Disbursing Agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder.  If the holder fails to comply with such a request within six months, such distribution shall be deemed an unclaimed distribution.  Finally, the Disbursing Agent reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

39

**F.      Allocations**

Distributions in respect of Allowed Claims shall be allocated first to the principal amount (as determined for federal income tax purposes) of such Claims, and then, to the extent the consideration exceeds the principal amount of such Claims, to any portion of such Claims for accrued but unpaid interest.

**G.      Setoffs and Recoupment**

The Debtors or the Liquidating Trustee may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the Allowance of any Claim shall constitute a waiver or release by the Debtors or the Liquidating Trustee of any such Claim it may have against the holder of such Claim.

**H.      Claims Paid or Payable by Third Parties**

**1.      Claims Paid by Third Parties**

The Debtors, on or prior to the Effective Date, or the Liquidating Trustee, after the Effective Date, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice, action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or the Liquidating Trustee.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trustee on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the Liquidating Trustee, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim.

**2.      Claims Payable by Third Parties**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided in the Plan, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A.    Resolution of Disputed Claims

#### 1.    Allowance of Claims

After the Effective Date, the Liquidating Trustee shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim (i) deemed Allowed as of the Effective Date or (ii) waived, relinquished, exculpated, released, compromised, or settled in the Plan or in a Final Order.  Except as otherwise provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed (a) under the Plan or the Bankruptcy Code or (b) by Final Order of the Bankruptcy Court, including the Confirmation Order.

#### 2.    Prosecution of Objections to Claims

The Debtors, on or before the Effective Date, and the Liquidating Trustee, after the Effective Date, will have the exclusive authority to:  (a) File, withdraw, or litigate to judgment, objections to Claims or Interests; (b) settle or compromise any Disputed Claim or Cause of Action without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

#### 3.    Claims Estimation

The Debtors, on and before the Effective Date, or the Liquidating Trustee, after the Effective Date, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Bankruptcy Code section 502(c) regardless of whether any Debtor or the Liquidating Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.

#### 4.    Expungement or Adjustment of Claims Without Objection

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Debtors' notice and claims agent, and any Claim that has been amended may be adjusted thereon by the Debtors' notice and claims agent, in both cases without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

5.    **Deadline to File Claims Objections**

Any objections to Claims shall be Filed by no later than the applicable Claims Objection Deadline.

B.    **Disallowance of Claims**

Any Claims held by an Entity from which property is recoverable under Bankruptcy Code sections 542, 543, or 550, or that is a transferee of a transfer avoidable under Bankruptcy Code section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a), shall be deemed disallowed pursuant to Bankruptcy Code section 502(d), and holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, by that Entity have been turned over or paid by such Entity to the Debtors or the Liquidating Trustee.

EXCEPT AS OTHERWISE AGREED BY THE DEBTORS OR THE LIQUIDATING TRUSTEE, AS APPLICABLE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

C.    **Amendments to Claims**

On or after the Effective Date, a Claim may not be Filed or amended without prior authorization of the Bankruptcy Court or the Liquidating Trustee, and any such new or amended Claim Filed without such prior authorization shall be deemed disallowed in full and expunged without any further action.

## ARTICLE VIII.

## THE LIQUIDATING TRUST; THE LIQUIDATING TRUSTEE

A.    **Generally**

The purpose of the Liquidating Trust, and the powers, authority, responsibilities, and duties of the Liquidating Trustee, are set forth in and will be governed by the Liquidating Trust Agreement.

The Liquidating Trust Agreement will contain implementation, termination, and other provisions customary to trust agreements utilized in comparable circumstances, including (i) any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust and the holders of Allowed Claims as the grantors and owners thereof for federal income tax purposes and (ii) any and all provisions necessary to ensure that Liquidating Trust beneficiaries' interests in the Liquidating Trust are exempt from federal securities laws.

