GIBBS & BRUNS LLP
Kathy D. Patrick, Esq. (*pro hac vice*)
Scott A. Humphries, Esq. (*pro hac vice*)
1100 Louisiana, Suite 5300
Houston, TX 77002
Telephone: (713) 650-8805
Facsimile:  (713) 750-0903

-AND-

ROPES & GRAY LLP
Keith H. Wofford, Esq. (KW-2225)
D. Ross Martin, Esq. (DM-2947)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone:  (212) 596-9000
Facsimile:   (212) 596-9090

*Attorneys for the Steering Committee Group of RMBS Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>Residential Capital, LLC, *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

**OBJECTION OF THE STEERING COMMITTEE GROUP OF RMBS
HOLDERS TO THE TRIAXX ENTITIES' MOTION FOR
AUTHORTIY TO ISSUE BANKRUPTCY RULE 2004 SUBPOENAS**

The Steering Committee Group of RMBS Holders (the "Steering Committee Group"), by and through its undersigned counsel, hereby submits this objection to the *Motion of the Triaxx Entities for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony by Settling*

*Certificateholders* (the "Triaxx Motion") [Docket No. 1142]. In support thereof, the Steering Committee Group respectfully represents as follows:

1. The Steering Committee Group consists of nineteen institutional investors[1] with whom the Debtors negotiated the first and larger of the two RMBS Trust Settlement Agreements[2] that are the subject of the Debtors' motion for approval set for hearing on November 5, 2012. Docket No. 320, as supplemented by Docket No. 1176 (the "RMBS Settlement Motion"); *see also* Steering Committee Group Settlement Agreement, Docket No. 1176, Exhibit 2.

2. The Triaxx Entities ("Triaxx") assert they are certificateholders in certain of the trusts at issue in the RMBS Trust Settlement Agreements. Triaxx has filed an objection to the RMBS Settlement (the "Triaxx Objection"), in which it argues that the formula for allocating the settlement consideration among the settling trusts over-allocates recoveries to trusts holding lower quality mortgages. Docket No. 481; *see also* Triaxx Motion at ¶¶ 8-11. In an effort to buttress its theory, Triaxx does not seek discovery concerning the allocation formula, the quality of the mortgages in the Trusts, or the terms of the Governing Agreements. Instead, it demands only one category of discovery: highly detailed, commercially valuable, proprietary information concerning when and at what prices the nineteen institutions in the Steering Committee Group acquired their ResCap RMBS securities.

---

[1] The Steering Committee Group consists of AEGON USA Investment Management, LLC, Angelo, Gordon & Co., L.P., Bayerische Landesbank, BlackRock Financial Management Inc., Cascade Investment, LLC, Federal Home Loan Bank of Atlanta, Goldman Sachs Asset Management, L.P., ING Investment Management Co. LLC, ING Investment Management LLC, Kore Advisors, L.P., Pacific Investment Management Company LLC, Maiden Lane LLC and Maiden Lane III LLC (by the Federal Reserve Bank of New York as managing member), Metropolitan Life Insurance Company, Neuberger Berman Europe Limited, SNB StabFund, The TCW Group, Inc., Teachers Insurance and Annuity Association of America, Thrivent Financial for Lutherans, Western Asset Management Company, and certain of their affiliates, either in their own capacities or as advisors or investment managers.

[2] All descriptions of the RMBS Trust Settlement in this objection are expressly qualified by the terms of the RMBS Trust Settlement. To the extent of any inconsistencies between this objection and the terms of the RMBS Trust Settlement, the RMBS Trust Settlement shall control in all respects.

3.      The Steering Committee Group objects to the Triaxx Motion. The discovery Triaxx seeks is: (a) procedurally improper, (b) irrelevant to any matter before the Court on the RMBS Settlement Motion, and (c) is proprietary and confidential. Triaxx's motion should be denied.

## BACKGROUND

4.      The Steering Committee Group consists of some of the largest and most sophisticated institutional investors in the world. The Steering Committee Group alone represents 25% or more of the holders of one or more classes of RMBS certificates in at least 304 of the 392 RMBS securitization trusts at issue in the RMBS Settlement Motion.

I.   **THE RMBS TRUST SETTLEMENT AGREEMENTS**

5.      Prior to the Debtors' bankruptcy filing, the Steering Committee Group engaged in extensive, arms'-length negotiations with the Debtors over the resolution of tens of billions of dollars in claims arising out of representations and warranties (the "R&W Claims") made by the Debtors in their securitization of residential mortgages. These negotiations culminated in a settlement whereby the Debtors agreed to offer to 392 securitization trusts created by the Debtors (the "Trusts") a share of allowed claims. The RMBS Trust Settlement Agreements provide that each Trust will be afforded the opportunity to assess the settlement and either accept or reject the settlement.

