Hearing Date and Time: September 11, 2012 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: August 24, 2012 at 4:00 p.m. (Prevailing Eastern Time)

Talcott J. Franklin
Talcott Franklin P.C.
208 North Market Street, Suite 200
Dallas, Texas 75202
Phone: (214) 736-8730
Fax:   (877) 577-1356
tal@talfranklin.com

Aaron R. Cahn
Leonardo Trivigno
Carter, Ledyard & Milburn LLP
2 Wall Street
New York, New York 10005
Phone: (212) 732-3200
bankruptcy@clm.com

Thomas P. Sarb
Robert Wolford
Miller Johnson
Calder Plaza Building
250 Monroe Avenue NW, Suite 800
Grand Rapids, MI 49503-2250
Phone: (616) 831-1748
sarbt@millerjohnson.com

*Attorneys for the Talcott Franklin Group Investors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                            :    Case No.: 12-12020 (MG)
In re                                       :
                                            :    Chapter 11
RESIDENTIAL CAPITAL, LLC, et al.,           :
                                            :    Jointly Administered
                Debtors.                    :
----------------------------------------------------------------x

**JOINDER OF THE TALCOTT FRANKLIN GROUP INVESTORS TO THE
OBJECTION OF THE STEERING COMMITTEE GROUP OF RMBS HOLDERS
TO THE TRIAXX ENTITIES' MOTION FOR AUTHORITY
TO ISSUE BANKRUPTCY RULE 2004 SUBPOENA**

The Talcott Franklin Group Investors (as hereinafter defined) by their counsel, Talcott

Franklin, P.C., Carter Ledyard & Milburn LLP, and Miller Johnson, respectfully submit this

Joinder to the Objection of the Steering Committee Group of RMBS Holders (the "Steering Committee Objection") [Docket No. 1254] to the Triaxx Entities Motion for Authority to Issue Bankruptcy Rule 2004 Subpoena (the "Triaxx Motion") [Docket No. 1142]. In support of Joinder, the Talcott Franklin Group Investors respectfully state the following:

1. The movants (the "Talcott Franklin Group Investors") are over 50 institutions who hold and/or control interests in notes, bonds and/or certificates (collectively, the "Securities") backed by residential mortgage loans held by certain of the securitization trusts (the "RMBS Trusts"). The Talcott Franklin Group Investors hold or control 25% or more of one or more classes of Securities in at least 189 RMBS Trusts of the 392 RMBS Trusts at issue in the Amended and Restated RMBS Trusts Settlement motion.

2. The RMBS Trusts hold claims (each, a "Rep and Warranty Claim"), as defined in § 101(5) of the Bankruptcy Code, against the Debtors, including arising out of alleged breaches of representations and warranties contained in Pooling and Servicing Agreements (the "PSAs"), Assignment and Assumption Agreements, Indentures, Mortgage Loan Purchase Agreements and/or other agreements governing the sale and administration of residential mortgage loans sold to the Trusts (the "Governing Agreements").

3. The Rep and Warranty Claims of the Talcott Franklin Group Investors are based on breaches of warranties about the quality, nature, history, and characteristics of the loans, and failures to remedy such breaches of warranty as required by the Governing Agreements of the RMBS Trusts in connection with sales of residential mortgage loans to the RMBS Trusts by certain of the Debtors and on failures to service those loans in accordance with the Governing Agreements, which required the Debtors acting as "servicer" of mortgage loans held by the RMBS Trusts.

2

4.     The Talcott Franklin Group Investors have agreed, in an Amended and Restated RMBS Trust Settlement Agreement dated as of August 15, 2012, (the "RMBS Trust Settlement Agreement"), which has been presented to this Court for approval, to direct the Trustees of the 189 RMBS Trusts in which Talcott Franklin Group Investors hold or control 25% or more of the voting rights of one or more classes of Securities to resolve the Rep and Warranty Claims against the Debtors. The Talcott Franklin Group Investors are appearing in this bankruptcy at this time in opposition to the Triaxx Motion.

