Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL CAPITAL, LLC., et al. | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**STATEMENT OF ALLY FINANCIAL INC. AND**
**ALLY BANK IN SUPPORT OF STIPULATION AND**
**PROPOSED ORDER RESERVING RIGHTS WITH RESPECT TO DEBTORS'**
**MOTION TO APPROVE SUBSERVICING AGREEMENT WITH ALLY BANK**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Ally Financial Inc. ("***AFI***") and Ally Bank (together with AFI, "***Ally***") submit this statement in support of the *Stipulation and Proposed Order Reserving Rights with Respect to Debtors' Motion for Interim and Final Orders Under Bankruptcy Code Sections 105(a) and 363 Authorizing the Debtors to Continue to Perform Under the Ally Bank Servicing Agreement In the Ordinary of Business* (the "***Stipulation***"), which resolves certain disputes between Ally and the Committee[1] regarding the Debtors' Motion to perform under the Servicing Agreement with Ally Bank, and defers potential litigation on certain issues until a later stage of these cases.

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Stipulation.

**STATEMENT**

I.    **Resolution of the Committee's Objections in the Stipulation**

Due largely to the Court's flexibility, its efforts to move these chapter 11 cases forward, and its encouragement to the parties to resolve the Committee's objection given the Examiner's pending investigation, the parties entered into the Stipulation on August 27, 2012 after weeks of negotiations. The Stipulation effectuates a comprehensive reservation of rights on the key issue in dispute – payment of the Indemnification Obligation.[2] Specifically, to facilitate at least temporary peace with respect to the Committee's objections, AFI has agreed to fund an escrow (the "*Escrow Account*") during these cases equal to the payments made by GMACM to Ally Bank pursuant to the Indemnification Obligation following the Petition Date, plus the additional amounts that GMACM is required to make with respect to the Indemnification Obligation upon and after approval of the Stipulation. The Escrow Account will be subject to the exclusive jurisdiction of this Court and will remain in place until an agreement of the parties is reached or upon a further order of the Court.

Ally firmly believes that entry into the Stipulation is yet a further accommodation that Ally is providing to the Debtors during these chapter 11 cases to aid the Debtors' efforts to maximize the value of their estates, which Ally hopes will assist its own recoveries for the benefit of the United States taxpayers. The DOJ/AG Settlement explicitly places all primary liability on the Debtors to perform the loan modifications that are the subject of the Indemnification Obligation. AFI has zero liability for the loan modifications unless the Debtors have defaulted under the DOJ/AG Settlement. And, if the Debtors were to default, their servicing platform would no longer be a viable operating servicing platform acceptable to the

---

[2] The description of certain terms of the Stipulation herein is for convenience and is superseded in all respects by the actual terms of the Stipulation.

1

governmental authorities regulating such operations.

Upon agreeing to the Escrow Account and reservation of rights, Ally thought that the Committee's objections to the Motion had been resolved. But the Committee then raised more issues concerning provisions in the Interim Order that had been highly negotiated between the Debtors and Ally Bank, as well as vetted extensively with the FDIC.

The biggest additional point of contention related to the date upon which Ally Bank would be permitted to provide a 120-day notice of termination without cause under the Servicing Agreement to move some or all of the servicing of its mortgage loans to another servicer. Notably, the majority of the mortgage loans serviced pursuant to the Servicing Agreement underlie the mortgage servicing rights ("*MSR*") assets held at Ally Bank. Provisions that allow for termination without cause in servicing agreements are standard in the banking industry and afford banks the necessary flexibility they require to preserve the economic value of their mortgage assets in the face of changing business conditions for underperformance on the part of the servicer.

The Interim Order contained a delicately struck compromise between the Debtors and Ally Bank, with critical non-objection from the FDIC, concerning each party's termination rights: Ally Bank agreed to defer sending any 120-day notice of termination under the Servicing Agreement until 90 days after the Petition Date, and the Debtors agreed not to move to reject the Servicing Agreement for 90 days after the Petition Date. Further, if the Debtors chose to reject the Servicing Agreement, they would provide Ally Bank with 120 days' notice of such rejection.

The compromise concerning termination rights in the Interim Order involved substantial complexity. The MSR is an asset that belongs to Ally Bank, not the Debtors. The Debtors' asset is a prepetition servicing contract that may be terminated on 120-days' notice according to its

2

terms. Ally Bank did not have any intention at the outset of the chapter 11 cases to send termination notices related to servicing of substantially all of its mortgage loans; however, it must preserve its ability to manage the economic value of these assets.

