Hearing Date: September 11, 2012, 2 pm

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

# NON-ALLY UNDERWRITER DEFENDANTS' MOTION IN SUPPORT OF LOAN FILE DISCOVERY FROM THE DEBTORS AND, IF NECESSARY TO THAT PURPOSE, RELIEF FROM THE AUTOMATIC STAY

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii
INTRODUCTION ...................................................................................................................1
BACKGROUND .....................................................................................................................2
DISCUSSION ..........................................................................................................................6
CONCLUSION ......................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bayer Corp. v. United States*,
  Civ. A. No. 09-351, 2012 WL 393469 (W.D. Pa. Feb. 6, 2012) .......................................... 8

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
  No. 602825/08, 30 Misc. 3d 1201(A), 2010 WL 5186702 (Sup. Ct. N.Y. Cnty. Dec.
  22, 2010) ............................................................................................................................ 8

*Republic Servs., Inc. v. Liberty Mut. Ins. Co.*,
  Civ. A. No. 03-494, 2006 WL 2844122 (E.D. Ky. Oct. 2, 2006) ........................................ 8

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................................... 1, 2

At the August 14, 2012 hearing, this Court granted defendants in *FHFA v. Ally Financial Inc., et al.*, 11-CV-7010 (DLC) (S.D.N.Y.) (the "7010 Action") leave to file a submission regarding the supplemental motion of the Federal Housing Finance Agency ("FHFA") [Docket No. 859], and the associated reply brief [Docket No. 1086], seeking loan files in the possession of the above-captioned debtors (collectively, the "Debtors") in connection with the 7010 Action (the "FHFA Application"). (8/14/12 Tr. 88 [Docket No. 1215].) Certain defendants in the 7010 Action, namely Barclays Capital, Inc., Citigroup Global Markets, Inc., Credit Suisse Securities (USA) LLC, Goldman, Sachs & Co., J.P. Morgan Securities LLC, RBS Securities, Inc. and UBS Securities LLC (together, the "Non-Ally Underwriter Defendants"), respectfully file this submission on matters raised by the FHFA Application. To the extent necessary, the Non-Ally Underwriter Defendants also hereby move for relief from the automatic stay to obtain access to the full set of loan files from the supporting loan groups for the residential mortgage-backed securities at issue in the 7010 Action.

**INTRODUCTION**

FHFA, for the first time in its reply brief, proposes that this Court effectively endorse a limitation of discovery based on sampling that already has been rejected by the District Court and that unconstitutionally would limit the scope of discovery and admissible evidence in the 7010 Action. FHFA's new position is a clear attempt at an end run around the District Court's prior orders governing discovery in the 7010 Action. Moreover, as the Non-Ally Underwriter Defendants and other defendants previously demonstrated in the District Court, the proposed limitation on discovery based on sampling contravenes core principles of statistics and limits defendants' ability to put on evidence in their defense in violation of their Fifth and Seventh Amendment rights. Acceptance of this proposal would be tantamount to permitting the very type of "Trial by Formula" the Supreme Court repudiated last year. *See Wal-Mart Stores,*

*Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (denying class certification where the proposed method of proof—extrapolation from a sample of claims—would deny the defendant its right to "litigate its statutory defenses to individual claims"). In light of both the District Court's orders and the constitutional principles that would be violated by FHFA's discovery limitation based on sampling, this Court should not limit production to 5,000 loan files and instead should order the Debtors to produce all of the approximately 42,700 supporting group loan files in their possession that are at issue in the 7010 Action.

## BACKGROUND

1. The type of limited discovery based on sampling that FHFA raises in this Court for the first time in its reply brief has a long, unsuccessful history in the 7010 Action and the other fifteen coordinated actions pending in the District Court. FHFA first raised the concept of seeking to limit discovery through sampling on February 29, 2012. On June 6, 2012, FHFA submitted a supplemental sampling protocol in one of the other coordinated actions, *FHFA v. UBS Americas, Inc.*, 11 Civ. 5201 (DLC) (S.D.N.Y.) (the "5201 Action"), in which it proposed limiting discovery to a sample of 1,060 loans out of the 44,426 loans in the supporting loan groups backing the certificates at issue in that action. (*See* 6/6/12 FHFA's Sampling Submission 4, 7, Ex. A [5201 Action Docket No. 96].) In that sampling protocol, even FHFA reserved its right to sample additional loans beyond the initial sample, adding: "FHFA reserves its right to sample separately in the damages phase, including drawing a smaller sample of loans from non-Supporting Loan Groups." (*Id.* at 6 n.5.)[1]

---

[1] FHFA still intends to sample loans for purposes of attempting to prove its claims, but the District Court has ruled that sampling may not be used as a method to limit the scope of discovery. On August 9, 2012, FHFA submitted an expert report of its sampling expert Charles Cowan in the 5201 Action setting forth the methodology by which it will use a sample of loans to prove certain of its claims. This methodology likely will be the subject of future proceedings in that action, but because the report does not address limitations on discovery, the contents of the report do not affect the fundamental issues raised by the instant submission.

