Hearing Date: September 11, 2012 at 2:00 p.m. (ET)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>        Debtors. | Case No. 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered<br><br>Related Docket Nos.: 808, 810, 859 and 1086 |

# SUPPLEMENTAL MEMORANDUM OF LAW OF THE FEDERAL HOUSING FINANCE AGENCY IN FURTHER SUPPORT OF REQUEST FOR LIMITED DISCOVERY FROM THE DEBTORS AND, IF NECESSARY TO THAT PURPOSE, <u>RELIEF FROM THE AUTOMATIC STAY</u>

Andrew K. Glenn (aglenn@kasowitz.com)
Matthew B. Stein (mstein@kasowitz.com)
Daniel A. Fliman (dfliman@kasowitz.com)
KASOWITZ, BENSON, TORRES &
 FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Federal Housing Finance Agency,*
*as Conservator for the Federal Home Loan*
*Mortgage Corporation*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 2

      A.    The August 14, 2012 Preliminary Hearing. ............................................................ 3

      B.    The August 16, 2012 Letter To Judge Cote. .......................................................... 4

ARGUMENT ............................................................................................................................... 6

I.    THE AUTOMATIC STAY DOES NOT APPLY TO THE LOAN FILES SOUGHT FROM THE DEBTORS. ............................................................................... 6

II.    THE NON-DEBTOR AFFILIATES HAVE ACCESS TO AND CUSTODY AND CONTROL OVER THE LOAN FILES SOUGHT BY FHFA. ....................................... 9

III.    THE BURDENS TO FHFA FAR OUTWEIGH THE BURDENS TO THE DEBTORS AND THUS RELIEF FROM THE AUTOMATIC STAY IS APPROPRIATE TO THE EXTENT THE COURT BELIEVES IT APPLIES. .............. 14

CONCLUSION .......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cyntegra, Inc. v. Idexx Labs., Inc.*,
  No. CV 06-4170, 2007 U.S. Dist. Lexis 97417 (C.D. Cal. Sept. 21, 2007) ............................14

*Dietrich v. Bauer*,
  No. 95 Civ. 7051, 2000 U.S. Dist. LEXIS 11729 (S.D.N.Y. Aug. 9, 2000) .............................9

*GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*,
  No. 11 Civ. 1299, 2012 U.S. Dist. LEXIS 57712 (S.D.N.Y. Apr. 20, 2012) ..........................13

*Golden Trade v. Lee Apparel Co.*,
  143 F.R.D. 514 (S.D.N.Y. 1992) ..............................................................................................13

*Hunter Douglas, Inc. v. Comfortex Corp.*,
  No. 98 Civ. 479, 1999 U.S. Dist. LEXIS 101 (S.D.N.Y. Jan. 11, 1999) .............................9, 10

*In re Johns-Manville Corp.*,
  40 B.R. 219 (S.D.N.Y. 1984) ................................................................................................6, 7

*In re Lozano*,
  392 B.R. 48 (Bankr. S.D.N.Y. 2008) ..................................................................................9, 10

*In re NTL, Inc. Sec. Litig.*,
  244 F.R.D. 179 (S.D.N.Y. 2007) .........................................................................................9, 13

*Ssangyong Corp. v. Vida Shoes Int'l, Inc.*,
  No. 03 Civ. 5014, 2004 U.S. Dist. LEXIS 9101 (S.D.N.Y. May 19, 2004) ............................10

**STATUTES**

Section 362 of the Bankruptcy Code ................................................................................... passim

**OTHER AUTHORITIES**

H.R. Rep. 95-595, 95th Cong., 1st Sess. (1977), reprinted in 1978 U.S.C.C.A.N. 5963
  (1997 WL 9628) .........................................................................................................................7

The Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for the Federal Home Loan Mortgage Corporation ("Freddie Mac"), at the direction of this Court at the hearing held on August 14, 2012 (the "August 14 Hearing"), hereby submits this supplemental memorandum of law (the "Supplemental Brief") in further support of its motion (the "Original Motion") [Docket No. 810] and its supplemental motion (the "Supplemental Motion") [Docket No. 859] (with the Original Motion, the "Motion"),[1] which FHFA filed at the direction of District Judge Denise Cote. Judge Cote is presiding over the action styled *Federal Housing Finance Agency, as Conservator for the Federal Home Loan Mortgage Corporation v. Ally Financial Inc. f/k/a GMAC, LLC, et al.*, pending in the United States District Court for the Southern District of New York (the "District Court") as Case No. 11-civ-7010 (the "FHFA Case").[2] Contemporaneously herewith, FHFA submits the *Declaration of Kanchana Wangkeo Leung in Support of the Supplemental Memorandum of Law of the Federal Housing Finance Agency in Further Support of Request for Limited Discovery from the Debtors and, if Necessary to that Purpose, Relief from the Automatic Stay* (cited herein as the "August 28 Leung Decl.").

### PRELIMINARY STATEMENT[3]

Over the past several months, the Debtors and the Non-Debtor Affiliates have attempted to block the prosecution of the FHFA Coordinated Actions by refusing to provide essential documents that they clearly have in their joint custody and control and that Debtor ResCap has a contractual obligation approved by this Court to provide to AFI (and its affiliates and

---

[1]    FHFA also has submitted a reply (the "Reply") in support of the Motion [Docket No. 1086]. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Motion and Reply.

[2]    FHFA submitted the Motion at the direction of Judge Cote at hearings held on July 11 and 17, 2012. FHFA does not otherwise submit to the jurisdiction of this Court and reserves all rights with respect to such jurisdiction.

[3]    Capitalized terms not defined in the Preliminary Statement have the meanings ascribed to them *infra*.

subsidiaries) upon AFI's request. The Debtors continue to assert an erroneous argument that the automatic stay applies to the Loan Files sought by FHFA. The Debtors are not parties to the FHFA Case, and they conspicuously fail to cite to a single case staying third-party discovery directed at a debtor under Section 362 of the Bankruptcy Code. Moreover, Judge Cote has already ruled that, based on the anti-injunction provisions of HERA, the automatic stay cannot be extended to cover the Non-Debtor Affiliates in the FHFA Case. There is no justification for the continued refusal to provide the requested Loan Files to FHFA. For the reasons set forth herein and in the Motion and Reply, FHFA believes that the Debtors must provide FHFA with the 5,000 requested Loan Files at this time.

## FACTUAL BACKGROUND

1.  On July 17 and July 20, 2012, FHFA filed the Original Motion [Docket No. 810] and Supplemental Motion [Docket No. 859], respectively, seeking certain Loan Tapes and Loan Files from the Debtors, in accordance with the orders of Judge Cote, who is presiding over the FHFA Coordinated Actions.

2.  The Debtors objected to the Motion, arguing, among other things, that the automatic stay applies to third-party discovery taken from the Debtors and that the costs and burdens associated with producing 42,700 to 105,000 Loan Files required denying FHFA's request for stay relief.[4]

3.  In a good faith effort to minimize the alleged burden on the Debtors, FHFA limited its request, for the time being, to a maximum of 5,000 Loan Files to be chosen by FHFA.[5]

---

[4] *See generally Debtors' Objection to Motion of the Federal Housing Finance Agency for Relief from the Automatic Stay* [Docket No. 1023].

[5] For the avoidance of doubt, FHFA has agreed to limit its request to 5,000 Loan Files, solely in connection with the Motion presently before the Court. The foregoing does not, and should not be deemed to, waive or prejudice FHFA's right to seek any other or further relief from this Court or from the District Court, including, without limitation, seeking the production of additional or different Loan Files.

2

**A.     The August 14, 2012 Preliminary Hearing.**

4.      Prior to the August 14 Hearing, FHFA and the Debtors reached an agreement whereby the Debtors agreed to provide FHFA with the Loan Tapes and originator information FHFA requested in its Motion. (August 28 Leung Decl., Ex. A at 62:19-21.) Also prior to the August 14 Hearing, FHFA and the Debtors discussed the possibility of limiting the number of Loan Files to be produced to address the Debtors' objections regarding burden and cost. Nonetheless, as of the August 14 Hearing, the parties remained at an impasse with respect to Loan File production. (*Id*. at 66:7-10.)

