| | |
|---|---|
| Richard M. Cieri | Jeffrey S. Powell |
| Ray C. Schrock | Daniel T. Donovan |
| Stephen E. Hessler | KIRKLAND & ELLIS LLP |
| KIRKLAND & ELLIS LLP | 655 15th Street, N.W., Ste. 1200 |
| 601 Lexington Avenue | Washington, D.C. 20005 |
| New York, New York 10022 | Telephone: (202) 879-5000 |
| Telephone: (212) 446-4800 | Facsimile: (202) 879-5200 |
| Facsimile: (212) 446-4900 | |

*Counsel for Ally Financial Inc. and Ally Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**STATEMENT OF ALLY FINANCIAL INC.
CONCERNING THE SHARED SERVICES AGREEMENT**

Ally Financial Inc., on behalf of itself and its non-debtor subsidiaries (collectively "Ally"), submits this memorandum to address the Court's questions regarding the Shared Services Agreement between AFI and the Debtors, and the scope of the loan files at issue in the FHFA lawsuit.

**DISCUSSION**

I. **The Shared Services Agreement And Its Accompanying Statements Of Work Do Not Require The Debtors To Provide Loan Files To Ally For Litigation.**

Historically, Ally and ResCap provided certain operational services to each other, some of which were formally documented, others of which were informally provided pursuant to historical practices. (*See* Decl. of P. Scheipe (attached as Ex. 1) at ¶ 3.) In order to facilitate an orderly and expeditious sale of ResCap's servicing platform during these chapter 11 cases and to provide a comprehensive, uniform agreement covering such services, the parties intended to formalize the services provided among the debtors in the above-captioned cases (the "Debtors") and Ally and certain of its non-debtor subsidiaries in the Shared Services Agreement. (*See id.* at ¶¶ 3-4.) This process was, in part, designed to achieve a stand-alone operational servicing platform to market and sale in these chapter 11 cases. (*See id.* at ¶¶ 3-4.) Additionally, the Shared Services Agreement was intended to continue the historical provision of services with certain modifications during the period of the Debtors' sale process. The intention was that the services provided under the SSA would be reduced over time. (*See id.* at ¶¶ 3-4.).

Ally never intended for the Shared Services Agreement or the SOWs to transfer ownership or control over documents or data that may be provided in conjunction with those operational services. (*See id.* at ¶ 5.) This intent is reflected in the terms of the Shared Services Agreement, which states that the Supplier "retains ownership of data pertaining to its performance of Services" while the "Recipient owns and will continue to own all right, title and

2

interest in and to all Recipient Data." (Shared Services Agreement, §§ 8.1, 8.2; *see also* Scheipe Decl. at ¶ 6.) Other provisions of the Shared Services Agreement similarly confirm that each party's documents and data would remain its own, regardless of the provision of services under the agreement. (*See* Scheipe Decl. at ¶ 7.) Nothing in the SOWs—which were intended to document the particular services provided—transfers ownership of any data or documents between the parties. (*See* Scheipe Decl. at ¶¶ 5-6.)

Nor did Ally intend for the Shared Services Agreement or the SOWs to obligate ResCap to provide the loan files that are the subject of the FHFA litigation ("Loan Files") to Ally for litigation purposes. (*See id.* at ¶¶ 8, 13-16.) Nothing in the Shared Services Agreement itself imposes such an obligation. (*See id.* at ¶ 16.) FHFA has asserted that four SOWs provide the basis for Ally to obtain the loan files from ResCap. These assertions misconstrue the intent of the parties to the Shared Services Agreement and the actual terms of the SOWs, which do not impose any requirements on ResCap to provide the loan files to Ally. (*See id.* at ¶¶ 9-12.)

Two of those SOWs—one regarding the provision of legal services and the other concerning a review of limited loan files in the last two years for audit purposes—involve Ally providing services to ResCap, not the other way around. (*See id.* at ¶¶ 9, 12.) Although the other two SOWs set forth certain services that ResCap provides to Ally, neither calls for ResCap to provide the Loan Files to Ally for litigation purposes. (*See id.* at ¶¶ 9-11, 15.)

The first SOW relates to the provision of legal services from ResCap to AFI. This SOW states that ResCap will provide "[l]egal advice and counseling, including litigation management and support, including service of process, e-discovery, discovery responses, and litigation holds, as may be necessary or required by AFI from time to time . . ." (*Id.*, Item 2 of Summary of Statement of Work from ResCap to AFI; Page 106 of 126) (*see also* Decl. of P. Scheipe at ¶¶ 9-

3

10). This SOW, however, merely reflect that ResCap will provide certain legal services for AFI, in the same manner that any third party might provide legal services. It does not give Ally control over any documents held by ResCap, nor does it require ResCap to provide the loan files to AFI.

