**Hearing Date and Time: September 11, 2012 at 10:00 a.m. (prevailing Eastern Time)**
**(With Permission of the Court)**
**Objection Deadline: September 5, 2012 at 12:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------- x
In re:                              :   Chapter 11
                                    :
Residential Capital, LLC, et al.,   :   Case No. 12-12020 (MG)
                                    :
Debtors.                            :   Jointly Administered
                                    :
------------------------------------------------------- x
```

**NOTICE OF SUPPLEMENTAL APPLICATION PURSUANT TO**
**SECTIONS 328 AND 1103 OF THE BANKRUPTCY CODE AND FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 2014 FOR AN ORDER TO EXPAND THE**
**SCOPE OF RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT**
**BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**OF THE DEBTORS *NUNC PRO TUNC* TO AUGUST 1, 2012**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On June 27, 2012 the Official Committee of Unsecured Creditors (the "**Committee**") of the above captioned debtors and debtors-in-possession filed the Application Pursuant to Sections 328 and 1103 of the Bankruptcy Code for an Order to Retain and Employ Moelis & Company LLC as Investment Banker to the Official Committee of Unsecured Creditors to the Debtors, *Nunc Pro* Tunc, to May 16, 2012 (the "**Application**").

2.      On August 28, 2012, the Committee filed a Supplemental Application to Expand the Scope of Retetention of Moelis & Company LLC as Investment Banker to the Official Committee of Unsecured Creditors of the Debtors *Nunc Pro Tunc* to August 1, 2012 (the "**Supplemental Application**").

3.      With permission of the court, a hearing (the "**Hearing**") to consider the Supplemental Application shall be held before the Honorable Martin Glenn, United States

Bankruptcy Judge, in Room 501 of the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York, 10004, on **September 11, 2012 at 10:00 a.m.** (prevailing Eastern time).

4.       Any objections to the Supplemental Application must be made in writing, filed with the Court (with a copy to Chambers) and served in accordance with the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures entered on May 23, 2012 [Docket No. 141] (the "**Case Management Order**"), so as to be received no later than **September 5, 2012 at 12:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**").

5.       If no objections to the Supplemental Application are timely filed and served on or before the Objection Deadline, the Committee may submit to the Bankruptcy Court an order substantially in the form of the proposed order attached to the Supplemental Application as **Exhibit A** (the "**Proposed Order**").

6.       A Copy of the Supplemental Application can be obtained or viewed for a fee via PACER at www.pacer.gov or (without charge) on the Debtors' restructuring website at www.kccllc.net/rescap.

Dated:     August 28, 2012
            New York, New York

                                          KRAMER LEVIN NAFTALIS & FRANKEL LLP


                                          /s/ Douglas H. Mannal
                                          Kenneth H. Eckstein
                                          Douglas H. Mannal
                                          1177 Avenue of the Americas
                                          New York, New York 10036
                                          Telephone: (212) 715-9100

                                          *Counsel for the Official Committee of Unsecured Creditors of Residential Capital, LLC, et al.*

**Hearing Date & Time: September 11, 2012 at 10:00 a.m. (Prevailing Eastern Time)**
**(With Permission of the Court)**
**Objection Deadline: September 5, 2012 at 12:00 p.m. Eastern Time**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x
In re:                                                          :    Chapter 11
                                                                :
RESIDENTIAL CAPITAL, LLC, et al.,                               :    Case No. 12-12020 (MG)
                                                                :
                                Debtors.                        :    Jointly Administered
----------------------------------------------------------------- x

**SUPPLEMENTAL APPLICATION PURSUANT TO SECTIONS 328 AND 1103 OF THE**
**BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014**
**FOR AN ORDER TO EXPAND THE SCOPE OF RETENTION OF MOELIS &**
**COMPANY LLC AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS OF THE DEBTORS *NUNC PRO TUNC* TO AUGUST 1, 2012**

## **TABLE OF CONTENTS**

JURISDICTION AND VENUE ................................................................................................2

GENERAL BACKGROUND....................................................................................................2

SERVICES TO BE PROVIDED ..............................................................................................3

PROFESSIONAL COMPENSATION .......................................................................................4

APPLICABILITY OF CERTAIN PROVISIONS OF THE INITIAL ENGAGEMENT LETTER TO
THE SUPPLEMENTAL ENGAGEMENT LETTER ....................................................................7

EFFORTS TO AVOID DUPLICATION OF SERVICES ..............................................................8

BASIS FOR RELIEF................................................................................................................8

    A.    The Bankruptcy Code Permits the Employment and Retention of Moelis on Terms
        Substantially Similar to Those of the Supplemental Engagement Letter .............................8

    B.    The Retention of Moelis is Critical to the Committee's Role ...........................................10

NOTICE................................................................................................................................11

