1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12020-mg

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RESIDENTIAL CAPITAL, LLC, et al.,

9

10                  Debtors.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14                  United States Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  August 29, 2012

19                  10:02 AM

20

21   B E F O R E:

22   HON. MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25

1

2   (CC: Doc no. 1106) Application of the Examiner for Order

3   Authorizing the Retention and Employment of Mesirow Financial

4   Consulting, LLC as Financial Advisor to the Examiner Nunc Pro

5   Tunc to July 24, 2012 filed by Howard Seife on behalf of Arthur

6   J. Gonzalez, Examiner.

7

8   (CC: Doc# 1026, 1212) Motion for Relief from Stay Re: Letter

9   from Julio Pichardo regarding Relief from the Automatic Stay As

10  this Involves Personal Injury.

11

12  (CC: Doc# 1014) Motion to Set Last Day to File Proofs of Claim/

13  Debtors' Application for Order (I) Establishing Deadline for

14  Filing Proofs of Claim and (II) Approving Manner the Form and

15  Manner of Notice Thereof.

16

17  Doc# 1094 Motion for Sale of Property under Section 363(b) /

18  Debtors Motion Pursuant to 11 U.S.C. Sections 105, 363 and 365

19  to (A) Establish Procedures for the Sale or Disposal of De

20  Minimis Assets; and (B) Authorize the Debtors to (I) Pay

21  Related Fees and Expenses and (II) Assume, Assign or Reject

22  Related Executory Contracts and Unexpired Leases.

23

24

25

1

2   A P P E A R A N C E S :

3   MORRISON & FOERSETER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8   BY:   LORENZO MARINUZZI, ESQ.

9        ERICA J. RICHARDS, ESQ.

10       SAMANTHA MARTIN, ESQ.

11       NORMAN S. ROSENBAUM, ESQ.

12

13

14  U.S. DEPARTMENT OF JUSTICE

15       Office of the United States Trustee

16       33 Whitehall Street

17       21st Floor

18       New York, NY 10004

19

20  BY:   MICHAEL DRISCOLL, ESQ.

21

22

23

24

25

4

1

2  KRAMER LEVIN NAFTALIS & FRANKEL, LLP

3         Attorneys for Official Creditors' Committee

4         1177 Avenue of the Americas

5         New York, NY 10036

6

7  BY:   DOUGLAS MANNAL, ESQ.

8         RACHAEL L. RINGER, ESQ.

9

10

11  ROPES & GRAY LLP

12         Attorneys for RMBS Holders Group

13         800 Boylston Street

14         Boston, MA 02199

15

16  BY:   D. ROSS MARTIN, ESQ.

17

18

19  KIRKLAND & ELLIS LLP

20         Attorneys for Ally Financial Inc. and Ally Bank

21         601 Lexington Avenue

22         New York, NY 10022

23

24  BY:   ANTHONY GROSSI, ESQ.

25         CRAIG A. BRUENS, ESQ.

```
 1

 2  CHADBOURNE & PARKE LLP

 3          Attorneys for the Examiner

 4          30 Rockefeller Plaza

 5          New York, NY 10112

 6

 7  BY:   ROBERT J. GAYDA, ESQ.

 8

 9

10  SIDLEY AUSTIN LLP

11          Attorneys for Nationstar

12          One South Dearborn

13          Chicago, IL 60603

14

15  BY:   LARRY J. NYHAN, ESQ. (TELEPHONICALLY)

16          JESSICA C.K. BOELTER, ESQ. (TELEPHONICALLY)

17

18

19  HOOD & LAY LLC

20          Attorneys for Derrius Silmon

21          1117 22nd Street South

22          Suite 101

23          Birmingham, AL 35205

24

25  BY:   RHONDA S. HOOD, ESQ. (TELEPHONICALLY)
```

```
 1
 2   MCKOOL SMITH
 3          Attorneys for Freddie Mac
 4          600 Travis Street
 5          Suite 7000
 6          Houston, TX 77002
 7
 8   BY:    PAUL MOAK, ESQ. (TELEPHONICALLY)
 9
10
11   BRADLEY ARANT BOULT CUMMINGS LLP
12          Attorneys for GMAC Mortgage
13          1819 Fifth Avenue North
14          Birmingham, AL 35203
15
16   BY:    BLAKE B. GOODSELL, ESQ. (TELEPHONICALLY)
17          JON H. PATTERSON, ESQ. (TELEPHONICALLY)
18
19
20
21
22
23
24
25
```

1

2

3  ALSO PRESENT:  (TELEPHONICALLY)

4        JULIO PICHARDO, Pro Se

5        JENNIFER SCOLAIRD, Ally Financial

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1                P R O C E E D I N G S

2            THE COURT:  Please be seated.  All right.  We're here

3    on Residential Capital, number 12-12020.  Mr. Marinuzzi?

4            MR. MARINUZZI:  Good morning, Your Honor.  We are here

5    on thankfully, a very short agenda.  The first two pages of the

6    agenda reflect hearings that have been adjourned to the

7    September 11th hearing.  I wish I could say that the agenda for

8    the September 11th hearing will be short, but I suspect that

9    won't be the case.

10           THE COURT:  Well, I'm concerned.  Because there have

11   been some requests to add additional matters to September 11th,

12   which is, at this point, very crowded.  So no one should

13   expect, at this point, to be asking to have anything added to

14   it.  Go ahead.

15           MR. MARINUZZI:  We have no intention of asking, Your

16   Honor.

17           The first item on the agenda that's going forward this

18   morning, Your Honor, is the telephonic status conference

19   relating to the state court litigation of GMAC Mortgage v.

20   Silmon.

21           THE COURT:  Yes.

22           MR. MARINUZZI:  Lawyers for GMAC Mortgage and for Mr.

23   Silman are on the phone.  From Bradley Arant, are Blake Goodson

24   (sic) and Jon Patterson.  And counsel for the defendant, Ms.

25   Rhonda Hood, is also available on the telephone.  We understand

1    that the Court requested that we have a status conference on

2    this matter, so they're on.

3              THE COURT:  I did.  And let me say at the outset, I

4    received a telephone call last week from Judge Nicole Still,

5    who's the state court judge in Alabama, before whom the matter

6    is pending.  Judge Still called and indicated that this matter

7    in which GMAC is the plaintiff and seeks to recover possession

8    of property on which GMAC completed nonjudicial foreclosure in

9    Alabama, is scheduled for trial on September 17th.  She also

10   indicated to me that GMAC has made a motion for summary

11   judgment in the case which is pending.

