AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036-6745
Tel. (212) 872-1000
Fax (212) 872-1002
Fred S. Hodara
Robert A. Johnson
Christopher W. Carty

*Attorneys for Aurelius Capital Management, LP*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| | Jointly Administered |
| Debtors. | |
| | Hearing Date: Sept. 11, 2012, 10:00 a.m. |

**LIMITED OBJECTION OF AURELIUS CAPITAL MANAGEMENT, LP
TO DEBTORS' MOTION TO EXTEND EXCLUSIVITY**

Aurelius Capital Management, LP, on behalf of itself and its managed fund entities holding Secured Notes (as that term is defined below) (collectively, "Aurelius"), files this limited objection to Debtors' Motion for the Entry of an Order Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof (ECF Doc. # 1248) (the "Motion").

**PRELIMINARY STATEMENT**

1.  Aurelius owns approximately 8% of the 9.625% Junior Secured Guaranteed Notes due 2015 issued by debtor Residential Capital, LLC pursuant to that certain Indenture dated June 6, 2008 ("Secured Notes"), making it the third largest holder of the Secured Notes. Aurelius is not a member of the Ad Hoc Group of Secured Noteholders (the "Secured Noteholder Group") (nor, on information and belief, is the largest holder of Secured Notes), and Aurelius does not support the Chapter 11 plan heretofore informally proposed by the Debtors.

103656354 v6

2.    Aurelius supports some extension of exclusivity but believes that (i) the extension of the right to file a plan should be for only 90 days (without prejudice to further renewal as appropriate) and (ii) the extension should be conditioned upon the elimination of the restrictions under "plan support agreements" that currently prohibit creditors from negotiating with each other.

3.    Aurelius's strong desire is that a Chapter 11 plan be reached consensually and expeditiously. Aurelius believes a nine-month extension of exclusivity will impede rather than foster that objective. Instead, a "shorter leash" is warranted.

## ARGUMENT

*Length of Extension*

4.    The Debtors seek to justify their extraordinary request on the delay resulting from the Examiner's process. The Examiner began work in late July and filed a Work Plan on August 6, 2012 (ECF Doc. # 1010), proposing that he file his report within six months. The Examiner's report thus likely should be ready by January or early February 2013. The Debtors, however, request nine months' extension of the exclusive right to file a plan, and eleven months for the exclusive right to solicit votes thereon – extensions until June 2013 and August 2013, respectively. The Debtors go too far.

5.    Indeed, the salient circumstances do not warrant the presumption that the Debtors will properly use these exclusivity periods for their intended purposes of facilitating the process of reaching a consensual plan. Specifically, non-Debtor Ally Financial Inc. ("Ally") controls the Debtors; it appears that a large number of the Debtors' employees have equity

interests in Ally[1]; the Court has found that Ally's dealings with the Debtors warrant six months of in-depth scrutiny by the Examiner; the Debtors have proposed to use their Chapter 11 cases to procure broad releases for Ally; and Ally already is willing to pay $950 million[2] for those releases. These circumstances suggest the Debtors deserve less, not more, than the normal extension of exclusivity.

6. The Motion advances the argument that (i) the completion of the Examiner's inquiry will be needed in order to assess whether Ally should be released, therefore (ii) nine- and eleven-month extensions are warranted. Aurelius accepts the premise but disputes the conclusion of this syllogism, for two reasons.

7. First, the Debtors' argument incorrectly presupposes that their Chapter 11 plan must release Ally. Acceding to this supposition would allow Ally to hold hostage the large amount of cash that will soon be available for distribution under the plan in order to procure a release.[3] Aurelius would welcome a plan that releases Ally for a fair price, but this will likely come at the cost of a significant delay in the case. That delay will not end when the Examiner renders his report: an investigation lasting six months is not apt to result in a consensual plan in its immediate wake. Creditors should be entitled to decide whether they would be better served to wait for an Ally settlement to fall into place or to complete a plan expeditiously and leave the

---

[1] Seventy-two of the Debtors' employees have received equity interests in Ally under the Ally Long-Term Equity Compensation Plan (*see* ECF Doc. # 43, ¶ 24). Moreover, the Debtors' CEO has received more than $17.5 million in Ally equity interests since 2009 (*see* Ally's Amendment No. 6 to Form S-1, dated April 12, 2012, page 193).

[2] The $950 million is comprised of the $750 million Cash Contribution (as defined in the *Settlement and Plan Sponsor Agreement* between Ally and the Debtors dated May 14, 2012) (ECF Doc. # 6, Ex. 8) and the $200 million premium that was offered as part of the HFS portfolio purchase price if the HFS portfolio were sold through a plan that includes releases for Ally as opposed to through a section 363 sale. *See* James Whitlinger Deposition Excerpt (ECF Doc. # 306, Ex. A, pp. 117-18).

