CLEARY GOTTLIEB STEEN & HAMILTON LLP
Thomas J. Moloney (TJM-9775)
Sean A. O'Neal (SAO-4067)
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Special Counsel for Wilmington Trust, National
Association, as Indenture Trustee for the Senior
Unsecured Notes Issued by Residential Capital, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                              :
**In re**                                     :
                                              :        **Chapter 11 Case No.**
                                              :
**RESIDENTIAL CAPITAL, LLC, et al.,**         :
                                              :        **12-12020 (MG)**
                    **Debtors.**              :
                                              :        **(Jointly Administered)**
                                              :
------------------------------------------------------------X

**DECLARATION OF MATTHEW J. DOLAN IN SUPPORT OF THE
OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION TO THE
DEBTORS' MOTION FOR THE ENTRY OF AN ORDER EXTENDING THEIR
EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT
ACCEPTANCES THEREOF**

MATTHEW J. DOLAN declares as follows under penalty of perjury under the laws of

the United States of America that the forgoing is true and correct:

1.      I am an associate at the law firm of Cleary Gottlieb Steen & Hamilton LLP, special

counsel for Wilmington Trust, National Association (the "Trustee"), solely in its capacity as

indenture trustee for various series of senior unsecured notes (the "Notes," and the holders thereof,

the "Noteholders") issued by Residential Capital, LLC.[1]  I am admitted to practice before the

---
[1]      Unless otherwise indicated, capitalized terms shall have the same meanings given in the Objection.

courts of the State of New York and the United States District Court for the Southern District of

New York.  I make this declaration in support of the Trustee's objection to the Debtors' Motion for

Entry of an Order Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit

Acceptances Thereof.

2.      I am familiar with the facts and circumstances based on my knowledge, information

and belief, and would so testify if called as a witness that they are true and correct.

3.      True and correct copies of the following documents are attached as exhibits:

EXHIBIT A:    Motion to Modify the Revised Joint Omnibus Scheduling Order and
Provision for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed.
R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreement,
and (II) the RMBS Trustees' Limited Objection to the Sale Motion, In re
Residential Capital, LLC, No. 12-12020 (MG) (Doc. 1300), filed on
August 28, 2012 by the Trustee.

EXHIBIT B:    Excerpts from the transcript of proceedings before the Hon. James M.
Peck, December 6, 2011, In re Lehman Brothers Holdings, Inc., No. 08-
13555 (JMP) (Doc. 23130).


Executed this 4th day of September 2012 in New York, New York.

Matthew J. Dolan

# EXHIBIT A

**HEARING DATE: SEPTEMBER 11, 2012 AT 10:00 A.M. EST**
**OBJECTION DEADLINE: SEPTEMBER 4, 2012 AT 4:00 P.M. EST**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Thomas J. Moloney (TJM-9775)
Sean A. O'Neal (SAO-4067)
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Special Counsel for Wilmington Trust, National
Association, as Indenture Trustee for the Senior
Unsecured Notes Issued by Residential Capital, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                               :
In re                                          :
                                               :     Chapter 11 Case No.
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,        :
                                               :     12-12020 (MG)
            Debtors.                           :
                                               :     (Jointly Administered)
                                               :
-------------------------------------------------------------------X

**MOTION TO MODIFY THE REVISED JOINT OMNIBUS SCHEDULING ORDER
AND PROVISION FOR OTHER RELIEF REGARDING (I) DEBTORS' MOTION
PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF RMBS TRUST
SETTLEMENT AGREEMENT, AND (II) THE RMBS TRUSTEES'
<u>LIMITED OBJECTION TO THE SALE MOTION</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ................................................................................................... 4

    A.    The Chapter 11 Filing......................................................................... 4

    B.    Debtors' History in RMBS.................................................................. 5

    C.    The History of the Scheduling Order .................................................. 5

    D.    The Supplemental Motion ................................................................. 9

    E.    Noteholder Efforts to Obtain Critical Information Regarding the RMBS
        Settlement Have Been Stymied ......................................................... 10

        i.    At the Same Time the Debtors Negotiated the HoldCo Election,
            They Refused to Provide Information To Key Stakeholders Most
            Impacted by It ..................................................................... 10

        ii.    The Debtors Continue to Delay Providing Relevant Information
            Even After Filing the Supplemental Motion.............................. 12

        iii.    The Trustee Is Taking Steps To Immediately Engage in
            Discovery ........................................................................... 13

BASIS FOR RELIEF ............................................................................................. 13

    A.    The Scheduling Order Should be Modified for Good Cause and All Dates
        Should be Extended by at Least Ninety (90) Days ........................... 13

        i.    The Rule 16 Legal Standard ................................................... 13

        ii.    Good Cause Exists To Modify Under Rule 16 .......................... 15

    B.    Alternatively, the Scheduling Order Should be Modified Pursuant to
        Rule 60(b)(2),(3) and (6).................................................................. 19

CONCLUSION...................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

Statutes

11 U.S.C. § 105 ................................................................................................... 19

Fed. R. Bankr. P. 7016 ....................................................................................... 13

Fed. R. Bankr. P. 9014(c) .................................................................................. 13

Fed. R. Civ. P. 16(B) .......................................................................................... 14

Fed. R. Civ. P. 60(b)(2) ...................................................................................... 20

Fed. R. Civ. P. 60(b)(3) ...................................................................................... 20

Fed. R. Civ. P. 60(b)(6) ...................................................................................... 20

Cases

Burton v. United States,
    199 F.R.D. 194 (S.D. W. Va. 2001) ............................................................. 14

DiPirro v. United States,
    189 F.R.D. 60 (W.D.N.Y. 1999) ................................................................... 20

Fremont Inv. & Loan v. Beckley Singleton, Chtd.,
    No. 2:03-CV-1406, 2007 WL 1213677 (D. Nev. Apr. 24, 2007) ................ 14-15

Grant v. Citibank, N.A.,
    No. 10-Civ-2955 (KNF), 2010 WL 5187754 (S.D.N.Y. Dec. 6, 2010) ........ 14

Holmes v. Grubman,
    568 F.3d 329 (2d Cir. 2009) .......................................................................... 14

In re Adelphia Commc'ns Corp.,
    336 B.R. 610 (Bankr. S.D.N.Y. 2006) .......................................................... 16

In re Agriprocessors, Inc.,
    No. 08-02751, 2011 WL 4900037 (Bankr. N.D. Iowa Oct. 14, 2011) .......... 14

In re AMC Realty Corp.,
    270 B.R. 132 (Bankr. S.D.N.Y. 2001) .......................................................... 20

In re Burkart,
    No. 08-61077, 2010 WL 502945 (Bankr. N.D.N.Y. Feb. 9, 2010) .............. 13

*In re Carpenter,*
No. 04-68321-aer7, 2006 WL 4528541 (Bankr. D. Or. Apr. 19, 2006) .......................... 13

