Hearing Date and Time:  September 11, 2012 at 10:00 a.m. (Prevailing Eastern Time)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore (JCS – 6031)
Ian J. Silverbrand (IS – 0986)

and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group
of Junior Secured Noteholders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF AD HOC GROUP OF JUNIOR SECURED
NOTEHOLDERS TO DEBTORS' MOTION FOR THE ENTRY OF AN ORDER
EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND
SOLICIT ACCEPTANCES THEREOF**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Ad Hoc Group of Junior Secured Noteholders (the "Ad Hoc Group"), by and

through its undersigned counsel, hereby files this limited objection (the "Limited Objection") to

the motion (the "Motion") of the debtors in the above-captioned cases (collectively, the

"Debtors") for entry of an order (i) extending the exclusive periods during which only the

Debtors may file a chapter 11 plan by nine (9) months, and (ii) extending the period during

which the Debtors have the exclusive right to solicit acceptances thereof by sixty (60) days following the expiration of such period.[1]  As and for its Limited Objection, the Ad Hoc Group respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  When the Debtors filed these Chapter 11 Cases, the Ad Hoc Group was hopeful that a quick exit from bankruptcy would be possible.  While the Group accepts that circumstances have arisen which will delay confirmation, the Ad Hoc Group cannot support the full extent of the relief sought in the Debtors' Motion.  Specifically, the Ad Hoc Group does not believe that the Debtors have shown that there exists "cause" to extend the Exclusive Periods for nine months.

2.  The Debtors claim that such a lengthy first extension is needed because they will not be permitted to solicit votes on their plan until the Examiner's investigation is completed and until after the Debtors and their advisors have had the opportunity to review and, if necessary, modify their plan.  However, given that the Examiner's report is anticipated to be filed four months after expiration of the Debtors' initial Exclusive Plan Period, a nine month extension is excessive and insufficiently tied to the basis for extension.

3.  The Ad Hoc Group instead proposes that the Court allow the Debtors to retain exclusivity during the pendency of the Examiner's investigation and for a short period thereafter during which (i) stakeholders could assess the Examiner's report and (ii) if supported by the report, the Debtors, the Ad Hoc Group and AFI could prosecute confirmation of their pre-arranged plan.  Accordingly, the Ad Hoc Group requests that the Court only extend the Debtors' Exclusive Periods by six months.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

**BACKGROUND**

4.   On May 14, 2012 (the "Petition Date"), the Debtors commenced these bankruptcy cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.   On May 16, 2012, an official committee of unsecured creditors was appointed [ECF No. 102]. On June 28, 2012, the Court ordered the United States Trustee to appoint an examiner [ECF No. 536]. On July 3, 2012, the Court approved the appointment of Judge Arthur J. Gonzalez as examiner (the "Examiner") [ECF No. 674]. No request for the appointment of a trustee has been made in the Chapter 11 Cases.

6.   The Ad Hoc Group is comprised of certain holders of 9.625% Junior Secured Guaranteed Notes due 2015 (the "Junior Secured Notes") issued under that certain Indenture dated as of June 6, 2008. On the eve of the commencement of the Chapter 11 Cases, certain holders of the Junior Secured Notes (such holders, "Consenting Noteholders"), including certain members of the Ad Hoc Group, entered into that certain Plan and Support Agreement dated May 13, 2012 with the Debtors and Ally Financial Inc. (the "PSA"). The PSA incorporates several milestones ("Milestones") tied to the Debtors' progress in advancing these Chapter 11 Cases. Some of the Milestones are that: the Debtors have filed a motion seeking the Court's approval of the PSA on or before June 15, 2012; the Debtors have filed with the Court a plan, disclosure statement, and disclosure statement motion in form, scope and substance satisfactory to AFI and the Ad Hoc Group on or before June 15, 2012; the Court shall have approved such disclosure statement within ninety days of the Petition Date; and a chapter 11 plan must have gone effective, or the Debtors must have completed the sale of their primary assets, on or before

December 31, 2012.  See PSA, Ex. B.  If any of the Milestones are not achieved, the Consenting Noteholders may terminate the PSA.  See PSA § 7.1(o).  While they have not yet exercised their termination rights notwithstanding ample grounds to do so, the Consenting Noteholders continue to monitor closely the progress of and developments in these cases.

7.    The Court has indicated that the Debtors shall not be permitted to solicit votes for a plan until the Examiner's investigation is completed.  See In re Residential Capital, LLC, Case No. 12-12020 (MG), 2012 WL 2328223, at *7 (Bankr. S.D.N.Y. June 20, 2012).  The Examiner has estimated that his investigation will be complete on or about January 27, 2013.  See Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner, [ECF No. 925] Ex. A ¶ 11.

