**Hearing Date and Time: September 11, 2012 at 10:00 a.m. (ET)**
**Objection Deadline: September 5, 2012 at 2:00 p.m. (ET)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Jeffrey S. Trachtman
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                            :    Chapter 11
                                                  :
Residential Capital, LLC, et al.,                 :    Case No. 12-12020 (MG)
                                                  :
         Debtors.                                 :    Jointly Administered
                                                  :
------------------------------------------------------------ x

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR THE
ENTRY OF AN ORDER EXTENDING THEIR EXCLUSIVE PERIODS
TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

LIMITED OBJECTION .............................................................................................................4

I.    The Motion Inappropriately Attaches a Draft Plan That Reflects No
Negotiations with the Committee ......................................................................................4

II.    A Nine Month Extension of Exclusivity is Excessive and Unprecedented .........................5

CONCLUSION..............................................................................................................................9

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby files this limited objection (the "**Objection**") to the Debtors' motion for the entry of an order extending their exclusive periods to file a chapter 11 plan and solicit acceptances thereof (the "**Motion**") [Docket No. 1248], and respectfully submits as follows:[1]

## PRELIMINARY STATEMENT

1. The Committee objects to the Motion for the simple reason that the requested relief – a nine month extension of the Debtors' exclusive periods – is not justified by the facts of these cases, and is likely to inhibit, rather than promote, formulation of a confirmable chapter 11 plan. To date, the Debtors have failed to engage in any substantive discussions with the Committee over the terms of a chapter 11 plan. Notwithstanding the foregoing, the Committee supports a limited extension of exclusivity, but urges the Court to tailor the relief granted to encourage tangible progress towards a confirmable plan. The Debtors should not be permitted to use exclusivity – as they have thus far – to avoid meaningful plan negotiations with the Committee.

2. The Debtors entered bankruptcy with their hands tied, having pre-negotiated the terms of a chapter 11 plan with their parent entity, Ally Financial, Inc. ("**AFI**"), certain holders of junior secured notes, and certain RMBS certificate holders. The Debtors locked themselves into plan support agreements contemplating a plan (the "**Plan**") premised on AFI's agreement to pay $750 million in exchange for both a release of estate claims and a non-consensual release of claims held by third parties against AFI. The Examiner is now scrutinizing

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

- 1 -

the estate's claims against AFI and these releases, but regardless of his findings, the Debtors will remain bound to support only the pre-negotiated Plan unless AFI agrees to different terms.

3.  The Debtors now seek to extend the exclusive period for filing a plan by *nine months* (i.e., through June 11, 2013), regardless of the contents of the Examiner's report, which is expected to be issued by January 2013. This would give the Debtors (and AFI) inappropriate leverage in the negotiations that will follow issuance of the report, potentially allowing them to block the Committee and other parties for months from proposing alternative plans, including plans that may not contemplate a global release for AFI.

4.  The Debtors' track record suggests that they will wield that leverage for AFI's benefit, delaying the direct, candid negotiations with the Committee that will be necessary to reach a confirmable plan. After more than three months in bankruptcy, the Debtors have failed to engage the Committee in *any* meaningful plan negotiations and indeed have failed even to consult the Committee before taking such important actions as agreeing to pay millions of dollars in indemnification to Ally Bank, renegotiating the amount of the Debtors' prepetition indemnification obligations, and agreeing to create massive new claims against Debtor Residential Capital, LLC as part of the revised RMBS settlement. These events have underscored the Debtors' conflicts not only as to AFI, but also with respect to interdebtor allocation of liability for claims of different creditor groups. By focusing their early efforts on locking in the RMBS settlement – and, with it, support for the AFI Settlement from a significant creditor bloc – the Debtors have revealed an intention to impose their prepetition deal with AFI on creditors generally. Emblematic of the Debtors' conflicted posture is their decision to append to the Motion a draft of the Plan that merely carries forward the prepetition deal with AFI and reflects *zero* negotiation with the Committee.

5. The Court can and should admonish the Debtors to proceed *now* with global negotiations that include the Committee and begin moving the parties towards a viable plan. At the same time, the Committee agrees that the Examiner's investigation and report will help inform the plan process by educating the parties as to potential causes of action and the scope of AFI's potential liability. Completion of the asset sale process over the next several months will provide additional important inputs. The Committee therefore recognizes that the Court may view it as premature to permit the formal promulgation of competing plans before these processes are completed.

