Hearing Date: September 27, 2012 at 10:00 a.m. (ET)
Objection Deadline: September 17, 2012 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------ ) | | |
| In re: ) | Case No. 12-12020 (MG) | |
| ) | | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, ) | Chapter 11 | |
| ) | | |
| Debtors. ) | Jointly Administered | |
| ------------------------------------------ ) | | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER BANKRUPTCY CODE
SECTION 363 AND BANKRUPTCY RULE 6004 (I) AUTHORIZING THE DEBTORS
TO COMPENSATE PRICEWATERHOUSECOOPERS, LLP FOR FORECLOSURE
REVIEW SERVICES IN FURTHERANCE OF THE DEBTORS' COMPLIANCE
OBLIGATIONS UNDER FEDERAL RESERVE BOARD CONSENT ORDER AND (II)
<u>REAFFIRMING RELIEF GRANTED IN THE GA SERVICING ORDER</u>**

# TABLE OF CONTENTS

**Page**

JURISDICTION AND VENUE ........................................................................................... 2

BACKGROUND ............................................................................................................... 2

THE GA SERVICING MOTION AND ORDER ....................................................... 6

RELIEF REQUESTED ..................................................................................................... 7

PWC'S RETENTION ........................................................................................................ 8

THE NEED FOR PWC'S SERVICES ........................................................................ 9

PWC'S SERVICES ........................................................................................................... 10

PWC'S COMPENSATION ............................................................................................. 12

INDEMNIFICATION ...................................................................................................... 14

PWC'S DISINTERESTEDNESS ................................................................................. 14

BASIS FOR RELIEF ........................................................................................................ 18

      A.     The Debtors Should be Authorized to Compensate PwC for its FRB
              Foreclosure Review Services and Otherwise Comply with their
              Obligations Under the FRB Engagement Letter Pursuant to Bankruptcy
              Code Section 363 ............................................................................................ 18

NOTICE ............................................................................................................................... 21

PRIOR REQUEST ............................................................................................................ 22

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

In re 1031 Tax Group,
    No. 07-11448 (MG) (Bankr. S.D.N.Y. July 17, 2007) ...............................................18 n.10, 20

In re 1031 Tax Group,
    No. 07-11448 (MG) (Bankr. S.D.N.Y. July 3, 2007) .............................................................20

In re Aerovox, Inc.,
    269 B.R. 74 (Bankr. D. Del. 2001) ......................................................................................18

In re Ambac Fin. Group, Inc.,
    No. 10-15973 (SCC) (Bankr. S.D.N.Y. Jan. 19, 2011) ........................................................21

In re AMR Corp.,
    No. 11-15463 (SHL) (Bankr. S.D.N.Y. March 2, 2012) .................................................. 20-21

In re Borders Group, Inc.,
    453 B.R. 477 (Bankr. S.D.N.Y. 2011) .................................................................................18

In re Enron Corp.,
    335 B.R. 22 (Bankr. S.D.N.Y. 2005) ...................................................................................19

In re Hines Horticulture, Inc.,
    No. 08-11922 (KJC) (Bankr. D. Del. Oct. 1, 2008).......................................................... 19-20

In re Innkeepers USA Trust,
    No. 10-13800 (SCC) (Bankr. S.D.N.Y. Nov. 10, 2010).......................................................19

In re MF Global Holdings Ltd.,
    No. 11-15059 (MG) (Bankr. S.D.N.Y. Feb. 9, 2012)...........................................................21

In re T H Agric. & Nutrition, L.L.C.,
    No. 08-14692 (REG) (Bankr. S.D.N.Y. Dec, 18, 2008).......................................................21

Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated
    Res., Inc.),
    147 B.R. 650 (S.D.N.Y. 1992)............................................................................................18

Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp.
    (In re Chateaugay Corp.),
    973 F.2d 141 (2d Cir. 1992)...............................................................................................18

ii

STATUTES

11 U.S.C.
    § 101(14) ................................................................................................................15
    § 327 .............................................................................. 14, 15, 17, 19, 20
    § 330 ........................................................................2, 4, 8 n.3, 20
    § 331 ..............................................................................................4, 20
    § 362 ...................................................................................10 n.5
    § 363 .................................................................................. *passim*
    § 503(b) .........................................................................5, 7 n.2
    § 1107(a) ..............................................................................................2
    § 1108 ....................................................................................................2

12 U.S.C.
    § 1818(i)(2) ...............................................................................10

28 U.S.C.
    § 157 .......................................................................................................2
    § 1334 ....................................................................................................2
    § 1408 ....................................................................................................2
    § 1409 ....................................................................................................2

Fed. R. Bankr. P.
    1015(b) ...................................................................................................2
    2002 ......................................................................................................22
    6004 ..........................................................................................1, 2, 5, 7
    7062 ........................................................................................................5
    9014 ........................................................................................................5

EXHIBIT 1 – Proposed Order

EXHIBIT 2 – Affidavit of Michael G. English (the "**English Affidavit**")

EXHIBIT 3 – Declaration of Sewit Bocresion (the "**Bocresion Declaration**")

EXHIBIT 4 – Declaration of Joseph A. Pensabene (the "**Pensabene Declaration**")

EXHIBIT 5 –Federal Reserve Board Consent Order, dated April 13, 2011 (the "**FRB Consent Order**")

EXHIBIT 6 – FRB Engagement Agreement, dated February 1, 2012 (without attachments)

