# EXHIBIT 3

## Bocresion Declaration

ny-1046955

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF SEWIT BOCRESION IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER BANKRUPTCY CODE SECTION 363 AND BANKRUPTCY RULE 6004 (I) AUTHORIZING THE DEBTORS TO COMPENSATE PRICEWATERHOUSECOOPERS, LLP FOR FORECLOSURE REVIEW SERVICES IN FURTHERANCE OF THE DEBTORS' COMPLIANCE OBLIGATIONS UNDER FEDERAL RESERVE BOARD CONSENT ORDER AND (II) REAFFIRMING RELIEF GRANTED IN THE GA SERVICING ORDER**

I, Sewit Bocresion, under penalty of perjury, declare as follows:

1. I am Senior Vice President of Default Operations of GMAC Mortgage, LLC, a debtor and debtor in possession in the above-captioned Chapter 11 cases and a subsidiary of Residential Capital, LLC, a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**"). I have been employed by GMAC Mortgage, LLC since April of 2009 and I have held my current position since March of 2011. Prior to assuming my current role, I managed various business process improvements for the company's servicing operation. I am authorized to make this declaration on behalf of the Debtors and in support of the *Debtors' Motion for Entry of an Order under Bankruptcy Code Section 363 and Bankruptcy Rule 6004 (i) Authorizing the Debtors to Compensate PricewaterhouseCoopers, LLP for Foreclosure Review Services in Furtherance of the Debtors' Compliance Obligations under*

ny-1049526

*Federal Reserve Board Consent Order and (ii) Reaffirming Relief Granted in the GA Servicing Order* (the "**Motion**").[1]

2. In my capacity as Senior Vice President of Default Operations, I am familiar with the Debtors' day-to-day default servicing operations, loss mitigation and default-related legal matters arising therefrom, including foreclosures and borrower bankruptcies. In addition, I manage the Debtors' relationship with PwC regarding the FRB Foreclosure Review on a day-to-day basis. I submit this declaration (the "**Declaration**") on the Debtors' behalf in conjunction with and in support of the Motion. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the legal staff and various business units of the Debtors or the Debtors' advisors; my review of the Debtors' relevant documents; or my general experience, expertise, and knowledge of the Debtors' mortgage loan servicing operations. In making my statements based on my review of the Debtors' relevant documents and other information prepared or collected by the Debtors' employees, I have relied upon these employees accurately recording, preparing, collecting, or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

3. Generally, the FRB Foreclosure Review involves a review of loan files selected through two processes, and reviewed through six different "workstreams." In particular, the loan files reviewed include (i) loan files chosen based on statistical identifiers – the so-called "targeted review" – and (ii) loan files associated with borrowers who request a review of their

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

ny-1049526

file through a complaint process (collectively (i) and (ii), the "**File Review Population**"). Currently, the targeted review involves approximately 5,600 loan files. The complaint process, run by a third-party vendor and overseen by PwC, has generated approximately 12,000 additional files for review. However, the deadline for borrowers to request a review of their loan file through the complaint process has not passed. The complaint window was originally scheduled to close in April 2012, but was subsequently extended by the FRB and OCC three times, most recently until the end of 2012. As a result, the number of loan files to be reviewed as a result of requests made through the complaint process could potentially increase by several thousand files.

4. The File Review Population is reviewed through six "workstreams."[2] The workstreams include:

- State Law Workstream– The state law workstream requires the FRB Foreclosure Review professionals to determine whether any state laws were violated in the foreclosure or sale associated with each file;
- Standing Workstream – The standing workstream involves an analysis of whether the Debtors had standing to conduct the relevant foreclosure;
- Bankruptcy Workstream – the bankruptcy workstream involves analyzing whether the Debtors foreclosed on a borrower in violation of the automatic stay in a borrower's pending bankruptcy;
- Servicemembers Civil Relief Act ("**SCRA**") Workstream – the SCRA workstream entails an analysis of whether the Debtors violated the SCRA in conducting a foreclosure by, for instance, foreclosing while a servicemember was on active duty;
- Loan Modification Workstream – the loan modification workstream involves analyzing whether the Debtors improperly denied or otherwise failed to follow certain loan modification requirements;
- Fees Workstream – the fees workstream involves reviewing each relevant loan file to determine if the borrower was improperly charged fees not permitted under the loan documents or state or federal law.

---

[2] Although all loans in the File Review Population are compared with a Department of Defense database to determine whether the borrower is covered by the SCRA, only those files involving borrowers potentially covered by SCRA (i.e. – borrowers who are current or recent former servicemembers) are analyzed further through the SCRA workstream.

3

ny-1049526

5. Currently, PwC has over 100 employees on-site at Debtor locations in connection with the FRB Foreclosure Review. The PwC team reviews the File Review Population in light of the applicable workstreams, by utilizing procedures developed by Hudson Cook, or by PwC for the modification and fees workstreams. The procedures involve reviewing a loan file for certain factual "observations" identified by PwC. For instance, a factual observation may require PwC to review whether the Debtors failed to send a certain notice more than thirty days prior to initiation of a foreclosure proceeding. To the extent that PwC locates an "observation," the relevant file and information is forwarded to (i) Hudson Cook if the finding relates to the state law, standing or SCRA workstreams or (ii) Pepper Hamilton if the finding relates to the bankruptcy workstream.[3] The relevant Law Firm must then make a determination regarding whether a particular observation constitutes a legal error, potentially requiring remediation. For the modification and fees workstreams, PwC makes the final determination of error.

6. I manage the Debtors' internal team assisting with the FRB Foreclosure Review process. Currently, this team consists of over fifty full time and temporary employees. However, this team is expected to grow. More specifically, the team involves approximately twenty-five temporary employees dedicated to pulling together all documents and information necessary to complete the files for review and answering questions raised by PwC. Employees from the Debtors' loss mitigation and legal staff also assist in answering questions and addressing PwC's concerns on an as-needed basis. In addition to addressing PwC's questions,

---

[3] The Law Firms are not required to make any legal determinations in connection with the loan modification and fees workstreams.

4

ny-1049526

my team and I are tasked with ensuring that the on-site PwC team has access to and assistance from the Debtors' various business units, as necessary, and has access to necessary systems and information.

       7.       The services provided by PwC pursuant to the FRB Engagement Letter are required in order to comply with the FRB Consent Order.  My understanding is that such compliance is important to ensuring that the Debtors' origination and servicing businesses continue operating smoothly.  It is also my understanding that compliance with the requirements of the FRB Consent Order may be required to ensure the continued support of various governmental entities during the Debtors' Chapter 11 cases.

       8.       Prior to the Petition Date, the Debtors paid PwC approximately $51.7 million for FRB Foreclosure Review services.  Postpetition, PwC has been submitting weekly hours reports to the Debtors indicating a monthly cost of approximately $7 million.  However, I am not aware of any postpetition invoices submitted by PwC or any postpetition payments to PwC by the Debtors.  The Debtors anticipate that the monthly cost of PwC's services related to the FRB Foreclosure Review could increase substantially in the future if the Debtors choose to accelerate the review process in an effort to complete the review in a more expedited manner, or if new guidance requires an expansion of the testing requirements.

       9.       Based on the Debtors' need to comply with the FRB Consent Order pending a sale of their businesses, the Debtors concluded, in their business judgment, that continued compensation of PwC for its FRB Foreclosure Review related services was appropriate and in the best interests of the Debtors, their estates and their other stakeholders.

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 5th day of September 2012.

/s/ Sewit Bocresion
Sewit Bocresion
Senior Vice President of Default Operations of
GMAC Mortgage, LLC