**EXHIBIT 4**

**Pensabene Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————  )
                                                    )
In re:                                          )        Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,   )        Chapter 11
                                                    )
                          Debtors.        )        Jointly Administered
                                                    )
                                                    )
                                                    )
—————————————————————  )

**DECLARATION OF JOSEPH A. PENSABENE IN SUPPORT OF DEBTORS' MOTION
FOR ENTRY OF AN ORDER UNDER BANKRUPTCY CODE SECTION 363 AND
BANKRUPTCY RULE 6004 (I) AUTHORIZING THE DEBTORS TO COMPENSATE
PRICEWATERHOUSECOOPERS, LLP FOR FORECLOSURE REVIEW SERVICES IN
FURTHERANCE OF THE DEBTORS' COMPLIANCE OBLIGATIONS UNDER
FEDERAL RESERVE BOARD CONSENT ORDER AND (II) REAFFIRMING RELIEF
GRANTED IN THE GA SERVICING ORDER**

I, Joseph A. Pensabene, under penalty of perjury, declare as follows:

1.        I am Executive Vice President/Chief Servicing Officer of Residential Capital,

LLC, a limited liability company organized under the laws of the state of Delaware, a debtor and

debtor in possession in the above-captioned Chapter 11 cases, and the parent of the other debtors

and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**").

I have been employed by the Debtors since May of 1996 and I have held my current position

since August of 2008.  Prior to assuming my current role, I was the Senior Vice President of

Consumer Operations, responsible for fulfillment on new production for each of the Debtors'

consumer lending channels.  I am authorized to make this declaration on behalf of the Debtors

and in support of the *Debtors' Motion for Entry of an Order under Bankruptcy Code Section 363*

*and Bankruptcy Rule 6004 (i) Authorizing the Debtors to Compensate PricewaterhouseCoopers,*

*LLP for Foreclosure Review Services in Furtherance of the Debtors' Compliance Obligations*

*under Federal Reserve Board Consent Order and (ii) Reaffirming Relief Granted in the GA*

*Servicing Order* (the "**Motion**").[1]

2.    In my capacity as Executive Vice President/Chief Servicing Officer, I was

involved with the negotiation of the FRB Engagement Letter on behalf of the Debtors.  I am also

familiar with the circumstances surrounding the Debtors' entry into and the terms of the FRB

Consent Order (defined below).  I submit this declaration (the "**Declaration**") on the Debtors'

behalf in conjunction with and in support of the Motion.  Except as otherwise indicated, all

statements in this Declaration are based upon my personal knowledge; information supplied or

verified by personnel in departments within the various business units of the Debtors or the

Debtors' advisors; my review of the Debtors' relevant documents; or my general experience,

expertise, and knowledge of the Debtors' mortgage loan servicing operations.  In making my

statements based on my review of the Debtors' relevant documents and other information

prepared or collected by the Debtors' employees, I have relied upon these employees accurately

recording, preparing, collecting, or verifying any such documentation and other information.  If I

were called to testify as a witness in this matter, I would testify competently to the facts set forth

herein.

### FRB CONSENT ORDER

3.    On April 13, 2011, GMAC Mortgage, ResCap, AFI, and Ally Bank entered into a

Consent Order (the "**FRB Consent Order**") with the FDIC and the FRB.  Pursuant to the FRB

Consent Order, the Debtors, AFI and Ally Bank are required to implement, among other things,

certain board oversight and risk management programs.

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

ny-1054049

4.     Additionally, paragraph 3 of the FRB Consent Order requires the engagement of
an independent consultant to conduct a review (the "**FRB Foreclosure Review**") of foreclosure
actions or proceedings, including foreclosure sales completed during the period from January 1,
2009 to December 31, 2010.  The FRB Consent Order requires the independent consultant to
review loan files for compliance with various state and federal laws, including, but not limited to,
bankruptcy laws and the Servicemembers Civil Relief Act ("**SCRA**").  The FRB Consent Order
also requires that the independent consultant review applicable loan files to determine if
improper fees were charged, and to determine whether certain loss mitigation guidelines were
complied with.  In the event that PwC discovers any errors through the FRB Foreclosure Review
which are deemed to have resulted in financial injury to the borrower, the Debtors will be
required to remediate such errors.

5.     Throughout the term of the FRB Consent Order, AFI, Ally Bank and ResCap are
required to submit quarterly progress reports regarding their progress under the FRB Consent
Order.  The Consent Order Debtors and AFI are also required to engage an independent third-
party consultant – the independent validation consultant – to analyze the relevant parties'
compliance with the FRB Consent Order.  The independent validation consultant's report must
be submitted within 15 months after the date the FRB Consent Order.  At this point, the date for
hiring the independent validation agent has been set for September 30, 2012 and the details of
the scope of the independent validation consultant's role and the associated costs remain unclear,
although the Debtors expect the cost to be relatively insignificant when compared with the
expected costs for PwC's services based on initial proposals from professionals submitting bids
to act as the independent validation consultant.

3

## PWC'S ENGAGEMENT

6.      In accordance with the requirements of the FRB Consent Order, the Consent

Order Debtors, together with AFI, engaged PwC, with the approval of certain of the Consent

Order Regulators, to act as the primary independent consultant in conducting the FRB

Foreclosure Review.  The Debtors and AFI also engaged two law firms, Hudson Cook and

Pepper Hamilton, to assist PwC in completing the FRB Foreclosure Review.

