# EXHIBIT 6

**FRB Engagement Agreement (without attachments)**



February 1, 2012

**Barbara A. Yastine, Chief Administrative Officer**
Ally Financial Inc
1177 Avenue of the Americas
New York, NY

**Steven M. Abreu, President**
GMAC Mortgage LLC
1100 Virginia Drive
Fort Washington, PA 19034

Re: Foreclosure Review

Dear Barbara and Steven,

This engagement letter (the "Agreement") confirms that Ally Financial Inc. ("Ally") and GMAC Mortgage LLC
("GMACM") (Ally and GMACM, together shall be referred to herein as the "Company" or "you") have engaged
PricewaterhouseCoopers LLP ("we" or "us" or "PwC" or "Independent Consultant") to perform the services
described below pursuant to Section 3 of the Consent Order (the "Consent Order" or "Order") entered into on April
13, 2011 by Ally, GMACM, Ally Bank, Residential Capital, LLC ("ResCap") and the Board of Governors of the
Federal Reserve System ("FRB") and the Federal Deposit Insurance Corporation ("FDIC") (FRB and FDIC,
collectively the "Regulators").

Both of Ally and GMACM shall be jointly and severally liable for the fulfillment of any and all obligations,
responsibilities and liabilities of the Company under this Agreement.

**Background**

In response to the Order, GMACM is required to engage independent consultant(s) acceptable to the FRB to
conduct an independent evaluation of certain foreclosure actions regarding individual borrowers with respect to the
GMACM's residential mortgage loan portfolio and servicing portfolio, and the Company wishes to engage PwC as
one of such independent consultants. This evaluation will include residential foreclosure actions or proceedings
(including foreclosures that were in process or completed) for loans serviced by GMACM and brought in the name
of the GMACM, Ally Bank, the investor, the mortgage note holder, or any agent for the mortgage note holder
(including the Mortgage Electronic Registration Systems ("MERS")), that have been pending at any time from
January 1, 2009 to December 31, 2010 (the "Review Period"), as well as residential foreclosure sales that occurred
during the Review Period (the "Foreclosure Review").

This Agreement, which is subject to acceptance by the FRB, outlines the mutually agreed upon engagement
approach that addresses the following:

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C.
§552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in
accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

(a) The methodology for conducting the Foreclosure Review, including:
   (i) a description of the information systems and documents to be evaluated, including the selection of criteria
       for cases to be evaluated;
   (ii) the criteria for evaluating the reasonableness of fees and penalties;
   (iii) other procedures necessary to make the required determinations (such as interviews of employees and third
         parties and a process for the submission and evaluation of borrower complaints); and,
   (iv) any proposed sampling techniques.

In setting the scope and evaluation methodology under clause (i) of this sub-paragraph, PwC may consider any
work already done by the Company or other third-parties on behalf of the Company. This Agreement contains a
description of the statistical methods chosen, as well as procedures to increase the size of the sample depending
on the results of the initial sampling included in the *Foreclosure Review Approach Overview* section below.

(b) Timeline to complete the Foreclosure Review. A discussion of the timelines associated with the Foreclosure
    Review is included in the *Timeline* section below.

### Scope of Our Services & Responsibilities

You are engaging us to provide the professional consulting services outlined below (the "Services" or "Foreclosure
Review Services"). We will perform the Services in accordance with the Standards for Consulting Services
established by the American Institute of Certified Public Accountants. Accordingly, we will not provide an audit or
attest opinion or other form of assurance, and we will not verify or audit any information provided to us by the
Company or on the Company's behalf, or provided to us by or on behalf of any external legal counsel retained by
the Company to assist with the Foreclosure Review and whose independence as to these matters has been approved
by the FRB ("external legal counsel").

We are not providing, and shall at no time provide, any legal advice or legal opinions in connection with this
engagement. PwC makes no representations or conclusions regarding questions of legal interpretation. It is our
understanding that the Company will separately engage its external legal counsel to assist the Company with
respect to any legal matters or items that require legal interpretation under federal, state or other type of laws or
regulations, in connection with this engagement or otherwise.

Because of PwC's role as Independent Consultant, the Company will not attempt to direct or influence PwC's
factual findings that result from the Foreclosure Review. The Company's further responsibilities in connection
with this Agreement will be as set forth in the "Your Responsibilities" section hereunder, or as otherwise mutually
agreed by the parties.

As mentioned above, PwC understands that the Company will retain external legal counsel to provide legal
representation to it with respect to the Consent Order or legal advice concerning matters covered by the Consent
Order. PwC further understands that the Company's external legal counsel will provide the legal advice necessary
for completion of the items listed in Paragraphs 3(a)(i) – (vii) of the Consent Order (the "Review Criteria"), such as
(i) building the evaluation criteria and providing support for subsequent questions of legal interpretation arising
during the evaluation process, and (ii) providing guidance where a Review Criterion requires a legal opinion as to
compliance with law or contract. The Company will instruct its external legal counsel to share such evaluation
criteria and legal guidance with PwC as may be necessary in connection with PwC's provision of Services
hereunder. PwC and the Company acknowledge that the Company provides information to the Regulators pursuant
to 12 USC 1828(x), and that the Company will not assert legal privileges as a basis for withholding such evaluation
criteria and legal guidance from the Regulators.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C.
§552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in
accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

This Agreement does not cover, and the definition of "Services" does not include, the services that will be provided by the external legal counsel, as those services will be covered by a separate agreement between the Company and the external legal counsel. Although PwC may utilize certain evaluation criteria and other information or materials prepared by the external legal counsel in order to provide the Services hereunder, PwC disclaims any and all responsibility and liability for any such materials, information or data provided by the Company or the Company's external legal counsel in connection with this engagement. We will refer any potential matters of legal interpretation to the Company's external legal counsel, and PwC will make no representations or conclusions regarding such matters.

PwC will provide a written report detailing its factual findings and observations from the Foreclosure Review (the "Foreclosure Report") to the Company as discussed in the *Deliverable* section below. PwC understands that the Company may provide our written report and related findings to the Company's external legal counsel for its consideration in preparing its written report that sets forth the legal conclusions that are called for by the Consent Order.

### Independence of PwC as Independent Consultant

PwC agrees to use its best efforts to ensure that its performance of the Foreclosure Review will comply with all requirements set forth in paragraphs 3 and 4 of the Consent Order to the extent that such paragraphs do not require any legal analyses or conclusions, which PwC understands shall be performed by the Company's external legal counsel, and that it will conduct the Foreclosure Review as separate and independent from any evaluation, study, or other work performed by the Company or its other contractors or agents with respect to GMACM's applicable mortgage servicing portfolio or the Company's compliance with other requirements of the Consent Order, as set forth below:

1. As previously indicated, the Company and/or its contractors or agents, as applicable will not attempt to direct or influence PwC's factual observations or findings. PwC shall immediately notify the FRB of any effort by the Company, directly or indirectly, to exert any such direction, control, supervision, oversight, or influence over PwC, its contractors or agents.

2. PwC agrees that it is responsible for the conduct and results of the factual evaluation and factual findings required by the Foreclosure Review that do not require legal determinations or analysis, in accordance with the requirements of clauses 3(a)(i) through (vii) of the Consent Order. PwC understands that the Company's external legal counsel will prepare a separate written report that sets forth the legal conclusions that are called for by the requirements of the Consent Order, which report shall be based upon the factual findings and observations provided to the Company by PwC. PwC understands that engagement of external legal counsel by the Company is subject to FRB approval.

3. The conduct of the Foreclosure Review shall be subject to the monitoring, oversight, and direction of the FRB. PwC agrees to use its best efforts to promptly comply with all written comments, directions, and instructions of the Regulators concerning the conduct of the Foreclosure Review consistent with professional standards, and that it will promptly provide any documents, workpapers, materials or other information requested by the Regulators.

4. PwC agrees to provide regular progress reports, updates and information concerning the conduct of the Foreclosure Review to the Regulators, as directed by the FRB.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

5. PwC will conduct the Foreclosure Review using only personnel employed or retained by PwC to perform the work required to complete the Foreclosure Review. PwC shall not employ or use services provided by the Company's employees, or contractors or agents retained by the Company with respect to the Consent Order or with respect to matters addressed in the Consent Order, in order to conduct the Foreclosure Review, except where the FRB specifically provides prior written approval to do so.

