Joseph A Connor III
PO Box 1474
Cobb, CA  95426
Tel: 707-809-7093
e-mail: jaconnor3@netzero.net

Pro Se Movant

Hearing Date: 10 October 2012, 10am
Return Date: 10 October 2012
Objection Deadline: 28 September 2012



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re:                                          | Chapter 11                |
|-------------------------------------------------|---------------------------|
| RESIDENTIAL CAPITAL, LLC (ResCap), *et al.*     | Case no. 12-12020 (MG)    |
| Debtors                                         | Jointly Administered      |

**MOTION I SEEKS A DECLARATORY RULING PURSUANT TO 28 US CODE 2201 AND FRCP RULE 57 AS TO POSSIBLE VIOLATIONS OF THE AUTOMATIC STAY IN BANKRUPTCY 11 US CODE, 362(a)**

**MOTION II ASKS THE BANKRUPTCY COURT TO SEVER DEFENDANTS PROTECTED BY THE AUTOMATIC STAY FROM THOSE NOT SO PROTECTED, IN A WASHINGTON STATE COURT ACTION, PURSUANT TO FRCP RULE 19 (a) & (b) AND FRCP RULE 21; WA CT RULES 19 & 21**

I. <u>JURISDICTION AND VENUE</u>

1. The bankruptcy Court has jurisdiction over this matter pursuant to

    28 US Code, 1334.

2. The Movant advances these motions as core proceedings under

    28 U.S.C., 157(b)(2)(G & O).

3. Venue is proper under 28 US Code, 140

3

II. MOTION I BACKGROUND

1. GMAC MORTGAGE, LLC and some 50 other affiliates and subsidiaries filed a petition for relief under Chapter 11 of the US Bankruptcy Code on 14 May 2012.

2. The Movant, Joseph A Connor III, is the Plaintiff in Case no. 11-2-00098-6 filed in Superior Court, Ferry County, WA on 23 October 2011 and amended on or about 6 February 2012.

3. Defendants in this case are Ally Financial, Inc (AFI), GMAC Mortgage, LLC (GMAC), Executive Trustee Services, LLC (ETS), Karen Balsano (ETS employee), Mortgage Electronic Registration Systems, LLC (MERS), and LSI Title Co., Inc.

4. This case arose out of an earlier settled case between Joseph A Connor III (Plaintiff) and the Defendants named in #3 above. Connor sued said Defendants for breach of the settlement agreement in that case.

5. As of 14 May 2012, all Defendants in this case had been served. MERS has not answered the suit as to either claim, but the remaining Defendants answered Plaintiff's second claim with a Summary Judgment Motion. No answer to the first claim has been forthcoming from any Defendant.

6. Plaintiff asked the Court for placement of a Notice of Pendency on the property in question. Defendants took umbrage at Plaintiff's Lis Pendens motion; demanded it be withdrawn; Plaintiff refused, and Defendants moved the Court for CR11 sanctions.

7. Defendants also found Plaintiff's second claim improper and demanded it be withdrawn. Plaintiff refused and Defendants once again moved the Court for

4

CR 11 sanctions.

8. In mid-March 2012, Plaintiff sent Defendant GMAC Mortgage, LLC a first set of Interrogatories. GMAC's answers were not satisfactory to Plaintiff and a Motion to Compel production of documents and answers more satisfactory to Plaintiff was forthcoming, but other matters and events overtook the process.

9. This was the state of play in the case when GMAC et al. sought relief from the Bankruptcy Court on 14 May 2012.

10. On 18 May 2012, the Plaintiff informed the Court in an open hearing that GMAC Mortgage, LLC had sought relief under Chapter 11 of U.S.C. 11, (exhibit 1) and that on information from Defendants' counsel, Mr Fig (exhibit 2), Plaintiff's claims against GMAC were stayed.

