# EXHIBIT 8

1
2
3
4
5
6
7
8
9
10
11              IN THE SUPERIOR COURT OF FERRY COUNTY, WASHINGTON STATE
12
13   CONNOR, JOSEPH A III                          CASE NO. 11-2 00098-6
14          Plaintiff
15
16   V                                             **PLAINTIFF'S AMENDED**
17                                                 **COMPLAINT**
18
19   GMAC MORTGAGE, LLC
20   LSI TITLE AGENCY, INC                         DEFENDANTS' FAILURE TO
21   EXECUTIVE TRUSTEE SERVICES, LLC               RECORD SATISFACTION OF
22     ON ITS OWN AND AS AGENT FOR                 NOTE AND DEED OF TRUST
23     LSI TITLE AGENCY, INC
24   KAREN BALSANO, ON HER OWN AND AS              DEFENDANTS LACK AUTHORITY
25     REPRESENTATIVE FOR EXECUTIVE                TO ACT ON BEHALF OF THE
26     TRUSTEE SERVICES, LLC                       TRUE PARTIES IN INTEREST RE:
27   MORTGAGE ELECTRONIC REGISTRATION              PLAINTIFF'S NOTE AND DEED
28     SYSTEMS, LLC                                OF TRUST, AND MATTERS
29   ALLY FINANCIAL, INC                           PERTAINING TO HIS PROPERTY
30          Defendants
31
32              <u>JURISDICTION AND STATUTORY BASIS OF COMPLAINT</u>
33
34   THE PLAINTIFF, Joseph A Connor III, invokes the jurisdiction of this Court under RCW 2.08.010.
35
36   The Complaint is based on Defendants' violation of RCW 61.16.030, Failure to Acknowledge
37
38   Satisfaction of Mortgage, and on the provisions of 61.16.010 and 61.16.020, and RCW 61A.
39

Plaintiff's Amended Complaint for              Joseph A Connor III
Failure to Record Satisfied                    PO Box 1474
Note and Deed of Trust                         Cobb, CA 95426
                                               707-809-7093
Defendants Lack Authority to Act                Pro se Plaintiff
On Behalf of True Parties in Interest

1    There are no Federal issues and a Jury is not demanded.

2

3

4

5

6    <u>RECITALS</u>

7

8    <u>1.</u>  On 15 December 2010, Plaintiff Connor filed suit against the above named Defendants

9

10  in connection with the responsibilities of the various parties under a certain agreement, and

11

12  with questions of standing to foreclose in the State of Washington.

13

14    <u>2.</u>  That suit, Case No. 10 2 00097 0, was settled between the parties in early May 2011.

15

16    <u>3.</u>  Shortly after 12 May 2011, all parties stipulated to Dismissal of the suit with prejudice,

17

18  and the Dismissal was ordered by the Honorable Rebecca Baker, Superior Court Judge for

19

20  Ferry County.

21

22    <u>4.</u>  On or about 12 May 2011, Plaintiff signed a Warranty Deed conveying his property to

23

24  GMAC Mortgage Corp (attachment 1)

25

26

27    <u>FIRST CLAIM</u>

28

29    <u>1.</u>  On or about 20 June 2011, the Plaintiff received an e-mail (attachment 2) from

30

31  Defendants' attorney acknowledging that all pertinent documents in the settlement had

32

33  been signed by Plaintiff and had reached Defendants on 10 June 2011. Hence the tolling period

34

35  for both payment of settlement funds to Plaintiff and recording of Plaintiff's Reconveyance had

36

37  begun on 10 June 2011.

38

39    <u>2.</u>  As part of the Settlement Agreement (attachment 3) and attached thereto, an

Plaintiff's Amended Complaint for               Joseph A Connor III
Failure to Record Satisfied                      PO Box 1474
Note and Deed of Trust                       Cobb, CA 95426
                                     707-809-7093
Defendants Lack Authority to Act          Pro se Plaintiff
On Behalf of True Parties in Interest

1

2  Addendum called for all parties to take the appropriate actions to give full force to the

3

4  agreement, which would necessarily have included the timely recordation of all documents

5

6  requiring such (attachment 4).

7

8      3.  To date, despite numerous requests to Defendants' attorney, the Plaintiff's

9

10  Reconveyance and Beneficiary's Instructions to Trustee (attachments 5&6) have not been

11

12  recorded with the Ferry County Auditor. The Defendants recorded the Special Warranty Deed

13

14  from Plaintiff to them on Jan 10, 2012, but have still failed to record Plaintiff's Reconveyance

15

16  and Beneficiary's Instructions to Trustee, as required by law (RCW 61.16.030).

17

18  The Defendants have failed in their duty both to Plaintiff and the Law to record Plaintiff's

19

20  lawful and agreed upon Reconveyance. The Plaintiff is thus left as owner of record of a house

21

22  he no longer occupies nor has any financial interest in. This situation has made the purchase of

23

24  a new home in his new location under the GI Bill not possible. Plaintiff had an open escrow on a

25

26  new house in California with some $3000.00 on deposit with Fidelity National, a California

27  escrow company. The sale and purchase were to take place under the VA loan program. But

28  owing to Defendants' failure to record a satisfaction of mortgage on his behalf, Plaintiff Connor

29  was forced into a more expensive mortgage program under the Federal Housing Administration

30  (HUD). Under the HUD program, Plaintiff was forced into a down payment of 3.5% of the

31  purchase price, $3,500.00 in this instance, which was not required by the VA. A Senior Lending

32  Officer at Priority Lending, a California brokerage firm, establishes this in the attached Affidavit

Plaintiff's Amended Complaint for                    Joseph A Connor III
Failure to Record Satisfied                          PO Box 1474
Note and Deed of Trust                               Cobb, CA 95426
                                                     707-809-7093
Defendants Lack Authority to Act                     Pro se Plaintiff
On Behalf of True Parties in Interest

1   (attachment #7). Thus, the Plaintiff will lose the use of $3,500 for the life of the loan, 30 years.

