# EXHIBIT A



**UNION SAVINGS BANK**
**INITIAL INTEREST ADJUSTABLE RATE NOTE**
(1-Year Treasury Index - Rate Caps)
(Assumable during Life of Loan)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| December 30 | 2004 | Cincinnati | Ohio |
|---|---|---|---|
| [Date] | | [City] | [State] |

890 South Troy Avenue  Cincinnati, Ohio  45246
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 240,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    Union Savings Bank    . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    2.99 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

(A)    Time and Place of Payments

I will make a payment every month on the first day of the month beginning on    February 1    , 2005    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on    January 1    ,    2035    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    Union Savings Bank  8534 East Kemper Road    Cincinnati, Ohio  45249    or at a different place if required by the Note Holder.

(B)    Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $    598.00    . This amount may change in accordance with subsection (C) below.

(C)    Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate I must pay.

The First P&I Payment Due Date is    February 1    ,    2010    .

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note, or to reflect changes in the interest rate in accordance with Section 4. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE-1-Year Treasury Index (Assumable Life of Loan)–Single Family—

the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A)    Change Dates

The interest rate I will pay may change on the first day of    January
2006      , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

(B)    The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C)    Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding Three and One-Quarter        percentage point(s) (    3.25   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

Prior to the First P&I Payment Due Date as stated in Section 3 (C) above, the Note Holder will determine the amount of my new monthly payment by calculating the interest due on the unpaid principal of this Note. The result of this calculation will be the new amount of my monthly payment.

After the first P&I Payment Due Date, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than 5.99 % or less than    3.25 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than    two
percentage point(s) (    2.0 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    8.99 %.

(E)    Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

(F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE-1-Year Treasury Index (Assumable Life of Loan)--Single Family--

doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes. If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, the partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the first Interest Change Date, my partial Prepayment may reduce the amount of my monthly payments beginning with the next Interest Change Date following the partial Prepayment; however, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    BORROWER'S FAILURE TO PAY AS REQUIRED

(A)    Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _____ fifteen _____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be _____ 5.0 _____ % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

(B)    Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)    Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)    No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)    Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations,

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE-1-Year Treasury Index (Assumable Life of Loan)–Single Family—

*(page 3 of 4 pages)*

including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.    WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Darrell D. Sparks                            - Borrower

_____ (Seal)
Deborah Sparks                              - Borrower

_____ (Seal)
                                                    - Borrower

*[Sign Original Only]*

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE-1-Year Treasury Index (Assumable Life of Loan)--Single Family--
                                                                                                                    *(page 4 of 4 pages)*




After Recording Return To:

ACS Title & Closing Services
6 South Second Street
Hamilton, Ohio 45011

Rebecca Prew Groppe
Hamilton County Recorders Office
Doc #: 05-0070326 Type: MT
Filed 05/04/05 08:19:23 AM $68.00
Off.Rec.: 09926    01652    F 7    257

**EXHIBIT B**

[Space Above This Line For Recording Data]

## MORTGAGE

File No. 2134-04                              Parcel # 596-0009-0066-00

**DEFINITIONS:**

Words used in multiple sections of this document are defined below and in the Master Mortgage Form (as hereinafter defined).

(A)  "Security Instrument" means this document, which is dated    December 30, 2004 together with all Riders to this document and the Master Mortgage Form.

(B)  "Borrower" is Darrell D. Sparks and Deborah Sparks husband and wife. Borrower is the mortgagor under this Security Instrument.

(C)  "Lender" is Union Savings Bank.  Lender is a corporation organized and existing under the laws of the State of Ohio.  Lender's address is 8534 E. Kemper Road, Cincinnati, Ohio  45249. Lender is the mortgagee under this Security Instrument.

(D)  "Note" means the promissory note signed by Borrower and dated  December 30, 2004. The note states that Borrower owes Lender  Two Hundred Forty Thousand and 00/100 (U.S. $240,000.00) plus interest.  Borrower has promised to pay this debt in regular periodic payments and to pay the debt in full not later than  January 1, 2035.

(E)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F)  "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower (check box as applicable):

☒ Adjustable Rate Rider        ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider  ☒ Legal Description
☐ 1-4 Family Rider             ☐ Bi-Weekly Payment Rider

**TRANSFER OF RIGHTS IN THE PROPERTY:**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of Hamilton, State of Ohio.

SEE ATTACHED EXHIBIT A

which currently has the address of 890 South Troy Avenue,
                                      (Street)

Cincinnati        , Ohio       45246       ("Property Address").
(City)                         (Zip Code)

Together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property".

