MORRISON | FOERSTER

1290 AVENUE OF THE AMERICAS
NEW YORK
NEW YORK 10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA, DENVER,
SACRAMENTO

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

September 7, 2012

Writer's Direct Contact
212.468.8238
JHaims@mofo.com

By Hand Delivery

Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
for the Southern District of New York
One Bowling Green
New York, New York 10004

Re:   *In re Residential Capital, LLC, et al.*, Chapter 11 Case No. 12-12020 (MG)
      Hearing: September 11, 2012 at 2:00 p.m.

Dear Judge Glenn:

We are counsel to the Debtors in the above-captioned case. We write regarding the hearing scheduled for September 11, 2012 at 2:00 p.m. on the *Motion of the Federal Housing Finance Agency Pursuant to the July 11, 2012 Order of the Honorable Denise L. Cote Seeking Limited Discovery From the Debtors and, If Necessary to That Purpose, Relief From the Automatic Stay* (ECF# 806) and the supplement thereto (ECF# 859) (the "FHFA Motion"), as well as the *Non-Ally Underwriter Defendants' Motion in Support of Loan File Discovery From the Debtors and, If Necessary to That Purpose, Relief From the Automatic Stay* (ECF# 1293) (the "Underwriters' Motion" and together with the FHFA motion, the "Motion"). We are writing to bring to the Court's attention recent developments in the Coordinated FHFA Cases (as hereinafter defined) that may affect the hearing on the Motion.

As the Court is aware, the discovery sought by the FHFA and the Non-Ally Underwriters in the Motion—thousands of loan files—relates to a case pending before Judge Cote in the District Court captioned *FHFA v. Ally Financial, Inc. et al*, 11 Civ. 7010 (the "Ally Case"). The Ally Case is one among 16 cases coordinated for pre-trial purposes before Judge Cote (the "Coordinated FHFA Cases").

On May 4, 2012, the District Court denied, in part, the defendants' motion to dismiss in the UBS Case[1] (the "May 4 Order"), holding that as a result of the "extender statute" in the Housing and Economic Recovery Act of 2008 ("HERA"), the FHFA's claims are not time-barred. On May

---

[1] *FHFA v. UBS Americas, Inc. et al.*, No. 11-cv-5201(S.D.N.Y.) (DLC) (the "UBS Case").

MORRISON | FOERSTER

Honorable Martin Glenn
September 7, 2012
Page Two

23, 2012, the defendants in the UBS Case (the "UBS Defendants") moved the District Court to
certify an interlocutory appeal to the Second Circuit from the May 4 Order, and the District
Court granted the motion on June 19, 2012. On August 14, 2012, the Second Circuit granted
UBS's motion for leave to appeal the May 4 Order, and set an expedited briefing schedule. *See
FHFA v. UBS Americas, Inc. et al.*, No. 12-3207cv ("UBS Appeal"). The expedited appellate
schedule requires full briefing by November 8, 2012, and oral argument "as early as the week of
November 26, 2012."

The defendants in the other Coordinated FHFA Cases, including Ally, have now each moved in
the District Court to dismiss their respective FHFA Case. Those motions to dismiss remain *sub
judice*, and expressly incorporate and adopt the same arguments at issue in the UBS Appeal.
Because the District Court has expressly stated that it intends to rule on these arguments in the
same way it ruled on these issues in the UBS Case,[2] the Second Circuit's ruling in the UBS
Appeal could significantly impact the FHFA's claims in all of the Coordinated FHFA Cases.

Today, September 7, 2012, UBS filed an emergency motion with the Second Circuit to stay the
UBS Case[3] (the "Stay Motion")—including discovery—during the pendency of the UBS
Appeal.[4]  The Stay Motion also seeks to stay all of the Coordinated FHFA Cases, including the
Ally Case, during the pendency of the appeal. The Stay Motion is premised on the fact that
"[w]hile the appeal is pending . . . the parties and the District Court continue to face virtually
unprecedented efforts, costs and expenses associated with an extremely compressed discovery
schedule" in the 16 Coordinated FHFA Cases and those efforts "will all be for naught" if the
Second Circuit were to rule in UBS' favor. (Stay Motion at 3.) UBS also requested that the
Second Circuit "decide the [Stay Motion] as soon as practicable to avoid the enormous costs
being incurred on a daily basis by the parties to the FHFA Actions, the taxpayers funding this
litigation, hundreds of third parties and the District Court." (Stay Motion at 1.)

The Debtors are among the third parties referred to in the Stay Motion, and would incur
significant costs—monetary and otherwise—during the pendency of the UBS Appeal if the
Motion were granted, which costs could "be for naught" if the UBS Appeal is successful. And,
in light of the request by UBS for expeditious treatment of the Stay Motion, there may be clarity
on this issue in short order. [5]

Accordingly, the Debtors respectfully request that the Court adjourn the hearing on the Motion
currently scheduled for September 11, 2012 at 2:00 p.m. until the Second Circuit decides the

---

[2] *See* Tr. of Dec. 2, 2011 Conf. at 31, enclosed herein as <u>Exhibit 1</u>.
[3] The District Court denied UBS' application for a stay on September 4, 2012.
[4] The Memorandum of Law in Support of the Stay Motion is enclosed herein as <u>Exhibit 2</u>.
[5] Even if the Second Circuit were to stay only the UBS Case, the effect on the other Coordinated FHFA Cases will
be the same because, as the FHFA has asserted before this Court, "a delay in just one [of the Coordinated FHFA
Cases] will not only halt the progress of [that c]ase, but will have an impact on other [Coordinated FHFA Cases]."
(FHFA Supplemental Filing at 14 (ECF# 1297).)

MORRISON | FOERSTER

Honorable Martin Glenn
September 7, 2012
Page Three

Stay Motion, at which time the parties will know whether discovery in the Ally Case will be proceeding, and on what schedule.

