Hearing Date and Time: September 11, 2012 at 10:00 a.m. (ET)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip Bentley
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| RESIDENTIAL CAPITAL, LLC, et al., | : Case No. 12-12020 (MG) |
| | : |
| Debtors. | : Jointly Administered |
| | : |

------------------------------------------------------------ x

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**TO DEBTORS' SEPTEMBER 7, 2012 STATUS REPORT REGARDING**
**THEIR INITIAL AND SUPPLEMENTAL MOTIONS**
**FOR APPROVAL OF RMBS TRUST SETTLEMENT AGREEMENT**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby files this response to the Debtors' status report (the "Status Report") – filed on Friday afternoon with no prior notice to the Committee – concerning the Debtors' initial and supplemental motions (together, the "Rule 9019 Motion"), pursuant to Bankruptcy Rule 9019, for approval of the proposed RMBS Settlement Agreement [Docket No. 1373]. The Committee respectfully states as follows:

1. The Committee was disturbed to learn on Friday afternoon that the Debtors had filed a status report, in advance of tomorrow's status conference on the Rule 9019 Motion, without any advance notice. Had it known that the Debtors would be filing a written status report, the Committee would have filed its own report on Friday, rather than burdening the Court with a filing today.

2. In these circumstances – and considering also that the Status Report is inaccurate in important respects – the Committee believes the filing of this brief response is appropriate and will assist the Court's deliberations at tomorrow's hearing.[1]

I. **The Debtors' Contention That They Have "Responded to All Discovery Requests in Compliance With the Court's Scheduling Order" is Not True**

3. The Debtors represent, in the heading of Point I of the Status Report, that they "have responded to all discovery requests in compliance with the Court's scheduling order." Status Report at p. 5. In fact, although the Debtors' compliance with the expedited discovery provisions of that order is essential to the Committee's ability to complete its work within the order's very tight time-frame, the Debtors have not met their obligations. They are currently in breach of the deadlines on multiple discovery requests served by the Committee and other parties concerning the negotiation, evaluation, and approval of the proposed RMBS Settlement. In addition, the Debtors have failed to respond in timely fashion to the Committee's request for the production of sample loan files, a crucial part of the settlement evaluation process. Due to the Debtors' failure to comply timely and in full with the requested discovery, it is unreasonable to expect that a hearing of this significance can proceed on the tight schedule currently in place.

---

[1] The three RMBS Trustees that serve on the Committee—The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, and U.S. Bank National Association—have abstained from voting or commenting on this response.

4. _Discovery Concerning the Settlement Process_.  The Committee served the Debtors on August 25, 2012 with requests for documents concerning the alleged arms-length nature of the Debtors' initial and amended RMBS Settlement (including documents reflecting the Debtors' evaluation, negotiation, and approval of that agreement), as well as interrogatories seeking the names of potential witnesses with knowledge bearing on these topics.  Pursuant to the expedited discovery deadlines set forth in the Court's July 31, 2012 Scheduling Order [Docket No. 945] (the "Scheduling Order"), the Debtors' responses to the Committee's discovery requests were due within ten days, *i.e.*, on or before September 4, 2012.  However, the Debtors have not yet produced a single document responsive to these requests or identified a single potential witness – and they have told the Committee that they may not produce these documents or provide these interrogatory responses until next week.[2]  As a result, the Committee may not be in a position even to *identify* the witnesses it needs to depose on these issues until late September, despite the Scheduling Order's September 24 deadline for the completion of depositions and other fact discovery from the Debtors.

5. _Discovery Concerning the Valuation of the RMBS Claims_.  As previously reported to the Court, a central part of the Committee's assessment of the merits of the proposed RMBS Settlement involves loan sampling and review.  After retaining and consulting with its RMBS experts, the Committee on August 17 selected a random sample of 1,500 loans (which it believes is sufficient for a statistically sound extrapolation) and gave the Debtors the list of loan files to be produced.  While we understand the Debtors are attempting to produce these files as expeditiously as possible, the process has taken significantly longer than the ten-day expedited

---

[2] We understand that the Debtors have also failed to comply with the document requests and interrogatories served by other parties, including MBIA and FGIC.  In addition, Ally Financial, Inc. ("Ally") has failed to produce documents responsive to the Committee's subpoenas within 10 days, as required by the Scheduling Order, and has given the Committee no indication when it intends to produce these documents.

