KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, <u>et al.</u>, | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

----------------------------------------------------------- x

**NOTICE OF PRESENTMENT OF APPLICATION OF THE OFFICAL**
**COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER**
**AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**EPIQ BANKRUPTCY SOLUTIONS, LLC AS THE INFORMATION**
<u>**AGENT FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

      1.      Upon the annexed application (the "**Application**") of the Official Committee of Unsecured Creditors of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), for entry of an order authorizing the employment and retention of Epiq Bankruptcy Solutions, LLC, as the Information Agent for the Official Committee of Unsecured Creditors, the undersigned will present a  proposed order approving the Application substantially in the form attached to the Application (the "**Proposed Order**") to the Honorable Martin Glenn, United States Bankruptcy Judge, Room 501 of the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, for signature on **September 24, 2012 at 12:00 p.m.** (prevailing Eastern Time).

      2.      Any objections to the Proposed Order must be made in writing, filed with the Bankruptcy Court (with a copy to Chambers) in accordance with the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 141] (the "**Case Management Order**"), and served

upon the Special Service List, as that term is defined in the Case Management Order, so as to be actually received no later than **September 17, 2012 at 4:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**").

        3.    If no objections to the entry of the Proposed Order are timely filed and served on or before the Objection Deadline, the Court may enter the Proposed Order with no further notice or opportunity to be heard offered to any party.  If an Objection is received in accordance with the terms above, the Court will schedule a hearing with respect to the relief sought in the Application.

        4.    A copy of the Case Management Order and the Application can be viewed and obtained on the Court's website at www.ecf.nysb.uscourts.gov or, without charge, at the Debtors' restructuring website at www.kccllc.net/rescap.

Dated: September 10, 2012
      New York, New York

                  KRAMER LEVIN NAFTALIS & FRANKEL LLP
                  /s/ Stephen D. Zide_____
                  Kenneth H. Eckstein
                  Douglas H. Mannal
                  Stephen D. Zide
                  Kramer Levin Naftalis & Frankel LLP
                  1177 Avenue of the Americas
                  New York, New York  10036
                  Telephone:  (212) 715-9100
                  Facsimile:  (212) 715-8000
                  *Counsel for the Official Committee*
                  *of Unsecured Creditors*

**Presentment Date: September 24, 2012 at 12:00 p.m. (ET)**
**Objection Deadline: September 17, 2012 at 4:00 p.m. (ET)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, <u>et</u> <u>al.</u>, | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

--------------------------------------------------------- x

## APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS THE INFORMATION <u>AGENT FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>

## TABLE OF CONTENTS

**PAGE**

BACKGROUND ......................................................................................................................... 1

JURISDICTION AND VENUE ................................................................................................... 2

RELIEF REQUESTED ................................................................................................................ 2

SERVICES TO BE PROVIDED ................................................................................................. 2

EPIQ'S QUALIFICATIONS ....................................................................................................... 4

EPIQ'S DISINTERESTEDNESS ............................................................................................... 5

PROFESSIONAL COMPENSATION ........................................................................................ 5

NOTICE ....................................................................................................................................... 7

NO PRIOR REQUEST ................................................................................................................ 7

CONCLUSION ............................................................................................................................ 8

## EXHIBITS

**Exhibit A** - Proposed Order

**Exhibit B -** Horwitz Declaration

**Exhibit C -** Services Agreement

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of Residential Capital, LLC, and certain of its subsidiaries, debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned jointly administered chapter 11 cases (the "**Chapter 11 Cases**") hereby makes this application (the "**Application**"), pursuant to 11 U.S.C. §§ 105(a), 1102(b)(3)(A) and 1103(a), for entry of an order (the "**Order**"), in substantially the form attached hereto as **Exhibit A**, authorizing the Committee to employ Epiq Bankruptcy Solutions, LLC ("**Epiq**") as information agent (the "**Information Agent**") for the Committee, *nunc pro tunc* to May 22, 2012.  In support of the Application, the Committee relies upon and incorporates by reference the Declaration of Jason D. Horwitz, Vice President and Senior Consultant of Epiq, attached hereto as **Exhibit B** (the "**Horwitz Declaration**").  In further support of the Application, the Committee respectfully represents as follows:

<u>**BACKGROUND**</u>

1.      On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

2.      On May 16, 2012, the United States Trustee for the Southern District of New York (the "**United States Trustee**") appointed the Committee, which currently consists of nine members.  The current members of the Committee are: AIG Asset Management LLC, Allstate Life Insurance Company, the Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, Rowena L. Drennen, Financial Guaranty Insurance

