**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**STIPULATION AND ORDER RESERVING RIGHTS WITH RESPECT TO DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 363 AUTHORIZING THE DEBTORS TO CONTINUE TO PERFORM UNDER THE ALLY BANK SERVICING AGREEMENT IN THE ORDINARY COURSE OF BUSINESS**

Subject to the approval of the Court, this stipulation and order (the "**Stipulation**") is made and entered into by, between and among the debtors and debtors in possession in the above-captioned bankruptcy case (collectively, the "**Debtors**"), the Official Committee of Unsecured Creditors (the "**Committee**"), Ally Bank ("**Ally Bank**"), and Ally Financial Inc. ("**AFI**" and, together with the Debtors, the Committee, and Ally Bank, collectively the "**Parties**") in connection with the Debtors' motion, filed on May 14, 2012 (the "**Motion**"), for interim and final orders under Bankruptcy Code sections 105(a) and 363 authorizing the Debtors to continue to perform under the Servicing Agreement[1] by and between GMAC Mortgage LLC ("**GMACM**"), a Debtor, and Ally Bank, in the ordinary course of the Debtors' businesses.

WHEREAS, venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

WHEREAS, on May 9, 2012, prior to the Petition Date, the Debtors paid approximately

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion or the Marano Declaration (defined herein), as applicable.

$48 million to Ally Bank in connection with modifications performed by GMACM to loans owned by Ally Bank in connection with the DOJ/AG Settlement (the "**Prepetition Indemnity Payment**");

WHEREAS, the Committee asserts that the Prepetition Indemnity Payment was made pursuant to a letter agreement between AFI, Residential Capital, LLC, and GMACM, dated January 30, 2012, and AFI and Ally Bank dispute the Committee's assertion on several grounds, including on the basis that that the Prepetition Indemnity Payment was made pursuant to the DOJ/AG Settlement;

WHEREAS, Ally Bank is not a party to the DOJ/AG Settlement;

WHEREAS, on May 11, 2012, GMACM entered into the Servicing Agreement with Ally Bank;

WHEREAS, on May 14, 2012, the Debtors filed the Motion seeking, among other things, to continue to perform under the Servicing Agreement between GMACM and Ally Bank;

WHEREAS, on May 16, 2012, the Court entered the *Interim Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Authorizing the Debtors to Continue to Perform Under the Ally Bank Servicing Agreement in the Ordinary Course of Business* (the "**Interim Order**") [Docket No. 90];

WHEREAS, on June 11, 2012, the Committee filed a limited objection and reservation of rights with respect to the Motion [Docket No. 303];

WHEREAS, on June 13, 2012, the Debtors paid approximately $19.9 million to Ally Bank in connection with modifications performed by GMACM to loans owned by Ally Bank in connection with the DOJ/AG Settlement;

WHEREAS, on June 14, 2012, the Debtors filed the Declaration of Matthew Detwiler in

Support of the Motion [Docket No. 366];

WHEREAS, on July 16, 2012, the Debtors filed the declaration of Thomas Marano, Chief Executive Officer of Residential Capital, LLC in further support of the Motion (the "**Marano Declaration**") [Docket No. 793], describing certain modifications made to Ally Bank's loans, payments made in connection with such modifications, and section 10.01(e) of the Servicing Agreement, which obligates GMACM to pay Ally Bank in connection with such loan modifications (the "**Indemnification Obligation**"). The Marano Declaration also describes a proposed settlement between the Debtors and AFI regarding the allocation of future payments on account of the Indemnification Obligation.

WHEREAS, the Committee opposes the inclusion of the Indemnification Obligation in the Servicing Agreement, and the Committee has commenced discovery and depositions in anticipation of an evidentiary hearing on the Motion;

WHEREAS, AFI and Ally Bank oppose the Committee's positions on several grounds;

WHEREAS, Ally Bank asserts, among other things, that the Indemnification Obligation is an integral and non-severable provision of the Servicing Agreement and is required under applicable law, including bank regulatory law;

WHEREAS, the Parties have engaged in good-faith negotiations with the objective of resolving or deferring consideration of certain aspects of the Motion, including reserving all rights with respect to the Indemnification Obligation, by allowing the Debtors to continue to perform under the Servicing Agreement, subject to the terms and conditions set forth in this Stipulation;

