SHEARMAN & STERLING LLP
Fredric Sosnick
Edmund M. Emrich
599 Lexington Avenue
New York, New York 10022
Telephone:     (212) 848-4000
Facsimile:      (212) 848-7179

*Counsel for Citibank, N.A.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF CITIBANK, N.A. TO *MOTION FOR AN ORDER APPOINTING AN OFFICIAL COMMITTEE OF BORROWERS PURSUANT TO SECTION 1102(A)(2) OF THE BANKRUPTCY CODE***

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Citibank, N.A. ("**Citibank**") hereby submits this limited objection (the "**Limited Objection**") to the *Motion for an Order Appointing an Official Committee of Borrowers Pursuant to Section 1102(a)(2) of the Bankruptcy Code* (the "**Motion**") [Docket No. 1264] filed by certain homeowner claimants (the "**Homeowner Claimants**"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Motion seeks the appointment of an official borrowers' committee ("**Borrowers' Committee**") in the above captioned cases on the ground that the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), as currently constituted, fails to adequately represent the interests of homeowners who have claims against the Debtors.

NYDOCS03/954693.8

Citibank takes no position with respect to whether the Homeowner Claimants require representation by a separate committee. Rather, Citibank files this Limited Objection solely to make clear its position that the appointment of any such separate committee must not result in any delay of the scheduled sale of substantially all of the Debtors' operating assets that is so vital to creditor recoveries in these chapter 11 cases.

2. In the Motion, the Homeowner Claimants assert that the Borrowers' Committee will get involved "solely on issues that relate to the borrowers and their rights." Motion, p. 21. However, the proposed order does not express a similar limitation and, in fact, provides no limitations on the scope of the Borrowers' Committee's authority. Citibank respectfully submits that the Order of appointment (if any) should make clear that the appointment of the Borrowers' Committee should not be a basis for delaying the sale process. Indeed, given that the sale is not a matter that implicates rights unique to the borrowers, it would appear to be outside the scope of the Homeowner Claimants' requested authority for the Borrowers' Committee.

3. Any delay in the sale of the Debtors assets as contemplated by the Sale Procedures Order (as defined below) would be prejudicial to the interests of all creditors, including those of Citibank as a secured creditor under (i) the revolving credit facility entered into between Citibank, GMAC Mortgage, LLC, as borrower, and Residential Capital, LLC ("**ResCap**"), as guarantor (the "**Citibank MSR Facility**") and (ii) the *Final Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Modifying the Automatic Stay* (the "**Final Cash Collateral Order**") [Docket No. 471]. Accordingly, Citibank files this limited objection to make clear that, if the Court were to appoint a Borrowers'

Committee, any order approving such a committee should provide that the appointment of the committee shall not be a basis to delay the sale process.

## BACKGROUND

4. On May 14, 2012 (the "**Petition Date**"), ResCap and certain of its affiliates (collectively, the "**Debtors**") filed voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors thereafter have continued to operate their businesses as debtors and debtors-in-possession.

5. On May 16, 2012, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") [Docket No. 102]. Among the members of the Creditors' Committee is Rowena L. Drennan, a borrower claimant attorney appointed as a representative for plaintiffs in a class action styled *In re Community Bank of Northern Virginia Second Mortgage Lending Practices Litigation*, MDL No. 1674, (*Brian Kessley, et al.*) Case No. 03-0425, Case No. 02-01201, Case No. 05-0688, Case No. 05-1386, pending in the United States District Court for the Western District of Pennsylvania.

6. By an order dated June 20, 2012, this Court authorized the appointment of an examiner in the chapter 11 cases pursuant to 11 U.S.C. §1104(c)(2) [Docket No. 454]. On July 3, 2012, the Court approved the appointment of Arthur J. Gonzalez as examiner [Docket No. 674].

7. Prior to the Petition Date, Citibank entered into the Citibank MSR Facility. The Citibank MSR Facility is secured by certain mortgage servicing rights for mortgage loans in Freddie Mac and Fannie Mae securitization pools (the "**GA MSRs**"). Because the pool is fixed, the value of the GA MSRs would be expected to decline over time as the underlying loans are repaid.

8. By motion dated May 14, 2012, the Debtors moved for authority to use cash collateral of Citibank under the Citibank MSR Facility on an interim and final basis. Citibank consented to that motion based upon the fact that the auction of the debtors' principal assets (including Citibank's cash collateral under the Citibank MSR Facility) was anticipated to occur in October 2012. On May 15, 2012, the Court issued the *Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [Docket No. 79]. On June 20, 2012, the Court issued the Final Cash Collateral Order.

9. Under the Final Cash Collateral Order, the outstanding principal amount of Citibank's secured claim as of the Petition Date was acknowledged to be not less than $152 million. *See* Final Cash Collateral Order ¶ G. Additionally, under the Final Cash Collateral Order, Citibank is entitled to receive (i) adequate protection liens on all of the collateral securing the Citibank MSR Facility, which is senior to the liens granted to the lender under the Debtors' debtor-in-possession credit facility, (ii) adequate protection payments in the form of payment of interest at the non-default rate under the Citibank MSR Facility and all fees and expenses payable to Citibank under the Citibank MSR Facility, and (iii) upon the sale of Citibank's collateral, the repayment of the loans under the Citibank MSR Facility from the proceeds of such sale. *See* Final Cash Collateral Order ¶ 6.

