**Hearing Date and Time: September 27, 2012 at 10:00 a.m. (ET)**
**Objection Deadline: September 14, 2012 at 4:00 p.m. (ET)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Elise S. Frejka
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, <u>et</u> <u>al.</u>, | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

------------------------------------------------------------ x

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION FOR AN ORDER APPOINTING AN OFFICIAL COMMITTEE OF <u>BORROWERS PURSUANT TO SECTION 1102(a)(2) OF THE BANKRUPTCY CODE</u>**


# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

OBJECTION.................................................................................................................................. 3

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ad Hoc Bondholders Group v. Interco, Inc. (In re Interco, Inc.)*,
    141 B.R. 422 (Bankr. E.D. Mo. 1992) ......................................................................................4

*Albero v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*),
    68 B.R. 155 (S.D.N.Y. 1986).....................................................................................................4

*In re American Home Mortgage Holdings*,
    No. 07-11047 (Bankr. D. Del. 2007) ...............................................................................2, 9, 10

*In re Beker Indus. Corp.*,
    55 B.R. 945 (Bankr. S.D.N.Y. 1985).........................................................................................3

*In re Dana Corp.*,
    344 B.R. 35 (Bankr. S.D.N.Y. 2006).....................................................................................4, 5

*In re Dow Corning Corp.*,
    194 B.R. 121 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258
    (E.D. Mich. 1997) .....................................................................................................................3

*In re Drexel Burnham Lambert Grp., Inc.*,
    118 B.R. 209 (Bankr. S.D.N.Y. 1990).......................................................................................5

*In re Eastman Kodak*,
    No. 12-10202, 2012 WL 2501071 (Bankr. S.D.N.Y. June 28, 2012) .......................................3

*In re Enron Corp.*,
    279 B.R. 671 (Bankr. S.D.N.Y. 2002)................................................................................ passim

*In re Grant Broad. of Phila.*, 71 B.R. 655 (Bankr. E.D. Pa. 1987) ...............................................8

*In re Hills Stores Co.*,
    137 B.R. 4 (Bankr. S.D.N.Y. 1992)......................................................................................4, 5

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Kalvar Microfilm, Inc.*,
  195 B.R. 599 (Bankr. D. Del. 1996) ................................................................................. 4, 10

*In re McLean Indus., Inc.*,
  70 B.R. 852 (Bankr. S.D.N.Y 1987) ........................................................................................ 4

*In re Oneida Ltd.*,
  351 B.R. 79 (Bankr. S.D.N.Y. 2006) ....................................................................................... 3

*In re Public Serv. Co. of N.H.*,
  89 B.R. 1014 (Bankr. D.N.H. 1988) ........................................................................................ 4

*In re Sharon Steel Corp.*,
  100 B.R. 767 (Bankr. W.D. Pa. 1989) ..................................................................................... 4

*In re ShoreBank Corp.*,
  467 B.R. 156 (Bankr. N.D. Ill. 2011) ...................................................................................... 3

*In re The Circle K Corp.*,
  199 B.R. 92 (Bankr. S.D.N.Y. 1996), *aff'd*, No. 96 CIV. 5801,
  1997 WL 31197 (S.D.N.Y. Jan. 28, 1997) ........................................................................ 8, 9

*In re Williams Communications Grp., Inc.*,
  281 B.R. 216 (Bankr. S.D.N.Y. 2002) ..................................................................................... 4

*In re Winn-Dixie Stores, Inc.*,
  326 B.R. 853 (Bankr. M.D. Fla. 2005) .................................................................................... 3

*Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron
  Corp.*, No. 02-Civ.-6274, 2003 U.S. Dist. LEXIS 18149 (S.D.N.Y. Oct. 9, 2003) .............. 7, 8

**STATUTES AND RULES**

11 U.S.C. § 1102 ............................................................................................................... passim

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Motion for an Order Appointing an Official Committee of Borrowers Pursuant to Section 1102(a)(2) of the Bankruptcy Code (the "Motion") [Docket No. 1264] filed by the Movants.[1] In support of its Objection, the Creditors' Committee respectfully represents as follows:[2]

## PRELIMINARY STATEMENT

1. Appointment of an additional official committee to represent a specific category of creditors is an extreme remedy, and the Movants have failed to sustain their burden to justify such an appointment here. Not only would the appointment of another official committee to represent borrowers be redundant and duplicative of the role and statutory duties of the Creditors' Committee, but the relief requested would serve an improper purpose as the Movants apparently seek to gain official status in order to advise individual borrowers holding contingent unsecured claims with regard to their personal legal rights and defenses *vis-a-vis* the Debtors in pending and threatened foreclosure actions.

