**OBJECTION DEADLINE: SEPTEMBER 18, 2012 AT 4:00 P.M. EST***

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Thomas J. Moloney (TJM-9775)
Sean A. O'Neal (SAO-4067)
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Special Counsel for Wilmington Trust, National Association, as Indenture Trustee for the Senior Unsecured Notes Issued by Residential Capital, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
:
In re                                                          :     Chapter 11 Case No.
                                                               :
RESIDENTIAL CAPITAL, LLC, et al.,                              :     12-12020 (MG)
                                                               :
                         Debtors.                              :     (Jointly Administered)
                                                               :
---------------------------------------------------------------X

**LIMITED OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO COMPENSATE PRICEWATERHOUSECOOPERS, LLP FOR FORECLOSURE REVIEW SERVICES AND (II) REAFFIRMING RELIEF GRANTED IN THE GA SERVICING ORDER**

---

* The Debtors have consented to a one-day extension for the filing of this limited objection.

TO THE HONORABLE JUDGE GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Wilmington Trust, National Association (the "Trustee"), solely in its capacity as indenture trustee for various series of senior unsecured notes in the outstanding aggregate principal amount of approximately $1 billion (the "Notes," and the holders thereof, the "Noteholders") issued by Residential Capital, LLC ("Residential Capital," and with its debtor-affiliates, the "Debtors"), under that certain indenture dated as of June 24, 2005 (as supplemented, the "Indenture"),[1] respectfully submits this limited objection to the Debtors' Motion for Entry of an Order Under Bankruptcy Code Section 363 and Bankruptcy Rule 6004(i) Authorizing the Debtors to Compensate PricewaterhouseCoopers, LLP for Foreclosure Review Services in Furtherance of the Debtors' Compliance Obligations Under Federal Reserve Board Consent Order and (ii) Reaffirming Relief Granted in the GA Servicing Order (Doc. 1357) (the "Motion"). In support of this limited objection, the Trustee represents as follows:

## PRELIMINARY STATEMENT

1. The Motion to authorize the payment of the professional fees of PricewaterhouseCoopers, LLP ("PwC") from the Debtors' estates—at a cost estimated to be $250 million dollars—should be denied because Ally Financial, Inc. ("AFI") is jointly and severally liable for the cost with GMAC Mortgage, LLC ("GMAC Mortgage"). The Debtors, which are insolvent entities attempting to liquidate and maximize value for creditors, should not bankroll AFI's contractual obligations. Rather, AFI—a solvent entity—should pay PwC's fees. To the

---

[1] The Notes include $1,250,000,000 6.5% notes due 2012, $1,750,000,000 6.5% notes due 2013, $750,000,000 6.875% notes due 2015, €750,000,000 5.125% notes due 2012, £400,000,000 6.375% notes due 2013, and £400,000,000 7.875% notes due 2014, with a total aggregate outstanding principal amount of approximately $1 billion (based on the foreign exchange rate as of the petition date, May 14, 2012).

extent that AFI has a contributiprinton claim against GMAC Mortgage (as to which the Trustee does not express a view), AFI can file a proof of claim like all creditors.

2.     The Motion highlights a larger concern in these cases—that is, AFI's repeated use of its influence over the Debtors to impose responsibilities on Residential Capital that Residential Capital has no responsibility to meet. The absence of any corporate management protection of the interests of Residential Capital in this case is troubling. Of course, there is no good explanation as to why any Debtor should be obligated to pay $250 million on account of an obligation that AFI has unambiguously agreed to pay itself. Prior to filing the Motion, neither the Debtors nor AFI had disclosed to the Court that AFI was jointly and severally liable for PwC's professional fees. But under no circumstance should Residential Capital, the direct obligor on the Notes, be obligated to pay any fees or expenses to PwC in connection with its engagement. Residential Capital has no relevant legal responsibility to perform the Foreclosure Review (defined below) under the Consent Order (defined below) or to pay PwC's fees under the PwC Engagement (defined below).

## BACKGROUND

### A.    Bankruptcy Proceedings

3.     On May 14, 2012, the Debtors commenced voluntary cases under chapter 11, title 11, of the United States Bankruptcy Code (the "Bankruptcy Code").

