UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

In re:                                                    Case No. 12-12020-mg

RESIDENTIAL CAPITAL, LLC aka                Related Consolidated Cases:
RESIDENTIAL CAPITAL CORPORATION,       12-12019 through 12-12040
                                                          12-12042, 12-12066, 12-12068
        Debtor.                                          & 12-12071

                                                          Chapter 11

------------------------------------------------------x

## APPLICATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

        Wachovia Bank National Association, as Trustee of the Security National Mortgage Loan Trust 2004-2, its assignees and/or successors in interest (the "Movant") alleges as follows:

        1.    That on or about May 14, 2012, the Debtor, Residential Capital, LLC a/k/a Residential Capital Corporation, (the "Debtor") and its subsidiaries filed petitions for Chapter 11 bankruptcy relief before this Court.    At this time, the various cases have been administratively and substantively consolidated.

        2.    The Movant is a first mortgagee, and the current payee of a promissory note dated August 20, 1997 in the principal amount of $89,600.00 (the "Note"), secured by a first mortgage of same date (the "First Mortgage"), encumbering real property commonly known as **517 Gibbs Street, Plainfield, Indiana 46168** (the "Property").    Copies of the Note and Mortgage are attached hereto as **Exhibit "B"**.    The Movant acquired an interest in the Mortgage by way of an Assignment of Mortgage dated August 17, 2010.    A copy of that Assignment of Mortgage is attached hereto as **Exhibit "C**.

        3.    The Debtor possesses an interest in a second mortgage (the "Second Mortgage") which further encumbers the Property in the approximate amount of $11,416.00.

        4.    The Property is owed by Jerry Wayne Pardue, Sr. and Linda Joy Pardue (the "Pardues") who are the makers of the First Mortgage.    On January 17, 2011, the Pardues filed for

Chapter 7 bankruptcy relief before the United States Bankruptcy Court for the Southern District of Indiana under Case No. 11-00447-AJM-7A (the "Pardue Bankruptcy"), and in connection therewith received a discharge on July 26, 2011.

5.      Significantly, Schedules A and D of the Pardues' Bankruptcy petition indicate that the value of the Property is approximately $87,000.00, and that the Property is encumbered by the First Mortgage, held by Wachovia Bank/SN Servicing, in the amount of $87,000.00. Schedules A and D of the Pardues' Bankruptcy petition also indicate that the Second Mortgage, held by GMAC, further encumbers the Property in the amount of $11,416.00.  True and correct copies of Schedules A and D, filed in connection with the Pardue Bankruptcy, are attached hereto as **Exhibit "A".**  Moreover, the Pardues indicated their intent to surrender their interest in the Property as evidenced by the Statement of Intent attached hereto as **Exhibit "D".**

6.      Movant respectfully requests that this Court take judicial notice, pursuant to Federal Rule of Evidence 201, of the value of the Property and the amounts identified as due and owing under the First Mortgage and Second Mortgage, as set forth in the schedules filed in connection with the Pardue Bankruptcy.

7.      As indicated in the accompanying affidavit of Julie Johnson, a person attesting to have personal knowledge of the amounts due under the First Mortgage, the following amounts are due and owing in connection with the First Mortgage:

| | |
|---|---|
| Unpaid Principal Balance: | $    79,981.13 |
| <u>Arrearages:</u> | |
| Monthly Payments from October 1, 2008 through August 1, 2012 at $737.12 | $    34,644.64 |
| Late Charges | $      1,806.14 |
| Prior Attorneys' Fees | $      1,850.00 |
| Foreclosure Expenses | $      2,480.00 |
| Legal Expenses | $        150.00 |

| | | |
|---|---|---|
| Force Place Insurance | $ | 1,635.88 |
| Fax Fees | $ | 20.00 |
| Force Place Insurance | $ | 2,795.56 |
| Rush Fees | $ | 20.00 |
| Property Taxes Current | $ | 1,696.00 |
| Property Taxes Delinquent | $ | 12,643.53 |
| Attorneys' Fees | $ | 826.00 |
| Total Delinquencies | $ | 60,567.75 |

8.    In addition, the Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the applicable loan documents.  As a result, the Movant has been forced to advance funds to insure the Property.

