**Hearing Date: September 19, 2012 at 10:00 a.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Anthony Princi
Darryl P. Rains
Jamie Levitt

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------------- ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ----------------------------------------------- ) | | |

**NOTICE OF HEARING ON DEBTOR'S MOTION PURSUANT TO**
**FED. R. BANKR. P. 9019 FOR APPROVAL OF THE RMBS TRUST SETTLEMENT**
**AGREEMENT [DOCKET # 320] AND DEBTOR'S SUPPLEMENTAL MOTION**
**PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF**
<u>**THE RMBS TRUST SETTLEMENT AGREEMENT [DOCKET # 1176]**</u>

**PLEASE TAKE NOTICE** that, on September 18, 2012, Debtors and Debtors in

Possession (the "<u>Debtors</u>") filed the *Debtors' Status Report Regarding Discovery Related to*

*Their Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Settlement*

*Agreements [Docket Nos. 320, 1176]*.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held before

the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States Bankruptcy

Court for the Southern District of New York, Courtroom 501, One Bowling Green, New York,

1

New York 10004 (the "Bankruptcy Court") on **September 19, 2012 at 10:00 a.m. (prevailing**

**Eastern Time)**, or as soon thereafter as counsel may be heard.

Dated:  September 18, 2012
       New York, New York

/s/ Gary S. Lee
Gary S. Lee
Anthony Princi
Darryl P. Rains
Jamie Levitt
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Anthony Princi
Darryl P. Rains
Jamie Levitt

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— )
                                                            )
In re:                                                   )        Case No. 12-12020 (MG)
                                                            )
RESIDENTIAL CAPITAL, LLC, et al.,    )        Chapter 11
                                                            )
                            Debtors.           )        Jointly Administered
———————————————————————— )

**DEBTORS' STATUS REPORT REGARDING DISCOVERY RELATED TO THEIR
MOTION PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF THE RMBS
TRUST SETTLEMENT AGREEMENTS [DOCKET Nos. 320, 1176]**

Residential Capital, LLC ("ResCap LLC") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this status report regarding discovery related to the *Debtor's Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements* (as amended, the "RMBS Trust Settlement Agreements") [Docket No. 320] and *Debtor's Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements* [Docket No. 1176] (collectively, the "9019 Motion").

## INTRODUCTION

1.      The Debtors' 9019 Motion was filed over three months ago on June 14, 2012.  On July 27, 2012, the Official Committee of Unsecured Creditors (the "Committee"), the institutional investors who are parties to the RMBS Trust Settlement Agreement (the "Institutional Investors"), the trustees to the trusts that are the subject of the RMBS Trust Settlement Agreement (the "Trustees") and the Debtors stipulated to entry of *Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (II) the RMBS Trustees' Limited Objection to the Sale Motion* [Docket No. 945] (the "Scheduling Order").  Additionally, MBIA Insurance Corp. ("MBIA") attended all negotiations of the Scheduling Order and did not object or voice any disapproval.  The Court entered the Scheduling Order on July 31, and it set the hearing on the motion for November 5.  This schedule – agreed to by the Committee, the Trustees, the Institutional Investors, and the Debtors – allows nearly five months for discovery, expert analysis, and pre-hearing preparation between the filing of the original motion and the hearing.

ny-1058258

2.      The Debtors have, in connection with their 9019 Motion, received six formal document requests, five sets of interrogatories, two deposition notices, and numerous informal requests for documents and information.  Most of these requests were not received until late August – more than two months after the original motion was filed, and nearly four weeks after the Scheduling Order was entered.  Several of the requests were not received until last Friday.

3.      The Debtors have responded to all of the document requests, interrogatories, and informal requests for documents and information (except for the requests received last Friday, to which responses are not yet due).  The Debtors have produced more than 500,000 pages of documents, all on an expedited basis, and have also made available millions of pages of loan level, trust-related information through the Debtors' Vision website.  The Debtors have also answered well over 100 separate interrogatories.

