Hearing Date and Time: September 19, 2012 at 10:00 a.m. (ET)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip Bentley
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RESIDENTIAL CAPITAL, LLC, et al., | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

------------------------------------------------------------ x

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO DEBTORS' SEPTEMBER 18, 2012 STATUS REPORT REGARDING
DISCOVERY RELATED TO THEIR RULE 9019 MOTION FOR APPROVAL
OF THE PROPOSED RMBS TRUST SETTLEMENT AGREEMENT**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby files this response to the Status Report filed by the Debtors this afternoon in connection with tomorrow's conference concerning discovery related to the Debtors' Rule 9019 motion (the "Rule 9019 Motion") seeking approval of the proposed RMBS trust settlement agreement. The Committee respectfully states as follows:

1.  Once again, as they did on September 7, the Debtors have filed a lengthy and highly misleading Status Report shortly before a conference concerning their Rule 9019

Motion. Once again, while the Committee would prefer not to burden the Court with dueling filings on the eve of a conference, the Committee considers it necessary – and hopes it will be useful to the Court – to file this brief Response.[1]

2. We will not burden the Court with a detailed response to the many factual and legal inaccuracies contained in the Debtors' 20-page submission. We will be prepared to address these points, at whatever length the Court wishes, at tomorrow's conference. Instead, this Response – and the chart annexed as Exhibit A – provides a brief overview of the principal respects in which the Debtors and other parties have failed to comply with the Court's July 31, 2012 Scheduling Order [Docket 945] (the "Scheduling Order") – particularly paragraph 1 of that Order, which requires that all requested discovery be provided within 10 days.

3. The Court will recall that, at last week's status conference, it observed that "the November 5th hearing was premised on substantially complete discovery in accordance with the schedule that everyone agreed upon," and cautioned that "the November 5th date is hanging by a thread." *See* Sept. 11, 2011 Hearing Tr. at 17, 47. The Debtors responded that "[t]he [C]ommittee is incorrect at a fundamental level" in contending that discovery had not been timely supplied. *See id.* at 26-27. In fact, the tardiness of the discovery responses provided by the Debtors, and by the other principal parties to their proposed settlement, is substantial and beyond dispute.

4. The chart annexed as Exhibit A summarizes the current status of the Committee's discovery requests, and of the responses provided to date by the Debtors, Ally Financial, Inc. ("Ally") and counsel to the Investors. In short, the Debtors, Ally and the Gibbs & Bruns law firm each took far more than the required 10 days even to begin to produce documents

---

[1] The three RMBS Trustees that serve on the Committee—The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, and U.S. Bank National Association—have abstained from voting or commenting on this response.

- 2 -

concerning the RMBS settlement process; many documents still have not been produced; and it is far from clear when these productions will be completed. In addition, the parties have raised objections to significant portions of these discovery requests, which the Court will need to resolve. For example, the Gibbs & Bruns firm has advised the Committee that, unless directed by the Court, it will not produce documents reflecting the Investors' negotiations with the Debtors, Ally or other parties. The Debtors, for their part, have refused to produce documents concerning the alter ego issues raised by the HoldCo Election. In addition, we understand that, to date, the Debtors have not reviewed the emails of their business people, but only of their lawyers, and it is unclear when this further email review will be conducted. Finally, production of the loan files needed for the Committee's loan sampling and review process took far longer than the required 10 days, and these files were produced in a manner that has further slowed their review.

5.  Because of the parties' failure to respond in timely fashion to the Committee's discovery requests, it will not be possible to complete discovery or to meet other pre-trial deadlines within the highly compressed time frames provided by the Scheduling Order.[2]

---

[2] The Debtors seek to shift the blame for the timing difficulties to the Committee and other parties that have served discovery requests, contending that there would be no need for an adjournment had these requests been served earlier. This contention is highly misleading, as we will explain at tomorrow's conference. Among other things, the Debtors omit to mention that the Committee deferred serving its requests for discovery into the RMBS settlement negotiations for a reason that the Debtors themselves endorsed and continue to endorse. Specifically, the Committee proposed, in late June, that the most constructive approach to RMBS discovery would be a phased, or bifurcated, process – under which the Committee would first take discovery (ideally informal discovery) into the merits of the proposed RMBS settlement, and would defer its discovery into the settlement negotiation process until its review of the merits was more advanced, recognizing that discovery of the negotiations might prove unnecessary if the Committee concluded that the settlement was in the estates' best interests. Consistent with this approach, and recognizing the Debtors' strong opposition to discovery into settlement negotiations, the Committee deferred its service of discovery requests on this topic until late August.

