**Hearing Date: September 19, 2012 at 10:00 a.m. (ET)**

Gregory M. Petrick
Ingrid Bagby
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

-and-

Mark C. Ellenberg
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400

*Attorneys for MBIA Insurance Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
**In re:**                                                     :
:  **Chapter 11**
:
**RESIDENTIAL CAPITAL, LLC,** *et al.*,                        :
:  **Case No. 12-12020 (MG)**
:
:  **(Jointly Administered)**
**Debtors.**                                                   :
:
---------------------------------------------------------------x

**RESPONSE OF MBIA INSURANCE CORPORATION TO DEBTORS'**
**SEPTEMBER 18, 2012 STATUS REPORT REGARDING DISCOVERY**
**RELATED TO THEIR RULE 9019 MOTION FOR APPROVAL OF**
**THE RMBS TRUST SETTLEMENT AGREEMENTS**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

      MBIA Insurance Corporation ("**MBIA**"), an unsecured creditor of the debtors in the

above-captioned chapter 11 cases (the "**Debtors**") and a member of the Official Committee of

Unsecured Creditors (*the* "**Committee**")[1] respectfully submits this *Response to Debtors' September 18, 2012 Status Report Regarding Discovery Related To Their Rule 9019 Motion For Approval Of The RMBS Trust Settlement Agreements*.

As the financial guaranty insurer of eight securitizations covered by the proposed RMBS settlement [Docket No. 1176] (the "**RMBS Settlement**"), MBIA has a keen interest in understanding all of the potential implications of the settlement upon MBIA's claims. MBIA has diligently pursued discovery on the RMBS Settlement since its filing in order to completely evaluate its impact upon MBIA before coming to a final position on the RMBS Settlement. Nevertheless, in the Debtors' Status Report Regarding Discovery Related to Their Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements [Docket No. 1470] (the "***Debtors' Status Report***"), the Debtors mischaracterize MBIA's position on the settlement. As the party with the paramount economic interest at stake with respect to the trusts it has insured, MBIA intends to make a complete analysis of the settlement's impact on its trusts. Thus, MBIA's letter attached to the Debtors' Status Report as Exhibit A, was sent to ensure that the Trustees were notified that a duplicative analysis by them of the settlement's impact on MBIA-insured trusts was not necessary. Only upon completion of its analysis of the RMBS Settlement will MBIA determine whether to file a formal objection. It is with this backdrop that MBIA sets forth its view of the current status of discovery.

## SIGNIFICANT DISCOVERY ISSUES REMAIN UNRESOLVED

1. In anticipation of this Court's status conference on September 11, 2012, on September 10, 2012, MBIA filed a joinder to the Committee's response to the Debtors' status

---

[1] MBIA files this status report only on its own behalf, and not on behalf of the Committee or any of its other members.

2

report concerning discovery under the RMBS Settlement being conducted under this Court's scheduling order [Docket No. 945] (the "*Scheduling Order*"). MBIA respectfully refers the Court to that filing for its contents. Unfortunately, despite a meet and confer having taken place and some additional production having been made by the Debtors since the September 11th status conference, significant discovery issues remain unresolved, such that the current schedule is untenable. These issues include:

- The Debtors' delayed and incomplete document production. [2]

- The Debtors' failure to search or review any ResCap documents or emails – none of which have been produced to date.

- The Debtors' position that the individuals most responsible for negotiating the settlement may not be deposed.

- The Debtors' delay to produce any email "settlement communications" until the afternoon of September 14th, <u>after</u> the global meet and confer.

- The Debtors' wholesale assertion of privilege over various types of relevant documents, along with their failure to produce privilege logs.

