CLEARY GOTTLIEB STEEN & HAMILTON LLP
Thomas J. Moloney (TJM-9775)
Sean A. O'Neal (SAO-4067)
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Special Counsel for Wilmington Trust, National
Association, as Indenture Trustee for the Senior
Unsecured Notes Issued by Residential Capital, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X
                :

**In re**                     :            **Chapter 11 Case No.**

**RESIDENTIAL CAPITAL, LLC, et al.,**    :

                :          **12-12020 (MG)**

        **Debtors.**          :

                :          **(Jointly Administered)**

                :
----------------------------------------------------------------X

**REPORT OF WILMINGTON TRUST, NATIONAL ASSOCIATION CONCERNING
THE STATUS OF DISCOVERY IN CONNECTION WITH THE DEBTORS' RULE 9019
<u>MOTION TO APPROVE THE RMBS SETTLEMENT</u>**

TO THE HONORABLE JUDGE GLENN,
UNITED STATES BANKRUPTCY JUDGE:

        Wilmington Trust, National Association (the "Trustee"), solely in its capacity as

indenture trustee for various series of senior unsecured notes in the outstanding aggregate

principal amount of approximately $1 billion (the "Notes," and the holders thereof, the

"Noteholders") issued by Residential Capital, LLC ("Residential Capital," and with its debtor-

affiliates, the "Debtors"), respectfully files this report to apprise the Court, in advance of the

September 19, 2012 discovery conference, of the status of discovery in connection with the

Debtors' Rule 9019 motion dated June 11, 2012 (Doc. 320) (the "Original Rule 9019 Motion")

and the Debtors' supplemental Rule 9019 motion dated August 15, 2012 (Doc. 1176) (the

"Supplemental Rule 9019 Motion," and with the Original Rule 9019 Motion, the "Rule 9019

Motions") with respect to the proposed RMBS settlement (the "RMBS Settlement"). The

Trustee respectfully states as follows:

1.     As detailed in the Trustee's Motion to Modify the Revised Joint Omnibus

Scheduling Order (Doc. 1300) (the "Motion to Modify"), neither the Trustee nor the Noteholders

had any reason to believe that the Original Rule 9019 Motion would affect them because

Residential Capital, which is the obligor of the Notes, was obtaining a release under the RMBS

Settlement and the allowed claims were only against certain operating Debtors and not Residential

Capital.  Accordingly, the Trustee did not separately participate in the negotiation of the July 31,

2012 revised joint omnibus scheduling order (the "Scheduling Order").

2.     Over two weeks after the Scheduling Order was approved, the Debtors filed the

Supplemental Rule 9019 Motion, which, for the first time, and without any notice to certain

interested parties, including the Noteholders, involved Residential Capital in one of the largest

RMBS settlements in history by allocating up to $1.74 billion of the allowed claim against

Residential Capital (the "HoldCo Election"), ostensibly on the basis of a settlement of a never

previously asserted or disclosed alter ego claim.  Given this fundamental change to the RMBS

Settlement, the Trustee had little choice but to file the Motion to Modify, which would extend the

discovery period, in order to protect the rights of Residential Capital and its creditors, including the

Noteholders.  The Motion to Modify is scheduled to be heard on September 27, 2012.

3.     Following the filing of the Supplemental Rule 9019 Motion and the Motion to

Modify, the Trustee took immediate steps to involve itself independently in the formal discovery

process (the Debtors had previously denied almost all information requests made by Noteholders related to the RMBS Settlement).  These steps included serving document requests and interrogatories on the Debtors.  The Trustee's requests focused on <u>inter alia</u> the process by which the RMBS Settlement was amended in an effort to determine whether it was the product of an arms-length negotiation (a factor the court must consider when approving any settlement under Rule 9019) and whether any of Residential Capital's fiduciaries were involved in the negotiations and had appropriately used their business judgment in agreeing to the amended proposed settlement.  In addition, the requests sought information regarding the basis for the HoldCo Election and whether any alter ego claim (which purports to form the basis of the HoldCo Election) should principally be lodged against Residential Capital, which received no economic benefit from these securitizations, as opposed to Ally Financial, Inc. ("AFI"), which is the ultimate parent company and is the current direct or indirect owner of Ally Bank Corp. and Ally Securities, LLC, both of which benefited directly and materially from these securitizations.  Additionally, the question of whether a single group of creditors can assert and benefit uniquely from an alter ego claim, which is normally considered as an asset of the Debtors' estate, *see St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 703-04 (2d Cir. 1989), requires exploration.

