Hearing Date: September 27, 2012
Hearing Time: 10:00 a.m.
Objection Deadline: September 20, 2012

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                                  :        Chapter 11
                                                        :        Case No: 12-12020 (MG)
RESIDENTIAL CAPITAL, LLC, et al.,                       :
                                                        :
        Debtors.                                        :        Jointly Administered

-------------------------------------------------------------x

**<u>RESPONSE AND OBJECTION BY JPMORGAN CHASE BANK, N.A. TO DEBTORS'
MOTION FOR ENTRY OF AN ORDER APPROVING PROCEDURES BY WHICH
PARTIES MAY REQUEST AND OBTAIN STIPULATED RELIEF FROM THE
AUTOMATIC STAY TO COMMENCE OR CONTINUE ACTIONS TO FORECLOSE
SENIOR LIENS</u>**

**TEITELBAUM & BASKIN, LLP**
*Attorneys for JPMorgan Chase Bank, N.A.*
Jay Teitelbaum, Esq.
1 Barker Avenue
Third Floor
White Plains, New York 10601
Telephone No.:  (914) 437-7670
Telecopier No.  (914) 437-7672
E-Mail: jteitelbaum@tblawllp.com

Dated: September 19, 2012

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 4

RESPONSE ................................................................................................................ 6

     Proposed Modifications to the Motion ................................................................. 6

ARGUMENT ........................................................................................................... 12

     Point I: There Is No Precedent For The Relief Sought ..................................... 12

     Point II: The Motion Is Premised Upon False Assumption .............................. 14

     Point III: The Motion Improperly Seeks To Modify Bankruptcy Code §362 .................. 18

     Point IV: The Stalking Horse Bidder Is Not A Proper Party To Any Decision

          Concerning Relief From The Stay ....................................................... 23

CONCLUSION ........................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Aurora Loan Services LLC v. Sadek*, --- F.Supp.2d ----, 2011 WL 3678005 (S.D.N.Y. August 22, 2011) ................................................................................................................15

*BFP v Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757 (1994) ...................15, 18

*Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914 (1979) .........................................14

*Fairbanks Capital Corp. v. Nagel*, 289 A.D.2d  99, 735 N.Y.S. 2d 13 (App. Div. 1st Dep't 2001) ................................................................................................................15

*In re A Partners, LLC.*, 344 B. R. 114 (Bankr. E.D.Ca.2006) ......................................16

*In re Adelphia Communications Corp.*, 371 B.R. 660, 670 n. 54 (S.D.N.Y. 2007) ....................23

*In re Badagliacca*, 403 B.R. 288 (Bankr. W.D.N.Y. 2009) .........................................15

*In re Caldor*, 303 F3d 161 (2d Cir. 2002) ...................................................................23

*In re Colony Hill Assoc.*, 111 F.3d 269 (2d Cir. 1997) ...............................................24

*In re Conde–Dedonato*, 391 B.R. 247 (Bankr. E.D.N.Y. 2008) ..................................16

*In re Escobar*, 457 B.R. 229 (Bankr. E.D.N.Y. Aug. 22, 2011)...........................15, 16

*In re Feinberg*, 442 B.R. 215 (Bankr. S.D.N.Y. 2010) ...............................................15

*In re Frontier Airlines Holdings, Inc., et al.*,  Case No. 08-11298 (Docket No 374) ..................12

*In re General Growth Properties, Inc. 426 B.R. 71* (Bankr S.D.N.Y. 2010) ...............................23

*In re Global Crossing Ltd.*, 295 B.R. 726 (Bankr. S.D.N.Y. 2003)..............................24

*In re Gucci*, 126 B.R. 380 (2d Cir. 1997)....................................................................24

*In re Indian Palms Assoc, Ltd.*, 61 F. 3d 197 (3d Cir 1995) ........................................20

*In re Minbatiwalla*, 424 B.R. 104 (Bankr. S.D.N.Y. 2010)..........................................15

*In re New ERA Company*, 115 B.R. 41 (Bankr. S.D.N.Y. 1990) ..................................20

*In re Oligbo*, 328 B.R. 619 (Bankr. E.D.N.Y. 2005)..............................................15, 16

*In re Pinnacle Airlines Corp., et al.*, Case No 12-11343 (Docket No. 170) ...............................12

*In re Salender- O-Reilly Galleries, LLC.*,  475 B.R. 9 (S.D.N.Y. 2012)....................................14

*In re Smart World Techs, LLC.*, 423 F.3d 166 (2d Cir. 2005)......................................23

*In re Viencek*, 273 B.R. 354 (Bankr. N.D.N.Y. 2002)..................................................16

*In re Whitney*, 1988 WL 141523 (Bankr. D. Minn. 1988) ...........................................20

*In re Worldcom, Inc.*, 2003 WL 22025051 (Bankr. S.D.N.Y. 2003) ......................18, 20

*Northwest Bank Worthington v. Ahlers*,  485 U.S. 197, 108 S.Ct. 963 (1988) .............................13

*Scharaga v. Schwartzberg*, 149 A.D.2d 578, 540 N.Y.S.2d 451 (2nd Dept. 1989).....................17

*Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F. 2d 1280 (2d Cir. 1990)..........21

*Twombly v. Cassidy*, 37 Sickels 155 (Ct. App. 1880) ..................................................16

*U.S Bank National Ass'n v. Major Holdings, LLC*, 35 Misc. 3d 1224(A) (N.Y. Sup. Suffolk Co 2012) ................................................................................................................15

*Unsecured Creditors Comm. of Debtor STN Enters, Inc. v. Noyes*, 779 F.2d 901 (2d Cir. 1985)23

