Wendy Alison Nora                                    Hearing Date: September 27, 2012
210 Second Street NE                                 Hearing Time: 10:00 a.m.
Minneapolis, Minnesota 55413
Telephone: (612) 333-4144
Facsimile: (612) 886-2444
E-mail: accesslegalservices@gmail.com
*admitted pro hac vice*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

RESIDENTIAL CAPITAL, LLC                             Chapter 11
a/k/a RESIDENTIAL CAPITAL CORPORATION                Case No. 12-12020-mg
1177 Avenue of the Americas                          Jointly Administered
New York,  New York 10036
        Debtor

---

PARTIAL JOINDER IN MOTION FOR APPOINTMENT OF BORROWERS' COMMITTEE
AND REPLY TO OBJECTIONS OF THE DEBTORS AND  UNSECURED CREDITORS'
COMMITTEE TO THE APPOINTMENT OF A COMMITTEE TO PROTECT
THE INTERESTS OF THE BORROWER CLASS OF CLAIMANTS
(ALL RIGHTS RESERVED)

---

**PLEASE TAKE NOTICE** that Wendy Alison Nora, admitted to practice before this

Court in the above-captioned consolidated proceedings *pro hac vice*, and holding a claim against

the Debtors' estate for its racketeering activities, which seeks punitive damages based upon the

ubiquitous pattern and practice of creating forged, perjured and fictitious documents throughout

the nation, by a process now commonly known as "robo-signing," in order to confiscate homes

for claims of indebtedness not owed to the enterprise, joins in the motion for appointment of a

Borrower's Committee as made by the Movants and on these additional grounds.

Despite the protestations of the Debtors and the Committee of Unsecured Creditors in

their objections to the appointment of the Borrowers' Committee because they contend that there

1

is inadequate justification for the appointment in the motion to appoint an additional official

committee of a unique and significant class of interested parties, who are being denied a voice in

these proceedings, the motion must be granted for the reasons stated by the Movants, these

additional grounds and upon the record of these proceedings. Additionally, and without any

further proceedings, it is time for this Court to act sua sponte to appoint an official committee to

prevent the continuing abuse of process in these proceedings. 11 USC sec. 105(a) provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to
> carry out the provisions of this title. No provision of this title providing for the raising of
> an issue by a party in interest shall be construed to preclude the court from, sua sponte,
> taking any action or making any determination necessary or appropriate to enforce or
> implement court orders or rules, or to prevent an abuse of process.

There is undisputed evidence in this record that the Debtors have confiscated homes

under foreclosure and eviction processes throughout the nation without the legal right to do so.

The Debtors list hundreds of real estate assets on their Schedules A, many which were taken

without the legal right to do, by the creation of false documents through the process of robo-

signing.[1] How can this be proven? The Debtors have admitted that they have taken homes

without legal standing to do so in United States of America, et al. v. Bank of America, et al. in

the United States District Court for the District of Columbia, Case No. 12-cv-361, commonly

known as the National Mortgage Settlement.

Debtors have admitted in this case that, as to the home of the undersigned, one of the real

estate assets they have listed is "her home" and "her property." Docket Entry 1268. Robo-

---

[1] Robo-signing includes robo-stamping and covers a wide variety of forged, perjured
and/or falsely sworn documents primarily created at the offices of Debtors GMAC Mortgage,
LLC and Residential Funding Company, LLC and when that term is used in the Joinder, it means
any or all of those acts.

signing misconduct occurred in the case involving the home of the undersigned which was not

discovered until the judgment of foreclosure was entered and the direct time for appeal had

expired.  Review of the standing of one of these Debtors is now pending before the Wisconsin

Court of Appeals from trial court order denying her motion to vacate the judgment of foreclosure

based on robo-signed documents which were produced to the court as false proof of standing of

Residential Funding Company, LLC which is a Debtor in these consolidated cases in Case No.

12-12019.

Motions to vacate void orders and the right to commence actions for equitable relief

based upon fraud, along with the rights to  appeal from the denial of the motions to vacate or

dismissal of independent actions for fraud are available to directly and collaterally attack

foreclosure judgments granted to any party taking real estate assets without standing to seek the

remedy of foreclosure in judicial foreclosure cases.  These judicial  remedies are recognized in

virtually all of the 23 judicial foreclosure states under statutes and rules of Court which are

substantially similar to Rule 60 of the Federal Rules of Civil Procedure (FRCP).  See FRCP

60(b), ( c) and (d).   Therefore, the Debtors' theory that they can lay claim to any real estate

assets they have taken by foreclosures after the expiration of their defined "challenge period,"[2]

fails as to any real estate taken by robo-signed documents.

Void judgments of foreclosure procured by robo-signing fraud for proof of standing can

be set aside at any time, because they are of no force and effect, as under FRCP 60(b)(4).  Time

limitations as at FRCP 60(c) do not apply to relief from void judgments.  Likewise, the FRCP

60( c) time limitations do not bar relief from robo-signing  injustices as at FRCP 60(b)(6).

---

[2]  Order of July 13, 2012, paragraph 14(a)

3

Independent actions can be commenced for relief from judgments procured by fraud as at

FRCP(d).    Debtors claims to assets taken by foreclosure in judicial states is not confined to

what Debtors imagined was only the time for direct appeal from foreclosure judgments.    Real

estate assets taken by judgments procured by fraud can be recovered by independent actions.

Void judgments may be set aside at any time because such judgments have no force and effect.

Debtors admitted that they have claimed the home of the undersigned listed as an asset of

the estate in Case No. 12-12019 because their counsel knows that the foreclosure and eviction

actions with respect to that specific asset is still on appeal in the Wisconsin Court of Appeals.

The undersigned's case on appeal  in Wisconsin seeks relief from the foreclosure ordered in that

case.  It is pending.   Among the issues on appeal is that the foreclosure is void for lack of

standing to foreclose in a judicial foreclosure state, which standing was fraudulently represented

to the trial court by the production of and reliance upon robo-signed documents in the trial court

proceeding to make it appear that one of the Debtors had standing to proceed.  Based on the

Debtors' admission in the National Mortgage Settlement that they have taken real estate assets

through foreclosure without standing to do so, real estate assets claimed to be owned by the

Debtors which were taken by foreclosure (the majority of the real estate assets listed on

Schedules A filed by these Debtors) must be examined to determine if the Debtors claim to

ownership of those assets is founded upon robo-signed documents without regard to the Debtors'

imaginary "challenge period."

