SHEARMAN & STERLING LLP
Fredric Sosnick
Edmund M. Emrich
599 Lexington Avenue
New York, New York 10022
Telephone:     (212) 848-4000
Facsimile:     (212) 848-7179

*Counsel for Citibank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**LIMITED OBJECTION OF CITIBANK, N.A. TO WILMINGTON TRUST'S**
***MOTION TO MODIFY THE REVISED JOINT OMNIBUS SCHEDULING ORDER***
***AND PROVISION FOR OTHER RELIEF REGARDING (I) DEBTORS' MOTION***
***PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF RMBS TRUST***
***SETTLEMENT AGREEMENT, AND (II) THE RMBS TRUSTEES' LIMITED***
<u>***OBJECTION TO THE SALE MOTION***</u>

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

      Citibank, N.A. ("**Citibank**") hereby submits this limited objection to the *Motion to Modify the Revised Joint Omnibus Scheduling Order and Provision for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreement, and (II) the RMBS Trustees' Limited Objection to the Sale Motion* (the "**Extension Motion**") [Docket No. 1300] filed by Wilmington Trust N.A. ("**Wilmington Trust**"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Extension Motion seeks to extend, by at least 90 days, all of the various deadlines that the Court approved in its Revised Joint Omnibus Scheduling Order dated July 31, 2012 (the "**Revised Scheduling Order**")[1] with respect to (i) the Debtors' motion for approval of the settlement agreements relating to the RMBS Trusts (the "**RMBS 9019 Motion**")[2] and (ii) the RMBS Trustees' limited objection to the Debtors' motion for approval of the two pending sales of substantially all of their operating assets (the "**Sale Motion**").[3] The Extension Motion appears to be moot in light of this Court's ruling on the evidentiary hearing and discovery schedule for the RMBS 9019 Motion at the conference held on September 19, 2012, in which counsel for Wilmington Trust participated. However, out of an abundance of caution, Citibank files this Limited Objection to make clear its position that under no circumstances should any further extensions of time be granted which would have the effect of delaying the Debtors' pending all-important asset sales.

Although styled as a request for an extension of time with respect to *all* deadlines set forth in the Revised Scheduling Order (which includes matters relating to both the RMBS 9019 Motion *and* the Sale Motion), the Extension Motion focuses entirely on the need for discovery

---

[1] *Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 For Approval of RMBS Trust Settlement Agreements, and (II) The RMBS Trustees' Limited Objection to the Sale Motion* [Docket No. 945].

[2] *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [Docket No. 320], as amended by the *Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements* [Docket No. 1176].

[3] *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for* Orders*: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief.* [Docket No. 61].

with respect to the RMBS 9019 Motion, and does not once present a justification for extending discovery with respect to the Sale Motion.  To the extent, however, that the relief sought in the Extension Motion would have the effect of delaying the scheduled auction and sale of the Debtors' mortgage loan and servicing businesses, it should be denied on the grounds that such delay would pose a risk to the Debtors' ability to maximize the value of their assets for the benefit of all creditors and otherwise jeopardize the Debtors' reorganization efforts, which would have a corresponding adverse impact on the value of Citibank's collateral.  Citibank expresses no view on the Extension Motion as it relates solely to the RMBS 9019 Motion or the proposed sale of the Debtors' legacy assets.

## BACKGROUND

1.       On May 14, 2012 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code, and the Debtors thereafter have continued to operate their businesses as debtors and debtors-in-possession.  On May 15, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors [Docket No. 102].  By an order dated June 20, 2012, the Court authorized the appointment of an examiner in the chapter 11 cases pursuant to 11 U.S.C. § 1104(c)(2) [Docket No. 454].  On July 3, 2012, the Court approved the appointment of Arthur J. Gonzalez as examiner [Docket No. 674].

2.       Prior to the Petition Date, Citibank entered into a revolving credit facility with GMAC Mortgage, LLC, as borrower, and Residential Capital, LLC, as guarantor (the "**Citibank MSR Facility**").  The Citibank MSR Facility is secured by certain mortgage servicing rights for mortgage loans in Freddie Mac and Fannie Mae securitization pools (the "**GA MSRs**").  The outstanding principal amount under the Citibank MSR Facility as of the Petition Date was approximately $152 million.  *See* Affidavit of James Whitlinger, Chief Financial

Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, dated May 14, 2012 (the "**Whitlinger Affidavit**") ¶ 62 [Docket No. 6].

        3.        By motion dated May 14, 2012, the Debtors moved for authority to use cash collateral of Citibank under the Citibank MSR Facility on an interim and final basis. Citibank consented to that motion based upon the fact that the auction of the debtors' principal assets (including Citibank's cash collateral under the Citibank MSR Facility) was anticipated to occur in October 2012. On May 15, 2012, the Court issued the *Interim Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to Adequate Protection Parties and (IV) Prescribing the Form and Manner of Notice and Setting Time for the Final Hearing* [Docket No. 89], and then on June 20, 2012, the Court issued the *Final Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Modifying the Automatic Stay* (the "**Final Cash Collateral Order**") [Docket No. 471].

        4.        Under the Final Cash Collateral Order, the outstanding principal amount of Citibank's secured claim as of the Petition Date was acknowledged to be not less than $152 million. *See* Final Cash Collateral Order ¶ G. Additionally, under the Final Cash Collateral Order, Citibank is entitled to receive (i) adequate protection liens on all of the collateral securing the Citibank MSR Facility, which is senior to the liens granted to the lender under the Debtors' debtor-in-possession credit facility, (ii) adequate protection payments in the form of payment of interest at the non-default rate under the Citibank MSR Facility and all fees and expenses payable to Citibank under the Citibank MSR Facility, and (iii) upon the sale of Citibank's

collateral, the repayment of the loans under the Citibank MSR Facility from the proceeds of such sale. *See* Final Cash Collateral Order ¶ 6.

5. Among the Debtors' principal objectives in commencing their chapter 11 cases has been their ability to promptly sell their principal assets. *See* Whitlinger Affidavit ¶ 105. Moreover, it is clear that "immediately commencing an orderly asset sale and plan process is the best way to preserve the Debtors' origination and servicing businesses on a going-concern basis for sale (in whole or in part) in order to maximize the value of the Debtors' assets for the benefit of creditors." *Id*. at ¶ 109.

6. When the Debtors commenced their chapter 11 cases, Nationstar Mortgage LLC ("**Nationstar**") was the pre-negotiated stalking horse bidder for the sale of the Debtors' mortgage loan origination and servicing businesses (the "**Platform Sale**"), and Ally Financial Inc. ("**AFI**") was the proposed stalking horse bidder for the sale of the Debtors' "legacy" portfolio consisting mainly of mortgage loans and other residual financial assets (the "**Legacy Sale**," together with the Platform Sale, the "**Asset Sales**"). As a result of further negotiations, Berkshire Hathaway Inc. replaced AFI as the stalking horse bidder for the Legacy Sale and Nationstar raised its bid with respect to the Platform Sale.

7. On the Petition Date, the Debtors filed the Sale Motion for, *inter alia*, approval of bid procedures and the scheduling of an auction and a sale hearing with respect to the Asset Sales (the "**Sale Procedures**") [Docket No. 61]. The Sale Procedures contemplated a hearing on the Assets Sales be held on October 15, 2012. *See* Sale Procedures ¶ 59. The Sale Procedures clearly indicated that in the event the plan process were to be delayed, it would be essential to "pursue an alternative course of action and immediately move forward with the Sales under Bankrupcy code [*sic*] section 363(b)." Sale Procedures ¶¶ 4, 65.

8. On June 11, 2012, certain RMBS Trustees (the "**RMBS Trustees**") filed the *Limited Objection of Certain Trustees for Residential Mortgage Backed Securities to the Sale Motion* [Docket No. 291]. Wells Fargo Banks, N.A., as Master Servicer ("**Wells Fargo**"), filed a joinder to such limited objection to the Sale Motion [Docket No. 292]. Wilmington Trust did not object at that time to the Sale Procedures.

9. On June 28, 2012 the Court issued an order (the "**Sale Procedures Order**") approving bidding procedures in connection with the Asset Sales, and scheduled an auction for October 23, 2012 (the "**Auction**"), and a sale hearing for November 5, 2012 (the "**Sale Hearing**") [Docket No. 538]. The Sale Hearing was further adjourned to November 19, 2012 pursuant to the Amended Notice of Public Auctions.[4] Under the terms of the Sale Procedures Order, the RMBS Trustees and Wells Fargo agreed not to challenge the timing with respect to certain aspects of the sales process, including the date of the Auction. *See* Sale Procedures Order ¶ 5. The Sale Procedures Order adopted the Debtors' original proposal that, if the confirmation process were delayed, the Debtors would be able to continue to proceed on the contemplated timeline. *See* Sale Procedures Order ¶ 3.

10. On July 31, 2012, the Court entered the Revised Scheduling Order, without objection, setting a variety of deadlines with respect to the RMBS 9019 Motion and discovery in connection with the Sale Motion. The deadlines set forth in the Revised Scheduling Order were clearly designed to keep the all-important sale process on track in accordance with this Court's Sale Procedures Order.

---

[4] *Amended Notice of Public Auctions and Sale Hearing to Sell Certain of Debtors' Assets Pursuant to Asset Purchase Agreements with Nationstar Mortgage LLC and Berkshire Hathaway Inc. and Related Relief and Dates* [Docket No. 1446].

11. Pursuant to the Revised Scheduling Order, the Court set August 23, 2012 as the date by which the Creditors Committee, the RMBS Trustees, or any other party in interest could file Pre-Auction Objections (as defined in the Revised Scheduling Order) to the Sale Motion. The Pre-Auction Objections, by definition, are limited to certain types of issues that could interfere with and undermine the auction process. The purpose in singling out the Pre-Auction Objections for resolution prior to the Auction was so that the Auction could proceed as scheduled. Pre-Auction Objections were filed by various parties, including the RMBS Trustees, The Bank of New York Mellon, Frost National Bank, U.S. Bank National Association and Wells Fargo Bank, N.A. A conference to address the Pre-Auction Objections is scheduled for September 27, 2012.

12. The only justification advanced by Wilmington Trust for its requested extension of the deadlines set forth in the Revised Scheduling Order is that it needs additional discovery in connection with the RMBS 9019 Motion.[5] The limited justification is significant, as objections to the RMBS 9019 Motion (which seeks to fix the size of RMBS trust claims) are not objections to the proposed Asset Sales. Notwithstanding that limited justification, however, the Extension Motion purports to seek the extension of *all* deadlines in the Revised Scheduling Order, which would appear to include discovery deadlines relating to the Sale Motion.

13. To the extent that the Extension Motion is determined not to be moot, and that the deadline extensions requested therein would cause a delay of the Auction or the Sale Hearing, it should be denied. Such an extension would be highly prejudicial to the rights of Citibank as a secured creditor under the Citibank MSR Facility and the Final Cash Collateral

---

[5] Wilmington Trust, in summarizing its position, states: "By this Motion, the Trustee seeks a modification of the Scheduling Order for good cause in light of the fundamental changes that were made to the proposed RMBS settlement agreements following entry of the Scheduling Order." Extension Motion ¶ 1

Order, and presumably the Debtors' estates and their entire creditor body. Citibank, therefore, objects to the Extension Motion to the extent that the relief sought would have the effect of delaying the scheduled Auction and Asset Sales.

14. Citibank's consent to the use of cash collateral specifically was premised on the Debtors expeditiously proceeding with the Platform Sale. The Debtors initially had proposed setting the sale hearing for October 15th, but this date was changed to November 5th and then November 19th as a result of various objections filed with respect to the Sale Procedures.

15. In the present environment of low interest rates, it is only natural to see a correspondingly high rate of refinancings and an accompanying decrease in the value of the fixed pool of GA MSRs that secure the Citibank MSR Facility. Accordingly, any further delay to the sale of the GA MSRs could prove harmful to Citibank's collateral position, and would undermine the compromises Citibank reached with the Debtors to allow for the continued use of cash collateral. As a result, the relief requested in the Extension Motion should be denied to the extent it would result in an extension of the Auction and Sale Hearing.

WHEREFORE, for the foregoing reasons, Citibank respectfully requests that the Court deny the Extension Motion to the extent that granting such relief would risk any delay in the Auction and the Sale Hearing.

Dated: September 20, 2012
New York, New York

SHEARMAN & STERLING LLP

*/s/ Fredric Sosnick*_____
Fredric Sosnick
Edmund M. Emrich
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile:  (212) 848-7179

*Counsel for Citibank, N.A.*