**<u>EXHIBIT 1</u>**
(Continued)

ELECTRONICALLY FILED
PM
CV-08-362.00
CIRCUIT COURT OF
RUSSELL COUNTY, ALABAMA
KATHY S. COULTER. CLERK

## IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

| | |
|---|---|
| PHYLLIS HORACE, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )     CASE NUMBER: |
| | )     CV-08-362 |
| LASALLE BANK NATIONAL | ) |
| ASSOCIATION, AS TRUSTEE FOR | ) |
| CERTIFICATE HOLDERS OF BEAR | ) |
| STEARNS ASSET BACKED SECURITIES | ) |
| I LLC, ASSET BACKED CERTIFICATES, | ) |
| SERIES 2006-EC2; BEAR STEARNS | ) |
| ASSET BACKED SECURITIES I LLC, | ) |
| ASSET BACKED CERTIFICATES, SERIES | ) |
| 2006-EC2; MORTGAGE ELECTRONIC | ) |
| REGISTRATION SYSTEMS, INC.; ENCORE | ) |
| CREDIT CORPORATION; EMC MORTGAGE | ) |
| COMPANY; BANK OF AMERICA, et al., | ) |
| | ) |
|       Defendants. | ) |

## PLAINTIFF PHYLLIS HORACE'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE ALABAMA RULES OF CIVIL PROCEDURE AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Comes now Phyllis Horace and moves this Honorable Court for an

Order granting summary judgment in her favor as set forth in her motion and

supporting brief as follows:

### SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE

The plaintiff moves pursuant to Rule 56 for summary judgment in this matter on

her claims of wrongful foreclosure against the Defendant Trust designated as "LaSalle

Bank National Association, as Trustee for Certificate holders of Bear Stearns Asset

Backed Securities I LLC, Asset-Backed Certificates, Series 2006-EC2". The Plaintiff

asserts that Summary Judgment is proper under the law and facts and prays that after

consideration of her motion, her evidentiary submissions and her brief that the Court will
enter a Summary Judgment in her favor finding that the Defendant trust has no interest in
her promissory note and no ability to foreclose and further finding that the Trust's
institution of foreclosure against her was wrongful and further enjoining the Trust from
prosecuting a foreclosure against her in this case. The Plaintiff feels it important to note
that her claims and her motion do not seek to obviate the underlying promissory note but
is in the nature of a claim against a stranger to her mortgage loan who seeks to foreclose
upon her property under false and fraudulent pretenses. Under the Plaintiff's theory of
the case it is clear that the Trust is a stranger to her mortgage loan and that success upon
her claim against the Trust will not defeat the right of a holder in due course to enforce
the promissory note executed in conjunction with her home mortgage loan. In effect the
Plaintiff asserts that there is a proper payee of her mortgage promissory note but it is not
the defendant Trust or its agents who are involved in the foreclosure upon which she sued
in the present case.

STATEMENT OF FACTS

1.    On or about November 11, 2005 Phyllis Horace ("Mrs. Horace") executed
a mortgage to facilitate the purchase of her home for her family in Russell County,
Alabama.

2.    At the time the funds were borrowed, the nation was in the midst of the
expanding housing bubble.

3.    The Defendant Encore Credit Corp, a mortgage lender, offered Mrs.
Horace a loan that is commonly referred to as a 2/28 ARM. This loan involved an initial
two year teaser rate period during which Mrs. Horace was required to make only interest

payments at a low teaser rate. At the expiration of the teaser period, the loan recast to a substantially higher monthly payment based on the terms of the note and mortgage.

4.     Mrs. Horace and her husband (who is not a signatory and thus not bound to the mortgage) (together the "Horace's") enjoyed income from regular employment, which was used to make their monthly mortgage payments.

5.     After the loan recast at the end of the teaser period, the Horace's income was not sufficient to cover the fully indexed payment, a fact which was known to the Defendants at the time of originating this loan.

6.     Despite the predatory and unfair origination of the Horace loan, the loan's origination is not the subject of the summary judgment motion. The Horace's have reserved those issues for trial. The Horace's provide this information to the Court as background to explain the original claimed default which led to this litigation.

7.     This motion and the crux of this case is about the validity of the transfers of mortgage promissory notes in the Wall Street financing process known as "securitization" and the resulting issues regarding the ability of the securitization trust in this case to foreclose. Ultimately, much of the outcome of this case hinges upon the Court's ruling regarding the validity or not of the Trust's assertions that it is the owner of the Horace Promissory note.

8.     Securitization is the practice of pooling and selling contractual debt obligations ("receivables") such as residential mortgages, commercial mortgages, auto loans or credit card debt, to a specially-created entity, typically a trust. The trust pays for the receivables by issuing debt securities (variously referred to as bonds, pass-through securities, or Collateralized mortgage obligation (CMOs)) to investors. The trust collects

payment of principal and interest on the receivables, which it then uses to make regular payments to investors on their debt securities. Securitization thus ... and commercial borrowers with financing from securities markets.

9.      There are numerous reasons why **financial institutions engage in securitization**, including the **management** of credit and interest rate risk, relief from regulatory ... requirements, and liquidity enhancement. Securitization began to be used as a financing technique with mortgages in 1970. "For decades before that, banks were essentially portfolio lenders; they held loans until they matured or were paid off. These loans were funded principally by deposits and sometimes by debt, which was a diversified obligation of the bank (rather than a claim on specific assets). But after World War II, depository institutions simply could not keep pace with the rising demand for housing credit. Banks, as well as other financial intermediaries sensing a market opportunity, sought ways of increasing the sources of mortgage funding. To attract investors, investment bankers eventually developed an investment vehicle that isolated defined mortgage pools, segmented the credit risk, and structured the cash flows from the underlying loans."

10.     Banks use a variety of structures for securitization trusts depending on the type of asset being securitized, but all securitization structures are designed with two overriding concerns. First, is ensuring favorable tax treatment of the bank, the securitization trust, and the investors. Ideally through the securitization trust having "pass-thru" tax status, meaning that the securitization trust is not taxed on its own income

—————————————
[1] Steven L. Schwarcz, Anna Rienhart, Tim Adiemors on Structured Securities 103 (Oxford Univ. Press,
...
Last ...

when it is paid on the receivables.[3]  Second, and perhaps more critical, is ensuring that

the trust's assets are "bankruptcy remote," meaning that they are insulated from the

claims of the *bank's* creditors.  This involves ensuring that the transfer of the receivables

to the trust is a "true sale" and not a financing transaction.

11.    Bankruptcy remoteness is critical for making the economics of

securitization work.  By insulating the receivables placed in the trust from the claims of

the bank's creditors, securitization enables investors to invest based solely on the quality

of the receivables and not have to worry about the bank's other business activities. To

accomplish this, the bank conveys receivables to a trust for the benefit of certificate

holders.

12.    Applying these industry standards to the transaction at issue, Horace

points out that the Defendant is a securitization trust identified as "LaSalle Bank National

Association as Trustee for Certificate holders of Bear Stearns Asset Backed Securities I,

LLC, Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates, and Series

2006-EC2" (hereinafter the "Trust").[4]

13.    The Trust was formed on February 1, 2006 by the execution of the trust

agreement, which is known in the industry as a Pooling and Servicing Agreement

(hereinafter "PSA").[5] The Trust's closing date was February 28, 2006.[6]

14.    The Trust is a common law trust created pursuant to the laws of the State

of New York, and its existence and actions are governed and controlled by New York

law.

---

[3] *See id.*
[4] *See* PSA for Defendant Trust page 5 of 397
[5] *See* PSA page 5 of 397
[6] *See* PSA page 25 of 397

15.    New York trust law is ancient and well-settled with respect to the determination of whether an asset is trust property.

16.    Under New York law, the analysis of whether an asset is trust property is determined under the law of gifts.[7] In order to have a valid inter vivos gift, there must be a delivery of the gift (either by a physical delivery of the subject of the gift) or a constructive or symbolic delivery (such as by an instrument of gift) sufficient to divest the donor of dominion and control over the property[8]and "what is sufficient to constitute delivery 'must be tailored to suit the circumstances of the case.'"[9] The delivery rule requires that "'[the] delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit.'"[10]

17.    New York law is also settled that (1) "Until the delivery to the trustee is performed by the settlor, or until the securities are definitely ascertained by the declaration of the settlor, when he himself is the trustee, no rights of the beneficiary in a trust created without consideration arise".[11] (2) The delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit; there must be a change of dominion

---

[7]*See, e.g.,In re* Becker, 2004 N.Y. Slip Op. 51773U, 4 (N.Y. Sur. Ct. 2004) ("In the case of a trust where there is a trustee other than the grantor, transfer will be governed by the existing rules as to intent and delivery (the elements of a gift).").

[8]    (see, Matter of Szabo, 10 N.Y.2d 94, 98-99, supra; Speelman v. Pascal, 10 N.Y.2d 313, 318-320, supra; Beaver v Beaver, 117 NY 421, 428-429, supra; Matter of Cohn, 187 App. Div. 392, 395) as cited in Gruen v. Gruen, 68 N.Y.2d 48, 56 (N.Y. 1986).

[9](Matter of *Szabo*, supra, at p. 98).

[10]    (id.; Vincent v. Rix, 248 N.Y. 76, 83; Matter of Van Alstyne, supra, at p 309; see, Beaver v. Beaver, supra, at p 428) as cited in Gruen v. Gruen, 68 N.Y.2d 48, 56-57 (N.Y. 1986).

[11]    (cf. Riegel v. Central Hanover Bank & Trust Co., 266 App. Div. 586; Matter of Gurlitz [Lynde], 105 Misc. 30, aff'd 190 App. Div. 907, supra; Marx v. Marx, 5 Misc. 2d 42) as cited in Sussman v. Sussman, 61 A.D.2d 838 (N.Y. App. Div. 2d Dep't 1978).

and ownership; intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given.[12]

18.    Lastly, "under New York law there are four essential elements of a valid trust of personal property: (1) A designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee."[13] There is no trust under the common law until there is a valid delivery of the asset in question to the trust.[14] Furthermore, when the trust fails to acquire the property, then *there is no trust over that property that may be enforced.*[15]

19.    When New York trust law is applied to the Trust and the facts of this case, it is apparent that there was never a valid delivery of Mrs. Horace's mortgage note to the Trust, so the *Trust* may not enforce the mortgage note.

20.    According to the terms of the PSA, all promissory notes transferred to the Trust are required to have a complete chain of endorsements from the original payee thereof to either "Blank" or to the Trustee for the specific Trust. This means that each promissory note must have the following complete chain of endorsements in order to

---

[12]Vincent v. Putnam, 248 N.Y. 76, 82-84 (N.Y. 1928).

[13]Brown v. Spohr, 180 N.Y. 201, 209-210 (N.Y. 1904).

[14] Until the delivery to the trustee is performed by the settlor, or until the securities are definitely ascertained by the declaration of the settlor, when he himself is the trustee, no rights of the beneficiary in a trust created without consideration arise (cf. Riegel v. Central Hanover Bank & Trust Co., 266 App. Div. 586; Matter of Gurlitz [Lynde], 105 Misc 30, aff'd 190 App Div 907, supra; Marx v Marx, 5 Misc 2d 42) as cited in Sussman v. Sussman, 61 A.D.2d 838 (N.Y. App. Div. 2d Dep't 1978).

[15] In an action against the individual defendant as trustee, based on the theory of breach of fiduciary obligation, the complaint was properly dismissed on the ground that he had acquired no title or separate control of the goods and, hence, there was no actual trust over the property to breach. Kermani v. Liberty Mut. Ins. Co., 4 A.D.2d 603 (N.Y. App. Div. 3d Dep't 1957).

comply with the Trust's documents and thus fit within the authorization of the Trust's
activities:

From Encore Credit Corporation to

↓

EMC Mortgage Corporation; who endorsed to

↓

Bear Stearns Asset Backed Securities I, LLC, as the Depositor; who
endorsed either in blank or specifically to

↓

LaSalle Bank National association as trustee for Certificate holders of Bear
Stearns Asset Backed Securities I, LLC, Bear Stearns Asset Backed
Securities I LLC Asset Backed Certificates, and Series 2006-EC2

21.    The PSA requires this complete chain of endorsements to be in place by
the Trust's closing date or under no circumstances later than 90 days after the Trust's
closing date. Therefore the last possible day to transfer to the Trust within the terms of
the Trust agreement was May 29, 2006.

22.    During the litigation of this case, the Defendants produced a collateral file
that included the original, wet-ink, signed note in this case. *This note contained a single
endorsement in blank by the Encore Credit Corporation and no other.* Accordingly, the
endorsement chain presented by the Defendant Trust does not comply with that required
by the PSA. This means that under New York trust law, there is no effective transfer of
the Horace mortgage note to the Defendant Trust, so the Trust cannot enforce the note.

23.    There is no evidence that Mrs. Horace's mortgage promissory note has
been securitized, and there is no effective conveyance of Mrs. Horace's mortgage

promissory note to the Defendant Trust, which has claimed ownership and sought to foreclose.[16]

24.    In the case before the Court there is no good faith basis for the defendant Trust to assert or otherwise claim that the Horace promissory note is Trust property.

25.    Mrs. Horace requests that the Court enter a summary judgment in her favor that the Trust is not the owner of her promissory note and that the Trust has no right to foreclose upon her real property.

26.    Mrs. Horace also requests that the Court enter any appropriate Orders to effectuate this Judgment.

27.    Mrs. Horace also requests that the Court direct liability in her favor on her claims against the Trust and the parties acting on the Trust's behalf with respect to her claims regarding the foreclosure action instituted by these parties and that the Court seat a jury for the sole purpose of determining what damages should be awarded against these parties for their wrongful conduct.

## PLAINTIFF'S EVIDENTIARY SUBMISSIONS IN SUPPORT OF HER MOTION
## FOR SUMMARY JUDGMENT

The Plaintiff submits the following list of exhibits in support of her motion for summary judgment in this case:

28.    Attached as exhibit 1 to this motion is the PSA consisting of all exhibits including the form custody agreement and the mortgage loan purchase agreement pulled from the SEC's website and consisting of 397 pages. This exhibit does not include the mortgage loan schedule submitted by the defendant's in this case.

---

[16]  A fact noted in the opinions and testimony of Horace's securitization expert, Thomas J. Adams who opines that the promissory note is not an asset of the Defendant trust in his deposition at 140:4-8.

29.    Attached as exhibit 2 to this motion is the affidavit of Thomas J. Adams previously provided to the Defendant's in this case.

30.    Attached as exhibit 3 to this motion is the deposition of Thomas J. Adams taken by counsel for the defendants, Shaun Ramey.

31.    Attached as exhibit 4 to this motion is the complete collateral file produced by the defendants in this case which consists of 62 pages as produced by the Defendants.

32.    Attached as exhibit 5 to this motion is an exhibit which shows the transfers required by the Trust instrument as a recapitulation of the voluminous document.

33.    Attached as exhibit 6 to this motion is an exhibit which demonstrates the transfers of the mortgage promissory note revealed by the contents of the mortgage collateral file.

34.    Attached as exhibit 7 is Horace 391 which is a single document from the PSA which sets forth the required documents for the collateral files of loans properly transferred to the Defendant trust.

35.    Additionally, other documents are attached to this motion which are referenced in this motion or in brief by their Bates Stamp number which include, at least, Bates Stamped documents numbered 2 & 29.

## CONCLUSION

The plaintiff requests that the Court consider her motion, her evidentiary submissions and her brief in support of her motion for summary judgment and upon consideration of the same, enter summary judgment as prayed for herein against the

**Multiple Injuries**    #50    **E.D. Physician Record**

53176690  396009
JACKSON ,CORLA
06/25/1961  46 B F 03/13/08
018996    BENJAMIN, REGINA M.  MD
E/R



Smoke inhalation

Burns
cleaned
and
dressed -

Repeat exam at: N30- twisses
Findings:      improved

## Diagnostic Considerations: circle potential diagnoses

Smoke inhalation    Ft Bmris cont w/

**X-ray:** (Read by ___ E.P ___ Rad)
1- ☐ Cx e ___ nl    2- ☐ Thoracic ⊔ nl e ___ nl
3- ☐ L F A ___ nl    4- ☐ pelvis ___ nl
5- ☐ B F A ___ nl    6- ___ ___ nl

Reviewed / discussed with Radiologist: ___

**Treatment / Course:**

**Medications / Orders**    Response
☐ O2    1h web lock
☐ Tetanus:   TT / dT / TIG
☐ Pain meds: ___    Morphine IV
☐ immobilization:  static    dynamic    2# Ctran IV
Applied by: ___ E.P. ___ other
___ compression dressing    ___ crutches
___ NPO
other procedures / meds:    ATA neb q ?
1 INS 1000 ma

Recheck Mco: still whee

**Procedure:** ___
(___ see addendum)
**Course:** same / better / worse    ATA repeated
**Critical Care:** ___ minutes / hour(s)    Solumedrol D5 m IV

**Clinical Impression:**

1) Smoke inhalation    4) contusion
2) 5cm laceration (R) forearm    Buttock
3) 4cm laceration (L) forearm    5) 1° Burns
B/LE

## Medical Decis. Making: L1: straightforward; L2,3: low/complex, L4: mod, L5: hi
Slash box if ordered ☑, check normals □ circle and note abnormals

**Lab:**
☐ CBC: ___ nl ___ nl except: ___    ☐ Other data reviewed:
Hct ___ Hgb ___ Plts ___    ☐ ETOH    ☐ Drug screen
WBC ___    ☐ PT, PTT, INR ___    ☐ T & G x ___ units RBC
Neut % ___ Lymph % ___
Monos % ___ Eos % ___
Baso %___
☐ BMP: ___ nl ___ nl except: ___    ☐ ABG: on ___ RA/O2 ___ % / L
☐ CMP: ___ nl ___ nl except:    pH ___ PO2 ___
NA ___ K ___ Glu ___ Cl ___    PCO2 ___ HCO3 ___
CO2 ___ Anion gap ___ BUN ___
Creat. ___ B/C Ratio ___ Calcium ___    ☐ P. Ox ___ %: on ___ RA / O2 ___ % / L
Alk Ptase ___ SGPT (ALT) ___    ___ nl / hypoxic
SGOT (AST) ___ T. Bili ___ T. Prot ___
Albumin ___ Globulin ___ A/G Ratio ___    ☐ EKG ___ Nl study
☐ U/A: ___ dip neg ___ dip neg except:    ___ NSR ___ nl intervals
___ nl QRS ___ nl ST-T waves
Micro neg ___ neg except ___
Compared to:
___ Qual hCG: ☐ Blood ☐ Urine  Neg / Pos    ___ unchanged / changed
___ sand quantitative
Read by: ___ E.P.
☐ Cardiac monitor: ___ NSR

**Wound Repair:**

| Location | Length / Depth | Repair |
|---|---|---|
| 1 R F.A. | 5 cm | Shioo |
| superfic / SQ/ M | Running | Dermabond / staples |
| 2 L F A | 4 cm | Sutures | # of 3 -0 Vicryl |
| superfic / SQ/ M | Skin-simple | # of 3 -0 Nylon |
| | | Dermabond / staples |
| | internal | # of ___ -0 ___ |

**Comments:**
lassal intact ___ pass intact    2 LFA Sub Q Simple running
Level of contamination: ___ clean / min / mod / severa    Skin mattress
Anesthesia: local / digital block ___ mL of 1% lido    w/ epi HCO3
☐ prep    average
☐ Explored: ___ no F.B. ___ no tendon inj. / F.B. identified / tendon injury ___
Suture removal instruct: 10 days    interrupted
☐ irrigat. ___ debrided ___ undermined ___ revised    ___ F.B. removed
(for above: min = 1, mod = 2, extensive = 3)

**Consultation:**
Consulted Dr. ___
Suggests: admit. / discharge / will see: ___ / Transfer to ___
Case discussed with: patient / family / other: ___

**Disposition:**
___ Transfer to: ___
___ Admit: ___ IP / ___ OP ___ ICU / Tele / Med-Surg    ___ EMTALA form completed
Admitting physician ___    Covering Physician: ___
Orders written in ED ___
☐ Discharged. Condition: ✓ improved ___ unchanged    d/w PMD-5 d
Instructions given: ✓ written—refer to: ___ WMH form ___ RTW form ___ school excuse
___ off work / school  or ___ lmtd work / school / gym thru ___
Discharge Rx: alb xterd 5d pred  Voltab
Certified Emergency? ☐ Yes  ☐ No
**Sig:** ___    date 3/13/08  Attend / Resid / PA TNP
___    date 3/13/8  Attend. / Resid / PA / NP
See: ___ Addendum ___ Attending note    ☐ dictated
Copies to: ___    ☐ chart completed

Accepting Physician: ___

Copyright © 2008, EvolveMed. ERG

**Multiple Injuries**

PROVIDENCE HOSPITAL EMERGENCY DEPARTMENT, MOBILE, AL (334) 633-1000

53176690  396009
JACKSON ,CORLA
06/25/1961  46 B F 03/13/08
018996    BENJAMIN, REGINA M.  MD
E/R

Check (✓) for normals, circle positives, slash negatives, note findings

Date: 3/13/08    E.P. time: ___    Age: ___    Wt: ___    Sex: M / F
P: 111    BP: 186/70    RR: 18    Temp: 99.1

Chief Complaint: Multiple Injuries    House Fire - fell

Arrived by: EMS / walk-in / wheelchair
Hx limited by: Altered LOC / acuity / intoxication

Referred by: self / clinic / PMD / family / EMS
Historian: patient / family / friend / EMS

**HPI:**

Onset: undetermined
Occured: 0830 time ___ date ___
mins / hrs / days PTA

Modifying factors: none
witnessed / unwitnessed
Ambulatory at scene: yes / no
Contributing factors: ETOH / drugs /
seizure / syncope / suicide attempt
Other:

Location:
home / work
Other:

Activity during injury: ___ unknown
Putting fire out
fell 8 ft off ladder

Assoc. sxs: none
no complaints / "just stiff and sore"
wounds / bony deformity / swelling
Pain: head / face / neck / chest / abd /
back / pelvis / RUE / LUE / RLE / LLE
LOC: unknown / dazed / + LOC
Duration: ___ see / mins / hrs
Remembers: incident / coming to hospital
GCS: 15 / 15

Mechanism of injury: ___ unknown
fell

Location (anatomic):
Burns legs, smoke inhalation locs

Prior Rx: none
EMS: spinal immobilization
Other:

Injury description (qualify):
deformity / dislocation / sprain / strain /
contusion / laceration / puncture / stab / abrasion /
GSW / F.B. / burn
Pain: none / at rest / ☐ wt bearing / ☐ use
Pain quality: sharp / dull / aching / throbbing

Pt was trying to put fire out — She has smoke inhalation burns to legs - lac's to arms, injury to hip

Last ate: ___

All systems reviewed: negative / negative except as marked
___ Constit: weak / faint / fever / chills / diaphoresis
___ Eyes: F.B. sensat. / vision probs
___ ENT: ear, nose or throat s/s / hearing probs / hoarseness
___ CVs: chest discomfort / palpitations
___ Resp: SOB / breathing probs / cough / wheezing
___ GI: N / V
___ GU: urinary probs / kidney probs / genitalia pain    LMP: ___ nl / abnl
___ MS: other painful areas: N P
___ Skin: skin probs
___ Neuro: numbness / tingling / focal deficits / paralysis / dizzy / change in behavior / incontinence / seizures
___ Psych: psych probs / anxiety / depression
___ Hemat / Lymph: bruising / bleeding
___ Endo: polyuria / polydipsia
___ Immun / Allerg: HIV / AIDS / splenectomy

**Past, Family, Social History:**
Reviewed ___ RN note ___ Old Records ___ NH records ___ EMS note

PMHx: none ___ unknown
peptic ulcer / GI bleed  HTN
arthritis / CAD / IDDM / NIDDM
thrombophlebitis / clotting probs

Surgical Hx: none unknown
Prior trauma:
Other:

Family Hx: none ___ unknown ___ N/A
DM / CAD
clotting probs

Meds: none reviewed RN note
ASA / NSAIDs / Coumadin / Plavix
insulin / steroids
antihistamines / narcotics / sedatives

Social Hx: ___ unknown
Tobacco: current / no ___ yes
quit ___ years ago; hx of ___ pack years
ETOH: yes drinks / wk
Recent? ___
Drugs:
Occupation:
Home situation: ☐ lives alone ☐ w/spouse

Allergies: reviewed RN note
Diphtheria tetanus current: no
___ yes/ year

Home situation: ☐ w/family ☐ N.H. ☐ CBRF

**Physical Exam:**
Exam limited by: urgency of condition / pt. uncooperative
Gen: Anxious: no / mild / mod / severe  Distress: no / mild / mod / severe
VS nl    Orthostat. VS: O - + :
Nutritional status: nl / obese    Hydration: nl / dehydrated
Longboard / cervical immob. ( ED / EMS ) / IV / intubation / splint
___ color, tone
___ shake, alert, appropriate
___ diaphoretic
___ cyanotic

Skin / Nail:
___ nl appearance ☐ cyanosis
___ pale, nl capillary refill
___ hydrated, warm & dry

Head / Neck (MSK):
___ head ☐ trauma, skin nl
___ neck ☐ tend, ROM full

Eyes:
___ nl, conj. nl
___ PERRL, EOM's full
___ corneas, chambers, disc nl

ENT:
___ nose nl
___ ext. ears, canals, TM's nl
___ mouth, teeth, oropharynx nl

CV:
___ nl rate, rhythm
___ heart sounds nl
___ pulses = neck & all 4 ext.

Resp, Chest:
___ no resp distress
___ breath sounds nl, clear, equal
___ chest inspect, palpat. nl

Spine / pelvis / ribs (MSK):
___ thorac., lumbar inspect., palpat. nl
___ pelvis stable, inspect., palpat. nl

GI / Abdomen / Flank:
___ nl appearance, BS nl
___ soft, nontender
___ flank nl appearance, nontender
___ rectal nl, heme neg.

MSK:
___ gait nl
___ toes, nails nl

Neuro:
___ alert & oriented x 3
___ motor sensory nl
___ face intact, symmetrical
___ nl gait, cerebellar function
___ cranial nerves intact

Psych:
___ affect, mood nl
___ judgment, memory nl

(R) / (L) upper ext.
(mark nl as R, L or B):
___ appearance nl, nontender
___ ROM full ☐ pain:
___ stable:
___ strength and tone nl

(R) / (L) lower ext.
(mark nl as R, L or B):
___ appearance nl, nontender
___ ROM full ☐ pain:
___ stable:
___ strength and tone nl

Glasgow Coma Score  15
Eyes open: 4-spontaneous  3-to command
2-to pain  1-none.
Verbal: 5-nl  4-confused  3-inappropriate
2-incoherent sounds  1-none
Motor: 6-normal  5-localizes pain
4-withdrawn  3-decorticate (flex.)
2-decerebrate (ext.)  1-none

hip / buttock tender - large lac/v
buttock

nose
sooty exudate
Plom
☐ hoarse
☐ crying
lungs
(+) mild
wheeze

Copyright © 2005, EvolveMed, ERG    Photocopying without permission is prohibited    E.D. PHYSICIAN RECORD    AAEM Template    Page 1 of 2

# GE Money
# Home Loans

PO BOX 25142
Santa Ana, CA 92799-0005

February 8, 2006

**Address**

RE: Account No.          : 0835002124
    Property Address     : 13230 Tom Gaston Rd  Mobile, AL 36695-0000
    File No.             : CRTN
    Date of Loss        : LDT

Dear Corla Jackson

We realize how difficult a loss to your home can be, and we want to process your claim as quickly and efficiently as possible. To assist in the claim- handling process, please submit the following items to our office:

1. The insurance claim check(s) (SIGNED/ENDORSED BY ALL PARTIES LISTED ON THE CHECKS».
2. The enclosed *Homeowner's Statement* completed and signed by you.
3. A copy of the insurance adjuster's detailed report or your contractor's detailed damage estimate for repairs.
4. A copy of the signed contract between you and your contractor doing the repairs.
5. The enclosed *Contractor Affidavit/Statement* needs to be completed and returned to our office once ALL REPAIRS HAVE BEEN COMPLETED.

Upon receipt of the fully endorsed insurance claim check and above required information, we will release a portion of the claim funds within 4-5 business days after receipt.  If all required items are not received, we are unable to proceed with a  disbursement of the claim funds until the missing items are submitted.

Due to the amount of loss, partial funds will be released at various stages. After the first release of insurance funds, periodic property inspections will be needed to confirm repair progress. Please contact our office seven to ten business days prior to needing additional funds to allow time for the property inspection.

If I may be of additional assistance, please call me at 1-866-354-7281.

Sincerely,

Insurance Claims Center
FAX: (866)336-3811
Same Phone Number (#)
GE TPA 13
HAZ6-NWCLMDP
Enclosures
BRB

Plaintiff Was Supposc To Be Given Fund In Full
To Gutt Out on Rebuilt
Without Dedection on Depreciations

**GMAC Mortgage**

P.O. Box 25144
Santa Ana, CA 92799-5144

February 14, 2007

Corla Jackson
13230 Tom Gaston Rd
Mobile, AL 36695-0000

RE: Property Address  : 13230 Tom Gaston Rd  Mobile, AL 36695-0000
    Tracking No        : 732379
    Date of Loss       : 08/24/2005
    Account No         : 0835002124

Dear Corla Jackson :

Our office was previously notified of damage sustained to the above- referenced property. At that time, you were provided with the required forms to be completed and returned to our office with the endorsed claim check.

We are currently reviewing our files and request an update on the status of your claim. Please check the appropriate information below:

☒    Send me information again.

☐    The endorsed insurance claim check, *Homeowner's Statement*, and detailed damage estimate will be sent
     to your office by _____.

☐    Repairs have been completed. Please contact me at _____ to set up an
     inspection of the property.

Please return any documentation in the enclosed self-addressed envelope.

Your prompt attention to this matter is greatly appreciated.

If Iwe may be of further assistance, please contact our office at 1-866-354-7281.

**Insurance Claims Center**
**FAX: (866)336-3811**

** BRE **

*Property Cannot Be Signed off On By County Cheng*
*Building INSPECTOR: ... See ATTACHED LETTERS*
① *Property Has Been Distroyed By Major Water Damage*
*Which Contaminated Rain Water Debris, Wood Framing, Insul.*
② *PROPERTY Has Been Distroyed By TOXIC MOLD*
③ *Please TURN IN your (Policy) For Complete PAY Off by*
*Farmers Insurance Group... Corla Jackson*

# GMAC Mortgage

P.O. Box 52052
Phoenix, AZ  85072

April 2, 2008

Corla Jackson
13230 Tom Gaston Rd
Mobile, AL 36695-0000

RE:  Property Address        : 13230 Tom Gaston Rd  Mobile, AL 36695-0000
     Account No.             : 0835002124
     Tracking No.            : 902022
     Date of Loss            : 3/13/2008

Dear Corla Jackson:

We realize how difficult a loss to your home can be, and we want to process your claim as quickly and efficiently as possible. Due to the status of your loan and investor requirements, we have the responsibility to ensure the damage is repaired. To assist in the claim-handling process, please submit the following items to our office:

1.  The insurance claim check(s) (SIGNED/ENDORSED BY ALL PARTIES LISTED ON THE CHECK(S).

2.  The enclosed *Homeowner's Statement* completed and signed by you.

3.  A copy of the insurance adjuster's detailed report or your contractor's detailed damage estimate for repairs.

4.  A copy of the signed contract between you and your contractor doing the repairs.

5.  The enclosed *Contractor Affidavit/Statement* needs to be completed and returned to our office once ALL REPAIRS HAVE BEEN COMPLETED.

Upon receipt of the fully endorsed insurance claim check and above required information, we will release a portion of the claim funds within 4-5 business days after receipt.  If all required items are not received, we are unable to proceed with a disbursement of the claim funds until the missing items are submitted.

Due to the amount of loss, partial funds will be released at various stages. After the first release of insurance funds, periodic property inspections will be needed to confirm repair progress.  **FLORIDA PROPERTIES: Please contact our office 10 to 14 business days prior to needing additional funds to allow time for the property inspection.**
NON-FLORIDA PROPERTIES: please contact our office 7-10 business days prior to needing additional funds.

If I may be of further assistance, please contact me at 1-866-354-7281.

Sincerely,
Insurance Claims Center
**FAX: (866)336-3811**

GMAC TPA 13 (a)
HAZ6-NWCLMDQ

Enclosures
** BRE **

Sep 07 07 02:47p                                    251-653-5803                          p.2



**Research and**
**Engineering, Inc.**

5815 I-10 Industrial Parkway
Theodore, Alabama 36582
(251) 653-9009
Fax: (251) 653-5803
E-mail: AL@LAREC2.com
www.LAREC2.com

August 23, 2007

**GMAC** Mortgage
P.O. Box 25144
Santa Anna, CA 92799-5144

      Re: Structural Inspection of Jackson Residence, 13230 Tom Gaston Rd., Mobile, AL
         File No.    : GMC002124
         Date of Loss  : 08/24/2005

Dear Sir or Madam:

This letter is to further comment on the findings of an Engineering Inspection to the subject residence at the above address performed in April, 2006. This dwelling is insured by Farmers Insurance Policy # 92649-56-20 and was under repair from damage sustained in Hurricane Katrina in August, 2005 at the time of that inspection. The claim number for those repairs is 1007093144-1-1. As stated in my report:

The subject structure is located in a high wind area and in accordance with the International Building Code is required to be constructed to withstand a Basic Wind Speed (3 second gust) of 140 miles per hour. The dwelling is located in an area that is defined as Exposure C in accordance with the aforementioned code.

The damage caused by Hurricane Katrina included structural damage to the roof structure as well as considerable interior damage due to water incursion from the loss of the integrity of the roof cover. Although much of the damage was a direct result of the wind load of the hurricane, the damage was augmented by the substandard construction of the roof structure.

The aforementioned report was based upon a visual inspection of the structure at that time. Since a large portion of the roof was destroyed and there was considerable interior damage, I would consider the structure <u>unlivable</u> as a result of my observations. In order to complete the repairs from the point of that inspection it would be very difficult for a contractor to perform the necessary work with the residence occupied.

Since my inspection was limited to a visual inspection, it was impossible to determine damage to the structure beyond the roof structural damage. There was evidence of water incursion which undoubtedly caused interior damage to the walls and ceilings. Also, based upon the observed quality of the framing and workmanship in the roof structure, I would expect other deficiencies in the framing of the walls.

Sep 07 07 02:47p                                    251-653-5803                        P.3

Letter Re: Jackson, August 23, 2007, page 2.

Based upon the observed level of damage to the structure and the construction
deficiencies previously reported, my recommendation is that the repairs required will be
extensive enough in accordance with the Mobile County Building Code to make it
necessary for the structure to meet current code requirements. This is particularly
important since the structure is located in an Exposure C environment and in the 140 mph
wind load area.

If there are any further questions, please feel free to contact me.

Thank you for the opportunity to be of service to you.

Sincerely,

J. Albert McEachern, Jr., P.E.
Consulting Engineer

CC: Ms. Jackson

what does it mean when a Hurricanes leave sags and dips



AOL | Mail | Toolbar

Location: Mobile, AL 36695 | Search History | Advanced Search | Settings

Web   Images | Videos | Maps | News | Shopping | more »

**What does it mean when a Hurricanes leave sags and dips**

Web Results 1 - 10 of about 2,660

[PDF] **SAFE REHABILITATION OF HURRICANE-DAMAGED HOMES**
Roofs that **sag** in the middle or at the ends due to load-bearing walls that have shifted. ... a **dip** in the **roof** and sill beam. ribbon board, cracked floor joist .... However if there is a lot of **water damage**, and/or mold growth ... In adults , lead poisoning may **cause** high blood pressure, fertility ...
hud.gov/offices/lead/library/misc/HUD_CSS_Booklet.pdf - Similar

[PDF] **Response to Floods and Water Damage for Libraries, ...**
Jun 14, 2008 ... Go onto the **roof** if rising water makes it necessary as long as no thunderstorm is in progress. ... highway **dips**, where water may pool and pose threats. .... Emergency Drying Procedures for **Water Damaged** Collections. ... Pools of cool standing water (which can **cause** hypothermia if the water is less ...
www.loc.gov/preserv/emergprep/floodcomp.pdf - Similar

**Roofing: How dry does the deck need to be?, asphalt shingles, ...**
Apr 30, 2009 ... Anything that might soak up **water**, like insulation must be ripped out as it can ... Several interior rooms beneath the **damaged roof** show obvious signs of warped ... one could SEE an extreme bow or **sag**, but are there degrees of tolerance in what ... Look for isolated humps or **dips** between rafters. ...
en.allexperts.com/q/Roofing-1598/2009/4/dry-deck-need... - Similar

**Hurricane Survival Tips - Hurricane Mitigation & Survival**
The two huge masses of **water** do **leave** the land in much the same way, .... When **water** kills or **does damage**, the wind put it up to it. .... and with **major hurricanes**, it ain't over until the National Guard arrives. .... Invest in a **hurricane roof** as the main hole you want to avoid is a big one with a view of Heaven. ...
www.hurricane-man.com/survival-tips.html - Similar

**General information | RAGBRAI**
This may **cause** your group to be ineligible for the lottery. .... RAGBRAI is a **major** economic boost to every church, Boy Scout or Girl .... Your wristband also will give you priority to **sag** wagons, bicycle shop repairs and many other services. ... If you race ahead, lag behind or **leave** the official bicycle route, ...
ragbrai.com/index.php/about/general-information/ - Similar

**Antigua - Local Reports (Caribbean Hurricane Network)**
that it **does** not necessarily **mean** that the case brought by ABITPC against govern- .... it was badly **damaged** by the 1990s **hurricanes** that kept visiting Antigua.. . ....... Whatever will **cause** this **dip** could occur earlier? I certainly hope not! ..... WHAT a way to start a week... with a 140 mph **major hurricane** on your ...
stormcarib.com/reports/2003/antigua.shtml - Similar

**Using Technology to Reduce Risk and Improve Worker Safety | ...**
The root **cause** of this unwanted connection is often a result of insulation breakdown. ... equipment **damage** and present a fire and explosion risk to personnel (see photo 1). .... 5) To reduce the momentary line-voltage **dip** occasioned by the occurrence and ..... Utility Deregulation, **What Does it Mean** to Inspectors? ...
www.iaei.org/magazine/?p=2449 - Similar

**Pain in Maine, but they can measure rain « Climate Audit**
But all the data sufficient to predict **hurricanes** is OK? ..... (Heck, if it's like my house, the whole electrical system voltage **sags** whenever a big ..... that CO2 is not a **major** factor in **causing** the earth to warm: You are a denier. ...... **Does** this **mean** that it's OK to shade the truth about AGW so that someone, ...
www.climateaudit.org/?p=1816 - Similar

40

| Potential Health Effects Associated with Inhalation Exposure to Molds and Mycotoxins |
|---|

Research on mold and health effects is ongoing. This list is not intended to be all-inclusive.

The health effects listed above are well documented in humans. Evidence for other health effects in humans is less substantial and is primarily based on case reports or occupational studies.

- Allergic Reactions (e.g., rhinitis and dermatitis or skin rash)
- Asthma
- Hypersensitivity Pneumonitis
- Other Immunologic Effects

All molds have the potential to cause health effects. Molds produce allergens, irritants, and in some cases, toxins that may cause reactions in humans. The types and severity of symptoms depend, in part, on the types of mold present, the extent of an individual's exposure, the ages of the individuals, and their existing sensitivities or allergies. Specific reactions to mold growth can include the following:

Allergic Reactions: Inhaling or touching mold or mold spores may cause allergic reactions in sensitive individuals. Allergic reactions to mold are common – these reactions can be immediate or delayed. Allergic responses include hay fever-type symptoms, such as sneezing, runny nose, red eyes, and skin rash (dermatitis). Mold spores and fragments can produce allergic reactions in sensitive individuals regardless of whether the mold is dead or alive. Repeated or single exposure to mold or mold spores may cause previously non-sensitive individuals to become sensitive. Repeated exposure has the potential to increase sensitivity.

Asthma: Molds can trigger asthma attacks in persons who are allergic (sensitized) to molds. The irritants produced by molds may also worsen asthma in non-allergic (non-sensitized) people.

Hypersensitivity Pneumonitis: Hypersensitivity pneumonitis may develop following either short-term (acute) or long-term (chronic) exposure to molds. The disease resembles bacterial pneumonia and is uncommon.

Irritant Effects: Mold exposure can cause irritation of the eyes, skin, nose, throat, and lungs, and sometimes can create a burning sensation in these areas.

Opportunistic Infections: People with weakened immune systems (i.e. immune-compromised or immune-suppressed individuals) may be more vulnerable to infections by molds (as well as more vulnerable than healthy persons to mold toxins). Aspergillus fumigatus, for example, has been known to infect the lungs of immune-compromised individuals. These individuals inhale the mold spores which then start growing in their lungs. Trichoderma has also been known to infect immune-compromised children.

Healthy individuals are usually not vulnerable to opportunistic infections from airborne mold exposure. However, molds can cause common skin diseases, such as athlete's foot, as well as other infections such as yeast infections.

Mold Toxins (Mycotoxins)

Molds can produce toxic substances called mycotoxins. Some mycotoxins cling to the surface of mold spores; others may be found within spores. More than 200 mycotoxins have been identified from common molds, and many more remain to be identified. Some of the molds that are known to produce mycotoxins are commonly found in moisture-damaged buildings. Exposure pathways for mycotoxins can include inhalation, ingestion, or skin contact. Although some mycotoxins are well known to affect humans and have been shown to be responsible for human health effects, for many mycotoxins, little information is available.

Aflatoxin B, is perhaps the most well known and studied mycotoxin. It can be produced by the molds Aspergillus flavus and Aspergillus parasiticus and is one of the most potent carcinogens known. Ingestion of aflatoxin B, can cause liver cancer. There is also some evidence that inhalation of aflatoxin B, can cause lung cancer. Aflatoxin B, has been found on contaminated grains, peanuts, and other human and animal foodstuffs. However, Aspergillus flavus and Aspergillus parasiticus are not commonly found on building materials or in indoor environments.

41



**Research and
Engineering, Inc.**

5815 I-10 Industrial Parkway
Theodore, Alabama 36582

(251) 653-9009
Fax: (251) 653-5803
E-mail: amce2000@aol.com

April 7, 2006

**Subject:** Hurricane Ivan-Hurricane Katrina
Farmers Insurance Policy #: 92649-56-20

**Re:** Structural Engineer Inspection Report (Residence - Dwellings)
Ms. Corla Jackson & GMAC Mortgage
13230 Tom Gaston Road
Mobile, Alabama 36695

To Whom It May Concern:

This letter is to report the findings of an Engineering Inspection to the subject residence at the above
address. This dwelling is insured by Farmers Insurance Policy # 92649-56-20 and is currently under
repair from damage sustained in Hurricane Ivan (September 2004) and Hurricane Katrina (August
2005). The claim numbers for both Hurricanes are (2C-118138) and (1007093144-1-1). This policy
includes a clause insuring against code violations, and therefore the repairs being performed include
modifications to meet the Building Code.

In accordance with the International Building Code 2000, the current applicable code to Mobile
County, this residence is required to be constructed to withstand a Basic Wind Speed (3 second gust)
of 140 miles per hour. The subject structure is located in a high wind area and is in an open field, with
no trees or other structures to slow down or block southerly winds from the Gulf of Mexico.
Therefore, the dwelling is located in an area that is defined as Exposure (C) in accordance with the
aforementioned code.

The damage caused by Hurricane Ivan and Hurricane Katrina included structural damage to the roof
structure as well as considerable interior damage due to water incursion from the loss of the integrity
of the roof cover including lifting of the sheathing and roofing materials and loss of ridge and power
vents. Hurricane Ivan & Hurricane Katrina perils forced in rain via ridge caps, ridge vents, hooded
powered vents, and vents, lifted shingles, lifted decking, windows and soffit.

Although much of the damage was a direct result of the wind load of the hurricane, because the house
was not built in compliance with Mobile County Building Codes, the damages were augmented by the
substandard construction of the roof structure. Specifically:

- Roof structure is a hip style, high slope, design with fiberglass reinforced architectural
  shingles on 24/16 7/16" OSB. In many locations the maximum 24" on centers spacing of the
  2 x 6 rafters was exceeded.
- The maximum hip and ridge rafter spans were also exceeded.
- Although there were rat runs in some locations to support the mid span of the 2 x 6 rafters, the
  maximum spans for the rafters were exceeded in many locations.
- The rat run supports were not adequate in size or support. In one case only two 2 x 4 supports
  were used to hold a 2 x 4 rat run over 8 rafters.
- There was no cross bracing of any of the rafters.

- The workmanship of the carpentry was substandard.
- Recommended nailing schedules were not adhered to and in some cases the OSB panels were barely attached to the rafters.
- Minimum nailing requirements for the architectural shingles was not met. In some cases as few as 2 nails were used to attach a strip of roofing.
- The rafter materials used included many finger-joint splices, some less than 2 feet apart. Although the code allows use of finger-joint splices, the required grade markings were not apparent.
- The use of 7/16" OSB for roof sheathing with 24" on centers rafters is minimal in most locations, but is not recommended for high wind loads with Exposure C.
- The Dryer Vent was improperly installed and discharged into the attic space.
- Window seals were improperly sealed allowing water to be forced in.

This inspection was a visual only inspection. Based upon the observed code deficiencies, it is recommended that a more detailed study be made of this Structure and a plan for completing the repairs be made that incorporates reinforcing the structure to meet current codes to avoid additional losses due to future storms

If you have any further questions, please call me at, (251) 653-9009.

Thank you for the opportunity to be of service to you.

Sincerely,

J. Albert McEachern, Jr., P.E.
Consulting Engineer
Ph: (251) 653-9009
Fax: (251) 653- 5803

Photos



Photo 1



Photo 2

Photos



**Photo 3**
Note lack of braces and mid span supports



**Photo 4**
Note OSB has been replaced on slope to right

Photos



Photo 5



Photo 6



Photo 7





## Farmers did Deceptive Practices
## Breached Contract
## Bad Faith
## Committing Fraud

To prevent from covering all the Hurricane Ivan & Hurricane Katrina covered losses
On This Structural Damages Roof In Full
And the Entire Dwellings Inside
Also on the Other Structures & Personal Property, to date!



Statement Date    06/15/04



Remit Below and Return For Your Records

# OPTION ONE
## MORTGAGE
an H&R BLOCK company

018416/FL-RE-PI-

| | | |
|---|---|---|
| Payment Due Date | | 08/01/04 |
| Current Payment | $ | 1,920.64 |
| Past Due Payment(s) | $ | .00 |
| Unpaid Late Charges | $ | .00 |
| Other Charges | $ | .00 |
| Total Amount Due | $ | 1,920.64 |
| After 08/16/04 Add Late Charge Of | $ | 102.17 |
| Total Payment After 08/16/04 | $ | 2,022.81 |

## Account Information

| Item Description | | Amount |
|---|---|---|
| **Balances** | | |
| Principal Balance | $ | 240,000.00 |
| Escrow Balance | $ | 871.14 |
| Unpaid Late Charges | $ | .00 |
| **Payment Factors** | | |
| Int Rate - First Mtg | | 7.650% |
| Principal & Interest | $ | 1,702.83 |
| Escrow Payment | $ | 217.81 |
| Other | $ | .00 |
| Total Payment Amount | $ | 1,920.64 |
| **Year to Date** | | |
| Interest | $ | 1,428.00 |
| Taxes | $ | .00 |

CORLA JACKSON
13230 TOM GASTON RD
MOBILE   AL   36695-8658

| | |
|---|---|
| **Loan Number** | 0013474848 |
| Property Address | 13230 TOM GASTON RD |
| | MOBILE   AL   36695 |
| Home Phone | 251-865-4440 |
| Work Phone | 702-524-3135 |

## Activity Since Last Statement

| Date | Description | Principal | Interest | Escrow | Misc. | Late/Other Charges | Total |
|---|---|---|---|---|---|---|---|
| 06/03 | NEW LOAN SET UP | $240,000.00- | | | | | |
| 06/03 | PREDIST PMT | | $1,428.00 | $871.14 | | | $2,299.14 |

Payments received after the statement date may not appear on this statement.

# WELCOME TO OPTION ONE

Option One Mortgage Corporation is pleased to welcome you as a customer. We are happy to have helped facilitate the financing of your home loan. For your convenience, we will send you a billing statement every month which includes a payment stub and an envelope that you can use to mail in your payments.

*Please verify the information on the billing statement, particularly your property and mailing addresses. You can use the back of the payment stub to indicate any corrections or changes needed.*

*To access your account information online, you must first register as a new user. During the registration process, you will be asked to choose a user name and password. You will then use the user name and password you created to log in.*

WELCOME

New Loan Verification Line: **888.323.4390**
Online account access: **www.optiononeonline.com**

DETACH AND SEND LOWER PORTION WITH PAYMENT

# GE Money
# Home Loans

*PO BOX 25142*
*Santa Ana, CA 92799-9905*

February 8, 2006

\*\*Address\*\*

RE: Account No.                    : 0835002124
     Property Address         : 13230 Tom Gaston Rd Mobile, AL 36695-0000
     File No.                      : CRTN
     Date of Loss              : LDT

Dear Corla Jackson

We realize how difficult a loss to your home can be, and we want to process your claim as quickly and efficiently as possible. To assist in the claim- handling process, please submit the following items to our office:

1. The insurance claim check(s) (SIGNED/ENDORSED BY ALL PARTIES LISTED ON THE CHECKS».
2. The enclosed *Homeowner's Statement* completed and signed by you.
3. A copy of the insurance adjuster's detailed report or your contractor's detailed damage estimate for repairs.
4. A copy of the signed contract between you and your contractor doing the repairs.
5. The enclosed *Contractor Affidavit/Statement* needs to be completed and returned to our office once ALL REPAIRS HAVE BEEN COMPLETED.

Upon receipt of the fully endorsed insurance claim check and above required information, we will release a portion of the claim funds within 4-5 business days after receipt. If all required items are not received, we are unable to proceed with a disbursement of the claim funds until the missing items are submitted.

Due to the amount of loss, partial funds will be released at various stages. After the first release of insurance funds, periodic property inspections will be needed to confirm repair progress. Please contact our office seven to ten business days prior to needing additional funds to allow time for the property inspection.

If I may be of additional assistance, please call me at 1-866-354-7281.

Sincerely,

Insurance Claims Center
FAX: (866)336-3811

GE TPA 13
HAZ6-NWCLMDP
Enclosures
BRE

Loan Number:  651003367              Servicing Number:  001347464-8              Date: 05/26/04

# INSTRUCTIONS TO CLOSING AGENT

BORROWER: CORLA JACKSON                          MONTHLY PAYMENT:
DOCUMENT DATE:  05/26/04                          P & I:    $1,702.83
DISBURSEMENT DATE:  06/01/04                      TAX:      $73.32
BRANCH: Atlanta House                             INS.:     $144.49
PROPERTY ADDRESS: 13230  TOM GASTON RD            FLOOD:    $0.00
  MOBILE, AL  36695-8658                          MISC:     $0.00
COUNTY: Mobile                                    TOTAL: $1,920.64

TO:  HERITAGE TITLE                    TITLE CO:  STEWART TITLE COMPANY
     2521 HILLCREST RD STE C                      5760 I-55 NORTH SUITE 200
     MOBILE, AL 36695                             JACKSON, MS 39211
     CLOSING AGENT                                CLOSING AGENT
     Phone: (251) 776-1661                        Phone: (601) 977-9776
     Fax:    (251) 662-3336                       Fax:    (601) 977-9790
     E-Mail:paigetitle@yahoo.com

CLOSING AGENT No./: JACKSON                       TITLE ORDER NO.:  999010283

SALES PRICE:                    INTEREST RATE:  7.650%       FIRST PAYMENT DATE: August 01, 2004
LOAN AMOUNT: $240,000.00         LOAN TERM: 360               LAST PAYMENT DATE: July 01, 2034

## TITLE INSURANCE REQUIREMENTS

---

ALTA POLICY** must contain endorsements: 6.1, 8.1 (OR EQUIV)    CLTA 116 (OR EQUIV)

EAGLE TITLE POLICY **All Inclusive/Comprehensive (If Applicable)
  with liability in the amount of $ 240,000.00              on property described herein.

   **Date** and **Time** of Title Policy must be exactly as reflected on the Deed of Trust/Mortgage/Security Deed.

** *Please issue ALTA Short Form Policy when available.  For Second Mortgage Loans, Lender will accept CLTA or
standard ALTA Policy in lieu of an Extended Coverage ALTA Policy.*

---

LIABILITY SUBJECT ONLY TO: (Gen. & Spec. taxes) Fiscal Year; COUNTY/PARISH: All 2003 Paid
CITY:                                            SCHOOL:
CITY/SCHOOL:                                     SPECIAL DISTRICT:
TOWN/TOWNSHIP/BOROUGH/PLANTATION:
VILLAGE:                                         SURFACE WATER MANAGEMENT:

Funds may be used for account of the vestees or mortgagors, and you will record all instruments when you comply with the
following:

1.  Issue said form of Policy showing name of insured to read
       Option One Mortgage Corporation, a California Corporation, Its
                           Successors and/or Assigns

2.  Issue said form of Policy showing title vested as shown below.
    Title must be vested in individuals only.
    CORLA JACKSON, A  SINGLE WOMAN

3.  Issue said form of Policy free from encumbrances except items
    . NONE

    of Preliminary Title Report or Title Commitment dated   05/03/04

4.  Survey exception, if applicable, MUST be removed from the title policy.  If survey is required to remove the survey exception
    and issue the title policy as requested, contact the Lender prior to disbursement of funds.

5.  VERIFICATION that vesting on Grant/Warranty Deed matches Deed of Trust/Mortgage/Security Deed.

6.  All liens, judgements, delinquent or outstanding personal and/or property taxes must be paid in full and released or a partial
    reconveyance issued releasing our subject property.  INDEMNIFICATIONS are NOT ACCEPTABLE.  -PROOF OF PAYOFF
    IS REQUIRED.

7.  This loan MUST record in        ☒ First Lien Position.        ☐ Second Lien Position.

8.  Forward original title policy in duplicate directly to lender within 90 days of closing (see page 5)

# NexTier Bank

1301 Grandview Avenue, Suite 120
Pittsburgh, PA 15211
Phone: 877-533-2784 Fax: 412-390-3535

To whom it may concern,

Based on the credit information supplied to me, Corla Jackson would qualify for a mortgage if all negative information regarding her mortgage were taking off the three credit bureaus. **(Trans Union, Equifax and Experian)** Then her credit scores would need to go back up in the 700 Range.  Once her credit scores are increased and the negative reporting of her current mortgage company is removed she would be able to apply for a new mortgage.

This property is **uninhabitable to live in, it cannot be borrowed against, or used as a secured instrument to be sold as a primary residents for anyone to live in** until it is brought up to zoning coded, and all the structural damages are completed, for its intended use.

Based on our knowledge of all (Structural Damages) it must also comply, with high wind zoning laws first, which exceeds the limit of the mortgage of **($240,000)**, and the limit of insurance of **($312,000)**.  We cannot put a mortgage against a property that cannot be lived in safely, or as permanent primary residents, to occupy per our appraisers guidelines.

This letter basically says (Ms. Jackson) would qualify for a mortgage, if she did not carry the liability on an insured uninhabitable home, which cannot legal be occupied, until it can be signed off on by (Mobile County Chief Building Inspector.

When we closed on Ms. Jackson's current property the lender required the homeowner to obtain homeowners insurance that would cover any damages whether from fire, flooding, hurricane or any other storm related damages to this property. **This insurance covers, the entire replacement cost.**

This case had nothing to do with mold, at the time of loss. This had to do with Structural Damages being completed on this Dwelling, at the time of loss. Because the Structural Damages was not completed, and not brought up to high wind codes, to prevent further and major damages at the time of loss mold set in, by not removing and replacing the wet contaminated rain water debris throughout out the entire Dwelling.  This included inside the walls, structure, and hard wood floors throughout.

If you have any questions or concerns regarding this matter, please do not hesitate to call or e-mail me.

Sincerely,

*[signature]*

**Steve Arthur**
**412-390-3530 Ext. 108**
**412-298-2748 Cell Phone**   *(Evenings and Weekends)*
sarthur@fedmc.com

**********************************************************
Federated Mortgage Corp. or any subsidiaries of Federated Mortgage Corp. shall not be liable for the contents contained in this electronic data.  The views contained in this electronic document are the views of the individual sending this document.
**********************************************************

OMB No. 2502-0265

**A. U.S. Department of Housing and Urban Development**

| B. Type of Loan | | |
|---|---|---|
| 1. [ ] FHA | 2. [ ] FMHA | 3. [ ] Conv. Unins. |
| 4. [ ] VA | 5. [ ] Conv. Ins. | [X] Other. |
| 6. File Number | | 7. Loan Number |
| 401562 | | 651003367 |
| 8. Mortgage Ins. Case No. | | |

## Settlement Statement

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing; they are shown here for information purposes and are not included in the totals.

D. Name of Borrower: Corla Jackson

E. Name of Seller:

F. Name of Lender: Option One Mortgage Corporation, 1600 Parkwood Circle SE, Atlanta, GA 30339-2147

G. Property Location: 13230 Tom Gaston Rd, Mobile, AL 36695-0000

H. Settlement Agent: Heritage Title, LLC (228) 868-7152        TIN: 63-1253722

Place of Settlement:

I. Settlement Date: 5/28/2004        Proration Date: 6/1/2004

| 100. | Gross amount due from borrower: | | 400. | Gross amount due to seller: | |
|---|---|---|---|---|---|
| 101. | Contract sales price | | 401. | Contract sales price | |
| 102. | Personal property | | 402. | Personal property | |
| 103. | Settlement charges to borrower (line 1400) | 234,768.18 | 403. | | |
| 104. | Pay off of Vendors Lien | 5,000.00 | 404. | | |
| 105. | Pay off Vendors Lien | 5,000.00 | 405. | | |
| 106. | City/town taxes | | 406. | City/town taxes | |
| 107. | County taxes | | 407. | County taxes | |
| 108. | Assessments | | 408. | Assessments | |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| 120. | Gross amount due from borrower: | 244,768.18 | 420. | Gross amount due to seller: | 0.00 |
| 201. | Deposit or earnest money | | 501. | Excess deposit (see instructions) | |
| 202. | Principal amount of new loan(s) | 240,000.00 | 502. | Settlement charges to seller (line 1400) | 0.00 |
| 203. | Existing loan(s) taken subject to | | 503. | Existing loan(s) taken subject to | |
| 204. | | | 504. | Payoff of first mortgage loan | |
| 205. | | | 505. | Payoff of second mortgage loan | |
| 206. | | | 506. | | |
| 207. | | | 507. | | |
| 208. | Lender Credit to Borrower | 4,800.00 | 508. | | |
| 209. | | | 509. | | |
| 210. | City/town taxes | | 510. | City/town taxes | |
| 211. | County taxes | | 511. | County taxes | |
| 212. | Assessments | | 512. | Assessments | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. | Total paid by/for borrower: | 244,800.00 | 520. | Total reduction in amount due seller: | 0.00 |
| 301. | Gross amount due from borrower (line 120) | 244,768.18 | 601. | Gross amount due to seller (line 420) | 0.00 |
| 302. | Less amount paid by/for borrower (line 220) | 244,800.00 | 602. | Less total reduction in amount due seller (line 620) | 0.00 |
| 303. | CASH ([ ]FROM [X]TO BORROWER | 33.82 | 603. | CASH ([ ]FROM [ ]TO SELLER | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 405 and 404, 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER INSTRUCTION - if this real estate was your principal residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Heritage Title, LLC (228) 868-7152 with your correct taxpayer identification number.

If you do not provide Heritage Title, LLC (228) 868-7152 with your correct taxpayer identification number, you may be subject to civil or criminal penalties.

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| **700.** | Total sales/broker commission | File Number: 461583 | | |
| | Division of commission (line 700) as follows: | | | |
| **701.** | $ | | | |
| **702.** | $ | | | |
| **703.** | Commission paid at settlement | | | |
| **704.** | | | | |
| **800.** | **Items payable in connection with loan** | | | |
| **801.** | Loan origination fee | | | |
| **802.** | Loan discount | | | |
| **803.** | Appraisal fee | to  Colorado Federal Savings Bank | | |
| **804.** | Credit report | POCB 300.00 | | |
| **805.** | Lender's inspection fee | | | |
| **806.** | Mortgage insurance application fee | | | |
| **807.** | Assumption fee | | | |
| **808.** | Processing Fee | to  Colorado Federal Savings Bank | | |
| **809.** | Application Fee | | 375.00 | |
| **810.** | Administration Fee | | | |
| **811.** | Tax Service Fee | to  Fidelity National Tax Service | | |
| **812.** | Flood Certification Fee | to  First American Flood Data Services | 70.00 | |
| **813.** | Broker Fee | to  Colorado Federal Savings Bank | 12.00 | |
| **814.** | Funding Fee | to  Option One Mortgage Corporation | 3,120.00 | |
| **815.** | Underwriting Fee | to  Option One Mortgage Corporation | 50.00 | |
| **816.** | Items required by lender to be paid in advance | | 598.00 | |
| **901.** | Interest from  6/1/2004  to  7/1/2004  at $51.0000/day  for 30 days. | | | |
| **902.** | Mortgage insurance premium for | | 1,530.00 | |
| **903.** | Hazard insurance premium for  1 yr. | to  Farmers Insurance    POCB 1739.82 | | |
| **904.** | | | | |
| **905.** | | | | |
| **1000.** | **Reserves deposited with lender** | | | |
| **1001.** | Hazard Insurance | 4 mo.@ $144.4500 per mo. | | |
| **1002.** | Mortgage Insurance | | 577.98 | |
| **1003.** | City property taxes | | | |
| **1004.** | County property taxes | 11 mo.@ $73.3200 per mo. | | |
| **1005.** | Annual assessments (maint.) | | 806.52 | |
| **1006.** | | | | |
| **1007.** | | | | |
| **1008.** | | | | |
| **1009.** | Aggregate Accounting Adjustment  to  Coris Jackson | | | |
| **1100.** | **Title charges** | | (513.34) | |
| **1101.** | Settlement or closing fee | to  Heritage Title, LLC | | |
| **1102.** | Abstract or title search | to  Heritage Title, LLC | 350.00 | |
| **1103.** | Title examination | | 100.00 | |
| **1104.** | Title insurance binder | | | |
| **1105.** | Document preparation | | | |
| **1106.** | Notary fees | | | |
| **1107.** | Attorney's fees to | | | |
| | includes above items no.: | | | |
| **1108.** | Title insurance | to  Heritage Title, LLC | | |
| | includes above items no.: | | 705.00 | |
| **1109.** | Lender's coverage | $240,000.00 | $175.00 | |
| **1110.** | Owner's coverage | $240,000.00 | $530.00 | |
| **1111.** | | | | |
| **1112.** | Endorsement Fee | | | |
| **1113.** | Courier Fee | to  Heritage Title, LLC | | |
| **1200.** | **Government recording and transfer charges** | | 30.00 | |
| **1201.** | Recording fees: | Mortgage $434.00 | | |
| **1202.** | City/county tax/stamps: | | 434.00 | |
| **1203.** | State tax/stamps: | | | |
| **1204.** | | | | |
| **1205.** | | | | |
| **1206.** | | | | |
| **1300.** | **Additional settlement charges** | | | |
| **1301.** | Survey | | | |
| **1302.** | Pest inspection | | | |
| **1303.** | Pay off Mortage | to  Southtrust Bank | | |
| **1304.** | Payoff Mortgage | to  Hibernia Bank | 44,834.89 | |
| **1305.** | Pay on Account | to  NCO Financial | 181,398.15 | |
| **1400.** | Total settlement charges (entered on lines 103, section J and 502, section K) | | 291.00 | |
| | | | 234,766.16 | |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

Coris Jackson    5/26/04

Coris Jackson

Paid In Full

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.





WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN: RECORDS MANAGEMENT

2004042906 Book-5605 Page-1910
Total Number of Pages: 11

*28.50*
*360.00*
*388.50*
*10.00*
*398.50*
*2.00*
*400.50*

Heritage Title, LLC    $240,000.⁰⁰

Loan Number: 651003367
Servicing Number: 001347464-8

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  May 26, 2004                    . The grantor is
CORLA JACKSON, A  SINGLE WOMAN

("Borrower"). This Security Instrument is given to
            Option One Mortgage Corporation, a California Corporation

which is organized and existing under the laws of  CALIFORNIA                              , and whose
address is
                    3 Ada, Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED FORTY THOUSAND
         . . .  AND NO/100THs        Dollars (U.S.  $240,000.00                ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on  July 01, 2034
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following
described property located in
                                        Mobile                              County, Alabama:
02-35-06-23-0-000-002.010
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

State of Alabama - Mobile County
I certify this instrument was filed on:

Thu, Jan-10-2004 @ 2:13:56PM
RECORDING FEE          28.50
SURCHARGE              10.00
S. R. FEE               2.00
MORTGAGE TAX          360.00
TOTAL AMOUNT         $400.50

2004042906
Don Davis, Judge of Probate

which has the address of  13230   TOM GASTON RD, MOBILE

Alabama        36695-8658              ("Property Address");                      [Street, City],
               [Zip Code]

    TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever,
together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

**ALABAMA - Single Family**
Page 1 of 7

C.J.

ALD10011.wp (11-30-01)

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates or expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If the Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower; (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the hold of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in

Mobile                                              County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirements for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due. Lender shall apply the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not exceed or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph

17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the

Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charge, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

[Check applicable boxes]

[X] Adjustable Rate Rider          [ ] Condominium Rider          [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider          [ ] Planned Unit Development Rider          [ ] Occupancy Rider
[ ] Other(s) (specify)          [ ]

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____          _____(Seal)
                                                                                                        -Borrower

_____          _____(Seal)
                                                                                                        -Borrower

Corla Jackson    5/26/04 (Seal)          _____(Seal)
CORLA    JACKSON          -Borrower                                              -Borrower

_____(Seal)          _____(Seal)
                                          -Borrower                                              -Borrower

STATE OF ALABAMA,

                                                                            Mobile          County ss:

    On this    26th    day of    May                              , 2004    , I,

                                                      , a Notary Public in and for said county and in said state,
hereby certify that

        Corla Jackson

                                                          , whose name(s)    is    signed to the
foregoing conveyance, and who    is    known to me, acknowledged before me that, being informed
of the contents of the conveyance,        s he    executed the same voluntarily and as
    She    act on the day the same bears date.
    Given under my hand and seal of office this    26th    day of    May          , 2004

My Commission Expires: 5/8/2005          _____
                                                                  Notary Public

This instrument was prepared by

ALD10017.wp (11-30-01)

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN:    RECORDS MANAGEMENT



Loan Number: 651003367
Servicing Number: 001347464-8

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  May 26, 2004        . The grantor is
CORLA JACKSON, A  SINGLE WOMAN

("Borrower"). This Security Instrument is given to
        Option One Mortgage Corporation, a California Corporation

which is organized and existing under the laws of CALIFORNIA                    , and whose
address is
                3 Ada,  Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED FORTY THOUSAND
        • • • AND  NO/100THs       Dollars (U.S.  $240,000.00         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on  July 01, 2034          .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following
described property located in
                        Mobile                                County, Alabama:
02-35-05-23-0-000-002.016
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of  13230  TOM GASTON RD, MOBILE

Alabama                                                                        [Street, City],
            36695-8658          ("Property Address");
            [Zip Code]

        TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever,
together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

ALABAMA - Single Family
Page 1 of 7                                C.J.                    ALD10011.usp (11-30-01)

CJ000182

4/21/2004 17:17    ~412-398-8635    Federated Mortgage Corp.    Blakeney-Jenifer    6/6

## Supplemental Addendum

| | | | | File No.  24-Jack |
|---|---|---|---|---|
| Borrower/Client   Corie Jackson | | | | |
| Property Address   13230 Tom Dawson Rd | | | | |
| City   Mobile | County   Mobile | | State   AL | Zip Code   36695-6658 |
| Lender   Colorado Federal Savings Bank | | | | |

Subject property value is $50,000 for three acres.  This equates to roughly $17,000 per acre.

A $34,000 adjustment was made to each comparable sale to accommodate an additional two acres to subject and all sales.

The adjusted values of each comparable sale as well as the subject's indicated value will increase accordingly.

The subject and five acres will be, say, $340,000.

All site line adjustments are in excess of 10% after the $34,000 addition.  All other adjustments are within guidelines.

All comparable sales are in more defined and well developed subdivisions with higher per acre site values than subject.

The $34,000 adjustments for additional acreage attempts to reconcile all valuable variables involved while acknowledging a reasonable addition in values for this acreage.

Form TADD — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# **GMAC** Mortgage

P.O. Box 25144
Santa Ana, CA 92799-5144

September 6, 2006

Corla Jackson
13230 Tom Gaston Rd
Mobile, AL 36695-0000

RE: Property Address     :13230 Tom Gaston Rd  Mobile, AL 36695-0000
     File No.            : GMC002124
     Date of Loss        : 08/24/2005

To Whom It May Concern:

This letter is to confirm the following. Hurrican Katrina damages on this property have been partially completed. At this point we have confirmed that only the roof has been completed.

To date we received a total of 69,294.45 in checks payable to Ms. Jackson and GMAC. The estimate provided by Town & Country Roofing was $59,800.00. Leaving only 9,494.45 for the rest of repair to the property.

According to Ms. Jackson she has not received any additional funds for repair of the rest of the damages to the property.

Any further assistance need you may contact me at 866-354-7281 ext. 8534

Sincerely,

Insurance Claims Center
FAX: (866)336-3811

3451 Hammond Avenue
PO Box 780
Waterloo IA 50704-0780

**GMAC** Mortga

September 29, 2008

Corla Jackson
13230 Tom Gaston Rd
Mobile AL 36695

RE:    Account Number         0835002124
       Property Address       13230 Tom Gaston Rd
                              Mobile AL  36695

Dear Corla Jackson:

I am writing to confirm the review completed by our insurance claims division relating to your
insurance losses to the property at 13230 Tom Gaston Road. Thank you for taking the time to
provide us with the documentation relative to this situation.

We have confirmed two insurance losses were filed on this property:

   1.  Fire claim dated March 13, 2008.  Claim settlement of $18,213.23
   2.  Hurricane loss dated August 24, 2005.  Claim settlement of $69,294.15

I understand you do not feel Farmers has properly handled the claims filed under your
homeowner's policy; however, this dispute is between you and your insurance provider.

GMAC Mortgage has no rights to file under the mortgage clause if the carrier has paid out on the
claim, which it appears Farmers has paid on both claims.  If Farmers denied the claim, we need
written documentation from Farmers to you indicating they are denying your claim.

Typically, if Farmers feels GMAC Mortgage should have filed under the mortgage clause they
would send a letter confirming this request.  We have no record of a letter of request to file under
the mortgage clause or a letter denying payment of the claim from Farmers Insurance.

Based on this review, there is no additional action required of GMAC Mortgage at this time.  We
must continue our attempts to collect the payments owed on this mortgage.

If I can be of additional assistance, please contact me at 1-800-627-0128, extension 2365385.

Sincerely,

Sharon Robinson
Advocacy Resolution Specialist
Executive Offices

# Mold Reporter

**Home**

**About**

## News, Vol. 1, No. 3

Prev | Next | Volume 1, Number 3

[ Search ]

### The Final Solution: Mold-Contaminated House Burned to Ground

In February of this year, the Associated Press reported a Eugene, Oregon, couple's plan to burn their house to the ground, letting the fire department use it for a training exercise. It became contaminated while Mark and Mary Jan O'Hara were having it remodeled. They and their children were made sick as result (headaches, respiratory problems, rapid weight loss, swollen and pain joints, chronic fatigue, profuse nosebleeds and severely inflamed sinuses). After the house is demolished, they plan to rebuild on the same 8-acre plot land.

The O'Haras are seeking $3.5 million in damages in a lawsuit that will probably be brought to trial this summer. They allege that their architect (Michael Cockram of Eugene) failed to control the quality of work by the general contractor, Stangland Construction, which failed to keep the inside the house dry during remodeling. These issues are being contested.

The family tried to decontaminate their personal belongings, but had to disca many of them.

### Melinda Ballard & Family win Large Settlement against Farmers Insurance

It was a lawsuit that made legal history. The Dripping Springs, Texas, family whose house was lost to mold last year was awarded $32 million by a jury in the first part of June, 2001. Farmers Insurance Exchange, they found, failed t adequately and swiftly cover repairs for a water leak. As a result, the mold Stachybotrys overran their 22-room house and severely damaged the parents' health and that of their child.

The award was broken down as follows:

- $6.2 million in actual damages. The house will have to be decontaminated, leveled, and rebuilt.
- $12 million in punitive damages.
- $5 million for mental anguish
- $8.9 million in lawyers' fees.

The award may be reduced by Judge John Dietz when he officially enters the judgment on June 25. Also: Farmers may appeal. And political pressure may ultimately release insurers from the necessity of covering conditions that may

 **FARMERS**

Farmers National Catastrophe Center of Excellence
17150 West 118th Terrace
Olathe, KS 66061

April 6, 2006

Ms. Corla Jackson
13230 Tom Gaston Rd
Mobile, AL 36695

RE:        Claim: 1007093144:
           Policy: 926495620:
           DATE OF LOSS:        08/29/05

Dear Ms. Jackson:

In regards to the estimate you have provided from Town and Country Roofing, LLC. We have updated your estimate to include replacement of your shingles, roof decking, framing for rafter repair, insulation, and 10% overhead and 10% profit to cover contractor charges. As has been addressed in previous letters, mold is specifically excluded from coverage therefore I will not be able to include the mold remediation from the estimate provided.

Sincerely,
Fire Insurance Exchange


James M. Jenkins
Catastrophe Claims Service Representative
National Catastrophe Center

# TOWN & COUNTRY
# ROOFING CONTRACTORS L.L.C.
# 633-8224 FAX 634-1655

## PROPOSAL FOR STRUCTURE DAMAGED ROOF

NAME:<u>CORLA JACKSON</u>
INS. COMPANY:<u>FARMERS INSURANCE</u>
STREET:<u>13230 TOM GASTON RD.</u>
CITY:<u>MOBILE</u>  STATE:<u>AL.</u>
PHONE:<u>228-235-8047</u>

<u>REROOF DUE TO HURRICAN'S IVAN & KATRINA</u>
REMOVE PRESENT ROOFING TO THE BASE,CLEAN DECK
THROUGHLY.APPLY FIFTEEN POUND FELT.INSTALL WEATHER
WATCH STROM GAURD IN ALL VALLEYS.REPLACE ALL ROOF
JACKS AND PIPE COLLARS.INSTALL TWO POWER
TURBINES.INSTALL WHITE ALUMINUM EAVE METAL
SURROUNDING PRIMMISSES OF HOUSE.COVER ROOF WITH
FOURTY YEAR COMP. SHINGLES.
ROOF PITCH NINE ON TWELVE,FIFTY FOUR SQUARES.TOTAL
PRICE FOR ROOF $13,500.00

<u>WOOD WORK</u>
RAISE LOW RAFFTERS AND REPLACE DAMAGED SURRPORT
BEAMS AND TRUSSES.REMOVE AND REPLACE ALL
DECKING.INSTALL FIFTY FOUR HUNDRED SQUARE FEET OF
HALF INCH (OSB) DECKING.TOTAL PRICE $18,400.00 (NOT
INCLUDING FACIAL BOARDS OR SOFFITS)

Commercial • Residential          Roofing
Since 1975

# TOWN & COUNTRY
# ROOFING, LLC
All Types Roofing & Waterproofing
**We Stop Leaks**
WRITTEN GUARANTEE - FREE ESTIMATES
LICENSED & BONDED
251-633-8224
Fax  633-4418        Presented by:___B.B.___

## TREATMENT
TREAT WOOD IN INTIRE ATTIC FOR MOLD. TOTAL PRICE
$4,750.00 *OR Remove Wet Damaged 2/4' S/wood*

## INSULATION
REMOVE ALL INSULATION IN ATTIC AND REBLOW. TOTAL
PRICE $5,900.00

## DEBRIS
HAUL OFF ALL DEBRIS DEVELOPED FROM JOB AND CLEAN IN
WAY OF SAME. TOTAL PRICE $5,000.00

INSPECTION IS REQUIRED BY COUNTY ON THIS SEVERLY
STURCTURAL DAMAGED AND DANGEROUS ROOF.
ADDITIONAL FEES FOR STATE OF ALABAMA GENERAL
CONTRACTORS REQUIRED BY LAW AND EXPECT FEES
~~$10,000.00~~ *FRANK MOORE $12,250.00 (CONTRACTORS Licensing Fee Only) OR WH Construction, Addional Fees (FOR over Seeing JOB Required B*

THE ROOF STRUCTURE WAS DAMAGED BECAUSE THE ROOF
AND ITS SUPPORT WAS TIED INTO THE FRAMING OF THE
HOUSE WHICH CAUSE MAJOR DAMAGE.

THESE FEES SHOULD COVER THE INTIRE STUCTURAL
DAMAGED ROOF ONLY.

IF YOU HAVE ANY QUESTIONS PLEASE CALL THE NUMBER
LISTED ABOVE.

THANK YOU FOR CALLING TOWN & COUNTRY!



*Total $ 59,800*



Dictionary | Thesaurus | Encyclopedia | Translator | Web            Login | Register | Help

mortgage clause

**Related Searches**

Standard mortgage c...
Bank mortgage claus...
Mortgagee clause
Exculpatory clause
Countrywide home lo...
Loss payee on prope...

**Nearby Words**

mortgage banker
mortgage bond
mortgage broker
**mortgage clause**
mortgage deed
mortgage holder
mortgage loan

## mortgage clause — 1 dictionary result

Bank of America® Mortgage
Take Advantage Of Low Refi Rates For Home Loans Up To $3 Million.
www.bankofamerica.com

Mortgage
Refinance Now and Save - No SSN Rqd Get 4 Free Quotes - Save Here!
MortgageRefinance.SmartQuote.com

See Todays Mortgage Rates
$180,000 Mortgage under $999/mo. As Seen on Good Morning America!
www.Mortgage.LowerMyBills.com

» Forum                » Style guide
» School gear           » Literary terms



THE DAILY
BEAST

Berlin Wall Legend
Shattered

GET XTRA INSIGHT ►

### Legal Dictionary

Main Entry: **mortgage clause**
Function: *noun*
: a clause in an insurance contract (as for fire insurance) that entitles a named mortgagee to be paid for damage or loss to the property —see also OPEN MORTGAGE CLAUSE, STANDARD MORTGAGE CLAUSE

Merriam-Webster's Dictionary of Law, © 1996 Merriam-Webster, Inc.
Cite This Source

Bank of America® Mortgage
Take Advantage Of Low Refi Rates For Home Loans Up To $3 Million.
www.bankofamerica.com

Mortgage
Refinance Now and Save - No SSN Rqd Get 4 Free Quotes - Save Here!
MortgageRefinance.SmartQuote.com

Search another word or see **mortgage clause** on Thesaurus | Reference



Search faster for words with
Dictionary.com Premium.

Sign Up Now



SPELL YOUR WAY
TO THE TOP OF THE CLASS
PLAY
Mike Spell's Classic

» A NEW word game from Dictionary.com



Dictionary.com

*Find out what 'truth' is...in Icelandic!*

*Use our multilingual dictionary to find words in 30 different languages.*

See Todays Mortgage Rates
$180,000 Mortgage under $999/mo. As Seen on Good Morning America!
www.Mortgage.LowerMyBills.com

4.25% Fixed Refinance
No Hidden Fees. Refi & Save w/ DPR® As Featured on CNNMoney and Forbes!
Mortgage.DeltaPrimeRefinance.com

mortgage clause

About · Privacy Policy · Terms of Use · Ask Answers · Advertise with Us · Link to Us · Contact Us
Dictionary.com LLC. Copyright © 2009. All rights reserved.

Follow us:   Twitter   Facebook

Home | Español

# RCS - Residential Credit Solutions

First Time Visitors
About Your Loan / About Us  Contact Information
Existing Customers

**Customer Login**

User Name:

[                    ]    Password:

[                    ]

Log In

Forgot your Username?

Forgot your Password?

Not Registered Yet?

Escrow Account Information  Insurance Information  Payment Services  Payment Counseling  Payoff
Request  End of Year FAQs  Insurance Loss Draft FAQs  Contact Information

**Make A Payment**

Investor Services
General Investor Information  Corporate Information  Contact Information
Existing Customers    Insurance Information



## Homeowner's Insurance Information

Insuring your home is an important way to protect your most
valuable asset. Maintaining adequate insurance means that
you will be covered in the unlikely event of a loss.

Having homeowner's insurance is an obligation under your
mortgage contract, and providing your lender with evidence of
adequate insurance coverage is an important responsibility of
home ownership. Everyone must have hazard insurance on
their property. If your property is located in a flood zone, you
must also obtain flood insurance on your property. In certain
states or geographic zones where windstorms, earthquakes, or
hurricanes occur, additional coverage against resulting
damage is required.



# Exhibits & Case Laws

Number Of Pages:_____

As a result of the foregoing transaction, Smith and others ultimately initiated litigation
against Walden in the Montgomery Circuit Court (case no. CV–95–1093), seeking a
judgment declaring the ownership of certain property. Walden filed several counterclaims
against Smith, seeking damages for default on a promissory note, breach of a joint-
venture agreement, and fraudulent suppression. Because a detailed summary of the
background of these disputes was provided in Walden v. Hutchinson, 987 So.2d 1109
(Ala.2007), from which we quote extensively below, we use the terms defined therein as
defined terms in this opinion.

State of Alabama
Unified Judicial System

**COVER SHEET**
**CIRCUIT COURT - CIVIL CASE**
(Not For Domestic Relations Cases)

Form ARCivP-93    Rev. 5/99

Case Number: C V [blank] [blank] [blank] [blank] [blank] [blank] [blank] 4 9 . [blank]

Date of Filing: 0 [blank] / 1 8 / 2 0 1 2
Month    Day    Year

Judge Code: [blank]

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF *Mobile* , ALABAMA
*(Name of County)*

*Cora Jackson*                    v.    *GMAC Mortgage*
Plaintiff                                    Defendant

**First Plaintiff**  ☐ Business  ☒ Individual          **First Defendant**  ☐ Business  ☐ Individual
                      ☐ Government  ☐ Other                              ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box *(check only one)* that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PROPERTY INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/
          Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction
          Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** (check one):  F ☐ INITIAL FILING    A ☐ APPEAL FROM
                                                  DISTRICT COURT
                         R ☐ REMANDED    T ☐ TRANSFERRED FROM
                                            OTHER CIRCUIT COURT
                         O ☐ OTHER: _____

**HAS JURY TRIAL BEEN DEMANDED?**  ☐ YES  ☐ NO    Note: Checking "Yes" does not constitute a demand for a
                                                    jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**  ☐ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:** [blank]
                    1/18/2012            *Cora Jackson*
                    Date                 Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**  ☐ YES  ☐ NO  ☐ UNDECIDED

# Johnson & Freedman, LLC

ATTORNEYS AND COUNSELORS AT LAW
1587 Northeast Expressway
Atlanta, GA 30329
(770) 234-9181
FAX (770) 234-9192

June 29, 2012

**VIA CERTIFIED MAIL**
**91 7108 2133 3938 1862 3763**
**Copy Via Regular Mail**

Corla Jackson
and/ or Tenant(s) or Current Occupant(s)
13230 Tom Gaston Road
Mobile, AL 36695

Re:    **Notice of Demand for Possession and Pursuant to Protecting Tenants at Foreclosure Act of 2009**

| | |
|---|---|
| **File Number:** | JF-14-000933 |
| **Loan Number:** | 0835002124 |
| **Mortgagor:** | Corla Jackson |
| **Property Address:** | 13230 Tom Gaston Road, Mobile, AL 36695 |

Dear Corla Jackson and/or Tenant(s) or Current Occupant(s):

Please be advised that a foreclosure sale of the above-referenced Alabama property 13230 Tom Gaston Road, Mobile, AL 36695 was conducted and the Property was purchased by our client. Your attention is directed to Ala. Code § 6-5-251. In accordance with that statute, our client hereby makes written demand upon you to deliver and quit possession of the Property within ten (10) days from the date of your receipt of this letter and unless possession is delivered within ten (10) days from your receipt of this letter, you will forfeit any right of redemption that you may have.

You are hereby further notified that unless the Protecting Tenants at Foreclosure Act of 2009 (the "Act") applies as outlined below, possession of the Property is hereby demanded within ten (10) days from your receipt of this letter by the purchaser at the foreclosure sale, or their successor or assign. If the Act does not apply and possession is not relinquished in accordance herewith, then eviction proceedings will be filed in the appropriate court.

Pursuant to the Act, if you are a bona fide tenant who entered into a bona fide lease of the Property before the notice of foreclosure, and if the foreclosure sale occurred on or after May 20, 2009, then you must vacate the Property at the end of the remaining current term of your lease, or within ninety (90) days of the effective date of this notice, whichever occurs later. Our client will consider your lease or rental agreement to be bona fide if all of the following conditions exist: (1) you can provide a copy of the lease or rental agreement, or you can provide proof of the lease or rental agreement as explained in the paragraph below; (2) you are not the mortgagor or a child, spouse or parent of the mortgagor; (3) your lease or rental agreement was the result of an arm's length transaction; and (4) your lease or rental agreement requires receipt of rent that (i) is not substantially less than fair market rent for the Property (or if there is more than one unit in the Property, then this requirement would apply to each unit's rent applicable to you), or (ii) the Property's rent (or the subject unit's rent) is reduced or subsidized due to any federal, state or local subsidy.

If you believe that you are a bona fide tenant, please provide the following information within ten (10) days from your receipt of this letter: (i) a copy of the lease or rental agreement, or if you do not have a written lease or rental agreement, then a written explanation of the terms of the lease or rental agreement under which you occupy the Property, including but not limited to the date you entered into the lease or rental agreement, the names of all parties who entered into such agreement, the term of such agreement, the monthly rental amount, the utilities to be paid by the landlord, if any, and whether you receive any assistance under the Section 8 Housing Program of the Department of Housing and Urban Development ("HUD") or any similar governmental program; (ii) proof of your last payment and rental deposit; (iii) a list of any conditions at the Property that require repair; and (iv) whether you are the previous mortgagor or a child, spouse or parent of the previous mortgagor.

If you are a Servicemember on "active duty" or "active service", or a dependent of such a Servicemember, you may be entitled to certain legal rights and protections, including protection from eviction, pursuant to the Servicemembers Civil Relief Act (50 USC App. §§501-596), as amended, (the "SCRA") and, possibly, certain related state statutes. Eligible service can include:

1. Active Duty (as defined in section 101(d)(1) of title 10, United States Code) with the Army, Navy, Air Force, Marine Corps, or Coast Guard; 2. Active Service with the National Guard; 3. Active Service as a commissioned officer of the National Oceanic and Atmospheric Administration; 4. Active Service as a commissioned officer of the Public Health Service; or 5. Active Service with the forces of a nation with which the United States is allied in the prosecution of a war or military action. Eligible service also includes any period during which a servicemember is absent from duty on account of sickness, wounds, leave, or other lawful cause.

If you are such a servicemember, or a dependent of such a servicemember, you should contact Angela McFarland at (404) 417-3252 to discuss your status under the SCRA.

If the Property has already been vacated or if you desire to consensually surrender possession, please sign your name under the "POSSESSION GRANTED" clause below. You should then return the signed original of this letter, along with your keys to the Property, to our attention at the address referenced above and you should retain a copy for your records.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Sincerely,

Angela McFarland

Prommis Solutions, LLC Paralegal on
behalf of **Johnson & Freedman, LLC**

**POSSESSION GRANTED:**

_____     _____