Hearing Date:  September 27, 2012 at 10:00 a.m. (ET)
Objection Deadline:  September 20, 2012 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------- )
In re:                                                      )     Case No. 12-12020 (MG)
                                                            )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,    )     Chapter 11
                                                            )
                                        Debtors.    )     Jointly Administered
--------------------------------------------------------------------- )

**DEBTORS' OBJECTION TO
<u>MATTHEWS MOTION FOR RELIEF FROM STAY [DOCKET NO. 1291]</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ...................................................................................................... 2

OBJECTION............................................................................................................. 4

I.    THE SUPPLEMENTAL SERVICING ORDER DOES NOT GRANT RELIEF
      FROM THE STAY TO PURSUE THE MONETARY CLAIMS .................................... 4

II.   MOVANT IS NOT ENTITLED TO A JURY TRIAL ON THE MONETARY
      CLAIMS PRIOR TO RESOLUTION OF THE REMAINDER OF THE
      FORECLOSURE ACTION .................................................................................... 6

III.  RESOLUTION OF THE MONETARY CLAIMS IS A "CORE PROCEEDING"
      WITHIN THIS COURT'S JURISDICTION ................................................................ 8

IV.   RELIEF FROM THE AUTOMATIC STAY SHOULD NOT BE GRANTED.............. 10

      A.    The Policies Underlying The Automatic Stay Weigh In Favor Of Denying
            The Relief Requested By The Movant................................................................. 10

      B.    Movant Has Failed to Establish Cause for Relief  from the Automatic Stay ...... 12

            (i)     Whether Relief Would Result in a Partial or Complete Resolution
                    of the Issues (Sonnax Factor No. 1)........................................................ 14

            (ii)    The Lifting of the Automatic Stay Is Connected To And Will
                    Interfere With The Debtors' Chapter 11 Cases (Sonnax Factor
                    Nos. 2) And Litigation Of The Monetary Clams In Another Forum
                    Would Prejudice The Interests Of Other Creditors (Sonnax Factor
                    No. 7) .................................................................................................. 15

            (iii)   No Specialized Tribunal Has Been Established To Hear The
                    Foreclosure Action (Sonnax Factor No. 4) .............................................. 17

            (iv)    No Insurer Has Assumed Responsibility For The Foreclosure
                    Action (Sonnax Factor No. 5).................................................................. 18

            (v)     The Foreclosure Action Does Not Primarily Involve Third Parties
                    (Sonnax Factor No. 6).............................................................................. 19

            (vi)    The Interests Of Judicial Economy And Economical Resolution Of
                    The Foreclosure Action Are Best Served By Maintaining The
                    Automatic Stay And The Foreclosure Action Is Not Ready For
                    Trial (Sonnax Factor Nos .................................................................... 20

            (vii)   The Balance Of Harms Favors Maintaining The Automatic Stay
                    (Sonnax Factor No. 12)............................................................................ 21

GMAC MORTGAGE'S MOTION TO DISMISS ................................................... 23

CONCLUSION....................................................................................................... 24

i

<u>Exhibits:</u>

Exhibit 1:        Campbell Declaration

      Exhibit A to Campbell Declaration:  Maryland Court Orders
      Exhibit B to Campbell Declaration:  Movant's Opposition to Motion to Dismiss
      Exhibit C to Campbell Declaration:  Movant's Notice of Dismissal of Count I of
                                       the Counter Complaint

ny-1057787

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Allnutt v. Comptroller of Treasury,
  487 A.2d 670 (Md. Ct. Spec. App. 1985)...............................................................................7

Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow),
  126 F.3d 43 (2d Cir. 1997)....................................................................................................13

City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l Inc.),
  28 B.R. 324 (Bankr. S.D.N.Y. 1983)....................................................................................19

Higgins v. Barnes,
  530 A.2d 724 (Md. 1987). .....................................................................................................6

In re Bally Total Fitness of Greater N.Y., Inc.,
  402 B.R. 616 (Bankr. S.D.N.Y. 2009), aff'd sub nom.,
  Carrera v. Bally Total Fitness (In re Bally Total Fitness
  of Greater N.Y., Inc.), 411 B.R. 142 (S.D.N.Y. 2009) ................................................. passim

In re Ionosphere Clubs, Inc., 922 F.2d 984 (2d Cir. 1990)..........................................................21

In re Cuyahoga Equip. Corp.,
  980 F.2d 110 (2d Cir. 1992)..................................................................................................17

In re Leibowitz,
  147 B.R. 341 (Bankr. S.D.N.Y. 1992)..................................................................................13

In re Motors Liquidation Co.,
  Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010)..........................13

In re Northwest Airlines Corp.,
  No. 05-17930, 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 3, 2006) ........................................21

In re Pioneer Commercial Funding Corp.,
  114 B.R. 45 (Bankr. S.D.N.Y. 1990)...............................................................................10,17

Mazzeo v. Lenhart (In re Mazzeo),
  167 F.3d 139 (2d Cir. 1999)..............................................................................................12,13

Midlantic Nat'l Bank v. New Jersey Dep't of Evnt'l Protection,
  474 U.S. 494 (1986)...............................................................................................................10

Morgan Guar. Trust Co. v. Hellenic Lines, Ltd.,
  38 B.R. 987 (S.D.N.Y. 1984)................................................................................................13

ny-1057787

Schneider v. Schneider,
   624 A.2d 1319 (Md. 1993), rev'd and remanded on other grounds, 644 A.2d 1319
   (Md. 1994) .................................................................................................................7

SEC v. Brennan,
   230 F.3d 65 (2d Cir. 2000)........................................................................................10

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
   907 F.2d 1280 (2d Cir. 1990)..............................................................................12,13

Stern v. Marshall,
   131 S. Ct. 2594 (2011) ..............................................................................................9

Wells Fargo Home Mortg. v. Neal,
   922 A.2d 538 (Md. 2007) .......................................................................................6, 7

**STATUTES**

11 U.S.C. § 362(a)(1)...................................................................................................10

11 U.S.C. § 362(d) ......................................................................................................12

28 U.S.C. § 157(a) ........................................................................................................8

28 U.S.C. § 157(b)(1) ....................................................................................................8

28 U.S.C. § 157(b)(2)(B) ...............................................................................................8

28 U.S.C. § 1334(b) .......................................................................................................8

**OTHER AUTHORITIES**

Collier on Bankruptcy ¶ 362.03 (16th ed. rev. 2012) ..................................................10

Residential Capital, LLC and its affiliated debtors and debtors in possession in the above-caption Chapter 11 cases (collectively, the "Debtors") hereby submit this objection (the "Objection") to the *Motion For Relief From Stay*, dated August 28, 2012, filed on behalf of Kevin J. Matthews [Docket No. 1291] (the "Motion").  In support of hereof, the Debtors submit the Declaration of Natasha Campbell, dated September 20, 2012 (the "Campbell Declaration"), attached hereto as Exhibit 1, and respectfully represent:

### PRELIMINARY STATEMENT

1.      Mr. Matthews ("Movant") seeks relief from the automatic stay to proceed with prepetition claims for monetary damages pending against Debtor GMAC Mortgage, LLC ("GMAC Mortgage") and two individual non-Debtor defendants, which claims are raised by Mr. Matthews as counterclaims in connection with a foreclosure action pending in Maryland state court (the "Foreclosure Action").[1]  As the Court confirmed at the hearing on July 10, 2012, the Supplemental Servicing Order (defined below) is clear that the automatic stay remains in full force and effect with respect to continuation of litigation to prosecute such damages claims against the Debtors.  Furthermore, the determination of the existence and amount, if any, of GMAC Mortgage's liability with respect to such monetary claims is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B), over which this Court has clear jurisdiction.  Finally, the Sonnax factors clearly weigh in favor of denial of the Motion.  Accordingly, the Debtors respectfully request that the Court deny the Motion.

---

[1]      Movant also appears to request clarification regarding the Debtors' position as to the scope of the automatic stay with respect to any non-Debtors that are now, or may in the future be joined as co-defendants to Movant's counter complaint.  (Mot. at ¶ 5.)  The Debtors do not contend that the automatic stay applies to such non-Debtor parties, although they reserve the right to seek appropriate relief with respect to actions brought against such parties.

## BACKGROUND

**General Case Background**

2.     On the Petition Date, each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases (the "Chapter 11 Cases") are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in the Chapter 11 Cases.[2]

3.     On May 16, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

4.     On July 3, 2012, the U.S. Trustee appointed the Honorable Arthur T. Gonzalez, former Chief Judge of this Court, as examiner (the "Examiner").

5.     On July 13, 2012, the Court entered the *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the*

---

[2]     The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc. ("AFI"), which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 6] (the "Whitlinger Affidavit").

*Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "Supplemental

Servicing Order").

**The Foreclosure Action**

   6.  On or about February 12, 2012, GMAC Mortgage filed a complaint in the

Circuit Court for Baltimore City, Maryland (the "Maryland Court") commencing the Foreclosure

Action (See Mot. ¶ 1; Campbell Decl. ¶ 6.), under the caption O'Sullivan, et al. v. Matthews,

Case No. 21-O-12000286 (Bat. City Cir. Ct., Md.).

   7.  On March 19, 2012, Movant filed a Counter Complaint in the Foreclosure

Action, pursuant to which Movant asserts the following counterclaims against GMAC Mortgage

arising from GMAC Mortgage's allegedly improper and unlawful collection practices against

Movant:  Count I – Fraud and Fraudulent Concealment; Count II – Violations of the Maryland

Consumer Protection Act; Count III – Violations of Maryland Mortgage Fraud Protection Act;

Count IV – Violation of Maryland Consumer Debt Collection Act; Count V – Violation of the

Fair Debt Collection Practice Act.  Each count includes a claim for money damages, which in the

aggregate exceed $4.6 million (the "Monetary Claims").  (See Mot. ¶¶ 1, 5; Counter Complaint.)

   8.  On April 25, 2012, GMAC Mortgage filed a motion to dismiss (the

"Motion to Dismiss") the Counter Complaint in its entirety on both procedural and substantive

grounds.

   9.  On or about June 26, 2012, Movant filed a M*otion for Direction*

*Concerning The Automatic Stay As To Counter Defendants Carrie Ward And Jeffrey Stephan*

*And Potential Other Parties By Amendment* ("Motion for Direction") in the Foreclosure Action,

pursuant to which Movant requested clarification regarding the application of the Supplemental

3

Servicing Order to the Foreclosure Action and sought the Maryland Court's advice as to how to

proceed in the face of GMAC Mortgage's bankruptcy.

    10.    On or about June 27, 2012, Movant filed a *Motion For Extension For

*Counter Plaintiff To Respond To Defendants GMAC's & Carrie Ward's Motion To Dismiss Due*

*To The Automatic Stay Of Counter Defendant GMAC* ("Motion for Extension") in the

Foreclosure Action.

    11.    On July 9, 2012, a foreclosure mediation took place in the Foreclosure

Action between Movant and GMAC Mortgage.  The foreclosure mediation has been continued

until October 9, 2012.

    12.    A hearing was held on the Motion for Direction and the Motion for

Extension before the Maryland Court on July 30, 2012.  At the conclusion of the hearing, the

Maryland Court ruled that, regardless of whether or not Movant's Monetary Claims can be

parsed from the non-monetary relief sought by Movant under the Counter Complaint, the

Maryland Court was permitted to entertain the Motion to Dismiss under the Supplemental

Servicing Order.  See Exhibit A to Campbell Decl.

    13.    On August 28, 2012, Movant filed the Motion.

    14.    On September 5, 2012, Movant filed an opposition to the Motion to

Dismiss and a Notice of Dismissal of Count I of the Counter Complaint with the Maryland

Court.  See Exhibits B and C to Campbell Decl.

## **OBJECTION**

### I.    **The Supplemental Servicing Order Does Not Grant Relief From The Stay To Pursue The Monetary Claims**

    15.    The Supplemental Servicing Order provides certain limited relief from the

automatic stay to permit borrowers to proceed, in Debtor-initiated foreclosure proceedings, with

defenses, counter-claims, and Mandatory Monetary Claims (as such term is defined in the

Supplemental Servicing Order) that could defeat a foreclosure. See Supplemental Servicing

Order ¶ 14(a)-(b).[3] Additionally, the Supplemental Servicing Order grants additional limited

relief from the automatic stay in non-judicial foreclosure states for borrowers to continue to

prosecute certain borrower-initiated actions for purposes of defending, unwinding, or challenging

a foreclosure where any applicable challenge period has not yet expired. Supplemental Servicing

Order ¶ 14(a).

      16.    The Monetary Claims are exactly the type of claims that were excluded

from the scope of the limited relief from the automatic stay provided by the Supplemental

Servicing Order, a point Movant does not contest, and which the Maryland Court has already

recognized. Movant asserts that it should nonetheless be granted stay relief above and beyond

that granted to other borrowers who are currently defending foreclosure proceedings brought by

---

[3]    The Supplemental Servicing Order states, in relevant part:

The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:

    (a) except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or eviction has not been awarded or, with respect to completed foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to prosecute appeals with respect to any such direct claims or counter-claims;

    (b) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action . . . .

Supplemental Servicing Order ¶ 14.

the Debtors.  For the reasons set forth below, Movant fails to establish cause warranting such

specialized relief.

## II.    Movant Is Not Entitled to a Jury Trial on the Monetary Claims Prior to Resolution of the Remainder of the Foreclosure Action

17.    Movant argues that stay relief is warranted because Maryland case law

requires that the Monetary Claims be heard and decided by a jury before the Foreclosure Action

may proceed.  Movant misapplies the cited cases, however.

18.    First, Movant suggests that "responsive legal claims raised in equitable

actions must be heard and decided first, before the equitable claims may be heard," under

Higgins v. Barnes, 530 A.2d 724, 726 (Md. 1987). (Mot. at 6.)  Higgins is inapposite.  In that

case, plaintiff lot owners brought suit for specific performance, seeking to have the defendant

homeowner execute a mortgage.  The defendant counterclaimed for damages for breach of

contract, and requested a jury trial.  The trial court denied the request for a jury trial, and ruled in

favor of the plaintiffs.  On appeal, the Maryland Court of Appeals ruled that the trial court could

not enter a final judgment for specific performance without first determining the amount of the

mortgage it would order defendant to deliver, and, in turn, the trial court could not determine that

amount without first deciding defendant's right to recoupment, if any, which liability should

have been tried by a jury.  Thus, in Higgins, the determination of legal liability by a jury was a

necessary predicate to a judicial determination of whether there existed an equitable right to

specific performance.  That is not the case here.  GMAC Mortgage's right to foreclose does not

depend on whether Movant is successful on his Monetary Claims.  If they did, the Monetary

Claims would be allowed to proceed under the terms of the Supplemental Servicing Order.

19.    Movant also points to Wells Fargo Home Mortg., Inc. v. Neal, 922 A.2d

538 (Md. 2007) ("Neal") for the proposition that GMAC Mortgage could be precluded from

pursuing the Foreclosure Action altogether under the "unclean hands" doctrine. That doctrine

bears no relation to Movant's Monetary Claims, as borne out by a careful reading of <u>Neal</u>. In

<u>Neal</u>, the defendant borrower sought, among other things, declaratory relief to prevent Wells

Fargo from pursuing foreclosure under the deed of trust on the grounds that, in connection with

alleged regulatory violations, Wells Fargo had invalidly declared a default on his mortgage. The

Maryland Court of Appeals explicitly found that the defendant's claim for declaratory relief was

equitable in nature, and noted that whether Wells Fargo complied with the relevant HUD

regulations—<u>i.e.</u>, whether it had "clean hands" or not—was an issue to be resolved in the trial

court's resolution of the defendant's request for injunctive relief. <u>Id</u>. at 543, n. 5. As

underscored by the <u>Neal</u> court, the unclean hands doctrine applies only to requests for equitable

relief. <u>Id</u>. at 552-53 (citations omitted); <u>see also</u> <u>Schneider v. Schneider</u>, 624 A.2d 1319, 1324

(Md. 1993), <u>rev'd</u> <u>and</u> <u>remanded</u> <u>on</u> <u>other</u> <u>grounds</u>, 644 A.2d 510 (Md. 1994) ("It is only when

the plaintiff's improper conduct is the source, or part of the source, of his <u>equitable</u> claim, that he

is to be barred because of this conduct." (emphasis added)).

       20.    The foreclosure proceeding is equitable in nature, and the unclean hands

doctrine may therefore be asserted as a defense. Movant is not entitled to a jury trial on either

the foreclosure or the unclean hands defense. <u>See</u> <u>Allnutt v. Comptroller of Treasury</u>, 487 A.2d

670, 675 (Md. Ct. Spec. App. 1985) ("The right of jury trial . . . does not apply to civil

proceedings in equity. . . ." (citations omitted)). To the extent Movant is asserting the unclean

hands doctrine as a defense to the foreclosure itself, he is already afforded relief from the

automatic stay to do so under the Supplemental Servicing Order, and to have that defense

adjudicated by the Maryland Court. However, Movant's Monetary Claims are admittedly

entirely legal in nature (<u>see</u> Mot. at 6), and are not defenses to the foreclosure. Movant's

apparent contention that the foreclosure cannot proceed without a jury trial because the factual

allegations underlying the Monetary Claims may also support a defense to the equitable

foreclosure proceeding is simply incorrect.

### III.    Resolution Of The Monetary Claims Is a "Core Proceeding" Within This Court's Jurisdiction

21.    This Court has jursidction over the adjudication of Movant's claims

asserted against the Debtors.  See 28 U.S.C. § 1334(b) ("[T]he district courts shall have original

but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or

related to cases under title 11." 28 U.S.C. § 1334(b).  28 U.S.C. § 157(a) in turn provides that

"[e]ach district court may provide that any or all cases under title 11 and any or all proceedings

arising under title 11 or arising in or related to a case under title 11 shall be referred to the

bankruptcy judges for the district." 28 U.S.C. § 157(a).  Pursuant to that statute, as implemented

by the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for

the Southern District of New York dated July 10, 1984 (Ward, Acting C.J.) as amended by

Standing Order M-431, dated February 1, 2012 (Preska, C.J.), any or all cases under title 11 and

any or all proceedings arising under title 11 in this District are referred to the bankruptcy judges

in this district.

22.    The jurisdiction of this Court is further governed by 28 U.S.C. § 157(b),

which provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all

core proceedings arising under title 11." 28 U.S.C. § 157(b)(1).  Core proceedings include the

"allowance or disallowance of claims against the estate. . . ." 28 U.S.C. § 157(b)(2)(B).  Movant

filed a proof of claim against GMAC Mortgage on account of the Monetary Claims.  The

resolution of that proof of claim constitutes a core proceeding.  (Mot. at ¶ 2, n. 3.)  That certain

of the Monetary Claims are based on state law does not limit the Court's authority to make a

8

determination as to their validity or amount.  See, e.g., In re Bally Total Fitness of Greater N.Y.,
Inc., 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Carrera v. Bally Total Fitness
(In re Bally Total Fitness of Greater N.Y., Inc.), 411 B.R. 142 (S.D.N.Y. 2009) (noting the
Court's "significant experience in applying state law").

       23.      Movant mistakenly asserts that the United States Supreme Court's ruling
in Stern v. Marshall, 131 S. Ct. 2594 (2011) ("Stern") deprives this Court of jurisdiction with
respect to the Monetary Claims.  In Stern, the United States Supreme Court held that a
bankruptcy court, as a non-Article III court, lacked constitutional authority under Article III to
enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on
a creditor's proof of claim, notwithstanding the statutory authority granted to bankruptcy courts
to resolve such counterclaims under 28 U.S.C. §157 (b)(2)(C).  The holding of Stern is narrow,
and addresses only counterclaims by the estate against persons filing claims against the estate.
Id. at 2620 ("We do not think the removal of counterclaims such as Vickie's from core
bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we
agree with the United States that the question presented here is a 'narrow' one.").  Here,
Movant's Monetary Claims are counterclaims asserted against GMAC Mortgage, and, in fact,
Movant has filed a proof of claim in the Chapter 11 Cases.  They fall squarely within 28 U.S.C.
§157 (b)(2)(B), not (b)(2)(C), and will be resolved in their entirety in connection with the claims
adjudication process before this Court.  As a result, Movant's reliance on Stern is misplaced and
does not warrant relief from the automatic stay.

IV.     **Relief From The Automatic Stay Should Not Be Granted**

      A.     **The Policies Underlying The Automatic Stay Weigh In Favor Of Denying The Relief Requested By The Movant**

      24.     Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that

the filing of a bankruptcy petition:

> operates as a stay, applicable to all entities, of –

> > (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

      25.     The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws."  Midlantic Nat'l Bank v. New Jersey Dep't of Evnt'l Protection, 474 U.S. 494, 503 (1986).  The automatic stay is of considerable importance in cases such as this, where the Debtors seek to sell all or substantially all of their assets.  It maintains the status quo to protect the debtor's ability to control the sale or other disposition of property of the estate.  Collier on Bankruptcy ¶ 362.03 (16th ed. rev. 2012).  The automatic stay prevents the state-law "race to the courthouse," and is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  SEC v. Brennan, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted).  In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell."  In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

      26.     One of the primary objectives of the Chapter 11 Cases is the preservation of the Debtors' going concern value through the sale of their servicing platform and legacy assets

through which the Debtors hope to maximize creditor recoveries.[4]  The automatic stay is critical

to the Debtors' ability to achieve this objective because it will permit the Debtors' management

and employees, including the Debtors' in-house legal department (the "Legal Department"), to

focus on the tasks critical to achieve a successful resolution of these cases, including, but not

limited to, the following:  (i) myriad due diligence and other issues with respect to the proposed

sales of the Debtors' servicing operations and legacy loan portfolios, (ii) the multitude of tasks

related to preparing and filing a plan and disclosure statement and obtaining the requisite court

approvals of the disclosure statement and confirmation of the plan, (iii) producing documents

and responding to requests for information in connection with investigations by the Creditors'

Committee and the Examiner and other pending requests for documents, and (iv) obtaining

approval for settlement agreements regarding potential claims to be asserted by or against the

Debtors' estates[5] – all of which the Debtors' seek to accomplish on an accelerated time frame.

Performing just these tasks in isolation is in and of itself a huge burden given that the objective

of these Chapter 11 Cases are somewhat unprecedented (i.e., the sale of a mortgage loan

servicing and origination platform as a going concern), and that the Debtors must address the

concerns of multiple constituencies, including United States government entities and

governmental associations in the context of a Chapter 11 case.  At the same time, the Debtors'

personnel continue to operate the Debtors' business; itself a full time endeavor.  These, and

many other tasks related to prosecution of the Chapter 11 Cases, have and will continue to

require the utmost attention from all of the Debtors' employees.  Continuation of the breathing

---

[4]    In tandem with this effort, the Debtors have entered into plan support agreements with key constituents
      including AFI, certain holders of their junior secured notes, and certain investors in mortgage-backed
      securitizations sponsored by the Debtors.

[5]    *See Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion
      Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (II) the RMBS
      Trustees' Limited Objection to the Sale Motion* [Docket No. 945] (scheduling discovery related deadlines for the
      Debtors' proposes residential mortgage backed securities trust settlement through October, 2012).

spell created by the automatic stay, therefore, is essential to the Debtors' restructuring at this

juncture, because it allows the Debtors to focus on steps critical to achieving a successful

resolution to these cases, including the continued operation of the Debtors' businesses and

consummation of the sales.

### B.    Movant Has Failed to Establish Cause for Relief from the Automatic Stay

27.    Section 362(d) of the Bankruptcy Code provides that the Court shall grant

relief from the automatic stay "for cause." 11 U.S.C. § 362(d). The Bankruptcy Code does not,

however, define the phrase "for cause." In the context of stayed prepetition litigation, though,

the Second Circuit has outlined a 12-factor test (the "Sonnax Factors") to determine whether

"cause" exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues, (2) the lack of any connection with or interference with the bankruptcy case, (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, (5) whether the debtor's insurer has assumed full responsibility for defending the action, (6) whether the action primarily involves third parties, (7) whether litigation in another forum would prejudice the interests of other creditors, (8) whether the judgment claim arising from the other action is subject to equitable subordination, (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor, (10) the interests of judicial economy and the expeditious and economical resolution of litigation, (11) whether the parties are ready for trial in the other proceeding and (12) the impact of the stay on the parties and the balance of harms.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280,

1285-1287 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d

Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not

applied the Sonnax Factors, made only sparse factual findings and ultimately did not provide the

appellate court "with sufficient information to determine what facts and circumstances specific to

the present case the court believed made relief from the automatic stay appropriate."). Courts

have recognized that not all of the Sonnax Factors will be applicable to every case, and the Court

may disregard irrelevant factors. See In re Mazzeo, 167 F.3d at 143.

28.     In a request for stay relief, the moving party bears the initial burden to

demonstrate that cause exists for lifting the stay, using the Sonnax Factors, and the court may

deny the motion if the movant fails to make an initial showing of cause. See Sonnax, 907 F.2d at

1285; Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2d Cir.

1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the

movant fails to make an initial showing of cause.") (quotation omitted). Further, the cause

demonstrated must be "good cause." Morgan Guar. Trust Co. v. Hellenic Lines, Ltd., 38 B.R.

987, 998 (S.D.N.Y. 1984).

29.     The movant's burden is especially heavy if it is an unsecured creditor.

"[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1)

should not be granted relief from the stay unless extraordinary circumstances are established to

justify such relief." In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also In re

Motors Liquidation Co., Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17,

2010).

30.     Movant claims that the facts of these cases and the law mandate

modification of the stay. (Mot. at 10.) Nowhere in the Motion, however, does Movant provide

any evidentiary support for his assertions. Without such support, Movant fails to (and cannot)

meet his burden of establishing good cause for lifting the automatic stay under the Sonnax

analysis. Moreover, Movant is wrong on his application of the law. The application of the

Sonnax Factors clearly indicates that granting relief from the automatic stay would be inappropriate.[6]  Thus, the Motion should be denied.

> (i)   *Whether Relief Would Result in a Partial or Complete Resolution of the Issues (Sonnax Factor No. 1)*

31.    The first Sonnax Factor does not support relief from the stay because lifting the stay would not result in resolution of the issues.  If the stay were lifted, the monetary claims asserted in the Foreclosure Action would still have to be litigated against GMAC Mortgage.  The Foreclosure Action is in its early stages.  (See Campbell Decl. ¶¶ 17, 22.)  No scheduling order has been entered in the Foreclosure Action, and no discovery has been propounded by any party.  (Campbell Decl. ¶ 22.)  In fact, if GMAC Mortgage's Motion to Dismiss is granted by the Maryland Court, Movant's requested stay relief would be mooted. Litigating the Monetary Claims to completion would require GMAC Mortgage to draft an answer and potentially motions for summary judgment, present oral arguments and, if summary judgment is not granted, conduct written discovery, depositions, possibly engage expert witnesses and prepare for and conduct a trial.  (See Campbell Decl. ¶ 17.)  Even if judgments were ultimately rendered against GMAC Mortgage in connection with the Monetary Claims, such judgments would merely entitle Movant to a general unsecured claim to be paid proportionally with thousands of other similar claims in accordance with the terms of a confirmed Chapter 11 plan.  There is no reason why Movant should be afforded the opportunity to liquidate his general unsecured claims ahead of the thousands of similarly-situated creditors.

---

[6] Sonnax Factors numbers 3 and 9 are not applicable to the facts here.  The Debtors do not address Sonnax Factor 8 in their objection, but reserve all right with regard thereto.

      (ii)    *The Lifting of the Automatic Stay Is Connected To And Will Interfere With The Debtors' Chapter 11 Cases (<u>Sonnax</u> Factor Nos. 2) And Litigation Of The Monetary Claims In Another Forum Would Prejudice The Interests Of Other Creditors (<u>Sonnax</u> Factor No. 7)*

32.      The second and seventh <u>Sonnax</u> Factors militate against providing the Movant with relief from the automatic stay because allowing the Monetary Claims to proceed against GMAC Mortgage at this juncture in the Chapter 11 Cases would not only deplete estate resources, thereby prejudicing other creditors, but would also expose the Debtors to have to defend countless other lift stay motions. To grant a general unsecured creditor, such as Movant, relief from the automatic stay to liquidate his claims where there is no (i) articulated need to immediately liquidate such creditor's general unsecured claim or (ii) compelling reason why the processing of its claims should be treated any differently than other general unsecured creditors of the Debtors would set a precedent that could result in additional motions for such relief by creditors in the nearly 500 actions that are currently stayed. To allow creditors such as Movant to proceed with liquidating his claims would reduce the critical protection under the automatic stay that remains after the entry of the Supplemental Servicing Order and narrow the breathing spell for the Debtors. This would impose a heavy burden on the Debtors' valuable time and scarce resources and would result in a wholly unnecessary distraction to the Debtors' focus on achieving the objectives of the Chapter 11 Cases – the maximization of value for creditors.

33.      The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have a contractual obligation to defend. The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not

ny-1057787

limited to, the following: (i) reviewing documents and information related to discovery,

(ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition

and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with

internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with

local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and

settlement conferences and (ix) preparing for trial.  (Campbell Decl. at ¶ 14.)  The Legal

Department has been the primary group tasked with assisting in the development and

implementation of the Supplemental Servicing Order.  (Campbell Decl. at ¶ 14.)  The

overwhelming task of managing hundreds of outside counsel and assisting them with automatic

stay and application of the Supplemental Servicing Order will continue to consume the time and

resources of the Legal Department.  (Campbell Decl. at ¶¶ 14-15.)

        34.      On top of these duties, the Legal Department has also spent the better part

of the last few months assisting in the preparation of the Debtors' schedules of assets and

liabilities, statements of financial affairs, ordinary course professionals and special counsel

retention applications and other pleadings, as well as performing related tasks in support of the

administration of the Chapter 11 Cases.  (Campbell Decl., at ¶ 15.)  The Legal Department is

assisting in the preparation of monthly operating reports, and addressing information requests

related to the Creditors' Committee and Examiner investigations, various other proposed

settlements, and the pending sales of the servicing platform and legacy assets, including the

thousands of contracts proposed to be assumed and assigned thereunder.  As the Chapter 11

Cases proceed, the Legal Department will take an active role in the plan and disclosure statement

process.  Adding to these responsibilities by permitting legal actions to continue would divert the

Legal Department's and other critical employees' attention from the critical tasks of running the

Debtors' businesses (Campbell Decl., at ¶ 16), and would contravene the policies behind the

automatic stay. See In re Pioneer Commercial Funding Corp., 114 B.R. at 48 (noting that the

automatic stay is intended to provide the Debtors with a "breathing spell" to address the

immediate concerns related to the restructuring of the Debtors' businesses).

35.    Moreover, permitting the Monetary Claims to proceed would prejudice

other creditors.  Likely, each of the litigants in stayed actions would prefer to liquidate their

claims through their pending lawsuits.  However, liquidation of these claims can and should be

done in this Court as part of an organized claims resolution process absent special circumstances

which do not exist here.  Requiring the Debtors to defend the Monetary Claims in other forums

would upend the "strong bankruptcy code policy that favors centralized and efficient

administration of all claims in the bankruptcy court," In re Cuyahoga Equip. Corp., 980 F.2d

110, 117 (2d Cir. 1992).  A successful case is in the interests of all of the Debtors' creditors and

diverting the attention of the Debtors' employees, including the Legal Department, could have a

detrimental effect on the Debtors' restructuring efforts.  As a result, the seventh Sonnax Factor

also weighs in favor of denying relief from the automatic stay.

36.    Therefore, for the above reasons, the second and seventh Sonnax Factors

weigh heavily against lifting the stay.

(iii)    *No Specialized Tribunal Has Been Established To Hear The
Foreclosure Action (Sonnax Factor No. 4).*

37.    The fourth Sonnax Factor does not support relief from the stay.  Movant

provides no evidence for his argument that his monetary claims should be resolved in the

Maryland Court.  The Maryland Court does not have any particularized expertise that this Court

does not have.  While the Maryland Court may be more familiar with the facts and procedural

history in the Foreclosure Action, or become so in connection with ruling on the Motion to

Dismiss, the same could be said for the courts in which every prepetition case pending against the Debtors was originally filed (or in which counterclaims have been asserted).[7] Notwithstanding this reality, the Bankruptcy Code specifically contemplates resolving prepetition claims against the Debtors via a centralized claims resolution process shepherded by the bankruptcy courts. Indeed, as Judge Gerber noted in <u>In re General Motors Corp</u>., "[b]ankruptcy litigation is typically as efficient or more efficient than litigation in the district courts in connection with plenary litigation."[8]

38.    Movant's argument that the stay should be lifted because this Court lacks jurisdiction to rule on the state law based Monetary Claims in light of <u>Stern</u> is incorrect, for the reasons set forth above. This Court has recognized that it can interpret and apply state law in resolving claims through the bankruptcy process. <u>See, e.g., In re Bally Total Fitness of Greater N.Y., Inc.</u>, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009) ("[t]his Court has significant experience in applying state law . . . ."). Movant's claims are no exception – this Court has the authority to adjudicate and render judgment on such claims. Accordingly, the fourth <u>Sonnax</u> Factor weighs in favor of denying relief from the automatic stay.

(iv)    *No Insurer Has Assumed Responsibility For The Foreclosure Action (<u>Sonnax</u> Factor No. 5).*

39.    While the Debtors have customary errors and omissions insurance coverage ("<u>E&O Insurance</u>") that may potentially provide coverage for the claims Movant asserts against the Debtors, that E&O Insurance policy provides for a deductible that is orders of magnitude higher than the amount of damages sought by Movant; any amounts awarded,

---

[7] In fact, the state court in which the Foreclosure Action was filed may be no more familiar than this Court with the facts and procedural history of the Foreclosure Action given that the majority of the activity in that case to date has been limited to the filing of the Complaint and Counter Complaint, and the Motion to Dismiss and related pleadings.

[8] Hr'g Tr. 41:18 – 20 (Nov. 5, 2009), <u>In re Motors Liquidation Company f/k/a General Motors Corp</u>., Chapter 11 Case No. 09-50026 (REG) (denying motion to lift stay because Sonnax Factors weight against lifting the stay).

therefore, to Movant as a judgment against the Debtors will be born directly by the Debtors'

estates. (Campbell Decl. ¶ 19.)

40.     In addition, in the vast majority of the cases, including the Foreclosure

Action, the Debtors pay their legal defense fees and costs out-of-pocket.  As a result, requiring

the Debtors to defend the Monetary Claims will result in increased out-of-pocket defense costs,

which based upon the Debtors' records for the year prior to the Petition Date averaged

approximately $5.7 million per month.  (Campbell Decl. ¶ 20.)

41.     For the foregoing reasons the fifth <u>Sonnax</u> Factor weighs against granting

relief from the automatic stay.

> (v)     *The Foreclosure Action Does Not Primarily Involve Third Parties
> (<u>Sonnax</u> Factor No. 6).*

42.     The sixth <u>Sonnax</u> Factor does not support the relief sought in the Motion.

The only named defendants in the Joint Action are GMAC Mortgage and two individual

defendants who are/were agents and/or employees of GMAC Mortgage.  Each of Movant's

Monetary Claims is asserted against GMAC Mortgage.  (Campbell Decl. ¶ 21.)  As a result,

GMAC Mortgage is required to actively participate in the defense of the Foreclosure Claims in

order to avoid facing adverse judgments and, accordingly, the fourth <u>Sonnax</u> Factor weighs

against granting relief from the automatic stay.  <u>See</u> <u>City Ins. Co. v. Mego Int'l Inc. (In re Mego</u>

<u>Int'l Inc.)</u>, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic stay

where the debtor was more than a mere conduit for the flow of proceeds and the action impacted

the "property and administration of [the debtor's] estate, suggesting that continuance of the stay

was proper.").

(vi) *The Interests Of Judicial Economy And Economical Resolution Of The Foreclosure Action Are Best Served By Maintaining The Automatic Stay And The Foreclosure Action Is Not Ready For Trial (Sonnax Factor Nos. 10 and 11).*

43.    Movant asserts that permitting the Monetary Claims to proceed would serve judicial economy. (See Mot. at 11.) This assertion is unsupported by the facts. If a judgment were awarded in favor of Movant in connection with his Monetary Claims, a determination of the amount of damages to which Movant would be entitled will mandate a fact-intensive inquiry that would require potentially costly discovery, expert witness testimony, briefing, and oral argument. (Campbell Decl. ¶ 17.)

44.    Moreover, the Monetary Claims not ready for trial. As set forth above, the Foreclosure Action is in its early stages. (Campbell Decl. ¶¶ 17, 22.) No scheduling order has been entered in the Foreclosure Action, and no has discovery been propounded by any party, nor has an answer has been filed by GMAC Mortgage. (Campbell Decl. ¶ 22.) Accordingly, the Maryland Court has not expended significant judicial resources in determining the Monetary Claims, and has not even entered an order setting a discovery schedule or a trial date. See Bally, 402 B.R. at 624 (denying stay relief where the parties had not started conducting extensive discovery and were not ready for trial).

45.    To the contrary, the interests of judicial economy and the economical resolution of litigation would best be served by resolving Movant's claims against the Debtors through the uniform bankruptcy claims process. As Judge Gerber stated in General Motors, "[t]he economical way of doing [prepetition litigation] is dealing with [prepetition litigation] by the claims allowance process, as all of the other thousands of claims against this estate are."[9]

---

[9] H'rg Tr. 44:20–25, (Nov. 5, 2009) (finding Sonnax Factor 10, the interests of judicial economy and economical resolution of litigation, weighed in favor of denial of lifting the stay).

Accordingly, the tenth and eleventh <u>Sonnax</u> Factors weigh in favor of denying the stay relief in each case.

     (vii)  *The Balance Of Harms Favors Maintaining The Automatic Stay
        (<u>Sonnax</u> Factor No. 12)*

    46.  The final <u>Sonnax</u> Factor, the balance of the harms, weighs heavily in favor of maintaining the stay because the burden imposed on the Debtors in terms of the time, financial resources, and attention necessary to defend itself with respect to the Monetary Claims far outweighs any potential gain to Movant in proceeding with the Monetary Claims against GMAC Mortgage.  The Movant does not provide any evidence that they will suffer any prejudice if the stay is not immediately lifted.  In contrast, the cost to the Debtors of lifting the automatic stay at this early stage of the Chapter 11 Cases is substantial, as is the potential detriment to other creditors as discussed above.  Establishing a precedent for lifting the automatic stay at this point would inevitably lead to additional relief from stay motions seeking to proceed with prepetition litigation.  With the Debtors' named as defendants or respondents in over 1,950 prepetition actions and in addition, party to several thousand foreclosure, eviction and borrower bankruptcy proceedings nationwide, relief from stay motions filed by plaintiffs in even a relatively small percentage of the Debtors' outstanding litigation would unnecessarily distract the Debtors' management, professionals and, more importantly, the Legal Department from the primary task at hand of a successful rehabilitation of the Debtors' estates.  <u>See</u>, <u>e.g.</u>, <u>In re Northwest Airlines Corp.</u>, No. 05-17930, 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 3, 2006) (stating that "[t]o allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and . . . [t]he distraction and expense of defending such litigation would interfere with judicial economy and the Debtors' process of reorganization.") (citing <u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d 984, 989 (2d Cir. 1990)); <u>Bally</u>, 402 B.R. at 623 ("allowing the actions to proceed

would distract the Debtors' management from the bankruptcy proceeding . . . thereby affecting

the interests of other creditors.").  During the pendency of the Debtors' Chapter 11 Cases, the

limited resources of the Debtors' estates are much better spent on the Debtors' restructuring

efforts, rather than litigating lawsuits spread throughout the country.  Forcing the Debtors to

litigate the Monetary Claims, as discussed above, would distract the Debtors from and hinder

their reorganization efforts and negate the important "breathing spell" necessary to allow them to

restructure and preserve the value of their assets for the benefit of all creditors.

48.     Permitting Movant to liquidate his claims in the Maryland Court would

undoubtedly lead to numerous additional stay relief motions, which would unnecessarily drain

the Debtors' resources and distract them from restructuring at this important early stage in the

cases.  See Bally, 402 B.R. at 624 (holding that the overall balance of harms weighed in favor of

denying stay relief because forcing the debtors to litigate would distract them from reorganizing,

threaten to open the "floodgates" to other lift stay motions, resources were better spent

stabilizing operations and cash flows and no great hardship had been demonstrated).  As Judge

Gerber succinctly framed this concern in General Motors:

> [I]f I were ever to allow relief from the stay on a garden variety
> claim of this type there would indeed be the risk, if not the
> certainty, that every other party who thinks he or she has a good
> claim against the estate pending in another jurisdiction would be
> asking me to defend -- to provide relief from the stay and require
> the debtors to be litigating claims of this character all over the
> country. The floodgates concern that the estate articulated is indeed
> a very serious one.[10]

48.     This concern is also real in the Chapter 11 Cases; since they were

commenced, borrowers, proceeding either pro se or with the assistance of counsel, have filed

approximately 18 motions for relief from the automatic stay pursuant to section 362(d) of the

---

[10] H'rg Tr. 45:2–45:10 (Nov. 5, 2009).

Bankruptcy Code to continue prepetition litigation against the Debtors' estate, and the Debtors

and their counsel have received several additional informal requests for such relief.  This Court

has consistently determined that, where, as here, parties have requested stay relief to liquidate

monetary claims in connection with actions that are still in their early stages, such relief not

warranted.  See, e.g., *Memorandum Opinion And Order Denying Aurora Bank's Motion To*

*Modify The Automatic Stay Under* 11 U.S.C. § 362(d) [Docket No. 1021]; *Memorandum*

*Opinion Denying the Gilbert Motion to Dismiss or to Vacate the Automatic Stay*, [Docket No.

1054]; *Memorandum Opinion Granting In Part And Denying In Part The Taggart Motion To Lift*

*The Automatic Stay* [Docket No. 1148]; *Memorandum Opinion And Order Denying The Jackson*

*Motion To Lift The Automatic Stay* [Docket No. 1184]; *Order Denying Pichardo Motion To Lift*

*The Automatic Stay* [Docket No. 1307].  The balance of the harms clearly favors maintaining the

automatic stay with respect to the Monetary Claims.

## GMAC MORTGAGE'S MOTION TO DISMISS

49.     As indicated above, the Maryland Court has determined that the automatic

stay does not preclude it from ruling on GMAC Mortgage's Motion to Dismiss, which was filed

prior to the Petition Date.  (Campbell Decl. ¶ 11).  Nonetheless, to the extent necessary, and for

the avoidance of doubt, the Debtors would consent to stay relief for the limited purpose of

allowing Movant a fair opportunity to litigate the disposition of the Motion to Dismiss and to

allow the Maryland Court to hear and consider such motion, but for no other purposes.  The

Debtors respectfully submit that, in practical terms, such relief is not necessary, since, as directed

by the Maryland Court, Movant filed a response to the Motion to Dismiss on September 5, 2012.

(Campbell Decl. ¶ 12.)  However, no hearing date has been set with respect to the Motion to

Dismiss.  (Campbell Decl. ¶ 13.)

## CONCLUSION

50.     Based on the weight of settled authority and its application to the Motion
as described above, the Debtors respectfully submit that Movant has failed to meet his burden.
Substantially all of the applicable <u>Sonnax</u> Factors weigh heavily in favor of maintaining the
automatic stay with respect to the Monetary Claims.  As such, the Court should deny the Motion.

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an
Order denying the Motion and grant such other relief as the Court deems proper.


New York, New York                    /s/ Norman S. Rosenbaum
Dated: September 20, 2012         Gary S. Lee
                                                    Norman S. Rosenbaum
                                                    Erica J. Richards
                                                    MORRISON & FOERSTER LLP
                                                    1290 Avenue of the Americas
                                                    New York, New York 10104
                                                    Telephone: (212) 468-8000
                                                    Facsimile: (212) 468-7900

                                                    *Counsel to the Debtors and
                                                    Debtors in Possession*

**<u>EXHIBIT 1</u>**

**Campbell Declaration**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman Rosenbaum
Erica J. Richards

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- )
                                                                     )
In re:                                                               )    Case No. 12-12020 (MG)
                                                                     )
RESIDENTIAL CAPITAL, LLC, et al.,                                    )    Chapter 11
                                                                     )
                                            Debtors.                 )    Jointly Administered
                                                                     )
-------------------------------------------------------------------- )

**DECLARATION OF NATASHA CAMPBELL, IN-HOUSE COUNSEL AT
RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF DEBTORS' OBJECTION TO
MATTHEWS MOTION FOR RELIEF FROM STAY [DOCKET NO. 1291]**

I, Natasha Campbell, declare as follows:

1.    I serve as In-House Counsel in the Legal Department, and manage the

Core Mortgage Litigation Group at Residential Capital, LLC ("ResCap"), a limited liability

company organized under the laws of the state of Delaware and the parent of the other debtors

and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors").

I have held this position since 2011.  Prior to that date, I was Associate Counsel handling

litigation for ResCap.

2.    In my role as In-House Counsel at ResCap, I am responsible for the

management of all core mortgage litigation nationwide, which includes the management and

supervision of five litigation attorneys and fifteen litigation case managers. I also supervise and

manage the subpoena response team and the depositions and discovery team. However, as a

result ResCap's Chapter 11 filing, my role has significantly expanded to include assisting the

Debtors and their professional advisors in connection with the administration of the Chapter 11

cases, in addition to my litigation work. Specifically, my expanded duties and responsibilities as

to the Debtors' Chapter 11 cases include, but are not limited to: (i) frequently communicating

with the Debtors' bankruptcy counsel, usually daily, on various mortgage litigation and other

matters; (ii) assisting the Debtors' bankruptcy counsel in the analysis of and drafting of

responses to motions for relief from stay, objections to various filings, and motions critical to the

functions of the Debtors' business; (iii) working with bankruptcy counsel, other in-house

attorneys and business personnel on bankruptcy issues impacting the Debtors' business

operations; and (iv) providing guidance to the Legal Department regarding orders entered in the

Chapter 11 Cases, filings by other parties, and the Chapter 11 process.

        3.      I am authorized to submit this declaration (the "Declaration") in support of

the *Debtors' Objection To Matthews Motion for Relief from Automatic Stay [Docket No. 1291]*

(the "Objection").[1]

        4.      In my capacity as In-House Counsel, I am generally familiar with the

Debtors' litigation matters, including the Foreclosure Action that is the subject of the Debtors'

Objection. Except as otherwise indicated, all statements in this Declaration are based upon my

personal knowledge; information supplied or verified by personnel in departments within the

Debtors' various business units; my review of the Debtors' litigation case files, books and

records as well as other relevant documents; my discussions with other members of the Legal

---

[1]    Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the
Objection.

Department; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' litigation matters, financial condition and history.  In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

5.    As of September 20, 2012, the Debtors by way of direct claims and counter-claims are defendants, respondents, or are contractually obligated to defend third parties in 1,954 pending litigation and contested foreclosure and bankruptcy matters filed in jurisdictions all around the country.  Approximately fifty-seven percent (57%) of these matters concern either (i) defenses asserted in foreclosure, eviction or borrower bankruptcy proceedings or (ii) title disputes, both of which are exempted from the automatic stay by the Supplemental Servicing Order; fourteen percent (14%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not subject to the stay, notwithstanding the Supplemental Servicing Order; twenty-five percent (25%) are stayed and four percent (4%) are still under review for their status.  Thus, approximately seventy-one percent (71%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not stayed and continue to proceed in various jurisdictions across the country.  This is in addition to the tens of thousands of foreclosure actions and borrower bankruptcies the Debtors are parties to in actions pending throughout the fifty states primarily managed by the Debtors' mortgage default group.

## A.    The Foreclosure Action

6.    On or around February 12, 2012, GMAC Mortgage filed a complaint in the Circuit Court for Baltimore City, Maryland (the "Maryland Court") commencing the Foreclosure Action, under the caption O'Sullivan, et al. v. Matthews, Case No. 21-O-12000286 (Bat. City Cir. Ct., Md.).

7.    On March 19, 2012, Movant filed a Counter Complaint in the Foreclosure Action, pursuant to which Movant asserts the following counterclaims against GMAC Mortgage arising from GMAC Mortgage's allegedly improper and unlawful collection practices against Movant:  Count I – Fraud and Fraudulent Concealment; Count II – Violations of the Maryland Consumer Protection Act; Count III – Violations of Maryland Mortgage Fraud Protection Act; Count IV – Violation of Maryland Consumer Debt Collection Act; Count V – Violation of the Fair Debt Collection Practice Act.  Each count includes a claim for money damages, which in the aggregate exceed $4.6 million (the "Monetary Claims").  (See Counter Complaint attached as Exhibit 1 to the Motion.)

8.    On April 25, 2012, GMAC Mortgage filed a motion to dismiss (the "Motion to Dismiss") the Counter Complaint in its entirety on both procedural and substantive grounds.

9.    On or about June 26, 2012, Movant filed a *Motion for Direction Concerning The Automatic Stay As To Counter Defendants Carrie Ward And Jeffrey Stephan And Potential Other Parties By Amendment* ("Motion for Direction") in the Foreclosure Action, pursuant to which Movant requested clarification regarding the application of the Supplemental Servicing Order to the Foreclosure Action and sought the Maryland Court's advice as to how to proceed in the face of GMAC Mortgage's bankruptcy.

4

10.    On or about June 27, 2012, Movant filed a *Motion For Extension For Counter Plaintiff To Respond To Defendants GMAC's & Carrie Ward's Motion To Dismiss Due To The Automatic Stay Of Counter Defendant GMAC* ("Motion for Extension") in the Foreclosure Action.

11.    A hearing was held on the Motion for Direction and the Motion for Extension before the Maryland Court on July 30, 2012.  At the conclusion of the hearing, the Maryland Court ruled that, regardless of whether or not Movant's Monetary Claims can be parsed from the non-monetary relief sought by Movant under the Counter Complaint, the Maryland Court was permitted to entertain the Motion to Dismiss under the Supplemental Servicing Order.  See Exhibit A annexed hereto.

12.    On September 5, 2012, Movant filed an opposition to the Motion to Dismiss and a Notice of Dismissal of Count I of the Counter Complaint with the Maryland Court.  See Exhibits B and C annexed hereto.

13.    No hearing date has been set with respect to the Motion to Dismiss.

**B.    Lifting the Automatic Stay Will Interfere With the Debtors Chapter 11 Cases**

14.    The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have a contractual obligation to defend.  The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition

and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with

internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with

local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and

settlement conferences and (ix) preparing for trial.  The Legal Department has been the primary

group tasked with assisting in the development and implementation of the Supplemental

Servicing Order.

15.    As a result of the Debtors' bankruptcy filings and the entry of the

Supplemental Servicing Order, the Legal Department's responsibilities have increased to include

(i) the review and analysis of individual claims as they arise in conjunction with internal business

personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability

of the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation

counsel and its mortgage default counsel regarding the application of the Supplemental Servicing

Order (and will continue to do so as new legal actions arise); (iii) assisting the Debtors'

bankruptcy counsel with the preparation of various motions, responses to motions for relief from

stay and other Court filings[2], as well as various bankruptcy related tasks; (iv) assisting

bankruptcy counsel and internal business personnel with Chapter 11 reporting requirements;

(v) assisting with matters pertaining to the pending sale of the Debtors' servicing and origination

platform and legacy assets; and (vi) assisting with matters pertaining to the Examiner's

investigation.  As the Chapter 11 Cases proceed, the Legal Department will take an active role in

---

[2]    By way of example, the Legal Department had a significant role in the drafting of the Supplemental Servicing
Motion and the Interim Supplemental Servicing Order [Docket No. 181] and participated in the negotiation of
the Supplemental Servicing Order.  The Legal Department also, *inter alia*, assisted in the preparation of the
Debtors' Schedules and Statement of Financial Affairs, the Ordinary Course Professionals Motion, and all of
the responses to the motions for relief from the automatic stay filed to date.

the plan and disclosure statement process. These responsibilities are ongoing and will continue

and likely expand as these Chapter 11 Cases progress.

16.      Given the comprehensive and detailed role the Legal Department plays in

(i) the managing of the Debtors' litigation and contested foreclosure and bankruptcy matters;

(ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside

litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy

counsel and financial advisors with various motions and other filings in the Debtors' bankruptcy

case, carrying out its ordinary course tasks while at the same time discharging its duties in the

Chapter 11 Cases has been and will continue to be a monumental task.  Permitting legal actions

otherwise stayed by the Debtors' bankruptcy to proceed (not to mention allowing entirely new

actions to be commenced), therefore, would create a significant burden on the Debtors by adding

an additional workload of approximately 488 cases, diverting the Legal Department's and other

critical employees' attention from the critical tasks of running the Debtors' businesses, and

significantly increasing the Debtors' out-of-pocket legal costs.

**D.      Relief from the Automatic Stay Would Not Result in
Complete Resolution of the Issues**

17.      The Foreclosure Action was commenced just a few months before the

Debtors' Chapter 11 Cases were filed.  Litigating the Monetary Claims to completion would

require GMAC Mortgage to draft an answer and potentially motions for summary judgment,

present oral arguments and, if summary judgment is not granted, conduct written discovery,

depositions, possibly engage expert witnesses and prepare for and conduct a trial.

**E.      No Specialized Tribunal has Been Established to Hear the Foreclosure Action**

18.      As far as I am aware, no specialized tribunal has been created to hear any

of the claims involved in the Foreclosure Action.

**F.      No Insurer Has Assumed Responsibility for the Monetary Claims**

19.     While the Debtors have customary errors and omissions insurance

coverage ("E&O Insurance"), that E&O Insurance policy provides for a deductible that is orders

of magnitude higher than the amount of damages sought by Movant.  Accordingly, any amounts

awarded to Movant as judgments against the Debtors will be born directly by the Debtors'

estates.

20.     In addition, in the vast majority of the cases, including the Foreclosure

Action, the Debtors pay their legal defense fees and costs out-of-pocket.  As a result, requiring

the Debtors to defend the Monetary Claims will result in increased out-of-pocket defense costs,

which, based upon the Debtors' records for the year prior to the Petition Date, averaged

approximately $5.7 million per month.

**G.      Movant's Monetary Claims Do Not Primarily Involve Third Parties**

21.     The named defendants in the Counter Complaint are GMAC Mortgage,

and two individuals who are being sued in their capacities as employees and/or agents of GMAC

Mortgage.  GMAC Mortgage is named as a defendant in each count of the Counter Complaint.

It is the only named defendant in Count V of the Counter Complaint, and is named with only one

of the individual defendants in Counts I and IV of the Counter Complaint.

**H.      The Foreclosure Action Is Still in the Early Stages**

22.     As noted above, the Foreclosure Action underlying the Motion is in its

early stages of litigation.  No scheduling order has been entered in the Foreclosure Action, and

no has discovery been propounded by any party, nor has an answer has been filed by GMAC

Mortgage.

8

       Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 20, 2012

                                 */s/* Natasha Campbell
                                 Natasha Campbell
                                 In-House Counsel for
                                 Residential Capital, LLC

9

## EXHIBIT A TO CAMPBELL DECL.

**Maryland Court Orders**

| | | |
|---|---|---|
| **LAURA H.G. O'SULLIVAN**, *et al.* | * | **IN THE** |
| *Plaintiffs,* | * | **CIRCUIT COURT** |
| **v.** | * | **FOR** |
| **KEVIN J. MATTHEWS,** | * | **BALTIMORE CITY** |
| *Defendant.* | * | **CASE NO.: 24-O-12-000286** |

*     *     *     *     *     *     *     *     *     *     *

## ORDER

The above-captioned matter came before the Circuit Court for Baltimore City, Part 18, for a hearing on Defendant/Counter-Plaintiff's Motion for Direction Concerning the Automatic Stay as to Counter-Defendants Carrie Ward and Jeffrey Stephan and Potential Other Parties by Amendment (Paper No. 22000). A hearing was held on July 30, 2012, before the Honorable Martin P. Welch. Phillip Robinson, Esq., appeared on behalf of Kevin J. Matthews, Defendant/Counter-Plaintiff; Eric A. Frechtel, Esq., appeared on behalf of GMAC Mortgage, LLC, Counter-Defendant; J. Jonathan Schraub, Esq., appeared on behalf of Carrie Ward, Counter-Defendant; and Mark A. Simanowith, Esq., appeared on behalf of Jeffrey Stephan, Counter-Defendant.

After reviewing the Final Supplemental Order rendered by the United States Bankruptcy Court, Southern District of New York, In re: Residential Capital, LLC, et al., Case Number 12-12020 (MG), paragraph 14(b), the Court finds that paragraph 14(b) does not preclude the pursuance and consideration of any dispositive Motions to Dismiss filed prior to this order.

The Court further finds that the parties' pursuance of such motions and the Court's consideration of such motions does not violate the automatic stay. It is, therefore, this ___30th___ day of July, 2012,

**ORDERED** that the Counter-Defendants **HAVE A RIGHT TO PROCEED** with their Motions to Dismiss and Motion to Sever.

| |
|---|
| Honorable Martin P. Welch |
| The Judge's Signature Appears On The Original Document |

TRUE COPY
TEST

FRANK M. CONAWAY, CLERK

| | | |
|---|---|---|
| **LAURA H.G. O'SULLIVAN,** *et al.* <br> *Plaintiffs,* | * <br> * <br> * <br> * | **IN THE** <br><br> **CIRCUIT COURT** |
| **v.** | * <br> * | **FOR** |
| **KEVIN J. MATTHEWS,** <br> *Defendant.* | * <br> * <br> * | **BALTIMORE CITY** <br><br> **CASE NO.: 24-O-12-000286** |

\* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

Upon consideration of Defendant/Counter-Plaintiff's Motion to Extend Time for Counter-Plaintiff Kevin Matthews to File His Response to Counter-Defendant GMAC, LLC's Motion to Dismiss (Paper No. 19000), it is, this ___30th___ day of July, 2012,

**ORDERED** that the motion be, and hereby is, **GRANTED,** and Defendant/Counter-Plaintiff shall have 30 days from the date of this Order within which to file a response.

Honorable Martin P. Welch

The Judge's Signature Appears On The
Original Document

TRUE COPY
TEST

FRANK M. CONAWAY, CLERK

## EXHIBIT B TO CAMPBELL DECL.

**Movant's Opposition to Motion to Dismiss**

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**LAURA H.G. O'SULLIVAN,** *et al.*

    Plaintiffs

**v.**                    Case No. **24O12000286**

**KEVIN J. MATTHEWS**

    Defendant

---

**KEVIN J. MATTHEWS**

    Counter Plaintiff

v.

**GMAC MORTGAGE LLC,** *et al.*

    Counter Defendants

**DEFENDANT/COUNTER PLAINTIFF KEVIN J. MATTHEWS' COMBINED
OPPOSITION TO COUNTER DEFENDANTS' GMAC MORTGAGE LLC, CARRIE
WARD'S, AND JEFFREY STEPHAN'S MOTIONS TO DISMISS THE COUNTER
PLAINTIFF'S COUNTER COMPLAINT (DOCs. 18, 20, 21)**

**&**

**REQUEST FOR HEARING**

Counter Plaintiff/Defendant Kevin J. Matthews ("Mr. Matthews"), by his undersigned counsel, hereby files this opposition to Counter Defendant's GMAC Mortgage LLC ("GMAC"), Carrie Ward ("Ward"), and Jeffrey Stephan's ("Stephan")(collectively "Counter Defendants") Motions to Dismiss (Docs. 18, 20, 21) Mr. Matthews' Counter Complaint (Doc. 1/1) and says:

**INTRODUCTION**

Despite the voluminous Motions to Dismiss by each of the Counter Defendants

1

(Docs. 18, 20, 21)[1] and their protestations as to Mr. Matthews' claims against them, his Counter Complaint does not concern the alleged validity of a debt he may owe, but instead his well-pled counter claims concern the debt collection practices of each of the Counter Defendants which have violated Maryland law in those practices. Rewriting Mr. Matthews' actual claims to support their theory of dismissal on all claims and issues, Counter Defendants essentially argue that their debt collection practices which are actually at issue in Mr. Matthews' Counter Complaint are not actionable under any Maryland law because (1) he owes a debt and (2) therefore each of the Counter Defendants may utilize any method they wish to collect the debt even when those methods violate remedial statutes governing the relationships between the parties. Respectfully, Counter Defendants' arguments miss the point of Mr. Matthews' claims and seek implicitly to have this Court sanction their individual and collective fraudulent, deceptive, and/or unfair acts. Should this Court ignore the well pled facts and accept the Counter Defendants' theories, the integrity of the judicial system itself is at risk and there simply will be little or no remedy to the methods of illegal debt collection subject to this action for Mr. Matthews or any other Maryland resident. If parties like the Counter Defendants (and their privies) may attempt to collect debts through the state courts in the manner done in this action without recourse whatsoever to recover for the injuries, losses, and damages, then the rule of law itself has simply has no meaning.

This action commenced in February 2012 with the filing of the original Order to Docket by the Plaintiffs. Doc. 1. Mr. Matthews timely filed his Counter Complaint requesting a jury trial and also requested his legal right to participate in foreclosure

---

[1] Mr. Matthews will cite herein to GMAC's legal memorandum as Doc. 18, Stephan's legal memorandum as Doc. 20/1, and Ward's legal memorandum as Doc.21/1.

2

mediation. Doc. 1/1. The mediation process has been continued until October 2012. Doc. 27. Meanwhile Counter Defendant GMAC has sought bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. Doc. 19 & 19/1. In response to Counter Plaintiff's request for direction considering the automatic stay was imposed under 11 U.S.C. § 362(a), this Court found and ordered Mr. Matthews to respond to the Counter Defendants' Motions to Dismiss by August 29, 2012. Doc. 22/2. This Court also considered Counter Defendant Stephan's Motion to Dismiss on jurisdictional grounds and denied his request to dismissed from this action finding that Mr. Matthews has alledged sufficient contacts with the State of Maryland by Stephan to which he availed himself to the jurisdiction of this Court pursuant to the plain language of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. §6-103. Doc. 32.

Finally, in abundance of caution and for good cause shown, on August 28, 2012 Mr. Matthews moved the United States Bankruptcy Court for the Southern District of New York to lift the automatic stay for these proceedings as to GMAC to determine liability only and as to Ward and Stephan and other potential parties for all other purposes.

### WELL PLED FACTS

Mr. Matthews will not recite and repeat his well pled facts of his detailed counter complaint and will simply incorporate his counter complaint as if restated herein. Within this combined opposition he does cite to specific allegations as appropriate. However, for the Court's convenience in addition to his incorporation of the well pled facts as actually alleged in his Counter Complaint, Mr. Matthews will provide this summary of the operative and relevant facts subject to the Counter Defendants' various motions and Mr.

Matthews' actual claims:

The action involves the combined collection practices and procedures of the Counter Defendants against Mr. Matthews and his home and property and include fraudulent, unfair, and deceptive practices concerning (1) GMAC's unfair and deceptive botched practices concerning Mr. Matthews' loss mitigation efforts (CC at ¶¶ 46-61, 80-88), (2) each of the illegal and otherwise unfair and deceptive practices in the First Foreclosure Action against Mr. Matthews, which was dismissed by GMAC and its agents, including Ward, only after he appeared and objected to the methods used by the Counter Defendants (CC at ¶¶ 76-82, 91-94, 100-104), (3) Mr. Matthews' illegal eviction by GMAC (CC at ¶¶ 95-99, 105-108), and (4) the illegal collection practices utilized in and leading up to this action by GMAC and its authorized agents (CC at ¶¶ 109-116).

GMAC's practices subject to this action are not unique to Mr. Matthews; the Court can take judicial notice that many of the same general practices at issue by GMAC, Stephan, and Ward in this action were also subject to public rebuke. (CC at ¶¶ 27-36).

Mr. Matthews has pled specific times and other details of the misrepresentations by the Counter Defendants and his reasonable reliance of those statements. (CC at ¶¶ 1, 5, 7. 52-55, 57, 59, 66, 80, 82, 84-86). He has further alleged specific damages not from any default of his mortgage loan but those arising from the Counter Defendants' collection practices. (CC at ¶ 117)

## STANDARD OF REVIEW

4

In considering a Rule 2-322 motion to dismiss, the Court

must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.,* the allegations do not state a cause of action for which relief may be granted. *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 121-22, 916 A.2d 257, 264-65 (2007); *Sprenger v. Pub. Serv. Comm'n,* 400 Md. 1, 21, 926 A.2d 238, 249-50 (2007); *Pendleton v. State,* 398 Md. 447, 458-60, 921 A.2d 196, 203-04 (2007); *Converge Servs. Group, LLC v. Curran,* 383 Md. 462, 475, 860 A.2d 871, 878-79 (2004); *Fioretti v. Maryland State Bd. of Dental Exam'rs,* 351 Md. 66, 71-72, 716 A.2d 258, 261 (1998). Consideration of the universe of "facts" pertinent to the court's analysis of the motion are limited generally to the four corners of the complaint and its incorporated supporting exhibits, if any. *Curran,* 383 Md. at 475, 860 A.2d at 879. The well-pleaded facts setting forth the cause of action must be pleaded with sufficient specificity; bald assertions and conclusory statements by the pleader will not suffice. *Adamson v. Corr. Med. Servs., Inc.,* 359 Md. 238, 246, 753 A.2d 501, 505 (2000); *Bobo v. State,* 346 Md. 706, 708-09, 697 A.2d 1371, 1372 (1997).

*RRC Ne., LLC v. BAA Maryland, Inc.,* 413 Md. 638, 643-44, 994 A.2d 430, 433-34 (2010). *See also Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 193, 43 A.3d 1029, 1033 (2012).

Further, when construing a motion to dismiss, the Court may consider documents incorporated into the pleading by reference without converting the motion to one requesting summary judgment. Md. Rule 2-303(d)("Statements in a pleading or other paper of record may be adopted by reference in a different part of the same pleading or paper of record or in another pleading or paper of record"); *Skanska USA Bldg., Inc. v. Smith Mgmt. Const., Inc.*, 184 Md. App. 659, 668, 967 A.2d 827, 833 (2009)(document incorporated into the pleading and considered as part of a motion to dismiss would not convert the motion to one for summary judgment).

Finally Rule 2-322(c) provides that if the Court dismisses a complaint it may also

grant leave to amend the complaint in order to correct whatever deficiencies the Court
has identified.

## ARGUMENT

I.  HAMP DOES NOT PREEMPT MR. MATTHEWS'S CLAIMS UNDER STATE LAW
    CONCERNING GMAC'S FRAUDULENT, UNFAIR, AND DECEPTIVE ACTS RELATED TO
    MR. MATTHEWS' LOSS MITIGATION EFFORTS

GMAC represents to the Court that Mr. Matthews claims related to its fraudulent,
unfair, and deceptive practices concerning or related in any way to Mr. Matthews' loss
mitigation efforts and GMAC's responses, omissions, and misrepresentations thereto,
"constitute an impermissible attempt to enforce a private right of action under HAMP"
(i.e. the Home Affordable Modification Program).  Doc. 18 at 8.  GMAC finds support in
this assertion in a single case, *Bourdelais v. J.P. Morgan Chase*, 3:10-CV-670-HEH,
2011 WL 1306311 (E.D. Va. Apr. 1, 2011). *Id.*

In making its sweeping unsubstantiated argument, GMAC reforms Mr. Matthews'
actual claims related to his loss mitigation to something they are not.  Mr. Matthews
does not seek by his claims to assert any claim against GMAC because it would not
offer him any loss mitigation. *See generally* Counter Complaint.  Rather, Mr. Matthews'
claims related to his loss mitigation efforts with GMAC involve GMAC's
misrepresentations (CC at ¶¶ 59, 83, 84), omissions (CC at ¶¶ 52, 55, 58, 81),
intentional concealment (CC at ¶¶ 58, 92).  The Seventh Circuit has rejected GMAC's
overreaching argument and has found such claims which may relate to HAMP to be
entirely permissible under state laws like those in this action. *Wigod v. Wells Fargo
Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012)("The absence of a private right of action
from a federal statute provides no reason to dismiss a claim under a state law just

6

because it refers to or incorporates some element of the federal law").

While Mr. Matthews' state law claims may be partially related to HAMP, they are properly brought as distinct state law claims. This position is supported by ample case law. Many courts have distinguished between claims alleging violations of state law and those attempting to directly enforce HAMP. *See, e.g., Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 350-51 (D. Mass. 2011) (finding the question of a private right of action irrelevant because the plaintiff's claims arose because of the defendant's failure to comply with its state-law contractual obligations); *JP Morgan Chase Bank Nat'l Ass'n. v. O'Neil*, 2011 WL 1408904, at *6 (Conn. Super. Ct. Mar. 24, 2011) (allowing claim for fraudulent misrepresentation to survive motion to dismiss because it was brought under Connecticut common law and not HAMP). In addition, many courts have permitted borrowers to assert state-law claims to enforce servicers' duties under HAMP. *See, e.g., Durmic v. J.P. Morgan Chase Bank, NA.*, 2010 WL 4825632 (D. Mass. Nov. 24, 2010) (finding that the plaintiff had alleged sufficient facts to support a breach of contract claim); *Garcia v. Ocwen Loan Servicing, LLC*, 2010 WL 1881098, at *4 (N.D. Cal. May 10, 2010) (allowing a negligence claim to survive a motion to dismiss). *Compare College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 598 (4th Cir. 2005) (relying on the Higher Education Act standards to establish that a breach of contract claim was not an attempt to assert a private right of action under the Act).

GMAC's theory that all Mr. Matthews' state law claims concerning HAMP in any way are not allowed is also not supported by statute or regulation, and, indeed is

7

contrary to the language of HAMP,[2] Congressional intent, and the HAMP guidelines. HAMP explicitly provides that state law claims are not impaired by the program. In a savings clause, the Emergency Economic Stabilization Act specifies "[a]ny exercise of the authority of the Secretary pursuant to this chapter shall not impair the claims or defenses that would otherwise apply with respect to persons other than the Secretary." 12 U.S.C. § 5229(b)(2). Since the Emergency Economic Stabilization Act serves as the statutory authority for HAMP, the savings clause likewise preserves enforcement of HAMP under state law.  Likewise, federal law expressly recognizes that state contract and tort law complement HAMP to prevent avoidable foreclosures, and the statute expressly contemplates that enforcement of state law will take place against a factual background that includes HAMP. *See* 15 U.S.C. § 1639a(c) (setting HAMP as the "standard industry practice for purposes of all Federal and State laws").

Respectfully, within the rubric of caselaw related to HAMP, the *Bourdelais* decision is an outlier and the holding to which GMAC rests its unsubstantiated argument has been expressly rejected by the Seventh Circuit in *Wigood* and is not supported by the express language of the statute which created HAMP in the first place.  While there is no known Maryland cases on point concerning HAMP, the Court of Appeals did recognize earlier this year that omissions made in transactions subject to the MCPA which were false and omitted important information to the least sophisticated consumer, may violate the MCPA even though the disclosure was required by another statute which did not contain a remedy. *MRA Prop. Mgmt., Inc. v. Armstrong*, 426 Md. 83, 110

---

[2] *Wigod*, 673 F.3d at 580 ("Treasury's own HAMP directive states that servicers must implement the program in compliance with state common law and statutes")(excluding citations and quotations from HAMP directives).

(2012).

For these reasons, Mr. Matthews would ask the Court to reject GMAC's preemption theory as to his claims concerning or relating to GMAC's misrepresentations, omissions, and fraudulent concealment relating to Mr. Matthews' loss mitigation efforts.[3]

## II. NONE OF THE COUNTER DEFENDANTS ARE ENTITLED TO IMMUNITY FOR THE CLAIMS ASSERTED BY MR. MATTHEWS

GMAC clings to the hope that Mr. Matthews' claims in common law fraud and remedial consumer protection statutes are prohibited because of Maryland's recognition of "witness immunity." Doc. 18 at Pages 9-10. While it is true that Maryland common law recognizes this immunity, the defense does not apply to Mr. Matthews claims before the Court (these claims are discuss in more detail below). Each Maryland authority cited by GMAC and Ward on this issue involved claims of libel, slander, or defamation. None of the authorities relied upon by GMAC's or Ward's argument involved common law fraud or any of the remedial consumer protection statutes mentioned below. In fact in one case cited GMAC, the Court of appeals recognized that other causes of action besides defamation will have to be utilized to address the injury, damages, or losses attributable to the false testimony of a witness. *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 406, 494 A.2d 200, 204 (1985)("Thus, even the intentional and wrongful bringing or maintaining of litigation will not destroy the absolute privilege that attends the litigation,

---

[3] Mr. Matthews would also ask this Court to simply reject GMAC's other preemption argument that the Court of Appeals' decisions in the *Bates* and *Neal* decisions as well as Rule 14-211 someone trumps the statutory claims asserted relating to the debt collection practices at issue. There simply is no basis or merit to find that these authorities stand for the propositions asserted by GMAC.

and a cause of action other than defamation must be employed to redress such a wrong").[4]

The rationale of Keys is important and consistent with the general "rule...that where a statute and the common law are in conflict, the common law yields to the statute to the extent of the inconsistency, but where the legislative intent is shown to encompass an entire area then that statute preempts the common law." *Watkins v. State*, 42 Md. App. 349, 354, 400 A.2d 464, 467 (1979). Further, to adopt GMAC's reasoning that the common law defense of witness immunity applies to Mr. Matthews' statutory claims would simply eviscerate the protections intended by the legislature which did not provide for such a defense or exemption in any of the statutes and be a violation of the Maryland Constitution's separation of powers requirement. MD. DEC. OF R. ART. 8.

For these reasons, Mr. Matthews requests the Court to reject Ward's and GMAC's immunity arguments which are not in fact based on Maryland law and have no application to the actual claims before the Court.

III. MR. MATTHEWS HAS PROPERLY STATED MATERIAL FACTS WHICH WILL ENTITLE HIM LATER TIME IN THESE PROCEEDINGS TO JUDGMENT AS A MATTER OF LAW AGAINST GMAC AND WARD

Because of the automatic stay and its application to Ward, as an appointed agent

---

[4] Further, as to Ward's immunity contention, the issue before the this Court concerning her collected practices related to testimony in the First Foreclosure action, the Court of Appeals expressly declined to hold that immunity of court appointed trustees was available under Maryland law in such instances. *D'Aoust v. Diamond*, 424 Md. 549, 595, 36 A.3d 941, 967 (2012).

10

of GMAC, Mr. Matthews does not request this Court to enter partial judgment against Ward based upon collateral estoppel. However, in order to determine whether certain of the well facts demonstrate certain facts which support Mr. Matthews' claims against Ward and those against GMAC as Ward's principal, Mr. Matthews provides this summary of the factual basis of the claims to which there can be no dispute.

The factual basis for most, but not all of Mr. Matthews' claims related to Ward concern the following relevant, material, and well pled facts as to which there is no genuine dispute include:

1. GMAC appointed Ward as one of the substitute trustees authorized to carry out the First Foreclosure Action against Mr. Matthews and his Property. CC at ¶¶ 12.

2. Specifically, in commencing the First Foreclosure Action against Mr. Matthews and his home, GMAC agent, Ward, proffered to the Circuit Court of Baltimore City, Maryland multiple improper and irregular sworn affidavits, declarations, or other papers as the basis of GMAC's foreclosure action. CC at ¶¶ 79.

3. These documents purport to be signed by either Carrie Ward, Jacob Geesing, or Howard Bierman but only contain a single indecipherable signature. CC at ¶¶ 79(i).

4. The Circuit Court for Howard County, Maryland has already determined as a matter of law an affidavit/declaration identifying one of three possible affiants is not legally proper for commencing a Maryland foreclosure action. In a final order of that court in the matter of *Geesing v. Willson*, the Honorable Diane O. Leasure judicially determined that such form affidavits/declarations are improper and cannot properly maintain a foreclosure action in a Maryland court. CC at ¶¶ 34.

*See generally* Exhibit 1.   Judge Leasure specifically found and determined as

follows:

> I have a problem with the fact, and I think it is, you know, something
> that you also need to address, these affidavits have three names
> and one signature.  It is indicated that the undersigned substitute
> trustee – I have no idea which of the three names and one
> signature.  It is indicated that the undersigned substitute trustee – I
> have no idea which of the three that is...I am not aware of the
> propriety of any affidavit with three names indicated and one
> signature.

> *Ex. 1 at Page 7, Lines 19-24.*

I mean. [the use of three names below the signature is] just improper.

> *Ex. 1 at Page 8, Line 1.*

> I think the affidavit needs to be properly prepared and the three names
> underneath and one squiggle and the reference above the affidavit
> indicating that the substitute trustee, singular, appeared and you've got
> three names, I just don't think it's proper form. So I'm going to, on that
> basis, grant the motion to dismiss.

> *Ex. 1 at Page 8, Lines 19-25.*

5. Judge Leasure's findings and order in *Geesing v. Willson* is final and has

   were never appealed by Howard Bierman, Jacob Geesing, Carrie Ward,

   or any other party. Exhibit 1.


These well pled facts and findings of the Circuit Court of Howard County,

Maryland will support the application of the doctrine of non-mutual offensive collateral

estoppel.

> Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a
> defendant from relitigating an issue the defendant has previously litigated
> unsuccessfully in another action against the same or a different party. Defensive
> use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff

from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party.

*U.S. v. Mendoza*, 464 U.S. 154, 159, n. 4 (1984) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979)). In *Parklane* the Supreme Court resolved a conflict among the circuits and held that federal, "trial courts [have the] broad discretion to determine when [offensive use of collateral estoppel] should be applied." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331, (1979) (footnote omitted).

Under Maryland law, a party must meet a four-prong test before a court may permit the use of offensive collateral estoppel:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
2. Was there a final judgment on the merits?
3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? [and]
4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Rourke v. Amchem Products, Inc.*, 835 A.2d 193, 205 (Md. Ct. Spec. App. 2003) *aff'd,* 863 A.2d 926 (2004).    *See also Culver v. Maryland Ins. Com'r*, 931 A.2d 537, 542 (quoting *Leeds Fed. Sav. & Loan Ass'n v. Metcalf*, 630 A.2d 245,250 (Md. 1993)). *See also Rourke v. Amchem Prods., Inc.,* 863 A.2d 926, 938 (Md. 2004). *See also Burruss v. Bd. of County Commissioners of Frederick County*, 427 Md. 231, 46 A.3d 1182, 1194 (2012)(declining to apply the doctrine of non-mutual offensive collateral estoppel when the prior litigation's holding was reversed on appeal).

In this case all four factors will be present for the Court at the appropriate time, when the automatic stay is lifted, to apply offensive collateral estoppel to the well pled facts and Mr. Matthews' claims. Therefore, the well pled facts demonstrate that Ward is collaterally estopped from relitigating several of the relevant, material, and well pled

facts identified above.

First, the Circuit Court of Howard County has already determined the issue of whether a Maryland foreclosure to collect a debt filed with affidavits/declarations identifying three potential affiants but only single indecipherable signature was proper. That court held that the foreclosure was improper because such affidavits are not the proper form. Second, the judgment of the Circuit Court is a final judgment. It was never appealed by any party. Third, there is no question or dispute that Ward is the party with whom the Howard County judgment was entered against and she is the same Counter Defendant in this action. Fourth, Ward and her co-paries were given a fair opportunity to be heard on the core issue and were represented by counsel in the Howard County case before Judge Leasure.

For the reasons stated herein, Ward will be collaterally estopped from disputing these relevant, material, and well pled facts and whether the First Foreclosure Action was proper and legal for Ward to acquire the jurisdiction of the circuit court as part of GMAC's debt collection practices. These issues of fact and law are identical to those in *Geesing v. Willson* which has been been determined in a final judgment. *Parklane,* 439 U.S. 322; *U.S. v. Mendoza*, 464 U.S. 154; and *Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219.

Further, in this action as well as the First Foreclosure Action, GMAC and its appointed agents have improperly acquired the jurisdiction of the Court before an accurate and correct Notice of Intent to Foreclose ("NOI") was ever provided to Mr. Matthews and instead relied upon a false. CC at ¶ 76, 116(b). Mr. Matthews' argument concerning these improper NOIs has been adopted by the Court of Appeals last week.

*Shepherd v. Burson*, 110 SEPT.TERM 2011, 2012 WL 3553310,*7 (Md. Aug. 20,

2012)("In our view, the statutory purpose of providing the borrower with advance notice

and information to seek a loan modification or to negotiate some other alternative to

foreclosure is best served by identifying all secured parties—particularly any that will

share in the proceeds of a foreclosure sale—in the Notice of Intent to Foreclose").

Finally, as to Mr. Matthews's claims related to his illegal eviction by GMAC and

its agents, GMAC's arguments are also simply without merit since the foreclosure sale

was never ratified by this Court. As explained last week by the Court of Appeals in

*Curtis v. U.S. Bank Nat. Ass'n*, 86 SEPT.TERM 2011, 2012 WL 3553316, *4 (Md. Aug.

20, 2012), "[a] purchaser at a foreclosure sale is ordinarily entitled to possession of the

property upon ratification of the sale, payment of the purchase price, and conveyance of

legal title. *Legacy Funding LLC v. Cohn,* 396 Md. 511, 516, 914 A.2d 760 (2007); RP §

7–105.6(a)."

IV. MR. MATTHEWS HAS PROPERLY PLED HIS CLAIMS PURSUANT TO THE MARYLAND
CONSUMER PROTECTION ACT UNDER COUNT II AGAINST ALL COUNTER
DEFENDANTS

The Court of Appeals has explained:

An 'unfair or deceptive trade practice' includes any false or misleading
statement or representation which has the capacity, tendency, or effect of
deceiving or misleading consumers and encompasses a representation
that consumer realty has a characteristic that it does not have or is of a
particular standard or quality that is not the case. Commercial Law Art. §
13-301. Section 13-408 of that article provides for a private cause of
action to recover for loss or injury sustained as the result of a practice
forbidden by the CPA.

*Hoffman v. Stamper*, 385 Md. 1, 31, 867 A.2d 276, 294 (2005). *See also MRA Prop. Mgmt., Inc. v. Armstrong*, 426 Md. 83, 110-11 (2012)("The gravamen of an "unfair or deceptive trade practice" under the Consumer Protection Act is whether the false or misleading statements or representations have "the capacity, tendency, or effect of deceiving or misleading consumers." Section 13–301(1) of the Consumer Protection Act. Thus, the issue is whether the disclosures were misleading or had the capacity, tendency, or effect of misleading or deceiving").

The MCPA also states that material misrepresentations constitute unfair and deceptive practices, if a significant number of unsophisticated consumers would find that information important in determining a course of action in the consumer transaction involved.[5] Md. Code Ann., Com. Law II §§ 13-301, 13-303. In *Hoffman v. Stamper*, the court upheld the MCPA claims against a residential appraiser, who had no contact with the borrower, for the unfair and deceptive practices related to overstated values for flipped houses "directly 'infected' the sales at issue ...[where the consumers] would not have proceeded to closing absent those appraisals. [The appraiser] was an integral part of the entire scheme of deceptive trade practices committed in the sale of consumer realty." *Hoffman*, 385 Md. at 32, 867 A.2d at 295. *MRA Prop. Mgmt., Inc.*, 426 Md. at 110. *MRA Prop. Mgmt., Inc. v. Armstrong*, 426 Md. 83, 110 (2012) (finding that omissions made in transactions subject to the MCPA which were false and omitted important information to the least sophisticated consumer may violate the MCPA even though the disclosure at issue complied with some other statute).

---

[5] In this case the specific consumer transactions involved involve the extension of credit and the collection of consumer debts. CC. at ¶¶ 134, 136. Md. Code Ann., Com. Law § 13-303.

In support of their argument to dismiss Mr. Matthews's MCPA claim, Ward and GMAC argue to the Court that Mr. Matthews has not adequately pled reliance in support of his claim. Doc. 18 and 21/1. Respectfully, while the Counter Defendants may wish to dispute the well pled facts and offer their own, disputed version of the facts as to whether Mr. Matthews' reliance was reasonable, that is not grounds to dismiss Mr. Matthews' claims at this stage of the proceedings. *Hoffman v. Stamper*, 155 Md. App. 247, 310, 843 A.2d 153, 191 (2004) *aff'd in part, rev'd in part and remanded*, 385 Md. 1, 867 A.2d 276 (2005)("whether the [consumers] acted reasonably in so relying was a jury question"). *See also Weisman v. Connors,* 312 Md. 428, 459, 540 A.2d 783 (1988)(in claim for negligent misrepresentation, issues of whether defendant intended that his representations would be acted upon, and whether defendant was justified in relying on them were questions of fact).

Counter Defendants generally dispute Mr. Matthews' MCPA damages and characterize those damages with its own version of the facts. Respectfully Mr. Matthews has put forward plain, simple statements as to his damages and losses sustained as a result of the Counter Defendants' improper collection practices which is all that is required by Md. Rule 2-303(b)("Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings are required").[6,7]

---

[6] CC at ¶¶9, 98-99, 108 (identifying losses related to his belongings from the illegal eviction, expenses for temporary rental housing, and physical property damages to Mr. Matthews' home due to the improper seizure and weatherization of the Property); ¶117(b) (referencing legal fees defending the First Foreclosure Action pursued in a manner the Counter Defendants did not have a right to do so)(under Maryland law the fees incurred on behalf of Mr. Matthews, no matter whether he has already paid them or not, are recoverable because they were incurred on his behalf pursuant to his claims which are subject to a fee-shift provision. *See Henriquez v. Henriquez*, 413 Md. 287, 292, 992 A.2d 446, 449 (2010)(holding that a fee shift provision We shall hold that the

17

In a recent debt collection action, the U.S. District Court of Maryland denied a

similar request to dismiss a MCPA claim and summarized the arguments as follows:

> LVNV argues the state law claims should be dismissed in part because the
> plaintiffs have failed to allege cognizable "injury or loss" under the MCPA or
> "damages" under the MCDCA. Plaintiffs allege the following damages: attorneys'
> fees expended in defending the state court actions, damage to credit, and
> emotional damages. (Am. Compl. ¶ 26.) LVNV concedes that damage to credit
> and emotional damages are cognizable damages under the state
> statutes....Nonetheless, LVNV argues that "to the extent" the plaintiffs' state law
> claims are based on attorney fees incurred in defending the state court actions,
> the claims are not viable. (Def.'s Mem. at 11.).  Maryland courts recognize that
> attorneys' fees are recoverable as actual damages in certain circumstances,
> namely "where the wrongful acts of the defendant [have] involved the plaintiff in
> litigation with others, or placed him in such relation with others as make it
> necessary to incur expense to protect his interest." *Montgomery Village
> Associates v. Mark,* 95 Md.App. 337, 620 A.2d 975, 979 (Md.Ct.Spec.App.1993)

---

plain meaning of Section 12-103 permits an award of attorneys' fees, consistent with
consideration of the statutory factors, when the prevailing party receives *pro bono* legal
representation from a non-profit legal services organization, and that the award may be
made directly to the legal services organization"); *Weichert Co. of Maryland, Inc. v.
Faust*, 419 Md. 306, 331 (2011)(upholding the award of payment of attorney fees
incurred on behalf of a prevailing party regardless of whether or not prevailing party is
personally responsible for the payment")); damage s sustained by "facing mortgage
deficiency sums [Plaintiff] did not have to face due to Defendant's conflicted roles and
actions"), ¶117(c) (identifying damages and losses to Matthews through the "fees and
costs assessed to his mortgage account based upon the bogus and otherwise improper
foreclosure actions"), ¶117(d)(damage to credit and reputation "through the public
reporting of foreclosure collection actions filed in a manner in which Ward and GMAC
had no right to pursue"); ¶117(e)(lost opportunity time dealing with the illegal debt
collection practices of the Counter Defendants which jeopardized Mr. Matthews'
academic program and financial assistance); and ¶¶106-107, 117(e),  (emotional
damages due to stress and other physical manifestations including worry, irritability,
anger, sleeping problems, and decreased socialization; these manifestations have been
recognized by the Court of Appeals and in the Civil Patter Jury Instructions. *See* MPJI –
Cv 10:7; *Hoffman v. Stamper*, 385 Md. 1, 34-35).

[7] Ward joins in this argument generally by disputing the injuries, losses, and damages
alleged related to the Counter Defendant's debt collection practices  and argues that the
damages and losses flow from the foreclosure action only.  Doc. 21/1 at Page 14.  Mr.
Mathews incorporates his response hereto to Ward's disputed contention and relies
upon his well pled complaint and the law cited herein to support the damages alleged
and not those presupposed by the Counter Defendants' theories which are not properly
before the Court in any pleading.

18

(quoting *McGaw v. Acker, Merrall & Condit Co.,* 111 Md. 153, 73 A. 731, 734 (1909)). For example, a plaintiff in a malicious prosecution action is entitled to recover attorneys' fees expended in defending the unwarranted prosecution. *Tully v. Dasher,* 250 Md. 424, 244 A.2d 207, 217 (1968). Here, the plaintiffs seek to recover the cost of retaining attorneys to defend themselves in the state court actions, which they allege LVNV was prohibited from bringing and therefore constituted an "attempt ... to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14–202(8). According to the plaintiffs' allegations, accepted as true for the purposes of the motion to dismiss, LVNV's "wrongful acts ... involved the plaintiff[s] in litigation with others," which made it "necessary to incur expense to protect [their] interest [s]." *McGaw,* 73 A. at 734. Thus, if the plaintiffs succeed in proving that LVNV violated the MCPA and/or the MCDCA when it filed lawsuits against them, and that the expenditure of attorneys' fees to defend themselves in those actions was "reasonable and necessary," *id.,* they may be entitled to recover those costs as actual damages.

*Hauk v. LVNV Funding, LLC,* 749 F. Supp. 2d 358, 369-70 (D. Md. 2010). *See also Chalk v. PNC Bank, Nat. Ass'n,* CCB-11-3052, 2012 WL 2915289, *3 (D. Md. July 16, 2012)("Chalk alleges that she suffered damages, including but not limited to legal fees and expenses and emotional damages, as a result of those allegedly invalid NOITFs and the 2010 foreclosure action. *See, e.g., N.B.S., Inc. v. Green,* 409 Md. 528, 541, 976 A.2d 279 (2009) (holding that "noneconomic damages" including pain and suffering are available under the MCPA); Md.Code Ann., Com. Law § 14–203 (providing for recovery for damages for emotional distress under MCDCA). If Chalk in fact sustained such emotional damages and legal fees, those damages would not have been erased by the eventual dismissal of the foreclosure action").

Ward also seeks dismissal of Mr. Matthews' MCPA claim against her because she is an attorney and attorneys are exempt from the MCPA. In support of this argument she relies solely upon the case law of the federal courts and in particular the recent decision of *Stewart v. Bierman*, RWT 10CV2822, 2012 WL 1655716, *12 (D. Md. May 8, 2012) which is now on appeal to the Fourth Circuit. In Stewart, the court

19

explained the argument as follows:

> Section 13–104 exempts various professional services from the MCPA, including lawyers. *See* Md.Code Ann. Com. Law § 13–104(1); *Robinson v. Fountainhead Title Group Corp.,* 447 F.Supp.2d 478, 490 (D.Md.2006). Plaintiffs attempt to avoid the exemption by arguing that Defendants "were not acting within the scope of their license as attorneys" when they were appointed as trustees in the foreclosure proceedings "and therefore are not entitled to claim any exemption from liability." Am. Compl. ¶ 199. Defendants are exempt, however, because this Court has applied the exemption to dismiss MCPA claims against the enumerated professionals even when plaintiffs have alleged that they were acting in some way other than their professional capacity. *See Robinson,* 447 F.Supp.2d at 490 ("Plaintiff contends that she did not sue Long & Foster because of its activities as a realtor, but because it worked in conjunction with the other defendants to establish the sham company-Assurance Title. Plaintiff's allegations, nonetheless, concern the "professional services" of Defendants and this claim will be dismissed.").

*Id.*

Respectfully, in this instance since there is no state case law examining the scope of the professional services exemption under the MCPA which is binding on this Court, Mr. Matthews would urge the Court not adopt the rationale of Stewart which simply permits any licensed attorney who would otherwise be subject to the act to be exempt even when their actions were in violation of criminal or remedial consumer protection statutes. Certainly, the Court can use its only experience to note that the legislature only intended to exempt licensed professionals acting within the scope of their license and not attorneys choosing instead to act out-side the scope of their license.[8]

---

[8] Counter-Defendant Stephan also seeks dismissal of the MCPA claim against him based upon a limited argument that Stephan has not had any contact with Mr. Matthews as a merchant and has never provided direct consumer goods, services, or credit. Respectfully, Stephan's limited argument ignores a claim reading of the MCPA which applies broadly to a host of persons and not solely merchants. *See* Md. Code Ann., Com. Law § 13-303 ("A person may not engage in any unfair or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in...(5) The

20

Mr. Matthews would request that the well-reasoned decisions in *Hauk and Chalk* and other argument herein, apply to the present stage of proceedings in this case and that the Plaintiff's allegations, accepted as true, Counter Defendant's theories of dismissal of his MCPA claims, as to the cognizable damages alleged should be denied.

### V. MR. MATTHEWS HAS PROPERLY HIS PLED HIS CLAIMS PURSUANT TO THE MARYLAND MORTGAGE FRAUD PROTECTION ACT UNDER COUNT III AGAINST ALL COUNTER DEFENDANTS

Each of the Counter Defendants only generally request that Mr. Matthews' claims under the Maryland Mortgage Fraud Protection Act should be dismissed.

The MMFPA

[i]n its broadest sense, the statute simply states "[a] person may not commit mortgage fraud." *Id.* § 7–402. Relevant to the present action, the statute defines mortgage fraud as:

(1) Knowingly making any deliberate **misstatement, misrepresentation, or omission** during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(2) Knowingly creating or producing a document for use during the mortgage lending process that contains a **deliberate misstatement, misrepresentation, or omission** with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(3) Knowingly using or facilitating the use of any **deliberate misstatement, misrepresentation, or omission** during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

...; or

(6) Filing or causing to be filed in the land records in the county where a residential real property is located, any document relating to a mortgage loan that the person knows to contain a deliberate misstatement,

---

collection of consumer debts"); Md. Code Ann., Com. Law § 13-101(h)("'Person' includes an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity").

misrepresentation, or omission.

> Md.Code Ann., Real Prop. § 7–401(d)(1)-(6). The statutory definition of the "mortgage lending process" includes "(i) [t]he solicitation, application, origination, **negotiation, servicing,** underwriting, signing, closing, and funding of a mortgage loan; and (ii) the notarizing of any document in connection with a mortgage loan." *Id.* § 7–401(e)(2).

*Stovall v. SunTrust Mortg., Inc.*, CIV.A. RDB-10-2836, 2011 WL 4402680. *9-10 (D. Md. Sept. 20, 2011)(emphasis added).

The *Stovall* court held that the lender's alleged similar misstatements and omissions in the foreclosure process, such as those subject to this action, "are sufficient to plead a violation of the MMFPA." *Id.* *10. Further, Judge Bennett specifically rejected the lender's argument which seeks to "curtail the breadth of the statute" and found that "the plain language of the statute clearly countenances post-closing servicing activities." *Id.* In addition, Judge Bennett specifically found "the fraud complained of by [the consumer homeowner] allegedly occurred after the closing in connection with the foreclosure proceedings instituted against her [through robo-signing practices], and this Court finds that post-closing activities are clearly contemplated by the Maryland Mortgage Fraud Protection Act." *Id.* at FN 2.

Ward seeks dismissal of Mr. Matthews' MMFPA claim is on the theory that his claims do not pled any particularity under the Federal Rules of Civil Procedure. See Doc. 21/1 at 21. Irrespective of whether the federal pleading requirements apply in this action, Mr. Matthews would know that he has identified specific details of Counter Defendants false representations subject to the MMFPA claim which identify the dates, persons making the misrepresentations and other details to put the Counter Defendants on sufficient notice of the claim against them. *Compare Lloyd v. Gen. Motors Corp.*,

397 Md. 108, 154, 916 A.2d 257, 284 (2007)(which found that the following allegations "sufficient to withstand the dismissal of the petitioners' fraudulent concealment and Consumer Protection Act claims" "81. Despite Defendant's knowledge that the seats are unreasonably unsafe and that preventable injuries and death will result, they have continued to manufacture, market, distribute and sell Class Vehicles equipped with the seats....82. Defendants knowingly and intentionally concealed from the public, including Plaintiffs and the Class Members, the risk of substantial injury or death from Seat Collapses.").

Mr. Matthews' well pled counter complaint provides the Counter Defendants with a sufficient awareness of what each will have to prepare for at trial and demonstrates that Mr. Matthews has substantial prediscovery evidence in support of his allegations.

For these reasons, Mr. Matthews respectfully requests that the requests to dismiss Mr. Matthews's MMFPA claims be denied. In addition, by incorporation, Mr. Matthews incorporates his argument concerning the damages under the MCPA as if restated herein.

## VI. MR. MATTHEWS HAS PROPERLY HIS CLAIMS PURSUANT TO THE MARYLAND CONSUMER DEBT COLLECTION ACT UNDER COUNT IV AGAINST GMAC AND WARD

GMAC and Ward only dispute Mr. Matthews' claim under the MCDCA based upon their version of the facts that each may collect a debt in any manner they desire so long as the debt is valid. As shown above, Mr. Matthews' well pled facts do not support this argument and on that basis at this stage of the proceedings the Court should, respectfully, deny the motion to dismiss his claim under the MCDCA.

The MCDCA specifically provides, "[i]n **collecting or attempting to collect** an

23

alleged debt a collector may not…(8) Claim, attempt, or threaten to enforce a right with

knowledge that the right does not exist."    Md. Code Ann., Com. Law § 14-202

(emphasis added).    Further, "[t]he MCDCA protects consumers against certain

threatening and underhanded methods used by debt collectors in attempting to recover

on delinquent accounts." *Spencer v. Hendersen-Webb, Inc.,* 81 F. Supp. 2d 582, 594

(D. Md. 1999).    There is no basis in the specific language of the MCDCA that the act

only applies to collection methods related to "invalid debts." *See* MCDCA *generally.*

However, looking at the specific language of the MCDCA it is clear the act was intended

to apply broadly in debt collection practices concerning all forms of consumer debts

(including valid and invalid debts):

> (b) "Collector" means a person collecting or attempting to collect **an alleged debt** arising out of a consumer transaction.

> (c) "Consumer transaction" means **any transaction** involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes.

Md. Code Ann., Com. Law § 14-201 (emphasis added).    *See also Spencer v.*

*Hendersen-Webb, Inc.,* 81 F. Supp. 2d 582, 594 (it would be improper to dilute the

MCDCA from its express statutory language considering its "remedial aim"); *United*

*States v. Carolina Transformer Co.,* 978 F.2d 832, 838 (4th Cir. 1992)(remedial statutes

" should be construed broadly to avoid frustrating the legislative purpose").

Counter Defendants cling to a recent holding in *Stewart v. Bierman,* RWT

10CV2822, 2012 WL 1655716, *13 (D. Md. May 8, 2012), where Judge Titus held, "[i]n

order to succeed on such a claim, the express language of the MCDCA requires that

Plaintiffs allege that Defendants acted with knowledge as to the *invalidity* of the debt"

(emphasis in original).    Respectfully, the plain language of the MCDCA does not support

this added element of a MCDCA claim that the debt must be "invalid." *See generally* MCDCA.

The *Stewart* court based its holding related to MCDCA (i.e. that an element of a MCDCA claim is that the debt is invalid) upon two cases: *Shah v. Collecto, Inc.,* CIV.A. 2004-4059, 2005 WL 2216242 (D. Md. Sept. 12, 2005) and *Akalwadi v. Risk Mgmt. Alternatives, Inc.,* 336 F. Supp. 2d 492, 511 (D. Md. 2004). *See Stewart* at *13. Respectfully, neither *Shah* nor *Akalwadi* stand for such a proposition put forward in *Stewart*.

In *Shah*, on a motion for summary judgment as opposed to a motion to dismiss, the court considered a claim under the MCDCA concerning a debt which was not owed. *Shah v. Collecto, Inc.,* CIV.A. 2004-4059, 2005 WL 2216242, *11. While the consumer sought to pursue a claim under Md. Code Ann., Com. Law § 14-202(8), the *Shah* court held,

> there is **no evidence** that following Plaintiff's dispute of the debt, [that the collector] claimed, attempted, or threatened to 'enforce a right with knowledge that the right does not exist.' § 14-202(8). Instead, evidence shows that after Plaintiff disputed the debt, [the collector] ceased collection efforts and took immediate steps…to verify the debt.

*Id.* (emphasis added). In other words once the collector had knowledge that it had no right to proceed it ceased to do so in *Shah*—a fact not present in this action or the well pled Counter Complaint since GMAC and Ward knew neither had no right to proceed to foreclosure based upon a violation of Maryland's mandatory pre-requisite of a correct NOITF sent to Matthews prior to the commencement of the foreclosure proceeding, based upon false and misleading testimony presented under penalties of perjury, or not in compliance as an affidavit under Maryland law.

In *Akalwadi*, this Court considered, in the context of cross motions for summary judgment, a section of the MCDCA not at issue in this case, i.e. Md. Code Ann., Com. Law § 14-202(3)(which finds it unlawful to "[d]isclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false"). *Akalwadi*, 336 F. Supp. 2d at 511. The specific issue in *Akalwadi* was whether the defendant "knowingly disclos[ed] false information about his credit worthiness." *Id.* There was no consideration in *Akalwadi* concerning the improper debt collection practices which "claim[ed], attempt[ed], or threaten[ed] to enforce a right with knowledge that the right does not exist." *Id.* There was also no statement or holding in *Akalwadi* that only invalid debts were actionable under the MCDCA. *Id.*

Recently in similar context to the facts presented in this action, Judge Bennett found as a matter of law that unlawful debt collection practices in Maryland state courts without the legal right to do so, were a violation of the MCDCA without any regard that the alleged debt was valid:

> Moreover, this Court has further noted that "it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Spencer,* 81 F.Supp.2d at 595 (quoting *Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir.1996)) (in turn, quoting *FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965)). In the present case, [the debt collector] undoubtedly went perilously close to an area of proscribed conduct in failing to abide by Maryland's licensing laws for debt collectors, and as discussed above, actually crossed the line.

*Bradshaw v. Hilco Receivables, LLC,* 765 F. Supp. 2d 719, 732 (D. Md. 2011).[9]

For these reasons, there is respectfully no basis to dismiss Mr. Matthews'

---

[9]  HILCO was a collector who acquired credit debts that were in default; however the *Brashaw* case did not involve whether or not the debt was valid but instead focused on whether HILCO had the right to collect the debt in the manner it was doing so.

MCDCA claim as suggested by the Counter Defendants.  To do so would amount to acceptance that the 'ends justify the means' in debt collection practices by collectors such as Ward and GMAC which is exactly what the legislature prohibited in Md. Code Ann., Com. Law § 14-202.[10]

VII.    MR. MATTHEWS HAS PROPERLY PRESENTED HIS CLAIMS PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT UNDER COUNT V AGAINST GMAC

GMAC seeks this Court to dismiss Mr. Matthews' final claim against it under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Doc. 18 at Page 26-27.  However, in seeking the dismissal on this claim GMAC seeks dismissal on a limited basis—i.e. arguing only that it was not a debt collector, within the definition of the FDCPA, as either an owner or a mortgage servicer of the Matthews loan. *Id.*

Multiple courts have also applied the FDCPA to debt collectors who, like GMAC (CC at ¶ 116(d)), purchase defaulted mortgage debts when they were in default. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536-538 (7th Cir. 2003)("In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not...[explaining the rationale as follows:] If the loan is current when it is acquired, the relationship between

---

[10] Compare one court's recent holding that once a consumer demonstrates a violation of a remedial consumer protection statute, the "burden shifts to the creditor to prove its compliance."  *Gardner v. Montgomery County Teachers Fed. Credit Union*, 1:10-CV-02781-JKB, 2012 WL 1994602, *4 (D. Md. June 4, 2012) (citing numerous cases).  The same is true in this instance since accepting as true his well pled facts that Counter Defendants knew they could not proceed in the manner they chose to do so did when each attempted its debt collection through foreclosure action based upon bogus documents, the burden should shift to these Counter Defendants to put forward evidence that in fact neither actually knew nothing or did not act with reckless indifference.  The Plaintiff should simply not have the burden of pleading and proving Counter Defendant's defenses at this stage of the proceedings.

the assignee and the debtor is, for purposes of regulating communications and collection practices, effectively the same as that between the originator and the debtor. If the loan is in default, no ongoing relationship is likely and the only activity will be collection"); *Bridge v. Ocwen Fed. Bank, FSB,* --- F.3d ----, 2012 WL 1470146, *6 (6th Cir. Apr. 30, 2012)("we hold that the definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition"); *Zervos v. Ocwen Loan Servicing, LLC,* 1:11-CV-03757-JKB, 2012 WL 1107689,*3 (D. Md. Mar. 29, 2012)(recognizing that mortgage servicer who acquires servicing rights while the loan is in default is a debt collector); *Allen v. Bank of Am. Corp.,* CIV. CCB-11-33, 2011 WL 3654451, FN2 (D. Md. Aug. 18, 2011)(same).

A Seventh Circuit decision that is directly on point for many of the issues in this case is *Ruth, v. Triumph Partnerships,* 577 F.3d. 790 (7th Cir. 2009). In *Triumph,* the plaintiffs were consumers. The defendants included a "debt buyer," Triumph, which had acquired the consumer accounts after the accounts were in default. *Id.* at 793. Triumph in turn hired TAS to collect the consumer debt. *Id.* As in this case, the debt buyer, Triumph, asserted that it had no direct communication with consumers. A document drafted and executed by Triumph was forwarded to TAS to be sent to the consumers. *Id.* The consumers alleged the document was a violation of FDCPA and sued both Triumph and TAS. *Id.* 794. As in this case, the debt buyer asserted, among many other assertions, that FDCPA did not apply to Triumph as it owned the debt. *Id.* at 796.

On appeal the Seventh Circuit found that Triumph was a debt collector under FDCPA.

Triumph Partnerships submits that "it is a creditor and not a debt collector because it purchases delinquent debt thereby becoming one 'to whom a debt is owed' under § 1692a(4)." ... It contends that it does not fit the statutory definition of a debt collector because it does not collect debts; rather, it purchases debts and then hires others to collect them. The district court considered this argument and rejected it. Triumph Partnerships contends that the district court erred in doing so.

Triumph Partnerships' argument is foreclosed by our precedents. The FDCPA distinguishes between debt collectors, who are subject to the statute's requirements, and creditors, who are not. "For purposes of applying the Act to a particular debt, these two categories ... are mutually exclusive." *Schlosser,* 323 F.3d at 536. Where, as here, the party seeking to collect a debt did not originate it but instead acquired it from another party, we have held that the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired. *See McKinney,* 548 F.3d at 501; *Schlosser,* 323 F.3d at 538-39. We based this interpretation on the language of the statute, which excludes from its definition of "creditor" those who acquire and seek to collect a "debt in default," 15 U.S.C. § 1692a(4), and excludes from its definition of "debt collector" those who seek to collect a debt "which was not in default at the time it was obtained," *id.* § 1692a(6)(F).

We also found support for this distinction in the rationale behind Congress' decision to treat the originator of a debt obligation differently from a party whose only interest is in the collection of a debt that already has fallen into default. We explained this rationale in *Schlosser:*

Creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," S. Rep. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, are not covered by the Act. Instead, the Act is aimed at debt collectors, who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *Schlosser,* 323 F.3d at 536. The purchaser of an already-defaulted debt-like the debt collector, and unlike the originator and servicer of a non-defaulted debt-has no ongoing relationship with the debtor and, therefore, no incentive to engender good will by treating the debtor with honesty and respect. Accordingly, we have held that a party that seeks to collect on a debt that was in default when acquired is a debt collector under the FDCPA, "even though it owns the debt and is collecting for itself." *McKinney,* 548 F.3d at 501 (citing *Schlosser,* 323 F.3d at 538-39).

29

*Triumph,* at 796.

Mr. Matthews admits that the exact role of GMAC's relationship to his loan and its debt collection activities related thereto is muddled. However, this situation is not of Mr. Matthews' doing in his well pled facts of his counter complaint but are due to the concealment by GMAC of its true role from Mr. Matthews, related omissions by GMAC to Mr. Matthews, GMAC and its agents' misidentification of multiple other entities as the true secured party of his loan, and GMAC's affirmative acts to "pretend" to be a corporate entity it is not.

For these good faith reasons, Mr. Matthews requests that the Court defer ruling on GMAC's motion as to his FDCPA claim until discovery is completed which identifies all of GMAC's role and interests in the Matthews' loan since its inception and then may apply those facts to the FDCPA case law on whether GMAC would be considered a debt collector or not.

VIII.    GMAC ARGUES ISSUES AND PURPORTED POSITIONS OF MR. MATTHEWS WHICH ARE NOT EVEN BEFORE THE COURT

Finally, GMAC makes two substantive arguments to the Court which are not even relevant to these proceedings or an accurate statement of Mr. Matthews's positions. First, GMAC alleges that Mr. Matthews seeks to transform the First Foreclosure Action from an action dismissed without prejudice to one with prejudice. Doc. 19 at Pages 9-15. Second and related, GMAC boldly claims that Mr. Matthews may not collaterally attack the dismissal without prejudice in the First Foreclosure Action. *Id.*

Respectfully, Mr. Matthews makes neither of these arguments to the Court and therefore GMAC's effort to reform Mr. Matthews' claims to something they are not

30

**CERTIFICATE OF SERVICE**

I hereby certify and give notice that a copy of the foregoing was sent by regular U.S. mail,

postage pre-paid, was sent on this day the 29th day August  2012 to the following parties in

this action (and also by email to counsel for Mr. Stephan):

Eric Frechtel
Bradley Arant Boult Cummings, LLP
1615 L Street, NW Suite 1350
Washington, DC 20036
*Counsel for Counter Defendant GMAC*

Erin Brady
312 Marshall Avenue, Suite 800
Laurel, MD 20707
*Counsel for the Plaintiffs*

*J. Jonathan Schraub,*
*1497 Chain Bridge Road Sui te 202*
*McLean, VA 22101*
*Counsel for Counter Defendant Ward*

*Mark Simanowith*
*Saul Ewing LLP*
*500 East Pratt Street, 8th Floor*
*Baltimore, MD 21201*
*Counsel for Counter Defendant Stephan*
(Also sent by email to: M*Simanowith@saul.com*)

Phillip R. Robinson
Legg Law Firm LLC
5500 Buckeystown Pike
Frederick, MD  21703
(301) 620-1016

33

should simply be disregarded.  Mr. Matthews' claims relate to the fraudulent, unfair, and

deceptive debt collection practices employed by GMAC and its agents and employees

and the losses, damages, and injuries that arose as a result of those practices.  Also, a

foreclosure matter in this Court which does not result in a ratified sale, will always be

dismissed without prejudice as a practical matter unless the subject loan is paid in full.

To argue otherwise would simply be disingenuous and to suggest that Mr. Matthews

has so argues is plain wrong.[11]

## CONCLUSION

Based upon the foregoing argument and the well pled facts of the Counter

Complaint, Mr. Matthews asks this Court to deny the relief sought by the Counter

Defendants.  Should the Court perceive any deficiencies, Mr. Matthews requests leave

to amend as appropriate.

Respectfully Submitted,

Phillip R. Robinson
Legg Law Firm LLC
5500 Buckeystown Pike
Frederick, MD  21703
(301) 620-1016

---

[11] Contemporaneously with this filing Mr. Matthews has dismissed his claims for Fraud
and Fraudulent Concealment under Count I of the Counter Complaint but reserves his
right to reassert these claims as appropriate and necessary in the future.

31

## REQUEST FOR HEARING

Mr. Matthews requests a hearing on each of the Defendants' Motions to Dismiss.

Phillip R. Robinson
Legg Law Firm LLC
5500 Buckeystown Pike
Frederick, MD 21703
(301) 620-1016

**IN THE CIRCUIT COURT FOR BALTIMORE
CITY, MARYLAND**

| | |
|---|---|
| **LAURA H.G. O'SULLIVAN**, *et al.* | |
| Plaintiffs | |
| **v.** | Case No. **24O12000286** |
| **KEVIN J. MATTHEWS** | |
| Defendant | |
| **KEVIN J. MATTHEWS** | |
| Counter Plaintiff | |
| **v.** | |
| **GMAC MORTGAGE LLC**, *et al.* | |
| Counter Defendants | |

ORDER

Upon consideration of Counter Defendants' various Motions to Dismiss (Docs. 18, 20, 21), and the opposition thereto as well as argument of the parties, the Court does hereby deny the motions.

_____

Judge

34

# EXHIBIT 1

1         IN THE CIRCUIT COURT FOR HOWARD COUNTY, MARYLAND

2    JACOB GEESING, et al.            )

3              Plaintiffs,            )

4         vs.                         )          Civil Case No.

5                                     )          13-C-10-82594

6    KATHERINE WILLSON, et al.        )

7              Defendants.            )

8    -  -  -  -  -  -  -  -  -  /

9              OFFICIAL TRANSCRIPT OF PROCEEDINGS

10                  (Request for Reconsideration)

11

12                                 Ellicott City, Maryland

13                                 Tuesday, November 30, 2010

14   BEFORE:

15        THE HONORABLE DIANE O. LEASURE

16   APPEARANCES:

17        For the Plaintiffs:

18            MATTHEW P. COHEN, ESQUIRE

19        For the Defendants:

20            SCOTT C. BORISON, ESQUIRE

21

22   Transcribed from electronic recording by:

23       Susan R. Gnatt

24       Official Court Reporter and Transcriber

25       8360 Court Avenue

26       Ellicott City, Maryland 21043

EXHIBIT

1

2

<u>P R O C E E D I N G S</u>

1
2    THE CLERK: All rise. Hear ye, hear ye, hear ye,
3    anyone having business with the Circuit Court for Howard County,
4    please step forward. Her Honor's Court is now in session. The
5    Honorable Diane Leasure presiding.
6    THE COURT: Good morning. Please be seated.
7    THE CLERK: Your Honor, calling Case No. 13-C-10-
8    082594, Geesing, et al. versus Willson, et al.
9    THE COURT: If you could identify yourselves for the
10   record, please.
11   MR. COHEN: Good morning, Your Honor, Matt Cohen, I
12   represent the trustees.
13   THE COURT: Okay.
14   MR. BORISON: Good morning, Your Honor, Scott Borison
15   on behalf of Ms. Katherine Willson who is present.
16   THE COURT: Okay, and we are here, I believe, on your
17   motion to dismiss, correct?
18   MR. BORISON: Yes, Your Honor.
19   THE COURT: Okay. I would be happy to hear from you.
20   MR. BORISON: Your Honor, there is really three
21   different primary grounds that we are asking the Court to
22   dismiss on. The first ground is that we raised the issue that
23   the note that was submitted with the order to docket did not --
24   was made out to Ameriquest Mortgage Company and that the note
25   that was provided to the Court was part of the order to docket

3

1   and had no endorsements and, therefore, the proper party was not

2   before the Court.

3           Because these notes, I mean, it's a simple process.  I

4   mean, if I give a check to you, made out to you, and you hand it

5   to your Clerk, it doesn't mean anything.  Your Clerk can't go in

6   and use that check.  The notes are no different.  And so for

7   that reason we think that the order to docket that was submitted

8   by the Plaintiffs was improper because it failed to show that

9   the people who they -- or who they pretended to represent

10  actually held the note at the time of the order to docket.

11          Now, I will say that they have come back in response

12  to our motion that they submitted and said, oh, well, here is

13  the note with the endorsement.  But the issue is did they have

14  it proper at the time that they filed and whether or not they

15  can come back and just create, you know, redo the records, so to

16  speak, after the fact.

17          We submit that what is necessary for the order to

18  docket to be proper is for the correct document to be presented

19  at the time of filing for this Court to have jurisdiction over

20  the matter.

21          The second basis for our motion to dismiss is that we

22  believe that there are issues relating to the origination of

23  this loan.  This was an Ameriquest loan that was taken out in

24  2005.  There was, and we referenced -- there was subsequent

25  litigation in regards to Ameriquest on a class action basis and

4

1    in that class action one of the things that was reserved was

2    that the defenses to foreclosure actions would remain with the

3    class members and, therefore, we should be allowed to raise

4    those.

5         Now, in response they have said, well, it is time-

6    barred.  But that is not necessarily true because the class

7    action itself would toll the statute of limitations as well as

8    the statute of repose.

9         So, their argument (indiscernible) you should just

10   ignore the class action and just apply three years and we

11   disagree with that.  We think we have submitted evidence in the

12   form of verified motion, signed by my client under oath, stating

13   that these various issues that arose in connection with the

14   origination of this note -- sort of part and parcel of that, we

15   have also raised the issue as to the note itself because during

16   previous settlement negotiations, the position was taken by the

17   Plaintiffs, by Ameriquest, that they had lost the note and

18   suddenly now we are told that the note has reappeared.

19        We haven't seen the original note and, again, the one

20   that was presented to the Court contained no endorsements.

21        And then the last issue, Your Honor, and this is a

22   relatively new issue which relates to whether or not these

23   signatures were accurate or not, and, in all candor to the

24   Court, I can't tell.  There are various signatures.  What I can

25   tell the Court is what we have now is we have various affidavits

5

1    and documents that are submitted to the Court with three
2    different names on them.
3                THE COURT:  Okay.
4                MR. BORISON:  The first name being Jacob Geesing and
5    now we received a response saying that these were actually the
6    signatures of Howard Bierman and the signature submitted in the
7    motion for the verification -- and I would note, the
8    verification is unusual, Your Honor, in the sense it is not made
9    valid by personal knowledge which is the general verification.
10   So I don't know, for the Court to look at this and make a
11   determination that, yes, that is Howard Bierman's signature,
12   when you have first the name immediately under the signature
13   line was Jacob Geesing; second, the only verification, if the
14   Court is going to entertain it, is not made upon personal
15   knowledge, which, you know, the usual -- given the content of
16   the verification of the issues being raised, so, for that
17   reason, we think that it is not properly before the Court as an
18   order to docket because we have these signatures that are in
19   question and haven't really been adequately explained.
20               For that, we would either ask for a dismissal, or,
21   alternatively, under the new rule, the Court can go ahead and
22   appoint a special master for the purposes of making a
23   determination of what exactly happened and whose signature it
24   is, those types of things.
25               THE COURT:  Okay, all right.

6

1          MR. BORISON:  Thank you.

2          THE COURT:  Okay.

3          MR. COHEN:  Your Honor, I confess that I was under the

4   impression that we were proceeding only on the new issue, the

5   third issue that we addressed that was raised in the new motion

6   since the old motion had been denied almost 90 days prior.  To

7   the date that this was filed to the extent that he seeks to

8   reconsider the denial of his original motion to dismiss, we

9   would raise the first two arguments.

10          THE COURT:  I think the first ruling was, as I recall

11  Judge Gelfman made a note, denied at this time.  I'm not sure

12  what --

13          MR. COHEN:  I think he denied it probably because

14  there was no sale scheduled, likewise, now there is no sale

15  scheduled.

16          THE COURT:  Yes.  It's unclear if the foreclosure has

17  occurred.

18          MR. COHEN:  Right, and there was actually a bankruptcy

19  that has been filed.

20          THE COURT:  I still think we can proceed with the

21  motion to dismiss.

22          MR. COHEN:  Okay, so like I said, with regard to the

23  first two items arguments, I would have to rest mainly on what I

24  wrote in my opposition.  I would note that the promissory note

25  is stamped, endorsed in blank on the back of the -- which, for

7

1    all intents and purposes, I don't see how that -- I haven't seen

2    anything that says that that is improper.  That creates bearer

3    paper.  We have possession of the original note.  I believe -- I

4    know we had possession of the original note the entire time, so

5    I believe in my opposition I would have invited him to come and

6    inspect it.  If I had known that we were going to be proceeding

7    on it today, I would have brought it to court.

8            THE COURT:  Just address the signature issue.  I think

9    that is the concern.

10           MR. COHEN:  Sure, right.  I mean, Your Honor, if the

11   Court -- I think it is really up to the Court and not to Mr.

12   Borison to determine whether or not there is a reason to set a

13   show cause hearing.  I believe that Your Honor is, from what I

14   hear, is probably very familiar with Howard Bierman's and the

15   other signatures in my office.

16           THE COURT:  I have no idea.

17           MR. COHEN:  No?

18           THE COURT:  It's a squiggle or a scrawl.  I have a --

19   personally, I have a problem with the fact, and I think it is,

20   you know, something that you also need to address, these

21   affidavits have three names and one signature.  It is indicated

22   that the undersigned substitute trustee -- I have no idea which

23   of the three that is.  I mean, I am not aware of the propriety

24   of any affidavit with three names indicated and one signature.

25           MR. COHEN:  Right, right.

8

1      THE COURT:  I mean, it's just improper.

2      MR. COHEN:  I was explaining --

3      THE COURT:  And the knowledge issue is another aspect

4  of the affidavit which I think is also a problem.

5      MR. COHEN:  Okay, well, as I was explaining to Mr.

6  Borison, that there was a certain time, and those happened to be

7  the cases that are filed during this time where we have that --

8  I guess would turn out to be a problem that there were the three

9  names and none of the forms were identified and now our practice

10 is to stamp next to the -- next to the signature so that you

11 know --

12     THE COURT:  Well, that's good going forward, but

13 still, I mean, it's --  there are problems generally now with

14 these, quite honestly.

15     MR. COHEN:  I think that if you can compare his

16 signature to -- or Mr. Borison can present a comparison of

17 Howard Bierman's signature --

18     THE COURT:  Well, I don't think that is my job, quite

19 frankly.  I think that the affidavit needs to be properly

20 prepared and the three names underneath and one squiggle and the

21 reference above the affidavit indicating that the substitute

22 trustee, singular, appeared and you've got three names, I just

23 don't think it's in proper form.

24     So I'm going to, on that basis, grant the motion to

25 dismiss.

9

1          MR. COHEN:  Your Honor, I think that under the rules I

2     think that you need to set it -- refer it to a master --

3          THE COURT:  No, I don't.  The Court may refer to the

4     master and I have been intimately involved with the progression

5     of the rules and the idea of having an examiner -- you can't

6     correct this.  No matter whose signature this is, even if it is

7     the same person, you can't correct this because it is still not

8     in proper form with three signatures.  You have one affiant, not

9     three, so it can't -- you know, even if it is shown that that is

10    Mr. Bierman's signature, it is still a problem with the

11    affidavit itself.

12         The purpose of the rule with giving the Court the

13    option of having an examiner is for court resource issue

14    because, obviously, we are looking at a number of different

15    cases and it requires tremendous court resources.

16         So there is no requirement under the rule to have an

17    examiner so I am going to grant this motion to dismiss.

18         MR. COHEN:  Your Honor, will it be without prejudice?

19         THE COURT:  Yes.

20         MR. COHEN:  Thank you.  If I could just -- I

21    understand it has been granted, can I just ask a question?

22         THE COURT:  Yes.

23         MR. COHEN:  Do you -- do you think it is improper

24    because one of them -- all three of them should have had to

25    sign?

10

1          THE COURT:  I think you have one affidavit, one

2     affiant, one signature.  And, you know, there are just -- these

3     affidavits are not in appropriate form.  I mean, that is -- this

4     was raised -- I mean, this isn't unique to this particular case.

5     I mean, there was a lot of discussion about this at the Rules

6     Committee and at the hearing before the Court of Appeals.

7          It is just not proper affidavit form.

8          MR. COHEN:  Is it proper --

9          THE COURT:  I can't give you legal advice.  You will

10    have to figure it out going forward, but this case, these

11    affidavits, it's a problem so not going beyond any other -- any

12    case -- I'm not addressing any case other than the one that is

13    before me and I'm going to grant the motion to dismiss without

14    prejudice.

15         MR. COHEN:  Thank you.

16         THE COURT:  Okay.

17         MR. BORISON:  Thank you, Your Honor.

18         THE CLERK:  All rise.

19              (The hearing was concluded at 9:20

20              a.m.)

21

22

23

24

25

**11**

## CERTIFICATE OF TRANSCRIBER

1        **CERTIFICATE OF TRANSCRIBER**

2    I hereby certify that the proceedings in the matter of

3  Jacob Geesing, et al. versus Katherine Willson, et al, Case No.

4  13-C-10-082594, heard in the Circuit Court for Howard County,

5  Maryland, on November 30, 2010, were recorded by means of

6  digital audio recording.

7    I further certify that, to the best of my knowledge and

8  belief, page numbers 2 through 10 constitute a complete and

9  accurate transcript of the proceedings as transcribed by me.

10    I further certify that I am neither a relative to nor an

11  employee of any attorney or party herein and that I have no

12  interest in the outcome of this case.

13    In witness whereof, I have affixed my signature this 12th

14  day of January, 2011.

15

16

17       Susan R. Gnatt

18       *Official Court Reporter*

19

20

21

22

23

24

25

## EXHIBIT C TO CAMPBELL DECL.

**Movant's Notice of Dismissal of Count I of the Counter Complaint**

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

LAURA H.G. O'SULLIVAN, *et al.*

      Plaintiffs

v.                       Case No. 24012000286

KEVIN J. MATTHEWS

      Defendant

KEVIN J. MATTHEWS

      Counter Plaintiff

v.

GMAC MORTGAGE LLC, *et al.*

      Counter Defendants

**NOTICE OF DISMISSAL WITHOUT PREJUDICE OF COUNT I ONLY OF COUNTER
PLAINTIFF'S COUNTER COMPLAINT**

**&**

**NOTICE THAT COUNTER PLAINTIFF HAS ASKED THE U.S. BANKRUPTCY
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK TO LIFT THE
AUTOMATIC STAY RELATED TO THIS ACTION**

Counter Plaintiff Kevin Matthews ("Counter Plaintiff" or "Mr. Matthews"), by and

through his undersigned attorneys, does hereby give notice he elects to dismiss Count I

only to his Counter Complaint (Doc. 1/1) before this Honorable Court at this time.

Counter Plaintiff will file an amended complaint for this limited purpose at a time when

the automatic stay imposed under 11 U.S.C. § 362(a) is lifted by the U.S. Bankruptcy

Court for the Southern District of New York.

Mr. Matthews also gives notice that he has requested leave of the U.S.

Bankruptcy Court for the Southern District of New York pursuant to 11 U.S.C. §

362(d)(1) to terminate the automatic stay to permit these proceedings to proceed in the natural course (except that Mr. Matthews has only asked for limited leave only to determine liability of Counter Defendant GMAC and general leave for all other purposes against the remaining Counter Defendants and potential new Counter Defendants).

Respectfully Submitted,

Phillip R. Robinson
Legg Law Firm LLC
5500 Buckeystown Pike
Frederick, MD  21703
(301) 620-1016

*Attorneys for Counter Plaintiff/Defendant*

## CERTIFICATE OF SERVICE

I hereby certify and give notice that a copy of the foregoing was sent by regular U.S. mail, postage pre-paid, was sent on this day the 29th day of May 2012 to the following parties in this action:

Erin M. Brady, Esq.
312 Marshall Avenue, Suite 800
Laurel, MD 20707
*Attorney for the Plaintiffs/Substitute Trustees*

Jonathan Schraub
1497 Chain Bridge Road, Suite 202
McClean, VA 22101
*Attorney for Counter Defendant Ward*

Steven A. Pozefsky
Eric A. Frechtel
Bradley Arant Boult Cummings, LLP
1615 L Street, NW, Suite 1350
Washington, DC 20036
*Attorneys for Counter Defendant GMAC*

*Mark Simanowith*
*Saul Ewing LLP*
*500 East Pratt Street, 8th Floor*
*Baltimore, MD 21201*
**Counsel for Counter Defendant Stephan**

_____
Phillip Robinson