**EXHIBIT A**

1  Joseph Arthur Roberts, State Bar No. 156180
2  LAW OFFICE OF J. ARTHUR ROBERTS
3  3345 Newport Blvd., Suite 213
   Newport Beach, CA 92663
4  Telephone: (949) 675-9900
   Facsimile: (888) 989-9309
5  Email: Joe@JarLegal.com
6  Attorney for Plaintiffs and all
7  others similarly situated



FILED
CLERK, U.S. DISTRICT COURT

APR 2 5 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

10 |                                    CASE NO. **CV12-01023 GW (OPx)**
11 KENNETH L. KRAL, an individual;
12 LISA A. STRICKER, an individual;    Assigned to:  Honorable George H. Wu
   on behalf of themselves and all others
13 similarly situated,                 **FIRST AMENDED COMPLAINT**
14
                     Plaintiffs,       1. **Unlawful/Unfair Acts §17200**
15 vs.                                     Improper Notarial Business Practices
16
17 GMAC MORTGAGE, LLC; EXECUTIVE       2. **15 USC 1641g Notice Violations**
   TRUSTEE SERVICES, LLC;
18 and DOES 1 through 10, inclusive,
19                                      **DEMAND FOR JURY TRIAL**
20                   Defendants.        **Complaint filed:  February 7, 2012**
21
22
23
24
25     Plaintiffs captioned above, by and through his attorney of record, brings this action against
26 defendants GMAC MORTGAGE, LLC ("GMAC") AND EXECUTIVE TRUSTEE SERVICES
27
28
                                        1

1  ("ETS") AND DOES 1 through 10, inclusive, inclusive (collectively, "Defendants") and alleges the

2  following on information and belief, except as to those allegations which pertain to the Plaintiffs:

3
   **VENUE**
4

5      1.      The Court has subject matter jurisdiction over this action under 28 USC § 1331

6  wherein the action arises under the Constitution, laws or treaties of the United States and/or under

7  28 USC § 1332 wherein this is a class action over $10,000,000.00 where at least one plaintiff is

8  diverse from one defendant.
9

10     2.      The Court has personal jurisdiction over the defendants in this action by the fact that the

11 Defendants are conducting business in the state of California.

12     3.      Nothing in the Consent Order entered into between GMAC and its affiliates (ALLY

13 FINANCIAL, INC., ALLY BANK and RESIDENTIAL CAPITAL, LLC) and the United States

14 Department of Treasury's Office of the Comptroller of Currency (the "OCC") signed on April 13,
15

16 2011 restricts this Court's jurisdiction.  Plaintiffs' rights do not derive from the Consent Order nor

17 does the Consent Order attempt to remedy public land records.

18     4.      Plaintiffs seek equitable relief arising from defendants' systemic violations of Notary

19 laws and standards which will not affect enforcement or otherwise restrict the scope of Consent
20

21 Order.  Plaintiffs seek equitable relief to compel defendants to cure the effect of the widespread

22 dissemination of improperly acknowledged foreclosure documents in public land records and expect

23 that this action will be joined by several California county District Attorneys.

24     5.      Venue is proper in this Court pursuant to 28 USC § 1392 because the action involves
25

26 real property located in the Central District of California; and pursuant to 28 USC § 1391(b) and a

27 substantial part of the events or omissions on which the claims are based occurred in this District.

28

                                    2

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

# I.    PARTIES

6. Defendant, GMAC MORTGAGE, LLC  ("GMAC") is believed to be a Delaware Limited

Liability Company and subsidiary of a national banking association, ALLY BANK,

organized and existing under the laws of the United States, with its principal banking

association organized and existing under the laws of the United States, doing business in the

State of California.

7. Defendant EXECUTIVE TRUSTEE SERVICES, LLC ("ETS"), is believed to be a Delaware

Limited Liability Company is the alleged Trustee in hundreds of California Deeds of Trusts

serviced or owned by GMAC. At all time relevant ETS acted an agent to and under the

exclusive control of GMAC.

8. Plaintiff, KENNETH L. KRAL, at all times mentioned herein relevant to the First Amended

Complaint is a resident of the State of California and the owner of real property secured by a

defaulted Note and Deed of Trust allegedly serviced and presumably owned by GMAC.  The

residential property is commonly known as 13260 SOLOMAN PEAK DRIVE, RIVERSIDE

CA  92503 (Hereinafter, "KRAL Property").

9. Plaintiff, LISA A. STRICKER, at all times mentioned herein relevant to the First Amended

Complaint is a resident of the State of California and the *former* owner of real property

secured by a defaulted Note and Deed of Trust allegedly serviced by GMAC on behalf of a

mortgage backed security trust commonly known as US BANK, NATIONAL

ASSOCIATION, a federally chartered bank of the United States and as Trustee, successor in

interest to WACHOVIA BANK, N.A., as Trustee for MASTER ALTERNATIVE LOAN

TRUST 2004-09, (hereinafter, the "US BANK TRUST").  Stricker's property was sold by

credit bid to US BANK TRUST at a non-judicial foreclosure sale by ETS.  The residential

3

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

property is commonly known 2401 Chandler Avenue #5, Simi Valley, California

(Hereinafter, "STRICKER Property").

10. Plaintiffs do not know the true names and capacities of the defendants DOES 1 through 10,

inclusive, and, as such, names said defendants by such fictitious names.  Plaintiffs will amend

the complaint to state the true name and capacity of the DOE defendant(s) when such

information is ascertained.

11. Plaintiffs are informed and believe, and allege thereon, that each defendant is responsible in

some manner for the occurrences alleged in the complaint at all times mentioned and that

plaintiffs', and the general public's, actual injury were proximately caused by the defendants

business practices.

12.  Plaintiffs are further informed and believe, and allege thereon, that each defendant was the

agent, servant, representative, and/or employee of their co-defendants, and in doing the things

hereinafter alleged were acting in the scope of their authority as agents, servants,

representatives, family members and/or employees, and with the permission and consent of

their co-defendants.

13.  Additionally, plaintiffs are informed and believe, and allege thereon, that each defendant

assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every

other defendant and that each corporate defendant, if any, was acting as the alter ego of the

other in the acts alleged herein.

14. Plaintiffs do not seek to litigate wrongful foreclosure here and reserve their individual rights

to pursue such matters independently.

15. In addition to the allegations violations of 15 USC 1641g, the allegations detailing Plaintiffs'

wrongful foreclosure claims are described so as to provide the context of the complained of

4

**FIRST AMENDED CLASS ACTION COMPLAINT**

*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

business practice: that defendants solicit, coerce and influence persons to commit improper

notarial acts in furtherance of a broader business model that results in wrongful foreclosures

and the widespread pollution of public land records with thousands of improperly

acknowledged documents.

# GENERAL ALLEGATIONS

16. Plaintiff incorporates these allegations into the claim below as though fully set forth herein.

17. A notary public is an official entrusted by her state to serve as an objective witness to the

execution of specific legal documents. This function serves to inhibit the fraudulent

manipulation of identity and ensure a properly formatted signature. Normally commissioned

by a Secretary of State and always subject to state laws and discipline, an individual seeking

commission as a notary must satisfy criteria regarding character and competence.

18. The acts of notaries are *official state act* regulated by professional code and state statutes.

The statutory and professional duties of notaries include verification that a signer of a

document presented satisfactory evidence of identity, oath, appeared in the Notary's presence,

and actually signed the document.  It is unlawful for a non-notary to act as a notary or to use

the stamp, signature of sequential journal of a notary.  In California and in other states, a

notary is required to possess, utilize and keep secure a notary seal and sequential journal.  A

notary public is required to keep one active sequential journal at a time of all acts performed

as a notary public. The journal must be kept in a locked and secured area (such as a lock box

or locked desk drawer), under the direct and exclusive control of the notary public. The

sequential journal is the exclusive property of the notary public and shall not be surrendered

to an employer upon termination of employment.

5

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

19. The official acts of notarized, including proper acknowledgement; affect the evidentiary value of documents. A duly notarized foreclosure document executed on behalf of an incorporated or unincorporated entity by a duly authorized person is *prima facie evidence* that the instrument is the duly authorized act of the entity named in instrument. As such, the public assume the validity of notarized documents. Courts frequently take judicial notice of documents at the request of defendants.

20. Defendants' loan servicing business includes the processing and acknowledgment of tens of thousands of documents created in contemplation of non-judicial foreclosure of real property.

21. In a proper and lawful notarization business practice, compliance with notary laws and standards, proper due diligence and maintenance of sequential notary logs would represent a substantial cost of doing business for defendants and its competitors.

22. So as to substantially reduce legitimate notary related costs, and so as to enhance the illusion and evidentiary value of non-judicial foreclosure documents, most of which contain a range of inaccurate, deceptive and fraudulent representations of fact, defendants have implemented a business practice that relies upon the systemic violation of notary laws and standards.

23. That this practice has polluted our public land records non-judicial foreclosure documents which very often contain false, improper, inaccurate and fraudulent content as well as faulty acknowledgements.

24. Notwithstanding their content, because these documents appear to be properly acknowledged, the documents are presumed by the public, citizens, title companies, judges, trustees, buyers, attorneys and borrowers to be *prima facie evidence* that the document is the duly authorized act of the entity named in the instrument (see Civil Code Section 1190).

6

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

25. While the foreclosure documents themselves are published in contemplation of effectuating non-judicial foreclosure, defendants have exploited, and continue to exploit, the evidentiary presumption of validity of these improperly acknowledged documents in thousands of bankruptcy and foreclosure defenses cases involving Class members.

26. The improperly acknowledged documents are published in contemplation of non-judicial foreclosure and remain in the public record. Where litigation or bankruptcy subsequently arises, defendants knowingly offer these improperly acknowledged documents as evidence and receive the benefit of the Civil Code Section 1190 presumption. Said practice injures Plaintiffs and the integrity of both the courts and public land records.

27. That each lead Class Plaintiff was the borrower of a residential mortgage loan ("MLN") that is a non-negotiable instrument and which MLN is now owned or serviced by Defendant or its agents.

28. In each case, Defendants initiated and completed a non-judicial foreclosure of the subject properties under the California statutory scheme, Civil Code 2924.

29. In each, case Defendants caused various documents to be recorded in the public land records each of which were created by Defendants in contemplation of a non-judicial foreclosure.

30. Said documents, including Assignments of Deeds of Trust, Substitutions of Trustee and Deeds Upon Trustee Sale, were each executed by an agent of Defendants who lacked any personal knowledge as to the facts asserted in each document and who lacked any agency relationship to the true party entitled to enforce the terms of the subject MLN.

31. That each foreclosure document was then improperly acknowledged. That the mass production of improperly acknowledging documents is defendants' standard business practice. That said notary practice is central to an institutionalized business practice of

7

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

"Robo-signing" and includes soliciting, coercing and influencing improper notarial acts. That said improper acts are known by defendants to be wrongful, deceptive and improper but are institutionalized in an effort to reduce foreclosure processing costs.

32. Said foreclosure documents are frequently acknowledged by non-notaries, acknowledged outside the presence of the signers, acknowledged without verification of the signer's identification, and acknowledged without proper recordation in a sequential journal.

33. Plaintiffs are informed, believe and herein allege therein that in connection with a California residential mortgage default servicing portfolio, Defendants have implemented and engaged in a deceptive, unlawful and unfair business practices each of which institutionalize the soliciting, coercing and influencing the performance of improper notarial acts in violation of CA Government Code Section 8225 and other state laws.

34. As required under California law, certain foreclosure documents are required to be properly acknowledged by a notary prior to recording in the public land record.

35. Central to this *unlawful* practice is the creation, execution and publication of tens of thousands of improperly acknowledged foreclosure related documents in the public land records. While the practice has saved defendants millions in processing costs, the practice has polluted our public land records system with improperly acknowledged foreclosure documents.

36. The business practice allows non-notaries to act in a notary's capacity, eliminates the time, need and effort to maintain notary standards, eliminates the time, need and effort to maintain journals and further facilitates quick and inexpensive non-judicial foreclosure of California real property with total disregard for the law and the rights of the affected Class members.

8

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

37. As stated in the Consent Order entered into between GMAC and the United States Department of Treasury's Office of the Comptroller of Currency (the "OCC") on April 13, 2011, the Comptroller found that GMAC

"(b) filed or caused to be filed in state and federal courts, <u>or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary</u>"

38. According to the Consent Order, GMAC and its affiliates:

"<u>filed or caused to be filed in state courts in connection with bankruptcy proceedings in federal courts numerous affidavits executed by employees of the Mortgage Servicing Companies (GMAC and affiliates) or <i>employees of third-party providers</i> making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such knowledge or review</u>"

39. From January 1, 2009 to December 31, 2010, GMAC completed 89,998 foreclosure actions according to the Consent Order which only covers abuses in this limited period. That improperly acknowledged documents recorded before, during and after this two year period remain in the public land record and that defendants continue to use the evidentiary presumption accompanying said documents against Plaintiffs in non-judicial foreclosure, bankruptcy and civil cases. That said Consent Order fails to remedy the continuing effects of the publication of thousands of improperly acknowledged documents in California public land records.

9

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

40. That Defendant EXECUTIVE TRUSTEE SERVICES, LLC is such a third-party provider to GMAC and acted as GMAC's agent in furtherance of the improper notarial business practice.

41. Individual employees of defendants are required to "facilitate" the acknowledgment of over 700 foreclosure documents in a single week.

42. That while the Consent Order provides for an agreement wherein GMAC agrees to take remedial measures to ensure that it implement procedures to remediate its unsafe and unsound banking practices, the Consent Order does not limit Plaintiffs' right to a private cause of action for equitable relief including a much needed purging of the public land records.

43. To date, said improperly acknowledged documents remain in the public record and defendants continue to use these documents as *prima facie evidence* against the interests of Plaintiffs.

44. Faced with such a work load and in an effort to save due diligence costs and maximize profit, defendants have elected to institutionalize systemic violation of notary laws and standards.

45. Rather than incur the legitimate cost of doing business in the Loan Servicing Market, Defendants have chosen to rely upon systematic improper notarization as the center piece of its foreclosure practice.

46. To this end, defendants knowingly solicit, coerce and influence the performance of improper notarial acts and have institutionalized the very practice of violating Notary laws and professional standards. Defendants knowingly solicit, coerce and influence its notaries through unrealistic productivity requirements and by intentionally mismanaging the acknowledgment process.

47. Defendants knowingly solicit, coerce and influence its notaries and non-notary agents to engage in improper notarial acts frequently and in wide variety, including but not limited to:

10

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

soliciting, coercing and influencing acknowledgement of documents not in the presence of the signer, acknowledgement of documents without proper identification, execution and acknowledgement of documents by a notary, acknowledgement of documents by non-notaries, use the notary stamps by non-notarizes, use of digital reproduction of notary stamps and signatures, acknowledgement of documents where the notary has no personal knowledge of a signer's corporate role, failure of the notary to record transactions in the notary sequential journal, allowing access by non-notaries to the sequential journal, failure to obtain the signature and thumbprint of the signer in the sequential journal at the time of acknowledgement and the failure to secure the sequential journal in a safe and secure place.

48. Once these improperly notarized documents are entered into the public record they become *prima facie evidence* that each document is truly the duly authorized act of the entity named in the instrument (see Civil Code Section 1190). Defendants systemically use these improperly acknowledged documents and the accompanying evidentiary presumption, against borrowers in non-judicial foreclosure, bankruptcy and foreclosure litigation cases.

49. The Consent Order, which only applies to documents created in 2009 and 2010, provides no provisions or specific relief for remedying the ongoing negative effects of these improperly notarized documents on the Plaintiffs or for the purging and restoration of the integrity of the statewide public land records.

## KRAL FACTS

50. Plaintiffs incorporate these allegations into the claim below as though fully set forth herein.

51. On or about November 5, 2009, Plaintiff entered into a residential refinance loan with AMERIGROUP MORTGAGE CORPORATION, A DIVISION OF MORTGAGE

11

FIRST AMENDED CLASS ACTION COMPLAINT
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

INVESTORS CORPORATION, AN OHIO CORPORATION ("AMERIGROUP") for

$537,850.00 secured by a deed of trust.

52. Soon after origination, GMAC claimed that it was the authorized servicer of the KRAL MLN. In reliance, KRAL began sending payments to GMAC. KRAL is informed and believes that this is a Department of Veteran Affairs ("VA") loan. As such, KRAL believes this loan must be a securitized loan guaranteed by GINNE MAE, and therefore not "owned" by GMAC.

53. That the KRAL facts are a typical example of the implementation of defendants' business practice where a borrower files for Chapter 7 bankruptcy and defendants cause fraudulent and improperly acknowledged Substitution of Trustee and Assignment of Deed of Trust as well as a fabricated note endorsement to create the illusion that GMAC is the beneficiary of a securitized VA MLN, rather than just a loan servicer.

54. So as to save costs, Defendants perpetrates the illusion that the sale of the KRAL MLN to GMAC occurred after KRAL defaulted on the MLN. Defendants rely on the use of improperly notarized documents to support the illusion that the Note and Deed of Trust was transferred to GMAC and thereafter the power to appoint its own substituted trustee to conduct a non-judicial foreclosure sale. The use of improperly notarized documents is a crucial element to GMAC and other defendants' business model which results in substantial cost savings and increased profits.

55. KRAL defaulted on his loan obligations. Thereafter, on January 10, 2011, FRANCO TORRES, an agent each defendant, executed an ASSIGNMENT OF DEED OF TRUST ("KRAL ASSIGNMENT"), as the alleged Assistant Secretary of Mortgage Electronic Registration Systems, Inc. (**EXHIBIT #1**).

12

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

56. The KRAL ASSIGNMENT purports to transfer all beneficial interest in the Deed of Trust together with the Note to GMAC by MERS, and on behalf AMERIGROUP. The KRAL ASSIGNMENT includes an acknowledgement executed by AMBER BARHAM, a Texas notary and recorded in the RIVERSIDE County public land records on January 14, 2011.

57. That in consenting to the appointment of MERS as the nominee of his Deed of Trust, KRAL's consent extended only to the rules, articles and bylaws of MERS itself. That in transferring the KRAL NOTE to GMAC, MERS exceeded the scope of its agency powers and authority.

58. That TORRE, BARHAM, MERS, ETS and DOE 1 were at all times herein acting as agents and at the direction of GMAC. That GMAC and defendants published and recorded the KRAL ASSIGNMENT document in contemplation of non-judicial foreclosure.

59. Purely to save costs and chill borrower opposition, defendants perpetrate the illusion that the sale of KRAL's MLN from loan originator directly to GMAC occurred after loan default.

60. That the referenced KRAL ASSIGNMENT is a fabricated and "photo-shopped" document, containing inaccuracies and misrepresentations, created to support the illusion that MERS had any authority to transfer the KRAL NOTE to GMAC, that the NOTE was actually transferred to GMAC for "value received", that GMAC was a new party in interest, that GMAC therefore had standing to enforce the terms KRAL MLN, notwithstanding the rights of the as yet unidentified Mortgaged Backed Security Trust insured by GINNIE MAE, in the KRAL MLN.

61. That the KRAL ASSIGNMENT was improperly acknowledged. That BARHAM and DOE 1 have engaged in improper notarial acts: that DOE 1 improperly acted as a notary when she signed the KRAL ASSIGNMENT, that BARHAM was not duly commissioned, that this

13

**FIRST AMENDED CLASS ACTION COMPLAINT**

*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

document was not actually executed by TORRE in the presence of BARHAM, that

BARHAM did not properly acknowledge this document, that BARHAM did willfully fail to

keep her notary seal under her direct and exclusive control, BARHAM did not duly record

this transaction in a sequential journal or keep said journal in a safe and secure place, that this

document was improperly acknowledged by DOE 1 in violation of California and Texas

notary laws and professional standards.

62. Those defendants GMAC, ETS, MERS and their agents solicited coerced and influenced

DOE 1 and BARHAM to engage in the aforementioned improper notarial acts when each

defendant knew these acts to be improper notarial acts.

63. On January 12, 2011, WILDER GOMEZ, as "AUTHORIZED OFFICER" of GMAC

executed a Substitution of Trustee ("SOT") which purports to name Defendant ETS as the

TRUSTEE to the KRAL Deed of Trust, **EXHIBIT 2.** That the Substitution of Trustee

includes an acknowledgement executed by GINGER LEEANN HARRISON, a Texas Notary

and recorded in the RIVERSIDE County public land record on January 25, 2011.

64. That GOMEZ, HARRISON, ETS and DOE 2 were at all times herein acting as agents and at

the direction of GMAC. That GMAC and defendants published this SOT document in

contemplation of non-judicial foreclosure.

65. That the referenced KRAL Substitution of Trustee is a fabricated and "photo-shopped"

document, containing inaccuracies and misrepresentations, created to support the illusion that

GOMEZ was a duly authorized agent for GMAC, that GMAC was the "present beneficiary"

and therefore had standing to name ETS as new trustee to the KRAL Deed of Trust.

66. That the KRAL SOT was improperly acknowledged. That HARRISON and DOE 2 have

engaged in improper notarial acts: that DOE 4 improperly acted as a notary when she signed

14

FIRST AMENDED CLASS ACTION COMPLAINT
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

the KRAL Substitution of Trustee, that HARRISON was not duly commissioned, that this document was not actually executed by GOMEZ in the presence of HARRISON, that HARRISON did not properly acknowledge this document, that HARRISON did willfully fail to keep her notary seal under her direct and exclusive control, HARRISON did not duly record this transaction in a sequential journal or keep said journal in a safe and secure place, that this document was improperly acknowledged by DOE 2 in violation of California and Texas notary laws and professional standards.

67. Those defendants GMAC, ETS and their agents solicited coerced and influenced DOE 2 and HARRISON to engage in the aforementioned improper notarial acts when each defendant knew these acts to be improper notarial acts.

68. KRAL began experiencing financial difficulties, defaulted on the MLN and filed for chapter 7 bankruptcy protections under Chapter 7 on or about May 19, 2011.

69. On July 28, 2011 GMAC filed a Notice of Motion and Motion for Relief of the Automatic Stay regarding the KRAL PROPERTY.

70. GMAC went to great lengths to create the illusion of standing in the Motion for Relief offering the KRAL ASSIGNMENT, previously recorded in public land records in contemplation of the non-judicial foreclosure, as false declaration that supported the assertion that the Note and the Deed of Trust had been duly transferred to GMAC for valuable consideration and a fabricated blank endorsement. The Bankruptcy Court made no finding as to the propriety of the notarized documents. The Court entered an Order denying GMAC's motion for relief of stay on other grounds. That GMAC added attorney fees to KRAL's loan balance for attorneys and other fees related to the motion for relief.

15

FIRST AMENDED CLASS ACTION COMPLAINT
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

71. Thereafter, KRAL filed a Motion to Compel Chapter 7 Trustee's interest in mortgage related claims against GMAC. A Proposed Order approving a compromise between KRAL and the Chapter 7 Trustee is pending before the Court after the Chapter 7 Trustee elected not to oppose the motion to abandon. As such, KRAL has standing to pursue his claims against defendants.

72. It is defendants' business practice to rely on improperly notarized documents to establish a false "chain of title". Defendants avoid the expensive process of establishing the true "chain of title" of a typical securitized MLN which contemplates three true sales to create bankruptcy remoteness.

73. Given the institutional scope of GMAC's improper notarial practice, as alleged herein and further described in the CONSENT ORDER, it is impractical, repetitive and unnecessarily expensive for Plaintiffs and those similarly situated, to individually prove allegations of defendants' illegal business practices.

74. That Plaintiff KRAL intends pursue his individual claims outside of this Class Action and does not seek a determination of his claims for Wrongful Foreclosure or the legal effect of improper notarization of foreclosure documents affecting Plaintiff's property.

75. Rather, that Plaintiff seeks a determination of the scope of the systemic nature of the defendants' improper notarial practice, a determination of the validity of all acknowledgments published by defendants affecting Plaintiff's property, a determination of malice, a determination of restitution as appropriate and a determination of the remedial measures necessary to correct the public land records public land records for all.

76. Given the institutional scope of GMAC's improper notarial practice, as alleged herein and further described in the CONSENT ORDER, it is impractical, repetitive and unnecessarily

**16**

FIRST AMENDED CLASS ACTION COMPLAINT

*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

expensive for individual Plaintiffs and those similarly situated, to each prove allegations of

defendants illegal business practices.

## STRICKER FACTS

77. Plaintiffs incorporate these allegations into the claim below as though fully set forth herein.

78. On or about April 11, 2006, Plaintiff entered into a residential refinance loan with QUICKEN

LOANS, INC., (hereinafter referred to as "QUICKEN") for $260,000.00 secured by a deed of

trust on the condominium property commonly known as 2401 Chandler Avenue #5, Simi

Valley, California ("STRICKER PROPERTY").

79. That soon after origination, GMAC claimed that it was the authorized servicer of the

STRICKER MLN.  In reliance, STRICKER began sending payments to GMAC.  STRICKER

defaulted on the MLN in 2010.

80. That the STRICKER facts are a typical example of the implementation of defendants' business

practice where a defendants cause improperly acknowledged Substitution of Trustee and

Assignment of Deed of Trust to create the illusion that a Mortgage backed security trust actually

purchased the defaulted STRICKER MLN six years after the Mortgage backed security trust

was closed out.  Defendants then use the evidentiary presumption of those recorded documents

to facilitate a non-judicial foreclosure and as needed, to obtain relief of stay and to cause the

*dismissal* of a Plaintiff's wrongful foreclosure lawsuit.

81. So as to save costs its loan servicing business, defendants perpetrate the illusion that the sale of

the STRICKER MLN to a Mortgage backed security trust (US BANK, NATIONAL

17

**FIRST AMENDED CLASS ACTION COMPLAINT**
***KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.***

ASSOCIATION, a federally chartered bank of the United States and as Trustee, successor in interest to WACHOVIA BANK, N.A., as Trustee for MASTER ALTERNATIVE LOAN TRUST 2004-09, hereinafter, the "US BANK MBST") occurred as claimed in an improperly notarized ASSIGNMENT of DEED of TRUST.

82. Defendants continue to rely on improperly notarized documents to support the illusion of legitimate non-judicial foreclosure in California, including that MERS properly appointed ETS as substituted trustee to conduct a non-judicial foreclosure sale and that the STRICKER Note and Deed of Trust was transferred to US BANK MBST as claimed in the STRICKER ASSIGNMENT.

83. The use of improperly notarized documents is a crucial element to GMAC and other defendants' business model which results in substantial cost savings and increased profits. The improperly acknowledged foreclosure documents are prima facie evidence that the document is the duly authorized act of the entity named in the instrument (see Civil Code Section 1190) even when they are not. These improperly notarized documents continue to be used against STRICKER and other Plaintiffs.

84. On April 21, 2010, DONNA FITTON , as "ASSISTANT SECRETARY" of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") executed a Substitution of Trustee ("SOT") which purports to name Defendant ETS as the TRUSTEE to the STRICKER Deed of Trust. **EXHIBIT 3.** That the Substitution of Trustee includes an acknowledgement executed by DEE ORTEGA, a California Notary and recorded in the Ventura County public land record on April 22, 2010.

18

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

85. That FITTON, ORTEGA, ETS, MERS and DOE 3 were at all times herein acting as agents and at the direction of GMAC. That GMAC and defendants published this SOT document in contemplation of non-judicial foreclosure.

86. That the referenced STRICKER Substitution of Trustee is a fabricated and "photo-shopped" document, containing inaccuracies and misrepresentations, created to support the illusion that FITTON was a duly authorized agent for MERS, that MERS was the "present beneficiary" and therefore had standing to name ETS as new trustee to the STRICKER Deed of Trust.

87. MERS was at all times and agent and never the beneficiary of the subject MLN. That in consenting to the appointment of MERS as the nominee of her Deed of Trust with QUICKEN, STRICKER's consent extended only to the rules, articles and bylaws of MERS itself. That in executing the SOT, MERS exceeded the scope of its agency powers and authority.

88. That the STRICKER SOT was improperly acknowledged. That ORTEGA and DOE 3 have engaged in improper notarial acts: that DOE 3 improperly acted as a notary when she signed the STRICKER Substitution of Trustee, that ORTEGA was not duly commissioned, that this document was not actually executed by FITTON in the presence of ORTEGA, that ORTEGA did not properly acknowledge this document, that ORTEGA did willfully fail to keep her notary seal under her direct and exclusive control, ORTEGA did not duly record this transaction in a sequential journal or keep said journal in a safe and secure place, that this document was improperly acknowledged by DOE 3 in violation of California notary laws and professional standards.

19

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

89. Those defendants GMAC, ETS and their agents solicited coerced and influenced DOE 3 and ORTEGA to engage in the aforementioned improper notarial acts when each defendant knew these acts to be improper notarial acts.

90. On September 29, 2010, defendants caused an ASSIGNMENT OF DEED OF TRUST ("STRICKER ASSIGNMENT") to be executed. The ASSIGNMENT was executed by SANDY BROUGHTON as the alleged Assistant Secretary of MERS (**EXHIBIT #4**).

91. The STRICKER ASSIGNMENT purports to transfer all beneficial interest in the Deed of Trust together with "the money due and to become due thereon with interest and all rights accrued or to accrue under the instrument secured by the deed of trust".

92. That said "instrument" refers to the STRICKER NOTE. That the STRICKER NOTE which is the only instrument that evidences that STRICKER has an obligation for money due.

93. That the STRICKER ASSIGNMENT includes an acknowledgement executed by JOHN J. CASTAGNA a Pennsylvania notary and recorded in the Ventura County public land records on October 6, 2010.

94. That BROUGHTON, CASTAGNA, MERS, ETS and DOE 4 were at all times herein acting as agents and at the direction of GMAC. That GMAC and defendants published and recorded the STRICKER ASSIGNMENT document in contemplation of non judicial foreclosure.

95. Purely to save costs and chill borrower opposition, defendants perpetrate the illusion that the sale of STRICKER's MLN transferred from loan originator directly to US BANK MBST for value on September 29, 2010.

20

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

96. That the referenced STRICKER ASSIGNMENT is a fabricated and "photo-shopped" document, containing inaccuracies and misrepresentations, created to support the illusion that MERS had any authority to transfer the STRICKER NOTE to US BANK MBST, that the NOTE was actually transferred to US BANK MBST for "value received", that US BANK MBST was a new party in interest and that US BANK MBST therefore had standing to enforce the terms STRICKER MLN.

97. That the STRICKER ASSIGNMENT was improperly acknowledged. That CASTAGNA and DOE 4 have engaged in improper notarial acts: that DOE 4 improperly acted as a notary when she signed the STRICKER ASSIGNMENT, that CASTAGNA was not duly commissioned, that this document was not actually executed by BROUGHTON in the presence of CASTAGNA, that CASTAGNA did not properly acknowledge this document, that CASTAGNA did willfully fail to keep her notary seal under her direct and exclusive control, CASTAGNA did not duly record this transaction in a sequential journal or keep said journal in a safe and secure place, that this document was improperly acknowledged by DOE 4 in violation of California and Pennsylvania notary laws and professional standards.

98. Those defendants GMAC, ETS, MERS and their agents solicited coerced and influenced DOE 4 and CASTAGNA to engage in the aforementioned improper notarial acts when each defendant knew these acts to be improper notarial acts.

99. STRICKER filed for chapter 7 bankruptcy protections under Chapter 7 on or about August 13, 2010. On November 1, 2010 GMAC caused a Notice of Motion and Motion for Relief of the Automatic Stay to be filed in the name US BANK MBST regarding the STRICKER PROPERTY.

21

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

100.    GMAC went to great lengths to create the illusion of standing in the Motion for Relief offering the STRICKER ASSIGNMENT, previously recorded in public land records in contemplation of the non-judicial foreclosure, as false declaration that supported the assertion that the Note and the Deed of Trust had been duly transferred to US BANK MBST for valuable consideration and a copy of the Note with no endorsement.

101.    The Bankruptcy Court entered an Order granting US BANK's and GMAC's motion for relief of stay on other grounds but ordered that no foreclosure occur before February 16, 2011. That GMAC added attorney fees to STRICKER's loan balance for attorneys and other fees related to the motion for relief. Notwithstanding the Order, defendants conducted a foreclosure sale on February 2, 2011.

102.    Thereafter, STRICKER filed a Motion to Compel Chapter 7 Trustee's interest in mortgage related claims against defendants and US BANK MBST. The Chapter 7 has indicated to that STRICKER has standing to pursue her claims against defendants.

103.    That Plaintiff STRICKER filed a Superior Court lawsuit based on wrongful foreclosure. US BANK voluntarily rescinded the illegal sale before conducting another non-judicial foreclosure sale and filing an Unlawful Detainer case.

104.    STRICKER's individual state court claims for wrongful foreclosure were thereafter dismissed after the Superior Court took Judicial Notice of the aforementioned recorded foreclosure documents.

105.    **EXHIBIT 5** purports to be the second DEED UPON TRUSTEE SALE which grants the STRICKER property to the US BANK TRUST as the "Foreclosing Beneficiary" by way

FIRST AMENDED CLASS ACTION COMPLAINT
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

of a credit bid that renders the sale tax exempt under CA Taxation and Revenue Code,

Section 480.3.

106.    The DEED UPON TRUSTEE SALE is executed by LUIS RODRIGUEZ, Authorized

Officer of ETS.  That the DEED UPON TRUSTEE SALE includes an acknowledgement

executed by SALLY BELTRAN, California Notary, and Commission #1777085 and recorded

in the Venture County public land on July 1, 2011.

107.    That the referenced STRICKER DEED UPON TRUSTEE SALE is a fabricated and

"photo-shopped" document, containing inaccuracies and misrepresentations, created to

support the illusion that the non-judicial foreclosure sale was duly perfected and that US

TRUST MBST is the true party in interest and therefore standing to enforce the terms of the

STRICKER MLN and take title after a non-judicial foreclosure.

108.    That RODRIGUEZ, ETS, BELTRAN and GMAC each lacked proper authorization to

name US BANK MBST as "foreclosing beneficiary" or to convey title as the ASSIGNMENT

and SOT are each improperly acknowledged.

109.    That the STRICKER DEED UPON TRUSTEE SALE was improperly acknowledged.

That BELTRAN and DOE 5 have engaged in improper notarial acts in violation of California

notary laws and professional standards:  That BELTRAN and DOE 5 have engaged in

improper notarial acts:  that DOE 5 improperly acted as a notary when she signed the

STRICKER DEED UPON TRUSTEE SALE, that BELTRAN was not duly commissioned,

that this document was not actually executed by RODRIGUEZ in the presence of BELTRAN,

that BELTRAN did not properly acknowledge this document, that BELTRAN did willfully

fail to keep her notary seal under her direct and exclusive control, BELTRAN did not duly

record this transaction in a sequential journal or keep said journal in a safe and secure place,

23

**FIRST AMENDED CLASS ACTION COMPLAINT**

*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

that this document was improperly acknowledged by DOE 5 in violation of California notary

laws and professional standards.

110.     Those defendants GMAC and ETS and their agents solicited, coerced and influenced

DOE 5 and BELTRAN to engage in the aforementioned improper notarial acts when each

defendant knew these acts to be improper notarial acts.

111.     That STRICKER's bankruptcy case is pending as she pursues a claim for sanctions

against US BANK TRUST for the violation of the bankruptcy court's order not to sell the

property prior to the date specified by the bankruptcy judge.  STRICKER is currently a

defendant in an Unlawful Detainer case versus US BANK TRUST.

112.     That STRICKER does not seek to pursue her individual claims outside of this Class

Action nor does she seek a determination of her claims for Wrongful Foreclosure or the legal

effect of improper notarization of foreclosure documents affecting Plaintiff's property.

113.     Rather, that Plaintiff seeks a determination of the scope of the systemic nature of the

defendants' improper notarial practice, a determination of the validity of all acknowledgments

published by defendants affecting Plaintiff's property, a determination of malice, a

determination of restitution as appropriate and a determination of the remedial measures

necessary to correct the public land records public land records for all.

114.     It is defendants' business practice to rely on improperly notarized documents to establish

a false "chain of title".  Defendants avoid the expensive process of establishing the true "chain

of title" of a typical securitized MLN which contemplates three true sales to create bankruptcy

remoteness.

24

FIRST AMENDED CLASS ACTION COMPLAINT

*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

115.     That STRICKER's facts provide a prime example of how defendants continue to utilize the evidentiary presumption created through improperly notarization of documents published in contemplation of non-judicial foreclosure against the Class members in subsequent judicial matters

116.     Given the institutional-scope of GMAC's improper notarial practice, as alleged herein and further described in the CONSENT ORDER, it is impractical, repetitive and unnecessarily expensive for Plaintiffs and those similarly situated, to individually prove allegations of defendants' illegal business practices.

## CLASS ACTION ALLEGATIONS

117.     Plaintiffs incorporate the allegations above in this claim as though fully set forth herein.

118.     Plaintiffs seeks a determination of the scope of the systemic nature of the defendants' improper notarial practice, a determination of the validity of all acknowledgments published by defendants affecting Plaintiff's property, a determination of malice, a determination of restitution as appropriate, the appropriate civil penalties for as yet un-joined municipalities and a determination of the remedial measures necessary to correct the public land records public land records for all.

119.     Furthermore, Plaintiffs seeks a determination of the scope and damages for GMAC's failure to provide the notices to borrowers required by 15 USC 1641g of the Truth in Lending Act, following the execution of ASSIGNMENTS OF DEEDS OF TRUST that purport to transfer all beneficial interest in Deeds of Trusts and Notes to GMAC.

25

**FIRST AMENDED CLASS ACTION COMPLAINT**
***KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.***

120.    That it is impractical, repetitive and unnecessarily expensive for Plaintiff and others

similarly situated to prove these allegations individually, as the allegations complain of

systemic and institutional practices.  It is more efficient for these facts to be discovered and

the issues addressed in one class action case.  Individual Plaintiffs would then be free to

pursue individual claims for wrongful foreclosure or other claims, as appropriate.

121.    As GMAC and other defendants are engaged in the malicious practice of systemically

violating California and other state laws which forbid improper notarial acts, Class Plaintiffs

file this First Amended Complaint as private attorney generals seeking declaratory relief,

injunctive relief, restitution and damages.

122.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on

behalf of the themselves and on the following Classes:

(1) CLASS ONE:  All California real property owners whose property is allegedly
encumbered by a Deed of Trust securing a Note in default owned or serviced
by GMAC or its agents AND where GMAC or its agents has caused any
document to be recorded in the public land records after January 1, 2008
which required an acknowledgment under California law.

(2) CLASS TWO:  All California consumer borrowers who did not receive a 15
USC § 1641 Transfer Notice from GMAC within 30 days after GMAC became
the creditor of an MLN, as asserted in any ASSIGNMENT or other form of
transfer of an MLN.

(3) **Excluded from the Class are defendants, and their affiliates,
subsidiaries, current or former employees, officers, directors, agents,
representatives, and their family members. Stop friday**

123.    Plaintiffs do not know the exact size or identities of the members of the proposed

classes, since such information is in the exclusive control of the Defendants.

26

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

124.	As to Class One, mortgage industry statistics suggest that the national loan servicing market is currently estimated to be $7.846Trillion, of which California represents over 50%. The top 10 loan servicers control over 78% of the Loan Servicing Market.

125.	GMAC, the servicing arm of ALLY BANK is fifth among the largest servicers of residential mortgages in the United States, services a current portfolio of 2,439,510 residential mortgage loans worth $382.8Billion and holds a Market Share of approximately 5% nationally.

126.	GMAC was third among loan servicers based on defaulted loans with 22% of its loans in default in 2008. That number has declined as follows: 19.0% in 2009, 16.6% in 2010 and 7.8% in 2011. 1 in 283 homes in California are currently in some stage of non-judicial foreclosure; approximately 5% of those loans are serviced by GMAC.

127.	That the business practice complained of herein has allowed GMAC to steadily reduce its defaulted loan ratio by resorting to the use of improperly acknowledged foreclosure documents to increase the speed of wrongful foreclosures.

128.	ETS plays a crucial role in creating, executing, publishing recording and improperly notarizing thousands of foreclosure related documents. A conservative estimate suggests that the Class size could approach 30,000 to 40,000 defaulted borrowers.

129.	Therefore, the proposed Class is so numerous that joinder of all members is impracticable. Furthermore, it is impractical for individual Plaintiffs to individually attempt to discover the scope of GMAC and other defendants' systemic violations of state notarial laws and would require repetitive efforts.

130.	The Class Plaintiffs do not seem to litigate their individual wrongful foreclosure cases here. Instead the Plaintiffs seek appropriate restitution, judicial determinations injunctive and

27

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

equitable remedies given GMAC and other defendants' institutionalization of a business
practice that is based on the intentional solicitation, coercing and influence on individuals to
commit improper notarial acts.

131.    Under these circumstances, a class action is superior to other methods for the fast and
efficient adjudication of this controversy and to avoid the risk of disparate and inconsistent
rulings in different courts. A class action regarding the issues in this case does not create any
problems of manageability.

132.    A pattern and practice of conduct by defendants exist in this case wherein common
questions of fact and law predominate over any questions affecting only individual members
including, but not limited to the following:

a.   Whether GMAC and other defendants have engaged in the *unlawful and systemic
practice* of soliciting, coercing or influencing the performance of improper notarial
acts, including the creation, execution and publication of improper acknowledgments,
in violation of <u>CA Government Code Section 8225</u> and other state laws;

b.   Whether an out of state notarial acknowledgment executed in violation of other state's
notary laws, is sufficient for purposes of recording in California under <u>Civil Code
Section 1189</u>;

c.   Whether the alleged creation, institution management and maintenance of the practice
of systemically violating state notarial laws for profit rises to the level of malice or a
reckless disregard of the rights of the Class members;

d.   Whether the a systemic practice of soliciting, coercing or influencing the performance
of improper notarial acts so as to reduce the true cost of servicing defaulted loans
constitutes *unfair competition*;

28

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

e.  Whether members of the public are likely deceived by the systemic practice of soliciting, coercing or influencing the performance of improper notarial acts including the recording of improper acknowledgments in the public land records;

f.  Whether GMAC provided timely Notice to borrowers as required by **15 USC 1641g** following the alleged transfers for value of Notes and Deeds of Trust to GMAC or other alleged assignees;

g.  The determination that any improperly acknowledged documents shall not constitute *prima facie evidence* that said documents are the duly authorized act of the entity named in the instrument.

h.  The determination of the appropriate seek appropriate restitution, judicial determinations injunctive and equitable remedies;

i.  The determination of a method for correcting and\or removing and\or purging improperly acknowledged documents from the public land records; and providing proper notice to Class members, the affected public, bankruptcy courts, unlawful detainer courts, Superior Courts, Federal District Courts and title companies of the judicial determination as to each document;

j.  The determination of the amount of restitution, costs and disgorgement appropriate for defendants' violation of Cal B&P §17200;

k.  The determination of the amount of cost savings benefiting defendants from the anti-trust practices violating Cal B&P §17200;

l.  Common questions of fact and law *do not include* the determination of the validly, accuracy or veracity of the *content* of foreclosure documents recorded in the public land records.

29

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

133.    This is a matter of the important public policy because the fair treatment of distressed borrowers and respect for the integrity of public land records is a county, state and national policy priority.

134.    The improper notarial claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

135.    The individually named Plaintiffs will fairly and adequately protect the interests of the Class. They are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation.

136.    The putative class action meets the requirements of Federal Rules of Civil Procedure 23(a), 23(b) and/or 23(c).

137.    The nature of notice to the proposed class required and/or contemplated is the best practicable method possible and contemplated the defendant's list when disclosed would most likely be media outlets, mailing to the property addresses affected by the filed foreclosures and internet and other general notices are contemplated to ensure notice.

138.    Defendants have acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

# CLAIMS

## FIRST COUNT
### Unlawful, Unfair and Deceptive Business Practices
### (Against All defendants and Does 1 through 10)

139.    Plaintiffs incorporate in this claim all of the allegations above as though set forth in full herein.

140.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

141.    That California's Unfair Competition Law (UCL) defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. Cal Bus & Prof Code §17200 et seq.

142.    That Defendants' standard operating procedure to solicit, coerce and influence improper notarial acts, knowing those acts to be improper, in furtherance of a broader scheme to process tens of thousands of California foreclosures at the lowest possible cost by systemically misrepresenting standing and the chain of title of securitized MLNs.

143.    That said broader scheme includes the crucial practice of improperly acknowledging and recording *after-the-fact, as-needed* Assignments, Substitutions of Trustee and Deeds upon Trustee Sale.

144.    Defendants file other foreclosure documents such as endorsements, allonges, Notices of Defaults and affidavits so as to create the *illusion* of valid mortgage transfers and standing in tens of thousands of foreclosure matters, bankruptcy cases and civil matters. To the extent those documents are not improperly acknowledged, they are beyond the scope of this case but reserved in Plaintiffs' individual wrongful foreclosure cases.

31

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

145.    Plaintiffs' claims are by no means speculative but are supported by the findings of the Office of Currency Comptroller, the Federal Reserve, the San Francisco assessor-recorder's office, other independent governmental agencies, media reports, whistleblowers and courts.

146.    As stated in the Consent Order entered into between GMAC and the United States Department of Treasury's Office of the Comptroller of Currency (the "OCC") on April 13, 2011, the Comptroller found that GMAC

"(b) filed or caused to be filed in state and federal courts, <u>or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary</u>"

147.    That while the Consent Order provides for an agreement wherein GMAC agrees to take remedial measures to ensure that it implement procedures to remediate its unsafe and unsound banking practices, the Order does not limit Plaintiffs' right to a private cause of action for equitable relief including a purging of the public land records.

148.    That the "independent foreclosure review" included in the Consent Order and ending in July 2012 is also a wholly inadequate device. It only applies to foreclosure practices from 2009 and 2010 and provides no device to cleanse the public record. It requires that unsophisticated homeowners make a showing of "financial injury" but subject to no defined standard of review. The allegedly "independent" auditors are chosen, controlled and influence by defendants notwithstanding assertions to the contrary.

149.    That the Consent Order does not constitute the Plaintiffs' sole remedy, especially for borrowers who have or are about to lose their homes. That the Consent Order does not address the defendants' criminal activity nor does it provide any equitable remedy to cleanse the pollution of California public land records.

32

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

150.    Whether Plaintiffs have suffered injury will vary greatly depending on individual circumstances and what type of document has been improperly acknowledged. Whether a Trustee Deed upon Sale versus a Substitution of Trustee or an Assignment of Deed of Trust is improperly acknowledged, the damage to Class Members may range for minimal to extreme. However, it is undeniable that the mass recording of improperly acknowledged documents injures the integrity of the public recording system.

151.    Here, Plaintiffs do not seek damages for individual financial injury but equitable relief restitution for defendants' widespread pollution of public land records with improperly acknowledged foreclosure documents.

152.    The Office of the Comptroller of Currency has no jurisdiction to amend California criminal, California Notary Laws or in any way inhibit Plaintiffs' right to pursue this private cause of action on behalf of affected citizens. Plaintiffs reserve the right to pursue claims based on the effect of improperly notarized documents but those issues need not be decided in this case.

## THE INSTITUTIONALIZATION OF THE IMPROPER NOTARY PRACTICE DEMONSTRATES MALICE AND A RECKLESS DISREGARD FOR THE RIGHTS OF PLAINTIFFS AND THE INTEGRITY OF THE PUBLIC LAND RECORDS

153.    That by institutionalizing an improper notarial practice in the quest for profit, Defendants has demonstrated its actual malice towards Plaintiffs and those similarly situated.

154.    Those defendants are motivated by greed, contempt, hatred and ill will toward this class of Plaintiffs. By institutionalizing this business practice, defendants have demonstrated herein

FIRST AMENDED CLASS ACTION COMPLAINT
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

that it lacks any reasonable belief in the truth of matters asserted in tens of thousands of acknowledgements attached to tens of thousands of false and misleading foreclosure documents.

155.     Defendants have acted in reckless disregard of the rights of Plaintiffs, similarly situated property owners, citizens, taxpayers and private investors in mortgage backed securities.

156.     The improper notarial practice is designed to *enhance the illusion* created by fabricated foreclosure documents, many which purport to transfer the rights to enforce the terms of tens of thousands of non-negotiable promissory notes (the "MLNs").

157.     The improper notarial practice is designed to *enhance* defendants' ability to play "hide-and-seek" with class Plaintiffs, debtors, judges, bankruptcy trustees, investors and other affected parties. That the Pooling and Servicing Agreements of every private Mortgage Backed Security Trust ("MBST") serviced by Defendants contemplates no less than THREE true sales of each MLN from originator, to sponsor, to depositor and finally to the designated Trustee of the MBST (the "Chain of Title").

158.     That the cost of properly transferring a single MLN to a MBST through the contemplated "Chain of Title" is approximately $1,500.00. That a typical MBST contemplates a pool of 5,000 MLNs. To save money, Defendants refuse to produce or lack access to the evidence of the actual transfers to MBSTs. The "technology" cost, processing and legal fees associated with proving standing of the true "chain of title" is cost prohibitive given defendants' volume of bankruptcy and litigation matters. Defendants misrepresent the "chain of title" through the use of Assignments and other foreclosure documents by creating, executing and improperly acknowledging fabricated "photo-shopped" foreclosure documents.

**34**

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

159.    That defendants' network of attorneys is financially rewarded based on the speed in which the attorneys complete non-judicial foreclosures, bankruptcy and litigation matters. Said network attorneys incur a performance penalty based on the amount of correspondence with defendants and the amount of evidence the attorney's require "prove-up" a matter. Defendants impose "technology fees" through a complex web based interface platform for correspondence, access and copies of the documentary evidence required in a matter. Such a practice relies on the speed and deception, the implementation of which demonstrates malice and a reckless disregard of Plaintiffs' rights.

160.    Most egregiously, the network attorneys utilize the business practice to obtain attorney fees awards from by the bankruptcy judges ranging from $600-$1000 for each successful motion for relief of stay and allowed proofs of claim. Said awards allow GMAC to pad its claims and add fees to the loan balances arrearage claims of class members.

161.    Those defendants' manufactured and improperly acknowledged evidence is so persuasive that 95% of motions for relief of stay are granted without opposition and over 95% of GMAC's Proofs of Claims are allowed.

162.    That the systemic use of the fabricated evidence has a chilling effect on class debtors and their attorneys. Said business practice discourages bankruptcy players from offering objections or from questioning the validity of GMAC's false claims based on standing.

163.    That the improper acknowledgement of these manufactured documents is *the* crucial element in creating the illusion of the legitimacy of the foreclosure documents.

35

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

164.    Those defendants employ the improper notary practice to *support* the broader business model of manufacturing and publishing foreclosure documents *as needed* and without regard to the truth.

## DEFENDANTS' IMPROPER NOTARZATION PRACTICE IS UNLAWFUL

165.    Those defendants have knowingly engaged in the systemic solicitation, coercion and influence of individuals to commit improper notarial acts related to the execution of acknowledgments of documents created in contemplation in non-judicial foreclosure in violation of CA Government Code Section 8225 and other state laws.

166.    Those defendants know are that said notarial acts are improper, deceptive and fraudulent but solicit, coerce and influence such improper acts as part of a broader business model that also incorporates the creation and publication of fabricated, misleading inaccurate and fraudulent foreclosure documents in various incarnations described herein.

167.    Defendants manufacture and publish chain of title transfer evidence and other foreclosure documents on demand so as to falsely prove standing in thousands of matters.

168.    That the utilization of this broader business model is driven by defendants' relentless pursuit of cost savings.  The broader business model results in widespread deception of Plaintiffs, borrowers, other creditors, bankruptcy courts, bankruptcy trustees, title companies, Federal courts, Superior courts, Unlawful Detainer courts and mortgage trust investors.

169.    That the effective utilization of the broader model begins with the offensive practice of institutionalizing a culture and practice of improper acknowledgment of those foreclosure documents with are then published in land records in contemplation of non-judicial foreclosure.

36

**FIRST AMENDED CLASS ACTION COMPLAINT**
***KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.***

170.     Beyond their contemplated use within the non-judicial foreclosure process, the

improper acknowledgements attached to foreclosure documents constitute *prima facie*

*evidence* that the document is the duly authorized act of the entity named in the instrument.

171.     That where a Plaintiff files bankruptcy or attempt to litigate issues related to debt,

foreclosure or title, defendants assert the improperly acknowledged documents as prima facie

evidence that the subject document is duly authorized.

172.     That in reality, no such presumption should exist.  While the improperly notarized

documents are published in contemplation of non-judicial foreclosure, but they have a direct,

negative and burdensome effect Plaintiff's success in bankruptcy and litigation when they are

subsequently used in a deceptive manner.

173.     That the practice of soliciting, coercing and influencing improper notarial acts is the

equally offensive as defendants' broader business model of creating Assignments and other

foreclosure documents that are inaccurate, fraudulent, not based on personal knowledge and

not what the purport to be.  But the improper notarial practice is much more egregious as it is

based on the corruption of the Notary office.


## DEFENDANTS' IMPROPER NOTARZATION PRACTICE IS UNFAIR

174.     That the improper notarization practice is implemented for the ultimate purpose of

maximizing Defendants' profit through the reduction of due diligence and foreclosure

processing costs.

175.     Central to this *unfair* practice is the creation, execution and publication of tens of

thousands of improperly acknowledged foreclosure related documents in the public land

records since 2008.  These illegal short cuts result in substantial cost savings to GMAC.

37

**FIRST AMENDED CLASS ACTION COMPLAINT**
***KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.***

176.    The Relevant Market is defined as residential loan servicing.  The national loan servicing market is currently estimated to be $7.846Trillion of which California represents over 50%.  Defendant GMAC is in the top five among the largest servicers of residential mortgages in the United States and California.

177.    GMAC is fifth among the largest servicers of residential mortgages in the United States, services a current portfolio of 2,439,510 residential mortgage loans worth $382.8Billion and holds a Market Share of approximately 5% in California.

178.    That the business practice complained of herein has allowed GMAC to steadily reduce its defaulted loan ratio from 22% in 2008 to 7.8% in 2011, by resorting to the use of improperly acknowledged and deceptive foreclosure documents to reduce costs and increase the speed of non-judicial foreclosures in California.

179.    That Defendants realizes a tangible, measurable cost benefit from this improper notary practice which results in a competitive advantage, especially over *default* loan servicing companies in the California Market who do not engage in soliciting, coercing and influencing improper notarial acts.

180.    That the improper notary practice of facilitates quick and inexpensive non-judicial foreclosure of California real property without any regard for the law or the rights of the affected Class members.  The Defendants improper notary practices cause increased productivity, lower processing costs, lower litigation expenses, lower attorney fees and increased foreclosure related revenue.  The presumptive evidentiary value of these improperly acknowledged documents has a chilling effect on borrowers' objections, litigation and opposition which results in greater cost savings for defendants.

38

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

181.    One court has said that an unfair business practice is one that "offends an established

public policy or when the practice is immoral, unethical, oppressive, unscrupulous or

substantially injurious to consumers" (People *v. Casa Blanca Convalescent Homes, Inc.*

*(1984) 159 Cal. App. 3d 509, 530 [206 Cal. Rptr. 164, 53 A.L.R.4th 661]*). While no clear test

to determine what constitutes *unfair* business practice has been established in California, the

improper notary practice is unfair by this definition.

182.    That another court has stated that to determine whether a business practice is unfair,

courts must "'weigh the utility of the defendant's conduct against the gravity of the harm to

the alleged victim . . . .' "(State *Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.*

*App. 4th 1093, 1104 [53 Cal. Rptr. 2d 229].*) The improper notary practice is unfair by this

definition.

183.    The only utility for defendants is its own cost savings advantage over competitors.

Rather than treat the residential foreclosure process with the utmost care and strict liability,

Defendants maliciously utilizes the improper notary practice in combination with the

widespread use of false statements, misrepresentations and deception just to save money.

184.    That since the foreclosure crisis began in 2008, this institutional business practice of

violating the Notary laws and professional standards has lead to increased profits through the

elimination of the otherwise time consuming and expensive process of ensuring proper

acknowledgement of foreclosure documents.

185.    That in the context of this national mortgage crisis, a massive taxpayer bailout of

defendant GMAC and the general devastation caused by home foreclosures, the alleged

business practice is immoral, unethical, oppressive, unscrupulous *and* substantially injurious

39

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

1   to *all* consumers.  That whether a consumer is a homeowner in financial distress or not, there

2   is a common interest in preserving the integrity of our public land records and court system.

3

4

5                 **DEFENDANTS' IMPROPER NOTARZATION PRACTICE IS DECEPTIVE**

6   186.     Central to this *deceptive* business practice is the creation, execution and publication of

7   tens of thousands of improperly acknowledged foreclosure related documents in the public

8   land records since 2008.

9

10  187.     In defense **15 USC 1641g** claims, Plaintiff fully expects GMAC to *deny* that the

11  KRAL ASSIGNMENT and others like it are not what they purport to be: *transfers for value*

12  *of Notes and Deeds of Trust to GMAC directly from the loan originator.*

13  188.     The improper notarization of these presumptively authentic foreclosure documents are

14  the centerpiece of GMAC's deceptive business practice.  Once improperly notarized, GMAC

15  uses these ASSIGNMENTS against the interests of homeowners in financial distress in a

16  variety of contexts not limited to non-judicial foreclosure and including bankruptcy matters

17

18  and wrongful foreclosure cases.

19  189.     Said practice creates *prima facie evidence* that the ASSIGNMENTS are duly

20  authorized acts of the entity named in the instrument, when in reality, they are not. (see Civil

21  Code Section 1190).

22

23  190.     That the improper notary practice of soliciting, coercing and influencing improper

24  notarial acts is *deceptive* by definition but not conducted in isolation.  While no longer the

25  subject of this lawsuit, the false and misleading *content* contained in the foreclosure

26  documents is equally oppressive and demonstrative of defendants' blatant disregard for the

27  rights of homeowners in financial distress.

28

                                    **40**

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

191.    Notwithstanding that these and other foreclosure documents and contain false assertions as to ownership of notes, transfers of notes, transfers of deeds of trusts and transfers of the power to enforce the terms of California MLNs, only the improper notary practice is the subject of this lawsuit.

192.    The practice of creating improper acknowledgments restricts borrowers from challenging the veracity of a document's assertions and the validity of any non-judicial foreclosure sale.

193.    The *illusionary* certificates of acknowledgement attached to an executed instrument, such as a Substitution of Trustee, Assignment or Deed Upon Trustee Deed, is *prima facie evidence* that the document is the duly authorized act of the entity named in the instrument. The deceptive effect of improper acknowledgement cascades throughout bankruptcy and civil cases, in addition to non-judicial foreclosures.

194.    Therefore, even where the party who executes a document lacks personal knowledge or any agency relationship with the party entitled to enforce the terms of an MLN, an *illusionary* acknowledgement wrongfully obstructs borrowers from making legitimate challenges to the validity of the foreclosure document.

195.    That defendants have processed tens of thousands of non-judicial foreclosure proceedings based on the purported validity of improperly notarized documents in addition to failing to ensure that either the promissory note of deed of trust were properly endorsed or assigned or in possession of the appropriate party at the appropriate time.

196.    That while the content and attestations contained in the foreclosure documents are themselves false, misleading and deceptive, it is the systemic use of these documents and

**41**

**FIRST AMENDED CLASS ACTION COMPLAINT**
***KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.***

defendants' solicitation, coercion and influence of individuals to commit improper notarial

acts that is the subject of this action.

197.    That the public, including Plaintiffs, Courts, bankruptcy trustees, new creditors, credit

reporting agencies, potential buyers and title insurance companies are likely to be *deceived* by

the improperly acknowledged foreclosure documents filed in the public land records,

notwithstanding the truth of the matters asserted in those documents.

198.    That defendants have generated tens of millions of dollars in revenue through

premature or unjustified foreclosure fees, attorney fees, notary fees, insurance fees, Chapter

13 trustee distributions, broker service fees, late fees and servicing fees charged to borrowers.

199.    Those defendants have wrongfully foreclosed and prevailed in bankruptcy motions,

Unlawful Detainer cases, Superior Court cases and Federal cases by offering improperly

notarized foreclosure documents as self-authenticating and presumptively valid evidence.

200.    That until the public record is corrected, there is no reason to expect that these unjust

results accruing from defendants' improper notarization practice will ever cease.

201.    As a proximate result of defendants' conduct, Plaintiffs and the public at large have

suffered injury in fact and will continue to suffer until this matter is resolved.   Said injuries

vary from wrongful foreclosure to a degradation of the integrity of the public land records.

202.    The improperly acknowledged documents are used against Plaintiffs' interest to

support the illusion of valid transfers of rights in MLNs including the right to foreclose, to

name trustees of deeds of trusts and to grant title in real property to buyers at non-judicial

foreclosure sales.  The use of said documents has caused Plaintiffs collectively to suffer

actual injury, incur improper loan servicing fees, increased loan charges, a loss of personal

rights, and loss of property rights, decreased property values, lost costs, lost time, and

42

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

increased attorney fees combating the effect and cure the widespread publication of

improperly acknowledged documents.

203.    The improperly acknowledged documents, while published in contemplation of non-

judicial foreclosure, are used against Plaintiffs' interests in bankruptcy cases, federal court

cases, civil court cases and unlawful detainer cases to support the illusion of valid transfers of

rights and the *prima facie* evidence of the validity of said documents.

204.    The improperly acknowledged documents are used with such frequency and

abundance so as to degrade the integrity of the public land records system, the office of

notaries and our court system. As such, said practice is causing irreparable injury to members

of the general public.


## SECOND COUNT
### Systemic 15 USC 1641g Notice Violations
### (Defendant GMAC and Does 1 through 10)

205.    Plaintiffs incorporate the allegations above in this claim as though fully set forth

herein.

206.    Plaintiffs are informed and believes and alleges thereon that GMAC has engaged in a

pattern and practice of violating 15 USC §1641g by failing to provide the required Transfer

Notice to class members, including KRAL, within 30 days of becoming the creditor of

thousands of MLNs.

207.    Plaintiff KRAL brings this claim on their own behalf and on behalf of each member of

the Class described above.

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

208.     That, notwithstanding his Chapter 7 bankruptcy filing, KRAL has standing to bring this FIRST cause of action. That each cause of action in this First Amended Complaint is not property of the estate; KRAL has filed a Motion to Compel Abandonment of any interest by the Chapter 7 Trustee which will resolve this issue by way of Bankruptcy Court Order.

209.     That pursuant to the plain language contained in the KRAL ASSIGNMENT and other class assignments, GMAC is *estopped* from denying that it is a "creditor" as defined under TILA and Federal Register rules and regulations.

210.     That following execution of any class ASSIGNMENT, purporting to transfer MLNs to GMAC for value, GMAC became the creditor and owner of the MLN.

211.     As a new creditor of class MLNs, GMAC was required to notify the Plaintiffs in writing of the transfer of the MLN within 30 days of said transfer to GMAC.

212.     That pursuant to the plain language contained in each class ASSIGNMENT, the class MLNs were not transferred for administrative convenience as contemplated in 15 USC §1641 to GMAC in the role as a servicer.

213.     That each ASSIGNMENT purports to be a direct transfer for the Note and Deed of Trust from the loan originator's agent, MERS to GMAC and *for value received* and as the direct successor of the loan originator.

214.     That where GMAC claims it is just the servicer of the KRAL and other CLASS MLNs, that the CLASS ASSIGNMENTS and the representations contained therein are asserted against the interests of Plaintiff Class in the context of non-judicial foreclosure, bankruptcy and civil matters. That the purpose of this practice is to intentionally bypass the revelation of the identity of the true beneficiary of each MLN. Said practice eliminates the

**44**

**FIRST AMENDED CLASS ACTION COMPLAINT**
***KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.***

need, necessity and cost to GMAC of establishing *how* a given MLN is transferred to a true

beneficiary, typically a mortgage backed security trust or government sponsored enterprise.

215.     That GMAC could not be a loan servicer of a MLN on behalf of a mortgage backed

security trust or government sponsored enterprise until that mortgage backed security trust or

government sponsored enterprise actually acquires rights in an MLN.

216.     That the 15 USC §1641 notification is required to include:

i)   The identity, address, telephone number of the new creditor;

ii)  The date of transfer;

iii) How to reach an agent or party having authority to act on behalf of the new creditor;

iv)  The location of the place where transfer of ownership of the debt is recorded; and

v)   Any other relevant information regarding the new creditor within 30 days of the transfer.

217.     That GMAC has failed provide said TILA notice to Plaintiffs and those similarly

situated, within 30 days of each MLN transfer claimed in thousands of improperly notarized

ASSIGNMENTS recorded in the public land records and used against the interests of

Plaintiffs in contemplation of non-judicial foreclosure.

218.     That pursuant to the plain language utilized, the representations contained in each

ASSIGNMENT establish that GMAC is a creditor and new owner of the MLN pursuant to

the language and policy of 15 USC §1641g.

219.     That pursuant to the plain language and express the representations contained in each

ASSIGNMENT, a reasonable person would conclude that GMAC is a creditor effective on

the specified date of execution of each ASSIGNMENT.

**45**

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

220.     That pursuant to the plain language utilized, the representations contained in each ASSIGNMENT constitutes an admission that a transfer of the rights to enforce the terms of the MLN to GMAC has occurred on the specified date.

221.     Notwithstanding their content, because these documents appear to be properly acknowledged, the documents are presumed by the public, citizens, title companies, judges, trustees, buyers, attorneys and borrowers to be *prima facie evidence* that the document is the duly authorized act of the entity named in the instrument (see Civil Code Section 1190).

222.     That GMAC is estopped from denying that is became a Creditor pursuant to 15 USC §1641g on the date each ASSIGNMENT was executed by a GMAC's MERS agent, notarized and publically recorded.

223.     That class members' TILA rights are violated and the policy of 15 USC §1641g circumvented as a result of GMAC's business practices.  That said information as to the identity of the true beneficiary of Class member's MLNs has heightened value for a homeowner in financial distress or facing foreclosure.

224.     That as a result of GMAC's systemic violations of 15 USC §1641g, KRAL and other similarly situated class members due process rights for notice and opportunity to be heard were violated: each of them has incurred attorney's fees and expenses in attempting discover the identity of the true creditor. the validity of GMAC's status as a creditor and\or loan servicer.

225.     Plaintiff is informed and believes and alleges thereon that GMAC's conduct was part of a pattern and practice resulting in the same injury to a multitude of similarly situated (former) homeowners.

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

226.     That each of these class members is facing imminent foreclosure and desires to

negotiate in good faith and receive fair consideration under various government loan

modification programs, including the Home Affordable Mortgage Program.

227.     That the withholding of the TILA transfer notice has caused additional actual damages

in the form of emotional suffering for class members already under extreme stress.

228.     Furthermore, that the knowledge as to the true identity and contact information of the

true creditor of a class member's MLN is elusive in the current environment of mortgage

securitization.  As such, this information is has tangible and provable financial value to a

homeowner facing financial distress.  A loan modification has measurable real financial

value.  Therefore, the CHANCE to successfully negotiate a loan modification has monetary

value.

229.     That by withholding information required by TILA regarding the identity of the new

MLN creditor, GMAC has exasperated the hardships of class members and caused actual

financial damages.

230.     That a showing of actual damages by KRAL or any class member is not a required

element under 15 USC §1641g.  That notwithstanding a showing of actual damages, TILA

allows for statutory damages and attorney fees for GMAC's violations.

231.     Those Plaintiffs have been damaged in a similar amount to be proven at trial,

including but not limited to actual damages resulting from said violation, statutory damages

of $4,000.00 per homeowner, attorney fees and costs.

232.     That 15 USC §1641g contemplates a limitation of $500,000.00 in class action matters.

**47**

**FIRST AMENDED CLASS ACTION COMPLAINT**

*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

233.    That given the size of the class and the availability of statutory damages in this cause

of action, a showing of actual damages will not likely be necessary to reach the class action

damage limit.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial

as to all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as follows:

a.  That the Court determine that this action may be maintained as a class action under Rule

23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiffs KRAL and

STRICKER be certified as class representatives for CLASS ONE, that Plaintiff KRAL be

certified as  class representative for CLASS TWO and that Plaintiffs' counsel be

appointed as counsel for each Class;

b.  A determination whether defendant's improper notarial business practices, related actions,

failures to act, representations and assertions constitute violations of California Business

& Professions Code §17200;

c.  An order compelling defendants, their successors, agents, representatives, employees, and

all persons who act in concert with them be permanently enjoined from committing any

acts of unfair competition, related to the filing of improperly acknowledged documents in

the public land records in violations of § 17200, including, but not limited to, the

violations alleged herein.

**48**

FIRST AMENDED CLASS ACTION COMPLAINT
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

d. An determination of the scope of the nature and seriousness of the alleged misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities and net worth.

e. A determination of as to which the scope of the nature and seriousness of the alleged misconduct, the number of violations, the specific identification of each violation, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities and net worth.

f. A determination of the amount of cost savings benefiting defendants from the deceptive practices violating Cal B&P §17200 in this context;

g. A determination of the amount of restitution and disgorgement of profits appropriate for violations of Cal B&P §17200 in this context;

h. For an order requiring defendants to record in the public land records a "Notice of Improperly Acknowledged Document", or such similar Notice as the Court deems appropriate, each of which shall correspond and identify each specific improperly acknowledged document previously recorded in public land records.

i. For an order requiring defendants to record in the docket or claims register of each court's official record, a "Notice of Improperly Acknowledged Document", or such similar Notice as the Court deems appropriate, each of which shall correspond and identify each specific improperly acknowledged document previously filed as an exhibit or referenced within any pleading by defendants' in any court's docket or claims register;

**49**

FIRST AMENDED CLASS ACTION COMPLAINT
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

j. Only where this matter is joined by the California Attorney General, any California County District Attorney or City Attorney, a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each act of recording of an improperly acknowledged document or soliciting, coercing or influencing an improper notarial act;

k. A determination whether defendant GMAC has engaged in systemic violations of 15 USC §1641g;

l. A determination of actual damages for GMAC's violations of 15 USC §1641g;

m. Statutory damages of $4,000.00 per Class Two Members for GMAC's violations of 15 USC §1641g;

n. That Plaintiff and the Class recover their costs of suit, including attorney's fees as provided by law; and

o. For such other and further relief, equitable or otherwise, as is just under the circumstances.

Dated: April 19, 2012                    LAW OFFICES OF J.ARTHUR ROBERTS

_____
JOSEPH ARTHUR ROBERTS, ESQ.
Attorney for Plaintiffs
and all others similarly situated

50

**FIRST AMENDED CLASS ACTION COMPLAINT**
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

51

**FIRST AMENDED CLASS ACTION COMPLAINT**

*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

Case 6:11-bk-26579-SC   Doc 11-1   Filed 06/24/11   Entered 06/24/11 15:36:31   Desc
Exhibit (s) 1 - 4   Page 28 of 34

DOC # 2011-0019786
01/14/2011 09:47A Fee:18.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Requested and Prepared by:
ETS Services, LLC

When Recorded Mail To:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| / | | | / | | | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | T: | | CTY | UNI | 065 |

Loan No.:
TS NO: GM-274747-V

100796536

ASSIGNMENT OF DEED OF TRUST

T
065

18

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

GMAC MORTGAGE, LLC

all beneficial interest under that certain Deed of Trust dated: 11/5/2009 executed by KENNETH L
KRAL AND SHIRLEY YVONNE KRAL, HUSBAND AND WIFE ASCOMMUNITY PROPERTY WITH
RIGHT OF SURVIVORSHIP, as Trustor(s), to FIRST AMERICAN TITLE, as Trustee, and recorded
as Instrument No. 2009-0612411, on 11/25/2009, in Book XX, Page XX  of Official Records, in the
office of the County Recorder of Riverside County, California together with the Promissory Note
secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE:   01-10-2011

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

Franco Torres   Assist. Sec.

State of Texas                         ) SS.
County of Dallas                       )

On 1/10/11 before me, Amber Barham                    Notary Public, personally
appeared      Franco Torres                      who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of  Texas            that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature   Amber D. Barham   (Seal)

AMBER D. BARHAM
Notary Public
STATE OF TEXAS
My Comm. Exp. Sep. 05, 2011

EXHIBIT 2
41

Description: Riverside,CA Document-Year.DocID 2011.19786 Page: 1 of 1
Order: 100796536 Comment:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

52

FIRST AMENDED CLASS ACTION COMPLAINT

*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

DOC # 2011-0039198
01/25/2011 01:43P Fee:18.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY:

5th
100796536

LSI TITLE COMPANY, INC.

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |
| M | A | L | 466 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
|  |  |  |  |  |  | T: |  | CTY | UNI | 065 |

18

TS NO
LOAN

## SUBSTITUTION OF TRUSTEE

T
065

WHEREAS, KENNETH L KRAL AND SHIRLEY YVONNE KRAL, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP was the original Trustor, FIRST AMERICAN TITLE was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERIGROUP MORTGAGE CORPORATION A DIVISION OF MORTGAGE INVESTORS CORPORATION A OHIO CORPORATION was the original Beneficiary under that certain Deed of Trust dated 11/5/2009 and recorded on 11/25/2009 as Instrument No. 2009-0612411, in Book XX, Page XX of Official Records of Riverside County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned desires to substitute Executive Trustee Services, LLC dba ETS Services, LLC, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated : 01-12-11

GMAC MORTGAGE, LLC

_Umber Gomez - Authorized Officer_

State of Texas       } ss.
County of Dallas    }

On 1/12/11 before me, Ginger Harrison Notary Public, personally appeared Umber Gomez who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under penalty of perjury under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Ginger Ann_ (Seal)

Ginger Leeann Harrison
Notary Public
State of Texas
Comm. Exp. 08-04-13

EXHIBIT 2
42

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

53

**FIRST AMENDED CLASS ACTION COMPLAINT**

*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

Branch :O14,User :3062

Station ID :BYI6

**requested by title court**

**RECORDING REQUESTED BY:**

**LSI TITLE COMPANY, INC.**

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

TS NO : GM-243917-C
LOAN NO : 0359042787

SPACE ABOVE THIS LINE FOR RECORDER'S USE

20100422-00060175-0  1/1
Ventura County Clerk and Recorder
James B Becker, Assistant
04/22/2010 08:00:00 AM
408784 $18.00 MA

## SUBSTITUTION OF TRUSTEE

WHEREAS, LISA A. STRICKER, A SINGLE WOMAN was the original Trustor, **LSI, A FIDELITY NATIONAL FINANCIAL COMPANY** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR QUICKEN LOANS INC., A CORPORATION** was the original Beneficiary under that certain Deed of Trust dated 2/27/2004 and recorded on 3/3/2004 as Instrument No. **20040303-0054667**, in Book , Page  of Official Records of Ventura County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**Dated : 4/21/2010**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

DONNA FITTON, ASSISTANT SECRETARY

State of California} ss.
County of Los Angeles }

On 4/21/2010 before me, Dee C. Ortega Notary Public, personally appeared Donna Fitton who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature _____  /Seal:
Dee C. Ortega

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

VENTURA, CA  Document:ST 2010.60175

Page:1 of 1

Printed on:4/16/2012 3:16 PM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 4**

54

FIRST AMENDED CLASS ACTION COMPLAINT
*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

Branch :O14,User :3062

Station ID :BYI6

Recording Requested

RECORDED AS REQUESTED BY
FIDELITY NATIONAL TITLE COMPANY
AS AN ACCOMMODATION ONLY

RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc., Solely
As Nominee for Quicken Loans Inc.

PREPARED BY AND WHEN
RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
(858) 750-7700

460 82 61

APN: 612-0-081-055
MIN: 100039046728392404

20101006-00153067-0 1/1
Ventura County Clerk and Recorder
MARK A. LUNN
10/06/2010 08:00:00 AM
455596 $18 00 ZA

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, N.A., as Trustee, for MASTR Alternative Loan Trust 2004-9 all beneficial interest under that certain Deed of Trust dated February 27, 2004, executed by Lisa A Stricker, A Single Woman, to LSI, A Fidelity National Financial Company as trustee, for Mortgage Electronic Registration Systems, Inc., Solely As Nominee for Quicken Loans Inc., as beneficiary, and recorded as Instrument No. 20040303-0054667 on March 3, 2004, in the State of California, Ventura County Recorder's Office. Together with the money due and to become due thereon with interest, and all rights accrued or to accrue under the instrument secured by the Deed of Trust.

Dated: 9-29-10
                KS.

Mortgage Electronic Registration Systems, Inc., Solely
As Nominee for Quicken Loans Inc.

By: _____
Name: _____Sandy Broughton_____
Title: _____Assistant Secretary_____

State of PENNSYLVANIA )
County of MONTGOMERY ) ss.
On 9-29-10 before me, JOAN J. CASTAGNA a Notary Public in and for said state, personally appeared SANDY BROUGHTON, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of PA that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public                           Seal for Official Notary Seal)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
John J. Castagne, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Feb. 25, 2014
Pennsylvania Association of Notaries

000001-1122425630-M

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 5**

55

FIRST AMENDED CLASS ACTION COMPLAINT

*KRAL, et al. v GMAC LOAN SERVICES, LLC, et al.*

Branch :O14,User :3062                                                      Station ID :BYI6

requested by title court

RECORDING REQUESTED BY:
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**GMAC MORTGAGE, LLC
FKA GMAC MORTGAGE CORPORATION
1100 VIRGINIA DRIVE
FORT WASHINGTON, PA 19034**

Forward Tax Statements to
the address given above

```
20110701-00097057-0 1/4
Ventura County Clerk and Recorder
MARK A  LUNN
07/01/2011 08:00:00 AM
627656 $34.00 MA
```

SPACE ABOVE LINE FOR RECORDER'S USE

TS # GM-243917-C
LOAN # 0359042787              INVESTOR #: 4672839240
TITLE ORDER # 100248871-CA-MSI

## TRUSTEE'S DEED UPON SALE

APN 612-0-081-055          TRANSFER TAX: $00.00
"THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3"
The Grantee Herein Was The Foreclosing Beneficiary.
The Amount Of The Unpaid Debt was **$277,983.27**
The Amount Paid By The Grantee was **$198,000.00**
Said Property is In The City Of **SIMI VALLEY**, County of **Ventura**

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

**Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

## U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, N.A., as Trustee, for MASTR Alternative Loan Trust 2004-9

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Ventura**, State of California, described as follows:

**See exhibit "A" attached hereto and made a part hereof**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **LISA A. STRICKER, A SINGLE WOMAN** as Trustor, dated **02/27/2004** of the Official Records in the office of the Recorder of **Ventura**, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on **03/03/2004**, instrument number **20040303-0054667** (or Book, Page) of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

[Page 1 of 2]

Branch :O14,User :3062                                                    Station ID :BY16

## EXHIBIT A

## LEGAL DESCRIPTION

REF. NO. GM-243817-C

PARCEL NO. 1:

PARCEL 23 OF PARCEL MAP LDS 219, AS SHOWN ON MAP RECORDED IN BOOK 34, PAGES 45 THROUGH 50, INCLUSIVE, OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER.

PARCEL NO. 2:

THE EASEMENT AS SET FORTH IN THE SECTION ENTITLED "ENCROACHMENT EASEMENTS FOR OWNERS" OF THE ARTICLE ENTITLED "EASEMENTS" OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR BROADMOOR VILLAGE RECORDED SEPTEMBER 30, 1981, AS DOCUMENT NO. 92723, IN THE OFFICE OF THE COUNTY RECORDER OF VENTURA COUNTY, CALIFORNIA, AS AMENDED AND SUPPLEMENTED ("DECLARATION").

PARCEL NO. 3:

AN EASEMENT ("EASEMENT"), AS SET FORTH IN, AND FOR THE PURPOSES AND SUBJECT TO THE TERMS AND PROVISIONS OF, THE SECTION ENTITLED "EASEMENTS TO LOT OWNERS" OF THE ARTICLE ENTITLED "EASEMENTS" OF THE DECLARATION, OVER THAT PORTION OF PARCEL 33 OF TRACT NO./PARCEL MAP LDS 219 RECORDED IN BOOK 34, PAGE 45 OF MAPS/PARCEL MAPS BOUNDED ON ONE OR MORE SIDES BY THE LOT LINE OR LINES OF THE LOT ("LOT") DESCRIBED UNDER PARCEL NO. 1 ABOVE WHICH DIVIDE THE LOT FROM SUCH PARCEL 33 AND ON THE OTHER SIDES BY THE WALL OR FENCE (INCLUDING ANY GATE IN SUCH WALL OR FENCE) ADJACENT TO SUCH LOT AND BUILT BY THE DECLARANT AS PART OF THE ORIGINAL CONSTRUCTION UPON THE PROPERTY, PROVIDED, HOWEVER, THAT THE BOUNDARY LINE OF ANY EASEMENT FORMED BY ANY SUCH FENCE OR WALL WHICH DOES NOT ALSO FORM A BOUNDARY LINE OF AN ADJOINING EASEMENT SHALL BE THE INTERSECTION OF THE PLANE OF THE EXTERIOR SURFACE OF SUCH FENCE OR WALL (THAT IS, THE SURFACE WHICH DOES NOT FACE THE AREA COVERED BY THE EASEMENT) AND THE SURFACE OF THE GROUND, AND THE BOUNDARY LINE OF ANY EASEMENT WHICH IS FORMED BY ANY SUCH FENCE OR WALL AND WHICH IS A BOUNDARY LINE BETWEEN TWO EASEMENTS SHALL BE LOCATED EQUI-DISTANCE BETWEEN THE INTERSECTIONS OF THE PLANES OF THE EXTERIOR SURFACES OF SUCH FENCE OR WALL AND THE SURFACE OF THE GROUND

GRANTEE HEREBY ACKNOWLEDGES GRANTEE'S UNDERSTANDING THAT THE MAP FOR TRACT NO. 3177-1, AS RECORDED DECEMBER 17, 1980, IN BOOK 90, PAGES 20 THROUGH 26, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF VENTURA COUNTY, CALIFORNIA, DEPICTS A PATIO EASEMENT ("PATIO EASEMENT") ADJACENT TO EACH LOT SHOWN ON SUCH MAP, INCLUDING THE LOT, GRANTEE HEREBY ACKNOWLEDGES AND AGREES THAT THE AREA COVERED BY THE EASEMENT MAY BE DIFFERENT FROM THE AREA COVERED BY THE PATIO EASEMENT AND MAY BE LESS THAN THE AREA COVERED BY THE PATIO EASEMENT AND GRANTEE FURTHER ACKNOWLEDGES AND AGREES THAT GRANTEE SHALL HAVE NO RIGHT, TITLE OR INTEREST WHATSOEVER IN THE AREA COVERED BY THE PATIO EASEMENT, WHETHER PURSUANT TO THIS GRANT DEED OR OTHERWISE, EXCEPT AS MAY BE GRANTED PURSUANT TO THE EASEMENT

Branch :O14,User :3062                                                          Station ID :BYI6

RESERVING TO GRANTOR, ITS SUCCESSOR AND ASSIGNS, TOGETHER WITH THE RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE SAME, EXCEPT AS GRANTED HEREBY, THE EASEMENTS AND RIGHTS AS SET FORTH IN THE ARTICLE ENTITLED "EASEMENTS" OF THE DECLARATION.

EXCEPTING THEREFROM, ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES, MINERALS AND GEOTHERMAL RESOURCES BELOW A DEPTH OF FIVE HUNDRED (500) FEET UNDER PARCEL NO. 1 ABOVE, WITHOUT THE RIGHT OF SURFACE ENTRY AS RESERVED BY LUCILE C. ESTES, ALSO KNOWN AS LUCILE ESTES IN BOOK 5341, PAGE 928 OF OFFICIAL RECORDS.

Branch :O14,User :3062                                              Station ID :BYI6

# TRUSTEE'S DEED UPON SALE

Trustee's Deed
T.S.# **GM-243917-C**
Loan # 0359042787
Title Order # **100248871-CA-MSI**

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with.  Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **06/27/2011**.  Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$198,000.00**, in lawful money of the United States, in pro per, receipt there of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: 6 - 29 - 11

                                    **Executive Trustee Services, LLC dba ETS Services, LLC**

                                    By: _____
                                            **Luis Rodriguez, Authorized Officer**

**State of California**     } S.S.
**County of Los Angeles**  }

On __6  29 -11__ before me, **Sally Beltran** Notary Public, personally appeared **Luis Rodriguez** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____          (Seal)
            **Sally Beltran**

SALLY BELTRAN
Commission # 1777065
Notary Public - California
Los Angeles County
My Comm. Expires Oct 30, 2011

[Page 2 of 2]

VENTURA, CA  Document:FD 2011.97057                                    Page:4 of 4

Printed on:4/16/2012 3:16 PM

Branch :O14,User :3062

Station ID :BYI6

CAliFornia that the Foregoing
Paragraph is True and

I declare under Penalty of Perjury that the
___ Page(s) of the Document to which
this statement is attached read(s) as follows

**PROOF OF SERVICE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT**
KRAL v. GMAC MORTGAGE, LLC; et al
Case No: **CV 12-01023 GW (OPx)**

I am employed in the County of Orange, State of California. I am over the age of 18 years. My business address is: **3345 Newport Blvd, Suite 213, Newport Beach, CA 92663**

On April 24, 2012 I served the foregoing document described as Plaintiff's FIRST AMENDED COMPLAINT on the interested parties in this action.

x    by placing the original and/or true copy thereof enclosed in (a) sealed envelope(s), addressed as follows"

**SEE ATTACHED SERVICE LIST**

x    **BY REGULAR MAIL:** I deposited such envelope in the mail at 3345 Newport Blvd, Newport Beach, CA 92663. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Services on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODICED ON PAPER PURCHASED AS RECYCLED.**

**BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

**BY USPS OVERNIGHT MAIL:** I deposited such documents at the Overnight Express Mail located at 3345 Newport Blvd, Newport Beach, Ca 92663. The envelope was deposited with delivery fees thereon fully prepaid.

**BY PERSONAL SERVICE**: I caused such envelope(s) to be delivered by hand to the above addressee(s).

x    (Federal) I declare than I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on April 24, 2012, at Newport Beach, Ca 92663

_____ Autumn Skerritt

– i –

1

**PROOF OF SERVICE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT**
KRAL v. GMAC MORTGAGE, LLC; et al
Case No: **CV 12-01023 GW (OPx)**

4   Attorney for GMAC Mortgage, LLC
Regina J. McCelndon
5   **LOCKE LORD LLP**
**44 Montgomery St., Suite 2400**
6   **San Francisco, CA 94104**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

– 2 –