**Hearing Date: October 24, 2012 at 10:00 a.m. (ET)**
**Objection Deadline Date: October 17, 2012, 2012 at 4:00 P.m. (ET)**

Joseph Arthur Roberts, California State Bar No. 156180 (admitted *pro hac vice*)
LAW OFFICE OF J. ARTHUR ROBERTS
3345 Newport Blvd., Suite 213
Newport Beach, CA 92663
Telephone: (949) 675-9900
Facsimile: (888) 989-9309
Email: Joe@JarLegal.com
Counsel for Kenneth Kral, and all
others similarly situated

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Residential Capital, LLC, et al.,** | : | **Case No. 12-12020 (MG)** |
| | : | **Jointly Administered** |
| **Debtors.** | : | |

**MEMORANDUM IN SUPPORT OF MOTION OF KENNETH KRAL AND THE PUTATIVE CLASS FOR RELIEF FROM AUTOMATIC STAY AS TO GMAC MORTGAGE, LLC AND EXECUTIVE TRUSTEE SERVICES, LLC**

## TABLE OF CONTENTS

INTRODUCTION 1

FACTUAL AND PROCEDURAL BACKGROUND 2

LEGAL DISCUSSION 6

A) A LIFT OF STAY AS TO PLAINTIFFS' CLAIMS IS APPROPRIATE UNDER THE *SONNAX* FACTORS 7

B) THE INSTANT COURT DOES NOT HAVE AUTHORITY TO ENTER FINAL ORDERS ON PLAINTIFFS' STATE LAW CLAIMS 10

CONCLUSION 12

## TABLE OF AUTHORITIES

**Cases**

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999) 13

*Gordon v. City of San Diego*, 108 Cal. 264 (1895) .......... 4

*In re Burger Boys, Inc.*, 183 B.R. 682 (S.D.N.Y. 1994) .......... 11

*In re Keene Corp.*, 171 B.R. 180 (Bankr.S.D.N.Y.1994) .......... 8, 11

*In re Santa Clara County Fair Ass'n, Inc.* 180 BR 564 (9th Cir. BAP 1995) .......... 11

*In re SCO Group, Inc.*, 395 B.R. 852 (Bankr. D. Del. 2007 .......... 9

*In re Touloumis*, 170 B.R. 825, 828 (Bankr.S.D.N.Y.1994) .......... 8

*Kirschner v. Agoglia*, 2012 WL 1622496 (S.D.N.Y. 2012) .......... 12

*Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139 (2d Cir.1999) .......... 8

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) .......... 12

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990) .......... 7

*Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104 (2d Cir. 2002) .......... 8

*Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011) .......... 12

**Statutes**

15 USC section 1640 .......... 2, 7

15 USC section 1641 .......... 1, 2

California Business & Professions Code sections 17200, et seq .......... 1

California Civil Code Section 1190 .......... 4

California Government Code Section 8225 .......... 3

United States Bankruptcy Code section 362 .......... 5, 7

## INTRODUCTION

Plaintiff Kenneth L. Kral, Lisa A. Stricker and the Putative Class ("Plaintiffs" or "the Class") seek relief from the automatic stay to pursue their claims and the claims of the putative class in the district court case captioned *Kenneth L. Kral v. GMAC Mortgage LLC et al*, Civ. No. CV12-01023 GW (OPx), currently pending in the United States District Court for the Central District of California.

Plaintiff's First Amended Complaint ("FAC") charges two causes of action: 1) Unlawful/Unfair Acts (California Business & Professions Code §§17200, et seq.) and 2) 15 USC 1641g (Truth In Lending Act ("TILA")) Notice Violations. Because Plaintiffs' Unfair Competition claims are seeking only equitable relief, because an analysis of the "Sonnax Factors" weigh in favor of relief from the automatic stay, and because Plaintiffs respectfully assert that the instant court does not have authority to issue a final adjudication on Plaintiffs' state law claims, Plaintiffs respectfully request a modification or termination of the current stay in order to pursue their claims in the District Court against GMAC, EXECUTIVE TRUSTEE SERVICES, LLC (hereinafter referred to collectively as "Debtor").

Conversely, disallowing Plaintiffs from immediately litigating their claims in their chosen forum may result in irreparable harm to the Class, as well as the public, current and future borrowers, prospective purchasers, title companies, judges, and trustees who rely on e.g., Deeds of Trust and Substitutions of Trustees manufactured by Debtor in contravention of notary laws, and which are therefore erroneously used as *prima facie* evidence of their validity and content. The illegal notarial practices used by Debtor to manufacture these documents are the basis of Plaintiffs' Unfair Competition claims. As discussed more fully below, Plaintiffs are not seeking damages in regard to this claim - only injunctive relief such that Debtor is enjoined from continuing these practices, and is compelled to take steps to remedy the damage already caused.

Plaintiffs' TILA claims arise from Debtor's failure to provide Transfer Notices to Class members, including Kral, within 30 days of becoming the creditor on the relevant home mortgage loans. Class claims brought under TILA are limited to the lesser of $500,000, or 1 per

centum of the net worth of the creditor. (15 U.S.C. § 1640 (a)(2)(B).) Accordingly, Plaintiffs' damages under both actions will not exceed $500,000.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 7, 2012, KENNETH KRAL and LISA A. STRICKER, on behalf of themselves and all others similarly situated, filed suit in the United States District Court, Central District of California, against debtors GMAC MORTGAGE, LLC and EXECUTIVE TRUSTEE SERVICES, LLC (hereinafter collectively referred to as "Debtor"); a First Amended Complaint, was filed on April 25, 2012, alleging Unlawful/Unfair Acts pursuant to California Business and Professions Code section 17200, et seq. and15 USC 1641(g) (Truth in Lending Act or "TILA") violations against Debtor. A true and correct copy of the First Amended Complaint is attached to Plaintiffs' Notice of Motion, filed concurrently herewith, as Exhibit A.

Plaintiffs' claims for Unfair Competition pertain to Debtor's systematic, institutionalized and, Plaintiffs believe, *ongoing* business practice of soliciting, coercing and influencing improper notarial acts with regard to Assignments of Deeds of Trust, Substitutions of Trustee, Deeds Upon Trustee Sale and other mortgage related documents. (FAC ¶¶28-35, 141-144.) Plaintiffs are informed that such documents were and are executed by agents of Debtor who lack any personal knowledge as to the facts asserted in each document, who lack any agency relationship to the true party entitled to enforce the terms of the relevant residential loans, and/or are acknowledged by non-notaries, acknowledged outside the presence of the signers, acknowledged without verification of the signer's identification, and acknowledged without proper recordation in a sequential journal. (FAC ¶¶30, 32, 36, 38, 47, 173, 194). Plaintiffs believe that Debtor solicits, coerces and influences its notaries and non-notary agents to engage in these improper and illegal notarial acts in order to create after-the-fact, as-needed Assignments, Substitutions of Trustee and Deeds upon Trustee Sale, etc. (FAC ¶¶15, 31-34, 47, 130, 142-3, 164-5, 196.) The purpose of these illegal acts, which are an integral part of a practice which has come to be known as "robo-signing," is to create the *illusion* of valid mortgage transfers and standing in <u>tens of thousands</u> of foreclosure matters, related bankruptcy cases and other civil matters. (FAC ¶¶22,

144, 156-7, 202, 203.) These acts are violations of California Government Code Section 8225 and other state laws, and constitute deceptive, unlawful and unfair business practices as proscribed by California Business and Professions Code sections 17200, et seq. (FAC ¶¶33, 139-204.). Subsequent to manufacturing these photo-shopped documents, Debtor, in the capacity of its various corporate entities, files these documents with the California public land records and court dockets in pursuance of nonjudicial foreclosure proceedings, motions for relief from stay and other proceedings, as evidence of their standing to foreclose on various real property. (FAC ¶¶23, 29, 35, 48, 146, 167.)

Plaintiffs' allegations are far from speculative. Their claims are supported by the findings of the Office of Currency Comptroller, the Federal Reserve, the San Francisco assessor-recorder's office, other independent governmental agencies, media reports, whistleblowers and courts. (FAC ¶145.) And as reflected in a Consent Order entered into between GMAC and the United States Department of Treasury's Office of the Comptroller of Currency (the "OCC") on April 13, 2011, the Comptroller made explicit findings that GMAC "filed or caused to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary." A true and correct copy of the relevant Consent Order is attached to Plaintiffs' Notice of Motion for Relief from Stay, filed concurrently herewith, as Exhibit B. According to the Consent Order, from January 1, 2009 to December 31, 2010, alone, GMAC completed 89,998 foreclosures. (FAC ¶39.) The Class allegations regarding this claim pertain to improperly/illegally notarized documents recorded since January 1, 2008. (FAC ¶122.)

By recording and filing these improperly and/or illegally notarized documents Debtor has significantly degraded the integrity of California's public records and court documents by polluting them with "photo-shopped" documents whose veracity and contents are wrongly presumed to be bona fide under California law, due to the fact they are acknowledged. (FAC ¶¶23, 25-26, 35, 146, 170-1, 189, 193, 203; Cal. Civ. Cod. §1190; *Gordon v. City of San Diego*, 108 Cal. 264 (1895) (object of an acknowledgment is to entitle the instrument to be used as evidence without further proof and to enable it to be recorded); *Fares v. Morrison*, 54 Cal.App.2d 773 (1942)

(acknowledgment of deed and certification thereof by notary constituted *prima facie* evidence of execution of deed and entitles it to be read into record without further proof).)

The illegal notarial practices used to create these documents ultimately result in increased productivity for Debtor, as well as lower processing costs, lower litigation expenses, lower attorney fees, increased foreclosure related revenue. (FAC ¶¶179-183). As a result, Debtor obtains an unfair, competitive edge over default loan servicing companies within the California residential loan market who do *not* engage in soliciting, coercing and influencing these improper notarial acts. (FAC ¶¶179-183).

The use of these documents has caused Kral, Stricker and the putative Class collectively to suffer actual injury, incur improper loan servicing fees, increased loan charges, a loss of personal rights, and loss of property rights, decreased property values, lost costs, lost time, and increased attorney fees combating the effect of the widespread publication of improperly acknowledged documents. (FAC ¶202.) Further, these questionable assignments and substitutions result in a potentially clouded chain of title, as well as uncertainty for investors of securitized mortgages. (FAC ¶72, 114, 142, 155, 157-8, 167-8, 197.) Continuing, adverse consequences resulting from these presumptively valid documents will persist indefinitely if they remain in the public record in their current form due to their continued use against the public and putative Class members in foreclosures, unlawful detainer actions and trustee sales. (FAC ¶25, 39, 43, 167-8, 170, 202.) Consequently, Plaintiff is seeking injunctive relief enjoining Defendants from engaging in improper and/or illegal notarial services, and from filing these records in California's public land records. (FAC ¶¶121,130, Prayer for Relief.) Plaintiff is also seeking an order compelling Defendants to record Notices of Improperly Acknowledged Documents, or a similar notice, in regard to each improperly acknowledged document recorded in public land records and/or filed in any court docket or claims register. (FAC Prayer for Relief.)

Plaintiffs' TILA claims arise because, in addition to manufacturing improperly acknowledged documents, Debtor has systematically failed to Notice borrowers of the alleged assignment of their mortgages to Debtor within 30 days of the transfer, as required by 15 USC §1641(g). (FAC ¶206, 211, 217.) Plaintiffs believe Debtor has attempted to avoid its notice

obligations under TILA by claiming it is merely a "servicer" of said loans, the status of which thereby absolves it from complying with the aforementioned notice requirements. (FAC ¶¶212, 214.) The purpose of such avoidance, Plaintiffs believe, is to intentionally preclude borrowers from identifying the true beneficiary of each loan. (FAC ¶214.) As a result, borrowers are prevented from engaging in loss mitigation measures with the true loan owners, and their due process rights for notice and opportunity to be heard are violated. (FAC ¶¶223-4, 226.) This, in turn, has caused damages to the putative Class members by exasperating hardships faced by those in financial distress, by preventing the *chance* at loan modification, causing emotional distress, and by forcing the homeowners to incur attorney's fees and added expenses in an attempt to discover the identity of the true creditors as well as the validity of Debtor's status as a creditor and\or loan servicer. (FAC ¶¶224-9.)

On May 14, 2012, Debtor filed its voluntary Petition for Chapter 11 bankruptcy in this Court. Pursuant to section 362(a), an automatic stay went into effect at that time, precluding the Class from further prosecution of its District Court action against Debtor.

On June 15, 2012, the court entered a Final Order Authorizing the Debtors to Continue in the Ordinary Course of Business:

> The Debtors are authorized, but not directed, in their sole and absolute discretion and subject to available funding, to continue servicing Non-GA Loans in the ordinary course...[and] to continue servicing Non-GA Loans in foreclosure and REO in the ordinary course, including, but not limited to:
>
> (a) selling Non-GA Loans in foreclosure and REO free and clear of any and all liens, claims, and encumbrances pursuant to section 363(f) of the Bankruptcy Code);
>
> (b) paying foreclosure professionals' (including default counsel) and brokers' fees, as applicable, in the ordinary course of business in connection with respect to the Non-GA Foreclosure Sales and REO sales;
>
> (c) making Advances related to the Non-GA Loans in foreclosure and REO in accordance with the relevant loan servicing agreements or other governing documents;
>
> ...
>
> 12. The Debtors are authorized and empowered to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

(ECF doc #402 p.2 ¶2, p.4 ¶6, p.6 ¶12.) Consequently, Plaintiffs believe that Debtor is *continuing* to engage in the activities complained of: improper/illegal notarial practices and filing of documents resulting therefrom, and failure to Notice homeowners of mortgage transfer. The result being that the harm inflicted on the Class, the public, courts, and other interested parties is *ongoing*. It is therefore imperative that these issues be addressed imminently, and that Debtor be enjoined from further engaging in these activities.

Mortgage industry statistics suggest that the national loan servicing market is currently valued at approximately $7.846 trillion, of which California represents over 50%. (FAC ¶124.) The top 10 loan servicers control over 78% of the Loan Servicing Market; GMAC, the servicing arm of Ally Bank, is fifth among the largest servicers of residential mortgages in the United States, services a current portfolio of 2,439,510 residential mortgage loans worth $382.8 billion and holds a market share of approximately 5% nationally. (FAC ¶¶124-5.)

GMAC was third among loan servicers based on defaulted loans with 22% of its loans in default in 2008. (FAC ¶126.) That number declined to 7.8% in 2011, yet 1 in 283 homes in California are currently in some stage of non-judicial foreclosure; approximately 5% of those loans are serviced by GMAC. (FAC ¶126.) The documents manufactured by Debtor in regard to these foreclosures and related proceedings, and which employ improper notarial practices, therefore may number in the hundreds of thousands, and are <u>still</u> being manufactured and used against homeowners.

As previously mentioned, class claims brought under TILA are limited to the lesser of $500,000, or 1 per centum of the net worth of the creditor. (15 U.S.C. § 1640 (a)(2)(B).) Because the Class is not seeking damages for its Unfair Competition claims, the aggregate Class claims will not, therefore, amount to more than $500,000 in damages.

## LEGAL DISCUSSION

Because application of the *Sonnax* factors yields a determination that the lift of stay as to Plaintiffs' claims are appropriate, and because the instant court, respectfully, does not have jurisdiction to enter final orders with regard to Plaintiffs' state law claims, a modification or lift of the automatic stay is appropriate.

**A) A LIFT OF STAY AS TO PLAINTIFFS' CLAIMS IS APPROPRIATE UNDER THE *SONNAX* FACTORS**

As noted by this court in previous orders on various motions for relief of stay, section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). Also as noted by this court, the Bankruptcy Code does not define "cause," and in determining whether "cause" exists to lift the stay for prepetition litigation the Second Circuit has adopted an analysis of twelve factors, commonly referred to as the "Sonnax factors." (*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285-6 (2d Cir. 1990). These factors are:

(1) whether relief would result in a partial or complete resolution of the issues,
(2) the lack of any connection with or interference with the bankruptcy case,
(3) whether the other proceeding involves the debtor as a fiduciary,
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
(5) whether the debtor's insurer has assumed full responsibility for defending the action,
(6) whether the action primarily involves third parties,
(7) whether litigation in another forum would prejudice the interests of other creditors,
(8) whether the judgment claim arising from the other action is subject to equitable subordination,
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
(10) the interests of judicial economy and the expeditious and economical resolution of litigation,
(11) whether the parties are ready for trial in the other proceeding, and
(12) the impact of the stay on the parties and the balance of harms.

Not all of the factors are relevant in every case. (*Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir.1999); *In re Touloumis*, 170 B.R. 825 (Bankr.S.D.N.Y.1994). The court need not assign equal weight to each factor, and must determine the relevance of each factor on a case-by-case basis. (*In re Keene Corp.*, 171 B.R. 180, 183 (Bankr.S.D.N.Y.1994); *In re Touloumis*, 170 B.R. at 828; *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002), *citing In re Mazzeo*, 167 F.3d 139, 143.) The moving party bears the initial burden to demonstrate that "cause" exists to lift the stay. (See *Sonnax*, *supra*, 907 F.2d at 1285).

Factors (1) and (2) are met with regard to Plaintiffs' request: allowing Plaintiffs to litigate their issue in the District Court will, ultimately, result in a partial (if allowed to pursue judgment, but not pursue collection thereon) or complete resolution of the issues, which are not related to the bankruptcy case. Moreover, no interference will occur with the reorganization in the event Plaintiffs' are allowed to pursue their claims only as far as establishing liability, but not collecting on any judgment. Factor (3), regarding whether the debtor is a fiduciary, is not applicable.

As to whether a specialized tribunal has been established, factor (4), Plaintiffs' District Court action is before Hon. Judge George Wu. Judge Wu recently presided over another, very similar action, in *Hestrin v. American Home Servicing Inc., et al.* 2:12-cv-01025-GW-RZ. The *Hestrin* case involves the same Unfair Competition claim for improper and illegal notarial practices. (See Affidavit of in Support of Relief from Stay, filed with the Notice of Motion for Relief of Stay concurrently herewith.) Accordingly, Judge Wu is intimately familiar with the theories asserted therein, and therefore with Plaintiffs' instant Unfair Competition claim. While this does not amount to a "specialized" tribunal, Judge Wu's familiarity with the exact claims, and with California law and procedure generally, militates in favor of allowing Plaintiffs' to pursue their claim in the current venue. (*In re SCO Group, Inc.*, 395 B.R. 852, 860 (Bankr. D. Del. 2007) ("Debtors concede that it is unreasonable to expect this Court to spend a significant amount of time learning and resolving the Liability Issues when the District Court already has the knowledge required to adjudicate the Liability Issues. Moreover, to do so would be economically inefficient and unnecessarily time consuming.").)

Because the automatic stay relating to the instant bankruptcy went into effect before discovery commenced in their District Court action, Plaintiffs, at this stage, do not have information regarding whether Debtor's insurer will assume liability for the Plaintiffs' action (factor (5)). However, there may be covered liability for the true loan owners if it is ultimately determined that the alleged assignments of interest are indeed fraudulent, and that GMAC truly is merely the relevant loan servicer, and not the owner in interest. Given that such information is exclusively within the control and knowledge of Debtor, Plaintiffs' request that the burden shift

to Debtor to demonstrate if insurance is available to it or not in the District Court action pursuant to Bankruptcy Code section 362(g)(2). Alternatively, if the court is disinclined to grant Plaintiffs' motion for relief out of concern for the resultant decrease of assets and funds available to the bankruptcy estate, Plaintiffs request that they be allowed to conduct discovery on the issue of insurance coverage available to Debtor as regards the claims brought by Plaintiffs pursuant to Federal Rule of Bankruptcy Procedure 9014. However, Plaintiffs reiterate that the damages sought cannot exceed $500,000, a relatively small amount given Debtor's assets and liabilities and are amenable to a modification of stay allowing them to pursue judgment and injunctive relief[1], but not recovery.

Factor (6) is not applicable, as Plaintiffs' claims are against Debtor directly. Whether litigation in another forum would prejudice the interests of other creditors, factor (7), weighs in favor of relieving Plaintiffs' action from the stay. Because the issue would be litigated in the District court, the other creditors would not be prejudiced by any delay or court resources used in resolving the case. Moreover, because, as noted above, Plaintiffs' claims for damages cannot exceed $500,000, there will be little detriment to the bankruptcy estate. And Plaintiffs are amenable to a modification of the stay such that their claims can be pursued to conclusion in the District court, but that any recovery of the judgment therefrom must be submitted to the instant court, along with all other claims. The court therefore need not be concerned about Plaintiffs "jumping to the head of the line," while still allowing Plaintiffs to pursue their injunctive relief against Debtor, thereby minimizing the ongoing harm resulting from Debtor's continuing tortious conduct.

Factors (8) and (9) - whether the non bankruptcy judgment is subject to equitable subordination and it would result in a judicial lien avoidable by the debtor – also weigh in Plaintiffs' favor: there is no reason that Plaintiffs' claims would be subject to equitable subordination, and such a lien would not be avoidable. There is therefore no reason that Plaintiffs' claim, if successful, would be otherwise unrecoverable.

---

[1] It should be noted that Plaintiffs are seeking injunctive relief as to the improper notarial practices, and notice of transfers – not Debtor's operations generally. Such relief should therefore not interfere with Debtor's loss mitigation activities.

While Plaintiffs' are not on the eve of trial, factor (11) their claims have already been tested by Debtor's motion to dismiss in the district court (see Affidavit in support of the instant motion, filed concurrently herewith), and are currently in front of a judicial officer who already has personal experience with Unfair Competition claims based on notarial improprieties, as well as California law generally.

Application of factors (10) and (12), relating to the interests of judicial economy and the expeditious and economical resolution of litigation, and the impact of stay on the parties and balance of harms, favor the granting Plaintiffs' request for relief from stay. As detailed above, Plaintiffs are informed that Debtor's tortious conduct is an ongoing activity, and is therefore a source of continuing harm to the Class and the public at large. And while continuing litigation in the District Court will force Debtor to expend resources on that front, the increased costs of litigating in a particular forum are not so prejudicial as to require continuance of a stay. (See, e.g. *In re Santa Clara County Fair Ass'n, Inc.* 180 BR 564, 566 (9th Cir. BAP 1995); see also *In re Burger Boys, Inc.*, 183 B.R. 682 (S.D.N.Y. 1994), citing *In re Keene Corporation*, *supra*, 171 B.R. at 185).) This is particularly true given Debtor has obtained a modified relief of stay so that it may continue in the regular course of business – which, Plaintiffs are informed, includes the tortious activity complained of by Plaintiffs. Because the case has already been commenced and progressed in the District Court, and because Judge Wu is familiar with the subject matter and there is therefore a decreased need to expend time becoming learned thereon, it is judicially economical for the District Court case to proceed.

Because Debtor is continuing to engage in illegal and improper notarial practices was well as an ongoing failure to Notice borrowers of mortgage transfers, the balance of harms and impact of the stay favor allowing to Plaintiffs to pursue their efforts to enjoin Defendants from said activities.

**B) THE INSTANT COURT DOES NOT HAVE AUTHORITY TO ENTER FINAL ORDERS ON PLAINTIFFS' STATE LAW CLAIMS**

The Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011) held that a state law tortious interference counterclaim could be finally adjudicated only by an Article III court

(such as a district court) and not by the bankruptcy court, even though the counterclaim was a "core" proceeding. Previously, the Court has explained that, "What clearly remains subject to Art. III are all private adjudications in federal courts within the States - matters from their nature subject to a `suit at common law or in equity or admiralty.'... There is no doubt that when the Framers assigned the `judicial Power' to an independent Art. III Branch, these matters lay at what they perceived to be the protected core of that power." (*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 70-71, n. 25 (1982).) The *Stern* holding has been applied with varying intensity and comprehensiveness by subsequent courts. The Southern District of New York, in *Kirschner v. Agoglia*, 2012 WL 1622496 (S.D.N.Y. 2012) interpreted the *Stern* holding as meaning the bankruptcy court lacked constitutional authority to enter a final judgment[2] on a trustee's claims for fraudulent conveyance and unjust enrichment claims brought as an adversary proceeding:

> [T]he heart of the Stern opinion rests on the distinction **between "private rights" claims, the "stuff" of common law, over which only an Article III court can render final judgment, and "public rights" claims that assert claims "derived from" or "closely intertwined" with a federal regulatory scheme** and that therefore can be fully adjudicated by an Article I bankruptcy court without intruding on the separation of powers set out by Article III.

(*Kirschner* at *2 (emphasis and brackets added), citing *Stern, supra*, 131 S.Ct. at 2611–16.) The *Kirschner* court also noted that the claims before it existed "without regard to the bankruptcy proceeding." (*Id.* at *4, citing *Stern, supra*, 131 S.Ct. at 2618.) Plaintiffs' concur with the analysis in *Kirschner*, and contend that their Unfair Competition claims cannot be finally adjudicated by the instant court. California's Unfair Competition law originates in California common law[3], and is not closely intertwined with, or derived from, a federal regulatory scheme. Moreover, Plaintiffs claims exist – and in fact existed prior to – without regard to the bankruptcy proceeding. Accordingly, Plaintiffs respectfully assert that the instant court does not have

---

[2] The court found, however, that the bankruptcy court had authority to lawful authority to conduct proceedings and issue a report and recommendation to the District Court on Movants' motion to dismiss as a non-core proceeding, provided it is subject to de novo review. (*Id.* at *1.)

[3] See, e.g. Justice Kennard's concurring and dissenting discussion in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999).

jurisdiction over their Unfair Competition claim and, because the claim is not related to the bankruptcy proceeding, there is no supplemental jurisdiction.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the court modify the automatic stay pertaining to Debtor so as to allow them to pursue their District Court claims against Debtor. Alternatively, Plaintiffs request that the court allow them to establish liability in the District Court, but to refrain from pursuing collection on any judgment had therein without further permission from the court.

Date: September 21, 2012

Joseph Arthur Roberts, Esq.
California State Bar No. 156180 (admitted *pro hac vice*)