

Paul N. Papas II, *pro se*
4727 E Bell Rd.
Ste 45-350
Phoenix, AZ 85032
602-493-2016

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RESIDENTIAL CAPITAL, LLC<br>a/k/a RESIDENTIAL CAPITAL CORPORATION<br>1177 Avenue of the Americas<br>New York, New York 10036<br>Debtor | Chapter 11<br>Case No. 12-12020-mg<br>Joint Administration Pending |

## MEMORANDUM IN SUPPORT OF MOTION TO CONVERT DEBTOR ResCap TO CHAPTER 7

There are several issues of fraud committed by the Debtor ResCap/GMAC outlined within this Claimant/Creditor's Motion To Convert the Debtor ResCap/GMAC to Chapter 7. This Memorandum In Support of the Motion To Convert Debtor ResCap/GMAC will focus on the involvement of MERS in the chain of title as it affects mortgages claimed to be held by the Debtor ResCap/GMAC. This Memorandum In Support of the Motion To Convert Debtor ResCap/GMAC also affects the properties the Debtor ResCap/GMAC claim to own as a result of their claim to hold or to have held the mortgages. This Memorandum will help this Bankruptcy Court determine what assets the Debtor ResCap/GMAC actually has and what the unsecured Creditors may have available to them. Debtor ResCap/GMAC does not have a reorganization plan and has no plan of distribution to their unsecured Creditors according to the July 27th adjourned Meeting of Creditors.

1. The Washington Supreme Court ruled unanimously, August 16, 2012 in <u>Bain (Kristin), et al. v. Mortg. Elec. Registration Sys., et al.</u>, No. 86206-1, defining the statutes to

determine that MERS (Mortgage Electronic Registration Systems, Inc. – the mortgage industry's controversial document-recording system) was not entitled to be a beneficiary in Deed of Trusts and might have violated state consumer protection laws. Washington is among the majority of Deed of Trust states in the Ninth Circuit – Hawaii being the ONLY Mortgage lien state in the Ninth Circuit. The Washington Supreme Court determined the question the federal court has asked:

> "1. Is Mortgage Electronic Registration Systems, Inc., a lawful "beneficiary" within the terms of Washington's Deed of Trust Act, Revised Code of Washington section 61.24.005(2), if it never held the promissory note secured by the deed of trust?"
>
> **"we answer the first certified question "no.""**

2. The decision, authored by Justice Tom Chambers, stated in part: *MERS argues we should be guided by* <u>Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034 (9th Cir. 2011)</u>. *In* Cervantes, *the Ninth Circuit Court of Appeals affirm dismissal of claims for fraud, intentional infliction of emotional distress, and violations of the federal Truth in Lending Act and the Arizona Consumer Fraud Act against MERS, Countrywide Home Loans, and other financial institutions. Id. at 1041.* **We do not find** Cervantes **instructive.** *Cervantes was a putative class action that was dismissed on the pleadings for a variety of reasons, the vast majority of which are irrelevant to the issues before us. Id. at 1038. After dismissing the fraud claim for failure to allege facts that met all nine elements of a fraud claim in Arizona, the Ninth Circuit observed that MERS's role was plainly laid out in the deeds of trust. Id. at 1042.* **Nowhere in** Cervantes **does the Ninth Circuit suggest that the parties could contract around the statutory terms."** [Ed. Emphasis added]

3. <u>*Cervantes*</u> is a miserable little "Deed of Trust" case that judges in Hawaii and elsewhere have apparently misinterpreted since its inception. To plead fraud in these cases (as in most cases) there is a dire need for discovery due to the purposely convoluted scheme. However, the courts have continually allowed the banks to stall and abuse the discovery process.

4. Pleading fraud in specificity is a special task and apparently some details about MERS were not pled in this case either. MERS has a tale to tell in the public documents that few attorneys have taken the time to dissect and study properly – but appear to point to the deception which the Court in *Bain* took the time to define and left the door open stating:

> "To prevail on a CPA action, the plaintiff must show "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

To prevail in an "unfair or deceptive act or practice" the Court states:

> "To prove that an act or practice is deceptive, neither intent nor actual deception is required. The question is whether the conduct has "the capacity to deceive a substantial portion of the public." Hangman Ridge, 105 Wn.2d at 785. Even accurate information may be deceptive "'if there is a representation, omission or practice that is likely to mislead.'" Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 50, 204 P.3d 885 (2009) (quoting Sw. Sunsites, Inc. v. Fed Trade Comm'n, 785 F.2d 1431, 1435 (9th Cir. 1986)). Misrepresentation of the material terms of a transaction or the failure to disclose material terms violates the CPA. State v. Ralph Williams' N.W. Chrysler Plymouth, Inc., 87 Wn.2d, 298, 305–09, 553 P.2d 423 (1976). Whether particular actions are deceptive is a question of law that we review de novo. Leingang v. Pierce County Med. Bureau, 131 Wn.2d 133, 150, 930 P.2d 288 (1997)."

4. Not surprising that the Court determined that the 3rd question of whether an "unfair or deceptive act or practice" could be pursued:

> "We answer the third question with a qualified "yes;" a CPA action may be maintainable, but the mere fact MERS is listed on the deed of trust as a beneficiary is not itself an actionable injury.

**Who is MERS?** This brings up whether or not the facts surrounding the creation of Mortgage Electronic Registration Systems, Inc., MERS, MERSCORP, Inc. and MERS® create an actionable injury. It's the "name game" extraordinaire. There were three Mortgage Electronic Registration Systems, Inc.

**THE TELLTALE TRADEMARK OF MERS®**

5. When you research the trademark docs, and the business registration docs and then you compare the information to the William Hultman and R. K. Arnold depositions... and this is what you get:



There were three (3) Mortgage Electronic Registration Systems, Inc. (s) created = (I), (II), (III).

Mortgage Electronic Registration Systems, Inc. (I) originally formed in about 1995, registered a trademark in 1997 and MERS® and conveyed a security interest to Nationsbank, N.A. (later known as Bank of America) on or about June 1998; that was followed by the creation of another Mortgage Electronic Registration Systems, Inc. (II) which was also created on or about June 30, 1998 and per the *Hultman deposition* merged with Mortgage Electronic Registration Systems, Inc. (I); Then there was a name change of name Mortgage Electronic Registration Systems, Inc. (II) to MERSCORP, Inc. on or about December 1998 which was to become effect as of Jan 1999. The MERS documents are available, as is the Hultman deposition.

This appears to means that the MERS® belongs to MERSCORP, Inc. and it became 'the system' that was licensed for members' use.



6. Shortly after the name change, MERSCORP, Inc. created yet another Mortgage Electronic Registration Systems, Inc. (III) *(per Hultman)* which is the "Mortgage Electronic Registration Systems, Inc." (strawman) in the mortgage contracts (not MERSCORP, Inc. and the "MERS" reference in the mortgages is just an acronym – not the registered trademark MERS®).

7. It appears MERSCORP, Inc. and the "system" are actually in the mortgage

contracts but never disclosed to the borrower – the MIN # belongs to MERS® 'the system', not to the *strawman* "Mortgage Electronic Registration Systems, Inc." (III).

8. The Trademark Documents that were used in a lawsuit against a California company help to support the timeline are available, however this scenario wasn't used by the CA defendant.

**REGISTRATION NO: 2084831 SERIAL NO: 75/031300**
**MAILING DATE: 08/29/2007 REGISTRATION DATE:**
**07/29/1997**
**MARK: MERS**
**REGISTRATION OWNER: MERSCORP, Inc.**

9. Bottom-line, it appears that there were 3 Mortgage Electronic Registration Systems, Inc. companies, 2 companies were absorbed by MERSCORP, Inc., along with the *acronym* "MERS" found in the mortgages which is the "*strawman/trade name Mortgage Electronic Registration Systems, Inc.*" which has no employees or software systems, basically a shell – it is not MERSCORP, Inc.'s MERS® (which is the "system").

10. There have been no records of agreements, contracts, licensing, or assignments of license that have been produced or found filed in any business records in DE, NY, MI or Virginia or the patent office that has been able to link the *Strawman* or any other corporation to the MERS®.

**How does this affect the borrower and it is a fraud?**

11. It was the MERS® system that actually dictated in its rules, with their membership, the recordation of the mortgage and the flow of the note. Moreover, the "system" belonged to MERSCORP, Inc. under which is the entity that all of the banks' "officers" performed the execution of paperwork – *not the strawman* Mortgage Electronic Registration Systems, Inc.

12. Was Mortgage Electronic Registration Systems, Inc. a legal entity or just a trade name? If it was merely a *strawman* covering for the "real" MERS® how can it assign or become a mortgagee? Courts have distinguished the roles of trade names, for example <u>**AMERICA WHOLESALE LENDER v. PAGANO,**</u> **866 A.2d 698 (2005),** stating, *"We conclude that, because a trade name is not an entity with legal capacity to sue, the corporation has no standing to litigate the merits of the case."*

<u>**AMERICA WHOLESALE LENDER v. SILBERSTEIN,**</u> **866 A.2d 695 (2005)** also found;

*"An assignee, however, may not commence an action solely in a trade name either, regardless of the entity to which the trade name applies, because*
*a trade name is not an entity with the legal capacity to sue. Nor could Countrywide cure the jurisdictional defect by substituting a party with the legal capacity to sue on behalf of the trade name. The named plaintiff in the original complaint never existed. As a result, there was no legally recognized entity for which there could be a substitute." [. . .]*

**...and continues**

*[. . .] Furthermore, because America's had no standing to bring an action, no action in this case ever was commenced, as **it was void ab initio**. In the absence of standing on the part of the plaintiff, the court has no jurisdiction.*

**What does this mean in layman terms?**

13. Jan van Eck, a colleague and brilliant (Phi Beta Kappa) mind in foreclosure defense, dissected and explained it this way:

*"You have this MERS outfit set up as a subsidiary of MERSCORP, INC. Then in 1999 MERS gets amalgamated into MERSCORP, INC. Oops. From that point onward, any Filings ostensibly made in the name of "MERS" as spelled out in full in that cumbersome name no longer reflect the actual entity, but something else (which does not exist). So, it appears the implication of this is that all those "Assignments" and "Substitutions" signed by so-called Officers of MERS in the name of MERS instead of MERSCORP, INC all become worthless. That means that the Note and*

*DOT [Deed of Trust] still sit with the "original lender," except that that entity is likely either bankrupt, closed up shop, or paid off and no longer has an interest in the Obligation – and thus cannot grant either a transfer or a release of debt. What this means is that the "new entity" with the phony MERS papers cannot do anything. They are stymied, as they are attempting to advance an interest from an entity that has no temporal existence. "MERS" cannot assign or substitute anything; there is no MERS, and to the extent they manufacture one, there are no Officers or Employees, so the signatures are invalid.*

With invalid Instruments alleging transfers, you have no ability to get Standing before the Court, and the Court has no Jurisdiction. Again, these are bedrock issues; a bit like the proverbial tar-baby, they stick to you and just do not go away.

14. If the Rule of Law is followed, there is no possibility of doing a "do-over," or re-filing in some other name. The problem this creates is that there are already various Transfers and Substitutions recorded on the land records. How do you get around this – by saying "Sorry, we tried to defraud the Courts and the record system, you caught us, so here, try this second attempt?" Nope. No chance. Having once committed themselves to one posture, that of MERS, it becomes impossible to file a second set of Assignments and Substitutions in the name of MERSCORP. **At that point you have serious issues of what document is authentic.**

15. MERS created this big Gordian Knot for themselves and there is no way to slice it open. This is all basic, bedrock, foundational law, MERS cannot sign documents as there is no MERS, anything they signed and filed is without foundation and is manufactured to wreak a deception upon the Court to gain advantage to which the entity is not entitled to, and under the equitable principles of <u>Keystone Driller, 290 US 240, at 245</u>, the doors to the court house are to be shut *in limine*, their cause cannot be heard, and they shall gain nothing."

16. When you consider all the above, you can see why the door is wide open for fraud. The Hultman Deposition also tells us that the documents he signed which appear to appoint certain persons Assistant Vice Presidents or Assistant Secretaries to act for and behalf of MERS are not valid because he did not have the authority to sign the

documents. This means that the entity that is listed did not hold the mortgages and the person who made the assignment from MERS to Debtor ResCap/GMAC did not have the authority to sign the assignment. This means that the mortgages that Debtor ResCap/GMAC claims to hold that came from MERS are not held by Debtor ResCap/GMAC, which also means that any foreclosures that Debtor ResCap/GMAC executed on mortgages that came from MERS are not valid. Debtor ResCap/GMAC has committed Bankruptcy Fraud by claiming assets it does not own. Debtor ResCap/GMAC has violated the Uniform Fraudulent Transfer Act when it transferred titles to properties it did not hold.

17. This Claimant/Creditor has pled in this Court and in other state Courts in cases involving properties where the Debtor ResCap/GMAC and this Claimant/Creditor are parties to civil actions, that GMAC as GMAC Financial Services and subsequently renamed Ally Financial has received three TARP bailouts in the amount of: $5 billion, $7.5 billion, and $4.8 billion.

18. TARP allows the United States Department of the Treasury to purchase up to $700 billion of "troubled assets," defined as "(A) residential or commercial mortgages and any securities, obligations, or other instruments that are based on or related to such mortgages that in each case were originated or issued on or before March 14, 2008.

19. TARP allows the Treasury to purchase illiquid, difficult-to-value assets from banks and other financial institutions. The targeted assets can be collateralized debt obligations, which were sold in a booming market until 2007, when they were hit by widespread foreclosures on the underlying loans. TARP is intended to improve the liquidity of these assets by purchasing them using secondary market mechanisms, thus allowing participating institutions to stabilize their balance sheets and avoid further losses. TARP does not allow banks to recoup losses already incurred on troubled assets.

20. TARP provided that certain institutions may bid for the right buy TARP assets. The buying institutions are permitted to monetize the assets and use the profits of the monetization for such things as paying back the taxpayers for the TARP bailout. Debtor ResCap/GMAC has yet to pay the taxpayers back and according to the adjourned Creditor's Meeting of July 27, 2016 Debtor ResCap/GMAC does not have a plan as to how they will pay the taxpayers for the TARP bailouts they received.

21. Debtor ResCap/GMAC was paid over $17 Billion in TARP Bailout money where the Untied States Treasury purchased residential or commercial mortgages and any securities, obligations, or other instruments that are based on or related to such mortgages that in each case were originated or issued on or before March 14, 2008. Since Debtor ResCap/GMAC has been fully paid $17 Billion for residential or commercial mortgages and any securities, obligations, or other instruments that are based on or related to such mortgages that in each case were originated or issued on or before March 14, 2008, the Debtor ResCap/GMAC can NOT seek further payment from the homeowners, as a condition of the $17 Billion in TARP Bailout money.

**22. It is a fraudulent act to seek and/or receive payment twice for the sale of the same asset.**

23. The United States Treasury has purchased from this Debtor ResCap/GMAC assets which have not been specifically identified. The assets are residential or commercial mortgages and any securities, obligations, or other instruments that are based on or related to such mortgages that in each case were originated or issued on or before March 14, 2008. Because these assets have not been specifically identified, it is imperative that Debtor ResCap/GMAC specifically identify them in this case so that this Claimant/ Creditor, and any other Creditors or this Court will know specifically which assets Debtor ResCap/GMAC is attempting to commit a fraud by accepting or attempting to accept double payment for the same asset.

- This Claimant/ Creditor does not know, nor do any other Creditors or this Court know which assets the Debtor ResCap/GMAC actually own.

Sep 18 12 05:07p        Ray Elliott              6053489472           p.1
12-12020-mg    Doc 1547    Filed 09/21/12    Entered 09/25/12 09:17:39    Main Document
                                    Pg 10 of 11

Page 10 of 11

- o  If Debtor ResCap/GMAC claims they received the mortgages from MERS, then as shown above, we know they don't own them.
- o  If Debtor ResCap/GMAC sold any assets to the United States Treasury Department, then they are trying to be paid twice for the same assets.
- o  If Debtor ResCap/GMAC sold assets that they do not own to United States Treasury Department, then that is fraudulent and the Treasury will deal with that crime.

24. This Claimant/ Creditor is concerned that Debtor ResCap/GMAC is trying to sell assets that they do not own and that they do not list in their bankruptcy filings, which is further evidence of Bankruptcy Fraud. Debtor ResCap/GMAC has sent notices that they intend to sell properties involving this Claimant/Creditor which the Debtor ResCap/GMAC does not own or list as owning them. Because Debtor ResCap/GMAC has used the US Mail and wire transmissions in furtherance of their scheme and Enterprise of fraudulent foreclosures the Debtor ResCap/GMAC has violated 18 USC 1961, *et seq* while also violating the Uniform Fraudulent Transfer Act.

THEREFORE, for the above stated reasons and those stated in the Motion To Convert the Debtor to Chapter 7 dated September 11, 2012, the exact value of the bankruptcy estate is not known. The business affairs of the Debtor ResCap/GMAC are not sufficiently known to enable a Creditor to make an informed judgment about the Debtor ResCap/GMAC's plan of reorganization, which they have said does not exist. This Debtor ResCap/GMAC's petition should be converted to Chapter 7 Bankruptcy because of the Debtor ResCap/GMAC's various violations of section 1112 (b) (1), *In re Setzer*, 47 B.R. 340, 345 (Bankr. E.D.N.Y. 1985), 11 USC §152, and 18 USC section 1961, *et seq*.

Dated September 18, 2012

_____
Paul N. Papas II, *pro se*
4727 E Bell Rd., Ste 45-350
Phoenix, AZ 85032

_____
Raymond Elliot, *pro se*
2655 South Valley Drive
Rapid City, SD 57703

Page 11 of 11

_____  
Kathrina H. Tobias, *pro se*  
8025 East Krail Street  
Scottsdale, AZ 85250

_____  
Anne M. Nelson, *pro se*  
71 Settlers Lane  
Marlboro, MA 01752

## Affidavit in Support

I, Paul N. Papas II, state and depose the above information is true based upon personal observation, knowledge and belief under the pains and penalties of perjury dated this 18th day of September 2012.

_____  
Paul N. Papas II, *pro se*

## Certificate Of Service

I have served a copy of this upon; United States Trustee, Tracey Hope Davis, 33 Whitehall Street, 21st Floor, NY, NY 10004; Attorney Larren M. Nashelsky, MORRISON & FOERSTER, LLP, 1290 Avenue of the Americas, NY, NY, 10104 and Attorney Wendy Allison Nova, 210 Second Street NE, Minneapolis, MN 55413. by email and/or by Regular Mail as well as those on the September 4, 2012 notice list. Dated September 18, 2012

_____  
Paul N. Papas II, *pro se*