Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| RESIDENTIAL CAPITAL, LLC., <u>et al</u>. | ) Case No. 12-12020 (MG) |
| Debtors. | ) Jointly Administered |

**ALLY FINANCIAL INC.'S (A) POSITION STATEMENT REGARDING THE DEBTORS' (I) PRICEWATERHOUSECOOPERS MOTION AND (II) PEPPER HAMILTON AND HUDSON COOK RETENTION APPLICATIONS AND (B) STATUS REPORT REGARDING THE COMMITTEE'S RELATED DISCOVERY REQUESTS**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Ally Financial Inc. ("***AFI***"), on behalf of itself and its non-debtor subsidiaries (collectively, "***Ally***"), submits to the Court and parties in interest this (A) position statement regarding the Motions in advance of the status conference set for September 27, 2012, and (B) status report regarding Ally's participation in the Committee's discovery relating to the Motions.[1]

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the *Omnibus Objection of the Official Committee of Unsecured Creditors to (A) the Debtors' Motion for Entry of an Order Under Bankruptcy Code Section 363 and Bankruptcy Rule 6004 (I) Authorizing the Debtors to Compensate PricewaterhouseCoopers, LLP for Foreclosure Review Services in Furtherance of the Debtors' Compliance Obligations under Federal Reserve Board Consent Order and (II) Reaffirming Relief Granted in the GA Servicing Order, (B) Pepper Hamilton Retention Application, and (C) Hudson Cook Retention Application* [Docket No. 1493] (the "***Objection***").  This position statement also applies with respect to the *Limited Objection*

**ALLY'S POSITION STATEMENT FOR THE STATUS CONFERENCE**

1. In short, Ally supports the Debtors' prosecution of the Motions on a professional, deliberate timetable that allows for reasonable discovery to take place, and respectfully requests that the Court set a telephonic status conference, following further meet and confer, so that a reasonable discovery and briefing schedule can be established to have the Court hear the Motions.

2. Additionally, Ally strongly disagrees with the inflammatory allegations made in the Objection and will present evidence at the hearings on the Motions to the extent necessary or appropriate. Contrary to the Committee's assertion, the Motions do not raise "complex" issues.[2] Only one question is pertinent, and it is straightforward: whether the Debtors have met their burden for the Court to authorize the Debtors to pay PWC and the Law Firms to conduct the Foreclosure Review (defined below) as required by the Consent Order.[3] The answer is yes. The Court should grant the relief requested in the Motions because the Debtors are solely liable for the Foreclosure Review under the Consent Order, and the Debtors' compliance with the regulatory obligations under the Consent Order enables them to pursue the sale of their mortgage servicing and origination platform (the "*Platform*") as an operating business. The evidence will show that the relief requested in the Motions unquestionably is a necessary cost in these cases and in the best interests of the Debtors' estates.

---

of Wilmington Trust, National Association to Debtors' Motion for Entry of an Order (I) Authorizing Debtors to Compensate PricewaterhouseCoopers, LLP for Foreclosure Review Services and (II) Reaffirming Relief Granted in the GA Servicing Order filed on September 17, 2012 [Docket No. 1465].

[2] Objection ¶ 3.

[3] The Committee asserts that approval of the Motions should be subject to a heightened review standard based on unsubstantiated claims that the Consent Order was negotiated for Ally's benefit. *See* Objection ¶ 7. Ally disagrees with such assertion. In any case, this issue is a red herring because the Motions would survive the heightened scrutiny standard, under which "courts are concerned with the integrity and entire fairness of the transaction at issue." *In re Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010).

1

3.  The Federal Reserve Board ("**FRB**") and the Federal Deposit Insurance Corporation ("**FDIC**") entered the Consent Order because GMAC Mortgage and certain other Debtors (collectively, the "**Mortgage Servicing Companies**") allegedly engaged in unsafe and unsound banking practices in violation of state and federal law in connection with residential mortgage foreclosures.[4] Under the Consent Order, the Debtors (GMAC Mortgage, in particular) are solely obligated to retain an independent consultant to conduct the Foreclosure Review.[5] The Consent Order provides that GMAC Mortgage (not AFI or Ally Bank) must, among other things:

- retain one or more independent consultants to conduct an independent review of certain residential mortgage foreclosure actions and proceedings for loans serviced by the Mortgage Servicing Companies and certain residential foreclosure sales (the "**Foreclosure Review**");[6]

- submit to the FRB an acceptable plan to remediate deficiencies in any foreclosure filing or other proceeding and unauthorized foreclosure sales, and reimburse borrowers for any impermissible or unreasonable financial injury identified in the Foreclosure Review;[7] and

- make (with the other Mortgage Servicing Companies) all reimbursement and remediation payments and provide all credits required by such plan.[8]

4.  The Debtors' obligations under the Consent Order regarding the Foreclosure Review are separate and apart from, and in fact underlie, their obligations under the engagement letters with PWC and the Law Firms. No engagement letter obligates Ally to complete the Foreclosure Review. The Committee focuses on the fact that AFI is joint and severally liable under the PWC engagement letter. This fact is true and not in dispute. However, AFI signed

---

[4] Consent Order ¶¶ 3–5.

[5] The Objection incorrectly states that "AFI, Ally Bank, ResCap, and GMAC Mortgage entered into a consent order with the FRB and FDIC, whereby AFI, certain of the Debtors, and Ally Bank agreed to undertake an independent review of certain of the Debtors' residential mortgage loan foreclosure litigation and foreclosure sales." Objection ¶ 10. GMAC Mortgage alone agreed—in fact, was required—to undertake this review. Consent Order ¶¶ 3–5.

[6] Consent Order ¶ 3(a).

[7] *Id.* ¶ 3(c).

[8] *Id.* ¶ 3(d).

2

that engagement letter merely to serve as a backstop for payment and AFI may terminate the engagement letter (as may the Debtors) at any time. In fact, it is only by virtue of a separate agreement with the FRB entered into shortly before the commencement of these cases [Docket No. 1527, Exhibit 10] (the "**Supplemental Agreement**") that AFI agreed to be "secondarily" liable for the costs of PWC to complete the Foreclosure Review if GMAC Mortgage breaches its obligations under the Consent Order.[9]

5. Moreover, the Committee substantially understates the consequences of the Debtors' failure to perform the Foreclosure Review and pay the Foreclosure Review costs:

- *Efforts to foist the Foreclosure Review costs on Ally are a zero sum game.* There is no dispute that the costs are for post-petition services provided to the Debtors for them to comply with regulatory obligations imposed on them under the Consent Order. Even if Ally were to pay the Foreclosure Review costs so that the Debtors could remain an operating business and consummate the Platform sale, Ally would be entitled to an administrative expense claim against the Debtors' estates for such payments.[10]

- *The Debtors' satisfaction of their Consent Order obligations is required for the Platform to retain its value.* There should be no dispute that the going-concern sale of the Platform and the related support from Ally are premised on the fact that the Debtors are operating as subsidiaries of a United States Bank Holding Company and, as such, must comply with all laws and regulations. And government-sponsored enterprises and other Platform counterparties may cancel servicing contracts with the Debtors if the Debtors fail to perform their Consent Order obligations, and the resulting value of the Platform will be substantially diminished.

---

[9] Supplemental Agreement, Preamble at 2; *Id.* at ¶ 1.

[10] 11 U.S.C. § 503(b)(1)(A); *see, e.g.*, *In re N.P. Min. Co., Inc.*, 963 F.2d 1449, 1454–55 (11th Cir. 1992) ("[A] strong case can be made that when a licensed business operates in the regulated atmosphere . . . , incurring regulatory penalties is a cost ordinarily incident to operation of a business and should be accorded administrative-expense priority."); *In re Motel Invs., Inc.*, 172 B.R. 105, 107 (Bankr. M.D. Fla. 1994) (holding that fines imposed for post-petition violations of a prepetition consent order are administrative expenses because "the treatment of wetlands is a highly regulated industry and fines imposed for failure to comply with the law regulating treatment of that type of property is . . . incident to operating a business [and thus an actual and necessary cost of the bankruptcy estate]."); *In re Bill's Coal Co.,* 124 B.R. 827, 830 (D. Kan. 1991) (holding that in "the regulated atmosphere of the strip mining industry, a fine for the violation of environmental regulations should be considered a 'cost ordinarily incident to operation of a business' . . . sufficient for administrative expense status").

3

- *The Debtors' satisfaction of their Consent Order obligations is inextricably intertwined with Ally's integrated support for the pending Platform sale.* The Debtors are in the process of effecting an unprecedented transaction—the sale of the Platform as an operating business during these chapter 11 cases. This sale will yield far more than a liquidation of the Debtors' business. If the Debtors do not satisfy their Consent Order obligations, or if the buyer of the Platform does not assume those obligations, such actions would directly or indirectly have implications under several key agreements that are part of Ally's integrated support package.[11] In fact, Ally affirmed with the FRB in the Supplemental Agreement that it would not consent to the Platform sale or provide financial support to the Debtors if they breach the Consent Order.[12]

- *The Debtors' compliance with the Consent Order is a necessary cost of these cases and provides significant benefits.* The Debtors' satisfaction of their Consent Order obligations is so critical to all parties in interest (including Ally) that, at the request of the United States, it is reinforced in almost every order the Court has entered to date in these cases.[13] Further, compliance with the Consent Order is fundamental to the terms of the integrated support package that Ally is providing the Debtors. And negotiations concerning the Debtors' currently filed chapter 11 plan necessarily would be impacted if the

---

[11] *See, e.g.*, *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* ¶¶ 18(a)(3), 20(d), 20(g) [Docket No. 491]; *Stipulation and Order Reserving Rights with Respect to Debtors' Motion for Interim and Final Orders under Bankruptcy Code Sections 105(a) and 363 Authorizing the Debtors to Continue to Perform under the Ally Bank Servicing Agreement in the Ordinary Course of Business* ¶ 12(b) [Docket No. 1420]; Amended and Restated Servicing Agreement between Ally Bank and GMAC Mortgage, dated as of May 11, 2012 § 9.01(a)(7) [Docket No. 47, Ex. C]; Amended and Restated Master Mortgage Loan Purchase and Sale Agreement between Ally Bank and GMAC Mortgage, dated as of May 1, 2012 § 6.2(f) [Docket No. 44, Ex. C].

[12] Supplemental Agreement ¶¶ 4–5 ("[The Debtors have] agreed with Ally [in the Consent Judgment entered by the District Court for the District of Columbia in connection with alleged violations by Residential Capital LLC, AFI, and GMAC Mortgage, dated February 9, 2012, Ex. I,] that . . . [they] will not enter into a Transformative Transaction [(e.g., a change of control transaction, a sale of all or substantially all of the Debtors' assets, or a similar transaction)] without the consent of Ally; and Ally will not consent to any such Transformative Transaction (or provide financial support in connection with any such Transaction) unless . . . [the Debtors] (including any successor to or purchaser of substantially all the assets from . . . [the Debtors]) agrees to ensure the continued performance of the obligations under paragraphs 3 and 4 of the Consent Order, including without limitation completion of the independent review of foreclosure actions (in the case of a purchase or other acquisition of assets, to honor and perform the obligations with respect to those assets).").

[13] For example, see the Debtors' cash management order at ¶ 45 [Docket No. 393] ("Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.").

4

>Debtors are not authorized to continue honoring their obligations under the Consent Order by making the post-petition payments to PWC and the Law Firms given that Ally took all issues into account when it offered any settlement. Ally would always participate in such negotiations, but all parties need clarity on the Debtors' ability to make the Foreclosure Review payments in light of the potential magnitude of the obligations.

6.      Lastly, Ally notes that the Court may grant the relief requested in the Motions now without deciding the issues raised by the Objection. The Foreclosure Review costs are not unexpected and, in fact, were previously in budgets the Debtors prepared. The Debtors have proposed to make the payments to PWC and the Law Firms subject to a full reservation of rights to make claims against Ally with respect to such payments. The language for that reservation of rights was previously negotiated with the Committee and Ally in relation to the GA Servicing Order.

## DISCOVERY STATUS UPDATE

7.      Ally does not oppose the Committee obtaining reasonable discovery in relation to the Motions. Any statement or implication that Ally has been anything but cooperative in the discovery process is without merit.[14] The Committee served no document requests on Ally regarding the Motions until the afternoon of September 14. Ally has cooperated with the Committee on discovery matters and will continue to do so.

8.      Dating back to July 2012, and to date, Ally has produced over 20,000 documents responsive to the Committee's June 2012 Rule 2004 subpoena, including documents concerning the Consent Order and related agreements. Also, Ally has produced to the Committee a complete set of minutes from meetings of the boards of directors of AFI and Ally Bank, which reflect discussion of the Consent Order and related issues. Moreover, Ally is continuing to

---

[14] Objection ¶ 21 ("On September 14, 2012, the Committee served the Debtors, AFI, and Ally Bank with discovery requests in connection with the Motions. . . . To date, the Committee has met and conferred with the Debtors, AFI, and Ally Bank, but has not received any document productions specifically in response to its requests.").

5

review and process materials for production, including e-mails and other electronically stored information concerning the Consent Order.  Finally, Ally met and conferred with the Committee in good faith on September 20, and is willing to continue to meet-and-confer with the Committee regarding the scope of their requests.

9. Ally will continue to constructively participate in the Committee's discovery regarding the Motions and expects the Committee to employ good faith, best efforts to work with the Debtors and Ally to complete discovery on a reasonable schedule.

### RESERVATION OF RIGHTS

10. Ally intends to respond more fully to the Objection and in support of the Motions and reserves its right to supplement this position statement and all of its rights with respect to the Objection and the Motions.  Without limiting the foregoing, Ally's reservation of rights includes its right to defend itself against any purported claims that may be asserted against Ally, and to assert any claims against the Debtors, in connection with the Motions, including to the extent any order approving relief in connection with the Motions is inconsistent with the terms and conditions of the support package Ally is providing to the Debtors.

New York, New York  
Dated: September 25, 2012

/s/ Ray C. Schrock  
Richard M. Cieri  
Ray C. Schrock  
Stephen E. Hessler  
KIRKLAND & ELLIS LLP  
601 Lexington Avenue  
New York, New York  10022  
Telephone:    (212) 446-4800  
Facsimile:    (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank