# EXHIBIT 6

12-12020-mg    Doc 1580-6    Filed 09/25/12    Entered 09/26/12 09:26:57    Exhibit 6
Pg 1 of 11

I. **RETURN INTEGRITY & ACCURACY TO FORECLOSURE AND BANKRUPTCY PROCEEDINGS**

A. **Put an end to robosigning - signing affidavits filed with the court without personal knowledge.**

- Affidavits/sworn statements utilized in foreclosure proceedings must be accurate as to the amounts owed and the standing of the bank/servicer to file for foreclosure and must be based on the signor's personal knowledge of the facts. The affiant must actually review the bank/servicer records before signing.
- Assertions made in foreclosure or bankruptcy proceedings shall be accurate, complete and supported by competent and reliable evidence.
- Affidavits shall be signed in the presence of a notary.
- Banks/servicers may not rely on an inaccurate affidavit to obtain a foreclosure judgment.
- Banks/servicer must have standards for qualifications, training and supervision of employees that sign affidavits; and shall ensure that they have an adequate number of employees with reasonable time to prepare, verify and execute affidavits.
- Banks/servicers shall not pay incentives to employees or third parties to encourage speed in the signing of affidavits.

B. **Pre-foreclosure referral notice to borrower: Notice to borrower of their loan status 14 days before a delinquent loan is referred to a foreclosure attorney. The notice shall contain the following:**
- Facts supporting the bank's/ servicer's right to foreclose.
- The borrower's right to request:
  - The borrower's payment history
  - A copy of the mortgage note with all endorsements
  - The name of the investor that holds the borrower's loan.
- An itemized plain language account summary that contains:
  - The amount owed and amount required to bring the loan current
  - Terms of the loan
  - How to contact the bank/servicer or a HUD housing counselor
- A summary of the loss mitigation efforts the bank/servicer has undertaken to date.

C. **Banks/Servicers shall properly document their authority to file a foreclosure action.**
- The bank/servicer must document its right to foreclose on a borrower.
- The bank/servicer must plead the basis for its authority to foreclose.
- The bank/servicer shall summarize this authority to foreclose in the 14 day pre-foreclosure notice to the borrower.

D. **New protections to ensure accuracy of borrower's account information**
- Bank/servicer shall maintain procedures to ensure the accuracy of homeowners' accounts.
- Bank/servicer shall promptly apply homeowners' payments, including posting within 2 days.
- Bank/servicer shall accept and apply (at least two) partial payments when the payments come within $50.00 of the scheduled payment.
- When banks/servicers use suspense accounts for mortgages, will follow new requirements:
  - disclose to borrower that a payment has been placed in a suspense account
  - apply the full payment as of date there is enough for one payment in the suspense account
  - cannot use suspense account funds to pay servicer fees until all principal, interest and escrow amounts are paid.
- Banks/servicers shall provide to borrowers a monthly billing statement showing:
  - The total amount due
  - Allocation of payments, including postings to suspense accounts
  - Unpaid principal
  - Fees and charges
  - Escrow balance
  - Reasons for payment changes, 21 days before change.
- Banks/servicers shall adopt enhanced billing dispute procedures including:
  - Implement methods for lodging complaints, including toll free numbers on the monthly billing statement and email access
  - Maintain adequate staff to respond properly
  - Establish a dispute escalation process
  - Implement procedures to promptly fix errors – including inaccurate reports to credit reporting agencies.
- The accuracy of the bank's/servicer's accounts systems shall be reviewed periodically by an independent reviewer.
- Banks/servicers shall send an itemized account summary to homeowners 14 days before referral to foreclosure.

E. **Required reviews of foreclosure documents**
Banks/servicers shall conduct quarterly reviews of: a sampling of affidavits, sworn statements documents used to foreclose in non-judicial states, ownership information and loss mitigation summaries prepared by bank/servicer employees and agents to ensure the documents are incompliance with the law and this agreement.

F. **Third-Party provider oversight**
Banks/servicers will adopt procedures to oversee foreclosure trustees, independent contractors, and its agents including foreclosure firms, sub-servicers, agents, subsidiaries and affiliates.

2

II. <u>**ENHANCED LOSS MITIGATION PROTECTION FOR THE BORROWER**</u>

    A.    **Loss Mitigation Requirements**
- Notify homeowner of all loss mitigation options prior to referral to foreclosure.
- Upon receipt of a homeowner's loan modification application, the bank/servicer shall evaluate the homeowner for all available loan modifications before referral to foreclosure.
- Servicer shall offer a loan modification if it is NPV positive.
- Homeowners may re-apply for a HAMP modification if the homeowners applied under old HAMP standards where there was no pre-qualification process.
- HAMP trial plans shall be promptly converted to permanent modifications.

    B.    **Loan modification timelines**
- Banks/servicers must review and make a determination on a borrower's completed loan modification application within 30 days of receipt.
- Banks/servicers must follow either HAMP or GSE timelines on the loss mitigation process, whichever is shorter, for all loans. These timelines include things such as the time in which banks/servicers must inform a borrower that a loan modification application has been received, what documentation is missing, and how quickly the bank/servicer must inform the borrower of a loan modification decision.

    C.    **Dual track restricted**

        **1. Pre-foreclosure referral**
- If bank/servicer receives a complete loan modification application by day 120 of delinquency, bank/servicer must review and make a determination on the application prior to referring the loan to foreclosure.
- If bank/servicer receives a substantially complete loan modification application by day 120 of delinquency, bank/servicer must provide borrower an additional 10 days in which to complete the application. If bank/servicer receives a complete application by the end of the 10-day extension, bank/servicer must review and make a determination on the application prior to referring the loan to foreclosure.

        **2. Post Foreclosure Referral**
- Once a loan has been referred to foreclosure, if the borrower submits a complete loan modification application within 30 days after the attorney letter is sent to the borrower, the bank/servicer must not move for a foreclosure judgment or seek a foreclosure sale until it has completed its

3

review and determination of the application. If servicer offers the borrower a loan modification, the servicer must continue to delay any action in the foreclosure proceeding until the borrower accepts or denies the offer. If the borrower accepts the offer, the foreclosure proceeding is suspended unless the borrower fails to perform on the loan modification. The borrower may accept verbally, in writing or by making the first trial payment.
- If borrower submits a complete loan modification at any time after 30 days following the mailing of the attorney letter but prior to 37 days before a scheduled foreclosure sale, the servicer must complete its review of the application prior to going to foreclosure sale. If the servicer offers the borrower a loan modification, servicer must delay the sale if necessary to provide the borrower 14 days in which to accept or deny the offer, and, if the borrower accepts, must continue to delay the sale unless the borrower fails to perform on the modification.
- If borrower submits a complete loan modification with 37 to 15 days before a scheduled foreclosure sale, the servicer shall conduct an expedited review. If the servicer offers the borrower a loan modification, servicer must delay the sale to provide the borrower 14 days in which to accept or deny the offer, and, if the borrower accepts, must continue to delay the sale until the borrower fails to perform on the modification.

D.  **Communication of borrower's status**
- Banks/servicers shall ensure timely and accurate communication of a homeowner's loss mitigation status to its foreclosure attorneys and court mediators.

E.  **Single point of contact (SPOC).**
- The bank/servicer shall establish an easily accessible SPOC assigned to each homeowner who reaches out to the bank/servicer due to difficulty making their loan payments.

F.  **Duties of SPOC**
- One point of communication with homeowner
- Explain loss mitigation options and requirements
- Coordinate document submissions
- Inform homeowner of loss mitigation status
- Ensure homeowner is considered for all loss mitigation options
- Ability to access individuals with ability to stop foreclosure proceedings

G.  **Communication with homeowners**
- Servicer must commence outreach efforts to borrowers to communicate loss mitigation options within the timelines under HAMP or GSE's whichever is earlier. These outreach efforts must be more than pre-recorded automatic messages if those fail to result in contact with the borrower.

- Borrower notices must include contact information for national or state foreclosure assistance hotlines and state housing counseling resources.
- Servicer must communicate with the borrower's authorized representative, upon written request of the borrower. This includes communicating with state attorneys general or financial regulator offices acting on a written complaint submitted by a borrower and forwarded to the servicer.
- Servicer must cease all collection efforts while a complete loan modification application is under review or the borrower is making timely payments under a trial modification.

H.  **Protections for military personnel**
- The banks/servicers shall comply with Service Members Civil Relief Act and similar state laws and the banks/servicers shall engage independent consultants to review foreclosures from January 1st 2009 to December 31, 2010 for compliance with SCRA.
- If a person has received military orders to commence active military service or has been in the military within the last 9 months and is in default on his or her mortgage, he or she is entitled to a specially SCRA trained SPOC. If the persons' are not in default, he or she is entitled to be routed to an employee specially trained on the SCRA.
- Bank/Servicer must assess whether a troubled borrower is SCRA eligible not only at the time of default as required by SCRA, but bank/servicer must go beyond the requirements of the SCRA and assess if a borrower is SCRA eligible in the following additional circumstances: 1) before a loan is referred for foreclosure, 2) within 7 days of a foreclosure sale, and 3) the later of promptly after a foreclosure sale and within three days before the regularly scheduled end of any redemption period.
- When a service member requests a reduction in the interest rate on debt pursuant to the SCRA but does not provide the documentation required by the SCRA (military orders), the servicer shall accept orders from the commanding officer.
- Servicers shall notify borrowers who are 45-60 days delinquent that they may be entitled to certain protections under the SCRA and to counseling. The servicer shall include a toll-free number on the notice.
- For active duty service members in combat areas, servicers shall not sell or foreclose on their homes (unless there are investor limitations). This is an improvement on the SCRA which provides in Section 533 that a stay of a foreclosure or sale can only be requested if the mortgage debt was incurred prior to military service. Now those in combat areas can receive this protection regardless of when the debt was incurred.
- (Non-SCRA provision) Servicers shall not require a service member to be delinquent to qualify for a short sale, loan modification or other loss mitigation relief if the service member is suffering from financial hardship and is eligible for loss mitigation. (This is the basic standard for any non-service member person. You can qualify for loss mitigation if you are in default or in imminent default.)

5

- (Non-SCRA provision) Many times when a service member receives Permanent Change of Station (PCS) orders they are underwater on their home so they can't sell, it is difficult to rent at the mortgage amount, they can't get a modification because they are not in default, and they can refinance because their old home will no longer be their primary residence. Under this new provision, when determining whether a service member is suffering a financial hardship with regard to a short sale or deed in lieu, the bank/servicer shall take into account whether the service member has been ordered to relocate to a new duty station at least 75 miles away from his/her former home. With regard to a loan modification, the servicer shall consider as part of the hardship determination if the service member must relocate. (Non- SCRA provision) The Section prohibits the servicer from making inaccurate report to credit reporting agencies when a service member who has not defaulted before relocating obtains a short sale, loan modification or other loss mitigation.

I. **Banks/Servicers shall develop loan portals where:**
   - Borrowers can check, at no cost, the status of their loan modifications.
   - Housing counselors can communicate with banks/servicers.
   - Banks/Servicers shall update the status of pending loan modifications every 10 days (business).

J. **Denial notice requirements**
   - The loan modification denial notice shall contain the reasons for denial and inform homeowner that he/she has 30 days to rebut the denial.
   - If a modification is denied due to investor disallowance, the bank/servicer shall disclose the name of the investor and summarize the reasons for denial.
   - If a modification is denied because it is NPV negative, the servicer shall provide in the denial notice the monthly gross income and property value utilized.

K. **Independent evaluation of loan modification denial**
   - All loan modification denials must be submitted for an additional independent internal review

L. **Appeal process**
   - After the bank/servicer denies a loan modification, homeowners have 30 days to request an appeal of the denial, unless the denial is: 1) an ineligible mortgage, 2) an ineligible property, 3) the offer was not accepted by borrower, or 4) the loan was previously modified.
   - NPV calculation denial: the borrower can contest the property value used by the bank/servicer in the NPV test by requesting a full appraisal.
   - The bank/servicers shall respond to the homeowner's appeal in 30 days.
   - If the bank/servicer denies the modification after the appeal, the denial letter shall include a description of other available loss mitigation options.

M. **General loss mitigation requirements**
- The bank/servicers shall maintain adequate staffing and systems for tracking homeowner's loan modification documents.
- The bank/servicer shall maintain adequate staffing and caseload limits for SPOCs and employees handling loss mitigation.
- The banks/servicers shall establish reasonable minimum experience and training requirements for loss mitigation staff.
- The banks/servicers shall not use compensation arrangements that encourage foreclosure over loss mitigation.
- The banks/servicers shall not require a homeowner to waive claims and defenses as a condition to receive a loan modification (except to settle litigation).
- The banks/servicers shall not charge homeowners a fee to apply for a loan modification.

N. **Proprietary First Lien Modifications**
- The banks/servicers shall make public all information necessary to apply and qualify for all proprietary loan modifications.
- Proprietary loan programs shall be designed to produce sustainable modifications and affordable payments.
- The banks/servicers shall track the outcomes, characteristics and performance of proprietary loan modifications.

O. **Proprietary 2nd Lien Modifications**
- The banks/servicers shall make public all information necessary to apply and qualify for all proprietary second lien loan modifications.
- Proprietary second lien loan programs shall be designed to produce sustainable modifications and affordable payments.

P. **Short Sales**
- Banks/servicers shall make information publicly available on short sale requirements.
- Banks/servicers shall develop a short sale process that allows homeowners to obtain a short sale evaluation before putting the home on the market.
- Banks/servicers shall confirm in writing that a request for short sale has been received.
- The confirmation of receipt shall include information on the banks'/servicers' short sale process. The bank shall send the homeowner written notice of any missing documents.
- Banks/servicers must give notice of any missing documents within 30 days.

- Q. **Transfer of Servicing of Loans Pending for Permanent Loan Modification**
  - At the time of transfer or sale, the bank/servicer shall inform the successor servicer if a loan modification is pending.
  - Any contract for sale or transfer must obligate the successor to accept and continue processing loan modification requests and honor trial and permanent loan modification agreements.
  - Any contract for sale or transfer shall designate the homeowner as a third-party beneficiary.
  - When a bank/servicer acquires servicing rights from another servicer, the bank/servicer will continue processing loan modifications and honor trial and permanent modifications.

- R. **Loss Mitigation During Bankruptcy**
  Bank/Servicer cannot deny loss mitigation to a borrower on the basis that a borrower is a debtor in bankruptcy.

III. **RESTRICTIONS ON SERVICING FEES**

- A. **Default fees generally**
  - All default, foreclosure fees and bankruptcy related service, including third-party fees shall be bonafide, reasonable in amount, and disclosed to the borrower in detail.
  - Banks/Servicer shall keep current its schedule of fees charged to homeowners. The fee schedule shall identify each fee, explain the fee and state the maximum or how the fee is calculated.
  - Banks/Servicer may collect a default-related fee if the fee is for reasonable and appropriate services, is disclosed to the homeowner and is not prohibited by law, the loan instruments or the settlement agreement.

- B. **Attorneys' fees**
  - Attorneys' fees charged in foreclosure shall only be for work actually performed and shall not exceed reasonable and customary fees.
  - If a foreclosure action is terminated prior to final judgment, the homeowner shall only be liable for work actually performed.

- C. **Late Fees**
  - If a homeowner is delinquent on two payments and then makes a full payment that is applied to the current payment, the bank/servicer cannot charge a late fee on the older delinquent amount.
  - Banks/servicers shall not collect late fees: 1) while a loan modification is being considered 2) while borrower is making timely trial payments and 3) while a short sale is being evaluated.

- D. **Third-Party Fees**

8

Banks/servicers shall not impose unnecessary or duplicative property inspection, property preservation, or valuation fees on the homeowner.

Preservation fees
- No property preservation fees shall be imposed on homeowners with a pending loss mitigation application or in a loss mitigation program unless there is a reasonable basis.

Inspection fees
- Inspection fees shall not be imposed any more frequently than GSE timeframes allow.

BPO Valuations
- Valuation fees may only be every 12 months unless requested by the homeowner for a loan mod or short sale or required as part of the foreclosure process.

Price of fees charged
- Default and foreclosure-related services performed by third-parties shall be at reasonable market value. If the third party is an affiliate, the bank/servicers shall not charge the homeowner more than the market rate based on annual market reviews performed by an independent third party.

Referral fees
- Banks/servicers cannot collect unearned fees or give or accept referral fees from third-parties.

No mark-ups
- Banks/servicers cannot impose its own mark-up on bank initiated default/foreclosure services.

E. **Force-Placed Insurance**
- Banks/servicers shall not obtain force-placed insurance unless there is a reasonable cause to believe a homeowner has not paid for property insurance.
- If a homeowner pays into an escrow account, the bank/servicers shall continue to advance payments to the insurer regardless of homeowner payment.
- Disclosures to homeowners: The banks/servicers must send a written notice to the homeowner containing the following:
  - A reminder that the obligation is due and no payment was made;
  - How to prove insurance coverage;
  - That the bank/servicer may obtain coverage at the homeowner's expense and that the cost may be significantly higher and may only protect the mortgage holder;

- A notice that the bank/servicer will set up an escrow account and advance the insurance premiums if the borrower wishes;
- A second written notice must be sent 30 days after the first mailing;
- The bank/servicer shall accept any reasonable form of written confirmation of coverage from a homeowner;
- Within 15 days of receipt of evidence of coverage, the bank/servicer shall terminate the force-placed insurance and refund to the homeowner all premiums.
- The bank/servicer shall continue to make insurance payments if there is a lapse in payment and the payments are escrowed.
- Force-placed insurance must be purchased for a commercially reasonable price.

## IV. MEASURES TO DETER COMMUNITY BLIGHT

A. When the servicer makes a decision not to pursue a foreclosure action, the servicer must notify the borrower and local authorities (tax authorities, courts, code enforcement departments, etc.) of servicer's decision to release the lien and not pursue foreclosure on the property.

B. In the 14-day pre-foreclosure notice required to be sent to borrowers, servicer must inform the borrower that the borrower continues to have a responsibility to maintain the property and pay taxes until a sale or transfer of title has occurred. Servicer must also request borrower tell the servicer if the borrower intends to abandon the property so that they can discuss the possibility of surrendering the property in exchange for compensation.

C. Servicer must develop and implement policies to enhance its participation in state and local anti-blight programs such as land banks/servicers, neighborhood stabilization programs, and nonprofit redevelopment programs.

D. Servicer must implement policies to ensure that REO properties do not become blighted.

E. **Tenants' Rights**
- Servicer must comply with applicable state and federal laws governing the rights of tenants living in foreclosed residential properties; and, the servicer must develop and implement written policies and procedures to ensure compliance with those laws.