# EXHIBIT 16

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITIGROUP GLOBAL MARKETS REALTY
CORP.,

                                   Plaintiff,

        -against-

ACCREDITED HOME LENDERS, INC.,

                                   Defendant.



ECF CASE
08-CV-3545-(RJH) (DCF)

RECEIVED
JUL 30 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**FIRST AMENDED COMPLAINT**

        Plaintiff CITIGROUP GLOBAL MARKETS REALTY CORP. ("Plaintiff" or

"Citigroup"), by and through its undersigned attorneys, Thacher Proffitt & Wood LLP, as and for

its Complaint against Defendant ACCREDITED HOME LENDERS, INC. ("Defendant,"

"Accredited," or "AHL") alleges as follows:

### NATURE OF ACTION

        1.      This is an action for declaratory judgment, breach of contract, unjust enrichment,

fraudulent inducement, trespass to chattels and indemnity in connection with Defendant's

delivery of materially non-conforming and in some instances non-existent loans pursuant to an

agreement to purchase a pool of mortgage loans.  Plaintiff also complains of other wrongful

actions by Defendant while servicing those loans.

### JURISDICTION AND VENUE

        2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332 because the parties are citizens of different states and the matter in controversy exceeds

$75,000, exclusive of interest and costs.

        3.      This Court has personal jurisdiction over Defendant pursuant to Section 302(a)(1)

of the Civil Practice Law and Rules ("CPLR") because Plaintiff's causes of action arise from and

are related to Defendant's purposeful activity, business transactions and contracts to supply services in this State. By purposefully engaging in business activities within this State, Defendant sought to invoke the benefits and protection of New York law.

4.      This Court has personal jurisdiction over Defendant pursuant to Section 302(a)(2) of the CPLR because Plaintiff's causes of action arise from and are related to Defendant's tortious acts within this State.

5.      This Court has personal jurisdiction over Defendant pursuant to Section 302(a)(3) of the CPLR because Plaintiff's causes of action arise from and are related to Defendant's tortious acts without the State causing injury to Plaintiff and Plaintiff's property within this State, and Defendant (1) regularly does and solicits business in this State, (2) derives substantial revenue from services rendered in this State and from interstate commerce, and (3) expected or should reasonably have expected its tortious acts to have consequences in this State.

6.      This Court has personal jurisdiction over Defendant because, by its Notice of Removal, Defendant has voluntarily appeared in this Court and has invoked this Court's jurisdiction in connection with this action.

## THE PARTIES

7.      Plaintiff Citigroup is a New York corporation with its principal place of business at 390 Greenwich Street, New York, New York 10013.

8.      Upon information and belief, Defendant Accredited is a California corporation with its principal place of business in San Diego, California and is authorized to transact business in the State of New York. Upon information and belief, Defendant Accredited has numerous offices located within this State for the purpose of transacting business within this State.

## **FACTS**

9.    The parties have entered into a Mortgage Loan Purchase and Interim Servicing Agreement dated as of June 1, 2005, as amended (the "Loan Purchase Agreement"). The Loan Purchase Agreement defines Accredited as "Seller" and Citigroup as "Purchaser" and memorializes the terms and conditions according to which the parties agreed that Accredited would sell pools of mortgage loans to Citigroup.

**Loan Purchase Agreement Representations**

10.    The Loan Purchase Agreement contains a number of representations, warranties and covenants on the part of Defendant as the Seller, including representations and warranties regarding the individual mortgage loans.

11.    The following are among those representations, warranties and covenants contained within the Loan Purchase Agreement (capitalized terms in this paragraph not otherwise defined herein have the meanings ascribed to them in the Loan Purchase Agreement):

> (a) The information set forth in the related Mortgage Loan Schedule and the Mortgage Loan data delivered to the Purchaser in the Electronic Data File is complete, true and correct (Section 7.02 (i));
>
> (b) All payments required to be made within 29 days prior to the close of business on the Closing Date for such Mortgage Loan under the terms of the Mortgage Note have been made (Section 7.02 (ii));
>
> (c) The Mortgaged Property is located in the state identified in the related Mortgage Loan Schedule and is improved by a Residential Dwelling (Section 7.02 (iv));
>
> (d) The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of the Mortgage Note and/or the Mortgage, or the exercise of any right thereunder, render the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto (Section 7.02 (vi));

(e) The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines of the Seller in effect at the time the Mortgage Loan was originated (Section 7.02 (vii));

(f) Any and all requirements of any federal, state or local law including, without limitation, usury, truth in lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, fair housing, disclosure laws and all predatory, abusive and fair lending laws applicable to the origination and servicing of mortgage loans of a type similar to the Mortgage Loans have been complied with and the consummation of the transactions contemplated hereby will not involve the violation of any such laws (Section 7.02 (ix));

(g) The Mortgage has not been satisfied, cancelled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, cancellation, subordination, rescission or release (Section 7.02 (x));

(h) The related Mortgage is properly recorded and is a valid, existing and enforceable mortgage with either a first lien and first priority security interest with respect to each Mortgage Loan which is indicated by the Seller to be a First Lien (as reflected on the Mortgage Loan Schedule), or a second lien and second priority security interest with respect to each Mortgage Loan which is indicated by the Seller to be a Second Lien (as reflected on the Mortgage Loan Schedule), in either case, on the Mortgaged Property, including all improvements on the Mortgaged Property (Section 7.02 (xi));

(i) The Mortgage Note and the related Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms (Section 7.02 (xii));

(j) The origination, servicing and collection practices used by the Seller with respect to each Mortgage Note and Mortgage, including without limitation the establishment, maintenance and servicing of the Escrow Accounts and Escrow Payments, if any, since origination have been in all material respects legal, proper, prudent and customary in the mortgage origination and servicing industry. The Mortgage Loan has been serviced by the Seller and any predecessor servicer in accordance with all applicable laws, rules and regulations and the terms of the Mortgage Note and Mortgage (Section 7.02 (xxii));

(k) The Mortgaged Property is free of damage and waste and is in good repair, and there is no proceeding pending or threatened for the total or partial condemnation thereof nor is such a proceeding currently occurring (Section 7.02 (xxiii));

(l) No Mortgage Loan was made (a) to finance the construction or rehabilitation of a Mortgaged Property or (b) to facilitate the trade-in or exchange of a Mortgaged Property (Section 7.02 (xxvii));

(m) The Mortgaged Property is lawfully occupied under applicable law; all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities. No improvement located on or being part of any Mortgaged Property is in violation of any applicable zoning and subdivision law, ordinance or regulation (Section 7.02 (xxix));

(n) No error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to origination of a Mortgage Loan has taken place on the part of any person, including without limitation the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application of any insurance in relation to such Mortgage Loan (Section 7.02 (xxx));

(o) No Mortgage Loan is among other things, a "high cost", "covered", "abusive", "predatory", or "high risk home" mortgage loan (or a similarly designated loan using different terminology) under any federal, state or local law (Section 7.02 (xxxiv));

(p) The Mortgage Loan is in compliance with all requirements set forth in the related Confirmation, and the characteristics of the related Mortgage Loan Package as set forth in the related Confirmation are true and correct, subject to adjustments agreed to by the Purchaser (Section 7.02 (xliii));

(q) The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage on the Mortgaged Property and the security interest of any applicable security agreement or chattel mortgage referred to in (xi) above (Section 7.02 (xlvii));

(r) The Mortgage Loan was not prepaid in full prior to the Closing Date and the Seller has not received notification from a Mortgagor that a prepayment in full shall be made after the Closing Date (Section 7.02 (lxvi)); and

(s) The Mortgage Loan Documents and any other documents required to be delivered with respect to each Mortgage Loan have been delivered to the Purchaser or its nominee all in compliance with the specific requirements of this Agreement (Section 7.01 (vii)).

## The Mortgage Loan Pool at Issue and the Confirmation Letter Terms and Details

12.    Subject to the Loan Purchase Agreement described above, the parties entered into a Confirmation Letter dated as of March 15, 2007 (the "Confirmation Letter" and, collectively with the Loan Purchase Agreement, the "Agreements"). The Confirmation Letter documents the parties' agreement for Defendant to sell to Plaintiff a pool of mortgage loans in the aggregate unpaid principal balance of approximately $2,769,000,000 (the "Mortgage Loan Pool"). A significant number of the purported mortgage loans that were transferred from Accredited to Citigroup pursuant to the Agreements are the subject of this action (the "Subject Assets" or "Assets"). The Subject Assets are governed by both of the Agreements, which are in turn expressly governed by New York law.

13.    The transaction which was memorialized in the Confirmation Letter was proposed, negotiated and finalized in the course of just a few days in March 2007. It began with Accredited seeking bidders to purchase a certain pool of loans. The deal was a "rescue" transaction whereby Accredited was required to sell the loans quickly in order to raise cash. It was therefore understood that there would be no pre-closing due diligence period, and that due diligence would necessarily follow the closing of the transaction. The parties further understood that there would be a post-closing purchase price adjustment based upon post-closing due diligence review of issues related to the market values of the properties securing the loans, or the credit risks of their borrowers.

14.    The pool of loans was described by reference to a data file that contained certain relevant facts concerning the over 15,000 purported loans which were for sale, each of which was shown as having a certain unpaid principal balance, an applicable interest rate and many other facts concerning the relevant loans (the "Data File").

6

15.     The parties developed the Confirmation Letter terms by email correspondence, and a three page memorandum agreement was quickly prepared and became the genesis of the Confirmation Letter.   In the course of reaching the terms of an agreement for Citigroup to purchase the loans from Accredited, Accredited represented the Data File as containing the facts which were the essence of the transaction.  Specifically, the first paragraph of the Confirmation Letter sets forth that the transaction is the sale of the "right, title and interest in the Mortgage Loans" listed in the Data File.

16.     The Confirmation Letter contains a specific representation that "[t]he Mortgage Loans were originated by the Seller."

17.     The Confirmation Letter contains a specific representation (at Section 17) that "The Mortgage Loans will substantially conform to the pool characteristics as set forth in the Data File."  This was a factual representation that the mortgage loans being sold were as set forth in the Data File.

18.     As set forth below, this essential factual representation contained within the Confirmation Letter was not true.

19.     The Confirmation Letter also contains a specific representation (at Section 18) that "No loan substitutions are allowed without the Purchaser's explicit approval."  Plaintiff has never given its approval to any loan substitutions for the Mortgage Loan Pool.   This representation also was incorrect.  As set forth in the Chart at paragraph 83, there were over 200 substituted Assets, evidencing Defendant's breach of Section 18 of the Confirmation Letter. Plaintiff is entitled to have Defendant repurchase these Assets.

20.     The Data File controlled the price paid by Plaintiff to Defendant.  Plaintiff paid to Defendant 91.68 percent of the unpaid principal balance for each mortgage loan shown in the

Data File. An additional 150 basis points, or 1.5% of the overall unpaid principal balance of the Mortgage Loan Pool, was withheld from payment pursuant to the Confirmation Letter (the "Hold Back"), discussed in detail below.

21.     The Subject Assets were transferred by means of a closing that occurred on or about March 16, 2007.

22.     The Subject Assets' deficiencies at the time of closing were, in many cases, fundamental. Numerous mortgage loans were involved in expensive borrower litigation and over one hundred of the "mortgage loans" were non-existent at the time of closing.

**Loan Purchase Agreement Breaches**

23.     Under Section 7.03 of the Loan Purchase Agreement, Accredited is obligated to indemnify Citigroup for any and all "losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting" to Citigroup "from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Seller's representations and warranties."

24.     This indemnity is applicable to each of the Subject Assets.

25.     Some of the Subject Assets were transferred to Citigroup in breach of Section 7.02 (xxxiv) of the Loan Purchase Agreement because their interest rates, points, fees paid in connection with their origination, loan terms, and/or issues with their documentation make them "high cost," "abusive," "predatory," or "high risk" (or similar designation) under applicable laws or regulations, and/or violative of same.

26.     Citigroup's remedy for breaches of Section 7.02 (xxxiv) of the Loan Purchase Agreement (regarding "high cost" loans) is not merely a purchase price adjustment. Rather, under the terms of the Confirmation Letter, Citigroup has an unlimited and express right to

demand that Accredited repurchase any assets in breach of Section 7.02 (xxxiv) of the Loan Purchase Agreement.

27.    Accredited admits that approximately twenty of the complained of loans were "high cost" loans and further acknowledges that, as such, they are not even arguably subject to any limitation of liability, under the express terms of the parties' Agreements.

28.    Accredited has breached the representations and warranties it made in the Loan Purchase Agreement by selling Citigroup Subject Assets which were defective because they were sold without any effective right to proceed against collateral.

29.    Accredited has breached the representations and warranties it made in the Loan Purchase Agreement by selling Citigroup Subject Assets in which Accredited's second lien position had already been extinguished prior to the sale.

30.    Accredited has breached the representations and warranties it made in the Loan Purchase Agreement by selling Citigroup Subject Assets which had already been paid in full at the time of sale.

31.    Accredited has breached the representations and warranties it made in the Loan Purchase Agreement by selling Citigroup Subject Assets which were third liens, and not the second liens which they were represented to be at the time of sale.

32.    Accredited has breached the representations and warranties it made in the Loan Purchase Agreement by selling Citigroup Subject Assets which were subject to other, unreleased mortgages which threatened the title transferred by Accredited to Citigroup at the time of the sale.

33.    The sale of at least one of the Subject Assets breached the representations and warranties Accredited made in the Loan Purchase Agreement because at the time of sale no "Residential Dwelling," as defined in the Loan Purchase Agreement was on the property.

34.    Accredited's breaches of its representations and warranties in the Loan Purchase Agreement are, in certain cases, the subject of actively litigated borrowers' claims concerning the Subject Assets involved. As detailed *infra*, these include borrower claims for loan rescission due to circumstances surrounding the origination and closing of the loans (*e.g.*, claims for failure to provide required Truth in Lending Act disclosures, for excessive and/or illegal closing fees, and for outright fraudulent origination) – circumstances indicating breaches by Accredited of representations and warranties contained in the Loan Purchase Agreement.

35.    The Subject Assets breach the terms of the Loan Purchase Agreement because they do not substantially conform to the characteristics of the Mortgage Loan Pool that was represented and warranted in the numerous terms set forth above.

36.    Citigroup has provided timely and adequate notice to Accredited of its breaches of its representations and warranties in the Loan Purchase Agreement with respect to the Subject Assets.

37.    Specifically, the relevant nineteen representations and warranties were breached through a variety of loan, lien and collateral deficiencies, as follows:

(a) Section 7.02 (i), which represents that the information set forth in the related Electronic Data File is complete, true and correct, was breached, as detailed in the Charts set forth herein at paragraphs 82 through 84, in the following manner:

(1) over a hundred of the Subject Assets were sold as loans but were in reality already Real Estate Owned Property at the time of sale (the "REO Properties");

(2) twenty-one of the loans were actually "high cost" or otherwise in violation of predatory lending laws (the "High Cost Loans");

10

(3)  for sixteen of the loans, the liens sold were actually extinguished prior to sale (the "Sixteen Extinguished Liens");

(4)  several of the loans either were or were about to become the subject of litigation because they are or were subject to undisclosed infirmities including Truth in Lending Act violations, unreleased mortgages, fraudulent origination, and/or violations of local laws;

(5)  one loan (AHL Loan #111076102) was sold with no collateral at all;

(6)  another loan (AHL Loan #8884798153) was paid in full prior to purchase;

(7)  yet another loan (AHL Loan #511011395) was a third lien loan, and not the second lien loan represented at the time of sale; and

(8)  253 loans transferred to Plaintiff were not listed in the Data File and thus were loans unknowingly purchased by Citigroup (the "Substituted Loans").

(b) Section 7.02 (ii), which states that all loan payments required to be made within 29 days prior to the close of business on the Closing Date have been made by the Closing Date, was breached by the many loans in early payment default ("EPD") at the time the loans were sold.

(c) Section 7.02 (iv), which requires the property to be improved by a residential dwelling, was breached by the transfer of AHL Loan #13460126 (the "Tobacco Loan"), which was secured by a property that did not have a residential dwelling at the time of sale.

(d) Section 7.02 (vi), which requires that the loan is not subject to any right of rescission, was breached by the sale of AHL Loan #408278660 (the "Bouwman Loan"), AHL Loan #602219937 (the "Luft Loan"), AHL Loan #8883207271 (the "Dodd Loan"), and AHL Loan #s 701300029, 701300030 (the "Collinge Loan"), which are subject to borrowers' claims seeking rescission of the loans.

(e) Section 7.02 (vii), which requires that the Mortgage Loan was underwritten in accordance with Accredited's Underwriting Guidelines, has been violated by the sale of the Tobacco Loan which could not have met those guidelines given the lack of a residential dwelling on the Property.

(f) Section 7.02 (ix), which requires compliance with, among other things, all federal, state or local law including usury, truth in lending and all predatory and abusive lending laws, has been breached by the Bouwman Loan; the Luft Loan; AHL Loan #609146047 (the "Donnelly Loan"); AHL Loan #8889555358 (the "Phillips Loan"); AHL Loan #508257891 (the "McDevitt Loan"); the Dodd Loan; AHL Loan #510170527 (the "Craft Loan"); and the Collinge Loan.    The borrowers of these loans have asserted a variety of claims including violations of

the Truth in Lending Act, closing practices and fees that violate applicable state law, and fraudulent loan origination. In addition, each of the High Cost Loans is in breach of this provision as well.

(g) Section 7.02 (x), which requires that the Mortgage has not been satisfied, cancelled, subordinated or rescinded and that the Mortgaged Property has not been released from its lien, has been breached by the Sixteen Extinguished Liens, because those loans' liens were extinguished before sale. Additionally, AHL Loan #8884798153 breaches this representation because it had already been paid in full at the time of sale; AHL Loan #111076102 breaches this representation because the Mortgage is defective in that it lacks collateral; and AHL Loan #511011395 breaches this representation because the third lien position is subordinated to the second lien position represented at the time of sale.

(h) Section 7.02 (xi), which requires that the loans were properly recorded and are valid, existing and enforceable with either a first lien (identified as a first lien); or a second lien (identified as a second lien), has been breached by (1) the Sixteen Extinguished Liens; (2) AHL Loan #111076102, which was sold with no underlying collateral; (3) AHL Loan #511011395, which is not a second lien but a third lien; and (4) the Donnelly Loan, which is encumbered by two unreleased mortgages clouding title and jeopardizing the lien.

(i) Section 7.02 (xii), which requires that the Mortgage Note and the related Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms, has been breached by the transfer of the REO Properties and the Sixteen Extinguished Liens.

(j) Section 7.02 (xxii), which requires that the origination, servicing and collection practices used by Accredited have been legal, proper, prudent and customary in the mortgage origination and servicing industry, has been breached by the Bouwman Loan, the Donnelly Loan, the Phillips Loan, the Luft Loan, the McDevitt Loan, the Dodd Loan, the Craft Loan, and the Collinge Loan, in which the borrowers have alleged improper origination and/or disclosures at closing.

(k) Section 7.02 (xxiii), which requires that Mortgaged Property is free of damage and waste and is in good repair, and there is no proceeding pending or threatened for the total or partial condemnation thereof nor is such a proceeding currently occurring, was breached by the transfer of the Tobacco Loan, because the property securing the Tobacco Loan was the subject of a condemnation proceeding due to the damage and waste to the building on the property.

(l) Section 7.02 (xxvii), which requires that no Mortgage Loan was made (a) to finance the construction or rehabilitation of a Mortgaged Property or (b) to facilitate the trade-in or exchange of a Mortgaged Property, was breached by the transfer of the Tobacco Loan, the proceeds of which appear to have been used for such purposes.

(m) Section 7.02 (xxix), which requires that the Mortgaged Property is lawfully occupied, has been breached by the Tobacco Loan, which had no residential dwelling at the time of sale and which was in violation of applicable zoning law.

(n) Section 7.02 (xxx), which requires that there has been no error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to origination of a Mortgage Loan, has been breached by the Bouwman Loan, the Donnelly Loan, the Phillips Loan, the Luft Loan, the McDevitt Loan, the Dodd Loan, the Craft Loan, and the Collinge Loan, which all include allegations of Truth in Lending Act violations, state law violations and otherwise fraudulent and/or improper origination.

(o) Section 7.02 (xxxiv), which requires that no loan is "high cost," "abusive," or "predatory," or similar terminology, has been breached by the High Cost Loans.

(p) Section 7.02 (xliii), which requires that the Mortgage Loan is in compliance with all requirements set forth in the related Confirmation, and the characteristics of the related Mortgage Loan Package as set forth in the related Confirmation are true and correct, has been breached by the REO Properties, the Sixteen Extinguished Liens, the High Cost Loans, the Substituted Loans, the Bouwman Loan, the Donnelly Loan, the Phillips Loan, the Luft Loan, the McDevitt Loan, the Dodd Loan, the Craft Loan, the Collinge Loan and AHL Loan #s 111076102, 8884798153, and 511011395, because they all fail to meet the mortgage loan pool characteristics for the reasons detailed herein, in violation of Paragraph 17 of the Confirmation Letter, which requires that the loans will substantially conform to the mortgage loan pool characteristics as set forth in the Data File, and Paragraph 18 of the Confirmation Letter, which expressly states that "[n]o loan substitutions are allowed without the Purchaser's explicit approval."

(q) Section 7.02 (xlvii), which requires that the Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage on the Mortgaged Property, has been breached by the Sixteen Extinguished Liens, because those loans' liens were extinguished before sale, and by AHL Loan #111076102, which was sold with no underlying collateral.

(r) Section 7.02 (lxvi), which requires that the Mortgage Loan was not prepaid in full prior to the Closing Date, has been breached by AHL Loan #8884798153, which was paid in full prior to purchase.

(s) Section 7.01 (vii), which requires that the Mortgage Loan Documents and any other documents required to be delivered with respect to each Mortgage Loan have been delivered to the Purchaser, has been breached because many of the individual Mortgage Loan files serviced by Accredited and transferred by Accredited to Plaintiff have missing or defective documentation as detailed on Exhibit 1 annexed hereto.

38.     In summary, therefore, aside from the more than one hundred (100) non-existent Mortgage Loans, numerous other of the Mortgage Loans existed, but suffered from such infirmities that they were rendered far less valuable assets than Plaintiff bargained for. Indeed, some of the Assets so conveyed to Plaintiff are without any value whatsoever. These infirmities, which Plaintiff was unaware of at the time of sale, include, but are not limited to:

> (a) the collateral securing the right to repayment had been lost prior to the sale to Plaintiff;
>
> (b) the original borrower had sought to judicially enforce rescission of the Mortgage Loan prior to the sale to Plaintiff; and
>
> (c) the Mortgage Loan had been prepaid in full prior to the purported sale to Plaintiff.

**Missing and Materially Deficient Document Transfer**

39.     Citigroup's efforts to determine which of the Assets in the Mortgage Loan Pool violate the Agreements is complicated by missing and materially deficient documentation which accompanied Accredited's transfer of a great many of the Assets in the Mortgage Loan Pool. A list of such documents is annexed to this First Amended Complaint as Exhibit 1 and demonstrates that many of the documents – 9,286 in all – included in the Asset files transferred with the Assets to Citigroup are missing or defective, placing Accredited in breach of representations and warranties found in Section 7.01 (vii) and 7.02 of the Loan Purchase Agreement. Among the types of important documents that are completely missing are title policies, mortgage notes and recorded mortgages. Additionally, many notes have missing and incorrect information. A total of 6,733 Assets are impaired by missing, incorrect, or defective documentation, as more particularly described on the attached Exhibit 1.

40.     Defendant's failure to provide Plaintiff with complete and correct documentation for each of the Assets transferred in the Mortgage Loan Pool entitles Plaintiff to recover from

Defendant any damages resulting from this failure, and at a minimum, a refund of the interim servicing fee which Plaintiff paid to Defendant pursuant to the Confirmation Letter.

**Accredited Knowingly Misrepresented Facts to**
**Induce Citigroup's Agreement to the Confirmation Letter**

41.    Accredited wrongfully misrepresented or concealed from Plaintiff certain material facts concerning the Subject Mortgage Loans, and Plaintiff has been seriously damaged as a result.  As detailed below, most of the Subject Mortgage Loans specified herein were sold to Plaintiff only because Accredited misrepresented a material fact or facts and/or Accredited actively concealed a material fact or facts which Accredited ought to have disclosed to Plaintiff prior to the sale of the Subject Mortgage Loans in order to induce Plaintiff to consummate the sale.

42.    The Agreements contemplate that Defendant would sell Plaintiff Mortgage Loans, as such term is defined in the Agreements.  Many of the purported sales of Mortgage Loans to Plaintiff were in fact sales of an inferior asset which did not fit the loan characteristics called for by the terms of the Agreements.

43.    Specifically, Defendant, through fraudulent misrepresentation and fraudulent concealment, sold assets with rights and obligations different and less favorable than those rights and obligations that would accompany a Mortgage Loan.  Indeed, in more than one hundred (100) of the Subject Assets, the underlying Mortgage Loan no longer existed at the time of the purported sale to Plaintiff and therefore could not and should not have been sold to Plaintiff.

44.    Defendant nonetheless represented to Plaintiff within the Confirmation Letter that the Subject Assets were existing and valid Mortgage Loans, and even presented fictitious mortgage and other loan documents in the file for each of the Subject Assets in a manner to lead

Plaintiff to conclude that the Subject Assets were valid and existing Mortgage Loans and payments on those loans would be made.

45.    Accredited physically transferred to Citigroup meaningless loan numbers and worthless notes and mortgages that had already been foreclosed and converted into Real Estate Owned Property in order to fool Citigroup into concluding that they were still valid and existing mortgage loans.

46.    Accredited portrayed REO Property and other foreclosed and seriously compromised assets as if they were existing mortgage loans so that Citigroup would agree (1) to buy them pursuant to the Confirmation Letter and (2) to accept a deal with a contractual holdback, which never would have been accepted had Citigroup known the truth about the Assets at issue in this lawsuit.

47.    Accredited had a then present intent to deceive Citigroup when it agreed to transfer mortgage loans to Citigroup which Accredited knew to be non-existent, and Citigroup reasonably relied on such misrepresentations in entering into and proceeding with the Confirmation Letter.

48.    Accredited purposefully selected and transferred to Citigroup worthless or severely impaired Assets to take advantage of the Hold Back in the Confirmation Letter

**Trust Receipt and Certification Misrepresentations**

49.    In addition to the Confirmation Letter and mortgage loan documents, Defendant also provided Plaintiff with numerous Trust Receipts and Certifications ("Trust Receipts") from Defendant's custodian.

50.    Among other things, the Trust Receipts certified that: (1) the loan files were delivered to the custodian and were complete; and (2) the loan file information provided in the

mortgage loan schedules accurately reflected the status of each mortgage loan listed in the mortgage loan schedules.

51.    The information contained in the Trust Receipts was not true and accurate.

52.    As with the Data File, the Trust Receipts listed numerous "mortgage loans" in the mortgage loan schedules which were in fact non-existent.

53.    Examples include AHL Loan #8884249926, AHL Loan #511174356, AHL Loan #511295368 and AHL Loan #512029349, which did not exist and therefore did not include a stream of income behind these "loans" at the time the Subject Assets were transferred from Defendant to Plaintiff, even though the Trust Receipts certified them to be valid income producing loans.

54.    The Defendant delivered the Subject Assets and Trust Receipts knowing that some of the loans were non-existing at the time of transfer.

55.    Defendant knew or should have known, based upon Defendant's access to and knowledge of the loan files, that the Subject Assets did not satisfy the Mortgage Loan Pool characteristics and should not have been included in the Pool in the first place.

56.    However, despite Defendant's representations to the contrary, as shown in the Data File and through its representation that the loans described in the Data File substantially conformed to the required pool characteristics, in many instances no valid and enforceable Mortgage Loan existed, no payments were being made on account of the supposed loan and, as a consequence, Plaintiff did not receive the right to receive income from those Mortgage Loans as had been agreed when it purchased the supposed Mortgage Loans through the Confirmation Letter.

57.     For example, Plaintiff is entitled to rescission of Accredited's transfer to Plaintiff of the Tobacco Loan and to have Accredited repurchase the Tobacco Loan for $348,814.10. This is because Accredited represented that the Tobacco Loan was a valid and effective mortgage loan when, in fact, the mortgage loan had been liquidated and title to the mortgaged property acquired by Accredited long before the parties entered into *either* of the Agreements. Accredited has held title to the property secured by the Tobacco Loan since 2004, but Accredited purported to sell Plaintiff this Asset as if it were still in existence as a mortgage loan on March 16, 2007, without disclosing to Plaintiff the documents it surely had and knew about evidencing its title to the mortgaged property and without providing Plaintiff even a hint as to its true status.

58.     Accredited simply cannot dispute this fraud; it has been so long since the Tobacco Loan was actually a mortgage loan that, upon information and belief, Accredited no longer even has a loan record for this property. Indeed, Accredited never even effectively transferred title to the property which had secured the Tobacco Loan to Plaintiff – Plaintiff paid Accredited for what it thought was a mortgage loan and got nothing in exchange, other than the prospect of having to pay the demolition, litigation and other costs associated with owning a condemned lot.

59.     What is more, the Tobacco Loan is not one of a kind. Accredited sold over a hundred other REO Properties to Plaintiff as if they were still mortgage loans, as set forth in the Chart set forth in Paragraph 82. It did so by misrepresenting the loan documents in the files for each of these Assets as having continuing validity and effect, even though the loans had already been foreclosed upon and the Assets had already been converted to REO Properties at the time of the sale to Plaintiff. The files contained no indication that any Assets had converted to REO Properties; instead, the REO Properties were transferred with mortgages and notes as if such documents remained operative.

60.     Defendant's fraudulent concealment extended well past the actual sale of the Subject Assets because Defendant continued to act as interim servicer for the Subject Assets for months after the Closing.

61.     The parties anticipated that Defendant's interim servicing of the Mortgage Loans after transfer would not last more than 60 days. Instead, for most of the Assets it lasted 120 days – encompassing the entire period allocated for due diligence.

62.     After the sale date, and while Defendant acted as the interim servicer of the Subject Assets, Defendant continued to represent to Plaintiff that the Subject Assets were valid and existing Mortgage Loans, even when they were not.

63.     At the time of the sale, and for some time following the sale, Plaintiff was completely unaware that any of the Mortgage Loans it had purchased no longer existed, and had not existed when Plaintiff bought them. Standing between the borrower and Plaintiff, Defendant's role as interim servicer enabled it to keep up this subterfuge.

**Transferred Loans Subject to Litigation**

64.     In certain cases, the Assets Plaintiff purchased from Defendant are or have been the subjects of actively litigated borrowers' claims. That is, it is not simply that Plaintiff did not receive any Mortgage Loan because of Defendant's misrepresentations. Rather, Plaintiff purchased a liability, paying for the right to receive a stream of income but instead getting in return obligations to defend (and potentially obligations to pay) borrower claims. Defendant knew or should have known about these borrower claims or the circumstances giving rise to them at the time it transferred the pool of Mortgage Loans to Plaintiff, and deliberately concealed them from Plaintiff and otherwise misled Plaintiff about the existence of the borrower claims. These include borrower claims for loan rescission due to circumstances surrounding the

origination and closing of the loans (*e.g.*, claims for failure to provide required Truth in Lending Act disclosures, for excessive and/or illegal closing fees, and for outright fraudulent origination).

### *Bouwman*

65.    For example, the Bouwman Loan is the subject of a lawsuit by the borrower seeking rescission of the loan.   The borrower was able to file the lawsuit only because of the lender's failure to provide the required Truth in Lending Act disclosures at closing of the loan. When Accredited sold the Bouwman Loan to Plaintiff, it did so without disclosing the lender's failure to provide the required Truth in Lending Act disclosures.   As a result, Plaintiff has had to incur over $2,200 in litigation defense costs.

### *Donnelly*

66.    The borrower of the Donnelly Loan has also filed a lawsuit alleging Truth in Lending Act violations.   Regardless of the outcome of the litigation, the Donnelly Loan is in breach of Section 7.02 (i) and (xi) because of two unreleased mortgages that threaten title.   The loan went into foreclosure on February 7, 2007.   Accredited knew of the unreleased mortgages by no later than February 13, 2007, and knew they were adversely impacting the ability to foreclose by no later than February 20, 2007.   When Accredited sold the loan to Plaintiff on March 16, 2007, it did so without disclosing the foreclosure, the unreleased mortgages, their impact on the ability to foreclose, or the lender's failure to provide the required Truth in Lending Act disclosures.

### *Phillips*

67.    The borrower of the Phillips Loan alleges that at origination he was forced to pay closing fees to the mortgage broker that violate applicable state law.   At the time the loan was

20

sold to Plaintiff, Accredited knew about the litigation and was actively trying to settle it, but
failed to disclose it to Plaintiff.

*Luft*

68.    The borrower of the Luft Loan alleges that the loan must be rescinded on the
ground that it was fraudulently originated, following a first payment default and foreclosure
action commenced in June 2006.  Despite knowing about the first payment default and
foreclosure litigation in which the borrower alleges a right to rescission due to fraudulent
origination, Accredited did not disclose these facts to Plaintiff when it sold the loan several
months later in March 2007.

*Tobacco*

69.    Plaintiff became involved in litigation concerning the real estate securing the
Tobacco Loan because of Accredited's transfer of phony Tobacco Loan documents.  That
litigation has resulted in a condemnation and the entry of a stipulated judgment requiring the
demolition of the building on the property and the payment of a $5,000 fine to the City of
Seattle.  The building had to be destroyed because it did not meet Seattle building code
requirements for residential dwellings – a fact Accredited knew or should have known about
when it sold the Tobacco Loan to Plaintiff.  In addition to a repurchase amount of $348,814.10,
Plaintiff is entitled to have Accredited reimburse Plaintiff for all of the costs Plaintiff has
incurred in connection with the Tobacco Loan litigation, including demolition costs (at the very
least, in excess of $10,000), attorneys' fees and the $5,000 fine.

*McDevitt*

70.    The borrowers of the McDevitt Loan, also a litigated loan, have denied that they
executed the Note or Deed of Trust evidencing the McDevitt Loan, and have alleged that the

signatures appearing on those documents are forgeries.  When the McDevitts made this claim, Accredited tendered a title insurance claim to its title insurer for the McDevitt Loan.

71.    In or around March 2006, Accredited referred the McDevitt Loan and the McDevitt's challenge that they did not sign the loan documents to outside legal counsel.

72.    A lawyer for Accredited all but admitted in a November 29, 2006 letter to the borrower's counsel that employees of Accredited had falsified documents with the borrowers' signatures to support a false mortgage application.

73.    Further, in a December 28, 2006 letter to the California Department of Corporations, in response to a formal complaint filed by the McDevitts with the Department alleging mortgage fraud, Accredited admitted that it "has been aware of, and working diligently on this matter for the past year."  In the same December 28, 2006 letter, Accredited conceded "that the McDevitts did not sign the note or deed of trust related to its loan."

74.    Accredited nevertheless sold the McDevitt Loan to Plaintiff on March 16, 2007 without disclosing either the litigation already underway against the borrowers or the fraudulent origination which it had admitted to the borrowers and the California Department of Corporations.  Accredited's Chaise Bivin then confirmed the fraud in a mediation aimed at settling the McDevitt litigation, causing the attorney for the title insurer to state that it would not pay the claim which Accredited had made but that was now for the benefit of Plaintiff as the assignee of the McDevitt Loan.  Indeed, the title insurer has been quite categorical in stating its belief that fraud was committed by representatives of Accredited in the origination of the McDevitt Loan.

75.    Plaintiff's remedy is all damages associated with the transfer of the McDevitt Loan.

22

*Dodd*

76.     Plaintiff attempted to file a title claim in connection with the Dodd Loan because the mortgage was never recorded, but no title insurance policy was ever issued. Upon closer review of this file, the Dodd Loan appears to be the product of a complete fraud. The borrower, Norman Dodd, claims that he has no knowledge of the loan and no interest in the property. Mr. Dodd asserts that he has been the victim of identity theft, and has completed handwriting samples, a police report and a forgery affidavit in support of this allegation. Accredited investigated the matter and has issued Mr. Dodd a letter conceding that his identity was stolen and that the loan was fraudulently procured. The loan funds were not used to pay off any existing indebtedness, but instead were stolen by the attorney involved in closing the loan transaction (who has been indicted) and others. Accredited therefore sold Plaintiff the Dodd Loan without disclosing that it would leave Plaintiff with no claim against the borrower or the title insurer, or that Plaintiff would have no lien on the property.

*Collinge*

77.     The Collinge Loan was made against a property valued by an appraiser selected by and acting for Accredited at $1.3 million on January 8, 2007. This appraisal, and the Collinge Loan which it purportedly supports, now appears to be the result of blatant fraud. Upon Plaintiff's investigation after purchasing the Collinge Loan, all three of the comparable property values used for the appraisal were discredited – they were either unrecorded or otherwise had no data to back them up. Indeed, of the thirty sales closest to the property during the year of the appraisal, none were over $765,000. In short, the property securing the Collinge Loan was overvalued by several hundred thousand dollars.

78.    The appraiser of the Collinge Loan now claims that she appraised the property for $1.05 million, and that the $1.3 million appraisal was fraudulent because it was changed to a higher value without her knowledge. The borrower has now taken the position that he had no idea his house was worth $1 million, and that he was forced into procuring the loan, although the loan application he signed February 21, 2007 listed the purchase price as $1.3 million. Accredited knew or should have known that the appraisal was improperly prepared and violated its income verification and second appraisal requirements.

*Craft*

79.    In litigation involving the Craft Loan, Defendant interfered with Citigroup's rights with respect to this Asset. The borrower of the Craft Loan filed an action against Accredited on March 29, 2007, alleging breach of the mortgage contract, fraud, predatory lending practices, and unfair debt collection practices, among other counts. Accredited did not disclose the litigation to Citigroup, even though it continued to act as interim servicer of the Craft Loan until July 16, 2007. After it stopped servicing the Craft Loan (and no longer had any rights with respect to the Craft Loan), on July 19, 2007, Accredited stipulated to forbear from foreclosing upon the mortgage – again, without disclosing the lawsuit to Citigroup.

*Summary of Loans Subject to Litigation*

80.    Accredited never told Plaintiff about the origination and other problems threatening the existence of the Bouwman, Donnelly, Phillips, Luft, McDevitt, Dodd, Craft and Collinge Loans, all of which are now either in litigation, or (in the case of the Dodd Loan) likely headed toward litigation over those very problems. Indeed, the litigations of the Donnelly, Phillips, Luft and McDevitt Loans had already begun before AHL sold them to Citigroup, but AHL never disclosed those actions or the substance of the facts underlying them to Citigroup.

24

**Particular AHL Deficiencies**

81.     For the sake of clarity, and particularity, the three chart(s) below summarize the particular AHL misrepresentations at issue in this case.

*Differences Between Mortgage Loans Represented by Accredited and Assets Received by Citigroup*

82.     The Assets listed below were transferred from AHL to Citigroup in March 2007 and either did not comport with Accredited's Data File representations or breached the representations and warranties of the Loan Purchase Agreement:

| AHL Loan Number | AHL's Data File Misrepresentations as of March 16, 2007 | Actual Loan Status as of March 16, 2007 |
|---|---|---|
| 511034679 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $199,377.07 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 301145971 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $117,892.96 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 606284547 | Valid and Existing Mortgage Loan in compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $63,962.36 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 607102559 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $67,976.10 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 601035110 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $219,703.72 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 601311546 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $268,960.49 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |

| AHL Loan Number | AHL's Data File Misrepresentations as of March 16, 2007 | Actual Loan Status as of March 16, 2007 |
|---|---|---|
| 13656855 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $231,382.82 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 512050304 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $479,822.70 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 511174356 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $512,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 512029349 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $364,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 604117581 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $314,500.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 509276557 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $36,309.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 509093021 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $87,968.68 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 509149535 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $83,380.68 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 604217441 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $91,156.06 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |

| AHL Loan Number | AHL's Data File Misrepresentations as of March 16, 2007 | Actual Loan Status as of March 16, 2007 |
|---|---|---|
| 601057400 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $163,762.31 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 508120128 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $240,617.33 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 603061582 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $134,808.81 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 605252289 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $136,693.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 14254627 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $257,673.48 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 506308325 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $205,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 8880843235 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $77694.36 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 601034962 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $67,969.91 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 603217365 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $87,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |

| AHL Loan Number | AHL's Data File Misrepresentations as of March 16, 2007 | Actual Loan Status as of March 16, 2007 |
|---|---|---|
| 511283823 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $55,421.66 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 510100946 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $67,196.52 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 8885258371 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $69,600.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 511174011 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $54,896.78 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 604039245 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $79,011.11 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 508269257 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $157,287.53 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 8884355079 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $71,074.03 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 603242407 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $84,968.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 511175015 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $107,966.75 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |

| AHL Loan Number | AHL's Data File Misrepresentations as of March 16, 2007 | Actual Loan Status as of March 16, 2007 |
|---|---|---|
| 8884249926 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $87,863.36 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 8886251938 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $71,960.42 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 604205847 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $91,534.68 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 511175050 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $128,819.09 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 601312108 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $184,145.25 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 511034503 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $160,805.09 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 605263084 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $223,128.03 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 605239160 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $232,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 508049107 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $195,067.09 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |

| AHL Loan Number | AHL's Data File Misrepresentations as of March 16, 2007 | Actual Loan Status as of March 16, 2007 |
|---|---|---|
| 604116862 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $188,897.47 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 509136940 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $260,085.44 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 606139029 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $200,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 508107454 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $161,913.38 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 512281864 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $220,949.91 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 601311544 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $355,990.56 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 512239931 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $333,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 511077885 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $327,521.74 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 607315221 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $405,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |

| AHL Loan Number | AHL's Data File Misrepresentations as of March 16, 2007 | Actual Loan Status as of March 16, 2007 |
|---|---|---|
| 507281451 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $368,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 604063118 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $488,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 608039968 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $666,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 606273027 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $750,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 13460126 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $318,346.14 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 605185577 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $124,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 601180853 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $99,945.26 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 604139552 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $132,000.00 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |
| 512051059 | Valid and Existing Mortgage Loan in Compliance with Loan Purchase Agreement and Confirmation Letter and with Unpaid Principal Balance of $199,826.96 | No Mortgage Loan or Income Stream Because Asset Already Converted to Real Estate Owned Property |