G<small>IBBS</small> & B<small>RUNS</small> LLP
Kathy D. Patrick, Esq. (*pro hac vice*)
Robert J. Madden, Esq. (*pro hac vice pending*)
1100 Louisiana, Suite 5300
Houston, TX 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

-AND-

R<small>OPES</small> & G<small>RAY</small> LLP
Keith H. Wofford, Esq. (KW-2225)
D. Ross Martin, Esq. (DM-2947)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Attorneys for the Steering Committee Group of RMBS Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>Residential Capital, LLC, *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

**GIBBS & BRUNS' RESPONSE IN OPPOSITION TO THE**
**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO**
<u>**COMPEL GIBBS & BRUNS TO PRODUCE SETTLEMENT COMMUNICATIONS**</u>

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Gibbs & Bruns, LLP ("<u>G&B</u>"), counsel for the Steering Committee Group of RMBS Holders, responds as follows to the Motion of the Official Committee of Unsecured Creditors (the "<u>Committee</u>") to Compel Gibbs & Bruns to Produce Settlement Communications (the "<u>Motion</u>") [Docket No. 1555].

**PRELIMINARY STATEMENT**

1.     This Court should deny the Committee's motion to compel for two reasons. First, the motion will soon be moot. The Debtors and Ally have agreed to produce settlement communications, and G&B has agreed to ensure that the Debtors' and Ally's productions include all responsive documents that would have been produced by G&B had the Court ordered it to produce settlement communications. Specifically, G&B has prepared a log of the settlement communications in its possession (which is attached hereto as Exhibit 1), and is in the process of comparing its documents to those produced by the Debtors and Ally to identify any responsive settlement communication documents that G&B could produce that Ally and/or the Debtors have not already produced. G&B has informed the Committee that it will advise Ally and/or the Debtor of any omitted documents and will work with them to ensure that any such documents are produced to the Committee by Monday, October 1, 2012. When this process is complete, the Committee will have copies of all settlement communication documents that would have been produced by G&B had the Court ordered it to produce settlement communications.

2.     Second, if the Court does move forward on the merits of the motion, it should be denied because the Committee has provided no basis for the Court to order G&B to produce settlement communications. Courts asked to approve settlement agreements, who have considered the issue of the discoverability of settlement communications, have recognized that the interest in ensuring that a settlement is not collusive must be balanced against the chilling effect on settlement (and other harms) engendered by open discovery of settlement communications. In striking this balance, these courts have held that settlement communications are subject to discovery only where the party seeking them offers evidence (not allegations) of collusion between the settling parties. The Committee has made no attempt to meet this

2

requirement. Nor has it offered any explanation, based on the facts presented here, why it needs more discovery of settlement communications than has already been allowed in order to assess the arm's length character of the negotiations. Instead, the Committee asks the Court to abandon any balancing of the competing interests at stake, and make new law by holding that settlement communications are *always* discoverable, regardless of the circumstances, when a Rule 9019 motion is presented which seeks approval of a settlement agreement. G&B respectfully submits that this Court should reject the Committee's request for such a far reaching, one sided ruling.

## ARGUMENT AND AUTHORITY

3. Courts considering the approval of settlement agreements consistently apply the rule that "discovery of settlement negotiations is proper only where the party seeking it lays a foundation by adducing from other sources evidence that the settlement may be collusive."[1] This rule was first announced by Judge Posner for the Seventh Circuit Court of Appeals in the *Mars Steel* case in 1987,[2] and has been consistently followed by federal courts (including the Second

---

[1] *Lobatz v. U.S. West Cellular of Calif.*, 222 F.3d 1142, 1148 (9th Cir. 2000); *Accord Thornton v. Syracuse Sav. Bank.*, 961 F.2d 1042, 1046 (2d Cir. 1992); *Mars Steel Corp. v. Continental Ill, Nat'l Bank and Trust Co. of Chicago¸* 834 F.2d 677, 684 (7th Cir. 1987); *In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practice Litigation*, 2011 WL 1496342, at *3 (N.D. Cal. 2011); *Klein v. O'Neal, Inc.*, 2010 WL 234806, at * 4 (N.D. Tex. 2010); *Smith v. Sprint Communications Co. L.P.*, 2003 WL 715748, at * 2 (N.D. Ill. 2003); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 28 (D.D.C. 2001); *White v. Nat'l Football League*, 822 F.Supp. 1389, 1429 (D. Minn. 1993) *aff'd* 41 F.3d 402 (8th Cir. 1994); *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992); *Bowling v. Pfizer, Inc..* 143 F.R.D. 141, (S.D. Ohio 1992); *Cho v. Seagate Tech. Holdings, Inc.*, 99 Cal. Rptr.3d 436, 448 (Cal. Ct. App. 2009); *Bloyed v. General Motors Corp.*, 881 S.W.2d 422, 438 (Tex. App. – Texarkana 1994), *aff'd* 916 S.W.2d 949 (Tex. 1996). *See also* MCLAUGHLIN ON CLASS ACTIONS § 6:10 (7th ed. 2010) ("It is well established that objectors are not entitled to discovery concerning settlement negotiations between the parties without evidence indicating that there was collusion between plaintiffs and defendants in the negotiating process.").

[2] *Mars Steel Corp¸* 834 F.2d at 684.

3

Circuit Court of Appeals)[3] ever since.  The rule was developed in the analogous context of class action settlement approval proceedings, where the standard of review is similar to that presented here,[4] and where (as here) courts are called upon to consider whether the settlement agreement at issue was the product of "arm's length negotiations."[5]

4.    In fashioning this rule, these courts have recognized that the interest in ensuring that a settlement is not collusive must be balanced against the harms engendered by open discovery of settlement communications.  Among these are the risks that discovery of settlement communications "would give a party information about an opponent's strategy"[6] and would create an "obviously chilling effect on the desire to settle cases."[7]

---

[3]   *Thornton*, 961 F.2d at 1046 ("Discovery with respect to a settlement agreement of an ongoing litigation, however, is permissible only where the moving party lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.  This is necessary to prevent parties from learning their opponent's strategy.").

[4]   *Compare* FED. R. CIV. P. 23(e) (standard of review for class action settlements is whether the settlement itself is "fair, reasonable, and adequate") *with Finkelstein v. W.T. Grant Co. (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). (standard of review for approval of settlement pursuant to Rule 9019 is "whether the settlement 'fall[s] below the lowest point in the range of reasonableness").

[5]   *Compare Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *16-17 (S.D.N.Y. 2010) (approving class action settlement based in part on finding that settlement agreement "resulted from arm's length negotiations"); *Levinson v. About.Com. Inc.*, 2010 WL 41594990, at *3 (S.D.N.Y. 2010) (approving class action settlement based in part on finding that "[t]he settlement was the product of mediation, discussion and arm's length negotiations between experienced qualified counsel"); *Beane v. The Bank of New York Mellon*, 2009 WL 874046, at *4 (S.D.N.Y. 2009) (approving class action settlement based in part on finding that "[t]he Settlement was the product of negotiations, that once started, were conducted at arm's length between experienced counsel"), *with Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d at 452, 462 (2d Cir. 2007) (court evaluating proposed settlement under Rule 9019 should consider "the extent to which the settlement is the product of arm's length bargaining.").

[6]   *Mars Steel¸* 834 F.2d at 684.  *Accord Thornton*, 961 F.2d at 1046 ("Discovery with respect to a settlement agreement of an ongoing litigation, however, is permissible only where the moving party lays a foundation by adducing from other sources evidence indicating  that the settlement may be collusive.  This is necessary to prevent parties from learning their opponent's strategy.").

[7]   *Smith*, 2003 WL 715748, at *2. *See also Mars Steel¸* 834 F.2d at 684.

4

5. The risk of a "chilling effect on the desire to settle cases" should be of particular concern here. It is a matter of public record that G&B's clients have retained it to urge Trustees to take legal action on claims involving over $95 billion of residential mortgage backed securities issued by affiliates of JPMorgan Chase,[8] $45 billion of RMBS issued by affiliates of Wells Fargo,[9] $28 billion of RMBS issued by affiliates of Morgan Stanley,[10] and more than $24 billion of RMBS issued by affiliates of Citigroup.[11] Any "chilling effect" on the ability to settle these disputes, resulting from a ruling by this Court that settlement communications are *always* discoverable in a settlement approval proceeding, would be deeply prejudicial.[12]

6. The rule that "discovery of settlement negotiations is proper only where the party seeking it lays a foundation by adducing from other sources evidence that the settlement may be collusive"[13] has also been followed by the only bankruptcy court considering its application to Rule 9019 settlement approval proceedings. In *In re Lee Way Holding Co.*, the Bankruptcy

---

[8] Hugh Son, *Dimon Vows Fight Moynihan Lost Over Claims from Mortgages*, BLOOMBERG NEWS, April 12, 2010, *available at* http://www.bloomberg.com/news/2012-04-12/dimon-vows-fight-moynihan-lost-over-claims-from-mortgages.html.

[9] Rick Rothacker, *Wells, Morgan Stanley Face Investor Claims on Mortgage Bonds*, REUTERS, Sept. 19, 2012, *available at* http://newsandinsight.thomsonreuters.com/Legal/News/2012/09_-_September/Wells,_Morgan_Stanley_face_investor_claims_on_mortgage_bonds/.

[10] *Id.*

[11] Shanthi Bharatwaj, *3 New Risks for Citigroup*, February 24, 2012, THESTREET.COM, http://www.thestreet.com/story/11432711/1/3-new-risks-for-citigroup.html.

[12] The prejudice would not be confined to G&B's clients and other holders of residential mortgage backed securities. It has been frequently noted that unresolved mortgage repurchase claims, such as are at issue in this proceeding and which are the focus of G&B's other efforts, continue to hurt the housing market and the broader economy. *See, e.g.*, Nelson D. Schwartz and Eric Dash, *$8.5 Billion Deal Near in Suit on Bank Mortgage Debt*, June 28, 2011, N.Y. TIMES, *available at* http://www.nytimes.com/2011/06/29/business/29mortgage.html ("In an interview Tuesday, before reports of the Bank of America settlement, Sheila C. Bair, the chairwoman of the Federal Deposit Insurance Corporation, worried that the unresolved mortgage claims continued to hurt the broader economy. 'Unresolved legal claims could serve as a drag on the recovery of the housing market,' Ms. Baird said. 'The healing of the housing market is essential to the recovery of the broader economy.'").

[13] *Lobatz.*, 222 F.3d at 1148.

Court for the Southern District of Ohio applied the *Mars Steel* rule and held that discovery of settlement communications was not warranted because the potential objectors to the 9019 settlement motion (like the Committee here) had "not shown the existence of any facts which support an inference of collusion."[14] This is the precise situation presented here, and the Committee's claim that the *In re Lee Way* court somehow distinguished the facts present here from those before it is meritless.[15]

---

[14] *In re Lee Way Holding Co.*, 120 B.R. 881, 908 (S.D. Ohio 1990) (citing *Mars Steel Corp.*¸ 834 F.2d at 684).

[15] The Committee claims that "[t]he Southern District of Ohio itself distinguished the situation here as one where settlement communications *would* be discoverable – namely where the settlement was reached early in the case and 'counsel for some of the parties were to receive a large fee for services in the case.'" Motion at 5. This claim is a mischaracterization of the *Lee Way* decision that is premised on selective cherry-picking of portions of the court's discussion, while omitting others. What the *Lee Way* court actually said was that the objectors' reliance on Seventh Circuit's decision in *In re General Motors* was "misplaced" because:

> That case is vastly distinguishable from the instant proceeding. In *General Motors*, a class action suit, the circuit court as well as the district court recognized that the settlement negotiations had been irregular in that certain counsel had been excluded from the negotiations and the negotiations may have been held in violation of the District Court's pretrial order. Further, the settlement was reached early in the case, shortly after discovery had commenced and it was questionable how fully familiar counsel were with the claims in the case. The class had not even been notified on the pendency of the suit and part of the class would receive nothing under the settlement. Counsel for some of the parties were to receive a large fee for services in the case. Notably, the Circuit Court specified that its holdings was required "under the facts of this case."
>
> Here, conversely there is no evidence of damage or prejudice to the creditors or even an intimation of such.

*In re Lee Way Holding Co.*, 120 B.R. at 908 (citing *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1128-33 (7th Cir. 1979). In this case, as in *Lee Way*, the Committee offers no evidence, or even an allegation, of collusion or injury to the estate as a result of irregularities in the negotiating process.

6

7. The Committee cites only two cases in which bankruptcy courts have addressed the issue of the discoverability of settlement communications in the context of a Rule 9019 motion. In neither did the court consider the *Mars Steel* rule requiring evidence of collusion, and are therefore of limited value here. For example, in *In re Grant Broadcasting of Philadelphia*, cited by the Committee, the bankruptcy court granted limited discovery "of the Debtors' officers and the Debtors' Counsel concerning their negotiating positions at various phases in the negotiation process."[16] In doing so, the *Grant Broadcasting* court explained that "[o]ur reasoning was based largely on the holding in *In re General Motors Corp.*," and it noted that it "considered this question particularly close because there is no element of impropriety in the nature of the settlement negotiations alleged here as there was in [the *General Motors*] case."[17] The court explained that it allowed the discovery because "we were extremely indulgent in allowing the objecting parties to pursue all lines of attack."[18] Critically, this decision pre-dates, by nine months, Judge Posner's decision in *Mars Steel*, in which the Seventh Circuit clarified the limited scope of settlement discovery permitted under its earlier *General Motors* opinion, and made clear that evidence of collusion was required to obtain such discovery.[19] Thus, the holding in *Grant Broadcasting* is of dubious value given that it is premised on an application of *General Motors* that was squarely rejected nine months later by the Seventh Circuit in *Mars Steel*.

---

[16] 71 B.R. 390, 394 (E.D. Pa. 1987).
[17] *Id*.
[18] *Id*.
[19] *Mars Steel¸* 834 F.2d at 684 (Discovery of settlement communications "is proper only where the party seeking it lays a foundation by adducing from other sources of evidence indicating that the settlement may be collusive, as in the *General Motors* case, where negotiations with one class counsel were carried out in violation of the district court's order. There is no indication of such hanky-panky here.").

7

8. The Committee's citation to a transcript of a telephone conference before Judge Gerber in *In re Lyondell Chem. Co.*,[20] in which the issue of the discoverability of settlement communications was addressed, is likewise inapposite. The sole objections to this discovery presented to Judge Gerber in *Lyondell* were relevance and common interest.[21] Judge Gerber did not decide, because the issue was not presented to him, whether (contrary to the holding in *In re Lee Way*) Rule 9019 proceedings are exempt from the rule set forth in *Mars Steel* and its progeny that settlement communications are not discoverable in settlement approval proceedings absent evidence of collusion between the negotiating parties. Thus, Judge Gerber's decision in *Lyondell* offers little guidance on this issue.[22]

9. The Committee's decision to abandon any effort to satisfy the *Mars Steel* test by offering evidence of collusion makes two things clear. First, it makes clear that there is no

---

[20] *See* Motion, Exhibit D.

[21] *Id*. at 14(20-21) ("The objections fall into two essential grounds, one being relevance and one being the common interest defense.") Contrary to the Committee's assertion that G&B "initially objected to production [of settlement communications] based on multiple privilege, including the 'common interest' privilege," *see* Motion at 2 n.2, G&B has never asserted the common interest, or any other, privilege as an objection to producing settlement communications with the Debtors and/or Ally. The sole grounds for G&B's objection to the production of such documents are now and have always been limited to those set forth in this brief.

[22] Judge Gerber indicated that settlement communications were relevant to the question of whether the settlement was the product of arm's length negotiations. Courts in class action approval proceedings typically make findings of arm's length negotiations based on the presence of experienced counsel having participated in the negotiations, and written submissions from the parties providing general descriptions of the settlement negotiations. *See, e.g.*, *Velez*, 2010 WL 4877852, at *16-17 (basing finding of arm's length negotiations on existence of experienced plaintiffs' counsel and "protracted settlement discussions … conducted over approximately two months" as described in a Joint Declaration); *Levinson*, 2010 WL 41594990, at *3 (basing finding of arm's length negotiations on existence of experienced plaintiffs' counsel and lengthy settlement negotiations as described in a written memo for approval); *Beane*, 2009 WL 874046, at *4 (basing finding of arm's length negotiations on existence of experienced plaintiffs' counsel and negotiations as described in a written settlement memo). Here, in light of the Debtors' and Ally's agreement to produce settlement communications, and to sit for depositions regarding the negotiations, the Court will have a much more robust record on this issue, even without the production of settlement communications by G&B.

credible claim of collusion between G&B's clients and the Debtors and/or Ally (parties whose interests were plainly adverse and who had no incentive to collude). Next, the Committee's abandonment of collusion as a basis for its motion makes clear that the issue presented by the Committee's motion is a pure question of law: Are Rule 9019 proceedings exempt from the *Mars Steel* rule – followed consistently by Court's (including the Second Circuit) for the last 25 years – that settlement communications are not discoverable in settlement approval proceedings absent evidence of collusion between the negotiating parties. For the reasons set forth herein, G&B respectfully submits there is no such exception for 9019 proceedings (as the court in *Lee Way* recognized), and therefore the Committee's motion must be denied.

### THE COMMITTEE'S PROPOSED ORDER IS OVERBROAD AND EXCEEDS THE SCOPE OF THE RELIEF REQUESTED BY ITS MOTION

10. The sole issue presented by the Committee's motion is whether G&B will be required to produce its settlement communications with the Debtors and Ally. However, the proposed order submitted by the Committee goes much farther. It asks that G&B be ordered to "produce *all documents within their possession, custody or control responsive to the Subpoena*, including documents and communications concerning the negotiation and execution of the RMBS Trust Settlement Agreements . . ."[23] If entered as written, the proposed order would overrule all of G&B's objections, including privilege objections, to every one of the very broad categories of documents requested. The Committee has offered no basis for this request for relief in its motion. Accordingly, in the event that the Court should grant the Committee's motion, the order should be limited to the subject matter of the Committee's motion: settlement communications between G&B and the Debtors and Ally.

---

[23] *See* Motion, Exhibit A at ¶ B (emphasis added).

9

## **CONCLUSION**

11. For all the forgoing reasons, G&B respectfully requests that the Committee's motion to compel be denied.

Dated: September 26, 2012
      New York, New York

/s/ Keith H. Wofford

Kathy D. Patrick, Esq. (*pro hac vice*)
Robert J. Madden, Esq. (*pro hac vice pending*)
GIBBS & BRUNS LLP
1100 Louisiana, Suite 5300
Houston, TX 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

-AND-

ROPES & GRAY LLP
Keith H. Wofford, Esq. (KW-2225)
D. Ross Martin, Esq. (DM-2947)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Attorneys for the Steering Committee Group of RMBS Holders*