David M. Powlen (DP – 0678)
BARNES & THORNBURG LLP
1000 North West Street, Suite 1200
Wilmington, Delaware 19801
Telephone: 302-888-4536
Facsimile: 302-888-0246
Email: *david.powlen@btlaw.com*

*Attorneys for USAA Federal Savings Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | ) Chapter 11 |
| | ) |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | ) Case No. 12-12020 (MG) |
| | ) |
| Debtors. | ) Jointly Administered |

**USAA FEDERAL SAVINGS BANK'S LIMITED OBJECTION TO DEBTORS'
(I) MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(B), (F), AND (M), 365 AND 1123,
AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 FOR AN ORDER (A)
AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING AND
APPROVING ASSET PURCHASE AGREEMENTS THERETO, (C) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES RELATED THERETO, AND (D) GRANTING RELATED
RELIEF; AND (II) NOTICE OF INTENT TO (A) ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS AND (B) CURE AMOUNTS**

USAA Federal Savings Bank ("**USAA**"), through its undersigned counsel, hereby

submits this limited objection ("**Objection**") to the **Sale Motion**[1] and the **Contract Notice**[2] filed

---

[1] **Sale Motion** means the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 For Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* filed on May 14, 2012 [Docket No. 61].

by the above-referenced debtors (the "**Debtors**") which pertain to the proposed sale and transfer

of the Debtors' **Servicing Platform,**[3] and which could potentially alter or affect USAA's

contractual rights, claims and interests in connection therewith.[4]  In support of this Objection,

USAA respectfully states as follows:[5]

### PROPOSED ASSUMPTION AND ASSIGNMENT OF SERVICING AGREEMENTS AND SALE OF MORTGAGE SERVICING RIGHTS

1.      On May 14, 2012 (the "**Petition Date**"), the Debtors filed voluntary petitions

commencing the above-referenced cases under Chapter 11 of  Title 11 of the United States Code

(the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Southern District

of New York (the "**Bankruptcy Court**").

2.      The Debtors also filed the Sale Motion on the Petition Date.

3.      On June 28, 2012, the Bankruptcy Court entered a **Sale Procedures Order,**[6]

establishing procedures for the Sale of the Debtors' Servicing Platform to Nationstar or a

Successful Bidder (hereinafter the "**Purchaser**").

---

[2] **Contract Notice** means the *Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* filed on July 26, 2012 [Docket No. 924].

[3] The **Servicing Platform** is defined and described in the Sale Motion, ¶ 6, p. 7.

[4] USAA's contract with the debtor GMAC Mortgage, LLC, and USAA's related rights, claims and interests are specifically described beginning at paragraph 16 below.

[5] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion, the proposed *Order Under 11 U.S.C. §§ 105, 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving(A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Nationstar Mortgage LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C)Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; (D) Related Agreements; and (II) Granting Related Relief* which is attached to the Sale Motion as "Exhibit D" (the "**Sale Order**"), or the **Nationstar APA** (as defined in the Sale Motion) which (in amended and restated form) accompanied the *Notice of Filing Amended and Restated Asset Purchase Agreement Among Nationstar Mortgage LLC and Certain Debtors* filed on June 29, 2012 [Docket No. 534].

[6] **Sale Procedures Order** means the *Order Under 11 U.S.C. §§ 105, 363(b) and 365 (I) Authorizing and Approving Sale Procedures Including Payment of Break-Up Fees; (II) Scheduling Bid Deadline, Auction*

4.      On July 26, 2012, the Debtors issued the Contract Notice, which was accompanied by a Schedule of agreements described as Assumed Contracts that may be assumed by the Debtors and assigned to the Purchaser (with the Purchaser reserving the right to exclude any agreement from assumption and assignment up to two days prior to the Closing Date).

5.      The Contract Notice also contains a proposed Cure Amount for each agreement included in the schedule, but expressly states that the Cure Amounts "do not include any (i) existing post-petition obligations that the Debtors anticipate paying before the date the Designated Agreement is to be assumed and assigned…; (ii) post-Petition Date obligations that may be incurred but unknown as of July 25, 2012, which obligations may remain outstanding against the Debtors as of the Assumption Date; [or] (iii) unknown pre-Petition Date obligations."[7]

6.      Anticipating that there will be objections to a listed Cure Amount because it does not take into account or otherwise provide for "unquantifiable or unknown pre-closing liability" of a Debtor, the Debtors have indicated in the Contract Notice that they will request that such objections "be overruled."[8]

7.      The Sale Motion, the Nationstar APA, the Contract Notice and the proposed Sale Order all indicate that Nationstar as the Purchaser is expected to be responsible only for claims or obligations under an Assumed Contract that arise on or after the Closing of the Sale of the Servicing Platform.

---

*(if Necessary) and Sale Hearing; (III) Establishing Assumption and Assignment Procedures, Including Procedures for Fixing Cure Amounts; and (IV) Establishing Notice Procedures* dated June 28, 2012 [Docket No. 538].

[7] Contract Notice, ¶ 5, p. 2.

[8] Contract Notice, ¶ 12, p. 4.

8.      The Debtors are requesting that, absent an objection to the assumption and assignment of an Assumed Contract and/or the related Cure Amount, a non-debtor party be bound to the proposed terms of such assumption and assignment "for all purposes in [the] Chapter 11 cases,"[9] and be barred from:

> …asserting at any time any condition to assignment, default, claims, obligations or breach and/or any additional cure, damage or other amount with respect to the respective Assumed Contract on the basis of events of any kind or nature occurring or arising prior to the Closing Date…, whether such events constituted acts or omissions by the Debtors or other person and regardless of whether such events are known or unknown, including, without limitation, claims or liabilities relating to any act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date, and any indemnification obligations, claims or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date.[10]

9.      Further, the Debtors are proposing that "where a Servicing Agreement is contained within the same writing as an agreement related to origination, (i) the Debtors [shall] assume and assign to the Purchaser only the Servicing Agreement; (ii) the origination agreement shall be severed from the multi-agreement document pursuant to the Nationstar Sale Approval Order; and (iii) the Purchaser shall have no liability under any origination agreement."[11]

10.     An *Amended Notice of Public Auction and Sale Hearing to Sell Certain of Debtors' Assets Pursuant to Asset Purchase Agreements with Nationstar Mortgage LLC and Berkshire Hathaway Inc. and Related Relief and Dates* issued by the Debtors on September 14, 2012 [Docket No. 1446] (the "**Sale Notice**"), states that the Bid Deadline for any Qualified

---

[9] Contract Notice, ¶ 10, p. 4.

[10] Contract Notice, ¶ 11, p. 4.

[11] Contract Notice, ¶ 7, p. 2.   Such an agreement which includes servicing operations, origination activities and perhaps other functions is hereinafter referred to as a "**Multi-Function Contract**."   The proposed treatment of a Servicing Agreement contained within a Multi-Function Contract as a separate agreement capable of being separately assumed and assigned is hereinafter referred to as a "**Severing**."

Bidder to submit a Bid Proposal is October 19, 2012, an Auction is scheduled for October 23, 2012, and the Sale Hearing is scheduled for November 19, 2012.

11.    The Sale Notice indicates that any response or objection to the Sale of the Purchased Assets which are part of the Servicing Platform, including with respect to the "free and clear" nature and extent thereof as more particularly described in the Sale Notice and proposed Sale Order, is required to be filed on or before October 29, 2012. [12]

12.    Similar to the proposed treatment of Assumed Contracts, the Sale Order sought by the Debtors would provide in relation to all Purchased Assets that:

> [E]xcept for any Assumed Liabilities set forth in each of the APAs, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets purchased by Nationstar… shall be transferred to Nationstar… and  such transfer… shall be free and clear of all claims, liabilities, interests, liens, obligations, and encumbrances of any Person (including, without limitation, claims, obligations or liabilities based on any successor or transferee theory of liability or relating to any act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date, and any indemnification claims, obligations or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date) and any and all rights and claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the date on which the Chapter 11 cases were commenced, whether known, unknown, contingent or unliquidated, arising prior to the Closing Date.[13]

13.    In summary, with respect to either Assumed Contracts or Purchased Assets, it is generally proposed that the Purchaser will not become responsible for any claims against or obligations of the Debtors which arose prior to the Closing Date.[14]  Conversely, through the

---

[12] Sale Notice, ¶ 11, p. 4.

[13] Sale Notice, Section C (entitled "Sale Free and Clear"), p. 2.

[14] See the definition of "Assumed Liabilities" on page 4 and the definition of "Retained Liabilities" on pages 22-24 of the Nationstar APA.

Contract Notice and the Sale Motion, the Debtors apparently are also seeking to avoid or reduce such claims or obligations which have arisen or may arise prior to the Closing Date.

14. Further, the Debtors have "expressly reserved" the right to argue that any Servicing Agreement or other Assumed Contract listed in the Schedule which accompanied the Contract Notice is not an executory contract within the purview of Section 365 of the Bankruptcy Code.[15]

15. Moreover, under the Nationstar APA, there appear to be multiple tracks of concepts and definitions which might involve rights, claims and obligations associated with the Debtors' servicing activities. There are definitions of Contacts and Assumed Contracts which relate to the possible assumption and assignment of a Servicing Agreement pursuant to Section 2.2. of the Nationstar APA. There are also definitions of Mortgage Servicing and Mortgage Servicing Rights (or MSRs) which relate to the sale and transfer of Purchased Mortgage Servicing in accordance with Section 2.1 of the Nationstar APA.

### AGREEMENT BETWEEN USAA AND GMAC MORTGAGE, LLC

16. The Debtor GMAC Mortgage, LLC ("**GMACM**") presently holds mortgage servicing rights for approximately 140,000 residential mortgage loans that were originated by USAA and sold to GMACM before August 30, 2007, under a certain "Mortgage Purchasing and Servicing Agreement" with USAA dated January 18, 2000 (as amended from time to time, the "**Master Agreement**"), and approximately 39,000 residential mortgage loans that were originated by USAA and sold to GMACM's non-debtor affiliate Ally Bank under the Master Agreement, and then re-sold by Ally Bank, servicing released, to GMACM. (All mortgages described in this paragraph are hereinafter referred to as the "**Transferred Mortgages**.")

---

[15] Contract Notice, ¶ 21, p. 5.

17.     Also, GMACM services under the Master Agreement approximately 210 residential mortgage loans which were originated by USAA and presently continue to be owned by USAA and three loans which have been sold by USAA to Fannie Mae servicing retained and as to which USAA is the servicer and GMACM is the subservicer.  (All such mortgages are hereinafter referred to as the "**Retained Mortgages**," and together with the Transferred Mortgages are hereinafter referred to as the "**USAA-Originated Mortgages**.")[16]

18.     USAA is informed and believes that the Debtors have assigned numerous "Investor Numbers" (a total of nearly 150 different Investor Numbers) to the USAA-Originated Mortgages which are being serviced by GMACM.  Nevertheless, all of GMACM's servicing activities and rights (hereinafter referred to as the "**USAA-Related MSRs**") associated with all USAA-Originated Mortgages are subject to and governed by only one contract – the Master Agreement described in paragraph 16 above.

19.     In accordance with the Master Agreement and the related course of conduct between the parties, USAA has reserved and held certain rights and GMACM has been subjected to various conditions and requirements pertaining to the USAA-Originated Mortgages that are currently being serviced by GMACM, including, as examples: (a) GMACM being prohibited from soliciting, marketing, or cross-selling to mortgagors, (b) GMACM servicing the mortgage loans in accordance with  performance level guides, objectives and standards, (c) GMACM utilizing specially trained counselors, (d) USAA being provided or having access to information concerning the mortgage loans, and (e) USAA serving as an advocate for mortgagors in their

---

[16] Reference in this Objection to USAA-Originated Mortgages is intended to include any and all mortgages which have been originated by USAA and are being serviced or subserviced by GMACM (whether or not USAA has any present ownership interest in such mortgages), and is meant to encompass all mortgages which are to be serviced in accordance with the terms, conditions and other provisions of the Master Agreement.

dealings with GMACM (all of such obligations and requirements described above and otherwise contained in the Master Agreement are hereinafter referred to as the "**Operating Conditions**").

20.      Also, under the Master Agreement GMACM has certain indemnification obligations to USAA on the basis of GMACM's errors and omissions in servicing or as a result of GMACM's violation of servicing standards with respect to the USAA-Originated Mortgages (collectively hereinafter referred to as "**Indemnification Obligations**").

21.      Further, the Master Agreement restricts the ability of GMACM to sell or transfer any interests in the USAA-Related MSRs, and retains in USAA the right to repurchase the USAA-Related MSRs upon termination of the Master Agreement (collectively hereinafter referred to as the "**Transfer Restrictions**").

22.      As originally created and in its current form, the Master Agreement has encompassed various terms, conditions and other provisions dealing with the origination, purchase and sale of mortgages (collectively, "**Origination Activities**") in addition to containing terms, conditions and other provisions associated with the servicing of mortgages.

23.      There are no ongoing Origination Activities as between USAA and GMACM which at present are subject to the Master Agreement.

24.      The current relationship between USAA and GMACM under the Master Agreement is not typical of origination and/or servicing arrangements that the Debtors have with other parties.  Also, Schedule 4.03 of the Nationstar APA provides that the Debtors "are seeking the consent of USAA… to GMACM's transfer of the servicing of its MSRs to Purchaser," and contemplates that "USAA [will] enter into a servicing agreement directly with Purchaser."

25.      Representatives of the Debtors, Nationstar and USAA have been in discussions about the terms, conditions and other provisions associated with an amended and restated or

possible new agreement that would be applicable to the servicing by the Purchaser of all USAA-Originated Mortgages after a Closing of the Sale of the Servicing Platform.  Because such discussions might not eliminate all potential issues and since a party other than Nationstar may become the Successful Bidder after the Auction, as a precaution and so as to preserve its rights, claims and interests under and in connection with the Master Agreement, USAA has filed this Objection.

26.    In accordance with paragraph 9 of the Contract Notice, USAA is interested in meeting and conferring with representatives of the Debtors, the Creditors' Committee and Nationstar (or other Successful Bidder for the Servicing Platform, as applicable), with the goal of resolving this Objection.

## OBJECTIONS

### Applicable Authorities and General Principles

27.    It is well established in cases and authorities construing and applying Section 365 of the Bankruptcy Code that an executory contract is to be assumed and assigned *cum onere,* with all of its benefits and burdens.  *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (U.S. 1984) ("[s]hould the debtor-in-possession elect to assume the executory contract…, it assumes the contract *cum onere*"); *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2nd Cir. 1996) (the requirements under Section 365 are "to insure that the contracting parties receive the full benefit of their bargain…" (internal citations omitted)); *In re MF Global Holdings Ltd*., 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("[t]he trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits").

28.    In the process of assumption and assignment of a contract, the rights and interests of the non-debtor party may not be adversely altered or denigrated.  *See In re Fleming Cos., Inc.*,

9

499 F.3d 300, 308 (3rd Cir. 2007) ("an assignment is intended to change only who performs an obligation, not the obligation to be performed" (citing *Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3rd Cir. 2001))); *In re 1945 Route 23 Assocs., Inc.*, 2008 WL 2386296 at *7 (Bankr. D. N.J. 2008) (rejecting assignee's argument that it was not responsible for amount accrued under a lease prior to the sale closing date even though such amount did not constitute an "Assumed Liability" under an asset purchase agreement, since the "flaw" in the argument was that "under the APA [the assignee] had expressly assumed the… lease").

29.     Among other requirements in connection with the assumption and assignment of a contract under Section 365 of the Bankruptcy Code, "adequate assurance of future performance by the assignee" must be provided "whether or not there has been a default in such contract…." 11 U.S.C. §365(f)(2)(B).  Because under 11 U.S.C. §365(k) a debtor or its estate will typically be relieved of liability under a contract after assignment, a necessary corollary is that the assignee shall become responsible for all future performance under the contract. *See In re Fleming Cos*., 499 F.3d at 305 ("[t]he statutory requirement of 'adequate assurance of future performance by the assignee' affords 'needed protection to the non-debtor party…'" [internal citations omitted]); *American Flint Glass Workers Union v. Anchor Resolution Corp*., 197 F.3d 76, 81 (3d Cir. 1999) ("an assignment of a contract as such involves a commitment by the assignee to perform all obligations under the contract, as well as to acquire all rights created by the contract").

**Primary Objection**

30.     As noted above, the Debtors are requesting that there be a Severing of any Multi-Function Contract so that only the portion constituting a Servicing Agreement will be assumed by the Debtors and assigned to the Purchaser.  Because for several years there have not been any

Origination Activities as between USAA and GMACM, USAA does not object in concept to such a Severing of its Master Agreement.[17]

31.      However, USAA is concerned that its rights, claims and interests under, and the terms, conditions and other provisions relating to, the Servicing Agreement which is included within the Master Agreement not be altered in any way or form during or as a result of the assumption and assignment process proposed by the Debtors.  Accordingly and as a general matter, USAA hereby objects to the assumption and assignment of the Servicing Agreement to which it is a party (the "**USAA Servicing Agreement**") unless each and all of the Operating Conditions, Indemnification Obligations, Transfer Restrictions and other contractual provisions therein (collectively, the "**Contract Provisions**") shall be and remain binding upon the Purchaser as assignee.

### Contours of the Servicing Agreement

32.      If or to the extent that any portion of the Nationstar APA or related schedule or agreement which is redacted or not publicly available and which has not otherwise been provided to USAA were to alter or change the Contract Provisions or USAA's related rights upon assumption or assignment of the USAA Servicing Agreement, USAA hereby objects to such treatment.

33.      USAA objects to the extent that paragraph P or any other finding, conclusion or provision of the proposed Sale Order would restrict, narrow or eliminate, for a Purchaser as assignee, the Contract Provisions and servicing obligations which are otherwise applicable to GMACM under the USAA Servicing Agreement.  USAA hereby incorporates by reference and adopts the analysis and reasoning contained in paragraphs 16 through 21 of the *Pre-Auction*

---

[17] In recent years, all of the origination activities under the Master Agreement have been with GMACM's non-debtor affiliate, Ally Bank.

*Objections of the RMBS Trustees to the Debtors' Sale Motion* filed on August 23, 2012 [Docket No. 1242] (hereinafter the "**RMBST Objection**").

34.    The Schedule accompanying the Contract Notice refers to two Investor Numbers in relation to the USAA Servicing Agreement.[18]   USAA is informed and believes that those two Investor Numbers only encompass approximately 210 of the USAA-Originated Mortgages, and may specifically constitute USAA's Retained Mortgages.   USAA objects to the extent that the Debtors are seeking to assume and assign a Servicing Agreement with USAA which would be confined to those Retained Mortgages and would not also encompass all USAA-Originated Mortgages.[19]

35.    If and to the extent that the Debtors may seek to treat the USAA Servicing Agreement as a non-executory contract (not subject to 11 U.S.C. §365) and instead to sell and transfer the USAA-Related MSRs pursuant to 11 U.S.C. §363, all of the Contract Provisions should be and remain binding upon and enforceable against the Purchaser after entry of the proposed Nationstar Sale Approval Order.  *See, e.g., DB Structured Prods. v. American Home Mortgage Holdings, Inc. (In re American Home Mortgage Holdings, Inc.)*, 402 B.R. 87, 99 (Bankr. D. Del. 2009) ("the *cum onere* principle applies equally to the transfer of rights and obligations under a non-executory contract pursuant to §363 of the Bankruptcy Code as to the assumption and assignment of contracts … pursuant to §365").   USAA hereby objects to the proposed Sale Order if or to the extent that any finding, conclusion or provision (including terminology on the Purchased Assets being sold and transferred free and clear of claims,

---

[18] See page 99 of "Exhibit 3a – Primary Servicing Contracts Schedule" which accompanies the Contract Notice (page 191 of 236 in Main Document).

[19] As mentioned in paragraph 25 above, ongoing discussions among the Debtors, Nationstar and USAA may result in the development and finalization of a new form (or amended and restated version) of a Servicing Agreement which could encompass or relate to all USAA-Originated Mortgages.

liabilities, interests, liens, obligations and encumbrances) may apply to the USAA-Related MSRs independent of or without the continuing applicability of the Contract Provisions or USAA's related rights, or could restrict, narrow, eliminate or render unenforceable any Contract Provisions or USAA's related rights as against the Purchaser.

36.     In connection with the Sale Motion and the Contract Notice, neither the Debtors nor Nationstar have produced or set out, in a definitive and separate writing, each and all of the terms, conditions and other provisions of the USAA Servicing Agreement which is contained within USAA's Master Agreement.  Obviously, this form of a "standalone" writing would eliminate possible ambiguity and uncertainty in the future relationship between USAA and any Purchaser as assignee of the USAA Servicing Agreement.  If produced in advance of the Auction, it would afford further certainty for all Potential Bidders as well as Nationstar, and could enhance the prospects of competitive bidding and the possibility of a robust Auction.  In any event, USAA objects to any assumption and assignment of the USAA Servicing Agreement unless such a writing is produced in advance of the Sale Hearing which demonstrates that all of the Contract Provisions and USAA's related rights shall be preserved.

37.     The final version of the Sale Order may and should confirm and provide that after the assignment of the subject Servicing Agreement to Purchaser, any Transfer Restrictions or other provisions which control assignment or other disposition of the Servicing Agreement shall remain effective, to the extent enforceable under and in accordance with applicable law, with respect to any possible reassignment or retransfer of the Servicing Agreement by the Purchaser.

**Claims Against the Purchaser and/or the Debtors**

38.     As noted in an earlier section, the Sale Motion, the Nationstar APA and the proposed Sale Order seek to absolve the Purchaser of any liabilities and performance

requirements under the USAA Servicing Agreement (after it is assigned to the Purchaser) to the extent that they are based upon claims or obligations which arose or relate to circumstances or events prior to the Closing. USAA objects to these provisions because they would improperly limit the responsibilities and obligations which should be undertaken by the Purchaser as assignee of the USAA Servicing Agreement, and do not constitute adequate assurance of future performance under the agreement.

39.     The Schedule accompanying the Contract Notice sets out a "zero" ($0.00) Cure Amount apparently for GMACM's servicing activities associated with USAA's Retained Mortgages, which as noted above appear to include only about 210 mortgages.[20] Although there may not be any liquidated amounts owed by the Debtors as of the Petition Date which pertain to any of the Retained Mortgages, USAA respectfully submits that such "zero" Cure Amount is still not appropriate or fair due to the considerations set forth in paragraphs 41 through 44 below.

40.     If the "zero" ($0.00) Cure Amounts are intended by the Debtors to apply to more Investor Numbers or additional USAA-Originated Mortgages beyond those related to or included in the Retained Mortgages, USAA hereby objects thereto (on the basis of inadequate notice as well as for the other reasons contained herein), and also respectfully requests additional time to prepare and submit to the Debtors an accounting of all actual or potential obligations of GMACM as of an anticipated Closing Date, and a corresponding Cure Amount. [21]

---

[20] See paragraphs 17 and 34 above.

[21] In such circumstances, and particularly if it were determined by the Bankruptcy Court that any and all obligations or liabilities which arose prior to the Closing Date in relation to the USAA Servicing Agreement shall remain with the Debtors instead of being required to be assumed or satisfied by the Purchaser, USAA respectfully suggests that an appropriate time by which it could submit a Cure Amount would be on or before the General Bar Date of November 9, 2012, for filing a proof of claim in the Debtors' cases. The General Bar Date was fixed in the Bankruptcy Court's *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* dated August 29, 2012 [Docket No. 1309].

41.     In any event, with respect to all USAA-Originated Mortgages, there have been, are or may be (a) known circumstances or events which at present constitute ongoing or unliquidated Indemnification Obligations under the USAA Servicing Agreement (hereinafter referred to as USAA's "**Unliquidated Claims**"), and (b) unknown circumstances or events arising prior to the Closing which at some time after the Closing may become known or result in claims against USAA and in turn produce Indemnification Obligations under the USAA Servicing Agreement (hereinafter referred to as USAA's "**Unknown Claims**").[22]

42.     Attached hereto as "**Exhibit A**" is a summary of circumstances or events, including various threatened or ongoing litigation, which at present constitute Unliquidated Claims by USAA based upon or related to GMACM's Indemnification Obligations.  Also, USAA hereby incorporates herein GMACM's Schedules of Assets and Liabilities (as amended) [Docket Nos. 550 and 685] and Statement of Financial Affairs (as amended) [Docket Nos. 600 and 836] to the extent that they reflect any such other circumstances or events which are not included in Exhibit A.

43.     USAA hereby incorporates by reference and adopts the analysis and reasoning contained in paragraphs 9 through 15 of the RMBST Objection, and hereby objects to the extent that any Unliquidated Claims, Unknown Claims, or any other possible claims by USAA associated with the USAA Servicing Agreement, including all claims based upon or related to

---

[22] As indicated by the authorities cited above, an assumption and assignment of a contract should be seamless from the perspective of the non-debtor party, and the process should not leave a gap in the treatment of any obligations or liabilities of the debtor and/or the assignee in relation to the contract assumed and assigned.

Indemnification Obligations, are not satisfied by the Debtors and/or do not become an obligation of the Purchaser.[23]

44.    For USAA's Unliquidated Claims and Unknown Claims which will not become the responsibility of or are not an assumed liability of the Purchaser pursuant to the Sale Order, USAA respectfully suggests and requests that an escrow account be established from proceeds of the Sale, from which such claims may be paid by the Debtors as and when appropriate.

45.    USAA objects to any provision of the Sale Order which would alter or impair USAA's rights of setoff or entitlement to recoupment under or in relation to the USAA Servicing Agreement after an assignment to the Purchaser.  *Cf. Folger Adam Security, Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252 (3rd Cir. 2000) (entitlement to recoupment may not be extinguished in "free and clear" sale under 11 U.S.C. §363(f)); *Hispanic Independent Television Sales LLC v. Kaza Azteca America Inc.*, 10 Civ. 932 (SHS), 2012 WL 1079959 (S.D.N.Y. Mar. 30, 2012) (claimant's affirmative defense of recoupment held not to have been extinguished by sale pursuant to 11 U.S.C. §363(b) and (f)).

### Adequate Assurance of Future Performance

46.    In connection with the Sale Motion, the Debtors have stated that they "will present facts at the Sale Hearing that demonstrate the financial credibility, willingness and ability

---

[23] USAA respectfully submits that, as among the Debtors, the Purchaser and USAA, it is most unfair for USAA potentially to be the party which should face the risk of loss on Indemnification Obligations that may materialize under the USAA Servicing Agreement.  As evidenced in the Schedule of Assets and Liabilities (as amended) and the Statement of Financial Affairs (as amended) which have been filed by GMACM (which includes litigation and other potential claims in which USAA has been identified as well as GMACM), the Debtors more than USAA are or should be aware of circumstances or events prior to the Closing Date which might give rise to or result in known or liquidated Indemnification Obligations at some time after the Closing Date.  In turn, that information has been or could be made available to and taken into account by all Potential Bidders as well as Nationstar in submitting their bids for the Servicing Platform if the Bankruptcy Court were to determine that the Purchaser should be responsible for such Indemnification Obligations.  Alternatively, as suggested in paragraph 44, proceeds from the Sale could be set aside for the payment and satisfaction of such Indemnification Obligations as and when they become known and liquidated over time after the Closing Date.

of Nationstar or any other Successful Bidder to perform under the Assumed Contracts."[24] USAA

hereby incorporates by reference and adopts the analysis and reasoning contained in paragraphs

22 and 23 of the RMBST Objection, and hereby objects to the assumption and assignment of the

subject Servicing Agreement to the extent that adequate assurance of the Purchaser's ability to

perform under the USAA Servicing Agreement is not demonstrated at the Sale Hearing or

otherwise provided.

## OTHER CONSIDERATIONS

### Objection to Sale

47.     Notwithstanding paragraph 22 of the Contract Notice, and in accordance with

section D of the Sale Notice, this Objection is intended by USAA and should be construed

additionally or separately as an objection or response to the Sale Motion.

### Reservation of Rights

48.     USAA respectfully reserves the right to (a) amend, supplement or otherwise

modify this Objection, and (b) assert or raise such other and further objections or responses to a

possible assumption by the Debtors and assignment to the Purchaser of the USAA Servicing

Agreement or a possible sale and transfer of the USAA-Related MSRs based upon additional

information received by USAA from the Debtors, Nationstar or other sources, and with respect

to any supplemental or revised notices or pleadings filed by the Debtors or any other party.

---

[24] *Memorandum of Law in Support of Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 For Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* filed on May 14, 2012 [Docket No. 62], ¶ 52, p. 30.

49.    Prior to the assumption, rejection or other disposition of the USAA Servicing Agreement and final resolution of the Sale Motion, USAA reserves all rights and remedies that may otherwise be available to it under the Bankruptcy Code and other applicable law.

## CONCLUSION

**WHEREFORE**, USAA respectfully requests that the Court (I) find and determine that USAA is entitled to relief on the basis of its Objection, (II) ensure that any assumption and assignment of the USAA Servicing Agreement or sale and transfer of the USAA-Related MSRs be in conformance with *cum onere* principles, (III) require that each and all of the Contract Provisions within USAA's Master Agreement shall be and remain binding upon and enforceable as against the Purchaser, (IV) provide for the payment or satisfaction by the Debtors and/or the assumption by the Purchaser of any and all claims of USAA, including those that are unascertainable, unknown or unliquidated as of the Closing and regardless of whether based upon or associated with a default under the USAA Servicing Agreement; and (V) grant to USAA such other and further relief as may be just and proper.

Dated:  September 27, 2012

*/s/ David M. Powlen*
David M. Powlen (DP – 0678)
BARNES & THORNBURG LLP
1000 North West Street, Suite 1200
Wilmington, Delaware 19801
Telephone:  302-888-4536
Facsimile:  302-888-0246
Email:  *david.powlen@btlaw.com*

*Attorneys for USAA Federal Savings Bank*

# **EXHIBIT A**

## Exhibit A to USAA Federal Savings Bank's Limited Objection

The following claims and potential claims by USAA Federal Savings Bank ("**USAA**") against GMAC Mortgage, LLC ("**GMACM**"), are unliquidated:

1. Current litigation asserting claims against USAA arising out of GMACM's servicing of certain loans:

    1.1. *Andrew D. Dunavant, Jr. and Mary F. Duanavant v. USAA Federal Savings Bank and GMAC Mortgage, LLC*; Cause # CV-2011-900691.00 in the Circuit Court of Baldwin County, Alabama.

    Plaintiffs' Complaint, filed May 3, 2011, asserts causes of action for Wantonness, Negligence, Breach of Contract, and Wrongful Foreclosure against USAA for which GMACM may be responsible. Plaintiff also sought a Temporary Restraining Order. Plaintiffs do not specify the amount of damages they seek. Some discovery has been conducted in this case. A Motion for Summary Judgment is pending.

    1.2. *William J. Barrett and Leah M. Barrett v. USAA Federal Savings Bank, Fannie Mae, and GMAC Mortgage, LLC*; Cause # 3:12-cv-00019 in the U.S. District Court for the Southern District of Ohio.

    Plaintiffs' Complaint, filed January 19, 2012, asserts causes of action for violations of RESPA and FDCPA against USAA for which GMACM may be responsible. Some discovery has been conducted in this case. This case is presently stayed.

2. Litigation in which a Plaintiff is asserting claims related to the Mortgage Electronic Registration System ("MERS"), and seeks to challenge the recording or lack of recording of certain mortgages originated by USAA and serviced by GMACM:

    2.1. *Guilford County, ex. Rel. Jeff L. Thigpen, Guilford County Register of Deeds v. Lender Processing Services, Inc., Mortgage Electronic Registration Systems, Inc., USAA Federal Savings Bank, et. al.*; Cause # 12-CVS-4531 in the NC Business Court, Superior Court Division, Guilford County, North Carolina.

    Plaintiff's Complaint and Motion for Appointment of a Special Master and for Injunctive Relief, filed on or about March 13, 2012, asserts causes of action for violations of North Carolina General Statute § 45-36.9, Unfair and Deceptive Trade Practices, and Unjust Enrichment against USAA and other defendants for which GMACM may be liable. The Defendants have filed Motions to Dismiss.

    2.2. USAA believes that other litigation related to MERS has been or may be instituted by local government officials involving mortgages originated by USAA and serviced by GMACM. Although USAA is not aware of any additional actions in which USAA has been named as a party, it is possible that such actions may result in future losses for or liability imposed upon USAA, and in turn a claim by USAA against GMACM.

**Page 1 of 2**

3.  Unresolved claims in which the Federal National Mortgage Association ("**FNMA**") or the Federal Home Loan Mortgage Corporation ("**FHLMC**") has asserted or may assert a claim, or has required or may require a repurchase of a mortgage, as a result of a servicing error by GMACM.

   3.1.  GMACM loan #702120106.  According to FNMA, GMACM did not timely deliver the loan to FNMA in accordance with applicable guidelines.

   3.2.  GMACM loan #702124365.  According to FNMA, GMACM failed "to properly foreclose or liquidate" this loan.

   3.3.  USAA anticipates there may be other loans for which FNMA or FHLMC could assert that GMACM failed to comply with a servicing guideline or purchase requirement, but USAA has not yet received notice of such alleged failures.