PAUL J. PASCUZZI – CA Bar No. 148810
(*Pro Hac Vice*)
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI, LLP
400 Capitol Mall, Suite 1450
Sacramento, CA  95814
Telephone:  (916) 329-7400
Facsimile:  (916) 329-7435
Email:  ppascuzzi@ffwplaw.com

**Hearing Date:   November 19, 2012**
**Hearing Time:  10:00 a.m.**

Attorney for California Housing Finance Agency

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC., et al.,<br><br>Debtors. | Case No.  12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered) |

**DECLARATION OF GREGORY CARTER IN SUPPORT OF OBJECTION OF CALIFORNIA HOUSING FINANCE AGENCY TO NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO**

I, Gregory Carter, hereby declare:

1.       I am the Portfolio Management Chief at the California Housing Finance Agency ("CalHFA").  If called upon to testify as a witness in this case, I could and would testify competently as to the matters stated herein of my own personal knowledge and based on the business records of CalHFA regularly maintained in the ordinary course of its business.

2.       This declaration is submitted in support of CalHFA's Objection ("Response") to the Debtors' *Notice of (i) Debtors' Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (ii) Cure Amounts Related Thereto* (Dkt No. 924) ("Cure Notice").

3.       In the ordinary course of my work, I regularly review, work with, and rely upon the

books and records of CalHFA including legal documents, notes, correspondence, financial statements, and reports which have been prepared by CalHFA's employees or agents or communicated to the trust in the ordinary course of business.

4.      I am familiar with (i) the books and records of CalHFA which are maintained in the ordinary course of business under my supervision and control as custodian; (ii) the legal affairs of CalHFA, (iii) the business and financial affairs and history of CalHFA; and (iv) the current business and financial condition of CalHFA.  In particular, I have reviewed the books and records insofar as they concern this Response.

5.      GMAC, one of the Debtor entities, entered into a Mortgage Purchase and Servicing Agreement ("Agreement") with CalHFA on February 12, 2007.  A true and correct copy of the Agreement is attached hereto as Exhibit A.

6.      Exhibit 3a of the Cure Notice lists two entries referencing Contract Number 1025 with CalHFA.  I am informed and believe that the references to two contracts in Exhibit 3a of the Cure Notice refer only to the Agreement.

7.      Under the Agreement, GMAC agreed both to originate and service eligible loans made pursuant to CalHFA's single family home loan program.  Section III.1 of the Agreement provides in relevant part:  "Lender shall service the Loans in accordance with the most restrictive requirements of the following: (i) this Agreement; (ii) the Servicer's Guide and/or Program Bulletins, to the extent not inconsistent with this Agreement, (iii) the requirements of the applicable Mortgage Insurer, and (iv) the customary practices of prudent lending institutions."  The Servicer's Guide is a lengthy document which, among other things, provides for penalties to be assessed to the CalHFA loan servicers if certain conditions are not met.  For example, FHA/VA/USDA loans are to have a grant deed recorded to convey title from CalHFA to the insurer or the servicer within 90 days of the trustee sale date.  A servicer is subject to a fifty ($50) dollar per day penalty assessment, with no maximum, for failing to comply with this requirement.

8.      As set forth in detail in a letter sent to GMAC by CalHFA dated August 15, 2012, GMAC owes CalHFA $45,100 in penalties for recording grant deeds late.  A true and correct copy of the August 15, 2012 letter is attached hereto as Exhibit B.

9.    Section II.4 of the Agreement provides in relevant part: "At all times during the term of this Agreement Lender shall be an approved FHA single family servicer and direct endorsement lender and shall be an approved FNMA seller, servicer and lender." CalFHA's Servicer's Guide, which is incorporated by reference in the Agreement, has provisions and procedures addressing the qualifications and application to become a servicer. True and correct excerpts of CalFHA's Servicer's Guide showing some of the requirements a CalHFA approved servicer must meet are attached hereto as Exhibit C.

10.    CalHFA already has an application procedure in place by which CalHFA insures that proposed servicers for its loans have the requisite financial health and capability to service CalHFA's loans. The CalHFA approval process includes the disclosure of certain information as well as a site visit by CalHFA auditors as a means for insuring that a servicer has the experience and capacity to service CalHFA's loans. Although Nationstar has applied to CalHFA to be an approved lender, it has not sought to be an approved servicer. In order to ensure compliance with the Agreement and CalHFA's Servicer's Guide, Nationstar has to apply for and be approved by CalHFA to be a servicer under the Agreement.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on ___9/27___, 2012 at Sacramento, California.

GREGORY CARTER

# EXHIBIT A

## CALIFORNIA HOUSING FINANCE AGENCY

## MORTGAGE PURCHASE AND SERVICING AGREEMENT

This Mortgage Purchase and Servicing Agreement ("Agreement") is entered into on **February 12**, 20 07 by and between the California Housing Finance Agency, a public instrumentality and political subdivision of the State of California ("CalHFA "), and_____ ("Lender"). GMAC Mortgage, LLC

## R E C I T A L S

A.    Lender is approved by CalHFA to originate and/or sell for CalHFA purchase and to service eligible loans made pursuant to CalHFA 's single family home loan programs.

B.    Lender has previously, is presently and/or intends, in the future, to originate and/or sell and service such loans.

C.    The purpose of this Agreement is to set forth the understandings of the parties with respect to those past, present and future loan originations, purchases and servicings.

D.    This Agreement is intended to replace and supersede any previous Mortgage Purchase & Servicing Agreements and/or Mortgage Purchase Agreements executed between the parties.  It is intended to apply to all loans (i) originated by Lender for purchase by CalHFA, (ii) originated by a correspondent lender and transferred to Lender for purchase by CalHFA, and (iii) for which the servicing obligation is or was assumed by Lender on behalf of CalHFA, unless otherwise specified by the parties by subsequent written agreement.

NOW, THEREFORE, the parties hereto agree as follows:

## ARTICLE I - DEFINITIONS

Definitions.  In addition to other terms which are defined in this Agreement, the following terms, as used herein, shall have the following meanings:

1.    "Bonds" means any bonds issued by CalHFA to finance the purchase of any of the Loans.

2.    "Borrower" means the person(s) who borrowed money pursuant to a Loan to finance the Home.

3.    "CaHLIF" means the California Housing Loan Insurance Fund, or any successor thereto.

4.    "Commitment" means any Forward Commitment Agreement, or other written single family loan commitment, made by CalHFA to Lender (and, in some cases, also to a third party developer or seller) whether past, present or future (unless otherwise specified by the parties by a subsequent written agreement).  In the case of CalHFA's Single Loan Reservation Process or similar

MPSA
06/26/06.slk                                           -1-

spot loan process, the "Commitment" shall refer to CalHFA's written conditional approval of a
Loan.

5.      "Commitment Documents" means the documents described in Article II, Section 3, below.

6.      "Deed of Trust" means the deed of trust which encumbers the Home and secures the Note
and Loan.

7.      "FHA" means the Federal Housing Administration of the United States Department of
Housing and Urban Development or any successor thereto.

8.      "FNMA" means the Federal National Mortgage Association, or any successor thereto.

9.      "Forward Commitment Agreement" means any written single family loan commitment
bearing that title which is executed between CalHFA , Lender and a third party developer in
connection with CalHFA 's Forward Commitment Program.

10.     "Home" means the residence and real property which is financed by a Loan and
encumbered by the Deed of Trust.

11.     "Loan" means any loan which is purchased by CalHFA (i) from Lender under the terms of
a Commitment, or (ii) from another lender and transferred to Lender for servicing with CalHFA
approval.

12.     "Loan Documents" means the Note, Deed of Trust and other documents evidencing and/or
securing a Loan.

13.     "Loan Origination" means the point in time when Lender (or a correspondent lender, if
applicable) makes the Loan to the Borrower.

14.     "Loan Purchase" means the point in time when CalHFA purchases the Loan from Lender.

15.     "Loan Servicer" means any lender, including CalHFA, which is  approved by CalHFA  to
service loans made pursuant to CalHFA 's single family home loan programs.

16.     "Mortgage Insurer" means any Private Mortgage Insurer, CaHLIF, FHA, VA, or other
insurer or guarantor approved by CalHFA  to provide mortgage insurance on or guarantee a Loan
under the terms of the applicable Commitment.

17.     "Note" means the promissory note, signed by Borrower, which evidences a Loan and is
secured by the Deed of Trust.

18.     "Private Mortgage Insurer" means any private insurance company approved by CalHFA to
provide mortgage insurance on a Loan under the terms of the applicable Commitment.

19.     "Program Bulletin" means a written announcement communicated to Lenders by CalHFA
describing the features (loan interest rates, delivery periods, eligibility requirements, etc.) of a pool
of funds from which commitments will be made.

20.     "Program Manual" means the Single Family Program Manual published by CalHFA, which, among other things, describes the program, including Borrower, Home and Loan eligibility requirements and Loan origination and purchase procedures, as such Program Manual may be amended from time-to-time.  It may also refer to any other program manual promulgated by CalHFA and identified as the program manual which applies to a Loan under the terms of the applicable Commitment, as such program manual may be amended from time-to-time.

21.     "Repurchase" means the purchase of a Loan from CalHFA by a Lender who either originally sold the Loan to CalHFA or subsequently assumed the obligation to service it.  Unless otherwise specified herein, or agreed to by the parties in writing, the Repurchase price shall be equal to the outstanding Loan balance, including principal, interest and other amounts, as of the date of the Repurchase.

22.     "Sales Price" means the total contract sales price paid for a Home by a Borrower, as calculated in accordance with the terms of the applicable Commitment.

23.     "Servicer's Guide" means the Servicer's Guide published by CalHFA setting forth the servicing procedures and requirements pertaining to the Loans, as amended from time-to-time.

24.     "Tax Code" means sections of the Internal Revenue Code and related regulations which are applicable to the Bonds.

25.     "VA" means the United States Veteran's Administration or any successor thereto.

## ARTICLE II - LOAN ORIGINATION & PURCHASE

1.     CalHFA Purchase.  CalHFA shall purchase Loans originated by  Lender in accordance with this Agreement (or originated by a correspondent lender and transferred to Lender if Lender is authorized by CalHFA  to do correspondent lender business).

2.     Lender Origination.  Lender (and its correspondent lenders, if applicable) shall originate Loans in compliance with the applicable Commitment and other provisions of this Agreement.

3.     Applicable Laws and Agreements.  All Commitments shall be  subject to the applicable provisions of Parts 1 through 4 of Division 31 (commencing with Section 50000) of the California Health and Safety Code, the Tax Code, Forward Commitment  Agreements, Program Manuals, this Agreement, program bulletins, program summaries, development information forms, conditional loan approvals and other agreements and documents pertaining to the Commitment all as amended from time to time. These documents shall be collectively referred to herein as the "Commitment Documents".  The Commitment Documents shall be incorporated into the Commitments and this Agreement by this reference.

4.     Lender Qualifications.  At all times during the term of this Agreement Lender shall be an approved FHA single family servicer and direct endorsement lender and shall be an approved FNMA seller, servicer and lender.  At no time during the term of this Agreement shall Lender service a dollar volume of Loans in excess of fifteen percent (15%) of CalHFA's total outstanding dollar volume of loans (made under its single family home loan programs) unless  Lender has written authorization from CalHFA  to work with correspondent lenders in the origination of Loans,

in which case said Lender's dollar volume of Loans shall not exceed twenty percent (20%) of CalHFA 's total outstanding dollar volume of loans. To the extent that Lender's Loan servicing portfolio exceeds the applicable limit, CalHFA may require Lender to release the servicing of new Loans to another Loan Servicer. **Within sixty (60) days following the execution of this Agreement by the parties,** Lender shall provide CalHFA with an "Opinion of Counsel to Lender" issued by a licensed California attorney and in substantially the form of Exhibit A attached hereto and incorporated herein by this reference. Lender's failure to provide such opinion letter within such time limit shall be cause for the termination of this Agreement and any Commitments and shall give CalHFA the right, in its sole discretion, to require Lender to Repurchase any Loans purchased by CalHFA between the date of such execution and the date of such termination. Lender represents and warrants that the factual statements contained in Paragraphs (i)-(iv) of such opinion letter are true and correct with respect to Lender and this Agreement. CalHFA shall have the right to require Lender to update such opinion letter from time-to-time, in its sole discretion.

5.    <u>Loan Documents.</u> In addition to the specific requirements of the applicable Commitment, each Loan shall satisfy the following general requirements:

(a)    As of Loan Origination, the Borrower shall have had the legal capacity to execute the Loan Documents and, as of Loan Purchase, the Loan Documents shall be valid and binding legal obligations of the Borrower, enforceable in accordance with their terms.

(b)    As of Loan Purchase, no counterclaim, offset, defense or right of rescission shall exist which could be asserted or maintained by the Borrower or his or her successor in interest against CalHFA or any subsequent Loan holder, and the Loan shall comply with all applicable local, state and federal laws, rules and regulations including, without limitation, all truth-in- lending and nondiscrimination laws.

(c)    The form of the Note, Deed of Trust and other Loan Documents shall have been approved by CalHFA , and provide that the Loan is transferable only under the limited circumstances and subject to the conditions specified in the applicable Commitment.

(d)    As of Loan Purchase, the Loan shall be insured by a valid and existing ALTA lender's title insurance policy naming CalHFA as an insured first mortgagee either directly or through a CLTA 104.1 endorsement and with the CLTA endorsements specified in the Commitment, with a policy limit of at least the outstanding Loan balance, insuring that the Loan constitutes a first lien on the Home subject only to liens for current taxes and assessments and liens, encumbrances, reservations, easements and other imperfections of title which in the opinion of Lender and CalHFA do not adversely affect any security interest of CalHFA or the marketability of CalHFA 's title, and that no rights are outstanding which could give rise to mechanic's or materialmen's liens for work performed or materials supplied prior to Loan Origination which are not fully insured by the title insurance policy. Notwithstanding the foregoing, in the event that CalHFA gives express written approval for a Loan to be a junior lien, such title policy shall insure the Loan as having the priority specified in such CalHFA written approval.

(e)    As of Loan Purchase, no payment required by the Loan Documents shall be delinquent nor shall Lender have advanced funds, or directly or indirectly induced or solicited any advance of funds by another, other than the Borrower, for the payment of any such amount. As of Loan Purchase, no event of default under the Loan Documents shall have occurred or shall be

MPSA
06/26/06.slk                                    -4-

continuing, and no event shall have occurred which would, by the passage of time or the giving of notice thereof, constitute an event of default.

(f)    As of Loan Purchase, the unpaid Loan balance shall be due and owing and there shall be no impairment of or right of set off against Borrower's obligation to make payments when due on the Loan.

(g)    As of Loan Purchase, there shall not have been any release, cancellation, subordination, satisfaction or impairment, in whole or in part, of the Loan, (except for previously remitted payments of principal and interest) without the prior written approval of CalHFA .

(h)    As of Loan Purchase, the Loan, terms, covenants and conditions shall not have been waived, altered, impaired or modified in any way which would adversely affect its value, validity or enforceability.

(i)    As of Loan Purchase, the Loan shall not be subject to any existing assignment or pledge and the Lender shall have good title immediately prior thereto and full right and authority to assign and transfer the same and to endorse and deliver the Loan Documents to CalHFA, free and clear of encumbrances except those  approved in accordance with Article II, Section 5(d) above and those otherwise approved in writing by CalHFA .

(j)    As of Loan Purchase and at all times thereafter, the Loan shall be subject to either (i) a valid and existing policy of mortgage insurance issued by a Mortgage Insurer, or (ii) a commitment for mortgage insurance by FHA.  Lender understands and agrees that the Mortgage Insurers may, during the Commitment term, have the right to raise their premiums, materially alter their underwriting criteria and/or suspend the writing of new insurance.   Lender understands and agrees that if any Mortgage Insurer takes any such action, CalHFA shall not be obligated to cancel any  Commitment, refund fees or otherwise be liable for any resulting  losses to Lender.

6.    Home.  In addition to the specific requirements of the applicable Commitment, each Home shall satisfy the following general requirements:

(a)    As of Loan purchase, the Home shall not be damaged by water, fire, earthquake, wind, storm, flood, tornado, or other cause so as to adversely affect it as security for the Loan or for the intended use and there shall be no pending or threatened proceeding for the total or partial condemnation of said Home or for the abatement of nuisances thereon.

(b)    As of Loan Purchase, the Home and the intended use, shall comply with all applicable laws, including those relating to the protection of the environment; there shall be no threatened or pending case or proceeding directly involving said Home in which compliance with any such law is or will be at issue; and nothing further shall remain to be done to satisfy in full all requirements of each such law constituting a prerequisite to such use and enjoyment of the Home.

(c)    As of Loan Purchase and at all times thereafter, the  Home shall be insured by a valid and existing policy of standard hazard insurance in an amount equal to the replacement cost of the improvements as may be increased from time to time by reference to an inflation index used by the insurer.  The policy shall insure CalHFA or Lender and CalHFA , as their interests may appear, and shall have an endorsement for earthquake damage coverage as and if required by the applicable

MPSA
06/26/06.slk                                      -5-

Commitment. The policy shall be issued by a company meeting the insurance requirements of FNMA and FHA and otherwise comply with the terms of the Commitment.

(d)    As of Loan Purchase, the Home improvements shall be fully completed, lie wholly within the boundaries and building set-back restrictions of said property and shall not violate zoning laws, housing codes, or similar local requirements.

7.    Tax-Exempt Bond Financed Loans.    In addition to the specific requirements of the applicable Commitment, all Loans financed from the proceeds of Bonds shall satisfy the following general requirements:

(a)    As of Loan Purchase <u>and at all times thereafter</u>, the Loan, Borrower, Home and transaction shall meet all the requirements of the Bonds and related documents, including, if applicable, all requirements necessary to ensure that interest payable to the bondholders are exempt from federal and State of California income taxes.

(b)    Prior to Loan Origination, the Borrower shall have been informed that information submitted in his or her application for a Loan may be information that is required by the Tax Code to be disclosed and reported to the Internal Revenue Service and, if so, shall have consented to such disclosure or report.

8.    CalHFA Fees.    As of Loan Purchase, or sooner if required, all fees and other charges required by CalHFA with respect to the Loan under the applicable Commitment shall have been paid to CalHFA. In the event that CalHFA permits Lender to provide a letter of credit in lieu of paying fees up front and/or in cash (i) the obligation to pay such fees shall only be discharged to the extent that such letter of credit is honored by the issuing bank or the fees otherwise paid, and (ii) Lender hereby waives any right it may have, or hereafter acquire, to enjoin the draw by CalHFA or honor by the issuing bank of such letter of credit.

9.    Lender Fees & Closing Costs.    The closing costs, fees or charges, of any kind or nature, which Lender shall collect from any party with respect to the making of any Loan shall not exceed those allowable under the applicable Commitment.    No fees, charges or other remuneration (including charges commonly known as "points") other than those stated above shall be directly or indirectly received by Lender in making any such Loan. Lender shall pay for the preparation and furnishing to CalHFA of all instruments herein specified, and pay any expenses incurred in connection with the origination transactions covered by this Agreement, including, but not limited to, the cost of preparing and recording all the documents and related legal fees.

10.    Representations and Warranties.    Lender represents and warrants that, as of Loan Purchase, all of the requirements of this Agreement and applicable Commitment shall have been or shall be, as applicable, satisfied with respect to each Loan. Any failure of a Loan to comply with such requirements shall constitute a breach of this Agreement.

## ARTICLE III - LOAN SERVICING

1.    Servicing Duties. Lender shall service the Loans in accordance with the most restrictive requirements of the following: (i) this Agreement, (ii) the Servicer's Guide and/or Program Bulletins, to the extent not inconsistent with this Agreement, (iii) the requirements of the applicable

Mortgage Insurer, and (iv) the customary practices of prudent lending institutions. Lender shall not take, or permit any action to be taken, with respect to a Loan which would cause such Loan to fail to satisfy the requirements of Article II, Section 5, 6 and 7 on a continuous basis following Loan Purchase. Until each Loan is repaid or otherwise satisfied, Lender shall maintain a complete Loan file which includes all of the Loan documents and other information which evidences the eligibility of the Borrower, Home and Loan.

2.      Deposits. All funds held by Lender under this Agreement (except funds held as impound escrow accounts for the benefit of Borrowers ("Impound Accounts")) shall be held in accounts in trust for CalHFA . Such accounts shall be referred to herein as "Trust Accounts". The records for each Trust Account shall reflect that it is held in trust for CalHFA and for the series of Bonds, if applicable, to which such funds relate. Trust Accounts shall be deposited in banks, trust companies, savings and loan associations, or national banking associations ranked 125 or higher by IDC and other than Lender's own bank, subsidiary, parent, holding company or other related entity, and shall be insured to the maximum allowable amount by the Federal Deposit Insurance Corporation ("FDIC"). Should the amount of the funds held in a Trust Account exceed the limits of the FDIC insurance, the amount of the funds over the insured amount shall be transferred by Lender within two (2) working days to another Trust Account insured by FDIC in a different bank, trust company, savings and loan association or national banking association (unrelated to Lender). The Trust Accounts shall be subject to withdrawals or audit by CalHFA at any time. Impound Accounts shall be maintained in the amounts specified in, and conform to, the requirements of the Servicer's Guide, and/or FHA, or VA, as applicable.

3.      Servicing Authority. Lender, for the benefit of and on behalf of CalHFA, may endorse insurance checks for any amount up to Seven Thousand Five Hundred and No/100 Dollars ($7,500.00) without the prior approval of CalHFA , may submit insurance claims to the applicable Mortgage Insurer and may execute notices of default and other applicable documents incident to foreclosure, all in accordance with the Servicer's Guide.

4.      Agent Relationship. Except as specifically set forth herein or in the Servicer's Guide or other written agreement executed by CalHFA , Lender shall not be an agent of CalHFA and shall have no authority and no power to waive or vary the terms of any Loan or  in any other respect create, extinguish or modify any right, obligation or liability of CalHFA to any person whatsoever, except as such rights, obligation or liabilities of CalHFA may be affected  incidentally by the discharge by Lender of its contractual obligations to CalHFA . Notwithstanding the foregoing, CalHFA  hereby confers on Lender a license to service the Loans unless and until  such rights are terminated as herein provided, in which event said license shall be deemed revoked.

5.      Waiver of Loan Provisions. Lender shall not waive or allow any Borrower to avoid or postpone compliance with any terms, conditions or provisions of any Loan, except for forbearance during default if done in accordance with forbearance procedures set forth in FHA directives, VA directives, CalHFA directives or in the Servicer's Guide, as applicable.

6.      FHA-Insured Loans. Lender shall remit to CalHFA, on or before the 5th day of each month, the amount of all Loan payments due on FHA-insured Loans for the preceding month or months.   In the event Lender shall not have received a Borrower's Loan payment for any FHA-insured Loan as of such date, Lender shall advance such Loan payment to CalHFA, less its servicing fee, from its own funds. Any failure by Lender to make such Loan payments to CalHFA

shall constitute a breach of this Agreement. At any time a payment on any FHA-insured Loan is due and unpaid, Lender may, at its option, Repurchase such Loan. Acting as CalHFA's agent and on CalHFA's behalf, Lender shall purchase any FHA-insured Loan sold at trustee's sale if required by FHA's servicing directives. Lender shall, unless otherwise advised by CalHFA , Repurchase any FHA-insured loan within ninety (90) days of acquisition of the Home by    CalHFA  whether or not through foreclosure, deed in lieu of foreclosure, or otherwise.

7.    VA-Insured Loans.  Servicer shall remit to CalHFA, on or before the 5th day of each month, the amount of all Loan payments due on VA-insured Loans for the preceding month or months. In the event Servicer shall not have received a Borrower's Loan payment for any    VA-insured Loan as of such date, Servicer shall advance such Loan payment to CalHFA, less its servicing fee, from its own funds. Any failure by Servicer to make such Loan payments to CalHFA shall constitute a breach of this Agreement. At any time a payment on any VA-insured Loan is due and unpaid, Servicer may, at its option, Repurchase such Loan. Acting as CalHFA's agent and on CalHFA 's behalf, Servicer shall purchase any VA-insured Loan sold at trustee's sale if required by VA's servicing directives.  Servicer shall, unless otherwise advised by CalHFA , Repurchase any VA-insured Loan within ninety (90) days of acquisition of the Home by CalHFA  whether or not through foreclosure, deed in lieu of foreclosure or otherwise.

8.    Monthly Fees.  As compensation for its servicing duties  hereunder, Lender shall retain, from each complete monthly Loan payment collected, a servicing fee as provided in the applicable Commitment Documents, based on the unpaid principal balance of the Loan as of immediately prior to such monthly payment.

9.    Late Charges.  Lender shall be entitled to retain all late charges payable and collected under the terms of the Loan Documents.

10.    Payment of Expenses.  Except for FHA-Insured Loans, Lender  shall be reimbursed by CalHFA  for its out-of-pocket expenses reasonably incurred as provided in the Servicer's Guide in protecting any Home from deterioration or waste during Loan default and for other related costs, including attorney's fees approved as reasonable by CalHFA .

11.    Termination of Compensation.  Lender's right to compensation for servicing a Loan shall cease upon the occurrence of any of the following:

    (a)    Payment or prepayment of the Loan in full;

    (b)    Payment default by Borrower except as to full Loan payments, if any,    thereafter received from Borrower and  remitted to CalHFA ;

    (c)    Acquisition of the Home by CalHFA whether or not through foreclosure, deed in lieu of foreclosure or otherwise;

    (d)    Termination of Lender's servicing duties pursuant to this Agreement; or

    (e)    Termination of this Agreement.

12.    Bond Requirements.  Lender shall at all times do and perform  all acts permitted by law

and necessary or proper to ensure that interest on the Bonds shall be exempt from federal and State of California income taxes (unless such Bonds were issued as taxable bonds). <u>This includes the mandatory Repurchase of Loans in the event that an act or omission, error or fraudulence occurs.</u> If directed by CalHFA, Lender shall bill the payments on each Loan at a reduced interest rate, if CalHFA determines such reductions to be necessary or proper in order to preserve any federal or State tax exemption on the Bonds or other obligations which CalHFA has issued or expects to issue in order to purchase any Loans. CalHFA may subsequently require the reinstatement of the original interest rate at any time, in its sole discretion. CalHFA shall bear all reasonable and necessary costs incurred to accomplish any such reduction of interest rate or reinstatement of the original interest rate that it may so direct. CalHFA further agrees that any directed reduction in interest rate of any Loan shall be accomplished in a manner which will preserve the right of Lender to reinstate the original rate for the remainder of the term of any such Loan in the event of any Repurchase of such Loan by Lender. No reduction in interest rate directed by CalHFA shall reduce Lender's compensation under this Agreement.

## ARTICLE IV - ASSIGNMENTS AND/OR TRANSFERS

1.    CalHFA may transfer, assign or otherwise dispose of any Loan without the consent of Lender, but in such event, written notice thereof shall be delivered or mailed to Lender giving the name and address of the assignee. Upon notification of the transfer or the assignment of any Loan, Lender shall remit to CalHFA all funds collected on said Loan and its compensation for such servicing shall terminate.

2.    Lender shall not delegate, assign, or transfer its servicing duties to another without prior written approval from CalHFA. If Lender desires to sell its CalHFA Loan servicing portfolio, it must first notify CalHFA to obtain a current listing of Loan Servicers and thereafter offer its CalHFA portfolio to a Loan Servicer. If no other Loan Servicer bids on the portfolio, and Lender still desires to transfer its portfolio, Lender shall transfer said portfolio to CalHFA. CalHFA shall compensate Lender for said portfolio at a price to be negotiated between CalHFA and Lender.

## ARTICLE V - TERMINATION

1.    <u>Termination for Breach or Harmful Acts.</u>

    (a)    CalHFA , in its sole discretion, may terminate servicing by Lender under this Agreement by giving such party thirty (30) days notice of termination of the servicing under such Agreement, upon: (i) Lender's breach of any covenant, agreement or servicing obligation in this Agreement; or (ii) a determination by CalHFA that Lender has committed acts in the origination, servicing and/or sale of one or more of the Loans under this Agreement that have caused harm to CalHFA or has sold one or more Loans with knowledge that any of the warranties made by the Lender with respect to such Loan(s) is, in fact, untrue.

    (b)    A Lender to whom a notice of termination is given by CalHFA under Subsection 1(a) above shall have thirty (30) days after such notice is given to correct any breach on which the notice of termination is based. If within such period of thirty (30) days, the breach has been remedied to the satisfaction of CalHFA, and such breach did not involve conduct described in Subsections 1(d)(1) through 1(d)(6), below, such notice of termination may be deemed void, at CalHFA 's sole discretion, in which case, the servicing under this Agreement shall continue in

effect. If each breach has not been so remedied, the termination shall take effect in accordance with the original notice by CalHFA. Lender shall not be entitled to any termination fee or proceeds from any sale of servicing if CalHFA terminates the Lender's servicing under this Agreement pursuant to this Section 1.

(c)    Notwithstanding anything in this Article V to the contrary, if any event occurs which constitutes a breach on the part of Lender of this Agreement or of servicing obligations under the Servicer's Guide that may result in immediate or irreparable harm as determined by CalHFA, then CalHFA, at its option, may terminate servicing by Lender without any waiting period by giving Lender notice of termination. Under such circumstances, CalHFA may, with Lender's full agreement and whose consent is hereby given, take possession of and remove from Lender's possession the Loan files and related data Lender is servicing at such time.

(d)    Any of the following events shall constitute a breach of this Agreement and of the servicing obligations pursuant to this Agreement:

(1)    Lender's failure to comply with any provision of this Agreement including, but not limited to, the following:

(i)    Lender's failure to establish and maintain satisfactory accounts for the deposit of CalHFA's and Borrower's funds, as specified by provisions of this Agreement;

(ii)    Lender's use of CalHFA 's or the Borrower's funds in any manner other than as permitted by this Agreement including, but not limited to, the failure of Lender to deposit all funds collected pursuant to the Loans in the proper custodial account not later than the first business day following their receipt, except as otherwise permitted by this Agreement, or the failure of Lender to remit to CalHFA , or make available for draft, all funds due CalHFA within the time periods specified in this Agreement including, but not limited to, funds with respect to Lender's obligation to assume the risk of loss from Borrower defaults for Loans serviced hereunder;

(iii)    Lender's failure to maintain adequate and accurate accounting records and mortgage servicing records relating to the Loans; in accordance with the requirements of this Agreement;

(2)    Lender's failure to take diligent action consistent with applicable law to collect sums past due on the Loans or to take any other diligent action that CalHFA or acceptable industry practice reasonably requires with respect to Loans that are in default;

(3)    Lender's failure to take diligent action consistent with applicable law to foreclose any Loan that is in default, whether or not resulting from the acts or omissions of an attorney, trustee, or other person or entity chosen by Lender to effect such foreclosure;

(4)    Lender's failure to comply with any material law, regulation, or judicial precedent relevant to the servicing of the Loans;

(5)    The insolvency of Lender, the adjudication of Lender as a bankrupt, the appointment of a receiver for Lender, any action by the Resolution Trust Corporation that adversely affects Lender, the execution by Lender of a general assignment for the benefit of Lender's

creditors, and if any such event should occur, no interest in this Agreement shall be deemed an asset or liability of Lender's successor or assigns, nor shall any interest in such Agreement pass by operation of law without the consent of CalHFA;

(6)    A sale of the majority interest in Lender or a change in the corporate status of a corporate Lender without the prior written consent of CalHFA;

(7)    The finding by a court of competent jurisdiction that Lender, or any principal officer of Lender, has committed an action that constitutes civil fraud or the conviction of Lender or any such officer of any criminal act that is related to Lender's lending or mortgage servicing activities; provided, however, that in CalHFA's opinion, such act adversely affects Lender's reputation or the reputation or interests of CalHFA .

(e)    Prior to giving notice of termination under this Section, CalHFA shall have the right, at CalHFA's option, to take any reasonable action authorized by this Agreement because of Lender's act, omission, or failure to render adequate performance in breach of this Agreement. CalHFA shall not be required to take any action as a condition of termination of the servicing under this Agreement.

(f)    Any forbearance by CalHFA in exercising CalHFA's right to terminate the servicing under this Agreement shall not be a waiver of or preclude the exercise of any right hereunder.

2.    <u>Termination Due to Inadequacy of Financial Condition.</u>

(a)    CalHFA may, in its sole discretion, determine to terminate Lender's servicing of CalHFA loans immediately if there is an adverse change in the financial condition of Lender which CalHFA deems to present an unjustifiable risk to the servicing of its Loans, the security of its bondholders, and the ability of Lender to carry out its obligations under this Agreement. Upon such termination, custody and possession of CalHFA's Loan files and related materials shall be immediately delivered to CalHFA. The financial condition and/or events which could result in termination under this Section 2, include but are not limited to:

(1)    The deterioration of Lender's financial condition to the point that CalHFA deems Lender's ability to meet its obligations under this Agreement to be an unacceptable risk to CalHFA 's Loan portfolio and its bondholders.

(2)    CalHFA has reason to believe that Lender's bankruptcy is imminent;

(3)    CalHFA has reason to believe that takeover of Borrower by a federal or state agency is imminent;

(4)    CalHFA determines that Lender must be replaced in order to protect the interests of the bondholders; and

(5)    The sale of a majority interest in Lender or a change in Lender's corporate status without prior written consent by CalHFA.

MPSA
06/26/06.slk                                          -11-

(b)    Promptly after delivery of the Loan files and related materials, CalHFA shall compensate Lender at a price to be negotiated between CalHFA and Lender where CalHFA has terminated Lender's servicing pursuant to this Section 2.

3.    Termination in the Absence of Breach or Harmful Acts.

CalHFA, in its sole discretion and for any reason, may terminate servicing by Lender under this Agreement by giving Lender notice of termination of the servicing under this Agreement; provided, however, that in the event Lender shall not have breached any covenant, agreement or servicing obligations of this Agreement and, as determined by CalHFA , has not committed any of the acts or breaches of warranty specified in this Agreement, the following terms and conditions shall be given effect:

(a)    Lender, upon such notice of termination by CalHFA, must offer to sell the servicing to a Loan Servicer, and arrange to promptly transfer the Loans in accordance with procedures and documentary requirements that are specified by CalHFA for transfers of servicing. Lender's privilege of sale and transfer hereunder shall automatically terminate if not exercised within one hundred fifty (150) days (ninety days to negotiate the sale and sixty (60) days to effectuate the transfer of the CalHFA servicing portfolio files, records, and accounts) following the date on which notice by CalHFA shall have been given as provided above. If such a sale and transfer by Lender is properly consummated within such one hundred fifty- (150-) day period, Lender may retain the proceeds of the sale, subject to any remaining claims of CalHFA for moneys due pursuant to this Agreement, including payment by Lender of the CalHFA servicing transfer fee. Lender shall indemnify CalHFA and hold it harmless against any costs or expenses in connection with such a sale and transfer.

(b)    If Lender shall not have sold and transferred the servicing under the foregoing paragraph within the time permitted therein, CalHFA shall require Lender to transfer the servicing to the highest bidding Loan Servicer within thirty (30) days following the end of the aforementioned one hundred fifty- (150-) day period. Lender shall continue servicing the Loans pursuant to the standards and requirements under this Agreement, until CalHFA has given the Lender notice that the transfer has been effected. Upon the notice of transfer, the servicing under this Agreement shall immediately terminate as between CalHFA and the Lender, effective as of the date specified by CalHFA, and servicing of the Loans will be assumed by the successor servicer. Upon the sale of servicing, pursuant to this Section 3 of this Agreement, Lender shall pay CalHFA its servicing transfer fee. Except as expressly provided in this Agreement, no payments or compensation shall be made by CalHFA to any Lender for termination of the servicing under this Agreement or any transfer of servicing or other interests and rights thereunder.

4.    Timing of Termination.

(a)    In order to assure the proper continued servicing of Loans, any termination of servicing under this Agreement pursuant to this Section shall be effective only on the date specified by CalHFA. Once the transfer of servicing under this Agreement is effective, the successor servicer, and not Lender, shall have all servicing rights under the Agreement.

(b)    Termination of the servicing of any Loan by either CalHFA or Lender shall not release Lender from any responsibility or liability on the part of Lender that arises prior to

termination except as CalHFA expressly releases the Lender in writing from such responsibility or liability.

(c)    Any notice or termination given under this Agreement shall be in writing and shall be delivered in person or sent by registered mail or certified mail, return receipt requested, addressed to the party to whom such notice is directed. The registering with any post office, or the mailing of any such notice, shall constitute delivery and notice to such party.

5.    Exclusion From Other CalHFA Finance Programs. CalHFA may prohibit the participation of Lender in new financing programs during the resolution period.

6.    Termination by Lender. Lender shall have the right to terminate this Agreement without prior written approval of CalHFA    if, within thirty (30) days following the effective date of any unilateral amendment or supplement to the Servicer's Guide by CalHFA , Lender gives CalHFA written notice of its election to terminate its Loan origination and servicing duties under this Agreement. This Agreement shall continue in full force and effect, and Lender's servicing duties hereunder shall be performed under the Servicer's Guide as it existed immediately prior to the amendment or supplement causing Lender's written notice of election to terminate, until CalHFA has entered into an Agreement with another Loan Servicer at which time this Agreement shall terminate. CalHFA agrees to use its best efforts to enter into another Agreement within a reasonable period of time. Lender shall have no other right to terminate this Agreement without prior written approval of CalHFA .

7.    Effect of Termination. If any event of termination occurs, no interest in this Agreement shall be deemed an asset or liability of Lender or Lender's successors or assigns, nor shall any interest in this Agreement pass by operation of law without the consent of CalHFA .

8.    Duties Upon Termination. From and after the effective date of termination of this Agreement pursuant to any provisions hereof, Lender shall be relieved of further responsibility in connection with originating or servicing Loans. Unless specifically provided for in writing between the parties, no Loans shall be purchased by CalHFA from Lender following that date. Lender shall immediately pay CalHFA ll monies collected and held by it, less any servicing fees to which it is entitled pursuant to this Agreement, the Servicer's Guide or other agreement entered into in writing between the parties relating to the Loans. Within fifteen (15) days of notice of termination, Lender shall deliver to CalHFA or assigns all Loan documents, insurance policies, and records in connection with Loans purchased by CalHFA . Within thirty (30) days of termination, Lender shall deliver to CalHFA full accounting, including a statement showing the monthly payments collected by it and a statement of monies held in trust by it for the payment of maintenance or other charges with respect to all Loans.

## ARTICLE VI - REMEDIES

1.    Borrower's Misrepresentation. In the event that any representation by a Borrower with respect to a Loan shall prove to have been untrue when made or at the time of Loan Purchase, Lender shall have one hundred fifty (150) days from the date of discovery of the misrepresentation by Lender or CalHFA    in which to cure any Tax Code defects caused by Borrower's misrepresentation. If such cure cannot be effected within said period, Lender shall, at the option of CalHFA , immediately Repurchase such Loan.

MPSA
06/26/06.slk

2.    <u>Lender's Negligence or Misrepresentation</u>.  In the event of any default or breach of this
Agreement or any of the Commitment Documents including, but not limited to Lender's failure to
make Loan payments on FHA insured Loans as required by Article III Section 6 hereof, or
negligence, including, but not limited to, failure to exercise due diligence in determining the
accuracy of Borrower's representations, or misrepresentation by Lender, Lender shall have sixty
(60) days from discovery by Lender or CalHFA of such default, breach, negligent act or
misrepresentation in which to cure such default, breach, negligent act or misrepresentation.  If such
cure cannot be effected within the 60-day cure period, Lender shall, at the option of CalHFA,
immediately Repurchase such Loan.

3.    <u>Loan Originator's Negligence or Misrepresentation</u>.  In the event that Lender is servicing
Loans originated and/or sold to CalHFA by another lender, any default or breach of this Agreement
or any of the other Commitment Documents, or negligence (including, but not limited to, failure to
exercise due diligence in determining the accuracy of Borrower's representations) or
misrepresentation by a Loan originator other than Lender (excluding Lender's correspondent
lenders), Lender shall have one hundred fifty (150) days from the date of discovery by Lender or
CalHFA of the default, breach, negligent act or misrepresentations in which to cure any Loan
noncompliance caused thereby.  If such cure cannot be effected within said 150-day period, Lender
shall, at the option of CalHFA , immediately Repurchase such Loan.

4.    <u>Cost of Repurchase</u>.  CalHFA shall be entitled to reimbursement from Lender for all of its
costs in enforcing the repurchase of a Loan, including, but not limited to, attorneys' fees.

5.    <u>Insurance Remedies</u>.

    (a)    <u>Failure to Maintain Insurance or Make Timely Claim</u>.  Lender's obligation to
maintain each policy of standard hazard insurance as required by Article II, Subsection 6(c) and
mortgage insurance required by Article II, Subsection 5(j) herein is absolute, and is not conditioned
on payment of impound fees or insurance premiums by the Borrower.  In the event Lender fails to
maintain any insurance policies required by this Agreement or the Servicer's Guide including, but
not limited to, policies of standard hazard insurance, mortgage insurance, or do any act required by
an insurer, this Agreement or the Servicer's Guide, which causes a loss under a required policy to be
wholly uninsured, or if a loss is uninsured due to a dispute regarding the coverage between Lender
and the insurer, Lender shall Repurchase the Loan within thirty (30) days of CalHFA 's demand.

    (b)    <u>Failure to Make Claim Within Time Specified in Servicer's Guide</u>.  In the event
Lender fails to make a claim to any insurer on CalHFA 's behalf within the time limits set out in the
applicable insurance policy, this Agreement or the Servicer's Guide, or maintains or causes to be
maintained, insurance in an amount less than the amount required by this Agreement or the
Servicer's Guide and such failure results in a loss of interest earnings by CalHFA , or an insufficient
payment on an insured loss, Lender shall pay to CalHFA all interest on the Loan accruing from the
stated claim date and the date the insurance claim is received by the insurer, or the amount of the
uninsured loss, as applicable, unless such interest or uninsured loss is paid to CalHFA by the
insurer or Borrower, or at CalHFA 's option, Lender will be required to Repurchase the Loan within
thirty (30) days of CalHFA 's demand for Repurchase.

## **ARTICLE VII - MISCELLANEOUS**

1.    <u>Duration of Agreement</u>.  Unless sooner terminated as herein provided, this Agreement shall continue from the date hereof until terminated by the mutual consent of the parties.

2.    <u>Other Remedies; Cumulative Remedies</u>.  In addition to the remedies set forth above, CalHFA shall have all remedies available at law or in equity. All of such remedies shall be cumulative and the exercise by CalHFA of any one or more of them shall not in any way alter or diminish the rights of CalHFA to pursue any other remedy provided for herein or at law or in equity.

3.    <u>Warranties of the Lender</u>.    The representations, warranties and covenants of the Commitment Documents are hereby incorporated herein by this reference.

4.    <u>Compliance with Applicable Laws</u>.  Lender shall comply with the requirements of all federal, state and local laws applicable to the Loans.

5.    <u>Indemnification by Lender</u>.  Lender shall indemnify and hold CalHFA harmless against any and all expenses, fees, losses, damages, penalties, fines, forfeitures, legal fees and related costs that CalHFA may incur as a result of any failure on the part of Lender to comply with this Agreement.

6.    <u>Examination of Account and Loan Records</u>.  Lender shall permit any employee or designated representative of CalHFA at any reasonable time during regular business hours to examine, audit and copy any of the Loan records maintained by Lender.

7.    <u>Severability</u>.  In the event that any provision of this Agreement conflicts with applicable law, such conflict shall not affect the other provisions of this Agreement which can be given effect without such conflict, and to that end the provisions of this Agreement shall be severable.

8.    <u>Prohibition of Assignment</u>.  This Agreement shall not be assigned whether voluntarily, by operation of law or otherwise, by Lender without the written consent of CalHFA. Any assignment or attempted assignment by Lender shall be void and deemed to be cause for termination of this Agreement or other remedial action by CalHFA.

9.    <u>Notices</u>. Unless otherwise specified in this Agreement, all notices from Lender to CalHFA shall be sent by mail addressed to Single Family Program Administration Manager, California Housing Finance Agency, 1121 "L" Street, 7th Floor, Sacramento, California 95814, and all notices from CalHFA to Lender shall be sent by mail addressed to Lender at the address specified below unless another address is designated in writing by Lender.

10.    <u>Governing Law</u>. This Agreement shall be governed by the Laws of the State of California.

11.    <u>Amendment or Waiver</u>. The provisions of this Agreement shall not be amended or waived except by a writing signed by the parties hereto. Any action or failure to enforce strict performance shall not be deemed a waiver of any provision of this Agreement.

12.    <u>Attorneys' Fees</u>. In any action to enforce or relating to any provision of this Agreement, the prevailing party shall be entitled to recover its costs and expenses in connection with such suit or

MPSA
06/26/06.slk                                    -15-

any appeal thereof, including without limitation, its attorneys fees. Whenever provision is made in this Agreement for the payment of attorneys fees, such fees shall be payable whether the legal services are rendered by a salaried employee of the party or by independent counsel and shall include such fees as are incurred in connection with any pretrial proceeding, trial or appeal of the action.

13.     <u>Applicable Loans</u>. This Agreement shall apply to all Loans (i) originated by Lender (or by a Lender's correspondent lender and transferred to Lender prior to purchase by CalHFA, as applicable) pursuant to Commitments made prior to, concurrently with or subsequent to its execution by the parties. It shall also apply to all Loans, whether past, present or future, and whether originated by Lender or not, for which Lender assumes or has assumed, with CalHFA approval, the obligation to service. Except as otherwise provided herein, this Agreement supersedes any prior agreements or understandings, whether written or oral, between CalHFA and Lender governing the origination, purchase or servicing of Loans. Notwithstanding the foregoing, the parties may subsequently agree, in writing, that certain CalHFA loans are not governed by this Agreement.

**LENDER:**

GMAC Mortgage, LLC.

By: _Michael S. Keim_
Name:  Michael S. Keim
Title: Senior Vice President

**Primary Servicing
Department Contact:**

Name:  Elaine Kanter
Address:  3451 Hammond Ave
         Waterloo, IA  50702
Phone:  (319) 236-5538

**Primary Loan Origination
Department Contact:**

Name:  Lana Hewitt
Address:   1 Lower Ragsdale Drive, Bldg 1, Suite 200
          Monterey, CA  93940

**CalHFA :**

**CALIFORNIA HOUSING FINANCE AGENCY**

By: _____
 For Theresa A. Parker
     Executive Director

MPSA
06/26/06.slk                          -16-

# EXHIBIT B

State of California

## Cal HFA™ California Housing Finance Agency

August 15, 2012

Mr. Scott Valletti
Manager, Contract Administration
Operations Risk Management
GMAC Mortgage Corporation
1100 Virginia Drive
MC190-FTW-C05
Fort Washington, PA  19034

RE: **SERVICING AUDIT SCHEDULED FOR OCTOBER 2ND THRU 5TH, 2012 IN DALLAS, TX**

Dear Mr. Valletti,

Pursuant to the Servicing Agreement of the California Housing Finance Agency (CalHFA) Servicer's Guide, Section 4-A.4, Examination of Records, the Agency has scheduled an audit of your CalHFA records.  In order to accomplish this audit we will require the following records as of the reporting period September 1, 2011 through July 30, 2012.

I.      SERVICING AUDIT

A. All loans Thirty (30) days or more delinquent as of July 30, 2012. Including the following for the Audit period September 1, 2011 through July 30, 2012:

- Loan transaction/payment histories
- Consolidated conversation notes and telephone contact attempts
- Record of letters sent
- Summary of property inspections performed

(Please separate the collection files by thirty (30), sixty (60), ninety (90) and one hundred twenty (120) days delinquent if not in loss mitigation, foreclosure, or bankruptcy.)

B. All Loss Mitigation, FHA Modifications and loan files that are current that received KYHC funds; including the following for the Audit period September 1, 2011 through July 30, 2012:

- Loan transaction/payment histories
- Consolidated conversation notes
- Records of letters sent and telephone calls attempted
- Summary of property inspections performed
- Loss Mitigation workstation activity and note screens including copies of signed agreements and evidence of follow up for non-compliance
- Borrower(s) financial information and analysis
- KYHC documentation
- Investor/MI approvals

▶ **Sacramento Headquarters**   ▶ **Los Angeles Office**
P.O. Box 4034                  100 Corporate Pointe, Suite 250
Sacramento, CA 95812           Culver City, CA 90230
(916) 326-8000                 (310) 342-5400

www.calhfa.ca.gov

C. Files for loans currently in foreclosure including the following for the Audit period September 1, 2011 through July 30, 2012:

- Loan transaction/payment histories
- Consolidated conversation notes and record of letters sent
- Summary of property inspections performed
- Foreclosure workstation activity and note screens
- Copies of foreclosure approval
- Copies of Notice of Default
- Copies of Notices of Trustee Sale

D. Bankruptcy files including the following for loans in which a bankruptcy was filed during the Audit period September 1, 2011 through July 30, 2012:

- Loan transaction/payment histories
- Consolidated conversation notes
- Bankruptcy workstation activity and note screens indicating post-petition payment due dates
- Copies of Notice of Bankruptcy, Proof of Claim and Motions/Orders for Relief, Stipulations, Discharges and Dismissal

E. All 3rd Party / REO / Trustee Sale files held during the Audit period September 1, 2011 through July 30, 2012, including the following: (see attached exhibit A)

- Loan transaction/payment histories
- Consolidated conversation notes
- Copy of Trustee's Deed upon Sale
- Evidence of notification of Trustee Sales results to CalHFA
- Deed of Conveyance from CalHFA to FHA or Servicer
- Copy of MI Claim submitted to Genworth on all conventional loans
- Deed of Conveyance to Purchaser on Third Party Sales
- Evidence of receipt of funds from Trustee on a Third Party Sale
- Provide a copy of GMAC forced placed insurance policy on single family loans and evidence that the insurer has been paid.

F. FHA and Conventional Short Sale files for any loans where a Short Sale was conducted during the Audit period September 1, 2011 through July 30, 2012. Please provide any and all Short Sale files including the following:

1. FHA Short Sales

- Loan transaction/payment histories
- Consolidated conversation notes
- Copy of Final HUD 1 and copy of their check

2. Conventional Short Sales:

- Loan transaction/payment histories
- Consolidated conversation notes
- Copy of MI Claim
- Evidence of receipt of funds from escrow, final HUD 1 and copy of their check
- Copy of Explanation of Benefits (EOB)

G. An impound account is a requirement on all CalHFA loans. However, provide a printout of any CalHFA loans without impound accounts, provide CalHFA loan number and borrower name.

H. Confirm if any CalHFA Borrowers have provided evidence of their eligibility to receive the reduced interest rate as related to the Service members Civil Relief Act and the California Military Families Financial Relief Act (Soldiers and Sailors).

Please provide a list of those current active CalHFA borrowers receiving a reduced interest rate with a copy of their "orders" to report to full-time active duty.

Provide a copy of the notice sent to borrowers of the possibility of military relief per HUD requirements.

I. Provide the following for any loans were PMI has been cancelled at borrower request during September 1, 2011 through July 30, 2012. Please include a folder for each with all the following:

- CalHFA loan number
- Your Qualifying analysis
- Copy of the borrower's written request
- Copy of new appraisal (if applicable)
- Two (2) years payment history

J. Clear outstanding 2011 Audit exceptions stated below.

Finding No. 2 REO / Trustee Sale

FHA/VA/USDA loans are to have a Grant Deed recorded to convey title from CalHFA to the insurer or servicer within 90 days of the trustee sale date. The Servicer is subject to a fifty ($50) dollar per day penalty assessment, with no maximum.

| Servicer# | CalHFA# | Loan Type | Sale Date | G/Deed Recorded | Days Late | Penalty |
|-----------|---------|-----------|-----------|-----------------|-----------|---------|
| 0589132406 | 662RH0015 | FHA | 01/03/11 | 07/25/11 | 113 | $ 5,650 |
| 0601198296 | 662CW0094 | FHA | 01/27/11 | 05/10/11 | 13 | $   650 |
| 0601158517 | 662CY0068 | FHA | 12/13/10 | 07/19/11 | 128 | $ 6,400 |
| 0566589602 | 662RP0016 | FHA | 01/06/11 | 06/14/11 | 69 | $ 3,450 |
| | | | | | **Total** | **$16,150** |

The following penalties have been amended
CalHFA is in receipt of the recorded Grant Deed.

| Servicer# | CalHFA# | Loan Type | Sale Date | G/Deed Recorded | Days Late | Penalty |
|-----------|---------|-----------|-----------|-----------------|-----------|---------|
| 0597726306 | 662DL0026 | FHA | 03/30/11 | 12/28/11 | 183 | $ 9,150 |
| 0558464806 | 662RF0001 | FHA | 04/11/11 | 09/29/11 | 81 | $ 4,050 |
| 0460006678 | 662RK0033 | FHA | 06/22/11 | 07/31/12 | 315 | $15,750 |
| | | | | | **Total** | **$28,950** |

The total penalty fee is **$45,100.00.** Please make your check payable to California Housing Finance Agency and send it to Oksana Glushchenko, Accounting Department, California Housing Finance Agency 500 Capital Mall, MS 930, Sacramento, CA 95814 within thirty (30) days of this letter. Please send your check along with a copy of this findings letter.

II.    OTHER ITEMS

A. Provide a copy of the annual disclosure letter sent to all borrowers who have a CalHFA Interest Only Plus loan.

B. Provide the completed CalHFA Servicer Organization Contact list (attached), also send an email version to dromano@calhfa.ca.gov.

C. Provide the completed CalHFA Servicer Examination Report (attached).

D. Provide a copy of the annual Gramm-Leach Bliley Act nonpublic Personal Information Disclosure letter sent to all borrowers along with a copy of the consent acknowledgment form entitled "Important Privacy Choices for Consumers".

3

We will need a work area/conference room which will accommodate four (2) examiners and the files to be reviewed. The work area must have windows to allow use of our air card.

Please note that all out of state (California) servicers are required to bear the travel expense of the audit. After CalHFA examination of servicer records, billing will be make for $1,000 plus out-of-pocket expenses including plane fare, auto rental, meals and hotel expenses.

We anticipate arriving in your office at approximately 8:30am Tuesday, October 2nd, 2012 and concluding with the exit interview Friday October 5th, 2012.

Should you have any questions regarding this audit, please feel free to call me at (916) 376-2902, or e-mail dromano@calhfa.ca.gov.

Sincerely,

Debbie Romano, Examiner, CalHFA
Sacramento Headquarters

Enc:    Exhibit A
        CalHFA Servicer Organization Contact List 2012
        CalHFA Servicer Examination Report

Cc:     Trish Hoehne, Servicing Administration Manager, CalHFA
        Juan Riggins, Examiner, CalHFA

4

# EXHIBIT C



CALIFORNIA HOUSING FINANCE AGENCY

# SERVICER'S GUIDE





# TABLE OF CONTENTS

*INTRODUCTION*                                                          *Section 0*

*GENERAL PROVISIONS AND REQUIREMENTS*                    *Section 1*

Page

A.   Applicability of Servicer's Guide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
B.   Amendments and Supplements to the Guide  . . . . . . . . . . . . . . . . . . . . . . . . 1
C.   Servicer's Relationship with CHFA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
D.   Special Power of Attorney  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
E.   Recording of CHFA Documents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
F.   Servicer Loan Files . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     1.   Loans Originated Under Programs Financed Prior January 1, 1982  . . . . . . 2
     2.   Loans Originated Under Programs Financed After January 1, 1982 . . . . . . . 4
G.   Equal Opportunity Policy  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
H.   Equal Credit Opportunity Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
I.   Servicer's Fidelity Bond and Errors and Omissions Coverage . . . . . . . . . . . . . 6
     1.   Indemnification  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          a.  Amount of Coverage Required . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          b.  Fidelity Coverage or Direct Surety Bond . . . . . . . . . . . . . . . . . . . . 6
          c.  Forgery and Theft Insurance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          d.  Fidelity Bond and Errors and Omissions . . . . . . . . . . . . . . . . . . . . 7
          e.  Policy Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          f.  Reporting Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     2.   Reports   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     3.   Embezzlement and Fraud Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
J.   Financial Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     1.   Annual Audited Financial Statements . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     2.   Quarterly Financial Statements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          a.  Mortgage Banker (Reporting Form) . . . . . . . . . . . . . . . . . . . . . . 10
          b.  Operating Entity of Savings and Loan/Bank . . . . . . . . . . . . . . . . . 10
          c.  Savings and Loan or Bank Entity . . . . . . . . . . . . . . . . . . . . . . . . 10
K.   Servicer Eligibility  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     1.   Equity and Operating Cash Requirements  . . . . . . . . . . . . . . . . . . . . . . 12
     2.   Loan Servicing Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
L.   Maintaining Eligibility Requirements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
M.   Delinquency Ratio Exceeding CHFA's Standards . . . . . . . . . . . . . . . . . . . . 14
     1.   First Notice--Unacceptable Delinquency Ratios  . . . . . . . . . . . . . . . . . . 14
     2.   Second and Final Notice--Notice of Event of Termination  . . . . . . . . . . . 15
N.   Transfer of Servicing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15



**Continued**                                                      *Section 1*
                                                                        Page
    1.  Continuing Warranties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    2.  CHFA Approval Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    3.  Compensation Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    4.  Servicing Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    5.  Approved Servicers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    6.  Transfer Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
O.  Subservicing Arrangements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
P.  Servicing Rights Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Q.  Notifying Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
R.  Notifying Third Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
S.  Transfer of Individual Loan Files . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
T.  Transfer of Portfolio Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
U.  Transfer of Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
V.  Transitional Responsibilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
W.  Servicer Limitation on Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
X.  Servicer Quality Control (Q.C.) Program . . . . . . . . . . . . . . . . . . . . . . . . 23
Y.  Borrower Inquiries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Z.  Record Retention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
AA. Conversion to Bi-weekly Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
AB. Soldiers' and Sailors' Civil Relief Act . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
AC. Borrower Fraud or Misrepresentation, Servicer Repurchase Warranties . . . . . . . . 26


**SERVICING COMPENSATION**                                    *Section 2*
                                                                        Page
A.  Servicing Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.  Amount of Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.  Termination of Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
B.  Late Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    1.  General. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.  Imposition of Late Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    3.  Return of Loan Payment For Late Charges . . . . . . . . . . . . . . . . . . . . . . 2


**INSURANCE REQUIREMENTS**                                    *Section 3*
                                                                        Page
A.  Hazard Insurance Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.  General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.  Insurer Qualifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    3.  Amounts of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    4.  Condominium and Planned Unit Development (PUD) . . . . . . . . . . . . . . . 2

**CHFA**

## Continued

Section 3

Page

5.  Policy Possession . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
6.  Property Damage/Loss Procedures . . . . . . . . . . . . . . . . . . . . . . . 2
7.  Foreclosure and Trustee Sale - Change of Named Insured . . . . . 4
8.  Servicer's Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
9.  Other Hazards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
10.  Personal Property Losses . . . . . . . . . . . . . . . . . . . . . . . . . . 5
11.  Contractor Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
12.  Release of Insurance Proceeds . . . . . . . . . . . . . . . . . . . . . . 6
13.  Trust Deeds in Foreclosure at Time of Natural Disaster . . . . . . . . . . . . . 7
B.  Uninsured Losses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
C.  Mortgage Guaranty Insurance . . . . . . . . . . . . . . . . . . . . . . . . . 8
1.  Required Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
2.  Monthly Mortgage Payment Guarantee . . . . . . . . . . . . . . . . 10
3.  PMI Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
4.  Servicer's Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . 10
D.  Title Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## ACCOUNTING AND FISCAL RESPONSIBILITIES

Section 4

Page

A.  Maintenance of Loan Accounting Records . . . . . . . . . . . . . . . . . . 1
1.  General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
2.  Maintaining Outstanding Balances . . . . . . . . . . . . . . . . . . . 1
3.  CHFA's Loan Number . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
4.  CHFA's Examination of Servicer Records . . . . . . . . . . . . . . . 2
5.  Release or Destruction of Records . . . . . . . . . . . . . . . . . . . 2
B.  Payment Collection and Accounting . . . . . . . . . . . . . . . . . . . . 3
1.  General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
2.  Depository Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
3.  Use of Amortization Method of Accounting . . . . . . . . . . . . . 5
4.  Application of Trust Deed Loan Payments . . . . . . . . . . . . . . 5
5.  Payment Shortages . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
6.  Impound Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
7.  Prepayments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
8.  Modification Agreement or Bankruptcy Plan Payments . . . . . . . 8
9.  Buydown Account Payments . . . . . . . . . . . . . . . . . . . . . . 8
C.  Remittances to CHFA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
1.  General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
2.  Bi-Monthly Remittances of Principal and Interest . . . . . . . . . . 9
3.  Payoff Remittances . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10



**Continued**                                               *Section   4*

                                                                    Page
    4.   Payoff/Escrow Refunds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
    5.   Prepayment Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
    6.   Short Payoffs (Compromise, Pre-foreclosure Sale) . . . . . . . . . . . .  12
    7.   Short Payoff Reporting (IRS Form 1099) . . . . . . . . . . . . . . . . . . .  13
    8.   Purchase, Repurchase, Payoffs . . . . . . . . . . . . . . . . . . . . . . . . . .  13
    9.   Curtailment Remittances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
    10.  Modification Agreement Remittances . . . . . . . . . . . . . . . . . . . .  13
    11.  Bankruptcy Plan Payment Remittances . . . . . . . . . . . . . . . . . . .  14
    12.  Mortgage Insurance, Advance Payment Remittances . . . . . . . . . . . .  14
    13.  Requests for Return of Advance Payments . . . . . . . . . . . . . . . . . .  14
D.  Reporting Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
    1.   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
    2.   Magnetic Media Reporting . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
    3.   Hard Copy Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
    4.   Reporting to the IRS, Trust Deed Interest . . . . . . . . . . . . . . . . . .  19
    5.   Reporting to Credit Bureaus . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
E.  Annual Statement to Borrowers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
    1.   Escrow Account and Interest Payment Summary . . . . . . . . . . . . . .  19
    2.   Detailed Ledger Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
    3.   Homeowners Protection Act of 1998 Disclosure . . . . . . . . . . . . . .  20
F.  Reduction in Interest Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
    1.   General  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
    2.   Cost Reimbursement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
G.  Property Tax Exemptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
    1.   County Property Tax Exemptions . . . . . . . . . . . . . . . . . . . . . . . .  20
    2.   Senior Citizens, Property Tax Postponements . . . . . . . . . . . . . . . . .  21

## *BANKRUPTCY OF BORROWER*                          *Section 5*

                                                                    Page
A.  General  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
    1.   Bankruptcy Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
    2.   Types of Bankruptcies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
    3.   Notification of Bankruptcy . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
    4.   Initial Steps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
    5.   Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
B.  Chapter 7  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
    1    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
    2.   No Assets Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
    3.   Assets Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3



**Continued**                                                   *Section   5*

                                                                      Page
C.  Chapter 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    1.  General  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    2.  Proof of Claim  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    3.  Plan  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    4.  Delinquencies  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
D.  Chapter 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    1.  General  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    2.  Proof of Claim  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    3.  Chapter 13 Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    4.  Objecting to the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    5.  Confirmation Hearing  . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    6.  Post Plan Delinquencies . . . . . . . . . . . . . . . . . . . . . . . . . 5
E.  Reporting  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        Monthly Servicer's Report . . . . . . . . . . . . . . . . . . . . . . . . 6
F.  Attorney's Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
G.  Dismissal; Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
H.  Lost Interest Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
I.  Servicer's Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*DELINQUENCIES*                                                 *Section 6*

                                                                      Page
A.  Delinquency Calculations Defined  . . . . . . . . . . . . . . . . . . . . . . . . . 1
B.  Special Relief Measures  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
C.  Late Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.  Return of Payment for Lack of Late Charge Payment . . . . . . . . . . . . . 1
D.  Loans Thirty (30) Days Delinquent . . . . . . . . . . . . . . . . . . . . . . . . . 2
    1.  General  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.  Telephone Contact . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    3.  Report to CHFA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    4.  Report On Loans Insured by General Electric . . . . . . . . . . . . . . . 3
    5.  Advance Payments (Remittance) Guaranty by PMI . . . . . . . . . . . . . . 3
E.  Loans Sixty (60) Days Delinquent . . . . . . . . . . . . . . . . . . . . . . . . . 4
    1.  General  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    2.  More Than One Payment Due . . . . . . . . . . . . . . . . . . . . . . . . 4
    3.  Property Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    4.  Sixty (60) Days and Over Delinquency Report to CHFA and PMI . . . . . . . 5
    5.  Notice of Intent to Foreclose . . . . . . . . . . . . . . . . . . . . . . 6
    6.  Advance Claims Payment . . . . . . . . . . . . . . . . . . . . . . . . . 6
F.  Loans Ninety (90) Days Delinquent . . . . . . . . . . . . . . . . . . . . . . . . . 7



**Continued**                                          *Section  6*

|   |   |   | Page |
|---|---|---|---|
| 1. | Private Mortgage Insured Loans | ............................... | 7 |
| 2. | FHA Insured Loans | ............................... | 8 |
| 3. | Veterans Administration (VA) Loans | ............................... | 8 |
| 4. | USDA Guaranteed Rural Housing Loans | ............................... | 8 |
| 5. | Uninsured Conventional Loans (Self-help Loans) | ............... | 9 |

G. Deed-in-Lieu of Foreclosure ........................................... 9
H. Workout Plans ........................................... 9

| 1. | Temporary Indulgence | ............................... | 9 |
| 2. | Special Forbearance | ............................... | 10 |
| 3. | Military Indulgence | ............................... | 10 |
| 4. | Modification (Recasting, Extending or Re-amortizing) | ............... | 11 |
| 5. | CHFA Workout Agreement Approval | ............... | 11 |
| 6. | HUD Approved Housing Counseling Agencies | ............... | 12 |
| 7. | VA Refunding, Assigning the Loan to VA, Alternative to Foreclosure | ..... | 12 |
| 8. | Short Payoffs (Compromise, Pre-foreclosure Sale) | ............... | 13 |
| 9. | HUD Partial Claim | ............... | 13 |
| 10. | Natural Disaster Assistance. | ............................... | 14 |
|   | a. Statement of Policy | ............................... | 14 |
|   | b. Evaluating the Damage | ............................... | 15 |
|   | c. Reporting to CHFA on Loan Property Loss | ............... | 16 |
|   | d. Mortgage Insurer (MI) Prior Approval | ............... | 16 |
|   | e. Foreclosure Action | ............................... | 16 |

## *FORECLOSURE PROCEDURE*                         *Section 7*

|   |   |   | Page |
|---|---|---|---|
| A. | General | ............................... | 1 |
| 1. | Foreclosing in CHFA's Name | ............................... | 1 |
| 2. | Soldiers' and Sailors' Civil Relief Act | ............................... | 1 |
| 3. | Deed-in-Lieu of Foreclosure | ............................... | 1 |
| 4. | Available Remedies | ............................... | 3 |
| 5. | Mortgage Insurance | ............................... | 3 |
| 6. | California Law | ............................... | 3 |
| 7. | Equal Credit Opportunity Act | ............................... | 3 |
| 8. | Loss Mitigation | ............................... | 3 |
| B. | Trustee's Fee Limitation | ............................... | 4 |
| C. | Trustee Sale Guarantee | ............................... | 4 |
| D. | Notice of Default | ............................... | 4 |
| 1. | Recording | ............................... | 4 |
| 2. | Mailings | ............................... | 5 |



**Continued**                                               *Section 7*

<u>Page</u>

E.   Payments Post-Notice of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    1.   Reinstatement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    2.   Redemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
F.   Internal Revenue Service Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
G.   Setting Trustee Sale Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
H.   Notice of Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
I.   Trustee's Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    1.   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    2.   Bidding Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    3.   Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
J.   Expenses of Foreclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    1.   Limitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    2.   Reimbursement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
K.   Loan Servicing and Property Inspection During Foreclosure . . . . . . . . . . . . . . 9
    1.   Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    2.   Taxes and Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    3.   Homeowner Association Dues . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    4    Reporting to CHFA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    5.   Hazardous Toxic Waste . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
L.   Repurchasing Government (FHA, USDA, VA) Loans, Originated after January 1, . .
      1985 within Ninety (90) Days of Trustee Sale or Deed-in-Lieu . . . . . . . . . 11
M.   Change of Ownership Statement (Trustee Sale) . . . . . . . . . . . . . . . . . . . . 11
N.   IRS Form 1099-A (Trustee Sale) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
O.   Release of CHFA Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
P.   Reinstatements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*POST FORECLOSURE AND REO*                              *Section 8*

<u>Page</u>

A.   Third Party Acquisition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.   Hazard Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    3.   Trustee's Deed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
B.   CHFA Acquisition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.   Notice to CHFA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.   Change of Hazard Insurance Policy . . . . . . . . . . . . . . . . . . . . . . . 2
    3.   Mortgage Insurance Claim (Conventional) . . . . . . . . . . . . . . . . . . . . 2
    4.   FHA (HUD), VA, USDA Trust Deed Insurance Claims . . . . . . . . . . . 4
    5.   Property Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    6.   Trustee's Deed Upon Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . 4



**Continued**                                                           *Section  8*

                                                                            Page
    7.   Unlawful Detainer Actions (Evictions) . . . . . . . . . . . . . . . . . . . . . . . 5
    8.   Servicer's Failure to Perform . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    9.   Marketing of Real Estate Owned Properties . . . . . . . . . . . . . . . . . . 5


*ASSUMPTION OF LOANS*                                                    *Section 9*

                                                                            Page
A.  General   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.   Government Insured, FHA, USDA Insured, VA Guaranteed Loans . . . . . . . 1
    2.   Other CHFA Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    3.   Equal Credit Opportunity Act (ECOA) . . . . . . . . . . . . . . . . . . . . . . 2
B.  Unauthorized Assumptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
C.  Junior Lien Assumption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
D.  Permitted Fees and Charges  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    1.   Assumption Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    2.   Other Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
E.  Approval Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
F.  Private Mortgage Insurance (PMI) Requirements . . . . . . . . . . . . . . . . . . . 3
    1.   Without Release of Liability and Aged More than Twelve (12) Months . . . . 4
    2.   Aged Less than Twelve (12) Months . . . . . . . . . . . . . . . . . . . . . . . 4
G.  Government Loans (FHA, USDA and VA) . . . . . . . . . . . . . . . . . . . . . . . 4
H.  Loan Assumption Qualifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    1.   Loans Originated Under Programs Financed Prior to 1982 (PMI
         Insured Loans Only) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    2.   Loans Originated Under Programs Financed Prior to 1982 (FHA or VA
         Insured)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    3.   Loans Originated Under Programs Financed After January 1, 1982,
         (Under the Tax Act) Assumable Deed of Trust and Promissory Note
         PMI, FHA, USDA, VA Insured) . . . . . . . . . . . . . . . . . . . . . . . . . 5
    4.   Loans Secured by 2-4 Unit Rentals Originated Under Programs Prior to 1982 . 7
I.  Restrictions on Single Family Loans to Unqualified Aliens . . . . . . . . . . . . . . 7
    1.   General Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    2.   Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    3.   Assumptions/Additions to Title . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    4.   Nondiscrimination and Privacy Requirements . . . . . . . . . . . . . . . . . . 9
    5.   Questions and Additional Reference Information . . . . . . . . . . . . . . . . . 9
    6.   Exhibits (See Section 13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
J.  Additional Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10



## MODIFICATION OF TRUST DEEDS

Section 10

Page

A.  Removal of Co-Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   1.  Release of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   2.  No Release of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
B.  Addition of Co-Borrower . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
C.  Partial Property Releases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   1.  General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   2.  Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   3.  Follow-up After Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
D.  Condemnation or Eminent Domain . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
E.  Loan Modification (Recasting, Extending or Re-amortizing) . . . . . . . . . . . . . 3

## LEGAL

Section 11

Page

A.  Lawsuits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   1.  Notice of Legal Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   2.  Servicer Initiating Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   3.  Retained Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   4.  All Counsel Selected and Retained by Servicer to Represent CHFA . . . . . . 2
   5.  Referring to the California Attorney General or Other Counsel . . . . . . . . . 2
   6.  Attorney's Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
B.  Notice of Lien . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
C.  Property Forfeitures and Seizures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
D.  Termination of "Mortgage Purchase and Servicing Agreement"
   or "Servicing Agreement" (Agreement) for Cause . . . . . . . . . . . . . . . . . . . . 4

## RENTALS

Section 12

Page

A.  Rental Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   1.  General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   2.  Monitoring Loans for Owner Occupancy . . . . . . . . . . . . . . . . . . . . 1
   3.  Property Rental . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## FORMS APPENDIX

Section 13

Exhibit

Report of Hazard Insurance Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A
Delinquency Recap Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1
Delinquent Loans Report Sixty (60) Days & Over and Active Foreclosures . . . . . . A-2
Bankruptcy Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-1
CHFA Loan Assumption Submission Voucher . . . . . . . . . . . . . . . . . . . . . . . C-1



**Continued**                                                                 *Section 13*

Page

Assumption Document Checklist after 1982 . . . . . . . . . . . . . . . . . . . . . . . . . C-2
Assumption Agreement - after 1982 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-2a
CHFA Notice and Borrower Representations Affidavit . . . . . . . . . . . . . . . . . . . C-2b
Borrower's Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-2c
Tax Return Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-2d
Seller's Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-2e
Assumption Document Checklist - prior to 1982 . . . . . . . . . . . . . . . . . . . . . . C-3
Assumption Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-3a
Addendum to First Deed of Trust of Record . . . . . . . . . . . . . . . . . . . . . . . . C-3b
Borrower's Rental Affidavit, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D-1
Assumption Conditional Approval (from CHFA) . . . . . . . . . . . . . . . . . . . . . . D-2
Guarantee Advanced Payment Remittance Report, . . . . . . . . . . . . . . . . . . . . . E-1
Request for Return of Guaranteed Advanced Payment . . . . . . . . . . . . . . . . . . . E-2
Letter of Authorization for T&I Custodial Account . . . . . . . . . . . . . . . . . . . . . F-1
Letter of Authorization for P&I Custodial Account . . . . . . . . . . . . . . . . . . . . . F-2
Letter of Authorization for Buydown Funds Custodial Account . . . . . . . . . . . . . . F-3
Account Loan Numbering System, Letter to Number Conversion . . . . . . . . . . . . . G-1
Servicing Transfer Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . H
Special Power of Attorney . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I
CHFA Regulations on the "Restriction on Agency Public Benefits to Aliens" . . . . . . . . J
Statement of Citizenship, Alienage and Immigration Status for State Public Benefits . . . . K
   List A - List of acceptable documents to support citizenship or nationalization
   List B - List of acceptable documents to support declaration of battered aliens.
Most Common Questions and Answers Regarding Citizenship/Alien Verification . . . . . . L
Vital Statistic Offices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . M
Lender Verification of Citizenship/Qualified Alien Status . . . . . . . . . . . . . . . . . N
Example Determination Letter of Ineligibility . . . . . . . . . . . . . . . . . . . . . . . O
Legal Representation Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P


*INDEX*                                                                       *Section 14*

*GLOSSARY AND DEFINITION OF TERMS*                                            *Section 15*



# *INTRODUCTION*

This Servicer's Guide is intended for use by all Servicers (each, a "Servicer") who have entered into a Mortgage Purchase and Servicing Agreement (MP&SA) or Servicing Agreement with the California Housing Finance Agency (the "Agency" or "CHFA"). Servicers are to use this Guide in servicing all Trust Deed loans made under any and all CHFA Programs ("Programs"). Check the Programs under which your organization is servicing for CHFA.

The guidelines, requirements, and procedures in this Servicer's Guide provide detailed instructions for the implementation of the Mortgage Purchase and Servicing Agreement or Servicing Agreement by CHFA Servicers. Forms used in servicing of Trust Deed loans are contained in Section 13.

Policies and procedures will be distributed periodically by CHFA to Servicers in the form of Program Bulletins. Revisions of or supplements to this Servicer's Guide may be made from time to time.

Questions relating to the Servicer's Guide, CHFA policies and procedures should be directed to: Portfolio Manager, California Housing Finance Agency, 1121 "L" Street, 7th Floor, Sacramento, CA 95814, (916) 324-8088.



# *GENERAL PROVISIONS AND REQUIREMENTS*

## *Section 1*

### A.  Applicability of Servicer's Guide

This Guide has been prepared by the California Housing Finance Agency ("CHFA") to provide Servicers of Trust Deed loans purchased by CHFA with information and procedures for servicing loans under CHFA's Programs including those Programs governed by the Mortgage Subsidy Bond Tax Code of 1980 ("Tax Code") and the regulations thereunder.

Servicers are cautioned to thoroughly review the contents of this Guide before dealing with any Loan. INTEREST ON THE TAX-EXEMPT BONDS ISSUED BY CHFA TO FINANCE A PROGRAM COULD BECOME SUBJECT TO FEDERAL TAXATION IF ANY LOAN PURCHASED BY CHFA IS NOT IN FULL COMPLIANCE WITH CHFA PROGRAM REQUIREMENTS AND THE TAX CODE.    THEREFORE, STRICT SERVICER COMPLIANCE WITH ALL OF THE REQUIREMENTS CONTAINED IN THIS GUIDE IS REQUIRED.    AS STATED IN THE MORTGAGE PURCHASE AND SERVICING AGREEMENT, OR SERVICING AGREEMENT, AS APPLICABLE, IF ANY LOAN IS NOT SERVICED IN COMPLIANCE WITH THE CHFA PROGRAM REQUIREMENTS AND THE TAX CODE , CHFA MAY REQUIRE THE SERVICER TO REPURCHASE THE LOAN.

### B.  Amendments and Supplements to the Guide

Any and all amendments, Programs Bulletins or supplements to this Guide will be provided to the Servicer.  The effective date of each amendment or supplement will be printed thereon.  Any changes in Servicer's designated liaison should be reported in writing to CHFA's Servicing Administrator.

### C.  Servicer's Relationship with CHFA

Servicer is the special agent of CHFA for the purpose of collecting Loan payments, (including regular payments and payments due on Loans which are in default), processing and collecting insurance claims, foreclosing and otherwise obtaining title to Trust Deed premises after default.

In addition, at the request of CHFA, but not otherwise, Servicer is required to act on behalf of CHFA for the purpose of assisting in disposing of CHFA real estate owned ("REO") properties.



Servicer's authority as agent is strictly limited to those acts necessary to carry out its
servicing duties in accordance with this Guide. Except as expressly permitted by CHFA
in writing, Servicer is not authorized to waive any right or remedy of CHFA.

In the event of Servicer's failure to perform, maintain or enforce any or all of the policies and
procedures as provided in the CHFA Mortgage Purchase and Servicing Agreement, Servicing
Agreement, and/or this Servicer's Guide, on a specific Loan(s), CHFA will request that Servicer
repurchase the Loan(s) at its outstanding principal balance and all interest due to date of
repurchase. Repurchase will be required within thirty (30) days of receipt of a request for
repurchase from CHFA. Failure to repurchase within the time limits may result in the
termination of the Mortgage Purchase and Servicing Agreement or Servicing Agreement,
whichever is applicable.

The Servicer will have full authority to do or cause to be done all things as may be necessary
and appropriate to perform its servicing obligations in its own name and right as if the Trust
Deeds were owned by it for its own account, HOWEVER, in employing counsel, filing claims
in bankruptcy, probate, and other courts, or when an appearance in any court is to be made, any
such employment, filing, or appearance shall be done in CHFA's name. Counsel shall be
employed as provided in Section 11, paragraphs A. 3 and A. 4.

In the event of a Servicer bankruptcy filing, Servicer agrees to return all loan servicing files to
CHFA prior to the filing of any bankruptcy petition in any Federal Bankruptcy Court.

## D.  Special Power of Attorney

To facilitate loan servicing, Servicer shall request from CHFA a Special Power of Attorney
(see Exhibit I) and record in each county in which the servicer has CHFA loans.

## E.  Recording of CHFA Documents

The prepared Special Power of Attorney will be mailed directly to the person requesting
the document/s for Servicer recording.

## F.  Servicer Loan Files

Servicer shall maintain an individual file, or complete micro-fiche file available for review
by CHFA, its representative, agents or examiners for each Loan according to the
requirements of the Program under which the Loan was originated. The requirements
vary on the pre-Tax Code Loans and Loans made after the Tax Code became effective.

1.  Loans Originated Under Programs Financed Prior to January 1, 1982 (not covered



- For the fourth (4th) or subsequent late reporting offense in any twenty-four (24) month period, or failure to respond to any prior warning letter within thirty (30) days of CHFA issuance, a fourth warning letter is sent to the corporate contact person or Servicing Manager, as applicable.   The Servicer shall be assessed a $1,000 late reporting fee.

NOTE:  Failure to respond to CHFA's notice and pay penalty assessments within thirty (30) days shall be cause to exercise the following remedies:

1.    CHFA may suspend the Servicer's privileges to sell Trust Deeds, or acquire new servicing rights; and

2.    CHFA may exercise any other available and appropriate remedy including termination of the Mortgage Purchase and Servicing Agreement or Servicing Agreement.

## K.  Servicer Eligibility

At all times, Servicer shall be an approved FHA single family servicer, shall be an approved FNMA servicer and shall also be an approved Veteran's Administration (VA) servicer.  In addition, the Servicer shall meet the standards discussed below.  CHFA may, in its discretion, amend or supplement such standards.  Servicers that do not meet CHFA's standards shall either (1) obtain a written temporary waiver from CHFA, or (2) transfer all CHFA Loans being serviced to a CHFA Approved Servicer.

1.    Equity and Operating Cash Requirements

    a.    A minimum tangible net worth of not less than $250,000 plus a dollar amount that represents 2/10% of the outstanding principal balance of the total serviced portfolio.

    b.    Possess and maintain the ability to fund CHFA Mortgage Purchase and Servicing Agreement and/or Servicing Agreement warranties, i. e.  1) repurchase of the FHA insured, VA guaranteed and loans made under the Rural Development program of the United States Department of Agriculture (USDA) which have been foreclosed within ninety (90)  days of trustee sale date (or recorded Deed-in-Lieu date), 2) repurchase of other loans as detailed under the Mortgage Purchase and Servicing Agreement or Servicing Agreement, as evidenced by cash or cash equivalents, 3) other warranties as detailed in the Program Manual and Servicer's Guide.

    c.    In addition to meeting CHFA's net worth requirement, the Servicer must



otherwise be financially acceptable. CHFA will review Servicer's financial condition, and any other factors considered relevant to determine Lender/Servicer ability to do business with CHFA.

2.    Loan Servicing Standards

  a.    To qualify as a CHFA Approved Servicer, Servicer shall service not less than ten thousand (10,000) loans.

  b.    Have and maintain collection call staff for calling delinquent California Borrowers within authorized Federal statutory time limits (subject to change), i. e. 7 a.m. to 8 p.m. Pacific Standard Time (PST).

  c.    Servicer is required to achieve and maintain a CHFA servicing portfolio of not less than two hundred (200) loans within a twenty-four (24) month period from the initial date of entry into the program.

  d.    Each Servicer shall employ a computerized servicing management system and provide CHFA or designated data capture company with electronic data reports in the format as directed within ninety (90) days of obtaining a minimum loan level of fifty (50) CHFA loans.

  e.    Each Servicer shall maintain and make available for inspection the books, records, and loan files of CHFA loans.

## L.    Maintaining Eligibility Requirements

After approval to service CHFA Trust Deeds, CHFA requires Servicer to maintain its eligibility. To do this, the Servicer shall comply with the terms of the Mortgage Purchase and Servicing Agreement or Servicing Agreement, as applicable. Throughout this Guide, there are details on specific requirements for servicing Trust Deeds. This section concentrates on the Servicer's specific administrative responsibilities and business obligations that shall be considered in the overall conduct of its Trust Deed operations.

The Servicer shall maintain all requirements as stated under (1) Financial Requirements (Section 1, J.), and (2) Servicer Eligibility (Section 1, K.).

The Servicer shall maintain adequate internal audit and management control systems to:

- Assure that the Trust Deeds are serviced in accordance with sound mortgage banking and accounting principles; and



- guard against dishonest, fraudulent, or negligent acts; and

- guard against errors and omissions by officers, employees, or other authorized persons.

If these systems identify a problem area, the Servicer shall promptly take appropriate corrective action. The Servicer shall keep a record of any activity under these internal systems. Upon request, the Servicer shall make these records available for review.

The Servicer shall design these systems to assure that its staff complies not only with CHFA requirements, but also with the legal requirements of the State of California. CHFA requires the Servicer's overall management control system to provide for at least the following:

- A delinquent loan servicing system; and

- a system to control and monitor bankruptcy proceedings; and

- a foreclosure monitoring system.

## M. Delinquency Ratio Exceeding CHFA's Standard

Servicer shall maintain monthly total portfolio delinquency ratios not to exceed the Mortgage Banker Association (MBA) quarterly report California FHA 1-4 unit fixed rate ratio, as stated in the National Delinquency Survey of 1 to 4 unit residential mortgage loans. The total delinquency percentage is defined as, and includes the "PERCENT OF LOANS IN FORECLOSURE/INVENTORY END OF QUARTER" added to the "PERCENT OF LOANS WITH INSTALLMENTS PAST DUE/TOTAL PAST DUE" to arrive at a summary total . The respective FHA, VA, fixed and adjustable rate categories will be compared. Since CHFA's overall portfolio more closely resembles the California FHA 1-4 unit fixed rate residential loans, that ratio will be used for the over all category and to determine Servicer's continuing eligibility. However, Servicers are encouraged to obtain the lowest possible delinquency. The corrective procedures for Servicers with delinquency ratios on CHFA loans exceeding the above standard are as follows.  The Agency will send the following "Notice" letters that will (1) document the  problem, (2) call for meeting the Agency's standard within a prescribed time, (3) provide for the orderly termination of the Servicer if the standard is not met.

1.    First Notice--Unacceptable Delinquency Ratios
      This notice will:
      a.    Give a Servicer ninety (90) days to meet the current  standard before a Second



and Final Notice will be sent.

If the problem is not corrected within the time frame as established in the letter
above, then a second and final notice will be sent.

2.   Second and Final Notice--Notice of Event of Termination

    a.    Provide a Servicer sixty (60) days to meet the standard or the Mortgage
Purchase & Servicing Agreement or Servicing Agreement, will be terminated.
Servicer will have ninety (90) days to transfer the CHFA portfolio to a CHFA
Approved Servicer.

## N.   Transfer of Servicing

1.   Continuing Warranties

The transferee Servicer shall agree to assume the responsibilities, duties, and selling
warranties that Servicer agreed to when the Trust Deed was originally sold to CHFA.
However, the transferee Servicer's assumption of these responsibilities, duties, and
warranties will in no way release the transferor Servicer from its contractual
obligation related to the transferred Trust Deeds.

2.   CHFA Approval Required

Servicers shall obtain CHFA's written approval prior to the transfer of Loans under
the following circumstances:   (i) each Servicer shall obtain approval prior to the
transfer of any Loan or Loans identified for transfer on such Servicer's CHFA form
MSV Part 2 and not so transferred within sixty (60) days of CHFA purchase of such
loans; (ii) each Servicer shall obtain written approval prior to (a) transfer of an entire
portfolio of CHFA loans serviced by such Servicer because such entity is ceasing to
service CHFA loans, or (b) transfer for servicing of ten (10) or more CHFA loans
at any time.   Each request for approval shall be received by CHFA not less than sixty
(60) days prior to the anticipated transfer date of Servicer's notification to the
Borrower.

3.   Compensation Payment

CHFA will charge a $500 processing fee for all transfers of servicing including those
that result from changes in corporate ownership.   The transfer fee will be waived
only when the Servicer has been terminated by CHFA and no compensation is paid
to the Servicer.   In all other transfers the transfer fee will be assessed and paid by



the transferee.

4.    Servicing Agreement

Any entity wishing to service, but not originate CHFA loans, shall first be approved by the Agency and shall execute a Servicing Agreement prior to the transfer of servicing, and subservicing of any CHFA loan.  When any current Originating Servicer or Servicer is considering transferring its servicing, and where the proposed new Servicer is not a CHFA Approved Servicer, the current Servicer, as applicable, shall instruct the proposed new Servicer to contact CHFA and request the following CHFA forms: (1) Servicer Application, (2) Servicing Agreement.

5.    Approved Servicers

Prior to the servicing of any CHFA loan, the Servicer shall first have either an executed Mortgage Purchase and Servicing Agreement or a Servicing Agreement with CHFA.

The Agency requires each entity wishing to service but not originate CHFA Loans be a CHFA Approved Servicer.  Each Loan Servicer shall submit to CHFA a Servicer  Application and shall execute a Servicing Agreement with CHFA.  The Servicing Agreement provides that the Servicer executing the Servicing Agreement shall perform certain obligations and meet certain minimum qualifications as set forth in CHFA's Servicer's Guide and Program Manual.

Servicers considering transfers are invited to request a current CHFA Approved Servicer list for their transfer/sale consideration.

6.    Transfer Date

Servicers that service release loans to other Servicers, or use Subservicers on an on-going basis shall effect the servicing transfer within thirty (30) days of CHFA's purchase of the loan.  This timely transfer of loans will allow CHFA to track loans more effectively.

NOTE:  Penalty Provision

Where Servicer fails to act in a timely manner to comply with the transfer date policy Servicer shall be subject to a $250 penalty per loan for each month out of compliance.



## O.  Subservicing Arrangements

For a variety of business reasons, some Servicers elect to use other organizations to perform some or all servicing functions on their behalf.  This type of arrangement includes those instances in which the Subservicer and the Servicer are affiliated or subsidiary companies, but not those in which a computer service bureau is used to perform accounting and reporting functions.  It also does not include those instances in which the originating Servicer sells and assigns servicing to another CHFA Servicer.   A Servicer may use a Subservicer only if the use of a Subservicer will not interfere with its ability to meet all CHFA remitting and reporting requirements.

Servicers may not enter into new subservicing arrangements, or extend existing arrangements to include newly originated Trust Deeds, unless the Subservicer is a CHFA Approved Servicer with a properly executed Servicing Agreement and the subservicing arrangement is structured in a manner that satisfies the requirements as discussed in this Guide.

Where an originating Servicer desires to use a Subservicer that has not executed a Servicing Agreement with CHFA, the Agency will send the Subservicer (1) a Servicer Application, (2) and Servicing Agreement, for completion and return.  In the event the Sub-servicer fails to qualify, CHFA will notify both the Servicer and Subservicer of the non-qualification.

## P.  Servicing Rights Assignment

The Servicer does not have beneficial rights of Servicing Rights assignment without CHFA's written authorization.  The right to service CHFA Loans in accordance with the Mortgage Purchase & Servicing Agreement, Servicing Agreement, and this Servicer's Guide are not transferable without the written approval of CHFA subject to Section 1, K. CHFA does not recognize or authorize any Servicer to pledge servicing rights as collateral under any circumstances without the prior written approval of CHFA together with the CHFA "Acknowledgement Agreement".

Any Servicer that is receiving loans periodically (on a service release basis, or for subservicing) shall provide a month-end report containing certain details of the transferred loans. The Servicing Transfer Report (Exhibit H) shall be completed by each Servicer the fifth (5th) working day of each month.  Servicing Transfer Reports shall be sent to the attention of: Servicing Administrator, California Housing Finance Agency, 1121 L Street, 7th Floor, Sacramento, California 95814.

Failure to provide the Servicing Transfer Report within the time period required will be



considered a breach of, and may result in the termination of the Mortgage Purchase and
Servicing Agreement, or Servicing Agreement, as applicable.

## Q. Notifying Borrower

The two Servicers shall work together closely to assure that Borrowers receive not only
prompt and accurate notification of a pending transfer but also prompt and courteous
responses to their inquiries about the transfer. The transferee servicer should provide the
transferor servicer with essential information to include in its notification letter to the
Borrower, including the transferee's name, address, and telephone number (either a
toll-free number or authorization to include a statement that "collect calls are acceptable")
and the name and telephone number of a contact person (or department) that can answer
the Borrower's questions plus any other information required by law. Both Servicers are
responsible for sending specific notices to the Borrower whose Trust Deeds are being
transferred.

Before the date of the actual transfer, the transferor Servicer shall send each mortgagor the
following information in writing:

- The effective date of the transfer, and the date that the Borrower's first payment to
  the new Servicer will be due;

- The new Servicer's name, address and telephone number and the name of a contact
  person (or department) that can answer questions;

- Instructions on how to handle payments that become due before the new Servicer
  notifies the Borrower about where his or her future monthly payments are to be sent;

- Assurance that the legal terms and conditions of the Trust Deed (other than the name
  and address of the party to whom payments are made) will not be affected by the
  transfer;

- Suggestions or instructions about how to handle any optional item that the Servicer
  previously escrowed for -- such as life, accident or health insurance -- that the new
  Servicer may not offer; and,

- The name and telephone number of a contact person (or department) in the transferor
  Servicer's office that the Borrower may contact if he or she has any questions about
  the notification or the pending transfer.

Before the date of the actual transfer, the transferee Servicer shall send each Borrower a



written confirmation of the information contained in the transferor Servicer's notice to the mortgagor. In addition, the transferee Servicer shall send the following information to the Borrower as soon as possible -- generally, at least fifteen (15) days before it is due to receive the Borrower's first payment:

- Detailed information about the monthly payment -- amount, due date, applicable late charges, etc. (including payment coupons if the Servicer normally provides them for its customers);

- The address to which payments are to be sent;

- An explanation of the method the Servicer uses for determining escrow deposits for taxes and insurance, any changes that may be made to the monthly payment as the result of the Servicer's method of calculating escrow deposits, the reasons for the changes and the approximate date on which the changed payment will become effective;

- The telephone number of a contact person (or department) that the Borrower can call if he or she has questions; and

- Information describing the terms and cost of any life or disability insurance coverage that the Servicer offers, if the mortgagor's present optional life insurance coverage is affected by the transfer.

## R.  Notifying Third Parties

Before a transfer of servicing actually occurs, the transferor Servicer shall take certain actions to assure that all servicing functions that involve third parties will continue uninterrupted (or will be discontinued) after the transfer of servicing. Specifically, the Servicer shall take the following actions:

- The Servicer shall contact each private mortgage insurer (PMI), (including California Housing Loan Insurance Fund [CaHLIF]) that insures any of the Trust Deeds being transferred and notify them of the transfer and the continuation of the private mortgage insurance coverage.

After the transfer of servicing actually occurs, the transferor Servicer shall take the following actions:

- The Servicer shall notify the hazard, flood, and earthquake (if applicable) insurance carriers to request a policy endorsement to substitute the transferee's name in the



Trust Deed clause and to change the premium billing address to that of the transferee Servicer and reference the transferee Servicer's new loan number (unless the Borrower pays the premium directly).

- The Servicer shall notify any tax service it uses or any accident and health insurers that are providing coverage for any of the Trust Deeds that are being transferred, indicating whether the new Servicer will continue using their services and providing the transferee Servicer's new loan number.

- The Servicer shall send appropriate notices of the transfer, providing the transferee Servicer's name and address, and transferee Servicer's new loan number to FHA,VA or USDA(if required), taxing authorities, holders of leaseholds, and other lienholder.

- The Servicer shall send appropriate notices of the transfer, providing the transferee Servicer's name and address, the transferee Servicer's contact person and new loan number to the bankruptcy court, bankruptcy trustee, and bankruptcy attorney for all loans being transferred which are in bankruptcy.

- The Servicer shall send appropriate notices of the transfer, providing the transferee Servicer's name and address, the transferee servicer's contact person and new loan number to the trustee handling any loans being transferred which are in foreclosure.

- The Servicer should also notify any public utilities that levy mandatory assessments if the Servicer escrows funds for their payment.

## S.   Transfer of Individual Loan Files

<u>No later than thirty (30) days after the effective date of the transfer</u>, the transferor Servicer shall deliver to the transferee Servicer the individual Trust Deed file for each Trust Deed included in the transfer.  If both Servicers agree, this information may be provided on microfiche.  Among other things, the individual Trust Deed file should include a history of Trust Deed payments received and escrow disbursements made for the Trust Deed during the current year and the two preceding years (making additional historical information available if the transferee servicer requests it), including the most recent escrow analysis and appropriate supporting documentation; copies of any current assumption or payoff statements and any pertinent related information that will avoid delays in processing a subsequent payoff or in refunding the Borrower's escrow balance; a copy of the notice that was sent to advise the Borrower of the pending transfer of servicing; and copies of all correspondence or notices related to the servicing transfer that were sent to the Borrower, FHA/VA/USDA/PMI, CHFA, any government authority or an interested third party.  Servicers that use a single letter or magnetic tape to notify third parties about



a transfer of servicing may provide this information to the transferee Servicer in a master
file rather than having to copy it for individual Trust Deed files.

## T. Transfer of Portfolio Information

<u>By the effective date of the transfer of servicing</u>, the transferor Servicer shall deliver to
the transferee Servicer information and records related to the entire portfolio of Trust
Deeds being transferred. Specific information that should be forwarded includes the
following:

- Documentation evidencing each PMI's approval of the servicing transfer or its
  commitment to insure the transferred Trust Deeds, or a copy of the PMI's master
  policy evidencing that it is permissible to transfer servicing of insured Trust Deeds
  without the PMI's prior approval;

- Copies of any tax service contracts that will remain in effect, or notification that the
  contracts will be transferred to the new Servicer by a tape process;

- A list of loans that have optional life, accident or health insurance that will remain in
  effect;

- A list of tax bills, assessments, hazard insurance premiums, mortgage insurance
  premiums, etc. that are due to be paid from escrow funds but that are still unpaid as
  of the effective date of the transfer;

- A list of Trust Deeds that are subject to automatic drafting of the monthly payment;

- A list of the expiration dates of the hazard, flood, and mortgage insurance policies for
  each Trust Deed being transferred, whether or not premiums for these policies are
  escrowed;

- A list of loans that are in bankruptcy, that have special repayment agreements, and
  that are in foreclosure.

- Ledger records, showing activity for the current year and the previous two years;

- Trial balances, as of the close of business on the day immediately preceding the day
  the records are transferred, showing:

  - the remittance type for each Trust Deed -- either actual/actual, scheduled/actual,
    or scheduled/scheduled;



- delinquencies, foreclosures, bankruptcies, and acquired properties;

- transfers of ownership, payoffs and other exception transactions that are in process;

- escrow balances, escrow advances, curtailments; and

- buydown account balances for Trust Deeds subject to interest rate buydown plans;

- A copy of the custodial bank reconciliation for each custodial bank account maintained, as of the close of the bank's last business day that immediately precedes the day the records are transferred to the new Servicer. (If the transferor Servicer is unable to complete this reconciliation by the effective date of the transfer, it should complete the reconciliation as promptly as possible and send it to the transferee Servicer within five (5) business days after the effective date of transfer.);

- Copies of all servicing and accounting reports that were filed with CHFA for the three (3) months that immediately precede the date the records are transferred to the new Servicer; and

- Definitions of codes used in ledger records, trial balances, or any other documents that are being forwarded to the new Servicer.

Both the transferor and transferee Servicers should maintain adequate records -- lists, cards, computer tape, microfilm, etc. -- of the portfolio transfer in their corporate records to identify the Trust Deeds included in the transfer, the effective date of the transfer, and the parties involved in the transfer.

## U.  Transfer of Funds

No later than five (5) days after the effective date of the transfer, the transferor Servicer shall forward all account balances, including, but not limited to, unremitted principal and interest collections, escrow funds, curtailments, and buydown funds to the transferee Servicer. If the transferor Servicer has advanced delinquent interest or scheduled principal and interest to CHFA, the transferee Servicer should reimburse the transferor Servicer as soon as it receives a final accounting of all monies from the transferor Servicer. All net amounts owed shall be paid to the appropriate party on the effective date of the transfer.

## V. Transitional Responsibilities

The transferor Servicer and the transferee Servicer shall ensure that their staff and facilities are adequately prepared to process servicing and accounting transactions and to respond to Borrower inquiries during the transfer transition period.  The transferee Servicer shall assume responsibility for responding to Borrower inquiries that are received after the effective date of the transfer, and shall not refer any mortgagor to the transferor Servicer. If any servicing or accounting problem cannot be resolved without the involvement of the transferor Servicer, the transferee Servicer -- not the Borrower -- should initiate the contact.

After the effective date of the transfer, the transferor Servicer shall deliver to the transferee Servicer any funds or correspondence related to any of the transferred Trust Deeds or acquired properties  that it received -- and shall make that delivery within three days after it receives the funds or correspondence.

During the transition period, the transferee Servicer shall give  special consideration to a Borrower's needs and make every effort to resolve disputes to the Borrower's satisfaction when the dispute  arises from a legitimate misunderstanding of the instructions that were contained in the notices of transfer which were sent to the Borrower.  Late charges shall be waived and, if necessary,  appropriate adjustments shall be made to payment and credit records  to reflect misapplied or unapplied payments which were owed to the transferee Servicer but which were sent to the transferor Servicer.

## W. Servicer Limitation on Loans

At no time during the term of the Agreement shall Servicer service a dollar volume of loans imposed upon Servicers by the Agreement in excess of the applicable limit of dollar volume of loans (made under its single family home loan programs).  To the extent that Servicer's loan servicing portfolio exceeds the applicable limit, CHFA may require Servicer to release the servicing of new loans to another CHFA Approved Servicer.

## X. Servicer Quality Control (Q.C.) Program

CHFA has adopted HUD's Mortgagee Letter 89-32, dated December 26, 1989, as amended and updated from-time-to-time.    This Q.C. program applies to all CHFA Loan Originations, FHA, VA, USDA or conventional  (currently insured by California Housing Loan Insurance Fund  (CaHLIF)).

The Agency will subject CHFA originated loans to a complete ten (10) percent Q.C. Program rather than  random chance of Servicer's total origination.



## Y.  Borrower Inquiries

Servicers shall promptly respond to all inquiries received from Borrower about the terms of their Trust Deeds, the status of their accounts, or any actions the Servicer took (or did not take) in servicing their loans. The Servicer's staff should be able to explain in terms clearly understandable to the Borrower those activities that commonly generate the most questions: servicing transfers, escrow deposits, due-on-sale clauses, CHFA's mortgage insurance requirements, ARM interest rate or payment changes, payoff charges, request for rental approval, etc. Servicers should not refer Borrower to CHFA for resolution of issues that are the Servicer's responsibility.

## Z.  Record Retention

For more convenient storage, the Servicer may microfilm (or otherwise condense, including the use of computer imaging) most of the papers required to document and service the Trust Deed. However, the Servicer shall retain the original recorded Trust Deed; the original of any assignments of the Trust Deed (except for any original assignment that CHFA may be holding); the original FHA or private mortgage insurance certificate, VA loan guaranty certificate, evidence of USDA Rural Development insurance (unless it is in possession of CHFA); and originals of any documents that change the Trust Deed terms (unless required that they be sent to CHFA). When the Servicer uses any form of reduced (condensed) documents, it shall be able to promptly reproduce legible, exact duplications of the original documents if they are needed for any reason.

After a Trust Deed is reconveyed or assigned, or a Deed-in-Lieu given, the Servicer shall keep the individual Trust Deed records for at least six (6) years (from the date of payoff or the date that any applicable claim proceeds are received), unless CHFA specifies that the records are to be retained for a longer period.

## AA.  Conversion to Bi-weekly Payments

Some Borrowers may want to accelerate the amortization of their Trust Deeds by converting from a monthly payment schedule to a biweekly payment schedule. Although they can achieve the same results by making an additional principal payment each month, some prefer the discipline imposed when the additional payments are "required" rather than voluntary. This need for discipline may result in a Borrower seeking a biweekly payment schedule from the Servicer or agreeing to participate with outside parties in establishing such a schedule. CHFA will not object to Servicers offering biweekly payment plans on an informal basis or participating with firms that do offer them. However there should be no written Loan Modification executed which would require a Transferee Servicer to continue the biweekly payment plan.    Only whole monthly payments are to be sent to

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of September 2012, a copy of the foregoing

**DECLARATION OF GREGORY CARTER IN SUPPORT OF OBJECTION OF**

**CALIFORNIA HOUSING FINANCE AGENCY TO NOTICE OF**

**(I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY**

**CONTRACTS AND UNEXPIRED LEASES OR PERSONAL PROPERTY, AND**

**UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE**

**AMOUNTS RELATED THERETO** was sent to those receiving documents via the CM/ECF

system and sent by first class mail, postage prepaid, to:

*Debtor*
Residential Capital, LLC
1177 Avenue of the Americas
New York, NY  10036

*Debtor's Counsel*
Anthony Princi, Gary S. Lee Joel C. Haims
Larren M. Nashelsky Lorenzo Marinuzzi
Norman Scott Rosenbaum, Todd M. Goren
**Morrison & Foerster**
1290 Avenue of the Americas
New York, NY  10104

*Debtor's Counsel*
Steven J. Reisman
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY  10178

*Counsel for*
*Wilmington Trust, National Association*
Debra Weinstein Minoff, Walter H. Curchack
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154

*Counsel for*
*Wilmington Trust, National Association, as*
*Indenture Trustee for the Senior Unsecured*
*Notes Issued by Residential Capital, LLC*
Sean A. O'Neal, Thomas J. Moloney
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY  10006

*Counsel for*
*HSBC Bank USA, National Association*
John Kibler
Allen & Overy
1221 Avenue of the Americas
New York, NY  10178

*U.S. Trustee*
United States Trustee
33 Whitehall Street, 21st Floor
New York, NY  10004

*Claims and Noticing Agent*
*Kurtzman Carson Consultants LLC*
Attn: James Le
2335 Alaska Avenue
El Segundo, CA  90245

*Counsel for*
*Official Committee of Unsecured Creditors*
Douglas Mannal
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY  10036

*Counsel for Nationstar Mortgage LLC*
Larry J. Nyhan, Jessica C.K.Boelter,
Brett Myrick
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603

*Counsel for*
*Official Committee of Unsecured Creditors*
Steven S. Sparling
Kramer Levin Naftalis & Frankel LLP
919 Third Avenue
New York, NY  10022

 */s/ Lori N. McCleerey*
Lori N. McCleerey