TERRENCE J. McCABE
MARC S. WEISBERG
EDWARD D. CONWAY
MARGARET GAIRO
LISA L. WALLACE
LAURA H.G. O'SULLIVAN
JANET Z. CHARLTON
GAYL C. SPIVAK
JASON E. BROOKS
ANDREW L. MARKOWITZ
MICHAEL T. CANTRELL
CATHERINE E. WELKER
HEIDI R. SPIVAK
DIANA C. THEOLOGOU
MARISA J. COHEN
MARK GOLAB
JO-ANN T. LAMBERT-O'NEILL
MELISSA A. SPOSATO
BRIAN T. LaMANNA
CORRIN M. DEMENT
ANN E. SWARTZ
PHILLIP MAHONY
MATTHEW E. RUSSELL
ERIN M. BRADY
MICHAEL LEHRMAN
RICHARD O'BRIEN
LAURA T. CURRY
ANTOINETTE N. MOORE
BENJAMIN P. SMITH
KEVIN T. McQUAIL
ALEXANDRA T. GARCIA
MICHAEL T. ROZEA
JONATHAN ELEFANT
LAURA L. LATTA
ABBY K. MOYNIHAN
CHRISTINE L. GRAHAM
SHEERA G. ENGRISSEI
JOSE O. HASBUN
JONATHAN POLLACK
MAKENNA E. PORCH
RICHARD J. SUZOR, JR.
HEATHER M. WEJNERT
LUCAS M. ANDERSON
WILLIAM D. JENNINGS

See www.mwc-law.com for licensing

LAW OFFICES

# McCABE, WEISBERG & CONWAY, P.C.

SUITE 1400
123 SOUTH BROAD STREET
PHILADELPHIA, PA  19109
(215) 790-1010
FAX (215) 790-1274

SUITE 303
216 HADDON AVENUE
WESTMONT, NJ 08108
(856) 858-7080
FAX (856) 858-7020

SUITE 210
145 HUGUENOT STREET
NEW ROCHELLE, NY 10801
(914)-636-8900
GENERAL FAX (914) 636-8901

SUITE 800
312 MARSHALL AVENUE
LAUREL, MD 20707
(301) 490-3361
FAX (301) 490-1568
Also servicing the District of Columbia

SUITE 202
4021 UNIVERSITY DRIVE
FAIRFAX, VA 22030
(866) 656-0379

SUITE 100
30 BUXTON FARMS ROAD
STAMFORD, CT 06905
(203) 992-8200
FAX: (855) 425-1979

SUITE 130
DELAWARE CORPORATE CENTER I
ONE RIGHTER PARKWAY
WILMINGTON, DELAWARE 19803
(302) 409-3520
FAX 855-425-1980

July 10, 2012

Michael and Stephanie Donaghy
300 Central Avenue
Runnemede, NJ 08078-1137

    Re:    Loan Account Number 744177XXXX

Dear Michael and Stephanie:

    First, let me thank you again for working with me on your loan questions. I have worked through your questions with the loan servicer and can report as follows:

1) **Why does the proposed proof of claim have a $4064.24 line item for escrow advances when our Home Affordable modification letter dated December 17, 2009 says there is no shortage of funds in our escrow account?** A shortage looks forward at needed funds to pay escrow items in the current year. At the time of the modification, an estimated escrow component was added to your modified monthly interest and principal payment to cover taxes and insurance in the coming year and, at the time of the modification, there was no reason to believe that the estimate would produce a shortfall. Your lender was required to advance escrow items on your behalf in the past, however, and the $4,064.24 represents that amount. You will see this same amount listed as your escrow balance as of 12/2009 on the 2010 Detail you have been provided.

2) **$1,151.94 in fees were reversed pursuant to our modification agreement, and the funds placed back into suspense. Why was that exact figure taken out again and used to pay escrow on the April 9, 2010 line item of the history you provided to**

Michael and Stephanie Donaghy
July 10, 2012
Page 2

   **us?**  As explained above, the modification did not eliminate the prior years' escrow shortfall, and the moneys previously used to pay fees that were later waived was then reallocated to this shortfall that was not waived.

3) **With the payment that we sent to counsel, we should be current through May. Why does the loan history show that we are two months behind?**  According to our records, as of May, 2012, you have made 26 payments and we have credited you with another payment for a grand total of 27 payments. Because the modification plan started with the January, 2010 payment due, you should have made 29 payments as of, and including, May/2012. You are therefore shown behind on your loan by the difference – or, two payments. The payments we shown as being made or credited can be found on the loan history at the following lines: (1) 2/25/10 ($1,607.06 that was placed into suspense because it was short $60.75); (2) 3/25/10 ($1,614.56, again short by $53.25); (3) 4/30/10 ($1,667.81); (4) 5/29/10 ($1,692.50, including a small overpayment); (5) 6/29/10 ($1,742.50, also including an overpayment which, when added to the previous overpayment, approximately equals the payment shortages from earlier in the year); (6) 10/13/10 ($1,667.81); (7) 10/22/10 ($1,667.81); (8) 10/26/10 ($1,667.81 payment credited to your account by my client); (9) 11/24/10 ($1,667.81); (10) 12/13/10 ($1,667.81); (11) 1/20/11 ($1,667.81); (12) 2/21/11 ($1,667.81); (13) 3/23/10 ($1,667.81); (14) 4/25/11 ($1,584.99 – payment reduced as a result of escrow audit showing decrease in cost of insurance premium); (15) 6/21/11 ($1,585.00); (16) 7/19/11 ($1,585.00); (17) 8/2/11 ($1,585.00); (18) 8/5/11 ($1,585.00); (19) 9/30/11 ($1,585.00); (20) 10/31/11 ($1,585.00); (21) 11/30/11 ($1,585.00); (22) 1/10/12 ($1,585.00); (23) 1/30/12 ($1,585.00); (24) 3/5/12 ($1,585.00); (25) 3/5/12 ($1,585.00); (26) 4/6/12 ($1,525.00, again a small decrease in monthly payment as a result of a decrease in escrow portion); and (27) 5/17/12 ($1,525.00). If you have made additional payments not reflected in the payment history, and have evidence of those payments, please forward that evidence to me right away and I will see to it that all appropriate adjustments are made promptly.

4) **Why does the loan history show a starting balance at $212,119.96 when our modification agreement says our balance would be $210,545.44?**  The history was designed this way so that you could see the loan starting just prior to the application of the modification changes. After those changes are made (see line entries at 1/20/10 through 2/9/10), and before any post modification payments are applied, the balance is reduced to $210,545.44 as promised (see second 2/9/10 line entry).

5) **Please confirm that no late or other fees prior to January, 2010 are included in the post-modification loan accounting.**  No such fees that were outstanding at the time of the implication of the modification on January 1, 2010 have been included in the post-modification amounts shown due on the loan.