1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


              Debtors.


- - - - - - - - - - - - - - - - - - - - -x


              United States Bankruptcy Court

              One Bowling Green

              New York, New York


              September 21, 2012

              2:06 PM




B E F O R E :

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

2

Telephone Conference, on the Record, RE: setting dates for

discovery in reference to RMBS trust settlement.  Marked Up

Documents: 320, 321, 1429

Transcribed by:  Sharona Shapiro

eScribers, LLC

700 West 192nd Street, Suite #607

New York, NY 10040

(973)406-2250

operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4         Attorneys for Debtors

5         1290 Avenue of the Americas

6         New York, NY 10104

7

8  BY:   ANTHONY PRINCI, ESQ.   (TELEPHONICALLY)

9         JAMIE A. LEVITT, ESQ.   (TELEPHONICALLY)

10        DANIEL E. CLARK, ESQ.   (TELEPHONICALLY)

11        DARRYL P. RAINS, ESQ.  (TELEPHONICALLY)

12

13

14  ALSTON & BIRD

15         Attorneys for Wells Fargo as Trustee

16         90 Park Avenue

17         12th Floor

18         New York, NY 10016

19

20  BY:   MICHAEL E. JOHNSON, ESQ.   (TELEPHONICALLY)

21         JOHN C. WEITNAUER, ESQ.   (TELEPHONICALLY)

22

23

24

25

4

1  CADWALADER, WICKERSHAM & TAFT LLP

2        Attorneys for MBIA Insurance Co.

3        One World Financial Center

4        New York, NY 10281

5

6  BY:   JONATHAN M. HOFF, ESQ.   (TELEPHONICALLY)

7

8

9  DECHERT LLP

10        Attorneys for Bank of New York Mellon

11        1095 Avenue of the Americas

12        New York, NY 10036

13

14  BY:   GLENN E. SIEGEL, ESQ.   (TELEPHONICALLY)

15

16

17  GIBBS & BRUNS LLP

18        Attorneys for RMBS Steering Committee

19        1100 Louisiana Street

20        Suite 5300

21        Houston, TX 77002

22

23  BY:   ROBERT MADDEN, ESQ.   (TELEPHONICALLY)

24

25

5

```
 1   JONES DAY

 2         Attorneys for Financial Guaranty Insurance Company

 3         222 East 41st Street

 4         New York, NY 10017

 5

 6   BY:   HOWARD F. SIDMAN, ESQ.   (TELEPHONICALLY)

 7         RICHARD L. WYNNE, ESQ.   (TELEPHONICALLY)

 8

 9

10   KRAMER LEVIN NAFTALIS & FRANKEL LLP

11         Attorneys for Official Creditors' Committee

12         1177 Avenue of the Americas

13         New York, NY 10036

14

15   BY:   PHILIP BENTLEY, ESQ. (TELEPHONICALLY)

16         PHILIP S. KAUFMAN, ESQ. (TELEPHONICALLY)

17

18

19   KIRKLAND & ELLIS LLP

20         Attorneys for Ally Financial & Ally Bank

21         655 Fifteenth Street, N.W.

22         Washington, DC 20005

23

24   BY:  DANIEL T. DONOVAN, ESQ.   (TELEPHONICALLY)

25
```

1  KIRKLAND & ELLIS LLP

2       Attorneys for Ally Financial & Ally Bank

3       601 Lexington Avenue

4       New York, NY 10022

5

6  BY:  RAY C. SCHROCK, ESQ.  (TELEPHONICALLY)

7       CRAIG BRUENS, ESQ.  (TELEPHONICALLY)

8

9

10  KRAMER LEVIN NAFTALIS & FRANKEL LLP

11       Attorneys for Official Creditors' Committee

12       919 Third Avenue

13       New York, NY 10022

14

15  BY:  KENNETH ECKSTEIN, ESQ.  (TELEPHONICALLY)

16

17

18  LOEB & LOEB LLP

19       Attorneys for Wilmington Trust, National Association

20         as Indenture Trustee

21       345 Park Avenue

22       New York, NY 10154

23

24  BY:  WALTER H. CURCHACK, ESQ.  (TELEPHONICALLY)

25

7

 1

 2  MCKOOL SMITH

 3        Attorneys for Freddie Mac

 4        600 Travis Street

 5        Suite 7000

 6        Houston, TX 77002

 7

 8  BY:   KYLE LONERGAN, ESQ. (TELEPHONICALLY)

 9

10

11  MORGAN LEWIS & BICKLUS LLP

12        Attorneys for Deutsche Bank Trust Company Americas

13        101 Park Avenue

14        New York, NY 10178

15

16  BY:   JAMES L. GARRITY, JR., ESQ.  (TELEPHONICALLY)

17

18

19  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

20        Attorneys for AIG

21        51 Madison Avenue

22        22nd Floor

23        New York, NY 10010

24

25  BY:   SCOTT C. SHELLEY, ESQ.  (TELEPHONICALLY)

```
 1   ROPES & GRAY LLP

 2          Attorneys for RMBS Noteholders

 3          1211 Avenue of the Americas

 4          New York, NY 10036

 5

 6   BY:   KEITH H. WOFFORD, ESQ.  (TELEPHONICALLY)

 7

 8

 9   SEWARD & KISSEL LLP

10          Attorneys for U.S. Bank National Association

11           as Securitization Trustee

12          One Battery Park Plaza

13          New York, NY 10004

14

15   BY:   ARLENE R. ALVES, ESQ.  (TELEPHONICALLY)

16          MARK D. KOTWICK, ESQ.  (TELEPHONICALLY)

17

18

19   WHITE & CASE LLP

20          Attorneys for Ad Hoc Group of Junior Secured Noteholders

21          1155 Avenue of the Americas

22          New York, NY 10036

23

24   BY:   HARRISON DENMAN, ESQ.  (TELEPHONICALLY)

25          J. CHRISTOPHER SHORE, ESQ.   (TELEPHONICALLY)
```

RESIDENTIAL CAPITAL, LLC, ET AL.                                    9

1                    P R O C E E D I N G S

2              THE COURT:  All right.  Those in the courtroom can be

3    seated.  Okay.  We're on the record in Residential Capital.  I

4    have the list of appearances.

5              Who wants to speak for the debtor?

6              MS. LEVITT:  Your Honor, this is Jamie Levitt and

7    Anthony Princi of Morrison & Foerster on behalf of the debtor.

8              THE COURT:  Thank you, Ms. Levitt.  Go ahead.

9              MS. LEVITT:  Your Honor, and I apologize for the

10   timing, but we did just send to the Court a proposed schedule

11   that we have negotiated with only the creditors' committee.  In

12   the crunch of time we were able to reach an agreement with the

13   committee.  We have provided it to all the other parties who

14   are on the line, but I know they haven't had a long opportunity

15   to review it, although we have provided pieces of this along

16   the way since the 19th, just a couple of days ago, after our

17   hearing.

18             Your Honor, we think that this schedule, in large

19   part, tracks what the Court had entered in the previous

20   schedule, while allowing for the additional week of time.  It

21   provides for timing for discovery, for experts, for objections.

22             And then one thing to note, Your Honor -- if Your

23   Honor would like to go through date by date we can -- we

24   changed the final date to November 7th.  The Court had

25   mentioned November 6th but that was election day and we weren't

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    10

1  sure that the Court wanted anything on that day.

2          THE COURT:  Well, the court's closed but that doesn't

3  keep people from filing or me from looking online.

4          Hold on.

5          MS. LEVITT:  Your Honor, I just note, while you're

6  looking, that we did put in brackets pieces that pertained to

7  parties with whom we did not negotiate, and then there was one

8  word that we disagreed on with the committee, and that's in

9  brackets.

10         THE COURT:  Okay.  I'm okay about changing it to

11 November 7th.  Why don't you just -- I wish you had all -- I

12 mean, I think there was enough time to try and reach an

13 agreement with everybody so I'm disappointed that you

14 haven't -- don't have an agreed schedule.  Lay out the dates

15 because there may be people on the phone who have not seen

16 it --

17         MS. LEVITT:  Okay.

18         THE COURT:  -- and I certainly haven't seen it.

19         MS. LEVITT:  Okay.  So Your Honor, for everyone's

20 benefit and the Court's benefit, I will walk through the dates,

21 and I,  as you, hope we'll have substantial agreement with

22 everyone.

23         The first date was that Ally or AFI would complete its

24 rolling production by September 24.  The production dates, Your

25 Honor, we took from the ones that were mentioned in court on

1    the 19th.

2          Number two, any party who wants to -- any party

3    seeking to introduce expert testimony needs to designate

4    experts by September 28th.  The debtors will file any

5    supplemental expert reports on September 28th.  The debtors

6    will substantially complete their rolling production by October

7    3rd.  The Talcott Franklin group agreed to substantially

8    complete their rolling production by October 3rd.

9          Your Honor, I bracketed the steering committee because

10   I believe there is an objection between the committee and the

11   Kathy Patrick steering committee group as to whether they will

12   produce documents, so that's going to need to be resolved

13   separately with briefings between them.

14         Number six, Your Honor, is any party seeking to

15   introduce direct testimony has to designate fact witnesses by

16   October 5th.  That doesn't include adverse witnesses which

17   could come up later.

18         By October 5th, Your Honor, the debtors agreed to

19   provide a partial privilege log.  We hope to be substantially

20   completed.

21         Number eight, the Ally, the Talcott Franklin group and

22   the steering committee group would provide a privilege log on

23   October 5th.  Again, a question mark with respect to the

24   steering committee group; I understand they're briefing that

25   issue of production.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                              12

1    Number nine, Your Honor, the debtors will provide a

2    final privilege log by October 8th, 10 a.m. in the morning.

3    And then any party that wants to challenge a withholding or

4    designation of a document as privileged would have to meet and

5    confer with producing parties by 4 p.m. that day, October 8th.

6    And then the parties would submit letters to Your Honor, if

7    there were objections, on the 9th.  And the Court, if it works

8    with the Court's schedule, would hear these disputes on October

9    10th.

10           THE COURT:  Which disputes are you talking about now?

11           MS. LEVITT:  The disputes with respect to designations

12   of privilege.  So privilege log disputes would be resolved by

13   the Court on October 10th.

14           THE COURT:  Hold on.

15           Go ahead, Ms. Levitt.

16           MS. LEVITT:  And Your Honor, there's a bracket around

17   the word "any" in number eleven.  I will flag that now, and Mr.

18   Bentley or someone from the committee may want to discuss that.

19   And the issue was that we wanted an privilege related disputes

20   resolved on October 10.  They wanted to take out the "any" to

21   reserve the rights to raise them later.  We thought there

22   needed to be an end date.

23           Your Honor, number twelve, any objecting party other

24   than the debtors would file expert reports by 10 a.m. on

25   October 19th.  The debtors have previously filed their expert

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    13

1  report.

2          Number thirteen, fact discovery ends on October 19th.

3          Number fourteen, expert discovery of the debtors'

4  experts, which had been previously produced, would end on

5  October 19th.

6          Expert discovery of the objecting parties' experts

7  would end on October 26th, so the discovery of the objecting

8  parties' experts would take place the week after their reports

9  were produced.

10          Number sixteen, any objections to the motion shall be

11  filed on October 24.  The debtor reply along with reply expert

12  reports would be filed on November 7.

13          Then all other materials would go to Your Honor.  All

14  adverse witness lists, exhibit lists, direct testimony,

15  supplemental expert declarations, also filed on the 7th.

16          Number nineteen, Your Honor, is the hearing of the

17  motion, and number twenty is the deadline for the trustees to

18  accept or reject would be fourteen days after Your Honor

19  entered an order with respect to the lead settlement.

20          THE COURT:  All right.  Let me -- again, I tried to

21  write these dates down as you were going along, Ms. Levitt.  I

22  don't have it in front of me.  With --

23          MS. LEVITT:  Your Honor --

24          THE COURT:  Let me just say, with respect to the

25  hearing, the hearing is going to begin at 9 a.m. each day

**RESIDENTIAL CAPITAL, LLC, ET AL.** 14

1 | rather than 10.

2 | Go ahead, Ms. Levitt, you started to say something.

3 | MS. LEVITT: I apologize for interrupting you. We had

4 | e-mailed a PDF of this document to your clerks. I don't know

5 | if it will be useful to have that document in front of you.

6 | THE COURT: Well, you know, I've been on the bench all

7 | morning and I'm about -- as soon as we get off the phone here,

8 | I've got a hearing that's resuming. So I certainly checked

9 | this morning to see whether there was anything filed or

10 | submitted to chambers and there had not been. I'm --

11 | MS. LEVITT: Would you like me to go through them?

12 | THE COURT: No.

13 | Ms. Patrick, are you on the line?

14 | MR. MADDEN: Your Honor, this is Robert Madden. I'm

15 | Ms. Patrick's partner.

16 | THE COURT: Okay. Mr. Madden, tell me what it is --

17 | you're objecting to production of documents on what basis?

18 | MR. MADDEN: Yes, Your Honor, what we're objecting to

19 | is the production of -- and I believe this dispute is over the

20 | settlement negotiations, Your Honor. I think Ms. Patrick

21 | talked about that briefly. We don't oppose getting settlement

22 | communications because we're getting them from Ally and the

23 | debtor. The narrow issue is whether we are also going to be

24 | required to produce them. Ms. Patrick, I think, previewed that

25 | with Your Honor at the last hearing.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    15

1      THE COURT:  Well, she previewed it with respect to

2  testimony, and I directed that no depositions of outside

3  counsel be taken.

4      (Interference on the phone line)

5      THE COURT:  Hello?

6      THE OPERATOR:  One moment, Your Honor.

7      One moment.

8      We should be good now, Your Honor.

9      THE COURT:  We're not.

10     THE OPERATOR:  One moment.

11     THE COURT:  Is this a problem with CourtCall or with

12  someone on the line connected in?

13     THE OPERATOR:  I'm searching the lines to find that

14  out, Your Honor.  One moment.

15     Please go ahead,  Your Honor.

16     THE COURT:  All right.  I hope everyone can hear me

17  all right.

18     I've been handed a copy of the proposed scheduling

19  order.  I'm just looking at it now, so everybody just sit

20  tight.

21     Let me hear again why the steering committee counsel

22  believes they don't have to produce documents.  It's certainly

23  not internal documents, but documents that were exchanged in

24  connection with settlement.  I certainly ordered from the bench

25  that the depositions of outside counsel not take place at this

RESIDENTIAL CAPITAL, LLC, ET AL.                                    16

1   point.  But let me hear what your -- the rationale as to

2   document production is. &&

3        MR. MADDEN:  Yes,  Your Honor.  This is Robert Madden

4   of Gibbs & Bruns.  There's both a practical issue and a legal

5   issue, and so let me start with the legal issue.  There's a

6   long line of authority -- and we've cited these cases to the

7   committee -- that hold that settlement negotiations, in the

8   context of settlement approval such as is before Your Honor,

9   are not subject to discovery, absent some evidence of collusion

10  between the negotiating parties.  And I know Your Honor has

11  raised the issue that one of the Iridium factors is that

12  there's a finding that the settlement negotiations were

13  conducted at arms' length.  But I would point out that these

14  cases arise in precisely that context, that most of the cases

15  are in the class action settlement approval context where

16  finding of arms' lengths negotiation, just as under Iridium, is

17  required.

18        This line of cases has been applied by the bankruptcy

19  court in the 9019 context in a case called In re Leeway Holding

20  Co. out of the Southern District of Ohio.  And so that is the

21  legal basis upon which we base our resistance to producing

22  settlement communications, which is that there's a long line of

23  authority that says they're not relevant and don't need to be

24  produced.

25        The practical issues are really two-fold, and one of

1  them is something that Ms. Patrick mentioned, which is that our

2  clients are not just in this case, that we're also in the Bank

3  of America case before Justice Kapnick where we have in fact

4  had this dispute and we've fought it, and in fact, Justice

5  Kapnick has ruled in our favor on that issue.

6           But more importantly, we're also, as is publicly

7  known, in negotiations and pursuing remedies across the

8  industry and with other banks, and it is a critical component,

9  for us to be able to have any hope of success in those

10 negotiations, that we will make all efforts necessary to

11 protect the confidentiality of those settlement communications.

12 And in fact, that's one of the reasons that the courts have

13 developed this rule, which is that the importance of the policy

14 to promote settlement and recognizing that settlement

15 negotiations are going to be inquired into, that that creates a

16 chilling effect.  And so --

17           THE COURT:  When are you going to be prepared to file

18 your brief?  I'm not waiting.

19           MR. MADDEN:  I'm sorry?

20           THE COURT:  When will you file -- when will you be

21 prepared to file a brief on this issue?  I'm not prepared to

22 wait until October to have this sort of --

23           MR. MADDEN:  No, Your Honor.  And we've in fact

24 negotiated a briefing schedule.  The committee is going to file

25 a brief as to why they don't believe the authorities we pointed

RESIDENTIAL CAPITAL, LLC, ET AL.                                    18

1  out to them apply.  They're going to file that on Tuesday by

2  noon, and we'll file our response by the close of business on

3  Wednesday.

4          THE COURT:  Close of business Wednesday, September

5  26th?

6          MR. MADDEN:  Yes, Your Honor.

7          THE COURT:  All right.  Go ahead with that briefing.

8  After receiving both briefs -- is anyone else putting in a

9  brief on this issue?

10          Who's on the phone for the committee?

11          MR. BENTLEY:  Your Honor, Phillip Bentley and my

12  partner Philip Kaufman for the committee.

13          Mr. Kaufman will be addressing this issue, to the

14  extent Your Honor would like to hear from us on this issue.

15          THE COURT:  Well, let me see the briefs.  Get the

16  briefs in next week.  After receiving the briefs I'll determine

17  when the hearing should be.  I'm not going to wait until the

18  middle of October.  If I understood the schedule, people were

19  saying October 10th would be a hearing on it?

20          MS. LEVITT:  October 10th, Your Honor, is the hearing

21  on the privilege objection so that's an issue.

22          THE COURT:  Well, I'm not going to wait until October

23  10th to resolve this issue because I don't want any delay from

24  any ruling I have, if I order the documents be produced and be

25  told, oh, we need time to get the documents ready for

RESIDENTIAL CAPITAL, LLC, ET AL.                                    19

1  production.

2            Let me --

3            MR. ECKSTEIN:  Your Honor, Kenneth Eckstein.  We do

4  have an omnibus hearing on the 27th.

5            THE COURT:  Well, when I get the briefs I'll look at

6  the briefs and decide when I'm going to hear it.  It may not be

7  in an omnibus hearing day.

8            MS. LEVITT:  Your Honor --

9            THE COURT:  Explain the rationale for not having to

10  prepare a privilege log.

11            MR. MADDEN:  The issue, Your Honor, is we have

12  prepared a privilege log.  We reached agreement with the

13  committee and others that served us with a subpoena that given

14  most of the -- that virtually everything we were claiming a

15  privilege for was just simply our own internal communications

16  with our client and our work product analysis that -- we worked

17  out an agreement that we would produce a privilege log, that

18  rather than identify documents on a document by document basis,

19  we'd do it on a categorical basis.  And we were asked then to

20  supplement that with a privilege log of our -- we also claimed

21  common interest privilege of our communications with the

22  trustee -- with our trustees.  We've produced a document by

23  document privilege log on that basis.  So I'm not aware that

24  there's a dispute that we --

25            THE COURT:  Well, let me ask you this.  You're

1    asserting a basis to withhold production of documents

2    concerning the settlement negotiations with the counterparties

3    to those negotiations, correct?  Those are not communi -- I'm

4    not talking about internal communications with your own

5    clients.  Are you saying you're not going to produce a

6    privilege log as to those documents you're withholding that

7    concern communications with the counterparties in -- you're

8    claiming they're privileged, but you're not going to produce a

9    privilege log as to those?

10         MR. MADDEN:  Let me clarify, Your Honor.  We're not

11   claiming a privilege.  The line of cases that we're relying

12   upon do not create a privilege.

13         THE COURT:  How many documents do you have,

14   approximately, that relate to communications with the

15   counterparties to the negotiations?

16         MR. MADDEN:  I would guess it's probably several

17   hundred, Your Honor.  We haven't been asked to -- to my

18   knowledge there isn't an issue --

19         THE COURT:  Well, I'm telling you right now I want a

20   privilege log.  You don't have to file it at this point.  When

21   I hear this dispute I want to have a privilege log that I can

22   look at.  You're saying you're not claiming a privilege,

23   you're asserting another basis for not having to produce the

24   documents.  I'm telling you right now, I may or may not order

25   production, but I'm not going to accept any delay, so you're

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    21

1   not going to sit back; you figure out exactly how many

2   documents the to-from dates, subject, et cetera, because when I

3   hear the dispute I'm going to want to see that document.

4          MR. KAUFMAN:  Your Honor, this is Philip Kaufman from

5   Kramer Levin --

6          THE COURT:  Yes.

7          MR. KAUFMAN:  -- for the committee.

8          I'm not sure the Court understood the steering

9   committee's position.  They are not asserting a privilege --

10          THE COURT:  Oh, I understand.  I understand; they

11   believe there's another basis to decline to produce the

12   documents.

13          MR. KAUFMAN:  Yes, and that other basis, Your Honor,

14   is that they're not relevant.

15          THE COURT:  Well, look --

16          MR. KAUFMAN:  That is their position.

17          THE COURT:  -- I'm telling them, if they're not

18   producing the documents, I want a log of each of the documents

19   that they're withholding.  Okay?  You don't want to call it a

20   privilege log, don't call it a privilege log, but if I wind up

21   ordering production of the documents I'm not going to tolerate

22   any delay.  This case is moving --

23          MR. MADDEN:  Your Honor, we'll produce that --

24          THE COURT:  -- forward.

25          MR. MADDEN:  -- that log, and I can tell you that

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    22

1  we've pulled the documents, and to the extent that Your Honor

2  orders that they need to be produced we will produce them

3  immediately.

4          THE COURT:  Okay.  Do you have them Bates numbered

5  already?

6          MR. MADDEN:  Yes.

7          THE COURT:  All right.  I want to see a log of each of

8  the documents that you're withholding on this basis.  I'm not

9  deciding the issue now, but if I order production I don't want

10  any delay.  There's no room for delay in this schedule.

11          MR. MADDEN:  Understood, Your Honor, we absolutely

12  agree.  I do want to note for Your Honor that these documents

13  are the same documents that Ally and the debtors have agreed to

14  produce, but we will certainly --

15          THE COURT:  Then I don't understand what -- you know,

16  if the other parties are producing them, I don't understand why

17  you're withholding them, but I'll wait and see the briefs.

18          MR. MADDEN:  Understood.

19          THE COURT:  Can you confirm that -- well, I don't want

20  to go through this exercise of deciding an issue if the exact

21  same documents are being produced by other parties.  So --

22          MR. MADDEN:  But that --

23          THE COURT:  -- confirm -- stop.  Confirm with the

24  other parties who are producing the documents and confirm

25  whether each of the documents that you have is already being

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                                23

1   produced by another party, because if they obviate the need

2   for -- if that representation is made on the record then I

3   don't have to go -- I probably don't have to go ahead and --

4   I'm not looking for duplicative production.

5          MR. KAUFMAN:  And Your Honor, this is Philip Kaufman

6   again.  That is exactly what I had suggested to the steering

7   committee as a way to avoid this.

8          THE COURT:  Well, I'm directing that that conversation

9   take place.  If you can't represent to me that we're talking

10  about the exact same documents -- if the other parties are

11  producing the documents and you have exactly -- and to the

12  extent they're exactly the same -- Mr. Bentley, I take it you

13  don't need them from the steering committee if you're getting

14  them from the other parties, would you agree with that?

15         MR. BENTLEY:  That is correct, Your Honor.

16         THE COURT:  Okay.  So we're talking about whether

17  there are any additional documents that you have that were

18  exchanged with the counterparties that aren't being produced by

19  the debtors or AFI.  Get that resolved by the time -- when I

20  say get that resolved, get it resolved -- what I'm interested

21  in is if there are additional documents I want the

22  identification of those documents.  So work with the other

23  parties to see if you can resolve this.  It may turn out to be

24  a nonissue.

25         MR. BENTLEY:  We'll do that, Your Honor.

RESIDENTIAL CAPITAL, LLC, ET AL.                                    24

1          THE COURT:  All right.  What I would like, Ms. Levitt,

2    is since not everybody has had an opportunity to review the

3    schedule, I want -- do you want to try and get the rest of

4    those issues resolved with all other parties, get their

5    agreement to this schedule, and by noon on Monday any party who

6    objects to any portion of the schedule will file something in

7    writing on the docket to that effect.  But you ought to try and

8    work it out.  I'm not going to enter a schedule until everybody

9    has seen it and agreed to it.  And if you don't agree to it

10   I'll resolve the disputes, but my goal -- my hope was that you

11   would all resolve this schedule amicably.  The only two dates I

12   insisted on was the date that everything had to be submitted to

13   the Court, a week before the hearing, and the other dates I

14   tried to leave to you to work out.  So it looks like you've

15   substantially done it, but if you get it all worked out, Ms.

16   Levitt, then all that's going to be required is a single -- you

17   can call my chambers and then just file one piece of paper that

18   says the schedule has been agreed to by all the parties.  Okay?

19          MS. LEVITT:  Okay, thank you, Your Honor.

20          THE COURT:  All right.

21          MR. BENTLEY:  Your Honor, if I may, Phillip Bentley

22   for the committee.

23          THE COURT:  Go ahead, Mr. Bentley.

24          MR. BENTLEY:  There were two issues that Ms. Levitt

25   and I would like to raise with Your Honor today, if the Court

1    can accommodate us.

2              THE COURT:  Quickly.

3              MR. BENTLEY:  Okay.  One is the word "substantially"

4    appears in a number of paragraphs:  The various parties will

5    "substantially" complete their productions by specified dates.

6    We agreed to that on the condition that the debtor agreed that

7    the word "substantially" is being used in a way consistent with

8    Your Honor's comments earlier this week, namely, if it's just a

9    few documents then it's substantially complete but if it's

10   anything more than that it's not substantially complete.  And I

11   believe Ms. Levitt agrees with that interpretation.

12             THE COURT:  Ms. Levitt?

13             MS. LEVITT:  Yes, Your Honor, we believe any

14   immaterial lack in production is not an issue and is otherwise

15   substantially complete.

16             THE COURT:  All right.  And with that understanding

17   you're both satisfied with the inclusion of the word; I see

18   where the word "substantially" has been used.

19             MR. BENTLEY:  The one other concern we had on that

20   issue, Your Honor, is we intend to raise with the remaining

21   parties -- we've already raised with them, we're going to have

22   a final meet and confer with them very early next week about

23   which custodians filed their assertion for electronic

24   documents, e-mails and the like.  We want to make sure that

25   there are no disputes before their production deadlines come

**RESIDENTIAL CAPITAL, LLC, ET AL.** 26

1   around, and we don't want anybody to say, on their production

2   deadline, oh, we didn't realize such and such a custodian was

3   supposed to be served.  So we ended up running through those

4   issues now with the various parties.  We expect that we'll be

5   able to satisfactorily resolve that.  If we can't, we may need

6   to come back to Your Honor and ask for prompt relief on that.

7           THE COURT:  Mr. Bentley, if you need -- if you can't

8   resolve it, contact chambers, arrange a call and we'll resolve

9   it quickly.  With this schedule, there is no room for slippage.

10  So you're going to have one very unhappy judge if we get closer

11  to the trial date and it suddenly turns out somebody didn't

12  search for documents, produce documents.  So get all those

13  issues ironed out now.  This is a very aggressive schedule.

14          MR. BENTLEY:  We appreciate that, Your Honor, and we

15  will do so.

16          The one other issue Ms. Levitt and I wanted to raise

17  relates to paragraph 11 of the order that's in front of the

18  Court.

19          THE COURT:  Okay.

20          MR. BENTLEY:  You'll notice the word "any" in that

21  paragraph is bracketed.  Let me explain to you why the company

22  objects to the word "any" remaining in that.  This is the one

23  issue that we're not able to agree on with the debtors.  The

24  debtors will be giving out, at 10 a.m. on the morning of the

25  8th, their final privilege log.  We don't know how many

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                      27

1  documents will be on that log; it might be hundreds.  We are

2  going to do our darndest to make sure that we raise all issues

3  with the Court the next day, but because that schedule is so

4  tight there's an outside chance we might miss something and

5  might have to come back to the Court a little bit later --

6          THE COURT:  Take the word "any" out.  Hopefully you

7  will have -- the disputes will be narr -- certainly between the

8  debtor and the committee I hope the disputes will be very

9  narrow and we'll deal with it accordingly.  I only have the

10  capacity to deal with a certain number of issues at one time.

11          All right.  Let me say if there are disputes about

12  documents on the privilege log, I say this with some

13  trepidation, but I want unredacted copies of the documents

14  delivered to chambers for an in camera review at the time I

15  resolve the objections.  If it turns out you bring a truckload,

16  you better bring a bulletproof vest as well.

17          MS. LEVITT:  Your Honor, we'll look for one.

18          MR. BENTLEY:  Thank you, Your Honor, that resolves the

19  issues that we wanted to raise.

20          THE COURT:  Okay.

21          MS. LEVITT:  Your Honor, as the eternal optimist --

22  this is Jamie Levitt for the debtors, I believe --

23          THE COURT:  You know, you've worked out most of the

24  issues between you and the debtors, so I'm hopeful that that'll

25  happen again.

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                28

1          Go ahead, Ms. Levitt, I'm sorry.

2          MS. LEVITT:  No, Your Honor, I just wanted to say that

3    I do believe, and I may be overly optimistic, that we really

4    probably have worked out most issues with all parties.  I don't

5    foresee a huge amount of objection, and we'll work it out by

6    noon on Monday.

7          There is one thing that has been raised by the trustee

8    that I will just raise in fairness to them, which is on numbers

9    12 and 16 we had set a date of expert reports on the 19th and

10   objections on the 24th.  I know the trustees, Your Honor, would

11   prefer a staggered date so that the twelfth would say October

12   17th for all reports other than the committee and the trustees

13   and October 19th for the committee and the trustees.  And

14   likewise on number sixteen, I know that the trustees would like

15   October 22nd for all objections other than the committee and

16   trustees, and the 24th for the committee and trustees.  We can

17   try to work that out, Your Honor, unless Your Honor has a

18   position on that.

19         THE COURT:  See if you can work it out, okay?

20         MS. LEVITT:  Thank you, Your Honor.

21         THE COURT:  All right.

22         MR. CLARK:  Your Honor, this is Dan Clark on behalf of

23   the debtors.  Just one quick practical question, please.

24         THE COURT:  Yes.

25         MR. CLARK:  Would you like hard copies of the

**RESIDENTIAL CAPITAL, LLC, ET AL.**                          29

1    documents, the unredacted copies, or do you --

2          THE COURT:  Yes.  No, I -- you know, again, the

3    caution about a truckload, but no, I want to see the paper

4    because it's faster for me to look at the paper than it is to

5    search each document on the computer.

6          MR. CLARK:  Okay.

7          THE COURT:  You know, when we get closer to that date

8    let me know -- in advance of it, let me know what the volume of

9    documents you're fighting about, if at all.  Okay?  And maybe

10   I'll change my view or maybe I'll require both electronic and

11   paper.  But again, you really -- I'm hopeful you won't be

12   fighting about very many documents.  Okay?

13         MS. LEVITT:  Understood, Your Honor.

14         THE COURT:  All right.  We're adjourned.

15       (Whereupon these proceedings were concluded at 2:36 PM)

16

17

18

19

20

21

22

23

24

25

30

C E R T I F I C A T I O N

I, Sharona Shapiro, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

SHARONA SHAPIRO

AAERT Certified Electronic Transcriber CET**D 492

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:   September 23, 2012