BINGHAM McCUTCHEN LLP
Steven Wilamowsky
399 Park Avenue
New York, New York  10022
(212) 705-7000

*Attorneys for DB Structured Products, Inc.
and MortgageIT Holdings, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
:
In re                                   :      Chapter 11
:
Residential Capital, LLC, *et al.*,     :      Case No. 12-12020 (MG)
:
Debtors                     :      (Jointly Administered)
:
---------------------------------------------------------x

OBJECTION OF DB STRUCTURED PRODUCTS, INC.
AND MORTGAGEIT HOLDINGS, INC. TO DEBTORS'
PROPOSED CURE AMOUNT AND TO ASSUMPTION
AND ASSIGNMENT OF RELATED AGREEMENTS

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

DB Structured Products, Inc. ("DBSP"), and MortgageIT Holdings, Inc.

("MortgageIT" and, together with DBSP, the "DB Counterparties"), as and for their objection

(this "Objection") to the respective cure amounts proposed by the debtors-in-possession in the

above-captioned chapter 11 cases (the "Debtors") in the Debtors' *First Amended and Restated

Notice Of (i) Debtors' Intent To Assume And Assign Certain Executory Contracts, Unexpired

Leases Of Personal Property, And Unexpired Leases Of Nonresidential Real Property And (ii)

Cure Amounts Related Thereto* [Doc. No. 1484] (the "Amended Cure Notice") and to the related

May 14, 2012 sale motion referenced in the Amended Cure Notice (the "Sale Motion"),

respectfully represent as follows:

A/75185513.4

BACKGROUND

1. The DB Counterparties are parties to various agreements with GMAC Mortgage, LLC, one of the Debtors, or its prior iteration, GMAC Mortgage Corporation (in either case, "GMAC Mortgage"). Many of those agreements are scheduled for potential assumption and assignment to Nationstar Mortgage LLC ("Nationstar") under the Nationstar APA (as defined in the Amended Notice). For convenience of reference, those scheduled agreements that are the subject of this Objection are listed on Exhibit "A" hereto (the "DB Agreements").

2. The DB Agreements fall into two basic categories: Those in which DBSP owns the mortgage servicing rights and GMAC Mortgage acts a servicer (the "Servicing Agreements"), and those in which GMAC Mortgage acts as subservicer (the "Subservicing Agreements") for MortgageIT, the servicer.

3. Under the Servicing Agreements, GMAC Mortgage, as Servicer, processes monthly loan payments from individual borrowers, on behalf of the beneficial owners of those loans. In connection therewith, GMAC Mortgage collects the servicing fee on DBSP's behalf, and is required to remit the servicing fee each month to DBSP, net of an amount that GMAC Mortgage is entitled to retain as its compensation. Typically, the portion of the servicing fees GMAC Mortgage is entitled to retain for itself ranges from 0.04% to 0.06% of the unpaid principal balance of each loan.

4. Under the Subservicing Agreements, GMAC Mortgage, as subservicer, collects monthly loan payments, and then remits MortgageIT's servicing fee to MortgageIT, net of its contractual subservicing fee that it is entitled to retain for its own account. Typically, GMAC Mortgage's subservicing fees range from 0.03% to 0.05% of the unpaid principal balance of each loan.

5. Also under the Subservicing Agreements, GMAC Mortgage agreed, as subservicer, to indemnify and hold harmless the servicer, MortgageIT, from any and all claims, costs, damages, and penalties that MortgageIT (or any successors or assigns) may sustain for any failure of performance or breaches of contract by GMAC Mortgage.

6. By a series of letters, each dated May 9, 2012 (collectively, the "Termination Notices"), the DB Counterparties terminated the servicing or subservicing obligations of GMAC Mortgage under the Servicing Agreements and Subservicing Agreements, respectively, effective August 1, 2012, subject only to the servicing transfer provisions of the respective agreements designed to ensure that there would not be any period of time during which loans were not being serviced (*i.e.,* requiring the appointment of a successor servicer). A sample letter is annexed as Exhibit "B" hereto.

## THE PROPOSED ASSIGNMENT

7. Pursuant to the Amended Notice, the Debtors have scheduled the DB Agreements for potential (but not definite) assumption by GMAC Mortgage, and assignment to Nationstar, or another yet-to-be-identified, competing bidder. In all cases, no cure amount is proposed to be paid by the Debtors in respect of each of the DB Agreements. According to paragraph 6 of the Amended Cure Notice, this means that the Debtors believe that no cure amount is owed.

8. In fact, remarkably, of the 3,286 different agreements listed on the Amended Cure Notice, not a single one of them has any cure amount associated with it. The Debtors propose to pay nothing in cure, in every case.

## OBJECTION

9. The DB Counterparties object to the proposed assignments of the DB Agreements on two basic grounds. First, the proposed cure amounts of zero dollars have no

3

basis in reality. The limited research that the DB Counterparties have been able to accomplish to date reveals that GMAC Mortgage owes nearly $3 million to the DB Counterparties on account of the various DB Agreements for monies that were required to be remitted to the DB Counterparties by GMAC Mortgage, but never were. Second, in light of the Termination Notices that were sent prepetition, the very assignment of the DB Agreements is precluded because the Debtors have no rights left to assign.

A.     The Debtors Are Required To Cure Past Defaults As A Condition to Assumption

10.     Section 365(f) of the Bankruptcy Code provides for the assignment of executory contracts, but only on the condition that non-debtor counterparties are made whole prior to the assumption of such agreements, via the protections provided under section 365(b). *See In re Wireless Data, Inc.*, 547 F.3d 484, 489 (2d Cir. 2008) (debtor cannot assume executory contract "unless the debtor satisfies several statutory conditions designed to make the non-debtor contracting party whole."); *see also In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir. 1996) (Section 365(b) "require[s] that the trustee guarantee payment of all amounts owed prior to assumption.").

11.     Prior to the assumption of any executory contract, the Debtors must therefore first comply with the requirements of Section 365(b), namely to: (1) cure current defaults (or provide adequate assurance of prompt cure); (2) compensate for pecuniary losses (or provide adequate assurance of prompt compensation); and (3) to provide adequate assurance of future performance under any assumed contract. 11 U.S.C. § 365(b)(1)(A)-(C); *Wireless Data*, 547 F.3d at 489.

12.     The Debtors have not complied with the requirements of section 365(b). Nowhere in the Amended Notice or the Sale Motion do the Debtors either identify defaults or propose how they will cure them. The zero cures currently asserted are inappropriate and appear

4

to be based on nothing other than wishful thinking. *See In re Crown Books Corp.*, 269 B.R. 12, 19-20 (Bankr. D. Del. 2001) (debtor's failure to estimate cure amount evidenced lack of good faith).

13. Indeed, the DB Counterparties now know the actual cure amounts owed to them to be much higher than zero. In May, 2012, suspecting that GMAC Mortgage was not remitting the full amount of servicing fees owed to the DB Counterparties, the DB Counterparties began to conduct their own diligence to determine whether this was the case. Some of this diligence involved repeated inquiries of, and discussions with, GMAC Mortgage personnel. What they discovered was disturbing.

14. Specifically, and as described above, with respect to loans in which GMAC Mortgage acts as subservicer, GMAC Mortgage collects the servicing fee prescribed by the related servicing agreements on a monthly basis. GMAC Mortgage is then entitled to retain that portion of the servicing fee that represents its subservicing fee, and remits the balance to MortgageIT. Similarly, where GMAC Mortgage is the servicer, it collects the appropriate servicing fee, and then is required to remit a portion of that fee to DBSP.

15. However, after discussions with GMAC Mortgage personnel, a review of the cash remittances received by the DB Counterparties, GMAC monthly data tapes, and publicly-available loan level data, the DB Counterparties have determined GMAC Mortgage has in many cases not remitted the DB Counterparties' servicing fees. Since July 2009 (diligence for the period prior thereto is ongoing), the amount of these unremitted servicing fees total almost $3 million.

16. Moreover, the Debtors have made no provision to deal with MortgageIT's contingent claims for reimbursement and indemnification arising under the Subservicing

Agreements. To ensure that MortgageIT is not left without recourse on these claims, any order approving a sale involving the DB Agreements to Nationstar or another buyer (which the DB Counterparties maintain would be improper in any event) must, at a minimum, make clear that these obligations are being assumed by the purchaser.

B.     The Agreements May No Longer Be Assumed In Any Event

17.    It is axiomatic that "bankruptcy courts do not possess the power to cultivate rights where none can grow." *In re Haynes,* 283 B.R. 147, 156 (Bankr. S.D.N.Y. 2002). As a result of the Termination Notices, GMAC Mortgage retains no further right to service or subservice (as applicable) the DB Agreements, and it retains its roles only pending the installation of its replacement. Thus, there are no meaningful rights that remain for GMAC to sell. *See In re Tornado Pizza, LLC*, 431 B.R. 503, 510-11 (Bankr. D. Kan. 2010) (franchise agreement deemed terminated prepetition, and therefore unassumable, where franchisee had been left in place for "the sole purpose of allowing Debtor the opportunity to find a buyer acceptable to [the franchisor]." *See also In re DiCamillo,* 206 B.R. 64, 71 (Bankr. D. N.J. 1997) (where "tenant no longer has legal recourse to revive the lease, the leasehold interest is considered ended" for purposes of assumption under section 365(a)).

18.    Because the Debtors no longer have substantial rights in the DB Agreements, they also are not in a position to assign them to Nationstar, or any other buyer. Moreoever, the DB Agreements should have no value to any buyer: because even after assignment, the DB Counterparties would retain the right to terminate servicing at any time, any perception of value in the servicing or subservicing rights would be ephemeral.

RESERVATION OF RIGHTS

19.    The DB Counterparties reserve the right to amend and to supplement their objection in any way, including, but not limited to, objections to any purchaser once the

6

purchaser has been identified, objections to the terms of any proposed purchase agreement, objections to any proposed cure amounts, and objections to the proposed assumption and assignment of any agreements and related documents that the Debtors identify prior to or at the hearing on the Motion.

20.    Moreover, in the event that the Court should for any reason grant the Sale Motion in a way that involves the DB Agreements, it should be made clear in any sale order that such agreements include the larger set of related documents that may be incorporated and referenced in the DB Agreements, and any accompanying liabilities and obligations.

## CONCLUSION

WHEREFORE, the DB Counterparties respectfully request that the Court deny the Sale Motion to the limited extent that it affects the DB Agreements, and grant such other and further relief as is just and proper.

Dated: September 28, 2012

BINGHAM McCUTCHEN LLP

By:   /s/Steven Wilamowsky
Steven Wilamowsky
399 Park Avenue
New York, NY 10022
(212) 705-7000

*Attorneys for DB Structured Products, Inc. and MortgageIT Holdings, Inc.*

7

A/75185513.4