# EXHIBIT A

# RECALL
# REVIEW UPLOAD
# Contract Cover Page



CR-74820

| | |
|---|---|
| Company | GMAC Mortgage LLC |
| Sales Order | SO-68331 |
| Contract # | CR-74820 |

CR-74860

**recall**

RECALLSECURE DESTRUCTION SERVICES AGREEMENT

Date: 2/25/2009

SECTION A – Agreement
This Agreement consists of this Section A (General Agreement), the Section B (Terms and Conditions) below and as continued on the back page of this Agreement, Schedule 1 (Description of Services) and any exhibits and addenda attached hereto, and such amendments as may be entered into by the parties from time to time.

| Customer: | GMAC Mortgage LLC | | Schedule 1 Reference: | SO-68331 |
|---|---|---|---|---|
| Billing Address: | c/o Linda Platt<br>1100 Virginia Drive<br>Fort Washington PA 19034<br>United States | Term (mos): | Effective Date: | Expiration Date: |
| | | 12 | 2/25/2009 | 2/25/2010 |

*DeStroy℠ – Secure collection and destruction of confidential documents and media*   *OnSight℠ – Observable document destruction at your premises.*

*DeStock℠ – Reliable, secure destruction of items with high intrinsic value*

SECTION B – Terms and Conditions
1. **Agreement:** By tendering materials to Recall for destruction or other related services by Recall you accept these terms and conditions. Any different or additional terms in any documents from Customer are objected to and rejected, are deemed to materially alter these terms, and will not become a part of this Agreement. Recall agrees to: (a) furnish containers to Customer at the locations specified in Schedule 1, to be used exclusively for the deposit of confidential materials of Customer ("Customer Materials"), and (b) collect the Customer Materials from the containers in material accord with Recall's schedules, which may be modified from time to time upon notice to Customer and (c) cause the Customer Materials to be destroyed by shredding equipment so as to render the contents unreadable, all in material accord with Recall's standard operating procedures as modified in Recall's sole discretion from time to time. If requested by Customer, Recall shall provide a Certificate of Destruction along with Customer's invoice.
2. **Term:**
The initial term of this Agreement ("Initial Term") shall commence on the Effective Date, and shall continue during the Term specified in Section A. Thereafter this Agreement shall automatically renew for successive terms equal to the Initial Term (each a "Term") unless terminated by either party by written notice to the other not less than 60 days before the end of the then-current Initial Term or Term.

3. **Fees:**
All fees in effect for the first year of this Agreement are specified in Schedule 1. Fees for each subsequent year of this Agreement shall be calculated in accordance with Recall's then-current pricing methodology and shall be increased by an amount calculated by applying to the then-current fees the percentage increase in the consumer price index (all items, US, as published by the United States Department of Labor, Bureau of Labor Statistics) during the period since the then-current fees were established. If Customer requests any services in addition to those set forth in Schedule 1 and Recall provides such services, Customer will pay for such services at Recall's then-current standard rates. During the term of this Agreement Customer agrees to pay a minimum monthly fee as specified on Schedule 1.

4. **Payments:** All amounts due under this Agreement will be invoiced monthly in arrears and will be due and payable upon within 30 days after the invoice date. Customer shall also pay all applicable federal, state, local, use and other taxes relating to this Agreement or any services or products offered hereunder, excluding only taxes based on Recall's net income.
Any amounts payable hereunder which are not paid when due shall thereafter bear interest at the rate of one and one-half percent (1.5%) per month or the maximum amount permitted by applicable law, whichever is less. Time is of the essence for all payments due hereunder, and if any payment due Recall is collected at law, or through an attorney-at-law or under advice therefrom, or through a collection agency, Customer agrees to pay all costs of collection, including, without limitation, all court costs and reasonable attorneys' fees. If payment has not been made by Customer in accordance with this Agreement then Recall may suspend all or any part of the services provided to Customer until all payments due are made. If services are suspended during a Term of this Agreement, the Customer will remain responsible for payment of all charges accruing during such suspension.

5. **Limitation of Liability:**
In the event of any failure or delay in the performance of the services in accordance with this Agreement, Recall's liability shall be limited to the fee paid by Customer for the particular service. In no event shall Recall's liability exceed an amount equal to the fees paid hereunder for the 12-months immediately prior to the date of Customer's first claim.
NOTWITHSTANDING ANYTHING IN THE PRECEDING TWO SENTENCES OR ANY OTHER PROVISION IN THIS AGREEMENT, IN NO EVENT SHALL RECALL BE LIABLE TO CUSTOMER OR ANY OTHER PERSON, WHETHER IN CONTRACT OR IN TORT, OR UNDER ANY OTHER LEGAL THEORY (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OR STRICT LIABILITY) FOR LOST PROFITS OR REVENUES, LOSS OF USE OR SIMILAR ECONOMIC LOSS, OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR SIMILAR DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES TO BE PROVIDED HEREUNDER, OR FOR ANY CLAIM MADE AGAINST CUSTOMER BY ANY OTHER PERSON, EVEN IF RECALL HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH CLAIM.
6. **Minimum Volume:** After 1 month(s) after the date on which the Initial SDS Term commences, Customer will maintain a minimum of 80.0% of the volume of Services described in Schedule 1. In the event that Customer shall, at any time, maintain less than 1 bins tipped each month, Customer will be liable for and shall pay to Recall an amount equal to the tipped bin charges applicable to the number of bin tips described in Schedule 1. For example, if the per bin tip fee is $30.00, the number of bins tipped described in Schedule 1 is 50, and the minimum percentage is 80%, then the minimum bins tipped fees payable by Customer would be $1,200 per month, even if the number of bins tipped by Recall is 35.
7. **Delivery Service:** Recall shall pick-up Customer Materials at the Customer location(s) for which Recall agrees in writing to provide services, in accordance with Recall's standard schedules, as modified from time to time upon notice to Customer. Recall shall use commercially reasonable efforts to provide pick-up services within the time periods specified in this Agreement.

| Compliance | |
|---|---|
| GLB | If both parties initial the Gramm-Leach-Bliley Addendum attached to this Agreement the parties shall adhere to the terms of such Addendum. |
| HIPAA | If both parties initial the Business Associate Addendum attached to this Agreement the parties shall adhere to the terms of such Addendum |

Customer acknowledges that it is familiar with the general terms and conditions in Section B (both on this page and all pages of this document), Schedule 1, and all initialed Addenda, and agrees to comply therewith.

| | Customer | | Recall Secure Destruction Services, Inc. |
|---|---|---|---|
| Name: (Print) | JON DONATACCI | Name: (Print) | RONNIE ROBINSON |
| Title: | SVP | Title: | AM |
| Signature: | [signature] | Signature: | [signature] |

20071115 Recall HS SDS Agreement v. 501.1US



**RECALL SECURE DESTRUCTION SERVICES AGREEMENT**

Recall Initials: _PR_    Customer Initials: _CM_

8. **Confidentiality.** Recall will use commercially reasonable efforts to (a) maintain as confidential the Customer Materials and all nonpublic information obtained by it with respect to Customer in the performance of Services hereunder that should reasonably be understood by Recall at the time of disclosure, because of (i) legends or other markings, (ii) the circumstances of disclosure or (iii) the nature of the information itself, to be confidential and proprietary to Customer (collectively "Confidential Information"), and (b) not to use such Confidential Information other than in the performance of the Services and exercise of Recall's rights pursuant to this Agreement. If the Confidential Information contains Protected Health Information (as defined by the Health Insurance Portability and Accountability Act of 1996 and implementing regulations) and the parties initial the Business Associate Addendum attached to this Agreement Recall shall adhere to the terms of such Addendum. If the Confidential Information contains Nonpublic Information (as defined by the Gramm Leach Bliley Act and implementing regulations) and the parties initial the GLB Addendum attached to this Agreement Recall shall adhere to the terms of such Addendum.

9. **Subpoena of Materials.** Notwithstanding anything in Section 9 or any other provision of this Agreement, if any Customer Confidential Information is subpoenaed pursuant to an order of any court, or any other order, judgment or decree is made or entered by any court or governmental agency affecting such Confidential Information or any part thereof (collectively an "Order"), Recall is expressly authorized in its sole discretion to obey and comply with the Order, without the necessity of inquiring whether such court or agency had jurisdiction or inquiring into any other matter affecting the validity of the Order. Recall shall not be liable to Customer or any third party by reason of compliance with any Order notwithstanding that the Order may subsequently be reversed, modified or vacated. Recall will use all reasonable efforts to provide Customer with prompt written notice of the receipt of any Order to allow Customer an opportunity to protect its interest. Customer agrees to pay Recall's reasonable costs of complying with any Order.

10. **Limited Warranty.** Recall warrants that the Services shall be provided in a professional and workmanlike manner by personnel trained with respect to such Services. EXCEPT AS PROVIDED IN THIS SECTION, RECALL MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, NATURE OR DESCRIPTION, EXPRESS OR IMPLIED, WITH RESPECT TO ITS SERVICES, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND RECALL HEREBY DISCLAIMS THE SAME.

11. **Events of Default.** Customer shall be in default under this Agreement upon the occurrence of any one or more of the following events ("Events of Default"): (i) failure of Customer to pay when due any amounts owed hereunder and its failure to cure the same within 10 days of the date due; (ii) Customer's breach of any other provision of this Agreement, which, if capable of cure, is not cured within 30 days thereof; (iii) Customer becomes insolvent or makes any assignment for the benefit of its creditors; (iv) any proceeding is instituted by or against Customer under any bankruptcy or similar laws for the relief of debtors; or (v) the appointment of any trustee or receiver for any of Customer's assets. Upon the occurrence of any Event of Default, Recall at its sole discretion may exercise any, or any combination, of the following remedies: (A) refuse to provide further services with respect to, or provide access to, Customer Materials until the Event of Default is cured; (B) demand in writing that Customer pick up all Customer Materials at Recall's facility or facilities by a specified date, which date shall be no less than twenty (20) days after the date of such notice; (C) deliver Customer Materials to Customer at any Customer locations with reasonable prior notice thereof; (D) terminate this Agreement; and (E) such other rights and remedies as are available under applicable law, including without limitation the exercise all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where Customer Materials are stored. Recall shall have no liability to Customer or any other person for taking any actions permitted by this section. In addition to the remedies stated above, Recall shall have the right to destroy any Customer Materials remaining in its possession after Customer fails to comply with three (3) successive demands made pursuant to subsection 12(B) above, so long as such destruction renders such Customer Materials completely unreadable and unrestoreable. Recall shall have no liability to Customer or any other person for taking any actions permitted by this section. The exercise by Recall of any one or more of its rights under this Agreement shall not preclude Recall's exercise of any one or more of its other rights or remedies.

12. **Limitation of Actions.** No action, regardless of form, arising out of or in connection with this Agreement (other than an action by Recall for any amount due to Recall) may be brought more than one (1) year after the cause of action has arisen.

13. **Indemnification.**

Customer shall defend, indemnify and hold harmless Recall, its affiliates and their respective officers, directors, employees and agents against any liability, cost or expense (including court costs and reasonable attorneys' fees), irrespective of the theory on which based, directly or indirectly arising out of third party claims, demands or actions relating to (a) Recall's transportation, possession or storage of Customer Materials or (b) Customer's breach of this Agreement.

14. **Force Majeure.**

Recall shall not be liable for any default or delay in the performance of any of its obligations under this Agreement or for the damage or destruction of any Customer Materials if caused, directly or indirectly, by fire, flood, earthquake, the elements, or other such occurrences; labor disputes, strikes or lockouts; wars, acts of terrorism, riots or civil disorder; accidents or unavoidable casualties; interruptions of or delays in transportation or communications; decisions or requirements, whether valid, invalid, formal or informal, of any government, agency, board or official; or any other cause, whether similar or dissimilar to those enumerated herein, beyond Recall's reasonable control.

15. **Miscellaneous.** (a) Customer shall not assign all or any portion of this Agreement without the prior written consent Recall. (b) No failure or delay by either party to exercise any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy by a party preclude any further exercise thereof or the exercise of any other right or remedy. No express waiver by Recall to any breach of this Agreement shall constitute a waiver of any succeeding breach. (c) This Agreement shall be governed by the laws of the State of _New Jersey_, without regard to its principles of conflicts of law. (d) Headings describing the contents of particular sections are inserted only for convenience and shall not be construed as a part of this Agreement. (e) This Agreement may not be modified or amended except by a separate written instrument signed by the parties. (f) If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions hereof shall remain in full force and effect. (g) Except as otherwise provided in this Agreement, all notices under this Agreement shall be in writing and delivered personally or sent by pre-paid, first class, certified or registered air mail, return receipt requested, or by telecopy to the intended recipient at its address or telecopy number set forth above, or to such other address or telecopy number as a party may form time to time duly notify the other. (h) Those provisions which, because of the nature of the rights and obligations contained therein ought to survive termination of this Agreement shall so survive, including without limitation the following: Sections 4, 5, 8, 9, 11, 12, 13, 14, 15 and 16.

16. **Entire Agreement.** Customer acknowledges that these terms and conditions constitute the entire agreement between Recall and Customer with respect to the subject matter hereof and supersede any prior discussions, agreements and representations. Delivery of these terms and conditions constitutes either an offer or an acceptance by Recall. If these terms and conditions constitute an offer by Recall, Customer's acceptance shall be limited to these terms and conditions. If Customer has made an offer and if these terms contain different or additional terms or conditions than the terms or conditions of Customer's offer, then any acceptance by Recall is expressly made conditional on assent by Customer to the additional or different terms or conditions hereof and Customer shall be bound by these terms and conditions. If these terms are submitted in a modification or extension of a prior existing services agreement, these terms shall replace the terms and conditions of such prior agreement in its entirety. In the event of any conflict between this Agreement and any exhibit, the Agreement controls.

**GRAMM LEACH BLILEY ADDENDUM TO RECALL SDS SERVICES AGREEMENT**

This addendum ("Addendum") is incorporated into the Confidentiality section of the Recall SDS Terms and Conditions that constitute Section 8 of the Recall Services Agreement ("Services Agreement") between Recall Secure Destruction Services, Inc. ("Recall") and _GMAC Mortgage LLC_ ("Customer") to the extent that the Services Agreement requires Recall to provide services with respect to nonpublic personal information ("NPI"), as defined below. For purposes of this Addendum Recall is identified as "Recall" and Customer is identified as "Institution".

1. For purposes of this Addendum, "NPI" means nonpublic personal information about Institution's customers and consumers as those terms are defined in Title V or the Gramm-Leach-Bliley Act ("GLBA"), and to which Recall may have incidental access.

2. To facilitate Institution's ability to demonstrate compliance with the privacy obligations of the GLBA, Recall agrees to use reasonable efforts:

   a. not to disclose, without the consent of Institution, any NPI to any third party other than (i) to affiliates of Recall and in each such instance (A) only to the employees, independent contractors or subcontractors thereof who are under a written confidentiality obligation with respect thereto and (B) only to the extent required for such employees, independent contractors or subcontractors to perform Recall's obligations under the Services Agreement; (ii) to the affiliates, employees, independent contractors or subcontractors of Institution to the extent required for Recall or Institution to perform its obligations under the Services Agreement; or (iii) as may be required by law or legal process;

   b. not to use, without the consent of Institution, NPI other than to carry out the purposes for which such NPI was disclosed by or on behalf of Institution, except as is required by law or legal process; and

   c. to use appropriate measures designed to (i) ensure the security and confidentiality of the NPI, (ii) protect against anticipated threats or hazards to the security of the NPI, and (iii) protect against the unauthorized access to or use of the NPI.

**recall**

RECALL SECURE DESTRUCTION SERVICES AGREEMENT

Recall Initials: _____RA_____    Customer Initials: _____

## BUSINESS ASSOCIATE ADDENDUM TO RECALL SDS SERVICES AGREEMENT

This addendum ("Addendum") is incorporated into the Confidentiality section of the Recall SDS Terms and Conditions that constitute Section B of the Recall Services Agreement ("Services Agreement") between Recall Total Information Management, Inc. ("Recall") and _GMAC Mortgage LLC_ ("Customer") to the extent that the Services Agreement requires Recall to provide services with respect to Protected Health Information, as defined below. For purposes of this Addendum Recall is identified as "Business Associate" and Customer is identified as "Covered Entity".

1. For purposes of this Addendum, the following terms shall have the meanings ascribed to them below:
   (a) Electronic Media shall have the same meaning as the term "electronic media" as defined by 45 CFR 160.103.
   (b) Electronic Protected Health Care Information shall have the same meaning as the term "Electronic Protected Health Information" as defined by 45 CFR 160.103.
   (c) Individual shall have the same meaning as the term "individual" as defined by 45 C.F.R. 164.501 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).
   (d) Parties shall mean BUSINESS ASSOCIATE and COVERED ENTITY.
   (e) Privacy Rule shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR, Sections 160 and 164, subparts A and E.
   (f) Protected Health Information shall mean any health information as defined by 45 C.F.R. 164.501 that is provided and/or made available by or on behalf of COVERED ENTITY to BUSINESS ASSOCIATE.
   (g) Required by law shall have the same meaning as the term "required by law" as defined by 45 C.F.R. 164.501.
   (h) Secretary shall mean the Secretary of the Department of Health and Human Services and his/her designee.
   (i) Security Incident shall have the same meaning as the term "Security Incident" as defined in 45 CFR 164.304.
   (j) Security Rule shall mean the requirements regarding security for the protection of Electronic Protected Health Information as provided in 45CFR part 160 and part164, subparts A and C.
   (k) Transaction Rule shall mean the requirements regarding electronic transactions set forth in 45CFR parts 160 and 162.

2. Term. The effective date of this Addendum shall begin as of the Effective Date of the Service Agreement, and shall expire when all of the Health Information provided by COVERED ENTITY to BUSINESS ASSOCIATE is destroyed or returned to COVERED ENTITY pursuant to Section 6 below.

3. Obligations and Activities of Business Associate.
   a. Business Associate agrees to use reasonable care not to use or disclose Protected Health Information other than as permitted or required by the Addendum or as Required By Law.
   b. Business Associate agrees to use appropriate physical, technical and administrative safeguards to prevent use or disclosure of the Protected Health Information other than as provided for by this Addendum, and to protect the confidentiality, integrity and availability of Electronic Protected Health Information that it creates, receives, maintains or transmits on behalf of Customer.
   c. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate in violation of the requirements of this Addendum, and to report to Covered Entity any Security Incident of which it becomes aware (whether or not such Security Incident is successful) within two (2) days after the date on which Business Associate becomes aware of such Security Incident.
   d. Business Associate agrees to report to Covered Entity any use or disclosure of the Protected Health Information not provided for by this Addendum of which it becomes aware.
   e. Business Associate agrees to ensure that any agent, including a subcontractor, to whom it provides Protected Health Information received from, or created or received by Business Associate on behalf of Covered Entity agrees to substantially the same restrictions and conditions that apply through this Addendum to Business Associate with respect to such information.
   f. Business Associate agrees to make internal practices, books, and records, including policies and procedures and Protected Health Information, relating to the use and disclosure of Protected Health Information received from, or created or received by Business Associate on behalf of, Covered Entity available to the Secretary, in a time and manner designated by the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the Privacy Rule.
   g. Business Associate agrees to document such disclosures of Protected Health Information as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164.528.
   h. Business Associate agrees to provide to Covered Entity or an Individual, within five (5) business days after receipt of a written request therefore, information collected in accordance with Section 3(g) of this Addendum, to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164.528.
   i. Business Associate shall: (A) provide access to Protected Health Information in a Designated Record Set in order to meet the requirements under 45 CFR § 164.524 and (B) make any amendment(s) to Protected Health Information in a Designated Record Set pursuant to 45 CFR § 164.526.

4. Permitted Uses and Disclosures by Business Associate. Except as otherwise limited in this Agreement,
   a. Business Associate may use or disclose Protected Health Information to perform services for, or on behalf of, Covered Entity as specified in the Services Agreement, provided that such use or disclosure would not violate the Privacy Rule or the Security Rule if done by Covered Entity.
   b. Business Associate may use Protected Health Information for the proper management and administration of the Business Associate or to carry out the legal responsibilities of the Business Associate.
   c. Business Associate may disclose Protected Health Information for the proper management and administration of the Business Associate, provided that disclosures are Required By Law, or Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as Required By Law or for the purpose for which it was disclosed to the person, and the person notifies the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.
   d. Business Associate may use Protected Health Information to provide Data Aggregation services to Covered Entity as permitted by 42 CFR § 164.504(e)(2)(i)(B).
   e. Business Associate may use Protected Health Information to report violations of law to appropriate Federal and State authorities, consistent with § 164.502(j)(1).

5. Obligations of Covered Entity
   a. Covered Entity shall notify Business Associate of any limitation(s) in its notice of privacy practices of Covered Entity in accordance with 45 CFR § 164.520, to the extent that such limitation may affect Business Associate's use or disclosure of Protected Health Information.
   b. Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule if done by Covered Entity.

6. Termination
   a. Termination for Cause. Upon Covered Entity's knowledge of a material breach by Business Associate, Covered Entity shall either:
      1. Provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Addendum the Services Agreement if Business Associate does not cure the breach or end the violation within the time specified by Covered Entity;
      2. Immediately terminate this Addendum and the Services Agreement if Business Associate has breached a material term of this Addendum and cure is not possible; or
      3. If neither termination nor cure is feasible, Covered Entity shall report the violation to the Secretary.
   b. Effect of Termination.
      1. Except as provided in paragraph (2) of this subsection, upon termination of this Agreement, for any reason, Business Associate shall return or destroy all Protected Health Information received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity. This provision shall apply to Protected Health Information that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the Protected Health Information.
      2. In the event that Business Associate determines that destroying the Protected Health Information is infeasible, Business Associate shall provide to Covered Entity notification of the conditions that make destruction infeasible. Business Associate shall extend the protections of this Agreement to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such Protected Health Information.

7. Miscellaneous
   a. Regulatory References. A reference in this Agreement to a section in the Privacy Rule or the Security Rule means the section as in effect or as amended.
   b. Amendment. The Parties agree negotiate in good faith as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the Privacy Rule and the Security Rule. If the parties are unable to agree upon the terms of an amendment within thirty (30) days after Covered Entity's written request to Business Associate, either party may terminate this Agreement upon written notice to the other party.
   c. Interpretation. Any ambiguity in this Agreement shall be resolved to permit Covered Entity to comply with the Privacy Rule and the Security Rule.



# Schedule 1

| Order # | Date |
|---|---|
| SO-68331 | 2/25/2009 |

**One Recall Center
180 Technology Pkwy
Norcross GA 30092
United States**
www.recall.com

| Bill To |
|---|
| c/o Linda Platt
1100 Virginia Drive
Fort Washington PA 19034
United States |

| Sales Rep | Currency | PO # | Contract Reference | Payment Terms (Days) |
|---|---|---|---|---|
| Robinson, Ronnie | US Dollar | | CR-74820 | 30 |

| Item | Description | Qty | Unit Price | Service Freq |
|---|---|---|---|---|
| SDS Recurring Group_US | | 1 | | |
| | Secure Document Service - fees per bin | | | |
| US_64G | 64 Gal (240L) Bin | 1 | 40.00 | E4W |
| US_FIRST | First Service Fee | 1 | 40.00 | 1x1 |
| | The following line items are standard service fees: | | | |
| US_FUEL | Fuel Surcharge per trip - Rates are subject to adjustment based on variations in published fuel indices | 1 | 4.13 | E4W |
| US_SAF | Security Administration Fee per Invoice | 1 | 15.00 | 1xM |
| End of Group | | | | |

Fees: If Customer requests any services in addition to those set forth in Schedule 1 and Recall provides such services, Customer will pay for such services at Recall's then-current standard rates.

Customer Initials: [signature]