| | |
|---|---|
| Amish R. Doshi, Esq. | Sale Hearing: November 19, 2012 at 10:00 AM |
| Magnozzi & Kye, LLP | Sale Objection Date: October 29, 2012 |
| 23 Green Street, Suite 302 | **Cure/Assumption Notice** |
| Huntington, New York 11743 | **Objection Date: September 28, 2012** |
| Tel: (631) 923-2858 | |
| E-Mail: adoshi@magnozzikye.com | |

**Attorneys for Oracle America, Inc.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **RESIDENTIAL CAPITAL, LLC.,** *et al.*, | ) | **Case No. 12-12020 (MG)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

**ORACLE'S LIMITED OBJECTION AND RIGHTS RESERVATION REGARDING (I) DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(b), (f), AND (m), 365 AND 1123, AND FED R. BANKR. P. 2002, 6004, 6006, and 9014 FOR ORDERS: (A)(I) AUTHORIZING AND APPROVING SALE PROCEDURES, INCLUDING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (II) SCHEDULING BID DEADLINE AND SALE HEARING; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF AND (B)(I) AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING ASSET PURCHASE AGREEMENTS THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF (D.E. No. 61) ("Sale Motion") and (II) NOTICE OF DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNXPIRED LEASES OF PERSONAL PROPERTY AND UNEXPIRED LEASES OF NON-RESIDENTIAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO (D.E. No. 924) ("Assumption Notice")**

Oracle America, Inc., successor in interest to Oracle USA, Inc., Oracle Corporation, Peoplesoft USA, Inc., Sun Microsystems, Inc., Hyperion Solutions Corporation and Instantservice.com, Inc., ("Oracle"), a creditor and contract counter-party in the above-captioned jointly administered Chapter 11 cases, submits this Limited Objection and Rights Reservation (the "Limited Objection") to Residential Capital, LLC, et al.'s ("Debtors") Sale Motion (Docket

Entry No. 61) and related Assumption Notice (Docket Entry No. 924). In support of the Limited Objection, Oracle submits as follows:

I.    **INTRODUCTION**

1. On May 14, 2012, the Debtors filed Voluntary Petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Prior to the Petition Date, Oracle and one or more of the Debtors entered into numerous executory contracts, for various software license agreements, which govern the use of Oracle's licensed software, and various maintenance/support/training agreements, with all such executory contracts identifiable by specific names, dates and/or other identifying information (collectively, the "Oracle Contracts").

A.    **Assumption Notice**

3. In connection with the Sale Motion, the Debtors filed the Assumption Notice, listing those contracts that may be assumed and assigned pursuant to the Sale Motion.

4. Exhibit "2" to the Assumption Notice identifies: (a) three entries listing Instantservice.com, Inc. as the counter-party (See, Page 33 of Exhibit "2" to the Assumption Notice) ("Instantservice Contracts"), and (b) six additional entries listing "Oracle Corporation" as the counter-party (See, page 54 of Exhibit "2" to the Assumption Notice) ("Selected Oracle Contracts")[1], and each of the nine (9) entries with a stated $0.00 cure amount.

5. Oracle has several concerns with respect to the Instantservice Contracts and generally, the Oracle Contracts.

---

[1] Since the filing of the Assumption Notice, Debtors' counsel has informed the undersigned that the only contracts that the Debtors may assume and assign pursuant to the Sale Motion is the Instantservice Contracts and that the Selected Oracle Contracts were inadvertently included in the Assumption Notice and are **not** subject to possible assumption and assignment at this time. Based on those representations from the Debtors' counsel, this Limited Objection only addresses the issues relating to the Instantservice Contracts. To the extent that either the Selected Oracle Contracts or any other Oracle Contracts are later included for possible assumption/assignment, Oracle specifically reserves all rights with respect thereto. Oracle does note that the issues herein are equally applicable to the Selected Oracle Contracts, as well as any Oracle Contracts.

2

6.     As set forth above, the contractual relationship between Oracle and the Debtors is quite extensive and involves many agreements between the parties - not just the Instantservice Contracts.

7.     Given the depth of the contractual relationship and the scope of the assets sought to be sold pursuant to the Sale Motion, Oracle is attempting to determine with certainty which Oracle agreement(s) Debtors intend to assume through the Assumption Notice. Accordingly, at this time, for the reasons set forth below, Oracle is unable to assess properly the impact of the proposed assumption, and the accuracy of the resultant cure amount.

8.     First, based on the documents provided by the Debtors with respect to the listed Instantservice Contracts, it appears that the listed agreements may be expired and/or unsupported license agreements. However, there is another more recent renewed agreement in place between the Debtors and Oracle relating to the subject matter of the listed agreements[2]. Based on discussions with Debtors' counsel, Oracle believes that this renewed agreement should also be listed and included in the Assumption Notice.

9.     Second, as set forth above, there are many other agreements (other than the Instantservice Contracts) between the Debtors and Oracle, which are not listed in the Assignment Notice. The failure to address these other agreements, especially in light of the definition of the "Purchased Assets" in the Nationstar APA (discussed below), has left Oracle unable to address the Debtors' intentions regarding other aspects of the parties' contractual relationship.

10.    For the Debtors to assume and assign the Instantservice Contracts or any Oracle Contracts, they must specifically identify the correct license agreements and if applicable, the related support renewals. Until more clarity with respect to the contracts involved is provided,

---

[2] A copy of the renewed agreement has been provided to the Debtors' counsel. The parties' are attempting to determine whether this renewed agreement is in reality the agreement sought to be assumed/assigned pursuant to the Assumption Notice.

3

including the support status of those contracts, Oracle is unable to determine what associated sums Debtors may owe, which causes uncertainty regarding the correct cure. As such, Oracle cannot consent to the assumption and assignment of any Oracle Contracts, including the Instantservice Contracts.

11.    Assuming the Instantservice Contracts are the only agreements sought to be assumed and assigned, it is worth noting that, with respect thereto, a payment of $25,000.00 is due from the Debtors on November 1, 2012 pursuant to the renewed agreement. In addition, there are at least two (2) outstanding invoices in the total amount of $2,074.62 for July and August 2012 that remain unpaid with respect to the Instantservice Contracts. Copies of the two invoices are attached hereto as Exhibit "A". Until these amounts are paid, Oracle cannot consent to the assumption and assignment of the Instantservice Contracts.

12.    In addition, uncertainty remains regarding the ultimate purchaser's identity. Although Nationstar is the Stalking Horse, an auction is scheduled to be held after the Assumption Objection deadline, at which time a new Purchaser may emerge[3]. To the extent that a new Purchaser emerges, Oracle will need to evaluate the purchaser's acceptability as an assignee, and assess whether the prerequisites of 11 U.S.C. § 365(b) will be met.

13.    To that end, Oracle requests that Debtors, at a minimum, provide to Oracle the following information regarding the ultimate purchaser: (a) financial bona fides; (b) confirmation of its status as a non-competitor of Oracle's; and (c) confirmation of the purchaser's willingness to execute an Oracle Assignment Agreement, identifying succinctly and specifically, all of the executory contracts to be assigned. Without this information, Oracle is unable to determine the ultimate purchaser's creditworthiness or suitability to adequately perform.

---

[3] Oracle is aware that there is a separate deadline to object to assumption if a new bidder emerges. Through the filing of this Limited Opposition, Oracle is reserving its right to be heard on this point as well, to avoid filing two separate pleadings, if the ultimate purchaser is someone other than Nationstar.

4

14. In sum, the Debtors may not assume and assign the Oracle Contracts (including the Instantservice Contracts) without Oracle's consent. The Oracle Contracts involve the licensing of patented and/or copyrighted materials, and Oracle does not consent to their assumption and assignment at this time. To the extent the Debtors seek assumption and assignment of the Oracle Contracts, Debtors must identify with specificity and correctly the contracts at issue, pay the amounts due and owing in cure, bring support under the proposed assigned contracts current, confirm the purchaser's ability to perform and the parties must execute a standard Oracle Assignment Agreement.

B. **Sale Motion**

15. Section 2.1 to the Nationstar APA, defines the term "Purchased Assets"[4] and specifies the assets that will be transferred to the Purchaser, pursuant to the Sale Motion. Among other assets, the definition of "Purchased Assets" includes "Licensed Transferred IP" and "Transferred IT Assets" (as those terms are defined in the Nationstar APA). Similarly, Section 2.2 of the Nationstar APA states that "Intellectual Property Licenses" are included in the term Purchased Assets. Moreover, Schedule "K" to the Nationstar APA lists, among other things, various Sun Microsystems, Inc. servers and other computer equipment, which would also be transferred to the Purchaser.

16. Based on the definition of each of those terms and the fact that computer equipment, servers and other IT Assets are being transferred to the Purchaser, it would appear that, although not part of the Assumption Notice, various other Oracle Contracts, licenses and/or software could be implicated and/or transferred to the Purchaser. To the extent that the Purchased Assets includes any such Oracle Contracts, licenses or software, Oracle objects to any

---

[4] The definition section is set forth in Article I of the Nationstar APA. Capitalized terms used, but not otherwise defined herein, shall have the same meanings ascribed to them in the Nationstar APA or the Sale Motion, as appropriate.

5

such transfer. Oracle Contracts are executory contracts and cannot be sold or otherwise transferred, but rather must be assumed and assigned to the Purchaser. <u>See</u>, 11 U.S.C. § 365. To the extent that the Debtors anticipate "scrubbing" all Oracle software (not subject to the Assumption Notice) from the Purchased Assets prior to the transfer, then the Debtors must provide confirmation to Oracle of such "scrubbing".

17. In addition, the Nationstar APA also includes that the Purchaser and Debtors will enter into a Transaction Services Agreement ("TSA"), whereby post-closing, the Debtors would be allowed transitional use and access to such services as may be agreed by the Parties. To the extent that Oracle consents to the assumption and assignment of any Oracle Contracts and the TSA would include any use of IT Assets that has any Oracle software, Oracle objects to any transitional use by the Debtors post-closing because any such transitional use would grant both the Debtors and Purchaser rights to allow them simultaneous use of, and access to Oracle's software, which would be in violation of the Oracle Contracts.

18. Finally, in connection with the Sale Motion, the Debtors propose what appears to be a "blanket" early judicial determination that any anti-assignment provision in any assigned contract is invalid. The request is framed by the Debtors as follows:

> "To assist in the assumption, assignment and sale of the Assumed Contracts, the Sale Approval Order with respect to the Nationstar APA should provide that certain anti-assignment provisions shall not restrict, limit or prohibit the assumption, assignment and sale of the Assumed Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code." (Sale Motion, ¶91).

19. Oracle objects to this proposed finding. Oracle's executory contracts involve the licensing of non-exclusive, patented software, which are non-assignable in the absence of Oracle's consent, pursuant to applicable law.

6

20. If the Debtors contemplate an assignment pursuant to the Sale Motion of any Oracle Contracts, the Debtors must be precluded from obtaining this attempted unilateral nullification of the contract language, as to Oracle.

21. For all of these reasons and those set forth below, Oracle requests that the Court deny, at this time, any contemplated assumption and assignment of the Oracle Contracts (including the Instantservice Contracts) targeted by the Assumption Notice and objects to the Sale Motion to the extent that (a) any Oracle Contracts, licenses and/or software are included in the Purchased Assets; (b) it attempts unilateral nullification and blanket judicial determination that anti-assignment provisions are invalid; and (c) it attempts to grant "transitional" use to parties other than authorized parties/users under the respective Oracle Contracts.

## II. ARGUMENT

### A. The Debtors May Not Sell, Transfer or Assume And Assign The Oracle Contracts As They Appear To Pertain To One Or More Licenses Of Intellectual Property And Oracle Does Not Consent To The Proposed Sale, Transfer or Assignments At This Time.

22. Section 365(c)(1) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign an executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

23. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *In re Catapult Entertainment, Inc.,* 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999). *See, In re Patient Educ. Media* 210 B.R. 237, 243 (Bankr. S.D.N.Y 1997); *See, In re Adelphia Communications Corp, et al.,* 359 B.R. 65 (Bankr. S.D.N.Y. 2007)..

7

24. Oracle's license agreements involve the licensing of non-exclusive, patented software. At this time, Oracle does not consent to any proposed assignment or transfer of the Oracle Contracts.

25. As set forth above, the Instantservice Contracts is insufficiently described and does not include the renewed agreements. Further, the failure to address the remaining Oracle Contracts, in light of the potential transfer of Oracle Contracts, licenses or software through the transfer, to the Purchaser, of servers, computers and other IT Assets raises concern regarding the possible insufficiency of the Assumption Notice.

26. Accordingly, at this time, any potential transfer, or assumption and assignment should be denied with respect to any Oracle Contracts targeted in the Assumption Notice or by the Sale Motion, whether on a permanent basis or "transitional" basis.

**B. The Proposed Transfer or Assumption And Assignment Should Be Denied With Respect To The Oracle Contracts Because The Sale Motion Fails To Confirm the Ultimate Buyer/Potential Assignee's Identity.**

27. Section 365(b) of the Bankruptcy Code sets forth specific prerequisites that must be met before a trustee/debtor can assume and assign an executory contract, including (a) curing (or providing adequate assurance of a prompt cure of) any defaults under the subject contracts, and (b) providing adequate assurance of future performance under the contract. Absent the foregoing, the executory contracts may not be assumed, or assumed and assigned.

28. Although Nationstar is the Stalking Horse, the identity of the ultimate purchaser/assignee remains unknown because as of the date of Assumption Objection Deadline, an Auction is yet to be conducted. Therefore, once the ultimate purchaser is known, Oracle will need to evaluate the eventual purchaser's acceptability as an assignee and whether the prerequisites of section 365(b) will be met, if it is someone other than Nationstar.

8

29. To the extent that the winning bidder is someone other than Nationstar[5], Oracle cannot determine whether: (a) the ultimate purchaser/assignee is capable of providing adequate assurance of future performance; (b) the proposed assignee is a competitor of Oracle's; and (c) the ultimate purchaser (including Nationstar) is willing to enter into a standard form of Oracle Assignment Agreement, reflecting the terms, post-assignment, of the parties' relationship.

30. Until at least the information identified above is provided, Oracle is unable to determine whether Debtors have complied, or will comply, with the protections of section 365(b)(1)(C), so Oracle reserves all rights to be heard at the Sale Hearing on adequate assurance grounds.

**C. The Proposed Transfer Or Assumption And Assignments Should Be Denied With Respect to the Oracle Contracts Because The Cure Notice Fails to Provide for Payment of Appropriate Amounts Required In Cure.**

31. In addition, all arrearages under the Oracle Contracts must be tendered as Oracle will not consent to the assignment of a contract in payment default.

32. At this time Oracle does not have adequate assurance that the Debtors intend to pay any amounts owed. At a minimum with respect to the Instantservice Contracts, prior to the Sale Hearing, a payment of $25,000.00 will become due on November 1, 2012 and at least two (2) outstanding invoices in the total amount of $2,074.62 for July and August 2012 remain unpaid.

33. Absent payment of the appropriate amounts to Oracle, the Oracle Contracts may neither be assumed, nor assumed and assigned. For this additional reason, Oracle withholds its consent to any assignment of the Oracle Contracts identified in the Assumption Notice. *See* 11 U.S.C. § 365(b)(1)(A).

---

[5] As set forth above, Oracle is aware that there is a separate deadline to object to assumption if a new bidder emerges. However, through this filing, Oracle is reserving its right to be heard on this point as well, to avoid filing two separate pleadings, if the ultimate purchaser is someone other than Nationstar.

34. To the extent that Oracle Contracts, other than Instantservice Contracts are included in the Purchased Assets, Oracle reserves its right to object further to the cure amount until more certainty on the contracts at issue is provided.

### D. There Can Be No Transitional Use of Oracle Software by Unauthorized Users

35. Section 6.20 of the Nationstar APA contemplates that the Debtors and Purchaser will enter into a Transition Services Agreement, whereby post-closing, the Debtors would be allowed transitional use and access to such services as may be agreed by the Parties. To the extent that such services would include the use of Oracle software, Oracle objects to such "transitional" use.

36. Specifically, Oracle objects to the TSA or any provision in the Nationstar APA that: (a) contemplates ongoing use of Oracle's software by any entity other than the authorized entities that are parties to the Oracle agreements; or (b) grants both the Debtors and Nationstar (or the ultimate purchaser) rights to allow them simultaneous use of, and access to, Oracle's software.

37. This "shared" use or use by unauthorized parties, if contemplated, may exceed the scope of the Oracle licenses' permitted users, would perhaps result in an unauthorized "splitting" of the licenses between multiple parties and would be in violation of the existing Oracle Contracts.

38. As such, any use of any Oracle software, even if transitional, by any entity other than the authorized users must be denied by this Court.

### III. CONCLUSION

39. In conclusion, the Debtors are prohibited from assuming and assigning the Oracle Contracts targeted by the Assumption Notice in the absence of obtaining Oracle's consent

pursuant to section 365(c) and applicable case law. The Oracle Contracts (including the Instantservice Contracts), involve the licensing of patented and/or copyrighted materials, and Oracle does not consent to their assumption and assignment at this time. To the extent the Debtors seek assumption and assignment of the Oracle Contracts, Debtors must identify with specificity and correctly the contracts at issue, pay the amounts due and owing in cure, bring support under the proposed assigned contracts current, confirm the ultimate purchaser's ability to perform and the parties must execute a standard Oracle Assignment Agreement.

40. For all the reasons set forth above, Oracle respectfully requests that the Court deny, at this time, Debtors' Assumption Notice and the Sale Motion, to the extent they include any effort to assume, assign, transfer or sale of the Oracle Contracts, including Instantservice Contracts, or any of its licensed software in the absence of obtaining Oracle's prior consent, whether on a "transitional" or permanent basis.

Dated: September 28, 2011
      Huntington, New York

**Respectfully Submitted,**

By:     /s/ Amish R. Doshi
      Amish R. Doshi, Esq.
*Of Counsel*
**Magnozzi & Kye, LLP**
23 Green Street, Suite 302
Huntington, New York 11743
Tel: (631) 923-2858
E-Mail:   adoshi@magnozzikye.com

Deborah Miller (CSB #95527)
Michael Czulada (BBO #676858)
**Oracle America, Inc.**
500 Oracle Parkway
Redwood City, California 94065
Telephone: (650) 506-5200

**Attorneys for Oracle America, Inc.**