# **EXHIBIT A**



# LICENSE AGREEMENT

LICENSE AGREEMENT, dated the 29th day of February, 1996, by and between Dun & Bradstreet Software Services, Inc. ("D&B"), with offices at 66 Perimeter Center East, Atlanta, Georgia 30346 and  GMAC Mortgage Corporation  ("Customer") with offices at 8360 Old York Road, Elkins, Park, Pennsylvania 19117-1590.   For each Program the applicable Supplement shall specify: (i) the Hardware (including the central processing unit(s) (CPU), (ii) the Operating System Software, (iii) the total fees, (iv) the number of permitted users, (v) the Site, and (vi) the Geographic Territory, if any.

1. LICENSE.
1.1. For each Program, and related Documentation, listed on a Supplement, D&B grants to Customer a perpetual, non-exclusive, nontransferable license, to Use, and allow its Affiliates (for so long as they are Affiliates) to Use, the Program solely for their internal administrative purposes on the Hardware and Operating System Software at the Site in the Geographic Territory subject to restrictions on the applicable Supplement. In this Agreement (a) "Documentation" means user guides, operating manuals, and specifications, whether in print or machine readable media, in effect as of the date of shipment, (b) "Use" means to load, execute, employ, utilize, store or display the Program, (c) "Affiliates" means any entity controlling, controlled by, or under common control with, Customer, (d) "Server" means one or more interconnected computer hardware systems configured to run the Program(s), and (e) "Geographic Territory" (if not specified on the applicable Supplement) means the country in which this Agreement has been executed. Customer shall ensure that its Affiliates comply with the terms of this Agreement and will be liable for any breach by any Affiliate. Customer may delegate authority to execute Supplements to any Affiliate.

1.2. The Program may be transferred temporarily to a backup computer if the Hardware is inoperative. The Program may also be transferred to computer hardware or used with an operating system other than the specified Hardware or Operating System Software, subject to D&B's transfer policies and fees then in effect. Customer may make and Use additional copies of Programs and machine readable Documentation for the number of Users specified on the applicable Supplement, if any. In addition, Customer may make a reasonable number of copies of the Program for testing, disaster recovery, inactive back-up, or archival purposes. The Program or Documentation may not be copied or Used other than as permitted by this Agreement.

1.3. As soon as practicable after signing the applicable Supplement, D&B shall deliver one copy per Server of the Program and Documentation to the Site.

2. SUPPORT AND MAINTENANCE.
2.1. Support and maintenance entitle Customer to have access to D&B's electronic support facilities, to telephone D&B's Helpline, to receive tax and regulatory updates and error correction releases and/or performance enhancement releases of the Programs not separately marketed by D&B. On the anniversary of each Supplement, Customer may purchase support and maintenance so long as D&B makes support and maintenance for the Programs licensed on that Supplement available to its customers in general, renewable on each anniversary of the Supplement. The license granted to Customer under Section 1 shall extend to each update, correction, and enhancement release received from D&B.

2.2. Upon receipt from Customer of notice of a nonconformance between the Program and the Documentation, D&B shall use reasonable efforts to correct or circumvent the problem. Any corrections to the Program will be made only to the most current generally available release of the Program. After the introduction of a new generally available release of a Program, D&B will support the then current and the previously released version of such Program.

2.3. D&B shall have no obligation to support or maintain the Program for Use on any computer system other than the Hardware and Operating System Software or if Customer modifies the Program other than as permitted by this Agreement. Only those versions of different cooperating Programs specified by D&B will execute correctly together on a single CPU or in a network. D&B shall use commercially reasonable efforts to modify any version of the Program to run with new versions or releases of the Operating System Software or Hardware. If Customer purchases support and maintenance from D&B for any Programs for Use on specific hardware or in a specific network, Customer must purchase support and maintenance from D&B for all functionally related Programs licensed from D&B for Use on such hardware or network.

2.4. D&B shall deliver to D&B's then current escrow agent one copy of any D&B source code for the Program not delivered to Customer. In the event D&B ceases to maintain the Program(s) for any reason whatsoever, Customer shall have a right to obtain access to a copy of such source code provided Customer is current on maintenance and is in compliance with its agreements with D&B.

3. CONFIDENTIALITY; PROPRIETARY RIGHTS.
3.1. Each party shall hold Confidential Information of the other in confidence. "Confidential Information" includes without limitation the terms of this Agreement, the Program(s) and all Documentation, and all methods or concepts utilized therein, plus all information identified by the disclosing party as proprietary or confidential. All Confidential Information shall remain the sole property of the disclosing party. Upon execution of a non-disclosure agreement satisfactory to D&B, third parties may have access to Confidential Information solely for the purpose of providing services to Customer. Information will not be considered to be Confidential Information if (i) available to the public other than by a breach of this Agreement; (ii) rightfully received from a third party not in breach of any obligation of confidentiality; (iii) independently developed by a party without access to Confidential Information; (iv) previously known to the recipient at the time of disclosure; (v) produced in compliance with applicable law or a court order, provided the other party is given notice and opportunity to intervene; or (vi) it does not constitute a trade secret and more than five (5) years have elapsed from the date of disclosure.

3.2. All Programs and Documentation, and any modifications or copies thereof, are proprietary and protected by copyright and/or trade secret law and no ownership rights are transferred by this Agreement. All proprietary notices incorporated in, marked on, or affixed to a Program or other Confidential Information by D&B or its suppliers shall be duplicated by Customer on all copies of all or any part of the Program and shall not be altered, removed or obliterated. Customer shall not reverse reengineer, reverse assemble or reverse compile any Program or part thereof. Customer may modify the Programs to the extent and in the manner described in the Documentation for the Programs.

4. WARRANTY.
4.1. D&B warrants that each Program licensed to Customer will operate substantially in conformance with the Documentation for such Program for a period of one year from the date of shipment of such Program to Customer. D&B warrants that the media on which the Program is delivered to be free of defects in material and workmanship for a period of ninety (90) days following shipment.

4.2. Customer's sole and exclusive remedy for breach of either of the foregoing warranties shall be either replacement of the defective materials or a refund of the license fee paid for the Program(s) licensed on a Supplement. Customer must notify D&B within the warranty period and provide a reasonable opportunity to D&B to cure any breach.

4.3. NO OTHER WARRANTY, EXPRESS OR IMPLIED, IS MADE WITH RESPECT TO THE PROGRAM, DOCUMENTATION OR SERVICES TO BE SUPPLIED BY D&B, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

5. INFRINGEMENT INDEMNITY.
D&B shall indemnify, defend, or at its option settle, any claim or suit against Customer on the basis of infringement of any patent, trademark, copyright or trade secret by the Program or Use thereof and D&B shall pay any final judgment entered against Customer in any such proceeding; provided D&B has sole control of such defense and/or settlement and Customer promptly notifies D&B and gives D&B all related information known to Customer. If any part of the Program is, or may become, the subject of any such proceeding D&B may and in the event of any adjudication that any part of a Program does infringe or if the licensing or Use of the Program or any part thereof is enjoined D&B shall at its expense and option do one of the following things: procure for Customer the right to Use the Program; replace the Program with other suitable programs; modify the Program to make it non-infringing; or if none of the foregoing are commercially reasonable, refund the

aggregate payments paid by Customer for the Program the affected part thereof, less reasonable amortization for Use. D&B shall have no obligations under this Section 5 with respect to any claim to the extent it is based upon (i) the Use of any version of the Program other than a current, unaltered release of the Program if such infringement would have been avoided by the Use of a current, unaltered release; (ii) the combination, operation, or Use of the Program with software or hardware other than as specified by D&B, if such infringement would have been avoided in the absence of such combination, operation or Use; or (iii) the Use of the Program on or in connection with a computer system other than the Hardware and the Operating System Software.

6. LIMITATION OF LIABILITY.
Except (i) as provided in Section 5, (ii) in the event of death or personal injury, and (iii) in the event of damage to tangible personal property, the total liability of D&B, including but not limited to liability arising out of, resulting from, or in any way related to, contract, tort, breach of warranty, infringement or otherwise, shall not in any event exceed the license fees paid by Customer with respect to the affected Program. Neither D&B nor its licensors shall be liable for loss of profits, or indirect, special, incidental, or consequential damages.

7. GENERAL.
7.1. Neither this Agreement nor any license hereunder may be assigned by Customer (whether by operation of law or otherwise) without D&B's prior written consent.

7.2. D&B may from time to time request Customer to provide a certification that actual Use of the Program is in compliance with the terms of this Agreement and any Supplement. D&B may also perform an audit to determine compliance with the terms of this Agreement upon reasonable notice. If the number of copies or users is found to be greater than that contracted for or the computer system on which the Program is in use differs from the Hardware and Operating System Software specified on any Supplement, D&B may charge Customer the applicable current list prices therefor. If the resulting adjustments to the license fees owing by Customer are greater than 5% of the license fees previously paid by Customer to D&B, D&B may also charge Customer the reasonable expenses associated with such audit.

7.3. All fees shall be paid within thirty (30) days after the invoice date. Customer shall pay all applicable shipping charges and sales, use, personal property or similar taxes, other than D&B's income and corporate franchise taxes. Customer shall reimburse D&B for all reasonable travel and living expenses incurred by D&B in rendering services. After notice, past due amounts owing from Customer shall bear interest at the rate of 1% per month. Customer shall reimburse D&B for all reasonable costs incurred (including reasonable attorneys' fees) in collecting past due amounts owed by Customer.

7.4. On termination of any license granted pursuant to this Agreement, Customer shall cease Using the Program and Documentation and Customer shall certify to D&B in writing that all copies (in any form or media) of the Program and Documentation, whether or not modified or incorporated into other materials, have been destroyed or returned to D&B. Termination of this Agreement or any license shall not relieve Customer's obligation to pay all fees incurred prior to such termination and shall not limit either party from pursuing any other remedies available to it. Each party's obligations under Section 3 hereof shall survive termination of any license or this Agreement.

7.5. Each party's obligations under Section 3 hereof are of a unique character and each agrees that any breach may result in irreparable and continuing damage to the other party for which there will be no adequate remedy in damages. In the event of such a breach, the damaged party will be entitled to injunctive relief and/or a decree for specific performance and such further relief as may be proper.

7.6. This Agreement is subject to any governmental laws, orders or other restrictions on the export of Programs and related information and Documentation that may be imposed by governmental authorities. Customer shall comply with any governmental laws, orders or other restrictions on the export and re-export of Programs (including technical data and any related information and Documentation) which may be imposed from time to time by the governments of the United States and any country to which any Program is shipped.

7.7. If either party materially breaches any of its obligations hereunder and fails to remedy such breach (if such breach can be remedied) within thirty (30) days of written notice of such breach, the other party may terminate any license or this Agreement. All notices relating to termination or default under this Agreement shall be in writing and delivered by overnight delivery service or certified mail return receipt requested, to the address of such party specified above (addressed in the case of D&B to the attention of its Legal Department) or specified by such party in accordance with this Section.

7.8. All Programs are provided with RESTRICTED RIGHTS for U.S. Government Users. Use, duplication, or disclosure by the Government is subject to restrictions set forth in subparagraphs (c)(1) and (2) of the Commercial Computer Software Restricted Rights clause at FAAR 52.227-19 or paragraphs (b)(3)(ii) and (c)(1)(ii) of the Rights in Technical Data and Computer Software clause at DFARS 252.227-7013, as applicable. Unpublished rights are reserved under the copyright laws of the United States. Microsoft Corporation, Microsoft Way, Redmond, WA 98052-6399; Sybase, Inc., 6475 Christie Avenue, Emeryville, CA 94608; Farallon Computing, Inc., 2470 Mariner Square Loop Road, Alameda, CA 94501-1010; Cognos Corporation, 67 South Bedford Street, Suite 100E, Burlington, MA 01803; Powersoft Corporation, 555 Virginia Road, Concord, MA 01742; Electronic Book Technologies, Inc., 1 Richmond Square, Providence, RI 02906; Industrial Computer Corporation, 5871 Glenridge Drive, Suite 300, Atlanta, GA 30328; and Berclain Group, Inc., 3175 chemin des Quatre-Bourgeois, Suite 100, Sainte-Foy, PQ G1W 2K7.

7.9. This Agreement shall be governed by and construed under the laws of the State of Georgia excluding its conflict of laws rules.

7.10. Any action of any kind arising out of or in any way connected with this Agreement must be commenced within one year of the date upon which the cause of action accrued (or, if one year is shorter than the minimum period allowed by law, then the minimum period allowed by law).

7.11. This Agreement, together with the exhibits and addenda hereto, and Supplements issued hereunder, constitutes the entire agreement of the parties and supersedes all previous and contemporaneous communications, representations, understandings or agreements related to the subject matter hereof. This Agreement may be modified only in a writing signed by both parties. Customer may issue a purchase order in lieu of a Supplement, if confirmed by a D&B invoice or other D&B confirming document. Purchase orders shall be binding upon D&B only with respect to items required to be set forth on a Supplement. Pre-printed terms and conditions on or attached to any such purchase order shall be of no force or effect.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date set forth above.

| GMAC MORTGAGE CORPORATION | DUN & BRADSTREET SOFTWARE |
| CUSTOMER | SERVICES, INC. |
| By: _____ | By: _____ |
| Name Printed: A. Michael O'Brien | Name Printed: Gary Luoma, Jr. |
| Title: President | Title: Vice President-Finance |
| Date: 2/29/96 | Date: April 12, 1996 |

96USLICENSE 1/22/96