GIBBONS P.C.
Jeffrey S. Berkowitz
Christopher A. Albanese
One Penn Plaza, 37th Floor
New York, New York 10119-3701
Telephone: (212) 613-2000
Facsimile: (212) 290-2018

*Counsel for Wells Fargo Bank, N.A with respect to its servicing and sub-servicing agreements with the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF WELLS FARGO BANK, N.A. TO DEBTORS' MOTION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND CURE AMOUNTS RELATED THERETO**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Wells Fargo Bank, N.A. ("Wells Fargo"), as counterparty to numerous mortgage loan servicing and related executory contracts ("Wells Fargo Servicing Agreements") between one or more Debtors and Wells Fargo and its predecessors and affiliates,[1] hereby submits this objection to (1) the Debtors' *Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (a)(i) Authorizing and Approving Sale Procedures, Including Break-up Fee and Expense Reimbursement; (ii) Scheduling Bid Deadline and Sale Hearing; (iii) Approving Form and Manner of Notice Thereof; and (iv) Granting*

---

[1] Predecessors and affiliates include, but are not limited to, Wells Fargo Financial Retail Credit, Inc., Wachovia Bank, N.A., First Union National Bank, and Norwest Mortgage, Inc.

#1852778 v1
111369-81272

*Related Relief and (b)(i) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (ii) Authorizing and Approving Asset Purchase Agreements Thereto; (iii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (iv) Granting Related Relief* (the "Motion") [Docket No. 61]; (2) the *Notice of (i) Debtors' Intent To Assume and Assign Certain Executory Contracts, Unexpired Leases Of Personal Property, and Unexpired Leases Of Nonresidential Real Property and (ii) Cure Amounts Related Thereto* [Docket No. 924] (the "Original Notice"); and (3) the *First Amended Notice of (i) Debtors' Intent To Assume and Assign Certain Executory Contracts, Unexpired Leases Of Personal Property, and Unexpired Leases Of Nonresidential Real Property and (ii) Cure Amounts Related Thereto* [Docket No. 1484] (the "Amended Notice" and together with the Original Notice and Motion, the "Motion") and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.     By the Motion, Debtors seek, among other things, the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assumed Contracts"[2]) in connection with the sale of the Purchased Assets pursuant to the Nationstar APA. In connection with the Motion, Debtors filed the Original Notice which contained over 200 pages of schedules listing Assumed Contracts (the "Original Schedules") as well as proposed Cure Amounts for each of the Assumed Contracts. Of the Assumed Contracts on the Original Schedules, at least 67 involved Wells Fargo. The Original Schedules, however, contained insufficient information to identify each listed agreement and, therefore, Wells Fargo has been unable to identify the Wells Fargo Assumed Contracts and accurately calculate Cure Amounts related thereto.

---

[2] Capitalized terms not herein defined shall be ascribed their meaning from the Motion, Notice, and Amended Notice.

2.      Subsequently, the Debtors filed the Amended Notice on September 18, 2012. The Amended Notice contained amended schedules (the "Amended Schedules") substantially similar to the Original Schedules. Like the Original Schedules, the Amended Schedules contained insufficient information to identify each listed agreement and, therefore, Wells Fargo was unable to identify and accurately calculate Cure Amounts for the Wells Fargo Assumed Contracts. Critically, however, the number of Assumed Contacts involving Wells Fargo increased from 67 to over 675, leaving Wells Fargo with less than ten days to calculate Cure Amounts and evaluate whether and how the agreements can be assigned, while trying to do so without basic information needed to locate, identify, and review the over 600 new contracts in question. *See* Exhibit A.[3] This is patently unfair and, more importantly, does not comport with due process.

## BACKGROUND

3.      The Motion evidences the Debtors' intent to assume and assign certain agreements whereby Wells Fargo acts as primary servicer of mortgage loans and home equity lines of credit (HELOCs) on behalf of certain Debtors and securitization trusts. As of the date of this Limited Objection, Wells Fargo acts as servicer for approximately 20,993 loans on behalf of the Debtors under 65 different investor categories pursuant to approximately 18 mortgage loan servicing agreements and side agreements. The aggregate unpaid principal balance of the loans is approximately $3,431,482,893.85 (the "Wells Fargo Servicing Agreements").

4.      Pursuant to the Wells Fargo Servicing Agreements, Wells Fargo is responsible for remitting a fixed amount each month to the Debtors and/or other designated parties under the

---

[3] The Original and Amended Schedules also include agreements involving Wells Fargo as Corporate Trustee and Document Custodian. Wells Fargo Corporate Trust Services is represented by its own counsel and will address any trustee, master servicer, and document custodian issues in its own filing.

agreements.[4]  In general, the remittance is comprised of payments by borrowers pursuant to residential mortgage loans and HELOCs.  In the event the funds collected by Wells Fargo are insufficient to fund the remittance amounts, Wells Fargo must advance its own funds to cover the shortfall ("P&I Advances") unless certain conditions apply.  Similarly, if a borrower defaults, Wells Fargo is required to advance funds to manage and dispose of the property ("Servicing Advances").  Wells Fargo can recover its P&I Advances from late and subsequent payments by the borrower or seek to recover from the counterparty.  Servicing Advances are recovered from the Debtors following the foreclosure and sale of the property by the Debtors.  In practice, at any given time Wells Fargo may have tens to hundreds of millions of dollars in P&I Advances and Servicing Advances claims against a counterparty, including the Debtors.  The amount of outstanding P&I Advances and Servicing Advances may change daily.

## **LIMITED OBJECTION**

5.      In general, the Original and Amended Schedules provide limited information about the Assumed Contracts, including information labeled Contract Name, Contract Number, Investor No./GSE Name, and Supplier - Common Supplier - Counterparty culled, presumably, from the Debtors' records.  Unfortunately, this information lacks sufficient detail and does not correlate with Wells Fargo's records.  Moreover, Wells Fargo, despite its best efforts, has been unable to correlate the information in the Original and Amended Schedules with Wells Fargo's files and records.

---

[4] In addition, under certain servicing agreements, the contracting parties may have other rights and obligations, including indemnification and repurchase obligations.  To the extent the Wells Fargo Servicing Agreements are executory, Wells Fargo objects to any assumption and assignment that is not *cum onere*. *See In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("[t]he trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits").

6.     In addition, the Amended Schedules contain the Debtors' proposed Cure Amount for each Assumed Contract. The Cure Amount for each Wells Fargo Servicing Agreement is currently listed as $0.00 or is not listed at all. Based on the course of dealing between Wells Fargo and the Debtors, as well as the nature of the Assumed Contracts, the Cure Amount may change on a daily basis, and it is almost impossible for the Wells Fargo Servicing Agreements to have a $0.00 Cure Amount.

7.     Finally, the Amended Notice was served just 10 days before the Objection Date. This time period is insufficient for Wells Fargo to attempt to identify the additional 600 Assumed Contracts (even if Wells Fargo was provided sufficient information), calculate the related Cure Amounts, and determine whether Wells Fargo has an objection to the assignment of the contracts.

8.     Wells Fargo therefore objects (a) to the form and content of the Amended Schedules (which do not contain information sufficient to put Wells Fargo on notice of what agreements are to be assumed and assigned) and (b) to all Cure Amounts.[5] Wells Fargo is willing to meet and confer in good faith with the Debtors. To that end, Wells Fargo has used its best efforts to produce the attached Exhibit B which identifies all known Wells Fargo Servicing Agreements along with estimated Cure Amounts as of August 31, 2012, as a basis for discussion. Wells Fargo reserves its rights to modify, amend or supplement this list as new information becomes known.

---

[5] Wells Fargo reserves its right to object to the Sale Transactions on or before the designated objection date of October 29, 2012.

#1852778 v1
111369-81272

**DISCUSSION**

9. Upon receiving the Original Notice, Wells Fargo's staff began reviewing the Original Schedules. The information provided on the Original Schedules, however, was insufficient to confirm which Wells Fargo Servicing Agreements are proposed Assumed Contracts, and whether the proposed Cure Amounts were accurate.[6] Of the 13 Wells Fargo Servicing Agreements Wells Fargo was able to identify on the Original Schedules, two involve an agreement that Wells Fargo and the Debtors are in the process of consensually terminating.[7]

10. In an effort to avoid filing this Objection, Wells Fargo's counsel sent a letter (attached hereto as Exhibit C) to Debtors' counsel on September 13, 2012, requesting additional information sufficient to provide Wells Fargo with adequate notice of what Wells Fargo Servicing Agreements it seeks to assume and assign. Wells Fargo has not received a response to this letter.

11. On September 18, 2012, the Debtors filed the Amended Notice which increased the number of Wells Fargo Assumed Contracts tenfold, but provided no additional information that would allow Wells Fargo to identify the contracts, leaving Wells Fargo 10 days to evaluate and respond to the Amended Notice.

---

[6] To the extent an Assumed Contract is a valid and active agreement between Wells Fargo and the Debtors, Wells Fargo does not believe the proposed Cure Amounts are realistic. At any one time Wells Fargo may be owed millions of dollars as servicer.

[7] The agreement in question is Whole Loan Subservicing Agreement, Contract No. 359, Investor No. GSE Name 60036 and 70036. Wells Fargo believes this agreement, in which a Debtor acts as servicer for loans owned by Wells Fargo, was terminated pre-petition and is therefore not subject to assignment. Wells Fargo and the Debtors have reached an agreement confirming the modification of the automatic stay, to the extent that the stay may be applicable, to allow for the transfer of servicing duties under this agreement on or after November 1, 2012. The parties are in the process of documenting this agreement through a stipulation that will be submitted to the Court for approval. In the absence of a signed stipulation, Wells Fargo objects to the inclusion of this agreement in any sale.

12. To comport with due process, "a party seeking relief must provide notice reasonably calculated, under all circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus.)*, 445 B.R. 243, 254 (Bankr. S.D.N.Y. 2011) (citations omitted). The notice must convey the required information and provide appropriate notice. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Failure to provide adequate notice of a hearing in the context of a section 363 sale does not bind parties in interest that did not receive appropriate notice of the sale. *Grumman*, 445 B.R. at 254. Adequate notice is a fact-specific inquiry and depends on the facts and circumstance of each case. *DePippo v. Kmart Corp.*, 335 B.R. 290, 295 (S.D.N.Y. 2005).

13. Wells Fargo is listed on the Amended Schedules as a counterparty to more than 675 agreements, including at least 67 Wells Fargo Servicing Agreements with the Debtors. Most of these agreements have variations and impose different obligations on the part of Wells Fargo. In addition, servicing agreements are often subject to amendments, side agreements, reconstitution agreements, and waivers, whereby certain loans are "transferred" from one agreement to another. For example, a particular loan may be serviced by Wells Fargo under a specific Servicing Agreement, but, at the request of a counterparty who sells that loan to a securitization trust, the loan may later be serviced under a completely different agreement or customer guide. In addition, a transfer can result in modifications of the representations and warranties with respect to the particular loan. Servicing Agreements may also contain different requirements and restrictions, including but not limited to repurchase obligations, indemnification provisions, assignment restrictions, state licensing issues, custodial account requirements, and reserve requirements. As a result, Wells Fargo needs to know the precise

7

agreements being assumed and assigned to calculate Cure Amounts, as well as how the Debtors intend to: (1) cure defaults; (2) compensate for pecuniary loss; and (3) provide adequate assurance of future performance as required by section 365(b) of the Bankruptcy Code.

14.   Here, Debtors have not given Wells Fargo adequate notice of the Assumed Contracts so that Wells Fargo can identify the agreements. The information provided in the Original and Amended Schedules is insufficient for Wells Fargo to determine what Wells Fargo Servicing Agreements could be impacted under the Nationstar APA and accurately calculate the correct Cure Amount. Without additional information from the Debtors that permits Wells Fargo to identify all Wells Fargo Servicing Agreements that are part of the Assumed Contracts, Wells Fargo cannot be said to be on notice of the assumption and assignment of the Wells Fargo Servicing Agreements.

15.   Under these circumstances, it cannot be said that Wells Fargo has received adequate notice comporting with due process.

16.   Wells Fargo reserves its rights to supplement and modify this objection as additional facts become known.

WHEREFORE, for the foregoing reasons, Wells Fargo respectfully requests that the Court (i) require the Debtors to identify all of the Wells Fargo Servicing Agreements it seeks to assume and assign by a date certain, (ii) condition the assumption and assignment of the Wells Fargo Servicing Agreements on the payment of cure amounts that may be agreed upon by the Parties or determined by the Court, and (iii) grant such other and further relief as this Court may deem equitable and proper.

Dated: September 28, 2012
New York, New York

        Respectfully submitted,

        **GIBBONS P.C.**

        /s/ Jeffrey S. Berkowitz
        By: Jeffrey S. Berkowitz
        Christopher A. Albanese
        One Penn Plaza, 37th Floor
        New York, New York 10119-3701
        Telephone: (212) 613-2000
        Facsimile: (212) 290-2018

        *Counsel for Wells Fargo Bank, N.A with respect to its servicing and sub-servicing agreements with the Debtors*