Hearing Date: November 19, 2012 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: September 28, 2012 at 5:00 p.m. (Prevailing Eastern Time)

Alan Marder Esq. (AM-0114)
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, NY 11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6707
Email: amarder@msek.com

Michael S. Greger, Esq. (CA Bar No. 156525)
Ivan M. Gold  (CA Bar No. 121486)
Richard M. Dinets, Esq. (CA Bar No. 265197)
ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
1900 Main Street, Fifth Floor
Irvine, California  92614-7321
Telephone:  (949) 553-1313
Facsimile:  (949) 553-8354
Email:  mgreger@allenmatkins.com
Email:  igold@allenmatkins.com
Email:  rdinets@allenmatkins.com

Attorneys for Digital Lewisville, LLC,
a Delaware limited liability company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.* | Chapter 11 |
| Debtors. | Jointly Administered |

**OBJECTION TO: (I) DEBTORS' MOTION FOR ORDERS: (A)(I) AUTHORIZING AND APPROVING SALE PROCEDURES, INCLUDING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (II) SCHEDULING BID DEADLINE AND SALE HEARING; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF AND (B)(I) AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING ASSET PURCHASE AGREEMENTS THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF [DOCKET NO. 61]; AND (II) NOTICE OF (I) DEBTOR'S INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO [DOCKET NO. 924]**

965556.01/OC

In the above-referenced motion (the "Motion") and notice of intent to assume ("Assumption Notice"),[1] the Debtors request, among other things, that the Court approve the assumption and assignment of certain unexpired leases of nonresidential real property. Digital Lewisville, LLC ("Digital"), as successor landlord and the assignee of original landlord's rights and claims against debtor GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation ("GMAC") under the terms of the Lease (as defined below), hereby files its objection to the Motion and Assumption Notice, as follows:

I.  **FACTS**

   A.  **DIGITAL'S LEASE**

   1.  On or about July 30, 2002, Lewisville LSF, L.P., predecessor-in-interest to BREOF Convergence LP, a Delaware limited partnership ("BREOF"), as original landlord, and GMAC, as tenant, entered into that certain Lease Agreement (the "Original Lease"), covering approximately 19,112 square feet of Rentable Space designated as Suite 300 within Building 3 of the project commonly referred to as Convergence Office Center, Lewisville, Texas (the "Original Premises").

   2.  The Original Lease was amended by that certain (i) First Amendment to Lease Agreement dated as of March 23, 2004 (the "First Amendment"), (ii) Second Amendment to Lease Agreement dated as of November 4, 2005 (the "Second Amendment"), and (iii) Third Amendment to Lease Agreement dated as of August 25, 2011 (the "Third Amendment"). The Original Lease, as amended by the First Amendment, Second Amendment, and Third Amendment is referred to herein as the "Lease." As detailed in the Lease, the Original Premises were expanded to a total of approximately 78,413 square feet of Rentable Space (the "Premises").

   3.  Among other things, the Lease, as amended, provides:

   > "In the event Tenant desires to encumber this Lease, assign this Lease or sublet all or any part of the Premises or grant any license, concession or other right of occupancy of any portion of the Premises, Tenant shall notify Landlord in writing and shall state the name of the proposed assignee, sublessee or other transferee and the terms of the proposed assignment, sublease or transfer. Tenant shall also provide financial information and state and provide information requested by Landlord as to the nature and character of the business of the proposed assignee, sublessee or transferee. . . . Tenant shall not assign or mortgage this Lease or any

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to such terms in the Motion and the Assumption Notice.

right hereunder or interest herein, . . . without the prior written consent of Landlord, which consent may be granted or withheld at the reasonable discretion of the Landlord. Any such assignment . . . without such consent shall be void and shall, at the sole option of the Landlord, be deemed an event of default by Tenant under this Lease. Landlord's consent shall not be required in the event Tenant assigns this Lease or sublets the Premises to an entity that is, directly or indirectly, controlled or owned by, Ally Financial Inc. or to any corporation or other entity resulting from a merger, acquisition, sale of stock, sale of assets, consolidation or reorganization of or with Ally Financial Inc. (an "Affiliate"), " Lease, ¶ 11; Third Amendment, ¶ 15.[2]

". . . In the event Tenant shall receive any consideration from an assignee other than the assumption by the assignee of Tenant's obligations hereunder, Tenant shall be obligated to pay the full amount of such consideration to Landlord as additional rent hereunder on the same date it is received by Tenant, less any reasonable expenses." Lease, ¶ 11.

". . . If either party (the "Enforcing Party") brings any action under this Lease, or places this Lease or any amount payable by the other party (the "Defaulting Party") hereunder with an attorney for the enforcement of any of the Enforcing Party's rights hereunder, then the Defaulting Party agrees to pay the Enforcing Party on demand the reasonable attorney's fees and other costs and expenses incurred by the Enforcing Party in connection therewith, . . . In any arbitration or litigation between the parties with respect to this Lease, the non-prevailing party shall pay the prevailing party's reasonable attorneys' fees and expense." Lease, ¶ 26.

"Tenant shall procure and maintain throughout the Lease Term from an insurance company reasonably acceptable to Landlord a policy or policies of insurance, at its sole cost and expense, insuring Tenant and Landlord against any and all liability for injury to or death of a person or persons, occasioned by or arising out of or in connection with the use or occupancy of the Premises, with limits of such policy or policies to be in an amount of not less than $1,000,000 with respect to any one accident or disaster, and shall furnish evidence satisfactory to Landlord of the maintenance of such insurance. . . ." Lease, ¶ 30(b).

4. On or about December 29, 2011, Digital, as buyer, and BREOF, as seller, entered into that certain Agreement of Purchase and Sale, pursuant to which Digital agreed to acquire BREOF's ownership interest in the buildings (the "Buildings") located at such parcel commonly known as Convergence Business Park, Lewisville, Texas and BREOF's interest in certain leases related thereto, including the Lease. On or about February 22, 2012, Digital, as assignee, and BREOF, as assignor, entered into that certain Assignment and Assumption of Leases, pursuant to which BREOF transferred and assigned to Digital all of BREOF's right, title and interest, in, to and under the Lease. GMAC also signed that certain Estoppel Certificate affirming its obligations to Digital under the Lease.

---

[2] In the Third Amendment, lines 16, 17, and 18 of Section 11 of the Lease were amended so that all references to "General Motors Corporation" were replaced with "Ally Financial Inc."

B. **GMAC'S PURPORTED PARTIAL ASSIGNMENT OF THE LEASE ON THE VERGE OF ITS BANKRUPTCY FILING**

5.      Days before filing its bankruptcy petition, GMAC, together with certain affiliates and Ally Financial Inc. ("AFI") and certain of its affiliates entered into a series of agreements including: (i) a Purchase and Sale Agreement dated as of May 9, 2012 (the "Purchase Agreement"), between EPRE LLC ("EPRE") and AFI; and (ii) an Assignment of Leasehold Interest ("Assignment").  See Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC In Support of Chapter 11 Petitions and First Day Pleadings ("Whitlinger Decl.") [Docket No. 6], Ex. "8," pgs. 1-109.  In accordance with the Assignment, which was attached as Exhibit "C" to the Purchase Agreement, GMAC purported to assign "an undivided fifty-one percent (51%) leasehold interest [in the Lease] (the "Leasehold Interest") to [AFI]." Whitlinger Decl., Ex. "8," pg. 93, at ¶¶ c and 1.  In accordance with the Purchase Agreement, AFI agreed to pay $6,000,000 "for the Property Interest and the Leasehold Interest." Id. at pg. 79, Purchase Agreement, ¶ 2.4 (emphasis added).  Moreover, in accordance with the Assignment, AFI assumed "the obligations of [GMAC] under the Lease to the extent of the Leasehold Interest." Id. at pg. 93, ¶ 2.  In violation of the express terms of the Lease, no prior notice of either the Purchase Agreement or the Assignment was given to Digital.  Marsh Decl., ¶ 9.  Moreover, Digital was not given the opportunity to and has not consented to either the Purchase Agreement or the Assignment.  Id.

6.      After learning of the prepetition Assignment following GMAC's bankruptcy filing, Digital notified GMAC that it was reserving its rights with respect to the GMAC/AFI transactions in accordance with the terms and conditions of the Lease.  Marsh Decl., ¶ 10.  To date, neither AFI nor GMAC have given proper notice of assignment nor attempted to comply with the terms of the Lease.  Id.

7.      Moreover, while AFI has assumed obligations as Tenant under the Lease, AFI has not performed all its obligations thereunder.  For example, among other things, it was not until September 24, 2012, over four months after the petition date, that AFI provided Digital with copies of purported certificates of insurance (despite requests therefor).  Marsh Decl., ¶ 11.  While

965556.01/OC

Digital received certificates of insurance on September 24, 2012, Digital has not yet been able to verify that the required insurance has been in place since it acquired the Buildings.

### C.    DIGITAL'S OBJECTION TO SALE PROCEDURES

8.    The Debtors originally filed the Motion on May 14, 2012 [Docket No. 61]. On June 11, 2012, Digital filed its Limited Objection to Debtors' Motion for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief [Docket No. 278] (the "Limited Objection"). In its Order Under 11 U.S.C. §§ 105, 363(b) and 365(I) Authorizing and Approving Sale Procedures, Including Payment of Break-Up Fees; (II) Scheduling Bid Deadline, Auction (If Necessary) and Sale Hearing; (III) Establishing Assumption and Assignment Procedures, Including Procedures for Fixing Cure Amounts; and (IV) Establishing Notice Procedures and Approving Forms of Notice [Docket No. 538] (the "Sale Procedures Order"), the Court left unimpaired Digital's objections to the Motion set forth in the Limited Objection (subject to certain exceptions set forth in the Sale Procedures Order).

9.    In its Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto [Docket No. 924] filed on July 26, 2012 (the "Assumption Notice"), the Debtors' identified the Lease as one of the unexpired leases the Debtors' may assume and assign to the Purchaser. Assumption Notice, Ex. "1", pg. 7/236. Notably, the Debtors failed to indicate in the Assumption Notice that a 51% undivided interest in the Lease had already been purportedly assigned to AFI prior to the Debtors' respective bankruptcy filings. Id. The Debtors also asserted that no cure amount was owed with respect to the Lease and made no reference to non-monetary cure issues.

## II. THE RELIEF SOUGHT IN THE MOTION AND ASSUMPTION NOTICE

10. Pursuant to the Motion and Assumption Notice, the Debtors request, among other things, a court order authorizing them to assume and assign certain executory contracts and unexpired leases, including potentially the Lease, to the Purchaser. The Debtors also state in the Motion that: "Nationstar is not assuming and parties will be enjoined from asserting against Nationstar any claims or obligations relating to the pre-closing period under any Assumed Contract . . . including, without limitation, any claims or liabilities relating to any act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date." (Motion at ¶ 60; Exhibit F, ¶ 21). Similarly, the proposed Nationstar Asset Purchase Agreement (Exhibit B to Motion) seeks, through the definition of "Assumed Liabilities" (at Section 1.1) to limit assumed obligations under assumed leases included in the Purchased Assets to liabilities "arising from the conduct of the Business *on or after the Closing* other than any Retained Liabilities." (Emphasis added.) See also, Assumption Notice, ¶ 24.

## III. NATURE OF DIGITAL'S OBJECTIONS

11. As set forth in more detail below, Digital is filing this objection to the Motion and Assumption Notice because the Debtors are seeking relief from this Court that is inconsistent with section 365 of the Bankruptcy Code. First, GMAC is purportedly seeking to assume and assign the entirety of the Lease to the Purchaser. As a result of the Purchase Agreement and the Assignment, however, GMAC presently only purportedly owns a 49% undivided interest in the Lease. Thus, as a matter of law, GMAC cannot assume and assign a 100% interest in the Lease to the Purchaser under section 365, and its Motion must be denied. Likewise, because a debtor must assume and assign an unexpired lease *cum onere* under section 365, GMAC cannot assign a fractionalized interest in the Lease to the Purchaser.

12. Second, to the extent AFI seeks to reconvey its purported 51% undivided interest in the Lease to GMAC which will then seek to assume and assign the entirety of the Lease to the Purchaser, such transaction cannot be accomplished under section 365 of the Code. A debtor may only assume and assign an unexpired lease it held as of the petition date. Here, because GMAC purportedly only held a 49% fractionalized undivided interest in the Lease as of its petition date,

GMAC cannot, as a matter of law, use section 365 of the Code to assume and assign a 100% interest to the Purchaser.

13. Third, before a debtor may assume a lease, it first must cure all outstanding defaults thereunder. At present, GMAC is in default under the Lease (which defaults must be cured) in the following respects: (i) under Paragraph 12 of the Lease, GMAC is obligated to pay to Digital <u>any consideration it received for the transfer of the Lease as additional rent</u>. Notwithstanding this obligation, GMAC has not paid to Digital the $6,000,000 (or any portion thereof) it received under the terms of the Purchase Agreement for the transfer of, among other things, the Leasehold Interest; (ii) GMAC is in default for having purported to assign an undivided 51% interest to AFI without prior notice to Digital; (iii) GMAC is in default for having purportedly assigned an undivided 51% interest to AFI without Digital's consent; and (iv) assuming AFI is presently a tenant under the Lease, despite it providing Digital with copies of purported certificates of insurance on September 24, 2012, Digital has not yet been able to verify that the required insurance has been in place since Digital acquired the Buildings.

14. Fourth, the Debtors are seeking a ruling that the Purchaser, the proposed assignee of the Lease, shall have no liability for obligations under the Lease that may have accrued or arose before the closing of the sale (even though such obligations may not yet be in default) in contravention of section 365 of the Bankruptcy Code. Moreover, the Debtors are requesting that the Court approve GMAC's exoneration under section 365(k) in violation of applicable law. (Motion, Exhibit D, ¶ 18).

15. Finally, the Court cannot approve the assumption and assignment and simultaneously allow AFI to retain any right of occupancy. Given that AFI presently maintains occupancy rights, no assumption and assignment of the Lease can be approved under section 365 of the Code.

IV. **ARGUMENT**

16. The Bankruptcy Code is designed to allow for the assumption and assignment of unexpired nonresidential real property leases, but provides very specific protections to a landlord whose lease is being assumed and assigned. The protections provided are specifically designed to

965556.01/OC

ensure that, while a debtor may assume and assign a nonresidential real property lease to a third party, the obligations under the lease will be abided by and the debtor and the assignee will fulfill all obligations under the lease.  The intent of Congress to protect a landlord's rights in the assumption and assignment context is reflected throughout section 365 as well as the relevant case law interpreting this section.  For example, it is black letter law that section 365(b) requires that a debtor assume a lease or executory contract *cum onere*.  In re Village Rathskellar, Inc., 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992); In re Nitec Paper Corporation, 43 B.R. 492, 498 (Bankr. S.D.N.Y. 1984).  The protection of landlords is also reflected in Bankruptcy Code section 365(b)(1)'s requirements that: (1) the debtor cure any defaults in the contract before assuming the contract; (2) the debtor compensate or provide adequate assurance of compensation to the landlord for any pecuniary loss due to any default; and (3) provide adequate assurance of future performance.  11 U.S.C. § 365(b)(1).

17.     Additionally, the assignment of a lease to a third party is also subject to specific protections under the Bankruptcy Code designed to protect the landlord.  For example, section 365(f) requires that any lease to be assigned must be assumed subject to all requirements of section 365 and that adequate assurance of future performance by the assignee is provided. 11 U.S.C. § 365(f)(1)(2).  Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease."  See In re Sun TV and Appliances, Inc., 234 B.R. 356, 370 (Bankr. D. Del. 1999).  Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance.  In re World Skating Center, Inc., 100 B.R. 147, 148 (Bankr. D. Conn. 1989).  Section 365(f)(3) prevents the modification of a lease in connection with it being assumed or assigned.  11 U.S.C. § 365(f)(3). Additionally, the protection of a landlord's rights under the lease are reflected by court decisions that although section 365(k) of the Bankruptcy Code provides that a debtor is exonerated from any liability under a lease, if the lease is completely assigned to a third party, the debtor is not entitled to the benefits and protections of section 365(k), where the debtor does not assume and assign the

965556.01/OC

lease *cum onere* – with all benefits and burdens. American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment, and the debtor is not entitled to the protections of section 365(k). Id. at 81.

18. Under these standards, the Debtors' proposed assumption of the Lease cannot be approved for the numerous reasons, as follows:

### A. GMAC Cannot Assume and Assign a 100% Interest in the Lease Given Its Purported Partial Assignment

19. In the Assumption Notice, the Debtors indicate that they intend to assume and assign the Lease to the Purchaser. [Docket No. 924] Assumption Notice, Ex. "1," pg. 7/326. The Assumption Notice, however, is silent with regards to GMAC's prepetition purported assignment of an undivided 51% interest in the Lease to AFI.[3] Instead, the Assumption Notice implies that the Debtors are seeking to assume and assign a 100% interest in the Lease to the Purchaser. Given that GMAC purportedly does not own a 100% interest in the Lease, it cannot assume and assign 100% of the Lease to the Purchaser and its request to do so must be denied.[4]

20. Likewise, because the Bankruptcy Code requires that a debtor assign all rights and benefits *cum onere*, because GMAC purportedly assigned a 51% interest to AFI prepetition, it cannot now rely on section 365 to assign the Lease to the Purchaser. It is axiomatic that section 365 does not apply to assignments of leasehold interests by non-debtors.

---

[3]  It is questionable whether the purported partial assignment is valid under Texas law. See Royalco Oil & Gas Corp. v. Stockhome Trading Corp., 361 S.W.3d 725 (Tex. App. 2012).

[4]  To the extent the Assignment is a sublease, GMAC would still be in default under the Lease, and as set forth below, cannot assign the Lease without first curing the defaults related to the Assignment, which would include, among other things, complying with all terms of the Lease that pertain to subleasing.

965556.01/OC

> **B.    The Debtors Cannot Rely on Section 365 of the Code to Assign the Lease Because AFI Purportedly Held a 51% Partial Interest in the Lease as of the Petition Date**

21.    Although the Debtors purportedly do not own a 100% interest in the Lease, and therefore cannot use section 365 to assign a 100% interest in the Lease to the Purchaser, Digital anticipates that the Debtors will argue that: (i) GMAC has a "re-assignment" right under the terms of the Assignment and can compel AFI to re-assign its purported 51% interest in the Lease to GMAC "at any time from and after the closing of the sale of all or substantially all of the assets of [GMAC]" [Assignment, ¶ 6(b)]; and (ii) once the Lease is "re-assigned" to GMAC, GMAC can theoretically thereafter exercise its rights to assume and assign a 100% interest in the Lease to the Purchaser.[5]  This argument fails for several reasons:

22.    First, by its terms, section 365 of the Code only applies to unexpired leases which the debtor was a party to as of the petition date.  See In re Cannonsburg Envtl. Assocs., 72 F.3d 1260, 1265-66 (6th Cir. 1996) ("'Section 365 does not apply to postpetition contracts or leases negotiated by the debtor-in-possession. . . . It would create a financial disincentive for creditors to deal with the debtor-in-possession because holders of administrative claims are paid in full, whereas holders of unsecured claims usually receive a smaller distribution.'") (citation omitted); In re Dant & Russell, Inc., 853 F.2d 700, 706 (9th Cir. 1988) ("Contrary to debtor-in-possession's contention, section 365(a) is inapplicable to leases executed postpetition as that section contemplates a prepetition lease or executory contract which is unexpired on the date of the petition."); In re Merry-Go-Round Enterprises v. Simon Debartolo Group, 180 F.3d 149, 160 (4th Cir. Md. 1999); In re Leslie Fay Cos., 168 B.R. 294, 300 (Bankr. S.D.N.Y. 1994) (holding that postpetition contracts are not subject to rejection under section 365); In re Airport Executive

---

[5]    To the extent the Debtors make this argument, they must explain how they will accomplish such a "re-assignment."  The Debtors cannot enter into a transaction outside the ordinary course of business without bankruptcy court approval.  The Debtors presumptively would have to first seek court approval to have AFI re-assign its purported majority interest in the Lease to GMAC, which, once the entirety of the Lease is reunited, would seek to assume and assign the Lease to Nationstar.  However, as noted, such a "re-assignment" violates section 365 of the Code.

Center, Ltd., 138 B.R. 628, 629 (Bankr. M.D. Fla. 1992) (same); In re I.M.L. Freight, Inc., 37 B.R. 556, 558-59 (Bankr. D. Utah 1984) (same).  Given that GMAC only purportedly held a 49% undivided interest in the Lease as of the petition date, the Debtors cannot rely on section 365 of the Code to assume and assign 100% of the Lease to Nationstar.  As a result, the Debtors' efforts to assume and assign 100% of the Lease under section 365 of the Code fail as a matter of law.

23. Second, as discussed in more detail below, GMAC's purported assignment of an undivided 51% interest in the Lease to AFI without either prior notice to Digital or Digital's consent constituted an event of default under Section 11 of the Lease.  Moreover, as further noted below, GMAC failed to pay to Digital the consideration it received from the Assignment in default of the Lease.  While the Debtors may be able to cure and compensate Digital for certain historical events of default with respect to the Debtors' unexpired leases as of the petition date, the Debtors cannot use section 365 of the Code to cure AFI's default with respect to its undivided 51% interest in the Lease that was not part of the estate as of the petition date and presently is not part of the estate.  Given that the Debtors cannot cure the defaults related to AFI's purported prepetition acquisition of a 51% undivided interest in the Lease, the Debtors cannot rely on section 365 to assume and assign the Lease to the Purchaser as a matter of law.

C. **To the Extent the Court Nevertheless Authorizes the Assumption and Assignment of the Lease, GMAC Must Assume and Assign the Lease *Cum Onere***

24. It is well settled that an executory contract or unexpired lease may not be assumed in part and rejected in part.  See In re Fleming Cos., 499 F.3d 300, 308 (3rd Cir. 2007); see also In re Buffets Holdings, Inc., 387 B.R. 115, 119 (Bankr. D. Del. 2008); In re Abitibibowater Inc., 418 B.R. 815 (Bankr. D. Del. 2009); Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co., 83 F.3d 735, 741 (5th Cir. 1996); City of Covington v. Covington Landing Ltd. Partnership, 71 F.3d 1221 (6th Cir. 1995); In re Nitec Paper Corp., 43 B.R. 492 (S.D.N.Y. 1984); In re Village Rathskeller, Inc., 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992).  The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits.  NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984).  Moreover, to the extent the proposed

965556.01/OC

assignee is not assuming all obligations *cum onere*, the Debtors are not eligible for exoneration under section 365(k).  See American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80-81 (3d Cir. 1999).

25. To the extent that the Debtors are proposing that the Purchaser may assume the Lease and not be subject to any obligations that may have accrued, relate to, or arise prior to the sale, such an assumption and assignment cannot be approved.  GMAC cannot bifurcate its obligations under the Lease.  To the extent GMAC is assuming and assigning the Lease, GMAC must assume and assign all of its responsibilities and obligations under the Lease, including its nonmonetary duties.  See, e.g., In re Rachels Industries, Inc., 109 B.R. 797, 803 (Bankr. E.D. Tenn. 1990) (holding that the requirement of adequate assurance of future performance is not limited to monetary obligations).  Indeed, the law is clear that any assumption and assignment under section 365 must ensure that the non-debtor party to the assumed agreement receives the "full benefit of its bargain." See H.R. Rep. No. 95-595, at 348-49 (1978) (Under section 365, courts must "insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of its bargain"); Eastern Air Lines, Inc. v. The Ins. Co., 85 F.3d 992, 999 (2d Cir. 1996) (Congress' intent was "to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance"); In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996); Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.), 330 B.R. 67 (Bankr. D. Del. 2005) (citing In re Superior Toy & Mfg. Co., 78 F.3d 1169, 1174 (7th Cir. 1996) (Courts must ensure that substitute performance "gives the other contracting party the full benefit of his bargain")).

26. Notwithstanding the foregoing, in the Motion, the Debtors are proposing that the proposed assignee of the Lease, if any, shall only be obligated to assume obligations under the Lease that may arise or accrue following the sale.  See Motion, ¶ 60; see also Assumption Notice, ¶ 24.  The Debtors' request is not consistent with the Bankruptcy Code, as it contravenes GMAC's obligations to assume and assign the Lease cum onere.  The issue is not simply academic.  For example, obligations may accrue under the Lease that relate to pre-closing actions of GMAC – such as the obligations to restore the Premises.  Lease, ¶ 10.  Other such obligations may relate to

indemnity obligations, maintenance, the obligation to keep the Premises lien free, and to pay future common area maintenance charge reconciliations related to a pre-closing time period. Lease, ¶¶ 10, 15, 25, and 38. According to the Debtors, even if there is no present default under the Lease, the proposed assignee shall have no obligation to Digital for any such pre-closing actions of GMAC. The Debtors are requesting that **both** the proposed assignee and GMAC be exonerated of such obligations contrary to the Bankruptcy Code. Because both are seeking exoneration, Digital is not receiving adequate assurance of future performance. The proposed assignee must assume the Lease *cum onere*.

> D. **To the Extent the Court Nevertheless Authorizes the Assumption and Assignment of the Lease, the Debtors Must Fully Cure All Outstanding Defaults**

27. Section 365(a) of the Bankruptcy Code grants a debtor in possession the right to assume, subject to court approval, an executory contract. Where an executory contract is in default, section 365(b) grants the debtor in possession the power to cure the underlying default. Section 365(b) provides in pertinent part:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption . . .;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b).

28. Thus, in accordance with section 365(b)(1) of the Bankruptcy Code, a debtor may assume an executory contract in default so long as it cures any such defaults and compensates the non-debtor party for any "actual pecuniary loss." The cure and compensation obligations are

965556.01/OC

ordinarily determined in accordance with the underlying contract and state law. <u>In re Westside Print Works</u>, 180 B.R. 557, 560 (B.A.P. 9th Cir. 1995) ("Applicable state law governs the determination of how much is necessary under a lease to cure the default."). In addition, in connection with a motion to assume an executory contract, the non-debtor party has the burden of proof on the amounts necessary to cure and compensate any defaults. <u>In re Joshua Slocum, Ltd.</u>, 103 B.R. 601, 605 (Bankr. E.D. Pa. 1989). Here, GMAC must cure all the following defaults if the Court authorizes the Debtors to assume and assign the Lease:

### 1. **The Debtors Must Pay Digital All Consideration They Received in Exchange for the Partial Assignment of the Lease**

29.  Section 11 of the Lease provides in pertinent part that:

> "In the event Tenant shall receive any consideration from an assignee other than the assumption by the assignee of Tenant's obligations hereunder, Tenant shall be obligated to pay the full amount of such consideration to Landlord as additional rent hereunder on the same date it is received by Tenant, less any reasonable expenses." Lease, ¶ 11.

In plain language, the Lease requires GMAC to pay to Digital, as additional rent under the terms of the Lease, any consideration received by GMAC in connection with an assignment. This language compels GMAC to make two separate payments to Digital as a condition of Lease assumption and assignment.

30.  First, and as set forth above, on or about May 9, 2012, AFI entered into the Purchase Agreement wherein it agreed to pay $6,000,000 for both the Leasehold Interest and the Property Interest. The $6,000,000 GMAC paid to AFI clearly constitutes "any consideration from an assignee other than the assumption by assignee of Tenant obligations hereunder."

//
//
//
//
//
//

Consequently, GMAC presently owes the full $6,000,000 to Digital under the terms of the Lease as additional rent which must be paid as a condition of cure.[6][7]

31. Second, because AFI allegedly purports to hold a 51% undivided interest in the Lease and section 365 of the Code is inapplicable to this 51% interest previously assigned to a non-debtor, to the extent this 51% interest is assumed and assigned to the Purchaser, Digital is entitled to the consideration paid to the Debtors by the Purchaser for the assignment of the Lease above and beyond the simple Lease assumption. Lease, ¶ 11. The Court should schedule and conduct an evidentiary hearing to determine the fair market value of the Lease at the time of the sale and order that such amount be paid to Digital as a condition of lease assumption and assignment as authorized by Section 11 of the Lease.

### 2. GMAC's Purported Prepetition Partial Assignment Constitutes a Default Under the Lease

32. As noted above, only days before its bankruptcy filing, GMAC entered into the Assignment with AFI. Under the terms of the Assignment, GMAC purported to assign a 51% undivided interest in the Lease to AFI. Digital was not given prior notice of the Assignment and did not consent to the Assignment. This assignment directly violated the terms of the Lease.

33. Section 11 of the Lease provides in pertinent part:

> "In the event Tenant desires to encumber this Lease, assign this Lease or sublet all or any part of the Premises or grant any license, concession or other right of occupancy of any portion of the Premises, Tenant shall notify Landlord in writing and shall state the name of the proposed assignee, sublessee or other transferee and the terms of the proposed assignment, sublease or transfer. Tenant shall also provide financial information and state and provide information requested by Landlord as to the nature and character of the business of the proposed assignee, sublessee or transferee. . . . Tenant shall not assign or mortgage this Lease or any right hereunder or interest herein, . . . without the prior written consent of Landlord, which consent may be granted or withheld at the reasonable discretion of the Landlord. Any such assignment . . . without such consent shall be void and shall, at

---

[6] Notably, even if the Debtors argue that a portion of the $6,000,000 is related to the purchase of the Property Interest, the Debtors would still be obligated to pay to Digital the share of the total consideration which related to the assignment of the Lease. To date, GMAC has failed to account for or pay this obligation. GMAC must therefore at minimum account for and pay Digital the fair share of consideration related to the partial assignment of the Lease as a condition of assumption and cure.

[7] In addition, if the Assignment is determined to have been a sublease, GMAC would still have to cure all defaults related to the unpermitted sublease including payment of all amounts due under Paragraph 11 of the Lease.

965556.01/OC

the sole option of the Landlord, be deemed an event of default by Tenant under this Lease. Landlord's consent shall not be required in the event Tenant assigns this Lease or sublets the Premises to an entity that is, directly or indirectly, controlled or owned by, Ally Financial Inc. or to any corporation or other entity resulting from a merger, acquisition, sale of stock, sale of assets, consolidation or reorganization of or with Ally Financial Inc. (an "Affiliate"), " Lease, ¶ 11.

34. In accordance with the plain language of the Lease, GMAC was required to notify Digital of an assignment or sublease prior to making the assignment, even if such assignment was to a permitted assignee. Moreover, GMAC was required to provide Digital with the proposed terms of the Assignment. In violation of Paragraph 11 of the Lease, no prior notice was provided to Digital. Moreover, Digital has not consented to the Assignment. Accordingly, the Assignment violated Section 11 of the Lease. Based upon such breach, an event of default has occurred under the terms of the Lease.

35. While Digital anticipates that GMAC will argue that no default occurred because AFI was permitted to make certain assignments or subleases under the express terms of the Lease, any such argument would fail. The Lease only authorized, among other things, <u>AFI</u> to assign the Lease <u>to a subsidiary of AFI</u>, not for a subsidiary of AFI to assign the Lease <u>to AFI</u>. Consequently, GMAC was required to comply with the contractual assignment provisions of the Lease in connection with the partial assignment of the Lease to AFI. <u>See</u>, Lease ¶ 11; <u>see also</u>, Tex. Prop. Code § 91.005 ("During the term of the lease, the tenant may not rent the leasehold to any other person without the prior consent of the landlord). Having failed to do so, an event of default has occurred under the terms of the Lease which must be cured as a condition of assumption. Moreover, Digital is entitled to compensation including payment of all its fees and costs incurred in enforcement of the Lease.[8]

---

[8] As noted in footnote 3, supra, it is questionable whether a partial undivided assignment is effective under Texas law. Moreover, given AFI's use and occupancy of the Premises as a data center, it would appear unlikely that AFI will vacate the Premises prior to closing. Thus, any transaction with a Purchaser would require another agreement between AFI and the Purchaser to again remain in the Premises – an agreement that has not yet been disclosed. Moreover, such occupancy rights would appear to be inconsistent with the *cum onere* principal of section 365.

965556.01/OC

### 3. Digital Needs Adequate Evidence of Insurance

36. After repeated requests for evidence that the Premises were properly insured during the postpetition period, the Debtors provided counsel for Digital with three certificates of insurance on September 24, 2012. Marsh Decl., ¶ 11. However, as noted above, while Digital received certificates of insurance on September 24, 2012, Digital has not yet been able to verify that the required insurance has been in place since it acquired the Buildings.

37. In addition to the monetary obligations that either GMAC or any proposed assignee must satisfy under section 365 of the Bankruptcy Code, the Lease provides that GMAC must indemnify and hold Digital harmless with regard to events or incidents that may have occurred prior to any assignment, but which are not made known to Digital, GMAC or an assignee until after the assignment. Lease, ¶ 15. Accordingly, in order to cure possible pre-assignment non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under Debtors' Lease with the Landlord, either: (i) the assignee must be required to assume all responsibility for any and all such claims; or (ii) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations which may arise in the future with respect to pre-assignment claims. Such claims for indemnity could include claims for personal injury occurring at the leased premises where a landlord is joined as a party to a lawsuit, damage and destruction of property by the Debtors or their agents or employees, or claims for environmental damage or clean-up.

### E. To the Extent the Court Nevertheless Authorizes the Assumption and Assignment of the Lease, the Debtors Must Pay Digital's Attorneys' Fees as a Condition of Assumption and Assignment

38. Bankruptcy courts have held that attorneys' fees incurred in the enforcement of obligations, covenants and conditions of a lease are recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) due upon assumption and assignment of a lease if the underlying lease provides for them. In re Entertainment, Inc., 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). "Although attorneys' fees are not independently recoverable under the Bankruptcy

Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." <u>In re Child World, Inc.</u>, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); <u>see also</u>, <u>Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.</u>, 127 S. Ct. 1199, 1203-1206 (2007) (contract providing for attorneys' fee recovery enforceable in bankruptcy unless Bankruptcy Code specifically provides otherwise). Here, the Lease expressly provides for the recovery of attorneys' fees. Section 26 of the Lease states:

> "If either party (the "Enforcing Party") brings any action under this Lease, or places this Lease or any amount payable by the other party (the "Defaulting Party") hereunder with an attorney for the enforcement of any of the Enforcing Party's rights hereunder, then the Defaulting Party agrees to pay the Enforcing Party on demand the reasonable attorney's fees and other costs and expenses incurred by the Enforcing Party in connection therewith, . . . In any arbitration or litigation between the parties with respect to this Lease, the non-prevailing party shall pay the prevailing party's reasonable attorneys' fees and expense." Lease, ¶ 26.

39. Here, there is no question that GMAC filed its voluntary petition and sought therein to assume and assign the Lease. Moreover, for the multiple reasons set forth above, GMAC is in default under the Lease, necessitating Digital's retention of legal representation to enforce the Lease. Accordingly, GMAC is responsible for Digital's attorneys' fees and costs. In the event that the Court approves the assumption and assignment, Digital requests that the Court set a further hearing to determine the amount of fees and costs the Debtors must pay Digital following its rulings on the Motion and the Assumption Notice.

## V.    **RESERVATION OF RIGHTS**

40. Digital reserves the right to make such other and further objections as may be appropriate based upon any new information provided by Debtors or upon any different relief requested by Debtors, or as may be developed through formal or informal discovery.

//

//

//

//

//

//

## VI. CONCLUSION

41. The Debtors' Motion and Assumption Notice should be denied with respect to the assumption and assignment of the Lease as currently proposed by GMAC.

Dated: September 28, 2012

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

*/s/ Alan Marder*
Alan Marder Esq. (AM-0114)
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, NY 11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6707

- and –

Michael S. Greger (CA Bar No. 156525)
Ivan M. Gold (CA Bar No. 121486)
Richard M. Dinets, Esq. (CA Bar No. 265197)
Allen Matkins Leck Gamble Mallory
  & Natsis LLP
1900 Main Street, Fifth Floor
Irvine, CA 92614-7321
Telephone:  (949) 553-1313
Facsimile:  (949) 553-8354

Attorneys for Digital Lewisville, LLC