Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC., et al. | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION AND RESERVATION**
**OF RIGHTS OF ALLY FINANCIAL INC. AND ALLY**
**BANK REGARDING ASSUMPTION AND ASSIGNMENT OF**
**CERTAIN EXECUTORY CONTRACTS TO NATIONSTAR MORTGAGE LLC**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .........................................................................................1

RELEVANT BACKGROUND .........................................................................................3

A.    The Consent Order and DOJ/AG Settlement.......................................................3

B.    The Sale Motion, The Nationstar APA, And The Ally Contracts ......................5

LIMITED OBJECTION AND RESERVATION OF RIGHTS .......................................7

I.    The Debtors Must Settle Their Obligations Under The Consent Order And The DOJ/AJ Settlement .................................................................................................7

II.    The Debtors Cannot Limit Ally's Rights Under Any Assumed Contract ...........9

III.    The Debtors Cannot Assume And Assign Non-Debtor Contracts......................11

IV.    Additional Objections With Respect To The Ally Contracts .............................12

RESERVATION OF RIGHTS ........................................................................................14

CONCLUSION................................................................................................................14

**EXHIBITS**

Exhibit A      Ally Contracts
Exhibit B      Contracts Naming AFI, GMAC, Inc. or GMAC Mortgage Group, LLC as a "Debtor Entity"

# TABLE OF AUTHORITIES

**Page**

**CASES**

*City of Covington v. Covington Landing Ltd. P'ship,*
 71 F.3d 1221, 1226 (6th Cir. 1995) ........................................................................ 10

*In re Fleming Cos.,*
 499 F.3d 300, 305 (3rd Cir. 2007).......................................................................... 10

*In re MF Global Holdings Ltd.,*
 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ............................................................ 10

*In re New York Skyline, Inc.,*
 432 B.R. 66, 76 (Bankr. S.D.N.Y. 2010) ............................................................... 10

*Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.,*
 247 F.3d 44, 60 (3rd Cir. 2001)............................................................................. 11

*NLRB v. Bildisco & Bildisco,*
465 U.S. 513, 531 (1984)....................................................................................... 10

**STATUTES**

28 U.S.C. § 959(b) ................................................................................................... 8

12 U.S.C. §§ 1841 ................................................................................................... 8

11 U.S.C. § 365(b)(1)(A)......................................................................................... 9

11 U.S.C. § 365(f)(2)(B).......................................................................................... 7

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Ally Financial Inc. ("**AFI**") and Ally Bank (together with AFI, "**Ally**") submit this limited objection and reservation of rights regarding the assumption and assignment of certain executory contracts to Nationstar Mortgage LLC ("**Nationstar**") pursuant to the May 14, 2012 sale motion of the Debtors [ECF No. 924] (the "**Motion**") and the *First Amended and Restated Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* [ECF No. 1484] filed on September 18, 2012 (the "**Notice**").[1]

## PRELIMINARY STATEMENT

1.      Ally files this limited objection and reservation of rights to the assumption and assignment of contracts in connection with the proposed sale of the Debtors' mortgage servicing and origination platform to Nationstar (or any other purchaser) (the "**Platform Sale**") to the extent the Debtors do not comply with their obligations under the Consent Order among Residential Capital, LLC ("**ResCap**"), GMAC Mortgage, LLC ("**GMACM**"), AFI, Ally Bank, the Federal Reserve Board ("**FRB**") and the Federal Deposit Insurance Company (the "**FDIC**"), dated April 13, 2011 (the "**Consent Order**") and the consent judgment among the United States Department of Justice, the Attorneys General of certain states, ResCap, GMACM, and AFI dated February 9, 2012 (the "**DOJ/AG Settlement**").

2.      As explained below, the Debtors must comply with their obligations under the Consent Order and the DOJ/AG Settlement, including by requiring that (a) Nationstar (or any other purchaser of the Platform) continues to perform and be bound by the Consent Order and

---

[1]      Capitalized terms used herein without definition have the meaning ascribed to them in the Motion.

the DOJ/AG Settlement and (b) the Debtors fund or escrow an amount sufficient to pay for any obligations under the DOJ/AG Settlement and Consent Order for past practices (*e.g.*, loan modification obligations and foreclosure review obligations). As set forth in the Supplemental Agreement to the Consent Order and Exhibit I to the DOJ/AG Settlement, Ally cannot and will not consent to the sale, including the assumption and assignment of the contracts, if the Debtors do not comply with their regulatory obligations and obligations to pay for such settlement costs. In addition, the Debtors would not be able to establish adequate assurance of future performance with respect to the assumption and assignment of any contracts to Nationstar if the Debtors do not comply with the Consent Order and DOJ/AG Settlement.

3.     In addition, Ally objects to the Debtors' attempt to restrict, limit, or eliminate any of Ally's rights under the contracts to be assumed and assigned as part of the Platform Sale by purporting to enjoin Ally from asserting claims or obligations against Nationstar that relate to the pre-closing time period. The Debtors' proposed restrictions are not permissible under the Bankruptcy Code.

4.     Ally further objects to the Debtors' assumption and assignment of any contracts to which the Debtors are not a party, including those that appear to be listed on the September 18, 2012 Notice.

5.     Lastly, Ally asserts defaults and other objections in relation to its contracts with the Debtors that are proposed to be assumed and assigned to Nationstar and reserves its rights as more thoroughly set forth below.

## RELEVANT BACKGROUND

### A.    The Consent Order and DOJ/AG Settlement

6.    On April 13, 2011, the FRB and the FDIC entered the Consent Order as a result of an examination concerning the Debtors' alleged unsafe and unsound banking practices in violation of state and federal law in connection with residential mortgage foreclosures.

7.    On February 9, 2012, the Debtors and AFI entered into the DOJ/AG Settlement, which was filed as a consent judgment in the U.S. District Court for the District of Columbia, to remedy the Debtors' alleged violations of state and federal laws in connection with mortgage origination and servicing activities, and foreclosure home sales and evictions.

8.    Both the Consent Order and DOJ/AG Settlement impose obligations on the Debtors.  As described in previous pleadings before the Court,[2] the Consent Order, among other things, requires GMACM to conduct an independent file review regarding its past residential foreclosure actions.   The DOJ/AG Settlement obligates the Debtors, among other things, to perform certain "consumer relief" activities, including soliciting eligible populations of mortgage loans for modification and performing such loan modifications (the "***Consumer Relief Activities***").[3]

---

[2]    *See, e.g., Debtors' Motion for Entry of an Order Under Bankruptcy Code Section 363 and Bankruptcy Rule 6004 (I) Authorizing the Debtors to Compensate PricewaterhouseCoopers, LLP for Foreclosure Review Services in Furtherance of the Debtors' Compliance Obligations Under Federal Reserve Board Consent Order and (II) Reaffirming Relief Granted in the GA Servicing Order* [ECF No. 1357] (the "**PwC Motion**"); *Debtors' Motion for Interim and Final Orders Under Bankruptcy Code Sections 105(a) and 363 Authorizing the Debtors to Continue to Perform Under the Ally Bank Servicing Agreements in the Ordinary Course of Business* [ECF No. 47]; *Declaration of Thomas Marano, Chief Executive Officer of Residential Capital, LLC, in Further Support of Debtors' Ally Servicing Motion* (the "***Marano Declaration***") [ECF No. 793].

[3]    Marano Declaration, Ex. 1 (DOJ/AG Settlement, Ex. I), ¶¶ 3-6.  As the Court may recall, the eligible loans include substantially all of the mortgage loan portfolio owned by Ally Bank.

9.      The Consent Order is binding upon the Debtors and their successors and assigns.[4]  In addition, the DOJ/AG Settlement obligates the Debtors to "ensure the continued performance of their obligations under the [DOJ/AG Settlement], including requiring any successor or purchaser of substantially all of the assets (or assets that together are material to the performance of the [Debtors] under the [DOJ/AG Settlement]) of a [Debtor] to honor and perform the obligations (in the case of a purchase or other acquisition of assets, to honor and perform the obligations with respect to those assets) under the [DOJ/AG Settlement]."[5]

10.     Under the DOJ/AG Settlement, AFI may not consent to a sale transaction of the Debtors "or provide financial support in connection with any such transaction" unless the Debtors ensure the continued performance of their obligations under the DOJ/AG Settlement.[6]  AFI is similarly bound by a separate agreement with the FRB and the FDIC, which supplemented the Consent Order.[7]

11.     The Debtors have previously represented to the Court that they are fully committed to complying with the terms of the DOJ/AG Settlement and the Consent Order, and that such compliance is in the best interests of their estates.[8]  Indeed, the Debtors' intent to

---

[4]     PwC Motion, Ex. 5 (Consent Order), ¶ 25.

[5]     Marano Declaration, Ex. 1 (DOJ/AG Settlement, Ex. I), ¶ 10.

[6]     *Id.*

[7]     *See Notice of Filing of Supplemental Exhibits to Debtors' Motions for Entry of an Order Under Bankruptcy Code Section 363 and Bankruptcy Rule 6004 (I) Authorizing the Debtors to Compensate PricewaterhouseCoopers, LLP for Foreclosure Review Services in Furtherance of the Debtors' Compliance Obligations Under Federal Reserve Board Consent Order and (II) Reaffirming Granted in the GA Servicing Order* [ECF No. 1527], Ex. 10, ¶¶ 4–5.

[8]     *See, e.g., Debtors' Motion For Interim And Final Orders Under Sections 105(a), 361, 362, 363, 1107(a), And 1108 Of The Bankruptcy Code (I) Authorizing The Debtors To Continue In The Ordinary Course Of Business (A) Servicing Governmental Association Loans And (B) Foreclosure Activities Related To Certain Real Estate Owned By Fannie Mae, Freddie Mac, And Ginnie Mae; (II) Authorizing The Debtors To Pay Certain Prepetition Amounts Due To Critical Servicing Vendors And Foreclosure Professionals; (III) Granting Limited Stay Relief To Enable Borrowers To Assert Related Counter-Claims In Foreclosure Proceedings;*

satisfy their Consent Order and DOJ/AG Settlement obligations, at the request of the United

States, has been reinforced in almost every order the Court has entered to date in these cases.[9]

### B.    The Sale Motion, The Nationstar APA, And The Ally Contracts

12.    The Debtors filed the Motion on the Petition Date and subsequently filed an

amended and restated purchase agreement with Nationstar with the Court on June 28, 2012 (the

"*Nationstar APA*") [ECF No. 534].    Notwithstanding the Debtors' obligations under the

DOJ/AG Settlement and the Consent Order, the Nationstar APA does not clearly provide that

Nationstar will honor and perform all of the Debtors' obligations under the Consent Order and

the DOJ/AG Settlement.[10]    Specifically, Section 6.16 of the Nationstar APA states:

> **Section 6.16.  Consent Order and DOJ/AG Settlement**.  From and after
> the Closing Date, Purchaser agrees to comply with the mandated servicing
> standards as set forth in the DOJ/AG Settlement regarding the Purchased
> Mortgage Servicing, as set forth on Schedule 6.16.  Purchaser also agrees
> to use its commercially reasonable efforts to cooperate with and assist
> Sellers and their counsel and other advisors with (i) Sellers' foreclosure

---

*(IV) Authorizing The Debtors To Use Cash Collateral Under the Fannie Mae EAF Facility And (V) Granting Related Relief*, and the *Debtors' Motion For Interim And Final Orders Under Sections 105(a), 362, 363, 1107(a), And 1108 Of The Bankruptcy Code (I) Authorizing The Debtors To Continue In The Ordinary Course Of Business (A) Servicing Non-GA Loans And (B) Sale Activities Related To Certain Loans In Foreclosure And Real Estate Owned Property; And (II) Granting Limited Stay Relief To Enable Borrowers To Assert Related Counter-Claims In Foreclosure And Eviction Proceedings* [ECF No. 57], ¶ 42.

[9]    *See, e.g., Final Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Cash Management Services and Practices, (II) Continued Use of Existing Bank Accounts, Checks, and Business Forms, (III) Implementation of Modified Cash Management Procedures and Use of Certain Bank Accounts Established in Connection with Use of Pre-And Post-Petition Lenders Financing Facilities and Cash Collateral, (IV) Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, and (VI) Continuation of Intercompany Transactions and Granting Administrative Expense Status to Intercompany Claims*, ¶ 45 [ECF No. 393] ("Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.").

[10]    *See also Statement of the United States of America Concerning Debtors' Motion to Approve Sale Procedures* [ECF No. 290].

review obligations under the Consent Order and the reporting and oversight program with respect thereto as such obligations are finally approved by the FRB and (ii) Sellers' other obligations under the DOJ/AG Settlement Order regarding the compliance with the soft dollar menu options relating to providing borrower assistance including, with respect to each of subparagraphs (i) and (ii) hereof, by making available all necessary Books and Records such as relevant Mortgage Loan Documents, and by providing such other information as shall be reasonably requested by Sellers or their counsel and other advisors in connection with such obligations; provided that out-of-pocket third party costs and expenses and reasonable additional incremental overhead costs incurred by Purchaser or its Affiliates in connection therewith, including costs and expenses of the compliance monitor and any requests or demands of Purchaser by such monitor, shall be paid directly by the Sellers, and in the event incurred by Purchaser, will be promptly reimbursed by Sellers.  Notwithstanding anything to the contrary herein, the parties agree that any remediation payments to borrowers or any penalties that Sellers may incur as a result of any failure of Purchaser or its Affiliates to comply with the terms of the Consent Order and the DOJ/AG Settlement shall remain the liability of Sellers, except in the case of gross negligence or willful misconduct by Purchaser or its Affiliates, provided that Sellers shall provide prompt notice following receipt of notice from any Governmental Entity alleging that Purchaser's conduct constitutes gross negligence or willful misconduct.

Nationstar APA § 6.16.  Thus, the Nationstar APA provides that Nationstar only will "comply with the mandated servicing standards as set forth in the DOJ/AG Settlement" and use "commercially reasonable efforts" to cooperate with the Debtors and assist the Debtors with their foreclosure review obligations and the Debtors' other obligations under the DOJ/AG Settlement relating to the provision of borrower assistance.  The Nationstar APA also lists the Consent Order and the DOJ/AG Settlement as "Excluded Assets."[11]

13.    On July 26, 2012, the Debtors filed their initial notice of executory contracts to be assumed and assigned to Nationstar in connection with the Platform Sale, which only listed one contract between the Debtors and Ally.[12]  The Debtors subsequently filed the Notice on

---

[11]    Nationstar APA § 2.3(i).

[12]    *Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal*

September 18, 2102 to amend and restate the list of executory contracts to be assumed and assigned to Nationstar.  Ally has identified in the Notice eight contracts to which it is a party (collectively, the "*Ally Contracts*"), including the Amended and Restated Servicing Agreement, dated as of May 11, 2012, between Ally Bank and GMACM (the "*Subservicing Agreement*").[13]

### LIMITED OBJECTION AND RESERVATION OF RIGHTS

**I.      The Debtors Must Satisfy Their Obligations Under
The Consent Order And The DOJ/AG Settlement**

14.     Ally objects to the assumption and assignment of all executory contracts between the Debtors and Ally to Nationstar, because Nationstar has not explicitly agreed to perform and honor all of the Debtors' obligations under the DOJ/AG Settlement and the Consent Order.  Nationstar has agreed to comply only with the mandated servicing standards and to provide "commercially reasonable efforts" to cooperate and assist the Debtors with their other obligations under the Consent Order and the DOJ/AG Settlement, which include the Debtors' foreclosure review and loan modification obligations.  Nationstar has also excluded the Consent Order and DOJ/AG Settlement from the assets it is acquiring.   Unless Nationstar explicitly commits to honor and perform all of the Debtors' obligations under the Consent Order and the DOJ/AG Settlement, the Debtors cannot establish adequate assurance of future performance with respect to any contract to be assumed and assigned to Nationstar. *See* 11 U.S.C. § 365(f)(2)(B).

---

*Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* [ECF No. 924].

[13]     A list of the contracts between Ally and the Debtors that were included in the Notice is annexed hereto as **Exhibit A**.  To the extent there are additional contracts with Ally listed in the Notice that are not included on Exhibit A or are subsequently added by the Debtors to the Notice, they shall be deemed to be included in the term "Ally Contracts" as used herein, and this limited objection and reservation of rights shall apply equally to such additional contracts.

15.    The Debtors are operating as subsidiaries of a United States Bank Holding Company and, as such, must comply with all laws and regulations, including the regulatory obligations imposed by the DOJ/AG Settlement and the Consent Order.  *See* 12 U.S.C. §§ 1841, et seq.; *see also* 28 U.S.C. § 959(b).  The DOJ/AG Settlement requires the Debtors to ensure that a purchaser of substantially all of the Debtors' assets, such as Nationstar, honors and performs the obligations of the Debtors under the DOJ/AG Settlement.[14]  Likewise, the Consent Order is binding upon the Debtors and their successors and assigns.[15]

16.    If the Debtors do not ensure that Nationstar will honor and perform the Debtors' obligations under the DOJ/AG Settlement and the Consent Order, then the Debtors will not be in compliance with their regulatory obligations.   In addition to potential action from the regulatory authorities that may result from such a breach, government-sponsored enterprises and other contract counterparties may cancel their servicing contracts.  Further, the Debtors' breach of the DOJ/AG Settlement and the Consent Order would implicate several key agreements that are part of Ally's integrated support package.[16]  Lastly, as noted in paragraph 10 above, Ally is not permitted to provide support to the Debtors or the Platform Sale pursuant to its obligations to the governmental authorities, including the FRB and FDIC, if the Debtors do not comply with their DOJ/AG Settlement and Consent Order obligations.

---

[14]    Marano Declaration, Ex. 1(DOJ/AG Settlement, Ex. I), ¶ 10.

[15]    PwC Motion, Ex. 5 (Consent Order), ¶ 25.

[16]    *See, e.g., Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* ¶¶ 18(a)(3), 20(d), 20(g) [ECF No. 491]; *Stipulation and Order Reserving Rights with Respect to Debtors' Motion for Interim and Final Orders under Bankruptcy Code Sections 105(a) and 363 Authorizing the Debtors to Continue to Perform under the Ally Bank Servicing Agreement in the Ordinary Course of Business* ¶ 12(b) [ECF No. 1420]; *Amended and Restated Servicing Agreement between Ally Bank and GMAC Mortgage*, dated as of May 11, 2012  § 9.01(a)(7) [ECF No. 47, Ex. C]; *Amended and Restated Master Mortgage Loan Purchase and Sale Agreement between Ally Bank and GMAC Mortgage, dated as of May 1, 2012* § 6.2(f) [ECF No. 44, Ex. C].

17.    Because of the foregoing, the Debtors cannot establish adequate assurance of future performance if they do not comply with the DOJ/AG Settlement and the Consent Order. Accordingly, the assumption and assignment of the Ally Contracts should not be approved unless (a) Nationstar clearly agrees to honor and perform the Debtors' obligations under the DOJ/AG Settlement and the Consent Order and (b) the Debtors fund or escrow an amount sufficient to pay for any obligations under the DOJ/AG Settlement and Consent Order for past practices (*e.g.*, loan modification obligations and foreclosure review obligations).

## II.    The Debtors Cannot Limit Ally's Rights Under Any Assumed Contract

18.    Ally also objects to the restriction, limitation, and elimination of contractual rights that the Debtors are attempting to impose in connection with the assumption and assignment of the Ally Contracts.  Specifically, paragraph 25 of the Notice states that:

> Nationstar is not assuming and parties will be enjoined from asserting against Nationstar any claims or obligations relating to the pre-closing period under any Assumed Contract (including any Servicing Agreement), whether such claims or obligations are known, unknown, fixed, contingent, unliquidated or liquidated at the time of the Closing, including, without limitation, any claims or liabilities relating to any act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date, and any indemnification claims or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date.  Any parties holding such claims or obligations will be required to file a Cure Objection if they disagree with the Cure Amount set forth on the Schedule.

19.    The Debtors have wrongly attempted to impose an obligation on contract counterparties to assert all "claims" under their contracts at the time of assumption and to bar the assertion of such claims in the future to the extent they relate to the pre-closing time period. The Bankruptcy Code does not require a non-debtor party to assert all of its "claims" under a contract when that contract is assumed by a debtor, and instead requires only that "defaults" be asserted and cured.  11 U.S.C. § 365(b)(1)(A).

9

20.    The Debtors' attempt to bar contract counterparties from asserting future contract rights that relate back to pre-closing events, even though such rights are not defaults at the time of assumption, is without authority and directly contradicts the requirement that a debtor provide "adequate assurance of future performance" as mandated by section 365(f)(2)(B); *see also In re Fleming Cos.*, 499 F.3d 300, 305 (3d Cir. 2007) ("The statutory requirement of 'adequate assurance of future performance by the assignee' affords 'needed protection to the non-debtor party…'" [internal citations omitted]).

21.    Indeed, the injunctive relief requested by the Debtors would impermissibly permit the Debtors to assume only *certain* obligations under the Ally Contracts, rather than *all* of the obligations under such contracts.  Section 365 of the Bankruptcy Code does not allow a debtor (or its assignee) to pick and choose which contractual obligations may be enforced after assumption and assignment.  Instead, it is well-settled law that executory contracts must be assumed and assigned *cum onere* so that the non-debtor counterparties receive the full benefit of their bargain.  *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*."); *In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits."); *In re New York Skyline, Inc.*, 432 B.R. 66, 76 (Bankr. S.D.N.Y. 2010) ("When the debtor assumes [a] lease or the contract under § 365, it must assume both the benefits and the burdens of the contract.  Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party." (citing *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1226 (6th Cir. 1995)); *see also In re Fleming Cos., Inc.*, 499 F.3d at 308 ("an assignment is intended to change only who performs

10

an obligation, not the obligation to be performed" (citing *Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001)).

22.     For these reasons, the Court should deny the attempt by the Debtors to restrict, limit, or eliminate any of Ally's rights under the Ally Contracts after assumption and assignment of such contracts to Nationstar.

## III.    The Debtors Cannot Assume And Assign Non-Debtor Contracts

23.     Ally has identified approximately 60 contracts listed on the Notice where the Debtors are not party to such contracts and, instead, Ally is the contract party (collectively, the "***Non-Debtor Contracts***").[17]    The Notice lists the "Debtor Entity" for these contracts as "Ally Financial Inc.", "GMAC Inc." or "GMAC Mortgage Group, LLC" rather than any of the Debtors.  Section 365 of the Bankruptcy Code permits the Debtors to assume and assign only their contracts, not the contracts of other parties.[18]    Ally contacted the Debtors' counsel to clarify whether the Non-Debtor Contracts were inadvertently included in the Notice.   On September 26, 2012, the Debtors' counsel informed Ally that the Non-Debtor contracts either (a) were contracts to which the Debtors were actually the contracting party and had listed non-debtors as the contracting party incorrectly or (b) were Ally contracts that were incorrectly included on the Notice and would not be included in the Platform Sale.  Ally is party to numerous contracts with the Debtors and is in the process of investigating information from the Debtors regarding the Non-Debtor Contracts, but has not had sufficient time to complete its

---

[17]    A list of these contracts is attached as **Exhibit B** annexed hereto.  Ally reserves its rights to object to any other Non-Debtor Contract that is on the Notice and not included on Exhibit B.  Ally notes that four of these contracts do not list Ally as a party to the contract, but reference Ally in the name of the contract.  Upon initial review, Ally believes that these contracts are not Debtor contracts as listed on the Notice.  Ally intends to seek additional information with respect to these contracts and reserves its right to supplement this limited objection with respect to such contracts if necessary.

[18]    *See* 11 U.S.C. § 365(a) ("the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease *of the debtor*") (emphasis added).

investigation.  Out of an abundance of caution, Ally objects to the assumption and assignment of the Non-Debtor Contracts by the Debtors and reserves all of its rights in relation to asserting defaults under such contracts.  Ally will supplement this limited objection and reservation of rights, if necessary, based upon its review of information provided by the Debtors.

IV.    **Additional Objections With Respect To The Ally Contracts**

24.    At this time, Ally is not aware of any liquidated monetary defaults under the Ally Contracts.  The Ally Contracts, however, contain indemnity and other continuing obligations of the Debtors to Ally relating primarily to the Debtors' actions as servicer.  Although there may not be any liquidated amounts owed by the Debtors as of the Petition Date, there have been or may be known circumstances or events which constitute ongoing or unliquidated indemnification obligations under the Ally Contracts.  There also may be unknown circumstances or events before the closing date of the Platform Sale that may become known after closing and that could result in claims against Ally that, in turn, could result in additional indemnification obligations under the Ally Contracts.

25.    Further, as the Court may recall, the Subservicing Agreement is the means by which the Debtors have been authorized to perform the loan modifications to Ally Bank's mortgage loan portfolio as required by the DOJ/AG Settlement.   Under the Subservicing Agreement, GMACM is obligated to indemnify Ally Bank for loan modifications performed under the DOJ/AG Settlement.  As noted earlier, Nationstar must continue to perform the Consumer Relief Activities in order for the Debtors to remain in compliance with the DOJ/AG Settlement. To do so, Nationstar must comply with the Servicing Agreement, including the indemnification obligations set forth therein.[19]

---

[19]    For the avoidance of doubt, those obligations are not severable and must be assumed in their entirety with the rest of the Subservicing Agreement.

26.    Ally objects to the assumption and assignment of the Ally Contracts and the Debtors' assertion of "zero" with respect to any Cure Claims to the extent that any unliquidated and unknown claims, or any other possible claim by Ally associated with the Ally Contracts, including all claims based upon or related to indemnification obligations under such contracts, are not satisfied by the Debtors and/or do not become an obligation of Nationstar.

27.    Additionally, certain of the Ally Contracts may have been previously terminated or are in the process of being mutually terminated with the Debtors and, thus, are no longer executory contracts. To the extent any of the Ally Contracts has been terminated, or will be terminated before the Platform Sale, such contract cannot be assumed and assigned to Nationstar. [20]    Ally has not had sufficient time to resolve these matters with the Debtors and will endeavor to do so following the filing of this limited objection and reservation of rights.

28.    Lastly, certain of the Ally Contracts and other contracts (such as the Non-Debtor Contracts) listed on the Notice may not have been described accurately, completely, or clearly by the Debtors in the Notice. [21]    For example, Ally is party to numerous contracts with the Debtors and is attempting to review the information provided by the Debtors in relation to all of

---

[20]    Ally reserves its rights to terminate any of the Ally Contracts in accordance with its terms notwithstanding the proposed assumption and assignment of such contracts. In this regard, Ally notes that the Subservicing Agreement may be terminated without cause upon 120 days' notice and for cause on shorter notice, in each case subject to the terms and conditions of the *Stipulation and Order Reserving Rights with Respect to Debtors' Motion for Interim and Final Orders Under Bankruptcy Code Sections 105(a) and 363 Authorizing the Debtors to Continue to Perform Under the Ally Bank Servicing Agreement in the Ordinary Course of Business* [ECF No. 1420]. In addition, there are two "Master Servicing Agreements" between Ally Bank and the Debtors. The Notice lists only one such agreement. Ally is unsure which agreement is subject to assumption, and notes that negotiations have been underway for the amendment and restatement of both agreements. Ally intends to clarify with the Debtors exactly which contract is subject to assumption.

[21]    For example, one of the Ally Contracts is listed under Master Servicing Agreements as "Company GMACB MSA-Amended (1st lien) (3-31-2006)." Ally Bank is party to a Master Servicing Agreement dated as of August 5, 2005, as amended and supplemented on March 31, 2006 and June 7, 2007. To the extent the Debtors seek to assume and assign that Ally Contract, the entire contract must be assumed and assigned, including the latest amendment. Ally objects to the assumption and assignment of only a portion of such contract.

such contracts.  Ally reserves its rights to supplement this limited objection and reservation of rights based upon such review and further information provided by the Debtors.

### RESERVATION OF RIGHTS

29.    Ally respectfully reserves its right to (a) amend, supplement, or otherwise modify this limited objection and reservation of rights, (b) assert or raise such other and further objections or responses to the assumption by the Debtors and assignment to Nationstar of the Ally Contracts based upon additional information received from the Debtors, Nationstar, or other sources, and with respect to any supplemental notices or pleadings in relation to the Platform Sale, (c) assert any defaults by the Debtors under any of the Ally Contracts that were unknown as of the date hereof, (d) assert any contractual rights under the Ally Contracts including rights of termination, and (e) object to the Platform Sale on any basis, including the basis that the Debtors have failed to comply with their obligations under the DOJ/AG Settlement and the Consent Order.  Prior to assumption or rejection of the Ally Contracts, Ally reserves all rights and remedies that it has with respect to such contracts under the Bankruptcy Code and applicable law.

### CONCLUSION

30.    For the foregoing reasons, the assumption and assignment of the Ally Contracts to Nationstar should not be approved to the extent that the Debtors do not comply with their obligations under the DOJ/AG Settlement and the Consent Order and cannot demonstrate adequate assurance of future performance.  The Debtors (a) should require that Nationstar continues to perform and be bound by the Consent Order and the DOJ/AG Settlement and (b) fund or escrow an amount sufficient to pay for any obligations under the DOJ/AG Settlement and Consent Order for past practices (*e.g.*, loan modification obligations and

foreclosure review obligations). Further, the Debtors are unable, as a matter of law, to restrict, limit, or eliminate Ally's rights under the Ally Contracts. Lastly, the Debtors are unable, as a matter of law, to assume and assign any of the Non-Debtor Contracts to Nationstar, and cannot assume and assign the Ally Contracts to Nationstar to the extent that any unliquidated and unknown claims, or any other possible claim by Ally associated with the Ally Contracts, including all claims based upon or related to indemnification obligations under such contracts, are not satisfied by the Debtors and/or do not become an obligation of Nationstar.

31.    Accordingly, Ally respectfully requests that the Court deny the Motion to the extent set forth in this limited objection and reservation of rights and grant to Ally such other and further relief as may be just and proper.

New York, New York
Dated: September 28, 2012

*/s/ Ray C. Schrock*
Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank

## Exhibit A

**Ally Contracts**

| Debtor Entity | Contract Name | Counterparty |
|---|---|---|
| Residential Funding Company | Ally Auto-ResCap Master Servicing SOW | Ally |
| Residential Funding Company | Company GMACB MSA-Amended (1st lien) (3-31-2006) | Ally |
| Residential Funding Company | GMAC Bank Custodial Agreement with RFC and Wells Fargo dated as of August 15, 2005 | Ally |
| GMAC Mortgage, LLC | Ally Bank Subservicing Agreement | Ally Bank |
| GMAC Mortgage, LLC | Ally Bank Custodial Agreement, July 2009 | Ally Bank |
| GMAC Mortgage, LLC | Ally Bank Custodial Addendum, February 1, 2010 | Ally Bank |
| GMAC Mortgage, LLC | Ally Bank Custodial Second Addendum, February 1, 2011 | Ally Bank |
| GMAC Mortgage, LLC | Ally Bank Custodial Third Addendum, March 1, 2012 | Ally Bank |

1

**Exhibit B**

**Contracts Naming AFI, GMAC, Inc. or
GMAC Mortgage Group, LLC as a "Debtor Entity"**

| Debtor Entity | Contract Description | Supplier/Common Supplier - Counter Party |
|---|---|---|
| Ally Financial Inc. | Lease/License Agreement | INTEX SOLUTIONS INC |
| Ally Financial Inc. | | INTEX SOLUTIONS INC |
| Ally Financial Inc. | 2011-2012 PC 6.1 EX maintenance renewal | Kroll Ontrack Inc. |
| Ally Financial Inc. | Order Form | SALESFORCE.COM, INC |
| GMAC Inc. | Cafeteria-Vending Services | Compass Group USA, Inc. |
| GMAC Inc. | | GMAC Mortgage Corporation |
| GMAC Inc. | | INTEX SOLUTIONS INC |
| GMAC Inc. | Amendment to Lease/License Agreement | INTEX SOLUTIONS INC |
| GMAC Inc. | Amendment to Schedule A | INTEX SOLUTIONS INC |
| GMAC Inc. | Assignment to GMAC | INTEX SOLUTIONS INC |
| GMAC Inc. | Schedule C | INTEX SOLUTIONS INC |
| GMAC Inc. | Amendment to Schedule C to add US-FP and US-RC Deal Model Libraries | INTEX SOLUTIONS INC |
| GMAC LLC | | INTEX SOLUTIONS INC |
| GMAC LLC | Change in fee structure | REOTrans, LLC. |
| GMAC LLC | Master Services Agreement | SALESFORCE.COM, INC |
| GMAC LLC | Order Form | SALESFORCE.COM, INC |
| GMAC LLC | Order Form | SALESFORCE.COM, INC |
| GMAC Mortgage Group, LLC | Reseller of Hardware, software & services | Accudata Systems, Inc. |
| GMAC Mortgage Group, LLC | GLOBAL DISCOUNT AND PRICING Amendment 2009-09 | Avaya Inc. |
| GMAC Mortgage Group, LLC | MSA For SRM (03/03/08) | Blue Coat Systems Inc. |
| GMAC Mortgage Group, LLC | direct sourcing for foreclosure and bankruptcy | Cal-Western |
| GMAC Mortgage Group, LLC | Direct sourcing for foreclosure and bankruptcy | Castle Meinhold & Stawiarski LLC |
| GMAC Mortgage Group, LLC | direct sourcing for foreclosure and bankruptcy | Codilis & Associates |
| GMAC Mortgage Group, LLC | direct sourcing for foreclosure and bankruptcy | Codilis & Associates |
| GMAC Mortgage Group, LLC | Schedule 35 leased servers | CSI Leasing, Inc. |
| GMAC Mortgage Group, LLC | direct sourcing for foreclosure and bankruptcy | Dean Morris |
| GMAC Mortgage Group, LLC | Incorporate piecing exhibit | Global Capacity Group, Inc |
| GMAC Mortgage Group, LLC | Service order FTW | Global Capacity Group, Inc |
| GMAC Mortgage Group, LLC | direct sourcing for foreclosure and bankruptcy | Harmon Law Offices |

1

| Debtor Entity | Contract Description | Supplier/Common Supplier - Counter Party |
|---|---|---|
| GMAC Mortgage Group, LLC | SOW Change Order-Incident Excalation and Notification Guidelines | Harmon Law Offices |
| GMAC Mortgage Group, LLC | direct sourcing for foreclosure and bankruptcy | Johnson & Freedman |
| GMAC Mortgage Group, LLC | direct sourcing for foreclosure and bankruptcy | Johnson & Freedman |
| GMAC Mortgage Group, LLC | Master Services Agreement for direct sourcing for foreclosure and bankruptcy | Lerner, Sampson Rothfuss Co, Lpa |
| GMAC Mortgage Group, LLC | Terms for Delivery of Service Version 5.2 | LEVEL 3 COMMUNICATIONS LLC |
| GMAC Mortgage Group, LLC | Service order DS3s | LEVEL 3 COMMUNICATIONS LLC |
| GMAC Mortgage Group, LLC | MSA for direct sourcing for foreclosure and bankruptcy | Manley Deas & Kochaiski, LLC |
| GMAC Mortgage Group, LLC | Statement of Work 2 | Multivariate Diagnostics, LLC |
| GMAC Mortgage Group, LLC | Amendment 1 to Master Services Agreement | MZINGA, INC |
| GMAC Mortgage Group, LLC | Master Services Agreement | NACR |
| GMAC Mortgage Group, LLC | Purchase order | Orlans Associates, P.C. |
| GMAC Mortgage Group, LLC | direct sourcing for foreclosure and bankruptcy | Phelan Hallinan & Schmieg |
| GMAC Mortgage Group, LLC | Master Services Agreement | Phelan Hallinan & Schmieg |
| GMAC Mortgage Group, LLC | Amendment 01 Name Change and create change order process | Pite Duncan, LLP |
| GMAC Mortgage Group, LLC | QWEST ISDN PRS/DSS Winter 2008 Offer | QWEST |
| GMAC Mortgage Group, LLC | Master Services Agreement | REDSEAL SYSTEMS INC |
| GMAC Mortgage Group, LLC | Mutual Non Disclosure Agreement | Reisenfeld & Associates |
| GMAC Mortgage Group, LLC | Master Services Agreement | Reisenfeld & Associates |
| GMAC Mortgage Group, LLC | Master Services Agreement | Samuel I White PC |
| GMAC Mortgage Group, LLC | SOW Change Order-Incident Excalation and Notification Guidelines | Samuel I White PC |
| GMAC Mortgage Group, LLC | Master Services Agreement | Sirote & Permutt PC |
| GMAC Mortgage Group, LLC | SOW for Fannie Claims Processing | The First American Corporation |
| GMAC Mortgage Group, LLC | Master Services Agreement- direct sourcing for foreclosure and bankruptcy | The Florida Default Group |
| GMAC Mortgage Group, LLC | Addition to the SOW - Incident Escalation and Notification Guidelines - Change Order | The Florida Default Group |
| GMAC Mortgage Group, LLC | Ditech local phone service | Time Warner Telecom, Inc |
| GMAC Mortgage Group, LLC | License Agreement for Electronic Mortgage Forms Product | Walz Certified Mail Solutions |
| GMAC Mortgage Corporation | SOW A1- GMAC Bank Call Center Outsourcing Services | ICT Group Inc. |

| Debtor Entity | Contract Description | Supplier/Common Supplier - Counter Party |
|---|---|---|
| GMAC Mortgage, LLC | SOW for ResCap consumer lending outsourcing services with ISGN. SOW is added to the new MSA between Ally and ISGN. | ISGN Corporation |
| GMAC Mortgage, LLC | Third party Assignment Agreement between Securitas, Ally and Jones Lang Lasalle for Uniformed (unarmed) Security Guard Services | J.P. Morgan Chase Bank, N.A. |
| GMAC Mortgage Corporation | This amendment to change GMAC to Ally will allow for Securitas compliance with their own internal requirements. | Securitas Security Services USA, I |