**Hearing Date: November 19, 2012, 10:00 a.m. E.T.**
**Objection Deadline: October 1, 2012, 5:00 p.m. E.T.**
**(extended pursuant to agreement with the Debtors)**

Michael R. Carney
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Telephone:  (212) 402-9400
Facsimile:  (212) 402-9444
Email:  mcarney@mckoolsmith.com

Paul D. Moak
MCKOOL SMITH, P.C.
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone:  (713) 485-7300
Facsimile:  (713) 485-7344
Email:  pmoak@mckoolsmith.com

-and-

Kenton W. Hambrick
Associate General Counsel
Freddie Mac, M/S202
8200 Jones Branch Drive
McLean, Virginia 22102
Telephone:  (703) 903-2473
Facsimile:  (703) 903-3692
Email: kenton_hambrick@freddiemac.com

*Attorneys for Federal Home Loan Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
|  | ) |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
---------------------------------------------------------------

**FEDERAL HOME LOAN MORTGAGE CORPORATION'S OBJECTION TO**
**DEBTORS' PROPOSED ASSUMPTION AND ASSIGNMENT OF CERTAIN**
**EXECUTORY CONTRACTS AND RELATED CURE AMOUNTS**

# TABLE OF CONTENTS

Pages

INTRODUCTION ...................................................................................................................2

FACTUAL BACKGROUND ..................................................................................................4

OBJECTION ...........................................................................................................................5

    A.    The Debtors Fail to Identify with Specificity the Freddie
        Mac Contracts to be Assumed and Assigned to Nationstar.....................................5

    B.    The Debtors Impermissibly Seek to Bifurcate Origination
        and Servicing Obligations........................................................................................7

    C.    The Debtors Impermissibly Seek to Limit the Scope of
        Servicing Obligations to be Assumed and Assigned. ...........................................12

        1.    The Injunction against Enforcement of Servicing
            Obligations ...............................................................................................13

        2.    The Limitation of the Servicing Obligations
            Assigned to Nationstar ..............................................................................15

    D.    The Debtors Must Demonstrate Adequate Assurance of
        Future Performance..................................................................................................17

    E.    Nationstar Should Not be Permitted to Exclude Any
        Freddie Mac Contract Designated for Assumption and
        Assignment without Adequate Notice. ..................................................................19

    F.    Freddie Mac's Contracts Cannot be Assigned without
        Consent. ...................................................................................................................19

    G.    The Debtors' Proposed Cure Amounts are Inadequate.........................................20

RESERVATION OF RIGHTS ..............................................................................................21

CONCLUSION......................................................................................................................21

CERTIFICATE OF SERVICE .............................................................................................22

# TABLE OF AUTHORITIES

Page(s)

CASES

*Byrd v. Gardinier (In re Gardinier, Inc.),*
    831 F.2d 974 (11th Cir.1987) ...............................................................................9

*Christian v Christian,*
    42 N.Y.2d 63 (N.Y. 1977) ...................................................................................12

*DB Structured Products v. American Home Mortgage Holdings, Inc. (In re American*
    *Home Mortgage Holdings, Inc.),*
    402 B.R. 87 (Bankr. D. Del. 2009) ...............................................................8, 9, 10

*In re Embers 86th St., Inc.,*
    184 B.R. 892 (Bankr. S.D.N.Y. 1995) .................................................................18

*In re Fleming Cos.,*
    499 F.3d 300 (3d Cir. 2007) .................................................................................14

*In re Gen. Oil Distrib., Inc.,*
    18 B.R. 654 (Bankr. E.D.N.Y. 1982) ...................................................................18

*In re MF Global Holdings, Inc.,*
    466 B.R. 239 (Bankr. S.D.N.Y. 2012) ...................................................................8

*NLRB v. Bildisco & Bildisco,*
    465 U.S. 513 (1984) .............................................................................................20

*Residential Capital, LLC v. FHFA,*
    Case No. 12-5116 (S.D.N.Y. July 17, 2012) .......................................................15

*The Leslie Fay Cos., Inc. v. Corporate Prop. Assocs. 3 (In re The Leslie Fay Cos., Inc.),*
    166 B.R. 802 (Bankr. S.D.N.Y. 1994) ...................................................................8

STATUTES

12 U.S.C. § 4617(b)(11)(E) ..........................................................................................7, 17

12 U.S.C. § 4617(f) ............................................................................................................15

12 U.S.C. § 4617(j)(3) ....................................................................................................3, 19

Bankruptcy Code § 363 .........................................................................................................3

Bankruptcy Code § 365(b)(1) ....................................................................................20

Bankruptcy Code § 365(f) .........................................................................................13

Bankruptcy Code § 365(f)(1) ....................................................................................19

Bankruptcy Code § 502(a) ........................................................................................20

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3001(f) ..........................................................................................20

Federal Home Loan Mortgage Corporation in conservatorship ("Freddie Mac"),[1] by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Notice of (i) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (ii) Cure Amounts Related Thereto* [Dkt. No. 924] (the "Assignment and Cure Notice"), which was filed in connection with the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 For Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "Sale Motion") [Dkt. No. 61].  In support of its Objection, Freddie Mac respectfully states as follows:[2]

---

[1]     On September 6, 2008, the Director of the Federal Housing Finance Agency (the "FHFA") placed Freddie Mac into conservatorship pursuant to express authority granted under the Housing and Economic Recovery Act of 2008 ("HERA") to preserve and conserve Freddie Mac's assets and property.  This Objection does not constitute submission to this Court's jurisdiction by the FHFA.

[2]     In accordance with Assignment and Cure Notice ¶ 8, this Objection addresses only Freddie Mac's objections to the proposed assumption and assignment of contracts and related cure amounts; Freddie Mac reserves all of its objections related to the sale of substantially all the Debtors' assets, and Freddie Mac reserves the right to supplement this Objection to the extent the Debtors propose to assume and assign Freddie Mac contracts to a party other than Nationstar.

## INTRODUCTION

1.    The Debtors service more than 2.4 million mortgage loans with an aggregate unpaid principal balance ("UPB") of approximately $374 billion.[3]   Of these totals, the Debtors assert that they service approximately 370,000 mortgage loans with an aggregate UPB of approximately $59.8 billion for Freddie Mac.[4]

2.    The transfer of the Freddie Mac loan portfolio by the Debtors to a new servicer must be approved by Freddie Mac on terms acceptable to Freddie Mac and its conservator.  Due to the size of the loan portfolio at issue, it is imperative that any replacement servicer have the operational expertise and capability (as well as the financial wherewithal) to service the loans in accordance with the requirements of Freddie Mac's Single-Family Seller/Servicer Guide (the "Freddie Mac Guide") and the related Purchase Documents (as that term is defined in the Freddie Mac Guide).  Whether a proposed purchaser is sufficiently qualified to service Freddie Mac's loan portfolio is a determination made by Freddie Mac only after exacting due diligence and consultation with its conservator.  Recognizing the importance of Freddie Mac's right to approve servicers of loans that it owns, the Freddie Mac Guide only permits a servicing transfer with Freddie Mac's express consent.  Indeed, Freddie Mac's approval rights are acknowledged in the Nationstar Asset Purchase Agreement's requirement that closing of the proposed sale is predicated on obtaining various consents from Freddie Mac.[5]

3.    Freddie Mac has been working, and continues to work, with the Debtors and Nationstar Mortgage, LLC ("Nationstar") to evaluate Nationstar's qualifications, the proposed

---

[3]      *See Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, In Support of Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 6] (the "Whitlinger Affidavit") at ¶ 14.

[4]      *See Declaration of Joseph A. Pensabene in Support of Debtors' GA Servicing Motion, Non-GA Servicing Motion and Supplemental Servicing Motion* [Dkt. No. 256] at ¶ 13.

[5]      *See Nationstar Asset Purchase Agreement § 8.3(v).*

sale terms, and the anticipated post-closing terms of business between Freddie Mac and Nationstar. Neither Freddie Mac nor its conservator has approved the proposed transfer to Nationstar generally, nor has consent to the terms of the Nationstar Asset Purchase Agreement (the "Nationstar APA") been provided. To the contrary, Freddie Mac opposes the transfer as currently structured for several reasons.[6]

4.      As a threshold matter, the Debtors impermissibly seek to bifurcate a unitary, integrated contract that governs both origination and servicing of Freddie Mac loans and assign to Nationstar only those portions of the contract that the Debtors and Nationstar determine constitute the "Servicing Agreement" (as defined in the Nationstar APA). In addition to improperly severing the origination obligations from the servicing obligations, the Debtors compound the legal deficiencies in their Sale Motion by attempting to prune the servicing obligations to be assigned to Nationstar, expressly absolving Nationstar of certain servicing obligations in direct contravention of the applicable contract terms. Because the proposed assignment violates HERA as well as fundamental bankruptcy law precluding the division of integrated contracts, it fails to provide Freddie Mac with adequate assurance of future performance and cannot be approved as a matter of law.

5.      Finally, the Debtors' proposed cure amount ($0) fails to compensate Freddie Mac for defaults under the Freddie Mac contracts.

---

[6]      To the extent the Debtors propose to transfer the servicing of Freddie Mac mortgage loans through means other than the assumption and assignment of executory contracts, including, without limitation, pursuant to Bankruptcy Code § 363 or otherwise, such an involuntary transfer is a violation of 12 U.S.C. § 4617(j)(3), which applies to all property in Freddie Mac's conservatorship estate. Freddie Mac reserves all rights to object to any such transfer as part of an objection to the sale transaction. This Objection addresses only the assumption and assignment of Freddie Mac contracts and related cure amounts and should not be construed as a waiver of any other right of Freddie Mac or any right of its conservator to oppose the Debtors' transfer of mortgage servicing rights. *See* Assignment and Cure Notice at ¶ 8.

## **FACTUAL BACKGROUND**

6.      On July 26, 2012, the Debtors filed their Assignment and Cure Notice, which purports to identify thirty-two agreements with Freddie Mac that the Debtors propose to assume and assign to Nationstar.  Twenty-eight of the agreements were described as "Freddie Mac Master Agreement," while four were listed as "Interim Servicing Agreement -- US Mortgage Loans."  The schedules to the Assignment and Cure Notice, however, provide insufficient descriptions to permit Freddie Mac to identify the specific agreements in question—noticeably absent in each case was the contract date.

7.      In light of this ambiguity, Freddie Mac requested that the Debtors identify the contracts with greater specificity.  In response, the Debtors indicated that the original schedules to the Assignment and Cure Notice were erroneous and that they were seeking to assume and assign only four contracts with Freddie Mac (not including the Freddie Mac Master Agreement):

- An Interim Service Agreement, dated June 14, 2007, between Freddie Mac and GMAC Mortgage, LLC ("GMAC"), pursuant to which the Debtors service an estimated 556 Freddie Mac loans.

- A Tri-Party Agreement, dated August 10, 2011, among USAA Federal Savings Bank ("USAA"), GMAC, and Freddie Mac.

- Two Home Affordable Modification Program ("HAMP") agreements, dated September 27, 2010, and April 13, 2009 to which Fannie Mae, but not Freddie Mac, is a signatory.

Freddie Mac requested that the Debtors file an amended Assignment and Cure Notice to reflect the Debtors' intention with regard to the assumption and assignment of Freddie Mac contracts.

8.      On September 14, 2012, the Debtors filed their *First Supplemental Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (ii) Cure Amounts Related Thereto* [Dkt. No. 1459] (the "Supplemental Notice").  With regard to Freddie

Mac, the Supplemental Notice identifies only a "Freddie Mac Master Agreement," with an associated cure amount of $0.

9.      On September 18, 2012, the Debtors filed their *First Amended and Restated Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (ii) Cure Amounts Related Thereto* [Dkt. No. 1484] (the "First Amended Notice").  With regard to Freddie Mac, the First Amended Notice contains four separate entries entitled "Interim Servicing Agreement -- US Mortgage Loans," as well as a single entry for the "Triparty Agreement Among GMAC, Freddie Mac, and USAA."  No entry appears in the First Amended Notice designating the Freddie Mac Master Agreement.

10.     The First Amended Notice also provides that Nationstar may, until two business days prior to the sale closing date, exclude from assumption and assignment any of the contracts designated as an Assumed Contract.  *See* First Amended Notice at ¶ 18.

## OBJECTION

### A.     The Debtors Fail to Identify with Specificity the Freddie Mac Contracts to be Assumed and Assigned to Nationstar.

11.     The Debtors have failed to provide Freddie Mac with adequate notice of the Freddie Mac contracts that may be assumed and assigned to Nationstar.  The Debtors acknowledged to Freddie Mac that their original Assumption and Cure Notice, designating thirty-two Freddie Mac contracts, was fatally flawed and did not provide sufficient information to identify the contracts in question.  In an attempt to ameliorate this deficiency, the Debtors

subsequently filed their Supplement Notice, designating a "Freddie Mac Master Agreement."[7] Their First Amended Notice includes four references to an "Interim Servicing Agreement -- US Mortgage Loans" and the designation of the "Triparty Agreement Among GMAC, Freddie Mac, and USAA," but does not designate the Freddie Mac Master Agreement.

12.    Rather than clarifying the Debtors' intention regarding the assumption and assignment of Freddie Mac contracts, the Supplemental Notice and the First Amended Notice create additional ambiguity.  It is unclear whether the First Amended Notice supersedes the original Assignment and Cure Notice and the Supplemental Notice or simply supplements those notices.  To the extent the original Assignment and Cure Notice continues to be operative, however, the Debtors have acknowledged that it is erroneous and deficient, at least with regard to the designation of Freddie Mac contracts.  On the other hand, if the First Amended Notice supersedes the prior two notices, then the "Freddie Mac Master Agreement" is no longer a designated contract (which runs counter to the Debtors' representations to Freddie Mac). Additionally, the First Amended Notice includes four Interim Servicing Agreements, without providing any additional information (for example, the contract dates) by which Freddie Mac can identify the agreements in question.

13.    Accordingly, the Debtors have failed to identify with sufficient specificity the Freddie Mac agreements that they seek to assume and assign to Nationstar.  In the absence of clarity on this point, Freddie Mac is unable to determine what contract rights the Debtors are proposing to assign to Nationstar and, consequently, cannot fully assess the propriety of the proposed assumption and assignment.  The Court should decline to consider the Debtors' request

---

[7]    The Supplemental Notice also identifies two HAMP agreements with Fannie Mae.  It is unclear whether these are the same agreements that the Debtors separately identified as Freddie Mac agreements to be assumed and assigned to Nationstar.

to assume and assign any Freddie Mac contracts until the Debtors have provided sufficient notice

of the contracts at issue.

14.    Absent a clear and thorough statement of the Debtors' true intentions regarding

contract assumption and assignment, there can be no determination that the proposed transfer

satisfies the statutory requirements for disposition of assets under HERA.    To wit, any

disposition of Freddie Mac assets must (1) maximize the net present value return from the sale of

such assets, (2) minimize the amount of any loss to Freddie Mac, and (3) ensure adequate

competition and fair and consistent treatment of offerors.    *See* 12 U.S.C. § 4617(b)(11)(E).    The

Debtors have not shown that they have met such requirements.

**B.    The Debtors Impermissibly Seek to Bifurcate Origination and Servicing Obligations.**

15.    Notwithstanding the lack of clarity regarding which Freddie Mac contracts are at

issue, it appears that the Debtors are attempting to rewrite, and assign as rewritten, the Master

Agreement (the "Master Agreement"), dated as of July 22, 2011, between GMAC, Freddie Mac,

and Ally Bank.    The Debtors do not even address the statutory requirements for the disposition

of conservatorship estate assets under 12 U.S.C. § 4617.    In particular, the Debtors seek to sever

the Master Agreement's origination-related obligations and assign to Nationstar some, but not

all,[8] of the Master Agreement's servicing-related provisions.    Specifically, the Sale Motion

provides:

> The Nationstar Sale Approval Order will generally provide that, in
> cases where a Servicing Agreement is contained within the same
> writing as an agreement related to origination or loan sales, that the
> Debtors intend to assume and assign to Nationstar only the
> Servicing Agreement and that the originations and/or loan sale

---

[8]    As explained in Section C below, the Debtors seek to limit the scope of the servicing obligations to be assigned to Nationstar.

documents will be severed from the multi-agreement document
pursuant to the Sale Order.

*See* Sale Motion at ¶ 60.

16.     The Debtors' effort to sever the origination obligations from the Master

Agreement contravenes well-established bankruptcy law requiring that contracts be assumed and

assigned in their entirety, providing the non-debtor contract party with the full benefit of its

bargain.  As this Court has held:

> An executory contract may not be assumed in part and rejected in
> part. . . .  The trustee must either assume the entire contract, *cum
> onere*, or reject the entire contract, shedding obligations as well as
> benefits.

*In re MF Global Holdings, Inc.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) (internal citation

omitted); *see also, e.g., The Leslie Fay Cos., Inc. v. Corporate Prop. Assocs. 3 (In re The Leslie

Fay Cos., Inc.)*, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994) ("If an executory contract is

assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens.") (citing *NLRB

v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984)).

17.     In the face of overwhelming precedent for the general proposition that contracts

must be assumed or rejected in their entirety, the Debtors cite *DB Structured Products v.

American Home Mortgage Holdings, Inc. (In re American Home Mortgage Holdings, Inc.)*, 402

B.R. 87 (Bankr. D. Del. 2009) to support their efforts to bifurcate the Master Agreement.  Yet

*American Home* does not apply here.

18.     In *American Home,* the Bankruptcy Court noted that although contracts must

generally be assumed or rejected in their entirety, the parties had "stipulated that the Master

[Servicing and Selling] Agreement is nonexecutory . . . .  In other words, the parties agree that

[Debtor] has no material, unperformed obligations under the Master Agreement the non-

performance of which would constitute a material breach excusing [counterparty's] further performance." *Id.* at 93. There is no such stipulation here, and the Debtors do not dispute that the Master Agreement is executory. In addition, the Bankruptcy Court in *American Home* determined that, under New York law, "as with all contract interpretation, **severability is a question of the parties' intent**, to be determined from the language employed by the parties, viewed in light of the circumstances surrounding them at the time they contracted." *Id.* at 94 (emphasis added and quotation and citation omitted). The *American Home* Court then adopted a three-part test of severability under Florida law from the Eleventh Circuit in the case of *Byrd v. Gardinier (In re Gardinier, Inc.)*, 831 F.2d 974 (11th Cir.1987):

- First, whether the nature and purpose of the agreements are different;

- Second, whether the consideration for each agreement is separate and distinct; and

- Third, whether the obligations of each party to the instrument are interrelated.

*American Home,* 402 B.R. at 95.[9]

19.    The *American Home* court concluded that the parties' agreement contained different functions and that the consideration for those functions was separate and distinct. *Id.* at 95-96. The *American Home* court spent significant time analyzing the third part of the *Gardinier* test, whether the obligations were interrelated. *Id.* at 96-104. The *American Home* court concluded that the obligations of the parties were not interrelated, notwithstanding an indemnity provision, a cross-default provision and an anti-assignment provision, all of which have been

---

[9] The parties in *American Home* erroneously agreed that this three part test of severability from the 11th Circuit was the appropriate test to apply. *See American Home*, 402 B.R. at 95. The *Gardinier* test is based on Florida law, and does not appropriately credit the single most important factor, namely, the parties' intent with respect to severability. *See* ¶¶ 20 and 21, *infra*.

held not to prevent assumption and assignment under various provisions of the Bankruptcy Code and prevailing precedent.

20.     In sharp contrast to *American Home*, the parties here have specifically and expressly agreed that the Master Agreement is itself indivisible and is also part of a larger integrated contract.  Servicers that service mortgages owned by Freddie Mac must comply with the Purchase Documents, as defined in the Freddie Mac Guide to include the Master Agreement, the Freddie Mac Guide, Guide Bulletins, Guide Amendments, Guide Plus Additional Provisions, and any additional agreements the servicer enters into with Freddie Mac, including specific Terms of Business applicable to the business relationship between that party and Freddie Mac. The integrated nature of these documents is further evidenced by the Master Agreement's express incorporation of the Freddie Mac Guide.  *See* Master Agreement at 1 ("The Master Agreement incorporates the provisions of the Freddie Mac Single-Family Seller/Servicer Guide (the 'Guide'), and supplements the Guide.").  The Freddie Mac Guide expressly provides that it "governs the business relationship between a Seller and Freddie Mac relating to the sale and Servicing of Mortgages."[10]   Additionally, a seller must service all loans that it has sold to Freddie Mac and/or has agreed to service for Freddie Mac in accordance with the standards set forth in the seller's Purchase Documents.[11]

21.     In addition to the numerous provisions listed above, the Master Agreement and the Purchase Documents expressly integrate selling and servicing obligations in the context of servicing transfers.  The Freddie Mac Guide, which is incorporated into the Master Agreement, provides as follows:

---

[10]     *See* Freddie Mac Guide at 1.2(a)(1).

[11]     *Id*. at 1.2(a)(3).

-     53.7 <u>Assignment by the Seller or Servicer</u>.    The Seller or the Servicer further warrants and agrees not to assign, sell, convey, hypothecate, pledge or in any other way transfer, conditionally or otherwise, its interests, rights or obligations under the Purchase Documents except as expressly permitted in the Purchase Documents.

-     56.17 <u>Liabilities of the Transferor Servicer and the Transferee Servicer</u>.
  (a) Warranties.     Except as stated in the following paragraph,[12] for Transfer of Servicing requests received by Freddie Mac, the Transferee Servicer is liable to Freddie Mac for all sale and Servicing representations, covenants and warranties in the Purchase Documents with respect to the Mortgages and Real Estate Owned (REO) for which Servicing is transferred, whether or not the Transferor Servicer had such liability. . . .
  (b) Hold Harmless.    Transferor Servicer and the Transferee Servicer, jointly and severally, fully indemnify and agree to hold Freddie Mac, its successors and assigns, harmless from and against any and all losses, claims, demands, actions, suits, damages, costs and expenses (including reasonable attorney fees) of every nature and character that may arise or be made against or be incurred by Freddie Mac as a result of the Transferor Servicer's or the Transferee Servicer's failure to comply with applicable law or failure to comply with Freddie Mac's Servicing requirements as set forth in the Purchase Documents. . . .
  (c) Servicing.    The Transferee Servicer hereby agrees to service the Mortgages in accordance with the terms of the unitary, indivisible master Servicing contract comprising the Guide, applicable bulletins, applicable users' guides and any other applicable Purchase Documents, all of which are fully incorporated herein by reference.

Freddie Mac Guide §§ 53.7 and 56.17.

22.     These provisions evidence the parties' intent that the servicing and origination obligations not be severed.  They prohibit a transfer of servicing obligations without assumption of servicing *and origination-related* representations, covenants and warranties.  Thus, unlike the agreements at issue in *American Home*, in this case the Master Agreement, the Freddie Mac Guide, and the Purchase Documents constitute a fully integrated, indivisible agreement.  The Debtors can only assume and assign those agreements in their entirety, or not at all.

---

[12]     Omitted exceptions relate to loan purchase programs not applicable to the Debtors.

23.      *American Home* is further distinguishable because it is based on the Eleventh

Circuit's *Gardinier* test, which is not binding on this Court and should not be applied.   Under

New York law,[13] "whether a contract is entire or severable generally is a question of intention, to

be determined from the language employed by the parties, viewed in the light of the

circumstances surrounding them at the time they contracted." *Christian v Christian*, 42 N.Y.2d

63 (N.Y. 1977).   Under that test, the Debtors' attempt to sever the agreement must fail, because

the parties expressed a clear intent that their agreement be fully integrated and non-severable, as

described above.

### C.    The Debtors Impermissibly Seek to Limit the Scope of Servicing Obligations to be Assumed and Assigned.

24.      In addition to their attempt to improperly sever the origination-related obligations,

the Debtors also seek to further rewrite the Master Agreement and the Freddie Mac Guide by

absolving Nationstar from certain *servicing*-related obligations as well.   The Debtors seek to

limit Nationstar's future servicing obligations by (1) precluding contract counterparties from

asserting claims against Nationstar that relate to any pre-closing acts or omissions, even if

Nationstar's post-closing acts and omissions would give rise to a claim, and (2) specifically

---

[13]      With respect to inapplicability of the *Gardinier* test and the proper application of New York law, Freddie Mac hereby incorporates and joins in the argument of Fannie Mae in its objection to the Motion, under the heading "The Proper Test for Determining Whether the MSSC is Severable Under Applicable Law."   *See Objection of Fannie Mae to the Debtors' Motion and Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Non-Residential Real Property, and (II) Cure Amounts Related Thereto*.

The Freddie Mac Guide includes the following choice of law provision:

Governing Law

Each Purchase Contract or other contract for the Servicing of Mortgages must be construed, and the rights and obligations of the parties thereunder determined, according to the laws of the United States. The laws of the State of New York are deemed to reflect the laws of the United States when there is no applicable precedent and when to do so would not frustrate any provision of the Purchase Contract of other contracts for Servicing.

Freddie Mac Guide § 53.10.

defining the types of servicing obligations that Nationstar is assuming and eliminating all other

servicing obligations required by the applicable contract.    As shown above, each of these

limitations is not permitted by the Guide and should not be authorized by the Court.

### 1.    The Injunction against Enforcement of Servicing Obligations

25.    The Sale Motion seeks to enjoin contract parties (the "Injunction") from enforcing

certain servicing obligations against Nationstar:

> Nationstar is not assuming and parties will be enjoined from
> asserting against Nationstar any claims or obligations relating to
> the pre-closing period under any Assumed Contract, whether such
> claims or obligations are known, unknown, fixed, contingent,
> unliquidated or liquidated at the time of the Closing, including,
> without limitation, any claims or liabilities relating to any act or
> omission of any originator, holder or servicer of mortgage loans
> prior to the Closing Date, and any indemnification claims or
> liabilities relating to any act or omission of the Sellers or any other
> person prior to the Closing Date.  Any parties holding any such
> claims or obligations will be required to respond to the Debtors'
> cure notice if they disagree with the amounts set forth therein.

*See* Sale Motion at ¶ 60.

26.    The Debtors thus seek to assign to Nationstar the benefits of the servicing-related

provisions while releasing Nationstar from the obligation to perform servicing duties that can be

traced to any pre-closing "acts or omissions."    In addition to running afoul of the principles

requiring assumption and assignment of contracts in their entirety, this preclusion of liability also

fails to satisfy the requirement that Freddie Mac be provided adequate assurance of future

performance.    In fact, it expressly exempts Nationstar from future performance of certain

servicing obligations.

27.    Bankruptcy Code § 365(f) prohibits the Debtors from assuming and assigning a

contract absent "adequate assurance of future performance by the assignee of such contract."

The "adequate assurance" requirement of § 365(f)(2) is understood to require that the non-debtor

party to an assumed and assigned contract will receive the full benefit of its bargain.  *In re Fleming Cos.*, 499 F.3d 300, 305 (3d Cir. 2007) ("[A] bankruptcy court . . . must be sensitive to the rights of the non-debtor contracting party . . . and the policy that the non-debtor receive the full benefit of his or her bargain.").

28.    Assuming, *arguendo*, that this Court could issue such an injunction, it is difficult, if not impossible, to anticipate all of the future servicing obligations that the proposed Injunction would release Nationstar from performing.   By way of example, however, the Debtors, as servicers of Freddie Mac loans, are obligated to ensure that hazard insurance is maintained on mortgaged property.   Although it is not entirely clear, the proposed Injunction could, for example, potentially absolve Nationstar, as assignee, from the obligation to maintain hazard insurance in circumstances where the Debtors had failed to maintain it pre-closing, or the obligation to defend pre-closing foreclosure litigation.

29.    The Debtors attempt to avoid the legal mandates requiring the assumption and assignment contracts in their entirety and the provision of adequate assurance of future performance by couching the Injunction as an issue sounding in cure.  *See* Sale Motion at ¶ 60 ("Any parties holding any such claims or obligations will be required to respond to the Debtors' cure notice if they disagree with the amounts set forth therein.").   Yet cure payments do not insulate an assignee from its obligation of future performance.   To the contrary, the assignee's requirement to provide adequate assurance of future performance provides "needed protection to the non-debtor party because the assignment relieves the trustee and the bankruptcy estate from liability for breaches arising after the assignment."  *In re Fleming Cos.*, 499 F.3d 300, 305 (3d Cir. 2007) (citation omitted).  Nationstar cannot receive an assignment of the Master Agreement,

and all of its benefits, without also accepting all of the attendant obligations.  Accordingly, the proposed Injunction cannot be justified through the Debtors' payment of cure costs.

30.    The Debtors' proposed Injunction is also at odds with HERA § 4617(f), which provides that "no court may take any action to restrain or affect the exercise of powers or functions of the [FHFA] as a conservator or receiver." *See* 12 U.S.C. § 4617(f).  As Judge Cote recently held in dismissing for lack of jurisdiction the Debtors' action to enjoin FHFA from seeking discovery of non-debtor parties: "I am persuaded that the anti-injunction provision of HERA deprives this Court of jurisdiction to grant the relief that ResCap seeks . . . .  HERA's anti-injunction provision must be construed broadly to preclude judicial action of any kind that could impair the FHFA's ability to carry out its statutorily mandated function."  *See Residential Capital, LLC v. FHFA*, Case No. 12-5116 (S.D.N.Y. July 17, 2012) Hearing Tr. at 6 - 9.[14]

### 2.  The Limitation of the Servicing Obligations Assigned to Nationstar

31.    In addition to the limitations on Nationstar's future performance imposed by the Injunction, the Debtors seek to further limit Nationstar's obligations by specifically enumerating the types of servicing obligations that Nationstar is assuming regardless of whether a particular agreement imposes additional servicing duties.  *See* Proposed Sale Order [Dkt. 113-2] at ¶ P.[15]

---

[14] The transcript of this hearing is attached as Exhibit A to the *Supplement to July 17, 2012 Motion of the Federal Housing Finance Agency Pursuant to the July 11, 2012 Order of the Honorable Denise L. Cote Seeking Limited Discovery from the Debtors and, if Necessary to that Purpose, Relief from the Automatic Stay* dated July 17, 2012 [Docket No. 859].

[15]  Specifically, the paragraph P of the proposed sale order provides as follows:

> **Severability of Servicing Agreements**. The Servicing Agreements being assumed and assigned to the Purchaser pursuant to the Nationstar APA consist solely of enforceable contracts for providing servicing, subservicing or master servicing for Mortgage Loans. As used in this Order, "Other Agreements" means any right, obligation, representation, covenant or agreement (i) contained in a Servicing Agreement that is not related to (a) collections with respect to, or the administration or servicing or subservicing or master servicing of, or reporting in respect of, Mortgage Loans, (b) servicing fees or ancillary income, (c) the disbursement of collections with respect to Mortgage Loans, (d) the making of delinquency advances and servicing advances in connection with the servicing or subservicing or master servicing of Mortgage Loans, (e) payment

Nationstar's obligations (the "Servicing Limitations") under any Servicing Agreement (as

defined in the Nationstar APA) are defined to *exclude* any obligation that is not related to:

> (a) collections with respect to, or the administration or servicing or
> subservicing or master servicing of, or reporting in respect of,
> Mortgage Loans, (b) servicing fees or ancillary income, (c) the
> disbursement of collections with respect to Mortgage Loans, (d)
> the making of delinquency advances and servicing advances in
> connection with the servicing or subservicing or master servicing
> of Mortgage Loans, (e) payment of expenses associated with the
> administration, servicing or subservicing or master servicing of
> Mortgage Loans, (f) the limitation on liability of, and
> indemnification in favor of, the servicer, subservicer or master
> servicer thereunder, or (g) representations, warranties and
> covenants running in favor of the servicer, subservicer or master
> servicer thereunder . . . .

*Id.*

32.    Although the Servicing Limitations include several of the general obligations

imposed by Freddie Mac's Master Agreement and the Freddie Mac Guide, the list is far from

complete.  By way of example, the Servicing Limitations do not appear to even address

Nationstar's obligations regarding foreclosures of defaulted loans or the maintenance or

liquidation of REO.  Further, the Servicing Limitations would leave Freddie Mac without a

remedy for pre-closing servicing violations that result in losses realized post-closing. As

discussed above, the Master Agreement, the Freddie Mac Guide, and the related Purchase

---

of expenses associated with the administration, servicing or subservicing or master servicing of
Mortgage Loans, (f) the limitation on liability of, and indemnification in favor of, the servicer,
subservicer or master servicer thereunder, or (g) representations, warranties and covenants running
in favor of the servicer, subservicer or master servicer thereunder, or (ii) that relates to mortgage
loan origination, or the sale of mortgage loans, in all cases regardless of whether such Other
Agreement arises from, or is memorialized in, the same writing as a Servicing Agreement. The
Servicing Agreements do not include any Other Agreements, regardless of whether such Other
Agreements arise from, or are memorialized in, the same writing as the Servicing Agreements, and
to the extent any Servicing Agreement arises from, or is memorialized in, one or more writings
which include an Other Agreement, such Servicing Agreement is severable from any Other
Agreements. The Sellers are not assuming and assigning to the Purchaser and the Purchaser has no
Liability under any Other Agreement.

Documents comprise an integrated, unitary contract.[16]   The Debtors cannot cherry-pick provisions to be assigned to Nationstar and shed all other obligations.  By eliminating certain of Nationstar's servicing obligations, the Debtors ensure that Freddie Mac will not receive adequate assurance of future performance.  Such cherry-picking also violates the statutory requirement to minimize the amount of loss to Freddie Mac under 12 U.S.C. § 4617(b)(11)(E).

33.    In addition to the impermissible narrowing of Nationstar's servicing responsibilities, the Debtors' efforts to impose the Servicing Limitations also founders due to the lack of clarity regarding the provisions of Freddie Mac's contract that will be assigned to Nationstar.  The Debtors and Nationstar merely set forth a conceptual framework regarding the general categories of servicing provisions to be assigned to Nationstar, while failing to identify with particularity the provisions of Freddie Mac's contract that are proposed to be assumed and assigned.  This faulty construct places Freddie Mac in the untenable position of having to speculate regarding the contours of the rewritten agreement.  Without knowing the specific provisions that the Debtors intend to assign to Nationstar and those that they intend to excise, Freddie Mac is unable to identify, much less object to, the myriad ways in which the rewritten contract impacts Freddie Mac's and its conservator's rights.  The Debtors should not be permitted to affect rights in such an opaque and ill-defined manner.

**D.    The Debtors Must Demonstrate Adequate Assurance of Future Performance.**

34.    As noted above, the Bankruptcy Code requires that Nationstar provide Freddie Mac with adequate assurance of future performance.  For the reasons discussed previously, that burden cannot be satisfied as the proposed transaction is currently structured.  But even were the

---

[16]    *See* Freddie Mac Guide at 1.2(a)(3) ("All of a Seller's obligations to service Mortgages for Freddie Mac are considered to constitute, and must be performed pursuant to a unitary, indivisible master Servicing contract, and the Servicing obligations assumed pursuant to any contract to sell Mortgages to Freddie Mac are deemed to be merged into, and must be performed pursuant to, such unitary, indivisible master Servicing contract.").

parties to rectify the transaction's current deficiencies, Nationstar would nevertheless have to demonstrate its ability to perform its obligations.  In assessing adequate assurance, courts have considered, among other things, financial data submitted by the assignee, industry outlooks, the nature and relationship of the parties, the past dealings of the parties, and the willingness or ability of the parties to fund payments.  *See In re Embers 86th St., Inc.*, 184 B.R. 892, 902 (Bankr. S.D.N.Y. 1995); *In re Gen. Oil Distrib., Inc.*, 18 B.R. 654, 668 (Bankr. E.D.N.Y. 1982).

35.    Freddie Mac is currently engaged in discussions with Nationstar regarding its ability to service Freddie Mac's loan portfolio.  In the event that Nationstar fails to provide Freddie Mac with adequate assurance of its ability to perform its obligations, including assurances that it will assume liability for all selling and servicing representation, covenants and warranties in the Purchase Documents, Freddie Mac objects to approval of the Sale Motion.

36.    Under the Freddie Mac Guide, which is incorporated in the Master Agreement, Freddie Mac has the right to transfer servicing for cause (*i.e.*, without compensation) away from a servicer who has purported to assume a transferor servicer's servicing obligations without Freddie Mac's prior consent.[17]  This provision is critical to Freddie Mac and its conservator, as it affords Freddie Mac the necessary discretion to ensure high-quality servicing of its mortgages. Any assignment of servicing rights that purports to strip Freddie Mac of this right cannot provide Freddie Mac with adequate assurance of future performance because it would rob Freddie Mac

---

[17]    Freddie Mac Guide at § 56.3(e) provides as follows:

(e) Freddie Mac's rights.  Freddie Mac has the right to transfer Servicing for cause from any purported Transferee of Servicing including another Servicer that has purported to assume a Servicer's Servicing obligations without Freddie Mac's prior written approval. In addition, any such unauthorized transfer and assumption of Servicing constitute grounds for suspension or disqualification of both the Transferor Servicer and purported Transferee Servicer as Seller/Servicers.

12-12020-mg    Doc 1690    Filed 10/01/12    Entered 10/01/12 16:46:17    Main Document
Pg 23 of 26

of the agreed contractual remedy by which it can assure acceptable future performance of servicing obligations in servicing transfer situations.[18]

**E.    Nationstar Should Not be Permitted to Exclude Any Freddie Mac Contract Designated for Assumption and Assignment without Adequate Notice.**

37.    Pursuant to the First Amended Notice, Nationstar may, until two days prior to the sale closing date, exclude from assumption and assignment any contract previously designated as an Assumed Contract.  *See* First Amended Notice at ¶ 18.  Freddie Mac objects to this provision because it fails to provide Freddie Mac with the opportunity to oppose the potential election by Nationstar to exclude agreements that are part of Freddie Mac's unitary, indivisible contract.

**F.    Freddie Mac's Contracts Cannot be Assigned without Consent.**

38.    The Freddie Mac Guide specifically precludes assignment of a seller/servicer's obligations without Freddie Mac's express consent.[19]  The Debtors and Nationstar have recognized this limitation and have expressly made Freddie Mac's consent a condition to closing of the sale.  In the Sale Motion, however, the Debtors argue that consent requirements such as Freddie Mac's are unenforceable under Bankruptcy Code § 365(f)(1).  The Debtors ignore HERA § 4617(j)(3), which provides that "no property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency."[20]  This recently-enacted statute expresses Congress's intent that FHFA consent be required for any transfer of its property, such as the

---

[18]    It is unclear whether the Debtors' proposed assignment seeks to impair this right, but Freddie Mac wishes to make clear that it objects to any such impairment.

[19]    *See* Freddie Mac Guide at § 56.3 (providing that prior to the transfer of servicing, the transferor and the transferee "must obtain Freddie Mac's written approval of each Transfer of Servicing request before the transfer takes place.").

[20]    12 U.S.C. § 4617(j)(3).

contracts at issue here.   Freddie Mac disputes that the Debtors can assign Freddie Mac's

contracts without consent and reserves all rights to contest any efforts by the Debtors to do so.

### G.    The Debtors' Proposed Cure Amounts are Inadequate.

39.    Bankruptcy Code § 365(b)(1) makes clear that the Debtors cannot assume and

assign Freddie Mac contracts without first curing all defaults.   *See Bildisco*, 465 U.S. at 531

("Should the debtor-in-possession elect to assume the executory contract, however, it assumes

the contract *cum onere* and the expenses and liability incurred may be treated as administrative

expenses, which are afforded the highest priority on the debtor's estate").

40.    Freddie Mac objects to the Debtors' proposed $0 cure amount.   Freddie Mac is

continuing to calculate the amounts owed to it under the integrated contract proposed to be

assumed and assigned to Nationstar and reserves its right to supplement this Objection to seek

additional cure amounts, including those arising after the filing of this Objection.   At this time,

Freddie Mac estimates that, as of September 14, 2012, it is owed not less than approximately

$22,000,000 in cure payments, including performing loan fees, compensatory fees, and current

and projected repurchase obligations, as follows:[21]

---

[21]    These amounts are preliminary estimates of Freddie Mac's claims only.   Freddie Mac is in the process of analyzing and developing its claims.  Freddie Mac reserves the right to revise or supplement its claim in any manner it deems necessary to protect its interests.  Further, Freddie Mac objects to the requirement in the Assignment and Cure Notice that supporting documentation and evidence be submitted at this stage with respect to its Proposed Cure Amount. The deadline for filing of proofs of claim has not yet occurred, and even then the presumption is that such claims should be deemed allowed. Under section 502(a) of the Bankruptcy Code, a proof of claim "is deemed allowed, unless a party in interest objects." 11 U.S.C. § 502(a).  In addition, Bankruptcy Rule 3001(f) provides: "A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and the amount of the claim."

| Cure Amount Component | Estimated Amount Owed as of Sept. 14, 2012 |
|---|---|
| Performing Loans Fees | $            3,795.00 |
| Non Performing Loans Fees | $      12,020,937.35 |
| Loan Prospector Fees | $            132.50 |
| Seller Fees | $        32,938.93 |
| Outstanding Repurchase Obligations | $      7,450,947.00 |
| Representations and Warranties Obligations | $      2,431,174.00 |
| **Total Required Cure** | **$      21,939,924.78** |

## RESERVATION OF RIGHTS

41.     Freddie Mac reserves the right to supplement and amend this Objection, including to allege additional cure amounts or additional defaults under the applicable agreements or to raise additional objections to the assumption and assignment of any contract to which Freddie Mac is a counterparty or beneficiary.  Freddie Mac also reserves all objections and rights related to the sale of the Debtors' assets.

## CONCLUSION

For the reasons set forth above, Freddie Mac respectfully requests that the Court sustain Freddie Mac's objections and decline to approve the Debtors' request to assume and assign any Freddie Mac contract to Nationstar (or any other party).

Dated:  October 1, 2012

Respectfully submitted,

/s/ Michael R. Carney
Michael R. Carney
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Telephone:  (212) 402-9400
Facsimile: (212) 402-9444
Email:  mcarney@mckoolsmith.com

Paul D. Moak
MCKOOL SMITH, P.C.
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone:  (713) 485-7300
Facsimile: (713) 485-7344
Email:  pmoak@mckoolsmith.com

-and-

Kenton W. Hambrick,
Federal Home Loan Mortgage Corporation
8200 Jones Branch Drive - MS 202
McLean, Virginia  22102
Telephone: (703) 903-2640
Facsimile: (703) 903-3691

*Attorneys for Federal Home Loan Mortgage Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 1st day of October, 2012, I electronically filed the foregoing pleading with the Clerk of Court by using the Case Management/Electronic Case Filing ("CM/ECF") system which will send a notice of electronic filing, and I will complete service of the foregoing pleading as required by the Assignment and Cure Notice.

/s/ Michael R. Carney
Michael R. Carney