**EXHIBIT 1**

**<u>Scoliard Declaration</u>**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman Rosenbaum
Erica J. Richards

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- )
In re:                                                   )    Case No. 12-12020 (MG)
                                                         )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                 )    Chapter 11
                                                         )
                                    Debtors.             )    Jointly Administered
------------------------------------------------------- )

**DECLARATION OF JENNIFER SCOLIARD,
IN-HOUSE SENIOR BANKRUPTCY COUNSEL AT RESIDENTIAL CAPITAL, LLC,
IN SUPPORT OF DEBTORS' OBJECTION TO MOTION OF DEBORAH BOLLINGER
AND BRYAN BUBNICK FOR RELIEF FROM AUTOMATIC STAY AS TO
<u>GMAC MORTGAGE, LLC AND RESIDENTIAL CAPITAL, LLC</u>**

I, Jennifer Scoliard, declare as follows:

**A.    Background and Qualifications**

1.    I serve as In-House Senior Bankruptcy Counsel in the legal department

(the "**Legal Department**") at Residential Capital, LLC ("**ResCap**"), a limited liability company

organized under the laws of the state of Delaware and the parent of the other debtors and debtors

in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**").  I have been

ResCap's In-House Bankruptcy counsel since September 2010.  On October 1, 2012, I was

promoted to Senior Counsel.  Prior to September 2010, I served in various legal roles supporting

GMAC Mortgage, LLC from January 2008 to September 2010.  I joined ResCap in January

2008.

2.       In my role as In-House Senior Bankruptcy Counsel at ResCap, I am

responsible for the management of all non-routine bankruptcy litigation nationwide, including

contested bankruptcy matters.  However, as a result ResCap's Chapter 11 filing, my role has

significantly expanded to include assisting the Debtors and their professional advisors in

connection with the administration of the Chapter 11 cases, in addition to my litigation work.

Specifically, my expanded duties and responsibilities as to the Debtors' Chapter 11 cases

include, but are not limited to:  (i) frequently communicating with bankruptcy counsel, usually

daily, on various mortgage litigation and other matters; (ii) assisting bankruptcy counsel in the

analysis of and drafting of responses to motions for relief from stay, objections to various filings,

and motions critical to the functions of the Debtors' business; (iii) working with bankruptcy

counsel, other in-house attorneys and business personnel on bankruptcy issues impacting the

Debtors' business operations; and (iv) providing guidance to the Legal Department regarding

orders entered in this case, filings by other parties and the Chapter 11 process.

3.       I am authorized to submit this declaration (the "**Declaration**") in support

of the *Debtors' Objection To Motion of Deborah Bollinger and Bryan Bubnick for Relief from*

*Automatic Stay as to GMAC Mortgage, LLC and Residential Capital, LLC*, dated July 3, 2012

(the "**Objection**").[1]

4.       In my capacity as In-House Senior Bankruptcy Counsel, I am generally

familiar with the Debtors' litigation matters, including the Washington Action.  Except as

otherwise indicated, all statements in this Declaration are based upon my personal knowledge;

---

[1]  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

information supplied or verified by personnel in departments within the Debtors' various
business units; my review of the Debtors' litigation case files, books and records as well as other
relevant documents; my discussions with other members of the Legal Department; information
supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and
knowledge of the Debtors' litigation matters, financial condition and history. In making my
statements based on my review of the Debtors' litigation case files, books and records, relevant
documents, and other information prepared or collected by the Debtors' employees or
consultants, I have relied upon these employees and consultants accurately recording, preparing,
collecting, or verifying any such documentation and other information. If I were called to testify
as a witness in this matter, I would testify competently to the facts set forth herein.

**B.      Litigation Pending Against the Debtors**

5.      As of September 25, 2012, the Debtors by way of direct claims and
counter-claims are defendants, respondents, or are contractually obligated to defend third parties
in 1,940 pending litigation and contested foreclosure and bankruptcy matters filed in
jurisdictions all around the country. Approximately fifty-eight percent (58%) of these matters
concern either (i) defenses asserted in foreclosure, eviction or borrower bankruptcy proceedings
or (ii) title disputes, both of which are exempted from the automatic stay by the Supplemental
Servicing Order; fourteen percent (14%) of ResCap's pending litigation and contested
foreclosure and bankruptcy matters are not subject to the stay, notwithstanding the Supplemental
Servicing Order; twenty-five percent (25%) are stayed and three percent (3%) are still under
review for their status. Thus, approximately seventy-two percent (72%) of ResCap's pending
litigation and contested foreclosure and bankruptcy matters are not stayed and continue to
proceed in various jurisdictions across the country. This is in addition to the tens of thousands of
foreclosure actions and borrower bankruptcies the Debtors are parties to in actions pending

throughout the fifty states primarily managed by the Debtors' mortgage default group. Notwithstanding the application of the Supplemental Servicing Order, there are still a substantial number of cases –approximately 25% of 1,940 (or 489) cases – that are stayed by the automatic stay, including the Washington Action.

6.      In addition to the Washington Action, the Debtors are defendants in approximately thirty-eight (38) other putative or certified class actions pending in various forums across the United States.

### C.    The Washington Action

7.      Movants' claims consist solely of claims for monetary relief, which Movants have valued at between $71,758.00 and $5.83 million.  See **Exhibit A**, annexed hereto.

### D.    Lifting the Automatic Stay Will Interfere With the Chapter 11 Cases

8.      The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have a contractual obligation to defend.  The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial.  The Legal Department has been the primary

group tasked with assisting in the development and implementation of the Supplemental

Servicing Order.

9.      As a result of the Debtors' bankruptcy filings and the entry of the

Supplemental Servicing Order, the Legal Department's responsibilities have increased to include

(i) the review and analysis of individual claims as they arise in conjunction with internal business

personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability

of the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation

counsel and its mortgage default counsel regarding the application of the Supplemental Servicing

Order (and will continue to do so as new legal actions arise); (iii) assisting Chapter 11 counsel

with the preparation of various motions, responses to motions for relief from stay and other

Court filings,[2] as well as various bankruptcy related tasks; (iv) assisting Chapter 11 counsel and

internal business personnel with Chapter 11 reporting requirements; (v) assisting with pending

and anticipated discovery with respect to the 9019 Motion; (vi) assisting with matters pertaining

to the pending Asset Sales; and (vii) complying with the Examiner's investigation.  As the

Chapter 11 Cases proceed, the Legal Department will take an active role in the plan and

disclosure statement process.  These responsibilities are ongoing and will continue and no doubt

expand as these Chapter 11 Cases progress.

10.     Given the comprehensive and detailed role the Legal Department plays in

(i) the managing of the Debtors' litigation and contested foreclosure and bankruptcy matters;

(ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside

---

[2]     By way of example, the Legal Department had a significant role in the drafting of the motion to approve the
Supplemental Servicing Order and the interim Supplemental Servicing Order [Docket No. 181] and participated
in the negotiation of the final Supplemental Servicing Order.  The Legal Department also, *inter alia*, assisted in
the preparation of the Debtors' schedules and statement of financial affairs, their motion to approve ordinary
course professionals, and all of the responses to the motions for relief from the automatic stay, as well as other
motions filed to date.

litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy counsel and financial advisors with several tasks associated with the pending sales of the servicing platform, legacy assets, RMBS settlement and attendant litigation, not to mention the various motions and other filings in the Debtors' bankruptcy case, carrying out its ordinary course tasks while at the same time discharging its duties in the Chapter 11 Cases has been and will continue to be a monumental task. Permitting legal actions—particularly class actions— otherwise stayed by the Debtors' bankruptcy to proceed (not to mention allowing entirely new actions to be commenced), therefore, would create a significant burden on the Debtors by adding an additional workload of approximately 489 cases, diverting the Legal Department's and other critical employees' attention from the critical tasks of running the Debtors' businesses, and significantly increasing the Debtors' out-of-pocket legal costs.

11.    Moreover, a number of the Debtors' key personnel are likely to be called as witnesses in the trial, including Anne Janiczek (Chief Human Resources Officer), Ed Muscovitch (Director Underwriting/Credit Policy), Jillese Cobb (Human Resources Consultant), Bridgit Appel (Human Resources Manager), and Cathy Williams (Senior Vice President, Credit, Compliance and Regulatory Risk). The assistance of the Debtors' other human resources personnel will be required to prepare for the trial, even though they are unlikely to be called as witnesses. However, these same individuals will be critical in facilitating the transition of the Debtors' business to the new owner of their servicing and origination platforms, which is expected to occur early next year, the same period during which the trial is scheduled to be held. Their participation in what may be up to a three week trial in Washington State would impose a particular hardship on the Debtors' operations and their efforts to close the Asset Sales during a critical period. Because each of the potential witnesses are located in Pennsylvania, that

hardship would be compounded by the physical absence of those personnel that a trial in

Washington would require.

12.    Due to its size and complexity, litigation of the Washington Action

threatens to interfere with the administration of the Chapter 11 Cases on a much higher

magnitude than any single general liability claim.

**E.    The Interests of Judicial Economy and the Expeditious and Economical
Resolution of Litigation Weigh in Favor of Maintaining the Automatic Stay**

13.    The Washington Action was stayed with respect to the Debtor Defendants

shortly after entry by the Washington Court of judgments as to the parties' respective motions

for summary judgment that held that the claimants fall within the scope of the FLSA and deny

certain of Defendants' defenses.  Discovery is now complete.  However, the most significant

judicial expenditure—a trial during which (in addition to ruling on the liability, if any, of the

Defendants) the Washington Court would be required to assess the availability to the Defendants

of a good faith defense, whether the alleged violations were willful, and the amount of any

corresponding damages—has not yet been incurred.

14.    On May 30, 2012, notwithstanding the commencement of the Debtors'

Chapter 11 cases, the Washington Court granted the Movants' motion for partial summary

judgment on the issue of whether mortgage underwriters perform "administrative" work (and are

thus exempt from the FLSA and State of Washington overtime requirements), holding that

mortgage underwriters are not administrative employees because their work is "functional"

rather than "conceptual".  The Washington Court also denied Defendants' motion for partial

summary judgment on the issues of whether (i) the Defendants had a complete defense to

liability based on their good faith reliance on prior guidance from the Department of Labor,

(ii) whether a two-year rather than three-year statute of limitations applies to Movants' claims, and (iii) whether Movants may seek liquidated damages.

15.    In the event the Washington Court were to enter a judgment finding the Defendants liable, the determination of damages would require further proceedings on a variety of issues, including  (i) the number of hours per week worked by each of the 91 claimants during the applicable period, which could extend from 2006 through 2010; (ii) whether a two-year or three-year statute of limitations applies; (iii) whether Movants are entitled to liquidated damages; (iv) the appropriate metrics for calculating the claimants' rate of pay (i.e., whether to apply an assumed fixed 40-hour work week or a "fluctuating" work week).

**F.    The Washington Action Is Not Ready For Trial**

16.    Discovery is now complete, although Movants filed a motion on June 22, 2012 requesting a status conference regarding, among other things, a potential extension of the discovery deadline to allow Movants to conduct additional discovery regarding which Defendant was the plaintiffs' employer.  See **Exhibit B**, annexed hereto.  Putting aside the potential that discovery may be reopened, under the initial scheduling order entered in the Washington Action, the trial is not scheduled to begin until January 21, 2013, (see **Exhibit C**, annexed hereto), and actual trial preparations, including witness preparation, exhibit designations, motions in limine, and general trial preparations, have yet to be undertaken.

**G.    Relief from the Automatic Stay Would Not Result in a Partial or Complete Resolution of the Issues**

17.    If the stay were lifted, the Washington Action would still have to be litigated.  Although discovery is now complete, litigating the Washington Action to completion would still require the Debtor Defendants to prepare for and conduct a trial.  Accordingly, notwithstanding the relatively late stage of the proceedings, the burden on the Debtors that would

be imposed if they are required to defend themselves in the Washington Action is substantial in terms of time, financial resources, and attention.

18.     Based on estimates provided by local counsel representing the Debtors in the Washington Action, preparations for the trial in the Washington Action will result in out-of-pocket costs of approximately $100,000 to $175,000.  The trial itself could take up to three weeks, and cost an additional $400,000 to $550,000 in outside attorneys' fees and costs.  These amounts exclude the costs of any appeals that might be brought.

**H.     No Specialized Tribunal has Been Established to Hear the Washington Action**

19.     As far as I am aware, no specialized tribunal has been created to hear any of the claims involved in the Washington Action.  The Washington Action raises both federal and state law claims.

**I.     No Insurer has Assumed Responsibility for the Washington Action**

20.     While the Debtors have customary errors and omissions insurance coverage, that insurance does not provide coverage for the types of claims Movants assert against the Debtors.  In the vast majority of the cases, including the Washington Action, the Debtors pay their legal defense fees and costs out-of-pocket.  As a result, requiring the Debtors to defend the Washington Action will result in increased out-of-pocket defense costs, which based upon the Debtors' records for the year prior to the Petition Date averaged approximately $5.7 million per month.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Dated:  October 3, 2012

      /s/ Jennifer Scoliard
      Jennifer Scoliard
      In-House Senior Bankruptcy Counsel for
      Residential Funding, LLC

# <u>Exhibit A to Scoliard Declaration</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
NO. C10-1123 (RSM)

_____

DEBORAH BOLLINGER and BRYAN BUBNICK,  )
INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED  )
                                                         )
                        Plaintiffs,    )          UPDATED EXPERT REPORT OF
                                       )          PAUL SIEBRASSE
                                       )
v.                                     )          May 25, 2012
                                       )
RESIDENTIAL CAPITAL, LLC; GMAC MORTGAGE, LLC; AND )
ALLY FINANCIAL, INC.;                  )
                                       )
                        Defendants.    )
_____ )


## 1.    INTRODUCTION

I have been retained by Nichols Kaster, PLLP (hereinafter "Counsel") acting on behalf of and for the benefit of Plaintiffs, Deborah Bollinger, et al. ("Plaintiffs"), in the above styled case.  I am a Principal within McGladrey & Pullen, LLP's Litigation and Investigative Services practice in the Western Region.  I have been asked by Counsel to estimate the damages suffered by the Plaintiffs as a result of the actions of the Residential Capital, LLC; GMAC Mortgage, LLC; and Ally Financial, Inc. ("Defendants") as alleged in the Plaintiff's *Amended Class and Collective Action Complaint*[1] *("Complaint")* filed in this lawsuit.  My credentials are attached in the form of my curriculum vitae in Appendix A.  Appendix B provides a listing of the files I have relied upon to form my opinion(s).

I reserve the right to amend or supplement this report upon the receipt and review of any additional documentation or information that has not been produced as of the date of this report.  I may be called to testify at trial regarding documents produced and testimony taken after the date of this report.  I may also be called to testify in rebuttal to any matters or issues offered by the Defendants in this matter.

In testimony at trial, I may utilize, as exhibits, certain documents produced in this suit and/or described in Appendix B to this report.  I may also rely upon documents produced and testimony taken after the date of this report.  In addition, I may utilize appropriate exhibits in response to matters or issues presented by the Plaintiff in this action.

---

[1] *Amended Class and Collective Action Complaint*, dated November 23, 2011.

As of April 13, 2012, I provided a damage report. Since issuing that report, I have identified two necessary adjustments in my data analysis algorithm. First, for some plaintiffs, the analysis algorithm extended the Review Period (defined in Section 8) beyond February 15, 2010 – the date the Defendants re-classified the Plaintiff employees from exempt to non-exempt. All else equal, limiting the Review Period to include compensation periods no more recent than February 15, 2010 would lower the overall damage estimate.

Secondly, for some plaintiffs the data analysis algorithm excluded the earnings types identified as "regularly salary" from the calculation of overtime. All else equal, including "regular salary" amounts in the overtime calculations would increase the overall damage estimate.

Consequently, this report includes updated damage estimates after adjustments for these two algorithm changes.

## 2.    OVERVIEW OF ENGAGEMENT

My assignment was to estimate with a reasonable degree of economic certainty the pecuniary damages suffered by the Plaintiffs in this matter as a result of the alleged actions of the Defendants. The damages suffered by the Plaintiffs stem from the violations of the *Fair Labor Standards Act* ("FLSA"), as alleged in the Plaintiff's complaint.

I reserve the right to supplement this report if additional relevant information is provided to me, and if so requested by Counsel.

## 3.    EXPERT QUALIFICATIONS AND COMPENSATION

I am a Principal within McGladrey LLP's Litigation and Investigative Services practice in the Western Region. I have over twenty years of experience in managing and directing the analysis and forensic investigative efforts related to complex commercial litigation, insurance claims, business disputes, and valuation disputes. I have testified on numerous matters at deposition, trial, and arbitration as an expert. My curriculum vitae is presented in Appendix A.

McGladrey LLP's compensation is not contingent on any action or event resulting from the analyses, opinions or conclusions in, or the use of, this report. McGladrey LLP is being compensated for my work on this matter at an hourly rate of $465. Rates for personnel assisting me range from $145 to $375 per hour.

## 4.    PARTIES AND BACKGROUND[2]

Plaintiffs

Plaintiff Deborah Bollinger is a former employee of Defendants. Defendants employed Ms. Bollinger as a mortgage underwriter from approximately May 2000 through July 2008 in Defendants' Bellevue, Washington office, which operated under the Homecomings Financial name. Plaintiff Bryan Bubnick was also employed as a mortgage

---

[2] Information in this section is either cited or sourced from the *Amended Class and Collective Action Complaint*, dated November 23, 2011, pp. 2-6.

underwriter in the Defendant's Bellevue, Washington office from approximately November 2005 through October 2008.

Similarly situated individual Plaintiffs are those who, like Plaintiffs Bollinger and Bubnick, were, or are, employed by Defendants in mortgage underwriting and similar positions.

<u>Defendants</u>

Defendant Ally Financial Inc. ("Ally Financial") is a Delaware corporation doing business in, and maintaining offices in, several states throughout the United States. Ally Financial is a finance company that has been in business since 1919. Until May 2010, Ally Financial operated under the name "GMAC," or some variation thereof. In June 2009, GMAC LLC converted from a Delaware limited liability company to a Delaware corporation and began operating under the name GMAC Inc. In May 2010, GMAC Inc. changed its name to Ally Financial Inc. Despite the name changes that have occurred during the relevant time period, Ally Financial has continued to operate as the same entity.

Defendant Residential Capital, LLC ("ResCap") is a Delaware limited liability company doing business in, and maintaining offices in, several states throughout the United States. ResCap is a subsidiary of Ally Financial. At all times relevant herein, ResCap has operated Ally Financial's mortgage business. ResCap's operations included, among other subsidiaries, a mortgage brokerage company called Homecomings Financial. Through Homecomings Financial, ResCap operated in the State of Washington and in the Seattle metropolitan area.

Defendant GMAC Mortgage, LLC ("GMAC Mortgage") is a Delaware limited liability corporation doing business in, and maintaining offices in, several states throughout the United States. GMAC Mortgage is an indirect, wholly-owned subsidiary of Ally Financial. GMAC Mortgage serves as Ally Financial's mortgage lending unit. At all times relevant herein, GMAC Mortgage operated in the State of Washington and in the Seattle metropolitan area.

Generally, according to the Plaintiffs' complaint filed in this matter, this case is a collective action filed to recover unpaid overtime compensation as defined in the FLSA. Plaintiffs allege they are due unpaid overtime compensation because they worked more than 40 hours in some weeks and Defendants had incorrectly classified them as "exempt" employees, meaning they were not paid overtime as prescribed in the FLSA.

## 5.    FAIR LABOR STANDARDS ACT

The Fair Labor Standards Act establishes minimum wage, overtime pay, recordkeeping, and child labor standards affecting full-time and part-time workers in the private sector and in Federal, State, and local governments.  The Wage and Hour Division ("WHD") of the U.S. Department of Labor ("DOL") administers and enforces the FLSA with respect to private employment, State and local government employment, Federal employees of the Library of Congress, U.S. Postal Service, Postal Rate Commission, and the Tennessee Valley Authority.

## 6.    DAMAGES METHODOLOGY AND BASIS

Damages suffered by the Plaintiffs stem from the alleged unpaid overtime as a result of each being incorrectly categorized as an employee exempt from FLSA. Accordingly, based on the information provided to me, I have

estimated the amount of remuneration which has remained unpaid to the Plaintiffs based on a certain set of assumptions

*Databases*

The Defendants provided three separate databases ("Databases") of information pertaining to its individual employees containing pay period (either biweekly or monthly), pay amount (by type, e.g. regular earnings, paid time off, etc.), and other information.[3] Because the Plaintiffs were allegedly misclassified as exempt employees, the Defendants were unable or unwilling to produce data on how many hours each Plaintiff worked in a given period (e.g. work day, week, month, etc.).

In a guide to the FLSA, overtime calculations are based on a workweek being "a period of 168 hours during 7 consecutive 24-hour periods."[4] As such, I had to employ certain assumptions in order to estimate the Plaintiffs alleged remunerations in a manner consistent with the FLSA. These assumptions are detailed in a following section.

## 7. CLASS

According to Counsel, the class contains 91 individual Plaintiffs.  Of the 91 Plaintiffs, the Databases provided by the Defendants contained 88 unique Plaintiff litigants.[5]

In preparing our estimates of damages and in order to determine the relevant class size, I have assumed, at the guidance of Counsel, 20 separate employees 7-day work period overtime scenarios, i.e., 41 hours, 42 hours, 43 hours, and, so forth, through a total of 60 hours for a 7-day work period.

## 8. DAMAGES CALCULATIONS ASSUMPTIONS

My damage estimates are based on 20 damage scenarios in which each Plaintiff worked 41, 42, 43, and, so forth, through a total of 60 hours for a 7-day work period.  The assumptions for calculating the total damages are summarized as follows:

- The Plaintiffs worked 40 hours or more during a 7-day work period.
- For compensation data presented over a bi-weekly period, I assumed all compensation was earned evenly over the two week pay period. For example, if the data indicated that a Plaintiff earned $2,500 over a bi-weekly period, I assumed the Plaintiff earned $1,250 each week ($2,500 divided by 2 weeks = $1,250 per week).
- For compensation data presented over a monthly period, I assumed all compensation was earned evenly over the number of working days in the associated month. For example, if the data indicated that a Plaintiff earned $6,000 in November of 2008, I assumed the Plaintiff earned $286 per day given that November 2008 contained 21 working days ($6,000 divided by 21 days = approximately $286 per day).

---

[3] The three databases were provided to me in an Excel format.

[4] *Handy Reference Guide to the Fair Labor Standards Act*, US Wage and Hour Division, US Department of Labor, WH Publication 1282, Revised September 2010, p. 13.

[5] The Databases contain a total of 89 unique names.  However, one individual in the Databases, Kari M. Hudson, is not a class member according to Counsel.

- I reconstituted the compensation data into 7-day work periods beginning on January 5, 2007 through February 15, 2010 ("Reviewed Period"). Not every Plaintiff earned compensation in every 7-day work period during the Reviewed Period.
- The Databases contained many different earnings descriptions. For purposes of estimating possible overtime remunerations, I classified each description as either being "regular" or "commission/incentive pay". Appendix C contains a detailed listing of this classification.
- The Plaintiffs worked more than 40 hours during a 7-day work period, but no more than 60 hours in a 7-day work period.
- For the regular earnings calculation, each Plaintiff's hourly rate was calculated on a 7-day work period basis by dividing the sum of all regular earnings for a particular 7-day period by 40 hours. If the implied hourly rate for a particular 7-day period was over $74.34, I ignored this period as an anomaly and did not include in the damage estimate.[6] The hours each Plaintiff worked in a 7-day period over 40 hours (based on the 20 scenarios) were multiplied by 1.5 times the Plaintiff's implied hourly wage for a given 7-day period.
- For the commission/incentive pay calculation, each Plaintiff's hourly rate was calculated for each 7-day work period by dividing the sum of all commission/incentive pay for a particular 7-day period by the number of the hours defined by each scenario, which ranged from 41 to 60 hours.[7] If the implied hourly rate was greater than the upper bound (defined as two standard deviations from the mean hourly wage), I ignored this 7-day period as an anomaly and did not include in the damage estimate. The hours each Plaintiff worked in a 7-day period over 40 hours were multiplied by 0.5 times the Plaintiff's implied hourly wage for a given 7-day period.

## 9.    SUMMARY OF RESULTS

Exhibit 1 presents a summary of my damage calculations for the twenty scenarios based on the assumptions discussed previously. As shown, total unpaid compensation in each scenario differs based on the amount of additional time assumed under each scenario.

In addition, "[a]ny employer who violates the provisions…of [the Fair Labor Standards Act of 1938] shall be liable to the employee or employees affected…[of] an additional equal amount as liquidated damages."[8] This suggests that for every dollar awarded to an employee as unpaid compensation, the court may award an additional dollar to an employee as liquidated damages. Exhibit 2 presents the associated amounts of unpaid compensation and liquidated damages for each of the twenty scenarios.

---

[6] $74.34 per hour is two standard deviations greater than the mean implied hourly wage of $16.66 per hour. Approximately 99 percent of implied hourly wages are below $74.34 per hour. I assumed that any wage rate above this upper bound is an anomaly and, therefore, excluded it from my analysis.

[7] Since the implied hourly rate in these scenarios is variable as the implied commission/incentive pay wage rate is calculated based on total hours worked, the upper bound is not constant but is still calculated as two standard deviations greater than the mean implied hourly wage. Approximately 94 percent of implied hourly wages are below this upper bound and any wage rates above this upper bound is assumed to be an anomaly and, therefore, excluded.

[8] § 216(b) of the Fair Labor Standards Act of 1938, As Amended.

*Expert Report of Paul Siebrasse*                                                        *May 25, 2012*

This report was prepared with information available to me at this time. If additional information becomes available and is significant to the analysis, or if Counsel requests that I conduct further assignments, I may supplement this report.

Yours truly,

Paul Siebrasse, Principal
McGladrey LLP



APPENDIX A
Curriculum Vitae of Paul Siebrasse

## Paul Siebrasse



Principal
Litigation and Investigation Services
McGladrey & Pullen, LLP
Minneapolis, MN
paul.siebrasse@mcgladrey.com
612.376.9575

## Summary of Experience

Paul Siebrasse is Principal overseeing the business valuation and litigation support services at McGladrey LLP. As one of the group's leader, Paul directs the development of project damage calculations and business valuations for litigation. When necessary, Paul provides expert testimony. His services are in the following two practice areas of the law:

- Commercial law: breach of contract damage calculations on litigated breach, intellectual property and intangible asset valuations, business valuation for disputed claims (shareholder and transactional), business interruption damage assessment, business valuation for mergers and acquisitions, and business valuation for insurance purposes.

- Civil law: wrongful death damage assessment and lost wages, wrongful discharge damage assessment and lost wages, personal injury assessment and lost wages, discovery and lost profits, and disputed claim discovery and valuations.

## Industry Specialization

- Health care
- Agriculture
- Distribution
- Manufacturing

- Professional services
- Construction
- Retail
- Financial institutions

## Professional Affiliations and Credentials

- American Society of Appraisers
  - o Accredited Senior Appraiser (ASA)
  - o Former local chapter president and vice president
- Member of the National Association of Forensic Economics
- Adjunct professor at two educational institutions, where he taught microeconomics

## Education

- Bachelor of Science in business, Montana State University
- Masters of science in applied economics, Montana State University

## Speaking Engagements

5/24/11: RSM McGladrey sponsored webinar: *Mergers in Health Care – Making Sense of the Mayhem*

5/18/11: RSM McGladrey's 15th Annual Large Clinic Group Conference – presented *Healthcare Merger and Acquisition Integration*, also served as associated panel facilitator and co-panelist with Greg Cooper, MD, Chief Medical Officer of Mercy Medical Group and Fred Ford, Sr. VP of Sisters of Mercy Health System

3/4/11: Weil, Gotshal & Manges LLP: *Daubert Challenges Against Experts*

1/30/11: RSM McGladrey sponsored webinar: *Recent Developments in Reasonably Royalty Damages*

11/30/10: RSM McGladrey sponsored webinar: *Common Mistakes to Avoid in Calculating Lost Profits in Breach of Contract Matters*

9/15/10: RSM McGladrey sponsored webinar: *Valuing Customer Lists and Non-Compete Agreements*

9/23/09: 2009 Upper Midwest Capital Connection, sponsored by the Association of Corporate Growth, Minneapolis, Minnesota: *Manufacturing and Wholesale Distribution Strategies For A Challenging Economy*

6/8/08: The American Institute of Certified Public Accountants' First Annual Fair Value Conference, Chicago, Illinois: *Auditors Are From Mars, Valuation Specialists Are From Venus – How Auditors and Valuation Specialists Can Learn to Live in Harmony*

9/16/08: McGladrey & Pullen, LLP, Irvine, California: *Fair Value Issues in Audits*

8/19/08: McGladrey & Pullen, LLP, Chicago, Illinois: *Fair Value Issues in Audits*

7/9/08: McGladrey & Pullen, LLP, Washington, DC: *Fair Value Issues in Audits*

11/3/07: The Caux Round Table Corporate Academy: *Economic and Business Valuation Issues in the Corporate Board Room*

9/27/07: Printing Industry of Minnesota: *Valuation Issues in Succession Planning*

9/25/07: Leonard, Street & Deinard Law Firm: *S-Corporation Valuation issues*

4/13/07: The Caux Round Table Corporate Academy: *Economic and Business Valuation Issues in the Corporate Board Room*

2/20/07: RSM McGladrey's CFO Club: *Driving Shareholder Value*

1/31/07: 17th Annual Business Valuation Conference, University of St. Thomas Center for Business Excellence: *Business Valuation Case Review*

5/4/05: 15th Annual Business Valuation Conference, University of St. Thomas Center for Business Excellence: *Unique Valuation Assignments* – panel participant

1/15/04: 13th Annual Business Valuation Conference, Excess earnings

9/9/03: Dorsey & Whitney Law Firm: *S-Corporation Valuation Issues*

6/25/03: Faegre & Benson Law Firm: *Family Limited Partnership Valuation Issues*

6/10/03: Rider Bennett Law Firm: Family Limited Partnership Valuation Issues

**Following are the cases in which Paul provided expert testimony:**

- *Estate of Mary Spiegl, et al. v. Franciscan Villa of South Milwaukee, Inc. et al.*
  Wisconsin Circuit Court
  2011 - Milwaukee County Case Number: 2010CV020174
  Testified as expert – engaged by plaintiff's counsel

- *Thomas E. Laird v. RBC Capital Markets, Inc., et al.*
  FINRA Arbitration
  2011 - FINRA Arbitration Number: 10-01502
  Testified as expert – engaged by claimant's counsel

- *Hanson v. Loparex, Inc. and Loparex, LLC*
  United States District Court, District of Minnesota
  2011 – Court File Number: 09-CV01070
  Testified as expert – engaged by defendant's counsel

- *StyleMark, Inc. v. HIG Personal Optics Investment Corp, et al.*
  American Arbitration Association, Miami, Florida
  2010 – Arbitration No. 32 181 Y 00012 09
  Testified as expert – engaged by claimant's counsel

- *WINS Occupational Health Services, LLC v. Henry Schein, Inc., et al.*
  State of Wisconsin, Circuit Court, Eau Claire County, Branch 2
  2009 – Case Number: 06-CV-714
  Testified as expert – engaged by defendant's counsel

- *In re: Vicom Systems, Inc. – Chapter 11, Case No. 03-42605*
  United States Bankruptcy Court for the Northern District of California
  2004 – Testified as an expert – engaged by counsel of minority shareholder

- *Spokane Tent and Awing, Inc. v. Sonoco Products Company*
  United States District Court, Eastern District of Washington
  2001 – Case Number:  00-CS-371-RHW

- *AgGrow Oils, LLC v. National Union Fire Insurance Company, Ibberson Engineering, Inc. and Anderson International Corp*
  United States District Court, District of North Dakota, Southern Division
  2001 – Civil Number: A3-99-26
  Testified as expert – engaged by defendant's counsel

- *Williams insurance Agency, et al. v. South Dakota State Medical Holding Company, et al.*
  South Dakota District Court
  2000 – Case Number:
  Testified as expert – engaged by defendant's counsel

- *Butwinick and Nelson v. Minnesota Oncology Hematology, PA*
  Minnesota District Court
  1999 – Case Number: 27-CV-97-003625
  Testified as expert – engaged by plaintiff's counsel

- *St. Jude Medical, Inc., SJM Europe, Inc. St. Jude Medical Europe, Inc. v. Lifecare International, Inc.,
  and Tony Dow*
  United States District Court, District of Minnesota
  1999 – Case Number: 97-CV-02667-RHK-FLN
  Testified as expert – engaged by defendant's counsel

APPENDIX B

Document List

- Fair Labor Standards Act of 1938, As Amended

- Order Granting FLSA Conditional Certification.pdf

- Plaintiffs' Motion for FLSA Conditional Certification.pdf

- Protective Order.pdf

- Bellevue Opt Ins 01 10 12(F).xls

- Bollinger Payroll Request 2.2012(F).xls

- Employee Histories.xls

- Job Title Clarification.xls

- Job Title Summary.xls

- Payment Histories.xls

- Bollinger v. Residential Capital_Opt-in Dates.xlsx

- *Amended Class and Collective Action Complaint, dated November 23, 2011.*

- All Publicly-Available Financial Information, as accessed through Capital IQ, A Standard and Poor's Business

- U.S. Department of Labor, U.S. Wage and Hour Division, Fact Sheet #22, available at http://www.dol.gov/whd/regs/compliance/whdfs22.pdf

## APPENDIX C

## Earnings Description Classification

| Earnings Type | Classification | Earnings Type | Classification |
|---|---|---|---|
| Overtime Earn for Incentive | Excluded | OT 1.41 | Excluded |
| 1 7th Party Sick Pay Taxable | Excluded | OT 1.42 | Excluded |
| 2 2nd Party Sick Pay Taxable | Excluded | OT 1.43 | Excluded |
| 3rd Party Sick Pay Non-Taxable | Excluded | OT 1.44 | Excluded |
| 3rd Party Sick Pay Taxable | Excluded | OT 1.45 | Excluded |
| Additional Regular | Regular | OT 1.46 | Excluded |
| Banked - Salary | Excluded | OT 1.47 | Excluded |
| BEREAVEMENT | Excluded | OT 1.48 | Excluded |
| Bonus | Commission/Incentive Pay | OT 1.49 | Excluded |
| Bonus Discretionary | Excluded | OT 1.5 | Excluded |
| Bonus Overtime Adj | Excluded | OT 1.50 | Excluded |
| BONUS-SPOT | Commission/Incentive Pay | OT 1.51 | Excluded |
| Commission GM Direct | Commission/Incentive Pay | OT 1.6 | Excluded |
| Commissions | Commission/Incentive Pay | OT 1.7 | Excluded |
| Discretionary Bonus | Excluded | OT 1.8 | Excluded |
| Ditech Commissions | Commission/Incentive Pay | OT 1.9 | Excluded |
| Dock | Excluded | Overtime | Excluded |
| Exempt Bonus | Commission/Incentive Pay | Overtime Adjustment | Excluded |
| Exempt Regular Bonus | Commission/Incentive Pay | Overtime Earn for Incentive | Excluded |
| Exempt Regular Hours | Excluded | Overtime Straight Time | Excluded |
| Family Medical Leave | Excluded | PAID ABSENCE | Excluded |
| FLSA OT | Excluded | Paid Time Off | Excluded |
| GMAC Pay Advance | Regular | Partner Sabbatical Leave | Excluded |
| Holiday - Salary | Excluded | Performance Bonus | Commission/Incentive Pay |
| Holiday Pay | Excluded | PR PD FLSA OT | Excluded |
| HOLIDAY WRK @ 1.5 | Excluded | PR PD INCENTIVE PY | Commission/Incentive Pay |
| HOLIDAY WRK @ 1.6 | Excluded | PR PD OT @ 1.5 | Excluded |
| INCENTIVE PAY | Commission/Incentive Pay | PR PD REGULAR | Regular |
| JURY/CIVIC DUTY | Excluded | PTO | Excluded |
| Lightning Award | Commission/Incentive Pay | PTO - Salary | Excluded |
| MISSED MEAL &BREAK | Excluded | PTO TOPUP | Excluded |
| One Week Lag | Excluded | Referral Bonus | Commission/Incentive Pay |
| OT 1.10 | Excluded | Regular | Regular |
| OT 1.11 | Excluded | Regular Earnings | Regular |
| OT 1.12 | Excluded | REGULAR HOURLY | Regular |
| OT 1.13 | Excluded | Release of Claims | Excluded |
| OT 1.14 | Excluded | Retro | Regular |
| OT 1.15 | Excluded | Retroactive Overtime | Excluded |
| OT 1.16 | Excluded | RETRO-SALARIED | Regular |
| OT 1.17 | Excluded | REWARDS | Commission/Incentive Pay |
| OT 1.18 | Excluded | Salaried OT A | Excluded |
| OT 1.19 | Excluded | Salaried Overtime | Excluded |
| OT 1.20 | Excluded | Severance | Excluded |
| OT 1.21 | Excluded | Short Term Disability | Excluded |
| OT 1.22 | Excluded | Spot Bonus | Commission/Incentive Pay |
| OT 1.23 | Excluded | STD LEAVE @ 100% | Excluded |
| OT 1.24 | Excluded | STD LEAVE @ 66.67% | Excluded |
| OT 1.25 | Excluded | STD LEAVE @ 75% | Excluded |
| OT 1.26 | Excluded | Sum of Bonus Earns | Commission/Incentive Pay |
| OT 1.27 | Excluded | Sum of COM Earns | Commission/Incentive Pay |
| OT 1.28 | Excluded | Sum of Ditech COM Earns | Commission/Incentive Pay |
| OT 1.29 | Excluded | Sum of GM Direct COM Earns | Commission/Incentive Pay |
| OT 1.30 | Excluded | Sum of Hrly Reg Earns | Regular |
| OT 1.31 | Excluded | Sum of OT Adj Earns | Excluded |
| OT 1.32 | Excluded | Sum of OT Earns | Excluded |
| OT 1.33 | Excluded | Sum of Pac Rep COM Earns | Commission/Incentive Pay |
| OT 1.34 | Excluded | Sum of PTO Earns | Excluded |
| OT 1.35 | Excluded | Sum of Reg Earns2 | Regular |
| OT 1.36 | Excluded | Sum of Total Amount_Value | Excluded |
| OT 1.37 | Excluded | Taxable Cash/Gift | Excluded |
| OT 1.38 | Excluded | Unpaid Leave | Excluded |
| OT 1.39 | Excluded | Wages in Lieu of notice | Excluded |
| OT 1.40 | Excluded | Warn Act 1 | Excluded |

# BOLLINGER, ET AL VS. RESIDENTIAL CAPITAL, LLC; ET AL
# SUMMARY OF TIME DATA MODEL
# EXHIBIT 1

---

## Assumptions for Damages

---

Using available data, created 7-day work periods beginning January 5, 2007 through February 15, 2010
Used regular and non-discretionary bonus earnings to calculate the implied hourly wage (See Appendix C for detail)
Excluded shifts where the implied hourly wage was greater than two standard deviations from the mean implied hourly wage ($74.34 per hour)
Combined the three provided databases through a Union

---

## Summary of Damages

---

| | 2-Year Consent Period | 3-Year Consent Period |
|---|---|---|
| Total number of Identified Employees Within Consent Filing Period | | 91 |
| Total number of Identified Employees Within Payroll Databases | | 89 |
| Total number of Identified Employees That Received Compensation | 57 | 88 |
| Total Compensation Paid to Employees | $ 2,627,594.62 | $ 5,409,497.22 |

---

## Summary of Calculations (1)

---

| Estimated Unpaid Overtime Compensation from Regular Earnings | [A] | | |
|---|---|---|---|
| Total time worked per 7-day work period: | | | |
| 41 hours | | $ 69,774.94 | $ 142,756.61 |
| 42 hours | | 139,549.88 | 285,513.22 |
| 43 hours | | 209,324.81 | 428,269.83 |
| 44 hours | | 279,099.75 | 571,026.43 |
| 45 hours | | 348,874.69 | 713,783.04 |
| 46 hours | | 418,649.63 | 856,539.65 |
| 47 hours | | 488,424.56 | 999,296.26 |
| 48 hours | | 558,199.50 | 1,142,052.87 |
| 49 hours | | 627,974.44 | 1,284,809.48 |
| 50 hours | | 697,749.38 | 1,427,566.09 |
| 51 hours | | 767,524.31 | 1,570,322.69 |
| 52 hours | | 837,299.25 | 1,713,079.30 |
| 53 hours | | 907,074.19 | 1,855,835.91 |
| 54 hours | | 976,849.13 | 1,998,592.52 |
| 55 hours | | 1,046,624.06 | 2,141,349.13 |
| 56 hours | | 1,116,399.00 | 2,284,105.74 |
| 57 hours | | 1,186,173.94 | 2,426,862.35 |
| 58 hours | | 1,255,948.88 | 2,569,618.95 |
| 59 hours | | 1,325,723.81 | 2,712,375.56 |
| 60 hours | | 1,395,498.75 | 2,855,132.17 |

---

Note:
(1) Both the 2-Year and 3-Year Consent Period damage estimates include amounts for the 3 plaintiffs for which compensation data was not available.
    In these instances, the damages were based on the average per plaintff damages.

# BOLLINGER, ET AL VS. RESIDENTIAL CAPITAL, LLC; ET AL
# SUMMARY OF TIME DATA MODEL
# EXHIBIT 1

**Summary of Calculations (1)**

| Estimated Unpaid Overtime Compensation from Commission Earnings | [B] | | | |
|---|---|---|---|---|
| Total time worked per 7-day work period: | | | | |
| 41 hours | $ | 1,983.44 | $ | 4,306.35 |
| 42 hours | | 3,872.43 | | 8,407.63 |
| 43 hours | | 5,673.56 | | 12,318.15 |
| 44 hours | | 7,392.82 | | 16,050.93 |
| 45 hours | | 9,035.67 | | 19,617.80 |
| 46 hours | | 10,607.09 | | 23,029.59 |
| 47 hours | | 12,111.64 | | 26,296.20 |
| 48 hours | | 13,553.51 | | 29,426.70 |
| 49 hours | | 14,936.52 | | 32,429.43 |
| 50 hours | | 16,264.21 | | 35,312.04 |
| 51 hours | | 17,539.83 | | 38,081.61 |
| 52 hours | | 18,766.39 | | 40,744.66 |
| 53 hours | | 19,946.67 | | 43,307.22 |
| 54 hours | | 21,083.23 | | 45,774.87 |
| 55 hours | | 22,178.46 | | 48,152.78 |
| 56 hours | | 23,234.58 | | 50,445.77 |
| 57 hours | | 24,253.64 | | 52,658.31 |
| 58 hours | | 25,237.56 | | 54,794.55 |
| 59 hours | | 26,188.13 | | 56,858.37 |
| 60 hours | | 27,107.01 | | 58,853.40 |

| Estimated Unpaid Overtime Compensation from All Earnings | C= [A + B] | | | |
|---|---|---|---|---|
| Total time worked per 7-day work period: | | | | |
| 41 hours | $ | 71,758.38 | $ | 147,062.95 |
| 42 hours | | 143,422.31 | | 293,920.85 |
| 43 hours | | 214,998.37 | | 440,587.98 |
| 44 hours | | 286,492.57 | | 587,077.36 |
| 45 hours | | 357,910.36 | | 733,400.84 |
| 46 hours | | 429,256.72 | | 879,569.24 |
| 47 hours | | 500,536.21 | | 1,025,592.46 |
| 48 hours | | 571,753.01 | | 1,171,479.57 |
| 49 hours | | 642,910.95 | | 1,317,238.90 |
| 50 hours | | 714,013.58 | | 1,462,878.13 |
| 51 hours | | 785,064.14 | | 1,608,404.31 |
| 52 hours | | 856,065.64 | | 1,753,823.97 |
| 53 hours | | 927,020.86 | | 1,899,143.13 |
| 54 hours | | 997,932.36 | | 2,044,367.39 |
| 55 hours | | 1,068,802.53 | | 2,189,501.91 |
| 56 hours | | 1,139,633.58 | | 2,334,551.51 |
| 57 hours | | 1,210,427.58 | | 2,479,520.65 |
| 58 hours | | 1,281,186.44 | | 2,624,413.50 |
| 59 hours | | 1,351,911.94 | | 2,769,233.93 |
| 60 hours | | 1,422,605.76 | | 2,913,985.57 |

Note:

(1) Both the 2-Year and 3-Year Consent Period damage estimates include amounts for the 3 plaintiffs for which compensation data was not available.
In these instances, the damages were based on the average per plaintff damages.

# BOLLINGER, ET AL VS. RESIDENTIAL CAPITAL, LLC; ET AL
# LIQUIDATED DAMAGES
## EXHIBIT 2

| Summary of Calculations (1) | | | Liquidated Damages | | Sum of Damages | |
|---|---|---|---|---|---|---|
| | [A] | | [B] | | [C] = [A] + [B] | |
| **Estimated Unpaid Overtime Compensation** | | | | | | |
| Total time worked per 7-day work period: | | | | | | |
| 41 hours | $ 71,758.38 | $ 147,062.95 | $ 71,758.38 | $ 147,062.95 | $ 143,516.75 | $ 294,125.91 |
| 42 hours | 143,422.31 | 293,920.85 | 143,422.31 | 293,920.85 | 286,844.61 | 587,841.69 |
| 43 hours | 214,998.37 | 440,587.98 | 214,998.37 | 440,587.98 | 429,996.75 | 881,175.96 |
| 44 hours | 286,492.57 | 587,077.36 | 286,492.57 | 587,077.36 | 572,985.14 | 1,174,154.72 |
| 45 hours | 357,910.36 | 733,400.84 | 357,910.36 | 733,400.84 | 715,820.72 | 1,466,801.69 |
| 46 hours | 429,256.72 | 879,569.24 | 429,256.72 | 879,569.24 | 858,513.43 | 1,759,138.49 |
| 47 hours | 500,536.21 | 1,025,592.46 | 500,536.21 | 1,025,592.46 | 1,001,072.41 | 2,051,184.92 |
| 48 hours | 571,753.01 | 1,171,479.57 | 571,753.01 | 1,171,479.57 | 1,143,506.01 | 2,342,959.14 |
| 49 hours | 642,910.95 | 1,317,238.90 | 642,910.95 | 1,317,238.90 | 1,285,821.91 | 2,634,477.80 |
| 50 hours | 714,013.58 | 1,462,878.13 | 714,013.58 | 1,462,878.13 | 1,428,027.17 | 2,925,756.25 |
| 51 hours | 785,064.14 | 1,608,404.31 | 785,064.14 | 1,608,404.31 | 1,570,128.29 | 3,216,808.61 |
| 52 hours | 856,065.64 | 1,753,823.97 | 856,065.64 | 1,753,823.97 | 1,712,131.29 | 3,507,647.93 |
| 53 hours | 927,020.86 | 1,899,143.13 | 927,020.86 | 1,899,143.13 | 1,854,041.72 | 3,798,286.26 |
| 54 hours | 997,932.36 | 2,044,367.39 | 997,932.36 | 2,044,367.39 | 1,995,864.72 | 4,088,734.77 |
| 55 hours | 1,068,802.53 | 2,189,501.91 | 1,068,802.53 | 2,189,501.91 | 2,137,605.06 | 4,379,003.82 |
| 56 hours | 1,139,633.58 | 2,334,551.51 | 1,139,633.58 | 2,334,551.51 | 2,279,267.17 | 4,669,103.02 |
| 57 hours | 1,210,427.58 | 2,479,520.65 | 1,210,427.58 | 2,479,520.65 | 2,420,855.16 | 4,959,041.30 |
| 58 hours | 1,281,186.44 | 2,624,413.50 | 1,281,186.44 | 2,624,413.50 | 2,562,372.88 | 5,248,827.00 |
| 59 hours | 1,351,911.94 | 2,769,233.93 | 1,351,911.94 | 2,769,233.93 | 2,703,823.89 | 5,538,467.87 |
| 60 hours | 1,422,605.76 | 2,913,985.57 | 1,422,605.76 | 2,913,985.57 | 2,845,211.53 | 5,827,971.14 |

Notes:
(1) Source: Exhibit 1

# Exhibit B to Scoliard Declaration

THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
WASHINGTON

| | |
|---|---|
| DEBORAH BOLLINGER and BRYAN BUBNICK, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>       v.<br><br>RESIDENTIAL CAPITAL, LLC; GMAC MORTGAGE, LLC; and ALLY FINANCIAL, INC.,<br><br>              Defendants. | CASE NO.  C10-1123 (RSM)<br><br>PLAINTIFFS' MOTION FOR SETTING OF STATUS CONFERENCE<br><br>NOTE ON MOTIONS CALENDAR: July 6, 2012 |

Plaintiffs Deborah Bollinger and Bryan Bubnick ("Plaintiffs") hereby request that the Court set a status conference[1] to address issues that have arisen since the recent bankruptcy filings of Defendants Residential Capital, LLC and GMAC Mortgage, LLC (the "bankrupt Defendants"), and the Notice of Bankruptcy and Effect of Automatic Stay filed by the bankrupt Defendants on June 1, 2012.  (ECF No. 153.)  A status conference is needed to address two issues.  First, although the third Defendant in this case, Ally Financial, Inc. ("Ally Financial"), has not filed for bankruptcy, Ally Financial has indicated that it will take the position that this

---

[1] Plaintiffs only request a status conference as to Defendant Ally Financial, Inc., who has not filed for bankruptcy, and is not referenced in or subject to the Notice of Bankruptcy and Effect of Automatic Stay.  (*See* ECF No. 153.)  Plaintiffs do not request any participation from, or any judicial action as to, the bankrupt Defendants at this time.

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

case should be stayed as to *all* Defendants.  Plaintiffs disagree.  Second, Ally Financial has also

indicated, for the first time, that it intends to argue that it is not Plaintiffs' "employer" for the

purposes of liability under the Fair Labor Standards Act and Washington wage and hour law,

despite its written representations to Plaintiffs earlier in the lawsuit that it would not contest the

issue.  Conveniently, Ally Financial's attempts to avoid completing discovery and appearing at

trial come just weeks after the Court granted Plaintiffs' motion for summary judgment,

eliminating each of the company's defenses to liability.  (*See* ECF No. 152.)  The background

relevant to Plaintiffs' request for a status conference, and an outline of the issues that require

the Court's attention, are set forth below.

## **RELEVANT BACKGROUND**

1.    Plaintiffs filed this action on July 9, 2010.  (ECF No. 1 (Compl.).)  Plaintiffs and

other mortgage underwriters were uniformly misclassified by Defendants as "exempt" and

denied overtime under the Fair Labor Standard Act and Washington wage and hour laws.  (*Id.*)

On January 5, 2011, the Court denied Defendants' motion to dismiss, and granted Plaintiffs'

motion for conditional class certification.  (ECF No. 58.)  Notice of the lawsuit was sent to the

members of the putative FLSA collective, (ECF No. 69), and approximately 91 current and

former mortgage underwriters have joined the case.

2.    On June 21, 2011, at the Court's request, the parties submitted a Revised Joint

Status Report and Discovery Plan.  (ECF No. 96.)  The Court subsequently issued an Order

Setting Trial Date & Related Dates.  (ECF No. 99.)  Under the Order, discovery is to be

completed by July 16, 2012.  (*Id.*)  Trial is set for January 21, 2013.  (*Id.*)

3.    The parties filed cross-motions for summary judgment in January and February

2012.  (*See* ECF Nos. 125, 137.)  On May 30, 2012, the Court granted Plaintiffs' motion for

summary judgment in full, and denied Defendants' motion for summary judgment in full.

(ECF No. 152.)

PLAINTIFFS' MOTION FOR SETTING OF STATUS CONFERENCE - 2
CASE NO. 2:10-CV-01123 RSM

**NICHOLS KASTER LLP**
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

4.      Two days later, on June 1, 2012, Defendants Residential Capital, LLC and GMAC Mortgage, LLC filed a Notice of Bankruptcy and Effect of Automatic Stay.  (ECF No. 153.)  Defendant Ally Financial has not filed for bankruptcy, and is not referenced in the Notice of Bankruptcy and Effect of Automatic Stay.  (*See id.*)

5.      On June 5, 2012, Plaintiffs contacted counsel for Defendants to request a meeting to discuss the status of the case as to Ally Financial.  Counsel conferred by telephone on June 7, 2012.  On the phone call, counsel for Defendants informed Plaintiffs that Defendants' position is that the stay in this matter applies to Defendant Ally Financial in addition to the bankrupt Defendants.

6.      Counsel for Defendants confirmed their position on the stay in another phone call on June 20, 2012.  In addition, on that phone call, counsel for Defendants informed Plaintiffs, for the first time, that they intend to take the position that Ally Financial is not an "employer" of Plaintiffs and the opt-in Plaintiffs under the Fair Labor Standards Act and Washington wage and hour law.  This position, if Defendants intend to maintain it, is directly contrary to written representations that Defendants made to Plaintiffs in discovery.  In particular, on February 22, 2012, Defendants confirmed by letter that ". . . *Defendants will not take the position in this litigation that the named Defendants in this lawsuit did not employ the mortgage underwriters.*"  (Ex. A (D. Golder letter dated 2/22/2012) (emphasis added).)  This concession was made by Defendants to resolve an outstanding issue regarding whether the entities named in the Complaint—Ally Financial, Residential Capital, and GMAC Mortgage—are Plaintiffs' "employers" for purpose of the Fair Labor Standards Act, and to avoid unnecessary discovery and motion practice on the issue.  (*See, e.g.*, Ex. B (R. Schug letter dated 12/15/2011).)

1    **REQUEST FOR STATUS CONFERENCE**

2        In light of these issues, Plaintiffs request a status conference to address the following:

3        1.        Whether Defendant Ally Financial intends to take the position that this case

4    should be stayed as to Ally Financial, a non-bankrupt codefendant, and, if so, to set a briefing

5    schedule so that the issue can be resolved as quickly as possible.  *See, e.g.*, *Queenie, Ltd. v.*

6    *Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) ("[A] suit against a codefendant is not

7    automatically stayed by the debtor's bankruptcy filing.").

8        2.        Whether Defendant Ally Financial intends to contradict its previous concession

9    that Ally Financial is an employer of Plaintiffs and the opt-in Plaintiffs, and, if so, whether the

10   Court should extend the discovery deadline for further discovery concerning this issue in light

11   of the prejudice caused to Plaintiffs due to Defendants' previous representation that they would

12   not dispute the "employer" issue in this lawsuit. (*See* Ex. A.)

13       For all of the reasons set forth herein, Plaintiffs respectfully request that the Court order

14   a status conference in the above-referenced matter.

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR SETTING OF STATUS CONFERENCE - 4
Case No. 2:10-CV-01123 RSM

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

DATED this 22nd day of June, 2012.

NICHOLS KASTER, LLP

By: /s/ Robert L. Schug, *Admitted Pro Hac Vice*
     Paul J. Lukas, *Admitted Pro Hac Vice*
     Email: lukas@nka.com
     Matthew C. Helland, *Admitted Pro Hac Vice*
     Email: helland@nka.com
     Robert L. Schug, *Admitted Pro Hac Vice*
     Email: rschug@nka.com
     One Embarcadero Center, Suite 720
     San Francisco, California 94111
     Telephone: (415) 277-7235
     Facsimile: (415) 277-7238

     Beth E. Terrell, WSBA # 26759
     Email: bterrell@tmdlegal.com
     TERRELL MARSHALL & DAUDT PLLC
     3600 Fremont Avenue North
     Seattle, Washington 98103
     Telephone: 206.816.6603
     Facsimile: 206.350.3528

     *Attorneys for Plaintiff and Putative Class Members*

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
TEL. 415.277.7235 • FAX 415.277.7238

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

**CERTIFICATE OF SERVICE**
Bollinger v. Residential Capital, LLC.
Court File No. 2:10-cv-01123-RSM

I hereby certify that on June 22, 2012, I caused the above Plaintiffs' Motion for Setting of Status Conference to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

| | | |
|---|---|---|
| Beth E. Terrell | bterrell@tmdlega.com | bkinsey@tmdlegal.com |
| | enordby@tmdlegal.com | filing@tmdlegal.com |
| Paul J. Lukas | lukas@nka.com | |
| Robert L. Schug | rschug@nka.com | |
| Matthew C. Helland | helland@nka.com | assistants@nka.com |
| David R Golder | golderd@jacksonlewis.com | curleyc@jacksonlewis.com |
| | votert@jacksonlewis.com | |
| Paul DeCamp | decampp@jacksonlewis.com | |
| Peter H Nohle | nohlep@jacksonlewis.com | baker-browns@jacksonlewis.com, |
| | daviesj@jacksonlewis.com | prestona@jacksonlewis.com |
| William J Anthony | anthonyw@jacksonlewis.com | |

DATED this 22nd day of June, 2012.

NICHOLS KASTER LLP


By:  s/Robert L. Schug
     Robert L. Schug, CABA #249640
     Email:  rschug@nka.com
     One Embarcadero Center, Suite 720
     San Francisco, CA 94111
     P: 415.277.7235
     F: 415.277.7238

CERTIFICATE OF SERVICE - 1
CASE NO. 2:10-CV-01123 RSM

NICHOLS KASTER LLP
One Embarcadero Center, Suite 720
San Francisco, California  94111
TEL. 415.277.7235 • FAX 415.277.7238

# Exhibit A



| | Jackson Lewis LLP | ALBANY, NY | DETROIT, MI | MILWAUKEE, WI | PORTLAND, OR |
| | 90 State House Square | ALBUQUERQUE, NM | GREENVILLE, SC | MINNEAPOLIS, MN | PORTSMOUTH, NH |
| | 8th Floor | ATLANTA, GA | HARTFORD, CT | MORRISTOWN, NJ | PROVIDENCE, RI |
| | Hartford, Connecticut 06103 | BALTIMORE, MD | HOUSTON, TX | NEW ORLEANS, LA | RALEIGH-DURHAM, NC |
| Attorneys at Law | Tel 860 522-0404 | BIRMINGHAM, AL | INDIANAPOLIS, IN | NEW YORK, NY | RICHMOND, VA |
| | Fax 860 247-1330 | BOSTON, MA | JACKSONVILLE, FL | NORFOLK, VA | SACRAMENTO, CA |
| | www.jacksonlewis.com | CHICAGO, IL | LAS VEGAS, NV | OMAHA, NE | SAN DIEGO, CA |
| | | CINCINNATI, OH | LONG ISLAND, NY | ORANGE COUNTY, CA | SAN FRANCISCO, CA |
| | | CLEVELAND, OH | LOS ANGELES, CA | ORLANDO, FL | SEATTLE, WA |
| | | DALLAS, TX | MEMPHIS, TN | PHILADELPHIA, PA | STAMFORD, CT |
| | | DENVER, CO | MIAMI, FL | PHOENIX, AZ | WASHINGTON, DC REGION |
| | | | | PITTSBURGH, PA | WHITE PLAINS, NY |

EMAIL: GOLDERD@JACKSONLEWIS.COM

February 22, 2012

**VIA ELECTRONIC MAIL**
Robert L. Schug
Nichols Kaster LLP
One Embarcadero Center, Suite 720
San Francisco, California 94111

                Re:     Bollinger et al v. Residential Capital et al.
                          Civil Case No.: 2:10-cv-01123 (RSM)

Dear Robert:

        This letter is our formal response to your correspondence of December 15, 2011 regarding the corporate defendants in this case. As our answer to the amended complaint avers, the following corporate entities have employed mortgage underwriters from 2006 to 2010: Home Comings Financial LLC, GMAC Mortgage LLC, GMAC Wholesale Mortgage Corp, GHS Mortgage LLC, and GMAC Bank (collectively "the Companies"). As you know, we have previously engaged in good faith discussions about this issue during which I conveyed to you that Defendants will not take the position in this litigation that the named Defendants in this lawsuit did not employ the mortgage underwriters. In addition, I have conveyed to you that, to the best of our knowledge, the two putative class lists we sent you during this litigation include every mortgage underwriter who worked during the relevant time period as a mortgage underwriter for the Companies.

        This letter should resolve this issue. If you have any further questions, please do not hesitate to contact me.

                        Very truly yours,
                        JACKSON LEWIS LLP

                        David R. Golder

cc:    William J. Anthony, Esq.
       Peter Nohle, Esq.

# Exhibit B



Robert L. Schug                One Embarcadero Center
Direct: (415) 277-7285         Suite 720
(415) 277-7238                 San Francisco, CA 94111
rschug@nka.com                 (877) 777-0622

December 15, 2011

**VIA U.S. MAIL AND E-MAIL**

David R. Golder
Jackson Lewis LLP
90 State House Square, 8th Floor
Hartford, Connecticut 06103-3708
GolderD@jacksonlewis.com

Peter H. Nohle
Jackson Lewis LLP
600 University Street, Suite 2900
Seattle, WA 98101
NohleP@jacksonlewis.com

Re:    **Bollinger et al. v. Residential Capital et al.**
       **Civ. No. 2:10-cv-01123 RSM**

David and Peter,

I am writing regarding Defendants' Answer to Plaintiffs' Amended Complaint. As you know,
your Rule 30(b)(6) witness provided testimony last month that GMAC Mortgage, LLC employed
all of the underwriters at issue in this case during the relevant timeframe. Based on this
testimony, Plaintiffs amended the Complaint to add GMAC Mortgage, LLC as a
Defendant.  Now, in their Answer, Defendants appear to be denying their own testimony, and
claiming that Plaintiffs were employed by several different companies. This is troubling for a
number of reasons.  Among them, Defendants refused to respond to Plaintiffs' interrogatory
asking for the identification of all corporate entities that employed underwriters, citing the fact
that a collective class had not yet been certified.  Subsequently, pursuant to the Court's order,
Defendants produced the class list of "all mortgage underwriters who are, or were, employed by
Defendants ...."  (E.g., ECF No. 65.)  Defendants have never asserted that they did not employ
the individuals on the lists that were produced. Later, your Rule 30(b)(6) witness for the first
time claimed that GMAC Mortgage, LLC was the employer, and produced a made-for-litigation
organizational chart that her testimony was based on. You have refused to produce the true
charts. As set forth above, we amended the Complaint in reliance on that testimony. Now,
Defendants claim that several companies are the employer, some of which were omitted from the
chart provided to Plaintiffs at the deposition.

My hope is that there has been some sort of miscommunication between you and your client, and
that Defendants have not been deliberately engaging in gamesmanship on this issue. To resolve

Page 2

this, I propose that the parties enter into a stipulation that the entities currently named in the
Amended Complaint were the employers of Plaintiffs for purposes of the FLSA and Washington
law. Please get back to me  on this by Friday, December 23, 2011 so Plaintiffs can determine
whether we need to take another Rule 30(b)(6) deposition, take additional discovery, or involve
the Court.


                    Sincerely,


                    Robert L. Schug

# **Exhibit C to Scoliard Declaration**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH BOLLINGER and BRYAN
BUBNICK, individually and on behalf of all
others similarly situated,

                 Plaintiffs,

      v.

RESIDENTIAL CAPITAL, LLC and ALLY
FINANCIAL, INC.,

           Defendants.

Case No. C10-1123RSM

ORDER SETTING TRIAL
DATE & RELATED DATES

| | |
|---|---|
| **TRIAL DATE** | January 21, 2013 |
| Deadline for joining additional parties | November 18, 2011 |
| Motion for class certification due<br>    and noted on the Court's calendar for the fifth Friday<br>    thereafter | January 19, 2012 |
| Reports from expert witnesses under FRCP 26(a)(2) due | April 13, 2012 |
| All motions related to discovery must be noted on the motion<br>    calendar no later than the Friday before discovery closes<br>    pursuant to CR7(d)(3) or CR37(a)(2)(B) | |
| Discovery on class certification | January 4, 2012 |
| Discovery completed by | July 16, 2012 |
| All dispositive motions must be filed by<br>    and noted on the motion calendar no later than the<br>    fourth Friday thereafter (see CR 7(d)) | October 18, 2012 |
| Mediation per CR 39.1(c)(3) held no later than | December 14, 2012 |

ORDER SETTING TRIAL DATE & RELATED DATES - 1

All motions in limine must be filed by                               December 20, 2012
   and noted on the motion calendar seven judicial days
   thereafter pursuant to CR7(d)(2)

Agreed pretrial order due                                            January 9, 2013

Pretrial conference to be scheduled by the Court

Trial briefs, proposed voir dire questions, proposed              January 16, 2013
   jury instructions, and trial exhibits due

Length of Trial: 10-15 days                                       Jury XXX

These dates are set at the direction of the Court after reviewing the joint status report and discovery plan submitted by the parties. All other dates are specified in the Local Civil Rules. If any of the dates identified in this Order or the Local Civil Rules fall on a weekend or federal holiday, the act or event shall be performed on the next business day. These are firm dates that can be changed only by order of the Court, not by agreement of counsel or the parties. The Court will alter these dates only upon good cause shown: failure to complete discovery within the time allowed is not recognized as good cause.

If the trial date assigned to this matter creates an irreconcilable conflict, counsel must notify Lowell Williams or Laurie Cuaresma, in-court deputy clerks, at 206-370-8521, within 10 days of the date of this Order and must set forth the exact nature of the conflict. A failure to do so will be deemed a waiver. Counsel must be prepared to begin trial on the date scheduled, but it should be understood that the trial may have to await the completion of other cases.

ELECTRONIC FILING

Counsel is required to electronically file all documents with the Court. Documents filed electronically are instantly filed and the court has instant access to review and consider pleadings. For any document exceeding fifty (50) pages in length, a courtesy copy shall be delivered to the Clerk's Office, marked "Chambers Copy."

COOPERATION

As required by CR 37(a), all discovery matters are to be resolved by agreement if

ORDER SETTING TRIAL DATE & RELATED DATES - 2

1  possible. Counsel are further directed to cooperate in preparing the final pretrial order in the

2  format required by CR 16.1, except as ordered below.

3  <center>EXHIBITS</center>

4  The original and one copy of the trial exhibits are to be delivered to chambers five days

5  before the trial date. Each exhibit shall be clearly marked. Exhibit tags are available in the

6  Clerk's Office. Duplicate documents shall not be listed twice: once a party has identified an

7  exhibit in the pretrial order, any party may use it. Each set of exhibits shall be submitted in a

8  three-ring binder with appropriately numbered tabs.

9  <center>SETTLEMENT</center>

10  Should this case settle, counsel shall notify the Deputy Clerk as soon as possible.

11  Pursuant to GR 3(b), an attorney who fails to give the Deputy Clerk prompt notice of settlement

12  may be subject to such discipline as the Court deems appropriate.

13  A copy of this Order shall be sent to all counsel of record.

14  DATED this 15th day of August, 2011.

15

16

17

18

19  RICARDO S. MARTINEZ
    UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

ORDER SETTING TRIAL DATE & RELATED DATES - 3