On July 3, 2012, the Debtors filed their *Omnibus Objection to Motions for Relief from the Automatic Stay Scheduled for Hearing on July 10, 2012.* (ECF Doc. # 682.)

At the July 10 Hearing, Taggart indicated that he believed all of his counterclaims should be permitted to proceed under the Interim Supplemental Servicing Order.

On July 13, 2012, the Court entered the *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* (the "Supplemental Servicing Order"). (ECF Doc. # 774.)

The Supplemental Servicing Order is primarily designed to allow the Debtors to continue prosecuting numerous state court foreclosure actions around the country. While the automatic stay does not apply to the foreclosure actions that the Debtors commenced prepetition, the Supplemental Servicing Order permits defendants in state court foreclosure actions to assert and prosecute claims and counterclaims that are *defenses* to foreclosure under applicable state law. The automatic stay was not lifted, however, to permit borrowers to assert and prosecute claims against the Debtors seeking to recover monetary damages.[1] The Court has already denied motions to lift the automatic stay in precisely such circumstances. *See Memorandum Opinion*

---

[1] The Supplemental Servicing Order permits borrowers to continue to "prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure," but prevents any claims (i) for monetary relief against the Debtors "except where a monetary claim must be plead in order for an Interested Party to assert a claim to defend against or otherwise enjoin or preclude a foreclosure" (each a "Mandatory Monetary Claim") and (ii) "for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction . . . ."

*Denying the Gilbert Motion to Dismiss or to Vacate the Automatic Stay, In re Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y. Aug. 8, 2012) (ECF Doc. # 1054) (denying Gilbert motion to lift the automatic stay with respect to damages claims against the Debtors).

On July 18, 2012, without seeking a modification of the automatic stay, Taggart commenced another action against the debtor GMAC Mortgage in the United States District Court for the Eastern District of Pennsylvania, captioned *Taggart v. GMAC Mortgage LLC*, Case No. CV-12-4077 (E.D. Pa.) (the "Postpetition Federal Action"). The Debtors argue that the filing of this action was a violation of the automatic stay, but the Debtors have not yet filed a motion seeking to impose sanctions for violation of the automatic stay. The complaint in the Postpetition Federal Action asserts claims for damages in excess of $46 million and to "Quiet Title" against GMAC Mortgage, several GMAC Mortgage employees and GMAC Mortgage's attorneys in the Foreclosure Proceeding related to the same allegedly wrongful foreclosure at issue in the Foreclosure Proceeding.

On July 23, 2012, Taggart filed still another motion, styled a *Motion for Leave to File Motion Pursuant Stay & Relief Oral Argument & Hearing Requested.* (ECF Doc. # 882.) That motion sought authority to proceed with the Postpetition Federal Action and a separate action pending in the United States District Court for the Eastern District of Pennsylvania, captioned *Taggart v. GMAC Mortgage, LLC*, Case No. 2:2012-cv-00415 (E.D. Pa.) (the "Prepetition Federal Action"), which also seeks damages and certain declaratory relief in response to the Debtors' allegedly wrongful foreclosure. On August 14, 2012, Taggart withdrew this motion.[2]

---

[2] At the hearing on August 14, 2012, Taggart confirmed that he withdrew the motion and the Debtors consented to the withdrawal, leaving open the question of what happens to the Postpetition Federal Action filed in violation of the stay. Taggart stated that he is not prepared to dismiss the action. The Court directed Taggart and Debtors' counsel to see if they can consensually resolve the issue; otherwise Debtors' counsel stated that they will seek appropriate relief for violation of the stay.

On August 1, 2012, the Debtors filed *Debtors' Supplement in Further Opposition to Motion of Kenneth Taggart for Leave to File Motion Pursuant Stay & Relief (and Clarification from Bankruptcy Court*. ("Debtors' Supplement in Further Opposition," ECF Doc. # 968.)

## II.    DISCUSSION

At the heart of the matter in the Taggart Motion is whether any of the 32 counterclaims asserted by Taggart in the GMAC Mortgage Pennsylvania state court foreclosure action may properly be asserted as defenses to foreclosure. To the extent any of the counterclaims are *defenses* to foreclosure, the Supplemental Servicing Order lifts the automatic stay and permits those defenses to be adjudicated in the state court action. The stay has *not* been lifted to permit claims for affirmative damages relief to be resolved outside of the bankruptcy court claims allowance process. State law determines what claims or counterclaims may be asserted as defenses to foreclosure.

### A.    Pennsylvania Law Determines What Is a Defense to Foreclosure

GMAC Mortgage's Pennsylvania counsel has filed a lengthy memorandum of law addressing each of the counterclaims and whether under Pennsylvania law they can be asserted as defenses to foreclosure. *See Debtors' Memorandum of Law Regarding Counterclaims Asserted by Kenneth Taggart in State Court Foreclosure Proceedings*, dated August 1, 2012. (ECF Doc. # 969.)

As GMAC Mortgage argues, it is well established that a foreclosure action in Pennsylvania is an *in rem* proceeding. "An action in mortgage foreclosure is strictly an *in rem* action and may not include an *in personam* action to enforce personal liability." *Insilco Corp. v. Rayburn*, 543 A.2d 120, 123 (Pa. Super. 1988) (citing the definition in Rule 1141 of the Pennsylvania Rules of Civil Procedure of a foreclosure action as one not including an action

to enforce a personal liability). "The very definition of a mortgage foreclosure action under [231 Pa. Code] Rule 1141(a) excludes 'an action to enforce a personal liability'; this restriction is essential to preserve the '*de terris*' identity of a mortgage foreclosure action and is equally binding on a mortgagee-plaintiff and a mortgagor-defendant." *Signal Consumer Disc. Co. v. Babuscio*, 390 A.2d 266, 270 (Pa. Super. 1978); *see also N.Y. Guardian Mort. Corp. v. Dietzel*, 524 A.2d 951, 953 (Pa. Super. 1987) (recognizing that foreclosure actions in Pennsylvania are *in rem* only and disallowing pursuit of TILA damages asserted by counterclaim); *Birchall v. Countrywide Home Loans, Inc.*, No. 08-2447, 2009 WL 3822201, at *6 (E.D. Pa. Nov. 12, 2009) (stating that "a mortgage foreclosure action, as an action *in rem*, does not allow either party to pursue an action *in personam*, such as an action for damages"); *Kondour Capital Corp. v. Marshall L. Williams*, Civ. No. 2011-0235, 2011 WL 4352214 (Pa. Com. Pl. Sept. 1, 2011) (concluding that mortgagor's counterclaims impermissibly sought monetary damages and indemnification or contribution); *Rocco v. J.P. Morgan Chase Bank*, 255 Fed. App'x. 638, 643 (3d Cir. 2007) ("Claims for money damages, including recoupment claims . . . cannot be brought in a foreclosure action.") (citing *N.Y. Guardian*, 524 A.2d at 953). Any defense must go to the existence and validity of the mortgage because the viability of a mortgage foreclosure action depends upon the existence of a valid mortgage. *See Straker v. Deutsche Bank Nat'l Trust*, No. 3:CV-09-0338, 2010 WL 500412, at *3 (M.D. Pa. Feb. 5, 2010) (quoting *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009)); *In re Calabria*, 418 B.R. 862, 866-867 (W.D. Pa. 2009) ("In Pennsylvania, actions in mortgage foreclosure are dependent on the existence of a valid mortgage.").

Applying these legal principles, the Debtors argue that most of Taggart's thirty-two counterclaims may not be asserted as defenses to foreclosure; but Debtors acknowledge that one

or more counterclaims might properly be asserted as a defense to foreclosure to the extent it challenges the existence and validity of the mortgage. Analyzing each claim would require a lengthy analysis by this Court.

Recognizing the difficulty of such a claim-by-claim analysis of the thirty-two counterclaims, the Debtors have offered to consent to limited stay relief as follows:

> [T]he parties may proceed through any dispositive motions practice in the Foreclosure Proceeding, by which the trial court will determine the viability of Mr. Taggart's alleged defenses to foreclosure in the Foreclosure Proceeding. Thereafter, Mr. Taggart would have the opportunity to renew his Motion by filing a notice of hearing fourteen days in advance of the next available omnibus hearing to the extent that any of Mr. Taggart's Counterclaims remain that would otherwise be stayed by the Supplemental Servicing Order.

*See* Debtors' Supplement in Further Opposition at 5. This proposal would leave the decision of what is a valid defense to foreclosure under Pennsylvania law to the Pennsylvania court which is in the best position to resolve the issues. The Court agrees with the Debtors that lifting the stay to the extent proposed is the appropriate disposition of the pending Motion. It is possible, of course, that after the state court rules on which counterclaims may be permitted to proceed in state court as defenses to foreclosure that Taggart would be entitled to broader stay relief to the extent that those same counterclaims would support affirmative damages relief and the state court would necessarily have to resolve many of the legal and factual issues necessary to a decision.

### B. Policies Underlying the Automatic Stay Favor Giving the Debtors a Breathing Spell

Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition:

> operates as a stay, applicable to all entities, of –

> (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). It maintains the status quo and protects the debtor's ability to formulate a plan for the sale or other disposition of property of the estate. 3 COLLIER ON BANKRUPTCY ¶ 362.03 (Alan N. Resnick & Henry J. Somme reds., 16th ed. 2011). The automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted). In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

The automatic stay is critical to debtors because it allows them to focus on their reorganization instead of ligation. *Id.* at 48. Here, the Debtors have already obtained an order modifying the automatic stay allowing claims asserted as defenses to foreclosure actions being prosecuted by or on behalf of the Debtors to continue outside of the bankruptcy court. In this case, the decision about which counterclaims may be asserted as defenses to foreclosure will be left to the state court that is in the best position to make that determination. The stay remains in place with respect to Taggart's affirmative claims against the Debtors seeking to recover damages. Claims for damages against the Debtors are the usual grist for the bankruptcy claims

allowance process and absent unusual circumstances the bankruptcy court remains the appropriate forum to resolve such claims. Permitting courts around the country to adjudicate claims risks diverting the attention of Debtors' personnel from pressing issues in the chapter 11 case and increases the risk of inconsistent decisions affecting similarly situated creditors.

### C. The Automatic Stay Should Not Be Lifted to Permit the Taggart Counterclaims to Proceed

Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not, however, define the phrase "for cause." In determining whether "cause" exists to lift the stay for prepetition litigation, courts consider the following factors (the "*Sonnax* Factors"):

(1) whether relief would result in a partial or complete resolution of the issues,
(2) the lack of any connection with or interference with the bankruptcy case,
(3) whether the other proceeding involves the debtor as a fiduciary,
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
(5) whether the debtor's insurer has assumed full responsibility for defending the action,
(6) whether the action primarily involves third parties,
(7) whether litigation in another forum would prejudice the interests of other creditors,
(8) whether the judgment claim arising from the other action is subject to equitable subordination,
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
(10) the interests of judicial economy and the expeditious and economical resolution of litigation,
(11) whether the parties are ready for trial in the other proceeding, and
(12) the impact of the stay on the parties and the balance of harms.