# EXHIBIT 7-A

EXECUTION COPY

RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC.,
Company,

GMAC MORTGAGE CORPORATION,
Servicer

and

JPMORGAN CHASE BANK, N.A.
Trustee


POOLING AND SERVICING AGREEMENT

Dated as of March 30, 2006


GMACM Mortgage Loan Trust 2006-AR2
Residential Asset Mortgage Products, Inc.
GMACM Mortgage Pass-Through Certificates, Series 2006-AR2

---

TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| ARTICLE I | DEFINITIONS | 2 |
| Section 1.01. | Definitions | 2 |
| Section 1.02. | Use of Words and Phrases | 2 |
| ARTICLE II | CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES | 2 |
| Section 2.01. | Conveyance of Mortgage Loans | 2 |
| Section 2.02. | Acceptance by Trustee | 2 |
| Section 2.03. | Representations, Warranties and Covenants of the Servicer | 2 |
| Section 2.04. | Representations and Warranties of the Seller | 2 |
| Section 2.05. | Execution and Authentication of Certificates | 2 |
| Section 2.06. | Purposes and Powers of the Trust Fund | 2 |
| ARTICLE III | ADMINISTRATION AND SERVICING OF MORTGAGE LOANS | 2 |
| Section 3.01. | Servicer to Act as Servicer | 2 |
| Section 3.02. | Subservicing Agreements Between Servicer and Subservicers; Enforcement of Subservicers' and Seller's Obligations | 2 |
| Section 3.03. | Successor Subservicers | 2 |
| Section 3.04. | Liability of the Servicer | 2 |
| Section 3.05. | No Contractual Relationship Between Subservicer and Trustee or Certificateholders | 2 |
| Section 3.06. | Assumption or Termination of Subservicing Agreements by Trustee | 2 |
| Section 3.07. | Collection of Certain Mortgage Loan Payments; Deposits to Custodial Account | 2 |
| Section 3.08. | Subservicing Accounts; Servicing Accounts | 2 |
| Section 3.09. | Access to Certain Documentation and Information Regarding the Mortgage Loans | 2 |
| Section 3.10. | Permitted Withdrawals from the Custodial Account | 2 |
| Section 3.11. | Maintenance of the Primary Insurance Policies; Collections Thereunder | 2 |
| Section 3.12. | Maintenance of Hazard Insurance and Omissions and Fidelity Coverage | 2 |
| Section 3.13. | Enforcement of Due-on-Sale Clauses; Assumption and Modification Agreements; Certain Assignments | 2 |

| Exhibit M: | Form of Custodian Certification |
| Exhibit N-1 | Form of Form 10-K Certification |
| Exhibit N-2 | Form of Certification for Form 10-K to Trustee |
| Exhibit O | Servicing Criteria To Be Addressed In Assessment Of Compliance |

12-12020-mg    Doc 1740-7    Filed 10/05/12    Entered 10/05/12 19:18:12    Exhibit 7
Part A    Pg 3 of 25

This is the Pooling and Servicing Agreement, dated as of March 30, 2006 (the "Pooling and Servicing Agreement" or "Agreement"), among RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., as the company (together with its permitted successors and assigns, the "Company"), GMAC MORTGAGE CORPORATION, as servicer (together with its permitted successors and assigns, the "Servicer"), and JPMORGAN CHASE BANK, N.A., a banking association organized under the laws of the United States, as Trustee (together with its permitted successors and assigns, the "Trustee").

PRELIMINARY STATEMENT:

The Company intends to sell mortgage-backed pass-through certificates (collectively, the "Certificates"), to be issued hereunder in fifteen Classes, which in the aggregate will evidence the entire beneficial ownership interest in the Mortgage Loans (as defined herein) and certain other related assets.

REMIC I

As provided herein, the REMIC Administrator will make an election to treat the segregated pool of assets consisting of the Mortgage Loans and certain other related assets subject to this Agreement as a real estate mortgage investment conduit (a "REMIC") for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC I." Component I of the Class R Certificates will represent the sole Class of "residual interests" in REMIC I for purposes of the REMIC Provisions (as defined herein) under federal income tax law. The following table irrevocably sets forth the designation, uncertificated remittance rate (the "Uncertificated REMIC I Pass-Through Rate") and initial Uncertificated Balance for each of the "regular interests" in REMIC I (the "REMIC I Regular Interests"). The "latest possible maturity date" (determined solely for purposes of satisfying Treasury regulation Section 1.860G 1(a)(4)(iii)) for each REMIC I Regular Interest shall be the Maturity Date. None of the REMIC I Regular Interests will be certificated.

| CLASS DESIGNATION FOR EACH REMIC I REGULAR INTEREST AND COMPONENT I OF THE CLASS R CERTIFICATES | TYPE OF INTEREST | UNCERTIFICATED REMIC I PASS-THROUGH RATE | INITIAL UNCERTIFICATED BALANCE | FINAL MATURITY DATE* |
|---|---|---|---|---|
| Class Y-1 | Regular | Variable(1) | $9,267.12 | May 2036 |
| Class Y-2 | Regular | Variable(2) | $84,826.50 | May 2036 |
| Class Y-3 | Regular | Variable(3) | $28,485.70 | May 2036 |
| Class Y-4 | Regular | Variable(4) | $23,497.70 | May 2036 |
| Class Y-5 | Regular | Variable(5) | $40,405.84 | May 2036 |
| Class Z-1 | Regular | Variable(1) | $18,527,010.71 | May 2036 |
| Class Z-2 | Regular | Variable(2) | $169,586,784.02 | May 2036 |
| Class Z-3 | Regular | Variable(3) | $56,942,910.94 | May 2036 |
| Class Z-4 | Regular | Variable(4) | $46,971,904.22 | May 2036 |
| Class Z-5 | Regular | Variable(5) | $80,780,131.23 | May 2036 |
| Component I of the Class R | Residual | Variable(1) | $100.00 | May 2036 |

---

*   The Distribution Date in the specified month, which is the month following the month the latest maturing Mortgage Loan in the related Loan Group matures. For federal income tax purposes, the "latest possible maturity date" for each REMIC I Regular Interest shall be the Maturity Date.

(1) Interest distributed to the Class Y-1 and Class Z-1 Regular Interests and Component I of the Class R Certificates on each Distribution Date will have accrued at the Group 1 Net WAC Rate on the applicable Uncertificated Balance outstanding immediately before such Distribution Date.
(2) Interest distributed to the Class Y-2 and Class Z-2 Regular Interests on each Distribution Date will have accrued at the Group 2 Net WAC Rate on the applicable Uncertificated Balance outstanding immediately before such Distribution Date.
(3) Interest distributed to the Class Y-3 and Class Z-3 Regular Interests on each Distribution Date will have accrued at the Group 3 Net WAC Rate on the applicable Uncertificated Balance outstanding immediately before such Distribution Date.
(4) Interest distributed to the Class Y-4 and Class Z-4 Regular Interests on each Distribution Date will have accrued at the Group 4 Net WAC Rate on the applicable Uncertificated Balance outstanding immediately before such Distribution Date.
(5) Interest distributed to the Class Y-5 and Class Z-5 Regular Interests on each Distribution Date will have accrued at the Group 5 Net WAC Rate on the applicable Uncertificated Balance outstanding immediately before such Distribution Date.

REMIC II

As provided herein, the REMIC Administrator will elect to treat the segregated pool of assets consisting of the REMIC I Regular Interests as a REMIC for federal income tax

Prepayment in Full, during the related Prepayment Period (to the extent not offset by the Servicer with a payment of Compensating Interest),

(ii)    the interest portion (adjusted to the Net Mortgage Rate (or the Modified Net Mortgage Rate in the case of a Modified Mortgage Loan)) of Realized Losses on the Mortgage Loans in the related Loan Group (including Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses and Extraordinary Losses) not allocated solely to one or more specific Classes of Certificates pursuant to Section 4.05,

(iii)    the interest portion of Advances that were made with respect to delinquencies related to Mortgage Loans or REO Property in the related Loan Group that were ultimately determined to be Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary Losses, and

(iv)    any other interest shortfalls on the Mortgage Loans in the related Loan Group not covered by the subordination provided by the Class M Certificates and Class B Certificates, including interest that is not collectible from the Mortgagor pursuant to the Relief Act,

with the Senior Percentage of all such reductions with respect to the Mortgage Loans in a Loan Group being allocated among the related Senior Certificates in proportion to the amounts of Accrued Certificate Interest payable from the related Loan Group on such Distribution Date absent such reductions, with the remainder of such reductions allocated among the holders of the Class M Certificates and Class B Certificates on the basis of their respective amounts of Accrued Certificate Interest that would have been payable on such Distribution Date absent such reductions. In addition to that portion of the reductions described in the preceding sentence that are allocated to any Class of Class B Certificates or any Class of Class M Certificates, Accrued Certificate Interest on such Class of Class B Certificates or such Class of Class M Certificates will be reduced by the interest portion (adjusted to the Net Mortgage Rate) of Realized Losses that are allocated solely to such Class of Class B Certificates or such Class of Class M Certificates pursuant to Section 4.05.

Adjustment Date: With respect to each Mortgage Loan, each date set forth in the related Mortgage Note on which an adjustment to the interest rate on such Mortgage Loan becomes effective.

Advance: As to any Mortgage Loan, any advance made by the Servicer, pursuant to Section 4.04.

Affiliate: With respect to any Person, any other Person controlling, controlled by or under common control with such first Person. For the purposes of this definition, "control" means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Aggregate Subordinate Percentage: With respect to any Distribution Date, the percent equivalent of a fraction, the numerator of which is the aggregate Certificate Principal Balance of the Subordinate Certificates immediately prior to such Distribution Date and the denominator of which is the Pool Stated Principal Balance as of such Distribution Date.

Amount Held for Future Distribution: With respect to any Distribution Date and with respect to each Loan Group, the total of the amounts held in the Custodial Account at the close of business on the related Determination Date on account of (i) Liquidation Proceeds, Subsequent Recoveries, Insurance Proceeds, Curtailments, Mortgage Loan purchases made pursuant to Section 2.02, 2.04 or 4.07 and Mortgage Loan substitutions made pursuant to Section 2.04 received or made in the month of such Distribution Date (other than such Liquidation Proceeds, Insurance Proceeds, Subsequent Recoveries and purchases of Mortgage Loans that the Servicer has deemed to have been received in the preceding month in accordance with Section 3.07(b)), and Principal Prepayments in Full received or made after the related Prepayment Period, and (ii) payments which represent early receipt of scheduled payments of principal and interest due on a date or dates subsequent to the related Due Date.

Appraised Value: As to any Mortgaged Property, the lesser of (i) the appraised value of such Mortgaged Property based upon the appraisal made at the time of the origination of the related Mortgage Loan, and (ii) the sales price of the Mortgaged Property at such time of origination, except in the case of a Mortgaged Property securing a refinanced or modified Mortgage Loan as to which it is either the appraised value determined above or the appraised value determined in an appraisal at the time of refinancing or modification, as the case may be, provided that if permitted by the applicable underwriting standards of GMACM, the Appraised Value shall be the value of the Mortgaged Property as stated by the Mortgagor.

Assignment: An assignment of the Mortgage, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the sale of the Mortgage Loan to the Trustee for the benefit of Certificateholders, which assignment, notice of transfer or equivalent instrument may be in the form of one or more blanket assignments covering Mortgages secured by Mortgaged Properties located in the same county, if permitted by law and accompanied by an Opinion of Counsel to that effect.

Assignment of Proprietary Lease: With respect to a Cooperative Loan, the assignment of the related Cooperative Lease from the Mortgagor to the originator of the Cooperative Loan.

Available Distribution Amount: With respect to any Distribution Date and each Loan Group, an amount equal to (a) the sum of (i) the amount relating to the Mortgage Loans on deposit in the Custodial Account as of the close of business on the immediately preceding Determination Date, including any Subsequent Recoveries, and amounts deposited in the Custodial Account in connection with the substitution of Qualified Substitute Mortgage Loans, (ii) the amount of any Advance made on the immediately preceding Payment Account Deposit Date, (iii) any amount deposited in the Payment Account on the related Payment Account Deposit Date pursuant to the second paragraph of Section 3.12(a), (iv) any amount

deposited in the Payment Account pursuant to Section 4.07, and (v) any amount that the Servicer is not permitted to withdraw from the Custodial Account pursuant to Section 3.16(e), Compensating Interest and less any Excess Interest paid by the Servicer from the preceding Determination Date of (w) aggregate Foreclosure Profits, (x) Amount Held for Future Distribution and (y) amounts permitted to be withdrawn by the Servicer from the Custodial Account in respect of the Mortgage Loans pursuant to clauses (ii)-(x), inclusive, of Section 3.10(a). Such amount shall be determined separately for each Loan Group. Additionally, if on any Distribution Date Compensating Interest provided pursuant to Section 3.16(e) is less than Prepayment Interest Shortfalls incurred on the Mortgage Loans in connection with Principal Prepayments in Full received during the related Prepayment Period and Curtailments made in the prior calendar month, such Compensating Interest shall be allocated on such Distribution Date to the Available Distribution Amount for each Loan Group on a pro rata basis in accordance with the respective amounts of such Prepayment Interest Shortfalls incurred on the Mortgage Loans in such Loan Group in respect of such Distribution Date.

Bankruptcy Amount: As of any date of determination prior to the first anniversary of the Cut-off Date, an amount equal to the excess, if any, of (A) $100,000 over (B) the aggregate amount of Bankruptcy Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05. As of any date of determination on or after the first anniversary of the Cut-off Date, an amount equal to the excess, if any, of

(1) the lesser of (a) the Bankruptcy Amount calculated as of the close of business on the Business Day immediately preceding the most recent anniversary of the Cut-off Date coinciding with or preceding such date of determination (or, if such date of determination is an anniversary of the Cut-off Date, the Business Day immediately preceding such date of determination) (for purposes of this definition, the "Relevant Anniversary") and (b) the greater of

(A) the greater of (i) 0.0006 times the aggregate principal balance of all the Mortgage Loans in the Mortgage Pool as of the Relevant Anniversary having a Loan-to-Value Ratio at origination which exceeds 75% and (ii) $100,000; and

(B) (i) if the aggregate principal balance of the Non-Primary Residence Loans as of the Relevant Anniversary is less than 10% of the Stated Principal Balance of the Mortgage Loans as of the Relevant Anniversary, $0.00, or (ii) if the aggregate principal balance of the Non-Primary Residence Loans as of the Relevant Anniversary is equal to or greater than 10% of the Stated Principal Balance of the Mortgage Loans as of the Relevant Anniversary, the sum of (I) the aggregate principal balance of the Non-Primary Residence Loans with a Loan-to-Value Ratio of greater than 80.00% but less than or equal to 90.00%, times 0.25%, (II) the aggregate principal balance of the Non-Primary Residence Loans with a Loan-to-Value Ratio of greater than 90.00% but less than or equal to 95.00%, times 0.50%, and (III) the aggregate principal balance of the Non-Primary Residence Loans with a Loan-to-Value Ratio of greater than 95.00% times 0.75%, in each case as of the Relevant Anniversary, over

(2) the aggregate amount of Bankruptcy Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 since the Relevant Anniversary.

The Bankruptcy Amount may be further reduced by the Servicer (including accelerating the manner in which such coverage is reduced) provided that prior to any such reduction, the Servicer shall (i) obtain written confirmation from each Rating Agency that such reduction shall not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then-current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency and (ii) provide a copy of such written confirmation to the Trustee.

Bankruptcy Code: The Bankruptcy Code of 1978, as amended.

Bankruptcy Loss: With respect to any Mortgage Loan, a Deficient Valuation or Debt Service Reduction; provided, however, that neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Bankruptcy Loss hereunder so long as the Servicer has notified the Trustee in writing that the Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

Book-Entry Certificate: Any Certificate registered in the name of the Depository or its nominee.

Business Day: Any day other than (i) a Saturday or a Sunday, or (ii) a day on which banking institutions in the State of New York, State of Minnesota or the Commonwealth of Pennsylvania (and such other state or states in which the Custodial Account or the Payment Account are at the time located) are required or authorized by law or executive order to be closed.

Buydown Account: As defined in Section 3.22(a).

Buydown Funds: Any amount contributed by the seller of a Mortgaged Property, the Company or other source in order to enable the Mortgagor to reduce the payments required to be made from the Mortgagor's funds in the early years of a Mortgage Loan. Buydown Funds are not part of the Trust Fund prior to deposit into the Custodial Account or Payment Account.

Buydown Mortgage Loan: Any Mortgage Loan as to which a specified amount of interest

is subject to a Subservicing Agreement.

Subservicer Advance: Any delinquent installment of principal and interest on a Mortgage Loan which is advanced by the related Subservicer (net of its Subservicing Fee) pursuant to the Subservicing Agreement.

Subservicing Account: An account established by a Subservicer in accordance with Section 3.08.

Subservicing Agreement: The written contract between the Servicer and any Subservicer relating to servicing and administration of certain Mortgage Loans as provided in Section 3.02.

Subservicing Fee: As to any Mortgage Loan, the fee payable monthly to the related Subservicer, if any.

Subsequent Recoveries: As of any Distribution Date, amounts received by the Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 3.10) or surplus amounts held by the Servicer to cover estimated expenses (including, but not limited to, recoveries in respect of the representations and warranties made by the related Seller pursuant to the applicable Seller's Agreement and assigned to the Trustee pursuant to Section 2.04) specifically related to a Mortgage Loan that was the subject of a Cash Liquidation or an REO Disposition prior to the related Prepayment Period that resulted in a Realized Loss.

Tax Returns: The federal income tax return on Internal Revenue Service Form 1066, U.S. Real Estate Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice to Class R Certificate Holders of REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be filed on behalf of either of the REMICs due to its classification as a REMIC under the REMIC Provisions, together with any and all other information, reports or returns that may be required to be furnished to the Certificateholders or filed with the Internal Revenue Service or any other governmental taxing authority under any applicable provisions of federal, state or local tax laws.

Transfer: Any direct or indirect transfer, sale, pledge, hypothecation or other form of assignment of any Ownership Interest in a Certificate.

Transferee: Any Person who is acquiring by Transfer any Ownership Interest in a Certificate.

Transferor: Any Person who is disposing by Transfer of any Ownership Interest in a Certificate.

Trust Fund: The segregated pool of assets consisting of:

(i)     the Mortgage Loans and the related Mortgage Files and collateral securing such Mortgage Loans,

(ii)    all payments on and collections in respect of the Mortgage Loans due after the Cut-off Date as shall be on deposit in the Custodial Account or in the Payment Account and identified as belonging to the Trust Fund,

(iii)   property that secured a Mortgage Loan and that has been acquired for the benefit of the Certificateholders by foreclosure or deed in lieu of foreclosure,

(iv)    the hazard insurance policies and Primary Insurance Policies, if any, and

(v)     all proceeds of clauses (i) through (iv) above.

A REMIC election with respect to the Trust Fund is made pursuant to this Agreement.

Two Times Test: With respect to any Distribution Date, the satisfaction of all of the following conditions: (i) the Aggregate Subordinate Percentage is at least two times the Aggregate Subordinate Percentage as of the Closing Date; (ii) the aggregate of the Stated Principal Balances of all Mortgage Loans Delinquent 60 days or more (including Mortgage Loans in REO and foreclosure) (averaged over the preceding six-month period), as a percentage of the aggregate of the Certificate Principal Balances of the Subordinate Certificates, does not exceed 50%; and (iii) after the 36th Distribution Date, cumulative Realized Losses do not exceed 30% of the aggregate Certificate Principal Balance of the Subordinate Certificates as of the Closing Date or on or prior to the 36th Distribution Date, cumulative Realized Losses do not exceed 20% of the aggregate Certificate Principal Balance of the Subordinate Certificates as of the Closing Date.

Uncertificated Balance: For any REMIC I Regular Interest or REMIC II Regular Interest, the applicable initial Uncertificated Balance thereof set forth in the Preliminary Statement hereto, corresponding to the rights of such regular interest in payments of principal due to be passed through to such regular interest from principal payments on the Mortgage Loans or the REMIC I Regular Interests, as applicable, as reduced from time to time by (x) distributions of principal to such regular interest and (y) the portion of Realized Losses allocated to the Uncertificated Balance of such regular interest pursuant to the definition of "Realized Loss" with respect to a given Distribution Date and as increased by Subsequent Recoveries allocated in respect thereof. For any Distribution Date, the reduction of the Uncertificated Balance of any REMIC I Regular Interest pursuant to the definition of "Realized Loss" shall be deemed effective before the determination and distribution of principal on such regular interest pursuant to the definition of "REMIC I Distribution Amount" and the reduction of the Uncertificated Balance of any REMIC II Regular Interest pursuant to the definition of "Realized Loss" shall be deemed effective after the determination and distribution of principal on such regular interest pursuant to the definition of "REMIC II Distribution Amount." Notwithstanding the foregoing, any amounts distributed in respect of principal losses pursuant to paragraph (f)(i) of the definition of

REMIC I  Distribution  Amount" shall not cause a reduction in the  Uncertificated  Balance of any REMIC I Regular Interest or REMIC II Regular Interest.

Uncertificated  Interest:  With  respect to any REMIC I Regular Interest or REMIC II Regular  Interest for any  Distribution  Date, an amount equal to one month's  interest at the related  Uncertificated  REMIC I Pass-Through  Rate or  Uncertificated  REMIC II Pass-Through Rate,  as  applicable,  for  such  Distribution  Date,  accrued on the  Uncertificated  Balance thereof  immediately prior to such Distribution  Date.  Uncertificated  Interest in respect of any REMIC I  Regular  Interest or REMIC II  Regular  Interest  shall  accrue on the basis of a 360-day year  consisting  of twelve  30-day  months.  Uncertificated  Interest with respect to each  Distribution  Date, as to any REMIC I  Regular  Interest or REMIC II  Regular  Interest, shall be reduced by any interest  shortfalls for such  Distribution  Date for the related Loan Group,  allocated  among such REMIC I Regular  Interests  or REMIC II Regular  Interests,  as applicable,  pro rata according to the amount of Uncertificated  Interest accrued with respect thereto prior to reduction by the provisions of this definition.  In addition,  Uncertificated Interest  with  respect to each  Distribution  Date,  as to any  REMIC I  Regular  Interest or REMIC II  Regular  Interest,  shall be reduced by the  interest  portion  of Realized  Losses (including  Excess Special Hazard Losses,  Excess Fraud Losses,  Excess  Bankruptcy Losses and Extraordinary  Losses)  for the  related  Loan  Group,  allocated  among  such REMIC I Regular Interests or REMIC II Regular  Interests,  as applicable,  pro rata according to the amount of Uncertificated  Interest  accrued with respect thereto prior to reduction by the provisions of this definition.

Undercollateralized  Group:  For any Distribution  Date, Loan Group 1,  if immediately prior to such Distribution Date the aggregate  Certificate  Principal Balance of the Class 1-A Certificates and Class R  Certificates is greater than the aggregate Stated Principal  Balance of the Group 1 Loans; for any Distribution  Date, Loan Group 2,  if immediately  prior to such Distribution Date the Certificate  Principal Balance of the Class 2-A  Certificates is greater than the aggregate Stated Principal  Balance of the Group 2 Loans; for any Distribution  Date, Loan  Group 3,  if  immediately  prior to such  Distribution  Date the  Certificate  Principal Balance of the Class 3-A  Certificates is greater than the aggregate Stated Principal  Balance of the Group 3 Loans; for any Distribution  Date, Loan Group 4,  if immediately  prior to such Distribution Date the Certificate  Principal Balance of the Class 4-A  Certificates is greater than the aggregate  Stated  Principal  Balance of the Group 4  Loans and for any  Distribution Date, Loan Group 5,  if immediately prior to such Distribution Date the Certificate  Principal Balance of the Class 5-A  Certificates is greater than the aggregate Stated Principal  Balance of the Group 5 Loans.

Uniform  Single  Attestation  Program for Mortgage Bankers:  The Uniform  Single Attestation  Program for Mortgage  Bankers,  as published by the Mortgage Bankers  Association of America and effective with respect to fiscal periods ending on or after December 15, 1995.

Uninsured  Cause:  Any cause of damage to property subject to a Mortgage such that the complete  restoration  of such  property  is not fully  reimbursable  by the hazard  insurance policies.

United  States  Person: (i) A  citizen  or  resident  of the  United  States, (ii) a corporation,  partnership or other entity  treated as a corporation or partnership  for United States  federal  income tax purposes  organized  in or under the laws of the United  States or any  state  thereof  or the  District  of  Columbia  (unless,  in the  case of a  partnership, Treasury  regulations  provide  otherwise),  provided  that,  for purposes  solely  of  the restrictions  on the transfer of residual  interests,  no  partnership or other entity treated as a partnership  for United States  federal  income tax purposes shall be treated as a United States Person unless all persons that own an interest in such  partnership  either directly or indirectly  through any chain of entities no one of which is a  corporation  for United States federal  income tax purposes are required by the applicable  operating  agreement to be United States  Persons, (iii) an estate the income of which is includible in gross income for United States tax purposes,  regardless  of its source, or (iv) a trust if a court within the United States is able to exercise primary  supervision over the  administration  of the trust and one or more United  States  persons  have  authority to control all  substantial  decisions of the trust.  Notwithstanding  the  preceding  sentence,  to  the  extent  provided  in  Treasury regulations,  certain  trusts in existence on August 20,  1996,  and treated as United  States persons  prior to such date,  that elect to  continue to be treated as United  States  persons will also be a United States Person.

Voting  Rights:  The portion  of the voting rights of all of the  Certificates  which is allocated to any Certificate, as designated in Section 11.09.

Section 1.02.  Use of Words and Phrases.

"Herein," "hereby,"  "hereunder,"  `hereof,"  "hereinbefore,"  "hereinafter" and other equivalent  words refer to the Pooling and  Servicing  Agreement  as a whole.  All  references herein to Articles,  Sections or Subsections shall mean the corresponding  Articles,  Sections and  Subsections  in the Pooling and  Servicing  Agreement.  The  definition  set forth herein include both the singular and the plural.

ARTICLE II

CONVEYANCE OF MORTGAGE LOANS;
ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01.  Conveyance of Mortgage Loans.

(a)     The Company,  concurrently with the execution and delivery hereof,  does hereby assign to the Trustee  for the  benefit  of the  Certificateholders  without  recourse  all the right, title and interest of the Company in and to the  Mortgage  Loans,  including  all interest and principal  received on or with  respect to the  Mortgage  Loans after the Cut-off  Date (other

than  payments of principal  and  interest due on the Mortgage  Loans on or before the Cut-off Date).

The Company,  the Servicer and the Trustee  agree that  it is intended  that any  mortgage  loan be included in the Trust Fund that is either (i)  a  "High-Cost  Home Loan" as  defined  in  the  New  Jersey  Home  Ownership  Act  effective  November  27,  2003,  (ii)  a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004,  (ii) a "High-Cost  Home Loan" as defined in the  Massachusetts  Predatory Home Loan Practices  Act  effective  November 7, 2004 or (iv) a  "High-Cost  Home Loan" as defined in the Indiana High Cost Home Loan Law Act effective January 1, 2005.

(b)     In connection with such assignment,  and concurrently  with the delivery of this Agreement,  the Company does hereby deliver to, and deposit with, the Trustee,  or to and with one or more  Custodians,  as the  duly  appointed  agent or agents of the  Trustee  for such purpose,  the  original  Mortgage  Note,  with  respect  to each  Mortgage  Loan so  assigned, endorsed  without  recourse in blank, or in the name of the Trustee as trustee, and signed by an authorized  officer  (which  endorsement  shall contain  either an original  signature or a facsimile  signature of an authorized officer of GMACM, and if in the form of an allonge, the allonge shall be stapled to the Mortgage Note),  with all intervening  endorsements  showing a complete  chain of title from the  originator  to GMACM.  If the Mortgage Loan was acquired by the endorser  in a merger,  the endorsement  must be by  "_____,  successor by merger to [name of  predecessor]".  If the  Mortgage  Loan was  acquired or  originated  by the endorser while doing business under another name, the  endorsement  must be by  "_____  formerly known as [previous name]."

In  lieu  of  delivering  the  Mortgage  Note  relating  to any  Mortgage  Loan,  the Company may deliver  or cause to be  delivered  a lost note  affidavit  from the Seller  stating  that the original  Mortgage Note was lost,  misplaced or destroyed,  and, if available,  a copy of each original  Mortgage  Note;  provided,  however,  that in the case of Mortgage  Loans which have been prepaid in full after the Cut-off  Date and prior to the Closing  Date,  the Company,  in lieu of  delivering  the  above  documents,  may  deliver  or  cause  to be  delivered  to the Custodian,  if any, or the  Trustee,  a  certification  to such  effect and shall  deposit all amounts paid in respect of such Mortgage Loan in the Payment Account on the Closing Date.

(c)     All  other  documents  contained  in  the  Mortgage  File  and any  original  documents relating to the  Mortgage  Loans not  contained  in the  Mortgage  File or  delivered  to the Custodian,  if any,  or the  Trustee  are and shall be held by the  Servicer in trust as agent for the Trustee on behalf of the Certificateholders.

In the event that in connection  with any Mortgage  Loan: (a) the  original  recorded Mortgage  (or  evidence of  submission to the  recording  office),  (b) all interim  recorded assignments,  (c) the original recorded modification  agreement,  if required, or (d) evidence of title insurance  (together with all riders thereto,  if any) satisfying the requirements of clause  (I)(ii),  (iv),  (vi) or (vii) of the definition of Mortgage File,  respectively,  have not been  delivered to the Servicer concurrently  with the execution  and delivery hereof because  such document  or documents  have not been  returned  from the  applicable  public recording office, or, in the case of each such interim  assignment or modification  agreement, because the related  Mortgage has not been returned by the appropriate  recording  office,  in the case of clause  (I)(ii),  (iv) or (vi) of the definition of Mortgage File, or because the evidence of title  insurance has not been  delivered to the Seller by the title insurer in the case of clause  (I)(vii) of the  definition  of  Mortgage  File,  the  Servicer  shall use its reasonable  best  efforts to obtain,  (A) in the case of clause  (I)(ii),  (iv) or (vi) of the definition  of Mortgage  File,  such  original  Mortgage,  such  interim  assignment,  or such modification  agreement,  with evidence of recording  indicated  thereon upon receipt  thereof from the public  recording  office,  or a copy  thereof,  certified,  if  appropriate,  by the relevant  recording  office,  or (B) in the  case of  clause  (I)(vii) of the  definition  of Mortgage File, evidence of title insurance.

(d)     If any of the documents held by the Servicer  pursuant to clause (c) above are missing or  defective  in any  other  respect  and such  missing  document  or defect  materially  and adversely  affects the interests of the  Certificateholders  in the related Mortgage Loan, the Servicer  shall  request  that GMACM  either (i) cure such  defect in all material  respects, (ii) substitute  for such Mortgage  Loan a  Qualified  Substitute  Mortgage  Loan,  which substitution  shall be  accomplished  in the manner and subject to the conditions set forth in Section 2.04,  or (iii) purchase  such Mortgage Loan from the Trust Fund at the Purchase Price within 90 days after the date on which GMACM was  notified of such defect; provided  that if such defect would cause the Mortgage  Loan to be other than a "qualified  mortgage" as defined in  Section 860G(a)(3) of the Code,  any such cure,  substitution  or repurchase must occur within 90 days from the date such  breach was  discovered.  If GMACM fails to comply with such request by the  Servicer,  the  Servicer  shall notify the Trustee of such missing  document or material  defect and the Trustee  shall notify GMACM of its  obligation  to comply with clause (i),  (ii) or  (iii) of the  preceding  sentence.  It is  understood  and agreed that  the obligation  of GMACM to cure a  material  defect  in, or  substitute  for, or purchase  any Mortgage Loan as to which a material defect in or omission of a constituent  document exists, shall  constitute the sole remedy  respecting  such material  defect or omission  available to Certificateholders  or the Trustee on behalf of  Certificateholders.  The  Purchase  Price for the purchased  Mortgage Loan shall be deposited or caused to be deposited  upon receipt by the Trustee in the Payment  Account,  or upon  receipt by the Servicer in the  Custodial  Account. Upon  receipt by the Trustee of written  notification  of such  deposit  signed by a Servicing Officer,  and upon  receipt of a Request for  Release  from the  Servicer,  the  Custodian on behalf of the  Trustee,  shall (i)  release  or cause to be  released  to GMACM the  related Mortgage  Note,  and (ii) cause the  Servicer to release to GMACM any  remaining  documents in the  related  Mortgage  File which are held by the  Servicer.  The  Trustee  shall execute and deliver such instruments of transfer or assignment,  in each case without  recourse,  as GMACM shall require as necessary to vest in GMACM  ownership of any Mortgage Loan released  pursuant hereto and at such time the Trustee shall have no further  responsibility  with respect to the related Mortgage Note.

(e)     The Servicer shall keep in its possession  (a) from time to time  additional  original documents  evidencing  an  assumption  or  modification  of a Mortgage  Loan and (b) any other documents required to be held by the Servicer.

Except  as may  otherwise  expressly  be  provided  herein,  none of the  Seller,  the

Servicer or the Trustee shall assign, sell, dispose of or transfer any interest in the Trust Fund or any portion thereof, or permit the Trust Fund or any portion thereof to be subject to any lien, claim, mortgage, security interest, pledge or other encumbrance, except as permitted herein with respect to any Mortgaged Property securing a Mortgage Loan or any interest therein in favor of any other Person.

The Servicer shall cause to be filed the UCC assignment and UCC financing statement referred to in clause (II)(vii) and (x), respectively, of the definition of Mortgage File. If any UCC assignment or amendment or UCC financing statement, as applicable, is lost or returned unfiled to the Servicer because of any defect therein, the Servicer shall prepare a substitute UCC assignment or amendment or UCC financing statement, as applicable, or cure such defect, and cause such UCC assignment or amendment or UCC financing statement, as applicable, to be filed in accordance with this paragraph. In connection with its servicing of Cooperative Loans, the Servicer will use its reasonable best efforts to file timely continuation statements with regard to each financing statement and assignment relating to Cooperative Loans as to which the related Cooperative Apartment is located outside of the State of New York.

In connection with the assignment of any Mortgage Loan registered on the MERS(R) System, the Servicer further agrees that it will cause, at the Servicer's own expense, as soon as practicable after the Closing Date, the MERS(R)System to indicate that such Mortgage Loans have been assigned to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files (a) the specific code which identifies the Trustee as the assignee of such Mortgage Loan and (b) the series specific code in the field "Pool Field" which identifies the series of Certificates issued in connection with such Mortgage Loans. The Servicer agrees that it will not alter the codes referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement, and there is filed any financing statement or amendment thereof necessary to comply with the New York Uniform Commercial Code or the Uniform Commercial Code of any applicable jurisdiction.

(f)   It is intended that the conveyance by the Company to the Trustee of the Mortgage Loans as provided for in this Section 2.01 be construed as a sale by the Company to the Trustee of the Mortgage Loans for the benefit of the Certificateholders. Further, it is not intended that such conveyance be deemed to be a grant of a security interest in the Mortgage Loans by the Company to the Trustee to secure a debt or other obligation of the Company. However, if the Mortgage Loans are held to be property of the Company or of the Seller, or if for any reason this Agreement is held or deemed to create a security interest in the Mortgage Loans, then it is intended that, (a) this Agreement be and hereby is a security agreement within the meaning of Article 9 of the Uniform Commercial Code of any applicable jurisdiction; (b) the conveyance provided for in Section 2.01 shall be deemed to be, and hereby is, (1) an assignment by the Company to the Trustee of a security interest in all of the Company's right, title and interest, whether now owned or hereafter acquired, in and to the following: (A) the Mortgage Loans, including (i) with respect to each Cooperative Loan, the related Mortgage Note, Security Agreement, Assignment of Proprietary Lease, Cooperative Stock Certificate and Cooperative Lease, (ii) with respect to each Mortgage Loan other than a Cooperative Loan, the related Mortgage Note and Mortgage, and (iii) any insurance policies and all other documents in the related Mortgage File, (B) all amounts payable pursuant to the Mortgage Loans in accordance with the terms thereof, (C) all proceeds of the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other property, including without limitation all amounts from time to time held or invested in the Payment Account or the Custodial Account, whether in the form of cash, instruments, securities or other property, (D) all accounts, general intangibles, chattel paper, instruments, documents, money, deposit accounts, goods, letters of credit, letter-of-credit rights, oil, gas, and other minerals, and investment property consisting of, arising from or relating to any of the foregoing, and (E) all proceeds of the foregoing, and (2) an assignment by the Company to the Trustee of any security interest in any and all of the Seller's right (including the power to convey title thereto), title and interest, whether now owned or hereafter acquired, in and to the property described in the foregoing clauses (1)(A), (B), (C), (D) and (E) granted by the Seller to the Company pursuant to the Purchase Agreement; (c) the possession by the Trustee, the Custodian or any other agent of the Trustee of any of the foregoing property shall be deemed to be possession by the secured party, or possession by a purchaser or a person holding for the benefit of such secured party, for purposes of perfecting the security interest pursuant to the Pennsylvania Uniform Commercial Code and the Uniform Commercial Code of any other applicable jurisdiction (including, without limitation, Sections 9-313 and 9-314 thereof); and (d) notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or confirmations from, securities intermediaries, bailees or agents of, or persons holding for, the Trustee (as applicable) for the purpose of perfecting such security interest under applicable law.

The Company and, at the Company's direction, GMACM and the Trustee shall, to the extent consistent with this Agreement, take such reasonable actions as may be necessary to ensure that, if this Agreement were determined to create a security interest in the Mortgage Loans and the other property described above, such security interest would be determined to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of this Agreement. Without limiting the generality of the foregoing, the Company shall prepare and deliver to the Trustee not less than 15 days prior to any filing date and, the Trustee shall forward for filing, in accordance with the Servicer's instructions, or shall cause to be forwarded for filing, at the expense of the Company, all filings necessary to maintain the effectiveness of any original filings necessary under the Uniform Commercial Code as in effect in any jurisdiction to perfect the Trustee's security interest in the Mortgage Loans, as evidenced by an Officer's Certificate of the Company, including without limitation (x) continuation statements, and (y) such other statements as may be occasioned by (1) any change of name of the Seller, the Company or the Trustee (such preparation and filing shall be at the expense of the Trustee, if occasioned by a change in the Trustee's name), (2) any change of type or jurisdiction of organization of the Seller or the Company and (3) any transfer of any interest of the Seller or the Company in any Mortgage Loan. The Company shall file or cause to be filed the original filing necessary under the Uniform Commercial Code to perfect the Trustee's security interest in the Mortgage Loans.

Section 2.02.    Acceptance by Trustee.

The Trustee acknowledges that the Custodian, acting on behalf of the Trustee, has received (subject to any exceptions noted in the custodian certification described below) the Mortgage Notes and the Trustee declares that it holds or will hold the assets included in the definition of "Trust Fund," in trust for the exclusive use and benefit of all present and future Certificateholders.

The Trustee agrees, for the benefit of the Certificateholders that pursuant to the Custodial Agreement, the Custodian will review each Mortgage Note and will execute and deliver, or cause to be executed and delivered, to GMACM, the Trustee and the Servicer a custodian certification substantially in the form annexed hereto as Exhibit M on or prior to the Closing Date. Pursuant to the Custodial Agreement, in conducting such review, the Custodian is required to ascertain whether the Mortgage Notes have been executed and received, and whether the Mortgage Notes relate, determined on the basis of the original principal balance and loan number, to the Mortgage Loans. Neither the Custodian nor the Trustee shall be under any duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded, or are in recordable form or that they are other than what they purport to be on their face.

If, in the process of reviewing the Mortgage Notes and preparing the certifications referred to above, the Custodian finds any Mortgage Note to be missing or contains any defect which materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan, the Custodian is required pursuant to the Custodial Agreement, to notify the Trustee, the Company and the Seller, and the Trustee shall request that GMACM cure any such defect in all material respects within 90 days from the date on which GMACM was notified of such defect, and if GMACM does not cure such defect in all material respects during such period, the Trustee shall request on behalf of the Certificateholders that GMACM either (i) substitute for such Mortgage Loan a Qualified Substitute Mortgage Loan, which substitution shall be accomplished in the manner and subject to the conditions set forth in Section 2.04, or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price within 90 days after the date on which GMACM was notified of such defect; provided that if such defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure, substitution or repurchase must occur within 90 days from the date such breach was discovered. It is understood and agreed that the obligation of GMACM to cure a material defect in, or substitute for, or purchase any Mortgage Loan as to which a material defect in, or omission of, a Mortgage Note exists shall constitute the sole remedy respecting such material defect or omission available to Certificateholders or the Trustee on behalf of Certificateholders. The Purchase Price for the purchased Mortgage Loan shall be deposited or caused to be deposited upon receipt by the Trustee in the Payment Account, or upon receipt by the Servicer in the Custodial Account. Upon receipt by the Trustee of written notification of such deposit signed by a Servicing Officer, and upon receipt of a Request for Release from the Servicer, the Custodian on behalf of the Trustee, shall (i) release or cause to be released to GMACM the related Mortgage Note, and (ii) cause the Servicer to release to GMACM any remaining documents in the related Mortgage File which are held by the Servicer. The Trustee shall execute and deliver such instruments of transfer or assignment, in each case without recourse, representation or warranty, as GMACM shall require as necessary to vest in GMACM ownership of any Mortgage Loan released pursuant hereto and at such time the Trustee shall have no further responsibility with respect to the related Mortgage Note.

Section 2.03.    Representations, Warranties and Covenants of the Servicer.

The Servicer hereby represents and warrants to the Trustee for the benefit of the Certificateholders that:

(i)    The Servicer is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and is or will be in compliance with the laws of each state in which any Mortgaged Property is located to the extent necessary to ensure the enforceability of each Mortgage Loan in accordance with the terms of this Agreement;

(ii)    The execution and delivery of this Agreement by the Servicer and its performance and compliance with the terms of this Agreement will not violate the Servicer's Certificate of Incorporation or Bylaws or constitute a material default (or an event which, with notice or lapse of time, would constitute a material default) under, or result in the material breach of, any material contract, agreement or other instrument to which the Servicer is a party or which may be applicable to the Servicer or any of its assets;

(iii)    This Agreement, assuming due authorization, execution and delivery by the Trustee and the Company, constitutes a valid, legal and binding obligation of the Servicer, enforceable against it in accordance with the terms hereof subject to applicable bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law and to public policy as it relates to indemnification and contribution under applicable securities laws;

(iv)    The Servicer is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or other) or operations of the Servicer or its properties or might have consequences that would materially adversely affect its performance hereunder;

(v)    No litigation is pending or, to the best of the Servicer's knowledge, threatened against the Servicer which would prohibit its entering into this Agreement or performing its obligations under this Agreement;

(vi)    The Servicer will comply in all material respects in the performance of this
        Agreement with all reasonable rules and requirements of each insurer under
        each related insurance policy; and

(vii)   No information, certificate of an officer, statement furnished in writing or report
        delivered to the Company, any Affiliate of the Company or the Trustee by the
        Servicer will, to the knowledge of the Servicer, contain any untrue statement
        of a material fact or omit a material fact necessary to make the information,
        certificate, statement or report not misleading; and

(viii)  The Servicer is a member of MERS in good standing, and will comply in all material
        respects with the rules and procedures of MERS in connection with the
        servicing of the Mortgage Loans that are registered with MERS.

It is understood and agreed that the representations and warranties set forth in this
Section 2.03 shall survive delivery of the respective Mortgage Notes to the Custodian, if
any, or the Trustee.

Section 2.04.  Representations and Warranties of the Seller.

     The Company hereby assigns to the Trustee for the benefit of Certificateholders all
of its right, title and interest in respect of the Purchase Agreement insofar as the
Purchase Agreement relates to the representations and warranties made by the Seller in
respect of the Mortgage Loans and any remedies provided thereunder for any breach of such
representations and warranties, such right, title and interest may be enforced by the
Servicer on behalf of the Trustee and the Certificateholders. Upon the discovery by the
Company, the Servicer, the Trustee or any Custodian of a breach of any of the
representations and warranties made by the Seller in the Purchase Agreement (which, for
purposes hereof, will be deemed to include any other cause giving rise to a repurchase
obligation under the Purchase Agreement) in respect of any Mortgage Loan which materially
and adversely affects the interests of the Certificateholders in such Mortgage Loan, the
party discovering such breach shall give prompt written notice to the other parties (any
Custodian being so obligated under a Custodial Agreement). The Servicer shall promptly
notify the Seller of such breach and request that the Seller either (i) cure such breach in
all material respects within 90 days from the date the Seller was notified of such breach or
(ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner
set forth in Section 2.02; provided that in the case of a breach under the Purchase
Agreement, the Seller, shall have the option to substitute a Qualified Substitute Mortgage
Loan or Loans for such Mortgage Loan if such substitution occurs within two years following
the Closing Date; provided that if the breach would cause the Mortgage Loan to be other than
a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure,
repurchase or substitution must occur within 90 days from the date the breach was
discovered. In the event that the Seller elects to substitute a Qualified Substitute
Mortgage Loan or Loans for a Deleted Mortgage Loan pursuant to this Section 2.04, the Seller
shall deliver to the Custodian with respect to such Qualified Substitute Mortgage Loan or
Loans, the original Mortgage Note endorsed as required by Section 2.01, and the Seller shall
deliver to the Servicer with respect to such Qualified Substitute Mortgage Loan, the
Mortgage, an Assignment of the Mortgage in recordable form if required pursuant to
Section 2.01, and such other documents and agreements as are required to be held by the
Servicer pursuant to Section 2.01. No substitution will be made in any calendar month after
the Determination Date for such month. Monthly Payments due with respect to Qualified
Substitute Mortgage Loans in the month of substitution shall not be part of the Trust Fund
and will be retained by the Servicer and remitted by the Servicer to the Seller on the next
succeeding Distribution Date. For the month of substitution, distributions to the
Certificateholders will include the Monthly Payment due on a Deleted Mortgage Loan for such
month and thereafter the Seller shall be entitled to retain all amounts received in respect
of such Deleted Mortgage Loan. The Servicer shall amend or cause to be amended the Mortgage
Loan Schedule for the benefit of the Certificateholders to reflect the removal of such
Deleted Mortgage Loan and the substitution of the Qualified Substitute Mortgage Loan or
Loans and the Servicer shall deliver the amended Mortgage Loan Schedule to the Trustee.
Upon such substitution, the Qualified Substitute Mortgage Loan or Loans shall be subject to
the terms of this Agreement and the related Subservicing Agreement in all respects, and the
Seller shall be deemed to have made the representations and warranties with respect to the
Qualified Substitute Mortgage Loan contained in the Purchase Agreement as of the date of
substitution.

     In connection with the substitution of one or more Qualified Substitute Mortgage
Loans for one or more Deleted Mortgage Loans, the Servicer will determine the amount (if
any) by which the aggregate principal balance of all such Qualified Substitute Mortgage
Loans as of the date of substitution is less than the aggregate Stated Principal Balance of
all such Deleted Mortgage Loans (in each case after application of the principal portion of
the Monthly Payments due in the month of substitution that are to be distributed to the
Certificateholders in the month of substitution). The Servicer shall deposit the amount of
such shortfall received from the Seller into the Custodial Account on the day of
substitution. Prior to the delivery of the Qualified Substitute Mortgage Loan, the Servicer
shall give notice in writing to the Trustee of any such shortfall, which notice shall be
accompanied by an Officer's Certificate stating that such Mortgage Loan is a Qualified
Substitute Mortgage Loan and as to the calculation of any such shortfall and (subject to
Section 10.01(f)) by an Opinion of Counsel to the effect that such substitution will not
cause (a) any federal tax to be imposed on the Trust Fund, including without limitation, any
federal tax imposed on "prohibited transactions" under Section 860F(a)(1) of the Code or on
"contributions after the startup date" under Section 860G(d)(1) of the Code or (b) any
portion of either of the REMICs to fail to qualify as such at any time that any Certificate
is outstanding.

     It is understood and agreed that the obligation of the Seller to cure such breach or
purchase (or to substitute for) such Mortgage Loan as to which a breach of its
representations and warranties has occurred and is continuing shall constitute the sole
remedy respecting such breach available to the Certificateholders or the Trustee on behalf
of Certificateholders. In connection with the purchase of or substitution for any such
Mortgage Loan by the Seller, the Trustee shall assign, pursuant to an assignment delivered
to the Trustee by the Seller, to the Seller or its designee all of the right, title and
interest in respect of the Purchase Agreement applicable to such Mortgage Loan.

Distribution Date next following the date of such investment (except that (i) any investment in the institution with which the Payment Account is maintained (or any investment which is an obligation of the institution with which the Payment Account is maintained) or any investment advisor, administrator, shareholder, servicer, trustee, depositor or sub-custodian) may mature or be payable on demand on such Distribution Date and (ii) any other investment may mature or be payable on demand on such Distribution Date if the Trustee shall advance funds on such Distribution Date to the Payment Account in the amount payable on such investment on such Distribution Date, pending receipt thereof to the extent necessary to make distributions on the Certificates) and shall not be sold or disposed of prior to maturity. All income and gain realized from any such investment or from uninvested balances in the Payment Account shall be for the benefit of the Trustee and shall be subject to its withdrawal or order from time to time. The amount of any losses incurred in respect of any such investments shall be deposited in the Payment Account by the Trustee out of its own funds immediately as realized without any right of reimbursement.

Section 4.02.  Distributions.

(a)    On each Distribution Date, the amount received by REMIC I pursuant to Section 10.04(a) shall be deemed distributed from REMIC I to REMIC II as the holder of the REMIC I Regular Interests and the amount received by REMIC II pursuant to Section 10.04(b) shall be deemed distributed from REMIC II to REMIC III as the holder of the REMIC II Regular interests in the amounts and in accordance with Section 10.02(b) through (c). On each Distribution Date, the Trustee or the Paying Agent appointed by the Trustee shall distribute in accordance with the Remittance Report first, to the Trustee, payment for any servicing transfer expenses reimbursable to the Trustee pursuant to Section 7.02(a) and that have not been paid or reimbursed to the Trustee by the Servicer, allocated in reduction of the Available Distribution Amounts pro rata, based upon the aggregate Stated Principal Balances of each Loan Group, second, to the Servicer, in the case of a distribution pursuant to Section 4.02(a)(iii) below, the amount required to be distributed to the Servicer or a Subservicer pursuant to Section 4.02(a)(iii) below, and third, to each Certificateholder of record on the next preceding Record Date (other than as provided in Section 9.01 respecting the final distribution) either in immediately available funds (by wire transfer or otherwise) to the account of such Certificateholder at a bank or other entity having appropriate facilities therefor, if such Certificateholder has so notified the Trustee or the Paying Agent, as the case may be, or, if such Certificateholder has not so notified the Trustee or the Paying Agent by the Record Date, by check mailed to such Certificateholder at the address of such Holder appearing in the Certificate Register for such Certificateholder's share (which share with respect to each Class of Certificates, shall be based on the aggregate of the Percentage Interests represented by Certificates of the applicable Class held by such Holder) of the following amounts, in the following order of priority (subject to the provisions of Section 4.02(b) below), in each case to the extent of the related Available Distribution Amount (net of the amounts payable above):

(i)    (I)    from the Available Distribution Amount related to the Group 1 Loans, to the Holders of the Class R Certificates and Class 1-A Certificates, on a pro rata basis based on Accrued Certificate Interest payable on such Classes of Certificates with respect to such Distribution Date, Accrued Certificate Interest on such Certificates for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date except as provided in the last paragraph of this Section 4.02(a), in each case in respect of interest on such Classes;

(II)    from the Available Distribution Amount related to the Group 2 Loans, to the Holders of the Class 2-A Certificates, on a pro rata basis based on Accrued Certificate Interest payable on such Classes of Certificates with respect to such Distribution Date, Accrued Certificate Interest on such Certificates for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date except as provided in the last paragraph of this Section 4.02(a), in each case in respect of interest on such Class; and

(III)    from the Available Distribution Amount related to the Group 3 Loans, to the Holders of the Class 3-A Certificates, on a pro rata basis based on Accrued Certificate Interest payable on such Classes of Certificates with respect to such Distribution Date, Accrued Certificate Interest on such Certificates for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date except as provided in the last paragraph of this Section 4.02(a), in each case in respect of interest on such Class;

(IV)    from the Available Distribution Amount related to the Group 4 Loans, to the Holders of the Class 4-A Certificates, on a pro rata basis based on Accrued Certificate Interest payable on such Classes of Certificates with respect to such Distribution Date, Accrued Certificate Interest on such Certificates for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date except as provided in the last paragraph of this Section 4.02(a), in each case in respect of interest on such Class;

(V)    from the Available Distribution Amount related to the Group 5 Loans, to the Holders of the Class 5-A Certificates, on a pro rata basis based on Accrued Certificate Interest payable on such Classes of Certificates with respect to such Distribution Date, Accrued Certificate Interest on such Certificates for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date except as provided in the last paragraph of this Section 4.02(a), in each case in respect of interest on such Class; and

(ii)    from the related Available Distribution Amount remaining after the distributions pursuant to Section 4.02(a)(i) above, to the Holders of the Senior Certificates related to a Loan Group, in the priorities and amounts set forth in Section 4.02(b) through (d), the sum of the following (applied to reduce

the Certificate Principal Balances of such Senior Certificates, as applicable:

(A)    the Senior Prepayment Percentage for such Loan Group on such Distribution Date times the following:

(1)    the principal portion of each Monthly Payment due during the related Due Period on each Outstanding Mortgage Loan in the related Loan Group, whether or not received on or prior to the related Determination Date, minus the principal portion of any Debt Service Reduction in the related Loan Group which together with other Bankruptcy Losses exceeds the Bankruptcy Amount;

(2)    the Stated Principal Balance of any Mortgage Loan in the related Loan Group repurchased during the preceding calendar month (or deemed to have been so repurchased in accordance with Section 3.07(b)) pursuant to Sections 2.02, 2.04 or 4.07, and the amount of any shortfall deposited in the Custodial Account in connection with the substitution of a Deleted Mortgage Loan from the related Loan Group pursuant to Section 2.02 or Section 2.04, during the preceding calendar month; and

(3)    the principal portion of all other unscheduled collections with respect to the related Loan Group (other than Principal Prepayments in Full and Curtailments and amounts received in connection with a Cash Liquidation or REO Disposition of a Mortgage Loan in such Loan Group described in (B) Section 4.02(a)(ii)(B) below, including without limitation Insurance Proceeds, Liquidation Proceeds and REO Proceeds) received during the preceding calendar month or, in the case of Principal Prepayment in Full, during the related Prepayment Period (or deemed to have been so received in accordance with Section 3.07(b)) to the extent applied by the Servicer as recoveries of principal of the related Mortgage Loan pursuant to Section 3.14;

(B)    with respect to each Mortgage Loan from the related Loan Group for which a Cash Liquidation or a REO Disposition occurred during the preceding calendar month (or was deemed to have occurred during such period in accordance with Section 3.07(b)) and did not result in any Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary Losses, an amount equal to the lesser of (a) the Senior Percentage for such Loan Group for such Distribution Date times the Stated Principal Balance of such Mortgage Loan and (b) the Senior Accelerated Distribution Percentage for such Loan Group for such Distribution Date times the related unscheduled collections (including without limitation Insurance Proceeds, Liquidation Proceeds and REO Proceeds) to the extent applied by the Servicer as recoveries of principal of the related Mortgage Loan pursuant to Section 3.14);

(C)    the Senior Accelerated Distribution Percentage for such Loan Group for such Distribution Date times the aggregate of all Principal Prepayments in Full received with respect to Mortgage Loans in the related Loan Group in the related Prepayment Period and Curtailments received with respect to Mortgage Loans in the related Loan Group in the preceding calendar month;

(D)    any Excess Subordinate Principal Amount allocated to the related Loan Group for such Distribution Date but only to the extent of Eligible Funds for the related Loan Group on such Distribution Date; and

(E)    any amounts described in subsection (ii), clauses (A), (B) and (C) of this Section 4.02(a), as determined for any previous Distribution Date with respect to such Loan Group, which remain unpaid after application of amounts previously distributed pursuant to this clause (E) to the extent that such amounts are not attributable to Realized Losses which have been allocated to the Subordinate Certificates;

(iii)   from Available Distribution Amounts remaining, if any, if the Certificate Principal Balances of the Subordinate Certificates have not been reduced to zero, to the Servicer or a Subservicer, by remitting for deposit to the Custodial Account, to the extent of and in reimbursement for any Advances or Subservicer Advances previously made with respect to any Mortgage Loan or REO Property which remain unreimbursed in whole or in part following the Cash Liquidation or REO Disposition of such Mortgage Loan or REO Property, minus any such Advances that were made with respect to delinquencies that ultimately constituted Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary Losses;

(iv)    from Available Distribution Amounts remaining, if any, to the Holders of the Class M-1 Certificates, the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(v)     from Available Distribution Amounts remaining, if any, to the Holders of the Class M-1 Certificates, an amount equal to the Subordinate Principal Distribution Amount derived from each Loan Group for such Class of Certificates for such Distribution Date, applied in reduction of the Certificate Principal Balance of the Class M-1 Certificates;

(vi)    from Available Distribution Amounts remaining, if any, to the Holders of the Class M-2 Certificates, the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(vii)  from Available Distribution Amounts remaining, if any, to the Holders of the Class M-2 Certificates, an amount equal to the Subordinate Principal Distribution Amount derived from each Loan Group for such Class of Certificates for such Distribution Date, applied in reduction of the Certificate Principal Balance of the Class M-2 Certificates;

(viii)  from Available Distribution Amounts remaining, if any, to the Holders of the Class M-3 Certificates, the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(ix)  from Available Distribution Amounts remaining, if any, to the Holders of the Class M-3 Certificates, an amount equal to the Subordinate Principal Distribution Amount derived from each Loan Group for such Class of Certificates for such Distribution Date, applied in reduction of the Certificate Principal Balance of the Class M-3 Certificates;

(x)  from Available Distribution Amounts remaining, if any, to the Holders of the Class B-1 Certificates, the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(xi)  from Available Distribution Amounts remaining, if any, to the Holders of the Class B-1 Certificates, an amount equal to the Subordinate Principal Distribution Amount derived from each Loan Group for such Class of Certificates for such Distribution Date, applied in reduction of the Certificate Principal Balance of the Class B-1 Certificates;

(xii)  from Available Distribution Amounts remaining, if any, to the Holders of the Class B-2 Certificates, the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(xiii)  from Available Distribution Amounts remaining, if any, to the Holders of the Class B-2 Certificates, an amount equal to the Subordinate Principal Distribution Amount derived from each Loan Group for such Class of Certificates for such Distribution Date, applied in reduction of the Certificate Principal Balance of the Class B-2 Certificates;

(xiv)  from Available Distribution Amounts remaining, if any, to the Holders of the Class B-3 Certificates, an amount equal to the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below;

(xv)  from Available Distribution Amounts remaining, if any, to the Holders of the Class B-3 Certificates, an amount equal to the Subordinate Principal Distribution Amount derived from each Loan Group for such Class of Certificates for such Distribution Date applied in reduction of the Certificate Principal Balance of the Class B-3 Certificates;

(xvi)  from Available Distribution Amounts remaining, if any, to the Holders of the Senior Certificates related to any Loan Group, the portion, if any, of the Available Distribution Amount for such Loan Group remaining after the foregoing distributions, applied to reduce the Certificate Principal Balances of such Senior Certificates, but in no event more than the aggregate of the outstanding Certificate Principal Balances of each such Class of Senior Certificates; and thereafter, to each Class of Subordinate Certificates then outstanding beginning with such Class with the Highest Priority, any portion of the Available Distribution Amount for each Loan Group remaining after the related Senior Certificates have been retired, applied to reduce the Certificate Principal Balance of each such Class of Subordinate Certificates, but in no event more than the outstanding Certificate Principal Balance of each such Class of Subordinate Certificates;

(xvii)  from Available Distribution Amounts remaining, if any, to the Trustee, any fees and/or expenses payable or reimbursable by the Servicer pursuant to Section 8.05 hereof, to the extent not paid by the Servicer;  and

(xviii)  to the Class R Certificates, the balance, if any, of the Available Distribution Amount.

Notwithstanding the foregoing, on any Distribution Date, with respect to the Class of Subordinate Certificates outstanding on such Distribution Date with the Lowest Priority, or in the event the Subordinate Certificates are no longer outstanding, the Senior Certificates related to the Loan Group in which Mortgage Loan described below is in, Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date shall be distributable only to the extent that such unpaid Accrued Certificate Interest was attributable to interest shortfalls relating to the failure of the Servicer to make any required Advance, or the determination by the Servicer that any proposed Advance would be a Nonrecoverable Advance, with respect to the related Mortgage Loan where such Mortgage Loan has not yet been the subject of a Cash Liquidation or REO Disposition.

(b)  Distributions of principal on the Senior Certificates on each Distribution Date shall be made as follows:

(i)  Group 1.  An amount equal to the Group 1 Senior Principal Distribution Amount shall be distributed first, to the Class R Certificates and then to the Class 1-A-1 and Class 1-A-2 Certificates, pro rata, in each case in reduction of its Certificate Principal Balance until the Certificate Principal Balance thereof has been reduced to zero;

(ii)  Group 2.  An amount equal to the Group 2 Senior Principal Distribution Amount shall

be distributed to the Class 2-A-1 and Class 2-A-2 Certificates, pro rata, in each case in reduction of its Certificate Principal Balance until the Certificate Principal Balance thereof has been reduced to zero; and

(iii)   Group 3.   An amount equal to the Group 3 Senior Principal Distribution Amount shall be distributed to the Class 3-A-1 and Class 3-A-2 Certificates, pro rata, in each case in reduction of its Certificate Principal Balance until the Certificate Principal Balance thereof has been reduced to zero;

(iv)   Group 4.   An amount equal to the Group 3 Senior Principal Distribution Amount shall be distributed to the Class 4-A-1 and Class 4-A-2 Certificates, pro rata, in each case in reduction of its Certificate Principal Balance until the Certificate Principal Balance thereof has been reduced to zero;

(v)   Group 5.   An amount equal to the Group 5 Senior Principal Distribution Amount shall be distributed as follows: (1) an amount equal to the Class 5-A-1A/Class 5-A-1B Senior Distribution Amount to the Class 5-A-1A Certificates in reduction of its Certificate Principal Balance until the Certificate Principal Balance thereof has been reduced to zero and then to the Class 5-A-1B Certificates in reduction of its Certificate Principal Balance until the Certificate Principal Balance thereof has been reduced to zero, and (2) an amount equal to the Class 5-A-2 Senior Distribution Amount to the Class 5-A-2 Certificates in reduction of its Certificate Principal Balance until the Certificate Principal Balance thereof has been reduced to zero; and

(c)   Prior to the occurrence of the Credit Support Depletion Date but after the reduction of the Certificate Principal Balances of any of the Class 1-A Certificates, the Class 2-A Certificates, the Class 3-A Certificates, the Class 4-A Certificates or the Class 5-A Certificates to zero, the remaining Senior Certificates shall be entitled to receive, pro rata, based upon their respective aggregate Certificate Principal Balances, in addition to any Principal Prepayments in Full and Curtailments related to such Certificates' respective Loan Group, 100% of the Principal Prepayments in Full and Curtailments on the Mortgage Loans in the Loan Group or Loan Groups with respect to which the aggregate Certificate Principal Balance of the related Senior Certificates has been reduced to zero, in accordance with the priorities set forth in Section 4.02(b) above, in reduction of the Certificate Principal Balances thereof, on any Distribution Date if (i) the Aggregate Subordinate Percentage is less than 200% of the Aggregate Subordinate Percentage as of the Closing Date or (ii) the aggregate of the Stated Principal Balances of all Mortgage Loans Delinquent 60 days or more (including Mortgage Loans in REO and foreclosure) (averaged over the preceding six month period), as a percentage of the aggregate of the Certificate Principal Balances of the Subordinate Certificates, is greater than or equal to 50%.

In addition, on any Distribution Date prior to the Credit Support Depletion Date on which the aggregate Certificate Principal Balance of any of the Class 1-A Certificates, the Class 2-A Certificates, the Class 3-A Certificates, the Class 4-A Certificates or the Class 5-A Certificates, is greater than the aggregate Stated Principal Balance of the Mortgage Loans in the related Loan Group, in each case after giving effect to distributions to be made on such Distribution Date (each such Loan Group, an "Undercollateralized Group"), the Available Distribution Amount for the Overcollateralized Groups otherwise allocable to the Subordinate Certificates shall instead be distributed to such Undercollateralized Group(s), as applicable, pro rata, based upon their respective amounts of undercollateralization, in accordance with the priorities set forth in clause 4.02(b) above, (1) in reduction of the Certificate Principal Balances thereof, until the aggregate Certificate Principal Balance of such Undercollateralized Group(s), as applicable, equals the aggregate Stated Principal Balance of the Mortgage Loans in the related Loan Group(s), and (2) an amount equal to one month's interest at the applicable Pass-Through Rate for such Undercollateralized Group(s), as applicable, on the amount of such difference, first, to pay any unpaid interest on such Class or Classes of Certificates and second, to pay principal on such Classes in the manner described in (1) above.

(d)   After the reduction of the Certificate Principal Balances of the Senior Certificates relating to a Loan Group to zero but prior to the Credit Support Depletion Date, such Senior Certificates shall be entitled to no further distributions of principal thereon and the related Available Distribution Amount shall be distributed solely to the holders of the Subordinate Certificates, in each case as described herein, except as is otherwise set forth in Section 4.02(c) above.

(e)   In addition to the foregoing distributions, with respect to any Subsequent Recoveries, the Servicer shall deposit such funds into the Custodial Account pursuant to Section 3.07(b)(iii). If, after taking into account such Subsequent Recoveries for a Loan Group, the amount of a previously allocated Realized Loss is reduced, the amount of such Subsequent Recoveries will be applied to increase the Certificate Principal Balance of the Class of Certificates related to such Loan Group with a Certificate Principal Balance greater than zero with the highest payment priority to which Realized Losses have been allocated, but not by more than the amount of Realized Losses previously allocated to that Class of Certificates pursuant to Section 4.05. The amount of any remaining Subsequent Recoveries will be applied to increase from zero the Certificate Principal Balance of the Class of Certificates with the next lower payment priority, up to the amount of Realized Losses previously allocated to that Class of Certificates pursuant to Section 4.05. Any remaining Subsequent Recoveries will in turn be applied to increase from zero the Certificate Principal Balance of the Class of Certificates related to such Loan Group with the next lower payment priority up to the amount of Realized Losses previously allocated to that Class of Certificates pursuant to Section 4.05, and so on. Holders of such Certificates will not be entitled to any payment in respect of Accrued Certificate Interest on the amount of such increases for any Interest Accrual Period preceding the Distribution Date on which such increase occurs. Any such increase shall be applied to the Certificate Principal Balance of each Certificate of such Class in accordance with its respective Percentage Interest.

(f)    Each distribution with respect to a Book-Entry Certificate shall be paid to the Depository, as Holder thereof, and the Depository shall be solely responsible for crediting the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures. Each Depository Participant shall be responsible for disbursing such distribution to the Certificate Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm") for which it acts as agent. Each brokerage firm shall be responsible for disbursing funds to the Certificate Owners that it represents. None of the Trustee, the Certificate Registrar, the Company or the Servicer shall have any responsibility for the allocation of such distributions among Depository Participants, brokerage firms or Certificate Owners.

(g)    Except as otherwise provided in Section 9.01, if the Servicer anticipates that a final distribution with respect to any Class of Certificates shall be made on the next Distribution Date, the Servicer shall, no later than the Determination Date in the month of such final distribution, notify the Trustee and the Trustee shall, no later than two (2) Business Days after the later of (i) receipt of such notices or (ii) such Determination Date, mail on such date to each Holder of such Class of Certificates a notice to the effect that: (i) the Trustee anticipates that the final distribution with respect to such Class of Certificates shall be made on such Distribution Date but only upon presentation and surrender of such Certificates at the office designated by the Trustee or as otherwise specified therein, and (ii) no interest shall accrue on such Certificates from and after the end of the related Interest Accrual Period. In the event that Certificateholders required to surrender their Certificates pursuant to Section 9.01(c) do not surrender their Certificates for final cancellation, the Trustee shall cause funds distributable with respect to such Certificates to be withdrawn from the Payment Account and credited to a separate escrow account for the benefit of such Certificateholders as provided in Section 9.01(d).

Section 4.03.  Statements to Certificateholders.

(a)    Concurrently with each distribution charged to the Payment Account and with respect to each Distribution Date, the Trustee shall make available to Certificateholders, the Rating Agencies and other parties to this Agreement via the Trustee's internet website the Remittance Report.

The Trustee's internet website shall initially be located at "www.jpmorgan.com/sfr." Assistance in using the website can be obtained by calling the Trustee's customer service desk at (877) 722-1095. Parties that are unable to use the website are entitled to have a paper copy mailed to them via first class mail by calling the customer service desk and indicating such. The Trustee shall have the right to change the way Distribution Date statements are distributed in order to make such distribution more convenient and/or more accessible to the above parties, provided that such procedures are no less convenient for the Certificateholders and the Trustee shall provide timely and adequate notification to all above parties regarding any such changes. The Trustee shall also be entitled to rely on but shall not be responsible for the content or accuracy of any information provided by third parties for purposes of making the Remittance Report available and may affix to it a disclaimer it deems appropriate in its reasonable discretion.

(b)    Within a reasonable period of time after the end of each calendar year, the Trustee shall prepare, or cause to be prepared, and shall forward, or cause to be forwarded, to each Person who at any time during the calendar year was the Holder of a Certificate, other than a Class R Certificate, a statement containing the information set forth in clauses (i)(a) and (ii) of Exhibit L attached hereto aggregated for such calendar year or applicable portion thereof during which such Person was a Certificateholder. Such obligation of the Trustee shall be deemed to have been satisfied to the extent that substantially comparable information shall be provided by the Trustee pursuant to any requirements of the Code.

(c)    Within a reasonable period of time after the end of each calendar year, the Trustee shall prepare, or cause to be prepared, and shall forward, or cause to be forwarded, to each Person who at any time during the calendar year was the Holder of a Class R Certificate, a statement containing the applicable distribution information provided pursuant to this Section 4.03 aggregated for such calendar year or applicable portion thereof during which such Person was the Holder of a Class R Certificate. Such obligation of the Trustee shall be deemed to have been satisfied to the extent that substantially comparable information shall be provided by the Servicer pursuant to any requirements of the Code.

(d)    Upon the written request of any Certificateholder, the Trustee, as soon as reasonably practicable, shall provide the requesting Certificateholder with such information in the Trustee's possession as is necessary and appropriate, in the Trustee's sole discretion, for purposes of satisfying applicable reporting requirements under Rule 144A. The Company and the Servicer shall cooperate with the Trustee as is reasonably necessary to respond to any such request but the Trustee shall have no liability for failure to provide any information not in the Trustee's possession.

Section 4.04.  Distribution of Reports to the Trustee and the Company; Advances by the
                        Servicer.

(a)    Prior to the close of business on two Business Days succeeding each Determination Date, or if such Determination Date falls on a Friday or a day that is not a Business Day, on the Business Day next succeeding such Determination Date, the Servicer shall furnish the Remittance Report to the Trustee in a mutually agreed upon form of an electromagnetic tape or disk and hard copy, or other automated transmission. The Remittance Report and any information supplemental thereto shall include such information with respect to the Mortgage Loans that is required by the Trustee for purposes of fulfilling its obligations as REMIC Administrator under Article X and making the distributions described in Section 4.02, as set forth in written specifications or guidelines issued by the Servicer or the Trustee from time to time. The Trustee shall be protected in relying upon the information set forth in the Remittance Report without any independent check or verification.

(b)    On or before 2:00 P.M. New York time on each Payment Account Deposit Date, the Servicer shall either (i) deposit in the Payment Account from its own funds, or funds received therefor from the Subservicers, an amount equal to the Advances to be made by the Servicer in respect of the related Distribution Date, which shall be in an aggregate amount

EX-10 3 ar2pa.htm EX 10.2 PURCHASE AGREEMENT

EXECUTION COPY

### MORTGAGE LOAN PURCHASE AGREEMENT

This is a Mortgage Loan Purchase Agreement (the "Agreement") dated as of March 30, 2006 by and between GMAC Mortgage Corporation, a Pennsylvania corporation, having an office at 100 Witmer Road, Horsham, Pennsylvania 19044 (the "Seller") and Residential Asset Mortgage Products, Inc., a Delaware corporation, and having an office at 8400 Normandale Lake Boulevard, Minneapolis, Minnesota 55437 (the "Purchaser").

The Seller agrees to sell to the Purchaser and the Purchaser agrees to purchase from the Seller certain mortgage loans on a servicing-retained basis as described herein (the "Mortgage Loans"). The following terms are defined as follows:

| | |
|---|---|
| Aggregate Principal Balance (as of the Cut-Off Date): | $372,995,323.98 (after deduction of scheduled principal payments due on or before the Cut-Off Date, whether or not collected, but without deduction of prepayments that may have been made but not reported to the Seller as of the close of business on such date). |
| Closing Date: | March 30, 2006, or such other date as may be agreed upon by the parties hereto. |
| Cut-Off Date: | March 1, 2006. |
| Mortgage Loan: | A hybrid adjustable rate, fully-amortizing, first lien, residential conventional mortgage loan having a term of not more than 30 years and secured by Mortgaged Property. |
| Mortgaged Property: | A single parcel of real property on which is located a detached single-family residence, a two-to-four family dwelling, a townhouse, an individual condominium unit, or an individual unit in a planned unit development, or a proprietary lease in a unit in a cooperatively-owned apartment building and stock in the related cooperative corporation. |
| Pooling and Servicing Agreement: | The pooling and servicing agreement, dated as of March 30, 2006, among Residential Asset Mortgage Products, Inc., as company, GMAC Mortgage Corporation, as servicer and JPMorgan Chase Bank, N.A., as trustee (the "Trustee"). |
| Repurchase Event: | With respect to any Mortgage Loan as to which the Seller delivers an affidavit certifying that the original Mortgage Note has been lost or destroyed, a subsequent default on such Mortgage Loan if the enforcement thereof or of the related Mortgage is materially and adversely affected by the absence of such original Mortgage Note. |

All capitalized terms used but not defined herein shall have the meanings assigned thereto in the Pooling and Servicing Agreement. The parties intend hereby to set forth the terms and conditions upon which the proposed transactions will be effected and, in consideration of the premises and the mutual agreements set forth herein, agree as follows:

SECTION 1.    Agreement to Sell and Purchase Mortgage Loans. The Seller agrees to sell to the Purchaser and the Purchaser agrees to purchase from the Seller certain Mortgage Loans having an aggregate amount equal to the Aggregate Principal Balance as of the Cut-Off Date.

SECTION 2.    Mortgage Loan Schedule. The Seller has provided to the Purchaser a schedule setting forth all of the Mortgage Loans to be purchased on the Closing Date under this Agreement, which shall be attached hereto as Schedule I (the "Mortgage Loan Schedule").

SECTION 3.    Purchase Price of Mortgage Loans. The purchase price (the "Purchase Price") to be paid to the Seller by the Purchaser for the Mortgage Loans shall be the sum of (i) [REDACTED] and (ii) a 0.01% Percentage Interest in the Class R Certificates issued pursuant to the Pooling and Servicing Agreement. The cash portion of the purchase price shall be paid by wire transfer of immediately available funds on the Closing Date to the account specified by the Seller.

The Purchaser and Seller intend that the conveyance by the Seller to the Purchaser of all its right, title and interest in and to the Mortgage Loans pursuant to this Agreement shall be, and be construed as, a sale of the Mortgage Loans by the Seller to the Purchaser. It is, further, not intended that such conveyance be deemed to be a grant of a security interest in the Mortgage Loans by the Seller to the Purchaser to secure a debt or other obligation of the Seller. However, in the event that the Mortgage Loans are held to be property of the Seller, or if for any reason this Agreement is held or deemed to create a security interest in the Mortgage Loans, then it is intended that (a) this Agreement shall be and hereby is a security agreement within the meaning of Articles 9 of the Pennsylvania Uniform Commercial Code, the Delaware Uniform Commercial Code and the Uniform Commercial

Code of any other applicable jurisdiction; (b) the conveyance provided for in this Section shall be deemed to be, and hereby is, a grant by the Seller to the Purchaser of a security interest in all of the Seller's right, title and interest, whether now owned or hereafter acquired, in and to the following: (A) the Mortgage Loans, including (i) with respect to each Cooperative Loan, the related Mortgage Note, Security Agreement, Assignment of Proprietary Lease, Cooperative Stock Certificate, Cooperative Lease, (ii) with respect to each Mortgage Loan other than a Cooperative Loan, the related Mortgage Note and Mortgage and (iii) any insurance policies and all other documents in the related Mortgage File, (B) all amounts payable pursuant to the Mortgage Loans in accordance with the terms thereof, (C) all proceeds of the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other property, (D) all accounts, general intangibles, chattel paper, instruments, documents, money, deposit accounts, goods, letters of credit, letter-of-credit rights, oil, gas, and other minerals, and investment property consisting of, arising from or relating to any of the foregoing and (E) all proceeds of the foregoing; (c) the possession by the Trustee, the Custodian or any other agent of the Trustee of any of the foregoing shall be deemed to be possession by the secured party, or possession by a purchaser or a person holding for the benefit of such secured party, for purposes of perfecting the security interest pursuant to the Pennsylvania Uniform Commercial Code, the Delaware Uniform Commercial Code and the Uniform Commercial Code of any other applicable jurisdiction (including, without limitation, Sections 9-313 and 9-314 of each thereof); and (d) notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or confirmations from, securities intermediaries, bailees or agents of, or persons holding for, the Trustee (as applicable) for the purpose of perfecting such security interest under applicable law. The Seller shall, to the extent consistent with this Agreement, take such reasonable actions as may be necessary to ensure that, if this Agreement were determined to create a security interest in the Mortgage Loans and the other property described above, such security interest would be determined to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of this Agreement. Without limiting the generality of the foregoing, the Seller shall prepare and deliver to the Purchaser not less than 15 days prior to any filing date, and the Purchaser shall file, or shall cause to be filed, at the expense of the Seller, all filings necessary to maintain the effectiveness of any original filings necessary under the Uniform Commercial Code as in effect in any jurisdiction to perfect the Purchaser's security interest in the Mortgage Loans, including without limitation (x) continuation statements, and (y) such other statements as may be occasioned by (1) any change of name of the Seller or the Purchaser, (2) any change of type or jurisdiction of organization of the Seller, or (3) any transfer of any interest of the Seller in any Mortgage Loan.

Notwithstanding the foregoing, (i) the Seller in its capacity as Servicer shall retain all servicing rights (including, without limitation, primary servicing and master servicing) relating to or arising out of the Mortgage Loans, and all rights to receive servicing fees, servicing income and other payments made as compensation for such servicing granted to it under the Pooling and Servicing Agreement pursuant to the terms and conditions set forth therein (collectively, the "Servicing Rights") and (ii) the Servicing Rights are not included in the collateral in which the Seller grants a security interest pursuant to the immediately preceding paragraph.

SECTION 4.    Record Title and Possession of Mortgage Files. The Seller hereby sells, transfers, assigns, sets over and conveys to the Purchaser, without recourse, but subject to the terms of this Agreement and the Seller hereby acknowledges that the Purchaser, subject to the terms of this Agreement, shall have all the right, title and interest of the Seller in and to the Mortgage Loans. From the Closing Date, but as of the Cut-off Date, the ownership of each Mortgage Loan, including the Mortgage Note, the Mortgage, the contents of the related Mortgage File and all rights, benefits, proceeds and obligations arising therefrom or in connection therewith, has been vested in the Purchaser. All rights arising out of the Mortgage Loans including, but not limited to, all funds received on or in connection with the Mortgage Loans and all records or documents with respect to the Mortgage Loans prepared by or which come into the possession of the Seller shall be received and held by the Seller in trust for the exclusive benefit of the Purchaser as the owner of the Mortgage Loans. On and after the Closing Date, any portion of the related Mortgage Files or servicing files related to the Mortgage Loans (the "Servicing Files") in Seller's possession shall be held by Seller in a custodial capacity only for the benefit of the Purchaser. The Seller shall release its custody of any contents of the related Mortgage Files or Servicing Files only in accordance with written instructions of the Purchaser or the Purchaser's designee.

SECTION 5.    Books and Records. The sale of each Mortgage Loan has been reflected on the Seller's balance sheet and other financial statements as a sale of assets by the Seller. The Seller shall be responsible for maintaining, and shall maintain, a complete set of books and records for the Mortgage Loans which shall be appropriately identified in the Seller's computer system to clearly reflect the ownership of the Mortgage Loans by the Purchaser.

SECTION 6.    Delivery of Mortgage Notes.

(a)    On or prior to the Closing Date, the Seller shall deliver to the Purchaser or the Custodian, as directed by the Purchaser, the original Mortgage Note, with respect to each

Mortgage Loan so assigned, endorsed without recourse in blank, or in the name of the Trustee as trustee, and signed by an authorized officer (which endorsement shall contain either an original signature or a facsimile signature of an authorized officer of the Seller, and if in the form of an allonge, the allonge shall be stapled to the Mortgage Note), with all intervening endorsements showing a complete chain of title from the originator to the Seller. If the Mortgage Loan was acquired by the endorser in a merger, the endorsement must be by "_____, successor by merger to [name of predecessor]". If the Mortgage Loan was acquired or originated by the endorser while doing business under another name, the endorsement must be by "_____ formerly known as [previous name]." The delivery of each Mortgage Note to the Purchaser or the Custodian is at the expense of the Seller.

In lieu of delivering the Mortgage Note relating to any Mortgage Loan, the Seller may deliver or cause to be delivered a lost note affidavit from the Seller stating that the original Mortgage Note was lost, misplaced or destroyed, and, if available, a copy of each original Mortgage Note; provided, however, that in the case of Mortgage Loans which have been prepaid in full after the Cut-off Date and prior to the Closing Date, the Seller, in lieu of delivering the above documents, may deliver to the Purchaser a certification to such effect and shall deposit all amounts paid in respect of such Mortgage Loan in the Payment Account on the Closing Date.

(b)    If any Mortgage Note is not delivered to the Purchaser (or the Custodian as directed by the Purchaser) or the Purchaser discovers any defect with respect to a Mortgage Note which materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan, the Purchaser shall give prompt written specification of such defect or omission to the Seller, and the Seller shall cure such defect or omission in all material respects or repurchase such Mortgage Loan or substitute a Qualified Substitute Mortgage Loan in the manner set forth in Section 7.03. It is understood and agreed that the obligation of the Seller to cure a material defect in, or substitute for, or purchase any Mortgage Loan as to which a material defect in, or omission of, a Mortgage Note exists, shall constitute the sole remedy respecting such material defect or omission available to the Purchaser, Certificateholders or the Trustee on behalf of Certificateholders.

(c)    All other documents contained in the Mortgage File and any original documents relating to the Mortgage Loans not contained in the Mortgage File or delivered to the Purchaser, are and shall be retained by the Servicer in trust as agent for the Purchaser.

In the event that in connection with any Mortgage Loan: (a) the original recorded Mortgage (or evidence of submission to the recording office), (b) all interim recorded assignments, (c) the original recorded modification agreement, if required, or (d) evidence of title insurance (together with all riders thereto, if any) satisfying the requirements of clause (I)(ii), (iv), (vi) or (vii) of the definition of Mortgage File, respectively, is not in the possession of the Servicer concurrently with the execution and delivery hereof because such document or documents have not been returned from the applicable public recording office, or, in the case of each such interim assignment or modification agreement, because the related Mortgage has not been returned by the appropriate recording office, in the case of clause (I)(ii), (iv) or (vi) of the definition of Mortgage File, or because the evidence of title insurance has not been delivered to the Seller by the title insurer in the case of clause (I)(vii) of the definition of Mortgage File, the Servicer shall use its best efforts to obtain, (A) in the case of clause (I)(ii), (iv) or (vi) of the definition of Mortgage File, such original Mortgage, such interim assignment, or such modification agreement, with evidence of recording indicated thereon upon receipt thereof from the public recording office, or a copy thereof, certified, if appropriate, by the relevant recording office, or (B) in the case of clause (I)(vii) of the definition of Mortgage File, evidence of title insurance.

(d)    If any of the documents held by the Servicer pursuant to clause (c) above are missing or defective in any other respect and such missing document or defect materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan, the Seller shall cure or repurchase such Mortgage Loan or substitute a Qualified Substitute Mortgage Loan in the manner set forth in Section 7.03. It is understood and agreed that the obligation of the Seller to cure a material defect in, or substitute for, or purchase any Mortgage Loan as to which a material defect in or omission of a constituent document exists, shall constitute the sole remedy respecting such material defect or omission available to the Purchaser, Certificateholders or the Trustee on behalf of Certificateholders.

(e)    If any assignment is lost or returned unrecorded to the Servicer because of any defect therein, the Seller shall prepare a substitute assignment or cure such defect, as the case may be, and the Servicer shall cause such assignment to be recorded in accordance with this Section.

SECTION 7.    Representations and Warranties.

SECTION 7.01. Representations and Warranties of Seller. The Seller represents, warrants and covenants to the Purchaser that as of the Closing Date or as of such date specifically provided herein:

(a)    The Seller is a corporation duly organized, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania and is or will be in

compliance with the laws of each state in which any Mortgaged Property is located to the extent necessary to ensure the enforceability of each Mortgage Loan;

(b)    The Seller has the power and authority to make, execute, deliver and perform its obligations under this Agreement and all of the transactions contemplated under this Agreement, and has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement; this Agreement constitutes a legal, valid and binding obligation of the Seller, enforceable against the Seller in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect affecting the enforcement of creditors' rights in general and except as such enforceability may be limited by general principles of equity (whether considered in a proceeding at law or in equity) or by public policy with respect to indemnification under applicable securities laws;

(c)    The execution and delivery of this Agreement by the Seller and its performance and compliance with the terms of this Agreement will not violate the Seller's Certificate of Incorporation or Bylaws or constitute a material default (or an event which, with notice or lapse of time, or both, would constitute a material default) under, or result in the material breach of, any material contract, agreement or other instrument to which the Seller is a party or which may be applicable to the Seller or any of its assets;

(d)    No litigation before any court, tribunal or governmental body is currently pending, nor to the knowledge of the Seller is threatened against the Seller, nor is there any such litigation currently pending, nor to the knowledge of the Seller threatened against the Seller with respect to this Agreement that in the opinion of the Seller has a reasonable likelihood of resulting in a material adverse effect on the transactions contemplated by this Agreement;

(e)    No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Seller of or compliance by the Seller with this Agreement, the sale of the Mortgage Loans or the consummation of the transactions contemplated by this Agreement except for consents, approvals, authorizations and orders which have been obtained;

(f)    The consummation of the transactions contemplated by this Agreement is in the ordinary course of business of the Seller, and the transfer, assignment and conveyance of the Mortgage Notes and the Mortgages relating to the Mortgage Loans by the Seller pursuant to this Agreement are not subject to bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction;

(g)    The Seller did not select such Mortgage Loans in a manner that it reasonably believed was adverse to the interests of the Purchaser based on the Seller's portfolio of conventional non-conforming Mortgage Loans;

(h)    The Seller will treat the sale of the Mortgage Loans to the Purchaser as a sale for reporting and accounting purposes and, to the extent appropriate, for federal income tax purposes;

(i)    The Seller is an approved seller/servicer of residential mortgage loans for Fannie Mae and Freddie Mac. The Seller is in good standing to sell mortgage loans to and service mortgage loans for Fannie Mae and Freddie Mac and no event has occurred which would make the Seller unable to comply with eligibility requirements or which would require notification to either Fannie Mae or Freddie Mac; and

(j)    No written statement, report or other document furnished or to be furnished pursuant to the Agreement contains or will contain any statement that is or will be inaccurate or misleading in any material respect.

SECTION 7.02. Representations and Warranties as to Individual Mortgage Loans. The Seller hereby represents and warrants to the Purchaser, as to each Mortgage Loan (except as otherwise specified below), as of the Closing Date, as follows:

(a)    The information set forth in the Mortgage Loan Schedule is true, complete and correct in all material respects as of the Cut-Off Date;

(b)    The original mortgage, deed of trust or other evidence of indebtedness (the "Mortgage") creates a first lien on an estate in fee simple or a leasehold interest in real property securing the related Mortgage Note, free and clear of all adverse claims, liens and encumbrances having priority over the first lien of the Mortgage subject only to (1) the lien of non-delinquent current real property taxes and assessments not yet due and payable, (2) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording which are acceptable to mortgage lending institutions generally, and (3) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property;

(c)    The Mortgage Loan has not been delinquent thirty (30) days or more at

any time during the twelve (12) month period prior to the Cut-off Date for such Mortgage Loan. As of the Cut-Off Date, the Mortgage Loan is not delinquent in payment more than 30 days and has not been dishonored; there are no defaults under the terms of the Mortgage Loan; and the Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds from a party other than the owner of the Mortgaged Property subject to the Mortgage, directly or indirectly, for the payment of any amount required by the Mortgage Loan;

(d)    There are no delinquent taxes which are due and payable, ground rents, assessments or other outstanding charges affecting the related Mortgaged Property;

(e)    The Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments which have been recorded to the extent any such recordation is required by applicable law or is necessary to protect the interests of the Purchaser, and which have been approved by the title insurer and the primary mortgage insurer, as applicable, and copies of which written instruments are included in the Mortgage File. No other instrument of waiver, alteration or modification has been executed, and no Mortgagor has been released by the Seller, or to the best of Seller's knowledge, by any other person, in whole or in part, from the terms thereof except in connection with an assumption agreement, which assumption agreement is part of the Mortgage File and the terms of which are reflected on the Mortgage Loan Schedule;

(f)    The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of the Mortgage Note and the Mortgage, or the exercise of any right thereunder, render the Mortgage Note or Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto;

(g)    All buildings upon the Mortgaged Property are insured by a generally acceptable insurer pursuant to standard hazard policies conforming to the requirements of Fannie Mae and Freddie Mac. All such standard hazard policies are in effect and on the date of origination contained a standard mortgagee clause naming the Seller and its successors in interest as loss payee and such clause is still in effect. If the Mortgaged Property is located in an area identified by the Federal Emergency Management Agency as having special flood hazards under the Flood Disaster Protection Act of 1973, as amended, such Mortgaged Property is covered by flood insurance by a generally acceptable insurer in an amount not less than the requirements of Fannie Mae and Freddie Mac. The Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such insurance at the Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor;

(h)    Each Mortgage Loan as of the time of its origination complied in all material respects with all applicable local, state and federal laws, including, but not limited to, all applicable predatory lending laws;

(i)    The Mortgage has not been satisfied, canceled or subordinated, in whole or in part, or rescinded, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part nor has any instrument been executed that would effect any such satisfaction, release, cancellation, subordination or rescission;

(j)    The Mortgage Note and the related Mortgage are original and genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in all respects in accordance with its terms subject to bankruptcy, insolvency and other laws of general application affecting the rights of creditors. All parties to the Mortgage Note and the Mortgage had the legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage. The Mortgage Note and the Mortgage have been duly and properly executed by such parties. The proceeds of the Mortgage Note have been fully disbursed and there is no requirement for future advances thereunder;

(k)    With respect to each Mortgage Loan, (A) immediately prior to the transfer and assignment to the Purchaser, the Mortgage Note and the Mortgage were not subject to an assignment or pledge, except for any assignment or pledge that had been satisfied and released, (B) the Seller had good and marketable title to and was the sole owner thereof and (C) the Seller had full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, lien, pledge, charge, claim or security interest;

(l)    The Mortgage Loan is covered by an ALTA lender's title insurance policy or other generally acceptable form of policy of insurance, with all necessary endorsements, issued by a title insurer qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring (subject to the exceptions contained in clause (b) (1), (2) and (3) above) the Seller, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan. Such title insurance policy affirmatively insures ingress and egress and against encroachments by or upon the Mortgaged Property or any interest therein. The Seller is the sole insured of such lender's title

insurance policy, such title insurance policy has been duly and validly endorsed to the Purchaser or the assignment to the Purchaser of the Seller's interest therein does not require the consent of or notification to the insurer and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy;

(m)    To the Seller's knowledge, there is no default, breach, violation or event of acceleration existing under the Mortgage or the related Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event permitting acceleration; and neither the Seller nor any prior mortgagee has waived any default, breach, violation or event permitting acceleration;

(n)    To the Seller's knowledge, there are no mechanics, or similar liens or claims which have been filed for work, labor or material affecting the related Mortgaged Property which are or may be liens prior to or equal to the lien of the related Mortgage;

(o)    To the Seller's knowledge, all improvements lie wholly within the boundaries and building restriction lines of the Mortgaged Property (and wholly with the project with respect to a condominium unit) and no improvements on adjoining properties encroach upon the Mortgaged Property except those which are insured against by the title insurance policy referred to in clause (l) above and all improvements on the property comply with all applicable zoning and subdivision laws and ordinances;

(p)    The Mortgage Loan constitutes a "qualified mortgage" under Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G 2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9);

(q)    The Mortgage Loan complies in all material respects with all the terms, conditions and requirements of the Seller's underwriting standards in effect at the time of origination of such Mortgage Loan. The Mortgage Notes and Mortgages are on uniform Fannie Mae/Freddie Mac instruments or are on forms acceptable to Fannie Mae or Freddie Mac;

(r)    The Mortgage Loan contains the usual and enforceable provisions of the originator at the time of origination for the acceleration of the payment of the unpaid principal amount if the related Mortgaged Property is sold without the prior consent of the mortgagee thereunder. The Mortgage Loan has an original term to maturity of not more than 30 years, with interest payable in arrears on the first day of each month. Except as otherwise set forth on the Mortgage Loan Schedule, the Mortgage Loan does not contain terms or provisions which would result in negative amortization nor contain "graduated payment" features or "buydown" features;

(s)    To the Seller's knowledge, the Mortgaged Property at origination of the Mortgage Loan was and currently is free of damage and waste and, to the Seller's knowledge, at origination of the Mortgage Loan there was, and there currently is, no proceeding pending for the total or partial condemnation thereof;

(t)    The related Mortgage contains enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (1) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (2) otherwise by judicial foreclosure. To the Seller's knowledge, there is no homestead or other exemption available to the Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage;

(u)    If the Mortgage constitutes a deed of trust, a trustee, duly qualified if required under applicable law to act as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustees sale or attempted sale after default by the Mortgagor;

(v)    If required by the applicable processing style, the Mortgage File contains an appraisal of the related Mortgaged Property made and signed prior to the final approval of the mortgage loan application by an appraiser that is acceptable to Fannie Mae or Freddie Mac and approved by the Seller. The appraisal, if applicable, is in a form generally acceptable to Fannie Mae or Freddie Mac;

(w)    To the Seller's knowledge, each of the Mortgaged Properties consists of a single parcel of real property with a detached single-family residence erected thereon, or a two- to four-family dwelling, a townhouse, an individual condominium unit in a condominium project, an individual unit in a planned unit development or a proprietary lease

on a cooperatively owned apartment and stock in the related cooperative corporation. Any condominium unit or planned unit development either conforms with applicable Fannie Mae or Freddie Mac requirements regarding such dwellings or is covered by a waiver confirming that such condominium unit or planned unit development is acceptable to Fannie Mae or Freddie Mac or is otherwise "warrantable" with respect thereto. No such residence is a mobile home or manufactured dwelling;

(x)    The ratio of the original outstanding principal amount of the Mortgage Loan to the lesser of the appraised value (or stated value if an appraisal was not a requirement of the applicable processing style) of the Mortgaged Property at origination or the purchase price of the Mortgaged Property securing such Mortgage Loan (the "Loan-to-Value Ratio") is not in excess of 95.00%. The original Loan-to-Value Ratio of each Mortgage Loan either was not more than 80.00% or the excess over 80.00% is insured as to payment defaults by a primary mortgage insurance policy issued by a primary mortgage insurer acceptable to Fannie Mae and Freddie Mac;

(y)    The Seller is either, and each Mortgage Loan was originated by, a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar institution which is supervised and examined by a federal or State authority, or by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Section 203 and 211 of the National Housing Act;

(z)    The origination, collection and servicing practices with respect to each Mortgage Note and Mortgage have been in all material respects legal, normal and usual in the Seller's general mortgage servicing activities. With respect to escrow deposits and payments that the Seller collects, all such payments are in the possession of, or under the control of, the Seller, and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits or other charges or payments due under the Mortgage Note have been capitalized under any Mortgage or the related Mortgage Note;

(aa)    No fraud or misrepresentation of a material fact with respect to the origination of a Mortgage Loan has taken place on the part of the Seller;

(bb)    If any of the Mortgage Loans are secured by a leasehold interest, with respect to each leasehold interest: residential property in such area consisting of leasehold estates is readily marketable; the lease is recorded and is in full force and effect and is not subject to any prior lien or encumbrance by which the leasehold could be terminated or subject to any charge or penalty; and the remaining term of the lease does not terminate less than ten years after the maturity date of such Mortgage Loan;

(cc)    None of the Mortgage Loans are subject to the Home Ownership and Equity Protection Act of 1994 ("HOEPA");

(dd)    No Mortgage Loan is a "High Cost Loan" or a "Covered Loan," as applicable (as such terms are defined in the then current Standard & Poor's LEVELS Glossary which is now Version 5.6c Revised, Appendix E);

(ee)    No Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act; and

(ff)    No mortgage loan is a high cost loan under the predatory lending law of any jurisdiction in which a mortgaged property is located.

SECTION 7.03. Repurchase. It is understood and agreed that the representations and warranties set forth in Sections 7.01 and 7.02 shall survive the sale of the Mortgage Loans to the Purchaser and delivery of the related Mortgage Loan documents to the Purchaser or its designees and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination of any Mortgage File. Upon discovery by either the Seller or the Purchaser of a breach of representations and warranties made by the Seller, or upon the occurrence of a Repurchase Event, in either case which materially and adversely affects interests of the Purchaser or its assignee in any Mortgage Loan, the party discovering such breach or occurrence shall give prompt written notice to each of the other parties. If the substance of any representation or warranty has been breached, the repurchase obligation set forth in the provisions of this Section 7.03 shall apply notwithstanding any qualification as to the knowledge of the Seller. Following discovery or receipt of notice of any such breach of a representation or warranty made by the Seller or the occurrence of a Repurchase Event, the Seller shall either (i) cure such breach in all material respects within 90 days from the date the Seller was notified of such breach or (ii) repurchase such Mortgage Loan at the related Purchase Price within 90 days from the date the Seller was notified of such breach; provided, however, that the Seller shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; and provided further that if the breach or occurrence would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure, repurchase or substitution must occur within 90 days from the earlier of the date the breach was discovered or receipt of notice of any such breach. In the event that any such breach shall involve any representation or warranty set

forth in Section  7.01 or those  relating to the  Mortgage  Loans or a portion  thereof in the
aggregate,  and such  breach  cannot be cured  within  ninety  days of the  earlier  of either
discovery  by or notice to the Seller of such  breach,  all  Mortgage  Loans affected by the
breach shall,  at the option of the  Purchaser,  be  repurchased by the Seller at the Purchase
Price or substituted  for in accordance  with this Section 7.03.  Notwithstanding  anything to
the  contrary  herein,  upon  discovery  by either  Seller or GMACM or upon  notice  from the
Purchaser,  GMACM, the Servicer, the Trustee or the Custodian,  as applicable,  of a breach of
a Seller's  representations  or warranties in paragraph  (s), but only in so far as it relates
to damage  caused by Hurricane  Katrina,  Hurricane  Rita and Hurricane  Wilma,  all of which
struck the southeast  portion of the United  States in August,  September and October of 2005,
the  Seller,  shall,  notwithstanding  the  Seller's  lack of knowledge  with  respect to the
substance  of such  representation  and  warranty,  within 90 days  after the  earlier  of its
discovery or receipt of notice thereof,  either (i) cure such breach in all material  respects
or (ii)(A)  repurchase  such Mortgage  Loan from the Trust Fund at the Purchase  Price,  or (B)
substitute  one or more  Qualified  Substitute  Loans for such Mortgage  Loan, in each case in
the  manner  and  subject  to the  conditions  set forth  below.  If the  Seller  elects to
substitute  a Qualified  Substitute  Mortgage  Loan or Loans  for a Deleted  Mortgage  Loan
pursuant to this Section  7.03,  the Seller  shall  deliver to the  Custodian  with respect to
such  Qualified  Substitute  Mortgage  Loan or Loans,  the original  Mortgage  Note endorsed as
required  by Section 6, and the Seller  shall  deliver to the  Servicer  with respect to such
Qualified  Substitute  Mortgage  Loan,  the  mortgage,  an  Assignment  of the  Mortgage  in
recordable  form if required  pursuant to Section 6, and such other  documents and agreements
as are  required to be held by the  Servicer  pursuant to Section 6. No  substitution  will be
made in any  calendar  month after the  Determination  Date for such month.  Monthly  Payments
due with respect to Qualified  Substitute  Mortgage  Loans in the month of  substitution  shall
not be part of the  Trust  Fund and will be  retained  by the  Servicer  and  remitted  by the
Servicer  to the  Seller  on the  next  succeeding  Distribution  Date. For  the  month  of
substitution,  distributions  to the  Certificateholders  will include the Monthly Payment due
on a Deleted  Mortgage  Loan for such month  and  thereafter  the Seller  shall  be  entitled to
retain  all  amounts  received  in respect of such  Deleted  Mortgage  Loan.  Upon  such
substitution,  the Qualified  Substitute  Mortgage  Loan or Loans shall be subject to the terms
of this  Agreement  in all respects,  and the Seller  shall  be deemed to have made the
representations  and warranties  contained in this  Agreement  with respect to the  Qualified
Substitute  Mortgage  Loan or Loans and that such Mortgage  Loans so  substituted  are Qualified
Substitute  Mortgage  Loans as of the date of  substitution.  In furtherance of the foregoing,
if the Seller  repurchases  or  substitutes  a Mortgage  Loan and is no longer a member of MERS
and the Mortgage  is  registered  on the MERS(R)System,  the  Purchaser,  at the expense of the
Seller and  without  any right of  reimbursement,  shall  cause MERS to execute and deliver an
assignment  of the  Mortgage  in  recordable  form to transfer  the  Mortgage  from MERS to the
Seller and shall cause such  Mortgage to be removed from  registration  on the MERS(R)System in
accordance with MERS' rules and regulations.

    In the  event of a  repurchase  by the  Seller  pursuant to this  Section  7.03,  the
Purchaser  shall (i)  forward  or cause to be  forwarded  the  Mortgage  File for the related
Mortgage Loan to the Seller,  which shall include the Mortgage Note endorsed  without recourse
to the  Seller  or its  designee,  (ii)  cause the  Servicer  to release  to the  Seller  any
remaining  documents in the related  Mortgage  File which are held by the  Servicer,  and (iii)
an assignment  in favor of the Seller or its designee of the Mortgage in  recordable  form and
acceptable  to the Seller in form and  substance and such other  documents or  instruments of
transfer or  assignment as may be necessary to vest in the Seller or its  respective  designee
title to any such  Mortgage  Loan (or with  respect to any  Mortgage  registered  on the MERS(R)
System,  if the Seller is still a member of MERS,  the Purchaser  shall cause MERS to show the
Seller as the owner of record).  The  Purchaser  shall cause the related  Mortgage  File to be
forwarded to Seller  immediately  after receipt of the related  Purchase Price by wire transfer
of immediately available funds to an account specified by the Purchaser.

    It is understood  and agreed that the  obligation of the Seller to cure such breach or
purchase  (or to  substitute  for) such  Mortgage  Loan as to which such a breach has occurred
and is continuing  shall  constitute the sole remedy  respecting such breach  available to the
Purchaser or the Trustee on behalf of the Certificateholders.

SECTION 8.    Notices.  All  demands,  notices  and  communications  hereunder  shall  be  in
writing and shall be deemed to have been duly given when deposited,  postage  prepaid,  in the
United States mail, if mailed by registered or certified mail,  return receipt  requested,  or
when  received,  if  delivered by private  courier to another  party,  at the related  address
shown on the first page  hereof,  or such other  address as may  hereafter be furnished to the
parties by like notice.

SECTION 9.    Severability  of  Provisions.  Any  provision  of this  Agreement  which  is
prohibited  or  unenforceable  or is  held to be void or  unenforceable  in any  jurisdiction
shall,  as to such  jurisdiction,  be  ineffective  to the  extent  of such  prohibition  or
unenforceability  without  invalidating  the  remaining  provisions hereof,  and  any  such
prohibition  or  unenforceability  in any  jurisdiction  as to any  Mortgage  Loan shall  not
invalidate or render  unenforceable  such provision in any other  jurisdiction.  To the extent
permitted by applicable  law, the parties  hereto waive any  provision of law which  prohibits
or renders void or unenforceable any provision hereof.

SECTION 10.    Counterparts;  Entire Agreement.  This Agreement may be executed simultaneously

in any number of  counterparts. Each counterpart  shall be deemed to be an original,  and all
such  counterparts  shall  constitute  one and the  same  instrument.  This  Agreement  is the
entire  agreement  between the parties  relating to the subject  matter hereof and  supersedes
any prior agreement or communications between the parties.

SECTION 11.    Place of Delivery and Governing Law. This  Agreement  shall be deemed in effect
when  counterparts  hereof have been executed by each of the parties  hereto.  This  Agreement
shall  be  deemed  to have  been  made in the  State  of New  York.  This  Agreement  shall be
construed  in  accordance  with the laws of the State of New York  State of New York,  without
regard to the conflict of law  principles  thereof,  other than Sections  5-1401 and 5-1402 of
the New York  General  Obligations  Law,  and the  obligations,  rights  and  remedies  of the
parties hereunder shall be determined in accordance with such laws.

SECTION 12.    Successors  and Assigns;  Assignment of Agreement.  This  Agreement  shall bind
and inure to the  benefit of and be  enforceable  by the parties  hereto and their  respective
successors  and  assigns;  provided  that  this  Agreement  may not be  assigned,  pledged  or
hypothecated  by the  Seller  to a third  party  without  the  prior  written  consent  of the
Purchaser.

SECTION 13.    Waivers;  Other  Agreements.  No term or  provision  of this  Agreement  may be
waived or modified  unless such waiver or  modification  is in writing and signed by the party
against whom such waiver or modification is sought to be enforced.

SECTION 14.    Survival.  The provisions of this Agreement  shall survive the Closing Date and
the delivery of the Mortgage  Loans,  and for so long  thereafter as is necessary  (including,
subsequent to the  assignment of the Mortgage  Loans) to permit the parties to exercise  their
respective rights or perform their respective obligations hereunder.


                          [Signature Page Follows]

---

        IN WITNESS WHEREOF,  the Seller and the Purchaser have caused their names to be signed
hereto by their  respective  officers  thereunto  duly  authorized  as of the date first above
written.

                              GMAC MORTGAGE CORPORATION


                              By:_____
                              Name:
                              Title:
                              RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC.


                              By:_____
                              Name:
                              Title:

---

                              SCHEDULE I

                          MORTGAGE LOAN SCHEDULE

                  (a copy can be obtained from the Trustee)