# EXHIBIT 7-C

EXECUTION COPY

RESIDENTIAL ACCREDIT LOANS, INC.,

Company,

RESIDENTIAL FUNDING CORPORATION,

Master Servicer,

and

DEUTSCHE BANK TRUST COMPANY AMERICAS,

Trustee

SERIES SUPPLEMENT,

Dated as of September 1, 2006,

TO

STANDARD TERMS OF
POOLING AND SERVICING AGREEMENT
dated as of March 1, 2006

Mortgage Asset-Backed Pass-Through Certificates

SERIES 2006-QA8

----------------------------------------------------------------

TABLE OF CONTENTS

                                                                  PAGE
ARTICLE I        DEFINITIONS.................................................8

        Section 1.01.    Definitions........................................8

        Section 1.02.    Determination of LIBOR...........................45

        Section 1.03.    Use of Words and Phrases.........................46

ARTICLE II       CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES..........48

        Section 2.01.    Conveyance of Mortgage Loans.....................48

        Section 2.02.    Acceptance by Trustee............................54

        Section 2.03.    Representations, Warranties and Covenants of the Master
                         Servicer and the Company........................55

        Section 2.04.    Representations and Warranties of Sellers........60

        Section 2.05.    Execution and Authentication of Certificates/Issuance of
                         Certificates Evidencing Interests in REMICs......60

        Section 2.06.    Conveyance of Uncertificated REMIC Regular Interests;
                         Acceptance by the Trustee........................60

        Section 2.07.    Issuance of Certificates Evidencing Interest in REMIC III........61

        Section 2.08.    Purposes and Powers of the Trust.................61

        Section 2.09.    Agreement Regarding Ability to Disclose..........61

ARTICLE III      ADMINISTRATION AND SERVICING OF MORTGAGE LOANS..........................62

        Section 3.01.    Master Servicer to Act as Servicer...............62

        Section 3.02     Subservicing Agreements Between Master Servicer and
                         Subservicers; Enforcement of Subservicers' and Sellers'
                         Obligations........................................62

        Section 3.03     Successor Subservicers...........................62

        Section 3.04     Liability of the Master Servicer.................62

Section 10.05.    Compliance with Withholding Requirements.............................101

ARTICLE XI        MISCELLANEOUS PROVISIONS................................................103

        Section 11.01.    Amendment..................................................103

        Section 11.02.    Recordation of Agreement; Counterparts.........................103

        Section 11.03.    Limitation on Rights of Certificateholders......................103

        Section 11.04.    Governing Law..............................................103

        Section 11.05.    Notices....................................................103

        Section 11.06.    Required Notices to Rating Agency and Subservicer..............104

        Section 11.07.    Severability of Provisions...................................104

        Section 11.08.    Supplemental Provisions for Resecuritization..................104

        Section 11.09.    Allocation of Voting Rights..................................104

        Section 11.10.    No Petition.................................................105

ARTICLE XII       COMPLIANCE WITH REGULATION AB........................................106


                        -iv-

---------------------------------------------------------------


                        EXHIBITS


        Exhibit One:          Mortgage Loan Schedule

        Exhibit Two:          Information to be Included in Monthly Distribution
                              Date Statement

        Exhibit Three:        Standard  Terms of Pooling and Servicing Agreement,
                              dated as of March 1, 2006

        Exhibit Four:         Swap Agreement

        Exhibit Five:         SB-AM Swap Agreement

        Exhibit Six           Form  of  Certificate  to  be  Given by Certificate
                              Owner

        Exhibit Seven         Form of  Certificate to be Given by  Euroclear  or
                              Cedel

        Exhibit Eight         Form of  Certificate  to be Given by  Transferee of
                              Beneficial  Interest in a  Regulation  S Book-Entry
                              Certificate

        Exhibit Nine          Form  of  Transfer   Certificate for  Exchange  or
                              Transfer from  144A  Book-Entry  Certificate  to
                              Regulation S Book-Entry Certificate

        Exhibit Ten           Form of Initial Purchaser Exchange Instructions

        Exhibit Eleven        Form of Class SB Certificate


                        -v-

---------------------------------------------------------------


        This is a Series Supplement,  dated as of September 1, 2006 (the "Series
Supplement"), to the Standard Terms of Pooling and Servicing Agreement, dated as
of March 1, 2006 and attached as Exhibit Four hereto (the "Standard  Terms" and,
together with this Series Supplement,  the "Pooling and Servicing  Agreement" or
"Agreement"),  among RESIDENTIAL  ACCREDIT LOANS, INC., as the company (together
with its permitted successors and assigns,  the "Company"),  RESIDENTIAL FUNDING
CORPORATION,  as master  servicer  (together  with its permitted  successors and
assigns,  the "Master Servicer"),  and DEUTSCHE BANK TRUST COMPANY AMERICAS,  as
Trustee and  supplemental  interest  trust trustee  (together  with its permitted
successors  and assigns,  the "Trustee"  and the  "Supplemental  Interest  Trust
Trustee"), respectively.

                        PRELIMINARY STATEMENT:

among the Class A Certificates and Class M Certificates, in proportion to the amount of Accrued Certificate Interest payable on such Certificates on such Distribution Date absent such reductions.

Accrued Certificate Interest with respect to any Class of Class M Certificates for any Distribution Date shall further be reduced by the interest portion of Realized Losses allocated to any Class of Class M Certificates pursuant to Section 4.05.

Accrued Certificate Interest with respect to the Class A Certificates and Class M Certificates shall accrue on the basis of a 360-day year and the actual number of days in the related Interest Accrual Period.

With respect to each Distribution Date and each class of the Class SB Certificates, interest accrued during the preceding Interest Accrual Period at the related Pass-Through Rate on the Notional Amount as specified in the definition of Pass-Through Rate, immediately prior to such Distribution Date, reduced by any interest shortfalls with respect to the Mortgage Loans, including Prepayment Interest Shortfalls to the extent not covered by Compensating Interest pursuant to Section 3.16 or by Excess Cash Flow pursuant to Section 4.02(c)(iii) and (iv). Accrued Certificate Interest on each class of the Class SB Certificates shall accrue on the basis of a 360-day year and the actual number of days in the related Interest Accrual Period.

Adjustment Date: With respect to each Mortgage Loan, each date set forth in the related Mortgage Note on which an adjustment to the interest rate on such Mortgage Loan becomes effective.

Affected Party: As defined in the Swap Agreement.

8

--------------------------------------------------------------

Available Distribution Amount: As to any Distribution Date, an amount equal to (a) the sum of (i) the amount relating to the Mortgage Loans on deposit in the Custodial Account as of the close of business on the immediately preceding Determination Date, including any Subsequent Recoveries, and amounts deposited in the Custodial Account in connection with the substitution of Qualified Substitute Mortgage Loans, (ii) the amount of any Advance made on the immediately preceding Certificate Account Deposit Date, (iii) any amount deposited in the Certificate Account on the related Certificate Account Deposit Date pursuant to the second paragraph of Section 3.12(a), (iv) any amount deposited in the Certificate Account pursuant to Section 4.07 or Section 9.01, (v) any amount that the Master Servicer is not permitted to withdraw from the Custodial Account or the Certificate Account pursuant to Section 3.16(e), (vi) any amount received by the Trustee pursuant to the Surety Bond in respect of such Distribution Date and (vii) the proceeds of any Pledged Assets received by the Master Servicer, reduced by (b) the sum as of the close of business on the immediately preceding Determination Date of (v) any payments or collections consisting of Prepayment Charges on the Mortgage Loans that were received during the related Prepayment Period; (w) aggregate Foreclosure Profits, (x) the Amount Held for Future Distribution, (y) amounts permitted to be withdrawn by the Master Servicer from the Custodial Account in respect of the Mortgage Loans pursuant to clauses (ii)-(x), inclusive, of Section 3.10(a), and (z) any Net Swap Payments required to be made to the Swap Counterparty and Swap Termination Payments not due to a Swap Counterparty Trigger Event for such Distribution Date.

Basis Risk Shortfall: With respect to each Class of the Class A Certificates and Class M Certificates, and any Distribution Date, the sum of (a) with respect to any Distribution Date on which the Net WAC Cap Rate is used to determine the Pass-Through Rate of such Class, an amount equal to the excess of (x) Accrued Certificate Interest for such Class calculated at a per annum rate equal to LIBOR plus the related Margin for such Distribution Date (but, with respect to any class of Class M Certificates, not more than 14.00% per annum), over (y) Accrued Certificate Interest for such Class calculated using the Net WAC Cap Rate, (b) any shortfalls for such Class calculated pursuant to clause (a) above remaining unpaid from prior Distribution Dates, and (c) interest on the amount in clause (b) from the Distribution Date on which such amount was incurred at a per annum rate equal to the related Pass-Through Rate.

Book-Entry Certificate: The Class A, Class M and Class SB-1 Certificates.

Certificate: Any Class A, Class M, Class SB or Class R Certificate.

Certificate Account: The separate account or accounts created and maintained pursuant to Section 4.01 of the Standard Terms, which shall be entitled "DEUTSCHE BANK TRUST COMPANY AMERICAS, as trustee, in trust for the registered holders of Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA8" and which must be an Eligible Account.

Certificate Principal Balance: With respect to any Class A Certificate or Class M Certificate, on any date of determination, an amount equal to (i) the Initial Certificate Principal Balance of such Certificate as specified on the

initial Holder of the Class DV Certificates pursuant to Section 5.01(g).

Subordinate Certificate: Any one of the Class M Certificates or Class B Certificates, executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit B and Exhibit C, respectively.

Subordinate Class Percentage: With respect to any Distribution Date and any Class of Subordinate Certificates, a fraction, expressed as a percentage, the numerator of which is the aggregate Certificate Principal Balance of such Class of Subordinate Certificates immediately prior to such date and the denominator of which is the aggregate Stated Principal Balance of all of the Mortgage Loans (or related REO Properties) (other than the related Discount Fraction of each Discount Mortgage Loan) immediately prior to such Distribution Date.

Subordinate Percentage: As of any Distribution Date and, with respect to any Mortgage Pool comprised of two or more Loan Groups, any Loan Group, 100% minus the related Senior Percentage as of such Distribution Date.

Subsequent Recoveries: As of any Distribution Date, amounts received by the Master Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 3.10) or surplus amounts held by the Master Servicer to cover estimated expenses (including, but not limited to, recoveries in respect of the representations and warranties made by the related Seller pursuant to the applicable Seller's Agreement and assigned to the Trustee pursuant to Section 2.04) specifically related to a Mortgage Loan that was the subject of a Cash Liquidation or an REO Disposition prior to the related Prepayment Period that resulted in a Realized Loss.

Subserviced Mortgage Loan: Any Mortgage Loan that, at the time of reference thereto, is subject to a Subservicing Agreement.

Subservicer: Any Person with whom the Master Servicer has entered into a Subservicing Agreement and who generally satisfied the requirements set forth in the Program Guide in respect of the qualification of a Subservicer as of the date of its approval as a Subservicer by the Master Servicer.

Subservicer Advance: Any delinquent installment of principal and interest on a Mortgage Loan which is advanced by the related Subservicer (net of its Subservicing Fee) pursuant to the Subservicing Agreement.

Subservicing Account: An account established by a Subservicer in accordance with Section 3.08.

Subservicing Agreement: The written contract between the Master Servicer and any Subservicer relating to servicing and administration of certain Mortgage Loans as provided in Section 3.02, generally in the form of the servicer contract referred to or contained in the Program Guide or in such other form as has been approved by the Master Servicer and the Company. With respect to Additional Collateral Loans subserviced by MLCC, the Subservicing Agreement shall also include the Addendum and Assignment Agreement and the Pledged Asset Mortgage Servicing Agreement. With respect to any Pledged Asset Loan subserviced by GMAC Mortgage Corporation, the Addendum and Assignment Agreement, dated as of November 24, 1998, between the Master Servicer and GMAC Mortgage Corporation, as such agreement may be amended from time to time.

Subservicing Fee: As to any Mortgage Loan, the fee payable monthly to the related Subservicer (or, in the case of a Nonsubserviced Mortgage Loan, to the Master Servicer) in respect of subservicing and other compensation that accrues at an annual rate equal to the excess of the Mortgage Rate borne by the related Mortgage Note over the rate per annum designated on the Mortgage Loan Schedule as the "CURR NET" for such Mortgage Loan.

Successor Master Servicer: As defined in Section 3.22.

Surety:  Ambac,  or its successors in interest,  or such other surety as may be identified in the Series Supplement.

Surety Bond: The Limited Purpose Surety Bond (Policy No. AB0039BE), dated February 28, 1996 in respect to Mortgage Loans originated by MLCC, or the Surety Bond (Policy No. AB0240BE), dated March 17, 1999 in respect to Mortgage Loans originated by Novus Financial Corporation, in each case issued by Ambac for the benefit of certain beneficiaries, including the Trustee for the benefit of the Holders of the Certificates, but only to the extent that such Surety Bond covers any Additional Collateral Loans, or such other Surety Bond as may be identified in the Series Supplement.

Tax Returns: The federal income tax return on Internal Revenue Service Form 1066, U.S. Real Estate Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice to Residual Interest Holders of REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be filed on behalf of any REMIC formed under the Series Supplement and under the REMIC Provisions, together with any and all other information, reports or returns that may be required to be furnished to the Certificateholders or filed with the Internal Revenue Service or any other governmental taxing authority under any applicable provisions of federal, state or local tax laws.

CONVEYANCE OF MORTGAGE LOANS;
ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01.  CONVEYANCE OF MORTGAGE LOANS.

(a) (See Section 2.01(a) of the Standard Terms).

(b) In connection with such assignment, except as set forth in Section 2.01(c) and subject to Section 2.01(d) below, the Company does hereby (1) with respect to each Mortgage Loan (other than a Cooperative Loan or a Sharia Mortgage Loan) deliver to the Master Servicer (or an affiliate of the Master Servicer) each of the documents or instruments described in clause (I)(ii) below (and the Master Servicer shall hold (or cause such affiliate to hold) such documents or instruments in trust for the use and benefit of all present and future Certificateholders), (2) with respect to each MOM Loan, deliver to and deposit with the Trustee, or the Custodian on behalf of the Trustee, the documents or instruments described in clauses (I)(i) and (v) below, (3) with respect to each Mortgage Loan that is not a MOM Loan but is registered on the MERS(R) System, deliver to and deposit with the Trustee, or to the Custodian on behalf of the Trustee, the documents or instruments described in clauses (I)(i), (iv) and (v) below, (4) with respect to each Mortgage Loan that is not a MOM Loan and is not registered on the MERS(R) System, deliver to and deposit with the Trustee, or to the Custodian on behalf of the Trustee, the documents or instruments described in clauses (I)(i), (iii), (iv) and (v), and (5) with respect to each Cooperative Loan and Sharia Mortgage Loan, the documents or instruments described in clause (II) and clause (III) below:

(I) with respect to each Mortgage Loan so assigned (other than a Cooperative Loan or a Sharia Mortgage Loan):

(i) The original Mortgage Note, endorsed without recourse in blank or to the order of the Trustee, and showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee, or with respect to any Destroyed Mortgage Note, an original lost note affidavit from the related Seller or Residential Funding stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note;

(ii) The original Mortgage, noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recording indicated thereon or a copy of the Mortgage with evidence of recording indicated thereon;

(iii) The original Assignment of the Mortgage to the Trustee with evidence of recording indicated thereon or a copy of such assignment with evidence of recording indicated thereon;

48

------------------------------------------------------------

(iv) The original recorded assignment or assignments of the Mortgage showing an unbroken chain of title from the originator thereof to the Person assigning it to the Trustee (or to MERS, if the Mortgage Loan is registered on the MERS(R) System and noting the presence of a MIN) with evidence of recordation noted thereon or attached thereto, or a copy of such assignment or assignments of the Mortgage with evidence of recording indicated thereon; and

(v) The original of each modification, assumption agreement or preferred loan agreement, if any, relating to such Mortgage Loan or a copy of each modification, assumption agreement or preferred loan agreement;

(II) with respect to each Cooperative Loan so assigned:

The original Mortgage Note, endorsed without recourse to the order of the Trustee and showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee, or with respect to any Destroyed Mortgage Note, an original lost note affidavit from the related Seller or Residential Funding stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note;

A counterpart of the Cooperative Lease and the Assignment of Proprietary Lease to the originator of the Cooperative Loan with intervening assignments showing an unbroken chain of title from such originator to the Trustee or a copy of such Cooperative Lease and Assignment of Proprietary Lease and copies of any such intervening assignments;

The related Cooperative Stock Certificate, representing the related Cooperative Stock pledged with respect to such Cooperative Loan, together with an undated stock power (or other similar instrument) executed in blank or copies thereof;

The original recognition agreement by the Cooperative of the
interests of the mortgagee with respect to the related Cooperative Loan
or a copy thereof;

    The Security Agreement or a copy thereof;

    Copies of the original UCC-1 financing statement, and any
continuation statements, filed by the originator of such Cooperative
Loan as secured party, each with evidence of recording thereof,
evidencing the interest of the originator under the Security Agreement
and the Assignment of Proprietary Lease;

    Copies of the filed UCC-3 assignments of the security interest
referenced in clause (vi) above showing an unbroken chain of title from
the originator to the Trustee, each with evidence of recording thereof,
evidencing the interest of the originator under the Security Agreement
and the Assignment of Proprietary Lease;

    An executed assignment of the interest of the originator in the
Security Agreement, Assignment of Proprietary Lease and the recognition
agreement referenced in clause (iv) above, showing an unbroken chain of
title from the originator to the Trustee, or a copy thereof;

                                49

-----------------------------------------------------------

    The original of each modification, assumption agreement or
preferred loan agreement, if any, relating to such Cooperative Loan or a
copy of each modification, assumption agreement or preferred loan
agreement; and

    A duly completed UCC-1 financing statement showing the Master
Servicer as debtor, the Company as secured party and the Trustee as
assignee and a duly completed UCC-1 financing statement showing the
Company as debtor and the Trustee as secured party, each in a form
sufficient for filing, evidencing the interest of such debtors in the
Cooperative Loans or copies thereof; and

(III) with respect to each Sharia Mortgage Loan so assigned:

    (i) The original Obligation to Pay, endorsed without recourse in
blank or to the order of the Trustee and showing an unbroken chain of
endorsements from the originator thereof to the Person endorsing it to
the Trustee, or with respect to any Destroyed Obligation to Pay, an
original affidavit from the related Seller or Residential Funding
stating that the original Obligation to Pay was lost, misplaced or
destroyed, together with a copy of the related Obligation to Pay;

    (ii) The original Sharia Mortgage Loan Security Instrument, with
evidence of recording indicated thereon or a copy of the Sharia Mortgage
Loan Security Instrument with evidence of recording indicated thereon;

    (iii) An original Assignment and Amendment of Security
Instrument, assigned to the Trustee with evidence of recording indicated
thereon or a copy of such Assignment and Amendment of Security
Instrument with evidence of recording indicated thereon;

    (iv) The original recorded assignment or assignments of the
Sharia Mortgage Loan Security Instrument showing an unbroken chain of
title from the originator thereof to the Person assigning it to the
Trustee with evidence of recordation noted thereon or attached thereto,
or a copy of such assignment or assignments of the Sharia Mortgage Loan
Security Instrument with evidence of recording indicated thereon;

    (v) The original Sharia Mortgage Loan Co-Ownership Agreement with
respect to the related Sharia Mortgage Loan or a copy of such Sharia
Mortgage Loan Co-Ownership Agreement; and

    (vi) The original of each modification or assumption agreement,
if any, relating to such Sharia Mortgage Loan or a copy of each
modification or assumption agreement.

(c) The Company may, in lieu of delivering the original of the documents
set forth in Sections 2.01(b)(I)(iii), (iv) and (v), Sections 2.01(b)(II)(ii),
(iv), (vii), (ix) and (x) and Sections 2.01(b)(III)(ii), (iii), (iv), (v) and
(vi) (or copies thereof) to the Trustee or to the Custodian on behalf of the
Trustee, deliver such documents to the Master Servicer, and the Master Servicer

                                50

-----------------------------------------------------------

shall hold such documents in trust for the use and benefit of all present and
future Certificateholders until such time as is set forth in the next sentence.
Within thirty Business Days following the earlier of (i) the receipt of the

original of all of the documents or instruments set forth in Sections
2.01(b)(I)(iii), (iv) and (v), Sections 2.01(b)(II)(iii), (iv), (vii) and
(x) and Sections 2.01(b)(III)(ii), (iii), (iv), (v) and (vi) (or copies thereof)
for any Mortgage Loan and (ii) a written request by the Trustee to deliver those
documents with respect to any or all of the Mortgage Loans then being held by
the Master Servicer, the Master Servicer shall deliver a complete set of such
documents to the Trustee or to the Custodian on behalf of the Trustee.

        The parties hereto agree that it is not intended that any Mortgage Loan
be included in the Trust Fund that is either (i) a "High-Cost Home Loan" as
defined in the New Jersey Home Ownership Act effective November 27, 2003, (ii) a
"High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act
effective January 1, 2004, (iii) a "High Cost Home Mortgage Loan" as defined in
the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004
or (iv) a "High-Cost Home Loan" as defined in the Indiana House Enrolled Act No.
1229, effective as of January 1, 2005.

        (d)  Notwithstanding the provisions of Section 2.01(c), in connection
with any Mortgage Loan, if the Company cannot deliver the original of the
Mortgage, any assignment, modification, assumption agreement or preferred loan
agreement (or copy thereof as permitted by Section 2.01(b)) with evidence of
recording thereon concurrently with the execution and delivery of this Agreement
because of (i) a delay caused by the public recording office where such
Mortgage, assignment, modification, assumption agreement or preferred loan
agreement as the case may be, has been delivered for recordation, or (ii) a
delay in the receipt of certain information necessary to prepare the related
assignments, the Company shall deliver or cause to be delivered to the Trustee
or to the Custodian on behalf of the Trustee a copy of such Mortgage,
assignment, modification, assumption agreement or preferred loan agreement.

        The Company (i) shall promptly cause to be recorded in the appropriate
public office for real property records the Assignment referred to in clause
(I)(iii) of Section 2.01(b), except (a in states where, in the opinion of
counsel acceptable to the Trustee and the Master Servicer, such recording is not
required to protect the Trustee's interests in the Mortgage Loan against the
claim of any subsequent transferee or any successor to or creditor of the
Company or the originator of such Mortgage Loan or (b) if MERS is identified on
the Mortgage or on a properly recorded assignment of the Mortgage as the
mortgagee of record solely as nominee for the Seller and its successors and
assigns, (ii) shall promptly cause to be filed the Form UCC-3 assignment and
UCC-1 financing statement referred to in clauses (II)(vii) and (x),
respectively, of Section 2.01(b) and (iii) shall promptly cause to be recorded
in the appropriate public recording office for real property records the
Assignment Agreement and Amendment of Security Instrument referred to in clause
(III)(iii) of Section 2.01(b). If any Assignment, Assignment Agreement and
Amendment of Security Instrument, Form UCC-3 or Form UCC-1, as applicable, is
lost or returned unrecorded to the Company because of any defect therein, the
Company shall prepare a substitute Assignment, Assignment Agreement and
Amendment of Security Instrument, Form UCC-3 or Form UCC-1, as applicable, or
cure such defect, as the case may be, and cause such Assignment or Assignment
Agreement and Amendment of Security Instrument to be recorded in accordance with
this paragraph. The Company shall promptly deliver or cause to be delivered to
the applicable person described in Section 2.01(b) any Assignment, substitute

                                    51

--------------------------------------------------------------

Assignment, or Assignment Agreement and Amendment of Security Instrument or Form
UCC-3 or Form UCC-1, as applicable, (or copy thereof) recorded in connection
with this paragraph with evidence of recording indicated thereon at the time
specified in Section 2.01(c). In connection with its servicing of Cooperative
Loans, the Master Servicer will use its best efforts to file timely continuation
statements with regard to each financing statement and assignment relating to
Cooperative Loans as to which the related Cooperative Apartment is located
outside of the State of New York.

        If the Company delivers to the Trustee or to the Custodian on behalf of
the Trustee any Mortgage Note, Obligation to Pay, Assignment Agreement and
Amendment of Security Instrument or Assignment of Mortgage in blank, the Company
shall, or shall cause the Custodian to, complete the endorsement of the Mortgage
Note, Obligation to Pay, Assignment Agreement and Amendment of Security
Instrument and Assignment of Mortgage in the name of the Trustee in conjunction
with the Interim Certification issued by the Custodian, as contemplated by
Section 2.02.

        In connection with the assignment of any Mortgage Loan registered on the
MERS(R) System, the Company further agrees that it will cause, at the Company's
own expense, within 30 Business Days after the Closing Date, the MERS(R) System
to indicate that such Mortgage Loans have been assigned by the Company to the
Trustee in accordance with this Agreement for the benefit of the
Certificateholders by including (or deleting, in the case of Mortgage Loans
which are repurchased in accordance with this Agreement) in such computer files
(a) the code in the field which identifies the specific Trustee and (b) the code
in the field "Pool Field" which identifies the series of the Certificates issued
in connection with such Mortgage Loans. The Company further agrees that it will
not, and will not permit the Master Servicer to, and the Master Servicer agrees

that it will not, after the codes referenced in this paragraph with respect to
any Mortgage Loan during the term of this Agreement (except after such
Mortgage Loan is repurchased in accordance with the terms of this Agreement.

(e)  (See Section 2.01(e) of the Standard Terms.)

(f)  It is intended that the  conveyance by the Company to the Trustee of
the   Mortgage   Loans  as  provided  for  in  this  Section  2.01  be  and  the
Uncertificated  REMIC  Regular  Interests,  if  any  (as  provided  for  in  Section
2.06),  be  construed  as a sale by the Company to the  Trustee of the  Mortgage
Loans  and  any  Uncertificated  REMIC  Regular  Interests  for  the  benefit of the
Certificateholders.   Further,   it  is  not  intended  that  such  conveyance  be  deemed
to be a pledge of the  Mortgage Loans  and  any  Uncertificated  REMIC  Regular
Interests by the Company to the Trustee to secure a debt or other  obligation of
the  Company.   Nonetheless,  (a)  this  Agreement  is  intended  to be and hereby is a
security  agreement  within  the  meaning  of  Articles  8  and 9 of the New York
Uniform   Commercial  Code  and  the  Uniform  Commercial  Code of any other applicable
jurisdiction;  (b)  the  conveyance  provided  for in Section 2.01 shall be deemed to
be,  and  hereby  is,  (1)  a grant by the  Company  to the  Trustee of a security
interest in all of the  Company's  right  (including  the  power  to convey  title
thereto),  title  and  interest,  whether  now owned or hereafter acquired, in and to
any and all general intangibles,  payment intangibles,  accounts, chattel paper,
instruments,  documents,  money,  deposit  accounts,  certificates of deposit, goods,
letters  of  credit,  advices of credit and investment property and other property
of whatever kind or description  now existing or hereafter  acquired  consisting
of,  arising from or relating to any of the following:  (A) the Mortgage  Loans,

52

----------------------------------------------------------------

including (i) with respect to each Cooperative  Loan, the related Mortgage Note,
Security  Agreement,  Assignment  of  Proprietary  Lease,  Cooperative  Stock
Certificate  and  Cooperative  Lease,  (ii) with respect to each Sharia Mortgage
Loan, the related Sharia Mortgage Loan Security Instrument, Sharia Mortgage Loan
Co-Ownership  Agreement,  Obligation  to Pay and Assignment and Amendment
of Security  Instrument,  (iii)  with respect to each  Mortgage Loan other than a
Cooperative  Loan or a Sharia  Mortgage Loan,  the  related  Mortgage  Note and
Mortgage, and (iv) any insurance policies and all other documents in the related
Mortgage  File,  (B)  all  amounts  payable  pursuant  to the  Mortgage Loans in
accordance  with  the  terms  thereof,  (C)  any  Uncertificated  REMIC  Regular
Interests and (D) all proceeds of the conversion,  voluntary or involuntary,  of
the  foregoing  into cash,  instruments,  securities or other property,  including
without  limitation  all  amounts  from  time  to  time  held  or  invested  in  the
Certificate  Account  or  the  Custodial  Account,  whether  in the form of cash,
instruments,  securities  or other  property  and (2) an assignment by the Company
to the Trustee of any security interest in any and all of Residential  Funding's
right  (including  the power to convey title thereto),  title and interest,  whether
now  owned  or  hereafter  acquired,  in  and  to  the  property  described  in  the
foregoing clauses (1)(A),  (B),  (C) and (D) granted by Residential Funding to the
Company pursuant to the Assignment Agreement;  (c) the possession by the Trustee,
any  Custodian  on behalf of the  Trustee or any other  agent of the  Trustee of
Mortgage Notes or such other items of property as constitute instruments, money,
payment intangibles,  negotiable documents,  goods, deposit accounts, letters of
credit,  advices of credit,  investment  property,  certificated  securities  or
chattel  paper  shall be deemed to be  "possession  by the  secured  party,"  or
possession  by a purchaser or a person  designated  by such secured  party,  for
purposes of perfecting the security  interest  pursuant to the Minnesota Uniform
Commercial  Code  and  the  Uniform  Commercial  Code  of  any  other  applicable
jurisdiction as in effect (including, without limitation, Sections 8-106, 9-313,
9-314  and  9-106  thereof);  and (d)  notifications  to  persons  holding  such
property,  and  acknowledgments,  receipts or confirmations  from persons holding
such property,  shall be deemed notifications to, or acknowledgments, receipts or
confirmations from, securities intermediaries,  bailees or agents of, or persons
holding for (as  applicable)  the  Trustee for the  purpose of  perfecting  such
security interest under applicable law.

The Company and, at the Company's direction, Residential Funding and the
Trustee  shall,  to  the  extent  consistent  with  this  Agreement,  take  such
reasonable  actions as may be necessary to ensure that,  if this  Agreement  were
determined  to  create  a  security  interest  in  the  Mortgage  Loans,  any
Uncertificated  REMIC  Regular  Interests and the other property  described above,
such security  interest would be determined to be a perfected  security interest
of first priority under applicable law and will be maintained as such throughout
the term of this  Agreement.  Without  limiting  the  generality  of the foregoing,
the Company shall prepare and deliver to the Trustee not less than 15 days prior
to any filing date and, the Trustee shall forward for filing,  or shall cause to
be forwarded for filing, at the expense of the Company, all filings necessary to
maintain the  effectiveness of any original filings  necessary under the Uniform
Commercial  Code as in effect in any  jurisdiction  to  perfect  the  Trustee's
security interest in or lien on the Mortgage Loans and any Uncertificated  REMIC
Regular  Interests,  as evidenced by an Officers'  Certificate  of the Company,
including  without  limitation (x) continuation  statements,  and (y) such other
statements  as may be  occasioned  by (1) any  change  of  name  of  Residential
Funding, the Company or the Trustee (such preparation and filing shall be at the
expense  of the Trustee,  if occasioned by a change in the Trustee's  name),  (2)
any change of type or jurisdiction of organization of Residential Funding or the

Company,  (3) any transfer of any interest of Residential Funding to the Company
in any Mortgage Loan or (4) any transfer of any interest of the Residual Holding
or the Company in any Uncertificated REMIC Regular Interest.

53

--------------------------------------------------------------

        (g) The Master  Servicer hereby  acknowledges  the receipt by it of each
Initial  Monthly  Payment  Fund.  The  Master  Servicer  shall hold each  Initial
Monthly  Payment  Fund in the  Custodial  Account and shall  include the related
Initial Monthly Payment Fund in the  Available  Distribution  Amount for the each
Loan Group for the initial Distribution  Date.  Notwithstanding  anything herein to
the  contrary,  neither  Initial  Monthly  Payment  Fund shall be an asset of any
REMIC. To the extent that either  Initial  Monthly  Payment  Fund  constitutes a
reserve fund for federal income tax purposes, (1) it shall be an outside reserve
fund and not an asset of any REMIC,  (2) it shall be owned by the Seller and (3)
amounts  transferred by any REMIC to such Initial  Monthly Payment Fund shall be
treated as transferred to the Seller or any successor,  all within the meaning of
Section 1.860G-2(h) of the Treasury Regulations.

        (h)  (See Section 2.01(h) of the Standard Terms).

    Section 2.02.   ACCEPTANCE BY TRUSTEE.

        The Trustee  acknowledges  receipt (or,  with respect to Mortgage
Loans  subject to a  Custodial  Agreement,  and based  solely  upon a receipt or
certification executed by the Custodian,  receipt by the respective Custodian as
the duly appointed agent of the Trustee) of the documents referred to in Section
2.01(b)(i)  above  (except  that for purposes of such  acknowledgement  only, a
Mortgage  Note may be endorsed in blank) and declares that it, or a Custodian as
its  agent,  holds  and  will  hold  such documents  and the  other  documents
constituting  a part of the  Custodial  Files  delivered to it, or a Custodian as
its agent,  and the rights of  Residential  Funding  with respect to any Pledged
Assets,  Additional  Collateral  and the  Surety  Bond  assigned  to the  Trustee
pursuant  to Section  2.01, in trust for the use and benefit of all present and
future  Certificateholders.  The Trustee or Custodian  (the  Custodian  being so
obligated  under  a  Custodial  Agreement)  agrees,  for  the  benefit  of
Certificateholders,  to review each  Custodial  File delivered to it pursuant to
Section  2.01(b)  within 45 days after the Closing  Date to  ascertain  that all
required  documents  (specifically  as set forth in Section  2.01(b)),  have been
executed and  received,  and that such  documents  relate to the Mortgage  Loans
identified  on the  Mortgage  Loan  Schedule,  as  supplemented,  that have been
conveyed  to it, and to  deliver  to the  Trustee a certificate  (the  "Interim
Certification")  to  the  effect  that all  documents  required  to be  delivered
pursuant to Section  2.01(b) above have been executed and received and that such
documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule,
except  for any  exceptions  listed  on  Schedule  A attached  to such  Interim
Certification. Upon delivery of the Custodial Files by the Company or the Master
Servicer,  the Trustee shall  acknowledge  receipt (or, with respect to Mortgage
Loans  subject to a  Custodial  Agreement,  and based  solely  upon a receipt or
certification executed by the Custodian,  receipt by the respective Custodian as
the duly appointed agent of the Trustee) of the documents referred to in Section
2.01(c) above.

        If the Custodian,  as the Trustee's agent,  finds any document or
documents  constituting  a part of a Custodial  File to be missing or defective,
the  Trustee  shall  promptly  so notify  the  Master  Servicer  and the  Company.
Pursuant to Section 2.3 of the Custodial  Agreement,  the Custodian will notify
the Master  Servicer,  the Company and the Trustee of any such omission or defect
found by it in respect of any Custodial  File held by it in respect of the items

54

--------------------------------------------------------------

reviewed by it pursuant to the Custodial  Agreement.  If such omission or defect
materially and adversely  affects the interests of the  Certificateholders,  the
Master  Servicer shall promptly notify  Residential  Funding of such omission or
defect and  request  Residential  Funding  to  correct or cure such  omission  or
defect  within 60 days from the date the Master  Servicer  was  notified of such
omission  or defect and, if  Residential  Funding  does not correct or cure such
omission or defect within such period,  require  Residential Funding to purchase
such  Mortgage  Loan from the Trust Fund at its Purchase  Price,  within 90 days
from the date the Master  Servicer  was notified  of such  omission  or defect;
provided  that if the  omission or defect  would cause the  Mortgage  Loan to be
other than a "qualified  mortgage" as defined in Section 860G(a)(3) of the Code,
any such cure or repurchase  must occur within 90 days from the date such breach
was discovered. The Purchase Price for any such Mortgage Loan shall be deposited
by the Master  Servicer in the  Custodial  Account  maintained  by it pursuant to
Section 3.07 and,  upon receipt by the Trustee of written  notification  of such
deposit signed by a Servicing Officer,  the Master  Servicer,  the Trustee or the
Custodian,  as  the  case may be,  shall  release  the  contents  of  any  related
Mortgage  File in its  possession  to the owner of such  Mortgage  Loan (or such
owner's designee), and the Trustee shall execute and deliver such instruments of
transfer or  assignment  prepared  by the Master  Servicer,  in each case without

recourse, as shall be necessary to vest in Residential Funding or its designee any Mortgage Loan released pursuant hereto and then such substitution shall not be part of the Trust Fund. It is understood and agreed that the obligation of Residential Funding to so cure or purchase any Mortgage Loan as to which a material and adverse defect in or omission of a constituent document exists shall constitute the sole remedy respecting such defect or omission available to Certificateholders or the Trustee on behalf of the Certificateholders.

Section 2.03.  REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE MASTER SERVICER AND THE COMPANY.

(a) The Master Servicer hereby represents and warrants to the Trustee for the benefit of the Certificateholders that:

(i) The Master Servicer is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and is or will be in compliance with the laws of each state in which any Mortgaged Property is located to the extent necessary to ensure the enforceability of each Mortgage Loan in accordance with the terms of this Agreement;

(ii) The execution and delivery of this Agreement by the Master Servicer and its performance and compliance with the terms of this Agreement will not violate the Master Servicer's Certificate of Incorporation or Bylaws or constitute a material default (or an event which, with notice or lapse of time, or both, would constitute a material default) under, or result in the material breach of, any material contract, agreement or other instrument to which the Master Servicer is a party or which may be applicable to the Master Servicer or any of its assets;

55

------------------------------------------------------------

(iii) This Agreement, assuming due authorization, execution and delivery by the Trustee and the Company, constitutes a valid, legal and binding obligation of the Master Servicer, enforceable against it in accordance with the terms hereof subject to applicable bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law;

(iv) The Master Servicer is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or other) or operations of the Master Servicer or its properties or might have consequences that would materially adversely affect its performance hereunder; (v) No litigation is pending or, to the best of the Master Servicer's knowledge, threatened against the Master Servicer which would prohibit its entering into this Agreement or performing its obligations under this Agreement;

(vi) The Master Servicer will comply in all material respects in the performance of this Agreement with all reasonable rules and requirements of each insurer under each Required Insurance Policy;

(vii) No information, certificate of an officer, statement furnished in writing or report delivered to the Company, any Affiliate of the Company or the Trustee by the Master Servicer will, to the knowledge of the Master Servicer, contain any untrue statement of a material fact or omit a material fact necessary to make the information, certificate, statement or report not misleading;

(viii) The Master Servicer has examined each existing, and will examine each new, Subservicing Agreement and is or will be familiar with the terms thereof. The terms of each existing Subservicing Agreement and each designated Subservicer are acceptable to the Master Servicer and any new Subservicing Agreements will comply with the provisions of Section 3.02; and

(ix) The Master Servicer is a member of MERS in good standing, and will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the Mortgage Loans that are registered with MERS.

It is understood and agreed that the representations and warranties set forth in this Section 2.03(a) shall survive delivery of the respective Custodial Files to the Trustee or the Custodian.

Upon discovery by either the Company, the Master Servicer, the Trustee or the Custodian of a breach of any representation or warranty set forth in this Section 2.03(a) which materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach

shall give prompt written notice to the other parties (the Custodian being so
obligated under a Custodial Agreement).  Within 90 days after its
receipt of notice of such breach, the Master Servicer shall either (i) cure such
breach in all material respects or (ii) to the extent that such breach is with
respect to a Mortgage Loan or a related document, purchase such Mortgage Loan

56

----------------------------------------------------------------

from the Trust Fund at the Purchase Price and in the manner set forth in Section
2.02; provided that if the omission or defect would cause the Mortgage Loan to
be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the
Code, any such cure or repurchase must occur within 90 days from the date such
breach was discovered. The obligation of the Master Servicer to cure such breach
or to so purchase such Mortgage Loan shall constitute the sole remedy in respect
of a breach of a representation and warranty set forth in this Section 2.03(a)
available to the Certificateholders or the Trustee on behalf of the
Certificateholders.

        (b) The Company hereby represents and warrants to the Trustee for the
benefit of Certificateholders that as of the Closing Date (or, if otherwise
specified below, as of the date so specified):

            (i) No Mortgage Loan is 30 or more days Delinquent in payment of
        principal and interest as of the Cut-off Date and no Mortgage Loan has
        been so Delinquent more than once in the 12-month period prior to the
        Cut-off Date;

            (ii) The information set forth in Exhibit One hereto with
        respect to each Mortgage Loan or the Mortgage Loans, as the case may be,
        is true and correct in all material respects at the date or dates
        respecting which such information is furnished;

            (iii) The Mortgage Loans are adjustable-rate mortgage loans with
        Monthly Payments due, with respect to a majority of the Mortgage Loans,
        on the first day of each month and terms to maturity at origination or
        modification of not more than 30 years;

            (iv) To the best of the Company's knowledge, each Mortgage Loan
        is required to be covered by a standard hazard insurance policy. If a
        Mortgage Loan is secured by a Mortgaged Property with a Loan-to-Value
        Ratio at origination in excess of 80%, such Mortgage Loan is the subject
        of a Primary Insurance Policy that insures (a) at least 35% of the
        Stated Principal Balance of the Mortgage Loan at origination if the
        Loan-to-Value Ratio is between 100.00% and 95.01%, (b) at least 30% of
        the Stated Principal Balance of the Mortgage Loan at origination if the
        Loan-to-Value Ratio is between 95.00% and 90.01%, (c) at least 25% of
        such balance if the Loan-to-Value Ratio is between 90.00% and 85.01% and
        (d) at least 12% of such balance if the Loan-to-Value Ratio is between
        85.00% and 80.01%. To the best of the Company's knowledge, each such
        Primary Insurance Policy is in full force and effect and the Trustee is
        entitled to the benefits thereunder;

            (v) The issuers of the Primary Insurance Policies are insurance
        companies whose claims-paying abilities are currently acceptable
            to each Rating Agency;

57

----------------------------------------------------------------

            (vi) No more than 0.6% of the Mortgage Loans by aggregate Stated
        Principal Balance as of the Cut-off Date are secured by Mortgaged
        Properties located in any one zip code area in Nevada, and no more than
        0.4% of the Mortgage Loans by aggregate Stated Principal Balance as of
        the Cut-off Date are secured by Mortgaged Properties located in any one
        zip code area outside Nevada;

            (vii) The improvements upon the Mortgaged Properties are insured
        against loss by fire and other hazards as required by the Program Guide,
        including flood insurance if required under the National Flood Insurance
        Act of 1968, as amended. The Mortgage requires the Mortgagor to maintain
        such casualty insurance at the Mortgagor's expense, and on the
        Mortgagor's failure to do so, authorizes the holder of the Mortgage to
        obtain and maintain such insurance at the Mortgagor's expense and to
        seek reimbursement therefor from the Mortgagor;

            (viii) Immediately prior to the assignment of the Mortgage Loans
        to the Trustee, the Company had good title to, and was the sole owner
        of, each Mortgage Loan free and clear of any pledge, lien, encumbrance
        or security interest (other than rights to servicing and related
        compensation) and such assignment validly transfers ownership of the
        Mortgage Loans to the Trustee free and clear of any pledge, lien,
        encumbrance or security interest;

[x] No more than 85.12% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a reduced loan documentation program, no more than 12.82% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a no-stated income program, and no more than 4.78% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a no income/no asset program;

(x) Except with respect to no more than 11.96% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date, the Mortgagor represented in its loan application with respect to the related Mortgage Loan that the Mortgaged Property would be owner-occupied;

(xi) None of the Mortgage Loans is a Buy-Down Mortgage Loan;

(xii) Each Mortgage Loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9) without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9));

58

--------------------------------------------------------------

(xiii) A policy of title insurance was effective as of the closing of each Mortgage Loan and is valid and binding and remains in full force and effect, unless the Mortgaged Properties are located in the State of Iowa and an attorney's certificate has been provided as described in the Program Guide;

(xiv) No Mortgage Loan is a Cooperative Loan;

(xv) With respect to each Mortgage Loan originated under a "streamlined" Mortgage Loan program (through which no new or updated appraisals of Mortgaged Properties are obtained in connection with the refinancing thereof), the related Seller has represented that either (a) the value of the related Mortgaged Property as of the date the Mortgage Loan was originated was not less than the appraised value of such property at the time of origination of the refinanced Mortgage Loan or (b) the Loan-to-Value Ratio of the Mortgage Loan as of the date of origination of the Mortgage Loan generally meets the Company's underwriting guidelines;

(xvi) Interest on each Mortgage Loan is calculated on the basis of a 360-day year consisting of twelve 30-day months;

(xvii) None of the Mortgage Loans contain in the related Mortgage File a Destroyed Mortgage Note;

(xviii) Approximately 0.1% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date have been made to International Borrowers;

(xix) No Mortgage Loan provides for payments that are subject to reduction by withholding taxes levied by any foreign (non-United States) sovereign government; and

(xx) None of the Mortgage Loans are Additional Collateral Loans and none of the Mortgage Loans are Pledged Asset Loans.

It is understood and agreed that the representations and warranties set forth in this Section 2.03(b) shall survive delivery of the respective Custodial Files to the Trustee or any Custodian.

Upon discovery by any of the Company, the Master Servicer, the Trustee or any Custodian of a breach of any of the representations and warranties set forth in this Section 2.03(b) that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (any Custodian being so obligated under a Custodial Agreement); provided, however, that in the event of a breach of the representation and warranty set forth in Section 2.03(b)(xii), the party discovering such breach shall give such notice within five days of discovery. Within 90 days of its discovery or its receipt of notice of breach, the Company shall either (i) cure such breach in all material respects or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that the Company shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; provided that if the omission or defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section

---------------------------------------------------------------

860G(a)(3) of the Code, any such cure or repurchase must occur within 90 days from the date such breach was discovered. Any such substitution shall be effected by the Company under the same terms and conditions as provided in Section 2.04 for substitutions by Residential Funding. It is understood and agreed that the obligation of the Company to cure such breach or to so purchase or substitute for any Mortgage Loan as to which such a breach has occurred and is continuing shall constitute the sole remedy respecting such breach available to the Certificateholders or the Trustee on behalf of the Certificateholders.

Section 2.04.  REPRESENTATIONS AND WARRANTIES OF SELLERS.(See Section 2.04 of the Standard Terms)

Section 2.05.  EXECUTION AND AUTHENTICATION OF CERTIFICATES/ISSUANCE OF CERTIFICATES EVIDENCING INTERESTS IN REMICS.

The Trustee acknowledges the assignment to it of the Mortgage Loans and the delivery of the Custodial Files to it, or any Custodian on its behalf, subject to any exceptions noted, together with the assignment to it of all other assets included in the Trust Fund and/or the applicable REMIC, receipt of which is hereby acknowledged. Concurrently with such delivery and in exchange therefor, the Trustee, pursuant to the written request of the Company executed by an officer of the Company, has executed and caused to be authenticated and delivered to or upon the order of the Company the Class R-I Certificates in authorized denominations which, together with the REMIC I Regular Interests, evidence the beneficial interest in REMIC I, and the Class R-II Certificates in authorized denominations which, together with the REMIC II Regular Interests, evidence the beneficial interest in REMIC II.

Section 2.06.  CONVEYANCE OF UNCERTIFICATED REMIC REGULAR INTERESTS; ACCEPTANCE BY THE TRUSTEE.

The Company, as of the Closing Date, and concurrently with the execution and delivery hereof, does hereby assign without recourse all the right, title and interest of the Company in and to the Uncertificated REMIC Regular Interests to the Trustee for the benefit of the Holders of each Class of Certificates (other than the Class R-I and Class R-II Certificates, and with respect to REMIC III Regular Interests SB-IO, SB-PO and IO, the Class R-III Certificates). The Trustee acknowledges receipt of the Uncertificated REMIC Regular Interests and declares that it holds and will hold the same in trust for the exclusive use and benefit of all present and future Holders of each Class of Certificates (other than the Class R-I and Class R-II Certificates, and with respect to REMIC III Regular Interests SB-IO, SB-PO and IO, the Class R-III Certificates). The rights of the Holders of each Class of Certificates (other than the Class R-I and Class R-II Certificates) to receive distributions from the proceeds of REMIC III in respect of such Classes and the rights of the Holders of the Class SB Certificates and the Class R-X Certificates to receive distributions from the proceeds of REMIC IV in respect of such Classes, and all ownership interests of the Holders of such Classes in such distributions, shall be as set forth in this Agreement.

60

---------------------------------------------------------------

Section 2.07. ISSUANCE OF CERTIFICATES EVIDENCING INTEREST IN REMIC III AND REMIC IV.

The Trustee acknowledges the assignment to it of the Uncertificated REMIC Regular Interests, and, concurrently therewith and in exchange therefor, pursuant to the written request of the Company executed by an officer of the Company, the Trustee has executed and caused to be authenticated and delivered to or upon the order of the Company, (i) all Classes of Certificates (other than the Class SB, Class R-I and Class R-II Certificates) in authorized denominations, which, together with REMIC III Regular Interests SB-IO, SB-PO and IO, evidence the beneficial interests in the entire REMIC III and (ii) the Class SB and Class R-X Certificates which evidence the beneficial interests in the entire REMIC IV.

Section 2.08. PURPOSES AND POWERS OF THE TRUST. (See Section 2.08 of the Standard Terms.)

Section 2.09. AGREEMENT REGARDING ABILITY TO DISCLOSE.

The Company, the Master Servicer and the Trustee hereby agree, notwithstanding any other express or implied agreement to the contrary, that any and all Persons, and any of their respective employees, representatives, and other agents may disclose, immediately upon commencement of discussions, to any and all Persons, without limitation of any kind, the tax treatment and tax structure of the transaction and all materials of any kind (including opinions or other tax analyses) that are provided to any of them relating to such tax

fees, face payment charges, investment income in the
Custodial Account or the Certificate Account (other than amount
including Prepayment Charges) shall be retained by the Master Servicer
or the Subservicer to the extent provided herein, subject to clause (e)
below. Prepayment charges shall be deposited into the Certificate
Account and shall be paid on each Distribution Date to the holders of
the Class SB-1 Certificates and Class SB-2 Certificates on a pro rata
basis in accordance with the respective Certificate Principal Balances
thereof.

      (c) (See Section 3.16(c) of the Standard Terms)

      (d) (See Section 3.16(d) of the Standard Terms)

      (e) (See Section 3.16(e) of the Standard Terms)

Section 3.17.  Reports to the Trustee and the Company (See Section 3.17
                of the Standard Terms)

Section 3.18.  Annual Statement as to Compliance (See Section 3.18 of
                the Standard Terms)

Section 3.19.  Annual Independent Public Accountants' Servicing Report
                (See Section 3.19 of the Standard Terms)

Section 3.20.  Rights of the Company in Respect of the Master Servicer
                (See Section 3.20 of the Standard Terms)

Section 3.21.  Administration of Buydown Funds (See Section 3.21 of the
                Standard Terms)

Section 3.22  Advance Facility (See Section 3.22 of the Standard Terms)

--------------------------------------------------------------

ARTICLE IV

PAYMENTS TO CERTIFICATEHOLDERS

Section 4.01.  CERTIFICATE ACCOUNT.

    (a) The Master Servicer on behalf of the Trustee shall establish and
maintain a Certificate Account in which the Master Servicer shall cause to be
deposited on behalf of the Trustee on or before 2:00 P.M. New York time on each
Certificate Account Deposit Date by wire transfer of immediately available funds
an amount equal to the sum of (i) any Advance for the immediately succeeding
Distribution Date, (ii) any amount required to be deposited in the Certificate
Account pursuant to Section 3.12(a), (iii) any amount required to be deposited
in the Certificate Account pursuant to Section 3.16(e) or Section 4.07, (iv) any
amount required to be paid pursuant to Section 9.01 and (v) all other amounts
constituting the Available Distribution Amount for the immediately succeeding
Distribution Date.

    On or prior to the Business Day immediately following each Determination
Date, the Master Servicer shall determine any amounts owed by the Swap
Counterparty under the Swap Agreement and inform the Supplemental Interest Trust
Trustee in writing of the amount so calculated.

    (b) (See Section 4.01(b) of the Standard Terms)

Section 4.02.  DISTRIBUTIONS.

    (a) On each Distribution Date, the Trustee (or the Paying Agent on
behalf of the Trustee) shall allocate and distribute the Available Distribution
Amount to the extent on deposit in the Certificate Account for such date to the
interests issued in respect of REMIC I, REMIC II, REMIC III and REMIC IV as
specified in this Section.

    (b) (1) On each Distribution Date, the REMIC I Distribution Amount shall
be distributed by REMIC I to REMIC II on account of the REMIC I Regular
Interests in the amounts and with the priorities set forth in the definition
thereof.

        (2) On each Distribution Date, the REMIC II Distribution
Amount shall be distributed by REMIC II to REMIC III on account of the
REMIC II Regular Interests in the amounts and with the priorities set forth
in the definition thereof.

        (3) On each Distribution Date, the REMIC III Distribution
Amount shall be deemed to have been distributed by REMIC III to the
Certificateholders (other than the Class SB Certificateholders) on account
of the REMIC III Regular Interests represented thereby and to REMIC IV on
account of REMIC III Regular Interests SB-IO, SB-PO and IO in the amounts
and with the priorities set forth in the definition thereof.

(4) On each Distribution Date, the REMIC IV Distribution Amount shall be deemed to have been distributed to the Class SB Certificateholders on account of the REMIC IV Regular Interests as set forth in the definition thereof.

67

--------------------------------------------------------------

(5) On each Distribution Date, the amount, if any, deemed received by the holders of the Class SB Certificates in respect of REMIC IV Regular Interest IO and under the SB-AM Swap Agreement shall be deemed to have been paid on behalf of the Class SB Certificates by the Trustee pursuant to Section 4.09 in respect of the Net Swap Payment owed to the Swap Counterparty. On each Distribution Date, the amount, if any, received by the Trustee from the Swap Counterparty in respect of the Swap Agreement shall be deemed to have been received by the Supplemental Interest Trust Trustee on behalf of the Class SB Certificates. On each Distribution Date, amounts paid to the Class A Certificates and Class M Certificates pursuant to Section 4.02(c)(v) in respect of Basis Risk Shortfall shall be deemed to have been paid by the Class SB Certificateholder pursuant to the SB-AM Swap Agreement.

(6) Notwithstanding the distributions described in this Section 4.02(b), distribution of funds from the Certificate Account shall be made only in accordance with Section 4.02(c).

(c) On each Distribution Date (x) the Master Servicer on behalf of the Trustee or (y) the Paying Agent appointed by the Trustee and the Supplemental Interest Trust Trustee, shall distribute to each Certificateholder of record on the next preceding Record Date (other than as provided in Section 9.01 of the Standard Terms respecting the final distribution) either in immediately available funds (by wire transfer or otherwise) to the account of such Certificateholder at a bank or other entity having appropriate facilities therefor, if such Certificateholder has so notified the Master Servicer or the Paying Agent, as the case may be, or, if such Certificateholder has not so notified the Master Servicer or the Paying Agent by the Record Date, by check mailed to such Certificateholder at the address of such Holder appearing in the Certificate Register such Certificateholder's share (which share with respect to each Class of Certificates, shall be based on the aggregate of the Percentage Interests represented by Certificates of the applicable Class held by such Holder of the following amounts), in the following order of priority, in each case to the extent of the Available Distribution Amount on deposit in the Certificate Account and the Supplemental Interest Trust Account pursuant to Section 4.09(c):

(i) The Interest Distribution Amount, sequentially:

(A) first, to the Class A Certificates, on a pro rata basis, Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(B) second, to the Class M-1 Certificates, Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

68

--------------------------------------------------------------

(C) third, to the Class M-2 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(D) fourth, to the Class M-3 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any related Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(E) fifth, to the Class M-4 Certificates, Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(F) sixth, to the Class C Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(G) seventh, to the Class M-6 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any related Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(H) eighth, to the Class M-7 Certificates, Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(I) ninth, to the Class M-8 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date; and

(J) tenth, to the Class M-9 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

----------------------------------------------------------------

(ii) to the Class A Certificateholders and Class M Certificateholders from the amount, if any, of Available Distribution Amount remaining after the foregoing distributions, the Principal Distribution Amount, which amount shall be allocated in the manner and priority set forth in Section 4.02(d), until the aggregate Certificate Principal Balance of each Class of Class A Certificates and Class M Certificates has been reduced to zero;

(iii) to the Class A Certificateholders and Class M Certificateholders from the amount, if any, of Excess Cash Flow remaining after the foregoing distributions, the amount of any related Prepayment Interest Shortfalls with respect to the Mortgage Loans for that Distribution Date, to the extent not covered by Compensating Interest on such Distribution Date, which amount shall be allocated to the Class A Certificateholders and Class M Certificateholders on a pro rata basis, based on the amount of Prepayment Interest Shortfalls allocated thereto for such Distribution Date;

(iv) to the Class A Certificateholders and Class M Certificateholders from the amount, if any, of Excess Cash Flow remaining after the foregoing distributions, the amount of any Prepayment Interest Shortfalls allocated thereto remaining unpaid from prior Distribution Dates together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date, which amount shall be allocated to the Class A Certificateholders and Class M Certificateholders on a pro rata basis, based on the amount of Prepayment Interest Shortfalls remaining unpaid;

(v) to the Class A Certificates and Class M Certificates from the amount, if any, of Excess Cash Flow remaining after the foregoing distributions the amount of any Basis Risk Shortfall on such Certificates, which amount shall be allocated first, to the Class A Certificates on a pro rata basis, based on their respective Basis Risk Shortfall for such Distribution Date, and then, sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8 and Class M-9 Certificateholders, in that order;

(vi) to pay the holders of the Class A Certificates and Class M Certificates, on a pro rata basis, based on Relief Act Shortfalls allocated thereto for such Distribution Date, the amount of any Relief Act Shortfalls allocated thereto with respect to the Mortgage Loans for such Distribution Date,

(vii) first, to the Class A Certificateholders, the principal portion of any Realized Losses previously allocated to those Certificates and remaining unreimbursed, on a pro rata basis based on their respective principal portion of any Realized Losses previously allocated to those Certificates and remaining unreimbursed, and then,

sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8 and Class C Certificates, in that order, the principal portion of any Realized Losses previously allocated to such Class and remaining unreimbursed;

70

--------------------------------------------------------------

(viii) to the Supplemental Interest Trust Account for payment to the Swap Counterparty, any Swap Termination Payments due to a Swap Counterparty Trigger Event;

(ix) to the Class SB Certificates, on a pro rata basis in accordance with the Notional Amounts thereof, (A) from the amount, if any, of the Available Distribution Amount remaining after the foregoing distributions, the sum of (I) Accrued Certificate Interest thereon, (II) the amount of any Overcollateralization Reduction Amount for such Distribution Date and (III) for any Distribution Date after the Certificate Principal Balance of each Class A Certificate and Class M Certificate has been reduced to zero, the Overcollateralization Amount, (B) from prepayment charges on deposit in the Certificate Account, any prepayment charges received on the Mortgage Loans during the related Prepayment Period, and (C) from the Net Swap Payments owed by the Swap Counterparty, if any, the amount of such Net Swap Payments remaining after the foregoing distributions; and

(x) to the Class R-III Certificateholders, the balance, if any, of the Available Distribution Amount.

All payments of amounts in respect of Basis Risk Shortfall made pursuant to Section 4.02(c)(v) shall, for federal income tax purposes, be deemed to have been distributed from REMIC IV to the holders of the Class SB Certificates and then paid outside of any REMIC to the recipients thereof pursuant to an interest rate cap contract. By accepting their Certificates the holders of the Certificates agree to treat such payments in the manner described in the preceding sentence for purposes of filing their income tax returns.

(d) The Principal Distribution Amount payable to the Class A Certificateholders and Class M Certificateholders shall be distributed as follows:

(i) first, the Class A Principal Distribution Amount shall be distributed to the Class A Certificates on a pro rata basis in accordance with their respective Certificate Principal Balances, until the Certificate Principal Balances thereof have been reduced to zero;

(ii) second, the Class M-1 Principal Distribution Amount shall be distributed to the Class M-1 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(iii) third, the Class M-2 Principal Distribution Amount shall be distributed to the Class M-2 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(iv) fourth, the Class M-3 Principal Distribution Amount shall be distributed to the Class M-3 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

71

--------------------------------------------------------------

(v) fifth, the Class M-4 Principal Distribution Amount shall be distributed to the Class M-4 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(vi) sixth, the Class M-5 Principal Distribution Amount shall be distributed to the Class M-5 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(vii) seventh, the Class M-6 Principal Distribution Amount shall be distributed to the Class M-6 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(viii) eighth, the Class M-7 Principal Distribution Amount shall be distributed to the Class M-7 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(ix) ninth, the Class M-8 Principal Distribution Amount shall be distributed to the Class M-8 Certificates until the Certificate Principal Balance thereof has been reduced to zero; and

(x) tenth, the Class M-9 Principal Distribution Amount shall be distributed to the Class M-9 Certificates until the Certificate Principal Balance thereof has been reduced to zero.

(e)  Notwithstanding  the  foregoing  clauses  (c)  and  (d),  if  the
reduction  of  the  Certificate  Principal  Balance  of  a  Class  of  Class  A
Certificates  or  Class  M  Certificates  to  zero,  such  Class  of  Certificates  will
not  be  entitled  to  further  distributions  pursuant  to  Section  4.02,  including,
without  limitation,  the  payment  of  current  and  unreimbursed  Prepayment  Interest
Shortfalls  pursuant  to  clauses  (c)(iii)  and  (iv)  and  Basis  Risk  Shortfall
pursuant  to  clause  (c)(v).

(f)  Each  distribution  with  respect  to  a  Book-Entry  Certificate  shall  be
paid  to  the  Depository,  as  Holder  thereof,  and  the  Depository  shall  be  solely
responsible  for  crediting  the  amount  of  such  distribution  to  the  accounts  of  its
Depository  Participants  in  accordance  with  its  normal  procedures.  Each
Depository  Participant  shall  be  responsible  for  disbursing  such  distribution  to
the  Certificate  Owners  that  it  represents  and  to  each  indirect  participating
brokerage  firm  (a  "brokerage  firm")  for  which  it  acts  as  agent.  Each  brokerage
firm  shall  be  responsible  for  disbursing  funds  to  the  Certificate  Owners  that  it
represents.  None  of  the  Trustee,  the  Certificate  Registrar,  the  Company  or  the
Master  Servicer  shall  have  any  responsibility  therefor.

(g)  [Reserved].

(h)  Except  as  otherwise  provided  in  Section  9.01  of  the  Standard  Terms,
if  the  Master  Servicer  anticipates  that  a  final  distribution  with  respect  to  any
Class  of  Certificates  will  be  made  on  a  future  Distribution  Date,  the  Master
Servicer  shall,  no  later  than  40  days  prior  to  such  final  Distribution  Date,

--------------------------------------------------------------

notify  the  Trustee  and  the  Trustee  shall,  not  earlier  than  the  15th  day  and  not
later  than  the  25th  day  of  the  month  next  preceding  the  month  of  such  final
distribution,  distribute,  or  cause  to  be  distributed,  to  each  Holder  of  such
Class  of  Certificates  a  notice  to  the  effect  that:  (i)  the  Trustee  anticipates
that  the  final  distribution  with  respect  to  such  Class  of  Certificates  will  be
made  on  such  Distribution  Date  but  only  upon  presentation  and  surrender  of  such
Certificates  at  the  office  of  the  Trustee  or  as  otherwise  specified  therein,  and
(ii)  no  interest  shall  accrue  on  such  Certificates  from  and  after  the  end  of  the
related  Interest  Accrual  Period.  In  the  event  that  Certificateholders  required
to  surrender  their  Certificates  pursuant  to  Section  9.01(c)  of  the  Standard
Terms  do  not  surrender  their  Certificates  for  final  cancellation,  the  Trustee
shall  cause  funds  distributable  with  respect  to  such  Certificates  to  be
withdrawn  from  the  Certificate  Account  and  credited  to  a  separate  non-interest
bearing  escrow  account  for  the  benefit  of  such  Certificateholders  as  provided  in
Section  9.01(d)  of  the  Standard  Terms.

Section  4.03.  STATEMENTS  TO  CERTIFICATEHOLDERS;  STATEMENTS  TO  THE  RATING
AGENCIES;  EXCHANGE  ACT  REPORTING.  (See  Section  4.03  of  the
Standard  Terms)

Section  4.04.  DISTRIBUTION  OF  REPORTS  TO  THE  TRUSTEE  AND  THE  COMPANY;
ADVANCES  BY  THE  MASTER  SERVICER.

(a)  (See  Section  4.04(a)  of  the  Standard  Terms).

(b)  On  or  before  2:00  P.M.  New  York  time  on  each  Certificate  Account
Deposit  Date,  the  Master  Servicer  shall  either  (i)  deposit  in  the  Certificate
Account  from  its  own  funds,  or  funds  received  therefor  from  the  Subservicers,  an
amount  equal  to  the  Advances  to  be  made  by  the  Master  Servicer  in  respect  of  the
related  Distribution  Date,  which  shall  be  in  an  aggregate  amount  equal  to  the
aggregate  amount  of  Monthly  Payments  (with  each  interest  portion  thereof
adjusted  to  the  Net  Mortgage  Rate),  less  the  amount  of  any  related  Servicing
Modifications,  Debt  Service  Reductions  or  reductions  in  the  amount  of  interest
collectable  from  the  Mortgagor  pursuant  to  the  Servicemembers  Civil  Relief  Act,
as  amended,  or  similar  legislation  or  regulations  then  in  effect,  on  the
Outstanding  Mortgage  Loans  as  of  the  related  Due  Date,  which  Monthly  Payments
were  not  received  as  of  the  close  of  business  as  of  the  related  Determination
Date;  provided  that  no  Advance  shall  be  made  if  it  would  be  a  Nonrecoverable
Advance;  and  provided,  further,  that  the  Monthly  Payment  for  purposes  of  this
Section  4.04  shall  mean  the  minimum  monthly  payment  due  under  the  Mortgage  Note,
net  of  the  Servicing  Fee  and  Subservicing  Fee,  (ii)  withdraw  from  amounts  on
deposit  in  the  Custodial  Account  and  deposit  in  the  Certificate  Account  all  or  a
portion  of  the  Amount  Held  for  Future  Distribution  in  discharge  of  any  such
Advance,  or  (iii)  make  advances  in  the  form  of  any  combination  of  (i)  and  (ii)
aggregating  the  amount  of  such  Advance.  Any  portion  of  the  Amount  Held  for
Future  Distribution  so  used  shall  be  replaced  by  the  Master  Servicer  by  deposit
in  the  Certificate  Account  on  or  before  11:00  A.M.  New  York  time  on  any  future
Certificate  Account  Deposit  Date  to  the  extent  that  funds  attributable  to  the
Mortgage  Loans  that  are  available  in  the  Custodial  Account  for  deposit  in  the
Certificate  Account  on  such  Certificate  Account  Deposit  Date  shall  be  less  than
payments  to  Certificateholders  required  to  be  made  on  the  following  Distribution
Date.  The  Master  Servicer  shall  be  entitled  to  use  any  Advance  made  by  a
Subservicer  as  described  in  Section  3.07(b)  that  has  been  deposited  in  the
Custodial  Account  on  or  before  such  Distribution  Date  as  part  of  the  Advance
made  by  the  Master  Servicer  pursuant  to  this  Section  4.04.  The  amount  of  any
reimbursement  pursuant  to  Section  4.02(a)  in  respect  of  outstanding  Advances  on

Service pursuant to Section 4.04 and the amount of all advances that
have been reimbursed during the related Due Period;

(xvi) any material modifications, extensions or waivers to the terms of
the Mortgage Loans during the Due Period or that have cumulatively
become material over time;

(xvii) any material breaches of Mortgage Loan representations or
warranties or covenants in the Agreement.

(xviii) the number, stated and aggregate principal balance of any REO
Properties;

(xix) the aggregate Accrued Certificate Interest remaining unpaid, if
any, for each Class of Certificates, after giving effect to the
distribution made on such Distribution Date;

(xx) the Pass-Through Rates on each Class of Certificates and the Net
WAC Cap Rate for such Distribution Date, separately identifying LIBOR
for such Distribution Date;

(xxi) the Basis Risk Shortfall and Prepayment Interest Shortfalls;

(xxii) the related Senior Enhancement Percentage for such Distribution
Date;

(xxiii) the Overcollateralization Amount and Required
Overcollateralization Amount following such Distribution Date;

(xxiv) the occurrence of the Stepdown Date, and the aggregate amount of
Realized Losses since the Cut-off Date for the Mortgage Loans;

(xxv) the occurrence of the Credit Support Depletion Date;

(xxvi) the aggregate amount of any recoveries on previously foreclosed
loans from Sellers; and

(xxvii) the amount of any Net Swap Payment payable to the Trustee on
behalf of the Trust, any Net Swap Payment payable to the Swap
Counterparty, any Swap Termination Payment payable to the Trustee on
behalf of the Trust and any Swap Termination Payment payable to the Swap
Counterparty.

In the case of information furnished pursuant to clauses (v)(a) and (vi)
above, the amounts shall be expressed as a dollar amount per Certificate with a
$1,000 denomination.

113

--------------------------------------------------------------

The Trustee's internet website will initially be located at
www.tss.db.com/invr. To receive this statement via first class mail, telephone
the trustee at (800) 735-7777.

114

--------------------------------------------------------------

EXHIBIT THREE

STANDARD TERMS OF POOLING AND SERVICING
AGREEMENT DATED AS OF MARCH 1, 2006

================================================================================

STANDARD TERMS OF
POOLING AND SERVICING AGREEMENT

Dated as of March 1, 2006

Residential Accredit Loans, Inc.
Mortgage Asset-Backed Pass-Through Certificates

CONVEYANCE OF MORTGAGE LOANS

ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01.  Conveyance of Mortgage Loans.

(a)     The Company, concurrently with the execution and delivery hereof, does
hereby assign to the Trustee for the benefit of the Certificateholders
without recourse all the right, title and interest of the Company in and
to the Mortgage Loans, including all interest and principal received on
or with respect to the Mortgage Loans after the Cut-off Date (other than
payments of principal and interest due on the Mortgage Loans in the
month of the Cut-off Date). In connection with such transfer and
assignment, the Company does hereby deliver to the Trustee the
Certificate Policy (as defined in the Series Supplement), if any for the
benefit of the Holders of the Insured Certificates (as defined in the
Series Supplement).

(b)     In connection with such assignment, except as set forth in Section
2.01(c) and subject to Section 2.01(d) below, the Company does hereby
deliver to, and deposit with, the Trustee, or to and with one or more
Custodians, as the duly appointed agent or agents of the Trustee for
such purpose, the following documents or instruments (or copies thereof
as permitted by this Section) (I) with respect to each Mortgage Loan so
assigned (other than a Cooperative Loan):

(i)     The original Mortgage Note, endorsed without recourse in blank or to the
order of the Trustee, and showing an unbroken chain of endorsements from
the originator thereof to the Person endorsing it to the Trustee, or
with respect to any Destroyed Mortgage Note, an original lost note
affidavit from the related Seller or Residential Funding stating that
the original Mortgage Note was lost, misplaced or destroyed, together
with a copy of the related Mortgage Note;

(ii)    The original Mortgage, noting the presence of the MIN of the Mortgage
Loan and language indicating that the Mortgage Loan is a MOM Loan if the
Mortgage Loan is a MOM Loan, with evidence of recording indicated
thereon or a copy of the Mortgage with evidence of recording indicated
thereon;

(iii)   Unless the Mortgage Loan is registered on the MERS(R) System, an
original Assignment of the Mortgage to the Trustee with evidence of
recording indicated thereon or a copy of such assignment with evidence
of recording indicated thereon;

(iv)    The original recorded assignment or assignments of the Mortgage showing
an unbroken chain of title from the originator thereof to the Person
assigning it to the Trustee (or to MERS, if the Mortgage Loan is
registered on the MERS(R) System and noting the presence of a MIN) with
evidence of recordation noted thereon or attached thereto, or a copy of
such assignment or assignments of the Mortgage with evidence of
recording indicated thereon; and

(v)     The original of each modification, assumption agreement or preferred
loan agreement, if any, relating to such Mortgage Loan or a copy of each
modification, assumption agreement or preferred loan agreement.

        and (II) with respect to each Cooperative Loan so assigned:

(i)     The original Mortgage Note, endorsed without recourse to the order of
the Trustee and showing an unbroken chain of endorsements from the
originator thereof to the Person endorsing it to the Trustee, or with
respect to any Destroyed Mortgage Note, an original lost note affidavit
from the related Seller or Residential Funding stating that the original
Mortgage Note was lost, misplaced or destroyed, together with a copy of
the related Mortgage Note;

(ii)    A counterpart of the Cooperative Lease and the Assignment of Proprietary
Lease to the originator of the Cooperative Loan with intervening
assignments showing an unbroken chain of title from such originator to
the Trustee;

(iii)   The related Cooperative Stock Certificate, representing the related
Cooperative Stock pledged with respect to such Cooperative Loan,
together with an undated stock power (or other similar instrument)
executed in blank;

(iv)    The original recognition agreement by the Cooperative of the interests
of the mortgagee with respect to the related Cooperative Loan;

(v)     The Security Agreement;

(vi)    Copies of the original UCC-1 financing statement, and any continuation
statements, filed by the originator of such Cooperative Loan as secured
party, each with evidence of recording thereof, evidencing the interest
of the originator under the Security Agreement and the Assignment of
Proprietary Lease;

(vii)   Copies of the filed UCC-3 assignments of the security interest
        referenced in clause (vi) above showing an unbroken chain of title from
        the originator to the Trustee, each with evidence of recording thereof,
        evidencing the interest of the originator under the Security Agreement
        and the Assignment of Proprietary Lease;

(viii)  An executed assignment of the interest of the originator in the Security
        Agreement, Assignment of Proprietary Lease and the recognition agreement
        referenced in clause (iv) above, showing an unbroken chain of title from
        the originator to the Trustee;

(ix)    The original of each modification, assumption agreement or preferred
        loan agreement, if any, relating to such Cooperative Loan; and

(x)     A duly completed UCC-1 financing statement showing the Master Servicer
        as debtor, the Company as secured party and the Trustee as assignee and
        a duly completed UCC-1 financing statement showing the Company as debtor
        and the Trustee as secured party, each in a form sufficient for filing,
        evidencing the interest of such debtors in the Cooperative Loans.

(c)     The Company may, in lieu of delivering the original of the documents set
        forth in Section 2.01(b)(I)(ii), (iii), (iv) and (v) and Section
        (b)(II)(ii), (iv), (vii), (ix) and (x) (or copies thereof as permitted
        by Section 2.01(b)) to the Trustee or the Custodian or Custodians,
        deliver such documents to the Master Servicer, and the Master Servicer
        shall hold such documents in trust for the use and benefit of all
        present and future Certificateholders until such time as is set forth in
        the next sentence. Within thirty Business Days following the earlier of
        (i) the receipt of the original of all of the documents or instruments
        set forth in Section 2.01(b)(I)(ii), (iii), (iv) and (v) and Section
        (b)(II)(ii), (iv), (vii), (ix) and (x) (or copies thereof as permitted
        by such Section) for any Mortgage Loan and (ii) a written request by the
        Trustee to deliver those documents with respect to any or all of the
        Mortgage Loans then being held by the Master Servicer, the Master
        Servicer shall deliver a complete set of such documents to the Trustee
        or the Custodian or Custodians that are the duly appointed agent or
        agents of the Trustee.

        The parties hereto agree that it is not intended that any Mortgage Loan
be included in the Trust Fund that is either (i) a "High-Cost Home Loan" as
defined in the New Jersey Home Ownership Act effective November 27, 2003, (ii) a
"High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act
effective January 1, 2004, (iii) a "High Cost Home Mortgage Loan" as defined in
the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004
or (iv) a "High-Cost Home Loan" as defined in the Indiana House Enrolled Act No.
1229, effective as of January 1, 2005.

(d) Notwithstanding the provisions of Section 2.01(c), in connection with any
Mortgage Loan, if the Company cannot deliver the original of the Mortgage, any
assignment, modification, assumption agreement or preferred loan agreement (or
copy thereof as permitted by Section 2.01(b)) with evidence of recording thereon
concurrently with the execution and delivery of this Agreement because of (i) a
delay caused by the public recording office where such Mortgage, assignment,
modification, assumption agreement or preferred loan agreement as the case may
be, has been delivered for recordation, or (ii) a delay in the receipt of
certain information necessary to prepare the related assignments, the Company
shall deliver or cause to be delivered to the Trustee or the respective
Custodian a copy of such Mortgage, assignment, modification, assumption
agreement or preferred loan agreement.

        The Company shall promptly cause to be recorded in the appropriate
public office for real property records the Assignment referred to in clause
(I)(iii) of Section 2.01(b), except (a) in states where, in the opinion of
counsel acceptable to the Trustee and the Master Servicer, such recording is not
required to protect the Trustee's interests in the Mortgage Loan against the
claim of any subsequent transferee or any successor to or creditor of the
Company or the originator of such Mortgage Loan or (b) if MERS is identified on
the Mortgage or on a properly recorded assignment of the Mortgage as the
mortgagee of record solely as nominee for the Seller and its successors and
assigns, and shall promptly cause to be filed the Form UCC-3 assignment and
UCC-1 financing statement referred to in clause (II)(vii) and (x), respectively,
of Section 2.01(b). If any Assignment, Form UCC-3 or Form UCC-1, as applicable,
is lost or returned unrecorded to the Company because of any defect therein, the
Company shall prepare a substitute Assignment, Form UCC-3 or Form UCC-1, as
applicable, or cure such defect, as the case may be, and cause such Assignment
to be recorded in accordance with this paragraph. The Company shall promptly
deliver or cause to be delivered to the Trustee or the respective Custodian such
Mortgage or Assignment or Form UCC-3 or Form UCC-1, as applicable, (or copy
thereof as permitted by Section 2.01(b)) with evidence of recording indicated
thereon at the time specified in Section 2.01(c). In connection with its
servicing of Cooperative Loans, the Master Servicer will use its best efforts to
file timely continuation statements with regard to each financing statement and
assignment relating to Cooperative Loans as to which the related Cooperative
Apartment is located outside of the State of New York.

        If the Company delivers to the Trustee or Custodian any Mortgage Note or
Assignment of Mortgage in blank, the Company shall, or shall cause the Custodian
to, complete the endorsement of the Mortgage Note and the Assignment of Mortgage

in the name of the Trustee in conjunction with the interim certification issued
by the Custodian, as contemplated by Section 2.02.

        Any of the items set forth in Sections 2.01(b)(I)(ii), (iii), (iv) and
(v) and (II)(vi) and (vii) and that may be delivered as a copy rather than the
original may be delivered to the Trustee or the Custodian.

        In connection with the assignment of any Mortgage Loan registered on the
MERS(R) System, the Company further agrees that it will cause, at the Company's
own expense, within 30 Business Days after the Closing Date, the MERS(R) System
to indicate that such Mortgage Loans have been assigned by the Company to the
Trustee in accordance with this Agreement for the benefit of the
Certificateholders by including (or deleting, in the case of Mortgage Loans
which are repurchased in accordance with this Agreement) in such computer files
(a) the code in the field which identifies the specific Trustee and (b) the code
in the field "Pool Field" which identifies the series of the Certificates issued
in connection with such Mortgage Loans. The Company further agrees that it will
not, and will not permit the Master Servicer to, and the Master Servicer agrees
that it will not, alter the codes referenced in this paragraph with respect to
any Mortgage Loan during the term of this Agreement unless and until such
Mortgage Loan is repurchased in accordance with the terms of this Agreement.


(e) Residential Funding hereby assigns to the Trustee its security interest in
and to any Additional Collateral or Pledged Assets, its right to receive amounts
due or to become due in respect of any Additional Collateral or Pledged Assets
pursuant to the related Subservicing Agreement and its rights as beneficiary
under the Surety Bond in respect of any Additional Collateral Loans. With
respect to any Additional Collateral Loan or Pledged Asset Loan, Residential
Funding shall cause to be filed in the appropriate recording office a UCC-3
statement giving notice of the assignment of the related security interest to
the Trust Fund and shall thereafter cause the timely filing of all necessary
continuation statements with regard to such financing statements.


(f) It is intended that the conveyance by the Company to the Trustee of the
Mortgage Loans as provided for in this Section 2.01 be and the Uncertificated
REMIC Regular Interests, if any (as provided for in Section 2.06), be construed
as a sale by the Company to the Trustee of the Mortgage Loans and any
Uncertificated REMIC Regular Interests for the benefit of the
Certificateholders. Further, it is not intended that such conveyance be deemed
to be a pledge of the Mortgage Loans and any Uncertificated REMIC Regular
Interests by the Company to the Trustee to secure a debt or other obligation of
the Company. Nonetheless, (a) this Agreement is intended to be and hereby is a
security agreement within the meaning of Articles 8 and 9 of the New York
Uniform Commercial Code and the Uniform Commercial Code of any other applicable
jurisdiction; (b) the conveyance provided for in Section 2.01 shall be deemed to
be, and hereby is, (1) a grant by the Company to the Trustee of a security
interest in all of the Company's right (including the power to convey title
thereto), title and interest, whether now owned or hereafter acquired, in and to
any and all general intangibles, payment intangibles, accounts, chattel paper,
instruments, documents, money, deposit accounts, certificates of deposit, goods,
letters of credit, advices of credit and investment property and other property
of whatever kind or description now existing or hereafter acquired consisting
of, arising from or relating to any of the following: (A) the Mortgage Loans,
including (i) with respect to each Cooperative Loan, the related Mortgage Note,
Security Agreement, Assignment of Proprietary Lease, Cooperative Stock
Certificate and Cooperative Lease, (ii) with respect to each Mortgage Loan other
than a Cooperative Loan, the related Mortgage Note and Mortgage, and (iii) any
insurance policies and all other documents in the related Mortgage File, (B) all
amounts payable pursuant to the Mortgage Loans in accordance with the terms
thereof, (C) any Uncertificated REMIC Regular Interests and (D) all proceeds of
the conversion, voluntary or involuntary, of the foregoing into cash,
instruments, securities or other property, including without limitation all
amounts from time to time held or invested in the Certificate Account or the
Custodial Account, whether in the form of cash, instruments, securities or other
property and (2) an assignment by the Company to the Trustee of any security
interest in any and all of Residential Funding's right (including the power to
convey title thereto), title and interest, whether now owned or hereafter
acquired, in and to the property described in the foregoing clauses (1)(A), (B),
(C) and (D) granted by Residential Funding to the Company pursuant to the
Assignment Agreement; (c) the possession by the Trustee, the Custodian or any
other agent of the Trustee of Mortgage Notes or such other items of property as
constitute instruments, money, payment intangibles, negotiable documents, goods,
deposit accounts, letters of credit, advices of credit, investment property,
certificated securities or chattel paper shall be deemed to be "possession by
the secured party," or possession by a purchaser or a person designated by such
secured party, for purposes of perfecting the security interest pursuant to the
Minnesota Uniform Commercial Code and the Uniform Commercial Code of any other
applicable jurisdiction as in effect (including, without limitation, Sections
8-106, 9-313, 9-314 and 9-106 thereof); and (d) notifications to persons holding
such property, and acknowledgments, receipts or confirmations from persons
holding such property, shall be deemed notifications to, or acknowledgments,
receipts or confirmations from, securities intermediaries, bailees or agents of,
or persons holding for (as applicable) the Trustee for the purpose of perfecting
such security interest under applicable law.

        The Company and, at the Company's direction, Residential Funding and the
Trustee shall, to the extent consistent with this Agreement, take such

reasonable actions as may be necessary to ensure that if this Agreement were
determined to create a security interest in the Mortgage Loans, the
Uncertificated REMIC Regular Interests and the other property described above,
such security interest would be determined to be a perfected security interest
of first priority under applicable law and will be maintained as such throughout
the term of this Agreement. Without limiting the generality of the foregoing,
the Company shall prepare and deliver to the Trustee not less than 15 days prior
to any filing date and, the Trustee shall forward for filing, or shall cause to
be forwarded for filing, at the expense of the Company, all filings necessary to
maintain the effectiveness of any original filings necessary under the Uniform
Commercial Code as in effect in any jurisdiction to perfect the Trustee's
security interest in or lien on the Mortgage Loans and any Uncertificated REMIC
Regular Interests, as evidenced by an Officers' Certificate of the Company,
including without limitation (x) continuation statements, and (y) such other
statements as may be occasioned by (1) any change of name of Residential
Funding, the Company or the Trustee (such preparation and filing shall be at the
expense of the Trustee, if occasioned by a change in the Trustee's name), (2)
any change of type or jurisdiction of organization of Residential Funding or the
Company, (3) any transfer of any interest of Residential Funding or the Company
in any Mortgage Loan or (4) any transfer of any interest of Residential Funding
or the Company in any Uncertificated REMIC Regular Interest.

(g) The Master Servicer hereby acknowledges the receipt by it of the Initial
Monthly Payment Fund. The Master Servicer shall hold such Initial Monthly
Payment Fund in the Custodial Account and shall include such Initial Monthly
Payment Fund in the Available Distribution Amount for the initial Distribution
Date. Notwithstanding anything herein to the contrary, the Initial Monthly
Payment Fund shall not be an asset of any REMIC. To the extent that the Initial
Monthly Payment Fund constitutes a reserve fund for federal income tax purposes,
(1) it shall be an outside reserve fund and not an asset of any REMIC, (2) it
shall be owned by the Seller and (3) amounts transferred by any REMIC to the
Initial Monthly Payment Fund shall be treated as transferred to the Seller or
any successor, all within the meaning of Section 1.860G-2(h) of the Treasury
Regulations.

(h) The Company agrees that the sale of each Pledged Asset Loan pursuant to this
Agreement will also constitute the assignment, sale, setting-over, transfer and
conveyance to the Trustee, without recourse (but subject to the Company's
covenants, representations and warranties specifically provided herein), of all
of the Company's obligations and all of the Company's right, title and interest
in, to and under, whether now existing or hereafter acquired as owner of the
Mortgage Loan with respect to any and all money, securities, security
entitlements, accounts, general intangibles, payment intangibles, instruments,
documents, deposit accounts, certificates of deposit, commodities contracts, and
other investment property and other property of whatever kind or description
consisting of, arising from or related to (i) the Assigned Contracts, (ii) all
rights, powers and remedies of the Company as owner of such Mortgage Loan under
or in connection with the Assigned Contracts, whether arising under the terms of
such Assigned Contracts, by statute, at law or in equity, or otherwise arising
out of any default by the Mortgagor under or in connection with the Assigned
Contracts, including all rights to exercise any election or option or to make
any decision or determination or to give or receive any notice, consent,
approval or waiver thereunder, (iii) the Pledged Amounts and all money,
securities, security entitlements, accounts, general intangibles, payment
intangibles, instruments, documents, deposit accounts, certificates of deposit,
commodities contracts, and other investment property and other property of
whatever kind or description and all cash and non-cash proceeds of the sale,
exchange, or redemption of, and all stock or conversion rights, rights to
subscribe, liquidation dividends or preferences, stock dividends, rights to
interest, dividends, earnings, income, rents, issues, profits, interest payments
or other distributions of cash or other property that secures a Pledged Asset
Loan, (iv) all documents, books and records concerning the foregoing (including
all computer programs, tapes, disks and related items containing any such
information) and (v) all insurance proceeds (including proceeds from the Federal
Deposit Insurance Corporation or the Securities Investor Protection Corporation
or any other insurance company) of any of the foregoing or replacements thereof
or substitutions therefor, proceeds of proceeds and the conversion, voluntary or
involuntary, of any thereof. The foregoing transfer, sale, assignment and
conveyance does not constitute and is not intended to result in the creation, or
an assumption by the Trustee, of any obligation of the Company, or any other
person in connection with the Pledged Assets or under any agreement or
instrument relating thereto, including any obligation to the Mortgagor, other
than as owner of the Mortgage Loan.

Section 2.02.  Acceptance by Trustee.

        The Trustee acknowledges receipt (or, with respect to Mortgage Loans
subject to a Custodial Agreement, and based solely upon a receipt or
certification executed by the Custodian, receipt by the respective Custodian as
the duly appointed agent of the Trustee) of the documents referred to in Section
2.01(b)(i) above (except that for purposes of such acknowledgement only, a
Mortgage Note may be endorsed in blank) and declares that it, or a Custodian as
its agent, holds and will hold such documents and the other documents
constituting a part of the Mortgage Files delivered to it, or a Custodian as its
agent, and the rights of Residential Funding with respect to any Pledged Assets,
Additional Collateral and the Surety Bond assigned to the Trustee pursuant to
Section 2.01, in trust for the use and benefit of all present and future
Certificateholders. The Trustee or Custodian (such Custodian being so obligated

(v)     No litigation is pending or, to the best of the Master Servicer's
        knowledge, threatened against the Master Servicer which would prohibit
        its entering into this Agreement or performing its obligations under
        this Agreement;

(vi)    The Master Servicer will comply in all material respects in the
        performance of this Agreement with all reasonable rules and requirements
        of each insurer under each Required Insurance Policy;

(vii)   No information, certificate of an officer, statement furnished in
        writing or report delivered to the Company, any Affiliate of the Company
        or the Trustee by the Master Servicer will, to the knowledge of the
        Master Servicer, contain any untrue statement of a material fact or omit
        a material fact necessary to make the information, certificate,
        statement or report not misleading;

(viii)  The Master Servicer has examined each existing, and will examine each
        new, Subservicing Agreement and is or will be familiar with the terms
        thereof. The terms of each existing Subservicing Agreement and each
        designated Subservicer are acceptable to the Master Servicer and any new
        Subservicing Agreements will comply with the provisions of Section 3.02;
        and

(ix)    The Master Servicer is a member of MERS in good standing, and will
        comply in all material respects with the rules and procedures of MERS in
        connection with the servicing of the Mortgage Loans that are registered
        with MERS.

It is understood and agreed that the representations and warranties set forth in
this Section 2.03(a) shall survive delivery of the respective Mortgage Files to
the Trustee or any Custodian.

        Upon discovery by either the Company, the Master Servicer, the Trustee
or any Custodian of a breach of any representation or warranty set forth in this
Section 2.03(a) which materially and adversely affects the interests of the
Certificateholders in any Mortgage Loan, the party discovering such breach shall
give prompt written notice to the other parties (any Custodian being so
obligated under a Custodial Agreement). Within 90 days of its discovery or its
receipt of notice of such breach, the Master Servicer shall either (i) cure such
breach in all material respects or (ii) to the extent that such breach is with
respect to a Mortgage Loan or a related document, purchase such Mortgage Loan
from the Trust Fund at the Purchase Price and in the manner set forth in Section
2.02; provided that if the omission or defect would cause the Mortgage Loan to
be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the
Code, any such cure or repurchase must occur within 90 days from the date such
breach was discovered. The obligation of the Master Servicer to cure such breach
or to so purchase such Mortgage Loan shall constitute the sole remedy in respect
of a breach of a representation and warranty set forth in this Section 2.03(a)
available to the Certificateholders or the Trustee on behalf of the
Certificateholders.

(b) Representations and warranties relating to the Mortgage Loans are set forth
in Section 2.03(b) of the Series Supplement.

Section 2.04.  Representations and Warranties of Residential Funding.

        The Company, as assignee of Residential Funding under the Assignment
Agreement, hereby assigns to the Trustee for the benefit of Certificateholders
all of its right, title and interest in respect of the Assignment Agreement
applicable to a Mortgage Loan. Insofar as the Assignment Agreement relates to
the representations and warranties made by Residential Funding in respect of
such Mortgage Loan and any remedies provided thereunder for any breach of such
representations and warranties, such right, title and interest may be enforced
by the Master Servicer on behalf of the Trustee and the Certificateholders. Upon
the discovery by the Company, the Master Servicer, the Trustee or any Custodian
of a breach of any of the representations and warranties made in the Assignment
Agreement (which, for purposes hereof, will be deemed to include any other cause
giving rise to a repurchase obligation under the Assignment Agreement) in
respect of any Mortgage Loan which materially and adversely affects the
interests of the Certificateholders in such Mortgage Loan, the party discovering
such breach shall give prompt written notice to the other parties (any Custodian
being so obligated under a Custodial Agreement). The Master Servicer shall
promptly notify Residential Funding of such breach and request that Residential
Funding either (i) cure such breach in all material respects within 90 days from
the date the Master Servicer was notified of such breach or (ii) purchase such
Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set
forth in Section 2.02; provided that Residential Funding shall have the option
to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage
Loan if such substitution occurs within two years following the Closing Date;
provided that if the breach would cause the Mortgage Loan to be other than a
"qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such
cure, repurchase or substitution must occur within 90 days from the date the
breach was discovered. If a breach of the Compliance With Laws Representation
has given rise to the obligation to repurchase or substitute a Mortgage Loan
pursuant to Section 4 of the Assignment Agreement, then the Master Servicer
shall request that Residential Funding pay to the Trust Fund, concurrently with
and in addition to the remedies provided in the preceding sentence, an amount
equal to any liability, penalty or expense that was actually incurred and paid

out of or on behalf of the Trust Fund, and that directly resulted from such
breach, or if incurred and paid by the Trust Fund thereafter reimbursement of
such payment. In the event that Residential Funding elects to substitute a
Qualified Substitute Mortgage Loan or Loans for a Deleted Mortgage Loan pursuant
to this Section 2.04, Residential Funding shall deliver to the Trustee or the
Custodian for the benefit of the Certificateholders with respect to such
Qualified Substitute Mortgage Loan or Loans, the original Mortgage Note, the
Mortgage, an Assignment of the Mortgage in recordable form, if required pursuant
to Section 2.01, and such other documents and agreements as are required by
Section 2.01, with the Mortgage Note endorsed as required by Section 2.01. No
substitution will be made in any calendar month after the Determination Date for
such month. Monthly Payments due with respect to Qualified Substitute Mortgage
Loans in the month of substitution shall not be part of the Trust Fund and will
be retained by the Master Servicer and remitted by the Master Servicer to
Residential Funding on the next succeeding Distribution Date. For the month of
substitution, distributions to the Certificateholders will include the Monthly
Payment due on a Deleted Mortgage Loan for such month and thereafter Residential
Funding shall be entitled to retain all amounts received in respect of such
Deleted Mortgage Loan. The Master Servicer shall amend or cause to be amended
the Mortgage Loan Schedule, and, if the Deleted Mortgage Loan was a Discount
Mortgage Loan, the Schedule of Discount Fractions, for the benefit of the
Certificateholders to reflect the removal of such Deleted Mortgage Loan and the
substitution of the Qualified Substitute Mortgage Loan or Loans and the Master
Servicer shall deliver the amended Mortgage Loan Schedule, and, if the Deleted
Mortgage Loan was a Discount Mortgage Loan, the amended Schedule of Discount
Fractions, to the Trustee. Upon such substitution, the Qualified Substitute
Mortgage Loan or Loans shall be subject to the terms of this Agreement and the
related Subservicing Agreement in all respects, Residential Funding shall be
deemed to have made the representations and warranties with respect to the
Qualified Substitute Mortgage Loan contained in the related Assignment
Agreement, and the Company and the Master Servicer shall be deemed to have made
with respect to any Qualified Substitute Mortgage Loan or Loans, as of the date
of substitution, the covenants, representations and warranties set forth in this
Section 2.04, in Section 2.03 hereof and in Section 4 of the Assignment
Agreement, and the Master Servicer shall be obligated to repurchase or
substitute for any Qualified Substitute Mortgage Loan as to which a Repurchase
Event (as defined in the Assignment Agreement) has occurred pursuant to Section
4 of the Assignment Agreement.

        In connection with the substitution of one or more Qualified Substitute
Mortgage Loans for one or more Deleted Mortgage Loans, the Master Servicer will
determine the amount (if any) by which the aggregate principal balance of all
such Qualified Substitute Mortgage Loans as of the date of substitution is less
than the aggregate Stated Principal Balance of all such Deleted Mortgage Loans
(in each case after application of the principal portion of the Monthly Payments
due in the month of substitution that are to be distributed to the
Certificateholders in the month of substitution). Residential Funding shall
deposit the amount of such shortfall into the Custodial Account on the day of
substitution, without any reimbursement therefor. Residential Funding shall give
notice in writing to the Trustee of such event, which notice shall be
accompanied by an Officers' Certificate as to the calculation of such shortfall
and (subject to Section 10.01(f)) by an Opinion of Counsel to the effect that
such substitution will not cause (a) any federal tax to be imposed on the Trust
Fund, including without limitation, any federal tax imposed on "prohibited
transactions" under Section 860F(a)(1) of the Code or on "contributions after
the startup date" under Section 860G(d)(1) of the Code or (b) any portion of any
REMIC to fail to qualify as such at any time that any Certificate is
outstanding.

        It is understood and agreed that the obligation of Residential Funding
to cure such breach or purchase, or to substitute for, a Mortgage Loan as to
which such a breach has occurred and is continuing and to make any additional
payments required under the Assignment Agreement in connection with a breach of
the Compliance With Laws Representation shall constitute the sole remedy
respecting such breach available to the Certificateholders or the Trustee on
behalf of Certificateholders. If the Master Servicer is Residential Funding,
then the Trustee shall also have the right to give the notification and require
the purchase or substitution provided for in the second preceding paragraph in
the event of such a breach of a representation or warranty made by Residential
Funding in the Assignment Agreement. In connection with the purchase of or
substitution for any such Mortgage Loan by Residential Funding, the Trustee
shall assign to Residential Funding all of the Trustee's right, title and
interest in respect of the Assignment Agreement applicable to such Mortgage
Loan.

Section 2.05.    Execution    and    Authentication    of    Certificates/Issuance    of
        Certificates Evidencing Interests in REMIC I Certificates.

        As provided in Section 2.05 of the Series Supplement.

Section 2.06.    Conveyance    of    Uncertificated    REMIC    I    and    REMIC    II    Regular
        Interests; Acceptance by the Trustee.

        As provided in Section 2.06 of the Series Supplement.

Section 2.07. Issuance of Certificates Evidencing Interests in REMIC II.

        As provided in Section 2.07 of the Series Supplement.