# EXHIBIT 7-E

Execution Copy

RESIDENTIAL ASSET SECURITIES CORPORATION,

Depositor,

RESIDENTIAL FUNDING CORPORATION,

Master Servicer,

and

U.S. BANK NATIONAL ASSOCIATION

Trustee

POOLING AND SERVICING AGREEMENT

Dated as of August 1, 2006

Home Equity Mortgage Asset-Backed Pass-Through Certificates

Series 2006-EMX7

TABLE OF CONTENTS

Page

ARTICLE I        DEFINITIONS.........................................................................................3

    Section 1.01.    Definitions.......................................................................3
    Section 1.02.    Determination of LIBOR............................................................41

ARTICLE II       CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES.............................43

    Section 2.01.    Conveyance of Mortgage Loans.....................................................43
    Section 2.02.    Acceptance by Trustee............................................................46
    Section 2.03.    Representations, Warranties and Covenants of the Master Servicer
                     and the Depositor................................................................47
    Section 2.04.    Representations and Warranties of Sellers........................................49
    Section 2.05.    Execution and Authentication of Certificates; Conveyance of
                     REMIC-I Regular Interests........................................................51
    Section 2.06.    Purposes and Powers of the Trust.................................................51
    Section 2.07.    Agreement Regarding Ability to Disclose..........................................52

ARTICLE III      ADMINISTRATION AND SERVICING OF MORTGAGE LOANS..............................................53

    Section 3.01.    Master Servicer to Act as Servicer...............................................53
    Section 3.02.    Subservicing Agreements Between Master Servicer and
                     Subservicers; Enforcement of Subservicers' Obligations...........................55
    Section 3.03.    Successor Subservicers...........................................................56
    Section 3.04.    Liability of the Master Servicer.................................................56
    Section 3.05.    No Contractual Relationship Between Subservicer and Trustee or
                     Certificateholders...............................................................57
    Section 3.06.    Assumption or Termination of Subservicing Agreements by Trustee..................57
    Section 3.07.    Collection of Certain Mortgage Loan Payments; Deposits to
                     Custodial Account................................................................57
    Section 3.08.    Subservicing Accounts; Servicing Accounts........................................60
    Section 3.09.    Access to Certain Documentation and Information Regarding the
                     Mortgage Loans...................................................................61
    Section 3.10.    Permitted Withdrawals from the Custodial Account.................................61
    Section 3.11.    Maintenance of Primary Insurance Coverage........................................63
    Section 3.12.    Maintenance of Fire Insurance and Omissions and Fidelity Coverage................63
    Section 3.13.    Enforcement of Due-on-Sale Clauses; Assumption and Modification
                     Agreements; Certain Assignments..................................................64
    Section 3.14.    Realization Upon Defaulted Mortgage Loans........................................66
    Section 3.15.    Trustee to Cooperate; Release of Custodial Files.................................68
    Section 3.16.    Servicing and Other Compensation; Compensating Interest..........................69
    Section 3.17.    Reports to the Trustee and the Depositor.........................................70
    Section 3.18.    Annual Statement as to Compliance and Servicing Assessment.......................70
    Section 3.19.    Annual Independent Public Accountants' Servicing Report.........................71

Section 12.02.    Additional Representations and Warranties of the Trustee......................127
Section 12.03.    Information to be Provided by Trustee.............................127
Section 12.04.    Report on Assessment of Compliance and Attestation............................128
Section 12.05.    Indemnification; Remedies.................................................128

EXHIBIT A        FORM OF CLASS A CERTIFICATE...........................................................A-1

EXHIBIT B        FORM OF CLASS M CERTIFICATE...........................................................B-1

EXHIBIT C        FORM OF CLASS SB CERTIFICATE.........................................................C-1

EXHIBIT D        FORM OF CLASS R CERTIFICATE..........................................................D-1

EXHIBIT E        FORM OF CUSTODIAL AGREEMENT........................................................E-1

EXHIBIT F        MORTGAGE LOAN SCHEDULE..............................................................F-1

EXHIBIT G        FORM OF REQUEST FOR RELEASE........................................................G-1

EXHIBIT H-1      FORM OF TRANSFER AFFIDAVIT AND AGREEMENT...................................H-1-1

EXHIBIT H-2      FORM OF TRANSFEROR CERTIFICATE...........................................H-2-1

EXHIBIT I        FORM OF INVESTOR REPRESENTATION LETTER.......................................I-1

EXHIBIT J        FORM OF TRANSFEROR REPRESENTATION LETTER....................................J-1

EXHIBIT K        TEXT OF AMENDMENT TO POOLING AND SERVICING AGREEMENT PURSUANT TO
                 SECTION 11.01(E) FOR A LIMITED GUARANTY.......................................K-1

EXHIBIT L        FORM OF LIMITED GUARANTY...........................................................L-1

EXHIBIT M        FORM OF LENDER CERTIFICATION FOR ASSIGNMENT OF MORTGAGE LOAN.................M-1

EXHIBIT N        FORM OF RULE 144A INVESTMENT REPRESENTATION..................................N-1

EXHIBIT O        [RESERVED]..........................................................................O-1

EXHIBIT P        FORM OF ERISA LETTER.................................................................P-1

EXHIBIT Q        [RESERVED]..........................................................................Q-1

EXHIBIT R        ASSIGNMENT AGREEMENT.................................................................R-1

EXHIBIT S        SERVICING CRITERIA...................................................................S-1

EXHIBIT T-1      FORM OF 10-K CERTIFICATION..........................................................T-1-1

EXHIBIT T-2      FORM OF BACK-UP CERTIFICATION......................................................T-2-1

EXHIBIT U        INFORMATION TO BE PROVIDED BY THE MASTER SERVICER TO THE RATING AGENCIES
                 RELATING TO REPORTABLE MODIFIED MORTGAGE LOANS...............................U-1

This Pooling and Servicing Agreement, effective as of August 1, 2006, among RESIDENTIAL ASSET SECURITIES CORPORATION, as the depositor (together with its permitted successors and assigns, the "Depositor"), RESIDENTIAL FUNDING CORPORATION, as master servicer (together with its permitted successors and assigns, the "Master Servicer"), and U.S. BANK NATIONAL ASSOCIATION, a banking association organized under the laws of the United States, as trustee (together with its permitted successors and assigns, the "Trustee").

PRELIMINARY STATEMENT:

The Depositor intends to sell mortgage asset-backed pass-through certificates (collectively, the "Certificates"), to be issued hereunder in fifteen Classes, which in the aggregate will evidence the entire beneficial ownership interest in the Mortgage Loans (as defined herein) and certain other related

requires, shall have the meanings specified in this Article.

Accrued Certificate Interest: With respect to each Distribution Date and each Class of Class A Certificates and Class M Certificates, interest accrued during the related Interest Accrual Period on the Certificate Principal Balance thereof immediately prior to such Distribution Date at the Pass-Through Rate for that Distribution Date.

The amount of Accrued Certificate Interest on each Class of Certificates shall be reduced by the amount of Prepayment Interest Shortfalls on the related Mortgage Loans during the prior calendar month to the extent not covered by Compensating Interest pursuant to Section 3.16, and by Relief Act Shortfalls on the related Mortgage Loans during the related Due Period. All such reductions with respect to the related Mortgage Loans will be allocated among the Certificates on a pro-rata basis in proportion to the amount of Accrued Certificate Interest payable on such Certificates on such Distribution Date absent such reductions.

Accrued Certificate Interest for any Distribution Date shall further be reduced by the interest portion of Realized Losses allocated to any Class of Certificates pursuant to Section 4.05.

Accrued Certificate Interest shall accrue on the basis of a 360-day year and the actual number of days in the related Interest Accrual Period.

With respect to each Distribution Date and the Class SB Certificates, interest accrued during the preceding Interest Accrual Period at the Pass-Through Rate on the Notional Amount as specified in the definition of Pass-Through Rate, immediately prior to such Distribution Date, reduced by any interest shortfalls with respect to the Mortgage Loans, including Prepayment Interest Shortfalls to the extent not covered by Compensating Interest pursuant to Section 3.16 or by Excess Cash Flow pursuant to Section 4.02(c)(v) and (vi). Accrued Certificate Interest on the Class SB Certificates shall accrue on the basis of a 360-day year and the actual number of days in the related Interest Accrual Period.

Adjusted Mortgage Rate: With respect to any Mortgage Loan and any date of determination, the Mortgage Rate borne by the related Mortgage Note, less the rate at which the related Subservicing Fee accrues.

Adjustment Date: With respect to each adjustable-rate Mortgage Loan, each date set forth in the related Mortgage Note on which an adjustment to the interest rate on such Mortgage Loan becomes effective.

Advance: With respect to any Mortgage Loan, any advance made by the Master Servicer, pursuant to Section 4.04.

Affiliate: With respect to any Person, any other Person controlling, controlled by or under common control with such first Person. For purposes of this definition, "control" means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Agreement: This Pooling and Servicing Agreement and all amendments hereof and supplements hereto.

Amount Held for Future Distribution: With respect to any Distribution Date, the total of the amounts held in the Custodial Account at the close of business on the preceding Determination Date on account of (i) Liquidation Proceeds, Subsequent Recoveries, Insurance Proceeds, REO Proceeds, Principal Prepayments, Mortgage Loan purchases made pursuant to Section 2.02, 2.03, 2.04 or 4.07 and Mortgage Loan substitutions made pursuant to Section 2.03 or 2.04 received or made in the month of such Distribution Date (other than such Liquidation Proceeds, Subsequent Recoveries, Insurance Proceeds, REO Proceeds and purchases of Mortgage Loans that the Master Servicer has deemed to have been received in the preceding month in accordance with Section 3.07(b)) and (ii) payments which represent early receipt of scheduled payments of principal and interest due on a date or dates subsequent to the Due Date in the related Due Period.

Appraised Value: With respect to any Mortgaged Property, the lesser of (i) the appraised value of such Mortgaged Property based upon the appraisal made at the time of the origination of the related Mortgage Loan, and (ii) the sales price of the Mortgaged Property at such time of origination, except in the case of a Mortgaged Property securing a refinanced or modified Mortgage Loan as to which it is either the appraised value based upon the appraisal made at the time of origination of the loan which was refinanced or modified or the appraised value determined in an appraisal at the time of refinancing or modification, as the case may be.

Assignment: An assignment of the Mortgage, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the sale of the Mortgage Loan to the Trustee for the benefit of Certificateholders, which assignment, notice of transfer or equivalent instrument may be in the form of one or more blanket assignments covering Mortgages secured by Mortgaged Properties located in the same county, if permitted by law and accompanied by an Opinion of Counsel to that effect.

Assignment Agreement: The Assignment and Assumption Agreement, dated the Closing Date, between Residential Funding and the Depositor relating to the transfer and assignment of the Mortgage Loans, attached hereto as Exhibit R.

Available Distribution Amount: With respect to any Distribution Date, an amount equal to (a) the sum of (i) the amount relating to the Mortgage Loans on deposit in the Custodial Account as of the close of business on the immediately preceding Determination Date, including any Subsequent Recoveries, and amounts deposited in the Custodial Account in connection with the substitution of Qualified Substitute Mortgage Loans, (ii) the amount of any Advance made on the immediately preceding Certificate Account Deposit Date with respect to the Mortgage Loans, (iii) any amount deposited in the Certificate Account on the related Certificate Account Deposit Date pursuant to the second paragraph of Section 3.12(a) in respect of the Mortgage Loans, (iv) any amount that the Master Servicer is not permitted to withdraw from the Custodial Account pursuant to Section 3.16(e) in respect of the Mortgage Loans, and (v) any amount deposited in the Certificate Account pursuant to Section 4.07 or 9.01 in respect of the Mortgage Loans, reduced by (b) the sum as of the close of business on the immediately preceding Determination Date of (x) the Amount Held for Future Distribution with respect to the Mortgage Loans, and (y) amounts permitted to be withdrawn by the Master Servicer from the Custodial Account in respect of the Mortgage Loans pursuant to clauses (ii)-(x), inclusive, of Section 3.10(a).

Balloon Loan: Each of the Mortgage Loans having an original term to maturity that is shorter

on that Distribution Date.

Servicing Accounts: The account or accounts created and maintained pursuant to Section 3.08.

Servicing Advances: All customary, reasonable and necessary "out of pocket" costs and expenses incurred in connection with a default, delinquency or other unanticipated event by the Master Servicer or a Subservicer in the performance of its servicing obligations, including, but not limited to, the cost of (i) the preservation, restoration and protection of a Mortgaged Property or, with respect to a cooperative loan, the related cooperative apartment, (ii) any enforcement or judicial proceedings, including foreclosures, including any expenses incurred in relation to any such proceedings that result from the Mortgage Loan being registered on the MERS® System, (iii) the management and liquidation of any REO Property, (iv) any mitigation procedures implemented in accordance with Section 3.07, and (v) compliance with the obligations under Sections 3.01, 3.08, 3.11, 3.12(a) and 3.14, including, if the Master Servicer or any Affiliate of the Master Servicer provides services such as appraisals and brokerage services that are customarily provided by Persons other than servicers of mortgage loans, reasonable compensation for such services.

Servicing Criteria: The "servicing criteria" set forth in Item 1122(d) of Regulation AB, as such may be amended from time to time.

Servicing Fee: With respect to any Mortgage Loan and Distribution Date, the fee payable monthly to the Master Servicer in respect of master servicing compensation that accrues at an annual rate equal to the Servicing Fee Rate multiplied by the Stated Principal Balance of such Mortgage Loan as of the related Due Date in the related Due Period, as may be adjusted pursuant to Section 3.16(e).

Servicing Fee Rate: With respect to any Mortgage Loan, the per annum rate designated on the Mortgage Loan Schedule as the "MSTR SERV FEE," as may be adjusted with respect to successor Master Servicers as provided in Section 7.02, which rate shall never be greater than the Mortgage Rate of such Mortgage Loan.

Servicing Modification: Any reduction of the interest rate on or the outstanding principal balance of a Mortgage Loan, any extension of the final maturity date of a Mortgage Loan, and any increase to the Stated Principal Balance of a Mortgage Loan by adding to the Stated Principal Balance unpaid principal and interest and other amounts owing under the Mortgage Loan, in each case pursuant to a modification of a Mortgage Loan that is in default, or for which, in the judgment of the Master Servicer, default is reasonably foreseeable in accordance with Section 3.07(a).

Servicing Officer: Any officer of the Master Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name and specimen signature appear on a list of servicing officers furnished to the Trustee by the Master Servicer on the Closing Date, as such list may from time to time be amended.

Sixty-Plus Delinquency Percentage: With respect to any Distribution Date and the Mortgage Loans, the arithmetic average, for each of the three Distribution Dates ending with such Distribution Date, of the fraction, expressed as a percentage, equal to (x) the aggregate Stated Principal Balance of the Mortgage Loans that are 60 or more days delinquent in payment of principal and interest for that Distribution Date, including Mortgage Loans in foreclosure and REO, over (y) the aggregate Stated Principal Balance of all of the Mortgage Loans immediately preceding that Distribution Date.

Standard & Poor's: Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. or its successors in interest.

Startup Date: The day designated as such pursuant to Article X hereof.

Stated Principal Balance: With respect to any Mortgage Loan or related REO Property, as of any date of determination, (i) the sum of (a) the Cut-off Date Principal Balance of the Mortgage Loan and (b) any amount by which the Stated Principal Balance of the Mortgage Loan has been increased pursuant to a Servicing Modification, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending with the Due Period relating to the most recent Distribution Date which were received or with respect to which an Advance was made, (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized Loss incurred with respect to such Mortgage Loan allocated to Certificateholders with respect thereto for any previous Distribution Date.

Stepdown Date: That Distribution Date which is the earlier to occur of (a) the Distribution Date immediately succeeding the Distribution Date on which the aggregate Certificate Principal Balance of the Class A Certificates has been reduced to zero and (b) the later to occur of (i) the Distribution Date in September 2009 and (ii) the first Distribution Date on which the Senior Enhancement Percentage is equal to or greater than 49.50%.

Subordination: The provisions described in Section 4.05 relating to the allocation of Realized Losses.

Subordination Percentage: With respect to each Class of Class A Certificates and Class M Certificates, the respective percentage set forth below.

| Class | Subordination Percentage |
|-------|--------------------------|
| A     | 50.50%                   |
| M-1   | 59.40%                   |
| M-2   | 68.10%                   |
| M-3   | 72.40%                   |
| M-4   | 76.40%                   |
| M-5   | 80.10%                   |
| M-6   | 82.60%                   |
| M-7   | 85.40%                   |
| M-8   | 87.60%                   |
| M-9   | 90.50%                   |

Subsequent Recoveries: As of any Distribution Date, amounts received by the Master Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 3.10) or surplus amounts

held by the Master Servicer to cover estimated expenses (including, but not limited to, recoveries in respect of the representations and warranties made by the related Seller pursuant to the applicable Seller's Agreement and assigned to the Trustee pursuant to Section 2.04) specifically related to a Mortgage Loan that was the subject of a Cash Liquidation or an REO Disposition prior to the related Prepayment Period and that resulted in a Realized Loss.

Subserviced Mortgage Loan: Any Mortgage Loan that, at the time of reference thereto, is subject to a Subservicing Agreement.

Subservicer: Any Person with whom the Master Servicer has entered into a Subservicing Agreement and who generally satisfied the requirements set forth in the Program Guide in respect of the qualification of a Subservicer as of the date of its approval as a Subservicer by the Master Servicer.

Subservicer Advance: Any delinquent installment of principal and interest on a Mortgage Loan which is advanced by the related Subservicer (net of its Subservicing Fee) pursuant to the Subservicing Agreement.

Subservicing Account: An account established by a Subservicer in accordance with Section 3.08.

Subservicing Agreement: The written contract between the Master Servicer and any Subservicer relating to servicing and administration of certain Mortgage Loans as provided in Section 3.02, generally in the form of the servicer contract referred to or contained in the Program Guide or in such other form as has been approved by the Master Servicer and the Depositor.

Subservicing Fee: With respect to any Mortgage Loan, the fee payable monthly to the related Subservicer (or, in the case of a Nonsubserviced Mortgage Loan, to the Master Servicer) in respect of subservicing and other compensation that accrues with respect to each Distribution Date at an annual rate designated as "SUBSERV FEE" on the Mortgage Loan Schedule.

Tax Returns: The federal income tax return on Internal Revenue Service Form 1066, U.S. Real Estate Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice to Residual Interest Holders of REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be filed on behalf of any REMIC hereunder due to its classification as a REMIC under the REMIC Provisions, together with any and all other information, reports or returns that may be required to be furnished to the Certificateholders or filed with the Internal Revenue Service or any other governmental taxing authority under any applicable provisions of federal, state or local tax laws.

Telerate Screen Page 3750: As defined in Section 1.02.

Transfer: Any direct or indirect transfer, sale, pledge, hypothecation or other form of assignment of any Ownership Interest in a Certificate.

Transfer Affidavit and Agreement: As defined in Section 5.02(f).

Transferee: Any Person who is acquiring by Transfer any Ownership Interest in a Certificate.

Transferor: Any Person who is disposing by Transfer of any Ownership Interest in a Certificate.

Trigger Event: A Trigger Event is in effect with respect to any Distribution Date on or after the Stepdown Date if either (a) the related Sixty-Plus Delinquency Percentage, as determined on that Distribution Date, equals or exceeds 32.32% of the Senior Enhancement Percentage for that Distribution Date or (b) on or after the Distribution Date in September 2008, the aggregate amount of Realized Losses on the Mortgage Loans as a percentage of the Cut-Off Date Balance exceeds the applicable amount set forth below:

| | |
|---|---|
| September 2008 to August 2009: | 1.85% with respect to September 2008, plus an additional 1/12th of 2.30% for each month thereafter. |
| September 2009 to August 2010: | 4.15% with respect to September 2009, plus an additional 1/12th of 2.30% for each month thereafter. |
| September 2010 to August 2011: | 6.45% with respect to September 2010, plus an additional 1/12th of 1.85% for each month thereafter. |
| September 2011 to August 2012: | 8.30% with respect to September 2011, plus an additional 1/12th of 1.00% for each month thereafter. |
| September 2012 and thereafter: | 9.30%. |

Trustee: As defined in the preamble hereto.

Trust Fund: The segregated pool of assets subject hereto, consisting of: (i) the Mortgage Loans and the related Mortgage Files; (ii) all payments on and collections in respect of the Mortgage Loans due after the Cut-off Date (other than Monthly Payments due in the month of the Cut-off Date) as shall be on deposit in the Custodial Account or in the Certificate Account and identified as belonging to the Trust Fund; (iii) property which secured a Mortgage Loan and which has been acquired for the benefit of the Certificateholders by foreclosure or deed in lieu of foreclosure; (iv) the hazard insurance policies and Primary Insurance Policies pertaining to the Mortgage Loans, if any; (v) the Yield Maintenance Agreement; and (vi) all proceeds of clauses (i) through (v) above.

Uncertificated Accrued Interest: With respect to any REMIC I Regular Interest for any Distribution Date, one month's interest at the related Uncertificated REMIC I Pass-Through Rate for such Distribution Date, accrued on its Uncertificated Principal Balance immediately prior to such Distribution Date. Uncertificated Accrued Interest for the REMIC I Regular Interests shall accrue on the basis of a 360-day year consisting of twelve 30-day months. For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC I Regular Interests for any Distribution Date, any Prepayment Interest Shortfalls and Relief Act Shortfalls (to the extent not covered by Compensating Interest) relating to the Mortgage Loans for any Distribution Date shall be allocated among REMIC I Regular Interests LT1, LT2, LT3 and LT4 pro rata, based on, and to the extent of, Uncertificated Accrued Interest, as calculated without application of this sentence. Uncertificated Accrued Interest on REMIC

The establishment of LIBOR by the Trustee on any LIBOR Rate Adjustment Date and the Trustee's subsequent calculation of the Pass-Through Rates applicable to the LIBOR Certificates for the relevant Interest Accrual Period, in the absence of manifest error, will be final and binding. Promptly following each LIBOR Rate Adjustment Date the Trustee shall supply the Master Servicer with the results of its determination of LIBOR on such date. Furthermore, the Trustee shall supply to any Certificateholder so requesting by calling 1-800-934-6802, the Pass-Through Rate on the LIBOR Certificates for the current and the immediately preceding Interest Accrual Period.

ARTICLE II

CONVEYANCE OF MORTGAGE LOANS;
ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01.    Conveyance of Mortgage Loans.

(a)    The Depositor, concurrently with the execution and delivery hereof, does hereby assign to the Trustee in respect of the Trust Fund without recourse all the right, title and interest of the Depositor in and to (i) the Mortgage Loans, including all interest and principal on or with respect to the Mortgage Loans due on or after the Cut-off Date (other than Monthly Payments due in the month of the Cut-off Date); and (ii) all proceeds of the foregoing.

(b)    In connection with such assignment, and contemporaneously with the delivery of this Agreement, the Depositor delivered or caused to be delivered hereunder to the Trustee, the Yield Maintenance Agreement (the delivery of which shall evidence that the fixed payment for the Yield Maintenance Agreement has been paid and the Trustee and the Trust Fund shall have no further payment obligation thereunder and that such fixed payment has been authorized hereby), and except as set forth in Section 2.01(c) below and subject to Section 2.01(d) below, the Depositor does hereby (1) with respect to to each Mortgage Loan, deliver to the Master Servicer (or an Affiliate of the Master Servicer) each of the documents or instruments described in clause (ii) below (and the Master Servicer shall hold (or cause such Affiliate to hold) such documents or instruments in trust for the use and benefit of all present and future Certificateholders), (2) with respect to to each MOM Loan, deliver to, and deposit with, the Trustee, or the Custodian, as the duly appointed agent of the Trustee for such purpose, the documents or instruments described in clauses (i) and (v) below, (3) with respect to each Mortgage Loan that is not a MOM Loan but is registered on the MERS® System, deliver to, and deposit with, the Trustee, or the Custodian, as the duly appointed agent of the Trustee for such purpose, the documents or instruments described in clauses (i), (iv) and (v) below and (4) with respect to each Mortgage Loan that is not a MOM Loan and is not registered on the MERS® System, deliver to, and deposit with, the Trustee, or the Custodian, as the duly appointed agent of the Trustee for such purpose, the documents or instruments described in clauses (i), (iii), (iv) and (v) below.

(i)    The original Mortgage Note, endorsed without recourse to the order of the Trustee and showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee, or with respect to any Destroyed Mortgage Note, an original lost note affidavit from the related Seller or Residential Funding stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note.

(ii)    The original Mortgage, noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recording indicated thereon or a copy of the original Mortgage with evidence of recording indicated thereon.

(iii)    The assignment (which may be included in one or more blanket assignments if permitted by applicable law) of the Mortgage to the Trustee with evidence of recording indicated thereon or a copy of such assignment with evidence of recording indicated thereon;

(iv)    The original recorded assignment or assignments of the Mortgage showing an unbroken chain of title from the originator to the Person assigning it to the Trustee (or to MERS, if the Mortgage Loan is registered on the MERS® System and noting the presence of a MIN) with evidence of recordation noted thereon or attached thereto, or a copy of such assignment or assignments of the Mortgage with evidence of recording indicated thereon.

(v)    The original of each modification, assumption agreement or preferred loan agreement, if any, relating to such Mortgage Loan, or a copy of each modification, assumption agreement or preferred loan agreement.

The Depositor may, in lieu of delivering the original of the documents set forth in Section 2.01(b)(iii), (iv) and (v) (or copies thereof) to the Trustee or the Custodian, deliver such documents to the Master Servicer, and the Master Servicer shall hold such documents in trust for the use and benefit of all present and future Certificateholders until such time as is set forth in the next sentence. Within thirty Business Days following the earlier of (i) the receipt of the original of all of the documents or instruments set forth in Section 2.01(b)(iii), (iv) and (v) (or copies thereof) for any Mortgage Loan and (ii) a written request by the Trustee to deliver those documents with respect to any or all of the Mortgage Loans then being held by the Master Servicer, the Master Servicer shall deliver a complete set of such documents to the Trustee or the Custodian, as duly appointed agent of the Trustee.

(c)    Notwithstanding the provisions of Section 2.01(b), in the event that in connection with any Mortgage Loan, if the Depositor cannot deliver the original of the Mortgage, any assignment, modification, assumption agreement or preferred loan agreement (or copy thereof as permitted by Section 2.01(b)) with evidence of recording thereon concurrently with the execution and delivery of this Agreement because of (i) a delay caused by the public recording office where such Mortgage, assignment, modification, assumption agreement or preferred loan agreement as the case may be, has been delivered for recordation, or (ii) a delay in the receipt of certain information necessary to prepare the related assignments, the Depositor shall deliver or cause to be delivered to the Trustee or the respective Custodian a copy of such Mortgage, assignment, modification, assumption agreement or preferred loan agreement.

The Depositor shall promptly cause to be recorded in the appropriate public office for real property records the Assignment referred to in clause (iii) of Section 2.01(b), except (a) in states where, in an Opinion of Counsel acceptable to the Master Servicer, such recording is not required to protect the Trustee's interests in the Mortgage Loan or (b) if MERS is identified on the Mortgage or on a properly recorded assignment of the Mortgage, as applicable, as the mortgagee of record solely as nominee for Residential Funding and its successors and assigns. If any Assignment is lost or returned unrecorded to the Depositor because of any defect therein, the Depositor shall prepare a substitute

Assignment or cure such defect, as the case may be, and cause such Assignment to be recorded in accordance with this paragraph. The Depositor shall promptly deliver or cause to be delivered to the applicable person described in Section 2.01(b), any Assignment or substitute Assignment (or copy thereof) recorded in connection with this paragraph, with evidence of recording indicated thereon upon receipt thereof from the public recording office or from the related Subservicer or Seller.

If the Depositor delivers to the Trustee or Custodian any Mortgage Note or Assignment of Mortgage in blank, the Depositor shall, or shall cause the Custodian to, complete the endorsement of the Mortgage Note and the Assignment of Mortgage in the name of the Trustee in conjunction with the Interim Certification issued by the Custodian, as contemplated by Section 2.02.

Any of the items set forth in Sections 2.01(b)(ii), (iii), (iv) and (v) and that may be delivered as a copy rather than the original may be delivered to the Trustee or the Custodian.

In connection with the assignment of any Mortgage Loan registered on the MERS® System, the Depositor further agrees that it will cause, at the Depositor's own expense, within 30 Business Days after the Closing Date, the MERS® System to indicate that such Mortgage Loans have been assigned by the Depositor to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files (a) the code in the field which identifies the specific Trustee and (b) the code in the field "Pool Field" which identifies the series of the Certificates issued in connection with such Mortgage Loans. The Depositor further agrees that it will not, and will not permit the Master Servicer to, and the Master Servicer agrees that it will not, alter the codes referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

(d)   It is intended that the conveyances by the Depositor to the Trustee of the Mortgage Loans as provided for in this Section 2.01 and the Uncertificated Regular Interests be construed as a sale by the Depositor to the Trustee of the Mortgage Loans and the Uncertificated Regular Interests for the benefit of the Certificateholders. Further, it is not intended that any such conveyance be deemed to be a pledge of the Mortgage Loans and the Uncertificated Regular Interests by the Depositor to the Trustee to secure a debt or other obligation of the Depositor. Nonetheless, (a) this Agreement is intended to be and hereby is a security agreement within the meaning of Articles 8 and 9 of the New York Uniform Commercial Code and the Uniform Commercial Code of any other applicable jurisdiction; (b) the conveyances provided for in this Section 2.01 shall be deemed to be (1) a grant by the Depositor to the Trustee of a security interest in all of the Depositor's right (including the power to convey title thereto), title and interest, whether now owned or hereafter acquired, in and to (A) the Mortgage Loans, including the related Mortgage Note, the Mortgage, any insurance policies and all other documents in the related Mortgage File, (B) all amounts payable pursuant to the Mortgage Loans in accordance with the terms thereof, (C) any Uncertificated Regular Interests and any and all general intangibles, payment intangibles, accounts, chattel paper, instruments, documents, money, deposit accounts, certificates of deposit, goods, letters of credit, advices of credit and investment property and other property of whatever kind or description now existing or hereafter acquired consisting of, arising from or relating to any of the foregoing, and (D) all proceeds of the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other property, including without limitation all amounts from time to time held or invested in the Certificate Account or the Custodial Account, whether in the form of cash, instruments, securities or other property and (2) an assignment by the Depositor to the Trustee of any security interest in any and all of Residential Funding's right (including the power to convey title thereto), title and interest, whether now owned or hereafter acquired, in and to the property described in the foregoing clauses (1)(A), (B), (C) and (D) granted by Residential Funding to the Depositor pursuant to the Assignment Agreement; (c) the possession by the Trustee, the Custodian or any other agent of the Trustee of Mortgage Notes or such other items of property as constitute instruments, money, payment intangibles, negotiable documents, goods, deposit accounts, letters of credit, advices of credit, investment property, certificated securities or chattel paper shall be deemed to be "possession by the secured party," or possession by a purchaser or a person designated by such secured party, for purposes of perfecting the security interest pursuant to the Minnesota Uniform Commercial Code and the Uniform Commercial Code of any other applicable jurisdiction as in effect (including, without limitation, Sections 8-106, 9-313 and 9-106 thereof); and (d) notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or confirmations from, securities intermediaries, bailees or agents of, or persons holding for, (as applicable) the Trustee for the purpose of perfecting such security interest under applicable law.

The Depositor and, at the Depositor's direction, Residential Funding and the Trustee shall, to the extent consistent with this Agreement, take such reasonable actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Mortgage Loans and the Uncertificated Regular Interests and the other property described above, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of this Agreement. Without limiting the generality of the foregoing, the Depositor shall prepare and deliver to the Trustee not less than 15 days prior to any filing date and, the Trustee shall forward for filing, or shall cause to be forwarded for filing, at the expense of the Depositor, all filings necessary to maintain the effectiveness of any original filings necessary under the Uniform Commercial Code as in effect in any jurisdiction to perfect the Trustee's security interest in or lien on the Mortgage Loans and the Uncertificated Regular Interests, as evidenced by an Officers' Certificate of the Depositor, including without limitation (x) continuation statements, and (y) such other statements as may be occasioned by (1) any change of name of Residential Funding, the Depositor or the Trustee (such preparation and filing shall be at the expense of the Trustee, if occasioned by a change in the Trustee's name), (2) any change of location of the place of business or the chief executive office of Residential Funding or the Depositor, (3) any transfer of any interest of Residential Funding or the Depositor in any Mortgage Loan or (4) any transfer of any interest of Residential Funding or the Depositor in any Uncertificated Regular Interests.

Section 2.02.   Acceptance by Trustee.

The Trustee acknowledges receipt (or, with respect to Mortgage Loans subject to a Custodial Agreement, and based solely upon a receipt or certification executed by the Custodian, receipt by the respective Custodian as the duly appointed agent of the Trustee) of the documents referred to in Section 2.01(b)(i) above (except that for purposes of such acknowledgement only, a Mortgage Note may be endorsed in blank and an Assignment of Mortgage may be in blank) and declares that it, or the Custodian as its agent, holds and will hold such documents and the other documents constituting a part of the Custodial Files delivered to it, or a Custodian as its agent, in trust for the use and benefit of all present and future Certificateholders. The Trustee or Custodian (the Custodian being so obligated under a Custodial Agreement) agrees, for the benefit of Certificateholders, to review each Custodial File delivered to it pursuant to Section 2.01(b) within 90 days after the Closing Date to ascertain that all required documents (specifically as set forth in Section 2.01(b)), have been executed and received, and

that such documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule, as supplemented, that have been conveyed to it, and to deliver to the Trustee a certificate (the "Interim Certification") to the effect that all documents required to be delivered pursuant to Section 2.01(b) above have been executed and received and that such documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule, except for any exceptions listed on Schedule A attached to such Interim Certification. Upon delivery of the Custodial Files by the Depositor or the Master Servicer, the Trustee shall acknowledge receipt (or, with respect to Mortgage Loans subject to a Custodial Agreement, and based solely upon a receipt or certification executed by the Custodian, receipt by the respective Custodian as the duly appointed agent of the Trustee) of the documents referred to in Section 2.01(b) above.

If the Custodian, as the Trustee's agent, finds any document or documents constituting a part of a Custodial File to be missing or defective, upon receipt of notification from the Custodian as specified in the succeeding sentence, the Trustee shall promptly so notify or cause the Custodian to notify the Master Servicer and the Depositor. Pursuant to Section 2.3 of the Custodial Agreement, the Custodian will notify the Master Servicer, the Depositor and the Trustee of any such omission or defect found by it in respect of any Custodial File held by it in respect of the items received by it pursuant to the Custodial Agreement. If such omission or defect materially and adversely affects the interests in the related Mortgage Loan of the Certificateholders, the Master Servicer shall promptly notify the related Subservicer or Seller of such omission or defect and request that such Subservicer or Seller correct or cure such omission or defect within 60 days from the date the Master Servicer was notified of such omission or defect and, if such Subservicer or Seller does not correct or cure such omission or defect within such period, that such Subservicer or Seller purchase such Mortgage Loan from the Trust Fund at its Purchase Price, in either case within 90 days from the date the Master Servicer was notified of such omission or defect; provided that if the omission or defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase must occur within 90 days from the date such breach was discovered. The Purchase Price for any such Mortgage Loan shall be deposited or caused to be deposited by the Master Servicer in the Custodial Account maintained by it pursuant to Section 3.07 and, upon receipt by the Trustee of written notification of such deposit signed by a Servicing Officer, Master Servicer, the Trustee or the Custodian, as the case may be, shall release the contents of any related Mortgage File in its possession and the Trustee shall execute and deliver such instruments of transfer or assignment prepared by the Master Servicer, in each case without recourse, as shall be necessary to vest in the Subservicer or Seller or its designee, as the case may be, any Mortgage Loan released pursuant hereto and thereafter such Mortgage Loan shall not be part of the Trust Fund. In furtherance of the foregoing and Section 2.04, if the Subservicer or Seller or Residential Funding that repurchases the Mortgage Loan is not a member of MERS and the Mortgage is registered on the MERS® System, the Master Servicer, at its own expense and without any right of reimbursement, shall cause MERS to execute and deliver an assignment of the Mortgage in recordable form to transfer the Mortgage from MERS to such Subservicer or Seller or Residential Funding and shall cause such Mortgage to be removed from registration on the MERS® System in accordance with MERS' rules and regulations. It is understood and agreed that the obligation of the Subservicer or Seller, to so cure or purchase any Mortgage Loan as to which a material and adverse defect in or omission of a constituent document exists shall constitute the sole remedy respecting such defect or omission available to Certificateholders or the Trustee on behalf of Certificateholders.

Section 2.03.    Representations, Warranties and Covenants of the Master Servicer and the Depositor.

(a)    The Master Servicer hereby represents and warrants to the Trustee for the benefit of the Certificateholders that:

(i)    The Master Servicer is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and is or will be in compliance with the laws of each state in which any Mortgaged Property is located to the extent necessary to ensure the enforceability of each Mortgage Loan in accordance with the terms of this Agreement;

(ii)    The execution and delivery of this Agreement by the Master Servicer and its performance and compliance with the terms of this Agreement will not violate the Master Servicer's Certificate of Incorporation or Bylaws or constitute a material default (or an event which, with notice or lapse of time, or both, would constitute a material default) under, or result in the material breach of, any material contract, agreement or other instrument to which the Master Servicer is a party or which may be applicable to the Master Servicer or any of its assets;

(iii)    This Agreement, assuming due authorization, execution and delivery by the Trustee and the Depositor, constitutes a valid, legal and binding obligation of the Master Servicer, enforceable against it in accordance with the terms hereof subject to applicable bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law;

(iv)    The Master Servicer is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or other) or operations of the Master Servicer or its properties or might have consequences that would materially adversely affect its performance hereunder;

(v)    No litigation is pending or, to the best of the Master Servicer's knowledge, threatened against the Master Servicer which would prohibit its entering into this Agreement or performing its obligations under this Agreement;

(vi)    The Master Servicer shall comply in all material respects in the performance of this Agreement with all reasonable rules and requirements of each insurer under each Required Insurance Policy;

(vii)    No information, certificate of an officer, statement furnished in writing or report delivered to the Depositor, any Affiliate of the Depositor or the Trustee by the Master Servicer will, to the knowledge of the Master Servicer, contain any untrue statement of a material fact or omit a material fact necessary to make the information, certificate, statement or report not misleading;

(viii)    The Master Servicer has examined each existing, and will examine each new, Subservicing Agreement and is or will be familiar with the terms thereof. The terms of each existing Subservicing Agreement and each designated Subservicer are acceptable to the Master Servicer and any new Subservicing Agreements will comply with the provisions of Section 3.02;

(ix)    The Master Servicer is a member of MERS in good standing, and will comply in

all material respects with the rules and procedures of MERS in connection with the servicing of the Mortgage Loans that are registered with MERS; and

     (x)  The Servicing Guide of the Master Servicer requires that the Subservicer for each Mortgage Loan accurately and fully reports its borrower credit files to each of the Credit Repositories in a timely manner.

It is understood and agreed that the representations and warranties set forth in this Section 2.03(a) shall survive delivery of the respective Custodial Files to the Trustee or the Custodian. Upon discovery by either the Depositor, the Master Servicer, the Trustee or the Custodian of a breach of any representation or warranty set forth in this Section 2.03(a) which materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (the Custodian being so obligated under a Custodial Agreement). Within 90 days of its discovery or its receipt of notice of such breach, the Master Servicer shall either (i) cure such breach in all material respects or (ii) to the extent that such breach is with respect to a Mortgage Loan or a related document, purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that if the breach would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase must occur within 90 days from the date such breach was discovered. The obligation of the Master Servicer to cure such breach or to so purchase such Mortgage Loan shall constitute the sole remedy in respect of a breach of a representation and warranty set forth in this Section 2.03(a) available to the Certificateholders or the Trustee on behalf of the Certificateholders.

  (b)  The Depositor hereby represents and warrants to the Trustee for the benefit of the Certificateholders that as of the Closing Date (or, if otherwise specified below, as of the date so specified): (i) immediately prior to the conveyance of the Mortgage Loans to the Trustee, the Depositor had good title to, and was the sole owner of, each Mortgage Loan free and clear of any pledge, lien, encumbrance or security interest (other than rights to servicing and related compensation) and such conveyance validly transfers ownership of the Mortgage Loans to the Trustee free and clear of any pledge, lien, encumbrance or security interest; and (ii) each Mortgage Loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Code and Treasury Regulations Section 1.860G-2(a)(1).

  It is understood and agreed that the representations and warranties set forth in this Section 2.03(b) shall survive delivery of the respective Custodial Files to the Trustee or the Custodian.

  Upon discovery by any of the Depositor, the Master Servicer, the Trustee or the Custodian of a breach of any of the representations and warranties set forth in this Section 2.03(b) which materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (the Custodian being so obligated under a Custodial Agreement); provided, however, that in the event of a breach of the representation and warranty set forth in Section 2.03(b)(ii), the party discovering such breach shall give such notice within five days of discovery. Within 90 days of its discovery or its receipt of notice of breach, the Depositor shall either (i) cure such breach in all material respects or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that the Depositor shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; provided that if the omission or defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure, substitution or repurchase must occur within 90 days from the date such breach was discovered. Any such substitution shall be effected by the Depositor under the same terms and conditions as provided in Section 2.04 for substitutions by Residential Funding. It is understood and agreed that the obligation of the Depositor to cure such breach or to so purchase or substitute for any Mortgage Loan as to which such a breach has occurred and is continuing shall constitute the sole remedy respecting such breach available to the Certificateholders or the Trustee on behalf of the Certificateholders. Notwithstanding the foregoing, the Depositor shall not be required to cure breaches or purchase or substitute for Mortgage Loans as provided in this Section 2.03(b) if the substance of the breach of a representation set forth above also constitutes fraud in the origination of the Mortgage Loan.

  Section 2.04.  Representations and Warranties of Sellers.

  The Depositor, as assignee of Residential Funding under the Assignment Agreement, hereby assigns to the Trustee for the benefit of the Certificateholders all of its right, title and interest in respect of the Assignment Agreement applicable to a Mortgage Loan as and to the extent set forth in the Assignment Agreement. Insofar as the Assignment Agreement relates to the representations and warranties made by Residential Funding in respect of such Mortgage Loan and any remedies provided thereunder for any breach of such representations and warranties, such right, title and interest may be enforced by the Master Servicer on behalf of the Trustee and the Certificateholders. Upon the discovery by the Depositor, the Master Servicer, the Trustee or the Custodian of a breach of any of the representations and warranties made in the Assignment Agreement in respect of any Mortgage Loan or of any Repurchase Event which materially and adversely affects the interests of the Certificateholders in such Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (the Custodian being so obligated under a Custodial Agreement). The Master Servicer shall promptly notify Residential Funding of such breach or Repurchase Event and request that Residential Funding either (i) cure such breach or Repurchase Event in all material respects within 90 days from the date the Master Servicer was notified of such breach or Repurchase Event or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02.

  Upon the discovery by the Depositor, the Master Servicer, the Trustee or the Custodian of a breach of any of such representations and warranties set forth in the Assignment Agreement in respect of any Mortgage Loan which materially and adversely affects the interests of the Certificateholders in such Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (the Custodian being so obligated under a Custodial Agreement). The Master Servicer shall promptly notify Residential Funding of such breach of a representation or warranty set forth in the Assignment Agreement and request that Residential Funding either (i) cure such breach in all material respects within 90 days from the date the Master Servicer was notified of such breach or (ii) purchase such Mortgage Loan from the Trust Fund within 90 days of the date of such written notice of such breach at the Purchase Price and in the manner set forth in Section 2.02; provided that Residential Funding shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; provided that if the breach would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or substitution must occur within 90 days from the date the breach was discovered. If the breach of representation and warranty that gave rise to the obligation to repurchase or substitute a Mortgage Loan pursuant to Section 4 of the Assignment Agreement was the representation and warranty set forth in clause (xlvii) of Section 4 thereof, then the Master Servicer shall request that

Residential Funding pay to the Trust Fund, concurrently with and in addition to the remedies provided in the preceding sentence, an amount equal to any liability, penalty or expense that was actually incurred and paid out of or on behalf of the Trust Fund, and that directly resulted from such breach, or if incurred and paid by the Trust Fund thereafter, concurrently with such payment. In the event that Residential Funding elects to substitute a Qualified Substitute Mortgage Loan or Loans for a Deleted Mortgage Loan pursuant to this Section 2.04, Residential Funding shall deliver to the Trustee for the benefit of the Certificateholders with respect to such Qualified Substitute Mortgage Loan or Loans, the original Mortgage Note, the Mortgage, an Assignment of the Mortgage in recordable form, and such other documents and agreements as are required by Section 2.01, with the Mortgage Note endorsed as required by Section 2.01. No substitution will be made in any calendar month after the Determination Date for such month. Monthly Payments due with respect to Qualified Substitute Mortgage Loans in the month of substitution shall not be part of the Trust Fund and will be retained by the Master Servicer and remitted by the Master Servicer to Residential Funding on the next succeeding Distribution Date. For the month of substitution, distributions to the Certificateholders will include the Monthly Payment due on a Deleted Mortgage Loan for such month and thereafter Residential Funding shall be entitled to retain all amounts received in respect of such Deleted Mortgage Loan. The Master Servicer shall amend or cause to be amended the Mortgage Loan Schedule for the benefit of the Certificateholders to reflect the removal of such Deleted Mortgage Loan and the substitution of the Qualified Substitute Mortgage Loan or Loans and the Master Servicer shall deliver the amended Mortgage Loan Schedule to the Trustee. Upon such substitution, the Qualified Substitute Mortgage Loan or Loans shall be subject to the terms of this Agreement and the related Subservicing Agreement in all respects, Residential Funding shall be deemed to have made the representations and warranties with respect to the Qualified Substitute Mortgage Loan (other than those of a statistical nature) contained in the Assignment Agreement as of the date of substitution, and the covenants, representations and warranties set forth in this Section 2.04, and in Section 2.03(b) hereof.

In connection with the substitution of one or more Qualified Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Master Servicer shall determine the amount (if any) by which the aggregate principal balance of all such Qualified Substitute Mortgage Loans as of the date of substitution is less than the aggregate Stated Principal Balance of all such Deleted Mortgage Loans (in each case after application of the principal portion of the Monthly Payments due in the month of substitution that are to be distributed to the Certificateholders in the month of substitution). Residential Funding shall deposit or cause the related Seller to deposit the amount of such shortfall into the Custodial Account on the day of substitution, without any reimbursement therefor. Residential Funding shall give notice in writing to the Trustee of such event, which notice shall be accompanied by an Officers' Certificate as to the calculation of such shortfall and (subject to Section 10.01(f)) by an Opinion of Counsel to the effect that such substitution will not cause (a) any federal tax to be imposed on the Trust Fund, including without limitation, any federal tax imposed on "prohibited transactions" under Section 860F(a)(1) of the Code or on "contributions after the startup date" under Section 860G(d)(1) of the Code or (b) any portion of any REMIC created hereunder to fail to qualify as a REMIC at any time that any Certificate is outstanding.

It is understood and agreed that the obligation of Residential Funding to cure such breach or purchase (and in the case of Residential Funding to substitute for) such Mortgage Loan as to which such a breach has occurred and is continuing and to make any additional payments required under the Assignment Agreement in connection with a breach of the representation and warranty in clause (xlvii) of Section 4 thereof shall constitute the sole remedy respecting such breach available to the Certificateholders or the Trustee on behalf of the Certificateholders. If the Master Servicer is Residential Funding, then the Trustee shall also have the right to give the notification and require the purchase or substitution provided for in the second preceding paragraph in the event of such a breach of a representation or warranty made by Residential Funding in the Assignment Agreement. In connection with the purchase of or substitution for any such Mortgage Loan by Residential Funding, the Trustee shall assign to Residential Funding all of the Trustee's right, title and interest in respect of the Assignment Agreement applicable to such Mortgage Loan.

Section 2.05.    Execution and Authentication of Certificates; Conveyance of REMIC-I Regular Interests.

(a)    The Trustee acknowledges the assignment to it of the Mortgage Loans and the delivery of the Custodial Files to it, or the Custodian on its behalf, subject to any exceptions noted, together with the assignment to it of all other assets included in the Trust Fund, receipt of which is hereby acknowledged. Concurrently with such delivery and in exchange therefor, the Trustee, pursuant to the written request of the Depositor executed by an officer of the Depositor, has executed and caused to be authenticated and delivered to or upon the order of the Depositor the Certificates in authorized denominations which evidence ownership of the entire Trust Fund.

(b)    The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Depositor in and to the REMIC I Regular Interests for the benefit of the holders of the Regular Certificates and Component II of the Class R Certificates. The Trustee acknowledges receipt of the REMIC I Regular Interests (each of which are uncertificated) and declares that it holds and will hold the same in trust for the exclusive use and benefit of the holders of the Regular Certificates and Component II of the Class R Certificates. The interests evidenced by Component II of the Class R Certificates, together with the Regular Certificates, constitute the entire beneficial ownership interest in REMIC II.

Section 2.06.    Purposes and Powers of the Trust.

The purpose of the trust, as created hereunder, is to engage in the following activities:

(a)    to sell the Certificates to the Depositor in exchange for the Mortgage Loans;

(b)    to enter into and perform its obligations under this Agreement;

(c)    to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(d)    subject to compliance with this Agreement, to engage in such other activities as may be required in connection with conservation of the Trust Fund and the making of distributions to the Certificateholders.

The trust is hereby authorized to engage in the foregoing activities. Notwithstanding the provisions of Section 11.01, the trust shall not engage in any activity other than in connection with the foregoing or other than as required or authorized by the terms of this Agreement while any Certificate is outstanding, and this Section 2.06 may not be amended, without the consent of the

Advancing Person," then upon the delivery of a written notice signed by the Advancing Person and the Master Servicer or its successor or assign) to the Trustee terminating the Advance Facility Notice (the "Notice of Facility Termination"), the Master Servicer or its Successor Master Servicer shall again be entitled to withdraw and retain the related Reimbursement Amounts from the Custodial Account pursuant to Section 3.10.

(j)    After delivery of any Advance Facility Notice, and until any such Advance Facility Notice has been terminated by a Notice of Facility Termination, this Section 3.22 may not be amended or otherwise modified without the prior written consent of the related Advancing Person.

ARTICLE IV

PAYMENTS TO CERTIFICATEHOLDERS

Section 4.01.    Certificate Account.

(a)    The Master Servicer acting as agent of the Trustee shall establish and maintain a Certificate Account in which the Master Servicer shall cause to be deposited on behalf of the Trustee on or before 2:00 P.M. New York time on each Certificate Account Deposit Date by wire transfer of immediately available funds an amount equal to the sum of (i) any Advance for the immediately succeeding Distribution Date, (ii) any amount required to be deposited in the Certificate Account pursuant to Section 3.12(a), (iii) any amount required to be deposited in the Certificate Account pursuant to Section 3.16(e) or Section 4.07, (iv) any amount required to be paid pursuant to Section 9.01, and (v) other amounts constituting the Available Distribution Amount for the immediately succeeding Distribution Date.

(b)    [Reserved].

(c)    The Trustee shall, upon written request from the Master Servicer, invest or cause the institution maintaining the Certificate Account to invest the funds in the Certificate Account in Permitted Investments designated in the name of the Trustee for the benefit of the Certificateholders, which shall mature not later than the Business Day next preceding the Distribution Date next following the date of such investment (except that (i) if such Permitted Investment is an obligation of the institution that maintains such account or fund for which such institution serves as custodian, then such Permitted Investment may mature on such Distribution Date and (ii) any other investment may mature on such Distribution Date if the Trustee shall advance funds on such Distribution Date to the Certificate Account in the amount payable on such investment on such Distribution Date, pending receipt thereof to the extent necessary to make distributions on the Certificates) and shall not be sold or disposed of prior to maturity. All income and gain realized from any such investment shall be for the benefit of the Master Servicer and shall be subject to its withdrawal or order from time to time. The amount of any losses incurred in respect of any such investments shall be deposited in the Certificate Account by the Master Servicer out of its own funds immediately as realized.

Section 4.02.    Distributions.

(a)    On each Distribution Date, the Trustee (or the Paying Agent on behalf of the Trustee) shall allocate and distribute the Available Distribution Amount, if any, for such date to the interests issued in respect of REMIC I and REMIC II as specified in this Section.

(b)    (1)    On each Distribution Date, the REMIC I Distribution Amount shall be distributed by REMIC I to REMIC II on account of the REMIC I Regular Interests and to the Holders of the Class R Certificates in the amounts and with the priorities set forth in the definition thereof.

(2)    Notwithstanding the distributions described in this Section 4.02(b), distribution of funds from the Certificate Account shall be made only in accordance with Section 4.02(c).

(c)    On each Distribution Date (x) the Master Servicer on behalf of the Trustee or (y) the Paying Agent appointed by the Trustee, shall distribute to each Certificateholder of record on the next preceding Record Date (other than as provided in Section 9.01 respecting the final distribution) either in immediately available funds (by wire transfer or otherwise) to the account of such Certificateholder at a bank or other entity having appropriate facilities therefor, if such Certificateholder has so notified the Master Servicer or the Paying Agent, as the case may be, or, if such Certificateholder has not so notified the Master Servicer or the Paying Agent by the Record Date, by check mailed to such Certificateholder at the address of such Holder appearing in the Certificate Register such Certificateholder's share (which share with respect to each Class of Certificates, shall be based on the aggregate of the Percentage Interests represented by Certificates of the applicable Class held by such Holder of the following amounts), in the following order of priority, in each case to the extent of the Available Distribution Amount on deposit in the Certificate Account (except, with respect to clauses (iii) through (x) below, to the extent of the remaining Available Distribution Amount plus the remaining Yield Maintenance Agreement Payment available for that purpose or, with respect to clause (x)(B) below, to the extent of prepayment charges on deposit in the Certificate Account):

(i)    to the Class A Certificateholders, the Accrued Certificate Interest payable on the Class A Certificates with respect to such Distribution Date, plus any related amounts accrued pursuant to this clause (i) but remaining unpaid from any prior Distribution Date being paid from and in reduction of the Available Distribution Amount for such Distribution Date;

(ii)    to the Class M Certificateholders, from the amount, if any, of the Available Distribution Amount remaining after the foregoing distributions, the Accrued Certificate Interest payable on the Class M Certificates with respect to such Distribution Date, plus any related amounts accrued pursuant to this clause (ii) but remaining unpaid from any prior Distribution Date, sequentially, to the Class M-1 Certificateholders, Class M-2 Certificateholders, Class M-3 Certificateholders, Class M-4 Certificateholders, Class M-5 Certificateholders, Class M-6 Certificateholders, Class M-7 Certificateholders, Class M-8 Certificateholders and Class M-9 Certificateholders, in that order, being paid from and in reduction of the Available Distribution Amount for such Distribution Date;

(iii)    [reserved];

(iv)    the Principal Distribution Amount shall be distributed as follows, to be applied to reduce the Certificate Principal Balance of the applicable Certificates in each case to the extent of the remaining Principal Distribution Amount:

        (A)     first, the Class A Principal Distribution Amount shall be distributed, sequentially, to the Class A-1 Certificateholders, Class A-2 Certificateholders, Class A-3 Certificateholders and Class A-4 Certificateholders, in that order, in each case until the aggregate Certificate Principal Balance thereof is reduced to zero;

        (B)     second, to the Class M-1 Certificateholders, the Class M-1 Principal Distribution Amount, until the Certificate Principal Balance of the Class M-1 Certificates has been reduced to zero;

        (C)     third, to the Class M-2 Certificateholders, the Class M-2 Principal Distribution Amount, until the Certificate Principal Balance of the Class M-2 Certificates has been reduced to zero;

        (D)     fourth, to the Class M-3 Certificateholders, the Class M-3 Principal Distribution Amount, until the Certificate Principal Balance of the Class M-3 Certificates has been reduced to zero;

        (E)     fifth, to the Class M-4 Certificateholders, the Class M-4 Principal Distribution Amount, until the Certificate Principal Balance of the Class M-4 Certificates has been reduced to zero;

        (F)     sixth, to the Class M-5 Certificateholders, the Class M-5 Principal Distribution Amount, until the Certificate Principal Balance of the Class M-5 Certificates has been reduced to zero;

        (G)     seventh, to the Class M-6 Certificateholders, the Class M-6 Principal Distribution Amount, until the Certificate Principal Balance of the Class M-6 Certificates has been reduced to zero;

        (H)     eighth, to the Class M-7 Certificateholders, the Class M-7 Principal Distribution Amount, until the Certificate Principal Balance of the Class M-7 Certificates has been reduced to zero;

        (I)     ninth, to the Class M-8 Certificateholders, the Class M-8 Principal Distribution Amount, until the Certificate Principal Balance of the Class M-8 Certificates has been reduced to zero; and

        (J)     tenth, to the Class M-9 Certificateholders, the Class M-9 Principal Distribution Amount, until the Certificate Principal Balance of the Class M-9 Certificates has been reduced to zero;

        (v)     to the Class A Certificateholders and Class M Certificateholders, the amount of any Prepayment Interest Shortfalls allocated thereto for such Distribution Date, on a pro rata basis based on Prepayment Interest Shortfalls allocated thereto to the extent not offset by Eligible Master Servicing Compensation on such Distribution Date;

        (vi)     to the Class A Certificateholders and Class M Certificateholders, the amount of any Prepayment Interest Shortfalls previously allocated thereto remaining unpaid from prior Distribution Dates together with interest thereon at the Pass-Through Rate, on a pro rata basis based on unpaid Prepayment Interest Shortfalls previously allocated thereto;

        (vii)     first, to the Class A Certificateholders, the amount of any unpaid Basis Risk Shortfalls allocated thereto, on a pro rata basis based on the amount of unpaid Basis Risk Shortfalls allocated thereto, and then, sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8 and Class M-9 Certificateholders, in that order, the related Basis Risk Shortfall, as applicable, for such Class and that Distribution Date;

        (viii)     to the Class A Certificateholders and Class M Certificateholders, Relief Act Shortfalls allocated thereto for such Distribution Date, on a pro rata basis based on Relief Act Shortfalls allocated thereto for such Distribution Date,

        (ix)     first, to the Class A Certificateholders, the principal portion of any Realized Losses previously allocated to those Certificates and remaining unreimbursed, on a pro rata basis based on their respective principal portion of any Realized Losses previously allocated to those Certificates and remaining unreimbursed, and then, sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8 and Class M-9 Certificateholders, in that order, the principal portion of any Realized Losses previously allocated to such Class and remaining unreimbursed;

        (x)     to the Class SB Certificates, (A) from the amount, if any, of the Excess Cash Flow remaining after the foregoing distributions, the sum of (I) Accrued Certificate Interest thereon, (II) the amount of any Overcollateralization Reduction Amount for such Distribution Date, (III) the amount of any Yield Maintenance Agreement Shortfall Amount for such Distribution Date, (IV) the amount of any Yield Maintenance Agreement Shortfall Carry-Forward Amount for such Distribution Date and (V) for any Distribution Date after the Certificate Principal Balance of each Class of Class A Certificates and Class M Certificates has been reduced to zero, the Overcollateralization Amount and (B) from prepayment charges on deposit in the Certificate Account, any prepayment charges received on the Mortgage Loans during the related Prepayment Period; and

        (xi)     to the Class R Certificateholders, the balance, if any, of the Excess Cash Flow.

    (d)     Notwithstanding the foregoing clause (c), upon the reduction of the Certificate Principal Balance of a Class of Class A Certificates or Class M Certificates to zero, such Class of Certificates will not be entitled to further distributions pursuant to Section 4.02.

    (e)     Each distribution with respect to a Book-Entry Certificate shall be paid to the Depository, as Holder thereof, and the Depository shall be responsible for crediting the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures. Each Depository Participant shall be responsible for disbursing such distribution to the Certificate Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm" or "indirect participating firm") for which it acts as agent. Each brokerage firm shall be responsible for disbursing funds to the Certificate Owners that it represents. None of the Trustee, the Certificate

Registrar, the Depositor or the Master Servicer shall have any responsibility therefor except as otherwise provided by this Agreement or applicable law.

(f) Except as otherwise provided in Section 9.01, if the Master Servicer anticipates that a final distribution with respect to any Class of Certificates will be made on a Distribution Date, the Master Servicer shall, no later than 40 days' prior to such Distribution Date, notify the Trustee and the Trustee shall, not earlier than the 15th day and not later than the 25th day of the month preceding such Distribution Date, distribute, or cause to be distributed, on such date to each Holder of such Class of Certificates a notice to the effect that: (i) the Trustee anticipates that the final distribution with respect to such Class of Certificates will be made on such Distribution Date but only upon presentation and surrender of such Certificates at the office of the Trustee or as otherwise specified therein, and (ii) no interest shall accrue on such Certificates from and after the end of the prior calendar month. In the event that Certificateholders required to surrender their Certificates pursuant to Section 9.01(c) do not surrender their Certificates for final cancellation, the Trustee shall cause funds distributable with respect to such Certificates to be withdrawn from the Certificate Account and credited to a separate escrow account for the benefit of such Certificateholders as provided in Section 9.01(d).

Section 4.03. Statements to Certificateholders; Statements to Rating Agencies; Exchange Act Reporting.

(a) Concurrently with each distribution charged to the Certificate Account and with respect to each Distribution Date the Master Servicer shall forward to the Trustee and the Trustee shall forward by mail or otherwise make available electronically on its website (which may be obtained by any Certificateholder by telephoning the Trustee at (800) 934-6802) to each Holder and the Depositor a statement setting forth the following information as to each Class of Certificates, in each case to the extent applicable:

(i) the applicable Record Date, Determination Date and Distribution Date, and the date on which the applicable Interest Accrual Period commenced;

(ii) the aggregate amount of payments received with respect to the Mortgage Loans, including prepayment amounts;

(iii) the Servicing Fee and Subservicing Fee payable to the Master Servicer and the Subservicer;

(iv) the amount of any other fees or expenses paid, and the identity of the party receiving such fees or expenses; (A) the amount of such distribution to the Certificateholders of such Class applied to reduce the Certificate Principal Balance thereof, and (B) the aggregate amount included therein representing Principal Prepayments;

(v) the amount of such distribution to Holders of such Class of Certificates allocable to interest (including amounts payable as a portion of the Excess Cash Flow);

(vi) if the distribution to the Holders of such Class of Certificates is less than the full amount that would be distributable to such Holders if there were sufficient funds available therefor, the amount of the shortfall;

(vii) the Certificate Principal Balance of each Class of the Certificates, before and after giving effect to the amounts distributed on such Distribution Date, separately identifying any reduction thereof due to Realized Losses other than pursuant to an actual distribution of principal;

(viii) the Certificate Principal Balance of each Class of Class A Certificates as of the Closing Date;

(ix) the Certificate Principal Balance of each Class of Class M Certificates as of the Closing Date;

(x) the number and Stated Principal Balance of the Mortgage Loans after giving effect to the distribution of principal on such Distribution Date and the number of Mortgage Loans at the beginning and end of the related Due Period;

(xi) on the basis of the most recent reports furnished to it by Subservicers, (A) the number and Stated Principal Balances of Mortgage Loans that are Delinquent (1) 30-59 days, (2) 60-89 days and (3) 90 or more days and the number and Stated Principal Balance of Mortgage Loans that are in foreclosure, (B) the number and Stated Principal Balances of the Mortgage Loans in the aggregate that are Reportable Modified Mortgage Loans that are in foreclosure and are REO Property, indicating in each case capitalized Mortgage Loans, other Servicing Modifications and totals, and (C) for all Reportable Modified Mortgage Loans, the number and Stated Principal Balances of the Mortgage Loans in the aggregate that have been liquidated, the subject of pay-offs and that have been repurchased by the Master Servicer or Seller;

(xii) the amount, terms and general purpose of any Advance by the Master Servicer pursuant to Section 4.04 and the amount of all Advances that have been reimbursed during the related Due Period;

(xiii) any material modifications, extensions or waivers to the terms of the Mortgage Loans during the Due Period or that have cumulatively become material over time;

(xiv) any material breaches of Mortgage Loan representations or warranties or covenants in the Agreement;

(xv) the amount, if any, of the Yield Maintenance Agreement Payment for such Distribution Date and any shortfall in amounts previously required to be paid under the Yield Maintenance Agreement for prior Distribution Dates;

(xvi) the number, aggregate principal balance and Stated Principal Balance of any REO Properties with respect to the Mortgage Loans;

(xvii) the aggregate Accrued Certificate Interest remaining unpaid, if any, for each Class of Certificates, after giving effect to the distribution made on such Distribution Date;

(xviii) the aggregate amount of Realized Losses with respect to the Mortgage Loans for such Distribution Date and the aggregate amount of Realized Losses with respect to the Mortgage Loans incurred since the Cut-off Date;