# EXHIBIT 7-F

EXECUTION COPY

RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC.,

Company,

RESIDENTIAL FUNDING COMPANY, LLC,

Master Servicer,

and

U.S. BANK NATIONAL ASSOCIATION,

Trustee

SERIES SUPPLEMENT,

DATED AS OF OCTOBER 30, 2006

TO

STANDARD TERMS OF

POOLING AND SERVICING AGREEMENT

DATED AS OF OCTOBER 30, 2006

Mortgage Pass-Through Certificates

Series 2006-S10

ARTICLE I          DEFINITIONS...................................................................................5

    Section 1.01          Definitions..................................................................5

    Section 1.02          Use of Words and Phrases................................................24

ARTICLE II          ARTICLE II CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES................25

    Section 2.01          Conveyance of Mortgage Loans.........................................25

    Section 2.02          Acceptance by Trustee.  (See Section 2.02 of the Standard Terms)................25

    Section 2.03          Representations, Warranties and Covenants of the Master Servicer and the Company...................................................25

    Section 2.04          Representations and Warranties of Residential Funding.  (See Section 2.04 of the Standard Terms)............................................28

    Section 2.05          Execution and Authentication of Class R-I Certificates...........................28

    Section 2.06          Conveyance of Uncertificated REMIC I and REMIC II Regular Interests; Acceptance by the Trustee............................................28

    Section 2.07          Issuance of Certificates Evidencing Interest in REMIC III.......................29

    Section 2.08          Purposes and Powers of the Trust.  (See Section 2.08 of the Standard Terms)...................................................29

    Section 2.09          Agreement Regarding Ability to Disclose..........................................29

ARTICLE III          ADMINISTRATION AND SERVICING OF MORTGAGE LOANS........................................30

    Section 3.01          Master Servicer to Act as Servicer.  (See Section 3.01 of the Standard Terms)...................................................30

    Section 3.02          Subservicing Agreements Between Master Servicer and Subservicers; Enforcement of Subservicers' and Sellers' Obligations............................30

    Section 3.03          Successor Subservicers.  (See Section 3.03 of the Standard Terms)...............31

    Section 3.04          Liability of the Master Servicer.  (See Section 3.04 of the Standard Terms)...................................................31

    Section 3.05          No Contractual Relationship Between Subservicer and Trustee or Certificateholders.  (See Section 3.05 of the Standard Terms)....................31

    Section 3.06          Assumption or Termination of Subservicing Agreements by Trustee.  (See

Section 10.01          REMIC Administration.  (See Section 10.01 of the Standard Terms)................51

Section 10.02          Master Servicer; REMIC Administrator and Trustee Indemnification.  (See
                       Section 10.02 of the Standard Terms)............................................51

Section 10.03          Designation of REMIC(s)........................................................51

Section 10.04          Distributions on the Uncertificated REMIC I Regular Interests Z,
                       Uncertificated REMIC II Regular Interests and Uncertificated REMIC III
                       Regular Interests Z............................................................51

Section 10.05          Compliance with Withholding Requirements.......................................53

ARTICLE XI          MISCELLANEOUS PROVISIONS...............................................................55

Section 11.01          Amendment.  (See Section 11.01 of the Standard Terms)..........................55

Section 11.02          Recordation of Agreement, Counterparts.  (See Section 11.02 of the
                       Standard Terms)................................................................55

Section 11.03          Limitation on Rights of Certificateholders.  (See Section 11.03 of the
                       Standard Terms)................................................................55

Section 11.04          Governing Laws.  (See Section 11.04 of the Standard Terms).....................55

Section 11.05          Notices........................................................................55

Section 11.06          Required Notices to Rating Agency and Subservicer.  (See Section 11.06 of
                       the Standard Terms)............................................................56

Section 11.07          Severability of Provisions.  (See Section 11.07 of the Standard Terms).........56

Section 11.08          Supplemental Provisions for Resecuritization.  (See Section 11.08 of the
                       Standard Terms)................................................................56

Section 11.09          Allocation of Voting Rights....................................................56

Section 11.10          No Petition.  (See Section 11.10 of the Standard Terms)........................56

ARTICLE XII          COMPLIANCE WITH REGULATION AB.........................................................57

EXHIBITS
Exhibit One-I:        Mortgage Loan Schedule (Group I Loans)
Exhibit One-II:       Mortgage Loan Schedule (Group II Loans)
Exhibit Two-I:        Schedule of Discount Fractions for Group I Loans
Exhibit Two-II:       Schedule of Discount Fractions for Group II Loans
Exhibit Three:        Information to be Included in Monthly Distribution Date Statement
Exhibit Four:         Standard Terms of Pooling and Servicing Agreement dated as of    October 30, 2006

This is a Series Supplement, dated as of October 30, 2006 (the "Series Supplement"), to the Standard Terms of Pooling and Servicing Agreement, dated as of October 30, 2006 and attached as Exhibit Four hereto (the "Standard Terms" and, together with this Series Supplement, the "Pooling and Servicing Agreement" or "Agreement"), among RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC., as the company (together with its permitted successors and assigns, the "Company"), RESIDENTIAL FUNDING COMPANY, LLC, as master servicer (together with its permitted successors and assigns, the "Master Servicer"), and U.S. BANK NATIONAL ASSOCIATION, as Trustee (together with its permitted successors and assigns, the "Trustee").

PRELIMINARY STATEMENT

The Company intends to sell Mortgage Pass-Through Certificates (collectively, the "Certificates"), to be issued hereunder in multiple classes, which in the aggregate will evidence the entire beneficial ownership interest in the Trust Fund. As provided herein, the REMIC Administrator will make an election to treat the entire segregated pool of assets described in the definition of Trust Fund, and subject to this Agreement (including the Mortgage Loans but excluding the Initial Monthly Payment Funds), as three real estate mortgage investment conduits (each a "REMIC") for federal income tax purposes. A segregated pool of assets consisting of the Group I Loans and the related assets described in the definition of Trust Fund (other than the related Initial Monthly Payment Fund) will be designated as "REMIC I," and the REMIC Administrator will make a separate REMIC election with respect thereto. The Uncertificated REMIC Regular I Interests will be "regular interests" in REMIC I and the Class R-I Certificates will be the sole class of "residual interests" in REMIC I for purposes of the REMIC Provisions (as defined herein). A segregated pool of assets consisting of the Group II Loans and the related assets described in the definition of Trust Fund (other than the related Initial Monthly Payment Fund) will be designated as "REMIC II," and the REMIC Administrator will make a separate REMIC election with respect thereto. The Uncertificated REMIC Regular II Interests will be "regular interests" in REMIC II and the Class R-II Certificates will be the sole class of "residual interests" in REMIC II for purposes of the REMIC Provisions (as defined herein). A segregated pool of assets consisting of the Uncertificated REMIC I Regular Interests and Uncertificated REMIC II Regular Interests will be designated as "REMIC III," and the REMIC Administrator will make a separate REMIC election with respect thereto. The Class I-A-1 Certificates, Class I-A-2 Certificates, Class I-A-3 Certificates, Class I-A-4 Certificates, Class I-A-5 Certificates, Class I-A-6 Certificates, Class I-A-7 Certificates, Class I-A-P Certificates, Class II-A-1 Certificates, Class II-A-P Certificates, Class I-M-1 Certificates, Class I-M-2 Certificates, Class I-M-3 Certificates, Class II-M-1 Certificates, Class II-M-2 Certificates, Class II-M-3 Certificates, Class I-B-1 Certificates, Class I-B-2 Certificates, Class I-B-3 Certificates, Class II-B-1 Certificates, Class II-B-2 Certificates, Class II-B-3 Certificates and the

ARTICLE I

DEFINITIONS

Section 1.01......Definitions.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Article.

Accrued Certificate Interest: With respect to each Distribution Date, as to any Class or Subclass of Certificates (other than any Principal Only Certificates), interest accrued during the related Interest Accrual Period at the related Pass-Through Rate on the Certificate Principal Balance or Notional Amount thereof immediately prior to such Distribution Date. Accrued Certificate Interest will be calculated on the basis of a 360-day year, consisting of twelve 30-day months. In each case Accrued Certificate Interest on any Class or Subclass of Certificates will be reduced by the amount of:

(i)      Prepayment Interest Shortfalls on all Mortgage Loans in the related Loan Group (to the extent not offset by the Master Servicer with a payment of Compensating Interest as provided in Section 4.01),

(ii)     the interest portion (adjusted to the Net Mortgage Rate (or the Modified Net Mortgage Rate in the case of a Modified Mortgage Loan)) of Realized Losses on all Mortgage Loans in the related Loan Group (including Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses and Extraordinary Losses) not allocated solely to one or more specific Classes of Certificates pursuant to Section 4.05,

(iii)    the interest portion of Advances that were (A) previously made with respect to a Mortgage Loan or REO Property on the Mortgage Loans in the related Loan Group, which remained unreimbursed following the Cash Liquidation or REO Disposition of such Mortgage Loan or REO Property and (B) made with respect to delinquencies that were ultimately determined to be Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary Losses on the Mortgage Loans in the related Loan Group and were not allocated solely to one or more specific Classes of Certificates pursuant to Section 4.05, and

(iv)     any other interest shortfalls on the Mortgage Loans in the related Loan Group not covered by the subordination provided by the related Class M Certificates and related Class B Certificates, including interest that is not collectible from the Mortgagor pursuant to the Relief Act, all allocated as described below.

The Class I-A Percentage of these reductions with respect to the Group I Loans will be allocated among the Holders of the Group I Senior Certificates, other than the Class I-A-P Certificates, in proportion to the amounts of Accrued Certificate Interest that would have been payable to those Certificates from the Group I Loans on that Distribution Date absent such reductions. The Class II-A Percentage of these reductions with respect to the Group II Loans will be allocated among the Holders of the Group II Senior Certificates, other than the Class II-A-P Certificates, in proportion to the amounts of Accrued Certificate Interest that would have been payable to those Certificates from the Group II Loans on that Distribution Date absent such reductions. The remainder of these reductions will be allocated among the Holders of the related Class M Certificates and the related Class B Certificates in proportion to the respective amounts of Accrued Certificate Interest that would have been payable on that Distribution Date absent these reductions. In the case of each Class of Class A Certificates (other than the Principal-Only Certificates), Class M Certificates and Class B Certificates, Accrued Certificate Interest on that Class will be further reduced by the interest portion (adjusted to the Net Mortgage Rate) of Realized Losses that are allocated solely to such Class of such Class A Certificates, such Class M Certificates or such Class of Class B Certificates pursuant to Section 4.05.

Available Distribution Amount: As to any Distribution Date, an amount determined separately with respect to the Group I Loans and Group II Loans, and in each case shall be equal to (a) the sum of (i) the amount relating to the Mortgage Loans in the related Loan Group on deposit in the Custodial Account as of the close of business on the immediately preceding Determination Date, including any Subsequent Recoveries from the Mortgage Loans in that Loan Group, and amounts deposited in the Custodial Account in connection with the substitution of Qualified Substitute Mortgage Loans, (ii) the amount of any Advance for the related Loan Group made on the immediately preceding Certificate Account Deposit Date, (iii) any amount deposited in the Certificate Account on the related Certificate Account Deposit Date pursuant to the second paragraph of Section 3.12(a), (iv) any amount deposited in the Certificate Account pursuant to Section 4.07 and any amounts deposited in the Custodial Account pursuant to Section 9.01 and (v) any amount that the Master Servicer is not permitted to withdraw from the Custodial Account or the Certificate Account pursuant to Section 3.16(e), reduced by (b) the sum as of the close of business on the immediately preceding Determination Date of (x) the Amount Held for Future Distribution, and (y) amounts permitted to be withdrawn by the Master Servicer from the Custodial Account in respect of the Mortgage Loans in the related Loan Group pursuant to clauses (ii)-(x), inclusive, of Section 3.10(a).

Bankruptcy Amount: With respect to each Loan Group, as of any date of determination prior to the first anniversary of the Cut-off Date, an amount equal to the excess, if any, of (A) $224,503, in the case of Loan Group I, and $100,000, in the case of Loan Group II, over (B) the aggregate amount of Bankruptcy Losses allocated solely to one or more specific Classes of Certificates in the related Certificate Group in accordance with Section 4.05 of this Series Supplement. As of any date of determination on or after the first anniversary of the Cut-off Date, an amount equal to the excess, if any, of:

(1)      the lesser of (a) the related Bankruptcy Amount calculated as of the close of business on the Business Day immediately preceding the most recent anniversary of the Cut-off Date coinciding with or preceding such date of determination (or, if such date of determination is an anniversary of the Cut-off Date, the Business Day immediately preceding such date of determination) (for purposes of this definition, the "Relevant Anniversary") and (b) the greater of:

(A)      the greater of (i) 0.0006 times the aggregate principal balance of all the Mortgage Loans in the related Loan Group as of the Relevant Anniversary (other than Additional Collateral Loans, if any) having a Loan-to-Value Ratio at origination which exceeds 75% and

Uncertificated REMIC III Regular Interests Each such uncertificated partial undivided beneficial ownership interests in REMIC III numbered sequentially from 1 through 455 each relating to the identically numbered Uncertificated REMIC II Regular Interests Z, each having no principal balance and bearing interest at a rate equal to the related Pool Strip Rate on the Stated Principal Balance of the Mortgage Loan related to the identically numbered Uncertificated REMIC II Regular Interests Z, comprising such Uncertificated REMIC III Regular Interests Z2's pro rata share of the amount distributed pursuant to Section 10.04(a).

Uncertificated REMIC III Regular Interests Distribution Amount: With respect to any Distribution Date, the sum of the amounts deemed to be distributed on the Uncertificated REMIC I Regular Interests Z and Uncertificated REMIC II Regular Interests Z for such Distribution Date pursuant to Section 10.04(a).

Underwriters: Citigroup Global Markets Inc. and Residential Funding Securities, LLC.

Section 1.02    Use of Words and Phrases.

"Herein," "hereby," "hereunder," "hereof," "hereinbefore," "hereinafter" and other equivalent words refer to the Pooling and Servicing Agreement as a whole. All references herein to Articles, Sections or Subsections shall mean the corresponding Articles, Sections and Subsections in the Pooling and Servicing Agreement. The definitions set forth herein include both the singular and the plural.

References in the Pooling and Servicing Agreement to "interest" on and "principal" of the Mortgage Loans shall mean, with respect to the Sharia Mortgage Loans, amounts in respect profit payments and acquisition payments, respectively.

---

ARTICLE II

ARTICLE II CONVEYANCE OF MORTGAGE LOANS;

ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01    Conveyance of Mortgage Loans.

(a)    (See Section 2.01(a) of the Standard Terms)

(b)    (See Section 2.01(b) of the Standard Terms)

(c)    (See Section 2.01(c) of the Standard Terms)

(d)    (See Section 2.01(d) of the Standard Terms)

(e)    (See Section 2.01(e) of the Standard Terms)

(f)    (See Section 2.01(f) of the Standard Terms)

(g)    (See Section 2.01(g) of the Standard Terms)

(h)    (See Section 2.01(h) of the Standard Terms)

Section 2.02    Acceptance by Trustee. (See Section 2.02 of the Standard Terms)

Section 2.03    Representations, Warranties and Covenants of the Master Servicer and the Company.

(a)    For representations, warranties and covenants of the Master Servicer, see Section 2.03(a) of the Standard Terms.

(b)    The Company hereby represents and warrants to the Trustee for the benefit of Certificateholders that as of the Cut-off Date (or, if otherwise specified below, as of the date so specified):

(i)    No Group I Loan is 30 or more days Delinquent in the payment of principal and interest as of the Cut-off Date and no Group I Loan has been so Delinquent more than once in the 12 month period prior to the Cut-off Date. No Group II Loan is currently 30 or more days Delinquent in payment of principal and interest. As of the Cut-off Date, approximately 0.5% of the Group II Loans have been a maximum of 30 to 59 days Delinquent in the payment of principal and interest since their origination. As of the Cut-off Date, no Group II Loan is 60 or more days Delinquent in the payment of principal and interest and no Group II Loan has been 60 days or more Delinquent in payment of principal and interest since its origination;

(ii)    The information set forth in Exhibit One-I and Exhibit One-II hereto with respect to each Mortgage Loan or the Mortgage Loans, as the case may be, is true and correct in all material respects at the date or dates respecting which such information is furnished;

(iii)    The Mortgage Loans are fully-amortizing (subject to interest only periods, if applicable), fixed-rate mortgage loans with level Monthly Payments due, with respect to a majority of the Mortgage Loans, on the first day of each month and terms to maturity at origination or modification of not more than 30 years, in the case of Group I Loans, and 15 years, in the case of Group II Loans;

(iv)    To the best of the Company's knowledge, except in the case of no more than 2.2% of the Group I Loans and 1.4% of the Group II Loans, if a Mortgage Loan is secured by a Mortgaged Property with a Loan-to-Value Ratio at origination in excess of 80%, such Mortgage Loan is the subject of a Primary Insurance Policy that insures that (a) at least 30% of the Stated Principal Balance of the Mortgage Loan at origination if the Loan-to-Value Ratio is between 95.00% and 90.01%, (b) at least 25% of such balance if the Loan-to-Value Ratio is between 90.00% and 85.01%, and (c) at least 12% of such balance if the Loan-to-Value Ratio is between 85.00% and 80.01%. To the best of the Company's knowledge, each such

Primary Insurance Policy is in full force and effect and the Trustee is entitled to the benefits thereunder;

(v)     The issuers of the Primary Insurance Policies are insurance companies whose claims-paying abilities are currently acceptable to each Rating Agency;

(vi)    No more than 0.5% of the Group I Loans by aggregate Cut-off Date Principal Balance are secured by Mortgaged Properties located in any one zip code area in the State of Arizona and no more than 0.5% of the Group I Loans by aggregate Cut-off Date Principal Balance are secured by Mortgaged Properties located in any one zip code area outside the State of Arizona; no more than 1.6% of the Group II Loans by aggregate Cut-off Date Principal Balance are secured by Mortgaged Properties located in any one zip code area in the State of Maryland and no more than 0.8% of the Group II Loans by aggregate Cut-off Date Principal Balance are secured by Mortgaged Properties located in any one zip code area outside the State of Maryland;

(vii)   The improvements upon the Mortgaged Properties are insured against loss by fire and other hazards as required by the Program Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended. The Mortgage requires the Mortgagor to maintain such casualty insurance at the Mortgagor's expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at the Mortgagor's expense and to seek reimbursement therefore from the Mortgagor;

(viii)  Immediately prior to the assignment of the Mortgage Loans to the Trustee, the Company had good title to, and was the sole owner of, each Mortgage Loan free and clear of any pledge, lien, encumbrance or security interest (other than rights to servicing and related compensation) and such assignment validly transfers ownership of the Mortgage Loans to the Trustee free and clear of any pledge, lien, encumbrance or security interest;

(ix)    No more than 29.9% of the Group I Loans by aggregate Cut-off Date Principal Balance were underwritten under a reduced loan documentation program; no more than 24.2% of the Group II Loans by aggregate Cut-off Date Principal Balance were underwritten under a reduced loan documentation program;

(x)     Each Mortgagor represented in its loan application with respect to the related Mortgage Loan that the Mortgaged Property would be owner-occupied and therefore would not be an investor property as of the date of origination of such Mortgage Loan. No Mortgagor is a corporation or a partnership;

(xi)    None of the Group I Loans and none of the Group II Loans, by aggregate Cut-off Date Principal Balance, is a Buydown Mortgage Loan;

(xii)   Each Mortgage Loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Code and Treasury Regulations Section 1.860G-2(a)(1);

(xiii)  A policy of title insurance was effective as of the closing of each Mortgage Loan and is valid and binding and remains in full force and effect, unless the Mortgaged Properties are located in the State of Iowa and an attorney's certificate has been provided as described in the Program Guide;

(xiv)   Except with respect to 0.3% of the Group I Loans and 0.2% of the Group II Loans, none of the Mortgage Loans are Cooperative Loans;

(xv)    Except with respect to thirty of the Group I Loans and seventeen of the Group II Loans, none of the Mortgage Loans were originated under a "streamlined" Mortgage Loan program (through which no new or updated appraisals of Mortgaged Properties are obtained in connection with the refinancing thereof), the related Seller has represented that either (a) the value of the related Mortgaged Property as of the date the Mortgage Loan was originated was not less than the appraised value of such property at the time of origination of the refinanced Mortgage Loan or (b) the Loan-to-Value Ratio of the Mortgage Loan as of the date of origination of the Mortgage Loan generally meets the Company's underwriting guidelines;

(xvi)   Interest on each Mortgage Loan is calculated on the basis of a 360-day year consisting of twelve 30-day months;

(xvii)  None of the Mortgage Loans contains in the related Mortgage File a Destroyed Mortgage Note; and

(xviii) None of the Mortgage Loans are Pledged Asset Loans or Additional Collateral Loans.

It is understood and agreed that the representations and warranties set forth in this Section 2.03(b) shall survive delivery of the respective Custodial Files to the Trustee or the Custodian.

     Upon discovery by any of the Company, the Master Servicer, the Trustee, or the Custodian of a breach of any of the representations and warranties set forth in this Section 2.03(b) that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (any Custodian being so obligated under a Custodial Agreement); provided, however, that in the event of a breach of the representation and warranty set forth in Section 2.03(b)(xii), the party discovering such breach shall give such notice within five days of discovery. Within 90 days of its discovery or its receipt of notice of breach, the Company shall either (i) cure such breach in all material respects or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that the Company shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; provided that if the omission or defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase must occur within 90 days from the date such breach was discovered. Any such substitution shall be effected by the Company under the same terms and conditions as provided in Section 2.04 for substitutions by Residential Funding. It is understood and agreed that the obligation of the Company to cure such breach or to so purchase or substitute for any Mortgage Loan as to which such a breach has occurred and is continuing shall constitute the sole remedy respecting such breach available to the Certificateholders or the Trustee on behalf of the Certificateholders. Notwithstanding the foregoing, the Company shall not be required to cure breaches or purchase or substitute for Mortgage Loans as provided in this Section 2.03(b) if the substance of the breach of a representation set forth above also constitutes fraud in the origination of the Mortgage Loan.

Section 2.04     Representations and Warranties of Residential Funding. (See Section 2.04 of the Standard Terms)

Agreements; provided, however, that any such amendments or different forms shall be consistent with and not violate the provisions of either this Agreement or the Program Guide in a manner which would materially and adversely affect the interests of the Certificateholders. The Program Guide and any other Subservicing Agreement entered into between the Master Servicer and any Subservicer shall require the Subservicer to accurately and fully report its borrower credit files to each of the Credit Repositories in a timely manner.

(b)      (See Section 3.02(b) of the Standard Terms)

Section 3.03      Successor Subservicers.  (See Section 3.03 of the Standard Terms)

Section 3.04      Liability of the Master Servicer.  (See Section 3.04 of the Standard Terms)

Section 3.05      No Contractual Relationship Between Subservicer and Trustee or Certificateholders.  (See Section 3.05 of the Standard Terms)

Section 3.06      Assumption or Termination of Subservicing Agreements by Trustee.  (See Section 3.06 of the Standard Terms)

Section 3.07      Collection of Certain Mortgage Loan Payments; Deposits to Custodial Account.  (See Section 3.07 of the Standard Terms)

Section 3.08      Subservicing Accounts; Servicing Accounts.  (See Section 3.08 of the Standard Terms)

Section 3.09      Access to Certain Documentation and Information Regarding the Mortgage Loans.  (See Section 3.09 of the Standard Terms)

Section 3.10      Permitted Withdrawals from the Custodial Account.  (See Section 3.10 of the Standard Terms)

Section 3.11      Maintenance of the Primary Insurance Policies; Collections Thereunder.  (See Section 3.11 of the Standard Terms)

Section 3.12      Maintenance of Fire Insurance and Omissions and Fidelity Coverage.  (See Section 3.12 of the Standard Terms)

Section 3.13      Enforcement of Due-on-Sale Clauses; Assumption and Modification Agreements; Certain Assignments.  (See Section 3.13 of the Standard Terms)

Section 3.14      Realization Upon Defaulted Mortgage Loans.  (See Section 3.14 of the Standard Terms)

Section 3.15      Trustee to Cooperate; Release of Custodial Files.  (See Section 3.15 of the Standard Terms)

Section 3.16      Servicing and Other Compensation; Compensating Interest.  (See Section 3.16 of the Standard Terms)

Section 3.17      Reports to the Trustee and the Company.  (See Section 3.17 of the Standard Terms)

Section 3.18      Annual Statement as to Compliance.  (See Section 3.18 of the Standard Terms)

Section 3.19      Annual Independent Public Accountants' Servicing Report.  (See Section 3.19 of the Standard Terms)

Section 3.20      Rights of the Company in Respect of the Master Servicer.  (See Section 3.20 of the Standard Terms)

Section 3.21      Administration of Buydown Funds.  (See Section 3.21 of the Standard Terms)

Section 3.22      Advance Facility.  (See Section 3.22 of the Standard Terms)

---

ARTICLE IV


PAYMENTS TO

CERTIFICATEHOLDERS

Section 4.01      Certificate Account.  (See Section 4.01 of the Standard Terms)

Section 4.02      Distributions.

(a)      On each Distribution Date, (x) the Master Servicer on behalf of the Trustee or (y) the Paying Agent appointed by the Trustee, shall distribute (I) to the Master Servicer or a sub-servicer, in the case of a distribution pursuant to Section 4.02(a)(iii) below, the amount required to be distributed to the Master Servicer or a sub-servicer pursuant to Section 4.02(a)(iii) below, and (II) to each Certificateholder of record on the next preceding Record Date (other than as provided in Section 9.01 respecting the final distribution), either (1) in immediately available funds (by wire transfer or otherwise) to the account of such Certificateholder at a bank or other entity having appropriate facilities therefore, if such Certificateholder has so notified the Master Servicer or the Paying Agent, as the case may be, or (2) if such Certificateholder has not so notified the Master Servicer or the Paying Agent by the Record Date, by check mailed to such Certificateholder at the address of such Holder appearing in the Certificate Register, such Certificateholder's share (which share (A) with respect to each Class of Certificates (other than any Subclass of the Class A-V Certificates), shall be based on the aggregate of the Percentage Interests represented by Certificates of the applicable Class held by such Holder or (B) with respect to any Subclass of the Class A-V Certificates, shall be equal to the amount (if any) distributed pursuant to Section 4.02(a)(i) below to each Holder of a Subclass thereof) of the following amounts, in the following order of priority (subject to the provisions of Section 4.02(b), (c), (d) and (e) below), in each case to the extent of the related Available Distribution Amount remaining:

(i)     (X)          from the Available Distribution Amount related to the Loan Group I, to the holders of the Group I Senior Certificates (other than the Class I-A-P Certificates) on a pro rata basis based on the Accrued Certificate Interest payable on such Certificates with respect to such Distribution Date, Accrued Certificate Interest on such Classes of Certificates (or Subclasses, if any, with respect to the Class I-A-V Certificates) for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided in the last paragraph of this Section 4.02(a); and

                    (Y)          from the Available Distribution Amount related to the Loan Group II, to the holders of the Group II Senior Certificates (other than the Class II-A-P Certificates) on a pro rata basis based on the Accrued Certificate Interest payable on such Certificates with respect to such Distribution Date, Accrued Certificate Interest on such Classes of Certificates (or Subclasses, if any, with respect to the Class II-A-V Certificates) for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided in the last paragraph of this Section 4.02(a);

(ii)    (X)          to the Class I-A-P Certificates from the Available Distribution Amount from Loan Group I and to the Class II-A-P Certificates from the Available Distribution Amount from Loan Group II, the Class A-P Principal Distribution Amount for the related Loan Group, until the Certificate Principal Balance of the related Class A-P Certificates has been reduced to zero; and

                    (Y)          to the Senior Certificates (other than the related Class A-P Certificates) of each Certificate Group, from the Available Distribution Amount for the related Loan Group in the priorities and amounts set forth in Sections 4.02(b)(ii) through 4.02(e), the sum of the following (applied to reduce the Certificate Principal Balances of such Senior Certificates, as applicable):

(A)     the related Senior Percentage for such Distribution Date and Loan Group, as applicable, times the sum of the following:

(1)     the principal portion of each Monthly Payment due during the related Due Period on each Outstanding Mortgage Loan in the related Loan Group (other than the related Discount Fraction of the principal portion of such payment with respect to a Discount Mortgage Loan, if any, in the related Loan Group), whether or not received on or prior to the related Determination Date, minus the principal portion of any Debt Service Reduction (other than the related Discount Fraction of the principal portion of such Debt Service Reductions with respect to each Discount Mortgage Loan, if any) which together with other Bankruptcy Losses on the Mortgage Loans in the related Loan Group exceeds the related Bankruptcy Amount;

(2)     the Stated Principal Balance of any Mortgage Loan in the related Loan Group repurchased during the preceding calendar month (or deemed to have been so repurchased in accordance with Section 3.07(b) of the Standard Terms) pursuant to Sections 2.02, 2.03, 2.04 or 4.07 and the amount of any shortfall deposited in the Custodial Account in connection with the substitution of a Deleted Mortgage Loan in the related Loan Group pursuant to Section 2.03 or 2.04 during the preceding calendar month (other than the related Discount Fraction of such Stated Principal Balance or shortfall with respect to each Discount Mortgage Loan, if any); and

(3)     the principal portion of all other unscheduled collections (other than Principal Prepayments in Full and Curtailments and amounts received in connection with a Cash Liquidation or REO Disposition of a Mortgage Loan described in Section 4.02(a)(ii)(Y)(B) of this Series Supplement, including without limitation Insurance Proceeds, Liquidation Proceeds and REO Proceeds) with respect to the related Loan Group, including Subsequent Recoveries received during the preceding calendar month (or deemed to have been so received in accordance with Section 3.07(b) of the Standard Terms) to the extent applied by the Master Servicer as recoveries of principal of the related Mortgage Loan pursuant to Section 3.14 of the Standard Terms (other than the related Discount Fraction of the principal portion of such unscheduled collections, with respect to each Discount Mortgage Loan, if any, in the related Loan Group);

(B)     with respect to each Mortgage Loan in the related Loan Group for which a Cash Liquidation or a REO Disposition occurred during the preceding calendar month (or was deemed to have occurred during such period in accordance with Section 3.07(b) of the Standard Terms) and did not result in any Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary Losses, an amount equal to the lesser of (a) the related Senior Percentage for such Distribution Date times the Stated Principal Balance of such Mortgage Loan (other than the related Discount Fraction of such Stated Principal Balance, with respect to each Discount Mortgage Loan) and (b) the related Senior Accelerated Distribution Percentage for such Distribution Date times the related unscheduled collections (including without limitation Insurance Proceeds, Liquidation Proceeds and REO Proceeds) to the extent applied by the Master Servicer as recoveries of principal of the related Mortgage Loan pursuant to Section 3.14 of the Standard Terms (in each case other than the portion of such unscheduled collections, with respect to a Discount Mortgage Loan, included in clause (C) of the definition of Class A-P Principal Distribution Amount in this Series Supplement);

(C)     the related Senior Accelerated Distribution Percentage for such Distribution Date times the aggregate of all Principal Prepayments in Full with respect to the related Loan Group received in the related Prepayment Period and Curtailments with respect to the

related Loan Group received in the preceding calendar month (other than the
related Discount Fraction of any Principal Prepayments in Full and
Curtailments, with respect to each Discount Mortgage Loan in the related Loan
Group);

(D)    any Excess Subordinate Principal Amount for such Distribution Date with respect to such Loan Group;

(E)    any amounts described in subsection (ii)(Y), clauses (A), (B) and (C) of this Section 4.02(a), as
determined for any previous Distribution Date, which remain unpaid after
application of amounts previously distributed pursuant to this clause (E) to
the extent that such amounts are not attributable to Realized Losses which
have been allocated to the related Subordinate Certificates; minus

(F)    the related Capitalization Reimbursement Amount for such Distribution Date, other than the related
Discount Fraction of any portion of that amount related to each Discount
Mortgage Loan, if any, in the related Loan Group, multiplied by a fraction,
the numerator of which is the related Senior Principal Distribution Amount,
without giving effect to this clause (F), and the denominator of which is the
sum of the principal distribution amounts for all Classes of related
Certificates other than the related Class A-P Certificates, payable from the
Available Distribution Amount for the related Loan Group without giving effect
to any reductions for the related Capitalization Reimbursement Amount;

(iii)    if the Certificate Principal Balances of the Subordinate Certificates relating to a Loan Group have not
been reduced to zero, to the Master Servicer or a Sub-Servicer, by remitting for deposit to the
Custodial Account, to the extent of and in reimbursement for any Advances or Sub-Servicer Advances
previously made with respect to any related Mortgage Loan or REO Property which remain unreimbursed in
whole or in part following the Cash Liquidation or REO Disposition of such Mortgage Loan or REO
Property, minus any such Advances that were made with respect to delinquencies that ultimately
constituted Excess Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary
Losses with respect to that Loan Group;

(iv)    to the Holders of the Class I-M-1 Certificates or the Class II-M-1 Certificates, as applicable, the
Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest
thereon remaining unpaid from any previous Distribution Date, except as provided below;

(v)    to the Holders of the Class I-M-1 Certificates or the Class II-M-1 Certificates, as applicable, an
amount equal to (x) the related Subordinate Principal Distribution Amount for such Class of Certificates
for the related Loan Group for such Distribution Date, minus (y) the amount of any Class A-P Collection
Shortfalls for the related Loan Group for such Distribution Date or remaining unpaid for all previous
Distribution Dates, to the extent the amounts available pursuant to clause (x) of Sections 4.02(a)(vii),
(ix), (xi), (xiii), (xiv) and (xv) of this Series Supplement are insufficient therefore, applied in
reduction of the Certificate Principal Balance of the Class I-M-1 Certificates or the Class II-M-1
Certificates, as applicable;

(vi)    to the Holders of the Class I-M-2 Certificates or the Class II-M-2 Certificates, as applicable, the
Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest
thereon remaining unpaid from any previous Distribution Date, except as provided below;

(vii)    to the Holders of the Class I-M-2 Certificates or the Class II-M-2 Certificates, as applicable, an
amount equal to (x) the related Subordinate Principal Distribution Amount for such Class of Certificates
for the related Loan Group for such Distribution Date, minus (y) the amount of any Class A-P Collection
Shortfalls for the related Loan Group for such Distribution Date or remaining unpaid for all previous
Distribution Dates, to the extent the amounts available pursuant to clause (x) of Sections 4.02(a)(ix),
(xi), (xiii), (xiv) and (xv) of this Series Supplement are insufficient therefore, applied in reduction
of the Certificate Principal Balance of the Class I-M-2 Certificates or the Class II-M-2 Certificates,
as applicable;

(viii)    to the Holders of the Class I-M-3 Certificates or the Class II-M-3 Certificates, as applicable, the
Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest
thereon remaining unpaid from any previous Distribution Date, except as provided below;

(ix)    to the Holders of the Class I-M-3 Certificates or the Class II-M-3 Certificates, as applicable, an
amount equal to (x) the related Subordinate Principal Distribution Amount for such Class of Certificates
for the related Loan Group for such Distribution Date minus (y) the amount of any Class A-P Collection
Shortfalls for the related Loan Group for such Distribution Date or remaining unpaid for all previous
Distribution Dates, to the extent the amounts available pursuant to clause (x) of Sections 4.02(a)(xi),
(xiii), (xiv) and (xv) of this Series Supplement are insufficient therefore, applied in reduction of the
Certificate Principal Balance of the Class I-M-3 Certificates or the Class II-M-3 Certificates, as
applicable;

(x)    to the Holders of the Class I-B-1 Certificates or the Class II-B-1 Certificates, as applicable, the
Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest
thereon remaining unpaid from any previous Distribution Date, except as provided below;

(xi)    to the Holders of the Class I-B-1 Certificates or the Class II-B-1 Certificates, as applicable, an
amount equal to (x) the related Subordinate Principal Distribution Amount for such Class of Certificates
for the related Loan Group for such Distribution Date minus (y) the amount of any Class A-P Collection
Shortfalls for the related Loan Group for such Distribution Date or remaining unpaid for all previous
Distribution Dates, to the extent the amounts available pursuant to clause (x) of Sections
4.02(a)(xiii), (xiv) and (xv) of this Series Supplement are insufficient therefore, applied in reduction
of the Certificate Principal Balance of the Class I-B-1 Certificates or the Class II-B-1 Certificates,
as applicable;

(xii)    to the Holders of the Class I-B-2 Certificates or the Class II-B-2 Certificates, as applicable, the
Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest
thereon remaining unpaid from any previous Distribution Date, except as provided below;

(xiii)    to the Holders of the Class I-B-2 Certificates or the Class II-B-2 Certificates, as applicable, an
amount equal to (x) the related Subordinate Principal Distribution Amount for such Class of Certificates
for the related Loan Group for such Distribution Date minus (y) the amount of any Class A-P Collection

Shortfalls for the related Loan Group for such Distribution Date or remaining unpaid for all previous Distribution Dates, to the extent the amounts available pursuant to clause (x) of Sections 4.02(a)(xiv) and (xv) of this Series Supplement are insufficient therefore, applied in reduction of the Certificate Principal Balance of the Class I-B-2 Certificates or the Class II-B-2 Certificates, as applicable;

(xiv)   to the Holders of the Class I-B-3 Certificates or the Class II-B-3 Certificates, as applicable, an amount equal to (x) the Accrued Certificate Interest thereon for such Distribution Date, plus any Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date, except as provided below, minus (y) the amount of any Class A-P Collection Shortfalls for the related Loan Group for such Distribution Date or remaining unpaid for all previous Distribution Dates, to the extent the amounts available pursuant to clause (x) of Section 4.02(a)(xv) of this Series Supplement are insufficient therefore;

(xv)    to the Holders of the Class I-B-3 Certificates or the Class II-B-3 Certificates, as applicable, an amount equal to (x) the related Subordinate Principal Distribution Amount for the related Loan Group for such Class of Certificates for such Distribution Date minus (y) the amount of any Class A-P Collection Shortfalls for the related Loan Group for such Distribution Date or remaining unpaid for all previous Distribution Dates, applied in reduction of the Certificate Principal Balance of the Class I-B-3 Certificates or the Class II-B-3 Certificates, as applicable;

(xvi)   to the Senior Certificates in a Certificate Group, in the priority set forth in Section 4.02(b) and (c) of this Series Supplement, the portion, if any, of the Available Distribution Amounts for the related Loan Group remaining after the foregoing distributions, applied to reduce the Certificate Principal Balances of such Senior Certificates, but in no event more than the aggregate of the outstanding Certificate Principal Balances of each such Class of Senior Certificates, and thereafter, to each Class of related Subordinate Certificates then outstanding beginning with such Class with the Highest Priority, any portion of the related Available Distribution Amount remaining after the related Senior Certificates have been retired, applied to reduce the Certificate Principal Balance of each such Class of related Subordinate Certificates, but in no event more than the outstanding Certificate Principal Balance of each such Class of Subordinate Certificates; and

(xvii)  to the Class R-I Certificates and Class R-III Certificates, the balances, if any, of the Available Distribution Amounts for Loan Group I and Loan Group II, respectively.

Notwithstanding the foregoing, on any Distribution Date, with respect to the Class of Subordinate Certificates in a Certificate Group outstanding on such Distribution Date with the Lowest Priority, or in the event the Subordinate Certificates in a Certificate Group are no longer outstanding, the related Senior Certificates, Accrued Certificate Interest thereon remaining unpaid from any previous Distribution Date will be distributable only to the extent that (1) a shortfall in the amounts available to pay Accrued Certificate Interest on any Class of related Certificates results from an interest rate reduction in connection with a Servicing Modification on a Mortgage Loan in the related Loan Group, or (2) such unpaid Accrued Certificate Interest was attributable to interest shortfalls on a Mortgage Loan in the related Loan Group relating to the failure of the Master Servicer to make any required Advance, or the determination by the Master Servicer that any proposed Advance would be a Nonrecoverable Advance with respect to the related Mortgage Loan where such Mortgage Loan has not yet been the subject of a Cash Liquidation or REO Disposition or the related Liquidation Proceeds, Insurance Proceeds and REO Proceeds have not yet been distributed to the Certificateholders.

(b)     On each Distribution Date occurring prior to the Credit Support Depletion Date for the Group I Senior Certificates, the Senior Principal Distribution Amount for Loan Group I shall be distributed concurrently as follows:

(i)     first, to the Class R-I and Class R-III Certificates, pro rata, in accordance with their respective Certificate Principal Balances thereof, until the Certificate Principal Balances thereof have been reduced to zero;

(ii)    second, the balance of the Senior Principal Distribution Amount remaining after the distributions, if any, described in Section 4.02(b)(ii) will be distributed concurrently as follows:

(A)     79.9999734207% of the amount described in Section 4.02(b)(ii) will be distributed to the Class I-A-1 Certificates, until the Certificate Principal Balance thereof has been reduced to zero; and

(B)     20.0000265793% of the amount described in Section 4.02(b)(ii) will be distributed in the following manner and priority:

(1)     first, to the Class I-A-7 Certificates, an amount up to the Lockout Amount for that Distribution Date, until the Certificate Principal Balance thereof has been reduced to zero;

(2)     second, to the Class I-A-2, Class I-A-3, Class I-A-4, Class I-A-5 and Class I-A-6 Certificates, sequentially, in that order, until the Certificate Principal Balances thereof have been reduced to zero; and

(3)     third, to the Class I-A-7 Certificates, without regard to the Lockout Amount for that Distribution Date, until the Certificate Principal Balance thereof has been reduced to zero; and

(c)     On each Distribution Date occurring prior to the Credit Support Depletion Date for the Group II Senior Certificates, the Senior Principal Distribution Amount for Loan Group II shall be distributed as follows:

(i)     first, to the Class R-II Certificates, until the Certificate Principal Balance thereof has been reduced to zero; and

(ii)    second, to the Class II-A-1 Certificates, until the Certificate Principal Balance thereof has been reduced to zero.

(d)     On or after the occurrence of the related Credit Support Depletion Date for Loan Group I or Loan Group II, as applicable, all priorities relating to distributions as described in Section 4.02(b) and (c) of this Series Supplement in respect of principal among the Senior Certificates in the related Certificate Group (other than the related Class A-P Certificates) will be disregarded, and (i) an amount equal to the Class A-P Principal Distribution Amount for the related Loan Group shall be distributed to the Class A-P Certificates in that Certificate Group, and (ii) the Senior Principal Distribution Amount for the related Loan Group will be distributed to the remaining Senior Certificates in the related Certificate Group (other than the related Class

A-P Certificates, pro rata in accordance with their respective Certificate Principal Balances and (iii) the amount set forth in Section 4.02(a)(i) together with respect to the related Loan Group will be distributed as set forth therein.

(e)    After the reduction of the Certificate Principal Balances of all Classes of Senior Certificates of a Certificate Group (other than the related Class A-P Certificates) to zero but prior to the related Credit Support Depletion Date, such Senior Certificates (other than the related Class A-P Certificates) will be entitled to no further distributions of principal thereon and the applicable Available Distribution Amount will be distributed solely to the holders of the related Class A-P Certificates, the related Class A-V Certificates, and the related Subordinate Certificates, in each case as described herein.

(f)    In addition to the foregoing distributions, with respect to any Subsequent Recoveries, the Master Servicer shall deposit such funds into the Custodial Account pursuant to Section 3.07(b)(iii).  If, after taking into account such Subsequent Recoveries, the amount of a Realized Loss with respect to a Loan Group is reduced, the amount of such Subsequent Recoveries will be applied to increase the Certificate Principal Balance of the Class of related Subordinate Certificates with the Highest Priority to which Realized Losses from that Loan Group, other than any related Excess Bankruptcy Losses, Excess Fraud Losses, Excess Special Hazard Losses and Extraordinary Losses, have been allocated, but not by more than the amount of Realized Losses previously allocated to that Class of Certificates pursuant to Section 4.05.  The amount of any remaining Subsequent Recoveries from the related Loan Group will be applied to increase the Certificate Principal Balance of the Class of related Certificates with the next Lower Priority, up to the amount of such Realized Losses previously allocated to that Class of Certificates pursuant to Section 4.05.  Any remaining Subsequent Recoveries from the related Loan Group will in turn be applied to increase the Certificate Principal Balance of the Class of related Certificates with the next Lower Priority up to the amount of such Realized Losses previously allocated to that Class of Certificates pursuant to Section 4.05, and so on.  Holders of such Certificates will not be entitled to any payment in respect of Accrued Certificate Interest on the amount of such increases for any Interest Accrual Period preceding the Distribution Date on which such increase occurs.  Any such increases shall be applied to the Certificate Principal Balance of each Certificate of such Class in accordance with its respective Percentage Interest.

(g)    Each distribution with respect to a Book-Entry Certificate shall be paid to the Depository, as Holder thereof, and the Depository shall be solely responsible for crediting the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures.  Each Depository Participant shall be responsible for disbursing such distribution to the Certificate Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm" or "indirect participating firm") for which it acts as agent.  Each brokerage firm shall be responsible for disbursing funds to the Certificate Owners that it represents.  None of the Trustee, the Certificate Registrar, the Company or the Master Servicer shall have any responsibility therefore except as otherwise provided by this Series Supplement or applicable law.

(h)    Except as otherwise provided in Section 9.01, if the Master Servicer anticipates that a final distribution with respect to any Class of Certificates will be made on a future Distribution Date, the Master Servicer shall, no later than 40 days prior to such final distribution, notify the Trustee and the Trustee shall, not earlier than the 15th day and not later than the 25th day of the month next preceding the month of such final distribution, distribute, or cause to be distributed to each Holder of such Class of Certificates a notice to the effect that: (i) the Trustee anticipates that the final distribution with respect to such Class of Certificates will be made on such Distribution Date but only upon presentation and surrender of such Certificates at the office of the Trustee or as otherwise specified therein, and (ii) no interest shall accrue on such Certificates from and after the end of the related Interest Accrual Period.  In the event that Certificateholders required to surrender their Certificates pursuant to Section 9.01(c) do not surrender their Certificates for final cancellation, the Trustee shall cause funds distributable with respect to such Certificates to be withdrawn from the Certificate Account and credited to a separate escrow account for the benefit of such Certificateholders as provided in Section 9.01(d).

Section 4.03    Statements to Certificateholders; Statements to Rating Agencies; Exchange Act Reporting.  (See Section 4.03 of the Standard Terms) and Exhibit Three hereto)

Section 4.04    Distribution of Reports to the Trustee and the Company; Advances by the Master Servicer.  (See Section 4.04 of the Standard Terms)

Section 4.05    Allocation of Realized Losses.

Prior to each Distribution Date, the Master Servicer shall determine the total amount of Realized Losses, if any, that resulted from any Cash Liquidation, Servicing Modification, Debt Service Reduction, Deficient Valuation or REO Disposition that occurred during the related Prepayment Period or, in the case of a Servicing Modification that constitutes a reduction of the interest rate on a Mortgage Loan in the related loan group, the amount of the reduction in the interest portion of the Monthly Payment due during the related Due Period.  The amount of each Realized Loss shall be evidenced by an Officers' Certificate.  All Realized Losses, on Mortgage Loans in a Loan Group, other than Excess Special Hazard Losses, Extraordinary Losses, Excess Bankruptcy Losses or Excess Fraud Losses, shall be allocated to the Certificates in the related Certificate Group as follows: first, to the Class I-B-3 Certificates or the Class II-B-3 Certificates, as applicable, until the Certificate Principal Balance thereof has been reduced to zero; second, to the Class I-B-2 Certificates or the Class II-B-2 Certificates, as applicable, until the Certificate Principal Balance thereof has been reduced to zero; third, to the Class I-B-1 Certificates or the Class II-B-1 Certificates, as applicable, until the Certificate Principal Balance thereof has been reduced to zero; fourth, to the Class I-M-3 Certificates or the Class II-M-3 Certificates, as applicable, until the Certificate Principal Balance thereof has been reduced to zero; fifth, to the Class I-M-2 Certificates or the Class II-M-2 Certificates, as applicable, until the Certificate Principal Balance thereof has been reduced to zero; sixth, to the Class I-M-1 Certificates or the Class II-M-1 Certificates, as applicable, until the Certificate Principal Balance thereof has been reduced to zero; and, thereafter, if any such Realized Losses are on a Discount Mortgage Loan, to the related Class A-P Certificates in an amount equal to the related Discount Fraction of the principal portion thereof until the Certificate Principal Balance of such Class A-P Certificates has been reduced to zero, and the remainder of such Realized Losses on the Discount Mortgage Loans in the related Loan Group and the entire amount of such Realized Losses on Non-Discount Mortgage Loans in the related Loan Group will be allocated among (i) all the Group I Senior Certificates other than the Class I-A-P Certificates and, in the case of the interest portion of such Realized Loss, the Class I-A-V Certificates (in the case of a Realized Loss on a Group I Loan) on a pro rata basis or (ii) among all of the Group II Senior Certificates other than the Class II-A-P Certificates and, in the case of the interest portion of such Realized Loss, Class II-A-V Certificates (in the case of a Realized Loss on a Group II Loan) on a pro rata basis, as described below.

The principal portion of any Excess Special Hazard Losses, Excess Bankruptcy Losses, Excess Fraud Losses

(xv)    the amount, terms and general purpose of any Advance by the Master Servicer pursuant to Section 4.04;

(xvi)    any material modifications, extensions or waivers to the terms of the Mortgage Loans during the Due Period or that have cumulatively become material over time;

(xvii)    any material breaches of Mortgage Loan representations or warranties or covenants in the Agreement.

(xviii)    the related Subordinate Principal Distribution Amount;

(xix)    for each Loan Group, the number, Stated Principal Balance and actual principal balance of REO Properties;

(xx)    the aggregate Accrued Certificate Interest remaining unpaid, if any, for each Class of Certificates, after giving effect to the distribution made on such Distribution Date;

(xxi)    the Pass-Through Rate with respect to each Class of Class A-V Certificates;

(xxii)    the Notional Amount with respect to each class of Interest Only Certificates;

(xxiii)    for each Loan Group, the occurrence of the Credit Support Depletion Date;

(xxiv)    the Senior Accelerated Distribution Percentages applicable to such distribution;

(xxv)    the Senior Percentages for such Distribution Date; and

(xxvi)    for each Loan Group, the aggregate amount of any recoveries on previously foreclosed loans from Sellers

In the case of information furnished pursuant to clauses (v) and (vi) above, the amounts shall be expressed as a dollar amount per Certificate with a $1,000 denomination.

The Trustee's internet website will initially be located at http://www.usbank.com/mbs. To receive this statement via first class mail, telephone the Trustee at 1 (800) 934-6802.

EXHIBIT FOUR

===============================================================================

STANDARD TERMS OF
POOLING AND SERVICING AGREEMENT

Dated as of October 30, 2006

Residential Funding Mortgage Securities I, Inc.

Mortgage Pass-Through Certificates

===============================================================================

TABLE OF CONTENTS

                                                                    PAGE

ARTICLE I        DEFINITIONS.....................................................1

        Section 1.01.  Definitions..............................................1

        Section 1.02.  Use of Words and Phrases................................33

ARTICLE II       CONVEYANCE OF MORTGAGE LOANS;  ORIGINAL ISSUANCE OF
                 CERTIFICATES...................................................33

Section 10.02. Master Servicer, REMIC Administrator and Trustee
    Indemnification..................111

Section 10.03. Designation of REMIC(s)..............................111

ARTICLE XI    MISCELLANEOUS PROVISIONS...................................111

Section 11.01. Amendment............................................111

Section 11.02. Recordation of Agreement; Counterparts...............113

Section 11.03. Limitation on Rights of Certificateholders...........114

Section 11.04. Governing Law........................................115

Section 11.05. Notices..............................................115

Section 11.06. Required Notices to Rating Agency and Subservicer.....115

Section 11.07. Severability of Provisions...........................116

Section 11.08. Supplemental Provisions for Resecuritization.........116

Section 11.09. Allocation of Voting Rights..........................116

ARTICLE XII    COMPLIANCE WITH REGULATION AB...............................117

Section 12.01. Intent of Parties; Reasonableness....................117

Section 12.02. Additional Representations and Warranties of the
    Trustee...............................................117

Section 12.03. Information to be Provided by the Trustee............118

Section 12.04. Report on Assessment of Compliance and Attestation....118

Section 12.05. Indemnification; Remedies............................119

TABLE OF CONTENTS
(continued)

EXHIBITS

Exhibit A:      Form of Class A Certificate
Exhibit A-I:    Form of Class X Certificate
Exhibit B:      Form of Class M Certificate
Exhibit C:      Form of Class B Certificate
Exhibit C-I:    Form of Class P Certificate
Exhibit C-II:   Form of Class SB Certificate
Exhibit D:      Form of Class R Certificate
Exhibit E:      Form of Seller/Servicer Contract
Exhibit F:      Forms of Request for Release
Exhibit G-1:    Form of Transfer Affidavit and Agreement
Exhibit G-2:    Form of Transferor Certificate
Exhibit H:      Form of Investor Representation Letter
Exhibit I:      Form of Transferor Representation Letter
Exhibit J:      Form of Rule 144A Investment Representation Letter
Exhibit K:      Text of Amendment to Pooling and Servicing Agreement
                Pursuant to Section 11.01(e) for a Limited Guaranty
Exhibit L:      Form of Limited Guaranty
Exhibit M:      Form of Lender Certification for Assignment of Mortgage Loan
Exhibit N:      Request for Exchange Form
Exhibit O:      Form of Form 10-K Certification
Exhibit P:      Form of Back-Up Certification to Form 10-K Certificate
Exhibit Q:      Information to be Provided by the Master Servicer to the
                Rating Agencies Relating to Reportable Modified Mortgage Loans
Exhibit R:      Servicing Criteria

This is the Standard Terms of Pooling and Servicing Agreement, dated as of October 30, 2006 (the "Standard Terms", and as incorporated by reference into a Series Supplement dated as of the date specified therein, the "Pooling and Servicing Agreement" or "Agreement"), among RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC., as the company (together with its permitted successors and assigns, the "Company"), RESIDENTIAL FUNDING COMPANY, LLC, as master servicer (together with its permitted successors and assigns, the "Master Servicer"), and the trustee named in the applicable Series Supplement

the lesser of repair or replacement of a Mortgaged Property (or, with respect to a Cooperative Loan, the related Cooperative Apartment suffered by the Mortgaged Property (or Cooperative Apartment) on account of direct physical loss, exclusive of (i) any loss of a type covered by a hazard policy or a flood insurance policy required to be maintained in respect of such Mortgaged Property pursuant to Section 3.12(a), except to the extent of the portion of such loss not covered as a result of any coinsurance provision and (ii) any Extraordinary Loss.

Standard & Poor's: Standard & Poor's, a division of The McGraw-Hill Companies, Inc., or its successor in interest.

Stated Principal Balance: With respect to any Mortgage Loan or related REO Property, at any given time, (i) the sum of (a) the Cut-off Date Principal Balance of the Mortgage Loan plus (b) any amount by which the Stated Principal Balance of the Mortgage Loan is increased pursuant to a Servicing Modification, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending prior to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

Successor Master Servicer: As defined in Section 3.22.

Subclass: With respect to the Class A-V Certificates, any Subclass thereof issued pursuant to Section 5.01(c). Any such Subclass will represent the Uncertificated Class A-V REMIC Regular Interest or Interests specified by the initial Holder of the Class A-V Certificates pursuant to Section 5.01(c).

Subordinate Certificate: Any one of the Class M Certificates or Class B Certificates, executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit B and Exhibit C, respectively.

Subordinate Class Percentage: With respect to any Distribution Date and any Class of Subordinate Certificates, a fraction, expressed as a percentage, the numerator of which is the aggregate Certificate Principal Balance of such Class of Subordinate Certificates immediately prior to such date and the denominator of which is the aggregate Stated Principal Balance of all of the Mortgage Loans (or related REO Properties)(other than the related Discount Fraction of each Discount Mortgage Loan) immediately prior to such Distribution Date.

Subordinate Percentage: As of any Distribution Date and, with respect to any Mortgage Pool comprised of two or more Loan Groups, any Loan Group, 100% minus the related Senior Percentage as of such Distribution Date.

Subsequent Recoveries: As of any Distribution Date, amounts received by the Master Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 3.10) or surplus amounts held by the Master Servicer to cover estimated expenses (including, but not limited to, recoveries in respect of the representations and warranties made by the related Seller pursuant to the applicable Seller's Agreement and assigned to the Trustee pursuant to Section 2.04) specifically related to a Mortgage Loan that was the subject of a Cash Liquidation or an REO Disposition prior to the related Prepayment Period that resulted in a Realized Loss.

Subserviced Mortgage Loan: Any Mortgage Loan that, at the time of reference thereto, is subject to a Subservicing Agreement.

Subservicer: Any Person with whom the Master Servicer has entered into a Subservicing Agreement and who generally satisfied the requirements set forth in the Program Guide in respect of the qualification of a Subservicer as of the date of its approval as a Subservicer by the Master Servicer.

Subservicer Advance: Any delinquent installment of principal and interest on a Mortgage Loan which is advanced by the related Subservicer (net of its Subservicing Fee) pursuant to the Subservicing Agreement.

Subservicing Account: An account established by a Subservicer in accordance with Section 3.08.

Subservicing Agreement: The written contract between the Master Servicer and any Subservicer relating to servicing and administration of certain Mortgage Loans as provided in Section 3.02, generally in the form of the servicer contract referred to or contained in the Program Guide or in such other form as has been approved by the Master Servicer and the Company. With respect to Additional Collateral Loans subserviced by MLCC, the Subservicing Agreement shall also include the Addendum and Assignment Agreement and the Pledged Asset Mortgage Servicing Agreement. With respect to any Pledged Asset Loan subserviced by GMAC Mortgage, LLC, the Addendum and Assignment Agreement, dated as of November 24, 1998, between the Master Servicer and GMAC Mortgage, LLC, as such agreement may be amended from time to time.

Voting Rights: The portion of the voting rights of all of the Certificates which is allocated to any Certificate, and more specifically, designated in Article XI of the Series Supplement.

Section 1.02.    Use of Words and Phrases.

"Herein," "hereby," "hereunder," 'hereof," "hereinbefore," "hereinafter" and other equivalent words refer to the Pooling and Servicing Agreement as a whole. All references herein to Articles, Sections or Subsections shall mean the corresponding Articles, Sections and Subsections in the Pooling and Servicing Agreement. The definitions set forth herein include both the singular and the plural.

References in the Pooling and Servicing Agreement to "interest" on and "principal" of the Mortgage Loans shall mean, with respect to the Sharia Mortgage Loans, amounts in respect profit payments and acquisition payments, respectively.

---

ARTICLE II

CONVEYANCE OF MORTGAGE LOANS;
ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01.    Conveyance of Mortgage Loans.

(a)    The Company, concurrently with the execution and delivery hereof, does hereby assign to the Trustee without recourse all the right, title and interest of the Company in and to the Mortgage Loans, including all interest and principal received on or with respect to the Mortgage Loans after the Cut-off Date (other than payments of principal and interest due on the Mortgage Loans in the month of the Cut-off Date). In connection with such transfer and assignment, the Company does hereby deliver to the Trustee the Certificate Register (as defined in the Series Supplement), if any. The Company, the Master Servicer and the Trustee agree that it is not intended that any mortgage loan be included in the Trust that is (i) a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003, (ii) a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004, (iii) a "High Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Practices Act effective November 7, 2004 or (iv) a "High-Cost Home Loan" as defined in the Indiana House Enrolled Act No. 1229, effective as of January 1, 2005.

(b)    In connection with such assignment, except as set forth in Section 2.01(c) and subject to Section 2.01(d) below, the Company does hereby:

(I) with respect to each Mortgage Loan so assigned (other than a Cooperative Loan or a Sharia Mortgage Loan) (1) in the case of all such Mortgage Loans, deliver to and deposit with the Master Servicer (or an Affiliate of the Master Servicer) each of the documents or instruments described in clause (ii) below (and the Master Servicer shall hold (or cause such Affiliate to hold) such documents or instruments in trust for the use and benefit of all present and future Certificateholders), (2) with respect to each MOM Loan, deliver to, and deposit with, the Trustee, or to and with one or more Custodians, as the duly appointed agent or agents of the Trustee for such purpose, the documents or instruments described in clauses (i) and (v) below, (3) with respect to each Mortgage Loan that is not a MOM Loan but is registered on the MERS(R)System, deliver to, and deposit with, the Trustee, or to and with one or more Custodians, as the duly appointed agent or agents of the Trustee for such purpose, the documents or instruments described in clauses (i), (iv) and (v) below and (4) with respect to each Mortgage Loan that is not a MOM Loan and is not registered on the MERS(R)System, deliver to, and deposit with, the Trustee, or to and with one or more Custodians, as the duly appointed agent or agents of the Trustee for such purpose, the documents or instruments described in clauses (i), (iii), (iv) and (v) below:

(i)    The original Mortgage Note, endorsed without recourse to the order of the Trustee and showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee, or with respect to any Destroyed Mortgage Note, an original lost note affidavit from the related Seller or Residential Funding stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note.

(ii)    The original Mortgage, noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recording indicated thereon or a copy of the Mortgage with evidence of recording indicated thereon.

(iii) The original Assignment of the Mortgage to the Trustee with evidence of recording indicated thereon or a copy of such assignment with evidence of recording indicated thereon.

(iv)  The original recorded assignment or assignments of the Mortgage showing an unbroken chain of title from the originator thereof to the Person assigning it to the Trustee (or to MERS, if the Mortgage Loan is registered on the MERS(R)System and noting the presence of a MIN) with evidence of recordation noted thereon or attached thereto, or a copy of such assignment or assignments of the Mortgage with evidence of recording indicated thereon.

(v)  The original of each modification, assumption agreement or preferred loan agreement, if any, relating to such Mortgage Loan or a copy of each modification, assumption agreement or preferred loan agreement.

(II) with respect to each Cooperative Loan so assigned:

(i)  The original Mortgage Note, endorsed without recourse to the order of the Trustee and showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee, or with respect to any Destroyed Mortgage Note, an original lost note affidavit from the related Seller or Residential Funding stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note.

(ii)  A counterpart of the Cooperative Lease and the Assignment of Proprietary Lease to the originator of the Cooperative Loan with intervening assignments showing an unbroken chain of title from such originator to the Trustee.

(iii) The related Cooperative Stock Certificate, representing the related Cooperative Stock pledged with respect to such Cooperative Loan, together with an undated stock power (or other similar instrument) executed in blank.

(iv)  The original recognition agreement by the Cooperative of the interests of the mortgagee with respect to the related Cooperative Loan.

(v)  The Security Agreement.

(vi)  Copies of the original UCC-1 financing statement, and any continuation statements, filed by the originator of such Cooperative Loan as secured party, each with evidence of recording thereof, evidencing the interest of the originator under the Security Agreement and the Assignment of Proprietary Lease.

(vii) Copies of the filed UCC-3 assignments of the security interest referenced in clause (vi) above showing an unbroken chain of title from the originator to the Trustee, each with evidence of recording thereof, evidencing the interest of the originator under the Security Agreement and the Assignment of Proprietary Lease.

(viii)    An executed assignment of the interest of the originator in the Security Agreement, Assignment of Proprietary Lease and the recognition agreement referenced in clause (iv) above, showing an unbroken chain of title from the originator to the Trustee.

(ix)  The original of each modification, assumption agreement or preferred loan agreement, if any, relating to such Cooperative Loan.

(x)  A duly completed UCC-1 financing statement showing the Master Servicer as debtor, the Company as secured party and the Trustee as assignee and a duly completed UCC-1 financing statement showing the Company as debtor and the Trustee as secured party, each in a form sufficient for filing, evidencing the interest of such debtors in the Cooperative Loans.

and (III) with respect to each Sharia Mortgage Loan so assigned:

(xi)  The original Obligation to Pay, endorsed without recourse in blank or to the order of the Trustee and showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee, or with respect to any Destroyed Obligation to Pay, an original affidavit from the related Seller or Residential Funding stating that the original Obligation to Pay was lost, misplaced or destroyed, together with a copy of the related Obligation to Pay.

(xii) The original Sharia Mortgage Loan Security Instrument, with evidence of recording indicated thereon or a copy of the Sharia Mortgage Loan Security Instrument with evidence of recording indicated thereon.

(xiii)    An original Assignment and Amendment of Security Instrument, assigned to the Trustee with evidence of recording indicated thereon or a copy of such Assignment and Amendment of Security Instrument with evidence of recording indicated thereon.

(xiv) The original recorded assignment or assignments of the Sharia Mortgage Loan Security Instrument showing an unbroken chain of title from the originator thereof to the Person assigning it to the Trustee with evidence of recordation noted thereon or attached thereto, or a copy of such assignment or assignments of the Sharia Mortgage Loan Security Instrument with evidence of recording indicated thereon.

(xv)  The  original  Sharia Mortgage Loan  Co-Ownership Agreement Agreement relating
to the related Sharia Mortgage Loan.

(xvi)  The  original of each  modification  or  assumption  agreement, if any,
relating to such Sharia Mortgage Loan or a copy of each  modification or
assumption agreement.

(c)   The Company may, in lieu of  delivering  the  original of the  documents
set forth in  Sections 2.01(b)(I)  (iii), (iv) and (v), Section (b)(II)(ii),
(iv), (vii), (ix) and (x) and Sections 2.01(b)(III)(ii), (iii), (iv), (v) and
(vi) (or copies  thereof as permitted by  Section 2.01(b)) to the Trustee or
the Custodian or Custodians,  deliver such  documents to the Master Servicer,
and the Master  Servicer  shall hold such  documents in trust for the use and
benefit of all  present  and future  Certificateholders  until such time as is
set forth in the next  sentence. Within thirty  Business Days  following the
earlier of  (i) the  receipt  of the  original  of all  of the  documents or
instruments  set  forth  in  Sections 2.01(b)(I)(iii),  (iv) and  (v),
Sections (b)(II)(ii),  (iv),  (ix) and  (x) and
Sections 2.01(b)(III)(ii),  (iii), (iv), (v) and (vi) (or copies  thereof) for
any Mortgage Loan and (ii) a  written  request by the Trustee to deliver those
documents  with respect to any or all of the Mortgage Loans then being held by
the Master Servicer,  the Master Servicer shall deliver a complete set of such
documents  to the Trustee or the  Custodian  or  Custodians  that are the duly
appointed agent or agents of the Trustee.

(d)   Notwithstanding  the provisions of  Section 2.01(c), in connection with
any  Mortgage  Loan, if the  Company  cannot  deliver  the  original of the
Mortgage, any  assignment,  modification,  assumption  agreement or preferred
loan agreement  (or  copy  thereof as permitted  by  Section 2.01(b)) with
evidence of recording thereon  concurrently with the execution and delivery of
this Agreement because of (i) a delay caused by the public recording office
where  such  Mortgage,  assignment,  modification,  assumption  agreement or
preferred loan  agreement  as the case may be, has been  delivered for
recordation, or (ii) a delay in the receipt of certain  information  necessary
to prepare the related  assignments, the Company shall deliver or cause to be
delivered to the Trustee or the respective  Custodian a copy of such Mortgage,
assignment, modification, assumption agreement or preferred loan agreement.

The Company (i) shall promptly cause to be recorded in the  appropriate
public office for real property records the  Assignment  referred to in
clause (I)(iii) of  Section 2.01(b),  except  (a) in states where,  in the
opinion of counsel  acceptable to the Master  Servicer, such recording is not
required to protect the  Trustee's  interests in the Mortgage Loan against the
claim of any  subsequent  transferee or any  successor to or creditor of the
Company or the  originator  of such Mortgage Loan or (b) if MERS is identified
on the Mortgage or on a properly recorded  assignment  of the Mortgage as the
mortgagee of record  solely as nominee for the Seller and its  successors and
assigns, (ii) shall promptly cause to be filed the Form UCC-3  assignment and
UCC-1  financing  statement  referred to in  clauses (II)(vii) and  (x),
respectively, of Section 2.01(b) and  (iii) shall promptly cause to be
recorded in the appropriate  public recording office for real property records
the Assignment  Agreement and Amendment of Security  Instrument referred to in
clause  (III)(iii) of  Section  2.01(b). If any  Assignment,  Assignment
Agreement and Amendment of Security  Instrument, Form UCC-3 or Form UCC-1, as
applicable, is lost or  returned  unrecorded to the  Company because of any
defect therein, the Company shall prepare a substitute Assignment, Assignment
Agreement and Amendment of Security  Instrument, Form UCC-3 or Form UCC-1, as
applicable, or  cure  such  defect, as the case may be, and cause such
Assignment or Assignment  Agreement and Amendment of Security Instrument to be
recorded in  accordance  with this paragraph. The  Company shall promptly
deliver or  cause to be  delivered to the  applicable  Person described in
Section  2.01(b) such  Assignment  or  substitute  Assignment  or Assignment
Agreement  and  Amendment of Security  Instrument or Form UCC-3 or Form UCC-1,
as applicable, (or copy thereof) recorded in connection with this paragraph,
with  evidence of recording  indicated  thereon at the  time specified in
Section 2.01(c). In connection with its servicing of Cooperative  Loans, the
Master  Servicer  will use  its  best efforts to file timely continuation
statements with regard to each financing  statement and assignment relating to
Cooperative  Loans as to which the related  Cooperative  Apartment is located
outside of the State of New York.

If the Company  delivers to the Trustee or Custodian any Mortgage  Note,
Obligation to Pay, Assignment  Agreement and Amendment of Security Instrument
or Assignment  of Mortgage in blank, the Company  shall, or shall cause the
Custodian to,  complete  the  endorsement of the Mortgage  Note,  Obligation to
Pay, Assignment  Agreement and  Amendment  of  Security  Instrument  and the
Assignment  of  Mortgage in the name of the Trustee in  conjunction with the
Interim  Certification  issued  by the  Custodian,  as  contemplated by
Section 2.02.

Any of the  items set forth in  Sections  2.01(b)(II)(vi) and  (vii) and
Sections  2.01(b)(III)(ii),  (iii),  and (iv) that may be  delivered as a copy
rather than the original may be delivered to the Trustee or the Custodian.

In connection  with the  assignment  of any Mortgage Loan  registered on
the MERS(R)System, the Company  further  agrees  that it will  cause, at the
Company's own expense,  within 30 Business  Days after the Closing  Date, the
MERS(R)System to indicate  that such  Mortgage  Loans have been  assigned by the
Company to the Trustee in  accordance  with this  Agreement for the benefit of

the Certificateholders by including (or deleting, in the case of Mortgage
Loans which are repurchased in accordance with this Agreement) in its
computer files (a) the code in the field which identifies the specific
Trustee and (b) the code in the field "Pool Field" which identifies the
series of the Certificates issued in connection with such Mortgage Loans.
The Company further agrees that it will not, and will not permit the Master
Servicer to, and the Master Servicer agrees that it will not, alter the codes
referenced in this paragraph with respect to any Mortgage Loan during the
term of this Agreement unless and until such Mortgage Loan is repurchased in
accordance with the terms of this Agreement.

(e)   Residential Funding hereby assigns to the Trustee its security interest
in and to any Additional Collateral or Pledged Assets, its right to receive
amounts due or to become due in respect of any Additional Collateral or
Pledged Assets pursuant to the related Subservicing Agreement and its rights
as beneficiary under the Surety Bond in respect of any Additional Collateral
Loans. With respect to any Additional Collateral Loan or Pledged Asset Loan,
Residential Funding shall cause to be filed in the appropriate recording
office a UCC-3 statement giving notice of the assignment of the related
security interest to the Trust Fund and shall thereafter cause the timely
filing of all necessary continuation statements with regard to such financing
statements.

(f)   It is intended that the conveyance by the Company to the Trustee of the
Mortgage Loans as provided for in this Section 2.01 be and the Uncertificated
REMIC Regular Interests, if any (as provided for in Section 2.06), be
construed as a sale by the Company to the Trustee of the Mortgage Loans and
any Uncertificated REMIC Regular Interests for the benefit of the
Certificateholders. Further, it is not intended that such conveyance be
deemed to be a pledge of the Mortgage Loans and any Uncertificated REMIC
Regular Interests by the Company to the Trustee to secure a debt or other
obligation of the Company. However, if the Mortgage Loans and any
Uncertificated REMIC Regular Interests are held to be property of the Company
or of Residential Funding, or if for any reason this Agreement is held or
deemed to create a security interest in the Mortgage Loans and any
Uncertificated REMIC Regular Interests, then it is intended that (a) this
Agreement shall be a security agreement within the meaning of Articles 8 and
9 of the New York Uniform Commercial Code and the Uniform Commercial Code of
any other applicable jurisdiction; (b) the conveyance provided for in
Section 2.01 shall be deemed to be, and hereby is, (1) a grant by the Company
to the Trustee of a security interest in all of the Company's right
(including the power to convey title thereto), title and interest, whether
now owned or hereafter acquired, in and to any and all general intangibles,
payment intangibles, accounts, chattel paper, instruments, documents, money,
deposit accounts, certificates of deposit, goods, letters of credit, advices
of credit and investment property and other property of whatever kind or
description now existing or hereafter acquired consisting of, arising from or
relating to any of the following: (A) the Mortgage Loans, including (i) with
respect to each Cooperative Loan, the related Mortgage Note, Security
Agreement, Assignment of Proprietary Lease, Cooperative Stock Certificate and
Cooperative Lease, (ii) with respect to each Sharia Mortgage Loan, the
related Sharia Mortgage Loan Security Instrument, Sharia Mortgage Loan
Co-Ownership Agreement, Obligation to Pay and Assignment Agreement and
Amendment of Security Instrument, (iii) with respect to each Mortgage Loan
other than a Cooperative Loan or a Sharia Mortgage Loan, the related Mortgage
Note and Mortgage, and (iv) any insurance policies and all other documents in
the related Mortgage File, (B) all amounts payable pursuant to the Mortgage
Loans in accordance with the terms thereof, (C) any Uncertificated REMIC
Regular Interests and (D) all proceeds of the conversion, voluntary or
involuntary, of the foregoing into cash, instruments, securities or other
property, including without limitation all amounts from time to time held or
invested in the Certificate Account or the Custodial Account, whether in the
form of cash, instruments, securities or other property and (2) an assignment
by the Company to the Trustee of any security interest in any and all of
Residential Funding's right (including the power to convey title thereto),
title and interest, whether now owned or hereafter acquired, in and to the
property described in the foregoing clauses (1)(A), (B), (C) and (D) granted
by Residential Funding to the Company pursuant to the Assignment Agreement;
(c) the possession by the Trustee, the Custodian or any other agent of the
Trustee of Mortgage Notes or such other items of property as constitute
instruments, money, payment intangibles, negotiable documents, goods, deposit
accounts, letters of credit, advices of credit, investment property,
certificated securities or chattel paper shall be deemed to be "possession by
the secured party," or possession by a purchaser or a person designated by
such secured party, for purposes of perfecting the security interest pursuant
to the Minnesota Uniform Commercial Code and the Uniform Commercial Code of
any other applicable jurisdiction as in effect (including, without
limitation, Sections 8-106, 9-313 and 9-106 thereof); and (d) notifications
to persons holding such property, and acknowledgments, receipts or
confirmations from persons holding such property, shall be deemed
notifications to, or acknowledgments, receipts or confirmations from,
securities intermediaries, bailees or agents of, or persons holding for (as
applicable) the Trustee for the purpose of perfecting such security interest
under applicable law.

The Company and, at the Company's direction, Residential Funding and
the Trustee shall, to the extent consistent with this Agreement, take such
reasonable actions as may be necessary to ensure that, if this Agreement were
determined to create a security interest in the Mortgage Loans, any
Uncertificated REMIC Regular Interests and the other property described

above, such security interest would be determined to be a perfected security
interest of first priority under applicable law and is maintained as
such throughout the term of this Agreement. Without limiting the generality
of the foregoing, the Company shall prepare and deliver to the Trustee not
less than 15 days prior to any filing date and, the Trustee shall forward for
filing, or shall cause to be forwarded for filing, at the expense of the
Company, all filings necessary to maintain the effectiveness of any original
filings necessary under the Uniform Commercial Code as in effect in any
jurisdiction to perfect the Trustee's security interest in or lien on the
Mortgage Loans and any Uncertificated REMIC Regular Interests, as evidenced
by an Officers' Certificate of the Company, including without limitation
(x) continuation statements, and (y) such other statements as may be
occasioned by (1) any change of name of Residential Funding, the Company or
the Trustee (such preparation and filing shall be at the expense of the
Trustee, if occasioned by a change in the Trustee's name), (2) any change of
location of the place of business or the chief executive office of
Residential Funding or the Company, (3) any transfer of any interest of
Residential Funding or the Company in any Mortgage Loan or (4) any transfer
of any interest of Residential Funding or the Company in any Uncertificated
REMIC Regular Interest.

(g) The Master Servicer hereby acknowledges the receipt by it of the
Initial Monthly Payment Fund. The Master Servicer shall include such Initial
Monthly Payment Fund in the Custodial Account and shall include the related
Initial Monthly Payment Fund in the Available Distribution Amount for the
Mortgage Loans or, with respect to any Mortgage Pool comprised of two or more
Loan Groups, the Mortgage Loans in each Loan Group, for the initial
Distribution Date. Notwithstanding anything herein to the contrary, the
Initial Monthly Payment Fund shall not be an asset of any REMIC. To the
extent that the Initial Monthly Payment Fund constitutes a reserve fund for
federal income tax purposes, (1) it shall be an outside reserve fund and not
an asset of any REMIC, (2) it shall be owned by the Seller and (3) amounts
transferred by any REMIC to the Initial Monthly Payment Fund shall be treated
as transferred to the Seller or any successor, all within the meaning of
Section 1.860G-2(h) of the Treasury Regulations.

(h) The Company agrees that the sale of each Pledged Asset Loan pursuant to
this Agreement will also constitute the assignment, sale, setting-over,
transfer and conveyance to the Trustee, without recourse (but subject to the
Company's covenants, representations and warranties specifically provided
herein), of all of the Company's obligations and all of the Company's right,
title and interest in, to and under, whether now existing or hereafter
acquired as owner of the Mortgage Loan with respect to all money, securities,
security entitlements, accounts, general intangibles, instruments, documents,
certificates of deposit, commodities contracts, and other investment property
and other property of whatever kind or description consisting of, arising
from or related to (i) the Assigned Contracts, (ii) all rights, powers and
remedies of the Company as owner of such Mortgage Loan under or in connection
with the Assigned Contracts, whether arising under the terms of such Assigned
Contracts, by statute, at law or in equity, or otherwise arising out of any
default by the Mortgagor under or in connection with the Assigned Contracts,
including all rights to exercise any election or option or to make any
decision or determination or to give or receive any notice, consent, approval
or waiver thereunder, (iii) all security interests in and lien of the Company
as owner of such Mortgage Loan in the Pledged Amounts and all money,
securities, security entitlements, accounts, general intangibles,
instruments, documents, certificates of deposit, commodities contracts, and
other investment property and other property of whatever kind or description
and all cash and non-cash proceeds of the sale, exchange, or redemption of,
and all stock or conversion rights, rights to subscribe, liquidation
dividends or preferences, stock dividends, rights to interest, dividends,
earnings, income, rents, issues, profits, interest payments or other
distributions of cash or other property that is credited to the Custodial
Account, (iv) all documents, books and records concerning the foregoing
(including all computer programs, tapes, disks and related items containing
any such information) and (v) all insurance proceeds (including proceeds from
the Federal Deposit Insurance Corporation or the Securities Investor
Protection Corporation or any other insurance company) of any of the
foregoing or replacements thereof or substitutions therefor, proceeds of
proceeds and the conversion, voluntary or involuntary, of any thereof. The
foregoing transfer, sale, assignment and conveyance does not constitute and
is not intended to result in the creation, or an assumption by the Trustee,
of any obligation of the Company, or any other person in connection with the
Pledged Assets or under any agreement or instrument relating thereto,
including any obligation to the Mortgagor, other than as owner of the
Mortgage Loan.

Section 2.02.    Acceptance by Trustee.

The Trustee acknowledges receipt (or, with respect to Mortgage Loans
subject to a Custodial Agreement, and based solely upon a receipt or
certification executed by the Custodian, receipt by the respective Custodian
as the duly appointed agent of the Trustee) of the documents referred to in
Section 2.01(b)(I)(i) and Section 2.01(b)(II)(i), (iii), (v), (vi) and
(viii) above (except that for purposes of such acknowledgment only, a
Mortgage Note may be endorsed in blank) and declares that it, or a Custodian
as its agent, holds and will hold such documents and the other documents
constituting a part of the Custodial Files delivered to it, or a Custodian as
its agent, and the rights of Residential Funding with respect to any Pledged
Assets, Additional Collateral and the Surety Bond assigned to the Trustee

pursuant to Section 2.01, in trust for the use and benefit of all present and
future Certificateholders. The Trustee or Custodian (as the Custodian is
obligated under a Custodial Agreement) agrees, for the benefit of
Certificateholders, to review each Custodial File delivered to it pursuant to
Section 2.01(b) within 45 days after the Closing Date to ascertain that all
required documents (specifically as set forth in Section 2.01(b)), have been
executed and received, and that such documents relate to the Mortgage Loans
identified on the Mortgage Loan Schedule, as supplemented, that have been
conveyed to it, and to deliver to the Trustee a certificate (the "Interim
Certification") to the effect that all documents required to be delivered
pursuant to Section 2.01(b) above have been executed and received and that
such documents relate to the Mortgage Loans identified on the Mortgage Loan
Schedule, except for any exceptions listed on Schedule A attached to such
Interim Certification. Upon delivery of the Custodial Files by the Company or
the Master Servicer, the Trustee shall acknowledge receipt (or, with respect
to Mortgage Loans subject to a Custodial Agreement, and based solely upon a
receipt or certification executed by the Custodian, receipt by the respective
Custodian as the duly appointed agent of the Trustee) of the documents
referred to in Section 2.01(c) above.

   If the Custodian, as the Trustee's agent, finds any document or
documents constituting a part of a Custodial File to be missing or defective,
the Trustee shall promptly so notify the Master Servicer and the Company.
Pursuant to Section 2.3 of the Custodial Agreement, the Custodian will notify
the Master Servicer, the Company and the Trustee of any such omission or
defect found by it in respect of any Custodial File held by it in respect of
the items reviewed by it pursuant to the Custodial Agreement. If such
omission or defect materially and adversely affects the interests of the
Certificateholders, the Master Servicer shall promptly notify Residential
Funding of such omission or defect and request that Residential Funding
correct or cure such omission or defect within 60 days from the date the
Master Servicer was notified of such omission or defect and, if Residential
Funding does not correct or cure such omission or defect within such period,
the Master Servicer shall require Residential Funding to purchase such
Mortgage Loan from the Trust Fund at its Purchase Price within 90 days from
the date the Master Servicer was notified of such omission or defect;
provided that if the omission or defect would cause the Mortgage Loan to be
other than a "qualified mortgage" as defined in Section 860G(a)(3) of the
Code, any such cure or repurchase must occur within 90 days from the date
such breach was discovered. The Purchase Price for any such Mortgage Loan
shall be deposited by the Master Servicer in the Custodial Account maintained
by it pursuant to Section 3.07 and, upon receipt by the Trustee of written
notification of such deposit signed by a Servicing Officer, the Master
Servicer, the Trustee or any Custodian, as the case may be, shall release the
contents of any related Mortgage File in its possession to the owner of such
Mortgage Loan (or such owner's designee) and the Trustee shall execute and
deliver such instruments of transfer or assignment prepared by the Master
Servicer, in each case without recourse, as shall be necessary to vest in
Residential Funding or its designee any Mortgage Loan released pursuant
hereto and thereafter such Mortgage Loan shall not be part of the Trust
Fund. It is understood and agreed that the obligation of Residential Funding
to so cure or purchase any Mortgage Loan as to which a material and adverse
defect in or omission of a constituent document exists shall constitute the
sole remedy respecting such defect or omission available to
Certificateholders or the Trustee on behalf of the Certificateholders.

Section 2.03.     Representations, Warranties and Covenants of the Master
                  Servicer and the Company.

(a)   The Master Servicer hereby represents and warrants to the Trustee for
the benefit of the Certificateholders that:

(i)   The Master Servicer is a limited liability company duly organized,
      validly existing and in good standing under the laws governing its
      creation and existence and is or will be in compliance with the laws of
      each state in which any Mortgaged Property is located to the extent
      necessary to ensure the enforceability of each Mortgage Loan in
      accordance with the terms of this Agreement;

(ii)  The execution and delivery of this Agreement by the Master Servicer and
      its performance and compliance with the terms of this Agreement will
      not violate the Master Servicer's Certificate of Formation or limited
      liability company agreement or constitute a material default (or an
      event which, with notice or lapse of time, or both, would constitute a
      material default) under, or result in the material breach of, any
      material contract, agreement or other instrument to which the Master
      Servicer is a party or which may be applicable to the Master Servicer
      or any of its assets;

(iii) This Agreement, assuming due authorization, execution and delivery by
      the Trustee and the Company, constitutes a valid, legal and binding
      obligation of the Master Servicer, enforceable against it in accordance
      with the terms hereof subject to applicable bankruptcy, insolvency,
      reorganization, moratorium and other laws affecting the enforcement of
      creditors' rights generally and to general principles of equity,
      regardless of whether such enforcement is considered in a proceeding in
      equity or at law;

(iv)  The Master Servicer is not in default with respect to any order or
      decree of any court or any order, regulation or demand of any federal,

state, municipal or governmental agency, which default might have
consequences that would materially and adversely affect the
(financial or other) or operations of the Master Servicer or its
properties or might have consequences that would materially adversely
affect its performance hereunder;

(v)    No litigation is pending or, to the best of the Master Servicer's
knowledge, threatened against the Master Servicer which would prohibit
its entering into this Agreement or performing its obligations under
this Agreement;

(vi)    The Master Servicer will comply in all material respects in the
performance of this Agreement with all reasonable rules and
requirements of each insurer under each Required Insurance Policy;

(vii)    No information, certificate of an officer, statement furnished in
writing or report delivered to the Company, any Affiliate of the
Company or the Trustee by the Master Servicer will, to the knowledge of
the Master Servicer, contain any untrue statement of a material fact or
omit a material fact necessary to make the information, certificate,
statement or report not misleading;

(viii)    The Master Servicer has examined each existing, and will examine
each new, Subservicing Agreement and is or will be familiar with the
terms thereof. The terms of each existing Subservicing Agreement and
each designated Subservicer are acceptable to the Master Servicer and
any new Subservicing Agreements will comply with the provisions of
Section 3.02; and

(ix)    The Master Servicer is a member of MERS in good standing, and will
comply in all material respects with the rules and procedures of MERS
in connection with the servicing of the Mortgage Loans that are
registered with MERS.

It is understood and agreed that the representations and warranties set
forth in this Section 2.03(a) shall survive delivery of the respective
Custodial Files to the Trustee or any Custodian.

Upon discovery by either the Company, the Master Servicer, the Trustee
or any Custodian of a breach of any representation or warranty set forth in
this Section 2.03(a) which materially and adversely affects the interests of
the Certificateholders in any Mortgage Loan, the party discovering such
breach shall give prompt written notice to the other parties (any Custodian
being so obligated under a Custodial Agreement). Within 90 days of its
discovery or its receipt of notice of such breach, the Master Servicer shall
either (i) cure such breach in all material respects or (ii) to the extent
that such breach is with respect to a Mortgage Loan or a related document,
purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in
the manner set forth in Section 2.02; provided that if the omission or defect
would cause the Mortgage Loan to be other than a "qualified mortgage" as
defined in Section 860G(a)(3) of the Code, any such cure or repurchase must
occur within 90 days from the date such breach was discovered. The obligation
of the Master Servicer to cure such breach or to so purchase such Mortgage
Loan shall constitute the sole remedy in respect of a breach of a
representation and warranty set forth in this Section 2.03(a) available to
the Certificateholders or the Trustee on behalf of the Certificateholders.

(b)    Representations and warranties relating to the Mortgage Loans are set
forth in Section 2.03(b) of the Series Supplement.

Section 2.04.    Representations and Warranties of Residential Funding.

The Company, as assignee of Residential Funding under the Assignment
Agreement, hereby assigns to the Trustee for the benefit of
Certificateholders all of its right, title and interest in respect of the
Assignment Agreement (to the extent assigned to the Company pursuant to the
Assignment Agreement) applicable to a Mortgage Loan. Insofar as the
Assignment Agreement relates to the representations and warranties made by
Residential Funding or the related Seller in respect of such Mortgage Loan
and any remedies provided thereunder for any breach of such representations
and warranties, such right, title and interest may be enforced by the Master
Servicer on behalf of the Trustee and the Certificateholders. Upon the
discovery by the Company, the Master Servicer, the Trustee or any Custodian
of a breach of any of the representations and warranties made in the
Assignment Agreement (which, for purposes hereof, will be deemed to include
any other cause giving rise to a repurchase obligation under the Assignment
Agreement) in respect of any Mortgage Loan which materially and adversely
affects the interests of the Certificateholders in such Mortgage Loan, the
party discovering such breach shall give prompt written notice to the other
parties (any Custodian being so obligated under a Custodial Agreement). The
Master Servicer shall promptly notify Residential Funding of such breach and
request that Residential Funding either (i) cure such breach in all material
respects within 90 days from the date the Master Servicer was notified of
such breach or (ii) purchase such Mortgage Loan from the Trust Fund at the
Purchase Price and in the manner set forth in Section 2.02; provided that
Residential Funding shall have the option to substitute a Qualified
Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution
occurs within two years following the Closing Date; provided that if the
breach would cause the Mortgage Loan to be other than a "qualified mortgage"
as defined in Section 860G(a)(3) of the Code, any such cure, repurchase or

substitution must occur within 90 days from the date the breach was
discovered. If the breach of representation and warranty that the
the obligation to repurchase or substitute a Mortgage Loan pursuant to
Section 4 of the Assignment Agreement was the representation and warranty set
forth in clause (xii) or (xxxviii) of Section 4 thereof, then the Master
Servicer shall request that Residential Funding pay to the Trust Fund,
concurrently with and in addition to the remedies provided in the preceding
sentence, an amount equal to any liability, penalty or expense that was
actually incurred and paid out of or on behalf of the Trust Fund, and that
directly resulted from such breach, or if incurred and paid by the Trust Fund
thereafter, concurrently with such payment. In the event that Residential
Funding elects to substitute a Qualified Substitute Mortgage Loan or Loans
for a Deleted Mortgage Loan pursuant to this Section 2.04, Residential
Funding shall deliver to the Trustee or the Custodian for the benefit of the
Certificateholders with respect to such Qualified Substitute Mortgage Loan or
Loans, the original Mortgage Note, the Mortgage, an Assignment of the
Mortgage in recordable form if required pursuant to Section 2.01, and such
other documents and agreements as are required by Section 2.01, with the
Mortgage Note endorsed as required by Section 2.01. No substitution will be
made in any calendar month after the Determination Date for such month.
Monthly Payments due with respect to Qualified Substitute Mortgage Loans in
the month of substitution shall not be part of the Trust Fund and will be
retained by the Master Servicer and remitted by the Master Servicer to
Residential Funding on the next succeeding Distribution Date. For the month
of substitution, distributions to the Certificateholders will include the
Monthly Payment due on a Deleted Mortgage Loan for such month and thereafter
Residential Funding shall be entitled to retain all amounts received in
respect of such Deleted Mortgage Loan. The Master Servicer shall amend or
cause to be amended the Mortgage Loan Schedule, and, if the Deleted Mortgage
Loan was a Discount Mortgage Loan, the Schedule of Discount Fractions, for
the benefit of the Certificateholders to reflect the removal of such Deleted
Mortgage Loan and the substitution of the Qualified Substitute Mortgage Loan
or Loans and the Master Servicer shall deliver the amended Mortgage Loan
Schedule, and, if the Deleted Mortgage Loan was a Discount Mortgage Loan, the
amended Schedule of Discount Fractions, to the Trustee. Upon such
substitution, the Qualified Substitute Mortgage Loan or Loans shall be
subject to the terms of this Agreement and the related Subservicing Agreement
in all respects, Residential Funding shall be deemed to have made the
representations and warranties with respect to the Qualified Substitute
Mortgage Loan contained in the related Assignment Agreement, and the Company
and the Master Servicer shall be deemed to have made with respect to any
Qualified Substitute Mortgage Loan or Loans, as of the date of substitution,
the covenants, representations and warranties set forth in this Section 2.04,
in Section 2.03 hereof and in Section 4 of the Assignment Agreement, and the
Master Servicer shall be obligated to repurchase or substitute for any
Qualified Substitute Mortgage Loan as to which a Repurchase Event (as defined
in the Assignment Agreement) has occurred pursuant to Section 4 of the
Assignment Agreement.

    In connection with the substitution of one or more Qualified Substitute
Mortgage Loans for one or more Deleted Mortgage Loans, the Master Servicer
will determine the amount (if any) by which the aggregate principal balance
of all such Qualified Substitute Mortgage Loans as of the date of
substitution is less than the aggregate Stated Principal Balance of all such
Deleted Mortgage Loans (in each case after application of the principal
portion of the Monthly Payments due in the month of substitution that are to
be distributed to the Certificateholders in the month of substitution).
Residential Funding shall deposit the amount of such shortfall into the
Custodial Account on the day of substitution, without any reimbursement
therefor. Residential Funding shall give notice in writing to the Trustee of
such event, which notice shall be accompanied by an Officers' Certificate as
to the calculation of such shortfall and (subject to Section 10.01(f)) by an
Opinion of Counsel to the effect that such substitution will not cause
(a) any federal tax to be imposed on the Trust Fund, including without
limitation, any federal tax imposed on "prohibited transactions" under
Section 860F(a)(1) of the Code or on "contributions after the startup date"
under Section 860G(d)(1) of the Code or (b) any portion of any REMIC to fail
to qualify as such at any time that any Certificate is outstanding.

    It is understood and agreed that the obligation of Residential Funding
to cure such breach or purchase or to substitute for, such Mortgage Loan as
to which such a breach has occurred and is continuing and to make any
additional payments required under the Assignment Agreement in connection
with a breach of the representation and warranty in clause (xii) or
(xxxviii) of Section 4 thereof shall constitute the sole remedy respecting
such breach available to the Certificateholders or the Trustee on behalf of
Certificateholders. If the Master Servicer is Residential Funding, then the
Trustee shall also have the right to give the notification and require the
purchase or substitution provided for in the second paragraph and in
the event of such a breach of a representation or warranty made by
Residential Funding in the Assignment Agreement. In connection with the
purchase of or substitution for any such Mortgage Loan by Residential
Funding, the Trustee shall assign to Residential Funding all of the Trustee's
right, title and interest in respect of the Assignment Agreement applicable
to such Mortgage Loan.

Section 2.05.    Execution and Authentication of Certificates/Issuance of
                 Certificates Evidencing Interests in REMIC I.

    As provided in Section 2.05 of the Series Supplement.