**EXECUTION COPY**

RESIDENTIAL ASSET SECURITIES CORPORATION,

Depositor,

RESIDENTIAL FUNDING COMPANY, LLC,

Master Servicer,

and

U.S. BANK NATIONAL ASSOCIATION

Trustee

POOLING AND SERVICING AGREEMENT

Dated as of February 1, 2007

Home Equity Mortgage Asset-Backed Pass-Through Certificates

Series 2007-EMX1

## TABLE OF CONTENTS

Page

**ARTICLE I DEFINITIONS** ............................................................................................ 5

    Section 1.01.    Definitions. ........................................................................... 5
    Section 1.02.    Determination of LIBOR. ..................................................... 55

**ARTICLE II CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF**
      **CERTIFICATES** ............................................................................................ 57

    Section 2.01.    Conveyance of Mortgage Loans. ........................................... 57
    Section 2.02.    Acceptance by Trustee. ......................................................... 60
    Section 2.03.    Representations, Warranties and Covenants of the Master Servicer
                 and the Depositor. ................................................................ 61
    Section 2.04.    Representations and Warranties of Sellers. ........................... 63
    Section 2.05.    Execution and Authentication of Certificates; Conveyance of
                 REMIC-I Regular Interests. ................................................. 65
    Section 2.06.    Purposes and Powers of the Trust. ........................................ 66
    Section 2.07.    Agreement Regarding Ability to Disclose. ............................ 66

**ARTICLE III ADMINISTRATION AND SERVICING OF MORTGAGE LOANS** ..................... 67

    Section 3.01.    Master Servicer to Act as Servicer. ....................................... 67
    Section 3.02.    Subservicing Agreements Between Master Servicer and
                 Subservicers; Enforcement of Subservicers' Obligations. ........... 69
    Section 3.03.    Successor Subservicers. ........................................................ 70
    Section 3.04.    Liability of the Master Servicer. ........................................... 70
    Section 3.05.    No Contractual Relationship Between Subservicer and Trustee or
                 Certificateholders. ............................................................... 71
    Section 3.06.    Assumption or Termination of Subservicing Agreements by Trustee. ......... 71
    Section 3.07.    Collection of Certain Mortgage Loan Payments; Deposits to
                 Custodial Account. ............................................................... 71
    Section 3.08.    Subservicing Accounts; Servicing Accounts. ......................... 74
    Section 3.09.    Access to Certain Documentation and Information Regarding the
                 Mortgage Loans. ................................................................. 75
    Section 3.10.    Permitted Withdrawals from the Custodial Account. ............... 75
    Section 3.11.    Maintenance of Primary Insurance Coverage. ....................... 77
    Section 3.12.    Maintenance of Fire Insurance and Omissions and Fidelity Coverage. ........ 77
    Section 3.13.    Enforcement of Due-on-Sale Clauses; Assumption and Modification
                 Agreements; Certain Assignments. ....................................... 78
    Section 3.14.    Realization Upon Defaulted Mortgage Loans. ....................... 80
    Section 3.15.    Trustee to Cooperate; Release of Custodial Files. ................. 82
    Section 3.16.    Servicing and Other Compensation; Compensating Interest. ....... 83
    Section 3.17.    Reports to the Trustee and the Depositor. ............................. 84
    Section 3.18.    Annual Statement as to Compliance and Servicing Assessment. ........ 85
    Section 3.19.    Annual Independent Public Accountants' Servicing Report. ......... 85
    Section 3.20.    Right of the Depositor in Respect of the Master Servicer. ......... 85
    Section 3.21.    [Reserved]. .......................................................................... 86
    Section 3.22.    Advance Facility. ................................................................. 86

## TABLE OF CONTENTS
(continued)

Page

**ARTICLE IV PAYMENTS TO CERTIFICATEHOLDERS** .................................................... 90

Section 4.01.    Certificate Account. ................................................................. 90
Section 4.02.    Distributions. ......................................................................... 90
Section 4.03.    Statements to Certificateholders; Statements to Rating Agencies;
                 Exchange Act Reporting. ....................................................... 93
Section 4.04.    Distribution of Reports to the Trustee and the Depositor; Advances
                 by the Master Servicer. .......................................................... 97
Section 4.05.    Allocation of Realized Losses. ............................................... 99
Section 4.06.    Reports of Foreclosures and Abandonment of Mortgaged Property. ........ 100
Section 4.07.    Optional Purchase of Defaulted Mortgage Loans. ....................... 100
Section 4.08.    [Reserved]. ............................................................................. 101
Section 4.09.    [Reserved]. ............................................................................. 101
Section 4.10.    Supplemental Interest Trust; Swap Agreement. ........................ 101
Section 4.11.    The Certificate Guaranty Insurance Policy. .............................. 103
Section 4.12.    Posted Collateral Account ..................................................... 104

**ARTICLE V THE CERTIFICATES** ......................................................................... 105

Section 5.01.    The Certificates. .................................................................... 105
Section 5.02.    Registration of Transfer and Exchange of Certificates. ............. 106
Section 5.03.    Mutilated, Destroyed, Lost or Stolen Certificates. .................... 111
Section 5.04.    Persons Deemed Owners. ...................................................... 111
Section 5.05.    Appointment of Paying Agent. ............................................... 111

**ARTICLE VI THE DEPOSITOR AND THE MASTER SERVICER** ................................ 113

Section 6.01.    Respective Liabilities of the Depositor and the Master Servicer. .............. 113
Section 6.02.    Merger or Consolidation of the Depositor or the Master Servicer;
                 Assignment of Rights and Delegation of Duties by Master Servicer. ........ 113
Section 6.03.    Limitation on Liability of the Depositor, the Master Servicer and
                 Others. ................................................................................... 114
Section 6.04.    Depositor and Master Servicer Not to Resign. .......................... 114

**ARTICLE VII DEFAULT** ...................................................................................... 116

Section 7.01.    Events of Default. .................................................................. 116
Section 7.02.    Trustee or Depositor to Act; Appointment of Successor. ............ 117
Section 7.03.    Notification to Certificateholders. ......................................... 119
Section 7.04.    Waiver of Events of Default. .................................................. 119
Section 7.05.    Servicing Trigger; Removal of Master Servicer. ....................... 119

**ARTICLE VIII CONCERNING THE TRUSTEE** ......................................................... 121

Section 8.01.    Duties of Trustee. .................................................................. 121
Section 8.02.    Certain Matters Affecting the Trustee. ................................... 123
Section 8.03.    Trustee Not Liable for Certificates or Mortgage Loans. ............. 124
Section 8.04.    Trustee May Own Certificates. .............................................. 124
Section 8.05.    Master Servicer to Pay Trustee's Fees and Expenses;
                 Indemnification. .................................................................... 124

## TABLE OF CONTENTS
(continued)

Page

Section 8.06.    Eligibility Requirements for Trustee. ........................................................ 125
Section 8.07.    Resignation and Removal of the Trustee. .................................................. 125
Section 8.08.    Successor Trustee. .................................................................................... 126
Section 8.09.    Merger or Consolidation of Trustee. ......................................................... 127
Section 8.10.    Appointment of Co-Trustee or Separate Trustee. ...................................... 127
Section 8.11.    Appointment of the Custodian. ................................................................. 128
Section 8.12.    Appointment of Office or Agency. ............................................................ 128
Section 8.13.    DTC Letter of Representations. ................................................................. 128
Section 8.14.    Swap Agreements. .................................................................................... 128

**ARTICLE IX TERMINATION** .................................................................................... 130

Section 9.01.    Termination Upon Purchase or Liquidation of All Mortgage Loans. ......... 130
Section 9.02.    Additional Termination Requirements. ..................................................... 133

**ARTICLE X REMIC PROVISIONS** ............................................................................ 134

Section 10.01.    REMIC Administration. .......................................................................... 134
Section 10.02.    Master Servicer, REMIC Administrator and Trustee Indemnification. ...... 137

**ARTICLE XI MISCELLANEOUS PROVISIONS** ......................................................... 138

Section 11.01.    Amendment. ............................................................................................ 138
Section 11.02.    Recordation of Agreement; Counterparts. ................................................ 140
Section 11.03.    Limitation on Rights of Certificateholders. .............................................. 140
Section 11.04.    Governing Law. ....................................................................................... 141
Section 11.05.    Notices. ................................................................................................... 141
Section 11.06.    Notices to Rating Agencies and the Certificate Insurer. ............................ 142
Section 11.07.    Severability of Provisions. ....................................................................... 142
Section 11.08.    Supplemental Provisions for Resecuritization. ......................................... 143
Section 11.09.    Third Party Beneficiary. .......................................................................... 143
Section 11.10.    Rights of the Certificate Insurer ............................................................... 143

**ARTICLE XII COMPLIANCE WITH REGULATION AB** ........................................... 144

Section 12.01.    Intent of Parties; Reasonableness. ............................................................ 144
Section 12.02.    Additional Representations and Warranties of the Trustee. ....................... 144
Section 12.03.    Information to be Provided by the Trustee. ............................................... 145
Section 12.04.    Report on Assessment of Compliance and Attestation. .............................. 145
Section 12.05.    Indemnification; Remedies. ..................................................................... 145

EXHIBIT A    FORM OF CLASS A CERTIFICATE .............................................................. A-1

EXHIBIT B    [RESERVED] ...................................................................................................... B-1

EXHIBIT C    FORM OF CLASS SB CERTIFICATE ............................................................... C-1

EXHIBIT D    FORM OF CLASS R CERTIFICATE .................................................................. D-1

EXHIBIT E    FORM OF CUSTODIAL AGREEMENT ............................................................. E-1

## TABLE OF CONTENTS
### (continued)

Page

| | | |
|---|---|---|
| EXHIBIT F-1 | GROUP I LOAN SCHEDULE | F-1 |
| EXHIBIT F-2 | GROUP II LOAN SCHEDULE | F-2 |
| EXHIBIT G | FORM OF REQUEST FOR RELEASE | G-1 |
| EXHIBIT H-1 | FORM OF TRANSFER AFFIDAVIT AND AGREEMENT | H-1-1 |
| EXHIBIT H-2 | FORM OF TRANSFEROR CERTIFICATE | H-2-1 |
| EXHIBIT I | FORM OF INVESTOR REPRESENTATION LETTER | I-1 |
| EXHIBIT J | FORM OF TRANSFEROR REPRESENTATION LETTER | J-1 |
| EXHIBIT K | TEXT OF AMENDMENT TO POOLING AND SERVICING AGREEMENT PURSUANT TO SECTION 11.01(E) FOR A LIMITED GUARANTY | K-1 |
| EXHIBIT L | FORM OF LIMITED GUARANTY | L-1 |
| EXHIBIT M | FORM OF LENDER CERTIFICATION FOR ASSIGNMENT OF MORTGAGE LOAN | M-1 |
| EXHIBIT N | FORM OF RULE 144A INVESTMENT REPRESENTATION | N-1 |
| EXHIBIT O | [RESERVED] | O-1 |
| EXHIBIT P | FORM OF ERISA LETTER | P-1 |
| EXHIBIT Q | FORM OF CLASS SB-A SWAP AGREEMENT | Q-1 |
| EXHIBIT R | ASSIGNMENT AGREEMENT | R-1 |
| EXHIBIT S | SERVICING CRITERIA | S-1 |
| EXHIBIT T-1 | FORM OF 10-K CERTIFICATION | T-1-1 |
| EXHIBIT T-2 | FORM OF BACK-UP CERTIFICATION | T-2-1 |
| EXHIBIT U | INFORMATION TO BE PROVIDED BY THE MASTER SERVICER TO THE RATING AGENCIES RELATING TO REPORTABLE MODIFIED MORTGAGE LOANS | U-1 |
| EXHIBIT V | CERTIFICATE GUARANTY INSURANCE POLICY | U-1 |

This Pooling and Servicing Agreement, effective as of February 1, 2007, among RESIDENTIAL ASSET SECURITIES CORPORATION, as the depositor (together with its permitted successors and assigns, the "Depositor"), RESIDENTIAL FUNDING COMPANY, LLC, as master servicer (together with its permitted successors and assigns, the "Master Servicer"), and U.S. BANK NATIONAL ASSOCIATION, a banking association organized under the laws of the United States, as trustee and supplemental interest trust trustee (together with its permitted successors and assigns, the "Trustee" and the "Supplemental Interest Trust Trustee," respectively).

## PRELIMINARY STATEMENT:

The Depositor intends to sell mortgage asset-backed pass-through certificates (collectively, the "Certificates"), to be issued hereunder in seven Classes, which in the aggregate will evidence the entire beneficial ownership interest in the Mortgage Loans (as defined herein) and certain other related assets.

## REMIC I

As provided herein, the REMIC Administrator will make an election to treat the segregated pool of assets consisting of the Mortgage Loans and certain other related assets (exclusive of the Supplemental Interest Trust Account, the Swap Agreement and the SB-A Swap Agreement) subject to this Agreement as a real estate mortgage investment conduit (a "REMIC") for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC I." Component I of the Class R Certificates will represent the sole Class of "residual interests" in REMIC I for purposes of the REMIC Provisions (as defined herein) under federal income tax law. The following table irrevocably sets forth the designation, remittance rate (the "Uncertificated REMIC I Pass-Through Rate") and initial Uncertificated Principal Balance for each of the "regular interests" in REMIC I (the "REMIC I Regular Interests"). The "latest possible maturity date" (determined solely for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii)) for each REMIC I Regular Interest shall be the Maturity Date. None of the REMIC I Regular Interests will be certificated.

| Designation | Uncertificated REMIC I Pass-Through Rate | Initial Uncertificated Principal Balance |
|---|---|---|
| I-1-A | Variable[1] | $ 8,816,250.440 |
| I-2-A | Variable[1] | $10,063,326.490 |
| I-3-A | Variable[1] | $11,261,846.965 |
| I-4-A | Variable[1] | $12,308,021.085 |
| I-5-A | Variable[1] | $13,149,518.170 |
| I-6-A | Variable[1] | $13,799,220.295 |
| I-7-A | Variable[1] | $13,250,837.850 |
| I-8-A | Variable[1] | $12,642,761.470 |
| I-9-A | Variable[1] | $12,058,856.110 |
| I-10-A | Variable[1] | $11,502,269.140 |
| I-11-A | Variable[1] | $10,971,709.350 |
| I-12-A | Variable[1] | $10,465,947.015 |
| I-13-A | Variable[1] | $ 9,983,810.995 |
| I-14-A | Variable[1] | $ 9,526,655.255 |
| I-15-A | Variable[1] | $ 9,104,937.495 |
| I-16-A | Variable[1] | $ 9,064,832.285 |
| I-17-A | Variable[1] | $17,505,133.585 |
| I-18-A | Variable[1] | $91,921,463.245 |
| I-19-A | Variable[1] | $10,537,350.260 |
| I-20-A | Variable[1] | $ 3,566,421.465 |
| I-21-A | Variable[1] | $ 3,129,069.105 |

| | | |
|---|---|---|
| I-22-A | Variable[1] | $ 2,368,254.440 |
| I-23-A | Variable[1] | $ 2,225,082.620 |
| I-24-A | Variable[1] | $ 2,117,195.725 |
| I-25-A | Variable[1] | $ 2,024,563.260 |
| I-26-A | Variable[1] | $ 1,936,282.160 |
| I-27-A | Variable[1] | $ 1,865,106.650 |
| I-28-A | Variable[1] | $ 1,830,385.510 |
| I-29-A | Variable[1] | $ 2,332,080.030 |
| I-30-A | Variable[1] | $    670,297.145 |
| I-31-A | Variable[1] | $    646,396.405 |
| I-32-A | Variable[1] | $    623,352.240 |
| I-33-A | Variable[1] | $    601,133.595 |
| I-34-A | Variable[1] | $    579,710.560 |
| I-35-A | Variable[1] | $    559,054.340 |
| I-36-A | Variable[1] | $    539,137.195 |
| I-37-A | Variable[1] | $    519,932.410 |
| I-38-A | Variable[1] | $    520,438.120 |
| I-39-A | Variable[1] | $    509,786.740 |
| I-40-A | Variable[1] | $ 5,547,502.135 |
| I-1-B | Variable[1] | $ 8,816,250.440 |
| I-2-B | Variable[1] | $10,063,326.490 |
| I-3-B | Variable[1] | $11,261,846.965 |
| I-4-B | Variable[1] | $12,308,021.085 |
| I-5-B | Variable[1] | $13,149,518.170 |
| I-6-B | Variable[1] | $13,799,220.295 |
| I-7-B | Variable[1] | $13,250,837.850 |
| I-8-B | Variable[1] | $12,642,761.470 |
| I-9-B | Variable[1] | $12,058,856.110 |
| I-10-B | Variable[1] | $11,502,269.140 |
| I-11-B | Variable[1] | $10,971,709.350 |
| I-12-B | Variable[1] | $10,465,947.015 |
| I-13-B | Variable[1] | $ 9,983,810.995 |
| I-14-B | Variable[1] | $ 9,526,655.255 |
| I-15-B | Variable[1] | $ 9,104,937.495 |
| I-16-B | Variable[1] | $ 9,064,832.285 |
| I-17-B | Variable[1] | $17,505,133.585 |
| I-18-B | Variable[1] | $91,921,463.245 |
| I-19-B | Variable[1] | $10,537,350.260 |
| I-20-B | Variable[1] | $ 3,566,421.465 |
| I-21-B | Variable[1] | $ 3,129,069.105 |
| I-22-B | Variable[1] | $ 2,368,254.440 |
| I-23-B | Variable[1] | $ 2,225,082.620 |
| I-24-B | Variable[1] | $ 2,117,195.725 |
| I-25-B | Variable[1] | $ 2,024,563.260 |
| I-26-B | Variable[1] | $ 1,936,282.160 |
| I-27-B | Variable[1] | $ 1,865,106.650 |
| I-28-B | Variable[1] | $ 1,830,385.510 |
| I-29-B | Variable[1] | $ 2,332,080.030 |
| I-30-B | Variable[1] | $    670,297.145 |
| I-31-B | Variable[1] | $    646,396.405 |
| I-32-B | Variable[1] | $    623,352.240 |

| | | | |
|---|---|---|---|
| I-33-B | Variable[1] | $ | 601,133.595 |
| I-34-B | Variable[1] | $ | 579,710.560 |
| I-35-B | Variable[1] | $ | 559,054.340 |
| I-36-B | Variable[1] | $ | 539,137.195 |
| I-37-B | Variable[1] | $ | 519,932.410 |
| I-38-B | Variable[1] | $ | 520,438.120 |
| I-39-B | Variable[1] | $ | 509,786.740 |
| I-40-B | Variable[1] | $ | 5,547,502.135 |
| I | Variable[1] | $ | 39,571.931 |
| II | Variable[1] | $ | 35,331.009 |
| A-I | Variable[1] | $ | 83,662,636.590 |

(1) Calculated as provided in the definition of Uncertificated REMIC I Pass-Through Rate.

## REMIC II

As provided herein, the REMIC Administrator will make an election to treat the segregated pool of assets consisting of the REMIC I Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC II." Component II of the Class R Certificates will represent the sole Class of "residual interests" in REMIC II for purposes of the REMIC Provisions (as defined herein) under federal income tax law.  The following table irrevocably sets forth the designation, remittance rate (the "Uncertificated REMIC II Pass Through Rate") and initial Uncertificated Principal Balance for each of the "regular interests" in REMIC II (the "REMIC II Regular Interests").  The "latest possible maturity date" (determined solely for purposes of satisfying Treasury regulation Section 1.860G-1(a)(4)(iii)) for each REMIC II Regular Interest shall be the Maturity Date. None of the REMIC II Regular Interests will be certificated.

| Designation | Uncertificated REMIC II Pass-Through Rate | Initial Uncertificated Principal Balance |
|---|---|---|
| LT1 | Variable[1] | $395,645,938.44 |
| LT2 | Variable[1] | $5,771.29 |
| LT3 | 0.00% | $33,800.64 |
| LT4 | Variable[1] | $33,800.64 |
| LT5 | Variable[1] | $353,244,614.16 |
| LT6 | Variable[1] | $5,188.96 |
| LT7 | 0.00% | $30,142.05 |
| LT8 | Variable[1] | $30,142.05 |
| LT-IO | Variable[1] | (2) |

(1) Calculated as provided in the definition of Uncertificated REMIC II Pass-Through Rate.
(2) REMIC II Regular Interest LT-IO will not have an Uncertificated Principal Balance but will accrue interest on its uncertificated notional amount calculated in accordance with the definition of "Uncertificated Notional Amount" herein.

## REMIC III

As provided herein, the REMIC Administrator will elect to treat the segregated pool of assets consisting of the REMIC II Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as REMIC III. Component III of the Class R Certificates will represent the sole Class of "residual interests" in REMIC III for purposes of the REMIC Provisions under federal income tax law. The following table irrevocably sets forth the designation, Pass Through Rate, aggregate Initial Certificate Principal Balance, certain features, month of Final Scheduled Distribution Date and initial ratings for each Class of Certificates comprising the interests representing "regular interests" in REMIC III. The "latest possible maturity date" (determined solely for purposes of satisfying Treasury Regulation Section 1.860G 1(a)(4)(iii)) for each of REMIC III Regular Interest shall be the Maturity Date.

| Designation | Type | Pass-Through Rate | Aggregate Initial Certificate Principal Balance | Features | Month of Final Scheduled Distribution Date | Ratings | |
|---|---|---|---|---|---|---|---|
| | | | | | | S&P | Moody's |
| Class A-I-1 | Regular(1) | Adjustable(2)(3) | $ 185,876,000 | Senior/Adjustable Rate | January 2033 | AAA | Aaa |
| Class A-I-2 | Regular(1) | Adjustable(2)(3) | $ 27,665,000 | Senior/Adjustable Rate | September 2034 | AAA | Aaa |
| Class A-I-3 | Regular(1) | Adjustable(2)(3) | $ 105,994,000 | Senior/Adjustable Rate | October 2036 | AAA | Aaa |
| Class A-I-4 | Regular(1) | Adjustable(2)(3) | $ 46,505,000 | Senior/Adjustable Rate | January 2037 | AAA | Aaa |
| Class A-II | Regular(1) | Adjustable (2)(3) | $ 326,812,000 | Senior/Adjustable Rate | January 2037 | AAA | Aaa |
| Class SB | Regular (4) | (4) | $ 56,177,398.23 | Subordinate | N/A | N/A | N/A |
| IO | Regular (5) | (6) | (7) | Interest Only | | N/A | N/A |

(1)  This Class of Certificates represents ownership of a REMIC III Regular Interest together with (i) certain rights to payments to be made from amounts received under the Swap Agreement which will be deemed made for federal income tax purposes outside of REMIC III by the holder of the Class SB Certificates as the owner of the Swap Agreement and (ii) the obligation to pay the Class IO Distribution Amount. Any amount distributed on this Class of Certificates on any Distribution Date in excess of the amount distributable on the related REMIC III Regular Interest on such Distribution Date shall be treated for federal income tax purposes as having been paid from the Supplemental Interest Trust Account and any amount distributable on such REMIC III Regular Interest on such Distribution Date in excess of the amount distributable on such Class of Certificates on such Distribution Date shall be treated as having been paid to the Supplemental Interest Trust Account, all pursuant to and as further provided in Section 4.10 hereof.

(2)  The REMIC III Regular Interests, ownership of which is represented by the Class A Certificates, will accrue interest at a per annum rate equal to LIBOR plus the applicable Margin, each subject to a payment cap as described in the definition of "Pass Through Rate" and the provisions for the payment of Basis Risk Shortfalls herein, which payments will not be part of the entitlement of the REMIC III Regular Interests related to such Certificates.

(3)  The Class A-I and Class A-II Certificates will also entitle their holders to certain payments from the Holder of the Class SB Certificates from amounts to which the related REMIC III Regular Interest is entitled and from amounts received under the Swap Agreement, which will not be a part of their ownership of the REMIC III Regular Interests.

(4)  The Class SB Certificates will accrue interest as described in the definition of Accrued Certificate Interest. The Class SB Certificates will not accrue interest on their Certificate Principal Balance. The Class SB Certificates will be comprised of four REMIC III Regular Interests, two principal only Regular Interests designated SB-PO-I and SB-PO-II and two interest only Regular Interests designated SB-IO-I and SB-IO-II, which will be entitled to distributions as set forth herein. The rights of the Holder of the Class SB Certificates to payments from the Swap Agreement shall be outside and apart from its rights under the REMIC III Regular Interests SB-IO-I, SB-IO-II, SB-PO-I and SB-PO-II.

(5)  REMIC III Regular Interest IO will be held as an asset of the Supplemental Interest Trust Account established by the Trustee and will be treated for federal income tax purposes as owned by the holder of the Class SB Certificates.

(6)  For federal income tax purposes, REMIC III Regular Interest IO will not have a Pass Through Rate, but will be entitled to 100% of the amounts distributed on REMIC II Regular Interest LT-IO.

(7)  For federal income tax purposes, REMIC III Regular Interest IO will not have an Uncertificated Principal Balance, but will have a notional amount equal to the Uncertificated Notional Amount of REMIC II Regular Interest LT-IO.

In consideration of the mutual agreements herein contained, the Depositor, the Master Servicer and the Trustee agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01.    Definitions.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Article.

Accrued Certificate Interest:  With respect to each Distribution Date and each Class of Class A Certificates, an amount equal to the interest accrued during the related Interest Accrual Period on the Certificate Principal Balance thereof immediately prior to such Distribution Date at the related Pass-Through Rate for that Distribution Date.

The amount of Accrued Certificate Interest on each Class of Certificates shall be reduced by the amount of Prepayment Interest Shortfalls on the related Mortgage Loans during the prior calendar month to the extent not covered by Compensating Interest pursuant to Section 3.16, and by Relief Act Shortfalls on the related Mortgage Loans during the related Due Period.  The portion of any Prepayment Interest Shortfalls or Relief Act Shortfalls allocated to the Class A Certificates will be based upon the related Senior Percentage of all such reductions with respect to the related Mortgage Loans, such reductions will be allocated among the related Class A Certificates, pro rata, on the basis of Accrued Certificate Interest payable on such Distribution Date absent such reductions.

Accrued Certificate Interest for any Distribution Date shall further be reduced by the interest portion of Realized Losses allocated to any Class of Certificates pursuant to Section 4.05.

Accrued Certificate Interest shall accrue on the basis of a 360-day year and the actual number of days in the related Interest Accrual Period.

With respect to each Distribution Date and the Class SB Certificates, interest accrued during the preceding Interest Accrual Period at the related Pass-Through Rate on the Uncertificated Notional Amount as specified in the definition of Pass-Through Rate, immediately prior to such Distribution Date, reduced by any interest shortfalls with respect to the Mortgage Loans, including Prepayment Interest Shortfalls to the extent not covered by Compensating Interest pursuant to Section 3.16 or by Excess Cash Flow pursuant to Section 4.02(c)(iv) and (v).  Accrued Certificate Interest on the Class SB Certificates shall accrue on the basis of a 360-day year and the actual number of days in the related Interest Accrual Period.

Adjusted Available Distribution Amount:  With respect to any Distribution Date, the Available Distribution Amount increased by the excess, if any, of the Net Swap Payment owed to the Swap Counterparty over the amount distributable on such Distribution Date in respect of REMIC III Regular Interest IO.

Adjusted Mortgage Rate:  With respect to any Mortgage Loan and any date of determination, the Mortgage Rate borne by the related Mortgage Note, less the rate at which the related Subservicing Fee accrues.

Adjusted Strip Rate: With respect to any Distribution Date, a per annum rate equal to the excess, if any, of the Uncertificated REMIC I Pass-Through Rate for REMIC I Regular Interest A-I over the weighted average of (v) with respect to REMIC I Regular Interests ending with the designation "B," the weighted average of the Uncertificated REMIC I Pass-Through Rates for such REMIC I Regular Interests, weighted on the basis of the Uncertificated Principal Balance of such REMIC I Regular Interests for each such Distribution Date, (w) with respect to REMIC I Regular Interest A-I, the Uncertificated REMIC I Pass-Through Rate for such REMIC I Regular Interest, (x) with respect to REMIC I Regular Interest I, the Uncertificated REMIC I Pass Through Rate for such REMIC I Regular Interest, (y) with respect to REMIC I Regular Interest II, the Uncertificated REMIC I Pass Through Rate for such REMIC I Regular Interest, and (z) with respect to REMIC I Regular Interests ending with the designation "A," for each Distribution Date listed below, the weighted average of the rates listed below for each such REMIC I Regular Interest listed below, weighted on the basis of the Uncertificated Principal Balance of each such REMIC I Regular Interest for each such Distribution Date:

| Distribution Date | REMIC I Regular Interest | Rate |
|---|---|---|
| 1 | I-1-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 2 | I-1-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 3 | I-1-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 4 | I-2-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A | Uncertificated REMIC I Pass-Through Rate |
| 5 | I-3-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A and I-2-A | Uncertificated REMIC I Pass-Through Rate |
| 6 | I-4-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-3-A | Uncertificated REMIC I Pass-Through Rate |
| 7 | I-5-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-4-A | Uncertificated REMIC I Pass-Through Rate |
| 8 | I-6-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-5-A | Uncertificated REMIC I Pass-Through Rate |
| 9 | I-7-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-6-A | Uncertificated REMIC I Pass-Through Rate |
| 10 | I-8-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-7-A | Uncertificated REMIC I Pass-Through Rate |
| 11 | I-9-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-8-A | Uncertificated REMIC I Pass-Through Rate |
| 12 | I-10-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-9-A | Uncertificated REMIC I Pass-Through Rate |
| 13 | I-11-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-10-A | Uncertificated REMIC I Pass-Through Rate |
| 14 | I-12-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-11-A | Uncertificated REMIC I Pass-Through Rate |
| 15 | I-13-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-12-A | Uncertificated REMIC I Pass-Through Rate |

| Distribution Date | REMIC I Regular Interest | Rate |
|---|---|---|
| 16 | I-14-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-13-A | Uncertificated REMIC I Pass-Through Rate |
| 17 | I-15-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-14-A | Uncertificated REMIC I Pass-Through Rate |
| 18 | I-16-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-15-A | Uncertificated REMIC I Pass-Through Rate |
| 19 | I-17-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-16-A | Uncertificated REMIC I Pass-Through Rate |
| 20 | I-18-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-17-A | Uncertificated REMIC I Pass-Through Rate |
| 21 | I-19-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-18-A | Uncertificated REMIC I Pass-Through Rate |
| 22 | I-20-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-19-A | Uncertificated REMIC I Pass-Through Rate |
| 23 | I-21-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-20-A | Uncertificated REMIC I Pass-Through Rate |
| 24 | I-22-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-21-A | Uncertificated REMIC I Pass-Through Rate |
| 25 | I-23-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-22-A | Uncertificated REMIC I Pass-Through Rate |
| 26 | I-24-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-23-A | Uncertificated REMIC I Pass-Through Rate |
| 27 | I-25-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-24-A | Uncertificated REMIC I Pass-Through Rate |
| 28 | I-26-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-25-A | Uncertificated REMIC I Pass-Through Rate |
| 29 | I-27-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-26-A | Uncertificated REMIC I Pass-Through Rate |
| 30 | I-28-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-27-A | Uncertificated REMIC I Pass-Through Rate |
| 31 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 32 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 33 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 34 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 35 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |

| Distribution Date | REMIC I Regular Interest | Rate |
|---|---|---|
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 36 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 37 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 38 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 39 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 40 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 41 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 42 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 43 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 44 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 45 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 46 | I-29-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 47 | I-30-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-29-A | Uncertificated REMIC I Pass-Through Rate |
| 48 | I-31-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-30-A | Uncertificated REMIC I Pass-Through Rate |
| 49 | I-32-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-31-A | Uncertificated REMIC I Pass-Through Rate |
| 50 | I-33-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-32-A | Uncertificated REMIC I Pass-Through Rate |
| 51 | I-34-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-33-A | Uncertificated REMIC I Pass-Through Rate |
| 52 | I-35-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-34-A | Uncertificated REMIC I Pass-Through Rate |
| 53 | I-36-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-35-A | Uncertificated REMIC I Pass-Through Rate |
| 54 | I-37-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-36-A | Uncertificated REMIC I Pass-Through Rate |

| Distribution Date | REMIC I Regular Interest | Rate |
|---|---|---|
| 55 | I-38-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-37-A | Uncertificated REMIC I Pass-Through Rate |
| 56 | I-39-A through I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-38-A | Uncertificated REMIC I Pass-Through Rate |
| 57 | I-40-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-1-A through I-39-A | Uncertificated REMIC I Pass-Through Rate |
| Thereafter | I-1-A through I-40-A | Uncertificated REMIC I Pass-Through Rate |

Adjustment Date:  With respect to each adjustable-rate Mortgage Loan, each date set forth in the related Mortgage Note on which an adjustment to the interest rate on such Mortgage Loan becomes effective.

Advance:  With respect to any Mortgage Loan, any advance made by the Master Servicer, pursuant to Section 4.04.

Affected Party:  As defined in the Swap Agreement.

Affiliate:  With respect to any Person, any other Person controlling, controlled by or under common control with such first Person.  For purposes of this definition, "control" means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Agreement:  This Pooling and Servicing Agreement and all amendments hereof and supplements hereto.

Amount Held for Future Distribution:  With respect to any Distribution Date, the total of the amounts held in the Custodial Account at the close of business on the preceding Determination Date on account of (i) Liquidation Proceeds, Subsequent Recoveries, Insurance Proceeds, REO Proceeds, Principal Prepayments, Mortgage Loan purchases made pursuant to Section 2.02, 2.03, 2.04 or 4.07 and Mortgage Loan substitutions made pursuant to Section 2.03 or 2.04 received or made in the month of such Distribution Date (other than such Liquidation Proceeds, Subsequent Recoveries, Insurance Proceeds, REO Proceeds and purchases of Mortgage Loans that the Master Servicer has deemed to have been received in the preceding month in accordance with Section 3.07(b)) and (ii) payments which represent early receipt of scheduled payments of principal and interest due on a date or dates subsequent to the Due Date in the related Due Period.

Appraised Value:  With respect to any Mortgaged Property, the lesser of (i) the appraised value of such Mortgaged Property based upon the appraisal made at the time of the origination of the related Mortgage Loan, and (ii) the sales price of the Mortgaged Property at such time of origination, except in the case of a Mortgaged Property securing a refinanced or modified Mortgage Loan as to which it is either the appraised value based upon the appraisal made at the time of origination of the loan which was refinanced or modified or the appraised value determined in an appraisal at the time of refinancing or modification, as the case may be.

Assignment:  An assignment of the Mortgage, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is

located to reflect of record the sale of the Mortgage Loan to the Trustee for the benefit of Certificateholders, which assignment, notice of transfer or equivalent instrument may be in the form of one or more blanket assignments covering Mortgages secured by Mortgaged Properties located in the same county, if permitted by law and accompanied by an Opinion of Counsel to that effect.

Assignment Agreement: The Assignment and Assumption Agreement, dated the Closing Date, between Residential Funding and the Depositor relating to the transfer and assignment of the Mortgage Loans, attached hereto as Exhibit R.

Available Distribution Amount: With respect to any Distribution Date, an amount equal to (a) the sum of (i) the amount relating to the Mortgage Loans on deposit in the Custodial Account as of the close of business on the immediately preceding Determination Date, including any Subsequent Recoveries, and amounts deposited in the Custodial Account in connection with the substitution of Qualified Substitute Mortgage Loans, (ii) the amount of any Advance made on the immediately preceding Certificate Account Deposit Date with respect to the Mortgage Loans, (iii) any amount deposited in the Certificate Account on the related Certificate Account Deposit Date pursuant to the second paragraph of Section 3.12(a) in respect of the Mortgage Loans, (iv) any amount that the Master Servicer is not permitted to withdraw from the Custodial Account pursuant to Section 3.16(e) in respect of the Mortgage Loans, (v) any amount deposited in the Certificate Account pursuant to Section 4.07 or 9.01 in respect of the Mortgage Loans and (vi) amounts on deposit in the Certificate Account in respect of an Insured Payment pursuant to Section 4.11(b) in accordance with the Certificate Guaranty Insurance Policy, reduced by (b) the sum as of the close of business on the immediately preceding Determination Date of (w) the Amount Held for Future Distribution with respect to the Mortgage Loans, (x) amounts permitted to be withdrawn by the Master Servicer from the Custodial Account in respect of the Mortgage Loans pursuant to clauses (ii)-(x), inclusive, of Section 3.10(a), (y) any Net Swap Payments required to be made to the Swap Counterparty and Swap Termination Payments not due to a Swap Counterparty Trigger Event for such Distribution Date and (z) the Certificate Insurer Premium payable.

Balloon Loan: Each of the Mortgage Loans having an original term to maturity that is shorter than the related amortization term.

Balloon Payment: With respect to any Balloon Loan, the related Monthly Payment payable on the stated maturity date of such Balloon Loan.

Bankruptcy Code: The Bankruptcy Code of 1978, as amended.

Basis Risk Shortfalls: Group I Basis Risk Shortfalls or Group II Basis Risk Shortfalls, as applicable.

Book-Entry Certificate: Any Certificate registered in the name of the Depository or its nominee.

Business Day: Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the State of California, the State of Minnesota, the State of Texas, the State of New York or the State of Illinois (and such other state or states in which the Custodial Account or the Certificate Account are at the time located) are required or authorized by law or executive order to be closed.

Calendar Quarter: A Calendar Quarter shall consist of one of the following time periods in any given year: January 1 through March 31, April 1 through June 30, July 1 through September 30, and October 1 through December 31.

Capitalization Reimbursement Amount: With respect to any Distribution Date, the amount of Advances or Servicing Advances that were added to the Stated Principal Balance of the Mortgage Loans during the prior calendar month and reimbursed to the Master Servicer or Subservicer on or prior to such Distribution Date pursuant to Section 3.10(a)(vii).

Cash Liquidation: With respect to any defaulted Mortgage Loan other than a Mortgage Loan as to which an REO Acquisition occurred, a determination by the Master Servicer that it has received all Insurance Proceeds, Liquidation Proceeds and other payments or cash recoveries which the Master Servicer reasonably and in good faith expects to be finally recoverable with respect to such Mortgage Loan.

Certificate: Any Class A Certificate, Class SB Certificate or Class R Certificate.

Certificate Account: The account or accounts created and maintained pursuant to Section 4.01, which shall be entitled "U.S. Bank National Association, as trustee, in trust for the registered holders of Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-EMX1 and Financial Guaranty Insurance Company" and which account shall be held for the benefit of the Certificateholders and the Certificate Insurer and which must be an Eligible Account. Any such account or accounts created and maintained subsequent to the Closing Date shall be subject to the approval of the Certificate Insurer, which approval shall not be unreasonably withheld.

Certificate Account Deposit Date: With respect to any Distribution Date, the Business Day prior thereto.

Certificate Guaranty Insurance Policy: The Financial Guaranty Insurance Policy, Policy No. 07030010, issued by the Certificate Insurer in respect of the Class A Certificates, a copy of which is attached hereto as Exhibit V.

Certificateholder or Holder: The Person in whose name a Certificate is registered in the Certificate Register, except that neither a Disqualified Organization nor a Non-United States Person shall be a holder of a Class R Certificate for any purpose hereof. Solely for the purpose of giving any consent or direction pursuant to this Agreement, any Certificate, other than a Class R Certificate, registered in the name of the Depositor, the Master Servicer or any Subservicer or any Affiliate thereof shall be deemed not to be outstanding and the Percentage Interest or Voting Rights evidenced thereby shall not be taken into account in determining whether the requisite amount of Percentage Interests or Voting Rights necessary to effect any such consent or direction has been obtained. All references herein to "Holders" or "Certificateholders" shall reflect the rights of Certificate Owners as they may indirectly exercise such rights through the Depository and participating members thereof, except as otherwise specified herein; *provided, however,* that the Trustee shall be required to recognize as a "Holder" or "Certificateholder" only the Person in whose name a Certificate is registered in the Certificate Register. Unless otherwise indicated in this Agreement, the Custodial Agreement or the Assignment Agreement, whenever reference is made to the actions taken by the Trustee on behalf of the Certificateholders, such reference to Certificateholders shall include the Certificate Insurer as long as there is no continuing Certificate Insurer Default.

Certificate Insurer: Financial Guaranty Insurance Company, a New York-domiciled stock insurance corporation or its successors in interest.

Certificate Insurer Account: An account of the Certificate Insurer maintained at JP Morgan Chase Bank (ABA No. 021000021), Account No. 904951812, Attention: Policy No. 07030010, or such

other account as may be designated by the Certificate Insurer to the Trustee in writing not less than five Business Days prior to the related Distribution Date.

Certificate Insurer Default: The existence and continuance of any of the following: (a) a failure by the Certificate Insurer to make a payment required under the Certificate Guaranty Insurance Policy in accordance with its terms; or (b)(i) the Certificate Insurer (A) files any petition or commences any case or proceeding under any provision or chapter of the Bankruptcy Code or any other similar federal or state law relating to insolvency, bankruptcy, rehabilitation, liquidation or reorganization, (B) makes a general assignment for the benefit of its creditors, or (C) has an order for relief entered against it under the Bankruptcy Code or any other similar federal or state law relating to insolvency, bankruptcy, rehabilitation, liquidation or reorganization which is final and nonappealable; or (ii) a court of competent jurisdiction, the New York insurance department or other competent regulatory authority enters a final and nonappealable order, judgment or decree (A) appointing a custodian, trustee, agent or receiver for the Certificate Insurer or for all or any material portion of its property or (B) authorizing the taking of possession by a custodian, trustee, agent or receiver of the Certificate Insurer (or the taking of possession of all or any material portion of the property of the Certificate Insurer).

Certificate Insurer Premium: The premium payable in accordance with the Certificate Guaranty Insurance Policy, which shall be payable in accordance with Section 4.02 in an amount equal to (i) on the first Distribution Date, an amount calculated by multiplying the Certificate Insurer Premium Rate converted to a daily rate by the aggregate initial Certificate Principal Balance of the Class A Certificates for the number of days from and including the Closing Date to but excluding the first Distribution Date, and (ii) for subsequent Distribution Dates, one twelfth of the product of (A) the Certificate Insurer Premium Rate and (B) the aggregate Certificate Principal Balance of the Class A Certificates on the previous Distribution Date (after giving effect to any distributions of principal to be made on such previous Distribution Date).

Certificate Insurer Premium Modified Rate: With respect to any Distribution Date, the Certificate Insurer Premium Rate for the Class A Certificates times a fraction equal to (x) the aggregate Certificate Principal Balance of the Class A Certificates as of such date over (y) the aggregate Stated Principal Balance of the Mortgage Loans as of such date.

Certificate Insurer Premium Rate: Shall mean 0.22% per annum.

Certificate Owner: With respect to a Book-Entry Certificate, the Person who is the beneficial owner of such Certificate, as reflected on the books of an indirect participating brokerage firm for which a Depository Participant acts as agent, if any, and otherwise on the books of a Depository Participant, if any, and otherwise on the books of the Depository.

Certificate Principal Balance: With respect to any Class A Certificate, on any date of determination, an amount equal to (i) the Initial Certificate Principal Balance of such Certificate as specified on the face thereof, minus (ii) the sum of (x) the aggregate of all amounts previously distributed with respect to such Certificate (or any predecessor Certificate) and applied to reduce the Certificate Principal Balance thereof (including such amounts paid pursuant to the Certificate Guaranty Insurance Policy) pursuant to Section 4.02(c) and (y) the aggregate of all reductions in Certificate Principal Balance deemed to have occurred in connection with Realized Losses which were previously allocated to such Certificate (or any predecessor Certificate) pursuant to Section 4.05 (other than any amounts included in an Insured Payment and paid pursuant to the Certificate Guaranty Insurance Policy); provided, that with respect to any Distribution Date, the Certificate Principal Balances of: (i) the Class A-I Certificates will be increased, in each case to the extent to which a Realized Loss was previously allocated thereto and remaining unreimbursed, by the Subsequent Recovery Allocation Amount for Loan Group I to the

Class A-I Certificates, pro rata, based on the amount of Realized Losses previously allocated thereto and remaining unreimbursed, and (ii) the Class A-II Certificates will be increased, in each case, to the extent of Realized Losses previously allocated thereto and remaining unreimbursed, by the Subsequent Recovery Allocation Amount for Loan Group II to the Class A-II Certificates.

With respect to any Class SB Certificate, on any date of determination, an amount equal to the Percentage Interest evidenced by such Certificate, multiplied by an amount equal to (i) the excess, if any, of (A) the then aggregate Stated Principal Balance of the Mortgage Loans over (B) the then aggregate Certificate Principal Balance of the Class A Certificates then outstanding, which represents the sum of (i) the aggregate initial principal balance of REMIC III Regular Interests SB-PO-I and SB-PO-II, as reduced by Realized Losses allocated thereto and payments deemed made thereon, and (ii) aggregate accrued and unpaid interest on REMIC III Regular Interests SB-IO-I and SB-IO-II, as reduced by Realized Losses allocated thereto. The Class R Certificates will not have a Certificate Principal Balance.

Certificate Register and Certificate Registrar: The register maintained and the registrar appointed pursuant to Section 5.02.

Class: Collectively, all of the Certificates or uncertificated interests bearing the same designation.

Class A Certificates: Collectively, the Class A-I-1 Certificates, Class A-I-2 Certificates, Class A-I-3 Certificates, Class A-I-4 Certificates and Class A-II Certificates.

Class A Interest Distribution Priority: With respect to each Class of Class A Certificates and any Distribution Date, the amount available for payment of Accrued Certificate Interest thereon for that Distribution Date plus Accrued Certificate Interest thereon remaining unpaid from any prior Distribution Date, in the amounts and priority as follows:

(i)     *first*, concurrently, to the Class A-I Certificates, pro rata, from the Class A-I Interest Remittance Amount, and to the Class A-II Certificates, from the Class A-II Interest Remittance Amount;

(ii)    *second*, to the Class A-I Certificates, pro rata, from the remaining Class A-II Interest Remittance Amount, or to the Class A-II Certificates, from the remaining Class A-I Interest Remittance Amount, as needed after taking into account any distributions in respect of interest on the Class A Certificates made in *first* above;

(iii)   *third*, concurrently, to the Class A-I Certificates, pro rata, from the Principal Remittance Amount related to Loan Group I, and to the Class A-II Certificates, from the Principal Remittance Amount related to Loan Group II, as needed after taking into account any distributions in respect of interest on the Class A Certificates made in *first* and *second* above; and

(iv)    *fourth*, to the Class A-I Certificates, pro rata, from the remaining Principal Remittance Amount related to Loan Group II, or to the Class A-II Certificates, from the remaining Principal Remittance Amount related to Loan Group I, as needed after taking into account any distributions in respect of interest on the Class A Certificates made in *first*, *second* and *third* above.

Class A-I-1 Certificate: Any one of the Class A-I-1 Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit A, senior to

the Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses in respect of Group I Loans as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC III for purposes of the REMIC Provisions, (ii) the right to receive payments under the Swap Agreement and the SB-A Swap Agreement and (iii) the obligation to pay the Class IO Distribution Amount.

Class A-I-1 Margin: 0.1000% per annum.

Class A-I-2 Certificate: Any one of the Class A-I-2 Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit A, senior to the Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses in respect of Group I Loans as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC III for purposes of the REMIC Provisions, (ii) the right to receive payments under the Swap Agreement and the SB-A Swap Agreement and (iii) the obligation to pay the Class IO Distribution Amount.

Class A-I-2 Margin: 0.1400% per annum.

Class A-I-3 Certificate: Any one of the Class A-I-3 Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit A, senior to the Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses in respect of Group I Loans as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC III for purposes of the REMIC Provisions, (ii) the right to receive payments under the Swap Agreement and the SB-A Swap Agreement and (iii) the obligation to pay the Class IO Distribution Amount.

Class A-I-3 Margin: Initially, 0.2000% per annum, and on any Distribution Date on and after the second Distribution Date after the first possible Optional Termination Date, 0.4000% per annum.

Class A-I-4 Certificate: Any one of the Class A-I-4 Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit A, senior to the Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses in respect of Group I Loans as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC III for purposes of the REMIC Provisions, (ii) the right to receive payments under the Swap Agreement and the SB-A Swap Agreement and (iii) the obligation to pay the Class IO Distribution Amount.

Class A-I-4 Margin: Initially, 0.3000% per annum, and on any Distribution Date on and after the second Distribution Date after the first possible Optional Termination Date, 0.6000% per annum.

Class A-I Certificates: Collectively, the Class A-I-1 Certificates, Class A-I-2 Certificates, Class A-I-3 Certificates and Class A-I-4 Certificates.

Class A-I Interest Remittance Amount: With respect to any Distribution Date, the portion of the Available Distribution Amount for that Distribution Date attributable to interest received or advanced with respect to the Group I Loans.

Class A-II Certificate: Any one of the Class A-II Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit A, senior to the Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses in respect of Group II Loans as set forth in Section 4.05, and evidencing (i) an interest

designated as a "regular interest" in REMIC III for purposes of the REMIC Provisions, (ii) the right to receive payments under the Swap Agreement and the SB-A Swap Agreement and (iii) the obligation to pay the Class IO Distribution Amount.

Class A-II Interest Remittance Amount:  With respect to any Distribution Date, the portion of the Available Distribution Amount for that Distribution Date attributable to interest received or advanced with respect to the Group II Loans.

Class A-II Margin:  Initially, 0.2075% per annum, and on any Distribution Date on and after the second Distribution Date after the first possible Optional Termination Date, 0.4150% per annum.

Class R Certificate:  Any one of the Class R Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit D and evidencing an interest designated as a "residual interest" in the REMICs for purposes of the REMIC Provisions. Component I of the Class R Certificates is designated as the sole class of "residual interest" in REMIC I, Component II of the Class R Certificates is designated as the sole class of "residual interest" in REMIC II, and Component III of the Class R Certificates is designated as the sole class of "residual interest" in REMIC III.

Class SB Certificate:  Any one of the Class SB Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit C, subordinate to the Class A Certificates with respect to distributions and the allocation of Realized Losses as set forth in Section 4.05, and evidencing an interest comprised of "regular interests" in REMIC III together with certain rights to payments under the Swap Agreements for purposes of the REMIC Provisions.

Closing Date:  March 12, 2007.

Code:  The Internal Revenue Code of 1986.

Commission:  The Securities and Exchange Commission.

Compensating Interest:  With respect to any Distribution Date, any amount paid by the Master Servicer in accordance with Section 3.16(f).

Corporate Trust Office:  The principal office of the Trustee at which at any particular time its corporate trust business with respect to this Agreement shall be administered, which office at the date of the execution of this instrument is located at U.S. Bank National Association, EP-MN-WS3D, 60 Livingston Avenue, St. Paul, Minnesota 55107, Attn: Structured Finance/RASC 2007-EMX1.

Credit Repository:  Equifax, Transunion and Experian, or their successors in interest.

Cumulative Insurance Payments:  As of any time of determination, the aggregate amount of all Insured Payments previously paid by the Certificate Insurer under the Certificate Guaranty Insurance Policy minus (a) the aggregate of all payments previously made to the Certificate Insurer pursuant to Sections 4.02(c)(iii) hereof as reimbursement for such Insured Payments, plus (b) interest thereon from the date such amounts became due until paid in full, at a rate of interest equal to the rate set forth in the Insurance Agreement.

Curtailment:  Any Principal Prepayment made by a Mortgagor which is not a Principal Prepayment in Full.

Custodial Account:  The custodial account or accounts created and maintained pursuant to Section 3.07 in the name of a depository institution, as custodian for the holders of the Certificates, for the holders of certain other interests in mortgage loans serviced or sold by the Master Servicer and for the Master Servicer, into which the amounts set forth in Section 3.07 shall be deposited directly.  Any such account or accounts shall be an Eligible Account.

Custodial Agreement:  An agreement that may be entered into among the Depositor, the Master Servicer, the Trustee and a Custodian in substantially the form of Exhibit E hereto.

Custodial File:  Any mortgage loan document in the Mortgage File that is required to be delivered to the Trustee or the Custodian pursuant to Section 2.01(b) of this Agreement.

Custodian:  Wells Fargo Bank, N.A., or any successor custodian appointed pursuant to a Custodial Agreement and reasonably acceptable to the Certificate Insurer.

Cut-off Date:  February 1, 2006.

Cut-off Date Balance:  $749,029,398.23.

Cut-off Date Principal Balance:  With respect to any Mortgage Loan, the unpaid principal balance thereof at the Cut-off Date after giving effect to all installments of principal due on or prior thereto (or due in the month of the Cut-off Date), whether or not received.

Debt Service Reduction:  With respect to any Mortgage Loan, a reduction in the scheduled Monthly Payment for such Mortgage Loan by a court of competent jurisdiction in a proceeding under the Bankruptcy Code, except such a reduction constituting a Deficient Valuation or any reduction that results in a permanent forgiveness of principal.

Defaulting Party:  As defined in the Swap Agreement.

Deficiency Amount:  As defined in the Certificate Guaranty Insurance Policy.

Deficient Valuation:  With respect to any Mortgage Loan, a valuation by a court of competent jurisdiction of the Mortgaged Property in an amount less than the then outstanding indebtedness under the Mortgage Loan, or any reduction in the amount of principal to be paid in connection with any scheduled Monthly Payment that constitutes a permanent forgiveness of principal, which valuation or reduction results from a proceeding under the Bankruptcy Code.

Definitive Certificate:  Any definitive, fully registered Certificate.

Deleted Mortgage Loan:  A Mortgage Loan replaced or to be replaced with a Qualified Substitute Mortgage Loan.

Delinquent:  As used herein, a Mortgage Loan is considered to be: "30 to 59 days" or "30 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the next following monthly scheduled due date; "60 to 89 days" or "60 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the second following monthly scheduled due date; and so on.  The determination as to whether a Mortgage Loan falls into these categories is made as of the close of business on the last business day of each month.  For example, a Mortgage Loan with a payment due on July 1 that remained unpaid as of the close of business on August 31 would then be considered to be 30 to 59 days delinquent.  Delinquency

information as of the Cut-off Date is determined and prepared as of the close of business on the last business day immediately prior to the Cut-off Date.

Depositor: As defined in the preamble hereto.

Depository: The Depository Trust Company, or any successor Depository hereafter named. The nominee of the initial Depository for purposes of registering those Certificates that are to be Book-Entry Certificates is Cede & Co. The Depository shall at all times be a "clearing corporation" as defined in Section 8-102(a)(5) of the Uniform Commercial Code of the State of New York and a "clearing agency" registered pursuant to the provisions of Section 17A of the Exchange Act.

Depository Participant: A broker, dealer, bank or other financial institution or other Person for whom from time to time a Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Derivative Contract: Any ISDA Master Agreement, together with the related Schedule and Confirmation, entered into by the Trustee and a Derivative Counterparty in accordance with Section 4.09.

Derivative Counterparty: Any counterparty to a Derivative Contract as provided in Section 4.09.

Destroyed Mortgage Note: A Mortgage Note the original of which was permanently lost or destroyed and has not been replaced.

Determination Date: With respect to any Distribution Date, the 20th day (or if such 20th day is not a Business Day, the Business Day immediately following such 20th day) of the month of the related Distribution Date.

Disqualified Organization: Any organization defined as a "disqualified organization" under Section 860E(e)(5) of the Code, including, if not otherwise included, any of the following: (i) the United States, any State or political subdivision thereof, any possession of the United States, or any agency or instrumentality of any of the foregoing (other than an instrumentality which is a corporation if all of its activities are subject to tax and, except for Freddie Mac, a majority of its board of directors is not selected by such governmental unit), (ii) a foreign government, any international organization, or any agency or instrumentality of any of the foregoing, (iii) any organization (other than certain farmers' cooperatives described in Section 521 of the Code) which is exempt from the tax imposed by Chapter 1 of the Code (including the tax imposed by Section 511 of the Code on unrelated business taxable income) and (iv) rural electric and telephone cooperatives described in Section 1381(a)(2)(C) of the Code. A Disqualified Organization also includes any "electing large partnership," as defined in Section 775(a) of the Code and any other Person so designated by the Trustee based upon an Opinion of Counsel that the holding of an Ownership Interest in a Class R Certificate by such Person may cause any REMIC or any Person having an Ownership Interest in any Class of Certificates (other than such Person) to incur a liability for any federal tax imposed under the Code that would not otherwise be imposed but for the Transfer of an Ownership Interest in a Class R Certificate to such Person. The terms "United States," "State" and "international organization" shall have the meanings set forth in Section 7701 of the Code or successor provisions.

Distribution Date: The 25th day of any month beginning in March 2007 or, if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

DTC Letter: The Letter of Representations, dated March 9, 2007, among the Trustee, on behalf of the Trust Fund, U.S. Bank National Association, in its individual capacity as agent thereunder and the Depository.

Due Date: With respect to any Distribution Date and any Mortgage Loan, the day during the related Due Period on which the Monthly Payment is due.

Due Period: With respect to any Distribution Date, the calendar month of such Distribution Date.

Early Termination Date: Shall have the meaning set forth in the Swap Agreement.

Eligible Account: An account that is any of the following: (i) maintained with a depository institution the debt obligations of which have been rated by each Rating Agency in its highest rating available, or (ii) an account or accounts in a depository institution in which such accounts are fully insured to the limits established by the FDIC, provided that any deposits not so insured shall, to the extent acceptable to each Rating Agency, as evidenced in writing, be maintained such that (as evidenced by an Opinion of Counsel delivered to the Trustee and each Rating Agency) the registered Holders of Certificates have a claim with respect to the funds in such account or a perfected first security interest against any collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained, or (iii) in the case of the Custodial Account, a trust account or accounts maintained in the corporate trust department of U.S. Bank National Association, or (iv) in the case of the Certificate Account, a trust account or accounts maintained in the corporate trust department of U.S. Bank National Association, or (v) an account or accounts of a depository institution acceptable to each Rating Agency (as evidenced in writing by each Rating Agency that use of any such account as the Custodial Account or the Certificate Account will not reduce the rating assigned to any Class of Certificates by such Rating Agency below the then-current rating assigned to such Certificates by such Rating Agency, in each case, without regard to the Certificate Guaranty Insurance Policy).

Eligible Master Servicing Compensation: With respect to any Distribution Date and each Loan Group, the lesser of (a) one-twelfth of 0.125% of the Stated Principal Balance of the related Mortgage Loans immediately preceding such Distribution Date and (b) the sum of the Servicing Fee and all income and gain on amounts held in the Custodial Account and the Certificate Account and payable to the Certificateholders with respect to such Distribution Date, in each case with respect to the related Loan Group; *provided* that for purposes of this definition the amount of the Servicing Fee will not be reduced pursuant to Section 7.02(a) except as may be required pursuant to the last sentence of such Section.

ERISA: The Employee Retirement Income Security Act of 1974, as amended.

Event of Default: As defined in Section 7.01.

Excess Cash Flow: With respect to any Distribution Date, an amount equal to the sum of (A) the excess of (i) the Available Distribution Amount for that Distribution Date over (ii) the sum of (a) the Interest Distribution Amount for that Distribution Date and (b) the lesser of (1) the aggregate Certificate Principal Balance of Class A Certificates immediately prior to such Distribution Date and (2) the Principal Remittance Amount for that Distribution Date to the extent not applied to pay interest on the Class A Certificates on such Distribution Date, (B) the Overcollateralization Reduction Amount, if any, for that Distribution Date and (C) any Net Swap Payments received by the Supplemental Interest Trust Trustee under the Swap Agreement for that Distribution Date and deposited in the Supplemental Interest Trust Account pursuant to Section 4.10(c).

Excess Overcollateralization Amount:  With respect to any Distribution Date, the excess, if any, of (a) the Overcollateralization Amount on such Distribution Date over (b) the Required Overcollateralization Amount for such Distribution Date.

Exchange Act:  The Securities Exchange Act of 1934, as amended.

Expense Fee Rate:  With respect to any Mortgage Loan as of any date of determination, the sum of the applicable Servicing Fee Rate and the per annum rate at which the applicable Subservicing Fee accrues.

Fannie Mae:  Fannie Mae, a federally chartered and privately owned corporation organized and existing under the Federal National Mortgage Association Charter Act, or any successor thereto.

FDIC:  Federal Deposit Insurance Corporation or any successor thereto.

Final Distribution Date:  The Distribution Date on which the final distribution in respect of the Certificates will be made pursuant to Section 9.01, which Final Distribution Date shall in no event be later than the end of the 90-day liquidation period described in Section 9.02.

Final Scheduled Distribution Date:  Solely for purposes of the face of the Certificates, as follows: with respect to the Class A-I-1 Certificates, the Distribution Date occurring in January 2033; with respect to the Class A-I-2 Certificates, the Distribution Date occurring in September 2034; with respect to the Class A-I-3 Certificates, the Distribution Date occurring in October 2036; and with respect to the Class A-I-4 Certificates and Class A-II Certificates, the Distribution Date occurring in January 2037.  No event of default under this Agreement will arise or become applicable solely by reason of the failure to retire the entire Certificate Principal Balance of any Class of Class A Certificates on or before its Final Scheduled Distribution Date.

Fitch:  Fitch Ratings, or its successors in interest.

Fixed Swap Payment:  With respect to each Distribution Date commencing with the Distribution Date in May 2007 and ending with the Distribution Date in November 2011, an amount equal to the product of (x) a fixed rate equal to approximately 5.065% per annum, (y) the Swap Agreement Notional Balance for that Distribution Date and (z) a fraction, the numerator of which is 30, and the denominator of which is 360.  As described in the Swap Agreement, the fixed rate payer period end dates are not adjusted in accordance with the business day convention.

Floating Swap Payment:  With respect to each Distribution Date commencing with the Distribution Date in May 2007 and ending with the distribution date in November 2011, an amount equal to the product of (x) Swap LIBOR, (y) the Swap Agreement Notional Balance for that Distribution Date and (z) a fraction, the numerator of which is equal to the number of days in the related calculation period as provided in the Swap Agreement and the denominator of which is 360.  As described in the Swap Agreement, the floating rate payer period end dates are adjusted in accordance with the business day convention.

Foreclosure Profits:  With respect to any Distribution Date or related Determination Date and any Mortgage Loan, the excess, if any, of Liquidation Proceeds, Insurance Proceeds and REO Proceeds (net of all amounts reimbursable therefrom pursuant to Section 3.10(a)(ii)) in respect of each Mortgage Loan or REO Property for which a Cash Liquidation or REO Disposition occurred in the related Prepayment Period over the sum of the unpaid principal balance of such Mortgage Loan or REO Property (determined, in the case of an REO Disposition, in accordance with Section 3.14) plus accrued and unpaid

interest at the Mortgage Rate on such unpaid principal balance from the Due Date to which interest was last paid by the Mortgagor to the first day of the month following the month in which such Cash Liquidation or REO Disposition occurred.

Form 10-K Certification: As defined in Section 4.03(f)(i).

Freddie Mac: Freddie Mac, a corporate instrumentality of the United States created and existing under Title III of the Emergency Home Finance Act of 1970, as amended, or any successor thereto.

Group I Basis Risk Shortfall: With respect to any Class of Class A-I Certificates and any Distribution Date, an amount equal to the excess of (x) Accrued Certificate Interest for that Class calculated at a per annum rate (which shall not exceed 14.000% per annum) equal to LIBOR plus the related Margin for that Distribution Date over (y)Accrued Certificate Interest for that Class if the Pass-Through Rate for that Distribution Date is calculated using the Group I Net WAC Cap Rate for that Distribution Date; plus any unpaid Group I Basis Risk Shortfall from prior Distribution Dates, plus interest thereon to the extent previously unreimbursed by Excess Cash Flow calculated at a per annum rate (which shall not exceed 14.000% per annum) equal to LIBOR plus the related Margin for that Distribution Date.

Group I Loans: The Mortgage Loans designated on the Mortgage Loan Schedule attached hereto as Exhibit F-1. The Group I Loans relate to the Class A-I Certificates and Class SB Certificates.

Group I Net WAC Cap Rate: With respect to any Distribution Date, a per annum rate equal to (i) the product of (a) the weighted average of the Net Mortgage Rates (or, if applicable, the Modified Net Mortgage Rates) on the Group I Loans using the Net Mortgage Rates (or, if applicable, the Modified Net Mortgage Rates) in effect for the Monthly Payments due on such Mortgage Loans during the related Due Period, weighted on the basis of the respective Stated Principal Balances thereof for that Distribution Date and (b) a fraction equal to 30 divided by the actual number of days in the related Interest Accrual Period, minus (ii) the product of (a) a fraction expressed as a percentage the numerator of which is the amount of any Net Swap Payments or Swap Termination Payment not due to a Swap Counterparty Trigger Event owed to the Swap Counterparty as of such Distribution Date and the denominator of which is the aggregate Stated Principal Balance of the mortgage loans as of such Distribution Date, and (b) a fraction expressed as a percentage, the numerator of which is 360 and the denominator of which is the actual number of days in the related Interest Accrual Period, minus (iii) the product of (a) the premium rate for the Certificate Guaranty Insurance Policy due to the Certificate Insurer, (b) a fraction expressed as a percentage the numerator of which is the aggregate Certificate Principal Balance of the Class A-I Certificates as of such Distribution Date and the denominator of which is the aggregate Stated Principal Balance of the Group I Loans as of such distribution date (in each case prior to distributions of principal to be made for such Distribution Date) and (c) a fraction expressed as a percentage, the numerator of which is 30 and the denominator of which is the actual number of days in the related Interest Accrual Period.

Group I Principal Distribution Amount: For any Distribution Date, the product of (x) the Principal Distribution Amount for that Distribution Date and (y) a fraction, the numerator of which is the portion of the Principal Allocation Amount related to Loan Group I for that Distribution Date and the denominator of which is the Principal Allocation Amount for all of the Mortgage Loans for that Distribution Date.

Group I REMIC II Net WAC Rate: With respect to any Distribution Date, a per annum rate equal to the weighted average of the Net Mortgage Rates on the Group I Loans reduced by the Adjusted Strip Rate.

Group II Basis Risk Shortfall:  With respect to any Class of Class A-II Certificates and any Distribution Date, an amount equal to the excess of (x) Accrued Certificate Interest for that Class calculated at a per annum rate (which shall not exceed 14.000% per annum) equal to LIBOR plus the related Margin for that Distribution Date over (y) Accrued Certificate Interest for that Class if the Pass-Through Rate for such Distribution Date is calculated using the Group II Net WAC Cap Rate for that Distribution Date; plus any unpaid Group II Basis Risk Shortfall from prior Distribution Dates, plus interest thereon to the extent previously unreimbursed by Excess Cash Flow calculated at a per annum rate (which shall not exceed 14.000% per annum) equal to LIBOR plus the related Margin for that Distribution Date.

Group II Loans:  The Mortgage Loans designated on the Mortgage Loan Schedule attached hereto as Exhibit F-2. The Group II Loans relate to the Class A-II Certificates and Class SB Certificates.

Group II Net WAC Cap Rate:  With respect to any Distribution Date, a per annum rate equal to (i) the product of (a) the weighted average of the Net Mortgage Rates (or, if applicable, the Modified Net Mortgage Rates) on the Group II Loans using the Net Mortgage Rates (or, if applicable, the Modified Net Mortgage Rates) in effect for the Monthly Payments due on such Mortgage Loans during the related Due Period, weighted on the basis of the respective Stated Principal Balances thereof for that Distribution Date and (b) a fraction equal to 30 divided by the actual number of days in the related Interest Accrual Period, minus (ii) the product of (a) a fraction expressed as a percentage the numerator of which is the amount of any Net Swap Payments or Swap Termination Payment not due to a Swap Counterparty Trigger Event owed to the Swap Counterparty as of such Distribution Date and the denominator of which is the aggregate Stated Principal Balance of the mortgage loans as of such Distribution Date, and (b) a fraction expressed as a percentage, the numerator of which is 360 and the denominator of which is the actual number of days in the related Interest Accrual Period, minus (iii) the product of (a) the premium rate for the Certificate Guaranty Insurance Policy due to the Certificate Insurer, (b) a fraction expressed as a percentage the numerator of which is the amount of Certificate Principal Balance of the Class A-II Certificates as of such Distribution Date and the denominator of which is the aggregate Stated Principal Balance of the Group II Loans as of such Distribution Date (in each case prior to distributions of principal to be made for such Distribution Date) and (c) a fraction expressed as a percentage, the numerator of which is 30 and the denominator of which is the actual number of days in the related Interest Accrual Period.

Group II Principal Distribution Amount:  For any Distribution Date, the product of (x) the Principal Distribution Amount for that Distribution Date and (y) a fraction, the numerator of which is the portion of the Principal Allocation Amount related to Loan Group II for that Distribution Date and the denominator of which is the Principal Allocation Amount for all of the Mortgage Loans for that Distribution Date.

Group II REMIC II Net WAC Rate:  With respect to any Distribution Date, a per annum rate equal to the weighted average of the Net Mortgage Rates on the Group II Loans reduced by the Adjusted Strip Rate.

HUD:  The United States Department of Housing and Urban Development.

Independent:  When used with respect to any specified Person, means such a Person who (i) is in fact independent of the Depositor, the Master Servicer and the Trustee, or any Affiliate thereof, (ii) does not have any direct financial interest or any material indirect financial interest in the Depositor, the Master Servicer or the Trustee or in an Affiliate thereof, and (iii) is not connected with the Depositor, the Master Servicer or the Trustee as an officer, employee, promoter, underwriter, trustee, partner, director or person performing similar functions.

Index:  With respect to any adjustable-rate Mortgage Loan and as to any Adjustment Date
therefor, the related index as stated in the related Mortgage Note.

Initial Certificate Principal Balance:  With respect to each Class of Certificates (other than the
Class R Certificates), the Certificate Principal Balance of such Class of Certificates as of the Closing Date
as set forth in the Preliminary Statement hereto.

Insurance Account:  The account or accounts created and maintained pursuant to Section 4.11,
which shall be entitled "U.S. Bank National Association, as trustee, in trust for the registered holders of
Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through
Certificates, Series 2007-EMX1," and which must be an Eligible Account.

Insurance Agreement:  The Insurance and Indemnity Agreement, dated as of March 12, 2007,
among the Certificate Insurer, the Trustee, the Sponsor and Master Servicer and the Depositor.

Insurance Proceeds:  Proceeds paid in respect of the Mortgage Loans pursuant to any Primary
Insurance Policy or any other related insurance policy covering a Mortgage Loan, to the extent such
proceeds are payable to the mortgagee under the Mortgage, any Subservicer, the Master Servicer or the
Trustee and are not applied to the restoration of the related Mortgaged Property or released to the
Mortgagor in accordance with the procedures that the Master Servicer would follow in servicing
mortgage loans held for its own account.

Insured Payment:  As defined in the Certificate Guaranty Insurance Policy.

Interest Accrual Period:  With respect to the Distribution Date in March 2007, the period
commencing the Closing Date and ending on the day preceding the Distribution Date in March 2007, and
with respect to any Distribution Date after the Distribution Date in March 2007, the period commencing
on the Distribution Date in the month immediately preceding the month in which such Distribution Date
occurs and ending on the day preceding such Distribution Date.

Interest Distribution Amount:  For any Distribution Date, the amounts payable pursuant to
Section 4.02(c)(i).

Interim Certification:  As defined in Section 2.02.

Late Collections:  With respect to any Mortgage Loan, all amounts received during any Due
Period, whether as late payments of Monthly Payments or as Insurance Proceeds, Liquidation Proceeds or
otherwise, which represent late payments or collections of Monthly Payments due but delinquent for a
previous Due Period and not previously recovered.

LIBOR:  With respect to any Distribution Date, the arithmetic mean of the London interbank
offered rate quotations for one-month U.S. Dollar deposits, expressed on a per annum basis, determined
in accordance with Section1.02.

LIBOR Business Day:  Any day other than (i) a Saturday or Sunday or (ii) a day on which
banking institutions in London, England are required or authorized by law to be closed.

LIBOR Certificates:  The Class A Certificates.

LIBOR Rate Adjustment Date:  With respect to each Distribution Date, the second LIBOR
Business Day immediately preceding the commencement of the related Interest Accrual Period.

Liquidation Proceeds:  Amounts (other than Insurance Proceeds) received by the Master Servicer in connection with the taking of an entire Mortgaged Property by exercise of the power of eminent domain or condemnation or in connection with the liquidation of a defaulted Mortgage Loan through trustee's sale, foreclosure sale or otherwise, other than REO Proceeds and Subsequent Recoveries.

Loan Group:  Loan Group I or Loan Group II, as applicable.

Loan Group I:  The Mortgage Loans designated on the Mortgage Loan Schedule attached hereto as Exhibit F-1.

Loan Group II:  The Mortgage Loans designated on the Mortgage Loan Schedule attached hereto as Exhibit F-2.

Loan-to-Value Ratio:  As of any date, the fraction, expressed as a percentage, the numerator of which is the current principal balance of the related Mortgage Loan at the date of determination and the denominator of which is the Appraised Value of the related Mortgaged Property.

Margin:  The Class A-I-1 Margin, Class A-I-2 Margin, Class A-I-3 Margin, Class A-I-4 Margin or Class A-II Margin, as applicable.

Marker Rate:  With respect to the Class SB Certificates or REMIC III Regular Interest SB-IO-I and any Distribution Date, in relation to REMIC II Regular Interests LT1, LT2, LT3 and LT4, a per annum rate equal to two (2) times the weighted average of the Uncertificated REMIC II Pass-Through Rates for REMIC II Regular Interest LT2 and REMIC II Regular Interest LT3.  With respect to the Class SB Certificates or REMIC III Regular Interest SB-IO-II and any Distribution Date, in relation to REMIC II Regular Interests LT5, LT6, LT7 and LT8, a per annum rate equal to two (2) times the weighted average of the Uncertificated REMIC II Pass-Through Rates for REMIC II Regular Interest LT6 and REMIC II Regular Interest LT7.

Master Servicer:  As defined in the preamble hereto.

Maturity Date:  With respect to each Class of Certificates representing ownership of Regular Interests or Uncertificated Regular Interest issued by each of REMIC I, REMIC II and REMIC III the latest possible maturity date, solely for purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations, by which the Certificate Principal Balance of each such Class of Certificates representing a regular interest in the Trust Fund would be reduced to zero, which is, for each such regular interest, January 25, 2037, which is the Distribution Date occurring in the month following the last scheduled monthly payment of the Mortgage Loans.

Maximum Mortgage Rate:  With respect to any adjustable-rate Mortgage Loan, the per annum rate indicated on the Mortgage Loan Schedule as the "NOTE CEILING," which rate is the maximum interest rate that may be applicable to such Mortgage Loan at any time during the life of such Mortgage Loan.

MERS:  Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

MERS® System:  The system of recording transfers of Mortgages electronically maintained by MERS.

MIN: The Mortgage Identification Number for Mortgage Loans registered with MERS on the MERS® System.

Minimum Mortgage Rate: With respect to any adjustable-rate Mortgage Loan, a per annum rate equal to the greater of (i) the Note Margin and (ii) the rate indicated on the Mortgage Loan Schedule as the "NOTE FLOOR," which rate may be applicable to such Mortgage Loan at any time during the life of such Mortgage Loan.

Modified Mortgage Loan: Any Mortgage Loan that has been the subject of a Servicing Modification.

Modified Net Mortgage Rate: With respect to any Mortgage Loan that is the subject of a Servicing Modification, the Net Mortgage Rate minus the rate per annum by which the Mortgage Rate on such Mortgage Loan was reduced.

MOM Loan: With respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.

Monthly Payment: With respect to any Mortgage Loan (including any REO Property) and the Due Date in any Due Period, the payment of principal and interest due thereon in accordance with the amortization schedule at the time applicable thereto (after adjustment, if any, for Curtailments and for Deficient Valuations occurring prior to such Due Date but before any adjustment to such amortization schedule by reason of any bankruptcy, other than a Deficient Valuation, or similar proceeding or any moratorium or similar waiver or grace period and before any Servicing Modification that constitutes a reduction of the interest rate on such Mortgage Loan).

Moody's: Moody's Investors Service, Inc., or its successors in interest.

Mortgage: With respect to each Mortgage Note, the mortgage, deed of trust or other comparable instrument creating a first or junior lien on an estate in fee simple or leasehold interest in real property securing a Mortgage Note.

Mortgage File: The mortgage documents listed in Section 2.01 pertaining to a particular Mortgage Loan and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

Mortgage Loans: Such of the mortgage loans transferred and assigned to the Trustee pursuant to Section 2.01 as from time to time are held or deemed to be held as a part of the Trust Fund, the Mortgage Loans originally so held being identified in the initial Mortgage Loan Schedule, and Qualified Substitute Mortgage Loans held or deemed held as part of the Trust Fund including, without limitation, each related Mortgage Note, Mortgage and Mortgage File and all rights appertaining thereto.

Mortgage Loan Schedule: The lists of the Mortgage Loans attached hereto as Exhibit F-1 and Exhibit F-2 (as amended from time to time to reflect the addition of Qualified Substitute Mortgage Loans), which lists shall set forth at a minimum the following information as to each Mortgage Loan:

(i)     the Mortgage Loan identifying number ("RFC LOAN #");

(ii)    [reserved];

(iii)   the maturity of the Mortgage Note ("MATURITY DATE," or "MATURITY DT");

(iv)   for the adjustable-rate Mortgage Loans, the Mortgage Rate as of origination ("ORIG RATE");

(v)    the Mortgage Rate as of the Cut-off Date ("CURR RATE");

(vi)   the Net Mortgage Rate as of the Cut-off Date ("CURR NET");

(vii)  the scheduled monthly payment of principal, if any, and interest as of the Cut-off Date ("ORIGINAL P & I" or "CURRENT P & I");

(viii) the Cut-off Date Principal Balance ("PRINCIPAL BAL");

(ix)   the Loan-to-Value Ratio at origination ("LTV");

(x)    a code "T," "BT" or "CT" under the column "LN FEATURE," indicating that the Mortgage Loan is secured by a second or vacation residence (the absence of any such code means the Mortgage Loan is secured by a primary residence);

(xi)   a code "N" under the column "OCCP CODE," indicating that the Mortgage Loan is secured by a non-owner occupied residence (the absence of any such code means the Mortgage Loan is secured by an owner occupied residence);

(xii)  for the adjustable-rate Mortgage Loans, the Maximum Mortgage Rate ("NOTE CEILING");

(xiii) for the adjustable-rate Mortgage Loans, the maximum Net Mortgage Rate ("NET CEILING");

(xiv)  for the adjustable-rate Mortgage Loans, the Note Margin ("NOTE MARGIN");

(xv)   for the adjustable-rate Mortgage Loans, the first Adjustment Date after the Cut-off Date ("NXT INT CHG DT");

(xvi)  for the adjustable-rate Mortgage Loans, the Periodic Cap ("PERIODIC DECR" or "PERIODIC INCR");

(xvii) [reserved]; and

(xviii)for the adjustable-rate Mortgage Loans, the rounding of the semi-annual or annual adjustment to the Mortgage Rate ("NOTE METHOD").

Such schedules may consist of multiple reports that collectively set forth all of the information required.

Mortgage Note:  The originally executed note or other evidence of indebtedness evidencing the indebtedness of a Mortgagor under a Mortgage Loan, together with any modification thereto.

Mortgage Rate:  With respect to any Mortgage Loan, the interest rate borne by the related Mortgage Note, or any modification thereto other than a Servicing Modification. The Mortgage Rate on the adjustable-rate Mortgage Loans will adjust on each Adjustment Date to equal the sum (rounded to the nearest multiple of one-eighth of one percent (0.125%) or up to the nearest one-eighth of one percent,

which are indicated by a "U" on the Mortgage Loan Schedule, except in the case of the adjustable-rate
Mortgage Loans indicated by an "X" on the Mortgage Loan Schedule under the heading "NOTE
METHOD"), of the related Index plus the Note Margin, in each case subject to the applicable Periodic
Cap, Maximum Mortgage Rate and Minimum Mortgage Rate.

Mortgaged Property:  The underlying real property securing a Mortgage Loan.

Mortgagor:  The obligor on a Mortgage Note.

Net Mortgage Rate:  With respect to any Mortgage Loan as of any date of determination, a per
annum rate equal to the Mortgage Rate for such Mortgage Loan as of such date minus the related Expense
Fee Rate.

Net Swap Payment:  With respect to each Distribution Date, the net payment required to be made
pursuant to the terms of the Swap Agreement by either the Swap Counterparty or the Supplemental
Interest Trust Trustee, on behalf of the Supplemental Interest Trust, which net payment shall not take into
account any Swap Termination Payment.

Net WAC Cap Rate:  The Group I Net WAC Cap Rate or Group II Net WAC Cap Rate, as
applicable.

Non-United States Person:  Any Person other than a United States Person.

Nonrecoverable Advance:  Any Advance previously made or proposed to be made by the Master
Servicer or Subservicer in respect of a Mortgage Loan (other than a Deleted Mortgage Loan) which, in
the good faith judgment of the Master Servicer, will not, or, in the case of a proposed Advance, would
not, be ultimately recoverable by the Master Servicer from related Late Collections, Insurance Proceeds,
Liquidation Proceeds or REO Proceeds.  To the extent that any Mortgagor is not obligated under the
related Mortgage documents to pay or reimburse any portion of any Servicing Advances that are
outstanding with respect to the related Mortgage Loan as a result of a modification of such Mortgage
Loan by the Master Servicer, which forgives amounts which the Master Servicer or Subservicer had
previously advanced, and the Master Servicer determines that no other source of payment or
reimbursement for such advances is available to it, such Servicing Advances shall be deemed to be
Nonrecoverable Advances.  The determination by the Master Servicer that it has made a Nonrecoverable
Advance shall be evidenced by a certificate of a Servicing Officer, Responsible Officer or Vice President
or its equivalent or senior officer of the Master Servicer, delivered to the Depositor, the Trustee, the
Certificate Insurer and the Master Servicer setting forth such determination, which shall include any other
information or reports obtained by the Master Servicer such as property operating statements, rent rolls,
property inspection reports and engineering reports, which may support such determinations.
Notwithstanding the above, the Trustee shall be entitled to rely upon any determination by the Master
Servicer that any Advance previously made is a Nonrecoverable Advance or that any proposed Advance,
if made, would constitute a Nonrecoverable Advance.

Nonsubserviced Mortgage Loan:  Any Mortgage Loan that, at the time of reference thereto, is not
subject to a Subservicing Agreement.

Note Margin:  With respect to each adjustable-rate Mortgage Loan, the fixed percentage set forth
in the related Mortgage Note and indicated on the Mortgage Loan Schedule as the "NOTE MARGIN,"
which percentage is added to the Index on each Adjustment Date to determine (subject to rounding in
accordance with the related Mortgage Note, the Periodic Cap, the Maximum Mortgage Rate and the

Minimum Mortgage Rate) the interest rate to be borne by such adjustable-rate Mortgage Loan until the next Adjustment Date.

Notice:  A Notice of Nonpayment and Demand for Insured Payment, a form of which is attached as Exhibit A to the Certificate Guaranty Insurance Policy.

Notional Amount:  With respect to the Class SB Certificates, immediately prior to any Distribution Date, the aggregate of the Uncertificated Principal Balances of the REMIC I I Regular Interests.  With respect to REMIC III Regular Interest SB-IO-I, immediately prior to any Distribution Date, the aggregate of the Uncertificated Principal Balances of REMIC II Regular Interests LT1, LT2, LT3 and LT4.  With respect to REMIC III Regular Interest SB-IO-II, immediately prior to any Distribution Date, the aggregate of the Uncertificated Principal Balances of REMIC II Regular Interests LT5, LT6, LT7 and LT8.

Officers' Certificate:  A certificate signed by the Chairman of the Board, the President, a Vice President, Assistant Vice President, Director, Managing Director, the Treasurer, the Secretary, an Assistant Treasurer or an Assistant Secretary of the Depositor or the Master Servicer, as the case may be, and delivered to the Trustee, as required by this Agreement.

Opinion of Counsel:  A written opinion of counsel acceptable to the Trustee and the Master Servicer and which counsel may be counsel for the Depositor or the Master Servicer, *provided* that any Opinion of Counsel (i) referred to in the definition of "Disqualified Organization" or (ii) relating to the qualification of any REMIC hereunder as a REMIC or compliance with the REMIC Provisions must, unless otherwise specified, be an opinion of Independent counsel.

Optional Termination Date:  Any Distribution Date on or after which the Stated Principal Balance (after giving effect to distributions to be made on such Distribution Date) of the Mortgage Loans is less than 10.00% of the Cut-off Date Balance.

Outstanding Mortgage Loan:  With respect to the Due Date in any Due Period, a Mortgage Loan (including an REO Property) that was not the subject of a Principal Prepayment in Full, Cash Liquidation or REO Disposition and that was not purchased, deleted or substituted for prior to such Due Date pursuant to Section 2.02, 2.03, 2.04 or 4.07.

Overcollateralization Amount:  With respect to any Distribution Date, the excess, if any, of (a) the aggregate Stated Principal Balance of the Mortgage Loans before giving effect to distributions of principal to be made on such Distribution Date over (b) the aggregate Certificate Principal Balance of the Class A Certificates immediately prior to such date.

Overcollateralization Floor:  An amount equal to the product of 2.00% and the Cut-off Date Balance.

Overcollateralization Increase Amount:  With respect to any Distribution Date, the lesser of (a) Excess Cash Flow for that Distribution Date (to the extent not used to cover the amounts described in clauses (iv) and (v) of the definition of Principal Distribution Amount as of such Distribution Date) and (b) the excess of (1) the Required Overcollateralization Amount for such Distribution Date over (2) the Overcollateralization Amount for such Distribution Date.

Overcollateralization Reduction Amount:  With respect to any Distribution Date on which the Excess Overcollateralization Amount is, after taking into account all other distributions to be made on such Distribution Date, greater than zero, the Overcollateralization Reduction Amount shall be equal to

the lesser of (i) the Excess Overcollateralization Amount for that Distribution Date and (ii) the Principal Remittance Amount on such Distribution Date.

Ownership Interest: With respect to any Certificate, any ownership or security interest in such Certificate, including any interest in such Certificate as the Holder thereof and any other interest therein, whether direct or indirect, legal or beneficial, as owner or as pledgee.

Pass-Through Rate: With respect to each Class of Class A Certificates and any Distribution Date, the least of (i) a per annum rate equal to LIBOR plus the related Margin for such Distribution Date, (ii) 14.000% per annum and (iii) the related Net WAC Cap Rate for such Distribution Date.

With respect to the Class SB Certificates and any Distribution Date, a per annum rate equal to the percentage equivalent of a fraction, the numerator of which is the sum of the amounts calculated pursuant to clauses (i) through (vi) below, and the denominator of which is the aggregate principal balance of the REMIC II Regular Interests. For purposes of calculating the Pass-Through Rate for the Class SB Certificates, the numerator is equal to the sum of the following components:

(i)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT1 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT1;

(ii)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT2 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT2;

(iii)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT4 minus twice the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT4;

(iv)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT5 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT5;

(v)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT6 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT6; and

(vi)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT8 minus twice the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT8.

With respect to REMIC III Regular Interest SB-IO-I and any Distribution Date, a per annum rate equal to the percentage equivalent of a fraction, the numerator of which is the sum of the amounts calculated pursuant to clauses (i) through (iii) below, and the denominator of which is the aggregate principal balance of REMIC II Regular Interests LT1, LT2, LT3 and LT4. For purposes of calculating the Pass-Through Rate for REMIC III Regular Interest SB-IO-I, the numerator is equal to the sum of the following components:

(i)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT1 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT1;

(ii)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT2 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT2; and

(iii)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT4 minus twice the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT4;

With respect to REMIC III Regular Interest SB-IO-II and any Distribution Date, a per annum rate equal to the percentage equivalent of a fraction, the numerator of which is the sum of the amounts calculated pursuant to clauses (i) through (iii) below, and the denominator of which is the aggregate principal balance of REMIC II Regular Interests LT5, LT6, LT7 and LT8. For purposes of calculating the Pass-Through Rate for REMIC III Regular Interest SB-IO-II, the numerator is equal to the sum of the following components:

(i)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT5 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT5;

(ii)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT6 minus the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT6; and

(iii)      the Uncertificated Pass-Through Rate for REMIC II Regular Interest LT8 minus twice the related Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC II Regular Interest LT8.

Paying Agent:  U.S. Bank National Association or any successor Paying Agent appointed by the Trustee.

Percentage Interest:  With respect to any Class A Certificate, the undivided percentage ownership interest in the related Class evidenced by such Certificate, which percentage ownership interest shall be equal to the Initial Certificate Principal Balance thereof divided by the aggregate Initial Certificate Principal Balance of all of the Certificates of the same Class. The Percentage Interest with respect to a Class SB Certificate or Class R Certificate shall be stated on the face thereof.

Periodic Cap:  With respect to each adjustable-rate Mortgage Loan, the periodic rate cap that limits the increase or the decrease of the related Mortgage Rate on any Adjustment Date pursuant to the terms of the related Mortgage Note.

Permitted Investments:  One or more of the following:

(i)      obligations of or guaranteed as to principal and interest by the United States or any agency or instrumentality thereof when such obligations are backed by the full faith and credit of the United States;

(ii)      repurchase agreements on obligations specified in clause (i) maturing not more than one month from the date of acquisition thereof, provided that the unsecured obligations of the party agreeing to repurchase such obligations are at the time rated by each Rating Agency in its highest short-term rating available;

(iii)    federal funds, certificates of deposit, demand deposits, time deposits and bankers' acceptances (which shall each have an original maturity of not more than 90 days and, in the case of bankers' acceptances, shall in no event have an original maturity of more than 365 days or a remaining maturity of more than 30 days) denominated in United States dollars of any U.S. depository institution or trust company incorporated under the laws of the United States or any state thereof or of any domestic branch of a foreign depository institution or trust company; provided that the debt obligations of such depository institution or trust company at the date of acquisition thereof have been rated by each Rating Agency in its highest short-term rating available; and, provided further that, if the original maturity of such short-term obligations of a domestic branch of a foreign depository institution or trust company shall exceed 30 days, the short-term rating of such institution shall be A-1+ in the case of Standard & Poor's if Standard & Poor's is a Rating Agency;

(iv)    commercial paper and demand notes (having original maturities of not more than 365 days) of any corporation incorporated under the laws of the United States or any state thereof which on the date of acquisition has been rated by each Rating Agency in its highest short term rating available; provided that such commercial paper and demand notes shall have a remaining maturity of not more than 30 days;

(v)    a money market fund or a qualified investment fund rated by each Rating Agency in its highest long-term rating available (which may be managed by the Trustee or one of its Affiliates); and

(vi)    other obligations or securities that are acceptable to each Rating Agency and the Certficate Insurer as a Permitted Investment hereunder and will not reduce the rating assigned to any Class of Certificates by such Rating Agency below the then-current rating (without regard to the Certificate Guaranty Insurance Policy) assigned to such Certificates by such Rating Agency, as evidenced in writing;

*provided, however,* that no instrument shall be a Permitted Investment if it represents, either (1) the right to receive only interest payments with respect to the underlying debt instrument or (2) the right to receive both principal and interest payments derived from obligations underlying such instrument and the principal and interest payments with respect to such instrument provide a yield to maturity greater than 120% of the yield to maturity at par of such underlying obligations. References herein to the highest rating available on unsecured long-term debt shall mean AAA in the case of Standard & Poor's and Aaa in the case of Moody's, and for purposes of this Agreement, any references herein to the highest rating available on unsecured commercial paper and short-term debt obligations shall mean the following: A-1 in the case of Standard & Poor's and P-1 in the case of Moody's; provided, however, that any Permitted Investment that is a short-term debt obligation rated A-1 by Standard & Poor's must satisfy the following additional conditions: (i) the total amount of debt from A-1 issuers must be limited to the investment of monthly principal and interest payments (assuming fully amortizing collateral); (ii) the total amount of A-1 investments must not represent more than 20% of the aggregate outstanding Certificate Principal Balance of the Certificates and each investment must not mature beyond 30 days; (iii)the terms of the debt must have a predetermined fixed dollar amount of principal due at maturity that cannot vary; and (iv) if the investments may be liquidated prior to their maturity or are being relied on to meet a certain yield, interest must be tied to a single interest rate index plus a single fixed spread (if any) and must move proportionally with that index. Any Permitted Investment may be purchased by or through the Trustee or its Affiliates.

Permitted Transferee:  Any Transferee of a Class R Certificate, other than a Disqualified Organization or Non-United States Person.

Person:  Any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Posted Collateral Account:  The separate account created and maintained by the Supplemental Interest Trust Trustee, on behalf of the Supplemental Interest Trust, pursuant to Section 4.12.

Preference Amount:  As defined in the Certificate Guaranty Insurance Policy.

Prepayment Assumption:  With respect to the Class A Certificates, the prepayment assumption to be used for determining the accrual of original issue discount and premium and market discount on such Certificates for federal income tax purposes, which (a) with respect to the fixed-rate Mortgage Loans, assumes a constant prepayment rate of one-tenth of 23% per annum of the then outstanding Stated Principal Balance of the fixed-rate Mortgage Loans in the first month of the life of such Mortgage Loans and an additional one-tenth of 23% per annum in each month thereafter until the tenth month, and beginning in the tenth month and in each month thereafter during the life of the fixed-rate Mortgage Loans, a constant prepayment rate of 23% per annum each month ("23% HEP") and (b) with respect to the adjustable-rate Mortgage Loans assumes a prepayment assumption of 2% of the constant prepayment rate in month one, increasing by approximately 2.545% from month 2 until month 12, a constant prepayment rate of 30% from month 12 to month 22, a constant prepayment rate of 50% from month 23 to month 27, and a constant prepayment rate of 35% thereafter, used for determining the accrual of original issue discount and premium and market discount on the Class A Certificates for federal income tax purposes.  The constant prepayment rate assumes that the stated percentage of the outstanding Stated Principal Balance of the adjustable-rate Mortgage Loans is prepaid over the course of a year.

Prepayment Interest Shortfall:  With respect to any Distribution Date and any Mortgage Loan (other than a Mortgage Loan relating to an REO Property) that was the subject of (a) a Principal Prepayment in Full during the related Prepayment Period, an amount equal to the excess of one month's interest at the related Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) on the Stated Principal Balance of such Mortgage Loan over the amount of interest (adjusted to the related Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan)) paid by the Mortgagor for such Prepayment Period to the date of such Principal Prepayment in Full or (b) a Curtailment during the prior calendar month, an amount equal to one month's interest at the related Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) on the amount of such Curtailment.

Prepayment Period:  With respect to any Distribution Date, the calendar month preceding the month of distribution.

Primary Insurance Policy:  Each primary policy of mortgage guaranty insurance as indicated by a numeric code on the Mortgage Loan Schedule with the exception of code "A23," "A34" or "A96" under the column "MI CO CODE."

Principal Allocation Amount:  With respect to any Distribution Date, the sum of (a) the Principal Remittance Amount for that Distribution Date, as adjusted to reflect any Net Swap Payments or Swap Termination Payments not due to a Swap Counterparty Trigger Event, (b) any Realized Losses covered by amounts included in clause (iv) of the definition of Principal Distribution Amount and (c) the aggregate amount of the principal portion of Realized Losses on the Mortgage Loans in the calendar

month preceding that Distribution Date, to the extent covered by Excess Cash Flow included in clause (v) of the definition of Principal Distribution Amount; provided, however, that on any Distribution Date on which there is (i) insufficient Subsequent Recoveries to cover all unpaid Realized Losses on the Mortgage Loans described in clause (b) above, in determining the Group I Principal Distribution Amount and the Group II Principal Distribution Amount, Subsequent Recoveries will be allocated to the Class A-I Certificates and Class A-II Certificates, pro rata, based on the principal portion of unpaid Realized Losses from prior Distribution Dates on the Group I Loans and Group II Loans, respectively, and (ii) insufficient Excess Cash Flow to cover all Realized Losses on the Mortgage Loans described in clause (c) above, in determining the Group I Principal Distribution Amount and the Group II Principal Distribution Amount, the Excess Cash Flow remaining after the allocation described in clause (b) above or (i) of this proviso, as applicable, will be allocated to the Class A-I Certificates and Class A-II Certificates, pro rata, based on the principal portion of Realized Losses incurred during the calendar month preceding that Distribution Date on the Group I Loans and Group II Loans, respectively.

Principal Distribution Amount: With respect to any Distribution Date, the lesser of (a) the excess of (x) the sum of (A) the Available Distribution Amount and (B) with respect to clauses (b)(v) and (vi) below, the amounts received by the Supplemental Interest Trust Trustee under the Swap Agreement for that Distribution Date, over (y) the Interest Distribution Amount, and (b) the sum of:

(i)  the principal portion of each Monthly Payment received or Advanced with respect to the related Due Period on each Outstanding Mortgage Loan;

(ii)  the Stated Principal Balance of any Mortgage Loan repurchased during the related Prepayment Period (or deemed to have been so repurchased in accordance with Section 3.07(b)) pursuant to Section 2.02, 2.03, 2.04 or 4.07 and the amount of any shortfall deposited in the Custodial Account in connection with the substitution of a Deleted Mortgage Loan pursuant to Section 2.03 or 2.04 during the related Prepayment Period;

(iii)  the principal portion of all other unscheduled collections, other than Subsequent Recoveries, on the Mortgage Loans (including, without limitation, Principal Prepayments in Full, Curtailments, Insurance Proceeds, Liquidation Proceeds and REO Proceeds) received during the related Prepayment Period (or deemed to have been so received) to the extent applied by the Master Servicer as recoveries of principal of the Mortgage Loans pursuant to Section 3.14;

(iv)  the lesser of (1) Subsequent Recoveries for such Distribution Date and (2) the principal portion of any Realized Losses allocated to any Class of Certificates on a prior Distribution Date and remaining unpaid;

(v)  the lesser of (1) the Excess Cash Flow for such Distribution Date (to the extent not used pursuant to clause (iv) of this definition on such Distribution Date) and (2) the principal portion of any Realized Losses incurred (or deemed to have been incurred) on any Mortgage Loans in the calendar month preceding such Distribution Date; and

(vi)  the lesser of (1) the Excess Cash Flow for that Distribution Date (to the extent not used pursuant to clauses (iv) and (v) of this definition on such Distribution Date or required to pay any Cumulative Insurance Payment on such Distribution Date pursuant to Section 4.02(c)(iv) herein) and (2) the Overcollateralization Increase Amount for such Distribution Date;

*minus*

.

(vii) (A) the amount of any Overcollateralization Reduction Amount for such Distribution Date and (B) the amount of any Capitalization Reimbursement Amount for such Distribution Date.

Principal Prepayment:  Any payment of principal or other recovery on a Mortgage Loan, including a recovery that takes the form of Liquidation Proceeds or Insurance Proceeds, which is received in advance of its scheduled Due Date and is not accompanied by an amount as to interest representing scheduled interest on such payment due on any date or dates in any month or months subsequent to the month of prepayment.

Principal Prepayment in Full:  Any Principal Prepayment made by a Mortgagor of the entire principal balance of a Mortgage Loan.

Principal Remittance Amount:  With respect to any Distribution Date, all amounts described in clauses (b)(i) through (iii) of the definition of Principal Distribution Amount for that Distribution Date.

Program Guide:  The AlterNet Seller Guide as incorporated into the Residential Funding Seller Guide for mortgage collateral sellers that participate in Residential Funding's AlterNet Mortgage Program, and Residential Funding's Servicing Guide and any other subservicing arrangements which Residential Funding has arranged to accommodate the servicing of the Mortgage Loans and in each case all supplements and amendments thereto published by Residential Funding.

Purchase Price:  With respect to any Mortgage Loan (or REO Property) required to be or otherwise purchased on any date pursuant to Section 2.02, 2.03, 2.04 or 4.07, an amount equal to the sum of (i) 100% of the Stated Principal Balance thereof plus the principal portion of any related unreimbursed Advances and (ii) unpaid accrued interest at either (a) the Adjusted Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) plus the rate per annum at which the Servicing Fee and the Certificate Insurer Premium Modified Rate is calculated, or (b) in the case of a purchase made by the Master Servicer, at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) plus the Certificate Insurer Premium Modified Rate, in each case on the Stated Principal Balance thereof to the first day of the month following the month of purchase from the Due Date to which interest was last paid by the Mortgagor.  With respect to any Mortgage Loan (or REO Property) required to be or otherwise purchased on any date pursuant to Section 4.08, an amount equal to the greater of (i) the sum of (a) 100% of the Stated Principal Balance thereof plus the principal portion of any related unreimbursed Advances of such Mortgage Loan (or REO Property) and (b) unpaid accrued interest at either (1) the Adjusted Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) plus the rate per annum at which the Servicing Fee is calculated, or (2) in the case of a purchase made by the Master Servicer, at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan), in each case on the Stated Principal Balance thereof to the first day of the month following the month of purchase from the Due Date to which interest was last paid by the Mortgagor, and (ii) the fair market value of such Mortgage Loan (or REO Property).

Qualified Substitute Mortgage Loan:  A Mortgage Loan substituted by Residential Funding or the Depositor for a Deleted Mortgage Loan which must, on the date of such substitution, as confirmed in an Officers' Certificate delivered to the Trustee, (i) have an outstanding principal balance, after deduction of the principal portion of the monthly payment due in the month of substitution (or in the case of a substitution of more than one Mortgage Loan for a Deleted Mortgage Loan, an aggregate outstanding principal balance, after such deduction), not in excess of the Stated Principal Balance of the Deleted Mortgage Loan (the amount of any shortfall to be deposited by Residential Funding, in the Custodial Account in the month of substitution); (ii) have a Mortgage Rate and a Net Mortgage Rate no lower than and not more than 1% per annum higher than the Mortgage Rate and Net Mortgage Rate, respectively, of the Deleted Mortgage Loan as of the date of substitution; (iii) have a Loan-to-Value Ratio at the time of

substitution no higher than that of the Deleted Mortgage Loan at the time of substitution; (iv) have a remaining term to stated maturity not greater than (and not more than one year less than) that of the Deleted Mortgage Loan; (v) comply with each representation and warranty set forth in Sections 2.03 and 2.04 hereof and Section 4 of the Assignment Agreement, (other than the representations and warranties set forth therein with respect to the number of loans (including the related percentage) in excess of zero which meet or do not meet a specified criteria); (vi) not be 30 days or more Delinquent; (vii) not be subject to the requirements of HOEPA (as defined in the Assignment Agreement); (viii) have a policy of title insurance, in the form and amount that is in material compliance with the Program Guide, that was effective as of the closing of such Mortgage Loan, is valid and binding, and remains in full force and effect, unless the Mortgage Property is located in the State of Iowa where an attorney's certificate has been provided as described in the Program Guide; (ix) if the Deleted Loan is not a Balloon Loan, not be a Balloon Loan; (x) with respect to adjustable rate Mortgage Loans, have a Mortgage Rate that adjusts with the same frequency and based upon the same Index as that of the Deleted Mortgage Loan; (xi) with respect to adjustable rate Mortgage Loans, have a Note Margin not less than that of the Deleted Mortgage Loan; (xii) with respect to adjustable rate Mortgage Loans, have a Periodic Rate Cap that is equal to that of the Deleted Mortgage Loan; (xiii) with respect to adjustable-rate Mortgage Loans, have a next Adjustment Date no later than that of the Deleted Mortgage Loan, and (xiv) be secured by a lien with the same lien priority as the Deleted Loan.

Rating Agency:  Each of Standard & Poor's and Moody's.  If any agency or a successor is no longer in existence, "Rating Agency" shall be such statistical credit rating agency, or other comparable Person, designated by the Depositor, notice of which designation shall be given to the Trustee and the Master Servicer.

Realized Loss:  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate plus the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate plus the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances, Servicing Advances or other expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) (1) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced or (2) the sum of any other amounts owing under the Mortgage Loan that were forgiven and that constitute Servicing Advances that are reimbursable to the Master Servicer or a Subservicer, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee in writing that the Master Servicer is diligently pursuing any remedies that may exist in

connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

Realized Losses in respect of Group I Loans allocated to the Class SB Certificates shall be allocated first to REMIC III Regular Interest SB-IO-I in reduction of the accrued but unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero and then to REMIC III Regular Interest SB-PO-I in reduction of the Principal Balance thereof. Realized Losses in respect of Group II Loans allocated to the Class SB Certificates shall be allocated first to REMIC III Regular Interest SB-IO-II in reduction of the accrued but unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero and then to REMIC III Regular Interest SB-PO-II in reduction of the Principal Balance thereof.

To the extent the Master Servicer receives Subsequent Recoveries with respect to any Mortgage Loan, the amount of the Realized Loss with respect to that Mortgage Loan will be reduced to the extent such recoveries are applied to reduce the Certificate Principal Balance of any Class of Certificates on any Distribution Date.

Record Date: With respect to each Distribution Date and the LIBOR Certificates, the Business Day immediately preceding such Distribution Date. With respect to each Distribution Date and the Certificates (other than the LIBOR Certificates), the close of business on the last Business Day of the month next preceding the month in which the related Distribution Date occurs, except in the case of the first Record Date which shall be the Closing Date.

Reference Bank Rate: As defined in Section 1.02.

Regular Certificates: The Class A Certificates and Class SB Certificates.

Regular Interest: Any one of the regular interests in the REMICs.

Regulation AB: Subpart 229.1100 – Asset Backed Securities (Regulation AB), 17 C.F.R. §§229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (January 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Relief Act: The Servicemembers Civil Relief Act, as amended.

Relief Act Shortfalls: Interest shortfalls on the Mortgage Loans resulting from the Relief Act or similar legislation or regulations.

REMIC: A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code. As used herein, the term "REMIC" shall mean REMIC I, REMIC II or REMIC III.

REMIC Administrator: Residential Funding Company, LLC. If Residential Funding Company, LLC is found by a court of competent jurisdiction to no longer be able to fulfill its obligations as REMIC Administrator under this Agreement the Master Servicer or Trustee acting as successor Master Servicer

shall appoint a successor REMIC Administrator, subject to assumption of the REMIC Administrator obligations under this Agreement

REMIC I: The segregated pool of assets subject hereto (exclusive of the Supplemental Interest Trust Account, the Swap Agreement and the SB-A Swap Agreement), constituting a portion of the primary trust created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be made, consisting of:

(i)    the Mortgage Loans and the related Mortgage Files;

(ii)    all payments on and collections in respect of the Mortgage Loans due after the Cut-off Date (other than Monthly Payments due in the month of the Cut-off Date) as shall be on deposit in the Custodial Account or in the Certificate Account and identified as belonging to the Trust Fund;

(iii)    property which secured a Mortgage Loan and which has been acquired for the benefit of the Certificateholders by foreclosure or deed in lieu of foreclosure;

(iv)    the hazard insurance policies and Primary Insurance Policies pertaining to the Mortgage Loans, if any; and

(v)    all proceeds of clauses (i) through (iv) above.

REMIC I Available Distribution Amount: The Available Distribution Amount increased by the amount of any Net Swap Payment described in clause (b)(z) thereof.

REMIC I Distribution Amount: For any Distribution Date, the REMIC I Available Distribution Amount shall be distributed to REMIC II in respect of the REMIC I Regular Interests and to the Class R Certificateholders in respect of Component I thereof in the following amounts and priority:

(a)    to each of the REMIC I Regular Interests, pro rata, in an amount equal to (A) Uncertificated Accrued Interest for such REMIC I Regular Interest for such Distribution Date, plus (B) any amounts payable in respect thereof remaining unpaid from previous Distribution Dates;

(b)    to the extent of amounts remaining after the distributions made pursuant to clause (a) above, payments of principal shall be allocated as follows:

(i)    first, to REMIC I Regular Interests I and II, an amount equal to 1/10,000 of such principal payments for the Group I Loans and the Group II Loans, respectively; provided that the Uncertificated Principal Balances of REMIC I Regular Interests I and II shall not be reduced below zero;

(ii)    second, any remainder to REMIC I Regular Interest A-I until the Uncertificated Principal Balance of such REMIC I Regular Interest is reduced to zero;

(iii)    third, any remainder, in the case of Distribution Dates occurring in March 2007 and April 2007, to REMIC I Regular Interests I-1-A and I-1-B, in the case of Distribution Dates occurring in May 2007 through September 2009, sequentially to REMIC I Regular Interests I-1-A and I-1-B through the REMIC I Regular Interests with numerical designations equal to the number of such Distribution Date less two, in the case of Distribution Dates occurring in October 2009 through December 2010, sequentially to REMIC I Regular Interests I-1-A and I-1-B

through REMIC I Regular Interests I-29-A and I-29-B, and in the case of any Distribution Date occurring in or after January 2011, sequentially to REMIC I Regular Interests I-1-A and I-1-B through the REMIC I Regular Interests with numerical designations equal to the number of such Distribution Date less seventeen, starting with the lowest numerical designation until the Uncertificated Principal Balance of each such REMIC I Regular Interest is reduced to zero, provided that, for REMIC I Regular Interests with the same numerical designation, such payments of principal shall be allocated pro rata between such REMIC I Regular Interests;

(iv)    fourth, any remainder to the REMIC I Regular Interests remaining outstanding after the foregoing distributions (other than REMIC I Regular Interests I and II), starting with the lowest numerical designation until the Uncertificated Principal Balance of each such REMIC I Regular Interest is reduced to zero, provided that, for REMIC I Regular Interests with the same numerical designation, such payments of principal shall be allocated pro rata between such REMIC I Regular Interests;

(v)    fifth, any remainder to REMIC I Regular Interests I and II, pro rata according to their respective Uncertificated Principal Balances as reduced by the distributions deemed made pursuant to (i) above, until their respective Uncertificated Principal Balances are reduced to zero; and

(c)    to the extent of amounts remaining after the distributions made pursuant to clauses (a) and (b) above, to the Class R Certificates in respect of Component I thereof, such remaining amount.

REMIC I Realized Losses: Realized Losses on the Mortgage Loans shall be allocated to the REMIC I Regular Interests as follows: The interest portion of Realized Losses on the Mortgage Loans shall be allocated among the REMIC I Regular Interests, pro rata, according to the amount of interest accrued but unpaid thereon, in reduction thereof. Any interest portion of such Realized Losses in excess of the amount allocated pursuant to the preceding sentence shall be treated as a principal portion of Realized Losses not attributable to any specific Mortgage Loan and allocated pursuant to the succeeding sentences. An amount equal to 1/10,000 of the principal portion of Realized Losses on Group I Loans and Group II Loans shall be allocated first, on each Distribution Date, to REMIC I Regular Interests I and II, respectively, provided that the Uncertificated Principal Balances of REMIC I Regular Interests I and II shall not be reduced below zero. Any remaining principal portion of Realized Losses on the Mortgage Loans shall be allocated first, on each Distribution Date, to REMIC I Regular Interest A-I until the Uncertificated Principal Balance of such REMIC I Regular Interest has been reduced to zero, and thereafter to REMIC I Regular Interest I-1-A through REMIC I Regular Interest I-40-B, starting with the lowest numerical denomination until the Uncertificated Principal Balance of such REMIC I Regular Interest has been reduced to zero, provided that, for REMIC I Regular Interests with the same numerical denomination, such Realized Losses shall be allocated pro rata between such REMIC I Regular Interests.

REMIC I Regular Interest: Any of the separate non certificated beneficial ownership interests in REMIC I issued hereunder and designated as a "regular interest" in REMIC I. Each REMIC I Regular Interest shall accrue interest at the related Uncertificated REMIC I Pass Through Rate in effect from time to time, and shall be entitled to distributions of principal, subject to the terms and conditions hereof, in an aggregate amount equal to its initial Uncertificated Principal Balance as set forth in the Preliminary Statement hereto. The designations for the respective REMIC I Regular Interests are set forth in the Preliminary Statement hereto.

REMIC II: The segregated pool of assets subject hereto, constituting a portion of the primary trust created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be made, consisting of the REMIC I Regular Interests.

REMIC II:  The segregated pool of assets subject hereto, constituting a portion of the primary trust created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be made, consisting of the REMIC I Regular Interests.

REMIC II Available Distribution Amount:  For any Distribution Date, the amount distributed from REMIC I to REMIC II on such Distribution Date in respect of the REMIC I Regular Interests.

REMIC II Distribution Amount:  For any Distribution Date, the REMIC II Available Distribution Amount shall be distributed to REMIC III in respect of the REMIC II Regular Interests and to the Class R Certificateholders in respect of Component II thereof in the following amounts and priority:

(a)    to REMIC III as the holder of REMIC II Regular Interest LT-IO, in an amount equal to (i) Uncertificated Accrued Interest for such Regular Interest for such Distribution Date, plus (ii) any amounts in respect thereof remaining unpaid from previous Distribution Dates;

(b)    to the extent of the portion of the REMIC II Available Distribution Amount related to Loan Group I remaining after the distributions made pursuant to clause (a) above, to REMIC III as the holder of REMIC II Regular Interests LT1, LT2, LT3 and LT4, allocated as follows:

(i)    to REMIC II Regular Interests LT1, LT2, LT3 and LT4, pro rata, in an amount equal to (A) their Uncertificated Accrued Interest for such Distribution Date, plus (B) any amounts in respect thereof remaining unpaid from previous Distribution Dates; and

(ii)    to REMIC II Regular Interests LT1, LT2, LT3 and LT4, in an amount equal to the remainder of such portion of the REMIC II Available Distribution Amount related to Loan Group I remaining after the distributions made pursuant to clauses (a) and (b)(i) above, allocated as follows:

(A)    in respect of REMIC II Regular Interests LT2, LT3 and LT4, their respective Principal Distribution Amounts;;

(B)    in respect of REMIC II Regular Interest LT1 any remainder until the Uncertificated Principal Balance thereof is reduced to zero;

(C)    any remainder in respect of REMIC II Regular Interests LT2, LT3 and LT4, pro rata according to their respective Uncertificated Principal Balances as reduced by the distributions deemed made pursuant to (A) above, until their respective Uncertificated Principal Balances are reduced to zero;

(c)    to the extent of the portion of the REMIC II Available Distribution Amount related to Loan Group II remaining after the distributions made pursuant to clause (a) above, to REMIC III as the holder of REMIC II Regular Interests LT5, LT6, LT7 and LT8, allocated as follows:

(i)    to REMIC II Regular Interests LT5, LT6, LT7 and LT8, pro rata, in an amount equal to (A) their Uncertificated Accrued Interest for such Distribution Date, plus (B) any amounts in respect thereof remaining unpaid from previous Distribution Dates; and

(ii)    to REMIC II Regular Interests LT5, LT6, LT7 and LT8, in an amount equal to the remainder of such portion of the REMIC II Available Distribution Amount related to Loan Group II remaining after the distributions made pursuant to clauses (a) and (c)(i) above, allocated as follows:

(A)    in respect of REMIC II Regular Interests LT6, LT7 and LT8, their respective Principal Distribution Amounts;

(B)    in respect of REMIC II Regular Interest LT5 any remainder until the Uncertificated Principal Balance thereof is reduced to zero;

(C)    any remainder in respect of REMIC II Regular Interests LT6, LT7 and LT8, pro rata according to their respective Uncertificated Principal Balances as reduced by the distributions deemed made pursuant to (A) above, until their respective Uncertificated Principal Balances are reduced to zero; and

(d)    to the extent of amounts remaining after the distributions made pursuant to clauses (a) through (c) above:

(i)    first, to each of the REMIC II Regular Interests, pro rata according to the amount of unreimbursed Realized Losses allocable to principal previously allocated to each such REMIC II Regular Interest, the aggregate amount of any distributions to the Certificates as reimbursement of such Realized Losses on such Distribution Date pursuant to clause (ix) in Section 4.02(c); provided, however, that any amounts distributed pursuant to this paragraph (d)(i) of this definition of "REMIC II Distribution Amount" shall not cause a reduction in the Uncertificated Principal Balances of any of the REMIC II Regular Interests; and

(ii)    second, to the Class R Certificates in respect of Component II thereof, any remaining amount.

REMIC II Principal Reduction Amounts:  For any Distribution Date, the amounts by which the Uncertificated Principal Balances of REMIC II Regular Interests LT1, LT2, LT3, LT4, LT5, LT6, LT7, and LT8, respectively, will be reduced on such Distribution Date by the allocation of Realized Losses and the distribution of principal, determined as follows:

For purposes of the succeeding formulas the following symbols shall have the meanings set forth below:

$Y_1 =$    the Uncertificated Principal Balance of REMIC II Regular Interests LT1 after distributions on the prior Distribution Date.

$Y_2 =$    the Uncertificated Principal Balance of REMIC II Regular Interest LT2 after distributions on the prior Distribution Date.

$Y_3 =$    the Uncertificated Principal Balance of REMIC II Regular Interest LT3 after distributions on the prior Distribution Date.

$Y_4 =$    the Uncertificated Principal Balance of REMIC II Regular Interest LT4 after distributions on the prior Distribution Date (note:  $Y_3 = Y_4$).

$\Delta Y_1 =$  the REMIC II Regular Interest LT1 Principal Reduction Amount.

$\Delta Y_2 =$  the REMIC II Regular Interest LT2 Principal Reduction Amount.

$\Delta Y_3 =$  the REMIC II Regular Interest LT3 Principal Reduction Amount.

$\Delta Y_4 =$ the REMIC II Regular Interest LT4 Principal Reduction Amount.

$P_0 =$ the aggregate Uncertificated Principal Balance of REMIC II Regular Interests LT1, LT2, LT3 and LT4 after distributions and the allocation of Realized Losses on the prior Distribution Date.

$P_1 =$ the aggregate Uncertificated Principal Balance of REMIC II Regular Interests LT1, LT2, LT3 and LT4 after distributions and the allocation of Realized Losses to be made on such Distribution Date.

$\Delta P = P_0 - P_1 =$ the aggregate of the REMIC II Regular Interests LT1, LT2, LT3 and LT4 Principal Reduction Amounts.

$=$ the aggregate of the principal portions of Realized Losses to be allocated to, and the principal distributions to be made on, the Group I Certificates on such Distribution Date (including distributions of accrued and unpaid interest on the Class SB Certificates for prior Distribution Dates).

$R_0 =$ the Group I REMIC II Net WAC Cap Rate (stated as a monthly rate) after giving effect to amounts distributed and Realized Losses allocated on the prior Distribution Date.

$R_1 =$ the Group I REMIC II Net WAC Cap Rate (stated as a monthly rate) after giving effect to amounts to be distributed and Realized Losses to be allocated on such Distribution Date.

$\alpha = (Y_2 + Y_3)/P_0$. The initial value of $\alpha$ on the Closing Date for use on the first Distribution Date shall be 0.0001.

$\gamma_0 =$ the lesser of (A) the sum of (1) for all Classes of Class A-I Certificates of the product for each Class of (i) the monthly interest rate (as limited by the Group I Net WAC Cap Rate, if applicable) for such Class applicable for distributions to be made on such Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses on the prior Distribution Date, and (2) the amount, if any, by which the sum of the amounts in clauses (A)(1), (2) and (3) of the definition of $\Gamma_0$ exceeds $S_0*Q_0$ and (B) $R_0*P_0$.

$\gamma_1 =$ the lesser of (A) the sum of (1) for all Classes of Class A-I Certificates of the product for each Class of (i) the monthly interest rate (as limited by the Group I Net WAC Cap Rate, if applicable) for such Class applicable for distributions to be made on the next succeeding Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses to be made on such Distribution Date, and (2) the amount, if any, by which the sum of the amounts in clauses (A)(1), (2) and (3) of the definition of $\Gamma 1$ exceeds $S_1*Q_1$ and (B) $R_1*P_1$.

Then, based on the foregoing definitions:

$\Delta Y_1 = \Delta P - \Delta Y_2 - \Delta Y_3 - \Delta Y_4;$

$\Delta Y_2 = (\alpha/2)\{(\gamma_0 R_1 - \gamma_1 R_0)/R_0 R_1\};$

$\Delta Y_3 = \alpha \Delta P - \Delta Y_2;$ and

$\Delta Y_4 = \Delta Y_3.$

if both $\Delta Y_2$ and $\Delta Y_3$, as so determined, are non-negative numbers. Otherwise:

(1)    If $\Delta Y_2$, as so determined, is negative, then

$\Delta Y_2 = 0;$

$\Delta Y_3 = \alpha\{\gamma_1 R_0 P_0 - \gamma_0 R_1 P_1\}/\{\gamma_1 R_0\};$

$\Delta Y_4 = \Delta Y_3;$ and

$\Delta Y_1 = \Delta P - \Delta Y_2 - \Delta Y_3 - \Delta Y_4.$

(2)    If $\Delta Y_3$, as so determined, is negative, then

$\Delta Y_3 = 0;$

$\Delta Y_2 = \alpha\{\gamma_1 R_0 P_0 - \gamma_0 R_1 P_1\}/\{2R_1 R_0 P_1 - \gamma_1 R_0\};$

$\Delta Y_4 = \Delta Y_3;$ and

$\Delta Y_1 = \Delta P - \Delta Y_2 - \Delta Y_3 - \Delta Y_4.$

For purposes of the succeeding formulas the following symbols shall have the meanings set forth below:

$Y_5 =$    the Uncertificated Principal Balance of REMIC II Regular Interests LT5 after distributions on the prior Distribution Date.

$Y_6 =$    the Uncertificated Principal Balance of REMIC II Regular Interest LT6 after distributions on the prior Distribution Date.

$Y_7 =$    the Uncertificated Principal Balance of REMIC II Regular Interest LT7 after distributions on the prior Distribution Date.

$Y_8 =$    the Uncertificated Principal Balance of REMIC II Regular Interest LT8 after distributions on the prior Distribution Date (note: $Y_7 = Y_8$).

$\Delta Y_5 =$    the REMIC II Regular Interest LT5 Principal Reduction Amount.

$\Delta Y_6 =$    the REMIC II Regular Interest LT6 Principal Reduction Amount.

$\Delta Y_7 =$    the REMIC II Regular Interest LT7 Principal Reduction Amount.

$\Delta Y_8 =$    the REMIC II Regular Interest LT8 Principal Reduction Amount.

$Q_0 =$    the aggregate Uncertificated Principal Balance of REMIC II Regular Interests LT5, LT6, LT7 and LT8 after distributions and the allocation of Realized Losses on the prior Distribution Date.

$Q_1 =$    the aggregate Uncertificated Principal Balance of REMIC II Regular Interests LT5, LT6, LT7 and LT8 after distributions and the allocation of Realized Losses to be made on such Distribution Date.

$\Delta Q =$    $Q_0 - Q_1 =$ the aggregate of the REMIC II Regular Interests LT5, LT6, LT7 and LT8 Principal Reduction Amounts.

= the aggregate of the principal portions of Realized Losses to be allocated to, and the principal distributions to be made on, the Group II Certificates on such Distribution Date (including distributions of accrued and unpaid interest on the Class SB Certificates for prior Distribution Dates).

$S_0$ = the Group II REMIC II Net WAC Cap Rate (stated as a monthly rate) after giving effect to amounts distributed and Realized Losses allocated on the prior Distribution Date.

$S_1$ = the Group II REMIC II Net WAC Cap Rate (stated as a monthly rate) after giving effect to amounts to be distributed and Realized Losses to be allocated on such Distribution Date.

$\beta$ = $(Y_6 + Y_7)/Q_0$. The initial value of $\beta$ on the Closing Date for use on the first Distribution Date shall be 0.0001.

$\Gamma_0$ = the lesser of (A) the sum of (1) for all Classes of Class A-II Certificates of the product for each Class of (i) the monthly interest rate (as limited by the Group II Net WAC Cap Rate, if applicable) for such Class applicable for distributions to be made on such Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses on the prior Distribution Date and (2) the amount, if any, by which the sum of the amounts in clauses (A)(1), (2) and (3) of the definition of $\gamma_0$ exceeds $R_0*P_0$ and (B) $S_0*Q_0$.

$\Gamma_1$ = the lesser of (A) the sum of (1) for all Classes of Class A-II Certificates of the product for each Class of (i) the monthly interest rate (as limited by the Group II Net WAC Cap Rate, if applicable) for such Class applicable for distributions to be made on the next succeeding Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses to be made on such Distribution Date and (2) the amount, if any, by which the sum of the amounts in clauses (A)(1), (2) and (3) of the definition of $\gamma_1$ exceeds $R_1*P_1$ and (B) $S_1*Q_1$.

Then, based on the foregoing definitions:

$\Delta Y_5$ = $\Delta Q - \Delta Y_6 - \Delta Y_7 - \Delta Y_8$;

$\Delta Y_6$ = $(\beta/2)\{(\Gamma_0 S_1 - \Gamma_1 S_0)/S_0 S_1\}$;

$\Delta Y_7$ = $\beta \Delta Q - \Delta Y_6$; and

$\Delta Y_8$ = $\Delta Y_7$.

if both $\Delta Y_6$ and $\Delta Y_7$, as so determined, are non-negative numbers. Otherwise:

(1) If $\Delta Y_6$, as so determined, is negative, then

$\Delta Y_6$ = 0;

$\Delta Y_7$ = $\beta\{\Gamma_1 S_0 Q_0 - \Gamma_0 S_1 Q_1\}/\{\Gamma_1 S_0\}$;

$\Delta Y_8$ = $\Delta Y_7$; and

$\Delta Y_5$ = $\Delta Q - \Delta Y_6 - \Delta Y_7 - \Delta Y_8$.

(2) If $\Delta Y_7$, as so determined, is negative, then

$\Delta Y_7$ = 0;

$$\Delta Y_6 = \beta\{\Gamma_0 S_1 Q_1 - \Gamma_1 S_0 Q_0\}/\{2 S_1 S_0 Q_1 - \Gamma_1 S_0\};$$

$$\Delta Y_8 = \Delta Y_7; \text{ and}$$

$$\Delta Y_5 = \Delta Q - \Delta Y_6 - \Delta Y_7 - \Delta Y_8.$$

REMIC II Realized Losses: Realized Losses on Group I Loans and Group II Loans shall be allocated to the REMIC II Regular Interests as follows: (1) The interest portion of Realized Losses on Group I Loans, if any, shall be allocated among REMIC II Regular Interests LT1, LT2 and LT4, pro rata according to the amount of interest accrued but unpaid thereon, in reduction thereof, and thereafter to REMIC II Regular Interest LT-IO in reduction thereof; and (2) the interest portion of Realized Losses on Group II Loans, if any, shall be allocated among REMIC II Regular Interests LT5, LT6 and LT8, pro rata, according to the amount of interest accrued but unpaid thereon, in reduction thereof, and thereafter to REMIC II Regular Interest LT-IO in reduction thereof. Any interest portion of such Realized Losses in excess of the amount allocated pursuant to the preceding sentence shall be treated as a principal portion of Realized Losses not attributable to any specific Mortgage Loan in such Loan Group and allocated pursuant to the succeeding sentences. The principal portion of Realized Losses with respect to Loan Group I and Loan Group II shall be allocated to the REMIC II Regular Interests as follows: (1) The principal portion of Realized Losses on Group I Loans shall be allocated, first, to REMIC II Regular Interests LT2, LT3 and LT4 pro-rata according to their respective REMIC II Principal Reduction Amounts to the extent thereof in reduction of the Uncertificated Principal Balance of such REMIC II Regular Interests and, third, the remainder, if any, of such principal portion of such Realized Losses shall be allocated to REMIC II Regular Interest LT1 in reduction of the Uncertificated Principal Balance thereof; and (2) the principal portion of Realized Losses on Group II Loans shall be allocated, first, to REMIC II Regular Interests LT6, LT7 and LT8 pro-rata according to their respective REMIC II Principal Reduction Amounts to the extent thereof in reduction of the Uncertificated Principal Balance of such REMIC II Regular Interests and, third, the remainder, if any, of such principal portion of such Realized Losses shall be allocated to REMIC II Regular Interest LT5 in reduction of the Uncertificated Principal Balance thereof.

REMIC II Regular Interests: Any of the separate non certificated beneficial ownership interests in REMIC II issued hereunder and designated as a "regular interest" in REMIC II. Each REMIC II Regular Interest shall accrue interest at the related Uncertificated REMIC II Pass Through Rate in effect from time to time, and shall be entitled to distributions of principal, subject to the terms and conditions hereof, in an aggregate amount equal to its initial Uncertificated Principal Balance as set forth in the Preliminary Statement hereto. The designations for the respective REMIC II Regular Interests are set forth in the Preliminary Statement hereto.

REMIC II Regular Interest LT1 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT1 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to REMIC II Regular Interest LT1 on such Distribution Date.

REMIC II Regular Interest LT2 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT2 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to REMIC II Regular Interest LT2 on such Distribution Date.

REMIC II Regular Interest LT3 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT3 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to REMIC II Regular Interest LT3 on such Distribution Date.

REMIC II Regular Interest LT4 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT4 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to REMIC II Regular Interest LT4 on such Distribution Date.

REMIC II Regular Interest LT5 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT5 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to REMIC II Regular Interest LT5 on such Distribution Date.

REMIC II Regular Interest LT6 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT6 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to REMIC II Regular Interest LT6 on such Distribution Date.

REMIC II Regular Interest LT7 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT7 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to REMIC II Regular Interest LT7 on such Distribution Date.

REMIC II Regular Interest LT8 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT8 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to REMIC II Regular Interest LT8 on such Distribution Date.

REMIC III: The segregated pool of assets subject hereto, constituting a portion of the primary trust created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be made, consisting of the REMIC II Regular Interests.

REMIC III Available Distribution Amount: For any Distribution Date, the amount distributed from REMIC II to REMIC III on such Distribution Date in respect of the REMIC II Regular Interests.

REMIC III Distribution Amount: For any Distribution Date, the REMIC III Available Distribution Amount shall be deemed distributed to Class A and Class SB Certificates in respect of the portion of such Certificates representing ownership of REMIC III Regular Interests and the Class R Certificates in respect of Component III thereof in the following amounts and priority:

(i)    to the Class SB Certificateholders in respect of REMIC III Regular Interest IO, the amount distributable with respect to such REMIC III Regular Interest as described in the Preliminary Statement, being paid from and in reduction of the REMIC III Available Distribution Amount for such Distribution Date;

(ii)    to the Class A Certificateholders, the Accrued Certificate Interest payable on the Class A Certificates with respect to such Distribution Date, plus any related amounts accrued pursuant to this clause (i) but remaining unpaid from any prior Distribution Date, being paid from and in reduction of the REMIC III Available Distribution Amount for such Distribution Date;

(iii)    the Principal Distribution Amount shall be distributed as follows, to be applied to reduce the principal balance of the REMIC III Regular Interest related to the applicable Certificates in each case to the extent of the remaining Principal Distribution Amount:

(A)    first, the Class A-I-Principal Distribution Amount shall be distributed sequentially to the Class A-I-1 Certificateholders, Class A-I-2 Certificateholders, Class A-I-3 Certificateholders and Class A-I-4 Certificateholders, in that order, in each case until the Certificate Principal Balance thereof is reduced to zero;

(B)    second, to the Class A-II Certificateholders, in that order, the Class A-II Principal Distribution Amount, in each case until the Certificate Principal Balance thereof has been reduced to zero;

(iv)    to the Class A Certificateholders, the amount of any Prepayment Interest Shortfalls allocated thereto for such Distribution Date, on a pro rata basis based on Prepayment Interest Shortfalls allocated thereto to the extent not offset by Eligible Master Servicing Compensation on such Distribution Date

(v)    to the Class A Certificateholders, the amount of any Prepayment Interest Shortfalls previously allocated thereto remaining unpaid from prior Distribution Dates together with interest thereon at the related Pass-Through Rate, on a pro rata basis based on unpaid Prepayment Interest Shortfalls previously allocated thereto;

(vi)    to the Class SB Certificates, (A) from the amount, if any, of the REMIC III Available Distribution Amount remaining after the foregoing distributions, the sum of (I) Accrued Certificate Interest thereon, (II) the amount of any Overcollateralization Reduction Amount for such Distribution Date and (III) for any Distribution Date after the Certificate Principal Balance of each Class of Class A Certificates has been reduced to zero, the Overcollateralization Amount and (B) from prepayment charges on deposit in the Certificate Account, any prepayment charges received on the Mortgage Loans during the related Prepayment Period; and

(vii)    to the Class R Certificateholders in respect of Component III thereof, the balance, if any, of the REMIC III Available Distribution Amount.

REMIC III Regular Interest SB-PO-I:  A separate beneficial ownership interest in REMIC III issued hereunder and designated as a Regular Interest in REMIC III, the ownership of which is evidenced by the Class SB Certificates.  REMIC III Regular Interest SB-PO-I shall have no entitlement to interest, and shall be entitled to distributions of principal subject to the terms and conditions hereof, in aggregate amount equal to the aggregate initial Stated Principal Balance of the Group I Loans as of the Cut-off Date less the aggregate initial Certificate Principal Balance of the Class A-I Certificates.

REMIC III Regular Interest SB-PO-II:  A separate beneficial ownership interest in REMIC III issued hereunder and designated as a Regular Interest in REMIC III, the ownership of which is evidenced by the Class SB Certificates.  REMIC III Regular Interest SB-PO-II shall have no entitlement to interest, and shall be entitled to distributions of principal subject to the terms and conditions hereof, in aggregate amount equal to the aggregate initial Stated Principal Balance of the Group II Mortgage Loans as of the Cut-off Date less the initial Certificate Principal Balance of the Class A-II Certificates.

REMIC III Regular Interest SB-IO-I:  A separate beneficial ownership interest in REMIC III issued hereunder and designated as a Regular Interest in REMIC III, the ownership of which is evidenced by the Class SB Certificates.  REMIC III Regular Interest SB-IO-I shall have no entitlement to principal, and shall be entitled to distributions of interest subject to the terms and conditions hereof, in an aggregate amount equal to the interest distributable with respect to the Class SB Certificates less the amount of interest distributable on REMIC III Regular Interest SB-IO-II pursuant to the terms and conditions hereof.

REMIC III Regular Interest SB-IO-II:  A separate beneficial ownership interest in REMIC III issued hereunder and designated as a Regular Interest in REMIC III, the ownership of which is evidenced by the Class SB Certificates.  REMIC III Regular Interest SB-IO-II shall have no entitlement to principal, and shall be entitled to distributions of interest subject to the terms and conditions hereof, in an aggregate amount equal to the interest distributable with respect to the Class SB Certificates less the amount of interest distributable on REMIC III Regular Interest SB-IO-I pursuant to the terms and conditions hereof.

REMIC III Regular Interest IO:  A separate beneficial ownership interest in REMIC III issued hereunder and designated as a Regular Interest in REMIC III, the ownership of which is evidenced by the Class SB Certificates.  REMIC III Regular Interest IO shall have no entitlement to principal, and shall be entitled to distributions of interest subject to the terms and conditions hereof, in aggregate amount equal to the interest distributable with respect to REMIC II Regular Interest LT-IO.

REMIC III Regular Interests:  REMIC III Regular Interests SB-IO-I, SB-PO-I, SB-IO-II, SB-PO-II and IO, together with the Class A Certificates, exclusive of their respective rights to receive the payment of Basis Risk Shortfalls and other amounts pursuant to the SB-A Swap Agreement.

REMIC Provisions:  Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at Sections 860A through 860G of Subchapter M of Chapter1 of the Code, and related provisions, and temporary and final regulations (or, to the extent not inconsistent with such temporary or final regulations, proposed regulations) and published rulings, notices and announcements promulgated thereunder, as the foregoing may be in effect from time to time.

REO Acquisition:  The acquisition by the Master Servicer on behalf of the Trustee for the benefit of the Certificateholders of any REO Property pursuant to Section 3.14.

REO Disposition:  With respect to any REO Property, a determination by the Master Servicer that it has received substantially all Insurance Proceeds, Liquidation Proceeds, REO Proceeds and other payments and recoveries (including proceeds of a final sale) which the Master Servicer expects to be finally recoverable from the sale or other disposition of the REO Property.

REO Imputed Interest:  With respect to any REO Property, for any period, an amount equivalent to interest (at a rate equal to the sum of the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate that would have been applicable to the related Mortgage Loan had it been outstanding) on the unpaid principal balance of the Mortgage Loan as of the date of acquisition thereof for such period.

REO Proceeds:  Proceeds, net of expenses, received in respect of any REO Property (including, without limitation, proceeds from the rental of the related Mortgaged Property) which proceeds are required to be deposited into the Custodial Account only upon the related REO Disposition.

REO Property:  A Mortgaged Property acquired by the Master Servicer on behalf of the Trust Fund for the benefit of the Certificateholders and the Certificate Insurer through foreclosure or deed in lieu of foreclosure in connection with a defaulted Mortgage Loan.

Reportable Modified Mortgage Loan:  Any Mortgage Loan that (a) has been subject to an interest rate reduction, (b) has been subject to a term extension or (c) has had amounts owing on such Mortgage Loan capitalized by adding such amount to the Stated Principal Balance of such Mortgage Loan; provided, however, that a Mortgage Loan modified in accordance with (a) above for a temporary period shall not be a Reportable Modified Mortgage Loan if such Mortgage Loan has not been delinquent in payments of principal and interest for six months since the date of such modification if that interest rate reduction is not made permanent thereafter.

Repurchase Event:  As defined in the Assignment Agreement.

Request for Release:  A request for release, the form of which is attached as Exhibit G hereto, or an electronic request in a form acceptable to the Custodian.

Required Insurance Policy:  With respect to any Mortgage Loan, any insurance policy which is required to be maintained from time to time under this Agreement, the Program Guide or the related Subservicing Agreement in respect of such Mortgage Loan.

Required Overcollateralization Amount:  With respect to any Distribution Date, (a) prior to the Stepdown Date, an amount equal to 7.50% of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date, (b) on or after the Stepdown Date if a Trigger Event is not in effect, the greater of (i) an amount equal to 15.00% of the aggregate outstanding Stated Principal Balance of the Mortgage Loans after giving effect to distributions made on that Distribution Date and (ii) the Overcollateralization Floor and (c) on or after the Stepdown Date if a Trigger Event is in effect, an amount equal to the Required Overcollateralization Amount from the immediately preceding Distribution Date.  The Required Overcollateralization Amount may be reduced with the prior written consent of the Certificate Insurer so long as written confirmation is obtained from each Rating Agency that the reduction will not reduce the rating assigned to any Class of Certificates by that Rating Agency below the lower of the then current rating assigned to those Certificates by that rating agency or the rating assigned to those Certificates as of the Closing Date by that Rating Agency, in each case, without regard to the Certificate Guaranty Insurance Policy.

Residential Funding:  Residential Funding Company, LLC, a Delaware limited liability company, in its capacity as seller of the Mortgage Loans to the Depositor and any successor thereto.

Responsible Officer:  When used with respect to the Trustee, any officer of the Corporate Trust Department of the Trustee, including any Senior Vice President, any Vice President, any Assistant Vice President, any Assistant Secretary, any Trust Officer or Assistant Trust Officer, or any other officer of the Trustee, in each case with direct responsibility for the administration of this Agreement.

RFC Exemption:  As defined in Section 5.02(e)(ii).

Rule 144A:  Rule 144A under the Securities Act of 1933, as in effect from time to time.

SB-A Swap Agreement:  The swap between the Class SB Certificateholder and the Class A Certificateholders evidenced by the confirmation attached hereto as Exhibit Q and incorporated herein by reference.

Securities Act:  The Securities Act of 1933, as amended.

Securitization Transaction:  Any transaction involving a sale or other transfer of mortgage loans directly or indirectly to an issuing entity in connection with an issuance of publicly offered or privately placed, rated or unrated mortgage-backed securities.

Seller:  With respect to any Mortgage Loan, a Person, including any Subservicer, that executed a Seller's Agreement applicable to such Mortgage Loan.

Seller's Agreement:  An agreement for the origination and sale of Mortgage Loans generally in the form of the seller contract referred to or contained in the Program Guide, or in such other form as has been approved by the Master Servicer and the Depositor.

Senior Percentage:  With respect to each Loan Group and any Distribution Date, the percentage equal to the lesser of (x) the aggregate Certificate Principal Balance of the related Class A Certificates immediately prior to that Distribution Date divided by the aggregate Stated Principal Balance of the Mortgage Loans in that Loan Group immediately prior to that Distribution Date and (y) 100%.

Servicing Accounts: The account or accounts created and maintained pursuant to Section 3.08.

Servicing Advances: All customary, reasonable and necessary "out of pocket" costs and expenses incurred in connection with a default, delinquency or other unanticipated event by the Master Servicer or a Subservicer in the performance of its servicing obligations, including, but not limited to, the cost of (i) the preservation, restoration and protection of a

Mortgaged Property or, with respect to a cooperative loan, the related cooperative apartment, (ii) any enforcement or judicial proceedings, including foreclosures, including any expenses incurred in relation to any such proceedings that result from the Mortgage Loan being registered on the MERS® System, (iii) the management and liquidation of any REO Property, (iv) any mitigation procedures implemented in accordance with Section 3.07, and (v)compliance with the obligations under Sections 3.01, 3.08, 3.11, 3.12(a) and 3.14, including, if the Master Servicer or any Affiliate of the Master Servicer provides services such as appraisals and brokerage services that are customarily provided by Persons other than servicers of mortgage loans, reasonable compensation for such services.

Servicing Criteria: The "servicing criteria" set forth in Item 1122(d) of Regulation AB, as such may be amended from time to time.

Servicing Fee: With respect to any Mortgage Loan and Distribution Date, the fee payable monthly to the Master Servicer in respect of master servicing compensation that accrues at an annual rate equal to the Servicing Fee Rate multiplied by the Stated Principal Balance of such Mortgage Loan as of the related Due Date in the related Due Period, as may be adjusted pursuant to Section 3.16(e).

Servicing Fee Rate: With respect to any Mortgage Loan, the per annum rate designated on the Mortgage Loan Schedule as the "MSTR SERV FEE," as may be adjusted with respect to successor Master Servicers as provided in Section 7.02, which rate shall never be greater than the Mortgage Rate of such Mortgage Loan.

Servicing Modification: Any reduction of the interest rate on or the outstanding principal balance of a Mortgage Loan, any extension of the final maturity date of a Mortgage Loan, and any increase to the Stated Principal Balance of a Mortgage Loan by adding to the Stated Principal Balance unpaid principal and interest and other amounts owing under the Mortgage Loan, in each case pursuant to a modification of a Mortgage Loan that is in default, or for which, in the judgment of the Master Servicer, default is reasonably foreseeable in accordance with Section 3.07(a).

Servicing Officer: Any officer of the Master Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name and specimen signature appear on a list of servicing officers furnished to the Trustee by the Master Servicer on the Closing Date, as such list may from time to time be amended.

Servicing Trigger: As of any Distribution Date, for purposes of Section 7.05 hereof, the occurrence of any of the following scenarios:

(a)    the Sixty-Plus Delinquency Percentage is greater than 30% for the current Distribution Date; or

(b)    on or after the Distribution Date in September 2009, the aggregate amount of Realized Losses on the Mortgage Loans as a percentage of the Cut-Off Date Balance exceeds the applicable amount set forth below:

| September 2009 to February 2010: | 2.25% with respect to September 2009, plus an additional 1/6th of 1.25% for each month thereafter. |
| March 2010 to February 2011: | 3.50% with respect to March 2010, plus an additional 1/12th of 2.00% for each month thereafter. |
| March 2011 to February 2012: | 5.50% with respect to March 2011, plus an additional 1/12th of 1.25% for each month thereafter. |
| March 2012 to February 2013: | 6.75% with respect to March 2012, plus an additional 1/12th of 0.75% for each month thereafter. |
| March 2013 and thereafter: | 7.50%. |

Sixty-Plus Delinquency Percentage:  With respect to any Distribution Date and the Mortgage Loans, the arithmetic average, for each of the three Distribution Dates ending with such Distribution Date, of the fraction, expressed as a percentage, equal to (x) the aggregate Stated Principal Balance of the Mortgage Loans that are 60 or more days delinquent in payment of principal and interest for that Distribution Date, including Mortgage Loans in bankruptcy that are 60 or more days delinquent, in foreclosure and REO Mortgage Loans, over (y) the aggregate Stated Principal Balance of all of the Mortgage Loans immediately preceding that Distribution Date.

Standard & Poor's:  Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. or its successors in interest.

Startup Date:  The day designated as such pursuant to Article X hereof.

Stated Principal Balance:  With respect to any Mortgage Loan or related REO Property, as of any date of determination, (i) the sum of (a) the Cut-off Date Principal Balance of the Mortgage Loan and (b) any amount by which the Stated  Principal Balance of the Mortgage Loan has been increased pursuant to a Servicing Modification, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending with the Due Period relating to the most recent Distribution Date which were received or with respect to which an Advance was made, (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized Loss incurred with respect to such Mortgage Loan allocated to Certificateholders with respect thereto for any previous Distribution Date.

Stepdown Date:  The later to occur of (x) the Distribution Date in September 2009 and (y) the first Distribution Date on which the aggregate Stated Principal Balance of the Mortgage Loans as of the end of the related Due Period is equal to less than one-half of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date.

Subordinate Component:  With respect to each Loan Group and any Distribution Date, the positive excess, if any, of the aggregate Stated Principal Balance of the Mortgage Loans in that Loan Group, over the aggregate Certificate Principal Balance of the related Class A Certificates, in each case immediately prior to that Distribution Date.

<u>Subordination</u>:  The provisions described in Section 4.05 relating to the allocation of Realized Losses.

<u>Subsequent Recoveries</u>:  As of any Distribution Date, amounts received by the Master Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 3.10) or surplus amounts held by the Master Servicer to cover estimated expenses (including, but not limited to, recoveries in respect of the representations and warranties made by the related Seller pursuant to the applicable Seller's Agreement and assigned to the Trustee pursuant to Section 2.04) specifically related to a Mortgage Loan that was the subject of a Cash Liquidation or an REO Disposition prior to the related Prepayment Period and that resulted in a Realized Loss.

<u>Subsequent Recovery Allocation Amount</u>:  With respect to a Loan Group, that portion of the Principal Allocation Amount in respect of that Loan Group attributable to the amounts described in clause (iv) of the definition of Principal Distribution Amount.

<u>Subserviced Mortgage Loan</u>:  Any Mortgage Loan that, at the time of reference thereto, is subject to a Subservicing Agreement.

<u>Subservicer</u>:  Any Person with whom the Master Servicer has entered into a Subservicing Agreement and who generally satisfied the requirements set forth in the Program Guide in respect of the qualification of a Subservicer as of the date of its approval as a Subservicer by the Master Servicer.

<u>Subservicer Advance</u>:  Any delinquent installment of principal and interest on a Mortgage Loan which is advanced by the related Subservicer (net of its Subservicing Fee) pursuant to the Subservicing Agreement.

<u>Subservicing Account</u>:  An account established by a Subservicer in accordance with Section 3.08.

<u>Subservicing Agreement</u>:  The written contract between the Master Servicer and any Subservicer relating to servicing and administration of certain Mortgage Loans as provided in Section 3.02, generally in the form of the servicer contract referred to or contained in the Program Guide or in such other form as has been approved by the Master Servicer and the Depositor.

<u>Subservicing Fee</u>:  With respect to any Mortgage Loan, the fee payable monthly to the related Subservicer (or, in the case of a Nonsubserviced Mortgage Loan, to the Master Servicer) in respect of subservicing and other compensation that accrues with respect to each Distribution Date at an annual rate designated as "SUBSERV FEE" on the Mortgage Loan Schedule.

<u>Supplemental Interest Trust</u>:  The separate trust created and maintain by the Supplemental Interest Trust Trustee pursuant to Section 4.10(a).  The primary activities of the Supplemental Interest Trust created pursuant to this Agreement shall be:

>   (i)    holding the Swap Agreement and the SB-A Swap Agreement;

>   (ii)    receiving collections or making payments with respect to the Swap Agreement and the SB-A Swap Agreement; and

>   (iii)    engaging in other activities that are necessary or incidental to accomplish these limited purposes, which activities cannot be contrary to the status of the Supplemental Interest Trust as a qualified special purpose entity under existing accounting literature.

Supplemental Interest Trust Account:  The separate trust account created and maintained by the Supplemental Interest Trust Trustee pursuant to Section 4.10(a).

Supplemental Interest Trust Trustee:  As defined in the preamble hereto.

Swap Agreement:  The interest rate swap agreement between the Swap Counterparty and the Supplemental Interest Trust Trustee, on behalf of the Supplemental Interest Trust, which agreement provides for Net Swap Payments and Swap Termination Payments to be paid, as provided therein, together with any schedules, credit support annexes, confirmations or other agreements relating thereto, or any replacement, substitute, collateral or other arrangement in lieu thereof, attached hereto as Exhibit O.

Swap Agreement Notional Balance:  As to the Swap Agreement and each Floating Rate Payer Payment Date and Fixed Rate Payer Payment Date (each as defined in the Swap Agreement) the amount set forth on Schedule I to the Swap Agreement for such Floating Rate Payer Payment Date.

Swap Counterparty:  The swap counterparty under the Swap Agreement either (a) entitled to receive payments from the Supplemental Interest Trust Trustee from amounts payable by the Supplemental Interest Trust under this Agreement or (b) required to make payments to the Supplemental Interest Trust Trustee for payment to the Supplemental Interest Trust, in either case pursuant to the terms of the Swap Agreement, and any successor in interest or assign.  Initially, the Swap Counterparty shall be Bear Stearns Financial Products Inc.

Swap Counterparty Trigger Event:  With respect to any Distribution Date, (i) an Event of Default under the Swap Agreement with respect to which the Swap Counterparty is a Defaulting Party, (ii) a Termination Event under the Swap Agreement with respect to which the Swap Counterparty is the sole Affected Party, or (iii) an additional termination event under the Swap Agreement with respect to which the Swap Counterparty is the sole Affected Party.

Swap LIBOR:  One-Month LIBOR as determined pursuant to the Swap Agreement; provided that with respect to the first and second Distribution Dates and for federal income tax purposes only, Swap LIBOR shall be deemed to be equal to the actual/360 equivalent of the fixed swap rate.

Swap Termination Payment:  Upon the occurrence of an Early Termination Date, the payment to be made by the Supplemental Interest Trust Trustee on behalf of the Supplemental Interest Trust to the Swap Counterparty from payments from the Supplemental Interest Trust, or by the Swap Counterparty to the Supplemental Interest Trust Trustee for payment to the Supplemental Interest Trust, as applicable, pursuant to the terms of the Swap Agreement.

Tax Returns:  The federal income tax return on Internal Revenue Service Form 1066, U.S. Real Estate Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice to Residual Interest Holders of REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be filed on behalf of any REMIC hereunder due to its classification as a REMIC under the REMIC Provisions, together with any and all other information, reports or returns that may be required to be furnished to the Certificateholders or filed with the Internal Revenue Service or any other governmental taxing authority under any applicable provisions of federal, state or local tax laws.

Telerate Screen Page 3750:  As defined in Section 1.02.

Transfer:  Any direct or indirect transfer, sale, pledge, hypothecation or other form of assignment of any Ownership Interest in a Certificate.

<u>Transfer Affidavit and Agreement</u>: As defined in Section 5.02(f).

<u>Transferee</u>: Any Person who is acquiring by Transfer any Ownership Interest in a Certificate.

<u>Transferor</u>: Any Person who is disposing by Transfer of any Ownership Interest in a Certificate.

<u>Trigger Event</u>: A Trigger Event is in effect with respect to any Distribution Date on or after the Stepdown Date if either (a) the Certificate Insurer pays any Insured Payment under the Certificate Guaranty Insurance Policy, (b) the related Sixty-Plus Delinquency Percentage, as determined on that Distribution Date, equals or exceeds 30.00% of the Stated Principal Balance of the Mortgage Loans for that Distribution Date or (c) on or after the Distribution Date in September 2009, the aggregate amount of Realized Losses on the Mortgage Loans as a percentage of the Cut-off Date Balance exceeds the applicable amount set forth below:

| | |
|---|---|
| September 2009 to February 2010: | 2.25% with respect to September 2009, plus an additional 1/6th of 1.00% for each month thereafter. |
| March 2010 to February 2011: | 3.25% with respect to March 2010, plus an additional 1/12th of 1.75% for each month thereafter. |
| March 2011 to February 2012: | 5.00% with respect to March 2011, plus an additional 1/12th of 1.50% for each month thereafter. |
| March 2012 to February 2013: | 6.50% with respect to March 2012, plus an additional 1/12th of 0.75% for each month thereafter. |
| March 2013 and thereafter: | 7.25%. |

<u>Trustee</u>: As defined in the preamble hereto.

<u>Trust Fund</u>: Collectively, the assets of each REMIC hereunder and the assets in the Supplemetnal Interest Trust.

<u>Uncertificated Accrued Interest</u>: With respect to any Uncertificated Regular Interest for any Distribution Date, one month's interest at the related Uncertificated Pass-Through Rate for such Distribution Date, accrued on the Uncertificated Principal Balance or Uncertificated Notional Amount, as applicable, immediately prior to such Distribution Date. Uncertificated Accrued Interest for the Uncertificated Regular Interests shall accrue on the basis of a 360-day year consisting of twelve 30-day months. For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC I Regular Interests for any Distribution Date, any Prepayment Interest Shortfalls and Relief Act Shortfalls (to the extent not covered by Compensating Interest) shall be allocated among REMIC I Regular Interests, pro rata, based on, and to the extent of, Uncertificated Accrued Interest, as calculated without application of this sentence. For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC II Regular Interests for any Distribution Date, any Prepayment Interest Shortfalls and Relief Act Shortfalls (to the extent not covered by Compensating Interest) shall be allocated among REMIC II Regular Interests, pro rata, based on, and to the extent of, Uncertificated Accrued Interest, as calculated without application of this sentence. Uncertificated Accrued Interest on REMIC III Regular Interests SB-PO-I and SB-PO-II shall be zero. Aggregate Uncertificated Accrued Interest on REMIC III Regular Interests SB-IO-I and SB-IO-II for each Distribution Date shall equal Accrued Certificate Interest for the Class SB Certificates.

Uncertificated Notional Amount: With respect to the Class SB Certificates, immediately prior to any Distribution Date, the aggregate of the Uncertificated Principal Balances of the REMIC II Regular Interests. With respect to REMIC III Regular Interest SB-IO-I, immediately prior to any Distribution Date, the aggregate of the Uncertificated Principal Balances of REMIC II Regular Interests LT1, LT2, LT3 and LT4. With respect to REMIC III Regular Interest SB-IO-II, immediately prior to any Distribution Date, the aggregate of the Uncertificated Principal Balances of REMIC II Regular Interests LT5, LT6, LT7 and LT8.

With respect to REMIC II Regular Interest LT-IO and each Distribution Date listed below, the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests ending with the designation "A" listed below:

| Distribution Date | REMIC I Regular Interests |
|:---:|:---:|
| 1 | I-1-A through I-40-A |
| 2 | I-1-A through I-40-A |
| 3 | I-1-A through I-40-A |
| 4 | I-2-A through I-40-A |
| 5 | I-3-A through I-40-A |
| 6 | I-4-A through I-40-A |
| 7 | I-5-A through I-40A |
| 8 | I-6-A through I-40-A |
| 9 | I-7-A through I-40-A |
| 10 | I-8-A through I-40-A |
| 11 | I-9-A through I-40-A |
| 12 | I-10-A through I-40-A |
| 13 | I-11-A through I-40-A |
| 14 | I-12-A through I-40-A |
| 15 | I-13-A through I-40-A |
| 16 | I-14-A through I-40-A |
| 17 | I-15-A through I-40-A |
| 18 | I-16-A through I-40-A |
| 19 | I-17-A through I-40-A |
| 20 | I-18-A through I-40-A |
| 21 | I-19-A through I-40-A |
| 22 | I-20-A through I-40-A |
| 23 | I-21-A through I-40-A |
| 24 | I-22-A through I-40-A |
| 25 | I-23-A through I-40-A |
| 26 | I-24-A through I-40-A |
| 27 | I-25-A through I-40-A |
| 28 | I-26-A through I-40-A |
| 29 | I-27-A through I-40-A |
| 30 | I-28-A through I-40-A |
| 31 | I-29-A through I-40-A |
| 32 | I-29-A through I-40-A |
| 33 | I-29-A through I-40-A |
| 34 | I-29-A through I-40-A |
| 35 | I-29-A through I-40-A |
| 36 | I-29-A through I-40-A |
| 37 | I-29-A through I-40-A |

| Distribution Date | REMIC I Regular Interests |
|---|---|
| 38 | I-29-A through I-40-A |
| 39 | I-29-A through I-40-A |
| 40 | I-29-A through I-40-A |
| 41 | I-29-A through I-40-A |
| 42 | I-29-A through I-40-A |
| 43 | I-29-A through I-40-A |
| 44 | I-29-A through I-40-A |
| 45 | I-29-A through I-40-A |
| 46 | I-29-A through I-40-A |
| 47 | I-30-A through I-40-A |
| 48 | I-31-A through I-40-A |
| 49 | I-32-A through I-40-A |
| 50 | I-33-A through I-40-A |
| 51 | I-34-A through I-40-A |
| 52 | I-35-A through I-40-A |
| 53 | I-36-A through I-40-A |
| 54 | I-37-A through I-40-A |
| 55 | I-38-A through I-40-A |
| 56 | I-39-A through I-40-A |
| 57 | I-40-A |
| thereafter | $0.00 |

With respect to REMIC III Regular Interest IO, immediately prior to any Distribution Date, an amount equal to the Uncertificated Notional Amount of REMIC II Regular Interest LT-IO.

Uncertificated Pass-Through Rate: The Uncertificated REMIC I Pass-Through Rate or the Uncertificated REMIC II Pass-Through Rate, as applicable.

Uncertificated Principal Balance: The principal amount of any Uncertificated Regular Interest outstanding as of any date of determination. The Uncertificated Principal Balance of each REMIC Regular Interest shall never be less than zero. With respect to REMIC III Regular Interest SB-PO-I, the aggregate initial Stated Principal Balance of the Group I Mortgage Loans as of the Cut-off Date less the aggregate initial Certificate Principal Balance of the Class A-I Certificates, as reduced by distributions deemed made in respect thereof pursuant to Section 4.02 and Realized Losses allocated thereto pursuant to Section 4.05. With respect to REMIC III Regular Interest SB-PO-II, the aggregate initial Stated Principal Balance of the Group II Mortgage Loans as of the Cut-off Date less the initial Certificate Principal Balance of the Class A-II Certificates, as reduced by distributions deemed made in respect thereof pursuant to Section 4.02 and Realized Losses allocated thereto pursuant to Section 4.05.

Uncertificated Regular Interests: The REMIC I Regular Interests and the REMIC II Regular Interests.

Uncertificated REMIC I Pass-Through Rate: With respect to each REMIC I Regular Interest ending with the designation "A," a per annum rate equal to the weighted average of the Net Mortgage Rates on the Mortgage Loans multiplied by two (2), subject to a maximum rate of 10.13%. With respect to each REMIC I Regular Interest ending with the designation "B," the greater of (x) a per annum rate equal to the excess, if any, of (i) 2 multiplied by the weighted average of the Net Mortgage Rates on the Mortgage Loans over (ii) 10.13% and (y) 0.00000%. With respect to REMIC I Regular Interest A-I, the weighted average of the Net Mortgage Rates on the Mortgage Loans. With respect to REMIC I Regular

Interest I, the weighted average of the Net Mortgage Rates on the Group I Loans. With respect to REMIC I Regular Interest II, the weighted average of the Net Mortgage Rates on the Group II Loans.

Uncertificated REMIC II Pass-Through Rate: With respect to any Distribution Date and (i) REMIC II Regular Interests LT1 and LT2, the Group I REMIC II Net WAC Rate, (ii) REMIC II Regular Interests LT5 and LT6, the Group II REMIC II Net WAC Rate, (iii) REMIC II Regular Interests LT3 and LT7, zero (0.00%), (iv) REMIC II Regular Interest LT4, twice the Group I REMIC II Net WAC Rate, (v) REMIC II Regular Interest LT8, twice the Group II REMIC II Net WAC Rate; and (vi) REMIC II Regular Interest LT-IO, the excess of (i) the weighted average of the Uncertificated REMIC I Pass-Through Rates for REMIC I Regular Interests ending with the designation "A," over (ii) 2 multiplied by Swap LIBOR.

Uniform Single Attestation Program for Mortgage Bankers: The Uniform Single Attestation Program for Mortgage Bankers, as published by the Mortgage Bankers Association of America and effective with respect to fiscal periods ending on or after December 15, 1995.

Uninsured Cause: Any cause of damage to property subject to a Mortgage such that the complete restoration of such property is not fully reimbursable by the hazard insurance policies.

United States Person: A citizen or resident of the United States, a corporation, partnership or other entity (treated as a corporation or partnership for United States federal income tax purposes) created or organized in, or under the laws of, the United States, any state thereof, or the District of Columbia (except in the case of a partnership, to the extent provided in Treasury regulations) *provided* that, for purposes solely of the restrictions on the transfer of Class R Certificates, no partnership or other entity treated as a partnership for United States federal income tax purposes shall be treated as a United States Person unless all persons that own an interest in such partnership either directly or through any entity that is not a corporation for United States federal income tax purposes are required by the applicable operative agreement to be United States Persons, or an estate that is described in Section 7701(a)(30)(D) of the Code, or a trust that is described in Section 7701(a)(30)(E) of the Code.

Voting Rights: The portion of the voting rights of all of the Certificates which is allocated to any Certificate. 98.00% of all of the Voting Rights shall be allocated among the Holders of the Class A Certificates, in proportion to the outstanding Certificate Principal Balances of their respective Certificates, 1% of all of the Voting Rights shall be allocated to the Holders of the Class SB Certificates, and 1% of all of the Voting Rights shall be allocated to the Holders of the Class R Certificates, in each case to be allocated among the Certificates of such Class in accordance with their respective Percentage Interests; provided that so long as there is no Certificate Insurer Default, the Voting Rights of the Class A Certificateholders may be exercised by the Certificate Insurer without the consent of such Holders and may only be exercised by such Holders with the prior written consent of the Certificate Insurer.

Section 1.02.    Determination of LIBOR.

LIBOR applicable to the calculation of the Pass-Through Rate on the LIBOR Certificates for any Interest Accrual Period will be determined as of each LIBOR Rate Adjustment Date. On each LIBOR Rate Adjustment Date, or if such LIBOR Rate Adjustment Date is not a Business Day, then on the next succeeding Business Day, LIBOR shall be established by the Trustee and, as to any Interest Accrual Period, will equal the rate for one month United States dollar deposits that appears on the Telerate Screen Page 3750 as of 11:00 a.m., London time, on such LIBOR Rate Adjustment Date. "Telerate Screen Page 3750" means the display designated as page 3750 on the Bridge Telerate Service (or such other page as may replace page 3750 on that service for the purpose of displaying London interbank offered rates of major banks). If such rate does not appear on such page (or such other page as may replace that page on

that service, or if such service is no longer offered, LIBOR shall be so established by use of such other service for displaying LIBOR or comparable rates as may be selected by the Trustee after consultation with the Master Servicer and the Certificate Insurer), the rate will be the Reference Bank Rate. The "Reference Bank Rate" will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the reference banks (which shall be any three major banks that are engaged in transactions in the London interbank market, selected by the Trustee after consultation with the Master Servicer and the Certificate Insurer) as of 11:00 a.m., London time, on the LIBOR Rate Adjustment Date to prime banks in the London interbank market for a period of one month in amounts approximately equal to the aggregate Certificate Principal Balance of the LIBOR Certificates then outstanding. The Trustee shall request the principal London office of each of the reference banks to provide a quotation of its rate. If at least two such quotations are provided, the rate will be the arithmetic mean of the quotations rounded up to the next multiple of 1/16%. If on such date fewer than two quotations are provided as requested, the rate will be the arithmetic mean of the rates quoted by one or more major banks in New York City, selected by the Trustee after consultation with the Master Servicer and the Certificate Insurer, as of 11:00 a.m., New York City time, on such date for loans in U.S. Dollars to leading European banks for a period of one month in amounts approximately equal to the aggregate Certificate Principal Balance of the LIBOR Certificates then outstanding. If no such quotations can be obtained, the rate will be LIBOR for the prior Distribution Date; provided however, if, under the priorities described above, LIBOR for a Distribution Date would be based on LIBOR for the previous Distribution Date for the third consecutive Distribution Date, the Trustee, after consultation with the Master Servicer and the Certificate Insurer, shall select an alternative comparable index (over which the Trustee has no control), used for determining one-month Eurodollar lending rates that is calculated and published (or otherwise made available) by an independent party. The establishment of LIBOR by the Trustee on any LIBOR Rate Adjustment Date and the Trustee's subsequent calculation of the Pass-Through Rates applicable to the LIBOR Certificates for the relevant Interest Accrual Period, in the absence of manifest error, will be final and binding. Promptly following each LIBOR Rate Adjustment Date the Trustee shall supply the Master Servicer with the results of its determination of LIBOR on such date. Furthermore, the Trustee shall supply to any Certificateholder so requesting by calling 1-800-934-6802, the Pass-Through Rate on the LIBOR Certificates for the current and the immediately preceding Interest Accrual Period.

## ARTICLE II
## CONVEYANCE OF MORTGAGE LOANS;
## ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01.    Conveyance of Mortgage Loans.

(a)    The Depositor, concurrently with the execution and delivery hereof, does hereby assign to the Trustee in respect of the Trust Fund without recourse all the right, title and interest of the Depositor in and to (i) the Mortgage Loans, including all interest and principal on or with respect to the Mortgage Loans due on or after the Cut-off Date (other than Monthly Payments due in the month of the Cut-off Date); and (ii) all proceeds of the foregoing. The Depositor, the Master Servicer and the Trustee agree that it is not intended that any Mortgage Loan be included in the Trust Fund that is either (i) a High-Cost Home Loan as defined in the New Jersey Home Ownership Act effective November 27, 2003, (ii) a High-Cost Home Loan as defined in the New Mexico Home Loan Protection Act effective January 1, 2004, (iii) a High-Cost Home Loan as defined in the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004 or (iv) a High-Cost Home Loan as defined in the Indiana High Cost Home Loan Law Act effective January 1, 2005.

(b)    In connection with such assignment, and contemporaneously with the delivery of this Agreement, except as set forth in Section 2.01(c) below and subject to Section 2.01(d) below, the Depositor does hereby (1) with respect to each Mortgage Loan, deliver to the Master Servicer (or an Affiliate of the Master Servicer) each of the documents or instruments described in clause (ii) below (and the Master Servicer shall hold (or cause such Affiliate to hold) such documents or instruments in trust for the use and benefit of all present and future Certificateholders), (2) with respect to each MOM Loan, deliver to, and deposit with, the Trustee, or the Custodian, as the duly appointed agent of the Trustee for such purpose, the documents or instruments described in clauses (i) and (v) below, (3) with respect to each Mortgage Loan that is not a MOM Loan but is registered on the MERS® System, deliver to, and deposit with, the Trustee, or the Custodian, as the duly appointed agent of the Trustee for such purpose, the documents or instruments described in clauses (i), (iv) and (v) below and (4) with respect to each Mortgage Loan that is not a MOM Loan and is not registered on the MERS® System, deliver to, and deposit with, the Trustee, or the Custodian, as the duly appointed agent of the Trustee for such purpose, the documents or instruments described in clauses (i), (iii), (iv) and (v) below.

(i)    The original Mortgage Note, endorsed without recourse to the order of the Trustee and showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee, or with respect to any Destroyed Mortgage Note, an original lost note affidavit from the related Seller or Residential Funding stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note.

(ii)    The original Mortgage, noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recording indicated thereon or a copy of the original Mortgage with evidence of recording indicated thereon.

(iii)    The assignment (which may be included in one or more blanket assignments if permitted by applicable law) of the Mortgage to the Trustee with evidence of recording indicated thereon or a copy of such assignment with evidence of recording indicated thereon.

(iv)    The original recorded assignment or assignments of the Mortgage showing an unbroken chain of title from the originator to the Person assigning it to the Trustee (or to MERS, if the Mortgage Loan is registered on the MERS® System and noting the presence of a MIN) with evidence of

recordation noted thereon or attached thereto, or a copy of such assignment or assignments of the Mortgage with evidence of recording indicated thereon.

(v)    The original of each modification, assumption agreement or preferred loan agreement, if any, relating to such Mortgage Loan, or a copy of each modification, assumption agreement or preferred loan agreement.

The Depositor may, in lieu of delivering the original of the documents set forth in Section 2.01(b)(iii), (iv) and (v) (or copies thereof) to the Trustee or the Custodian, deliver such documents to the Master Servicer, and the Master Servicer shall hold such documents in trust for the use and benefit of all present and future Certificateholders until such time as is set forth in the next sentence. Within thirty Business Days following the earlier of (i) the receipt of the original of all of the documents or instruments set forth in Section 2.01(b)(iii), (iv) and (v) (or copies thereof) for any Mortgage Loan and (ii) a written request by the Trustee to deliver those documents with respect to any or all of the Mortgage Loans then being held by the Master Servicer, the Master Servicer shall deliver a complete set of such documents to the Trustee or the Custodian, as duly appointed agent of the Trustee.

(c)    Notwithstanding the provisions of Section 2.01(b), in the event that in connection with any Mortgage Loan, if the Depositor cannot deliver the original of the Mortgage, any assignment, modification, assumption agreement or preferred loan agreement (or copy thereof as permitted by Section 2.01(b)) with evidence of recording thereon concurrently with the execution and delivery of this Agreement because of (i) a delay caused by the public recording office where such Mortgage, assignment, modification, assumption agreement or preferred loan agreement as the case may be, has been delivered for recordation, or (ii) a delay in the receipt of certain information necessary to prepare the related assignments, the Depositor shall deliver or cause to be delivered to the Trustee or the respective Custodian a copy of such Mortgage, assignment, modification, assumption agreement or preferred loan agreement.

The Depositor shall promptly cause to be recorded in the appropriate public office for real property records the Assignment referred to in clause (iii) of Section 2.01(b), except (a) in states where, in an Opinion of Counsel acceptable to the Master Servicer and the Certificate Insurer, such recording is not required to protect the Trustee's interests in the Mortgage Loan or (b) if MERS is identified on the Mortgage or on a properly recorded assignment of the Mortgage, as applicable, as the mortgagee of record solely as nominee for Residential Funding and its successors and assigns. If any Assignment is lost or returned unrecorded to the Depositor because of any defect therein, the Depositor shall prepare a substitute Assignment or cure such defect, as the case may be, and cause such Assignment to be recorded in accordance with this paragraph. The Depositor shall promptly deliver or cause to be delivered to the applicable person described in Section 2.01(b), any Assignment or substitute Assignment (or copy thereof) recorded in connection with this paragraph, with evidence of recording indicated thereon upon receipt thereof from the public recording office or from the related Subservicer or Seller.

If the Depositor delivers to the Trustee or Custodian any Mortgage Note or Assignment of Mortgage in blank, the Depositor shall, or shall cause the Custodian to, complete the endorsement of the Mortgage Note and the Assignment of Mortgage in the name of the Trustee in conjunction with the Interim Certification issued by the Custodian, as contemplated by Section 2.02.

In connection with the assignment of any Mortgage Loan registered on the MERS® System, the Depositor further agrees that it will cause, at the Depositor's own expense, within 30 Business Days after the Closing Date, the MERS® System to indicate that such Mortgage Loans have been assigned by the Depositor to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this

Agreement) in such computer files (a) the code in the field which identifies the specific Trustee and (b)the code in the field "Pool Field" which identifies the series of the Certificates issued in connection with such Mortgage Loans. The Depositor further agrees that it will not, and will not permit the Master Servicer to, and the Master Servicer agrees that it will not, alter the codes referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

(d)    It is intended that the conveyances by the Depositor to the Trustee of the Mortgage Loans as provided for in this Section 2.01 and the Uncertificated Regular Interests be construed as a sale by the Depositor to the Trustee of the Mortgage Loans and the Uncertificated Regular Interests for the benefit of the Certificateholders and the Certificate Insurer. Further, it is not intended that any such conveyance be deemed to be a pledge of the Mortgage Loans and the Uncertificated Regular Interests by the Depositor to the Trustee to secure a debt or other obligation of the Depositor. Nonetheless, (a) this Agreement is intended to be and hereby is a security agreement within the meaning of Articles 8 and 9 of the New York Uniform Commercial Code and the Uniform Commercial Code of any other applicable jurisdiction; (b) the conveyances provided for in this Section 2.01 shall be deemed to be (1) a grant by the Depositor to the Trustee of a security interest in all of the Depositor's right (including the power to convey title thereto), title and interest, whether now owned or hereafter acquired, in and to (A) the Mortgage Loans, including the related Mortgage Note, the Mortgage, any insurance policies and all other documents in the related Mortgage File, (B) all amounts payable pursuant to the Mortgage Loans in accordance with the terms thereof, (C) the Swap Agreement, including without limitation all amounts received thereunder and amounts from time to time held or invested in the Supplemental Interest Trust Account, whether in the form of cash, instruments, securities or other property, (D) any Uncertificated Regular Interests and any and all general intangibles, payment intangibles, accounts, chattel paper, instruments, documents, money, deposit accounts, certificates of deposit, goods, letters of credit, advices of credit and investment property and other property of whatever kind or description now existing or hereafter acquired consisting of, arising from or relating to any of the foregoing, and (E) all proceeds of the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other property, including without limitation all amounts from time to time held or invested in the Certificate Account or the Custodial Account, whether in the form of cash, instruments, securities or other property and (2) an assignment by the Depositor to the Trustee of any security interest in any and all of Residential Funding's right (including the power to convey title thereto), title and interest, whether now owned or hereafter acquired, in and to the property described in the foregoing clauses (1)(A), (B), (C), (D) and (E) granted by Residential Funding to the Depositor pursuant to the Assignment Agreement; (c) the possession by the Trustee, the Custodian or any other agent of the Trustee of Mortgage Notes or such other items of property as constitute instruments, money, payment intangibles, negotiable documents, goods, deposit accounts, letters of credit, advices of credit, investment property, certificated securities or chattel paper shall be deemed to be "possession by the secured party," or possession by a purchaser or a person designated by such secured party, for purposes of perfecting the security interest pursuant to the Minnesota Uniform Commercial Code and the Uniform Commercial Code of any other applicable jurisdiction as in effect (including, without limitation, Sections 8-106, 9-313 and 9-106 thereof); and (d)notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or confirmations from, securities intermediaries, bailees or agents of, or persons holding for, (as applicable) the Trustee for the purpose of perfecting such security interest under applicable law.

The Depositor and, at the Depositor's direction, Residential Funding and the Trustee shall, to the extent consistent with this Agreement, take such reasonable actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Mortgage Loans and the Uncertificated Regular Interests and the other property described above, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout

the term of this Agreement. Without limiting the generality of the foregoing, the Depositor shall prepare and deliver to the Trustee not less than 15 days prior to any filing date and, the Trustee shall forward for filing, or shall cause to be forwarded for filing, at the expense of the Depositor, all filings necessary to maintain the effectiveness of any original filings necessary under the Uniform Commercial Code as in effect in any jurisdiction to perfect the Trustee's security interest in or lien on the Mortgage Loans and the Uncertificated Regular Interests, as evidenced by an Officers' Certificate of the Depositor, with a copy delivered to the Certificate Insurer, including without limitation (x) continuation statements, and (y) such other statements as may be occasioned by (1)any change of name of Residential Funding, the Depositor or the Trustee (such preparation and filing shall be at the expense of the Trustee, if occasioned by a change in the Trustee's name), (2) any change of location of the place of business or the chief executive office of Residential Funding or the Depositor, (3)any transfer of any interest of Residential Funding or the Depositor in any Mortgage Loan or (4) any transfer of any interest of Residential Funding or the Depositor in any Uncertificated Regular Interests.

Section 2.02.    <u>Acceptance by Trustee</u>.

The Trustee acknowledges receipt (or, with respect to Mortgage Loans subject to a Custodial Agreement, and based solely upon a receipt or certification executed by the Custodian, receipt by the respective Custodian as the duly appointed agent of the Trustee) of the documents referred to in Section 2.01(b)(i) above (except that for purposes of such acknowledgement only, a Mortgage Note may be endorsed in blank and an Assignment of Mortgage may be in blank) and declares that it, or the Custodian as its agent, holds and will hold such documents and the other documents constituting a part of the Custodial Files delivered to it, or the Custodian as its agent, in trust for the use and benefit of all present and future Certificateholders and the Certificate Insurer. The Trustee or Custodian (the Custodian being so obligated under a Custodial Agreement) agrees, for the benefit of Certificateholders and the Certificate Insurer, to review each Custodial File delivered to it pursuant to Section 2.01(b) within 90 days after the Closing Date to ascertain that all required documents (specifically as set forth in Section 2.01(b)), have been executed and received, and that such documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule, as supplemented, that have been conveyed to it, and to deliver to the Trustee a certificate (the "Interim Certification") to the effect that all documents required to be delivered pursuant to Section 2.01(b) above have been executed and received and that such documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule, except for any exceptions listed on Schedule A attached to such Interim Certification. Upon delivery of the Custodial Files by the Depositor or the Master Servicer, the Trustee shall acknowledge receipt (or, with respect to Mortgage Loans subject to a Custodial Agreement, and based solely upon a receipt or certification executed by the Custodian, receipt by the respective Custodian as the duly appointed agent of the Trustee) of the documents referred to in Section 2.01(b) above.

If the Custodian, as the Trustee's agent, finds any document or documents constituting a part of a Custodial File to be missing or defective, upon receipt of notification from the Custodian as specified in the succeeding sentence, the Trustee shall promptly so notify or cause the Custodian to notify the Master Servicer and the Depositor. Pursuant to Section 2.3 of the Custodial Agreement, the Custodian will notify the Master Servicer, the Depositor and the Trustee of any such omission or defect found by it in respect of any Custodial File held by it in respect of the items received by it pursuant to the Custodial Agreement. If such omission or defect materially and adversely affects the interests in the related Mortgage Loan of the Certificateholders or the Certificate Insurer, the Master Servicer shall promptly notify the related Subservicer or Seller of such omission or defect and request that such Subservicer or Seller correct or cure such omission or defect within 60 days from the date the Master Servicer was notified of such omission or defect and, if such Subservicer or Seller does not correct or cure such omission or defect within such period, that such Subservicer or Seller purchase such Mortgage Loan from the Trust Fund at its Purchase Price, in either case within 90 days from the date the Master Servicer was notified of such

omission or defect; provided that if the omission or defect would cause the Mortgage Loan to be other
than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase
must occur within 90 days from the date such breach was discovered. The Purchase Price for any such
Mortgage Loan shall be deposited or caused to be deposited by the Master Servicer in the Custodial
Account maintained by it pursuant to Section 3.07 and, upon receipt by the Trustee of written notification
of such deposit signed by a Servicing Officer, Master Servicer, the Trustee or the Custodian, as the case
may be, shall release the contents of any related Mortgage File in its possession to the owner of such
Mortgage Loan (or such owner's designee) and the Trustee shall execute and deliver such instruments of
transfer or assignment prepared by the Master Servicer, in each case without recourse, as shall be
necessary to vest in the Subservicer or Seller or its designee, as the case may be, any Mortgage Loan
released pursuant hereto and thereafter such Mortgage Loan shall not be part of the Trust Fund.   In
furtherance of the foregoing and Section 2.04, if the Subservicer or Seller or Residential Funding that
repurchases the Mortgage Loan is not a member of MERS and the Mortgage is registered on the MERS®
System, the Master Servicer, at its own expense and without any right of reimbursement, shall cause
MERS to execute and deliver an assignment of the Mortgage in recordable form to transfer the Mortgage
from MERS to such Subservicer or Seller or Residential Funding and shall cause such Mortgage to be
removed from registration on the MERS® System in accordance with MERS' rules and regulations. It is
understood and agreed that the obligation of the Subservicer or Seller, to so cure or purchase any
Mortgage Loan as to which a material and adverse defect in or omission of a constituent document exists
shall constitute the sole remedy respecting such defect or omission available to Certificateholders or the
Trustee on behalf of Certificateholders (except for the Certificate Insurer's rights under the Insurance
Agreement).

Section 2.03.    Representations, Warranties and Covenants of the Master Servicer and the
Depositor.

(a)    The Master Servicer hereby represents and warrants to the Trustee for the benefit of the
Certificateholders and the Certificate Insurer that as of the Closing Date:

(i)    The Master Servicer is a limited liability company duly organized, validly
existing and in good standing under the laws governing its creation and existence and is or will be in
compliance with the laws of each state in which any Mortgaged Property is located to the extent
necessary to ensure the enforceability of each Mortgage Loan in accordance with the terms of this
Agreement;

(ii)    The execution and delivery of this Agreement by the Master Servicer and its
performance and compliance with the terms of this Agreement will not violate the Master Servicer's
Certificate of Formation or Limited Liability Company Agreement or constitute a material default (or an
event which, with notice or lapse of time, or both, would constitute a material default) under, or result in
the material breach of, any material contract, agreement or other instrument to which the Master Servicer
is a party or which may be applicable to the Master Servicer or any of its assets;

(iii)    This Agreement, assuming due authorization, execution and delivery by the
Trustee and the Depositor, constitutes a valid, legal and binding obligation of the Master Servicer,
enforceable against it in accordance with the terms hereof subject to applicable bankruptcy, insolvency,
reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and to
general principles of equity, regardless of whether such enforcement is considered in a proceeding in
equity or at law;

(iv)    The Master Servicer is not in default with respect to any order or decree of any
court or any order, regulation or demand of any federal, state, municipal or governmental agency, which

default might have consequences that would materially and adversely affect the condition (financial or other) or operations of the Master Servicer or its properties or might have consequences that would materially adversely affect its performance hereunder;

(v)    No litigation is pending or, to the best of the Master Servicer's knowledge, threatened against the Master Servicer which would prohibit its entering into this Agreement or performing its obligations under this Agreement;

(vi)    The Master Servicer shall comply in all material respects in the performance of this Agreement with all reasonable rules and requirements of each insurer under each Required Insurance Policy;

(vii)    No information, certificate of an officer, statement furnished in writing or report delivered to the Depositor, any Affiliate of the Depositor, the Trustee or the Certificate Insurer by the Master Servicer will, to the knowledge of the Master Servicer, contain any untrue statement of a material fact or omit a material fact necessary to make the information, certificate, statement or report not misleading;

(viii)    The Master Servicer has examined each existing, and will examine each new, Subservicing Agreement and is or will be familiar with the terms thereof. The terms of each existing Subservicing Agreement and each designated Subservicer are acceptable to the Master Servicer and any new Subservicing Agreements will comply with the provisions of Section 3.02;

(ix)    The Master Servicer is a member of MERS in good standing, and will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the Mortgage Loans that are registered with MERS; and

(x)    The Servicing Guide of the Master Servicer requires that the Subservicer for each Mortgage Loan accurately and fully reports its borrower credit files to each of the Credit Repositories in a timely manner.

It is understood and agreed that the representations and warranties set forth in this Section 2.03(a) shall survive delivery of the respective Custodial Files to the Trustee or the Custodian. Upon discovery by either the Depositor, the Master Servicer, the Certificate Insurer, the Trustee or the Custodian of a breach of any representation or warranty set forth in this Section 2.03(a) which materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (the Custodian being so obligated under a Custodial Agreement). Within 90days of its discovery or its receipt of notice of such breach, the Master Servicer shall either (i) cure such breach in all material respects or (ii) to the extent that such breach is with respect to a Mortgage Loan or a related document, purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that if the breach would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase must occur within 90 days from the date such breach was discovered. The obligation of the Master Servicer to cure such breach or to so purchase such Mortgage Loan shall constitute the sole remedy in respect of a breach of a representation and warranty set forth in this Section 2.03(a) available to the Certificateholders or the Trustee on behalf of the Certificateholders (except for the Certificate Insurer's rights under Section 3.03 of the Insurance Agreement.

(b)    The Depositor hereby represents and warrants to the Trustee for the benefit of the Certificateholders and the Certificate Insurer that as of the Closing Date (or, if otherwise specified below,

as of the date so specified): (i) immediately prior to the conveyance of the Mortgage Loans to the Trustee, the Depositor had good title to, and was the sole owner of, each Mortgage Loan free and clear of any pledge, lien, encumbrance or security interest (other than rights to servicing and related compensation) and such conveyance validly transfers ownership of the Mortgage Loans to the Trustee free and clear of any pledge, lien, encumbrance or security interest; and (ii) each Mortgage Loan constitutes a "qualified mortgage" under Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9).

It is understood and agreed that the representations and warranties set forth in this Section 2.03(b) *shall survive delivery of the respective Custodial Files to the Trustee or the Custodian.*

Upon discovery by any of the Depositor, the Master Servicer, the Certificate Insurer, the Trustee or the Custodian of a breach of any of the representations and warranties set forth in this Section 2.03(b) which materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties and the Certificate Insurer (the Custodian being so obligated under a Custodial Agreement); *provided, however,* that in the event of a breach of the representation and warranty set forth in Section 2.03(b)(ii), the party discovering such breach shall give such notice within five days of discovery. Within 90 days of its discovery or its receipt of notice of breach, the Depositor shall either (i) cure such breach in all material respects or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that the Depositor shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; provided that if the omission or defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure, substitution or repurchase must occur within 90 days from the date such breach was discovered. Any such substitution shall be effected by the Depositor under the same terms and conditions as provided in Section 2.04 for substitutions by Residential Funding. It is understood and agreed that the obligation of the Depositor to cure such breach or to so purchase or substitute for any Mortgage Loan as to which such a breach has occurred and is continuing shall constitute the sole remedy respecting such breach available to the Certificateholders (other than the Certificate Insurer) or the Trustee on behalf of the Certificateholders (other than the Certificate Insurer).

Section 2.04.    <u>Representations and Warranties of Sellers.</u>

The Depositor, as assignee of Residential Funding under the Assignment Agreement, hereby assigns to the Trustee for the benefit of the Certificateholders and the Certificate Insurer all of its right, title and interest in respect of the Assignment Agreement applicable to a Mortgage Loan as and to the extent set forth in the Assignment Agreement. Insofar as the Assignment Agreement relates to the representations and warranties made by Residential Funding in respect of such Mortgage Loan and any remedies provided thereunder for any breach of such representations and warranties, such right, title and interest may be enforced by the Master Servicer on behalf of the Trustee, the Certificate Insurer and the Certificateholders. Upon the discovery by the Depositor, the Master Servicer, the Certificate Insurer, the Trustee or the Custodian of a breach of any of the representations and warranties made in the Assignment Agreement in respect of any Mortgage Loan or of any Repurchase Event which materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in such Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties and the Certificate Insurer (the Custodian being so obligated under a Custodial Agreement). The Master Servicer shall promptly

notify Residential Funding of such breach or Repurchase Event and request that Residential Funding either (i) cure such breach or Repurchase Event in all material respects within 90 days from the date the Master Servicer was notified of such breach or Repurchase Event or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02.

Upon the discovery by the Depositor, the Master Servicer, the Trustee or the Custodian of a breach of any of such representations and warranties set forth in the Assignment Agreement in respect of any Mortgage Loan which materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in such Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (the Custodian being so obligated under a Custodial Agreement). The Master Servicer shall promptly notify Residential Funding of such breach of a representation or warranty set forth in the Assignment Agreement and request that Residential Funding either (i) cure such breach in all material respects within 90 days from the date the Master Servicer was notified of such breach or (ii) purchase such Mortgage Loan from the Trust Fund within 90 days of the date of such written notice of such breach at the Purchase Price and in the manner set forth in Section 2.02; provided that Residential Funding shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; provided that if the breach would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or substitution must occur within 90 days from the date the breach was discovered. If the breach of representation and warranty that gave rise to the obligation to repurchase or substitute a Mortgage Loan pursuant to Section 4 of the Assignment Agreement was the representation and warranty set forth in clause (xliii) of Section 4 thereof, then the Master Servicer shall request that Residential Funding pay to the Trust Fund, concurrently with and in addition to the remedies provided in the preceding sentence, an amount equal to any liability, penalty or expense that was actually incurred and paid out of or on behalf of the Trust Fund, and that directly resulted from such breach, or if incurred and paid by the Trust Fund thereafter, concurrently with such payment. In the event that Residential Funding elects to substitute a Qualified Substitute Mortgage Loan or Loans for a Deleted Mortgage Loan pursuant to this Section 2.04, Residential Funding shall deliver to the Trustee for the benefit of the Certificateholders and the Certificate Insurer with respect to such Qualified Substitute Mortgage Loan or Loans, the original Mortgage Note, the Mortgage, an Assignment of the Mortgage in recordable form, and such other documents and agreements as are required by Section 2.01, with the Mortgage Note endorsed as required by Section 2.01. No substitution will be made in any calendar month after the Determination Date for such month. Monthly Payments due with respect to Qualified Substitute Mortgage Loans in the month of substitution shall not be part of the Trust Fund and will be retained by the Master Servicer and remitted by the Master Servicer to Residential Funding on the next succeeding Distribution Date. For the month of substitution, distributions to the Certificateholders will include the Monthly Payment due on a Deleted Mortgage Loan for such month and thereafter Residential Funding shall be entitled to retain all amounts received in respect of such Deleted Mortgage Loan. The Master Servicer shall amend or cause to be amended the Mortgage Loan Schedule for the benefit of the Certificateholders and the Certificate Insurer to reflect the removal of such Deleted Mortgage Loan and the substitution of the Qualified Substitute Mortgage Loan or Loans and the Master Servicer shall deliver the amended Mortgage Loan Schedule to the Trustee. Upon such substitution, the Qualified Substitute Mortgage Loan or Loans shall be subject to the terms of this Agreement and the related Subservicing Agreement in all respects, Residential Funding shall be deemed to have made the representations and warranties with respect to the Qualified Substitute Mortgage Loan (other than those of a statistical nature) contained in the Assignment Agreement as of the date of substitution, and the covenants, representations and warranties set forth in this Section 2.04, and in Section 2.03(b) hereof.

In connection with the substitution of one or more Qualified Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Master Servicer shall determine the amount (if any) by which the aggregate principal balance of all such Qualified Substitute Mortgage Loans as of the date of substitution

is less than the aggregate Stated Principal Balance of all such Deleted Mortgage Loans (in each case after application of the principal portion of the Monthly Payments due in the month of substitution that are to be distributed to the Certificateholders in the month of substitution). Residential Funding shall deposit or cause the related Seller to deposit the amount of such shortfall into the Custodial Account on the day of substitution, without any reimbursement therefor. Residential Funding shall give notice in writing to the Trustee of such event, which notice shall be accompanied by an Officers' Certificate as to the calculation of such shortfall and (subject to Section 10.01(f)) by an Opinion of Counsel to the effect that such substitution will not cause (a) any federal tax to be imposed on the Trust Fund, including without limitation, any federal tax imposed on "prohibited transactions" under Section 860F(a)(1) of the Code or on "contributions after the startup date" under Section 860G(d)(1) of the Code or (b) any portion of any REMIC created hereunder to fail to qualify as a REMIC at any time that any Certificate is outstanding.

It is understood and agreed that the obligation of Residential Funding to cure such breach or purchase (and in the case of Residential Funding to substitute for) such Mortgage Loan as to which such a breach has occurred and is continuing and to make any additional payments required under the Assignment Agreement in connection with a breach of the representation and warranty in clause (xliii) of Section 4 thereof shall constitute the sole remedy respecting such breach available to the Certificateholders (other than the Certificate Insurer) or the Trustee on behalf of the Certificateholders (other than the Certificate Insurer). If the Master Servicer is Residential Funding, then the Trustee shall also have the right, and, if directed by the Certificate Insurer, the obligation, to give the notification and require the purchase or substitution provided for in the second preceding paragraph in the event of such a breach of a representation or warranty made by Residential Funding in the Assignment Agreement. In connection with the purchase of or substitution for any such Mortgage Loan by Residential Funding, the Trustee shall assign to Residential Funding all of the Trustee's right, title and interest in respect of the Assignment Agreement applicable to such Mortgage Loan.

Section 2.05.    <u>Execution and Authentication of Certificates; Conveyance of REMIC-I Regular Interests.</u>

(a)    The Trustee acknowledges the assignment to it of the Mortgage Loans and the delivery of the Custodial Files to it, or the Custodian on its behalf, subject to any exceptions noted, together with the assignment to it of all other assets included in the Trust Fund, receipt of which is hereby acknowledged. Concurrently with such delivery and in exchange therefor, the Trustee, pursuant to the written request of the Depositor executed by an officer of the Depositor, has executed and caused to be authenticated and delivered to or upon the order of the Depositor the Certificates in authorized denominations which evidence ownership of the entire Trust Fund.

(b)    The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Depositor in and to the REMIC I Regular Interests and the REMIC II Regular Interests for the benefit of the Holders of each Class of Certificates (other than the Class R Certificates in respect of Components I and II thereof). The Trustee acknowledges receipt of the REMIC I Regular Interests, and the REMIC II Regular Interests, and declares that it holds and will hold the same in trust for the exclusive use and benefit of the Holders of each Class of Certificates (other than the Class R Certificates in respect of Components I and II thereof). The interests evidenced by Component III of the Class R Certificates, together with the REMIC III Regular Interests, constitute the entire beneficial ownership interest in REMIC III.

Section 2.06.    Purposes and Powers of the Trust.

The purpose of the trust, as created hereunder, is to engage in the following activities:

(a)    to sell the Certificates to the Depositor in exchange for the Mortgage Loans;

(b)    to enter into and perform its obligations under this Agreement;

(c)    to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(d)    subject to compliance with this Agreement, to engage in such other activities as may be required in connection with conservation of the Trust Fund and the making of distributions to the Certificateholders.

The trust is hereby authorized to engage in the foregoing activities.    Notwithstanding the provisions of Section 11.01, the trust shall not engage in any activity other than in connection with the foregoing or other than as required or authorized by the terms of this Agreement while any Certificate is outstanding, and this Section 2.06 may not be amended, without the consent of the Certificateholders evidencing a majority of the aggregate Voting Rights of the Certificates.

Section 2.07.    Agreement Regarding Ability to Disclose.

The Depositor, the Master Servicer and the Trustee hereby agree that, notwithstanding any other express or implied agreement to the contrary, any and all Persons, and any of their respective employees, representatives, and other agents may disclose, immediately upon commencement of discussions, to any and all Persons, without limitation of any kind, the tax treatment and tax structure of the transaction and all materials of any kind (including opinions or other tax analyses) that are provided to any of them relating to such tax treatment and tax structure.    For purposes of this paragraph, the terms "tax," "tax treatment," "tax structure," and "tax benefit" are defined under Treasury Regulation § 1.6011-4(c).

## ARTICLE III
## ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 3.01.    Master Servicer to Act as Servicer.

(a)    The Master Servicer shall service and administer the Mortgage Loans in accordance with the terms of this Agreement and the respective Mortgage Loans, following such procedures as it would employ in its good faith business judgment and which are normal and usual in its general mortgage servicing activities, and shall have full power and authority, acting alone or through Subservicers as provided in Section 3.02, to do any and all things which it may deem necessary or desirable in connection with such servicing and administration. Without limiting the generality of the foregoing, the Master Servicer in its own name or in the name of a Subservicer is hereby authorized and empowered by the Trustee when the Master Servicer or the Subservicer, as the case may be, believes it appropriate in its best judgment, to execute and deliver, on behalf of the Certificateholders and the Trustee or any of them, any and all instruments of satisfaction or cancellation, or of partial or full release or discharge, or of consent to assumption or modification in connection with a proposed conveyance, or of assignment of any Mortgage and Mortgage Note in connection with the repurchase of a Mortgage Loan and all other comparable instruments, or with respect to the modification or re-recording of a Mortgage for the purpose of correcting the Mortgage, the subordination of the lien of the Mortgage in favor of a public utility company or government agency or unit with powers of eminent domain, the taking of a deed in lieu of foreclosure, the commencement, prosecution or completion of judicial or non-judicial foreclosure, the conveyance of a Mortgaged Property to the related insurer, the acquisition of any property acquired by foreclosure or deed in lieu of foreclosure, or the management, marketing and conveyance of any property acquired by foreclosure or deed in lieu of foreclosure with respect to the Mortgage Loans and with respect to the Mortgaged Properties. The Master Servicer further is authorized and empowered by the Trustee, on behalf of the Certificateholders and the Trustee, in its own name or in the name of the Subservicer, when the Master Servicer or the Subservicer, as the case may be, believes it is appropriate in its best judgment to register any Mortgage Loan on the MERS® System, or cause the removal from the registration of any Mortgage Loan on the MERS® System, to execute and deliver, on behalf of the Trustee and the Certificateholders or any of them, any and all instruments of assignment and other comparable instruments with respect to such assignment or re-recording of a Mortgage in the name of MERS, solely as nominee for the Trustee and its successors and assigns. Any expenses incurred in connection with the actions described in the preceding sentence shall be borne by the Master Servicer in accordance with Section 3.16(c), with no right of reimbursement; provided, that if, as a result of MERS discontinuing or becoming unable to continue operations in connection with the MERS® System, it becomes necessary to remove any Mortgage Loan from registration on the MERS® System and to arrange for the assignment of the related Mortgages to the Trustee, then any related expenses shall be reimbursable to the Master Servicer as set forth in Section 3.10(a)(ii). Notwithstanding the foregoing, subject to Section 3.07(a), the Master Servicer shall not permit any modification with respect to any Mortgage Loan that would both constitute a sale or exchange of such Mortgage Loan within the meaning of Section 1001 of the Code and any proposed, temporary or final regulations promulgated thereunder (other than in connection with a proposed conveyance or assumption of such Mortgage Loan that is treated as a Principal Prepayment in Full pursuant to Section 3.13(d) hereof) and cause any REMIC created hereunder to fail to qualify as a REMIC under the Code. The Trustee shall furnish the Master Servicer with any powers of attorney and other documents necessary or appropriate to enable the Master Servicer to service and administer the Mortgage Loans. The Trustee shall not be liable for any action taken by the Master Servicer or any Subservicer pursuant to such powers of attorney or other documents. In servicing and administering any Nonsubserviced Mortgage Loan, the Master Servicer shall, to the extent not inconsistent with this Agreement, comply with the Program Guide as if it were the originator of such Mortgage Loan and had retained the servicing rights and obligations in respect thereof.

If the Mortgage relating to a Mortgage Loan did not have a lien senior to the Mortgage Loan on the related Mortgaged Property as of the Cut-off Date, then the Master Servicer, in such capacity, may not consent to the placing of a lien senior to that of the Mortgage on the related Mortgaged Property. If the Mortgage relating to a Mortgage Loan had a lien senior to the Mortgage Loan on the related Mortgaged Property as of the Cut-off Date, then the Master Servicer, in such capacity, may consent to the refinancing of the prior senior lien, provided that the following requirements are met:

(i)    (A)    the Mortgagor's debt-to-income ratio resulting from such refinancing is less than the original debt-to-income ratio as set forth on the Mortgage Loan Schedule; provided, however, that in no instance shall the resulting Combined Loan-to-Value Ratio ("Combined Loan-to-Value Ratio") of such Mortgage Loan be higher than that permitted by the Program Guide; or

(B)    the resulting Combined Loan-to-Value Ratio of such Mortgage Loan is no higher than the Combined Loan-to-Value Ratio prior to such refinancing; provided, however, if such refinanced mortgage loan is a "rate and term" mortgage loan (meaning, the Mortgagor does not receive any cash from the refinancing), the Combined Loan-to-Value Ratio may increase to the extent of either (x) the reasonable closing costs of such refinancing or (y) any decrease in the value of the related Mortgaged Property, if the Mortgagor is in good standing as defined by the Program Guide;

(ii)    the interest rate, or, in the case of an adjustable rate existing senior lien, the maximum interest rate, for the loan evidencing the refinanced senior lien is no more than 2.0% higher than the interest rate or the maximum interest rate, as the case may be, on the loan evidencing the existing senior · lien immediately prior to the date of such refinancing; provided, however (A) if the loan evidencing the existing senior lien prior to the date of refinancing has an adjustable rate and the loan evidencing the refinanced senior lien has a fixed rate, then the current interest rate on the loan evidencing the refinanced senior lien may be up to 2.0% higher than the then-current loan rate of the loan evidencing the existing senior lien and (B) if the loan evidencing the existing senior lien prior to the date of refinancing has a fixed rate and the loan evidencing the refinanced senior lien has an adjustable rate, then the maximum interest rate on the loan evidencing the refinanced senior lien shall be less than or equal to (x) the interest rate on the loan evidencing the existing senior lien prior to the date of refinancing plus (y)2.0%; and

(iii)    the loan evidencing the refinanced senior lien is not subject to negative amortization.

(b)    The Master Servicer shall, to the extent consistent with the servicing standards set forth herein, take whatever actions as may be necessary to file a claim under or enforce or allow the Trustee to file a claim under or enforce any title insurance policy with respect to any Mortgage Loan including, without limitation, joining in or causing any Seller or Subservicer (or any other party in possession of any title insurance policy) to join in any claims process, negotiations, actions or proceedings necessary to make a claim under or enforce any title insurance policy. Notwithstanding anything in this Agreement to the contrary, the Master Servicer shall not (unless the Mortgagor is in default with respect to the Mortgage Loan or such default is, in the judgment of the Master Servicer, reasonably foreseeable) make or permit any modification, waiver, or amendment of any term of any Mortgage Loan that would both (i)effect an exchange or reissuance of such Mortgage Loan under Section 1001 of the Code (or final, temporary or proposed Treasury regulations promulgated thereunder) (other than in connection with a proposed conveyance or assumption of such Mortgage Loan that is treated as a Principal Prepayment in Full pursuant to Section 3.13(d) hereof) and (ii) cause any REMIC formed hereunder to fail to qualify as a REMIC under the Code or the imposition of any tax on "prohibited transactions" or "contributions" after the startup date under the REMIC Provisions.

(c)    In connection with servicing and administering the Mortgage Loans, the Master Servicer and any Affiliate of the Master Servicer (i) may perform services such as appraisals and brokerage services that are customarily provided by Persons other than servicers of mortgage loans, and shall be entitled to reasonable compensation therefor in accordance with Section 3.10 and (ii) may, at its own discretion and on behalf of the Trustee, obtain credit information in the form of a "credit score" from a Credit Repository.

(d)    All costs incurred by the Master Servicer or by Subservicers in effecting the timely payment of taxes and assessments on the properties subject to the Mortgage Loans shall not, for the purpose of calculating monthly distributions to the Certificateholders, be added to the amount owing under the related Mortgage Loans, notwithstanding that the terms of such Mortgage Loan so permit, and such costs shall be recoverable to the extent permitted by Section 3.10(a)(ii).

(e)    The Master Servicer may enter into one or more agreements in connection with the offering of pass-through certificates evidencing interests in one or more of the Certificates providing for the payment by the Master Servicer of amounts received by the Master Servicer as servicing compensation hereunder and required to cover certain Prepayment Interest Shortfalls on the Mortgage Loans, which payment obligation will thereafter be an obligation of the Master Servicer hereunder.

(f)    The relationship of the Master Servicer (and of any successor to the Master Servicer) to the Depositor under this Agreement is intended by the parties to be that of an independent contractor and not that of a joint venturer, partner or agent.

(g)    The Master Servicer shall comply with the terms of Section 9 of the Assignment Agreement.

Section 3.02.    Subservicing Agreements Between Master Servicer and Subservicers; Enforcement of Subservicers' Obligations.

(a)    The Master Servicer may continue in effect Subservicing Agreements entered into by Residential Funding and Subservicers prior to the execution and delivery of this Agreement, and may enter into new Subservicing Agreements with Subservicers, for the servicing and administration of all or some of the Mortgage Loans. Each Subservicer shall be either (i) an institution the accounts of which are insured by the FDIC or (ii) another entity that engages in the business of originating or servicing mortgage loans, and in either case shall be authorized to transact business in the state or states in which the related Mortgaged Properties it is to service are situated, if and to the extent required by applicable law to enable the Subservicer to perform its obligations hereunder and under the Subservicing Agreement, and in either case shall be a Freddie Mac, Fannie Mae or HUD approved mortgage servicer. Each Subservicer of a Mortgage Loan shall be entitled to receive and retain, as provided in the related Subservicing Agreement and in Section 3.07, the related Subservicing Fee from payments of interest received on such Mortgage Loan after payment of all amounts required to be remitted to the Master Servicer in respect of such Mortgage Loan. For any Mortgage Loan that is a Nonsubserviced Mortgage Loan, the Master Servicer shall be entitled to receive and retain an amount equal to the Subservicing Fee from payments of interest. Unless the context otherwise requires, references in this Agreement to actions taken or to be taken by the Master Servicer in servicing the Mortgage Loans include actions taken or to be taken by a Subservicer on behalf of the Master Servicer. Each Subservicing Agreement will be upon such terms and conditions as are generally required by, permitted by or consistent with the Program Guide and are not inconsistent with this Agreement and as the Master Servicer and the Subservicer have agreed. With the approval of the Master Servicer, a Subservicer may delegate its servicing obligations to third-party servicers, but such Subservicer will remain obligated under the related Subservicing Agreement. The Master Servicer and a Subservicer may enter into amendments thereto or a different

form of Subservicing Agreement, and the form referred to or included in the Program Guide is merely provided for information and shall not be deemed to limit in any respect the discretion of the Master Servicer to modify or enter into different Subservicing Agreements; provided, however, that any such amendments or different forms shall be consistent with and not violate the provisions of either this Agreement or the Program Guide in a manner which would materially and adversely affect the interests of the Certificateholders or the Certificate Insurer. The Program Guide and any other Subservicing Agreement entered into between the Master Servicer and any Subservicer shall require the Subservicer to accurately and fully report its borrower credit files to each of the Credit Repositories in a timely manner.

(b)    As part of its servicing activities hereunder, the Master Servicer, for the benefit of the Trustee, the Certificateholders and the Certificate Insurer, shall use its best reasonable efforts to enforce the obligations of each Subservicer under the related Subservicing Agreement and of each Seller under the related Seller's Agreement, to the extent that the non-performance of any such obligation would have a material and adverse effect on a Mortgage Loan, including, without limitation, the obligation to purchase a Mortgage Loan on account of defective documentation, as described in Section 2.02, or on account of a breach of a representation or warranty, as described in Section 2.04. Such enforcement, including, without limitation, the legal prosecution of claims, termination of Subservicing Agreements or Seller's Agreements, as appropriate, and the pursuit of other appropriate remedies, shall be in such form and carried out to such an extent and at such time as the Master Servicer would employ in its good faith business judgment and which are normal and usual in its general mortgage servicing activities. The Master Servicer shall pay the costs of such enforcement at its own expense, and shall be reimbursed therefor only (i) from a general recovery resulting from such enforcement to the extent, if any, that such recovery exceeds all amounts due in respect of the related Mortgage Loan or (ii) from a specific recovery of costs, expenses or attorneys fees against the party against whom such enforcement is directed. For purposes of clarification only, the parties agree that the foregoing is not intended to, and does not, limit the ability of the Master Servicer to be reimbursed for expenses that are incurred in connection with the enforcement of a Seller's obligations and are reimbursable pursuant to Section 3.10(a)(viii).

Section 3.03.    Successor Subservicers.

The Master Servicer shall be entitled to terminate any Subservicing Agreement that may exist in accordance with the terms and conditions of such Subservicing Agreement and without any limitation by virtue of this Agreement; provided, however, that in the event of termination of any Subservicing Agreement by the Master Servicer or the Subservicer, the Master Servicer shall either act as servicer of the related Mortgage Loan or enter into a Subservicing Agreement with a successor Subservicer which will be bound by the terms of the related Subservicing Agreement. If the Master Servicer or any Affiliate of Residential Funding acts as servicer, it will not assume liability for the representations and warranties of the Subservicer which it replaces. If the Master Servicer enters into a Subservicing Agreement with a successor Subservicer, the Master Servicer shall use reasonable efforts to have the successor Subservicer assume liability for the representations and warranties made by the terminated Subservicer in respect of the related Mortgage Loans and, in the event of any such assumption by the successor Subservicer, the Master Servicer may, in the exercise of its business judgment, release the terminated Subservicer from liability for such representations and warranties.

Section 3.04.    Liability of the Master Servicer.

Notwithstanding any Subservicing Agreement, any of the provisions of this Agreement relating to agreements or arrangements between the Master Servicer or a Subservicer or reference to actions taken through a Subservicer or otherwise, the Master Servicer shall remain obligated and liable to the Trustee, Certificateholders and the Certificate Insurer for the servicing and administering of the Mortgage Loans in accordance with the provisions of Section 3.01 without diminution of such obligation or liability by virtue

of such Subservicing Agreements or arrangements or by virtue of indemnification from the Subservicer or
the Depositor and to the same extent and under the same terms and conditions as if the Master Servicer
alone were servicing and administering the Mortgage Loans. The Master Servicer shall be entitled to
enter into any agreement with a Subservicer or Seller for indemnification of the Master Servicer and
nothing contained in this Agreement shall be deemed to limit or modify such indemnification.

Section 3.05.    No Contractual Relationship Between Subservicer and Trustee or
Certificateholders.

Any Subservicing Agreement that may be entered into and any other transactions or services
relating to the Mortgage Loans involving a Subservicer in its capacity as such and not as an originator
shall be deemed to be between the Subservicer and the Master Servicer alone, and the Trustee and
Certificateholders shall not be deemed parties thereto and shall have no claims, rights, obligations, duties
or liabilities with respect to the Subservicer in its capacity as such except as set forth in Section 3.06. The
foregoing provision shall not in any way limit a Subservicer's obligation to cure an omission or defect or
to repurchase a Mortgage Loan as referred to in Section 2.02 hereof.

Section 3.06.    Assumption or Termination of Subservicing Agreements by Trustee.

(a)    In the event the Master Servicer shall for any reason no longer be the master servicer
(including by reason of an Event of Default), the Trustee, as successor Master Servicer, its designee or its
successor shall thereupon assume all of the rights and obligations of the Master Servicer under each
Subservicing Agreement that may have been entered into. The Trustee, its designee or the successor
servicer for the Trustee shall be deemed to have assumed all of the Master Servicer's interest therein and
to have replaced the Master Servicer as a party to the Subservicing Agreement to the same extent as if the
Subservicing Agreement had been assigned to the assuming party except that the Master Servicer shall
not thereby be relieved of any liability or obligations under the Subservicing Agreement.

(b)    The Master Servicer shall, upon request of the Trustee but at the expense of the Master
Servicer, deliver to the assuming party all documents and records relating to each Subservicing
Agreement and the Mortgage Loans then being serviced and an accounting of amounts collected and held
by it and otherwise use its best efforts to effect the orderly and efficient transfer of each Subservicing
Agreement to the assuming party.

(c)    Unless a Certificate Insurer Default exists, the Master Servicer will, if it is authorized to
do so under the relevant Subservicing Agreement, upon request of the Certificate Insurer at a time when
the Certificate Insurer may remove the Master Servicer under the terms hereof, terminate any
Subservicing Agreement.

Section 3.07.    Collection of Certain Mortgage Loan Payments; Deposits to Custodial Account.

(a)    The Master Servicer shall make reasonable efforts to collect all payments called for under
the terms and provisions of the Mortgage Loans, and shall, to the extent such procedures shall be
consistent with this Agreement and the terms and provisions of any related Primary Insurance Policy,
follow such collection procedures as it would employ in its good faith business judgment and which are
normal and usual in its general mortgage servicing activities. Consistent with the foregoing, the Master
Servicer or a Subservicer may in its discretion (subject to the terms and conditions of the Assignment
Agreement) (i) waive any late payment charge or any prepayment charge or penalty interest in connection
with the prepayment of a Mortgage Loan and (ii) extend the Due Date for payments due on a Mortgage
Loan in accordance with the Program Guide, *provided, however*, that the Master Servicer shall first
determine that any such waiver or extension will not impair the coverage of any related Primary Insurance

Policy or materially adversely affect the lien of the related Mortgage. Notwithstanding anything in this Section to the contrary, the Master Servicer or any Subservicer shall not enforce any prepayment charge to the extent that such enforcement would violate any applicable law. In the event of any such arrangement, the Master Servicer shall make timely advances on the related Mortgage Loan during the scheduled period in accordance with the amortization schedule of such Mortgage Loan without modification thereof by reason of such arrangements unless otherwise agreed to by the Holders of the Classes of Certificates affected thereby; provided, however, that no such extension shall be made if any advance would be a Nonrecoverable Advance. Consistent with the terms of this Agreement, the Master Servicer may also waive, modify or vary any term of any Mortgage Loan or consent to the postponement of strict compliance with any such term or in any manner grant indulgence to any Mortgagor if in the Master Servicer's determination such waiver, modification, postponement or indulgence is not materially adverse to the interests of the Certificateholders or the Certificate Insurer (taking into account any estimated Realized Loss that might result absent such action), provided, however, that the Master Servicer may not modify materially or permit any Subservicer to modify any Mortgage Loan, including without limitation any modification that would change the Mortgage Rate, forgive the payment of any principal or interest (unless in connection with the liquidation of the related Mortgage Loan or except in connection with prepayments to the extent that such reamortization is not inconsistent with the terms of the Mortgage Loan), capitalize any amounts owing on the Mortgage Loan by adding such amount to the outstanding principal balance of the Mortgage Loan, or extend the final maturity date of such Mortgage Loan, unless such Mortgage Loan is in default or, in the judgment of the Master Servicer, such default is reasonably foreseeable. No such modification shall reduce the Mortgage Rate on a Mortgage Loan below the greater of (A) one-half of the Mortgage Rate as in effect on the Cut-off Date and (B) one-half of the Mortgage Rate as in effect on the date of such modification, but not less than the sum of the Servicing Fee Rate, the Certificate Insurer Premium Modified Rate and the per annum rate at which the Subservicing Fee accrues. The final maturity date for any Mortgage Loan shall not be extended beyond the Maturity Date. Also, the aggregate principal balance of all Reportable Modified Mortgage Loans subject to Servicing Modifications (measured at the time of the Servicing Modification and after giving effect to any Servicing Modification) can be no more than five percent of the aggregate principal balance of the Mortgage Loans as of the Cut-off Date, provided, that such limit may be increased from time to time if each Rating Agency provides written confirmation that an increase in excess of that limit will not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then-current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency (without regard to the Certificate Guaranty Insurance Policy). In addition, any amounts owing on a Mortgage Loan added to the outstanding principal balance of such Mortgage Loan must be fully amortized over the term of such Mortgage Loan, and such amounts may be added to the outstanding principal balance of a Mortgage Loan only once during the life of such Mortgage Loan. Also, the addition of such amounts described in the preceding sentence shall be implemented in accordance with the Program Guide and may be implemented only by Subservicers that have been approved by the Master Servicer for such purposes. In connection with any Curtailment of a Mortgage Loan, the Master Servicer, to the extent not inconsistent with the terms of the Mortgage Note and local law and practice, may permit the Mortgage Loan to be re-amortized such that the Monthly Payment is recalculated as an amount that will fully amortize the remaining principal balance thereof by the original maturity date based on the original Mortgage Rate; provided, that such reamortization shall not be permitted if it would constitute a reissuance of the Mortgage Loan for federal income tax purposes.

(b)    The Master Servicer shall establish and maintain a Custodial Account in which the Master Servicer shall deposit or cause to be deposited on a daily basis, except as otherwise specifically provided herein, the following payments and collections remitted by Subservicers or received by it in respect of the Mortgage Loans subsequent to the Cut-off Date (other than in respect of Monthly Payments due before or in the month of the Cut-off Date):

(i)    All payments on account of principal, including Principal Prepayments made by Mortgagors on the Mortgage Loans and the principal component of any Subservicer Advance or of any REO Proceeds received in connection with an REO Property for which an REO Disposition has occurred;

(ii)    All payments on account of interest at the Adjusted Mortgage Rate on the Mortgage Loans, including the interest component of any Subservicer Advance or of any REO Proceeds received in connection with an REO Property for which an REO Disposition has occurred;

(iii)    Insurance Proceeds, Subsequent Recoveries and Liquidation Proceeds (net of any related expenses of the Subservicer);

(iv)    All proceeds of any Mortgage Loans purchased pursuant to Section 2.02, 2.03, 2.04 or 4.07 (including amounts received from Residential Funding pursuant to the last paragraph of Section 4 of the Assignment Agreement in respect of any liability, penalty or expense that resulted from a breach of the representation and warranty set forth in clause (xliii) of Section 4 of the Assignment Agreement) and all amounts required to be deposited in connection with the substitution of a Qualified Substitute Mortgage Loan pursuant to Section 2.03 or 2.04; and

(v)    Any amounts required to be deposited pursuant to Section 3.07(c) and any payments or collections received in the nature of prepayment charges.

The foregoing requirements for deposit in the Custodial Account shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments on the Mortgage Loans which are not part of the Trust Fund (consisting of Monthly Payments due before or in the month of the Cut-off Date) and payments or collections consisting of late payment charges or assumption fees may but need not be deposited by the Master Servicer in the Custodial Account. In the event any amount not required to be deposited in the Custodial Account is so deposited, the Master Servicer may at any time withdraw such amount from the Custodial Account, any provision herein to the contrary notwithstanding. The Custodial Account may contain funds that belong to one or more trust funds created for mortgage pass-through certificates of other series and may contain other funds respecting payments on mortgage loans belonging to the Master Servicer or serviced or master serviced by it on behalf of others. Notwithstanding such commingling of funds, the Master Servicer shall keep records that accurately reflect the funds on deposit in the Custodial Account that have been identified by it as being attributable to the Mortgage Loans. With respect to Insurance Proceeds, Liquidation Proceeds, REO Proceeds, Subsequent Recoveries and the proceeds of the purchase of any Mortgage Loan pursuant to Sections 2.02, 2.03, 2.04 and 4.07 received in any calendar month, the Master Servicer may elect to treat such amounts as included in the Available Distribution Amount for the Distribution Date in the month of receipt, but is not obligated to do so. If the Master Servicer so elects, such amounts will be deemed to have been received (and any related Realized Loss shall be deemed to have occurred) on the last day of the month prior to the receipt thereof.

(c)    The Master Servicer shall use its best efforts to cause the institution maintaining the Custodial Account to invest the funds in the Custodial Account attributable to the Mortgage Loans in Permitted Investments which shall mature not later than the Certificate Account Deposit Date next following the date of such investment (with the exception of the Amount Held for Future Distribution) and which shall not be sold or disposed of prior to their maturities. All income and gain realized from any such investment shall be for the benefit of the Master Servicer as additional servicing compensation and shall be subject to its withdrawal or order from time to time. The amount of any losses incurred in respect of any such investments attributable to the investment of amounts in respect of the Mortgage Loans shall be deposited in the Custodial Account by the Master Servicer out of its own funds immediately as realized.

(d)    The Master Servicer shall give written notice to the Trustee and the Depositor of any change in the location of the Custodial Account and the location of the Certificate Account prior to the use thereof.

Section 3.08.    Subservicing Accounts; Servicing Accounts.

(a)    In those cases where a Subservicer is servicing a Mortgage Loan pursuant to a Subservicing Agreement, the Master Servicer shall cause the Subservicer, pursuant to the Subservicing Agreement, to establish and maintain one or more Subservicing Accounts which shall be an Eligible Account or, if such account is not an Eligible Account, shall generally satisfy the requirements of the Program Guide and be otherwise acceptable to the Master Servicer, the Certificate Insurer and each Rating Agency. The Subservicer will be required thereby to deposit into the Subservicing Account on a daily basis all proceeds of Mortgage Loans received by the Subservicer, less its Subservicing Fees and unreimbursed advances and expenses, to the extent permitted by the Subservicing Agreement. If the Subservicing Account is not an Eligible Account, the Master Servicer shall be deemed to have received such monies upon receipt thereof by the Subservicer. The Subservicer shall not be required to deposit in the Subservicing Account payments or collections in the nature of late charges or assumption fees, or payments or collections received in the nature of prepayment charges to the extent that the Subservicer is entitled to retain such amounts pursuant to the Subservicing Agreement. On or before the date specified in the Program Guide, but in no event later than the Determination Date, the Master Servicer shall cause the Subservicer, pursuant to the Subservicing Agreement, to remit to the Master Servicer for deposit in the Custodial Account all funds held in the Subservicing Account with respect to each Mortgage Loan serviced by such Subservicer that are required to be remitted to the Master Servicer. The Subservicer will also be required, pursuant to the Subservicing Agreement, to advance on such scheduled date of remittance amounts equal to any scheduled monthly installments of principal and interest less its Subservicing Fees on any Mortgage Loans for which payment was not received by the Subservicer. This obligation to advance with respect to each Mortgage Loan will continue up to and including the first of the month following the date on which the related Mortgaged Property is sold at a foreclosure sale or is acquired by the Trust Fund by deed in lieu of foreclosure or otherwise. All such advances received by the Master Servicer shall be deposited promptly by it in the Custodial Account.

(b)    The Subservicer may also be required, pursuant to the Subservicing Agreement, to remit to the Master Servicer for deposit in the Custodial Account interest at the Adjusted Mortgage Rate (or Modified Net Mortgage Rate plus the rate per annum at which the Servicing Fee and the Certificate Insurer Premium Modified Rate accrues in the case of a Modified Mortgage Loan) on any Curtailment received by such Subservicer in respect of a Mortgage Loan from the related Mortgagor during any month that is to be applied by the Subservicer to reduce the unpaid principal balance of the related Mortgage Loan as of the first day of such month, from the date of application of such Curtailment to the first day of the following month. Any amounts paid by a Subservicer pursuant to the preceding sentence shall be for the benefit of the Master Servicer as additional servicing compensation and shall be subject to its withdrawal or order from time to time pursuant to Sections 3.10(a)(iv) and (v).

(c)    In addition to the Custodial Account and the Certificate Account, the Master Servicer shall for any Nonsubserviced Mortgage Loan, and shall cause the Subservicers for Subserviced Mortgage Loans to, establish and maintain one or more Servicing Accounts and deposit and retain therein all collections from the Mortgagors (or advances from Subservicers) for the payment of taxes, assessments, hazard insurance premiums, Primary Insurance Policy premiums, if applicable, or comparable items for the account of the Mortgagors. Each Servicing Account shall satisfy the requirements for a Subservicing Account and, to the extent permitted by the Program Guide or as is otherwise acceptable to the Master Servicer, may also function as a Subservicing Account. Withdrawals of amounts related to the Mortgage Loans from the Servicing Accounts may be made only to effect timely payment of taxes, assessments,

hazard insurance premiums, Primary Insurance Policy premiums, if applicable, or comparable items, to reimburse the Master Servicer or Subservicer out of related collections for any payments made pursuant to Sections 3.11 (with respect to the Primary Insurance Policy) and 3.12(a) (with respect to hazard insurance), to refund to any Mortgagors any sums as may be determined to be overages, to pay interest, if required, to Mortgagors on balances in the Servicing Account or to clear and terminate the Servicing Account at the termination of this Agreement in accordance with Section 9.01 or in accordance with the Program Guide.  As part of its servicing duties, the Master Servicer shall, and the Subservicers will, pursuant to the Subservicing Agreements, be required to pay to the Mortgagors interest on funds in this account to the extent required by law.

(d)    The Master Servicer shall advance the payments referred to in the preceding subsection that are not timely paid by the Mortgagors or advanced by the Subservicers on the date when the tax, premium or other cost for which such payment is intended is due, but the Master Servicer shall be required so to advance only to the extent that such advances, in the good faith judgment of the Master Servicer, will be recoverable by the Master Servicer out of Insurance Proceeds, Liquidation Proceeds or otherwise.

Section 3.09.    Access to Certain Documentation and Information Regarding the Mortgage Loans.

In the event that compliance with this Section 3.09 shall make any Class of Certificates legal for investment by federally insured savings and loan associations, the Master Servicer shall provide, or cause the Subservicers to provide, to the Trustee, the Office of Thrift Supervision or the FDIC and the supervisory agents and examiners thereof access to the documentation regarding the Mortgage Loans required by applicable regulations of the Office of Thrift Supervision, such access being afforded without charge but only upon reasonable request and during normal business hours at the offices designated by the Master Servicer.  The Master Servicer shall permit such representatives to photocopy any such documentation and shall provide equipment for that purpose at a charge reasonably approximating the cost of such photocopying to the Master Servicer.

Section 3.10.    Permitted Withdrawals from the Custodial Account.

(a)    The Master Servicer may, from time to time as provided herein, make withdrawals from the Custodial Account of amounts on deposit therein pursuant to Section 3.07 that are attributable to the Mortgage Loans for the following purposes:

(i)    to make deposits into the Certificate Account in the amounts and in the manner provided for in Section 4.01;

(ii)    to reimburse itself or the related Subservicer for previously unreimbursed Advances, Servicing Advances or other expenses made pursuant to Sections 3.01, 3.07(a), 3.08, 3.11, 3.12(a), 3.14 and 4.04 or otherwise reimbursable pursuant to the terms of this Agreement, such withdrawal right being limited to amounts received on the related Mortgage Loans (including, for this purpose, REO Proceeds, Insurance Proceeds, Liquidation Proceeds and proceeds from the purchase of a Mortgage Loan pursuant to Section 2.02, 2.03, 2.04 or 4.07) which represent (A) Late Collections of Monthly Payments for which any such advance was made in the case of Subservicer Advances or Advances pursuant to Section 4.04 and (B)recoveries of amounts in respect of which such advances were made in the case of Servicing Advances;

(iii)    to pay to itself or the related Subservicer (if not previously retained by such Subservicer) out of each payment received by the Master Servicer on account of interest on a Mortgage

Loan as contemplated by Sections 3.14 and 3.16, an amount equal to that remaining portion of any such payment as to interest (but not in excess of the Servicing Fee and the Subservicing Fee, if not previously retained) which, when deducted, will result in the remaining amount of such interest being interest at a rate per annum equal to the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) plus the Certificate Insurer Premium Modified Rate, on the amount specified in the amortization schedule of the related Mortgage Loan as the principal balance thereof at the beginning of the period respecting which such interest was paid after giving effect to any previous Curtailments;

(iv)    to pay to itself as additional servicing compensation any interest or investment income earned on funds and other property deposited in or credited to the Custodial Account that it is entitled to withdraw pursuant to Section 3.07(c);

(v)    to pay to itself as additional servicing compensation any Foreclosure Profits, and any amounts remitted by Subservicers as interest in respect of Curtailments pursuant to Section 3.08(b);

(vi)    to pay to itself, a Subservicer, a Seller, Residential Funding, the Depositor or any other appropriate Person, as the case may be, with respect to each Mortgage Loan or property acquired in respect thereof that has been purchased or otherwise transferred pursuant to Section 2.02, 2.03, 2.04, 4.07 or 9.01, all amounts received thereon and not required to be distributed to Certificateholders as of the date on which the related Stated Principal Balance or Purchase Price is determined;

(vii)    to reimburse itself or the related Subservicer for any Nonrecoverable Advance or Advances in the manner and to the extent provided in subsection (c) below, and any Advance or Servicing Advance made in connection with a modified Mortgage Loan that is in default or, in the judgment of the Master Servicer, default is reasonably foreseeable pursuant to Section 3.07(a), to the extent the amount of the Advance or Servicing Advance was added to the Stated Principal Balance of the Mortgage Loan in a prior calendar month;

(viii)    *to reimburse itself or the Depositor for expenses incurred by and reimbursable to it or the Depositor pursuant to Section 3.01(a), 3.11, 3.13, 3.14(c), 6.03, 10.01 or otherwise, or in connection with enforcing any repurchase, substitution or indemnification obligation of any Seller (other than the Depositor or an Affiliate of the Depositor) pursuant to the related Seller's Agreement;*

(ix)    to reimburse itself for amounts expended by it (a) pursuant to Section 3.14 in good faith in connection with the restoration of property damaged by an Uninsured Cause, and (b)in connection with the liquidation of a Mortgage Loan or disposition of an REO Property to the extent not otherwise reimbursed pursuant to clause (ii) or (viii) above; and

(x)    to withdraw any amount deposited in the Custodial Account that was not required to be deposited therein pursuant to Section 3.07, including any payoff fees or penalties or any other additional amounts payable to the Master Servicer or Subservicer pursuant to the terms of the Mortgage Note.

(b)    Since, in connection with withdrawals pursuant to clauses (ii), (iii), (v) and (vi), the Master Servicer's entitlement thereto is limited to collections or other recoveries on the related Mortgage Loan, the Master Servicer shall keep and maintain separate accounting, on a Mortgage Loan by Mortgage Loan basis, for the purpose of justifying any withdrawal from the Custodial Account pursuant to such clauses.

(c)    The Master Servicer shall be entitled to reimburse itself or the related Subservicer for any advance made in respect of a Mortgage Loan that the Master Servicer determines to be a Nonrecoverable

Advance by withdrawal from the Custodial Account of amounts on deposit therein attributable to the Mortgage Loans on any Certificate Account Deposit Date succeeding the date of such determination. Such right of reimbursement in respect of a Nonrecoverable Advance relating to an Advance made pursuant to Section 4.04 on any such Certificate Account Deposit Date shall be limited to an amount not exceeding the portion of such advance previously paid to Certificateholders (and not theretofore reimbursed to the Master Servicer or the related Subservicer).

Section 3.11.    Maintenance of Primary Insurance Coverage.

(a)    The Master Servicer shall not take, or permit any Subservicer to take, any action which would result in noncoverage under any applicable Primary Insurance Policy of any loss which, but for the actions of the Master Servicer or Subservicer, would have been covered thereunder. To the extent coverage is available, the Master Servicer shall keep or cause to be kept in full force and effect each such Primary Insurance Policy until the principal balance of the related Mortgage Loan secured by a Mortgaged Property is reduced to 80% or less of the Appraised Value at origination in the case of such a Mortgage Loan having a Loan-to-Value Ratio at origination in excess of 80%, provided that such Primary Insurance Policy was in place as of the Cut-off Date and the Master Servicer had knowledge of such Primary Insurance Policy. The Master Servicer shall not cancel or refuse to renew any such Primary Insurance Policy applicable to a Nonsubserviced Mortgage Loan, or consent to any Subservicer canceling or refusing to renew any such Primary Insurance Policy applicable to a Mortgage Loan subserviced by it, that is in effect at the date of the initial issuance of the Certificates and is required to be kept in force hereunder unless the replacement Primary Insurance Policy for such canceled or non-renewed policy is maintained with an insurer whose claims-paying ability is acceptable to each Rating Agency for mortgage pass-through certificates having a rating equal to or better than the lower of the then-current rating or the rating assigned to the Certificates as of the Closing Date by such Rating Agency.

(b)    In connection with its activities as administrator and servicer of the Mortgage Loans, the Master Servicer agrees to present or to cause the related Subservicer to present, on behalf of the Master Servicer, the Subservicer, if any, the Trustee and Certificateholders, claims to the insurer under any Primary Insurance Policies, in a timely manner in accordance with such policies, and, in this regard, to take or cause to be taken such reasonable action as shall be necessary to permit recovery under any Primary Insurance Policies respecting defaulted Mortgage Loans. Pursuant to Section 3.07, any Insurance Proceeds collected by or remitted to the Master Servicer under any Primary Insurance Policies shall be deposited in the Custodial Account, subject to withdrawal pursuant to Section 3.10.

Section 3.12.    Maintenance of Fire Insurance and Omissions and Fidelity Coverage.

(a)    The Master Servicer shall cause to be maintained for each Mortgage Loan fire insurance with extended coverage in an amount which is equal to the lesser of the principal balance owing on such Mortgage Loan (together with the principal balance of any mortgage loan secured by a lien that is senior to the Mortgage Loan) or 100% of the insurable value of the improvements; *provided, however,* that such coverage may not be less than the minimum amount required to fully compensate for any loss or damage on a replacement cost basis. To the extent it may do so without breaching the related Subservicing Agreement, the Master Servicer shall replace any Subservicer that does not cause such insurance, to the extent it is available, to be maintained. The Master Servicer shall also cause to be maintained on property acquired upon foreclosure, or deed in lieu of foreclosure, of any Mortgage Loan, fire insurance with extended coverage in an amount which is at least equal to the amount necessary to avoid the application of any co-insurance clause contained in the related hazard insurance policy. Pursuant to Section 3.07, any amounts collected by the Master Servicer under any such policies (other than amounts to be applied to the restoration or repair of the related Mortgaged Property or property thus acquired or amounts released to the Mortgagor in accordance with the Master Servicer's normal servicing procedures) shall be deposited

in the Custodial Account, subject to withdrawal pursuant to Section 3.10. Any cost incurred by the Master Servicer in maintaining any such insurance shall not, for the purpose of calculating monthly distributions to Certificateholders, be added to the amount owing under the Mortgage Loan, notwithstanding that the terms of the Mortgage Loan so permit. Such costs shall be recoverable by the Master Servicer out of related late payments by the Mortgagor or out of Insurance Proceeds and Liquidation Proceeds to the extent permitted by Section 3.10. It is understood and agreed that no earthquake or other additional insurance is to be required of any Mortgagor or maintained on property acquired in respect of a Mortgage Loan other than pursuant to such applicable laws and regulations as shall at any time be in force and as shall require such additional insurance. Whenever the improvements securing a Mortgage Loan are located at the time of origination of such Mortgage Loan in a federally designated special flood hazard area, the Master Servicer shall cause flood insurance (to the extent available) to be maintained in respect thereof. Such flood insurance shall be in an amount equal to the lesser of (i) the amount required to compensate for any loss or damage to the Mortgaged Property on a replacement cost basis and (ii) the maximum amount of such insurance available for the related Mortgaged Property under the national flood insurance program (assuming that the area in which such Mortgaged Property is located is participating in such program).

In the event that the Master Servicer shall obtain and maintain a blanket fire insurance policy with extended coverage insuring against hazard losses on all of the Mortgage Loans, it shall conclusively be deemed to have satisfied its obligations as set forth in the first sentence of this Section 3.12(a), it being understood and agreed that such policy may contain a deductible clause, in which case the Master Servicer shall, in the event that there shall not have been maintained on the related Mortgaged Property a policy complying with the first sentence of this Section 3.12(a) and there shall have been a loss which would have been covered by such policy, deposit in the Certificate Account the amount not otherwise payable under the blanket policy because of such deductible clause. Any such deposit by the Master Servicer shall be made on the Certificate Account Deposit Date next preceding the Distribution Date which occurs in the month following the month in which payments under any such policy would have been deposited in the Custodial Account. In connection with its activities as administrator and servicer of the Mortgage Loans, the Master Servicer agrees to present, on behalf of itself, the Trustee and Certificateholders, claims under any such blanket policy.

(b)      The Master Servicer shall obtain and maintain at its own expense and keep in full force and effect throughout the term of this Agreement a blanket fidelity bond and an errors and omissions insurance policy covering the Master Servicer's officers and employees and other persons acting on behalf of the Master Servicer in connection with its activities under this Agreement. The amount of coverage shall be at least equal to the coverage that would be required by Fannie Mae or Freddie Mac, whichever is greater, with respect to the Master Servicer if the Master Servicer were servicing and administering the Mortgage Loans for Fannie Mae or Freddie Mac. In the event that any such bond or policy ceases to be in effect, the Master Servicer shall obtain a comparable replacement bond or policy from an issuer or insurer, as the case may be, meeting the requirements, if any, of the Program Guide and acceptable to the Depositor. Coverage of the Master Servicer under a policy or bond obtained by an Affiliate of the Master Servicer and providing the coverage required by this Section 3.12(b) shall satisfy the requirements of this Section 3.12(b).

Section 3.13.    Enforcement of Due-on-Sale Clauses; Assumption and Modification
Agreements; Certain Assignments.

(a)      When any Mortgaged Property is conveyed by the Mortgagor, the Master Servicer or Subservicer, to the extent it has knowledge of such conveyance, shall enforce any due-on-sale clause contained in any Mortgage Note or Mortgage, to the extent permitted under applicable law and governmental regulations, but only to the extent that such enforcement will not adversely affect or

jeopardize coverage under any Required Insurance Policy. Notwithstanding the foregoing: (i) the Master Servicer shall not be deemed to be in default under this Section 3.13(a) by reason of any transfer or assumption which the Master Servicer is restricted by law from preventing; and (ii) if the Master Servicer determines that it is reasonably likely that any Mortgagor will bring, or if any Mortgagor does bring, legal action to declare invalid or otherwise avoid enforcement of a due-on-sale clause contained in any Mortgage Note or Mortgage, the Master Servicer shall not be required to enforce the due-on-sale clause or to contest such action.

(b)      Subject to the Master Servicer's or related Subservicer's duty to enforce any due-on-sale clause to the extent set forth in Section 3.13(a), in any case in which a Mortgaged Property is to be conveyed to a Person by a Mortgagor, and such Person is to enter into an assumption or modification agreement or supplement to the Mortgage Note or Mortgage which requires the signature of the Trustee, or if an instrument of release signed by the Trustee is required releasing the Mortgagor from liability on the Mortgage Loan, the Master Servicer is authorized, subject to the requirements of the sentence next following, to execute and deliver, on behalf of the Trustee, the assumption agreement with the Person to whom the Mortgaged Property is to be conveyed and such modification agreement or supplement to the Mortgage Note or Mortgage or other instruments as are reasonable or necessary to carry out the terms of the Mortgage Note or Mortgage or otherwise to comply with any applicable laws regarding assumptions or the transfer of the Mortgaged Property to such Person; *provided, however*, none of such terms and requirements shall both constitute a "significant modification" effecting an exchange or reissuance of such Mortgage Loan under the Code (or final, temporary or proposed Treasury regulations promulgated thereunder) and cause any REMIC created hereunder to fail to qualify as a REMIC under the Code or the imposition of any tax on "prohibited transactions" or "contributions" after the Startup Date under the REMIC Provisions. The Master Servicer shall execute and deliver such documents only if it reasonably determines that (i) its execution and delivery thereof will not conflict with or violate any terms of this Agreement or cause the unpaid balance and interest on the Mortgage Loan to be uncollectible in whole or in part, (ii) any required consents of insurers under any Required Insurance Policies have been obtained and (iii) subsequent to the closing of the transaction involving the assumption or transfer (A) the Mortgage Loan will continue to be secured by a first mortgage lien (or, with respect to any junior lien, a junior lien of the same priority in relation to any senior lien on such Mortgage Loan) pursuant to the terms of the Mortgage, (B) such transaction will not adversely affect the coverage under any Required Insurance Policies, (C) the Mortgage Loan will fully amortize over the remaining term thereof, (D) no material term of the Mortgage Loan (including the interest rate on the Mortgage Loan) will be altered nor will the term of the Mortgage Loan be changed and (E) if the seller/transferor of the Mortgaged Property is to be released from liability on the Mortgage Loan, the buyer/transferee of the Mortgaged Property would be qualified to assume the Mortgage Loan based on generally comparable credit quality and such release will not (based on the Master Servicer's or related Subservicer's good faith determination) adversely affect the collectability of the Mortgage Loan. Upon receipt of appropriate instructions from the Master Servicer in accordance with the foregoing, the Trustee shall execute any necessary instruments for such assumption or substitution of liability as directed by the Master Servicer. Upon the closing of the transactions contemplated by such documents, the Master Servicer shall cause the originals or true and correct copies of the assumption agreement, the release (if any), or the modification or supplement to the Mortgage Note or Mortgage to be deposited with the Mortgage File for such Mortgage Loan. Any fee collected by the Master Servicer or such related Subservicer for entering into an assumption or substitution of liability agreement will be retained by the Master Servicer or such related Subservicer as additional servicing compensation.

(c)      The Master Servicer or the related Subservicer, as the case may be, shall be entitled to approve a request from a Mortgagor for a partial release of the related Mortgaged Property, the granting of an easement thereon in favor of another Person, any alteration or demolition of the related Mortgaged Property or other similar matters if it has determined, exercising its good faith business judgment in the

same manner as it would if it were the owner of the related Mortgage Loan, that the security for, and the timely and full collectability of, such Mortgage Loan would not be adversely affected thereby and that any REMIC created hereunder would not fail to continue to qualify as a REMIC under the Code as a result thereof and (subject to Section 10.01(f)) that no tax on "prohibited transactions" or "contributions" after the Startup Date would be imposed on any REMIC created hereunder as a result thereof. Any fee collected by the Master Servicer or the related Subservicer for processing such a request will be retained by the Master Servicer or such Subservicer as additional servicing compensation.

(d)      Subject to any other applicable terms and conditions of this Agreement, the Trustee and Master Servicer shall be entitled to approve an assignment in lieu of satisfaction with respect to any Mortgage Loan, provided the obligee with respect to such Mortgage Loan following such proposed assignment provides the Trustee and Master Servicer with a "Lender Certification for Assignment of Mortgage Loan" in the form attached hereto as Exhibit M, in form and substance satisfactory to the Trustee and Master Servicer, providing the following:  (i) that the Mortgage Loan is secured by Mortgaged Property located in a jurisdiction in which an assignment in lieu of satisfaction is required to preserve lien priority, minimize or avoid mortgage recording taxes or otherwise comply with, or facilitate a refinancing under, the laws of such jurisdiction; (ii) that the substance of the assignment is, and is intended to be, a refinancing of such Mortgage Loan and that the form of the transaction is solely to comply with, or facilitate the transaction under, such local laws; (iii) that the Mortgage Loan following the proposed assignment will have a rate of interest more than the greater of (A) 3% and (B) 5% of the annual yield of the unmodified Mortgage Loan, below or above the rate of interest on such Mortgage Loan prior to such proposed assignment; and (iv) that such assignment is at the request of the borrower under the related Mortgage Loan. Upon approval of an assignment in lieu of satisfaction with respect to any Mortgage Loan, the Master Servicer shall receive cash in an amount equal to the unpaid principal balance of and accrued interest on such Mortgage Loan, and the Master Servicer shall treat such amount as a Principal Prepayment in Full with respect to such Mortgage Loan for all purposes hereof.

Section 3.14.    <u>Realization Upon Defaulted Mortgage Loans</u>.

(a)      The Master Servicer shall foreclose upon or otherwise comparably convert (which may include an REO Acquisition) the ownership of properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments pursuant to Section 3.07.  Alternatively, the Master Servicer may take other actions in respect of a defaulted Mortgage Loan, which may include (i) accepting a short sale (a payoff of the Mortgage Loan for an amount less than the total amount contractually owed in order to facilitate a sale of the Mortgaged Property by the Mortgagor) or permitting a short refinancing (a payoff of the Mortgage Loan for an amount less than the total amount contractually owed in order to facilitate refinancing transactions by the Mortgagor not involving a sale of the Mortgaged Property), (ii) arranging for a repayment plan or (iii) agreeing to a modification in accordance with Section 3.07.  In connection with such foreclosure or other conversion or action, the Master Servicer shall, consistent with Section 3.11, follow such practices and procedures as it shall deem necessary or advisable, as shall be normal and usual in its general mortgage servicing activities and as shall be required or permitted by the Program Guide; provided that the Master Servicer shall not be liable in any respect hereunder if the Master Servicer is acting in connection with any such foreclosure or other conversion or action in a manner that is consistent with the provisions of this Agreement. The Master Servicer, however, shall not be required to expend its own funds or incur other reimbursable charges in connection with any foreclosure, or attempted foreclosure which is not completed, or towards the correction of any default on a related senior mortgage loan, or towards the restoration of any property unless it shall determine (i) that such restoration and/or foreclosure will increase the proceeds of liquidation of the Mortgage Loan to Holders of Certificates of one or more Classes or the Certificate Insurer after reimbursement to itself for such expenses or charges and (ii) that such expenses and charges will be recoverable to it through Liquidation Proceeds, Insurance

Proceeds, or REO Proceeds (respecting which it shall have priority for purposes of withdrawals from the Custodial Account pursuant to Section 3.10, whether or not such expenses and charges are actually recoverable from related Liquidation Proceeds, Insurance Proceeds or REO Proceeds). In the event of such a determination by the Master Servicer pursuant to this Section 3.14(a), the Master Servicer shall be entitled to reimbursement of its funds so expended pursuant to Section 3.10. In addition, the Master Servicer may pursue any remedies that may be available in connection with a breach of a representation and warranty with respect to any such Mortgage Loan in accordance with Sections 2.03 and 2.04. However, the Master Servicer is not required to continue to pursue both foreclosure (or similar remedies) with respect to the Mortgage Loans and remedies in connection with a breach of a representation and warranty if the Master Servicer determines in its reasonable discretion that one such remedy is more likely to result in a greater recovery as to the Mortgage Loan. Upon the occurrence of a Cash Liquidation or REO Disposition, following the deposit in the Custodial Account of all Insurance Proceeds, Liquidation Proceeds and other payments and recoveries referred to in the definition of "Cash Liquidation" or "REO Disposition," as applicable, upon receipt by the Trustee of written notification of such deposit signed by a Servicing Officer, the Trustee or the Custodian, as the case may be, shall release to the Master Servicer the related Custodial File and the Trustee shall execute and deliver such instruments of transfer or assignment prepared by the Master Servicer, in each case without recourse, as shall be necessary to vest in the Master Servicer or its designee, as the case may be, the related Mortgage Loan, and thereafter such Mortgage Loan shall not be part of the Trust Fund. Notwithstanding the foregoing or any other provision of this Agreement, in the Master Servicer's sole discretion with respect to any defaulted Mortgage Loan or REO Property as to either of the following provisions, (i) a Cash Liquidation or REO Disposition may be deemed to have occurred if substantially all amounts expected by the Master Servicer to be received in connection with the related defaulted Mortgage Loan or REO Property have been received, and (ii) for purposes of determining the amount of any Liquidation Proceeds, Insurance Proceeds, REO Proceeds or other unscheduled collections or the amount of any Realized Loss, the Master Servicer may take into account minimal amounts of additional receipts expected to be received or any estimated additional liquidation expenses expected to be incurred in connection with the related defaulted Mortgage Loan or REO Property.

(b)    In the event that title to any Mortgaged Property is acquired by the Trust Fund as an REO Property by foreclosure or by deed in lieu of foreclosure, the deed or certificate of sale shall be issued to the Trustee or to its nominee on behalf of Certificateholders. Notwithstanding any such acquisition of title and cancellation of the related Mortgage Loan, such REO Property shall (except as otherwise expressly provided herein) be considered to be an Outstanding Mortgage Loan held in the Trust Fund until such time as the REO Property shall be sold. Consistent with the foregoing for purposes of all calculations hereunder so long as such REO Property shall be considered to be an Outstanding Mortgage Loan it shall be assumed that, notwithstanding that the indebtedness evidenced by the related Mortgage Note shall have been discharged, such Mortgage Note and the related amortization schedule in effect at the time of any such acquisition of title (after giving effect to any previous Curtailments and before any adjustment thereto by reason of any bankruptcy or similar proceeding or any moratorium or similar waiver or grace period) remain in effect.

(c)    In the event that the Trust Fund acquires any REO Property as aforesaid or otherwise in connection with a default or imminent default on a Mortgage Loan, the Master Servicer on behalf of the Trust Fund shall dispose of such REO Property as soon as practicable, giving due consideration to the interests of the Certificateholders and the Certificate Insurer, but in all cases, within three full years after the taxable year of its acquisition by the Trust Fund for purposes of Section 860G(a)(8) of the Code (or such shorter period as may be necessary under applicable state (including any state in which such property is located) law to maintain the status of each REMIC created hereunder as a REMIC under applicable state law and avoid taxes resulting from such property failing to be foreclosure property under applicable state law) or, at the expense of the Trust Fund, request, more than 60 days before the day on

which such grace period would otherwise expire, an extension of such grace period unless the Master
Servicer (subject to Section 10.01(f)) obtains for the Trustee and the Certificate Insurer an Opinion of
Counsel, addressed to the Trustee, the Certificate Insurer and the Master Servicer, to the effect that the
holding by the Trust Fund of such REO Property subsequent to such period will not result in the
imposition of taxes on "prohibited transactions" as defined in Section 860F of the Code or cause any
REMIC created hereunder to fail to qualify as a REMIC (for federal (or any applicable State or local)
income tax purposes) at any time that any Certificates are outstanding, in which case the Trust Fund may
continue to hold such REO Property (subject to any conditions contained in such Opinion of Counsel).
The Master Servicer shall be entitled to be reimbursed from the Custodial Account for any costs incurred
in obtaining such Opinion of Counsel, as provided in Section 3.10. Notwithstanding any other provision
of this Agreement, no REO Property acquired by the Trust Fund shall be rented (or allowed to continue to
be rented) or otherwise used by or on behalf of the Trust Fund in such a manner or pursuant to any terms
that would (i) cause such REO Property to fail to qualify as "foreclosure property" within the meaning of
Section 860G(a)(8) of the Code or (ii) subject any REMIC created hereunder to the imposition of any
federal income taxes on the income earned from such REO Property, including any taxes imposed by
reason of Section 860G(c) of the Code, unless the Master Servicer has agreed to indemnify and hold
harmless the Trust Fund with respect to the imposition of any such taxes.

(d)    The proceeds of any Cash Liquidation, REO Disposition or purchase or repurchase of any
Mortgage Loan pursuant to the terms of this Agreement, as well as any recovery (other than Subsequent
Recoveries) resulting from a collection of Liquidation Proceeds, Insurance Proceeds or REO Proceeds,
will be applied in the following order of priority: *first*, to reimburse the Master Servicer or the related
Subservicer in accordance with Section 3.10(a)(ii); *second*, to the Certificateholders to the extent of
accrued and unpaid interest on the Mortgage Loan, and any related REO Imputed Interest, at the Net
Mortgage Rate (or the Modified Net Mortgage Rate in the case of a Modified Mortgage Loan), to the Due
Date in the related Due Period prior to the Distribution Date on which such amounts are to be distributed;
*third*, to the Certificateholders as a recovery of principal on the Mortgage Loan (or REO Property);
*fourth*, to all Servicing Fees and Subservicing Fees payable therefrom (and the Master Servicer and the
Subservicer shall have no claims for any deficiencies with respect to such fees which result from the
foregoing allocation); and *fifth*, to the Certificate Insurer for reimbursement for any payments made
pursuant to the Certificate Guaranty Insurance Policy to the extent not reimbursed pursuant to Section
4.02(c)(iii) and *sixth*, to Foreclosure Profits.

(e)    In the event of a default on a Mortgage Loan one or more of whose obligors is not a
United States Person, in connection with any foreclosure or acquisition of a deed in lieu of foreclosure
(together, "foreclosure") in respect of such Mortgage Loan, the Master Servicer shall cause compliance
with the provisions of Treasury Regulation Section1.1445-2(d)(3) (or any successor thereto) necessary to
assure that no withholding tax obligation arises with respect to the proceeds of such foreclosure except to
the extent, if any, that proceeds of such foreclosure are required to be remitted to the obligors on such
Mortgage Loan.

Section 3.15.    <u>Trustee to Cooperate; Release of Custodial Files.</u>

(a)    Upon becoming aware of the payment in full of any Mortgage Loan, or upon the receipt
by the Master Servicer of a notification that payment in full will be escrowed in a manner customary for
such purposes, the Master Servicer shall immediately notify the Trustee (if it holds the related Custodial
File) or the Custodian by a certification of a Servicing Officer (which certification shall include a
statement to the effect that all amounts received or to be received in connection with such payment which
are required to be deposited in the Custodial Account pursuant to Section 3.07 have been or will be so
deposited), substantially in the form attached hereto as Exhibit G, or, in the case of a Custodian, an
electronic request in a form acceptable to the Custodian, requesting delivery to it of the Custodial File.

Upon receipt of such certification and request, the Trustee shall promptly release, or cause the Custodian to release, the related Custodial File to the Master Servicer. The Master Servicer is authorized to execute and deliver to the Mortgagor the request for reconveyance, deed of reconveyance or release or satisfaction of mortgage or such instrument releasing the lien of the Mortgage, together with the Mortgage Note with, as appropriate, written evidence of cancellation thereon and to cause the removal from the registration on the MERS® System of such Mortgage and to execute and deliver, on behalf of the Trustee and the Certificateholders or any of them, any and all instruments of satisfaction or cancellation or of partial or full release, including any applicable UCC termination statements. No expenses incurred in connection with any instrument of satisfaction or deed of reconveyance shall be chargeable to the Custodial Account or the Certificate Account.

(b)    From time to time as is appropriate for the servicing or foreclosure of any Mortgage Loan, the Master Servicer shall deliver to the Custodian, with a copy to the Trustee, a certificate of a Servicing Officer substantially in the form attached as Exhibit G hereto, or, in the case of a Custodian, an electronic request in a form acceptable to the Custodian, requesting that possession of all, or any document constituting part of, the Custodial File be released to the Master Servicer and certifying as to the reason for such release and that such release will not invalidate any insurance coverage provided in respect of the Mortgage Loan under any Required Insurance Policy. Upon receipt of the foregoing, the Trustee shall deliver, or cause the Custodian to deliver, the Custodial File or any document therein to the Master Servicer. The Master Servicer shall cause each Custodial File or any document therein so released to be returned to the Trustee, or the Custodian as agent for the Trustee when the need therefor by the Master Servicer no longer exists, unless (i) the Mortgage Loan has been liquidated and the Liquidation Proceeds relating to the Mortgage Loan have been deposited in the Custodial Account or (ii)the Custodial File or such document has been delivered directly or through a Subservicer to an attorney, or to a public trustee or other public official as required by law, for purposes of initiating or pursuing legal action or other proceedings for the foreclosure of the Mortgaged Property either judicially or non-judicially, and the Master Servicer has delivered directly or through a Subservicer to the Trustee a certificate of a Servicing Officer certifying as to the name and address of the Person to which such Custodial File or such document was delivered and the purpose or purposes of such delivery. In the event of the liquidation of a Mortgage Loan, the Trustee shall deliver the Request for Release with respect thereto to the Master Servicer upon the Trustee's receipt of notification from the Master Servicer of the deposit of the related Liquidation Proceeds in the Custodial Account.

(c)    The Trustee or the Master Servicer on the Trustee's behalf shall execute and deliver to the Master Servicer, if necessary, any court pleadings, requests for trustee's sale or other documents necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity. Together with such documents or pleadings (if signed by the Trustee), the Master Servicer shall deliver to the Trustee a certificate of a Servicing Officer requesting that such pleadings or documents be executed by the Trustee and certifying as to the reason such documents or pleadings are required and that the execution and delivery thereof by the Trustee shall not invalidate any insurance coverage under any Required Insurance Policy or invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Section 3.16.    Servicing and Other Compensation; Compensating Interest.

(a)    The Master Servicer, as compensation for its activities hereunder, shall be entitled to receive on each Distribution Date the amounts provided for by clauses (iii), (iv), (v) and (vi) of Section 3.10(a), subject to clause (e) below. The amount of servicing compensation provided for in such clauses

shall be accounted for on a Mortgage Loan-by-Mortgage Loan basis. In the event that Liquidation Proceeds, Insurance Proceeds and REO Proceeds (net of amounts reimbursable therefrom pursuant to Section 3.10(a)(ii)) in respect of a Cash Liquidation or REO Disposition exceed the unpaid principal balance of such Mortgage Loan plus unpaid interest accrued thereon (including REO Imputed Interest) at a per annum rate equal to the related Net Mortgage Rate (or the Modified Net Mortgage Rate in the case of a Modified Mortgage Loan), plus the Certificate Insurer Premium Modified Rate, the Master Servicer shall be entitled to retain therefrom and to pay to itself and/or the related Subservicer, any Foreclosure Profits and any Servicing Fee or Subservicing Fee considered to be accrued but unpaid.

(b)     Additional servicing compensation in the form of assumption fees, late payment charges, investment income on amounts in the Custodial Account or the Certificate Account or otherwise shall be retained by the Master Servicer or the Subservicer to the extent provided herein, subject to clause (e) below. Prepayment charges shall be deposited into the Certificate Account and shall be paid on each Distribution Date to the holders of the Class SB Certificates.

(c)     The Master Servicer shall be required to pay, or cause to be paid, all expenses incurred by it in connection with its servicing activities hereunder (including payment of premiums for the Primary Insurance Policies, if any, to the extent such premiums are not required to be paid by the related Mortgagors, and the fees and expenses of the Trustee and the Custodian) and shall not be entitled to reimbursement therefor except as specifically provided in Sections 3.10 and 3.14.

(d)     The Master Servicer's right to receive servicing compensation may not be transferred in whole or in part except in connection with the transfer of all of its responsibilities and obligations of the Master Servicer under this Agreement.

(e)     Notwithstanding clauses (a) and (b) above, the amount of servicing compensation that the Master Servicer shall be entitled to receive for its activities hereunder for the period ending on each Distribution Date shall be reduced (but not below zero) by the amount of Compensating Interest (if any) for such Distribution Date used to cover Prepayment Interest Shortfalls as provided in Section 3.16(f) below. Such reduction shall be applied during such period as follows: first, to any Servicing Fee or Subservicing Fee to which the Master Servicer is entitled pursuant to Section 3.10(a)(iii); and second, to any income or gain realized from any investment of funds held in the Custodial Account or the Certificate Account to which the Master Servicer is entitled pursuant to Sections 3.07(c) or 4.01(b), respectively. In making such reduction, the Master Servicer shall not withdraw from the Custodial Account any such amount representing all or a portion of the Servicing Fee to which it is entitled pursuant to Section 3.10(a)(iii) and shall not withdraw from the Custodial Account or Certificate Account any such amount to which it is entitled pursuant to Section 3.07(c) or 4.01(b).

(f)     With respect to any Distribution Date, Prepayment Interest Shortfalls on the Mortgage Loans will be covered first, by the Master Servicer, but only to the extent such Prepayment Interest Shortfalls do not exceed Eligible Master Servicing Compensation.

(g)     With respect to any Distribution Date, Compensating Interest derived from a particular Loan Group shall be used on such Distribution Date to cover any Prepayment Interest Shortfalls in such Loan Group and then to cover any Prepayment Interest Shortfalls on the other Loan Group, in the same manner and priority as Excess Cash Flow would cover such shortfalls pursuant to Section 4.02.

Section 3.17.     <u>Reports to the Trustee and the Depositor.</u>

Not later than fifteen days after it receives a written request from the Trustee, the Certificate Insurer or the Depositor, the Master Servicer shall forward to the Trustee, the Certificate Insurer and the

Depositor a statement, certified by a Servicing Officer, setting forth the status of the Custodial Account as of the close of business on such Distribution Date as it relates to the Mortgage Loans and showing, for the period covered by such statement, the aggregate of deposits in or withdrawals from the Custodial Account in respect of the Mortgage Loans for each category of deposit specified in Section 3.07 and each category of withdrawal specified in Section 3.10.

Section 3.18.    Annual Statement as to Compliance and Servicing Assessment.

The Master Servicer shall deliver to the Depositor, the Certificate Insurer and the Trustee on or before the earlier of (a) March 31 of each year or (b) with respect to any calendar year during which the Depositor's annual report on Form 10-K is required to be filed in accordance with the Exchange Act and the rules and regulations of the Commission, the date on which the annual report on Form 10-K is required to be filed in accordance with the Exchange Act and the rules and regulations of the Commission, (i) a servicing assessment as described in Section 4.03(f)(ii) and (ii) a servicer compliance statement, signed by an authorized officer of the Master Servicer, as described in Items 1122(a), 1122(b) and 1123 of Regulation AB, to the effect that:

(A)    A review of the Master Servicer's activities during the reporting period and of its performance under this Agreement has been made under such officer's supervision.

(B)    To the best of such officer's knowledge, based on such review, the Master Servicer has fulfilled all of its obligations under this Agreement in all material respects throughout the reporting period or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof.

The Master Servicer shall use commercially reasonable efforts to obtain from all other parties participating in the servicing function any additional certifications required under Item 1123 of Regulation AB to the extent required to be included in a Report on Form 10-K; provided, however, that a failure to obtain such certifications shall not be a breach of the Master Servicer's duties hereunder if any such party fails to deliver such a certification.

Section 3.19.    Annual Independent Public Accountants' Servicing Report.

On or before the earlier of (a) March 31 of each year or (b) with respect to any calendar year during which the Depositor's annual report on Form 10-K is required to be filed in accordance with the Exchange Act and the rules and regulations of the Commission, the date on which the annual report is required to be filed in accordance with the Exchange Act and the rules and regulations of the Commission, the Master Servicer at its expense shall cause a firm of independent public accountants, which shall be members of the American Institute of Certified Public Accountants, to furnish to the Depositor, the Certificate Insurer and the Trustee the attestation required under Item 1122(b) of Regulation AB. In rendering such statement, such firm may rely, as to matters relating to the direct servicing of mortgage loans by Subservicers, upon comparable statements for examinations conducted by independent public accountants substantially in accordance with standards established by the American Institute of Certified Public Accountants (rendered within one year of such statement) with respect to such Subservicers.

Section 3.20.    Right of the Depositor in Respect of the Master Servicer.

The Master Servicer shall afford the Depositor and the Trustee, upon reasonable notice, during normal business hours access to all records maintained by the Master Servicer in respect of its rights and obligations hereunder and access to officers of the Master Servicer responsible for such obligations.