**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------
                                                      )
   In re:                                             )      Case No. 12-12020 (MG)
                                                      )
   RESIDENTIAL CAPITAL, LLC, et al.,                  )      Chapter 11
                                                      )
                           Debtors.                   )      Jointly Administered
                                                      )
---------------------------------------------------------------------------

**DECLARATION OF ANNE JANICZEK IN SUPPORT OF (I) THE DEBTORS' MOTION AUTHORIZING (A) IMPLEMENTATION OF A KEY EMPLOYEE INCENTIVE PLAN FOR CERTAIN KEY EXECUTIVES, AND (B) PAYMENT OF ANY OBLIGATIONS ARISING THEREUNDER AS ADMINISTRATIVE EXPENSES, AND (II) DEBTORS' MOTION TO SHORTEN NOTICE OF THE DEBTORS' MOTION AUTHORIZING (A) IMPLEMENTATION OF A KEY EMPLOYEE INCENTIVE PLAN FOR CERTAIN KEY EXECUTIVES, AND (B) PAYMENT OF ANY OBLIGATIONS ARISING THEREUNDER AS ADMINISTRATIVE EXPENSES**

I, Anne Janiczek, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am the Chief Human Resources Officer for the Mortgage Division at Debtor[1] Residential Capital LLC and its affiliates ("**ResCap**"). I submit this Declaration in support of the Debtors' Amended Motion for an Order Pursuant to Section 503(c)(3) of the Bankruptcy Code Authorizing (i) Implementation of a Key Employee Incentive Plan for Certain Insiders and (ii) Payment of any Obligations Arising Thereunder as Administrative Expenses (the "**Motion**") and the Debtors' Motion to Shorten Notice of the Debtors' Motion Authorizing (I) Implementation Of A Key Employee Incentive Plan For Certain Key Executives, And (II) Payment Of Any Obligations Arising Thereunder As Administrative Expenses (the "**Motion**

---

[1]  Capitalized terms not otherwise defined herein shall have the definitions ascribed to them in the Motion.

ny-1060816

to Shorten"). Attached hereto as Appendix 1, is an analysis of the revised KEIP (the "**KEIP Presentation**").

2. I have been at ResCap for 13 years, the last 4 in my current position. In my current position, I am responsible for leading and managing a team that supports the business in all aspects of human resources, including: management and executive development; investing and preserving critical talent acquisition; learning and development; employee relations; performance management, planning and appraisal; oversight of incentive, long-term and executive compensation plans; diversity; organizational design and effectiveness; and succession planning. Except as otherwise indicated, all statements in this Declaration are based upon: my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' books and records as well as other relevant documents; my discussions with other members of the Debtors' management team; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' operations, financial condition and history. In making my statements based on my review of the Debtors' books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants to accurately record, prepare, collect, and/or verify any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

3. The Debtors' businesses are highly people-intensive and that derive a substantial portion of the value from their employees.

4. The Modified KEIP is necessary to ensure that the Debtors' employees remain motivated in these difficult and taxing times.

2

5. As described in the KEIP Presentation, attached hereto, the Debtors significantly reduced the weighting in the Modified KEIP for closing the stalking horse bids from 63% of the overall target award to only 20% of the overall target award.

6. Additionally, the Modified KEIP includes an additional metric that ties 50 percent of the target awards to augmenting aggregate sale proceeds at the auction. In the original KEIP, the KEIP Participants were not required to increase the sale price in order to achieve a collective target award of $2.1 million. However, under the Modified KEIP, $48.3 million of additional value (net of break-up fees and expense reimbursement costs) must be achieved in order to receive that same target award of $2.1 million.

7. Moreover, the maximum possible sale-related award for all KEIP Participants remains the same - $4.9 million, and the augmented value to receive that amount remains the same - $115.3 million greater than the opening bids at the auctions.

8. The remaining 30 percent of the KEIP award will include the pre-existing financial/operational metrics, which I believe properly incentivize the KEIP participants.

9. In sum, the Sale Proceeds Award is structured to allocate (on a sliding scale basis) 4.25 percent of the incremental sale proceeds (net of any break-up fees and expense reimbursements to be paid) generated by the Platform and Legacy auctions to the KEIP incentive pool, subject to a cap of $4.9 million.

10. Finally, except to the extent noted above, the general terms of the Modified KEIP remain the same as were described in the Declarations submitted in support of the Motion and the Reply. *See, e.g.,* Greenspan Decl. at ¶¶ 34, 35 [Docket No. 812].

11. I believe that by tying a greater percentage of the target KEIP award to achieving an increase in the sales proceeds at the auction, the Debtors properly align their interests with

3

those of their creditors and incentivize the KEIP Participants to continue to perform at the highest levels.

12. Finally, the KEIP Participants have worked extraordinarily hard throughout these Chapter 11 cases to create the most robust auction process for the benefit of their creditors. The auctions for the sale of substantially all of the Debtors' assets, including the Debtors' mortgage loan origination and servicing businesses (the "**Platform Sale**") and the Debtors' "legacy" portfolio consisting mainly of mortgage loans and other residual financial assets (the "**Legacy Sale**," together with the Platform Sale, the "**Asset Sales**"), are scheduled to commence in approximately two weeks. I believe that it is critically important that the KEIP Participants know going into the auctions that their efforts to date and going forward will be appropriately rewarded through the Modified KEIP.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 9, 2012, at Punta Mita, Mexico.

*Anne M. Janiczek*
Anne Janiczek
Chief Human Resources Officer
Residential Capital, LLC

# Appendix 1

*For Settlement Purposes Only*
*Subject to FRE-408*

# Residential Capital, LLC *et al.*
# Revised KEIP Overview

September 6, 2012






*For Settlement Purposes Only
Subject to FRE-408*

# Revised KEIP:
## Incentive Metrics

**The proposed structure below addresses the Court's concerns by:**

- Decreasing award for closing the sale transactions, including the stalking horse bids, from 63% to 20% of target payout
- Implementing revised sale proceeds award that incents management through sharing in upside from incremental proceeds to the estate, subject to a cap

| Incentive Metric | Description | Weighting Assuming Target * | Amount ($MM) Min / Target / Max |
|---|---|---|---|
| Sale Proceeds Award | • 4.25% of incremental sale proceeds generated at the Platform and Legacy auctions will be allocated to the KEIP incentive pool, subject to a cap equivalent to $4.9MM<br>• Measured solely on increase in aggregate sale proceeds at the auction (i.e., from opening bid to winning bid)<br>• Immune to purchase price adjustments post-auction | 50% | $0 / $2.1 / $4.9 |
| Platform Sale Closing Award | • Closing of the sale transaction, including the stalking horse bid | 10% | $0 / $0.4 / $0.4 |
| Legacy Sale Closing Award | • Closing of the sale transaction, including the stalking horse bid | 10% | $0 / $0.4 / $0.4 |
| Barclays DIP Covenant Compliance Award | • Company maintains compliance without being in default of primary DIP financial covenant (i.e., 20% receipts and disbursement variance) through Platform sale closing | 10% | $0 / $0.4 / $0.4 |
| Fannie Mae Servicing Standard Ranking Award | • Achieve YTD Top 3 Fannie Mae ranking (measured at earlier of Platform sale closing or 12/31/12) | 10% | $0 / $0.4 / $0.4 |
| "Effective" Performance Rating Award | • Achieve "effective" performance rating for all applicable goals during the period leading up to the sale closing, as determined by the Compensation Committee in consultation with applicable supervisors (measured at earlier of Platform sale closing or 12/31/12) | 10% | $0 / $0.4 / $0.4 |
| | **Total** | **100%** | **$0 / $4.1 / $7.0** |

*\* Target KEIP award assumed to be $4.1MM to maintain consistency with the original KEIP*

*For Settlement Purposes Only
Subject to FRE-408*

# Revised KEIP:
## Incentive Payout Sensitivity Analysis

**The following table displays the range in KEIP payouts under varying levels of incremental sale proceeds <u>assuming all other performance metrics are met (for illustrative purposes only)</u>**

**REVISED KEIP**

| Incremental Sale Proceeds | % Increase Sale Proceeds | Sale Proceeds Award | Total KEIP Award | Comments |
|---|---|---|---|---|
| $ - | 0.0% | $ - | $ 2.1 | - $0 incremental sale proceeds; no payout under sale proceeds award |
| $ 20.0 | 0.5% | $ 0.9 | $ 2.9 | |
| $ 40.0 | 1.0% | $ 1.7 | $ 3.8 | |
| $ 60.0 | 1.5% | $ 2.6 | $ 4.6 | |
| $ 80.0 | 2.1% | $ 3.4 | $ 5.5 | |
| $ 100.0 | 2.6% | $ 4.3 | $ 6.3 | |
| $ 120.0 | 3.1% | $ 4.9 | $ 7.0 | |
| $ 140.0 | 3.6% | $ 4.9 | $ 7.0 | |
| $ 48.3 | 1.2% | $ 2.1 | $ 4.1 | – Target achieved at $48.3MM of incremental proceeds |
| $ 115.8 | 3.0% | $ 4.9 | $ 7.0 | – Max achieved at $115.8MM of incremental proceeds |

**ORIGINAL KEIP**

| Incremental Sale Proceeds | % Increase Sale Proceeds | Sale Proceeds Award | Total KEIP Award | Comments |
|---|---|---|---|---|
| $ - | 0.0% | $ 2.6 | $ 3.8 | |
| $ 20.0 | 0.5% | $ 3.4 | $ 4.6 | |
| $ 40.0 | 1.0% | $ 3.9 | $ 5.1 | |
| $ 60.0 | 1.5% | $ 4.3 | $ 5.6 | |
| $ 80.0 | 2.1% | $ 4.8 | $ 6.1 | |
| $ 100.0 | 2.6% | $ 5.3 | $ 6.6 | |
| $ 120.0 | 3.1% | $ 5.7 | $ 7.0 | |
| $ 140.0 | 3.6% | $ 5.7 | $ 7.0 | |
| $ - | 0.0% | $ 2.9 | $ 4.1 | – Target achieved if auction held/close stalking horse |
| $ 115.8 | 3.0% | $ 5.7 | $ 7.0 | – Max achieved at $115.8MM of incremental proceeds |

**DIFFERENCE (Revised less Original KEIP)**

| Incremental Sale Proceeds | % Increase Sale Proceeds | Sale Proceeds Award | Total KEIP Award | Comments |
|---|---|---|---|---|
| $ - | 0.0% | $ (2.6) | $ (1.8) | |
| $ 20.0 | 0.5% | $ (2.5) | $ (1.7) | |
| $ 40.0 | 1.0% | $ (2.2) | $ (1.3) | |
| $ 60.0 | 1.5% | $ (1.8) | $ (1.0) | - At $60MM of incremental proceeds, $1.0MM less under Revised KEIP |
| $ 80.0 | 2.1% | $ (1.4) | $ (0.6) | |
| $ 100.0 | 2.6% | $ (1.1) | $ (0.3) | |
| $ 120.0 | 3.1% | $ (0.8) | $ - | |
| $ 140.0 | 3.6% | $ (0.8) | $ - | |
| $ 48.3 | 1.2% | $ (0.8) | $ - | – Revised KEIP requires $48.3MM more proceeds to reach $4.1MM target |
| $ 115.8 | 3.0% | $ (0.8) | $ - | – Incremental sale proceeds required to hit max KEIP award are equivalent under original and revised KEIP |

*Global Notes:*

- "Incremental Sale Proceeds" are net of any break-up fees or expense reimbursements

- "% Increase in Sale Proceeds" are calculated based on the aggregate stalking horse bids of $3.9B

- Note the Difference calculations may not appear to foot due to rounding

*Key Observations – Revised vs. Original:*

- If no incremental sale proceeds are generated, but all other metrics are achieved, the Revised KEIP award would be $1.8MM <u>less</u>

- $48.3MM of incremental proceeds, or a 1.2% increase, must be delivered before the target KEIP award is achieved under the Revised KEIP

- Maximum payout of $7.0MM equivalent to maximum under original plan

- Maximum KEIP award is achieved at the same level of incremental proceeds ($115.8MM, or 3.0% above stalking horse bids) as contemplated under the Original KEIP

- Maintains original 3 financial and operational metrics at equivalent target payout

*For Settlement Purposes Only Subject to FRE-408*

# Revised KEIP:
## Incentive Payout Examples

**The following examples illustrate the aggregate KEIP payout under certain performance assumptions:**

| *$ in millions* | *Illustrative Payouts* | | | |
|---|---|---|---|---|
| | **Example 1 Amount** | **Example 1 Description** | **Example 2 Amount** | **Example 2 Description** |
| **Sale Performance Metrics** | | | | |
| Sale Proceeds Award | $ - | No appreciation in sale proceeds | $ 4.9 | At least $115.8MM increase in proceeds |
| Platform Sale Closing Metric | $ 0.4 | Close stalking horse bid | $ 0.4 | Close sale transaction |
| Legacy Sale Closing Metric | $ 0.4 | Close stalking horse bid | $ 0.4 | Close sale transaction |
| **Financial/Operational Performance Metrics** | | | | |
| Barclays DIP Covenant Compliance | $ 0.4 | Remain compliant | $ 0.4 | Remain compliant |
| Fannie Mae Servicing Standard Ranking | $ 0.4 | Earn top 3 ranking | $ - | Do not earn top 3 ranking |
| "Effective" Performance Rating | $ 0.4 | Earn "effective" rating | $ 0.4 | Earn "effective" rating |
| **Total** | **$ 2.1** | | **$ 6.6** | |