Joseph A Connor III
PO Box 1474
Cobb, CA  95426
Tel: 707-809-7093
e-mail: jaconnor3@netzero.net

Pro se Movant

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
_____X

| | |
|---|---|
| In re: | Case no. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.* | Chapter 11 |
| Debtors | Jointly Administered |

_____X


**RESPONSE OF JOSEPH A CONNOR (MOVANT) TO DEBTORS' OBJECTION TO MOTIONS OF JOSEPH A CONNOR III (I) FOR DECLARATORY RULING REGARDING POSSIBLE STAY VIOLATIONS AND (II) TO SEVER DEFENDANTS PROTECTED BY AUTOMATIC STAY**

THE MOVANT, Joseph A Connor III, responds to Debtors' objections to his Motions (I) For

Declaratory Ruling Regarding Possible Stay Violations and (II) To Sever Defendants Protected

By Automatic Stay, as follows:


**PROCEDURAL BACKGROUND**

1. Movant stipulates to paragraph 1.

2. Movant stipulates to paragraph 2.

3. Movant stipulates to paragraph 3, and only points to a difficulty with the

2d bullet on page 3, para 3, i.e. the paragraph beginning with "…the court order requiring the

Defendants to prove…." Movant directs the Court's attention to the phrase in parenthesis,

1

(which claims were asserted as part of the Initial Washington action and released under the Settlement Agreement). This insertion is beyond a procedural account. It is argument in aid of a Summary Judgment Motion. Nowhere in Movant's pleadings before this Court has he invited such continuation of the underlying litigation, nor does he pursue such arguments here.

4. Movant stipulates to paragraph 4.

5. Again, paragraph 5 is argumentative and produces evidence in continuation of litigation stayed by 11 US Code, 362 (a).

6. Movant stipulates to paragraph 6.

7. Movant was not heard at the 27 April 2012 hearing owing to a Court Call problem not of Movant's making. See Court Call's letter to the Court (attachment 1). Otherwise, paragraph 7 is accurate.

8. Movant stipulates to paragraph 8.

9. Movant stipulates to paragraph 9.

10. Movant stipulates to paragraph 10.

11. Movant stipulates to paragraph 11.

12. Movant stipulates to paragraph 12.

13. Movant stipulates to paragraph 13.

14. Movant stipulates to paragraph 14 and supplements paragraph 14 with acknowledgment of Movant's 4 June 2012 Suggestion of Bankruptcy filed with Ferry County, WA Superior Court (See Exhibit 3 of Connor Motion now before this Court).

15. Movant stipulates to paragraph 15 and supplements paragraph 15 with acknowledgement of Movant's 11 June 2012 Request to the Court for Clarification of the scope of the Automatic

Stay in his case before the WA Court, and for Instructions as to how Plaintiff Connor can proceed (See Exhibit 4 of Connor Motion now before this Court). Also, Connor was not heard on 8 June 2012 for reasons stated in the instant Motion, paragraph 17, pages 6 and 7.

16. Movant stipulates to paragraph 16.

17. Movant stipulates to paragraph 17.

18. Movant stipulates to paragraph 18.

19. Movant stipulates to paragraph 19.

20. Movant stipulates to paragraph 20.

**ARGUMENT**

21. (a) As the Debtors have noted in paragraph 2 of their Objection to the instant Motion, the Movant signed, and delivered to their attorney a Warranty Deed to his property in early May 2011. On 13 April 2012, Debtors sold the property to a third-party buyer and issued said buyer a bargain-and-sale deed. On the same day, Debtors, or somebody, it's unclear who, issued Movant a Deed of Reconveyance (exhibit 12 to Movant's Motion). There were no issues in play as to title after 13 April 2012. There is nothing on the Court record or indexed by the Ferry County, WA Auditor that would indicate any problems with title to the property in question. There is no evidence Connor ever claimed an interest in the property after the May 2011 Settlement. The assertion by Debtors that their conduct subsequent to the Petition Date was related primarily to their effort to clear title to the underlying property— is untrue. The remainder of the first sentence, paragraph 21, argues matters in continuation of litigation stayed by 11 USC, 362 (a).

3

(b) As Debtors acknowledge, neither the Interim Supplemental Servicing Order nor the Final Supplemental Servicing Order were entered until after the Ferry County, WA Superior Court actions of 18 May 2012 and 8 June 2012. If the Debtors believe that retroactive relief from the Automatic Stay is warranted, let them seek it. What may or may not be warranted is non-responsive to the Motion.

(c) The applicable section here of the Final Supplemental Servicing Order seems to be paragraph 17, which applies to properties subject to mortgages owned or serviced by the Debtors. The Deed of Trust and Note granted by the Movant to Eagle Home Mortgage had been extinguished and satisfied as of 13 April 2012. There was no mortgage in force owned or serviced post petition by the Debtors.

(d) Paragraph 17, section (e), refers to property subject to title disputes. No such dispute was in play after 13 April 2012. GMAC Mortgage, LLC was in possession of a clear and marketable title, and conveyed same to a third-party buyer on 13 April 2012. Movant's Motion to the WA Court for placement of Lis Pendens had been withdrawn by Movant and stricken by the Clerk prior to the 27 April 2012 hearing on the matter. There was no dispute as to title before the WA Court on 14 May 2012, the petition date. Hence, Debtors' argument in paragraph 21 is inapplicable.

(e) Lastly Re: paragraph 21, Debtors request, to be made they say at some future date, to the WA Court to vacate the 18 MayOrder, the 8 June Order, and the 31 August Order will not remedy the present situation. The elephant in the room here is the Debtors' violations of the Automatic Stay.  These were intentionally, willfully, and knowingly undertaken. Red flags were waived in front of the Debtors at every turn, see paragraphs 10, 11 and 12 of the

instant Motion. Debtors and their attorneys made no effort to inform the WA Court as to possible conflicts between the Court's actions and Federal Bankruptcy Laws. Actions by the Debtors pursued in violation of the Automatic Stay demonstrated their contempt for the laws of the land and their contempt for this Court. Regardless what they say, their actions are constitutive of such contempt.

(f) Still, the Movant has acted herein with restraint. The relief prayed for by Movant in his Motion does not seek to penalize the Debtors in any way. Movant has asked this Court for a Declaratory Ruling and nothing more. Movant is not asking the Court to vacate any rulings or hold such rulings void *ab initio*, or render such rulings nullities. He is not asking that the Debtors and their attorneys be sanctioned or cited for contempt. The Movant is asking the Court to construe a statute in light of actions taken by the WA Court. What are the rights and duties of all the parties here? Where does jurisdiction lie in this matter? A request for a Declaratory Ruling is proper. The Movant has no wish to antagonize either the Debtors, the non-debtor Defendants or the WA Court.

22. On Movant's information and belief, the Debtors have taken no steps to resolve this issue.

### A. **Declaratory Relief Request**

23. Attorneys for the Debtors are well aware the Movant was not present at the 27 April 2012 WA Court hearing. A Court Call problem prevented his being there (see attachment 1 ). Entry of The ruling made by the WA Court was actually delayed until 8 June 2012, to give the Movant an opportunity to be heard on the matter. However, at the 18 May 2012 hearing, wherein Movant informed the Court of the 14 May 2012 Petition Date, Movant was heard on his Motion for rehearing owing to the Court Call problem, at the Court's behest. Said Motion was denied and

the order entered on 18 May 2012. This is hardly 'ministerial'. It was the bold continuation of a judicial action in the face of the Automatic Stay. For the Debtors to say now that with permission of this Court, they will ask the WA Court to vacate the 18 May order without prejudice, is to give something with one hand and take it away with the other. There can be no question here of orders being vacated 'without prejudice'. The Debtors and their attorneys are admitted lawbreakers. They cannot be rewarded by allowing them to retain rights they so blatantly threw away when they violated the Automatic Stay. Moreover, the Movant has asked for no such remedies. Debtors and their attorneys are attempting to reconfigure Movant's Motion.

24. The Movant appreciates the Debtors admission of guilt as to Automatic Stay violations on 8 June 2012 and 31 August 2012, but whether the 31 August order, entered in violation of the Automatic Stay, is void, is hardly up to them. This is for the Court to determine, but in any case, the Movant has not asked for such a determination. The Movant did not wish to involve this Court in this matter to this degree. As the Debtors rightly point out, an order entered in violation of the Automatic Stay is void and without effect. It never happened, and can likely be collaterally attacked in any appropriate Court at any time. Why would the Debtors want to move to vacate the WA Court orders without prejudice unless it is to preserve some or other right they imagine they have?  It is improper for the Debtors to ask this or any other Court to give them back what their misdeeds have taken away. Moreover, issue preclusion will almost certainly prevent their ever revisiting the underlying issues again. It is passed time for the Debtors to remedy violations of the automatic stay. They had their chance. If such remedies are available, the Movant can seek them if he so chooses.

6

The Movant urges this court to overrule Debtors objections and rule on the Motion as he has presented it. Movant recognizes the Court's authority to go beyond a simple Declaratory Ruling on this matter should it choose, but in the interests of keeping the peace, he asks the Court to go no further than the Declaratory Ruling as prayed for. The Debtors' so called 'remedies', which would operate solely in their own interests and not the Movant's, are way ahead of the game and take the Movant into places has not decided to go, unless it becomes absolutely necessary to force a resolution in the underlying case. Movant holds that such resolution can be found without force and without taking up this or any other Court's valuable time.

25. The Movant applauds Debtors' efforts as they have presented them, but cannot see how such efforts, laudable as they may be, bear on the matters before this Court. Also, other than a more or less accurate, lengthy recital of the procedural history of this and other matters, the Movant fails to see how the Declaration of Jennifer Scoliard supports Debtors' position in matters before this Court.

26. The Movant has just been over most of this ground, but would note that no matter what the Debtors may be prepared to do, all of which must be done over Movant's objections, they have done nothing so far, and can do nothing without this Court's permission. They have the cart before the horse. The Movant's request for Declaratory Ruling is hardly mooted, and their averment that this Court has no power to rule on such issues is premature and wrong.

**B. Severance Request**

27. Movant stipulates to paragraph 27.

28. Paragraph 28 is something of a word salad, and so it is with some difficulty Movant is attempting to identify the issues contained herein and respond to the Debtors' positions.

(a) Debtors seem to be saying in the first instance that the Rooker-Feldman Doctrine is elementary law, not just as it applies to bankruptcy cases, but across the board, and that furthermore, they want to apply the Doctrine somehow to Movant's Motion to Sever Defendants Protected by the Automatic Stay From Those Defendants Not So Protected.

(b) The Movant's take on Rooker-Feldman is that it bars federal court subject matter jurisdiction over collateral attacks on state court judgments; and that it prevents any lower federal court from taking up any appeal directly from a state court judgment. These prongs of the Doctrine find their origins in 28 USCA, section 1257, which gives the Supreme Court subject matter jurisdiction over appeals from final state court judgments in which the validity of a federal statute is at issue or where a state statute is held to violate the Constitution. Rooker does say that the jurisdiction of federal district courts is original, but the other language Debtors impute to Rooker does not appear in the decision. The Feldman language offered by the Debtors is close enough to language in the Supreme Court's decision to work with.

(c) From the above, it seems a fundamental prerequisite for the application of Rooker-Feldman that there be a case in controversy as a backdrop to any determination as to the applicability of the Doctrine. Re: the instant case, there is no state court decision, ruling, order, judgment, etc for the Bankruptcy Court to review, assuming it decided it had jurisdiction to do so. No decision as to Movant's Motion has been handed down by a state court. The Movant has not repaired to federal court to undo a state court judgment, and the Motion in no way seeks to have the Bankruptcy Court review such judgment.

(d) The Second Circuit in a non-bankruptcy case, concluded there are four requirements for application of the Rooker-Feldman Doctrine:

> (i) the federal court plaintiff must have lost in state court;
>
> (ii) the plaintiff must complain of injuries caused by the state court judgment;
>
> (iii) the plaintiff must invite district court review and rejection of that judgment, and
>
> (iv) The state court judgment must have been rendered before the district court proceedings commenced—the Doctrine has no application to federal court suits proceeding in parallel with on going state court litigation.
> (Hoblock v. The Albany County Board of Elections, 422 F.3d at 85.)

None of these requirements appears to be fulfilled regards Movant's Severance Motion.

(e) It does not follow from Rooker-Feldman that this Court lacks jurisdiction to enter judgments on behalf of the WA Court. This may or may not be true on other grounds, but it's not true on the basis of Rooker-Feldman, and in any case, Debtors have supplied no such other grounds. Likewise, it does not follow from Rooker-Feldman that the determination to sever claims in the 2d WA action is solely within the jurisdiction of the WA Court. This may or may not be true on other grounds, but it's not true on the basis of Rooker-Feldman, and in any case, Debtors have supplied no such other grounds. Accordingly, it does not follow from Rooker-Feldman that Movant's request to sever the claims in the 2d WA action is procedurally improper and should be denied. This may or may not be true on other grounds, but it's not true on the basis of Rooker-Feldman, and in any case, Debtors have supplied no such other grounds.

(f) Movant has advanced his severance motion as a core administrative function of an operative bankruptcy. This severance action implicates substantive rights granted the Debtors under Title 11, USC. If this forum is improper, the Bankruptcy Judge will so inform

the Movant.

(g) the Movant has asked this Court to sever his claims against MERS and Ally Financial from the his claims against the remaining four Defendants because two of them, GMAC Mortgage and ETS are named debtors. He has included Karen Balsano and LSI Title Agency among the debtors because he is virtually certain both have been indemnified against any liability by the Debtors. Were the severance to be along lines other than those he has asked for, the Movant can see a scenario wherein if he proceeded against Balsano and LSI in state court, the Debtors would seek to expand the automatic stay to include them, and in the same breath move against the Movant for automatic stay violations on the grounds that both of them should be included in the Bankruptcy Court's injunction. Moreover, Movant knew this to be true when he proceeded against them in state court, despite his anticipation they would be quickly eliminated by action of the Debtors-in-Bankruptcy. The interim period between proceeding against Balsano and ETS and their application to the Bankruptcy Court for Automatic Stay protection would leave the Movant vulnerable to claims by the Debtors of automatic stay violations. If the Movant could be saved harmless against any possible Debtor claims of automatic stay violations during this interim period, he would have no objection to proceeding as the Debtors have suggested in paragraph 29.

**WHEREFORE**, the Movant asks this Court to overrule Debtors' objections, and to rule on his two Motions as they have been stated in the pleadings now before the Court.

Dated: 5 October 2012

_____
Joseph A Connor III, Pro se Movant

10



**CourtCall**
TELEPHONIC COURT APPEARANCES

CourtCall, LLC
6383 Arizona Circle
Los Angeles
CA 90045
Tel: (888) 882-6878
Fax: (888) 883-2946

www.courtcall.com

April 30, 2012

Judge Allen Nielson Superior Court Judge
Ferry County Superior Court

RE: Conner vs. GMAC Mortgage, et al
*Case No. 11-2-00098-6*
April 27, 2012

Dear Judge Nielson:

We have been informed that a Civil Motion involving In Pro Per Joseph A. Connor III, which was scheduled through CourtCall in the above referenced case was not completed.

Our records indicate that Mr. Connor made arrangements to appear by phone on April 24th at 11:23 am. Mr. Connor has indicated that he did not receive a Confirmation from our office and therefore did not have the phone number to dial in to connect for his appearance. Our records confirm that the confirmation was not sent. Mr. Connor believed that he would be dialed out to for his appearance. By the time he contacted our office and the error was discovered, the Court had heard the above mentioned case without his participation. Mr. Connor made a good faith effort to appear, however due to a clerical error on our part, was unable to do so.

Should you or your staff have any questions or comments, please feel free to contact me directly.

Very truly yours,

Amy M. Lohrenz
Teleconference and Court Liaison

Cc: Mr. Connor

Attachment I

Joseph A Connor III
PO Box 1474
Cobb, CA 95426
Tel: 707-809-7093
jaconnor3@netzero.net

Pro se Movant

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____X

In re:                                              Chapter 11

RESIDENTIAL CAPITAL, LLC (ResCap), *et al.*         Case No. 12-12020 (MG)

            Debtors                                 Jointly Administered
_____X

### CERTIFICATE OF SERVICE

I hereby certify that on 5 October 2012, I caused to be served true and correct copies of Movant Connor's Response to Debtors' Objections to Motions of Joseph A Connor III (I) for Declaratory Ruling Regarding Possible Stay Violations and (II) To Sever Defendants Protected by Automatic Stay, and one (1) attachment, by Express US Mail, Postage Prepaid, on the parties listed below:

William Fig                          Erica Richards
1000 SW Broadway                     Morrison & Foerster LLP
Suite 1400                           1290 Avenue of the Americas
Portland, Oregon 97205               New York, New York 10104

1

Stephen Hessler  
Kirkland & Ellis LLP  
665 15th Street NW  
Suite 1200  
Washington, D.C. 20005

William Hazeltine  
Sullivan Hazeltine Allinson LLC  
901 North Market Street  
Suite 1300  
Wilmington, Delaware 19801

Dated: 5 October 2012

_____  
Caitlin Nelson