MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:      (212) 468-7900
Gary S. Lee
Todd M. Goren
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION TO APPROVE AMENDMENT TO**
**THE BARCLAYS DIP FACILITY AND FEES PAYABLE THEREUNDER**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby move this Court (the "Motion")[2] for entry of an order substantially in the form attached hereto as Exhibit 1, pursuant to sections 101 and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing them to:

---

[1]   The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Whitlinger Affidavit (defined below). Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

[2]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) And Bankruptcy Rules 4001 and 6004 (I) Authorizing the Debtors to (A) Enter Into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) Obtaining Postpetition Financing on a Secured, Superpriority Basis, (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c), and (III) Granting Related Relief* [Docket No. 13].

ny-1060281

(a)     enter into an amendment (the "DIP Amendment")[3] of the Superpriority Debtor-In-Possession Credit and Guaranty Agreement, dated as of May 16, 2012, as amended and restated as of June 29, 2012, and as further amended and restated as of August 14, 2012 (the "Barclays DIP Credit Agreement"); and

(b)     pay aggregate fees of up to $2.05 million to the lenders and administrative agent under the Barclays DIP Credit Agreement (the "DIP Lenders") pursuant to the DIP Amendment (the "Amendment Fees").

In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Marc D. Puntus in Support of (I) the Debtors' Motion to Approve Amendment to the Barclays DIP Facility and Fees Payable Thereunder, and (II) Debtors' Motion to Shorten Notice of the Debtors' Motion to Approve Amendment to the Barclays DIP Facility and Fees Payable Thereunder* (the "Puntus Declaration"), filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.     This Court has subject matter jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.**     **Chapter 11 Cases**

2.     On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are

---

[3]     A copy of the Third Amended and Restated Superpriority Debtor-In-Possession Credit and Guaranty Agreement to be effectuated pursuant to the DIP Amendment is substantially in the form annexed hereto as Exhibit 2 (the "Amended and Restated Barclays DIP Credit Agreement"). A blackline copy of only the changed pages to the Amended and Restated Barclays DIP Credit Agreement is annexed hereto as Exhibit 3.

2

ny-1060281

managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee has been appointed in these Chapter 11 cases.[4]

3. On May 16, 2012, the Debtors entered into the Superpriority Debtor-In-Possession Credit and Guaranty Agreement pursuant to the *Interim Order Pursuant To 11 U.S.C. §§ 105, 362, 363(b)(1), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter Into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Scheduling Final Hearing*, entered on May 15, 2012 [Docket No. 80].

4. On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

5. On June 20, 2012, the Court directed that an examiner be appointed, and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket Nos. 454, 674].

6. On June 25, 2012, the Court entered the *Final Order Pursuant To 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) To enter into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements*

---

[4] The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial, Inc. ("AFI"), which is not a Debtor. The Debtors and their non-debtor affiliates operate the fifth largest servicing business and the tenth largest mortgage origination business in the United States. A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings*, filed on May 14, 2012 [Docket No. 6].

*relating to Additional Receivables and (B) To Obtain Post Petition Financing on a Secured Superpriority Basis and (II) Granting Related Relief* [Docket No. 490] (the "Final DIP Order") on a final basis authorizing the Debtors to obtain post-petition secured superpriority financing in an aggregate principal amount: (i) up to $190,000,000 under the revolving loan facility (the "Revolving Facility"); (ii) up to $1,060,000,000 under the A-1 term loan facility (the "Term A-1 Facility"); and (iii) up to $200,000,000 under the A-2 term loan facility (the "Term A-2 Facility" and, together with the Term A-1 Facility, the "Term Facilities"; the Term Facilities together with the Revolving Facility, the "Barclays DIP Facility").

7. The Superpriority Debtor-In-Possession Credit and Guaranty Agreement, dated as of May 16, 2012, was amended and restated as of June 29, 2012 pursuant to the Amended and Restated Superpriority Debtor-In-Possession Credit and Guaranty Agreement, and further amended and restated as of August 14, 2012 pursuant to the Second Amended and Restated Superpriority Debtor-In-Possession Credit and Guaranty Agreement.

**B.    DIP Amendment**

8. The DIP Amendment amends the Barclays DIP Facility to permit the Debtors to, among other things: (i) consummate the sale of their "legacy" whole loan portfolio (the "Legacy Portfolio" and the "Legacy Portfolio Sale") prior to the sale of their mortgage loan origination and servicing platform (the "Platform" and the "Platform Sale"), and (ii) sell certain junior lien collateral consisting of Federal Housing Administration mortgage insurance backed mortgage loans and mortgage loans guaranteed by the U.S. Department of Veterans Affairs (the "FHA/VA Loan Sales").[5]

---

[5] The FHA/VA Loans that secure the Barclays DIP Facility are subject to a first lien in favor of AFI under the Ally Line of Credit.

9. At the time the Debtors sought approval of the Barclays DIP Facility, due to the uncertainty surrounding the sales process and timing, the Debtors were unable to obtain the flexibility to close the Legacy Portfolio Sale prior to the closing of the Platform Sale. Thus, aside from the simultaneous sale of the Legacy Portfolio and the Platform and payoff in full of the Barclays DIP Facility, the Barclays DIP Facility, in its current form, only permits sales of first lien collateral up to $25 million and sales of junior lien collateral in the ordinary course of business. Given the level of interest in the Legacy Portfolio and the Platform, the DIP Lenders have now agreed, subject to Court approval, to amend the Barclays DIP Facility to permit the Debtors to consummate the Legacy Portfolio Sale and FHA/VA Loan Sales of up to $200 million prior to consummation of the Platform Sale, subject to the partial pay down of the Barclays DIP Facility in accordance with the terms thereof. The DIP Amendment would give the Debtors the flexibility to close the Legacy Portfolio Sale prior to the closing of the Platform Sale and also to monetize a meaningful amount of its loan portfolio.

10. The DIP Amendment is beneficial to the Debtors' estates. It will ensure that the winning bidder for the Legacy Portfolio Sale will be able to close promptly and not be forced to wait for the closing of the Platform Sale. Bidders for the Legacy Portfolio desire to consummate the sale quickly because they are purchasing a static pool of mortgage loans for a percentage of the outstanding unpaid principal balance. The normal course run-off of and prepayments associated with a mortgage loan portfolio represent value that bidders may forego if forced to delay closing until the Platform Sale closing. The Platform Sale will take longer to close than the Legacy Portfolio Sale due to the time required to obtain the consents and approvals necessary to transfer the Debtors' servicing and origination platforms and transition the Debtors' assets, employees and processes to the winning bidder. The Debtors believe that if the Legacy Portfolio

Sale can close separately from and earlier than the Platform Sale, there should be more active bidding on the Legacy Portfolio due to the increased certainty.

11. In addition to the foregoing, approval of the DIP Amendment will provide a direct financial benefit to the Debtors' estates. Specifically, subject to approval of the DIP Amendment, the Debtors will be able, and in fact required, to use the proceeds from the Legacy Portfolio Sale to reduce the outstanding obligations under the Barclays DIP Facility and repay the AFI DIP Facility in full. The reduction of outstanding obligations under the Barclays DIP Facility, which will cause the termination of the Revolving Facility, will reduce interest expense and eliminate unused line fees. As a result, even after payment of the Amendment Fees, the Debtors likely will receive a net economic benefit from entry into the DIP Amendment. As set forth in the DIP Amendment, the Debtors have agreed to pay the Amendment Fees on or before the DIP Amendment closing date, subject to Court approval.

12. The Debtors have carefully evaluated their liquidity needs and believe that they will have sufficient liquidity to operate pending the close of the Platform Sale, even with the termination of the Revolving Facility.

13. The Debtors, Administrative Agent and the DIP Lenders negotiated the DIP Amendment in good faith and at arm's length.

## RELIEF REQUESTED

14. The Debtors respectfully request authority to enter into the DIP Amendment and pay the Amendment Fees.

**BASIS FOR RELIEF**

15.     The Debtors seek approval of the DIP Amendment and authority to pay the Amendment Fees pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.[6] Pursuant to section 363(b) of the Bankruptcy Code, bankruptcy courts have generally approved the use, sale or lease of estate property out of the ordinary course of business where there exists a sound business justification for the proposed transaction.  See, e.g., Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) (acknowledging the use of the "articulated business justification" for the use of property under Section 363); Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under Section 363(b) when there is a legitimate business justification).

16.     A debtor has the burden of establishing that a valid business purpose exists for the use of estate property in a manner that is not in the ordinary course of business.  See In re Lionel Corp., 722 F.2d at 1071.  Once a debtor articulates a valid business justification, however, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).  The business judgment rule therefore shields a debtor's management from judicial second-guessing.  A court should approve a debtor's business decision unless that decision is a product of bad faith or gross abuse of discretion.  See id.; see

---

[6] To the extent section 364(c) or 364(d) of the Bankruptcy Code is implicated by the DIP Amendment, the Court has already concluded in the Final DIP Order that the Debtors were unable to obtain sufficient postpetition financing from alternative lenders or on more favorable terms than those contained in the Barclays DIP Credit Agreement approved by the Final DIP Order.

also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).

17. The DIP Amendment and payment of the Amendment Fees are supported by sound business justifications and are in the best interests of the Debtors' estates:

(a) The DIP Amendment will benefit the Debtors' estates by increasing the likelihood of more active bidding at the auction for the Legacy Portfolio Sale,

(b) The aggregate amount of the Amendment Fees is reasonable and will be offset by the fees and interest saved as a result of the DIP Amendment, likely resulting in a net economic benefit to the Debtors' estates, and

(c) The Debtors, Administrative Agent and the DIP Lenders negotiated the DIP Amendment in good faith and at arm's length.

18. Accordingly, the Debtors request authority to enter into the DIP Amendment and pay the Amendment Fees.

## NOTICE

19. Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the office of the United States Attorney General; (c) the office of the New York Attorney General; (d) the office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) each of the Debtors' prepetition lenders, or their agents, if applicable; (h) each of the indenture trustees for the Debtors' outstanding notes issuances; (i) counsel for AFI Financial Inc.; (j) counsel for Barclays Bank PLC, as administrative agent for the DIP Lenders; (k) Nationstar Mortgage LLC and its counsel; (l) counsel for the Creditors' Committee; and (m) all parties requesting notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, the Debtors respectfully request the entry of an order granting the relief requested herein, substantially in the form attached hereto as <u>Exhibit 1</u>, and such other and further relief as is just and proper.

Dated: October 10, 2012
New York, New York

>   */s/* Todd M. Goren
>   Gary S. Lee
>   Todd M. Goren
>   Samantha Martin
>   MORRISON & FOERSTER LLP
>   1290 Avenue of the Americas
>   New York, New York 10104
>   Telephone: (212) 468-8000
>   Facsimile: (212) 468-7900
>
>   *Counsel for the Debtors and*
>   *Debtors in Possession*