Objection Deadline: October 12, 2012 at 12:00 p.m. (ET)
Hearing Date: October 17, 2012 at 2:00 p.m. (ET)

| | |
|---|---|
| **MORGAN, LEWIS & BOCKIUS LLP**<br>James L. Garrity, Jr.<br>John C. Goodchild, III (*pro hac vice*)<br>101 Park Avenue<br>New York, New York 10178-0600<br>Telephone: (212) 309-6000<br>Facsimile: (212) 309-6001<br><br>*Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustees of Certain Mortgage Backed Securities Trusts* | **DECHERT LLP**<br>Glenn E. Siegel<br>Craig P. Druehl<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Telephone: (212) 698-3500<br>Facsimile: (212) 698-3599<br><br>*Counsel to The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage Backed Securities Trusts* |
| **ALSTON & BIRD LLP**<br>Martin G. Bunin<br>John C. Weitnauer (*pro hac vice*)<br>90 Park Avenue<br>New York, NY 10016<br>Telephone: (212) 210-9400<br>Facsimile: (212) 210-9444<br><br>*Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts* | **SEWARD & KISSEL LLP**<br>Ronald L. Cohen<br>Arlene R. Alves<br>One Battery Park Plaza<br>New York, New York 10004<br>Telephone: (212) 574-1200<br>Facsimile: (212) 480-8421<br><br>*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage Backed Securities Trusts* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | **Case No. 12-12020 (MG)** |
| **RESIDENTIAL CAPITAL, LLC,** *et al.***,** ) | |
| ) | **Chapter 11** |
| Debtors. ) | |
| ) | **Jointly Administered** |

**RESPONSE OF THE RMBS TRUSTEES IN SUPPORT OF
THEIR PRE-AUCTION OBJECTIONS
TO THE DEBTORS' SALE MOTION**

# **TABLE OF CONTENTS**

RESPONSE ................................................................................................................................. 1

    1.01    Introduction. .............................................................................................................. 1

    1.02    The Debtors Cannot Rely on § 363 of the Bankruptcy Code to Limit Nationstar's Obligations under Assumed and Assigned Contracts. ........................ 2

    1.03    Executory Contracts Must Be Assumed and Assigned with All Their Burdens. .................................................................................................................. 3

    1.04    Section 365 of the Bankruptcy Code Allows a Debtor to Cure Existing Defaults, Not Create Defaults by Refusing to Perform in the Future. ..................... 4

    1.05    The Third Party Consents are Not Impermissible Restrictions on Assignment. ............................................................................................................. 6

    1.06    The Trustees Have Not Completed their Analysis of Nationstar's General Ability to Provide Adequate Assurance of Future Performance. ........................... 7

CONCLUSION ........................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Flint Glass Workers Union v. Anchor Resolution Corp.*,
   197 F.3d 76 (3d Cir. 1999)......................................................................................................3

*In re Am. Home Mortg. Holdings, Inc.*
   402 B.R. 87 (Bankr. D. Del. 2009) .........................................................................................7

*Cinicola v. Sharffenberger*,
   248 F.3d 110 (3d Cir. 2001).....................................................................................................3

*In re 1945 Route 23 Assocs., Inc.*,
   2008 WL 2386296 (Bankr. D. N.J. June 9, 2008) ..................................................................5

*In re Access Beyond Technologies, Inc.*,
   237 B.R. 32 (Bankr. D. Del. 1999) .........................................................................................2

*In re Fleming Cos., Inc.*,
   499 F.3d 300 (3d Cir. 2007).....................................................................................................3

*In re Ionosphere Clubs, Inc.*,
   85 F.3d 992 (2d Cir. 1996)......................................................................................................3

*In re MF Global Holdings Ltd.*,
   466 B.R. 239 (Bankr. S.D.N.Y. 2012) ....................................................................................3

*Nat'l Labor Relations Bd. v. Bildisco & Bildisco*,
   465 U.S. 513 (1984).................................................................................................................3

**STATUTES**

§ 363 of the Bankruptcy Code ...................................................................................................2, 3

§ 365 of the Bankruptcy Code .........................................................................................2, 3, 4, 5, 6

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY 408 (8th ed. 2004) ..............................................................................3

The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, U.S. Bank National Association and Wells Fargo Bank, N.A., solely in their respective capacities as trustees or indenture trustees for certain mortgaged backed securities trusts (collectively, the "**RMBS Trustees**"),[1] submit this response (the "**Response**") to *Debtors' Omnibus Reply to the RMBS Trustees' Pre-Auction Objections to the Debtors' Sale Motion* (Docket No. 1768) (the "**Debtors' Reply**") and in further support of the *Pre-Auction Objections of the RMBS Trustees to the Debtors' Sale Motion* (Docket No. 1242, the "**Pre-Auction Objections**"). The RMBS Trustees respectfully state as follows:

## RESPONSE

*1.01   Introduction.*

1. As explained in more detail in the Pre-Auction Objections, the Debtors seek to assume the PSAs[2] and assign them to Nationstar,[3] but ask this Court to *enjoin any party* from "asserting against Nationstar *any* claims or *obligations relating to the pre-closing period* under any Assumed Contract ...." Sale Motion at p. 32; *see* Pre-Auction Objections at ¶ 9 (referring to this as the "**Limitation of Future Performance**").

2. The Debtors' Reply is an acknowledgement that the "pre-closing" line of demarcation simply doesn't work, and that Nationstar is willing to (as it must) assume obligations under the

---

[1] The RMBS Trustees file this Reply solely in their capacity as trustees of RMBS Trusts and not, in the case of all of the RMBS Trustees other than Wells Fargo, N.A., in any of their capacities as members of the Official Committee of Unsecured Creditors (the "**Committee**"). Wells Fargo, N.A. is not a member of the Committee.

[2] Capitalized terms not otherwise defined in this Reply shall have the meaning set forth in the Pre-Auction Objections.

[3] The RMBS Trustees acknowledge that Nationstar might not be the assignee, however for ease of reference in this Response, the RMBS Trustees refer to Nationstar as the assignee.

PSAs *even when those obligations could relate to pre-closing acts or omissions of the Debtors*. Debtors' Reply at ¶ 11 ("The scope of Nationstar's post-closing obligations would include, for example, the obligation to perform future servicing duties (such as REO property remediation) that could be traced to any pre-closing "acts or omissions" of the Debtors.")

*1.02    The Debtors Cannot Rely on § 363 of the Bankruptcy Code to Limit Nationstar's Obligations under Assumed and Assigned Contracts.*

3.    The Debtors otherwise continue to insist that Nationstar can pick and choose the obligations that Nationstar will be obligated to perform under PSAs that are assumed and assigned pursuant to § 365 of the Bankruptcy Code, and that the Court can use the Sale Order to rewrite the PSAs.[4]  "Nationstar and the Debtors agreed to define *with some specificity the types of obligations being assumed*.  Throughout, Nationstar's objective has been clear – ... *to leave behind* the liabilities attributable to the Debtors' pre-closing operation of the business ...." Debtors' Reply at ¶ 2 (emphasis added).  "Nationstar cannot be forced to incur obligations it has not agreed to assume as part of its proposal for the Debtors' Servicing Platform.  The Nationstar APA was heavily negotiated at arm's length and represents the terms on which Nationstar is prepared to acquire the Debtors' business."  *Id*. at ¶ 20.

4.    Debtors persist in defending their approach by reference to *§ 363* of the Bankruptcy Code ("there is no requirement under the Code, or otherwise, that requires a purchaser of assets *through a section 363 sale* to incur more liabilities than it expressly agrees through the sale and purchase documents."  *Id*. at ¶ 21 (emphasis added)).  That is simply not the law – the very existence of two different sections of the Bankruptcy Code – one governing the sale of assets, and another governing the assumption and assignment of executory contracts – should eliminate

---

[4] The proposed rewriting of the PSAs goes further than the Limitation of Future Performance; *see* Pre-Auction Objections at ¶¶ 16 – 20 (explaining the other "scope" objection, referred to as the "List of Servicing Obligations").

any debate on this point. *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 48 (Bankr. D. Del. 1999) ("[a] debtor cannot avoid the requirements of § 365 by saying it is 'selling' a lease or executory contract, rather than assuming and assigning it."); *Cinicola v. Sharffenberger*, 248 F.3d 110, 124 (3d Cir. 2001) ("[T]he sale of an executory contract ... requires satisfaction of the requirements for assuming and/or assigning the same executory contract."). The Debtors therefore cannot rely on § 363, where § 365 and the authorities construing it make clear that an executory contract must be assumed and assigned with all of its burdens.

*1.03    Executory Contracts Must Be Assumed and Assigned with All Their Burdens.*

5. Bankruptcy law requires an executory contract to be assumed and assigned *cum onere* – with all its burdens.[5] *Nat'l Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984); *In re Fleming Cos., Inc.*, 499 F.3d 300, 308 (3d Cir. 2007) ("an assignment is intended to change only who performs an obligation, not the obligation to be performed") (citing *Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001)); *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80, 81 (3d Cir. 1999) ("[S]uch a forced novation is dependent on … a total undertaking by the assignee." "[A]n assignment of a contract as such involves a commitment by the assignee to perform all obligations under the contract ...."); *In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).

6. Rewriting a contract deprives one party of the benefit of the bargain expressed in the contract. Section 365 does not permit the debtor, the assignee or the court to change that bargain. *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (Congress intended "to

---

[5] BLACK'S LAW DICTIONARY 408 (8th ed. 2004) ("An item acquired *cum onere* is taken subject to existing burdens and charges.").

3

insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance.") (citation omitted); *In re Fleming Cos., Inc.*, 499 F.3d at 308 ("The *cum onere* rule 'prevents the [bankruptcy] estate from avoiding obligations that are an integral part of the assumed agreement.'") (citation omitted). Debtors' proposal, if allowed, would impermissibly permit Nationstar to assume some – but not all – servicing and indemnification obligations contained in the PSAs.

1.04  *Section 365 of the Bankruptcy Code Allows a Debtor to Cure Existing Defaults, Not Create Defaults by Refusing to Perform in the Future.*

7. With respect to only one of the many obligations that Nationstar doesn't plan to be burdened by under the PSAs, as rewritten[6] – what Debtors call the "Pre-Closing Indemnification Obligations"[7] – the Debtors claim that the obligations that Nationstar will not perform in the future are "latent liabilities." Debtors' Reply at 3.

8. Debtors then claim that "latent liabilities are *in the nature of* a cure claim.…" Debtors' Reply at 3 (emphasis added). But § 365 of the Bankruptcy Code is more precise than that: it requires *cure* of *existing* defaults *and* adequate assurance of *future performance*. Section 365(b)(1) provides:

> ***If there has been a default*** in an executory contract ..., the trustee may not assume such contract ... unless, at the time of assumption of such contract ..., the trustee –
>
> (A) *cures*, or provides adequate assurance that the trustee will promptly cure, *such default*.

---

[6] *See* the Pre-Auction Objections at § 2.01, which discusses both the Limitation of Future Performance and the List of Servicing Obligations, both of which, if permitted, would rewrite the PSAs and eliminate material burdens that Nationstar would otherwise be required to shoulder.

[7] Debtors' Reply at ¶ 18. The RMBS Trustees feared – with good reason, as it turns out – that the intent of the proposed Sales Order was to negate the servicer's (*i.e.*, Nationstar, after the assumption and assignment of the PSAs) obligation to pay the expenses of, and to indemnify, the RMBS Trustees. See Pre-Auction Objections at ¶ 20. The Debtors' Reply is blunt: "Nationstar is unwilling to assume the Pre-Closing Indemnification Obligations." Debtors' Reply at ¶ 21.

11 U.S.C. §. 365(b)(1) (emphasis added).  Nothing in § 365 allows a debtor to assume just part of an executory contract, and treat the *predicted* harm to the counterparty as something in the nature of an existing default, to be handled in the nature of a cure claim under § 365(b)(1).

        9. An obligation under an executory contract, not due at the time of assignment, is not subject to cure, but rather is an obligation that the assignee assumed and must perform.  *In re 1945 Route 23 Assocs., Inc.*, 2008 WL 2386296 (Bankr. D. N.J. June 9, 2008).  In *1945 Route 23 Associates*, the court found that taxes and common area maintenance ("**CAM**") charges, which accrued pre-assignment but did not come due until after the assignment, constituted obligations of the assigned lease assumed by the assignee.  "[A] party assuming a lease must likewise perform as required by the lease terms. … 'In the context of a lease contract … the most straightforward understanding of an obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform.'"  *Id.* at *7–*8 (quoting *In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d Cir. 2001)).  The court held that prospective contractual liability is not in the nature of a cure claim.  "The court is hard-pressed to understand how the accruing, but unknown and unbilled taxes, and CAM deficiency can constitute a default requiring cure."  *Id.* at *7.

        10. The underlying economics of the Debtors' position reveals another fundamental flaw in this approach.  By picking and choosing its obligations under the PSAs, Nationstar will have less financial risk, and more certainty that it can make money, from its future (but limited) performance under the PSAs.  By lessening its burdens – or making their scope less uncertain – perhaps Nationstar's offer to buy the Servicing Platform is higher than it would otherwise be.  Thus, both Nationstar and the Debtors enjoy and share economic benefits of unilaterally rewriting the contracts (the PSAs) that they have with their present and future customers (the

5

RMBS Trustees and the Certificateholders in the RMBS Trusts), but all the costs fall on the customers.

11. Nationstar could protect itself from these burdens, or their uncertainty, by lowering its price, or by requiring an unqualified representation and warranty from the Debtors about the future costs of these burdens and establishing an escrow account to secure against a breach of such representations and warranties. A competing bidder may not require such adjustments. However these two parties, or any other bidder and the Debtors, chose to establish a price, the future costs that the assignor and assignee associate with these contractual burdens should be allocated between the assignor and the assignee – not their customers.

12. This principle also requires the rejection of Debtors' proposal that Nationstar be allowed to cherry-pick the indemnification and servicing burdens it will assume on the condition that an escrow be set aside to pay any indemnification obligations that Nationstar refuses to honor. *See* Debtors' Reply at ¶ 22 *et seq*. Even if the escrow amount were known (and Debtors have not revealed what they would be willing to set aside), an escrow arrangement would still impermissibly shift economic risk from assignor and assignee to their customers. If the amount of claims exceeds the escrow amount, the Trustees and Certificateholders have no recourse for the shortfall.

*1.05*   *The Third Party Consents are Not Impermissible Restrictions on Assignment.*

13. The only authority Debtors cite for the proposition that a Rating Agency Confirmation (a "**RAC**") is an impermissible restriction on assignment under § 365(f) is a snippet of a transcript in the *Capmark* case, *see* Ex. A to Debtors' Reply, which is hardly authority for anything. In any event, that snippet reveals that the only issue there was *the timing* of getting a RAC – the ratings agencies "indicated orally that they intended to reinstate the existing ratings upon closing, that they don't and won't provide a written agreement or

6

commitment to do that prior to the closing." Thus, the evidence showed that the RAC provision "will be complied with to the extent it's relevant to the parties which is that the ratings stay in place post sale." Ex. A to Debtors' Reply at p. 4. *In re American Home Mortg. Holdings, Inc.* 402 B.R. 87 (Bankr. D. Del. 2009), relied on by the Debtors, did not find a RAC to be an impermissible anti-assignment clause.

14. The Asset Purchase Agreement contemplates that Nationstar will try to obtain consents from Insurers and "no downgrade" letters from the rating agencies; Nationstar should do so.[8]

*1.06    The Trustees Have Not Completed their Analysis of Nationstar's General Ability to Provide Adequate Assurance of Future Performance.*

15. As the Pre-Auction Objections noted, The RMBS Trustees are continuing to work with Nationstar and the Debtors to ensure that all necessary financial and other information is provided to the RMBS Trustees in order to determine Nationstar's ability to perform under the PSAs. The RMBS Trustees will continue to evaluate the information they receive in this process. Pre-Auction Objections at ¶ 24. That is still the case. On this particular Pre-Auction Objections, *see* § 2.02 of the Pre-Auction Objections, the RMBS Trustees agree with the Debtors that a resolution of the same is not yet ripe.

---

[8] See § 6.2 of the APA (found at Docket 113), provides, in pertinent part:

**Third Party Consents**. Sellers and Purchaser shall use commercially reasonable efforts to obtain, as soon as reasonably practicable, all Necessary Consents, including from Government Entities and Insurers; provided that Purchaser shall not be required to agree to actions, conditions or restrictions that would materially impair the value to Purchaser of the Business or the Purchased Assets or have a materially adverse effect on the business of Purchaser or its Affiliates. ... For the avoidance of doubt, if and to the extent a rating agency "no-downgrade" letter is expressly required under any Servicing Agreement (if and to the extent required under Order of the Bankruptcy Court) and is not obtained by Closing, such Servicing Agreement and the related Servicing Advance shall not be transferred as part of the Purchased Assets at Closing and Purchaser shall not be required to pay for such assets as part of the Purchase Price.

7

## CONCLUSION

For the reasons stated in this Reply, the RMBS Trustees respectfully request the Court sustain its Pre-Auction Objections and grant such other and further relief as it deems just and proper.

Dated: October 12, 2012
New York, New York

| **MORGAN, LEWIS & BOCKIUS LLP** | **DECHERT LLP** |
|---|---|
| By:/s/ James L. Garrity, Jr. | By: /s/ Glenn E. Siegel |
| James L. Garrity, Jr. | Glenn E. Siegel |
| John C. Goodchild, III (*pro hac vice*) | Craig P. Druehl |
| 101 Park Avenue | 1095 Avenue of the Americas |
| New York, New York 10178-0600 | New York, New York 10036-6797 |
| Telephone: (212) 309-6000 | Telephone: (212) 698-3500 |
| Facsimile: (212) 309-6001 | Facsimile: (212) 698-3599 |
| *Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustees of Certain Mortgage Backed Securities Trusts* | *Counsel to The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage Backed Securities Trusts* |
| **ALSTON & BIRD LLP** | **SEWARD & KISSEL LLP** |
| By: /s/ John C. Weitnauer | By:/s/ Arlene R. Alves |
| John C. Weitnauer (*pro hac vice*) | Ronald L. Cohen |
| Martin G. Bunin | Arlene R. Alves |
| William Hao | One Battery Park Plaza |
| 90 Park Avenue | New York, New York 10004 |
| New York, NY 10016 | Telephone: (212) 574-1200 |
| Telephone: (212) 210-9400 | Facsimile: (212) 480-8421 |
| Facsimile: (212) 210-9444 | |
| *Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts* | *Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage Backed Securities Trusts* |