**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*,

Debtors.

Case No. 12-12020 (MG)

Jointly Administered

---

## MEMORANDUM OPINION AND ORDER DENYING THE MOTIONS OF THE FEDERAL HOUSING FINANCE AGENCY AND UNDERWRITER DEFENDANTS TO COMPEL DOCUMENT DISCOVERY FROM THE DEBTORS

*A P P E A R A N C E S :*

KASOWITZ BENSON TORRES &
FRIEDMAN LLP
*Counsel for the Federal Housing Finance
Agency*
1633 Broadway
New York, New York 10019
By:    Andrew K. Glenn, Esq.
         Matthew B. Stein, Esq.
         Daniel A. Fliman, Esq.

MORRISON & FOERSTER LLP
*Counsel for the Debtors*
1290 Avenue of the Americas
New York, New York 10104
By:    Gary S. Lee, Esq.
         Joel C. Haims, Esq.

CRAVATH, SWAINE & MOORE LLP
*Counsel for Credit Suisse Securities (USA)
LLC*
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
By:    Richard W. Clary, Esq.
         Michael T. Reynolds, Esq.

SULLIVAN & CROMWELL LLP
*Counsel for J.P. Morgan Securities LLC*
125 Broad Street
New York, New York 10004
By:    Penny Shane, Esq.
         Sharon L. Nelles, Esq.
         Jonathan M. Sedlak, Esq.

SKADDEN, ARPS, SLATE MEAGHER &
FLOM LLP
*Counsel for UBS Securities LLC*
Four Times Square
New York, New York 10036
By:    Jay B. Kasner, Esq.
         Scott Musoff, Esq.
         Robert A. Fumerton, Esq.

SULLIVAN & CROMWELL LLP
*Counsel for Goldman, Sachs & Co.*
125 Broad Street
New York, New York 10004
By:    Richard H. Klapper, Esq.
         Theodore Edelman, Esq.
         Michael T. Tomaino, Jr., Esq.

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
*Counsel for Citigroup Global Markets, Inc.*
1285 Avenue of the Americas
New York, New York 10019
By:    Brad S. Karp, Esq.
         Bruce Birenboim, Esq.
         Susanna M. Buergel, Esq.

SIMPSON THACHER & BARTLETT LLP
*Counsel for RBS Securities, Inc.*
425 Lexington Avenue
New York, New York 10017
By:    Thomas C. Rice, Esq.
         David J. Woll, Esq.
         Alan Turner, Esq.

SULLIVAN & CROMWELL LLP
*Counsel for Barclays Capital, Inc.*
125 Broad Street
New York, New York 10004
By:    David H. Braff, Esq.
         Brian T. Frawley, Esq.
         Jeffrey T. Scott, Esq.
         Joshua Fritsch, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

        "For more than three centuries it has now been recognized as a fundamental maxim that
the public . . . has a right to every man's evidence." *Jaffee v. Redmond,* 518 U.S. 1, 9 (1996)
(internal quotation marks and citations omitted).  The two pending motions seeking immediate
discovery from the chapter 11 Debtors in these cases raise the important question whether the
policy reflected in this maxim must give way, at least temporarily, to the demonstrated needs of
these chapter 11 cases.  The Court concludes that section 105 of the Bankruptcy Code permits
the Court to extend the protection of section 362(a) to preclude any discovery from the Debtors
in these cases for a reasonable period of time absent further order of the Court.  Therefore, the
two pending motions are denied.

<h2 style="text-align:center">I.    BACKGROUND</h2>

        The two pending motions are the *Supplement to July 17, 2012 Motion of the Federal
Housing Finance Agency Pursuant to the July 11, 2012 Order of the Honorable Denise L. Cote
Seeking Limited Discovery from the Debtors and, if Necessary to that Purpose, Relief from the*

*Automatic Stay*, filed on July 17, 2012 (the "Supplemental Motion," ECF Doc. # 859); and the

*Motion in Support of Loan File Discovery from the Debtors and, if Necessary to that Purpose,*

*Relief from the Automatic Stay* (the "Underwriters Motion," ECF Doc. # 1293).  Discovery is

sought from the Debtors in connection with a case originally filed in state court and then

removed to the U.S. District Court for the Southern District of New York—*Federal Housing*

*Finance Agency, as Conservator for the Federal Home Loan Mortgage Corporation v. Ally*

*Financial Inc. f/k/a GMAC, LLC et al.,* Case No. 11 Civ. 7010 (Cote, J.) (the "FHFA Case").

     In its amended complaint in the FHFA Case, FHFA, as conservator for the Federal Home

Loan Mortgage Corporation ("Freddie Mac"), asserts seven claims against the Debtors' affiliates

Ally Financial, Inc. ("AFI"), Ally Securities, LLC ("Ally Securities"), and GMAC Mortgage

Group, Inc. ("GMACM," and together with AFI and Ally Securities, the "Non-Debtor

Affiliates"), and seven other underwriters not affiliated with the Debtors (the "Underwriter

Defendants").  The claims stem from allegedly false and misleading statements and omissions

made in registration statements, prospectuses and other offering materials relating to $6 billion of

residential mortgage-backed securities ("Certificates") purchased by Freddie Mac from twenty-

one securitization trusts (the "Securitizations") between September 23, 2005 and May 30, 2007.

The amended complaint alleges, *inter alia*, that the Certificates' offering documents

misrepresented that the underlying mortgage loans complied with underwriting standards and

presented a false picture of the characteristics and riskiness of those loans.

     FHFA's Supplemental Motion, as further modified during a hearing on September 11,

2012 (the "September 11 Hearing") in this Court, seeks to require the Debtors to produce 2,500

loan files ("Loan Files");[1] the Underwriters Motion filed by the Underwriter Defendants seeks to

---

[1]    FHFA originally requested production of an unspecified number of Loan Files.  *See* FHFA Reply to
Debtors' Objection, dated August 10, 2012 (ECF Doc. # 1086).  At a hearing in this Court on August 14, 2012 (the

require the Debtors to produce 43,000 Loan Files.  All of the Loan Files relate to the mortgage

loans in the securitization trusts at issue in the FHFA Case.  The Debtors oppose both motions.[2]

On May 15, 2012, the district court entered a scheduling order requiring that document

discovery be completed by September 30, 2012, with depositions beginning in January 2013.

The order also set a deadline of May 17, 2013 for briefing on summary judgment motions and a

tentative trial period to begin in the fall of 2013.  *See* Order dated May 15, 2012 (Case No. 11

Civ. 7010) (Dkt. # 99).

Concurrent with this discovery dispute, the Debtors commenced an adversary proceeding

in this Court—*Residential Capital LLC et al. v. Allstate Ins. Co. et al*, Adv. Proc. No. 12-01671

(the "Residential Capital Adversary Proceeding").  FHFA was one of twenty-seven defendants in

the adversary proceeding.  On May 25, 2012, Debtors filed a *Motion to Extend Automatic Stay*

*or, in the Alternative, for Injunctive Relief Enjoining Prosecution of Certain Pending Litigation*

---

"August 14 Hearing"), FHFA limited its request to 5,000 loan files; it memorialized its revised request in the *Supplemental Memorandum of Law of the Federal Housing Finance Agency in Further Support of Request for Limited Discovery from the Debtors and, if Necessary to that Purpose, Relief from the Automatic Stay*, filed on August 28, 2012.  (ECF Doc. # 1297.)  At the September 11 Hearing, FHFA further reduced its request to 2,500 loan files.  Counsel for the Underwriter Defendants argued at the September 11 Hearing that all 43,000 loan files, and not a subset of either 2,500 or 5,000, must be produced.

[2]    FHFA initially filed a *Motion Pursuant to the July 11, 2012 Order of the Honorable Denise L. Cote Seeking Limited Discovery from the Debtors and, if Necessary to that Purpose, Relief from the Automatic Stay* (the "Initial Motion," ECF Doc. # 810).  In its Initial Motion, FHFA sought discovery of loan tapes ("Loan Tapes") and loan originator information ("Originator Information") containing data regarding the mortgage loans in the securitization trusts at issue in the FHFA Case.  In May 2012, Judge Cote ordered all defendants in the FHFA Case to produce the Loan Tapes to FHFA by June 8, 2012.  Over the next month, several defendants produced some of the tapes, covering sixteen out of the twenty-one Securitizations.  However, the majority of the produced Loan Tapes allegedly contained data deficiencies that made them insufficient for FHFA's sampling expert to develop a reliable sampling protocol.  The Non-Debtor Affiliates did not comply with the order, arguing that they did not have custody or control over the documents, as the documents were the property of the Debtors' estates and the automatic stay precluded them from obtaining the documents from the Debtors.  Before the August 14 Hearing, the Debtors and FHFA agreed that the Debtors would produce the Loan Tapes and Originator Information as requested in the Initial Motion.  The parties later submitted a stipulation to that effect.  (ECF Doc. # 1444.)

*Against Debtors' Directors and Officers and Non-Debtor Corporate Affiliates* (the "Injunction

Motion").[3]  (Adv. Proc. No. 12-01671, ECF Doc. # 4.)

On June 28, 2012, FHFA filed its *Motion to Withdraw the Reference of the Above-

Captioned Adversary Proceeding to the Bankruptcy Court* (Adv. Proc. No. 12-01671, ECF Doc.

# 44).  On July 9, 2012, the district court entered an order granting FHFA's motion, withdrawing

the reference solely as to FHFA.  Shortly thereafter, by an order dated July 11, 2012, the district

court directed FHFA to seek permission from this Court to obtain the documents it requested

from the Non-Debtor Affiliates because the documents were in the possession of the Debtors.

About one week later, at a case conference held on July 17, 2012 (the "July 17 Case

Conference"), the district court denied the Debtors' Injunction Motion, finding that the anti-

injunction provision of the Housing and Economic Recovery Act ("HERA"), 12 U.S.C. §

4617(f), which governed actions brought by FHFA, prevented the district court from enjoining

FHFA from proceeding with its action against the Non-Debtor Affiliates.  *See* July 17 Case

Conference Tr. 6:13-15 (ECF Doc. # 859, Ex. A).  The district court also found that it did not

have the authority to extend the automatic stay under section 105 of the Bankruptcy Code and

directed FHFA to seek relief with respect to discovery from this Court.  *See id.* at 23:11-17 ("I

don't need to reach [the issue of whether Bankruptcy Code section 105 allows the court to extend

the stay] because I wouldn't have jurisdiction to extend the stay, but I don't find that ResCap has

made a strong enough showing even if it were within my jurisdiction to consider the Section 105

---

[3]    The Injunction Motion sought an order staying lawsuits (including all discovery) against the Non-Debtor
Affiliates.  Before the Court heard the Injunction Motion, the Debtors entered into stipulations with most of the
defendants in the case partially staying the pending actions against the Non-Debtor Affiliates until October 31, 2012,
without prejudice to applications to extend the stay beyond that date.  Motions addressed to the pleadings were
permitted to be litigated, and discovery directed to the Non-Debtor Affiliates was also permitted, but any discovery
from the Debtors was stayed.  *See Stipulation and Order with Respect to Debtors' Motion to Extend the Automatic
Stay or, in the Alternative, for Injunctive Relief* (Adv. Proc. No. 12-01671, ECF Doc. # 84).  The preliminary
injunction hearing went forward on July 10, 2012 against Western & Southern Life Insurance Company. At the
conclusion of the hearing, the Court granted the motion for a preliminary injunction on terms substantially similar to
the terms in the stipulations.  July 10, 2012 Hearing Tr. 123:6-139:18 (ECF Doc. # 750).

argument."). The district court observed that "[t]here is no dispute that the stay that ResCap

seeks cannot be obtained through mere application of the statutory automatic stay provided in

Section 362 . . . . *Such an extension may only be obtained through a court's exercise of its

equitable powers through Section 105 of the Bankruptcy Code*." *Id*. at 9:22-24, 10:3-5 (emphasis

added).

## II.    DISCUSSION

FHFA filed its Initial and Supplemental Motions in this Court requesting that the Debtors

be required to produce Loan Tapes, Originator Information and Loan Files. FHFA asserted that

section 362(a) of the Bankruptcy Code does not apply to its discovery requests to the Debtors,

and even if it did, under the twelve-factor test enumerated in *Sonnax Indus., Inc. v. Tri

Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1285-87 (2d Cir. 1990),

cause exists to lift the stay.[4] FHFA also argued that "[c]ourts have consistently held that the

automatic stay does not preclude a party from seeking third-party discovery against a debtor,"

citing the Ninth Circuit Bankruptcy Appellate Panel's decision in *Groner v. Miller (In re Miller)*,

262 B.R. 499 (9th Cir. B.A.P. 2001), holding that section 362(a) of the Bankruptcy Code does

not protect an individual debtor from having her deposition taken as a third-party witness in a

case in which both she and her husband were defendants. *Id.* at 503-05.

---

[4]        Bankruptcy Code section 362(d)(1) states that "the court shall grant relief from the stay provided under
subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause,
including the lack of adequate protection of an interest in property of such party in interest[.]" The *Sonnax* factors
apply when a court is faced with the decision whether to grant relief from the stay "for cause" under section
362(d)(1). *See Sonnax*, 907 F.2d at 1285-86 (in analyzing section 362(d)(1), noting that "[n]either the statute nor the
legislative history defines the term 'for cause'" and adopting the twelve factors outlined in *In re Curtis*, 40 B.R. 795
(Bankr. D.Utah 1984)). An in-depth analysis of the *Sonnax* factors is unnecessary here because the issue in this case
is not whether the stay applies to FHFA's request under Bankruptcy Code section 362(a) alone, and therefore should
be lifted "for cause" under section 362(d)(1), but rather, whether the Court can use its section 105(a) authority to
regulate third-party discovery requested from the Debtors. Nonetheless, even if the Court were to consider whether
to grant relief under section 362(a) and (d) "for cause," the *Sonnax* factors weigh heavily against lifting the stay.
Specifically, factors two ("lack of any connection with or interference with the bankruptcy case"), six ("whether the
action primarily involves third parties"), and twelve ("impact of the stay on the parties and the balance of harms")
weigh heavily in favor of denying FHFA's request to lift the stay "for cause." *See* section II.E *infra*.

In their objection to FHFA's motions, Debtors argued that the automatic stay applies to the discovery sought by FHFA. The Debtors rely, among other cases, on *Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville)*, 40 B.R. 219 (S.D.N.Y. Jan. 9, 1984). In *Manville*, a co-defendant of the debtor in a separate litigation sought document production and depositions from officers, directors, and employees of the debtor (but not from the debtor). The district court affirmed the bankruptcy court's decision denying a motion to lift the stay to allow the discovery to proceed. *Id*. at 231.

The Debtors also rely on a statement by this Court during the July 10, 2012 evidentiary hearing on the Debtors' *Motion for Preliminary Injunction Notice of Motion and Debtors Motion to Extend Automatic Stay or, in the Alternative, for Injunctive Relief Enjoining Prosecution of Certain Pending Litigation Against Debtors Directors and Officers and Non-Debtor Corporate Affiliates* (transcript at ECF Doc. # 750), that "[t]here is an automatic stay in place with respect to discovery from the debtors . . . if you make the motion to vacate the stay, you're going to carry the burden  . . . you or anyone else who is seeking to lift the stay to launch discovery against the debtors is going to carry a very heavy burden." July 10, 2012 Hearing Tr. 99:8–100:2.

The Debtors argue that the discovery sought by the FHFA and the Underwriter Defendants would be extremely costly and burdensome to the Debtors. According to the Debtors, the collection and production of the documents sought by FHFA would distract the Debtors' employees from key tasks related to the restructuring and preservation of their business, and the costs associated with producing these files would adversely affect the value of the Debtors' estate and prejudice their creditors.

At the August 14 Hearing, the Court determined that the Supplemental Motion and the Underwriters Motion raise a contested matter under FED. R. BANKR. P. 9014. Therefore, the

Court scheduled an evidentiary hearing for September 11, 2012.  The Court directed the parties

to submit additional briefs before the September 11 Hearing on the following issues: (1) whether

the use of the word "process" in section 362(a) applies to third-party subpoenas or requests for

discovery; (2) whether, and to what extent, producing the Loan Files would be burdensome and

costly to the Debtors; and (3) whether the Shared Services Agreement[5] between the Debtors and

AFI requires the Debtors to provide the Loan Files to AFI, and if so, who would have to pay for

such a request. *See* August 14 Hearing Tr. (ECF Doc. # 1215).  Each of these issues is discussed

below.

At the September 11 Hearing (transcript at ECF Doc. # 1428), FHFA introduced into

evidence two declarations by Kanchana Wangkeo Leung, Esq. (one of FHFA's outside counsel)

(ECF Doc. ## 808, 1296).  FHFA's counsel did not call or cross-exam any witnesses during the

hearing.  The Debtors introduced into evidence the declarations of Jeffrey A. Lipps (ECF Doc. #

1023-1), Mary Fahy Woehr (ECF Doc. # 1295-1), and Philip M. Scheipe (filed as an exhibit to

AFI's statement on the Shared Services Agreement at ECF Doc. # 1299), as well as two

declarations of John G. Mongelluzzo (ECF Doc. ## 1023-2, 1295-1).[6]  The Debtors also

introduced into evidence eight exhibits.  Debtors' counsel did not call or cross-exam any

witnesses during the hearing.

---

[5]    The Shared Services Agreement is an Exhibit to the Court's *Final Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Residential Capital, LLC to Enter into a Shared Services Agreement with Ally Financial Inc. Nunc Pro Tunc to the Petition Date for the Continued Receipt and Provision of Shared Services Necessary for the Operation of the Debtors' Businesses* (ECF Doc. # 387).  The Shared Services Agreement is an agreement entered into between Residential Capital LLC and AFI to allow for the continued sharing of services post-bankruptcy that they had shared pre-bankruptcy.

[6]    FHFA's counsel made a general objection to the paragraphs in the Mongelluzzo, Woehr and Scheipe declarations "that purport to speak as to the intent of the parties when they negotiated and entered into the Shared Services Agreement.  There has been no argument by any party that the agreement is ambiguous and that there is a need for any parol evidence as to intent."  September 11 Hearing Tr. 89:6-15.  The Court admitted all declarations into evidence and reserved decision on FHFA's objection.  In light of the Court's disposition of the pending motions it is unnecessary to rule on FHFA's objections.

### A. The Meaning of "Process" in Section 362(a) of the Bankruptcy Code

FHFA argues that the plain language of the Bankruptcy Code and its legislative history

demonstrate that the word "process" in section 362(a) was not meant to protect debtors from

discovery in a third-party action.  The Court asked the parties to address the issue in

supplemental briefs.  FHFA did so, but the Debtors disingenuously argued that, based on the

Court's statements during the August 14 Hearing, the Court already decided that the automatic

stay under section 362(a) applies in this case because the word "process" includes any process

seeking to compel discovery even in actions in which the Debtors are not parties.  But the Court

asked the *question* whether section 362(a)(1) applies to the use of judicial process to obtain

discovery from a debtor; the Court did not decide the issue.  *See* August 14 Hearing Tr. 70:8-9;

*see also* September 11 Hearing Tr. 86:18-87:5 ("I asked a question whether the use of the term

'process' in 362(a) applied to subpoenas – third-party subpoenas . . . .  Kasowitz addressed it and

your brief just simply recites the Court has already determined that 362(a) applies.  I did no such

thing.").

Section 362(a) of the Bankruptcy Code provides an automatic stay against the following:

> (1) *the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [or] . . . .
>
> (2) . . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a) (emphasis added).

The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (citations omitted). But by its terms, section 362(a) does not protect debtors in all circumstances. FHFA argues that the words "including the issuance or employment of process" do not cover third-party subpoenas, because the phrase modifies the operative phrase "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding *against the debtor*" (emphasis added). Thus, the argument goes, section 362(a) does not apply to this case because the discovery is not being requested in a proceeding against the Debtors.

There is surprisingly little authority whether the automatic stay applies to discovery from a debtor in a third-party action in which the debtor is not a party. FHFA's argument is supported by the holding in *Miller*, 262 B.R. 499, where the Ninth Circuit Bankruptcy Appellate Panel concluded that the automatic stay does not apply to discovery from a debtor in a third-party action:

> In this case, Groner issued the subpoenas to Debtor in an effort to continue her prosecution of her claims against Henry, a non-debtor. Section 362(a) prohibits the commencement or continuation of an action against the debtor; to the extent that Groner was eliciting Debtor's testimony for purposes other than to continue the prosecution of her claims against Debtor, the proposed discovery did not violate the automatic stay, unless the issuance of subpoenas itself constitutes "issuance or employment of process" against Debtor or a "judicial proceeding" against Debtor. If this were true, a debtor could never be called as a witness (even in actions where the debtor is not a party) without relief from the stay. Such an interpretation of section 362(a) defies common sense and the spirit of the Code. Information is information, and we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, even if that information could later be used against the party protected by the automatic stay.

*Id.* at 505.

The Debtors offered no support for their position that section 362(a) precludes discovery, erroneously relying on statements by this Court in granting a preliminary injunction staying litigation against the Non-Debtor Affiliates.  The Court accepts FHFA's argument that section 362(a) does not, standing alone, protect the Debtors from discovery in third-party actions.  But the Court concludes that section 105 provides the Court with the necessary authority to extend the protection of the automatic stay to discovery from the Debtors.  On the evidentiary record here, the Court concludes that the Debtors have established that section 105 should be applied to *limit* or *restrict* third-party discovery from the Debtors absent further order of the Court.[7]  To be clear, this Court is *not* issuing an injunction against FHFA; rather, the Court is extending the protection of the stay pursuant to section 105(a) to *anyone* seeking discovery from the Debtors absent further order of the Court.

The provisions of the Bankruptcy Code are intended to marshal and protect the assets and the property of the estate throughout the administration of the case.  *See* 11 U.S.C. § 541.  *See also* 5 COLLIER ON BANKRUPTCY ¶ 541.01 (Alan N. Resnick & Henry J. Sommer, eds. 16th rev. ed. 2012) ("Property belonging to the estate is protected from piecemeal dismantling by creditors by the automatic stay of section 362.  It is this central aggregation of property that promotes the fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors, according to the priorities set forth within the Code.  It is from this central core of estate property that the debtor's creditors will be paid.")  Requiring the Debtors to provide discovery in a manner that threatens the Debtors' ability to reorganize cannot be sanctioned under the Bankruptcy Code.

---

[7]    The standards applicable to discovery from the Debtors is discussed in section II.E below.

### B.  Section 105 of the Bankruptcy Code

Section 105(a) of the Bankruptcy Code provides:

> The court *may issue any order, process, or judgment* that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, *sua
> sponte*, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added).

The cases the parties have cited have largely concerned the application of section 105 to

litigation or discovery requests made upon *non-debtors* (for example, employees of the debtor,

officers or directors of the debtor, or non-debtor affiliates).  *See, e.g., Manville,* 40 B.R. 219 (co-

defendant in other litigation sought document production and depositions from officers,

directors, and employees of the debtor); *Lane v. Philadelphia Newspapers, LLC (In re

Philadelphia Newspapers, LLC)*, 423 B.R. 98, 100 (E.D. Pa. 2010) (third party sought discovery

against non-debtor co-defendants of the debtor); *In re Richard B. Vance & Co.*, 289 B.R. 692,

697 (Bankr. C.D. Ill. 2003) (third party issued subpoenas to the debtor's non-debtor parent

company and its bank); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.,* 140

B.R. 969, 977 (N.D. Ill. 1992) (third party sought depositions of debtor's employee); *In re

Hillsborough Holdings Corp.,* 130 B.R. 603, 605 (Bankr. M.D. Fl. 1991) (third party sought

depositions of present or former employees of the debtor).[8]

---

[8]     In one case cited by the Debtors, the discovery being sought (customer lists and other document
production) was directed against the debtor itself—however, unlike this case, the debtor had been named as a party
in the pending litigation.  *Named Plaintiffs and the Certified Classes they Represent in the Cement Antitrust Litig. v.
Penn-Dixie Indus., Inc. (In re Penn-Dixie Indus., Inc.),* 6 B.R. 832, 833-34 (Bankr. S.D.N.Y. 1980).  Judge Liflind
did not lift the stay to allow discovery to go forward.  *Id.* at 837.  Debtors also cite to *Teledyne Indus., Inc. v. Eon
Corp*., 373 F. Supp. 191 (S.D.N.Y. 1974).  In *Teledyne,* the following documents were sought by a third party from
the debtor: "Eon's Certificate of Incorporation; (2) Eon's By-Laws; (5) Minutes of Eon board meetings; (6) minutes
of Eon executive committee meetings; (33) documents, including bank accounts, showing disbursements of funds
received under the generator set contract; and (39) liquidation payments for deliveries made under the contract."  *Id*.

Where an injunction is sought by a debtor under section 105 to stay actions against non-debtors, the relief must be sought through an adversary proceeding under FED. R. BANKR. P. 7001.  *See, e.g., Signature Bank v. Ahava Food Corp.*, No. Civ. 3893, 2008 WL 4126248, at *1 (S.D.N.Y. Aug. 19, 2008) (stating that "to seek [injunctive relief under 105(a)] the debtor must file an adversary proceeding in the Bankruptcy Court"); *Hillsborough*, 130 B.R. at 606 ("On the other hand, if the debtor seeks protection under section 105 of the Code, the debtor must commence an adversary proceeding").  The reason an adversary proceeding is required to obtain an injunction against a third-party is clear: "While § 105(a) of the Bankruptcy Code allows a bankruptcy court to issue any order necessary to carry out the provisions of the Code, it 'does not provide an independent source of federal subject matter jurisdiction.'"  *Philadelphia Newspapers*, 423 B.R. at 103.  Jurisdiction over third parties may be properly exercised under "related to" jurisdiction provided by 28 U.S.C. § 1334(b) due to the impact of the litigation on the Debtors' reorganization efforts.  *Id.*

Here, the Debtors followed that procedure by filing an adversary proceeding against the plaintiffs (including FHFA) in actions naming the Debtors' Non-Debtor Affiliates as defendants, seeking an injunction staying litigation (and not just discovery) against the Non-Debtor Affiliates.  The district court withdrew the reference of the adversary proceeding with respect to FHFA and denied injunctive relief.  But that result does not mean that FHFA or any other party

---

at 202-03.  The court declined to extend the stay, and stated that "11 U.S.C. § 714, it is true, enables the bankruptcy court to stay all actions against the debtor pending a final decree in the arrangement proceeding . . . .  The purpose of the stay is to prevent interference with, or diminution of, the debtor's property during the pendency of the Chapter XI proceeding . . . .  It is intended to prevent a creditor from defeating the jurisdiction of the bankruptcy court over the debtor's property by instituting another action in a different forum . . . .  It is obvious, I submit, that none of these purposes would be defeated by requiring Eon to submit copies of the documents requested by plaintiff."  *Id.* at 203.  *Teledyne* was notably distinguished in *Manville*, in which Judge Brieant held that "*Teledyne* should not be read as indicating that discovery requests against the bankrupt will invariably be granted.  In fact, *Teledyne* suggests that such requests should be upheld only when such discovery will not interfere significantly with the Debtor's reorganization efforts."  *Manville*, 40 B.R. at 223.

can compel discovery by the Debtors during the pendency of the bankruptcy case if such

discovery would substantially interfere with the Debtors' efforts to reorganize.

FHFA acknowledged during the September 11 Hearing that no case has apparently

addressed the question whether section 105 allows a bankruptcy court to extend the stay to

protect the *debtor itself*, and not just a non-debtor party, from third-party discovery, and whether

an adversary proceeding is required to grant such relief. *See* September 11 Hearing Tr. 115:12-

15. This appears to be an issue of first impression. The Court concludes that the power to stay

discovery against the debtor is an essential attribute of the Court's power to administer a

bankruptcy proceeding and carry out other enumerated powers under the Bankruptcy Code for

the benefit of all parties in interest.

The order extending the stay to discovery from the Debtors absent further court order is

one that relates to the administration of the bankruptcy case itself; like other case administration

orders, it does not require filing an adversary proceeding.[9] An adversary proceeding is not

required to obtain jurisdiction; the bankruptcy court has jurisdiction over the main case under 28

U.S.C. §§ 1334(a) and the referral from the district court under 28 U.S.C. § 157(a). The power

to stay discovery against a debtor must be exercised cautiously, particularly where a stay of

discovery may interfere with the prosecution or defense of third-party litigation pending in other

courts. The uncontrolled burden and expense of discovery in third-party actions has the potential

to destroy a debtor's ability to reorganize, to the substantial detriment of all creditors and other

---

[9]     In most cases, the issue of third-party discovery is likely to arise infrequently so that it is unnecessary or
inappropriate to include a stay of discovery in case management or administration orders. In the absence of such a
provision in an order, the debtor may move to obtain such relief when the issue arises. Here, on the other hand, in
light of the large number of lawsuits involving the Debtors and the Non-Debtor Affiliates, it is appropriate to include
a blanket prohibition of third-party discovery absent further order of the Court.

parties in interest in a bankruptcy case.[10]  In a case like this, where the Debtors are faced with

tens or hundreds or even thousands of lawsuits in which discovery from the Debtors may be

relevant to the issues in the pending suits, the issue is not whether to stay discovery, but what

factors the Court should consider in determining the conditions or limitations to place on

discovery.  In the absence of controlling provisions in the Bankruptcy Code or the Federal Rules

of Bankruptcy Procedure, the Court looks for guidance to cases dealing with analogous issues.

As the discussion below suggests, the Court concludes that the following six factors

should be considered by bankruptcy courts in deciding whether to limit or permit discovery, and

on what conditions to do so: (1) the scope of requested discovery; (2) the context in which the

request arises; (3) the need for the discovery; (4) the timing of the discovery; (5) the burden on

the debtors from the requested discovery; and (6) the expense of discovery and who should bear

the cost.  No one factor is determinative, the six factors are interrelated, and they may overlap.

With respect to the FHFA Motion, the Court will discuss each factor in turn.  Before discussing

these specific factors, the Court will first address other contexts in which discovery has been

restricted.

### C.  Case Law on Extending the Automatic Stay to Non-Debtor Parties is Instructive

The case law extending the stay to litigation against non-debtor parties is instructive.  The

Second Circuit recently reaffirmed the power of the bankruptcy court to stay litigation against

third-parties: "[T]he stay of litigation during the pendency of . . . bankruptcy . . . has historically

---

[10]        FHFA's counsel argued at the September 11 Hearing that the Court has no power to restrict or limit
FHFA's discovery from the Debtors no matter what the consequences.  *See* September 11 Hearing Tr. at 95:8–
115:13.  FHFA's counsel took the position that even if requiring the debtor to produce documents would cost $10
million and would guarantee that "this case is derailed and converts to a Chapter 7 liquidation," the bankruptcy court
has no power to do anything to limit discovery because of HERA.  *Id.* at 107:5–108:14.

been the province of the bankruptcy courts." *Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.)*, 676 F.3d 45, 52 (2d Cir. 2012).  In this district, bankruptcy courts have extended the stay to non-debtor parties if the claims in question "threaten to thwart or frustrate the debtor's reorganization efforts . . . and that the injunction is important for effective reorganization." *McHale v. Alvarez (In re The 1031 Tax Grp., LLC)*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008) (citations and quotations omitted); *Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp.*, No. 06 Civ. 5358, 2006 WL 3755175, at *4 (S.D.N.Y. Dec. 20, 2006) (stating that section 105 can be used to extend the automatic stay to non-debtors "where the action to be enjoined is one that threatens the reorganization process").  In *Manville*, Judge Brieant noted that "the extensive contemplated pre-trial discovery and trial testimony in this case would certainly have a serious adverse impact upon Manville's reorganization proceedings," specifically because "Manville would have to divert personnel from its [various departments]" even though it "faces more pressing obligations in the bankruptcy proceedings which have commanded and will continue to command the attention of its officers, directors, counsel, financial analysts and administrative personnel." *Manville*, 40 B.R. at 224.  The court also observed that "to permit discovery to proceed in this instance would open the door to additional requests of this nature from similarly situated defendants in literally thousands of other pending asbestos-related cases and cases yet unfiled.  The cumulative effect of this on the reorganization can well be understood." *Id.*

Courts outside of this district have also considered the extent to which the proposed discovery would interfere with reorganization efforts. *See Philadelphia Newspapers*, 423 B.R. at 103-05; *In re Dakotas' Farm Mfg. Co.,* 31 B.R. 92, 94-95 (Bankr. S.D.S.D. 1983). *Philadelphia*

*Newspapers* is particularly instructive because the court considered and rejected the application

of the Ninth Circuit Bankruptcy Appellate Panel's decision in *Miller*:

> The Court need not decide whether *Miller* states the applicable principle, a matter that is far from certain, since, in any event, *Miller* is distinguishable.  In *Miller,* the discovery requests involved "information" to be used in a lawsuit the outcome of which would not affect the debtor or property of the debtor.  Here, as stated above, the "information" sought is to be used in the prosecution of an action in which the employee of the Debtors is a defendant, which if found liable, the Debtors could have an obligation to indemnify.  This obligation to indemnify, if triggered, would affect the property of the Debtors' estates.  Thus, while in *Miller* the discovery requests would under no circumstances affect the property of the debtor, so much cannot be said here.

423 B.R. at 105.  The court in *Dakotas' Farm* explained that discovery would be permitted if it

did not interfere with the pending bankruptcy, but the party seeking the discovery had to bear all

of the costs:

> While this Court has no jurisdiction over [the non-debtor party], it certainly has jurisdiction over the property of the debtor corporation.  The Court may modify the automatic stay for cause where there is a lack of interference with the pending bankruptcy case.  The Court will modify the stay provided there is no interference with the debtor's Chapter 11 proceeding resulting from the plaintiff's request for production of documents.  Balancing the plaintiff's request and failure to pursue that request at the meeting of creditors against the cost to the debtor dictates that the plaintiff bear all copying expense and the salary of any clerical assistance employed on behalf of the debtor in providing the copies.  This Court can see no basis for the debtor bearing such expense when the unsecured creditors in the Chapter 11 proceeding ultimately pay these costs.  This cannot be justified in a state court action to which the debtor is not a party.  The automatic stay will be modified to allow the plaintiff to acquire copies of the documents required as conditioned herein.

31 B.R. at 94-95 (citations omitted).  Collier also notes that, "[a]lthough an action against third

parties such as guarantors or codefendants is not stayed under Section 362(a), the court retains

the power to enjoin the action if continuation of the action would interfere substantially with the debtor's reorganization." 3 COLLIER ON BANKRUPTCY ¶ 362.03[3][d].[11]

In the Residential Capital Adversary Proceeding, this Court has already stayed discovery against the Debtors. Because of the withdrawal of the reference, the stay does not apply to the FHFA. By its terms, the stay is effective only until October 31, 2012, but the Court expressly left open the possibility of extending the stay beyond that date.[12] The Court specifically permitted motion practice and discovery against the Non-Debtor Affiliates to continue, but ordered that discovery against the Debtors remained stayed. During the July 10, 2012 evidentiary hearing on the motion, the Court noted the well-documented burden and expense of discovery, particularly at this stage of the bankruptcy cases. July 10 Hearing Tr. 125:12-22 ("[T]he debtors will face very substantial and burdensome discovery if the action continues"), 136:24–137:3 ("We discussed the discovery burdens. The most significant factor favoring extending the stay in this case is the substantial discovery burden and expense the debtors would face if the Western & Southern action goes forward against Ally Securities.").

The touchstone for granting injunctive relief against third-party actions is whether the third-party action will "threaten to thwart or frustrate the debtor's reorganization efforts." *1031 Tax Grp.*, 397 B.R. at 684. This principle should be equally applicable to the issues raised by discovery from a debtor in third-party actions. The scope, timing, burden and expense of the

---

[11]    *See also* 3 COLLIER ON BANKRUPTCY ¶ 362.03[3] ("Litigation in which the debtor is not a party *and that only collaterally affects the debtor* is not stayed." (emphasis added)).

[12]    The Debtors have now moved to extend the stay for a longer time period; that motion has not yet been heard by the Court.

proposed discovery are all factors in determining whether proposed discovery will thwart or frustrate the debtor's reorganization.[13]

### D.  The Federal Rules Governing Discovery and Subpoenas Provide Useful Guidance

The Court also turns to Rules 26 and 45 of the Federal Rules of Civil Procedure for guiding principles.  These rules, by their terms, *do not* supply this Court with the power to limit or restrict discovery from a debtor, at least in a case where the district court sits in the same district as the bankruptcy court and any subpoena issued by the district court would be effective to compel discovery.  Rule 26 provides that "the court where the action is pending" or "the court for the district where the deposition will be taken" may issue protective orders based, among other things, on "undue burden or expense . . . ."  FED. R. CIV. P. 26(c)(1).

Rule 26(b)(2)(C)(iii) provides, in relevant part:

> (b)(2)(C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . .
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

FED. R. CIV. P. 26(b)(2)(C)(iii).

In other words, Rule 26 requires the court to perform a balancing test when considering whether a discovery request is particularly burdensome.  Considerations include whether the

---

[13]    This case is unusual in that FHFA argues and the district court decided that HERA prevents the court from staying the FHFA Case against the Non-Debtor Affiliates.  The same argument has been raised by the FDIC in another case naming the Non-Debtor Affiliates as defendants.  *See Federal Deposit Insurance Corporation as Receivers for Citizens National Bank and Strategic Capital Bank v. Bear Stearns Asset Backed Securities I LLC, et al.,* No. 1:12-cv-04000-LTS.  The district court has withdrawn the reference in the Residential Capital Adversary Proceeding as to the FDIC, but the FDIC stipulated to a stay until October 31, 2012.  Even if the FHFA Case was stayed against the Non-Debtor Affiliates, the issues about regulating discovery from the Debtors would likely arise in any event if the FHFA Case proceeded against the Underwriter Defendants.

burden of the discovery "outweighs its likely benefit," "the parties' resources," and "the

importance of the discovery in resolving the issues." *Id.*

"Rule 26(b)(2) directs the court to limit or forbid unduly burdensome discovery." 6 FED.

PRAC. & PROC. § 2038 (Wright & Miller, eds., 2012). When this rule was amended in 1983, the

Reporter for the Advisory Committee observed:

> Until last August, the last sentence in rule 26(a) said: "Unless the
> court says otherwise, go ye forth and discover." That had been the
> message of the last sentence of rule 26(a). In 1983, we decided it
> was a lousy message. That sentence has been stricken and
> replaced, quite literally, by the reverse message, which you now
> find in rule 26(b). Rule 26(b) now says that the frequency and
> extent of use of discovery shall be limited by the court if certain
> conditions become manifest. Just realize the 180–degree shift
> between the last sentence of the old rule 26(a) and the new
> sentence. Judges now have the obligation to limit discovery if
> certain things become manifest.

*See* 6 FED. PRAC. & PROC. § 2008.1 (*quoting* A. Miller, *The August 1983 Amendments to the

Federal Rules of Civil Procedure: Promoting Effective Case Management and Lawyer

Responsibility,* 1984, at 32–33).

The Supreme Court has observed that "Rule 26 vests the trial judge with broad discretion

to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*,

523 U.S. 574, 598 (1998). And, as noted by Wright and Miller, "[j]udges relatively frequently

limit or forbid discovery when the cost and burden seem to outweigh the likely benefit in

producing evidence, as demonstrated by the plentitude of cases summarized in the margin." 6

FED. PRAC. & PROC. § 2008.1. Moreover, "another method for regulating discovery requests that

infringe on the limitations of Rule 26(b)(2) is to condition orders that such discovery go forward

on the payment by the party seeking discovery of part or all of the resulting expense incurred by

the responding party." *Id.*

20

It would ordinarily be inappropriate for a bankruptcy court to determine the importance of the requested discovery in resolving the issues in the underlying nonbankruptcy action. Issues of scope, context and need for the discovery should ordinarily be the province of the trial court where the underlying action is pending. Timing of the requested discovery is properly a concern of both courts. Burden and expense (and their impact on the bankruptcy case) will especially be of interest to the bankruptcy court; and the bankruptcy court will be in a far better position than the trial court to assess those issues. Both sets of courts should, however, to the fullest extent possible, try to accommodate the needs of the parallel proceedings.[14] Court-to-court communications may be a useful way to accomplish this goal.

Rule 45 likewise provides protection where a subpoena "subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(iv). Rule 45(c)(1) provides that "[a] party must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* at 45(c)(1). Rule 45 also allows the issuing court to specify conditions as an alternative to quashing a subpoena, if the serving party "ensures that the subpoenaed person will be reasonably compensated." *Id.* at 45(c)(3)(C)(ii). The emphasis on protecting non-parties from "burdensome" discovery requests is of particular concern in bankruptcy cases.

Wright and Miller observe that "Rule 45(c)(1) makes explicit the principle of accountability . . . . It requires those issuing or serving a subpoena to take reasonable steps to avoid imposing undue burden or expense on the party subject to the subpoena. In addition, Rule 45(c)(1) places upon the issuing court a correlative duty to enforce those duties and impose appropriate sanctions for the misuse of a subpoena." FED. PRAC. & PROC. § 2463. In addition,

---

[14]    This case is a good example of efforts to accommodate the needs in parallel proceedings. The district court in the FHFA Case directed FHFA to file a motion in the bankruptcy court to obtain discovery from the Debtors. The district court explained the need for FHFA to obtain discovery from the Debtors. With respect to the scope of requested discovery, particularly since FHFA has reduced its request to 2,500 Loan Files while the Underwriter Defendants insist on 43,000 Loan Files, the district court has not yet clearly addressed the appropriate scope.

Rule 45(c)(2)(B)(ii) requires that orders compelling persons who are neither parties nor officers of parties to produce designated materials be protected from "significant expense."  *See* FED. R. CIV. P. 45(c)(2)(B)(ii); *see also* FED. PRAC. & PROC. § 2463.

In the bankruptcy context, when the issue is whether a bankruptcy court should limit or condition discovery from the debtor in a third-party action, the principles derived from Rules 26 and 45 provide useful guidance even though the rules are not specifically applicable.  Rules 26 and 45 require balancing of burdens and benefits.  Usually that balance will solely be in the province of the trial court.  When the overlay of a bankruptcy case is added to the mix, however, both courts must necessarily play a role, hopefully with each court sensitive to the needs of the other court.

### E.  Consideration of Scope, Context, Need, Timing, Burden and Expense

Based on the discussion above, the Court has distilled six factors relevant to a decision whether a bankruptcy court should exercise its discretion to restrict or permit third-party discovery during the pendency of a bankruptcy proceeding.  But the starting point for the analysis should in all cases be the long recognized policy that "the public has the right to every man's evidence."  *Redmond*, 518 U.S. at 9.  *Redmond* goes on to state that "[w]hen we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule."  *Id.* Exemptions from giving evidence generally arise from the assertion and recognition of privilege, derived from statute or common law.  *See Trammel v. U.S.,* 445 U.S. 40, 50-51 (1980) ("Testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence'. . . As such, they must be strictly construed and

accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth'" (quoting *Elkins v. U.S.,* 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting))).

A debtor is not entitled to an *exemption* from discovery in actions against non-debtors. Rather, here, the issue is the limitations and conditions on providing evidence in third-party actions that a bankruptcy judge should impose.  The Court concludes that section 105 is a statutory source of authority for the bankruptcy court in the exercise of discretion to impose limitations and conditions on the duty to provide evidence.  The Court may exercise its discretion to limit or condition discovery from a debtor to protect a debtor from unreasonable burden or expense that threatens administration of a bankruptcy case.  While the Court may include a prohibition on discovery from the debtor in a case management order—as the Court believes is appropriate here—in the event a third party moves to lift the stay to permit discovery against the debtor, the *debtor* must demonstrate why discovery should be limited or conditioned.

As explained below, with respect to the factors of scope, context and need, the burden of coming forward with evidence is on the moving party since the moving party is in the best position to produce evidence.  With respect to burden and expense, the debtor has the burden of coming forward with evidence since the debtor is in the best position to produce evidence.  With respect to timing, both the moving party and the debtor must come forward with evidence.  In light of "the primary assumption that there is a general duty to give what testimony one is capable of giving," *Redmond*, 518 U.S. at 9, the ultimate burden of persuasion rests with the debtor.  Not all factors will be relevant in each case; not all factors need to point in the same direction.  The greater the limitations or conditions the debtor seeks to impose on discovery, and

23

the greater the interference that will result in the nonbankruptcy matter if limitations and conditions are imposed, the stronger the debtor's evidence and argument will need to be.

As explained below, the Court finds and concludes that the Debtors have met their burden to prevent the FHFA and the Underwriter Defendants from obtaining additional discovery of the Loan Files from the Debtors *at this time*.  With respect to the production of Loan Files, the Court concludes that someone other than the Debtors must bear the entire expense of production.  The Court will leave to the district court the issue of who (other than the Debtors) pays.  The Debtors can also produce 2,500 Loan Files sooner than they can produce 43,000 Loan Files. The district court must decide the scope of the production and whether FHFA should get its 2,500 Loan Files substantially sooner than the Underwriter Defendants get their 43,000 Loan Files, if that is what the district court requires.

Assuming that someone other than the Debtors is paying for it, the timing of production is directly tied to the burden of production.  There are simply too many critical matters scheduled in this case that will occur between now and the end of January 2013 to require the Debtors to respond to the document production requests of the FHFA and the Underwriter Defendants.  This is truly a situation where the requested discovery must be stayed to protect a debtor from unreasonable burden that threatens administration of these bankruptcy cases.

The Court will now review each of the six factors in turn.

*1.    Scope*

The FHFA has narrowed the scope of the requested document discovery at least for now, limiting its current request to 2,500 Loan Files.  That may not sound like a lot, but in connection with expedited discovery sought by the Creditors Committee in connection with a contested matter now scheduled for trial beginning on January 14, 2013 (the "RMBS Settlement Hearing"),

24

the Committee sought production of 1,500 Loan Files for use by its experts using a sampling

methodology.  The Court does not question the Debtors' good faith in responding to the request

for production, but as of the September 11 Hearing, it had taken the Debtors nearly a month, if

not more, to produce approximately 1,450 Loan Files.  *See* September 11 Hearing Tr. 34:3-4.[15]

The scope of the requested discovery is something that must be resolved by the district

court.  The answers to the questions on scope will heavily influence this Court's answers with

respect to timing, burden and expense.  Until the issue of scope is clearly resolved, it is more

difficult to determine what, if any, conditions or limitations should be imposed on discovery.

Of course, at the same time that the Loan Files were being produced, substantial

additional electronic and paper discovery has been ongoing, with numerous deadlines missed by

the Debtors in their attempts to comply with the Court-ordered discovery schedule.  This issue

will be discussed further in the discussion of burden.  Discovery problems which, again, the

Court does not attribute to bad faith, has resulted in twice rescheduling the trial—originally

scheduled to begin on November 5, 2012, then rescheduled to begin on November 13, 2012, and

now rescheduled to begin on January 14, 2013.

2. *Context*

FHFA is seeking discovery that it hopes will advance its claims against the Non-Debtor

Affiliates and Underwriter Defendants.  The FHFA Case is only one of many cases that FHFA

has brought against numerous defendants, raising claims similar to the claims raised in this case.

The district court established an expedited schedule applicable to all similar cases with a

discovery cut-off date of September 30, 2012.  The district court has stressed that "without [the

requested materials], it will be very difficult for the litigation to proceed."  *See* July 11, 2012

---

[15]     In the end, the Debtors simply could not locate some of the Loan Files.  The Committee's counsel reported to the Court that the Committee's expert was satisfied the files that were produced were a sufficient sample.

Case Conference Tr. 9:3-10.  While a uniform schedule in all of the similar cases pending before

the district judge may (and probably is) the most efficient manner of dealing with a large docket,

the uniform schedule with very tight time deadlines may simply not be compatible with the

extraordinary demands on the Debtors arising from these chapter 11 cases.  Delay in the chapter

11 cases threatens the ability of these Debtors to reorganize.  This is not, for example, a situation

where prompt discovery is required for a criminal case, police or regulatory action, or other

matter where the public interest requires an immediate trial in the district court.  The Court does

not doubt the importance of the FHFA Case, or of the district court expeditiously dealing with its

docket, but the potential impact on hundreds or thousands of creditors will be severe if the

Debtors' reorganization fails.[16]   On balance, the Court believes that the context supports

maintaining a stay on discovery at the present time.

       *3.  Need*

     The district court has stated that the requested discovery "is the first cut that permits the

parties to evaluate the claims and to organize their other discovery requests and figure out

whether or not third-party discovery needs to take place and who would be involved in that."

July 17 Case Conference Tr. 9:3-10.  It appears that the district court believes that the lack of

production of the Loan Files in this case poses a significant hurdle to the advancement of the

litigation.  Specifically, during the July 17 Case Conference, the district court stated that "Ally

and Res Cap should be producing the final closing loan tapes and the originator information so

that the rest of this litigation  . . . can proceed."  *Id*. at 9:22-10:5.  That issue has at least been

resolved.  The district court also stated that the Loan Files must be produced.  In assessing the six

---

[16]     There is a certain irony here.  AFI, the Debtors' parent company, is 74% owned by the U.S. Treasury because approximately $17 billion of TARP funds were advanced to prevent AFI from failing during the financial crisis.  FHFA, also a U.S. Government agency, as conservator of Freddie Mac, appears to be a creditor of the Debtors.

factors, a bankruptcy court should not question the trial court's conclusion about the need for

specific discovery in the case pending before that court. Therefore, the Court concludes that

need weighs in favor of lifting the stay and ordering the requested discovery.

4. *Timing*

This factor weighs heavily in favor of maintaining the stay to protect Debtors from

FHFA's and the Underwriter Defendants' discovery requests until at least February 2013.

Debtors have a very difficult few months ahead. The Debtors are in the midst of document

review, document production and due diligence on at least three matters. In addition to their

day-to-day responsibilities, Debtors must prepare for the following events:

    i.   Auction of the Debtors' Principal Assets. The Debtors are preparing for an

auction and sale hearing of its principal assets—the Loan Origination and

Servicing Platform and the Legacy Loan Portfolio—which is scheduled to occur

on October 23 and 24, 2012. Assuming the auction is successful, the Debtors'

focus must then be on successfully closing the sale transactions. Substantial due

diligence is underway by numerous qualified bidders, requiring the time and

attention of the Debtors' employees and legal and financial professionals. The

hearing to approve the sales is currently scheduled for November 19, 2012, and it

will take at least several months to close any sale transactions, assuming Court

approval is granted.

   ii.   Hearing on Approval of Proposed $8.7 billion RMBS Settlement Agreement.

The proposed settlement, if approved and if it thereafter becomes effective, would

resolve potential breach of representation and warranty claims asserted by holders

and insurers of residential mortgage-backed securities originated and serviced by

the Debtors.  The expedited trial of this matter—which Debtors have frequently

described as a centerpiece of their efforts to reorganize—is now scheduled to

begin on January 14, 2013.  The trial was originally scheduled to begin on

November 5, 2012, and was then rescheduled to begin on November 13, 2012.

The trial date was changed each time because the Debtors were unable to comply

with the expedited discovery schedule.[17]  Thirty hours of trial time (allocated

between supporters and opponents of the settlement) have been tentatively

scheduled over a four-day period.

iii.    Examiner Investigation into the Propriety of Debtors' Prepetition

Transactions.  On June 20, 2012, the Court granted a motion for the appointment

of an examiner under section 1104(c)(1) of the Bankruptcy Code.  *See*

*Memorandum Opinion and Order Granting Berkshire Hathaway's Motion to*

*Appoint an Examiner* (ECF Doc. # 454).  The U.S. Trustee selected Arthur J.

Gonzalez as the Examiner.  The Examiner has retained and the Court has

approved the retention of legal counsel and a financial adviser for the Examiner.

The agreed scope of the investigation is very broad.  The Examiner's counsel has

requested document production, begun to prepare to interview a large number of

witnesses and is authorized to issue subpoenas and take testimony.  Originally

projected to take six months to complete, the Examiner's counsel advised the

Court on October 10, 2012 that the investigation and report may take more than

six months to complete, largely because of the conflicting demands placed on the

---

[17]    Counsel have advised the Court that there may by testimony by eleven fact witnesses and thirteen expert witnesses.  *Hopefully*, these numbers will be pared down before the trial.  *None* of these fact or expert witnesses have been deposed yet because document production is not yet complete and many expert reports are still being prepared.

Debtors and other parties in interest by the expedited discovery in connection with the upcoming RMBS Settlement Hearing. While the Court has insisted that the case move forward while the Examiner completes the investigation and report, there is little doubt that a reorganization plan cannot be confirmed until the Examiner has completed his work.

iv.     <u>As Part of Their Day-to-Day Business, the Debtors Must Continue to Litigate Foreclosure Cases and Related Litigation Across the Country</u>. Debtors are the fifth largest residential mortgage servicer in the country. The mortgage crisis that has plagued the nation has resulted in numerous foreclosure actions across the country. Many borrowers have asserted affirmative defenses which the Debtors must actively litigate. As loan servicers, the Debtors are required to meet their contractual obligations to mortgage holders for whom they service the loans. These cases continue to place heavy litigation demands on the Debtors.

In light of all of the above, the Debtors simply cannot also undertake the very substantial burden of producing the Loan Files requested by the FHFA and the Underwriter Defendants. The factor of timing clearly and strongly favors continuing a stay on the discovery requested by the FHFA and the Underwriter Defendants at least until February 2013.

5.   *Burden*

The heavy burden that responding to FHFA's and the Underwriter Defendants' document requests would impose at this time also strongly weighs in favor of maintaining the stay. Debtors' professionals and employees are already stretched thin responding to the many demands described above.

In their supplemental briefing and with the evidence introduced during the September 11 Hearing, the Debtors addressed the financial and operational burden and expense if they are required to produce 5,000 Loan Files or 43,000 Loan Files.[18] Debtors initially estimated that production of 43,000 Loan Files would take up to ten months to complete. According to the Debtors, searching the Debtors' databases would take over a week; the Debtors' employees would then spend one to two weeks clearing exceptions and resolving other errors. *See* Mongelluzzo Supp. Decl. ¶¶ 17-18. Searches of electronically stored data would have to be run at night due to their size, and because other searches critical to the Debtors' day-to-day business have to be run during the day. *Id.* Assuming that off-site records storage vendors retrieve files at their contractually-agreed rate of 1,250 boxes a week, it would take approximately thirty weeks for the Debtors' vendors to pull all 43,000 files. *Id.* ¶ 19. While the files were being retrieved, the Debtors' imaging vendors would have to process and image the files, requiring still more time. *Id.* ¶ 11. Debtors estimated the overall expense of producing 43,000 Loan Files to range from $1,075,000 to $1,204,000, in the best-case scenario, and $3,225,000 to $4,300,000, in the worst-case scenario. *Id.* ¶ 22.

During the September 11 Hearing, the Court told Debtors' counsel that the Debtors' time estimate required to produce the requested files was *completely unrealistic*. September 11 Hearing Tr. 127:23-128:2. The Court directed Debtors' counsel to obtain new time and cost estimates assuming that production of the Loan Files would have to be completed within sixty days, a time period that FHFA's counsel acknowledged as reasonable. *Id.* at 132:17-133:1.

In response to the Court's request, on September 21, 2012, the Debtors submitted a letter with a cost estimate from one of its vendors, Iron Mountain, to retrieve 43,000 loan files within

---

[18]     As already noted, during the September 11 Hearing, FHFA reduced its request for production to 2,500 Loan Files, while the Underwriter Defendants insisted that all 43,000 Loan Files should be produced. *See* n.1, *supra*.

sixty or 120 days.  (the "September 21, 2012 Letter," ECF Doc. # 1516.)  Iron Mountain's

proposal includes two options.  In the first option, Iron Mountain estimates it would cost between

$182,680 to $304,800 for a sixty-day retrieval, and $127,158 to $244,278 for a 120-day retrieval,

to pull the Loan Files, ship them to the Debtors' imaging vendor, and then retrieve and reshelf

the Loan Files after imaging.  In the second option, which would cost the Debtors between

$811,200 to $931,680 for a sixty-day retrieval, and $621,158 to $741,278 for a 120-day retrieval,

Iron Mountain additionally assumes responsibility for imaging the Loan Files, although the

Debtors typically do not use Iron Mountain's imaging services.

Debtors point out that these cost estimates *do not* include "any estimate for the time and

expense associated with identifying and locating the relevant loan files, negotiating statements of

work with Iron Mountain and other third party storage and imaging vendors, preparing the loan

files for production . . . and attorney review," or "certain additional imaging costs, such as

adding search capabilities, which would increase the cost of production on a per page basis." *See*

September 21, 2012 Letter at 2.

With respect to the production of 5,000 Loan Files, Debtors estimate that it would take

three days for two of the Debtors' employees to identify the location of the files and two days to

resolve any "exceptions" that turn up in the searches.  Mongelluzzo Supp. Decl. ¶¶ 6-7.  The

Debtors then estimate that it would take approximately five weeks for all 5,000 Loan Files to be

pulled by the vendors.  *Id.* ¶ 9.  In all, Debtors estimate that the production of 5,000 Loan Files

would take between five to seven weeks, and the expense would range from $125,000 to

$140,000 on the low end, and $375,000 to $500,000 on the high end.  *Id.* ¶ 12-14.

The financial burden is separately addressed below and can be eliminated by requiring

parties other than the Debtors to pay all of the costs.  But the bigger problem for the Debtors in

31

producing Loan Files at the present time is the Court-ordered information retrieval and

production requirements dictated by the critical stage of the Debtors' chapter 11 cases and

discussed above. The Court therefore concludes that the factor of burden strongly weighs in

favor of maintaining the stay of discovery.

6. *Expense*

Debtors have provided estimates that the total costs of producing 5,000 Loan Files could

range from $125,000 to $500,000, and the total costs of producing 43,000 Loan Files could range

from $1,075,000 to $4,300,000. Debtors provided a more recent estimate that the costs of

pulling 43,000 Loan Files in sixty days could range from $182,680 to $304,800, notwithstanding

the additional costs that would be incurred for Debtors to locate the files, to have them scanned,

and to have them reviewed and reviewed by counsel and produced. The Debtors should not have

to bear the cost of discovery in third-party actions. This Court will condition discovery from the

Debtors on the payment of all costs of FHFA's and the Underwriter Defendants' discovery on

some party other than the Debtors, though precisely who must pay is an issue appropriately

decided by the district court.[19]

---

[19]    As previously discussed, AFI and the Debtors are parties to a Shared Services Agreement. At the August
14 Hearing, the Court requested supplemental briefing whether the Shared Services Agreement requires the Debtors
to provide AFI with Loan Files it may request, and if it does, who must pay for it. AFI and the Debtors dispute
whether the Shared Services Agreement contemplated production by the Debtors to AFI of the volume of Loan Files
requested by FHFA and the Underwriter Defendants in this matter. The Court finds it unnecessary to resolve the
issue. This Court approved the Debtors entry into the Shared Services Agreement. *See* ECF Doc. # 387. The only
thing this Court decides now is that if the Debtors are required to provide AFI with the Loan Files, because the
district court orders AFI to make the request, the Debtors are *not* the ones who must bear the costs of doing so.
Whether AFI, FHFA, or the Underwriter Defendants should bear or share the costs is for the district court to decide.
There is authority, including an opinion by this Court, that under Rule 34, a party to litigation may be required to
produce documents in the custody or control of another. *See In re Lozano*, 392 B.R. 48 (Bankr. S.D.N.Y. 2007); *see
also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007); *JPMorgan Chase Bank v. Winnick*,
228 F.R.D. 505 (S.D.N.Y. 2005) (" *Winnick I* "); *JPMorgan Chase Bank v. Winnick,* No. 03 Civ. 8535, 2006 WL
278192 (S.D.N.Y. Feb. 6, 2006) ("*Winnick II*").

   7.   *Weighing All Relevant Factors, the Court Concludes the Stay should be Extended*
        *to Protect Debtors from Producing the Loan Files at this Time*

The Court must tread carefully when determining whether to maintain a stay on

discovery in third-party actions.  While the precise question before the Court appears to be a

question of first impression, there are numerous parallels that support empowering a bankruptcy

court to limit or condition third-party discovery directed to debtors.  The Court has endeavored to

identify and apply the factors that seem most relevant to the issues at hand.  Having performed

this analysis, the Court concludes that the factors overwhelmingly support maintaining a stay

against discovery from the Debtors under section 105.  The Debtors are entitled to a respite but

not an exemption from discovery.   The Court recognizes that granting this relief imposes a

burden on the district court in the efficient handling of that court's heavy docket and the orderly

administration of the large group of similar cases pending in that court.  No disrespect to the

district court is intended in granting this relief, but the Court concludes that the evidence in the

record overwhelmingly supports granting this relief.

The Court directs the Debtors, the FHFA and the Underwriter Defendants to meet and

confer on a targeted schedule for production of documents, consistent with the demands of the

chapter 11 cases.  The parties should also endeavor to resolve, if possible, the issues of allocation

of costs.  To the extent appropriate, this Court is prepared to hold joint hearings with the district

court regarding the discovery issues.  Other approaches, such as phased production, may be

possible and could lessen the burden on the Debtors.

## III.    CONCLUSION

For the reasons explained above, the *Supplement to July 17, 2012 Motion of the Federal*

*Housing Finance Agency Pursuant to the July 11, 2012 Order of the Honorable Denise L. Cote*

*Seeking Limited Discovery from the Debtors and, if Necessary to that Purpose, Relief from the*

33

*Automatic Stay*, filed on July 17, 2012 (the "Supplemental Motion," ECF Doc. # 859); and the

*Motion in Support of Loan File Discovery from the Debtors and, if Necessary to that Purpose,*

*Relief from the Automatic Stay* ("Underwriters Motion," ECF Doc. #1293), are both **DENIED.**

**IT IS SO ORDERED.**

Dated:      October 12, 2012
            New York, New York

                                   *Martin Glenn*
                                 MARTIN GLENN
                        United States Bankruptcy Judge