Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

*Counsel for Ally Financial Inc. and Ally Bank*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC., et al. | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF ALLY FINANCIAL INC. SUPPORT
LETTER IN RELATION TO THE DEBTORS' PROPOSED SALE OF ASSETS**

PLEASE TAKE NOTICE that Ally Financial Inc. ("***AFI***") files the letter agreement, dated May 13, 2012, by and between AFI and Nationstar Mortgage LLC ("***Nationstar***") (the "***AFI Support Letter***"), which is listed as Exhibit 1 to the *Amended and Restated Asset Purchase Agreement Between Nationstar Mortgage LLC, Residential Capital, LLC, Residential Funding Company, LLC, GMAC Mortgage, LLC, Executive Trustee Services, LLC, ETS of Washington, Inc., EPRE LLC, and RFC Borrower LLC*, dated as of June 28, 2012 [ECF No. 534] (the "***Asset Purchase Agreement***"), but which was not previously filed with the Court.[1]  AFI wishes to make

---

[1] The AFI Support Letter is also referenced in Exhibit B-1 to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related*

all interested parties, including any qualified bidder on the Debtors' mortgage servicing and origination platform, aware of the terms of the AFI Support Letter. Subject to and without waiving any of AFI's objections and reservation of rights relating to the Asset Purchase Agreement and the Debtors' proposed platform sale, AFI is prepared to offer substantially similar terms to all qualified bidders participating in the auction scheduled for October 23, 2012.

| | |
|---|---|
| New York, New York<br>Dated: October 16, 2012 | */s/ Ray C. Schrock*<br>Richard M. Cieri<br>Ray C. Schrock<br>Stephen E. Hessler<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br><br>*Counsel for Ally Financial Inc. and Ally Bank* |

---

*Thereto; and (IV) Granting Related Relief* [ECF No. 61].

# EXHIBIT A

## AFI Support Letter

EXECUTION VERSION

Ally Financial Inc.
200 Renaissance Center, 12th Floor
Detroit, MI 48265

May 13, 2012

Nationstar Mortgage LLC
350 Highland Drive
Lewisville, Texas 75067

RE:    AFI Letter

Ladies and Gentlemen:

In connection with the Asset Purchase Agreement, dated as of May 13, 2012 (the "Nationstar APA"), between Nationstar Mortgage LLC, a Delaware limited liability company ("Purchaser"), Residential Capital, LLC, a Delaware limited liability company ("ResCap"), and various Affiliates of ResCap who are parties thereto (together with ResCap, "Sellers"), Ally Financial Inc., a Delaware corporation and the indirect parent entity of ResCap ("AFI"), has agreed to provide Purchaser with this letter agreement (this "Letter Agreement") to set forth its obligations to Purchaser in connection with the transactions contemplated by the Nationstar APA. AFI acknowledges that Purchaser's willingness to enter into the Nationstar APA is conditioned upon the execution and delivery of this Letter Agreement and the agreements and obligations set forth herein. In consideration for foregoing and the covenants and agreements set forth in this Letter Agreement, the parties hereto agree as follows:

Capitalized terms used but not defined herein shall have the meanings given to them in the Nationstar APA.

1. *Support of Bankruptcy Case and the Nationstar APA*. As long as the Nationstar APA has not been terminated in accordance with Article X thereof, AFI agrees as follows:

(a)    AFI shall, to the extent AFI has authority under Applicable Law, support ResCap and certain of ResCap's Subsidiaries (collectively, the "Debtors") in their prosecution of the Bankruptcy Case, in accordance with the terms and conditions of the Settlement and Plan Sponsor Agreement, dated as of May 13, 2012, between AFI and ResCap;

(b)    AFI shall not, and shall cause its Subsidiaries (other than ResCap and its Subsidiaries) not to, cause ResCap and the other Sellers under the Nationstar APA to breach their respective obligations under the Nationstar APA;

(c)    AFI shall not, and shall cause its Subsidiaries (other than ResCap and its Subsidiaries) not to, submit a "credit bid" or any other bid for any assets of the Debtors covered by the Nationstar APA;

(d)    AFI shall, to the extent AFI has authority under Applicable Law, support the relief provided for in the Sale Procedures Order and the Debtors' efforts to obtain approval of the Sale Procedures Order by no later than June 18, 2012.  If Purchaser is the successful bidder for the Purchased Assets, including if such assets do not include the Ginnie Mae MSRs Assets, AFI shall, to the extent AFI has authority under Applicable Law, support the sale of such assets to Purchaser, including the Debtors' entry of an order approving such sale whether pursuant to a Chapter 11 Plan or pursuant to section 363 of the Bankruptcy Code; and

(e)    AFI shall not, and shall cause its Subsidiaries (other than ResCap and its Subsidiaries) not to, sell, assign or otherwise transfer to any other person or entity (a "Transferee") any of its or their right, title and interest in and to any indebtedness owed by ResCap or any of its Subsidiaries to AFI or any of its Subsidiaries (other than ResCap and its Subsidiaries), unless any such Transferee agrees to be bound by the provision set forth in Section 1(c) above.

2. *Transition Services Agreement*. As long as the Nationstar APA has not been terminated in accordance with Article X thereof:

(a)    AFI and Purchaser agree that, promptly after the date hereof, AFI and Purchaser will begin to negotiate in good faith and will use their commercially reasonable efforts to finalize, as promptly as practicable, a Transition Services Agreement among AFI, Purchaser and such other parties as may be deemed reasonably necessary by Purchaser and AFI, consistent with the business terms set forth on Schedule A and otherwise containing customary provisions for agreements of such nature.  The parties intend and expect to enter into the Transition Services Agreement concurrently with the consummation of the transactions contemplated by the Nationstar APA, and

(b)    Prior to the Closing of the transactions contemplated by the Nationstar APA, AFI will use its commercially reasonable efforts to take such actions, as requested by ResCap from time to time, as may be necessary to assist ResCap and its Subsidiaries in fulfilling their obligations under Section 6.28(a) of the Nationstar APA with respect to the separation of the Business from AFI and its Affiliates (other than ResCap and its Affiliates); it being understood that the expectation of the parties is that there will be a need for transition services after the Closing as described in Section 2(a).

3.    *Data Centers.*

(a)    AFI shall defend, indemnify and hold harmless Purchaser and each affiliate of Purchaser for, from and against any and all claims, demands and liability relating to the Eden Prairie Owned Real Property and the Lewisville, Texas Leased Real Property (or the lease related thereto) (collectively, the "Properties") if and to the extent that the Properties do not get the benefit of the Sale Approval Order as a result of the consummation of the transactions contemplated by the Purchase and Sale Agreement, dated as of May 9, 2012 between, EPRE LLC and AFI (the "Purchase Agreement") and the Assignment of Leasehold Interest, dated as of

701734530 10488637                                    2

May 9, 2012, between GMAC Mortgage, LLC and AFI (the "Assignment of Leaseholder Interest").

(b) AFI acknowledges and agrees that notwithstanding the fact that (i) EPRE LLC may assign its rights under the Purchase Agreement to Purchaser and (ii) GMAC Mortgage, LLC may assign its rights under the Assignment of Leasehold Interest to Purchaser, Purchaser shall not be deemed to assume EPRE LLC's obligations or GMAC Mortgage, LLC's obligations, respectively, under the Purchase Agreement (including Section 8.3(b) thereof) or the Assignment of Leasehold Interest (including Section 5(b) thereof).

(c) As long as the Nationstar APA has not been terminated in accordance with Article X thereof, AFI shall not sell, assign, transfer, pledge or otherwise encumber its right, title or interests in the Properties, other than the sale and assignment to ResCap contemplated by the Purchase Agreement; provided, that AFI may sell, assign or transfer its right, title and interest in the Properties to any entity that merges or consolidates with or into AFI, or purchases at least a majority of the voting stock of AFI or all or substantially all of its assets, so long as such entity assumes the obligations of AFI under this Agreement.

4. *Confidentiality Agreement.* AFI agrees to abide by the confidentiality provisions contained in the seventh paragraph of the equity commitment letter, dated May 13, 2012, from Newcastle Investment Corp. to Purchaser.

5. *Termination.* This Letter Agreement shall terminate on December 31, 2012 if the transactions contemplated by the Nationstar APA have not been consummated by December 31, 2012 (except for Section 4 hereof, which shall survive the termination of this Letter Agreement).

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties hereto, each intending to be legally bound hereby, have caused this Letter Agreement to be executed as of the date first above written.

ALLY FINANCIAL INC.

By: _____
Name: Michael A. Carpenter
Title: Chief Executive Officer

Acknowledged and Agreed
as of May ___, 2012

**NATIONSTAR MORTGAGE LLC**


By: _____
    Name:
    Title:


[Copy to: RESIDENTIAL CAPITAL, LLC]

*[Signature Page - AFI Support Letter]*

IN WITNESS WHEREOF, the parties hereto, each intending to be legally bound hereby, have caused this Letter Agreement to be executed as of the date first above written.

ALLY FINANCIAL INC.

By:_____
Name:
Title:

Acknowledged and Agreed
as of May 13, 2012

NATIONSTAR MORTGAGE LLC

By: _____
Name:    Jay Bray
Title:    Chief Executive Officer


[Copy to:    RESIDENTIAL CAPITAL, LLC]

SCHEDULE A

Terms of Transition Services Agreement

1.     Transition Services. Purchaser, either through its Affiliates or its independent contractors, shall provide AFI and its Affiliates with the services as selected by AFI (not less than 30 days prior to the Closing Date) from the following: (i) the transition services as contemplated in the Statements of Work under the Shared Services Agreement that remain required to be performed as of the Closing Date and (ii) to the extent mutually agreed upon, additional services that ResCap or an Affiliate of ResCap provided to AFI and its Subsidiaries in the 12-month period prior to the Closing Date that are not specifically identified in the Statements of Work under the Shared Services Agreement.  AFI, either through its Affiliates or its independent contractors, shall provide Purchaser and its Affiliates with the services as selected by Purchaser (not less than 30 days prior to the Closing Date) from the following: (i) the transition services as contemplated in the Statements of Work under the Shared Services Agreement that remain required to be performed as of the Closing Date and (ii) to the extent mutually agreed upon, additional services that AFI or an Affiliate of AFI provided to Rescap and its Subsidiaries in the 12-month period prior to the Closing Date that are not specifically identified in the Statements of Work under the Shared Services Agreement.  The party providing services is hereinafter referred to as the "Provider" and the party receiving services is hereinafter referred to as the "Recipient".

2.     Term. The term for each Transition Service shall be as mutually agreed between the parties, but in no event less than 90 days; subject to one (1) extension of a period of 90 days by either party in its capacity as Recipient. Notwithstanding the foregoing, the following services shall be available for the corresponding term identified below: (i) any IT related transition services requested by AFI will be available for 12 months from the Closing Date, subject to one (1) extension for an additional 12 month period, provided that for purposes of such extension, the pricing terms for providing such services shall be revised using a cost-based methodology and based on a good faith agreement of the parties to reflect any changes in Purchaser's cost of providing such services and cost structure; (ii) any capital markets related transition services requested by AFI will be available for 12 months from the Closing Date;  (iii) licensing activities performed by ResCap for AFI under the Legal Services SOW which will be available for 6 months from the Closing Date; and (iv) any IT related transition services requested by Purchaser will be available for 6 months from the Closing Date, subject to one (1) extension for an additional 6 month period.  AFI will continue to have access and occupancy to all facilities during the term, whether AFI or ResCap, referenced in the Shared Services Agreement in the same manner that AFI has under the Shared Services Agreement for a period of 12 months from the Closing Date plus an additional 12 month period at AFI's option; provided that notwithstanding anything in the Shared Services Agreement to the contrary, AFI will pay its allocable portion of any rent and other cost associated with such access and occupancy.  Notwithstanding the foregoing, except in respect of the Minnesota Data Center or the Texas Data Center, Purchaser shall be entitled to exclude and reject any facility lease pursuant to the terms of the Asset Purchase Agreement and, with respect to any facilities that Purchaser assumes on the Closing Date, nothing herein will limit or restrict Purchaser's right, six months after the Closing Date, to terminate, assign or sublease any facility lease or sell any facility, provided that the six month limitation referenced above shall not limit or restrict Purchaser's right to allow any facility lease to expire within such six month period (each of the foregoing rights to exclude,

CH1 6776303v.3

reject, terminate, assign, sublease, or allow to expire are collectively referred to herein as, a "Facility Termination Event"). AFI's access and occupancy rights will be subject to a Facility Termination Event.

3.      Termination of Service. The Recipient may terminate any particular Transition Service at any time upon not less than 30 days' written notice to Provider. For the avoidance of doubt, the Fee for any Transition Service terminated in the middle of any monthly or other billing period shall be pro-rated for the period such service is provided, and the Recipient shall only be responsible for such pro-rated portion of the Fee, provided that the parties shall negotiate in good faith the appropriate treatment of any stranded cost which cannot be eliminated upon the exercise of commercially reasonable efforts (it being understood that for purposes of this provision, "stranded costs" shall not include any costs based on loss of volume discounts or any costs based on minimum purchasing or revenue requirements or commitments). The Parties agree to negotiate in good faith the movement of the people, resources, process and technology as necessary to smoothly effectuate the transition with as limited an impact on the business as possible.

4.      Fees. The fees payable by Recipient for the Transition Services shall be (i) if applicable, as set forth in the Statements of Work or Schedules under the Shared Services Agreement, except as otherwise set forth herein or (ii) as otherwise mutually agreed between the parties (to be based upon estimated cost).

5.      The Transition Services Agreement shall provide for a "Relationship Management" provision substantially similar to the "Relationship Management" provision as set forth in the Shared Services Agreement.

6.      The parties will provide and furnish the Transition Services as independent contractors. The Transition Services will be provided in substantially the same way and at the same level of performance as the applicable Provider delivers such services to itself, in compliance with applicable laws. The Transition Services Agreement will be negotiated by the parties in good faith and will include customary warranties, limitations of liability and indemnification provisions. The Transition Services Agreement shall include a methodology to allow the parties to meet and mutually agree in a timely manner on modifications to the services or the agreement. The Transitions Services Agreement will also include provisions pursuant to which each party will reasonably assist the other by providing information in its possession as may be necessary to comply with any regulatory compliance or audit concerns.