James S. Carr, Esq.
Eric R. Wilson, Esq.
Jason R. Adams, Esq.
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7987

Counsel for U.S. Bank National Association,
As Indenture Trustee

Hearing Date: October 31, 2012 at 10:00 a.m.
Objection Deadline: October 19, 2012 at 12:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC., *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING IT TO PROSECUTE AND SETTLE CERTAIN CLAIMS ON BEHALF OF THE DEBTORS' ESTATES**

U.S. Bank National Association, in its capacity as Indenture Trustee (the "Trustee") with respect to the 9.625% Junior Secured Guaranteed Notes Due 2015 (the "Notes") issued by Residential Capital, LLC, pursuant to that certain Indenture, dated as of June 6, 2008, hereby submits, by and through its undersigned counsel, this limited objection (the "Objection") to the *Motion of the Official Committee of Unsecured Creditors For Entry of an Order Authorizing It to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates* (the "Motion").[1] In support of this Objection, the Trustee respectfully states as follows:

---

[1] Docket No. 1546.

## **PRELIMINARY STATEMENT**

1.  Through the Motion, the Committee seeks unfettered authority to pursue a litany of specious and yet to be discovered claims against U.S. Bank, in its capacity as Trustee, Wells Fargo Bank, N.A., in its capacity as collateral agent, and the holders of the Notes (collectively, the "Junior Secured Parties"). The Motion, which does not include a draft complaint, is replete with vague and unsupported allegations of potential claims against the Junior Secured Parties. The majority of such claims seek nothing more than a determination that the underlying transaction documents "say what they say" -- that substantially all of the Debtors' assets are encumbered by liens in favor of the Junior Secured Parties, while other assets defined as "Excluded Assets" are not.

2.  The most substantial claim referenced in the Motion is also the least supported. The Committee seeks to prosecute preference actions to avoid the alleged addition of certain assets to the Junior Secured Parties' collateral package during the 90-day preference period. The Motion, however, merely recites the elements of a preference and fails to assert that such assets are anything but ordinary collateral under the transaction documents.

3.  Aside from whether the allegations set forth in the Motion constitute colorable claims, the Committee also seeks unfettered authority to litigate "any other matter arising out of the Committee's investigation" through an extended challenge period.[2] Although the Trustee does not contest the Committee's right to investigate and prosecute colorable claims, any standing granted to the Committee should be limited to the claims specifically identified in the four corners of the Motion. The limitless standing sought by the Committee runs contrary to well established law and would render meaningless the bargained for challenge deadline that was

---

[2]   *See* Proposed Order at ¶¶ 3-4, attached as Exhibit A to Motion.

an express condition of the Junior Secured Parties' consent to the Debtors' continued cash collateral use.

4.  If this Court concludes that the Committee has presented any colorable claims, standing should be narrowly tailored to the claims specifically identified in the Motion. Moreover, the Debtors should retain authority, subject to Court approval and in the exercise of their reasonable business judgment, to settle any claims for which the Committee is granted standing to pursue.

## BACKGROUND

5.  On May 14, 2012 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.  On May 16, 2012, the United States Trustee appointed the Committee.

7.  On May 16 and June 25, 2012, respectively, the Court entered the Interim DIP Order and the Final DIP Order.[3]

8.  In exchange for the Junior Secured Parties' consent to use cash collateral, and as a condition to incurring further indebtedness, the Debtors made certain acknowledgements and stipulations concerning the claims, liens, and security interests of the Junior Secured Parties.

---

[3] *See Interim Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to Adequate Protection Parties and (IV) Prescribing the Form and Manner of Notice and Setting Time for the Final Hearing* [Docket No. 89]; *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* [Docket No. 491].

9.  The Interim DIP Order provided that such provisions would be binding on all parties unless challenged no later than 75 days after entry of the Interim DIP Order (July 30, 2012) (the "<u>Challenge Deadline</u>").[4]  Following entry of the Interim DIP Order, the Junior Secured Parties, the Debtors and the Committee engaged in good faith negotiations regarding the terms of the Final DIP Order.  The Junior Secured Parties agreed to extend the Challenge Deadline to September 24, 2012 -- 90 days following entry of the Final DIP Order -- to provide the Committee two additional months to conduct its investigation.

## OBJECTION

A.  The Committee Should Not Be Granted Limitless Standing To
    <u>Assert Claims Against the Junior Secured Parties</u>

10.  If granted, the Committee's standing should be limited to those claims particularly identified in the Motion.[5]  The Bankruptcy Code does not expressly authorize committees or individual creditors to sue on behalf of an estate.  Nevertheless, the Second Circuit has recognized an "implied, but qualified" right for a committee to assert claims where the trustee or debtor-in-possession unjustifiably fails to bring suit or abuses its discretion in not suing on colorable claims likely to benefit the estate.[6]  To determine whether a committee properly commences an adversary proceeding on behalf of a debtor's estate, a court must consider two factors: (i) whether the committee presented any colorable claim(s), and (ii) whether the action asserting such claim(s) is likely to benefit the reorganization estate.[7]

---

[4]  Interim DIP Order at ¶ 27.

[5]  Notably, the Motion is not accompanied by a complaint and thereby impairs the Court's ability to assess whether standing is appropriate under the applicable standards. *See In re Adelphia Commc'ns Corp.*, 330 B.R. 364, 369 n.4, 372 (Bankr. S.D.N.Y. 2005) (Gerber, J.) (evaluating standing after motions to dismiss were filed); *In re America's Hobby Ctr.*, 223 B.R. 275 (Bankr. S.D.N.Y. 1998) (Brozman, C.J.) (same).

[6]  *In re Adelphia Commc'ns Corp.*, 544 F.3d 420, 423-24 (2d Cir. 2008) (Sotomayor, J.) (citing *In re STN Enters.*, 779 F.2d 901, 904-05 (2d Cir. 1985)).

[7]  *In re KDI Holdings, Inc.*, 277 B.R. 493, 508-09 (Bankr. S.D.N.Y. 1999) (Gonzalez, J.) (citing *STN*, 779 F.2d at 905).

11. The Committee cites no authority for the proposition that the Court can grant the Committee blanket standing to pursue claims it may discover through future investigation. The Challenge Deadline was a bargained for component of the Final DIP Order to ensure that the Junior Secured Parties, who are providing substantial benefits to the estates through the continued use of cash collateral, would not be subject to an endless barrage of claims. The benefit of the Junior Secured Parties' bargain would be rendered meaningless if the Committee were granted standing to pursue potential future claims.

12. The Committee's request for what amounts to a two-and-a-half month extension of the existing Challenge Deadline should also be denied. The Committee has had over four months to conduct its investigation. During this time, to the extent requested, the Junior Secured Parties have cooperated with the Committee's investigation. Notably, the Committee never even contacted the Trustee to seek an extension of the Challenge Deadline and failed to timely file a motion for an extension.

13. The Committee cites two cases wherein courts purportedly granted similar extensions on a non-consensual basis. Both cases are factually and legally inapposite.

14. The Committee cites *In re Evergreen Solar, Inc.* as support for its requested extension because the court in that case provided a 31-day period for the committee to file a complaint following entry of the standing order.[8] The Committee in this case, whose counsel also served as counsel for the committee in *Evergreen*, ignores the fact that the order in *Evergreen* extended the deadline solely to permit the committee and the secured noteholders to engage in good faith negotiations concerning a consensual resolution to "specified causes of

---

[8] *In re Evergreen Solar, Inc.,* Case No. 11-12590 (MFW) (Bankr. D. Del. Oct. 28, 2011) (Docket No. 382 at ¶ 2).

5

action" contained in a draft complaint that was attached to the standing motion.[9] The order specifically limited the committee's right to commence actions to the those claims set forth in the draft complaint attached to the standing motion.[10]

15. The other case cited by the Committee, *In re Open Range Commc'ns Inc.*, is similarly unpersuasive.[11] In *Open Range*, the committee not only filed a standing motion (with a draft complaint attached), but also filed a separate motion to extend the challenge period premised on the fact that the prospective defendants had delayed in producing documents and witnesses to the committee.[12] Here, the Committee has not filed a motion to extend the Challenge Deadline and does not allege that the Trustee or any of the Junior Secured Parties has failed or delayed in producing any documents or information necessary for the Committee to conduct its investigation. The Committee never requested any documents or information from the Trustee in connection with its 4-month investigation. In fact, the Committee never engaged in *any* communications with the Trustee or its counsel prior to the Challenge Deadline. As a result, there is simply no basis or authority for the requested extension, which should be denied.

B.    The Committee Should Not Be Granted Sole Authority To Settle Claims

16. Even if the Committee is granted permission to prosecute certain claims against the Junior Secured Parties, it should not have sole authority to settle such claims. The Debtors should retain authority to settle such claims to the extent the Debtors, in the exercise of their reasonable business judgment, determine that a settlement is in the best interest of the estates and

---

[9]   *Id*.

[10]  *Id.*

[11]  *In re Open Range Commc'ns Inc.*, Case No. 11-13188 (KJC) (Bankr. D. Del. Jan. 13, 2012) (Docket No. 493 at ¶ 2).

[12]  *Id.* (Docket No. 446).

6

all interested parties. The Committee should not be permitted to hold these estates hostage if a beneficial settlement, subject to Court approval, is reached among the parties.

17. The derivative plaintiff "does not usurp the central role of the court or debtor in overseeing and managing the estate's legal claims."[13] It remains "the debtor's duty to wisely manage the estate's legal claims," and this duty "is implicit in the debtor's role as the estate's only fiduciary."[14] In contrast, a committee owes a fiduciary duty to the class it represents, but not to the debtor, other classes, or the estate.[15]

18. Bankruptcy Rule 9019, which by its terms permits only the debtor-in-possession to move for settlement, is in complete harmony with the provisions of the Bankruptcy Code delineating the chapter 11 debtor's role.[16] "It is the debtor-in-possession who controls the estate's property, including its legal claims, and it is the debtor-in-possession who has the legal obligation to pursue claims or to settle them, based upon the best interests of the estate."[17]

19. There is nothing in sections 1103(c) or 1109(b) that contravenes this necessary balance of power. In creating the section 1109(b) right "to appear and to be heard on any issue," Congress cannot have intended to override the Bankruptcy Code provisions in which it carved out an exclusive role for the debtor-in-possession as legal representative and fiduciary of the estate.[18] "Were we to hold otherwise, we would be reading § 1109(b) as an open-ended license to creditors to take over the estate's litigation, far exceeding the role envisioned for them by

---

[13]   *In re Adelphia Commc'ns Corp.*, 544 F.3d 420, 427 (2d Cir. 2008) (Sotomayor, J.).

[14]   *Id.* at 424 (citing *In re Smart World Techs., LLC*, 423 F.3d 166, 175 (2d Cir. 2005)).

[15]   *Id.* at 424 n.1 (citing *Smart World*, 423 F.3d at 175 n.12).

[16]   *Smart World*, 423 F.3d at 175.

[17]   *Id.*

[18]   *Smart World*, 423 F.3d at 181, 183 (finding that section 1109(b) does not extend so far as to give a creditor the right to settle an adversary proceeding over the debtor's objection).

7

Congress."[19] Instead, it is the court's role -- and not that of a derivative plaintiff -- both to oversee the litigation and "to check any potential for abuse by the parties."[20]

20. To effectively manage these chapter 11 cases, the Debtors should retain authority to settle claims for the benefit of all constituencies. While the Committee cites instances when a Committee has been granted settlement authority through privately negotiated deals, such arrangements do not give rise to precedential authority. The great weight of authority, in the Bankruptcy Code and the Second Circuit's analysis noted above, favors the Debtors' retention of settlement authority. The Committee represents but one class of interests, not the entirety of the estates. If standing is ultimately granted to the Committee, sole settlement authority should be denied.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court (i) limit standing to only colorable claims set forth in the Motion; (ii) deny the Committee's request for an extended Challenge Period; (iii) deny the Committee's request for sole authority to settle claims; and (iv) grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
       October 19, 2012

KELLEY DRYE & WARREN LLP

By: */s/ James S. Carr*
    James S. Carr, Esq.
    Eric R. Wilson, Esq.
    Jason R. Adams, Esq.
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

Counsel for U.S. Bank National Association,
As Indenture Trustee

---

[19]   *Id.* at 183.

[20]   *In re Adelphia Commc'ns Corp.*, 544 F.3d 420, 424 (2d Cir. 2008) (Sotomayor, J.) (quoting *In re Commodore Int'l Ltd.*, 262 F.3d 96 (2d Cir. 2001)).

8

## **CERTIFICATE OF SERVICE**

On this 19th day of October 2012, the *LIMITED OBJECTION OF U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING IT TO PROSECUTE AND SETTLE CERTAIN CLAIMS ON BEHALF OF THE DEBTORS' ESTATES* was filed and served via this Court's CM/ECF filing system upon those parties entitled to receive notice. In addition service was made via US regular mail upon those parties listed on the annexed schedule.

*/s/ Casey Boyle*
Casey Boyle

## SERVICE LIST

| | | |
|---|---|---|
| **Chadbourne & Parke LLP**<br>Attn Howard Seife & David M LeMay &<br>Robert J Gayda & Marc B Roitman<br>30 Rockefeller Plaza<br>New York, NY 10112 | **Citibank NA**<br>Attn Bobbie Theivakumaran<br>390 Greenwich St 6th Fl<br>New York, NY 10013 | **Deutsche Bank Trust Company Americas**<br>c/o Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 |
| **Fannie Mae**<br>Attn Peter McGonigle<br>1835 Market St Ste 2300<br>Philadelphia, PA 19103 | **Internal Revenue Service**<br>Centralized Insolvency Operation<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | **Internal Revenue Service**<br>Centralized Insolvency Operation<br>2970 Market St<br>Philadelphia, PA 19104 |
| **Internal Revenue Service**<br>Insolvency Section<br>31 Hopkins Plz Rm 1150<br>Baltimore, MD 21201 | **US Trustee for the Southern District of NY**<br>Tracy Hope Davis, Linda A. Riffkin and<br>Brian S. Masumoto<br>33 Whitehall St 21st Fl, Region 2<br>New York, NY 10004 | **Kirkland & Ellis**<br>Richard M Cieri<br>601 Lexington Ave<br>New York, NY 10022 |
| **Kirkland & Ellis LLP**<br>Attn Ray C Schrock & Stephen E Hessler<br>601 Lexington Ave<br>New York, NY 10022-4611 | **Kramer Levin Naftallis & Frankel LLP**<br>Kenneth H Eckstein, Thomas Moers Mayer &<br>Douglas H Mannal<br>1177 Avenue of the Americas<br>New York, NY 10036 | **Kurtzman Carson Consultants**<br>Alison M. Tearnen Schepper<br>2335 Alaska Ave<br>El Segundo, CA 90245 |
| **Milbank, Tweed, Hadley & McCloy LLP**<br>Gerard Uzzi<br>1 Chase Manhattan Plaza<br>New York, NY 10005 | **Morrison & Foerster LLP**<br>Attn Tammy Hamzehpour<br>1290 Avenue of the Americas<br>New York, NY 10104 | **Morrison & Foerster LLP**<br>Larren M Nashelsky, Gary S Lee &<br>Lorenzo Marinuzzi<br>1290 Avenue of the Americas<br>New York, NY 10104 |
| **Nationstar Mortgage LLC**<br>Attn: General Counsel<br>350 Highland Drive<br>Lewisville, TX 75067 | **Office of the NY State Attorney General**<br>Nancy Lord & Enid M Stuart<br>The Capitol<br>Albany, NY 12224-0341 | **Office of the US Attorney**<br>**for the Southern District of NY**<br>United States Attorney<br>Preet Bharara<br>One St Andrews Plaza<br>New York, NY 10007 |
| **Securities & Exchange Commission**<br>Secretary of the Treasury<br>100 F St NE<br>Washington, DC 20549 | **Securities & Exchange Commission**<br>**NY Regional Office**<br>George S Canellos Regional Director<br>3 World Financial Center Ste 400<br>New York, NY 10281-1022 | **Sidley Austin LLP**<br>Larry J Nyhan & Jessica CK Boelter<br>One Dearborn<br>Chicago, IL 60603 |
| **Skadden Arps Slate Meagher & Flom LLP**<br>Jonathan H. Hofer<br>Four Times Square<br>New York, NY 10036 | **Skadden Arps Slate Meagher & Flom LLP**<br>Ken Ziman<br>Four Times Square<br>New York, NY 10036 | **Skadden Arps Slate Meagher & Flom LLP**<br>Sarah M Ward<br>Four Times Square<br>New York, NY 10036 |

| | | |
|---|---|---|
| **Skadden Arps Slate Meagher & Flom LLP**<br>Suzanne D T Lovett<br>Four Times Square<br>New York, NY 10036 | **The Bank of New York Mellon**<br>Asset-Backed Securities Group<br>101 Barclay St 4W<br>New York, NY 10286 | **U.S. Bank National Association**<br>Attn: George Rayzis<br>50 South 16 th Street<br>Philadelphia, PA 19102 |
| **U.S. Bank National Association**<br>Attn: Irina Palchuk<br>60 Livingston Avenue<br>St. Paul, MN 55107 | **U.S. Department of Justice**<br>US Attorney General, Eric H. Holder, Jr.<br>950 Pennsylvania Ave NW<br>Washington, DC 20530-0001 | **U.S. Attorney's Office for the Southern District of New York Civil Division**<br>Attn Joseph Cordaro<br>86 Chambers St 3rd Fl<br>New York, NY 10007 |
| **Wells Fargo Bank NA**<br>Attn Corp Trust Svc - GMACM Home Equity Notes 2004 Variable Funding Trust<br>PO Box 98<br>Columbia, MD 21046 | | |