Hearing Date and Time: October 31, 2012 at 10:00 a.m. (Prevailing Eastern Time)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

    and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi (GU - 2297)

Attorneys for the Ad Hoc Group
of Junior Secured Noteholders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF AD HOC GROUP
OF JUNIOR SECURED NOTEHOLDERS TO MOTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER
AUTHORIZING IT TO PROSECUTE AND SETTLE CERTAIN CLAIMS ON BEHALF
OF THE DEBTORS' ESTATES**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

    The Ad Hoc Group of Junior Secured Noteholders (the "Ad Hoc Group"), by and through its undersigned counsel, hereby files this limited objection (the "Limited Objection") to the Motion for Entry of an Order Authorizing It to Prosecute and Settle Certain Claims on Behalf

of the Debtors' Estates (ECF No. 1546) (the "Motion")[1] filed by the Official Committee of Unsecured Creditors (the "Committee") of Residential Capital, LLC and its affiliated debtors (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). As and for its Limited Objection, the Ad Hoc Group respectfully states as follows:

## PRELIMINARY STATEMENT

On June 25, 2012, the Court entered the Final Cash Collateral Order[2] pursuant to which the Debtors have been using the cash and proceeds of collateral of the Junior Secured Noteholders on a post-petition basis.[3] That Final Cash Collateral Order was the product of substantial negotiation between the Debtors and the Ad Hoc Group as to the nature and extent of the liens of the Junior Secured Noteholders. As such, the Final Cash Collateral Order contains express stipulations by the Debtors as to the validity, enforceability, and scope of the liens and obligations of the Junior Secured Notes (the "Stipulations"). As a material part of the concessions resulting from the negotiations, the Final Cash Collateral Order also included a requirement that any third party wishing to challenge the Debtors' Stipulations do so by September 23, 2012.

The Committee now seeks standing to commence and prosecute an adversary proceeding challenging certain aspects of the Stipulations, particularly those relating to the extent and validity of the liens of the Junior Secured Noteholders on certain of the Debtors' assets. The Ad Hoc Group disagrees with the arguments raised by the Committee in the Motion, believes there

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[2] Final Order under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties (ECF No. 491) (the "Final Cash Collateral Order").

[3] The "Junior Secured Noteholders" are holders of those certain 9.625% Junior Secured Guaranteed Notes due 2015 (the "Junior Secured Notes") issued under that certain Indenture dated as of June 6, 2008.

is no legitimate basis to challenge the Debtors' Stipulations, and will ultimately show the Court that the claims of the Junior Secured Noteholders are fully secured. Nonetheless, under the terms of the Final Cash Collateral Order, the Committee is entitled to move forward with specific challenges to the Stipulations identified in the Motion and is entitled to standing to do that.

The Ad Hoc Group does, however, object to two aspects of the Committee's proposed order that go beyond a proper challenge.  <u>First</u>, the proposed order submitted by the Committee includes a provision which would grant standing to the Committee to prosecute not only those challenges specifically identified in the Motion, but also "any other matter arising out of the Committee's investigation of the Collateral." Proposed Order ¶ 3.  As set forth herein, that provision is contrary to derivative standing law as well as the terms of the Final Cash Collateral Order and should be stricken.  At this time, the Committee should only have standing to prosecute those claims specifically identified in the Motion.

<u>Second</u>, the proposed order requests "the exclusive right and authority" for the Committee to "negotiate and enter into settlements on behalf of the Debtors' estates" of any challenges that it may assert against the Stipulations.  Proposed Order ¶ 5. The Court should clarify that, while the Committee can propose settlements, nothing in the order vests the Committee with an exclusive right to enter into settlements related to the claims of the Junior Secured Noteholders.  Absent that clarification, the Committee could be perceived as having a veto right over certain plan structures.

## **BACKGROUND**

The Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") on May 14, 2012.  The Debtors continue to operate their

businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On May 16, 2012, the Committee was appointed (ECF No. 102). On June 28, 2012 the Court ordered the United States Trustee to appoint an examiner (ECF No. 536). On July 3, 2012, the Court approved the appointment of Judge Arthur J. Gonzalez as examiner (ECF No. 674).

On the eve of the commencement of the Chapter 11 Cases, certain holders (the "Consenting Holders") of the Junior Secured Notes, including certain members of the Ad Hoc Group, entered into that certain Plan and Support Agreement dated May 13, 2012 with the Debtors and Ally Financial Inc. (the "PSA"). Exhibit 9 to Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC in Support of Chapter 11 Petitions and First Day Pleadings (ECF No. 6). During the negotiations of the PSA, the Debtors and the Ad Hoc Group engaged in significant discussions with respect to the Stipulations in the Final Cash Collateral Order. In the PSA, the Debtors agreed to the Stipulations and to a deadline of 75 days after entry of an interim cash collateral order for the assertion of challenges to the Stipulations by third parties. PSA § 2.1(b) ("the Debtors agree to: … (b) stipulate, in the cash collateral order attached here to as Exhibit C, to the validity of the liens securing the Junior Note Claims …"). The Consenting Holders, in turn, agreed to support the entry of the cash collateral order. PSA § 4.1(b).

Ultimately, on June 25, 2012 the Court entered the Final Cash Collateral Order. In the Final Cash Collateral Order the Debtors stipulated to the validity, enforceability, and scope of the Junior Secured Notes obligations and liens, as follows:

- "the aggregate principal amount outstanding… under the Junior Secured Notes Documents was at least $2,120,452,000," Final Cash Collateral Order ¶ 5(b);

- "the Junior Secured Notes Obligations constitute legal, valid and binding obligations…," Id. ¶ 5(c);

- "no portion of the Junior Secured Notes Obligations is subject to avoidance, recharacterization, recovery, subordination, setoff, or counterclaim…," Id. ¶ 5(d);

- "the Junior Secured Notes' liens and security interests "are valid, binding, perfected and enforceable first priority liens on and security interests in the personal and real property constituting "Collateral" under, and as defined in, the Junior Secured Notes Documents…" Id. ¶ 5(g);

- "the collateral securing the Junior Secured Notes Obligations includes among others the Pre-Petition Ally Repo Facility … or any residual value therefrom and the residual value of the Initial Purchased Assets securing the Pre-Petition GSAP Facility… and the categories of assets under the columns labeled 'Ally Revolver' and 'Blanket' set forth on Exhibit A to this Final Order" Id. ¶ 5(h).

- "no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Junior Secured Notes Obligations exist, and no portion of the Junior Secured Notes Obligations or any payments made to any or all of the Junior Secured Parties are subject to avoidance, recharacterization, recovery, subordination, attachment, recoupment, offset, counterclaim, defense, or 'claim' of any kind pursuant to the Bankruptcy Code." Id. ¶ 5(i).

The Stipulations became binding upon the Debtors upon the entry of the Final Cash Collateral Order. Id. ¶ 28. The Stipulations were to become binding on all other parties in interest absent any objection within 90 days of entry of the Final Cash Collateral Order, i.e., by September 23, 2012 (the "Challenge Period"):

> The stipulations, admissions, and releases contained in paragraphs 5(b) – 5(k) of this Order shall be binding on all parties in interest, including the Creditors' Committee, unless, and solely to the extent that, any party in interest files an objection to this Final Cash Collateral Order challenging such stipulations, admissions, releases or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against the Junior Secured Parties (an 'Objection') in each case no later than the later of ninety (90) days after entry of this Final Order.

Id.

On September 24, 2012, the Committee filed the Motion with the Court, seeking standing to challenge several specific aspects of the Stipulations: "The Committee seeks standing to commence and prosecute an adversary proceeding against the Collateral Agent and Indenture Trustee to (i) obtain a declaratory judgment that certain assets that the Debtors stipulated constitute collateral for the Junior Secured Parties' claims are, in fact, unencumbered by their liens; (ii) avoid the unperfected liens of the Junior Secured Parties; and (iii) avoid liens on assets that were added to the Junior Secured Parties' collateral package in the 90 days prior to the Petition Date." Motion ¶ 9. The Motion also seeks "sole authority to settle all or a portion of the Claims on behalf of the Debtors' estates." Id. ¶ 59. The Motion tolls the Challenge Period until its adjudication. Final Cash Collateral Order ¶ 28.

## LIMITED OBJECTION

The Ad Hoc Group believes there is no legitimate basis to challenge the Stipulations. The Debtors themselves conducted a full review of the collateral for the Junior Secured Notes before agreeing to the Stipulations, presumably including a review of the arguments now raised by the Committee. In any event, the Junior Secured Notes have all-asset liens at several of the Debtors' asset-rich entities which, absent misconduct by the Debtors or other parties, should be sufficient to provide full collateral coverage regardless of the outcome of the proposed challenges. Still, the Ad Hoc Group recognizes that the Committee is entitled to be granted standing to proceed with the specific challenges to the Stipulations identified in the Motion.

As noted above, the Ad Hoc Group objects to the Motion to the extent that it seeks standing for the Committee (i) to bring claims relating to the Junior Secured Notes' claims other than those specifically identified in the Motion and (ii) to act as the sole party with authority to settle any challenges to the Junior Secured Notes' claims.

1. <u>The Court Should Not Grant Blanket Standing</u>

The proposed order inappropriately purports to grant the Committee "blanket" standing to assert any challenge to the Stipulations at a later date. See Proposed Order ¶ 3 ("The Committee is granted standing and is authorized on behalf of the Debtors' estates to commence and prosecute to conclusion the Claims, *or any other matter arising out of the Committee's investigation of the Collateral* …") (emphasis added). This language in the proposed order is reflective of several such purported reservations of rights in the Motion. See Motion ¶ 36 ("[t]he Committee has not yet concluded its investigation of the liens of, and all potential claims against, the Junior Secured Parties. Further discovery will enable the Committee to determine whether additional assets may be subject to the claims it outlines against the Junior Secured Parties."); Id. n.16 ("the Committee reserves the right to object to the Stipulations to the extent they purport to establish the value of any of the Collateral as of Petition Date or otherwise"); Id. n.26.

The "blanket" standing provision in the proposed order is inconsistent with the Court's Final Cash Collateral Order. That order provides that the Motion tolls the period for challenging the Stipulations only "until adjudication of such motion." Final Cash Collateral Order ¶ 28. To the extent the Motion is granted, the Committee must then "timely file" an objection – according to the proposed order, within 45 days. Thereafter, "the [Stipulations] shall nonetheless remain binding on all parties in interest and shall be preclusive *except to the extent that any such [Stipulations] are expressly challenged pursuant to such timely filed Objection and there is an order sustaining such Objection*." Id. ¶ 28 (emphasis added).

These provisions in the Final Cash Collateral Order are designed to assure the Junior Secured Noteholders that the Stipulations will remain binding against third parties to the extent not timely challenged and, even then, will remain binding except with respect to the specific

grounds on which they are disputed. The Ad Hoc Group negotiated extensively with the Debtors and the Committee for these provisions to provide necessary closure with respect to the assertion of challenges to the Stipulations. Contrary to the terms of the Final Cash Collateral Order, the proposed "blanket" standing provision would allow the Committee to assert additional challenges to the Stipulations notwithstanding the expiration of the Challenge Period. Permitting such broad and open-ended relief would undermine the protections that the Junior Secured Noteholders negotiated for in the Final Cash Collateral Order.

A "blanket" grant of standing is also inappropriate to the extent it would purport to empower the Committee to challenge aspects of the Junior Secured Notes' collateral beyond what is subject to the Stipulations. Fundamentally, the Committee argues that standing to challenge certain aspects of the Stipulations is necessary because, by agreeing to the Stipulations, "the Debtors have disabled themselves from bringing these claims." Motion ¶ 64. But the "blanket" standing provision would grant the Committee standing to assert claims relating to "any other matter arising out of the Committee's investigation of the Collateral," even though the Debtors have not "disabled themselves." As a result, standing should only be granted at this time with respect to the prosecution of those claims and defenses expressly set forth in the Motion.

2. The Court Should Not Grant the Committee the "Sole" Right to Settle Claims and Defenses Relating to the Junior Secured Notes' Claims

To the extent the Court grants the Motion, it should likewise strike the provision of the proposed order purporting to grant the Committee "sole" authority to settle its challenges to the Stipulations. Federal Rule of Bankruptcy Procedure 9019 grants such standing to each of the Debtors, not to the Committee. See Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs., LLC), 423 F.3d 166 (2d Cir. 2005) (reversing order approving settlement motion filed by an Official Committee of Unsecured Creditors over debtors' objections and holding that

the power to settle claims relating to estate property belongs to the debtor, subject to certain limited exceptions).

Moreover, empowering the Committee with veto power over any settlement relating to the allowance of the Junior Secured Notes' claims would be premature and inappropriate in this critical period in these Chapter 11 Cases.  The Junior Secured Noteholders have large secured claims against the three most critical Debtor estates – Residential Capital, LLC, GMAC Mortgage LLC, and Residential Funding Company LLC.  As such, recovery by the Junior Secured Noteholders at each Debtor entity – and, by extension, the ability to settle any challenges that threaten such recovery – promises to be a central component to negotiations of a plan of reorganization. The Court has directed the parties to explore all plan alternatives in advance of the expiration of the Debtors' exclusivity period on December 20th. See Transcript of Hearing on September 11, 2012 70:12-71:21 (instructing parties to engage in structured plan negotiations).  To the extent the Committee were granted "sole" authority to settle, that would undermine this objective by curtailing the ability of the Debtors and their economic stakeholders to consensually resolve a significant plan issue.  This is not to say that the Committee should have no standing to pursue settlements or should be forestalled at a later date from seeking increased authority, but there is no legitimate basis to obtain exclusivity now.

WHEREFORE, the Ad Hoc Group respectfully requests that, to the extent the Court grants the Motion, any order granting relief on the Motion be limited as set forth herein and grant such other and further relief as the Court deems just.

Dated: October 19, 2012
      New York, New York

Respectfully submitted,

By: /s/ J. Christopher Shore
J. Christopher Shore

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JS – 6031)
Harrison L. Denman (HD - 1945)

   and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi (GU - 2297)

Attorneys for the Ad Hoc Group of Junior Secured Noteholders