Hearing Date:   November 5, 2012 at 10:00 a.m. (ET)
Objection Deadline:   October 29, 2012 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO PERFORM REMEDIATION ACTIVITIES IN CONNECTION WITH REAL ESTATE OWNED AND INCUR NECESSARY EXPENSES RELATED THERETO**

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**")[1], hereby move for the entry of an order the proposed form of which is attached as Exhibit 1, under sections 105 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") authorizing the Debtors to perform remediation activities in connection with certain Debtor-owned real estate or "REO", and incur necessary expenses related thereto, including, but not limited to, reimbursement of tenants' relocation expenses.  In support of this motion (the

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions (the "**Whitlinger Affidavit**") [Docket No. 6].

"**Motion**"), the Debtors rely on the Declaration of Jennifer Scoliard (the "**Scoliard Decl.**"), attached hereto as **Exhibit 2** and respectfully represent:

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory basis for the relief requested herein is sections 105 and 363 of the Bankruptcy Code.

## BACKGROUND

**General Case Background**

2.      On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.[2]

3.      On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine-member official committee of unsecured creditors (the "**Creditors' Committee**").

4.      On June 20, 2012, the Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner (the "**Examiner**") [Docket No. 674].

---

[2]  The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc. ("**AFI**"), which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit.

5.	On June 15, 2012, the Court entered the *Final Order Under Sections 105(a), 362, 363, 1107(a) and 1108 of the Bankruptcy Code (I) Authorizing the Debtors to Continue in the Ordinary Course of Business (A) Servicing Non-Governmental Association Loans, and (B) Sale Activities Related to Certain Loans in Foreclosure and Real Estate Owned Property, and (II) Granting Limited Stay Relief to Enable Borrowers to Assert Direct Claims and Related Counter-Claims in Foreclosure and Eviction Proceedings* [Docket No. 402] (the "**Non-GA Servicing Order**").

**The Oakland, California Real Estate Owned**

6.	On or around January 2010, ETS Services, LLC commenced foreclosure proceedings in its capacity as trustee for a mortgage loan on a three unit residential property located at 1243-1249-1251 76th Avenue, Oakland, California (the "**Oakland REO**"). (Scoliard Decl. ¶ 4.)

7.	On or around September 2010, GMAC Mortgage, LLC ("**GMAC Mortgage**") took ownership over the Oakland REO upon completion of the foreclosure. (Scoliard Declaration ¶ 5.) Following taking ownership of the Oakland REO, the Debtors eventually became aware of numerous potential violations of applicable housing codes as a result of the acts and omissions of the prior owner. (Scoliard Decl. ¶ 5.)

8.	On February 14, 2012, certain tenants of the Oakland REO (the "**Plaintiffs**") filed the First Amended Complaint for Damages and Injunctive Relief against GMAC Mortgage and third party defendants in the Superior Court of the State of California, designated <u>Jose Feliciano, et al. v. GMAC Mortgage LLC, et al.</u>, Civil Case No. RG-11565653 (the "**Oakland Tenants Action**"), pursuant to which the Plaintiffs allege the existence of habitability defects and dangerous conditions at the Oakland REO that constitute violations of the Plaintiffs' rental agreements and of applicable housing and residential tenancy laws. (Scoliard Decl. ¶ 6.)

9. The Oakland Tenants Action was stayed upon the filing of GMAC Mortgage's bankruptcy petition pursuant to section 362 of the Bankruptcy Code.

10. Following the Petition Date, the Debtors and the Plaintiffs engaged in discussions regarding the performance by GMAC Mortgage of remediation activities with respect to the Oakland REO. (Scoliard Decl. ¶ 7.) GMAC Mortgage is prepared to undertake certain remediation activities, including paying for repairs and for the cost of relocating the Oakland REO's current tenants pending completion of the repairs (collectively, the "**Remediation**"). (Scoliard Decl. ¶ 7.) The Debtors estimate that aggregate expenditures in connection with the Remediation will total approximately $118,000. (Scoliard Decl. ¶ 7.)

11. The proposed Remediation is not an admission of liability by GMAC Mortgage or a settlement of the Oakland Tenants Action. (Scoliard Decl. ¶ 8.) However, the completion of the Remediation will ensure that the Oakland REO is in compliance with applicable housing and residential tenancy laws, and will enhance the value of the Oakland REO in connection with any future sale of the property. (Scoliard Decl. ¶ 8.)

12. GMAC Mortgage preliminarily approved the repairs under the Remediation in May 2012, and scheduled a contractor to begin work on July 9, 2012. (Scoliard Decl. ¶ 9.) GMAC Mortgage also is prepared to pay for Plaintiffs' relocation costs and temporary housing for the period during which the Remediation will be performed. (Scoliard Decl. ¶ 9.) Although GMAC Mortgage stood ready to begin the Remediation as scheduled on July 9, 2012, Plaintiffs refused to vacate the premises, on the grounds, according to their counsel, that the Debtors' pending bankruptcy limited the Debtors' authority to perform the Remediation and incur the related costs. (Scoliard Decl. ¶ 9.)

13. The Debtors respectfully submit that their performance of the Remediation is within the ordinary course of the business and permissible under section 363(c) of the Bankruptcy Code, as well as under paragraph 6 of the Non-GA Servicing Order, which grants the Debtors express authority to continue operating any real estate they own in the ordinary course. The Debtors have repeatedly advised the Plaintiffs of their position that no further Court approval is required, including providing citations to the relevant authority and orders. (Scoliard Decl. ¶ 10.) Notwithstanding this authority and the Debtors' efforts, the Plaintiffs have taken the position that the Debtors lack the authority to undertake the Remediation, and, in fact, have refused to vacate the premises absent an order granting such express authority. (Scoliard Decl. ¶ 10.) The Debtors cannot commence the Remediation until the Plaintiffs have vacated the premises. (Scoliard Decl. ¶ 10.)

## RELIEF REQUESTED

14. By this Motion, in order to avoid any further delay in performing the Remediation and out of an abundance of caution, the Debtors seek the entry of an order pursuant to sections 105 and 363 of the Bankruptcy Code authorizing the Debtors to perform the Remediation in connection with the Oakland REO, including, but not limited to, incurring necessary expenses related to the relocation of the Oakland REO tenants.[3]

## BASIS FOR RELIEF

15. Section 363(c)(1) provides, in relevant part, that a debtor in possession, "may enter into transactions, . . . in the ordinary course of business, without notice or a hearing, and

---

[3] There is no agreement between GMAC Mortgage and the Plaintiffs with respect to the Remediation nor the demands set forth in the letter from Plaintiff's counsel dated August 9, 2012 (See Exhibit 2-B to Scoliard Decl.) By this Motion, the Debtors are not requesting authority to enter into any agreement with the Plaintiffs in connection with the proposed Remediation.

5

may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). As set forth above, the Debtors believe the Remediation is well within the ordinary course of the Debtors' business and therefore falls within the scope of section 363(c)(1), such that express Court approval is not required.

16. Notwithstanding that authority, which was further clarified by the Non-GA Servicing Order, the Plaintiffs have demanded that the Debtors obtain what is in effect a comfort order affirming that the Debtors are authorized to perform the Remediation. (Scoliard Decl. ¶ 10.) Because the Debtors cannot commence the Remediation until the Plaintiffs have vacated the premises, which the Plaintiffs have conditioned on entry of such an order (Scoliard Decl. ¶ 10), the Debtors are seeking such authority pursuant to section 363(b)(1) of the Bankruptcy Code, which states that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b)(1). Courts in the Second Circuit have explained that, in determining whether to allow a use or lease of property of the estate other than in the ordinary course of business, courts "have required that it be based upon the sound business judgment of the debtor." In re RSL COM Primeall, Inc., No. 01-11457, 2002 Bankr. LEXIS 367, at *27 (Bankr. S.D.N.Y. Apr. 11, 2002).[4] When considering whether Section 363(b) applies, the Second Circuit, "requires that a judge… expressly find from the evidence presented before him at the hearing a good business reason to grant such an application." In re The Lionel Corp., 722 F.2d at 1071.

---

[4] See also Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate…may be conducted if a good business reason exists to support it."); Official Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141 (2d Cir. 1992) (holding that there must be a good business reason to grant a motion to sell assets under Bankruptcy Code section 363(b)); Comm. of Equity Sec. Holders v. Lionel Corp (In re The Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983).

6

17. In addition, this Court has recognized that the business judgment of the estate representative is entitled to great deference by the Court.

> Indeed 'the trustee or DIP is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's assets; and although the trustee's or DIP's discretion is not without limit, the Court should not step in and assume a role and responsibility properly placed by the Code in another's hands.'

In re Borders Group, Inc., 453 B.R. 477, 483 (Bankr. S.D.N.Y. 2011) (internal citations omitted); see also In re Lakeside Dev., LLC, No. 11-05211, 2012 Bankr. LEXIS 695, at *10 (Bankr. D.S.C. Feb. 24, 2012) ("An exercise of such business judgment includes disposition of property if the trustee determines that such disposition is in the best interest of the estate.").

18. Here, performance of the Remediation is within the best interests of the Debtors' estates because it will (i) reduce the risk that GMAC Mortgage could be held liable for potential violations of applicable housing codes currently in existence with respect to the Oakland REO, notwithstanding the fact that such potential violations arose as a result of the acts and omissions of the prior owner and (ii) enhance the value of the Oakland REO.

19. Bankruptcy Code Section 105 provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The performance of remediation activities with respect to the Debtors' real estate owned and the payment of expenses incurred in connection therewith is well within the ordinary course of the Debtors' servicing business. The Debtors submit that the performance of the Remediation is both an exercise of sound business judgment and in the best interests of the estates and their creditors.

20. Courts broadly interpret the term ordinary course. Gassen v. Universal Bldg. Materials, Inc. (In re Berkley Multi-Units, Inc.), 88 B.R 394, 396-97 (Bankr. M.D. Fla. 1988).

In determining whether a transaction is in the ordinary course of business under Bankruptcy Code section 363, the courts apply a two-pronged test: (1) the objective horizontal test, and (2) the subjective vertical test.  See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384-85 (2d Cir. 1997); see also In re Dana Corp., 358 B.R. 567, 580 (Bankr. S.D.N.Y. 2006) (and cases cited therein); In re The Leslie Fay Cos., 168 B.R. 294, 304 (Bankr. S.D.N.Y. 1994).  The horizontal test is a factual analysis as to whether the transaction in question is of the sort commonly undertaken by companies in that industry.  In re Lavigne, 114 F.3d at 385.  That is, the horizontal test focuses on whether the transaction is usual or abnormal for the industry.  The vertical test, which is also called the creditor's expectation test, is an analysis conducted from the perspective of a hypothetical creditor and analyzes whether the transaction subjects the creditor to an economic risk of a nature different from those it accepted when it decided to extend credit to the Debtors.  Id.; In re The Leslie Fay Cos., 168 B.R. at 304.  In making this determination, courts look to the debtor's pre-petition business practices and conduct and compare them to the debtor's postpetition conduct.  In re The Leslie Fay Cos., 168 B.R. at 304.

21.    Here, the performance of the Remediation satisfies both the horizontal and vertical tests.  The horizontal test is easily met.  The Debtors performed remediation activities with respect to REO prior to the Petition Date in other situations, including paying expenses related to such remediations, and have continued to make necessary repairs on other REO after the Petition Date.  (Scoliard Decl. ¶ 11.)  Likewise, a hypothetical creditor should expect that the Debtors, as a mortgage loan servicer that regularly incurs ownership obligations in connection with real estate owned, would incur the financial obligations described in this Motion.  Granting the relief requested herein would not subject creditors to economic risks that would not have been contemplated by them.  Therefore, the vertical test is also satisfied.  See

8

Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.), 853 F.2d 700, 705 (9th Cir. 1988) (debtor's renewal and execution of leases satisfied vertical test because debtor routinely entered into leases prior to bankruptcy); Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (debtor's employment of lobbyists satisfied both vertical and horizontal tests because debtor had been retaining lobbyists for many years and because it was common practice of other major companies to do so).

22. Moreover, performance of remediation activities with respect to real estate owned is required under the Bankruptcy Code to the extent necessary to comply with local regulations. See 28 U.S.C. § 959(b) (requiring a debtor in possession to "manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."). Furthermore, the payment of related expenses, such as the costs of relocation of tenants during the remediation process, is necessary to allow the Remediation to be performed.

23. In light of the foregoing, the Debtors believe that performing the Remediation as described herein is appropriate and in the best interests of the Debtors and their estates and creditors. Accordingly, the Debtors request that the Court authorize the Debtors to perform the Remediation, and to incur and pay all necessary and reasonable expenses related thereto.

## NOTICE

24. The Debtors have provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## NO PRIOR REQUEST

25. No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit 1**, granting the relief requested herein and granting such other relief as is just and proper.

| | |
|---|---|
| New York, New York<br>Dated: October 19, 2012 | /s/ Norman S. Rosenbaum<br>Gary S. Lee<br>Norman S. Rosenbaum<br>Erica J. Richards<br>MORRISON & FOERSTER LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>Telephone: (212) 468-80000<br>Facsimile: (212) 468-7900<br><br>*Counsel to the Debtors*<br>*and Debtors in Possession* |