## EXHIBIT 2

**Scoliard Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
                                                    )
In re:                                              )        Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,            )        Chapter 11
                                                    )
                                Debtors.            )        Jointly Administered
                                                    )
---------------------------------------------------------------

**DECLARATION OF JENNIFER SCOLIARD IN SUPPORT OF
DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER SECTIONS 105
AND 363 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO
PERFORM REMEDIATION ACTIVITIES IN CONNECTION WITH REAL ESTATE
OWNED AND INCUR NECESSARY EXPENSES RELATED THERETO**

I, Jennifer Scoliard, declare as follows:

1.      I serve as In-House Senior Bankruptcy Counsel in the Legal Department at
Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of
the state of Delaware and the parent of the other debtors and debtors in possession in the above-
captioned Chapter 11 cases (collectively, the "**Debtors**").  I have been ResCap's In-House
Bankruptcy counsel since September 2010.  Prior to September 2010, I served in various legal
roles supporting GMAC Mortgage, LLC ("**GMAC Mortgage**") from January 2008 to September
2010.  I joined ResCap in January 2008.  In my role as In-House Senior Bankruptcy Counsel at
ResCap, I am responsible for the management of all non-routine bankruptcy litigation
nationwide, including contested bankruptcy matters.

2.      I am authorized to make this declaration on behalf of the Debtors and in support
of the *Debtors' Motion For Entry Of An Order Under Sections 105 And 363 Of The Bankruptcy*

*Code Authorizing The Debtors to Perform Remediation Activities In Connection With Real
Estate Owned and Incur Necessary Expenses Related Thereto* (the "**Motion**").[1]

3.    In my capacity as In-House Senior Bankruptcy Counsel, I am familiar with the
Debtors' day-to-day legal affairs.  I submit this declaration (the "**Declaration**") on the Debtors'
behalf in conjunction with and in support of the Motion.  Except as otherwise indicated, all
statements in this Declaration are based upon my personal knowledge; information supplied or
verified by personnel in departments within the legal staff and various business units of the
Debtors or the Debtors' advisors; my review of the Debtors' relevant documents; or my general
experience, expertise, and knowledge of the Debtors' legal affairs.  In making my statements
based on my review of the Debtors' relevant documents and other information prepared or
collected by the Debtors' employees, I have relied upon these employees accurately recording,
preparing, collecting, or verifying any such documentation and other information.  If I were
called to testify as a witness in this matter, I would testify competently to the facts set forth
herein.

A.        **The Oakland REO**

4.    On or around January 2010, ETS Services, LLC commenced foreclosure
proceedings in its capacity as trustee for a mortgage loan on a three unit residential property
located at 1243-1249-1251 76th Avenue, Oakland, California (the "**Oakland REO**").

5.    On or around September 2010, GMAC Mortgage, LLC ("**GMAC Mortgage**")
took ownership over the Oakland REO upon completion of the foreclosure.  Following taking
ownership of the Oakland REO, the Debtors eventually became aware of numerous potential
violations of applicable housing codes as a result of the acts and omissions of the prior owner.

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the
Motion.

6.      On February 14, 2012, certain tenants of the Oakland REO (the "**Plaintiffs**") filed the First Amended Complaint for Damages and Injunctive Relief against GMAC Mortgage and third party defendants in the Superior Court of the State of California, designated Jose Feliciano, et al. v. GMAC Mortgage LLC, et al., Civil Case No. RG-11565653 (the "**Oakland Tenants Action**"), pursuant to which the Plaintiffs allege the existence of habitability defects and dangerous conditions at the Oakland REO that constitute violations of the Plaintiffs' rental agreements and of applicable housing and residential tenancy laws.  See **Exhibit 2-A**, annexed hereto.

7.      Following the Petition Date, the Debtors and the Plaintiffs engaged in discussions regarding the performance by GMAC Mortgage of remediation activities with respect to the Oakland REO.  GMAC Mortgage is prepared to undertake certain remediation activities, including paying for repairs and for the cost of relocating the Oakland REO's current tenants pending completion of the repairs (collectively, the "**Remediation**").  The Debtors estimate that aggregate expenditures in connection with the Remediation will total approximately $118,000.

8.      The proposed Remediation is not an admission of liability by GMAC Mortgage or a settlement of the Oakland Tenants Action.  However, the completion of the Remediation will ensure that the Oakland REO is in compliance with applicable housing and residential tenancy laws, and will enhance the value of the Oakland REO in connection with any future sale of the property.

9.      GMAC Mortgage preliminarily approved the repairs under the Remediation in May 2012, and scheduled a contractor to begin work on July 9, 2012.  GMAC Mortgage also is prepared to pay for Plaintiffs' relocation costs and temporary housing during the Remediation period.  Although GMAC Mortgage stood ready to begin the Remediation as scheduled on

July 9, 2012, Plaintiffs refused to vacate the premises, on the grounds that the Debtors' pending

bankruptcy limited the Debtors' authority to perform the Remediation and incur the related costs.

See **Exhibit 2-B**, annexed hereto.

10.    The Debtors have repeatedly advised the Plaintiffs that the Debtors believe their

performance of the Remediation is within the ordinary course of the business and permissible

under section 363(c) of the Bankruptcy Code, as well as under paragraph 6 of the Non-GA

Servicing Order, and that no further Court approval is required, including providing citations to

the relevant authority and orders.  See **Exhibit 2-C**, annexed hereto.  Notwithstanding this

authority and the Debtors' efforts, the Plaintiffs have taken the position that the Debtors lack the

authority to undertake the Remediation, and, in fact, have refused to vacate the premises absent

an order granting such express authority.  See **Exhibit 2-B**, annexed hereto.  The Debtors cannot

commence the Remediation until the Plaintiffs have vacated the premises.

**B.        The Debtors' Remediation Activities**

11.    Prior to the Petition Date, in the ordinary course of business, the Debtors

performed remediation activities with respect to real estate owned, including paying expenses

related to such remediations, and have continued to make necessary repairs on their other real

estate owned after the Petition Date.

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the

foregoing is true and correct.


Executed on October 19, 2012


By: /s/ Jennifer Scoliard
       Jennifer Scoliard
       In-House Senior Bankruptcy Counsel

# EXHIBIT 2-A

## First Amended Complaint

1 | Steven J. McDonald, SBN 178655
Jaymee Faith Cadiz Sagisi, SBN 246281
2 | GREENSTEIN & McDONALD
300 Montgomery Street, Suite 621
3 | San Francisco, CA 94104
Telephone: 415-773-1240
4 | Facsimile: 415-773-1244

5 | Attorneys for Plaintiffs

6

7

SUPERIOR COURT OF THE STATE OF CALIFORNIA
8

COUNTY OF ALAMEDA
9

10

| JOSE FELICIANO, ROSALYND | ) | Civil Case No. RG-11565653 |

11 | CEBALLOS, CHARMAINE MANZO,
LULLE GUTIERREZ MALDONADO,
12 | HUGO RIVERA, MARIO GONZALES,
EDUARDO BENITEZ, JOSE DE JESUS     FIRST AMENDED COMPLAINT FOR
13 | MAGDALENO ROJAS, ADRIAN          DAMAGES AND INJUNCTIVE RELIEF
GONZALEZ,
14

Plaintiffs,
15

vs.
16                                      *Demand Exceeds $25,000*
GMAC MORTGAGE LLC (fka GMAC
17 | MORTGAGE), ARMANDO ROJAS,
and DOES 1-10,
18
Defendants.
19

20        PLAINTIFFS, and each of them, allege the following:

21        1. Plaintiffs JOSE FELICIANO, ROSALYND CEBALLOS, CHARMAINE MANZO,

22 | LUIS GUITERREZ, HUGO RIVERA, MARIO GONZALES, EDUARDO BENITEZ are, and at

23 | all times were, competent adult residents of the City of Oakland, California. Plaintiffs, and each

24 | of them, at all relevant times were residential tenants in apartments owned and/or operated by the

25 | Defendants named herein.

26        2. Defendant ARMANDO ROJAS is a competent adult who is doing business in

27 | Oakland, Alameda County, California and at all times relevant herein was the landlord and

28 | owner of a three unit residential property located at 1243-1249-1251 76th Avenue, Oakland,

---

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                    1

1 California (subject property) until on or about September 2010.

2    3. Defendant GMAC MORTGAGE LLC (fka GMAC MORTGAGE) (hereafter GMAC

3 MORTGAGE LLC) is a Limited Liability Company authorized to do business in the State of

4 California.  Since on or about September 2010, Defendant GMAC MORTGAGE LLC has owned

5 and managed the subject property.

6    4. This action is filed in this county because the acts occurred here, Plaintiffs were

7 injured here and Defendants do business in this county.

8    5. Plaintiffs do not know the true names and capacities of Defendants sued herein as

9 DOES 1-10, and therefore sues these Defendants by such fictitious name.  Plaintiffs will amend

10 this complaint to the true names and capacities of said Defendants when they have been

11 ascertained.

12    6. At all times relevant herein, Defendants, and each of them, were the servant, employee,

13 partner, franchisee, joint venturor, sublessor, sublesee, operator, manager, and/or agent of the

14 other and committed the acts and omissions herein alleged within the course and scope of said

15 relationship.

16    7.  Plaintiffs are informed and believe and thereon allege that at all relevant times,

17 Defendants were Plaintiffs' landlords, and Plaintiffs were tenants of Defendants, as "landlord"

18 and "tenant" are defined under California common law, under §1161 et seq. of the California

19 Code of Civil Procedure, under §1980 of the California Civil Code, and under the Oakland

20 Municipal Code, Chapter 8.22, commonly known as the Oakland Rent Ordinance (hereinafter

21 "Rent Ordinance")

22    8.  Plaintiffs, and each of them, resided as a lawful residential tenant at the subject

23 property owned and managed by Defendants and were all subjected to the unlawful conduct and

24 action of Defendants as described herein.

25    9. Plaintiffs JOSE FELICIANO and ROSALYND CEBALLOS took possession of their

26 subject unit (1249 - 76th Avenue, Oakland, California) at the subject property in or about

27 November 2009 pursuant to a verbal agreement with Defendant ARMANDO ROJAS.  Their rent

28 was $1000 per month.

1    10. Plaintiffs CHARMAINE MANZO and LUIS GUITERREZ took possession of their

2    subject unit (1243 - 76th Avenue, Oakland, California) at the subject property in or about

3    November 2009 pursuant to a verbal agreement with Defendant ARMANDO ROJAS. Their rent

4    was $1000 per month.

5    11. Plaintiffs HUGO RIVERA, MARIO GONZALES, EDUARDO BENITEZ, JOSE DE

6    JESUS ROJAS and ADRIAN GONZALEZ took possession of their subject unit (1251 - 76th

7    Avenue, Oakland, California) at the subject property in or about September 2008 pursuant to a

8    verbal agreement with Defendant ARMANDO ROJAS. Their rent was $1300 per month.

9    12. During all the Plaintiffs' tenancies, there have been substantial habitability defects

10    and dangerous conditions which exist and have existed at the subject units and subject property

11    that together and individually constitute violations of the rental agreements between Plaintiffs

12    and Defendants, as well as violations of applicable housing and residential tenancy laws,

13    including but not limited to the Uniform Housing Code, Civil Code §§1714; 1927; 1941 et seq.;

14    1942 et seq. and 3479, and California Health and Safety Code §§17910 and 17920.3, Oakland

15    Building Maintenance Code (OBMC) and numerous other code violations.

16    13. These substantial habitability defects and code violations have existed in each of the

17    Plaintiffs' respective units and common areas of the subject property including but not limited to

18    the following:  substantial habitability defects and code violations have existed in each of

19    Plaintiffs' respective units and common areas of the subject property including but not limited to

20    the following: defective and missing doors and windows; defective and missing door and

21    window locks; defective windows; defective flooring; defective walls; defective ceilings;

22    defective plumbing and defective plumbing fixtures; defective electrical system; defective

23    heating systems; faulty, shoddy and non conforming construction installation and repair; water

24    leaks and intrusion; peeling paint; exposed and nonconforming electrical wiring; inoperative and

25    missing smoke detectors; sewage backups and leaks; unsanitary and filthy conditions; unsafe

26    conditions; pest infestation; unsafe and non conforming stairs, steps and handrails; holes in

27    walls; dilapidated and defective roof, rain gutters and down spouts.

28    14. Plaintiffs complained to Defendants and their agents about the defects affecting the

1   habitability and security of their buildings, but Defendants failed to effectively repair the

2   buildings, or to otherwise render the subject property and units habitable.  At all times relevant to

3   each cause of action herein, and at all times during their tenancies, Plaintiffs have performed

4   each and every obligation required under the rental agreements and by law.  None of the

5   defective conditions were caused by acts or omissions of Plaintiffs or the wrongful or abnormal

6   use of the premises by Plaintiffs or anyone acting under Plaintiffs' authority.

7       15. Plaintiffs notified Defendants about the defects affecting the habitability of Plaintiffs'

8   unit and subject premises, thus Defendants had both actual and constructive knowledge of the

9   conditions and defects complained of herein by Plaintiffs, and despite said knowledge,

10  Defendants refused and failed to correct the defects, performed shoddy, inadequate repairs and/or

11  deliberately delayed making for an unreasonable amount of time.

12      16. Plaintiffs, and each of them, allege that Defendant GMAC MORTGAGE LLC sought

13  to circumvent the law and Rent Ordinance protections through the creation of intolerable

14  conditions for existing tenants and failure to make necessary repairs, that Defendant engaged in

15  said acts calculated to circumvent the Rent Ordinance, statutory law, and common law, to

16  improperly and illegally endeavor to recover possession of the premises, to improperly and

17  illegally evict the Plaintiffs from the premises and to improperly and illegally recover possession

18  of the subject premises.

19      17. Plaintiffs have suffered, and the Defendants' actions and inactions set forth herein

20  have directly and proximately caused, damages including but not limited to the following: loss of

21  use and enjoyment of rent controlled property; payment of excessive rent; diminished value of

22  rent controlled property; severe physical, mental, and emotional pain, injury, and distress,

23  including, but not limited to, physical injury, shock, headaches, anxiety, insomnia, nervousness,

24  fatigue, embarrassment, humiliation, discomfort, and annoyance; and all to their general damage

25  in an amount to be proven.

26      18.  Defendants engaged in the above described conduct with the knowledge that the

27  conduct was without right or justification and without regard for the fact that it would cause

28  injury to Plaintiffs.  Defendant GMAC Mortgage LLC also engaged in the above-described

1  conduct as part of a business plan designed and intended to cause the Plaintiffs to vacate their

2  units. Defendants' conduct was malicious, oppressive and fraudulent and done with the intent to

3  maximize income from the subject premises notwithstanding Defendants' obligations to

4  Plaintiffs and to the general public by virtue of Plaintiffs' statutory and common law rights.

5  Plaintiffs are therefore entitled to punitive damages.

6  <u>FIRST CAUSE OF ACTION</u>
(Violation of the Rent Ordinance - Oakland Municipal Code Chapter 8.22 et seq)
7  (Against Defendant GMAC MORTGAGE LLC only)

8      Plaintiffs reallege and incorporate all previous paragraphs of this complaint as though

9  fully set forth herein.

10      19. The above-described conduct of Defendant GMAC MORTGAGE LLC  was part of a

11  business plan intended to displace plaintiffs from their rent controlled subject units in a manner

12  not permitted under the Rent Ordinance, Chapter 8.22 et seq, 8.22.100 seq, 8.22.100 et seq.

13      20. As a direct and proximate result of Defendant GMAC MORTGAGE LLC's violation

14  of the Rent Ordinance, Chapter 8.22 et seq, 8.22.100 seq, 8.22.100 et seq, as alleged herein,

15  Plaintiffs have suffered damages as is heretofore set forth.

16      21. Chapter 8.22.300(a)(2) of the Rent Ordinance provides for an award of not less than

17  three times the actual damages for violation of Chapter 8.22.300 et seq and Plaintiffs are entitled

18  to not less than three times their actual damages.  Defendant GMAC MORTGAGE LLC's

19  conduct, as heretofore alleged, was willful and in conscious disregard for the rights of Plaintiffs,

20  and Plaintiffs are also entitled to three times their damages for emotional distress.

21      22. Chapter 8.22.300(a)(2) of the Rent Ordinance provides for the award of reasonable

22  attorney's fees and costs to the prevailing party to any action brought under this section.

23  Plaintiffs are thereby entitled to a reasonable attorney's fees and costs.

24  <u>SECOND CAUSE OF ACTION</u>
(Breach of Implied Covenant of Quiet Enjoyment -- Contract)
25
Plaintiffs reallege and incorporate into this cause of action all previous paragraphs of this
26
complaint as though fully set forth herein.
27
    23. The rental agreement between each Plaintiff and Defendants contain an implied
28

1    covenant that Plaintiffs have the quiet use and enjoyment of their respective premises.

2    24. Defendants breached this covenant by engaging in the conduct heretofore described.

3    Defendants are therefore are liable to Plaintiffs for all detriment proximately caused thereby.

4    25. As a direct and proximate result of said conduct and action Plaintiffs have been

5    damaged as is heretofore set forth.

THIRD CAUSE OF ACTION
(Breach of Implied Covenant of Quiet Enjoyment -- Tort)

Plaintiffs reallege and incorporate into this cause of action all previous paragraphs of this

complaint as though fully set forth herein.

26. The rental agreement between each Plaintiff and Defendants contain an implied

covenant that Plaintiffs have the quiet use and enjoyment of their respective premises.

Defendants breached this covenant by engaging in the conduct heretofore described.

Defendants are therefore liable to Plaintiffs for all detriment proximately caused thereby.

27. As a direct and proximate result of said conduct and action Plaintiffs have been

damaged as is heretofore set forth.

28. Plaintiffs are entitled to punitive damages under this cause of action.

FOURTH CAUSE OF ACTION
(Nuisance)

Plaintiffs reallege and incorporate into this cause of action all previous paragraphs of this

complaint as though fully set forth herein.

29. The conduct of Defendants, including harassment, and the conditions at Plaintiffs'

respective premises substantially interfered with the comfortable enjoyment of property and

thereby constituted a nuisance.

30. As a direct and proximate result of Defendants' conduct and action, Plaintiffs have

been damaged as is heretofore set forth.

31. Plaintiffs are entitled to punitive damages under this cause of action.

FIFTH CAUSE OF ACTION
(Breach of Contract)

Plaintiffs reallege and incorporate into this cause of action all previous paragraphs of this

1  complaint as though fully set forth herein.

2      32. At least one Plaintiff, in each subject unit entered into a written residential rental

3  agreement on behalf of the other Plaintiffs in that unit.  The agreements contain implied

4  covenants including, but not limited to the following: an implied warranty of habitability, an

5  implied covenant of quiet use and enjoyment and an implied covenant of good faith and fair

6  dealing.  Plaintiffs all took possession of their subject units pursuant to their written rental

7  agreement.  Plaintiffs performed all obligations under the rental agreement except those

8  obligations for which they were excused or were prevented from performing.

9      33. In committing the acts complained of above, Defendants materially breached the

10  express and implied terms of the written contracts and oral agreements between Plaintiffs and

11  Defendants, and caused the damages and injuries to Plaintiffs complained of above.

12  SIXTH CAUSE OF ACTION<br>(Negligence)

13

14      Plaintiffs reallege and incorporate into this cause of action all previous paragraphs of this

15  complaint as though fully set forth herein.

16      34. Defendants, as Plaintiffs' landlords or agents of their landlords, had a duty at law to

17  provide Plaintiffs with premises meeting minimum standards of habitability and security, and

18  they had a duty not to harass Plaintiffs and to allow Plaintiffs' peaceful and quiet enjoyment of

19  the premises.

20      35. Defendants, by committing the acts heretofore alleged, breached this duty.

21      36. As a direct and proximate result of said breach of duty, Plaintiffs have suffered

22  damages as is heretofore set forth.

23  SEVENTH CAUSE OF ACTION<br>(Intentional Infliction of Emotional Distress)

24      Plaintiffs reallege and incorporate into this cause of action all previous paragraphs of this

25  complaint as though fully set forth herein.

26      37. The acts of Defendants, as heretofore alleged were extreme and outrageous and done

27  with conscious disregard for the rights of Plaintiffs and with the intent to harm Plaintiffs.

28  Defendants knew that the above-described conduct would adversely affect them, had the

1    wherewithal to avoid the conduct, yet consciously failed and refused to do so.

2    38. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and

3    continue to suffer severe mental, emotional and physical distress, pain, suffering all to Plaintiffs'

4    general damages in an amount to be proven at trial.

5    39. Plaintiffs are entitled to punitive damages under this cause of action.

6                          NINTH CAUSE OF ACTION
                          (Violation of Civil Code §1941.3)

7    Plaintiffs reallege and incorporate into this cause of action all previous paragraphs of this

8    complaint as though fully set forth herein.

9    40. There have been defective door and window locks in the subject units in violation of

10    Civil Code §1941.3.

11    41. As a proximate result of the acts and omissions of the Defendants and/or their agents,

12    as set forth above, Plaintiffs, pursuant to Civil Code §1941.3, are entitled to actual damages

13    according to proof, statutory damages in an amount up to $1,000.00, for each violation of the

14    statute and reasonable attorney's fees.

15                          TENTH CAUSE OF ACTION
                          (Unfair Business Practices)
16                  (Against Defendant GMAC MORTGAGE LLC only)

17    Plaintiffs reallege and incorporate into this cause of action all previous paragraphs of this

18    complaint as though fully set forth herein.

19    42. The conduct of Defendant Defendant GMAC MORTGAGE LLC as heretofore

20    described constitutes a business practice intended to cause the tenants, including the Plaintiffs, to

21    vacate their units.  Said conduct violates Plaintiffs' rights under the Rent Ordinance, and Civil

22    Code Section 1927.  As such, Defendant Defendant GMAC MORTGAGE LLC's conduct is an

23    unlawful business practice within the meaning of Business and Professions Code Section 17200.

24    43. Plaintiffs are entitled to injunctive relief preventing the use by Defendant GMAC

25    MORTGAGE LLC s of any unfair or unlawful means that would have the probable effect of

26    denying Plaintiffs their right to quiet use possession and enjoyment of the premises.

27    44. Plaintiffs hereby request injunctive relief preventing Defendant GMAC MORTGAGE

28

1  LLC from engaging in any of the conduct alleged herein.

2  WHEREFORE Plaintiffs pray for judgment as follows:

3      A. For general and special damages, in the amount of $500,000 or according to proof, for

4  each cause of action;

5      B. For punitive damages according to statute and according to proof;

6      C. For compensatory damages for losses resulting from humiliation, mental anguish and

7  emotional distress according to proof;

8      D. For treble damages under the First Cause of Action;

9      E.  For medical and incidental expenses, past, present and future, according to proof;

10     F.  For interest on the amount of losses incurred at the prevailing legal rate;

11     G. For statutory damages according to statute and according to proof;

12     H. For injunctive relief to prohibit the Defendants from engaging in the illegal conduct

13 herein alleged, and for such other injunctive relief as the Court may deem proper;

14     I.  For consequential and incidental damages, including, without limitation, moving and

15 relocation expenses in an amount according to proof;

16     J.  For rental reimbursement in an amount according to proof, plus interest;

17     K.  For costs and reasonable attorney's fees according to ordinance and statute; and

18     L.  For such other and further relief which their Court deems just and proper

19

20                           GREENSTEIN & McDONALD

21

22  DATED: February 14, 2012
                           _____
23                           STEVEN J. McDONALD
                             JAYMEE FAITH CADIZ SAGISI
                             Attorneys for Plaintiffs

24

25

26

27

28

---

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                    9

1

<u>PROOF OF SERVICE</u>

2

3        I am a citizen of the United States and employed in San Francisco County, California. I
am over the age of eighteen years and not a party to the present action. My business address is
300 Montgomery Street, Suite 621, San Francisco, CA 94104. On this date I served the foregoing
4  documents described as:

5                        **FIRST AMENDED COMPLAINT;**

6  on the interested parties in this action by placing [  ] the original [X] a true copy thereof, enclosed
in a sealed envelope addressed as follows:
7

Mary Kate Sullivan, Esq.                          Armando Rojas
8  Brian Stratton Whittemore, Esq.                   9624 Plymouth Street
Severson & Werson                                  Oakland, CA 94603
9  1 Embarcadero Ctr., Ste. 2600
San Francisco, CA 94111
10

11  [  ]     **BY PERSONAL SERVICE:** I delivered such envelope by hand to the office(s) of the
        addressee(s) or directly to the addressee above at another location.
12

13  [x]     **BY MAIL:** I caused such envelope with postage thereon fully prepaid to be placed in the
United States Mail at San Francisco, California to the addressee(s) directly above.

14        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct to the best of my knowledge. Executed on February 14, 2012 at San
15  Francisco, California.

16

17                                                _____
                                          Kari A. Rudd

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2-B

## August 9, 2012 Letter

# GREENSTEIN & McDONALD
## ——————— ATTORNEYS AT LAW ———————

Kenneth M. Greenstein
Steven J. McDonald
Jaymee Faith Cadiz Sagisi
Ariel Gershon

300 Montgomery Street, Suite 621
San Francisco, CA 94104-1908
Telephone: (415) 773-1240
Facsimile: (415) 773-1244

RECEIVED
AUG 1 0 2012
SEVERSON & WERSON

August 9, 2012

Norman S. Rosenbaum, Esq.
Morrison and Foerster, LLP
1290 Avenue of the Americas
New York, NY 10104

Brian Whittemore, Esq.
Severson & Werson
1 Embarcadero Ctr., Ste. 2600
San Francisco, CA 94111

Re:    Feliciano, et al., v. GMAC Mortgage, LLC, et al.,
       Case No. RG-11-565653, Alameda County Sup. Ct.

Counsel,

This responds to your letter dated August 6, 2012. We have been consulting with
bankruptcy counsel on the Feliciano, et al., v. GMAC Mortgage, LLC, et al., matter. It is
clear that your client's proposed substantial work, temporary relocation, etc. are directly
related to the claims brought forth in the pending lawsuit and are beyond the matters
undertaken in the ordinary course of business by GMAC Mortgage, LLC's.

Accordingly, it is our position that GMAC Mortgage, LLC must obtain the
Bankruptcy Court's approval to enter into an agreement with the tenant Plaintiffs, to
authorize the specific terms of the same and to establish the specific remedies should any
party thereafter breach such agreement. Further, there must be some assurances in place
for Plaintiffs to temporary relocate from the premises in light of the history of inaction by
Defendant GMAC Mortgage, LLC, the stayed status of Plaintiffs' case which affords no
present relief in the event of further damage and/or injury to Plaintiffs, and the pending
Bankruptcy proceedings .

Plaintiffs proposed terms of said agreement shall, include but are not limited to
the following:
• The landlord's agreement to obtain all the necessary permits before tenants'
       vacate, with a copy of the same furnished to tenants and/or their counsel;

Norman S. Rosenbaum, Esq.
Brian Whittemore, Esq.
August 9, 2012
Page 2 of 3

- A description of the work to be done in each unit and a reasonable approximate date when the tenant can reoccupy the unit shall be given to the tenant before the date the tenants' vacate;
- The landlord's agreement to in fact perform all of the necessary repairs and bring the premises into habitable condition;
- The landlord's agreement to prepay for moving and storage for the tenants prior to the tenants' vacating the premises. Storage costs will be an ongoing expense paid by landlord on a regular basis as required by the third party vendor;
- The landlord's agreement to prepay for the costs of temporary comparable accommodations which allows for pets in the tenants' respective accommodation, paid on a regular basis as required by the third party vendor;
- In exchange, the tenants' agreement to temporarily relocate for the purposes of allowing the landlord to undertake the proposed work to their respective units;
- If, after the repair work has commenced, it becomes apparent that the work will take longer than 45 days, the landlord must immediately notify the tenants in writing including a statement explaining why the work will take more time and how many days such time entails. In such case, landlord agrees to continue to prepay costs for tenants' extended stay/accommodations;
- Any tenant who vacates the unit for the proposed work shall have the right to re-occupy the unit at the existing rent;
- The renovated units which will be re-occupied by the tenants shall be habitable and free from code violations;
- Immediately upon completion of the proposed work, the landlord must advise the displaced tenants (via counsel) in writing that the unit is ready for re-occupancy. If the landlord fails to allow a displaced tenant to reoccupy the premises within a week, the tenant may seek immediate enforcement of the agreement and reasonable attorneys fees;
- In any legal action brought by either party to enforce the terms hereof or relating to the property, the prevailing party shall be entitled to all costs incurred in connection with such action including reasonable attorney's fees;
- If the landlord refuses to make any of the payments related to tenant's storage or accommodations, the tenants may choose to make the payment and then seek immediate relief from the Bankruptcy Court for costs and reasonable attorneys fees;

Norman S. Rosenbaum, Esq.
Brian Whittemore, Esq.
August 9, 2012
Page 3 of 3

- If the tenant refuses to comply with any terms hereof, landlord may seek immediate relief from the Bankruptcy Court for costs and reasonable attorneys fees;
- Nothing in this agreement shall be construed as a waiver of rights by tenants under state and/or local laws involving their tenancy, including their right of possession;
- Nothing in this agreement shall be construed as a waiver of rights by landlord under state and/or local laws.

Please let us know if you are amenable to the above and we will draft the agreement for your review.

Sincerely,

Steven J. McDonald
Jaymee Faith Cadiz Sagisi

# EXHIBIT 2-C

## August 6, 2012 Letter

**MORRISON | FOERSTER**

1290 AVENUE OF THE AMERICAS
NEW YORK, NY  10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

Writer's Direct Contact
212.506.7341
NRosenbaum@mofo.com

**By E-mail (sjm@greensteinmcdonald.com)**

August 6, 2012

Steven J. McDonald, Esq.
Greenstein & McDonald
300 Montgomery Street, Suite 621
San Francisco, CA 94104

Re:    *Jose Feliciano, et al. v. GMAC Mortgage LLC, et al.*
       Alameda County Superior Court Case No. RG11565653 (the "**Case**")

Dear Mr. McDonald:

I write on behalf of Residential Capital, LLC ("**ResCap**") and certain of its direct and indirect subsidiaries, including GMAC Mortgage LLC ("**GMACM**" and, collectively, the "**Debtors**"). As you are aware, on May 14, 2012, the Debtors filed petitions for relief under chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The Debtors' cases are being jointly administered under case number 12-12020 (MG).  We serve as counsel to the Debtors.

ny-1052118

MORRISON | FOERSTER

Steven J. McDonald, Esq.
August 6, 2012
Page Two

Reference is made to your e-mail dated on or around July 23, 2012 to Mr. Brian Whittemore, requesting written evidence of the authority of the Debtors to perform remediation activities with respect to residential property located at 1243-1249-1251 76W Avenue, Oakland, California (the "**Property**"), including paying for repairs and for the cost of relocations of the Property's current tenants, as set forth in the confirmation letter from Mr. Alex Peters and Mr. Whittemore to you, dated July 6, 2012 (the "**Confirmation Letter**").

While the Debtors do not have specific authority from the Bankruptcy Court to perform the remediation, as described below, the Debtors are by express provisions of the Bankruptcy Code authorized to operate their businesses in the ordinary course.

The Debtors are managing and operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Bankruptcy Code section 1108 provides that, "[u]nless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business." 11 U.S.C. § 1108. Bankruptcy Code section 1107(a) in turn provides, in relevant part, that, "a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). Pursuant to those provisions, the Debtors are authorized to operate their businesses as a matter of course without further order of the Bankruptcy Court.

Furthermore, section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating under section 1108 of the Bankruptcy Code to enter into transactions in the ordinary course of business without the need for notice or a hearing. The Debtors were also granted express authority to continue operating any real estate they own (referred to as "REO") in the ordinary course pursuant to paragraph 6 of the *Final Order Under Sections 105(a), 362, 363, 1107(a) and 1108 of the Bankruptcy Code (I) Authorizing the Debtors to Continue in the Ordinary Course of Business (A) Servicing Non-Governmental Association Loans, and (B) Sale Activities Related to Certain Loans in Foreclosure and Real Estate Owned Property, and (II) Granting Limited Stay Relief to Enable Borrowers to Assert Direct Claims and Related Counter-Claims in Foreclosure and Eviction Proceedings* [Docket No. 402], a copy of which is enclosed for your reference. In the ordinary course of business, mortgage loan servicers like the Debtors repair and maintain their REO, and pay expenses incurred as a result of such maintenance.

The Property constitutes the Debtors' REO. In light of the express statutory authority of the Debtors to operate the Property and enter into ordinary course transactions related to the Property, and in the absence of any order of the Bankruptcy Court that would prohibit the Debtors from taking the actions agreed to in the Confirmation Letter, we do not believe any further Bankruptcy Court order or authorization is required.

ny-1052118

**MORRISON | FOERSTER**

Steven J. McDonald, Esq.
August 6, 2012
Page Three


The Debtors reserve, and this letter shall in no way prejudice, any and all of their rights, claims, remedies, or defenses with respect to the Case.

Please do not hesitate to contact me with any questions or concerns.


Very truly yours,

Norman S. Rosenbaum


cc:    Brian Whittemore, Esq.


Encl.

ny-1052118

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) |
| | ) |
| Debtors. | ) |
| | ) |

Case No. 12-12020 (MG)

Chapter 11

Jointly Administered

**FINAL ORDER UNDER SECTIONS 105(a), 362, 363, 1107(a) AND 1108
OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO
CONTINUE IN THE ORDINARY COURSE OF BUSINESS (A) SERVICING
NON-GOVERNMENTAL ASSOCIATION LOANS, AND (B) SALE ACTIVITIES
RELATED TO CERTAIN LOANS IN FORECLOSURE AND REAL ESTATE OWNED
PROPERTY, AND (II) GRANTING LIMITED STAY RELIEF TO ENABLE
BORROWERS TO ASSERT DIRECT CLAIMS AND RELATED COUNTER-CLAIMS
IN FORECLOSURE AND EVICTION PROCEEDINGS**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of interim

and final orders, under Bankruptcy Code sections 105(a), 362, 363, 1107(a), and 1108 and

Bankruptcy Rule 6003, (i) authorizing, but not directing, the Debtors to continue in the ordinary

course of business (a) servicing Non-GA Loans, and (b) sale activities related to certain loans in

foreclosure and real estate owned property, including authorizing the sale of such property free

and clear of liens, claims, and encumbrances pursuant to section 363(f) of the Bankruptcy Code,

and (ii) granting limited stay relief to enable borrowers or their tenants, as applicable, to assert

related counter-claims in foreclosure and eviction proceedings; and the Court having considered

the Whitlinger Affidavit; and the Court having entered an interim order on May 16, 2012

granting the Motion on an interim basis (the "Interim Order"); and it appearing that this Court

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
granted herein may refer to http://www.kccllc.net/rescap for additional information.

1212020120615000000000000025

has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing

that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28

U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core

proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion having been

given; and it appearing that no other or further notice need be provided; and the Court having

considered the responsive pleading filed by the Committee; and upon the record of the Final

Hearing; and the Court having entered the Final GA Servicing Order;[2] and it appearing that the

relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and after due deliberation thereon; and sufficient cause appearing

therefor, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED, as set forth herein, and any objections to the

Motion are overruled.

Servicing of Non-GA Loans

2.      The Debtors are authorized, but not directed, in their sole discretion and

subject to available funding, to continue servicing Non-GA Loans in the ordinary course,

including, but not limited to:

(a)     performing the Servicing Functions and honoring all obligations arising under the
        Non-GA Servicing Agreements;

---

[2]     "Final GA Servicing Order" means this Court's *Final Order Under Sections 105(a), 361, 362, 363, 1107(a),
        And 1108 Of The Bankruptcy Code (I) Authorizing The Debtors To Continue In The Ordinary Course Of
        Business (A) Servicing Governmental Association Loans And (B) Foreclosure Activities Related To Certain
        Real Estate Owned By Fannie Mae, Freddie Mac, And Ginnie Mae; (II) Authorizing The Debtors To Pay
        Certain Prepetition Amounts Due To Critical Servicing Vendors And Foreclosure Professionals; (III) Granting
        Limited Stay Relief To Enable Borrowers To Assert Direct Claims And Related Counter-Claims In Foreclosure
        And Eviction Proceedings; (IV) Authorizing The Debtors To Use Cash Collateral Under The Fannie Mae EAF
        Facility; And (V) Granting Related Relief* [Docket No. __].

ny-1016748

(b)    making all Advances related to the Non-GA Loans in accordance with the applicable Non-GA Servicing Agreement; and

(c)    entering into loan modifications and Deferment and Forbearance Arrangements, including participating in HAMP;

provided, that, absent further order of the Court, the Debtors shall not sell or otherwise transfer any Non-GA Loan while such loan is the subject of a trial period plan under HAMP.

3.    For the avoidance of doubt, to the extent payments made by the Debtors in connection with servicing of Non-GA Loans constitute payments on account of prepetition claims of Critical Servicing Vendors (as defined in the Final GA Servicing Order), such payments will be subject to the Critical Vendor Payment Terms (as defined in the Final GA Servicing Order) and the Critical Claims Cap (as defined in the Final GA Servicing Order).

4.    The Debtors are authorized to honor their obligations under the Consent Order, the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012 (the "Order of Assessment"), and the DOJ/AG Settlement in connection with the Servicing Functions, and to use estate assets and take such actions as, in their reasonable business judgment, are necessary to comply with and adhere to the terms of the Consent Order, Order of Assessment, and the DOJ/AG Settlement; provided however, subject to the terms and conditions of the Settlement and Plan Sponsor Agreement, dated May 14, 2012, by and among Residential Capital, LLC and its debtor subsidiaries, and AFI, on behalf of its subsidiaries and affiliates other than the Debtors and their subsidiaries, such compliance shall be without prejudice to any claims or causes of action the Debtors or any party-in-interest (including the Committee) may assert against AFI for past or future costs of such compliance ("Compliance Claims"), including, without limitation, claims for contribution, and/or indemnification arising directly or indirectly, by contract or under common law, through subrogation or otherwise, which for the avoidance of doubt are expressly

ny-1016748

preserved herein; provided, further, however, AFI preserves all rights in connection with, and

may contest, any Compliance Claim on any and all bases and preserves all rights to bring

counterclaims against the Debtors for Compliance Claims, including (a) that the Debtors' costs

in connection with the Compliance Claims are administrative expenses of the Debtors' estates

pursuant to 11 U.S.C. 503(b) and (b) that AFI is relying on the Debtors' costs of compliance in

its decision to support operationally and financially the Debtors' efforts to sell the assets of the

Debtors' estates on a going concern basis and maximize the value of the estates.  The Debtors are

further authorized to implement new servicing standards and procedures and to perform reviews

of their past foreclosure proceedings and reports regarding the results of such reviews, in each

case as may be required to comply with the Consent Order, Order of Assessment, and the

DOJ/AG Settlement.

   5.  Nothing set forth in this Order or in the Motion shall alter the Debtors'

obligations under the Consent Order, the Order of Assessment or the DOJ/AG Settlement.

Non-GA Loans in Foreclosure and REO

   6.  The Debtors are authorized, but not directed, in their sole and absolute

discretion and subject to available funding, to continue servicing Non-GA Loans in foreclosure

and REO in the ordinary course, including, but not limited to:

  (a)  selling Non-GA Loans in foreclosure and REO free and clear of any and all liens, claims, and encumbrances pursuant to section 363(f) of the Bankruptcy Code);

  (b)  paying foreclosure professionals' (including default counsel) and brokers' fees, as applicable, in the ordinary course of business in connection with respect to the Non-GA Foreclosure Sales and REO sales;

  (c)  making Advances related to the Non-GA Loans in foreclosure and REO in accordance with the relevant loan servicing agreements or other governing documents;

4

ny-1016748

(d)     distributing proceeds from the sale of Non-GA Loans in foreclosure and REO in accordance with the relevant loan servicing agreements or other governing documents; and

(e)     refunding overpayments to purchasers of Non-GA Loans in foreclosure and REO, as appropriate.

7.     To the extent that any lien, claim or encumbrance exists on the Non-GA Loans in foreclosure or REO, as applicable, such lien, claim or encumbrance shall attach to the proceeds of the sale in the order of priority and with the same validity, force and effect that such lien, claim or encumbrance may have against the Non-GA Loans in foreclosure or REO at the time of the sale.

8.     Nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any foreclosure professionals' and brokers' fees that may be requested.

9.     Nothing herein shall be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement with any foreclosure professional or broker, or to require the Debtors to make any of the payments to any foreclosure professional or broker authorized herein.

10.     The Debtors shall file monthly operating reports disclosing, in summary format, all Debtor-owned REO sales and Non-GA Foreclosure Sales of Debtor-owned property closed subsequent to the Petition Date and the associated costs, to the extent allocable; provided, however, that the Debtors shall provide periodic reports to the Committee and the Office of the United States Trustee for the Southern District of New York at such intervals as agreed upon between the Debtors and the Committee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning such sales.

5

ny-1016748

<u>Limited Borrower Relief from Automatic Stay</u>

11.     The extent to which the stay imposed by section 362(a) of the Bankruptcy
Code is modified to enable (a) borrowers to assert and prosecute counter-claims related to the
subject matter of the foreclosure complaint in connection with foreclosure proceedings, and
(b) tenants to assert and prosecute counter-claims related to the subject matter of the eviction
complaint in connection with eviction proceedings for which the underlying property is the
subject of a foreclosure proceeding or has been foreclosed upon shall be governed in all respects
by this Court's *Supplemental Order For Interim Relief Under Bankruptcy Code Sections 105(a),
362, 363, 502, 1107(a), And 1108 And Bankruptcy Rule 9019 (I) Authorizing The Debtors To
Continue Implementing Loss Mitigation Programs; (II) Approving Procedures For Compromise
And Settlement Of Certain Claims, Litigations And Causes Of Action; (III) Granting Limited
Stay Relief To Permit Foreclosure And Eviction Proceedings, Borrower Bankruptcy Cases, And
Title Disputes To Proceed; And (IV) Authorizing And Directing The Debtors To Pay
Securitization Trustee Fees And Expenses* [Docket No. 391] (the "<u>Interim Supplemental Order</u>")
and any final order of the Court granting such relief (together with the Interim Supplemental
Order, the "<u>Supplemental Order</u>") and the Supplemental Order shall supersede paragraph 10 of
the Interim Order in its entirety.

<u>Other Relief</u>

12.     The Debtors are authorized and empowered to take all actions and execute
such documents as may be necessary or appropriate to carry out the relief granted herein.

13.     Nothing herein shall be deemed to limit the rights of the Debtors to
operate their business in the ordinary course, and no subsequent order shall be required to
confirm such rights.

ny-1016748

14.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

15.     Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral order or debtor in possession financing order entered in these chapter 11 proceedings.  All amounts authorized to be paid pursuant to this Order are subject to the limitations and restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement).  To the extent that there is any inconsistency between the terms of this Order and the terms of any order relating to postpetition financing or cash collateral or the Supplemental Order, the terms of the orders relating to postpetition financing or cash collateral or the Supplemental Order, as applicable, shall govern.

16.     Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

7

17.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

18.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this

Order shall be effective and enforceable immediately upon entry hereof.

19.    This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.

Dated:    June 15, 2012
          New York, New York


              **/s/Martin Glenn**
              MARTIN GLENN
              United States Bankruptcy Judge

8