**Hearing Date and Time: December 20, 2012 at 10:00 a.m.**
                       **Objection Deadline: To Be Determined**

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:   (212) 541-5369

*Counsel for the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al.,[1] | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**FIRST INTERIM FEE APPLICATION OF CHADBOURNE & PARKE LLP,
COUNSEL TO THE EXAMINER, FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD JULY 11, 2012 THROUGH AND INCLUDING AUGUST 31, 2012**

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services To: | The Examiner |
| Date of Retention: | August 9, 2012, *nunc pro tunc* to July 11, 2012 |
| Period for Which Compensation and Reimbursement is Sought: | July 11, 2012 through August 31, 2012 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $3,295,849.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $ 127,003.11 |
| This is a(n):   ____ Monthly | _x_ Interim          ____ Final Application |

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012.  Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

Prior Monthly Fee Statements:

| Date Served | Period Covered | Fees Requested | Expenses Requested | Fees Approved (80%) | Expenses Approved |
|---|---|---|---|---|---|
| 9/28/2012 * | 7/11/2012 - 8/31/2012 | $3,295,849.50 | $127,003.11 | $2,636,679.60 | $127,003.11 |

_____

* Both a redacted and unredacted copy of the Monthly Fee Statement were provided to the U.S. Trustee. Chadbourne requested that the U.S. Trustee destroy the unredacted copy of the Monthly Fee Statement following the U.S. Trustee's review.

        **Hearing Date and Time: December 20, 2012 at 10:00 a.m.**
        **Objection Deadline: To Be Determined**

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

*Counsel for the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**FIRST INTERIM FEE APPLICATION OF CHADBOURNE & PARKE LLP, COUNSEL TO THE EXAMINER, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JULY 11, 2011 THROUGH AND INCLUDING AUGUST 31, 2012**

      Chadbourne & Parke LLP ("Chadbourne"), as counsel to the Court-appointed Examiner (the "Examiner") in the Chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits this First Interim Fee Application (the "Application"), for Allowance of Compensation and Reimbursement of Expenses For the Period July 11, 2012 Through August 31, 2012 (the "Application Period"). This Application is submitted pursuant to sections 330, 331 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 17, 2012 (the

"Interim Compensation Order").  In support of the Application, Chadbourne respectfully represents as follows:

## BACKGROUND

1. The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code on May 14, 2012, and the Court authorized joint administration of the cases.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On June 4, 2012, Berkshire Hathaway, Inc. filed a motion (the "Examiner Motion") for the appointment of an examiner pursuant to 11 U.S.C. § 1104(c).  On June 20, 2012, the Court issued a Memorandum Opinion and Order granting the Examiner Motion (the "Memorandum Decision").  On June 28, 2012, the Court entered the Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (the "Examiner Order").

3. On July 3, 2012, the United States Trustee for the Southern District of New York appointed Arthur J. Gonzalez as Examiner in the Chapter 11 Cases, subject to Court approval.  On that same date, the Court entered an order approving the appointment.

4. On July 17, 2012, Arthur J. Gonzalez filed the Application of the Examiner for Order Authorizing the Retention and Employment of Chadbourne & Parke LLP as Counsel to the Examiner *Nunc Pro Tunc* to July 11, 2012.  On August 9, 2012, the Court entered an order (the "Retention Order") approving Chadbourne's retention.

5. Pursuant to the Examiner Order, and in accordance with the Memorandum Decision, the Examiner was directed to conduct an investigation of a scope, timing, and budget to be set by the Court after the Examiner had conferred with other parties in interest.  Examiner

2

Order at p. 2. After the requisite consultations, the Court mandated that the Examiner conduct an investigation covering the topics set forth in the Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner, dated July 27, 2012 (the "Scope Order").

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## COMPLIANCE WITH GUIDELINES AND ORDER GOVERNING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

7.      This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases effective as of December 4, 2009 (the "Local Guidelines") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines" and, together with the Local Guidelines, the "Guidelines"). Pursuant to the Guidelines, a certification regarding compliance with same is attached hereto as Exhibit A.

## SUMMARY OF APPLICATION

8.      Chadbourne seeks compensation for professional services rendered to the Examiner during the Application Period in the aggregate amount of $3,295,849.50 and reimbursement of actual and necessary expenses incurred in connection with the rendition of services during the Application Period in the aggregate amount of $127,003.11. During the Application Period, Chadbourne attorneys and paraprofessionals expended a total of 5,102.00 hours for which compensation is requested.

3

9. A summary of the hours spent, the names of each professional and paraprofessional rendering services to the Examiner during the Application Period, the regular customary billing rates and the total value of time incurred by each of Chadbourne's professionals and paraprofessionals rendering services to the Examiner is attached hereto as Exhibit B.

10. A summary of the actual and necessary expenses incurred by Chadbourne is attached as Exhibit C which provides itemized expense detail.

11. Pursuant to the UST Guidelines, a schedule setting forth a description of the project categories utilized in this case, the number of hours expended by Chadbourne partners, associates and paraprofessionals by project category, and the aggregate fees associated with each project category is attached hereto as Exhibit D.

12. Chadbourne maintains computerized records of the time spent by all professionals and paraprofessionals rendering services to the Examiner during the Application Period. Redacted copies of these computerized records are attached hereto as Exhibit E.

## SUMMARY OF SERVICES DURING THE APPLICATION PERIOD

13. As set forth in the detailed computerized records attached hereto as Exhibit E, fees incurred by Chadbourne during the Application Period total $3,295,849.50. The services rendered by Chadbourne during the Application Period are grouped into specific project categories as set forth in Exhibit D. The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

14. The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

### A.     Case Administration/General Bankruptcy Matters

Fees: $187,831.50        Total Hours: 337.80

15.     This category consists of time spent on matters related to the investigation on behalf of the Examiner that are not within the scope of other categories. These tasks included (i) daily monitor and retrieval of all newly filed pleadings from the Bankruptcy Court's docket and preparation and distribution of related status reports; (ii) assist attorneys in preparation of papers for electronic filing; (iii) preparation and daily update of master task list, case calendar and timeline to facilitate the investigation process; (iv) preparation for and attendance at various omnibus hearings and court conferences on behalf of the Examiner; and (v) review and preparation of summaries of pertinent case filings in which the Examiner has an interest.

16.     In addition to the foregoing, during the Application Period, Chadbourne attorneys expended time performing initial diligence in order to understand the circumstances relating to the commencement of these Chapter 11 Cases. This work included reviewing various pleadings and background materials to understand the events leading to the appointment of the Examiner.

17.     Chadbourne also spent time establishing and maintaining a shared drive in order to provide a repository for the numerous documents and pleadings so that they are readily accessible by members of the Chadbourne investigation team. During this period, Chadbourne's document review team became more conversant with certain programs in order to more efficiently facilitate their document review and analysis.

**B.      Report Drafting and Legal Research**

    Fees: $410,205.50          Total Hours:  629.70

18.     The Examiner recognizes the importance of completing his investigation and finalizing his report (the "Report") as soon as possible.  As an initial matter, Chadbourne attorneys reviewed reports submitted by examiners in other chapter 11 cases and determined how it would create the Report to be filed in these cases.  Indeed, given the size and complexity of the transactions, agreements, claims, and issues to be examined, Chadbourne attorneys have begun working on the Report.  During the Application Period, Chadbourne attorneys also undertook a preliminary analysis of the investigation-related facts based upon publicly available information and various documents, including transaction summaries and analyses, produced by certain parties.  Based upon those facts, Chadbourne began its analysis of pertinent legal issues, arising from the relevant transactions and agreements.

**C.      Document Management and Review**

    Fees: $1,231,775.00          Total Hours:  2,133.90

19.     A substantial component of the Examiner's investigation is the ongoing comprehensive review of all documents and materials produced by the parties that are relevant to the investigation.  Following the Bankruptcy Court's entry of the Scope Order, the parties produced, and continue to produce, documents responsive the Examiner's request.

20.     During the Application Period, Chadbourne attorneys devoted a significant amount of time to the document review.  Chadbourne's efforts in this regard included, but were not limited to, (a) an initial review and analysis of each document produced for relevance to any aspect of the Examiner's investigation, (b) further review and analysis of the relevant documents

6

for use in interviews with parties-in-interest and for use in the Examiner's Report, and (c) analysis and synthesis in connection with transactions, agreements, claims, causes of action and other key issues as set forth in the Scope Order. This process is ongoing.

**D.     Witness Interviews and Discovery**

    Fees: $413,826.50        Total Hours: 571.90

21. In order to facilitate the diligent discharge of his duties in accordance with the Examiner Order, the Examiner filed a motion which requested that the Bankruptcy Court, among other things, (i) grant him the authority to issue subpoenas for the production of documents and the examination of persons pursuant to Rule 2004, (ii) approve the establishment of a document depository and proposed protocols relating to the document depository, and (iii) approve a uniform protective order governing the confidentiality of information placed into the document depository (the "Examiner Discovery Motion"). Accordingly, during the Application Period, Chadbourne attorneys spent time negotiating with numerous case constituencies, drafting, reviewing and revising the Examiner Discovery Motion. Ultimately, several parties objected to the approval of the Examiner Discovery Motion. Chadbourne attorneys reviewed, researched and prepared a response to these objections and also attended a hearing at which the Examiner's position was argued. On August 20, 2012, the Bankruptcy Court entered an order granting the Examiner Discovery Motion.

22. During the Application Period, Chadbourne attorneys and paraprofessionals also devoted substantial time in preparing for the witness interviews. Efforts included, but were not limited to, review and analysis of documents and other case materials to identify potential parties for interviews and discovery; drafting document requests and subpoenas to relevant parties; review and analysis of documents relating to parties to be examined and preparation of interview

outlines/question regarding same. In connection therewith, Chadbourne's team of litigation professionals collaborated with the Examiner's financial advisors on related strategies.

### E. Investigation Planning and Coordination

Fees: $882,780.00        Total Hours: 1,172.10

23. General planning sessions among the Examiner, Chadbourne and the Examiner's financial advisors, Mesirow Financial Consulting ("Mesirow") are critical to the efficient conduct of the Examiner's investigation. These sessions enable the Examiner and the Chadbourne and Mesirow teams to report on and discuss all areas of the investigation, as well as prepare for and coordinate steps going forward. In addition, given the tight timeframe permitted for the investigation and the complexity of the various transactions under review, transaction teams were formed to facilitate the review, analysis and summarization of the various transactions in a timely and efficient manner. During various stages of review, the transaction teams meet routinely to discuss the status of the transaction reviews.

24. During the Application Period, the Examiner also conducted a series of meetings and/or telephonic calls with representatives of the Debtors, the Official Committee of Unsecured Creditors, Berkshire Hathaway, Ally Financial Inc., and certain holders of the Debtors' unsecured notes. The principal purpose of the initial round of meetings was to learn more about the cases and to ascertain each party's preliminary views regarding the scope and timing of the investigation. The Examiner invited the parties to share their views on these matters, as well as on the legal and factual issues implicated by the investigation.

25. On July 24, 2012, the Court held a Chambers conference at which the Examiner and Chadbourne and counsel for various parties in interest presented their respective views

regarding the appropriate scope of the investigation and estimates of the time necessary to complete the investigation and prepare a report. After the Chambers conference, the Examiner discussed the terms of the Scope Order with the various parties in interest. Several days later, the Bankruptcy Court entered the Scope Order.

26.  During this time, Chadbourne worked with the Examiner to develop his proposed work plan (the "Examiner Work Plan"). To create the Examiner Work Plan, Chadbourne reviewed and considered the Examiner Order, various pleadings filed regarding the subject matter of the investigation, various non-public documents provided by the parties regarding that subject matter, and the Examiner's discussions with the parties. On August 6, 2012, the Examiner filed the Examiner Work Plan. To address certain inquiries regarding the Examiner Work Plan, the Examiner filed the Examiner Work Plan Supplement on August 23, 2012.

F.   **Fee/Retention Applications**

   Fees: $169,431.00          Total Hours: 256.60

27.  During the Application Period, Chadbourne assisted the Examiner in efforts to retain counsel and financial advisors to assist in his investigation in these Chapter 11 cases. Efforts included a comprehensive conflicts analysis of interested parties and discussions with the United States Trustee and the Examiner to address and resolve any concerns. Chadbourne prepared and filed its application for retention as counsel to the Examiner and supporting disclosure affidavit. During this time, Chadbourne and the Examiner met with several financial advisory firms in order to find a financial advisor to assist the Examiner in his investigation. After speaking with several well-qualified candidates, the Examiner determined that Mesirow would be best suited for the investigation. Subsequently, Chadbourne worked with Mesirow in preparing and filing its application for retention. During this time, Chadbourne expended efforts

9

addressing a potential objection to Chadbourne's retention. In connection therewith, Chadbourne researched and prepared a memorandum analyzing the issues for the Examiner's review.

28.  Lastly, in compliance with the Interim Compensation Order, Chadbourne reviewed fee procedures and confidentiality issues and began preparation of Chadbourne's and the Examiner's first monthly fee statement.

## ACTUAL AND NECESSARY EXPENSES

29.  As set forth in Exhibit C hereto, Chadbourne has incurred $127,003.11 in actual, necessary expenses in providing professional services to the Examiner during the Application Period.

30.  With respect to photocopying expenses, Chadbourne charges all of its clients $.20 per page. With respect to facsimile expenses, in compliance with the Guidelines, Chadbourne does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than $1.25 per page permitted by the Guidelines. Each of these categories of expenses does not exceed the maximum rate set by the Guidelines. These charges are intended to cover Chadbourne's direct operating costs, which costs are not incorporated into Chadbourne's hourly billing rates. Only clients who actually use services of the types set forth in Exhibit C are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services. The amount of the standard photocopying charge is intended to allow Chadbourne to cover the related expenses of its photocopying service. A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis. With respect to word-processing costs, Chadbourne does not

include word processing charges in the firm's overhead for purposes of setting billing rates, nor does Chadbourne seek reimbursement of any word-processing charges in this Application.

31. In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers. Chadbourne uses outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

32. With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services. In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

33. In connection with electronic data discovery services with Complete Document Source Inc. ("CDS"), Chadbourne utilizes the electronic discovery services of CDS in connection with its document review. The CDS charges incurred during the Application Period represent database set-up and processing fees for loading data and/or converting data to a searchable format. In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

34. With respect to court reporter fees, Chadbourne utilized the services of outside vendors for court hearing transcript services and for deposition transcript services. In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

35. Chadbourne attorneys and paraprofessionals also use PACER (Public Access to Court Electronic Records) as a tool to research and obtain vital information about these

Chapter 11 Cases and cases in interest. Chadbourne charges $.10/per page for the first thirty pages, the rate at which Chadbourne is charged by PACER.

36. The time constraints frequently imposed by the circumstances of these cases have required Chadbourne's professionals and other employees at times to devote time during the evenings and on weekends to the performance of legal services on behalf of the Examiner. These extraordinary services were essential in order to meet deadlines and satisfy the demands in connection with the Examiner's investigation of these chapter 11 cases. Consequently, as a result of the physical inability to complete every task required of Chadbourne during ordinary business hours, Chadbourne professionals and paraprofessionals were required to work in the evenings and on weekends. Given the significant demands on Chadbourne professionals and paraprofessionals, Chadbourne has, consistent with firm policy charged the Debtors $1,901.88 for paraprofessional overtime. Also consistent with firm policy attorneys and other employees of Chadbourne who worked late into the evenings or on weekends were reimbursed for their reasonable meal and transportation costs. Chadbourne's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Guidelines.

37. In addition, on several occasions, overnight delivery of documents and other materials was required as a result of emergencies necessitating the use of such express services. These disbursements are not included in Chadbourne's overhead for the purpose of setting billing rates. Chadbourne has made every effort to minimize its disbursements in these cases. The

actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Examiner.

### DETERMINATION OF CHADBOURNE'S REQUESTED FEE

38. In seeking compensation in these Chapter 11 Cases, Chadbourne has utilized its 2012 hourly rate structure in accordance with the Guidelines for the period July 11, 2012 through and including August 31, 2012. For purposes of this Application, Chadbourne has calculated its request for compensation by multiplying (a) the hours of time spent on services rendered on behalf of the Examiner, by (b) the 2012 hourly rate assigned to each attorney or paraprofessional rendering such services. The compensation sought herein is requested without prejudice to Chadbourne's entitlement to seek such additional and reasonable compensation for any additional services rendered in these Chapter 11 Cases at the conclusion thereof upon the filing of an appropriate application therefor.

39. Chadbourne's fees during the Application Period are also reasonable under the prevailing legal standard and should be allowed. The amount of these fees is not unusual given the complexity and size of these Chapter 11 Cases. Chadbourne's fees are commensurate with fees that other attorneys of comparable experience and expertise have charged and been awarded in similar chapter 11 cases. Accordingly, Chadbourne's fees are reasonable pursuant to section 330 of the Bankruptcy Code.[2]

---

[2] Section 330(a)(1) of the Bankruptcy Code allows the payment of:

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. §330(a)(1). Reasonableness of compensation is driven by the "market-driven approach" which considers the nature, extent and value of services provided by the professional and the cost of comparable services in non-bankruptcy contexts. See Zolfo Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253, 258 (3d Cir. 1995); In re Busy Beaver Bldg. Ctr., Inc., 19 F.3d 833, 849 (3d Cir. 1994). Thus, the "baseline rule is for firms to receive their customary rates." Zolfo Cooper, 50 F.3d at 259.

40. Section 330(a)(1)(B) of the Bankruptcy Code permits for reimbursement for actual, necessary expenses. Chadbourne's legal services and expenses incurred during the Application Period constitute only those necessary expenses that were incurred for the benefit of the Debtors' estates. Chadbourne has properly requested reimbursement of only actual, necessary and appropriate legal expenses.

41. Except as permitted by rule 2016 of the Federal Rules of Bankruptcy Procedure, no agreement or undertaking exists between Chadbourne and/or any third person for the sharing or division of compensation. All of the services for which compensation is requested in this Application were rendered at the request of and solely on behalf of the Examiner.

42. Pursuant to the standards set forth in sections 330 and 331 of the Bankruptcy Code, Chadbourne submits that the compensation requested is for actual and necessary services and expenses, and is reasonable, based upon the nature, extent and value of such services, the time spent thereon, and the costs of comparable services in a case under the Bankruptcy Code.

## NOTICE AND NO PRIOR APPLICATION

43. Pursuant to the Interim Compensation Order, notice of this Application has been served upon the following parties (collectively, as further defined in the Interim Compensation Order, the "Notice Parties"): (i) counsel for the Debtors; (ii) the Office of the United States Trustee for the Southern District of New York; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) counsel for Ally Financial Inc.; and (v) counsel for Barclays Bank PLC. In light of the nature of the relief requested herein, Chadbourne submits that no further or other notice is required.

44. No previous application for relief sought herein has been made to this or any other court.

WHEREFORE, Chadbourne respectfully requests that this Court issue and enter an order (i) authorizing compensation in the amount of $3,295,849.50 for professional services rendered and reimbursement of actual and necessary expenses incurred in connection therewith in the amount of $127,003.11, for a total fee and expense request for the Application Period of $3,422,852.61; (ii) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein, less all amounts previously paid on account of such fees and expenses; and (ii) granting such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        October 19, 2012

                                        **CHADBOURNE & PARKE LLP**

                                        By:/s/ *Howard Seife*
                                            Howard Seife
                                            David M. LeMay
                                            30 Rockefeller Plaza
                                            New York, New York 10112
                                            Telephone:  (212) 408-5100
                                            Facsimile:  (212) 541-5369

                                        *Counsel for the Examiner*