Jeffrey S. Powell
Daniel T. Donovan
Judson D. Brown
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C.  20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200


– and –


Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Counsel for Ally Financial Inc. and Ally Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) |
|  | )  Chapter 11 |
| RESIDENTIAL CAPITAL, LLC., et al. | ) |
|  | )  Case No. 12-12020 (MG) |
| Debtors. | ) |
|  | )  Jointly Administered |

---

**NOTICE OF FILING OF ALLY FINANCIAL INC. RESPONSE TO THE COURTS'**
**OCTOBER 16 ORDER ON THE PRODUCTION OF RESCAP LOAN FILES**

---

PLEASE TAKE NOTICE that Ally Financial Inc. ("**AFI**") hereby files *Ally's Response
to the Courts' October 16 Order on the Production of ResCap Loan Files* (the "**Response**"),
which was filed concurrently in *Federal Housing Fin. Agency v. Ally Fin. Inc.*, No. 11 Civ. 7010
(DLC) (S.D.N.Y Oct. 6, 2011).  The Response references an unreported decision.  AFI attaches a
true and correct copy of the decision *JPMorgan Chase Bank v. Winnick*, No. 03 Civ. 8535

(GEL), 2006 WL 278192 (S.D.N.Y. Feb. 6, 2006) referenced in footnote 1 of the Response as

**Exhibit 1** to the Response.


New York, New York                    /s/ Judson D. Brown
Dated: October 19, 2012               Jeffrey S. Powell
                                      Daniel T. Donovan
                                      Judson D. Brown
                                      KIRKLAND & ELLIS LLP
                                      655 15th Street, N.W., Ste. 1200
                                      Washington, D.C.  20005
                                      Telephone:    (202) 879-5000
                                      Facsimile:    (202) 879-5200

                                      − and −

                                      Richard M. Cieri
                                      Ray C. Schrock
                                      Stephen E. Hessler
                                      KIRKLAND & ELLIS LLP
                                      601 Lexington Avenue
                                      New York, New York 10022
                                      Telephone: (212) 446-4800
                                      Facsimile: (212) 446-4900

                                      *Counsel for Ally Financial Inc. and Ally Bank*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – x

FEDERAL HOUSING FINANCE AGENCY,    :
etc.,                                                              11 Civ. 7010 (DLC)

                                                         :

                               Plaintiff,

                                                         :

        – against –

                                                         :

ALLY FINANCIAL INC. f/k/a GMAC, LLC
et al.,                                                   :

                               Defendants.      :

– – – – – – – – – – – – – – – – – – – – x


UNITED STATES BANKRUPTCY  COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – x

In re                                                    :
                                                             12-12020 (MG)
RESIDENTIAL CAPITAL, LLC et al.,          :

                               Defendants.      :

– – – – – – – – – – – – – – – – – – – – x


**ALLY'S RESPONSE TO THE COURTS' OCTOBER 16
ORDER ON THE PRODUCTION OF RESCAP LOAN FILES**

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ................................................................................................1

ARGUMENT ........................................................................................................................5

I.     AFI DOES NOT HAVE POSSESSION, CUSTODY OR CONTROL OVER
THE LOAN FILES. .................................................................................................5

        A.     The Shared Services Agreement Does not Give AFI Control over the
Loan File Documents ................................................................................5

                1.     Production of Loan Files Is Outside the Scope of the Legal
Services Statement of Work Between AFI and ResCap. .........................7

                2.     Production of the Loan Files is Outside the Scope of the
Record Services Statement of Work Between AFI and ResCap. .............8

                3.     The Loan Files are Not Shared Between ResCap and AFI,
Under the Shared Services Agreement or Otherwise ............................10

        B.     There is No Legal Basis to Require AFI to Produce Documents that
Are Not Within Its Possession, Custody or Control ............................12

II.    IN LIGHT OF THE UNIQUE CIRCUMSTANCES OF THIS CASE, AFI IS
WILLING TO ASK RESCAP TO PRODUCE THE LOAN FILES AS AN
ADDITIONAL SERVICE UNDER THE SHARED SERVICES
AGREEMENT. ......................................................................................................15

III.   THE LOAN FILES PRODUCED BY RESCAP SHOULD NOT BE
LIMITED TO 2100 ................................................................................................16

CONCLUSION ...................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page**

CASES

*In re Residential Capital, LLC,*
   No. 12-12020 (MG) (Bankr. S.D.N.Y.)............................................................................ *passim*

*In re Lozano,*
   392 B.R. 48 (Bankr. S.D.N.Y. 2008)................................................................................12, 13

*JPMorgan Chase Bank v. Winnick,*
   228 F.R.D. 505 (S.D.N.Y. 2005) ...........................................................................................13

*JPMorgan Chase Bank v. Winnick,*
   No. 03 Civ. 8535 (GEL), 2006 WL 278192 (S.D.N.Y. Feb. 6, 2006)....................................13

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.,*
   490 F.3d 130 (2d Cir. 2007).................................................................................................12

RULES

Fed. R. Civ. P. 34(a)(1).................................................................................................................13

## INTRODUCTION

The Courts' Order of October 16, 2012 ("Order") directs a response to the District Court's stated "intent to order defendant Ally Financial to request a limited production of loan files from the debtors and to bear the cost of that production."  Ally Financial Inc. ("AFI") and GMAC Mortgage Group Inc. ("GMACM Group") respectfully submit this response..

AFI, like the other Defendants in this action, needs access to the loan files that are the subject of the Order ("Loan Files").  Those Loan Files, however, are in the possession of Residential Capital LLC ("ResCap") and its subsidiaries (collectively "Debtors"), which are debtors in *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y.).  AFI does not have possession, custody or control over the Loan Files.  As discussed below, there is no basis in law to order AFI to produce the Loan Files or to order AFI to bear the cost of that production.  Nonetheless, given the District Court's stated intent, and the unique posture of the present litigation, AFI is willing to make a request to ResCap, under Section 3.2 of the Shared Services Agreement, that ResCap provide as an Additional Service to AFI the production of a specified number of loans (as discussed below) on an agreed-upon schedule.  Subject to ResCap's agreement to provide that Additional Service, and subject to the approval by the Bankruptcy Court for ResCap to undertake that production and an agreement on appropriate cost allocation, AFI will work with ResCap to produce the Loan Files.

## FACTUAL BACKGROUND

In this action, the Federal Housing Finance Agency ("FHFA") alleges that offering documents for 21 RMBS Securitizations sponsored by ResCap contained false or misleading statements.  FHFA does not contend that AFI or GMACM Group originated any of the loans in those Securitizations, packaged any loans into the Securitizations, drafted the offering documents, or otherwise had any direct involvement in the Securitizations.

1

The present dispute involves the production of Loan Files related to those 21 Securitizations. It is undisputed that the Debtors have possession of those Loan Files. Accordingly, the District Court directed FHFA to seek those Loan Files directly from the Debtors. On July 20, 2012, FHFA filed a motion with the Bankruptcy Court seeking production of all of the Loan Files for those 21 Securitizations. On August 10, 2012, FHFA asserted that it would "limit its request" to "only" 5000 of those Loan Files. On the eve of the September 11, 2012 hearing on its motion before the Bankruptcy Court, FHFA lowered that number to 2500 Loan Files.

As the District Court knows, the parties to this litigation have disputed the scope of Loan File production. In response to FHFA's proposal to limit discovery in this action to a sample of loan files, the Defendants in the consolidated actions argued that such a limitation of discovery would prejudice their rights, and that they were entitled to discovery of all the Loan Files underlying the Securitizations. *See* Defendants' Submission Regarding Sampling Protocols (June 6, 2012), at 2-5. During a status conference conducted on June 13, 2012, the District Court ruled that it would not limit discovery of loan files to the sample identified by FHFA. Accordingly, after FHFA limited the scope of its request to the Bankruptcy Court, the Underwriter Defendants in this action petitioned the Bankruptcy Court for production of the approximately 43,000 Loan Files within the relevant supporting loan groups of the Securitizations. In its August 10 order, the District Court confirmed that the Defendants were permitted to seek third-party discovery of all of the Loan Files underlying the supporting loan groups. Aug. 10, 2012 Order (Dkt. 182).

On August 14, 2012, the Bankruptcy Court ordered FHFA, the Debtors and the Underwriters to make further submissions supporting their respective positions on the Loan File

2

Requests.  The Debtors filed a supplemental brief in opposition to FHFA's motion, supported by the declarations of Mary Fahy Woehr and John Mongelluzzo and the exhibits thereto.  Debtors' Supp. Brief in Supp. of Obj. to Mot. of FHFA for Relief from the Automatic Stay (Bankr. Dkt. 1295) ("Debtors' Supp. Brief").  Ms. Woehr, a member of the legal staff of Debtor entity GMAC Mortgage, LLC, stated that the purpose of the Shared Services Agreement was "to facilitate ResCap's smooth transition to operating as a debtor in possession, facilitate its sale of assets, and complete a wind-down of its business following the sales."  Debtors' Supp. Brief at Ex. 1 ("Woehr Decl.")  ¶ 6.  She also summarized the scope of the Legal Services Statement of Work ("SOW").  *Id.* ¶¶ 16-21.

Mr. Mongelluzo, Managing Director at ResCap, described the substantial impact on the Debtors of any order requiring the production of the Loan Files.  Debtors' Supp. Brief at Ex. 2 ("Mongelluzo Decl.").  He noted that it would take two ResCap Fulfillment Group employees approximately three days to identify the location of 5000 Loan Files.  *Id.* ¶ 6.  He estimated that it would take an additional two days for those employees to clear up search errors, exceptions, and other problems that he expected would arise during the initial database search.  *Id.* ¶ 7.  After the files were identified, requests would be sent to ResCap's storage vendors (such as Iron Mountain), who would locate and pull each box containing a Loan File.  The Loan Files would then be removed from the boxes and sent to an imaging vendor.  *Id.* ¶¶ 7-8.  He estimated that because of contractual limits on the number of boxes per week that ResCap was entitled under its current contract to request, this process could take five weeks or more.  *Id.* ¶ 9.

In its own submission to the Bankruptcy Court, AFI recognized that in order to defend itself against FHFA's claims, it needs the Loan Files in ResCap's possession in excess of the 5000 Loan Files sought by FHFA.  Statement of Ally Financial Inc. Concerning the Shared

3

Services Agreement (Bankr. Dkt. 1299) at 4-5 ("AFI Statement").  AFI made clear, however, that it does not control the Loan Files possessed by ResCap.  *Id.* at 2-3.  AFI also provided a declaration from Philip Marc Scheipe, its Chief Financial Officer of Global Business Functions, that explained several provisions of the Shared Services Agreement. *See id.* at Ex. 1 ("Scheipe Decl.").  On September 11, 2012, the Bankruptcy Court conducted a hearing on FHFA's motion. The testimony of Ms. Woehr, Mr. Mongelluzzo, and Mr. Scheipe was submitted to the Court. FHFA did not cross-examine those witnesses.

On October 12, 2012, the Bankruptcy Court issued a Memorandum Opinion and Order denying the motions of FHFA and the Underwriter Defendants.  *In re Residential Capital, LLC, et al.*, No. 12-12020 (MG) (S.D.N.Y. Oct. 12, 2012) ("October 12 Order").  In the October 12 Order, Judge Glenn found that Section 105 of the Bankruptcy Code permits the Court to extend the protection of Section 362(a) to preclude any discovery from the Debtors for a reasonable period of time.  *Id.* at 23.  Applying a multi-factor test, he found that the balance of factors weighed in favor of maintaining that stay at present.  *Id.* at 33.  With respect to the scope of discovery sought, Judge Glenn specifically found that regardless of the number of Loan Files requested, imposing that obligation would be overly burdensome on the Debtors, who already were laboring under expedited discovery and procedural deadlines within the bankruptcy proceeding.  *Id.* at 24-25.  Judge Glenn also found that the context of FHFA's motion supported maintaining the stay on discovery, observing that delay in the chapter 11 case threatened the ability of the Debtors to reorganize and risked severe impact on hundreds of thousands of creditors.  *Id.* at 25-26.  The Bankruptcy Court acknowledged that the need for the Loan Files in this action favored FHFA's motion, *id.* at 26-27, but concluded that considerations of timing, burden, and expense all weighed against ordering production of the Loan Files.  *Id.* at 27-32.

4

Although it denied FHFA's motion, the Bankruptcy Court cautioned that the Debtors were entitled to a respite from discovery, but not an exemption, and suggested that such a respite might last "at least until February 2013." *Id.* at 29, 33. Judge Glenn directed that the Debtors, FHFA and the Underwriter Defendants "meet and confer on a targeted schedule for production of documents consistent with the demands of the chapter 11 cases." *Id.* at 33. Rather than pursue this path, FHFA notice of appeal in the Bankruptcy Court and submitted a letter to the District Court the very next business day.

## ARGUMENT

## I.    AFI DOES NOT HAVE POSSESSION, CUSTODY OR CONTROL OVER THE LOAN FILES.

It is undisputed that the Loan Files are in the possession of the Debtors. The Debtors concede that they have those documents, and that their assistance would be necessary to identify and collect those documents. Mongelluzzo Decl. ¶¶ 6-7, 17-18. FHFA does not contend that either AFI or GMACM Group have possession or custody of those documents.

Nonetheless, in its October 15, 2012 letter, FHFA argues that AFI has "control" over the Loan Files through the Shared Services Agreement. FHFA also argues that AFI may be compelled to produce documents in the possession or control of ResCap, a nonparty. Both propositions are factually and legally incorrect.

### A.    The Shared Services Agreement Does Not Give AFI Control Over the Loan Files.

Nothing in the Shared Services Agreement gives AFI control over the Loan Files in ResCap's possession. This is evident from the stated purpose of that Agreement, which is to ensure "the continued operation of the Debtor's businesses during the pendency of the[] Chapter 11 cases." Debtors' Motion for Interim and Final Orders Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Residential Capital, LLC To Enter Into a Shared Services

5

Agreement with Ally Financial Inc. Nunc Pro Tunc (Bankr. Dkt. 41) ("Debtors' Shared Services

Motion") ¶ 7. The sharing of services was designed to "eliminate redundant functions, reduce

costs and allow for the realization of operational synergies." *Id.* ¶ 12. Nonetheless, "[t]he

quantity and scope of services" was "scaled back from historical levels to reflect only those

services that the Debtors believe are necessary to ensure the efficient operation of their

businesses." *Id.* ¶ 18. Given that the purpose of the Shared Services Agreement was to reduce

the costs and burden on the bankruptcy estate, FHFA cannot explain why ResCap would have

structured the Agreement to create a back-door discovery mechanism for every litigant seeking

access to ResCap's documents, in circumvention of the automatic stay.

FHFA's interpretation also fundamentally misconstrues the Shared Services Agreement.

The Shared Services Agreement concerns the sharing of *services,* not the sharing of the

underlying information separately owned by the contracting entities. Like any other agreement

between service providers, the agreement does not make the assets – or documents – of one party

the assets or documents of the other. To the contrary, the Shared Services Agreement provides

that each party will "retain ownership of data pertaining to its performance of Services," and that

"[e]ach Party's Confidential Information shall remain the property of that Party except as

expressly provided otherwise by the other provisions of this agreement." *Id*. at Ex. A ¶¶ 8.1, 9.6.

FHFA's interpretation is not only flatly inconsistent with the parties' intent, but also

unsupported by any of the provisions upon which FHFA relies. Indeed, FHFA's interpretation of

the Statements of Work ("SOW") that memorialize the individual service agreements between

AFI and ResCap is belied by the plain text of the SOWs and by the uncontroverted testimony

presented at the September 11, 2012 hearing before the Bankruptcy Court.

**1.    Production of Loan Files Is Outside the Scope of the Legal Services Statement of Work between AFI and ResCap.**

Notwithstanding FHFA's repeated misrepresentation of its provisions, the Legal Services SOW simply does not cover production of the Debtors' Loan Files.  The intended scope of legal services was summarized by ResCap in the Debtors' Shared Services Motion:

> ResCap provides various banking and mortgage related legal services to AFI, while AFI provides general legal services to the Debtors.  The legal services that are provided are in the form of certain AFI legal employees allocating a percentage of their time to ResCap legal matters, and vice versa for ResCap's legal employees working on legal matters relating to AFI.

Debtors' Shared Services Motion at 15.  Plainly, the intended services are limited to the provision of time by AFI and ResCap employees to provide legal advice and counseling.  The language of the Statement of Work addressing Legal Services makes clear exactly the type of services ResCap is to provide to AFI:  "[l]egal advice and counseling," "[d]rafting legal agreements," "[l]itigation Support," "[r]etention and management of outside counsel to represent AFI," and "[l]icensing maintenance and support."  Woehr Decl. Ex. B ("Legal Services SOW") at 1.  Nothing in the Legal Services SOW suggests that its scope includes ResCap's producing or making *its own* documents available to AFI.

Despite the clarity of this language, FHFA argued to the Bankruptcy Court that the Legal Services SOW enabled the Debtors to provide the Loan Files.  In particular, FHFA relied on the SOW's statement that ResCap will provide AFI with "[l]egal advice and counseling, including litigation management and support, including service of process, e-discovery, discovery responses, and litigation holds as may be necessary or required from AFI from time to time, including without limitation, making available relevant systems and software that may be developed by or for the e-discovery team . . ."  Legal Services SOW at 1.  But nothing in this language requires ResCap to provide AFI with Loan Files (or any other documents) upon

7

demand.  The Legal Services SOW simply memorializes ResCap's role as a legal services and e-discovery vendor to AFI.  Just as vendors are not expected or required to search for and produce *their own* proprietary information to their contractual counterparties, the language of this SOW does not permit AFI to demand that ResCap use its e-discovery tools to search for and produce its Loan Files.

To the extent that FHFA relies on the reference to the e-discovery service and to ResCap's agreement to "mak[e] available relevant systems and software that may be developed by or for the e-discovery team" that reliance is misplaced.  The undisputed factual record is that ResCap developed an e-discovery team that historically assisted AFI with accessing *AFI's own* electronic records.  *See* Scheipe Decl. ¶ 10; Woehr Decl. ¶ 17-20.  The relevant systems and software that the SOW references include information management software applications including an "Evidence Management System," and "Legal Connects" (both of which are identified in the Legal Services SOW itself).  Legal Services SOW at 3.  FHFA has neither presented nor pointed to any factual support for the argument that the Legal Services SOW requires the vendor (ResCap) to access its own files (Loan Files) as part of its provision of legal services to AFI.

### 2.    Production of the Loan Files is Outside the Scope of the Record Services Statement of Work Between AFI and ResCap.

FHFA also previously has relied upon the Record Services Statement of Work ("Record Services SOW").  *See* Mongelluzzo Decl. Ex. A ("Record Services SOW").  However, as explained in the Debtors' Shared Services Motion, this SOW reflects the Debtors' role as provider of "various capital markets related functions to *Ally Bank*," including management of mortgage servicing rights.  Debtors' Shared Services Motion at 16 (emphasis added).  The Debtors act as loan servicers for loans originated by Ally Bank, and "it is essential to the

Debtors' day-to-day operations and their business model that AFI and its affiliates are able to continue to rely upon and have the benefits of the services historically performed by ResCap." *Id.* at 19.  It is in the context of service provider to Ally Bank – a non-debtor subsidiary of AFI that is *not* a party to this action – that ResCap entered into the Record Services SOW.

The services covered by the Record Services SOW include maintaining mortgage loan file records, fulfilling data requests, recovering and correcting documents for investors and custodians, and managing vendors.  Record Services SOW at 1-3.  Because the Record Services SOW states on its face that "any Deliverables in this SOW *must be consistent with historical practice* and Services provided must be delivered with the same standard of care, diligence, priority and frequency with which the Services were provided immediately prior to the date hereof," prior practice is directly relevant to interpreting the permissible scope of the SOW. Record Services SOW at 6 (emphasis added).  The undisputed factual record demonstrates that as a servicer to Ally Bank, ResCap was typically asked to provide loan files for ordinary business purposes, such as individual foreclosure cases and repurchase requests.  Mongelluzzo Decl. ¶ 28.  Historically, such requests were limited to "one or two Loan Files at a time."  *Id.* Indeed, the language of the Record Services SOW clearly excludes the possibility of seeking large quantities of Loan Files:  consistent with the historic practice of seeking one or two loan files at a time, it provides that all requests for loan files will be made on the same day as they are received.  Mongelluzzo Decl.  ¶ 9; Record Services SOW at 11.  Similarly, the pricing for the service, which provides for a modest fee of $50,000 per month, makes clear that the Record Services SOW was intended solely to address the small volume loan file requests of Ally Bank.

Notwithstanding the plain intent of the parties, FHFA argued to the Bankruptcy Court that the Record Services Agreement gives AFI the right to request thousands of Loan Files from

ResCap, pointing to language in the SOW stating that ResCap will "process requests for files/documents that are received from internal and external clients for loan sales, litigation requests, audits and reconciliation projects and deliver files/image to the requestor in a mutually agreeable format that is suitable to their request." Record Services SOW at 2. FHFA's reliance on this provision taken out of context is utterly inconsistent with the intent of the parties and the actual services being provided. As noted, the Record Services is a service that ResCap intended to provide to Ally Bank in its capacity as document custodian for certain loans serviced by ResCap. *See* Scheipe Decl. ¶ 11. Ally Bank is not a Document Custodian for any of the mortgage loans at issue in this action, and none of the loans for which the Bank has custodial obligations are collateral in any of the Securitizations. *Id.* There is no reasonable way to interpret this provision as referring to any of the loans at issue in this case. Rather, the Record Services SOW relates to services provided to a different entity (Ally Bank), and regarding different securitizations and different loans. *Id.*

### 3.    The Loan Files Are Not Shared Between ResCap and AFI, Under the Shared Services Agreement or Otherwise.

FHFA argued before the Bankruptcy Court that the Shared Services Agreement contemplates that AFI and ResCap will freely exchange information and documents, including Loan Files. Oddly, in support of that proposition, FHFA points to provisions of the Shared Services Agreement that expressly provide that each party's data remains its own. For example, FHFA points to the intellectual property provision, Section 7. But that provision expressly provides that "nothing in this agreement will be deemed to grant one Party ownership rights or any other Intellectual Property Rights in any . . . data or information owned by the other Party." Shared Services Agreement §7.4 FHFA points to Section 8, governing Recipient Data. But that provision expressly states that the "Supplier retains ownership of data pertaining to its

10

performance of Services," and that "Recipient owns and will continue to own all right, title and interest in and to all Recipient data." Shared Services Agreement §§ 8.1, 8.2. FHFA also points to Section 9, governing confidentiality of data. But, that section also expressly provides that "[e]ach Party's Confidential Information shall remain the property of that Party except as expressly provided otherwise by the other provisions of this Agreement." Shared Services Agreement § 9.6.

Neither AFI nor ResCap ever intended the agreement to result in the transfer of ownership or control over the documents or data of the other. *See* Scheipe Decl. ¶ 5. To the contrary, the parties specifically addressed this information and concluded (as reflected in the Agreement) that each party would maintain control over their own documents and data. *Id.* Those provisions make clear that the Shared Services Agreement certainly does ***not*** grant any legal right, interest or control in AFI over the data of ResCap.

To the extent that FHFA argues that the Shared Services Agreement obligates ResCap to provide AFI with access to the Loan Files or other data, the Shared Services Agreement also expressly addresses – and rejects – that proposition. Section 9.8 of the Agreement provides that "[n]othing in this Section 9 shall be construed as obligating a Party to disclose its Confidential Information to the other Party, or as granting or conferring on a Party, expressly or impliedly, any rights or license to the Confidential Information of the other Party." Shared Services Agreement § 9.8. In other words, there is no obligation by ResCap to provide AFI with ResCap's information, including the Loan Files.

Despite an opportunity to depose AFI's corporate representative on this topic, and several opportunities to brief the topic, FHFA has not identified any instance when AFI has ever obtained any of the subject Loan Files from ResCap, nor has it identified any provision of the

11

Shared Services Agreement that would permit AFI to do so.  Although FHFA has referenced a service that AFI provides to ResCap of conducting an annual loan review, the undisputed evidence is that this service was initiated in 2010 (well past the time when the loans at issue were originated), and pertains to a small sample set of loan files, which never included the loans in any of the securitizations.  *See* Scheipe Decl. ¶ 12.  Nothing in that statement of work requires ResCap to provide AFI the Loan Files from the securitizations from 2005 to 2007.  *Id.*  In short, FHFA's argument that the Shared Services Agreement contemplates that the Debtors and AFI "will freely exchange information and documents" is simply wrong.  The text of the Shared Services Agreement makes clear that there is no obligation to disclose information beyond what is necessary to provide the contemplated services, and FHFA can identify no shared service that contemplates provision of the Loan Files.

**B.      There is No Legal Basis to Require AFI to Produce Documents that Are Not Within Its Possession, Custody or Control.**

Recognizing that it cannot show AFI's control over the Loan Files through the Shared Services Agreement, FHFA argues in the alternative that "[t]here is authority, including an opinion by this [Bankruptcy] Court, that under Rule 34, a party to litigation may be required to produce documents in the custody or control of another."  K. Leung Letter Oct. 15, 2012 at 2. The Second Circuit, however, has ruled that "a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."  *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 138 (2d Cir. 2007).  The authority to which FHFA alludes does not alter that conclusion in this case.[1]

---

[1] The cases to which FHFA alludes, as cited by the Bankruptcy Court, in fact demonstrate that AFI does *not* have control over the Loan Files.  For example, in *In re Lozano*, 392 B.R. 48, 56 (Bankr. S.D.N.Y. 2008), the Bankruptcy Court found that where the moving party could not show any contract or agency relationship that gives the right to obtain the documents, the responding party cannot be compelled to produce those documents.  Those same facts here require the same conclusion.  Similarly, in *Shcherbakovskiy v. De Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007), the Court found that absent some demonstration that a Russian corporation was the alter ego of the

FHFA's argument starts from the familiar standard in Rule 34, that a responding party must produce documents "in the responding party's possession, custody or control . . . ." Fed. R. Civ. P. 34(a)(1). The concept of control most often turns on whether the producing party "has the legal right to obtain the document, even though in fact it has no copy." *In re Lozano*, 392 B.R. 48, 53 (Bankr. S.D.N.Y. 2008). As noted above, FHFA cannot identify any contractual right under the Shared Services Agreement giving such a legal right to AFI. Nor has it identified any other grounds that would give AFI such a legal right. As the Court noted in *In re Lozano*, however, "under some circumstances courts interpret the concept [of control] to go beyond whether the litigant has a legal right to obtain materials and focus on *practical ability to obtain them.*" *Id.* "Caution must be exercised when the notion of control is extended in this manner, however, because sometimes the party's ability to obtain compliance from nonparties may prove more modest than anticipated." *Id.*

In the present case, it is more than apparent that AFI lacks the practical ability to obtain the Loan Files, absent the consent of ResCap and the authorization by the Bankruptcy Court. In the proceedings before the Bankruptcy Court, ResCap stated that "the Shared Services Agreement does not provide for, and was not intended to provide for, the Debtors to produce loan files with respect to litigation brought against Ally to which the Debtors are not parties." Debtors' Supp. Brief at 5. Further, ResCap objected to production of those files due to the substantial burden of producing them. *Id.*

---

respondent, there was no legal basis to order the respondent to produce documents from that corporation. FHFA has made no allegation (nor could it) that the Debtors, which are under the authority of the Bankruptcy Court, are currently operating as the alter ego of AFI. Finally, the *Winnick* cases –*JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y. 2005) ("*Winnick 1*") and *JPMorgan Chase Bank v. Winnick*, No. 03 Civ. 8535 (GEL), 2006 WL 278192 (S.D.N.Y. Feb. 6, 2006) ("*Winnick 2*") – are simply examples of a different principle, which is "that a plaintiff suing as agent or assignee of others can be compelled to obtain and produce documents from the assignors." *In re Lozano*, 392 B.R. at 61.
.

Not only are the Loan Files subject to the automatic stay of bankruptcy, but the Bankruptcy Court concluded that lifting the stay at this time is not appropriate.  In the October 12 Order, Judge Glenn determined that in light of the timing, burden, and expense involved, he would not order ResCap to produce the loan files sought by FHFA and the Non-Ally Underwriter Defendants.  Judge Glenn emphasized that ResCap has "a very difficult few months ahead," with numerous obligations and deadlines that mean it "*simply cannot* also undertake the very substantial burden of producing Loan Files" until "at least February 2013."  October 12 Order at 27, 29 (emphasis added).  As the October 12 Order makes clear, the "substantial burden" in question is not merely financial, which "can be eliminated" by allocating the costs to parties other than ResCap.  *Id.* at 31.  "[T]he bigger problem for the Debtors in producing the Loan Files at the present time is the Court-ordered information retrieval and production requirements dictated by the critical stage of the Debtors' chapter 11 cases."  *Id.* at 31-32. Plainly stated, as a practical matter, AFI cannot obtain the Loan Files from ResCap without ResCap's cooperation, and that cooperation is unavailable:  ResCap has objected to production of the Loan Files and argues that the Shared Services Agreement does not provide for production, and the Bankruptcy Court has declined to order it.

The independent conclusion of the Bankruptcy Court underscores that notwithstanding any suggestion by FHFA to the contrary, ResCap's position is not the product of a deliberate effort by two (formerly) related corporate entities to evade AFI's discovery obligations. Although it causes AFI significant inconvenience, AFI recognizes that ResCap's refusal to produce the Loan Files is a legitimate decision by an independent legal entity whose authority to take such steps is cabined by its obligations to the Bankruptcy Court, the estate, and its creditors. The fact that ResCap does not recognize a contractual obligation to retrieve and provide the Loan

Files, and that the Bankruptcy Court was not willing to order ResCap to do so, by definition means that those documents are not within AFI's practical ability to obtain.

## II.    IN LIGHT OF THE UNIQUE CIRCUMSTANCES OF THIS CASE, AFI IS WILLING TO ASK RESCAP TO PRODUCE THE LOAN FILES AS AN ADDITIONAL SERVICE UNDER THE SHARED SERVICES AGREEMENT.

Although the Shared Services Agreement on its face does not provide AFI with either authority to request or a contractual right to obtain the Loan Files, it does provide that a "party may . . . request that the other Party provide additional services, functions and responsibilities not within the scope of the Services provided by the performing Party." Shared Services Agreement § 3.2. As the debtors noted in their submission to the Bankruptcy Court, however, "the Debtors *are not* required to agree to provide Additional Services." Debtors' Supplemental Brief ¶ 64. Further, if the Debtors agree to provide the Additional Services, the parties must negotiate the costs and terms of those Additional Services. *Id.*

For its part, consistent with the terms of the Court's October 16, 2012 Order, AFI will agree to "request a limited production of loan files from the debtors" as described more fully below. If ResCap agrees to perform that service for AFI, AFI and ResCap should be able to quickly agree on the terms of that Additional Service, subject to the approval of the Bankruptcy Court.

It should be noted that even if AFI and ResCap are able to reach agreement on that Additional Service, and even if the cost allocation question is resolved, this will not avoid many of the burdens that the Bankruptcy Court identified in its October 12, 2012 Order. Specifically, to produce 5000 loan files, the Debtors will require approximately three days of time from two Debtor employees to identify the location of the Loan files, and two additional days to resolve any exceptions that show up. October 12, 2012 Order at 31. AFI has no personnel who could perform those functions, and cannot alleviate that burden. Further, to the extent that any Loan

15

Files must be reviewed for completeness or other discrepancies after they are returned from the document custodian vendor, AFI also lacks personnel with knowledge of the loan files sufficient to assist in that process, and will be obliged to rely on ResCap.

To AFI's knowledge, there is no basis for requiring AFI to pay for the costs of retrieving, imaging, reviewing, and producing the Loan Files requested by FHFA and produced by ResCap, and AFI would object to the imposition of such costs. Nonetheless, as proposed by the Bankruptcy Court in the October 12 Order, AFI is willing to negotiate with FHFA and the Underwriters to determine a fair and appropriate allocation of costs.

## III.    THE LOAN FILES PRODUCED BY RESIDENTIAL CAPITAL SHOULD NOT BE LIMITED TO 2100.

FHFA has asked for production of 2100 Loan Files from ResCap. The District Court has stated its intent to Order production of those 2100 Loan Files plus an additional 500 to 1000 Loan Files as identified collectively by the parties. Order at 2.

In the first instance, for the reasons stated in the Defendants' June 6, 2012 submission to the District Court, discovery in this action should not be limited to just those Loan Files identified by FHFA, but should instead include all available Loan Files. Discovery concerning all the Loan Files is necessary in order to offer proof regarding Loan Files outside the limited universe selected in the sample, to adequately test the validity of FHFA's sample, to conduct loss causation analyses, and to present due diligence defenses. Any ruling that would, at this stage of the litigation, constrain the population of Loan Files that AFI might discover would improperly prejudice AFI in this action, and deprive AFI of its Due Process and Seventh Amendment rights.

AFI recognizes, however, the burden that production of such a large number of Loan Files would impose on the Debtors during the next three month period, as described by the Bankruptcy Court in its October 12 Order. To alleviate that burden, AFI would be willing to

16

prioritize the Loan Files it requests from the Debtors, and to limit the number of Loan Files requested during the next three months – or until such time within the reasonably near future as the Bankruptcy Court believes that the timing and burden imposed on the Debtors is more sustainable.

AFI cannot presently identify the specific Loan Files that it needs in addition to the 2100 requested by FHFA.  In the first instance, the loan tapes that are necessary to even identify the relevant Loan Files was only produced by FHFA to AFI this past week.  Further, to the extent that AFI needs additional Loan Files to test FHFA's sample, that sample was only produced to AFI last week.  Moreover, AFI has not yet learned what loans were the subject of due diligence by any relevant parties, and so is unable to identify Loan Files that might be needed to support any due diligence defense.  Given those variables, it is impossible for AFI to identify specific additional Loan Files needed, and difficult even to estimate the volume of Loan Files that will ultimately be needed.

If ResCap and the Bankruptcy Court approve, AFI proposes that the Additional Services Agreement negotiated with ResCap would call for ResCap to produce 2100 Loan Files to FHFA within the next six weeks (or by December 14, 2012).  This is consistent with the timeline for production estimated by ResCap in its Bankruptcy submission.  During that six week period, AFI will work to identify any additional volume of Loan Files that it would need ResCap to produce on a priority basis.  AFI would endeavor to provide that request to ResCap by December 14, 2012, with production of those Loan Files also to be made within six weeks.  Any further requests for Loan Files from ResCap by other Defendants or AFI would wait until the Bankruptcy Court determines that ResCap can reasonably bear the burden associated with the request.

## CONCLUSION

AFI will agree to request the 2100 Loan Files from the Debtors (and any additional Loan Files to be identified within six weeks) as part of Additional Services to be negotiated between ResCap and AFI, subject to agreement by the Debtors, approval by the Bankruptcy Court, and an agreement on appropriate cost allocation.  For the reasons stated herein, however, AFI cannot produce those documents without the consent of ResCap and approval by the Bankruptcy Court.

Dated:    October 19, 2012

Respectfully submitted,

MAYER BROWN, LLP

_/s/ Reginald Goeke_
Reginald Goeke (rgoeke@mayerbrown.com)
Catherine A. Bernard (cbernard@mayerbrown.com)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: 202-263-3000
Facsimile: 202-263-3300

Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY 10019
Telephone: 212-506-2500
Facsimile: 212-262-1910

_Attorneys for Ally Financial Inc. and GMAC
    Mortgage Group, LLC, as defendants in District
    Court Case No. 11 Civ. 7010 (DLC)_

18

KIRKLAND & ELLIS LLP


__/s/ Judson D. Brown_____

Jeffrey S. Powell (jeff.powell@kirkland.com)
Daniel T. Donovan (daniel.donovan@kirkland.com)
Judson D. Brown (judson.brown@kirkland.com)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: 202-879-5000
Facsimile: 202-879-5200

Richard M. Cieri (richard.cieri@kirkland.com)
Ray C. Schrock (ray.schrock@kirkland.com)
Stephen E. Hessler (stephen.hessler@kirkland.com)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: 212-446-4800
Facsimile: 212-446-4900

*Attorneys for Ally Financial Inc., as a party in
    interest in Bankruptcy Court Case No. 12-12020
    (MG)*

## EXHIBIT 1

**Unreported Decision**

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2006 WL 278192 (S.D.N.Y.)
**(Cite as: 2006 WL 278192 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
JPMORGAN CHASE BANK, Plaintiff,
v.
Gary WINNICK, et al., Defendants.

No. 03 Civ. 8535(GEL).
Feb. 6, 2006.

OPINION AND ORDER

LYNCH, J.

**\*1** This Opinion addresses another installment in the ongoing discovery process in this action. Plaintiff JP Morgan Chase Bank ("JPM") seeks an order compelling discovery from a non-party, Citibank, N.A. For the reasons that follow, the motion will be denied.

JPM brings this fraud action on behalf of various holders of Global Crossing debt ("Real Parties in Interest").FN1 Because many of the Real Parties in Interest purchased that debt, and the attendant right to pursue this litigation, from the actual victims of the alleged fraud (the "Original Lenders"), there has been some question as to scope of JPM's discovery obligations. Specifically, defendants claim that the Original Lenders' alleged reliance on representations made by Global Crossing and the reasonableness of such reliance are at issue, and they have sought discovery on these subjects, serving document requests, interrogatories, and deposition notices on JPM, seeking documents, information, and witnesses in the Original Lenders' possession, custody, or control. JPM objected to these requests, arguing, inter alia, that it has neither the authority nor the obligation to secure discovery from Original Lenders who sold their Global Crossing debt and the attendant right to pursue this action, and thus are not parties to this litigation. The Court rejected this argument in an Opinion and Order dated May 9, 2005, reasoning that it would be

unfair to allow JPM and the Real Parties in Interest to stand in the shoes of the Original Lenders in order to pursue this action without requiring them to produce discovery that the Original Lenders would be required to produce if they had brought this action themselves:

> FN1. The Court's prior opinions, *see, e.g.,* *JPMorgan Chase Bank v. Winnick,* 228 F.R.D. 505 (S.D.N.Y.2005), set out the facts of the case in greater detail.

It is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim. If the plaintiff's theory carried the day, the assignor would be able to assign a claim more valuable than it could ever have, because its claim, if pursued by the assignor, would entail certain obligations that, when assigned, would magically disappear.... It would be unfair to the defendants to permit plaintiff and the assignees to divorce the benefits of the claims from the obligations that come with the right to assert them, to the detriment of defendants.

*JPMorgan Chase Bank v. Winnick,* 228 F.R.D. 505, 506-07 (S.D.N.Y.2005). The Court concluded that JPM must provide discovery from the Original Lenders to defendants or risk sanctions. *Id.* at 507.

JPM has since attempted to secure discovery requested by defendants from the Original Lenders, but has run into difficulties, and now requests this Court's assistance in compelling certain discovery from one Original Lender, Citibank, N.A. "Citibank has voluntarily produced more than 12,500 documents requested by [JPM] pursuant to demands made on it by defendants," and "has responded, and continues to respond, to Interrogatories seeking broad categories of information," (Citibank Mem. at 1-2), but it objects to one outstanding demand made by JPM in a subpoena duces tecum dated July 15, 2005, on the grounds that compliance "would

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2006 WL 278192 (S.D.N.Y.)
**(Cite as: 2006 WL 278192 (S.D.N.Y.))**

impose tremendous burden and hardship." (*Id.* at 2.) The demand seeks:

> **\*2** All documents related to decisions whether or not to fund a borrowing request or similarly extend credit under a pre-existing loan or credit agreement for an aggregate amount of $1 billion or more, in the calendar year 2001, to any of the following companies, or the subsidiaries, parents or affiliates of such companies: 360Networks Corp.; AT & T Corp.; BellSouth; Cable and Wireless plc; Centennial Communications Corp.; China Network Communications ("China Netcom"); Comsat International, Inc.; DACOM Corp.; Deutsche Telekom AG; Emergia Holding NV; EPIK Communications; Equant; FLAG Telecom Group Ltd.; Global Telesystems, Inc. (a/k/a "GTS" or "Ebone"); Hanaro Telecom, Inc.; KG Telecommunications Co., Ltd.; KPNQwest; New World Telecommunications, Ltd.; Nortel Networks Corp.; Pegasus Telecommunications; Qwest Communications International, Inc.; Taiwan Fixed Networks; Techtel; Telecom Italia Media SpA; Telecom New Zealand Ltd.; Teleglobe International Holdings Ltd.; Velocita Corp.; Verizon Communications; Versatel Telecom International N.V.; and WorldCom.

(Horowitz Aff. ¶ 4.) JPM now moves to compel Citibank to produce the demanded documents. That motion will be denied.

As an initial matter, it must be emphasized that Citibank is *not* a party to this litigation. Citibank long ago sold its Global Crossing debt and any potential interest in pursuing this action. Accordingly, Citibank enjoys the protections provided to nonparties by the Federal Rules of Civil Procedure, namely that the Court will "quash or modify" any subpoena that subjects such a non-party "to undue burden." Rule 45(c)(3)(A)(iv). "Whether a subpoena imposes ... an 'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the

burden imposed.' " *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49 (S.D.N.Y.1996), quoting *United States v. IBM Corp.,* 83 F .R.D. 97, 104 (S.D.N.Y.1979).

While Citibank has voluntarily supplied over 12,500 pages of documents in response to JPM's demands, and has offered to comply with the demand at issue here with respect to a subset of the documents requested, Citibank asserts, without contradiction, that full compliance would pose a severe burden, requiring Citibank "to designate several of its personnel to work full time for a period of at least weeks, and probably months, to search records from all over the world." (Citibank Mem. at 2-3; *see also id.* at 5-7.) Citibank also points out, again without contradiction, that when it sold its Global Crossing debt, the purchasers expressly warranted that they and their successors would "not rely on [Citibank] to furnish or make available any documents or other information regarding the credit, affairs, financial condition or business of the [Global Crossing] or any Obligor, or any other matter concerning [Global Crossing] or any Obligor," (Beller Aff., Exs. A, B, C, § 5.1(g); *see also* Citibank Mem. at 3).

**\*3** Given that Citibank secured an express warranty from the purchasers of its debt that they and their successors would not return one day seeking the production of documents (which is precisely what has happened), and that Citibank has shown that full compliance would subject it to tremendous expense, the Court finds that the burden of complying with the demand at issue is "undue." This is especially so considering the potential relevance of the discovery sought, which is indirect. As the Court observed in an Order dated January 3, 2005, rather than seeking information directly about the Global Crossing transactions at issue in this litigation, the purpose of this discovery is to obtain information about lenders' practices as to comparable transactions, which may yield evidence that the lenders acted unreasonably in conducting the Global Crossing transactions. Assuming that such in-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 278192 (S.D.N.Y.)
**(Cite as: 2006 WL 278192 (S.D.N.Y.))**

formation about Citibank's standard operating procedures is vital, Citibank has volunteered to produce a subset of the requested documents, which would permit defendants to audit Citibank's practices. FN2 In short, the Court finds that the burden of the instant discovery demand on Citibank far outweighs the relevance of the discovery sought, and JPM's motion to compel is denied. Of course, nothing in this ruling precludes JPM from striking an agreement with Citibank to produce the sought-after discovery in exchange for consideration.

FN2. Defendants have repeatedly rejected any narrowing of the document request at issue here, which they are perfectly entitled to do. (Def. Mem. at 2.)

As JPM points out, this Court has already ruled that defendants are entitled to production of precisely the documents they now seek from Citibank. The Court recognizes that requiring JPM to obtain discovery from the Original Lenders, and then refusing to compel the Original Lenders to produce that discovery, appears to place JPM in a double bind. But this is merely a consequence of choices that JPM and the Real Parties in Interest have made. As previously discussed, JPM and the Real Parties in Interest stand in the Original Lenders' shoes for the purposes of this litigation, and defendants are thus entitled to any discovery that they would have been entitled to if the Original Lenders had themselves sued. At the same time, Original Lenders such as Citibank are non-parties to this litigation and are entitled to protection as such. *They* did not bring this action; they simply sold their Global Crossing debt. And at least with respect to Citibank, any argument that its decision to profit from selling that debt implicitly binds it to produce the discovery sought here founders on the express warranty that it secured disavowing any such obligation.

The Court emphasizes, however, that the preceeding discussion should not be interpreted as an implicit holding that defendants are entitled to sanctions against JPM. That will depend upon a showing of prejudice. So far, the Court has ruled only that defendants are entitled to this discovery. If, for whatever reason, JPM is unable to produce it, the consequences of that failure can and will be addressed at a later time.

CONCLUSION

**\*4** For the foregoing reasons, JPM's motion to compel Citibank to comply with its July 15, 2005 subpoena is denied.

SO ORDERED:

S.D.N.Y.,2006.
JPMorgan Chase Bank v. Winnick
Not Reported in F.Supp.2d, 2006 WL 278192 (S.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.