1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020(MG)

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.

9

10           Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14           United States Bankruptcy Court

15           One Bowling Green

16           New York, New York

17

18           October 17, 2012

19           2:01 PM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2  (CC: Doc. 1781) Possible Hearing re Debtors' Motion to Approve

3  Amendment to the Barclays DIP Facility and Fees Payable

4  Thereunder if No Objections are Filed

5

6  (CC: Docs. 1242, 945, 61) Hearing re Pre-Auction Objections of

7  the RMBS Trustees to the Debtors' Sale Motion

8

9  (CC:  Doc. 1762) Debtors' Amended Motion for an Order Pursuant

10  to Section 503(c)(3) of the Bankruptcy Code Authorizing (I)

11  Implementation of a Key Employee Incentive Plan for Certain

12  Insiders; and (II) Payment of Any Obligation Arising Thereunder

13  as Administrative Expenses

14

15

16

17

18

19

20  Transcribed by:  Lisa Bar-Leib

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8  BY:   TODD M. GOREN, ESQ.

9        GARY S. LEE, ESQ.

10

11  CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

12        Conflicts Counsel for the Debtors

13        101 Park Avenue

14        New York, NY 10178

15

16  BY:   THERESA A. FOUDY, ESQ.

17

18  KRAMER LEVIN NAFTALIS & FRANKEL LLP

19        Attorneys for Official Creditors' Committee

20        1177 Avenue of the Americas

21        New York, NY 10036

22

23  BY:   STEPHEN D. ZIDE, ESQ.

24        RACHAEL L. RINGER, ESQ.

25

1

2   U.S. DEPARTMENT OF JUSTICE

3          Office of the United States Trustee

4          33 Whitehall Street

5          21st Floor

6          New York, NY 10004

7

8   BY:   BRIAN S. MASUMOTO, ESQ.

9

10   ALLEN & OVERY LLP

11          Attorneys for HSBC Bank USA, National Association

12          1221 Avenue of the Americas

13          New York, NY 10020

14

15   BY:   JOHN KIBLER, ESQ.

16

17   ALSTON & BIRD LLP

18          Attorneys for RMBS Trustees

19          One Atlantic Center

20          1201 West Peachtree Street

21          Suite 4200

22          Atlanta, GA 30309

23

24   BY:   JOHN C. "KIT" WEITNAUER, ESQ.

25

1

2   BARNES & THORNBURG LLP

3         Attorneys for Creditor, USAA

4         1000 N. West Street

5         Suite 1200

6         Wilmington, DE 19801

7

8   BY:   DAVID M. POWLEN, ESQ.

9         STEPHANIE M. SEIDL, ESQ.

10        (TELEPHONICALLY)

11

12  CADWALADER, WICKERSHAM & TAFT LLP

13        Attorneys for MBIA

14        One World Financial Center

15        New York, NY 10281

16

17  BY:   INGRID BAGBY, ESQ.

18

19  DECHERT LLP

20        Attorneys for Bank of New York Mellon

21        1095 Avenue of the Americas

22        New York, NY 10036

23

24  BY:   GLENN E. SIEGEL, ESQ.

25

6

```
 1
 2   JACKSON WALKER LLP
 3        Attorneys for Frost Bank National
 4        100 Congress Avenue
 5        Suite 1100
 6        Austin, TX 78701
 7
 8   BY:   PATRICIA B. TOMASCO, ESQ.
 9         (TELEPHONICALLY)
10
11   JONES DAY
12        Attorneys for Financial Guaranty Insurance Company
13        555 South Flower Street
14        Fiftieth Floor
15        Los Angeles, CA 90071
16
17   BY:   LORI SINANYAN, ESQ.
18         RICHARD L. WYNNE, ESQ.
19         (TELEPHONICALLY)
20
21
22
23
24
25
```

1

2    KIRKLAND & ELLIS LLP

3          Attorneys for Ally Financial Inc. and Ally Bank

4          601 Lexington Avenue

5          New York, NY 10022

6

7    BY:   RAY C. SCHROCK, ESQ.

8

9    MCKOOL SMITH

10          Attorneys for Freddie Mac

11          600 Travis Street

12          Suite 7000

13          Houston, TX 77002

14

15    BY:   PAUL MOAK, ESQ.

16          (TELEPHONICALLY)

17

18    MORGAN, LEWIS & BOCKIUS LLP

19          Attorneys for Deutsche Bank

20          101 Park Avenue

21          New York, NY 10178

22

23    BY:   JAMES L. GARRITY, JR., ESQ.

24

25

1

2 MORGAN, LEWIS & BOCKIUS LLP

3      Attorneys for Deutsche Bank

4      1701 Market Street

5      Philadelphia, PA 19103

6

7 BY:   JOHN C. GOODCHILD, III, ESQ.

8

9 MORRISON COHEN LLP

10      Attorneys for Independent Directors

11      909 Third Avenue

12      New York, NY 10022

13

14 BY:   JOSEPH T. MOLDOVAN, ESQ.

15      DAVID A. PIEDRA, ESQ.

16

17 MUNGER, TOLLES & OLSON LLP

18      Attorneys for Berkshire Hathaway

19      355 South Grand Avenue

20      35th Floor

21      Los Angeles, CA 90071

22

23 BY:   THOMAS WALPER, ESQ.

24      (TELEPHONICALLY)

25

1

2   PATTERSON BELKNAP WEBB & TYLER LLP

3          Attorneys for Ambac Assurance Corporation

4          1133 Avenue of the Americas

5          New York, NY 10036

6

7   BY:   DAVID W. DYKHOUSE, ESQ.

8          BRIAN P. GUINEY, ESQ.

9

10  ROPES & GRAY LLP

11         Attorneys for Ad Hoc RMBS Holder Group

12         Prudential Tower

13         800 Boylston Street

14         Boston, MA 02199

15

16  BY:   ANDREW G. DEVORE, ESQ.

17         (TELEPHONICALLY)

18

19

20

21

22

23

24

25

1

2  SEWARD & KISSEL LLP

3          Attorneys for U.S. Bank, National Association, as

4           RMBS Trustee and Master Servicer

5          One Battery Park Plaza

6          New York, NY 10004

7

8  BY:   ARLENE R. ALVES, ESQ.

9          LAURIE R. BINDER, ESQ.

10

11  SIDLEY AUSTIN LLP

12          Attorneys for Nationstar Mortgage, LLC

13          One South Dearborn

14          Chicago, IL 60603

15

16  BY:   LARRY J. NYHAN, ESQ.

17          (TELEPHONICALLY)

18

19  SHEARMAN & STERLING LLP

20          599 Lexington Avenue

21          New York, NY 10022

22

23  BY:   EDMUND EMRICH, ESQ.

24

25

1

2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

3         Attorneys for Barclays Bank PLC

4         Four Times Square

5         New York, NY 10036

6

7  BY:   KENNETH S. ZIMAN, ESQ.

8         JONATHAN H. HOFER, ESQ.

9

10  WEIL, GOTSHAL & MANGES LLP

11         767 Fifth Avenue

12         New York, NY 10153

13

14  BY:   SARA COELHO, ESQ.

15

16  WHITE & CASE LLP

17         Attorneys for Ad Hoc Group of Junior Secured Noteholders

18         1155 Avenue of the Americas

19         New York, NY 10036

20

21  BY:   J. CHRISTOPHER SHORE, ESQ.

22         HARRISON DENMAN, ESQ.

23

24

25

 1

 2   WINSTON & STRAWN LLP

 3        Attorneys for Fannie Mae

 4        200 Park Avenue

 5        New York, NY 10166

 6

 7   BY:   CAREY D. SCHREIBER, ESQ.

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE COURT:  Please be seated.  All right.  We're here

3    on Residential Capital, LLC, number 12-12020.

4            MR. GOREN:  Thank you, Your Honor.  Todd Goren,

5    Morrison & Foerster, on behalf of the debtors.  If I may, I'd

6    like to go a little bit out of order since I know there's a lot

7    of people here interested in the resolution of the pre-auction

8    objections --

9            THE COURT:  Sure.  Go ahead, Mr. Goren.

10           MR. GOREN:  -- and whether there's going to be a

11   hearing on that today.  And I'm pleased to report that we've

12   reached an agreement in principle that will resolve the

13   trustees' pre-auction objections at least with respect to

14   Nationstar relating to what the trustees call the limitation on

15   future performance and the list of servicing obligations to be

16   assumed.

17           First, Nationstar has agreed to assume all of the

18   servicer and master servicer obligations under the PSA from and

19   after the closing including indemnity obligations in favor of

20   the trustees for past, present or future matters and without

21   any redefinition of those duties.

22           Second, as provided in the proposed sale order,

23   Nationstar will not have liability for any origination related

24   liability or any liability stemming from pre-closing acts or

25   omissions by the debtors.  These pre-closing liabilities must

RESIDENTIAL CAPITAL, LLC, et al.                    14

1    be asserted by the trustees as secured claims or general

2    unsecured claims in these cases depending on their nature.

3          And third, Nationstar will be afforded an

4    administrative priority claim against the debtors' estates for

5    certain indemnity expenses payable to the trustees.

6          Finally, the trustees have committed to amend the PSAs

7    to permit Nationstar to finance servicing advances.

8          The same approach would apply to the agreements that

9    were subject of joinders filed by Wells Fargo, US Bank, Bank of

10   New York, as master servicer, and Wells Fargo as custodian.  Of

11   course, to the extent the parties cannot agree on final

12   language implementing this agreement, the objections would be

13   preserved for a final sale hearing.  Also, the trustees' pre-

14   auction objections are preserved for the final hearing if

15   Nationstar is not the successful bidder.  And as I understand

16   it, the trustees are still also preserving their rating agency

17   consent issues and if those can't be resolved prior to the sale

18   hearing, those would go forward at the sale hearing as well.

19         THE COURT:  Is the APA going to be revised to reflect

20   the agreement that you've put on the record?

21         MR. GOREN:  Yes.  We'll start working right away on a

22   sale order and APA -- a necessary sale order and APA

23   amendments.  We've already discussed this with other bidders

24   for the platform, the potential resolution.  We'll get on the

25   phone with them and explain to them in more detail what the

RESIDENTIAL CAPITAL, LLC, et al.                    15

1  resolution is.  And as soon as we have revisions, we'll provide

2  it to the debtors.

3         THE COURT:  When do you anticipate being able to

4  finalize something in writing?  My focus is much more a level

5  playing field for any bidders that everybody knows precisely

6  what's been agreed to.

7         MR. GOREN:  I understand.  I mean, I'm hopeful a

8  matter of days -- you know, a day or two we can get this done.

9  I mean, I think everybody's goal should be to get it done

10 before Friday which is the bid deadline.  So that's certainly

11 what we're going to work toward.

12        THE COURT:  Okay.  Does anybody else wish to be heard

13 with respect to this?

14        MR. WEITNAUER:  Your Honor, Kit Weitnauer from Alston

15 & Bird speaking today for all of the RMBS trustees.  That is

16 correct.  There are nuances -- there's language to be read on

17 but, in principle, we have talked about this a lot.  We think

18 we all know what we're going to do.  Thank you.

19        THE COURT:  Well, I know.  And to the extent -- the

20 filings that certainly the debtor made made clear that they

21 were continuing their efforts to try and resolve these issues.

22 At the prior status conferences, that was certainly made clear

23 both by the RMBS trustees' counsel that they were still

24 endeavoring to resolve the issues.  So I'm glad that those

25 efforts have seemingly come to fruition.  And --

1          MR. WEITNAUER:  We are, too, Your Honor.  Thank you.

2          THE COURT:  Thank you very much.  Anybody else wish to

3     be heard?

4          MS. TOMASCO (TELEPHONICALLY):  Your Honor, on the

5     phone.

6          THE COURT:  Just wait until we finish those in the

7     courtroom, okay?

8          MR. KIBLER:  Sorry, Your Honor.  John Kibler from

9     Allen & Overy representing HSBC Bank USA.  We haven't seen the

10    full settlement.  We filed a joinder to the objection of RMBS

11    trustees.  As outlined, that certainly sounds like something

12    reasonable.  We just need to see the final details.

13         THE COURT:  Okay.

14         MR. KIBLER:  So we still have an objection out there.

15         THE COURT:  All right.  Well, let me just say -- and I

16    spent a very considerable amount of time preparing for these

17    issues, but that was done with full notice that the parties

18    were endeavoring to resolve them and I'm glad that they did.

19         My comment now really focuses on the very, very, very

20    late objections that were filed last night, this morning, some

21    of which seem to be objecting to the Court hearing this matter

22    today.  I just want to make clear that you have to have been in

23    an alternate universe not to understand that the pre-auction

24    objections were going to be heard today.  The revised

25    scheduling order that was entered in July specifically had an

RESIDENTIAL CAPITAL, LLC, et al.                    17

1    August 23 deadline for any pre-auction objections not only for

2    the RMBS trustees, but for any other party.  And there

3    certainly were objections filed by some other parties.  But

4    those and that scheduling order set out precisely what issues

5    would be considered as part of the pre-auction objections.  So

6    those of you who filed last night, or yesterday, or today

7    thinking you were going to derail a hearing today because you

8    think there hadn't been adequate notice of this, I'm not sure

9    what you were thinking.  If you're on ECF, you should be

10   following the docket.  At each of the hearings over the last

11   couple of months, there have been updates on the status of the

12   RMBS settlement.  That has included not only issues about

13   scheduling, discovery and other issues with respect to the

14   hearing which is now in January, but there have been updates

15   with respect to the pre-auction objections with the RMBS

16   trustees.  So I want to make clear that if there's an order

17   that provides for a schedule for filing objections and you

18   don't comply with it, the Court will not consider the

19   objections.  And that goes for the future.  Okay.

20          MR. ZIDE:  Your Honor, Stephen Zide from Kramer Levin

21   Naftalis & Frankel for the committee.  We're frankly very happy

22   that a deal was reached.  The doubles and the details, we just

23   found out about it, in particular, the administrative claim he

24   mentioned.  So we'll see the documentation, but we reserve our

25   rights.

1          THE COURT:  Certainly.  Thank you.  Mr. Lee, are you

2    picking up -- is there anything -- what's next?  I mean, I

3    don't know who's picking up with the agenda.  I don't need to

4    hear anything else on this subject.

5          MR. LEE:  I wasn't going to say anything, Your Honor.

6          THE COURT:  Okay.

7          MR. LEE:  I thought I could --

8          THE COURT:  Hang on.  Whoever's on the phone, your

9    heavy breathing is coming through into the courtroom so you

10   need to sort of -- if you're holding a receiver, move away from

11   the receiver, put your phone on mute.  Okay.  Thank you.  Go

12   ahead, Mr. Lee.

13         MR. LEE:  So what would have been item number 1, which

14   is an uncontested matter, Your Honor, is the debtors' amended

15   motion for approval of its key employee retention program --

16   I'm sorry -- key employee incentive program.  Pardon me.

17         So following Your Honor's opinion in August, we've

18   been working, the debtors and the advisors, to structure a KEIP

19   to ensure that it addresses the concerns that Your Honor raised

20   in the opinion and also with the U.S. trustee and with the

21   committee.  And we understand that the primary concern, the

22   principle concern that was expressed was that there was too

23   much emphasis given to closing the sales in the program.

24         So what we did, Your Honor, was go back to the drawing

25   board.  The terms of the KEIP, as amended, are attached in Ms.

1   Janiczek's declaration.  We worked through that with the U.S.

2   trustee who worked through it with the committee.  We submitted

3   a supplemental brief to the U.S. trustee explaining how we felt

4   that we had now resolved what the issues were.  And I'm pleased

5   to report, Your Honor, that after a fairly lengthy and engaged

6   discussion on what's obviously a very topical issue that there

7   is consensus or at least no objection to the form of the

8   modified KEIP.  And we hope that we followed Your Honor's

9   guidance in (a) coming before you with a consensual program;

10  and secondly, one that is obviously decidedly incentivizing.

11          So with that, Your Honor, we have a form of order

12  which -- I know we submitted.  I believe there was one

13  additional change that was requested by the creditors'

14  committee which was the backhand more of the payment.  And so,

15  we have a form of modified order which I'm happy to bring to

16  the Court.  And then we will file it electronically to Your

17  Honor's chambers.

18          THE COURT:  All right.  Does anybody else wish to be

19  heard with respect to the KEIP?

20          THE COURT:  All right.  The Court has reviewed --

21          MS. TOMASCO:  Your Honor, on the phone.  I'm not sure

22  if we moved past the limited objections of the RMBS trustees

23  and the  joiners thereto.  I think we've gone to the key

24  employee retention program --

25          THE COURT:  May I ask who's speaking?

1      MS. TOMASCO:  This is Patty Tomasco on behalf of the

2  Frost National Bank.  We joined in the RMBS trustee objection,

3  but we were not mentioned in the debtors' announcement of

4  whether or not our servicing agreement was going to be included

5  in the changes to the APA.

6      THE COURT:  Mr. Goren, can you shed any light on that?

7      MR. GOREN:  Your Honor, I mean, our view had been that

8  the pre-auction objections related to the trustees.  That was

9  who we entered into the scheduling order with.  So --

10     THE COURT:  Well, no.  I mean, the scheduling order

11  actually specifically provided that the RMBS trustees or any

12  party could file pre-auction objections by August 23rd.

13     MR. GOREN:  At any rate, we're still discussing with

14  Nationstar, but we think in all likelihood, we're going to end

15  up rejecting Frost Bank's servicing agreement.  So that -- we

16  think it makes sense to defer that until the sale hearing while

17  we analyze those issues and --

18     THE COURT:  All right.  If you would speak with Frost

19  Bank's counsel so they're at least fully advised of what's

20  happening.  Okay?

21     MR. GOREN:  Will do.  Thank you.

22     THE COURT:  All right.  Thank you.  I'm sorry.  Go

23  ahead, Mr. Lee.  Well, does anybody else wish to be heard with

24  respect to the KEIP?  All right.  As I started to say, the

25  Court has reviewed the modified KEIP.  Obviously, I haven't

RESIDENTIAL CAPITAL, LLC, et al.                    21

1   seen any last minute changes that were made in the proposed

2   order.  Obviously, I'm quite familiar with the matter and the

3   Court is satisfied that the KEIP complies with all applicable

4   law and therefore it is approved.

5           MR. LEE:  Thank you, Your Honor.  We'll submit a

6   revised form of order.

7           THE COURT:  Okay.  Thank you.

8       (Pause)

9           THE COURT:  Mr. Goren?

10          MR. GOREN:  Thank you, Your Honor.  Next, and I

11  believe last, is the debtors' motion to approve the amendment

12  to the Barclays' debtor-in-possession financing facility and

13  related payment of fees.

14          THE COURT:  Right.

15          MR. GOREN:  We filed a declaration of Marc Puntus from

16  Centerview Partners in support of the motion.  As you might

17  recall from the beginning of the case, one of the issues that

18  was raised with the DIP was that it required us, upon any

19  significant asset sale at least, to repay the entire DIP.  And

20  there was some concern that that didn't provide adequate

21  flexibility to be able to close, for example, the whole loan

22  sale before the platform sale.  And those two things didn't

23  necessarily need to go on the same time frame.

24          We were unable to secure those changes as part of the

25  original DIP, but we're pleased to report that we did agree

RESIDENTIAL CAPITAL, LLC, et al.                                    22

1  with Barclays on an amendment to the DIP facility that will

2  permit us to consummate the legacy portfolio sale ahead of the

3  platform sale and also to sell certain FHA/VA loans up to 200

4  million dollars.  And those loans are a second lien collateral

5  for the DIP.  It's first lien collateral for the Ally LOC.

6          We believe that these changes will benefit the

7  debtors' estates by (a) saving us in fees and expenses under

8  the DIP because we'll be able to use the proceeds of the whole

9  loan to pay down -- whole loan sale to pay down the DIP before

10 we otherwise would have been able to; and second, we think it

11 was important because it gives certainty to the whole loan

12 bidders that they're not going to be stuck on the same time

13 frame as the platform sale.

14         There were no objections to the motion.  The

15 creditors' committee did file a reservation of rights to ensure

16 that the sale proceeds will be applied in the same manner as if

17 the sales were closed simultaneously.  The committee's basic

18 concern is that if the sales were to close simultaneously, the

19 proceeds of Barclays' first lien collateral, which were

20 transferred into the DIP borrowers, the two entities created at

21 the outset, would be used to satisfy the DIP.  But if we

22 consummate sales of second lien collateral first, it's possible

23 those could be used to pay off the DIP which would then

24 increase the equity in the DIP borrower.  And equity of the DIP

25 borrower has been pledged to junior secured bonds as a

1  replacement lien.

2          So it gets kind of convoluted but the debtors don't

3  really believe that this is ultimately an issue because they

4  believe that there would be an intercompany claim created, a

5  post-petition intercompany claim, between the entity that paid

6  the debt and the DIP borrower which would sort of leave things

7  at status quo.

8          But to be clear, though, we don't intend to prejudice

9  anybody's rights by entering into the DIP amendment.  We

10  certainly agree that the order in which we pay things should

11  not substantially prejudice anyone's rights.  And all parties'

12  rights are reserved as to the use of sale proceeds.  And it

13  will be dealt with either, if necessary, in a sale order or as

14  part of the plan.

15          THE COURT:  Mr. Zide, you want to be heard on this?

16          MR. ZIDE:  Mr. Goren laid out the issue that we had

17  with them.  We had had discussions with the debtors in the days

18  leading up to this hearing.  We were fine with him putting this

19  on the record that this would be solved through an intercompany

20  claim that unsecured creditors would not be prejudiced by this,

21  Your Honor.

22          THE COURT:  Thank you very much.  Anybody else wish to

23  be heard with respect to the debtors' motion to approve an

24  amendment to the Barclays' DIP facility and fees payable

25  thereunder?  All right.  The Court has reviewed the motion and

1    certainly aware of what the committee's concern was.  I think

2    that's been addressed on the record in a satisfactory fashion.

3    So that motion's approved as well, Mr. Goren.

4            MR. GOREN:  Thank you, Your Honor.  We'll submit an

5    order to chambers.

6            THE COURT:  Okay.  Mr. Lee, anything else that --

7            MR. LEE:  Remarkably, not for Your Honor, no.

8            THE COURT:  Can you give me an update on where things

9    stand?  The auction is still on and on track?

10           MR. LEE:  Yeah.  The auction is still on track.  There

11   are bidders, plural.  We expect to receive the bids on Friday

12   and then the auctions themselves will be conducted at the

13   Sheraton beginning next Tuesday and Wednesday and potentially

14   Thursday as well.  And then we will file, obviously, Your

15   Honor, a notice hopefully by Friday or earlier of who the

16   winning bidders are.  Hopefully robust bidding and increased

17   price will make everybody happy.

18           THE COURT:  Okay.  All right.  Thank you.

19           MR. LEE:  Thank you, Your Honor.

20           THE COURT:  All right.  Anything else for today?  All

21   right.  We're adjourned, but I would like to see Mr. Lee, Mr.

22   Zide and Mr. Masumoto in my chambers when the hearing is over.

23   Okay?

24           MR. LEE:  Thank you, Your Honor.

25           THE COURT:  Thank you very much.

RESIDENTIAL CAPITAL, LLC, et al.                                                    25

1          (Whereupon these proceedings were concluded at 2:18 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              **I N D E X**

3

4                          **R U L I N G S**

5    DESCRIPTION                                    PAGE        LINE

6    Debtors' amended motion for approval of its     21          4

7    key employee incentive program granted

8    Debtors' motion to approve an amendment to      24          3

9    Barclays' DIP facility and fees payable

10   thereunder granted

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

1

2                          C E R T I F I C A T I O N

3

4    I, Lisa Bar-Leib, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7                 *Lisa Bar-Leib*

8

9

10   _____

11   LISA BAR-LEIB (CET**D 486)

12   AAERT Certified Electronic Transcriber

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  October 18, 2012

19

20

21

22

23

24

25