**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, *etc.*, | |
| Plaintiffs, | Case No. 11 Civ. 7010 (DLC) |
| v. | ECF Case |
| ALLY FINANCIAL INC. f/k/a GMAC, LLC., *et al.*, | |
| Defendants. | |
| In re: | Chapter 11 Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | (Jointly Administered) |
| Debtors. | |

**RESPONSE OF THE FEDERAL HOUSING FINANCE AGENCY TO**
**THE DISTRICT COURT'S PROPOSED PRODUCTION ORDER FOR LOAN FILES**

KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP

Andrew K. Glenn (aglenn@kasowitz.com)
Kanchana Wangkeo Leung (kleung@kasowitz.com)
Daniel A. Fliman (dfliman@kasowitz.com)

1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Attorneys for Federal Housing Finance*
*Agency, as Conservator for the Federal Home*
*Loan Mortgage Corporation*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ........................................................................................................................ 2

    A.    The Federal Housing Finance Agency's Statutory Mandate Under the
Housing and Economic Recovery Act of 2008....................................................... 2

    B.    Procedural History. .................................................................................................. 3

ARGUMENT .............................................................................................................................. 6

I.    ALLY HAS CONTROL OVER THE LOAN FILES...................................................... 6

    A.    Applicable Law. ....................................................................................................... 6

    B.    Ally Has the Legal Right to Obtain the Loan Files From the Debtors. .................. 7

    C.    Ally Has the Practical Ability to Obtain the Loan Files From the Debtors........... 13

    D.    As the Producing Party, Ally Should Bear the Cost of Producing the Loan
Files........................................................................................................................ 15

II.    THE BANKRUPTCY CODE DOES NOT PREVENT ALLY FROM
PRODUCING THE LOAN FILES................................................................................ 15

    A.    Any Relief Imposed Under Section 105(a) Against FHFA Violates HERA........ 15

    B.    The Record Does Not Show That the Production of 2,100 Loan Files
Would Place an Undue Burden on the Debtors. .................................................... 18

CONCLUSION......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adelphia Communs. Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*
*(In re Adelphia Communs. Corp.)*,
302 B.R. 439 (Bankr. S.D.N.Y. 2003) ...................................................................17

*Bank of New York v. Meridien Biao Bank Tanzania Ltd.*,
171 F.R.D. 135 (S.D.N.Y. 1997) ............................................................................14

*Cyntegra, Inc. v. Idexx Labs., Inc.*,
No. CV 06-4170, 2007 U.S. Dist. Lexis 97417 (C.D. Cal. Sept. 21, 2007) ...........10

*Dietrich v. Bauer*,
No. 95 Civ. 7051, 2000 U.S. Dist. LEXIS 11729 (S.D.N.Y. Aug. 9, 2000) ...........7

*Esther Sadowsky Testamentary Trust v. Syron*,
639 F. Supp. 2d 347 (S.D.N.Y. 2009) ....................................................................18

*Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*,
233 F.R.D. 338 (S.D.N.Y. 2005) ............................................................................14

*FHFA v. UBS Americas*,
858 F. Supp. 2d 306 (S.D.N.Y. 2012) ....................................................................11

*Furgatch v. Resolution Trust Corp.*,
No. 93-20304, 1993 WL 149084 (N.D. Cal. Apr. 30, 1993) ..................................18

*GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*,
No. 11 Civ. 1299, 2012 U.S. Dist. LEXIS 57712 (S.D.N.Y. Apr. 20, 2012) ...........9

*Golden Trade v. Lee Apparel Co.*,
143 F.R.D. 514 (S.D.N.Y. 1992) .............................................................................9

*Hunter Douglas, Inc. v. Comfortex Corp.*,
No. 98 Civ. 479, 1999 U.S. Dist. LEXIS 101 (S.D.N.Y. Jan. 11, 1999)..................7

*In re Colonial Realty Co.*,
980 F.2d 125 (2d Cir. 1992).....................................................................................17

*In re Johns-Manville Corp.*,
26 B.R. 420 (Bankr. S.D.N.Y. 1983) ......................................................................19

*In re Lozano*,
392 B.R. 48 (Bankr. S.D.N.Y. 2007) .......................................................................6

*In re NTL, Inc. Sec. Litig.*,
    244 F.R.D. 179 (S.D.N.Y. 2007) ..........................................................................6, 9

*JPMorgan Chase Bank v. Winnick*,
    2006 WL 278192 (S.D.N.Y. Feb. 6, 2006).............................................................6

*JPMorgan Chase Bank v. Winnick*,
    228 F.R.D. 505 (S.D.N.Y. 2006) .............................................................................6

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
    674 F. Supp. 2d 483 (S.D.N.Y. 2009).....................................................................18

*Marine Midland Bank-Southern v. Thurlow*,
    53 N.Y.2d 381 (1981) .......................................................................................10, 12

*NRDC, Inc. v. Fed. Hous. Fin. Agency*,
    815 F. Supp. 2d 630 (S.D.N.Y. 2011)....................................................................17

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
    490 F.3d 130 (2d Cir. 2007).....................................................................................6

*Ssangyong Corp. v. Vida Shoes Int'l, Inc.*,
    No. 03 Civ. 5014, 2004 U.S. Dist. LEXIS 9101 (S.D.N.Y. May 19, 2004)............7

*Sunshine Dev. v. FDIC*,
    33 F.3d 106 (1st Cir. 1994)....................................................................................16

*Town of Babylon v. Fed. Hous. Fin. Agency*,
    790 F. Supp. 2d 47 (E.D.N.Y. 2011) .....................................................................17

## STATUTES

11 U.S.C. § 105.............................................................................................. *passim*

11 U.S.C. § 362(a) ........................................................................................5, 17

12 U.S.C. § 4617............................................................................................ *passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 34.........................................................................................6, 12, 14

The Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for the Federal Home Loan Mortgage Corporation ("Freddie Mac"), respectfully submits this memorandum of law (the "Response") in support of the *District Court's Proposed Production Order* [Docket No. 242], and in opposition to *Ally's Response to the Court's October 16 Order on the Production of ResCap Loan Files* (the "Ally Statement," cited herein as "Mem.") [Docket No. 247].[1]

## **PRELIMINARY STATEMENT**[2]

Defendants Ally Financial Inc. ("AFI") and GMAC Mortgage Group, Inc. ("GMACM" and with AFI, "Ally") continue to waste time and expense by using the Debtors' bankruptcy to shield Ally from its discovery obligations, both court-directed and under the SSA.  Ally's obfuscation not only affects this case, but also FHFA's prosecution of the 16 carefully coordinated actions pending before this Court.  Ally, who has custody and control over the requested Loan Files, must produce them now.  And, as this Court noted at the conference held before it on July 17, 2012, even if these Loan Files are in the Debtors' possession, the only real question is when, not if, these documents must be produced.

As this Court has recognized, FHFA is a "privileged plaintiff," with special status endowed by Congress under HERA to allow FHFA to carry out its critical mandate.  In this regard, the Anti-Injunction Provision of HERA prevents any other court from restraining, enjoining or otherwise affecting discovery in this action.  By this Response, FHFA asks this Court to "act with every piece of authority [it has] at [its] command"[3] to order Ally to produce

---

[1]    Contemporaneously herewith, FHFA also submits the *Declaration of Kanchana Wangkeo Leung in Support of the Response of Federal Housing Finance Agency to October 19, 2012 Statement of Ally Financial Inc.* (cited herein as "Leung Decl.").

[2]    Capitalized terms used but not defined in this Preliminary Statement shall have the meanings assigned to them in the balance of this Response.

[3]    Leung Decl., Ex A, October 15, 2012 Conference Transcript, 93:21-22.

the requested Loan Files and end this charade that has delayed discovery in this action for long

enough.

## BACKGROUND

A.    **The Federal Housing Finance Agency's Statutory Mandate
      Under the Housing and Economic Recovery Act of 2008.**

In July 2008, Congress passed the Housing and Economic Recovery Act of 2008

("HERA") as emergency legislation to address the national housing crisis.  Among other things,

HERA bestowed upon FHFA the responsibility, upon its appointment as Freddie Mac's

Conservator, to "rehabilit[e] … the affairs of [Freddie Mac]."  12 U.S.C. § 4617(a)(1).  In

support of this remedial purpose, HERA granted the Conservator broad powers to take any "such

action as may be necessary to . . . preserve and conserve the assets and property of [Freddie

Mac]," including but not limited to, issuing subpoenas, passing regulations, repudiating

contracts, collecting monies due, and asserting legal claims on behalf of Freddie Mac.  *Id.*

§§ 4617(b)(2)(D), (b)(2)(I), 4617(b)(12).  HERA also made FHFA a "privileged plaintiff" by

establishing a comprehensive limitations period for the Conservator to bring any claims, *id.*

§ 4617(b)(12), and by limiting the ability of courts to interfere with its statutory mandate, *id.*

§ 4617(f).  Specifically, HERA states:  "Except as provided in this section or at the request of the

Director, no court may take *any action to restrain or affect* the exercise of powers or functions of

the agency as conservator or receiver."  *Id.* § 4617(f) (emphasis added) (the "Anti-Injunction

Provision").

Pursuant to its statutory mission, FHFA undertook to investigate whether issuers of

residential mortgage backed securities ("RMBS") and others were liable for Freddie Mac's

losses on the RMBS Freddie Mac had purchased (the "Certificates").  Freddie Mac's efforts to

obtain loan documents presented challenges to its efforts to pursue remedies against those

entities involved in the marketing and sale of the Certificates. FHFA therefore issued 64

subpoenas to various entities, including now-debtor Residential Funding Company, LLC

("RFC"), for loan files and other documents. (Leung Decl., Ex. B, FHFA news release dated

July 12, 2010 titled *FHFA Issues Subpoenas for PLS Documents*; *id.,* Ex. C, FHFA Conservator

Subpoena to RFC dated July 8, 2010.)[4] The subpoena to RFC, a subsidiary of Ally and ResCap,

called for the production of loan files underlying the Certificates, including the loan files ("Loan

Files") that are the subject of FHFA's proposed sample and the District Court's proposed

production order. (*Id.*, Ex. C.)[5] However, RFC refused to comply with the subpoena and denied

FHFA the Loan Files before it and 50 of its affiliates, including Residential Capital, LLC

("ResCap" or "Debtors") filed for bankruptcy protection two years later on May 14, 2012.

(Leung Decl., ¶ 3.)

**B.    Procedural History.**

On June 4 and June 20, 2012, FHFA served upon Ally requests for the production of loan

files underlying the Certificates. In response, Ally objected to the request on the ground that

"[a]bsent cost-shifting" the request was "unduly burdensome" and stated that "AFI and GMACM

Group do not have any such files in their possession, custody, or control." (*Id.*, Ex. D, *Responses*

*and Objections by Defendants Ally Financial Inc. and GMAC Mortgage Group LLP to Plaintiff's*

*Third Request for the Production of Documents*.) FHFA has consistently rejected Ally's mantra

that it does not have control over documents in the possession of the Debtors. (*Id., e.g.*, Ex. E,

September 11, 2012 Bankr. Hearing Tr., 40:20-22.)

At the direction of this Court, FHFA applied to the United States Bankruptcy Court for

---

[4]    Due to the size of the exhibit to the subpoena (an Excel spreadsheet), it is not practicable to include it with this filing. FHFA can provide an electronic copy to the Court upon request.

[5]    FHFA was able to obtain a small fraction of loan files for loans backing two Certificates by exercising Freddie Mac's contractual rights vis-à-vis the trustee of the securitization trust.

the Southern District of New York ("Bankruptcy Court") for the production of certain loan tapes

from the Debtors that FHFA needed to develop its sampling protocol and to select its sample of

loans for reunderwriting (the "July 17 Application") [Bankr. Docket No. 810].

On July 17, 2012, this Court denied the Debtors' motion to extend the automatic stay to

FHFA's action against Ally because "the anti-injunction provision of HERA deprives this Court

of jurisdiction to grant the relief that ResCap seeks." (*Id.*, Ex. F, July 17, 2012 Hearing Tr.,

6:13-15.)  This Court reasoned that "HERA's anti-injunction provision must be construed

broadly to preclude judicial action of any kind that could impair the FHFA's ability to carry out

its statutorily mandated function," and the stay that ResCap sought "cannot be obtained through

mere application of the statutory automatic stay provided in Section 362" but only "through a

court's exercise of its equitable powers through Section 105 of the Bankruptcy Code." (*Id.* 9:3-

5, 9:22-24, 10:3-5.)  This Court did not "find ResCap's Section 105 analysis to be very strong

either" because the production of loan tapes and loan files involves "ministerial duties" rather

than "management in making judgments or negotiating a restructuring." (*Id.* 23: 13-14, 24: 5-8.)

At the same hearing, as it had previously done with the loan tapes, this Court directed

FHFA to request the Loan Files by application to the Bankruptcy Court before this Court would

adjudicate the issue of Ally's control. (*Id.* at 26:21-23.)  Accordingly, on July 20, 2012, FHFA

filed its supplement to the July 17 Application requesting certain Loan Files in the Debtors'

possession [Bankr. Docket No. 859].  In response to the Debtors' objection, FHFA narrowed its

request to the sample of Loan Files that FHFA's expert would select for reunderwriting -- at that

time, estimated to be around 2,500 loans; however, since FHFA still lacked sufficient loan tapes,

FHFA was unable to identify the precise loans (or number) at that time. (Leung Decl.¶ 4.)

Certain underwriter defendants (the "Underwriter Defendants") in *FHFA v. Ally Financial Inc.,*

*et al.*, 11-cv-7010 (DLC) (S.D.N.Y.) (the "Action") objected to FHFA's narrowed request and

subsequently filed their own application for all loan files for the 43,000 loans in the supporting

loan groups backing the Certificates.  The Bankruptcy Court held a preliminary hearing on

FHFA's application on August 14, 2012 (the "August 14 Hearing").  The only issue remaining

was the production of Loan Files because FHFA and the Debtors had reached an agreement with

respect to production of the loan tapes prior to the hearing.  The Bankruptcy Court asked for

clarification of certain issues, further briefing from the parties and scheduled an evidentiary

hearing for September 11, 2012 (the "September 11 Hearing").

On October 12, 2012, the Bankruptcy Court entered an opinion and order denying both

FHFA's and the Underwriter Defendants' requests for Loan Files (the "Bankruptcy Order")

[Bankr. Docket No. 1813].  In the Bankruptcy Order, the Bankruptcy Court concluded that the

automatic stay of "section 362(a) does not, standing alone, protect the Debtors from discovery

from third-party actions."  (Bankruptcy Order at 11.)[6]  Nonetheless, the Bankruptcy Court relied

on its equitable authority under section 105(a) of the Bankruptcy Code to extend the stay of

discovery until at least February 2012.  (Bankruptcy Order at 27.)  In so doing, the Bankruptcy

Court stated in conclusory fashion, without acknowledging the effect of HERA's Anti-Injunction

Provision, that it was "*not* issuing an injunction against FHFA," (*id*. at 11 (emphasis in

original)), although it was prohibiting any further discovery from the Debtors by any party

without further order of the Bankruptcy Court, and issuing what was tantamount to an

---

[6]    Bankruptcy Order at 6 ("An in-depth analysis of the *Sonnax* factors is unnecessary here because the issue in this
case is not whether the stay applies to FHFA's request under Bankruptcy Code section 362(a) alone, and therefore
should be lifted "for cause" under section 362(d)(1), but rather, whether the Court can use its section 105(a)
authority to regulate third-party discovery requested from the Debtors"); *id*. at 11 ("The Debtors offered no support
for their position that section 362(a) precludes discovery, erroneously relying on statements by this Court in granting
a preliminary injunction staying litigation against the Non-Debtor Affiliates.  The Court accepts FHFA's argument
that section 362(a) does not, standing alone, protect the Debtors from discovery in third-party actions.  But the Court
concludes that section 105 provides the Court with the necessary authority to extend the protection of the automatic
stay to discovery from the Debtors.").

injunction.[7]  The next business day, FHFA filed its notice of appeal of the Bankruptcy Order and

submitted a letter to this Court seeking to expedite the appeal and articulating its concerns about

the attendant delays with discovery.

At an October 15, 2012 conference, this Court directed Ally to file a brief setting forth

why it should *not* have to provide the requested discovery and bear the expense.  On October 19,

2012, Ally filed its Statement.  That day, the Debtors filed a one-page letter stating that while

"the Debtors are not a party to the FHFA case pending before Judge Cote and it is not clear to us

whether the Debtors are expected to participate in the briefing," "[i]t is the Debtors' position that

the Proposed Production Order might well be in direct conflict with" the Bankruptcy Order.  (*See*

Letter from Joel C. Haims dated October 19, 2012, Docket No. 249.)

FHFA hereby submits this Response to address the Ally Statement and in further support

of its request for the 2,100 Loan Files.

## ARGUMENT

### I.
### ALLY HAS CONTROL OVER THE LOAN FILES

**A.**    **Applicable Law.**

Under Federal Rule of Civil Procedure 34, a responding party must produce documents

"in the responding party's possession, custody, or control. . . ."  Fed. R. Civ. P. 34(a)(1).[8]  "The

test for the production of documents is control, not location."  *In re NTL, Inc. Sec. Litig.*, 244

---

[7]    *Id.* at 11 ("On the evidentiary record here, the Court concludes that the Debtors have established that section 105 should be applied to *limit* or *restrict* third-party discovery from the Debtors absent further order of the Court. To be clear, this Court is *not* issuing an injunction against FHFA; rather, the Court is extending the protection of the stay pursuant to 105(a) to *anyone* seeking discovery from the Debtors absent further order of the Court.").  The Bankruptcy Order restrains FHFA from carrying out its statutory mandate.

[8]    The Bankruptcy Court has also acknowledged that "[t]here is authority, including an opinion by this [Bankruptcy] Court, the under Rule 34, a party to litigation may be required to produce documents in the custody or control of another."  (Bankruptcy Order at 32 n.19) (citing *In re Lozano*, 392 B.R. 48 (Bankr. S.D.N.Y. 2007); *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007); *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y. 2006) ("*Winnick I*"); *JPMorgan Chase Bank v. Winnick*, 2006 WL 278192 (S.D.N.Y. Feb. 6, 2006) ("*Winnick II*")).

F.R.D. 179, 195 (S.D.N.Y. 2007).  "'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand.  This principle applies where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation."  *Dietrich v. Bauer*, No. 95 Civ. 7051, 2000 U.S. Dist. LEXIS 11729 at *7 (S.D.N.Y. Aug. 9, 2000) (Sweet, J.) (granting motion to compel a non-party parent corporation to produce documents in the possession of its wholly-owned subsidiary because a parent had operational control and oversight over its subsidiary).  The test for custody or control "focuses on whether the corporation has 'access to the documents' and 'ability to obtain the documents.'"  *Hunter Douglas, Inc. v. Comfortex Corp.*, No. 98 Civ. 479, 1999 U.S. Dist. LEXIS 101, at *9 (S.D.N.Y. Jan. 11, 1999) (Pauley, J.).

In the context of a parent-subsidiary relationship, courts in this District consider factors such as "the degree of ownership and control exercised by the parent over its subsidiary, a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, and an agency relationship."  *Ssangyong Corp. v. Vida Shoes Int'l, Inc.*, No. 03 Civ. 5014, 2004 U.S. Dist. LEXIS 9101, at *12 (S.D.N.Y. May 19, 2004) (ordering New York branch office to produce documents in the possession of Korean affiliate because entities shared documents in the ordinary course of business).  Moreover, if the nature of the relationship between the parent and its subsidiary is such that they exchange documents to assist one another in litigation, they must produce such documents during discovery.  *See Hunter Douglas*, 1999 U.S. Dist. LEXIS 101, at *9 (granting motion to compel where parent and subsidiary were found to freely exchange documents).

**B.**    <u>**Ally Has the Legal Right to Obtain the Loan Files From the Debtors.**</u>

Ally has control over the Loan Files because it has the legal right to obtain them upon request pursuant to a Shared Services Agreement, by and between AFI and ResCap, that was

7

approved by the Bankruptcy Court on June 15, 2012 ("Agreement" or "SSA").  (Leung Decl.,

Ex. G.)  Specifically, the Record Services Statement of Work ("Record Services SOW") in the

Agreement states that it is ResCap's responsibility to "[f]ulfill requests for Data, Documents and

Folders" from AFI, and that it must "*[p]rocess requests for files/documents* that are received

from internal and external clients for loan sales, *litigation requests*, audits and reconciliation

projects" and "*deliver files/images* to [the] requestor in a mutually agreeable format that is

suitable to their request (i.e. electronic format)" (*Id.*, Ex. H, Record Services SOW at I, II.A.2,

III.A.2) (emphasis added).  ResCap has no discretion to refuse a request by AFI because

"[d]uring the Term of the statement of work, ResCap *will provide* all services under the terms

and conditions of [the Record Services SOW]."  (*Id.* at VI.B.1); *see also id.*, Ex. G, SSA ¶ 3.1(a),

3.1(c) (the parties "*will provide* the Services within each of the Functional Service Areas" listed

in Schedules A-1 and A-2 of the Agreement, and "*will perform or caused to be performed* the

Services referenced in the Applicable Statement(s) of Work . . . .") (emphasis added).

Accordingly, the Agreement unambiguously requires the Debtors to comply with requests from

AFI for loan files for litigation purposes.  Indeed, Ally concedes, and the Debtors have

confirmed, that the Debtors have historically provided loan files to AFI for litigation.  (Mem. at

9; Leung Decl., Ex. I, Suppl. Mongelluzzo Decl. ¶ 28 (pre-bankruptcy, the Debtors delivered

loan files to AFI for foreclosure cases).)

       In addition, Ally can obtain access to the Loan Files from ResCap pursuant to the Legal

Services Statement of Work ("Legal Services SOW").  The Legal Services SOW states that

"ResCap *will provide* the following Services to AFI in connection with its business activities

*when requested by AFI* and consistent with current and historical practice:  (i) Legal advice and

counseling, including *litigation management and support*, including service of process, *e-*

*discovery, discovery responses*, and litigation holds, as may be necessary or required by AFI

from time to time, *including without limitation, making available relevant systems and software*

that may be developed by or for the e-discovery team." (Leung Decl., Ex. J, Legal Services

SOW at II) (emphasis added). According to the Debtors, the Loan Files are stored in electronic

format in ResCap's FileNet or MortgageServ systems and in hard copy with its vendors, Iron

Mountain and Kenwood Records. (*Id.*, Ex. K, Mongelluzzo Decl. ¶¶ 14, 29.) Under the Legal

Services SOW, if Ally requests access to FileNet, MortgageServ or ResCap's vendors, to obtain

Loan Files, ResCap must comply. Ally's reliance on the SOW's identification of the Evidence

Management System and Legal Connects (Mem. at 8) does not change the analysis because the

identification of certain software applications is specifically "without limitation" to other

litigation support that ResCap must provide to AFI. While Ally contends that ResCap is not

required *to provide documents* under this SOW, this argument misses the point. (Mem. at 7.)

The relevant legal inquiry is whether Ally has the access and the ability to obtain the documents

-- not whether Ally can demand physical delivery of them.

Accordingly, Ally has control over the Loan Files by virtue of the Agreement. *See In re*

*NTL, Inc. Sec. Litig.*, 244 F.R.D. at 195-96 (defendant had control over documents of

reorganized company based on document sharing clauses in debtors' demerger agreement and

transitional services agreement, and practical ability, based on past practice, to obtain relevant

documents by merely asking); *Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y.

1992) (holding that plaintiffs had legal right to obtain documents from U.S. licensee because of

contractual cooperation provision and practical ability to obtain documents from foreign patent

agents based on agents' willingness to submit affidavits in plaintiffs' litigation); *GenOn Mid-Atl.,*

*LLC v. Stone & Webster, Inc.*, No. 11 Civ. 1299, 2012 U.S. Dist. LEXIS 57712 at *31 (S.D.N.Y.

Apr. 20, 2012) (holding that a party had the practical ability to control the documents possessed

by a third-party litigation consulting firm pursuant to a contract for services); *see also Cyntegra,*

*Inc. v. Idexx Labs., Inc.*, No. CV 06-4170, 2007 U.S. Dist. Lexis 97417, at *15-*16 (C.D. Cal.

Sept. 21, 2007) ("A contractual relationship with a third-party entity provides, at a minimum, an

obligation to make reasonable inquiry of the third party entity for the data at issue.").

Ally resorts to parol evidence and the *ipse dixit* of its attorneys, to argue that (i)

producing large volumes of loan files to FHFA contravenes the purpose of the Agreement to

ensure the Debtors' continued operations, (ii) the production of loan files to anyone other than

Ally Bank is outside the Agreement's scope; and (iii) the Agreement does not permit the sharing

of documents or grant Ally ownership interests over ResCap's data.  The parol evidence rule

precludes each of these meritless arguments.  *See Marine Midland Bank-Southern v. Thurlow,* 53

N.Y.2d 381, 387 (1981) (holding parol evidence rule bars all evidence of prior or

contemporaneous negotiations or agreements offered to modify or contradict the provisions of an

integrated writing).

*First*, the production of 2,100 Loan Files does not threaten the continued operation of the

Debtors, nor does it "create a back-door discovery mechanism for every litigant seeking access

to ResCap's documents."  (Mem. at 6.)  As an initial matter, the Debtors maintain that "ResCap

requests thousands of loan files *on a regular basis* as part of its regular business operations."

(Leung Decl., Ex. I, Suppl. Mongelluzzo Decl. ¶ 9.)  There has been no showing that an

additional 2,100 Loan Files would derail, let alone upset, the Debtors' normal operations.[9]  More

fundamentally, Ally's floodgates argument is overblown because not "every litigant" can obtain

access to ResCap's documents, as other parties can be, and have been, enjoined by the

---

[9]    That the Underwriter Defendants initially requested 43,000 loan files is irrelevant because their failure to
identify additional loan files for this Court's Proposed Production Order betrays their lack of need for loans files
beyond FHFA's current sample request.

Bankruptcy Court.  As discussed below, only FHFA is the beneficiary of HERA's Anti-

Injunction Provision.  *See infra* Point II.A; *cf. FHFA v. UBS Americas*, 858 F. Supp. 2d 306

(S.D.N.Y. 2012) (noting that Section 13 of the Securities Act "continue[d] to apply with full

force to the vast majority of litigants; HERA creates an exception for a single, privileged

plaintiff—FHFA").  Finally, Ally should not be permitted to reap the benefits of the Agreement

when convenient while disavowing its attendant obligations when inopportune.  The reality is

that ResCap agreed to provide post-bankruptcy services to Ally in the areas of accounting, risk,

capital markets, compliance, consumer lending, finance, human resources, information

technology, legal, master servicing, and records -- services that include producing the Loan Files

at issue.  (Leung Decl., Ex. G, SSA, Schedule A-2, ResCap to AFI SOWs.)  If ResCap's

provision of services to Ally threatens the Debtors' businesses, then ResCap misrepresented to

the Bankruptcy Court that this two-way service contract was "warranted and absolutely

necessary to avoid any disruption in the Debtors' day-to-day operations" and that Ally would

compensate ResCap for its services (*Id.,* Ex L, Shared Services Motion ¶ 11.)

> *Second*, there is no merit to Ally's contention that "the Record Services SOW was

intended solely to address the small volume loan file requests of Ally Bank."  (Mem. at 9.)  The

Record Services SOW is expressly "between Ally Financial Inc. ('AFI') and Residential Capital,

LLC (together with its subsidiaries, 'ResCap')" and "sets forth each Party's responsibilities for

the Record Services Group services provided by ResCap *to AFI.*"  (Leung Decl., Ex. H, Record

Services SOW at 1) (emphasis added).  By contrast, the Legal Services SOW indicates that the

"legal Services [are] to be provided by ResCap *to AFI (including its subsidiaries).*"  (*Id.*, Ex. J,

Legal Services SOW at 1) (emphasis added).  Hence, the Record Services SOW is *not* limited to

ResCap's services to Ally Bank.  The Agreement unambiguously expresses the parties' intent

that ResCap would provide record and legal services to AFI.  The Court should therefore reject

Ally's attempt to introduce self-serving parol evidence from the Scheipe and Mongelluzzo

Declarations to vary the terms of the Agreement.  (Mem. at 9-10.)[10]  *See Marine Midland Bank-*

*Southern v. Thurlow,* 53 N.Y.2d at 387 (barring parol evidence).

Furthermore, Ally's reliance on purported "historical practice" is misguided because the

Agreement refers to "historical practice" not "historical volume."  The uncontroverted evidence

of the relevant prior *practice* is ResCap's production of loan files to AFI upon request.  (Leung

Decl., Ex. K, Mongelluzzo Decl. ¶ 28; Mem. at 9.)  That prior requests had been for smaller

numbers of documents is irrelevant because the parties specifically contemplated that AFI could

request more documents.  Thus, the Record Services SOW provides that "ResCap and AFI shall

work towards establishing mutually agreeable timelines"; that ResCap is "entitled to subcontract

the performance of any or all of the Services to a third party"; and "[i]f ResCap reasonably

determines that there is inadequate staffing or staffing lacks necessary training or skills …AFI

agrees to work reasonably with ResCap to address any such deficiencies in staff or skill sets."

(*Id.*, Ex. H, Record Services SOW at VII.A.5, VII.B.1.)  Accordingly, the production of the Loan

Files is entirely "consistent with historical practice" and the terms of the Agreement.

*Third*, Ally's argument that the Agreement does not give it a legal interest in, or grant it

access to, ResCap's documents fails as a matter of law and fact.  Ally's obligation to produce

documents under Rule 34 turns on its "possession, custody, or control" -- not "ownership."  Fed.

R. Civ. P. 34.  A party can "possess" documents it does not own.  The term "custody"

---

[10]    Citing the Mongelluzzo Declaration, Ally falsely states that "[t]he undisputed factual record demonstrates that as a servicer to Ally Bank, ResCap was typically asked to provide loans for ordinary business purposes, such as individual foreclosure cases and repurchase requests."  (Mem. at 9).  In fact, Mr. Mongelluzzo does not mention Ally Bank even once in either of his declarations.  (*See generally* Mongelluzzo Decl. and Suppl. Mongelluzzo Decl.).  Furthermore, as the Bankruptcy Court noted, FHFA objected to the admission of the paragraphs in the Mongelluzzo, Woehr, and Scheipe Declarations that purported to address the intent of the parties when they negotiated and entered into the Agreement.  (Bankruptcy Order at 8 n.6).

presupposes that the documents belong to someone else.  And, if the drafters had meant to equate

"control" with ownership, they could have just said so.  Given the clarity of the rule, it is not

surprising that Ally cannot cite a single authority to support its position, which the Bankruptcy

Court has also rejected.[11]  As a factual matter, the Agreement does not restrict record or legal

services to Ally's own documents.  Nor do the confidentiality provisions of the Agreement

support Ally's position.  That the Loan Files contain the confidential information *of borrowers* of

the mortgage loans, which ResCap may possess, does not turn that information into ResCap's

"Confidential Information."  (Mem. at 11.)

## C.  <u>Ally Has the Practical Ability to Obtain the Loan Files From the Debtors.</u>

Even in the absence of the Agreement, Ally has control over the Loan Files because it has

the practical ability to obtain them from the Debtors.  As the Debtors repeatedly admitted, AFI

and the Debtors are "integrated" and "in the ordinary course of business, ResCap, AFI and

certain of their affiliates provided various financial, operational and administrative services to

each other. . . .  Historically, the services that are now the subject of the Agreement were

provided on an undocumented basis."  (Leung Decl., Ex. L, Shared Services Motion ¶ 11.)[12]

Such ordinary-course services that had previously been shared on an undocumented basis

---

[11]    At the September 11 Hearing, Judge Glenn stated: "I think the issue that the debtors have raised and Ally – AFI
raised it in their filing here, I don't care who owns the stuff.  It doesn't make any difference who owns this data or
the documents.  *That's a red herring issue as far as I'm concerned*."  (Leung Decl., Ex. E, September 11 Bankr.
Hearing Tr., 46:21-25) (emphasis added).

[12]    *See also* Leung Decl. Ex L, Shared Services Motion ¶ 7 ("Given the integrated nature of the Debtors' and AFI's
businesses, the continuation of these services pursuant to the Agreement is both warranted and absolutely necessary
to avoid any disruption in the Debtors' day-to-day operations."); *id.* ¶ 12 ("The mortgage loan origination, servicing
and related securitization operations of AFI are an integrated business involving the Debtors and Ally Bank.  The
Debtors believe the services covered by the Agreement are common among enterprises similar to those of the
Debtors and their non-debt or affiliates, especially given the integrated nature of their business…"); *id.* ¶ 21 ("The
Debtors rely upon AFI to maintain, develop and service many of the integrated information technology systems
utilized, among other things, to seamlessly transmit loan applications and data among various AFI affiliates.") *id.* ¶
24 ("The Debtors' and AFI's loan origination and securitization businesses are integrated. . . . [I]t is essential to the
Debtors' day-to-day operations and their business model that AFI and its affiliates are able to continue to rely upon
and have the benefits of the services historically performed by ResCap.").

included making loan-related documents, information technology, and e-discovery support

available to AFI and its affiliates.  AFI is expected to assist the Debtors with loan file reviews

(Ex. M, SOW Summary at 7), regulatory compliance (*id.* at 4), compliance with data privacy

laws (*id.* at 5), responding to information requests from Congress (*id.* at 8), and providing

information to rating agencies (*id.*), among other things.  Given AFI's enormous administrative

and financial support of the Debtors, it is not credible that the Debtors would withhold data or

information from AFI.

Plainly, Ally has not asked ResCap to produce the Loan Files.  (Mem. at 15; Leung Decl.,

Ex. N.)  This adamant refusal is not a cognizable basis to evade Rule 34 discovery obligations.

*See Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 233 F.R.D. 338,

341-42 (S.D.N.Y. 2005) (bank had practical ability to obtain relevant documents from its non-

party former employee, or at the very least, to ask its former employee for documents "before

asserting that that they have no control over documents in the former employees' possession");

*Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 147 (S.D.N.Y. 1997)

(ordering defendant to produce documents from assignor, in part, because it had been able to

obtain the documents when it had requested them in the past).  In fact, nearly 6 weeks ago,

counsel for FHFA requested that AFI ask the Debtors to provide Loan Files pursuant to the

Agreement; AFI never did so.  (Leung Decl., Ex. O, email from Andrew K. Glenn dated

September 4, 2012.)

Ally's belated offer to request the Loan Files is a last ditch attempt to avoid being ordered

to do so under pain of contempt.  The offer is illusory, however, because Loan File production is

already covered by the existing Agreement and it would give the Debtors inappropriate control

over the course of this litigation.  ResCap has avoided producing the Loan Files since 2010,

when RFC was first subpoenaed.  Rather than "caus[ing] AFI significant inconvenience" (Mem. at 14), ResCap's delay benefits Ally by continuing to obstruct FHFA from re-underwriting the Loan Files necessary to prove its affirmative case.  Ally is being disingenuous when it asserts that it needs Loan Files for its defenses (Mem. at 16), because its strategy is to delay or deny FHFA evidence to establish Ally's liability.

**D.    As the Producing Party, Ally Should Bear the Cost of Producing the Loan Files.**

With respect to cost, because Ally is required to produce the Loan Files as a party to the litigation, Ally should bear the cost of producing the Loan Files.  This Court has found that defendants, including Ally, would bear the cost of producing loan files in FHFA's sample. (Leung Decl., Ex. A, October 15, 2012 Conference Tr., 34:21-22, 35:7, 36:10-14.)  Ally is also obligated to pay such costs under its Shared Services Agreement with ResCap.  (*Id.*, Ex. G, SSA at ¶ 10.1; *see also* Schedule C-1a, Schedule C-2a.)  Ally has presented no reason that the cost of production should be borne by anyone other than Ally.

## II.
## THE BANKRUPTCY CODE DOES NOT PREVENT ALLY FROM PRODUCING THE LOAN FILES

**A.    Any Relief Imposed Under Section 105(a) Against FHFA Violates HERA.**

Ally argues that it lacks the ability to obtain the Loan Files from ResCap because "the Bankruptcy Court concluded that lifting the stay at this time is not appropriate."  (Mem. at 14.) At the threshold, this argument is meritless because a parent corporation's request for documents from its subsidiary does not amount to taking discovery of its subsidiary; they are not adverse to one another in the litigation.  More fundamentally, however, the Bankruptcy Court was without jurisdiction "to extend[] the protection of the stay, pursuant to section 105(a)" to discovery needed by FHFA.

15

HERA prohibits any court action that would "restrain" or "affect" FHFA's exercise of its

powers and functions as Conservator, including the prosecution of discovery.  HERA's Anti-

Injunction Provision prohibits any court from interfering with FHFA's broad mandate to

rehabilitate Freddie Mac and Fannie Mae.[13]  Specifically, 12 U.S.C. § 4617(f) states:

> Except as provided in this section or at the request of the Director,
> *no court may take any action to restrain or affect* the exercise of
> powers or functions of the [FHFA] as a conservator or receiver.

12 U.S.C. § 4617(f) (emphasis added).

This Court has already recognized the clarity and import of the Anti-Injunction Provision

by refusing the Debtors' request to extend the automatic stay under Section 105 of the

Bankruptcy Code to prevent this Action from proceeding against Ally.  (*See* Leung Decl., Ex. F,

July 17 Hearing Tr., 6:13-15.)  Accordingly, HERA deprives the Bankruptcy Court of

jurisdiction to apply Section 105 against the Conservator.

While courts have held that a bankruptcy court's power to enforce the automatic stay may

not violate the Anti-Injunction Provision, the automatic stay does not apply here.  As explained

by the First Circuit interpreting HERA's analog, FIRREA, "[t]he bankruptcy court is a creature

of statute, and [the debtor] has not suggested that it is beyond Congress's lawful powers to limit

the remedies available to that court or to remove selected matters from its jurisdiction.  Here,

Congress exercised that very power, limiting the authority of all courts -- the bankruptcy court

included -- to enjoin the FDIC."  *Sunshine Dev. v. FDIC*, 33 F.3d 106, 116 (1st Cir. 1994)

(emphasis added).  By contrast, the self-effectuating provisions of the automatic stay established

---

[13]    The continuation of this Action is an "exercise of powers or functions of the [FHFA] as a conservator" for
Freddie Mac.  *See* 12 U.S.C. § 4617(f).  In its lawsuit, FHFA seeks to redress wrongs that the defendants committed
against Freddie Mac and seeks to compensate Freddie Mac for the losses that the defendants caused Freddie Mac to
suffer.  The Action squarely fits within FHFA's mandated duties and authorizations that include "collect[ing] all
obligations and money due" to Freddie Mac and "tak[ing] such action as may be . . . necessary to put [Freddie Mac]
in a sound and solvent condition."  *See* 12 U.S.C. § 4617(b)(2)(B)(ii), (b)(2)(D)(i).

by Congress do not require a court to issue any order.  *See id*. at 113-14 ("we are confident that

the automatic stay does not violate FIRREA's anti-injunction provision because it arises directly

from the operation of a legislative enactment, not by court order.); *see also In re Colonial Realty

Co.*, 980 F.2d 125, 137 (2d Cir. 1992) (holding that "the injunctive order issued in this case to

implement the stay was in a sense superfluous" because "[t]he stay imposed by § 362(a) is

automatically 'applicable to all entities' without any need for the intervention of any court or

ruling.").

The Bankruptcy Court recognized that Section 362(a) of the Bankruptcy Code did not,

standing alone, provide a viable basis to preclude the discovery.  The inquiry should have ended

there, and FHFA should have been granted the requested Loan Files.  Instead, the Bankruptcy

Court took affirmative action and enlarged the stay pursuant to Section 105(a) -- which is not

self-effectuating -- to restrain or affect the discovery sought by FHFA.  *Adelphia Communs.

Corp. v. Associated Elec. & Gas Ins. Servs., Ltd. (In re Adelphia Communs. Corp.)*, 302 B.R.

439, 442 (Bankr. S.D.N.Y. 2003).  This violated the Anti-Injunction provision.

While the Bankruptcy Court stated in the Bankruptcy Order that it was only using its

Section 105 authority to "*limit* or *restrict* third-party discovery from the Debtors absent further

order from the Court" and that it was "*not* issuing an injunction" against FHFA (Bankruptcy

Order at 11 (emphasis in original)), HERA does not permit the Bankruptcy Court to issue *any*

form of equitable relief under Section 105 that would "*restrain or affect* the exercise of powers

or functions of" the Conservator.  12 U.S.C. § 4617(f) (emphasis added).[14]  Congress did not

---

[14]    Courts are prohibited from granting any relief that would restrain or affect the FHFA's authority as conservator.
*See*, *e.g.*, *NRDC, Inc. v. Fed. Hous. Fin. Agency*, 815 F. Supp. 2d 630, 642 (S.D.N.Y. 2011) (SAS) ("Under HERA,
the FHFA has the authority to preserve and conserve the assets of the Enterprises, as well as take any action to put
the Enterprises in a sound and solvent condition . . . Because the FHFA was acting within its authority under HERA
when it issued the Letter, section 4617(f) applies and bars adjudication of this suit."); *Town of Babylon v. Fed. Hous.
Fin. Agency*, 790 F. Supp. 2d 47, 54 (E.D.N.Y. 2011) ("[T]here is no question that the acts sought to be nullified
here were undertaken pursuant to FHFA's broad and important statutory charge as conservator of the GSE's.  As

include any materiality or temporal threshold in HERA, and none should be read into the statute.

As this Court has noted, the plain meaning of the Anti-Injunction Provision precludes the

Bankruptcy Court from granting *any* form of equitable relief against FHFA, even the supposedly

temporary limitation or restriction granted by the Bankruptcy Court in the Bankruptcy Order.[15]

## B.    The Record Does Not Show That the Production of 2,100 Loan Files Would Place an Undue Burden on the Debtors.

Even assuming *arguendo* that restricting discovery under Section 105 was not an

impermissible restraint on FHFA's powers, and that an analysis of the burden on the Debtors was

necessary, the Bankruptcy Court did not correctly assess this burden.  The Bankruptcy Court

erred by considering the application of the Underwriter Defendants and FHFA collectively rather

than individually, and should have considered FHFA's request on a stand-alone basis,

particularly with respect to burden and expense.  FHFA substantially reduced its number of

requested Loan Files *to ease the burden on the bankruptcy estate*.  By reviewing FHFA and the

Underwriter Defendants' requests collectively, the Bankruptcy Court punished FHFA for the

Underwriter Defendants' scorched earth approach to this discovery.

The Debtors failed to offer evidence of the burden necessary to support injunctive relief

---

such, this action is barred by 12 U.S.C. § 4617."); *Kuriakose v. Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d 483, 494 (S.D.N.Y. 2009) (JFK) ("By moving to declare unenforceable the non-participation clause in Freddie Mac severance agreements, in essence Plaintiffs are seeking an order which restrains the FHFA from enforcing this contractual provision in the future. The FHFA is well within its statutory authority to enforce the contracts of Freddie Mac and take any other action it determines to be in the best interest of Freddie Mac.  HERA clearly provides that this Court does not have the jurisdiction to interfere with such authority."); *Esther Sadowsky Testamentary Trust v. Syron*, 639 F. Supp. 2d 347, 351 (S.D.N.Y. 2009) (BSJ) ("This ban is an essential part of HERA's comprehensive scheme for conservatorships and receiverships.  Here, the suit brought by the Trust would interfere with and potentially usurp precisely the powers granted to the FHFA by HERA.  As such, maintenance of this suit would violate Section 4617(f) of HERA and cannot be permitted.").  In sum, the "only relevant question" in conducting an analysis under Section 4617(f) "is whether the conservator or receiver is carrying out a statutory function or power."  *Furgatch v. Resolution Trust Corp.*, No. 93-20304, 1993 WL 149084, *2 (N.D. Cal. Apr. 30, 1993) (decided under parallel provisions in FIRREA (discussed *infra*)).

[15]    Even a temporary restraining order would violate the Anti-Injunction Provision.  *Furgatch v. Resolution Trust Corp.*, 1993 WL 149084, at *2 (holding, under analogous FIRREA provision, that the court was "without jurisdiction to issue a temporary restraining order" against the FDIC).  No matter how the Bankruptcy Court labeled its exercise of authority under 105(a) -- as an injunction, limitation or restriction -- the Bankruptcy Order violates the Anti-Injunction Provision.

against the limited discovery sought by FHFA.  *See, e.g., In re Johns-Manville Corp.*, 26 B.R. 420, 426 (Bankr. S.D.N.Y. 1983) (extending the stay using its 105 authority to non-debtor parties who were key personnel and top-level management of the debtor and were named as defendants in thousands of asbestos suits; in so doing, the court found that defending themselves in litigation or responding to discovery would be burdensome and a "massive drain on these numerous individuals' time and energy at this crucial hour of plan formulation.")  There is no evidence in the record that requiring Ally to request the Debtors to produce 2,100 Loan Files would extensively involve the Debtors' key personnel and management, impose a "massive drain" on the Debtors' resources or impose anything close to the requisite level of burden.  Rather, the declarations filed by the Debtors in the bankruptcy cases have largely ignored the fact that FHFA substantially reduced the number of Loan Files it requested.  Instead, the Debtors have continued to expound on the burden of producing thousands of files more than FHFA is seeking.  The Bankruptcy Court only spoke to the alleged burden of producing 5,000 Loan Files or 43,000 Loan Files.  (Bankruptcy Order at 30.)  Further, the Debtors' declarations only confirm this Court's view that production of the Loan Files is nothing more than a ministerial task that will not involve the Debtors' management or pose any real risk to the Debtors' ability to reorganize. (*See* Ex. F, July 17 Hearing Tr., 24:3-8 ("I don't think production of either the loan files or the loan tapes is something that is going to involve management of ResCap.  These are ministerial and clerical duties to gather these documents.  I don't see how they would be interfering in any way with the involvement of management in making judgments or negotiating a restructuring.").)  While the Debtors may have shown that producing Loan Files may take the time of certain low-level employees and outside vendors, they have failed to make the necessary showing that such a production would distract management from focusing on reorganization

efforts.

Thus, even if the inquiry into burden were relevant here -- and it is not, given the effect of

the Anti-Injunction Provision -- there is no record evidence that producing the 2,100 Loan Files

requested by FHFA would interfere with the Debtors' reorganization.

## **CONCLUSION**

For reasons set forth above, FHFA respectfully requests that this Court order AFI to

produce the 2,100 Loan Files requested by FHFA.

Dated:  New York, New York
       October 22, 2012

                           Respectfully submitted,

                           KASOWITZ, BENSON, TORRES
                            & FRIEDMAN LLP

                           By: /s/ Andrew K. Glenn
                              Andrew K. Glenn (aglenn@kasowitz.com)
                              Kanchana Wangkeo Leung (kleung@kasowitz.com)
                              Daniel A. Fliman (dfliman@kasowitz.com)
                              1633 Broadway
                              New York, New York 10019
                              Telephone:  (212) 506-1700
                              Facsimile:  (212) 506-1800

                           *Attorneys for Federal Housing Finance Agency,*
                           *as Conservator for the Federal Home Loan*
                           *Mortgage Corporation*