MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
James A. Newton

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM
THE AUTOMATIC STAY FILED BY MICHAEL P. AND STEPHANIE L. DONAGHY**

ny-1061631

# **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................... iii
PRELIMINARY STATEMENT ............................................................................................... 1
BACKGROUND ......................................................................................................................... 1
    A.    The Donaghy Bankruptcy Proceeding and Sanctions Motion ............................... 2
OBJECTION ............................................................................................................................... 6
I.    The Account Issues Raised By The Sanctions Motion Have Been Resolved .................. 6
II.    The Supplemental Servicing Order Does Not Grant Relief From The Stay To Pursue Sanctions In The Donaghys' Bankruptcy Proceeding ........................................... 6
III.    Relief From The Automatic Stay Should Not Be Granted ................................................ 8
    A.    The Policies Underlying the Automatic Stay Weigh in Favor of Denying the Relief Requested by the Movants ..................................................................... 8
    B.    The Movants have Failed to Establish Cause for Relief from the Automatic Stay ............................................................................................................ 9
        1.    Relief From the Stay Would Not Result in a Complete Resolution of the Issues (<u>Sonnax</u> Factor No. 1) ......................................................... 11
        2.    The Lifting of the Automatic Stay Is Connected to and Will Interfere with the Debtors' Chapter 11 Cases (<u>Sonnax</u> Factor No. 2) ........................................................................................................... 12
        3.    No Specialized Tribunal Has Been Established to Hear the Donaghys' Sanctions Request (<u>Sonnax</u> Factor No. 4) ............................. 13
        4.    No Insurer Has Assumed Responsibility for Any Resulting Sanctions (<u>Sonnax</u> Factor No. 5) ............................................................ 13
        5.    The Donaghys' Request for Sanctions does not Primarily Involve Third Parties (<u>Sonnax</u> Factor No. 6) ....................................................... 14
        6.    Litigation of the Donaghys' Request in Another Forum Would Prejudice the Interests of Other Creditors (<u>Sonnax</u> Factor No. 7) ........... 14
        7.    The Interests of Judicial Economy and Economical Resolution of the Donaghys' Request Are Best Served by Maintaining the Automatic Stay (<u>Sonnax</u> Factor No. 10) .................................................. 15
        8.    The Balance of Harms Favors Maintaining the Automatic Stay (<u>Sonnax</u> Factor No. 12) ............................................................................. 15
CONCLUSION ......................................................................................................................... 16

ny-1061631

## TABLE OF CONTENTS (continued)

**Page(s)**

EXHIBIT 1, Declaration of Jennifer Scoliard ("**Scoliard Decl.**")

EXHIBIT 2, Order in In re Michael & Stephanie Donaghy, No. 10-10802-JHW (Bankr. D.N.J. Aug. 20, 2012) ("**NJ Order**")

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow),
   126 F.3d 43 (2d Cir. 1997) ...................................................................................................10

In re Leibowitz,
   147 B.R. 341 (Bankr. S.D.N.Y. 1992) ...................................................................................11

In re Pioneer Commercial Funding Corp.,
   114 B.R. 45 (Bankr. S.D.N.Y. 1990) ............................................................................8, 9, 13

Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.),
   Nos. 09-50026 (REG), 10 Civ. 36 (RJH),
   2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010) ........................................................................11

Mazzeo v. Lenhart (In re Mazzeo),
   167 F.3d 139 (2d Cir. 1999) ...................................................................................................10

Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Prot.,
   474 U.S. 494 (1986) .................................................................................................................8

SEC v. Brennan,
   230 F.3d 65 (2d Cir. 2000) .......................................................................................................8

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
   907 F.2d 1280 (2d Cir. 1990) .......................................................................................... passim

**STATUTES**

11 U.S.C.
   § 362(a)(1) ...............................................................................................................................8
   § 362(d)(1) ...............................................................................................................................9

**OTHER AUTHORITIES**

3 Collier on Bankruptcy ¶ 362.03 (16th ed. rev. 2012) ..................................................................8

Residential Capital, LLC and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**"), hereby submit this objection (the "**Objection**") to Michael P. and Stephanie L. Donaghy's *Notice of Motion for Relief from the Automatic Stay* [Docket No. 1615] (the "**Motion**").  In support hereof, the Debtors submit the Declaration of Jennifer Scoliard (the "**Scoliard Decl.**"), attached hereto as Exhibit 1, and respectfully represent:

## PRELIMINARY STATEMENT

1.    The Donaghys, the movants herein, seek relief from the automatic stay to pursue monetary sanctions against Debtor GMAC Mortgage, LLC ("**GMAC Mortgage**") in the Donaghys' chapter 13 bankruptcy case pending before the United States Bankruptcy Court for the District of New Jersey (the "**NJ Jersey Bankruptcy Court**").  In their bankruptcy, the Donaghys seek sanctions against GMAC Mortgage for errors they allege the Debtors have made on their mortgage loan account.  Despite GMAC Mortgage's significant efforts to address the Donaghys' concerns and the resolution of the Donaghys' complaints through GMAC Mortgage's compliance with an order of the NJ Bankruptcy Court, the Donaghys now seek to pursue sanctions, in large part based on allegations concerning the Debtors' prepetition conduct.  The Donaghys should not be permitted to liquidate their prepetition monetary claims at this juncture any more than any other creditor that has requested to do so outside of this Court.

## BACKGROUND

2.    On the May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being

jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee has been appointed in these Chapter 11 cases. On July 3, 2012, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Honorable Arthur T. Gonzalez, former Chief Judge of the United States Bankruptcy Court for the Southern District of New York as examiner.

3. On May 16, 2012, the U.S. Trustee appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

4. On July 13, 2012, the Court entered the Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses [Docket No. 774] (the "**Supplemental Servicing Order**").

5. On September 27, 2012, the Donaghys filed the Motion. In the Motion, the Donaghys request relief from the automatic stay to pursue sanctions against GMAC Mortgage in their bankruptcy case. As described more fully below, the Donaghys allege that GMAC Mortgage should be sanctioned for numerous alleged inaccuracies on their mortgage loan account.

      **A.**    **The Donaghy Bankruptcy Proceeding and Sanctions Motion**

6. Shortly after receiving a home loan modification under the Home Affordable Mortgage Program ("**HAMP**") in December 2009, on January 13, 2010, the Donaghys filed a

petition for relief under chapter 13 of the Bankruptcy Code in the NJ Bankruptcy Court. The Honorable Judith Wizmur is presiding over the Donaghys' case.

7. Approximately two years later, on March 13, 2012, the Donaghys filed a motion (the "**Sanctions Motion**") in their chapter 13 bankruptcy case seeking sanctions against GMAC Mortgage and its outside counsel, Milstead & Associates ("**Milstead**"). In the Sanctions Motion, the Donaghys raised numerous issues with respect to their mortgage loan account, including allegations of inaccuracies regarding calculation of escrow amounts, payment application, and the amount of GMAC Mortgage's proof of claim filed in the Donaghys' bankruptcy case.

8. The Debtors retained separate counsel, Joseph Riga, Esq. of McDowell Riga Posternock, PC, to handle the Sanctions Motion on their behalf.

9. On April 2, 2012, the Debtors filed a Brief in Opposition of the Sanctions Motions in the Donaghy's bankruptcy case. On April 3, 2012, Milstead filed an opposition to the Sanctions Motion.

10. On May 15, 2012, the NJ Bankruptcy Court held a hearing on the Sanctions Motion. At that hearing, GMAC Mortgage informed the NJ Bankruptcy Court of the commencement of these chapter 11 cases. The NJ Bankruptcy Court proceeded with the Sanctions Motion as to Milstead, and on June 29, 2012, sanctioned the firm $2,000 payable to the Donaghys within thirty (30) days of the entry of the order. The NJ Bankruptcy Court recognized that it could not act on the Donaghys' request for monetary sanctions, and continued the hearing on the Sanctions Motion as it related to GMAC Mortgage's proof of claim to July 10, 2012, which was later rescheduled for a telephonic hearing on July 25, 2012.

11. Thereafter, the Donaghys and Mr. Riga corresponded regarding the Donaghys' issues with their mortgage loan account. Prior to the July 25, 2012 telephonic hearing, on July

10, 2012, Mr. Riga sent a letter to the Donaghys, addressing each of the Donaghys concerns regarding their account. See Scoliard Decl. ¶ 7. While recognizing that some mistakes had been made in connection with the Donaghys' account and the proof of claim filed by GMAC Mortgage, the letter also provided support for GMAC Mortgage's calculations on many other issues raised by the Donaghys. See Id. In its letter to the Donaghys, GMAC Mortgage also agreed that it would, in resolution of the account and claim issues, (i) waive certain postpetition fees and (ii) remove certain litigation codes from the Donaghys account, permitting the Donaghys to contact customer service again.

12. On July 25, 2012, ahead of the telephonic hearing with the NJ Bankruptcy Court, GMAC Mortgage's counsel sent an email to the Donaghys, providing additional information regarding their mortgage loan account in response to further inquiries by the Donaghys. See Scoliard Decl. ¶ 7. GMAC Mortgage further agreed, in resolution of the account and claim issues, to (i) waive a late payment and (ii) file an amended proof of claim. See Scoliard Decl. ¶ 6.

13. On August 20, 2012, the NJ Bankruptcy Court entered an order (the "**NJ Order**"), attached hereto as Exhibit 2, substantially embodying GMAC Mortgage's proposed resolutions. Exhibit 2 at 2. In particular, the NJ Order directed GMAC Mortgage to:

- File an amended proof of claim in the form attached to the NJ Order;
- Deem the Donaghys account current through July 2012 and apply a payment that was in route to GMAC Mortgage to the Donaghys' August 2012 payment; and
- Remove litigation codes from the Donaghys' account so that the Donaghys would again begin receiving their monthly mortgage statements.[1]
- The NJ Order also dismissed the sanctions portion of the Sanctions Motion based upon the application of the automatic stay in GMAC Mortgage's bankruptcy case.

---

[1] As a matter of course, when a borrower files an adversary proceeding or institutes a contested matter in a bankruptcy case, the Debtors place certain codes on the borrower's account that stop most correspondence with the borrower, including sending mortgage statements, and require all other departments to obtain permission from the Legal Department before taking certain actions on the account. Scoliard Decl. ¶ 7.

14.     Subsequent to GMAC Mortgage's filing of an amended proof of claim, the chapter 13 trustee in the Donaghys' bankruptcy improperly adjusted the Donaghys' monthly payments.[2]  GMAC Mortgage contacted the chapter 13 trustee in an attempt to explain the contents of the revised proof of claim and explain why the Donaghys' monthly plan payments should not be increased.  Scoliard Decl. ¶ 9.  The chapter 13 trustee would not amend her accounting on the basis of GMAC Mortgage's letter.  As a result, on October 18, 2012, the NJ Bankruptcy Court held a telephonic conference to address the issue.  Scoliard Decl. 9.  During the call, GMAC Mortgage indicated to the NJ Bankruptcy Court that the Donaghys' monthly payments should not have been increased.  Scoliard Decl. 9.  In response to GMAC Mortgage's explanation during the call, the NJ Bankruptcy Court requested that GMAC Mortgage file a second amended proof of claim to resolve the chapter 13 trustee's confusion and reduce the Donaghys' monthly plan payment to the correct level.  See Scoliard Decl. 9.  A second amended proof of claim was filed on October 23, 2012.  Scoliard Decl. 9.

15.     As described further in the Scoliard Declaration, the Debtors have now complied fully with the NJ Order.  See Scoliard Decl. ¶¶ 9-10.

**OBJECTION**

**I.     The Account Issues Raised by the Sanctions Motion Have Been Resolved**

16.     The Motion appears to seek relief from the automatic stay, in part, to pursue the Sanctions Motion.  As set forth above, the Debtors have complied with the NJ Order and the Donaghys received a $2,000.00 sanction award against Milstead in connection with the Sanctions Motion.  It is unclear as to what damages the Donaghy's have suffered to warrant an

---

[2] The amended proof of claim reflected the Donaghys' account as of January 1, 2010 when a small amount of interest and certain escrow advances were outstanding.  Those amounts had since been paid by the Donaghys through their ordinary mortgage payments, and the NJ Order so noted.  Nonetheless, the Chapter 13 Trustee added those former arrears to the amount it needed to collect from the Donaghys thus unnecessarily increasing the amount of their monthly Chapter 13 plan payments.

5
ny-1061631

additional award of sanctions against GMAC Mortgage. Accordingly, the Debtors submit that the Donaghy's request for relief from the automatic stay to pursue sanctions against GMAC Mortgage should be denied. Additionally, to the extent that the Donaghys' seek relief from the automatic stay to pursue a further request for sanctions in connection with the same prepetition issues previously raised in the NJ Bankruptcy Court, the Motion should be denied for the reasons set forth below.[3]

**II.     The Supplemental Servicing Order Does Not Grant Relief from the Stay to Pursue Sanctions in the Donaghys' Bankruptcy Proceeding**

17. Because the NJ Order dismissed the Donaghys' prior request for sanctions against GMAC Mortgage, to the extent that the Motion seeks relief concerning alleged prepetition conduct on the part of GMAC Mortgage, it in practical effect seeks relief from the automatic stay to file a new sanctions motion with the NJ Bankruptcy Court. The Supplemental Servicing Order does not provide relief from the automatic stay to permit the Donaghys to pursue such a request.

18. The Supplemental Servicing Order provides certain limited relief from the automatic stay to permit borrowers to assert and prosecute enumerated claims in borrower bankruptcy proceedings. See Supplemental Servicing Order ¶ 15. In particular, the Supplemental Servicing Order permits borrowers to prosecute in such cases (i) objections to a Debtor's proof of claim, (ii) objections to a Debtor's motion for relief from the automatic stay, (iii) objections to the validity, priority, or amount of a Debtor's lien against property of the

---

[3] Although paragraph 15 of the Motion indicates that the Donaghys also seek stay relief to pursue sanctions for GMAC Mortgage's failure to comply with the NJ Order, it is the Debtors' understanding that the Donaghys actually seek sanctions solely on the basis of the prepetition conduct previously complained of in the Sanctions Motion. To the extent that the Donaghys believe the Debtors have failed to comply with the NJ Order – a position with which the Debtors disagree – the Debtors would consent, to the extent the automatic stay is applicable, to relief from the stay for the limited purpose of permitting the Donaghys to request that the NJ Bankruptcy Court enforce the NJ Order. However, the Debtors submit that Donaghys should not be permitted to file a new request for sanctions in connection with the Debtors' alleged prepetition conduct.

borrower, and (iv) appeals in connection with the above. Supplemental Servicing Order ¶ 15(a). The Supplemental Servicing Order also permits borrowers to enter into certain settlements in the borrower's bankruptcy case. Id. However, the Supplemental Servicing Order specifically states that "the automatic stay shall remain in full force and effect with respect to all [borrowers'] direct claims, counter-claims, motions or adversary proceedings: (i) for monetary relief of any kind and of any nature against the Debtors," unless in connection with a borrower's objection to a Debtors' proof of claim. Id. at ¶ 15(c).

19. A further motion for sanctions similar to the Sanctions Motion does not fall within the scope of the relief provided in the Supplemental Servicing Order. The Sanctions Motion sought only monetary relief and, although the Donaghys complained of some issues with GMAC Mortgage's proof of claim, the Sanctions Motion did not object to such proof of claim. Moreover, in connection with GMAC Mortgage's proposed resolution of the Sanctions Motion, GMAC Mortgage filed a new proof of claim, in the form required by NJ Order, and when the chapter 13 trustee raised issues with the proof of claim, GMAC Mortgage filed a further amended proof of claim to address and resolve the chapter 13 trustee's confusion as to the Donaghy's monthly plan payment amount. Accordingly, the Supplemental Servicing Order does not provide the Donaghys with relief from the automatic stay to pursue any future request for sanctions similar to that contained in the Sanctions Motion, which sought only monetary relief.

**III.     Relief from the Automatic Stay Should Not Be Granted**

    **A.     The Policies Underlying the Automatic Stay Weigh in Favor of Denying the Relief Requested by the Movants**

20. Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that:

(a) ... a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of –

7

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

21. The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Prot., 474 U.S. 494, 503 (1986) (citation and internal quotation marks omitted). The automatic stay is of considerable importance in cases such as this, where the Debtors seek to sell all or substantially all of their assets. It maintains the status quo to protect the debtor's ability to control the sale or other disposition of property of the estate. 3 Collier On Bankruptcy ¶ 362.03 (16th ed. rev. 2012). The automatic stay prevents the state-law "race to the courthouse," and is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." SEC v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000) (citation and internal quotation marks omitted). In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

22. One of the primary objectives of these Chapter 11 cases is the preservation of the Debtors' going concern value through the sale of their servicing platform and legacy assets, through which the Debtors hope to maximize creditor recoveries.[4] The automatic stay is critical to the Debtors ability to achieving this objective because it will permit the Debtors' management

---

[4] In tandem with this effort, the Debtors have entered into plan support agreements with key constituents including AFI, certain holders of their junior secured notes, and certain investors in mortgage-backed securitizations sponsored by the Debtors.

and employees, including the Debtors' in-house legal department (the "**Legal Department**"), to focus on the tasks critical to achieving a successful resolution of these cases, including the many critical case milestones recognized by this court at the October 10, 2012 omnibus hearing and on numerous prior occasions.  October 10, 2012 Hearing Transcript at 111-113 (describing major upcoming case events); See also Memorandum Opinion and Order Denying the Ulbrich Motion to Lift the Automatic Stay ("**Ulbrich**") at 8-9 [Docket No. 1193].  Continuation of the breathing spell created by the automatic stay, therefore, is essential to the Debtors' restructuring at this juncture, because it allows the Debtors to focus on steps critical to achieving a successful resolution to these cases, including the continued operation of the Debtors' businesses and consummation of the sales.

### B.    The Movants have Failed to Establish Cause for Relief from the Automatic Stay.

23.    Section 362(d) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  The Bankruptcy Code does not, however, define the phrase "for cause."  In the context of stayed prepetition litigation, though, the Second Circuit has outlined a 12-factor test (the "Sonnax Factors") to determine whether "cause" exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues, (2) the lack of any connection with or interference with the bankruptcy case, (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, (5) whether the debtor's insurer has assumed full responsibility for defending the action, (6) whether the action primarily involves third parties, (7) whether litigation in another forum would prejudice the interests of other creditors, (8) whether the judgment claim arising from the other action is subject to equitable subordination, (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor, (10) the interests of judicial economy and the expeditious and economical resolution of litigation, (11) whether the parties are ready for trial in the other proceeding and (12) the impact of the stay on the parties and the balance of harms.

9

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not applied the Sonnax Factors, made only sparse factual findings and ultimately did not provide the appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate"). Courts have recognized that not all of the Sonnax Factors will be applicable to every case, and the Court may disregard irrelevant factors. See In re Mazzeo, 167 F.3d at 143.

24. In a request for stay relief, the moving party bears the initial burden to demonstrate that good cause exists for lifting the stay, using the Sonnax Factors, and the court may deny the motion if the movant fails to make an initial showing of cause. See Sonnax, 907 F.2d at 1285; Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause") (citation and internal quotation marks omitted).

25. The movant's burden is especially heavy if it is an unsecured creditor. "The general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); accord Lawrence v. Motors Liquidation Co. ( In re Motors Liquidation Co.), Nos. 09-50026 (REG), 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 17, 2010).

26. The Debtors submit that the application of the Sonnax factors clearly indicates that granting relief from the automatic stay would be inappropriate with respect to the Motion, to

the extent it requests relief from the automatic stay to pursue monetary sanctions for alleged prepetition conduct.[5]  Thus, the Motion should be denied.

      **1.**  *Relief From the Stay Would Not Result in a Complete Resolution of the Issues (Sonnax Factor No. 1)*

27.  The first Sonnax Factor does not support relief from the stay because lifting the stay would not result in resolution of the issues.  If the stay were lifted, the Donaghys' would have to file a renewed motion for sanctions, which would result in an evidentiary hearing where GMAC Mortgage could be required to provide fact witnesses to dispute factual allegations made by the Donaghys.  Even if sanctions were ultimately awarded against GMAC Mortgage, such sanctions would merely entitle the Donaghys to a general unsecured claim, to be paid proportionally with thousands of other similar claims in accordance with the terms of a confirmed chapter 11 plan.  There is no reason why the movants should be afforded the opportunity to pursue a general unsecured claim ahead of the thousands of similarly-situated creditors, especially given GMAC Mortgage's substantial efforts to assist the Donaghys in becoming current on their loan, including waiving a payment that the Donaghys never made, and attempting to clear up the confusion of the chapter 13 trustee as to the Donaghys' plan payment.

      **2.**  *The Lifting of the Automatic Stay Is Connected to and Will Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor No. 2).*

28.  The second Sonnax Factor, lack of any connection with or interference with the bankruptcy case, militates against granting the Motion.  At best, allowing the Donaghys' renewed sanctions request to proceed against GMAC Mortgage at this point in the Debtors' chapter 11 cases would be a waste of estate assets.  The Debtors' chapter 11 cases are large and exceedingly complex, and the issues and tasks facing the Debtors before achieving a successful

---

[5] Sonnax Factors numbers 3 and 9 are not applicable to the facts here.  The Debtors do not address Sonnax Factors 8 or 10 in their objection, but reserve all right with regard thereto.

11

ny-1061631

resolution are difficult and numerous. Lifting the automatic stay as requested in the Motion would require the Legal Department and other employees of the Debtors assist in litigating the Donaghys sanctions requests in order to contest the Donaghys' factual allegations.

29. The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have a contractual obligation to defend. As this court has seen to this point in the cases, the Legal Department must regularly address issues raised by many litigants in state court foreclosure proceedings and bankruptcy proceedings. As this Court has also seen, often, such litigants file various lawsuits, motions and appeals, consuming an immense amount of Legal Department resources and time. As a result, the Debtors need the automatic stay to ensure that they can focus their resources, including those of the Legal Department, on addressing the cases that are proceeding during these chapter 11 cases and the overwhelming number of other complex case issues confronting the Debtors in these chapter 11 cases. Adding to these responsibilities by permitting legal actions to continue (even if only for the purposes of liquidating claims) would divert the Legal Department's and other critical employees' attention from the critical tasks of running the Debtors' business, the administration of these Chapter 11 cases, and would run counter to the policies behind the automatic stay. See Ulbrich at 6 [Docket No. 1193]; In re Pioneer Commercial Funding Corp., 114 B.R. at 48 (noting that the automatic stay is intended to provide the Debtors with a "breathing spell" to address the immediate concerns related to the restructuring of the Debtors' businesses).

30. Therefore, for the above reasons, the second Sonnax factor weighs heavily against lifting the automatic stay.

12

ny-1061631

      **3.**    *No Specialized Tribunal Has Been Established to Hear the Donaghys' Sanctions Request (Sonnax Factor No. 4).*

31. Any request for sanctions made by the Donaghys will be decided by a bankruptcy court, and this Court is imminently familiar with the bankruptcy law involved in such a request. As a result, the fourth Sonnax factor weighs against relief from the stay.

      **4.**    *No Insurer Has Assumed Responsibility for Any Resulting Sanctions (Sonnax Factor No. 5).*

32. For the most part, in the vast majority of their cases, including any request for sanctions by the Donaghys, the Debtors costs and expenses will not be covered by insurance. Scoliard Decl. ¶ 16. Requiring the Debtors to defend sanctions requests by borrowers will result in an unnecessary diminution in the value of the Debtors' estates as a result of increased legal fee expenses.

33. Therefore, the fifth Sonnax Factor weighs against granting relief from the automatic stay. See Ulbrich at 6.

      **5.**    *The Donaghys' Request for Sanctions does not Primarily Involve Third Parties (Sonnax Factor No. 6).*

34. Although the Sanctions Motion involved both GMAC Mortgage and its outside counsel, Milstead, the NJ Bankruptcy Court already addressed the Sanctions Motion as it related to Milstead. Thus, the Donaghys appear now to be seeking sanctions only against GMAC Mortgage. As a result, the sixth Sonnax Factor weighs against granting relief from the automatic stay.

      **6.**    *Litigation of the Donaghys' Request in Another Forum Would Prejudice the Interests of Other Creditors (Sonnax Factor No. 7).*

35. Likely, many of the litigants in stayed actions would prefer to liquidate their claims through their pending lawsuits. However, liquidation of these claims can and should be done as part of an organized claims resolution process, to be conducted after the passing of the

Debtors' November 9, 2012 general bar date, the identification of the population of potential claims and the implementation of procedures to reconcile claims in an efficient and cost effective manner. Requiring the Debtors to defend lawsuits and motions seeking monetary relief in other forums would require the Debtors to utilize estate assets and resources at a time when the Debtors' employees should be focused on achieving critical case milestones and the operation of the Debtors' business, and would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court," Ulbrich at 7 (quoting Pub. Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992)). As a result, the seventh Sonnax Factor also weighs in favor of denying relief from the automatic stay.

> **7.** *The Interests of Judicial Economy and Economical Resolution of the Donaghys' Request Are Best Served by Maintaining the Automatic Stay (Sonnax Factor No. 10).*

36. First, the Debtors do not believe that any request for sanctions is pending in the NJ Bankruptcy Court, so if the stay were lifted, any request would first require the Donaghys' to file a renewed sanctions motion in that court, which would require an evidentiary hearing. Second, to the extent the Donaghys believe they are entitled to additional monetary sanctions from GMAC Mortgage in addition to those already awarded to them against Milstead, the Donaghys can file a claim in the Debtors' bankruptcy cases. Therefore, the tenth Sonnax Factor weighs in favor of denying the stay relief in each case.

> **8.** *The Balance of Harms Favors Maintaining the Automatic Stay (Sonnax Factor No. 12).*

37. The final Sonnax Factor, the balance of the harms, weighs heavily in favor of maintaining the stay. The movants do not provide any evidence that they will suffer any prejudice if the stay is not immediately lifted. In fact, as indicated in the Scoliard Declaration,

GMAC Mortgage has completed addressing each of the requirements of the NJ Order and, accordingly, believes it has fully complied with that order. Scoliard Decl. ¶ 10.

38.  In contrast, this Court has recognized on numerous occasions the gravity of the events expected to occur in the Debtors' chapter 11 cases over the next few months. The Debtors' employees must maintain their focus on these events, including the sale of the Debtors' servicing platform and legacy assets, the litigation and consummation of the proposed $8.7 billion RMBS settlement, and the negotiation and formulation of a plan. With the Debtors defending over 1,900 prepetition actions and in addition, party to tens of thousands of foreclosure, eviction and borrower bankruptcy proceedings nationwide, the breathing spell provided by the automatic stay is essential. During the pendency of the Debtors' chapter 11 cases, the limited resources of the Debtors' estates are much better spent on the Debtors' restructuring efforts, rather than litigating borrower lawsuits spread throughout the country. Forcing the Debtors to litigate the Donaghys' request for sanctions would negate the important "breathing spell" necessary to allow them to restructure and preserve the value of their assets for the benefit of all creditors.[6]

39.  The balance of the harms clearly favors maintaining the automatic stay with respect to the any request for sanctions by the Donaghys.

## CONCLUSION

40.  Based on the weight of settled authority and its application to the Donaghys' request to pursue sanctions, the Debtors respectfully submit that the movants have failed to meet their burden to show cause for lifting the automatic stay to seek sanctions for alleged prepetition conduct when the NJ Bankruptcy Court has already addressed the Donaghys' concerns in the NJ

---

[6] The Debtors have already agreed to shoulder more of the burden and increased costs of defense through the Supplemental Servicing Order to permit a significant number of foreclosure, eviction and bankruptcy related claims against them to proceed.

Order.  Substantially all of the applicable Sonnax Factors weigh heavily in favor of maintaining the automatic stay.  As such, the Court should deny the Motion.

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an Order denying the Motion and grant such other relief as the Court deems proper.

| | |
|---|---|
| New York, New York<br>Dated: October 24, 2012 | /s/ Norman S. Rosenbaum<br>Gary S. Lee<br>Norman S. Rosenbaum<br>James A. Newton<br>MORRISON & FOERSTER LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Counsel to the Debtors and Debtors in Possession* |