## EXHIBIT 1

**Scoliard Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------- )
                                                       )
In re:                                                 )    Case No. 12-12020 (MG)
                                                       )
RESIDENTIAL CAPITAL, LLC, et al.,                      )    Chapter 11
                                                       )
                                        Debtors.       )    Jointly Administered
                                                       )
----------------------------------------------------- )

**DECLARATION OF JENNIFER SCOLIARD, IN-HOUSE SENIOR BANKRUPTCY**
**COUNSEL, RESIDENTIAL CAPITAL LLC, IN SUPPORT OF**
**DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM**
**THE AUTOMATIC STAY FILED BY MICHAEL P. AND STEPHANIE L. DONAGHY**

I, Jennifer Scoliard, declare as follows:

**A.      Background and Qualifications**

1.      I serve as In-House Senior Bankruptcy Counsel in the legal department

(the "**Legal Department**") at Residential Capital, LLC ("**ResCap**"), a limited liability company

organized under the laws of the state of Delaware and the parent of the other debtors and debtors

in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").  I have been

ResCap's In-House Senior Bankruptcy counsel since October 2012.  Prior to October 2012, I

served in various legal roles supporting GMAC Mortgage, LLC from January 2008 to October

2012.  I joined ResCap in January 2008.

2.      In my role as In-House Senior Bankruptcy Counsel at ResCap, I am

responsible for the management of all non-routine bankruptcy litigation nationwide.

Additionally, as a result ResCap's chapter 11 filing, my role has significantly expanded to

include assisting the Debtors and their professional advisors in connection with the

administration of the chapter 11 cases, in addition to my litigation work.  Specifically, my

expanded duties and responsibilities as to the Debtors' chapter 11 cases include, but are not

limited to: (i) frequently communicating with bankruptcy counsel, usually daily, on various

mortgage litigation and other matters; (ii) assisting bankruptcy counsel in the analysis of and

drafting of responses to motions for relief from stay, objections to various filings, and motions

critical to the functions of the Debtors' business; (iii) working with bankruptcy counsel, other in-

house attorneys and business personnel on bankruptcy issues impacting the Debtors' business

operations; and (iv) providing guidance to the Legal Department regarding orders entered in this

case, filings by other parties, and the chapter 11 process.

3.      I am authorized to submit this declaration (the "**Declaration**") in support

of the *Debtors' Objection to Motion for Relief from the Automatic Stay filed by Michael P. and

Stephanie L. Donaghy* (the "**Objection**").[1]

4.      Except as otherwise indicated, all statements in this Declaration are based

upon my personal knowledge; information supplied or verified by personnel in departments

within the Debtors' various business units; my review of the Debtors' case files, books and

records as well as other relevant documents; my discussions with other members of the Legal

Department; information supplied by the Debtors' consultants; or my opinion based upon

experience, expertise, and knowledge of the Debtors' bankruptcy matters, financial condition,

and history. In making my statements based on my review of the Debtors' case files, books and

records, relevant documents, and other information prepared or collected by the Debtors'

employees or consultants, I have relied upon these employees and consultants accurately

recording, preparing, collecting, or verifying any such documentation and other information. If I

were called to testify as a witness in this matter, I would testify competently to the facts set forth

herein.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

B.       **The Donaghy Bankruptcy Proceeding**

5.        Shortly after the Donaghys obtained a loan modification of their mortgage
in December 2009, on or about January 13, 2010, the Donaghys filed for bankruptcy in the
United States Bankruptcy Court for the District of New Jersey (the "**NJ Bankruptcy Court**").
Approximately two years later, on or about March 13, 2012, the Donaghys filed a motion (the
"**Sanctions Motion**") seeking sanctions against GMAC Mortgage and its outside counsel in the
Donaghys' bankruptcy, Milstead & Associates ("**Milstead**").

6.        The Sanctions Motion was resolved as against Milstead in May of 2012.
However, the NJ Bankruptcy Court recognized that it could not act on the Donaghys' request for
monetary sanctions as a result of the commencement of these chapter 11 cases, and continued the
hearing on the Sanctions Motion as it related to GMAC Mortgage's proof of claim until July 10,
2012.  Although GMAC Mortgage believed that many of the issues raised by the Donaghys in
connection with their mortgage loan account were properly accounted for, GMAC Mortgage
nonetheless endeavored to work with the Donaghys in an attempt to bring the Donaghys' loan
back to performing status.  In that regard, GMAC Mortgage offered to waive certain postpetition
fees and even offered to waive a late payment that was never made.

7.        In particular, on July 10, 2012, McCabe Weisberg & Conway, P.C.
("**McCabe Weisberg**"),[2] GMAC Mortgage's counsel in connection with the Sanctions Motion,
sent the Donaghys a detailed, three-page letter responding to eight questions posed by Donaghys
relating to their mortgage account.  The letter provided a detailed explanation about the
accounting of the Donaghys' escrow account, suspense account, and provided a month-by-month
accounting of payments received and the application of those payments to the Donaghys'

---

[2] When retained, GMAC Mortgage's counsel, Joseph Riga, was an attorney at McDowell Riga Posternock, PC.  Mr.
Riga subsequently moved his practice to McCabe Weisberg.

account.  Likewise, on July 25, 2012, McCabe Weisberg sent a detailed email to the Donaghys'

addressing additional inquiries regarding the Donaghys' mortgage loan account.  This detailed

email, while noting that mistakes had been made prior to the filing of the Sanctions Motion,

provided a further explanation regarding (i) how the Donaghys' payments had been applied and

(ii) how various tax and insurance payments had been applied against the Donaghys' escrow

account and (iii) how GMAC Mortgage was prepared to address the Donaghys' concerns with

the NJ Bankruptcy Court.

8.    At a July 25, 2012 hearing on the Sanctions Motion, the NJ Bankruptcy

Court accepted much of GMAC Mortgage's proposal for addressing the concerns raised by the

Donaghys and, by order dated August 20, 2012, directed the Debtors to (i) file a new proof of

claim, (ii) deem the Donaghys' account current through July 2012, and (iii) remove certain

litigation codes from the Donaghys' loan account.[3]

9.    Although GMAC Mortgage filed the amended proof of claim in the form

approved by the NJ Bankruptcy Court and did not expect that the proof of claim would affect the

Donaghys' chapter 13 plan payments, the chapter 13 trustee raised the monthly plan payment.

GMAC Mortgage contacted the chapter 13 trustee in an attempt to explain the contents of the

revised proof of claim and explain why the Donaghys' monthly plan payments should not be

increased.  The chapter 13 trustee would not amend her accounting based on these

communications.  As a result, on October 18, 2012, the NJ Bankruptcy Court held a conference

call to address the open issues regarding the amount of the Donaghys' monthly plan payments.

On the conference call, GMAC Mortgage explained that the Donaghys' monthly payments

---

[3] As a matter of course, when a borrower files an adversary proceeding or institutes a contested matter in a
bankruptcy case, the Debtors place certain codes on the borrower's account that stop most correspondence with the
borrower, including sending mortgage statements, and require all other departments to obtain permission from the
Legal Department before taking certain actions on the account.

should not have been increased.  In response, the NJ Bankruptcy Court requested that GMAC

Mortgage, LLC file a second amended proof of claim to resolve the Chapter 13 Trustee's

confusion.  A second amended proof of claim was filed on October 23, 2012.

10.    GMAC Mortgage believes it has fully complied with the NJ Bankruptcy

Court's August 20 order.  GMAC Mortgage has (i) filed an amended proof of claim (ii) removed

the litigation codes from the Donaghys' loan account and (iii) brought the Donaghys' account

current through July 2012, as required by the NJ Order.[4]

### C.    Litigation Pending Against the Debtors

11.    As of October 22, 2012, the Debtors by way of direct claims and counter-

claims are defendants, respondents, or are contractually obligated to defend third parties in 1,911

pending litigation and contested foreclosure and bankruptcy matters filed in jurisdictions all

around the country.  Approximately fifty-nine percent (59%) of these matters concern either

(i) defenses asserted in foreclosure, eviction, or borrower bankruptcy proceedings or (ii) title

disputes, both of which are exempted from the automatic stay by the Supplemental Servicing

Order; fourteen percent (14%) of ResCap's pending litigation and contested foreclosure and

bankruptcy matters are not subject to the stay, notwithstanding the Supplemental Servicing

Order; twenty-six (26%) are stayed and one percent (1%) are still under review for their status.

Thus, approximately seventy-three percent (73%) of ResCap's pending litigation and contested

foreclosure and bankruptcy matters are not stayed and continue to proceed in various

jurisdictions across the country.  This is in addition to the tens of thousands of foreclosure

actions and borrower bankruptcies the Debtors are parties to in actions pending throughout the

fifty states primarily managed by the Debtors' mortgage default group.  Notwithstanding the

---

[4] The Donaghys' account is current, as of the date hereof.

application of the Supplemental Servicing Order, there are still a substantial number of cases –

approximately 26% of 1,911 (or 496) cases.

> **D.      Lifting the Automatic Stay Will Interfere With the Chapter 11 Cases**

12.      The Legal Department is tasked with managing litigation in which the

Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as

well as managing litigation for third parties for which the Debtors have a contractual obligation

to defend.  The Legal Department plays a very active role in analyzing and strategizing on active

litigation matters, working with various departments within the Debtors' various regional offices,

collecting all documents and information necessary to analyze each case, including, but not

limited to, the following: (i) reviewing documents and information related to discovery,

(ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition

and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with

internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with

local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and

settlement conferences and (ix) preparing for trial.  The Legal Department has been the primary

group tasked with assisting in the development and implementation of the Supplemental

Servicing Order.

13.      As a result of the Debtors' bankruptcy filings and the entry of the

Supplemental Servicing Order, the Legal Department's responsibilities have increased to include

(i) the review and analysis of individual claims as they arise in conjunction with internal business

personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability

of the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation

counsel and its mortgage default counsel regarding the application of the Supplemental Servicing

Order (and will continue to do so as new legal actions arise); (iii) assisting chapter 11 counsel

with the preparation of various motions, responses to motions for relief from stay and other

Court filings, as well as various bankruptcy related tasks; (iv) assisting chapter 11 counsel and

internal business personnel with chapter 11 reporting requirements; (v) assisting with pending

and anticipated discovery with respect to the Debtors' proposed settlement with securitization

trustees; (vi) assisting with matters pertaining to the two pending sales of the Debtors' assets;

and (vii) complying with the Examiner's investigation.  As the chapter 11 cases proceed, the

Legal Department will take an active role in the plan and disclosure statement process.  These

responsibilities are ongoing and will continue and no doubt expand as these chapter 11 cases

progress.

14.     Given the comprehensive and detailed role the Legal Department plays in

(i) the managing of the Debtors' litigation and contested foreclosure and bankruptcy matters;

(ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside

litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy

counsel and financial advisors with several tasks associated with the pending sales of the

servicing platform, legacy assets, RMBS settlement and attendant litigation, and the Examiner's

investigation, not to mention the various motions and other filings in the Debtors' bankruptcy

case, carrying out its ordinary course tasks while at the same time discharging its duties in the

chapter 11 cases has been and will continue to be a monumental task.  Permitting motions and

actions seeking only monetary damages that are otherwise stayed by the Debtors' bankruptcy to

proceed (not to mention allowing an entirely new contested matter to be commenced as is

apparently requested by the Donaghys), therefore, would create a significant burden on the

Debtors by adding an additional workload of approximately 496 cases, diverting the Legal

Department's and other critical employees' attention from the critical tasks of running the Debtors' businesses, and significantly increasing the Debtors' out-of-pocket legal costs.

**E.    Relief from the Automatic Stay Would Not Result in a Complete Resolution of the Issues**

15.    It is my understanding that the request for sanctions contained in the Sanctions Motion was dismissed in connection with the NJ Order. Accordingly, it is my understanding that any further request for sanctions by the Donaghys would have to be asserted in a renewed motion and associated contested matter.

**F.    No Insurer has Assumed Responsibility for the California Action**

16.    While the Debtors have customary errors and omissions insurance coverage, that insurance does not provide coverage for the types of sanctions apparently requested by the Movants. In the vast majority of the cases, and in connection with requests for sanctions therein, including the Donaghys', the Debtors pay their legal defense fees and costs out-of-pocket. The Debtors would also be required to pay any sanctions award out-of-pocket.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 24, 2012

                                                        /s/ Jennifer Scoliard
                                                        Jennifer Scoliard
                                                        In-House Senior Bankruptcy Counsel for
                                                        Residential Funding, LLC

ny-1062719                                          8