# EXHIBIT A



MASTER #: __117__

## NATIONAL ACCOUNT
## FTR PLUS 10 PROGRAM
## MASTER FIXED TERM RENTAL AGREEMENT

The Customer named below agrees to rent office equipment from Canon U.S.A., Inc. ("Canon USA"), subject to the terms and conditions herein and on the reverse side hereof.

Customer shall place orders hereunder only on Canon USA's form of FTR Rental Schedule. The National Account pricing for Customer shall be set forth in the individual FTR Rental Schedule. Each FTR Rental Schedule will also designate delivery sites, indicate the duration of the rental term and specify by equipment model the quantities of units subject to rental there under. For administrative convenience Customer may reference its internal order number on each FTR Rental Schedule. Any Customer documentation which attempts to vary, modify, or supplement the terms of this Agreement or the FTR Rental Schedule shall be null and void. Canon USA shall attempt to meet Customer's requested delivery dates. Since Canon USA may be subject from time to time to manufacturer production or shipping delays, or both, Customer agrees that Canon USA may, in its sole discretion, allocate distribution among all of its Customers, even though this may effectively limit delivery of ordered units.

**FTR RENTAL SCHEDULES PLACED AGAINST THIS MASTER AGREEMENT ARE IRREVOCABLE AND NON-CANCELABLE,** except that Customer may, upon thirty (30) days prior written notice to Canon USA, cancel rentals of units of Equipment that Customer can demonstrate have been made obsolete due solely to Customer's office closings or significant office downsizing. During any Contract Year the number of such canceled units shall not exceed 10% (in the aggregate) (the "Percentage") of the maximum number of units of Equipment in an Equipment Segment rented under the FTR Rental Schedules to this Agreement at any time during the immediately preceding Contract Year; provided, that during the first Contract Year the number of such canceled units in an Equipment Segment shall not exceed one-half the Percentage of the maximum number of units of Equipment in an Equipment Segment rented under FTR Rental Schedules to this Agreement at any time during the first Contract Year. The term "Contract Year" shall mean each one-year period beginning on the date of this Agreement or an annual anniversary of the date of this Agreement. The term "Equipment Segment" shall mean NP analog copiers (Segment 1), GP, iR, iC, digital copiers (Segment 2), facsimile (Segment 3), CLC color (Segment 4) and printers (Segment 5), respectively. To the extent the number of such units made obsolete exceeds the Percentage in any Contract Year (one-half the Percentage in the first Contract Year), Customer agrees to have Canon USA or its Designee reinstall such excess number of units at another Customer site for the balance of the applicable FTR Rental Schedule.

Either party may terminate this Agreement at any time on thirty (30) days prior written notice to the other party. Termination shall not affect individual FTR Rental Schedules then in effect (including the options referred to in Section 2 of the terms and conditions on the reverse side hereof), or relieve either party of obligations incurred prior to the date of termination. This Agreement shall not become effective until it has been signed by a duly-authorized representative of Canon USA, and Canon USA has issued a Schedule Number with respect thereto.

CANON U.S.A., INC.

Authorized Signature/Date
Toyotsugu Kuwamura
Director & General Manager 8.27.02
Printed Name/Title

CUSTOMER: General Motors Corporation

Authorized Signature/Date
Catherine M. Loria / Senior Buyer
Printed Name/Title

FTR Rental Schedule Number

01/01/02

## TERMS AND CONDITIONS

1. Canon USA may, at its option, notify Customer in writing of the name and address of a Designee who shall be an independent contractor with the limited authority to act for Canon USA as provided herein. Canon USA may change such Designee at any time upon five (5) days written notice. Customer agrees to pay all charges as are due promptly upon receipt of an invoice therefore. Customer also agrees to pay any and all taxes and assessments levied on the equipment and the use thereof.

2. Customer will have the following options at the end of the initial rental term of any FTR Rental Schedule entered into in connection with this Agreement, if Customer has paid in full all charges and is not otherwise in default hereunder: (a) renew the FTR Rental Schedule for a like term, or (b) purchase the equipment. Canon USA's prices in effect at the time Customer exercises the relevant option shall prevail. If Customer fails to notify Canon USA in writing of which such option it has elected at least thirty (30) days prior to the end of the term (or the relevant renewal period), the FTR Rental Schedule shall continue on a month-to-month basis at the same monthly rental charge until either party terminates the FTR Rental Schedule on thirty (30) days prior written notice to the other party. If Customer exercises the purchase option, Canon USA shall, on receipt of payment of the purchase price, remove its plaque and convey title to the equipment to the Customer free and clear of liens and encumbrances arising through Canon USA. Maintenance shall then be available from the Designee in accordance with the Designee's form of agreement and charges then in effect. Designee's agreement shall be the sole agreement with respect to maintenance of purchased equipment.

3. Canon USA hereby warrants that it is the owner of the equipment installed pursuant to each FTR Rental Schedule and that it has the right to rent the same to Customer. CANON USA MAKES NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, RELATING TO THE USE OR PERFORMANCE OF SUCH EQUIPMENT. CANON USA SHALL NOT BE LIABLE FOR ANY PERSONAL INJURY OR PROPERTY DAMAGE (UNLESS CAUSED BY CANON USA'S NEGLIGENCE), LOSS OF PROFIT OR OTHER SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, ARISING OUT OF THE USE OF OR INABILITY TO USE THE EQUIPMENT.

4. Customer agrees not to make any alteration in the equipment and not to remove it from the location where installed by Canon USA or its Designee without prior written approval. Customer further agrees to return the equipment at the end of the term of each FTR Rental Schedule in the same condition as when received except for reasonable wear and tear. During the term of each FTR Rental Schedule and while Customer has possession of the equipment, Customer assumes all risk of loss or damage to the equipment (not to exceed the purchase price of the equipment at the time of loss or damage as determined by Section 2 above).

5. Title to the equipment shall remain at all times with Canon USA and Customer agrees that the Canon plaque affixed to the equipment will not be removed. Customer agrees to keep the equipment free from all liens, security interests and encumbrances. This Agreement shall not be assignable by Customer without Canon USA's prior written consent, and any attempted assignment without such consent shall be void. All rights of Canon USA in the equipment, under this Agreement and any FTR Rental Schedule pursuant hereto may be assigned without notice to Customer and Canon USA anticipates it will assign such rights to Canon Financial Services, Inc. Canon USA is hereby authorized to file a financing statement signed by Canon USA alone to evidence its ownership in the equipment in the possession of Customer.

6A. This provision applicable when box A of the applicable FTR Rental Schedule has been initialed by Customer: Customer, at Customer's own cost and expense, shall keep the equipment in good repair, condition and working order, reasonable wear and tear excepted, and shall furnish all parts and servicing required therefore; provided, that Customer shall be entitled to the benefit of any warranties generally made available by Canon USA to end-user purchasers of the equipment at the time of the commencement of the rental term, for the period of time indicated on the warranty card applicable to the item of equipment, which period shall begin as of the date of installation. The Designee shall make maintenance for the equipment available after the expiration of such warranty period in accordance with the Designee's form of maintenance agreement and charges in effect from time to time. No failure of performance by the Designee in connection with maintenance of the equipment shall relieve Customer of its obligation to pay rent to Canon USA, or any other obligation of Customer under this Agreement.

6B. This provision applicable when box B of the applicable FTR Rental Schedule has been initialed by Customer: Canon USA or its Designee shall make available for the equipment routine maintenance and service during its regular business hours (9:00 a.m. to 5:00 p.m., Monday through Friday, except holidays) at no cost to Customer. Customer agrees to use reasonable care in handling and operation of the equipment. Canon USA or its Designee shall have the right (a) to inspect, repair and remove the equipment at any time during the Customer's business hours and (b) to terminate the rental if Customer uses consumable supplies (other than those distributed by Canon USA) which damage the equipment or cause it to require excess service work or maintenance. Any service work made necessary by Customer's willful act or negligence (including, without limitation, use of supplies other than those distributed by Canon USA which cause abnormally frequent service calls or service problems), or any service work Customer may request to be performed outside regular business hours, shall be invoiced in accordance with Canon USA or its Designee's established service policies. Canon USA shall have the right to substitute equivalent equipment at any time during the term of any FTR Rental Schedule.

7. If Customer fails to fully perform any of its obligations under this Agreement, including the prompt making of all payments as and when due, then Canon USA shall have the right to terminate this Agreement and any FTR Rental Schedule, to enter into Customer's premises to remove the equipment without the posting of any bond(s) and to pursue any other remedy at law or in equity. If any proceeding under the Bankruptcy Code, as amended, is commenced by or against Customer, Customer is adjudged insolvent, Customer makes any assignment for the benefit of its creditors, or a receiver is appointed in any proceeding to which Customer is a party with authority to take possession or control of any item of the equipment, then Canon USA shall have and may exercise any one or more of the remedies set forth above and this Agreement and all FTR Rental Schedules pursuant hereto shall, at the option of Canon USA, without notice, immediately terminate. In the event of any breach of this Agreement, Canon USA shall not have waived any of its rights hereunder by reason of its failure to assert its rights.

8. Customer's wholly owned domestic subsidiaries shall have the right to place orders hereunder, and any such subsidiary shall be considered a "Customer" and bound by the terms of this Agreement with respect to the FTR Rental Schedule signed by such subsidiary and the Equipment rented thereunder. In addition, Customer shall be responsible for all orders placed by its subsidiaries, and for any subsidiary's failure to pay the charges due and owing under a FTR Rental Schedule or any other amounts due and owing by any such subsidiary with respect to the Equipment subject to the relevant FTR Rental Schedule.

9. THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK and constitutes the entire Agreement between the parties with respect to the rental of the equipment, superseding all previous proposals, oral or written. No representation or statement not contained on the original copy of this Agreement shall be binding upon Canon USA as a warranty or otherwise, nor shall this Agreement be modified or amended unless in writing and signed by a duly-authorized representative of Canon USA. Any suit between the parties relating to this Agreement, other than for payment of the charges due hereunder, shall be commenced, if at all, within one (1) year of the date that it accrues.

## CONTRACT

This is a CONTRACT, dated the First day of January 1998, between Canon U.S.A., Inc., Lake Success, New York, a Corporation of the State of New York, hereinafter referred to as the 'Seller' and General Motors Corporation, Detroit, Michigan, a Corporation of the State of Delaware and its wholly owned subsidiaries hereinafter referred to as the "Buyer" and its purchasing locations, hereinafter, referred to as the "Purchaser", WITNESSETH:

### Sixty Month Contract

Seller agrees that Purchaser's locations may order Seller's REPROGRAPHIC/FAX EQUIPMENT AND/OR SERVICES identified herein "Equipment" as described in Section IX, Appendices (attached hereto and made a part hereof) for the period commencing January 1, 1998 through December 31, 2002, upon and subject to the terms and conditions stated herein, with an option, at Buyer's and Seller's mutual agreement to extend for an additional three year period after expiration, subject to terms and condition stated herein.

This Corporate Purchase Contract constitutes the entire Corporate Standards Program covering COPIER/FAX/MULTI-FUNCTIONAL IMAGING DEVICE EQUIPMENT AND/OR SERVICES (Maintenance/Supplies), whereby, all GM locations shall have the latitude of selecting from those products included therein and no others.

### TABLE OF CONTENTS

I.    General Terms and Conditions
II.   Purchase
III.  Rental
IV.   Maintenance
V.    Supplies
VI.   Appendix (Pricing)

TERMS: General Motors is Net 25th Prox. Hughes Electronics is a Net 30 days.


F.O.B.: Our Plant


DELIVERIES: Delivery shall be made between the date hereof January 1, 1998 as may be specified from time to time on Purchaser's purchase orders, on or before the Contract expiration date of December 31, 2002.

# GENERAL MOTORS CORPORATION

Section I - GENERAL TERMS AND CONDITIONS

1.0   Implementation of Contract

2.0   Commitments

3.0   Order Placement

4.0   Delivery

5.0   Installation

6.0   Condition of Equipment

7.0   Acceptance of Equipment

8.0   Pricing

9.0   Taxes

10.0   Invoicing

11.0   Verification

12.0   Payment

13.0   Reports

14.0   Supplier Performance Review

15.0   Notices

16.0   Individual Equipment Term

17.0   Incorporation by Reference

18.0   Contract Renewal Options

19.0   Contract Termination Without Charge

20.0   Confidentiality

21.0   Corporate Divestment

22.0   Provision of Firmware

23.0   Special Circumstances

24.0   Purchase Order Terms and Conditions

GENERAL MOTORS CORPORATION

SECTION I - <u>GENERAL TERMS AND CONDITIONS</u>

1.0   IMPLEMENTATION OF CONTRACT

    1.1   Any Purchaser's location may participate in this Contract at any time during the term of this Contract by the issuance of a purchase order(s)/release(s) referencing this Contract.

    1.2   In the event that Seller cannot meet delivery, performance criteria, technology, or technical requirements, the Purchaser shall have the alternative to solicit and place the requirement with an alternative approved supplier without penalty from Seller.

2.0   COMMITMENTS

It is recognized by Purchaser that Seller is one, of four authorized vendors for Purchaser. However, Purchaser and Seller recognize and agree that Purchaser's equipment requirements may fluctuate. Seller agrees that Purchaser has made no representation, warranty, guarantee, or commitment that Purchaser will purchase any minimum quantity of products or services under this Contract. Seller further agrees that any inventories which Seller may establish, or which may otherwise arise from Seller's performance under this contract, shall be at the sole risk and responsibility of Seller. Purchaser has made no representation, warranty, guarantee, or commitment that Purchaser will be obligated to purchase all or any part of any such inventories.

3.0   ORDER PLACEMENT

The Purchaser shall issue individual purchase orders, releases or amendments referencing this contract number to Seller at the following address:

<u>Canon U.S.A., Inc.</u>

Milt Ward
Chicago Branch Office
100 Park Blvd.
Itasca IL. 60143-2693

PAGE 4 OF 65

## GENERAL MOTORS CORPORATION

SECTION I - <u>GENERAL TERMS AND CONDITIONS</u>

### 4.0   DELIVERY

4.1   Seller shall make deliveries in accordance with the date(s) specifically negotiated by Purchaser and Seller. If Seller is unable to furnish the total quantity as requested, Seller shall immediately advise Purchaser. Seller shall not delay shipments without Purchaser's authorization. If Seller cannot make deliveries in accordance with Purchaser's purchase order or suborder release under this Contract by the date(s) specified, Purchaser, in addition to any other remedies contained in this Contract, shall have the option to cancel, at no charge, the individual purchase order/release or any portion thereof.

4.2   Seller shall deliver, install, and put into operating condition, Equipment at the Installation site(s) designated by the Purchaser. Equipment shall be delivered from and by Seller's nearest authorized Dealer.

### 5.0   INSTALLATION

5.1   Purchaser shall provide electrical connections and electricity for the Equipment furnished hereunder that complies with the electrical requirements specified by Seller. Purchaser shall also provide a suitable place for the Equipment furnished hereunder that conforms with the environmental limitations, ventilation statistics, physical dimensions, and space requirements set forth by Seller,

5.2   There shall be no additional charge for installation, removal or relocation of equipment except for the relocation of CLC equipment.

### 6.0   CONDITION OF EQUIPMENT

Seller agrees to provide new current manufactured equipment. Under no circumstances is rebuilt, reconditioned or remanufactured equipment to be proposed or used under this agreement without specific written authorization from Purchaser.

## GENERAL MOTORS CORPORATION

SECTION I - <u>GENERAL TERMS AND CONDITIONS</u>

7.0   STANDARD OF PERFORMANCE AND ACCEPTANCE OF EQUIPMENT

7.1   Purchaser shall accept each item of Equipment on the date (the "Acceptance Date") when (i) necessary documentation has been received, (ii) such Equipment performs in accordance with and/or conforms to its applicable specifications, and (iii) such Equipment successfully completes a working day performance and reliability testing period described in Section 7.2.   This period will be sixty (60) days working days for Analog equipment and thirty (30) working days for Digital and Color.

7.2   In addition to the warranties set forth in this Contract, Equipment must complete a performance and reliability testing period.   If Equipment does not perform in accordance with its applicable specifications for at least ninety-seven percent (97%) of Purchaser's normal working hours for the consecutive working day testing period following the actual installation date of the Equipment, then Purchaser shall so inform Seller in writing.   Upon receipt of such notice, Seller shall, at Purchaser's option, repair or replace the unacceptable Equipment at no additional cost to Purchaser.   The repaired or replacement Equipment shall be subject to the performance and reliability tests set forth in this paragraph.   If replacement equipment is not immediately available, Purchaser may cancel this order at no cost.   This applies to rental, lease and purchase.

7.3   Equipment which has been accepted by Purchaser and then modified or replaced shall be deemed to have met Purchaser's standard performance if it operates in conformance with Seller's published technical specifications at an average effectiveness level of ninety-seven percent (97%) or more.   The average effectiveness level is a percentage figure determined by dividing the accumulated actual productive operational use time of the additional equipment by the sum of actual productive operational use time plus downtime resulting from failure of the equipment being tested.

### GENERAL MOTORS CORPORATION

## SECTION I - GENERAL - TERMS AND CONDITIONS

**7.0    STANDARD OF PERFORMANCE AND ACCEPTANCE OF EQUIPMENT (con't)**

7.4    Seller shall maintain daily records to satisfy all requirements of this Section 7.0.

7.5    In the event that the cumulative inoperativeness for a unit of Equipment exceeds ten percent (10%) in any calendar month, Purchaser may request a replacement unit or terminate the portion of the order covering the inoperative unit of equipment at no charge. Purchaser may terminate the P.O., replace equipment, or request technical assistance until such time that the Seller meets the requirements.

7.6    Replacement Equipment shall be installed within two (2) working days after existing equipment has been classified as inoperative and/or unrepairable.

**8. 0    PRICING**

8.1    Prices, charges, and rates applicable to this Contract are contained within the attached Appendices. All Prices are net prices. Prices are firm for the duration of this Contract.

8.2    Seller agrees to deliver, install, or remove the equipment specified in Section VI, Appendices A at no charge to the Purchaser.

8.3    Seller warrants that any equipment prices charged herein do not exceed the unit prices charged by Seller to other customers in substantially similar transactions,

8.4    Seller represents and warrants that the prices set forth in the attached Appendices are as low as those Seller has charged to its other customers for the same or similar products or services of the same quality for delivery during the same periods of time in the same general geographical area and under the same or similar conditions. In the event that during the period of this Contract, Seller reduces said prices to any of its other customers or Purchaser's organizations for the same or similar products or services of the same or similar quantity for delivery within the same geographical area and under the same or similar conditions, then Seller shall notify the Buyer in writing of such reductions or increases and the Purchaser shall modify, in writing, the prices specified in the attached Appendices.

## GENERAL MOTORS CORPORATION

### SECTION I - GENERAL TERMS AND CONDITIONS

8.0    PRICING  (con't)

8.5    This agreement shall include an option for buyer and seller to negotiate additional pricing decreases when special circumstances arise. Approval for such conditions or actions must be in accordance with Section 1, Paragraph 23.0.

8.6    Seller also represents and warrants that the prices set forth in the attached Appendices do not and will not violate any federal, state, county, or municipal law or regulation relative to price discrimination, price fixing, or price stabilization.  Seller agrees to indemnify, exonerate, and hold Purchaser harmless from any such violations.

8.7    NON U.S. PRICING, CANADIAN:  All terms and conditions for equipment to be placed in CANADA will be governed by this Contract.   Pricing for such placements are contained within Section VI, Appendix A.   Invoicing and payment shall be made in the local currency.  Taxes will be invoiced separately.

8.8    NON U.S. PRICING, MEXICAN:  Pricing mutually beneficial to both parties shall be negotiated with Sellers representative, subject to the terms and conditions of that country. Invoicing and payment shall be made in the local currency.  Taxes will be invoiced separately.

9. 0    TAXES

Seller shall pay all applicable taxes on equipment, accessories, and supplies covered hereunder, except for sales or use taxes which shall be paid by Purchaser.

10.0    INVOICING

Seller shall submit the following minimum information with each invoice:

10.1 Contract Number

10.2 Purchase Order/Release Number

GENERAL MOTORS CORPORATION

SECTION I - <u>GENERAL TERMS AND CONDITION</u>

10.0   INVOICING   (con't)

   10.3 Item Number, Model Number, Serial Number and/or Description

   10.4 Unit Net Price

   10.5 Name and Address of person issuing Purchase Order/Release Number

   10.6 Installation Address

11.0   VERIFICATION

   11.1 Purchaser shall have the right to request appropriate computer information, records, and catalogs pertaining to this Contract and work hereunder at all reasonable times, and shall have the right to determine the correctness and propriety of the charges billed by Seller, If any such inspection discloses any mispricing resulting in over payment by Purchaser, the amount thereof shall be refunded to Purchaser promptly upon demand. Purchaser may, at its option, withhold such payments from any amounts otherwise due from Purchaser to Seller.

   11.2 Seller shall maintain a copy of all books, records, and catalogs utilized for pricing under this Contract for at least four (4) years after termination of this Contract, and/or purchase order, but no more than seven (7) years.

   11.3 If after examination of twenty-five percent or more of the total dollars invoiced for the specific period, it is determined that pricing errors exist, it is mutually understood and agreed that the error factor will be extrapolated over the remaining billings. Seller may elect to perform a review of the invoices referred to in Purchaser's report. Within thirty (30) days, or such additional time thereafter as Purchaser may agree as reasonable, Seller may bring to Purchaser's attention errors or discrepancies, if any, in Purchaser's audit findings. The error factor will then be adjusted, as required. Seller shall promptly thereafter submit proper debit or credit memos in accordance with the instructions of the Purchaser.

GENERAL MOTORS CORPORATION

SECTION I - GENERAL-TERMS AND CONDITIONS

12.0   PAYMENT

Purchaser will make payment on a monthly basis, subject to alternative arrangements as may be mutually agreed to between Seller and Purchaser. Accumulation of releases for the purpose of a single invoice is permissible, provided however, that the release number and date of order placement is so identified.

13.0   REPORTS

13.1   Seller shall prepare and distribute to Buyer the following reports by major subdivision and in summary form, by the 30th day of the first month following the calendar quarter. Reports shall be in a format satisfactory to the Purchaser.

13.1.1   CONTRACT STATUS REPORT - A report which identifies the Buyer's current rental and purchased population of Seller's equipment, segregated by model numbers.

13.1.2   SALES REPORT - A report which identifies generated sales (expenditures and volumes) per current quarter and contract year-to-date.

13.1.3   SAVINGS REPORT - A report with savings resulting from utilization of this contract vs. the pricing in effect May 31, 1997.

13.1.4   EQUAL PARTNER DOLLARS SPENT - A report which will provide total dollar expenditure with certified minority owned suppliers in conjunction or as a result of this contract with General Motors.   Minority owned suppliers must have certification through the state / national Minority Development Business Council (MDBC).

13.2   SERVICE REPORT - A report which identifies, per model, the mean copies per service call and the average up time percentage, This report is available upon an individual request basis.   Individual two (2) days; Fleet seven (7) days.

13.3   The reports described in 13.1 are to be provided to Buyer at the address identified within Section 15.1 and as requested to the Purchaser at the individual buying location.

## GENERAL MOTORS CORPORATION

SECTION I - <u>GENERAL TERMS AND CONDITIONS</u>

14.0 <u>SUPPLIER PERFORMANCE REVIEW</u>

    14.1 The Supplier Performance Review, Appendix C, is a quarterly evaluation of the Supplier in regards to sales, service, supplies and support. Failure to meet the expectations of the Purchaser could result in cancellation of the contract.

15.0 NOTICES

    15.1 Notices and reports will be summarized and sent to Buyer transmitted by mail to

        Cathy Loria
        Buyer
        GENERAL MOTORS WORLDWIDE PURCHASING
        Mail Code 480-201-001
        6750 Chicago Road
        Warren, MI. 48090
        (810) 947-8931

**Note:** Copies to be mailed to the following:

<u>Delphi Worldwide Purchasing</u>

Judy Zink
Vandalia Operations, Mail Code 150
250 Northwoods Blvd.
P.O. Box 5051
Vandalia, OH 45377-5051
(513) 356-2538

<u>General Motors Acceptance Corp.</u>

Charles Eiler
Mail Code: 482-103-101
3044 West Grand Blvd. Room 3-101
Detroit, Mi 48202
(313) 556-9348

<u>General Motors Powertrain Group</u>

Scott Glabach
Mail Code: 185
General Motors Corporation
Ypsilanti, MI 48198-6198
(313) 481-6293

<u>General Motors WFG-Warren</u>

Dorothy Wilke
Mail Code: 480-210-000
30001 VanDyke Avenue
P.O. Box 9020
Warren, MI 48090-9020
(810) 575-6224

<u>General Motors WFG-Pontiac</u>

Garry Adams
Mail Code: 483-550-156
Worldwide Facilities
1999 Centerpoint Pky.
Pontiac, MI 48341-3150

## GENERAL MOTORS CORPORATION

SECTION I - <u>GENERAL TERMS AND CONDITIONS</u>

15.0    NOTICES  (con't)

    15.1    (con't)

<u>Hughes Electronics</u>

Tom Donnelly
Loc: CO, Bldg. C01, MS B145
7200 Hughes Terrace
Los Angeles, CA  90045
P.O. Box  80028
Los Angeles, CA  90080-0028
(310)  568-6590

<u>Hughes Electronics</u>

Pat Holmes
Loc: EO, Bldg. E01, MS J152
2000 E. El Segundo Blvd.
P.O. Box 902
El Segundo, CA  90245
(310)  616-0212

15.2    Notices to Seller transmitted by mail or faxes shall be addressed to:

<u>Canon U.S.A., Inc.</u>

Joe Annicelli
One Canon Plaza
Lake Success, NY  11042-1113

GENERAL MOTORS CORPORATION

SECTION I - GENERAL TERMS AND CONDITIONS

16.0    INDIVIDUAL EQUIPMENT TERM

In the event of termination or expiration of this Contract as set forth herein, the prices, terms and conditions for individual equipment purchase orders issued hereunder, shall survive for the balance of its initial or renewal terms subject to any possible price increase or decreases which may take place during the initial term of this Contract or any renewal option.

17.0    INCORPORATION BY REFERENCE

All documents cited and referred to in this Contract are incorporated herein by such reference and made an integral part hereof.

18.0    CONTRACT RENEWAL OPTION

18.1    In consideration of Buyer's issuance of this Contract, Seller hereby agrees to renew this Contract at the expiration of its term for one (1) three year period at the same price and on the same terms and conditions of this Contract. Notification to Seller, exercisable at the sole election of Buyer, shall be by telex or other written notice on or before thirty (30) days prior to expiration of this Contract.

18.2    Buyer shall confirm the exercise of the renewal option, by change order to this Contract or by issuing a separate Contract which shall incorporate the same terms and conditions as this Contract. Buyer shall exercise the option by notifying the contact in paragraph 15.2.

## GENERAL MOTORS CORPORATION

SECTION I - GENERAL TERMS AND CONDITIONS

18.0    CONTRACT RENEWAL OPTION  (con't)

    18.3  It is mutually understood and agreed that Buyer is under no obligation whatsoever to exercise the option, either in whole or in part, that Buyer has made no representations or commitments whereby Buyer has agreed to the exercise of the option, and that Purchaser may procure any such requirements elsewhere.

19.0    CONTRACT TERMINATION WITHOUT CHARGE

Any portion, or all, of this Contract may be canceled for cause by either party upon thirty (30) day written notification.  Seller shall be given reasonable notice of such cause and a reasonable period of time to correct such error or cause.  If Seller cannot correct such cause to satisfaction of Purchaser, then Purchaser can terminate this Contract without penalty.

20.0    CONFIDENTIALITY

Seller acknowledges that in the course of performance of its obligations pursuant to this Contract, Seller may obtain certain confidential and/or proprietary information of Buyer, of its affiliates or customers, including the terms and conditions of this Contract.  Seller hereby agrees that all information communicated to it by the Buyer, its affiliates, or customers, whether before or after the Effective Date, shall be and was received in strict confidence, shall be used only for purposes of this contract, and shall not be disclosed by Seller, its agents or employees without the prior written consent of Buyer, except as may be necessary by reason of legal, accounting, or regulatory requirements beyond the reasonable control of Seller.  The provisions of this Section shall survive the term or termination of this Contract for any reason.

## GENERAL MOTORS CORPORATION

SECTION I - <u>GENERAL TERMS AND CONDITIONS</u>

### 21.0    CORPORATE DIVESTMENT

In the event that any Buyer subsidiary, affiliate, or division is sold to, or merged with a third party, such new entity shall separately and independently be allowed to continue to utilize such products or services and to procure any new or additional products or services from Supplier under the terms and conditions of this Contract at no additional charge. Such right shall continue for the remaining term of this Contract. Such new entity shall separately and independently assume the rights and obligation set forth in this Contract.

### 22.0    PROVISION OF FIRMWARE

22.1    Seller shall indemnify the Buyer from all loss, damage, and liability which may be incurred on account of Infringement of any U.S. patent relating to Equipment's provided hereunder by Seller, and Seller shall, at its own expense, defend all claims, suits and actions against Buyer in which such infringement is alleged, provided Seller is promptly notified in writing and has sole control of the defense and settlement of such claims, suits and actions, but Seller's indemnity shall not apply to any infringements arising solely from the use of or sale of Equipment in combination with any device or Equipment not provided hereunder by Seller or to any infringement caused by modification of the Equipment by other than Seller or modified by Seller to Purchaser's own specification. If Purchaser's use of any such Equipment is enjoined, or if Seller desires to minimize its liabilities hereunder, Seller will, at its option, either substitute other equally suitable Equipment, modify Equipment so that it no longer infringes, obtain for Purchaser the right to continue its use, or accept return of Equipment. Seller shall retain all payments made hereunder to Seller during period Purchaser had use of Equipment. For purposes of this paragraph, the term "Equipment" shall include any Seller Operating System Software licensed hereunder.

GENERAL MOTORS CORPORATION

SECTION I - <u>GENERAL TERMS AND CONDITIONS</u>

22.0   PROVISION OF FIRMWARE  (con't)

    22.2 The foregoing states the entire liability of Seller for patent Infringement.  Buyer agrees to hold Seller harmless in a manner fully equivalent to the foregoing in any suit, claim, or proceeding brought against Seller to the extent the alleged infringement arises from either the image produced, Equipment made or modified in accordance with Purchaser's specification, unauthorized modifications by Purchaser of Equipment or Seller Operating System Software, or combination of Seller Equipment or Seller Operating System Software leased and licensed, respectively, pursuant to the Contract with Equipment or software not supplied by Seller.

23.0   SPECIAL CIRCUMSTANCES

    Buyer and Seller may from time to time modify this agreement to accommodate program or project unique circumstances. Modifications to this agreement shall not be binding on Buyer or Seller unless approved in writing by the following representatives of Buyer:

<u>GM Worldwide Procurement</u>

Cathy Loria
Mail Code:  480-201-001
6750 Chicago Road
Warren,  Michigan  48090
(810) 947-8931

<u>HAC Worldwide Procurement</u>

Tom Donnelly
Loc:  CO,  Bldg. C01, MS B145
7200 Hughes Terrace
Los Angeles, CA  90045
P.O. Box  80028
Los Angeles, CA  90080-0028
(310)  568-6590

<u>Delphi Worldwide Purchasing</u>

Judy A. Zink
Vandalia Operation, Mail Code 150
250 Northwood Blvd.
P.O. Box 5051
Vandalia,  OH  45377-5051
(513)  356-2538

## GENERAL MOTORS CORPORATION

### SECTION II - PURCHASE TERMS AND CONDITIONS

- 1. 0     Pricing

2.0     Title

3.0     Warranty

4.0     Trade-In Option

5.0     Relocation of Equipment

## GENERAL MOTORS CORPORATION

**SECTION II - PURCHASE TERMS AND CONDITIONS**

1.0    PRICING

Pricing and identification of equipment available for purchase are contained within Section VI, Appendix A. Purchased equipment shall be in new condition with minimum meter readings resulting from initial set-up and installation trials.

2.0    TITLE

2.1    Seller represents and warrants that at the time of sale of Equipment to Purchaser, Seller shall transfer title to Purchaser free and clear of all claims, liens, encumbrances, judgments, taxes or fees of whatever nature, and shall, at any time requested by Purchaser and at Seller's expense, provide necessary papers to transfer title to Purchaser and to remove any uncertainty which may interfere with Purchaser's title.

2.2    Seller hereby agrees to indemnify, hold harmless, and exonerate the Purchaser, its officers, agents and employees from and against any and all claims, liens, encumbrances, judgments, liabilities, losses, taxes, or fees, costs, penalties, and damages of any nature whatsoever, including costs and expenses incidental hereto, arising out of the following:

2.2.1    Any failure by Seller to transfer free and clear, title to Purchaser to all Equipment purchased.

2.2.2    Any violation by Seller or applicable laws, ordinances, codes, and regulations which apply to Equipment covered under this Contract prior to the time of transfer of title to Purchaser.

2.2.3    Any payments for the costs of all taxes, excises, or governmental charges of any nature assessed on Equipment purchase hereunder, prior to the time of transfer of title to Purchaser.

GENERAL MOTORS CORPORATION

SECTION II - <u>PURCHASE TERMS AND CONDITIONS</u>

3.0    WARRANTY

    3.1    Seller's Equipment is warranted to be free from manufacturing and material defects for a minimum of 90 days, unless otherwise specified, from the date of the Equipment's installation. Any Equipment purchased from Seller which becomes defective during the period will be repaired or replaced at Seller's discretion, either at the Purchaser's site or at Seller's plant, with shipping costs to be borne by Seller.

    3.2    Claims by the Purchaser in regard to any defect in Equipment must be made within the warranty period. Seller will either replace the defective Equipment or correct the error, at no cost to Purchaser.

    3.3    Except as otherwise provided in this Contract, the above represents Seller's sole warranty with respect to purchased items. THE WARRANTIES CONTAINED IN THIS CONTRACT ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY REGARDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, RELATING TO THE USE OR PERFORMANCE OF THE EQUIPMENT. SELLER WILL NOT BE LIABLE FOR PERSONAL INJURY OR PROPERTY DAMAGE (UNLESS CAUSED BY SELLER'S NEGLIGENCE), LOSS OR PROFIT OR OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE EQUIPMENT, EVEN IF SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, which exceed the aforestated obligations are hereby disclaimed by Seller and excluded from this Contract.

    3.4    Any alterations, additions, changes, or improper use or care of the Equipment by the Purchaser will void the above stated warranty provisions.

    3.5    All lease agreements required by GM Customer must be approved and authorized by Worldwide Purchasing referenced in Section I, Paragraph 23.0.

# GENERAL MOTORS CORPORATION

SECTION II - <u>PURCHASE TERMS AND CONDITIONS</u>

4.0    TRADE-IN OPTION

    4.1    Purchaser may exercise an option to trade in any purchased Equipment for the express purpose of purchasing a new unit from Seller.

        4.1.1    Competitive Model trade-ins will be handled at Fair Market Value.

        4.1.2    Trade-In options apply to all equipment.

5.0    RELOCATION OF EQUIPMENT

Seller shall be responsible for transporting Seller's installed Equipment at no charge.  Seller shall assist Purchaser with such relocation by performing the following tasks, provided the Equipment was covered at the time of relocation by a Full Service Maintenance (FSM) purchase order.

5.1    Ascertain that the new location complies with Equipment's electrical requirements.

5.2    Prepare Equipment for movement.

5.3    Install Equipment at new locations.

5.4    Relocation of CLC and Digital equipment will be charged to Buyer at the Seller's rate at the time the relocation was performed.

### GENERAL MOTORS CORPORATION

SECTION III  -  <u>RENTAL TERMS AND CONDITIONS</u>

| | |
|---|---|
| 1.0 | Pricing |
| 2.0 | Maintenance and Supplies |
| 3.0 | Equipment Liability |
| 4.0 | Use |
| 5.0 | Title |
| 6.0 | Relocation |
| 7.0 | Termination of Equipment |
| 8.0 | General |
| 9.0 | Meter Credits |
| 10.0 | Free 90-Day Trial |

GENERAL MOTORS CORPORATION

SECTION III - <u>RENTAL TERMS AND CONDITIONS</u>

1.0    PRICING

Rental charges, including copy allowances, applicable to each rental plan described herein are contained within Section VI, Appendix A.

2.0    MAINTENANCE AND SUPPLIES

All rental plans include Full Service Maintenance (FSM) and all supplies including staples (except paper) required for proper Equipment operation as determined by Seller unless otherwise specified in pricing schedule.

2.1    Full Service Maintenance Plan (FSM) - Reference paragraph 2.0 (under Section IV - Maintenance Terms and Conditions)

2.2    Seller or Purchaser may deem it necessary to replace a unit for reasons other than uptime availability.  Seller expressly warrants that all goods and services offered herein will conform to Seller's written specification and will be free from defects and material and workmanship.

2.3    If, during the period of assured maintenance availability, Seller cannot maintain the equipment in good working order, Seller shall replace the equipment with another of the same product designation at no additional charge or costs to Purchaser.

3.0    EQUIPMENT LIABILITY

The Purchaser is relieved of all risks of physical loss or damage to said Equipment, except when such loss or damage is caused by Purchaser's negligence.  In any event, Purchaser's total liability shall not exceed the cost of Equipment lost or damaged, less depreciation.

4.0    USE

The Equipment shall in all events, and though attached to realty, be deemed Seller's personal property.  Purchaser will keep the rented Equipment free from all liens and encumbrances which may arise solely due to the fact that rented equipment is in the possession of Purchaser.

## GENERAL MOTORS CORPORATION

SECTION III - <u>RENTAL TERMS AND CONDITIONS</u>

5.0    TITLE

Title to Equipment shall remain with the Seller; and unless otherwise expressly provided herein, risk of loss shall follow title.  Purchaser shall, whenever requested by Seller, advise Seller of the location of Equipment.

6.0    RELOCATION

6.1    Seller shall move Equipment on the date(s) specified by Purchaser, provided, however, that Purchaser shall furnish ten (10) days advance written notice for the movement of Equipment.

6.2    Purchaser shall not alter, remove, or dispose of any equipment covered hereunder without prior written approval of Seller.

6.3    Upon Purchaser's issuance of notice to relocate Equipment, Seller shall:

6.3.1    Ascertain that the new location complies with the Equipment's electrical requirements.

6.3.2    Prepare Equipment for movement.

6.3.3    Install Equipment at a new location.

6.4    Relocation charges will not be assessed to Purchaser.

## GENERAL MOTORS CORPORATION

**SECTION III - RENTAL TERMS AND CONDITIONS**

**7.0    TERMINATION OF EQUIPMENT**

7.1    Early Termination Charges will not be assessed for any unit(s) terminated due to business closing, and/or major redeployement or any unit(s) that failed to meet the uptime performance requirements provided the equipment has been installed a miniumum of ninety (90) days.    Thirty (30) days prior written notice of termination is required.

7.2    Early Termination Charges for Equipment canceled due to the installation of competitive equipment shall be an amount equal to the Purchaser's monthly minimum charges in effect for the Equipment at the time of cancellation multiplied by the number of months remaining in the contract, not to exceed three (3) times the average months plus all unpaid meter charges.

7.3    Seller shall remove Equipment on the date(s) specified by Purchaser, provided, however, that Purchaser shall furnish ten (10) days advance written notice for the movement of Equipment.

7.4    Within thirty (30) days of the termination or expiration of any implementing purchase order/release issued under this Contract, Seller shall promptly remove the rented Equipment from the premises of the Purchaser.  Seller shall be responsible for all loss or damage to such premises of property of Purchaser caused by the negligent acts of Seller in so removing the rented Equipment.  The rented Equipment shall be returned to Seller in as good condition as when received, except for reasonable wear and tear resulting from any lawful use hereunder.

## GENERAL MOTORS CORPORATION

SECTION III - <u>RENTAL TERMS AND CONDITIONS</u>

8.0   GENERAL

8.1   Purchaser agrees to bear all risks of theft, loss, or damage to Equipment not caused by Seller's employees or agents, including but not limited to the installed drum.  Purchaser's total liability shall not exceed the cost of Equipment lost or damaged, less depreciation.

8.2   Purchaser agrees not to or allow other to alter or remove Seller's Equipment or remove Seller's insignia or label.

8.3   Purchaser agrees to provide Seller access, subject to security requirements, to Purchaser's premises to accommodate Seller's delivery, installation service, inspection of equipment, meter readings, and delivery of supplies.

9.0   METER CREDITS

9.1   Meter credits shall be calculated as follows:

Seller shall extend meter rental credits for all defective copies produced by Equipment. Credits shall be offset against Seller's monthly charges in excess of the monthly minimums.

10.0   COMPETATIVE UNIT

Seller agrees to issue a credit equal to three (3) times the  monthly base charge of the unit on competative equipment where Purchaser may incur a penalty charge on a competative unit. Written notice, outlining the competative unit and location, is required from Purchaser and must be approved by Seller prior to processing.

GENERAL MOTORS CORPORATION

SECTION IV  -  <u>MAINTENANCE TERMS AND CONDITIONS</u>

| | | |
|---|---|---|
| 1.0 | Plans Available |
| 2.0 | Full Service Maintenance (FSM) |
| 3.0 | Per Call Maintenance (PCM) |

GENERAL MOTORS CORPORATION

SECTION IV - <u>MAINTENANCE TERMS AND CONDITIONS</u>

1.0    PLANS AVAILABLE

Seller agrees to offer the following plans:

1.1    FSM - Full Service Maintenance Plan - Reference Paragraph 2.0 (below)  (This plan is included at no charge in all rental contracts.)

1.2    PCM - Per Call Maintenance Plan - Reference Paragraph 3.0 (below)

2.0    <u>FULL SERVICE MAINTENANCE</u>  (FSM)

This plan includes: (1) Sellers or Sellers Designee routine preventive maintenance and emergency service necessary to keep the Equipment in good working order.  Such maintenance shall be performed during Buyer's regular business hours (8:00 a.m. to 5:00 p.m., Monday through Friday, except holidays) (2) maintenance shall be performed at no cost to Purchaser; provided that such services shall not include the following: (a) replacement of supplies, such as paper, (b) repairs resulting from causes other than normal use; Purchaser's willful act; negligence or misuse (including, without limitation, damage to Copier Drums and use of supplies or spare parts other than those distributed by Seller which cause abnormally frequent service calls or service problems); accident; transportation; failure of electrical power, air conditioning or humidity control, (c) repairs made necessary by service performed by personnel other than those of Seller or Seller's Designee, (d) work which Purchaser requests to be performed outside regular business hours, or (e) shop reconditioning or modification to the Equipment except those specified by Seller's Technical Service Department to assure greater performance of the Equipment.

When, in Seller's opinion with Purchaser's concurrence, Equipment because of advanced age or usage in excess of the norm, cannot be maintained in good working order through Seller's routine preventive maintenance service, or if work beyond the scope of this Contract is required, Seller shall submit to Purchaser a cost estimate of such work.  If Purchaser refuses to authorize same, Seller shall have the right, on ten (10) days written notice to Purchaser, to terminate service under this Contract for any or all items of Equipment.  Seller shall have the right to substitute equal or better Equipment at any time during the term hereof.

GENERAL MOTORS CORPORATION

SECTION IV - <u>MAINTENANCE TERMS AND CONDITIONS</u>

2.0   FULL SERVICE MAINTENANCE  (con't)

Removed parts or Equipment replaced by Seller shall become the property of Seller.  Seller shall have full and free access to the Equipment to provide service thereon at the discretion of the GM site/Purchaser.

2.1   <u>On-Site Technician</u>

On site maintenance will be provided based on the mutual agreement of the Buyer and Seller.  Consideration will be taken for the number of copies produced and the number of units by each segment of equipment.  A service representative's standard working hours shall be between 8:00 a.m. and 5:00 p.m., Monday through Friday. Purchaser agrees to provide suitable resident area for storage of spare parts if possible.

2.2   <u>Supplies Included</u>

Seller shall supply, provide and maintain, without charge, an adequate supply of black toner for all units covered under this Contract, excluding facsimile and CLC equipment.



GENERAL MOTORS CORPORATION

SECTION IV - <u>MAINTENANCE TERMS AND CONDITIONS</u>

2.0    FULL SERVICE MAINTENANCE  (con't)

2.3    <u>Guarantee Response Time</u>

Response to service calls will be performed in four (4) business hours on units located within a twenty-five (25) mile radius of Seller's designated Service Center. Response will be six to eight (6 to 8) on all units located beyond a twenty-five (25) mile radius of Seller's designated Service Center. "Response Time" is defined as, "from the time the call is placed until the time the technician arrives at the equipment location." In the event a Designee closes, Seller will make provisions to service Purchaser's Equipment acquired under the Contract.

2.4    <u>Charges</u>

Reference pricing Section VI, Appendix A.

2.5    <u>Termination</u>

Purchaser shall have the right at any time to terminate any or all items or Equipment on an implementing FSM agreement with thirty (30) days advance written notice to Seller. In addition, Purchaser shall be compensated by Seller for any unused portion of advance payment for FSM immediately upon termination, prorated on the basis of a thirty (30) day month or the copies run, whichever, is the lesser amount.

2.6    GUARANTEED UPTIME

2.6.1    Seller shall guarantee a 97% equipment uptime. Uptime shall be measured over a three (3) month rolling average or a single month in which such equipment's "downtime" exceeds 15%. Downtime is defined as the number of hours in any calendar month in which a unit or accessory of equipment is inoperative, and such inoperability is not due to misuse, fire or using the equipment in a manner other than was intended. Seller agrees to replace equipment identified under this guaranteed uptime provision at no charge to Purchaser. In addition, upon agreement between Seller and Purchaser, Seller shall assign one (1) or more field engineers to this equipment site at no charge to Purchaser for period to restore 97% provided such equipment is contracted on an equipment maintenance agreement.

## GENERAL MOTORS CORPORATION

SECTION IV - <u>MAINTENANCE TERMS AND CONDITIONS</u>

2.0    <u>FULL SERVICE MAINTENANCE</u>

    2.6    GUARANTEED UPTIME (con't)

        2.6.2    Equipment identified by Seller or Purchaser as not attaining manufacturers performance standards will be replaced by Seller at no charge to Purchaser. Such equipment will be reviewed and resolved through mutual agreement between Seller and Purchaser.

        2.6.3    Seller or Purchaser may deem it necessary to replace a unit for reasons other than uptime availability. Seller expressly warrants that all goods and services offered herein will conform to Seller's written specification and will be free from defects in material and workmanship.

        2.6.4    If, during the period of assured maintenance availability, Seller cannot maintain the equipment in good working order, Seller shall replace the equipment with another of the same product designation at no additional charge or costs to Purchaser.

        2.6.5    Full Service Maintenance Plan (FSM) - Reference paragraph 2.0 (under Section IV - Maintenance Terms and Conditions)

3.0    <u>PER CALL MAINTENANCE</u> (T&M) TIME & MATERIALS

Maintenance required outside normal business hours shall be invoiced at Seller's Designee's established per call rate schedule and terms in effect.

GENERAL MOTORS CORPORATION


**SECTION V** - <u>SUPPLIES</u>

    1.0       General

    2.0       Prices

## GENERAL MOTORS CORPORATION

SECTION V - <u>SUPPLIES</u>

1.0    GENERAL

Supplies are included at no charge on all rental and ful! service maintenance plans for purchased units, except for paper and facsimile equipment or as otherwise noted.

Seller hereby agrees to make available on a non-mandatory use basis, supplies set forth in Section VI, Appendix A for Purchased units being maintained on the per-call-maintenance program.  Supply charges for this equipment are contained in Section VI, Appendix A.

Seller further agrees that Purchaser retains the right to purchase reprographic supplies from any reprographic supply source, as long as they do not cause equipment service problems.

2.0    PRICES

Prices are firm for the duration of this Contract, plus an additional three (3) year period.

# SUPPLIER PERFORMANCE REVIEW

### GENERAL MOTORS/HUGHES
### COPIER/FAX SUPPLIER EVALUATION

TIME PERIOD: _____ THROUGH: _____ TODAY'S DATE: _____

LOCATION: _____ CONTACT: _____ PHONE: _____

RATINGS:    UNSATISFACTORY ( 1 )    POOR ( 2 )    GOOD ( 3 )    EXCELLENT ( 4 )

| A) ADMINISTRATION/SALES SUPPORT | XEROX | KODAK | PITNEY-BOWES | CANON |
|---|---|---|---|---|
| 1) Local/National Customer Support | _____ | _____ | _____ | _____ |
| 2) Product/Application Knowledge | _____ | _____ | _____ | _____ |
| 3) Knowledge of Contract T & C | _____ | _____ | _____ | _____ |
| 4) Professionalism | _____ | _____ | _____ | _____ |
| 5) Training Support | _____ | _____ | _____ | _____ |
| 6) Receipt of Quarterly Reports | _____ | _____ | _____ | _____ |
| 7) Accuracy of Quarterly Reports | _____ | _____ | _____ | _____ |
| 8) Receipt of Service Reports | _____ | _____ | _____ | _____ |
| 9) Accuracy of Service Reports | _____ | _____ | _____ | _____ |
| Total ÷ 9 = Average | _____ | _____ | _____ | _____ |

| B) BILLING SUPPORT | | | | |
|---|---|---|---|---|
| 1) Billing Accuracy | _____ | _____ | _____ | _____ |
| 2) Correcting Billing Errors | _____ | _____ | _____ | _____ |
| 3) Timely Receipt of Invoices | _____ | _____ | _____ | _____ |
| 4) Timely Crediting of Accounts | _____ | _____ | _____ | _____ |
| Total ÷ 4 = Average | _____ | _____ | _____ | _____ |