CORPORATE PURCHASE CONTRACT  4023
PAGE  24  OF  27

GENERAL MOTORS CORPORATION

SECTION IV - MAINTENANCE TERMS AND CONDITIONS

1.0  PLANS AVAILABLE

1.2  FSM - Full Service Maintenance Plan
(Master Maintenance Agreement billed monthly)

1.1  PCM - Per Call Maintenance Plan

2.0  FULL SERVICE MAINTENANCE (FSM)

2.1  This plan includes: (1) Sellers or Seller's Designee routine
preventive maintenance and emergency service necessary to keep
the Equipment in good working order.  Such maintenance shall
be performed during Seller's regular business hours (9:00 a.m.
to 5:00 p.m., Monday-Friday, except holidays) (2) maintenance
shall be performed at no cost to Purchaser; provided that such
services shall not include the following: (a) replacement of
supplies, such as paper, (b) repairs resulting from causes
other than normal use; Purchaser's willful act; negligence or
misuse (including, without limitation, damage to Drums and use
of supplies or spare parts other than those distributed by
Seller which cause abnormally frequent service calls or
service problems); accident; transportation; failure or elec-
trical power, air conditioning or humidity control, (c)
repairs made necessary by service performed by personnel other
than those of Seller or Seller's Designee, (d) work which
Purchaser requests to be performed outside regular business
hours, or (e) shop reconditioning or modification to the
Equipment except those specified by Seller's Technical Service
Department to assure greater performance of the Equipment.

2.2  When, in Seller's opinion, Equipment because of advanced age
or usage in excess of the norm, cannot be maintained in good
working order through Seller's routine preventive maintenance
service, or if work beyond the scope of this Contract is
required, Seller shall submit to Purchaser a cost estimate of
such work.  If Purchaser refuses to authorize same, Seller
shall have the right, on ten (10) days written notice to
Purchaser, to terminate service under this Contract for any or
all items of Equipment.  Seller shall have the right to sub-
stitute equivalent Equipment at any time during the term
hereof.  Removed parts or Equipment replaced by Seller shall
become the property of Seller.  Seller shall have full and
free access to the Equipment to provide service thereon.

CORPORATE PURCHASE CONTRACT <u>4023</u>

PAGE <u>25</u> OF <u>27</u>

GENERAL MOTORS CORPORATION

SECTION IV - MAINTENANCE TERMS AND CONDITIONS

2.0   FULL SERVICE MAINTENANCE (CONTINUED)

2.2   Seller or Seller's Designee shall have no obligation to con-
tinue servicing Equipment which is moved from the location
where originally installed.

2.3   <u>Guaranteed Availability</u>

Response to service calls will be performed in four (4)
business hours within a twenty-five (25) mile radius of
Seller's Designee; six (6) to eight (8) business hours outside
the twenty-five (25) mile radius.  In the event a Designee
closes, Seller will make provisions to service Purchaser
Equipment acquired under the Contract.

2.4   <u>Termination</u>

Purchaser shall have the right at any time to terminate any or
all items of Equipment on an implementing FSM agreement with
thirty (30) days advance written notice to Seller.  In
addition, Purchaser shall be compensated by Seller for any un-
used portion or advance payment for FSM immediately upon
termination, prorated on the basis of a thirty (30) day month.

2.5   <u>Charges</u>

FSM charges are effective on an annual basis and billed
monthly following the equipment warranty period.

3.0   <u>PER CALL MAINTENANCE - (PCM)</u>

Maintenance required outside normal business hours shall be
invoiced at Seller's Designee's established per call rates and
terms in effect.

CORPORATE PURCHASE CONTRACT  4023
PAGE  26  OF  27

GENERAL MOTORS CORPORATION

SECTION V - SUPPLIES

    1.0  General

    2.0  Prices

CORPORATE PURCHASE CONTRACT 4023
PAGE 27 OF 27

GENERAL MOTORS CORPORATION

SECTION V - SUPPLIES

1.0   GENERAL

Supply charges are contained in Section VI, Appendix A.

Seller agrees that Purchaser retains the right to purchase supplies from any supply source, as long as they do not cause equipment service problems.

2.0   PRICES

Prices are firm for the duration of this Contract.

CORPORATE PURCHASE CONTRACT 4023
PAGE   1   OF   18

APPENDIX A

GENERAL MOTORS CORPORATION

SECTION VI - APPENDIX A - SPECIFICATION SHEETS

| | FAX | MODEL NO. |
|---|---|---|
| 1.0 | " | 210 |
| 2.0 | " | B340 |
| 3.0 | " | 5000 |
| 4.0 | " | L7000 |
| 5.0 | " | L777 |
| 6.0 | " | L790 |
| 7.0 | " | L3100 |

**GENERAL MOTORS CORPORATION**
Canon Canada Pricing
**CONTRACT LEVEL PROGRAM**

**PURCHASE PRICING**

| Model | CANADIAN 90-DAY WAR | CANADIAN 1-YEAR WAR |
|---|---|---|
| **G3 Thermal Paper** | | |
| FAX 210 | $ N/A | $ 1,400 |
| **G3 Plain Paper** | | |
| FAX B340 | N/A | 1,872 |
| LASER CLASS 5000 | 2,034 | 2,440 |
| LASER CLASS 7000[2] | 2,895 | N/A |
| FAX L790 | 6,142 | 6,763 |
| **G4** | | |
| FAX L3100[1] | N/A | N/A |
| **Accessory** | | |
| **G3 Thermal Paper** | | |
| Interface RS232C (210) | N/A | N/A |
| **G3 Plain Paper** | | |
| 0.5M Memory (LC5000) | 78 | 78 |
| 1M Memory (LC7000) | 140 | N/A |
| 4M Memory (LC7000) | 610 | N/A |
| Feeder/Cassette Unit (LC5000/LC7000)) | 462 | 462 |
| FX-1 Cassette-Ltr (L790) | 106 | 106 |
| EP-L Cassette-Lg (L790) | 85 | 85 |
| Interface RS232C (LC7000) | 309 | N/A |

**GENERAL MOTORS CORPORATION**
**CANON CANADA PRICING**
**CONTRACT LEVEL PROGRAM**

**PURCHASE PRICING**

| Model | CANADIAN 90–DAY WAR | CANADIAN 1–YEAR WAR |
|---|---|---|
| **Accessory** | | |
| **G3 Plain Paper (con't)** | | |
| Handset (L790) | $ 65 | $ 65 |
| Handset 2 (LC5000) | 18 | 18 |

NOTE:   When accessories are ordered after the equipment's initial installation, there is a $162.00
installation charge.

[1] Includes Cabinet.
[2] Additional nine month warranty available at time of purchase for $236.00.

**GENERAL MOTORS CORPORATION
CANON CANADA PRICING
CONTRACT LEVEL PROGRAM**

<u>**PURCHASE PRICING**</u>

**TRADE IN AMOUNTS ALLOWED ON THE FOLLOWING UNITS**

<u>**90-DAY WARRANTY**</u>

<u>**CANADA**</u>

Fax L790     $ 770

<u>**1-YEAR WARRANTY**</u>

<u>**CANADA**</u>

Fax L790     $ 770

**CONTRACT LEVEL PROGRAM**
**CANON CANADA PRICING**
**RENTAL PRICING**

| Model | CANADIAN 24–MONTH FTR | CANADIAN 36–MONTH FTR |
|---|---|---|
| **G3 Thermal Paper** | | |
| FAX 210 | $ 63 | $ 47 |
| **G3 Plain Paper** | | |
| FAX LC5000 | 109 | 82 |
| FAX LC7000 | N/A | 124 |
| FAX L790 | 303 | 227 |
| **G4** | | |
| FAX L3100[1] | N/A | N/A |
| **Accessory** | | |
| **G3 Plain Paper** | | |
| 0.5M Memory (LC5000) | 4 | 2 |
| 1M Memory (LC7000) | N/A | 7 |
| 4M Memory (LC7000) | N/A | 21 |
| Feeder/Cassette Unit (LC5000/LC7000)) | 21 | 13 |
| Cassettes | 3 | 2 |
| Handset (L790/LC5000) | 3 | 2 |

NOTE:  Iterface RS232C (210) is available for a one time charge of $51 Canadian.
NOTE:  When accessories are ordered after the equipment's initial installation, there is a
        $162.00 installation charge.

[1] Includes Cabinet and one (1) Interface.

**GENERAL MOTORS CORPORATION**
**CANON CANADA PRICING**
**CONTRACT LEVEL PROGRAM**

**CANON INVOICED**
**MAINTENANCE RATES – FULL COVERAGE**

Includes service checks, service calls, replacement parts, transportation and labor.

| Model | Payment Plan | CANADIAN |
|---|---|---|
| **G3 Thermal Paper** | | |
| FAX 210 | Monthly service contract budget fee | $ 14 |
| **G3 Plain Paper** | | |
| FAX B340 | Monthly service contract budget fee | 17 |
| | Annual service contract fee | 205 |
| LASER CLASS 5000 | Monthly service contract budget fee | 25 |
| | Annual service contract fee | 295 |
| LASER CLASS 7000 | Monthly service contract budget fee | N/A |
| | Annual service contract fee | 315 |
| FAX L700 | Monthly service contract budget fee | N/A |
| | Annual service contract fee | N/A |
| FAX L775 | Monthly service contract budget fee | 33 |
| | Annual service contract fee | 390 |
| FAX L785 | Monthly service contract budget fee | 33 |
| | Annual service contract fee | 390 |
| FAX L790 | Monthly service contract budget fee | 41 |
| | Annual service contract fee | 490 |

CORPORATE CONTRACT 4023
Page 18 of 18

**GENERAL MOTORS CORPORATION**
**CANON CANADA PRICING**
**CONTRACT LEVEL PROGRAM**

**PURCHASE PRICING**

**SUPPLY PRICING**

**CANADA**

**G3 Thermal Paper**

| | |
|---|---|
| Thermal Paper 1 | $ 138 |
| Thermal Paper 2 | 77 |
| Thermal Paper 3 | 49 |
| ACTIS Paper 1 | 31 |
| AT Cartridge 1 | 52 |

**G3 Plain Paper**

| | |
|---|---|
| BX–2 Cartridge (B340) | 35 |
| FX1 Cartridge (L790) | 152 |
| FX1 Cartridge[1] (L790) | 126 |
| FX2 Cartridge (LC5000/LC7000) | 106 |

[1] GMAC only

# AMENDMENT

## GENERAL MOTORS ACCEPTANCE CORPORATION
### AND CONSOLIDATED SUBSIDIARIES
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

DATE __3/3/92__
EFFECTIVE DATE __IMMED.__

- CANON USA, INC.
- 100 PARK BLVD.
- ITASCA, IL 60143-2693
- ATTN: MR. MILT WARD

**FOR GMAC USE—ONLY**

- LOCATION—FACSIMILE
- ITEM ORDERED—BLANKET

THIS IS AN AMENDMENT — CHANGE NO. ___1___ TO PURCHASE ORDER NO. A __86610__

AFTER RECORDING CHANGES NOTED BELOW, ATTACH TO AND MAKE A PART OF ORIGINAL
PURCHASE ORDER, INCLUDING ITS TERMS AND CONDITIONS.

## PLEASE MAKE THE FOLLOWING CHANGES

| ITEM | QUANTITY | DESCRIPTION | PRICE |
|------|----------|-------------|-------|
| | | # AMENDMENT | |
| | | TO DELETE:  J. J. MUSSELMAN & J. L. TODD | |
| | | TO ADD:  H. L. DAVIS AS AN AUTHORIZED AGENT | |

REASON FOR AMENDMENT

GENERAL MOTORS ACCEPTANCE CORP.
3044 W. Grand Blvd.
Detroit, MI 48202
Attn: Purchasing Activities
Argo 'A' Bldg., Room 585-H

C. F. EILER - PURCHASING AGENT

R. J. MAHONEY - SENIOR BUYER

## PLEASE RETURN THE ATTACHED
## ACKNOWLEDGEMENT COPY PROMPTLY

GMAC 456 (REV. 5-89)
PRINTED IN U.S.A. 1M 12/90

ORIGINAL

AA- 02708

02/03/93    08:58    ☎974 4544    GMAC S&E    →→→ CANON IL    ☒008/007

AMENDMENT

## GENERAL MOTORS ACCEPTANCE CORPORATION
### AND CONSOLIDATED SUBSIDIARIES
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

DATE  07-29-92
EFFECTIVE DATE  07-01-92

CANON USA, INC.
100 PARK BLVD.
ITASCA, IL  60143-2693

ATTN: MILT WARD

**FOR GMAC USE—ONLY**
- LOCATION—ALL
- ITEM ORDERED—FACSIMILE B.G

THIS IS AN AMENDMENT — CHANGE NO. ___2___    TO PURCHASE ORDER NO. A  86610

AFTER RECORDING CHANGES NOTED BELOW, ATTACH TO AND MAKE A PART OF ORIGINAL
PURCHASE ORDER, INCLUDING ITS TERMS AND CONDITIONS.

## PLEASE MAKE THE FOLLOWING CHANGES

| ITEM | QUANTITY | DESCRIPTION | PRICE |
|------|----------|-------------|-------|
| | | # AMENDMENT | |
| | | AMEND THIS ORDER TO ADD THE FOLLOWING ITEM: | |
| | | MODEL L700 PLAIN PAPER LASER FACSIMILE MACHINE | $1,997.00 |
| | | NO TRADE-IN ALLOWANCE | |
| | | 90-DAY WARRANTY. | |

REASON FOR AMENDMENT

GENERAL MOTORS ACCEPTANCE CORP.
3044 W. Grand Blvd.
Detroit, MI 48202
Attn: Purchasing Activities
    Argo 'A' Bldg., Room 585-H

C. F. EILER - PURCHASING AGENT

R. J. MAHONEY - SENIOR BUYER

AA- 03040

| DATE | ISSUED BY | DEPT. | ACCT. NO. | PROJECT NO. |
|------|-----------|-------|-----------|-------------|
| 07-29-92 | LINDA PINK | SPACE & EQUIPMENT | | |
| DEPT. APPROVAL | | ROOM NO.  ARGO A 585H | | |

FINAL APPROVAL

GMAC 456 (REV. 5-83)
PRINTED IN U.S.A. 1M 12/90

PURCHASING DEPARTMENT

02/03/93    08:56    ☎874 4544              GMAC S&E        ⟶ CANON IL          ☐001/001

# AMENDMENT

## GENERAL MOTORS ACCEPTANCE CORPORATION
### — AND CONSOLIDATED SUBSIDIARIES —
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

DATE ___10-11-92___
EFFECTIVE DATE ___10-01-92___

CANON USA, INC.
100 PARK BLVD.
ITASCA, IL  60143-2693

ATTN:  MILT WARD

**FOR GMAC USE—ONLY**

• LOCATION–ALL

• ITEM ORDERED–FACSIMILE B.O.

THIS IS AN AMENDMENT — CHANGE NO. ___3___ TO PURCHASE ORDER NO. A ___86610___

AFTER RECORDING CHANGES NOTED BELOW, ATTACH TO AND MAKE A PART OF ORIGINAL
PURCHASE ORDER, INCLUDING ITS TERMS AND CONDITIONS.

## PLEASE MAKE THE FOLLOWING CHANGES

| ITEM | QUANTITY | DESCRIPTION | PRICE |
|---|---|---|---|
| | | **AMENDMENT** | |
| | | AMEND THIS ORDER TO ADD NEW MODELS AND CHANGE CURRENT PRICING OF FACSIMILE MACHINES AS SHOWN ON THE ATTACHED PAGES. | |

REASON FOR AMENDMENT

GENERAL MOTORS ACCEPTANCE CORP.
3044 W. Grand Blvd.
Detroit, MI 48202
Attn: Purchasing Activities
Argo 'A' Bldg., Room 585-H

C. F. EILER • PURCHASING AGENT

R. J. MAHONEY - SENIOR BUYER

AA- 03259

DATE ___10-11-92___   ISSUED BY    LINDA PINK    DEPT. SPACE & EQUIPMENT    ACCT. NO.    PROJECT NO

ROOM NO. ARGO A 585H

DEPT. APPROVAL                    FINAL APPROVAL

# AMENDMENT

**GENERAL MOTORS ACCEPTANCE CORPORATION**
AND CONSOLIDATED SUBSIDIARIES
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

DATE __11-17-92__
EFFECTIVE DATE __7/1/92__

CANON U.S.A.
100 PARK BLVD.
ITASCA, IL  60143-2693

ATTN: MILT WARD

**FOR GMAC USE—ONLY**

- LOCATION— GMAC ALL
- ITEM ORDERED—FAX B.O.

THIS IS AN AMENDMENT — CHANGE NO. ____4____ TO PURCHASE ORDER NO. A __86610__

AFTER RECORDING CHANGES NOTED BELOW, ATTACH TO AND MAKE A PART OF ORIGINAL
PURCHASE ORDER, INCLUDING ITS TERMS AND CONDITIONS.

## PLEASE MAKE THE FOLLOWING CHANGES

| ITEM | QUANTITY | DESCRIPTION | PRICE |
|------|----------|-------------|-------|
| | | **AMENDMENT**<br><br>AMEND THIS ORDER TO CHANGE EFFECTIVE DATE OF AMENDMENT #3 TO 7/1/92 FROM 10/1/92. | |

REASON FOR AMENDMENT

GENERAL MOTORS ACCEPTANCE CORP.
3044 W. Grand Blvd.
Detroit, MI 48202
Attn: Purchasing Activities
Argo 'A' Bldg., Room 586-H

C. F. EILER - PURCHASING AGENT

R. J. MAHONEY - SENIOR BUYER

## PLEASE RETURN THE ATTACHED ACKNOWLEDGEMENT COPY PROMPTLY

GMAC 456 (REV. 5-89)
PRINTED IN THE U.S.A. 1M 7/92

ORIGINAL

AA- 03312

02/09/95   14:10   ☎708 250 4120          CUSA NA CHICAGO  →→→ NA CONTRACTS          ☑002/002

# AMENDMENT

## GENERAL MOTORS ACCEPTANCE CORPORATION
### AND CONSOLIDATED SUBSIDIARIES
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

DATE ___6/17/93___
EFFECTIVE DATE ___6/1/93___

- CANON U S A, INC.
- 100 PARK BLVD.
- ITASCA, IL  60143
  ATTN: MILT WARD

**FOR GMAC USE—ONLY**

- LOCATION—
- ITEM ORDERED—  BLANKET

THIS IS AN AMENDMENT — CHANGE NO. ___5___ TO PURCHASE ORDER NO. A _86610_

AFTER RECORDING CHANGES NOTED BELOW, ATTACH TO AND MAKE A PART OF ORIGINAL
PURCHASE ORDER, INCLUDING ITS TERMS AND CONDITIONS.

# PLEASE MAKE THE FOLLOWING CHANGES

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| | **AMENDMENT** | |
| | AMEND THIS ORDER TO INCLUDE THE FOLLOWING ITEM: | |
| | LEGAL CASSETTE FOR FACSIMILE MODELS L700, L775, L785, L790, L3300 | $55.00/EA |

RECEIVED
JUN 2 8 1993
NATIONAL ACCOUNTS DEPARTMENT

REASON FOR AMENDMENT

GENERAL MOTORS ACCEPTANCE CORP.
3044 W. Grand Blvd., Detroit, MI 48202
Attn: Purchasing Activities

R. J. MAHONEY - SENIOR BUYER

**_EASE RETURN THE ATTACHED
_GEMENT COPY PROMPTLY**

AA- 0472

# AMENDMENT

## GENERAL MOTORS ACCEPTANCE CORPORATION
### AND CONSOLIDATED SUBSIDIARIES
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

DATE __10/21/93__
EFFECTIVE DATE __10/10/93__

- CANON U S A, INC.
- 100 PARK BLVD.
- ITASCA, IL  60143

ATTN: MILT WARD

**FOR GMAC USE—ONLY**

- LOCATION—

- ITEM ORDERED—  BLANKET ORDE

THIS IS AN AMENDMENT — CHANGE NO. __6__      TO PURCHASE ORDER NO. A __86610__

AFTER RECORDING CHANGES NOTED BELOW, ATTACH TO AND MAKE A PART OF ORIGINAL
PURCHASE ORDER, INCLUDING ITS TERMS AND CONDITIONS.

## PLEASE MAKE THE FOLLOWING CHANGES

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| | # AMENDMENT | |
| | ADD ITEM TO ORDER AS FOLLOWS:<br>ROM CHIP FOR MODEL L700 FACSIMILE MACHINE | $150.00/EA. |

NOV - 1 1993

REASON FOR AMENDMENT

## PLEASE RETURN THE ATTACHED
## ACKNOWLEDGEMENT COPY PROMPTLY

GMAC 456 (REV. 1/93)
PRINTED IN THE U.S.A. 1/93

ORIGINAL

GENERAL MOTORS ACCEPTANCE CORP.
3044 W. Grand Blvd., Detroit, MI 48202
Attn: Purchasing Activities

R. J. MAHONEY - SENIOR BUYER

C. F. EILER - PURCHASING AGENT

AA- 04902

## AMENDMENT

ERAL MOTORS ACCEPTANCE CORPORATION
AND CONSOLIDATED SUBSIDIARIES
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

DATE __12/16/93__
EFFECTIVE DATE __IMMED.__

• CANON U S A, INC.
• 100 PARK BLVD.
• ITASCA, IL 60143
  ATTN: MILT WARD

**FOR GMAC USE—ONLY**

• LOCATION—

• ITEM ORDERED—BLANKET ORDER

THIS IS AN AMENDMENT — CHANGE NO. ___7___ TO PURCHASE ORDER NO. A __86610__

AFTER RECORDING CHANGES NOTED BELOW, ATTACH TO AND MAKE A PART OF ORIGINAL
PURCHASE ORDER, INCLUDING ITS TERMS AND CONDITIONS.

## PLEASE MAKE THE FOLLOWING CHANGES

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| | # AMENDMENT | |
| | TO ADD THE ITEMS LISTED ON THE ATTACHMENT: | |
| | SPECIAL NOTE TO THE "FX1 PLAIN PAPER TONER CARTRIDGE THIS HAS BEEN ADDED TO BRACS - #4099C | |
| | 2 8 1994 | |

REASON FOR AMENDMENT  TO ADD  SUPPLIES

## PLEASE RETURN THE ATTACHED
## ACKNOWLEDGEMENT COPY PROMPTLY

GMAC 456 (REV. 1/93)
PRINTED IN THE U.S.A. 1/93

ORIGINAL

GENERAL MOTORS ACCEPTANCE CORP.
3044 W. Grand Blvd., Detroit, MI 48202
Attn: Purchasing Activities

R. J. MAHONEY - SENIOR BUYER

C. F. EILER - PURCHASING AGENT

AA- 04955

11/04/94    11:59    ☎1 708 250 9744 ▬    NAT ACCT MWR    +++ NA CONTRACTS NI    ☒002/002
11/03/94    13:35    ☎3133470648    MILT WARD    --- NAT ACCT HWR    ☒001

11·02/94    13:56    ☎313 974 4544    GMAC  S&F.    ☒002

# GENERAL MOTORS CONTRACT NEGOTIATING COMMITTEE

November 2, 1994

Canon USA, Inc.
100 Park Blvd.
Itasca, Il  60143-2693
Attn: Mr. Milt Ward,  National Account Manager

Re: GM/Canon Facsimile Contract Number 4023

Mr. Ward:

This will advise that the GM Contract Negotiating Committee will be extending Contract 4023 covering facsimile equipment effective November 1, 1994 through December 31, 1997. In accordance with the negotiated and agreed upon proposals of September 1994.  Canon will be one of the four (4) suppliers participating in the GM Corporate Facsimile standards program during this three year period.

It is the Committee's intent to issue the formal amended contracts within the next week; however, you may consider this letter as your authorization to proceed with the contract.

We thank you for your efforts during the negotiating process

Sincerely,

Charles F. Eiler

/tbk

Please acknowledge and return to my attention at fax #312/974-4544.

Signature: _____    Date: 11/2/94

# AMENDMENT
## GENERAL MOTORS ACCEPTANCE CORPORATION
### AND CONSOLIDATED SUBSIDIARIES
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

DATE _____ 11/23/94
EFFECTIVE DATE ____ 10/18/94

• CANON U S A, INC.
• 100 PARK BLVD.
• ITASCA, IL  60143

ATTN: MILT WARD

**FOR GMAC USE—ONLY**

• LOCATION—

• ITEM ORDERED—
  blanket order

THIS IS AN AMENDMENT — CHANGE NO. ___9___ TO PURCHASE ORDER NO. A __86610__

AFTER RECORDING CHANGES NOTED BELOW, ATTACH TO AND MAKE A PART OF ORIGINAL
PURCHASE ORDER, INCLUDING ITS TERMS AND CONDITIONS.

# PLEASE MAKE THE FOLLOWING CHANGES

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| | # AMENDMENT<br><br>amend this order to extend the expiration date to December 31, 1997 and to add new pricing and models per the attached specification: | |

REASON FOR AMENDMENT

GENERAL MOTORS ACCEPTANCE CORP.
3044 W. Grand Blvd., Detroit, MI 48202
Attn: Purchasing Activities

R. J. MARONEY - SENIOR BUYER

C. F. EILER - PURCHASING AGENT

AA- 05379

# PLEASE RETURN THE ATTACHED
# ACKNOWLEDGEMENT COPY PROMPTLY

GMAC 456 (REV. 1/93)
PRINTED IN THE U.S.A. 1/93

ORIGINAL

# AMENDMENT

## GENERAL MOTORS ACCEPTANCE CORPORATION
### AND CONSOLIDATED SUBSIDIARIES
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

DATE ___3/20/95___
EFFECTIVE DATE ___3/1/95___

CANON U S A, INC.
100 PARK BLVD.
ITASCA, IL 60143

ATTN: MILT WARD

**FOR GMAC USE—ONLY**

• LOCATION—

• ITEM ORDERED—

THIS IS AN AMENDMENT — CHANGE NO. ___9___ TO PURCHASE ORDER NO. A ___86610___

*3-24-95*
*10 CFE*

AFTER RECORDING CHANGES NOTED BELOW, ATTACH TO AND MAKE A PART OF ORIGINAL
PURCHASE ORDER, INCLUDING ITS TERMS AND CONDITIONS.

## PLEASE MAKE THE FOLLOWING CHANGES

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| | # AMENDMENT | |
| | AMEND THIS ORDER TO REFLECT THE CHANGES IN TERMS AND PRICING STRUCTURE AS PER THE ATTACHED CONTRACT 4023: | |
| | CANON U.S.A., INC. ("CANON USA") HEREBY ACKNOWLEDGES RECEIPT OF YOUR PURCHASE ORDER. THIS ORDER IS BEING ACCEPTED SUBJECT TO THE TERMS AND CONDITIONS OF YOUR MASTER AGREEMENT WITH CANON USA. *3/2?/95* AUTHORIZED CANON U.S.A., INC. SIGNATORY / DATE | |

REASON FOR AMENDMENT

## PLEASE RETURN THE ATTACHED
## ACKNOWLEDGEMENT COPY PROMPTLY

GMAC 456 (REV. 1/93)
PRINTED IN THE U.S.A. 1/93

ORIGINAL

GENERAL MOTORS ACCEPTANCE CORP.
3044 W. Grand Blvd., Detroit, MI 48202
Attn: Purchasing Activities

R. J. MAHONEY - SENIOR BUYER
*C.F.E.Uer*
C. F. EILER - PURCHASING AGENT

AA- 05534

CANON U.S.A., INC. ("CANON USA") HEREBY
ACKNOWLEDGES RECEIPT OF YOUR PURCHASE ORDER.
THIS ORDER IS BEING ACCEPTED SUBJECT TO THE
TERMS AND CONDITIONS OF YOUR MASTER AGREEMENT
WITH CANON USA.

AUTHORIZED CANON U.S.A., INC. SIGNATORY    DATE

**GENERAL MOTORS ACCEPTANCE CORPORATION**
**AND ITS CONSOLIDATED SUBSIDIARIES**
MC 482-103-101
3044 WEST GRAND BLVD.
DETROIT, MI 48202
**(313) 556-9348 • (313) 974-4544 FAX**

| P.O. NUMBER | | AMENDMENT CHANGE NUMBER |
|---|---|---|
| RELEASE NUMBER | DATE | PAGE |
| 0006 | 05/01/ | |

057661

VENDOR:  MILT WARD

CANON USA, INC.
ATTN:  MILT WARD
100 PARK BLVD.
ITASCA     IL    60143

SHIP INSIDE DELIVERY TO:

*** SEE BELOW ***

| TERMS | F.O.B. | SHIP VIA | DELIVERY DATE |
|---|---|---|---|
| 25TH PROX. | SHIPPING POINT | BEST WAY-PREPAID | 05/01/ |

☐ AN AUTHORIZATION TO PRINT    ☐ TO BE HELD FOR SHIPPING INSTRUCTIONS    ☐ A RELEASE OF MATERIAL
☐ AN INSTRUCTION AS NOTED BELOW    ☐ A RELEASE OF EQUIPMENT    ☐ CONFIRMING ORDER

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| 1 LOT | AMEND #11 TO ADD THE FOLLOWING ITEM: | |
| | MODEL L4000 FACSIMILE MACHINE @ $1092.00/EA | |
| | FX-3 TONER CARTRIDGE @ $66.00/EA | |

R.H. KING

**INVOICE IN DUPLICATE TO:**

GENERAL MOTORS ACCEPT. CORP.
ACCOUNTS PAY/CASH CONTROL
ANX 108, MAIL CODE 482-101-108
3044 WEST GRAND BOULEVARD
DETROIT     MI    48202

| GENERAL MOTORS ACCEPTANCE CORP. |
|---|
| MC 482-103-101 |
| 3044 West Grand Blvd. |
| Detroit, MI 48202 |
| Att: Purchasing Activities |
| PURCHASING AUTHORITY |

**Purchase Order Number and Release Number Must Appear on
All Invoices, Packaging Slips, and Transportation Bills.**

GMAC 457 (Rev. 4/90)
PRINTED IN U.S.A.

VENDOR

## PURCHASE ORDER TERMS AND CONDITIONS

MAY, 1986

**GENERAL MOTORS ACCEPTANCE CORPORATION**
**AND ITS CONSOLIDATED SUBSIDIARIES**
MC 482-103-101
3044 WEST GRAND BLVD.
DETROIT, MI 48202
**(313) 556-9348 • (313) 974-4544 FAX**

BLANKET RELEASE

| P.O. NUMBER | AMENDMENT CHANGE NUMBER | |
|---|---|---|
| A 86610 | | |
| RELEASE NUMBER | DATE | PAGE |
| 0008 | 05/08/97 | 1 |

VENDOR: MILT WARD

CANON USA, INC.
ATTN: MILT WARD
100 PARK BLVD.
ITASCA        IL    60143

SHIP INSIDE DELIVERY TO:

*** SEE BELOW ***

047412

| TERMS | F.O.B. | SHIP VIA | DELIVERY DATE |
|---|---|---|---|
| 25TH PROX. | SHIPPING POINT | BEST WAY-PREPAID | 05/08/97 |

☐ AN AUTHORIZATION TO PRINT        ☐ TO BE HELD FOR SHIPPING INSTRUCTIONS    ☐ A RELEASE OF MATERIAL
☐ AN INSTRUCTION AS NOTED BELOW    ☐ A RELEASE OF EQUIPMENT    ☐ CONFIRMING ORDER

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| 1 S<br>EA | AMEND #12 TO CHANGE THE PRICE OF THE FX-2 TONER CARTRIDGES<br>TO $66.00/EA EFFECTIVE IMMEDIATELY. | |

CONFIRMING ORDER

R.H. KING

INVOICE IN DUPLICATE TO:

GENERAL MOTORS ACCEPT. CORP.
ACCOUNTS PAY/CASH CONTROL
ANX 108, MAIL CODE 482-101-108
3044 WEST GRAND BOULEVARD
DETROIT        MI    48202

Purchase Order Number and Release Number Must Appear on
All Invoices, Packaging Slips, and Transportation Bills.

GENERAL MOTORS ACCEPTANCE CORP.
MC 482-103-101
3044 West Grand Blvd.
Detroit, MI 48202
Att: Purchasing Activities

_____
PURCHASING AUTHORITY

GMACA57 (Rev. 4/96)
PRINTED IN U.S.A.

VENDOR

## PURCHASE ORDER TERMS AND CONDITIONS

**1. ACCEPTANCE:** Seller has read and understands this order and agrees that Seller's written acceptance or commencement of any work or service under this order shall constitute Seller's acceptance of these terms and conditions only. All terms and conditions proposed by Seller which are different from or in addition to this order are unacceptable to Buyer, are expressly rejected by Buyer, and shall not become a part of this order. Any modifications to this order shall be made in accordance with Paragraph 31.

**2. SHIPPING, BILLING AND FLAG CERTIFICATION:** Seller agrees: (a) to properly pack, mark, and ship goods in accordance with the requirements of Buyer and involved carriers in a manner to secure lowest transportation cost; (b) to route shipments in accordance with instructions from Buyer's Traffic Department...

**3. DELIVERY SCHEDULES:** Deliveries shall be made both on quantities and at times specified on Buyer's schedules...

**4. PREMIUM SHIPMENTS:** If Seller's acts or omissions result in Seller's failure to meet Buyer's delivery requirements and Buyer requires a more expeditious method of transportation...

**5. CHANGES:** Buyer reserves the right at any time to direct changes, or cause Seller to make changes...

**6. INSPECTION:** Seller agrees that Buyer shall have the right to enter Seller's facility at reasonable times to inspect the facility, goods, materials and any property of Buyer covered by this order...

**7. NONCONFORMING GOODS:** To the extent Buyer rejects goods as nonconforming, the quantities under this order will automatically be reduced unless Buyer otherwise notifies Seller...

**8. FORCE MAJEURE:** Any delay or failure of either party to perform its obligations hereunder shall be excused if, and to the extent that it is caused by an event or occurrence beyond the reasonable control of the party...

**9. WARRANTY:** Seller expressly warrants that all goods or services covered by this order will conform to the specifications, drawings, samples, or descriptions furnished to or by Buyer...

**10. INGREDIENTS DISCLOSURE AND SPECIAL WARNINGS AND INSTRUCTIONS:** If requested by Buyer, Seller shall promptly furnish to Buyer in such form and detail as Buyer may direct...

**11. INSOLVENCY:** Buyer may immediately cancel this order without liability to Seller in the event of the happening of any of the following or any other comparable event...

**12. CANCELLATION FOR BREACH:** Buyer reserves the right to cancel all or any part of this order, without liability to Seller...

**13. TERMINATION:** In addition to any other rights of Buyer to cancel or terminate this order, Buyer may at its option immediately terminate all or any part of this order, at any time and for any reason...

**14. INTELLECTUAL PROPERTY:** Seller agrees: (a) to defend, hold harmless and indemnify Buyer, its successors and customers against all claims, demands, losses, suits, damages, liability and expenses...

**15. TECHNICAL INFORMATION DISCLOSED TO BUYER:** Seller agrees not to assert any claim (other than a claim for patent infringement) with respect to any technical information which Seller shall have disclosed...

**16. INDEMNIFICATION:** If Seller performs any work on Buyer's premises or utilizes the property of Buyer, whether on or off Buyer's premises, Seller shall indemnify and hold Buyer harmless from and against any liability, claims, demands or expenses...

**17. INSURANCE:** Seller shall maintain insurance coverage in amounts not less than the following: (a) Workers' Compensation — Statutory Limits for the state or states in which this order is to be performed...

**18. TOOLS:** Unless otherwise agreed to by Buyer, Seller at its own expense shall furnish, keep in good condition, and replace when necessary all tools, jigs, dies, gauges, fixtures, molds and patterns ("Tools")...

**19. MATERIAL:** Unless otherwise agreed to in writing by Buyer...

**20. BAILED PROPERTY:** All supplies, materials, tools, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items furnished by Buyer, either directly or indirectly, to Seller to perform this order...

**21. REMEDIES:** The rights and remedies reserved to Buyer in this order shall be cumulative, and additional to all other or further remedies provided in law or equity.

**22. BUYER'S DRAWBACK RIGHTS:** This order entitles all related customs duty and import drawback rights, if any...

**23. SETOFF:** In addition to any right of setoff provided by law, all amounts due Seller shall be considered net of indebtedness of Seller to General Motors Corporation and its subsidiaries...

**24. ADVERTISING:** Seller shall not, without first obtaining the written consent of Buyer, in any manner advertise or publish the fact that Seller has contracted to furnish Buyer the goods or services herein ordered...

**25. GOVERNMENT COMPLIANCE:** Seller agrees to comply with all federal, state and local laws, executive orders, rules, regulations and ordinances...

**26. EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION:** This order incorporates by reference: (a) all provisions of 41 C.F.R. 60-1.4, as amended, pertaining to the equal opportunity clause in government contracts...

**27. NO ADDITIONAL TERMS:** This order constitutes the entire agreement between the parties...

**28. NO IMPLIED WAIVER:** The failure of either party at any time to require performance by the other party of any provision of this order shall in no way affect the right to require such performance...

**29. RELATIONSHIP OF PARTIES:** Seller and Buyer are independent contracting parties and nothing in this order shall make either party the agent or legal representative of the other for any purpose whatsoever...

**30. GOVERNING LAW:** This order is to be construed according to the laws of the state from which this order issues as shown by the address of Buyer on the face side of this order.

**31. SEVERABILITY:** If any term of this order is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term shall be deemed reformed or deleted...

**31. ENTIRE AGREEMENT:** This order, together with the attachments, exhibits, or supplements, specifically referenced in this order, constitutes the entire agreement between Seller and Buyer...

MAY, 1986

**GENERAL MOTORS ACCEPTANCE CORPORATION**
AND ITS CONSOLIDATED SUBSIDIARIES
MC 482-103-101
3044 WEST GRAND BLVD.
DETROIT, MI 48202
(313) 556-9348 • (313) 974-4544 FAX

BLANKET RELEASE

| P.O. NUMBER | | AMENDMENT CHANGE NUMBER |
|---|---|---|
| A 06000 | | |

| RELEASE NUMBER | DATE | PAGE |
|---|---|---|
| 0011 | 11/12/97 | 1 |

VENDOR: MILT WARD

CANON USA, INC.
ATTN: MILT WARD
100 PARK BLVD.
ITASCA    IL    60143

SHIP INSIDE DELIVERY TO:

\*\*\* SEE BELOW \*\*\*

060909

| TERMS | F.O.B. | SHIP VIA | DELIVERY DATE |
|---|---|---|---|
| 2% 30 PROX. | SHIPPING POINT | BEST WAY--PREPAID | 11/12/97 |

☐ AN AUTHORIZATION TO PRINT    ☐ TO BE HELD FOR SHIPPING INSTRUCTIONS    ☐ A RELEASE OF MATERIAL
☐ AN INSTRUCTION AS NOTED BELOW    ☐ A RELEASE OF EQUIPMENT    ☐ CONFIRMING ORDER

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| 1 LOT | AMEND #13 TO ADD: | |
| | MODEL LC8507 @ $1349.00/EA | |
| | FX-4 TONER CARTRIDGE @ $68.00/EA | |
| | | R.H. KING |

INVOICE IN DUPLICATE TO:

GENERAL MOTORS ACCEPT. CORP.
ACCOUNTS PAY/CASH CONTROL
ANX 300. MAIL CODE 482-1X3-LGO
3044 WEST GRAND BOULEVARD
DETROIT    MI    48202

Purchase Order Number and Release Number Must Appear on
All Invoices, Packaging Slips, and Transportation Bills.

| GENERAL MOTORS ACCEPTANCE CORP. |
|---|
| MC 482-103-101 |
| 3044 West Grand Blvd. |
| Detroit, MI 48202 |
| Att: Purchasing Activities |
| PURCHASING AUTHORITY |

GMAC 457 (Rev. 4/97)
PRINTED IN U.S.A.

VENDOR

## PURCHASE ORDER TERMS AND CONDITIONS

**MAY, 1986**

# PURCHASE ORDER

**GENERAL MOTORS ACCEPTANCE CORPORATION**
AND CONSOLIDATED SUBSIDIARIES
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

Purchase Order No. A-  **86610**   Date  12/10/91

- CANON USA, INC.
- 100 PARK BLVD.
- ITASCA, IL  60143-2693

ATTN: MILT WARD
708/250-6262 (XT. 7760 FOR VOICE MAIL)

PURCHASE ORDER NUMBER AND RELEASE NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS AND TRANSPORTATION BILLS.

**SHIP** INSIDE DELIVERY TO

☐ GENERAL MOTORS ACCEPTANCE CORPORATION THRU G.M. BLDG.-SHIPPING & RECEIVING DEPT. USE ENTRANCE ON SECOND AVE.-BETWEEN WEST GRAND BLVD. & WEST MILWAUKEE AVE. DETROIT, MI 48202

ATTN:                    ANNEX

NOTE:
MAXIMUM TRUCK CLEARANCE IS 11'0"

SHIP INSIDE DELIVERY TO:

☐ GENERAL MOTORS ACCEPTANCE CORP.
☐ GMAC LEASING CORPORATION
☐ MOTORS INSURANCE CORP.
☐ GMAC MORTGAGE CORP.

SEE BELOW

**INVOICE** IN TRIPLICATE TO

☐ DELIVERY LOCATION

☐ GENERAL MOTORS ACCEPTANCE CORPORATION ACCOUNTING DEPT.-ANNEX 106 3044 WEST GRAND BLVD. DETROIT, MI 48202

☐ MOTORS INSURANCE CORP. TREASURERS DEPT.-ANNEX 75 3044 W. GRAND BLVD. DETROIT, MI 48202

☐ GMAC MORTGAGE CORP. CORP. ACCOUNTING 8360 OLD YORK ROAD ELKINS PARK, PA 19117

☐

**\*\*SEE PAGE 2**

| TERMS | F.O.B. INSIDE DELIVERY | SHIP VIA | DELIVERY DATE | CODE NO. |
|---|---|---|---|---|
| NET 10TH & 25TH PROX. | DESTINATION | BEST WAY   PREPAID | AS RELEASED | |

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| | BLANKET ORDER FOR THE PERIOD 12/1/91 THROUGH 11/30/94 MEETING THE REQUIREMENTS OF GMAC AND ITS CONSOLIDATED SUBSIDIARIES COVERING FACSIMILE EQUIPMENT IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE ATTACHED GM/CANON CONTRACT 4023:<br><br>ALL MATERIAL AND/OR SERVICES ARE TO BE RELEASED ON FORM GME-457 GMAC AND APPROVED BY ONE OF THE FOLLOWING AUTHORIZED AGENTS:  J. J. MUSSELMAN, J. L. TODD, G. M. STETZ, J. G. AVENIUS, K. E. HARRIS, R. H. KING, L. E. PINK, S. LISTH, K. McDONOUGH, R. O'DONNELL, J. HEALY, M. DUGAN, R. FRATZKE, OR M. VOLKENS.<br><br>ALL VERBAL INSTRUCTIONS OR CHANGES ARE TO BE CONFIRMED IN WRITING.<br><br>THIS ORDER MAY BE CANCELLED BY EITHER PARTY UPON RECEIPT OF 30 DAY WRITTEN NOTICE.<br><br>THIS ORDER SUPERSEDES P. O. #85094 DATED 12/90. | |

RECEIVED
FEB 28 1992
NATIONAL ACCOUNTS DEPARTMENT

**SEE TERMS AND CONDITIONS ON REVERSE SIDE OF ORDER**

This order is not binding until accepted. Acceptance must be executed on acknowledgement copy which should be returned to Buyer.

On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order.

This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon Buyer unless made in writing and signed by Buyer's authorized representative.

GMAC (REV. 8/91)
PRINTED IN U.S.A. 1M 8/91

GENERAL MOTORS ACCEPTANCE CORP.
3044 W. Grand Blvd.
Detroit, MI 48202
Attn: Purchasing Activities
Argo 'A' Bldg., Room 595-H

C. F. Eiler

C. F. EILER - PURCHASING AGENT

R. J. MAHONEY - SENIOR BUYER

REQ. No. 05943

ORIGINAL

# PURCHASE ORDER TERMS AND CONDITIONS

**1. ACCEPTANCE:** Seller has read and understands this order and agrees that Seller's written acceptance of commencement of any work or issuance on this order shall constitute Seller's acceptance of these terms and conditions only. All terms and conditions proposed by Seller which are different from or in addition to this order are unacceptable to Buyer, are expressly rejected by Buyer, and shall not become a part of this order. Any modifications to this order must be made in accordance with Paragraph 32.

**2. SHIPPING, BILLING AND FLEA CERTIFICATION:** Seller agrees, (a) to properly pack, mark and ship goods in accordance with the requirements of Buyer and involved carriers in a manner to secure lowest transportation cost; (b) to route shipments in accordance with instructions from Buyer's Traffic Department; (c) to make no charge for handling, packaging, storage, transportation or drayage of goods unless otherwise stated in this order; (d) to provide with each shipment packing slips with Buyer's order number marked thereon; (e) to properly mark each package with the order number, Buyer's full factory, plant and dock number, and where shipment is made by parcel post, to insure same; (f) to promptly forward the original bill of lading or other shipping document for each shipment; (g) to consistently number each package, and (h) to promptly invoice the original bill of lading or other shipping document for each shipment, in accordance with Buyer's instructions. Seller will invoice on Buyer's shipping security correct consistent specification of the goods shipped, in accordance with Buyer's instructions and carrier's requirements. The marks on each package and identification of the goods on packing slips, bills of lading and invoices shall be sufficient to enable Buyer to easily identify the goods purchased. Seller further agrees (i) to promptly render delivery of goods or performance of services, correct and complete invoices to Buyer, and (ii) to accept payment by check on, at Buyer's election, other cash equivalent (including electronic transfer of funds). Seller's invoice must include a line/citation that all goods sent, accepted in compliance with the applicable requirements of sections 6, 7, and 12 of the Fair Labor Standards Act, as amended, and all regulations and orders of the United States Department of Labor issued under or pursuant thereto. The payment date as set forth on the face side of this order, or if not stated, shall be on the 30th day of the month following Buyer's receipt of a proper invoice (except as may otherwise be agreed upon by Buyer and Seller in connection with a program presented by any terms of cash discount). Time for payment shall not begin until correct and complete amounts are received, and Seller's cash discount privileges to Buyer shall be extended until such time as Buyer is able to satisfy them prior to when such shipment provide a period of tolerance, as such, face must satisfies Buyer may detect, of the absence of any term and all returns and count on the goods on which order terms from.

**3. DELIVERY SCHEDULES:** Deliveries shall be made both in quantities and at times specified in Buyer's schedules. Buyer at all will be required to make payment for goods delivered to Buyer which are in excess of quantities specified in Buyer's schedules. Buyer may change the time for quantities of scheduled shipments or direct temporary suspension of scheduled shipments, neither of which shall entitle Seller to a modification of the price for goods or services required by this order. For orders of goods where quantities and/or delivery schedules are not specified. Seller shall deliver goods in such quantities and times as Buyer may direct in subsequent releases.

**4. PREMIUM SHIPMENTS:** If Seller's acts or omissions result in Seller's failure to meet Buyer's delivery requirements and Buyer requires a more expeditious method of transportation for the goods than that contemplated in normal originally specified by Buyer, Seller shall, at Buyer's option, (i) promptly reimburse Buyer the difference in cost between the more expeditious method and the original method, (ii) allow Buyer to deduct such difference from Seller's invoice by authorization, or (iii) ship the goods as expeditiously as possible at Buyer's expense and invoice Buyer for the amount which Buyer would have paid for normal shipment.

**5. CHANGES:** Buyer reserves the right at any time to direct changes, or cause Seller to make changes, to drawings and specifications of the goods or to otherwise change the scope of the work covered by this order, including new work subject to such extent as impracticable, relating to quality control and Seller agrees to promptly make such changes. Any difference in price or time for performance resulting from such changes shall be equitably adjusted by Buyer after receipt of documentation in such form and detail as Buyer may direct, and agrees to the order shall be made in accordance with paragraph 33.

**6. INSPECTION:** Seller agrees Buyer shall have the right to enter Seller's facility at reasonable times to inspect the facility, goods, materials and any property of Buyer covered by this order. Buyer's inspection of the goods, whether during manufacture, prior to delivery or within a reasonable time after delivery, shall not constitute acceptance of any work shipments on finished goods.

**7. NONCONFORMING GOODS:** In the event Buyer rejects goods as nonconforming, the provisions under this order will automatically be void and unless Buyer otherwise notifies Seller, Seller will not replace quantities so rejected without a new order or schedule from Buyer. Nonconforming goods will be held by Buyer for disposition in accordance with Seller's instructions or Seller's risk. Seller's failure to provide written instructions within ten (10) days, or such shorter period as may be reasonable under the circumstances, after notification of rejection and the right to return good, without liability to Seller. Payment for nonconforming goods shall not constitute an acceptance of such goods, nor shall it impair Buyer's right to inspect or any right or remedy to which Buyer may be entitled, notwithstanding any subsequent payment, delivery, acceptance or inspection.

**8. FORCE MAJEURE:** Any delay or failure of either party to perform its obligations hereunder shall be excused if, and to the extent that it is caused by an event or occurrence beyond the reasonable control of the party and without its fault or negligence, such as, by way of example and not by way of limitation, acts of God, actions by any government, fire, flood, windstorm, explosion, riot, natural disasters, wars, sabotage; provided, however, prompt notice of such delay (including the anticipated duration of the delay) is given by the party so affected to the other party within ten (10) days. During the period of such delay or failure to perform by Seller, Buyer, at its option, may purchase goods from other sources and reduce its schedules to Seller by such quantities, without liability to Buyer, or have Seller provide the goods from other sources in quantities and at times requested by Buyer and at the prices set forth in this order. If requested by Buyer, Seller shall, within ten (10) days of such request promptly provide in writing the reason for such delay. If the delay or failure to perform by Seller extends for a period of more than thirty (30) days from date of notice, Buyer shall have the right to terminate the order by written notice to Seller without any further obligations to Seller other than for goods previously delivered or services rendered.

**9. WARRANTY:** Seller expressly warrants that all goods or services covered by this order will conform to the specifications, drawings, samples or other descriptions furnished to or by Buyer and will be merchantable, of good material and workmanship and be free from defect. In addition, Seller acknowledges that Buyer knows of Seller's intended use and expressly warrants that all goods covered by this order which have been selected, designed, manufactured, or assembled by Seller, based upon Buyer's stated use, will be fit and suitable for all particular purposes intended by Buyer.

**10. INGREDIENTS DISCLOSURE AND SPECIAL WARNINGS AND INSTRUCTIONS:** If requested by Buyer, Seller shall promptly furnish to Buyer in such form and detail as Buyer may direct: (a) a list of all ingredients in the goods purchased hereunder, (b) the amount of one or more ingredients, and (c) information concerning any changes in or additions to such ingredients. Prior to and with the shipment of the goods purchased hereunder, Seller agrees to furnish to Buyer sufficient warning and notice in writing (including appropriate labels on goods, containers and packaging) of any hazardous material or substance which is an ingredient or a part of any of the goods, together with such special handling instructions as may be necessary to advise carriers, Buyer, and their respective employees of how to exercise that measure of care and caution which will best prevent bodily injury or property damage in the handling, transportation, processing, use or disposition of the goods.

**11. INSOLVENCY:** Buyer may immediately terminate this order without liability to Seller in the event of the happening of any of the following or any similar comparable event: (a) insolvency of the Seller; (b) filing of a voluntary petition in bankruptcy by Seller; (c) filing of an involuntary petition in bankruptcy against Seller; (d) appointment of a receiver or trustee for Seller; or (e) execution of an assignment for the benefit of creditors by Seller, provided that such petition, appointment or assignment is not vacated or nullified within fifteen (15) days of such event.

**12. CANCELLATION FOR DEFAULT:** Buyer reserves the right to cancel all or any part of this order, without liability to Seller, if Seller (a) repudiates or breaches any of the terms of this order, including Seller's warranties; (b) fails to perform services or deliver goods as specified by Buyer; or (c) fails to make progress so as to endanger timely and proper completion of services or delivery of goods and does not correct such failure or breach within ten (10) days (or such shorter period of time if commercially reasonable under the circumstances) after receipt of written notice from Buyer specifying such failure or breach.

**13. TERMINATION:** [illegible]

**14. INTELLECTUAL PROPERTY:** Seller agrees (a) to defend, hold harmless and indemnify Buyer, its successors and customers against all claims, demands, losses, suits, damages, liability and expenses (including reasonable attorney fees) arising out of or arising in connection with any alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark, copyright or mask work right by reason of the manufacture, use or sale of the goods or services ordered, including infringement arising out of compliance with specifications furnished by Buyer, or for alleged or actual unauthorized use or disclosure or any trade secret whether directly or indirectly from Seller's actions, including any trade secret known to or used by Seller; and (b) to waive any related claims against Buyer. Seller shall not acquire any right or title in or to any patent, trademark, copyright or mask work right in connection with such compliance with specifications furnished by Buyer, and (c) to grant to Buyer a nonexclusive, fully irrevocable license to make any goods or services called for under this order and to pay all license fees. Seller agrees to Buyer's right to any and all [illegible] so long as such actions are at Buyer's election and shall remain with the exclusive property of Buyer all such elements, copyrights and mask work rights in any materials created for Buyer under this order.

**15. TECHNICAL INFORMATION DISCLOSED TO BUYER:** Seller agrees not to assert any claim (other than a claim for patent infringement) with respect to any technical information which Seller has disclosed or may hereafter disclose to Buyer in connection with the goods or services covered by this order.

**16. INDEMNIFICATION:** If Seller performs any work on Buyer's premises or those of its customers with the use of property of Buyer, whether on or off Buyer's premises, Seller shall indemnify and hold Buyer harmless from any and all liability, claims, demands or expenses (including reasonable attorney fees) for damages to the property of or injuries (including death) to Buyer, its employees or any other persons arising from or in connection with Seller's performance of work or use of Buyer's property, except for such liability, claim, or demand arising out of the sole negligence of Buyer.

**17. INSURANCE:** Seller shall maintain insurance coverage in amounts not less than the following: (a) Workers' Compensation — Statutory Limits for the state of [illegible] to which order is to be performed and/or the state in which the work is to be performed; (b) Employer's Liability — $250,000; (c) Comprehensive General Liability (including Products/Completed Operations and Blanket Contractual Liability) — $1,000,000 per person, $2,000,000 per occurrence Personal Injury and $1,000,000 per occurrence Property Damage, or $1,000,000 per occurrence combined single limit; and (d) Automobile Liability (including owned, non-owned and hired vehicles) — $1,000,000 per person, $2,000,000 per occurrence Personal Injury and $1,000,000 per occurrence Property Damage, or $1,000,000 per occurrence combined single limit. If required by Buyer, Seller shall furnish to Buyer certificates of insurance setting forth the amount(s) of coverage, policy number(s) and dates of expiration for insurance naming Buyer as an additional insured. Such certificates will provide that Buyer shall receive thirty (30) days' prior written notification from the insurer of any termination or reduction in the amount or scope of coverage. Seller's purchase of appropriate insurance coverage or the furnishing of certificates of insurance shall not relieve Seller of its obligations or liabilities hereunder. In the event of Seller's breach of this provision, Buyer shall have the right to cancel the undelivered portion of any goods or services covered by this order and shall not be required to make further payments to conforming goods delivered or services rendered prior to conforming goods.

**18. TOOLS:** Unless otherwise agreed to by Buyer, Seller at its own expense shall furnish, set up, keep in good condition and maintain all tools, jigs, dies, gauges, fixtures, molds and patterns ("Tools") necessary for the production of the goods. The cost of changes to the Tools necessary to make design and specification changes authorized by Buyer shall be paid for by Buyer. Seller shall insure the Tools with the list and complete coverage insurance for the replacement value thereof. Seller grants Buyer an irrevocable option to take possession of and title to the Tools that are specially for the production of the goods upon payment to Seller of the [illegible] value thereof less a reasonable allowance for depreciation; provided that no such option shall apply if the Tools are or were to a substantial portion of the cost of such Tools, in which event Buyer shall retain title to such Tools and have the right to take possession [illegible].

**19. BAILED PROPERTY:** All supplies, materials, tools, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items furnished by Buyer, either directly or indirectly, to Seller to perform this order or for which Seller has been reimbursed by Buyer, shall be and remain the property of Buyer, subject to removal at Buyer's request at which time Seller shall prepare all such items for shipment and redeliver to Buyer in the same condition as originally received by Seller, reasonable wear and tear excepted, all at Seller's expense. While in Seller's possession or control, all such bailed property shall be held at Seller's risk and shall be kept insured by Seller, at Seller's expense, in an amount equal to the replacement cost with loss payable to Buyer. Such bailed property shall at all times be clearly identified as property of Buyer and shall not be commingled with the property of Seller nor subordinated to any security interest. Notwithstanding any other provision of this order, Seller assumes all risk and liability loss or destruction of or damage to such bailed property while it is in Seller's possession or control. Buyer shall not be responsible to Seller for any loss or damage to such property.

**20. REMEDIES:** The rights and remedies reserved to Buyer in this order shall be cumulative, and additional to all other or further remedies provided in law or equity.

**21. DUTY DRAWBACK RIGHTS:** This order includes all related customs duty and import drawback rights, if any, (including rights developed by substitution and rights which may be acquired from Seller's suppliers) which Seller can transfer to Buyer. Seller agrees to inform Buyer of the existence of any such rights and upon request to supply such documents as may be required to obtain such drawback.

**22. SETOFF:** In addition to any right of setoff provided by law, all amounts due Seller shall be considered net of indebtedness of Seller to General Motors Corporation or any of its subsidiaries, and General Motors Corporation may deduct any amounts due or to become due from Seller to General Motors Corporation or its subsidiaries from any sums due or to become due from Seller to General Motors Corporation.

**23. ADVERTISING:** Seller shall not, without first obtaining the written consent of Buyer, in any manner advertise or publish the fact that Seller has contracted to furnish Buyer the goods or services herein ordered, or use any trademarks or trade names of Buyer in Seller's advertising or promotional materials. In the event of Seller's breach of this provision, Buyer shall have the right to cancel the undelivered portion of any goods or services covered by this order and shall not be required to make further payments except for conforming goods delivered or services rendered prior to cancellation.

**24. GOVERNMENT COMPLIANCE:** Seller agrees to comply with all federal, state and local laws, executive orders, rules, regulations and ordinances which may be applicable to Seller's performance of its obligations under this order.

**25. EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION:** This order incorporates by reference: (a) all provisions of 41 C.F.R. 60-1.4, as amended, pertaining to equal opportunity clause in government contracts; (b) all provisions of 41 C.F.R. 60-250, as amended, pertaining to affirmative action for disabled veterans of the Vietnam Era; and (c) all provisions of 41 C.F.R. 60-741, as amended, pertaining to affirmative action for handicapped workers. Seller certifies that it is in compliance with all applicable provisions of 41 C.F.R. 60-1, including, but not limited to: (a) developing and presently maintaining a full force and effect a written affirmative action compliance program for each of its establishments as required by 41 C.F.R. 60-1.40, as amended; (b) filing EEO-1 Reports as required by 41 C.F.R. 60-1.7, as amended; and (c) neither maintaining segregated facilities nor permitting its employees to perform services in segregated facilities as prohibited by 41 C.F.R. 60-1.8, as amended. Buyer requests this order adopt and implement a policy to extend employment opportunities to qualified applicants and employees on an equal basis regardless of an individual's age, race, color, sex, religion or national origin.

**26. NO IMPLIED WAIVER:** The failure of either party at any time to require performance by the other party of any provision of this order shall in no way affect the right to require performance at any time thereafter, nor shall the waiver of either party of any breach of any provision of this order constitute a waiver of any succeeding breach of the same or any other provision.

**27. NON-ASSIGNMENT:** Seller may not assign or delegate its obligations under this order without Buyer's prior written consent.

**28. RELATIONSHIP OF PARTIES:** Seller and Buyer are independent contracting parties and nothing in this order shall make either party the agent or legal representative of the other for any purpose whatsoever, nor grant either party any authority to assume or to create any obligation on behalf of or in the name of the other.

**29. GOVERNING LAW:** This order is to be construed according to the laws of the state from which this order is issued as shown by the address of Buyer on the face side of this order.

**30. SEVERABILITY:** If any term of this order is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term shall be deemed reformed or deleted, but only to the extent necessary to comply with such statute, regulation, ordinance, executive order or rule, and the remaining provisions of this order shall remain in full force and effect.

**31. ENTIRE AGREEMENT:** This order, together with the attachments, exhibits, or supplements specifically referenced in this order, constitutes the entire agreement between Seller and Buyer with respect to the matter contained herein and supersedes all prior oral or written representations and agreements. This order may only be modified by a purchase order amendment issued and signed by Buyer.

MAY, 1986

# PURCHASE ORDER

**GENERAL MOTORS ACCEPTANCE CORPORATION**
AND CONSOLIDATED SUBSIDIARIES
3044 WEST GRAND BOULEVARD
DETROIT, MI 48202

- CANON USA, INC.
- 100 PARK BLVD.
- ITASCA, IL  60143-2693

ATTN: MILT WARD
708/250-6262 (XT. 7760 FOR QUICK MAIL)

PURCHASE ORDER NUMBER AND RELEASE NUMBER MUST APPEAR ON ALL
INVOICES, PACKING SLIPS AND TRANSPORTATION BILLS.

| Purchase Order No. A- | 86610 | Date 12/10/91 |
|---|---|---|

**SHIP INSIDE DELIVERY TO**
☐ GENERAL MOTORS ACCEPTANCE CORPORATION
THRD G.M. BLDG.-SHIPPING & RECEIVING DEPT.
USE ENTRANCE ON SECOND AVE. BETWEEN
WEST GRAND BLVD. & WEST MILWAUKEE AVE.
DETROIT, MI 48202
ATTN: _____ ANNEX

NOTE:
MAXIMUM TRUCK CLEARANCE IS 13'0"

SHIP INSIDE DELIVERY TO:
☐ GENERAL MOTORS ACCEPTANCE CORP.
☐ GMAC LEASING CORPORATION
☐ MOTORS INSURANCE CORP.
☐ GMAC MORTGAGE CORP.

SEE BELOW

**INVOICE IN TRIPLICATE TO**
☐ DELIVERY LOCATION
☐ GENERAL MOTORS ACCEPTANCE CORPORATION ACCOUNTING DEPT.-ANNEX 708
3044 WEST GRAND BLVD.
DETROIT, MI 48202.

☐ MOTORS INSURANCE CORP.
TREASURER DEPT.-ANNEX 75
3044 W. GRAND BLVD.
DETROIT, MI 48202

☐ GMAC MORTGAGE CORP.
CORP. ACCOUNTING
8360 OLD YORK ROAD
ELKINS PARK, PA 19117

☐ SEE PAGE 2

| TERMS | F.O.B. INSIDE DELIVERY | SHIP VIA | DELIVERY DATE | CODE NO. |
|---|---|---|---|---|
| NET 10TH & 25TH PROX. | DESTINATION | BEST WAY   PREPAID | AS RELEASED | |

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| | BLANKET ORDER FOR THE PERIOD 12/1/91 THROUGH 11/30/94 MEETING THE REQUIREMENTS OF GMAC AND ITS CONSOLIDATED SUBSIDIARIES COVERING FACSIMILE EQUIPMENT IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE ATTACHED GM/CANON CONTRACT 4023. | |
| | ALL MATERIAL AND/OR SERVICES ARE TO BE RELEASED ON FORM GMC-457 GMAC AND APPROVED BY ONE OF THE FOLLOWING AUTHORIZED AGENTS:  J. J. MUSSELMAN, J. L. TODD, G. M. STETZ, J. G. AVENIUS, K. E. HARRIS, R. M. KING, L. E. PINK, S. LISTA, K. McDONOUGH, R. O'DONNELL, J. HEALY, M. DUGAN, R. PRATZKE, OR W. VOLKENS. | |
| | ALL VERBAL INSTRUCTIONS OR CHANGES ARE TO BE CONFIRMED IN WRITING. | |
| | THIS ORDER MAY BE CANCELLED BY EITHER PARTY UPON RECEIPT OF 30 DAY WRITTEN NOTICE. | |
| | THIS ORDER SUPERSEDES P. O. #85094 DATED 12/90. | |

## ACKNOWLEDGEMENT—MUST BE SIGNED AND RETURNED TO PURCHASING DEPARTMENT

On the reverse side hereof are the terms and conditions to which the Seller agrees by acceptance of this order. Material will be shipped to meet your instructions.

If no instructions are given or provided for, shipment will be made on or about _____ via _____

Vendor: _____

Date: _____    By: _____

GMAC-455 (REV. 8/91)
PRINTED IN U.S.A. 1M 8/91

ACKNOWLEDGEMENT

REQ. No. 05943

## PURCHASE ORDER TERMS AND CONDITIONS

PAGE 2
P. O. #A 86610
12/10/91

**INVOICE TO:   ALL PURCHASE ORDER RELEASES WILL INSTRUCT YOU TO INVOICE ONE
OF THE FOLLOWING ADDRESSES:

GMAC

3044 W. GRAND BLVD.
ANNEX 10B
DETROIT, MI  48202
ATTN: CENTRAL ACCOUNTS PROCESSING

MIC

3044 W. GRAND BLVD.
ARGO A, 432 B
DETROIT, MI 48202
ATTN: ACCOUNTS PAYABLE

GMAC MORTGAGE CORP.

8360 OLD YORK ROAD
ELKINS PARK, PA  19117
ATTN: CORPORATE ACCOUNTING

GMAC MORTGAGE CORP.

3451 HAMMOND AVENUE
WATERLOO, IA  50702
ATTN: CORPORATE ACCOUNTING

INVOICES MUST REFERENCE BOTH THE PURCHASE ORDER AND RELEASE NUMBERS.

BLANKET ORDER CLAUSE

PRICES QUOTED ARE TO BE FIRM FOR THE PERIOD SPECIFIED.  HOWEVER ADJUSTMENTS IF ANY,
ARE TO BE MUTUALLY ACCEPTED BY BOTH PARTIES.  ANY INCREASE MUST BE SUBMITTED IN
WRITING AND WILL NOT BECOME EFFECTIVE UNTIL 30 DAYS AFTER IT HAS BEEN PRESENTED TO THE
BUYER.  PRICE DECREASES FOLLOWING THEIR EFFECTIVE ANNOUNCEMENTS WILL BE IN EFFECT ON
ALL SHIPMENTS.  NO PRICE CHANGE WILL BE CONSIDERED FOR THE DURATION OF A BLANKET ORDER
UNLESS IT REFLECTS A DIRECT COST PASS THROUGH AND IS SUPPORTED BY DETAILED
DOCUMENTATION REFLECTING AN OVERALL TRADE INCREASE.  IN THE EVENT SUCH PRICE INCREASES
ARE NOT ACCEPTED BY BUYER, THIS AGREEMENT MAY BE CANCELLED WITHOUT COMMITMENT.

**GM**

TO 02-0__-4780
CANON USA INC
100 PARK BLVD
ITASCA          , IL
60143      US

GENERAL MOTORS CORPORATION

GM WORLDWIDE PURCHASING
6750 CHICAGO ROAD
M/C 480-201-001
WARREN          MI
48090

**MATERIALS REQUIREMENT**
**CONTRACT ALTERATION**
RDB07824 - 003
EFFECTIVE:      02/14/96

RC EFFECTIVE: 04/03/95
RC EXPIRES:   12/31/97
PAGE          1 OF  1

PRINT DATE:    02/14/96

BY:
BUSINESS SUPPLIES
TELEPHONE NO: (810) 947-6204

*** THIS IS A CHANGE TO AN EXISTING         REQUIREMENTS CONTRACT.  REQUIREMENTS
CONTRACT NOW READS AS FOLLOWS: *** (A01)

ALL PRICES ARE CONTRACTED IN                U.S. DOLLARS

ALTERATION TO AMEND CONTRACT.

THE FOLLOWING CLAUSES HAVE BEEN ADDED TO THE CONTRACT.

AMEND CONTRACT EFFECTIVE 2/8/96 TO          INCLUDE UNITS:
CANON NP6012

TO INCLUDE MODELS:
CLC 350, CLC 700, CLC 800, BJ 2436         CANON NP 6012, NP 6050, CJ7, CJ10.

CANON NP 6012, NP 6050, CJ7, CJ10,

CLC350, CLC 700, CLC 800, BJ 2436

FORM 3xM041  REV 01/95

## PURCHASE ORDER TERMS AND CONDITIONS

1. **ACCEPTANCE:** Seller has read and understands this order and agrees that Seller's written acceptance or commencement of any work or service under this order shall constitute Seller's acceptance of these terms and conditions only, and the terms and conditions proposed by Seller which are different from or in addition to this order are unacceptable to Buyer, are expressly rejected by Buyer, and shall not become a part of this order. Any modifications to this order must be made in accordance with Paragraph 31.

2. **SHIPPING, BILLING AND FLSA CERTIFICATION:** Seller agrees (a) to properly pack, ship and ship goods in accordance with the requirements of Buyer and involved carriers in a manner to secure lowest transportation cost; (b) to route shipments in accordance with instructions from Buyer's Traffic Department; (c) to make no charge for handling, packaging, storage, transportation or drayage of goods unless otherwise stated in this order; (d) to provide with each shipment packing slips with Buyer's order number marked thereon; (e) to properly mark each package with the order number, the factory plant and dock number, and where multiple package comprise a single shipment, to consecutively number each package; and (f) to promptly forward the original bill of lading or other shipping receipt for each shipment in accordance with Buyer's requirements. The marks on each package and identification of goods transportation identification of the goods shipped in accordance with Buyer's instructions to easily identify the goods purchased. Seller further agrees: (a) to promptly render identification of the goods on packing slips, bills of lading and invoices to Buyer; and (b) if Buyer's discretion, after delivery of goods or performance of services, correct and complete invoices to Buyer; and (b) to render identification requirements of sections 6, 7, and 12 including electronic transfer of funds. Seller's invoices involving the discharge at this goods were produced in compliance with the applicable requirements of sections 6, 7, and 12 of the Fair Labor Standards Act, as amended, and of regulation and orders of the United States Department of Labor issued thereunder. Buyer's receipt of a proper invoice however may otherwise be agreed upon by Buyer. Each bill of this order, or if not stated, shall be on the 25th day of the month following Buyer's receipt of a proper invoice and such invoices are received, and Seller and Seller in connection with a program providing for electronic funds transfer, time for payment is due. Buyer may withhold payment pending receipt of evidence, in such form and detail as Buyer may direct, of the absence of any liens, encumbrances and claims on the goods under this order.

3. **DELIVERY SCHEDULES:** Deliveries shall be made both in quantities and at times specified in Buyer's delivery schedules. If this order is issued on a blanket or scheduled shipments or direct temporary suspension delivered to Buyer which are in excess of quantities specified in Buyer's delivery schedules, Buyer may change rate of scheduled shipments or direct temporary suspension of scheduled shipments, neither of which shall entitle Seller to a modification of the price for goods or services covered by this order. For orders of goods where quantities and/or delivery schedules are not specified, Seller shall deliver goods in such quantities and at such times as Buyer shall direct in subsequent releases.

4. **PREMIUM SHIPMENTS:** If Seller's acts or omissions result in Seller's failure to meet Buyer's delivery requirements and Buyer requires a more expeditious method of transportation for the goods than the transportation method originally specified by Buyer, Seller shall, at Buyer's option, (i) promptly reimburse Buyer the difference in cost between the premium freight cost and the more expeditious method and the original method; (ii) allow Buyer to reduce its payment of Seller's invoices by such difference; or (iii) ship the goods as expeditiously as possible at Seller's expense and invoice Buyer for the amount which Buyer would have paid for normal shipment.

5. **CHANGES:** Buyer reserves the right at any time to direct changes, or cause Seller to make changes, to drawings and specifications of the goods or to otherwise change the scope of the work covered by this order, including work with respect to such matters as inspection, testing or quality control, and Seller agrees to promptly make such changes; any difference in price or time for performance resulting from such changes shall be equitably adjusted by Buyer after receipt of documentation in such form and detail as Buyer may direct. Any changes to this order shall be made in accordance with Paragraph 31.

6. **INSPECTION:** Seller agrees that Buyer shall have the right to enter Seller's facility at reasonable times to inspect the facility, goods, materials and any property of Buyer connected by this order. Buyer's inspection of the goods, whether during manufacture, prior to delivery or within a reasonable time after delivery, shall not constitute acceptance of any work-in-process or finished goods.

7. **NONCONFORMING GOODS:** To the extent Buyer rejects goods as nonconforming, the quantities under this order will automatically be reduced unless Buyer otherwise notifies Seller. Seller will not replace quantities so reduced without a new order of schedule from Buyer. Nonconforming goods will be held by Buyer for disposition in accordance with Seller's instructions at Seller's risk. Seller's failure to provide written instruction within ten (10) days, or such other period as may be contractually reasonable under the circumstances, after notice of nonconformity shall entitle Buyer, at Buyer's option, to charge Seller for storage and handling or to dispose of the goods, without liability to Seller. Payment for nonconforming goods shall not constitute an acceptance thereof, limit or impair Buyer's right to assert any legal or equitable remedy, or relieve Seller's responsibility for latent defects.

8. **FORCE MAJEURE:** Any delay or failure of either party to perform its obligations hereunder shall be excused if, and to the extent that, it is caused by an event or occurrence beyond the reasonable control of the party and without its fault or negligence, such as, by way of example and not by way of limitation, acts of God, actions by any governmental authority (whether valid or invalid), fires, floods, windstorms, explosions, riots, natural disasters, wars, sabotage, labor problems (including strikes, lockouts), failure or delay of transportation, or court injunction or order; provided that written notice of such delay (including the anticipated duration of the delay) shall be given by the party so affected to the other party within a reasonable time after its occurrence. During the period of such delay or failure to perform by Seller, Buyer may, at Buyer's option, purchase goods from other sources and reduce its purchases from Seller the quantities covered by this order without liability to Seller; provided that Seller's quantity during any such event shall equal the quantities purchased from other sources plus the quantity required to be purchased, and Buyer may require Seller set forth in this order, if requested by the Buyer, Seller shall, within ten (10) days, make adequate assurances that the delay shall not exceed thirty (30) days; if the delay lasts more than thirty (30) days or Seller does not provide adequate assurances that the delay will likely not exceed thirty (30) days.

9. **WARRANTY:** Seller expressly warrants that all goods or services covered by this order will conform to the specifications, drawings, samples, or descriptions furnished to or by Buyer and will be merchantable, of good material and workmanship and free from defect. In addition, Seller acknowledges that Seller knows of Buyer's intended use, and warrants that all goods covered by this order which have been selected, designed, manufactured, or assembled by Seller based upon Buyer's particular purpose intended by Buyer.

10. **INGREDIENTS DISCLOSURE AND SPECIAL WARNINGS AND INSTRUCTIONS:** If requested by Buyer, Seller shall promptly furnish to Buyer in such form and detail as Buyer may direct: (a) a list of all ingredients in the goods purchased hereunder; (b) the amount of one or more ingredients; and (c) information concerning any changes in or additions to such ingredients. Prior to and with the shipment of the goods purchased hereunder, Seller agrees to furnish to Buyer sufficient warning and notice in writing (including appropriate labels on goods, containers and packaging) of any hazardous material which is an ingredient or a part of any of the goods, together with such special handling instructions as may be necessary to advise carriers, Buyer, and their respective employees of how to exercise that measure of care and precaution which will best prevent bodily injury or property damage in the handling, transportation, processing, use, or disposal of the goods, containers and packing shipped to Buyer.

11. **INSOLVENCY:** Buyer may immediately cancel this order without liability to Seller in the event of the happening of any of the following or any other comparable event: (a) insolvency of the Seller; (b) filing of a voluntary petition in bankruptcy by Seller; (c) filing of any involuntary petition in bankruptcy against Seller; (d) appointment of a receiver or trustee for Seller; or (e) execution of an assignment for the benefit of creditors by Seller, provided that such petition, appointment or assignment is not vacated or nullified within fifteen (15) days of such event.

12. **CANCELLATION FOR BREACH:** Buyer reserves the right to cancel all or any part of this order, without liability to Seller, if Seller: (a) repudiates or breaches any of the terms of this order, including Seller's warranties; (b) fails to perform services or deliver goods as specified by Buyer; or (c) fails to make progress so as to endanger timely and proper completion of services or delivery of goods; and does not correct or cure such failure within a period of time if commercially reasonable under the circumstances after receipt of written notice from Buyer specifying such failure or breach.

13. **TERMINATION:** In addition to any other rights of Buyer to cancel or terminate this order, Buyer may at its option immediately terminate all or any part of this order, at any time and for any reason, by giving written notice to Seller. Upon such termination, Buyer shall pay to Seller the following amounts without duplication: (a) the order price for all goods or services which have been completed in accordance with this order and not previously paid for, and (b) the actual cost of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this order to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this order; less, however, the sum of the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent, and the cost of any damaged or destroyed goods or material. Buyer will make no payments for finished goods, work-in-process or raw materials in the amount in excess of those authorized in delivery releases nor for any undelivered goods which are in Seller's standard stock or which are readily marketable. Payments made under this Paragraph shall not exceed the aggregate price payable by Buyer for finished goods which would be produced by Seller under delivery or production schedules outstanding at the date of termination. Except as provided in this Paragraph, Buyer shall not be liable for and shall not be required to make payments to Seller, directly or on account of claims by Seller's subcontractors, for loss of anticipated profit, unabsorbed overhead, interest on claims, product development and engineering costs, facilities and equipment rearrangement costs or rental, unamortized depreciation costs, and general and administrative burden charges from termination of this order. Within sixty (60) days from the effective date of termination, Seller shall submit a comprehensive termination claim to Buyer with sufficient supporting data to permit audit and Seller shall thereafter promptly furnish such supplemental and supporting information as Buyer shall request. Buyer, or its agents, shall have the right to audit and examine all books, records, facilities, work, material, inventories and other items relating to any termination claim.

14. **INTELLECTUAL PROPERTY:** Seller shall defend, hold harmless and indemnify Buyer, its successors and customers against all claims, demands, losses, suits, damages, liability and expenses (including reasonable attorney fees) resulting out of any actual or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark, copyright or mask work right by any goods or any part thereof furnished under this order, and against all claims, demands, losses, suits, damages, liability and expenses (including reasonable attorney fees) resulting out of any direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark, copyright or mask work right by reason of the manufacture, use, or sale of the goods or services ordered including any loss, cost or expense which may result from infringement arising out of compliance with specifications furnished by Buyer or for actual or alleged misuse or misapplication, including any high hardness or similar claim, in any way related to a claim asserted against (b) to waive any claim against Buyer for infringement based (a) upon Buyer's furnishing Seller with specifications furnished by Buyer; and (c) to defend and hold harmless Buyer, its successors and customers against any claim or liability arising out of or in connection with this order. Seller or Buyer for goods, trademark, copyright or mask work right infringement in the like, including claims arising out of compliance with specifications furnished by Buyer; and (c) to grant to Buyer a worldwide, nonexclusive, royalty-free, irrevocable license to repair and have repaired, to reconstruct and have reconstructed the goods ordered hereunder. Seller assigns to Buyer all right, title and interest in and to all trademarks, copyrights and mask work rights to this order.

15. **TECHNICAL INFORMATION DISCLOSED TO BUYER:** Seller agrees not to assert any claim other than a claim for patent infringement with respect to any technical information which Seller shall have disclosed or may hereafter disclose to Buyer in connection with the goods or services covered by this order.

16. **INDEMNIFICATION:** If Seller performs any work on Buyer's premises or the utilizes the property of Buyer, whether on or off Buyer's premises, Seller shall indemnify and hold Buyer harmless from and against any liability, claims, demands or expenses (including reasonable attorney fees) for damages to the property of or injuries (including death) to Buyer, its employees or any other person arising from or in connection with Seller's performance of work or use of Buyer's property except for such liability, claim, demand or expense that arises out of the sole negligence of Buyer.

17. **INSURANCE:** Seller shall maintain insurance coverage in amounts not less than the following: (a) Worker's Compensation — Statutory Limits for the state or states in which the order is to be performed (or evidence of authority to self-insure); (b) Employer's Liability — $1,000,000; (c) Comprehensive General Liability (including Products/Completed Operations and Blanket Contractual Liability) — $1,000,000 per occurrence, Personal Injury and $1,000,000 per occurrence Property Damage, or $1,000,000 combined single limit; (d) Automobile Liability (including owned, non-owned and hired vehicles) — Bodily Injury, $1,000,000 per occurrence Personal Injury and $1,000,000 per occurrence Property Damage, or $1,000,000 combined single limit. Seller shall furnish Buyer certificates of insurance coverage upon request. If Buyer so requests, Seller shall furnish Buyer with satisfactory evidence showing the maintenance and renewal of the required insurance, and each such certificate shall provide that coverage shall not be materially reduced or cancelled without thirty (30) days' prior written notification to Buyer. The maintenance of such insurance and the performance by Seller of its obligations under this order shall not relieve Seller of any of its obligations or liabilities under this order. Seller's furnishing of appropriate insurance coverage or the limitations of any policy or goods or services covered by this order and shall not be required to make further payments to Seller.

18. **TOOLS:** Unless otherwise agreed to by Buyer, Seller at its own expense shall furnish, keep in good condition, and replace when necessary all tools, dies, gauges, fixtures, molds and patterns (tools) necessary for the production of the goods. The cost of changes to the tools requested by Buyer shall be an amount no greater than the cost incurred by Seller, or as otherwise agreed to by Buyer. Seller shall insure the tools with full fire and extended coverage insurance for the replacement value thereof. Seller grants Buyer an irrevocable option to take possession of and title to the tools that are special for the production of the goods upon payment to Seller at the book value thereof less any amount which Buyer has previously paid toward the cost of such tools; provided, however, that this option shall not apply if the tools are used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others.

19. **BAILED PROPERTY:** All supplies, materials, tools, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items furnished by Buyer, either directly or indirectly to Seller to perform this order, or for which Seller has been reimbursed by Buyer, shall be and remain the property of Buyer. Such property shall be subject at all times to removal and disposition by Buyer, shall be held by Seller at its own risk, and shall be kept separate and identifiable. While in Seller's custody or control, such property shall be used only as authorized by Buyer, shall be properly maintained, and may not be transferred to any third party or to any other location by Seller without Buyer's prior written consent. Upon Buyer's request, or upon completion or cancellation of this order, Seller shall deliver such property to Buyer, at Buyer's direction, in good condition except for reasonable wear and tear, and insured against loss or damage to any such property. Seller shall bear the risk of loss of such property while in its possession or control.

20. **REMEDIES:** The rights and remedies reserved to Buyer in this order shall be cumulative, and additional to all other remedies provided in law or equity.

21. **DUTY DRAWBACK RIGHTS:** This order includes all related customs duty and import drawback rights, if any, including rights developed by substitution and rights which may be acquired from Seller's suppliers which Seller can transfer to Buyer. Seller agrees to inform Buyer of the existence of any such rights and upon request to supply such documents as may be required to obtain such drawback.

22. **SETOFF:** In addition to any right of setoff provided by law, all amounts due Seller shall be considered net of indebtedness of Seller to General Motors Corporation and its subsidiaries and General Motors Corporation may deduct any amounts due or to become due from Seller to General Motors Corporation and its subsidiaries from any sums due or to become due General Motors Corporation to Seller.

23. **ADVERTISING:** Seller shall not, without first obtaining the written consent of Buyer, in any manner advertise or publish the fact that Seller has contracted to furnish Buyer the goods or services herein ordered, or use any trademarks or tradenames of Buyer in Seller's advertising or promotional materials. In the event of Seller's breach of this provision Buyer shall have the right to cancel the undelivered portion of any goods or services covered by this order and shall not be required to make further payments except for conforming goods delivered or services rendered prior to cancellation.

24. **GOVERNMENT COMPLIANCE:** Seller agrees to comply with all federal, state and local laws, Executive Orders, rules regulations and ordinances which may be applicable to Seller's performance of its obligations under this order.

25. **EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION:** This order incorporates by reference: (a) all provisions of 41 C.F.R. 60-1.4, as amended, pertaining to the equal opportunity clause in government contracts; (b) all provisions of 41 C.F.R. 60-250.5, as amended pertaining to affirmative action for disabled veterans of the Vietnam Era; and (c) all provisions of 41 C.F.R. 60-741.5, as amended, pertaining to affirmative action for handicapped workers. Seller certifies that it is in compliance with all applicable provisions of 41 C.F.R. 60-741.4, as amended, pertaining to affirmative action for handicapped workers. Seller certifies that it does not and will not maintain segregated facilities nor permit its employees to perform services at any location under its control where segregated facilities are maintained pursuant to 41 C.F.R. 60-1.8, as amended. By filling EEO-1 Reports as required by 41 C.F.R. 60-1.7, as amended; and (b) certify that Seller adopts and implements a policy to extend employment opportunities to qualified applicants and employees on an equal basis regardless of an individual's age, race, color, sex, national origin, or religion.

26. **NO IMPLIED WAIVER:** The failure of either party at any time to require performance by the other party of any provision of this order shall in no way affect the right to require such performance at any time thereafter, nor shall the waiver of either party of a breach of any provision of this order constitute a waiver of any succeeding breach of the same or any other provision.

27. **NON-ASSIGNMENT:** Seller may not assign or delegate its obligations under this order without Buyer's prior written consent.

28. **RELATIONSHIP OF PARTIES:** Seller and Buyer are independent contracting parties and nothing in this order shall make either party the agent or legal representative of the other for any purpose whatsoever, nor grant it any right or authority to assume or to create any obligation on behalf of or in the name of the other.

29. **GOVERNING LAW:** This order is to be construed according to the laws of the state from which this order issues as shown by the address of Buyer on the face side of this order.

30. **SEVERABILITY:** If any term of this order is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term shall be deemed reformed or deleted, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this order shall remain in full force and effect.

31. **ENTIRE AGREEMENT:** This order, together with the attachments, exhibits, or supplements, specifically referenced in this order, constitutes the entire agreement between Seller and Buyer with respect to the matter contained herein and supersedes all prior oral or written representations and agreements. This order may only be modified by a purchase order amendment/alteration issued by Buyer.

SHP&RK REVISED 5-86

**GENERAL MOTORS ACCEPTANCE CORPORATION**
**AND ITS CONSOLIDATED SUBSIDIARIES**
MC 482-103-101
3044 WEST GRAND BLVD.
DETROIT, MI 48202
**(313) 556-9348 • (313) 974-4544 FAX**

BLANKET RELEASE

| P.O. NUMBER | | AMENDMENT CHANGE NUMBER |
|---|---|---|
| 1639 | | |
| RELEASE NUMBER | DATE | PAGE |
| 0079 | 05/28/97 | 1 |

**047930**

VENDOR: MILT WARD

CARLIN USA, INC
ATTN: MILT WARD
100 PARK BLVD.
ITASCA    IL    60143

SHIP INSIDE DELIVERY TO:

SEE SEE BELOW #45

| TERMS | F.O.B. | SHIP VIA | DELIVERY DATE |
|---|---|---|---|
| 25TH PROX. | SHIPPING POINT | BEST WAY PREPAID | 05/28/97 |

☐ AN AUTHORIZATION TO PRINT ☐ TO BE HELD FOR SHIPPING INSTRUCTIONS ☐ A RELEASE OF MATERIAL
☐ AN INSTRUCTION AS NOTED BELOW ☒ A RELEASE OF EQUIPMENT ☐ CONFIRMING ORDER

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| 1 S | AMEND #5 TO REFLECT PRICE CHANGES AND NEW EQUIPMENT AS PER THE ATTACHED PRICE SHEETS. | |

INVOICE IN DUPLICATE TO:

INVOICE DELIVERY LOCATION

| GENERAL MOTORS ACCEPTANCE CORP. |
|---|
| MC 482-103-101 |
| 3044 West Grand Blvd. |
| Detroit, MI 48202 |
| Att: Purchasing Activities |
| *CLC* |
| PURCHASING AUTHORITY |

Purchase Order Number and Release Number Must Appear on
All Invoices, Packaging Slips, and Transportation Bills.

GMAO 457 (Rev. 4/96)
PRINTED IN U.S.A.

VENDOR

# PURCHASE ORDER TERMS AND CONDITIONS

1. **ACCEPTANCE:** Seller has read and understands this order and agrees that Seller's written acceptance or commencement of any work of service under this order shall constitute Seller's acceptance of these terms and conditions only. All terms and conditions proposed by Seller which are different from or in addition to this order are unacceptable to Buyer, are expressly rejected by Buyer, and shall not become a part of this order. Any modifications to this order shall be made in accordance with Paragraph 31.

2. **SHIPPING, BILLING AND F.O.B. CERTIFICATION:** Seller agrees: (a) to properly pack, mark and ship goods in accordance with the requirements of Buyer and verified carriers in a manner to secure lowest transportation cost; (b) to route shipments in accordance with directions from Buyer's Traffic Department; (c) to make no charge for handling, packaging, storage, transportation or drayage of goods unless otherwise stated in this order; (d) to provide with each shipment packing slips with Buyer's order number marked thereon; (e) to properly mark each package with the order number, the factory, plant and dock number, and where multiple packages comprise a single shipment, to consecutively number each package; and (f) to promptly forward the original bill of lading or other shipping receipt for each shipment in accordance with Buyer's instructions. Seller will include on bills of lading or other shipping receipts correct classification identification of the goods shipped in accordance with Buyer's instructions and carrier's requirements. The marks on each package are identification of the goods on packing slips, bills of lading and invoices shall be sufficient to enable Buyer to easily identify the goods purchased. Seller further agrees: (a) to promptly render, after delivery of goods or performance of services, correct and complete invoices to Buyer; and (b) to accept payment by check, or, at Buyer's discretion, other cash equivalent (including electronic transfer of funds). Seller's invoice must include a certification that all goods were produced in compliance with the applicable requirements of sections 6, 7 and 12 of the Fair Labor Standards Act, as amended, and of regulations and orders of the United States Department of Labor issued in connection therewith. The payment date is set forth on the face side of this order, or if not stated, shall be on the 25th day of the month following Buyer's receipt of a proper invoice (except as may otherwise be agreed upon by Buyer and Seller in connection with a program providing for electronic funds transfer). Time for payment shall not begin until correct and complete invoices are received, and Seller's cash discount privileges to Buyer shall be extended until such time as payment is due. Buyer may withhold payment pending receipt of evidence, in such form and detail as Buyer may direct, of the absence of any liens, encumbrances and claims on the goods or services delivered.

3. **DELIVERY SCHEDULES:** Deliveries shall be made both in quantities and at times specified in Buyer's schedules. Buyer shall not be required to make payment for goods delivered to Buyer which are in excess of quantities specified in Buyer's delivery schedules. Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments, notice of which shall entitle Seller to a modification of the price for goods or services covered by this order. For orders of goods where quantities and/or delivery schedules are not specified, Seller shall deliver goods in such quantities and times as Buyer may direct in subsequent releases.

4. **PREMIUM SHIPMENTS:** If Seller's acts or omissions result in Seller's failure to meet Buyer's delivery requirements and Buyer requires a more expeditious method of transportation for the goods than the transportation method originally specified by Buyer, Seller shall, at Buyer's option, (i) promptly reimburse Buyer the difference in cost between the more expeditious method and the original method, (ii) allow Buyer to reduce its payment of Seller's invoices by such difference, or (iii) ship the goods as expeditiously as possible at Seller's expense and invoice Buyer for the amount which Buyer would have paid for normal shipment.

5. **CHANGES:** Buyer reserves the right at any time to direct changes, or cause Seller to make changes, to drawings and specifications of the goods or to otherwise change the scope of the work covered by this order, including work with respect to such matters as inspection, testing or quality control, and Seller agrees to promptly make such changes; any difference in price or time for performance resulting from such changes shall be equitably adjusted by Buyer with receipt of documentation in such form and detail as Buyer may direct. Any changes to this order shall be made in accordance with Paragraph 31.

6. **INSPECTION:** Seller agrees that Buyer shall have the right to enter Seller's facility at reasonable times to inspect the facility, goods, materials and any property of Buyer covered by this order. Buyer's inspection of the goods, whether during manufacture, prior to delivery or within a reasonable time after delivery, shall not constitute acceptance of any work in process or finished goods.

7. **NONCONFORMING GOODS:** To the extent Buyer rejects goods as nonconforming, the quantities under this order will automatically be reduced unless Buyer otherwise notifies Seller. Seller will not replace quantities so reduced without a new order or schedule from Buyer. Nonconforming goods will be held by Buyer for disposition in accordance with Seller's instructions at Seller's risk. If Seller fails to provide written instructions within ten (10) days, or such shorter period as may be commercially reasonable under the circumstances, after notice of nonconformity shall entitle Buyer, at Buyer's option, to charge Seller for storage and handling, or to dispose of the goods, without liability to Seller. Payment for nonconforming goods shall not constitute an acceptance thereof, limit or impair Buyer's right to assert any legal or equitable remedy, or relieve Seller's responsibility for latent defects.

8. **FORCE MAJEURE:** Any delay or failure of either party to perform its obligations hereunder shall be excused if, and to the extent that it is caused by an event of occurrence beyond the reasonable control of the party and without its fault or negligence, such as, by way of example and not by way of limitation, acts of God, actions by any governmental authority (whether valid or invalid), fires, floods, windstorms, explosions, riots, natural disasters, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), inability to obtain power, material, labor, equipment or transportation, or court injunction or order; provided that written notice of such delay (including the anticipated duration of the delay) shall be given by the affected party to the other party within ten (10) days. During the period of such delay or failure to perform by Seller, Buyer, at its option, may purchase goods from other sources and reduce its schedules to Seller by such quantities, without liability to Seller, or have Seller provide the goods from other sources. In quantities and at times requested by Buyer and at the price set forth in this order. If requested by the Buyer, Seller shall, within ten (10) days of such request, provide adequate assurances that the delay shall not exceed thirty (30) days. If the delay lasts more than thirty (30) days or Seller does not provide adequate assurance that the delay will cease within thirty (30) days, Buyer may immediately cancel the order without liability.

9. **WARRANTY:** Seller expressly warrants that all goods or services covered by this order will conform to the specifications, drawings, samples, or descriptions furnished to or by Buyer, and will be merchantable, of good material and workmanship and free from defect. In addition, Seller acknowledges that Seller knows of Buyer's intended use and expressly warrants that all goods covered by this order which have been selected, designed, manufactured, or assembled by Seller, based upon Buyer's stated use, will be fit and sufficient for the particular purposes intended by Buyer.

10. **INGREDIENTS DISCLOSURE AND SPECIAL WARNINGS AND INSTRUCTIONS:** If requested by Buyer, Seller shall promptly furnish to Buyer in such form and detail as Buyer may direct: (a) a list of all ingredients in the goods purchased hereunder; (b) the amount of one or more ingredients; and (c) information concerning any changes or additions to such ingredients. Prior to and with the shipment of the goods purchased hereunder, Seller agrees to furnish to Buyer sufficient warning and notice in writing (including appropriate labels on goods, containers and packaging) of any hazardous material which is an ingredient or a part of any of the goods, together with such special handling instructions as may be necessary to advise carriers, Buyer, and their respective employees of how to exercise that measure of care and precaution which will best prevent bodily injury or property damage in the handling, transportation, processing, use, or disposal of the goods, containers and packing shipped to Buyer.

11. **INDEMNITY:** Buyer may immediately cancel this order without liability to Seller in the event of the happening of any of the following or any other comparable event: (a) insolvency of the Seller; (b) filing of a voluntary petition in bankruptcy by Seller; (c) filing of any involuntary petition in bankruptcy against Seller; (d) appointment of a receiver or trustee for Seller; (e) or execution of an assignment for the benefit of creditors by Seller, provided that such petition, appointment, or assignment is not vacated or nullified within fifteen (15) days.

12. **CANCELLATION FOR BREACH:** Buyer reserves the right to cancel all or any part of this order, without liability to Seller, if Seller: (a) repudiates or breaches any of the terms of this order, including Seller's warranties; (b) fails to perform services or deliver goods as specified by Buyer; or (c) fails to make progress so as to endanger timely and proper completion of services or delivery of goods, and does not correct such failure or breach within ten (10) days (or such shorter period of time if commercially reasonable under the circumstances) after receipt of written notice from Buyer specifying such failure or breach.

13. **TERMINATION:** In addition to any other rights of Buyer to cancel or terminate this order, Buyer may at its option immediately terminate all or any part of this order, at any time and for any reason, by giving written notice to Seller. Upon such termination, Buyer shall pay to Seller the following amounts without duplication: (a) the order price for all goods or services which have been completed in accordance with this order and not previously paid for; and (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this order to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this order; less, however, the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent, and the cost of any damaged or destroyed goods or material. Buyer will make no payments for finished goods, work-in-process or raw materials fabricated or procured by Seller in amounts in excess of those authorized in delivery releases nor for any undelivered goods which are in Seller's standard stock or which are readily marketable. Payments made under this Paragraph shall not exceed the aggregate price payable by Buyer for finished goods which would be produced by Seller under delivery or release schedules outstanding at the date of termination. Except as provided in this Paragraph, Buyer shall not be liable for and shall not be required to make payments to Seller, directly or on account of claims by Seller's subcontractors, for loss of anticipated profit, unabsorbed overhead, interest on claims, product development and engineering costs, facilities and equipment rearrangement costs, or unamortized depreciation costs, and general and administrative burden charges from termination of this order. Within sixty (60) days

from the effective date of termination, Seller shall submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit Buyer's audit, and shall thereafter promptly furnish such supplemental and supporting information as Buyer shall request. Buyer, or its agents, shall have the right to audit and examine all books, records, facilities, work, material, inventories and other items relating to any termination claim of Seller.

14. **INTELLECTUAL PROPERTY:** Seller agrees: (a) to defend, hold harmless and indemnify Buyer, its successors and customers against all claims, demands, losses, suits, damages, liability and expenses (including reasonable attorney fees) arising out of any suit, claim or action for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark, copyright or mask work, by reason of the manufacture, use or sale of the goods or services ordered, including infringement arising out of compliance with specifications furnished by Buyer, or for actual or alleged misuse or misappropriation of a trade secret resulting directly or indirectly from Seller's actions; (b) to waive any claim against Buyer under the Uniform Commercial Code or otherwise, including any hold harmless or similar claim in any way connected with a claim asserted against Seller or Buyer for patent, trademark, copyright or mask work infringement or the like, including claims arising out of compliance with specifications furnished by Buyer, and such infringement or the like, including, however, not be, irrevocable license to repair and have repaired, to reconstruct and have reconstructed the goods ordered hereunder. Seller assigns to Buyer all right, title and interest in all trademarks, copyrights and mask work rights in any material created for Buyer under this order.

15. **TECHNICAL INFORMATION DISCLOSED TO BUYER:** Seller agrees to assert any claim (other than a claim for patent infringement) with respect to any technical information which Seller shall have disclosed or may hereafter disclose to Buyer in connection with the goods or services covered by this order.

16. **INDEMNIFICATION:** If Seller performs any work on Buyer's premises or utilizes the property of Buyer, whether on or off Buyer's premises, Seller shall indemnify and hold Buyer harmless from and against any liability, claims, demands or expenses (including reasonable attorney fees) for damages to the property of or injuries (including death) to Buyer, its employees or any other person arising from or in connection with Seller's performance of work or use of Buyer's property, except for such liability, claim, or demand arising out of the sole negligence of Buyer.

17. **INSURANCE:** Seller shall maintain insurance coverage in amounts not less than the following: (a) Workers' Compensation — Statutory Limits for the state or states in which this order is to be performed (or evidence of authority to self-insure); (b) Employer's Liability — $250,000; (c) Comprehensive General Liability (including Products/Completed Operations and Blanket Contractual Liability) — $1,000,000 per person, $1,000,000 per occurrence Personal Injury, and $1,000,000 per occurrence Property Damage, or $1,000,000 per occurrence combined single limit; and (d) Automobile Liability (including owned, non-owned and hired vehicles) — $1,000,000 per person, $1,000,000 per occurrence Personal Injury and $1,000,000 per occurrence Property Damage, or $1,000,000 per occurrence Federal Injury and Property Damage combined single limit. At Buyer's request, Seller shall furnish to Buyer certificates of insurance setting forth the amount(s) of coverage, policy number(s) and date(s) of expiration for insurance maintained by Seller and, if further requested by Buyer, such certificates will provide that Buyer shall receive thirty (30) days' prior written notification from the insurer of any termination or reduction in the amount of scope of coverages. Seller's purchase of appropriate insurance coverage or the furnishing of certificates of insurance shall not release Seller of its obligations or liabilities under this order. In the event of Seller's breach of this provision, Buyer shall have the right to cancel the undelivered portion of any goods or services covered by this order and shall not be required to make further payments except for conforming goods delivered or services rendered prior to cancellation.

18. **TOOLS:** Unless otherwise agreed to by Buyer, Seller at its own expense shall furnish, keep in good condition, and replace when necessary all tools, jigs, dies, gauges, fixtures, molds and patterns ("Tools") necessary for the production of the goods. The cost of changes to the Tools necessary to make design and specification changes authorized by Buyer shall be paid for by Buyer. Seller shall insure the Tools with Seller, and extended coverage insurance for the replacement value thereof. Seller grants Buyer an irrevocable option to take possession of and title to the Tools that are special for the production of the goods upon payment to Seller of the book value thereof less any amounts which Buyer has previously paid to Seller for the cost of such Tools; provided, however, that this option shall not apply if such Tools are used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others.

19. **BAILED PROPERTY:** All supplies, materials, tools, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items furnished by Buyer, either directly or indirectly, to Seller to perform this order, or for which Seller has been reimbursed by Buyer, shall be and remain the property of Buyer. Seller shall bear the risk of loss of and damage to Buyer's property. Buyer's property shall at all times be properly housed and maintained by Seller; shall not be used by Seller for any purpose other than the performance of this order; shall be deemed to be personal; shall be conspicuously marked "Property of General Motors Corporation" by Seller; shall not be commingled with the property of Seller or with that of a third person; and shall not be moved from Seller's premises without Buyer's prior written approval. Upon the request of Buyer, such property shall be immediately released to Buyer or delivered to Buyer by Seller, either (i) F.O.B. transport equipment at Seller's plant, properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such property, or (ii) to any location designated by Buyer, in which event Buyer shall pay to Seller the reasonable cost of delivering such property to such location. Buyer shall have the right to enter onto Seller's premises at all reasonable times to inspect such property and Seller's records relating thereto.

20. **REMEDIES:** The rights and remedies reserved to Buyer in this order shall be cumulative, and additional to all other or further remedies provided in law or equity.

21. **DUTY DRAWBACK RIGHTS:** This order includes all related customs duty and import drawback rights, if any, (including rights developed by substitution and rights which may be acquired from Seller's suppliers) which Seller can transfer to Buyer. Seller agrees to inform Buyer of the existence of any such rights and upon request to supply such documents as may be required to obtain such drawback.

22. **SETOFF:** In addition to any right of setoff provided by law, all amounts due Seller shall be considered net of indebtedness of Seller to General Motors Corporation and its subsidiaries; and General Motors Corporation may deduct any amounts due or to become due from Seller to General Motors Corporation and its subsidiaries from any sums due or to become due from General Motors Corporation to Seller.

23. **ADVERTISING:** Seller shall not, without first obtaining the written consent of Buyer, in any manner advertise or publish the fact that Seller has contracted to furnish Buyer the goods or services herein ordered, or use any trademarks or tradenames of Buyer in Seller's advertising or promotional materials. In the event of Seller's breach of this provision, Buyer shall have the right to cancel the undelivered portion of any goods or services covered by this order and shall not be required to make further payment except for conforming goods delivered or services rendered prior to cancellation.

24. **GOVERNMENT COMPLIANCE:** Seller agrees to comply with all federal, state and local laws, executive orders, rules, regulations and ordinances which may be applicable to Seller's performance of its obligations under this order.

25. **EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION:** This order incorporates by reference: (a) all provisions of 41 C.F.R. 60-1.4, as amended, pertaining to the equal opportunity clause in government contracts; (b) all provisions of 41 C.F.R. 60-250, as amended, pertaining to affirmative action for disabled veterans of the Vietnam Era; and (c) all provisions of 41 C.F.R. 60-741, as amended, pertaining to affirmative action for handicapped workers. Seller certifies that it is in compliance with all applicable provisions of 41 C.F.R. 60-1, including but not limited to: (a) developing and preserving if having in full force and effect a written affirmative action compliance program for each of its establishments as required by 41 C.F.R. 60-1.40, as amended; (b) filing EEO-1 reports as required by 41 C.F.R. 60-1.7, as amended; and (c) neither maintaining segregated facilities nor permitting its employees to perform services at locations where segregated facilities are maintained as prohibited by 41 C.F.R. 60-1.8, as amended. Buyer requests that Seller adopt and implement a policy to extend employment opportunities to qualified applicants and employees on an equal basis regardless of an individual's age, race, color, sex, religion or national origin.

26. **NO IMPLIED WAIVER:** The failure of either party at any time to require performance by the other party of any provision of this order shall in no way affect the right to require such performance at any time thereafter, nor shall the waiver of either party of a breach of any provision of this order constitute a waiver of any succeeding breach of the same or any other provision.

27. **NON-ASSIGNMENT:** Seller may not assign or delegate its obligations under this order without Buyer's prior written consent.

28. **RELATIONSHIP OF PARTIES:** Seller and Buyer are independent contracting parties and nothing in this order shall make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or to create any obligation on behalf of or in the name of the other.

29. **GOVERNING LAW:** This order is to be construed according to the laws of the state from which this order issues as shown by the address of Buyer on the face side of this order.

30. **SEVERABILITY:** If any term of this order is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term shall be deemed reformed or deleted, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this order shall remain in full force and effect.

31. **ENTIRE AGREEMENT:** This order, together with the attachments, exhibits, or supplements, specifically referenced in this order, constitutes the entire agreement between Seller and Buyer with respect to the matter contained herein and supersedes all prior oral or written representations and agreements. This order may only be modified by a purchase order amendment/alteration issued by Buyer.

**MAY, 1986**

**GENERAL MOTORS ACCEPTANCE CORPORATION
AND ITS CONSOLIDATED SUBSIDIARIES**
MC 482-103-101
3044 WEST GRAND BLVD.
DETROIT, MI 48202
(313) 556-9348   (313) 974-4544 FAX

| | | BLANKET RELEASE |
|---|---|---|
| P.O. NUMBER | | AMENDMENT CHANGE NUMBER |
| | B3C8J | |
| RELEASE NUMBER | DATE | PAGE |
| 0021 | 07/23/97 | |

058287

VENDOR: MILT WARD

CANON USA, INC.
ATTN: MILT WARD
100 PARK BLVD.
ITASCA    IL    60143

SHIP INSIDE DELIVERY TO:

*** SEE BELOW ***

| TERMS | F.O.B. | SHIP VIA | DELIVERY DATE |
|---|---|---|---|
| 25TH PROX. | SHIPPING POINT | BEST WAY PREPAID | 07/24/97 |

☐ AN AUTHORIZATION TO PRINT      ☐ TO BE HELD FOR SHIPPING INSTRUCTIONS      ☐ A RELEASE OF MATERIAL
☐ AN INSTRUCTION AS NOTED BELOW   ☒ A RELEASE OF EQUIPMENT                    ☐ CONFIRMING ORDER

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|
| 1 S | AMEND #6 - TO REFLECT CHANGES AS PER THE ATTACHED PRICE SCHEDULE. EFFECTIVE IMMEDIATELY. | |

INVOICE IN DUPLICATE TO:

INVOICE DELIVERY LOCATION

GENERAL MOTORS ACCEPTANCE CORP.
MC 482-103-101
3044 West Grand Blvd.
Detroit, MI 48202
Att: Purchasing Activities

C.T.E.C.

PURCHASING AUTHORITY

Purchase Order Number and Release Number Must Appear on
Invoices, Packaging Slips, and Transportation Bills.

C 457 (Rev. 4/96)
PRINTED IN U.S.A.

VENDOR

# PURCHASE ORDER TERMS AND CONDITIONS

**1. ACCEPTANCE:** Seller has read and understands this order and agrees that Seller's written acceptance or commencement of any work or service under this order shall constitute Seller's acceptance of these terms and conditions only. All terms and conditions proposed by Seller which are different from or in addition to this order are unacceptable to Buyer, are expressly rejected by Buyer, and shall not become a part of this order. Any modifications to this order shall be made only in accordance with Paragraph 31.

**2. SHIPPING, BILLING AND FLAG CERTIFICATION:** Seller agrees: (a) to properly pack, mark and ship goods in accordance with the requirements of Buyer and involved carriers in a manner to secure lowest transportation cost; (b) to route shipments in accordance with instructions from Buyer's Traffic Department; (c) to make no charge for handling, packaging, storage, transportation or drayage of goods unless otherwise stated in this order; (d) to provide with each shipment packing slips with Buyer's order number marked thereon; (e) to properly mark each package with this order number, the factory, plant and dock number, and where multiple packages comprise a single shipment, to consecutively number each package; and (f) to promptly forward the original bill of lading or other shipping receipt for each shipment in accordance with Buyer's instructions. Seller will include on bills of lading or other shipping receipts correct classification identification of the goods shipped in accordance with Buyer's instructions and carrier's requirements. The marks on each package and identification of the goods on packing slips, bills of lading and invoices shall be sufficient to enable Buyer to easily identify the goods purchased. Seller further agrees: (a) to promptly render, after delivery of goods or performance of services, correct and complete invoices to Buyer; and (b) to accept payment by check or, at Buyer's discretion, other cash equivalent (including electronic transfer of funds). Seller's invoice must include a certification that all goods were produced in compliance with the applicable requirements of sections 6, 7 and 12 of the Fair Labor Standards Act, as amended, and all regulations and orders of the United States Department of Labor issued in connection therewith. The payment date is set forth on the face side of this order, or if not stated, shall be on the 25th day of the month following Buyer's receipt of a proper invoice (except as may otherwise be agreed upon by Buyer and Seller in connection with a program providing for electronic funds transfer). Time for payment shall not begin to run until correct and complete invoices are received, and Seller's cash discount privileges to Buyer shall be extended until such time as payment is due. Buyer may withhold payment pending receipt of evidence, in such form and detail as Buyer may direct, of the absence of any liens, encumbrances and claims on the goods or services under this order.

**3. DELIVERY SCHEDULES:** Deliveries shall be made both in quantities and at times specified in Buyer's schedules. Buyer shall not be required to make payment for goods delivered to Buyer which are in excess of quantities specified in Buyer's delivery schedules. Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments, neither of which shall entitle Seller to a modification of the price for goods or services covered by this order. For orders of goods where quantities and/or delivery schedules are not specified, Seller shall deliver goods in such quantities and times as Buyer may direct in subsequent releases.

**4. PREMIUM SHIPMENTS:** If Seller's acts or omissions result in Seller's failure to meet Buyer's delivery requirements and Buyer requests a more expeditious method of transportation for the goods than the transportation method originally specified by Buyer, Seller shall, at Buyer's option, (a) promptly reimburse Buyer the difference in cost between the more expeditious method and the original method, (b) allow Buyer to reduce its payment of Seller's invoices by such difference, or (iii) ship the goods as expeditiously as possible at Seller's expense and invoice Buyer for the amount which Buyer would have paid for normal transportation.

**5. CHANGES:** Buyer reserves the right at any time to direct changes, or cause Seller to make changes, to drawings and specifications of the goods or to otherwise change the scope of the work covered by this order, including work with respect to such matters as inspection, testing or quality control, and Seller agrees to promptly make such changes; any difference in price or time for performance resulting from such changes shall be equitably adjusted by Buyer after receipt of documentation in such form and detail as Buyer may direct. Any changes to this order shall be made in accordance with Paragraph 31.

**6. INSPECTION:** Seller agrees that Buyer shall have the right to enter Seller's facility at reasonable times to inspect the facility, goods, materials and any property of Buyer covered by this order. Buyer's inspection of the goods, whether during manufacture, prior to delivery or within a reasonable time after delivery, shall not constitute acceptance of any work-in-process or finished goods.

**7. NONCONFORMING GOODS:** To the extent Buyer rejects goods as nonconforming, the quantities under this order will automatically be reduced unless Buyer otherwise notifies Seller. Seller will not replace quantities so reduced without a new order or schedule from Buyer. Nonconforming goods will be held by Buyer for disposition in accordance with Seller's instructions at Seller's risk. Seller's failure to provide written instructions within ten (10) days, or such shorter period as may be commercially reasonable under the circumstances, after notice of nonconformity shall entitle Buyer, at Buyer's option, to charge Seller for storage and handling, or to dispose of the goods, without liability to Buyer for nonconforming goods and not constitute a waiver of any Buyer's right to assert any legal or equitable remedy, or relieve Seller's responsibility for latent defects.

**8. FORCE MAJEURE:** Any delay or failure of either party to perform its obligations hereunder shall be excused if, and to the extent that it is caused by an event or occurrence beyond the reasonable control of the party and without its fault or negligence, such as, by way of example and not by way of limitation, acts of God, acts of the governmental authority (whether valid or invalid), fires, floods, windstorms, explosions, riots, natural disasters, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), inability to obtain power, material, labor, equipment or transportation, or court injunction or order, provided that written notice of such delay (including the anticipated duration of the delay) shall be given by the affected party to the other party within ten (10) days. During the period of such delay or failure to perform by Seller, Buyer, at its option, may purchase goods from other sources and reduce its schedules to Seller for such quantities, without liability to Seller, or have Seller provide the goods from other sources in quantities and at times requested by Buyer and at the price set forth in this order. If requested by the Buyer, Seller shall, within ten (10) days of such request, provide adequate assurances that the delay shall not exceed thirty (30) days. If the delay lasts more than thirty (30) days or Seller does not provide adequate assurance that the delay will cease within thirty (30) days, Buyer may immediately cancel the order without liability.

**9. WARRANTY:** Seller expressly warrants that all goods or services covered by this order will conform to the specifications, drawings, samples, or descriptions furnished to or by Buyer, and will be merchantable, of good material and workmanship and free from defect. In addition, Seller acknowledges that Seller knows of Buyer's intended use and expressly warrants that all goods covered by this order were selected, manufactured, or assembled by Seller, based upon Buyer's stated use, will be fit and sufficient for the particular purposes intended by Buyer.

**10. INGREDIENTS DISCLOSURE AND SPECIAL WARNING AND INSTRUCTIONS:** If requested by Buyer, Seller shall promptly furnish to Buyer in such form and detail as Buyer may direct: (a) a list of all ingredients in the goods purchased hereunder; (b) the amount of one or more ingredients; and (c) information concerning any changes in or additions to such ingredients. Prior to and with shipment of the goods purchased hereunder, Seller agrees to furnish to Buyer sufficient warning and notice in writing (including appropriate labels on goods, containers and packing) of any hazardous material which is an ingredient or a part of any of the goods, together with such special handling instructions as may be necessary to advise carriers, Buyer, and their respective employees of how to exercise that measure of care and precaution which will best prevent bodily injury or property damage in the handling, transportation, processing, use, or disposal of the goods, containers and packing shipped to Buyer.

**11. INSOLVENCY:** Buyer may immediately cancel this order without liability to Seller in the event of the happening of any of the following or any other comparable event: (a) insolvency of the Seller; (b) filing of a voluntary petition in bankruptcy by Seller; (c) filing of any involuntary petition in bankruptcy against Seller; (d) appointment of a receiver or trustee for Seller; or (e) execution of an assignment for the benefit of creditors by Seller, provided that such petition, receiver, appointment, or assignment is not vacated or nullified within fifteen (15) days of such event.

**12. CANCELLATION FOR BREACH:** Buyer reserves the right to cancel all or any part of this order, without liability to Seller, if Seller: (a) repudiates or breaches any of the terms of this order, including Seller's warranties; (b) fails to perform services or deliver goods as required by Buyer; or (c) fails to make progress so as to endanger timely and proper completion of services or delivery of goods; and does not correct such failure or breach within ten (10) days (or such shorter period of time if commercially reasonable under the circumstances) after receipt of written notice from Buyer specifying such failure or breach.

**13. TERMINATION:** In addition to any other rights of Buyer to cancel or terminate this order, Buyer may at its option immediately terminate all or any part of this order, at any time and for any reason, by giving written notice to Seller. Upon such termination, Buyer shall pay to Seller the following amounts without duplication: (a) the order price for all goods or services which have been completed in accordance with this order and not previously paid for; and (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this order to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this order; less, however, the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent and the cost of any damaged or destroyed goods or materials. Buyer will make no payments for finished goods, work-in-process or raw materials fabricated or procured by Seller in amounts in excess of those authorized in delivery releases nor for any undelivered goods which are in Seller's standard stock or which are readily marketable. Payments made under this Paragraph shall not exceed the aggregate price payable by Buyer for finished goods which would be produced by Seller under delivery or release schedules outstanding at the date of termination. Except as provided in this Paragraph, Buyer shall not be liable for and shall not be required to make payments to Seller, directly or on account of claims by Seller's subcontractors, for loss of anticipated profit, unabsorbed overhead, interest on claims, product development and engineering costs, facilities and equipment rearrangement costs or rental, unamortized depreciation costs, and general and administrative burden charges from termination of this order. Within sixty (60) days

from the effective date of termination, Seller shall submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit Buyer's audit, and shall thereafter promptly furnish such supplemental and supporting information as Buyer shall request. Buyer, or its agent, shall have the right to audit and examine all books, records, facilities, work, material, inventories, and other items relating to any termination claim of Seller.

**14. INTELLECTUAL PROPERTY:** Seller agrees: (a) to defend, hold harmless and indemnify Buyer, its successors and customers against all claims, demands, losses, suits, damages, liability and expenses (including reasonable attorney fees) arising out of any suit, claim or action for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark, copyright or mask work right by reason of the manufacture, use or sale of the goods or services covered by this order, including infringement arising out of compliance with specifications furnished by Buyer; or for actual or alleged misuse or misappropriation of a trade secret resulting directly or indirectly from Seller's actions; and (b) to waive any claim against Buyer under the Uniform Commercial Code or otherwise, including any hold harmless or similar claim, to any way related to a claim asserted against Seller or Buyer for patent, trademark, copyright or mask work right infringement or the like, including claims arising out of compliance with specifications furnished by Buyer; and (c) to grant to Buyer a worldwide, nonexclusive, royalty-free, irrevocable license to repair and have repaired, to reproduce and have reconstructed the goods ordered hereunder. Seller agrees to Buyer all right, title and interest in and to all trademarks, copyrights or mask work rights in any material created for Buyer under this order.

**15. TECHNICAL INFORMATION DISCLOSED TO BUYER:** Seller agrees not to assert any claim (other than a claim for patent infringement) with respect to any technical information which Seller shall have disclosed or may hereafter disclose to Buyer in connection with the goods or services covered by this order.

**16. INDEMNIFICATION:** If Seller performs any work on Buyer's premises or utilizes the property of Buyer, whether on or off Buyer's premises, Seller shall indemnify and hold Buyer harmless from and against any liability, claims, demands or expenses (including reasonable attorney fees) for damages to the property of or injuries (including death) to Buyer, its employees or any other person arising from or in connection with Seller's performance of work or use of Buyer's property, except for such liability, claim, or demand arising out of the sole negligence of Buyer.

**17. INSURANCE:** Seller shall maintain insurance coverage in amounts not less than the following: (a) Workers' Compensation — Statutory Limits for the state or states in which the order is to be performed (or evidence of authority to self-insure), (b) Employer's Liability — $250,000; (c) Comprehensive General Liability (including Products/Completed Operations and Blanket Contractual Liability) — $1,000,000 per person, $1,000,000 per occurrence Personal Injury, and $1,000,000 per occurrence Property Damage or $1,000,000 per occurrence Personal Injury and Property Damage combined single limit; and (d) Automobile Liability (including owned, non-owned and hired vehicles) — $1,000,000 per person, $1,000,000 per occurrence Personal Injury and $1,000,000 per occurrence Property Damage, or $1,000,000 per occurrence Personal Injury and Property Damage combined single limit. At Buyer's request, Seller shall furnish to Buyer certificates of insurance setting forth the amount(s) of coverage, policy number(s) and date(s) of expiration for insurance maintained by Seller and, if further requested by Buyer, each certificate of insurance shall provide thirty (30) days' prior written notification from the insurer of any diminution in or reduction in the amount of the scope of coverage. Seller's purchase of appropriate insurance coverage or the furnishing of certificates of insurance shall not release Seller of its obligations or liabilities under this order. To the event of Seller's breach of this provision, Buyer shall have the right to cancel the unordered portion of any goods or services under this order and shall not be required to make further payments except for services rendered prior to cancellation.

**18. TOOLS:** Unless otherwise agreed to by Buyer, Seller at its own expense shall furnish, keep in good condition, and replace when necessary all tools, jigs, dies, gauges, fixtures, molds and patterns ("Tools") necessary for the production of the goods. The cost of changes to the Tools necessary to make design and specification changes authorized by Buyer shall be paid for by Buyer. Seller shall insure the Tools with full fire and extended coverage insurance for the replacement value thereof. Seller grants Buyer an irrevocable option to take possession of and title to the Tools that are special for the production of the goods upon payment to Seller of the book value thereof less any amounts which Buyer has previously paid to Seller for the cost of such Tools; provided, however, that this option shall not apply if such Tools are used in the production of goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others.

**19. BAILED PROPERTY:** All supplies, materials, tools, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items furnished by Buyer, either directly or indirectly, to Seller to perform this order, or for which Seller has been reimbursed by Buyer, shall be and remain the property of Buyer. Seller shall bear the risk of loss of and damage to Buyer's property. Such property, while in Seller's custody or control, shall be held at Seller's risk, shall be kept separate from the property of Seller and shall be clearly identified by Seller as the property of Buyer. Except for that portion of the property which has been reasonably consumed in the performance of this order, such property shall be subject to removal at Buyer's written request, at which time Seller shall prepare such property for shipment and shall redeliver to Buyer in as good condition as originally received by Seller, reasonable wear and tear excepted. Buyer shall have the right to enter upon Seller's premises without Buyer's prior written approval. Upon the request of Buyer, such property shall be immediately released to Buyer or delivered to Buyer by Seller, either (i) F.O.B. transport equipment at Seller's plant, properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such property, or (ii) to any location designated by Buyer, in which event Buyer shall pay to Seller the reasonable cost of delivering such property to such location. Buyer shall have the right to enter Seller's premises at all reasonable times to inspect such property and Seller's records with respect thereto.

**20. REMEDIES:** The rights and remedies reserved to Buyer in this order shall be cumulative, and additional to all other or further remedies provided in law or equity.

**21. DUTY DRAWBACK RIGHTS:** The order includes all related customs duty and import drawback rights, if any, (including rights developed by substitution and rights which may be acquired from Seller's suppliers) which Seller can transfer to Buyer. Seller agrees to inform Buyer of the existence of any such rights and upon request to supply such documents as may be required to obtain such drawback.

**22. SETOFF:** In addition to any right of setoff provided by law, all amounts due Seller shall be considered net of indebtedness of Seller to General Motors Corporation and its subsidiaries; and General Motors Corporation may deduct any amounts due or to become due from Seller to General Motors Corporation and its subsidiaries from any sums due or to become due from General Motors Corporation to Seller.

**23. ADVERTISING:** Seller shall not, without first obtaining the written consent of Buyer, in any manner advertise or publish the fact that Seller has contracted to furnish Buyer the goods or services herein ordered, or use any trademarks or tradenames of Buyer in Seller's advertising or promotional materials. In the event of Seller's breach of this provision, Buyer shall have the right to cancel the undelivered portion of any goods or services covered by this order and shall not be required to make further payments except for conforming goods delivered or services rendered prior to cancellation.

**24. GOVERNMENT COMPLIANCE:** Seller agrees to comply with all federal, state and local laws, executive orders, rules, regulations and ordinances which may be applicable to Seller's performance of its obligations under this order.

**25. EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION:** This order incorporates by reference: (a) all provisions of 41 C.F.R. 60-1.4, as amended, pertaining to the equal opportunity provisions of such contracts; (b) all provisions of 41 C.F.R. 60-250, as amended, pertaining to affirmative action relative to disabled veterans; (c) all provisions of 41 C.F.R. 60-741, as amended, pertaining to affirmative action for handicapped workers. Seller certifies that it is in compliance with 41 C.F.R. 60-1, including but not limited to (a) developing and implementing an affirmative action program as required by 41 C.F.R. 60-1.40, as amended; (b) filing EEO-1 Reports as required by 41 C.F.R. 60-1.7, as amended; and (c) refraining from maintaining segregated facilities as prohibited by 41 C.F.R. 60-1.8, as amended. Buyer requests that Seller adopt and implement a policy to extend employment opportunities to handicapped individuals and employees who are members of all minorities without regard to race, color, sex, religion or national origin.

**26. NO IMPLIED WAIVER:** The failure of either party at any time to require performance by the other party of any provision of this order shall in no way affect the right to require such performance at any time thereafter, nor shall the waiver of either party of a breach of any provision of this order constitute a waiver of any succeeding breach of the same or any other provision.

**27. NON-ASSIGNMENT:** Seller may not assign or delegate its obligations under this order without Buyer's prior written consent.

**28. RELATIONSHIP OF PARTIES:** Seller and Buyer are independent contracting parties and nothing in this order shall make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or to create any obligation on behalf of or in the name of the other.

**29. GOVERNING LAW:** This order is to be construed according to the laws of the state from which this order issues as shown by the address of Buyer on the face side of this order.

**30. SEVERABILITY:** If any term of this order is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term shall be deemed reformed or deleted, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this order shall remain in full force and effect.

**31. ENTIRE AGREEMENT:** This order, together with the attachments, exhibits, or supplements specifically referenced in this order, constitutes the entire agreement between Seller and Buyer with respect to the matter contained herein and supersedes all prior oral or written representations and agreements. This order may only be modified by a purchase order amendment/alteration issued by Buyer.

**MAY, 1986**



*Worldwide Purchasing*   Cadillac Building
*& Order-to-Delivery*    M/C: 480-206-246
                         30009 Van Dyke Avenue
                         Warren, MI 48090
                         USA

Date: August 18, 2003

Canon USA
100 Park Blvd.
Itasca, IL 60143

Dear Patricia,

At the request of Milt Ward this letter is to inform you that General Motors has extended Blanket Purchase Orders: TCB05740 and TCB03969 thru 6/30/06.  These contracts include Leasing and Rental prices for this period.

If you have other questions, please contact me at 586 974 8931.

Thank you,
Rosemary Culpepper
Sr. Buyer – GM WWP-Indirect

General Motors
Worldwide Purchasing
Cadillac Headquarters
30009 Van Dyke
Warren  MI  48090-9020
Mail Code 480-206-206

**To :**    Canon USA

**Attention :**  Milt Ward

Dear Milt,
Please except purchase order alteration TCB03966 —alteration 011 to extend the current Canon Copier and Facsimile contract for three months. The contract will be effective from January 1, 2003 through March 31, 2003 in order to allow General Motors and Canon additional time to renegotiate an extension on the agreement.

Thank you very much,

*Cathy Loria*
Cathy Loria
Senior Buyer
Copier and Facsimile Equipment



**General Motors Corporation**

GENERAL MOTORS CORPORATION
WORLDWIDE PURCHASING
30009 VAN DYKE
M/C 480-206-204
WARREN MI
48090

VENDOR NUMBER 02-004-4780
TO: CANON USA INC
100 PARK BLVD
ITASCA IL
60143

SHIP TO:

INVOICE TO:

US

**PURCHASE**
PAGE
**ORDER** TCB03969 011
###ALTERATION###

This Number Must Appear On All Invoices, Packing Slips,
Packages and Bills of Lading.
All copies of your packing slip must accompany each shipment.
Item Identification Number## must be shown on Packing Slips and
Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel
Post.

CADILLAC
PAGE 02/02

01/08/2003   10:49   586-192-9439

PHONE: 586-947-8931
C LORIA
5803

ORDER DATE 12/11/97
ALTERATION EFFECTIVE 12/18/02
ALTERATION DATE 12/18/02

SHIP VIA
UNITED PARCEL SERVICE

PURCHASING AGENT

###ESTABLISHED PER RELEASE###

###SEE BODY OF ORDER/ALTERATION##

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | ITEM NAME | DESCRIPTION | PO NUMBER | DATE REQUIRED | TAX CODE I/ % | BASE UNIT PRICE | UNIT PRICE MULTIPLE AREA |
|---|---|---|---|---|---|---|---|---|---|
| M002687 | USER: CATHERINE M LORIA | | | THIS IS A MISC BLANKET ORDER FOR THE COMMODITY COPIER/FAX | DELIVERED | | | | |

25TH PROX.

AAREA BLANKET TCB03969 HAS BEEN ALTERED AS FOLLOWS#

EFFECTIVE DATE: 01/01/98  EXPIRATION DATE: 03/31/03

THIS ALTERATION LISTED IN THE FOLLOWING CURRENCY
USD DOLLAR (UNITED STATES)

ALTERATION 121802

TO EXTEND ORDER FOR THREE MONTHS

F.O.B.  DESTINATION UNLESS OTHERWISE INDICATED

PAYMENT TERMS NET

LAST PAGE

ORIGINAL