Hearing Date:  October 31, 2012 at 10:00 a.m. (ET)
Objection Deadline:  October 24, 2012 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Samantha Martin

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ )
                                                        )
In re:                                                  )    Case No. 12-12020 (MG)
                                                        )
RESIDENTIAL CAPITAL, LLC, et al.,                       )    Chapter 11
                                                        )
                                    Debtors.            )    Jointly Administered
                                                        )
------------------------------------------------------- )

**DEBTORS' OBJECTION TO MOTION OF KENNETH KRAL AND
OTHERS SIMILARLY SITUATED FOR RELIEF FROM STAY**

ny-1061512

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ..........................................................................................................................5

    A.     General Chapter 11 Case Background...................................................................5

    B.     Critical Case Milestones.......................................................................................6

    C.     The Kral Action ....................................................................................................6

OBJECTION .................................................................................................................................8

    A.     Relief From the Automatic Stay is Not Warranted at this Time ..........................8

    B.     Movant Has Failed To Satisfy Its Burden Under Sonnax ..................................10

          i.     The First and Second Sonnax Factors: (1) Whether relief would
                 result in a partial or complete resolution of the issues; and (2)
                 Lack of any connection with or interference with the bankruptcy
                 case ....................................................................................................10

          ii.     The Fourth Sonnax Factor: Whether a specialized tribunal with the
                 necessary expertise has been established to hear the cause of action.......15

          iii.    The Seventh Sonnax Factor: Whether litigation in another forum
                 would prejudice the interests of other creditors .................................15

          iv.    The Tenth Sonnax Factor: The interests of judicial economy and
                 the expeditious and economical resolution of litigation..........................17

          v.     The Eleventh Sonnax Factor: Readiness for trial ....................................19

           vi.    The Twelfth Sonnax Factor: Impact of the stay on the parties and
                 balance of harms....................................................................................20

    C.     Additional Sonnax Factors Support Continuation of the Stay ...........................23

          i.     The Fifth Sonnax Factor: whether the debtor's insurer has
                 assumed full responsibility for defending the action...............................23

           ii.     The Sixth Sonnax Factor: Whether the action primarily involves
                 third parties............................................................................................23

    D.     The Bankruptcy Court Has Authority to Liquidate Movant's Claims ................24

CONCLUSION ...........................................................................................................................24

<u>Exhibits:</u>

Exhibit 1 – Delehey Declaration

Exhibit 2 – Letter from GMAC Mortgage, LLC to Kenneth Kral Regarding Transfer of Servicing
       To Green Planet Servicing, LLC

Exhibit 3 – Excerpts from Transcript of Hearing, <u>In re Motors Liquidation Company f/k/a
General Motors Corp</u>., No. 09-50026 (REG), (Bankr. S.D.N.Y. Nov. 5, 2009)

# TABLE OF AUTHORITIES

**Page(s)**

CASES

In re Am. Reserve Corp.,
  840 F.2d 487 (7th Cir. 1988) ............................................................................... 22

In re Bally Total Fitness of Greater N.Y., Inc.,
  402 B.R. 616 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Carrera v. Bally
  Total Fitness of Greater N.Y., Inc. (In re Bally Total Fitness of Greater
  N.Y., Inc.), 411 B.R. 142 (S.D.N.Y. 2009) ................................................... passim

Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow),
  126 F.3d 43 (2d Cir. 1997) ................................................................................. 10

Carrera v. Bally Total Fitness of Greater N.Y., Inc. (In re Bally Total Fitness
  of Greater N.Y., Inc.),
  411 B.R. 142 (S.D.N.Y. 2009) ....................................................................... 11,13

In re The Celotex Corp.,
  140 B.R. 912 (Bankr. M.D. Fla. 1992) ............................................................... 21

City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),
  28 B.R. 324 (Bankr. S.D.N.Y. 1983) ................................................................. 23

In re Ephedra Prods. Liab. Litig.,
  329 B.R. 1 (S.D.N.Y. 2005) ........................................................................... 18,22

In re Johns-Manville Corp.,
  26 B.R. 420 (Bankr. S.D.N.Y. 1983), aff'd in relevant part, Johns-Manville
  Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.), 40 B.R. 219 (S.D.N.Y.
  984), rev'd and remanded on other grounds, Johns-Manville Corp. v. Asbesto
  Litig. Grp. (In re Johns-Manville Corp.), 41 B.R. 926 (S.D.N.Y. 1984) .............................. 13

In re Leibowitz,
  147 B.R. 341 (Bankr. S.D.N.Y. 1992) ................................................................. 10

Mazzeo v. Lenhart (In re Mazzeo),
  167 F.3d 139 (2d Cir. 1999) ................................................................................. 9

Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection,
  474 U.S. 494 (1986) ............................................................................................. 8

In re Motors Liquidation Co.,
  Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010) ......................... 10

iii

In re Musicland Holding Corp.,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ................................................................. 18

In re Northwest Airlines Corp.,
    No. 05-17930 (ALG), 2006 Bankr. LEXIS 477 (Bankr. S.D.N.Y. Mar. 13, 2006) ............... 21

In re Pioneer Commercial Funding Corp.,
    114 B.R. 45 (Bankr. S.D.N.Y. 1990) ................................................................. 14

Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),
    980 F.2d 110 (2d Cir. 1992) ........................................................................... 16

In re Residential Capital, LLC,
    No. 12-12020 (MG), 2012 Bankr. LEXIS 3726 (Bankr. S.D.N.Y. Aug. 14, 2012) ............... 18

In re Sacred Heart Hosp.,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) ................................................................. 11

Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),
    922 F.2d 984 (2d Cir. 1990) ......................................................................... 9,21

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
    907 F.2d 1280 (2d Cir. 1990) ....................................................................... 9,10

Stern v. Marshall,
    131 S. Ct. 2594 (2011) ................................................................................. 24

Teachers Ins. & Annuity Ass'n of Am. v. Butler,
    803 F.2d 61 (2d Cir. 1986) ............................................................................. 8

In re Woodward & Lothrop Holdings, Inc.,
    205 B.R. 365 (Bankr. S.D.N.Y. 1997) ............................................................ 17,22

Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.),
    104 B.R. 659 (D.N.J. 1989) ........................................................................... 20

**STATUTES**

11 U.S.C. § 362(a)(1) ................................................................................... 8

11 U.S.C. § 362(d)(1) ................................................................................... 9

**OTHER AUTHORITIES**

Transcript of Hearing, In re Motors Liquidation Company f/k/a General Motors Corp.,
    No. 09-50026 (REG), (Bankr. S.D.N.Y. Nov. 5, 2009) ....................................... 19,22

Residential Capital, LLC ("**ResCap**") and its affiliated debtors and debtors in possession

in the above-captioned Chapter 11 cases (collectively, the "**Debtors**") hereby submit this

objection (the "**Objection**") to (i) the *Notice of Motion of Kenneth Kral and Others Similarly*

*Situated for Relief from Stay* and the *Affirmation in Support of Motion for Relief from Stay*, each

dated September 24, 2012 [Docket No. 1536] (together, the "**Motion**"), and (ii) the

*Memorandum of Law in Support of Motion of Kenneth Kral and the Putative Class for Relief*

*from Automatic Stay as to GMAC Mortgage, LLC and Executive Trustee Services, LLC*, dated

September 24, 2012 [Docket No. 1540] (the "**Memorandum of Law**").  In support of hereof, the

Debtors submit the Declaration of Lauren Delehey, dated October 24, 2012 (the "**Delehey**

**Decl.**"), attached hereto as Exhibit 1, and respectfully represent:

### PRELIMINARY STATEMENT

1.      Kenneth Kral ("**Kral**") on his own behalf and purportedly on behalf of

others similarly situated ("**Movant**")[1] seeks relief from the automatic stay to proceed with

prepetition claims for equitable relief and damages against certain of the Debtors.  Movant filed a

Class Action Complaint (as amended, the "**First Amended Complaint**") against Debtor

Executive Trustee Services LLC ("**ETS**"), Debtor GMAC Mortgage, LLC ("**GMACM**") and

Does 1through 10 (collectively, the "**Defendants**") bringing an action (the "**Kral Action**") that is

currently pending in the United States District Court for the Central District of California (the

"**California Court**").  Movant Kral brings his claims on his own behalf and on behalf of all

other claimants similarly situated, which number may approach 30,000-40,000 claimants.  See

Compl. ¶ 128.  The Motion should be denied because Movant cannot satisfy his burden of

establishing sufficient cause as to why his complex and burdensome class action lawsuit should

---

[1] The Debtors understand that the case has been resolved as to Ms. Stricker, and thus, there is no pending case for which stay relief is necessary.  See Stipulation of Dismissal of Plaintiff Lisa A. Stricker's Claims with Prejudice, No. 2:12-01023 (C.D. Cal. Oct. 2, 2012), Docket No. 17.

be permitted to proceed notwithstanding the statutorily imposed breathing spell to which the

Debtors are entitled under section 362 of title 11 of the United States Code (the "**Bankruptcy**

**Code**").

       2.     First, the Motion ignores the vast burden that relief from the stay would

place upon the Debtors and greatly overestimates the benefits, if any, that might flow from a

grant of such relief.  Litigating the Kral Action, which has not advanced beyond the First

Amended Complaint and is nowhere near ready for trial, would, in all likelihood, require

significant discovery and preparation before it is litigated, would impose a substantial financial

burden on the Debtors (as they bear their own legal defense expenses and costs) and would

distract the Debtors' management and Legal Department (as defined below) and divert the

Debtors' resources at a critical juncture in the reorganization process.  (Delehey Decl. ¶ 6-8.)

Moreover, with the exception of unsupported allegations, Movant presents no evidence to

suggest that he would be prejudiced by maintenance of the stay where (i) the Debtors'

management and professionals are fully engaged in a highly complex process in an effort to meet

several critical milestones over the course of the next few months, which will, to a large degree,

dictate the outcome of these cases, (ii) Kral and the putative class members each should have the

right to individually defend against any foreclosure action based on the remedies sought as a

class; and (iii) time is not of the essence with respect to the Kral Action.

       3.     Moreover, the Kral Action is just one of a substantial number of lawsuits,

including putative class actions, and proceedings for prepetition claims currently pending against

the Debtors that are being managed by the Legal Department across the country.  (Delehey Decl.

¶ 4.)  The Debtors' highly complex bankruptcy cases (the "**Chapter 11 Cases**") have in just a

few short months reached a critical phase, and it is essential for the Debtors to continue to enjoy

the protection afforded by the stay, and particularly with respect to an action as inherently

burdensome as the Kral Action.[2]  Granting relief at this juncture would undoubtedly invite

countless other lift stay motions from the Debtors' myriad other prepetition claimants (including

claimants who are parties to the approximately 37 class actions pending against the Debtors),

opening the "floodgates" to litigation which would impose a burden on the Debtors and their

estates at a time when their remaining resources must be devoted to maximizing the value of

their assets through the pending asset sales (discussed further below), consummating various

settlements, complying in full with the Examiner's investigation,  proposing and confirming a

Chapter 11 plan, and proceeding with the Chapter 11 claims resolution process.  Forcing the

Debtors to address motions for relief from stay arising from, and potentially litigate, even a

fraction of the suits in which they are named as defendants (including as a consequence of

counterclaims) would deprive them of the "breathing spell" the automatic stay provides and

distract them from addressing the critical tasks necessary to achieve a successful resolution of the

Chapter 11 Cases.  (Delehey Decl. ¶ 7.)  The Bankruptcy Code provides an orderly and

centralized claims process meant to prevent a debtor from being forced to litigate claims in a

piecemeal, ad hoc manner.  Granting relief from the stay at this relatively early stage would in

effect require the Debtors to conduct the claims resolution process in hundreds of forums across

the country.

4.    The burden imposed on the Debtors in terms of the time, financial

resources, and attention necessary to defend themselves in the Kral Action far outweighs any

prejudice to Movant in preserving the automatic stay as to the Debtors.  This is particularly true

---

[2] The Kral Action involves allegations of (i) unlawful, unfair and deceptive business practice, including alleged improper acknowledgements, "robo-signing," and actual malice; and (ii) violations of the notice requirements of 15 U.S.C. § 1641(g).  Each of these causes of action would likely require intensive discovery, including depositions and other fact-based inquiries.

given the scope of the relief granted by the Supplemental Servicing Order.[3]  As the Court is

aware, this order grants borrowers limited stay relief to, among other things: (i) prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed, such as California), and (ii) prosecute certain actions in

borrower bankruptcy cases.  Thus, to the extent they constitute defenses to foreclosure, each of

the purported class members have the ability to challenge the underlying mortgage documents in

any judicial or non-judicial foreclosure proceeding.  Thus, modifying the automatic stay to allow

the Kral Action to proceed would impose on the Debtors a potentially significant yet completely

unnecessary burden in light of the relief afforded by the Supplemental Servicing Order.

5.    The Debtors have not brought a foreclosure action against Kral.  In

addition, as of October 2, 2012, the servicing rights for Kral's mortgage loan were transferred

from GMACM to Green Planet Servicing, LLC ("Green Planet"). (See letter annexed as Exhibit

2.)  This means that Kral is no longer a borrower whose mortgage loan is serviced by the

Debtors, and the Debtors will not bring a foreclosure action against Kral.  To the extent Kral

seeks to challenge any of his underlying mortgage documentation, he can raise such defense in

any foreclosure action, which, due to the transfer, may be commenced by a non-debtor entity.

(Delehey Decl. at ¶ 8.)  The Debtors' foreclosure-related actions have been and are continuing to

be reviewed on a larger scale, and the separate relief sought in Movant's First Amended

---

[3]    On July 13, 2012, the Court entered the *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "**Supplemental Servicing Order**").

4

Complaint, which is of potential massive proportions, is wholly unwarranted.[4]  The Debtors

therefore must oppose the Motion so that their estates—and thousands of other creditors—are

not burdened and prejudiced by this prepetition litigation proceeding against the Debtors.

6.      For the above reasons, and as more fully set forth below, the Debtors

respectfully request that this Court deny the Motion.

## BACKGROUND

### A.      General Chapter 11 Case Background

7.      On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a

voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors

are managing and operating their businesses as debtors in possession pursuant to Bankruptcy

Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Rule

1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  No trustee

has been appointed in the Chapter 11 Cases.

8.      On May 16, 2012, the United States Trustee for the Southern District of

New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured

creditors (the "**Creditors' Committee**"). On July 3, 2012, the U.S. Trustee appointed the

Honorable Arthur T. Gonzalez, former Chief Judge of this Court, as examiner (the "**Examiner**").

---

[4]      Prior to the Petition Date, several of the Debtors and their affiliates were the subjects of an investigation by the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision (together with the FRB, the FDIC and the OCC, the "**Consent Order Regulators**"), a few of the many entities regulating companies in the banking and financial services industries.  The Consent Order Regulators were investigating alleged abuses in the foreclosure processes employed by companies with major mortgage servicing operations, including the Debtors. In order to avoid further disruption to the Debtors' businesses as a result of the investigation, and to avoid the potential for lengthy litigation, Debtors ResCap and GMACM, along with non-debtor affiliates Ally Financial, Inc. and Ally Bank, entered into a consent order with the FRB and the FDIC, dated April 13, 2011 (the "**FRB Consent Order**"). Without admitting fault, ResCap. GMACM, AFI, and Ally Bank agreed, pursuant to the FRB Consent Order, to develop and implement certain risk management and corporate governance procedures under the guidance of the FRB in order to ensure prospective compliance with applicable foreclosure-related regulations and laws. Additionally, pursuant to the FRB Consent Order, GMAC Mortgage agreed to pay for an extensive, independent file review regarding certain residential foreclosure actions and foreclosure sales prosecuted by the Debtors, which is currently being undertaken by Pricewaterhouse Coopers LLC (the "**FRB Foreclosure Review**").

### B.    Critical Case Milestones

9.    Over the course of the next several weeks and months, the Debtors face a

number of critical case milestones, the satisfaction of which will require the full effort and

attention of the Debtors' management, employees, and the support of the Debtors' Legal

Department.  These milestones include, but are not limited to, the following:

- October 23, 2012 – Auction of the Debtors' servicing and origination platforms (the "Platform Sale");

- October 24, 2012 – Auction of the Debtors' "legacy" assets (the "Whole Loan Sale" and, together with the Platform Sale, the "Asset Sales");

- October 29, 2012 – Deadline to file objections to the Asset Sales;

- November 19 and 20, 2012 – Hearing to approve the Asset Sale;

- December 20, 2012 – Termination of the Debtors' exclusive period in which to file a Chapter 11 plan;

- December 23, 2012 – Deadline for the Debtors to submit replies to objections to the *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* (the "**9019 Motion**") and reply expert reports in connection with the 9019 Motion;

- January 7, 2013 – Deadline for the Debtors to file all adverse witness lists, exhibit lists, and direct testimony, and supplemental declarations of experts in connection with the 9019 Motion; and

- January 14-17, 2013 – Hearing to approve the 9019 Motion.

10.    In addition to these upcoming deadlines, the Debtors are continuing to

cooperate with the Examiner and facilitate the Examiner's investigation (including complying

with discovery demands and interviews, as discussed in further detail below), work with parties

in interest to formulate a Chapter 11 plan, and operate their businesses on a day-to-day basis.

### C.    The Kral Action

11.    As of the Petition Date, the Kral Action was pending in the California

Court.  (<u>See</u> Mot. at 1; Roberts Aff. ¶ 3.)  Movant is seeking, among other things, (i) equitable

relief, including an:

order requiring defendants to record in the public land records a "Notice of Improperly Acknowledged Document", or such similar Notice as the Court deems appropriate, each of which shall correspond and identify each specific improperly acknowledged document previously recorded in public land records … [and] an order requiring defendants to record in the docket or claims register of each court's official record, a "Notice of Improperly Acknowledged Document", or such similar Notice as the Court deems appropriate, each of which shall correspond and identify each specific improperly acknowledged document previously referenced within any pleading by defendants' [sic] in any court's docket or claims register.

(See Compl. at 49 (h) and (i).), and (ii) monetary damages, including (a) a civil penalty not to exceed $2,500 for each act of recording of an improperly acknowledged document or soliciting, coercing or influencing an improper notarial act, (b) with respect to class two members only, statutory damages of $4,000 per member related to GMACM's alleged violations of 15 U.S.C. § 1641(g), and (c) Movant's costs in the Kral Action, including attorneys' fees.

12.     The original complaint was filed on February 7, 2012.  (Case No. 12-01023, Docket No. 1.)[5]  On April 5, 2012, the Debtors filed a motion to dismiss the original complaint in its entirety, and on April 25, 2012, Movant filed the First Amended Complaint, addressing the issues raised in the Debtors' motion to dismiss.  (Case No. 12-01023, Docket Nos. 8, 9.)

13.     On May 8, 2012, the California Court granted the Debtors an extension of the time to file a response or reply to the First Amended Complaint to June 11, 2012.  (Case No. 12-01023, Docket No. 13.)  On May 9, 2012, the California Court entered a minute order vacating the Defendants motion to dismiss.  (Case No. 12-01023, Docket No. 14.)  The Kral Action is now stayed pursuant to the automatic stay, and no further proceedings have occurred in the Kral Action since the commencement of the Chapter 11 Cases.

---

[5] Prior to the commencement of the Kral Action, on May 19, 2011, Kral filed a Chapter 7 petition for bankruptcy protection.

14.     On September 24, 2012, Movant filed the Motion.  (Docket No. 1536.)

15.     On October 2, 2012, the parties entered a stipulation dismissing plaintiff

Lisa A. Stricker's claims with prejudice.  (Case No. 12-01023, Docket No. 17.)

16.     The Debtors have not yet filed a response to the First Amended

Complaint, and Movant has not moved for class certification.  Thus, the parties have yet to

undertake the vast amount of discovery relevant to a determination on class certification, should

Movant seek to do so.  If the California Court ultimately certifies a class, class members will

need to be noticed and given an opportunity to "opt-out" under Rule 23 of the Federal Rules of

Civil Procedure.  A trial on the merits for a certified class could be significantly more lengthy

and complex than a trial involving just Kral's claims.

### OBJECTION

### A.     Relief From the Automatic Stay is Not Warranted at this Time

17.     The automatic stay imposed by section 362(a) of the Bankruptcy Code is a

core provision of bankruptcy law that promotes the reorganization process by providing the

debtor with "a breathing spell from [its] creditors."[6]  Teachers Ins. & Annuity Ass'n of Am. v.

Butler, 803 F.2d 61, 65 (2d Cir. 1986) (holding that the automatic stay applied to an appeal that

otherwise would "distract . . . debtor's attention from its primary goal of reorganizing.").  It

affords "one of the fundamental debtor protections provided by the bankruptcy laws."  Midlantic

Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986) (citation and

---

[6]     Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that the filing of a
bankruptcy petition:

operates as a stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or employment of process, of a
judicial, administrative, or other action or proceeding against the debtor that was or could have been
commenced before the commencement of the case under this title, or to recover a claim against the debtor
that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

internal quotation marks omitted).  Likewise, it allows the debtor to manage and, where

appropriate, centralize all creditor actions against property of the estate, "so that

reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other

arenas." Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984,

989 (2d Cir. 1990).

>        18.        Section 362(d)(1) of the Bankruptcy Code provides that a court may

grant relief from the automatic stay for "cause." See 11 U.S.C. § 362(d)(1).  In the context of

stayed prepetition litigation, the Second Circuit has outlined the following 12-factor test to

determine whether good cause exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues,
> (2) the lack of any connection with or interference with the bankruptcy case,
> (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a
> specialized tribunal with the necessary expertise has been established to hear the
> cause of action, (5) whether the debtor's insurer has assumed full responsibility
> for defending the action, (6) whether the action primarily involves third parties,
> (7) whether litigation in another forum would prejudice the interests of other
> creditors, (8) whether the judgment claim arising from the other action is subject
> to equitable subordination, (9) whether movant's success in the other proceeding
> would result in a judicial lien avoidable by the debtor, (10) the interests of judicial
> economy and the expeditious and economical resolution of litigation,
> (11) whether the parties are ready for trial in the other proceeding and (12) the
> impact of the stay on the parties and the balance of harms.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280,

1286 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir.

1999) (vacating a district court order granting stay relief where the bankruptcy court had not

applied the Sonnax factors, made only sparse factual findings and ultimately did not provide the

appellate court "with sufficient information to determine what facts and circumstances specific to

the present case the court believed made relief from the automatic stay appropriate….").  In a

given case, however, not all of the factors will be relevant, and the court may disregard

irrelevant factors. See Mazzeo, 167 F.3d at 143.

19.    The moving party bears the initial burden to demonstrate, using the

relevant <u>Sonnax</u> factors, that good cause exists for lifting the stay.[7]  The movant's burden is

especially heavy if it is an unsecured creditor.  "[T]he general rule is that claims that are not

viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless

extraordinary circumstances are established to justify such relief."[8]

### B.    Movant Has Failed To Satisfy Its Burden Under <u>Sonnax</u>

20.    Movant relies on nine of the twelve <u>Sonnax</u> factors (factor numbers 1, 2,

4, 7, 8, 9, 10, 11, and 12) as cause to lift the stay.  Movant makes conclusory statements

throughout the <u>Sonnax</u> applications, and misconstrue the facts, or the law, or both with respect to

each such factor.  Additionally, consideration of the remaining relevant <u>Sonnax</u> factors

demonstrates that the stay should not be lifted.

### i.    The First and Second Sonnax Factors: (1) Whether relief would result in a partial or complete resolution of the issues; and (2) Lack of any connection with or interference with the bankruptcy case

21.    Movant's conclusory statements that the claims will be partially or

completely resolved and will not interfere with the bankruptcy cases are inaccurate.  (MOL at 8.)

22.    The first Sonnax factor does not support relief from the stay because

lifting the stay would **not** result in a resolution of the issues.  Permitting the Kral Action to go

forward at this time would push the Debtors into a morass of issues that would need to be

resolved with respect to Movant's claims and potentially thousands of other claimants.  If the

Kral Action were permitted to proceed, the Debtors would have to litigate the action from start to

finish, while contemporaneously navigating through the various issues involved in these Chapter

---

[7]    See <u>Sonnax</u>, 907 F.2d at 1285. <u>See</u> <u>Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow)</u>, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") (quotation omitted).

[8]    In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also In re Motors Liquidation Co., Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010).

11 Cases.  (See Delehey Decl. ¶¶ 12.)  Moreover, the threat of prosecution of a class action

weighs heavily against lifting the stay with respect to the first Sonnax factor.[9]  Should Kral move

to certify a class, the parties will likely engage in extensive discovery to make a determination on

class certification.  After completion of the class certification discovery and motion practice, the

court will conduct a pivotal hearing on class certification.  (Delehey Decl. ¶ 12.)  If the Court

ultimately certifies a class, class members will need to be noticed and given an opportunity to

"opt-out" under Rule 23 of the Federal Rules of Civil Procedure.[10]  A trial on the merits for a

certified class could be significantly more lengthy and complex than a trial involving just Kral's

claims.  (Delehey Decl. ¶ 12.)  Even if the judgment for monetary relief were ultimately rendered

against the Debtors in the Kral Action, such judgment would merely entitle Movant and any

putative class member to general unsecured claims to be paid proportionally with thousands of

other similar claims in accordance with the terms of a confirmed Chapter 11 plan.  There is no

reason Movant must liquidate its general unsecured claims ahead of the thousands of similarly-

situated creditors.

　　　　23.　　　The second Sonnax factor also militates against stay relief.  The Debtors

continue to devote significant attention to address the extraordinary operational difficulties that

arise in these complex Chapter 11 cases.  In addition to addressing day-to-day challenges, it is of

the utmost importance that the Debtors devote their complete efforts on the significant tasks

necessary to achieve the critical case milestones outlined above.  The proceedings scheduled to

occur over the next several months are absolutely critical to the Debtors' Chapter 11 cases.  The

---

[9] See In re Bally Total Fitness of Greater N.Y., Inc., 402 B.R.616, 623 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Carrera v. Bally Total Fitness of Greater N.Y., Inc. (In re Bally Total Fitness of Greater N.Y., Inc.), 411 B.R. 142 (S.D.N.Y. 2009); In re Sacred Heart Hosp., 177 B.R. 16, 23 (Bankr. E.D. Pa. 1995) (finding that an unresolved class certification question increases the uncertainty about the resolution of the matter were a stay to be lifted).

[10] See Carrera v. Bally Total Fitness of Greater N.Y., Inc. (In re Bally Total Fitness of Greater N.Y., Inc.), 411 B.R. 142 (S.D.N.Y. 2009) (finding that the class member notice and opt out process and the potential for a lengthy class action trials weigh against a finding that lifting the stay would result in complete resolution).

Debtors face an extremely ambitious schedule in order to meet several case milestones.  Among other things, the Debtors will seek Court approval of the Asset Sales and the 9019 Motion, will be working with various constituents regarding the formulation of their Chapter 11 plan, and will continue to work to facilitate investigations conducted by both the Creditors' Committee[11] and the Examiner.[12]

24.    Performing just these tasks in isolation is in and of itself an enormous burden.  At the same time, while operating their businesses in the ordinary course and meeting their ongoing obligations as debtors in possession attendant to the prosecution of the Chapter 11 Case, the Debtors must address the concerns of multiple constituencies, including United States government entities and governmental associations in the context of a Chapter 11 case and continue to meet their obligations under the Consent Order and DOJ/AG Settlement.[13]  Overall, given the objectives of these Chapter 11 Cases, including the unprecedented sale of a mortgage loan servicing and origination platform as a going concern, the full protection of the automatic stay is essential. Maintenance of this breathing spell permits the Debtors' management, employees, including the Debtors' in-house legal department (the "**Legal Department**") and the Debtors' retained professionals to focus their full time, effort and energy on achieving the Debtors' objectives for the benefit of all parties in interest.

---

[11] Indeed, the Creditors' Committee is continuing to investigate the claims of certain of the Debtors' prepetition lenders and recently filed a motion seeking standing to prosecute and settle certain claims on behalf of the Debtors.  See *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing it to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates*, dated September 24, 2012 [Docket No. 1546].  The Committee intends to commence litigation against certain of the Debtors' prepetition lenders to challenge the validity of their prepetition liens.

[12] On August 6, 2012, the Examiner filed the *Work Plan of Arthur J. Gonzalez, Examiner* [Docket No. 1010], indicating his intention to complete his investigation within six months.  However, at the hearing on October 10, 2012, the Examiner's counsel noted that, due to certain delays in the Debtors' cases, particularly with respect to the 9019 Motion, the investigation may continue for longer than six months.  (See Trans. at 75-76.)

[13] Such entities include, for example: FNMA; Federal Home Loan Mortgage Corporation; Governmental National Mortgage Association; Department of Housing and Urban Development; and the U.S. Department of Justice.

25.       Lifting the automatic stay to permit the Kral Action to proceed would distract the Debtors' management, the Legal Department and the retained professionals from handling the important reorganization matters described above, as well as others, and would unnecessarily increase their burdens.[14]  The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have a contractual obligation to defend.  The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case.  The Legal Department has been the primary group tasked with assisting in the development and implementation of the Supplemental Servicing Order.  (Delehey Decl. at ¶ 5.)

26.       As a result of the Debtors' bankruptcy filings and the entry of the Supplemental Servicing Order, the Legal Department's responsibilities have expanded to include (i) the review and analysis of individual claims as they arise in conjunction with internal business personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability of the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation counsel and its mortgage default counsel regarding the application of the Supplemental Servicing Order and other orders of this Court (and will continue to do so as new legal actions arise); (iii) assisting Chapter 11 counsel with the preparation of various motions, responses to motions for

---

[14]       Carrera, 411 B.R. at 148 (finding that allowing an action to proceed distracts the debtor's management, thus hindering its performance of its fiduciary duty to maximize the value of the bankruptcy estate); In re Johns-Manville Corp., 26 B.R. 420, 426 (Bankr. S.D.N.Y. 1983), aff'd in relevant part, Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.), 40 B.R. 219 (S.D.N.Y. 984), rev'd and remanded on other grounds, Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.), 41 B.R. 926, 928 (S.D.N.Y. 1984)) (finding that the extensive discovery process associated with class actions would irreparably injure the bankruptcy estate by distracting management).

relief from stay and other Court filings,[15] as well as various bankruptcy related tasks; (iv) assisting Chapter 11 counsel and internal business personnel with Chapter 11 reporting requirements; (v) assisting with pending and anticipated discovery with respect to the 9019 Motion, (vi) assisting with matters pertaining to the pending Asset Sales; (vii) complying with the Examiner's investigation; and (viii) preparing for the claims review and reconciliation process.[16]  These responsibilities are ongoing and will continue and will no doubt increase as these Chapter 11 cases progress.  (Delehey Decl. at ¶ 6.)  Imposing such distractions by granting the relief requested would run counter to the policies behind the automatic stay.[17]

27.    As noted above, the Kral Action has barely begun, and if the automatic stay were lifted, the Debtors would be obligated to draft an answer and potentially motions for dismissal and/or summary judgment, present oral arguments, conduct written discovery, conduct and participate in depositions, possibly engage expert witnesses and prepare for and conduct a trial.  (See Delehey Decl. ¶ 9.)  Due to its potential size (e.g., the First Amended Complaint purports to implicate literally thousands of filings) and inherent complexity given the volume of filings involved, the Kral Action threatens to interfere with the administration of the Chapter

---

[15]    By way of example, the Legal Department had a significant role in the drafting of the motion to approve the Supplemental Servicing Order and the interim Supplemental Servicing Order [Docket No. 181] and participated in the negotiation of the final Supplemental Servicing Order.  The Legal Department also, inter alia, assisted in the preparation of the Debtors' schedules and statement of financial affairs, their motion to approve ordinary course professionals, and all of the responses to the motions for relief from the automatic stay filed to date.

[16]    For example, over the next few months, the Debtors' personnel are scheduled to participate in interviews with the Examiner, of which two have already taken place and three are scheduled for next week.  In addition, the Examiner's initial document requests have required the production of a wide range of corporate records of various kinds as well as the production of tens of thousands of emails for six custodians dating back to 2006.  Complying with the current production timeframes requested by the Examiner has required the full-time services of 70 contract document reviewers, plus additional time from more than a dozen attorneys at the Debtors' outside counsel.  The Examiner has already served two sets of supplementary document requests and requested additional email productions from more than 10 new custodians.  The Debtors anticipate that the Examiner will likely request more documents and interviews as the investigation proceeds.

[17]    See In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990) (noting that the automatic stay is intended to provide the Debtors with a "breathing spell" to address the immediate concerns related to the restructuring of the Debtors' businesses).

14

11 Cases on a much higher magnitude than any single general liability claim. (Delehey Decl. at ¶ 9.) The result, then, is clear: this <u>Sonnax</u> factor weighs heavily against lifting the automatic stay.

### ii. The Fourth Sonnax Factor:  Whether a specialized tribunal with the <u>necessary expertise has been established to hear the cause of action</u>

28.    Movant contends that the California Court is better situated to hear the Kral Action because "Judge Wu was also the presiding judge for Hestrin v. American Home Servicing Inc., et al., case no. 2:12-cv-01025-GW-RZ … [which] involved an identical Unfair Competition claim for improper and illegal notarial practices as the Kral litigation.… [and] is therefore thoroughly knowledgeable about the legal theories and principals behind the Unfair Competition law." (Roberts Aff.  7; MOL at 4.)  While Judge Wu may be familiar with an allegedly similar case, the fourth <u>Sonnax</u> factor does not support relief from the stay because no specialized tribunal has been created to hear the claims brought in the Kral Action.  The Bankruptcy Code specifically contemplates resolving prepetition claims against the Debtors via a centralized claims resolution process shepherded by the bankruptcy courts.  This Court has recognized that it can interpret and apply state law in resolving claims through the bankruptcy process.   Movant's claims are no exception.  Accordingly, the fourth <u>Sonnax</u> factor weighs in favor of denying relief from the automatic stay.

### iii. The Seventh Sonnax Factor: Whether litigation in another <u>forum would prejudice the interests of other creditors</u>

29.    The interests of the Debtors' other creditors will be severely prejudiced if the automatic stay is lifted to allow the Kral Action to proceed against the Debtors at this juncture in the Chapter 11 Cases.  First, certain of the Debtors' employees would need to turn their attention from pressing Chapter 11 issues to defend against the Kral Action, including potential discovery that could be quite burdensome in terms of both time and cost, thereby

15

depleting estate resources and prejudicing other creditors.  Lifting the stay would also expose the

Debtors to have to defend countless other lift stay motions, including likely lift stay motions

from other class action claimants.  (Delehey Decl. at ¶ 6-7.)  Second, the burden on the Debtors

would be exorbitantly greater if the Movant was to succeed in its lawsuit (which the Debtors

vehemently contend Movant would not were the Debtors forced to defend the action).  Movant's

contention that, because its claims for damages cannot exceed $500,000, there will be little

detriment to the bankruptcy estate (see MOL at 9) misses the mark.  Movant seeks to compel the

Debtors to file tens of thousands of notices in the public land records, court dockets and claims

registers.   Movant is requesting relief of massive proportions, as the Debtors would be required

to employ a staff to evaluate the authenticity of each filed document (including those dating back

to 2008) and, if needed, file the requested "Notice of Improperly Acknowledged Document."

Thus, given the enormity of the relief sought by the Kral Action, the Debtors would have no

choice but to engage in a vigorous and expensive defense, thereby imposing a heavy burden on

the Debtors' employees and retained professionals.  At the same time, this will tax the Debtors'

financial resources, and cause wholly unnecessary interference with the Debtors Chapter 11

Cases.

       30.      Requiring the Debtors to defend the Kral Action in the California Court

would upend the "strong bankruptcy code policy that favors centralized and efficient

administration of all claims in the bankruptcy court...."  Publicker Indus. Inc. v. United States (In

re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992).  A successful case is in the

interests of all of the Debtors' creditors and, as demonstrated above, permitting the Kral Action

to proceed would impose a significant burden on the Debtors' estates both in terms of out-of-

16

pocket legal costs and the demands upon their personnel.  As a result, the seventh <u>Sonnax</u> factor

also weighs in favor of denying relief from the automatic stay.

### iv.  The Tenth Sonnax Factor: The interests of judicial economy and the expeditious and economical resolution of litigation

31.     Movant attempts to portray this <u>Sonnax</u> factor as weighing in favor of

lifting the automatic stay by arguing that the California Court is best equipped to adjudicate this

litigation because of its familiarity with the Kral Action.  (Roberts Aff. ¶ 7.)  The salient question

under this factor, however, is whether (i) maintaining the automatic stay will lead to a waste of

judicial resources or undermine the economical resolution of the underlying litigation, and

(ii) whether relief from the stay would hinder or delay the Debtors' efforts for a speedy and

effective reorganization process.  <u>See</u> <u>In re Bally Total Fitness of Greater N.Y., Inc.</u>, 402 B.R. at

624.  Very few judicial resources have been expended by the California Court, as the parties, to

date, have conducted no factual discovery, have not briefed or filed summary judgment motions

(indeed, the Debtors have not yet responded to the Movant's First Amended Complaint), have

not yet engaged expert witnesses, or conducted discovery with respect thereto.   (Delehey Decl.

¶ 10.)  Maintaining the automatic stay, therefore, will not lead to a waste of judicial resources,

nor will maintenance of the stay undermine an economical resolution of the litigation.  <u>See</u> <u>Bally</u>,

402 B.R. at 624.

32.     Further, the Debtors' priority at this time is in ensuring a speedy and

effective reorganization process,  which may be hindered if they are forced to litigate this or any

other class action suit during the pendency of the Chapter 11 Cases, and particularly at this

juncture in the Chapter 11 Cases.[18]  Moreover, the breathing spell afforded by the imposition of

---

[18]     <u>Bally</u>, 402 B.R. at 624 (finding that lifting the stay to permit a class action would hinder debtor's
efforts for a speedy and effective reorganization process); <u>In re Woodward & Lothrop Holdings, Inc.</u>, 205 B.R. 365,
376 (Bankr. S.D.N.Y. 1997) ("[A] class action may 'gum up the works' because until complete, the bankruptcy

the automatic stay is designed precisely to shield the Debtors from having to defend against

Movant's claims for equitable relief.  According to Movant, the relief they seek implicates tens

of thousands of filed documents, for which Movant requests that the Debtors file "a Notice of

Improperly Acknowledged Document", or such similar Notice as the Court deems appropriate,

each of which shall correspond and identify each specific improperly acknowledged document

previously recorded in public land records [and filed as an exhibit or referenced within any

pleading by defendants' in any court's docket or claims register.]"  (See Compl. at 49.)

     33.    This Court has previously denied stay relief where the movant requested

affirmative relief from the Debtors.  See In re Residential Capital, LLC, No. 12-12020 (MG),

2012 Bankr. LEXIS 3726 (Bankr. S.D.N.Y. Aug. 14, 2012) (lifting the automatic stay to permit

certain counterclaims in a state law foreclosure action, but holding that "[a]bsent further stay

relief, however, [movant] may not proceed with his counterclaims to the extent he seeks

affirmative damages relief from the Debtors."); Memorandum Opinion Denying the Gilbert

Motion to Dismiss or Vacate the Automatic Stay at 8, In re Residential Capital LLC, No. 12-

12020 (MG) (Bankr. S.D.N.Y. Aug. 8, 2012), Docket No. 1054 ("But the stay remains in place

with respect to affirmative claims against the Debtors seeking to recover damages.  Claims for

damages against the Debtors are the usual grist for the bankruptcy claims allowance process and

absent unusual circumstances the bankruptcy court remains the appropriate forum to resolve such

claims. Permitting courts around the country to adjudicate claims risks diverting the attention of

Debtors' personnel from pressing issues in the chapter 11 case."); Memorandum Opinion and

---

court cannot determine the entitlement of the other creditors.") (citation omitted); In re Ephedra Prods. Liab. Litig.,
329 B.R. 1, 4 (S.D.N.Y. 2005) ("[G]ranting of class action claims at this late juncture would wholly disrupt and
undercut the expeditious execution of the Plan of Reorganization."); In re Musicland Holding Corp., 362 B.R. 644,
656 (Bankr. S.D.N.Y. 2007) (refusing to lift automatic stay because allowing putative class members to lodge a
"class claim would seriously delay the administration of the case ….").

Order Denying Aurora Bank's Motion to Modify the Automatic Stay Under 11 U.S.C. § 362(d)
at 7, In re Residential Capital LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 7, 2012), Docket
No. 1021 (same).

34.     The interests of judicial economy and the economical resolution of
litigation would best be served by resolving Movant's claims against the Debtors, including his
purported claims for equitable relief, through the uniform bankruptcy claims process, which will
be utilized to address the thousands of claims filed against these estates, including claims
asserted in the hundreds of legal actions pending against the Debtors.[19]

**v.   The Eleventh Sonnax Factor: Readiness for trial**

35.     The Kral Action is nowhere near ready for trial.  The only significant
document filed in the Kral Action is the First Amended Complaint.  The Debtors did not even
file a response to the First Amended Complaint due to the intervening Chapter 11 Cases.  The
parties have conducted no discovery, and Movant has not yet moved for class certification.
(Delehey Decl. ¶ 11.)  Further, Movant's contention that "their claims have already been tested
by Debtor's motion to dismiss in the district court" (see MOL at 10) is inaccurate.  The Debtors
filed a motion to dismiss, and before the Court could rule on it, Movant filed the First Amended
Complaint.  That process does not move this case any closer to trial whatsoever; in fact, it could
be considered a step backwards because the period has not yet expired for the Debtors to file a
response to the First Amended Complaint.  Accordingly, the eleventh Sonnax  factor weighs
heavily against lifting the automatic stay.

---

[19]     Judge Gerber noted in In re General Motors Corp., "[b]ankruptcy litigation is typically as efficient
or more efficient than litigation in the district courts in connection with plenary litigation."  Transcript of Hearing at
41:18-20, In re Motors Liquidation Company f/k/a General Motors Corp., No. 09-50026 (REG), (Bankr. S.D.N.Y.
Nov. 5, 2009) (relevant excerpts attached as Exhibit 3 hereto).

### vi. The Twelfth Sonnax Factor: Impact of the stay
on the parties and balance of harms

36.    Movant has not demonstrated how the continued suspension of the Kral

Action results in any material prejudice to Movant.  Movant's allegation that its continues to be

harmed by the Debtors' conduct is unavailing.  (See MOL at 10.)  To the extent applicable, each

of the putative class members have the relief available to them under the Supplemental Servicing

Order.

37.    On the other hand, the cost to the Debtors of lifting the automatic stay at

this stage of the Chapter 11 Cases, particularly in light of the critical hearings and deadlines

facing the Debtors before the end of this year and early next year, is substantial in terms of the

time, financial resources, and attention necessary to defend themselves in the Kral Action.  (See

Delehey Decl. ¶¶ 6-7.)  At this critical phase in the Chapter 11 Cases, the estates' limited

resources are better spent on meeting the case milestones outlined above and the overall

reorganization process, rather than litigating complex and expensive class action lawsuits.

Forcing a debtor to defend against suits and proceedings brought in other venues distracts and

hinders a debtor from focusing on its own reorganization efforts.[20]  As described above, the

Debtors are working diligently towards completing the Asset Sales, obtaining approval of the

RMBS settlement, complying with the Examiner investigation, and participating in the Chapter

11 plan process.  In the meantime, the Debtors need the protection of the automatic stay to afford

themselves the "breathing space" necessary to allow them to restructure and preserve the value

of their assets for the benefit of their creditors.

---

[20]    See Bally, 402 B.R. at 624 (finding that class actions distract the debtor from the central tasks of
stabilizing operations and cash flows and hence harms all creditors); Zenith Labs., Inc. v. Sinay (In re Zenith Labs.,
Inc.), 104 B.R. 659, 666 (D.N.J. 1989) (finding that allowing debtors a sufficient window to reorganize their estates
serves the public interest more than allowing class actions to be resolved sooner).

38.    In addition to the Kral Action, the Debtors are defendants in

approximately thirty-seven (37) other putative or certified class actions pending in various

forums across the United States.  (Delehey Decl. ¶ 4.)  The likelihood that motions for relief

from stay would be filed by other putative class action litigants in the event that the Motion is

granted, and the attendant costs associated with defending such motions and litigation if relief

were to be granted, would impose an untold burden on the Debtors' estates.[21]  Litigating such lift

stay motions or any single class action suit will result in a drain on the Debtors' resources and an

untimely distraction from the reorganization process.  (Delehey Decl. ¶ 6-8.)  The Debtors

should not have to divert their resources to respond to a multitude of "lift stay" requests or

defend against the underlying class claims at the same time as they are attempting to sell their

businesses as a going concern, consummate settlements, and formulate, propose and confirm a

plan.[22]  During the pendency of the Chapter 11 Cases, the limited resources of the Debtors'

estates are much better spent on the Debtors' restructuring efforts, rather than litigating lawsuits

spread throughout the country.  Judge Gerber succinctly framed this concern in General Motors:

> [I]f I were ever to allow relief from the stay on a garden variety
> claim of this type there would indeed be the risk, if not the
> certainty, that every other party who thinks he or she has a good
> claim against the estate pending in another jurisdiction would be
> asking me to defend -- to provide relief from the stay and require
> the debtors to be litigating claims of this character all over the

---

[21]    See Bally, 402 B.R. at 623 (finding that allowing the stay to be lifted for one class can open the floodgates to many similar actions, which would further interfere with the resolution of the bankruptcy case); In re Northwest Airlines Corp., No. 05-17930 (ALG), 2006 Bankr. LEXIS 477, at *5-6 (Bankr. S.D.N.Y. Mar. 13, 2006) (when there are many potential claims being held back by a stay, the court should consider the interference with the bankruptcy proceeding if all of those matters were allowed to continue, not just the individual case at bar); In re The Celotex Corp., 140 B.R. 912, 916 (Bankr. M.D. Fla. 1992) (declining to release a stay for fear of unleashing "an avalanche of litigation").

[22]    See, e.g., In re Northwest Airlines Corp., 2006 Bankr. LEXIS 477, at *6 (stating that "[t]o allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and . . . [t]he distraction and expense of defending such litigation would interfere with judicial economy and the Debtors' process of reorganization.") (citing Ionosphere Clubs, 922 F.2d at 989); Bally, 402 B.R. at 623 ("allowing the actions to proceed would distract the Debtors' management from the bankruptcy proceeding . . . thereby affecting the interests of other creditors.").

21

country. The floodgates concern that the estate articulated is indeed
a very serious one.[23]

39.     This concern is also real in the Chapter 11 Cases; since the first motion

seeking relief from stay was filed, dozens of additional motions seeking relief from the automatic

stay to proceed with litigation have been filed and the Debtors and their counsel have received

several additional informal requests for such relief.  The balance of the harms clearly favors

maintaining the automatic stay with respect to the Kral Action.

40.     Meanwhile, Movant suffers virtually no hardship on account of the

continued imposition of the automatic stay.  No evidence has been presented to suggest that time

is of the essence with respect to resolution of the Movant's claims.  Movant's unsupported

allegations of continuing harm do not suffice.  Even if the Movant's claims are meritorious, he

will be accorded general unsecured claims against the Debtors' estates.  Movant will experience

no great benefit if awarded such claims sooner rather than later, and are similarly situated to each

other potential creditor of the Debtors' estates.  Indeed, the Debtors' objective remains to

proceed with the plan confirmation process in an expedited fashion.  This is similarly true as to

any potential class certification.  Though class treatment may be beneficial with respect to other

civil actions in consolidating the adjudication of common issues, this advantage disappears in the

context of a bankruptcy.  The centralized bankruptcy claims resolution process provides the same

procedural advantages as a class action because it concentrates all disputes in one forum.[24]

Indeed, each of the purported class members has the opportunity to file a proof of claim in these

---

[23]     Transcript of Hearing at 45:2–45:10 (Nov. 5, 2009) (denying motion to lift stay because <u>Sonnax</u>
factors weigh against lifting the stay).

[24]     <u>Woodward</u>, 205 B.R. at 376 (citing <u>In re Am. Reserve Corp.</u>, 840 F.2d 487, 490 (7th Cir. 1988))
("A bankruptcy proceeding offers the same procedural advantages as the class action because it concentrates all
the disputes in one forum."); <u>see</u> <u>also</u> <u>Ephedra Prods.</u>, 329 B.R. at 9 ("[S]uperiority of the class action vanishes when the
'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file
proofs of claim without counsel and at virtually no cost. In efficiency, bankruptcy is superior to a class action….").

Chapter 11 cases.  Thus, as discussed above, class action relief is not necessary here, where stay

relief has already been granted to allow the putative class action members to pursue these

remedies on an individual basis in their judicial or non-judicial foreclosure proceedings.

### C.   Additional <u>Sonnax</u> Factors Support Continuation of the Stay

41.   Although the Debtors are under no affirmative obligation to demonstrate

that relief from the stay is inappropriate where a plaintiff has failed to meet its burden to show

"cause" (as is the case here), the Debtors nevertheless submit that additional <u>Sonnax</u> factors

weigh in favor of preserving the stay.

### i.   The Fifth Sonnax Factor: whether the debtor's insurer<br>has assumed full responsibility for defending the action

42.   The Debtors pay their legal defense fees and costs out-of-pocket for this

action (and many others).  As a result, requiring the Debtors to defend the Kral Action will result

in substantial out-of-pocket defense costs for outside counsel fees and expenses alone.  (Delehey

Decl. ¶ 14.)  This factor weighs heavily against granting relief from the automatic stay.

### ii.   The Sixth Sonnax Factor:<br>Whether the action primarily involves third parties

43.   The only named defendants in the Kral Action are Debtor ETS and Debtor

GMACM, (Compl. at 1-2.), thus, the Debtors would be required to actively participate in the

Kral Action to avoid facing an adverse judgment.   The court should not grant relief from the

stay under the sixth <u>Sonnax</u> factor if the debtor is the main party to the litigation. <u>See</u> <u>City Ins.

Co. v. Mego Int'l Inc. (In re Mego Int'l Inc.)</u>, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying

motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of

proceeds and the action impacted the "property and administration of [the debtor's] estate,

suggesting that continuance of the stay was proper").  Accordingly, this <u>Sonnax</u> factor weighs

against granting relief from the automatic stay.

23

### D.    The Bankruptcy Court Has Authority to Liquidate Movant's Claims

44.    Movant's citation to <u>Stern v. Marshall</u>, 131 S. Ct. 2594, 2609 (2011) is

unavailing and provides no support for the relief requested, particularly at this juncture of the

Chapter 11 Cases.  First, Movant asserts monetary claims, which are undisputably within this

Court's core jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B), and claims for equitable relief,

which may constitute claims within the purview of section 105 of the Bankruptcy Code.  <u>See</u>

Memorandum Opinion and Order Denying the Ulbrich Motion to Lift the Automatic Stay, at 8,

<u>In re Residential Capital LLC</u>, No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 16, 2012), Docket

No. 1193 ("Damages claims against the Debtors, as in the Ulbrich Litigation, are the usual grist

for the bankruptcy claims allowance process; absent unusual circumstances the bankruptcy court

remains the appropriate forum to resolve such claims.")  In any event, Movant concedes this

Court's non-core jurisdiction over Movant's claims under the California Unfair Competition

Law.  (<u>See</u> MOL at 11-12.)

### CONCLUSION

45.    Based on the weight of settled authority and its application to the Motion

as described above, the Debtors respectfully submit that the Movant has failed to meet its

burden.  Substantially all of the applicable <u>Sonnax</u> factors weigh heavily in favor of maintaining

the automatic stay.  As such, the Court should deny the Motion.

ny-1061512

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an

Order denying the Motion and grant such other relief as the Court deems proper.


New York, New York                    /s/ Norman S. Rosenbaum
Dated: October 24, 2012               Gary S. Lee
                                      Norman S. Rosenbaum
                                      Samantha Martin
                                      MORRISON & FOERSTER LLP
                                      1290 Avenue of the Americas
                                      New York, New York 10104
                                      Telephone: (212) 468-8000
                                      Facsimile: (212) 468-7900

                                      *Counsel to the Debtors and
                                      Debtors in Possession*

ny-1061512