# EXHIBIT 1

**<u>Delehey Declaration</u>**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman Rosenbaum
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF LAUREN GRAHAM DELEHEY,**
**IN-HOUSE LITIGATION COUNSEL AT RESIDENTIAL CAPITAL, LLC,**
**IN SUPPORT OF DEBTORS' OBJECTION TO MOTION OF KENNETH KRAL AND**
**OTHERS SIMILARLY SITUATED FOR RELIEF FROM STAY**

I, Lauren Graham Delehey, declare as follows:

**A.     Background and Qualifications**

1.     I serve as In-House Litigation Counsel in the legal department (the "**Legal Department**") at Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**"). I have held this position since I joined ResCap on August 1, 2011. In my role as In-House Litigation Counsel at ResCap, I am responsible for the management of residential mortgage-related litigation, including class actions, mass actions and multi-district litigation. I am authorized to

ny-1061528

submit this declaration (the "**Declaration**") in support of the *Debtors' Objection To Motion of Kenneth Kral and Others Similarly Situated for Relief from Stay*, dated September 24, 2012 (the "**Objection**").[1]

2. In my capacity as In-House Litigation Counsel, I am generally familiar with the Debtors' litigation matters, including the Kral Action. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' litigation case files, books and records as well as other relevant documents; my discussions with other members of the Legal Department; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' litigation matters, financial condition and history. In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

B. **Litigation Pending Against the Debtors**

3. As of October 22, 2012, the Debtors by way of direct claims and counter-claims are defendants, respondents, or are contractually obligated to defend third parties in approximately 1,911 pending litigation and contested foreclosure and bankruptcy matters filed in jurisdictions all around the country. Approximately fifty-nine percent (59%) of these matters concern either (i) defenses asserted in foreclosure, eviction or borrower bankruptcy proceedings

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

ny-1061528                                                2

or (ii) title disputes, both of which are exempted from the automatic stay by the Supplemental Servicing Order; fourteen percent (14%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not subject to the stay, notwithstanding the Supplemental Servicing Order; twenty-six percent (26%) are stayed and one percent (1%) is still under review for their status.  Thus, approximately seventy-three percent (73%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not stayed and continue to proceed in various jurisdictions across the country.  This is in addition to the tens of thousands of foreclosure actions and borrower bankruptcies to which the Debtors are parties in actions pending throughout the fifty states primarily managed by the Debtors' mortgage default group.  Notwithstanding the application of the Supplemental Servicing Order, there are still a substantial number of cases –approximately 26% of 1,911 (or 496) cases – that are stayed by the automatic stay, including the Kral Action.

4.      In addition to the Kral Action, the Debtors are defendants in approximately thirty-seven (37) other putative or certified class actions pending in various forums across the United States.

C.      **Lifting the Automatic Stay Will Interfere With the Chapter 11 Cases**

5.      The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have a contractual obligation to defend.  The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition

ny-1061528                                          3

and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial.  The Legal Department has been the primary group tasked with assisting in the development and implementation of the Supplemental Servicing Order.

        6.      As a result of the Debtors' bankruptcy filings and the entry of the Supplemental Servicing Order, the Legal Department's responsibilities have increased to include (i) the review and analysis of individual claims as they arise in conjunction with internal business personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability of the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation counsel and its mortgage default counsel regarding the application of the Supplemental Servicing Order (and will continue to do so as new legal actions arise); (iii) assisting Chapter 11 counsel with the preparation of various motions, responses to motions for relief from stay and other Court filings,[2] as well as various bankruptcy related tasks; (iv) assisting Chapter 11 counsel and internal business personnel with Chapter 11 reporting requirements; (v) assisting with pending and anticipated discovery with respect to the 9019 Motion; (vi) assisting with matters pertaining to the pending Asset Sales; and (vii) complying with the Examiner's investigation.  As the Chapter 11 Cases proceed, the Legal Department will take active roles in the claims

---

[2] By way of example, the Legal Department had a significant role in the drafting of the motion to approve the Supplemental Servicing Order and the interim Supplemental Servicing Order [Docket No. 181] and participated in the negotiation of the final Supplemental Servicing Order.  The Legal Department also, *inter alia*, assisted in the preparation of the Debtors' schedules and statement of financial affairs, their motion to approve ordinary course professionals, and all of the responses to the motions for relief from the automatic stay, as well as other motions filed to date.

ny-1061528             4

reconciliation and plan and disclosure statement processes. These responsibilities are ongoing and will continue and no doubt expand as these Chapter 11 Cases progress.

7. Given the comprehensive and detailed role the Legal Department plays in (i) managing of the Debtors' litigation and contested foreclosure and bankruptcy matters; (ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy counsel and financial advisors with several tasks associated with the pending sales of the servicing platform, legacy assets, RMBS settlement and attendant litigation, not to mention the various motions and other filings in the Debtors' bankruptcy case, carrying out its ordinary course tasks while at the same time discharging its duties in the Chapter 11 Cases has been and will continue to be a monumental task. Permitting legal actions—particularly class actions—otherwise stayed by the Debtors' bankruptcy to proceed (not to mention allowing entirely new actions to be commenced), therefore, would create a significant burden on the Debtors by adding an additional workload of approximately 496 cases, diverting the Legal Department's and other critical employees' attention from the critical tasks of running the Debtors' businesses, and significantly increasing the Debtors' out-of-pocket legal costs.

8. As of October 2, 2012, the servicing rights for Kral's mortgage loan were transferred from GMACM to Green Planet Servicing, LLC (see Exhibit 2 of the Objection). Prior to the transfer, the Debtors had not brought a foreclosure action against Kral. This means that Kral is no longer a borrower whose mortgage loan is serviced by the Debtors, and the Debtors can no longer bring a foreclosure action against Kral. To the extent Kral seeks to challenge the acknowledged documents, such defense could be raised as a defense to any such foreclosure action commenced by a non-debtor entity.

ny-1061528                                    5

9. Prosecuting the Kral class action would result in a significant burden to the Debtors. The Kral Action has barely begun, and if the automatic stay were lifted, the Debtors would be obligated to draft an answer and potentially motions for dismissal and/or summary judgment, present oral arguments, conduct written discovery, conduct and participate in depositions, possibly engage expert witnesses and prepare for and conduct a trial. Due to its potential size (e.g., the First Amended Complaint purports to implicate literally thousands of filings) and inherent complexity given the volume of filings Movant alleges to be in issue), the Kral Action threatens to interfere with the administration of the Chapter 11 Cases on a much higher magnitude than any single general liability claim. Further, if the stay were lifted, given the enormity of the relief sought by the Kral Action, the Debtors would have no choice but to engage in a vigorous and expensive defense, thereby imposing a heavy burden on the Debtors' employees and retained professionals, while taxing the Debtors' financial resources, and resulting in a wholly unnecessary distraction to the Debtors' administration of the Chapter 11 cases.

**D.     The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation Weigh in Favor of Maintaining the Automatic Stay**

10. The Kral Action was stayed with respect to the Debtors shortly after the Movant's First Amended Complaint was filed. Very few judicial resources have been expended by the California Court, as the parties, to date, have conducted no factual discovery, have not briefed or filed summary judgment motions (indeed, the Debtors have not yet responded to the Movant's First Amended Complaint), have not yet engaged expert witnesses, or conducted discovery with respect thereto.

**E.     The Kral Action Is Not Ready For Trial**

11. The Kral Action is nowhere near ready for trial. The only significant document filed in the Kral Action is the First Amended Complaint. The Debtors have not filed a

response to the First Amended Complaint, or otherwise responded, due to the intervening Chapter 11 Cases. The parties have conducted no factual discovery, have not briefed or filed summary judgment motions, have not yet engaged expert witnesses, or conducted discovery with respect thereto, and Movant has not yet moved for class certification.

      **F.**    **Relief from the Automatic Stay Would Not Result in a Partial or Complete Resolution of the Issues**

      12.    Permitting the Kral Action to go forward at this time would push the Debtors into a morass of issues that would need to be resolved with respect to Movant's claims and potentially thousands of other claimants. If the Kral Action were permitted to proceed, the Debtors would have to litigate the action from start to finish, while contemporaneously navigating through the various issues involved in these Chapter 11 Cases. Moreover, should Kral move to certify a class, the parties will likely engage in extensive discovery to make a determination on class certification. After completion of the class certification discovery and motion practice, the court will conduct a pivotal hearing on class certification. If the Court ultimately certifies a class, class members will need to be noticed and given an opportunity to "opt-out" under Rule 23 of the Federal Rules of Civil Procedure. A trial on the merits for a certified class could be significantly more lengthy and complex than a trial involving just Kral's claims. In addition, in light of the allegations as contained in the Complaint, which according to Movant implicate tens of thousands of filings, the Kral Action would conceivably involve discovery of the Debtors of an immense magnitude.

      **G.**    **No Specialized Tribunal has Been Established to Hear the Kral Action**

      13.    As far as I am aware, no specialized tribunal has been created to hear any of the claims involved in the Kral Action. The Kral Action raises both federal and state law claims.

ny-1061528                                                      7

**H.     No Insurer has Assumed Responsibility for the Kral Action**

14.     In the vast majority of the cases, including the Kral Action, the Debtors pay their legal defense fees and costs out-of-pocket.  As a result, requiring the Debtors to defend the Kral Action will result in substantial out-of-pocket defense costs for outside counsel fees and expenses alone.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  October 24, 2012

    /s/ Lauren Graham Delehey
Lauren Graham Delehey
In-House Litigation Counsel for Residential Funding, LLC