Jeffrey S. Powell
Daniel T. Donovan
Judson D. Brown
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C.  20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

− and −

Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Counsel for Ally Financial Inc. and Ally Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC., et al. | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF ALLY FINANCIAL INC.'S**
**REPLY MEMORANDUM IN FURTHER RESPONSE TO THE**
**COURTS' OCTOBER 16 ORDER ON THE PRODUCTION OF RESCAP LOAN FILES**

PLEASE TAKE NOTICE that Ally Financial Inc. ("*AFI*") hereby files *Ally's Reply Memorandum in Further Response to the Courts' October 16 Order on the Production of ResCap Loan Files* (the "*Reply*") and *Reply Declaration of Reginald R. Goeke in Response to the Courts' October 16 Order on the Production of ResCap Loan Files*, both of which were filed

concurrently in *Federal Housing Fin. Agency v. Ally Fin. Inc.*, No. 11 Civ. 7010 (DLC)

(S.D.N.Y. Oct. 6, 2011).

| | |
|---|---|
| New York, New York | /s/ *Judson D. Brown* |
| Dated: October 25, 2012 | Jeffrey S. Powell |

Daniel T. Donovan
Judson D. Brown
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C.  20005
Telephone:     (202) 879-5000
Facsimile:     (202) 879-5200

− and −

Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Counsel for Ally Financial Inc. and Ally Bank*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – x

| | | |
|---|---|---|
| FEDERAL HOUSING FINANCE AGENCY, etc., | : | 11 Civ. 7010 (DLC) |
| | : | |
| Plaintiff, | : | |
| | : | |
| – against – | : | |
| | : | |
| ALLY FINANCIAL INC. f/k/a GMAC, LLC et al., | : | |
| | : | |
| Defendants. | : | |

– – – – – – – – – – – – – – – – – – – – x

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – x

| | | |
|---|---|---|
| In re | : | 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC et al., | : | |
| Defendants. | : | |

– – – – – – – – – – – – – – – – – – – – x

**ALLY'S REPLY MEMORANDUM IN FURTHER RESPONSE
TO THE COURTS' OCTOBER 16 ORDER
ON THE PRODUCTION OF RESCAP LOAN FILES**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.    AFI DOES NOT HAVE POSSESSION, CUSTODY OR CONTROL OVER THE
      LOAN FILES ................................................................................................................ 2

    A.    AFI's Status as Former Parent Company to the ResCap Debtors Does Not
            Support a Finding of Control. .............................................................................. 3

    B.    The Shared Services Agreement Does Not Give AFI Control Over the
            ResCap Debtors' Loan Files.. .............................................................................. 4

        1.    The Production of the Loan Files Is Outside the Scope of the Legal
                  Services Statement of Work between AFI and ResCap ............................ 5

        2.    The Production of the Loan Files is Outside the Scope of the
                  Record Services Statement of Work Between AFI and ResCap ............... 7

        3.    Other Provisions of the Shared Services Agreement Preclude a
                  Finding that ResCap Is Obligated to Make the Loan Files Available. .... 10

    C.    FHFA Fails to Demonstrate that AFI Has the Practical Ability to
            Obtain the Loan Files Under the Existing Terms of the Shared
            Services Agreement.. .......................................................................................... 11

II.   IN LIGHT OF THE UNIQUE CIRCUMSTANCES OF THIS CASE, AFI IS
      WILLING TO ASK RESIDENTIAL CAPITAL TO PRODUCE THE LOAN
      FILES AS AN ADDITIONAL SERVICE UNDER THE SHARED SERVICES
      AGREEMENT ............................................................................................................. 12

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Hunter Douglas, Inc. v. Comfortex Corp.,*
No. 98 Civ. 479, 1999 U.S. Dist. LEXIS 101(S.D.N.Y. Jan. 11, 1999) ...................................3

*In re Lozano,*
392 B.R. 48 (Bankr. S.D.N.Y. 2008) .......................................................................................2

*In re NTL Sec. Litig.,*
244 F.R.D. 179 (S.D.N.Y. 2007) .............................................................................................3

*Marine Midland Bank Southern v. Thurlow,*
53 N.Y.2d 381 (1981) ...............................................................................................................5

*Scherer v. Kane,*
284 Fed. App'x 850 (2d Cir. 2008)...........................................................................................5

*SIN, Inc. v. Dep't of Fin. of City of New York,*
513 N.Y.S.2d 430 (N.Y. App. Div. 1987) ................................................................................5

*Ssangyong Corp. v. Vida Shoes, Int'l, Inc.,*
No. 03 Civ. 5014, 2004 U.S. Dist. LEXIS 9101 (S.D.N.Y. May 19, 2004) .............................3

*U.S. Fidelity & Guar. Co. v. Am. Re-Ins. Co.,*
No. 604517/02, 2010 WL 3536828 (N.Y. Sup. Aug. 17, 2010)................................................4

## OTHER AUTHORITIES

11 *Williston on Contracts* § 33:9 (4th ed.)........................................................................................5

## **INTRODUCTION**

There is no dispute in this case about which entity has possession, custody and control over the Loan Files. The Debtors, FHFA, and AFI all agree that those Files are held by the ResCap Debtors. Indeed, FHFA acknowledges that it knew two years ago, when it subpoenaed the Loan Files from RFC (a subsidiary of ResCap), that the Debtor entities possessed and controlled those Loan Files. FHFA Resp. at 3. At no point prior to ResCap's bankruptcy did FHFA look to AFI to produce those Loan Files. It was only *after* the ResCap bankruptcy, in an attempt to circumvent the post-bankruptcy stay applicable to ResCap's assets, that FHFA began to argue that AFI has control over the Loan Files. But the ResCap bankruptcy process did not give AFI some new control over ResCap's assets. If anything, it put even greater separation between ResCap and AFI.

FHFA's argument that AFI has control over and must produce the Loan Files is grounded in stilted interpretations of out-of-contexts snippets from a handful of the Statements of Work ("SOWs") that govern the Shared Services Agreement between AFI and ResCap. But FHFA's arguments are at odds with the actual language of those documents when read, as required, in full and in context. Further FHFA's interpretation is squarely contradicted by undisputed evidence of the intent of the actual parties to the SOWs, which must be considered in this context.

In any event, if FHFA's chief purpose is really to obtain the 2100 Loan Files that it has requested, AFI has outlined a reasonable, practical proposal that provides a means to resolving the present dispute in a way that respects the legal rights of all the participants, minimizes the burden on the Debtors, the parties, and the Court, and provides FHFA with the Loan Files on a prioritized basis. FHFA has identified no defect in that proposal, other than the fact that it permits ResCap to continue to play a role in determining how documents in its possession (and

1

which only ResCap employees can identify) should be produced.  FHFA's suggestion that the

ResCap Debtors' (and the Bankruptcy Court's) participation and consent should not be a factor

in crafting a solution to the present dispute obviously is untenable, and FHFA should not be

allowed to brush aside AFI's good-faith offer to negotiate a practical method for obtaining the

Loan Files that both FHFA *and* AFI require to litigate this action.

## ARGUMENT

## I.    AFI DOES NOT HAVE POSSESSION, CUSTODY OR CONTROL OVER THE LOAN FILES.

FHFA does not dispute that AFI and GMACM Group have neither possession nor

custody of the Loan Files.  Nor, as stated in AFI's Opening Memorandum, does AFI have

control over the Files.  AFI has no legal right to obtain those documents, either through the

Shared Services Agreement or otherwise, and given ResCap's own interpretation of the Shared

Services Agreement and the ruling by the Bankruptcy Court, AFI has no practical ability to

obtain those Files.

FHFA has the burden of demonstrating that AFI has control over those documents.  *See*

*In re Lozano*, 392 B.R. 48, 54 (Bankr. S.D.N.Y. 2008) ("[The] burden is on the party seeking

discovery to establish that the party to whom the request is directed has the ability to produce the

documents.").  FHFA does not, and indeed cannot, carry that burden.  Although FHFA relies

upon the four-factor test of control applied in a parent-subsidiary relationship, it neglects to

mention that the actual application of that test in this case overwhelmingly demonstrates AFI's

lack of control over the Loan Files.  Instead, FHFA relies on an implausible and unsupported

interpretation of the Shared Services Agreement that is directly contradicted by all available

evidence of the parties' actual intent.  And FHFA's argument that AFI has the "practical ability"

to produce the Loan Files flies in the face of direct evidence that AFI simply cannot obtain those

documents without the agreement of ResCap and the approval of the Bankruptcy Court, neither

of which has been given.  In short, all of the evidence demonstrates that AFI *lacks* control over

the Loan Files, and FHFA does not come close to carrying its burden to the contrary.

### A.    AFI's Status as Former Parent Company to the ResCap Debtors Does Not Support a Finding of Control.

FHFA argues that whether AFI has control over the Loan Files should be determined by

the well-established four-factor test typically applied "in the context of a parent-subsidiary

relationship."  FHFA Resp. at 7; *see also Ssangyong Corp. v. Vida Shoes, Int'l, Inc.*, No. 03 Civ.

5014, 2004 U.S. Dist. LEXIS 9101 (S.D.N.Y. May 19, 2004).  But FHFA then stops short of

applying those four factors, and for good reason: when evaluated, those factors overwhelmingly

weigh against a finding of control.[1]

The first factor considers "the degree of ownership and control exercised by the parent

over its subsidiary."  Resp. at 7.  As a legal matter, any equity ownership held by AFI was

essentially wiped out when the ResCap Debtors filed for bankruptcy.  And during the pendency

of that bankruptcy proceeding, AFI is precluded from even attempting to exercise any control

over those entities.  Thus, this factor points decidedly away from a finding of AFI's control.  The

second factor turns on whether "the two entities operated as one."  *Id.*  Here, there can be no

dispute that after the bankruptcy filing (not to mention before), AFI and ResCap did not operate

as a single entity.  ResCap's operations now are subject to Bankruptcy Court's supervision, and

---

[1] Although FHFA cites a string of cases in an effort to support its control argument, these authorities have the opposite effect:  the court in each grounded its finding of control in the existence of factual criteria that do not apply here.  For example, in *In re NTL Securities Litigation*, 244 F.R.D. 179 (S.D.N.Y. 2007), the court relied heavily on the fact that the two parties at issue had a written agreement that allowed each free access to examine and copy any document that might be necessary to comply with legal obligations, and the factual record demonstrated that the party against which control was found regularly was able to obtain any document it wanted upon request.  *Id.* at 195-96.  Similarly, in *Hunter Douglas, Inc. v. Comfortex Corp.*, No. 98 Civ. 479, 1999 U.S. Dist. LEXIS 101 (S.D.N.Y. Jan. 11, 1999), the facts established that "documents ordinarily flow[ed] freely between" the parent and subsidiary at issue.  *Id.* at *10.  Equally important, the subsidiary's counsel represented that it could cause the parent to comply with a document subpoena.  *Id.*

3

any interaction between ResCap and AFI is strictly based on arms-length agreements.  The third factor considers access to the documents in the ordinary course of business.  *Id.*  Post-bankruptcy, AFI's access is limited to only the documents that the Shared Services Agreement specifically covers, which does not include the Loan Files.  The fourth factor considers the existence of any agency agreement.  *Id.*  FHFA does not contend that any agency agreement exists between AFI and ResCap, and plainly there is none.

In short, the four factor test that even FHFA asserts should govern the Court's determination plainly demonstrates that AFI does ***not*** have control over the Loan Files.

### B.    The Shared Services Agreement Does Not Give AFI Control Over the ResCap Debtors' Loan Files.

Nothing in the Shared Services Agreement gives AFI control over the Loan Files in ResCap's possession.  As noted in AFI's opening memorandum, the Shared Services Agreement was intended to provide just the minimum level of services necessary for the Debtors' continued operation.  AFI Resp. at 6. Given that purpose, FHFA cannot explain *why* ResCap would have structured that Agreement in a way that would circumvent the bankruptcy stay and require it to produce, at AFI's demand, tens of thousands of Loan Files.  Of course, such a broad and burdensome obligation was not what the parties intended.  That conclusion is not only dictated by common sense, but by the undisputed testimony of both parties to the Agreement.  FHFA points to no evidence to the contrary.

Having submitted no evidence in support of its strained interpretation of the Shared Services Agreement, FHFA argues that this Court is obligated by the parol evidence rule to ignore the parties' true intent.  FHFA Resp. at 10.  This is simply wrong.  As a general rule, "the parol evidence rule cannot be invoked by a non-party to an agreement." *U.S. Fidelity & Guar. Co. v. Am. Re-Ins. Co.*, No. 604517/02, 2010 WL 3536828 (N.Y. Sup. Aug. 17, 2010).  *See also*

11 *Williston on Contracts* § 33:9 (4th ed.) ("The parol evidence rule is frequently held to apply only to the contracting parties and their privies and not to third persons, often referred to as strangers to the contract, unless they seek to enforce rights under the contract."); *Scherer v. Kane*, 284 Fed. App'x 850, 853 (2d Cir. 2008) ("[T]hat the individual Plaintiffs and Defendant were not themselves parties to the agreement … supports the conclusion that the parol evidence rule should not be used to bar the separate oral agreement among those persons."); *SIN, Inc. v. Dep't of Fin. of City of New York*, 513 N.Y.S.2d 430, 434 (1987) ("Generally, the parol evidence rule would be available for use only by one of the parties to this lease against another."). That parties to a contract may use language to express their intent that is clear between themselves, but that could be misinterpreted – as here – by a stranger to that contract, is the reason why such parole evidence should be admitted. *See* 11 *Williston on Contracts* § 33:9 (4th ed.) (discussing courts' "unsympathetic position toward parties who seek to take gratuitous advantage of an agreement when they are not parties to the agreement.").[2]  Given that the parties to the Shared Services Agreement have the same understanding of the scope of that agreement, FHFA's strained effort to expand the meaning of that Agreement should be rejected.

## 1.    The Production of the Loan Files Is Outside the Scope of the Legal Services Statement of Work between AFI and ResCap.

FHFA's interpretation of the Legal Services SOW exemplifies its efforts to torture the language of the Shared Services Agreement in order to argue that AFI has control of ResCap's Loan Files.  The premise of this SOW is straightforward:  as set forth in the ResCap Debtors' contemporaneous motion seeking the approval of the Shared Services Agreement by the

---

[2] The case cited by FHFA – *Marine Midland Bank-Southern v. Thurlow*, 53 N.Y.2d 381, 387 (1981) – is not to the contrary.  In fact, in that case, the Court noted that extrinsic evidence otherwise inadmissible in a dispute between the two parties to a contract would be admissible between a third party borrower and the plaintiff.  In responding to the dissent's argument that the oral agreement should be considered, it stated, "[t]he dissent would allow the introduction of evidence of an oral agreement between the plaintiff and [third party borrower]…. *We agree that the rights as between [third party] and the plaintiff might be so determined*." (emphasis added).

Bankruptcy Court, the Legal Services SOW was intended to allow ResCap lawyers and legal staff to continue post-bankruptcy to allocate a percentage of their time to AFI legal matters – in other words, to put ResCap in the position of (as the name of the SOW suggests) a legal services provider to AFI.  AFI Resp. at 7.  It is beyond dispute that under ordinary circumstances, a legal services provider that enters into a contract with a client is *not* agreeing to make available to that client the *provider's* proprietary data, documents, or information except as specifically outlined in the contract.  Thus, for example, it would be completely unreasonable to read an e-discovery vendor's agreement to provide a client with use of a proprietary online document review tool to mean that the client also could roam freely through the vendor's email archives and files.  But that is precisely the effect of FHFA's proffered interpretation:  according to FHFA, the Legal Services SOW entitles AFI, the *client*, unfettered access to the data and documents of ResCap, the *provider*.

FHFA, however, fails to identify any language in the SOW or the Shared Services Agreement that possibly could be construed to that effect.  Instead, FHFA cherry-picks a single phrase from the Legal Services SOW – ResCap's agreement to "make available relevant systems and software that may be developed by or for the e-discovery team" – and offers an interpretation of it that defies both common sense and common practice.  Focusing solely on the words "make available relevant systems and software," FHFA deduces that these six words mean that "if Ally requests access to FileNet, MortgageServ or ResCap's vendors to obtain Loan Files, ResCap must comply."  FHFA Resp. at 9.  This myopic focus completely ignores the larger context and leads to absurd results.  Read in its entirety, the sentence FHFA references provides that ResCap agrees to make available systems and software "***that may be developed by or for the e-discovery team***."  *Id.* (emphasis added).  What ResCap *actually* has agreed to do is provide

AFI with the use of *e-discovery* systems and software for use in searching *AFI's* documents and data.  AFI Resp. at 8; *see also* Woehr Decl. ¶ 17-20, *submitted as* Ex. B to the accompanying Reply Declaration of Reginald R. Goeke, executed Oct. 24, 2012.  The systems that FHFA identifies – FileNet, MortgageServ, and "ResCap's vendors" – were not "developed by or for the e-discovery team" and, unlike Evidence Management System and Legal Connects, are not identified in the SOW.  FHFA does not contend otherwise.

The absurd implications of FHFA's interpretation are obvious.  Under this theory, every IT or e-discovery vendor contract is a Trojan horse:  if a vendor –  such as IBM – agrees to make certain systems and software available to its client, it has created a mechanism through which a plaintiff could obtain full discovery of IBM's own files simply by subpoenaing the client and insisting that the client demand access to IBM's "systems and software."  Taken to its logical conclusion, FHFA's argument is simply indefensible, and is manifestly an attempt to get around the protections of the bankruptcy laws and the stay that precludes it from seeking discovery directly from the Debtors.

> **2.     The Production of the Loan Files is Outside the Scope of the Record Services Statement of Work Between AFI and ResCap.**

Similarly, FHFA's approach to interpreting the Record Services SOW is to take phrases from the Shared Services Agreement out of context and twist them to obtain a meaning that is squarely contradicted by the express language of the Shared Services Agreement and has been soundly rejected by the parties to that Agreement.  As FHFA does not dispute, the function of the Record Services SOW is to allow Ally Bank access to the records relating to loans that Ally Bank owns and that the ResCap Debtors service under a Subservicing Agreement on behalf of the Ally Bank.  AFI Resp. at 8-9.  Indeed, that purpose is set forth in the Motion in support of the Shared Services Agreement and in the factual record in the Bankruptcy Court, including the

Orders that approved the Subservicing Agreement between Ally Bank and the Debtors.  As was explained by AFI's Rule 30(b)(6) deponent and is undisputed by FHFA, those services have been limited to fulfilling requests for "one or two Loan Files at a time" and relate only to loans *owned by Ally Bank*.  Again, however, FHFA plucks certain phrases from the SOW – in particular ResCap's agreement to "process requests for files/documents" and to "deliver files/images to the requestor –  and relies on them to conclude that ResCap somehow "has no discretion to refuse a request by AFI" for the Loan Files.  Resp. at 8.

This makes no sense.  Loan servicers regularly contract with their clients to provide loan files to their clients from time to time, for litigation or other purposes.  But in so agreeing, the loan servicer would not render itself obligated to produce *its own* records or the records of a different client, much less to make a bulk production of such documents dating back years earlier than the date of the servicing agreement.  Yet that is precisely the burden that FHFA is attempting to impose on the ResCap Debtors.  FHFA would turn an agreement that was created to allow the ResCap Debtors to service Ally Bank's current portfolio of loans into an agreement requiring ResCap to produce to AFI a substantially larger volumes of Loan Files belonging not to AFI or Ally Bank, but to the ResCap Debtors themselves.

As with the Legal Services SOW, FHFA's argument is belied by the plain text of the Record Services SOW.  In describing the Service Levels to be provided under the SOW, the parties specified that "any Deliverables in this SOW *must be consistent with historical practice* and Services provided must be delivered *with the same . . . frequency* with which the Services were provided immediately prior to the date hereof."  Record Services SOW at 6 (emphasis added).  The factual record is clear that historical practice was limited to the production of files for the loans in Ally Bank's portfolio, and that the frequency was "one or two Loan Files at a

time." Mongelluzzo Decl. ¶ 28. FHFA points to no evidence – and there is none – that historical practice included ResCap's provision of any volume, much less a large one, of ResCap Loan Files to AFI.

FHFA argues that because the Record Services SOW uses the words "historical practice" rather than "historical volume," the parties could not have intended to limit the number of Loan Files that could be requested pursuant to the SOW. This is unavailing. In plain English, "historical practice" means *all* aspects of ResCap's prior provision of services, including frequency, pricing, and volume. FHFA then argues that because the Record Services SOW states that it is between AFI and ResCap, its scope could not be limited to services for Ally Bank. Again, the plain text of the Shared Services Agreement belies this argument. The Shared Services Agreement classifies the ResCap to AFI SOWs into two categories: "ResCap to AFI," and "ResCap to AFI for [Ally] Bank." Shared Services Agreement at Schedule C-2. The Record Services SOW is defined as being in the last category, covering services for Ally Bank, and not first category, covering services to AFI.[3]

In short, FHFA, which is not a party to the Shared Services Agreement, has no authority, nor any basis, to expand the intended scope of the Record Services SOW. FHFA is unable to point to any factual support for its *ipse dixit* interpretation. To the contrary, both the language of the Shared Services Agreement and the only evidence of the parties' intent – not to mention simple logic – demonstrates that the Shared Services Agreement was not intended to impose upon ResCap the obligation to provide thousands of Loan Files to AFI.

---

[3] That AFI is the named recipient of services in the Record Services SOW is of no moment. The Shared Services Agreement defines "Recipient" to include affiliates, which would include Ally Bank. SSA § 1.1. FHFA's attempt to limit those services to AFI by comparing the Record Services SOW to the Legal Services SOW (FHFA Resp. at 11) is unavailing because the Shared Services Agreement reaches the same result through the definition of "Recipient."

### 3. Other Provisions of the Shared Services Agreement Preclude a Finding that ResCap Is Obligated to Make the Loan Files Available.

Sections 7, 8, and 9 of the Shared Services Agreement further demonstrate that the parties did not intend that Agreement to act as a conduit for access to all of ResCap's Loan Files. Sections 7 and 8 make clear that each of ResCap and AFI retain ownership over the data that belonged to them pre-bankruptcy. *See* AFI Resp. at 10-11. Unable to dispute this point, FHFA argues that ownership is not synonymous with control. FHFA Resp. at 12-13. But FHFA concedes, as it must, that a key element of the control inquiry is the existence of a legal right to the documents in question, *see id.* at 7, 9, and it is incontrovertible that absent agreement, a party generally will not have a legal right to documents owned by another party. Here, not only is such an agreement lacking, but there exists an agreement that provides directly to the contrary: each of ResCap and AFI explicitly retained ownership of their data, without exception. AFI Resp. at 10-11; *see also* Scheipe Decl. ¶ 5, *submitted as* Ex. A to the accompanying Reply Declaration of Reginald R. Goeke, executed Oct. 24, 2012.

Section 9 goes further, providing that nothing in the Shared Services Agreement should be construed as obligating one party to disclose its confidential information to the other party. *See* AFI Resp. at 11. But FHFA's proffered interpretation of the Record Services SOW (and Legal Services SOW) would impose just such an obligation: the requirement that the ResCap Debtors disclose their Loan Files to AFI. FHFA's incredible response is to argue that the Loan Files, which are replete with the nonpublic personal information of individual home loan borrowers, not to mention information regarding business decisions with respect to those borrowers, do not constitute ResCap's "Confidential Information." FHFA Resp. at 13. This is incorrect under the plain language of the Shared Services Agreement, which defines Confidential Information to include "all non-public information concerning [the] business of a Party or its

Affiliates, … including customer lists, customer information, and account information."   Shared

Services Agreement § 9.2.   The Loan Files fall squarely within that category.   Because the

Shared Services Agreement specifies in default that neither AFI nor ResCap has any obligation

to provide their Confidential Information (which includes Loan Files) to the other party, FHFA

must identify some contractual exception that specifically reverses this default presumption in

order to meet its burden.   FHFA does not identify any such specific provision, and thus its

interpretation of the Shared Services Agreement must fail.

### C.    FHFA Fails to Demonstrate that AFI Has the Practical Ability to Obtain the Loan Files Under the Existing Terms of the Shared Services Agreement.

As FHFA does not dispute, ResCap has made clear that it does not interpret the Shared

Service Agreement to require the Debtors to provide the Loan Files to AFI.   Nor does FHFA

question the fact that AFI lacks the expertise to locate the Loan Files without the assistance of

ResCap personnel, or that ResCap and the Bankruptcy Court agree that providing this assistance

would be an undue burden given the current state of the bankruptcy proceedings.   Given these

undisputed facts, FHFA cannot explain how AFI nonetheless has the "practical ability" to obtain

those Loan Files.   The only mechanism that FHFA points to is the Shared Services Agreement.

But as discussed above, nothing in that Agreement gives AFI the practical ability to compel the

ResCap Debtors to perform services that they are unwilling to render and that they believe would

run counter to the interests of their estate.

FHFA faults AFI for failing to ask ResCap to produce the Loan Files.   In fact, AFI asked

counsel for the ResCap Debtors back in *June* whether the Loan Files could be made available

under the terms of the existing Shared Services Agreement, and ResCap – consistent with its

current position – said no.   Indeed, as FHFA knows perfectly well, the Debtors now have spent

considerable time litigating the question of whether the Shared Services Agreement requires

production of the Loan Files.   Moreover, FHFA erroneously assumes that availability of the

Loan Files is solely in the hands of the ResCap Debtors.   After giving FHFA the opportunity to

brief the issue, the Bankruptcy Court has confirmed the Debtors' position that forcing production

of those Loan Files at this time would impose an unreasonable distraction and burden on the

Debtors during a critical time in the restructuring process and would be detrimental to the best

interests of the estate.

AFI has taken it upon itself to offer a solution that minimizes the distraction and burden

to ResCap and gives FHFA priority access to the Loan Files.   FHFA, however, has brushed that

effort aside, contending that AFI's proposal – that AFI and the Debtors would negotiate the

terms of an Additional Service under the Shared Services Agreement that would permit

production of certain Loan Files in the near term – would "give the Debtors inappropriate control

over the course of this litigation."   FHFA Resp. at 14.   But that sentiment simply ignores reality.

It is the ResCap Debtors' conduct that is fundamentally at issue in this case.   It is the ResCap

Debtor's Loan Files to which FHFA seeks access.   It is undisputed that only the ResCap Debtors

have the means to identify and pull the Loan Files that FHFA wants.   Whether FHFA likes it or

not, access to the Loan Files cannot be had without the ResCap Debtors' agreement to participate

in the process.   Their consent – approved by the Bankruptcy Court – is the ***only*** means of

obtaining the Loan Files.   All of the parties, including AFI, need the Loan Files and therefore

must work cooperatively with the Debtors to find a reasonable means to obtain them.

## II.      IN LIGHT OF THE UNIQUE CIRCUMSTANCES OF THIS CASE, AFI IS WILLING TO ASK RESIDENTIAL CAPITAL TO PRODUCE THE LOAN FILES AS AN ADDITIONAL SERVICE UNDER THE SHARED SERVICES AGREEMENT.

Although FHFA has turned up its nose at AFI's offer, and has accused AFI of being

"disingenuous,"   (FHFA Resp. at 15) to date AFI is the only party to put forward a plan that

might lead to discovery of the Loan Files that FHFA has requested. AFI's proposed solution offers to prioritize FHFA's production of Loan Files even before the Loan Files that AFI needs for its defense. It also respects the Bankruptcy Court's decision by deferring until some later time the production of the additional large volumes of Loan Files to which the other Defendants (including AFI) may need access.

By contrast, FHFA would have AFI disregard the concerns raised by the Debtors and the Bankruptcy Court, press Debtors' personnel into service (contrary to the interest of the Debtors or the estate) and compel them to spend weeks identifying all of the 42,000 Loan Files for production. According to FHFA, the Bankruptcy Court would be powerless to stop such a broad request, having been bamboozled to approve the Shared Services Agreement under the belief that it was "warranted and absolutely necessary to avoid disruption of the Debtors' day-to-day operations," when it in fact was a Trojan Horse for discovery by any plaintiff seeking ResCap documents. FHFA Resp. at 11. And while FHFA seeks reversal of the Bankruptcy Court's Section 105 holding on grounds that production of 2100 Loan Files is not burdensome, under FHFA's control argument, there would be no limitation or control whatsoever that the Bankruptcy Court could impose on AFI's request for Loan Files.

Contrary to FHFA's claims, the Bankruptcy Court was not misled into adopting the Shared Services Agreement, and it should not be powerless to control the volume of Loan Files that ResCap is required to produce. Rather, all parties should recognize that production of ResCap Loan Files was not a service anticipated under the Shared Services Agreement, but that production of such Loan Files could be undertaken in a controlled fashion by having AFI and the Debtors negotiate terms of Additional Services, which would be subject to approval by the Bankruptcy Court and a cost-sharing agreement between FHFA, AFI, and the Underwriters. AFI

13

has set forth a specific proposal concerning how such an agreement might be structured, and

FHFA has not identified any specific burden or deficiency associated with AFI's proposal (aside

from the truism that it would require cooperation by the Debtors).   Because AFI's proposal

addresses the competing concerns of the Debtors, FHFA, AFI, the Underwriters, the Bankruptcy

Court and the District Court, AFI should not be ordered to produce documents over which it does

not have any control, but should instead be permitted to negotiate the terms of an Additional

Service with ResCap along the lines outlined in AFI's opening submission.

## **CONCLUSION**

Per this Court's Order, AFI will agree to request the 2100 Loan Files from the Debtors

(and any additional Loan Files to be identified within six weeks) as part of Additional Services to

be negotiated between ResCap and AFI, subject to agreement by the Debtors, adequate

apportionment of costs, and approval by the Bankruptcy Court.   For the reasons stated herein,

however, AFI cannot produce those documents without the consent of ResCap and approval by

the Bankruptcy Court.


Dated:    October 24, 2012                    Respectfully submitted,

                                              MAYER BROWN, LLP


                                               _/s/ Reginald R. Goeke_____
                                              Reginald R. Goeke (rgoeke@mayerbrown.com)
                                              Catherine A. Bernard (cbernard@mayerbrown.com)
                                              MAYER BROWN LLP
                                              1999 K Street, NW
                                              Washington, DC 20006
                                              Telephone: 202-263-3000
                                              Facsimile: 202-263-3300

Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY 10019
Telephone: 212-506-2500
Facsimile: 212-262-1910

*Attorneys for Defendants Ally Financial Inc.*
*and GMAC Mortgage Group, Inc.*

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – x

FEDERAL HOUSING FINANCE AGENCY,          :
etc.,                                                                                11 Civ. 7010 (DLC)
                                                                   :
                                    Plaintiff,
                                                                   :
              – against –
                                                                   :
ALLY FINANCIAL INC. f/k/a GMAC, LLC
et al.,                                                            :

                              Defendants.              :

– – – – – – – – – – – – – – – – – – – – x


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – x

In re                                                              :
                                                                                      12-12020 (MG)
RESIDENTIAL CAPITAL, LLC et al.,              :

                              Defendants.              :

– – – – – – – – – – – – – – – – – – – – x


**REPLY DECLARATION OF REGINALD R. GOEKE
IN RESPONSE TO THE COURTS' OCTOBER 16 ORDER
ON THE PRODUCTION OF RESCAP LOAN FILES**

REGINALD R. GOEKE makes the following declaration:

1.      I am a member of the Bar of this Court and of Mayer Brown LLP, attorneys

in the 11 Civ. 7010 (DLC) action for defendants Ally Financial Inc. and GMAC Mortgage

Group, Inc.  I make this declaration to supply the Courts with a copy of two documents discussed

in the parties' briefs in response to the Courts' Order of October 16, 2012.

2.      Exhibit A hereto is the August 28, 2012 declaration of Ally Financial Inc.

executive Philip Marc Scheipe, item number 1299 on the main docket in the Bankruptcy Court.

3.      Exhibit B hereto is the August 28, 2012 declaration (without its exhibits) of

Mary Fahy Woehr, a member of the legal staff at debtor GMAC Mortgage, LLC.

Executed under penalty of perjury on October 24, 2012.


    _/s/ Reginald Goeke_____
    Reginald Goeke (rgoeke@mayerbrown.com)
    MAYER BROWN LLP
    1999 K Street, NW
    Washington, DC 20006
    Telephone: 202-263-3000
    Facsimile: 202-263-3300

    *Attorneys for Defendants Ally Financial Inc.*
    *and GMAC Mortgage Group, Inc.*

**Exhibit A**
**to Goeke Declaration**

***Declaration of Philip Marc Scheipe***
**August 28, 2012**

Richard M. Cieri                    Jeffrey S. Powell
Ray C. Schrock                     Daniel T. Donovan
Stephen E. Hessler                 KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS LLP               655 15th Street, N.W., Ste. 1200
601 Lexington Avenue               Washington, D.C. 20005
New York, New York  10022          Telephone:    (202) 879-5000
Telephone:    (212) 446-4800       Facsimile:    (202) 879-5200
Facsimile:    (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC., et al. | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**DECLARATION OF PHILIP MARC SCHEIPE IN SUPPORT OF**
**AFI'S SUBMISSION REGARDING THE SHARED SERVICES AGREEMENT**

I, PHILIP MARC SCHEIPE, do hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am CFO Global Business Functions at Ally Financial Inc. ("AFI").  In that position, I have had responsibilities in the course of this year in areas associated with separating the businesses of AFI and the Debtors and ensuring a smooth transition of the Debtors' businesses to the ultimate purchaser of such businesses in these chapter 11 cases.  I was closely involved in the development, negotiation, structuring and drafting of the Shared Services Agreement ("SSA").

2.      I understand that Judge Martin Glenn of the United States Bankruptcy Court for the Southern District of New York has asked for submissions from certain parties concerning the SSA, and in particular addressing whether ResCap is required under the SSA and statements of work to provide loan files to AFI, and if so, who pays for the production of those loan files and

how that cost would be determined.  This declaration sets forth the background and purpose of

the SSA, and the intent of AFI when negotiating that agreement.  Further, this declaration also

addresses certain statements of work that I understand the Federal Housing Finance Agency

("FHFA") may rely upon to argue that the SSA gives AFI control over documents in the

possession of the Debtors.

3.      The SSA was negotiated between AFI and its counsel on the one hand, and

Residential Capital, LLC ("ResCap") and its counsel on the other hand, over an extended period

of time.  Prior to that time, AFI and ResCap provided certain operational services to each other

some of which were formally documented, others of which were informally provided pursuant to

historical practices.  In order to facilitate an orderly and expeditious sale of ResCap's servicing

platform during these chapter 11 cases and to provide a comprehensive, uniform agreement

covering such services, the parties intended to formalize the operational services provided among

the debtors in the above-captioned cases (the "Debtors"), and AFI and certain of its non-debtor

subsidiaries in the SSA.  This process was, in part, designed to achieve a stand-alone operational

servicing platform to market and sell in these chapter 11 cases.  Additionally, the SSA was

intended to continue the historical provision of services with certain modifications during the

period of the Debtors' sale process.  The intention was that the services provided under the SSA

would be reduced over time.

4.      Through the SSA, ResCap and AFI each agreed to provide the specific services

enumerated within the SSA and certain statements of work ("SOWs") to the other entity.  In

accordance with the 2006 Operating Agreement, those services were negotiated at arms length.

5.      The parties never intended for any provision of service between the two entities to

result in the transfer of ownership or control over the documents or data of the other entity.  This

point was a subject of specific negotiation between the parties and was a core point to the SSA.
Both parties agreed that each party would retain control over its own data.  This is mandated by
the 2006 Operating Agreement and it is my understanding also by a number of regulatory
requirements relating to the mortgage operation as well as the Bank deposit operation.

6.      This intention was memorialized in the SSA itself.  Specifically, section 8.1 of the
SSA provides that the Supplier of services "retains ownership of data pertaining to its
performance of Services."  Further, section 8.2 provides that "[a]s between Recipient and
Supplier, Recipient owns and will continue to own all right, title and interest in and to all
Recipient Data."

7.      Other sections of the SSA are also consistent in demonstrating the parties' intent
that any service that might be provided either by ResCap or AFI would not transfer any rights of
ownership or control to the other party.  For example, Section 7 makes clear that nothing in the
SSA transfers any rights, title or interests in any Intellectual Property.  Section 7.4 further
clarifies that "[e]xcept as expressly specified in this Agreement, nothing in this Agreement will
be deemed to grant to one Party, by implication, estoppels or otherwise, license rights, ownership
rights or any other Intellectual Property Rights in any work processes, Software or other
materials, data or information owned by the other Party or any Affiliate of the other Party."
Further, Section 9.6 provides that "[e]ach Party's Confidential Information shall remain the
property of that Party except as expressly provided otherwise by the other provisions of this
Agreement."  And Section 9.8 provides that "[n]othing contained in this Section 9 shall be
construed as obligating a Party to disclose its Confidential Information to the other Party, or as
granting or conferring on a Party, expressly or impliedly, any rights or license to the Confidential
Information of the other Party."

8.      Notwithstanding those provisions of the SSA, I understand that FHFA has asserted that certain SOWs require ResCap to provide to AFI the loan files underlying the ResCap Securitizations at issue in FHFA's action (11-cv-7010) ("Loan Files"), or would otherwise give AFI control over the Loan Files that are in the possession of the Debtors.  Indeed, I served as the AFI corporate representative for a deposition conducted by FHFA at which I was questioned about many of those provisions. Based on my personal involvement in the negotiation of the terms of the SSA, and my understanding of the purpose for the SOWs at issue, I believe that FHFA misunderstands the purpose of those provisions, and the rights and obligations those provisions impose on ResCap and AFI.

9.      FHFA has referenced certain SOWs regarding legal services that AFI and ResCap provide to each other.  Those services reflect the fact that prior to the bankruptcy filing, for purposes of efficiency, AFI and ResCap provided legal services to each other.  For example, one SOW states that "AFI provides legal advice and counseling, including regarding changes in laws and regulations applicable to ResCap's business, as may be necessary from time to time, in the substantive areas of employment law and federal regulation of bank holding companies . . ." (Doc. 41, Exhibit B, Item 15 of the Summary of Statement of Work from AFI to ResCap at 7; Page 100 of 126).  Another SOW states that ResCap will provide "[l]egal advice and counseling, including litigation management and support, including service of process, e-discovery, discovery responses, and litigation holds, as may be necessary or required by AFI from time to time . . ." (*Id.,* Item 2 of Summary of Statement of Work from ResCap to AFI; Page 106 of 126). Both of these SOWs reflect that each of AFI and ResCap will provide certain legal services for the other entity, in the same manner that any third party might provide legal services.  Those

SOWs do not give either ResCap or AFI control over any documents held by the other entity, nor do they require ResCap to provide Loan Files to AFI.

10.    FHFA has focused on language from the SOW that the legal services provided by ResCap would include, among other things, "making available relevant systems and software that may be developed by or for the e-discovery team." (*Id.*).  This language refers to an e-discovery team that had been developed by ResCap, which was able to provide certain support to AFI in helping AFI access its own electronic records.  The "systems and software" referenced refer to tools developed for the e-discovery team that help it perform its services.  This provision does not refer to any ResCap data at all, and certainly does not require ResCap to provide the Loan Files to AFI.

11.    FHFA has also referenced the "Record Services" that ResCap provides to AFI.  Those services include processing "requests for files/documents that are received from internal and external clients for loans sales, litigation requests, audits and reconciliation projects and deliver files/images to requestor in mutually agreeable format that is suitable to their request." (*Id.,* Item 16 of Summary of Statement of Work from ResCap to AFI, Page 113-114 of 126).  As is confirmed by the chart detailing the pricing for this service (*Id.,* at schedule C-2b, page 87 of 126), this is a service that ResCap provides to Ally Bank, a non-debtor subsidiary of AFI.  Ally Bank is the custodian for certain loans that are serviced by ResCap.  Ally Bank is not a Document Custodian for any of the securitizations at issue in the FHFA's law suit against AFI and none of the loans for which the Bank has custodial obligations are collateral in any of the securitizations at issue in the FHFA's law suit against AFI.  As custodian, Ally Bank is occasionally asked to provide files for loans of which it is the custodian.  Under this SOW, ResCap assists Ally Bank in processing those requests.  This provision does not require ResCap

to provide any of the Loan Files to AFI for loans included in ResCap securitizations.  Rather, it relates to services provided to a different entity (Ally Bank), and regarding different securitizations and different loans.

12.    FHFA has also referenced a service that AFI provides to ResCap regarding a Loan Review Plan.  (*Id.,* Summary of Statement of Work From AFI To Rescap 16, page 100 of 126).  That SOW provides that AFI will assist ResCap with establishing and updating an Annual Loan Review Plan.  That service is provided by a small team of less than 6 employees at any time since they began reviewing mortgage loans in 2010, which provides certain credit exposure reviews for ResCap.  To perform that function, those individuals review a small sample of loan files (typically 60-70 loans per review period).  AFI began providing this service to ResCap in 2010, and the team only reviews loans issued during the prior six-month period.  Because the last of the securitizations in FHFA's law suit closed in 2007, the loans within those securitizations would not have fallen within the scope of services AFI provides to ResCap.  Further, the service provided by AFI to ResCap only covers review of a small volume of loan files, not the 40,000+ Loan Files that are at issue in the FHFA litigation.  There is nothing in this statement of work that requires ResCap to provide to AFI the Loan Files from securitizations from 2005 to 2007, nor that would otherwise give AFI control over those Loan Files.

13.    The pricing of the services within the SSA is set forth in schedules C-1 and C-2 to that Agreement.  Consistent with the limited nature of the services to be provided, those schedules reflect a price that is based on the historic services provided between the parties, and do not contemplate pricing for new services, including the production of 40,000+ loan files.

14.    For example, with respect to the loan review services provided by AFI to ResCap, Scheduled C-1a reflects that AFI charges $400,000 annually for that service.  That price is

consistent with the limited volume of loans historically reviewed by AFI, and is set based on a

percentage of the total loans reviewed.  If, contrary to the parties' intention, AFI were required to

review 40,000+ Loan Files from ResCap's securitizations (or even 5000 Loan Files), as opposed

to the 60-70 loans per review cycle, the cost of such a review to ResCap (even if AFI could or

would agree to provide such a service) would increase dramatically.

15.    Similarly, the pricing of ResCap's provision of legal services to AFI ($21,481 per

month as reflected on Schedule C-2 of the SSA) is consistent with the level of legal services

ResCap historically provided to AFI.  Such a price is not consistent with any interpretation of the

SSA whereby ResCap would provide thousands of Loan Files in response to requests for such

documents by AFI.

16.    In short, the purpose and intent of the parties in negotiating the SSA was to create

a mechanism for the temporary and transitional provision of those services that had been

provided in the past between AFI and ResCap until ResCap could move those services to a third

party or internalize the processes necessary to perform the functions itself.  The parties never

intended that agreement to cover provision of new services, such as the production of the

40,000+ Loan Files that are at issue in the FHFA litigation.  The SSA specifies certain limited

services that each of AFI and ResCap provide to the other, consistent with, and priced based on,

historic experience.  Nothing in that agreement grants AFI any ownership or control over the

Loan Files in the possession of ResCap.   Nor does any provision of the SSA require ResCap to

provide the Loan Files to AFI.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:    August ___28___, 2012


_____
Philip Marc Scheipe

**Exhibit B**
**to Goeke Declaration**

***Declaration (without Exhibits) of Mary Fahy Woehr***
**August 28, 2012**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Gary S. Lee
Joel C. Haims

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------- ) | |
| In re:                                                  ) | Case No. 12-12020 (MG) |
|                                                         ) | |
| RESIDENTIAL CAPITAL, LLC, et al.,      ) | Chapter 11 |
|                                                         ) | |
|                              Debtors.      ) | Jointly Administered |
| ------------------------------------------------------- ) | |

## DECLARATION OF MARY FAHY WOEHR

I, Mary Fahy Woehr, declare:

1.   I am a member of the legal staff at GMAC Mortgage, LLC ("GMACM"), a Debtor in this bankruptcy case.  (The Debtors and Debtors in Possession are herein collectively referred to as "ResCap.")  In that role, I am responsible for a variety of legal matters relating to the Debtor, including fee based servicing and shared services.  I have been employed at GMACM since November 7, 2011.

2.   I submit this declaration in support of the Debtors' supplemental brief in further opposition to the motion of the Federal Housing Finance Agency for relief from the automatic stay.

## I.   **Shared Services Agreement**

3.   I am knowledgeable about the "Shared Services Agreement" between ResCap and Ally

Financial Inc. ("AFI") (the "Agreement").  On behalf of ResCap, I helped draft and negotiate the

Agreement, and I continue to help ResCap implement the Agreement's provisions.  Attached to

this Declaration as Exhibit A is a copy of the executed Agreement.

### A.  **Purpose of the Agreement**

4.   Pre-bankruptcy, ResCap, AFI, and certain of their affiliates provided various financial,

operational and administrative services to each other.  The purpose of the Shared Services

Agreement was to allow ResCap and AFI to continue sharing the services post-bankruptcy that

they had shared pre-bankruptcy.

5.   ResCap and AFI historically provided these services on a documented basis, but that

prior agreement did not provide detailed descriptions of the services being provided.  Therefore,

ResCap determined it was in its best interest to participate in the compilation by the parties of a

comprehensive and integrated agreement, to become effective post-petition, and to ensure that (i)

the Debtors obtain and pay for only those services that are necessary during their Chapter 11

cases; (ii) the services that are being provided between ResCap and AFI are specifically

identified; and (iii) ResCap may reduce or terminate its receipt of services at any time upon the

requisite prior notice to AFI, including, without limitation, following the closing of a sale of

substantially all of the Debtors' assets.  As a result, ResCap and AFI negotiated and executed the

Agreement and, on May 14, 12012, the Debtors moved for entry of interim and final orders,

under §§ 105(a) and 363(b) of Title 11 of the United States Code authorizing ResCap to enter

into the Agreement.

ny-1055884

6.  ResCap intended the Agreement to facilitate ResCap's smooth transition to operating as a
debtor in possession, facilitate its sale of assets, and complete a wind-down of its business
following the sales.  The Agreement was intended to capture, and not expand upon, the scope of
services that had been provided between ResCap and AFI prior to the bankruptcy filing.

**B.  The Agreement's Provisions**

7.  Pursuant to, and contemporaneous with the execution of, the Agreement ResCap and AFI
entered into various statements of work pursuant to which ResCap agreed to provide certain
services to AFI and AFI's wholly-owned subsidiary, Ally Bank, and AFI agreed to provide
certain services to ResCap.

8.  Attached to this Declaration as Exhibit B is a copy of the statement of work relating to
"legal services" (the "Legal Services SOW").

9.  The Agreement also provides for a pricing methodology for services provided between
ResCap and AFI.

10. Schedule C to the Agreement sets forth a pricing methodology for services provided
between ResCap and AFI under the services of work.  Pursuant to Schedule C, AFI is
responsible for paying "monthly fixed charges" and "monthly variable charges" for services
provided by ResCap under each statement of work, as described in Schedule C-2b.  (Schedule C,
§ 1.4(c)-(d).)  Schedule C also provides that out-of-pocket expenses actually incurred by ResCap
in connection with providing a service to AFI will be born directly by AFI, as a "pass-through
expense."  (Schedule C, § 1.4(e).)  The intention of these provisions is to ensure that each party
is compensated for the value of services provided to the other party.  The "monthly fixed
charges" are intended to represent the actual costs of providing the services to each other.

3

12-12020-mg   Doc 9729-5   Filed 08/28/12   Entered 08/28/12 16:48:53   Exhibit
Woehr Declaration   Pg 5 of 78

11. Section 3.2 of the Agreement provides that AFI may, from time to time during the term, upon at least ninety (90) days prior written notice to ResCap, request that ResCap provide Additional Services.  (Agreement, § 3.2.)  By the Agreement's terms, ResCap must agree on the scope of those additional services before performing them.

12. The Agreement also provides a methodology for determining how much AFI would pay ResCap for those additional services.  (See Schedule C, § 3.5.)  In this case, ResCap would require that AFI—at the very least—pay all out of pocket costs, substantial costs related to the increased use of ResCap's employees and systems, as well as any other costs that arose during the production.

13. Section 3.3 of the Agreement provides that AFI may require ResCap, from time to time, upon at least thirty (30) days' notice, to *reasonably* increase the amount of services to be provided by ResCap to AFI under any statement of work.  The Agreement further provides that the increase in charges for such an increase in services shall be determined in accordance with the procedures set forth in Schedule C.

14. Section 3.5 of Schedule C directs that the parties will use "the cost allocation methodology that was used to determine the Initial Cost Allocation for such Service."  In this context, that means AFI would still be responsible for, not only the third-party out of pocket costs, but also the increase in labor, time, and the use of the ResCap's systems.

15. I participated in negotiating the provisions of the Agreement relating to "Additional Services" (§ 3.2) and a "Change Requested" by AFI (§ 3.3.)

## II.  Legal Services SOW

16. Under the Legal Services SOW, ResCap agrees to provide AFI, "consistent with current and historical practice: (i) Legal advice and counseling, including litigation management and

support, including service of process, e-discovery, discovery responses, and litigation holds as

may be necessary or required by AFI from time to time, including without limitation, making

available relevant systems and software that may be developed by or for the e-discovery team . . .

.”  (Legal Services SOW at 1.)  I participated in negotiating and drafting the Legal Services

SOW.

### A.  Purpose of the Legal Services SOW

17.  The Legal Services SOW was intended to cover only *legal advice and counseling* related

to the various legal services historically performed by ResCap for AFI.  The legal department is

not and has not historically been responsible for collecting and producing Loan Files.

18. The clause related to “e-discovery” was intended to ensure that AFI was able to access *its

own* electronic documents after the e-discovery team was relocated to the Debtors.  Nothing

about that clause was intended to cover the discovery sought by the FHFA and others here which

is of certain of the *Debtors'* documents that are outside the scope of the e-discovery team’s

responsibilities and capabilities.

19.  Rather, the clause was intended to ensure that AFI had access to ResCap’s internal e-

discovery resources to collect its own emails and electronic documents, and to process those

documents for production if necessary.  Those resources, including the e-discovery team that

runs them, operate as part of ResCap’s legal department and are not involved in the collection,

processing, or production of Loan Files.

20.  Pre-petition, AFI and ResCap shared an “e-discovery team” that was responsible for

collecting archived e-mails, implementing document preservation protocols, and other related

tasks.  This clause was simply intended to ensure that those same e-discovery services continued

to be provided by the Debtors to AFI post-petition.

21. The "discovery responses" clause in the Legal Services SOW was intended to cover, at most, (1) *legal advice and counseling* related to "discovery responses" (i.e., legal advice from ResCap's attorneys in responding to written discovery responses and interrogatories, where necessary) and (2) assistance from the e-discovery team in processing *AFI's documents* in response to discovery requests.

**B.  Allocation of Costs with Respect to the Legal Services SOW**

22. In Schedule C-2b to the Shared Services Agreement, which sets forth the pricing of all of the services the Debtors are to provide to AFI, the only "services" provided for under the Legal Services SOW are for (1) Internal Counsel and (2) External Counsel.

23. Schedule C-2b provides that, with respect to the Legal Services SOW, AFI is responsible for paying ResCap a monthly fixed charge of just over $20,000 for internal counsel services. This amount is intended to reflect the typical cost of legal advice and counseling provided by ResCap to AFI in the ordinary course of business, and is based upon the parties' pre-bankruptcy business dealings.

24. The $20,000 that was allocated under the Legal Services SOW was not intended to include projects requiring the production of thousands of Loan Files.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true to the best of my knowledge, information, and belief.  Executed on August 28, 2012, at Fort Washington, PA.

_____
Mary Fahy Woehr

ny-1055884