GIBBONS P.C.
Jeffrey S. Berkowitz
Christopher A. Albanese
One Penn Plaza, 37th Floor
New York, New York 10119-3701
Telephone: (212) 613-2000
Facsimile: (212) 290-2018

*Counsel for Wells Fargo Bank, N.A. with*
*respect to its servicing and sub-servicing*
*agreements with the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

## OBJECTION OF WELLS FARGO BANK, N.A. TO DEBTORS' SALE MOTION

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Wells Fargo Bank, N.A. ("Wells Fargo"), as counterparty to numerous mortgage loan

servicing and related executory contracts ("Wells Fargo Servicing Agreements") by and between

one or more Debtors and Wells Fargo and its predecessors and affiliates,[1] hereby submits this

objection[2] to (1) the Debtors' *Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and*

*1123, and Fed R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (a)(i) Authorizing and*

*Approving Sale Procedures, Including Break-up Fee and Expense Reimbursement; (ii)*

*Scheduling Bid Deadline and Sale Hearing; (iii) Approving Form and Manner of Notice*

---

[1] Predecessors and affiliates include, but are not limited to, Wells Fargo Financial Retail Credit, Inc., Wachovia Bank, N.A., First Union National Bank, and Norwest Mortgage, Inc.

[2] This objection relates solely to Wells Fargo as servicer under the Wells Fargo Servicing Agreements. Wells Fargo Corporate Trust Services is represented by its own counsel and will address any trustee, master servicer, and document custodian issues in its own filing.

*Thereof; and (iv) Granting Related Relief and (b)(i) Authorizing the Sale of Certain Assets Free*

*and Clear of Liens, Claims, Encumbrances, and Other Interests; (ii) Authorizing and Approving*

*Asset Purchase Agreements Thereto; (iii) Approving the Assumption and Assignment of Certain*

*Executory Contracts and Unexpired Leases Related Thereto; and (iv) Granting Related Relief*

(the "Motion") [Docket No. 61]; and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      By the Motion, Debtors seek, among other things, to assume and assign certain

executory contracts and unexpired leases (collectively, the "Assumed Contracts"[3]) in connection

with the sale of the Purchased Assets pursuant to the Asset Purchase Agreement attached thereto

(the "APA").  As discussed in full in Wells Fargo's *Limited Objection to Debtors' Motion to*

*Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and*

*Unexpired Leases of Nonresidential Real Property and Cure Amounts Related Thereto* (the

"Cure Amount Objection") [Docket No. 1648] which Wells Fargo incorporates herein by

reference, the Debtors' *Notice of (i) Debtors' Intent To Assume and Assign Certain Executory*

*Contracts, Unexpired Leases Of Personal Property, and Unexpired Leases Of Nonresidential*

*Real Property and (ii) Cure Amounts Related Thereto* [Docket No. 924] (the "Original Notice")

contained over 200 pages of schedules listing proposed Assumed Contracts and containing

proposed Cure Amounts for each of the Assumed Contracts in the amount of $0.00, but that

contained insufficient information with which to identify the Wells Fargo Servicing Agreements.

Similarly, in the *First Amended Notice of (i) Debtors' Intent To Assume and Assign Certain*

*Executory Contracts, Unexpired Leases Of Personal Property, and Unexpired Leases Of*

*Nonresidential Real Property and (ii) Cure Amounts Related Thereto* [Docket No. 1484] (the

---

[3] Capitalized terms used herein but not defined shall have the meanings ascribed thereto in the Motion, Notice, and Amended Notice.

#1860673 v8
111369-81272

"Amended Notice"), including over 600 agreements between Wells Fargo and the Debtors for which Cure Amounts were uniformly $0.00, the information contained on the attached schedules was once again insufficient for Wells Fargo to match the Assumed Contracts with its own records of the Wells Fargo Servicing Agreements.

2.      Wells Fargo filed its Cure Amount Objection in response to the Original and Amended Notice, objecting to the Cure Amounts and seeking additional information with which to identify the Wells Fargo Servicing Agreements that the Debtors seek to assume and assign.  In filing the Cure Amount Objection, Wells Fargo was and remains willing to meet and confer in good faith to attempt to resolve the Cure Amount Objection without Court intervention, as provided in the Amended Notice.  Despite inquiries by Wells Fargo's counsel, Debtors have failed to discuss the Cure Amount Objection or provide any additional information.  Due to the Debtors' failure to respond, and in the absence of any modification of the Cure Amounts, Wells Fargo objects to the Debtors' assumption and assignment of the Assumed Contracts, and their sale free and clear of liens, claims and encumbrances to the successful bidder, until the Debtors comply with the relevant provisions of the Bankruptcy Code.

3.      Section 363 permits a debtor to sell assets of the estate. 11 U.S.C. § 363(b)(1). Executory contracts, however, do not become assets of the estate until assumed pursuant to section 365 of the Bankruptcy Code. *See* 11 U.S.C. § 365(a).  Until the Debtors (i) provide accurate information that accurately identifies the executory contacts being assumed; (ii) establish correct cure amounts for all defaults under the executory contracts; and (iii) fulfill the requirements of section 365(f), Wells Fargo objects to the sale.

#1860673 v8
111369-81272

**BACKGROUND**

4.      On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and fifty affiliates and subsidiaries (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C §§ 101 *et seq.* (the "Bankruptcy Code").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On the same day, the Debtors filed the Motion, seeking Court approval to assume and assign certain executory agreements pursuant to sections 363 and 365 of the Bankruptcy Code.  Subsequently, the Debtors filed the Original Notice and Amended Notice, including schedules containing thousands of agreements that the Debtors propose to sell to the successful bidder in a 363 sale in accordance with the APA and the Motion.

6.      The Original and Amended Schedules listed several hundred Wells Fargo Servicing Agreements related to servicing and custodial agreements by and between one or more Debtors and Wells Fargo, including at least one agreement that was terminated pre-petition.  *See infra.* As set forth in full in the Cure Amount Objection, as of the date of that filing, Wells Fargo acted as servicer for approximately 20,993 loans on behalf of the Debtors under 65 different investor categories pursuant to approximately 18 active Wells Fargo Servicing Agreements, with an aggregate unpaid principal balance of approximately $3,431,482,893.85.

7.      By Notice dated October 25, 2012 (Docket No. 1960), the Debtors disclosed that Ocwen Loan Servicing, LLC ("Ocwen," or the "Successful Platform Bidder") was named the successful bidder for the Platform Assets (as defined in the Notice) and that Nationstar Mortgage LLC  ("Nationstar," or the "Back-Up Platform Bidder") was selected as the back-up bidder for the Platform Assets.  Therefore, at the Sale Hearing, the Debtors will seek Court approval of the

4

#1860673 v8
111369-81272

Successful Platform Bidder and the Back-Up Platform Bidder, and will be authorized to close the

sale without further order of the Court to the Successful Platform Bidder, or, upon its breach or

failure to close, with the Back-Up Platform Bidder, without further order of the Court.

8.      As servicer, Wells Fargo is responsible for remitting a fixed amount each month

to the Debtors and/or other designated parties under the Wells Fargo Servicing Agreements.  In

general, the remittance is comprised of payments by borrowers pursuant to residential mortgage

loans and HELOCs.  In the event the funds collected by Wells Fargo are insufficient to fund the

remittance amounts, Wells Fargo must advance its own funds to cover the shortfall ("P&I

Advances") unless certain conditions apply.  Similarly, if a borrower defaults, Wells Fargo is

required to advance funds to manage and dispose of the property ("Servicing Advances").  Wells

Fargo can recover the P&I Advances from late and subsequent payments by the borrower or seek

reimbursement from the counterparty, *i.e.*, the Debtors.  P&I Advances and Servicing Advances

may also be recovered from the Debtors following the foreclosure and sale of the mortgaged

property by the Debtors.

9.      Despite the enormous amount of outstanding P&I and Servicing Advances and

uncured and uncalculated defaults that are believed to exist under the Wells Fargo Servicing

Agreements, coupled with Wells Fargo's inability to determine whether indemnification,

repurchase obligations, and other obligations also exist under the Wells Fargo Servicing

Agreements given the Debtors' lack of sufficient identification of the Assumed Contracts, the

Debtors seek to assume and assign the Wells Fargo Servicing Agreements (i) without curing or

providing adequate assurance that existing defaults will be cured, and (ii) without providing

adequate assurance that the purchaser will be able to perform following the assignment as is

required by section 365 of the Bankruptcy Code.  In addition, the Debtors have failed to establish

#1860673 v8
111369-81272

cure amounts that are accurate or to address any of the issues raised in the Cure Amount

Objection, in contravention to the provisions of section 365 of the Bankruptcy Code.

## **OBJECTION**

10.     Section 363 of the Code authorizes a debtor to sell assets of the estate, after notice

and a hearing, including a sale of substantially all the assets of the estate. 11 U.S.C. § 363(b)(1).

An executory contract does not become an asset of the estate until it is assumed pursuant to §

365 of the Bankruptcy Code. *See* § 365(a). "Unless and until rights under an executory contract

are timely and affirmatively assumed by the trustee, they do not become property of the debtor's

estate." *In re Tleel*, 876 F.2d 769, 770 (9th Cir. 1989); *In re Access Beyond Techs*., Inc., 237

B.R. 32, 38 (Bankr. Del. 1999).

a.     The Debtors cannot assign the Wells Fargo Servicing Agreements until they
comply with section 365 of the Bankruptcy Code.

11.     Under the Bankruptcy Code, a debtor-in-possession may assign an executory

contract in accordance with section 365(f) which provides, in pertinent part, as follows:

(2)     The trustee may assign an executory contract . . . of the
debtor only if–

(A)     the trustee assumes such contract . . . in accordance
with the provisions of this section; and

(B)     adequate assurance of future performance by the
assignee of such contract . . . is provided, whether
or not there has been a default in such contract.

11 U.S.C. § 365(f)(2).  Accordingly, the Debtors can only assign the Wells Fargo Servicing

Agreements after assuming the agreements in accordance with section 365 and providing

adequate assurance of future performance by the successful bidder.  The Debtors have done

neither.

6

12.      As set forth above, section 365(f)(2)(A) provides that a debtor may assign an

executory contract only if the debtor assumes such contract in accordance with the provisions of

section 365.  Section 365(b)(1), which governs contract assumption where there has been a

default, requires the Debtors to (A) cure, or provide adequate assurance that the Debtors will

promptly cure, any default; (B) compensate Wells Fargo for any actual pecuniary loss resulting

from Debtors' default(s); and (C) provide adequate assurance of future performance under the

Wells Fargo Servicing Agreements.  *See, e.g., Pieco, Inc. v. Atlantic Computer Sys. (In re*

*Atlantic Computer Sys.)*, 173 B.R. 844, 856 fn. 18 (S.D.N.Y. 1994) (*citing* 11 U.S.C. §

365(b)(1)).  Wells Fargo believes the Debtors have defaulted under one or more Wells Fargo

Servicing Agreements[4] with respect to their obligation to reimburse Wells Fargo for Servicing

Advances.  Absent a clear identification of the Wells Fargo Servicing Agreements the Debtors

seek to assume, accurate cure amounts cannot be established, and the Debtors cannot satisfy the

requirements of section 365(b)(1).  Though counsel has engaged, and will continue to engage, in

discussions with Debtors' counsel regarding these issues, no agreement has yet been reached

and, as of the date of this filing, the Cure Amount Objection has not been resolved and accurate

Cure Amounts have not been established.  The Debtors cannot, therefore, presently satisfy

section 365(f)(2) in order to assume and assign the Wells Fargo Servicing Agreements.

13.      To the extent that there are Wells Fargo Servicing Agreements where there has

not been a default, section 365(f)(2)(B) still requires the Debtors to provide Wells Fargo with

adequate assurance of future performance by the successful bidder as the assignee of the Wells

Fargo Servicing Agreements.  The Debtors have not provided adequate assurance that Ocwen or

---

[4] Due to the lack of information provided in the Original and Amended Notices, Wells Fargo cannot say with
certainty that the Debtors are not seeking to assume and assign a Wells Fargo Servicing Agreement where the
Debtors have defaulted.

#1860673 v8
111369-81272

Nationstar can absorb the Wells Fargo Servicing Agreements, let alone the Debtors' entire

portfolio, and still perform its obligations under the Agreements, nor have the Debtors provided

adequate assurance that Ocwen or Nationstar have the ability to obtain, the requisite licenses

and/or other approvals from all applicable government agencies.

> b.     Any assumption and assignment of the Wells Fargo Servicing
>        Agreements must be *cum onere*.

14.     The APA briefly discusses assumption and assignment of certain obligations, but

it does not appear that the Debtors intend to assume and assign the Wells Fargo Servicing

Agreements to a successful purchaser in their entirety as required by section 365.  The Motion

excludes "unquantifiable or unknown pre-closing liability" from assumption and assignment to

the purchaser.  Specifically, the Motion states:

> …Nationstar is not assuming and parties will be enjoined
> from asserting against Nationstar any claims or obligations
> relating to the pre-closing period under any Assumed Contract,
> whether such claims or obligations are known, unknown, fixed,
> contingent, unliquidated or liquidated at the time of the
> Closing, including, without limitation, any claims or liabilities
> relating to any act or omission of any originator, holder or
> servicer of mortgage loans prior to the Closing Date, and any
> indemnification claims or liabilities relating to any act or
> omission of the Sellers or any other person prior to the Closing
> Date.

Motion at ¶ 60. While there are several troubling aspects with this language, the most significant

from Wells Fargo's perspective is that it could be used to prevent Wells Fargo from recovering

its P&I Advances and Servicing Advances in the event the owner of the loan becomes obligated

to pay due to a default, or that the buyer could retain all proceeds from a liquidation and not

reimburse Wells Fargo for pre-closing advances.

8

#1860673 v8
111369-81272

15.     For the vast majority of serviced loans, P&I Advances are recouped from late borrower payments and Wells Fargo does not need to seek reimbursement from the owner of the loan following liquidation.  This cycle then continues with additional P&I Advances on behalf of additional borrowers, ensuring that at any one time, Wells Fargo has advanced millions of its own funds to the owner of the loan.  These advances cease once a borrower has not repaid his or her loan for a set period of time, or when other specified events occur.  This claim against the Debtors may be extinguished if the borrower resumes payment and Wells Fargo can recover its P&I Advances from borrower payments.  If not, the claim is fixed and the Debtors are obligated to reimburse Wells Fargo for its P&I Advances and Servicing Advances, usually following the liquidation of the collateral.  Under the APA, however, in the event a claim becomes fixed post-closing, Wells Fargo may not have the right to assert a claim for advances made pre-closing. Under these circumstances, the buyer would have the benefit of the P&I Advances and Servicing Advances, *i.e.* cash advances, and have no obligation to reimburse Wells Fargo as required under the Wells Fargo Servicing Agreements.  Such a situation does not comport with section 365(f) of the Bankruptcy Code or the *cum onere* requirement under applicable case law.

16.     In addition, the Wells Fargo Servicing Agreements contain a litany of representations and warranties by the owner of the loans, including but not limited to representations and warranties about the pool of loans, current payments, defenses, title insurance and fraud.  These representations and warranties run with the term of the loan, which may be 30 years. Until a borrower defaults and a loan needs to be collected, there is simply no way to know whether these representations and warranties are accurate.  Under the APA, the purchaser is not seeking merely to leave behind all liabilities, it is seeking to shift the risk of

9

#1860673 v8
111369-81272

default onto the servicer because future losses based on a false representation or warranty cannot be known as of the closing date.

17.     These are exactly the situations section 365 is designed to prevent.  Section 365 of the Bankruptcy Code does not permit a debtor to assume only the beneficial portions of an executory contract and to leave behind undesirable liabilities. *See In re MF Global Holdings Ltd.*, 466  B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("[t]he trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits"); *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*") (*citing In re Italian Cook Oil Co.*, 190 F.2d 994, 996 (3rd Cir. 1951) ("The trustee, however, may not blow hot or cold.  If he accepts the contract  he accepts it *cum onere*.  If  he  receives  the benefits,  he  must  adopt  the  burdens. He cannot accept one and reject the other.").  There is no basis for permitting this treatment of these liabilities in section 365 of the Bankruptcy Code or applicable law.  To the extent that the Debtors fulfill the other requirements of sections 363 and 365, the Debtors are required to assume each Wells Fargo Servicing Agreement in its entirety -- accepting both the benefits and the liabilities.  Until the Debtors comply with section 365, the Wells Fargo Servicing Agreements are not part of the Debtors' estates and cannot be sold to Ocwen or Nationstar under section 363.

> c.   The Debtors cannot assume and assign
>      an agreement that was validly terminated pre-petition.

18.     One agreement that Wells Fargo has been able to identify on the Original and Amended Schedules is a July 8, 1999 servicing agreement between Wells Fargo's affiliate, First Union National Bank, and debtor GMAC Mortgage Corporation, which is now known as GMAC Mortgage, LLC ("GMAC").  The servicing agreement is listed on the Debtors' Original and

#1860673 v8
111369-81272

Amended Schedules as the <u>Whole Loan Subservicing Agreement, Contract No. 359, Investor</u> <u>No. GSE Name 60036 and 70036</u> (the "GMAC Servicing Agreement").  Pursuant to the Servicing Agreement, GMAC agreed to service and administer a series of revolving lines of credit or closed end loans that were originated by Wells Fargo.  The repayment of these loans was secured by liens on one to four family residential properties or co-ops.

19.    The current term of the Servicing Agreement expires no earlier than 120 days from the provision of written notice by one party to the other of its intent not to extend the term of the GMAC Servicing Agreement.  Wells Fargo took that step in a pre-petition letter dated March 29, 2012 (the "Termination Notice") sent to Theresa Willard of GMAC.  *See* Exhibit _. The Termination Notice stated that the GMAC Servicing Agreement would terminate on August 1, 2012, or on such other date mutually agreed upon by Wells Fargo and GMAC.

20.    After the petition was filed, the Debtors advised Wells Fargo that they believed that the automatic stay prohibited the termination of the GMAC Servicing Agreement.  Wells Fargo disputed that assertion because the Termination Notice was issued prior to the Petition Date, was based upon an elective termination rather than upon any default by GMAC, and the GMAC Servicing Agreement would terminate upon the mere passage of time.  *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir. 1984), *cert. denied,* 469 U.S. 982 (1984); *In re Margulis,* 323 B.R. 130, 133-34 (Bankr. S.D.N.Y. 1985).[5]

---

[5] Since the commencement of these cases, at least two other servicers have filed motions for relief from the automatic stay on similar grounds. *See Motion of Shellpoint Partners LLC f/k/a Shellpoint Mortgage LLC and New Penn Financial, LLC for Entry of an Order Modifying the Automatic Stay to Effectuate Termination Notice* [Docket No. 182] and *Motion of Green Planet Servicing, LLC for Entry of an Order:  (A) Modifying the Automatic Stay to Effectuate Pre-Petition Termination of Servicing Agreement; or (B) Alternatively, Granting Relief from the Automatic Stay to Allow Post-Petition Termination of Servicing Agreement; and (C) Granting Related Relief.* [Docket No. 652].  Both motions were resolved through the entry of stipulations similar to the one that Wells Fargo has been negotiating with the Debtors.  [*See* Docket Nos. 904 and 1398].  Likewise, GMAC has taken a similar position with respect to the pre-petition termination of servicing agreements that it had with its affiliate Ally Bank. *See Declaration of Matthew Detwiler in Support of Debtors' Ally Servicing Motion* at ¶ 8 [Docket No. 366] ("Ally

#1860673 v8
111369-81272

21.     The Debtors and Wells Fargo entered into negotiations regarding the issue in an effort to avoid the time, cost, and uncertainty associated with litigating the issue.  In August 2012, the Debtors and Wells Fargo agreed in principle to enter into a stipulation consensually modifying the automatic stay to permit the termination of the GMAC Servicing Agreement.  While GMAC and Wells Fargo have exchanged drafts of the stipulation, the stipulation has not been finalized or approved by the Court as of the date of this objection.  Accordingly, Wells Fargo hereby objects to the inclusion of the GMAC Servicing Agreement in the planned auction and sale as a protective measure.  The GMAC Servicing Agreement was properly terminated pre-petition, and a terminated agreement cannot be assigned because section 365 of the Bankruptcy Code only gives a debtor the right to assume an executory contract.  If, as is the case here, the contract has been terminated pre-bankruptcy, the contract is no longer executory, and there is nothing left for the Debtors to assume.  *See In re St. Casimir Dev. Corp., 358 B.R. 24, 43 (S.D.N.Y. 2007)* (citing *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1212 (7th Cir. 1984)).  If the contract cannot be assumed, it is not part of the estate and cannot be sold.  *In re Tleel*, 876 F.2d at 770.  As a result, the GMAC Servicing Agreement should be deemed to have been terminated and excluded from the sale.

WHEREFORE, Wells Fargo respectfully requests that the Court (i) deny the Motion to the extent is seeks (a) the assumption and assignment of any Wells Fargo Servicing Agreements by the Debtors, (b) the sale of any Wells Fargo Servicing Agreements to Ocwen or Nationstar, until the Debtors comply with sections 363 and 365 of the Bankruptcy Code, and (c) the sale of the terminated GMAC Servicing Agreement to Ocwen or Nationstar, and (ii) grant such other and further relief as this Court may deem equitable and proper.

---

Bank provided notice to GMAC Mortgage that it would not renew the Prior Servicing Agreement on April 19, 2012. Accordingly, the Prior Servicing Agreement will expire pursuant to its terms on August 21, 2012.")

#1860673 v8
111369-81272

Dated: October 28, 2012
New York, New York

Respectfully submitted,

**GIBBONS P.C.**

/s/ Jeffrey S. Berkowitz
By: Jeffrey S. Berkowitz
Christopher A. Albanese
One Penn Plaza, 37th Floor
New York, New York 10119-3701
Telephone: (212) 613-2000
Facsimile: (212) 290-2018

*Counsel for Wells Fargo Bank, N.A. with
respect to its servicing and sub-servicing
agreements with the Debtors*

#1860673 v8
111369-81272