Hearing Date:  November 5, 2012 at 10:00 a.m. (ET)
Objection Deadline:  October 29, 2012 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ )
In re:                                                        )    Case No. 12-12020 (MG)
                                                             )
RESIDENTIAL CAPITAL, LLC, et al.,                            )    Chapter 11
                                                             )
                                        Debtors.             )    Jointly Administered
------------------------------------------------------------ )

**DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM STAY FILED BY
M. NAWAZ RAJA AND NEELUM NAWAZ RAJA [DOCKET NO. 1818]**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ..................................................................................................................2

    A.    General Chapter 11 Case Background.................................................2

    B.    The State Action ..................................................................................2

OBJECTION ......................................................................................................................3

    A.    Applicable Authority .........................................................................3

    B.    Analysis of the Relevant Sonnax Factors ..........................................5

CONCLUSION ...................................................................................................................9

Exhibits:

Exhibit 1 – Delehey Declaration

    Exhibit A to Delehey Declaration:  Complaint
    Exhibit B to Delehey Declaration:  Screen Shots of Virginia Court Online Records

ny-1063133

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow),
  126 F.3d 43 (2d Cir. 1997) .................................................................................5

City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),
  28 B.R. 324 (Bankr. S.D.N.Y. 1983) ...................................................................7

In re Bally Total Fitness of Greater N.Y., Inc.,
  402 B.R. 616 (Bankr. S.D.N.Y. 2009) ..............................................................7, 9

In re Leibowitz,
  147 B.R. 341 (Bankr. S.D.N.Y. 1992) ..................................................................5

In re Motors Liquidation Co.,
  Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010) ...........5

Mazzeo v. Lenhart (In re Mazzeo),
  167 F.3d 139 (2d Cir. 1999) .................................................................................4

Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,
  474 U.S. 494 (1986) .............................................................................................3

Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),
  922 F.2d 984 (2d Cir. 1990) .................................................................................4

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
  907 F.2d 1280 (2d Cir. 1990) ............................................................................4, 5

Teachers Ins. & Annuity Ass'n of Am. v. Butler,
  803 F.2d 61 (2d Cir. 1986) ...................................................................................3

Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.),
  104 B.R. 659 (D.N.J. 1989) ..................................................................................9

STATUTES

11 U.S.C. § 362(a)(1) ............................................................................................3

11 U.S.C. § 362(d)(1) ............................................................................................4

Residential Capital, LLC ("**ResCap**") and its affiliated debtors and debtors in possession

in the above-captioned Chapter 11 cases (collectively, the "**Debtors**") hereby submit this

objection (the "**Objection**") to the *Motion for Relief from Stay,* filed by *pro se* parties M. Nawaz

Raja and Neelum Nawaz Raja (together, "**Movants**"), as of October 12, 2012 [Docket No. 1818]

(the "**Motion**").  In support of hereof, the Debtors submit the Declaration of Lauren Graham

Delehey, dated October 29, 2012 (the "**Delehey Decl.**"), attached hereto as Exhibit 1, and

respectfully represent:

## PRELIMINARY STATEMENT

1.      Movants seek relief from the automatic stay to proceed with prepetition

claims for damages against Debtors ResCap, GMAC Mortgage, LLC, ("**GMACM**") and all their

subsidiaries in an action (the "**State Action**") pending in the Loudoun County Circuit Court in

Virginia (the "**Virginia Court**").  (Motion at ¶ 1.)  The Motion should be denied because

Movants cannot satisfy their burden of establishing sufficient cause as to why their case should

be permitted to proceed notwithstanding the statutorily imposed breathing spell to which the

Debtors are entitled under section 362 of title 11 of the United States Code (the "**Bankruptcy**

**Code**").

2.      Movants filed a complaint commencing the State Action on October 18,

2010 (the "**Complaint**").  (Delehey Dec. at ¶ 5.)  The Complaint was not served upon the

Debtors, and no further actions were taken in the State Action until September 2012, when

Mortgage Electronic Registration Systems, also a named defendant, filed a motion to dismiss for

lack of service.  (Delehey Decl. at ¶ 5.)

3.      Movants are not borrowers under a mortgage loan owned or serviced by

the Debtors, casting doubt on whether Movants have even stated a claim against the Debtors in

the State Action as to which relief can be accorded.  (Delehey Decl. at ¶ 4.)  In any event,

1

Movants have not analyzed any of the relevant <u>Sonnax</u> factors in support of their request for

relief from the stay, and have failed to satisfy their requisite burden of proof.

4.    For the above reasons, and as more fully set forth below, the Debtors

respectfully request that this Court deny the Motion.

## **BACKGROUND**

### A.    **General Chapter 11 Case Background**

5.    On the Petition Date, each of the Debtors filed a voluntary petition in this

Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and

operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a)

and 1108.  These cases are being jointly administered pursuant to Rule 1015(b) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  No trustee has been appointed in the

Chapter 11 Cases.

6.    On May 16, 2012, the United States Trustee for the Southern District of

New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured

creditors (the "**Creditors' Committee**").

7.    On July 3, 2012, the U.S. Trustee appointed the Honorable Arthur T.

Gonzalez, former Chief Judge of this Court, as examiner (the "**Examiner**").

### B.    **The State Action**

8.    Movants filed the Complaint commencing the State Action on October 18,

2010.  (Delehey Decl. at ¶ 5.)

9.    Movants did not serve the Complaint on the Debtors, and no further action

was taken in the Virginia Court with respect to the Debtors following the filing of the Complaint.

(Delehey Decl. ¶ 5.)

2

10. As of the Petition Date, the State Action remained pending in the Virginia Court. (See Ex. B to the Delehey Decl.) Movants are seeking money damages claims against the named defendants, which include each of the Debtors, for alleged violations of the Virginia Business and Professions Code and the Truth in Lending Act (15 U.S.C. § 1641), as well as injunctive and other relief. (See Mot. ¶ 1; Affirmation in Support of Mot. ¶ 3; Ex. A to Delehey Decl. (Complaint) at pp. 58-66)

11. The State Action is now stayed by the automatic stay as to the Debtors.

12. On October 12, 2012, Movants filed the Motion.

## OBJECTION

### A. Applicable Authority

13. The automatic stay imposed by section 362(a) of the Bankruptcy Code is a core provision of bankruptcy law that promotes the reorganization process by providing the debtor with "a breathing spell from [its] creditors."[1] Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 65 (2d Cir. 1986) (holding that the automatic stay applied to an appeal that otherwise would "distract . . . debtor's attention from its primary goal of reorganizing"). It affords "one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986) (citation and internal quotation marks omitted). Likewise, it allows the debtor to manage and, where appropriate, centralize all creditor actions against property of the estate, "so that

---

[1]    Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition: operates as a stay, applicable to all entities, of –

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other

arenas." <u>Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)</u>, 922 F.2d 984,

989 (2d Cir. 1990).

14.    Section 362(d)(1) of the Bankruptcy Code provides that a court may

grant relief from the automatic stay for "cause."    <u>See</u> 11 U.S.C. § 362(d)(1).  In the context of

stayed prepetition litigation, the Second Circuit has outlined the following 12-factor test to

determine whether good cause exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution
> of the issues, (2) the lack of any connection with or interference
> with the bankruptcy case, (3) whether the other proceeding
> involves the debtor as a fiduciary, (4) whether a specialized
> tribunal with the necessary expertise has been established to hear
> the cause of action, (5) whether the debtor's insurer has assumed
> full responsibility for defending the action, (6) whether the action
> primarily involves third parties, (7) whether litigation in another
> forum would prejudice the interests of other creditors, (8) whether
> the judgment claim arising from the other action is subject to
> equitable subordination, (9) whether movant's success in the other
> proceeding would result in a judicial lien avoidable by the debtor,
> (10) the interests of judicial economy and the expeditious and
> economical resolution of litigation, (11) whether the parties are
> ready for trial in the other proceeding and (12) the impact of the
> stay on the parties and the balance of harms.

<u>Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)</u>, 907 F.2d 1280,

1286 (2d Cir. 1990); <u>see also</u> <u>Mazzeo v. Lenhart (In re Mazzeo)</u>, 167 F.3d 139, 143 (2d Cir.

1999) (vacating a district court order granting stay relief where the bankruptcy court had not

applied the <u>Sonnax</u> Factors, made only sparse factual findings and ultimately did not provide the

appellate court "with sufficient information to determine what facts and circumstances specific to

the present case the court believed made relief from the automatic stay appropriate…").  In a

given case, however, not all of the factors will be relevant, and the court may disregard

irrelevant factors. <u>See</u> <u>Mazzeo</u>, 167 F.3d at 143.

15.    The moving party bears the initial burden to demonstrate, using the

relevant Sonnax factors, that good cause exists for lifting the stay.[2]  The movant's burden is

especially heavy if it is an unsecured creditor.  "[T]he general rule is that claims that are not

viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless

extraordinary circumstances are established to justify such relief."[3]

**B.    Analysis of the Relevant Sonnax Factors**

16.    Here, the Movants have not performed any analysis of the Sonnax factors,

and have failed to satisfy their burden of proof.  However, even a cursory analysis of the relevant

Sonnax factors[4] demonstrates that the stay should not be lifted.

17.    The first Sonnax factor (complete resolution of the issues) does not

support stay relief.  As the Debtors do not own or service a mortgage loan issued to Movants

(Delehey Decl. at ¶ 4), it is unclear what "issues" arising under the State Action even implicate

the Debtors.  Further, the Complaint was never served on the Debtors, and no further actions

have been taken in the case by or against the Debtors.  (Delehey Decl. at ¶ 5.)  Assuming

Movants were to actually commence prosecuting the State Action, lifting the stay would only

give rise to preliminary motion practice, including, potentially, filing by the Debtors of a motion

to dismiss the case for lack of service, failure to prosecute and/or failure to state a claim.

18.    The second Sonnax factor (interference with the bankruptcy case) weighs

in favor of denying the Motion.  Significant attention must be devoted to address the

---

[2]    See Sonnax, 907 F.2d at 1285.  See Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow), 126
F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the
movant fails to make an initial showing of cause.") (quotation omitted).

[3]    In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also In re Motors Liquidation Co., Case. No. 10
Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010).

[4]    Sonnax Factors numbers 3 and 9 are not applicable to the facts here.  The Debtors do not address Sonnax Factor
8 in their objection, but reserve all right with regard thereto.

extraordinary operational difficulties that arise in complex Chapter 11 cases such as these,

particularly given that these Chapter 11 cases are in still in a relatively early phase.  In addition

to addressing day-to-day challenges, it is of the utmost importance that the Debtors devote their

complete efforts on the critical tasks necessary to achieve a successful resolution of these

cases— namely, maximizing the value of their assets through the contemplated asset sales,

consummating various settlements, complying in full with the Examiner's investigation,

proposing and confirming a Chapter 11 plan, and proceeding with the Chapter 11 claims

resolution process.  Granting stay relief at this juncture would undoubtedly invite countless other

lift stay motions from the Debtors' myriad other prepetition claimants, opening the "floodgates"

to litigation which would impose a burden on the Debtors and their estates, thereby depriving

them of the "breathing spell" the automatic stay provides and distracting them from addressing

the critical tasks necessary to achieve a successful resolution of the Chapter 11 cases.  The

Bankruptcy Code provides an orderly and centralized claims process meant to prevent a debtor

from being forced to litigate claims in a piecemeal, ad hoc manner.  Granting relief from the stay

at this relatively early stage would in effect require the Debtors to conduct the claims resolution

process in hundreds of forums across the country.

      19.     The fourth <u>Sonnax</u> factor (creation of a specialized tribunal) does not

support relief from the stay because no specialized tribunal has been created to hear the claims

brought in the State Action.  (Delehey Decl. ¶ 9.)  The Bankruptcy Code specifically

contemplates resolving prepetition claims against the Debtors via a centralized claims resolution

process shepherded by the bankruptcy courts.  This Court has recognized that it can interpret and

6

apply state law in resolving claims through the bankruptcy process.[5]  Movants' claims are no exception.

20.    The fifth Sonnax factor (assumption of defense by insurer) does not support relief because the Debtors pay their legal defense fees and costs out-of-pocket for this action (and many others).  As a result, requiring the Debtors to defend the State Action will result in increased out-of-pocket defense costs for outside counsel fees and expenses alone. (Delehey Decl. ¶ 10.)

21.    The sixth Sonnax factor (whether the action primarily involves third parties) does not support relief because each of the Debtors are named defendants in the State Action, and, if the State Action were allowed to go forward, each of the Debtors would be required to actively participate in the State Action to avoid facing an adverse judgment.[6]

22.    The seventh Sonnax factor (whether litigation in another forum would prejudice the interests of other creditors) also does not support relief, because the interests of the Debtors' other creditors will be prejudiced if the automatic stay is lifted to allow the State Action to proceed against the Debtors at this juncture in the Chapter 11 Cases.  Having to defend such an action would deplete estate resources, thereby prejudicing other creditors.  Of greater significance, lifting the stay would also expose the Debtors to have to defend countless other lift stay motions. This would impose a heavy burden on the valuable time and efforts of the Debtors' employees and retained professionals, tax the Debtors' financial resources, and result in a wholly

---

[5]    See, e.g., In re Bally Total Fitness of Greater N.Y., Inc., 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009) ("This Court has significant experience in applying state law….").

[6]    See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.), 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate, suggesting that continuance of the stay [was] proper.").

unnecessary distraction to the Debtors' focus on achieving the objectives of the Chapter 11

Cases—the maximization of value for creditors.

23.    The tenth and eleventh <u>Sonnax</u> factors (judicial economy and readiness for

trial, respectively) both weigh in favor of denying relief from the stay.  As set forth above, no

action has been taken in the State Action with respect to the Debtors other than the filing of the

Complaint, which was never served on the Debtors.  (Delehey Decl. ¶ 5.)  Accordingly, the State

Action is not ready for trial, and no judicial resources have been expended in resolving the State

Action.  The Debtors' priority at this time is in ensuring a speedy and effective reorganization

process, which may be hindered if they are forced to litigate this or any other stayed suit during

the pendency of the Chapter 11 cases, and particularly at this juncture in the Chapter 11 cases.

(Delehey Decl. ¶¶ 7-8.) Thus, the interests of judicial economy and the economical resolution of

litigation would best be served by resolving Movants' claims against the Debtors through the

uniform bankruptcy claims process, which will be utilized to address the thousands of claims

filed against these estates, including claims asserted in the hundreds of legal actions pending

against the Debtors.

24.    The twelfth <u>Sonnax</u> factor (balance of harms) weighs in favor of denying

the Motion.  Movants have not demonstrated how the continued suspension of the State Action

results in any material prejudice to Movants, particularly where they have failed to take

action to prosecute their suit for nearly two and a half years.  Even if the Movants' claims are

meritorious, they will be accorded general unsecured claims against the Debtors' estates.  They

will experience no great benefit if awarded such claims sooner rather than later.  On the other

hand, the cost to the Debtors of lifting the automatic stay at this relatively early stage of the

Chapter 11 Cases is substantial, particularly in light of the critical hearings and deadlines facing

the Debtors over the course of the next several months.  (See Delehey Decl. ¶¶ 7-8.)  As

recognized by this Court in connection with other motions for stay relief,[7] the Debtors are

working diligently towards achieving the proposed asset sales, obtaining approval of the RMBS

settlement, complying with the Examiner investigation, and participating in the chapter 11 plan

process.  In the meantime, the Debtors need the protection of the automatic stay to afford

themselves the "breathing space" necessary to allow them to restructure and preserve the value

of their assets for the benefit of their creditors.  Since the first motion seeking relief from stay

was filed, dozens of additional motions seeking relief from the automatic stay to proceed with

litigation have been filed and the Debtors and their counsel have received several additional

informal requests for such relief.  Forcing a debtor to defend against suits and proceedings

brought in other venues distracts and hinders a debtor from focusing on its own reorganization

efforts.[8]  The balance of the harms clearly favors maintaining the automatic stay with respect to

the State Action.

## CONCLUSION

25.    Based on the weight of settled authority and its application to the Motion

as described above, the Debtors respectfully submit that the Movants have failed to meet their

burden.  Substantially all of the applicable Sonnax Factors weigh heavily in favor of maintaining

the automatic stay.  As such, the Court should deny the Motion.

---

[7]    See, e.g., Oct. 10, 2012 Hr'g. Tr., at 111:24-112:6; 114:6-8 ("Court:  Now is clearly not the time to lift the stay
to permit a trial to go forward in district court in Washington-- the state of Washington.  And I say that because
of the very, very large number of contested matters and other important events in this Chapter 11 case that's
scheduled between now and the end of January.  So on the basis of burden alone, I will not lift the stay at this
point in time. . .  [T]he debtors appropriately are consumed with very, very important matters that are critical to
this Chapter 11 case.").

[8]    See Bally, 402 B.R. at 624 (finding that class actions distract the debtor from the central tasks of stabilizing
operations and cash flows and hence harms all creditors); Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.),
104 B.R. 659, 666 (D.N.J. 1989) (finding that allowing debtors a sufficient window to reorganize their estates
serves the public interest more than allowing class actions to be resolved sooner).

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an

Order denying the Motion and grant such other relief as the Court deems proper.


New York, New York                    /s/ Norman S. Rosenbaum
Dated: October 29, 2012               Gary S. Lee
                                      Norman S. Rosenbaum
                                      Erica J. Richards
                                      MORRISON & FOERSTER LLP
                                      1290 Avenue of the Americas
                                      New York, New York 10104
                                      Telephone: (212) 468-8000
                                      Facsimile: (212) 468-7900

                                      *Counsel to the Debtors and
                                      Debtors in Possession*

10

**EXHIBIT 1**

**<u>Delehey Declaration</u>**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman Rosenbaum
Erica J. Richards

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------ ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------ ) | | |

**DECLARATION OF LAUREN GRAHAM DELEHEY,**
**IN-HOUSE LITIGATION COUNSEL AT RESIDENTIAL CAPITAL, LLC,**
**IN SUPPORT OF DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM STAY**
**FILED BY M. NAWAZ RAJA AND NEELUM NAWAZ RAJA [DOCKET NO. 1818]**

I, Lauren Graham Delehey, declare as follows:

**A.    Background and Qualifications**

1.    I serve as In-House Litigation Counsel in the legal department (the "**Legal
Department**") at Residential Capital, LLC ("**ResCap**"), a limited liability company organized
under the laws of the state of Delaware and the parent of the other debtors and debtors in
possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**").  I have held
this position since I joined ResCap on August 1, 2011.  In my role as In-House Litigation
Counsel at ResCap, I am responsible for the management of residential mortgage-related
litigation, including class actions, mass actions and multi-district litigation.  I am authorized to

submit this declaration (the "**Declaration**") in support of the *Debtors' Objection To Motion for Relief from Stay* filed by *pro se* parties M. Nawaz Raja and Neelum Nawaz Raja, as of October 12, 2012 (the "**Objection**").[1]

2.      In my capacity as In-House Litigation Counsel, I am generally familiar with the Debtors' litigation matters, including the State Action.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' litigation case files, books and records as well as other relevant documents; my discussions with other members of the Legal Department; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' litigation matters, financial condition and history.  In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

B.      **Litigation Pending Against the Debtors**

3.      As of October 22, 2012, the Debtors by way of direct claims and counter-claims are defendants, respondents, or are contractually obligated to defend third parties in 1,911 pending litigation and contested foreclosure and bankruptcy matters filed in jurisdictions all around the country.  Approximately fifty-nine percent (59%) of these matters concern either (i) defenses asserted in foreclosure, eviction, or borrower bankruptcy proceedings or (ii) title

---

[1]  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

disputes, both of which are exempted from the automatic stay by the Supplemental Servicing Order; fourteen percent (14%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not subject to the stay, notwithstanding the Supplemental Servicing Order; twenty-six (26%) are stayed and one percent (1%) are still under review for their status. Thus, approximately seventy-three percent (73%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not stayed and continue to proceed in various jurisdictions across the country.  This is in addition to the tens of thousands of foreclosure actions and borrower bankruptcies the Debtors are parties to in actions pending throughout the fifty states primarily managed by the Debtors' mortgage default group.  Notwithstanding the application of the Supplemental Servicing Order, there are still a substantial number of cases – approximately 26% of 1,911 (or 496) cases – that are stayed by the automatic stay, including the action that is the subject of the Motion.

### C.  The State Action

4.      My staff has reviewed the Debtors' loan files and, according to their records, Movants are not borrowers under a mortgage loan owned or serviced by the Debtors.

5.      Movants filed a complaint commencing the State Action on October 18, 2012 (the "**Complaint**").  See **Exhibit A**, annexed hereto.  The Complaint was not served upon the Debtors, and no further actions were taken in the State Action until September 25, 2012, when Mortgage Electronic Registration Services, also a named defendant, filed a motion to dismiss for lack of service.  See **Exhibit B**, annexed hereto.

### D.  Lifting the Automatic Stay Will Interfere With the Chapter 11 Cases

6.      The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have a contractual obligation

to defend.  The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial.  The Legal Department has been the primary group tasked with assisting in the development and implementation of the Supplemental Servicing Order.

7.      As a result of the Debtors' bankruptcy filings and the entry of the Supplemental Servicing Order, the Legal Department's responsibilities have increased to include (i) the review and analysis of individual claims as they arise in conjunction with internal business personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability of the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation counsel and its mortgage default counsel regarding the application of the Supplemental Servicing Order (and will continue to do so as new legal actions arise); (iii) assisting Chapter 11 counsel with the preparation of various motions, responses to motions for relief from stay and other Court filings,[2] as well as various bankruptcy related tasks; (iv) assisting Chapter 11 counsel and

---

[2]     By way of example, the Legal Department had a significant role in the drafting of the motion to approve the Supplemental Servicing Order and the interim Supplemental Servicing Order [Docket No. 181] and participated in the negotiation of the final Supplemental Servicing Order.  The Legal Department also, *inter alia*, assisted in the preparation of the Debtors' schedules and statement of financial affairs, their motion to approve ordinary course professionals, and all of the responses to the motions for relief from the automatic stay, as well as other motions filed to date.

internal business personnel with Chapter 11 reporting requirements; (v) assisting with pending discovery with respect to the 9019 settlement with RMBS litigation plaintiffs; (vi) assisting with matters pertaining to the pending asset sales; (vii) complying with the Examiner's investigation; and (viii) assisting with the claims reconciliation process. As the Chapter 11 Cases proceed, the Legal Department will take an active role in the plan and disclosure statement process. These responsibilities are ongoing and will continue and no doubt expand as these Chapter 11 Cases progress.

8.      Given the multi-faceted role the Legal Department plays in (i) the managing of the Debtors' litigation and contested foreclosure and bankruptcy matters; (ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy counsel and financial advisors with several tasks associated with the pending sales of the servicing platform, legacy assets, RMBS settlement and attendant litigation, not to mention the various motions and other filings in the Debtors' bankruptcy case, carrying out its ordinary course tasks while at the same time discharging its duties in the Chapter 11 Cases has been and will continue to be a monumental task. Permitting legal actions otherwise stayed by the Debtors' bankruptcy to proceed (not to mention allowing entirely new actions to be commenced), therefore, would create a significant burden on the Debtors by adding an additional workload of up to approximately 496 cases. This in turn would divert the Legal Department's and other critical employees' attention from the critical tasks of running the Debtors' businesses, the administration of the Chapter 11 cases and significantly increase the Debtors' out-of-pocket legal costs.

E.      **Other <u>Sonnax</u> Factors**

9.      As far as I am aware, no specialized tribunal has been created to hear any

of the claims involved in the State Action, which raises both federal and state law claims.

10.     In the vast majority of the cases, including the State Action, the Debtors

pay their legal defense fees and costs out-of-pocket.  As a result, requiring the Debtors to defend

the State Action will result in increased out-of-pocket defense costs for outside counsel fees and

expenses alone.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Dated:  October 29, 2012


    /s/ Lauren Graham Delehey
Lauren Graham Delehey
In-House Litigation Counsel for
Residential Capital, LLC

**<u>EXHIBIT A</u>**

# VIRGINIA

## IN THE CIRCUIT COURT OF LOUDOUN COUNTY

M.Nawaz Raja

Common Wealth of Virginia
Accomack County
Albemarle County
Alexandria City
Alleghany County
Amelia County
Amherst County
Appomattox County
Arlington County                    Case No. CL- 64172
Augusta County
Bath County
Bedford City
Bedford County
Bland County
Botetourt County
Bristol City
Brunswick County
Buchanan County
Buckingham County
Buena Vista City
Campbell County
Caroline County
Carroll County
Charles City County
Charlotte County
Charlottesville City
Chesapeake City
Chesterfield County
Clarke County



1

Clifton Forge City
Colonial Heights City
Covington City
Craig County
Culpeper County
Cumberland County
Danville City
Dickenson County
Dinwiddie County
Emporia City
Essex County
Fairfax City
Fairfax County
Falls Church City
Fauquier County
Floyd County
Fluvanna County
Franklin City
Franklin County
Frederick County
Fredericksburg City
Galax City
Giles County
Gloucester County
Goochland County
Grayson County
Greene County
Greensville County
Halifax County
Hampton City
Hanover County
Harrisonburg City

Henrico County
Henry County
Highland County
Hopewell City
Isle of Wight County
James City County
King and Queen County
King George County
King William County
Lancaster County
Lee County
Lexington City
Loudoun County
Louisa County
Lunenburg County
Lynchburg City
Madison County
Manassas City
Manassas Park City
Martinsville City
Mathews County
Mecklenburg County
Middlesex County
Montgomery County
Nelson County
New Kent County
Newport News City
Norfolk City
Northampton County
Northumberland County
Norton City
Nottoway County
Orange County
Page County

3

Patrick County
Petersburg City
Pittsylvania County
Poquoson City
Portsmouth City
Powhatan County
Prince Edward County
Prince George County
Prince William County
Pulaski County
Radford City
Rappahannock County
Richmond City
Richmond County
Roanoke City
Roanoke County
Rockbridge County
Rockingham County
Russell County
Salem City
Scott County
Shenandoah County
Smyth County
Southampton County
Spotsylvania County
Stafford County
Staunton City
Suffolk City
Surry County
Sussex County
Tazewell County
Virginia Beach City
Warren County
Washington County

4

Waynesboro City
Westmoreland County
Williamsburg City
Winchester City
Wise County
Wythe County
York County

Plaintiffs

V

Indy Mac Bank FSB,
One West Bank FSB,
Indy Mac Mortgage Servicing (a division of One West Bank FSB),
Indy Mac MBS Inc, Indy Mac ABS Inc,
Lehman Brothers Inc,
COUNTRYWIDE HOME LOANS, INC, nka BANK OF AMERICA, N.A.,
BANK OF AMERICA, N.A.,
JP MORGAN CHASE, CITIMORTGAGE, INC.,
Wells Fargo Bank NA,
GMAC MORTGAGE, LLC, GMAC LLC,
Wachovia Bank,
Deutsche Bank National Trust Company,
UBS Real Estate,
Sun Trust Bank NA,
Chevy Chase Bank NA,
American Servicing Company
Mortgage Electronic Registration System
John Doe 1-1000, et al

Defendants

# RECOVERY PURSUANT TO VIRGINIA § 8.01-216.1, THE VIRGINIA FRAUD AGAINST TAX PAYER'S ACT

5

Comes now of Virginia, M. Nawaz Raja on behalf of real parties in interest, the above named 95 Counties of Virginia and 39 Independent Cities, which are considered County Equivalent, hereby complains of the Defendants as under please:

## STATEMENT OF THE CASE

Plaintiff M. Nawaz Raja resident of Loudoun County Virginia since 1998 on behalf of Common wealth of Virginia and all of the Counties and Independent Cities, which are considered county equivalent, of Common Wealth of Virginia seeks recovery pursuant to Virginia § 8.01-216.1, the Virginia Fraud Against Taxpayers Act because the Defendants made false representations in order to avoid payment in full of all recording fees reflecting the establishment and/or transfer of secured interests in real estate properties in the State. After having recorded false, fraudulent, misleading and untruthful documents with the land records of the Counties of this State, Defendants failed to cure/correct said false, fraudulent, misleading and untruthful documents and, thereby, avoided, decreased and/ or diminished their obligation to pay fees or monies to the Counties, the above named real parties in interest.

6

# **PARTIES**

Plaintiff M. Nawaz Raja, is a resident of the State of Virginia and an original source of information and authorized to bring this action pursuant to and within the meaning of Virginia Fraud Against Tax payers § 8.01-216.1 and is the qui tam Plaintiff because M.Nawaz Raja has done detailed research and consulted various  law Firms and secondary mortgage market business and, during the course of his work in July 2009, became aware that Defendants were making false statements in order to avoid or decrease payments owed to the above-named Counties, and brings this action under Virginia Fraud Against Tax payers § 8.01-216.1 against Defendants for violations of these sections.

1. The State of Virginia, ["Virginia"] is a sovereign state and is one of the United States of America and may be entitled damages for the benefit of State and Counties based upon the false claims asserted herein.

2. The above-named 95 Counties of Common Wealth of Virginia and 39 Independent Cities, which are considered County equivalent, are political subdivisions of the State, which will

ultimately be entitled to a portion of the proceeds of this action. The counties and Common Wealth of Virginia's local governments are the real parties in interest. Qui tam Plaintiff M. Nawaz Raja has brought this action on behalf of the real parties in interest.

3. Defendant  Mortgage Electronic Registration System, Inc is a Delaware Corporation and is a subsidiary of MERSCORP, Inc and has done and is still doing business in Common Wealth of Virginia, in above named counties, with its principle place of business at 1818 Library Street, Suite 300, Reston, VA 20190, is and was, at all times material hereto, a corporation which was engaged in the business of, *inter alia,* acting as an alleged "nominee and beneficiary[1]" for various mortgage lenders and their servicing agents for purposes of purporting to assign various rights incident to a mortgage Note and/or a mortgage

---

[1] In all of the Deed of Trust Defendant "MERS" is listed as "BENEFICIARY". MERS cannot be the beneficiary as MERS is not the Creditor. MERS name is there on Deed of Trust but MERS name is not there on the Promissory Note, and this renders the Deed of Trust "VOID" and the Promissory Note becomes "UNSECURED". These all Deeds of Trust need to be voided by the court's order and need to be re-recorded with the County recording fees and State Stamp Duties after the corrections. In addition to this all transfers of mortgages which were not recorded by using MERS be recorded with fees, penalties and interest @ 100% for depriving the counties and states for the last 17 years. MERS and its members were involved in the Tax Evasion of 164 Million dollars per year for last 17 years and more, which need to be recovered and given to the all of the 95 Counties of Common Wealth of Virginia and 39 Independent Cities, which are considered County equivalent, are political subdivisions of the State, which will ultimately be entitled to a portion of the proceeds of this action.

to third parties.  Defendant MERS [2]is involved in Tax Evasion

and owes 164 Million US Dollars X 17 years to all States of

Union for taxes and recording fees. MERS does nothing but

conceal information from the borrowers and has secret

agreements with the possible beneficiaries of these loans.

Defendant <u>MERS [3]takes tax dollars away from our schools,</u>

<u>children, counties etc</u>. By using Defendant MERS names on

deeds and other paperwork, the lenders are able to avoid

county recording fees. Defendant MERS has no financial

interest in the loans, but is listed as actual owner or surrogate

for the owner on millions of deeds of trust, even as individual

mortgages are repeatedly traded and packaged inside of

mortgage pools. Plaintiffs argue that listing the Defendant

MERS as the owner of mortgages in which Defendant MERS

has no interest in order to avoid filing fees and taxes that are

---

[2] MERS system may benefit its members by enabling them to sell, transfer, and assign mortgages amongst themselves without the burden of documenting their transactions on paper or in the public records; this system has wreaked havoc on our nation's homeowners. In fact, the system implanted by MERS has essentially privatized the mortgage records while undermining the value of county public records. No longer can a homeowner visit a government office, review the public records, and learn the identity of who actually owns his mortgage.

[3] MERS is designed to be the cradle-to-grave notice proxy for all of the financial institutions and shell companies that hold title to the loan at different times—yet remain undocumented both in the public record and often on MERS' own database and thus depriving the local governments of recording fees.

9

legally required constitutes fraud.  Plaintiff is looking forward to holding these Defendants financial institutions, foreclosure mills and all other Defendants who are aiding and abetting, are responsible for their actions that have deprived the states and counties of much-needed revenue. Defendant MERS being listed as proxy owner of more than half the nation's mortgages is contrary to 200 years of American legal precedent. The whole mess begins  at square One and Square One is a circle of fraud and deceit so large that if civil and criminal charges and fines were levied against the perpetrators in recovery of this tax evasion  from Defendants, which while acting in a joint venture adopted the Mortgage Electronic Registration System ("MERS") to intentionally and knowingly deprive county and state governments of revenue used among other things to maintain county real property records, fund the judiciary, fund school systems, and provide other government services. But for the recordation of false systems, the Defendants would have paid additional recording fees to the counties and the State.

10

4. Every time there is a change in the title (a change occurs when Defendant "MERS" [4]switches the lender on the borrowers title out for another) the local governments require that a new title be recorded after paying the recording fees. Defendant "MERS" charged these recording fees, put it in its own pocket and the change of ownership was not recorded in the county land records and thus deprived the local governments  and Defendant <u>MERS took,  tax dollars away from our schools, children, counties etc by its fraudulent ways in a joint venture with its so called members.</u>

5.  <u>In creating the  Defendant "MERS[5]" the other Defendants actually changed the land title system that United States of</u>

---

[4] To avoid paying county recording fees, mortgage bankers formed a plan to create one shell company  for tax evasion, that would pretend to own all the mortgages in the country—that way, the mortgage bankers would never have to record assignments since the same company would always "own" all the mortgages. They incorporated the shell company in Delaware and called it Mortgage Electronic Registration Systems, Inc. Even though not a single state legislature or appellate court had authorized this change in the real property recording, investors interested in subprime and exotic mortgage backed securities were still willing to buy mortgages recorded through this new proxy system. Because the new system cut out payment of county recording fees it was significantly cheaper for intermediary mortgage companies and the investment banks that packaged mortgage securities. Acting on the impulse to maximize profits by avoiding payment of fees to county governments much of the national residential mortgage market shifted to the new proxy recording system in only a few years. Now about 60% of the nation's residential mortgages are recorded in the name of MERS, Inc. rather than the bank, trust, or company that actually has a  meaningful economic interest in the repayment of the debt.

[5] For the first time in the nation's history, there is no longer an authoritative, public record of who owns land in each county. MERSCORP, Inc., a company closely affiliated with MERS, Inc., now maintains an electronic database that tracks mortgage servicing rights—the right of a company to collect monthly payments on behalf of the actual economic owner or

11

America – for much of its history – has relied upon to

determine legal ownership status of the land titleholders. The

Defendant "MERS" in a joint venture not only did the side step

and avoid paying billions of dollars of fees to the local

governments, the Defendant "MERS" [6]and other Defendants

paid themselves from the fees that Defendant "MERS[7]"

collected for the recording and thus in doing so deprived the

local governments and committed the tax evasion[8], knowingly

and willfully. Defendant "MERS" and its members (Other

Defendants et al) use false documents to avoid paying

---

owners of a loan. Instead of paying county governments, financial institutions pay MERSCORP membership fees and per transaction fees for access to the MERS database and to compensate MERS, Inc. for pretending to own the mortgages these financial institutions register ᴜn the MERSCORP database. Financial institutions (other Defendants et al) have been cavalier about informing MERSCORP of changes in servicing and ownership rights of mortgages because they believe there are no legal penalties for neglecting to make this information available.

[6] MERS describes itself as "an innovative process that . . . eliminates the need to prepare and record assignments when trading residential and commercial mortgage loans." In doing so Defendant "MERS" in a joint venture with other Defendants deprived the local governments of recording fees and committed a tax evasion.

[7] Howard Schneider, *MERS Aids Electronic Mortgage Program*, MORTGAGE BANKING, and January 1, 1997; Carson Mullen, *MERS: Tracking Loans Electronically,* MORTGAGE BANKING, May 31, 2000, 62.

[8] Phyllis K. Slesinger & Daniel McLaughlin, *Mortgage Electronic Registration System*, 31 ID. L. REV. 805, 810-12 (1995) (describing an Ernst & Young study commissioned by mortgage banker to study how much money  they could avoid paying to county governments through the MERS system).

12

recording fees [9]to county governments. At the most simple

level, mortgages and deeds of trust recorded at origination

represent that MERS is the mortgagee or deed of trust

beneficiary. MERS recorded mortgages contain a false

statement. While it is true that MERS recorded mortgages and

deeds of trust also have qualifying language suggesting that

MERS is also a "nominee," the representation that MERS is

the owner of the lien is not some innocuous legalism. It causes

---

[9] County recorders deserve a fair hearing if they were to request payment of recording fees for assignments avoided through use of documents containing these false statements. Recording of these legally and factually false statements caused a reduction in the revenue that county governments would have collected from mortgage financiers. MERS itself used projections of this reduction in revenue in its sales pitches and marketing material. Indeed the studies done by accountants that justified the creation of MERS show how use of the MERS system—which entailed recording false documents—would cause a reduction in fees paid to counties. But perhaps most compelling, pooling and servicing agreements packaging mortgage loans into securities legally require finance companies (other Defendants et al) to record and pay recording fees on every assignment of a mortgage loan from origination through deposit in a securitization trust. In this typical securitization deal, all of the Defendants used the MERS system to duck a contractual obligation to produce recorded assignments for every non-MERS loan included in the pool—even though counties depend on the revenue produced by those assignments. Using false documents to avoid paying fees to the government sounds a lot like tax fraud. If county governments sue to recover unpaid recording fees, MERS and its member financiers will probably argue that tax fraud is distinguishable from using false documents to avoid paying recording fees. In typical cases of unpaid taxes there is some underlying obligation to pay by virtue of statutory tax law. But, in MERS recording fee cases the underlying choice to record a mortgage or assignment, and pay the required fee, is permissive under state land title laws. Thus, the argument: while it may be true that the use of allegedly false statements caused financiers to choose not to pay recording fees, they were free to assume the risk of this choice. Taxes, unlike recording fees, are not permissive. However, state supreme courts offended by using false documents to avoid paying fees do not need to play the financier's music as written. Where financiers recorded false statements of ownership, they could be judicially estopped from denying liability for unpaid recording fees. Courts have held that "[A] party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts."

13

county recorders that maintain grantor-grantee indexes to list

MERS in the chain of title for the land. The false designation

of MERS as a mortgagee or beneficiary creates a false lead in

the true chain of title defeating an essential purpose of

recording mortgages and deeds of trust.

6. All of the Defendants must know that, "The "process loans, not

paperwork" mantra still espoused by MERS [10]is a symptom of

the industry's cavalier and self-defeating attitude toward

attention to detail and laws of Laws for the states are made by

the states, not by these Defendants and their shell entity

Defendant MERS. All the Defendants could take a step toward

restoring national trust by stepping away from the

MERS[11]system and requiring traditional recording practices in

qualified loans and stop the tax evasion. Communities around

the country have elected and hired county recorders to act as

their custodian of property rights. Those recorders who agree

---

[10] Defendant MERS and its members (All other Defendants) believed that they could rewrite property law without a democratic mandate.

[11] The name of MERS, a company that does not actually own any interests in land, increasingly inserts inert gaps in county recorder grantor-grantee indexes that disseminate the chain of title to millions of homes. This growing separation between actual ownership and legally recognized public notice is likely to significantly undermine the usefulness of real property recording systems over the long term. Furthermore, this inconsistent position taken by financial institutions in order to avoid paying modest fees to county recorders has the potential to be challenged. Many counties rely on fees from mortgage and deed of trust assignments to fund the vital services they provide to their communities.

14

the MERS system poses a threat to real property records have an obligation arising from their office to reclaim and restore faith in land title records.

7. Defendant Indy Mac Bank FSB is a foreign corporation, has originated and serviced residential Mortgage loans in all of the counties of the Common Wealth of Virginia, and failed to record the transfer of all mortgage loans and deprived the Common Wealth of Virginia, its counties and local governments of recording fees and has taken  away tax dollars away from our schools, children, counties etc

8.  Defendant One West Bank FSB, the successor of Defendant Indy Mac Bank FSB, is a foreign corporation, has originated and serviced residential Mortgage loans in all of the counties of the Common Wealth of Virginia, and failed to record the transfer of all mortgage loans and deprived the Common Wealth of Virginia, its counties and local governments of recording fees and has taken  away tax dollars away from our schools, children, counties etc

9. Defendant Indy Mac MBS Inc and Indy Mac ABS Inc are the foreign corporations who bought mortgage loans from its own

15

corporations, such as Defendants Indy Mac Bank FSB, Indy

Mac Mortgage servicer (a division of One West FSB) and One

West Bank FSB and failed to record the transfer of all

mortgage loans and deprived the Common Wealth of Virginia,

its counties and local governments of recording fees and has

taken  away tax dollars away from our schools, children,

counties etc

10.      Defendant Lehman Brothers is a  foreign corporation,

has bought the mortgage loans from Indy Mac MBS Inc, Indy

Mac ABS Inc and many other Depositors, failed to record those

mortgage transfers and deprived the Common Wealth of

Virginia, its counties and local governments of recording fees

and has taken  away tax dollars away from our schools,

children, counties etc

11.      Defendant Countrywide  is a foreign corporation,

has originated and serviced residential Mortgage loans  by

using the factious name of America's Whole Lender, as its

fictitious name,  in all of the counties of the Common Wealth

of Virginia, and failed to record the transfer of all mortgage

loans and deprived the Common Wealth of Virginia, its

16

counties and local governments of recording fees and has

taken  away tax dollars away from our schools, children,

counties etc

12.     Defendant Bank of America is a National association, has

originated and serviced residential Mortgage loans in all of the

counties of the Common Wealth of Virginia, and failed to

record the transfer of all mortgage loans and deprived the

Common Wealth of Virginia, its counties and local

governments of recording fees and has taken  away tax dollars

away from our schools, children, counties etc

13.     Defendant J.P. Morgan Chase Inc, dba Chase Home

Mortgage Corporation is a corporation that has originated and

serviced residential Mortgage loans in all of the counties of the

Common Wealth of Virginia, and failed to record the transfer

of all mortgage loans and deprived the Common Wealth of

Virginia, its counties and local governments of recording fees

and has taken  away tax dollars away from our schools,

children, counties etc

14.     Defendant Citi Mortgage Inc, is a corporation that has

originated and serviced residential Mortgage loans in all of the

counties of the Common Wealth of Virginia, and failed to record the transfer of all mortgage loans and deprived the Common Wealth of Virginia, its counties and local governments of recording fees and has taken  away tax dollars away from our schools, children, counties etc

15.    Defendant Wells Fargo bank, NA, is a National Association that  has originated and serviced residential Mortgage loans in all of the counties of the Common Wealth of Virginia, and failed to record the transfer of all mortgage loans and deprived the Common Wealth of Virginia, its counties and local governments of recording fees and has taken  away tax dollars away from our schools, children, counties etc

16.    Defendant GMAC Mortgage LLC, is a limited liability corporation that originated and serviced residential Mortgage Loans in the counties of Common wealth of Virginia, is wholly owned by the Defendant GMAC Mortgage Corporation has originated and serviced residential Mortgage loans in all of the counties of the Common Wealth of Virginia, and failed to record the transfer of all mortgage loans and deprived the Common Wealth of Virginia, its counties and local

18

governments of recording fees and has taken  away tax dollars

away from our schools, children, counties etc

17.      Defendant Wachovia has originated and serviced

residential Mortgage loans in all of the counties of the

Common Wealth of Virginia, and failed to record the transfer

of all mortgage loans and deprived the Common Wealth of

Virginia, its counties and local governments of recording fees

and has taken  away tax dollars away from our schools,

children, counties etc

18.      Defendant AURORA Loans has originated and serviced

residential Mortgage loans in all of the counties of the

Common Wealth of Virginia, and failed to record the transfer

of all mortgage loans and deprived the Common Wealth of

Virginia, its counties and local governments of recording fees

and has taken  away tax dollars away from our schools,

children, counties etc

19.      Defendant Deutsche Bank National Trust Company is a

foreign entity has originated and serviced residential Mortgage

loans in by use of undisclosed lender in a fraudulent way in all

of the counties of the Common Wealth of Virginia under cover,

19

bought the mortgage in foreclosures, involved in rigging of bids
and failed to record the transfer of all mortgage loans and
deprived the Common Wealth of Virginia, its counties and
local governments of recording fees and has taken  away tax
dollars away from our schools, children, counties etc

20.     Defendant UBS Real Estate Securities is  a foreign
corporation, has originated and serviced residential Mortgage
loans as pre-tender lender in all of the counties of the
Common Wealth of Virginia under cover, bought the mortgage
in foreclosures, involved in rigging of bids  and failed to record
the transfer of all mortgage loans and deprived the Common
Wealth of Virginia, its counties and local governments of
recording fees and has taken  away tax dollars away from our
schools, children, counties etc

21.     Defendant Sun Trust Bank, NA is  a  is a National
Association, has originated and serviced residential Mortgage
loans as pre-tender lender in all of the counties of the
Common Wealth of Virginia under cover, bought the mortgage
in foreclosures, involved in rigging of bids  and failed to record
the transfer of all mortgage loans and deprived the Common

Wealth of Virginia, its counties and local governments of

recording fees and has taken  away tax dollars away from our

schools, children, counties etc

22.      Defendant Chevy Chase Bank NA, a/k/n "Capital One"

is a National Association, has originated and serviced

residential Mortgage loans as pre-tender lender in all of the

counties of the Common Wealth of Virginia under cover,

bought the mortgage in foreclosures, involved in rigging of bids

and failed to record the transfer of all mortgage loans and

deprived the Common Wealth of Virginia, its counties and

local governments of recording fees and has taken  away tax

dollars away from our schools, children, counties etc

23.      Defendant American Servicing Company, is  a foreign

corporation, has originated and serviced residential Mortgage

loans as pre-tender lender in all of the counties of the

Common Wealth of Virginia under cover, bought the mortgage

in foreclosures, involved in rigging of bids  and failed to record

the transfer of all mortgage loans and deprived the Common

Wealth of Virginia, its counties and local governments of

21

recording fees and has taken  away tax dollars away from our
schools, children, counties etc

24.      Defendants JOHN DOE 1-1000 are Corporations,
Partnerships, Limited Liability Companies has originated and
serviced residential Mortgage loans in all of the counties of the
Common Wealth of Virginia, and failed to record the transfer
of all mortgage loans and deprived the Common Wealth of
Virginia, its counties and local governments of recording fees
and has taken away tax dollars away from our schools,
children, counties etc. Defendants JOHN DOE 1-1000 are
some other entities which are liable and responsible for
concealing, avoiding, or decreasing fees/monies which are the
rights of all of the counties of Common Wealth of Virginia and
which are owed to the all of the counties of the Common
Wealth of Virginia.

## **<u>GENERAL ALLEGATIONS</u>**

25.      Recovery is sought pursuant to the Virginia Fraud
against Tax payers § 8.01-216.1 for all acts and false claims
made by the Defendants in a joint venture and occurring

22

within Seventeen (17) years immediately preceding the filing of this Complaint.

26.     During the seventeen years immediately preceding the filing of the original Complaint herein, Defendants, with full knowledge, and/or reckless disregard, and or willful ignorance, made false representations in order to avoid payment in full for all fees for recordation of documents reflecting the establishment and/or transfer of secured interests in real property in the  Common Wealth of Virginia S, and further knowingly failed to record documents with the intent of avoiding payments of recording fees to the Counties and deprived the Common Wealth of Virginia, its counties and local governments of recording fees and has taken  away tax dollars away from our schools, children, counties etc

27.     The Defendants while acting in a joint venture adopted the Mortgage Electronic Registration System ("MERS") to intentionally and knowingly deprive county and state governments of revenue used among other things to maintain county real property records, fund the judiciary, fund school systems, and provide other government services. But for the

23

recordation of false systems, the Defendants would have paid

additional recording fees to the counties and the State.

28.     Defendant's MERS record is not a public record and

borrowers do not have access to this and it was intentionally,

knowingly was devised by all of the Defendants to deprive  all

of the counties of Common Wealth of Virginia  of recording fees

and has taken  away tax dollars away from our schools,

children, counties etc

29.     MERS is named in millions of recorded documents in the

counties in Common Wealth of Virginia.

30.     Defendants recorded or caused to be recorded deeds of

trust/mortgages and other documents which identified MERS

as the "Beneficiary," which MERS is not, or the "nominee of

the lender" and "lender's successors and assigns," which

MERS never was, as holding "legal title" when the legal title

rested with the Trustee in the deed of trust in this State which

uses a deed of trust to secure a mortgage; thereby, the

Defendants falsely named, appointed, and or characterized

MERS in any of the afore-named capacities in numerous

24

documents recorded throughout the counties of the State of

the last seventeen (17) years.

31.     Defendants made these characterizations for MERS

despite the fact that MERS never had and has no employees,

and, instead, purposed to act since MERS' inception, through

alleged authorized certifying officers and signatories who were

never authorized to act by any official act or corporate

resolution or to act in any MERS' representative capacity

whatsoever. Further, such alleged signatories or certifying

officers were not and are not authorized by any applicable law

to take any action on behalf of MERS with regard to any

documents recorded in the State bearing MERS' name or on

MERS' behalf.

32.     Additionally, these documents affected the interests in

real estate and, if recorded, were required to be recorded

pursuant to recording laws of Commonwealth of Virginia, in

order to avail themselves of the applicable foreclosure statutes,

benefit from the designation and presumption which

accompany the characterization as a secured creditor and

ultimately benefit from the secured lien position in land

25

records, all recorded documents were required to be recorded
without false statements so as to maintain the veracity and
sanctity of the land records and to allow the general public to
rely on the truth of any document tiled therein. Defendant
MERS record is not the Public record and the home owners do
not have access and this was intentionally devised by all of the
defendants to deceive borrowers and deprive the counties of
the Common Wealth of Virginia of recording fees and has
taken  away tax dollars away from our schools, children,
counties etc

33.      Despite millions of deeds of trust that were executed with
promissory notes which notes were then transferred to various
entities such as MBS , ABS and Securities underwriters, that
were not members of MERS, the Defendants with reckless
disregard, and or willful ignorance, failed to record the
documents described in this  Complaint and other documents
in the above- named Counties. Plaintiff M. Nawaz Raja on
behalf of all of the counties of the Common Wealth of Virginia
now brings this action  pursuant to Virginia § 8.01-216.1, the
Virginia Fraud Against Taxpayers Act , against all of the

26

defendants for violations of these statues and laws of the Common wealth of Virginia.

34.     Defendant MERS had been named as the mortgagee or beneficiary on approximately 63 [12]million mortgages and deeds of trust in the United States by MERS members.

35.     Defendants acted in concert in violation of Commonwealth land recording laws  each  of the Defendant is liable for violations of the Virginia Fraud against Tax payers § 8.01-216.1.

36.      Defendants obtained monies from borrowers on mortgages in each County of this State, pursuant to settlement statements which indicated recording fees were due and owing, which reflected each defendants' knowledge that such recordings were required by law, but which documents defendants thereafter failed to record. By use of the unfolding drama of the MERS system

37. Defendant failed to record the subsequent transfer of the mortgage loan Defendants with reckless disregard, and or willful ignorance, failed to record the  documents and deprived  all of

---

[12] This number will keep on increasing daily.

the counties of Common Wealth of Virginia  of recording fees and
has taken  away tax dollars away from our schools, children,
counties etc

38.      Additionally, these documents affected the interests in
real estate and were therefore, to be recorded pursuant to
State recording laws, in order to proceed falsely under the
provisions of Common Wealth of Virginia law. Thus,
Defendants recorded documents that did not reflect and do
not reflect the true nature of the security instruments in the
land recording systems throughout the State.

39.      While recording deeds of trust, mortgages, or any other
security instruments and/or assignments the Defendants
availed themselves of  self-made protection from subsequent
purchasers and lien holders. When recording such interests
Defendants were obliged to record only truthful documents
pursuant to the laws of the State. The defendants ignored
these laws, showed disrespect and deprived all of the counties
of Common Wealth of Virginia of recording fees and has taken
away tax dollars away from our schools, children, counties etc.

40.      The Defendants' contractual and agency relationships

28

with the Defendant MERS also required, as does Virginia law, that additional documents be truthfully recorded if there was a transfer of an interest in real property, i.e. the status of the loans and/or documents changed to a non-MERS Member.

41.     Specifically, Defendant MERS's policies and promises with their members oblige them to record and pay for recordation of documents reflecting the establishment and/or transfer of secured interests in real property, or beneficial interest in the underlying promissory notes, when a non-MERS member acquires an interest in any debt evidenced by a security instrument.

42.     Defendants failed to record or cause to be recorded any such documents of a non-MERS member interest in the applicable loans and security instrument with the specific intent of avoiding payments to the Counties of the State. Specifically, all securitized mortgage trusts created by defendants were never members of Defendant MERS but yet allegedly bought ownership interests in the applicable loans.

43.     Based on the false representations, the recorded documents in the land records do not reflect the true

29

beneficial ownership of the loans in question or accurately represent the ownership of the security instruments securing the loans/notes. Thus, the Defendants, Indy Mac Bank FSB, One West Bank FSB, Indy Mac Mortgage Servicing (a division of One West Bank FSB), Indy Mac MBS Inc, Indy Mac ABS Inc, Lehman Brothers Inc, COUNTRYWIDE HOME LOANS, INC., nka BANK OF AMERICA, N.A.,  BANK OF AMERICA, N.A., JP MORGAN CHASE, CITIMORTGAGE, INC., Wells Fargo Bank NA,  GMAC MORTGAGE, LLC, GMAC LLC, Wachovia Bank, Deutsche Bank National trust Company, UBS Real Estate, Sun Trust Bank NA, Chevy Chase Bank NA, American Servicing Company., acted in contravention of their own contractual relationships with Defendant MERS and , likewise, the residential mortgage backed securitization trusts which Defendants represent were also violated and not adhered to as required. Specifically, the applicable disclosures to investors of those securitization certificates and Bonds obliged Defendants to truthfully record deeds of trust,   mortgages, deeds of trust/mortgages assignments, and other documents evidencing the Defendants who are non-MERS Member

30

investors' interest in real property, and, in an event of default, other foreclosure related documents recorded in the counties of the state.

44.     But for the initial recordation of false statements and documents, which false documents also then created an obligation to record other curing/corrective documents, the Defendants would have paid additional recording fees to county recording offices that would have been used for the benefit of all residents of the counties, schools, libraries and the State.

45.     Using those false statements, the Defendants failed to satisfy their own contractual obligations, violated the sanctity of the land records and used those misleading documents to induce securitization, re-securitization, certificate and bonds investors to purchase residential mortgage backed securities issued from mortgage securitization pools that the Defendants financial institutions created, aggregated, sponsored, underwrote, and sold in the securities markets around the world. All the time never recording any real estate interests of those securitizing trusts in the land records of the State;

31

thereby, not paying the necessary recording fees in the applicable land recording offices and depriving all of the counties of Common Wealth of Virginia of recording fees and has taken away tax dollars away from our schools, children, counties etc

46.      But for the false assertions and claims in the recorded documents, Defendant MERS and/or the other Defendants would have recorded documents and paid county governments fees that accurately reflected the status of the respective loans and documents. In doing so all of the Defendants acted in a joint venture depriving all of the counties of Common Wealth of Virginia of recording fees and has taken away tax dollars away from our schools, children, counties etc

47.      Falsely recording Defendant MERS as the beneficiary on their deeds of trust created an oversimplified, illusory, and false chain of title that purported to justify payment of less money in recording fees; depriving the counties and the State from those fees and directly contributed to the financial deficits that the counties are currently experiencing due to the illegal and fraudulent acts of all of the defendants who acted

32

in a joint venture and deprived all of the counties of Common

Wealth of Virginia of recording fees and has taken away tax

dollars away from our schools, children, counties etc

48.      Further, in an event of foreclosure and in order to

proceed with their fraudulent acts Defendants continued to

record false and misleading documents to avail themselves of

the privilege of the non-judicial foreclosure statutes and falsely

asserted that Defendant MERS was authorized, as a false

"nominee of lender or beneficiary [13]of lender," to record

documents. This enabled Defendants to continue perpetrating

the fraud in the recorded documents by filing additional

documents purporting to designate substitute beneficiaries

---

[13] In <u>Carpenter v. Longan</u>, 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872), **the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."** assigning the mortgage instrument was invalid as it held no beneficial interest in the mortgage instrument for two reasons: 1) **a security instrument, apart from the promissory note giving rise to the debt has no value because there is no debt by which it secures payment; and** 2) **MERS had no beneficial interest in the mortgage instrument that it could assign.** An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."**[Note that this does not include a nominee like MERS. There is a reason for that. The legislature intended to create certainty in contracts and actions on contracts. <u>Using a nominee immediately creates the question of agency. The question of agency immediately raises the question of "who is the principal?" As long as that question exists, this statute is violated. If this statue is violated the deed of trust is void.].** A creditor is not a creditor unless they are owed something. A beneficiary is not a beneficiary unless they are a creditor. In the case of a mortgage note, a beneficiary is not a creditor unless it is the obligee on the note (i.e., the one to whom the note directs payment). There is no escaping this logic.** The beneficiary must be an obligee of the secured obligation (usually the payee of a note), **because otherwise the deed of trust in its favor is meaningless.** Watkins v. Bryant (1891) 91 C 492, 27 P 775; Nagle v Macy (1858) 9 C 426

and appoint substitute trustees to commence fraudulent and illegal foreclosure proceedings.

49.     When a promissory note secured by a Defendant MERS deed of trust was assigned to a mortgage backed security entity ("MBS'), a securitized mortgage investor pool, mortgage loan pool, special purpose vehicle ("SPV"), or real estate mortgage investment conduit ("REMIC"), pursuant to Defendant MERS' own self-made rules and membership agreements, the agency authority, if any, and the relationship of Defendant MERS and all of its members to the promissory note and deed of trust was extinguished, and a truthful recording should have been made to accurately reflect the change of status with respect to the loans; and with respect to the borrowers' and REMIC investors' expectations and contractual obligations.

50.     The MERS membership agreement obliged Defendants to make two separate recordings in the event of a transfer to a mortgage backed security pool or trust (MBS, SPV, or REMIC) outside the Defendant MERS system: (1) an assignment of beneficial interest and (2) a designation of substitute trustee or

34

beneficiary.

51.    Immediately upon every such assignment to a securitized mortgage pool trust, the assignment of the Note and/or Deed of Trust to a new beneficiary was required to be recorded in the County land records where the real estate was located.

52.    Defendant MERS and the named Defendants, however, failed to make such recordings or pay the fees, or made, caused to be made and used false statements regarding the identity of the true  beneficiary of the deeds of trust to commence and advance foreclosure in the State.

53.    Despite millions deeds of trust in the State of Virginia being executed without recording the  promissory notes, which notes were then allegedly transferred to various MBS, SPV or REMICS that were not the  Members of Defendant MERS, the Defendants intentionally failed to record the documents described above, and other documents, so as to reflect the non-MERS' Members' interest in the loans and in the land records and pocketed the billions of dollars which is the right of all counties of the Common Wealth of Virginia.

54.    Defendant MERS had been named as the mortgagee or

beneficiary[14] on approximately billions of deeds of trust in the United States in a joint venture by all of the other Defendants.

55.      Defendants violated the Virginia Fraud against Tax payers § 8.01-216.1.by taking such actions as preparing   and recording documents containing information the Defendants knew was false, misleading, fraudulent including without limitation documents which incorrectly and untruthfully designate Defendant MERS as a beneficiary or nominee[15] of the nominal lender, including but not limited to: 1.) deeds of trust, 2.) deed of appointment of substitute trustee, 3.) notices of default 4.) Trustee's deeds of sale following illegal foreclosure after rigging of bids, and 5.) Recorded documents which purported to assign-from Defendant MERS(which does not own) to some other entities, even entities that are not Defendant  MERS Members, a deed of trust without first transferring the underlying promissory note evidencing such indebtedness, 6.) Preparing and recording other documents

---

[14] The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." **Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623 (Mo. App. 2009)**

[15] *MERS' role in acting as a mortgagee of record in nominee capacity is simply a tax evasion tool*

36

intended to avoid / or decrease recording fees that would
otherwise have reflected the truth.

56.    Defendants, with reckless disregard and or willful
ignorance recorded, knowingly committing civil theft and
continue to record documents wherein employees of
companies other than Defendant MERS falsely identify
themselves as being "officers and/or vice presidents", of
MERS, or in some instances, the Federal Deposit Insurance
Corporation or other entity which has no knowledge of the
actions of these supposed authorized signatories or certifying
officers. These so called certifying "officers and/or vice
presidents, presidents, secretaries, assistant secretaries" have
no employment relationship with Defendant MERS and are
not, in fact, officers or vice presidents, presidents, secretaries,
assistant secretaries of MERS.

57.    These so called certifying "officers and/or vice presidents,
presidents, secretaries, assistant secretaries" have no
employment relationship with Defendant MERS or the other
Defendants and are not, in fact, officers or vice presidents,
presidents, secretaries, assistant secretaries of MERS or the

37

other Defendant and were employees of Lending Processing

Servicing ("LPS") [16]and working on clerical positions. LPS is

under Federal Investigations and have admitted these

fraudulent acts in their annual report 10K, filed before the

Securities Exchange Commission on 02/23/2010 as per SEC

file # 001-34005 on page 37/150.

58.    Defendant MERS and the other Defendants allow non-

MERS employees[17] to identify themselves as officers or vice

presidents, presidents, secretaries, assistant secretaries of

MERS because it creates the illusion of a recorded chain of

title whereby the actual creditors and/or loan beneficiaries

remain hidden from public record and Defendant MERS record

is a private record and not the public record[18]. Because

promissory notes were frequently assigned, the falsely

recorded documents decreased the number of recording fees

paid by Defendants. These fraudulent acts of all of the

Defendants has deprived all of the counties of Common Wealth

---

[16] LPS is involved with these Defendants in a joint venture in preparing the fake, fabricated and illegal documents/assignments/instrument and is under Federal investigations. LPS has admitted these frauds in their annual report 10K filed with the Securities Exchange Commission on 02/23/2010 as per Securities Exchange file # oo1-34005 and available on http://www.sec.gov/

[17] These employees of "LPS" and working on clerical positions and does not have any personal knowledge, and are wearing too many hats for Financial and non-Financial institutions.

[18] Home owners and their attorneys do not have access to it.

of Virginia of recording fees and has taken away tax dollars away from our schools, children, counties etc

59.     Defendants with reckless disregard, an/or willful ignorance, or otherwise, with the requisite actionable *scienter*, made, caused to be made and used, and continued to cause to be made and used, false records and statements designed to conceal, avoid and/or decrease obligations to pay recording fees to the above-named Counties of the State.

60.     The stated Defendant MERS business model was to eliminate the recordation of assignments and transfers of interests that affect real estate throughout State and the remaining jurisdictions of the United States. Defendant MERS advertises itself, via its website and written material as providing the ability to avoid the time and expense of recording through a scheme whereby Defendant MERS falsely holds itself out to the world as a beneficiary[19], or as a nominee or mortgagee. Each of the Defendants herein was aware, at all relevant times, that this recording fee avoidance scheme was predicated upon the false recordings disclosed in this

---

[19] MERS as beneficiary on Deed of Trust is a Portal between two Universes of Commercial Law (Negotiable instrument) and Mortgage Law;

Complaint.

61.     Defendants and others affirmatively acted to make, cause

and use and continue to make, cause and use documents

wherein Defendant MERS is listed as the lien holder of record

on all recorded security instruments relating to notes

registered on the Defendant MERS System. All of the

Defendants and Defendant MERS know that the name of the

Defendant MERS is not on the Note which separates the Note

from Deed of Trust and due to this deed of Trust is VOID and

the Notes becomes UNSECURED.

62.     The process of falsely using  Defendant MERS as the

beneficiary under a security instrument to avoid naming the

true owner of the applicable Note was devised to eliminate

recording of documents affecting interests in real estate, in

violation of the state laws under which MBS trusts were

created, the laws of the State as referred to hereinabove, and

the Defendants continue to use those false documents to avoid

payment of required recording fees and to pursue judicial and

non-judicial foreclosures around the country. The Defendants

MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.,

40

Defendants, Indy Mac Bank FSB, One West Bank FSB, Indy

Mac Mortgage Servicing (a division of One West Bank FSB),

Indy Mac MBS Inc, Indy Mac ABS Inc, Lehman Brothers Inc,

COUNTRYWIDE HOME LOANS, INC., nka BANK OF

AMERICA, N.A.,  BANK OF AMERICA, N.A., JP MORGAN

CHASE, CITIMORTGAGE, INC., Wells Fargo Bank NA,  GMAC

MORTGAGE, LLC, GMAC LLC, Wachovia Bank, Deutsche

Bank National trust Company, UBS Real Estate, Sun Trust

Bank NA, Chevy Chase Bank NA, American Servicing

Company have made, caused to be made, used and continue

to make, cause to be made and use false statements and

records stating that Defendant MERS transferred and

continues to transfer notes secured by deeds of trust in the

State, and those false statements are made for the purpose of

concealing, avoiding and/or decreasing their obligations to pay

recording fees to the above-named Counties of the State.

63.    When the note was transferred to a non-MERS member,

the policies and terms   and conditions of MERS required that

the assignment of the loan from MERS to the non-MERS

member be executed by MERS and recorded in the county

41

land records where the real property was located.

64.     Each and every loan registered on the Defendant MERS

System secured by real property in the State that was secured

by a deed of test, that designated Defendant MERS as the

beneficiary and was transferred to an MBS, is a loan that was

required under SEC rules and regulations and State trust laws

and recording laws under which the pool was created, to be

the subject of a recorded assignment of the deed of trust from

Defendant MERS to the MBS pool.

65.     Defendant MERS did and does maintain a list of all

MERS Members, and no MBS pool and no trust (i.e. MBS,

SPV, REMIC) which owned loans secured by MERS' deeds of

trust on real estate in the State was or is a MERS Member,

and defendants MORTGAGE ELECTRONIC REGISTRATION

SYSTEM, INC., Defendants, Indy Mac Bank FSB, One West

Bank FSB, Indy Mac Mortgage Servicing (a division of One

West Bank FSB), Indy Mac MBS Inc, Indy Mac ABS Inc,

Lehman Brothers Inc, COUNTRYWIDE HOME LOANS, INC.,

nka BANK OF AMERICA, N.A.,  BANK OF AMERICA, N.A., JP

MORGAN CHASE, CITIMORTGAGE, INC., Wells Fargo Bank

42

NA,  GMAC MORTGAGE, LLC, GMAC LLC, Wachovia Bank,
Deutsche Bank National trust Company, UBS Real Estate,
Sun Trust Bank NA, Chevy Chase Bank NA, American
Servicing Company, and each of them knew that the failure to
record the assignment of beneficial interest in each such deed
of trust to the pool was a violation of the Defendant MERS
membership agreements and its self-made Rules and
Regulations, of federal banking laws, of SEC rules and
regulations, of the State laws under which the pools were
created, and of the contractual obligations of those Defendants
to the investors in the pools which owned those loans.

66.     Defendants failed to record the transfers of promissory
notes and the  assignment of the deeds of trust to non-MERS
members, then continued, even after the  Defendants knew
such notes had been assigned outside the MERS system, to
intentionally record documents which Defendants knew were
false and fraudulent in that the documents purported to
reflect a continuing relationship between  Defendant MERS,
and its MERS Members to those loans, and finally the
Defendants failed to pay to the counties the recordation fee for

43

documents the Defendants knew were required to be recorded in order to cause the real property recordation system in the State to reflect the true ownership thereof and convey any authority to act relative to those loans.

67.     The failure to record the required transfers and assignments of security interests and the recordation of knowingly false documents was motivated by the financial self-interest of Defendants to improperly profit from their business activities in depriving the State and its counties of taxes and recording fees. Further, having filed false documents, such false recordings enabled Defendants, Indy Mac Bank FSB, One West Bank FSB, Indy Mac Mortgage Servicing (a division of One West Bank FSB), Indy Mac MBS Inc, Indy Mac ABS Inc, Lehman Brothers Inc, COUNTRYWIDE HOME LOANS, INC., nka BANK OF AMERICA, N.A.,  BANK OF AMERICA, N.A., JP MORGAN CHASE, CITIMORTGAGE, INC., Wells Fargo Bank NA,  GMAC MORTGAGE, LLC, GMAC LLC, Wachovia Bank, Deutsche Bank National trust Company, UBS Real Estate, Sun Trust Bank NA, Chevy Chase Bank NA, American Servicing Company, to hide their other activities with respect

44

to their: (1) . Acquisition of credit default swaps, (2). Credit

derivatives, (3). Lack of any loan origination underwriting

standards, (4). Lack of any underwriting standards for the

securitized mortgage trusts Defendants created, (5).

Hide/clouded their failure to comply with any IRS REMIC

rules regarding transfer of loans to the REMIC entities, and

create the appearance of an arms-length transaction so as not

to violate the well-established principle of good faith and fair

dealing.

68.      The designation of Defendant MERS as a beneficiary[20] or

nominee of the nominal lender on a deed of trust was an

intentional and knowing false designation by Defendant MERS

in numerous ways, namely: 1) neither Defendant MERS nor

the " nominal lender" so designated was the true lender; 2)

Defendant MERS was not the nominee of the true lender of the

funds for which the promissory note was executed; 3)

---

[20] **MERS has no ownership interest in the promissory note,** though MERS attempts to make
it appear as though it is a beneficiary of the mortgage, **it in fact is not a beneficiary**. "But it is
obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as **it has no
rights whatsoever to any payments, to any servicing rights, or to any of the properties
secured by the loans.** To reverse an old adage, if it doesn't walk like a duck, talk, like a duck,
and quack like a duck, then it's not a duck."

45

Defendant MERS did not collect or distribute payments, pay escrow items, hold client funds on deposit, pay insurance for clients or borrowers, or pay taxes; 4) Defendant MERS had no right to collect money on the note or to receive any proceeds or value from any foreclosure; and, 5) the name "MERS" does not appear on any promissory note secured by real estate in the State, 6) Defendant MERS cannot be beneficiary and this makes the Deed of trust "VOID" on which MERS is there.

69.     The Defendants have used the non-judicial foreclosure statute to foreclose upon borrowers with known false documents in violation of the laws of the State. If accurate and non-fraudulent records would be maintained and recorded by Defendants, these truthful documents would result in the payment of fees for the recording of such documents.

70.     An example of how the Defendants availed themselves of the benefit of the non-judicial foreclosure system through the recording of false statements without paying the obligations under those same recording statutes can be demonstrated by the cradle-to-grave review of the documents in the life-cycle of the MERS deed of trust of RAJAS.

46

a.  On or about April 06, 2006, Rajas refinanced the
residence by   executing a deed of trust and Note for
$491,250 with Defendant Indy Mac Bank FSB. Named as
the "nominal lender"  would be referred to in common
parlance as the true beneficiary of the note because the
"lender" is assumed to have been the entity that loaned
the funds for the loan. Defendant MERS[21] was named on
the deed of trust as the beneficiary or the "nominee of the
lender" and the two Trustees named were Metroway Title
& Escrow LLC and Stewart Title Guaranty Co.  The deed
of trust contained false statements in that Defendant
Indy Mac Bank FSB was not the lender and loaned no
funds, and Defendant MERS was not a beneficiary and
was not an agent of the lender and had no authority to
act as an agent of the true lender/true beneficiary.

---

[21] MERS name was not there on the "Promissory Note", **the position of MERS in relation to the, that it did not lend money, did not extend credit, is not owed any money by the mortgage debtors, did not receive any payments from the borrower, suffered no direct,** ascertainable monetary loss as a consequence of the litigation and consequently, has no constitutionally protected interest in the mortgage loan. **<u>Put one name on the note and another on the DOT as beneficiary (particularly when the beneficiary is MERS and therefore an undisclosed principal) and you have direct evidence that the intention of the parties was to separate the note from the mortgage.</u>**

47

b. Indy Mac Bank FSB as seller and sponsor sold the Raja's loan for cash to Indy Mac MBS Inc and Indy Mac ABS Inc ("Depositor") and kept the servicing rights. Indy Mac MBS Inc and Indy Mac ABS Inc converted the loan into Certificates and Bonds[22] through the Deutsche Bank National Trust and sold to Security Underwriter "Lehman Brothers Inc" and then Lehman Brothers Inc sold it to investors through dealers and agents. This all happened without the knowledge of Rajas and no recording of the transfer was done in the County land records. In addition to this Rajas' loan was sold multi times in more than 48 Trusts five times in each trust, for more than 91 Million ($91,662,688.32) as unregistered and un regulated security, and nothing was recorded in the county land records reasons best known to these defendants involved.

c. Raja's original loan was $ 491,250 and was sold for $ 91,662,688.32 more than 48 Trusts, five times in each trust to various undisclosed entities and nothing was

---

[22] Borrower signs a note but the investor gets a mortgage bond NOT SIGNED BY THE BORROWER and the **bond that was never disclosed, seen or signed by the borrower.**

48

recorded in the county land records where Rajas reside.

d. Rajas made payments on the loan until the rate and payment adjusted. No notice of default was sent to Rajas. Defendant Indy Mac bank FSB was demised and an inactive financial institution as of 07/11/2008 as per FDIC Certificate # 29730 and OTS order # 24-2008, both dated 07/11/2008.

e. On 12/02/2008 Rajas were sent foreclosure notice by the "DEMISE & IN ACTIVE FINANCIAL INSTITUTION, Defendant Indy Mac Bank FSB. Here in this case the foreclosure was sent by dead body, who already sold [23]it for cash to Indy Mac MBS Inc and Indy Mac ABS Inc ("DEPOSITORS") whose capacity to maintain judicial action was QUESTION ABLE.

f. Indy Mac Bank FSB as a demise entity appointed "Surety trustee LLC" as "substitute  trustee in place of Metroway Title and Escrow LLC and the other trustee on deed of trust "Stewart Title and Guaranty Co. was still there. No substitution Deed was recorded in county land

---

[23] Admitted in their own sworn filings before SEC and Federal Reserve in S-3 Registration, 10K, 8K, PSA, Prospectus Supplement 424(b) 5 on page S-107 under "METHOD OF DISTRIBUTION" and on Balance sheets.

records.

g. No document was recorded that transferred any interest
   in the loan or real property of Rajas to Indy Mac MBS Inc,
   Indy Mac ABS Inc, and Lehman Brothers Inc, Dealers,
   Agents and investors. No document was recorded that
   substituted the trustee by the owner of the note or the
   true beneficiary and Defendant MERS did not allege to
   act on behalf of Demise Indy Mac Bank FSB.

h. On December 02, 2008, a Notice of Trustee's Sale was
   sent to Rajas but was not recorded in the Loudoun
   County Recorder's office. A recording was required for a
   Notice of Trustee's Sale.

i. Indy Mac Bank FSB which was dead all of a sudden
   came out of the grave and initiated the foreclosure
   proceeding without realizing its capacity to maintain
   judicial action.

j. On 05/21/2009 in a second attempt to foreclose on

50

Raja's primary residence Indy Mac Bank FSB [24]filed

another action while it died on 07/11/2008 and all of

sudden was active on foreclosure.

71.     When a mortgage loan is secularized (placed in a

mortgage loan pool that is subsequently sold in the securities

market), and *does not default*, the false designation of and use

of MERS allows: (1) the loan funder; (2) the securitized loan

sponsor; (3) the loan master servicer; (4) the loan sub-

servicers; (5) the secularized loan trust; (6) the loan custodian;

(7) the securitized loan trustee; (8) the credit default swap and

credit derivatives parties/counter parties, and others, to avoid

recording any interest that each and every one of them would

have in the property secured by the deed of trust.

72.     Defendant MERS and the other Defendants effectuate

transfers of real estate interests via "electronic handshake(s)"

that the Legislature of the State intended to be recorded by the

county land recorders for the purpose of providing an

---

[24] **Industry practices for the past ten years have been <u>based upon intentional
misrepresentation</u>. If their lips were moving, if they submitted a document, they were
lying.**

51

accessible public record that reflects the actual transfers of

interests in real estate available to the public and, particularly,

by other interested secured creditors and judgment holders

where the real estate is situated. That is, Defendants availed

themselves of the protection and benefit of the recording and

non-judicial foreclosure statutes, while avoiding full payment

and while impairing integrity of the land records and depriving

[25]all counties of Common Wealth of Virginia  of recording fees

and has taken  away tax dollars away from our schools,

children, counties etc

73.     All Defendants knew, and should have known, the

Defendant  MERS system was a sham; and was a "PRIVATE"

records and not "PUBLIC" was intended to wrongfully bypass

[26]the counties' recording requirements; <u>divested the borrowers

of the right to know who owned the promissory note that was</u>

---

[25] **This fraud and intent to conceal, misrepresentation and criminal activity represent
malpractice as well? If we go after the predatory criminal element foreclosure mills
regardless of who they are based on the facts that are now public and notorious, can that
make it almost impossible for them to practice?**

[26] <u>This was gross negligence and probably outright fraud.</u> It is fraud upon the county governments
who were deprived of their recording and transfer fees (e.g. "doc stamps.")

52

<u>executed with the deed of trust</u> other security instrument; and
recorded false documents to initiate and pursue non-judicial
foreclosures, which is moral hazard in securitization and to
otherwise decrease or avoid payment of fees to the Counties
and the Cities where the real estate is located.

74.     All Defendants' actions complained of hereinabove were
taken with reckless disregard, and or willful ignorance that the
recording of false documents and the failure to record truthful
documents jeopardized the real property recording system
adopted by the Legislature for the purpose of maintaining
certainty in real estate transactions and for public knowledge.

75.     These recordings and failures to record created/create a
cloud on title as to property secured by Defendant MERS
deeds of trust, security instruments and lien releases
throughout the State.

76.     Unlike the recordation system adopted by the General
Assembly of some of the States, MERS does not have a
reasonable monitoring system to ensure that knowledge of the
ownership of the interests in real estate is made available to
the public.

53

77.     Defendant MERS failed to monitor the documents recorded in the counties of the State and failed to monitor the transfer of interests in real estate by Defendant MERS' members and so called "authorized signatories" or "certifying[27] officer's" who does not work for these undisclosed entities and have clerical positions with "LPS" which under Federal Investigation and has admitted these fraudulent acts of creating of fake, fabricated and illegal instruments /assignments in its annual report 10K filed with SEC on 02/23/2010 vide SEC file # 001-34005.

78.     All Defendants have used these security instruments with Defendant MERS being falsely designated as the

---

[27] **The common thread is they were lying.**

- **They lied when they said these were AAA rated liquid investments based upon industry standard underwriting standards for residential mortgages**
- **They lied when they said this property is worth more than the principal that was borrowed.**
- **They lied when they said these loans are in default**
- **They lied when they said they were giving a complete accounting for the transaction**
- **They lied when they said "I have personal knowledge"**

And they are lying now when they say the contents of the fraudulent documents are true but the person was wrong. If that was true all they would have to do is submit a corrective instrument signed by someone who would swear again under oath that the facts were true. But they don't have that person because there are no such "true facts." The whole thing is a myth and now it is starting to unravel. There is a way out of this mess for everyone, but nobody listens to the facts — they (the banks) insist on stepping on rake after rake as they walk off a cliff.

54

"beneficiary" as a means of effectuating foreclosures by use of the county Recorders just prior to the foreclosure by recording documents only to the extent of effectuating the foreclosure without recording any of the interim transfers prior to the foreclosure.

79.     Defendant MERS claims to have "saved" at least more than $2.4 billion dollars in recording costs by not filing or recording documents that reflect the transfer of an interest in real estate on mortgage loans that have a MERS deed of trust or security instrument, which documents would have otherwise been recorded and which costs are due and owing to the counties of the Common Wealth of Virginia by these Defendants in a joint venture, who used false documents to avoid paying recording fees to county governments.

## **CIAIM FOR RELIEF**

Violation of § 8.01-216.1, the Virginia Fraud against Taxpayers Act

80.     The Plaintiff M. Nawaz Raja on behalf of all counties of Commonwealth of Virginia and Independent Cities, which are considered County Equivalent,  hereby incorporates all other

55

paragraphs of this Complaint as if set forth herein.

81.     Defendant MERS was formed and has operated in the

State of Common Wealth of Virginia for seventeen (17) years

immediately preceding the filing of this Complaint in this

matter and continues to operate with the effect of avoiding

and/or decreasing payment of fees or monies to the county

Recorders of each county of the State in violation of real estate

recording laws of the Common Wealth of Virginia.

82.     Defendants prepared and/or recorded false documents,

including security instruments (e.g. deeds of trusts), notices of

default, and notices of appointment of substitute trustees,

notices of sale, trustees' deeds upon sale, and other

documents for the purpose of avoiding and/or decreasing their

obligation to pay recording fees.

83.     As a direct and proximate result of Defendants' actions

as described herein, the above-named counties and the State

have been deprived of revenues to which such governmental

bodies were legally entitled.

84.     As a further direct and proximate result of the actions of

the Defendants and each of them, as complained of herein, the

56

counties have been deprived of the use of these revenues and interest thereon.

85.     All Defendants, with willful ignorance or reckless disregard, failed to pay these recording fees and failed to disclose the transfers and assignments of interests in real estate which had the effect of avoiding and decreasing the recordation fees owed to the counties of the State of Virginia.

86.     All Defendants, and each of them, with willful ignorance or reckless disregard, made, caused to be made and used and continued to make, cause to be made, and use false, misleading, and untruthful statements recorded in documents in the land records which falsely assert that an interest is held and/or transferred by Defendant MERS, or that Defendant MERS was or is authorized to act as an agent or nominee for non-MERS members.

87.     Defendants are liable for three times the amount of damages actually sustained; for the costs of bringing this action; and for liquidated damages for each act constituting a violation of § 8.01-216.1, the Virginia Fraud Against Taxpayers Act

57

88.     Pursuant to the Virginia § 8.01-216.1, the Virginia Fraud against Taxpayers Act M. Nawaz Raja is entitled to recover reasonable expenses and attorneys' fees.

89.   The acts of the Defendants in violation of the § 8.01-216.1, the Virginia Fraud against Taxpayers Act are continuing by Defendants, and the continuing acts are included as claims on behalf of the real parties in interest, which are Common wealth of Virginia, it's all counties and by M. Nawaz Raja.

        **WHEREFORE**, Plaintiff the State of Virginia, *all counties of Common Wealth of Virginia and* M. Nawaz Raja request that the Honorable Court enter judgment in favor of the State and its counties against all of the Defendants as follows:

1. For treble damages for all recording fees which were not paid in full as required by the laws of the State on any and all such avoided recording fees during the seventeen (17) years immediately preceding the filing of the original complaint herein;

2. For civil penalties because the Defendants in a joint venture with the Defendant MERS, these Defendants avoided those pesky recording fees, and didn't bother to report or pay

58

taxes, fees or file returns on transactions in which trillions of dollars changed hands. Those deficits we are all worried about on the Federal and state level? They are all curable by simple enforcement of and collection of taxes that are due from these hidden transactions that can now be traced easily. Collection is easy and can be tied to settling the foreclosure mess and the title mess.

3. Those insurance, credit default swap, and other credit enhancement techniques that were used by these Defendants in a joint venture have destroyed the nexus between the lending by the investor and the borrowing by the homeowner. They continue to try to stay in the middle keeping the investors away from direct collaboration with homeowners and in hiding the State Taxes— because when the two sides of these transactions meet up, the numbers won't add up and some very arrogant people whose names are well-known are going to face charges that were inconceivable as late as a month ago.

4. For civil penalties of between $5,000 and $10,000 for each unpaid and/or underpaid recording fee in the seventeen

59

(17) years immediately preceding the filing of the original Complaint herein;

5. For civil penalties of between $5,000 and $10,000 for each false document recorded, without limitation, each deed of trust, deed of appointment of substitute trustee, deed of foreclosure sale, and other documents recorded in the seventeen (17) years immediately preceding the filing of the Complaint, which security instrument purported to secure an obligation by real estate in the State and in which MERS was named as beneficiary and/or nominee of the lender;

6. For civil penalties of between $5,000 and $10,000 for each act during the seventeen (17)-years immediately preceding the filing of this Complaint for having knowingly made, used and caused to be made or used, false records and/or statements to conceal, avoid or decrease obligations to pay or transmit money duly owed to the State and/or its Counties for recording fees reflecting the assignments of rights or interests in real property in the State;

7. For pre-judgment interest on all damages awarded;

8. For reasonable costs and attorneys' fees;

60

9. For an award to Plaintiff M. Nawaz Raja in an amount consistent with the of § 8.01-216.1, the Virginia Fraud Against Taxpayers Act) and

10. For an injunction to put a hold on all the foreclosures conducted or going to be conducted by these defendants based on the fake, fabricated and illegal assignments/ instruments used or going to be used to steal the primary residences of the residents of Common Wealth of Virginia.

11. For appointment of receiver to recover all the proceeds from all of the defendants, which these defendants has received through the illegal foreclosure by using fake, fabricated and illegal instruments, assignments used in foreclosures conducted by these defendants in Common Wealth of Virginia and failed to record[28] in the lands record.

12. Mortgage Electronic Registration Systems was invented by the financial services industry (all of the Defendants et al) as an illegal scheme to avoid recording changes in ownership of the mortgage rights, changes in Trustees,

---

[28] "It is settled everywhere that unrecorded assignments of mortgages are void as against subsequent purchasers, whose interests may be affected thereby, and whose conveyances are duly recorded, provided such assignments are embraced by the recording acts."

assignments etc. Commonwealth of Virginia law requires any interest in real estate to be recorded. The reason for the recording requirement, besides revenue, is simple — it is the only way to keep track of who owns which property. Defendant "MERS "is a cloak which the financial services industry (all of the other Defendants) is using to avoid paying the taxes, stamps and fees on each step of the securitization process, plus a way to obfuscate the real ownership and to essentially choose later who will be designated to be the "owner" of the mortgage rights — i.e., who will be said to own the mortgage note and thus be a successor to the beneficiary under the Deed of Trust.

13.   Hundreds of millions of dollars are owed to Commonwealth of Virginia by entities (all of the Defendants et al) that now claim rights to foreclose on property using the state's non-judicial procedures, when they are not the record owner nor even the actual owner or lender on the transaction. The required condition that they record every element in the chain of title has been ignored because if they file a judicial foreclosure they would be required to

62

make allegations that are fraudulent. Thus they avoid the

filing fees, and service fees attendant to judicial foreclosure

as they are committing a fraud on the government and the

homeowners.

14.   Further, the state requires any trust, corporation or

lending company, plus any bank, credit union or other

financial institution to register in the state (more fees owed

to the State). Instead, using Defendant MERS as their cloak,

unregistered, unchartered, unregulated individuals and

companies have operated with the State of Commonwealth

of Virginia without registering, obtaining a charter, or

paying required taxes on property interests, income taxes,

and normal annual fees.

15.   At the heart of this is a potential liability for the State of

Commonwealth of Virginia beyond its current economic

woes, and beyond these enumerated uncollected

receivables, to wit: the fact that the state has ignored the

issues raised by the use of MERS does not improve the title

that is reflected on the record. The fact remains that

companies are getting certificates of title transferred to

63

them when there is nothing in the record to support the
chain of title. Thus Commonwealth of Virginia faces an
enormous challenge and potential lawsuits in failing to
enforce its recordation laws. One day, in the not distant
future, some lawyer is going to take a close look at these
transactions and realize that not one of the modification,
refinancing, short sales, foreclosure sales and subsequent
third party sales is supported by a proper chain of title in
the record. The effect on the solvency of title insurers is
immeasurable.

16.   As an resident of Commonwealth of Virginia,  Plaintiff M.
Nawaz Raja  on behalf of  all of the Counties of
Commonwealth of Virginia is  concerned that the State is
about to borrow money and probably raise taxes when the
State has a clear right of action and an ability to collect
fees, stamps and taxes against hundreds of investment
banks, Special Purpose Vehicles, Mortgage Aggregators/
Wholesalers, "lenders" whose charters were essentially
rented in most "mortgage" transactions, each of whom have
operated and are operating illegally within the State in a

64

joint venture and deprived the Commonwealth of Virginia from the taxes.

17.   As a resident of  Commonwealth of Virginia  Mr. M Nawaz Raja stands  in a unique position to save the economy of the State and to correct the thousands of title deficiencies in state and county records. Mr. M. Nawaz Raja's immediate request to this Honorable Court is that it seek receivership (and recovery of fees, taxes, damages and interest) over all participants in financial services (all of the Defendants) that launched and executed this scheme, taking care NOT to interfere with the many community banks and credit unions that DID play by the rules and that didn't do anything wrong.

18.   What Commonwealth of Virginia and its Counties are missing is one very large receivable due to the state and county governments — hundreds of millions of dollars in taxes, recording and registration fees for all the companies (all of the Defendants in this case) that side-stepped Commonwealth of Virginia Law in the great Mortgage Meltdown of 2001-2009 in a joint venture and deprived the

65

95 Counties of Virginia and 39 Independent Cities, which

are considered County Equivalent, of the taxes.

19.   For such other relief that the Court or jury deems just

and equitable.

Respectfully submitted

M.Nawaz Raja (Pro Se)

Common Wealth of Virginia

42907 Parkbrooke Court

Broadlands VA 20148

Phone:  (540) 687-0004

therajafamily@gmail.com

Date  10/18/2010

# ACKNOWLEDGEMENT / NOTARY'S VERIFICATION

66

**<u>EXHIBIT B</u>**

Virginia Courts Case Information  Page 1 of 1

[ Scroll Previous ]  [ Scroll Forward ]  [ Main Menu ]  [ Logoff ]

### Loudoun County Circuit - Civil Division
Click on Case Number for Details

| Case Number | Name | Name | Status |
|---|---|---|---|
| CL00064746-00 | Plaintiff: RAJA, BABAR S | Defendant: FASERU, OLLUWATOSIN | Trial - Judge With Witnesses |
| CL00060604-00 | Defendant: RAJA, EHSAN U | Plaintiff: FIA CARD SERVICES; NA | Default Judgment |
| CL00071630-00 | Defendant: RAJA, EHSAN U | Plaintiff: FIA CARD SERVICES | Settlement/Nonsuit/Vol. Dismissal |
| CL00050521-00 | Defendant: RAJA, GOPAL V; TRUSTEE | Plaintiff: POTOMAC VIEW LLC | Settlement/Nonsuit/Vol. Dismissal |
| CL00064172-00 | Plaintiff: RAJA, M.NAWAZ | Defendant: MORTGAGE ELECTRONIC REGISTRATI | Active |
| CL00071812-00 | Defendant: RAJA, MEHBOOB | Plaintiff: CITIBANK (SOUTH DAKOTA) NA | Settlement/Nonsuit/Vol. Dismissal |
| CL00069101-00 | Defendant: RAJA, MEHBOOB U | Plaintiff: CITIBANK NA;SUCCESSOR BY MERGE | Default Judgment |
| CL00072132-00 | Defendant: RAJA, NEELUM | Plaintiff: SOUTHERN WALK AT BROADLANDS | Active |
| CL00055523-00 | Plaintiff: RAJA, MOHAMMAD NAWAZ | Defendant: DEUTSCHE BANK NATIONAL TRUST | Settlement/Nonsuit/Vol. Dismissal |
| CL00072132-00 | Defendant: RAJA, NEELUM | Plaintiff: SOUTHERN WALK AT BROADLANDS | Active |
| CL00055523-00 | Plaintiff: RAJA, NEELUM NAWAZ | Defendant: DEUTSCHE BANK NATIONAL TRUST | Settlement/Nonsuit/Vol. Dismissal |
| CL00040288-00 | Plaintiff: RAJA, NIRMALA DEVI K | Defendant: IN RE: NAME CHANGE | Other |
| CL00057612-00 | Defendant: RAJA, RAHEEL | Plaintiff: WELLS FARGO BANK; N A | Active |
| CL00057102-00 | Plaintiff: RAJA, SHANZA | Defendant: IN RE: NAME CHANGE (MINOR) | Active |
| CL00057102-00 | Plaintiff: RAJA, SHINZA | Defendant: IN RE: NAME CHANGE (MINOR) | Active |
| CH00018494-00 | Defendant: RAJABI, FARZANEH | Plaintiff: FARD, ABRAHAM | Settlement/Nonsuit/Vol. Dismissal |

[ Scroll Previous ]  [ Scroll Forward ]  [ Main Menu ]  [ Logoff ]

Build #: 3.6.26

[ Name List ]  [ Pleadings/Orders ]  [ Services ]  [ Main Menu ]  [ Logoff ]

## Loudoun County Circuit - Civil Division
### Case Details

| Case Number:<br>CL00064172-00 | Filed:<br>10/18/10 |
|---|---|
| **Filing Type:**<br>Complaint - Catch-All | |
| **Number of Plaintiffs:**<br>0101 | **Number of Defendants:**<br>0015 |
| **Commenced By:**<br>Initial Filing | |
| **Bond:** | **Complex Case:** |

## Plaintiffs

Plaintiff 1:   **RAJA, M.NAWAZ**
Trading as:
Attorney:   PRO SE

Plaintiff 2:   **COMMON WEALTH OF VIRGINIA**
Trading as:
Attorney:   CHABALEWSKI, GEORGE W

Plaintiff 3:   **ACCOMACK COUNTY**
Trading as:
Attorney:

## Defendants

Defendant1:   **MORTGAGE ELECTRONIC REGISTRATI**
Trading as:
Attorney:

Defendant2:   **INDY MAC BANK FSB**
Trading as:
Attorney:

Defendant3:   **ONE WEST BANK FSB**
Trading as:
Attorney:

## Hearings

| # | Date | Time | Type | Room | Duration | Jury | Result |
|---|------|------|------|------|----------|------|--------|

**Date Ordered To Mediation:**

## Final Disposition

- **Judgment:**
- **Final Order Date:**
- **Appealed Date:**
- **Concluded By:**

[ Name List ]     [ Pleadings/Orders ]   [ Services ]   [ Main Menu ]  [ Logoff ]

Build #: 3.6.26

Virginia Courts Case Information System

[ Return to Case ]   [ Main Menu ]   [ Logoff ]

## Loudoun County Circuit - Civil Division
### Pleadings/Orders Detail

**Case Number:** CL00064172-00

| Filed | Type | Party | Judge | Book | Page | Remarks |
|---|---|---|---|---|---|---|
| 10/18/10 | Initial Filing | PLT | | | | COM : |
| 09/25/12 | Motion | DEF | | | | TO DISMISS LACK OF SERVICE |
| 10/01/12 | Motion | PLT | | | | T/OBJ T/MOT T/DISMISS |
| 10/22/12 | Notice | PLT | | | | VA DECLINING INTERVENTION |

[ Return to Case ]   [ Main Menu ]   [ Logoff ]

Build #: 3.6.26

Virginia Courts Case Information System

[ Return to Case ] [ Main Menu ] [ Logoff ]

## Loudoun County Circuit - Civil Division
### Service Details

**Case Number:** CL00064172-00



| Name | Number | Type | Hear Date | Date Served | How Served |
|------|--------|------|-----------|-------------|------------|

[ Return to Case ] [ Main Menu ] [ Logoff ]

Build #: 3.6.26