Hearing Date and Time: November 19, 2012 at 10:00 a.m. (Prevailing Eastern Time)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

- and -

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group
of Junior Secured Noteholders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF AD HOC GROUP OF JUNIOR SECURED
NOTEHOLDERS TO SALE TRANSACTIONS AND RESERVATION OF RIGHTS**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Ad Hoc Group of Junior Secured Noteholders (the "Ad Hoc Group")[1], by and

through its undersigned counsel, hereby files this limited objection and reservation of rights (the

---

[1] The Ad Hoc Group is comprised of certain holders of 9.625% Junior Secured Guaranteed Notes due 2015 issued under that certain Indenture dated as of June 6, 2008.

NEWYORK 8666614 (2K)

"<u>Limited Objection</u>") with respect to the motion[2] of Residential Capital, LLC ("<u>ResCap</u>") and its debtor subsidiaries (the "<u>Debtors</u>") dated May 14, 2012 seeking authorization for, among other things, the sale of certain assets free and clear of liens, claims, and encumbrances.[3] The Ad Hoc Group respectfully states as follows:

## LIMITED OBJECTION

The Ad Hoc Group is quite obviously pleased that the Auctions[4] have resulted in significant incremental value being generated for the Debtors' estates in excess of the initial bids. Indeed, the Ad Hoc Group believes that most if not all of this incremental value, as well as a significant portion of the initial bid value represents the proceeds of the Junior Secured Noteholders' collateral. As previously noted to the Court, the Junior Secured Noteholders hold all-assets liens against the Debtors' assets and estates, which liens include, among other things, any portion of the MSR Auction purchase price attributable to the "goodwill" and going-concern value of the Debtors' servicing and origination business platforms. While the Court need not determine for the purposes of approval of the Sale Transactions how much of the consideration

---

[2] Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m), 365 and 1123 and Fed R. Bankr. P. 2002, 6004, 6006 and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto and (IV) Granting Related Relief [ECF No. 61] (the "<u>Motion</u>").

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Order Under 11 U.S.C. §§ 105, 363(b), (f), and (m) and 365 (I) Authorizing and Approving Sale Procedures, Including Payment of Break-Up Fees; (II) Scheduling Bid Deadline, Auction (If Necessary) and Sale Hearing; (III) Establishing Assumption and Assignment Procedures, Including Procedures for Fixing Cure Amounts; and (IV) Establishing Notice Procedures and Approving Forms of Notice* [ECF No. 538] (the "<u>Sale Procedures Order</u>").

[4] The "<u>Auctions</u>" refers to (a) that certain public auction held on October 23 and 24 in connection with the sale of certain of the Debtors' assets pursuant to Asset Purchase Agreement with Nationstar Mortgage LLC ("<u>Nationstar</u>") as stalking horse bidder (the "<u>MSR Auction</u>") and (b) that certain public auction held on October 25 in connection with the sale of certain of the Debtors' assets pursuant to Asset Purchase Agreement with Berkshire Hathaway Inc. as stalking horse (the "<u>HFS Auction</u>"). See Notice of Successful Bidders at the Auctions and Sales of (A) the Platform Assets to Ocwen Loan Servicing LLC ("<u>Ocwen</u>") and (B) the Whole Loan Assets to Berkshire Hathaway Inc. ("<u>Berkshire Hathaway</u>") dated October 25, 2012 (ECF No. 1960) (the "<u>Notice of Successful Bidders</u>"). Ocwen and Walter Investment Management Corp. entered into a joint bidding arrangement for purposes of bidding on the Platform Assets.

provided by the purchasers should be allocated to any specific assets being sold or to any particular estate, the Ad Hoc Group files this Limited Objection to ensure that any Sale Orders approving the Sale Transactions do not prejudice the Junior Secured Noteholders' rights with respect to the allocation or distribution of the Sales' proceeds at a future date.[5]

As currently drafted, the proposed order approving the MSR Auction sale and the proposed order approving the HFS Auction sale (collectively, the "Proposed Sale Orders") are potentially ambiguous as to whether an allocation schedule created for tax purposes pursuant to each APA is intended to be binding on all creditors and parties in interest with respect to the distribution of Sale Proceeds. Specifically, the Proposed Sale Orders provide, "[t]his order and the [Ocwen and Berkshire Hathaway] APA shall be binding in all respects upon all known and unknown creditors of…any Debtor…" Proposed Sale Orders ¶ 4. Section 3.3(a) of each of the APAs provides or is believed to provide for the Purchaser's preparation of a schedule that would allocate the Purchase Price and Assumed Liabilities among the Purchased Assets (collectively, the "Allocation Schedules"). The Allocation Schedules are clearly intended to be prepared for tax purposes.[6] However, on the face of the Proposed Sale Orders, as part of each APA, the Allocation Schedules could be deemed "binding in all respects" upon creditors of any Debtor, without a clarification similar to that found in the APAs. The Ad Hoc Group therefore objects to

---

[5] Even absent the enhanced incremental bidding at the Auctions, the Junior Secured Noteholders are likely oversecured. The Ad Hoc Group believes that the full collateral cushion for the Junior Secured Notes has been buttressed even further by the enhanced incremental bidding for the Sale Transactions at the Auctions. For example, the "goodwill and other intangible assets related to the Business" comprise a significant portion of the value acquired by Ocwen. The difference between the purchase price of the assets acquired by Ocwen and what a hypothetical buyer would be willing to pay for the assets acquired by Ocwen on a standalone basis represents goodwill. See Black's Law Dictionary 9th Edition (2009). The Ad Hoc Group believes that the Junior Secured Noteholders' lien on several of the Debtors' general intangibles entitles the Junior Secured Noteholders to proceeds from the Sale Transactions allocable to this "goodwill" and "other general intangibles." The Ad Hoc Group hopes to work with the other major constituents to determine if an allocation of value can be consensually agreed upon.

[6] See Berkshire Hathaway APA § 3.3(b); Nationstar APA § 3.3(b). The Ocwen APA has not been publicly filed, but this Limited Objection would apply in respect of the proposed sale to Ocwen to the extent that the Ocwen APA includes language substantially similar to that cited in the Nationstar APA.

the Proposed Sale Orders to the extent the Allocation Schedules are intended to bind creditors with respect to allocation of proceeds of the Sale Transactions and requests that any Court order approving the Sale Transactions, in addition to reserving all rights with respect to allocation of the proceeds of the Sale Transactions, include language noting that the Allocation Schedules are not binding with respect to how proceeds of the Sale Transactions will be allocated in these cases.  The Ad Hoc Group intends to work with the Debtors prior to the Sale Hearing to determine if acceptable language can be agreed upon.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Ad Hoc Group objects to the Motion on the limited basis as set forth herein.

Dated: October 29, 2012
      New York, New York

Respectfully submitted,

By: /s/ J. Christopher Shore
J. Christopher Shore

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

- and -

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group of Junior Secured Noteholders