**Hearing Date:  November 19, 2012 10:00 a.m. (Eastern Time)**
**Objection Deadline:  October 29, 2012 5:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Ronit J. Berkovich

*Attorneys for Syncora Guarantee Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, *et al*. | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------------------ x

## SUPPLEMENT TO SYNCORA GUARANTEE INC.'S
## LIMITED OBJECTION TO DEBTORS' SALE MOTION

# **TABLE OF CONTENTS**

**Page**

I.      Background ...................................................................................................................1

II.     The Proposed Trustees' Settlement Does Not Resolve the Syncora Limited
        Objection ....................................................................................................................3

III.    The Debtors' Reply Does Not Resolve the Syncora Limited Objection ............................5

IV.     Conclusion ..................................................................................................................9

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES

*In re Capmark Fin. Group Inc.*,
   No. 09-13684 at p. 62 (Bankr. D. Del. Nov. 24, 2009) ........................................................ 8-9

STATUTES

11 U.S.C. §§ 365(b), (f) .................................................................................................................5, 8

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Syncora Guarantee Inc. ("**Syncora**") respectfully submits this supplemental limited objection to the above-captioned debtors' (the "**Debtors**") sale motion [Docket No. 61] (the "**Motion**"), and respectfully represents as follows:

## I.  <u>Background</u>

1.      On September 28, 2012, Syncora filed its Limited Objection to Debtors' Sale Motion [Docket No. 1657] (the "**Syncora Limited Objection**"), objecting to the Proposed Sale Order[1] because, among other reasons, (i) the Proposed Sale Order does not provide for the assumption and assignment of the Debtors' Syncora-Related Servicing Agreements, including, in each case, related agreements that constitute part of the same transaction, *cum onere*, with all of the servicing duties preserved and assigned to any purchaser, and (ii) the Debtors have not provided sufficient information to establish adequate assurance of their stalking horse's ability and intent to perform *all* obligations under the Syncora-Related Servicing Agreements post-assignment.[2]

2.      Syncora submits this Supplemental Objection as a result of two developments that occurred after it filed the Syncora Limited Objection.  First, on October 10, 2012, the Debtors filed the *Debtors' Omnibus Reply to the RMBS Trustees' Pre-Auction Objections to the Debtors' Sale Motion* [Docket No. 1768], (the "**Debtors' Reply**") in response to *The Pre-Auction Objections of the RMBS Trustees to the Debtors' Sale Motion* [Docket No.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Syncora Limited Objection.

[2] The Syncora Limited Objection attached exhibits describing the Syncora-Related Servicing Agreements, including certain Additional Transaction Documents that are integrated with each Syncora-Related Servicing Agreement. Syncora continues to review the transactions associated with the Syncora-Related Servicing Agreements and reserves the right to add Additional Transaction Documents to this list.  Attached here as Exhibit "1," is a blackline to the exhibits attached to the Syncora Limited Objection reflecting minor changes to the Syncora-Related Servicing Agreements since the Syncora Limited Objection was filed.

1

1242] (the "***Trustees' Objection***") and related joinders, which raised similar objections to those raised in the Synocra Limited Objection.[3]  Second, at a hearing held on October 17, 2012, the Debtors reported that they had reached a settlement in principle with the RMBS Trustees on the Trustees' Objection (the "***Proposed Trustees' Settlement***").  The basic terms of the Proposed Trustees' Settlement were read into the record at the hearing, where the Debtors also indicated that they expected to revise the proposed asset purchase agreement and proposed sale order to reflect the Proposed Trustees' Settlement before Friday October 19, 2012.  Those documents have not been filed or provided to counsel for Syncora.

3.      Given that the stalking horse was not the successful bidder at the auction [Docket No. 1960], it is unclear whether the Debtors and the winning bidder intend to apply any of the framework set forth in the Debtors' Reply or the Proposed Trustees' Settlement to the order governing the sale of the Debtors' assets to the successful bidder.  In addition, the stalking horse bidder remains the back-up bidder.  By this Supplemental Objection, Syncora puts all parties on notice that (i) it has not seen or agreed to the Proposed Trustees' Settlement, is not bound by it, and continues to object to the assumption and assignment of the Syncora-Related Agreements for the reasons set forth in the Syncora Limited Objection, which is incorporated herein by reference, and (ii)  the proposals contained in the Debtors' Reply similarly do not resolve the Syncora Limited Objection.  Syncora reserves the right to supplement its objection further upon review of any modifications to the Proposed Sale Order, the proposed asset

---

[3] In light of the different deadlines established by the various motions, orders, draft orders and notices on the docket, counsel to Syncora reached out to counsel to the Debtors for clarification on the applicable deadlines.  By email on August 12, 2012, counsel to the Debtors informed counsel to Syncora that the deadlines applicable to Syncora were September 28, 2012 (for objections to cure amounts and assignment to the stalking horse bidder) and October 29, 2012 (for objections to the sale, including objections to severance and treatment of liabilities under contracts); *see also* Transcript of Hearing dated July 30, 2012 at 62-63 (clarifying that Scheduling Order dated July 31, 2012 at Docket No. 945 (the "***July Scheduling Order***") does not alter deadlines in the Sale Procedures Order [Docket No. 538] except as expressly stated, and indicating that earlier objection deadline contained in July Scheduling Order is not mandatory for non-trustee parties).

2

purchase agreement, and related documents reflecting the deal with the successful bidder or otherwise.

## II.  The Proposed Trustees' Settlement Does Not Resolve the Syncora Limited Objection

4.      Any settlement of the Trustees' Objection, which resolves the *Trustees'* issues with the Debtors' proposed assignment, is not binding on Syncora.  Moreover, the Proposed Trustees' Settlement does not resolve the Syncora Limited Objection.  The terms of the Proposed Trustees' Settlement, as outlined at the October 17 hearing, are too vague to understand or apply, and the Debtors have not released any document giving it more concrete terms.

5.      At the record of the hearing, the Debtors' counsel indicated that, to resolve the Trustees' Objection with respect to the limitations the Proposed Sale Order placed on a purchaser's obligations to perform in the future, the Debtors' proposed stalking horse agreed to "assume all of the servicer and master servicing obligations under the PSA from and after the closing including indemnity obligations in favor of the trustees for past, present or future matters and without any redefinition of those duties."  Transcript of Hearing Oct. 17, 2012 Hearing at 13:17-21.  While this sounds like a complete assumption of liabilities under the assumed servicing agreements, as is required under the Bankruptcy Code, at least with respect to the *RMBS Trustees'* indemnity claims,[4] in the next sentence the Debtors' counsel stated that "as provided in the proposed sale order, [the stalking horse] will not have liability for any origination related liability or any liability stemming from pre-closing acts or omissions by the debtors."  *Id.* at 13. The Debtors do not tell us how they are drawing a line around what constitutes "origination related liability" or what they mean by "pre-closing acts or omissions by the

---

[4] It is also unclear whether the Debtors are proposing to sever the contracts differently for liabilities to the RMBS Trustees than for liabilities to other parties.

debtors," but it is clear that the Debtors are still trying to sever certain undefined liabilities and obligations out of the assumed and assigned contracts at the expense of contract counterparties. As elaborated in the Syncora Limited Objection, the Debtors simply may not sever any contract absent a showing under well-established principles of contract construction that the contract is divisible by its terms.  The Debtors have not made any such showing.

6.      These deficiencies are not rectified by the Debtors allowing assertion of severed claims against the Debtors' estates.  In their recitation of the settlement terms, the Debtors indicated they may allow some of the claims for liabilities that are carved out of the assumed and assigned contracts to be "asserted by the trustees as secured claims or general unsecured claims in these cases depending on their nature."  *See* Transcript of Hearing Oct. 17, 2012 Hearing at 14:1-2.  While it is certainly an improvement over the Proposed Sale Order to provide for a mechanism for all claims under an assumed contract to be asserted somehow, at least for the RMBS Trustees,[5] this formulation is not consistent with the requirements of the Bankruptcy Code.  Contracts must be assumed and assigned in whole, absent a showing of divisibility; there is no authority for dividing up future performance obligations in assumed contracts according to the whim of a purchaser and requiring counterparties to assert those obligations against a debtor as part of a bankruptcy claims process, much less treating some of those claims as general unsecured claims.  Accordingly, no element of the Proposed Trustees' Settlement has resolved any of the issues raised in the Syncora Limited Objection, and the objection remains outstanding.

---

[5] Again, it is unclear whether the Debtors are proposing this treatment for all severed liabilities or just for the severed liabilities of the RMBS Trustees.

## III.  The Debtors' Reply Does Not Resolve the Syncora Limited Objection

7.    The proposals in the Debtors' Reply also do not resolve or adequately address the objections raised in the Syncora Limited Objection.  The Debtors' Reply ignores the case law on when contracts are divisible, and instead proposes a novel legal framework where any obligations a purchaser refuses to assume can be treated as cure claims.  The Debtors appear to argue that they are permitted to carve any obligations they wish out of assumed contracts, force parties to assert cure claims for those obligations, and bar parties from enforcing these eliminated contractual rights later.  The plain language of the Bankruptcy Code, however, offers a different construct.  It distinguishes between cure and adequate assurance and clearly provides that cure is appropriate and required where there "has been a default" and adequate assurance is provided with respect to "future performance."  *See* 11 U.S.C. §§ 365(b)(1), (b)(1)(C), (f)(2)(B). This distinction reflects the expectation that all obligations arising under the contract post-closing will be performed after assumption by the purchaser in the normal course—only pre-closing defaults can be left behind.  This simple construct is mandated by the Bankruptcy Code and there is no authority to deviate from it.  Thus, Syncora submits that the only obligations or liabilities from which a purchaser can be excused are liabilities for defaults requiring cure pursuant to section 365(b) of the Bankruptcy Code, existing as of the earlier of the closing and the deadline for filing cure claims, and the Debtors must be liable for satisfying all such defaults as cure claims.[6]

---

[6]  After Syncora filed the Syncora Limited Objection, and after the deadline on September 28, 2012 to file "cure" objections, Syncora received a report from the trustee (U.S. Bank National Association) of one of its trusts (Greenpoint Mortgage Funding Trust (Series 2006-HE1)), based on information received from the Debtors, indicating that 30-59 day delinquencies on the loans in the trust more than tripled in the space of a month.  One reason for such a spike in delinquencies could have been poor servicing by the Debtors.  Upon further investigation, the information in the report regarding the increase in delinquencies turned out to have been the result of an error, and the report was restated.  The incident illustrates, however, that evidence of poor servicing may come to light only after the cure objection deadline.  Moreover, it is possible that "a pre-closing act or omission by the Debtors," while not arising to a default, could, if continued post-closing by the purchaser, constitute a default.  The purchaser

8.      Like the Proposed Trustees' Settlement, the Debtors' Reply both recites an intention to have the purchaser assume liabilities, and at the same time disclaims any future responsibility on the part of the purchaser for certain, undefined kinds of liabilities.  For example, the Debtors' Reply states that "[the stalking horse bidder] is assuming all post-closing liabilities related to the Debtors' servicing business based on the mortgage loans' servicing status at that time" right before it says that the stalking horse bidder "has not agreed to assume . . . any liability for any act or omission of the Debtors arising on or before the closing date."  *See* Debtors' Reply at 10.  In the next sentence, it states something different:  the "scope of [the stalking horse bidder's] post-closing obligations would include, for example, the obligation to perform future servicing duties . . . that could be traced to any pre-closing 'acts or omissions' of the Debtors."  *See* Debtors' Reply at 11.  Which principal applies and what does it mean? Despite months of pleadings and negotiations regarding the severance of the Debtors' servicing contracts, no coherent theory of how severance of the Debtors' servicing contracts, including of the post-closing servicing liabilities under those contracts will be delineated, or why it is permissible.  This in itself is evidence that the contracts are not divisible, and there is no authority for requiring counterparties to guess which elements of their contracts will be performed post-closing based on the desires of a purchaser.  The delineation of duties for the

---

must abide by all post-closing obligations under the contract, and be responsible for post-closing liabilities and defaults, even if they arise partly from a pre-closing act or omission by the Debtors.  Syncora has indemnification claims under Insurance and Indemnity Agreements that may arise, for example, if the servicer breaches the covenants under the documents for each deal, including the Syncora-Related Servicing Agreements, and Syncora is damaged or suffers certain consequences.  Syncora believes that any such indemnity claims are clearly post-assumption liabilities that must be assumed by the purchaser, but to the extent that they are considered to be "cure claims," Syncora asserts a cure claim equal to its maximum potential exposure for the Debtors' servicing defects: approximately $456,586,925.48, the total amount outstanding on Syncora's policies in relation to the trusts serviced pursuant to the Syncora-Related Servicing Agreements.  Syncora also reserves all its rights to assert its indemnity rights against the Debtors or any purchaser in the future to the extent any indemnity claims arise.

purchaser is defined in the contracts to be assumed, and Syncora objects to any sale order that alters these duties.

9.       The Debtors' proposal for an escrow fund to fill the breach of contract left by the arbitrary severance of obligations from Debtor contracts also does not address Syncora's objection.  It is not clear what kinds of obligations the fund is intended to cover (*i.e.*, will it cover performance obligations or just trustee indemnity claims?), how large it will be, and what is required to assert a claim against it.  Moreover, because it is impossible to tell from the Debtors' formulations of the assumed obligations which obligations will and will not be performed by a purchaser, it is impossible to figure out whether the proposed escrow is sufficient to satisfy the Debtors' obligations to cure all defaults.  While Syncora does not object to escrowing funds (assuming such funds are sufficient) and deferring resolution of bona fide cure disputes, or allowance of later assertions of cure amounts, Syncora does object to converting any post-assumption liability or performance obligations into cure claims that must be asserted in the present.

10.       In addition, the Debtors' Reply dismisses adequate assurance objections as "premature," notwithstanding that the date for asserting such objections with respect to the stalking horse purchaser had passed at the time that the Debtors filed the Debtors' Reply.  Syncora continues to object that the Debtors have not demonstrated that any purchaser is able and willing to perform completely under the servicing contracts post-assumption and assignment and have therefore failed to demonstrate adequate assurance.  The Debtors insist that they may present this information at the sale hearing.  It would be far more productive for the Debtors to simply provide information on the purchaser's financing, experience, willingness to perform, and plans for transition of the Debtors' large servicing platform in advance of the sale hearing.

Otherwise, a contract counterparty will not have sufficient advanced notice to determine whether

the assurances provided by the proposed purchaser are, in fact, "adequate." Syncora intends to

work with the Debtors and the proposed purchaser to try to get comfort on adequate assurance,

but Syncora reserves the right to object further on the basis that adequate assurance has not been

demonstrated, including at the sale hearing.[7]

11.      Finally, the Debtors' Reply asserts that any conditions to transfer in the

assumed servicing agreements, including rating agency confirmation requirements, are

impermissible anti-assignment clauses subject to being over-ridden pursuant to section 365(f) of

the Bankruptcy Code. This issue is tied to adequate assurance. Given the dearth of information

available about the proposed purchaser's wherewithal to perform under the assigned contracts,

the rating agency confirmation requirement in some of the servicing agreements, including one

of the Syncora-Related Servicing Contracts, is all the more important to ensure that the trusts

will be properly serviced going forward. The Debtors maintain that this requirement "has

already been struck down as an impermissible anti-assignment clause by the Bankruptcy Court

for the District of Delaware." Debtors' Reply at para. 17; *citing* Transcript of Hearing, *In re

Capmark Fin. Group Inc.*, No. 09-13684 at p. 62 (Bankr. D. Del. Oct. 25, 2009 [*sic*]).[8] The

Delaware court made no such holding. In *Capmark*, the purchaser obtained assurance from the

agency that the affirmation of the rating would occur after the buyer purchased the assets,

although not before closing, as required by the contracts being assumed and assigned. *Id*. at 40:

12-14. The court found that the clause was void and an impermissible anti-assignment clause

---

[7] In any case, the Debtors' *First Amended and Restated Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* [Docket No. 1484] provides that objections to the adequate assurance to be provided by any proposed purchaser other than the stalking horse are due November 19, 2012.

[8] The transcript is dated November 24, 2009.

insofar as it was an "impossible condition to meet," because the rating agencies would not provide the rating on the timeframe required by the contracts, but it also found the "evidence sufficient to provide adequate assurance that the term will be complied with to the extent it's relevant to the parties which is that the ratings stay in place post sale." *Id.* 62:1-11. Here the Debtors have made no effort to comply with similar requirements in their contracts designed to protect counterparties, and have not provided counterparties with basic information about the purchaser's ability to perform. In these proceedings, contract counterparties need protection, and transfer requirements, including rating agency confirmations and insurer and other third party consents, that enable assessments of how the sale will affect the credit performance of the assets of trusts should be honored.

## IV. <u>Conclusion</u>

12.     As set forth in the Syncora Limited Objection, until the Debtors submit a Proposed Order that remedies the many deficiencies outlined in the Syncora Limited Objection, the Motion should be denied.

WHEREFORE, Syncora respectfully requests that the Court modify the Proposed Order consistent with the foregoing and grant Syncora such other and further relief as is just and proper.

Dated: October 29, 2012
         New York, New York

/s/ Ronit J. Berkovich
Gary T. Holtzer
Ronit J. Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Syncora Guarantee Inc.

## Exhibit 1

**Blackline of Exhibits to Syncora Limited Objection**

**Exhibit A**

**Syncora-Related Servicing Agreements**

Servicing Agreement, dated as of May 1, 2001, as amended by Amendment No. 1, dated as of October 1, 2001, Amendment No. 2, dated as of July 31, 2002 and Amendment No. 3, dated as of December 20, 2005, between EMC Mortgage Corporation and GMAC Mortgage, LLC (Bear Stearns Transaction)

Transfer and Servicing Agreement, dated as of August 1, 2006, as amended by Amendment No. 1, dated as of September 1, 2006, among GreenPoint Mortgage Funding Trust 2006-HE1, as issuer, Structured Asset Securities Corporation, as depositor, GMAC Mortgage Corporation, as servicer and U.S. Bank National Association, as indenture trustee (GreenPoint Transaction)

Pooling and Servicing Agreement, dated as of April 1, 2007, among ACE Securities Corp., as depositor, GMAC Mortgage, LLC, as servicer, Wells Fargo Bank, National Association, as master servicer and securities administrator and HSBC Bank USA, National Association, as trustee (SunTrust Transaction)

**Exhibit B**

**Additional Transaction Documents**

Bear Stearns Transaction

- Insurance and Indemnity Agreement, dated as of March 30, 2007, among XL Capital Assurance Inc., EMC Mortgage Corporation, SACO I Inc., GMAC Mortgage, LLC and Citibank, N.A.

- Side Letter Agreement, dated as of March 30, 2007, between GMAC Mortgage, LLC and XL Capital Assurance Inc.[1]

- Assignment, Assumption and Recognition Agreement, dated as of March 20,30, 2007, among GMAC Mortgage, LLC, EMC Mortgage Corporation, Citibank, N.A. and Sovereign BankGMAC Mortgage, LLC

---

[1] Under this side letter certain of the Debtors, as servicer, provide Syncora with certain diligence rights after certain trigger events. The Debtor in the Insurance and Indemnity Agreement for the Bear Stearns transaction agreed to honor the side letter. transaction agreed to honor the side letter. The side letters for the GreenPoint and SunTrust Transactions work in a substantially identical fashion.

GreenPoint Transaction

- Insurance and Indemnity Agreement, dated as of August 28, 2006, among XL Capital Assurance Inc., Lehman Brothers Holdings Inc., Structured Asset Securities Corporation, Greenpoint Mortgage Funding Trust 2006- HE1, GMAC Mortgage Corporation and U.S. Bank National Association

- Side Letter Agreement, dated as of September 12, 2006, between GMAC Mortgage Corporation and XL Capital Assurance Inc.

- Custodial Agreement, dated as of August 1, 2006, among Deutsche Bank National Trust Company, as custodian, U.S. Bank National Association, as indenture trustee and GreenPoint Mortgage Funding Trust 2006-HE1, as issuer[2]

- Custodial Agreement, dated as of August 1, 2006, among U.S. Bank National Association, as custodian and as trustee and GreenPoint Mortgage Funding Trust 2006-HE1, as issuer

SunTrust Transaction

- Insurance and Indemnity Agreement, dated as of May 15, 2007, among XL Capital Assurance Inc., Suntrust Asset Funding, LLC, Suntrust Bank, ACE Securities Corp., GMAC Mortgage, LLC and Wells Fargo Bank, National Association

- GMACM Side Letter Agreement, dated as of May 15, 2007, between GMAC Mortgage, LLC and XL Capital Assurance Inc.

- Credit Risk Management Agreement, dated as of May 14, 2007, between GMAC Mortgage, LLC and Clayton Fixed Income Services Inc.[3]

- Premium Letter, dated as of May 15, 2007, among XL Capital Assurance Inc., HSBC Bank USA, National Association, Wells Fargo Bank, National Association, Suntrust Asset Funding, LLC, GMAC Mortgage, LLC and ACE Securities Corp.[4]

---

[2] These agreements relate to the custody of the mortgage loan-related documents and files and provide for servicer obligations, such as informing the applicable custodians of payments in full of mortgage loans and requesting related documentation. While no Debtor is a party to the GreenPoint Transaction custodial agreements, such agreements were acknowledged by a Debtor. A Debtor is a party to the SunTrust Transaction Custodial Agreement.

[3] Under the Credit Risk Management Agreement, a Debtor agreed to, among other things, facilitate Clayton Fixed Income Servicers Inc., as credit risk manager, monitoring of the mortgage loan portfolio and making certain recommendations to the Debtor regarding defaulted mortgage loans. These provisions are important from the deal performance standpoint and therefore benefit Syncora.

[4] This agreement sets forth the specifics of the premium payable to Syncora in connection with the SunTrust Transaction.  A Debtor is a party to this agreement and agrees that the premium will be payable in accordance the Premium Letter and in consideration of the issuance of the insurance policy by Syncora.

- Custodial Agreement, dated as of April 1, 2007, among HSBC Bank USA, National Association, as trustee, GMAC Mortgage, LLC, as servicer and Deutsche Bank National Trust Company, as custodian