DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Telephone:     (860) 275-0100
Facsimile:     (860) 275-0343

- and -

7 Times Square
New York, New York 10036-7311
Telephone:     (212) 297-5800
Facsimile:     (212) 916-2940
JAMES J. TANCREDI, ESQ. (JT-3269)
HERBERT K. RYDER, ESQ. (HR-5137)

Attorneys for Connecticut Housing Finance Authority

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | **Case No. :  12-12020 (MG)** |
| Debtors. | **(Jointly Administered)** |

**LIMITED PROTECTIVE OBJECTION BY CONNECTICUT HOUSING FINANCE
AUTHORITY TO THE DEBTORS' SALE MOTION**

Connecticut Housing Finance Authority ("CHFA"), by and through its counsel, hereby

files this limited protective objection (the "Objection") to the Debtors' Motion Pursuant to 11

U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and

9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee

and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving

Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing

the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests;

(II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the

43002996.1

Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related

Thereto; and (IV) Granting Related Relief [ECF Doc. # 61] (the "Sale Motion"), and in support

of the Objection, states as follows:

## STATEMENT OF FACTS

1.      CHFA is a party to a certain servicing agreement entered into with GMAC

Mortgage, LLC ("GMAC Mortgage"), predecessor-in-interest to Residential Capital, LLC

("ResCap") on or about September 8, 1994, pursuant to which GMAC Mortgage, and

subsequently ResCap, provided servicing activities with respect to mortgages originated by

CHFA  (the "CHFA Servicing Agreement").

2.      On May 14, 2012 (the "Petition Date"), ResCap and certain of its affiliates

(collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of

the United States Code (the "Bankruptcy Code").  The Debtors are managing and operating their

businesses as debtors-in-possession pursuant to sections 1107(a) and 108 of the Bankruptcy

Code.

3.      The Debtors also filed the Sale Motion on the Petition Date.  The Sale Motion

provides for, *inter alia*, the sale of the Debtors' mortgage servicing and origination assets (the

"Servicing Platform") to Nationstar Mortgage Holdings, Inc. ("Nationstar") or a successful

bidder (the "Purchaser").

4.      On June 28, 2012, this Court entered an Order Under 11 U.S.C. §§ 105, 363(b)

and 365 (I) Authorizing and Approving Sale Procedures, Including Payment of Break-Up Fees;

(II) Scheduling Bid Deadline, Auction (If Necessary) and Sale Hearing; (III) Establishing

Assumption and Assignment Procedures, Including Procedures for Fixing Cure Amounts; and

(IV) Establishing Notice Procedures and Approving Forms of Notice [ECF Doc. # 538] (the

"Sale Procedures Order").

5.      On July 26, 2012, the Debtors filed a Notice of (i) Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property and Unexpired Leases of Nonresidential Real Property and (ii) Cure Amounts Related thereto [ECF Doc. # 924] (the "Contract Notice").    The Contract Notice contains a proposed Cure Amount (the "Cure Amount") for each agreement included in the schedule, but expressly states that the Cure Amounts "do not include any (i) existing post-petition obligations that the Debtors anticipate paying before the date the Designated Agreement is to be assumed and assigned…; (ii) post-Petition Date obligations that may be incurred but unknown as of July 25, 2012, which obligations may remain outstanding against the Debtors as of the Assumption Date; [or] (iii) unknown pre-Petition Date obligations." The Contract Notice lists the CHFA Servicing Agreement with a Cure Amount of zero.  As management of funds under service  and reporting are within the dominion and control of the Debtors, as trustee, CHFA is not in a position to state otherwise.   The Debtors should assure and warrant that there are no defaults of any kind.

6.      The Debtors commenced the auction of the Servicing Platform on October 23, 2012.  On October 24, 2012, the Debtors announced a winning bid by to Ocwen Financial Corp. ("Ocwen").

7.      Throughout the sale and auction process, the Debtors and CHFA have attempted to discuss a resolution that would allow the Debtors to either mutually terminate the CHFA Servicing Agreement, or to assume and assign its CHFA portfolio with CHFA's consent.  Such efforts have been unproductive to date, in great part because of the Debtors' desire to renegotiate the terms of the Servicing Agreement and the dynamics of the competitive process for its Asset Sale.

8.      On information and belief, in order to facilitate the sale process, the Debtors, as a fiduciary, have yet to provide to CHFA:  (a) a current Servicing Report; (b) a current  Servicer Loan Accounting; (c) a  confirmation of the segregation of CHFA funds and escrow amounts; and (d) a current summary of the status of  required insurances, including the requisite  fidelity bond.

9.      The Debtors have also failed heretofore to demonstrate, in connection with this assumption and assignment, the  cure of any non-monetary defaults and the prospective ability of its assignee to qualify and  perform consistent with the Servicing Agreement , and CHFA regulations.

## Limited Objection and Reservation of Rights

10.     CHFA and other interested parties presently find themselves in the difficult, and in some ways impossible, position of having to object to the Sale Motion and the proposed sale of the Servicing Platform to Ocwen without knowing the actual or final terms and conditions of the sale or Sale Order.  The Sale Motion, filed on the Petition Date, contemplated a potential sale to Nationstar as a stalking horse bidder and that, if other bids were received, a potential  auction for the Servicing Platform would be held.  As of the date of this Objection, the Debtors have not provided a final record of the terms to be agreed upon with Ocwen.

11.     The Debtor also conveniently seem to ignore that the CHFA Servicing Agreement includes a provision that "This Agreement shall not be assigned, whether by operation of law or otherwise, by Servicer or its successor or assigns without the written consent of CHFA."  No such consent has been properly sought from CHFA management nor has it been  given by CHFA, a public instrumentality and political subdivision of the State of Connecticut.  Conn. Gen. Stat. . § 8-244(a).

12.     As a result, in order to preserve all of its rights with respect to the sale of the

Servicing Platform, which sale might include an assumption and assignment of the Servicing

Agreement, CHFA asserts this protective objections to the Sale Motion.  In so doing, CHFA

expressly reserves for itself the right to assert additional objections to any terms and conditions

of sale or the Sale Order not expressly contemplated by the Motion.    It also reserves the right to

supplement this response until the date of the hearing and to   submit   a Declaration   in support

of this Objection.

A.     **Modifications to the Servicing Agreement Require the
        Consent of CHFA.**

13.     It is well settled that a Bankruptcy Court cannot approve a unilateral change in an

executory contract that would constitute a material breach of that contract.  *See In re Bellamah*

*Community Development*, 107 B.R. 337, 339 (Bankr. D.N.M. 1989) ("No modification of the

terms [of an executory contract] is allowed without the agreement of the contracting party."); *see*

*also In re TSW Stores of Nanuet, Inc*., 34 B.R. 299 (Bankr. S.D.N.Y. 1983) (debtor could not

unilaterally modify a restrictive use clause prior to its assumption because such a modification

would operate to the economic detriment of the non-consenting landlord and would violate

section 365(f)(2)(b)).

14.     It also is well-established that under section 365 of the Bankruptcy Code,

executory contracts such as the Servicing Agreement may not be assumed in part and rejected in

part.  *See In re Teligent*, 268 B.R. 723, 728 (Bankr. S.D.N.Y. 2001); *Stewart Title Guaranty Co.*

*v. Old Republic Nat'l Title Ins. Co*., 83 F.3d 735, 741 (5th Cir. 1996).  Rather, a debtor or trustee

must either assume the contract, *cum onere*, or reject the entire contract.  Collier on Bankruptcy

¶ 365.03[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  Thus, the Court cannot

approve the assumption or assignment of a revised version of the Servicing Agreement by the

Debtors without the consent of CHFA.

15.    Ocwen is a newcomer to this sale process.  As of the date of this Objection,

CHFA has neither received nor seen any evidence of Ocwen's willingness or ability to comply

with the terms of the Servicing Agreement.  Indeed, the negotiations between the Debtors and

CHFA, albeit in the context of an assignment to Nationstar, suggests that the Debtors cannot

provide adequate assurance that Ocwen, Nationstar, or any other prospective purchaser would

comply with the terms of the Servicing Agreement.  Accordingly, to the extent that the Debtors

seek to assume the Servicing Agreement , without consent or  unilaterally modified, the Debtors

fail to meet the requirements of section 365.

**B.      The Debtors Must Cure All Defaults and Provide
Adequate Assurance of Future Performance in Order to
Assume and Assign the Servicing Agreement.**

16.    In order for the Debtors to assume and thereafter assign the Servicing Agreement,

they must cure or provide adequate assurance of a cure of any outstanding defaults and provide

adequate assurance of future performance under sections 365(b)(1) & (f)(2) of the Bankruptcy

Code.  *See EBG Midtown South Corp. v. Mclaren/Hart Envtl. Engineering Corp. (In re Sanshoe

Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 300 (2d Cir. 1993).  The

Court should condition its approval of any sale on the Debtors' full compliance with sections

365(b) & (f).

17.    First, pursuant to section 365(b)(1), the Debtors should be required to cure all

outstanding defaults under the Servicing Agreement prior to assumption.  As set forth in the

Contract Notice, the Debtors claim there are no amounts owing for any outstanding defaults

under Servicing Agreement.  Unfortunately, the Debtors have not provided CHFA any access to

material information in its sole possession that it needs in order to verify that claim. Certain

reports and accountings are mandated from the Servicer  and necessarily a precondition to any

proper transition of  servicing responsibilities.

18.    These  satisfactory reports and accountings, referenced in Paragraph 8 above,

should be made before any assumption and assignment can move forward.

**C.    The Debtors May Not Assign The Servicing Agreement
Without Providing Adequate Assurance of Ocwen's
Future Performance**

19.    Section 365(f)(2) of the Bankruptcy Code provides that a trustee or debtor-in-

possession "may assign an executory contract or unexpired lease of the debtor *only if* – (A) the

trustee assumes such contract or lease in accordance with the provisions of this section; and (B)

*adequate assurance of future performance by the assignee of such contract or lease is provided,*

*whether or not there has been a default in such contract or lease*."   11 U.S.C. § 365(f)(2)

(emphasis added).

20.    The Debtors also should be required, pursuant to section 365(f)(2) of the

Bankruptcy Code, to provide adequate assurance of future performance of all components of the

Servicing Agreement by Ocwen, whether or not it is determined there has been a default in the

Servicing Agreement.   These should include, but should not be limited to the following

requirements:

(a)    Eligibility:  Ocwen should be required to demonstrate to the Court eligibility to

service the CHFA portfolios.  (See Chapter 134 of the Conn. Gen. Stat. and the regulations

thereunder, the CHFA Master Commitment Agreement for Mortgage Purchases and the CHFA

Home Mortgage Programs Operation Manual, as amended or supplemented.)

(b)    Servicing Protocols.  Ocwen should be required to specify the servicing protocols

to be followed, including disclosure as to loss mitigation strategies, foreclosures and advances,

and training and experience of its workforce.

(c)      <u>Transition of Servicing Protocols</u>.  Ocwen should reveal the transition of servicing protocols which would govern their service term and mitigate repetition of the losses sustained therein.

(d)      <u>Capitalization and Resources for Servicing</u>.  Ocwen should reveal the resources legally and financially committed to adequately perform under the Servicing Agreement and identify key support and management personnel and the capabilities of key employees.

21.      In addition to the foregoing, CHFA expressly reserves the right to object to any form of order that the Debtors may present to the Court relative to the Sale Motion.

<u>CONCLUSION</u>

The Assumption and Assignment of the CHFA Servicing Agreement under the Sale Motion should be denied or deferred to the extent it seeks approval of any sale of the Servicing Platform that would include the assumption and assignment of the Servicing Agreement, with modified terms or not consented to by CHFA.  Further, any sale also should be conditioned on the Debtors' reports and accountings and the assurance of the cure of all known monetary and non-monetary defaults under the Servicing Agreement and adequate assurance of Ocwen's future performance of all terms of the Servicing Agreement, as is required under 11 U.S.C. § 365(b) & (f).

WHEREFORE, for the foregoing reasons, CHFA respectfully requests that this Court

grant such other or further relief as this Court deems just and proper.


Dated: October 30, 2012              DAY PITNEY LLP


                                     */s/ James J. Tancredi*
                                     JAMES J. TANCREDI (JT-3269)
                                     242 Trumbull Street
                                     Hartford, CT 06103
                                     Telephone:     (860) 275-0100
                                     Facsimile:     (860) 275-0343
                                     jtancredi@daypitney.com

43002996.1                              9