42

B.      **Purpose of the Liquidating Trust**

The Liquidating Trust will be established on the Effective Date for the primary purpose of liquidating, and distributing to holders of certain Allowed Claims the Liquidating Trust Assets, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

For all federal income tax purposes, holders of Allowed Claims that are the beneficiaries of the Liquidating Trust will be treated as grantors and owners thereof and it is intended that the Liquidating Trust be classified as a liquidating trust under Section 301.77014 of the Treasury Regulations and that such trust is owned by such beneficiaries.  Accordingly, for federal income tax purposes, it is intended that such beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust.  The Liquidating Trust will, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely distributions to holders of Allowed Claims that are the beneficiaries of the Liquidating Trust and not unduly prolong its duration.  The Liquidating Trust will not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.  The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the beneficiaries thereof treated as grantors and owners of the Liquidating Trust.

The Liquidating Trustee shall be authorized to (i) administer and pay taxes, including filing of tax returns, (ii) request an expedited determination of any unpaid tax liability of the Liquidating Trust or Debtors or the Estates under section 505 of the Bankruptcy Code for all taxable periods of the Debtors through the Debtors' liquidation as determined under applicable tax laws, and (iii) represent the interest and account of the Debtors or the Estates before any taxing authority in all matters including any action, suit, proceeding, or audit.

After the Effective Date, in the Liquidating Trustee's sole discretion, the Debtors shall dissolve and shall be deemed to have satisfied all of their obligations, and to have complied in all respects with all legal requirements for dissolution of Delaware corporations under applicable non-bankruptcy law.  The Liquidating Trustee shall cause to be filed certificates of absolution or cancellation as necessary to implement termination of the Debtors.

C.      **Transfer of Assets to the Liquidating Trust**

On the Effective Date, the Debtors will transfer, assign, and deliver to the Liquidating Trust, for the benefit of the beneficiaries thereto, all of their rights, titles, and interests in the Remaining Assets, including Claims and Causes of Action of the Debtors, but excluding any assets, Claims, and Causes of Action waived, exculpated, or released in accordance with the provisions herein, notwithstanding any prohibition of assignability under nonbankruptcy law and all the Remaining Assets will vest in the Liquidating Trust in accordance with section 1141 of the Bankruptcy Code.  The Liquidating Trust will agree to accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the beneficiaries, subject to the terms of the Plan and the Liquidating Trust Agreement.  Except as necessary to effect the terms of the Plan,

43

upon the Debtors' transfer of the Remaining Assets to the Liquidating Trust on the Effective Date, the Debtors will have no reversionary or further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

The amount of Cash that would have been distributed to holders of all Disputed Claims as if such Disputed Claims had been Allowed on the Effective Date shall be held in reserve in the Liquidating Trust pending the resolution of the Disputed Claims, with the amount of each such Allowed Claim to be determined, solely for the purpose of establishing a reserve and for maximum distribution purposes, to be the lesser of (a) the asserted amount of the Disputed Claim Filed with the Bankruptcy Court, or if no Proof of Claim was Filed, listed by the Debtors in the Schedules, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to Bankruptcy Code section 502(c), (c) the amount otherwise agreed to by the Debtors or the Liquidating Trustee, as applicable, and the holder of such Disputed Claim for reserve purposes, and (d) all remaining Cash of the Estates. As Disputed Claims are resolved and either become Allowed or are disallowed by a Final Order, to the extent Cash remains in the Liquidating Trust with respect to such Claims, then such remaining Cash shall be distributed in accordance with ARTICLE VI.

In connection with the transfer of the Remaining Assets, including rights and Causes of Action, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust will vest in the Liquidating Trust and its Representatives, and the Debtors and the Liquidating Trust are authorized to take all necessary actions to effectuate the transfer of such privileges. The Liquidating Trust Agreement shall provide, among other things, that the interests in and to the Liquidating Trust of holders of Allowed Claims that are the beneficiaries of the Liquidating Trust are not transferable or assignable and will not be represented by certificates.

## D.    Funding Expenses of the Liquidating Trust

The Debtors will not be obligated to provide any funding with respect to the Liquidating Trust after they transfer the Remaining Assets to the Liquidating Trust. As more fully described in the Liquidating Trust Agreement, any Cash in the Liquidating Trust will be applied in accordance with the terms of the Liquidating Trust Budget:  first, to the fees, costs, expenses (each of the foregoing in amounts not to exceed amounts approved pursuant to the Liquidating Trust Budget) and liabilities of the Liquidating Trustee; second, to satisfy any other administrative and Wind-Down Expenses of the Liquidating Trust (each of the foregoing in amounts not to exceed amounts approved pursuant to the Liquidating Trust Budget); and third, to the distributions to holders of Allowed Claims s provided for under the Plan.

## E.    Termination of the Liquidating Trust and the Liquidating Trustee

The Liquidating Trust will terminate as soon as practicable, but in no event later than the fifth anniversary of the Effective Date; provided that, on or subsequent to the date six months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust for a finite period if such an extension is necessary to liquidate the Liquidating Trust Assets or to complete any distribution required under the Plan. Notwithstanding the foregoing, multiple extensions may be obtained so long as (i) Bankruptcy

44

Court approval is obtained no more than six (6) months prior to the expiration of each extended term and (ii) the Liquidating Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes.

**F.      Exculpation; Indemnification; Insurance**

The Liquidating Trustee, the Liquidating Trust, the Plan Oversight Committee, and their Representatives will be exculpated and indemnified pursuant to the terms of the Liquidating Trust Agreement.

The Liquidating Trust will maintain customary insurance coverage for the protection of Persons serving as administrators and overseers of the Liquidating Trust on and after the Effective Date.

# ARTICLE IX.

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**A.      Compromise and Settlement of Claims, Equity Interests, and Controversies**

**1.      Generally**

In accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, Causes of Action, and controversies relating to the contractual, legal, and subordination rights that a specified holder of a Claim or Equity Interest may have against the Debtors with respect to any specified Allowed Claim or Equity Interest or any distribution to be made on account of such Allowed Claim or Equity Interest.   The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests and other parties in interest, and that the same is fair, equitable, and reasonable.

**2.      The Ally Settlement**

The Plan is based upon and incorporates the terms and conditions of the Ally Settlement, pursuant to which Ally has contributed substantial value to the Estates throughout the Chapter 11 Cases, including, among other things: (a) debtor-in-possession financing of up to $220 million; (b) consent to use cash collateral pledged to the AFI LOC and AFI Revolver; (c) agreement to serve as the stalking horse bidder for the Debtors' held-for-sale loan portfolio, solely to generate value for the Estates, with a purchase price of approximately $1.6 billion, and without any break-up fee or other customary bid protections; (d) entry into and performance of a shared services

45

agreement with the Debtors to enable the Debtors to continue to operate their businesses during the Chapter 11 Cases; (e) agreement to enter into transition services agreements with Purchasers to allow the implementation of the Asset Sales; (f) continued provision to the Debtors of consumer lending origination support during the Chapter 11 Cases, including to allow implementation of the Asset Sales; and (g) support necessary for the Debtors to satisfy the Consent Obligations, including use of Ally's loan portfolio in implementing loan modification programs. And, on the Effective Date, subject to the terms of the Ally Settlement, Ally will contribute $750 million to fund distributions under the Plan to holders of Allowed Claims. The Confirmation Order will constitute an order of the Bankruptcy Court approving the Ally Settlement. Effective on the Effective Date, in accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the provisions of the Ally Settlement shall constitute a good-faith compromise and settlement of, among other things, all Claims of the Debtors and their Estates, and third parties against Ally as set forth in this ARTICLE IX.

**B.     Release of Liens**

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, ON THE EFFECTIVE DATE AND CONCURRENTLY WITH THE APPLICABLE DISTRIBUTIONS MADE PURSUANT TO THE PLAN AND, IN THE CASE OF ANY SECURED CLAIM, SATISFACTION IN FULL OF THE PORTION OF THE SECURED CLAIM THAT IS ALLOWED AS OF THE EFFECTIVE DATE, ALL MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS AGAINST ANY PROPERTY OF THE ESTATES SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL OF THE RIGHT, TITLE, AND INTEREST OF ANY HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL VEST IN THE LIQUIDATING TRUST.**

**C.     Releases by the Debtors**

**PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING WITH RESPECT TO ALLY THE CONSIDERATION PROVIDED TO THE DEBTORS AND THEIR ESTATES UNDER THE ALLY SETTLEMENT, ON AND AS OF THE EFFECTIVE DATE, THE DEBTOR RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTORS, THE ESTATES, AND, IF APPLICABLE, THE LIQUIDATING TRUST FROM ANY AND ALL CAUSES OF ACTION WHATSOEVER, WHETHER KNOWN OR UNKNOWN, ASSERTED OR UNASSERTED, DERIVATIVE OR DIRECT, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, INCLUDING THOSE CAUSES OF ACTION BASED ON AVOIDANCE LIABILITY UNDER FEDERAL OR STATE LAWS, VEIL PIERCING OR ALTER-EGO THEORIES OF LIABILITY, A THEORY OF DEBT RECHARACTERIZATION, OR EQUITABLE SUBORDINATION LIABILITY, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING THOSE THAT ANY OF THE DEBTORS WOULD HAVE**

46

BEEN LEGALLY ENTITLED TO ASSERT AGAINST A DEBTOR RELEASED PARTY
IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT
ANY HOLDER OF A CLAIM OR INTEREST, THE LIQUIDATING TRUST, OR
OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON
BEHALF OF ANY OF THE DEBTORS OR ANY OF THEIR ESTATES, INCLUDING
THOSE IN ANY WAY RELATED TO THE CHAPTER 11 CASES OR THE PLAN TO
THE FULLEST EXTENT OF THE LAW; **PROVIDED**, THAT AFI STANDS BY AND
RE-AFFIRMS ITS INDEMNIFICATION OBLIGATIONS UNDER ITS AMENDED AND
RESTATED CERTIFICATE OF INCORPORATION REGARDING RESCAP'S
CURRENT AND FORMER DIRECTORS AND OFFICERS TO THE FULL EXTENT OF
DELAWARE LAW; **PROVIDED**, **FURTHER**, THAT THE DEBTORS' RIGHTS TO
ANY INSURANCE SHALL NOT BE ADVERSELY AFFECTED BY THE FOREGOING
RELEASE.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE
BANKRUPTCY COURT'S APPROVAL, UNDER SECTION 1123 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, OF THE DEBTORS'
RELEASE SET FORTH IN THIS ARTICLE IX.C, WHICH INCLUDES BY
REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS
CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY
COURT'S FINDING THAT THE DEBTORS' RELEASE IS:  (1) IN EXCHANGE FOR
THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR
RELEASED PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF
THE CLAIMS RELEASED BY THE DEBTORS' RELEASE; (3) IN THE BEST
INTERESTS OF THE DEBTORS, THE ESTATES, THE LIQUIDATING TRUST AND
ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS; (4) FAIR, EQUITABLE AND
REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY
FOR HEARING; AND (6) A BAR TO THE DEBTORS, THE LIQUIDATING TRUST
AND ANY HOLDER OF A CLAIM OR INTEREST OR OTHER ENTITY WHO
WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF
THE DEBTORS OR ANY OF THEIR ESTATES FROM ASSERTING ANY CLAIM OR
CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTORS' RELEASE.

D.    **Releases by Holders of Claims and Equity Interests**

ON AND AS OF THE EFFECTIVE DATE, THE HOLDERS OF CLAIMS AND
EQUITY INTERESTS SHALL BE DEEMED TO PROVIDE A FULL AND COMPLETE
DISCHARGE AND RELEASE TO THE ALLY SETTLEMENT RELEASED PARTIES
AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CAUSES OF ACTION
WHATSOEVER, WHETHER KNOWN OR UNKNOWN, ASSERTED OR
UNASSERTED, DERIVATIVE OR DIRECT, FORESEEN OR UNFORESEEN,
EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE,
WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR
STATE SECURITIES LAWS, VEIL PIERCING OR ALTER-EGO THEORIES OF
LIABILITY, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO
THE DEBTORS, INCLUDING THOSE IN ANY WAY RELATED TO RESIDENTIAL
MORTGAGE BACKED SECURITIES ISSUED AND/OR SOLD BY DEBTORS OR

47

**THEIR AFFILIATES AND/OR THE CHAPTER 11 CASES OR THE PLAN; PROVIDED, THAT CLAIMS OF THE DEBTORS' DIRECTORS AND OFFICERS AGAINST ALLY PURSUANT TO ALLY'S INDEMNIFICATION OBLIGATIONS AND SECTION 2.2 OF THE ALLY PLAN SUPPORT AGREEMENT (AS WELL AS ANY APPLICABLE INSURANCE RELATED THERETO) SHALL NOT BE RELEASED.**

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, UNDER SECTION 1123 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE IN THIS ARTICLE IX.D, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THIS THIRD PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD, VALUABLE, AND SUBSTANTIAL CONSIDERATION PROVIDED BY THE ALLY SETTLEMENT RELEASED PARTIES; (2) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES, THE LIQUIDATING TRUST AND ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS; (3) FAIR, EQUITABLE, AND REASONABLE; (4) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (5) JUSTIFIED BY TRULY UNUSUAL CIRCUMSTANCES; (6) AN ESSENTIAL COMPONENT AND CRITICAL TO THE SUCCESS OF THE PLAN; (7) RESULTED IN DISTRIBUTIONS TO THE CREDITORS THAT WOULD OTHERWISE HAVE BEEN UNAVAILABLE; (8) THE RESULT OF AN IDENTITY OF INTEREST BETWEEN THE DEBTORS AND THE ALLY SETTLEMENT RELEASED PARTIES REGARDING THE PLAN; AND (9) A BAR TO ANY PARTY ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THIS THIRD PARTY RELEASE AGAINST ANY OF THE RELEASED PARTIES.

FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED IN THE THIRD PARTY RELEASE RELEASES CLAIMS THAT THE FEDERAL NATIONAL MORTGAGE ASSOCIATION OR THE FEDERAL HOME LOAN MORTGAGE CORPORATION HOLDS OR MAY HOLD AGAINST ALLY BANK IN CONNECTION WITH ALLY BANK-HELD MORTGAGE SERVICES RIGHTS, AND EACH OF SUCH PARTY'S RIGHTS ARE PRESERVED WITH RESPECT THERETO.

E.    **Releases by Settling Parties**

SO LONG AS THE JUNIOR SECURED NOTES PLAN SUPPORT AGREEMENT IS IN EFFECT AND HAS NOT BEEN TERMINATED BEFORE THE EFFECTIVE DATE, AND SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MUTUAL RELEASE BY THE SETTLING PARTIES OF ANY AND ALL CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, AGAINST EACH OTHER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' LIQUIDATION, THE CHAPTER 11 CASES, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT

48

MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTORS AND/OR ANY SETTLING PARTY, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN DOCUMENTS AND RELATED DISCLOSURES, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

F.    **Exculpation**

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY AND ALL CLAIMS AND CAUSES OF ACTION ARISING PRIOR TO OR ON THE EFFECTIVE DATE, INCLUDING ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, SOLICITING, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR CONSUMMATING THE PLAN, THE DISCLOSURE STATEMENT OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE TRANSACTIONS OCCURRING IN THE DEBTORS' CHAPTER 11 CASES; PROVIDED, THAT THE FOREGOING PROVISIONS SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL, NON-APPEALABLE ORDER TO BE SOLELY DUE TO THEIR OWN RESPECTIVE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; <u>PROVIDED</u>, <u>FURTHER</u>, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN.**

G.    **Injunction**

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES THAT: (1) HAVE BEEN DISCHARGED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO ARTICLE IX.C, D OR E HEREOF; OR (3) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX.F HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN ARTICLE IX.F), ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE LIQUIDATING TRUST) (OR**

49

THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS, SUITS, CAUSES OF ACTION, JUDGMENTS, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE LIQUIDATING TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS, SUITS, CAUSES OF ACTION, JUDGMENTS, OR LIABILITIES; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE LIQUIDATING TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS, SUITS, CAUSES OF ACTION, JUDGMENTS, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE LIQUIDATING TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS, SUITS, CAUSES OF ACTION, JUDGMENTS, OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR EQUITY INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO SECTION 553 OF THE BANKRUPTCY CODE OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE LIQUIDATING TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES RELEASED OR SETTLED PURSUANT TO THE PLAN; <u>PROVIDED</u>, THAT NOTHING CONTAINED HEREIN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.  SUCH INJUNCTION SHALL EXTEND TO THE

ny-1023124 v10

**SUCCESSORS OF THE LIQUIDATING TRUST, IF ANY, AND TO THEIR RESPECTIVE PROPERTIES AND INTERESTS IN PROPERTY. ANY PERSON INJURED BY ANY WILLFUL VIOLATION OF THIS INJUNCTION SHALL RECOVER ACTUAL DAMAGES, INCLUDING COSTS AND ATTORNEYS' FEES AND, IN APPROPRIATE CIRCUMSTANCES, MAY RECOVER PUNITIVE DAMAGES, FROM THE WILLFUL VIOLATOR.**

**ARTICLE X.**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

**A.      Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to ARTICLE X.B:

(i)      the Bankruptcy Court shall have entered the Confirmation Order, which shall grant final approval of the Plan, the Debtor Releases, the Third Party Releases, the Ally Settlement, and, if applicable, the Asset Sales, all in the form and substance satisfactory to the Debtors, Ally and, if applicable, the Consenting Holders;

(ii)      the Confirmation Order shall not have been stayed, modified, or vacated on appeal and shall be a Final Order;

(iii)      satisfaction of the Consent Obligations shall be provided for in accordance with the terms and conditions of the Ally Settlement and the Platform Asset Purchase Agreement;

(iv)      the Liquidating Trust Agreement shall have been executed;

(v)      the Plan Oversight Committee shall have been appointed in accordance with the terms of the Plan;

(vi)      the Remaining Assets shall have been transferred to the Liquidating Trust;

(vii)      the Professional Fee Escrow Account shall have been funded;

(viii)      all Ally DIP Facility Claims, AFI Revolver Claims and AFI LOC Claims, and additional Claims held by Ally, shall have been Allowed in full and approved by the Bankruptcy Court without subordination of any kind unless otherwise agreed to by Ally, and satisfied on the Effective Date in accordance with the terms of the Plan;

(ix)      the Ally Plan Support Agreement shall remain in full force and effect, and Ally shall have funded the Estates with $750 million on or before the Effective Date;

(x)      the HFS Asset Purchase Agreement shall have been approved by the Bankruptcy Court in form and substance acceptable to the Debtors, if applicable, the Consenting Holders, and the applicable Purchaser;

51

(xi)    the Platform Asset Purchase Agreement shall have been approved by the Bankruptcy Court in form and substance satisfactory to the Debtors, Ally, and the applicable Purchaser;

(xii)    all material governmental and third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by this Plan, including the Asset Sales, shall have been obtained and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(xiii)    at no time shall the Bankruptcy Court have approved the appointment of an examiner with expanded powers;

(xiv)    at no time shall the Bankruptcy Court have approved the appointment of a trustee;

(xv)    so long as the Junior Secured Notes Plan Support Agreement is in effect and has not been terminated before the Effective Date, no reduction in the value of Petition Date Collateral due to (a) the successful challenge of the validity of the Liens on such Petition Date Collateral or (b) a determination that any asset or assets that were designated by a Debtor as being Petition Date Collateral do not constitute Joint Collateral, in an aggregate amount (taking into account additional Joint Collateral that was not specified as Petition Date Collateral) for all such assets that exceeds one hundred million dollars ($100,000,000), based on the Debtors' book value as of February 29, 2012; and

(xvi)    all other actions, documents, and agreements necessary to implement the Plan as of the Effective Date will have been delivered and all conditions precedent thereto will have been satisfied or waived.

## B.    Waiver of Conditions

The Debtors shall have the right to waive one or more of the conditions to Consummation of the Plan set forth in ARTICLE X.A with the consent of (i) Ally, and (ii) solely with respect to the condition set forth in Article X.A.(xv), if the Junior Secured Notes Plan Support Agreement is in effect and has not been terminated before the Effective Date, with the consent of the Consenting Holders, at any time without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

## C.    Effect of Nonoccurrence of Conditions

If each of the conditions to Consummation has not been satisfied or duly waived on or before the date that is one-hundred eighty (180) days after the Confirmation Date, the Debtors, with the consent of Ally, which consent shall not be unreasonably withheld, and after consultation with the Committee, may move the Bankruptcy Court to vacate the Confirmation Order. If the Confirmation Order is vacated pursuant to this provision, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtors, any holders, or any other Entity;

or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Entity in any respect.

## ARTICLE XI.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.    Modification and Amendments

The Debtors may amend, modify, or supplement the Plan pursuant to Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date; provided, that the Debtors obtain the consent, which shall not be unreasonably withheld, of parties to the Plan Support Agreements in accordance with the terms therein.  After the Confirmation Date, but prior to Consummation of the Plan, the Debtors may, (i) with the consent, which shall not be unreasonably withheld, of parties to the Plan Support Agreements in accordance with the terms therein, and (ii) upon consultation with the Committee, Ally, and, if applicable, the Consenting Holders, amend, modify, or supplement the Plan without further order of the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order.

### B.    Effect of Confirmation on Modifications

Pursuant to Bankruptcy Code section 1127(a), entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### C.    Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, prejudice in any manner the rights of the Debtors or any other Entity, or constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XII.

## RETENTION OF JURISDICTION

After the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan under sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim, including Professional Claims for services rendered to the Debtors or the Committee, and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(b)     decide and resolve all matters related to the: (i) granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan, or (ii) reasonableness of the JSN Indenture Trustee Fees and the Informal JSN Group Fees;

(c)     resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which any Debtor is party or with respect to which any Debtor may be liable, and the hearing, determination, and, if necessary, liquidation of any Claims arising therefrom, including Cure Claims pursuant to Bankruptcy Code section 365, (ii) any potential contractual obligation under any executory contract or unexpired lease that is assumed, and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that distributions to holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

(e)     adjudicate, decide, or resolve any motions, adversary proceedings, Causes of Action, disputes, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors, as applicable:  (i) that may be pending on the Effective Date, (ii) arising from or relating to distributions under the Plan, or (iii) related to sections 1141 and 1145 of the Bankruptcy Code;

(f)     enter and implement such orders as may be necessary or appropriate:  (i) to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, or (ii) if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(g)     enter and enforce any order pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code for the sale of property;

(h)     resolve any cases, controversies, suits, disputes, or Causes of Action: (i) that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations in connection with the Plan, or (ii) with respect to the releases, injunctions, and other provisions contained in ARTICLE IX, enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(i)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

54

(j)        enter an order or final decree contemplated under Bankruptcy Rule 3022 concluding or closing the Chapter 11 Cases;

(k)        consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(l)        determine requests for the payment of Administrative Expense Claims or Claims entitled to priority pursuant to Bankruptcy Code section 507;

(m)        hear and determine disputes and other matters:  (i) arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, securities, instruments, or other documents, (ii) concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146, or (iii) involving the existence, nature, or scope of the Plan Injunction, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(n)        enforce all orders previously entered by the Bankruptcy Court; and

(o)        hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

### A.        Immediate Binding Effect

Subject to ARTICLE X.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(g), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with any Debtor.

### B.        Additional Documents

On or before the Effective Date, the Debtor may File with the Bankruptcy Court any and all agreements and other documents that may be necessary or appropriate in order to effectuate and further evidence the terms and conditions of the Plan.

### C.        Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930 and, if applicable, 28 U.S.C. § 3717, as determined by the Bankruptcy Court at a hearing pursuant to Bankruptcy Code section 1128,

shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

### D.    Dissolution of Committee

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and agents shall be released from any further authority, duties obligations and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code; provided, however, that, following the Effective Date, the Committee shall continue to have standing and a right to be heard with respect to (a) Claims and/or applications for compensation by Professionals including, but not limited to, filing applications for payment of Professional Claims in accordance with ARTICLE II.B.1 of the Plan and (b) any appeals of the Confirmation Order that remain pending as of the Effective Date.

### E.    Reservation of Rights

Except as otherwise provided in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the holders of Claims or Equity Interests prior to the Effective Date.

### F.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### G.    Service of Documents

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Residential Capital, LLC
1100 Virginia Dr.
Ft. Washington, Pennsylvania, 19034
Attn: Tammy Hamzehpour

*and*

Morrison & Foerster LLP
Counsel for the Debtors
1290 Avenue of the Americas
New York, NY 10104
Attn: Larren M. Nashelsky, Gary S. Lee, Lorenzo Marinuzzi, and Todd M. Goren

With copies to:

Ally Financial Inc.
200 Renaissance Center
Mail Code 482-B09-B11
Detroit, Michigan 48265
Attn: Mr. William B. Solomon Jr.

  *and*

Kirkland & Ellis LLP
Counsel for Ally Financial Inc. and Ally Bank
601 Lexington Avenue
New York, NY 10022
Attn: Richard M. Cieri, Ray C. Schrock, and Stephen E. Hessler

  *and*

Kramer Levin, Naftalis & Frankel LLP
Counsel for the Committee
1177 Avenue of the Americas
New York, New York 10036
Attn: Kenneth Eckstein and Douglas Mannal

  *and*

Milbank, Tweed, Hadley & McCloy LLP
Counsel for the Informal JSN Group
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Gerard Uzzi

  *and*

Ropes & Gray LLP
Counsel for certain Consenting Claimants
1211 Avenue of the Americas
New York, New York 10036
Attn.: Keith H. Wofford

57

After the Effective Date, the Liquidating Trustee has authority to send a notice to Entities that in order to continue to receive documents pursuant to Bankruptcy Rule 2002, they must File a renewed request to receive documents with the Bankruptcy Court.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**H.      Further Assurances**

The Debtors or the Liquidating Trustee, as applicable, all holders of Claims receiving distributions pursuant to the Plan, and all other Entities shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**I.      Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to Bankruptcy Code sections 105 or 362 or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan and the Confirmation Order shall remain in full force and effect in accordance with their terms.

**J.      Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**K.      Exhibits and Related Documents**

All exhibits and documents Filed in relation to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After any exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website, http://www.kccllc.net/rescap, or the Bankruptcy Court's website, http://www.nys.uscourts.gov (a PACER login and password are required to access documents on the Bankruptcy Court's website).

**L.      Severability of Plan Provisions**

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.      The

Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.    The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

## M.    Closing of Chapter 11 Case

Promptly after the full administration of the Chapter 11 Cases, the Liquidating Trustee shall File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

## N.    Waiver or Estoppel Conflicts

Each holder of a Claim or Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated, by virtue of an agreement made with the Debtors or their counsel, the Committee or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

## O.    Conflicts

Except as set forth in the Plan or unless otherwise ordered by the Bankruptcy Court, to the extent that the Disclosure Statement, any order of the Bankruptcy Court (other than the Confirmation Order), or any exhibit to the Plan or document executed or delivered in connection with the Plan is inconsistent with the terms of the Plan, the terms of the Plan shall control.

Dated: August 23, 2012                Respectfully Submitted,
        New York, New York

                                    _____

                                    Residential Capital, LLC

                                    By:
                                    Title:

ny-1023124 v10