II.  **TRIAXX'S MOTION**

6.      By its motion, Triaxx seeks authority to issue subpoenas to all nineteen institutions in the Steering Committee Group[3] under Rule 2004 of the Federal Rules of Bankruptcy Procedure for the production of the following documents:

---

[3] The Triaxx Motion is also directed at a second group of RMBS holders (the "Talcott Franklin Group") that is party to the second RMBS Trust Settlement Agreement. The Talcott Franklin Group adds 30 additional Trusts to the 304

3

> For all securities in any of the Trusts in which you, directly or indirectly, hold any ownership, right or interest, produce documents sufficient to identify: (a) the CUSIP of your securities, sufficient to identify their tranche within the Trust; (b) the name of the Trust; and (c) for all such securities, the date(s) on which you purchased or otherwise acquired an interest in the securities, the amount you currently hold and the price(s) or other consideration you paid.

*See* Triaxx Motion, Exhibit B at 4 [Docket No. 1142]. In short, Triaxx seeks not only the identification of the particular certificates owned by the nineteen institutions in the Steering Committee Group, but also the date they were acquired and the price paid for them. Additionally, Triaxx seeks the ability to compel attendance of each member of the Steering Committee Group at oral examination no later than twenty days after service of a Rule 2004 subpoena. *See id.*, Exhibit A (Proposed Order) at 2-3.

7. Triaxx claims to need discovery regarding institution-specific holdings and pricing to support its objection concerning the formula by which the settlement consideration is to be allocated among the Trusts. That formula allocates recoveries to the Trusts in relation to their actual and projected collateral losses, as determined by a third party expert. This is the same methodology and formula used in another large RMBS settlement that The Bank of New York Mellon, acting as trustee for 530 Countrywide-issued RMBS trusts, reached with Bank of America in 2011.[4]

8. Triaxx claims the formula provided in the settlement will result in an over-allocation of the settlement proceeds to trusts with lower quality mortgages. This claim is entirely speculative. Triaxx offers no evidence or allegations to support its contention that loan losses are more likely to be associated with representation and warranty violations in trusts with higher quality loans than they are in trusts with lower quality loans.

---

Trusts in which the Steering Committee Group has 25% or more of the holders one or more classes of certificates in the 392 securitization trusts at issue in the RMBS Settlement Motion.

[4] *See* Settlement Agreement between The Bank of New York Mellon, as trustee, and Bank of America Corporation, et al., ¶ 3(c), *available at* http://www.cwrmbssettlement.com/docs/Exh%20B.pdf.

9. Instead, Triaxx premises its objection, and its request for the issuance of Rule 2004 subpoenas, on an implausible conspiracy theory: that the nineteen institutions in the Steering Committee Group, presumably together with the other institutions in the Talcott Franklin Group, plotted to buy billions of dollars of ResCap RMBS certificates at distressed prices in order to negotiate a settlement that (according to Triaxx) favors the lower quality trusts. *See* Triaxx Motion at ¶¶ 8-11.

**OBJECTIONS**

10. Triaxx's Rule 2004 request is improper for three reasons. First, there is a pending proceeding involving the RMBS Trust Settlement. This pending proceeding precludes Triaxx from invoking Rule 2004; instead, any discovery Triaxx seeks must be obtained under Rule 7026, as made applicable here by Rule 9014(c). Second, the investment holdings of the Steering Committee Group, and the dates on which they purchased their securities, do not bear—at all—on the reasonableness or accuracy of the inter-trust allocation formula embodied in the Debtors' settlement. Thus, Triaxx does not seek information that is relevant, much less material, to the issues before the Court in the RMBS Settlement. Finally, the information Triaxx seeks is not discoverable for the independent reason that it is not merely irrelevant: it is highly sensitive and proprietary trading data that should not be produced in these circumstances. For each of these reasons, Triaxx's request should be denied.

11. Examinations pursuant to Rule 2004 "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(a). Generally, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate, discovering assets, examining transactions with the debtor,

5

and determining whether wrongdoing has occurred. *See, e.g.*, *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002). Triaxx's request does not meet this clear standard. Instead, it seeks to compel the production of highly sensitive and proprietary trading information that is entirely irrelevant to the RMBS Settlement Motion, and seeks to do so in a manner that erodes the fundamental protections required to be afforded to the Steering Committee Group under the Federal Rules of Civil Procedure.

I.  **THE REQUEST FOR EXAMINATIONS PURSUANT TO RULE 2004 IS PROCEDURALLY IMPROPER**

12. The well-recognized "pending proceeding" rule precludes the use of Rule 2004 examinations once a contested matter or adversary proceeding has been commenced. *See, e.g.*, *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et seq.*, rather than by a Fed. R. Bankr. P. 2004 examination."). The basis for precluding Rule 2004 examinations concerning a pending contested matter lies in the distinction between the broad nature of a Rule 2004 examination, often described as a fishing expedition, and the more restrictive nature of discovery under the Federal Rules of Civil Procedure. *In re Enron Corp.*, 281 B.R. at 840-41. For example, unlike in discovery under the Federal Rules of Civil Procedure, proponents of Rule 2004 examinations can seek to exclude counsel from representing the witness at oral examination, avoid objections to immaterial or improper questions, and refuse to define issues relevant to the examination beforehand. *See, e.g.*, *id.* at 841.

13. It cannot be disputed that the RMBS Settlement Motion is a contested matter because Triaxx has already filed an objection to the RMBS Settlement. *See* FED. R. CIV. P. 9014. Triaxx's attempt to conduct its fishing expedition under Rule 2004 is a tacit admission that

6

Triaxx could *not* obtain this discovery if it adhered (as it is required to do) to the applicable rules: the requested discovery is quite plainly *beyond* what is permissible under the applicable Federal Rules of Civil Procedure. The pending proceeding rule thus precludes Triaxx from its effort to end run the requirement that it take discovery in compliance with Rule 7026. *See, e.g.*, *In re Washington Mutual, Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009) ("[T]he relevant inquiry is whether the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding."). The Triaxx Motion must be denied on this basis alone.

II.  **THE INFORMATION SOUGHT IS IRRELEVANT TO THE MATTERS BEFORE THE COURT**

14. The Triaxx Motion is also brought for an improper and impermissible purpose. As this Court has observed: "There are limits to the scope of Rule 2004 discovery. It cannot be used for purposes of abuse or harassment and it cannot stray into matters which are not relevant to the basic inquiry." *In re Almatis B.V.*, 2010 WL 4877868, at *4 (Bankr. S.D.N.Y. 2010) (citations and quotations omitted).

15. The "basic inquiry" before the Court on the RMBS Settlement Motion is whether the proposed RMBS Trust Settlement Agreements are "fair, equitable, and in the best interests of the estate." *In re MF Global, Inc.*, 2012 WL 3242533, at * 5 (Bankr. S.D.N.Y. 2012). The discovery that Triaxx seeks, relating to an objection to the inter-trust allocation formula, bears on none of these issues. Triaxx's objection does not challenge the fairness of the settlement to the Debtors or their estate (*i.e.*, it does not assert that the Debtors are paying too much). Nor does Triaxx challenge the fairness of the settlement, in the aggregate, to the trusts and their certificateholders (*i.e.*, it does not assert that the Debtors are paying too little). Rather, Triaxx' objection is concerned solely with a question of how the settling trusts will divide the settlement

7

proceeds among themselves.  Notably, the Trusts are not being forced to accept any settlement, and none of the information Triaxx seeks will inform the trustees' decision to accept or reject the settlement, if the settlement is approved by the Court.

16. Even if the fairness of the inter-trust allocation formula were a relevant inquiry for the Court, the answer to that question would not be found in an examination of the Steering Committee Group's holdings.  The allocation formula either is, or it is not, a reasonable approach to dividing up the settlement proceeds.  Nothing in the individual Steering Committee Group members' holdings bears on that question – so invasive discovery of these holdings will neither support nor rebut Triaxx's objection.  Stated differently, *when* (or at what price) the members of the Steering Committee Group purchased their securities establishes nothing at all concerning whether the allocation formula is reasonable.

### III. TRIAXX HAS NO BASIS TO ALLEGE THAT THE INSTITUTIONAL INVESTORS ENGAGED IN A MASSIVE CONSPIRACY

17. Triaxx bases its request for discovery on the theory that (i) the Steering Committee Group's aggregate holdings are allegedly "concentrated" in trusts holding lower quality mortgages; (ii) this "concentration" created an incentive for the Steering Committee Group members to negotiate an inter-trust allocation formula that favors trusts holding lower quality mortgages; (iii) the members of the Steering Committee Group, therefore had, and carried out, a hidden agenda of purchasing billions of dollars of RMBS in the hope of negotiating and obtaining court approval of a settlement with an allocation formula that favors the holders of certificates in trusts with lower quality mortgages; and (iv) for these reasons, Triaxx needs discovery of the specifics of the individual Steering Committee Group members' purchases of their holdings in order to root out this conspiracy.  This theory is not merely wrong on the facts, it is wholly implausible on its face.

18. First, Triaxx is simply wrong when it argues that the aggregate holdings of the Steering Committee Group members are concentrated in trusts with lower quality mortgages. Triaxx *claims* that 48% of the Steering Committee Group's aggregate holdings are in trusts holding what Triaxx deems to be "lower risk" mortgages[5], and that 52% are in trusts holdings "higher risk" mortgages. *See* Affidavit of Thomas Priore ("Priore Affidavit"), Docket No. 1143, Exhibit 15 (Summary of Investment Allocation by Collateral Type). Triaxx's conspiracy theory rests on this razor-thin margin—and *on nothing else*. As an initial matter, Triaxx completely ignores the fact that, even according to Triaxx's own classification, approximately 29% of the overall trusts hold "lower risk" mortgages. Thus, compared to the entire universe of trusts, the Steering Committee Group's aggregate holdings are actually <u>overweight</u> in lower risk trusts (which constitute 48% of the Steering Committee Group's holdings, but only 29% of the overall trusts at issue here, according to Triaxx's classification).

19. Even setting aside that comparison, the 48% - 52% razor thin margin is still a fiction Triaxx creates by arbitrarily parsing the trusts holding Alt-A mortgages into three sub-groups, and then equally arbitrarily (and without justification) characterizing one of these Alt-A sub-groups as being "lower risk" and the other two as being "higher risk."[6] *Id*. If Triaxx's self-serving "tri-section" of Alt-A mortgages is ignored, Triaxx's own calculations indicate that <u>71%</u> of the Steering Committee Group's aggregate holdings are in trusts holding "lower risk"

---

[5] The criteria for this "lower risk" designation are, notably, not provided by Triaxx.

[6] Triaxx does not provide any evidence suggesting that Alt-A Fixed Loans are "Low Risk" and that Alt-A ARM Loans and Alt-A POA loans are "High Risk." Indeed, unlike subprime borrowers, Alt-A borrowers generally do not have poor credit. Instead, as is explained in the leading treatise on mortgage backed securities: "Alt-A loans are made to borrowers whose qualifying mortgage characteristics do not meet the underwriting criteria established by the GSEs. For instance, the borrower may be self-employed and not able to provide all the necessary documentation for income verification…. *An Alt-A borrower, however, should not be confused with borrowers who have blemished credit…The typical Alt-A borrower will have a credit score high enough to obtain an A standing*, which is especially important to the originator since the score must compensate for the lack of other necessary documentation. Fabozzi, Frank J., The Handbook of Mortgage Backed Securities, 21 (5th ed. 2001) (emphasis added).

9

mortgages (which Triaxx claims are being treated unfairly). Stated directly, the "evidence" Triaxx offers refutes the conspiracy theory that is the premise of its discovery demand.

20. Even if Triaxx's skewed calculations were correct, its theory would still fail because it rests on the false assumption that the holdings and interests of the individual Steering Committee Group members are monolithic. They are not. The Steering Committee Group consists of nineteen different institutions, many of which act on behalf of numerous individual customers, clients, and managed accounts, and each of which has its own unique holdings and interest. Because of this diversity, and because they hold certificates in substantial number in trusts of virtually every loan type, the individual members of the Steering Committee Group are not uniformly served by any particular inter-trust allocation scheme, other than one that provides for a fair and reasonable division of the settlement proceeds among all the settling trusts. Triaxx's conspiracy theory is even more strained when one considers that it also posits that the Steering Committee Group somehow (it does not explain how) coordinated with an entirely separate group of holders (the Talcott Franklin Group), with separate holdings and separate counsel, who signed a separate settlement agreement that included the *same* allocation formula. *See* RMBS Settlement Motion, Exhibit 3 at § 6.01.

21. The implausibility of Triaxx's conspiracy theory is evident from an additional fact: the members of the Steering Committee Group are not even privy to the holdings information of the other members. Because each member of the group considers their specific holdings and pricing information to be extremely sensitive and proprietary, that information is not shared among the group. Instead, the knowledge of the nineteen different institutions that comprise the Steering Committee Group is limited to the collective voting totals the group holds in particular Trusts. *See* Declaration of Kathy Patrick at ¶ 2. Thus, no member of the Steering

Committee Group knows which institutions have holdings in what trusts, so there was no possibility that the nineteen institutions on the Steering Committee Group (or the additional institutions in the Talcott Franklin Group) could have implemented the "hidden agenda" Triaxx posits.  In fact, if Triaxx were to receive the discovery it seeks, Triaxx would be the *only* certificateholder in this case with knowledge of the holdings of *every* member of the Steering Committee Group.

22. Finally, even if the holdings information sought by Triaxx were not plainly irrelevant, Triaxx simply does not need discovery to receive a hearing on its conspiracy theory, no matter how implausible that theory is as a matter of fact and law.  Triaxx's motion contains a detailed (albeit misleading) analysis of the Steering Committee Group's holdings based on the information disclosed in the RMBS Settlement Motion.  *See* Triaxx Motion at ¶¶ 47-50; Priore Affidavit at ¶¶ 33-36, Exhibit 15.  If Triaxx wishes to argue that those holdings bear on the fairness of the inter-trust allocation formula, as it has already done, it has all of the information it needs to do so.

23. For these reasons, the Steering Committee Group respectfully submits that the Triaxx Motion must be denied.  It "stray[s] into matters which are not relevant to the basic inquiry" before the Court.  *In re Almatis B.V.*, 2010 WL 4877868, at *4.  It seeks information that is not relevant or probative to the objection Triaxx has made.  It seeks this information in an attempt to bolster a motive-based argument that is not only implausible, but also one that Triaxx already has more than enough information to make should it continue to wish to do so.

IV. **THE INFORMATION SOUGHT IS PROPRIETARY AND CONFIDENTIAL**

24. The Rule 2004 subpoenas that Triaxx seeks authorization to issue call for the production of some of the most highly confidential, commercially valuable, and proprietary information that investment professionals possess. Information regarding securities holdings, the price paid, and the dates on which they were acquired, reveals highly sensitive trading patterns and investment strategies. The disclosure of this information would be highly prejudicial to the members of the Steering Committee Group, particularly when the party seeking that information is Triaxx.[7]

25. Accordingly, for all of these reasons, the Triaxx Motion should be denied.[8]

---

[7] The Triaxx entities are CDOs whose management, including Thomas C. Priore (who submitted the sole affidavit in support of Triaxx's request for Rule 2004 discovery) has been charged by the Securities and Exchange Commission with a fraud that the SEC alleges involved execution of more than a billion dollars worth of trades that were designed to manipulate the *prices* of securities held by the Triaxx CDOs. *See* SEC Litigation Release No. 21563, *Securities and Exchange Commission v. ICP Management, LLC, IP Securities, LLC, Institutional Credit Partners, LLC, and Thomas C. Priore*; available for download at http://sec.gov/litigation/litreleases/2010/lr21563.htm; *see also SEC v. ICP Asset Mgmt, LLC*, 2012 WL 2359830 (S.D.N.Y. June 21, 2012) (denying motion for summary judgment by Triaxx managers). The SEC alleges the fraudulent scheme included a trade involving at least one security for which Debtor RALI, Inc. was the Depositor. *See* SEC Complaint at Paragraph 39 (describing allegedly manipulative Trade involving "RALI 2007 Bonds"); *see also id.* ¶ 2 ("In total, ICP and Priore directed more than a billion dollars of trades by the Triaxx CDOS at what they knew were inflated prices."). Mr. Priore is the individual who signed the sole affidavit in support of Triaxx's Motion. As a result, the SEC's ongoing fraud allegations against him are a relevant consideration for the Court. Given these allegations, Triaxx's demand that it (and its management) should be permitted to gain access to sensitive and proprietary price and trading data from 19 of the largest investors in the world should be rejected.

[8] By filing this objection, the Steering Committee Group expressly reserves, and does not waive, any and all objections that it may have pursuant to FED. R. CIV. P. 45 to any subpoenas that may be served, including without limitation that the trading history constitutes trade secrets or other confidential research, development or commercial information. *See* FED. R. CIV. P. 45(c)(3)(B)(i) (quashing or modifying a subpoena).

Dated: August 24, 2012
New York, New York

*/s/ Keith H. Wofford*

Kathy D. Patrick, Esq. (*pro hac vice*)
Scott A. Humphries, Esq. (*pro hac vice*)
GIBBS & BRUNS LLP
1100 Louisiana, Suite 5300
Houston, TX 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

-AND-

ROPES & GRAY LLP
Keith H. Wofford, Esq. (KW-2225)
D. Ross Martin, Esq. (DM-2947)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Attorneys for the Steering Committee Group of RMBS Holders*