5.     The Talcott Franklin Group Investors hereby object to the Triaxx Motion essentially for the reasons asserted in the Steering Committee Objection, specifically that (i) the Triaxx Motion is procedurally improper, (ii) the Triaxx Motion seeks irrelevant information, and (iii) the Triaxx Motion seeks highly confidential information even though sufficient public information has been filed in this Court. See Debtors' Motion for Entry of an Order Under Bankruptcy Code Section 365 and Bankruptcy Rule 6006 Authorizing the Debtors to Assume Plan Support Agreements with Steering Committee Consenting Claimants, Plan Support Agreement ("Steering Committee Plan Support Agreement"), Exhibit F [Docket No. 318]; Debtors' Motion for Entry of an Order under Bankruptcy Code Section 365 and Bankruptcy Rule 6006 Authorizing the Debtors to Assume Plan Support Agreements with Talcott Franklin Consenting Claimants, Plan Support Agreement, Exhibit F [Docket No. 319] (collectively, with the Steering Committee Plan Support Agreement, the "Plan Support Agreements"). For the reasons set forth in the Steering Committee Objection, the Triaxx Motion should be denied.

6.  There are additional reasons why the Triaxx Motion should be denied as to the Talcott Franklin Group Investors. *First*, the Talcott Franklin Group Investors did not negotiate or participate in the creation of the Allocation Formula,[1] which is the focus of the Triaxx Motion.

7.  In 2011, some of the Talcott Franklin Group Investors decided to pursue various claims against sellers and servicers of the Loans and their affiliates, including Ally Financial Inc. ("AFI"). On behalf of those investors, Talcott Franklin P.C. (the "Firm") contacted AFI and Residential Capital LLC ("ResCap") and began discussing a means to resolve their dispute. When negotiations failed to progress as hoped and bankruptcy rumors concerning ResCap became more prominent, Talcott Franklin P.C., on behalf of certain members of the Talcott Franklin Group Investors (the "Directing Investors"), directed the Trustee of over 20 Trusts to commence an action against AFI asserting: (a) breaches of representations and warranties; (b) breaches of servicing obligations; (c) conversion; and (d) piercing the corporate veil. That direction, accompanied by an offer of reasonable indemnity as the Trustee might require against the costs, expenses, and liabilities to be incurred, represented the only credible threat of suit against AFI on behalf of the Trusts.[2]

8.  As the sixty-day time limit for the Trustee to act on the direction ran, certain Debtors and AFI entered into a non-disclosure agreement with certain of Talcott Franklin P.C.'s clients (the "NDA Investors"). The NDA Investors' negotiations with AFI and ResCap were focused on broad and significant goals that benefited all investors in the Trusts. Some of the goals of the negotiations from the NDA Investors' perspective were to: (a) ensure a minimally disruptive servicing transition from ResCap entities to a prospective purchaser of the servicing

---

[1] Undefined terms have the meanings given to them in the Triaxx Motion.

[2] MBIA had previously filed suit against certain of the Debtors, but had not filed suit against AFI. See MBIA Ins. Co. v. Residential Funding Co., LLC, Index No. 603552/08 (N.Y. Sup. Ct.)

4

rights and obligations, which would benefit both borrowers and the Trust investors, while maximizing the amounts obtained as part of any sale of servicing rights; (b) obtain as much of the proceeds of any sale of servicing rights as possible to compensate investors in the Trusts; (c) preserve claims against non-ResCap entities related to the servicing of the Trusts; (d) obtain compensation for the Trusts' claims, including the Rep and Warranty claims; (e) require AFI to contribute funds to pay investor claims; and (f) ensure that all investors in a Trust would have the opportunity to evaluate and vote for or against a settlement, and that a Trust could choose to "opt out" of the settlement under appropriate circumstances.

9. Negotiations continued until AFI informed Talcott Franklin P.C. that ResCap was planning to file for Chapter 11 relief in less than four days' time. Shortly thereafter, the Talcott Franklin Group Investors also learned that the Debtors were negotiating a settlement with the Steering Committee Group of RMBS Holders, that ResCap wanted to settle with both groups, and that the settlement would contain the provisions that Talcott Franklin P.C. had requested and with regard to which the Firm had already put Trusts in a position to enforce through the Directing Investors.

10. Upon receipt of the draft settlement agreement, Talcott Franklin P.C. and the NDA Investors saw for the first time the Allocation Formula as it currently appears in the RMBS Settlement Agreement. Talcott Franklin P.C., which handled the negotiations on behalf of the NDA Investors, never negotiated any aspect of the Allocation Formula. Instead, Talcott Franklin P.C. focused its attention during the short time-frame on the goals outlined above. At that point, the Firm was concerned with two issues: (a) language that, in the Firm's estimation, waived claims against non-ResCap entities involved in servicing the Loans; and (b) that the short time frame for Trustee approval might not have given other investors or the Trustees an adequate opportunity to evaluate the settlement.

11. As a consequence, the NDA Investors did not enter the settlement until the eleventh hour, when those issues were resolved to their satisfaction. On the first issue, the Talcott Franklin settlement agreement contained express language preserving claims against non-ResCap entities involved in the servicing of the Loans, which differed from the Steering Committee Group of RMBS Holders agreement. On the second issue, the NDA Investors accepted ResCap's language, as they rightly predicted that the planned 45-day approval process would be impossible to follow because, among other things, the PSAs at issue required a 60-day period for the Trustees to act.

12. The Triaxx Motion seeks discovery purportedly to assist it in understanding the "inequitable Allocation Formula." Triaxx Motion, ¶ 55. Even assuming the motion was procedurally proper and the information sought was relevant – both of which are false assumptions (see Steering Committee Objection, ¶¶ 12-16) – discovery from the Talcott Franklin Group Investors would shed no light on the Allocation Formula because the Talcott Franklin Group Investors never negotiated with the Debtors or the Steering Committee Group of RMBS Holders on the Allocation Formula.

13. *Second*, assuming for the sake of this motion only that the fairness of the Allocation Formula is relevant – and it is not (see Steering Committee Objection, ¶¶ 14-16) – all of the information that Triaxx needs to evaluate the Allocation Formula, i.e., the identities of the Steering Committee Group of RMBS Holders and the Talcott Franklin Group Investors and their aggregate holdings, is already publicly available. See Plan Support Agreements, Exhibit F [Docket Nos. 318 and 319]. Discovery of the dates and prices at which the Securities were purchased would have no bearing on the fairness of the Allocation Formula.

7072697.3

14.     *Third*, the Triaxx Motion is also unreasonably broad as it relates to the Talcott Franklin Group Investors. The Triaxx Motion seeks discovery from all current members of the Talcott Franklin Group Investors, regardless of whether they were members of the group at the time of the negotiations.

15.     When the Talcott Franklin Group Investors first began negotiating with the Debtors, the group consisted of less than 30 investors. A smaller sub-group of these investors were Directing Investors and/or NDA Investors. Since the filing of these bankruptcy cases, the Talcott Franklin Group Investors have increased to over 50 investors. The Triaxx Motion seeks document production from, and depositions of, *all* current members of the Talcott Franklin Group Investors despite the fact that only a small fraction of them (the NDA Investors) participated in the negotiations of the RMBS Settlement Agreement, and, as stated above, *none* of them participated in the negotiation of the Allocation Formula. For this additional reason, the Triaxx Motion should be denied.

16.     *Fourth*, the Talcott Franklin Group Investors did not coordinate with the Steering Committee Group of RMBS Holders during the negotiations of the RMBS Trust Settlement Agreement. Talcott Franklin P.C. has never discussed the RMBS Trust Settlement Agreement with any member of the Steering Committee Group of RMBS Holders. Further, Talcott Franklin P.C. did not discuss the RMBS Settlement Agreement with counsel for the Steering Committee Group of RMBS Holders until after the Bankruptcy was filed and coordination among counsel became necessary.

17.     For each of these reasons, as well as for the reasons set forth in the Steering Committee Objection, the Triaxx Motion should be denied in its entirety.

7072697.3

WHEREFORE, the Talcott Franklin Group Investors respectfully requests that the Court enter an order (i) denying the Triaxx Motion in its entirety, and (ii) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 24, 2012

**TALCOTT FRANKLIN GROUP INVESTORS**

By:    /s/ Aaron R. Cahn
Aaron R. Cahn
Leonardo Trivigno
Carter, Ledyard & Milburn LLP
2 Wall Street
New York, New York 10005
(212) 732-3200
bankruptcy@clm.com

Thomas P. Sarb
Robert D. Wolford
Miller Johnson
Calder Plaza Building
250 Monroe Avenue NW, Suite 800
Grand Rapids, MI 49503-2250
(616) 831-1700
sarbt@millerjohnson.com

Talcott J. Franklin
Talcott Franklin P.C.
208 North Market Street, Suite 200
Dallas, Texas 75202
Phone: (214) 736-8730
Fax:    (877) 577-1356
tal@talfranklin.com

*Attorneys for the Talcott Franklin Group Investors*