At the same time, the Ally Bank MSR, although not part of the Debtors' estates, was believed by the Debtors to be a source of potential value in relation to the Debtors' sale of their servicing platform. Indeed, the Debtors have offered the Servicing Agreement for assumption or rejection in connection with the platform sale. Nationstar, however, has not listed the Servicing Agreement on its list of contracts to be assumed.[3] Notwithstanding that fact, and that the Debtors' carefully negotiated construct that does not require Ally Bank's subservicing to be included as part of the platform sale,[4] the Committee and the Debtors maintained during negotiations over the Stipulation that it was essential for Ally Bank not to issue any termination notice relating to its MSR before the platform sale hearing. For the record, neither AFI nor Ally Bank has any intention of disrupting the Debtors' businesses, but Ally Bank must maintain its ability to manage its MSR and other assets for the benefit of its shareholder, particularly in the context of the sale of the servicing platform.

As a compromise, Ally Bank has agreed in the Stipulation to further defer providing any 120-day without cause termination notice under the Servicing Agreement. Instead, Ally Bank may terminate the Servicing Agreement with respect to all or some of Ally Bank's mortgage loans from and after the earlier of (a) ten days after the platform sale hearing and (b) December 10, 2012. The Debtors must use reasonable best efforts to complete the transfer of

---

[3]  *See Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* [ECF No. 924].

[4]  *See Amended and Restated Asset Purchase Agreement by and among Nationstar Mortgage LLC and Residential Capital, LLC, Residential Funding Company, LLC, GMAC Mortgage, LLC, Executive Trustee Services, LLC, ETS of Washington, Inc., EPRE LLC and RFC Borrower LLC*, dated June 28, 2012. [ECF No. 534].

3

the servicing of such loans within 60 days following the receipt of a termination notice and shall, in any event, complete the transfer in no more than 120 days.

The deferral of Ally Bank's termination rights under the Servicing Agreement is conditioned upon (a) the Debtors and Ally Bank working in good faith to negotiate reasonable information sharing and cooperation standards, which will be filed with the Court and will help Ally Bank independently manage its MSR, and (b) Ally Bank paying certain exit fees under the Servicing Agreement. Further, the Stipulation continues the requirement of the Interim Order that the Debtors provide Ally Bank with 120 days' notice of any motion to reject the Servicing Agreement.

## II. Ally Continues to Strongly Dispute the Committee's Objections to the Servicing Agreement

On May 15, 2012, the Court entered the Interim Order. The Committee has objected to the proposed final order, raising concerns about the Servicing Agreement centered upon the Indemnification Obligation, the payments by the Debtors to Ally Bank in relation to this Obligation, and the relationship of the Obligation to a January 30, 2012 support letter among AFI, GMACM, and ResCap.[5] With respect to these concerns, the Committee has stated that it believes Ally Bank should be paid in full in relation to the Indemnification Obligation, but that payment should come from AFI, rather than the Debtors.[6] The bases for the Committee's position are (a) the Committee's belief that AFI is jointly and severally liable for the Debtors' obligations under the DOJ/AG Settlement, (b) the Committee's belief that the Indemnification

---

[5] The Committee filed an initial objection to the Motion on June 11, 2012 [ECF No. 303] and the Debtors and Ally filed replies to that objection [ECF Nos. 367 and 385]. The Committee subsequently informed the Court at several status conferences that its primary objection to the Servicing Agreement related to the Indemnification Obligation, but it has not filed any pleadings in relation to that objection.

[6] *See* Transcript of Record at 28, 33-34, *In re Residential Capital LLC, et al.,* No. 12-12020 (Aug. 1, 2012)*; see also* Transcript of Record at 100, *In re Residential Capital LLC, et al.,* No. 12-12020 (July 24, 2012).

4

Obligation is severable from the rest of the Servicing Agreement,[7] and (c) the Committee's observation that AFI has issued a guarantee to Ally Bank of certain obligations, including GMACM's performance under the Servicing Agreement.[8]

Ally feels strongly that GMACM must pay all Indemnification Obligations as administrative expenses of these chapter 11 cases for the Debtors to remain in compliance with the DOJ/AG Settlement and for Ally to continue to support the Debtors.[9] Furthermore, if the dispute were to be litigated, Ally would be prepared to prove to the extent in dispute, at an evidentiary hearing, among other things, that:

- The prepetition payments that have been made to Ally Bank by GMACM in relation to the Indemnification Obligation have been (a) necessary for the Debtors to comply with the DOJ/AG Settlement, (b) made as a condition of a comprehensive support package provided by Ally to the Debtors, (c) made as a necessary component for Ally Bank to continue doing business on any basis with the Debtors in chapter 11, and (d) made as required to honor amounts owed to Ally Bank under applicable law and regulatory requirements.

- As part of their efforts to reach the DOJ/AG Settlement, ResCap and its subsidiaries repeatedly sought Ally Bank's permission to use Ally Bank's loans for potential loan modifications with the express offer to indemnify Ally Bank for any losses caused by those modifications, and then contractually agreed to do so in the Servicing Agreement.

- Ally Bank is required by law to engage in business actions on market terms and in the case of dealing with an affiliate, on terms no less than Ally Bank would require of an unaffiliated third party.[10] Accordingly, the Servicing Agreement reflects industry standard terms and was negotiated by Ally Bank, not AFI, and GMACM at arms' length.

- Per industry standards, the Servicing Agreement contains the terms and delegation of authority upon which the servicer (GMACM) may modify the

---

[7] Transcript of Record at 33, *In re Residential Capital LLC, et al.,* No. 12-12020 (Aug. 1, 2012).

[8] Transcript of Record at 14, *In re Residential Capital LLC, et al.,* No. 12-12020 (July 26, 2012).

[9] *See Ally-ResCap Settlement and Plan Sponsor Agreement* dated May 14, 2012 [ECF No. 6, Ex. 8]; *see also* Marano Declaration, Ex. 1 (Addendum to Federal and State Settlement Agreements) at ¶ 8(c).

[10] Federal regulations require that agreements between Ally Bank and its affiliates be negotiated in good faith and on an arm's-length basis. 12 U.S.C. § 371c-1 ("**Reg. W**").

5

owner's (Ally Bank) loan portfolio.

- The Indemnification Obligation is not severable from the Servicing Agreement.

- GMACM is obligated to pay Ally Bank for all postpetition modifications to Ally Bank's loans as a use of Ally Bank's property during the chapter 11 cases, and the Indemnification Obligations are administrative expenses.

- Applicable federal regulations require that the Debtors honor their obligations to Ally for Ally to support the restructuring, and structuring transactions among the Debtors and Ally leading up to these chapter 11 cases so that all obligations among the parties were honored was a key component for Ally to support and continue to do business with the Debtors during these chapter 11 cases.

- Ally Bank would have terminated the Servicing Agreement if GMACM did not honor the Indemnification Obligation.

- The Debtors have primary liability under the DOJ/AG Settlement for the consumer support obligations, and AFI is secondarily liable under the DOJ/AG Settlement only if the Debtors fail to perform their obligations – and – if the Debtors fail to perform their obligations under the DOJ/AG Settlement, their servicing platform would no longer be a viable servicing platform.

- AFI's guarantee to Ally Bank of obligations owed by the Debtors to Ally Bank is *not* a guarantee in favor of the Debtors; rather, it merely memorializes AFI's statutory obligation as a United States Bank Holding Company to serve as a source of strength for Ally Bank,[11] but has no effect on GMACM's obligations to Ally Bank under the Servicing Agreement.

- AFI's January 30, 2012 support letter does not limit in any way the Indemnification Obligation that GMACM owes to Ally Bank.

- Ally urged the Debtors and the Committee to immediately make any necessary disclosures relating to the Motion, and Ally is not responsible for the Debtors' disclosure in these cases.

- Ally disputes several statements in the Marano Declaration, including statements relating to the AFI DIP Facility. That facility was offered to the Debtors as an accommodation for certain obligations related to the repurchase of Ginnie Mae whole loans and general corporate purposes to meet liquidity needs. AFI refused to offer a debtor-in-possession loan for the sole purpose of paying for the Indemnity Obligation because, among other things, AFI asserted that the Indemnity Obligation was, and is, payable as an administrative expense from the Debtors' unencumbered assets.

---

[11] 12 U.S.C. § 1831o-1(a); *see also* 12 C.F.R. § 225.4(a).

6

- AFI is obligated to the governmental authorities and regulators under the DOJ/AG Settlement to withdraw its support for the Debtors in these chapter 11 cases if the Debtors do not comply with the DOJ/AG Settlement.

The Court, however, appropriately recognized that the Committee's concerns over the Servicing Agreement could implicate matters that are the subject of the ongoing investigation by the Examiner. Ally is confident that the Examiner's investigation will confirm there were no improper actions taken by AFI, Ally Bank, or any other party in relation to Servicing Agreement, and that the Indemnification Obligation should be enforced as part of the Servicing Agreement.

**III.    The Servicing Agreement Is a Key Component of a Comprehensive Support Package That Ally Is Providing In Support of the Debtors' Prearranged Chapter 11 Plan**

To better understand Ally's perspective on the Committee's concerns regarding the Motion, Ally believes it is helpful for the Court and parties in interest to understand how Ally views the Motion in the context of these cases. Both before and during the chapter 11 cases, Ally has committed substantial resources to the Debtors. Specifically, Ally has provided (and continues to provide) a comprehensive and integrated package of support that includes: (a) a shared services agreement; (b) consensual use of AFI's cash collateral; (c) a debtor-in-possession financing facility in an amount up to $220 million; (d) a good-faith commitment to negotiate a transition services agreement; (e) a proposed settlement involving $750 million of cash consideration to fund distributions to creditors under a chapter 11 plan;[12] and (f) consumer mortgage loan origination support from Ally Bank that is essential to preserving the value of the Debtors' estates. And most directly relevant for present purposes, Ally Bank negotiated at arm's length the Servicing Agreement with GMACM to allow the Debtors to maintain their servicing platform through and until their contemplated asset sale as part of a prearranged chapter 11 plan.

---

[12]    The Debtors' chapter 11 plan is an exhibit to their motion seeking an extension of exclusivity. [ECF No. 1248].

7

Providing this substantial support to the Debtors has required Ally to strike a delicate balance between many competing interests. Most significantly, AFI is 74% owned by the United States Department of Treasury (and thus the United States taxpayers). AFI is also the ultimate parent company of the Debtors – and a senior creditor with substantially more than $1 billion in senior secured claims against the Debtors.

After more than $8 billion in capital injections and $3.4 billion more in asset purchases designed to benefit the Debtors (always on arms' length terms) since the 2008 financial crisis, Ally could not, consistent with its fiduciary duties, continue to pour billions of dollars into the Debtors with little hope of any return for the benefit of the Debtors' other creditors. AFI owes a duty to its shareholders to maximize its value and seeks to repay the funds that it received from the federal government's Troubled Asset Relief Program. Ally Bank owes a duty to maintain the safety and soundness of the Bank, which was linked to the United States government's support of General Motors.

Additionally, AFI and Ally Bank are regulated entities. AFI, as a bank holding company since December 2008, is strictly regulated by the Federal Reserve.[13] Likewise, Ally Bank is closely regulated by the Federal Deposit Insurance Corporation ("**FDIC**") and the State of Utah.[14] The regulatory overlay in these cases cannot be overstated, especially given the nature of the Debtors' business and their relationships with other government entities and associations, including Freddie Mac and Fannie Mae.

AFI and Ally Bank are sophisticated financial entities, as are nearly all of the creditors in these chapter 11 cases, and they opted for the most public forum possible to resolve the Debtors'

---

[13]  12 U.S.C. §§ 1841, et seq.

[14]  12 U.S.C. §§ 1801, et seq.

8


issues – this Court. Ally will of course fully cooperate with the examination. But it is important for all parties in interest to understand that Ally is not offering settlement consideration based upon the meritless allegations that have been made against it, but is doing so instead for an expeditious resolution necessary for a government-owned and government-regulated United States Bank Holding Company and FDIC-regulated bank.[15]

## CONCLUSION

The Committee has attempted to create a complex dispute concerning the Servicing Agreement, as it relates to Ally's overall package of support in these cases based upon unsubstantiated allegations. There is much more that Ally could provide to address the issues raised by the Committee, but nothing more needs to be said at this time. The Stipulation is a carefully crafted peace offering that is in the best interests of all involved and should be approved by the Court.

New York, New York  
Dated: August 27, 2012

/s/ Ray C. Schrock
Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank

---

[15] The United States has filed a statement concerning the Motion expressing concern over a suspension of solicitation activity announced by the Debtors in the Marano Declaration [ECF No. 1165]. After the statement was filed, Ally contacted the United States to clarify that the United States was *not* taking a position in its statement on (a) whether AFI was jointly and severally liable under the DOJ/AG Settlement and (b) whether AFI was required under the DOJ/AG Settlement to stop supporting the Debtors in these chapter 11 cases if AFI were to step in for the Debtors and perform any of their obligations under the DOJ/AG Settlement. Ally believes that these clarifications are important for the record.