        2.     In their June 6, 2012 submission to the District Court, defendants in the coordinated FHFA actions argued, *inter alia*, that limiting discovery to a sample of loans is tantamount to a deprivation of their Fifth and Seventh Amendment rights because such an approach could hinder their ability to present their defenses and improperly would preclude any testing or questioning of the validity of the sample as discovery and expert analyses unfold. As a result, defendants argued that they must have access to all of the loan files at issue in the actions. (*See* 6/6/12 Defs.' Sampling Submission, Ex. B [5201 Action Docket No. 99].)

        3.     On June 13, 2012, the District Court rejected FHFA's request to limit discovery and held that "I am not going to restrict discovery of loan files based on a determination at this phase of the case that some kind of sampling is appropriate". (6/13/12 Tr. 14-15, Ex. C [5201 Action Docket No. 119].) The District Court stated that in order to limit discovery to a sample, the parties would have to agree that the rest of the files were unavailable "for all purposes for all time". (*Id.* at 15-16.) Because no party agreed to such a procedure, the Court stated, "I'm not going to do it unilaterally". (*Id.*)

        4.     Since then, defendants in the coordinated FHFA actions have produced millions of pages of loan files and have subpoenaed hundreds of third parties to produce all of the loan files for the supporting loan groups at issue in those actions, and are working diligently to facilitate this production. Defendants have subpoenaed originators, servicers, custodians, trustees and due diligence providers for loan files, but the originators and servicers are the most likely entities to possess the loan files today. In the 7010 Action, the Debtors originated or acquired, and were master servicer for, 100% of the loans at issue. Thus, while the Non-Ally Underwriter Defendants have subpoenaed custodians, trustees and due diligence providers for documents related to thousands of loans at issue in the 7010 Action, there has been no indication that such entities have the relevant loan files in their possession.

3

5.      On July 17, 2012, after the District Court withdrew the reference in the adversary proceeding filed by Debtors against FHFA to stay or enjoin litigation against their non-debtor affiliates, the District Court held a hearing in that proceeding to discuss production of the loan files for the supporting loan groups in the 7010 Action in the possession of the Debtors. The District Court stated that "[t]he loan files . . . are . . . going to be essential to the prosecution of the litigation in 11 CV 7010. It is my judgment that they are also essential to the prosecution of the 16 cases before me . . . because there are seven non-affiliate defendants who are in 11 CV 7010 and one or more of the remaining 15 actions and the 16 actions are moving forward in a coordinated fashion." (7/17/12 *Residential Capital, LLC v. FHFA* Tr. 16, Ex. D [12-cv-05116 Docket No. 34].) Notwithstanding the District Court's determination that discovery of all supporting loan group files should proceed in the coordinated FHFA actions, at that hearing FHFA again offered to "talk to Ally and all the other defendants about limiting the burden of producing loan files" through sampling. (*Id.* at 21-22.) At no point during this hearing did the Court permit FHFA to seek only a subset of the loans. To the contrary, the District Court stated:

> "ResCap . . . is holding in its physical possession documents which are critical to litigation and they include at least the loan files. There will be a cost in production of those loan files. . . . The critical thing that has to happen right now, and it is important that it happen right now, is production of the loan tapes and the loan files. . . . The cost is hard to quantify now . . . . but that is an expense that is going to have to be borne at some point no matter what. It is not an expense that is going away. . . . It is important that there be access to [the Non-Ally Underwriter Defendants], to *all the loan files that they're being sued upon* so that their witnesses can be prepared with respect to the entire universe of issues that they are going to face and that depositions occur just once." (*Id.* at 22-26 (emphasis added).)

The District Court instructed FHFA to seek all of the loan files for the supporting loan groups at issue from the Bankruptcy Court. (*Id.* at 26.)

4

6.  On July 20, 2012, FHFA filed a motion supplement in the Bankruptcy Court to lift the bankruptcy stay for the purpose of seeking production of *all* the loan files at issue in the 7010 Action. (FHFA Supplement to Motion [Docket No. 859].) It was not until FHFA's August 10, 2012 reply brief on that motion that FHFA suddenly changed course and sought "to limit its request at this time to a sample of only 5,000 loan files to be chosen by FHFA without prejudice to request more if necessary". (8/10/12 FHFA Reply 3 [Docket No. 1086].)

7.  Upon learning of FHFA's new position in its August 10 reply, with this Court's permission, the Non-Ally Underwriter Defendants attended this Court's August 14, 2012 hearing and requested to be heard. (8/14/12 Tr. 87 [Docket No. 1215].) Counsel on behalf of the Non-Ally Underwriter Defendants argued that FHFA's revised position was at odds with the District Court's prior orders and that the Non-Ally Underwriter Defendants' rights are at risk unless all the loan files at issue in the 7010 Action are produced. (*Id.* at 87-88.) Upon counsel's request, this Court granted the Non-Ally Underwriter Defendants leave to file this submission. (*Id.* at 88.)

8.  On August 16, 2012, FHFA sent a letter to the District Court asking the District Court to order the Non-Ally Underwriter Defendants "not to interfere with FHFA's application in the Bankruptcy Court seeking loan files". (8/16/12 Letter of FHFA, Ex. E [5201 Action Docket No. 168.) The Non-Ally Underwriter Defendants responded that FHFA's attempt to preclude the Non-Ally Underwriter Defendants from presenting to this Court their legal position that there should be full discovery of all loan files in the supporting loan groups in the 7010 Action is in direct contravention of the instructions of this Court and the relevant proceedings in the District Court, and requested that the District Court reject FHFA's attempt to undo the District Court's prior orders that all supporting group loan files should be produced and that FHFA should seek all such files for the 7010 Action in the bankruptcy proceedings.

5

(8/24/12 Letter of Non-Ally Underwriter Defendants, Ex. F [5201 Action Docket No. 170].)  On August 27, 2012, the District Court issued an order stating that in this Court "FHFA may seek production of any quantity of loan files that it views appropriate" but that "if any party to 11 Civ. 7010 wishes to obtain custody of loan files beyond the sample selected by FHFA, that party may similarly make an application to the Bankruptcy Court".  (8/27/12 Order, Ex. G [5201 Action Docket No. 171].)

## DISCUSSION

9.      FHFA's new position in the Bankruptcy Court seeking to limit production only to 5,000 loans out of an estimated 42,700 supporting group loans in the possession of the Debtors is a clear attempt to deprive the Non-Ally Underwriter Defendants of the discovery to which the District Court's prior orders make clear they are entitled in the 7010 Action and coordinated actions.  Respectfully, this Court should order the Debtors to produce all of the loan files in the supporting loan groups in the 7010 Action, for three main reasons.

10.     *First*, to allow FHFA to obtain some of the loan files while depriving the defendants of the rest would be fundamentally unfair to the defendants as well as potentially harmful to the Debtors' estates.  As discussed below in greater detail, in order to defend themselves in the 7010 Action, the Non-Ally Underwriter Defendants need all loan files for the loans in the supporting loan groups at issue in that action.  The Debtors, moreover, have a contractual duty to indemnify the Non-Ally Underwriter Defendants from and against any and all losses, claims, damages and liabilities caused by the type of alleged untrue statements or omissions that are the subject of the 7010 Action.  Thus, if the Non-Ally Underwriter Defendants' ability to assert their defenses is hampered because they do not have access to all of the relevant loan files, the Debtors' estate ultimately may suffer.

11. FHFA's approach is likely to hinder the Non-Ally Underwriter Defendants' ability to establish their loss causation and due diligence affirmative defenses, and it may inhibit accurate damages calculations in the 7010 Action. For example, in order to establish that any alleged misrepresentations did not cause any purported losses, the Non-Ally Underwriter Defendants may seek to analyze purportedly "defective loans" and "non-defective loans" with similar characteristics and measure the various factors that caused borrowers to default, which is one of several ways of showing that the purported breaches did not cause FHFA's losses. As discussed in the Declaration of Christopher M. James, Ph.D. ("James Decl.") that accompanied defendants' June 6 submission in the District Court (attached hereto as Exhibit H [5201 Action Docket No. 101]), such a comparison requires a sufficiently large sample to compare the marginal impacts on default of numerous factors, such as regional home price declines or unemployment increases, necessitating a far greater sample size than that proposed by FHFA. (James Decl. ¶ 12.)

12. Moreover, limiting loan-level discovery only to the 5,000 loans in FHFA's proposed sample improperly and unfairly would interfere with the Non-Ally Underwriter Defendants' ability to present their due diligence defenses. The Non-Ally Underwriter Defendants plan to offer evidence of their due diligence on particular loans in the securitizations at issue in support of their due diligence defenses, but those loans may not be part of the FHFA's sample. In considering this issue, the District Court reviewed the parties' submissions, protocols and expert declarations, and, in rejecting FHFA's approach, recognized that due process requires that defendants, including the Non-Ally Underwriter Defendants, be permitted to gather facts in discovery necessary to present their defenses. (6/13/12 Tr. 14, Ex. C [5201 Action Docket No. 119].)

7

13. In addition to the District Court, other courts have rejected proposed sampling limitations that would either eliminate plaintiff's burden on a particular claim or prevent a defendant from putting on its defense. In *Bayer Corp. v. United States*, the court rejected a plaintiff's proposal to limit discovery based on statistical sampling because it would "eliminate entirely [the plaintiff's] burden of proof with regard to all" tax credits at issue outside of the sample population. Civ. A. No. 09-351, 2012 WL 393469, at *13 (W.D. Pa. Feb. 6, 2012). The court further rejected the sampling proposal to the extent it would have "preclude[d] the [defendant] from offering at a trial of this matter any evidence not produced as part of the sampling plan," emphasizing that such a discovery limitation "[was] not acceptable in the absence of agreement" by the defendant. *Id.* at *18, *20; *see also Republic Servs., Inc. v. Liberty Mut. Ins. Co.*, Civ. A. No. 03-494, 2006 WL 2844122, at *2 (E.D. Ky. Oct. 2, 2006) (denying plaintiff's motion for judicial notice of sampling method, and noting that defendant "may challenge the admissibility, methodology and qualifications of [plaintiff's] experts and the statistical sampling method employed and results obtained during cross-examination and during presentation of its defense").

14. A recent decision in another RMBS case, *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/08, 30 Misc. 3d 1201(A), 2010 WL 5186702 (Sup. Ct. N.Y. Cnty. Dec. 22, 2010), is consistent with the above principles. Plaintiff in that case is represented by the same Quinn Emanuel counsel as in the coordinated FHFA actions and retained the same sampling expert, Dr. Charles Cowan. There, the court concluded that the defendants' ability to present evidence could *not* be limited by the plaintiff's proposed protocol. *See id.* at *5 ("[T]he court makes no finding that Plaintiff's proposed method is the only method by which Plaintiff (or Defendant) may present evidence"); *id.* at *6 ("As Plaintiff may present its case as it chooses, so may Defendants rebut Plaintiff's proffered arguments through Defendants['] own sampling chosen

8

in a statistically valid manner."). Nothing in that order precludes defendants there from challenging any inference from any sample presented by the plaintiff or offering a competing sampling methodology for the jury to consider. *Id.* ("the court makes no finding . . . that Plaintiff's method is without flaw or unsusceptible to challenge"; "[t]he ultimate trier of fact" will decide whether Plaintiff has proven each element of its claim). Rather, the defendants retained their fundamental Seventh Amendment right to challenge evidence presented to the jury and to present such evidence as they deem necessary. Here, that requires production of all of the loan files that correspond to loans in the supporting loan groups underlying the certificates at issue.

15.     *Second*, FHFA's reservation of rights renders its sampling-based discovery limitation pointless and inefficient. The Non-Ally Underwriter Defendants have been forthright in stating that they need all loan files that correspond to loans in the supporting groups to advance their arguments, and FHFA has not foreclosed taking the same position. FHFA's instant motion, just like its prior sampling submissions in the District Court, is "without prejudice to request more [loan files] if necessary". (8/10/12 FHFA Reply 3 [Docket No. 1086].) As discussed above, in its ruling denying a limitation on discovery, the District Court noted that FHFA was reserving its rights to seek additional loans in the supporting loan groups from outside of a pre-selected sample if necessary to address certain arguments that defendants might make, which would necessitate re-opening any limitation on discovery based on sampling that the District Court could order. (6/13/12 Tr. 15-16, Ex. C [5201 Action Docket No. 119].) Here too, there is no basis to limit discovery to FHFA's sample when the Non-Ally Underwriters seek those additional loan files now. Moreover, it would be inefficient and a waste of this Court's judicial resources to litigate the same issues multiple times when further requests are made for additional loan files from the same supporting loan groups that are the subject of the application presently before the Court.

9

16.     *Third*, in addition to improperly foreclosing the parties' abilities to assert legal defenses and creating inefficiencies, FHFA's proposal is itself problematic. FHFA's vague proposal to limit discovery to a sample of 5,000 loans "without prejudice to request more if necessary" (8/10/12 FHFA Reply 3 [Docket No. 1086]), contains no detail about how the loans will be selected, other than that the loans are "to be chosen by FHFA". (*Id.*) The Non-Ally Underwriter Defendants object to the lack of detail regarding this proposal. Even assuming that FHFA's proposal would consist of a random sample along the lines discussed in FHFA's sampling submissions to date in the District Court (*see, e.g.*, 6/6/12 FHFA's Sampling Submission, Ex. A [5201 Action Docket No. 96]), the proposal nevertheless suffers from a number of fundamental flaws, some of which are described in detail in the Declaration of Arnold Barnett, Ph.D. that accompanied defendants' June 6 submission in the District Court (the "Barnett Declaration", attached hereto as Exhibit I [5201 Action Docket No. 100]).[2] For example, should the sample taken to address the purposes for which FHFA seeks to use the 5,000 loans be insufficient to achieve statistical precision for other purposes (such as, *inter alia*, fraud and scienter, materiality, loss causation, due diligence and damages), Defendants must have access to all of the loan files (Barnett Decl. ¶¶ 78, 82; James Decl. ¶¶ 24-26).

## CONCLUSION

17.     For the reasons stated above, the Non-Ally Underwriter Defendants respectfully request that the Court order the Debtors to produce the loan files corresponding to all 42,700 supporting group loans for use in the 7010 Action.

---

[2] FHFA's August 9 expert report submission was not addressed in the Barnett and James Declarations, and will be the subject of further proceedings in the District Court at the appropriate time.

Dated: August 28, 2012
      New York, New York

Respectfully submitted,

| | |
|---|---|
| /s Richard W. Clary | /s Jay B. Kasner |
| Richard W. Clary (rclary@cravath.com) | Jay B. Kasner (jay.kasner@skadden.com) |
| Michael T. Reynolds (mreynolds@cravath.*co*m) | Scott Musoff (scott.musoff@skadden.com) |
| CRAVATH, SWAINE & MOORE LLP | Robert A. Fumerton (robert.fumerton@skadden.com) |
| Worldwide Plaza | SKADDEN, ARPS, SLATE, MEAGHER & |
| 825 Eighth Avenue | FLOM LLP |
| New York, NY 10019 | Four Times Square |
| | New York, NY 10036 |
| *Attorneys for Credit Suisse Securities (USA) LLC* | *Attorneys for UBS Securities LLC* |
| | |
| /s Penny Shane | /s Brad S. Karp |
| Penny Shane (shanep@sullcrom.com) | Brad S. Karp (bkarp@paulweiss.com) |
| Sharon L. Nelles (nelless@sullcrom.com) | Bruce Birenboim (bbirenboim@paulweiss.com) |
| Jonathan M. Sedlak (sedlakj@sullcrom.com) | Susanna M. Buergel (sbuergel@paulweiss.com) |
| SULLIVAN & CROMWELL LLP | PAUL, WEISS, RIFKIND, WHARTON & |
| 125 Broad Street | GARRISON LLP |
| New York, NY 10004 | 1285 Avenue of the Americas |
| | New York, NY 10019-6064 |
| *Attorneys for J.P. Morgan Securities LLC* | |
| | *Attorneys for Citigroup Global Markets, Inc.* |
| | |
| /s Richard H. Klapper | /s David H. Braff |
| Richard H. Klapper (klapperr@sullcrom.com) | David H. Braff (braffd@sullcrom.com) |
| Theodore Edelman (edelmant@sullcrom.com) | Brian T. Frawley (frawleyb@sullcrom.com) |
| Michael T. Tomaino, Jr. (tomainom@sullcrom.com) | Jeffrey T. Scott (scottj@sullcrom.com) |
| SULLIVAN & CROMWELL LLP | Joshua Fritsch (fritschj@sullcrom.com) |
| 125 Broad Street | SULLIVAN & CROMWELL LLP |
| New York, NY 10004 | 125 Broad Street |
| | New York, NY 10004 |
| *Attorneys for Goldman, Sachs & Co.* | |
| | *Attorneys for Barclays Capital, Inc.* |

/s Thomas C. Rice
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Alan Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017

*Attorneys for RBS Securities, Inc.*