5.      At the August 14 Hearing, the Court ordered the parties to file, on or before August 28, 2012, supplemental memoranda of law and any supporting declarations and exhibits addressing whether Debtor ResCap is required under the Shared Services Agreement (defined below) to provide Loan Files to AFI, who is responsible for the related costs and how such costs are to be determined. (*Id*. at 85:16-22.)

6.      During the hearing, AFI and certain of the Non-Affiliate Defendants voiced concerns regarding FHFA's decision to limit its request in the Motion to 5,000 Loan Files. (*Id.*, at 87:13-23.) In particular, counsel for Credit Suisse Securities (USA) LLC ("Credit Suisse"), speaking on behalf of Credit Suisse, Barclays Capital, Inc., Citigroup Global Markets, Inc., Goldman, Sachs & Co., UBS Securities LLC, RBS Securities, Inc., and J.P. Morgan Securities LLC, stated that the Non-Affiliate Defendants "are not prepared to live by the 5,000 sample that FHFA has reduced their request for today and in their reply papers." (*Id*. at 87:21-23.) AFI's counsel, in turn, suggested that it would not support a limited production of Loan Files because FHFA would "pick the 5,000 losers." (*Id.* at 89:11-12.)

3

**B.      The August 16, 2012 Letter To Judge Cote.**

7.      On August 16, 2012, FHFA sent a letter to Judge Cote (the "August 16 Letter") to provide an update regarding the discovery process in the FHFA Case, including with respect to the Motion. (August 28 Leung Decl., Ex. B.) In that letter, FHFA informed Judge Cote of the positions taken by AFI and the Non-Affiliate Defendants at the August 14 Hearing and requested that Judge Cote (i) direct AFI and GMACM to cooperate – as previously instructed – by paying any costs incurred by the Debtors in connection with production of up to 5,000 Loan Files and (ii) order all FHFA Litigation Defendants not to interfere with the Motion. (*Id.*)

8.      On August 23, 2012, counsel for AFI and GMACM sent a letter to Judge Cote responding to the August 16 Letter. (August 28 Leung Decl., Ex. C.) In that letter, the Non-Debtor Affiliates argued that they had "cooperated" with the Motion by not hindering it, and that they should not have to pay the Debtors' production costs because "a control person allegation does not require that AFI and GMACM Group should bear the cost of production of documents within the possession of the Debtors." (*Id.*)

9.      The Non-Debtor Affiliates failed to acknowledge that they had previously represented to the District Court that the Loan Files at issue are their Loan Files. Indeed, on May 1, 2012, the Debtors and the Non-Debtor Affiliates – represented by separate counsel – filed an application in the District Court seeking entry of a supplemental protective order to govern "the treatment of discovery material containing mortgage loan borrowers' highly sensitive personally identifiable information." (Aug. 28 Leung Decl., Ex. D). The application stated:

> *The Ally* and ResCap Defendants' *loan files*, however, are replete with PII for the third-party individuals who took out the mortgages, including – but not limited to – borrower names, addresses, telephone numbers, Social Security numbers, credit card and bank account numbers, employment and salary data, monthly income, and descriptions of borrowers' debts and liabilities. This type of information is also captured in numerous spreadsheets, emails, and database information that *Ally* and the ResCap

4

>    Defendants *anticipate producing in discovery.* (*Id.* at 2 (emphasis added).)
>
>    *The Ally* and ResCap Defendants' *loan files* contain precisely the type of information that facilitates identify theft[.] (*Id.* at 8 (emphasis added).)
>
>    The proposed Supplemental Protective Order requires that all parties receiving PII from the Ally and ResCap Defendants agree either (a) to vetting by an independent security expert to ensure that adequate data protection controls are in place; or (b) to indemnify the Ally and ResCap Defendants in the event of an unauthorized disclosure of PII. (*Id.* at 3.)
>
>    In sum, past experience demonstrates that there is a significant risk that PII produced by the Ally and the ResCap Defendants in this case could be breached or otherwise disclosed by one of the receiving parties[.] (*Id.* at 15.)

10.     In a separate letter, dated August 24, 2012, the Non-Affiliate Defendants argued to Judge Cote that FHFA's limited request for Loan Files was "an end run around [the District] Court's prior orders governing discovery in these [FHFA Coordinated] actions." (August 28 Leung Decl., Ex. E.)

11.     On August 27, 2012, Judge Cote issued an Order concerning the August 16 Letter. (August 28 Leung Decl., Ex. F.) Judge Cote ordered that "FHFA may seek production of any quantity of loan files that it views appropriate" and that "if any party to [the FHFA Case] wishes to obtain custody of loan files beyond the sample selected by FHFA, that party may similarly make an application to the Bankruptcy Court." (*Id.*) While Judge Cote declined to direct the Non-Debtor Affiliates to pay the Debtors' costs for producing Loan Files, the court expressly reserved FHFA's right to renew its request following this Court's adjudication of the Motion. (*Id.*)

5

# ARGUMENT

## I.

## THE AUTOMATIC STAY DOES NOT APPLY TO THE LOAN FILES SOUGHT FROM THE DEBTORS.

12.     As set forth in the Motion and in the Reply, the requested discovery clearly falls outside of the scope of the automatic stay.  (Original Motion ¶¶ 16-18, Reply ¶¶ 1-8.)  At the August 14 Hearing, the Court made three inquiries with respect to the applicability of the automatic stay here.

13.     First, the Court inquired whether *In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y. 1984) applies.  (August 28 Leung Decl., Ex. A at 67:20-21, 69:13-17.)  It does not.  There, the court justified the stay against discovery directed to the debtor as a non-party under the discretionary standards of a Section 105 injunction, not under the automatic stay in Section 362(a):

> In upholding Judge Lifland's determination on the stay issue, *the Court need not decide where § 362 automatically stays all discovery of the Debtor and its employees in all instances.*  The stay which went into effect upon the filing of Manville's Chapter 11 petitions was issued both under *§ 362* (the "automatic" stay), which authorizes the Bankruptcy Court to "issue any order, process or judgment that is *necessary or appropriate* to carry out the provisions of this title."  (Emphasis added).  While *§ 105* vests the Bankruptcy Court with the authority to extend the stay, such an extension must be in aid of authority exercised by the court pursuant to some other provision of the Code, in this case, *§ 362*.  In order to issue a stay under *§ 105*, the court must determine that such relief is at least appropriate to achieve the goals of a Chapter 11 reorganization, and is necessary to protect the debtor.
>
> *The Bankruptcy Judge in the instant case has determined, in an appropriate exercise of his discretion under this section, to deny the request to allow discovery to proceed against Manville employees at this time.*  It is clear that irrespective of whether *§ 362* automatically bars such discovery, the Bankruptcy Court may prevent it under *§ 105*.

6

*In re Johns-Manville Corp.*, 40 B.R. at 225-26 (emphasis added unless noted).  Thus, the *Johns-Manville* court justified its decision entirely under Section 105, and never reached the question of whether Section 362(a) even applies.  And, importantly, Judge Cote has determined that Section 105 cannot be used to enjoin FHFA in its status as Conservator and plaintiff in the FHFA Case.  (August 28 Leung Decl., Ex. G.)

14.    Second, the Court inquired whether the words "including the issuance or employment of process" as used in Section 362(a)(1) covered third-party subpoenas.  (August 28 Leung Decl., Ex A at 70:3-9.)  They do not.  Section 362(a)(1) uses the phrase "including the issuance or employment of process" to modify the operative phrase "the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor."  It is clear from the face of the statute that "issuance or employment of process" applies only where – unlike here – the process is employed to commence or continue an "action" or "proceeding" against the debtor.  FHFA did not commence or continue any "action" or "proceeding" against any Debtor herein by requesting the Loan Files.  In fact, it discontinued its "action" or "proceeding" against the Debtors upon filing its Amended Complaint in the FHFA Case by removing the Debtors as defendants.[6]

15.    The legislative history confirms this plain reading of Section 362(a)(1).  Congress included the phrase "issuance or employment of process" in Section 362(a)(1) to prevent a judgment creditor that had obtained a prepetition judgment in a proceeding against the debtor from enforcing a general writ of execution "against the debtor and all of the debtor's property."  H.R. Rep. 95-595, 95th Cong., 1st Sess. (1977), reprinted in 1978 U.S.C.C.A.N. 5963 (1977 WL 9628) ("Subsection (a) defines the scope of the automatic stay, by listing the acts that are stayed

---

[6]    To the extent the Debtors claim that FHFA's previously issued Conservator subpoenas constitute "issuance or employment of service" against the Debtor, those subpoenas were issued and served in July of 2010 – almost two years before the commencement of these chapter 11 cases.  Thus, there is no plausible argument that such subpoenas could implicate the provisions of the automatic stay.

7

by the commencement of the case…. The provision in this first paragraph prohibiting the issuance of process is designed to prevent the issuance of a writ of execution by a judgment creditor of the debtor to obtain property that was property of the debtor before the case, but that was transferred, subject to the judgment lien, before the case.  Because the other paragraphs of this subsection refer only to property of the estate or property of the debtor, neither of which apply to this kind of transferred property, they would not prohibit pursuit of the transferred property by issuance of process.").

16. Had Congress intended to exempt debtors entirely from third-party discovery, it easily could have done so.  But Congress clearly did not.  Based on the statute's plain meaning, and as confirmed by the legislative history, it is clear that Congress did not intend "including the issuance or employment of process" to expand Section 362(a)(1) to cover discovery sought from a debtor in an action or proceeding where it is not a party.

17. Third, the Court pondered the practical ramifications of a finding that third-party discovery addressed to a debtor is not subject to the automatic stay.  (August 28 Leung Decl., Ex. A at 63:2-18, 73:6-22.)  That Section 362(a)(1) does not automatically preclude third-party discovery taken from a debtor does not mean that every debtor in every case must participate in third-party discovery.  Debtors routinely rely on Section 105 to expand the reach of Section 362 beyond its language by enjoining litigation that is not automatically stayed where such litigation would derail a reorganization. Section 105, thus, provides the basis – and the only basis – for a debtor to avoid third-party discovery, assuming it meets the standards for a Section 105 injunction and the court enjoins continuation of the underlying litigation and halts discovery.  As such, according the proper reading to Section 362(a)(1) by finding that third-party discovery is not covered, would not "open the floodgates" to discovery in this or other cases.

8

18. Here, the Debtors have already attempted to extend the stay pursuant to Section 105 and to obtain an injunction to stop the FHFA Case from proceeding against the Non-Debtor Affiliates. Judge Cote denied that request. Therefore, as document discovery in the FHFA Case proceeds rapidly forward, FHFA should be permitted to obtain the Loan Files from the Debtors and the Non-Debtor Affiliates without further delay.

## II.

### THE NON-DEBTOR AFFILIATES HAVE ACCESS TO AND CUSTODY AND CONTROL OVER THE LOAN FILES SOUGHT BY FHFA.

19. As the Court is aware, FHFA has raised the issue of the Non-Debtor Affiliates' custody and control over the Loan Files in the FHFA Case (August 28 Leung Decl., Ex. A at 76:14-20) and Judge Cote reserved on the matter for further deliberations.

20. The Non-Debtor Affiliates have custody and control over the Loan Files. "The test for the production of documents is control, not location." *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007). "'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand. This principle applies where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation." *Id.*; s*ee also In re Lozano*, 392 B.R. 48, 55-56 (Bankr. S.D.N.Y. 2008); *Dietrich v. Bauer*, No. 95 Civ. 7051, 2000 U.S. Dist. LEXIS 11729, at *7 (S.D.N.Y. Aug. 9, 2000) (granting motion to compel a non-party parent corporation to produce documents in the possession of its wholly-owned subsidiary because a parent had operational control and oversight over its subsidiary). The test for custody or control "focuses on whether the corporation has 'access to the documents' and 'ability to obtain the documents.'" *Hunter Douglas, Inc. v. Comfortex Corp.*, No. 98 Civ. 479, 1999 U.S. Dist. LEXIS 101, at *9 (S.D.N.Y. Jan. 11, 1999).

9

21. In the context of a parent-subsidiary relationship, courts have considered factors such as "the degree of ownership and control exercised by the parent over its subsidiary, a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, and an agency relationship." *Ssangyong Corp. v. Vida Shoes Int'l, Inc.*, No. 03 Civ. 5014, 2004 U.S. Dist. LEXIS 9101, at *12 (S.D.N.Y. May 19, 2004) (ordering the New York branch office to produce documents in the possession of its Korean affiliate because the two entities shared documents in the ordinary course of business). Moreover, if the nature of the relationship between the parent and its subsidiary is such that they exchange documents to assist one another in litigation, they must produce such documents during discovery. *See Hunter Douglas*, 1999 U.S. Dist. LEXIS 101, at *9 (granting motion to compel where parent and subsidiary were found to freely exchange documents).

22. This Court has stated that the production of documents may be required if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy of the requested document in its possession. *In re Lozano*, 392 B.R. at 53. The legal right to obtain documents or information from another may arise by contract, or as a result of an agency relationship. *Id.* at 55.

23. Assuming that the Loan Files are not owned by AFI, AFI still has control over the Loan Files. AFI has the undisputed legal right to obtain them upon request or demand pursuant to the shared services agreement between ResCap and AFI (the "Shared Services Agreement"), which was approved by this Court on a final basis on June 15, 2012 [Docket No. 387]. (August 28 Leung Decl., Ex. H, Shared Services Agreement (cited herein as "SSA"), in the form annexed to the *Debtors' Motion for Interim and Final Orders Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Residential Capital, LLC to Enter Into a Shared Services Agreement with Ally Financial Inc. Nunc Pro Tunc to the Petition Date for the Continued Receipt and Provision*

10

*of Shared Services Necessary for the Operation of the Debtors' Businesses* (the "Shared Services Motion", cited herein as "Mot.") [Docket No. 41].)

24. As an initial matter, the Shared Services Agreement provides that, in performing record services for AFI, "ResCap *will ... [p]rocess requests for files/documents* that are received from internal and external clients for loan sales, *litigation requests*, audits and reconciliation projects and *deliver files/images* to [the] requestor in a mutually agreeable format that is suitable to their request (i.e. electronic format)." (emphasis added) (*Id.*, SOW at 20-21.)[7] Plainly, AFI has the *right* to request and the Debtors have the *obligation* to provide Loan Files.

25. Moreover, under the Shared Services Agreement, AFI and ResCap will continue to provide to each other comprehensive legal services, including those that would enable the Debtors to provide FHFA with the Loan Files. For instance, AFI will provide "law department management support, ... including administration of law firm engagement, oversight, ... and other services provided by the outside counsel relations team." (*Id.*, SOW at 7.) In turn, "ResCap will provide ... when requested by AFI and consistent with current and historical practice: (i) Legal advice and counseling, including litigation management and support, including service of process, e-discovery, discovery responses, and litigation holds, as may be necessary or required by AFI from time to time, including without limitation, making available relevant systems and software that may be developed by or for the e-discovery team." (*Id.*)

26. The Shared Services Agreement further contemplates that AFI and the Ally Debtors will freely exchange information and documents, including Loan Files, in order to effectuate the terms of service. For instance, the contract contains provisions relating to

---

[7] As used herein, citations to the "SOW" refer to the Summary of the Statements of Work, appended as Exhibit B to the Shared Services Motion. The Debtors did not append each of the Statements of Work governed by and incorporated into the Shared Services Agreement pursuant to ¶ 3.1 and Schedule A-2. (*Id.*, SSA ¶ 3.1 ("ResCap will provide the Services within each of the Functional Service Areas listed in Schedule A-2 (the 'Reverse Services'), in each case beginning on the Effective Date."); Schedule A-2 (Capital Markets, "Records Services" is governed by SOW Number 14I).) SOW Number 14I is described in the Summary of the Statements of Work at 20-21, line 16.

11

confidentiality, the ownership of data, intellectual property, as well as Loan Files and non-public borrower information. (*Id.*, SSA at ¶ 7.1 (intellectual property), *id.* at ¶¶ 8.1, 8.2 (recipient data), *id.* at ¶¶ 9.1, 9.6(a) (confidentiality); SOW at 5 (compliance with applicable privacy laws and regulations); SOW at 7 (loan reviews); SOW at 20 (record services).) These provisions would be superfluous if AFI and ResCap did not intend to provide documents to each other. When AFI performs "individual loan file review[s]" to assist "ResCap with establishing and updating an Annual Loan Review Plan," AFI "performs data analytics and *physical file reviews* to assess compliance with internal credit policies and loan administration procedures." (*Id.*, SOW at 7 (emphasis added).)

27.     As the Debtors have represented to this Court, although ResCap and AFI are the only parties to the Agreement, "each party is required to work with its respective subsidiaries to ensure that all of the services are provided and each of ResCap's Debtor affiliates and AFI's non-debtor affiliates receive services as applicable." (*Id.*, Mot. at ¶ 9.) Thus, the Agreement provides that AFI and ResCap "*will provide* the Services within each of the Functional Service Areas" listed in Schedules A-1 and A-2 of the Agreement, and "*will perform* or cause to be performed the Services referenced in the Applicable Statement(s) of Work...." (emphasis added) (*Id.*, SSA at ¶ 3.1(a), 3.1(c).)

28.     In particular, ResCap *is required* to "[p]rocess requests for files/documents" and "litigation requests" and to "deliver files/images to [the] requestor in a mutually agreeable format that is suitable to their request (i.e. electronic format)." (*Id.*, SOW at 20-21.)[8]

29.     Moreover, the very underpinning of the Shared Services Agreement highlights that AFI has access to the Loan Files. To support entry of the expansive Shared Services Agreement, the Debtors emphasized to this Court both the "integrated nature" of their business

---

[8]     The compensation arrangement is structured so that the supplier of the service will provide the requesting party with estimated invoices on a monthly basis, based on schedules of costs set forth for ResCap and AFI, respectively, in the Shared Services Agreement. (*Id.*, SSA at ¶ 10.1; *see also* Schedule C-1a, Schedule C-2a.)

12

with AFI and that the Agreement memorialized services that the parties had "historically" performed for each other in the "ordinary course of business." (*Id.*, Mot. ¶ 7 ("Given the integrated nature of the Debtors' and AFI's businesses, the continuation of these services pursuant to the Agreement is both warranted and absolutely necessary to avoid any disruption in the Debtors' day-to-day operations."); *id.* at ¶ 11 ("Prior to the Petition Date, in the ordinary course of business, ResCap, AFI and certain of their affiliates provided various financial, operational and administrative services to each other, which the Debtors seek to continue on and after the Petition Date pursuant to the Agreement. Historically, the services that are now the subject of the Agreement were provided on an undocumented basis."); *see also id.* at ¶¶ 7, 12, 21, 24 (discussing "integrated" nature of the businesses).

30.     Accordingly, AFI and GMACM have control over the Loan Files by virtue of the Shared Services Agreement. *See In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195-96 (S.D.N.Y. 2007) (defendant had control over documents of reorganized company based on document sharing clauses in debtors' demerger agreement and transitional services agreement, and practical ability, based on past practice, to obtain relevant documents by merely asking); *Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992) (holding that plaintiffs had legal right to obtain documents from U.S. licensee because of contractual cooperation provision and practical ability to obtain documents from foreign patent agents based on agents' willingness to submit affidavits in plaintiffs' litigation); *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, No. 11 Civ. 1299, 2012 U.S. Dist. LEXIS 57712, at *31 (S.D.N.Y. Apr. 20, 2012) (holding that a party to the litigation had the practical ability to control the documents possessed by a third-party litigation consulting firm pursuant to a contract for services); *see also Cyntegra, Inc. v. Idexx Labs., Inc.*, No. CV 06-4170, 2007 U.S. Dist. LEXIS 97417, at *15-16 (C.D. Cal. Sept. 21, 2007)

("A contractual relationship with a third-party entity provides, at a minimum, an obligation to make reasonable inquiry of the third party entity for the data at issue.").

31. AFI has contractual control over the Loan Files. In addition, AFI has the practical ability to obtain them from the Debtors, as AFI and the Debtors are, admittedly, integrated entities. Given AFI's intricate relationship with the Debtors, it is not credible that the Debtors would withhold data or information from AFI if AFI requested it.

32. Finally, at the August 14 Hearing, the Debtors confused the issue of ownership and control by pointing to the provision of the Shared Services Agreement concerning the ownership of the Loan Files (*i.e.* that the Debtors continue to own them, even if AFI accesses them). The Debtors are missing the point entirely. The point here is that, pursuant to the Shared Services Agreement, AFI can still readily request the Loan Files, regardless of who "owns" the files, and therefore AFI has control of the Loan Files.

### III.

### THE BURDENS TO FHFA FAR OUTWEIGH THE BURDENS TO THE DEBTORS AND THUS RELIEF FROM THE AUTOMATIC STAY IS APPROPRIATE TO THE EXTENT THE COURT BELIEVES IT APPLIES.

33. The burdens to FHFA are well-known. As stated in the Motion and Reply, the discovery sought is limited in nature and will not harm the Debtors or their estates or interfere with the bankruptcy cases, in contrast to the extensive harm and prejudice that FHFA will face if it is not given access to the requested Loan Files. If FHFA is precluded from obtaining the Loan Files, it will not only halt the progress of the FHFA Case, but will have an impact on other FHFA Coordinated Actions. A delay in just one case hinders the ability of both FHFA and the defendants to "evaluate the strengths and weaknesses of the claims and defenses, depose witnesses once, get the cases organized for motion practice and the conduct of the separate trials in a way that makes the most sense for all the parties." (August 28 Leung Decl., Ex. I at 7:24-

14

8:4.) Accordingly, relief from the automatic stay (if it applies) is justified here because the non-existent harm to the Debtors from providing the subject discovery is clearly outweighed by the extensive prejudice that will befall FHFA and the FHFA Coordinated Actions without the Loan Files.

34. Additionally, the Debtors' objection is based on 42,700 to 105,000 Loan Files being produced. However, FHFA has made it clear that it is only requesting 5,000 Loan Files at this time. Upon FHFA's information and belief, such costs are not likely to exceed $125,000, and the Debtors have overstated the harm such costs will impose on the estates on the record at the August 14 Hearing. The Debtors themselves have stated that, on average, the out-of-pocket cost of collecting and preparing a single Loan File is approximately $25, plus $1.50 in internal costs.[9]

---

[9] *See Declaration of John G. Mongelluzzo* filed in support of *Debtors' Objection to Motion of the Federal Housing Finance Agency for Relief from the Automatic Stay* [Docket No. 1023, Ex. 2].

**CONCLUSION**

For the foregoing reasons, the Court should permit FHFA access to the Loan Files and grant any such other and further relief to FHFA deemed just and proper.

DATED:     August 28, 2012
           New York, New York

                                        KASOWITZ, BENSON, TORRES &
                                         FRIEDMAN LLP

                                      /s/ Andrew K. Glenn
                                      Andrew K. Glenn (aglenn@kasowitz.com)
                                      Matthew B. Stein (mstein@kasowitz.com)
                                      Daniel A. Fliman (dfliman@kasowitz.com)
                                      1633 Broadway
                                      New York, New York 10019
                                      Telephone:  (212) 506-1700
                                      Facsimile:  (212) 506-1800

                                      *Attorneys for Federal Housing*
                                      *Finance Agency, as Conservator for the Federal*
                                      *Home Loan Mortgage Corporation*