Indeed, the only SOW that requires ResCap to provide any loan files to Ally—the Record Services SOW—relates to Ally Bank and its role as the custodian for certain loans serviced by ResCap (none of which are at issue in the FHFA lawsuit). The services provided for in the Record Services SOW include processing "requests for files/documents that are received from internal and external clients for loans sales, litigation requests, audits and reconciliation projects and deliver files/images to requestor in mutually agreeable format that is suitable to their request." (*Id.,* Item 16 of Summary of Statement of Work from ResCap to AFI, Page 113-114 of 126) (*see also* Decl. of P. Scheipe at ¶¶ 11-12). As is confirmed by the chart detailing the pricing for this service (*Id.,* at schedule C-2b, page 87 of 126), this is a service that ResCap provides to Ally Bank, a non-debtor subsidiary of Ally Financial Inc. Ally Bank is the custodian for certain loans that are serviced by ResCap. Ally Bank is not a Document Custodian for any of the securitizations at issue in the FHFA's law suit against Ally and none of the loans for which the Bank has custodial obligations are collateral in any of the securitizations at issue in the FHFA's law suit against Ally. (*See* Decl. of P. Scheipe at ¶¶ 11-12). The parties never intended for this SOW to obligate ResCap to provide thousands upon thousands of loan files to Ally, and nothing in the SOW contemplates such an undertaking. (*See id.* at ¶ 11.)

II. **FHFA's Lawsuit Against Ally Involves More Than The 5,000 Loan Files That FHFA Seeks.**

Although FHFA's reply in support of its motion to obtain the loan files from the Debtors reduces its request to only 5,000 loan files, far more are at issue in FHFA's lawsuit. FHFA's

4

lawsuit concerns 21 securitizations including approximately 105,000 loan files. FHFA's lawsuit and specific investments directly concern only approximately 43,000 loan files. As set forth in more detail in the Debtors' memorandum and in the underwriter defendants' memorandum, the defendants in FHFA's lawsuit would need the Debtors to produce more than the 5,000 loan files chosen by FHFA in order to defend themselves against FHFA's claims—and thus, the costs of burdens of producing the loan files necessary for the lawsuit to proceed would far exceed those suggested by FHFA.

Dated: August 28, 2012
New York, New York

　　　　　　　　　　　　　　　　　　　　　　/s/ Stephen E. Hessler
Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

Jeffrey S. Powell
Daniel T. Donovan
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel to Ally Financial Inc. and Ally Bank*

## Exhibit 1

**P. Scheipe Declaration**

12-12020-mg    Doc 1299    Filed 08/28/12    Entered 08/28/12 17:00:57    Main Document
Pg 6 of 14

| | |
|---|---|
| Richard M. Cieri | Jeffrey S. Powell |
| Ray C. Schrock | Daniel T. Donovan |
| Stephen E. Hessler | KIRKLAND & ELLIS LLP |
| KIRKLAND & ELLIS LLP | 655 15th Street, N.W., Ste. 1200 |
| 601 Lexington Avenue | Washington, D.C. 20005 |
| New York, New York 10022 | Telephone: (202) 879-5000 |
| Telephone: (212) 446-4800 | Facsimile: (202) 879-5200 |
| Facsimile: (212) 446-4900 | |

Counsel for Ally Financial Inc. and Ally Bank

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL CAPITAL, LLC., et al. | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF PHILIP MARC SCHEIPE IN SUPPORT OF**
**AFI'S SUBMISSION REGARDING THE SHARED SERVICES AGREEMENT**

I, PHILIP MARC SCHEIPE, do hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am CFO Global Business Functions at Ally Financial Inc. ("AFI"). In that position, I have had responsibilities in the course of this year in areas associated with separating the businesses of AFI and the Debtors and ensuring a smooth transition of the Debtors' businesses to the ultimate purchaser of such businesses in these chapter 11 cases. I was closely involved in the development, negotiation, structuring and drafting of the Shared Services Agreement ("SSA").

2. I understand that Judge Martin Glenn of the United States Bankruptcy Court for the Southern District of New York has asked for submissions from certain parties concerning the SSA, and in particular addressing whether ResCap is required under the SSA and statements of work to provide loan files to AFI, and if so, who pays for the production of those loan files and

how that cost would be determined. This declaration sets forth the background and purpose of the SSA, and the intent of AFI when negotiating that agreement. Further, this declaration also addresses certain statements of work that I understand the Federal Housing Finance Agency ("FHFA") may rely upon to argue that the SSA gives AFI control over documents in the possession of the Debtors.

3. The SSA was negotiated between AFI and its counsel on the one hand, and Residential Capital, LLC ("ResCap") and its counsel on the other hand, over an extended period of time. Prior to that time, AFI and ResCap provided certain operational services to each other some of which were formally documented, others of which were informally provided pursuant to historical practices. In order to facilitate an orderly and expeditious sale of ResCap's servicing platform during these chapter 11 cases and to provide a comprehensive, uniform agreement covering such services, the parties intended to formalize the operational services provided among the debtors in the above-captioned cases (the "Debtors"), and AFI and certain of its non-debtor subsidiaries in the SSA. This process was, in part, designed to achieve a stand-alone operational servicing platform to market and sell in these chapter 11 cases. Additionally, the SSA was intended to continue the historical provision of services with certain modifications during the period of the Debtors' sale process. The intention was that the services provided under the SSA would be reduced over time.

4. Through the SSA, ResCap and AFI each agreed to provide the specific services enumerated within the SSA and certain statements of work ("SOWs") to the other entity. In accordance with the 2006 Operating Agreement, those services were negotiated at arms length.

5. The parties never intended for any provision of service between the two entities to result in the transfer of ownership or control over the documents or data of the other entity. This

point was a subject of specific negotiation between the parties and was a core point to the SSA. Both parties agreed that each party would retain control over its own data. This is mandated by the 2006 Operating Agreement and it is my understanding also by a number of regulatory requirements relating to the mortgage operation as well as the Bank deposit operation.

6. This intention was memorialized in the SSA itself. Specifically, section 8.1 of the SSA provides that the Supplier of services "retains ownership of data pertaining to its performance of Services." Further, section 8.2 provides that "[a]s between Recipient and Supplier, Recipient owns and will continue to own all right, title and interest in and to all Recipient Data."

7. Other sections of the SSA are also consistent in demonstrating the parties' intent that any service that might be provided either by ResCap or AFI would not transfer any rights of ownership or control to the other party. For example, Section 7 makes clear that nothing in the SSA transfers any rights, title or interests in any Intellectual Property. Section 7.4 further clarifies that "[e]xcept as expressly specified in this Agreement, nothing in this Agreement will be deemed to grant to one Party, by implication, estoppels or otherwise, license rights, ownership rights or any other Intellectual Property Rights in any work processes, Software or other materials, data or information owned by the other Party or any Affiliate of the other Party." Further, Section 9.6 provides that "[e]ach Party's Confidential Information shall remain the property of that Party except as expressly provided otherwise by the other provisions of this Agreement." And Section 9.8 provides that "[n]othing contained in this Section 9 shall be construed as obligating a Party to disclose its Confidential Information to the other Party, or as granting or conferring on a Party, expressly or impliedly, any rights or license to the Confidential Information of the other Party."

8.      Notwithstanding those provisions of the SSA, I understand that FHFA has asserted that certain SOWs require ResCap to provide to AFI the loan files underlying the ResCap Securitizations at issue in FHFA's action (11-cv-7010) ("Loan Files"), or would otherwise give AFI control over the Loan Files that are in the possession of the Debtors. Indeed, I served as the AFI corporate representative for a deposition conducted by FHFA at which I was questioned about many of those provisions. Based on my personal involvement in the negotiation of the terms of the SSA, and my understanding of the purpose for the SOWs at issue, I believe that FHFA misunderstands the purpose of those provisions, and the rights and obligations those provisions impose on ResCap and AFI.

9.      FHFA has referenced certain SOWs regarding legal services that AFI and ResCap provide to each other. Those services reflect the fact that prior to the bankruptcy filing, for purposes of efficiency, AFI and ResCap provided legal services to each other. For example, one SOW states that "AFI provides legal advice and counseling, including regarding changes in laws and regulations applicable to ResCap's business, as may be necessary from time to time, in the substantive areas of employment law and federal regulation of bank holding companies . . ." (Doc. 41, Exhibit B, Item 15 of the Summary of Statement of Work from AFI to ResCap at 7; Page 100 of 126). Another SOW states that ResCap will provide "[l]egal advice and counseling, including litigation management and support, including service of process, e-discovery, discovery responses, and litigation holds, as may be necessary or required by AFI from time to time . . ." (*Id.,* Item 2 of Summary of Statement of Work from ResCap to AFI; Page 106 of 126). Both of these SOWs reflect that each of AFI and ResCap will provide certain legal services for the other entity, in the same manner that any third party might provide legal services. Those

SOWs do not give either ResCap or AFI control over any documents held by the other entity, nor do they require ResCap to provide Loan Files to AFI.

10. FHFA has focused on language from the SOW that the legal services provided by ResCap would include, among other things, "making available relevant systems and software that may be developed by or for the e-discovery team." (*Id.*). This language refers to an e-discovery team that had been developed by ResCap, which was able to provide certain support to AFI in helping AFI access its own electronic records. The "systems and software" referenced refer to tools developed for the e-discovery team that help it perform its services. This provision does not refer to any ResCap data at all, and certainly does not require ResCap to provide the Loan Files to AFI.

11. FHFA has also referenced the "Record Services" that ResCap provides to AFI. Those services include processing "requests for files/documents that are received from internal and external clients for loans sales, litigation requests, audits and reconciliation projects and deliver files/images to requestor in mutually agreeable format that is suitable to their request." (*Id.,* Item 16 of Summary of Statement of Work from ResCap to AFI, Page 113-114 of 126). As is confirmed by the chart detailing the pricing for this service (*Id.,* at schedule C-2b, page 87 of 126), this is a service that ResCap provides to Ally Bank, a non-debtor subsidiary of AFI. Ally Bank is the custodian for certain loans that are serviced by ResCap. Ally Bank is not a Document Custodian for any of the securitizations at issue in the FHFA's law suit against AFI and none of the loans for which the Bank has custodial obligations are collateral in any of the securitizations at issue in the FHFA's law suit against AFI. As custodian, Ally Bank is occasionally asked to provide files for loans of which it is the custodian. Under this SOW, ResCap assists Ally Bank in processing those requests. This provision does not require ResCap

to provide any of the Loan Files to AFI for loans included in ResCap securitizations. Rather, it relates to services provided to a different entity (Ally Bank), and regarding different securitizations and different loans.

12.     FHFA has also referenced a service that AFI provides to ResCap regarding a Loan Review Plan. (*Id.,* Summary of Statement of Work From AFI To Rescap 16, page 100 of 126). That SOW provides that AFI will assist ResCap with establishing and updating an Annual Loan Review Plan. That service is provided by a small team of less than 6 employees at any time since they began reviewing mortgage loans in 2010, which provides certain credit exposure reviews for ResCap. To perform that function, those individuals review a small sample of loan files (typically 60-70 loans per review period). AFI began providing this service to ResCap in 2010, and the team only reviews loans issued during the prior six-month period. Because the last of the securitizations in FHFA's law suit closed in 2007, the loans within those securitizations would not have fallen within the scope of services AFI provides to ResCap. Further, the service provided by AFI to ResCap only covers review of a small volume of loan files, not the 40,000+ Loan Files that are at issue in the FHFA litigation. There is nothing in this statement of work that requires ResCap to provide to AFI the Loan Files from securitizations from 2005 to 2007, nor that would otherwise give AFI control over those Loan Files.

13.     The pricing of the services within the SSA is set forth in schedules C-1 and C-2 to that Agreement. Consistent with the limited nature of the services to be provided, those schedules reflect a price that is based on the historic services provided between the parties, and do not contemplate pricing for new services, including the production of 40,000+ loan files.

14.     For example, with respect to the loan review services provided by AFI to ResCap, Scheduled C-1a reflects that AFI charges $400,000 annually for that service. That price is

consistent with the limited volume of loans historically reviewed by AFI, and is set based on a percentage of the total loans reviewed. If, contrary to the parties' intention, AFI were required to review 40,000+ Loan Files from ResCap's securitizations (or even 5000 Loan Files), as opposed to the 60-70 loans per review cycle, the cost of such a review to ResCap (even if AFI could or would agree to provide such a service) would increase dramatically.

15. Similarly, the pricing of ResCap's provision of legal services to AFI ($21,481 per month as reflected on Schedule C-2 of the SSA) is consistent with the level of legal services ResCap historically provided to AFI. Such a price is not consistent with any interpretation of the SSA whereby ResCap would provide thousands of Loan Files in response to requests for such documents by AFI.

16. In short, the purpose and intent of the parties in negotiating the SSA was to create a mechanism for the temporary and transitional provision of those services that had been provided in the past between AFI and ResCap until ResCap could move those services to a third party or internalize the processes necessary to perform the functions itself. The parties never intended that agreement to cover provision of new services, such as the production of the 40,000+ Loan Files that are at issue in the FHFA litigation. The SSA specifies certain limited services that each of AFI and ResCap provide to the other, consistent with, and priced based on, historic experience. Nothing in that agreement grants AFI any ownership or control over the Loan Files in the possession of ResCap. Nor does any provision of the SSA require ResCap to provide the Loan Files to AFI.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   August ___28___, 2012

_____
Philip Marc Scheipe