NO PRIOR REQUEST ..........................................................................................................11

## **TABLE OF EXHIBITS**

EXHIBIT A – Proposed Order

EXHIBIT B – Supplemental Engagement Letter

EXHIBIT C – Dermont Declaration

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the **"Committee"**) of Residential Capital, LLC (**"ResCap"**) and its affiliates that are chapter 11 debtors and debtors-in-possession (each a "**Debtor**" and collectively the "**Debtors**") in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), files this supplemental application (the "**Supplemental Application**") for the entry of an order, pursuant to sections 328 and 1103 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Bankruptcy Rules of the Southern District of New York (the "**Local Bankruptcy Rules**"), substantially in the form attached hereto as **Exhibit A**, authorizing the Committee to retain and employ Moelis & Company LLC ("**Moelis**") as investment banker to the Committee *nunc pro tunc* to August 1, 2012 in accordance with the terms and conditions set forth in the engagement letter between the Committee and Moelis, dated as of August 1, 2012 (the "**Supplemental Engagement Letter**"), a copy of which is annexed hereto as **Exhibit B** and incorporated by reference herein. The Supplemental Application is an expansion of the scope of retention of Moelis from the application dated June 27, 2012 requesting authority for the Committee to employ Moelis in these cases (the "**Initial Application**"), which will retain Moelis according to the terms and conditions set forth in the engagement letter between the Committee and Moelis, dated as of May 30, 2012 (the "**Initial Engagement Letter**"). In support of this  Supplemental Application, the Committee submits the Declaration of Jared J. Dermont, a Managing Director in the Recapitalization and Restructuring Group of Moelis (the "**Dermont Declaration**"), a copy of which is attached hereto as **Exhibit C**, and respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 328 and 1103 of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014-1.

## GENERAL BACKGROUND

4.      On May 14, 2012 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      On May 16, 2012, the United States Trustee for the Southern District of New York (the "**United States Trustee**"), pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in these Chapter 11 Cases.  The United States Trustee selected the following nine parties to serve as members of the Committee: (i) Wilmington Trust, N.A.; (ii) Deutsche Bank Trust Company Americas; (iii) The Bank of New York Mellon Trust Company, N.A.; (iv) MBIA Insurance Corporation; (v) Rowena L. Drennen; (vi) AIG Asset Management (U.S.), LLC; (vii) U.S. Bank National Association; (viii) Allstate Life Insurance Company; and (ix) Financial Guaranty Insurance Corporation.

6.      At a meeting of the Committee held on May 16, 2012, the Committee voted to retain Moelis as its investment banker.  Accordingly, this Supplemental Application is made by the Committee for an order, pursuant to sections 328 and 1102 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2014-1, authorizing the Committee to expand

the scope of its retention and employment of Moelis as its investment banker, effective as of August 1, 2012.

7.     On June 18, 2012, the Court directed the United States Trustee to appoint an examiner in these Chapter 11 Cases.

<u>**SERVICES TO BE PROVIDED**</u>

8.     In addition to the engagement in the Initial Engagement Letter as exclusive investment banker in connection with a potential Restructuring, the Committee desires to engage Moelis to act as financial advisor to the Committee in connection with the Committee's evaluation of the proposed $8.7 billion RMBS settlement and other related RMBS claims (the "<u>**RMBS Claims**</u>") in connection with the Bankruptcy Cases.    Consistent with the terms of the Supplemental Engagement Letter, Moelis' anticipated services with respect to the RMBS Claims include the following:

> a.     advise the Committee and its Counsel with respect to financial matters related to RMBS Claims and assist with research and collection of related information including CoreLogic information management;

> b.     assist the Committee and its Counsel in developing loss curves necessary for the evaluation of RMBS related lifetime losses ("<u>**Loss Analysis**</u>");

> c.     participate in meetings with Counsel, the Committee and other relevant parties related to RMBS Claims;

> d.     provide expert reports and expert testimony, as necessary, at trial on the Loss Analysis and assist Counsel in analyzing expert report and expert testimony of other parties related to RMBS Claims;

> e.     such other financial advisory services related to the foregoing as may be mutually agreed by Counsel and Moelis, both acting in good faith.

9.     A separate team of Moelis professionals (including members of Moelis' Risk Advisory Group and Restructuring & Recapitalization Group) will provide the primary services

relating to the RMBS Claims in support of the Moelis team that is providing the investment banking services that were the subject of the Initial Application.

## PROFESSIONAL COMPENSATION

10.     In addition to the fees set forth in the Initial Engagement Letter, the Supplemental Engagement Letter provides for the following compensation structure (the "**RMBS Fee Structure**") with respect to the RMBS Claims:

> a.     Monthly Fee. A non-refundable cash fee of $600,000 per month (the "Initial RMBS Claims Monthly Fee") for August 2012 and September 2012, and $300,000 per month for each subsequent month until the time in which the Committee notifies Moelis in writing (which may be through email) that it no longer requires Moelis to perform services with respect to the RMBS Claims (the "Adjusted RMBS Claims Monthly Fee").[1]  The first payment for August 2012 shall be payable upon entry of the Bankruptcy Court order approving Moelis' engagement under the Supplemental Engagement Letter and each subsequent payment shall be payable upon the first day of each subsequent month.

11.     In addition to any fees payable to Moelis, Moelis will charge the Debtors for all reasonable out-of-pocket expenses incurred in connection with the engagement and its retention in the Chapter 11 Cases. Such expenses include without limitation document production costs, travel costs, meals, and the fees, disbursements, and other charges of Moelis' external legal counsel (without the need for such legal counsel to be retained as a professional in the Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

12.     Specifically, Moelis will seek reimbursement of the fees and expenses of CoreLogic Solutions, LLC ("**CoreLogic**"), which will provide certain administrative services, including:

---

[1]     For the avoidance of doubt, the RMBS Claims Monthly Fees under the Supplemental Engagement Letter will not be credited toward any Restructuring Fee earned by Moelis under the Initial Engagement Letter.

a.  comparison with the loan portfolios of other mortgage originators which have entered into settlements with that of the loan portfolio being examined;

b.  comparison of the specific loan criteria/ credit underwriting results for the various loan product types and shelves that were subject to recent settlements;

c.  performance of representation and warranty due diligence, and any further potential customized work on representation and warranty breaches.[2]

13.  Moelis expects that pursuant to a Master License Agreement and corresponding statements of work that are currently being negotiated between Moelis and CoreLogic, Moelis would pay CoreLogic the following fees: (x) $30,000 for up to 20 hours of advisory services and $5,000 for each additional 10 hour block of advisory services, (y) $10 for each loan submitted to CoreLogic for representation and warranty services (with a minimum order obligation of $25,000), and (z) $30,000 for home price index forecasts to be provided by CoreLogic.  Through its monthly statements and fee applications, Moelis intends to seek reimbursement from the Debtors' estates (as out-of pocket expenses of Moelis) of the amount of CoreLogic's fees and any other fees and expenses charged by CoreLogic.

14.  As customary in this District, the Committee and Moelis request that, except with respect to the U.S. Trustee, Moelis' compensation, expense reimbursement, indemnification, contribution and reimbursement provisions not be subject to any standard of review other than section 328(a) of the Bankruptcy Code.

15.  The Committee understands that Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these

---

[2]  Moelis intends to request reimbursement of CoreLogic's fees and expenses in Moelis' own fee applications, and the proposed order granting the Supplemental Application would specifically grant Moelis authority to do so.

Chapter 11 Cases in accordance with the applicable procedures of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, General Order M-389, and any other compensation procedures adopted by this Court (to the extent compliance is not waived therein or in the order approving Moelis' retention).  Moelis also will maintain records in support of any actual, necessary costs and expenses incurred in connection with its rendering of services in the Chapter 11 Cases.

16.     However, because the Committee understands (a) that it is not the general practice of investment banking firms like Moelis to keep detailed time records similar to those customarily kept by attorneys; (b) Moelis does not ordinarily keep time records on a "project category" basis; and (c) Moelis' compensation is based on a flat Monthly Fee and a flat Restructuring Fee, the Committee respectfully requests that only Moelis' restructuring professionals be required to maintain records (in summary format) of the services rendered for the Committee, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments) and the identity of the restructuring professionals who provided those services.  Moelis will present such records to the Court in its fee applications.  Moreover, the Committee respectfully requests that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that Moelis' non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that Moelis not be required to provide or conform to any schedule of hourly rates.  To the extent that Moelis would otherwise be required to submit more detailed time records by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, General Order M-389, or other applicable procedures and orders of the Court, the Committee respectfully requests that this Court waive such requirements.

17.    The Committee and Moelis have agreed upon the RMBS Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these RMBS Claims and in light of the facts that (a) such commitment may foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Supplemental Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

18.    Moelis has informed the Committee that the RMBS Fee Structure is consistent with, and typical of, compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances.  Moelis also discussed the terms of its retention in arm's-length negotiations with the Committee.  The Committee believes the RMBS Fee Structure is reasonable, market-based and designed to compensate Moelis fairly for its work.

19.    The Committee understands that Moelis' decision to advise and assist the Committee in connection with the RMBS Claims is subject to its ability to be retained in accordance with the terms of the Supplemental Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code (except that, as customary in this District, only the U.S. Trustee may challenge the reasonableness of Moelis' compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code).

**APPLICABILITY OF CERTAIN PROVISIONS OF THE INITIAL ENGAGEMENT LETTER TO THE SUPPLEMENTAL ENGAGEMENT LETTER**

20.    All the provisions of the Initial Engagement Letter applicable to Moelis' engagement with respect to a Restructuring Transaction shall apply equally to Moelis' additional engagement with respect to the RMBS Claims under the Supplemental Engagement Letter as if

references to the Restructuring Transaction were references to the RMBS Claims, including without limitation (headings are just for reference): Section 4 (right to rely on information), Section 5 (confidentiality of Moelis' advice), Section 6 and Annex A (independent contractor and indemnification), Section 7 (termination), Section 8 (Moelis' other businesses) and Section 9 (New York law and jurisdiction and miscellaneous).

## EFFORTS TO AVOID DUPLICATION OF SERVICES

21.    The Committee intends for Moelis' services to complement, and not duplicate, the services to be rendered by any other professional retained by the Committee in the Chapter 11 Cases.  The Committee seeks to retain other professionals during the term of Moelis' engagement. To avoid unnecessary duplication of services during the pendency of the Chapter 11 Cases to the extent practicable, Moelis will use its reasonable efforts to work cooperatively with the Committee's other professionals to integrate any respective work performed by those professionals on behalf of the Committee.

## BASIS FOR RELIEF

**A.    The Bankruptcy Code Permits the Employment and Retention
of Moelis on Terms Substantially Similar to Those of the
Supplemental Engagement Letter**

22.    The Committee seeks approval of the Supplemental Engagement Letter, including the RMBS Fee Structure, pursuant to section 328(a) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in relevant part, that a committee "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ."  11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals,

including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.   As the United States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

23.     Further, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee basis, or on a contingent fee basis*.

See 11 U.S.C. § 328(a) (emphasis added).   Section 328(a) of the Bankruptcy Code, as amended, now makes clear that a professional may be retained, subject to bankruptcy court approval, on a fixed fee and contingent fee basis such as the RMBS Fee Structure in the Supplemental Engagement Letter.

24.     Given the numerous issues that Moelis may be required to address in the performance of its services for the Committee, Moelis' commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Moelis' services for engagements of this nature, the Committee believes that the terms and conditions of

9

the Supplemental Engagement Letter are fair, reasonable and market-based under the standards set

forth in section 328(a) of the Bankruptcy Code.

25.     The Committee believes that the RMBS Fee Structure appropriately reflects the

nature and scope of services to be provided by Moelis, Moelis' substantial experience with respect

to investment banking services and the fee structures typically utilized by Moelis and other

leading investment banks that do not bill their clients on an hourly basis.  Indeed, monthly fee and

transaction fee arrangements in other large chapter 11 cases have been routinely approved and

implemented by courts in this District. See, e.g., In re General Maritime Corporation, No. 11-

15285 (MG) (Bankr. S.D.N.Y. Jan. 12, 2012); In re Ion Media Networks, Inc., No. 09-13125

(Bankr. S.D.N.Y. July 13, 2009); In re Charter Commc'ns, Inc., No. 09-11435 (Bankr. S.D.N.Y.

Apr. 15, 2009); In re Motors Liquidation Co. (f/k/a Gen. Motors  Corp.), No. 09-50026 (REG)

(Bankr. S.D.N.Y. Aug. 18, 2009); and In re Bally Total Fitness of Greater New York, Inc., No.

08-14818 (BRL) (Bankr. S.D.N.Y. Feb. 10, 2009).

**B.      The Retention of Moelis is Critical to the Committee's Role**

26.     The Committee requires the RMBS Claims services described herein to be

performed in order to fully carry out its duties. Accordingly, the Committee submits that the

expansion of the scope of Moelis' retention is critical.

27.     Based on the foregoing, the Committee respectfully submits that it has satisfied the

requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry

of an order authorizing the Committee to retain and employ Moelis in these Chapter 11 Cases on

the terms described herein and in the Supplemental Engagement Letter, *nunc pro tunc* to August 1,

2012.

## NOTICE

28.     In accordance with the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 141] (the "**Case Management Order**"), notice of this Supplemental Application has been given to all parties listed on the Monthly Service List (as defined in the Case Management Order). Because of the nature of the relief requested, the Committee submits that such notice is sufficient and that no further notice of the relief requested in the Supplemental Application need be provided.

## NO PRIOR REQUEST

29.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Committee respectfully requests that the Court enter the Order granting the relief requested therein and such other and further relief as the Court may deem proper.

Dated: New York, New York
        August 28, 2012

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF RESIDENTIAL
CAPITAL, LLC, <u>et al.</u>,


By:  _/s/ Julie Becker_____
        Julie Becker, Vice President, Corporate Capital
        Markets, Wilmington Trust, N.A.

        Co-Chair, Official Committee of Unsecured
        Creditors of Residential Capital, LLC, <u>et al</u>.

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
In re:                                          :        Chapter 11
                                                :
RESIDENTIAL CAPITAL, LLC, et al.,               :        Case No. 12-12020 (MG)
                                                :
                        Debtors.                :        Jointly Administered
-----------------------------------------------------------------x
```

## ORDER AUTHORIZING THE EXPANDED SCOPE OF
## RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER TO
## THE COMMITTEE *NUNC PRO TUNC* TO AUGUST 1, 2012

Upon the application (the "**Supplemental Application**")[1] of the Committee for entry of

an order (the "**Order**") pursuant to sections 328(a) and 1103 of the Bankruptcy Code, Rules

2014(a) and 2016 of the Bankruptcy Rules and Rules 2014-1 and 2016-1 of the Local Rules,

authorizing the Committee to expand the scope of retention of Moelis & Company LLC

("**Moelis**") as its investment banker in accordance with the terms and conditions set forth in the

Supplemental Engagement Letter, *nunc pro tunc* to August 1, 2012, as described in the

Supplemental Application and the Dermont Declaration; and the Court having jurisdiction to

consider the Supplemental Application and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334; and consideration of the Supplemental Application and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Supplemental Application being adequate and appropriate under the particular circumstances

having been given; and a hearing having been held to consider the relief requested by the

Supplemental Application (the "**Hearing**"); and upon consideration of the Supplemental

---

[1]     Capitalized terms used and not otherwise defined herein shall have the meanings set forth for such terms in
the Supplemental Application.

Application, the Dermont Declaration, the record of the Hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Supplemental Application is in the best interests of the Committee, the Debtors' estates, their creditors and other parties in interest, and that the legal and factual bases set forth in the Supplemental Application and the Dermont Declaration establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and the Court being satisfied based on the representations made in the Supplemental Application and the Dermont Declaration, and the Court hereby finds, that (a) Moelis does not represent in connection with these chapter 11 cases any other party having an adverse interest to the Committee or the Debtors and (b) Moelis is eligible for retention by the Committee pursuant to sections 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Supplemental Application is granted to the extent provided herein.

2.      The provisions set forth in the Supplemental Engagement Letter (and all attachments thereto) are hereby approved, except as otherwise expressly provided herein to the contrary.  In accordance with sections 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1, the Committee is authorized to expand the scope of retention of Moelis in accordance with the terms and conditions set forth in the Supplemental Engagement Letter, *nunc pro tunc* to August 1, 2012.

3.      Subject to Paragraphs 4 and 6 of this Order, all of Moelis' fees and reimbursement of expenses under the Supplemental Engagement Letter, and the indemnification, contribution and reimbursement provisions of the Initial Engagement Letter, are all hereby

approved pursuant to section 328(a) of the Bankruptcy Code. The Debtors are authorized and directed to perform their payment, indemnification, contribution and reimbursement obligations and its non-monetary obligations under the Supplemental Engagement Letter, except as otherwise expressly provided herein. Subject to Paragraphs 4 and 6 of this Order, all compensation, reimbursement of expenses, indemnification, contribution and reimbursement to Moelis and any Indemnified Person (as defined in the Initial Engagement Letter) under the Supplemental Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review including but not limited to that set forth in section 330 of the Bankruptcy Code.

4.      Moelis is hereby authorized to request reimbursement of CoreLogic Solutions, LLC's fees and expenses in Moelis' own monthly statements and fee applications.

5.      The United States Trustee retains all rights to object to Moelis' interim and final fee applications (including its Monthly Fee, its Restructuring Fee and expense reimbursements) on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code and solely in adjudicating any objection filed by the United States Trustee, the Court retains the right to review the interim and final applications pursuant to section 330 of the Bankruptcy Code.

6.      Moelis will file applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code and such Bankruptcy Rules as may then be applicable, from time to time, and such procedures as may be fixed by order of this Court; *provided, however*, that the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Trustee Guidelines and Local Rule 2016-1 and any other compensation procedures adopted by this Court are hereby modified such that

- 3 -

(a) Moelis' restructuring professionals shall be required only to keep reasonably-detailed time records in half-hour increments and to submit, with any interim or final fee application, together with the time records, a narrative summary, by project categories as selected by Moelis, of services rendered and will identify each professional rendering services and the categories of services rendered, (b) Moelis' non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep any time records, and (c) Moelis shall not be required to provide or conform to any schedule of hourly rates.

7.      Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among Ally Financial Inc. ("**AFI**"), Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

8.      In the event of a conflict between the Supplemental Engagement Letter, the Supplemental Application, and the express terms of this Order, the express terms of this Order shall govern.

9.      The Committee and Moelis are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

10.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.    Notwithstanding any provision to the contrary in the Supplemental Application or the Supplemental Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order.


Dated:  New York, New York
            _____, 2012



                                        _____
                                        THE HONORABLE MARTIN GLENN
                                        UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Supplemental Engagement Letter**

August 1, 2012

PRIVILEGED AND CONFIDENTIAL

The Official Committee of Unsecured Creditors of Residential Capital, LLC, et al.
c/o Kramer, Levin, Naftalis, & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Ladies & Gentlemen:

1.  This agreement supplements (this "Supplement") the engagement letter, dated May 30, 2012 (the "Engagement Letter"), between the Official Committee of Unsecured Creditors (the "Committee" or "you") appointed in the chapter 11 cases (the "Bankruptcy Cases") of Residential Capital, LLC ("ResCap") and its affiliates and subsidiaries that are or later become debtors in the Bankruptcy Cases (collectively with all affiliates and all entities formed or invested in to consummate a Restructuring Transaction, and with any successor to or assignee of all or any portion of the assets and/or businesses pursuant to a Plan or otherwise, the "Company" or the "Debtors"), which Bankruptcy Cases are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and Moelis & Company LLC ("Moelis" or "we").  In addition to the engagement in the Engagement Letter as exclusive investment banker in connection with a potential Restructuring as defined therein, the Committee hereby also engages Moelis to act as financial advisor to the Committee in connection with the Committee's evaluation of the proposed $8.7 billion RMBS settlement and other related RMBS claims (the "RMBS Claims") in connection with the Bankruptcy Cases.

As part of our engagement with respect to the RMBS Claims, we will, if appropriate and requested:

(a)    advise the Committee and its Counsel with respect to financial matters related to RMBS Claims and assist with research and collection of related information including CoreLogic information management;

(b)    assist the Committee and its Counsel in developing loss curves necessary for the evaluation of RMBS related lifetime losses ("Loss Analysis");

(c)    participate in meetings with Counsel, the Committee and other relevant parties related to RMBS Claims;

(d)    provide expert reports and expert testimony, if necessary, at trial on the Loss Analysis and assist Counsel in analyzing expert reports and expert testimony of other parties related to RMBS Claims;

(d)    such other financial advisory services related to the foregoing as may be mutually agreed by Counsel and Moelis, both acting in good faith.

The nature and scope of our investigation and analysis, as well as the scope, form and substance of any expert report or testimony shall be such as we deem appropriate.  If we are asked to reach conclusions or form opinions, we will do so without regard to the impact that such conclusions or opinions may have upon the RMBS Claims.  Please note that Moelis does not provide legal, tax or accounting advice.

Moelis agrees not to consult with, or engage the services of, any other person or entity other than Moelis employees, consultants who are registered representatives of Moelis, CoreLogic, consultants also retained

by the Committee for the purposes of the RMBS Claims, and legal counsel, to assist Moelis with this engagement without the Committee's prior written consent.

2.   As compensation for our services with respect to the RMBS Claims, the Company and its bankruptcy estates will pay us the fees set forth below.  We acknowledge that neither the Committee, nor any of its individual members, nor any of the Committee's advisors or professionals (including, but not limited to, counsel to the Committee), shall have any obligation to pay our fees or expenses or any indemnity amounts. The payment of these fees shall be subject to the applicable procedures of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and applicable local rules, guidelines and Bankruptcy Court orders:

**<u>Monthly Fee</u>**
A non-refundable cash fee of $600,000 per month (the "Initial RMBS Claims Monthly Fee") for August 2012 and September 2012, and $300,000 per month for each subsequent month until the time in which the Committee notifies Moelis in writing (which may be through email) that it no longer requires Moelis to perform services with respect to the RMBS Claims (the "Adjusted RMBS Claims Monthly Fee"). Subject to the Bankruptcy Court's order governing compensation of professionals, the first payment for August 2012 shall be payable upon entry of the Bankruptcy Court order approving Moelis' engagement under this Supplement and each subsequent payment shall be payable upon the first day of each subsequent month.

For the avoidance of doubt, the RMBS Claim Monthly Fees under this Supplement will not be credited toward any Restructuring Fee earned by Moelis under the Engagement Letter.

You will reimburse us for all of our expenses, including the fees and expenses of CoreLogic as they are incurred in entering into and performing services pursuant to this Supplement, including the reasonable costs of our legal counsel.

3.   All the provisions of the Engagement Letter applicable to Moelis' engagement with respect to a Restructuring Transaction shall apply equally to Moelis' additional engagement with respect to the RMBS Claims under this Supplement as if references to the Restructuring Transaction were references to the RMBS Claims, including without limitation (headings are just for reference): Section 4 (right to rely on information), Section 5 (confidentiality of Moelis' advice), Section 6 and Annex A (independent contractor and indemnification), Section 7 (termination), Section 8 (Moelis' other businesses) and Section 9 (New York law and jurisdiction and miscellaneous).

This Supplement is incorporated into the Engagement Letter and the Engagement Letter as supplemented by this Supplement shall remain in full force and effect.

*(Signature page follows)*

Very truly yours,

MOELIS & COMPANY LLC

By: _____
    Name:  Yadin Rozov
    Title:   Managing Director

Agreed to as of the date first written above:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF RESIDENTIAL CAPITAL, LLC, ET AL.

By: _____
    Name: Julie J. Becker
    Title: Co-Chair
    Wilmington Trust, N.A
        As Indenture Trustee

3

## Exhibit C

**Dermont Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re:                                    :        Chapter 11
                                          :
RESIDENTIAL CAPITAL, LLC, et al.,         :        Case No. 12-12020 (MG)
                                          :
                       Debtors.           :        Jointly Administered
-------------------------------------------------------------------x

**DECLARATION OF JARED J. DERMONT IN SUPPORT OF
THE SUPPLEMENTAL APPLICATION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF
AN ORDER AUTHORIZING  EXPANSION OF THE SCOPE OF
RETENTION OF MOELIS & COMPANY LLC AS ITS
INVESTMENT BANKER *NUNC PRO TUNC* TO AUGUST 1, 2012**

Pursuant to 28 U.S.C. § 1746, I, Jared J. Dermont, hereby declare as follows under
penalty of perjury:

1.      I am a Managing Director in the Recapitalization and Restructuring Group of
Moelis & Company LLC ("**Moelis**"), resident in Moelis' New York office, located at 399 Park
Avenue, 5th Floor, New York, New York 10022.

2.      I am authorized to submit this declaration (the "**Declaration**") in support of the
supplemental application (the "**Supplemental Application**") of the Official Committee of
Unsecured Creditors (the **"Committee"**) of Residential Capital, LLC ("**ResCap**") and its
affiliates that are chapter 11 debtors and debtors-in-possession (each a "**Debtor**" and collectively
the "**Debtors**," and together with their non-Debtor affiliates, the "**Company**") in the above-
referenced chapter 11 cases (the "**Chapter 11 Cases**") for (a) the entry of an order, authorizing
the Committee to expand the scope of its retention of Moelis as investment banker to the
Committee *nunc pro tunc* to August 1, 2012, pursuant to sections 328(a) and 1103 of title 11 of
the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), (b) approving the

provisions of the Supplemental Engagement Letter, including the compensation and expense
reimbursement arrangements, (c) modifying the time-keeping requirements of Bankruptcy Rule
2016, Local Rule 2016-1, the guidelines (the "**Trustee Guidelines**") of the United States Trustee
for the Southern District of New York (the "**U.S. Trustee**"), and this Court's General Order M-
389 in connection with Moelis' engagement.  The Supplemental Application is an expansion of
the scope of retention of Moelis from the application dated June 27, 2012 requesting authority
for the Committee to employ Moelis in these cases (the "**Initial Application**"), which will retain
Moelis according to the terms and conditions set forth in the engagement letter between the
Committee and Moelis, dated as of May 30, 2012 (the "**Initial Engagement Letter**").

3.      The facts set forth in this Declaration are based upon my personal knowledge,
upon information and belief, or upon client matter records kept in the ordinary course of business
that were reviewed either by me or other employees of Moelis under my general supervision and
direction.  If called and sworn as a witness, I could and would testify competently to the facts set
forth herein.

### Services to Be Provided

4.      In addition to the engagement in the Initial Engagement Letter as exclusive
banker in connection with a potential Restructuring, the Committee desires to engage Moelis to
act as financial advisor to the Committee in connection with the Committee's evaluation of the
proposed $8.7 billion RMBS settlement and other related RMBS claims (the "**RMBS Claims**")
in connection with the Bankruptcy Cases.  Consistent with the terms of the Supplemental
Engagement Letter, Moelis' anticipated services with respect to the RMBS Claims include the
following:

       a.      advise the Committee and its Counsel with respect to financial
matters related to RMBS Claims and assist with research and

collection of related information including CoreLogic information management;

b.      assist the Committee and its Counsel in developing loss curves necessary for the evaluation of RMBS related lifetime losses ("**Loss Analysis**");

c.      participate in meetings with Counsel, the Committee and other relevant parties related to RMBS Claims;

d.      provide expert reports and expert testimony, as necessary, at trial on the Loss Analysis and assist Counsel in analyzing expert report and expert testimony of other parties related to RMBS Claims;

e.      such other financial advisory services related to the foregoing as may be mutually agreed by Counsel and Moelis, both acting in good faith.

5.      A separate team of Moelis professionals (including members of Moelis' Risk Advisory Group and Restructuring & Recapitalization Group) will provide the primary services relating to the RMBS Claims in support of the Moelis team that is providing the investment banking services that were the subject of the Initial Application.

## **Professional Compensation**

6.      In addition to the fees set forth in the Initial Engagement Letter, the Supplemental Engagement Letter provides for the following compensation structure (the "**RMBS Fee Structure**") with respect to the RMBS Claims:

a.      Monthly Fee. A non-refundable cash fee of $600,000 per month (the "Initial RMBS Claims Monthly Fee") for August 2012 and September 2012, and $300,000 per month for each subsequent month until the time in which the Committee notifies Moelis in writing (which may be through email) that it no longer requires Moelis to perform services with respect to the RMBS Claims (the "Adjusted RMBS Claims Monthly Fee").[1] The first payment for August 2012 shall be payable upon entry of the Bankruptcy Court order approving Moelis' engagement under the Supplemental

---

[1]      For the avoidance of doubt, the RMBS Claims Monthly Fees under the Supplemental Engagement Letter will not be credited toward any Restructuring Fee earned by Moelis under the Initial Engagement Letter.

3

> Engagement Letter and each subsequent payment shall be payable upon the first day of each subsequent month.

7.       In addition to any fees payable to Moelis, Moelis will charge the Debtors for all reasonable out-of-pocket expenses incurred in connection with the engagement and its retention in the Chapter 11 Cases. Such expenses include without limitation document production costs, travel costs, meals, and the fees, disbursements, and other charges of Moelis' external legal counsel (without the need for such legal counsel to be retained as a professional in the Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

8.       Specifically, Moelis will seek reimbursement of the fees and expenses of CoreLogic Solutions, LLC ("**CoreLogic**"), which will provide certain administrative services, including:

   a.      comparison with the loan portfolios of other mortgage originators which have entered into settlements with that of the loan portfolio being examined;

   b.      comparison of the specific loan criteria/credit underwriting results for the various loan product types and shelves that were subject to recent settlements;

   c.      performance of representation and warranty due diligence, and any further potential customized work on representation and warranty breaches.[2]

9.       Moelis expects that pursuant to a Master License Agreement and corresponding statements of work that are currently being negotiated between Moelis and CoreLogic, Moelis would pay CoreLogic the following fees: (x) $30,000 for up to 20 hours of advisory services and $5,000 for each additional 10 hour block of advisory services, (y) $10 for each loan submitted to

---

[2]      Moelis intends to request reimbursement of CoreLogic's fees and expenses in Moelis' own fee applications, and the proposed order granting the Supplemental Application would specifically grant Moelis authority to do so.

CoreLogic for representation and warranty services (with a minimum order obligation of $25,000), and (z) $30,000 for home price index forecasts to be provided by CoreLogic. Through its monthly statements and fee applications, Moelis intends to seek reimbursement from the Debtors' estates (as out-of pocket expenses of Moelis) of the amount of CoreLogic's fees and any other fees and expenses charged by CoreLogic.

10.    As customary in this District, the Committee and Moelis request that, except with respect to the U.S. Trustee, Moelis' compensation, expense reimbursement, indemnification, contribution and reimbursement provisions not be subject to any standard of review other than section 328(a) of the Bankruptcy Code.

11.    Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases in accordance with the applicable procedures of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, General Order M-389, and any other compensation procedures adopted by this Court (to the extent compliance is not waived therein or in the order approving Moelis' retention). Moelis also will maintain records in support of any actual, necessary costs and expenses incurred in connection with its rendering of services in the Chapter 11 Cases.

12.    However, because the Committee understands (a) that it is not the general practice of investment banking firms like Moelis to keep detailed time records similar to those customarily kept by attorneys; (b) Moelis does not ordinarily keep time records on a "project category" basis; and (c) Moelis' compensation is based on a flat Monthly Fee and a flat Restructuring Fee, Moelis respectfully requests that only its restructuring professionals be required to maintain records (in summary format) of the services rendered for the Committee, including summary descriptions of those services, the approximate time expended in providing

those services (in hourly increments) and the identity of the restructuring professionals who provided those services. Moelis will present such records to the Court in its fee applications. Moreover, Moelis respectfully requests that its restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates. To the extent that Moelis would otherwise be required to submit more detailed time records by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, General Order M-389, or other applicable procedures and orders of the Court, Moelis respectfully requests that this Court waive such requirements.

13.    The Committee and Moelis have agreed upon the RMBS Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these RMBS Claims and in light of the facts that (a) such commitment may foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Supplemental Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

14.    Moelis has informed the Committee that the RMBS Fee Structure is consistent with, and typical of, compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances. Moelis also discussed the terms of its retention in arm's-length negotiations with the Committee. The Committee believes the RMBS Fee Structure is reasonable, market-based and designed to compensate Moelis fairly for its work.

6

15.    The Committee understands that Moelis' decision to advise and assist the Committee in connection with the RMBS Claims is subject to its ability to be retained in accordance with the terms of the Supplemental Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code (except that, as customary in this District, only the U.S. Trustee may challenge the reasonableness of Moelis' compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code).

16.    Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than other principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code. [3]

## Applicability of Certain Provisions of the Initial Engagement
## Letter to the Supplemental Engagement Letter

17.    All the provisions of the Initial Engagement Letter applicable to Moelis' engagement with respect to a Restructuring Transaction shall apply equally to Moelis' additional engagement with respect to the RMBS Claims under the Supplemental Engagement Letter as if references to the Restructuring Transaction were references to the RMBS Claims, including without limitation (headings are just for reference): Section 4 (right to rely on information), Section 5 (confidentiality of Moelis' advice), Section 6 and Annex A (independent contractor

---

[3] In the ordinary course of its business, Moelis regularly retains the services of senior advisors with specific industry or other expertise to supplement the financial advisory services offered by Moelis' regular employees to Moelis' clients. Upon Moelis' engagement on a particular assignment, one or more such senior advisors may be assigned to assist the other Moelis professionals for such engagement. Such advisors act under the management of the Moelis Managing Director who retains the lead role and primary responsibility for such assignment. The fees and expenses of such senior advisors are paid solely by Moelis. The Committee submits that such senior advisors are regular associates of Moelis within the meaning of section 504 of the Bankruptcy Code.

and indemnification), Section 7 (termination), Section 8 (Moelis' other businesses) and Section 9 (New York law and jurisdiction and miscellaneous).

### Efforts to Avoid Duplication of Services

18.     Moelis' services are intended to complement, and not duplicate, the services to be rendered by any other professional retained by the Committee in the Chapter 11 Cases.  Moelis understands that the Committee seeks to retain and may retain additional professionals during the term of Moelis' engagement.  To avoid unnecessary duplication of services during the pendency of the Chapter 11 Cases to the extent practicable, Moelis will use its reasonable efforts to work cooperatively with the Committee's other professionals to integrate any respective work performed by those professionals on behalf of the Committee.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

For the reasons set forth in my declaration filed contemporaneously with the Initial Application, I believe that Moelis may continue to act as investment banker for the Committee, and may also act as financial advisor to the Committee in connection with the Committee's evaluation of the RMBS Claims, pursuant to all applicable sections of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my information, knowledge and belief.

Executed on: August 28, 2012

MOELIS & COMPANY LLC


By:    /s/ Jared J. Dermont
        Jared J. Dermont
        Managing Director