12             In response to GMAC's claim, as I understand it -- and

13   I haven't seen the pleadings -- but what Judge Still told me is

14   that the defendant asserted affirmative defenses and

15   counterclaims.  GMAC's motion for summary judgment, as I

16   understand, seeks to strike affirmative defenses and seeks

17   summary judgment with respect to the counterclaims.

18             Judge Still indicated that the affirmative defenses

19   and the counterclaims are essentially -- overlap or duplicative

20   of each other.  She also indicated that under Alabama law,

21   claims can be asserted both as affirmative defenses and seek

22   affirmative relief.

23             I sent Judge Still copies of two of my recent

24   decisions on lift stays in this case.  I believe I sent her the

25   Corla Jackson opinion and also the Taggart opinion, really just

1  for informational purposes.  Judge Still indicated that she had

2  had a conference with the state court counsel in the case and

3  there was uncertainty about what she, Judge Still, could rule

4  on with respect to the summary judgment motions.  She also

5  indicated a desire, if possible, to go ahead with the September

6  17th trial, which was described to me as a bench trial.

7        I suggested to Judge Still that she contact counsel in

8  the case and that GMAC's counsel contact Morrison & Foerster

9  and seek to schedule the conference that we're now having.  So

10 that is the sum and substance of my conversations with Judge

11 Still.  She did not -- I want to make clear -- she did not -- I

12 did not discuss the merits of either GMAC's claim or the merits

13 of the affirmative defenses and counterclaims.  She did not

14 indicate how she would rule on any of those pending motions.

15       But she was -- I believe that she indicated that

16 GMAC's counsel had filed -- had done a filing indicating the

17 pendency of the bankruptcy, had provided Judge Still with the

18 supplemental servicing order, and it -- she was still unclear

19 as to what she could go ahead in ruling on.  Because of the

20 imminent trial date, I thought we should go forward and get a

21 conference scheduled quickly.

22       I would just note that the Corla Jackson matter, Ms.

23 Jackson is also in Alabama.  And in the Jackson matter, GMAC

24 had completed nonjudicial foreclosure.  Jackson's action,

25 however, was purely a damages claim against GMAC.  But in the

1  course of that opinion, I think -- and I think Mr. Rosenbaum

2  had indicated during argument, acknowledged during argument --

3  that in that Jackson matter, Ms. Jackson, if and when GMAC

4  brought an action to recover possession of the property, that

5  Ms. Jackson could assert any defenses.

6         So that's basically the background of the matter.  But

7  I don't know how you want to proceed at this point.

8         MR. MARINUZZI:  Your Honor, it remains true in this

9  case as well, to the extent that there's an affirmative defense

10  that also happens to be an affirmative claim, that they would

11  be bringing the same underlying facts; we don't intend that

12  anything in the order would prevent the defendant from raising

13  these facts to defeat the summary judgment motion for

14  possession.

15         And as we struggle to try to understand how there

16  could be a result here that would prejudice the defendant;

17  they're going to allege whatever facts they're going to allege,

18  and if they relate to an affirmative claim, they also would

19  have to relate to an affirmative defense; they're the same

20  facts.  And to the extent they don't relate to an affirmative

21  defense, and there are separate affirmative claims that they

22  would be bringing, then there's no real prejudice, if they're

23  not raising them in the context of trying to defeat the summary

24  judgment motion.

25         THE COURT:  Well, here's what -- and it was one of the

1    reasons that I sent Judge Still the Taggart opinion.  Taggart

2    was Pennsylvania and not Alabama.  But in the course of the

3    Taggart opinion, I indicated there that Mr. Taggart could come

4    back and seek to broaden the relief from stay in that if it

5    turned out that judicial efficiency -- that the state court was

6    the appropriate place to deal with the state law with any

7    defenses.  And that I think the issue becomes, where the same

8    facts or claims are asserted both as affirmative defenses and

9    as a basis for affirmative relief, judicial efficiency favors

10   doing it only once.

11          And I believe in Taggart, and perhaps in others of the

12   opinions on lift stays, I indicated it might be appropriate in

13   some cases to have a state court fix the amount of the claim.

14   And I don't know enough about this specific matter.  I've

15   described, I think, pretty much in full, my conversation with

16   Judge Still.

17          But it certainly sounded to me, particularly with --

18   the thing that separates this from all of the other lift stays

19   that have come before me is this has a September 17th trial

20   date.  It arises -- the matter arises on GMAC's lawsuit against

21   the defendant.  And I don't have a specific lift stay motion in

22   front of me; but I have to say, just without hearing full

23   argument in the matter, it certainly sounded to me that

24   applying the Sonnax factors, this may be the case where it is

25   appropriate to lift the stay to have the trial go forward

1  before Judge Still.

2          If -- I mean, she hasn't ruled on the summary

3  judgment.  I mean, ruling on summary judgment may wipe out

4  those defenses or affirmative claims.  I don't know.

5          MR. MARINUZZI:  Your Honor, I guess I would have to

6  ask counsel involved in the actual litigation to make sure that

7  we all have the same understanding of the facts.  I thought the

8  trial going forward on the 17th was on the actual motion for

9  summary judgment as opposed to on the merits of the counter

10  claims.  But I could be mistaken.

11          THE COURT:  I -- well, let me hear from counsel for

12  GMAC in Alabama.  Just identify yourself on the phone.  Are you

13  on the phone?  Okay.

14          Who's supposed to be on the phone, Mr. --

15          MR. MARINUZZI:  Your Honor, Jon Patterson and Blake

16  Goodson (sic) from the Bradley Arant firm.

17          THE COURT:  Mr. Patterson or Mr. Goodson (sic) are you

18  on the phone?

19          And who's supposed to be counsel for the defendant in

20  that case?

21          MR. MARINUZZI:  Ms. Rhonda Hood.

22          THE COURT:  Ms. Hood, are you on the phone?

23          MS. HOOD:  Yes, Your Honor.  Myself and my law

24  partner, Ken Lay, who's also on the case, we're both on the

25  phone.

1            THE COURT:  Thank you, Ms. Hood.  Well, we seem to

2    have a problem, Mr. Marinuzzi.

3            MR. MARINUZZI:  I agree we do, Your Honor.

4            THE COURT:  Why doesn't one of your colleagues go out

5    in the hall and try and call counsel and find out what's going

6    on here.

7            MR. MARINUZZI:  We will do that.

8            THE COURT:  I really want to get this -- particularly

9    with a September 17th trial date, this needs to get resolved as

10    promptly as possible.

11            Ms. Hood, are you able to remain on the phone for a

12    while?

13            MS. HOOD:  Yes, sir.  And I'll tell you, I had some

14    problems, so he may be on the phone.  I was on the phone, and

15    they didn't even know I was on the phone.  So there might be a

16    problem with CourtCall.

17            THE COURT:  Okay.  We'll see if we can get it cleared

18    up.

19            Let's -- we'll come back to this.  Okay?  Go ahead,

20    Mr. Marinuzzi.

21            MR. MARINUZZI:  All right. Your Honor.

22            THE COURT:  Thank you, Ms. Hood.

23            MS. HOOD:  Yes, sir.

24            MR. MARINUZZI:  Thank you, Your Honor.  The next item

25    on the agenda is an uncontested matter.  It's the debtors'

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1   motion to establish the bar date for filing proofs of claim and

2   manner and form of notice.  No objections were received, Your

3   Honor.  We filed a certificate of no objection earlier this

4   week.  We made one minor modification to the form to

5   accommodate for the filing of 503(b)(9) claims.  I'm happy to

6   provide the Court with a mark-up, but I believe copies were

7   delivered to chambers this morning or yesterday.

8           THE COURT:  I don't think I saw it.  If you have --

9           MR. MARINUZZI:  Of course.

10          THE COURT:  -- it why don't you hand it up, Mr.

11  Marinuzzi.  Thank you.  Thank you.

12          MR. MARINUZZI:  Your Honor, on page 5 of the mark-up,

13  this was a request from the committee to clarify that the

14  holders of securities -- and these are the trust securities --

15  need not file a proof of claim.  And that same language is also

16  on page 5 of the notice, Your Honor.

17          And, Your Honor, as I described earlier, on the bar

18  date form itself, we've now included language to accommodate

19  the filing of 503(b)(9) claims, both on the face of the form

20  and on the reverse of the form where the instructions are

21  found.

22          THE COURT:  Okay.  Just bear with me a second.

23          MR. MARINUZZI:  Sure.

24          THE COURT:  Okay.  Am I correct, you added in the

25  black-line, in the order, in paragraph 5(d) -- is that a change

 1  or not?  I can't tell.  They actually received, or was that

 2  there?

 3           MR. MARINUZZI:  It was there, Your Honor.

 4           THE COURT:  Okay.  It's just bolded and underlined to

 5  make it clear.  Okay.

 6           All right.  Does anybody wish to be heard with respect

 7  to the proposed bar date order?

 8           All right, it's approved.

 9           MR. MARINUZZI:  Thank you, Your Honor.

10           THE COURT:  Thank you very much.

11           MR. MARINUZZI:  Your Honor, that brings us to the next

12  uncontested item on the agenda, which is the examiner's motion

13  to retain Mesirow as financial advisor.

14           THE COURT:  Okay.

15           MR. MARINUZZI:  I'll cede the podium to counsel for

16  the examiner.

17           MR. GAYDA:  Good morning, Your Honor.  Robert Gayda

18  from Chadbourne & Parke for the examiner.  We didn't receive

19  any objections to the application.  We filed a certificate of

20  no objection on August 23rd.  And no changes have been made to

21  the order.

22           THE COURT:  All right.  Does anybody wish to be heard

23  with respect to the Mesirow retention?

24           All right.  It's approved.  Thank you very much.

25           MR. GAYDA:  Thank you, Your Honor.

1           MR. MARINUZZI:  Your Honor, Mr. Rosenbaum advises me
2   that counsel is on the phone, they just can't get into the
3   call.  So they're waiting and --
4           THE COURT:  It doesn't do me any good.
5           MR. MARINUZZI:  I know.  It doesn't do any of us any
6   good.  Hopefully CourtCall could figure it out.  It'll call
7   back and find an operator to connect them.  So --
8           THE COURT:  Okay.
9           MR. MARINUZZI:  -- we'll standby for that.
10          THE COURT:  All right.
11          MR. MARINUZZI:  Your Honor, that brings us to the
12  items that are contested on the agenda.
13          THE COURT:  Yes.
14          MR. MARINUZZI:  The first of which is the motion for
15  relief from stay filed by Julio Pichardo.  And I'll cede the
16  podium to my colleague, Erica Richards, who will address the
17  Court on that matter.
18          THE COURT:  Okay.
19          MS. RICHARDS:  Good morning, Your Honor.
20          THE COURT:  Good morning.
21          MS. RICHARDS:  Erica Richards of Morrison & Foerster,
22  appearing on behalf of the debtors.  Your Honor, I believe Mr.
23  Pichardo is on the line.
24          THE COURT:  All right.  Mr. Pichardo, are you on the
25  phone?

RESIDENTIAL CAPITAL, LLC, ET AL.                    18

1          MR. PICHARDO:  Yes, I am, Your Honor.  Good morning.

2          THE COURT:  All right.  This is your motion, so why

3   don't you go ahead and tell me whatever it is you want to tell

4   me.

5          First let me ask, Mr. Pichardo, you have counsel in

6   the case you filed in state court in Orange County California.

7   Am I correct in that?

8          MR. PICHARDO:  Yes.  I don't have counsel, though, for

9   the relief from the automatic stay.

10         THE COURT:  Okay.  That's fine.  Go ahead.

11         MR. PICHARDO:  It's pro se.

12         THE COURT:  Go ahead.

13         MR. PICHARDO:  GMAC, Your Honor, by unlawful means,

14  tried to put me and my family out of this home, even though I

15  begged them not to and I have sent documents to you, some of

16  it, which is document 1235, which shows numerous attempts by

17  GMAC to declare default on my loan, which I never missed any

18  payments.  They also tried foreclosing.  They tried to short-

19  sell my home.  They put me in the hospital numerous time, Your

20  Honor, by this.  And I advised them, and I said, what do I need

21  to do?

22         I sent them certified mail.  I sent them registered

23  mail.  I sent them faxes.  I sent all the documents and said

24  why are you doing this?  I have not missed a payment.  Why are

25  you trying to put me out of my home?  They said, that is

1   nothing to do with us.  You have to move out of your home.  You

2   will have to sell your house, whether it be by sheriff's sale,

3   and we are proceeding with foreclosure.  And I said, but why,

4   tell me why?  What is the reason?

5          And I advised them that they were making my condition

6   worse.  They put me in a deep depression, Your Honor.  They put

7   me in the hospital numerous times, for weeks at a time, away

8   from my two babies and my family.  And I said why are you doing

9   this?  Give me a reason.  If they would have followed

10  procedure, they would have been fine, Your Honor.  But they had

11  no reason whatsoever.

12         So they used aggressive measures to put me out of my

13  home.  And I sent these documents showing what they have.  I

14  don't have all the paperwork, but I do have some of it.  My

15  attorney here has the full file.  And I have sent you proof

16  that they're up to date, to today, denying that they ever did.

17  These documents on docket 1235 show their relentless attempt to

18  do all of this.

19         And I have contacted different means by faxes.  I have

20  spent so much money from the family borrowed, just to keep this

21  problem away from my life, which has harmed me, Your Honor.  I

22  didn't ask for this.  I didn't do anything.  I am -- I haven't

23  done anything to get this kind of assault from GMAC.  I have

24  spoken with so many people; loan servicing keeps calling my

25  home, day and night.  This is loan servicing department

1    contacting you concerning your payment and the procedures that

2    I will follow.  And I call them back; what is going on?  I had

3    requested the bank records showing that every payment I made

4    for fourteen years, I made with certified checks and with money

5    orders.  And I said give me a reason why you're doing this.

6           They didn't care.  All they wanted to do is put me out

7    of my home.  And I said, but why?  So I contacted counsel for

8    GMAC on the automatic stay to -- she sent me e-mail things.

9    She wanted to talk to me.  I said okay.  Here is the problem.

10   What is being done?  Why is GMAC proceeding with this?

11          I have sent all the documents so many ways and still

12   to today they're saying they're denying doing this.  But it's

13   in front of you, Your Honor.  Those documents, document 1235,

14   shows what they were doing.  And the rest of the documents are

15   on file.  And I'm so heavily burdened.  My wife keeps after me

16   with this medication that I have been prescribed, dozens of

17   them.  Why allow GMAC to do this unlawfully?  If there was any

18   means that they had, or resort to other procedure, which are

19   justified, I wouldn't mind.  They could explain.

20          But then being put in the spot, I contacted the

21   Attorney General.  The California Review Board has been looking

22   into this.  The monitor program in California has been looking

23   into this.  The counsel for GMAC says that they have no third-

24   party action.  But there has been review of all these things,

25   and the Attorney General calls it that these are not supposed

1  to have been happened.  These are irregularities and they're

2  looking into this too.

3          So, Judge, please, what is happening here?  Why are

4  they allowed to break the law and blanket themselves with the

5  stay?

6          THE COURT:  All right.  Anything else, Mr. Pichardo?

7          MR. PICHARDO:  I'm sorry?

8          THE COURT:  Anything else you want to add?

9          MR. PICHARDO:  I have also received from Sverson

10 Werson, their response to the action here.  And they are

11 asserting that we proceed to prosecute portion of this lawsuit.

12 Now they're saying no.  And I have it on document 1273 sent to

13 you, where they say, "The remaining claims asserted by your

14 lawsuit ...Permitted Claims under the Final Supplemental Order

15 you may continue to prosecute these claims in accordance with

16 the terms."  Now, they're saying no.

17          And I have a question, Your Honor.  Can GMAC be

18 allowed to break the law and then cover or blanket themselves

19 with a stay?

20          THE COURT:  Mr. Pichardo, let me ask you a couple of

21 questions.  Do you still live in your house?

22          MR. PICHARDO:  Yes, Your Honor.  I had to spend quite

23 a lot of money from my family borrowed, to start all these

24 complaints to different agencies here.  In California agencies

25 are saying to me, number one, go ahead and file the claim.

1  Number two go ahead in order to legitimize your claim before

2  GMAC comes up with anything else.  Go ahead and bring this

3  over.  And I don't have the money to get an attorney and

4  represent me in your court, Your Honor.  I have spent so much

5  money from my family and now I have to do this myself.

6            THE COURT:  All right.

7            MR. PICHARDO:  But they did try.  And you can see in

8  those documents:  you're being foreclosed; you must sheriff's

9  sale your home; and your loan is in default.  And even if I

10  provided all those documents, they still pursued it, just a

11  couple of months ago, until we filed.  The calls were coming in

12  from GMAC harassing and telling me you have to get out of your

13  house.

14            THE COURT:  All right.  Thank you, Mr. Pichardo.

15            All right.  Counsel?

16            MS. RICHARDS:  Your Honor, the debtors are sympathetic

17  to the hardships that Mr. Pichardo has described for you.

18  However, they vehemently deny that those hardships --

19            THE COURT:  Well, let me ask this.  California is a

20  nonjudicial foreclosure state.  Has foreclosure taken place

21  with respect to Mr. Pichardo's home?

22            MS. RICHARDS:  It has not, Your Honor.  The debtors

23  reviewed their file.  There's no foreclosure pending.  There

24  has never been a foreclosure pending.  As Mr. Pichardo

25  indicated, the debtors believe he is still in his house.

1           THE COURT:  All right.  Anything else you want to add?

2           MS. RICHARDS:  Unless Your Honor has further

3    questions, I would say that the debtors are concerned that Mr.

4    Pichardo's filing was itself a violation of the automatic stay,

5    and they would ask that Your Honor not invite other creditors

6    to similarly disregard the automatic stay.

7           THE COURT:  All right.  I'm going to take the matter

8    under advisement, and I'll issue an appropriate order.  Thank

9    you very much.

10          MS. RICHARDS:  Thank you.

11          THE COURT:  Thank you, Mr. Pichardo.

12          MR. PICHARDO:  Okay.  Thank you, Judge.

13          THE COURT:  All right.  Mr. Marinuzzi?

14          MR. MARINUZZI:  Your Honor, I'm advised that Jon

15   Patterson from the BABC firm is now through and on the line, so

16   we can revisit that item on the agenda, if the Court would

17   like.

18          THE COURT:  All right.  So we're going back to -- let

19   me find it on the agenda -- this was --

20          MR. MARINUZZI:  It's on page 3, item 2.

21          THE COURT:  Yes.  This is with respect to GMAC

22   Mortgage LLC v. Silmon, S-I-L-M-O-N, pending in the Circuit

23   Court of Jefferson County Alabama.

24          Mr. Patterson?

25          MR. PATTERSON:  Yes, sir, I'm here.

1          THE COURT:  Okay.  Mr. Marinuzzi indicated that you
2    were able to hear what was going on in court but not able to
3    respond.  Is that correct?
4          MR. PATTERSON:  I wasn't on at all, but I had received
5    some e-mails kind of indicating what was said.
6          THE COURT:  All right.  So just very quickly; I won't
7    rehash the whole thing.  The way this conference came about is
8    I received a telephone call last week from Judge Still, Judge
9    Nicole Still, before whom the matter is pending.  She told me
10   that there's a -- GMAC has filed a motion for summary judgment
11   that's pending before her.  She also told me that there's a
12   trial scheduled, a bench trial scheduled for September 17th,
13   that she's received a copy of the supplemental servicing order,
14   but is unclear what it is that she's permitted to go ahead and
15   decide.
16         I raised the question earlier whether this really
17   isn't an appro -- particularly in light of the very rapidly
18   approaching trial date, and the fact that it arises in an
19   action that GMAC has commenced, whether this is not -- isn't
20   this an appropriate action for the stay to be lifted.
21         Judge Still indicated that the same claims are
22   asserted as counterclaims and as affirmative defenses to GMAC's
23   action to regain possession of the property, as to which
24   nonjudicial foreclosure has been completed.  So I -- when I
25   talked to Judge Still I suggested that she talk to counsel in

1  the case and have them contact Morrison & Foerster and set this

2  for the conference today.  So we're here.

3          So I guess my question is to you, can you describe for

4  me what you believe the status of the matter is?  What's

5  covered by the summary judgment?  What is the September 17th

6  trial supposed to cover?  And Ms. Silmon's counsel is on the

7  phone as well.  Go ahead.

8          MR. PATTERSON:  Yes, Judge.  This is Jon Patterson for

9  GMAC.  Just quickly the general status is, you are correct,

10  summary judgment is pending.  And we had filed summary

11  judgment -- and just to add one additional thing, this case

12  also involves Mortgage Electronic Registration Systems, who is

13  a co-defendant as well.  And so summary judgment was filed on

14  behalf of GMAC and Mortgage Electronic Registration Systems.

15          THE COURT:  Are you representing MERS as well, Mr.

16  Patterson?

17          MR. PATTERSON:  I am.  Yes, sir.  And so summary

18  judgment was filed on GMAC's affirmative eviction claim, as

19  well as to certain counterclaims that GMAC believed were

20  allowed to proceed forward under the supplemental servicing

21  order, and then as to all counterclaims against MERS.

22          And so that is pending right now.  And the trial date

23  of September 17th remains set, even though Judge Still

24  indicated at the last hearing that that -- she would very

25  likely push that trial date, even if just for a few months,

1    depending on the outcome of this hearing and how she's directed

2    to proceed.

3              THE COURT:  All right.  Anything you want to add, Mr.

4    Patterson?  Just could you -- what Judge Still had indicated to

5    me was that the same matters were asserted as both affirmative

6    defenses and as counterclaims.

7              MR. PATTERSON:  That's exactly right.  And I can just

8    briefly tell you that effectively how this worked is that GMAC

9    filed their affirmative eviction claim saying, look, by virtue

10   of the foreclosure deed we own the property.  You need to get

11   out.  We have to sue to get you out.  They answered with

12   effectively a host of affirmative defenses which are the

13   standard ones we see in foreclosure cases, which is:  there was

14   no default; there was an improper acceleration of the note; you

15   didn't give me proper pre-foreclosure loss mitigation

16   alternatives; you didn't comply with servicing regulations; you

17   don't have standing to foreclose.

18             They then -- they list those as affirmative defenses,

19   and then they filed a same document, a counterclaim, which

20   reiterates all those affirmative defenses as their allegations

21   in their counterclaim, and then filed various claims arising

22   thereunder.

23             THE COURT:  Am I correct that Alabama law recognizes

24   an affirmative claim for wrongful foreclosure?

25             MR. PATTERSON:  That is correct.

1        THE COURT:  All right.  And is that asserted as both

2   an affirmative claim and affirmative defense to your action to

3   recover possession?

4        MR. PATTERSON:  It is.

5        THE COURT:  All right.  Ms. Hood, I know you're on the

6   phone for the defendant/counterclaimant.  Do you want to go

7   ahead and respond?

8        MS. HOOD:  Well, Your Honor, I mean, just like we

9   said, there's a complete understanding of what's going on and

10  my law partner Kenneth Lay is on the phone with me, as I also

11  indicated.

12       The problem is, is that these are -- they are so

13  intertwined; and because we don't -- because it is nonjudicial,

14  you never really attack these foreclosures.  Most of the time,

15  when people get to us, they -- the actual underlying

16  foreclosure itself has never been addressed.  And so the

17  foreclosure -- if the underlying foreclosure is improper then

18  that ejectment that they are seeking obviously they're not

19  entitled to.  So we have to go under all that.  And that's

20  where the problem lies.

21       And so he is correct that you have the defenses that

22  arise out of the same transactions, the same facts, and then --

23  which would be an affirmative defense to the actual foreclosure

24  itself, and then the same actions lead to the counterclaims of

25  negligence and wantonness on GMAC, and the wrongful

1  foreclosure, which also, if correct, would entitle the client

2  to damages.  So that's where the crux of all this is.

3          THE COURT:  All right.  Thank you, Ms. Hood.

4          Mr. Marinuzzi, I mean, you know, not just in this

5  case, but in others as well, I've grown very accustomed to the

6  Sonnax standards.  And while I don't have a lift stay motion

7  currently pending before me here to rule on, this almost seems

8  to cry out to lift the stay to allow the state court to go

9  ahead and rule in its entirety on the summary judgment motion,

10  and if necessary, go ahead and try the case on September 17th

11  or if the case is adjourned for a short period thereafter.

12          Obviously, at most, the state court can fix the amount

13  of damages that would be filed as a claim here.  But the Sonnax

14  factors typically -- I think the first is whether there's

15  likely to be a speedy resolution of the whole matter.  Well,

16  there would be seem to be in this situation.

17          I think it would be -- I certainly wouldn't want to

18  be -- I wouldn't retry something that Judge Still had tried.

19  Since the same essential claims are asserted as affirmative

20  defenses and counterclaims for damages, it seems to me that she

21  will effectively decide liability, if any, with respect to the

22  counterclaims, which would leave damages.

23          It seems to me, inefficient then, to tie her hands.

24  And it's a bench trial.  So it's not a question of a jury.

25  That why shouldn't she go ahead and just handle the matter

1  expeditiously.  If there's an affirmative damages claim that

2  will be awarded, it would fix the amount of the claim that

3  Silmon would have.

4         MS. HOOD:  Your Honor, I'm sorry to interrupt you.

5  But we do have a demand for a jury trial in our answer.

6         THE COURT:  You know, when talked to Judge Still last

7  week, that was -- I'll just tell you that that's inconsistent

8  with what she told me then.  But --

9         MS. HOOD:  Okay.  I just wanted to bring it to your

10  attention.

11         THE COURT:  Okay.  But Mr. Marinuzzi, why -- look, if

12  necessary, I'm going to tell Ms. Hood go ahead and file the

13  motion for lift stay, I will set it expeditiously, and we'll go

14  ahead, if you can't -- it seems to me that the debtor ought and

15  try to work out an appropriate stipulation and order in this

16  matter that would allow Judge Still -- I mean, this is very

17  unlike any of the others.

18         Every other one that's come before me, a complaint's

19  been filed, some of them in violation of the automatic stay;

20  most of them with no discovery; no motion practice; trial is

21  somewhere in the very far distance.  Requiring a party to

22  submit to the claims allowance process makes full sense in

23  those situations.  This comes much closer to the case where one

24  of the debtors is trying to use the automatic stay as both a

25  sword and a shield, something I will not permit.

RESIDENTIAL CAPITAL, LLC, ET AL.                    30

1       MR. MARINUZZI:  Your Honor, we recognize that.  So
2   we'll talk to our client.  We'll talk to the defendant in the
3   action, see if we can't come to some resolution.

4       I'm not even sure we're really talking about a lifting
5   of the automatic stay here, because the counterclaims that are
6   being asserted are the exact same facts that would be asserted
7   to defeat.  So it seems to me it's covered by the order anyway.

8       THE COURT:  Well, other than the fact that the
9   counterclaims seek affirmative damages.  I mean, the judge
10  should only try it once.  I mean, whoever the judge is, it
11  should only be tried once.  That's what judicial efficiency
12  really requires.  Particularly when this all arises on GMAC's
13  claim against a borrower.

14      So, Ms. Hood, I think you and Mr. Patterson, and
15  whether it's Mr. Marinuzzi or Mr. Rosenbaum, whoever from
16  Morrison & Foerster, you ought to try and confer today by
17  telephone, if possible, and see whether you can resolve this
18  issue.  If you can't, Ms. Hood you're going to have to -- and
19  you want to go ahead and proceed, you're going to have to file
20  a motion to lift the stay.  It doesn't have to be a lengthy
21  motion.

22      On the court's website there are a whole list of
23  Residential Capital opinions that I've written on motions to
24  lift the stay, usually denying them, in some instances granting
25  them in part.  But it does seem to me, Mr. Marinuzzi, this is

1  factually and legally different than those cases.

2          You know, in Jackson, in the Corla Jackson matter, it

3  specifically said, well, if GMAC seeks to recover possession

4  then the result may be different.  Well, this is that one step

5  further along case.

6          MR. MARINUZZI:  We understand, Your Honor.

7          THE COURT:  Okay?

8          MR. MARINUZZI:  We understand.

9          THE COURT:  So, Ms. Hood, do you understand?  You'll

10  confer with Mr. Patterson; and hopefully either Mr. Marinuzzi

11  or one of his colleagues can arrange a call today if possible.

12  See if you can work out a stipulation as to how this matter

13  should proceed.  If it can't, talk with them about how we'll

14  get this on the court's docket every quickly.  Okay?

15          MR. MARINUZZI:  That's fine, Your Honor.

16          MS. HOOD:  Yes, sir.

17          THE COURT:  Thank you very much for participating Mr.

18  Patterson and Ms. Hood.

19          MR. PATTERSON:  Thank you, Judge.

20          THE COURT:  Okay.  You're excused from the hearing if

21  you don't want to remain on the line.

22          MS. HOOD:  Thank you.

23          THE COURT:  Mr. Marinuzzi, go ahead.

24          MR. MARINUZZI:  Your Honor, that brings us to the

25  final item on the agenda, which is the debtors' motion to

1  establish procedures for the sale of de minimis assets.  And

2  for that, I will turn the podium over to Samantha Martin.

3          THE COURT:  Thank you.

4          MS. MARTIN:  Good morning, Your Honor.  Samantha

5  Martin from Morrison & Foerster on behalf of the debtors.

6          By this motion, the debtors seek to implement

7  procedures for the sale of de minimis assets in order to

8  streamline the costs and delay associated with seeking court

9  approval for each individual sale.  I can walk Your Honor

10 through the procedures if you like.

11         THE COURT:  I did look at the proposed order fairly

12 carefully.  But why don't you just, for the benefit of those

13 who are in court and might not have seen it, just describe

14 briefly how it would work?

15         MS. MARTIN:  Sure.  Your Honor, the procedures are

16 divided into two parts.  The first relates to sales with an

17 aggregate price of equal to or less than two and a half million

18 dollars.  These sales will be done on five business days'

19 notice.  And the notice would be given to the United States

20 Trustee, the committee, Ally Financial, Barclays, the junior

21 noteholders, and all known parties asserting liens against the

22 assets.

23         The second part relates to sales with an aggregate

24 sale price of greater than two and a half million but less --

25 up to fifteen million dollars.  And these sales will occur on

1   ten business days' notice.  And the notice parties would be the

2   same, with the addition of the U.S. Attorney's Office and

3   counterparties to executory contracts or unexpired leases, to

4   the extent we seek to assume, assign, or reject contracts in

5   connection with the sale.

6          Your Honor, the debtors are seeking to sell these

7   assets under the procedures free and clear of all liens,

8   claims, and encumbrances.  The debtors have agreed to consult

9   with the committee as soon as practicable upon the commencement

10  of any marketing process for a de minimis asset sale.  To the

11  extent the debtors are seeking to sell any collateral on which

12  the debtors have granted a security interest to Ally Financial

13  or Ally Bank, the debtors will also consult with those parties

14  in connection with selling such property, pursuant to these

15  procedures.

16         THE COURT:  Let me just ask you this question.  Tell

17  me, you have these tiers depending on sale price.  Are there

18  differences as to which parties are served if a proposed sale

19  is below two and a half million dollars, if it's between two

20  and a half and fifteen, and if it's above fifteen.

21         MS. MARTIN:  Most of the parties will be served in the

22  event of any sale.  The primary difference is the

23  counterparties to executory contracts and unexpired leases.

24  And the reason for that is because we only intend to assume,

25  assign, or reject on ten days' notice.  And so that wouldn't

1    even apply under the five-day notice sales.

2           But each of the U.S. Trustee, the committee, Ally,

3    Barclays, the junior notes, and all known parties asserting

4    liens will get notice of any sale from zero to two and a half

5    million or up to fifteen million dollars.

6           THE COURT:  Okay.  Bear with me another second here.

7           MS. MARTIN:  We have revised the order following

8    discussions with the parties after the initial filing.  I

9    submitted a black-line copy and I attached it to our reply.  I

10   can bring Your Honor.

11          THE COURT:  That's what I think I'm looking at --

12          MS. MARTIN:  Okay.

13          THE COURT:  -- is the black-line.  Just bear with me.

14          MS. MARTIN:  Sure.

15       (Pause)

16          THE COURT:  What's the manner in which you contemplate

17   de minimis asset sales being conducted?  I mean, are there

18   going to be -- are you going to retain auctioneers?  I mean

19   this does not -- this proposed order would not relieve the

20   debtors of any obligation if you use an auctioneer to seek

21   their retention.  Am I correct?

22          MS. MARTIN:  Yes, that is correct.  I believe we have

23   that in a footnote somewhere.  We currently don't have plans

24   for any of our anticipated sales to use brokers at this time.

25   In the event that we do decide to use third-party brokers, we

1  would file a retention application, as I understand this Court

2  requires.

3          THE COURT:  Yes.

4          MS. MARTIN:  And we do have some provisions in the

5  order where we seek to have authority to pay the commissions

6  once they're properly retained, and also to the extent that

7  they are required to be retained under the procedures.  Because

8  I understand that there may already be orders on the docket

9  that permit certain brokers to be retained in some instances.

10         But this order only seeks approval for the fee -- the

11  payment of commissions specifically.

12         THE COURT:  All right.  Does anybody else wish to be

13  heard with respect to the motion to establish procedures for de

14  minimis asset sales?

15         MS. RINGER:  Good morning, Your Honor.  Rachael Ringer

16  from Kramer Levin on behalf of the creditors' committee.  Your

17  Honor, we reviewed the motion and we've been working with the

18  debtors.  We provided some comments both before it was filed,

19  and we've reviewed the revised order and provided comments that

20  were reflected in the black-line that was attached to the

21  debtors' reply.  With that, we do not object to entry of the

22  order.

23         THE COURT:  All right.  Thank you.

24         Does anybody else wish to be heard with respect to the

25  motion regarding de minimis asset -- procedures for de minimis

1  asset sales?

2          All right.  The last comments I would make; there was

3  a statement filed by Wendy Alison Nora.  And then this morning,

4  I saw she filed an additional statement --

5          MS. MARTIN:  Yes, Your Honor.

6          THE COURT:  -- regarding the sale.  The debtors'

7  response to her initial statement made clear that in the event

8  of any effort to sell any interest in Ms. Nora's property or

9  former property, whichever it may be, that the debtor would

10  give notice to Ms. Nora in advance of any such effort.  Is that

11  correct?

12          MS. MARTIN:  To be a bit more precise, Your Honor.  We

13  currently have the ability to sell real estate owned property

14  under certain orders that this Court has already entered.

15          THE COURT:  Right.

16          MS. MARTIN:  To the extent that we seek to sell any

17  real estate owned property pursuant to the de minimis asset

18  sale procedures, we will provide Ms. Nora with the requisite

19  notice under these procedures.

20          THE COURT:  Under any other -- just so we're clear.

21  Is it your position that there's another order that's on the

22  docket that would permit you to sell Ms. Nora's property or

23  former property without giving her notice?

24          MS. MARTIN:  The property ha -- it's my understanding

25  that the property has already been foreclosed upon and it is

1   real estate owned property.  Ms. Nora is disputing some aspects

2   of the foreclosure that occurred.  And the nongovernmental

3   servicing order currently permits the sale of real estate owned

4   property.  We are not currently planning to sell hers at this

5   time, given the outstanding dispute.  But in the event, as time

6   goes on --

7            THE COURT:  Let me be crystal clear.

8            MS. MARTIN:  Yes.

9            THE COURT:  Do you agree that if you go to sell Ms.

10  Nora's property or former property -- I understand there's a

11  dispute whether she continues to have any interest in the

12  property -- do the debtors agree that they will give Ms. Nora

13  notice of any intention to sell her property?

14           MS. MARTIN:  Yes, Your Honor.

15           THE COURT:  Okay.  I don't want -- it may be that

16  exist -- prior orders give you the authority to do so.  I'm not

17  altering any of those orders.  She's now filed two statements

18  with respect to this specific motion and the issue as to

19  whether she would be given notice of any effort to sell the

20  property.  It certainly wasn't crystal clear to me in reading

21  her statements and reading the debtors' response that the

22  debtor was taking the position well, they'll give her notice if

23  you go to sell the property under the de minimis asset sale

24  procedures, but you won't give her notice if you go to sell it

25  under any other.

1        So to avoid -- I'm not making any decisions as to

2   whether she has an interest, doesn't have an interest, any of

3   that; but I just want to be clear that at least with respect to

4   her asserted interest in this property, she will receive notice

5   before any effort by the debtor to sell the property.  And the

6   answer to that is?

7        MS. MARTIN:  Yes, Your Honor.

8        THE COURT:  Okay.  All right.  On that basis, the

9   motion is granted.

10        MS. MARTIN:  Thank you.

11        THE COURT:  Mr. Marinuzzi?

12        MR. MARINUZZI:  Your Honor, I believe that concludes

13   the agenda for today.  Nothing further from me unless the Court

14   has any questions.

15        THE COURT:  Anything you want to update me on status,

16   Mr. Marinuzzi?

17        MR. MARINUZZI:  Status, Your Honor.  As Your Honor is

18   aware, we filed a request for an extension of exclusivity

19   asking for it to be heard on the 11th.  Attached to that --

20        THE COURT:  That was one of those matters, I think I

21   said yes, even though it was a very full docket on the 11th.

22        MR. MARINUZZI:  And we appreciate that, Your Honor.

23        We are working on pleadings that we intend to file

24   Tuesday of next week that relate to a hot-button issue in the

25   case, and that is the consent order/DOJ settlement and in

1  particular expenditures required to be made under those orders

2  by the debtors, with a focus, in this case, on the payment of

3  fees for PricewaterhouseCoopers, who under the --

4          THE COURT:  I think you wanted that on for the 11th,

5  and I think I said no.

6          MR. MARINUZZI:  And Your Honor did say no, and it'll

7  be heard later on in the month.

8          THE COURT:  There's nothing particular about the

9  Pricewater -- it's just a very full agenda for the debtor.

10          MR. MARINUZZI:  Understood, Your Honor.  And we also

11  have a number of motions to lift the stay that Your Honor has

12  seen.  Those will be heard on the 11th.  We expect that that

13  will be quite a full hearing.

14          I don't see anything else that I think is appropriate

15  to address with the Court at this time.  But I'm sure on the

16  11th, we'll have more to discuss.

17          THE COURT:  I'm going to raise this now.  I don't

18  necessarily expect a response from you, Mr. Marinuzzi.  As you

19  probably know, yesterday afternoon, I issued an opinion denying

20  the debtors' motion to approve the KEIP -- denied it without

21  prejudice, and encouraged that if it is going to be -- if a

22  KEIP motion is going to be renewed -- and I can understand that

23  time is of the essence if any of the KEIP awards are to be

24  triggered by the auction sales which are scheduled for late

25  October.

1         So if the debtor -- hopefully the debtor, if it

2    chooses to modify the plan, will discuss with -- on that prior

3    plan, it was the U.S. Trustee was the sole objector to it --

4    will work with the U.S. Trustee -- and Mr. Driscoll's here --

5    to see whether you can iron out any disputes.  If you do, if

6    you are able to arrive at a plan as to which the U.S. Trustee

7    certainly agrees, I'll permit any new plan to come out on very

8    short notice.  We can specially set it.  I just want to make

9    clear.

10        The Court's docket is crowded, but I understand that

11   this is an important issue for the debtor.  Again, it's up to

12   the debtor whether it's going to seek to modify a plan, see if

13   it can get a plan approved.  But to the extent a plan is linked

14   to the results of an auction, it obviously is important that

15   there be plenty of notice, that it happen quickly.  So I'd just

16   indicate that I'm certainly -- if you're going to try and alter

17   it, work with the U.S. Trustee to see whether you can come up

18   with a consensual plan.

19        I would just note, that's exactly what happened in

20   Borders.  In Borders, it wasn't until the third version of the

21   plan that the U.S. Trustee was satisfied, withdrew its

22   objection.  That's the one that was approved.  And it's

23   addressed in the written opinion the Court wrote.  So the U.S.

24   Trustee can be satisfied.

25        MR. MARINUZZI:  Your Honor, we're already working on

1    it.

2             THE COURT:  Okay.

3             MR. MARINUZZI:  Thank you.

4             THE COURT:  Okay.  That's the only thing I have.  Mr.

5    Mannal?

6             MR. MARINUZZI:  Thank you.

7             MR. MANNAL:  Your Honor, Doug Mannal from Kramer Levin

8    on behalf of the committee.  Just briefly, Your Honor.  Mr.

9    Marinuzzi mentioned the exclusivity motion that was on file.

10   And currently, I think, our objection deadline is Tuesday the

11   4th.

12            THE COURT:  I think we extended it by -- we extended

13   the date by one day or something?

14            MR. MANNAL:  I understand from my colleague, I think

15   it was extended till noon on the 5th.  We have a committee

16   meeting -- people are flying in from out of town -- starting at

17   10 o'clock in the morning on the 5th, and this is one of the

18   issues we'd like to discuss.  I was hoping we could get that

19   pushed perhaps to the end of the day.  I don't know if that was

20   acceptable to counsel or --

21            THE COURT:  You're not leaving me any time.  If you

22   file an objection -- you know, when I take the bench, I want to

23   be fully prepared.  And I tried -- I pushed it a little bit to

24   try and accommodate -- I mean, do a telephone conference with

25   the committee in advance.  I'm not moving it any further.

1           MR. MANNAL:  Okay.

2           THE COURT:  I need -- if there are going to be

3    objections, I need to have them.  The debtor needs to be able

4    to respond to them.  I need to be able to be fully prepared for

5    them.

6           MR. MANNAL:  Absolutely, Your Honor.  So is it

7    possible that we could put it to the afternoon or is --

8           THE COURT:  Two o'clock.

9           MR. MANNAL:  Two o'clock.  Thank you very much, Your

10   Honor.

11          THE COURT:  Okay.  Mr. Marinuzzi?

12          MR. MARINUZZI:  Your Honor our reply is due Friday at

13   noon.  We hope 2 o'clock means 2 o'clock.  That's all I'm

14   asking.  Thank you.

15          THE COURT:  I'm not moving it beyond 2 o'clock.

16          MR. MARINUZZI:  Okay.

17          THE COURT:  I want to make it crystal clear.  Okay?

18   Hopefully, you ought to be able to resolve the issues around

19   the exclusivity motion.  But I don't need to hear anything

20   further about it, Mr. Mannal.

21          MR. MARINUZZI:  Okay, thank you, Your Honor.

22          THE COURT:  Okay.

23          MR. MARINUZZI:  I'm hopeful we will.

24          THE COURT:  I'm just -- you know, that's why I do not

25   let -- in my case management orders, I do not let the debtor

RESIDENTIAL CAPITAL, LLC, ET AL.                    43

1   agree to move dates.  It's precisely for this reason.  Because

2   I'm the one who gets caught in the trap with that.  Okay.

3            MR. MANNAL:  Understood, Your Honor.

4            THE COURT:  Okay.  All right.  We're adjourned.  Thank

5   you very much.

6            MR. MARINUZZI:  Thank you, Your Honor.

7        (Whereupon these proceedings were concluded at 10:54 AM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                    **I N D E X**

3

4                                      RULINGS

5                                                        Page       Line

6     Debtors' bar date order is approved.               16         8

7     Examiner's application to retain Mesirow           16         24

8     Financial Consulting is approved.

9     Debtors' de minimis sales procedures motion        38         8

10    is granted.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

PENINA WOLICKI

AAERT Certified Electronic Transcriber CET**D-569

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  August 30, 2012