[3] Even if, as Aurelius believes should occur, secured creditors receive interim distributions from the proceeds of their collateral, there would still be a large amount to be paid to various creditors upon consummation of a plan.

resolution of claims against Ally in the hands of a post-Chapter 11 litigation trust (unless settled before the plan takes effect).

8.   Second, even if a plan could not be solicited and confirmed until after the Examiner's report is issued, every effort should be made to facilitate negotiation of a consensual plan in the interim, with the hope that the delay after issuance of the Examiner's report will be minimized.

*Restrictions on Plan Negotiations*

9.   Prior to the commencement of these cases, the Debtors entered into plan support agreements ("PSAs") with two ad hoc creditor groups – the Secured Noteholder Group, which holds a minority of the Secured Notes, and a group holding a minority of the trust certificates issued by the various residential mortgage-backed securities ("RMBS") trusts sponsored by the Debtors.  (ECF Doc. # 6, Exs. 9, 10.)  The PSAs reflect separate negotiations between each of those groups on the one hand and the Debtors and Ally on the other hand.  Both PSAs require releases of Ally.  (*See* Secured Note PSA § 4.1(g); RMBS PSA § 3.1(i).)  The PSAs also provide that the members of these ad hoc groups "shall not directly or indirectly … engage in, continue or otherwise participate in any negotiations regarding any Alternative Restructuring …."  (*See* Secured Note PSA § 6(c); RMBS PSA § 5(b).)  While these restrictions bind only the parties to the PSAs, they necessarily impede the ability of non-party creditors to pursue productive plan negotiations, since large blocks of creditors are precluded from engaging in those discussions.

10.   This leaves the Debtors in the unseemly position of effectively dictating whether creditors can productively negotiate with each other rather than through the Debtors.  This runs counter to the purpose of exclusivity, which assumes that debtors will facilitate multi-

party negotiations, not block them. For this reason, Aurelius believes any extension of exclusivity in the present cases should be conditioned upon termination of any provisions in the PSAs that restrict the ability of creditors to pursue plan negotiations with each other.

*Legal Authority Does Not Support An Extraordinary Nine-Month Extension*

11. Section 1121 of the Bankruptcy Code expressly limits the amount of time in which a debtor has the exclusive right to file a plan of reorganization and solicit acceptances thereof to 120 and 180 days, respectively. 11 U.S.C. § 1121(b) and (c). Once these initial periods expire, a debtor may extend its exclusive periods only upon a showing of "cause." 11 U.S.C. § 1121(d). *In re Borders Group, Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011). These congressional restrictions on a debtor's exclusive periods exist for good reason. "Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors." *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988). *See also In re Lake in the Woods*, 10 B.R. 338, 344 (E.D. Mich. 1981).

12. The *Adelphia* factors pertinent to the Motion have been set forth by the Debtors in their Motion and are well-known to this Court. *See Borders Group*, 460 B.R. at 822 *et seq.* But as Judge Gerber noted in *Adelphia*, "the caselaw factors might not, in every case, by themselves be determinative." 352 B.R. at 590. "When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors." *In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997), *cited with approval in Adelphia*, 352 B.R. at 590; *see Borders Group*, 460 B.R. at 827.

13. Although the Motion is one to extend the Debtors' exclusivity, rather than to terminate a period of exclusivity, the same "primary consideration" should apply. In order to

103656354 v6                                        5

move this case forward, an extension of exclusivity for only 90 days is warranted. It would not be unduly burdensome to require the Debtor to come back to the Court in 90 days to demonstrate whether it is making progress in negotiations with creditors and whether any further extension is appropriate.

14. Additionally, the 90-day extension of the periods of exclusivity should be conditioned on modification of the PSAs to allow creditors to conduct plan negotiations with each other.

## CONCLUSION

WHEREFORE, Aurelius respectfully requests that the Court (i) deny the relief requested in the Motion, (ii) enter an order extending the Debtors' exclusive period for filing a plan by only 90 days, and for soliciting that plan by only 60 days thereafter, but conditioned on the Debtors and the ad hoc groups agreeing to terminate the clauses in the PSAs forbidding discussions among creditors; and (iii) grant such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
September 4, 2012

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: /s/
Fred S. Hodara
Robert A. Johnson
Christopher W. Carty
One Bryant Park
New York, NY 10036
Tel. (212) 872-1000
Fax (212) 872-1002

*Attorneys for Aurelius Capital Management, LP*