*In re Enron Corp.,*
352 B.R. 363 (Bankr. S.D.N.Y. 2006)................................................................................ 20

*In re Lenox,*
902 F.2d 737 (9th Cir. 1990)............................................................................................. 20

*In re Maxwell Newspapers, Inc.,*
170 B.R. 549 (S.D.N.Y. 1994).......................................................................................... 20

*In re Rafter Seven Ranches L.P.,*
414 B.R. 722 (Bankr. 10th Cir. 2009) .............................................................................. 19

*In re Tender Loving Care Health Care Servs., Inc.,*
No. 02-88020, 2009 WL 5218598 (Bankr. E.D.N.Y. Dec. 31, 2009) ............................. 13

*Kassner v. 2nd Ave. Delicatessen Inc.,*
496 F.3d 229 (2d Cir. 2007).............................................................................................. 14

*Lawrence v. Starbucks Corp.,*
No. 08-Civ-3734, 2009 WL 4794247 (S.D.N.Y. Dec. 10, 2009) ..................................... 14

*Lonsdorf v. Seefeldt,*
47 F.3d 893 (7th Cir. 1995)............................................................................................... 20

*Noyes v. Kelly Servs.,*
488 F.3d 1163 (9th Cir. 2007) .......................................................................................... 15

*Parker v. Columbia Pictures Indus.,*
204 F.3d 326 (2d Cir. 2000).............................................................................................. 14

*Rangel v. Gonzalez Mascorro,*
274 F.R.D. 585 (S.D. Tex. 2011)...................................................................................... 15

*Soroof Trading Dev. Co. v. GE Microgen, Inc.,*
___ F.R.D. ___, No. 10-Civ-1391, 2012 WL 1681815 (S.D.N.Y. May 11, 2012) ......... 14

*United Consumers Club, Inc. v. Prime Time Marketing Mgmt. Inc.,*
271 F.R.D. 487 (N.D. Ind. 2010)...................................................................................... 15

Other Authorities

6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§1522.2 (3d ed. 2012) ....................................................................................................... 14

iii

Declaration of Mark A. Lightner

EXHIBIT A:   Excerpts from the transcript of proceedings before the Hon. Martin Glenn, June 25, 2012.

EXHIBIT B:   Excerpts from the transcript of proceedings before the Hon. Martin Glenn, July 10, 2012.

EXHIBIT C:   Excerpts from the transcript of proceedings before the Hon. Martin Glenn, July 24, 2012.

EXHIBIT D:   Excerpts from transcript of proceedings before the Hon. Martin Glenn, July 30, 2012.

EXHIBIT E:   Blackline comparison between the RMBS Trust Settlement Agreement with the Steering Committee Group, found at exhibit 2 to the Original Motion, and the Amended and Restated RMBS Trust Settlement Agreement with the Steering Committee Group, found at exhibit 2 to the Supplemental Motion.

EXHIBIT F:   Blackline comparison between the RMBS Trust Settlement Agreement with the Talcott Franklin Group, found at exhibit 4 to the Original Motion, and the Amended and Restated RMBS Trust Settlement Agreement with the Talcott Franklin Group, found at exhibit 3 to the Supplemental Motion.

EXHIBIT G:   Letter, dated July 25, 2012 from Sean A. O'Neal to Larren M. Nashelsky.

EXHIBIT H:   Letter, dated August 3, 2012 from Sean A. O'Neal to Larren M. Nashelsky.

EXHIBIT I:   E-mail chain, with last e-mail dated July 30, 2012 from Mark Lightner to Mark Renzi and Todd M. Goren, with carbon copy to Alexandra Steinberg Barrage, David S. Brown, Gary S. Lee, Joel C. Haims, Jamie A. Levitt, Jeremy Opolsky, Moira C. Heiges, Stefan W. Engelhardt, Sean A. O'Neal, Todd M. Goren and Thomas J. Moloney.

EXHIBIT J:   Letter, dated August 10, 2012 from Jamie A. Levitt to Sean O'Neal.

EXHIBIT K:   Letter, dated August 21, 2012 from Sean A. O'Neal to Larren M. Nashelsky

EXHIBIT L:   Letter, dated August 23, 2012 from Anthony Princi to Sean O'Neal

EXHIBIT M:   Excerpts from the transcript of proceedings before the Hon. Martin Glenn, August 16, 2012.

**TO THE HONORABLE JUDGE GLENN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Wilmington Trust, National Association (the "Trustee"), solely in its capacity as indenture trustee for various series of senior unsecured notes in the outstanding aggregate principal amount of approximately $1 billion (the "Notes," and the holders thereof, the "Noteholders") issued by Residential Capital, LLC ("Residential Capital," and with its debtor-affiliates, the "Debtors"), under that certain indenture dated as of June 24, 2005 (as supplemented, the "Indenture"),[1] respectfully submits this motion (the "Motion") pursuant to 11 U.S.C. § 105, Fed. R. Bankr. P. 7016, 9014, and 9024, and Fed. R. Civ. P. 16(b) and 60(b) for an order modifying that certain Revised Joint Omnibus Scheduling Order and Provision for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreement, and (II) the RMBS Trustees' Limited Objection to the Sale Motion (Doc. 945) (the "Scheduling Order"). In support of the Motion, the Trustee represents as follows:

### PRELIMINARY STATEMENT

1.     By this Motion, the Trustee seeks a modification of the Scheduling Order for good cause in light of the fundamental changes that were made to the proposed RMBS settlement agreements following entry of the Scheduling Order. More than two weeks after entry of the Scheduling Order—and without consultation with or notice to the Committee of Unsecured

---

[1]     The Notes include $1,250,000,000 6.5% notes due 2012, $1,750,000,000 6.5% notes due 2013, $750,000,000 6.875% notes due 2015, €750,000,000 5.125% notes due 2012, £400,000,000 6.375% notes due 2013, and £400,000,000 7.875% notes due 2014, with a total aggregate outstanding principal amount of approximately $1 billion (based on the foreign exchange rate as of the petition date, May 14, 2012).

1

Creditors (the "Committee"), the Trustee,[2] or the Noteholders—the Debtors filed a supplement to

the RMBS settlement agreement (Doc. 1176) (the "Supplemental Motion") including a new

provision—the so-called HoldCo Election—that seeks to dramatically change the landscape of

these chapter 11 cases by permitting settling RMBS trustees to allocate up to 20% of their allowed

claims to Residential Capital on the basis of unasserted, hypothetical alter ego claims. The

Supplemental Motion stands in sharp contrast to the Debtors' position during the three months

prior to filing the Supplemental Motion, when the Debtors represented that the allowed $8.7 billion

claim would be allocated to debtors Residential Funding Company, LLC ("RFC") and GMAC

Mortgage LLC ("GMACM")—not to Residential Capital.

     2.      The Debtors' prior representations and conduct materially influenced the actions of

all interested parties in these chapter 11 cases, shaping the positions those parties undertook to

protect their interests and rights—including the decision of whether or not to participate actively in

the negotiation of the Scheduling Order and whether to pursue discovery on the merits of the

RMBS settlement itself. The newly disclosed HoldCo Election disadvantages the Trustee, the

Noteholders, and other creditors of Residential Capital who were blindsided by the Debtors'

unilateral negotiations and who must now involve themselves in the RMBS settlement process on

an even tighter timeframe. It also raises serious concerns about the conduct of these chapter 11

cases, including possible conflicts of interest on the part of counsel, the prior lack of disclosure

generally (information requests by the Noteholders related to RMBS issues were repeatedly

denied) and potential breaches of fiduciary duties. Complex legal issues regarding the

permissibility of substantive consolidation settlements outside a plan of reorganization and the

---

[2]      As this Court is aware, the Trustee is a member and co-chair of the Committee. *See Appointment of
Official Committee of Unsecured Creditors* (Doc. 102). This Motion is filed by the Trustee solely in its capacity as
Indenture Trustee for the Noteholders.

merits of alleged, hypothetical alter ego claims will now need to be explored. All of these issues

must be addressed by the Court as part of the RMBS settlement, which can only be done on a fully

developed factual record and with the involvement of all the relevant parties.

　　　3.　　　The scope of necessary discovery has dramatically changed as a result of the

HoldCo Election. Among other things, the Trustee will need discovery on the negotiation and

approval of the HoldCo Election by representatives of Residential Capital, the legal and factual

basis for asserting alter ego claims against Residential Capital rather than against the more likely

potential target for such claims, Ally Financial Inc., the rationale for determining that the allocation

should be 20% rather than a different percentage, and the merits of the representation and warranty

claims and related hypothetical alter ego claims. Given these new developments, the Trustee

respectfully requests that the Court modify the Scheduling Order to extend all dates by at least

ninety (90) days, with the possibility of further extension if necessary, which equals the amount of

time between the filing of the original RMBS settlement agreements (which contained no HoldCo

Election) on May 14, 2012 and the Supplemental Motion on August 15, 2012.[3] This extension is

both necessary and fair.

　　　4.　　　At this time, the Trustee takes no position on the merits of the RMBS settlement

agreements as between the Institutional Investors, on the one hand, and RFC and GMACM, on the

other. However, the Trustee has serious doubts about the legality of the Debtors settling

interdebtor issues through the HoldCo Election—a Draconian form of substantive consolidation,

which arbitrarily and selectively allocates liabilities but not assets, of certain Debtors—in advance

of a plan of reorganization, especially given that the proposed settlement agreements involve only

---

[3]　　　Given the significant expansion of the scope of necessary discovery and the fact that the Debtors have thus far delayed providing meaningful discovery on these issues, the Trustee does not know whether a ninety (90) day extension will be sufficient, and requests that any modified scheduling order include provision for the extension of discovery deadlines if necessary.

a select group of parties in interest. There are serious questions about the legality of permitting RMBS trustees to delay exercising their HoldCo Election until confirmation, making it impossible for Noteholders to understand their estimated recoveries before voting on a plan. The Trustee also has significant concerns about other provisions of the revised settlement agreements including, for example, the proposed valuation of the representation and warranty and related alter ego claims, the proposed "revival" of previously unasserted alter ego claims in the event that the HoldCo Election is invalidated, and the proposed payment of legal fees without judicial review. The Trustee, therefore, expressly reserves all rights with respect to the merits of the Debtors' Motion to Approve the RMBS Trust Settlement Agreements (Doc. 320) (the "Original Motion") and the Supplemental Motion.[4]

## BACKGROUND

### A.    The Chapter 11 Filing

5.    On May 14, 2012, the Debtors commenced voluntary cases under chapter 11, title 11, of the United States Bankruptcy Code (the "Bankruptcy Code").

6.    On May 14, 2012, the Court authorized joint administration, and the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.    On June 28, 2012, the Court directed the United States Trustee to appoint an examiner. *See Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* (Doc. 536). The appointment of Arthur J. Gonzalez, Esq. as examiner was approved by the Court on July 3, 2012. *See Order Approving Appointment of Arthur J. Gonzalez, Esq. as Examiner* (Doc. 674).

---

[4]    For the avoidance of doubt, the Trustee's participation in discovery is not a waiver of any rights to argue that the RMBS settlements cannot be approved outside of a reorganization plan.

4

**B.    Debtors' History in RMBS**

8.    Debtors RFC and GMACM were involved in originating and acquiring residential

mortgage loans that were then sold to trusts as part of the securitization process. *See Affidavit of*

*James Whitlinger*, dated May 14, 2012 (the "Whitlinger Aff.") (Doc. 6) at ¶ 17-23. RMBS were

issued by affiliates of the Debtors and then sold to investors. *See id.*

9.    The Debtors have alleged that in connection with the sale of the mortgage loans,

RFC and GMACM (and potentially other operating Debtors) provided certain representations and

warranties, and undertook obligations to repurchase or substitute any breaching mortgage loan. *See*

Original Motion at ¶ 1.

10.    Debtors have represented that as many as 392 different trusts may hold such alleged

or potential claims related to the securitization of approximately 1.6 million mortgage loans with a

total original issue balance of $221 billion. *See id.* The Debtors' Original Motion sought to settle

these RMBS-related representation and warranty claims.

**C.    The History of the Scheduling Order**

11.    On May 14, 2012, the Debtors filed the original version of the RMBS settlement

agreements. *See* Whitlinger Aff. Ex. 10 (Doc. 6). The original settlement agreements did not

include the HoldCo Election or make any reference to alleged alter ego claims (or indeed specify

any claims at all) against Residential Capital. In fact, the original settlement agreements

specifically included a release of all other Debtors, except for the $8.7 billion limited claim against

RFC and GMACM.

12.    On June 11, 2012, the Debtors filed the Original Motion, which sought approval of

the RMBS settlement agreements, including "entry of an order . . . approving the compromise and

settlement of an allowed claim of up to $8.7 billion against debtors Residential Funding Company,

LLC [ ] and GMAC Mortgage LLC . . . " to resolve the alleged and potential representation and

5

warranty claims. *See* Original Motion at p. 1. The Original Motion did not include any references
to the HoldCo Election, and there was no reference to, let alone any detailed discussion of, any
alleged alter ego claims against Residential Capital.

13.    The Original Motion was scheduled for a hearing on July 11, 2012, but was quickly
adjourned due to concerns of the Court and certain parties in interest about the complexities
presented by the Original Motion and the settlement itself. *See* Declaration of Mark A. Lightner,
dated August 28, 2012 (the "Lightner Decl.") Ex. A at 32-35.

14.    The Original Motion was discussed at length with the Court, during conferences on
June 25, 2012, July 10, 2012, and July 30, 2012. At the June 25, 2012 conference, for example, the
Debtors informed the Court that they were working with the Committee and the RMBS trustees
(the "RMBS Trustees") to set a date for hearing on the Original Motion. *See id.* at 7. At that time,
the Committee raised concerns about whether the Original Motion should even move forward in
the near term. *See id.* at 34-36. Then, at the July 10, 2012 status conference, the Debtors again
reported that progress had been made in discussions with the Committee and the RMBS Trustees
regarding a hearing date and discovery schedule for the Original Motion. *See* Lightner Decl. Ex. B
at 19-20. Again, the Committee questioned the Debtors' preference to resolve the Original Motion
at this stage in the case. *See id.* at 27-28. The Court ordered the parties to file proposed schedules
by July 20, 2012, in advance of a hearing on the scheduling of the Original Motion on July 24,
2012. *See id.* at 22. There was no discussion of the alter ego claims or the HoldCo Election at
either the June 25, 2012 or July 10, 2012 status conferences.

15.    On July 20, 2012, after having failed to reach consensus on a proposed scheduling
order, the Debtors filed their own proposed scheduling order, which suggested, among other
deadlines, the close of discovery on August 20, 2012, the filing of objections by September 19,

6

2012, and a hearing on the Original Motion during the week of October 8, 2012.[5] The RMBS

Trustees and the Committee jointly filed a competing proposed scheduling order, which provided

for additional time for discovery and a later hearing date.[6] This proposal was motivated by

concerns with the abbreviated nature of Debtors' proposed schedule.[7] Neither proposal included a

deadline for filing a supplement or amendment to the Original Motion, nor did either intimate the

addition of the HoldCo Election.

16.     The Court held a hearing to discuss the proposed orders on July 24, 2012. As a

result of that hearing, the Court ordered the parties to meet face-to-face every day until they created

a comprehensive proposed schedule in an agreed-upon format. *See* Lightner Decl. Ex. C at 53, 71-

72, 77-79. The Court set another hearing for July 30, 2012 to consider the resulting revised

proposed schedule. *See id.* at 79. Yet again, there was no discussion of a supplemental motion, the

addition of alter ego claims, or the HoldCo Election.

17.     The Debtors filed a revised proposed schedule on July 27, 2012. This proposal, for

the first time, included, with no explanation, a deadline for filing the Supplemental Motion.[8]

---

[5]     *See Notice of Proposed Order – Omnibus Scheduling Order Regarding Debtor's (I) Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements; And (II) Sale Motion, Only With Respect to the Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, U.S. Bank national Association, And Wells Fargo Bank, N.A., In Their Capacities as Trustees, Indenture Trustees, or Master Servicers* (Doc. 862).

[6]     As noted above, the Trustee is filing this Motion solely in its capacity as Indenture Trustee for the Noteholders, and not in its capacity as a member or co-chair of the Committee.

[7]     *See Submission in Support of Scheduling Order Jointly Proposed by Certain RMBS Trustees* (Doc. No. 857); *Statement of Official Committee of Unsecured Creditors in Support of Scheduling Order Jointly Proposed by Committee and Certain RMBS Trustees* (Doc. 860). Wells Fargo Bank, N.A., in its capacity as Master Servicer of certain trusts, filed a limited joinder of support for the Committee's and RMBS Trustees' proposed schedule. *See* Doc. 858. Similarly, the Financial Guaranty Insurance Company filed a joinder of support for the Committee's and RMBS Trustees' proposed schedule, noting that Debtors' proposed expedited schedule would prejudice all parties involved. *See* Doc. 865.

[8]     *See Notice of Proposed Order – Revised Joint Omnibus Scheduling Order Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (II) The RMBS Trustees' Limited Objection to the Sale Motion* (Doc. 926).

18.     On July 30, 2012, the Court conducted a 90-minute hearing solely to consider the

revised proposed schedule. Several parties addressed the new provision for the Supplemental

Motion. The Debtors informed the Court that, during discussions among the Debtors, the

Committee, and RMBS Trustees regarding the schedule, it became clear that there were "things

that just needed to be clarified," which was the purpose for the Supplemental Motion. Lightner

Decl. Ex. D at 31-32. The Debtors informed the Court that they planned to file "a supplement.

We're not going to redo this motion, Judge." *Id.* at 31. "[O]ne of the benefits, Judge, is that we

realized that there really are things that just needed to be clarified. And so amongst and between

the parties, we have a short list. I'm actually going to be sending an email to all of these parties

tomorrow, just confirming what we talked about . . . . So we have a few items that we all discussed

that we think we need to clarify either in a motion, and in one particular instance, also potentially

in the settlement agreement itself." *Id.* at 31-32. Never once did the Debtors mention previously

unasserted alter ego claims, the HoldCo Election, or the reallocation of up to $1.74 billion in

claims against a previously uninvolved Debtor.

19.     At this hearing, counsel speaking on behalf of the RMBS Trustees, stated that "[i]t

was a very important component of this that we have the opportunity to have a supplemental

motion filed, which we think will give us a great deal more comfort in the process." *Id.* at 48-49.

While acknowledging that he had not yet seen the supplement, counsel stated that, "[i]f it's what

we've talked about, I think we'll be okay. And we've spent a lot of time talking about it." *Id.* at

49. The Committee separately expressed its view that, "we're assuming that there are not going to

be any material new changes [in the supplement] that are going to sort of move us in a different

direction." *Id.* at 35-36.

8

20.    In addition, concerns were voiced that the proposed schedule was too tight. The

Committee noted that the parties were not "enthusiastic about the schedule" due to it being a "tight

time schedule." *Id.* at 34. The Court agreed, identifying "one of the big concerns" as the

"aggressive schedule," and questioning whether "it builds in any time or sufficient time for

negotiations." *Id.* at 37-39.

21.    With this information, the Court approved the Scheduling Order on July 31, 2012.

The Supplemental Motion was filed by the Debtors on August 15, 2012.

**D.    The Supplemental Motion**

22.    The Supplemental Motion, for the first time, revealed that the Debtors had

negotiated an agreement to expand the RMBS settlement to include alleged alter ego claims

against Residential Capital and to permit the HoldCo Election.[9]

23.    Discussion of the HoldCo Election in both the Supplemental Motion and the

settlement agreements is short, conclusory, and void of meaningful explanation. Indeed, it is

relegated to a single paragraph of the Supplemental Motion, which states in substantial part:

> The RMBS Trust Settlement also resolves direct purported alter
> ego claims against ResCap that the Institutional Investors argue
> *that they could have directed the Trustees to assert.* If successful,
> these claims could cause ResCap to be liable for the Seller
> Entities' and Depositor Entities' repurchase obligations. Although
> the Institutional Investors and Debtors dispute the likelihood of
> success on and strength of such potential claims, the Debtors and
> Institutional Investors agreed to resolve them by permitting each
> Accepting Trust, by written notice at any time prior to
> confirmation of a Chapter 11 plan, to elect to reallocate up to 20%
> of its Allocated Claim against the Seller Entities and Depositor
> Entities as a general unsecured claim against ResCap (each a
> "HoldCo Election").

---

[9]    The Debtors have not filed any documents showing changes between the original settlement agreements
and the new settlement agreements. For the convenience of the Court, submitted with this Motion are blackline
comparison documents, prepared by Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), comparing the
original settlement agreements with the new settlements agreements. *See* Lightner Decl. Exs. E and F.

9

Supplemental Motion at ¶ 20 (emphasis added).[10]

24.     The HoldCo Election alters the RMBS settlement by purporting to settle

hypothetical alter ego claims that "could have" been asserted against Residential Capital.  The

Debtors have provided no explanation for this dramatic shift, and they certainly did not disclose it

before August 15, 2012 (fifteen days after the Court entered the Scheduling Order).  Nothing in the

Supplemental Motion addresses the basis or likelihood of success of the purported alter ego claims,

or how the proposed 20% allocation was determined.  Nor do any of the supporting declarations

address the basis or merits of the alleged alter ego claims.

### E.     Noteholder Efforts to Obtain Critical Information Regarding the RMBS Settlement Have Been Stymied

#### i.     At the Same Time the Debtors Negotiated the HoldCo Election, They Refused to Provide Information To Key Stakeholders Most Impacted by It

25.     For weeks prior to the Supplemental Motion, certain Noteholders sought

information from the Debtors about the RMBS settlement as part of their routine due diligence in

these chapter 11 cases.[11]  To date, the Debtors have provided minimal information, formally denied

the requests, and even questioned the need for the Noteholders to review anything related to the

settlement because it did not affect them.  *See* Lightner Decl. ¶ 3.

26.     On July 25, 2012, certain Noteholders requested from the Debtors, *inter alia*, (1)

information concerning the RMBS settlement agreements, including valuations, appraisals, and

fairness opinions, and any tolling agreements in connection therewith, and (2) copies of the

"Executive Summaries" dated May 9, 2012 and May 12, 2012, as described in certain plan support

---

[10]     The amended RMBS settlement agreements submitted with the Supplemental Motion contain a very limited explanation of the HoldCo Election.  *See* Ex. 2 to the Supplemental Motion at Sect. 6.02; Ex. 3 to the Supplemental Motion at Sect. 6.02.

[11]     Since the filing of the Supplemental Motion, the Trustee has retained Cleary Gottlieb as special restructuring counsel pursuant to a letter of direction by a majority of the Noteholders.

agreements and/or settlement agreements with parties in interest, which purportedly describe the methodology of the allocation of sale proceeds, settlement proceeds, and all other matters that determine distribution to creditors. *See* Lightner Decl. Ex. G.

27.     On July 26, 2012, attorneys from Cleary Gottlieb and Morrison & Foerster LLP ("Morrison & Foerster"), along with advisors from FTI Consulting and Alvarez and Marsal, discussed, among other things, information requests, including the diligence requests from July 25, 2012. At that time, the Noteholders were promised access to meaningful information that would answer their diligence questions, including pertinent questions relating to the RMBS settlement. *See* Lightner Decl. Ex. H.   Notably on the call, representatives of the Debtors stated that the RMBS settlement did not concern the Noteholders, and questioned the need for the Noteholders or their advisors to receive such information in the first instance. *See* Lightner Decl. ¶ 3.

28.     After a series of letters and emails related to the diligence requests, *see* Lightner Decl. Exs. H and I, on August 10, 2012, Morrison & Foerster denied all of the information requests, ostensibly because producing information would be administratively burdensome and the requested documents would be available through the Examiner's document depository at some unspecified point in the future. *See* Lightner Decl. Ex. J. The response ignored the Noteholders' request that they be provided with the same information that had been provided to the Committee. Despite the fact that it would not be burdensome to provide the same information to the Noteholders as was provided to the Committee, the Debtors denied access to such information. In addition, Debtors' response failed to acknowledge that the materials provided to the Examiner may not include all of the relevant materials concerning the RMBS settlement agreements because the Examiner has not yet been charged with analyzing every aspect of the RMBS settlement.[12] *See*

---

[12]     Even assuming necessary discovery, including with regard to the alter ego claims, will be available through the Examiner's document depository, the delay caused by the creation of that depository, which was only approved

11

*Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner* (the "Examiner Scope Order") (Doc. 925). In short, the Debtors' response can be explained only as an attempt to delay and deny legitimate discovery requests.

29.     Never once during any of these communications was there any mention that the Debtors were secretly negotiating a potential $1.74 billion allowed claim against Residential Capital for purported alter ego claims.

### ii.    The Debtors Continue to Delay Providing Relevant Information Even After Filing the Supplemental Motion

30.     On August 21, 2012, a majority of the Noteholders sent the Debtors a letter expressing surprise and concern with the new alter ego claims and HoldCo Election. *See* Lightner Decl. Ex. K. On August 23, 2012, the Debtors responded and reiterated that the information requests could be satisfied through access to the Examiner's document depository, and implicitly dismissed these discovery concerns as illegitimate.[13] *See* Lightner Decl. Ex. L. However, there was no recognition that the HoldCo Election had changed the scope of necessary discovery. The Debtors' suggestion that the Noteholders rely on the Examiner's document depository is wholly insufficient—as the Debtors must realize—because the Examiner may not be seeking discovery on these issues given that it is not yet charged with analyzing the merits of the entire RMBS

---

by the Court on August 20, 2012, provides additional reason why the Scheduling Order should be extended. *See Order (I) Granting Examiner Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities, (II) Establishing Procedures for Responding to Those Subpoenas, (III) Approving Establishment of a Document Depository and Procedures to Govern Use, and (IV) Approving Protective Order* (Doc. 1223).

[13]     On August 22, 2012 the Debtors finally provided Cleary Gottlieb with access to certain RMBS-related documents on, Intralinks, a document sharing website controlled by the Debtors. Although Cleary Gottlieb was initially granted limited access to the site on July 27, 2012, permission to view any documents related to the RMBS settlement was denied by the Debtors until August 22, 2012. A review of the Intralinks website reveals that a number of the documents related to the RMBS settlement had been posted to the site in early July and could have been made available to Cleary Gottlieb significantly earlier by simply granting permission to view those files. In addition, a number of the RMBS-related documents appear to be irrelevant, such as fee applications filed with bankruptcy courts in unrelated matters.

settlement. *See* Examiner Scope Order. There can be no excuse for the Debtors' continued efforts to obstruct discovery.

### iii.   The Trustee Is Taking Steps To Immediately Engage in Discovery

31.    The Trustee is taking the necessary steps to obtain the relevant information but is faced with an impossible timeline.

32.    The Trustee and its advisors are seeking access to the Examiner's document depository, and will be reviewing its contents related to the RMBS settlement. The Trustee also anticipates serving document requests and deposition notices on a number of parties. Although this process is hampered by the utter lack of factual support in the Supplemental Motion for the surprise inclusion of alter ego claims in the settlement, or the basis for the Holdco Election itself, the Trustee is moving swiftly to jumpstart its discovery efforts.

### BASIS FOR RELIEF

### A.   The Scheduling Order Should be Modified for Good Cause and All Dates Should be Extended by at Least Ninety (90) Days

### i.   The Rule 16 Legal Standard

33.    Rule 7016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") governs modifications to the Scheduling Order. *See* Fed. R. Bankr. P. 7016 (providing for the application of Federal Rule of Civil Procedure 16); Fed. R. Bankr. P. 9014(c) (allowing bankruptcy courts to apply the Part VII rules to contested matters); *see also In re Burkart*, 2010 WL 502945, at *3 (Bankr. N.D.N.Y. Feb.9, 2010); *In re Tender Loving Care Health Care Services, Inc.*, 2009 WL 5218598, at *3 (Bankr. E.D.N.Y. Dec. 31, 2009); *In re Carpenter*, 2006 WL 4528541, at *6 (Bankr. D. Or. Apr. 19, 2006).

34.    Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Courts look at different factors when

13

making this determination, including the "diligence of the moving party," *see Holmes v. Grubman*,

568 F.3d 329, 334 (2d Cir. 2009), and whether the deadlines in the scheduling order could be

reasonably met despite the diligence of the party seeking the extension. *See Parker v. Columbia*

*Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Another common factor is whether prejudice

will result from permitting the modification. *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496

F.3d 229, 244 (2d Cir. 2007). Ultimately, what constitutes good cause "necessarily varies with the

circumstances of each case." *See* 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*and Procedure*, § 15.22.2 (3d ed. 2012).

　　　　35.　　　Courts in this district have altered scheduling orders where a party seeks

modification due to an event that was out of its control or knowledge, but the moving party acted

promptly following the event to attempt compliance with the schedule. *See, e.g., Lawrence v.*

*Starbucks Corp.*, 2009 WL 4794247, at *3 (S.D.N.Y. Dec. 10, 2009); *see also Burton v. U.S.*, 199

F.R.D. 194, 198 (S.D. W. Va. 2001). Similarly, courts have held that good cause exists to modify

a scheduling order to permit a party to amend a complaint where the amendment relies on

information the party could not have known prior to the scheduling order's deadline. *See, e.g.,*

*Soroof Trading Dev. Co. v. GE Microgen, Inc.*, --- F.R.D. ---, 2012 WL 1681815, at *4 (S.D.N.Y.

May 11, 2012); *Grant v. Citibank, N.A.*, 2010 WL 5187754, at *7-8 (S.D.N.Y. Dec. 6, 2010).

When a complaint is substantively amended to include, for example, new parties or new

allegations, courts will extend scheduling order deadlines to permit the parties adequate discovery

and to prevent prejudice resulting from such substantial changes to the case. *See, e.g., In re*

*Agriprocessors, Inc.*, 2011 WL 4900037, at *5 (Bankr. N.D. Iowa Oct. 14, 2011); *Fremont Inv. &*

*Loan v. Beckley Singleton, Chtd.*, 2007 WL 1213677, at *7 (D. Nev. Apr. 24, 2007). In addition,

courts have commonly found good cause where the modification is necessitated by another party's

14

actions that impose a burden on the moving party or make it impossible for the moving party to

meet a deadline. *See, e.g., Noyes v. Kelly Servs.*, 488 F.3d 1163, 1173-74 (9th Cir. 2007); *Rangel*

*v. Gonzalez Mascorro*, 274 F.R.D. 585, 596-97 (S.D. Tex. 2011); *United Consumers Club, Inc. v.*

*Prime Time Marketing Mgmt. Inc.*, 271 F.R.D. 487, 495-97 (N.D. Ind. 2010).

### ii.    Good Cause Exists To Modify Under Rule 16

36.    There is little doubt that good cause exists to modify the Scheduling Order. To be

sure, the Scheduling Order was highly negotiated and agreed to by the parties that were impacted

by the Original Motion, including the Debtors, the Committee, and the RMBS Trustees. When the

Scheduling Order was presented to the Court, the Debtors and the RMBS Trustees represented that

the Supplemental Motion would be nothing more than a "clarification" to the Original Motion, not

a "redo." *See* Lightner Decl. Ex. D at 31-32, 48-49. The Committee, which was not involved in

negotiation of the Supplemental Motion, remarked that it believed the Supplemental Motion would

not be "material." *See id.* at 35-36. Following these representations to the Court, the Scheduling

Order was approved.

37.    The Supplemental Motion fundamentally changes the nature of the proposed

settlement. It is clearly more than a "clarification"; it is, in fact, a surprise "redo." Unlike the

Original Motion, the RMBS settlement now purports to settle hypothetical alter ego claims against

Residential Capital. The HoldCo Election has the potential to radically change the dynamic of

these chapter 11 cases, altering recoveries by reallocating up to $1.74 billion in allowed claims.

The inclusion of alter ego claims and the HoldCo Election was never disclosed prior to approval of

the Scheduling Order. For that reason alone, the schedule should be extended.

38.    In addition, with the inclusion of Residential Capital, the Supplemental Motion now

raises complex issues regarding substantive consolidation. As currently structured, the HoldCo

Election acts as a perverse form of partial substantive consolidation whereby Residential Capital

15

assumes liabilities of other Debtors but does not benefit from their assets. Making matters worse, under the original settlement agreements, Residential Capital would have received a release of the settled claims. *See* Ex. 2 to the Original Motion at Sect. 7.01; Ex. 4 to the Supplemental Motion at Sect. 7.01. But, now, the revised settlement agreement purports to preserve an uncapped claim against Residential Capital if the HoldCo Election is not approved by the Court.[14] *See* Ex. 2 to the Supplemental Motion at Sect. 6.03; Ex. 3 to the Supplemental Motion at Sect. 6.03. The provision permitting RMBS trustees to delay exercising their HoldCo Election up until confirmation will make it impossible for Noteholders to understand their expected recoveries at the time of voting. The Supplemental Motion also raises serious concerns about potential conflicts of interest on the part of counsel and potential breaches of fiduciary duties. *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610 (Bankr. S.D.N.Y. 2006) (disqualifying debtors' counsel from taking public positions on issues related to intercreditor disputes). The Debtors have offered no justification—either factually or legally—for these significant changes.

39.     Together, the addition of alter ego claims and the HoldCo Election, along with the prospect of a twisted application of substantive consolidation, the possible preservation of an uncapped claim against Residential Capital, and the resulting inadequate disclosures for plan voting, render this purported "supplement" to be a completely new settlement. The settlement now implicates the rights of parties who have had no direct involvement in the settlement process given the original structure of the RMBS settlement.[15] The Trustee is entitled to participate meaningfully

---

[14]     The new settlement agreements do not limit the potential purported liability of Residential Capital for the claims released by the RMBS settlements should this Court not approve the HoldCo Election, thereby potentially exposing the Debtors to the very same litigation morass that is purportedly obviated by the RMBS settlement.

[15]     Likewise, counsel for the Committee noted at a hearing on August 16, 2012 that the Supplemental Motion has substantially complicated the RMBS settlement. *See* Lightner Decl. Ex. M at 71.

16

in the Court's consideration of this new settlement, and it needs time to conduct the necessary

discovery to do so.

40.    The addition of alter ego claims and the HoldCo Election has greatly expanded the

scope of necessary discovery. The Trustee now requires significant discovery on a range of new

issues, including: the negotiation and approval of the HoldCo Election by representatives of

Residential Capital, the legal and factual basis for asserting alter ego claims against Residential

Capital as opposed to the more obvious target, Ally Financial Inc., the rationale for determining

that the allocation should be 20% versus another percentage, the merits of the representation and

warranty claims and related alter ego claims, and the proposed settlements' provision for paying

legal fees without judicial scrutiny. The Court could not have known of these additional areas of

discovery when it set the current discovery deadlines. The Scheduling Order must be modified to

reflect the nature of this new settlement.

41.    Moreover, neither the Trustee nor any of the Noteholders had any involvement in

the RMBS settlement process because the Original Motion explicitly sought an allowed claim only

against RFC and GMACM. *See* Original Motion at 1. Similarly, the Noteholders were not

involved in the negotiation of the Scheduling Order.[16] *See id.* The Debtors repeatedly told the

Court that all parties who had an interest were involved in negotiating the Scheduling Order. *See*

Lightner Decl. Ex. B at 19-20; Ex. C at 53-54; Ex. D at 30-31. The Debtors also represented that

there would be no significant changes to the Original Motion. *See* Lightner Decl. Ex. D at 31-32.

As a result, there was no indication whatsoever prior to August 15, 2012 that the RMBS settlement

would involve alter ego claims or an allowed claim against Residential Capital.

---

[16]    While the Trustee, as a member and co-chair of the Committee, participated in negotiations regarding the
Scheduling Order, the Trustee learned of the HoldCo Election only after the Supplemental Motion was filed.

42.     Under these circumstances, the Trustee and the Noteholders could not have been
expected to engage on the RMBS settlement prior to August 15, 2012.  Every attempt the
Noteholders made to participate earlier was thwarted by the Debtors through both their statements
that the RMBS settlement did not concern the Noteholders and the denial and delay of information
requests.  *See supra* at ¶¶ 25-29.

43.     Finally, it is clear that despite the Trustee's diligence since August 15, 2012, it will
be impossible to adhere to the deadlines established by the Scheduling Order.  The Scheduling
Order permits limited time to accomplish the required substantial discovery.  Under the Scheduling
Order, fact discovery is set to end on September 24, 2012 and any objection by the Trustee is due
on October 5, 2012.  *See* Scheduling Order at ¶¶ 5 and 7.  In addition, parties are permitted up to
ten days to respond to any discovery request.  *See id.* at ¶ 1.

44.     The consequence of these deadlines is that the Trustee does not have enough time
to complete discovery.  Even if the Trustee serves document requests today, the Debtors would
have until September 7, 2012 to respond.  Then, allowing only a week to review the documents,
the Trustee is left with a single week to schedule and take numerous depositions on a potential
multi-billion dollar claim.  And this timeframe ignores that the Debtors have failed to provide any
basis whatsoever for the settlement of alter ego claims or the HoldCo Election.  Indeed, the lack of
transparency may require Rule 30(b)(6) depositions just to identify the correct individuals to
depose.  This work simply cannot be completed by September 24, 2012.

45.     The Trustee is not the first party to raise issues with this expedited schedule.  Even
those involved in negotiating the Scheduling Order have expressed concern that discovery cannot
be completed on the timeline already set forth by the Scheduling Order.  *See* Lightner Decl. Ex. D
at 34; Ex. M at 73-74; *see also supra* at ¶ 20.  The Court has also expressed its skepticism (even

18

prior to the new settlement proposed by the Supplemental Motion) that this ambitious schedule

could be followed. *See* Lightner Decl. Ex. D at 37-39; *see also* supra at ¶ 20.  Given these ongoing

concerns with the Scheduling Order and the significant expansion of the scope of discovery

required by the Supplemental Motion, all parties would benefit from an extension of all deadlines

of at least ninety (90) days, with the possibility of further extension if necessary.  This would also

be the only fair result for parties such as the Trustee and the Noteholders who had no direct

involvement in the RMBS settlement prior to the addition of the alter ego claims and the Holdco

Election.  Accordingly, good cause exists and the Court should modify the Scheduling Order to

prevent substantial prejudice to the Trustee and the Noteholders.[17]

**B.      Alternatively, the Scheduling Order Should be Modified Pursuant to
         Rule 60(b)(2), (3) and (6)**

46.       If the Court determines not to modify the Scheduling Order under Rule 16, the

Court should still modify it under Federal Rule of Civil Procedure 60(b).  Rule 60(b), made

applicable by Bankruptcy Rule 9024, governs requests for relief from an order of this Court.  Rule

60(b) provides, in relevant part:

> On a motion and just terms, the court may relieve a party or its
> legal representative from a final judgment, order, or proceeding for
> the following reasons: . . . (2) newly discovered evidence that, with
> reasonable diligence, could not have been discovered in time to
> move for a new trial under Rule 59(b); (3) fraud (whether
> previously called intrinsic or extrinsic), misrepresentation, or other
> misconduct of an opposing party; . . . or (6) any other reason that
> justifies relief.

---

[17]       Even if the Court declines to apply the Rule 16 standard, the Court still has the power to, and must, modify
the Scheduling Order. As the Tenth Circuit recognized in *In re Rafter Seven Ranches L.P.*, 414 B.R. 722, 739
(Bankr. 10th Cir. 2009), "[a] Bankruptcy Court's power to manage a case does not depend upon the Bankruptcy
Rules but rather it arises from the court's 'inherent authority to issue pretrial case management orders and to enforce
them by appropriate measures.' So, even without invoking Rule 7016, the Bankruptcy Court [has] inherent
authority to manage the pretrial procedures for the contested matter." (citing *In re Dorsie's Steak House, Inc.*, 130
B.R. 363, 365 (D. Mass. 1991); *see also* 11 U.S.C. § 105. Here, modification of the Scheduling Order is necessary
for all the reasons discussed above.

19

Fed. R. Civ. P. 60(b)(2), (3), (6).

47.    A motion for relief from an order is within the broad discretion of the court. *See In re AMC Realty Corp.*, 270 B.R. 132, 143 (Bankr. S.D.N.Y. 2001) (citing *Nemaizer v. Baker*, 793 F.2d 58, 61-62 (2d Cir. 1986)). Rule 60(b) is to be liberally construed when substantial justice will be served. *See In re Enron Corp.*, 352 B.R. 363, 369 (Bankr. S.D.N.Y. 2006) (citing *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963)). In addition, bankruptcy courts have the power to reconsider and modify their own orders when the interest of justice requires, as long as no intervening rights have become vested in reliance on such orders. *See, e.g., In re Lenox*, 902 F.2d 737, 739-40 (9th Cir. 1990); *In re Maxwell Newspapers, Inc.*, 170 B.R. 549, 550 (S.D.N.Y. 1994).

48.    The Scheduling Order should be modified under any of subsections (2), (3) or (6) of Rule 60(b) for all of the reasons already stated above. The Supplemental Motion is anything but a "clarification." It constitutes an entirely new settlement, which, among other things, includes unasserted alter ego claims, a perverse form of substantive consolidation, changes to the release provisions, and a radical new HoldCo Election that were not part of the original RMBS settlement agreements or the Original Motion. These changes constitute new information that was not disclosed to the Court (and there were multiple opportunities for Debtors to do so), to the Trustee or to the Noteholders at any time prior to entry of the Scheduling Order. This new settlement, implicating the interests of new and different parties, including the Trustee, requires a new scheduling order.[18]

---

[18]    Under Rule 60(b)(3), misrepresentations (whether intentional and unintentional) and failures to disclose key factual information provide a sufficient basis for relief from the Scheduling Order. *See DiPirro v. United States*, 189 F.R.D. 60, 65 (W.D.N.Y. 1999); *see also Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). It is now clear that while the Debtors were publicly stating that the Supplemental Motion would be no more than a "clarification," they were secretly negotiating the settlement of alter ego claims and the Holdco Election. As a result of these representations, the Scheduling Order was tailored to a proposed settlement that is no longer pending.

## CONCLUSION

49.     For the foregoing reasons, all deadlines in the Scheduling Order should be extended

by at least ninety (90) days.

Dated: New York, New York
        August 28, 2012

                                Respectfully submitted,

                                CLEARY GOTTLIEB STEEN & HAMILTON LLP


                                By:  /s/Sean A. O'Neal
                                Thomas J. Moloney (TJM-9775)
                                Sean A. O'Neal (SAO-4067)
                                A Member of the Firm
                                One Liberty Plaza
                                New York, NY 10006
                                *(212) 225-2000*

                                *Special Counsel for Wilmington Trust, National
                                Association, as Indenture Trustee for the Senior
                                Unsecured Notes Issued by Residential Capital, LLC*

# EXHIBIT B

Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 08-13555(JMP)

5    - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    LEHMAN BROTHERS HOLDINGS, INC., et al

9

10              Debtors.

11

12    - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              December 6, 2011

19              10:00 AM

20

21    B E F O R E:

22    HON. JAMES M. PECK

23    U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    MATTER:   Modified Third Amended Joint Chapter 11 Plan of Lehman

3    Brothers Holdings Inc. and its Affiliated Debtors

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

12-12020-mg   Doc 1337   Filed 09/04/12   Entered 09/04/12 15:41:52   Main Document
08-13555-jmp   Doc 23130   Filed 12/07/11 33 of 35ered 12/08/11 14:37:11   Main Document
                                              Pg 68 of 72

                                                                    Page 68

1    connection with plan.

2         With that, Your Honor, the debtors' case -- we rest.

3         THE COURT:  Is there anything that any other party has

4    to present?  Well, I did reserve two weeks on my calendar for

5    this.  And I'm not sure how I'm going to use the next two

6    weeks.

7         In anticipation of today's hearing and as I was

8    watching the electronic docket and noting that a number of

9    objections that I had been reviewing were falling by the

10   wayside, and that this was becoming a remarkably consensual

11   confirmation hearing and, with the withdrawal of the Dotson

12   objection moments ago, now a completely consensual confirmation

13   hearing, I jotted down some thoughts that I wanted to express.

14   And I'm going to read them into the record because I gave these

15   words enough thought that I might as well follow the script

16   that I made for myself.

17        My world changed when the Lehman cases were assigned

18   to me and so did yours.  For me, it has been a once in a

19   lifetime experience.  To have worked across the bench from so

20   many outstanding professionals in promoting conflict resolution

21   and helping to bring these truly extraordinary one-of-a-kind

22   cases to this culminating substantive moment, superlatives

23   abound.  And we have heard them all and probably used them all.

24   This is the biggest, the most incredibly complex, the most

25   impossibly challenging international bankruptcy that ever was.

12-12020-mg    Doc 1337    Filed 09/04/12    Entered 09/04/12 15:41:52    Main Document
08-13555-jmp    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 69 of 72

Page 69

1          But the greatest superlative of all is reserved for

2     today.  This largest ever unplanned bankruptcy that started in

3     chaos, accelerated the financial crisis and eroded confidence

4     in the global financial system also has yielded the most

5     overwhelming outpouring of creditor consensus in the history of

6     insolvency law.  What a difference three years can make.

7          Never before have divergent holders of 450 billion

8     dollars in claims recognized the benefits of pragmatic

9     compromise and come together as one in support of a single

10    Chapter 11 plan.  This is a monumental achievement in our

11    field, awe-inspiring, really, that, to me, represents the

12    highest and best use of Chapter 11 in the public interest.

13         For myself, I'm extremely proud to have presided over

14    this transparent, fair and the remarkably successful process

15    that stands out as perhaps the finest example of the

16    flexibility, power and utility of the United States bankruptcy

17    system.

18         Our system is not perfect.  But together we have shown

19    the world that it can work very well indeed.  Lehman may once

20    have been a too-big-to-fail systemically significant global

21    financial institution.  But it was not too big to resolve in

22    Chapter 11.  I congratulate each and every professional in

23    every single law firm and advisory firm here and in foreign

24    jurisdictions that contributed in ways recognized and

25    unrecognized, large and small, to this historic confirmation of

Page 70

1    Lehman's plan.  You should all feel great pride in what has

2    been accomplished.

3            And I wish each of you a happy and healthy holiday

4    season.  Those who have worked so hard deserve a break.  All

5    objections to confirmation that have not been withdrawn are

6    overruled.  The plan is confirmed and an appropriate order will

7    be entered.  And we're adjourned in time for lunch.

8        (Applause)

9        (Whereupon these proceedings were concluded at 12:17 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25