8.    On August 23, 2012, the Debtors filed the Motion, seeking nine month extensions of the Exclusive Periods during which the Debtors may file and solicit acceptances to a chapter 11 plan.

## ARGUMENT

9.    Section 1121(d) of the Bankruptcy Code provides that, on request of a party in interest and after notice and a hearing, "the court may for cause reduce or increase the 120-day period" during which a chapter 11 debtor has the exclusive right to file and solicit a plan of reorganization.  11 U.S.C. § 1121(d).  "Cause" is not defined in the Bankruptcy Code, and the determination of whether it exists is in the bankruptcy court's discretion.  See In re Adelphia Commc'ns Corp., 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006).

10.   Although the analysis of "cause" is discretionary in nature, extensions of exclusivity "are not to be granted routinely or cavalierly."  In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).  The movant bears the burden of proving "cause" to extend or reduce exclusivity, see In re Borders Group, Inc., 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011),

and the burden is not met by "the mere recitation of allegations."  See In re Ravenna Indus., Inc., 20 B.R. 886, 889 (Bankr. N.D. Ohio 1982).  Instead, the burden can only be carried if the moving party adduces affirmative evidence to support a fact-specific finding of cause.  See In re Borders Group, Inc., 460 B.R. at 821; In re Parker St. Florist & Garden Ctr., Inc., 31 B.R. 206, 207 (Bankr. D. Mass. 1983); cf. In re Adelphia Commc'ns Corp., 352 B.R. at 587.  Where there is an objection to a proposed extension or reduction of the exclusive periods, a bankruptcy court should not modify exclusivity absent a "clear showing" of cause.  See In re Curry Corp., 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992).

### A. The Debtors Have Not Shown "Cause" to Extend Exclusivity By Nine Months

11.     The Debtors have not carried their burden of proof to justify the extent of the relief they request.  The requested nine month extensions of exclusivity appears to be loosely related to the anticipated January 27, 2013 filing of the Examiner's report.  For example, the Debtors explained that

> [b]ecause the Court has made it clear that the Debtors will not be permitted to solicit votes on any plan until the investigation is complete, the Debtors are requesting a nine month extension of their exclusive period to file a Chapter 11 plan and solicit acceptances of such plan, without prejudice to seek further extensions thereof.  Given the substantial progress the Debtors have made in the early stages of these cases and the impact of the Examiner's investigation on the Debtors' ability to prosecute a plan, the proposed extension is reasonable.

Motion ¶ 6.  See also Motion ¶ 20 ("Specifically, the Examiner's preliminary statement, approved by Examiner Investigation Order, anticipates that the Examiner's Report will take 6 months to prepare. The Debtors and their advisors will need sufficient time to review the Examiner's Report and incorporate such findings into any proposed Chapter 11 plan.") (internal citations omitted).

12. The Debtors have not provided any meaningful explanation for why the Exclusive Plan Period and Exclusive Solicitation Period would need to extend more than four months and six moths, respectively, beyond the anticipated filing of the Examiner's report. Understandably, the Debtors will need some time to digest the report, but there is no reason to believe that more than four months beyond the release of the Examiner's report would be needed or appropriate for the Debtors to file a plan.

13. In recent complex chapter 11 cases where examiners have been appointed, bankruptcy courts have ordered extensions of exclusivity only for periods that extended shortly beyond the release of examiners' reports. For example, in In re Extended Stay, Inc., an examiner's report was filed on April 8, 2010, and on April 9, 2010, the bankruptcy court entered an order extending the exclusive plan period through May 31, 2010. Case No. 09-13764 (JMP) (Bankr. S.D.N.Y.) [ECF Nos. 913, 916]. Likewise, in In re Tribune Company, the bankruptcy court entered an order extending solicitation exclusivity through August 8, 2010, and the examiner's report was filed on July 26, 2010.[2] Case No. 08-13141 (KJC) (Bankr. D. Del.) [ECF Nos. 4466, 5130]. Here too, the Debtors' stakeholders and the Court should be able to reevaluate the Debtors' right to exclusivity if the Examiner's report casts significant doubt upon the pre-arranged plan. A nine month extension of the Exclusive Periods gives the Debtors simply too much control for too long a period of time.

### B. An Initial Nine Month Extension of Exclusivity Appears to Be Unprecedented

14. In addition to being insufficiently linked to the supposed basis for the requested extensions, the proposed extensions of exclusivity also appear to be unsupported by precedent, as they are well beyond the lengths of extensions typically sought by debtors. The Debtors have

---

[2] August 8, 2010 was the last day that the debtors in the Tribune case could statutorily maintain solicitation exclusivity.

not cited to a case in which nine month extensions of exclusivity have been granted, and the Ad Hoc Group is not aware of any recent chapter 11 case in this District where exclusivity was initially extended nine months.[3]  By contrast, there is ample precedent to support the Ad Hoc Group's suggested initial six month extension.[4]  Though the Debtors believe these Chapter 11 Cases to be unprecedented (Motion ¶ 2), there is no reason for this Court to establish new precedent on this very important issue.

**RESERVATION OF RIGHTS**

15.  The Ad Hoc Group is cognizant of the realities of these Chapter 11 Cases as they relate to realistic expectations of timing and are prepared to support a more limited extension of exclusivity pending release of the Examiner's report.  It is important to note, however, that the relief requested, even if limited, is fundamentally at odds with legitimate negotiated for

---

[3] See, e.g., In re Grubbs & Ellis Co., Case No. 12-10685 (MG) (Bankr. S.D.N.Y. May 13, 2012) [ECF No. 1172] (initial extension of 98 days); In re Eastman Kodak Co., Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. May 2, 2012) [ECF No. 1076] (initial extension of 180 days); In re Borders Group, Inc., Case No. 11-10614 (MG) (Bankr. S.D.N.Y. June 2, 2011) [ECF No. 966] (initial extension of 120 days); In re Mesa Air Group, Inc., Case No. 10-10018 (MG) (Bankr. S.D.N.Y. Apr. 15, 2010) [ECF No. 646] (initial extension of 120 days); In re Motors Liquidation Co., Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Jan. 20, 2010) [ECF. 4847] (initial extension of 120 days); In re Gen. Growth Props., Inc., Case No. 09-11977 (Bankr. S.D.N.Y. July 28, 2009) (ALG) [ECF No. 1111] (initial extension of 196 days); In re Lehman Bros. Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 15, 2009) [ECF No. 2549] (initial extension of 181 days); In re Frontier Airlines Holdings, Inc., Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. Aug. 5, 2008) [ECF No. 434] (initial extension of 180 days); In re Lexington Precision Corp., Case No. 08-11153 (MG) (Bankr. S.D.N.Y. July 31, 2008) [ECF No. 289] (initial extension of 90 days); In re Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. June 28, 2006) [ECF No. 1584] (initial extension of 184 days); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Apr. 11, 2006) [ECF No. 1216] (initial extension of 255 days); In re Northwest Airlines Corp., Case No 05-17930 (ALG) (Bankr. S.D.N.Y. Jan. 10, 2006) [ECF 1743] (initial extension of 182 days); In re Delphi Corp., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Jan. 6, 2006) [ECF No. 1749] (initial extension of 180 days); In re Adelphia Comm'cns Corp., Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Oct. 25, 2002) [ECF No. 949] (initial extension of 180 days); In re Global Crossing Ltd., Case No. 02-40188 (REG) (Bankr. S.D.N.Y. June 3, 2002) [ECF No. 1244] (initial extension of 110 days); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Apr. 24, 2002) [ECF No. 3302] (initial extension of 180 days).

[4] See supra note 3. See also In re NewPage Corp., Case No. 11-12804 (KG) (Bankr. D. Del. Jan. 11, 2012) [ECF No. 879] (initial extension of 120 days); In re Heartland Automotive Holdings, Inc., Case No. 08-40047 (DML) (Bankr. N.D. Tex. May 6, 2008) [ECF No. 417] (initial extension of 120 days); In re HomeBanc Mortgage Corp., Case No. 07-11079 (KJC) (Bankr. D. Del. Nov. 26, 2007) [ECF No. 556] (initial extension of 122 days); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. July 31, 2007) [ECF No. 2106] (initial extension of 120 days); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. May 15, 2006) [ECF No. 723] (initial extension of 120 days); In re UAL Corp., Case No. 02-B-48191 (ERW) (Bankr. N.D. Ill. Mar. 24, 2003) [ECF No. 1853] (initial extension of 180 days); In re Kaiser Aluminum Corp., Case No. 02-10429 (Bankr. D. Del. July 12, 2002) [ECF No. 776] (initial extension of approximately six months).

expectations of the Consenting Noteholders under the PSA. Accordingly, notwithstanding support for the granting of more limited relief, such support is without prejudice to all of the rights of the Ad Hoc Group and its members to assert claims against the Debtors and to contest allegations made in the Motion. There has not been, and this Limited Objection is not, a waiver of any rights of the Ad Hoc Group or any of its members in connection with the PSA, including, without limitation, the right to terminate the PSA due to the failure by the Debtors to comply with the deadlines and conditions set forth therein. The Ad Hoc Group and its members fully reserve all of their rights with respect to, and to assert any and all claims it may have in connection with, the foregoing.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Ad Hoc Group requests that the Court grant the Motion but only to the extent set forth herein.

Dated: September 4, 2012
New York, New York

Respectfully submitted,

By: /s/ J. Christopher Shore
J. Christopher Shore

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JS – 6031)
Ian J. Silverbrand (IS – 0986)

and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group of Junior Secured Noteholders