6. However, an extension of exclusivity until no later than March 1, 2013 is more than ample to permit the asset sales and investigation to proceed and for the parties to assess the information and conclusions expected to be provided in the Examiner's report. At that time, the Court can assess whether the Debtors are acting with greater candor, accountability, and independence than they have thus far and whether the prospect for a globally supported plan would be enhanced or frustrated by a further extension of exclusivity. The Committee remains skeptical of the Debtors' ability to navigate their multifarious conflicts and reach an appropriate result without the discipline provided by appropriate deadlines and the prospect of constructive alternatives to AFI's pre-packaged deal.

7. Accordingly, the Committee submits that the Exclusive Periods should both be extended to the same date: the earlier of (i) 30 days following issuance of the Examiner's report or (ii) March 1, 2013, without prejudice to the Debtors' ability to seek further extensions of the Exclusive Periods or the rights of parties in interest to seek to shorten such periods or to object to further extensions. The Committee also requests assurances that the Debtors will not file the Plan or a revised plan during this extended period of exclusivity that does not reflect

extensive negotiations with the Committee and a good faith effort to include terms that could reasonably be expected to garner the support of all major creditor constituencies. This approach will afford the Court and the parties the best opportunity to digest the Examiner's report and make informed decisions on any future extensions of exclusivity, without locking in months of unwarranted and potentially counterproductive leverage for the Debtors and their controlling parent.

**LIMITED OBJECTION**

**I.    The Motion Inappropriately Attaches a Draft Plan
That Reflects No Negotiations with the Committee**

8.     Wholly apart from the appropriateness of a measured extension of exclusivity, the Motion creates a false impression of progress in the cases by attaching a draft Plan that simply embodies the prepetition deal with AFI and reflects literally *no* plan negotiations with the Committee. Attaching this Plan renders even more misleading the Debtors' suggestion that they "have continued to work diligently and in good faith with . . . the Creditors' Committee" to achieve progress towards "rehabilitation and the development of a consensual plan." Motion ¶ 32. In fact, the Debtors have not engaged in *any* Plan negotiations with the Committee, the Plan annexed to the Motion reflects *no* input from or negotiations with the Committee, and the Committee would strongly oppose the Plan as currently formulated.[2]

9.     Prior to filing the Motion, the Debtors made no attempts to discuss the terms of the Plan with the Committee and declined even to share a draft of such Plan with the Committee – ignoring the Committee's advice that the filing of a plan that did not reflect any negotiations with the Committee would be inappropriate and unhelpful to the plan process.

---

[2] The Committee also notes the impropriety of filing a chapter 11 plan without an accompanying disclosure statement. *See* Fed. R. Bankr. P. 3016(b) ("In a chapter 9 or 11 case, a disclosure statement under § 1125 or evidence showing compliance with § 1126(b) *shall be filed with the plan* or within a time fixed by the court, unless the plan is intended to provide adequate information under § 1125(f)(1).") (emphasis added).

- 4 -

While the Debtors rebuffed the Committee's requests, they apparently continued plan negotiations with AFI and other parties to the plan support agreements, on terms consistent with the AFI Settlement. Despite the failure to seek any input on the terms of the Plan from the Committee or other unsecured creditor constituencies beyond the RMBS Investors, the Debtors state in the Motion that they continue to believe that the "settlement" unilaterally imposed by the Plan "is in the best interest of the Debtors' estates." Motion ¶ 6. These events do not bode well for the Debtors' independence in negotiating a plan that can garner support from all constituencies and truly will serve the interests of their estates as a whole.

## II.     A Nine Month Extension of Exclusivity is Excessive and Unprecedented

10. The Committee does not oppose an appropriate extension of exclusivity to permit the Examiner to complete his investigation; to allow the Debtors to proceed with the asset sale process; and to let the parties explore issues surrounding the RMBS Settlements, the amount of other claims, and other issues raised by parties in interest in these Chapter 11 cases. The Committee acknowledges that the Debtors and all parties in interest have made progress in the cases regarding the sale process, financing, and operation of the Debtors' businesses. However, *no* progress has been made with respect to the Plan or establishing AFI's responsibility for the unsecured debt of these estates; based on all the facts and circumstances of the cases to date, the request for a nine month extension of exclusivity is wholly unjustified.

11. Section 1121(d) of the Bankruptcy Code provides that a court may extend a debtor's initial exclusive periods for filing a chapter 11 plan and soliciting acceptances of such plan upon a showing of "cause." 11 U.S.C. § 1121(d). Courts evaluate a number of factors in determining whether such "cause" exists, including the size and complexity of the chapter 11 case, the necessity of sufficient or additional time to negotiate a plan, the existence of a good faith process towards reorganization, whether the debtor has demonstrated reasonable prospects

for filing a viable plan, progress negotiating with creditors, whether the debtor is seeking an extension of exclusivity to pressure creditors to submit to its demands, and unresolved contingencies in the case. *See In re Borders Grp.*, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) (Glenn, J.) (citing *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586-87 (Bankr. S.D.N.Y. 2006)).

12. It is the debtor's burden to establish "cause" to extend exclusivity, and this burden "gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts." *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997). Whether cause has been established is a fact-specific inquiry left to the sound discretion of the bankruptcy court. *In re Borders Grp.*, 460 B.R. at 821-22. A request to extend exclusivity is "a serious matter" and "[s]uch a motion should 'be granted neither routinely nor cavalierly.'" *In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990) (citing *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987)). Even in large, complex cases, specific reasons must be shown to justify granting a particular extension. *See In re Public Serv. Co. of N.H.*, 88 B.R. 521, 537 (Bankr. D.N.H. 1988) ("If size and complexity alone were sufficient cause, that interpretation of the statutory standard would in effect eat up the rule.").

13. Here, there are reasons to be skeptical of the Debtors' request for a lengthy extension. As noted, the Debtors have made *no* attempt to negotiate a plan with the principal representative of unsecured creditors – the Committee – but rather appear to be trying to use the leverage of exclusivity to preserve a pre-negotiated deal providing its parent with a global release on what appear to be favorable terms for AFI. These factors cut against the extension of exclusivity. *See In re Borders Grp.*, 460 B.R. at 822; *In re Adelphia Commc'ns Corp.*, 352 B.R. at 587.

14. Moreover, an initial extension as long as nine months appears to be highly unusual if not unprecedented. A review of numerous recent "mega cases" in the Southern District of New York reflects an average initial extension of exclusivity requested and/or granted of approximately 120 days.[3] The Motion cites no case granting an initial extension as long as nine months, which thus appears to be wholly unprecedented.

15. The Debtors seek to justify such a long extension based mainly on the Court's prior statement that the Debtors may not solicit votes on a chapter 11 plan until the conclusion of the Examiner's investigation. *See* Motion ¶¶ 30-31. The Committee agrees that the facts uncovered by the Examiner's investigation likely will inform any chapter 11 plan. However, a nine month extension – preserving exclusivity for several months *after* the Examiner issues his report – goes well beyond what this Court's guidance requires and seems motivated more to provide leverage for the Debtors and AFI to preserve their pre-bankruptcy release bargain for as long as possible, regardless of what the investigation may uncover. Assuming the Examiner concludes his work, as expected, by January 2013, a limited extension of the Exclusive

---

[3] *See, e.g.*, *In re Dewey & LeBoeuf LLP*, No. 12-12321 (MG) (Bankr. S.D.N.Y. Aug. 29, 2012) (requesting initial extension of exclusivity of approximately 120 days); *In re LightSquared Inc.*, No. 12-12080 (SCC) (Bankr. S.D.N.Y. Aug. 29, 2012) (initial request of 150 days); *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB) (Bankr. S.D.N.Y. Aug. 16, 2012) (initial request of 120 days); *In re Velo Holdings, Inc.*, No. 12-11384 (MG) (Bankr. S.D.N.Y. July 25, 2012) (initial extension of 120 days); *In re Pinnacle Airlines Corp.*, No. 12-11343 (REG) (Bankr. S.D.N.Y. July 17, 2012) (initial extension of 180 days); *In re Arcapita Bank B.S.C.(c)*, No. 12-11076 (SHL) (Bankr. S.D.N.Y. July 11, 2012) (initial extension of approximately 90 days); *In re Eastman Kodak Co.*, No. 12-10202 (ALG) (Bankr. S.D.N.Y. May 1, 2012) (initial extension of approximately 180 days); *In re Hostess Brands, Inc.*, No. 12-22052 (RDD) (Bankr. S.D.N.Y. Apr. 30, 2012) (initial request of 90 days); *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 23, 2012) (initial extension of approximately 180 days); *In re General Maritime Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. Mar. 15, 2012) (initial extension of 60 days); *In re Dynegy Holdings, LLC*, No. 11-38111 (CGM) (Bankr. S.D.N.Y. June 12, 2012) (initial extension of 120 days); *In re TerreStar Corp.*, No. 11-10612 (SHL) (Bankr. S.D.N.Y. May 2, 2011) (initial extension of 75 days); *In re Borders Grp., Inc.*, No. 11-10614 (MG) (Bankr. S.D.N.Y. June 2, 2011) (initial extension of 120 days); *In re MSR Resort Golf Course LLC*, No. 11-10372 (SHL) (Bankr. S.D.N.Y. May 26, 2011) (initial extension of 120 days); *In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Mar. 10, 2011) (initial request of eight months/240 days, initial extension granted of approximately four months/120 days); *In re TerreStar Networks, Inc.*, No. 10-15446 (SHL) (Bankr. S.D.N.Y. Feb. 16, 2011) (initial extension of approximately 90 days); *In re BB Liquidating Inc.*, No. 10-14997 (BRL) (Bankr. S.D.N.Y. Jan. 19, 2011) (initial extension of approximately 60 days).

Periods until shortly after issuance of the Examiner's report is more reasonable and appropriate, and the Court can then determine whether cause exists for any further extension of exclusivity.

16. The Debtors have not earned pre-approval of a longer extension. As discussed above, they have repeatedly taken significant actions in these cases, without consulting the Committee, that reflect their conflicted position with respect to AFI and a failure to appropriately protect the interests of the Debtors' creditors. As noted, the Debtors' contention that they have made "good faith progress toward reorganization and in negotiations with creditors" (Motion ¶ 32) is disingenuous. Prior to the Petition Date, the Debtors obtained support from certain creditor groups and AFI for the Plan, which is based on the AFI Settlement. As indicated above, *no progress* has been made with the Committee – indeed, the Debtors have effectively *excluded* the Committee from the plan process already underway with other parties in interest. Extending exclusivity months beyond the issuance of the Examiner's report will only further encourage that tactic, postponing the negotiations with the Committee on contentious issues – such as providing AFI with a non-consensual third-party release – that must precede a global resolution of these cases. While the Debtors invoke the customary "floodgates" spectre (Motion ¶ 38), it may be only the prospect of independent, competing plans that spurs such serious negotiations and motivates all parties to strike a global resolution (as has occurred in many major bankruptcies, including the Lehman Brothers chapter 11 cases).[4]

17. In short, the Committee submits that a nine month extension of the Exclusive Periods through June 11, 2013 and August 10, 2013, respectively, is not only unnecessary, excessive, and apparently unprecedented – it also would likely be counterproductive. Accordingly, the exclusive period to propose a plan should be limited as set

---

[4] *See* Objection of Wilmington Trust, National Association to the Debtors' Motion for the Entry of an Order Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 1336], ¶ 28 & n.8).

forth herein, without prejudice to the rights of the Debtors to seek further extensions of such periods, and for parties in interest to object thereto.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court (a) deny the requested nine month extension of the Exclusive Periods; (b) grant a coterminous extension of the Exclusive Periods to the earlier of (i) 30 days following the issuance of the Examiner's report or (ii) March 1, 2013, with assurances from the Debtors that no plan will be filed during the extended exclusivity period that does not reflect extensive negotiations with the Committee; and (c) grant such other relief as may be just and proper.

Dated: New York, New York
        September 5, 2012

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Douglas H. Mannal
Jeffrey S. Trachtman
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Counsel for the Official Committee
of Unsecured Creditors*