EXHIBIT 7 – Conflicts List

EXHIBIT 8 – PwC Financial Statement Reissuance Engagement Letter

Residential Capital, LLC ("**ResCap**") and its affiliated debtors and debtors in possession

in the above-captioned cases (collectively, the "**Debtors**" and each, a "**Debtor**") submit this

motion (the "**Motion**") for entry of an order, substantially in the form annexed hereto as

Exhibit 1 (the "**Proposed Order**"), pursuant to section 363 of title 11 of the United States Code

(the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedures (the

"**Bankruptcy Rules**"), authorizing the Debtors to compensate PricewaterhouseCoopers LLP

("**PwC**") for services rendered in connection with the FRB Foreclosure Review (as defined

below), in furtherance of the requirements of a FRB Consent Order (as defined below) with the

Board of Governors of the Federal Reserve System ("**FRB**") and Federal Deposit Insurance

Corporation ("**FDIC**"), as contemplated by the Court's order [Docket No. 401] (the "**GA

Servicing Order**") granting the *Debtors' Motion for Interim and Final Orders Under Sections

105(a), 361, 362, 363, 1107(a), and 1108 of the Bankruptcy Code (i) Authorizing the Debtors to

Continue in the Ordinary Course of Business (a) Servicing Governmental Association Loans and

(b) Foreclosure Activities Related to Certain Real Estate Owned by Fannie Mae, Freddie Mac,

and Ginnie Mae; (ii) Authorizing the Debtors to Pay Certain Prepetition Amounts Due to

Critical Servicing Vendors and Foreclosure Professionals; (iii) Granting Limited Stay Relief to

Enable Borrowers to Assert Related Counter-Claims in Foreclosure and Eviction Proceedings;

(iv) Authorizing the Debtors to use Cash Collateral Under the Fannie Mae EAF Facility; and

(v) Granting Related Relief* [Docket No. 57] (the "**GA Servicing Motion**").  In support thereof,

the Debtors respectfully reply upon (i) the affidavit of Michael G. English (the "**English

Affidavit**"), attached hereto as Exhibit 2; (ii) the Declaration of Sewit Bocresion (the "**Bocresion

Declaration**"), attached hereto as Exhibit 3; (iii) the Declaration of Joseph A. Pensabene (the

1

"**Pensabene Declaration**"), attached hereto as <u>Exhibit 4</u>; and (iv) the Whitlinger Affidavit (as defined below), and respectfully represent as follows:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code section 363 and Bankruptcy Rule 6004.

## BACKGROUND

2.        On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  On June 20, 2012, the Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket No. 674].

3.        On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

4.        The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc. ("**AFI**"), which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the *Affidavit of James Whitlinger, Chief Financial Officer*

2

*of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* (the "**Whitlinger Affidavit**") [Docket No. 6].

5.       Prior to the Petition Date, several of the Debtors and their affiliates were the subjects of an investigation by the FRB, the FDIC, the Office of the Comptroller of the Currency (the "**OCC**"), and the Office of Thrift Supervision (together with the FRB, the FDIC and the OCC, the "**Consent Order Regulators**"), a few of the many entities regulating companies in the banking and financial services industries.  The Consent Order Regulators were investigating alleged abuses in the foreclosure processes employed by companies with major mortgage servicing operations, including the Debtors.  In order to avoid further disruption to the Debtors' businesses as a result of the investigation, and to avoid the potential for lengthy litigation, Debtors ResCap and GMAC Mortgage, LLC ("**GMAC Mortgage**," and together with ResCap, the "**Consent Order Debtors**"), along with non-debtor affiliates AFI and Ally Bank, entered into a consent order with the FRB and the FDIC (the "**FRB Consent Order**"), dated April 13, 2011 and attached hereto as Exhibit 5.

6.       Without admitting fault, the Consent Order Debtors, AFI, and Ally Bank agreed, pursuant to the FRB Consent Order, to develop and implement certain risk management and corporate governance procedures under the guidance of the FRB in order to ensure prospective compliance with applicable foreclosure-related regulations and laws.  See, generally, FRB Consent Order.  Additionally, pursuant to the FRB Consent Order, GMAC Mortgage agreed to pay for an extensive, independent file review regarding certain residential foreclosure actions and foreclosure sales prosecuted by the Debtors (the "**FRB Foreclosure Review**").  See FRB Consent Order ¶¶ 3-4.

ny-1046955

7.    Pursuant to the FRB Foreclosure Review requirement, GMAC Mortgage must

"retain one or more independent consultant(s) acceptable to the [Federal] Reserve Bank [of

Chicago] to conduct an independent review" [1] of residential mortgage foreclosure actions

prosecuted during the period from January 1, 2009 to December 31, 2010 (the "**Consent Order**

**Review Period**"), as well as foreclosure sales pending or completed during the Consent Order

Review Period.  FRB Consent Order ¶ 3(a).  The independent consultant is required to review,

among other things, whether: (i) the Debtors had properly documented ownership of the

promissory note and mortgage (or deed of trust) at the time they initiated a foreclosure, (ii) the

foreclosure complied with state and federal law, including the Servicemembers Civil Relief Act

("**SCRA**"), (iii) the procedures followed with respect to non-judicial foreclosures were in

accordance with the terms of the mortgage  loan and state law; (iv) the foreclosure occurred

when the borrower had a loan modification request under consideration or while the loan was

performing under a trial or permanent loan modification, (v) impermissible charges were applied

to the borrower's account, and (vi) any errors or omissions were identified by the independent

consultant that resulted in financial injury to the borrower or owner of a loan.  See FRB Consent

Order ¶ 3(a)(i)-(vii).

8.    Pursuant to the FRB Foreclosure Review requirement in the FRB Consent Order,

PwC, as independent consultant, has been tasked with (i) working with the Consent Order

Regulators to plan and develop procedures for conducting the FRB Foreclosure Review;

(ii) identifying loan populations for review based on the procedures developed with the Consent

Order Regulators; (iii) monitoring a borrower outreach complaint process; (iv) reviewing a

sample of over 5,000 loan files, as well as over 12,000 borrower outreach complaints, for

---

[1] The Federal Reserve Bank of Chicago led the investigation on behalf of the FRB.

missing documentation or other issues; and (v) developing a recommended remediation in the event that PwC identifies errors.  English Affidavit ¶¶ 5, 7.

9.      Upon completion of the FRB Foreclosure Review, the FRB Consent Order requires that the independent consultant prepare and submit a report (the "**Foreclosure Review Report**") to the Debtors, AFI and the Federal Reserve Bank of Chicago.  FRB Consent Order ¶ 3(b); English Affidavit ¶ 5.  Based on the Foreclosure Review Report, the Debtors are required to prepare a plan to remediate any issues discovered during the FRB Foreclosure Review.  FRB Consent Order ¶ 3(c).

10.      As of the Petition Date, the Debtors estimated that the performance of this review may cost as much as $180 million.  Whitlinger Affidavit ¶ 87.  However, the Debtors now believe compliance could cost substantially more, perhaps reaching $250 million.  Pensabene Declaration ¶ 9.  As discussed further below, compliance with the FRB Consent Order is necessary to the smooth operation and continued viability of the Debtors' businesses and, accordingly, the Debtors intend to comply with the FRB Consent Order to the best of their abilities.

11.      Pursuant to the *Amended and Restated Asset Purchase Agreement Among Nationstar Mortgage LLC and Certain Debtors* [Docket No. 534] (the "**Nationstar APA**"), Nationstar Mortgage has agreed "to use commercially reasonable efforts to cooperate with and assist [the Debtors] and their counsel and other advisors with . . . [the Debtors'] foreclosure review obligations under the [FRB] Consent Order and the reporting and oversight program with respect thereto as such obligations are finally approved by the FRB" by making available the necessary books and records and loan documents, provided that Nationstar Mortgage shall be

reimbursed by the Debtors for certain incremental overhead costs and out-of-pocket third party costs.  Nationstar APA at 70.

## THE GA SERVICING MOTION AND ORDER

12.    In their first day pleadings, including the Whitlinger Affidavit and the GA Servicing Motion, the Debtors described the requirements for compliance with the terms of the FRB Consent Order.  <u>See</u> Whitlinger Affidavit ¶¶ 85-89.  Additionally, the Debtors provided their best estimate regarding the potential costs of compliance with the FRB Consent Order and certain other regulatory obligations.  <u>See</u> Whitlinger Affidavit ¶ 87; GA Servicing Motion ¶ 37.  Because of the importance to the Debtors' estates of compliance with these obligations, the Debtors sought, and the Court granted in the GA Servicing Order, the authority to comply with the requirements of the FRB Consent Order and certain other governmental obligations, including using estate assets to compensate PwC, subject to reservations of rights by the Debtors and other parties in interest to bring claims seeking reimbursement from AFI for past or future costs of compliance, and a reservation of rights by AFI regarding its ability to defend any such claims.[2]  GA Servicing Order ¶ 3.

---

[2] The GA Servicing Motion specified that "[f]or the avoidance of doubt, the Debtors request express authority to take such actions and make such disbursements that are required in order to comply with the [FRB] Consent Order and DOJ/AG Settlement, including, but not limited to, the review of past foreclosure proceedings and preparation of reports regarding the findings of that review, with the assistance of Pricewaterhouse Coopers LLP and outside counsel as independent consultants."  GA Servicing Motion ¶ 42.  Likewise, the GA Servicing Order states that "[t]he Debtors are authorized to honor their obligations under the [FRB] Consent Order . . . in connection with the Servicing Functions, and to use estate assets and take such actions as, in their reasonable business judgment, are necessary to comply with and adhere to the terms of the [FRB] Consent Order . . .; <u>provided</u> <u>however</u>, subject to the terms and conditions of the Settlement and Plan Sponsor Agreement, dated May 14, 2012, by and among Residential Capital, LLC and its debtor subsidiaries, and AFI, on behalf of its subsidiaries and affiliates other than the Debtors and their subsidiaries, such compliance shall be without prejudice to any claims or causes of action the Debtors or any party-in-interest (including the [Creditors'] Committee) may assert against AFI for past or future costs of such compliance ("Compliance Claims"), including, without limitation, claims for contribution, and/or indemnification arising directly or indirectly, by contract or under common law, through subrogation or otherwise, which for the avoidance of doubt are expressly preserved herein; <u>provided</u>, <u>further</u>, <u>however</u>, AFI preserves all rights in connection with, and may contest, any Compliance Claim on any and all bases and preserves all rights to bring counterclaims against the Debtors for Compliance Claims, including (a) that the Debtors' costs in connection with the Compliance Claims are administrative expenses of the Debtors' estates pursuant to 11 U.S.C. § 503(b) and (b)

(Footnote continues on next page.)

6

**RELIEF REQUESTED**

13.    Based on the foregoing, the Debtors believe that they have the authority, pursuant to the GA Servicing Order, to continue to take all actions necessary to comply with the FRB Consent Order, including compensating PwC.  However, as the Creditors' Committee has raised concerns regarding disclosures and compensation related to PwC's engagement, as well as AFI's potential obligation to pay for some or all of the costs, the Debtors have determined to seek a further order with respect to these expenses.  Accordingly, by this Motion, the Debtors seek entry of an order, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, (i) affirming the Debtors' authority to compensate PwC for all obligations under the FRB Engagement Letter (as defined below) for services rendered in connection of the FRB Foreclosure Review and (ii) authorizing the Debtors to comply with all other terms of the FRB Engagement Letter as set forth below, and (iii) reaffirming the relief granted in the GA Servicing Order with respect to compliance with the FRB Consent Order, the DOJ/AG Settlement (defined below) and the Order of Assessment (defined below).  Additionally, the Debtors propose, by this Motion (as in the GA Servicing Motion and GA Servicing Order), to continue to preserve any and all claims or causes of action the Debtors or any other party in interest may have against AFI for past or future costs of compliance with the FRB Consent Order.[3]

---

(Footnote continued from previous page.)

that AFI is relying on the Debtors' costs of compliance in its decision to support operationally and financially the Debtors' efforts to sell the assets of the  Debtors' estates on a going concern basis and maximize the value of the estates."  GA Servicing Order ¶ 3.

[3] The Debtors are also required to fulfill numerous other obligations under the FRB Consent Order, the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012 (the "**Order of Assessment**"), and a Consent Judgment with the United States Department of Justice and the Attorneys General of forty-eight (48) of the fifty (50) states (the "**DOJ/AG Settlement**"), including the employment of an independent validation consultant (as described in paragraph 22 of the FRB Consent Order) and other professionals.  The Debtors obtained approval to fulfill these obligations in the GA Servicing Order.  Accordingly, the Debtors do not anticipate seeking approval from the Court to employ such professionals in furtherance of the Debtors' efforts to comply with the terms of the FRB Consent Order, the Order of Assessment, or the DOJ/AG Settlement.  The Debtors will, however, use good faith efforts to obtain agreement from

(Footnote continues on next page.)

7

## PWC'S RETENTION

14.     In accordance with the requirements of the FRB Consent Order, on February 1,

2012, the Consent Order Debtors, together with AFI, signed an engagement letter (attached

hereto (without attachments) as <u>Exhibit 6</u> and, together with a May 1, 2012 amended Attachment

A, the "**FRB Engagement Letter**") with PwC, pursuant to which PwC was engaged to act as the

primary independent consultant in conducting the FRB Foreclosure Review.[4]  <u>See</u> FRB Consent

Order; English Affidavit ¶ 1.  Although the FRB Engagement Letter was not signed until

February 1, 2012, PwC professionals have been providing such consulting services for the

Debtors since May of 2011.  <u>See</u> English Affidavit at 3 n.3.  During their engagement, PwC

professionals have developed institutional knowledge regarding the Debtors' operations and

systems, have worked with the Debtors to develop a plan to conduct the FRB Foreclosure

Review, and have begun to provide the consulting services necessary to complete the FRB

Foreclosure Review.  <u>See</u> English Affidavit ¶¶ 3, 6-7.  Such experience and knowledge will be

valuable to the Debtors in their efforts to continue to comply with the FRB Consent Order and

continue operating their businesses pending a sale in these Chapter 11 cases.

15.     Under the FRB Engagement Letter, AFI and GMAC Mortgage are "jointly and

severally liable for the fulfillment of any and all obligations [to PwC.]"  FRB Engagement Letter

at 1.  While the FRB Engagement Letter obligates the Consent Order Debtors and AFI to pay for

the FRB Foreclosure Review, the Consent Order Debtors and AFI are not permitted to persuade

or otherwise direct PwC in connection with its investigation.  Instead, the FRB Engagement

---

(Footnote continued from previous page.)

such other professionals to submit fee statements to the Creditors' Committee and the U.S. Trustee for review under
the reasonableness standard contained in Bankruptcy Code section 330.

[4] In connection with the FRB Foreclosure Review, the Debtors have engaged two law firms, Hudson Cook, LLP and
Pepper Hamilton LLP (together, the "**Law Firms**") to provide legal analysis necessary during the course of PwC's
engagement.  The Debtors anticipate filing separate applications to retain each of the Law Firms shortly.

Letter, negotiated among the Consent Order Debtors and their affiliates, PwC, and the FRB, specifically states that the Consent Order Debtors "will not attempt to direct or influence PwC's factual observations or findings." FRB Engagement Letter at 3. Likewise, pursuant to the FRB Engagement Letter, PwC is required to notify the FRB of any attempt by the Consent Order Debtors to exert any "direction, control, supervision, oversight or influence over PwC, its contractors or agents." FRB Engagement Letter at 3.

16.    Although the Debtors do not believe they are required to do so, they anticipate filing a notice of entry into an additional engagement letter, currently being negotiated with PwC, for its services in furtherance of a separate foreclosure review (the "**DOJ/AG File Review**") required pursuant to the DOJ/AG Settlement, also as contemplated by the GA Servicing Order. See GA Servicing Order ¶ 3. The Debtors intend to include a copy of the engagement letter with the notice filed. Although the Debtors are uncertain as to the ultimate costs of the DOJ/AG File Review at this early stage in the process, the Debtors expect that the cost of this review will be substantially less than the cost of the FRB Foreclosure Review. See Pensabene Declaration ¶ 14. The DOJ/AG File Review engagement letter is subject to review and approval by the Department of Justice and, after receiving approval from the Department of Justice, the Debtors anticipate filing the notice referenced above.

## THE NEED FOR PWC'S SERVICES

17.    The services provided by PwC are needed to ensure compliance with the FRB Consent Order. Such compliance is important to ensuring that the Debtors' origination and servicing businesses continue operating smoothly during the bankruptcy and after a sale to a purchaser at auction. See Bocresion Declaration ¶ 7. First, compliance with the FRB Consent Order is necessary to preserve the Debtors' relationships with the Consent Order Regulators and other governmental authorities, given the highly regulated industry in which the Debtors operate.

9

See Pensabene Declaration ¶ 12.   As the Debtors have indicated to this Court previously, compliance with the FRB Consent Order is of paramount interest to the Debtors.   The Debtors believe that the continued support of various governmental entities involved in these Chapter 11 cases is contingent on the Debtors' continued compliance with the DOJ/AG Settlement, as well as the FRB Consent Order.   Pensabene Declaration ¶ 12; Bocresion Declaration ¶ 7.

18.    Additionally, settlement with the Consent Order Regulators has assisted the Debtors in resolving several related investigations being conducted by various governmental authorities.   See Pensabene Declaration ¶ 12.   Moreover, should the Consent Order Debtors fail to comply with the FRB Consent Order, the FRB may attempt to assess monetary penalties for non-compliance.[5]   See 12 U.S.C. 1818(i)(2).   Finally, the Debtors are required to comply with the FRB Consent Order under their debtor in possession financing agreement with AFI (the "**AFI DIP Facility**").[6]

19.    For each of the foregoing reasons, the Debtors intend to comply with the requirements of the FRB Consent Order to the best of their abilities, subject to Court approval, and, accordingly, have determined that payment of PwC is necessary to enable the Debtors to maximize the value of their estates pending a sale of their businesses.

## PWC'S SERVICES

20.    As described further in the English Affidavit and Bocresion Declaration, PwC, with the assistance of the Law Firms, has undertaken a continuing effort to review over 17,000 loan files for potential issues in six operational "workstreams" and oversee a third party vendor

---

[5] The Debtors reserve the right to assert the applicability of the automatic stay under Bankruptcy Code section 362 to any enforcement efforts.

[6] See *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties ¶¶ 12(a), 18(a)(iii), 20(d)* [Docket No. 491].

ny-1046955

in connection with a borrower complaint process, in accordance with regulatory guidelines from the Consent Order Regulators.  See English Affidavit ¶ 7; Bocresion Declaration ¶¶ 3-5.  In particular, the six workstreams involve reviewing the loan file review population for (i) potential violations of state foreclosure laws, (ii) the Debtors' standing to bring foreclosure actions, (iii) potential violations of bankruptcy laws in borrower bankruptcies, (iii) potential violations of the SCRA,[7] (iv) potentially improper conduct by the Debtors in the loan modification process, and (vi) potentially improper fees assessed to the borrower.  See English Affidavit ¶ 7; Bocresion Declaration ¶ 4; FRB Consent Order ¶ 3(a)(i)-(vi).

21.    In performing its review of each loan file, PwC coordinates with the Law Firms, as independent counsel, to provide responses to various questions for each loan file to determine whether applicable state or federal laws may have been violated, or whether the Debtors may have improperly charged certain fees.  English Affidavit ¶ 6.  In the event violations are uncovered through any of these six operational workstreams, PwC provides remediation recommendations based upon guidelines provided to the Debtors by the Consent Order Regulators.  See FRB Consent Order ¶ 3(a)(vii), (c); English Affidavit ¶ 8.  Undertaking these actions, collectively, has required and continues to require PwC and the Law Firms to undertake an immense amount of work to ensure the Debtors' continued compliance with the requirements of the FRB Consent Order and associated regulatory guidance.

## PWC'S COMPENSATION

22.    Pursuant to the terms and conditions of the FRB Engagement Letter, in consideration for the services to be rendered by PwC, the Debtors propose to (a) compensate

---

[7] The FRB Foreclosure Review involves a review for violations of the SCRA in foreclosure proceedings and sales occurring during the Consent Order Review Period.  The DOJ/AG Settlement described herein and in the Pensabene Declaration requires an additional review of foreclosures for potential violations of the SCRA during a look-back period prior to the Consent Order Review Period.

11

PwC for the services set forth in the FRB Engagement Letter on an hourly basis in accordance

with PwC's ordinary and customary rates in effect on the date such services are rendered and (b)

reimburse actual and necessary costs and expenses incurred by PwC in connection with all

services performed on behalf of the Debtors, including copying, travel expenses, overnight

courier expenses, computer research and other disbursements, as more fully set forth in the

English Affidavit.  See English Affidavit ¶ 22.

23.    The Debtors have agreed to the following general hourly rates in connection with

the FRB Foreclosure Review:

| Title | Rate |
| --- | --- |
| Partner | $630 |
| Managing Director | $610 |
| Senior Manager/Director | $470 |
| Manager | $370 |
| Senior Associate | $300 |
| Associate | $235 |

FRB Engagement Letter at 22.

24.    Individual hourly rates may vary based on the experience and skill of the

respective PwC employee.

25.    In the Whitlinger Affidavit, the Debtors disclosed that they estimated that the cost

of the FRB Foreclosure Review could reach approximately $180 million, although based on

subsequent events, it has become apparent that the costs of compliance with the FRB Foreclosure

Review could increase well above that amount, perhaps reaching $250 million.  Whitlinger

Affidavit ¶ 87; see Pensabene Declaration ¶ 9.  During the ninety day period from January 12,

2012 through the Petition Date, PwC received approximately $38,442,537 from the Debtors as

compensation for services related to the FRB Foreclosure Review, including a $10,000,000

retainer (the "**Retainer**") received on April 27, 2012, a portion of which was used to satisfy

12

prepetition fees and expenses, as disclosed in the English Affidavit.  <u>See</u> English Affidavit ¶¶ 25-26.  Since the beginning of PwC's engagement on May 30, 2011, PwC has received $51,658,206 from the Debtors, including, $47,974,965 in fees (inclusive of the $10 million Retainer) and $3,683,241 in expenses.  <u>See</u> English Affidavit ¶ 25.

26.     PwC intends to apply the remaining amount of its prepetition Retainer as a credit to cover postpetition FRB Foreclosure Review costs.  Additionally, the average cost of PwC's postpetition services has been approximately $7 million per month, although to date the Debtors have not made any postpetition payments to PwC.  <u>See</u> Bocresion Declaration ¶ 8.  The Debtors anticipate that the monthly cost of PwC's services related to the FRB Foreclosure Review could increase substantially in the future if the Debtors choose to accelerate the review process in an effort to complete the review in a more expedited manner, or if new guidance requires an expansion of the testing requirements.  Bocresion Declaration ¶ 8.

27.     Importantly, while the Debtors, by this Motion, seek authority to compensate PwC for all obligations due and owing under the FRB Engagement Letter, the Proposed Order explicitly reserves any and all rights of the Debtors or the Creditors' Committee to bring claims against AFI for past or future costs of compliance with the FRB Consent Order or DOJ/AG Settlement, including, without limitation, claims for contribution, and/or indemnification arising directly or indirectly, by contract or under common law, through subrogation or otherwise, and AFI's rights to defend such claims.  <u>See</u> Proposed Order ¶ 12.

### INDEMNIFICATION

28.     The Debtors have agreed to indemnify PwC in accordance with provisions set forth in the FRB Engagement Letter (the "**Indemnification Provisions**").  FRB Engagement Letter at 21.  In particular, the Indemnification Provisions obligate the Debtors and AFI, as joint obligors under the FRB Engagement Letter, to indemnify PwC for any damages arising from or

related to PwC's services in connection with or relating to the FRB Engagement Letter or the

Foreclosure Review Report, except to the extent finally determined to have resulted from PwC's

gross negligence or intentional misconduct.  FRB Engagement Letter at 21.

29.    The terms of these Indemnification Provisions were negotiated between the

Debtors and PwC at arm's-length, and the Debtors respectfully submit that the Indemnification

Provisions, as limited in the Proposed Order requested herein, are reasonable and in the best

interests of the Debtors, their estates, and creditors.  See Pensabene Declaration ¶ 10.  As set

forth in more detail below, the Indemnification Provisions are customary and reasonable

provisions included in engagement letters for consultants and other professionals such as PwC

for engagements both out of court and in Chapter 11.   Accordingly, as part of this Motion, the

Debtors request that this Court approve the Indemnification Provisions.

## PWC'S DISINTERESTEDNESS

30.    The Debtors do not believe that compensation of PwC requires approval under

section 327 of the Bankruptcy Code.  As described below, the services provided by PwC do not

fall within the scope of Bankruptcy Code section 327(a) nor can PwC – not a law firm – be

retained under Bankruptcy Code section 327(e).  Thus, the Debtors believe that PwC's services

are more appropriately authorized and paid for pursuant to section 363 of the Bankruptcy Code

and under the GA Servicing Order.  Nonetheless, in the interest of disclosure, the Debtors

requested that PwC perform a conflicts check against parties in interest in the Debtor's Chapter

11 cases.  Based on the results provided by PwC, as disclosed in the English Affidavit and

exhibits  attached thereto, the Debtors believe that PwC (a) is a "disinterested person" within the

meaning of section 101(14) of the Bankruptcy Code, (b) does not hold or represent an interest

adverse to the Debtors' estates, and (c) except as set forth in the English Affidavit, has no

connection to the Debtors, their creditors, or their related parties.

14

31.     As set forth in the English Affidavit, PwC conducted a review of its contacts with the Debtors, their affiliates and certain other entities holding large claims against or interests in the Debtors that were made reasonably known to PwC.[8]  English Affidavit ¶ 10.  PwC's review consisted of a query of all such parties within an internal computer database containing names of individuals and entities that are present or recent former clients of PwC.  English Affidavit ¶ 10. Based on the results of its review, PwC has provided and could reasonably be expected to continue to provide services unrelated to the Debtors' cases for various entities shown on Exhibit 1 to the English Affidavit.  English Affidavit ¶ 11.

32.     Additionally, PwC has been retained by Nationstar Mortgage LLC ("**Nationstar**"), the stalking horse bidder for the Debtors' servicing platform, in an ongoing matter related to the Debtors and these Chapter 11 cases.  See English Affidavit ¶ 12.  PwC is providing Nationstar with services associated with preparation of an Offering Memorandum/Prospectus for potential buyers of Nationstar issued debt/equity that includes, *inter alia*, pro forma information showing the impact on Nationstar of the acquisition of ResCap's servicing platform (for example, combining the balance sheet of Nationstar with the acquired assets as of March 31, 2012).  English Affidavit ¶¶ 12-13.[9]

33.     The PwC team engaged by Nationstar (the "**PwC Nationstar Team**") will help Nationstar interpret the relevant SEC guidance that sets out how such pro forma information should be presented as well as assist with compiling the pro forma information by helping

---

[8] The conflicts list provided to PwC is attached hereto as Exhibit 7.

[9] In connection with PwC's engagement with Nationstar, PwC also entered into an engagement letter with the Debtors, attached hereto as Exhibit 8, pursuant to which PwC reissued certain of the Debtors' consolidated financial statements for the year ended December 31, 2009, in anticipation of their inclusion in an offering circular associated with Nationstar's proposed capital raise.  See English Affidavit at 3 n.3.  However, in accordance with section 6.21 of the Nationstar APA, Nationstar is responsible for all compensation to PwC in connection with this work.  The work under this engagement letter was completed in July of 2012 by a team of PwC employees different from those employees on PwC's FRB Foreclosure Review team and the PwC Nationstar Team.  English Affidavit at 3 n.3.

prepare the underlying schedules, disclosures and calculations that support the pro forma information.  English Affidavit ¶ 13.  Other assistance will include estimating the preliminary value of acquired intangible assets and responding to ad-hoc queries on accounting and reporting issues that Nationstar faces to help them meet their ongoing SEC reporting requirements. English Affidavit ¶ 13.  PwC employees on the PwC Nationstar Team are different from the PwC employees assisting with the FRB Foreclosure Review.  English Affidavit ¶ 15.  In order to ensure there are no communications or exchanges of information protected as confidential or as client secrets between the PwC professionals that are staffed on the Nationstar engagement and the FRB Foreclosure Review engagement, PwC has established a formal screening procedure or "ethical wall."  See English Affidavit ¶ 15.

34.    While performing this work, the PwC Nationstar Team will not be interacting directly with employees of ResCap and, instead, all PwC Nationstar Team services will be conducted through Nationstar and its indirect majority shareholders, investment funds managed by affiliates of Fortress Investment Group, LLC (for example, all email correspondence with ResCap will be from Nationstar, not PwC).  English Affidavit ¶ 14.  The PwC Nationstar Team will attend calls with employees of ResCap as observers but will not actively participate in such calls.  English Affidavit ¶ 14.  The services offered by the PwC Nationstar Team impact Nationstar's ability to provide regulatory filing and financial reporting services associated with its planned acquisition of ResCap's assets.  English Affidavit ¶ 15.  These services will not impact the planned acquisitions of certain assets owned by the Debtors or the FRB Foreclosure Review services described in this Motion.  English Affidavit ¶ 15.

35.      Based on the foregoing, even if PwC was being retained under Bankruptcy Code

section 327, section 327(c) of the Bankruptcy Code would not disqualify PwC from providing

FRB Foreclosure Review services to the Debtors.

36.      PwC will periodically review its files during the pendency of the Debtors'

Chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.

See English Affidavit ¶ 21.  To the extent that PwC discovers any new relevant facts or

relationships bearing on the matters described herein during the period of PwC's employment,

PwC will use reasonable efforts to file promptly a supplemental declaration.  English Affidavit

¶ 21.

## BASIS FOR RELIEF

**A.      The Debtors Should be Authorized to Compensate PwC for its FRB
         Foreclosure Review Services and Otherwise Comply with their Obligations
         Under the FRB Engagement Letter Pursuant to Bankruptcy Code Section
         363**

37.      Section 363(b) of the Bankruptcy Code authorizes a debtor in possession to "use,

sell or lease, other than in the ordinary course of business, property of the estate," subject to

court approval.  11 U.S.C. § 363(b)(1).  Debtors may use property under Bankruptcy Code

section 363(b) if the use of property is a sound exercise of the debtor's business judgment.  See

Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp. (In re

Chateaugay Corp.), 973 F.2d 141, 143-45 (2d Cir. 1992); In re Borders Group, Inc., 453 B.R.

477, 482 (Bankr. S.D.N.Y. 2011).  Once a debtor articulates a sound business justification, a

presumption arises that "'in making a business decision, the directors of a corporation acted on

an informed basis in good faith and in the honest belief that the action taken was in the best

interests of the company.'"  Official Comm. of Subordinated Bondholders v. Integrated Res.,

Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van

17

Gorkom, 488 A.2d 858, 872 (Del. 1985)).  As a result, the debtor's decision to use property

"should be approved by the court unless it is shown to be so manifestly unreasonable that it

could not be based upon sound business judgment, but only on bad faith, or whim or caprice." In

re Aerovox, Inc., 269 B.R. 74, 80 (Bankr. D. Del. 2001) (internal quotations and citation

omitted).  Indeed, courts are "loath to interfere with corporate decisions absent a showing of bad

faith, self-interest, or gross negligence."  Integrated Res., 147 B.R. at 656.[10]

38.     As discussed above, the Debtors' compliance with the FRB Consent Order is

important to ensure the smooth operations of the Debtors' businesses pending a sale in these

Chapter 11 cases.  Failure to comply could lead to additional delays in foreclosures, monetary

penalties, and violations of the Debtors' debtor-in-possession financing facility with AFI.  As a

result, the Debtors have determined, in their business judgment (and assuming that compliance

was discretionary, which is not the case), that the continued payment of PwC is appropriate in

order to ensure compliance with the terms of the FRB Consent Order.

39.     Compensation of PwC under Bankruptcy Code section 363 is appropriate given

PwC's role.  Section 327(a) permits the trustee to "employ one or more . . . professional persons

. . . to represent or assist the trustee in carrying out the trustee's duties under this title."  PwC has

not been employed by the Debtors to assist in carrying out the Debtors' "duties under this title

[11]."  In fact, PwC was retained well before the Debtors commenced their Chapter 11 cases and

is providing services that would be required whether or not the Debtors had sought bankruptcy

relief.  The services provided by PwC would be, perhaps, more appropriately considered services

provided "for a specified special purpose" to assist the Debtors in "conducting the case," as

---

[10] See also Memorandum Decision and Order Conditionally Granting Debtors' Motion for Entry of an Order Under
11 U.S.C. §§ 105(a) and 363 Approving Consulting and Services Agreement Between the Debtors and Edward G.
Moran LLC at 11, In re 1031 Tax Group, No. 07-11448 (MG) (Bankr. S.D.N.Y. July 17, 2007) (Docket No. 400).

described in Bankruptcy Code section 327(e).  However, as non-attorneys, PwC's professionals

clearly may not be employed under Bankruptcy Code section 327(e).

40.     Courts in this and other districts have regularly approved payment of

professionals and attorneys under Bankruptcy Code section 363(b) where the professional's role

or services do not fall within the scope of Bankruptcy Code section 327.  See, e.g., In re Enron

Corp., 335 B.R. 22 (Bankr. S.D.N.Y. 2005) (retention of special employees' counsel under

Bankruptcy Code section 363); In re Innkeepers USA Trust, No. 10-13800 (SCC) (Bankr.

S.D.N.Y. Nov. 10, 2010) (Docket No. 701) (payment to counsel to outside directors); In re Hines

Horticulture, Inc., No. 08-11922 (KJC) (Bankr. D. Del. Oct. 1, 2008) (Docket No. 184, 185); In

re 1031 Tax Group, No. 07-11448 (MG) (Bankr. S.D.N.Y. July 17, 2007) (Docket No. 400)

(conditionally approving appointment of sole manager and/or director of the debtor, to be paid

under Bankruptcy Code section 363); In re 1031 Tax Group, No. 07-11448 (MG) (Bankr.

S.D.N.Y. July 3, 2007) (Docket No. 334) (payment of CRO and temporary employee consultants

under Bankruptcy Code section 363).

41.     Because PwC is not being retained under Bankruptcy Code section 327, PwC is

not subject to the compensation requirements of Bankruptcy Code sections 330 and 331.

Accordingly, PwC proposes to continue its prepetition billing practices, submitting weekly fee

statements to the Debtors for payment.  English Affidavit ¶ 24.  However, PwC will also transmit

the weekly fee statements to the Creditors' Committee and the U.S. Trustee for review and an

opportunity to object.  English Affidavit ¶ 24.  PwC proposes to provide the Creditors'

Committee and the U.S. Trustee with twenty (20) days to object to any fees.  English Affidavit

¶ 24.  Should the Creditors' Committee or the U.S. Trustee object to PwC's fee statement, the

Debtors would withhold any disputed amounts until resolution of the dispute.  English Affidavit

¶ 24.

42.    Additionally, the Debtors submit that approval of the Indemnification Provisions

is appropriate under the circumstances.  Arrangements similar to those contained in the

Indemnification Provisions, as outlined above and in the Proposed Order, are regularly approved

and implemented in other large Chapter 11 cases by courts in this District.  See, e.g., In re 1031

Tax Group, No. 07-11448 (MG) (Bankr. S.D.N.Y. July 17, 2007) (Docket No. 400)

(conditionally approving appointment of sole manager and/or director of the debtor, including

indemnification provisions); In re 1031 Tax Group, No. 07-11448 (MG) (Bankr. S.D.N.Y. July

3, 2007) (Docket No. 334) (indemnification of consultants acting as CRO and temporary

employees); see also, e.g., In re AMR Corp., No. 11-15463 (SHL) (Bankr. S.D.N.Y. March 2,

2012) (Docket No. 1555) (approving indemnification of "strategic consultant" in retention under

Bankruptcy Code section 327); In re MF Global Holdings Ltd., No. 11-15059 (MG) (Bankr.

S.D.N.Y. Feb. 9, 2012) (Docket No. 438) (approving indemnification of debtor's financial

advisor); In re Ambac Fin. Group, Inc., No. 10-15973 (SCC) (Bankr. S.D.N.Y. Jan. 19, 2011)

(Docket No. 126) (approving indemnification of professional retained as auditor, tax consultant

and bankruptcy administration consultants); In re T H Agric. & Nutrition, L.L.C., 08-14692

(REG) (Bankr. S.D.N.Y. Dec. 18, 2008) (Docket No. 150) (approving indemnification of future

claimant valuation consultant).

43.    For the foregoing reasons, the Debtors believe that continued payment of PwC is

necessary and appropriate to ensure compliance with the FRB Consent Order and is in the best

interests of their estates and their creditors.  Additionally, the Debtors believe that payment of

PwC in accordance with the modified prepetition payment procedures outlined above and

20

indemnification in accordance with the Indemnification Provisions (as modified herein and in the Proposed Order) is reasonable under the circumstances.

## NOTICE

44.    Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel:  (a) the Office of the U.S. Trustee for the Southern District of New York; (b) the Office of the United States Attorney General; (c) the Office of the New York Attorney General; (d) the Office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) each of the Debtors' prepetition lenders, or their agents, if applicable; (h) each of the indenture trustees for the Debtors' outstanding notes issuances; (i) Ally Financial Inc.; (j) Barclays Bank PLC, as administrative agent for the lenders under the debtor in possession financing facility; (k) Nationstar Mortgage LLC and its counsel; (l) the Creditors' Committee (m)  PwC; and (n) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## PRIOR REQUEST

45.    The Debtors believe they previously requested (in the GA Servicing Motion) and the Court granted (in the GA Servicing Order) the relief requested herein.  By this Motion, the Debtors seek reaffirmation of the relief granted in the GA Servicing Order.

ny-1046955

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: September 5, 2012
      New York, New York

Respectfully submitted,

/s/ Gary S. Lee
Gary S. Lee
Lorenzo Marinuzzi
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and*
*Debtors in Possession*

ny-1046955