7.      Representatives of the Debtors, AFI, and PwC engaged in discussions regarding

the terms of the engagement, and it is my understanding that the hourly rates contained in the

resulting FRB Engagement Letter are consistent with the terms of engagements letters between

the Debtors and PwC in other non-FRB Consent Order related engagements.  Pursuant to the

FRB Engagement Letter, AFI and GMAC Mortgage are jointly and severally liable for

fulfillment of any and all obligations and liabilities to PwC.  However, PwC takes direction from

the Federal Reserve Bank of Chicago[2] in order to maintain the independence required by the

FRB Consent Order.  Indeed, the FRB Engagement Letter prohibits GMAC Mortgage and AFI

from attempting to influence PwC's factual findings.

8.      Under the FRB Engagement Letter, PwC has agreed to perform the sampling and

file review, under the six "workstreams" identified in the FRB Consent Order, consistent with

the FRB Foreclosure Review requirement in the FRB Consent Order.  PwC will then provide a

Foreclosure Review Report, as required by the FRB Consent Order.  PwC has also agreed to

oversee a third-party vendor involved in running a complaint process that permits borrowers to

"opt-in" their loan file into the FRB Foreclosure Review process.

---

[2] The OCC has also been involved in issuing direction to PwC and other independent consultants.

9.      As of the Petition Date, the Debtors estimated that the cost of the FRB

Foreclosure Review could reach $180 million.  The Debtors' most recent estimates indicate that

the cost of compliance with the FRB Foreclosure Review could reach $250 million, based on the

response rate of the complaint process described in paragraph 8, which may reach between 6-

10% of all loans subject to actions or proceedings (including foreclosures that were in process or

completed) for loans serviced by the Consent Order Debtors pending at any time between

January 1, 2009 and December 31, 2010,[3] and the time the Debtors estimate it will take to

complete the FRB Foreclosure Review and the monthly costs of the resources necessary to

complete the review, including monthly compensation to PwC and the Law Firms.  Additionally,

the Debtors estimate that the remediation payments to affected borrowers required after the FRB

Foreclosure Review has been completed will be between thirty-five and sixty million dollars,

based on (i) the estimated size of the population reviewed (ii) the rate of "observations"[4] to date,

(iii) the expected rate of violations observed as a percentage of the loan files in which PwC

identifies an "observation," and (iv) an estimate of the expected average cost to remediate an

identified violation.  However, the deadline for borrowers to opt in to the FRB Foreclosure

Review through the complaint process overseen by PwC has been extended by the FRB and

OCC for a third time through December of 2012.  As a result, the number of files requiring

review, as well as these estimates, may change.

10.     The FRB Engagement Letter also contains certain Indemnification Provisions

requiring the Debtors to indemnify PwC for certain types of claims, subject to exceptions

---

[3] As of July 31, 2012, the response rate was 5.3%.
[4] As described in the Bocresion Declaration, PwC reviews the relevant loan files for certain "observations" based on worksheets created by Hudson Cook and, if any such observations are identified, the loan file is referred to one of the Law Firms (except with respect to the fees and loan modification workstreams) for a legal determination regarding whether a violation occurred.

ny-1054049

specified in the FRB Engagement Letter.  The terms of the Indemnification Provisions were

agreed to by the parties to the FRB Engagement Letter after arm's-length discussions, and it is

my understanding that the Indemnification Provisions are consistent with market terms.

11.    During the course of the negotiations with PwC, representatives of the Federal

Reserve Bank of Chicago provided regular guidance regarding the structure of the FRB

Engagement Letter, the scope of the work required, and provided sign-off on the completed FRB

Engagement Letter.  Additionally, the Federal Reserve Bank of Chicago provided guidance

regarding which law firms could be retained to assist PwC in conducting the FRB Foreclosure

Review.[5]

12.    It is my understanding that compliance with the requirements of the DOJ/AG

Settlement and the FRB Consent Order may be required to ensure the continued support of

various governmental entities during the Debtors' Chapter 11 cases.   Additionally, it is my

understanding that these settlements with the Consent Order Regulators have been used to assist

the Debtors in reaching agreements with other governmental authorities in connection with such

other investigations of the Debtors.

## DOJ/AG FILE REVIEW

13.    Additionally, the Consent Order Debtors are currently negotiating with PwC

regarding the terms of an engagement letter under which PwC would conduct the independent

consulting services necessary to comply with the Servicemembers' Civil Rights Act ("**SCRA**")

Review (the "**DOJ/AG File Review**") requirements contained in the DOJ/AG Settlement.  The

Debtors' failure to comply with the terms of the DOJ/AG Settlement could lead to further

investigations by the DOJ or the AGs.  It is my understanding that any such investigations or

---

[5] The OCC and FRB were also involved in this process.

ny-1054049

proceedings could require the Debtors to expend additional funds in defense and could delay or
otherwise impede the sale of the Debtors' businesses.

14.    While PwC has not begun to provide the services necessary to complete the
DOJ/AG File Review, at this juncture the Debtors' expect that completion of the DOJ/AG File
Review is likely to be substantially less costly than completion of the FRB Foreclosure Review.
However, because the Debtors and PwC have not yet completed a review to determine the
universe of foreclosures subject to the DOJ/AG File Review, the actual costs of the DOJ/AG File
Review remain unknown.

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the
foregoing is true and correct.


Executed on this 5th day of September 2012.




/s/ Joseph A. Pensabene
Joseph A. Pensabene
Executive Vice President/
Chief Servicing Officer of
Residential Capital, LLC

7