6. Subject to the requirements and restrictions of no. 5 above, including the requirement of specific approval by the FRB, PwC may utilize documents, materials or other information provided by the Company, and may communicate with the Company, its contractors or agents, in order to conduct the Foreclosure Review. For example, PwC may communicate with the Company's employees to obtain clerical assistance, to determine if information provided is complete or accurate, to verify or confirm information concerning specific case files, or to communicate with the Company employees regarding case files such that errors or omissions may be brought to PwC's attention; however, the Company's employees may not influence or attempt to influence determinations concerning the findings or recommendations of PwC, whether regarding specific case files, categories of cases, or the Foreclosure Review more generally.

PwC agrees that any legal advice needed in conducting the Foreclosure Review shall be provided and/or obtained by the Company's external legal counsel, whose retention for that purpose has been approved by the FRB. As previously indicated, PwC will refer any potential matters of legal interpretation to the Company's external legal counsel, and PwC will make no representations or conclusions regarding such matters. PwC agrees not to obtain legal advice (or other professional services) in conducting the Foreclosure Review from the Company's inside counsel, or from other counsel retained by the Company or its affiliates to provide legal advice concerning the Consent Order or matters contained in the Consent Order.

7. The Company and PwC agree that if the FRB determines, in their sole discretion, that PwC has not been fully compliant with the foregoing standards (nos. 1-7, above), the FRB may direct the Company to dismiss PwC and retain a successor consultant, in which case the Company shall have no further obligation to PwC other than for services performed up to that date for the Company.

*Scope*

PwC will assist GMACM with the identification of any borrowers and investors who suffered financial injury as a result of errors, misrepresentations, or other deficiencies associated with pending or completed foreclosures in 2009 and 2010. For purposes of this engagement, financial injury means monetary harm to the borrower or the owner of the mortgage loan directly caused by errors, misrepresentations, or other deficiencies. Monetary harm does not include physical injury, pain and suffering, emotional distress, or other non-financial harm. Monetary harm does not include financial injury that did not result as a direct consequence of errors, misrepresentations, or other deficiencies identified in the Foreclosure Review. Errors, misrepresentations, or other deficiencies means those matters discovered during the Foreclosure Review as set forth in Paragraphs 3(a)(i)-(vii) of the Consent Order. Errors includes miscalculation of fees or other charges, where the total aggregate miscalculated fees or charges applied to and paid by the borrower exceeds $99.00 (as outlined by previous FRB guidance).

As noted above, the Foreclosure Review will include residential foreclosure actions or proceedings (including foreclosures that were in process or completed) for residential mortgage loans serviced by GMACM and brought in the name of GMACM, the investor, the mortgage note holder, or any agent for the mortgage note holder (including MERS), that were pending or completed at any time during the Review Period. The Foreclosure Review will include loans as defined within "certain residential foreclosure actions" of the *Key Consent Order Definitions* section below.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

The primary loan servicing systems of record to be subject to the Foreclosure Review discussed herein are GMACM's MIS systems and, in particular, the LoanServ mortgage servicing platform. Data on loans subject to the Foreclosure Review may include data and information from LoanServ, borrower payment history, corporate advance and other fee data, late charge assessment history, third party law firm and trustee firm files, and manual and automated notes prepared during collections, bankruptcy, loss mitigation, and foreclosure activities. GMACM is responsible for the completeness and accuracy of data provided.

Imaged copies of documents for loans subject to the Foreclosure Review such as the mortgage document, promissory note (and related assignments and allonges), and loss mitigation documents may also be evaluated. In addition, legal files maintained by GMACM's vendor foreclosure attorneys containing relevant notices, court filings, affidavits, and judgments may also be evaluated.

GMACM's residential mortgage loan collections, loss mitigation, bankruptcy, and foreclosure workflow, policy, procedural, and process documentation may also be evaluated.

For purposes of the Foreclosure Review determination of risk-based segments, risk ratings, sampling methodology, Foreclosure Review consulting Services and reporting considerations further described herein, we anticipate performing various other consulting Services, including but not limited to, interviewing the Company's employees as well as third parties which may have worked on behalf of the Company, accessing files that support information included within the loan servicing systems of record, and reading the Company's policies and procedures, departmental flows and/or other information relevant to the foreclosure processes. Specifically, the Services to be provided in relation to determination of risk-based segments, risk ratings and other procedures of the Foreclosure Review may include, but are not limited to, the following:

- discussions with the Company's management with respect to self-identified or known foreclosure-related issues;

- reading of the Company's internal audit reports related to modifications or foreclosures in 2009-2010;

- reading of USAP reports for 2009-2010;

- reading of MHA-Compliance reports for 2009-2010;

- discussions with the Regulators;

- interviews with applicable Company employees to understand the customer complaint process related to foreclosure actions during the Review Period, both pre- and post-Consent Order issuance date;  and,

- follow-up interviews as necessary to resolve questions uncovered during the Foreclosure Review.

We understand that the methodology for conducting the Foreclosure Review should include a process for submission and evaluation of borrower claims and complaints - to include complaints received by GMACM subsequent to the issuance of the Consent Order on April 13, 2011 that are from borrowers who believe they have been financially harmed as a result of errors, misrepresentations, or other deficiencies associated with foreclosures initiated or completed during the Review Period. Additional details associated with the proposed Foreclosure Review surrounding post-Consent Order issuance complaints received by GMACM are included in the *Submission and Review of Post-Consent Order Issuance Complaints* section below.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

*Foreclosure Review Approach Overview*

GMACM will provide the population of all loans that are subject to the Foreclosure Review per the Order. This
will follow the additional guidance provided by the Regulators (see "*Key Consent Order Definitions*" section for
definition of "Certain residential foreclosure actions"). GMACM's MIS Systems' "1st Legal Date", "Foreclosure
Sale Held", and "Foreclosure Status-Active" fields were used to identify the Foreclosure Review population. As
used by GMACM, "1st Legal Date" indicates the date that legal counsel files with the court the GMACM's
intention to foreclose and comparable date in non-judicial states; "Foreclosure Sale Held" indicates that the
foreclosure sale has occurred and "Foreclosure Status-Active" indicates GMACM has internally approved initiation
of foreclosure process and referred the borrower to a foreclosure attorney.

GMACM used the following seven parameters to identify the Foreclosure Review population. Duplicate borrower
records were only included a single time in the total Foreclosure Review population (i.e. a borrower that was
indentified in multiple parameters was only included once).

(1) "1st Legal Date" (most recent) field occurred in the Review Period
(2) "Foreclosure Sale Held" field occurred in the Review Period
(3) "Foreclosure Status-Active" (most recent) field as of December 31, 2008
(4) "Foreclosure Status-Active" field as of December 31, 2010
(5) "1st Legal Date" (historical) field occurred in the Review Period
(6) "Foreclosure Status-Active" (historical) filed as of December 31, 2008
(7) "1st Legal Date" (historical) field occurred in the Review Period per Lender Processing Services (LPS)
    records

GMACM will specifically exclude the following loans from inclusion in the Foreclosure Review population:

a. Non-owner occupied loans - based upon loan origination designation, not property abandonment (excluded
   in accordance with definition of "Certain residential foreclosure actions" (as noted in the above paragraph))
   and

b. Second homes based upon loan origination designation.

From this Foreclosure Review population, PwC will select a sample of foreclosure actions that is designed to
increase the likelihood of identifying cases where a borrower or investor suffered financial injury as a result of
errors, misrepresentations, or other deficiencies. See "*Sampling Methodology Overview*" section below for
description of our segmentation and sampling approach.

PwC will analyze the information in the sample for potential errors, misrepresentations, or deficiencies identified to
determine if further review is needed on additional foreclosure actions.

*Sampling Methodology Overview*

The approach to the Foreclosure Review includes a sampling approach that includes the following: a) risk-based
samples that are associated with elevated risk segments with respect to the potential for borrower or mortgagee
(investor) financial injury and that directly relate to the primary objective of the Foreclosure Review - which is the
identification and remediation in respect of any borrowers or mortgagees (investors) who have  incurred financial
injury as a result of errors, misrepresentations, or other deficiencies associated with pending or completed
foreclosures during the Review Period; and b) base samples from GMACM's overall populations of mortgage loans
subject to the Consent Order requirements that are determined based on general sampling methodologies commonly
utilized.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C.
§552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in
accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

In determining the sample segmentations for the risk-based samples, we will consider input from the Regulators, known industry issues with respect to the foreclosure process and information from the Company's management with respect to potential or identified areas of errors, misrepresentations, or other deficiencies associated with pending or completed foreclosures during the Review Period.

GMACM has or will provide the necessary data to identify the risk based segments within the Foreclosure Review population. In certain cases, GMACM may perform the data analysis/screening to identify the risk-based segment for PwC. In such cases, PwC will perform procedures to evaluate and provide any observations and/or recommendations with regards to the analysis prepared by the Company.

As noted below certain evaluation segments are sampled utilizing statistical sampling techniques. In other cases, we have applied judgment on the level of evaluation or evaluation of 100% of particular segments.

*Statistical Sampling Methodology*

Where applicable, the sampling methodology to be utilized will conform to the guidance consistent with the Office of the Comptroller of the Currency ("OCC"), Comptroller's Handbook - Sampling Methodologies, August 1998 (the "Handbook"). Statistical sampling, specifically numerical sampling, will be utilized to determine adherence to each of the Review Criteria. Pursuant to the Handbook, with numerical sampling, each item in a given population is equally likely to be drawn and the population to be sampled is defined by the number of items. Numerical sampling is used to reveal the presence or absence of a defined characteristic in a portfolio of items with similar characteristics.

As further discussed in the Handbook, in numerical sampling, a precision limit is set by deciding how many differences can be tolerated in the sample population; the more differences that can be tolerated, the higher the precision limit should be. Reliability is the level of confidence in sample results. Selecting a reliability level affects the size of a sample with the higher the reliability level, the greater the number of items within the sample population to be evaluated.

Based on the guidance contained within the Handbook as well as communications from the FRB, the sample sizes to be utilized for assessing the Review Criteria will be determined assuming a precision level of 3% and a reliability level of 95% for each applicable population. Accordingly, the related sample size for each population must be at least 100 items.

Pursuant to the Handbook, if no differences are found in the initial sample results, the desired statistical reliability and precision levels have been attained and typically, no further evaluation is warranted. When differences are found, further analysis is typically performed to evaluate the differences, including but not limited to the root causes of the differences and whether the differences are isolated occurrences or are reflective of any patterns and/or practices. Given the aforementioned precision level of 3% and a reliability level of 95% for each of the populations, typically the existence of one difference would indicate that the original reliability and precision levels are no longer valid.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

*Base Samples*

We understand through discussions with the Company as well as directions provided by the Regulators, that there is a desired coverage across all states where GMACM has initiated and/or completed foreclosure sales during the Review Period. As such, we will stratify the population of loans for the base sample by state and select our sample to be representative by all states with foreclosure initiations. States that represent less than 1% of the foreclosure initiations will have one (1) loan selected for purposes of the base samples. This sampling approach will result in sample sizes for certain of the Consent Order requirements being in excess of the minimum sample size of 100 per population as it relates to the base sample determinations.

A random sample generator process will be utilized for purposes of selecting the base samples. Additionally, as it relates to the base samples, all of the Review Criteria will be evaluated as part of the Foreclosure Review Services.

The composition of the base samples selection and the overall number of sample items for each Review Criteria is summarized as follows:

1. 100 judicial foreclosure initiations
2. 100 non-judicial foreclosure initiations
3. 100 foreclosure sales

Each of the Consent Order Review Criteria will be applied to all of the loans in the three base samples. Where the Review Criteria require the assessment of legal requirements, we will apply evaluation procedures approved by the Company's external legal counsel.

The table below illustrates potential observations that may arise from our evaluation of the Review Criteria for the base samples.

| **Consent Order Requirements** | **Illustrative Observations to be Reported**<br>*(Note that our evaluation will be based on the laws in effect at the date the relevant action occurred and that the examples described herein are preliminary and illustrative only. The listing is not intended to be fully inclusive and may be subject to further revisions).* |
|---|---|
| (i) "whether, at the time the foreclosure action was initiated or the pleading of affidavit filed (including bankruptcy proceedings and in defending suits brought by borrowers), the foreclosing party or agent of the party had properly documented ownership of the promissory note and mortgage (or deed of trust) under relevant state law, or was otherwise a proper party to the action as a result of agency or other similar status;" | 1. Observations will be reported for the following:<br>  a. Lack of documentation/support that the foreclosing party was a "Party Entitled to Enforce" the note and mortgage under applicable state law |

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

| **Consent Order Requirements** | **Illustrative Observations to be Reported** *(Note that our evaluation will be based on the laws in effect at the date the relevant action occurred and that the examples described herein are preliminary and illustrative only. The listing is not intended to be fully inclusive and may be subject to further revisions).* |
|---|---|
| (ii) "whether the foreclosure was in accordance with applicable state and federal laws, including but not limited to, the Servicemembers Civil Relief Act and the US Bankruptcy Code;" | 1. SCRA - Observations will be reported for the following: <br>    a. Evidence that a borrower entitled to the same was not afforded the applicable protections under SCRA, including effective interest rate caps where the borrower provided the required notices to GMACM. <br><br> 2. Bankruptcy - Observations will be reported for the following: <br>    a. Evidence that GMACM commenced foreclosure and/or conducted a foreclosure sale while the borrower was protected by the bankruptcy laws from such foreclosure actions; <br>    b. Situations where the borrower was assessed and paid any fees or charges that are disallowed by the bankruptcy protections; and <br>    c. Evidence that GMACM attempted to collect a deficiency after borrower discharged. <br><br> 3. State laws - Observations will be reported for the following: <br>    a. Evidence that pre-foreclosure notice activities or borrower outreach activities were not in compliance with state requirements; <br>    b. Evidence that the final foreclosure judgment in judicial states and comparable date in non-judicial states was inconsistent with supporting data for principal, interest through the date of judgment, pre-acceleration late fees, costs and expenses, attorney's fees, and any deductions/credits/set-offs that borrower was entitled to under the terms of the loan documents; and <br>    c. Evidence of non-compliance with state foreclosure law requirements |
| (iii) "whether, with respect to non-judicial foreclosures, the procedures followed with respect to the foreclosure sale (including the calculation of the default period, the amounts due, and compliance with notice periods) and post-sale confirmations were in accordance with the terms of the mortgage loan and state law requirements;" | 1. As it relates to non-judicial foreclosure activities, observations will be reported for the following: <br>    a. Evidence that pre- notice of sale notice activities or borrower outreach activities were not in compliance inconsistent with state law requirements; <br>    b. Evidence that, without appropriate justification, the period between the legal notifications and foreclosure sales dates were not compliant with state law; and <br>    c. Evidence that the post-sale confirmation was issued and/or executed before all legal requirements were satisfied. |

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

| Consent Order Requirements | Illustrative Observations to be Reported<br>*(Note that our evaluation will be based on the laws in effect at the date the relevant action occurred and that the examples described herein are preliminary and illustrative only. The listing is not intended to be fully inclusive and may be subject to further revisions).* |
|---|---|
| (iv) "whether the foreclosure sale occurred when the borrower had requested a loan modification or other loss mitigation and the request was under consideration; when the loan was performing in accordance with a trial or permanent loan modification; or when the loan had not been in default for a sufficient period to authorize foreclosure pursuant to terms of the mortgage loan documentation and related agreements;" | 1. As it relates to loan modification activities, observations will be reported for the following:<br>  a. Evidence that a modification request was not considered due to a procedural mistake on GMACM's part such as not addressing the borrower's intent to request loss mitigation;<br>  b. Unless otherwise subject to investor direction or guidance, evidence that a loan was performing pursuant to a trial modification, trial payment period, or permanent modification at the time of the foreclosure sale; and<br>  c. Evidence that at the time of foreclosure sale the loan had not been in default status for a sufficient period of time under the terms of the mortgage loan (or modification thereof) or as required by state law to permit GMACM to foreclose. |
| (v) "whether any delinquent borrower's account was charged fees or penalties that were not permissible under the terms of the borrower's loan documents, state or federal law, or were otherwise unreasonable." | a. As it related to charged fees or and penalties, observations will be reported for the following:<br>  a. Evidence that any fees and penalties assessed against the borrower's loan account exceed the amounts or rates disclosed in the loan documents executed by the borrower;<br>  b. Evidence that any fees or penalties actually charged and collected against the borrower's loan account exceeded permissible fees under state or federal law or were otherwise above rates for those fees and penalties "customarily charged;"<br>  c. Evidence that any fees and penalties charged and collected exceeded the guidelines of Fannie Mae, Freddie Mac, Ginnie Mae, investors or other legal agreements, as applicable; and<br>  d. Evidence that a service was not in fact performed for each fee charged and collected against the borrower's account for performance of that service. |

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

| Consent Order Requirements | Illustrative Observations to be Reported<br>*(Note that our evaluation will be based on the laws in effect at the date the relevant action occurred and that the examples described herein are preliminary and illustrative only. The listing is not intended to be fully inclusive and may be subject to further revisions).* |
|---|---|
| (vi) "whether Loss Mitigation Activities with respect to foreclosed loans were handled in accordance with the requirements of HAMP, if applicable, and consistent with the policies and procedures applicable to Mortgage Servicing Company's proprietary loan modifications or other Loss Mitigation programs, such that each borrower had an adequate opportunity to apply for a Loss Mitigation option or program, any such application was handled appropriately, and a final decision was made on a reasoned basis and was communicated to the borrower before the foreclosure sale;" | 1. As it relates to the loan modifications, observations will be reported for the following:<br><br>a. Modification denials were in error (when considered under program and investor guidelines, as applicable)<br>b. Modification applications noted as incomplete were in fact complete and therefore should have been reviewed for a modification<br>c. Required communications to borrowers per program and/or investor guidelines were not performed |
| (vii) "whether any errors, misrepresentations, or other deficiencies identified in the Foreclosure Review resulted in financial injury to the borrower or the owner of the mortgage loan." | Observations related to steps performed within Consent Order requirements (i) - (vi) will be considered in relation to determining whether financial injury to the borrower occurred. |

*Risk-Based Segmentation and Samples*

PwC will identify segments through analytics and screening of the entire population of loans subject to the Foreclosure Review that are associated with potentially escalated risk segments, as discussed above.

Foreclosure actions selected for evaluation in these segments may (subject to consultation with the FRB) be targeted to increase the likelihood of identifying potential cases (if any) of financial harm as a result of GMACM's errors, deficiencies, or misrepresentations.

Attachment A identifies the risk segments and testing requirements specifically approved by the FRB for purposes of the Foreclosure Review.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

Additional segmentation may be performed by PwC during the Foreclosure Review based on findings from our evaluation, further analysis of potential segments and/or issues identified by GMACM. PwC may revise the proposed sample sizes or evaluation for each segment during the Foreclosure Review based on preliminary findings. Proposed changes to segmentation, evaluation approach or the scope of evaluation will be communicated to the Regulators and the Company for input, and any material changes will be subject to an amendment to this Agreement executed by both parties.

*Escalation and Response to Findings*

In respect of findings related to legal requirements, if the finding was not a violation of the applicable state and/or federal law, as determined by the external legal counsel, the finding will not be labeled as a difference.

In evaluating the initial sample results associated with the Review Criteria, certain assumptions will guide the overall evaluation of any preliminary findings - including but not limited to the following:

- Any findings that are determined to be differences will be evaluated to determine whether there are any underlying themes and/or causes associated with the findings (including, but not limited to, multiple findings associated with a particular mortgage product type, multiple findings associated with a particular foreclosure attorney or employee, multiple findings associated with respect to a particular state and/or related state-specific fees/penalties).

  To the extent there are any common characteristics and/or attributes of the initial difference(s), an additional sample may be performed related to the corresponding population of loans with those specific characteristics/attributes identified to determine whether there is a pervasive finding with respect to that population of loans for which specific remediation plans should be determined and put in place. Another alternative would be to perform additional sampling on the population of all items exclusive of the subset of loans with the aforementioned specific characteristics/attributes identified in the initial sample as a means of trying to further isolate the existence of difference(s) to that subset only.

  The approach to be taken for any additional samples will be based on individual facts and circumstances associated with the results of the initial sample and will be discussed with the Company, the external legal counsel, and the Regulators prior to initiating a subsequent sample.

  With respect to loan modification related testing exceptions, we will consider the specific program-prescribed tolerances in assessing testing results and evaluating the need for extended sampling.

  Any additional evaluation will be focused solely on the particular attribute(s) and/or specific Review Criteria for which differences were identified in the initial samples and will not include an evaluation of all the Review Criteria for the additional loans, and any 100% coverage decisions must be agreed to by the Company in writing.

  All findings that are determined to be differences will be reported as such, regardless of the dollar amounts involved. All differences will be further labeled to indicate whether the differences represented errors, misrepresentations, or other deficiencies resulting in financial injury to the borrower or mortgagee, or that did not result in such financial injury.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

*Data Quality*

As noted herein, GMACM is responsible for the accuracy of the Foreclosure Review population and the underlying data provided for segmentation and/or evaluation. However, as described below, PwC will perform certain limited procedures related to the completeness and/or accuracy of data.

- With respect to the Foreclosure Review population or other segmentation populations provided by the GMACM, PwC will:

  o  obtain an understanding of the queries and logic utilized by GMACM;
  o  in certain cases re-perform the queries performed;
  o  evaluate the risk-based segment population data for full inclusion in the Foreclosure Review population; and/or
  o  perform other procedures based upon unexpected or incompatible data attributes.

- For denied HAMP modifications, GMACM will reconcile (and PwC will evaluate GMACM's reconciliation) of the denied modifications in the Foreclosure Review population to GMACM's HAMP reporting that supports the public HAMP data.

- As the risk-based segments are identified primarily on data attributes provided by GMACM, we will compare the key data attributes utilized for risk-based segmentation and screening to available source documentation. This procedure will be based upon a random sample of 60 loans from our base samples (20 from each of the three base samples).

- Given the importance and sensitivity of risk-based segments related to potential SCRA protection, we will attempt to evaluate the SCRA status (including loans with no SCRA indication) against available third party records of military service. Our understanding is that the available third party data source(s) have limited history which may limit the ability to fully test this data attribute without additional data provided by the Department of Defense. PwC is working with the Department of Defense to obtain additional information that may assist in the identification of additional borrowers who may have been covered by SCRA protection but we make no representation as to the final outcome of this effort.

- Given the importance and sensitivity of risk-based segments related to potential bankruptcy protections, we will evaluate certain bankruptcy related data fields for all loans in the base sample (including loans with no bankruptcy indication) to third party tracking of bankruptcy activities (e.g., PACER).

- Given that non-owner occupied loans are excluded from the Foreclosure Review population, in accordance with the Consent Order, we will evaluate certain primary residence and investment property data fields based on executed loan origination documents for a sample of the loans excluded from the Foreclosure Review population based upon data attributes that indicated non-owner occupied status as of the origination date.

Data quality procedures may be expanded if data issues are identified in the procedures above.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

*Key Consent Order Definitions*

The FRB and Office of the Controller of the Currency ("OCC") have issued guidance (*OCC and FRB Guidance - Financial Injury or Other Remediation dated August 29, 2011* (the "OCC/FRB Financial Injury Guidance") that includes, but is not necessarily limited to, relevant definitions with respect to certain key terms within the Consent Order specifics to the Foreclosure Review. As directed by the FRB, PwC will use best efforts so that its determinations as part of the Foreclosure Review, including the "Submission and Evaluation of Post-Consent Order Complaints" section below, are consistent with the guidance specified by the FRB and/or OCC to serve as the basis for such determinations.

*File Evaluation Services*

PwC understands that the Company's external legal counsel will evaluate and establish File Evaluation Requirements for each of the Consent Order Review Criteria based upon legal guidance prepared by them, and such File Evaluation Requirements shall be provided to PwC. We will apply these File Evaluation Requirements to the evaluation populations as discussed above. As discussed above, we will work with the Company's external legal counsel where applicable to assess potential exceptions with respect to whether the finding is an error, misrepresentation or other deficiency that resulted in financial injury to the borrower, investor or owner of the mortgage.

*Fees Testing*

Our understanding is that as a component of testing fees, that the FRB expects that our procedures will include matching certain fees assessed to the borrower to invoices for services performed. For purposes of this element of the fees testing, we will perform this matching to invoices on a sample basis (utilizing the base samples) and not on all loans reviewed with respect to the appropriateness of fees assessed to the borrower.

**Submission and Evaluation of Post-Consent Order Complaints**

Subsequent to the issuance of the Consent Order, the Regulators have provided additional guidance requiring the development of a process for the submission and evaluation of borrower claims and complaints related to foreclosures from the Review Period. The Regulators have provided guidance regarding a borrower outreach process for complaints to be established related to foreclosure actions initiated, pending or completed during the Review Period. The borrower outreach process is to be established by GMACM and meet the objectives set forth by communications from the Regulators.

GMACM has also been instructed by the Regulators to participate in an approach to the borrower outreach and complaint intake process that is coordinated amongst the other servicers that are subject to the Consent Order ("Coordinated Approach"). The Coordinated Approach is being designed by these servicers and is intended to provide consistency in the design and execution of outreach and intake. The Coordinated Approach includes certain processes that will be executed by a common vendor on behalf of all servicers, and other processes are to be executed by each servicer's respective vendor, but in a consistent manner.

The independent consultant's role is to advise on the type of process that GMACM may use for the borrower outreach complaint process and the related ongoing quality control and oversight processes designed to meet the objectives of the Regulators' guidance using the "Advisory Process" (defined below). Specifically, the independent consultant is responsible for (i) advising on the development of the Coordinated Approach together with GMACM, (ii) advising on the development of GMACM-specific implementation of the Coordinated Approach and the aspects of the complaint process that are not covered by the Coordinated Approach, (iii) executing certain procedures to assess GMACM's and their Complaint Intake Vendor's execution of the outreach and intake processes, and (iv)

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

incorporating all applicable claims and complaints into the Foreclosure Review. The independent consultant will also provide observations and recommendations to GMACM and the Regulators designed to achieve the objectives of the notification process.

Pursuant to the Regulators' guidance as discussed herein, the Foreclosure Review must include (i) all complaints received through the borrower outreach process established per this guidance, and (ii) complaints received from borrowers through any channel (e.g. directly by GMACM, attorney generals, state banking agencies and all other regulatory agencies) since April 13, 2011, that are regarding residential mortgage foreclosure actions that were initiated, pending, or completed during the Review Period. Complaints for borrowers in active litigation must be included if they are otherwise in-scope. All in-scope complaints received through the borrower outreach process, from the launch of the outreach process (with a launch target date no later than November 1, 2011) to the cut-off date (120 calendar days from the launch date), will be subjected to the Foreclosure Review.

The borrower outreach process is expected by the Regulators to be a distinct, separate process from GMACM's existing customer service channel. GMACM will employ a Complaint Intake Vendor to assist with portions of the intake process, in line with the Coordinated Approach. The Complaint Intake Vendor will be engaged by and work at the direction of GMACM. PwC will have no contractual relationship with the Complaint Intake Vendor. All complaints received through the borrower outreach process will be logged by the Complaint Intake Vendor or GMACM. Complaints filed through the borrower outreach process cannot be excluded from remedies provided by the Foreclosure Review unless a determination is made that the complaint is not in-scope, a process which will be subject to evaluation by the independent consultant as further discussed below. The independent consultant will obtain from GMACM and evaluate the reporting to the Regulators of the nature and resolution of each complaint received regarding (i) complaints received through GMACM's borrower outreach process, (ii) GMACM's exclusions of complaints from the Foreclosure Review and GMACM's reason for exclusion, (iii) GMACM's resolution of the complaint, and (iv) other data as further described herein.

Our approach for meeting the Regulators' post-Consent Order complaint process is outlined below:

- Notification Process / Borrower Communication
  - o In conjunction with the other servicers, GMACM will design, develop and execute the Coordinated Approach to notify the borrowers associated with the loans identified as responsive to the Consent Order of their right to issue a complaint and the process for doing so. At a minimum, this effort will include (1) direct mail to the best available address for the borrowers, (2) address tracing and re-mailing to those borrowers for whom mail is returned, (3) thorough tracing and reporting of all efforts used to reach borrowers, and (4) public advertising of the complaint process, to potentially reach those borrowers who are not reachable through other means, and (5) through the use of internet websites.

  - o Direct mailings will be conducted by the Complaint Intake Vendor in accordance with the schedule and process outlined by the servicers' Coordinated Approach. The Complaint Intake Vendor will also provide call center support.

  - o With respect to advertisements, the Regulators' guidelines are that the advertising will be included in (1) national newspapers and/or prominent publications and (2) selected local newspapers based on geographical concentration of relevant borrowers. Advertisements will be designed and distributed in accordance with the schedule and process outlined by the servicers' coordinated advertising approach.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

- o GMACM anticipates that certain direct mail to in-scope borrowers could be returned if the borrower's mailing address was the same as that of the related foreclosed property. Accordingly, a skip tracing process is expected to be put in place to handle returned mail and to trace the borrower's current address. It is required that the Complaint Intake Vendor will execute this process. Related to return mail, the Regulators have the expectation that (1) there will be a dedicated post office box for receiving returned mail, (2) the Complaint Intake Vendor will use skip tracing methods to identify the borrower's current address, and (3) multiple attempts will be made to locate and contact the borrower if communication is returned. GMACM will utilize a skip tracing process to be designed as part of the Coordinated Approach.

- o PwC will leverage the Advisory Process (as defined below) to provide input and assist management with GMACM's design and development of the Coordinated Approach, GMACM-specific implementation of the Coordinated Approach, and the aspects of the complaint process that are not covered by the Coordinated Approach, with respect to the notification process .

- o The Regulators expectations with respect to the content of the notification material will include at a minimum, the following information: (1) why the borrower is being contacted, (2) how eligibility for the notification/contact was determined, (3) necessary information that GMACM will need from the borrower upon response, (4) the channels available for the borrower to contact the Compliant Intake Vendor, (5) the timeframe for filing a complaint with the Complaint Intake Vendor/GMACM and, (6) what to expect from the complaint process, including when to expect a response.

- Complaint Support and Intake Process (i.e. Receipt and Processing)
  - o In conjunction with the other servicers, GMACM will develop and execute the Coordinated Approach to receive the complaints and/or claims relevant to the Foreclosure Review, using the Complaint Intake Vendor and GMACM resources that are dedicated to this effort. At a minimum, this effort will include (1) establishing the means for the borrowers to gain clarity about their rights to make a complaint or claim via a website or mail, (2) providing a structured intake process that will allow the borrower to categorize the nature of complaint and provide relevant information and documentation to support the complaint, (3) developing a plan for status reporting to those borrowers who make complaints through this process, (4) providing complete tracking and reporting of all contact with borrowers relating to the Foreclosure Review effort, and (5) developing a means for all complaints received and supporting documents to be incorporated into the Foreclosure Review.

  - o PwC will leverage the Advisory Process (as defined below) to provide input and assist management for GMACM's design and development of the Coordinated Approach and GMACM-specific implementation of the Coordinated Approach, with respect to handling inbound complaints. The process will use the services of the Complaint Intake Vendor to receive complaint submissions, document and store such complaints, filter the nature/extent of the complaints, forwarding/transferring the complaints to GMACM for further analyses and a borrower follow-up process.

  - o PwC will advise GMACM regarding training with respect to the execution of the complaint intake process. This training may include (1) key information to be collected, (2) information on the forwarding / transferring of in-scope complaints from the normal customer service process, and (3) relevant foreclosure complaint scripts, frequently asked questions and/or other materials.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

o   GMACM and the Complaint Intake Vendor will be responsible for executing the complaint intake process and providing updates and tracking to PwC, and conducting its own procedures to test the process. The intake process should provide a consistent set of questions to be answered by the borrowers including, but not limited to (1) current contact information, (2) eligibility determination questions, (3) the specific nature of the complaint, and (4) identification of any previous complaints by the borrower, where applicable.

o   PwC will evaluate the complaint process and will provide observations and recommendations to GMACM and the Regulators designed to achieve the objectives of the complaint process. This may include providing feedback to the customer services representative team related to (1) monitoring a judgmental sample of calls by the customer service representatives to assess the appropriate handling of complaints, (2) assessing performance data such as call wait times and dropped calls to provide information to help GMACM determine the adequacy of technology resources and staffing levels, and (3) providing recommendations to update scripts and procedures for continued improvement of the complaint process.

o   GMACM will also direct the Complaint Intake Vendor to provide updates and tracking to PwC for purposes of PwC's analyses related to the Foreclosure Review.

o   With respect to the complaint resolution process, all complaints will need to be logged by the Complaint Intake Vendor and GMACM, including out-of-scope complaints. For complaints received by the Complaint Intake Vendor, the Complaint Intake Vendor will forward all complaints to GMACM. It is the responsibility of GMACM to evaluate whether the complaint is in-scope for the Review Period and/or any immediate action is necessary with respect to the complaint. PwC will perform evaluation procedures around GMACM evaluation of "out-of-scope" designations. GMACM will be responsible for assembling the documents necessary for the review of any in-scope complaints. GMACM will then forward the in-scope complaints, a summary of GMACM's immediate actions, and the assembled documents to PwC for independent assessment. PwC's assessment will be independent of any assessment previously prepared by GMACM. To the extent any immediate remedial action is required or desired by GMACM, such actions may be taken subject to subsequent independent evaluation by PwC and any additional guidance for the Foreclosure Review remediation plan approved by the Regulators.

o   If the nature of the borrower inquiry does not pertain to in-scope mortgages/foreclosures, such borrower contact will be transferred to GMACM's existing customer service channels via defined transfer/hand-off processes.

o   GMACM will be responsible for documenting and storing all complaints in a database that will be archived per GMACM's existing policies.

o   GMACM will be responsible for conducting any follow-up with a borrower, as necessary. Effective receipt and handling of complaints will necessitate the Complaint Intake Vendor and GMACM to develop program -specific training and scripting, technology configurations and other elements previously discussed herein. PwC will advise GMACM regarding such matters as discussed herein.

• Response

o   All complaints are to receive a written response within the number of days indicated in the written acknowledgement. In the written response, borrowers will be provided information that outlines the results of the analysis that addresses all issues previously raised by the borrower. GMACM will inform the borrower in a written response if remediation is required and will state that a remediation is forthcoming within a specified time period following approval by GMACM.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

- o  GMACM and the Complaint Intake Vendor will be responsible for the infrastructure required to handle the complaints, and it is the Regulators expectation that the infrastructure would include configuration of call center technology, web forms for complaints intake, and a database to document complaints received.

- o  On a monthly basis, GMACM will report to the Regulators, in a standardized format that includes loan level information and aggregate volume tracking, the following data points:  (1) number of complaints received, (2) type or nature of complaints received, (3) number of complaints in-scope and out-of-scope, (4) number of complaints acknowledged, (5) number of complaints in process, (6) number of complaints not yet analyzed, (7) number of complaints responded to, (8) complaints disposition, (9) number of complaints requiring remediation, (10) number of complaints remediated, (11) aging reports as warranted/where applicable, and (12) a comments section to provide other pertinent information, as applicable.

- Incorporation of Written Complaints into the Foreclosure Review Services of the Independent Consultant

  - o  For all complaints received meeting the aforementioned criteria, PwC will perform only the applicable Review Criteria, as described above, that is specific to the nature of the borrower's complaint and evaluate only that specific Consent Order requirement where the nature/form of the complaint is specific to a given Consent Order requirement.  If the complaint is not specific and/or multiple Consent Order requirements are specified in the complaint, an assessment of Review Criteria will be performed.

  - o  In addition to the aforementioned assessment of the applicable Foreclosure Review described previously associated with in-scope complaints, PwC will evaluate GMACM's processes for the categorization and/or filtering of in-scope versus out-of-scope complaints.

  - o  PwC will request any additional documents from GMACM that may be necessary to complete the Foreclosure Review related to the in-scope complaints.  GMACM will be responsible for gathering and/or assembling these documents for PwC's evaluation purposes.

  - o  To the extent any patterns across complaints that have been received are identified, PwC will provide such observations to GMACM and/or the Regulators for further discussion purposes.

  - o  PwC will incorporate the results of the applicable Foreclosure Review associated with the received complaints within the deliverables associated with this engagement

  - o  Quality assurance activities will be extended to the Foreclosure Review associated with the received complaints similar to the quality assurance activities related to the initial base and risk-based sample determinations as previously discussed herein.

Any direct communication with the borrower will be conducted by GMACM or the Complaint Intake Vendor.

Ancillary to the provision of services described above, PwC will use the following "Advisory Process" to advise GMACM on the documents resulting from the Coordinated Approach that will be used by GMACM specific to the complaint process:

(1) Where available, PwC will provide initial generic examples of the document based on an initial understanding of the objectives of the assignment.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

(2) PwC will meet with GMACM management to discuss the sample document or the expected content of the first draft of a document where no sample exists, to firm up PwC's understanding of the objectives, and to discuss how the generic document should be adjusted/drafted to make it GMACM specific. In the discussions, PwC will utilize its experience and knowledge of leading practices to facilitate GMAMC's management in making the decisions, determinations, etc. that GMACM deems necessary for inclusion in the document.

(3) Following these discussions, PwC will provide observations/recommendations on GMACM's document first draft and/or a generic document for GMACM management to review.

(4) GMACM's management and other servicers in the Coordinated Approach will take the initial draft, and apply its in-house expertise and experience to either make those changes that they consider necessary or to provide comments/instructions to PwC regarding such changes.

(5) PwC will analyze the amended document or GMACM's comments/instructions and make observations/recommendations.

(6) Based upon GMACM management's and other servicers in the Coordinated Approach decisions regarding PwC's observations/recommendations, GMACM and other servicers in the Coordinated Approach will incorporate changes into the document.

(7) GMACM management and other servicers in the Coordinated Approach will decide on the final content and finalize.

**Access to Information and Privileged Information**

We understand that we will be required to execute a written agreement with the FRB providing for the FRB's prompt and complete access to documents and information created by or in the possession of PwC with respect to the Foreclosure Review. Pursuant to the applicable regulatory requirements, submission of any information required by the FRB does not waive or otherwise affect any claim of privilege by the Company, the Company's external legal counsel, PwC and/or PwC's external counsel as to any third party. The FRB will maintain requested information as confidential, non-public supervisory information, and will review any request for access to such information in accordance with the requirements of the FRB's applicable rules. Should the FRB receive a governmental or third party subpoena for such information, the FRB will notify the Company, the Company's external legal counsel, PwC and/or PwC's external counsel so that these parties may act to protect any claim of privilege with respect to such information.

**Deliverable**

The sole Deliverable that PwC expects to prepare for and deliver to you under this Agreement is the Foreclosure Report. The Company will review our draft report solely for the purposes of providing comments on factual inaccuracies. The external legal counsel will be provided with the underlying findings from our report in order for the external legal counsel to assess the legal consequences of the findings and to prepare its separate report. It is expected that immediately upon completion, the Foreclosure Report will be submitted to the FRB, Examiner-in-Charge.

In addition, it is expected that the Foreclosure Report will disclose information as to the loans included in the Foreclosure Review that are contained in Ally Bank's Servicing Portfolio, and those disclosures will be furnished to the FDIC by the FRB.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

We will make any workpapers associated with the Foreclosure Review available to the FRB upon written request, which PwC understands will be subject to the FRB's customary examination privilege, and that the provision of such materials to the Regulators will not waive any privilege or related defense that can be asserted by the Company, its affiliates, the Company's and its affiliates' respective external legal counsel, or PwC. In addition, the Regulators will not make reference to PwC or make PwC's workpapers available to the public without our written approval.

You will own the Deliverable except as follows: we own our working papers, preexisting materials and any general skills, know-how, processes, or other intellectual property (including a non-Company specific version of the Deliverable) which we may have discovered or created as a result of the Services. You have a nonexclusive, non-transferable license to use such materials included in the Deliverable for your own internal use as part of such Deliverable. Company prepared documents, files, databases, electronic shared sites, workpapers, materials, and other information, remain the property of the Company, to be used for this Foreclosure Review as well as any other use the Company may elect.

In addition to the Deliverable, we may develop software or other electronic tools to assist us with an engagement. If we make these available to you, they are provided "as is" and your use of these tools is at your own risk.

Notwithstanding anything to the contrary in this Agreement, the Company shall retain ownership of all of its own materials, proprietary information and intellectual property, including such materials, proprietary information or intellectual property used in connection with the Foreclosure Review or in the creation of the Foreclosure Report, and we shall not obtain any right, title or interest in such materials, proprietary information or intellectual property.

**Use of Deliverable**

PwC is providing the Services and the Deliverable solely for your use and benefit pursuant to a client relationship exclusively with you. The Services and the Deliverable are not intended for a third party's use, benefit or reliance and PwC disclaims any contractual or other responsibility or duty of care to others based upon these Services or the Deliverable or advice we provide. Except as described below, neither you nor PwC may discuss the Services with or disclose the Deliverable to any third party, or otherwise disclose the Services or the Deliverable without the other party's prior written consent.

The Company's affiliates, including Ally Bank and/or ResCap will be provided access to our Foreclosure Report solely upon execution of an Access Letter Agreement with PwC in the form attached hereto as Attachment D. These affiliates are bound by the rights, obligations and restrictions as outlined in the Access Letter Agreement.

Notwithstanding anything to the contrary in this Agreement, you and PwC may discuss the Services with, and disclose the Deliverable to the following: (i) relevant regulatory bodies with jurisdiction over you, or (ii) the Company's external legal counsel retained in connection with the Foreclosure Review, in each case without prior written consent. The Company and PwC may provide the Deliverable to the relevant regulatory bodies, which will be granted full and timely access to the Deliverable (and PwC's related workpapers upon written request), which PwC understands will be subject to the FRB's and other relevant regulator's customary examination privilege and that the provision of such materials to the FRB or other relevant regulators will not waive any privilege or related defense that can be asserted by the Company, its affiliates, their respective external legal counsel, or by PwC.

You may disclose any materials that do not contain PwC's name or other information that could identify PwC as the source (either because PwC provided a Deliverable without identifying information or because you subsequently removed it) to any third party if you first accept and represent them as your own and you make no reference to PwC in connection with such materials.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

You shall indemnify PwC and the Beneficiaries (defined below) against any and all third party claims (including, without limitation, claims by the Company's external legal counsel and all other parties that may have access to the Foreclosure Report) and damages arising from or relating to the Services or the Deliverables, except to the extent finally determined to have resulted from PwC's gross negligence or intentional misconduct relating to such Services and/or the Deliverable.

## Timeline

The time to complete our fieldwork and prepare our Foreclosure Report will be dictated by the sample sizes, the number of complaints received, additional guidance from the Regulators, the Company's ability to provide the necessary, complete and accurate documentation and information in a timely manner, and the ability of the Company's external legal counsel to complete the relevant legal analysis and provide the legal conclusions that may be required for PwC to complete its performance of the Services.

PwC shall not be responsible for any delay, cost increase or other consequences due to the Company's failure to perform any of its obligations under this Agreement. Any PwC deadline that is affected by a the Company default or factors beyond PwC's reasonable control shall be extended by an amount of time equal to the length of such failure plus an additional period of time to compensate for such default.

## Confidentiality

"Confidential Information" means non-public information provided by you to us or by us to you in connection with this engagement. All terms of this Agreement, including but not limited to fee and expense structure, constitute Confidential Information. Confidential Information does not include any information which (i) is rightfully known to the recipient prior to its disclosure and not subject to any confidentiality obligation to the other party or its affiliates; (ii) is released by the disclosing party without violation of this Agreement to any other person or entity (other than the Regulators) without restriction; (iii) is independently developed by the recipient without use of or reliance on Confidential Information; or (iv) is or later becomes publicly available without violation of this Agreement or may be lawfully obtained by a party from a non-party who does not owe any confidentiality obligation to the other party or its affiliates.  Each party to this Agreement will protect the confidentiality of Confidential Information that it receives from the other party or on the other party's behalf, and will not disclose such Confidential Information except to perform this Agreement and/or as required by applicable law, statute, rule, regulation or professional standard, without the other party's prior consent.  If disclosure is required by law, statute, rule or regulation (including any subpoena or other similar form of process), or by professional standards, the party to which the request for disclosure is made shall (other than in connection with routine supervisory examinations by regulatory authorities with jurisdiction and without breaching any legal or regulatory requirement) provide the other party with prior prompt written notice thereof – to the extent not legally prohibited – and, if practicable under the circumstances, allow the other party to seek a restraining order or other appropriate relief.

## Your Responsibilities

Our role is advisory only. You are responsible for all management functions and decisions relating to this Agreement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You are also responsible for the results achieved from using the Services or the Deliverable, and it is your responsibility to establish and maintain your internal controls. You will designate a competent member of management to oversee the Services. We expect that you will provide timely, accurate and complete information and reasonable assistance, and we will perform the engagement on that basis. In addition:

*   GMACM will provide all necessary population information in order to facilitate sample selection during the engagement.

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

- For those foreclosure actions selected in the samples, GMACM will provide all documentation necessary to evaluate the action against the Review Criteria - and such documentation will be accurate and complete in all material respects.
- GMACM is responsible for any potential resolution of findings identified as part of the engagement.
- GMACM will provide sufficient facilities and computing resources for PwC to execute its assigned tasks. This may include, but is not limited to, computers, desks, telephones and networking facilities.
- All assessments will assume that the documentation presented to the PwC team prior to the initiation of work efforts is the only available documentation, except as otherwise agreed to by the parties. All assessments will be performed based on the point in time of the initiation of our Services.

**Document retention**

We will maintain and retain the final evidential matter supporting the Deliverable (i.e., electronic and hard copy workpapers) in a manner consistent with our professional standards. GMACM will maintain the supporting documentation for the Foreclosure Review in a manner consistent with its document retention policies and procedures. The Company will segregate such materials and provide for appropriate access controls to maintain the integrity of the documents provided for the Foreclosure Review.

**Other**

The Company and PwC agree that for purposes of this Agreement, Mark Weintraub and Joe Pensabene are the designated Engagement Managers for Ally and GMACM, respectively.

- This Agreement does not contemplate the proposed 50 state Attorney General / Federal Agencies Joint Term Sheet ("Term Sheet"). Parties agree and understand that changes in scope may be required due to new or evolving requirements imposed by the Joint Term Sheet, changes in the Consent Order, or changes in Matters Requiring Attention ("MRAs") or Matters Requiring Immediate Attention ("MRIAs").
- PwC will make best effort to attend steering committee meetings with Ally, the Company, and affiliate personnel and the Company's external legal counsel and PwC will do its best to collaborate and cooperate with other consultants.

**Fees and Expenses**

Our fee estimate is based on the time required by our professionals to complete the engagement. Individual hourly rates vary according to the experience and skill required. PwC's fees are based on the time required by the individual specialists assigned to the engagement. Our fees for the above work will be billed on a time and materials basis which will not exceed the following rates:

| Hourly Rates | |
|---|---|
| **Title** | **Rate** |
| Partner | $630 |
| Managing Director | $610 |
| Senior Manager/Director | $470 |
| Manager | $370 |
| Senior Associate | $300 |
| Associate | $235 |

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

All changes with regard to scope and estimated fees will be documented by Change Order. PwC also will
bill for reasonable out-of-pocket expenses and internal per-ticket charges for booking travel and will
comply with Ally's U.S. Contractor Expense Reimbursement Policy.

*Invoicing*

A retainer in the amount that approximates two month's projected fees and expenses will be paid to PwC. This
retainer will be maintained and replenished based upon actual fees and expenses which will be billed on a regular
basis and applied against the retainer. The initial retainer amount will be $10 million.

Invoices will be mailed to the address below for processing:

> GMAC ResCap
> 1100 Virginia Drive
> Mail Code: 190-FTW-K50
> Fort Washington, PA 19034

Since invoices must go through the scanning process, standard or expedited mail is the quickest means of
submitting an invoice for payment.

Invoices must include the following pieces of information:

- Invoice number and date
- The Client LOB: GMAC Mortgage, LLC and Client contact name: Mark Weintraub.
- If applicable, the Ally Purchase Order (PO) number. For a PO, reference the PO line item detail and
  description, and
- Sufficient line item detail to describe the items for which payment is being requested. (Names, titles,
  dates, hours of performance on services for each assigned individual during the invoicing period and
  detailed information relative to the expenses related to each).

There will be no change in scope without express written authorization by the Company. Any changes or
modification to this Agreement will be completed through execution of a change order form in a similar
format to Attachment C (Change Order Form), attached hereto. Upon execution of a change order by both
parties, the changes will be deemed to be incorporated into the Agreement.

**Termination and Dispute Resolution**

Any party to this Agreement may terminate the Services by giving written notice to that effect. Upon termination
each party will return or irretrievably destroy, at the election of the other party, all Confidential Information of the
other party that it has in its possession, including any information stored on its own equipment, and upon request
provide the other party with a certificate attesting the destruction. Notwithstanding anything to the contrary in this
Section or the Agreement, PwC may keep its working papers, and each party may retain such copies of the
Deliverable and the other party's Confidential Information to comply with its document retention policies or in
accordance with applicable law, rule, regulation or professional standards. Any copies of the other party's
Confidential Information so kept shall be retained in accordance with the terms of this Agreement. Further, the
parties will work to ensure the termination of Services or transfer of Services to another service provider selected
by the Company (which may include the Company) is orderly and is non-disruptive to the business continuation of

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C.
§552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in
accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

each party. Notwithstanding the foregoing, if the Company terminates the Agreement without cause, the Company will remain obligated to pay for all undisputed fees and expenses incurred prior to the effective date of termination. PwC will furnish to the Company the latest version of any work product in progress upon the effective date of termination, in the format mutually agreed to by the parties. The Company acknowledges and agrees that any such drafts or works in progress are provided "as is" and are solely for the Company's convenience. PwC expressly disclaims any and all responsibility and liability with respect to any drafts or works in progress provided to the Company, and such drafts or works in progress may not be relied upon or attributed to PwC unless PwC specifically reduces such draft to a final writing.

Any unresolved dispute relating in any way to the Services or this Agreement shall be resolved by arbitration. The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect. The arbitration will be conducted in Philadelphia, Pennsylvania, before a panel of three arbitrators. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award damages inconsistent with the Limitations on Liability provisions below. Judgment on any arbitration award may be entered in any court having jurisdiction. All aspects of the arbitration are subject to the confidentiality restrictions of this Agreement. Except for a party's express indemnification obligations hereunder, You and we accept and acknowledge that any demand for arbitration arising from or in connection with the Services must be issued within one year from the date the aggrieved party became aware or should reasonably have become aware of the facts that give rise to the alleged liability and in any event no later than two years after any such cause of action accrued.

This Agreement and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that require the laws of another jurisdiction to apply.

## Limitations on Liability

Except (i) to the extent finally determined to have resulted from a party's gross negligence or intentional misconduct or (ii) for a party's indemnification obligations hereunder, each party's aggregate liability to pay damages for any losses incurred by the other party as a result of breach of contract, negligence or other tort, regardless of the theory of liability asserted, is limited in the aggregate to no more than the total amount of fees paid or payable to PwC under this Agreement. In addition, except for a party's indemnification obligations hereunder, neither party will be liable to the other in any event for lost profits, consequential, indirect, punitive, exemplary or special damages. Also, we shall have no liability to you arising from or relating to third-party hardware, software, information or materials selected or supplied by you.

## Other PwC Firms

PwC is the U.S. firm of the global network of separate and independent PricewaterhouseCoopers firms (exclusive of PwC, the "Other PwC Firms"). During its performance of the Services, PwC may (i) draw on the resources of and/or subcontract to its subsidiaries, the Other PwC Firms, and/or third party subcontractors or (ii) draw on the resources of third party contractors, which provide PwC internal business, administrative, technical, outsourcing, regulatory compliance functions or other "back office" support in connection with the Services, in each case of (i) or (ii), within or outside of the United States (and in each case of (i) or (ii), a "PwC Subcontractor").

Notwithstanding anything to the contrary in this Agreement, the Company agrees that PwC may provide information PwC receives in connection with this Agreement to the PwC Subcontractors for such purposes. PwC will be solely responsible for the provision of the Services (including those performed by the PwC Subcontractors) and for the protection of the information provided to the PwC Subcontractors. The PwC Subcontractors and the respective partners, principals and employees of PwC and the PwC Subcontractors (collectively the "Beneficiaries")

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

shall have no liability or obligations arising out of this Agreement. The Company agrees to: (a) bring any claim or other legal proceeding of any nature arising from the Services against PwC and not against the Beneficiaries; and (b) ensure or procure that the any affiliates or subsidiaries of the Company do not assert any such claim or other legal proceeding against PwC or the Beneficiaries. If any of such affiliates or subsidiaries receive Services or the benefit of the Services under this Agreement, the Company agrees to provide a copy of this Agreement to such affiliates or subsidiaries, and the Company will notify them that although the Beneficiaries may interact with them, the delivery of the Services is governed by the terms of this Agreement (including the liability limitations herein), and the affiliates or subsidiaries should notify the Company of any disputes or potential claims arising from the Services. While PwC is entering into this Agreement on its own behalf, this section also is intended for the benefit of the Beneficiaries.

## Other Matters

PwC is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Depending on the nature of the Services we provide, non-CPA owners may be involved in providing Services to you now or in the future.

No party to this Agreement may assign or transfer this Agreement, or any rights, obligations, claims or proceeds from claims arising under it, without the prior written consent of the other party, and any assignment without such consent shall be void and invalid. If any provision of this Agreement is found to be unenforceable, the remainder of this Agreement shall be enforced to the extent permitted by law. If we perform the Services prior to both parties executing this Agreement, this Agreement shall be effective as of the date we began the Services. You agree we may use your name in experience citations and recruiting materials. This Agreement supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing through an amendment to this Agreement or a change order, in each case signed by both parties.

By entering into this Agreement, you are binding your subsidiaries and affiliates to the extent that you have the authority to do so. We disclaim any contractual or other responsibility or duty of care to any other subsidiaries or affiliates.

\* \* \* \* \*

We are pleased to have the opportunity to provide Services to you.   If the Services and terms outlined in this Agreement are acceptable, please sign and return one copy of this Agreement in the space provided.

Very truly yours,

PricewaterhouseCoopers, LLP

Date: February 1, 2012

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

**ACKNOWLEDGED AND AGREED:**

**GMAC MORTGAGE, LLC**

**Signature of client official:**

**Please print name and title:  Steven M. Abreu, President, GMAC Mortgage LLC**

**Date: February 1, 2012**

**ALLY FINANCIAL INC.**

**Signature of client official:**

**Please print name and title:  Barbara A. Yastine, Chief Administrative Officer, Ally Financial Inc**

**Date: February 1, 2012**

**ACKNOWLEDGED AND AGREED:**

**INDEPENDENT CONSENT ORDER COMPLIANCE COMMITTEE
OF RESIDENTIAL CAPITAL, LLC ("ResCap Committee")**

**BY:**

**Pamela West, on behalf of the ResCap Committee**

**INDEPENDENT CONSENT ORDER COMPLIANCE COMMITTEE
OF Ally Financial Inc. ("Ally Committee")**

**BY:**

**John J. Stack on behalf of the Ally Committee**

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C.
§552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in
accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

ACKNOWLEDGED AND AGREED:

GMAC MORTGAGE, LLC

Signature of client official: _____

Please print name and title: Steven M. Abreu, President, GMAC Mortgage LLC

Date: February 1, 2012

ALLY FINANCIAL INC.

Signature of client official: _____

Please print name and title: Barbara A. Yastine, Chief Administrative Officer, Ally Financial Inc

Date: February 1, 2012


ACKNOWLEDGED AND AGREED:

INDEPENDENT CONSENT ORDER COMPLIANCE COMMITTEE
OF RESIDENTIAL CAPITAL, LLC ("ResCap Committee")


BY:_____

Pamela West, on behalf of the ResCap Committee


INDEPENDENT CONSENT ORDER COMPLIANCE COMMITTEE
OF Ally Financial Inc. ("Ally Committee")


BY:_____

John J. Stack on behalf of the Ally Committee

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C. §552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

**ACKNOWLEDGED AND AGREED:**

**GMAC MORTGAGE, LLC**

**Signature of client official:** _____

**Please print name and title: Steven M. Abreu, President, GMAC Mortgage LLC**

**Date: February 1, 2012**

**ALLY FINANCIAL INC.**

**Signature of client official:** _____

**Please print name and title: Barbara A. Yastine, Chief Administrative Officer, Ally Financial Inc**

**Date: February 1, 2012**

**ACKNOWLEDGED AND AGREED:**

**INDEPENDENT CONSENT ORDER COMPLIANCE COMMITTEE
OF RESIDENTIAL CAPITAL, LLC ("ResCap Committee")**

BY: _Pamela West_

**Pamela West, on behalf of the ResCap Committee**

**INDEPENDENT CONSENT ORDER COMPLIANCE COMMITTEE
OF Ally Financial Inc. ("Ally Committee")**

**BY:** _____

**John J. Stack on behalf of the Ally Committee**

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C.
§552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in
accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.

**ACKNOWLEDGED AND AGREED:**

**GMAC MORTGAGE, LLC**

**Signature of client official:** _____

**Please print name and title: Steven M. Abreu, President, GMAC Mortgage LLC**

**Date: February 1, 2012**

**ALLY FINANCIAL INC.**

**Signature of client official:** _____

**Please print name and title: Barbara A. Yastine, Chief Administrative Officer, Ally Financial Inc**

**Date: February 1, 2012**

**ACKNOWLEDGED AND AGREED:**

**INDEPENDENT CONSENT ORDER COMPLIANCE COMMITTEE
OF RESIDENTIAL CAPITAL, LLC ("ResCap Committee")**

**BY:** _____

**Pamela West, on behalf of the ResCap Committee**

**INDEPENDENT CONSENT ORDER COMPLIANCE COMMITTEE
OF Ally Financial Inc. ("Ally Committee")**

**BY:** _____

**John J. Stack on behalf of the Ally Committee**

The contents of this document contain data protected from disclosure under U.S. Freedom of Information Act 5 U.S.C.
§552(b)(4), (5), (6) and/or (8) and shall not be released to a third party without providing the submitter with written notice in
accordance with Executive Order 12,600 so that the submitter may consider taking further action to prevent disclosure.