11. On 4 June 2012 Plaintiff filed a Suggestion of Bankruptcy with the Court (exhibit 3).

12. On 11 June 2012 Plaintiff sought clarification and instructions from the Court as to the operation of the Automatic Stay as it impacted his case. This request, filed with the Court Clerk, has been ignored by the Court (exhibit 4).

13. The Plaintiff is unaware of any efforts by Defendants' counsel, Mr Fig, to inform the Court as to possible conflicts between the Court's actions and the Federal Bankruptcy Laws. See In re: Dyer, F.3d 1178, 1191-92 (9th Cir. 2003) on counsel's affirmative duty to remedy violations of the Automatic Stay; also Sternberg v. Johnston, 582 F. 3d 1114, 1124 (9th Cir. 2004) and Eskanos & Alder v. Leetien, 309 F. 3d at 1210, 1213 (9th Cir. 2002) on willful Automatic Stay violations.

14. The Plaintiff's case appears not to fall within any of the exceptions to

5

the Automatic Stay as listed in US 11, 362(b).

15. According to the record (exhibit 1) the judge in Plaintiff's case, Allen Nielson, made no effort to distinguish Defendants protected by the stay from those not so protected, despite Plaintiff/Movant's request that he do so (exhibit 4). He made rulings in Plaintiff's case after 14 May 2012 with no indication which Defendants fell under said rulings and which did not. Mr Fig also made no effort to inform the Court as to who he was appearing for, or to distinguish the debtors in any matters before the Court after 14 May 2012.

16. Actions of the Ferry County Superior Court, State of Washington, that are at issue:

    (a) On 18 May, Judge Nielson of the Ferry County Superior Court, denied Plaintiff's Motion to Allow Placement of a Lis Pendens (which had been withdrawn) and granted Defendants' Motion for Sanctions in the amount of $1,500.00 (exhibit 5).

    (b) On 8 June 2012, Judge Nielson of the Ferry County Superior Court granted Defendants' Motion for Summary Judgment as to Plaintiff's second claim, and granted Defendants' Motion for Sanctions in an unspecified amount (exhibit 6).

    (c) On 31 August 2012, Defendants will present an order for judgment against Plaintiff in the amount of $4,923.50. This sum represents the total of two sanctions awards against Plaintiff (exhibit 7).

17. The Plaintiff was heard only on his Motion to Vacate Sanctions, as he had elected not to appear at further hearings for concern his appearance, in and of itself, would constitute the continuation of litigation against debtors, a violation of the Automatic

6

Stay. Plaintiff informed the Court of same (exhibits 3 & 4), but having received no guidance from the Court he declined to be lured into Automatic Stay violations by Defendants' attorneys.

18. 11 U.S. Code, 362(a) provides:

(a) Except as provided in subsection (b) of this section, a petition filed under 301, 302, or 303 of this title operates as a **stay**, applicable to all entities, of (1) the commencement or continuation, including the issuance or of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

19. Issues of which Defendants are protected by the Automatic Stay, which Defendants may be protected by the Stay, and which are not so protected, are taken up in the Motion II BACKGROUND and ARGUMENTS sections of this document, specifically, <u>V. MOTION II BACKGROUND</u>, paragraphs 4, 5(a), (b) and (c), 6(a) and (b); and all paragraphs of <u>VI. MOTION II ARGUMENTS</u>, and Movant asks the Court to incorporate these sections herein by reference.

III. <u>MOTION I CASE LAW</u>

1. In <u>Pope v. Manville Forest Products Corp</u>, 778 F. 2d 238 (5th Cir. 1985), the Court said:

"First, if either of the parties takes any step to obtain dismissal, such as a Motion to Dismiss or a Motion for Summary Judgment, there is clearly a continuation of the judicial proceeding. Second, in the more technical sense, just the entry of an order of dismissal, even if entered *sua sponte*, constitutes a judicial act toward the disposition of the case and hence may be construed as a 'continuation' of a judicial proceeding. Third, dismissal of a case places the party dismissed in the position of being stayed to continue the judicial proceeding, thus effectively blocking his right to appeal."

7

2. The reasoning in Pope was followed in <u>Seattle-First Nat'l Bank v. Westwood Lumber</u>, 59 Wn. App. 344; 796 P. 2d 790, (1990). The Court distinguished a voluntary nonsuit action from offending dismissal actions that constitute violations of the automatic stay in bankruptcy.

3. Pope was also followed in <u>United States Abatement Corp.</u>, 150 B.R. 381 (1993) and in <u>Robert v. Bell Helicopter Textron Inc</u>, 2002 U.S. Dist, LEXIS 9904, (N.D. Texas, May 31, 2002).

4. The Pope arguments can also be found in <u>Ellis v. Consolidated Diesel Electric Corp</u>, 894 F. 2d 371 (10th Cir. App. Ct., 1990). In Ellis, the Court said:

> " While the automatic stay on judicial proceedings operates to insure that a 'debtor is given a breathing spell from his creditors', the fact that judgment here was entered in favor of the debtor does not change the outcome. As one court noted, "whether a case is subject to the automatic stay must be determined at its inception." <u>Assn of St. Croix Condo Owners v. St. Croix Hotel</u>, 682 F. 2d 446, 449 (3d Cir. 1982). **The operation of the automatic stay should not depend upon whether the district court finds for or against the debtor."**

5. See also <u>Soares V. Brockton Credit Union</u>, 107 F. 3d 969 ( 1st Cir. 1997), which cites Ellis in addressing the difference between actions of the Court that are 'ministerial' and those acts constituting the continuation of a judicial proceeding.

6. In <u>Hillis Motors Inc v. Hawaii Auto Dealers Assn</u>, 997 F. 2d 581, 585, (9th Cir. 1993), the Court held that "the Automatic Stay freezes the status quo by precluding and nullifying post-petition actions in non-bankruptcy fora."

7. In a recent written opinion of this Court in the instant bankruptcy case, (doc #1021— 7 August 2012), the Court denied Aurora Bank's Motion to Lift the Automatic Stay so that it could pursue its claims against the debtors. The Court, following

8

*Sternberg,* went on to say:

> "The stay is not meant, however, to be abused by a debtor to pursue its creditors, as more litigation is hardly consistent with the concept of a breathing spell for the debtor. <u>Sternberg v. Johnston</u>, 582 F. 3d 1114, 1124 (9th Cir. 2009). The stay is a shield not a sword, that should help the debtor deal with his bankruptcy for the benefit of himself and his creditors alike, <u>Id.</u>"

> The Court added further, "the debtors may not pursue their claims for declaratory relief against Aurora", adding, "We have never said the stay should aid the debtor in pursuing his creditors..."

## IV. <u>MOTION I -- PURSUANT TO 28 US CODE, 2201 AND FRCP RULE 57</u>

WHEREFORE, the Movant seeks from this Court a Declaratory Ruling that addresses actions of the Ferry County, WA Superior Court, actions contained in paragraph 16 (a), (b) and (c) on page six (6) of this pleading. The Movant asks this Court to rule on whether or not these actions are violations of the Automatic Stay in Bankruptcy as set forth in 11 U.S.C. 362(a).

## V. <u>MOTION II BACKGROUND</u>

1. The Movant, Joseph A Connor III, is the Plaintiff in Case no. 11-2-00098-6, now pending before the Superior Court, Ferry County, WA. This suit, its attachments and other evidence accumulated thus far by Plaintiff is included herein as exhibit 8.

2. Barring the unforeseen, Plaintiff's suit in Ferry County is ready for trial. No further discovery is contemplated or desired. Again, barring the unforeseen, exhibit 8 constitutes the Plaintiff's case in its entirety at this point.

3. On 14 May 2012, Defendants GMAC Mortgage, LLC and ETS (and some 50 affiliates and subsidiaries) sought relief under 11 U.S.C., Chap. 11, thereby staying

9

Plaintiff Connor's claims against them.

4. Connor has no good cause for asking this Court to lift the Automatic Stay or modify it in any way so that he may proceed with his claims against defendant debtors in state court. Connor's want of good cause to lift/modify the Automatic Stay occasions this Motion to Sever Plaintiffs claims against those defendants protected by the Automatic Stay from his claims against those defendants without such protection.

5. Defendants directly/indirectly protected by the Automatic Stay ("DEBTORS GROUP")—

   (a) GMAC Mortgage LLC and ETS are named debtors in case no. 12-12020 (MG) now before this Court.

   (b) On Connor's information and belief, Karen Balsano worked for ETS when Plaintiff's original suit was filed in Ferry County, WA. In Connor's experience, Ms Balsano was the public face of ETS, the authorized signatory on all documents sent to Connor. All notices and action correspondence bore her signature as the officer authorized to issue such notices and take such actions. As an ETS employee whose job it was to initiate and prosecute home foreclosures, place notices in local newspapers, prepare paperwork for Sheriff's sales, generate documents for transferring Deeds of Trust, appointment of trustees, etc., she was/is a 'Key Employee' and the identity of interests between ETS and herself appears extensive. It's difficult to believe that any employee who so publically represented her employers and incurred the sorts of liabilities she must have incurred, would not be protected against legal claims. Ms Balsano was almost certainly indemnified by ETS (a subsidiary of GMAC Mortgage LLC), thus a

judgment against her would be a judgment against ETS and/or GMAC Mortgage. Additionally, all her legal bills have been paid by GMAC Mortgage, LLC, debtor in bankruptcy. There is no indication that GMAC has sought reimbursement from her (exhibit 9). A judgment against Karen Balsano would automatically result in indemnification liability against the debtors (See Movant's Declaration).

(c) On Connor's information and belief, LSI Title Agency, Inc was indemnified by GMAC. The document submitted herein as exhibit 10, <u>Beneficiary's Instructions to Trustee</u>, was agreed to between the parties in the Settlement Agreement from the previous suit between Connor and the Defendants, but was never recorded in Ferry County, WA for reasons Connor has been unable to ascertain. Nonetheless, the Court will note that within the document, GMAC indemnifies LSI Title Agency. Thus, like Ms Balsano, a judgment against LSI would automatically result in indemnification liability against GMAC Mortgage (See Movant's Declaration).

(d) AFI is a non-debtor co-defendant, but one with an uncertain status on the Plaintiff's view. The Movant understands that the Court may be disinclined to sever AFI from the debtors group prior to the findings of the Court Appointed Examiner, or for other reasons unknown to Movant. AFI has therefore been tentatively included in the debtors group.

6. Defendant not protected by the Automatic Stay—

MERS is a non-debtor co-defendant. MERS has not responded to either of Plaintiff's claims for relief in Ferry County, and it was not a party to the Summary Judgment

11

Motion granted the other Defendants by the Ferry County Court. MERS did not make an appearance in Connor's Ferry County, WA case until 11 May 2012 when Mr Fig commenced representing them. There were no joinder in motion filings by attorneys in any motions before the Ferry County Superior Court on behalf of MERS (exhibit 10).

7. All Defendants are held jointly and severally liable in Connor's suit in Ferry County, WA.

## VI. MOTION II ARGUMENTS

1. FRCP 21 permits a court to add or drop parties to an action when doing so would serve justice and aid disposition of the litigation. German V. Federal Home Loan Mortgage Corp., 896 F. Supp., 1385, 1400 (SDNY 1995). The decision whether to sever a party or claim from an action is within the broad discretion of this Court. Id.; 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, para, 1689 (1988).

2. The Movant is aware that a motion to sever pursuant to Rule 21 entails the Court's consideration as to whether the severed party is indispensable to the litigation, and that several factors enter into such consideration. Movant also understands that severance of bankrupt defendants (and others that may be protected by the Automatic Stay) is proper unless such parties are indispensable.

3. FRCP 19 establishes what it means to be an indispensable party. What emerges from the rule is a two-step inquiry for determining whether an action must be dismissed for failure to join an indispensable party. See Associated Dry Goods Corp. v. Towers Financial Corp., 920 F. 2d 1121, 1123, (2d Cir. 1990);

12

<u>Bank of America Nat'l Trust & Savings Assn. v. Hotel Rittenhouse Assocs.,</u>

844 F. 2d 1050, 1053-4 (3d Cir. 1988).

4. In the first of these two steps, Rule 19(a) provides that a party is necessary and therefore must be joined if:

> (1) In the person's absence complete relief cannot be accorded among those already parties, or
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the the person's ability to protect that interest or (ii) leaves any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

5. Re: Rule 19(a)(1), technically, GMAC Mortgage and ETS are insolvent, but MERS and AFI are both solvent, going concerns, well able to afford the Plaintiff complete relief.

6. Re: Rule 19(a)(2), Plaintiff's lawsuit is now a claim against GMAC's estate. If the debtors have any interest in said claim it is for them to say so. But Connor's severance motion, if successful, would take one more claim against GMAC et al off the table. The debtors group would benefit.

7. Re: Rule 19(a)(2)(ii), there is no suggestion as yet that any party would be subject to risks of multiple obligations. The Movant agrees herein to limit any relief to that prayed for in the amended complaint. Should he ultimately prevail against MERS and AFI, or in the alternative, MERS alone, or settle with one or both, Connor agrees herein to stipulate to dismiss (with prejudice) any outstanding claims against the severed debtors group. In the meantime, however, such claims are

13

expressly preserved in full.

8. At this point, the Movant suggests to the Court that the debtors group does not satisfy the preliminary requirements as to what constitutes an indispensable party as defined in Rule 19(a). *A fortiori*, the debtors group are not indispensable parties under Rule 19(b). See Associated Dry Goods, 920 F. 2d at 1123 (Unless Rule 19(a)'s threshold standard is met, the court need not consider whether dismissal under Rule 19(b) is warranted.); Bank of America Nat'l Trust & Savings Assn., 884 F.2d at 54.

9. For some time, the Movant/Plaintiff held it unlikely he could prosecute his claims without GMAC. But reconsideration has persuaded him otherwise. Connor tried (and failed) via his second claim to force GMAC to 'prove up' its connection to his mortgage loan—as required in the Uniform Commercial Code (UCC) when a party claims to hold the appropriate documents showing a connection, but cannot produce them. GMAC appears nowhere on the original Note and Deed of Trust. If the Note was ever properly transferred to GMAC, there is no proof of such transfer. There is no extant proof of a connection between Connor's loan and any servicing agreement in the possession of GMAC. In evidentiary terms there was nothing between Connor's loan and GMAC but air. GMAC has conducted itself as a party in interest during the course of its litigation history with Connor, but there is no reliable evidence that it is such a party, or indeed ever was. This was a difficulty of some concern to Connor because he had deeded his house to a party he knew had no right to it, albeit in aid of settling a lawsuit on favorable terms. When satisfaction of his Note and Deed of Trust were not forthcoming in a timely manner, he sought more aggressively to

14

ascertain the true facts of the matter. All Connor's efforts in this direction, however, were thwarted by the Defendants and their counsel, Mr Fig. Connor was sanctioned for even raising the issue. These matters are of no concern to Connor any longer and he has no interest in pursuing them, but the issue does bear on whether or not GMAC and the other members of the debtors group are necessary parties to Connor's claims.

10. MERS appears on the original Deed of Trust as both Beneficiary and Grantee of the Mortgage (exhibit 11). MERS also appears as Beneficiary on the Deed of Reconveyance eventually sent to Connor (exhibit 12). The Trustee in said Reconveyance Deed, First American Title Insurance Co, cites it's instructions to issue the Reconveyance Deed as coming from MERS. MERS also appointed First American as Successor Trustee, so the Reconveyance Deed could be issued to Connor (exhibit 13).

11. Nowhere does FRCP Rule 19 require the joinder of joint principles and agents, nor of persons against whom a defendant might have a claim for contribution. Hall v. National Service Industries Inc., 172 F.R.D. 157, 159-60 (E.D. Penn. 1997); Westmont Industries Inc., 762 F. Supp. At 648.

12. Likewise, severance is not precluded because the claims against the debtors group are related to/the same as the claims against MERS and AFI, or in the alternative, MERS alone. Cruzan Terraces Inc v. Antilles Insurance Inc., 138 F.R.D. 64, 66 (D.V.I. 1991), which upheld a magistrates order severing claims against a solvent party from claims against an insolvent party subject to the bankruptcy stay.

13. Thus, whether the debtors group are joint principles or contributors to an award, they are not indispensable parties for purposes of Plaintiff's claims against

15

MERS and AFI, or in the alternative MERS alone.

14. The Court must also decide whether severing Plaintiff's claims would frustrate or injure the underlying Automatic Stay provisions of the Bankruptcy Code. E.I. Du Pont De Nemours & Co. v. Fine Arts Reproduction Co. Inc., 1995 WL 312505 at 4(S.D.N.Y. May 22, 1995). The Movant holds that it does not.

15. Generally, the Automatic Stay does not protect non-bankrupt co-defendants. McCartney v. Integra Nat'l Bank North, 106 F. 3d 506, 509-10 (3d Cir. 1997); Dental Benefit Management Inc. 153 B.R. at 28. But the McCartney Court identified circumstances wherein connections between a debtor and a third-party Defendant are such that a judgment against a third-party would in effect be a judgment or finding against the debtor. Plaintiff/Movant holds this to be the case with LSI Title Agency, Inc. and Karen Balsano, and suspects the financial entanglements between AFI and GMAC may emerge so as to place AFI within this category.

16. MERS is not involved in debtors' reorganization efforts, nor has it asked the Court for protection of the Automatic Stay.

17. AFI, however, is involved in such efforts. To what extent is a matter for the Court. The Movant has no way of knowing. What seems evident from media reports, however, is that AFI wants very badly to go public and is putting as much distance as it can between itself and the debtors. But the relationship between AFI and GMAC is unclear to the Movant. This Court has not yet pierced the corporate veil, but the Berkshire Hathaway Motion for a Court Appointed Examiner is a fairly transparent move to unearth AFI's Alter Ego liability. Additionally, there is litigation

16

19. But to stall the proceedings in this case unnecessarily, in the absence of any prejudice to the debtors group, is unfair on the Plaintiff Connor. To deny severance of the Plaintiff's claims against a party not protected by the Automatic Stay would be to deny Plaintiff any trial whatever until the debtors bankruptcy proceedings are resolved.

## VII. MOTION II—PURSUANT TO FRCP 19 & 21; WA CT RULES 19 &21

WHEREFORE, the Movant asks this Court to sever his claims against GMAC Mortgage, LLC, Executive Trustee Services, Karen Balsano and LSI Title Agency, Inc. from his claims against MERS and Ally Financial, Inc, **or in the alternative**, to sever his claims against Ally Financial Inc., GMAC Mortgage, LLC, Executive Trustee Services, Karen Balsano and LSI Title Agency, Inc., from his claims against MERS. Plaintiff/Movant further asks the Court to order MERS and AFI, or in the alternative MERS alone, to answer his complaint, now before Superior Court of Ferry County, WA, within 60 days of its order as to Motion II, should severance be granted.

Dated: 29 August 2012

_____
Joseph A Connor III, Pro se Movant