2   Also not required by the VA was Mortgage Insurance, paid to HUD, a premium of $965.00 paid

3   up front and payments of $91.75/month, commencing February 1, 2012, and continuing until

4   the mortgage principal is reduced to 78% of the original loan amount (attachment #8). This

5   should occur in April 2021 at a cost to Plaintiff of approximately $11,520.00.

6   These are costs over and above what Plaintiff would have had to pay had Defendants followed

7   the law and timely recorded a full reconveyance of his Note and Deed of Trust. Defendants'

8   failure to make the agreed upon recordings thus prevented Plaintiff from participating in the

9   less costly VA loan program to which he was duly entitled by law. Defendants' failure to make

10   these agreed upon recordings is the cause-in-fact forcing Plaintiff into a higher cost loan

11   program. Without a reconveyance from the mortagee, the VA will not reissue Defendant's VA

12   Certificate of Eligibility, the guarantee portion of a VA loan. Defendants' failure to record

13   documents as agreed in the settlement agreement and addendum thereto is the direct and

14   proximate cause of Plaintiff's losses as detailed in this Complaint. This entitles the Plaintiff to

15   recover the damages detailed below.

16
17
18
19                                    <u>SECOND CLAIM</u>
20
21   Plaintiff holds that none of the Defendants has authority to act on behalf of the true parties in
22
23   interest re: the Deed of Trust and Note connected to Plaintiff's property at 17467 N Highway 21
24

Plaintiff's Amended Complaint for                    Joseph A Connor III
Failure to Record Satisfied                          PO Box 1474
Note and Deed of Trust                               Cobb, CA 95426
                                                     707-809-7093
Defendants Lack Authority to Act                     Pro se Plaintiff
On Behalf of True Parties in Interest

1   Malo, WA 99150. Defendants have admitted in their own representations relating to such

3   Documents that they cannot meet the holders-in-due-course requirements of the WA Uniform

5   Commercial Code (attachment #9). The WA UCC therefore, requires them to prove up or

7   demonstrate with documents of proof how they came to be parties in interest and/or holders-

9   in-due-course of the pertinent documents. The Plaintiff is entitled to deal with the true parties

11  in interest in both his property and the related Deed of Trust and Note, not with entities who

13  are entirely self-appointed, such as the Defendants appear to be. Such self-appointed entities,

15  recording falsified documents, would render the Plaintiff's Full Reconveyance ineffectual, and

17  leave him liable under both the underlying Note and Deed of Trust.

## RELIEF

22  **1.** RCW 61.16.030 calls for unspecified money damages to be paid by Mortgagee to

24  Mortgagor on the Court's finding that the mortgage has been satisfied and Mortgagee has

26  failed to acknowledge said satisfaction by recording same with the Ferry County Auditor.

28  The Plaintiff asks the Court to award him any and all such money damages allowed him by law,

30  to be paid jointly and severally by all Defendants.

32  **2.** The Plaintiff asks for actual damages subject to proof of (a) $3,500.00 plus interest on

34  said amount of 3% for 30 years (life of loan). The 3% figure represents the current rate

36  for 30-year US Treasury Certificates. The total of principle plus interest prayed for by

38  Plaintiff is $8, 613.95 (attachment #10); and

Plaintiff's Amended Complaint for
Failure to Record Satisfied
Note and Deed of Trust

Defendants Lack Authority to Act
On Behalf of True Parties in Interest

Joseph A Connor III
PO Box 1474
Cobb, CA 95426
707-809-7093
Pro se Plaintiff

(b) The initial Mortgage Insurance Premium of $965.00 charged to Plaintiff through

escrow. See final HUD settlement sheet (attachment #11); plus the sum of $91.75

per month that commenced on February 1, 2012 and is to continue monthly until

approximately April 2021, for a total of approximately $11,520.00.

Plaintiff will verify all sums asked for in this section # 2 when asked to do so by any

interested party and/or the Court. Such sums may vary slightly from those contained

herein upon verification by the lender. Plaintiff asks that all Defendants be held jointly

and severally liable for all sums prayed for in this Section #2.


3.  Plaintiff asks the Court to Order Defendants to prove-up or demonstrate to the Court's

satisfaction that they are in any way parties in interest to both the original Deed of Trust and

Note pertaining to Plaintiff's property, and that they are now or have ever been holders-in-due-

course of said documents, and furthermore Defendants must show in detail how they came to

be parties in interest and/or holders-in-due-course of the pertinent documents.

4.  Plaintiff asks the Court to order Defendants, jointly and severally, to pay the costs of

this litigation.

5.  At a time deemed appropriate by the Court, Plaintiff asks to be heard on his request to

seek punitive damages in this matter under the laws of the State of California.

6.  Plaintiff asks for any further relief the Court deems appropriate.


Plaintiff's Amended Complaint for
Failure to Record Satisfied
Note and Deed of Trust

Defendants Lack Authority to Act
On Behalf of True Parties in Interest

Joseph A Connor III
PO Box 1474
Cobb, CA 95426
707-809-7093
Pro se Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12

**Plaintiff Verifies this Complaint.**

**Dated: 6 February 2012**

Joseph A Connor III
Pro se Plaintiff

Plaintiff's Amended Complaint for
Failure to Record Satisfied
Note and Deed of Trust

Defendants Lack Authority to Act
On Behalf of True Parties in Interest

Joseph A Connor III
PO Box 1474
Cobb, CA 95426
707-809-7093
Pro se Plaintiff

After Recording Return To:
Name        Bishop White Marshall & Weibel, P.S.
Address     720 Olive Way, Suite 1301
City/State  Seattle, WA 98101

RECEIVED
2012 APR -3  AM 7:29
OFFICE OF THE SHERIFF
FAIRFAX COUNTY, VA

## SPECIAL WARRANTY DEED

**Date:** May 12, 2011

**Grantor:** Joseph A. Connor, III

**Grantor's Mailing Address:** 17467 Highway 21 North, Malo, WA  998150

**Grantee:** GMAC Mortgage, LLC

**Grantee's Mailing Address:** 1100 Virginia Drive, Fort Washington, Pennsylvania, 19034

**Consideration:**    Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged.

**Abbreviated Legal:**    TAX# 11C PT GL 3 SEC.15 TWN 38N RNG 33 E.W.M.

**Property Description (including any improvements):**    See Exhibit A attached hereto and incorporated herein.

**Assessor's Property Tax Parcel Account Number(s):** 3-38-15-11-00021-00 .

Whereas, the subject Property hereinabove described was acquired by Grantor by that certain Deed of Trust
executed on June 26, 2009, and recorded on July 31, 2009 Instrument No. 274987 of the Official Records/Auditor's
Records of Ferry County, State of Washington

THE GRANTOR, Joseph A. Connor, III for and in consideration of ten dollars and other good and valuable
consideration, does hereby warrant and convey to GMAC Mortgage, LLC, the following property situated in Ferry
County, Washington:

See Exhibit A attached hereto and by reference made a part hereof.

THE GRANTOR for himself and for his successors in interest does by these presents expressly limit the
covenants of the deed to those herein expressed, and excludes all covenants arising or to arise by statutory or other
implication, and does hereby covenant that against all persons whomsoever lawfully claiming or to claim by, through
or under said Grantor and not otherwise, it will forever warrant and defend the said described real estate.

This Deed is being executed and delivered with the express understanding that it does not operate, even
though placed of record, to effect such a merger of interest as to extinguish the above described Deed of Trust and
that its receipt and recording by the Grantee does not constitute legal delivery and shall be of no binding force or
effect whatsoever until such time as the Grantee affirmatively consents to the acceptance of this Deed and after
approval of title. Acceptance of the deed and approval of title shall not be unreasonably withheld. The receipt or
acceptance of this Deed shall in no way restrict the right of Grantee, or the right of its successors in interest, to
foreclose the Deed of Trust if foreclosure is deemed desirable. From and after the date this Deed is executed,

*attachment 1*

Grantors also assign, transfer and set over to the Grantee my rentals then owing or which may thereafter become due from any occupant or occupants of said property

GRANTOR:

_____

Joseph A. Connor, III

### GRANTOR'S ACKNOWLEDGEMENT

STATE OF WASHINGTON              }
                                 }    SS.
County of Ferry                  }

I certify that I know or have satisfactory evidence that Joseph A. Connor III is/are the person(s) who appeared before me, and said person(s) acknowledged that he/she/they signed this instrument and acknowledged it to be his/her/their free and voluntary act for the uses and purposes mentioned in this instrument.

DATED: May    , 2011.

_____
Name (typed or printed): _____
NOTARY PUBLIC in and for the State of Washington
Residing at _____
My appointment expires: _____

Attachment IA

NetZero Message Center

**NETZERO**
Message Center

From : 'Dawn Featherby' <danfeaby@netzero.com>
To : sacenab@netzero.com
Subject : RE: [Junk released by Allow List]
Date : Mon, Jan 20, 2011 02:24 PM

Joe,

Pursuant to the Agreement, the Effective Date, which triggers the 14 day period for payment, is the date of the last signature on the Agreement. The other parties could not sign the Agreement until they received the final version of the Agreement, which included the additional, handwritten, language leaving that the Addendum was incorporated into the Agreement. We received your signature on the addendum language on June 10 and sent it on to GMAC that day.

Thanks,

Dawn

We are not repudiating the agreement; everyone on this end is working to get the Agreement executed and the check in your hands. Again, we are committed to getting this wrapped up as quickly as possible. While I don't have a date certain as to when you will receive the check at this point, I can assure you that the parties are working diligently to get this done.

Dawn Featherby | Attorney

**Eisen, White, Marshall & Weikel P.S.**
720 Olive Way, Suite 1201, Seattle, WA 98101
Telephone (206)223-4935 | Ext.5970 | Fax (206)622-0354
Email: DFeatherby@bwmlegal.com
www.bwmlegal.com

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney-client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney-client or other privilege.

From: joecano3@netzero.net [mailto:joecano3@netzero.net]
Sent: Sunday, June 19, 2011 12:16 PM
To: Dawn Featherby
Subject: [Junk released by Allow List]

Offer Sheet 2

# SETTLEMENT AND RELEASE AGREEMENT

## A.    Parties

This Settlement and Release Agreement and its Exhibits (collectively, "Agreement") is made and entered into as of the last day set forth on the signature page ("Effective Date") by and between GMAC Mortgage, LLC ("Company"), Executive Trustee Services, LLC ("ETS"), LSI Title Agency, Inc. ("LSI"), and Joseph A. Connor ("Borrower") (individually, a "Party," and collectively, the "Parties") for the purpose of resolving by compromise and settlement all claims, controversies and alleged liabilities arising out of a dispute as set forth below.

## B.    Recitals

This Agreement is entered into with reference to the following facts.

1.    On June 26, 2009, Borrower executed a $118,000.00 note ("Note") in favor of Eagle Home Mortgage, LLC, a Delaware limited liability company, secured by a deed of trust ("DOT") encumbering Borrower's real property commonly known as 17467 Highway 21 North, Malo, WA 99150 ("Property"). (The Note, DOT and associated origination documents are collectively referred to as the "Loan Documents," setting forth the terms of the "Loan").

2.    Company currently services the Loan.

3.    Borrower filed a lawsuit against Company, Mortgage Electronic Registration System, Inc., ETS, LSI, Karen Baisone, on her own and as representative of Executive Trustee Services, LLC, Ally Financial, LLC, Eagle Home Mortgage, LLC, Eva Alcorcher, on her own and as representative of Eagle Home Mortgage, LLC, Does 1-20, in the Superior Court of the State of Washington, In and For the County of Perry, Case No. 10-2-00097-0 ("Lawsuit") concerning the Parties' rights and obligations under the Loan Documents.

4.    Each Party denies all allegations, claims and defenses made by the other Party in the Lawsuit.

5.    Notwithstanding the above, solely in order to avoid the cost and uncertainty of further litigation, the Parties desire to compromise and settle the Lawsuit and adjust and settle their rights and obligations in connection with the Loan Documents.

## C.    Agreements, Releases and Promises.

THEREFORE, in consideration of the facts and general releases and promises contained herein, and for other good and valuable consideration, the receipt of which is acknowledged by each Party hereto, the Parties promise and agree as follows:

4. Credit Reporting. The Company shall provide notice to the major credit agencies to which the Company reports, which will request that the account information and tradeline relating to the Note and DOT be deleted. Borrower understands and acknowledges that the Company has no control over the credit reporting agencies, including, but not limited to, any ability to cause such agencies to correct any previous credit reporting information. The Company shall comply with this provision within Five (5) business days following the Effective Date of this Agreement and provide written verification of same to Borrower. The Company's responsibility for correcting any reporting on the Note and DOT is limited to the actions set forth in this paragraph.

5. Dismissal of Lawsuit. The Parties agree to dismiss the Lawsuit with prejudice and without costs. The Parties' counsel shall execute the Stipulation and Order to Dismiss attached as Exhibit C to this Agreement simultaneously with the Parties' execution of this Agreement.

6. Confidentiality. The Parties and their attorneys represent, warrant and agree that the terms and contents of this Agreement and all information and evidence elicited or exchanged during the Lawsuit and in negotiating this Agreement are and shall be treated as confidential and shall not be disclosed, in any way used or described or characterized to any other person or entity except as follows: (a) Borrower may only disclose the contents or terms of the Agreement to his accountants and other tax preparers, to the Internal Revenue Service, to his attorneys, or if otherwise compelled by a court of law; and (b) Company may disclose the contents or terms of the Agreement under the same circumstances, to governmental entities to which Company reports, or as otherwise required in the normal course of its business. This confidentiality provision and agreement is a material term of this Agreement, breach of which the Parties hereby agree will cause the Parties irreparable harm.

7. Borrower's Release of the Company. Except for the obligations and rights expressly set forth and reserved in paragraph 9 of this Agreement, Borrower, for and on behalf of himself and his present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, executors, administrators, and/or estates, or any and all other persons who could claim through her (collectively, the "Releasors"), hereby unconditionally and irrevocably remise, release, forever discharge and covenant not to sue Company, and/or ETS and/or LSI and/or Ally Financial, LLC, and/or Mortgage Electronic Registration System, Inc., and all entities related to Company, and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, owners, partners, joint venturers, principals, trustees, creditors, attorneys, representatives, employees, managers, parents, subsidiaries, divisions, subdivisions, departments, affiliates, predecessors, successors, and assigns, or any agent acting or purporting to act for them or on their behalf (collectively, the "Releasees"), from any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, and any and all demands, obligations and liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known up until the Effective Date, arising at law or in equity, by right of action or otherwise, whether or not they

Attachment 3B

could have been asserted in the Lawsuit, which the Borrower may have against the Releasees up until the Effective Date, including without limitation, express or implied: (a) any and all claims for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq, or its implementing regulations, (b) any and all claims for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq, or its implementing regulations, (c) any and all claims for unfair and/or deceptive trade practices; (d) any and all claims for consumer fraud or for fraudulent and/or predatory lending practices; (e) any and all claims for attorneys' fees and costs of any kind or nature, by statute or otherwise, (f) any and all claims that were or that could have been asserted in the Lawsuit; and (g) any and all claims that are relating to, concerning, or underlying the Loan, or the Loan transaction, or the servicing or administration of the Loan. It is the intention and effect of this release to discharge all claims that the Releasees have against the Releasees up until and including the date of the execution of this Agreement.

8.    **Company's Release of Borrower.**    Except for the obligations and rights expressly set forth and reserved in paragraph 9 of this Agreement, Company, and/or ETS and/or LSI and/or Ally Financial, LLC, and/or Mortgage Electronic Registration System, Inc., and all entities related to Company, predecessors, successors, and assigns, or any agent acting or purporting to act for them or on their behalf (collectively, the "Releasors"), hereby unconditionally and irrevocably remise, release, forever discharge and covenant not to sue Borrower, for and on behalf of themselves and their present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, executors, administrators, and/or estates, or any and all other persons who could claim through her (collectively, the "Releasees"), from any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, and any and all demands, obligations and liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known up until the Effective Date, arising at law or in equity, by right of action or otherwise, whether or not they could have been asserted in the Lawsuit, which Company may have against the Releasees up until the Effective Date, including without limitation, any and all claims for attorneys' fees and costs of any kind or nature, by statute or otherwise, any and all claims that were or that could have been asserted in the Lawsuit; and any and all claims that are relating to, concerning, or underlying the Loan, or the Loan transaction, or the servicing or administration of the Loan. It is the intention and effect of this release to discharge all claims that the Releasees have against the Releasees up until and including the date of the execution of this Agreement.

9.    **Release. Limitations.**    This Agreement does not release: (1) claims arising out of the failure of either Party to perform in conformity with the terms of this Agreement, (2) any future disputes between Borrower and Company, including its successors and assigns.

10. **Tax Consequences.**    This Agreement is enforceable regardless of its tax consequences. The Parties understand and agree that the modifications and payments set forth in this Agreement reflect the settlement of disputed legal claims and that Company makes no representations regarding the Agreement's tax consequences.  Borrower, however, specifically agrees that he is

4

Attachment 3C

solely responsible for any and all taxes, interest and penalties due and owing, if any, should the modifications, payments or any portion thereof, be taxable.

**11. No Admission of Liability.** This Agreement is entered into by the Parties for the purpose of compromising and settling the dispute and Lawsuit between them. This Agreement does not constitute, and shall not be construed as, an admission by either Party of the truth or validity of any claims asserted or contentions advanced by the other Party.

**12. Costs.** Each Party shall bear its own costs in connection with the Lawsuit and this Agreement, and the Parties waive and release any claims they otherwise have or may have had to such costs and attorneys' fees. In further consideration of the modifications and payments set forth in this Agreement, counsel for Borrower and his/her firm release all claims for attorneys' or other liens against Company and its counsel in connection with the settlement of the Lawsuit. In executing this Agreement, Borrower's counsel represents and certifies that no other person is entitled to any sum for attorneys' fees in connection with the Lawsuit and agrees to defend, indemnify and hold Company harmless if any person or firm asserts any claim for attorneys' fees in connection with the matters released herein.

**13. Choice of Law.** This Agreement is entered into in the State of Washington, and the Agreement and any rights, remedies, or obligations provided for in this Agreement shall be construed and enforced in accordance with the laws of that state.

**14. Construction of Agreement.** This Agreement shall be construed as a whole according to its fair meaning and as if both Parties jointly prepared it. Any uncertainty or ambiguity in the Agreement shall not be strictly interpreted or construed against either Party.

**15. Severability.** The provisions of this Agreement are severable. If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, unenforceable or void for any reason whatsoever, each such portion, provision or part shall be severed from the remaining portions, provisions or parts of this Agreement and shall not affect the validity or enforceability of any remaining portions, provisions or parts.

**16. No Oral Modification.** This Agreement shall not be altered, amended, or modified by oral representation made before or after the execution of this Agreement. All modifications must be in writing and duly executed by all Parties.

**17. Representations, Indemnification.** The Parties represent and warrant to each other that each is the sole and lawful owner of all right, title and interest in and to every claim and other matter which each releases in this Agreement and that they have not previously assigned or transferred, or purported to do so, to any person or other entity any right, title or interest in any such claim or other matter. In the event that such representation is false and any such claim or matter is asserted against either Party by anyone who is the assignee or transferee of such a claim or matter, then the Party who assigned or transferred such claim or matter shall fully indemnify, defend and hold harmless the Party against whom such claim or matter is asserted and its successors from and against such claim or matter and from all actual costs, attorneys' fees,

expenses, liabilities and damages which that Party and its successors incur as a result of the assertion of such claim or matter.

18. Knowing and Voluntary Assent.  The Parties acknowledge that this Agreement is executed voluntarily by each of them, without any duress or undue influence on the part of, or on behalf of any of them.  The Parties further acknowledge that they have had the opportunity for representation in the negotiations for, and in the performance of, this Agreement by counsel of their choice and that they have read this Agreement and/or have had it fully explained to them by their counsel and that they are fully aware of the contents of this Agreement and its legal effect.

19. Final and Binding Agreement.   The Parties acknowledge that this Agreement is a full and final accord and satisfaction and shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, agents, representatives, successors, and assigns.

20. Complete Agreement.  This Agreement constitutes a single, integrated, written contract expressing the entire understanding and agreement between the Parties, and the terms of the Agreement are contractual and not merely recitals.  No other agreement, written or oral, expressed or implied, exists between the parties with respect to the subject matter of this Agreement, and the Parties declare and represent that no promise, inducement or other agreement not expressly contained in this Agreement has been made conferring any benefit upon them.

21. Counterparts and Facsimile Signatures.  This Agreement may be executed in any number of counterparts and with facsimile signatures, and all such counterparts shall be construed together and constitute a single form of this Agreement.

22. Headings.  The headings inserted into this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this document to be executed as of the last day set forth below.

Date: _____                    GMAC Mortgage, LLC

                                     By: _____

                                     Its: _____


Date: _____                    Executive Trustee Services, LLC

                                     By: _____

                                     Its: _____


Date: _____                    LSI Title Agency, Inc.

6

Attachment 3E

By: _____

Its: _____

Date: _____          Joseph A. Connor, Borrower

_____

**EXHIBIT A**

attachment 3F

## AGREEMENT ADDENDUM

1. Connor agrees to convey title to the property to GMAC Mortgage, LLC, by executing the Special Warranty Deed attached hereto as Exhibit A, at the same time as he executes this agreement. The Special Warranty Deed, once signed, will serve to extinguish the Deed of Trust, and will be deemed full payment for the Promissory Note.

2. Defendants agree not to seek any deficiency judgment against Connor in connection with the Loan, and agree to record a Reconveyance of the Deed of Trust. Said Reconveyance will show Connor as both the new Mortgagee and Beneficiary, entitled to all rights and interests of said Deed of Trust.

3. Connor will promptly release any Notice of Pendency Action that he has filed with respect to the Property, and will record the release with the Auditor of Ferry County, State of Washington.

4. Connor and Defendants agree to cooperate fully and execute any and all supplementary documents, and to take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of the Agreement.


Date: _____          GMAC Mortgage, LLC

                         By: _____

                         Its: _____


Date: _____          Joseph A. Connor, Borrower


                         _____


*attachment 4*

<u>**AFTER RECORDING RETURN TO:**</u>
Bishop, White & Marshall, P.S.
Attn: William L. Bishop, Jr.
720 Olive Way, Suite 1301
Seattle, WA 98101

Reference No._____

## FULL RECONVEYANCE

The undersigned as trustee under that certain Deed of Trust, dated June 26, 2009, in which Joseph A. Connor III is grantor and Mortgage Electronic Registration Systems, Inc. is beneficiary, recorded on July 31, 2009 under Auditor's File No. 274987, records of Ferry County, Washington, having received from the beneficiary under said Deed of Trust, a written request to reconvey, does hereby reconvey, without warranty, to Joseph A Connor III all of the right, title and interest now held by said trustee in and to the property described in said Deed of Trust.

DATED this ____ day of May, 2011.

LSI TITLE AGENCY, INC.

_____

STATE OF WASHINGTON        )
                           ) ss.
COUNTY OF KING             )

On this ____ day of May, 2011, before me, the undersigned, a Notary Public in and for the State of _____, duly commissioned and sworn, personally appeared _____, to me known to be the _____ of LSI Title Agency, Inc., the corporation that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation for the uses and purposes therein mentioned, and on oath stated that he is authorized to execute the said instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first written above.

_____

# REQUEST FOR FULL RECONVEYANCE AND INDEMNITY FOR DEED OF TRUST

1. The undersigned, GMAC Mortgage, LLC, is the holder of the Note secured by the certain Deed of Trust, which is more particularly described below. Said Note, together with all other indebtedness secured by said Deed of Trust, has been fully paid or satisfied. LSI Title Agency, Inc. (hereinafter called the "Trustee" or "Successor Trustee"), is directed to cancel said Note and the Deed of Trust and to reconvey, without warranty, all the estate now held by you under said Deed of Trust to Joseph A Connor III.

2. In consideration of the issuance by Trustee or Successor Trustee of its Deed of Reconveyance or Full Reconveyance of the below-described Deed of Trust, without surrender to it of the original copy of said Note and/or Deed of Trust for cancellation and retention, the undersigned company does hereby indemnify and hold harmless the Trustee or Successor Trustee from any and all claims, demands, liability, loss, damage or expense arising from, asserted or alleged, by reason of the issuance of such Deed of Reconveyance or Full Reconveyance, without having possession of the original Note and/or Deed of Trust.

3. The Note and Deed of Trust that are the subject of this Request for Full Reconveyance and Indemnity Agreement are described as follows:

Note dated June 26, 2009, secured by Deed of Trust executed on June 26, 2009, and recorded on July 31, 2009 Instrument No. 274987 of the Official Records/Auditor's Records of Perry County, State of Washington.

Dated: _____

LENDER:
GMAC Mortgage LLC

Name: _____
Title: _____

THE STATE OF _____    §
                                §
COUNTY OF _____       §

Before me, the undersigned authority, on this day appeared _____ of GMAC Mortgage, LLC, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration, and in the capacity therein expressed.

Given under my hand and seal of office this _____ day of _____, 2011

## AFFADAVIT

1. My name is Jennifer Jacqueline Kempton

2. I am over 21 years of age.

3. I live in Sonoma, CA.

4. I took a loan application from Joseph A. Connor, III, for a VA purchase back in late August, 2011 for the purchase of a home for sale at 11229 Pine Summit Rd. in Cobb, CA.

5. I was informed by Mr. Connor that his previous lender, GMAC, had not recorded the reconveyance of the Deed of Trust for the VA loan he had obtained for his previous residence in the State of Washington, which meant he would not qualify for a new VA loan.

6. We decided to switch his loan type to an FHA loan in order to effectively process the purchase transaction.

7. Under the FHA mortgage loan guidelines, a down payment of 3.5% of the purchase price is required, as is an upfront mortgage insurance premium (UFMIP) of 1% of the loan amount, and a monthly payment of mortgage insurance based on a factor of 1.15%. This resulted in Mr. Connor having to come up with $3,500 for the down payment, $965 for the UFMIP, and a monthly mortgage insurance payment of $92.48. The monthly mortgage insurance is required for a minimum of five years, and then can only be dropped from the monthly payment when the unpaid principle balance of the loan reaches 78%.

8. Further Affiant sayeth naught.

State of California       )
                         )
County of Sonoma        )

Subscribed and sworn (or affirmed) before me on this _2nd_ day of, _February_ (month), _2012_ (year) by _Jennifer Kempton_, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_Nicole Thysell_
Nicole Kristine Thysell                          (Seal)

NICOLE KRISTINE THYSELL
Commission # 1924261
Notary Public - California
Sonoma County
My Comm. Expires Feb 4, 2015



Printed 01/17/12 @ 11:40:55 AM

oin (JP to JP)

BANK OF AMERICA
MAINTENANCE

Interest Quick-Calc

01/17/12

Start Date:  01/17/2012  TUESDAY
Deposit:  5,500
Term:  30        Year(s)
Interest Rate(%):  3.000

Type of Calculation:  Compound Daily
Accrual Basis:  Actual/365

Estimated Interest:  5,113.95
Maturity Date:  01/17/2042  FRIDAY

ND  1      2      3      4      5      6      7      8      9      10

Loan Number: 10700062

# HUD/VA Addendum to Uniform Residential Loan Application

OMB Approval No.VA: 2900-0144
HUD: 2502-0059 (exp. 02/28/2014)

| Part I - Identifying Information (mark the type of application) 1. ☐ VA Application for Home Loan Guaranty  ☒ HUD/FHA Application for Insurance under the National Housing Act | 2. Agency Case No. (include any suffix) 042-9364821-703 | 3. Lender's Case No. 10700062 | 4. Section of the Act (for HUD cases) 203 |
|---|---|---|---|

| 5. Borrower's Name & Present Address (include zip code) JOSEPH A CONNOR III 24606 BRADFORD ROAD MIDDLETOWN, CALIFORNIA 95461 | 7. Loan Amount (include the UPMIP if for HUD or Funding Fee if for VA) $97,465.00 | 8. Interest Rate 4.125 % | 9. Proposed Maturity 30 yrs. mos. |
|---|---|---|---|
| 6. Property Address (including name of subdivision, lot & block no. & zip code) 11229 PINE SUMMIT DRIVE, COBB, CALIFORNIA 95426 | 10. Discount Amount (only if borrower is permitted to pay) | 11. Amount of Up Front Premium $965.00 | 12a. Amount of Monthly Premium $91.75 incl. | 12b. Term of Monthly Premium 112 months |
| | 13. Lender's I.D. Code 2588300002 | 14. Sponsor/Agent I.D. Code 2588300002 | |

| 15. Lender's Name & Address (include zip code) PACIFIC UNION FINANCIAL 1990 N CALIFORNIA BLVD, #16 WALNUT CREEK, CALIFORNIA 94596 | 16. Name & Address of Sponsor/Agent PACIFIC UNION FINANCIAL 1990 N CALIFORNIA BLVD, #16 WALNUT CREEK, CALIFORNIA 94596 |
|---|---|
| | 17. Lender's Telephone Number |

VA: The veteran and the lender hereby apply to the Secretary of Veterans Affairs for Guaranty of the loan described here under Section 3710, Chapter 37, Title 38, United States Code, to the full extent permitted by the veteran's entitlement and severally agree that the Regulations promulgated pursuant to Chapter 37, and in effect on the date of the loan shall govern the rights, duties, and liabilities of the parties.

| 18. First Time Homebuyer? a. ☐ Yes b. ☒ No | 19. VA Only Title will be Vested in: ☐ Veteran ☐ Veteran & Spouse ☐ Other (specify) | 20. Purpose of Loan (blocks 9-12 are for VA loans only) 1) ☒ Purchase Existing Home Previously Occupied 2) ☐ Finance Improvements to Existing Property 3) ☐ Refinance (Refi.) 4) ☐ Purchase New Condo. Unit 5) ☐ Purchase Existing Condo. Unit 6) ☐ Purchase Existing Home Not Previously Occupied | 7) ☐ Construct Home (proceeds to be paid out during construction) 8) ☐ Finance Co-op Purchase 9) ☐ Purchase Permanently Sited Manufactured Home 10) ☐ Purchase Permanently Sited Manufactured Home/Lot 11) ☐ Refi. Permanently Sited Manufactured Home to Buy Lot 12) ☐ Refi. Permanently Sited Manufactured Home/Lot Loan |
|---|---|---|---|

## Part II - Lender's Certification

**21.** The undersigned lender makes the following certifications to induce the Department of Veterans Affairs to issue a certificate of commitment to guarantee the subject loan or a Loan Guaranty Certificate under Title 38, U.S. Code, or to induce the Department of Housing and Urban Development - Federal Housing Commissioner to issue a firm commitment for mortgage insurance or a Mortgage Insurance Certificate under the National Housing Act.

**A.** The loan terms furnished in the Uniform Residential Loan Application and this Addendum are true, accurate and complete.

**B.** The information contained in the Uniform Residential Loan Application and this Addendum was obtained directly from the borrower by an employee of the undersigned lender or its duly authorized agent and is true to the best of the lender's knowledge and belief.

**C.** The credit report submitted on the subject borrower (and co-borrower, if any) was ordered by the undersigned lender or its duly authorized agent directly from the credit bureau which prepared the report and was received directly from said credit bureau.

**D.** The verification of employment and verification of deposits were requested and received by the lender or its duly authorized agent without passing through the hands of any third persons and are true to the best of the lender's knowledge and belief.

Items "H" through "J" are to be completed as applicable for VA loans only.

**H.** The names and functions of any duly authorized agents who developed on behalf of the lender any of the information or supporting credit data submitted are as follows:

**E.** The Uniform Residential Loan Application and this Addendum were signed by the borrower after all sections were completed.

**F.** This proposed loan to the named borrower meets the income and credit requirements of the governing law in the judgment of the undersigned.

**G.** To the best of my knowledge and belief, I and my firm and its principals: (1) are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency; (2) have not, within a three-year period preceding this proposal, been convicted of or had a civil judgment rendered against them for (a) commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; (b) violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property; (3) are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph G(2) of this certification; and (4) have not, within a three-year period preceding this application/proposal, had one or more public transactions (Federal, State or local) terminated for cause or default.

| Name & Address | Function (e.g., obtained information on the Uniform Residential Loan Application, ordered credit report, verifications of employment, deposits, etc.) |
|---|---|

If no agent is shown above, the undersigned lender affirmatively certifies that all information and supporting credit data were obtained directly by the lender.

**I.** The undersigned lender understands and agrees that it is responsible for the omissions, errors, or acts of agents identified in Item H as to the functions with which they are identified.

**J.** The proposed loan conforms otherwise with the applicable provisions of Title 38, U.S. Code, and of the regulations concerning guaranty or insurance of loans to veterans.

| Signature of Officer of Lender | Title of Officer of Lender | Date (mm/dd/yyyy) |
|---|---|---|

**Part III - Notices to Borrowers.** Public reporting burden for this collection of information is estimated to average 8 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number.

RCW 62A.3-309
Enforcement of lost, destroyed, or stolen instrument.

(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

   (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, RCW 62A.3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

[1993 c 229 § 37.]

Notes:
        **Recovery of attorneys' fees — Effective date — 1993 c 229:** See RCW 62A.11-111 and 62A.11-112.



# Tuition Free Online Public School

Tuition free, individualized learning

See Your Options ▸

K12.com

NETZERO  My NetZero  Refer-a-Friend  Help  My Account  Message Center

You are signed in as: jasonnor3@netzero.net    Troubleshoot Email | Your Weather | Upgrade | Contact Us | Change User | Sign Out

Write Message    Home    1 Inbox    Write    Address Book    Settings | Help | Search

Check Messages

Check Other Mail [ edit ]

## Read Message

Folders  [ edit ]

Inbox

Junk Mail (242)

Sent (12)

Trash (74)

Draft

sent e-..

Get $10 Off FTD

Previous  Next  |  Close

From: FHA FAQ <answers@hud.gov>  |  ✉  Save to Address Book  |  Block Sender

To:  <jasonnor3@netzero.net>

Subject: When can I stop paying my monthly FHA mortgage insurance premium?

Date: Thu, Aug 16, 2012 08:42 AM

Reply  Reply All  Forward  Delete  Report as Junk ▾        Move message to... ▾    [ Print ]

Forwarded by: FHA Resource Center (Answers@hud.gov)

QUESTION:
When can I stop paying my monthly FHA mortgage insurance premium?

CATEGORY: Consumer Information
SUB-CATEGORY: Mortgage Insurance

ANSWER:

Cancellation of the FHA monthly mortgage insurance premium (MIP) is based on factors
including the loan term, loan-to-value (LTV) and regulations in place when the loan is
closed.

For loans closed   01/01/2001 or later MIP will be canceled when the LTV reaches 78.00%
as follows.

Loan Terms Longer Than 15 Yrs
? To be eligible MIP must have been paid for at least 5 years.

Loan Terms 15 Years or Less
? There is not a minimum time period for which the MIP must have been paid. The 5 year
requirement does not apply.
? If the LTV is 78.00% or less at loan closing it is exempt from monthly MIP

NOTES
? This MIP termination provision only applies to loans where Up-front MIP (UFMIP) was
paid at closing.
? Generally, loans closed before 01/01/2001 will not be eligible (MIP is collected as
part of the monthly mortgage payment).
? FHA will determine when 78% LTV has been reached based on the lesser of the sales price
or appraised value at loan origination.  (Example- if the lesser of the sales price or
appraised value was $100,000, when the loan amount reaches $78,000, FHA will no longer
collect MIP).
? A loan that reaches  78% LTV sooner than projected due to prepayment may have MIP
terminated (but not sooner than five years for loans with terms of more than 15 yrs) if
mortgage payments have not been more than 30 days late in the previous 12 months.
? The borrower must submit a termination request to the lender and the lender must
provide the borrower's request and supporting documentation with respect to the mortgage
payments during the last 12 months to FHA for such termination.
? Although the MIP is cancelled, the contract of mortgage insurance remains in force.

More information is available at the following websites
http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/comp/premiums/prem2001

http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/nsc/nschome

ML 11-35
Handbook 4155.2, 7.3.c

REFERENCE
Mortgagee Letter 2011-35; Handbook 4155.2, 7.3.c

REFERRAL LOCATION
FHA National Servicing Center at 1-877-622-8525

DISCLAIMER
DISCLAIMER: All policy information contained in this knowledge base article is based upon
the referenced HUD policy document. Any lending or insuring decisions should adhere to
the specific information contained in that underlying policy document.



Considering
Online Public
School?

Tuition free,
individualized
learning

See Your Options ▸

K12.com

# VA    Department of Veterans Affairs

## CERTIFICATE OF ELIGIBILITY

**REFERENCE NUMBER 3359265**

FOR LOAN GUARANTY BENEFITS

| NAME OF VETERAN | **JOSEPH A CONNOR, III** | SERVICE NUMBER | **05331716** |
|---|---|---|---|
| | | SOCIAL SECURITY NUMBER | **XXX-XX-2510** |

ENTITLEMENT CODE **05**        BRANCH OF SERVICE **Army**        FUNDING FEE **EXEMPT**

| Prior Loans charged to entitlement | | | | | |
|---|---|---|---|---|---|
| VA Loan Number | State | Loan Amount | Date of Loan | Entitlement Charged | Status |
| 46-46-6-0656432 | WA | $118,000 | 07/31/2009 | $36,000 | Active |
| | | | | | |
| | | | | | |
| | | | | | |

### THIS VETERAN'S BASIC ENTITLEMENT IS $0*
### TOTAL ENTITLEMENT CHARGED TO PREVIOUS VA LOANS IS $36,000*

The veteran is eligible for the benefits of Chapter 37, Title 38, U.S. Code, subject to any condition(s) cited below. Basic entitlement for veterans who have not previously used home loan benefits is $36,000. Additional entitlement is available for most loans in excess of $144,000. In such cases, the entitlement amount is 25% of the VA loan limit for the county where the property is located. VA county loan limits are adjusted annually, and the current limits are available at www.benefits.va.gov/homeloans.

| Issued By: MARY HOFFER | | Date: April 10, 2012 |
|---|---|---|

### CONDITIONS

**Subsequent Use Funding Fee**- Entitlement code of '5' indicates previously used entitlement has been restored. The veteran must pay a subsequent use funding fee on any future loan unless veteran is exempt.

**Funding Fee** - Veteran is exempt from Funding Fee due to receipt of service-connected disability compensation of $2,993 monthly.