Ohio - Single Family - Form A3036 [1/01/ ]Union 8/03

9926    1652

(Page 1 of 2)

Initials  DDS    DLS

**MASTER MORTGAGE FORM:**

All terms of that certain master mortgage form ("Master Mortgage Form" recorded, pursuant to Ohio Revised Code Section 5302.15 in the office of the applicable Ohio Recorder as described on the attached Exhibit B by Union Savings Bank (sometimes on title line only, Union Saving Bank), by Charles W. Thornton, are by this reference incorporated as fully and to the same extent as if set forth and contained herein.

**COPY:**

A copy of the Master Mortgage Form has been furnished to the mortgagor prior to the execution of this Security Instrument and mortgagor hereby acknowledges receipt of the same by signing at the end of this instrument.

**CERTAIN OTHER ADVANCES:**

In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, Hamilton County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section to acknowledge, affirm and comply with the provisions of §5301.233 of the Revised Code of Ohio.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument (including but not limited to the Master Mortgage Form) and in any Rider executed by Borrower and recorded with it. If for any reason the Master Mortgage Form shall not be deemed a part of this Security Instrument, this two (2) page instrument, plus any Rider(s) and attached legal description shall stand by itself as a mortgage document, binding on Borrower for the benefit of Union Savings Bank, its successors and assigns.

_____ (Seal)
Darrell D. Sparks

_____ (Seal)
Deborah Sparks

_____

_____

[Space Below This Line for Acknowledgment]

STATE OF Ohio          )
                       ) SS:
COUNTY OF Hamilton     )

This instrument was acknowledged before me this 30th day of December , 2004 , by Darrell D. Sparks and Deborah Sparks husband and wife

Witness my hand and official seal.

My commission expires: _____

THIS INSTRUMENT PREPARED BY:
ACS Title & Closing Services
6 South Second Street
Hamilton, Ohio 45011

JON P. WHALEN, ATTY AT LAW
Notary Public, State of Ohio
My Comm. Has No Expiration Date
O.R.C. Section 147.03

9926    1653

Ohio - Single Family - Form A3036 [1/01/ ]Union 8/03

(Page 2 of 2)

Initials DS  DLS

## EXHIBIT "A"
### Legal Description

Situate in the Village of Glendale, County of Hamilton, State of Ohio, to wit:

Beginning at a point in the West line of Outlet #170 of Crawford and Clark's Subdivision of the Village of Glendale as shown on a plat of the Village of Glendale, recorded in Plat Book 1, Page 246 of the Recorder's Office of Hamilton County, Ohio, being also in the East line of Troy Avenue, which beginning is 161.36 feet South 80° West from the Northwest corner of said Outlot #170; thence running South 20° West, along the West line of said Outlot #170, (the East line of Troy Avenue), a distance of 85 feet to a point; thence running North 80° East, along a line parallel to the West line of said Outlot #170, a distance of 85 feet to a point; thence running North 84° 43' West, for a distance of 200 feet to the place of beginning.

Parcel ID: 596-0009-0066-00

Sparks

9926    1654

## ADJUSTABLE RATE RIDER
### (1 Year Treasury Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this __30th__ day of __December__ __2004__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to __Union Savings Bank  8534 East Kemper Road Cincinnati, Ohio__ 45249 (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

890 South Troy Avenue  Cincinnati, Ohio  45246

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of __2.99__ %. The Note provides for changes in the interest rate and the monthly payments as follows:

    4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
        (A)    Change Dates
The interest rate I will pay may change on the first day of __January__ __2006__, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date.".

        (B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

        (C)    Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding __Three and One-Quarter__ percentage points (__3.25__ %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

Prior to the First P&I Payment Due Date as stated in section 3 (C) of the Initial Interest Adjustable Rate Note of even date herewith, the Note Holder will determine the amount of my new monthly payment by calculating the interest due on the unpaid principal of this Note. The result of this calculation will be the new amount of my monthly payment.

After the first P&I Payment Due Date as described above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

        (D)    Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than __5.99__% or less than __3.25__ %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be

MULTISTATE ADJUSTABLE RATE RIDER-ARM –Initial Interest Only–Single Family–

9926    1655 (Page 1 of 2 pages)

greater than _____ 8.99 %.

    (E)    *Effective Date of Changes*
    My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

    (F)    Notice of Changes
    The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
    Section 18 of the Security Instrument is amended to read as follows:

    *Transfer of the Property or a Beneficial Interest in Borrower.* As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Darrell D. Sparks    - Borrower

_____ (Seal)
Deborah Sparks    - Borrower

MULTISTATE ADJUSTABLE RATE RIDER-ARM –Initial Interest Only–Single Family  9926  .1656      *(Page 2 of 2 pages)*

## EXHIBIT B

| County Recorder | Date Filed | Filing Information |
|---|---|---|
| Adams County | 7/14/03 | Instrument. # 200300004015, OR Book 197, page 503 |
| Allen County | 7/14/03 | Instrument. # 200317130, Vol. 1608, page 42 |
| Ashland County | 7/15/03 | Instrument # 8166, OR Book 0349; page 0354 |
| Ashtabula County | 7/14/03 | Instrument #200300014997, OR Book 258, page 448 |
| Athens County | 7/15/03 | Instrument #200300006798, OR Book 351, page 2345 |
| Augualze County | 7/11/03 | Instrument #200300008116, OR Book 488, page 2131 |
| Belmont County | 7/14/03 | Instrument #200300007912, OR Vol. 912; page 737 |
| Brown County | 7/17/03 | Instrument #200300008747, OR Book 290; page 1851 |
| Butler County | 7/28/03 | Instrument #200300008819, OR Book 7164, page 1124 |
| Carroll County | 7/21/03 | Instrument #200300005026, Book 402, page 219 |
| Champaign County | 7/15/03 | Instrument #200300006597, OR Book 414, page 2329 |
| Clark County | 7/15/03 | Instrument #200300023470, OR Vol. 1618, page 1551 |
| Clermont County | 7/29/03 | Instrument #200300046768, OR Book 1661, page 1951 |
| Clinton County | 7/11/03 | Instrument #2003-00058037, Book 504, page 823 |
| Columbiana County | 7/15/03 | Instrument #2003-00015812, Book 1169, page 19 |
| Coshocton County | 7/14/03 | Instrument #200300005250, OR Book 308, page 454 |
| Crawford County | 7/14/03 | Instrument #200300100383, OR Book 778, page 638 |
| Cuyahoga County | 7/23/03 | Instrument #200307230135 |
| Darke County | 7/11/03 | Instrument #200300008478, OR Book 328, page 1454 |
| Defiance County | 7/14/03 | Instrument #200300008180, OR 262, page 0239 |
| Delaware County | 7/18/03 | Instrument #20030048758, OR Book 388, page 54 |
| Erie County | 7/15/03 | Instrument #RN200313565 |
| Fairfield County | 7/15/03 | Instrument #200300027770, OR Book 1293, page 846 |
| Fayette County | 7/14/03 | Instrument #200300004406, OR Book 133, page 1866 |
| Franklin County | 7/30/03 | Instrument #200307300237348 |
| Fulton County | 7/14/03 | Instrument #200300136078, OR Book 228, page 502 |
| Gallia County | 7/14/03 | Instrument #033215, Vol. 390, page 131 |
| Geauga County | 7/14/03 | Instrument #200300667078, OR Book 1650, page 979 |
| Greene County | 7/25/03 | Instrument #31205, Vol. 2054, page 632 |
| Guernsey County | 7/21/03 | Instrument #200300005809, OR Book 365, page 725 |
| Hamilton County | 7/25/03 | Doc. #03-0439622, OR 09339, page 05272 |
| Hancock County | 7/14/03 | Instrument #200300013973, OR 2198, page 2041 |
| Hardin County | 7/14/03 | Instrument #200300019156, OR Vol. 426, page 1157 |
| Harrison County | 7/11/03 | Instrument #200300002195, OR Book 140, page 711 |
| Henry County | 7/11/03 | Instrument #200300037285, OR Vol. 178, page 2313 |
| Highland County | 7/10/03 | Instrument #200300006911, OR Book 479, page 952 |
| Hocking County | 7/21/03 | Instrument #200300004843, OR Book 276, page 757 |
| Holmes County | 7/22/03 | Instrument #200300024850, OR Book 157, page 604 |
| Huron County | 7/11/03 | Instrument #200308974, OR Vol. 0257, page 0852 |
| Jackson County | 7/14/03 | Instrument #200300034854; Book 11, page 797 |
| Jefferson County | 7/11/03 | Instrument #172267, OR Vol. 579, page 283 |
| Knox County | 7/14/03 | Instrument #200300010152, Book 806, page 181 |
| Lake County | 7/11/03 | Instrument #2003RO42540 |
| Lawrence County | 7/11/03 | Instrument #007226, OR 0234, page 656 |
| Licking County | 7/18/03 | Instrument #20030718003635 |
| Logan County | 7/14/03 | Instrument #2003008454, OR Book 657, page 5 |
| Lorain County | 7/30/03 | Instrument #20030936533, #1985 |
| Lucas County | 7/23/03 | Instrument #20030723-0044134 |
| Madison County | 7/21/03 | Instrument #200300006965, OR Book 166, page 1701 |
| Mahoning County | 7/14/03 | Instrument #200300034859, OR 5350, page 1439 |
| Marion County | 7/15/03 | Instrument #2003-00009368, book 713, page 518 |
| Medina County | 7/30/03 | Instrument #2003OR039512 |
| Meigs County | 7/14/03 | Instrument #200300002474, OR Book 173, page 133 |
| Mercer County | 7/11/03 | Instrument #200300007185, OR Book 169, page 2133 |
| Miami County | 7/11/03 | Instrument #0374839, Vol. 1449, page 400 |
| Monroe County | 7/14/03 | Instrument #034621, OR Vol. 0105, page 077 |
| Montgomery County | 7/28/03 | Mort-03-112372 |
| Morgan County | 7/15/03 | Instrument #200300027276, OR Book 121, page 725 |
| Morrow County | 7/14/03 | Instrument #286337, Vol. 486, page 904 |
| Muskingum County | 7/14/03 | Instrument #200300071732, book 1781, page 376 |
| Noble County | 7/14/03 | Instrument #200300029532, OR Vol. 100, page 992 |
| Ottawa County | 7/15/03 | Instrument #200300123238, OR Book 934, page 554 |
| Paulding County | 7/11/03 | Instrument #200300003850, OR Book 492, page 1151 |
| Perry County | 7/14/03 | Instrument #200300004978, OR Book 297, page 2000 |
| Pickaway County | 7/16/03 | Instrument #200300008427, OR Vol. 527, page 1061 |
| Pike County | 7/17/03 | Instrument #200300003290, OR 206, page 901 |
| Portage County | 7/14/03 | Instrument #200325937 |
| Preble County | 7/14/03 | Instrument #200300041048, OR Book 196, page 2530 |
| Putnam County | 7/14/03 | Instrument #200300006793, OR Book 528, page 390 |

| County Recorder | Date Filed | Filing Information |
|---|---|---|
| Richland County | 7/15/03 | Instrument #200300018037, OR Book 1256, Page 480 |
| Ross County | 7/14/03 | Instrument #200300010505, OR Vol. 249, page 520 |
| Sandusky County | 7/14/03 | Instrument #200300010058, Vol. 733, page 0123 |
| Scioto County | 7/14/03 | Instrument # 007678, Mtg. Book 1025, page 181 |
| Seneca County | 7/21/03 | Instrument #200300079402, OR Book 216, page 2901 |
| Shelby County | 7/14/03 | Instrument #200300009094, OR Book 1256, page 16 |
| Stark County | 7/15/03 | Instrument #200307150067003 |
| Summit County | 7/16/03 | Instrument #54907920 |
| Trumbull County | 7/16/03 | Instrument #200307160030341 |
| Tuscarawas County | 7/24/03 | Instrument #200300014493, OR Vol. 1117, page 508 |
| Union County | 7/14/03 | Instrument #286645, OR 466, page 316 |
| Van Wert County | 7/11/03 | Instrument #200300005223, OR Book 290, page 2322 |
| Vinton County | 7/25/03 | Instrument #200300077203, OR 0 102, page 866 |
| Warren County | 7/28/03 | Doc. # 412875, Book 3177, page 521 |
| Washington County | 7/16/03 | Instrument #200300008597, OR Vol. 372, page 991 |
| Wayne County | 7/14/03 | Instrument #200300155753, OR Book 436, page 2350 |
| Williams County | 7/21/03 | Instrument #200300039476, OR Book 152, page 1314 |
| Wood County | 7/15/03 | Instrument #2003 22415, OR Vol. 2285, page 810 |
| Wyandot County | 7/14/03 | Instrument #13561, Vol. 102, page 61 |

9926    1658

# EXHIBIT B



D97580987

**COURT OF COMMON PLEAS
HAMILTON COUNTY**

ENTERED
MAY 10 2012

RESIDENTIAL FUNDING COMPANY, LLC    :    Case No. A1003029

    Plaintiff,    :    **Judge Pat DeWine**

vs.    :

MARTHA RICHNER, et al.,    :    **ENTRY GRANTING
DEFENDANT UNION
SAVINGS BANK'S MOTION
FOR SUMMARY JUDGMENT
ON THE ISSUE OF PRIORITY**

    Defendants.    :

       This matter is before the Court on Defendant Union Savings Bank's Supplemental Motion for Summary Judgment on the Issue of Priority as to certain property located at 890 South Troy Street, Cincinnati Ohio ("the Property"). For the reasons that follow, the Court grants the motion.

    I.  <u>Procedural Posture</u>

       On October 6, 2011, this Court entered a decision sustaining the Objection of Plaintiff Residential Funding Company ("RFC") to the Magistrate's Decision granting Summary Judgment in favor of Defendant Union Savings Bank ("Union Savings"). The Court found that there was at least an issue of fact as to whether RFC's predecessor had properly been served in a 2004 foreclosure proceeding in which a default judgment had been taken. The Court also found that Union Savings had failed to meet its burden on summary judgment to demonstrate that it was a bone fide mortgagee. The Court noted, *inter alia*, that the record did not contain any information as to whether Union Savings had any knowledge of the competing interest at the time it took its mortgage in the Property. The Court left open the possibility that Union Savings ultimately might be able to demonstrate its entitlement to bona fide mortgagee status. Union

Savings has now filed a Supplemental Motion in Support of Summary Judgment on the Issue of

Priority, with supporting affidavits.

II.  Factual Background

The facts concerning the 2004 foreclosure that are relevant to this motion may be

summarized as follows:

- April 8, 2004: First Financial files for foreclosure on the property.
- July 8, 2004: Court issues judgment decree in foreclosure.
- October 14, 2004: Property sold to Up in Smoke at sheriff's sale.
- December 21, 2004: Court issues First Judgment Entry Confirming Sale to Up in Smoke.
- December 30, 2004:  Property transferred from Up in Smoke to the Sparks; Union
  Savings executes a mortgage to secure the loan note.
- January 26, 2005: Court enters Amended Judgment Confirming Sale, updating Up in
  Smoke's address and amending the distribution amount.
- February 18, 2005: Sheriff's Deed to Up in Smoke executed;
- April 21, 2005: Amended Judgment Entry Confirming Sale recorded in the Hamilton
  County Recorder's Office.
- May 4, 2005: Sheriff's Deed to Up in Smoke recorded; Deed from Up in Smoke to
  Sparks recorded; title policy issued to Union Savings.

III.  Bona Fide Mortgagee

A mortgagee is entitled to the protection of a bona fide purchaser if it gives value without

notice of prior equities. *Wayne Building & Loan Co of Wooster v. Yarborough,* (1967), 11 Ohio

St.2d. 195, 200. A bona fide purchase involves three elements: (1) valuable consideration, (2)

good faith and (3) absence of notice. *Shaker Corlett Land. Co. v. City of Cleveland* (1942), 139

Ohio St. 536, 542. A bona fide purchaser for value is bound by an encumbrance only if there is

actual or constructive notice of the encumbrance. *ABN AMRO Mortgage Group, Inc. v. Rouch*

(Franklin App. 2005) 2005 WL 858182 (quoting *Emrick v. Multicon Builders, Inc.* (1991), 57

2

Ohio St.3d 107, 109). "A good faith mortgagee is charged with constructive notice only of the rights of the person in possession and the rights of person claiming an interest under a duly recorded instrument." *Id.* Notice is gained either from public records of the county or actual knowledge. *Id.*

Union Savings argues that it is entitled to bona fide mortgagee status because it extended valuable consideration, acted in good faith and had no knowledge of any competing interest in the Property on December 30, 2004 when the mortgage was executed. RFC contends that Union Savings is not a bona fide mortgagee because it took the mortgage with knowledge that the mortgagors did not have legal title to the Property.

Union Savings introduces several affidavits in its renewed motion for summary judgment. Jeffrey Rulon testifies that in November 2004 Union Savings retained the title agency of which he was part owner to handle the mortgage loan transaction, including providing a title examination and a title opinion of the Property. Mr. Rulon attests that he determined "that all lienholders of record were made a party to the 2004 foreclosure action, and therefore, their liens would be released upon the filing of a Confirmation Entry in the 2004 Foreclosure." Stephen Marcum was the lead counsel for First Financial in the 2004 foreclosure and issued a title insurance policy to Union Savings. Mr. Marcum attests that "based upon [his] knowledge regarding the 2004 Foreclosure, [his] communications with Mr. Rulon, and [his] search of public records, [he] determined that the Property was free and clear of any encumbrances of record." Mr. Marcum further testifies that he communicated the results of his investigation and his determination to Mr. Rulon (Union Savings' agent) prior to the December 30, 2004 loan closing. Finally, Brenda Bingaman, a Union Savings' employee, attests that she reviewed Union Savings' business records relating to the loan documents. She testifies that based on the title work and the

3

documents filed in the public record, it was Union Savings understanding that the Property was

free and clear of any encumbrances at the time to of the December 30, 2004 closing.

RFC does not dispute any of the factual information contained in the affidavits submitted

by Union Savings. Rather, it argues that Union Savings took the mortgage with the knowledge

that the Sparks did not have legal title to the Property. It bases its argument on the fact that

sheriff's deed to Up in Smoke, LLC ("Up in Smoke") was not issued until February 18, 2005.

Thus, RFC argues, the deed transferring property from Up in Smoke to the Sparks on December

30, 2004 was invalid because Up in Smoke did not have legal title to the Property at the time of

the transfer. Accordingly, RFC asserts Union Savings "either knew or was on constructive

notice of the title defect when it accepted the mortgage from the Sparks."

RFC's argument is contrary to Ohio precedent which establishes that Union Savings was

entitled to rely upon the December 21 Judgment Entry Confirming Sale to Up in Smoke. A

confirmation entry is a final appealable order. *Triple F Inv. Inc. v. Pacific Fin. Services, Inc.*

(Portage App. 2001), 2001 WL 589343 at *3. When a property is sold in a judicial proceeding

the sale vests title in the purchaser free from all the parties to the action. *Walker v. Scott*

(Hamilton App. 1914), 7 Ohio App. 335, 339. The order of confirmation is dispositive as to the

propriety of the sale and the sale confirmation procedures unless vacated by the trial court

pursuant to Civ. R. 60(B). *Id.* at 329. "The confirmation of a judicial sale relates back to the day

of the sale and passes title as of that day." *In re Vieland* (1984), 41 B.R. 134, 139; *Jashenosky*

*v. Volrath* (1899), 59 Ohio St. 540, 541. Similarly, a deed for real estate executed by an officer

of the court pursuant to a court order confirming a judicial sale takes effect as of the day of the

sale and title passes to the purchaser as of the date of the sale. *Schmidt v. Penn Mut. Life Ins. Co.*

(Franklin App. 1935), 25 Ohio Law Abs. 652 (Ohio App. 2 Dist). Thus, under Ohio law RFC is

4

simply wrong when it argues that Up in Smoke did not have legal title as of the date the Property was transferred to the Sparks.

The uncontroverted affidavit evidence introduced by Union Savings demonstrates that it took the mortgage in good faith and without any notice of any competing interest. The Confirmation Entry of December 21, 2004 confirmed the sale of the Property that occurred on October 14, 2004 to Up in Smoke. Once the Confirmation Entry was entered on December 21, 2004, the sale occurred by operation of Ohio law on October 14, 2004. Therefore, Up in Smoke had authority to convey the title to the property by deed on December 30, 2004. When Union Savings executed its mortgage on December 30, 2004 it had legal title, and took without notice of any irregularity of the previous foreclosure. Union Savings is entitled to bona fide mortgagee status. Because the Court finds Union Savings to be a bona fide mortgagee, there is no need to address the other issue in Union Savings' motion for summary judgment.

IV. RFC's Equitable Lien

RFC argues that even if this Court should find that its mortgage does not have first priority, it should be entitled a first priority lien under an equitable lien theory. RFC asserts it and its predecessors have paid $41,079.40 in property taxes in an effort to protect its interest and that such payments benefitted both RFC and Union Savings by preventing a tax foreclosure.

"An equitable lien arises either from (1) a written agreement indicating an intent to make particular property a security for a debt or obligation, or (2) from implication by a court of equity upon consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings." *Bradford v. Reid* (Hamilton App. 1998), 126 Ohio App.3d 448, 453. Here, there is no evidence of any written agreement that would give rise to an equitable

lien. Further, the Court declines to find that considerations of right and justice justify the
creation of an equitable lien that would provide RFC first priority over a bona fide mortgagee.

RFC and its predecessors are sophisticated business entities who made a voluntary
business decision to pay property taxes to mitigate their risk of a tax foreclosure. RFC
presumably did so aware of the risks that it would be unsuccessful in this foreclosure action. The
lengthy litigation involving this matter presumably has delayed foreclosure in this matter and
increased the amount of taxes ultimately paid. The Court has not found any case law suggesting
that an equitable lien should be created in these circumstances, and the Court does not believe
that the interests of equity would be advanced by the creation of such a lien. Accordingly, the
Court denies RFC's request for an equitable first lien on the Property.

V. <u>Conclusion</u>

Summary judgment is granted in favor of Union Savings. Union Savings is directed to
prepare a final judgment entry consistent with Local Rule 17.

IT IS SO ORDERED.


_____
Judge Pat DeWine

5-8-12
_____
Date

EXHIBIT C



# Dusty Rhodes, Hamilton County Auditor

## Summary

**Parcel Info**
Summary
- Printable Tab
Residential
Levy Info
Improvements
Commercial
Transfer
Value History
Payments
Image
Assessment Payoff
Map
Property Report

**Search By**
Parcel ID
Owner
Street Address
Sales
New
Advanced Search

**Site Functions**
Comments1
On Line Help
Home
Auditor's Home

1

| Parcel ID | Address | | Index Order | Card |
|---|---|---|---|---|
| 596-0009-0066-00 | 890 S TROY AVE | | Street Address | 1 of 1 |



5960009006600  12/05/2008

| | | | |
|---|---|---|---|
| **Tax Dist** | 176 GLENDALE-PRINCETON CSD-00420 | **Year Built** | 1880 |
| | | **Total Rooms** | 11 |
| **School Dist** | 17 PRINCETON CSD | **# of bedrooms** | 5 |
| **Land Use** | 510 Single family Dwlg | **Full Bathrooms** | 3 |
| **Finished Square Ft.** | 4126 | **Half Bathrooms** | 1 |
| **Acreage** | 0.380 | | |
| **Appraisal Area** | GLENDALE  59609 GLENDALE 09 | | |

**Sales**

| **Property Information** | **Owner Information** | **Mail Information** |
|---|---|---|
| TROY AVE 85 X 200 IRR PT LOT 170 CRAWFORD & CLARK SUB | **Call 946-4015 if Incorrect** SPARKS, DARRELL D & DEBORAH 890 S TROY AVE CINCINNATI, OH 45246-4620 USA | **Call 946-4800 if Incorrect** CORELOGIC 2500 WESTFIELD DR STE 102 HOFFMAN ESTATES, IL 60124 USA |

| | | | |
|---|---|---|---|
| Board of Revision | No | Other Assessments | Yes |
| Rental Registration | No | Front Ft. | 0.00 |
| Homestead | No | Mkt Land Value | 62,000 |
| 2.5% / Stadium Credit | Yes | Cauv Value | 0 |
| Divided Property | No | Mkt Impr Value | 247,670 |
| New Construction | No | Mkt Total Value | 309,670 |
| Foreclosure | No | Total TIF Value | 0 |
| Date | 5/4/2005 | Abated Value | 0 |
| Conveyance # | | Exempt Value | 0 |
| Sale Amount | $0 | **Taxes Paid** | $5,934.51 |
| # of Parcels | 1 | (See Payments Tab For Details) | |
| | 13 SE-Survivorship | Tax as % of Total Value | 1.914% |
| Deed Type | Ex | | |
| Deed Number | 52821 | | |

**Note**