We are available at the Court's convenience to discuss this and any other issue.

Sincerely,

Joel C. Haims

Enclosures

cc:     All Counsel (by email)

# EXHIBIT 1

12-12020-mg   Doc 1374   Filed 09/07/12   Entered 09/07/18 16:57:51   Main Document
Case 1:11-cv-05201-DLC   Document 89   Filed 12/07/11   Page 1 of 4
Pg 5 of 34

1c2QfhaC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     IN RE:
 3   FEDERAL HOUSING FINANCE AGENCY          11 CV 5201 (DLC)

 4   ------------------------------x
     Also Docket Nos.
 5   11 CV 6188, 11 CV 6189, 11 CV 6190,
     11 CV 6192, 11 CV 6193, 11 CV 6195,
 6   11 CV 6196, 11 CV 6198, 11 CV 6200,
     11 CV 6201, 11 CV 6202, 11 CV 6203,
 7   11 CV 6739, 11 CV 6916, 11 CV 7010,
     11 CV 7048
 8   ------------------------------x

 9   VNB REALTY,
                   Plaintiff,               11 CV 6805
10           v.
     Bank of America, et al.
11                 Defendants.

12   ------------------------------x

13                                          New York, NY

14                                          December 2, 2011
                                            2:00 p.m.
15
     Before:
16
                         HON. DENISE L. COTE,
17
                                            District Judge
18

19

20

21

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
1    this, your Honor -- and this will be helpful to us when we

2    confer amongst ourselves, and I'm sure when the defendants

3    do -- but I am assuming that it is not the case that a decision

4    on a complaint that's common will end up necessarily to be

5    binding as to all other matters.

6            This is, I take it, your Honor, for the Court's

7    edification on issues that might deem to be common, but there

8    are many, many different issues in all of these complaints

9    including ones that would differ with respect to almost all of

10   the claims.  So, while some of the issues certainly are common

11   and some of the legal argument will be common, there are so

12   many factual disparities and the like that the Court isn't

13   suggesting, I assume, that there will be a binding effect to

14   the motion on the first complaint.

15           THE COURT:  No, that is absolutely correct.  Thank you

16   so much, Mr. Kasowitz for raising that issue.  It's an

17   important thing for us to all -- for me to articulate my

18   understanding of the impact of the decision on the motion to

19   dismiss in 5201.

20           Every case is being treated on its own merits.  This

21   is not consolidated litigation.  So I will do my best to

22   address any motion to dismiss that is made in 5201.  The

23   complaint will survive or it won't.  If it survives, I plan --

24   right now, I am going to be a lot wiser after I address this

25   motion practice, but the presumption would be that discovery
```

1    will go forward in all cases, at least document discovery and

2    at least core document discovery, and we are about to get to

3    the discovery issue in a moment.

4           But there would be a right to bring other motions to

5    dismiss in the other actions or no motion to dismiss an answer,

6    but in bringing a motion to dismiss and I've denied the

7    argument that you're about to make in addressing the same issue

8    in 5201, I plan probably to just adopt my reasoning in 5201.

9           Again, the only exception that I am thinking about

10   now, and I will be much wiser after I have the full briefing on

11   that first motion to dismiss, is whether or not if some other

12   case has a terrific statute of limitations argument that has

13   not been captured by the 5201 briefing, whether or not I should

14   stay discovery in that particular action because of its unique

15   statute of limitations argument.

16          So does that answer your question Mr. Kasowitz?

17          MR. KASOWITZ:  It does, your Honor.  Thank you.

18          THE COURT:  Meanwhile, I would be resolving the remand

19   motions as promptly as I could.

20          So I think just to summarize where we are again -- you

21   can revisit this after you have your joint meeting -- but there

22   is only going to be one motion to dismiss.  It's going to be in

23   5201.  We are not going to have a motion to dismiss in 6188.

24   There is nothing to be gained by it at this initial phase.

25          And we move on now to discovery.  Let me talk about

```
 1    discovery.  I do think it makes sense for counsel to start

 2    their discussions about electronic discovery protocols, and

 3    that we set a schedule today for those discussions to be

 4    completed and any failures to agree to be raised with me.

 5            I am going to let during the break you folks talk

 6    about what would be a reasonable schedule for those discussions

 7    given the fact that it's December and we are moving into the

 8    holiday period, but I would like an end date for an agreement

 9    or a two-page letter to me outlining the issues that there is a

10    failure to agree upon and then we will have a conference.

11            With respect to document discovery, I can't remember

12    who mentioned it here, but someone mentioned the loan files.

13    Are the loan files electronic or are they hard copy?

14            MR. SELENDY:  Your Honor, Phillipe Selendy.  Typically

15    in our experience, the electronic files, the loan files are

16    maintained both in electronic form and hard copy, although it

17    depends on how good the operations are of the various banks and

18    services.  There is a contractual obligation for those files to

19    be maintained as to every single securitization, and that is

20    because those are the basic documents that inform the quality

21    of the loan, the creditworthiness of the borrower, the value of

22    the property and the like, and the trustees in the various RMBS

23    trusts are entitled to get access to those files.

24            It's a primary source of evidence, although not the

25    only source of evidence, to test whether the representations of
```

1    warranties made as to individual loans are in fact accurate and

2    whether those loans were eligible to be included in the trust

3    or not.

4         So, all of the defendants who maintain loan files are

5    in fact obligated to maintain them in a way that can be readily

6    transferred upon demand, and that is why we focused upon that

7    as an initial request because that should not be unduly

8    burdensome, and it's something that ought to be maintained in

9    the ordinary course and readily handed over.

10        THE COURT:  They may be accessible, but it may still

11   be burdensome.  Can you give me a sense -- and there may be no

12   average -- how many loan files are behind any one

13   securitization?

14        MR. SELENDY:  That does vary.  It can range from the

15   thousands to the tens of thousands, although we are prepared to

16   frame a request that is much more narrow than that because we

17   believe that the allegations of systemic representation can be

18   tested on a sampling basis.

19        So, provided we avoid any cherry picking of those

20   loans, and we identify a random sort, then we can identify a

21   much smaller number in order to then evaluate that.  And we

22   would be prepared to do that across the cases.

23        THE COURT:  OK.  Is it Mr. Clary?

24        MR. CLARY:  Yes, your Honor.  Richard Clary for Credit

25   Suisse defendants, and I am counsel in six of the 18 cases we

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT 2

# 12-3207cv

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR
THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND
THE FEDERAL HOME LOAN MORTGAGE CORPORATION,

Plaintiff-Appellee,

v.

UBS AMERICAS INC., UBS REAL ESTATE SECURITIES INC.,
UBS SECURITIES, LLC, MORTGAGE ASSET SECURITIZATION
TRANSACTIONS, INC., DAVID MARTIN, PER DYRVIK,
HUGH CORCORAN AND PETER SLAGOWITZ,

Defendants-Appellants.

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

**APPELLANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
EMERGENCY MOTION FOR A STAY OF FURTHER
PROCEEDINGS IN THE DISTRICT COURT PENDING APPEAL**

_____

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jay B. Kasner
Scott D. Musoff
Robert A. Fumerton
Alexander C. Drylewski
Four Times Square
New York, New York 10036
(212) 735-3000

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND ...................................................................................5

      A.    Fannie Mae and Freddie Mac's Role in the RMBS Market.................5

      B.    The FHFA Actions...............................................................6

      C.    UBS's Motion to Dismiss and the May 4 Order..................................7

      D.    The District Court Orders Burdensome Accelerated Discovery .........8

      E.    UBS's Interlocutory Appeal is Certified and Accepted......................10

      F.    The District Court Refuses UBS's Request To Stay Proceedings ......11

ARGUMENT...........................................................................................................11

      A.    Defendants Will Suffer Irreparable Harm Absent A Stay.................14

      B.    FHFA Will Not Suffer Any Prejudice ...............................................16

      C.    UBS Has a Likelihood of Succeeding on Its Appeal .........................17

           1.    The Plain Text of HERA Supports Dismissal..........................18

           2.    This Court Has Emphasized the Distinction Between
                 Statutes of Limitations and Statutes of Repose.......................18

           3.    Other Courts Have Adopted UBS's Plain Reading of
                 HERA .......................................................................................19

CONCLUSION .......................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Asis Internet Services v. Active Response Group*,
No. C07-6211, 2008 WL 4279695  (N.D. Cal. Sept. 16, 2008)..........................12

*Bowen v. Georgetown University Hospital*,
488 U.S. 204 (1988) ........................................................................17

*Cendant Corp. v. Forbes*,
72 F. Supp. 2d 341 (S.D.N.Y. 1999)..................................................16

*In re Fannie Mae 2008 Securities Litigation*,
742 F. Supp. 2d 382 (S.D.N.Y. 2010)..................................................5

*Federal Housing Finance Agency v. UBS Americas, Inc.*,
No. 11-cv-5201 (DLC), 2012 WL 1570856
(S.D.N.Y May 4, 2012) ............................................................. *Passim*

*In re Fosamax Products Liability Litigation*,
No. 06 MD 1789 (JFK), 2011 WL 2566074 (S.D.N.Y. June 29, 2011) .............13

*Good Samaritan Hospital v. Shalala*,
508 U.S. 402 (1993) ........................................................................18

*Jock v. Sterling Jewelers, Inc.*,
738 F. Supp. 2d 445 (S.D.N.Y. 2010)..................................................18

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
597 F.3d 84 (2d Cir. 2010) .........................................................8, 19

*Mohammed v. Reno*,
309 F.3d 95 (2d Cir. 2002) ...............................................................18

*O'Brien v. Avco Corp.*,
309 F. Supp. 703 (S.D.N.Y. 1969)......................................................14

*P. Stolz Family Partnership L.P. v. Daum*,
355 F.3d 92 (2d Cir. 2004) .........................................................8, 19

*Renegotiation Board v. Bannercraft Clothing Co., Inc.*,
415 U.S. 1 (1974) ...........................................................................13

*Resolution Trust Corp. v. Olson,*
  768 F. Supp. 283 (D. Ariz. 1991) ........................................................................20

*Sutherland v. Ernst & Young LLP,*
  No. 10 Civ. 3332 (KMW) (MHD), 2012 WL 751970 ............................ 14, 16, 17

*Thapa v. Gonzales,*
  460 F.3d 323 (2d Cir. 2006) .......................................................................12, 20

*United States S.E.C. v. Citigroup Global Markets,*
  673 F.3d ............................................................................ 11, 12, 13, 14, 17

*Waldburger v. CTS Corp.,*
  No. 11-cv-39, 2012 WL 380053 (W.D.N.C. Feb. 6, 2012) ................................19

## STATUTES

12 U.S.C. § 4617(b)(12)(A) ..................................................................................2, 8

15 U.S.C. § 77m ........................................................................................................2

15 U.S.C. § 78u-4(b)(3)(B) .......................................................................................8

15 U.S.C. §§ 77k ......................................................................................................6

28 U.S.C. § 1292(b) ..........................................................................................10, 11

Defendants-Appellants ("UBS") move on an emergency basis to stay the proceedings below[1] before the Honorable Denise L. Cote in *Federal Housing Finance Agency, as Conservator for the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation v. UBS Americas, Inc., et al.*, No. 11-cv-5201 (the "UBS Action"), and the 15 coordinated actions before Judge Cote (with the UBS Action, the "FHFA Actions"), pending this Court's resolution of UBS's expedited interlocutory appeal of the District Court's denial in part of UBS's motion to dismiss (the "May 4 Order"). UBS respectfully requests that the Court decide the motion as soon as practicable to avoid the enormous costs being incurred on a daily basis by the parties to the FHFA Actions, the taxpayers funding this litigation, hundreds of third parties and the District Court.

## **INTRODUCTION**

This appeal arises from the District Court's denial, in large part, of UBS's motion to dismiss a securities action brought by the Federal Housing Finance Agency ("FHFA") on behalf of the Federal National Mortgage Association

---

[1] UBS seeks a stay of all proceedings in the District Court, except for the briefing on any pending motions to dismiss. The District Court denied UBS's application for a stay, joined by Defendants in all FHFA Actions, by order dated September 4, 2012, a copy of which is attached as Exhibit U to the accompanying Declaration of Jay B. Kasner, dated Sept. 7, 2012 (cited herein as "Decl. ¶ _."). The 15 coordinated proceedings are identified at paragraph 17 of the Kasner Declaration. Exhibits to the Kasner Declaration are cited herein as "Ex. __." Unless otherwise indicated, all emphasis in case and statutory citations is added.

("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac")
– the two largest purchasers and issuers of residential mortgage-backed securities
("RMBS") in the world.  FHFA's claims relate to Fannie Mae and Freddie Mac's
purchase of RMBS between <u>four and six years</u> prior to the filing of this Action.

      In the May 4 Order, the District Court held, *inter alia*, that FHFA's
claims were not barred by the statutes of repose found in the Securities Act of 1933
("Securities Act"), 15 U.S.C. § 77m, and certain "Blue Sky" state securities laws,
because Section 12 of the Housing and Economic Recovery Act ("HERA"), 12
U.S.C. § 4617(b)(12)(A), purportedly extended these statutes of repose for an
additional three years from September 6, 2008 – the date Fannie Mae and Freddie
Mac were placed into conservatorship.  The District Court adopted FHFA's
argument that HERA should be construed to implicitly extend "statutes of <u>repose</u>,"
notwithstanding that the statutory language expressly extends only "statutes of
<u>limitations</u>" and in the face of two decisions of this Court expressly recognizing the
distinction between the two principles.[2]  Notably, since the May 4 Order was
issued, the United States government itself has taken a view directly opposite that
of FHFA and of the District Court in an appeal pending in the United States Court
of Appeals for the Fourth Circuit.  (*Infra* at 19.)  Other federal courts interpreting

[2] *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84 (2d Cir. 2010);  *P. Stolz Family P'Ship L.P. v. Daum*, 355 F.3d 92, 103 (2d Cir. 2004).

2

materially identical extender statutes have also agreed that extensions of "statutes of limitations" <u>do not</u> simultaneously extend "statutes of repose."  (*Infra* at 19-20.)

The instant appeal will be fully briefed by November 8 and is scheduled to be heard by this Court as early as the week of November 26 – less than 90 days from now.  While the appeal is pending, however, the parties and the District Court continue to face virtually unprecedented efforts, costs and expenses associated with an extremely compressed discovery schedule in the 16 FHFA Actions, which involve over 100 defendants and 450 RMBS offerings.  Combined, discovery in these actions will include more than 650 document custodians, more than 500 third-party subpoenas, upwards of hundreds of party and third-party depositions, complicated and expensive "forensic re-underwriting" of tens of thousands of mortgage loans and the review and production of tens of millions of pages of documents – all under an accelerated discovery schedule.  The massive discovery costs and burdens incurred during the pendency of the appeal will all be for naught if this Court were to rule in UBS's favor, as such a ruling would <u>eliminate all claims</u> against UBS.  Given what the District Court termed "the extraordinary cost and burden of this litigation," (Ex. D at 19-20), a stay of proceedings pending resolution of the appeal is appropriate.

Indeed, the District Court's decision to certify an interlocutory appeal recognized that appellate review may relieve the parties, the public and the District

3

Court of the extraordinary costs and burdens associated with the FHFA Actions:

> An appellate ruling that HERA's timeliness provision does not
> abrogate statutes of repose <u>would significantly narrow the scope of
> discovery in this case</u> and the proof that the parties would be able to
> present at trial, <u>saving the parties and the public time and money</u> . . . .

*FHFA v. UBS Americas, Inc., et al.*, 11-cv-5201(DLC), 2012 WL 1570856, at *27

(S.D.N.Y. June 19, 2012) (the "Certification Order").

   Accordingly, by the District Court's own reasoning, resolution of the

appeal herein will significantly reduce or entirely eliminate the costs and burdens

associated with the FHFA Actions and will result in significant savings for the

parties, the public and the courts.  Such savings, however, are being squandered on

a daily basis by the extraordinarily burdensome discovery taking place in the

District Court which, absent a stay, will continue during the pendency of this

appeal.  The savings envisioned by the Certification Order will only be fully

realized if this Court grants a stay pending resolution of the appeal.  *See, e.g.*,

*Estate of Re v. Kornstein Veisz & Wexler*, No. 94 Civ. 2369 SS, (S.D.N.Y. Sept. 24,

1997) (Sotomayor, J.), ECF No. 118; cases cited *infra* at 12-13.

   As many of the RMBS purchases that are the subject of the FHFA

Actions stretch back as far as <u>six years</u>, FHFA cannot seriously contend that it will

be prejudiced by having discovery suspended for a period of months while the

appeal is pending.  Rather, FHFA and the taxpayers ultimately responsible for

funding this litigation will ultimately <u>benefit</u> from a stay as they too face huge

4

discovery-related burdens that may be obviated by this Court's ruling.

## FACTUAL BACKGROUND

### A.    Fannie Mae and Freddie Mac's Role in the RMBS Market

Fannie Mae and Freddie Mac are the two largest and most
sophisticated issuers and purchasers of RMBS in the world.  As government-
sponsored yet publicly-traded entities ("GSEs") specifically chartered by Congress
to provide liquidity and affordability to the U.S. housing market, the GSEs
purchased nearly one-third of all private-label RMBS issued between 2004 and
2008 and also issued billions of dollars of their own RMBS.  (Decl. ¶ 9.)  The
GSEs thus "played a critical role in developing and sustaining the secondary
mortgage market," and were "at the center of the U.S. housing market and one of
its main driving forces."  *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382,
392 (S.D.N.Y. 2010).

As part of their domination of the U.S. mortgage market, the GSEs
were deeply involved in the purchase and sale of RMBS backed by higher-risk
mortgage loans.  (Decl. ¶ 11.)  Indeed, Fannie Mae and Freddie Mac have
conceded in non-prosecution agreements ("NPAs") entered into with the United
States Securities and Exchange Commission that they misled investors regarding
the extent of their exposure to the same types of higher-risk mortgages at issue
here, had extensive relationships with originators such as Countrywide Home

5

Loans and were intimately familiar with the "volatile" nature of the loans they

originated and the standards used to originate them.  (*Id.*)[3]  The GSEs' knowledge

of such origination practices is highly relevant to, among other things, several

applicable defenses in the FHFA Actions.

### B.    The FHFA Actions

On July 27, 2011 – nearly <u>three years</u> after FHFA was appointed

conservator for Fannie Mae and Freddie Mac – FHFA commenced the UBS Action.

(*Id.* at ¶ 13.)  On September 2, 2011, FHFA amended the complaint in the UBS

Action and commenced sixteen separate actions in the district courts of this Circuit

and New York state court against numerous financial institutions.  (*Id.* at ¶¶ 13-15.)

The complaints collectively allege that Fannie Mae and Freddie Mac purchased

nearly 450 RMBS certificates with an aggregate original principal balance of

nearly $200 billion and that the offering documents for each of the securitizations

contained various misrepresentations or omissions in violation of (i) Sections 11

and 12(a)(2) of the Securities Act, 15 U.S.C. §§ 77k, *l*(a)(2), and (ii) certain "Blue

Sky" state securities laws.  (*Id.*)  FHFA did not designate the actions in federal

court as related and initially argued that "broad coordination between and among

---

[3]  The SEC also filed complaints against several former GSE executives for
misrepresenting the GSEs' full exposure to subprime mortgages. (Ex. I, Complaint,
*SEC v. Syron, et al.*, No. 11 Civ. 9201(RJS) (S.D.N.Y. Dec. 14, 2011); Ex. J,
Complaint, *SEC v. Mudd, et al.*, No. 11 Civ. 9202(ALC) (S.D.N.Y. Dec. 16, 2011).)
(motion to dismiss denied August 30, 2012).

the [actions] would not be appropriate or efficient." (Ex. W at 5.) By Order dated

November 16, 2011, the sixteen actions in the Southern District of New York were

assigned to Judge Cote. (Decl. ¶ 16.)

### C.    UBS's Motion to Dismiss and the May 4 Order

On January 20, 2012, UBS moved to dismiss FHFA's Second

Amended Complaint (the "SAC") on grounds that were common to all of the

FHFA Actions. (*Id.* at ¶ 19.) Among other things, UBS argued that because

FHFA's purchases of the Certificates occurred more than three years prior to

bringing suit, its claims were time-barred by operation of the applicable three-year

and two-year statutes of repose found in the Securities Act and certain state Blue

Sky laws. (Ex. L at 13-17.) In response, FHFA urged the District Court that

Section 12 of HERA extended these statutes of repose for an additional three years

from the date Fannie Mae and Freddie Mac were placed into conservatorship –

September 6, 2008. Section 12 of HERA reads, in pertinent part:

> [T]he applicable statute of limitations with regard to any action brought by
> the Agency as conservator or receiver shall be—
>> (i) in the case of any contract claim, the longer of—
>>> (I) the 6-year period beginning on the date on which the claim
>>> accrues; or
>>> (II) the period applicable under State Law; and
>> (ii) in the case of any tort claim, the longer of—
>>> (I) the 3-year period beginning on the date on which the claim
>>> accrues; or
>>> (II) the period applicable under State Law.

12 U.S.C. § 4617(b)(12)(A).

Based on the plain reading of this "extender statute," and relying on distinctions recognized by this Court in *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84 (2d Cir. 2010), and *P. Stolz Family P'Ship L.P. v. Daum*, 355 F.3d 92, 103 (2d Cir. 2004), UBS argued that HERA applied only (i) to "statutes of <u>limitations</u>" and not statutes of <u>repose</u>, and (ii) to <u>state</u>, not <u>federal</u>, law claims. (*See* Ex. L.) On May 4, 2012, the District Court denied UBS's motion in large part, dismissing a negligent misrepresentation claim but upholding all other claims. *UBS Americas, Inc.*, 2012 WL 1570856. The District Court ruled that notwithstanding the plain language of Section 12 of HERA, the extender statute applied to <u>both</u> statutes of limitations and statutes of repose and applied to claims brought under both federal and state law. *Id.* at *2 - *6.

**D.    The District Court Orders Burdensome Accelerated Discovery**

With the May 4 Order denying in large part UBS's motion to dismiss, the stay of discovery imposed by virtue of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3)(B), was lifted. (Decl. ¶ 28.) Following scheduling conferences held on May 14 and June 13, the District Court entered a scheduling order dated June 14, 2012 (Ex. O, the "Scheduling Order") providing for what FHFA has described as a "very compressed timetable for discovery." (Ex. Y, at 6). The District Court entered the Scheduling Order over Defendants' objections that they would not be afforded sufficient time to adequately prepare

8

their defenses against FHFA's claims.  (Decl. ¶ 31.)  Indeed, despite the fact that

the FHFA Actions involve over a million mortgage loan files and tens of millions

of pages of documents, the Scheduling Order calls for the substantial completion of

document discovery by <u>September 30, 2012</u>, the beginning of depositions in

<u>January 2013</u>, and the completion of depositions only six months later, in <u>June

2013</u>.  (Ex. O.)   The District Court has further ordered that Defendants may

collectively depose only 20 Fannie Mae and Freddie Mac witnesses, and that such

depositions must be conducted jointly by all 100 defendants.  Thus, Defendants

must coordinate amongst themselves (i) which individuals to depose, (ii) when to

depose them, and (iii) which particular Defendant(s) will lead the particular

deposition.  (Decl. ¶ 30.)

       Moreover, the District Court acknowledged that litigating the FHFA

Actions would require the review and analysis of tens of thousands of voluminous

loan files – most of which were in the hands of third parties and would need to be

obtained through third-party subpoenas – in order to determine whether particular

breaches of underwriting guidelines occurred on a loan-by-loan basis.  (Ex. Y at 16

(District Court describing the production and review of loan files as "essential to

the prosecution" of the 16 cases).)  At the July 31 conference, counsel for FHFA

acknowledged that this loan-by-loan re-underwriting process would be "truly

laborious" and "truly burdensome."  (Ex. P at 12-13.)  On this front, approximately

9

150 third-party subpoenas have been served since June 2012 to 121 entities

believed to be in possession of relevant loan files.  (Exs. R & S.)  Defendants have

also produced approximately 170,000 loan files to FHFA.  (*Id.*)

### E.  UBS's Interlocutory Appeal is Certified and Accepted

On June 16, 2012, the District Court granted UBS's motion for an

interlocutory appeal of the May 4 Order pursuant to 28 U.S.C. § 1292(b), stating

that the issue of whether "HERA displaces the statute of repose" presented

controlling questions of law, the resolution of which would hasten the termination

of the action and about which there existed a substantial ground for difference of

opinion.  *UBS Americas*, 2012 WL 1570856, at *26.  The District Court

specifically noted that a case such as the UBS Action, where "a long trial is

envisioned to determine liability over a defense disputing the right to maintain the

action," is precisely the situation Congress had in mind when enacting 28 U.S.C. §

1292(b).  *Id.* at *27.  In so holding, it concluded that resolution of the appeal would

"significantly narrow the scope of discovery in this case and the proof that the

parties would be able to present at trial," and that "there can be no question that

such a ruling would importantly affect the conduct of [the] action."  *Id.* at *28.  In

light of the enormous resources that would be expended not only by the District

Court and Defendants but also by FHFA (and the taxpayers ultimately responsible

for its litigation expenses), the District Court concluded that appellate resolution

10

would ultimately "save[] the parties and the public time and money." *Id.*

This Court granted permission to appeal on August 14, 2012 and agreed to hear the appeal on an expedited basis. (Ex. B.)[4]

### F.    The District Court Refuses UBS's Request To Stay Proceedings

On August 17, 2012, UBS submitted a letter to the District Court, which was joined by all Defendants, requesting (1) a stay of discovery proceedings in the FHFA Actions pending resolution of UBS's appeal or (2) in the alternative, a partial stay of certain specific discovery proceedings. (Ex. T.)  On September 4, 2012, the District Court denied the application for a stay. (Ex. U.)

## ARGUMENT
### A STAY OF PROCEEDINGS PENDING RESOLUTION OF UBS'S EXPEDITED APPEAL SHOULD BE GRANTED

Pursuant to 28 U.S.C. § 1292(b), this Court may stay proceedings in the District Court on its own authority pending resolution of an interlocutory appeal. *See* 28 U.S.C. § 1292(b).  A motion for such relief is not an appeal of a District Court order; indeed, this Court may grant an emergency motion to stay proceedings in the District Court pending appeal regardless of whether the District Court has first adjudicated the motion. *See U.S. SEC v. Citigroup Global Mkts.*,

---

[4]  UBS's merits brief is due by September 19, 2012; FHFA's opposition brief is due by October 25, 2012; and UBS's reply brief is due by November 8, 2012.  The appeal will be heard as early as the week of November 26, 2012.  (Ex. C.)

673 F.3d 158 (2d Cir. 2012).

The decision whether to stay proceedings pending interlocutory appeal requires consideration of the following factors: (1) whether irreparable injury will be sustained absent a stay; (2) whether a stay will injure the non-appellant or the public interest; and (3) the likelihood of success on appeal. *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006); *Citigroup*, 673 F.3d at 162. These factors are interrelated and treated as a "sliding scale," where "'more of one excuses less of the other.'" *Thapa*, 460 F.3d at 334.

Applying these factors, courts in this Circuit and elsewhere have granted such stays where, as here, continued proceedings would waste the litigants' and the judiciary's time and resources. *See, e.g.*, *Estate of Re v. Kornstein Veisz & Wexler*, No. 94 Civ. 2369 SS, (S.D.N.Y. Sept. 24, 1997) (Sotomayor, J.), ECF No. 118 (staying all discovery pending resolution of interlocutory appeal); *id.* at ECF No. 117 (agreeing with party that "it would be a waste of judicial and litigant time and resources to pursue discovery until the appellate process has concluded"); *Ritz Camera & Image LLC v. Sandisk Corp.*, No 5:10-cv-02787 JF/HRL, ECF No. 84 (N.D. Cal. Sept. 7, 2011) (granting stay pending appeal in light of "the well-documented cost of discovery"); *Asis Internet Services v. Active Response Group*, No. C07-6211, 2008 WL 4279695 at *4 (N.D. Cal. Sept. 16, 2008) ("[a] stay could promote economy of time and effort for the court, counsel and litigants"); *see also*

12

*In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789 (JFK), 2011 WL 2566074, at

*10 (S.D.N.Y. June 29, 2011) (granting stay pending appeal where plaintiff sought

only money damages).[5]  Just months ago, in *In re Bear Stearns Mortgage Pass-*

*Through Certificates Litigation*, 08-cv-8093 (LTS) (S.D.N.Y.) (filed Sept. 18,

2008), defendants sought a stay pending this Court's interlocutory review of

whether *American Pipe* tolling applies to statutes of repose, arguing that, in the

absence of a stay, the parties would be subjected to "expensive and burdensome

discovery" and that a stay would "avoid potentially wasteful expenditure of time

and resources of the parties, non-parties, and this Court."  (Ex. Z at 11.)  Judge

Swain granted the stay on May 16, 2012.  (Ex. AA).  Given the virtually

unprecedented litigation costs associated with the FHFA Actions, the holdings of

these cases apply *a fortiori* here.[6]

---

[5] The SEC, in a recent brief filed with this Court, argued that "the costs and risks of
a trial" would constitute irreparable injury sufficient to justify a stay pending
appeal. *See SEC v. Citigroup Global Mkts., Inc.*, No. 11-2557, Document 38-1, at 8.

[6] *Renegotiation Board v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1 (1974), cited
by the District Court for the proposition that "mere litigation expense" does not
constitute irreparable injury, is inapposite as it did not involve an application for a
stay pending interlocutory appeal where allowing burdensome accelerated
discovery to continue would eviscerate many of the benefits of the certification
process.  Rather, it addressed a motion to enjoin administrative proceedings
pending resolution of a FOIA request.  Unlike the proceedings in *Renegotiation
Board,* the FHFA Actions involve considerable system-wide burdens and costs,
including the significant time constraints imposed on the parties and the District
Court, the unprecedented costs associated with the accelerated discovery schedule,
the potential waste of taxpayer money and the burden on third parties.

13

### A.   <u>Defendants Will Suffer Irreparable Harm Absent A Stay</u>

A failure to stay the FHFA Actions pending appeal will irreparably injure approximately 100 defendants across the FHFA Actions.  *See Citigroup*, 673 F.3d at 169 (granting stay pending appeal where movant showed "serious, perhaps irreparable" harm).  As discussed above, the District Court noted that the statute of repose issue should be addressed now, since "an intermediate appeal may avoid protracted litigation."  *UBS Americas,* 2012 WL 1570856, at *28.  The policy underlying statutes of repose – *i.e.*, to establish a date certain after which a defendant's potential liability is extinguished – would be undermined if UBS were required to devote enormous resources and time in defending against claims that have been extinguished.  Moreover, the absence of a stay will require all parties to allocate extraordinary resources to defending these matters over the next several months – which could total tens, if not hundreds, of millions of dollars in combined fees and expenses.  *See Sutherland*, 2012 WL 751970, at *4 (considering litigation costs in granting stay where appellate resolution of the issue "may be dispositive of this case"); *O'Brien v. Avco Corp.*, 309 F. Supp. 703 (S.D.N.Y. 1969) (granting stay because appellate determination might dispose of entire suit).

Indeed, the parties to the FHFA Actions:

- have agreed to over <u>650</u> combined document custodians;
- have served or plan to serve over <u>500</u> third-party subpoenas;
- expect to produce and review <u>tens of millions</u> of documents – indeed,

14

> FHFA alone has indicated that it anticipates producing "upward of <u>1.7 million</u> documents" in these actions by September 30; and

- expect to take <u>hundreds</u> of party depositions between January and June, 2013,[7] which does not include additional Rule 30(b)(6), expert and third-party depositions. (Decl. ¶ 41.)

Significantly, the FHFA Actions will require the immediate review and analysis of tens of thousands of voluminous loan files – most of which are in the hands of third parties – to determine whether particular breaches of underwriting guidelines occurred on a <u>loan-by-loan basis</u>.  (Decl. ¶¶ 33-35.) Counsel for FHFA has conceded that this process is "<u>truly laborious</u>."  (Ex. P at 12.)

In addition to the irreparable harm to the Defendants, the FHFA Actions also involve substantial system-wide costs, including the significant time constraints imposed on the parties and the District Court, the need for the District Court to address numerous discovery disputes remaining between the parties, the unprecedented costs associated with the expansive and expedited discovery schedule, the potential waste of taxpayer money and the substantial burden on hundreds of third parties forced to respond to subpoenas issued in these Actions.  A stay pending appeal will dramatically reduce such system-wide costs.[8]

---

[7]  While Judge Cote gave FHFA the right to take upwards of 320 depositions of Defendants, the Defendants as a group are only permitted to take 20 depositions total of Fannie Mae, Freddie Mac and FHFA employees, thus causing the disproportionate burden of deposition discovery to fall on Defendants.

[8] As the District Court has noted, the UBS Action is the "linchpin in the coordinated work in which all parties are engaged in this complex litigation."  (Ex.

*(cont'd)*

## B.    FHFA Will Not Suffer Any Prejudice

While Defendants will be severely and irreparably injured in the

absence of a stay, FHFA will not be harmed in any way by a stay pending appeal.

*See Sutherland*, 2012 WL 751970, at *3 ("[T]he only harm to [plaintiff] from a

stay is delay in achieving a final resolution of her claim, and that harm may be

fully remedied by an award of pre-judgment interest.").  Indeed, the RMBS

purchases in these actions stretch back as far as 2005 – over six years before FHFA

ultimately brought suit.  After sitting on its claims for this extended period of time,

FHFA cannot credibly contend that it will be prejudiced by having to wait an

additional number of months while the appeal is pending.  *Cendant Corp. v.

Forbes*, 72 F. Supp. 2d 341, 343 (S.D.N.Y. 1999) ("[Plaintiff], for its part, has

failed to show how it will ultimately be prejudiced by the intervening delay, since

any monetary award is subject to interest.").

To the contrary, FHFA and the taxpayers funding this litigation may

ultimately benefit from a stay of proceedings in the District Court pending appeal,

as FHFA also stands to spend millions of taxpayer dollars prosecuting these

Actions while facing the risk that its claims will be dismissed on threshold legal

_____
*(cont'd from previous page)*
U at 5.)  While the District Court held that a stay of only the UBS Action would
"derail" the coordinated actions before Judge Cote, (*id.*), a stay of all FHFA
Actions would have no such "derailing" effect; instead, it would simply postpone
proceedings during the pendency of the appeal.

16

issues.  As the District Court recognized in the Certification Order, an appellate ruling by this Court on the statute of repose issue would "sav[e] the parties and the public time and money."  *UBS Americas*, 2012 WL 1570856, at *28.  A stay also will serve the public interest by preventing the unnecessary use of judicial resources.  *Sutherland*, 2012 WL 751970, at *4 (granting stay where "considerations of judicial economy counsel . . . against investment of court resources in proceedings that may prove to have been unnecessary").[9]

## C.     UBS Has a Likelihood of Succeeding on Its Appeal

Finally, the third factor – the likelihood of success on appeal – weighs in favor of a stay.  This Court deliberately avoided "setting too high a standard" for the "likelihood of success" factor.  *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002).  Indeed, where, as here, an appeal "presents an issue of first impression"

---

[9] In denying the stay request, the District Court cited this Court's decision in *Citigroup*, 673 F. 3d 158, for the proposition that it is bound to "give deference to [FHFA's] assessment of the public interest."  (Ex. U at 3-4.)  The deference afforded to the SEC in *Citigroup* concerned "wholly discretionary matters of policy" – the decision to settle.  *Citigroup*, 673 F.3d at 163.  Even if, *arguenedo*, deference is to be afforded in that context, such deference cannot extend to matters involving litigation where an agency is a litigant.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) (affording "deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate").  Moreover, the District Court ignored the very next line of this Court's opinion, which stated that such deference "does not mean that a court must necessarily rubber stamp all arguments made by such an agency."  *Citigroup*, 673 F.3d at 168.  Furthermore, FHFA has argued elsewhere that it is not "not a government actor" when acting as conservator for the GSEs.  (Ex. CC at 18-20.)

within this Circuit about which the "Court of Appeals may disagree" with the District Court, "that reason alone" demonstrates a likelihood of success. *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010).

### 1.    The Plain Text of HERA Supports Dismissal

It is well established that "[t]he starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (citation omitted). Here, Section 12 of HERA on its face applies only to "statutes of limitations," not "statutes of repose," and, in any event, only to "state" and not "federal" law claims.

### 2.    This Court Has Emphasized the Distinction Between Statutes of Limitations and Statutes of Repose

While the question of whether Section 12 of HERA encompasses statutes of repose is one of first impression in this Circuit, UBS's plain reading of HERA is compelled by long-standing precedent in this Court which has recognized fundamental differences between the two concepts. In *Ma*, this Court emphasized that "a statute of limitations creates an affirmative defense where plaintiff failed to bring suit within a specified period of time after his cause of action accrued, often subject to tolling principles. By contrast, a statute of repose extinguishes a plaintiff's cause of action after the passage of a fixed period of time . . . ." *Ma*, 597 F.3d at 88 n.4. Statutes of repose – which are substantive, as opposed to

18

procedural, in nature – function to bar causes of action "from ever arising."  *P. Stolz*, 355 F.3d at 103.

      Just last month, the United States government filed an *amicus* brief with the Fourth Circuit in which it argued that "[s]tatutes of limitations and statutes of repose address <u>different issues</u> and serve <u>different functions</u>" – the precise argument UBS has advanced throughout these proceedings.  *See* United States *Amicus Curiae* Brief, submitted in *Waldburger v. CTS Corp.*, No. 12-1290, ECF No. 20 at 8 (4th Cir. Aug. 16, 2012) (attached as Exhibit V).  In *Waldburger*, the district court held that a federal provision, which on its face applies only to "statutes of limitations," did not, by its terms, operate to displace substantive statutes of repose.  *Waldburger*, No. 11-cv-39, 2012 WL 380053, at *1 (W.D.N.C. Feb. 6, 2012).  In its *amicus* brief in support of the district court's decision, the United States stressed that the statute's "plain text makes clear that it has <u>no application to statutes of repose</u>."  (Ex. V at 9.)  This argument is <u>squarely at odds</u> with FHFA's (and Judge Cote's) reading of HERA.

### 3.   <u>Other Courts Have Adopted UBS's Plain Reading of HERA</u>

      Two federal courts that have addressed whether the same language found in Section 12 of HERA applies to statutes of repose have resolved the question in UBS's favor.  *See Nat'l Credit Union Admin. Bd. v. RBS Sec. Inc.*, No. CV 11-5887-GW, ECF No. 126 (C.D. Cal. Dec. 19, 2011); *Resolution Trust Corp.*

*v. Olson*, 768 F. Supp. 283, 285 (D. Ariz. 1991). In *National Credit Union*, Judge Wu, in a series of tentative decisions, expressly rejected the plaintiff's argument that "the statute of limitations/statute of repose distinction [is] no distinction at all" and refused to construe the extender statute to extend the Securities Act's three-year statute of repose. *NCUA*, ECF No. 126 (Jan. 30, 2012). In confirming the tentative decisions, Judge Wu considered and expressly rejected the District Court's May 4 Order. (Ex. DD, at 1.) Similarly, in *Resolution Trust Corp.,* Judge Copple held that an identical extender statute applies only to statutes of limitations, not statutes of repose. 768 F. Supp. at 285.

## **CONCLUSION**

For the foregoing reasons, UBS respectfully requests that this Court grant UBS's motion.

Dated:   New York, New York
         September 7, 2012

Respectfully submitted,

  /s/ Jay B. Kasner
Jay B. Kasner (jay.kasner@skadden.com)
Scott D. Musoff (scott.musoff@skadden.com)
Robert A. Fumerton (robert.fumerton@skadden.com)
Alexander C. Drylewski (adrylews@skadden.com)
SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone:  (212) 735-3000

*Attorneys for Defendants-Appellants*

20