- 3 -

production period contemplated by the Scheduling Order. The Debtors did not begin their loan file production until 18 days after receipt of our request, and they now say they expect to complete that production "over the next two weeks" (Status Report ¶ 17) – *i.e.*, by the week of September 17, a full month after receipt of the Committee's request.

6. The Committee's experts have expressed concern that, despite their efforts to proceed at the fastest possible pace, this schedule may not leave them with sufficient time to review the 1,500 loan files, to "re-underwrite" these loans, to analyze the implications for the total population of 1.6 million loans, and then to prepare and file expert reports reflecting a comprehensive analysis of these issues by October 8, as required by the Scheduling Order. Moreover, the schedule provides little opportunity for consideration of the experts' analysis by the Committee's other professionals and its members or for the development of a measured Committee recommendation based on the collective legal, factual, and expert analysis being performed. It also provides little or no opportunity for serious discussion of the issues among the parties, much less for any modification of the settlement or narrowing of disputed issues. As a result of the foregoing, the schedule is too tight for the task.

**II.    The Debtors' Contention That the HoldCo Election Amendments "Do Not Require Any Change to the November 5 Hearing Schedule" is Also Unfounded**

7. As the Court will recall, the Scheduling Order was based on the Debtors' representation that they would not materially amend the proposed RMBS Settlement Agreement, but would merely "clarify" it in a few specific respects that the parties had already discussed and that the Debtors would confirm in writing the next day. *See* Transcript of July 30, 2012 Hearing at 31-32; *see also id.* at 34-38. Contrary to that representation, the Amended RMBS Settlement filed by the Debtors on August 15, 2012 contains a number of new and previously undisclosed provisions, most notably the so-called HoldCo Election.

8. The HoldCo Election profoundly alters the nature and impact of the RMBS Settlement by permitting the Trustees to elect to receive an allowed claim of up to $1.74 billion against Residential Capital, LLC ("ResCap LLC" or "HoldCo"). If allowed, that $1.74 billion claim could strip ResCap LLC's unsecured bondholders of control over their class's treatment under a chapter 11 plan and transfer that control to the RMBS Trusts. And that is not all: The allowance of this massive claim could give indirect control over the ResCap LLC GUC class, and potentially over the entire chapter 11 plan, to the RMBS Investors who negotiated the RMBS Settlement and who purport to have the power to "direct" the Trustees. As the Court is aware, the Investors have entered into Plan Support Agreements requiring them to support—and to direct the Trustees to support—the Debtors' proposed release of Ally, regardless of the results of the Examiner's investigation into the propriety of that release.

9. Clearly, this is a radical change to the RMBS Settlement, which previously released HoldCo of all liability to the RMBS Trusts. At a minimum, this amendment warrants an adjournment of the November 5 hearing schedule. As explained by Wilmington Trust in its motion to adjourn that schedule, the HoldCo Election gives ResCap LLC's unsecured bondholders (and Wilmington Trust as their indenture trustee), for the first time, a direct and compelling need to participate in the RMBS Settlement proceedings. It would be unfair to require those creditors to jump mid-stream into an already compressed discovery schedule. In addition, in the Committee's view, it would be ill-advised for the Court and the parties to consider the HoldCo Election prior to completion of the Examiner's investigation: As the Debtors have acknowledged, the HoldCo Election rests entirely on purported alter ego claims against ResCap LLC that are closely intertwined with the claims against Ally that the Examiner is investigating. Moreover, these types of claims are ordinarily viewed as property of the estates, not of individual creditors, and are based

on factual allegations that, if proven, would likely provide grounds for substantive consolidation affecting *all* creditors of the affected entities, not just one category of creditors. That is why alter ego claims, like substantive consolidation claims, are typically – and properly – considered in conjunction with a chapter 11 plan.  For these reasons, the Committee believes that the Court and the parties would benefit from a deferral of consideration of the RMBS Settlement until after the filing of a plan and disclosure statement that take into account the Examiner's findings and conclusions.

10.    Apparently recognizing the inappropriateness of their August 15 RMBS Settlement amendments, the Debtors now say they have decided to "seek to remove the HoldCo Election" and to replace it with yet another amendment to the RMBS Settlement – but that they are unable to disclose the details of that potential amendment because it is still under negotiation. *See* Status Report ¶ 19.[3]  Further comment will have to await the outcome of those negotiations and the filing of a Second Amendment to the RBMS Settlement.  For now, it is sufficient to note that the Debtors' apparent disarray over such fundamental issues itself suggests that an adjournment of the Scheduling Order will be beneficial to all parties and to the Court.  A more measured and orderly process, instead of the headlong pace at which the parties have been proceeding, may help to avoid further dislocations and to ensure that the extremely complex issues with which the parties are grappling receive the careful consideration they deserve.

---

[3] Without providing any details, the Debtors say they believe the amendment they are negotiating will "defer until later the disputed issues regarding allocation of the RMBS claim as against ResCap LLC." *Id.* If what the Debtors mean is that they intend to further amend the RMBS Settlement to preserve billions of dollars of potential Trust claims against ResCap LLC – that is, to carve out such claims from the release that, under the current RMBS Settlement, the Trusts would be giving to ResCap LLC– this would be yet another radical amendment to the settlement, with implications potentially as profound as those of the HoldCo Election itself.

**III.    Additional Considerations**

11.    Apart from the discovery and Holdco Election issues discussed above, the Committee has additional concerns about the Rule 9019 Motion, which it will explain in greater detail at the September 11, 2012 status conference. Based on its work over the past several months, the Committee has come to understand that this motion has complex and far-reaching implications beyond those that are immediately apparent. The motion should not be decided on the basis of a hasty and incomplete record, nor should it be decided in a vacuum, divorced from the broader considerations that the Examiner is investigating and that the parties will need to address in the context of a chapter 11 plan.

12.    The Court is being asked to approve a settlement of historic proportions, which will likely have national ramifications. It will also have a pervasive impact on the treatment of other unsecured creditors in the case and on the terms of a chapter 11 plan. The settlement was negotiated by Debtors with little motivation to protect creditors by limiting the settlement number and with every motivation to lock in the RMBS Investors' support for the Debtors' pre-negotiated plan providing Ally with a global release of estate and third party claims. The settlement raises a host of complex legal and factual issues, going both to the total size of the RMBS claim and to its allocation among the Trusts, that the Debtors appear to have spent little time considering or negotiating but that will have major impacts on other creditor constituencies. The Holdco Election episode – in which the Debtors consented to the creation of an enormous claim against ResCap LLC, apparently without grasping the potential ramifications for their capital structure or for the plan process – only heightens the Committee's concerns. Finally, the Committee has come to believe that a deferral of the RMBS Settlement to a later stage of this case, after the Examiner has completed his report and greater clarity exists as to the Debtors' assets and potential creditor

distributions, may maximize the prospects for constructive multilateral negotiations and for a consensual resolution of this enormously complex dispute and of the reorganization as a whole.[4]

13. At the status conference, the Committee will set forth several alternative approaches for the Court to consider going forward to assure the most constructive process and the best possible result for the estates.

Dated: New York, New York
September 10, 2012

                              KRAMER LEVIN NAFTALIS & FRANKEL LLP

                              /s/ Kenneth H. Eckstein
                              Kenneth H. Eckstein
                              Philip Bentley
                              Douglas H. Mannal
                              1177 Avenue of the Americas
                              New York, New York 10036
                              Telephone: (212) 715-9100
                              Facsimile: (212) 715-8000
                              *Counsel for the Official Committee*
                              *of Unsecured Creditors*

---

[4] We understand the Debtors are concerned that an adjournment of the November 5 hearing might interfere with the asset sale hearings currently scheduled for November 19, 2012. This concern is unfounded. The Scheduling Order protects the sale process, while at the same time fully preserving the Trustees' rights, regardless of when the Court hears the Rule 9019 Motion. As protection for allowing the sale to proceed, the Scheduling Order preserves the Trustees' rights to assert cure claims in the absence of a satisfactory settlement, by providing that any allowed cure claims (up to an agreed cap) will attach to the sale proceeds. This agreement to protect the sale process by deferring any cure claim litigation benefits all parties – particularly the Trustees and the certificate holders, who will be the principal beneficiaries of the sale. A reasonable extension of the timetable to consider the proposed settlement will not change this equation.

Moreover, the November 5 hearing schedule is, and has always been, subject to the Court's inherent power to control its docket – and no provision of the Scheduling Order provides otherwise. In addition, the hearing schedule was set on the basis of expedited discovery provisions that the Debtors have been unable to comply with, as well as the Debtors' representation – now breached – that they would not amend the RMBS Settlement Agreement in material and undisclosed respects. Finally, an adjournment would hardly come as a surprise to anyone, given the Court's observation at the July 30, 2012 hearing that the proposed hearing schedule was "aggressive" and might unduly constrain constructive discussions among the parties. *See* Transcript of July 30, 2012 Hearing at 37-38.