Company, MBIA Insurance Corporation, U.S. Bank National Association, and Wilmington

Trust, N.A.  Beginning that same afternoon, the Committee selected its professionals to represent

the Committee in the Chapter 11 Cases.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in

this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are sections 105(a),

1102(b)(3) and 1103(a) of the Bankruptcy Code, and Rule 2014(a) of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2014-1 of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local**

**Rules**").

### RELIEF REQUESTED

5.      By this Application, the Committee seeks the entry of an order authorizing

it to employ and retain Epiq as Information Agent for the Committee *nunc pro tunc* to May 22,

2012.

### SERVICES TO BE PROVIDED

6.      Subject to this Court's approval, Epiq will render professional services to

the Committee enabling the Committee to comply with its obligations under section 1102(b)(3)

of the Bankruptcy Code.  Section 1102(b)(3) of the Bankruptcy Code provides that:

A committee appointed under subsection (a) shall –

(A) provide access to information for creditors who –
   (i) hold claims of the kind represented by that
        committee; and
   (ii) are not appointed to the committee;

2

(B) solicit and receive comments from the creditors described
in subparagraph (A); and

(C) be subject to a court order that compels any additional
report or disclosure to be made to the creditors described in
subparagraph (A).

11 U.S.C. § 1102(b)(3).

7.      The Committee believes that the retention of Epiq to assist the Committee
in complying with its obligations under section 1102(b)(3) of the Bankruptcy Code will add to
the effective administration of the Chapter 11 Cases and reduce the overall expense of
administering these cases.  Epiq will undertake, *inter alia*, the following actions and procedures,
as may be necessary and appropriate:

(a)     Establish and maintain a website (the "**Committee Website**") at
www.rescapcommittee.com that provides, without limitation:

(i)     General information regarding the Chapter 11 Cases;

(ii)    A general overview of the chapter 11 process;

(iii)   Contact information for the Debtors (and any information hotlines that
they establish), the Debtors' counsel and the Committee's counsel;

(iv)    The date by which unsecured creditors must file their proofs of claim;

(v)     The voting deadline with respect to any chapter 11 plan of reorganization
filed in the Chapter 11 Cases;

(vi)    The claims docket, as established by the Debtors;

(vii)   The Debtors' monthly operating reports;

(viii)  A list of upcoming omnibus hearing dates and the calendar of matters on
such hearing dates;

(ix)    Answers to frequently asked questions;

(x)     Links to other relevant websites (e.g., the Debtors' corporate website, the
website of the Debtors' notice, claims and soliciting agent, KCC, LLC, the
Bankruptcy Court website and the website of the United States Trustee); and

3

    (xi)    An electronic inquiry form for creditors to submit questions and comments.

(b)    Establish an email address to allow unsecured creditors to send questions and comments concerning the Chapter 11 Cases;

(c)    Provide a call center or other creditor hotline, respond to creditor inquiries via telephone, letter, email, facsimile or otherwise, as appropriate, and related services (which shall be published on the Committee Website);

(d)    Assist the Committee with certain administrative tasks, including, but not limited to, printing and serving documents as directed by the Committee and its counsel; and

(e)    Provide a confidential data room, if necessary.

### EPIQ'S QUALIFICATIONS

8.    The Committee has selected Epiq as its Information Agent because Epiq is particularly well-suited to perform the tasks discussed above, including the administration of the Committee Website.   In the normal course of its business, Epiq is often called upon to create websites for the purpose of providing access to information for creditors.  Epiq is experienced and well-qualified to provide the Committee and unsecured creditors with access to information in connection with the Chapter 11 Cases having previously been retained as a communications services agent for official committees in other chapter 11 cases.

9.    Large chapter 11 cases in which Epiq has created websites to provide creditors access to information include: In re Eastman Kodak Company, et al., No. 12-10202 (ALG) (Bankr. S.D.N.Y.);  In re AMR Corporation, et al., No. 11-15463 (SHL) (Bankr. S.D.N.Y.); In re LAD LLC, et al., No. 11-12010 (KG) (Bankr. D. Del.); In re Mesa Air Group, Inc., et al., No. 10-10018 (MG) (Bankr. S.D.N.Y.); In re Motors Liquidation Company, et al., No. 09-50026 (REG) (Bankr. S.D.N.Y.) (on behalf of both the Official Committee of Unsecured Creditors and the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims); In re Dayton Superior Corporation, No. 09-11351 (Bankr. D. Del.); In re Tarragon Corporation,

4

et al., No. 09-10555 (Bankr. D. N.J.); In re Thornburg Mortgage, Inc., et al., No. 09-17787 (Bankr. D. Md.); In re Tropicana Entertainment, LLC, et al., No. 08-10856 (Bankr. D. Del.); In re Washington Mutual, Inc., et al., No. 08-12229 (Bankr. D. Del.).

10.     As such, Epiq is well-qualified to prepare the Committee Website and to assist the Committee in providing the Debtors' unsecured creditors with access to information in connection with the Chapter 11 Cases.

## EPIQ'S DISINTERESTEDNESS

11.     Based upon the Declaration of Jason D. Horwitz, Vice President and Senior Consultant of Epiq, attached hereto as **Exhibit B** (the "**Horwitz Declaration**"), sworn to on September 10, 2012, incorporated herein by reference, to the best of Epiq's knowledge, except as may be set forth in the Horwitz Declaration, Epiq neither holds nor represents any interest materially adverse to the interests of the Committee or the Debtors' estates with respect to any matter upon which Epiq is to be engaged, and the Committee believes that Epiq's employment will be in the best interests of the unsecured creditors, which the Committee represents.

12.     As set forth in the Horwitz Declaration, Epiq is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.  To the extent that Epiq discovers any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to file promptly a supplement to the Horwitz Declaration.

## PROFESSIONAL COMPENSATION

13.     Epiq seeks to be compensated by the Debtors' estates for professional services rendered on behalf of the Committee in connection with the Chapter 11 Cases in accordance with the provisions of the standard services agreement (and pricing schedule annexed

5

thereto) (the "**Services Agreement**") by and between the Committee and Epiq, a copy of which is annexed hereto as **Exhibit C**.

14.     The Committee respectfully submits that the rates charged by Epiq are fair and reasonable and have been negotiated with the Committee. The Committee believes that engaging Epiq is the most cost-efficient manner for the Committee to comply with the requirements of section 1102(b)(3).  Since the function served by Epiq is administrative in nature, the Committee believes there will be a significant cost savings that ultimately inures to the benefit of the Debtors' estates and their creditors, thereby eliminating the administrative burden of maintaining the Committee Website from counsel representing the Committee.

15.     As the fees and expenses to be incurred by Epiq under the proposed engagement will be administrative in nature, the Committee submits that this Court should authorize the Debtors to compensate Epiq on a monthly basis in accordance with the terms and conditions of the Services Agreement, upon Epiq's submission to the Committee, the Debtors and the United States Trustee of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection therewith.

16.     In addition, the Committee requests that the Committee, the Debtors and the United States Trustee shall have ten (10) business days to advise Epiq of any objections to the monthly invoices.  If an objection cannot be resolved, the Committee will schedule a hearing before this Court to consider the disputed invoice. Unless advised of an objection, the Debtors shall pay each Epiq invoice within thirty (30) days after the ten-day review period, in the ordinary course of business.  If an objection is raised to an Epiq invoice, the Debtors will remit to Epiq only the undisputed portion of the invoice and, if applicable, will pay the remainder to Epiq upon the resolution of the dispute or as directed by the Court.

17.     Notwithstanding the previous two paragraphs, Epiq will (a) file a final fee application, and (b) submit monthly fee statements in the event that Epiq's fees exceed $2,000 during any given month.  Such fee applications and statements will be filed consistent with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of the Court, the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 17, 2012, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated November 25, 2009, and the United States Trustee Fee Guidelines (collectively, the "**Fee Guidelines**").

## NOTICE

18.     Consistent with the procedures described in the Court's Order Under Bankruptcy Code Sections 102(1), 105(A) and 105(D), Bankruptcy Rules 1015(C), 2002(M) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 141] (the "**Case Management Order**"), this Application has been served on the Monthly Service List (as defined in the Case Management Order).  In light of the nature of the Application, the Committee submits that no other and further notice be given and that the notice provided of the Application is sufficient.

## NO PRIOR REQUEST

19.     No previous application for the relief sought herein has been made to this or any other court.

7

<u>CONCLUSION</u>

WHEREFORE, the Committee respectfully requests entry of an Order, in substantially the form annexed hereto as **<u>Exhibit A</u>**, authorizing the employment and retention of Epiq as Information Agent for the Committee *nunc pro tunc* to May 22, 2012, together with such other and further relief as is just and proper.

Dated: September 10, 2012
     New York, New York

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,**

By:    /s/ Julie Becker
        Julie Becker, Vice President, Corporate
        Capital Markets, Wilmington Trust, N.A.

        Co-Chair, Official Committee of Unsecured
        Creditors of Residential Capital, LLC, et al.

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

In re:                                                      :      Chapter 11
                                                            :
Residential Capital, LLC, et al.,                           :      Case No. 12-12020 (MG)
                                                            :
                             Debtors.                       :      Jointly Administered
                                                            :

------------------------------------------------------------ x

### ORDER AUTHORIZING THE RETENTION OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS INFORMATION AGENT FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Upon the application (the "**Application**")[1] of the Official Committee of Unsecured Creditors (the "**Committee**") of Residential Capital, LLC and certain of its subsidiaries, debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") for an order authorizing the Committee to employ and retain Epiq Bankruptcy Solutions, LLC ("**Epiq**") as Information Agent to the Committee in accordance with the terms of the Services Agreement, a true and correct copy of which is attached to the Application as **Exhibit C**, all as more fully set forth in the Application; and this Court having jurisdiction to order the relief provided herein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, Acting C.J.); and this being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been given, and no other or further notice need be provided; and the relief requested in the Application being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Application and the Horwitz Declaration; [and there

---

[1] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Application.

being no opposition to the requested relief;] and the Court having determined that the legal and

factual bases set forth in the Application and the Horwitz Declaration establish just cause for the

relief granted herein; and the Court being satisfied based on the representations made in the

Application and the Horwitz Declaration that Epiq is "disinterested" as that term is defined under

section 101(14) of the Bankruptcy Code, and after due deliberation and sufficient cause

appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.      The Application is granted to the extent provided herein.

2.      The Committee is authorized, pursuant to section 1103(a) of the

Bankruptcy Code, to employ and retain Epiq as their Information Agent in accordance with the

terms and conditions of the Services Agreement, as generally described in the Application and

the Horwitz Declaration, *nunc pro tunc* to May 22, 2012.

3.      Epiq is authorized to render the following professional services, as may be

necessary and appropriate:

(i)      Establish and maintain a website (the "**Committee Website**") at
www.rescapcommittee.com that provides, without limitation:

(1)      General information regarding the Chapter 11 Cases;

(2)      A general overview of the chapter 11 process;

(3)      Contact information for the Debtors (and any information hotlines
that they establish), the Debtors' counsel and the Committee's
counsel;

(4)      The date by which unsecured creditors must file their proofs of
claim;

(5)      The voting deadline with respect to any chapter 11 plan of
reorganization filed in the Chapter 11 Cases;

(6)      The claims docket, as established by the Debtors;

     (7)     The Debtors' monthly operating reports;

     (8)     A list of upcoming omnibus hearing dates and the calendar of matters on such hearing dates;

     (9)     Answers to frequently asked questions;

     (10)     Links to other relevant websites (e.g., the Debtors' corporate website, the website of the Debtors' notice, claims and soliciting agent, KCC, LLC, the Bankruptcy Court website and the website of the United States Trustee); and

     (11)     An electronic inquiry form for creditors to submit questions and comments.

(ii)     Establish an email address to allow unsecured creditors to send questions and comments concerning the Chapter 11 Cases;

(iii)     Provide a call center or other creditor hotline, respond to creditor inquiries via telephone, letter, email, facsimile or otherwise, as appropriate, and related services (which shall be published on the Committee Website);

(iv)     Assist the Committee with certain administrative tasks, including, but not limited to, printing and serving documents as directed by the Committee and its counsel; and

(v)     Provide a confidential data room, if necessary.

4.     The Debtors are authorized and directed to compensate Epiq on a monthly basis in accordance with the terms and conditions of the Services Agreement, upon Epiq's submission to the Committee, the Debtors and the United States Trustee of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection therewith.

5.     The Committee, the Debtors, and the United States Trustee shall have ten business days to advise Epiq of any objections to the monthly invoices. If a timely objection is raised to an Epiq invoice, the Debtors will remit to Epiq only the undisputed portion of the invoice and, if applicable, will pay the remainder to Epiq upon the resolution of the dispute. All

objections that are not resolved by the parties shall be preserved and presented to the Court by the objecting party at the next interim or final fee application hearing to be heard by the Court.

6.      Notwithstanding the previous paragraphs 4 and 5, Epiq will (a) file a final fee application, and (b) submit monthly fee statements in the event that Epiq's fees exceed $2,000 during any given month.  Such fee applications and statements will be filed consistent with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of the Court, the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 17, 2012, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated November 25, 2009, and the United States Trustee Fee Guidelines (collectively, the "**Fee Guidelines**").

7.      No less than ten business days prior to effecting any increases in the rates set forth in the Application and Horwitz Declaration, Epiq shall file, and provide notice to the Debtors and the United States Trustee, a supplemental declaration with the Court, which explains the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and indicates whether the Committee has received notice of and approved the proposed rate increase.

8.      Epiq shall use its reasonable best efforts to avoid any duplication of services provided by any of the Committee's other retained professionals in these Chapter 11 Cases.

9.      To the extent the terms of this Order are in any way inconsistent with the Application or Horwitz Declaration, the terms of this Order shall govern.

10.     The Committee is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

4

11.     The terms and conditions of this Order shall be immediately effective and
enforceable upon its entry.

12.     All time periods set forth in this Order shall be calculated in accordance
with Bankruptcy Rule 9006(a).

13.     The Court retains jurisdiction with respect to all matters arising from or
related to the interpretation and implementation of this Order.

14.     Notice of the Application as provided herein shall be deemed good and
sufficient notice of the Application.

Dated:      _____, 2012
            New York, New York


                            _____
                            UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Horwitz Declaration**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x

In re:                                          :     Chapter 11
                                                :
Residential Capital, LLC, et al.,               :     Case No. 12-12020 (MG)
                       Debtors.                 :     Jointly Administered
                                                :

--------------------------------------------------------- x

**DECLARATION OF JASON D. HORWITZ IN SUPPORT OF THE APPLICATION OF
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO RETAIN
<u>EPIQ BANKRUPTCY SOLUTIONS, LLC AS INFORMATION AGENT</u>**

I, Jason D. Horwitz, do hereby declare under penalty of perjury that the following is true

and correct to the best of my knowledge, information, and belief:

1.      I am a Vice President and Senior Consultant of Epiq Bankruptcy Solutions, LLC

("**<u>Epiq</u>**")[1] and I am authorized to make and submit this declaration (the "**<u>Declaration</u>**") on behalf

of Epiq.  This Declaration is submitted in support of the Application of the Official Committee

of Unsecured Creditors (the "**<u>Committee</u>**") of Residential Capital, LLC and certain of its

subsidiaries, debtors and debtors-in-possession (collectively, the "**<u>Debtors</u>**") in the above-

captioned jointly administered chapter 11 cases (the "**<u>Chapter 11 Cases</u>**"), to retain Epiq as

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Application.

Information Agent (the "**Application**").  The statements contained herein are based upon personal knowledge.[2]

2.      Epiq is one of the country's leading chapter 11 administrators with expertise in noticing, claims processing, balloting and distribution.  In the normal course of its business, Epiq is often called upon to create websites for the purpose of providing access to information to creditors.  Epiq is well-qualified to provide the Committee and the Debtors' creditors with access to information in connection with these cases.  Large chapter 11 cases in which Epiq has created websites to provide creditors access to information include: In re Eastman Kodak Company, et al., No. 12-10202 (ALG) (Bankr. S.D.N.Y.); In re AMR Corporation, et al., No. 11-15463 (SHL) (Bankr. S.D.N.Y.); In re LAD LLC, et al., No. 11-12010 (KG) (Bankr. D. Del.); In re Mesa Air Group, Inc., et al., No. 10-10018 (MG) (Bankr. S.D.N.Y.); In re Motors Liquidation Company, et al., No. 09-50026 (REG) (Bankr. S.D.N.Y.) (on behalf of both the Official Committee of Unsecured Creditors and the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims); In re Dayton Superior Corporation, No. 09-11351 (Bankr. D. Del.); In re Tarragon Corporation, et al., No. 09-10555 (Bankr. D. N.J.); In re Thornburg Mortgage, Inc., et al., No. 09-17787 (Bankr. D. Md.); In re Tropicana Entertainment, LLC, et al., No. 08-10856 (Bankr. D. Del.); In re Washington Mutual, Inc., et al., No. 08-12229 (Bankr. D. Del.).  As such, Epiq is well-qualified to prepare the Committee website and to assist the Committee in providing the Debtors' unsecured creditors with access to information in connection with these cases.

3.      The Committee selected Epiq to serve as its Information Agent for these cases, as set forth in more detail in the Application filed contemporaneously herewith.  To the best of my

---

[2] Certain of the disclosures herein relate to matters within the knowledge of other professionals at Epiq and are based on information provided by them.

knowledge, and based solely upon information provided to me by the Committee, and except as provided herein, neither Epiq, nor any employee thereof, has any materially adverse connection to the Committee or the Debtors' estates with respect to any matter upon which Epiq is to be engaged. Epiq may have relationships with certain of the Committee members, the Debtors or the Debtors' creditors as vendors or in connection with chapter 11 cases in which Epiq serves or has served in a neutral capacity as noticing, claims, and/or balloting agent for another chapter 11 debtor.

4.      Additionally, "Aegis Mortgage Corporation," "American Home Mortgage Acceptance, Inc.," "American Home Mortgage Servicing, Inc.," "American Home Mortgage," "Lehman Brothers Holdings Inc.," and "Structured Asset Securities Corporation" appear to be counterparties to servicing agreements with the Debtors; "U.S. Bank" appears to be a top 50 creditor of the Debtors; and "Abovenet Communications Inc." appears to be a utility of the Debtors. Epiq currently serves, or in the past has served, in a neutral capacity as claims and noticing agent for: (a) Aegis Mortgage Corporation and its affiliated debtors; (b) American Home Mortgage Holdings Inc. and its affiliated debtors, including American Home Mortgage Acceptance, Inc., American Home Mortgage Servicing, Inc. and several others, certain of which may or may not relate to "American Home Mortgage"; and (c) Metromedia Fiber Network, Inc. and its affiliated debtors, including Abovenet Communications Inc. Epiq also currently serves in a neutral capacity as claims and noticing agent, and formerly served as the solicitation and voting agent, for Lehman Brothers Holdings Inc. and its affiliated debtors, including Structured Asset Securities Corporation. Epiq was retained by U.S. Bank for potential website and claims-related work in the American Business Financial Services, Inc. matter, but Epiq did not perform any substantive work for U.S. Bank and the engagement has been closed. Epiq does not view such relationships as real or potential conflicts in these Chapter 11 Cases given Epiq's neutral position

3

as claims or noticing agent (and the administrative services it provided as solicitation and voting agent) for those clients and the neutral information and administrative services it will provide in the Chapter 11 Cases. Further, to the best of my knowledge, any such relationships are completely unrelated to the Chapter 11 Cases.

5.      In addition, Epiq personnel may have relationships with some of the Committee members, the Debtors, the Debtors' creditors or other parties-in-interest (including the fact that the Debtors or their affiliates may have originated and/or serviced (or will originate and/or continue to service) mortgages or provide related services for Epiq personnel). However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and unrelated to the Chapter 11 Cases. In addition, Epiq has, had, and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties-in-interest that may be Debtors or involved in the Debtors' cases in matters unrelated to the Chapter 11 Cases. Epiq may also provide professional services to entities or persons that may be Debtors, creditors or parties-in-interest in the Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, the Chapter 11 Cases or the Committee. To the best of my knowledge, and except as provided herein, neither Epiq, nor any employees thereof, represents any interest materially adverse to the Committee or the Debtors' estates with respect to any matter upon which Epiq is to be engaged. Based on the foregoing, and except as provided herein, I believe that Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

6.      Epiq has reviewed its electronic database to determine whether it has any relationships with the entities provided by the Committee. At this time, we are not aware of any relationship that would present a disqualifying conflict of interest. Should Epiq discover any

4

new relevant facts or relationships bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to file promptly a supplemental declaration.

7.      Epiq shares a corporate parent with certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance.  Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: September 10, 2012
       Chicago, Illinois

/s/ Jason D. Horwitz
Jason D. Horwitz

## **Exhibit C**

**Services Agreement**



# EPIQ

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between Epiq Bankruptcy Solutions, LLC ("Epiq") and The Official Committee of Unsecured Creditors (the "Client") appointed in the Chapter 11 cases of Residential Capital, LLC et al., (Case No. 12-12020 (MG)) (collectively, the "Debtors"), as of May 22, 2012.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on Exhibit A hereto (the "Services") to the extent needed.  Services will be provided on an as needed basis and upon request or agreement of the Client.  Charges for the Services will be based on the pricing schedule set forth on Exhibit B hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  The Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and the Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required.  The Agreement shall remain in effect until terminated: (a) by the Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to the Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.  Charges.**

3.1    For the Services and materials furnished by Epiq under this Agreement, the Client shall request payment by the Debtors of the fees, charges and costs set forth in the Pricing Schedule.  Epiq will bill the Client monthly.  All invoices shall be due and payable by the Debtors' estates upon receipt.

1



3.2    Epiq reserves the right to make reasonable increases to the unit prices, charges and
professional service rates reflected in the Pricing Schedule on an annual basis effective
January 2nd of each year. If such annual increases exceed 10% from the prior year's level,
Epiq shall provide sixty (60) days' prior written notice to the Client and the Debtors of such
proposed increases.

3.3    Client agrees to request payment by the Debtors' estates for all materials necessary for
performance by Epiq of the Services under this Agreement (other than computer hardware
and software) and any reasonable out of pocket expenses including, without limitation,
transportation, long distance communications, printing, photocopying, fax, postage and
related items.

3.4    Client shall request payment or reimbursement by the Debtors' estates of all taxes applicable
to services performed by Epiq under this Agreement and, specifically, taxes based on
disbursements made on behalf of the Client, notwithstanding how such taxes may be
designated, levied or based. This provision is intended to include sales, use and excise taxes,
among other taxes, but is not intended to include personal property taxes or taxes based on
net income of Epiq.

3.5    Client shall request payment by the Debtors' estates pay to Epiq any actual charges
(including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out
of or resulting from any Client error or omission. Such charges may include, without
limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and
overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6    In the event of termination pursuant to Section 2 hereof, the Debtors' estates shall be liable
for all amounts then accrued and/or due and owing to Epiq under the Agreement.


**4.    Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services
("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same
level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is
publicly available, was already in Epiq's possession or known to it, was required to be disclosed by
law, was independently developed by Epiq without use or reference to any Client Data, or was
rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public
disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any
nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other
Client materials provided to Epiq in the performance of this Agreement.



**5.  Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of
authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques,
programs, systems and other information, including, without limitation, data processing programs,
specifications, applications, processes, routines, sub-routines, procedural manuals and
documentation furnished or developed by Epiq for itself or for use by the Client (collectively, the
"Property").  Charges paid by Client or the Debtors' estates do not vest in Client or the Debtors
any rights to the Property, it being expressly understood that the Property is made available to
Client under this Agreement solely for Client's use during and in connection with each use of the
Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the
Property.

**6.  Disposition of Data.**

6.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives
      access to Epiq and for the output resulting from such data.  Client shall initiate and maintain
      backup files that would allow Client to regenerate or duplicate all programs and Client Data
      which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq
      that, prior to delivery of any Client Data to Epiq, it has full authority to deliver the Client
      Data to Epiq.  Client has obtained binding consents, permits, licenses and approvals from all
      necessary persons, authorities or individuals, and has complied with all applicable policies,
      regulations and laws, required by Client, in order to allow Epiq to use all Client Data
      delivered to it in connection with its Services.  Epiq shall not be liable for with respect to
      Client Data prior to Epiq's receipt, including without limitation, any liability arising during
      the delivery of Client Data to Epiq.

6.2   Any Client Data, programs, storage media or other materials furnished by the Client to Epiq
      in connection with this Agreement (collectively, the "Client Materials") may be retained by
      Epiq until the services provided pursuant to this Agreement are paid for, or until this
      Agreement is terminated with the services provided herein having been paid for in full.  The
      Debtors' estates shall remain liable for all out of pocket charges incurred by Epiq under this
      Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of
      Client Materials in the manner requested by Client (except to the extent disposal may be
      prohibited by law).  Client agrees to request payment by the Debtors' estates reasonable
      expenses incurred by Epiq as a result of the disposition of the Client Materials.  Epiq reserves
      the right to dispose of any Client Materials if this Agreement is terminated without Client's
      direction as to the return or disposal of Client Material or Client has not paid all charges due
      to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client
      with thirty (30) days' prior written notice if its intent to dispose of such data and media.



## 7.  **Indemnification.**

Subject only to the entry of an order of the Bankruptcy Court approving Epiq's retention as information agent, the Debtors shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to the Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. The Client, the Debtors, and Epiq shall notify each other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which such party is aware with respect to the services provided by Epiq under the Agreement.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8.  **Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 9.  **General**

9.1    No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

9.2    This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.



9.3    This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

9.4    The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

9.6    Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

9.7    In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

9.8    Neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

9.9    This Agreement may be executed in counterparts, each of which shall be deemed to an original, but all of which shall constitute one and the same agreement.

9.10    All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



9.11    Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

    If to Epiq:

        Epiq Bankruptcy Solutions, LLC
        757 Third Avenue, Third Floor
        New York, New York 10017
        Attn: Ron Jacobs

    If to Client:

        Official Committee of Unsecured Creditors of
        Residential Capital, LLC
        c/o Rachael Ringer, Esq.
        Kramer Levin Naftalis & Frankel LLP
        1177 Avenue of the Americas
        New York, NY 10036

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

Name: Daniel C. McElhinney
Title: Managing Director

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:
Name: John S. Dubel
Title: CEO, Financial Guaranty Insurance Company
Co-Chair, Official Committee of Unsecured Creditors

6



**EXHIBIT A**

**SERVICES SCHEDULE**

**WEBSITE SERVICES**

➤ Create and maintain a website with general case information provided by
   the Committee, key documents, claim search function, and mirror of ECF
   case docket.
➤ Website will also contain links to the Debtors' claims agent's website, the
   Debtors' corporate website, the Bankruptcy Court for the District of
   Delaware and the Office of the United States Trustee.
➤ Provide email functionality whereby viewers may send email inquiries to
   the Committee to a designated email address.

**CALL CENTER**

➤ Provide state-of-the-art Call Center facility and services, including (as
   needed):

   • Create of frequently asked questions, call scripts, escalation
     procedures and call log formats.
   • Record automated messaging.
   • Train Call Center staff.
   • Maintain and transmit call log to Client and advisors.

**VIRTUAL DATAROOM**

Provide confidential on-line workspace to facilitate permissions based and
password protected simultaneous document sharing in connection with
asset dale due diligence, contract and invoice review, or creation of contract
repository, among other reasons.

**NOTICING**

➤ Prepare and serve required notices.

➤ After service of a particular notice - whether by regular mail, overnight or
   hand delivery, email or facsimile service - file with the Clerk's office an
   affidavit of service that includes a copy of the notice involved, a list of persons



to whom the notice was mailed and the date and manner of mailing.

➤ Update noticing database to reflect undeliverable or changed addresses.

➤ Coordinate publication of notices in periodicals and other media.

## **MISCELLANEOUS**

➤ Provide such other claims, noticing, balloting and related administrative services as may be requested from time to time.

➤ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➤ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.



# EXHIBIT B

# EPIQ PRICING SCHEDULE

## Professional Services

| Title | Discounted Rates[1] |
|---|---|
| Clerk | $32.00 – $48.00 |
| Case Manager | $76.00 – $116.00 |
| IT / Programming | $112.00 – $152.00 |
| Snr. Case Manager / Consultant | $132.00 – $176.00 |
| Senior Consultant | $180.00 - $220.00 |

## Website Services

| | |
|---|---|
| Weblink Hosting Fee | $200.00 per month |

## Call Center Services

| | |
|---|---|
| Standard Call Center Setup | $1,500 |
| Call Center Operator | $75 per hour |
| Voice Recorded Message | $0.19 per minute |
| Support/Maintenance | $150 per month |

## Virtual Data Room Services

| | |
|---|---|
| Confidential On-line Workspace | Quoted at time of request |

## Noticing Services

| | |
|---|---|
| Printing | $0.10 per image (plus envelope face) |
| Collate, fold and insert | Standard Hourly Rates |
| Personalized/ Labels | $0.05 each |
| Postage/Overnight Delivery | At Cost |
| E-Mail Noticing | $50 per 1,000 |
| Fax Noticing | $0.10 per page |

---

[1]  Epiq does not charge a premium/overtime charge for any of the professional services it performs.  Outside vendors utilized by Epiq may include a premium / overtime charge for work performed on a weekend, holiday or after standard business hours.

9



Claim Acknowledgement Card          $0.10 per card
Publication Noticing                Quoted at time of request
Electronic Imaging                  $0.10 per image
OCR2 capture                        $0.10 per image
CD Storage                          Varies upon requirements

## Disbursement Services

Check and/or Form 1099              Quoted at time of request
Record to Transfer Agent            Quotes at time of request

---

²    OCR refers to optical character recognition, which is an enhanced form of electronic imaging.