WHEREAS, pending approval and entry of this Stipulation by the Bankruptcy Court, the parties have agreed to adjourn discovery, with the understanding that if the Stipulation is not

approved, the Parties will set the Motion for a hearing at an agreed-upon date that will allow sufficient time to recommence and complete discovery and present the matter to the Court;

NOW THEREFORE, it is hereby STIPULATED and AGREED by the Parties that:

1. Subject to the terms of this Stipulation, the Debtors are authorized and directed to continue to perform under the terms of the Servicing Agreement (as modified by this Stipulation) pursuant to sections 105(a) and 363(c) of the Bankruptcy Code until the Servicing Agreement is terminated under its own terms or in accordance with the terms of this Stipulation, or the Debtors have obtained a Court order rejecting the Servicing Agreement in accordance with the provisions set forth herein.

2. Upon entry of this Stipulation, the Debtors shall make and continue to make all payments to Ally Bank and perform under the Servicing Agreement in accordance with the terms of the Servicing Agreement, including, for the avoidance of doubt, any Indemnification Obligation and past due payments in connection with modifications to the Ally Bank owned loan portfolio performed pursuant to the DOJ/AG Settlement.

3. Upon entry of this Stipulation and subject to compliance with the terms of paragraph 4, Ally Bank shall withdraw any existing notice of default, and provide written confirmation to GMACM that such existing default under the Servicing Agreement has been cured. Neither GMACM nor Ally Bank is aware of any other defaults under the Servicing Agreement.

4. Upon entry of this Stipulation, and simultaneously with the payment of the loan modification payments to Ally Bank in connection with the Indemnification Obligation, AFI shall promptly establish and fund an escrow account (the "**Escrow Account**"), to be held by Ally Bank as escrow agent in an amount equal to all payments made by the Debtors following the

Petition Date on account of the Indemnification Obligation (the "**Initial Funding**"), provided that Ally Bank, as escrow agent, shall enter into an escrow agreement (the "**Escrow Agreement**") on terms reasonably acceptable to Ally Bank, the Debtors, and the Committee, irrespective of any standard Ally Bank escrow agreement, which shall provide that no claims held by Ally Bank against the Debtors or Ally Bank's relationship with the Debtors have or will affect the Escrow Agreement or Escrow Account in any manner. For the avoidance of doubt, Ally Bank, solely in its capacity as escrow agent for the Escrow Account, shall have no rights of setoff, recoupment, or other offset rights relating to, or otherwise in connection with, the funds held in the Escrow Account. For the avoidance of doubt, the Parties expect that the Initial Funding shall consist of an amount equal to the sum of the $19.9 million paid by the Debtors on or about June 13, 2012, plus the approximate $7.7 million to be paid in respect of the unpaid amounts for May through July, plus any additional amounts paid by the Debtors in accordance with the Indemnification Obligation upon approval of the Stipulation.

5. Following payment of the Initial Funding, to the extent the Debtors pay any additional amounts to Ally Bank in accordance with the Indemnification Obligation, AFI shall simultaneously pay an equal amount into the Escrow Account. The Parties estimate that additional payments of between $30 and $55 million shall be made on account of those loans owned by Ally Bank that have already been solicited in accordance with the DOJ/AG Settlement. Notwithstanding Section 10.01(f) of the Servicing Agreement, if the Debtors or the purchaser (the "**Purchaser**") of the Debtors' mortgage loan origination and servicing business (the "**Platform**") are required pursuant to the terms of the DOJ/AG Settlement to continue solicitations on Ally Bank loans in accordance with the DOJ/AG Settlement, the Debtors or the Purchaser (as applicable), subject to payment of the Indemnification Obligation and the

reservations of the rights set forth herein, shall be permitted to do so in accordance with the Servicing Agreement.

6. If the Debtors or the Purchaser are required to solicit any additional loans owned by Ally Bank in accordance with the DOJ/AG Settlement after the closing of the sale of the Debtors' Platform or if there are any outstanding solicitations as of the closing of the sale of the Debtors' Platform for which Ally Bank has not yet received payment from the Debtors on account of the applicable Indemnification Obligation, AFI shall simultaneously fund an amount into the Escrow Account equal to the reasonably estimated Indemnification Obligation on account of such unperformed loan modifications (the "**Estimated Future Indemnification Obligation**"); provided that after one-hundred (100) days following the date of AFI remitting the Estimated Future Indemnification Obligation into the Escrow Account, such amount will be revised to reflect the actual amount of the Indemnification Obligation as of such 100th day and the difference between such actual Indemnification Obligation and the Estimated Future Indemnification Obligation will be paid by AFI into the Escrow Account or automatically remitted from the Escrow Account to AFI, as applicable (the "**Initial Escrow Adjustment**"); provided further that not later than ten (10) days following the last business day of each calendar month following the Initial Escrow Adjustment, the Estimated Future Indemnification Obligation will be further revised to reflect the actual amount of the Indemnification Obligation as of the last business day of such preceding calendar month and the difference between such actual Indemnification Obligation and the Estimated Future Indemnification Obligation will be paid by AFI into the Escrow Account or automatically remitted from the Escrow Account to AFI, as applicable (the "**Subsequent Escrow Adjustments**"). The Subsequent Escrow Adjustments will occur until the earlier of (a) the date upon which all required solicitations have been completed,

and the corresponding modifications have been executed and become final or the applicable modification offer period has expired and (b) the termination of the Escrow Account pursuant to the terms of this Stipulation or by Court order. In the event the Parties cannot agree on a reasonable estimate of the Estimated Future Indemnification Obligation after good faith consultation, any Party may file a motion to propose the amount of such estimate and AFI will deposit into the Escrow Account the amount so ordered by the Court. The Debtors agree to provide information to AFI, Ally Bank, and the Committee in accordance with the current practice under the Servicing Agreement reasonably necessary to facilitate the Initial Escrow Adjustment and all Subsequent Escrow Adjustments. For the avoidance of doubt, (a) the requirement to fund the Escrow Account pursuant to this paragraph 6 is subject to the termination of the Escrow Account pursuant to paragraph 8 and (b) nothing in this paragraph 6 shall relieve GMACM or the purchaser of the Debtors' Platform, as applicable, from remitting payment on account of the Indemnification Obligation in the first instance, as the purpose of AFI funding the Estimated Future Indemnification Obligation in the Escrow is solely to maintain the status quo.

7. The Escrow Account shall be subject to the exclusive jurisdiction of this Court.

8. The Escrow Account shall remain in place and continue to be funded as required pursuant to this Stipulation until the earlier of: (a) an agreement among the Debtors, the Committee, and AFI as to the proper allocation and disbursement of the funds in the Escrow Account, and (b) the effective date of a chapter 11 plan that includes a provision directing the distribution of the funds in the Escrow Account. Notwithstanding the foregoing, on or after the thirtieth (30th) day following the entry of the final report by the Examiner containing the Examiner's findings with respect to the investigation, AFI or the Committee may file a motion

on no less than sixty (60) days' notice seeking entry of an order of this Court addressing the Parties' dispute over the Indemnification Obligation and directing the disbursement of funds contained in the Escrow Account.

9. Ally Bank shall be granted limited relief from the automatic stay solely to the extent required to provide the 120-day notice required pursuant to Section 11.01(b) of the Servicing Agreement to terminate the Servicing Agreement with respect to (a) all HELOC Loans (as defined in the Servicing Agreement), (b) the "CMG loans" (estimated to be approximately 5,000 in number), and (c) no more than an additional 3,500 Mortgage Loans (as defined in the Servicing Agreement) in the aggregate (including for the avoidance of doubt, the 2,750 Mortgage Loans for which Ally Bank has already provided notices of termination, *see* Docket No. 931 and 949).

10. Except as permitted in paragraphs 9 and 12, Ally Bank agrees to defer providing any additional 120-day termination notices under Section 11.01(b) of the Servicing Agreement without further Court relief and instead, from and after the earlier of (a) ten (10) days following the entry of an order approving the sale of the Platform, and (b) December 10, 2012, Ally Bank shall be granted limited relief from the automatic stay to provide a written notice of termination of the Servicing Agreement to the Debtors and the Committee with respect to some or all of the Mortgage Loans or REO Property (as such terms are defined in the Servicing Agreement), and the Debtors shall use reasonable best efforts to complete the transfer of the servicing of such Mortgage Loans and REO Property (as such terms are defined in the Servicing Agreement) within sixty (60) days' following the receipt of such notice of termination and shall, in any event, complete the transfer of servicing in no more than 120 days following the receipt of the notice of termination or such later date as specified in writing by Ally Bank, provided that:

(i) from and after the date of this Stipulation, the Debtors and Ally Bank will take all commercially reasonable efforts and work in good faith to negotiate reasonable information sharing and cooperation terms including with respect to the items set forth on Exhibit 1 annexed hereto on or before September 7, 2012 (the "**Information Terms**"). To the extent any materials or information provided pursuant to the Information Terms are or could be covered by the Shared Services Agreement by and between AFI and Residential Capital LLC (the "**SSA**") or Section 2.19 of the Servicing Agreement, compensation to the Debtors for the provision of any such Information Terms shall be governed by the SSA or Section 2.19, as applicable. Any materials provided to Ally Bank pursuant to the Information Terms shall not be deemed to be a license for Ally Bank to use any of the Debtors' intellectual property for any purpose other than as set forth in the SSA. The Debtors and Ally Bank shall consult with the Committee on the negotiation of the Information Terms and the agreed-upon Information Terms shall be filed with the Court. In the event the parties cannot agree upon the Information Terms, the Court shall retain jurisdiction to hear any dispute with respect thereto; provided that the failure to agree upon the Information Terms shall not give cause for the termination of the Servicing Agreement; and

(ii) if Ally Bank terminates the Servicing Agreement pursuant to this paragraph 10, the Debtors shall be entitled to any Deboarding Fees and Loan Termination Fees (as such terms are defined in the Servicing Agreement), subject to the terms of Section 11.01 (b) of the Servicing Agreement, and out-of-pocket costs and expenses incurred in connection with such termination as provided in Section 11.02 of the Servicing Agreement.

Ally Bank shall be required to seek further relief from the Court to the extent it seeks to terminate the Servicing Agreement other than as provided for in this Stipulation. For the avoidance of doubt, the Debtors' bankruptcy filing shall not be grounds for termination of the Servicing Agreement.

11. Notwithstanding the date upon which the Servicing Agreement was executed or the date of the occurrence of the "Effective Date" as such term is defined in the Servicing Agreement, the Servicing Agreement shall be considered a pre-Petition Date executory contract under Bankruptcy Code section 365 and subject to assumption or rejection as further set forth herein.

12. Notwithstanding any provision in the Servicing Agreement or this Stipulation to the contrary, the automatic stay shall be modified to permit Ally Bank to terminate the Servicing Agreement, on no less than five (5) days' written notice to the Debtors and the Creditors' Committee, without need for further relief from the Court upon (a) entry by the Court of an order appointing a trustee, (b) acceleration of the obligations due under the Debtors' debtor-in-possession credit facilities with Barclays Bank or the Debtors' debtor-in-possession credit facility with AFI (in each instance, other than an acceleration of such debtor-in-possession credit facility caused by Ally Bank's termination of the Servicing Agreement, a default that is triggered from the failure of the Debtors to comply with paragraph 18(a)(ix) or 20(e) of the AFI Final DIP Order,[2] or a default that is triggered from the failure of the Debtors to comply with sections 8.03(h) and 8.03(w) of the AFI LOC Amendment[3]), (c) conversion of any of the Debtors'

[2] The AFI Final DIP Order means the *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors To Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors To Use Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties.*

[3] As such term is defined in the AFI Final DIP Order.

chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, or (d) this Stipulation having been stayed, reversed or otherwise rendered ineffective; provided that, if Ally Bank terminates the Servicing Agreement pursuant to this paragraph 12, notwithstanding any provision in the Servicing Agreement to the contrary, the Debtors shall not be entitled to any Loan Termination Fees (as such term is defined in the Servicing Agreement), but shall be entitled to Deboarding Fees (as such term is defined in the Servicing Agreement) and out-of-pocket costs and expenses incurred in connection with any such termination pursuant to Section 11.02 of the Servicing Agreement.

13. In the event that Ally Bank properly invokes the termination rights set forth in this Stipulation, the Debtors shall take all reasonable actions in accordance with the Servicing Agreement to allow Ally Bank to move the servicing at Ally Bank's direction as provided for under the Servicing Agreement, and Ally Bank may take all reasonable actions necessary to allow Ally Bank to terminate the Servicing Agreement and provide for the orderly transfer of servicing to a new servicing provider without seeking further relief.

14. Notwithstanding any provision in the Servicing Agreement, the Bankruptcy Code, or other orders of this Court to the contrary, the Debtors shall be required to provide 120 days prior written notice to Ally Bank and to the Notice Parties before obtaining any hearing before the Court where the Court considers relief seeking rejection or modification of the Servicing Agreement pursuant to section 365 of the Bankruptcy Code or otherwise. For the avoidance of doubt, in the event the Debtors move to reject the Servicing Agreement, the Debtors shall be required to continue to perform under the Servicing Agreement until all of the loans subject to the Servicing Agreement have been transferred in accordance with its terms and this Stipulation; provided that the parties reserve rights (other than regarding claims related to performance under

the Servicing Agreement) as to whether the effective date of rejection is (a) the date the notice to reject is provided to Ally Bank or (b) the date the Court enters an order rejecting the Servicing Agreement; provided, further, that notwithstanding any provision in the Servicing Agreement to the contrary, in the event the Debtors move to reject the Servicing Agreement, the Debtors shall be entitled to out-of-pocket costs and expenses incurred pursuant to Section 11.02 of the Servicing Agreement. For the avoidance of doubt, in the event that Ally Bank seeks to terminate the Servicing Agreement with respect to some or all of the Mortgage Loans or REO Property (as such terms are defined in the Servicing Agreement) pursuant to paragraph 10 of this Stipulation, the Debtors shall be entitled to Deboarding Fees and Loan Termination Fees (as such terms are defined in the Servicing Agreement), subject to the terms of Section 11.01(b) of the Servicing Agreement, and out-of-pocket costs and expenses incurred in connection with such termination pursuant to Section 11.02 of the Servicing Agreement, regardless of whether the Debtors subsequently seek to reject the Servicing Agreement pursuant to this paragraph 14. The Debtors may not issue such prior written notice until the earlier of (a) ten (10) days following the entry of an order approving the sale of the Platform, and (b) December 10, 2012.

15. Notwithstanding any provision in the Servicing Agreement or the Bankruptcy Code, including under section 365 of the Bankruptcy Code, to the contrary, the Debtors may, without the consent of Ally Bank, assign the Servicing Agreement only to an Eligible Servicer (as such term is defined in the Servicing Agreement) as to whom Ally Bank's engagement as a subservicer under the Servicing Agreement for the Agency Loans (as such term is defined in the Servicing Agreement) has been approved by the applicable Agencies (as such term is defined in the Servicing Agreement).

16. Notwithstanding any provision in the Servicing Agreement to the contrary, if the servicing provided for under the Servicing Agreement is transferred pursuant to the confirmation of chapter 11 plan(s) or sale of the Debtors' Platform in these chapter 11 cases, the Debtors shall not be entitled to any Deboarding Fees or Loan Termination Fees (each as defined in the Servicing Agreement) or out-of-pocket costs and expenses incurred in connection with such transfer.

17. Notwithstanding anything to the contrary herein:

(a) The Committee, the Debtors, Ally Bank, and AFI reserve all rights with respect to all pre- and post-petition transfers made by the Debtors in connection with the Indemnification Obligation, and this Stipulation is without prejudice to any party;

(b) Ally Bank reserves all rights with respect to the inclusion of the Indemnification Obligation in the Servicing Agreement and enforcement of the Servicing Agreement; and

(c) For the avoidance of doubt, in connection with any litigation concerning the Escrow Account or related to the Indemnification Obligation, AFI shall be able to prosecute any argument that Ally Bank could make as the Servicing Agreement counterparty with the same full force and effect as if Ally Bank were prosecuting such arguments, and this Stipulation shall not prejudice any party.

18. The Committee shall have standing to bring an action to recover on behalf of the Debtors' estates from the Escrow Account payments made by the Debtors postpetition on account of modifications made to loans owned by Ally Bank.

19. This Stipulation's authorization to the Debtors to make the payments under the Indemnification Obligation shall not constitute a determination that: (a) the Debtors' $19.9 million postpetition payment to Ally Bank was or was not authorized by the Interim Order, (b) the Debtors have (i) established that it is or is not reasonable, fair, or proper for the Indemnification Obligation to be included in the Servicing Agreement or for the Debtors to make any payments in respect of the Indemnification Obligation, or (ii) otherwise satisfied the relevant legal standard to authorize such payments, (c) postpetition payments by the Debtors on account of the Indemnification Obligation are reasonable or justified in these chapter 11 cases, or (d) it was or was not reasonable, fair or proper to link, or there is or is not any legal basis upon which to sever, the Indemnification Obligation in the Servicing Agreement. The entry of this Stipulation shall not operate to adjudicate, limit, or preclude any claims or arguments by the Debtors, the Committee, AFI, or Ally Bank in respect of the Escrow Account, the Indemnification Obligation, or the Prepetition Indemnity Payment.

20. This Stipulation shall be binding on the Parties upon execution and approval by this Court, and any prior agreements between the Debtors, Ally Bank, and AFI shall not in any way alter, modify, or affect the terms of this Stipulation.

21. In the event of any inconsistency between the terms of this Stipulation and the provisions in the Servicing Agreement, the terms of this Stipulation shall govern. The defined terms used in this Stipulation are for the convenience of the Parties only and shall not prejudice any Party.

22. For the avoidance of doubt, nothing in this Stipulation shall prohibit Ally Bank from marketing or selling any mortgage servicing rights or any mortgage loans owned by Ally Bank.

23. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Stipulation.

24. Notwithstanding, anything herein to the contrary, this Stipulation shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System/Federal Deposit Insurance Corporation Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMACM, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the United States District Court for the District of Columbia, dated February 9, 2012, and (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012.

25. The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases and upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

26. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Stipulation in accordance with the Motion.

Dated: August 27, 2012

/s/ Gary S. Lee
Larren M. Nashelsky
Gary S. Lee
Todd M. Goren

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors and Debtors in Possession*

Dated: August 27, 2012

/s/ Douglas H. Mannal
Kenneth H. Eckstein
P. Bradley O'Neill
Douglas H. Mannal

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8100

*Counsel to the Official Committee of Unsecured Creditors*

Dated: August 27, 2012

/s/ Craig A. Bruens
Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
Craig A. Bruens

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: 212-446-4800
Facsimile: 212-446-4900

*Counsel to Ally Financial Inc. and Ally Bank*

**IT IS SO ORDERED**

New York, New York
Dated: September 12, 2012

**/s/Martin Glenn**
MARTIN GLENN
United States Bankruptcy Judge

***FOR DISCUSSION PURPOSES ONLY***

**Exhibit 1**

**Information Terms**

The information sharing and cooperation terms to be negotiated by Ally Bank and the Debtors pursuant to paragraph 10(i) of the Stipulation include, among other things, the following:

1. Performing the work necessary to connect the Quattro systems to the Debtors' correspondent system (WALT) such that the Quattro loans are segregated from normal correspondent loans, at Ally Bank's sole cost and expense.

2. Providing to Ally Bank the materials used historically to market loans on behalf of the Bank, whereby Ally Bank will be responsible for all costs associated with the review of such materials and under no circumstances will the results of such review be deemed cause to terminate the Servicing Agreement.

3. Providing the reasonable support, people, process and data necessary to allow Ally Bank to hedge (daily), value and benchmark the Ally Bank MSR portfolio and HFS portfolios in a manner that complies with applicable law and regulatory standards.

4. Providing the reasonable access to information necessary to allow Ally Bank to manage repurchase risk associated with loans sold to the Agencies by Ally Bank (formerly GMAC Bank) from 2007 to present.

5. Providing the reasonable support, people, processes and data necessary to allow Ally Bank to format and transmit the necessary data to an Ally Bank data repository.