10. On August 24, 2012, the Homeowner Claimants filed the Motion seeking the appointment of a Borrowers' Committee.

## THE SALE OF ASSETS

11. Among the Debtors' principal objectives in commencing their chapter 11 cases has been their ability to promptly sell their principal assets. *See* Affidavit of James

Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, dated May 14, 2012, ¶ 105 [Docket No. 6]. Moreover, it is clear that "immediately commencing an orderly asset sale and plan process is the best way to preserve the Debtors' origination and servicing businesses on a going-concern basis for sale (in whole or in part) in order to maximize the value of the Debtors' assets for the benefit of creditors." *Id*. at ¶ 109.

12. When the Debtors commenced their chapter 11 cases, Nationstar Mortgage LLC ("**Nationstar**") was the pre-negotiated stalking horse bidder for the sale of the Debtors' mortgage loan origination and servicing businesses (the "**Platform Sale**"), and Ally Financial Inc. ("**AFI**") was the proposed stalking horse bidder for the sale of the Debtors' "legacy" portfolio consisting mainly of mortgage loans and other residual financial assets (the "**Legacy Sale**," together with the Platform Sale, the "**Asset Sales**"). As a result of further negotiations, Berkshire Hathaway Inc. replaced AFI as the stalking horse bidder for the Legacy Sale and Nationstar raised its bid with respect to the Platform Sale.

13. On the Petition Date, the Debtors filed the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "**Sale Motion**") for, *inter alia*, approval of bid

procedures and the scheduling of an auction and a sale hearing with respect to the Asset Sales (the "**Sale Procedures**") [Docket No. 61]. The Sale Procedures contemplated that a hearing on the Assets Sales be held on October 15, 2012. *See* Sale Procedures ¶ 59. The Sale Procedures clearly indicated that in the event the plan process were to be delayed, it would be essential to "pursue an alternative course of action and immediately move forward with the Sales under Bankrupcy code [*sic*] section 363(b)." Sale Procedures ¶¶ 4, 65.

14. On June 28, 2012 the Court issued an order (the "**Sale Procedures Order**") approving bidding procedures in connection with the Asset Sales, and scheduled an auction for October 23, 2012 (the "**Auction**"), and a sale hearing for November 5, 2012 (the "**Sale Hearing**") [Docket No. 538].[1] The Sale Procedures Order adopted the Debtors' original proposal that, if the confirmation process were delayed, the Debtors would be able to continue to proceed on the contemplated timeline. *See* Sale Procedures Order ¶ 3.

15. On July 31, 2012, the Court entered the *Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (II) The RMBS Trustees' Limited Objection to the Sale Motion* (the "**Revised Scheduling Order**") [Docket No. 945] setting a variety of deadlines with respect to (i) the Debtors' motion for approval of a proposed settlement with the RMBS Trustees under Bankruptcy Rule 9019 and (ii) discovery in connection with the Sale Motion. The deadlines set forth in the Revised Scheduling Order are clearly designed to keep the all-important sale process on track in accordance with this Court's Sale Procedures Order.

---

[1] Citibank's understanding is that the Sale Hearing has been, or will be, adjourned to November 19, 2012.

16. Pursuant to the Revised Scheduling Order, the Court set August 23, 2012 as the date by which the Creditors Committee, the RMBS Trustees, or any other party in interest could file Pre-Auction Objections (as defined in the Revised Scheduling Order) to the Sale Motion. The Pre-Auction Objections, by definition, are limited to certain types of issues that could interfere with and undermine the auction process. The purpose in singling out the Pre-Auction Objections for resolution prior to the Auction was so that the Auction could proceed as scheduled. Pre-Auction Objections were filed by various parties, including The Bank of New York Mellon, Frost National Bank, U.S. Bank National Association and Wells Fargo Bank, N.A., and a hearing on those objections is presently scheduled for September 27, 2012.

## **LIMITED OBJECTION**

17. Citibank does not object to the relief requested in the Motion by the Homeowner Claimants, *provided* that the appointment of a new Borrowers Committee, if any, not be a basis for any delay of the sale process, including the Auction and the Sale Hearing. Any delay would be highly prejudicial to the interests of all creditors of these estates, including the interests of Citibank as a secured creditor under the Citibank MSR Facility and the Final Cash Collateral Order.

18. Citibank's consent to the use of cash collateral specifically was premised on the Debtors expeditiously proceeding with the Platform Sale, as a means to best preserve the value of the GA MSRs in the current low interest, high refinancing rate environment. Although Citibank did not object to the initial change in the Sale Procedures (that resulted in moving the Sale Hearing from October 15th to November 5th), any further delay would be expected to adversely impact the value of Citibank's collateral.

WHEREFORE, for the foregoing reasons, Citibank respectfully requests that, if the Court decides to grant the relief sought in the Motion, it provide in the appointment order that the appointment of a Borrowers Committee shall not constitute a basis for delaying the sale process, including the Auction and the Sale Hearing.

Dated: September 14, 2012
      New York, New York

SHEARMAN & STERLING LLP

*/s/ Fredric Sosnick*_____
Fredric Sosnick
Edmund M. Emrich
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile:  (212) 848-7179

*Counsel for Citibank, N.A.*