2. The Motion ignores the critical fact that the Creditors' Committee represents the interests of *all* unsecured creditors – borrower creditors included. Movants allege that an official

---

[1] The Movants (the "Movants") are Nathaniel Arnold, Luis Fitzgerald-Fernandez, Alan Israel & Jill C. Habib, Peter Webb, Ariel Barel, Jean-Marc Bensaid, Diane Boyter, Conrad Burnett, Stephen & Francesca Grello, Francine Modderno, Florence Mason, Jimmy Morris, Phillip Weissburg, Audrey & Griggs Wimbley, Patrick Farrell, Melissa Lallo, Caley Coleff, Terry Slovak, Amelia Colvin, Yvonne Hartshorn, Roxanne Harbert, William A. Marshall, Sr., Joanna L. Belanger, David A. Belanger, Kristin Burak, Shannon Mcintyre, John Lebron, Timothy Dixon, Jeffrey Ginn, and Val M. Steele. The Movants allege that each of them is an individual homeowner and contingent unsecured creditor of the Debtors. *See* Motion at 11.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

borrowers committee is required because the Creditors' Committee has only one borrower member and the interests of borrowers are "fundamentally different from other creditors." *See* Motion at 15. But the very nature of a creditors' committee is to represent varying creditor constituencies, with divergent and sometimes even opposing interests, and each member is charged with the fiduciary duty of serving the interests of creditors generally. The Creditors' Committee acts as a fiduciary and advocate on behalf of the entire unsecured creditor constituency, seeking to maximize the assets in the estates for the benefit of *all* unsecured creditors. A separate committee for a particular group of creditors is warranted only in rare cases where intercreditor conflicts are both extreme and central to resolving the case. As more fully discussed below, the Movants have failed to sustain their burden of demonstrating the need here for appointment of a committee comprised exclusively of borrower unsecured creditors, who are already represented on the Creditors' Committee. No one creditor constituency dominates the Creditors' Committee, which has acted effectively to protect the interests of both borrower and lender creditors in these cases. Moreover, concrete steps have been taken to protect the interest of borrowers that clearly distinguish these cases from *American Home Mortgage*, No. 07-11047 (Bankr. D. Del. 2007), in which a borrowers' committee was deemed necessary. Movants have simply failed to prove that a separate statutory committee is required to provide adequate representation for this single group of creditors among all of the Debtors' creditor constituencies. Moreover, the costs and procedural complications associated with the appointment of a second official committee would burden these estates with additional fees, expenses, and delay that will dilute the recovery of unsecured creditors without any concomitant benefit.

**OBJECTION**

3.      A party-in-interest seeking the appointment of an additional official committee has the burden of proving that any existing committee does not adequately represent the interests of that constituency. *See In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002); *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005); *In re Dow Corning Corp.*, 194 B.R. 121, 144 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997). Despite having discretionary authority to direct the appointment of additional official committees, courts are hesitant to grant such relief, and the requirement that movants show such a committee is "necessary to assure adequate representation" has been described as ranging from a "high standard" to requiring a showing that an additional committee is "'absolutely required,' 'essential,' or 'indispensable.'" *See In re Eastman Kodak*, No. 12-10202, 2012 WL 2501071, at *2 (Bankr. S.D.N.Y. June 28, 2012) (quoting *In re ShoreBank Corp.*, 467 B.R. 156, 164-65 (Bankr. N.D. Ill. 2011)); *In re Oneida Ltd.*, 351 B.R. 79, 83 (Bankr. S.D.N.Y. 2006).

4.      A court should exercise its discretion and appoint an additional official committee only when necessary to assure adequate representation of creditors. 11 U.S.C. § 1102(a)(2); *see also Enron Corp.*, 279 B.R. at 688 (assurance of adequate representation is most important factor; size of case alone is not determinative). Section 1102(a)(2) of the Bankruptcy Code does not set forth a test of adequate representation, so the court must examine the specific facts of a case to determine whether appointment of an additional official committee is appropriate. *See In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985) (adequate representation not defined in statute, but requires interpretation by court). In performing the adequate representation analysis, courts often consider a number of non-exclusive factors, including: (a) the ability of the committee to function; (b) the nature of the case; (c) the standing and desires of the various constituencies; (d) the ability for creditors to participate in the case even without an

official committee; (e) the delay and additional cost that would result if the court grants the motion; (f) the tasks that a committee or separate committee is to perform; and (g) other factors relevant to the adequate representation issue. *See In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006); *see also Enron*, 279 B.R. at 685; *In re McLean Indus., Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y 1987); *Albero v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 68 B.R. 155, 159-60 (S.D.N.Y. 1986). No one factor is dispositive, and the consideration given to each depends on the circumstances of a particular chapter 11 case. *See Dana*, 344 B.R. at 38 (citing *In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 600-01 (Bankr. D. Del. 1996)).

5. In the vast majority of chapter 11 cases, a single committee of creditors has been deemed sufficient. *See, e.g.*, *In re Sharon Steel Corp.*, 100 B.R. 767, 777-78 (Bankr. W.D. Pa. 1989) (single unsecured creditors committee is the norm and appointment of additional committees is extraordinary remedy); *see also In re Hills Stores Co.*, 137 B.R. 4 (Bankr. S.D.N.Y. 1992) (denying request for appointment of separate committee of subordinated bondholders); *Ad Hoc Bondholders Group v. Interco, Inc. (In re Interco, Inc.*), 141 B.R. 422 (Bankr. E.D. Mo. 1992) (denying request to appoint separate committee of debenture holders); *In re Public Serv. Co. of N.H.*, 89 B.R. 1014, 1019 (Bankr. D.N.H. 1988) (declining request by individual debenture holders for appointment of separate committee). This high standard dictates that an additional committee not be appointed unless the Movants prove that they "are unable to represent their interests . . . without an official committee." *See In re Williams Communications Grp., Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002) (denying motion for appointment of equity committee since shareholders' interests were adequately represented). The mere fact that a case is, like this one, large and complex does not establish the need for

4

multiple official committees to represent different groups of unsecured creditors. *See Enron*, 279 B.R. at 688.

6. The Creditors' Committee respectfully submits that the Movants have not – and cannot – show that they are entitled to such an "extraordinary remedy" in the current circumstances. There is no legal or factual basis for each and every creditor constituency to be entitled to its own official committee. Because the Movants have not met the threshold criteria articulated in Section 1102(a)(2) of the Bankruptcy Code, the Motion should be denied.

7. The Creditors' Committee has a fiduciary duty to protect the interests of all unsecured creditors. *See Enron*, 279 B.R. at 694; *Dana*, 344 B.R. at 38. The issue, therefore, is not whether the Creditors' Committee is an exact replica of the creditor body, but whether representation of various types of creditors is generally adequate. *See Enron*, 279 B.R. at 690 (citing *In re Hills Stores Co.*, 137 B.R. at 7). Here, borrowers' claims against the Debtors are unsecured claims – making them members of the very constituency already represented by the Creditors' Committee. The mere fact that these claims arise out of foreclosure-related proceedings does not distinguish them from other general unsecured creditors. Moreover, differing interests or agendas do not justify the appointment of an official committee of borrowers. *See In re Drexel Burnham Lambert Grp., Inc.*, 118 B.R. 209, 212-13 (Bankr. S.D.N.Y. 1990) (citing to Congressional record, denying motion for appointment of additional committee, and stating that "Committees are not designed to provide a speaker's platform for [one] particular creditor [or constituency]. They are designed to enable investigation and to provide a forum for negotiation on behalf of all of the claims or interests they represent."); *Dana*, 46 B.R. at 38-39 ("Creditor committees often contain creditors having a variety of viewpoints (heterogeneous); however, these differing views do not require a separate homogeneous

5

committee unless they impair the ability to reach a consensus."); *Enron*, 279 B.R. at 689 ("[W]ith one body having a fiduciary duty to all unsecured creditors, the parties are placed on even ground in their commonality as unsecured creditors with a goal toward maximizing recovery.")

8. Contrary to the Movants' assertions, the Creditors' Committee is hardly "dominated" by any particular constituency or interest. *See* Motion at 14. All major creditor constituencies are represented by the nine (9) members of the Creditors' Committee: a borrower and representative for plaintiffs in the *Kessler* litigation; three trustees for residential mortgage-backed securities; unsecured bondholders represented by an indenture trustee; two monoline insurers; and two securities fraud litigation claimants. As such, the Creditors' Committee is presumptively capable of representing the interests of borrowers along with all other unsecured creditors.[3] Indeed, the United States Trustee organized the Creditors' Committee to provide adequate representation taking into account the divergent interests of all unsecured creditors. Despite differing interests, the Committee functions as a cohesive and representative unit. Nowhere does the Motion allege any circumstance in which the ability of the Creditors' Committee to function has been or would be impaired. As aptly stated by the court in *Enron*, a single committee was a "catalyst for negotiation and compromise" and "adding additional committees would likely intensify conflict and lead to further complication." *Enron*, 279 B.R. at 687-88 (declining to appoint either separate official committee for energy traders or separate committee of creditors for Enron North American creditors). As such, the Movants have not established that the Creditors' Committee lacks the ability to function and reach consensus.

---

[3] In addition, pursuant to the bylaws of the Creditors' Committee, to the extent any member of the Creditors' Committee disagrees with positions taken by the committee as a whole, such member retains the right to appear in the Chapter 11 Cases and take a position different from that of the Creditors' Committee. Nothing in this Objection shall be deemed to waive an individual Creditors' Committee member's right to take positions contrary to, or inconsistent, with the positions set forth herein.

6

9.      The mere fact that borrower unsecured creditors do not hold a *majority* vote on the Creditors' Committee does not mean that their interests are not *adequately* represented or considered. Based upon the Movants' logic, each creditor constituency should be entitled to its own official committee – an absurd result that would lead to confusion, delay, and unprecedented and unjustified estate expense. "[B]ecause creditors would be balkanized into several independent committees, each furthering the interests of only certain groups, the consultation and balancing of interests necessary for a successful negotiation of a reorganization plan would be severely hampered, leading to increased costs and delays." *Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02-Civ.-6274, 2003 U.S. Dist. LEXIS 18149, at *7-8 (S.D.N.Y. Oct. 9, 2003) (affirming lower court's denial of motion to appoint separate committee of energy traders).

10.     Recognizing that the claims and interests of borrowers are a relevant aspect of these cases, the Creditors' Committee has been actively involved in borrower-specific issues. For example, the Creditors' Committee was actively involved in the negotiation and implementation of the Supplemental Servicing Order, which provides borrowers with unprecedented relief from the automatic stay to protect their homes from foreclosure in pending or threatened judicial and non-judicial proceedings.[4] These negotiations were extensive, comprehensive, and involved various constituencies, including the National Association of Consumer Bankruptcy Attorneys, to ensure that the competing interests of lenders and borrowers were adequately represented. The outcome was the result of a compromise that recognized that

---

[4] *See* Supplemental Order for Interim Relief Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses [Docket No. 391].

the Debtors could not use the automatic stay as both a sword and a shield. The procedures established by the Supplemental Servicing Order have been successfully implemented to date and have largely resulted in the consensual resolution of borrower-related lift stay motions.

11. It appears that Movants seek to establish a borrowers committee not merely to assure adequate representation of the general interests of borrowers (which the Creditors' Committee already provides) but in reality to *represent* actual and potential borrower litigants in the manner of class action counsel: "Appointing a borrowers committee will centralize and streamline a method of the millions of homeowners affected by this filing to have representation in this matter." Motion at 10. The principal purpose of a committee, however, is not to advocate the agenda of any one class of creditors or individual constituents, but rather to "strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished." *See Mirant Americas Energy Mktg.*, No. 02-Civ.-6274, 2003 WL 22327118, at *6 (S.D.N.Y. Oct. 9, 2003). An additional borrowers committee is both unnecessary and inappropriate, where, as here, the Movants seek the appointment of a borrowers' committee for an improper purpose—to advise individual borrowers holding unsecured claims as to their individual rights against the Debtors in foreclosure actions. It is not the function of the Creditors' Committee or any official committee "to provide a Court sanctioned spokesman, at the cost and expense to the estate, to protect and advocate the interests of [individual] creditors in asserted rights against third persons. This can be done, if necessary, by individual creditors on their own behalf." *See In re Grant Broad. of Phila.*, 71 B.R. 655, 661 (Bankr. E.D. Pa. 1987) (internal quotation marks and citation omitted). A committee cannot advocate on behalf of individual constituents for policy as well as practical reasons – if a borrowers committee was appointed for such a purpose, "[n]either the committee nor its lawyers could function if each

8

constituent was a client." *See In re The Circle K Corp.*, 199 B.R. 92, 99-100 (Bankr. S.D.N.Y. 1996), *aff'd*, No. 96 CIV. 5801, 1997 WL 31197 (S.D.N.Y. Jan. 28, 1997).

12. Contrary to the Movants' assertions, borrowers will not be without access to the Court if the Motion is denied. Borrowers already have adequate representation on the Creditors' Committee and have access to the Court and case information through a borrower-dedicated hotline and websites established by both the Debtors and the Creditors' Committee – all of which provide resources to aid, educate, and respond to questions and concerns of borrowers and other parties-in-interest in these cases.[5] If borrowers require additional assistance to participate in these cases or to understand notices or other pleadings, they may take advantage of the free information and resources on these and other websites. Moreover, those with active claims may be represented in these proceedings by their own individual or class action counsel.

13. Movants' reliance on the *American Home Mortgage* case as a basis for appointing an official committee of borrowers is misplaced. *See In re American Home Mortgage Holdings*, No. 07-11047 (Bankr. D. Del. 2007). In these cases, unique and unparalleled protections for borrowers have been put into place, and many infirmities that existed in *American Home* were spotted and addressed before becoming roadblocks. In *this* case, unlike in *American Home*, (a) there is already a borrower representative on the Creditors' Committee; (b) notice of the last day for filing claims was provided to *all* borrowers, not just those who are in active litigation with the Debtors; (c) procedures were implemented to provide relief from the automatic stay so that borrowers can defend against foreclosure to the fullest extent possible under applicable state law; (d) the Debtors have provided no-cost telephonic access to the Court, upon request; and (e) the Debtors represent that servicing standards are being complied with. These steps demonstrate

---

[5] *See* Creditors' Committee Restructuring Website, available at http://www.rescapcommittee.com; Debtors' Restructuring Website, available at http://www.kccllc.net/rescap.

sensitivity to the needs and interests of the borrower population, and the Creditors' Committee remains committed to ensuring the borrowers are represented in the case and receive adequate information going forward, including in connection with any plan of reorganization. At the same time, neither these protections nor even appointment of an official committee would be likely to eliminate correspondence received by the Court from *pro se* litigants desperate to remain in their homes, as evidenced by the *American Home Mortgage* case, where such letters continued even after a separate committee was approved. [Docket No. 6220].[6] Clearly, the appointment of an additional official committee in these cases would not be the panacea that the Movants promise.

14. The additional costs that would be incurred by the Debtors' estates as a result of appointing an official committee of borrowers cannot be justified. *See Enron*, 279 B.R. at 692; *Kalvar*, 195 B.R. at 601. As this Court is aware, the legal and professional fees in large chapter 11 cases can be significant. Borrowers already have adequate representation on the Creditors' Committee and, additionally, have access to the Court through numerous means and methods. Moreover, the Movants and other borrowers are currently represented by experienced, competent counsel who can continue to represent their interests. The appointment of a separate official committee will inevitably lead to duplication of efforts, procedural complications, and unnecessary additional costs, with no corresponding benefit to justify these burdens on the Debtors' finite estates.

15. Accordingly, the Creditors' Committee requests that the Movants' request for an official committee be denied.

---

[6] *See*, *e.g.*, Letter Requesting Investigation As To Why Creditors Rights Are Being Ignored and Why Constitutional Laws Are Being Manipulated (Filed by Matthew and Melanie Hernandez) [Docket No. 6691], Letter Regarding Bankruptcy Proceeding (Filed by Kenneth Reinard) [Docket No. 7428], Objection to Notice of Auction and Sale (Filed by Matthew and Melanie Hernandez) [Docket No. 7432], Response Regarding Omnibus Objection to Claims (Thirty-Third) (Substantive) (Filed by Kenneth Reinard) [Docket No. 7494], *In re American Home Mortgage Holdings*, No. 07-11047 (Bankr. D. Del. 2007).

## **CONCLUSION**

WHEREFORE, the Creditors' Committee respectfully requests that this Court deny the relief requested in the Motion, and grant such other and further relief as may be just and proper.

Dated: New York, New York
September 14, 2012

                                     KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                     /s/ Kenneth H. Eckstein
                                     Kenneth H. Eckstein
                                     Douglas H. Mannal
                                     Elise S. Frejka
                                     1177 Avenue of the Americas
                                     New York, New York 10036
                                     Telephone: (212) 715-9100
                                     Facsimile: (212) 715-8000

                                     *Counsel for the Official Committee*
                                     *of Unsecured Creditors*