4.     On May 14, 2012, the Court authorized joint administration, and the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### B.    Consent Order and PwC Engagement

5.     On April 13, 2011, Residential Capital, GMAC Mortgage, AFI, and Ally Bank, entered into a consent order with the Federal Reserve Board ("FRB") and the Federal Deposit Insurance Corporation (the "Consent Order"). The Consent Order arose out of an investigation

3

among the FRB and other regulators into alleged foreclosure abuses by GMAC Mortgage and its subsidiaries. See Motion Ex. 5 (Consent Order at 2-4). Pursuant to the Consent Order, GMAC Mortgage, and GMAC Mortgage alone, is required to retain an independent consultant to review residential mortgage foreclosure actions from 2009-2010 (the "Foreclosure Review"). Id. (¶¶ 3-4).

6.     On February 1, 2012, GMAC Mortgage and AFI signed an engagement letter (the "PwC Engagement Letter") with PwC, and PwC was retained to perform the Foreclosure Review (the "PwC Engagement"). See Motion Ex. 6 (PwC Engagement Letter at 1).

7.     The Debtors initially estimated that the cost of the Foreclosure Review to be no more than $180 million. Motion ¶ 10 (citing Whitlinger Aff. ¶ 87). The Debtors now estimate that the cost could reach $250 million. Motion ¶ 10 (citing Pensabene Decl. ¶ 9).

C.     **GA Servicing Order**

8.     On May 14, 2012, the Debtors filed that certain Motion for Entry of Interim and Final Orders Under Sections 105(a), 361, 362, 363, 1107(a), and 1108 of the Bankruptcy Code (I) Authorizing the Debtors to Continue in the Ordinary Course of Business (A) Servicing Governmental Association Loans and (B) Foreclosure Activities Related to Certain Real Estate Owned by Fannie Mae, Freddie Mac, and Ginnie Mae; (II) Authorizing the Debtors to Pay Certain Prepetition Amounts Due to Critical Servicing Vendors and Foreclosure Professionals; (III) Granting Limited Stay Relief to Enable Borrowers to Assert Related Counter-Claims in Foreclosure and Eviction Proceedings; (IV) Authorizing the Debtors to Use Cash Collateral Under the Fannie Mae EAF Facility; and (V) Granting Related Relief (Doc. 57) (the "GA Servicing Motion"). No disclosure was made in the GA Servicing Motion that AFI was jointly and severally liable for the PwC Engagement.

9. On June 11, 2012, the Debtors filed an amended proposed order with respect to the GA Servicing Motion (Doc. 313) (the "Amended Proposed Order"). No filing related to the Amended Proposed Order disclosed that AFI was jointly and severally liable for the PwC Engagement.

10. On June 12, 2012, the Court held a hearing to discuss the Amended Proposed Order, and the Debtors did not disclose that AFI was jointly and severally liable for the PwC Engagement.

11. On June 15, 2012, the Court entered a final order granting the GA Servicing Motion (Doc. 401) (the "GA Servicing Order").

## ARGUMENT

### A. AFI Should Pay For The PwC Engagement

12. The language of the PwC Engagement Letter is unambiguous: AFI and GMAC Mortgage are jointly and severally obligated to pay all fees and expenses incurred by PwC. See Motion Ex. 6 (PwC Engagement Letter at 1) ("Both Ally and [GMAC Mortgage] shall be jointly and severally liable for the fulfillment of any and all obligations, responsibilities and liabilities of the Company under this Agreement."). Indeed, AFI's liabilities are not limited under the PwC Engagement Letter in any way.[2] Yet the Debtors, with no explanation, seek to use estate assets to

---

[2] The PwC Engagement is unlike other retentions related to the Foreclosure Review whereby AFI is secondarily liable for the obligations of GMAC Mortgage. See Debtors' Application Under Section 327(e) of the Bankruptcy Code and Local Rule 2014-1 For Authorization To Employ and Retain Hudson Cook, LLP As Special Counsel to the Debtors, Nunc Pro Tunc To May 14, 2012 (Doc. 1427) Ex. 3 at 5 ("To the extent that Hudson Cook's invoices are not paid by GMAC Mortgage, LLC., and consistent with the terms of the Supplement Agreement by and between Ally Financial Inc. and Federal Reserve Bank of Chicago, dated __ April, 2012 (Docket No. 12-030-WA/RB-HC), Ally Financial Inc. will be secondarily liable for the payment of Hudson Cook's invoices.") (emphasis added); Debtors' Application Under Section 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 Authorizing the Debtors To Employ and Retain Pepper Hamilton LLP As Special Foreclosure Review Counsel For Bankruptcy Issues to the Debtors, Nunc Pro Tunc To May 14, 2012 (Doc 1426) Ex. 3 at 2 ("To the extent that Your invoices are not paid by GMAC Mortgage, LLC., and consistent with the terms of the Supplement Agreement by and between Ally Financial Inc. and Federal Reserve Bank of Chicago, dated __ April, 2012 (Docket No. 12-030-WA/RB-HC), Ally Financial Inc. will be secondarily liable for the payment of Your invoices") (emphasis added).

5

fund the full cost of the Foreclosure Review in exchange for a reservation of rights for contribution. See Motion ¶ 13 (citing GA Servicing Order). Any claims AFI has for contribution should be made within the limitations of the Bankruptcy Code and this bankruptcy case. See, e.g., In re Laidlaw USA, Inc., 287 B.R. 603, 605 (Bankr. W.D.N.Y. 2002) (noting that a co-obligor may obtain a just participation or distribution in the reorganization case by paying the obligee in full).

B.   **Wilmington Trust Objects To The Extent The Motion Appears to Make Residential Capital Liable For The Obligations Of AFI And GMAC Mortgage Under The PwC Engagement**

13.   The Motion and proposed order contemplate permitting the "Debtors . . . to use estate funds" to compensate PwC even though Residential Capital and the other Debtors, except for GMAC Mortgage, are under no payment obligation whatsoever. See Motion ¶ 12; Motion Ex. 1 (Proposed Order ¶ 2). The Motion makes no distinction between those Debtors that are obligated under the PwC Engagement and those that are not.

14.   Moreover, the Motion incorrectly states that, pursuant to the PwC Engagement Letter, Residential Capital is obligated to pay for the Foreclosure Review. See Motion ¶ 15 ("[T]he [PwC Engagement] obligates the Consent Order Debtors [defined to include Residential Capital] and AFI to pay for the [Foreclosure Review]."). Although Residential Capital acknowledged the PwC Engagement Letter, the payment obligation falls squarely on GMAC Mortgage and AFI. See Motion Ex. 6 (PwC Engagement Letter at 1) ("Both of [AFI] and [GMAC Mortgage] shall be jointly and severally liable for the fulfillment of any and all obligations, responsibilities and liabilities of [AFI] and [GMAC Mortgage] under this Agreement."). This allocation of responsibility is consistent with the Consent Order, which expressly articulates that: (a) AFI owns, and engages in the mortgage servicing business through, GMAC Mortgage, and (b) GMAC Mortgage is required to retain an independent auditor to perform the Foreclosure Review.

See Motion Ex. 5 (Consent Order ¶ 3) ("GMAC Mortgage shall retain one or more independent consultant(s).").[3] Any order approved by the Court should clarify that Residential Capital has no obligation or authority to make payments under the PwC Engagement Letter.

## CONCLUSION

For the foregoing reasons, the Motion should be denied. In the event that the Court grants the Motion, the Trustee requests that the order provide that Residential Capital and other Debtors, other than GMAC Mortgage, are under no obligation or authority to make payments for the PwC Engagement.

Dated: New York, New York
       September 17, 2012

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ Sean A. O'Neal
Thomas J. Moloney (TJM-9775)
Sean A. O'Neal (SAO-4067)
Members of the Firm
One Liberty Plaza
New York, NY 10006
*(212) 225-2000*

*Special Counsel for Wilmington Trust, National Association, as Indenture Trustee for the Senior Unsecured Notes Issued by Residential Capital, LLC*

---

[3] Nor does the GA Servicing Order require Residential Capital to pay for the obligations of AFI and GMAC Mortgage in respect of the Foreclosure Review. Specifically, the GA Servicing Order states that Debtors are authorized to "use estate assets and take such actions as, in their reasonable business judgment, are necessary to comply with . . . the Consent Order . . . ." See GA Servicing Order ¶ 3. Only AFI and GMAC Mortgage hired PwC to undertake the Foreclosure Review in compliance with the Consent Order.