9.    Although the Movant believes it has a basis to initiate foreclosure proceedings against the Pardues in connection with the Property with respect to in rights in, and to, the First Mortgage, Movant is prevented from doing so by virtue of the automatic stay which took effect upon the commencement of the Debtor's filing.

10.    Based upon the foregoing, Movant alleges that Movant is not adequately protected, that the Property is not necessary to effectuate Debtor's reorganization, and that it would be unfair and inequitable to delay Movant in the foreclosure of Movant's interest.  Movant urges this Court to issue an Order granting it relief from the automatic stay to permit Movant to enforce its rights in connection with the First Mortgage, including any necessary action to obtain possession of the Property.

11.    Movant has incurred attorneys' fees in bringing this Motion and is entitled to reimbursement for these fees pursuant to the terms of the First Mortgage and in accordance with 11 U.S.C. § 506(b).

12.    It is respectfully submitted that the commercially reasonable value of the

Property is approximately $87,000.00, as evidenced by the schedules set forth in the Pardue Bankruptcy.

13.    This Court has jurisdiction over this action pursuant to the provisions of 28 U.S.C. §§ 1334 and 157 and 11 U.S.C. § 362(d).

WHEREFORE, Movant prays for judgment as follows:

1.)   For an Order granting relief from the automatic stay as to the Property, permitting Movant to enforce its rights pursuant to the First Mortgage, including any actions necessary to obtain possession of the Property;

2.)   For an Order regarding adequate protection of Movant's interest as this Court deems proper;

3.)  For attorneys' fees and costs for suit incurred herein;

4.)  For an Order waiving the 14-day stay described by Bankruptcy Rule 4001(a)(3); and

5.)  For such other relief as this Court deems appropriate.

Dated: September 17, 2012

By:    _s/ Jason S. Leibowitz_
Jason S. Leibowitz, Esq. (JL6718)
Kriss & Feuerstein LLP
360 Lexington Avenue, Suite 1200
New York, NY 10017
212-661-2900 ext. 4115
646-454-4168 fax
jleibowitz@kandfllp.com

Prober & Raphael, A Law Corporation
P. O. Box 4365
Woodland Hills, CA 91365-4365
(818) 227-0100
S.124-5656A

## SPECIAL NOTICE

**THE FOLLOWING NOTICE IS GIVEN TO YOU IN THE
EVENT THAT THE FEDERAL FAIR DEBT COLLECTIONS
ACT APPLIES TO THIS COMMUNICATION.**

The following statement provides you with notice of certain rights which you may have by law.  <u>Nothing in this statement modifies or changes the hearing date or response time specified in the attached documents</u> or your need to take legal action to protect your rights in this matter.  No provision of the following statement modifies or removes your need to comply with local rules concerning the attached documents.

## CONSUMER DISCLOSURE

This communication is made in an attempt to collect on a debt or judgment and any information obtained will be used for that purpose.  Please be advised that if you notify Prober and Raphael, ALC within 30 days that all or a part of your obligation or judgment is disputed, then Prober and Raphael, ALC will mail you a written verification of the obligations or judgment and the amounts owed to Wachovia Bank National Association, as Trustee of the Security National Mortgage Loan Trust 2004-2.  In addition and upon your request within 30 days, you will be provided with the name and address of the original creditor, if different from the current creditor.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————x

In re:                                                          Case No. 12-12020-mg

RESIDENTIAL CAPTIAL, LLC aka                 Related Consolidated Cases:
RESIDENTIAL CAPITAL CORPORATION,        12-12019 through 12-12040
                                                                     12-12042, 12-12066, 12-12068
          Debtor.                                            & 12-12071

                                                                     Chapter 11

———————————————————x

### AFFIDAVIT OF JULIE JOHNSON

          I, Julie Johnson, being duly sworn, state:

          1.  As to the following facts, I know them to be true of my own personal knowledge, and if called upon to testify in this action, I could and would testify competently thereto.

          2.  I am the employee of SN Servicing Corporation, servicing agent on behalf of Wachovia Bank National Association, as Trustee of the Security National Mortgage Loan Trust 2004-2 who is most familiar with the subject first mortgage loan in favor of Secured Creditor herein, and the ongoing bankruptcy litigation herein.

          3.  The subject real property securing said first mortgage loan is generally described as **517 Gibbs Street, Plainfield, Indiana 46168**.

          4.  That on or about May 14, 2012, the junior lienholder holding a personal property interest under a Note and Mortgage filed a jointly administered and consolidated cases Chapter 11 Petition in Bankruptcy with this Court.

          5.  Debtor, as a lending and mortgage servicing entity appears to have a personal property interest in the junior lien and Note in regard to property generally described as **517 Gibbs Street, Plainfield, Indiana 46168,** and the Note appears to be an asset of the joint Debtor case.  A true and correct copy of the Schedules A and D of Schedules filed in a prior case by *Debtors Jerry Wayne Pardue, Sr and Linda Joy Pardue in Bankruptcy Case No. 11-00447-AJM7*

1

in the Indianapolis, Indiana Bankruptcy Court, is attached hereto as **Exhibit "A"**, and Movant requests the Court take Judicial Notice pursuant to Federal Rules of Evidence 201 of the alleged junior lien of Debtors against the Plainfeld property.

      6. This Secured Creditor is the payee of the mortgage note dated August 20, *1997* in the principal amount of $89,600.00 which is secured by the above-referenced mortgage, *attached hereto as* **Exhibit "B"** *and made a part hereof.*

      7. The above Debtors filed the joint cases on May 14, 2012, and appears to have a junior lien and Note in regard to property generally described as **517 Gibbs Street, Plainfield, Indiana 46168** as an asset in the jointly administered cases.

      8. With respect to Secured Creditor's mortgage, the following is due and owing:

| | | |
|---|---|---|
| Unpaid Principal Balance: | $ | 79,981.13 |
| <u>Arrearages:</u> | | |
| Monthly Payments from October 1, 2008 through August 1, 2012 at $737.12 | $ | 34,644.64 |
| Late Charges | $ | 1,806.14 |
| Prior Attorneys' Fees | $ | 1,850.00 |
| Foreclosure Expenses | $ | 2,480.00 |
| Legal Expenses | $ | 150.00 |
| Force Place Insurance | $ | 1,635.88 |
| Fax Fees | $ | 20.00 |
| Force Place Insurance | $ | 2,795.56 |
| Rush Fees | $ | 20.00 |
| Property Taxes Current | $ | 1,696.00 |
| Property Taxes Delinquent | $ | 12,643.53 |

Attorneys' Fees                                    $       826.00

Total Delinquencies                                $    60,567.75

      9. The commercially reasonable value of the Property is approximately $87,000.00, as evidenced by schedules from prior case of *Debtors Jerry Wayne Pardue, Sr. and Linda Joy Pardue.*

      10.    Relief from the Automatic Stay in the Bankruptcy Case of Jerry Wayne Pardue, Sr. and Linda Joy Pardue, in regard to the subject property described as **517 Gibbs Street, Plainfield, Indiana 46168**, and a true and correct copy of which is attached hereto as **Exhibit "C"**.

      11.    Secured Creditor alleges that it has not been provided with evidence that the property is currently insured, as required under the terms of the loan and has been forced to advance insurance on the property.

      12.    This Secured Creditor has elected to initiate foreclosure proceedings on the subject real property under its mortgage.

      13.    This Secured Creditor is precluded from proceeding to publish the necessary notices and to commence said foreclosure proceedings during the pendency of this Bankruptcy.

DATED: *August 23, 2012*

                               Julie Johnson

State of California

County of Humboldt

On *August 23, 2012* before me, _Carolyn van Aalst_, personally appeared Julie Johnson, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____    (Seal)

> CAROLYN VAN AALST
> Commission # 1939456
> Notary Public - California
> Humboldt County
> My Comm. Expires Jun 3, 2015

3

# EXHIBIT "A"

B6A (Official Form 6A) (12/07)

In re   **Jerry Wayne Pardue, Sr.,**                                    Case No. _____
          **Linda Joy Pardue**

_____,
                          Debtors

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a
cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for
the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W,"
"J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under
"Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and
Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity
claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or
if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **1273 Forest Commons Drive, Avon IN 46123 (Held by Tenants in Entirety) 2,750 Square Feet, 4 Bedrooms, 3.5 Baths. Purchased in 1996 for $196,000** | **Fee simple** | **J** | **196,000.00** | **310,250.00** |
| **517 North Gibbs Street, Plainfield, IN 46168 Held as Tenants in Entirety 1,800 Square Feet, 3 Bedrooms, 1.5 Baths. Purchased in 1986 for $120,000.00** | **Fee simple** | **J** | **87,000.00** | **98,416.00** |
| **5885 Hall Road, Plainfield, IN 46168 (Held as Joint Tenants by Debtor-Wife and Debtor-Wife's son) 1500 square feet, 3 bedroom, 2 baths Purchased for $171,000 in 2004. Mortgage is in Debtor's son's name only. Son quitclaimed 1/2 to Debtor-wife in case of his death.** | **Fee simple** | **J** | **175,000.00** | **169,000.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **458,000.00** | (Total of this page) |
| Total > | **458,000.00** | |

__0__   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

EXHIBIT A

B6D (Official Form 6D) (12/07)

In re   **Jerry Wayne Pardue, Sr.,**                                    Case No. _____
        **Linda Joy Pardue**
_____,
                                    Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | | |
| Account No. **7074**<br><br>**Argent Mortgage Company**<br>**505 Ct. Pkwy West Ste. 100**<br>**Orange, CA 92868** | | | J | | **2004**<br>**Mortgage**<br>**5885 Hall Road, Plainfield, IN 46168**<br>**(Held as Joint Tenants by Debtor-Wife and Debtor-Wife's son)**<br>**1500 square feet, 3 bedroom, 2 baths**<br>**Purchased for $171,000 in 2004.**<br>**Mortgage is in Debtor's son's name only.** | | | | | |
| | | | | | Value $                      **175,000.00** | | | | **169,000.00** | **0.00** |
| Account No. **7110**<br><br>**BAC Home Loans**<br>**450 American Street**<br>**#SV416**<br>**Simi Valley, CA 93065** | | | J | | **2005**<br>**Mortgage**<br>**1273 Forest Commons Drive, Avon IN 46123**<br>**(Held by Tenants in Entirety)**<br>**2,750 Square Feet, 4 Bedrooms, 3.5 Baths.**<br>**Purchased in 1996 for $196,000** | | | | | |
| | | | | | Value $                      **196,000.00** | | | | **310,250.00** | **114,250.00** |
| Account No. **xxx-xx-3166**<br><br>**GMAC**<br>**PO Box 4622**<br>**Waterloo, IA 50704** | | | J | | **1997**<br>**Second Mortgage**<br>**517 North Gibbs Street, Plainfield, IN 46168**<br>**Held as Tenants in Entirety**<br>**1,800 Square Feet, 3 Bedrooms, 1.5 Baths.**<br>**Purchased in 1986 for $120,000.00** | | | | | |
| | | | | | Value $                       **87,000.00** | | | | **11,416.00** | **11,416.00** |
| Account No. **0821**<br><br>**Santander Consumer USA**<br>**PO Box 961245**<br>**Fort Worth, TX 76161** | | | J | | **2006**<br>**Purchase Money Security**<br>**2003 Mercedes SL 500 with over 10,600 miles. Financed through Santander Consumer. Debtor's intention is to surrender.** | | | | | |
| | | | | | Value $                       **23,000.00** | | | | **28,000.00** | **5,000.00** |

**1**   continuation sheets attached

Subtotal
(Total of this page)

| | |
|---|---|
| **518,666.00** | **130,666.00** |

B6D (Official Form 6D) (12/07) - Cont.

In re    **Jerry Wayne Pardue, Sr.,**                    Case No. _____
         **Linda Joy Pardue**

_____,

Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
## (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxx-xx-8202**<br><br>**Sun Trust Bank**<br>**P.O. Box 85526**<br>**Richmond, VA 23285** | | J | **2006**<br><br>**Purchase Money Security**<br><br>**2005 Chrysler 300C with over 18,900 miles. Financed through Sun Trust. Debtor's intention is to keep.** | | | | | |
| | | | Value $          **8,000.00** | | | | 13,000.00 | 5,000.00 |
| Account No. **xxxxxx # xxxxx-xxx2-MF-8**<br><br>**Wachovia Bank/SN Servicing**<br>**One Wachovia Center**<br>**South College Street Suite 4000**<br>**Charlotte, NC 28288** | | J | **1986**<br>**First Mortgage**<br>**517 North Gibbs Street, Plainfield, IN 46168**<br>**Held as Tenants in Entirety**<br>**1,800 Square Feet, 3 Bedrooms, 1.5 Baths.**<br>**Purchased in 1986 for $120,000.00** | | | | | |
| | | | Value $          **87,000.00** | | | | 87,000.00 | 0.00 |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |

Sheet  **1**  of  **1**  continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Subtotal<br>(Total of this page) | | | | 100,000.00 | 5,000.00 |
| | | | Total<br>(Report on Summary of Schedules) | | | | 618,666.00 | 135,666.00 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                     Best Case Bankruptcy

**EXHIBIT "B"**

*Scan To J Drive*

# NOTE

Loan # 1852

August 20, 1997
[Date]

INDIANAPOLIS
[City]

INDIANA
[State]

517 GIBBS STREET, PLAINFIELD, INDIANA  46168
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  89,600.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   MIDWEST MORTGAGE FINANCE, LLC
. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of     9.250       %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.
I will make my monthly payments on the   1st     day of each month beginning on   October 1 1997    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on   September 1, 2027    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 6290 NORTH PORT WASHINGTON ROAD, GLENDALE, WISCONSIN 53217                     or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $        737.12

## 4. BORROWER'S RIGHT TO PREPAY    *SEE ATTACHED PREPAYMENT PENALTY RIDER

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. ~~I may not designate a payment as a prepayment if I have not made all the monthly payments due under the Note.~~ The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

X_____  X_____

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   10   (TEN) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right  to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Form 3200 12/83
Amended 6/91
Initials: *R.P.*

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
Page 1 of 2

VMP -5A (9410)    VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT B

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
Danene G. Clements
Danene G. Clements

_____ (Seal)
JERRY W. PARDUE, SR.                 -Borrower
SSN

_____
Danene G. Clements
Danene G. Clements

_____ (Seal)
LINDA PARDUE                          -Borrower
SSN

_____ (Seal)
                                      -Borrower
SSN:

_____ (Seal)
                                      -Borrower
SSN:

*(Sign Original Only)*

**WITHOUT RECOURSE, PAY TO THE ORDER OF**

**Key Bank USA, N.A.**

**MIDWEST MORTGAGE FINANCE LLC**

BY _____
RAJIV C. SHAH
TITLE  PRESIDENT

BY _____
SANJIV C. SHAH
TITLE  VICE PRESIDENT

Pay to the Order of:
Wachovia Bank National Association as Trustee
of the Security National Mortgage Loan Trust
2004-2

_____
WITHOUT RECOURSE

DEBORAH A. EVESON
SENIOR VICE PRESIDENT
NATIONAL SALES MARKETING
KEY BANK USA, N.A.

Form 3200 12/83

-5A (8410)                                    Page 2 of 2

9700017743
Filed for Record in
HENDRICKS COUNTY IN
JOY BRADLEY
On 08-25-1997 At 10:56 am.
MORTGAGE          23.00
Vol.  23 Pg.   93 -  100

---

[Space Above This Line For Recording Data]

Un.11106.

# MORTGAGE        LOAN #

THIS MORTGAGE ("Security Instrument") is given on    August 20, 1997                          . The mortgagor is
JERRY W. PARDUE, SR. AND LINDA PARDUE, HUSBAND AND WIFE

("Borrower"). This Security Instrument is given to
                    MIDWEST MORTGAGE FINANCE, LLC

which is organized and existing under the laws of        THE STATE OF WISCONSIN                        , and whose
address is 6290 NORTH PORT WASHINGTON ROAD,  GLENDALE, WISCONSIN  53217
                                        ("Lender"). Borrower owes Lender the principal sum of
Eighty Nine Thousand Six Hundred and
no/100-----------------------------------------       Dollars (U.S. $    89,600.00        ),
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on    September 1, 2027                .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this

INDIANA-Single Family-FNMA/FHLMC UNIFORM
                INSTRUMENT  Form 3015  9/90
                             Amended 5/91
VMP -BR(IN) (9607)
       VMP MORTGAGE FORMS - (800)521-7291       Initials
Page 1 of 7

. Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following
described property located in      HENDRICKS    County, Indiana:
SEE SCHEDULE A

[Street, City],

TAX ID #:   21-1-26-51E  330-017
which has the address of      517 GIBBS STREET, PLAINFIELD
Indiana          46168          [Zip Code] ("Property Address");
                    [Street, City],

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied; first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application;** Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may

leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to

Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

23. Waiver of Valuation and Appraisement. Borrower waives all right of valuation and appraisement.

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☒ Other(s) [specify]   LEGAL DESCRIPTION | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Danene G. Clements_                                    _____ (Seal)
Danene G. Clements                                         JERRY W. PARDUE, SR.            -Borrower

_Danene G. Clements_                                    _____ (Seal)
Danene G. Clements                                         LINDA PARDUE                        -Borrower

                                                                        _____ (Seal)
                                                          (Seal)                                              -Borrower
                                                     -Borrower

STATE OF INDIANA,        Marion                            County ss:

        On this   20th      day of   August   ,   1997   , before me, the undersigned, a Notary Public in and for said County, personally appeared   JERRY W. PARDUE, SR. AND LINDA PARDUE, HUSBAND AND WIFE

                                                                and acknowledged the execution of the foregoing instrument.

        WITNESS my hand and official seal.

                                                     _Danene G. Clements_
My Commission Expires:                               Notary Public

        This instrument was prepared by: DOCU-TECH, INC./J.V. FOX FOR **RECORD AND RETURN TO:**
MIDWEST MORTGAGE FINANCE, LLC                        MIDWEST MORTGAGE FINANCE, LLC
6290 N. PORT WASHINGTON RD.                          6290 N. PORT WASHINGTON RD.
GLENDALE, WI  53217                                 GLENDALE, WI  53217

                                Official Seal
                              Danene G. Clements
                                 Notary Public
                               State of Indiana
                        My Commission Expires 6/29/2001
                               County: Morgan

                                                                        Form 3016  9/90

8

APPENDIX A

PART OF THE NORTH HALF OF THE SOUTHWEST QUARTER OF SECTION 26, TOWNSHIP
15 NORTH, RANGE 1 EAST, AND A PART OF LOTS 3 AND 4 IN GIBBS AND STONERS
ADDITION TO THE TOWN OF PLAINFIELD, HENDRICKS COUNTY, INDIANA, THE PLAT OF
SAID ADDITION IS RECORDED IN PLAT BOOK 4, PAGES 5 AND 6, IN THE OFFICE OF THE
RECORDER OF HENDRICKS COUNTY, INDIANA, MORE PARTICULARLY DESCRIBED AS FOLLOWS,
TO-WIT:

BEGINNING AT A POINT ON THE WEST LINE OF LOT #3 IN SAID GIBBS AND STONERS
ADDITION, SAID POINT BEING SOUTH 00 DEGREES 00 MINUTES 00 SECONDS EAST
(ASSUMED BEARING) 12.38 FEET FROM THE NORTHWEST CORNER OF SAID LOT; THENCE
SOUTH 86 DEGREES 58 MINUTES 30 SECONDS EAST, PARALLEL WITH THE NORTH LINE OF
TUCKER AVENUE IN SAID ADDITION 175.48 FEET TO A POINT ON THE EAST LINE OF LOT
NUMBER 4 IN SAID ADDITION; THENCE NORTH 02 DEGREES 36 MINUTES 00 SECONDS WEST
ON AND ALONG THE EAST LINE OF SAID LOT NUMBER 4 A DISTANCE OF 92.16 FEET TO
THE NORTHEAST CORNER OF SAID LOT NUMBER 4; THENCE SOUTH 84 DEGREES 03 MINUTES
27 SECONDS WEST 171.98 FEET; THENCE SOUTH 00 DEGREES 00 MINUTES 00 SECONDS
EAST 65.00 FEET TO THE POINT OF BEGINNING.

# EXHIBIT "C"

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:
SN SERVICING CORPORATION
323 FIFTH STREET
EUREKA, CA 95501

## ASSIGNMENT OF MORTGAGE

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., its successors and assigns of P O Box 2026, Flint, MI 48501-2026; 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474, in consideration of the sum of Ten Dollars ($10.00) to it in hand paid by WACHOVIA BANK NATIONAL ASSOCIATION, AS TRUSTEE OF THE SECURITY NATIONAL MORTGAGE LOAN TRUST 2004-2, Assignee, does hereby sell, transfer and assign, without recourse to said Assignee all its right, title and interest in and to a certain mortgage executed by JERRY W. PARDUE, SR. AND LINDA PARDUE, husband and wife, to MIDWEST MORTGAGE FINANCE, LLC on August 20, 1997, on the real estate therein described, situate in the County of Hendricks and State of Indiana, to secure the payment of one principal note of even date for the sum of Eighty Nine Thousand Six Hundred Dollars and 00/100 ($89,600.00) which said note has been sold and assigned, without recourse, to said Assignee for the consideration above named. Said mortgage having been recorded in Recorder's File No. 97000177431, Volume 23, Page 93 in the Recorder's office of the County of Hendricks and State of INDIANA on August 26, 1997.

IN WITNESS WHEREOF, the assignor has executed these presents August __17__, 2010

Attest:

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS

_____
Greta Waldsmith        Witness

By: _____
    **Barbara Collins**

_____
Julie Scott           Witness

Its: **Assistant Secretary**

Pardue/ADM
MIN.
MERS PHONE: 1-888-679-6377

## ACKNOWLEDGMENT

State of California
County of Humboldt

On August 17, 2010, before me Cindy A. Clark, Notary Public, personally appeared Barbara Collins, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person or the entity upon behalf of which the person acted executed the instrument.

WITNESS my hand and official seal.

Signature: _Cindy A. Clark_

Cindy A. Clark, Notary Public

> CINDY A. CLARK
> Commission # 1863536
> Notary Public - California
> Humboldt County
> My Comm. Expires Sep 30, 2013

This instrument prepared by: SN Servicing Corporation, 323 Fifth Street, Eureka, California, 95501

Pardue/AOM
MIN: 10
MERS PHONE: 1-888-679-6377

# EXHIBIT "D"

B8 (Form 8) (12/08)                                                                                    Page 3

| Property No. 5 | |
| --- | --- |
| **Creditor's Name:**<br>**Wachovia Bank/SN Servicing** | **Describe Property Securing Debt:**<br>**517 North Gibbs Street, Plainfield, IN 46168**<br>**Held as Tenants in Entirety**<br>**1,800 Square Feet, 3 Bedrooms, 1.5 Baths.**<br>**Purchased in 1986 for $120,000.00** |

Property will be (check one):
   ■ Surrendered            ☐ Retained

If retaining the property, I intend to (check at least one):
   ☐ Redeem the property
   ☐ Reaffirm the debt
   ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
   ☐ Claimed as Exempt           ■ Not claimed as exempt

**PART B** - Personal property subject to unexpired leases. (All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)

| Property No. 1 | | |
| --- | --- | --- |
| **Lessor's Name:**<br>**-NONE-** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ YES      ☐ NO |

**I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.**

Date  **January 7, 2011**        Signature  **/s/ Jerry Wayne Pardue, Sr.**
                                           **Jerry Wayne Pardue, Sr.**
                                           Debtor

Date  **January 7, 2011**        Signature  **/s/ Linda Joy Pardue**
                                             **Linda Joy Pardue**
                                           Joint Debtor

Exhibit D