4.      The Debtors have also made extraordinary efforts to reach agreement with the various parties seeking discovery.  The Debtors have continued a constant dialogue with the Committee and other parties since the filing of the 9019 Motion.  Since last week's hearing, the Debtors have held intensive meet-and-confer sessions with each party and have sent and received numerous telephone calls, letters, and emails.  The Debtors' efforts culminated in an "all-hands" face-to-face meet-and-confer session last Friday.  Each party that attended (the Committee alone declined to attend) was able to raise any issues and get answers to its questions.

5.      As a result of these efforts, the Debtors are able to represent to the Court that they are not aware of any outstanding discovery issue requiring intervention by the Court, except as follows:

- *Alter Ego, Substantive Consolidation, and "HoldCo Election"*
*Documents*.  The Committee and the ad hoc group of senior unsecured noteholders of
ResCap LLC (the "SUNs"), whose interests are now being pursued by Wilmington Trust
as indenture trustee for such notes (and perhaps other parties), seek to conduct
comprehensive discovery regarding potential alter ego claims against ResCap LLC, the
holding company.  As a related matter, they also seek discovery regarding the so-called
"HoldCo Election," even though the Debtors have informed all parties that this provision
has been removed from the RMBS Trust Settlement Agreement.  With the removal of the
HoldCo Election, the issue of alter ego has no relation to the pending 9019 Motion.
Under the Second Amended RMBS Trust Settlement Agreement, which the Debtors
expect to finalize and execute soon, ResCap LLC will not receive a release, and any party
that chooses to do so will be allowed to file a proof of claim against ResCap LLC.
Correspondingly, any party who disagrees with any such proof of claim (including the
SUNs) may file an objection thereto.  The appropriate time for discovery regarding the
advancement of any such alter ego theory will be if and when those claims are filed, not
now.  Alter ego discovery should not be allowed to derail the 9019 Motion approval
process or the upcoming sale of ResCap's operating businesses.

- *Depositions Concerning the Negotiation of the RMBS Trust*
*Settlement*.  The Committee and the SUNs (and perhaps other parties) seek to conduct
extensive discovery into the process by which the RBMS Settlement Agreement was
negotiated.  The Debtors have, without waiving their objections, agreed to produce
communications between the Debtors (and Debtors' counsel) and the other parties
involved in the negotiating process.  But the Committee and the SUNs say that is not

4

enough.  They insist that those who negotiated the settlement – a group comprised almost

exclusively of the Debtors' in-house and retained attorneys – must also submit to

depositions.  The Debtors contend that such depositions are irrelevant to the merits of the

RMBS Trust Settlement, and are largely prohibited in the Second Circuit.

6.       More generally, several parties bemoan the short amount of time left

before the close of discovery under the stipulated Scheduling Order, and have indicated an

intention to seek to change the schedule they previously agreed to.  In support of their plans,

these parties will attempt to fault the Debtors for any alleged delays in discovery.  However, as

this report will demonstrate, most of the complaining parties did not initiate any discovery efforts

in June, when the motion was filed.  Further, most parties did not even begin to seek discovery

until the last week of July, when the Court entered the stipulated Scheduling Order.  Fully aware

of the Scheduling Order, these same parties have exponentially increased their discovery

demands during the last week of August.  It is clear that such delays cannot be ascribed to the

Debtors.  Moreover, looking at these demands in light of the Scheduling Order, it becomes clear

that the Debtors could not have done anything to please any party whose goal is to delay the

proceedings.  Such a party will devise discovery disputes and allegations of delay regardless of

the Debtors' efforts to fill all discovery demands.

7.       For example, the Committee made clear in its recently filed pleading

regarding this matter[1] that – separate from any issue having to do with discovery or its review of

the merits of the proposed $8.7 billion allowed claim – it intends to adjourn this Court's

evidentiary hearing on the 9019 Motion until after the filing of a plan and disclosure statement.

Specifically:

---

[1] See *Response of Official Committee of Unsecured Creditors to Debtors' September 7, 2012 Status Report
Regarding Their Initial and Supplemental Motions for Approval of RMBS Trust Settlement Agreement* (the
"Committee Response").

ny-1058258

The Committee believes that the Court and the parties would benefit from a deferral of consideration of the RMBS Trust Settlement until after the filing of a plan and disclosure statement that take into account the Examiner's findings and conclusions.

Apart from the discovery and HoldCo Election issues discussed above, the Committee has additional concerns about the Rule 9019 Motion, which it will explain in greater detail at the September 11, 2012 status conference. Based on its work over the past several months, the Committee has come to understand that this motion has complex and far-reaching implications beyond those that are immediately apparent. The motion should not be decided on the basis of a hasty and incomplete record, nor should it be decided in a vacuum, divorced from the broader considerations that the Examiner is investigating and that the parties will need to address in the context of a chapter 11 plan.

Committee Response at ¶¶ 7 and 11.

8.        For its part, MBIA has already made its decision to object to the 9010 Motion. Indeed, based on the extensive discovery that it conducted in its suit against the Debtor over a three year period,[2] on July 23, 2012, MBIA sent letters to the Trustees instructing them not to even consider the proposal in the RMBS Trust Settlement Agreement, demanding specifically as follows:[3]

We hereby instruct you to not consider or accept any settlement or compromise offers relating to any claims that may belong to the above-referenced Trusts, including, but not limited to the RMBS Trust Settlement Agreement, dated as of May 13, 2012 (the "Settlement Agreement"), by and between Residential Capital, LLC and its direct and indirect subsidiaries and the Institutional Investors (as defined in the Settlement Agreement).

As such, it is [MBIA's] position that it would not be reasonable for you to incur any costs or expenses in evaluating any such settlement or compromise offers....

See MBIA letter attached hereto as Exhibit A.

---

[2] Since 2010, the Debtors produced over a million pages of documents and a terabyte of data to MBIA, and MBIA conducted over 90 days of fact depositions.

[3] In additional to MBIA, the other monoline insurance company that is a member of the Committee, FGIC, also sent a similar letter to the Trustees instructing them not to accept the RMBS Trust Settlement. Given that the three Trustees that are members of the 9 member Committee have recused themselves from the Committee's decisions regarding these matters, MBIA, FGIC and Wilmington Trust (on behalf of the SUNs) have 50% of the voting power on the committee on these matters.

9.      Similarly, the SUNs last week informed the Debtors that, notwithstanding the removal of the HoldCo Election, they will continue to seek to conduct alter ego discovery and correspondingly press for an adjournment of the hearing on the 9010 Motion.

10.      The Debtors respectfully submit that the discovery that is relevant to the Debtors' 9019 Motion has been provided, or will be provided in substantial compliance with the Court's Scheduling Order.  The parties agreed to the Scheduling Order because of the need to resolve claims arising from RMBS litigation before the sale of the Debtors' operating businesses, and because of the beneficial substantive terms related thereto that are included in the integrated Scheduling Order.  The adjournment sought by the Committee, the SUNs, and MBIA, among others, puts these important benefits at risk, and the discovery disputes before the Court concern matters that are irrelevant to approval of the RMBS Trust Settlement.

## STATUS OF DISCOVERY REQUESTS AND RESPONSES

11.      Since the Debtors' motion was filed on June 14, the Debtors have received six formal document requests, five sets of interrogatories, two deposition notices, and numerous informal requests for documents and information.  The informal and formal document requests sought, in the aggregate, hundreds of separate categories of documents.  The Debtors have provided responses to all these document requests (except for those received last Friday) and have, in response, produced approximately 500,000 pages of documents (in addition to the millions of pages made available on the Debtors' Vision website).  The interrogatories sought over a hundred separate requests for information, and the Debtors have responded to all these interrogatories (except those received last Friday).

12.      The following chart shows the requests received and the responses provided:

ny-1058258

| Request Date | Requesting Party | Description | Response Dates |
|---|---|---|---|
| 6/14/12 | MBIA | MBIA's First Request for the Production of Documents requesting 33 categories of documents | Debtors' response tolled by agreement of July 6, 2012.<br><br>Production began on July 9, 2012. |
| 6/19/12 | Committee | Informal request for access to Debtors' Vision website | Access granted to Committee's counsel on the same day, June 19, 2012. |
| 6/27/12 | Committee | Informal telephone conference where Committee informed the Debtors that the Committee would retain an expert by July 9, 2012, to analyze the 9019 Motion and requested the production of documents relevant to the 9019 Motion | Requested materials produced on July 9, 2012. |
| 7/6/12 | Committee | Request for phone conference with Debtors' expert, Frank Sillman | The Debtors provided Sillman for a phone conference on July 13, 2012. |
| 7/13/12 | Committee | Request for an additional phone conference with Frank Sillman, for which the UCC would provide written inquiries | The Debtors provided Sillman for a phone conference on July 17, 2012. |
| 7/13/12 | FGIC | FGIC's First Request for the Production of Documents requesting 59 categories of documents | Debtors' response tolled by letter agreement of July 19, 2012.<br><br>Production of the agreed-upon categories of documents was completed on August 9, 2012.<br><br>The Debtors formally responded on September 14, 2012. |
| 7/18/12 | FGIC | 10 Interrogatories | Debtors' response tolled by letter agreement of July 19, 2012.<br><br>The Debtors formally responded on September 14, 2012. |
| 7/25 | SUNs | Informal "Diligence Questions" requesting 56 categories of documents | Production of the requested documents had been underway since August 22, 2012. |

8

| Request Date | Requesting Party | Description | Response Dates |
|---|---|---|---|
| 7/28/12 | Committee | The Committee's informal "Initial Diligence List" requesting 38 categories of documents | Debtors provided a written response on August 2, 2012.<br><br>Debtors provided an updated written response on August 9, 2012.<br><br>Substantially all documents requested by the Committee were produced by August 13, 2012. |
| 8/2/12 | Committee | Informal requests made at meet and confer for (1) RMBS-related pleadings studied by the Debtors, (2) a meeting with FTI Consulting ("FTI") regarding the Debtors' bankruptcy waterfall, and (3) a presentation by Debtors' RMBS litigation counsel Carpenter Lipps & Leland | These documents were produced on August 7, 2012.<br><br>FTI meeting was held on August 16, 2012.<br><br>PLS Litigation presentation held on August 21, 2012. |
| 8/16/12 | Committee | Informal request for tolling agreements between Debtors and potential claimants | These documents were produced on August 20, 27, and September 5, 2012. |
| 8/17/12 (17 days after entry of Sched. Order) | Committee | List of 1500 loan files | The Debtors made their first production of 924 loan files on September 1, 2012. By September 11, 2012, 1462 loan files have been produced. |
| 8/25/12 | Committee | 13 Interrogatories | The Debtors formally responded on September 14, 2012. |
| 8/25/12 | Committee | The Committee's First Request to Debtors for the Production of Documents requesting 18 categories of documents | The Debtors had been producing documents responsive to these requests since July 9, 2012.<br><br>The Debtors formally responded on September 14, 2012. |

9

| Request Date | Requesting Party | Description | Response Dates |
|---|---|---|---|
| 8/28/12 | Committee | Email request for documents and access for experts to Vision website | Access to Vision for the Committee's experts was provided in response to this request on August 29, 2012.<br><br>By letter of September 5, 2012, the Debtors informed the Committee that all requested documents were already in the Committee's possession. |
| 8/28/12 | Committee | Email request for "mortgage schedules" for the 392 Settlement Trusts | By letter of September 5, 2012, the Debtors informed the Committee that all requested documents were already in the Committee's possession or were publicly available |
| 8/30/12 | SUNs | 24 Interrogatories | The Debtors formally responded on September 14, 2012. |
| 8/30/12 | SUNs | SUNs' First Request to Debtors for the Production of Documents requesting 131 categories of documents | Production of the requested documents had been underway since August 22, 2012.<br><br>The Debtors formally responded on September 14, 2012. |
| 8/30/12 | FGIC | Letter requesting 14 categories of documents | The Debtors produced documents responsive to this request by September 14, 2012. |
| 8/31/12 | MBIA | 15 Interrogatories | The Debtors responded on September 12, 2012. |
| 8/31/12 | MBIA | Second Request for the Production of Documents requesting 17 categories of documents | Production of documents responsive to these requests had been underway since July 9, 2012.<br><br>The Debtors formally responded on September 14, 2012. |

10

| Request Date | Requesting Party | Description | Response Dates |
|---|---|---|---|
| 9/6/12 | Committee | Informal request for 3,177 complete addresses for loan files | The Debtors produced addresses for approximately 3100 of these loans on September 13, 2012, and supplemented this production on September 17, 2012.<br><br>The remaining loans could not be located from the list provided by the Committee. |
| 9/12/12 | Trustees | Second Request for the Production of Documents requesting 60 categories of documents | Documents responsive to these requests were produced on September 1, 2012. |
| 9/14/12 | JSBs | Notice of Deposition of Debtors Pursuant to Fed. R. Civ. P. 30(B)(6) | The Debtors have not formally responded. |
| 9/14/12 | Committee | 2 Interrogatories | Documents responsive to these interrogatories were produced on September 6, 2012.<br><br>The Debtors have not formally responded. |
| 9/14/12 | Committee | Second Request for the Production of Documents requesting 8 categories of documents | The Debtors have not formally responded. |
| 9/14/12 | Committee | Notice of Deposition of Debtors Pursuant to Fed. R. Civ. P. 30(B)(6) | The Debtors have not formally responded. |

## STATUS OF DOCUMENT PRODUCTIONS

13.    The documents and information provided by the Debtors cover all of the

information relevant to the Debtors' 9019 Motion and then some.  The Debtors have made a

comprehensive production of electronically stored loan information, a representative sample of

actual hard-copy loan files, all of the documents and material provided to the Debtors' experts,

all of the documents and analyses produced by those experts, and virtually all of the non-

privileged documents concerning the negotiation and drafting of the RMBS Trust Settlement

11

Agreements.  And the Debtors have produced these documents even though they are not required

by law and do not bear on the case question of whether the proposed $8.7 billion allowed claim

in the RMBS Trust Settlement is fair.

14.    *Electronically-Stored Trust Information*.  The Debtors have produced the

equivalent of millions pages of trust level information for the 392 trusts at issue in the litigation.

The production included granting the parties access to the Vision website, which contains

extensive, loan-level information including:

- Shelf structure and types of loans in each shelf for each trust;

- Prospectus, pooling and servicing agreement, indenture, servicing

  agreement, and purchase agreement for each securitization;

- Representations and warranties for each transaction;

- Monthly distribution statements for each trust, including collateral

  losses and performance;

- Loan tapes for each trust; and

- Underwriting guidelines for Residential Funding Company and

  GMAC Mortgage Corporation.

15.    *1,500 Sample Hard-Copy Loan Files*.  The Debtors have produced 1,463

complete hard-copy loan files to all requesting parties and their experts (for technical reasons,

the remaining 37 files are not immediately available, and the Debtors have asked the parties

either to designate replacement loans or to consider this sample sufficient).  These files largely

contain the same information as was produced previously in electronic format.

16.    At last week's hearing, several parties argued that the Debtors "delayed"

producing these files, and that this supposed "delay" justifies continuing the November 5

12

ny-1058258

hearing. But the Committee "delayed" more than two months before even asking for the files

and no one mentioned hard-copy loan files at the time the Scheduling Order was negotiated. The

chronology is as follows:

- *July 3*. Debtors provide Committee with list of information to be put in 9019 data room on Intralinks. Hard copy loan files were not requested.

- *July 6*. Committee indicates that it hopes to perform a "top down" analysis, not a "bottom up" analysis, because of difficulties of obtaining and reviewing hard-copy loan files.

- *July 25 to 27*. Parties negotiate Scheduling Order. No party mentioned any need for hard-copy loan files.

- *July 28*. Committee sends the Debtors an "Initial Diligence List." The list does not include hard-copy loan files.

- *August 3*. Committee, for the first time, asks questions about the process of imaging and reviewing loan files. Debtors explained that loan file imaging and review is time-consuming and burdensome and not necessary. The Committee insists it will proceed with loan file review, and says it will send a list of sample loans during the week of August 6.

- *August 10*. Committee says it will not be able to provide the list of loan files.

- *August 17*. Committee finally provides a list of 1,500 loan files for review on Friday evening. Agrees that loan files may be produced on a rolling basis.

- *September 1*. Debtors complete the collection, imaging, and production of 924 loan files, along with accompanying pay histories and servicing notes.

- *September 11*. Debtors complete production of 1,463 loan files. Debtors ask the Committee to designate 37 substitute loan files or deem the production sufficient.

17.    The Debtors also note that other parties, including the Trustees, have

engaged experts to review the same loan files and have indicated they will be able to review the

files and analyze the RMBS Trust Settlement within the agreed-upon schedule.

13

18.    _Expert Materials and Analyses_.  The Debtors have provided all materials

provided to, or considered by, or produced by the Debtors' experts in relation to their 9019

Motion.  The documents include:

- A trust-by-trust loss analysis completed by the Debtors' expert;

- Intex deal-level data for the 392 trusts;

- Sample governing agreements;

- Sample 3-month and 12-month roll rate reports for securitization;

- All spreadsheets and calculations by the Debtors' expert; and

- All industry reports, declarations, and data reviewed by the Debtors' expert.

19.    _Settlement Communications and Draft Agreements_.  Several parties have

sought discovery into the settlement process, including all communications among counsel and

all drafts of the relevant settlement documents.  The Debtors have objected to the relevance and

appropriateness of discovery into settlement negotiations for purposes of determining the

fairness of the RMBS Trust Settlement.  The ultimate question before the Court, of course, is

whether, in light of the risks of litigation and possible favorable and unfavorable litigation

outcomes, the proposed $8.7 billion Total Allowed Claim falls within the "range of

reasonableness."  The daily back-and-forth among counsel will not shed light on this question.

20.    Notwithstanding (and without waiving) these objections, the Debtors have

agreed to produce emails and documents regarding the negotiation of the settlement.  As counsel

for the Debtors took the primary roles in the negotiation process, the Debtors initially collected

and produced the emails of its counsel.  At the meet-and-confer session on Friday, September 14,

the Debtors agreed to expand their search to include in-house lawyers and others at ResCap to

the extent they played any substantive role in the settlement process.  The emails and documents

14

from the key negotiators have already been produced; the small amount of remaining documents

and emails should be produced this week.  While the Debtors reiterate that such discovery is not

relevant to their 9019 Motion, the production of emails will also include relevant, non-privileged

emails between the Debtors, their attorneys at Morrison & Foerster LLP, Ally Financial Inc., and

the Institutional Investors.  The Debtors are withholding settlement communication documents

solely on the grounds of attorney-client privilege and attorney work product, for which the

Debtors will provide a privilege log.

        21.      The Debtors also point out that the requesting parties' position on

settlement negotiations discovery has changed over time.  Initially, MBIA and FGIC made

formal requests for settlement negotiations discovery.  When the Debtors objected, MBIA told

the Court that "[a]lthough MBIA and the Debtors have been unable to agree regarding the

production of certain other documents, MBIA does not believe it is necessary to bring those

matters before the Court at this time."  (Docket No. 705.)  The Committee did not request

settlement negotiations discovery until August 25, 2012.  Again, discovery relating to settlement

negotiations is not a valid basis for arguing that the Debtors are guilty of any delay.

<u>**DISPUTED ISSUES FOR DECISION BY THE COURT**</u>

**I.   ALTER EGO, SUBSTANTIVE CONSOLIDATION, AND "HOLDCO
ELECTION" DOCUMENTS SHOULD NOT BE PRODUCED AT THIS TIME.**

        22.      The Committee and the SUNs (and perhaps other parties) seek to conduct

extensive discovery regarding potential alter ego claims against ResCap LLC.  As a related

matter, they also seek discovery regarding the so-called "HoldCo Election," even though that

provision has been dropped from the RMBS Trust Settlement Agreements.

        23.      The Debtors contend that this discovery has no relation to the pending

9019 Motion.  In the RMBS Trust Settlement Agreements, as presently amended, ResCap LLC

15

will not receive a release, and any party that chooses to do so will be allowed to file a proof of claim against ResCap LLC.  There will be plenty of time for discovery regarding alter ego theories if, and when, those disputed claims are asserted.

24.    The Debtors thus propose that alter ego discovery be deferred until such time as any creditor submits a proof of claim against ResCap LLC.  Alter ego discovery should not be allowed to derail the 9019 Motion approval process or the upcoming sale of ResCap's operating businesses, which can and should go forward while all potential alter ego claims are preserved.

## II.  SETTLEMENT COMMUNICATIONS ARE NOT DISCOVERABLE AND ARE NOT RELEVANT TO THE DEBTORS' 9019 MOTION.

25.    During the meet and confer session held last Friday, several parties indicated that they intend to depose the people (most of whom are the Debtors' in-house and retained attorneys) who negotiated the RMBS Trust Settlement.  Although no party has yet made such a request, formally or otherwise, the Debtors have been informed by the Committee and MBIA that they intend to seek such depositions and that, because such depositions will be extensive, the November 5 hearing date needs to be substantially delayed.  Accordingly, the Debtors believe it is appropriate for the Court to rule on this matter now.

26.    Second Circuit authority provides that settlement communications are usually not discoverable.  In order to conduct discovery into settlement negotiations, the party seeking discovery must first demonstrate a compelling need, such as by offering evidence of collusion.  "Discovery with respect to a settlement agreement on an ongoing litigation, however, is permissible only where the moving party 'lays a foundation by adducing from independent sources of evidence that the settlement may be collusive.'" *Thornton v. Syracuse Sav. Bank*, 961

F.2d 1042, 1046 (2d Cir. 1992) (quoting *Mars Steel Corp. v. Continental Ill, Nat'l Bank and Trust Co. of Chicago*¸ 834 F.2d 677, 684 (7th Cir. 1987)).

     27.    No party has offered any evidence of collusion here.[4]  Accordingly, no additional discovery, and no depositions, should be allowed until a party lays such foundation and produces any evidence that the RMBS Trust Settlement is not a thoroughly-negotiated, arm's-length transaction.  Any position to the contrary – which includes the position taken by several parties that settlement negotiations are relevant to an assessment of the reasonableness of the RMBS Trust Settlement or to the $8.7 billion Total Allowed Claim – is highly speculative and not supported in fact.  Notwithstanding the inherent speculative nature of the discovery requests and position taken by various parties, the Debtors agreed to produce their relevant, non-privileged emails concerning the negotiation of the RMBS Trust Settlement with the Institutional Investors, Ally, and the Trustees.

     28.    In light of this production, any party seeking a deposition in connection with the negotiation of the RMBS Trust Settlement must come forward with evidence of collusion, evidence which the Debtors are confident does not exist.  Such depositions are additionally inappropriate in light of the fact that the RMBS Trust Settlement Agreement was primarily negotiated by attorneys.  While the Federal Rules do not prohibit depositions of lawyers, an abundance of binding and persuasive authority demonstrates that taking the depositions of opposing attorneys is "disfavored."  *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991) ("depositions of opposing counsel are disfavored"); *Alcon*

---

[4] Common business practices and realities belie any theory that the timing of the contemporaneous execution of the RMBS Trust Settlement Agreements and the Plan Support Agreement is *per se prima facie* evidence of collusion. There is nothing "suspicious" about this timing at all.  As is typical with the financial, legal, and practical complexities here at issue, the Debtors executed every major agreement relating to these cases within 48 hours of the Petition Date, including the Asset Purchase Agreement with Nationstar, the Barclays DIP Agreement, the RMBS Trust Settlement Agreements, and the AFI Settlement and Plan Sponsor Agreement.

ny-1058258

*Laboratories, Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002) ("the

deposition of an opposing counsel [is] strongly disfavored").  As a result, the deposition of a

lawyer should only be granted when the party seeking the discovery demonstrates that "no other

means exist to obtain the information it seeks other than to depose counsel, and that the

information sought is relevant, non-privileged and crucial to its case." *Alcon Laboratories, Inc.*,

225 F. Supp. 2d at 342.

            29.     The Debtors will complete the production of settlement-related emails and

documents this week.  The Debtors propose that no depositions concerning the negotiation of the

settlement be allowed at this time.  If any party can demonstrate, using the documents that are

being produced, compelling evidence of collusion, and can further demonstrate that "no other

means exists" for obtaining relevant evidence, then that party can make a motion for leave to

depose counsel.  The Debtors respectfully submit that no party could make such a showing.  But

such a showing is an essential prerequisite to noticing any attorney depositions.

            30.     Instead the Debtors propose that before any depositions are taken

regarding the settlement negotiations that the parties first review the documents that are being

produced regarding these negotiations for the purpose of determining whether there is anything

that corroborates the suppositions upon which their theory of collusion rests.  By first reviewing

such information before determining whether such depositions are necessary or appropriate, the

following benefits are achieved:

- The Debtors and the parties can continue to focus on the primary task at
  hand – namely, whether the $8.7 billion Total Allowed Claim is in the best
  interests of the estate.  Presumably, the parties' judgment on the
  appropriateness of these depositions will be significantly informed by their
  view on whether the proposed settlement is actually fair.

- If nothing from the Debtors' emails and related documents concerning the
  settlement negotiations supports the parties' collusion hypothesis, then

18

presumably the parties will reconsider their request for these depositions because (a) consistent with the absence of such a suggestion in the documents, the depositions will not elicit any evidence of any alleged collusion, and (b) from a cost/benefit perspective, taking all of these depositions would pose a tremendous burden on the Debtors and their professional advisors and an incurrence of significant administrative expenses for the estate, while at the same time providing no benefit.

- It would avoid the need now for the adjournment of the Court's November 5 hearing date on the 9019 Motion and the corresponding substantial risk that the estates would lose the substantive waivers by the trustees of their potential cure claims relating to the Nationstar sale.

31.    The above-described proposal does not (and will not) prejudice the parties in any way.  If upon their review of the settlement negotiations documents the parties believe they have identified a document that supports their collusion hypothesis, they can then bring such information to the Court's attention and ask for an adjournment based thereon. Alternatively, if the parties do not identify any such document, as is highly likely, then it would have greatly served the estate and its creditors by not having risked the substantial diminution to the net proceeds of the Nationstar sale available to the estates, and it would have avoided the needless incurrence of the significant administrative expenses that would have been further borne by this satellite litigation.

19

## CONCLUSION

The Debtors have worked diligently to comply with their discovery obligations and the

numerous information requests and to meet the deadlines set out in the Court's Scheduling

Order.  Through this process, the Debtors believe they have ensured the parties' ability to

complete all necessary discovery and pleadings in the required time frame.   Accordingly the

hearing scheduled for November 5 on the 9019 Motion for approval of the RMBS Trust

Settlement Agreement should commence as agreed to and as ordered by the Court.


New York, New York                          /s/ Gary S. Lee
Dated: September 18, 2012                 Gary S. Lee
                                          Anthony Princi
                                          Darryl P. Rains
                                          Jamie Levitt
                                          MORRISON & FOERSTER LLP
                                          1290 Avenue of the Americas
                                          New York, New York 10104
                                          Telephone: (212) 468-8000
                                          Facsimile: (212) 468-7900

                                          *Counsel to the Debtors and
                                          Debtors in Possession*