We will address at tomorrow's conference the Debtors' contention that there is no need for depositions concerning the parties' negotiation, evaluation and approval of the RMBS settlement. Suffice it to say that this contention is difficult to square with the Second Circuit's teaching that a key factor in evaluating a proposed settlement for Rule 9019 purposes is "the extent to which the settlement is the product of arm's

- 3 -

Most obviously, that Order requires all fact discovery of the Debtors, including depositions, to be completed by next Monday, September 24.  The Committee expects that a significant number of depositions will be necessary concerning the negotiation, evaluation and approval of the RMBS settlement – but it will not be in a position even to identify the individuals it needs to depose, let alone to schedule and prepare for those depositions, until it has received the relevant emails and other documents, many of which still have not been produced.  Similarly, due to the Debtors' delays in furnishing the requested loan files and related documents, as well as the condition in which these documents were produced, the Committee's experts will not be in a position to complete their analyses or to file comprehensive expert reports by the October 8 deadline.  Significant extensions of these deadlines, and of the subsequent Scheduling Order dates that are tied to these deadlines, will be needed.

6.    It bears note that the so-called "HoldCo Election" provides substantial additional reason to reconsider the November 5 hearing schedule.  As they did in their September 7 Status Report, the Debtors assure the Court that the HoldCo Election – which radically alters the RMBS settlement by raising issues such as alter ego claims against ResCap LLC, substantive consolidation, and the allocation of the proceeds of the potential Ally settlement – is about to be withdrawn.  However, this promised withdrawal still has not occurred.  Equally important, the Committee understands that the new set of RMBS settlement amendments that the Debtors hope to file will not only withdraw the HoldCo Election; it will also make *new* substantive changes to the RMBS settlement, which will raise new and fundamentally important issues relating to the terms of a potential chapter 11 plan – issues that cannot possibly be evaluated by the parties and the Court consistent with the November 5 hearing schedule.

---

length bargaining."  *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (internal citations omitted).

7. Finally, the Debtors' suggestion that an adjournment of the November 5 hearing might interfere with the asset sale hearings currently scheduled for November 19, 2012 is entirely without basis. The Scheduling Order protects the sale process, while at the same time fully preserving the Trustees' rights, regardless of when the Court hears the Rule 9019 Motion. As protection for allowing the sale to proceed, the Scheduling Order preserves the Trustees' rights to assert cure claims in the absence of a satisfactory settlement, by providing that any allowed cure claims (up to an agreed cap) will attach to the sale proceeds. This agreement to protect the sale process by deferring any cure claim litigation benefits all parties – particularly the Trustees and the certificate holders, who will be the principal beneficiaries of the sale. A reasonable extension of the timetable to consider the proposed settlement will not change this equation. Nor would the Trustees have any basis to complain of an adjournment of the November 5 hearing schedule, given that the schedule has always been subject to the Court's inherent power to control its docket and, in any event, was set on the basis of expedited discovery provisions that have not been honored.

Dated: New York, New York
September 18, 2012

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Philip Bentley
Kenneth H. Eckstein
Philip Bentley
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee
of Unsecured Creditors*

# EXHIBIT A

## Status of Discovery

## STATUS OF DISCOVERY

| | **DEBTORS** | | |
|---|---|---|---|
| | **COMMITTEE'S REQUEST** | **RESPONSES/OBJECTIONS** | **DELINQUENCY** |
| **Document Requests Concerning RMBS Settlement Process** | On August 25, the Committee served Debtors with Document Requests concerning the alleged arms-length nature of the Debtors' proposed RMBS Settlement, including documents reflecting the Debtors' evaluation, negotiation and approval of the settlement. | On September 14, the Debtors produced 1,232 documents in a non-searchable/non-OCR format, and indicated that they would make additional productions on a "rolling" basis.<br><br>On September 17, the Debtors reproduced the same 1,232 documents in a searchable OCR format. | Responsive documents concerning settlement process were produced **20 days** after the Committees' request, and many documents remain outstanding. |
| **Interrogatories Concerning RMBS Settlement Process** | On August 25, the Committee served Interrogatories seeking the names of potential witnesses with knowledge bearing on the Debtors' evaluation, negotiation and approval of the proposed RMBS settlement. | On September 14, the Debtors submitted incomplete responses to the Interrogatories. | Interrogatory Responses were produced **20 days** after requested, but remain incomplete. |
| **Document Requests Concerning HoldCo Election** | On August 25, the Committee served Debtors with Document Requests concerning the HoldCo Election, including requests for documents concerning alter ego claims and analyses of substantive consolidation. | The Debtors have not yet produced documents concerning the HoldCo Election, and have refused to produce documents concerning alter ego. | Responsive documents have not yet been produced. |
| **Privilege Log** | The Committee's August 25 Document Requests requested a log identifying documents the Debtors intend to withhold on privilege grounds. | | The Debtors have not yet produced a privilege log and have not indicated when they will do so. |

| | | | |
|---|---|---|---|
| **Loan Files** | On August 17, the Committee selected a random sample of 1,500 loans and requested that the Debtors produce the underlying loan files. | The Debtor produced 924 loan files on September 4, an additional 538 loan files on September 12, and still more loan files on September 17. | 924 loan files were produced **18 days** after the Committee's request, an additional 538 loan files **26 days** after the request, and further loan files **31 days** after the request. |
| **ALLY** | | | |
| | **COMMITTEE'S REQUEST** | **RESPONSES/OBJECTIONS** | **DELINQUENCY** |
| **Document Requests Concerning Settlement Process** | On August 29, the Committee subpoenaed Ally to produce documents concerning its role in the negotiation of the RMBS Settlement. | To date, Ally has produced no responsive documents other than board minutes. Ally asserts that some of the documents previously produced to the Examiner are responsive to the Committee's subpoena, but those documents include no Ally communications with other parties concerning the RMBS settlement negotiations. Ally has represented that it will produce emails and other communications concerning the negotiations by September 24. | The Committee has still not received the settlement communications. As of the filing of this submission, the settlement communications are **20 days** after requested. |
| **Privilege Log** | The Committees' August 29 Document Requests requested a log identifying documents Ally intends to withhold on privilege grounds. | | Ally has not yet produced a privilege log and has not indicated when it will do so. |

| GIBBS & BRUNS | | | |
|---|---|---|---|
| | **COMMITTEE'S REQUEST** | **RESPONSES/OBJECTIONS** | **DELINQUENCY** |
| **Document Requests Concerning Settlement Communications** | On August 27, the Committee served Gibbs & Bruns with a subpoena to produce documents concerning the alleged arms-length nature of the Debtors' proposed RMBS Settlement. | Gibbs & Bruns has taken the position that the settlement communications are not relevant, and therefore they have neither produced the settlement communications nor a privilege log. While Gibbs & Bruns produced 239 pages, 57 pages of these were almost entirely redacted and 107 pages were printouts of documents that had previously been filed on the docket. | Gibbs & Bruns has not yet produced any settlement communications, which as of the filing of this submission are **22 days** after requested. |
| **Common Interest Privilege with the Trustees** | The Committee's August 27 subpoena also requested the Investors' communications with the RMBS Trustees. | Gibbs & Bruns has withheld communications with the Trustees purportedly on the grounds of common interest. | |
| TALCOTT FRANKLIN, P.C. | | | |
| | **COMMITTEE'S REQUEST** | **RESPONSES/OBJECTIONS** | **DELINQUENCY** |
| **Document Requests Concerning Settlement Communications** | On August 27, the Committee served Talcott Franklin with a subpoena to produce documents concerning the alleged arms-length nature of the Debtors' proposed RMBS Settlement. | On September 13, Talcott Franklin produced documents, but in a format that was not searchable. The Committee requested that Talcott Franklin provide the load data for these files, which was provided on September 14. Many of the files, however, remain non-searchable. | Document production was **17 days** after requested, some of which remains non-searchable. |