## DEVELOPMENTS SINCE SEPTEMBER 11TH STATUS CONFERENCE

2. The Debtors responded to MBIA's interrogatories on September 12, 2012 – two days after they were due. In their response, the Debtors identified certain witnesses and

---

[2] The Debtors' contention that they have produced more than 500,000 pages of documents is misleading. Debtors' Status Report at ¶ 3. By MBIA's count, the Debtors have produced approximately 95,000 pages of documents relating to the RMBS Settlement (as indicated by the folder names on the Debtors' electronic data room). Of those, approximately 40,800 pages (43%) are underwriting/servicing guidelines; 29,183 pages (31%) are bankruptcy case documents; 5,800 pages (6%) are orders, filings, and pleadings from selected RMBS cases; and 5,718 pages (6%) are the transcripts and exhibits (partially redacted) from three depositions in <u>MBIA Ins. Corp. v. Residential Funding Co., LLC</u>, Index No. 603552/2008 (Sup. Ct. N.Y. Co.). That leaves only 13,500 pages (14%) of non-public information that is relevant to the RMBS Settlement.

dates relevant to certain topics, but otherwise responded simply by stating that the answer "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for MBIA as it is for the Debtors." Thus, the Debtors' complete responses to MBIA's interrogatories could only be ascertained after the Debtors substantially complete their production of documents.

3. Following the status conference, the Debtors requested that various parties attend a meet and confer on September 14, 2012, at the offices of Morrison & Foerster. MBIA attended this meeting, along with FGIC and the RMBS trustees, despite the fact that, as of the time of the meet and confer, the Debtors had not produced any additional discovery materials since the September 11th status conference. At the meeting, MBIA raised concerns that until the Debtors produced the requested documents and an accompanying privilege log, creditors such as MBIA could not identify, let alone resolve, discovery disputes. Thus, only then would the parties be able to address disputes concerning the contents of the production, the Debtors' assertion of privilege, and the individuals to be deposed. MBIA and the other creditors advised the Debtors that the continued delay in producing documents was making it impossible for creditors to review the documents, determine whether the production is complete, address any specific disputes, and prepare for depositions within the time frame set forth in the Scheduling Order. Although certain parties noted that the schedule was becoming increasingly untenable, the Debtors responded that while their productions are continuing, they were not willing to make any accommodations concerning the schedule.

4. At the meet and confer, the Debtors insisted that they would be responding to the creditors' discovery requests and producing responsive documents soon. Indeed, the

Debtors posted to their electronic data room written responses to the outstanding discovery requests that afternoon (three months to the day after MBIA had served its first document requests). For the first time in more than three weeks (with the exception of one intervening document), on the afternoon of September 14th the Debtors also produced additional documents, although, as the Debtors have acknowledged, their production is not yet complete and will continue on a rolling basis. The documents produced on Sept. 14th included the first emails that the Debtors had produced at all in this matter. However, the Debtors were unable to provide the creditors with a target date for completion of document production. In addition to the delays experienced with fact discovery, the Debtors also continue to produce materials relevant to expert testimony, thereby limiting severely the amount of time other parties' experts can analyze such materials.

5. MBIA began reviewing the additional documents produced by the Debtors immediately after they were posted to the electronic data room on September 14th. It soon became clear that the documents were not in a searchable format. The Debtors purportedly corrected the problem on the afternoon of September 17th by entirely removing the initial production and subsequently uploading new files. MBIA is currently awaiting the Debtors' continued production of additional responsive documents and, once complete, a privilege log.

6. Additionally, the documents produced on September 14th did not include any Excel spreadsheets regarding securitization data and the status of pending RMBS litigation, although many were referenced in the emails produced. Rather, the Debtors simply produced placeholder pages indicating that the spreadsheets would be produced in their native format. The Debtors also produced dozens of pages with the legend "Unprintable Document," with no explanation as to what documents were omitted and whether they will be produced elsewhere.

7. On the evening of September 17th and morning of September 18th, the Debtors posted a number of additional documents to the electronic data room, including RFC underwriting guidelines, servicer guidelines, and a limited production of ResCap board materials addressing the RMBS Settlement. It remains unclear why such relevant material, which presumably was within the Debtors' possession and control, was only produced on September 18th, more than three months after MBIA served its initial request for documents.

**THE SCOPE OF THE DEBTORS' DOCUMENT SEARCH IS WHOLLY INADEQUATE**

8. In connection with the Debtors' production of non-privileged settlement and deliberative documents, the Debtors disclosed for the first time at the September 14th meet and confer that they were searching the email records of only four Morrison & Foerster attorneys, who they claimed were principally responsible for the settlement negotiations – Melissa Beck, Gary Lee, Jamie Levitt, and Anthony Princi – and were conducting no searches of the Debtors' records.[3] The Debtors stated that they did not intend, and therefore had not begun, to review email records of any ResCap employees (not even the members of the Board of Directors who apparently approved the RMBS Settlement) for potentially responsive settlement and deliberative documents, including internal ResCap emails regarding the RMBS Settlement, as well as any email exchanges between ResCap and Ally representatives.

9. Several parties at the meet and confer, including MBIA, expressed concerns about this limited search. The Debtors ultimately agreed to look into the nature of any responsive internal ResCap emails and non-privileged emails of ResCap personnel with third

---

[3] The Debtors incorrectly assert that MBIA's position on the production of settlement communications "has changed over time" is flatly wrong. Debtors' Status Report at ¶21. MBIA has consistently sought these materials from the Debtors, as made clear in meet and confer phone calls on June 20th and August 31st. The fact that the issue was not previously raised before the Court when MBIA's request was under consideration by the Debtors is not a waiver of the request for such communications.

parties (including Ally and the investor groups), but contended that all of the relevant documents would be in the possession of the four Morrison & Foerster attorneys. The creditors requested that the Debtors review the emails of key ResCap personnel and either produce responsive documents or include withheld documents on the anticipated privilege log. The Debtors' failure to search their own files for potentially responsive documents necessarily excludes non-privileged communications among the Debtors' employees, communications between the Debtors and the settling parties, and communications between the Debtors and Ally.[4]

10.    Additionally, after having reviewed much of what the Debtors produced on Friday, it was obvious that the Debtors must expand the scope of their document search at Morrison & Foerster beyond the four attorneys mentioned above. The documents produced indicate that at least two other attorneys – James Newton and Daniel Clark – figured prominently in the negotiation and documentation of the RMBS Settlement, yet their emails have not been searched or produced. This needs to be rectified. Indeed, Mr. Newton was identified in the Debtors' responses to MBIA's interrogatories as one of the Morrison & Foerster attorneys principally involved in the settlement negotiations.

11.    Finally, to the best of MBIA's knowledge, the Debtors have never discussed with other parties the search terms and date ranges used by the Debtors to identify potentially responsive electronic documents. Absent such information, MBIA cannot be confident that the Debtors' search is properly formulated to identify most responsive documents.

---

[4] It should be noted that the limited number of documents produced by the Debtors on September 14th demonstrate that Ally Financial Inc., and its counsel at Kirkland & Ellis, were integrally involved in discussions concerning the RMBS Settlement. Additionally, based on limited documents produced by Gibbs & Bruns LLP to date, it appears that Morrison & Foerster attorneys were not copied on certain relevant correspondence. This suggests that there are other relevant emails and records outside of those currently being searched by the Debtors.

**POTENTIAL PRIVILEGE ISSUES**

12. While it is premature to consider any privilege disputes before document production has been completed and a privilege log provided, the Court should be aware that significant potential privilege issues may exist. The Debtors asserted at the September 14th meet and confer that any communications between the Debtors (including their respective boards of trustees) and outside counsel concerning the RMBS Settlement are privileged. However, MBIA does not believe such materials may be withheld on the basis of privilege if they formed part of the Debtors' decision-making process in evaluating the RMBS Settlement.[5] To the extent that the Debtors' Board of Directors intends to rely upon such advice to show that the RMBS Settlement is reasonable, proffered in good faith, and the result of arm's length bargaining, such material should be produced in discovery.[6] Unless the Debtors have reconsidered their position, MBIA believes Court guidance on the scope of such discovery may become necessary.

---

[5] Additionally, such communications may be discoverable pursuant to the fiduciary exception to attorney-client privilege. See e.g., Official Comm. of Asbestos Claimants of GI-Holding, Inc. v. Heyman, 342 B.R. 416 (S.D.N.Y. 2006) (holding that the Garner fiduciary exception applied to defeat the exercise of attorney-client privilege where creditors sought discovery from a chapter 11 debtor).

[6] Parties may not use the advice of counsel as both a sword and a shield. See e.g., In re Omnicom Group Inc. Securities Litigation, 233 F.R.D. 400, 413 (S.D.N.Y. 2006) ("[I]f a defendant invokes a good-faith defense purportedly based on his having consulted an attorney before engaging in the challenged conduct, invocation of that defense will be deemed to waive the privilege that would otherwise protect his conversations with his attorney on this topic."); Chesapeake Corp. v. Shore, 771 A.2d 293, 301 n.8 (Del. Ch. 2000), citing Transcript of Oral Argument at 505, Mentor Graphics Corp. v. Quickturn Design Sys., Inc., No. 16584 (Del. Ch. Oct. 23, 1998) (Jacobs, V.C.) ("Here the defendants' tactical decision to bar on privileg[e] grounds discovery into what the board was advised was their fiduciary duty and into the content of the board's deliberations will in turn preclude them from proving those deliberations at trial to defend their position that their decision was reasonable and made with due care."); American Re-Insurance Co. v. U.S. Fidelity & Guar. Co., 40 A.D.3d 486, 492 (1st Dep't 2007) ("where a party places legal advice or other privileged facts or communications at issue, it is deemed to have waived the privilege with respect to such facts or communications and can be compelled to produce them. This doctrine applies where a party, through its affirmative acts, places privileged material at issue and has selectively disclosed the advice … privilege is a shield and must not be used as a sword."). If the Debtors intend to rely upon any advice of counsel as evidence of their good faith and prudence in entering into the settlement, they should be deemed to have placed that advice at issue and therefore, will have waived any

8

## ATTORNEYS ARE NOT EXEMPT FROM DEPOSITIONS

13. At the meet and confer, the Debtors also took the position that the parties they identified as being principally responsible for negotiating the RMBS Trust Settlement – four Morrison & Foerster attorneys – would not be subject to depositions. The Debtors proffered the view that because attorneys had negotiated the settlement, the majority of their testimony would be privileged and thus, these lawyers could not be deposed. The Debtors' position on this, however, is contrary to the law. "[T]he fact that [a] proposed deponent is a lawyer does not automatically insulate him or her from a deposition . . . ." In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003); 305-7 W. 128th St. Corp. v. Gold, 178 A.D.2d 251, 251 (1st Dep't 1991) ("Nor does the attorney-client privilege bar discovery, since it is well settled that an attorney who functions as an agent or negotiator in a commercial venture may be examined"). Courts in the Second Circuit consider a number of factors in allowing attorney depositions, including the attorney's role in the matter on which discovery is sought.[7] Here, by the Debtors' own admission, the main parties responsible for the settlement were lawyers, thus their testimony is critical and, apparently, cannot be replicated through other non-attorney witnesses. Moreover, as the attorneys were acting in a business capacity, their communications are not privileged. See Safety Management Sys. v. Safety Software Ltd., 2011 WL 4898085 at *2 (S.D.N.Y. 2011) ("if the lawyer is serving as a business representative of his client, those functions he performs purely in that capacity – such as negotiation of the provisions of a business contract or relationship – are not the source of a privilege"). Such attorneys therefore, should be

---

claim to privilege on the advice. See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 486 (3d Cir. 1995); In re von Bulow, 828 F.2d 94, 101 (2d Cir. 1987).

[7] In making the determination, courts should consider several factors, including: 1) the need to depose the lawyer; 2) the lawyer's role in connection with the matter on which discovery is sought; 3) the risk of encountering privilege or work product issues; and, 4) the extent of discovery already conducted. Friedman, 350 F.3d at 72; Resqnet.com, Inc. v. Lansa, Inc., 2004 WL 1627170 at *3 (S.D.N.Y. 2004).

subject to depositions. However, given the Debtors' position and the limited time remaining for discovery under the Court's scheduling order, Court intervention may be needed on this issue.[8]

**GIVEN THE DELAYS TO DATE, THE CURRENT SCHEDULE IS NOT FEASIBLE**

14. As discussed above, the Debtors' responses to discovery requests and production of documents have been consistently late. Moreover, it remains unclear when the current document production will be complete, how long it will take for the Debtors to review ResCap's email system for responsive documents (as that review apparently has not yet started), when the Debtors will provide creditors with a privilege log,[9] when depositions will occur, and what disputes may arise with respect to the foregoing.

15. With only six days remaining for fact discovery under the Court's scheduling order, the parties are not in a position to identify witnesses for possible depositions, given that the Debtors' document production is not yet complete. Furthermore, the delays by the Debtors since discovery commenced cannot now be cured even if the Debtors produce all responsive materials in the next six days. The parties still will not have sufficient time to review

---

[8] The Debtors now appear to take the position that no depositions should be permitted until parties put forth some basis on which to assert that the settlement was not "thoroughly negotiated." Report at ¶ 27. Putting aside whether that can be demonstrated on the documents produced to date, such a proposal turns the discovery rules and the requirements for Rule 9019 settlement approval on their head. As the proponents of the settlement, the Debtors have the burden to show that the settlement is the product of arm's length bargaining. See Iridium Operating LLC, 478 F.3d 452, 462 (2d Cir. 2007). Parties have the right to seek discovery that will lead to admissible evidence on this issue. Fed. R. Civ. P. 26(b)(1). This includes deposition testimony of those that participated in the alleged "arm's length bargaining." Otherwise, the Debtors will be allowed to hide behind a false assertion of privilege.

[9] The Debtors have not produced a privilege log to date, despite repeated requests from MBIA. If the Debtors fail to provide a privilege log in a timely manner, the asserted privilege may be deemed waived. See e.g., In re Chevron Corp., 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010).

those materials, resolve any issues in dispute, review issues arising from any privilege log, conduct depositions, and obtain comprehensive expert reports.[10]

16. For all of the reasons stated herein, MBIA continues to share the Committee's view that the November 5, 2012, hearing date for the RMBS Settlement, which this Court previously acknowledged was ambitious, simply is not feasible. The RMBS Settlement is a major component of the Debtors' chapter 11 cases. Creditors need sufficient time to complete fact and expert discovery before they can properly evaluate how the RMBS Settlement impacts their interests, and should not be forced into a condensed version of an already ambitious schedule as a result of the Debtors' conduct.

---

[10] It appears that the Debtors still have not produced all documents relied upon by Frank Sillman, Managing Partner for Fortace, LLC, in preparing his declaration in support of the RMBS Settlement. Mr. Sillman has opined (retrospectively) as to the reasonableness of the $8.7 billion claim to be allowed pursuant to the RMBS Settlement. Additional Fortace documents were produced as recently as Friday, September 14th, which appear to contain data that Mr. Sillman relied upon in preparing his declaration. Producing such materials on a rolling basis only serves to cause further delay, as any rebuttal experts will need to review the materials before preparing their own expert reports.

WHEREFORE, MBIA respectfully requests that the Court defer the schedule concerning the RMBS Settlement until all parties have had sufficient time to conduct complete discovery.

Dated:   New York, New York
         September 18, 2012

                              CADWALADER, WICKERSHAM & TAFT LLP

                              By  /s/ *Ingrid Bagby*
                              Gregory M. Petrick
                              Ingrid Bagby
                              CADWALADER, WICKERSHAM & TAFT LLP
                              One World Financial Center
                              New York, New York 10281
                              Telephone: (212) 504-6000
                              Facsimile: (212) 504-6666

                              -and-

                              Mark C. Ellenberg
                              CADWALADER, WICKERSHAM & TAFT LLP
                              700 Sixth Street, N.W.
                              Washington, DC 20001
                              Telephone: (202) 862-2200
                              Facsimile: (202) 862-2400

                              *Attorneys for MBIA Insurance Corporation*