4.    The Debtors have responded to the Trustee's requests by refusing to permit any discovery related to the HoldCo Election or any alter ego theory, and they likewise refuse to answer interrogatories seeking information about amendments to the RMBS Settlement.  The only rationale offered by the Debtors is that they plan to file, at some unspecified time in the near future, a second amended RMBS Settlement that purportedly removes the HoldCo Election altogether.  Critically, the Debtors have not promised to restore the release for Residential Capital that was an integral component of the initial RMBS Settlement.  The Trustee notes that this afternoon the

Debtors filed a status report in which they purport to file a second amended RMBS Settlement

containing no release of Residential Capital very "soon." According to the Debtors' status report,

this new agreement would permit any party to file a proof of claim asserting alter ego claims

against Residential Capital at a later date. While the Debtors shared a proposed second amended

RMBS Settlement with counsel for the Trustee over a week ago, it is unclear whether that

document is the same agreement the Debtors intend to file imminently because the description in

the status report does not mention certain key features of the previously circulated amendment. Of

course, the Trustee will only know the complete contents of this new agreement once it is filed,

less than a week before the close of fact discovery as provided in the Scheduling Order.

5.      The Trustee has also learned of an undisclosed allocation of AFI's cash

contribution as between Residential Capital and the other Debtors as part of the concurrently

executed plan support agreement with certain RMBS investors (the Debtors have described this as

"integral" to the RMBS Settlement and the case more generally). This secret deal, which should

have been fully disclosed, affects the RMBS Settlement, including potential alter ego claims and

the release of Residential Capital contained in the original RMBS Settlement. Bottom line, the

promulgated discovery concerning the HoldCo Election and the purported basis for alter ego

claims remain appropriate subjects for discovery. *See In re Iridium Operating LLC*, 478 F.3d 452,

461-62 (2d Cir. 2007) (noting that the purpose of Rule 9019 is to "prevent the making of concealed

agreements which are unknown to the creditors and unevaluated by the court"). Accordingly,

elimination of the HoldCo Election does not moot continued discovery on alter ego and related

issues.

6.      Finally, there are numerous specific issues with the discovery the Debtors have

agreed to provide regarding the RMBS Settlement. First, while the Debtors have agreed to search

the files of certain Morrison & Foerester LLP ("MoFo") attorneys for documents responsive to

requests regarding the negotiation and approval of the various iterations of the RMBS Settlement,

they have not (i) even identified any custodians at the various Debtor-entities whose documents

they will search (although they have promised to do so), or (ii) agreed to search all the MoFo

custodians who participated in those negotiations. Notably, there has been no commitment to

search the files of three MoFo attorneys which the Debtors' interrogatory responses indentify as

having been among those who "played the greatest role and had the most responsibility" in

negotiating the settlement. Second, the Debtors' interrogatory responses identify only seven non-

lawyers at the Debtors who were involved in negotiating and approving the original RMBS

Settlement (and presumably subsequent amendments). But the Debtors have not yet agreed to

designate any of those individuals as custodians, nor have the Debtors agreed to name their

financial advisor for the RMBS Settlement, FTI, as a custodian. Third, while the Debtors object to

the deposition of any lawyer involved in the negotiations, their interrogatory responses identify

only lawyers as having been involved in the negotiation and approval of the amended RMBS

Settlement that added the HoldCo Election. Indeed, a prohibition on the deposition of any lawyer

equates to a prohibition on any discovery into the evolution of the RMBS Settlement, a proposition

that the Debtors cannot possibly maintain.

Dated:  New York, New York
          September 18, 2012

                                        Respectfully submitted,

                                        CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                        By:  /s/Sean A. O'Neal
                                        Thomas J. Moloney (TJM-9775)
                                        Sean A. O'Neal (SAO-4067)
                                        Members of the Firm
                                        One Liberty Plaza
                                        New York, NY 10006
                                        *(212) 225-2000*

                                        *Special Counsel for Wilmington Trust, National*
                                        *Association, as Indenture Trustee for the Senior*
                                        *Unsecured Notes Issued by Residential Capital, LLC*