*Wallach v. Kirschenbaum*, 2011 WL 2470609 (E.D.N.Y. 2011)..................................24

*Wornick v. Gaffney*,  544 F. 3d 486 (2d Cir 2008) ......................................................14

**Statutes**

Bankruptcy Code §105 ..................................................................................................13

Bankruptcy Code §362 ....................................................................................14, 18, 23

Bankruptcy Rule 9019 .....................................................................................................5

Bankruptcy Rule 90a9 .....................................................................................................5

New York Civil Practice Law and Rules §3408....................................................................11

New York Real Property Actions and Proceedings Law §1302 .................................................15

ii

New York Real Property Actions and Proceedings Law §1304 ................................................15
New York Real Property Actions and Proceedings Law §1354 ................................................17
New York Real Property Actions and Proceedings Law §1355 ................................................17
New York Real Property Actions and Proceedings Law §1361 ................................................17
New York Real Property Actions and Proceedings Law §1362 ................................................17

**Other Authorities**

Bruce J. Bergman, *Bergman on New York Mortgage Foreclosures*, § 4.07 (2012).....................16
Bruce J. Bergman, *Bergman on New York Mortgage Foreclosures*, § 12.10[3] (2012)..............17
Bruce J. Bergman, *Bergman on New York Mortgage Foreclosures*, § 19.01[1] (2012)..............17
Bruce J. Bergman, *Bergman on New York Mortgage Foreclosures*, § 19.02[b] (2012)..............17
Bruce J. Bergman, *Bergman on New York Mortgage Foreclosures*, § 27.02[2] (2012)..............16
Bruce J. Bergman, *Bergman on New York Mortgage Foreclosures*, § 35.01 (2012)..................17

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                      :        Chapter 11
                                            :        Case No: 12-12020 (MG)
RESIDENTIAL CAPITAL, LLC, et al.,           :
                                            :
            Debtors.                        :        Jointly Administered

-------------------------------------------------------------x

## RESPONSE AND OBJECTION BY JPMORGAN CHASE BANK, N.A. TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING PROCEDURES BY WHICH PARTIES MAY REQUEST AND OBTAIN STIPULATED RELIEF FROM THE AUTOMATIC STAY TO COMMENCE OR CONTINUE ACTIONS TO FORECLOSE SENIOR LIENS

JPMorgan Chase Bank, N.A. ("**Chase**"),  as servicer, holder or owner of loans secured by mortgages (the "**Chase Senior Liens**") upon real property owned by non-Debtor third parties (each a "**Non-Debtor Property**") and subject to junior liens serviced, held or owned by one or more of the Debtors (the "**Debtors' Junior Liens**"), by its attorneys, Teitelbaum & Baskin, LLP, for its response and objection to the motion dated September 11, 2012 (ECF Docket No. 1416) (the "**Motion**") for an order approving procedures by which senior lien holders may request and obtain stipulated relief from the automatic stay to commence or continue actions to foreclose senior liens, respectfully states:

### Preliminary Statement

1.     Chase objects to the Motion in its entirety on the grounds that, without any legal basis, the Debtors are seeking to create an informal process (a "**Request for Relief**") which alters the fundamental rights of Chase and other senior lien holders, based upon the prospect that such parties may obtain consensual relief from the stay.   While the Motion is presented as a procedural tool to relieve the Debtors and the Court of the burdens of a potential flood of lift stay

1

motions by senior lien holders, the procedures identified in the Motion, in fact, stand on its head the rights of senior and junior lien holders.

2.     The anticipated motions for relief from the stay which the Motion seeks to avoid are not the typical motions for relief filed by creditors of debtors to enforce rights as against property of the estate, based upon a contractual or other business dealing with the debtors (*i.e.* privity). In these cases, servicers, holders and/or owners of senior mortgages, such as Chase, do not have any privity with the Debtors. The privity is with third parties who have granted to such lenders mortgages upon Non-Debtor Property. The motions for relief would be to allow the senior lien holders the right to enforce their claims against Non-Debtor Property.

3.     The Debtors are affected by such motions solely to the extent that the Debtors' Junior Liens, which represent a contingent right to proceeds in excess of the amount necessary to satisfy senior liens, may be extinguished through foreclosure by the senior lien holder pursuant to its rights at state law and under the senior loan documents.

4.     Pursuant to the Motion, the Debtors seek to grant to the Debtors, the Official Committee of Unsecured Creditors (the "**Committee**") and certain stalking horse bidders (the "**Stalking Horse Bidders**") (Motion at ¶¶14, 16 &17) the right to impose a process upon senior lien holders, such as Chase, which:

- burdens senior lien holders to identify and deliver to the Debtors information in a format created by the Debtors which the Debtors believe is necessary to determine whether to consent to relief from the automatic stay

- permits, without any objective criteria, the Debtors and third parties to determine whether information provided by a senior lien holder is sufficient to

2

support a motion for relief to extend the review process indefinitely if additional information is requested

- provides no objective criteria for the Debtors and third parties to deny a Request for Relief

- indefinitely delays the exercise of rights by the senior lien holders without any adequate protection

- fails to protect confidential or proprietary information submitted as part of settlement discussions

5.     The Motion should be denied in its present form. The Motion would delay the exercise of rights by senior lien holders and shift the burdens of proof, and the risks and costs of delay to the senior lien holders. The Motion ignores the fact that it is highly unlikely that the Debtors have any legitimate basis to oppose a motion for relief which may be filed by senior lien holders, such as Chase.

6.     Nevertheless, Chase appreciates the burdens which may be imposed upon this Court and the Debtors if a mechanism is not in place to efficiently address motions for relief which may be filed by senior lien holders, such as Chase. Thus, rather than begin with a detailed objection to the Motion, Chase begins this pleading with hopefully a constructive response to the Motion, setting forth a proposed modified procedure which Chase believes would achieve the stated objectives of the Motion and protect the rights of senior lien holders, such as Chase. Chase is willing to work with the Debtors to implement these procedures; however, Chase objects to the Motion as presented by the Debtors.

**Statement of Facts**

7.    At this time, Chase is the servicer, owner or holder of at least 200 Chase Senior Liens

upon Non–Debtor property where foreclosure proceedings have been put on hold as a result of

these Bankruptcy Cases. Chase is also the servicer, owner or holder of additional Chase Senior

Liens, which are not currently in foreclosure or default and is servicing these loans in the

ordinary course of its business.

8.    To the extent that Chase is the servicer of a Chase Senior Mortgage, Chase has

contractual obligations to the owner and or holder of the Chase Senior Lien to enforce the terms

of the underlying loan documents on behalf of the holder and or owner, including to protect and

preserve the underlying Non-Debtor Property, consider modifications of the terms of the Chase

Senior Lien and to enforce the rights of the owner or holder of the Chase Senior Lien pursuant to

applicable state law.

9.    To the extent that Chase is the holder and/or owner of a Chase Senior Lien, Chase has the

contractual right to enforce the terms of the underlying loan documents, including to protect and

preserve the underlying Non-Debtor Property, consider modifications of the terms of the Chase

Senior Lien and to enforce the rights as the owner or holder of the Chase Senior Lien pursuant to

applicable state law.

10.    Among other things, upon the occurrence of a default of a Chase Senior Lien, (i) interest

continues to accrue; (ii) Chase incurs the cost of periodically inspecting and protecting the

property, (iii) Chase will be required to fund escrow shortages for taxes (which are senior to all

mortgages and can potentially extinguish existing   mortgages), pay insurance premiums,

4

association fees and the like, (iv) Chase bears the cost of monitoring and administering a defaulted loan, (v) Chase bears the cost of administering requests for loan modifications, (vi) Chase bears the cost of enforcing rights and remedies, including those associated with foreclosure, and (vii) Chase bears the risk of a decline in the value of the Non-Debtor Property as a result of, among other things, market conditions or the actions of the borrower or third parties occupying the Non-Debtor Property.

11.      By the Motion, the Debtors seem to indicate, but do not commit, that the basis for an objection to a Request for Relief would be that the value of the Non-Debtor Property subject to a Senior Chase Lien exceeds the amount due to Chase pursuant to the terms of the underlying note and mortgage evidencing that Senior Chase Lien. (Motion ¶8).

12.      The Debtors provide no legal or factual basis to support the assumption that the right to a potential surplus from the sale of Non-Debtor Property after foreclosure is a ground to object to or delay the exercise of rights by a senior lien holder. It is submitted that there is no basis under the Bankruptcy Code or applicable state law, particularly since the Debtors do not even suggest the ability to either redeem the senior liens or to provide adequate protection to the holders of the senior liens.

13.      Further, although the Debtors are careful to avoid reference to Bankruptcy Rule 9019, the Motion is essentially a proposed settlement process under Bankruptcy Rule 9019. Contrary to applicable law, the Debtors propose to include the Stalking Horse Bidders, which are not estate fiduciaries, into the decision making process with respect to a Request for Relief. (Motion ¶ 17). This is improper.

**Response**

**Proposed Modifications To The Motion**

14.      To the extent that the purpose of the Motion is to efficiently address a potential flood of

motions for relief, Chase is not opposed to a process that is fair and cost effective.

15.      In formulating these proposed alternate procedures, Chase recognizes that, in connection

with a motion for relief, Chase may have the burden of proving (i) standing to enforce a Chase

Senior Lien, (ii) that the non-Debtor borrower is in default in connection with the Chase Senior

Lien, (iii) whether the current value of the Non-Debtor Property would yield any surplus after the

payment of the obligations under the Chase Senior Lien, and, (iv) the right to adequate

protection.

16.      Chase also recognizes that the Debtors are seeking information to promptly assess

whether there is any value in the Non-Debtor Property to merit the expenditure of resources and

to ensure that any proceedings which may affect the interests of the estate are properly

monitored.

17.      Further, Chase has considered the documents and information which it creates and

maintains in the ordinary course of its business and the burdens which would be imposed upon

Chase to create, review and quality control new formats for the collection and dissemination of

information to the Debtors.

18.      For the reasons discussed below, Chase asserts that the Motion is substantively improper

and should be denied unless modified as set forth herein. In addition, even if substantively

defensible, Chase objects to the process proposed in the Motion,  since it (i) imposes all of the

risk of potentially unlimited delay upon senior lien holders; (ii) imposes burdens upon senior lien

6

holders to create and produce information in a format created by the Debtors, as opposed to the

senior lien holder in the ordinary course of its business; (iii) provides no protection with respect

to potentially proprietary and confidential information; and (iv) gives third parties, including

Stalking Horse Bidders, who are neither parties in interest nor fiduciaries to the creditors of these

estates, the right to participate in and object to decisions regarding Requests for Relief.

19.    Chase would propose the following modifications to the Motion in order to address its

substantive and process objections to the Motion:

       a.  Any information provided to the Debtors would be provided under a
        confidentiality order approved by this Court which would, among other
        things, preclude the dissemination of such information to any third party
        other than the professionals engaged by the Debtors and the Committee
        who agree to be bound by the terms of such an order

       b.  Any information provided to the Debtors would not be admissible for any
        purpose in these Bankruptcy Cases or any other proceeding, other than
        with respect to making a decision on a Request for Relief

       c.  Any information provided would be in a form maintained or created by the
        senior lien holder in the ordinary course of its business, rather than a form
        dictated by the Debtors

       d.  The Debtors may consult with the Creditors Committee in making
        decisions on Requests for Relief, but the Debtors must make and
        communicate the decision

7

e.  Third parties, including the Stalking Horse Bidders, shall not be consulted in connection with a Request for Relief, nor shall any party, other than the Debtors be permitted to request additional information in connection with a Request for Relief or object to a Request for Relief

f.  In connection with any foreclosure proceeding, senior lien holders would provide notice of any such foreclosure proceedings to counsel for the Debtors, including local counsel in the jurisdiction where the Non-Debtor Property is located, as the Debtors may designate.

g.  The Debtors shall be responsible for disseminating additional notices to the Committee or third parties.

h.  The type of information which would be provided in connection with a Request for Relief in a format created or maintained by a senior lien holder in the ordinary course of its business could include:

**Loan Information:**
Name of Borrower
Account No.
Property Address
Date of Mortgage and Note
Recording Information
Priority: (*i.e.* first, or other senior interest to a Debtor)
Face Amount of Mortgage and Note
Total Balance Due as of the Request for Relief
Status of Loan: Default___; In foreclosure ___
Payment due as of _____
Value of Non-Debtor Property (By: Appraisal/BPO/AVM/Other)
Foreclosure Action Commenced: Yes___ No___.
If yes: action commenced on _____ in the _____ Court ,
bearing         Index/Case No_____
Foreclosure Judgment Obtained: Yes__ No__

8

**Standing:**
Identify Role of Requesting Party (*i.e.* servicer, holder or owner)
Identify Owner or Holder (if not party making the submission)

**Debtor and Junior Liens:**
Identify Other Liens and Holders of Record in Order of Priority (to the extent available from public records)
Identify Relevant Debtor believed to be the servicer, holder or owner of the junior mortgage.

i.   Within 20 days of the submission of a Request for Relief (the "**Evaluation Period**"), the Debtors shall determine whether (i) additional information is necessary to make a decision; (ii) the Request for Relief will be approved or denied; or (iii) to redeem the senior lien .

j.   If the Debtors request additional information, such a request shall be made within two days following the expiration of the Evaluation Period and the senior lien holder shall have the option to agree to provide the additional information or advise the Debtors that it intends to withdraw from the Request for Relief process.  If the senior lien holder agrees to provide the additional information, the Evaluation Period shall be extended for 5 days from the date that the additional information is provided to the Debtors (the "**Extended Evaluation Period**") and the Debtors shall determine whether or not to approve the Request for Relief within two days after the expiration of the Extended Evaluation Period. If the senior lien holder determines not to provide the additional information, that decision shall terminate the Request for Relief process.

9

k.  If, at the end of the Evaluation Period or the Extended Evaluation Period, the Debtors determine to agree to the Request for Relief, within two days after the expiration of such period, the Debtors shall cause a stipulated order to be filed with the Court on five (5) days notice, proposing to grant the senior lien holder relief from the automatic stay with respect to the Non-Debtor Property.

l.  If at the end of the Evaluation Period or the Extended Evaluation Period, the Debtors determine not to agree to the Request for Relief, within two days after the expiration of such period, the Debtors shall notify the senior lien holder of that decision in writing, in which case the Debtors shall either (i) offer to redeem the senior lien by payment in full satisfaction of the obligations identified in the Request for Relief, and such additional amounts as may have accrued or be identified by the senior lien holder, in which case the Debtors and the senior lien holder may submit to this Court a proposed order on five (5) days notice setting forth the terms of such redemption, which, among other things,  (a) shall set forth the amount to be paid; (b) the date of payment, which shall be 5 days after the approval of the order by the Court, (c) shall not require the senior lien holder to make any representations or warranties other than it is the owner, holder or servicer of the loan being redeemed and is authorized to enter into the transaction, and (d) shall not require any indemnity to the be granted to the

10

Debtors or any third party; or (ii) advise the senior lien holder that the
Request for Relief Process is terminated.

m. In the event that the Debtors consent to the Request for Relief, the form of
stipulated order annexed to the Motion is substantially acceptable;
however, Chase would request an additional paragraph which provides
that the stay is vacated to permit the senior lien holder to service the senior
lien according to commercial business practices, including to right to
modify the terms of the senior lien in the exercise of its business
judgment, or in connection with an order of a court with jurisdiction over
the Non-Debtor Property (such as this Court's loss mitigation program as
approved pursuant to Southern District General Order M-363 or the pre-
trial conference required in the State of New York pursuant to
N.Y.C.P.L.R. §3408)).

n. Participating in the Request for Relief process is a mandatory prerequisite
to the filing of a motion for relief, and a motion for relief shall not be filed
until the termination of the Request for Relief process. The Request for
Relief process shall terminate (i) if the Debtors reject a Request for Relief;
(ii) if the senior lien holder determines to terminate the process in its
discretion at any time after there is a request for additional information
from the senior lien holder; (iii) the third day following the expiration of
Evaluation Period or the Extended Evaluation Period if the Debtors have

11

not communicated a decision to the senior lien holder; or (iv) the Debtors

fail to redeem the senior lien on terms acceptable to the senior lien holder.

    o.  To the extent that a motion for relief is filed by a senior lien holder, the

senior lien holder shall represent that a Request for Relief was submitted

as required pursuant to the Motion, and that the process concluded without

a resolution.

20.    An order confirming that if a senior lien holder, such as Chase, is servicing a senior lien

in the ordinary course of business not in foreclosure, it shall not be a violation of the automatic

stay and no further order of this Court shall be required to permit the senior lien holder to service

the senior lien according to commercial business practices, including to right to modify the terms

of the senior lien in the exercise of its business judgment, or in connection with an order of a

court with jurisdiction over the Non-Debtor Property (such as this Court's loss mitigation

program as approved pursuant to Southern District General Order M-363).

21.    Chase remains willing to try to work with the Debtors to modify the Motion, but objects

to the Motion in its present form for the following reasons.

### Argument

### Point I
### There Is No Precedent For The Relief Sought

22.    The Debtors acknowledge that there is no precedent for the relief sought in the Motion.

(Motion ¶26). Thus, it is unclear why the Debtors cite to *In re Pinnacle Airlines Corp., et al.,*

Case No 12-11343 (Docket No. 170) or *In re Frontier Airlines Holdings, Inc., et al.,* Case No.

08-11298 (Docket No 374) as support for the Motion.

23.    In both cases, Davis Polk & Wardwell filed substantially identical motions to establish procedures to settle potentially "hundreds or thousands" of disputes and claims asserted by creditors of the respective debtors, including with respect to breach of contract, tort, environmental, labor, regulatory and accounts receivable matters. The orders referenced by the Debtors in the Motion, together with the underlying motions from the respective cases (without the exhibits) are annexed hereto as **Exhibit A**. (*See, e.g.,* Pinnacle Motion at ¶¶ 7- 9 and Frontier Motion at ¶¶ 5-7).

24.    The settlement procedures proposed in each of the Pinnacle and Frontier cases were common claims settlement procedures approved in the cases referenced in the respective motions. (*See* Frontier Motion at ¶¶ 17-20 and Pinnacle Motion at ¶¶ 18-21). These motions simply confirmed the right of the respective debtors to settle claims with their creditors in the ordinary course of business and established notice procedures tied to the amount and type of claim being settled.

25.    The Pinnacle and Frontier motions were premised upon the state law rights of the debtors to refute and settle claims asserted against them and established a procedure for doing so without extensive Bankruptcy Court involvement- - nothing more.

26.    Unlike the Motion, the Pinnacle and Frontier motions did not:

- require that participating parties create new business records to be submitted to the debtors

- require that creditors engage in the settlement process as a condition precedent to exercising other rights and remedies

- assume or create a right to object to a claim where none existed at state law

13

- relieve the debtors of any obligations under the Bankruptcy Code or state law

- shift burdens of proof

- delegate any decision making authority to non- debtors

27.    The reference to these two cases is irrelevant at best. There is good reason why the Debtors did not locate precedent for the Motion; the express provisions of the Bankruptcy Code cannot be altered in the name of expediency, by relying upon Bankruptcy Code §105. *Northwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code").

### Point II
### The Motion Is Premised Upon A False Assumption

28.    Chase is not disputing, for the purposes of this  pleading, that the Debtors' Junior Liens are property of the estate subject to the provisions of Bankruptcy Code §362. It is assumed (though the Motion does not so provide) that if Chase provided evidence of its standing with respect to the Chase Senior Lien and that the Chase Senior Lien was in default, the Debtors would not object to Chase foreclosing upon a Chase Senior Lien where the Debtors' Junior Lien is wholly under water; however, reading between the lines of the Motion, it appears that the Debtors believe that there would be a basis for an objection to a motion for relief if the Debtors or the Stalking Horse Bidders perceived that the value of the Non-Debtor property exceeded the amount necessary to satisfy, in full, the amount due under the Chase Senior Lien.

29.    There is, however, no legal or factual basis for any such objection.

30.    It is axiomatic that the nature and extent of the Debtors' interest in the Debtors' Junior Liens (as with all property) is governed by state law. *Butner v. United states,* 440 U.S. 48, 54, 99

14

S.Ct. 914 (1979) (property interests are created and defined by state law); *Wornick v. Gaffney,* 544 F. 3d 486, 490 (2d Cir 2008) (debtor's interest in insurance policy as determined by state law was subject to the right of the insured to change the beneficiary at any time); *In re Salender-O-Reilly Galleries, LLC.,* 475 B.R. 9, 21-22 (S.D.N.Y. 2012) (denial of motion to lift the stay to pursue arbitration, applying state law to interpret the rights of parties to a contract, including the rights of the trustee as a hypothetical lien creditor under state law); *In re Badagliacca,* 403 B.R. 288, 291 (Bankr. W.D.N.Y. 2009) (right of a Chapter 7 trustee to avoid mortgage lien on grounds that it was not properly recorded as against a bona fide purchase is based upon the recording statutes and real property law of the state of New York); *In re Oligbo,* 328 B.R. 619, 637-38 (Bankr. E.D.N.Y. 2005) (pursuant to state law, debtor, as a contract vendee, had a right to redeem senior mortgage).

31.    Indeed, in the context of mortgage foreclosure, it cannot be disputed that the rights of mortgagors and lien holders is determined by state law. *BFP v Resolution Trust Corp.,* 511 U.S. 531, 543-44, 114 S.Ct. 1757, 1765-66 (1994) (federal law will not impinge upon such an essential state law interest as title to real property); *see also, In re Minbatiwalla,* 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010) (applying New York law to determine whether the mortgagee has standing to enforce the note and mortgage); *In re Escobar,* 457 B.R. 229, 239 (Bankr. E.D.N.Y. Aug. 22, 2011) (same); *In re Feinberg,* 442 B.R. 215, 222-224 (Bankr. S.D.N.Y. 2010) (same); *Aurora Loan Services LLC v. Sadek,* 809 F.Supp.2d 235, 240 (S.D.N.Y. 2011) (same); *In re Oligbo,* 328 B.R. at 637-38 (applying New York law, the purpose of a foreclosure is to extinguish the right of redemption of all interests junior to the foreclosing party).

15

32.    Further, there is no dispute that servicers have standing to assert the rights of the owners and/or holders of the underlying mortgage. *U.S. Bank National Ass'n v. Major Holdings, LLC,* 35 Misc. 3d 1224(A) (N.Y. Sup. Suffolk Co 2012) (N.Y.R.P.A.P.L §§ 1302 and 1304 expressly confer standing upon a servicer to prosecute a foreclosure action on behalf of the owner); *Fairbanks Capital Corp. v. Nagel,* 289 A.D.2d 99, 735 N.Y.S. 2d 13 (1st Dep't 2001) (servicing agent has standing); *In re Minbatiwalla,* 424 B.R. at 109 (filing a proof of claim against a debtor pursuant to its duties as a servicer) (citing *In re Conde–Dedonato,* 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008); *In re Viencek,* 273 B.R. 354, 359 (Bankr. N.D.N.Y. 2002); *In re Escobar,* 457 B.R. at 229 (movants were the servicers for Fannie Mae).

33.    The panoply of the Debtors' property rights under the Debtors' Junior Liens do not include a right to object to Chase foreclosing upon a Chase Senior Lien, even if the value of the Non-Debtor property exceeds the amount necessary to satisfy the Chase Senior Lien.

34.    Essentially, the Debtors have a right of redemption. Bergman, *Mortgage Foreclosures,* §4.07, at page 4-44 (the equity of redemption lies not only with the fee owner of the property, but with all persons holding any legal or equitable interest in the property derived from the mortgagor, such as a junior mortgagee). (2012). The right of redemption permits the junior lien holder to be subrogated to the rights of the senior lien holder upon payment of the entire amount due to the senior lien holder. *Id.; see also Twombly v. Cassidy,* 37 Sickels 155 (Ct. App. 1880). *See also In re Oligbo,* 328 B.R. at 637-38 (the rationale for joining junior lien holders is to extinguish the right of redemption); *In re A Partners, LLC.,* 344 B. R. 114, 122 (Bankr. E.D.Ca. 2006) (where senior lien holder moved for relief from the automatic stay, the debtor, a junior mortgagee, had the rights afforded it under state law, most importantly, the right of redemption).

35.    While, the objective of a foreclosure is to extinguish the right of redemption of all junior interests and vest complete title in the purchaser at the foreclosure sale (Bergman, *Mortgage Foreclosures*, §27.02[2]; *In re Oligbo*, 328 B.R. at 637-38), it must be noted that a junior mortgagee cannot affect the rights of a senior mortgage, even by naming the senior mortgage in a foreclosure action; and any buyer from a junior mortgagee foreclosure sale takes subject to the senior mortgage. Bergman, *Mortgage Foreclosures*, §12.10[3] at page 12-53. *See, e.g., Scharaga v. Schwartzberg*, 149 A.D.2d 578, 540 N.Y.S.2d 451 (2nd Dept. 1989) (senior lien holders are neither necessary nor proper parties to a foreclosure by a junior lien holder as their rights cannot be affected).

36.    The Debtors, as junior lien holders, may have the right to object to a senior lien holder's foreclosure action, but *"they are the least likely to have a valid defense to foreclosure."* Bergman, *Mortgage Foreclosures*, §19.01[1], at page 19-4. As discussed in detail in Bergman, *Mortgage Foreclosures*, Chapter 19, the junior mortgagee may object to a foreclosure based upon substantive (*i.e.* lack of standing or lack of priority) or procedural grounds (*i.e.* failure to serve or join an indispensable party or provide proper notice), but the ultimate right of the junior mortgagee is to protect its interest by either (i) redeeming the senior mortgage and being subrogated to the rights of the senior mortgagee, or (ii) ensuring that the senior mortgagee follows state law foreclosure procedures, accurately accounts for the proceeds of any foreclosure sale and remits (or have the referee remit) any excess proceeds to junior lien holders as their interests may appear. Bergman, *Mortgage Foreclosures*, §§19.02[b] and 35.01 *et.seq.*; N.Y.R.P.A.P.L §§ 1354, 1355, 1361 and 1362.

17

37.     The Debtors have no right at state law to object to a foreclosure on the ground that the

Non-Debtor Property may have value above the amount necessary to satisfy the senior mortgage.

To the contrary, again, for example under New York law, the junior lien holder's right is to have

its liens attach to any such surplus and require special proceedings under N.Y.R.P.A.P.L. §§

1354, 1355, 1361 and 1362 for an accounting and turnover of the surplus. *See also* Bergman,

*Mortgage Foreclosures*, §35.01, *et. seq.*

38.     It is submitted that the procedures required under applicable state law, and the notice

which Chase would be required to give to the Debtors under state law and any order of this Court

granting relief from the stay is all that the Debtors are entitled to in order to adequately protect

any interest in any surplus which may be realized upon a foreclosure of Non-Debtor property.

*BFP v Resolution Trust Corp.,* 511 U.S. at 543-44, 114 S.Ct. at 1765-66 (it is assumed that

compliance with state law foreclosure procedures adequately protects the interests of creditors as

a sale conducted pursuant to such law and procedures cannot be attacked as a fraudulent

conveyance under Federal law).

### Point III
### The Motion Improperly Seeks To Modify Bankruptcy Code §362

39.     Pursuant to Bankruptcy Code §362(d) (1) and (2) Chase would be absolutely entitled to

relief from the automatic stay with respect to the Chase Senior Liens upon proof (i) of cause,

including a lack of adequate protection of Chase's interests in the Non-Debtor property; or (ii)

that the Debtors do not have any equity in the property and the property is not necessary to an

effective reorganization. *In re Worldcom, Inc.,* 2003 WL 22025051 at *3 (Bankr. S.D.N.Y. 2003)

(relief from the stay is mandatory if either (d)(1) or (d) (2) are satisfied).

18

40.     Pursuant to Bankruptcy Code §362(g), Chase would have the burden of proof on the issues of cause and the Debtors' equity; and the Debtors' would have the burden on all other issues.

41.     Thus, as discussed in *In re Worldcom,* 2003 WL 22025051 at *5-6, assuming that Chase establishes (i) its standing as a secured creditor or servicer of a secured creditor, (ii) the existence of a default by a non-Debtor mortgagor under the Chase Senior Lien, and (iii) either the absence of any equity; or, cause, including the lack of adequate protection, the Debtors would have the burden on all other issues including the appropriate adequate protection of Chase's interest in the Chase Senior Lien.

42.     The Debtors have not suggested a valid or viable basis to oppose a motion for relief under these circumstances.

43.     As proposed in the Motion, whether or not there is equity in a Non-Debtor Property, assuming parties followed the procedures set forth in the Motion, after the expiration of at least 20 days, the Debtors, the Committee, or the Stalking Horse Bidders could summarily (i) conclude that additional information is required from the senior lien holder without a mechanism for the senior lien holder to oppose such a request or simply file a motion for relief; or (ii) reject the Request for Relief and require the senior lien holder to file a motion for relief; or (iii) further delay the exercise of rights by a senior lien holder by combining (i) and (ii).

44.     In the rare case where there may be a surplus for the Debtors' Junior Lien, as discussed above, there can be no dispute that once the non-debtor stops making payments, any surplus which may exist in the Non-Debtor Property is eroded on a daily basis by (i) accruing interest; (ii) the cost of periodically inspecting the property, (iii) accruing escrow shortages for taxes

19

(which are senior to the mortgages and extinguish same), insurance, association fees and the like, (iv) the cost of monitoring and administering a defaulted loan, (v) the cost of administering requests for loan modifications, (vi) the cost of enforcing rights and remedies, including in a foreclosure, and (vii) the risk of a decline in the value of the premises as a result of, among other things, market conditions or the actions of the borrower or third parties. Not only does this erosion affect the potential surplus available to the Debtors, it increases the risk that the senior lien will not be satisfied to the same extent as a prompt exercise of the senior lien holder's rights would permit.

45.    Thus, assuming *arguendo* a potential surplus exists above the senior lien, to mount a good faith opposition to a motion for relief, the Debtors must be prepared to provide adequate protection against the risk faced by the senior lien holder. *In re Worldcom,* 2003 WL 22025051 at *6.

46.    As discussed above, under state law, the only appropriate adequate protection under state law would be for the Debtors to redeem the Chase Senior Lien by paying in full the senior lien. Chase recognizes that under the Bankruptcy Code, the Court may fashion alternative adequate protection, but asserts that the Debtors would be required to address the daily decline in any equity by periodic payments which offset the costs and potential risk of delay.

47.    It is submitted that the Debtors have no intention or ability to provide such adequate protection and that the Motion is simply a tactic to delay the inevitable so that the Debtors may speculate about the future value of the Non-Debtor property. *In re New ERA Company,* 115 B.R. 41, 45 (Bankr. S.D.N.Y. 1990) (potential equity is measured by the current value of the property against the senior liens); *In re Indian Palms Assoc, Ltd.,* 61 F. 3d 197, 201 (3d Cir 1995) (test for

20

determining equity is total liens measured against current value); *In re Whitney,* 1988 WL 141523 at *4 (Bankr. D. Minn. 1988) (speculative future appreciation in value is not adequate protection).

48.    If the Debtors believe that there is value for the Debtors' Junior Liens they should be prepared to redeem the Chase Senior Lien and take that risk, rather than impose it upon Chase.

49.    Moreover, applying the factors identified in *Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F. 2d 1280, 1286, 1288 (2d Cir. 1990), it is clear that the Motion only seeks to forestall the inevitable. The identified factors are generally considered to determine if cause exists and not all factors are relevant for all cases and not all factors are given equal weight.

50.    Applying the factors, as they may be relevant, it is clear that any motion for relief by a senior lender must be granted for cause:

- whether relief would result in a partial or complete resolution of the issues
  - yes, relief would resolve entirely whether there would be any surplus for the Debtors
- lack of any connection with or interference with the bankruptcy case;
  - the Non-Debtor Property subject to the Chase Senior Lien is not property of the estate and there is no privity between Chase and the Debtors upon which a traditional motion for relief would be based; the only interest being effected is the Debtors' speculative interest in any surplus above the Chase Senior Lien, which interest is adequately protected by state law foreclosure procedures
- whether the other proceeding involves the debtor as a fiduciary;
  - no
- whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

21

- yes, the state courts are particularly suited to address the nuances of state law foreclosure actions
- whether the debtor's insurer has assumed full responsibility for defending it
  - not applicable
- whether the action primarily involves third parties
  - yes, the foreclosure action primarily involves the senior mortgagee and mortgagor
- whether litigation in another forum would prejudice the interests of other creditors
  - no, the interests of the Debtors and other creditors in any surplus are protected by state law foreclosure procedures
- whether the judgment claim arising from the other action is subject to equitable subordination
  - no
- whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
  - no, the purpose of the foreclosure is to extinguish all junior interests with any such interests to attach to surplus proceeds
- the interests of the judicial economy and the expeditious and economical resolution of litigation
  - the foreclosure actions affect land in various states across the Country; the most efficient method of conducting foreclosures pursuant to state law is for the state courts to handle the matters
- whether the parties are ready for trial in the other proceeding
  - not applicable
- impact of the stay on the parties and the balance of harms
  - delay harms both senior lien holders and the Debtors as any equity is eroded on a daily basis; the Debtors and its estate are protected by applicable procedures under state law

22

51.    With respect to Debtors' Junior Liens which are wholly under water, it is assumed that the Debtors would concede that relief from the stay is appropriate as there is no basis to assert that a valueless lien upon Non-Debtor property is somehow necessary to an effective reorganization.

52.    The Motion should be denied as it imposes burdens upon Chase which are not required under the Bankruptcy Code and does not propose to finally resolve anything even if Chase should comply with the Debtors' proposed procedures. Respectfully, Chase would prefer to be before this Court which would apply the Bankruptcy Code, during a promptly convened hearing pursuant to Bankruptcy Code §362(e).

### Point IV
### The Stalking Horse Bidder Is Not A Proper Party To Any Decision Concerning Relief From The Stay

53.    It is apparently not enough that the Debtors seek to obtain rights that they do not have under state law or the Bankruptcy Code. The Debtors seek to vest third parties, including the Stalking Horse Bidders, with the ability to participate in a settlement process involving the Debtors' business judgment.  Indeed, such third parties are afforded the right to demand information and object to a Request for Relief.

54.    The Debtors do not address the standing of the Stalking Horse Bidders to participate in what is essentially a decision to compromise and settle a dispute pursuant to Bankruptcy Rule 9019. In *In re Adelphia Communications Corp.*, 371 B.R. 660, 670 n. 54 (S.D.N.Y. 2007), the District Court analyzed the key Second Circuit cases involving the ability of a debtor to delegate certain duties to another fiduciary of the estate, an official committee of unsecured creditors.

23

55.    District Judge Scheindlin, analyzing, among other cases, *Unsecured Creditors Comm. of Debtor STN Enters, Inc. v. Noyes,* 779 F.2d 901 (2d Cir. 1985), *In re Smart World Techs, LLC.,* 423 F.3d 166 (2d Cir. 2005) (while a creditor may be granted STN standing under Bankrutpcy Code §1109(b), pursuant to Bankruptcy Rule 9019, only the Debtor may settle and compromise matters); and *In re Caldor,* 303 F3d 161 (2d Cir. 2002), concluded that the debtor in possession in a Chapter 11 is charged to act "***as a legal representative and fiduciary of the estate***" and that there are limitations to the ability of a debtor in possession to delegate certain duties to even another fiduciary, including the duty to settle or compromise matters on behalf of the debtor. 371 B.R. at 670. *See also In re General Growth Properties, Inc. 426 B.R.* 71, 74 (Bankr S.D.N.Y. 2010).

56.    The Debtors do not attempt to address the complex issues under STN to support any delegation of authority to parties such as the Stalking Horse Bidders, who are arguably not parties in interest for these purposes and clearly not fiduciaries to the estate. The Stalking Horse Bidders are not fiduciaries of the estate as their interests are to maximize their profits from the purchase of assets of the estate. *See, e.g., In re Global Crossing Ltd.,* 295 B.R. 726, 737 (Bankr. S.D.N.Y. 2003) (in its capacity as a bidder, the interests of the bidder are materially contrary to the all of the debtors' other creditors).

57.    It is also questionable whether the Stalking Horse Bidders even have standing to participate in any proceedings in this case other than with respect to matters which challenge the intrinsic fairness of the sale process to which they are a party. *See, e.g., In re Gucci,* 126 B.R. 380, 388 (2d Cir. 1997) (disappointed bidders lack standing to challenge approval of a sale); *In re Colony Hill Assoc.,* 111 F.3d 269, 274 (2d Cir. 1997) (unsuccessful bidder has standing to

24

challenge only the intrinsic fairness of the sale process); *Wallach v. Kirschenbaum,* 2011 WL

2470609 at *4 (E.D.N.Y. 2011) (unsuccessful bidders generally do not fall within the zone of

interests to be protected by the Bankruptcy Code).

58.     Thus, including the Stalking Horse Bidders in the Request for Relief decision making

process, as contemplated at paragraph 17 of the Motion, is improper and should not be permitted.

### Conclusion

59.     Chase agrees that there should be an orderly and efficient procedure to process motions

for relief which may be filed by senior lien holders, such that the Debtors receive adequate notice

of state court foreclosure proceedings and can monitor their right to receive any excess proceeds

from a duly conducted foreclosure sale. The Motion as filed goes too far to protect the Debtors at

the expense of senior lien holders.  The Motion impermissibly alters burdens of proof, assumes

legal rights which do not exist, and indefinitely delays the ability of senior lien holders to enforce

their state law rights.  The Motion shifts all risks and costs of delay upon the senior lien holders

without providing any means of adequate protection.

60.     The Motion can be modified as set forth in the Response suggested by Chase.

61.     Chase remains willing to try to work with the Debtors to modify the Motion, but must

object to the Motion in its present form for the reasons set forth herein.

WHEREFORE, Chase respectfully requests that the Motion be denied in its entirety and

that the Court grant such other and further relief as may be appropriate.

Dated: September 19, 2012          **TEITELBAUM & BASKIN, LLP**
*Attorneys for JPMorgan Chase Bank, N. A.*

By:/s/ Jay Teitelbaum
    Jay Teitelbaum
    1 Barker Avenue
    Third Floor
    White Plains, New York 10601
    (914) 437-7670
    jteitelbaum@tblawllp.com