No investigation has yet been undertaken by the Committee of Unsecured Creditors as to

the legitimacy of the Debtors' lists of real estate assets purportedly owned by Debtors because

the Committee of Unsecured Creditors appears to be unaware of this significant issue: that

4

Debtors are claiming ownership of properties which they do not own.   No one from the

Committee of Unsecured Creditors appeared to examine the Debtors at the First Meeting of

Creditors on July 27, 2012,  which took place after the Schedules were filed in this case.   There is

the considerable evidence that the Committee has a conflict of interest with homeowners whose

assets are currently subject to liquidation as assets claimed by the Debtors or which Debtors are

bringing in to their estates through litigation continuing under this Court's final order of July 13,

2012 which modifies the automatic stay in these proceedings and from which order but one

appeal is pending: that of the undersigned herself.

The undersigned believes that the Committee of Unsecured Creditors is simply unaware

of the issues which have arisen by robo-signing fraud which is the core of these Debtors'

business operation.   With respect to the matters which are recognized by the Committee, the

Committee has been diligent, highly competent and effective in representing the constituency of

unsecured creditors at every stage of these proceedings.   With respect to the issues raised in this

joinder and implied in the Motion under consideration, the Committee is simply unaware of the

implications of the robo-signing foreclosure fraud and how that conduct of the Debtors creates

conflicts of interest for the Committee as described herein.

The confiscation of homes in the ordinary course of business operated by these Debtors

increases the asset base of the estate and is an advantage all other creditors in these proceedings,

including the Committee of Unsecured Creditors, which has the lawful duty to maximize the

value of the estate for the benefit of the unsecured creditors.   But the unavoidable truth is that the

homes being confiscated are almost always been taken illegally by the Debtors' general reliance

on robo-signed paperwork as the basis for its foreclosure claims. Although the class of interested

5

parties who are or were owners[3] of homes which have been or are being foreclosed are in danger

of being liquidated in these proceedings also have contingent claims for a variety of law

violations,  they are not mere contingent claimants for damages arising from Debtors  conduct.

They have superior claims to the real estate assets over the Debtors if the Debtors base their

rights to bring foreclosure claims on robo-signed documents.

      The class of interested parties are the actual owners of the homes which have been taken

by fraudulent and void foreclosure processes in the many instances where robo-signed paperwork

is the basis for the claim of standing or right to foreclose is not represented in these proceedings,

yet their assets are subject to liquidation by Debtors for the benefit of all other classes of interests

in this case.   The undersigned believes that this class of interests should be designated "Robo-

Signing Fraud Claimants," because the class of "Borrowers" is too broad to address this core

constituency whose rights to ownership and possession of <u>their own property</u> is at stake in the

Debtors' proposed reorganization.  Their interests are unique but they lack the knowledge,

capability and resources to be heard in these specialize bankruptcy proceedings in the forum

chosen by the Debtors for the Debtors' benefit at a remote location from most of the class

members.   A miscarriage of justice is resulting from the lack of understanding by the Committee

of Unsecured Creditors which is the only current official committee charged with the protection

of  their interests, but these are not mere unsecured creditors with contingent claims: they are

owners of real estate assets against which the Debtors are making false claims.

      The "Robo-Signing Fraud Claimants" have far more rights than those which Debtors

claim to have permitted them to have thus far.  The very fact that the Debtors claim that they

---

[3] Including homes in lien states and deed of trust states

have accorded the class of Robo-Signing Fraud Claimants certain rights in these proceedings is

beyond ironic.  It is not just akin to a thief telling the Court what the rights of the owner of the

property are in a conversion case and having the Court grant the true owner of the stolen property

only the rights that the thief will allow, it is exactly that and more.  Without an official committee

to speak on behalf of this class of claimants, the thief will continue to steal properties and use the

proceeds of  stolen properties to fund its reorganization in bankruptcy court.  The theft of title to

real estate assets by the use of fraudulent documents for the proof of the false claims to

confiscate the assets is per se racketeering in violation of 18 USC sec. 1961, et seq. when the

thief transmits fraudulent documents through the US mail (18 USC sec. 1341) and by wire (18

USC sec. 1343) and may also constitute money laundering in violation of 18 USC sec. 1956.

  The Committee of Unsecured Creditors has not been able to identify or articulate the

interests of the class of Robo-Signing Fraud Claimants in these proceedings nor has it taken any

action to prevent the Debtors from planning to use the proceeds of liquidation of stolen

properties because that is simply outside the scope of its recognized duties.  It is not to be blamed

for this, but it may be accountable for breach of fiduciary duty to this class of claimants where it

now appears before the Court to claim that it does represent this class of claimants.  If it believes

that it is charged with representing this class of claimants, it should immediately realize that it

has conflicts of interest in that the real estate assets owned by this class must not form the basis

of any plan of reorganization for the benefit of unsecured creditors.  By allowing the Debtors to

use proceeds of its racketeering enterprise to pay unsecured claims in these proceedings,  while

the Committee claims to represent the class of claimants whose assets are being taken by fraud,

is a conflicted position.  A separate, official committee must be created under the circumstances

of this case.

In judicial foreclosure states,  relief can be had from fraudulently procured judgments and void orders entered in favor of the Debtors who almost always lack standing to proceed in state courts.  Foreclosure judgments are void where robo-signed documents were used to give the false impression that the Debtors had standing to pursue the remedy of foreclosure in state courts.[4]  In every non-judicial foreclosure state, the requirements of proper documentation are even more stringent because the statutory right to foreclose without court supervision requires strict compliance with the statutes' terms.[5] Claims for the recovery of the homes taken by forged documents may also be brought to the courts in both judicial and nonjudicial foreclosure states and the Debtors' imagined "challenge period" (see below) is not a statute of limitations whereby they can claim ownership of properties taken in that manner.

It is unfortunate that the Movants' individual claims were not more thoroughly examined prior to the characterization of the committee for which appointment is requested as a "Borrowers' Committee."   The Robo-Signing Fraud Claimants,  who are entitled to the return of or continued possession of their homes where Debtors are not the lawful party to seek foreclosure and/or conduct the sale, usually cannot be shown to have "Borrowers" from these Debtors.  If Debtors were the servicers of the mortgage loans, the lender is often an undisclosed principal and may have already been paid in full.   If Debtors were the original lenders, they have often been paid more than once in the securitization process by the underwriter, funds belonging to the

---

[4] Cf.  America's Wholesale Lender v. Pagano, 866 A.2d 698, 87 Conn.App. 474 (Conn., 2005)

[5]Cf.  U.S. Bank, N.A. v. Ibanez, 458 Mass. 637, 941 N.E.2d 40 (Mass., 2011)
    Bain v. Metropolitan Mortgage Group, Inc., et al.  (Wash., 2012)

8

Residential Mortgage Backed Securities (RMBS) Trusts, the insurers of those trusts, by

counterparties on derivative contracts, by multiple sales of the same loan obligation and, in many

cases, the loans have been paid by the United States Treasury under the Troubled Asset Relief

Program (TARP) at 12 USC sec. 5212. Subrogation issues then arise in favor of insurers (who

are unsecured creditors),  guarantors (who are unsecured creditors)  may be entitled to receive

liquidation proceeds on claims paid and the United States Treasury may even be the real party in

interest as the purchaser of the bonds created in the securitization process.

This is the core problem with the robo-signing frauds throughout the nation:  the

ownership of the confiscated real estate assets and current mortgages on the assets cannot be

established after the real estate has been confiscated.  The real estate title and rights of possession

still reside with the original title holders (mortgagors) or beneficiaries of deeds of trust.  Yet, to

date, the Committee of Unsecured Creditors,  which claims to represent the interests of the

"Borrower" class, does not even recognize the fundamental conflict of interest that its

constituency, other than the "Borrower" class, benefits from the liquidation of illegally

foreclosed real estate assets.   No Plan should be approved which relies upon the liquidation of

assets not lawfully owned by the Debtors.

The additional expenses to the estate for the review of the Debtors' claims of ownership

is obviously unwanted by the Debtors and may be unwanted by the Committee of Unsecured

Creditors, but nothing could be more important to the integrity of this Court than to assure that

the real estate assets claimed by the Debtors actually belong to the Debtors.  As to real estate

assets which have been  lawfully taken by the Debtors the Plan must assure that the liquidation

proceeds are paid to the real party in interest.

9

Review of the Debtors' claims to the real estate assets must properly consist of an examination of the original note and mortgage or mortgage assignment to determine the authenticity of the endorsements on mortgage notes and execution of mortgage assignments. The first review would separate suspect documents from valid documents and suspect documents would then be subject to in-depth examination. This is exactly what should have been done before the properties were foreclosed. "Borrowers," however, could not obtain counsel and lost their cases by default or summary judgment without the benefit of document review in the judicial foreclosure states. In those cases, the documents were presumed to be valid or were not required to be produced at all (this is particularly true of mortgage notes which were not produced for many years) by courts or by trustees under powers of sale, which proceeded without actions for injunctions in nonjudicial foreclosure states.

The homes foreclosed by robo-signing do not become the property of the Debtors after the "challenge period" expires[6] because remedies from the underlying fraud are still available in every state.    The class of unsecured creditors represented by Committee of Unsecured Creditors are not entitled to distribution of the residual proceeds of the liquidation of illegally foreclosed homes. Yet the Committee is currently simultaneously charged with the fiduciary duty of representing the robo-signing fraud claimants to the extent that they might be entitled to monetary damages. The Committee cannot act as a fiduciary to a discreet class which is having its hard assets illegally liquidated in order to provide payments to the other unsecured creditors. Others in the class of unsecured creditors may have rights to receive such payments from the Debtors by subrogation and may be the real parties in interest to whom the underlying mortgage

---

[6] Whenever that might be is a case by case determination at law and also in equity.

10

payments are owed but none of these issues have yet been identified.

The Debtors are using and are continuing to use proceeds of the illegally foreclosed homes which are liquidated in the ordinary course of business or by de minimus sales to fund their on-going operations.   The priority and superpriority creditors entitled are poised to receive priority payments and are receiving payments from the liquidation of  illegally foreclosed homes in these proceedings.   The elephant in the room is the robo-signing practice, which is not being acknowledged as the basis for the Debtors claims of ownership of foreclosed homes which are being liquidated in this case. Debtors have been permitted to continue to attempt to acquire additional homes by robo-signing and liquidate those assets in this case because there is no current oversight by the Court, the United States Trustee or the Committee of Unsecured Creditors.  The issue has not been given the attention it must receive in these proceedings.   The appointment of a "Borrowers" Committee which represents interests of the past and present homeowners against whose real estate interests robo-signed foreclosure practices have been and are being employed is essential to prevent the miscarriage of justice resulting from Debtors' claims to the real estate assets.

Debtors are proceeding to foreclose homes and evict the residents of the homes in order to pay the claims of the other creditors represented by the Committee.  The Committee argues that the motion for the  appointment of the Borrowers' Committee has been made for an improper purpose.  On page 1 in the first paragraph of the Committee's Preliminary Statement, the Committee states, " . . .  the relief requested would serve an improper purpose as the Movants apparently seek to gain official status in order to advise individual borrowers holding contingent unsecured claims with regard to their personal legal rights and defenses *vis-a-vis* the Debtors in

11

pending and threatened foreclosure actions."  Although the Movants may appear to be saying that

the proposed "Borrowers'" Committee would play such a role,  the Committee's interpretation of

the motion demonstrates that the Committee has no understanding of the issues facing the class

designated by the Movants which have been  characterized as  "Borrowers" and the Movants

themselves are having difficulty articulating the issues which distinguish the class which seeks

official status: their homes are being illegally taken to fund the Debtors' reorganzation.

The major  problem faced by the class of "Borrowers" is that the Debtors are seeking to

foreclose and have foreclosed on properties in which the Debtors have no lawful interest and the

Debtors, through their GMAC Mortgage, LLC (hereinafter "GMAC Mortgage")  and Residential

Funding Company, LLC (hereinafter "RFC, LLC") operations, have created robo-signed

documents to pursue and accomplish foreclosures throughout the nation.    The Unsecured

Creditors Committee cannot represent the class of "Borrowers" whose homes have been and are

being foreclosed because the other classes of unsecured creditors to which it owes a fiduciary

duty clearly benefit from the confiscation of homes because the Debtors estates are enriched

when the homes are taken.  Many of the members of the class of "Borrowers" are damaged  by

unlawful foreclosures and evictions on robo-signed documents.  All other constituencies

represented by the Committee are the beneficiaries of the illegal liquidation of the real estate

assets.  The sole representative on the Committee for contingent borrower claims makes no such

claim in her pending litigation.  The claim of Rowena L. Drennan and others in her specific case

is for damages only.  There is no claim in the Pennsylvania class action in which Ms. Drennan is

a participant that the Debtors took those homes with robo-signed (forged and perjured)

documents.  She could no more represent the class of persons with claims for robo-signing fraud

12

than any other member of the Committee.  One has to see the robo-signed documents to be able

to recognize the issue.  That is not Ms. Drennan's issue.

While the Debtors congratulate themselves for having created an "unprecedented"

remedy for homeowners by allowing them to proceed to defend themselves in current foreclosure

and eviction proceedings, the "unprecedented" remedy is the result of the unprecedented

authority granted to the Debtors by the modification of the automatic stay which permits the

Debtors to proceed to litigate foreclosures and evictions throughout the nation.  The remedy was

created by the Debtors themselves and approved by the Court because the Debtors claimed that

the continuation of their foreclosure practices was for the greater benefit of the public.  The

public cannot benefit from having its institutions of justice approve the continuation of Debtors'

illegal acts.   The very speed of these proceeding fails to protect the interests of homeowners who

have already been and are in the process of facing foreclosure and eviction on the basis of robo-

signed documents, just as it is now becoming evident that the speed with which the Debtors are

attempting to obtain court approval of the RMBS Trustee's settlement is being used exclusively

for the Debtors' benefit, while they refuse to meet their discovery commitments and obligations.

The RMBS Trustees are well-represented and can push back against the Debtors attempt to

withhold necessary information and force a settlement through these proceedings with

compliance with the law.  The interests of the homeowners as a class are not represented in these

proceedings.

The undersigned was the only voice in opposition to the continuation of foreclosures and

evictions which resulted in the entry of the Final Order of July 13, 2012.  The taking of homes

by robo-signed documents has not yet been addressed in these proceedings.  Although the

13

undersigned attempted to have the Court stay all foreclosures and evictions to protect the

homeowners from further foreclosures and evictions based upon robo-signing fraud, Debtors did

not engage her in any negotiations.   When the undersigned inquired what the Debtors intended

to arrange for the claims of homeowners at the First Meeting of Creditors on July 27, 2012, the

answer she was given was that the Debtors would treat those issues in their Plan.   Clearly the

Debtors believe that they can arrange to make a token payment for the homes that they have

taken and are taking illegally, but the homeowners whose homes have been and are being taken

by robo-signing fraud are entitled to have their homes returned to them so that they can pay the

real party in interest which robo-signing practices deliberately conceal.

Rarely is the Debtor the real party in interest entitled to payments on the mortgage loans

or robo-signing would not occur. Generally, nothing can be shown to be owed to the Debtors and

the Debtors do not represent  any real party in interest with lawful documentation of the

indebtedness and the corresponding entitlement to the remedy of foreclosure as a lawfully

secured creditor.   Debtors do not get a "free house" by making a false claim for foreclosure on

the basis of robo-signed documents, whether those documents are prepared in house at their own

robo-signing locations or by a third party robo-signing enterprise, if no debt can be lawfully

claimed to be owed to the Debtors.   And the creditors in these proceedings do not have a legal

right to the proceeds of liquidation from homes foreclosed by the Debtors where only robo-

signed paperwork is the basis for the Debtors' foreclosure claims.

Neither the Debtors nor any of their estates can obtain free houses through robo-signing

fraud and the estate cannot use liquidation proceeds from illegally confiscated homes to pay

obligations of the Debtors for on-going business expenses, "super-priority" claims,  priority

14

claims, secured claims, or unsecured claims (whether liquidated or contingent.)  To treat the

owners of the homes which were taken and are being taken by robo-signing fraud  as mere

contingent claimants is an error of law brought about by the wrongful conduct of the Debtors

themselves, who conceal the true facts from this Court,  many of their creditors and the thus far

uninformed Committee of Unsecured Creditors.   There is reason to believe that the Office of the

United States Trustee, being a part of the United States Department of Justice, is well-aware of

the robo-signing issues as a party to the National Mortgage Settlement,  but to date, it has taken

**no** action to stop these frauds in progress.  Instead, the Office of the United States Trustee has

failed to examine the thousands of pages of Schedules and Statements of Financial Affairs at the

First Meeting of Creditors held on July 27, 2012 which lasted slightly more than an hour for 51

entities, obtaining a mere generic affirmation from RESCAP's CEO, James Whitlinger, that he

signed the Schedules and Statements for all the entities and that they are true and correct.  Small

business debtor cases are given far more scrutiny in every case the undersigned has ever handled.

This is a mega-case with millions of dollars in assets and enormously complex financial

relationships.  It almost appeared as if the Office of the United States Trustee was representing

the Debtors.  No questions were asked by the Committee of Unsecured Creditors at the First

Meeting at which James Whitlinger and other employees of the Debtors were under oath.

   Although it is indeed unprecedented that the Debtors are being allowed to continue to

litigate in foreclosure and eviction proceedings throughout the nation with virtually no

supervision by this Court, what has actually been accomplished is extraordinary and not possible

under the Title 11 of the United States Code. The Debtors are allowed to continue to foreclose on

homes and evict the residents of the homes when they have no legal right (standing) to do so.

15

The Debtors, by putting boiler plate language into the many of the initial orders entered by this Court reciting their intention to comply with the the provisions of the National Mortgage Settlement have led the Court to believe that the Debtors are complying with the National Mortgage Settlement[7] which could only be taken to mean that they are no longer engaging in robo-signing.   Debtors are currently engaging in foreclosures based on robo-signed documents.

Counterclaims for robo-signing fraud are required to be pursued in this Court, without "Borrowers" having any rights to offset successful direct claims or counterclaims against the mortgage debt claimed by the Debtors for which they seek the remedy of foreclosure in state court judicial proceedings.    The class of interested parties subject to foreclosures by false, fictitious, forged and fabricated documents are not, first and foremost, concerned with the recovery of monetary damages.  Real estate is unique.  A person's home consists of far more than a monetary value; it has intangible value for which monetary compensation is not equivalent. These principles are so well-known as the foundation of the laws of this nation, that the undersigned challenges the Debtors and the Committee to cite one case contrary to these principles, so that this overworked foreclosure defense  lawyer,  who has appeared in these proceedings primarily for the benefit of persons who cannot yet be heard,  does not have to cite to the entire history of Anglo-American jurisprudence from the original Statute of Frauds in 1671 to the real estate law of every state in this nation.

What is ultimately the most unprecedented aspect of this case is that the Court being so tragically misused in connection with the Debtors' confiscation of real estate with robo-signed

---

[7]  United States of America, et al. v. Bank of America, et al. in the United States District Court for the District of Columbia, Case No. 12-cv-361.

documents .  The continuation of robo-signing fraud under the interim orders and the Final Order

of July 13, 2012 modifying the automatic stay was allowed because there was no one in a

recognized official capacity to be heard on the nature and extent of the frauds being committed

thereunder.   Judge Glenn himself is familiar with robo-signing frauds, having disapproved of the

practice on the record and in Chapter 13 cases which he has decided.  The only possible

explanation for the continuation of the assault on property rights emanating from these

proceedings is that Judge Glenn believes that robo-signing is not a business plan, but is limited to

the cases which he has actually had before him.  It is difficult to believe that an entire enterprise

and, worse yet, an entire industry is engaged in racketeering practices, but that is the case,  as

many foreclosure defense attorneys have come to realize.

The undersigned  heard Judge Glenn warn one Borrower, Kenneth Taggart that he might

consider holding Mr. Taggart in contempt of the automatic stay for commencing an action for

robo-signing fraud in his foreclosure  after the automatic stay went into effect on May 14, 2012.

Mr. Taggart's position is that the foreclosure was continuing on the basis of robo-signed

documents.   Strangely, Judge Glenn suggested to Mr. Taggart that the foreclosure proceedings

were "in rem" proceedings in Pennsylvania which is never the case unless Mr. Taggart's personal

liability for the debt had already been discharged in bankruptcy.   Foreclosure actions are

otherwise always in personam because the equity of redemption, which belongs to the mortgagor

is a personal right and belongs to the mortgagors' heirs upon the demise of the mortgagor.

Pennsylvania is a judicial foreclosure state.   Foreclosure is an equitable remedy and the

Plaintiff must have clean hands to seek the equitable remedy of foreclosure.  Commencing a

foreclosure action with forged documents constitutes unclean hands.   Under the July 13, 2012

Order modifying the automatic stay, all that Mr. Taggart is allowed to do outside of commencing

an adversary proceeding in this Court is to defend against the foreclosure while the Debtors were

given carte blanche to seek to foreclose on Mr. Taggart's property with robo-signed documents.

There is no current mechanism to stop the fraudulent litigation against Mr. Taggart and countless

other homeowners because the Debtors have heretofore gained this Court's approval to proceed

without supervision of this Court to take homes based on robo-signed documents.

While Judge Glenn is capable of identifying robo-signing in well-argued individual

Chapter 13 cases, most homeowners do not have lawyers and most judges throughout the nation

do not even recognize that they are looking at forged documents when pro se homeowners

express their concerns.  Trustees in nonjudicial foreclosure states also lack that insight.  To stop

the abuse of this Court's Final Order of July 13, 2012, it is necessary to appoint an official

committee to investigate the Debtors' reliance on robo-signed documents to claim title to and to

seek to obtain title to homes throughout the nation under 11 USC sec.1102(a) which are sought

to be illegally liquidated in these proceedings.

There is no voice for the thousands of homeowners who are being injured every day

because the Committee of Unsecured Creditors does not have the ability to recognize the

fundamental issue that homes have been taken by the Debtors using robo-signed documents

which are claimed as assets in this estate and which are being foreclosed by the Debtors to

"maximize the value of the estate."  If Mr. Taggart's property is taken by the Debtors, the

Committee of Unsecured Creditors sees it as its duty to make sure that unsecured creditors will

share fairly in the proceeds of the liquidation Mr. Taggart's home.  The same is true of the home

which the Debtors admit belongs to the undersigned because, even by their own standards of

18

"ownership," which is that the "challenge period" (appeal time) has not expired, the home, by

their own admission, does not belong to the Residential Funding Company, LLC( RFC, LLC)

estate. Her case is on still appeal, but her home is already claimed as an asset of the estate of

RFC, LLC.   From the point of view of the Unsecured Creditors Committee, the general class of

unsecured creditors might benefit from the proceedings of the liquidation of the home of the

undersigned, Mr. Taggart's home, Corla Jackson's home, Ray Elliott's home, the homes in

which Paul Papas has interests, and thousands of others  if they are taken and  sold out of the

estate in the ordinary course of business or in bulk as de minimus sales.  In this "mega-case,"  the

rights of the people who actually own the real estate assets which the Debtors seek to confiscate

and liquidate are being subordinated to other creditors.

Debtors cannot bring assets into their estates that are owned by third parties.   Debtors

cannot liquidate assets that they do not own, whether by de minimus sales or in the ordinary

course of business.   Yet, without an official committee for "Borrowers," who are  Robo-Signing

Fraud Claimants,  to assure that such assets are not included in the Plan or to move the Court for

global relief from the ongoing robo-signing frauds, it is being made to appear that the Court is

approving illegal actions by the Debtors who are, in fact, laundering land titles because the Court

has not been fully informed of the facts, circumstances and implications of the abuse of these

proceedings.

The "Borrowers" in this case cannot be protected by the Committee of Unsecured

Creditors.  Ms. Rowena L. Drennan is not a borrowers' attorney, as the Movants mistakenly state

in their Motion. She is a borrower in a case in a consumer law violations claim in which  robo-

signing is not an issue.  Because Ms. Drennan is not an attorney and she is not claiming property

19

rights superior to robo-signed documents, she is no more familiar with robo-signing than anyone

else on the Committee.  That the Committee asserts that Ms. Drennan is capable of representing

the issues which arise from robo-signing in this case is simply more evidence that the Committee

is unaware that Debtors are confiscating and liquidating  assets based on robo-signed (forged)

documents.

This case requires representation of the class of "Borrowers" who have had their homes

taken by robo-signed documents and who are in the process of having their homes taken by robo-

signed documents.  If the Committee of Unsecured Creditors had one single member who

represented the class of homeowners who are confronted with robo-signed documents as the

basis for the taking of their homes, the Court would have been informed of the issues raised by

this joinder much earlier.

Without any official committee taking proper action in this case, only the undersigned has

tried to raise the robo-signing issue on behalf of herself and all persons similarly situated.  Other

robo-signing fraud claimants have tried to proceed by seeking to lift the automatic stay to allow

them to pursue counterclaims, but they have been deceived by the posture of the case constructed

by the Debtors.  It is not damages that they seek primarily--they seek to save their homes.   It may

be a shock to the Debtors,  who operate in a worldview whereby they imagine the "velocity of

money" will resolve their financial issues,  a small dividend on a hard fought contingent claim

from a remote bankruptcy court cannot replace a family's home.

As a person who has confronted robo-signing in her own case and who represents

homeowners in foreclosure and bankruptcy proceedings[8] in which robo-signed documents have

been produced to attempt to establish the claimants' standing, the undersigned attempted to

inform this Court of her knowledge, based upon her considerable experience defending

homeowners and consulting with other attorneys who defend homeowners against robo-signing

frauds wherein the Debtors and other false claimants are attempting to confiscate homes to which

they are not entitled by continuing to rely upon  robo-signed documents created by these Debtors

and other purported "servicers."   Whereas she sometimes pleads racketeering as well as

violations of the Fair Debt Collection Practices Act when she brings direct claims, counterclaims

and adversary proceedings, the main issue in all of her cases is the defense of the real estate

against false claims of standing based upon fraudulent documents presented to courts.

The appointment of  an official committee which is capable of identifying robo-signing

issues must be made in this unprecedented case.  Identifying the  robo-signing issues in this case

requires an understanding the nature of the fraud, the ability to identify the fraud, and the ability

to prove the fraud in order to remove illegally confiscated homes from the Debtors' estate,  so

that illegally confiscated homes are not funding the Debtors' Plan or ongoing business.  No one

with any present official capacity is capable of representing those interests in these proceedings.

Amelia Colvin, who is one of the movants for the appointment of the Borrowers'

Committee has saved her home from a robo-signed foreclosure fraud and is well aware of the

---

[8]  The undersigned has considerable experience defending homeowners against robo-
signing frauds in which claims of racketeering as well as violations of the Fair Debt Collection
Practices Act arise and she brings direct claims, counterclaims and adversary proceedings when
the situation permits.  Generally, homeowners cannot afford to defend themselves against robo-
signing fraud and if lawyers are to be retained, they must be retained on a  and cannot even fund
the expenses of their litigation, whereas each mortgage defense case  particularly those who are
in Chapter 13 and their plans already require all of their disposable income.

issue.  She is herself a banker and provided the research and analysis to her lawyer who

succeeded in a quiet title action on her behalf in Texas.  She now seeks damages, but she knows

the robo-signing issue from her own experience.  Having spoken to homeowners not yet involved

in this case, they are all robo-signing claimants.

Because the Debtors negotiated with the National Association of Consumer Bankruptcy

Attorneys (NACBA), "Borrowers" in bankruptcy proceedings may appear to have fared

somewhat better than "Borrowers" not in bankruptcy.  The "Borrower" or the Bankruptcy

Trustee in the "Borrower's" bankruptcy is allowed to offset certain claims against a Debtor's

proof of claim against a bankrupt "Borrower," if the language of paragraph 15(e) of the Final

Order of July 13, 2012 can be successfully navigated.   The Debtors refused to negotiate the

language of the Final Order with the undersigned, whose interests are the same as the interested

property owners who are not in bankruptcy.  Furthermore, the Debtors arranged to prevent her

from being heard on the approval of Final Order which they falsely claim to have been structured

as an act of generosity to "Borrowers" against whom they are litigating.  The Debtors have no

intention of structuring meaningful relief for the targets of their property confiscation scheme.

As to "Borrowers" in bankruptcy proceeding,  the Final Order of July 13, 2012, at

paragraph 15,  provides the following relief from robo-signing fraud in bankruptcy cases filed by

Borrowers:

Paragraph 15
(a). . . [A Borrower or Bankruptcy Trustee shall be permitted to] . . .
(i) assert and prosecute or continue to prosecute an objection to the Debtors' proof of claim filed
in the Bankruptcy Borrower's bankruptcy case; (ii) assert and prosecute or continue to prosecute
an objection to the Debtors' motion for relief from the automatic stay filed in the Bankruptcy
Borrower's bankruptcy case; (iii) commence or continue to prosecute against the Debtors a
motion or adversary proceeding, as applicable, to determine the validity, priority or extent of a
Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to

prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce (including to reduce to $0) or fix the amount of the Debtors' claim or lien against the Bankruptcy Borrower's property . . .

. . .

(e) with the sole exception of objections to Debtors' proofs of claim permitted by paragraph 15(a)(i) above and proceedings described in 15(a)(iii) above and solely for purposes of reducing any such claim and not for the purpose of obtaining an affirmative recovery or award, <u>under no circumstances shall a Bankruptcy Borrower or Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;</u>

Although 15(e) appears to take away everything gained by 15(a)(iv),  15(a)(iv) must have been intended to stand separately from objections to proofs of claim [15(a)(i)] and adversary proceeding to determine the validity, priority or extent of a Debtor's lien against the Bankruptcy Borrower's property [(15(a)(iii)].  Otherwise,  15(a)(iii) is a typographical error and Debtors meant to have 15(a)(iii) read 15(a)(iv).   It is difficult to find where the heralded offset is allowed in paragraph 15 of the Final Order of July 13, 2012,  because in proceedings brought solely to determine the validity, priority or extent of the Debtor's lien against a Borrower in the Borrower's bankruptcy, there would be no claim for recoupment, offset or collection of damages. Only in an adversary proceeding for determination of the amount which the Debtors owe to the Borrower under 15(a)(iv) could recoupment or offset arise.  To the extent that the provisions of paragraph 15(e) can be deciphered,  one might eventually conclude, upon careful reading and re-reading of 15(e), that the Borrower or Bankruptcy Trustee could not recoup, offset or collect a successfully litigated direct claim or counterclaim against a Debtor's bankruptcy claim and all that would remain is credit for payments made which were not otherwise accounted for by the Debtor in making its claim.  Worse, paragraph 15(e) appears to bind Borrowers in bankruptcy and Bankruptcy Trustees to an unlawful extension of the Debtors' automatic stay beyond its effective date of May 14, 2012.  Certainly the Court could not have intended that meaning

23

because the Debtors are not protected from their post-petition misconduct, unless they convert to

Chapter 7.

Debtors have been allowed to continue to use robo-signed documents to confiscate homes

after the filing of this bankruptcy.   This Court lacks the authority to permit the Debtors to

continue relying on robo-signed documents in their proofs of claim in bankruptcy and in state

judicial and non-judicial foreclosures because the Court cannot engage in or approve illegal

actions.  Robo-Signing Fraud Claimants are required to litigate in this Court the portion of their

claims for monetary damages up to May 14, 2012,  but what about the post-petition confiscation

of homes on the basis of the robo-signed documents?  At this point the Robo-Signing Fraud

Claimants must come to this Court to recover their homes because paragraph 14( b) of the Final

Order protects the Debtors from the termination of foreclosures of real estate assets illegally

taken through robo-signing as of May 14, 2012 in proceedings in state courts.

Paragraph 14(b) of the Final Order of July 13, 2012 provides:

(b) absent further order of the Court, the automatic stay shall remain in full force and effect with
respect to all pending and future Interested Party direct claims and counter-claims: (i) for
monetary relief of any kind and of any nature against the Debtors, except where a monetary claim
must be plead in order for an Interested Party to a assert a claim to defend against or otherwise
enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if
granted, would not terminate or preclude the prosecution and completion of a foreclosure or
eviction; or (iii) asserted in the form of a class action or collective action;

Robo-Signing Fraud claimants must immediately be allowed to an official voice in these

proceedings or this Court will be allowing an great injustice to occur and continue by requiring

all the  homeowners who have lost their homes based on  robo-signed documents come to this

Court and individually demand the return of their homes lest those homes be liquidated for the

Debtors' benefit and the benefit of other creditors.   It is generally impossible for each Robo-

24

Signing Fraud Claimant to come to New York to demand the return of their homes, even if they

knew that this is currently their only remedy.  Debtors make a point that these interested parties

received notice of the bankruptcy filing.  It is doubtful that the homeowners who have already

had their property confiscated received such a notice because the Schedules A were not available

to be filed until June 30, 2012 and Debtors would not have known the identities of the property

owners.  They still might not know the identities of the people from whom homes were illegally

taken by robo-signed documents because it appears that the Debtors assembled only a list of

confiscated homes based upon data obtained from their foreclosure agents (attorneys) throughout

the United States.  From the Debtors' point of view, these real estate assets belong to their estates

because they believe, on that basis of what their local counsel have told them, that the "challenge

period" has expired.[9]  As to the fact that the Debtors do not dispute that her case is on appeal,

they have so far not offered to return her home and her property to her, although she has asked

them to do so, despite their acknowledgment that even by their own narrow standards her home

cannot be property of their estates.  Rather, they boldly proclaim that they may choose to sell her

home in the ordinary course of business without notice, but conceded that they would provide her

notice if they chose to sell her home under the de minimus sales procedures they sought to

establish by order of this Court.  Simultaneously, they asked the Court to overrule her statement

that she should be entitled to notice under the de minimus sales procedures.  Docket Entry 1268.

---

[9]  The very term "challenge period" is presumptuous.  It suggests that the Debtors have
the rights to take homes throughout the nation  and that there is a limited time in which the Robo-
Signing Fraud Claimants can challenge them.  The Robo-Signing Fraud Claimants have
fundamental property rights which are enforceable by court action,  not some limited time to
"challenge" the taking of their homes permitted only by the Debtors' own interpretation of
myriad processes by which those rights may be pursued and enforced.

Debtors also have a yet-unrealized, major problem with the relief from the automatic stay to continue litigation.  Because Debtors continue to engage in litigation and sales of properties using robo-signed documents since May 14, 2012, injured parties should then free be to pursue the Debtors for robo-signing damages after May 14, 2012 and those claims will disrupt their reorganization plan because these will be post-petition damages claims and will not be dischargeable unless Debtors convert to Chapter 7.  Furthermore, claims founded upon fraud are not dischargeable upon objection of the defrauded party, but leaving that aside, if the robo-signed documents were fabricated before May 14, 2012 but used in court proceedings from May 14, 2012 into the future, "Borrowers"  are entitled to sue for the damages arising after May 14, 2012. The Debtors cannot claim that the act of forgery, perjury or false swearing that took place before May 14, 2012 bars the "Borrower" from proceeding against them because the documents were created before the automatic stay was ordered, regardless of date upon the subsequent  injury from foreclosure or eviction occurs.  The Debtors cannot protect themselves against their post-petition robo-signing frauds, because damages from the continuation of the fraudulent conduct is not subject to the automatic stay which went into effect on May 14, 2012.

In the case of Ray Elliott of South Dakota, there is a robo-signed allonge from Amy Nelson of RFC, LLC and an assignment of mortgage from MERS to GMAC Mortgage, LLC created by GMAC Mortgage, LLC employees.  The foreclosure litigation continues in South Dakota.  In the case of Glenn Prentice of Michigan, the attempts to confiscate his home continue despite the robo-stamped allonge of Amy Nelson of RFC, LLC.  In the case of Kenneth Taggart of Pennsylvania, GMAC Mortgage, LLC continues to seek the remedy of foreclosure in court proceedings, based upon robo-signed documents created by GMAC Mortgage, LLC as does

26

Tiadanielle Smith of California, who is seeking an injunction against a robo-signing foreclosure

and an eviction and is being whipsawed by the application of the automatic stay in bifurcated

judicial proceedings since May 14, 2012.   In the case of the undersigned, her case is on appeal,

but there has been no effort by the Debtors to return her home to her, even though the grounds for

the appeal are that forged documents were the basis for the foreclosure of her home in the

judicial foreclosure state of Wisconsin.

Here is an example of the continuing problem with the Debtors robo-signing practices:

The undersigned has appealed from a trial court's denial of her motion to vacate a judgment of

foreclosure which was based upon the robo-signed documents <u>discovered to have been robo-</u>

<u>signed after the judgment of foreclosure was entered</u>.   She argues on appeal that the judgment of

foreclosure is void because it was procured on the basis of forged documents.  She  argues a

miscarriage of justice upon which the Wisconsin Court of Appeals can vacate a judgment at any

time that the miscarriage of justice is found to have occurred in the record of proceedings before

it.  Debtor RFC, LLC continues to rely on the robo-signed documents because it has not returned

her home to her and continues to proceed on appeal, even though it has admitted in these

proceedings that 6931 Old Sauk Road in Madison, Wisconsin is "her home" and "her property."

See Docket Entry 1268.   Every day that the undersigned is unable to reside in her home, she is

injured and incurs monetary losses.  Her home was her main office location and her business has

been disrupted.   But, most importantly, she is being denied access to her home, which is not a

mere monetary loss because real estate is unique.[10]

---

[10]  The undersigned is an attorney and knows that she has rights in this Court and before
the Wisconsin Court of Appeals now that Debtors' local counsel waived the protection of the
automatic stay to the extent that it prevented the preclusion or termination of the foreclosure and

The only evidentiary basis for Debtor RFC, LLC to prove its standing to take her home

were:

1.  A copy of a mortgage note upon which multiple endorsements and an allonge from an RFC, LLC employee pretending to be an Assistant Vice President of Residential Funding Company LLC and falsely claiming to have a power of attorney to sign for Bank of New York Trust Company, N.A. as successor to JP Morgan Chase Bank, N.A. as Trustee, all of which appeared after the commencement of the action in which a copy of the note was produced with a single endorsement, in blank, the validity of which was challenged by the undersigned because the original note had been given to AEGIS Mortgage Corporation which had been in bankruptcy proceedings in the State of Delaware since 2007 at the time the action was commenced in 2009 and could not assign the mortgage; and

2.  An assignment of mortgage from AEGIS' nominee MERS was executed by Jeffrey Stephan and his supervisor, Kenneth Urgwaudu, employees of GMAC Mortgage, LLC (a Debtor herein), witnessed by two other GMAC Mortgage, LLC employees on January 6, 2009 and notarized by Mary Lynch in the GMAC Mortgage, LLC offices a full month later on February 6, 2009 in Montgomery County, Pennsylvania, created by the attorney representing RFC, LLC and not AEGIS and MERS.

The above-described documents are forgeries as defined at Wis. Stats. sec. 943.38 and were

introduced into evidence in a Wisconsin court proceeding. Identifying the copies of the

documents as true and correct copies of "imaged" files, was an affidavit signed by Manish

Verma, a litigation manager at GMAC Mortgage, LLC.  On the basis of the Verma Affidavit and

the forged note and mortgage assignment, a trial court judgment of foreclosure was entered

before the word robo-signing had even entered the lexicon of this nation, on March 3, 2010.

The foregoing facts are typical in robo-signing fraud.

---

eviction proceedings.  She could come to New York or seek relief in Wisconsin, but the expense and burden of having her do so is identical to that being placed upon all other Robo-Signing Fraud Claimants: she must have the time and resources to seek further relief from the fraud by which she is denied ownership and possession of her home and she does not currently have the time due to the urgent needs of her other clients who are in danger of losing their homes to hard-fought claims brought by other entities relying on robo-signed documents, such as PNC Bank, Bank of America, Deutsche Bank and others.  What Debtors should do is mitigate their damages by returning her home to her but they will not do so voluntarily.  Court action will be required.

It is necessary to appoint an official Committee so that the Committee can examine the real estate assets which the Debtors claim to own in the context of objecting to a proposed plan which uses the proceeds of sale of assets which have been taken by these Debtors using robo-signed documents for proof of their claim to take the properties.  In order to obtain title to real estate by foreclosure, the Debtors must be required to show:

1.  That they are the owners or servicers of the mortgage loan;

2.  Where they are the servicers (agents), they  must show that they  took the property for the benefit of the entity (the principal) which owns the note as the original lender or as holder in due course and that they are in possession of the original note at the time of the assignment of the mortgage in judicial[11] or non-judicial proceedings[12] prior to the foreclosure sale;

3.  Where they are the owners of the mortgage loan at the time of foreclosure, they must show that they are either the original lender on the property, the holder in due course of the mortgage loan,  or the holder of the original mortgage note with the right to enforce it and that they have clean hands to obtain the equitable remedy of foreclosure or, in most non-judicial

---

[11]  Some judicial foreclosure states require the foreclosure claimant to have standing to sue at the commencement of a judicial foreclosure action and others require that the party with standing to sue be substituted as the real party in interest prior to the entry of final judgment.  In all judicial foreclosure states, the party taking judgment of foreclosure must be the real party in interest (the party to which the mortgage debt is owed or its servicer.)

[12]  All but one of the non-judicial foreclosure states allow parties to whom the debt is owed or their servicers to foreclose on properties for nonpayment of the mortgage loan in compliance with the laws of each individual state. Minnesota has allowed Mortgage Electronic Registration Systems, Inc. (MERS) to foreclose in its own name,  as nominee of the undisclosed lender to which the mortgage debt is owed (the real party in interest.)   About 60% of the nation's mortgages contain a provision by which MERS is the nominee of the company originating the loan.  Mortgage assignments from MERS are particularly suspect because the assignments of mortgages are frequently robo-signed by persons who are agents of the assignor and not the assignee.

foreclosure states, it must also show that the mortgage was conveyed to it or assigned to it

through  judicial proceedings.

The Committee of Unsecured Creditors has not engaged in the necessary protection of the

Robo-Signing Fraud Claimants and are conflicted from doing so.  The Committee could yet seek

to act on behalf of the heretofore unrepresented constituency if it acts exclusively as a matter of

fact and law and is able to recognize that its other constituencies have no lawful claim to the

homes taken by robo-signed documents.  Even if it chooses not to do so, it should now be aware

that the feasibility of the Debtors continuing business operations and Plan, to the extent that

Debtors continue to liquidate assets which are not theirs to liquidate, is fatally flawed.

Furthermore, the Committee is now on notice that claims against these Debtors are ongoing and

not subject to the automatic stay after May 14, 2012 which dooms the assumption that all Robo-

Signing Claimants' damages are captured as of the date of filing.  The Committee of Unsecured

Creditors would best serve its constituencies, including the Robo-Signing Fraud Claimants, by

moving to convert these proceedings to Chapter 7 to prevent the accumulation of

nondichargeable fraud claims by the Debtors continuation of fraudulent operations after

May 14, 2012.  Failing that action, the Committee of Unsecured Creditors is breaching its

fiduciary duty to the class of Robo-Signing Fraud Claimants, to the extent that they hold

contingent, unsecured claims, and cannot object to the appointment of an official committee for

the heretofore unrepresented class of Robo-Signing Fraud Claimants.

## CONCLUSION

In the extraordinary circumstances of this case, an official committee must be appointed

to prevent the continuing abuse of the processes of this Court whereby real estate assets have

been unlawfully claimed by the Debtors.  If the Debtors intended to comply with the intent the

National Mortgage Settlement, they would not object to the appointment of an official committee

to represent the class of interested parties who are losing their homes under robo-signed

documents and they should welcome the participation of an official committee appointed to

prevent further robo-signing frauds.  If the Committee of Unsecured Creditors understood its

conflict with this class of interested parties, they would realize that they have already breached

their fiduciary duty to this class due to the conflicts of interest described herein and would

welcome the appointment of a committee for the robo-signing fraud claimants to assure that the

damages that have been caused to date are mitigated.

Whatever information is missing from the Motion to Appoint a Borrowers' Committee

which seeks to establish the need for an official committee to provide the currently unrepresented

class of persons who are being continually injured by the robo-signing conduct of these Debtors

while being denied  a voice in these proceedings, it must be understood that the Movants are

currently operating without a budget and having not been provided adequate notice and

opportunity to be heard in these proceedings from the beginning.  Any weaknesses in the motion

are attributable to the difficulty of expressing the wrongs being committed by the Debtors under

color of judicial approval in this case.   The complete record of these proceedings shows the

necessity of the appointment of a committee for the class of interest of Robo-Signing Fraud

Claimants.

However inadequate the undersigned is and has been in trying to alert the Court to the

miscarriage of justice in these proceedings, the Court has a duty to assure that its processes are

not abused.  The appointment of an official committee to speak on behalf of Robo-Signing Fraud

31

Claimants is absolutely essential, in the interests of justice.  Because she believes that this is what

the "Borrowers" Committee seeks, at its core, to do, she supports the Motion, but reserves her

right to move for and proceed to seek all other relief which is right, proper, necessary,  just and

appropriate in these premises.

Dated at Minneapolis, Minnesota this 20th day of September, 2012.


*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora
210 Second Street NE
Minneapolis, Minnesota 55413
(612) 333-4144
FAX (612) 886-2444
accesslegalservices@gmail.com

UNSWORN DECLARATION UNDER PENALTY OF PERJURY

Wendy Alison Nora declares, under penalty of perjury, that the facts contained in the
foregoing joinder in the Motion for Appointment of a "Borrowers" Committee are true and
correct, according to her knowledge, information and belief.


*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora