**Hearing Date and Time: December 20, 2012 at 10:00 a.m. (ET)**
**Objection Deadline: November 12, 2012 at 4: 00 p.m. (ET)**

**POLSINELLI SHUGHART**
Daniel J. Flanigan, Esq.
805 Third Avenue, Suite 2020
New York, New York 10022
(212) 684-0199 (Telephone)
(212) 759-8290 (Facsimile)
*Bankruptcy Counsel for Lead*
*Plaintiffs and the Putative Class*

**WALTERS, BENDER,**
**STROHBEHN & VAUGHAN**
David M. Skeens, Esq.
2500 City Center Square
1100 Main
Kansas City, Missouri  64105
(816) 421-6620 (Telephone)
(816) 421-4747 (Facsimile)
*Co-Lead Counsel for Lead Plaintiffs*
*and the Putative Class*

**CARLSON LYNCH LTD.**
R. Bruce Carlson, Esq. *(Pro Hac Pending)*
115 Federal Street, Suite 210
Pittsburgh, Pennsylvania 15212
(412) 322-9243 (Telephone)
(412) 231-0246 (Facsimile)
*Co-Lead Counsel for Lead Plaintiffs*
*and the Putative Class*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**RESIDENTIAL CAPITAL, LLC,** *et al.,*<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 12-12020 (MG)**<br><br>**(Jointly Administered)** |

**MEMORANDUM IN SUPPORT OF MOTION**
**TO APPLY BANKRUPTCY RULE 7023**
**AND TO CERTIFY CLASS CLAIMS**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     FACTS AND BACKGROUND......................................................................................2
        A.      The Class Claim Is A Continuation Of Pending MDL Class Litigation.................2
        B.      The Third Circuit Has Confirmed That Certification Is Appropriate. ...................6

LAW AND ARGUMENT........................................................................................................7

III.    APPLICABLE STANDARDS......................................................................................7

IV.     THE REQUIREMENTS OF CIVIL RULE 23 ARE SATISFIED ...................................7
        A.      Numerosity ...................................................................................................8
        B.      Commonality .................................................................................................8
        C.      Typicality......................................................................................................9
        D.      Adequacy Of Representation ...........................................................................10
        E.      Predominance And Superiority Under Rule 23(b)(3) ........................................11
                Predominance ................................................................................................11
                Superiority ....................................................................................................14

V.      THE CLASS CLAIM IS CONSISTENT WITH BANKRUPTCY NEEDS AND
        CONCERNS INCLUDING THE "BEDROCK" BANKRUPTCY POLICIES OF
        FACILITATING CREDITOR COMPENSATION AND ACHIEVING
        EQUITABLE DISTRIBUTION .....................................................................................15
                American Reserve:  The Class Action Or Nothing.............................................15
                The Southern District Cases ............................................................................16
                Chateaugay, American Reserve, Charter, And Other Applicable Case Law ........20

VI.     CONCLUSION ...........................................................................................................24

**Exhibits**:

Exhibit A:    Walters / Skeens / Carlson Declaration
Exhibit B:    The Class Proofs of Claim against Residential Funding Company, LLC
Exhibit C:    The Class Proofs of Claim against Residential Capital, LLC
Exhibit D:    The Class Proofs of Claim against GMAC-RFC Holding Company, LLC

2301279

## TABLE OF AUTHORITIES

### CASES

Brown v. Kelly,
609 F.3d 467 (2d Cir. 2010) ...........................................................................................9-10

Caridad v. Metro-North Commuter R.R.,
191 F.3d 283 (2d Cir. 1999) ...............................................................................................10

Gentry v. Siegel,
668 F.3d 83 (4th Cir. 2012) ................................................................................................20

Goldman v. First Nat'l Bank of Chicago,
532 F.2d 10 (7th Cir. 1976) ................................................................................................12

Hickey v. Great W. Mortg. Corp.,
158 F.R.D. 603 (N.D. Ill. 1994) .........................................................................................13

In re Am. Int'l Grp., Inc. Secs. Litig.,
689 F.3d 229 (2d Cir. 2012) ...............................................................................................12

In re American Reserve Corporation
840 F.2d 487 (7th Cir. 1988) ........................................................................... 15, 16, 20, 23

In re Bally Total Fitness of Greater N.Y., Inc.,
411 B.R. 142 (S.D.N.Y. 2009)............................................................................................17

In re BGI, Inc.,
465 B.R. 365 (Bankr. S.D.N.Y. 2012) ........................................................................ 8, 9, 14

In re Bill Heard Enters., Inc.,
400 B.R. 795 (Bankr. N.D. Ala. 2009).................................................................................20

In re Blockbuster Inc.,
441 B.R. 239 (Bankr. S.D.N.Y. 2011) .........................................................................17-18, 20

In re Charter Company
876 F.2d 866 (11th Cir. 1989) ........................................................................... 16, 20, 23

In re Chateaugay Corp.,
104 B.R. 626 (S.D.N.Y. 1989),
appeal dismissed, 930 F.2d 245 (2d Cir. 1991) ................................................ 7, 16-18, 20, 23

In re Community Bank of N. Va.,
418 F.3d 277 (3rd Cir. 2005) ("**Community Bank I**") ............................... 6, 8-10, 12, 14, 18

In re Community Bank of N. Va.,
    622 F.3d 275 (3rd Cir. 2010) ("**Community Bank II**") ............................................... 6, 8, 18

In re CommonPoint Mortgage Company
    283 B.R. 469 (Bankr. W.D. Mich. 2002) ......................................................................... 21-23

In re Ephedra Prods. Liab. Litig.,
    329 B.R. 1 (S.D.N.Y. 2005) ..................................................................................... 17-19, 24

In re First Interregional Equity Corp.,
    227 B.R. 358 (Bankr. D.N.J. 1998) ..................................................................................... 20

In re First Alliance Mortgage Company
    269 B.R. 428 (C.D. Cal. 2001) ..................................................................................... 21, 24

In re First NLC Fin. Servs.,
    410 B.R. 726 (Bankr. S.D. Fla. 2008) ................................................................................. 20

In re Kaiser Grp. Int'l, Inc.,
    278 B.R. 58 (Bankr. D. Del. 2002) ................................................................................ 14, 20

In re Literary Works in Elec. Databases Copyright Litig.,
    654 F.3d 242 (2d Cir. 2011) ............................................................................................... 10

In re Livaditis,
    122 B.R. 330 (Bankr. N.D. Ill. 1990) ........................................................................... 14, 20

In re Motors Liquidation Co.,
    447 B.R. 150 (Bankr. S.D.N.Y. 2011) ...................................................................... 7, 17-18

In re Movie Gallery, Inc.,
    2012 WL 909501 (Bankruptcy E.D. Va. 2012) .................................................................. 20

In re Musicland Holding Corp.,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ..................................................................... 1, 17, 19

In re Natural Gas Commodities Litig.,
    231 F.R.D. 171 (S.D.N.Y. 2005) ........................................................................................ 14

In re Protected Vehicles,
    397 B.R. 339 (Bankr. D.S.C. 2008) .................................................................................... 20

In re Sacred Heart Hosp. of Norristown,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) .................................................................................... 19

In re Taylor Bean & Whitaker Mortg. Corp.,
    No. 09–ap–00439-JAF, 2010 WL 4025873 (Bankr. M.D. Fla. Sept. 27, 2010) .................... 21

2301279

In re United Companies Financial Corporation
    276 B.R. 368 (Bankr. D. Del. 2002) ............................................................................ 21, 22

In re Wang Labs., Inc.,
    164 B.R. 401 (Bankr. D. Mass. 1994) ................................................................................ 20

In re Woodward & Lothrop Holdings, Inc.,
    205 B.R. 365 (Bankr. S.D.N.Y 1997) ............................................................................ 7, 17

In re Zenith Labs., Inc.,
    104 B.R. 659 (D.N.J. 1989) ............................................................................................... 20

Marisol A. v. Giuliani,
    126 F.3d 372 (2d Cir. 1997) ........................................................................................... 7-9

Seijas v. Republic of Arg.,
    606 F.3d 53 (2d Cir. 2010) ................................................................................................ 14

Ticor Title Ins. Co. v. Brown,
    511 U.S. 117 (1994) .......................................................................................................... 11

## STATUTES

12 U.S.C. § 2603 ....................................................................................................................... 13

15 U.S.C. §§ 1631, 1632, 1638, 1639 ..................................................................................... 13

15 U.S.C. § 1640(a)(2)(b) (2012) ............................................................................................. 13

## OTHER AUTHORITIES

12 C.F.R. §§ 226.17, 226.18, 226.32 (2012) ........................................................................... 13

24 C.F.R. § 3500.8 .................................................................................................................... 13

6 NEWBURG ON CLASS ACTIONS § 18:27 (4th ed. 2002) ........................................................... 14

2301279

The homeowner borrowers identified as the Class Claimants in the accompanying <u>Motion To Apply Bankruptcy Rule 7023 And To Certify Class Claims</u> (the "**Motion**") submit this Memorandum in support of the Motion.

## I.    INTRODUCTION

The Class Claimants seek to represent 44,535 consumer borrower victims of a predatory lending scheme in which the Debtors were prime actors and prime beneficiaries.  The fundamental issue is whether those 44,535 consumer borrower homeowners will have a real opportunity to share with large financial institutions and other powerful commercial interests in distributions from the Debtors' bankruptcy estate.  As shown below, the application of Rule 23 of the Federal Rules of Bankruptcy Procedure to the Class Claimants' Proofs of Claim (the "**Class Claims**") is essential to uphold fundamental bankruptcy purposes, policies, needs, and concerns.  Failure to use the class action device here would unjustly create a windfall for those institutional and commercial creditor interests who can afford to advance and protect their interests in this proceeding to the detriment of tens of thousands of individual homeowner creditors from across the country.[1]  While the individual homeowners who make up the proposed class may be able to afford "the price of a stamp"[2] to mail in an individual proof of claim, these consumers would not likely understand why they should buy that stamp in the first place or what to say in the proof of claim to be mailed with that stamp.  Even if they did, they could not afford the substantial costs, in terms of both time and money, that each would have to incur to separately investigate, pursue, and prove their claims in this Court against the dauntingly formidable legal and financial advisory expertise that the Debtors, and perhaps other powerful

---

[1]  The United States Court of Appeals for the Third Circuit has already held—twice—that the proposed class claims satisfy the elements of Rule 23, as described in detail in the text below.

[2]  <u>In re Musicland Holding Corp.</u>, 362 B.R. 644, 650 n.8 (Bankr. S.D.N.Y. 2007).

actors interested in preventing dilution of their own distributions from the estate, will be able to array against them.

## II.    FACTS AND BACKGROUND

### A.    The Class Claim Is A Continuation Of Pending MDL Class Litigation.

Class Claimants are an appropriately representative group[3] of the 41 named plaintiffs and Putative Class representatives in a consolidated MDL class action lawsuit pending against Residential Funding Company, LLC ("**RFC**") and others in the United States District Court for the Western District of Pennsylvania, styled *In Re: Community Bank of Northern Virginia Second Mortgage Lending Practice Litigation*, MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688, 05-1386 (the "**MDL Class Action**"). The MDL Class Action is listed as a contingent, unliquidated, and disputed claim of an undetermined amount in the Schedules of Assets and Liabilities of both RFC and of Homecomings Financial LLC.  The Class Claims are based upon the same allegations set out in full in the Joint Consolidated Amended Class Action Complaint filed in the MDL Class Action on October 4, 2011 (the "**Complaint**"), which is attached as Exhibit A to the Declaration Of R. Frederick Walters, David M. Skeens and R. Bruce Carlson filed contemporaneously herewith ("**Walters/Skeens/Carlson Declaration**" or "**Declaration**"). The Class Proofs of Claim are attached as Exhibits B, C, and D to the Declaration.

The MDL Class Action,[4] which has been the subject of two appeals in the United States Court of Appeals for the Third Circuit, consolidates six separate class action lawsuits, filed between May 1, 2001 and February 26, 2003, against RFC and other co-conspirators who participated in a predatory and illegal lending scheme that featured many of the fraudulent practices that led to the recent collapse of the American mortgage market. The objective of the

---

[3]  Walters/Skeens/Carlson Declaration, ¶ 78.

[4]  The MDL Class Action, the claims asserted therein, and its history and current status are set forth in detail in the Walters/Skeens/Carlson Declaration.

conspiracy was to generate the highest possible volume of residential second mortgage loans in order to extract excessive and unlawful settlement fees from borrowers throughout the United States. Each loan transaction was governed by and subject to the Real Estate Settlement Procedures Act ("**RESPA**"), Truth in Lending Act ("**TILA**"), and the Home Ownership and Equity Protection Act ("**HOEPA**").  All of the loans were "high-cost" loans under HOEPA. (Compl. ¶¶ 2, 6, 9;.Walters/Skeens/Carlson Decl. ¶ 9).

The allegations in the Complaint include the following:

The individual loans at issue, 44,535 of which were purchased by RFC, had an average principal balance of approximately $35,000. Every borrower who was enticed to close one of these loans paid "origination" and "title" fees in excess of 12% of the original principal balance of the loan – as well as exorbitant interest rates that were largely unrelated to the credit worthiness of the borrowers. These fees were at least four times as high as the fees that would have been available to these borrowers in a true free market for settlement services that was not impeded by the presence of the underlying fraudulent kick-back scheme carried out by the alleged co-conspirators including RFC. (Compl. ¶ 2, Walters/Skeens/Carlson Decl. ¶ 10).

The kickback scheme at issue was initially conceived by three brothers, David, DeVan and Chris Shumway, and Randy Bapst. The Shumway/Bapst "business plan" was to drive loan volume via a massive nationwide direct mail marketing campaign. Borrowers identified by the marketing campaign were initially referred to the Community Bank of Northern Virginia ("**CBNV**") and subsequent borrowers were referred to Guaranty National Bank of Tallahassee ("**GNBT**," collectively, the "**Banks**").  The Banks would process and originate the loans in their own names and then kick back the overwhelming majority of the excessive settlement fees to companies controlled by Messrs. Shumway and Bapst, notwithstanding the fact that these

Shumway/Bapst companies were not providing any compensable settlement services in connection with the loans. (Compl. ¶ 3, Walters/Skeens/Carlson Decl. ¶¶ 17-19).[5]

RFC's liability in connection with the loans at issue derives from two sources:  1)  direct liability flowing from its active participation in the scheme; and, 2)  assignee liability imposed by HOEPA on RFC as purchasers of the loans.  RFC would purchase the loans from the Banks on a correspondent basis in close coordination and almost simultaneously with the origination of the loans.  Also RFC was integrally involved in the loan process by directing the exact type of homogeneous loan product that it required these banks to make in order for RFC to purchase them.  RFC profited from interest incurred while holding the loans in its own portfolio and then again when it securitized pools of loans for sale on Wall Street.  The capital provided by RFC was integral to the successful operation of the scheme since the Banks did not have sufficient capital to permit them to hold the loans in their own portfolios for any appreciable period of time.  The profits realized by RFC from this scheme were directly tied to loan volume, and every participant in the scheme, including RFC, disregarded the unlawful aspects of the settlement practices at issue in order to maximize the high loan volume. (Compl.  ¶¶  4,  5; Walters/Skeens/Carlson Decl. ¶¶ 21-22).

The Class Claims are based on the above allegations, as more fully described and explained in the Complaint and the Walters/Skeens/Carlson Declaration, and seeks monetary damages due to the following statutory violations:

- Violations of the RESPA for kickbacks, unearned fees, and impermissible business relationships;

- Violations of TILA and HOEPA for inaccurate and understated material disclosures;

---

[5]    During most of the time period encompassed by the conspiracy, the Shumway/Bapst companies were contractually precluded from providing settlement services in connection with the loans at issue.

- Violations of other disclosure and substantive requirements of TILA and HOEPA; and

- Violations of the Racketeer Influenced and Corrupt Organizations Act ("**RICO**") for racketeering activities used to perpetuate and further a predatory lending scheme.

Based on the extensive record gathered during the pre-petition litigation, the Class Claimants' current estimate (which is preliminary and without prejudice to the right of the Putative Class members to claim additional amounts as the facts and law may ultimately warrant) that the total amount recoverable on each individual Class Claim is, on average, $42,076.00. Because there are 44,535 known Putative Class members, the damages for which RFC and other Debtors are liable on these claims is at least $1.87 billion dollars. (Walters/Skeens/Carlson Decl. ¶¶ 42-47).

The Class Claimants seek to assert these claims on behalf of the following class ("**Putative Class**"):

> All persons nationwide who obtained a second or subordinate, residential, federally related, non-purchase money, HOEPA qualifying mortgage loan from Community Bank of Northern Virginia ("CBNV") or Guaranty National Bank of Tallahassee ("GNBT") that was secured by residential real property used as their principal dwelling and that was assigned to GMAC-Residential Funding Corporation n/k/a Residential Funding Company, LLC ("RFC").

The Class Claimants also seek to impose liability for such claims on RFC's immediate and ultimate Debtor parent entities--respectively, GMAC-RFC Holding Company, LLC and Residential Capital, LLC ("**Parent Entities**")--on an alter ego and veil piercing theory as more particularly alleged in Attachment 3 to the Proof of Class Claim (Alter Ego/Veil Piercing) filed against each Parent Entity.[6]

---

[6] The Class Claimants believe that many more facts currently unknown to Class Claimants exist that would support these Claims against the Parent Entities and perhaps other Debtor and non-Debtor entities as well, facts that will be revealed by the various ongoing Examiner, Creditors Committee, and other investigations as the bankruptcy case progresses, and Class Claimants reserve all rights to supplement the Class Proofs of Claim as facts supporting them are later revealed.

As discussed below and in the Walters/Skeens/Carlson Declaration, the Class Claimants have been vigorously pursuing their RESPA, TILA, HOEPA, and RICO claims for the last ten years, and the claims and the Putative Class have been the subject of a series of appeals before the United Stated Court of Appeals for the Third Circuit resulting in two extensive written opinions. During that time the proposed class has been conditionally certified twice and 44,535 known members of the proposed class have been identified and sent class notices relating to two previously proposed settlements. Many legal issues relevant to the Class Claims have been litigated and resolved in the prepetition litigation. Under these circumstances, and considering the bankruptcy policies and legal principles discussed below, application of Rule 7023 to the Class Claims and certification of the Putative Class are essential if justice is to be served.

**B.    The Third Circuit Has Confirmed That Certification Is Appropriate.**

As noted above, the Third Circuit has confirmed in two opinions that the Class Claims satisfy the numerosity, typicality, and commonality elements of Rule 23(a), as well as the predominance and superiority elements of Rule 23(b)(3). See In re Community Bank of N. Va., 418 F.3d 277, 309-10 (3rd Cir. 2005) ("**Community Bank I**"); In re Community Bank of N. Va., 622 F.3d 275, 303-08 (3rd Cir. 2010) ("**Community Bank II**"). Thus, the only unresolved certification issue as of the Community Bank II decision were the contested adequacy issues under Rule 23(a)(4). See Community Bank II, at 292. Now, however, those adequacy issues have been fully resolved. Specifically, Carlson Lynch, the previously adverse lead counsel for the plaintiff class joined forces with Walters, Bender, Strohbehn & Vaughan, objectors' lead counsel, and they were dually designated as Interim Class Counsel, resulting in the filing of the consolidated Complaint, which names the Class Claimants and others as plaintiffs and otherwise addresses all of the adequacy concerns expressed by the Third Circuit—most significantly

6

eliminating any potential conflict of interest among Putative Class members. (Walters/Skeens/Carlson Decl. ¶ 62).

## LAW AND ARGUMENT

### III.    APPLICABLE STANDARDS

Courts in the Southern District of New York permit, under appropriate circumstances, the filing of a proof of claim in a Chapter 11 case on behalf of a class of persons who have not filed individual proofs of claim.   In re Woodward & Lothrop Holdings, Inc., 205 B.R. 365, 369 (Bankr. S.D.N.Y 1997) (citing In re Thomson McKinnon Secs., Inc., 141 B.R. 31, 32 (S.D.N.Y. 1992); In re Chateaugay Corp., 104 B.R. 626, 632 (S.D.N.Y. 1989), appeal dismissed, 930 F.2d 245 (2d Cir. 1991)).   Where, as here, a motion has been duly made, the Court may exercise its discretion to authorize a class proof of claim "if (1) the class claim proponent has shown compliance with the requirements of Civil Rule 23 and (2) after consideration of consistency with bankruptcy needs and concerns, the bankruptcy court directs that Rule 23 should apply."  In re Motors Liquidation Co., 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011).   In this unique case both requirements are more than satisfied.

### IV.    THE REQUIREMENTS OF CIVIL RULE 23 ARE SATISFIED

Rule 23(a) establishes four prerequisites for class certification: numerosity, commonality, typicality and adequacy. See FED. R. CIV. P. 23(a) (2012); Marisol A. v. Giuliani, 126 F.3d 372, 375-76 (2d Cir. 1997).   Additionally, "the party seeking certification must qualify under one of the three criteria set forth in Rule 23(b)."   Marisol A., 126 F.3d at 376.   The Class Claimants seek certification under Rule 23(b)(3), which authorizes class certification upon a finding "that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   The class

proposed by the Class Claimants, satisfies each of the requirements of Rule 23(a) and (b)(3).

Indeed, the Third Circuit held that the Class Claimants had already satisfied all requirements

other than the adequacy of representation requirement at the time that <u>Community Bank II</u> was

decided.  <u>Thereafter</u>, formerly adverse counsel for various Putative Class members combined

their efforts in order to best serve the interests of the Putative Class and carefully followed the

Third Circuit's guidance to eliminate any potential adequacy issue under Fed. R. Civ. P.

23(a)(4).  Skeen/Carlson Declaration (¶ 62),

### A.    Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is

impracticable."  In this case RFC has already identified 44,535 loans upon which an individual

claim may be brought against it.  "In the Second Circuit, courts presume that joinder is

impractical when the class consists of forty or more members."  <u>In re BGI, Inc.</u>, 465 B.R. 365,

375 (Bankr. S.D.N.Y. 2012).  This Putative Class includes more than 100 times that many.  The

"numerosity" requirement is thus easily satisfied.  <u>Community Bank I</u>, 418 F.3d at 303.

### B.    Commonality

"The commonality requirement is met if plaintiffs' grievances share a common question

of law or fact." <u>Marisol A.</u>, 126 F.3d at 376. The wrongs suffered and the remedies sought by

each Putative Class member in this case arise from the same nationwide predatory lending

scheme in which numerous common violations of TILA, HOEPA, RESPA, and RICO repeatedly

occurred.  Therefore, each Putative Class member's claim will not only depend on the same

proof of the same predatory lending scheme but also on the same federal statutory law and case

law.  As the Class Claims detail, some of the most obvious common issues of fact and law

include but are not limited to the following:

- Whether the written contracts between the Shumway Bapst entities and the banks established obligations that were *per se* violations of the RESPA;

- whether the Banks made inaccurate TILA disclosures to the Plaintiff Class Members;

- whether the Banks utilized a practice or device whereby the mandatory disclosures under TILA were not timely made;

- whether certain of the class members' promissory notes failed to disclose required HOEPA disclosures restricting prepayment penalties or other prohibited terms;

- whether the class members' HOEPA Notices (i) were displayed in the required conspicuous type size manner; (ii) contained knowingly false acknowledgments of receipt before closing; or (ii) were nevertheless deficient in asserting receipt within no specified period or within "3 days" or "72 hours" before closing, but not asserting the number of "*business*" days before closing;

- whether the Plaintiff Class Members' HUD-1 or HUD1-A Settlement Statements concealed and/or misrepresented the identity of the recipients, nature or the amounts of the settlement fees and charges imposed on their loans; and

- whether RFC was involved or a participant in a RICO enterprise.

These common questions of law and fact easily satisfy the "commonality" requirement of Rule 23(a)(2). See Community Bank I, 418 F.3d at 303 ("The [RFC] class consists of approximately 44,000 members and 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'"); accord BGI, 465 B.R. at 375.

## C.    Typicality

 "Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members." Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010) (citing Fed. R. Civ. P. 23(a)(3)). "This requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Id. (quoting Marisol A., 126 F.3d at 376); BGI, 465 B.R. at 375-76.  It does not, "require that the factual background of each named plaintiff's claim be

identical to that of all class members; rather, it requires that the disputed issue of law or fact

'occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other

members of the proposed class.'" Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293

(2d Cir. 1999) (quoting Krueger v. N.Y. Tel. Co., 163 F.R.D. 433, 442 (S.D.N.Y. 1995)).

Typicality is satisfied here. As the Third Circuit explained when addressing the proposed

class: "Because the claims of all class members here depend upon the existence of the Shumway

scheme, 'their interests are sufficiently aligned [such] that the class representatives can be

expected to adequately pursue the interests of the absentee class members.'" Community Bank I,

418 F.3d at 303 (internal citations omitted).

### D.    Adequacy Of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect

the interests of the class." Brown, 609 F.3d at 475. "To satisfy Rule 23(a)(4), the named

plaintiffs must 'possess the same interests and suffer the same injuries as the class members.'" In

re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011) (quoting

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)). "'Adequacy is twofold: the

proposed class representative must have an interest in vigorously pursuing the claims of the

class, and must have no interests antagonistic to the interests of other class members.'" Id.

(quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006)).

The Class Claimants easily satisfy the adequacy requirements. Indeed, the vigor and

tenacity with which these homeowners have pursued the claims of the class over the last decade,

including two appeals to the Third Circuit, is quite remarkable. In addition, the Third Circuit has

analyzed essentially all of the factual and legal issues relevant to the adequacy of both the named

plaintiffs and their counsel in the two prior appeals, in which objections to the fairness and

sufficiency of two multi-million dollar settlements were thoroughly addressed. Moreover, and

decisively, upon the second remand from the Third Circuit, the named plaintiffs who had previously sought settlement and their counsel (Carlson Lynch of Pittsburgh), and those class members who had previously objected to the settlements, and their counsel (Walters, Bender, Strobehn & Vaughan of Kansas City), all joined forces to address the Third Circuit's specific adequacy concerns and to collaboratively litigate the class claims to insure that all of their claims and interests are pursued to their fullest. As result of their collaboration, the current named plaintiffs – who now include all of the named plaintiffs in the previous six class actions consolidated in the MDL Class Action and five additional named plaintiffs who joined after the second appeal – joined together to file the MDL Complaint. [7]  (Walters/Skeens/Carlson Decl. ¶¶ 62, 76-77).  The MDL Complaint combines all of the claims that could have potentially been pursued on behalf of the Putative Class so that the interests of all of the Putative Class members are aligned, thereby eliminating any adequacy issues.

### E.    Predominance And Superiority Under Rule 23(b)(3)

*Predominance*

Once the Class Claimants have met the requirements of Rule 23(a), Rule 23(b)(3) permits the maintenance of a class action if "the court finds [a] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Actions primarily seeking monetary damages are certified under Rule 23(b)(3). Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 121 (1994).

---

[7]  Carlson Lynch and Walters Bender Strohbhen & Vaughan served as lead counsel, respectively, for the plaintiffs seeking settlement and the objectors.  Now aligned, the group of lawyers representing the Class Claimants continue to be led by these two firms but also include a number of other attorneys as shown by the signature block to the Complaint, attached as Exhibit A to the Class Claim.

Predominance "'is a test readily met in certain cases alleging consumer [ ] fraud . . . .'" In re Am. Int'l Grp., Inc. Secs. Litig., 689 F.3d 229, 240 (2d Cir. 2012) (quoting Amchem, 521 U.S. at 625). Similarly, TILA and HOEPA claims have long been considered as appropriate for class certification. See Goldman v. First Nat'l Bank of Chicago, 532 F.2d 10, 14 (7th Cir. 1976) (citing Haynes v. Logan Furniture Mart, 503 F.2d 1161 (7th Cir. 1974)). Indeed, the section of TILA and HOEPA that provides Putative Class members with their causes of action refers directly to class actions as a means of redress.    See 15 U.S.C. § 1640(a)(2)(b) (2012); Community Bank I, 418 F.3d at 305 (stating that TILA "explicitly contemplates the possibility of a class action suit.").

In evaluating predominance, the Second Circuit has "held that the predominance 'requirement is satisfied if resolution of some of the legal and factual questions that qualify each class member's case as a general controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" Am. Int'l Grp., 689 F.3d at 240 (citations omitted).  Here, essentially all of the factual and legal questions raised by the claims of each Putative Class member can be achieved by generalized proof of the predatory and illegal lending scheme in which RFC played a key role.  The federal statutory claims asserted in the Class Claims are premised on the same standardized conduct that characterized the alleged predatory lending scheme.  For example, the Class Claimants allege that the overwhelming majority of the loans at issue were originated during a period when the Shumway/Bapst companies were receiving almost all of the settlement fees notwithstanding that they were contractually precluded from providing any settlement services in connection with the loans at issue.  The fact that the Shumway/Bapst companies received most of the settlement fees at a time when they not only did not provide any settlement services—but were contractually

precluded from providing the services, is a fundamental violation of federal law that illustrates the standardized nature of the scheme at issue.

Moreover, the documents that form the basis of the Class Claims are standard forms required by federal law. RESPA mandates the form and content of the HUD-1 Settlement Statements used to delineate the allocation of settlement fees in each loan.[8] TILA and HOEPA mandate the form and content of the disclosures that were made to each Putative Class member. See, e.g., 12 U.S.C. § 2603; 15 U.S.C. §§ 1631, 1632, 1638, 1639; 12 C.F.R. §§ 226.17, 226.18, 226.32 (2012); 24 C.F.R. § 3500.8. Because the predatory lending scheme depended upon standardized documents and federal forms, it is clear that the class members' claims can be proved using the same types of standardized evidence. (See Walters/Skeens/Carlson Decl. ¶¶ 65-66); see, e.g., Hickey v. Great W. Mortg. Corp., 158 F.R.D. 603, 610 (N.D. Ill. 1994) ("TILA actions for inadequate disclosure arising from a creditor's standardized procedures or forms are particularly appropriate for class prosecution.").

The federal statutory claims asserted in the Class Claims are all based on the same predatory scheme that violated the same federal laws and caused the same harm as to each similarly situated Putative Class member. As a result, the amount of damages each Putative Class member is entitled to recover will be virtually the only aspect of the Class Claims that will require individualized proof. However, once RFC's common liability is established, proof of each Putative Class member's individual damages will be a matter of simple mathematical calculation based on the same standardized documents used to establish RFC's common liability. (Walters/Skeens/Carlson Decl. ¶¶ 65-72). In any event, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class

---

[8]   Though the HUD-1s are not an element of the Class Claimants' claims under RESPA, they were used to fraudulently conceal the true allocation of settlement fees, i.e. the kickback scheme.

certification." Seijas v. Republic of Arg., 606 F.3d 53, 58 (2d Cir. 2010); In re Natural Gas

Commodities Litig., 231 F.R.D. 171, 180-81 (S.D.N.Y. 2005) ("The requirement of

predominance is met where, as here, there is a showing of predominance of common questions at

the liability stage of the litigation, rather than at the damages stage."); 6 NEWBURG ON CLASS

ACTIONS § 18:27 (4th ed. 2002) ("A particularly significant aspect of the Rule 23(b)(3) approach

is the recognition that individual damages questions do not preclude a Rule 23(b)(3) class action

when the issue of liability is common to the class.").

For all these reasons the Third Circuit determined that the predominance requirement is

satisfied in this case: "Just as the record below supports a finding of typicality, it also supports a

finding of predominance. All plaintiffs' claims arise from the same alleged fraudulent scheme."

Community Bank I, at 308-09.

*Superiority*

As in BGI, the Class Claimants easily satisfy the superiority requirement "because

individually adjudicating each of these substantially similar claims would be impractical and

consume significant judicial resources." BGI, 465 B.R. at 377. See also In re Livaditis, 122 B.R.

330, 339 (Bankr. N.D. Ill. 1990) ("Thus, the filing of a single class proof of claim is clearly the

most efficient method for Class Plaintiffs to preserve and pursue their claims against Debtor.");

In re Kaiser Grp. Int'l, Inc., 278 B.R. 58, 67 (Bankr. D. Del. 2002) ("[T]he issues in this case

arise from the same course of conduct and an adjudication of all the common issues once will

promote judicial economy and efficiency.") Indeed, in addressing this issue in this case the Third

Circuit stated that "[w]e find no reason, and Appellants [settling plaintiffs and underlying

defendants, including RFC] fail to offer any, why a Rule 23(b) class action is not the superior

means to adjudicate this matter." Community Bank I, 418 F.3d at 309.

## V. THE CLASS CLAIM IS CONSISTENT WITH BANKRUPTCY PURPOSES, POLICIES, NEEDS, AND CONCERNS INCLUDING THE "BEDROCK" BANKRUPTCY POLICIES OF FACILITATING CREDITOR COMPENSATION AND ACHIEVING EQUITABLE DISTRIBUTION

The "superiority" analysis naturally leads into and is a major supportive factor in determining whether the proposed Class Claims are consistent with "bankruptcy needs and concerns." Just as in the prepetition litigation, allowing the Class Claims in this bankruptcy is unquestionably superior and the only way to truly afford any meaningful opportunity to these individual homeowners to participate in any distribution.

*American Reserve: The Class Action Or Nothing*

The Seventh Circuit's decision in In re American Reserve Corporation is the leading modern case on the issue of application of Rule 23 of the Federal Rules of Bankruptcy Procedure to contested matters and certification of class claims.  In American Reserve the Seventh Circuit effectively reversed a then predominant judicial hostility to the application of Rule 23 to claims administration.  See 840 F.2d 487 (7th Cir. 1988). The case involved a class action brought by insurance policyholders against an insurance holding company where the trial court had not yet certified the class at the time the bankruptcy case was filed.  Writing for the Seventh Circuit, Judge Easterbrook identified the core policy justifications for the application of Rule 23 in the claims context:

> The compensatory function is as important inside bankruptcy as outside.  Under § 101(4)(A) there may be "claims" of uncertain value, and holders of contingent claims—such as the policyholders—*may not recognize their entitlement to file unless some champion appears*. The representative (presumably) has done substantial investigation to identify and shape the claim.  Even though there is no fee to file claims in bankruptcy, the opportunity costs of the time needed to investigate and decide whether to file may be substantial, especially because Bankruptcy Rule 9011(a) (a parallel to FED. R. CIV. P. 11) requires every claimant to investigate the facts and do necessary legal research before filing.  *The combination of contingent claims (which many people may not identify as something they are entitled to pursue) and the effort needed to decide whether*

> *to pursue an identified claim means that for many small claims, it is class actions or nothing*.

Id. at 489 (emphasis added).

American Reserve was quickly followed by a similar ruling of the Eleventh Circuit in In re Charter Company.    See 876 F.2d 866 (11th Cir. 1989).    The two cases have become the landmark rulings in the modern law of class certification in bankruptcy cases.

### The Southern District Of New York Cases

The Southern District of New York became one of the first courts to follow what the court characterized as "the persuasive decision of Judge Easterbrook in American Reserve," and the Eleventh Circuit's similar holding in In re Charter Company.    Chateaugay, supra., 104 B.R. 626, 632 (S.D.N.Y. 1989), quoting with approval the Eleventh Circuit's statement in Charter that:

> The bankruptcy statute has the goal of facilitating creditor compensation. It would be incongruous for this bedrock policy to be thwarted by reading a procedural limitation into the Code.  Bankruptcy also seeks to achieve equitable distribution of the estate. Persons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the Code than someone with a large, easily filed claim. Applying Rule 23 to filing procedures will bring all claims forward, as contemplated by the Bankruptcy Code.  In sum, permitting proofs of claim to be filed on behalf of a class is at least consistent with the broad goals of the Bankruptcy Code of 1978.

Id. (quoting Charter, 876 F.2d at 871).

The Chateaugay decision involved a class action based on alleged discriminatory hiring and employment policies and practices.  Id. at 627-28.  The class had not yet been certified at the time of the bankruptcy filing.  Id. at 628. A class proof of claim was filed in the bankruptcy case approximately four months after the petition date but was disallowed and expunged by the bankruptcy court based on the district court's ruling that the filing of such a claim was barred by the Bankruptcy Code. Id.

The district court reversed the bankruptcy court.  In so doing, the district court rejected the Debtor's contention "that permitting the filing of class proofs of claim would cause excessive delay or unmanageable problems of valuation." Id. at 633.  The court reasoned:

> Given that § 502(c)(1) specifically provides for the expeditious estimation of unliquidated contingent claims such as the class claims made in the case at hand, and bankruptcy courts are experienced in this procedure, there is no reason to think that permitting the filing of class claims will cause special delay or uncertainty in settling the debtor's estate. ***Even if this were not so, however, any potential marginal increase in delay or in difficulty of valuation of claims would be justified in order to protect the right of small claimants (who might not otherwise be aware of the existence of or be able to process their claims) to be represented by the filing of a class proof of claim***.

Id. (emphasis added).

Despite the Chateaugay Court's early adoption of the Seventh and Eleventh Circuit's rationale, and its finding that the class claim procedure would not unduly disrupt the Chapter 11 process and would often be the only way that certain economically disadvantaged groups would have any realistic chance of participating in Chapter 11 distributions, the Southern District of New York decisions since Chateaugay may appear to have departed from the path it cleared. Indeed they may be thought to evince an implacable hostility to the class claim in the Bankruptcy Courts of this District.[9]

But that conclusion would be hasty, superficial, and wrong.  All of the Southern District cases denying class claim status arose from circumstances dramatically different than the facts in Chateaugay or in this unique case.  In Musicland, for example, the motion to certify was not filed until after confirmation of the plan.  See 362 B.R. at 649.  In Woodward, the class claimant did not seek class certification until a plan had been confirmed and a distribution to unsecured creditors had already occurred.  See 205 B.R. at 370.  The class certification motion in Bally was

---

[9]  See In re Woodward & Lothrop Holdings, Inc., 205 B.R. 365 (Bankr. S.D.N.Y. 1997); In re Ephedra Prods. Liab. Litig., 329 B.R. 1 (S.D.N.Y. 2005); In re Musicland Holding Corp., 362 B.R. 644 (Bankr. S.D.N.Y. 2007); In re Bally Total Fitness of Greater N.Y., Inc., 411 B.R. 142 (S.D.N.Y. 2009); In re Blockbuster Inc., 441 B.R. 239 (Bankr. S.D.N.Y. 2011); In re Motors Liquidation Co., 447 B.R. 150 (Bankr. S.D.N.Y. 2011).

not filed until after the bar date.  See 411 B.R. at 145.  The class in Blockbuster was actually

decertified prior to the bankruptcy filing.  See 441 B.R. at 240.  The motion to certify the class in

Motors was not filed until ten months after the filing of the class proof of claim itself.  See 447

B.R. at 154.  In addition, the claims were based on General Motors's alleged support of South

African apartheid, which the court thought would be very difficult to estimate "without extensive

consideration of the diverse injuries to apartheid claims, and whatever Old GM personnel did

and intended to cause them . . . ."  Id. at 165.

The Ephedra decision involved a class claim that was not submitted until after a

liquidating plan had been filed.  See 329 B.R. at 4 ("[T]he granting of class action claims at this

late juncture would wholly disrupt and undercut the expeditious execution of the Plan of

Reorganization.").   More tellingly, the individual class members in Ephedra would have

recovered only $4.50 each so that "the only real beneficiaries of applying Rule 23 would be

lawyers representing the class." Id. at 10.  Here, in substantial contrast, the average claim as to

each individual loan is $42,076.

In stark contrast to this string of Southern District cases denying class certification, the

Class Claimants' certification motion, as in Chateaugay, has been filed relatively early in the

case.  Although this case was not technically certified prepetition (also like Chateaugay), the

Third Circuit has virtually done so in two different decisions, ruling that the Putative Class met

all requirements for certification other than adequacy of representation[10] and, as shown above,

the adequacy of representation issue is now resolved as the previously adverse parties have made

common cause and the two previously opposed counsel have been designated as Interim Class

---

[10]  See Community Bank II, 622 F.3d at 275; Community Bank I, 418 F.3d at 277.

Counsel by the district court.  Accordingly, the Third Circuit decisions should be given res judicata or collateral estoppel effect[11] or, at a minimum, great deference.

In this situation none of the proposed class members "can participate in the distribution for the price of a stamp," Musicland, 362 B.R. at 651 n.8, and the Class Claims are not the typical "small claims [that] are often 'deemed allowed' under § 502 for want of objection, in which case discovery and fact-finding are avoided altogether." Ephedra, 329 B.R. at 9. On the contrary, extensive pre-petition litigation has shown that each individual claim, which, again, on average, $42,076. per claim, cannot be established without considerable factual and legal investigation and the tenacity of a bulldog.  Undoubtedly the vast majority of the Putative Class simply would have no reason to know the underling statutory and case law basis of, and would not understand the magnitude and complexities, of the illegal lending scheme upon which their TILA, HOEPA, RESPA and RICO claims are based.  And, certainly, the Debtors would object to every claim, with no claim being allowed without major litigation at the trial and probably appellate level as well (including the possibility of two different levels of appeal).  Each claimant would be obligated to come to this Court to individually attempt to overcome objections and ultimately recover on his or her claim. Thus, barring class certification, the homeowners who make up the Putative Class will not be able to afford the type of competent legal counsel needed to help them understand their claims and pursue them in this distant Court, in which one or more of the great legal firms in the nation would be arrayed against them.  Even if the claimants could possibly defend themselves on a pro se basis, the travel costs alone would be more than they could bear.  In short, it cannot be reasonably said that this forum will allow the class claimants

---

[11]  "If the F.R. Civ. P. 23 or like requirements have been deemed satisfied by a nonbankruptcy forum, it seems likely that the class representatives will be deemed by the bankruptcy court to meet those requirements as well.  The issue may even be deemed res judicata."  In re Sacred Heart Hosp. of Norristown, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995).

"to file [individual] proofs of claim without counsel and at virtually no cost." Blockbuster, 441

B.R. at 241. To believe or argue otherwise is either myopic fantasy or masked cynicism. Truly,

paraphrasing American Reserve, it is the class claim or nothing for these 44,395 homeowner

borrower claimants. See 840 F.2d at 489.

### Chateaugay, American Reserve, Charter, And Other Applicable Case Law

As noted, this case is entirely distinguishable from the Southern District of New York

cases denying class certification.[12]   Extensive relevant guidance is available from truly

comparable cases, like Chateaugay in this District, and other decisions such as the previously

cited American Reserve, Charter, Kaiser, and Livaditis.  And see also In re Zenith Labs., Inc.,

104 B.R. 659 (D.N.J. 1989); In re Wang Labs., Inc., 164 B.R. 401 (Bankr. D. Mass. 1994); In re

First Interregional Equity Corp., 227 B.R. 358 (Bankr. D.N.J. 1998); In re First NLC Fin. Servs.,

410 B.R. 726, 731 (Bankr. S.D. Fla. 2008) (citing Charter, stating, "persons holding small

claims, who absent class procedures might not prosecute them, are no less creditors under the

Code than someone with a large, easily filed claim."); In re Protected Vehicles, 397 B.R. 339,

346 (Bankr. D.S.C. 2008) ("Additionally, and equally important, the employees should not be at

a disadvantage of individually litigating complicated legal issues for relatively small recoveries

using the contested matter procedures of the federal bankruptcy rules."); In re Bill Heard Enters.,

Inc., 400 B.R. 795, 803 (Bankr. N.D. Ala. 2009) ("If the Court refused to allow the adversaries to

proceed and required these claimants [2300 of them] to proceed alone through the claims

procedure, it is evident that Bill Heard would vigorously defend against these claims leaving the

---

[12]This case also has nothing in common with other cases denying class certification. See Gentry v. Siegel, 668 F.3d 83 (4th Cir. 2012) (denying certification because the motion to certify was not filed until one year after the bar date and over six months after the initial objections to the named claimants claims were filed); In re Movie Gallery, Inc., 2012 WL 909501 (Bankruptcy E.D. Va. 2012) (individual claim not filed as class claim prior to bar date, motion to apply Rule 23 not filed until three years after general bar date and after liquidating trustee had neared full administration of the postpetition estate including distributions to creditors of $43 million).

claimants to defend their proofs of claims on their own which would be impracticable given the small nature of many of the claims. The Court finds that it is in the best interest of the Putative Class members, judicial economy, and even Bill Heard to an extent to adjudicate these matters in one single action."); In re Taylor Bean & Whitaker Mortg. Corp., No. 09–ap–00439–JAF, 2010 WL 4025873, at *8 (Bankr. M.D. Fla. Sept. 27, 2010) (certifying the class, in part, because the Putative Class members were spread out over several states and would likely suffer geographical hardship if required to defend their claims individually).

Especially pertinent are cases such as In re CommonPoint Mortgage Company where a class of borrowers sued their lender in Chapter 7 based on "hidden charges" in connection with loans made to class members, see 283 B.R. 469 (Bankr. W.D. Mich. 2002), In re First Alliance Mortgage Company where the district court overturned as an abuse of discretion the bankruptcy court's refusal to certify a class of borrowers who alleged predatory lending practices by the bankrupt subprime mortgage lender, see 269 B.R. 428 (C.D. Cal. 2001), and In re United Companies Financial Corporation where the claimants alleged that the Debtors had participated in illegal mortgage broker solicitation activities, inadequate disclosures, and improper payments to mortgage brokers under West Virginia law. See 276 B.R. 368 (Bankr. D. Del. 2002).

The court's description of the situation in First Alliance perfectly describes this case as well and serves to underscore the clear bases for distinguishing this case from the rulings in this district disallowing a class claim. The First Alliance court stated:

> This is not a case where the debtor has fashioned a plan of reorganization based on known claims only to be surprised when a Johnny-come-lately creditor asserts a cause of action against the estate, throwing the bankruptcy case into disarray. First Alliance and the other creditors were well aware of the potential liabilities from the UCL Claimants' long-standing litigation. First Alliance did not create a reorganization plan only to be suddenly surprised by a late-filed proof of claim.

First Alliance, 269 B.R. at 439.

Judge Walrath's reasoning upholding class certification in <u>United Companies</u> applies here as well:

> Here, the Claimants allege that there is no better method to adjudicate the claims aside from a class action. We agree. First, it is probable that most members of the proposed class are unaware of their rights under West Virginia law; thus, it is unlikely that individuals will file separate claims to protect their rights. Second, the amount of damages to be recovered by each class member is relatively small, especially in light of the likely recovery for creditors under the confirmed bankruptcy plan, thereby rendering prosecution of an individual claim cost-prohibitive.

<u>United Co</u>, 276 B.R. at 376.

Finally, the Court in <u>CommonPoint</u> made the simple but overwhelmingly salient point that considerations of fundamental justice and fairness must override merely bureaucratic concerns:

> Yet, from the perspective of the potential class members, many of whom would be unlikely or unable to pursue claims against CommonPoint absent class certification, the certification of a class proof of claim in this case is unquestionably the superior—and possibly the only—method for adjudicating their claims. . . . Further, the court believes that the interests of justice that would be served by certification of a class in this bankruptcy case far outweigh any manageable administrative concerns that may arise as a result of class certification.

283 B.R. at 479.

Although the average claim in <u>CommonPoint</u> was only $2,000 per claimant, and the likelihood of potential recovery was much less than the size of the other competing claims, the Court understood that "***any*** potential recovery shall be meaningful to individual consumer claimants." <u>Id.</u> at 480-81 (emphasis added). In the instant case, where the average claim is far in excess of $2,000 per claimant (and in some cases exponentially so), the potential recovery may still seem relatively small in gross dollars compared to other creditor interests, but the potential recovery is likely to be far more meaningful to these consumers and represent a far larger percentage of their net worth and annual income than the recoveries likely to be obtained by the

great financial institutions and commercial entities that are dominating this case will mean and represent to them. Applying the same reasoning as the Seventh Circuit's landmark ruling in American Reserve ("for many small claims, it is class actions or nothing"), the court concluded in CommonPoint: "Thus, absent class certification in this case, most of these consumers will have no other meaningful opportunity to pursue their claims against CommonPoint. Such a result would be unfair and unacceptable to this court." Id., at 481.

Thus, under the particular circumstances of this case, the denial of class certification would be wholly inconsistent with the "bedrock" goals of the Bankruptcy Code as articulated in American Reserve and Charter, and echoed in Chateaugay – facilitating creditor compensation and achieving equitable distribution. The Court should turn the coldest of shoulders to the cynicism behind the idea that creditors like the Putative Class here should be left entirely at the mercy of the vagaries of the bar date notice and proof of claim process. Class certification will provide the Court with a much more efficient and effective means of resolving these complex claims than the processing of tens of thousands of individual claims (which should and would be the result if there was truly meaningful disclosure in connection with the bar date and proof of claim filing process). Class certification would not adversely affect the efficient administration of this case but will, instead, enhance it in various ways. By allowing all of the common, yet legally complex, issues of fact and law arising from the alleged predatory lending scheme to be addressed on behalf of the entire class in one contested matter, the Court can ensure that all such claims are both heard, and ultimately resolved, in the most timely and least costly manner possible under the circumstances, as well as the most fair and efficient manner available under the Rules of Bankruptcy Procedure.

For these same reasons it is equally clear that the application of class procedures to the Class Claim will not, "in the words of Judge Bernstein, 'gum up the works' of distributing the estate." <u>Ephedra</u>, 329 B.R. at 5 (quoting <u>Woodward</u>, 205 B.R. at 376). As the Debtors repeatedly state, this is "unquestionably amongst the largest and most complex cases ever filed."[13] Even if a bit of stickiness comes with the administration of the Class Claims, it is nothing compared to the gum that is already in these works in the form of the RMBS Settlement litigation alone. In contrast to the cases in which class claimants in this district have been refused class certification, the Class Claimants have filed their Class Claims and Motion relatively early in a very fast moving case. As in <u>First Alliance</u>, the Class Claimants are "no Johnny-come-lately." <u>See</u> 269 B.R. at 439. Moreover, the Debtors' current draft plan, attached as Exhibit A to the Debtor's Exclusivity Motion, proposes an additional six month period after the Effective Date in which the trustee may file objections to all Claims, and the Liquidating Trustee will have up to five years in which to object to, litigate, liquidate, settle, or seek estimation of contingent, unliquidated, or disputed claims. Exclusivity Motion, Ex. 1, Art. I ¶ 32, Art. VIII § B and Art. VII § A ¶¶ 2, 3, Art. VIII § E. Many claims, especially those not filed until November 9 and not objected to until up to six months after a plan is confirmed, will take years to resolve--years after the proposed Class Claims are likely to be resolved should that process is begun now and managed with the same efficiency as the Court has managed, for example, the RMBS Settlement litigation.

## VI.    CONCLUSION

Certification of the Class Claim comes comfortably within all of the Rule 23 requirements and, most importantly, denial of certification in the face of the particular facts and circumstances of this situation would not just be "inconsistent with," it would be a fundamental

---

[13] <u>See</u> Debtors' Exclusivity Motion ¶ 25 [Dkt. No. 1248].

betrayal of the "bedrock" policies underlying, imbedded in, and striated throughout the Bankruptcy Code. The only realistic opportunity that these Class Claimant creditors will have to participate in any distribution is to allow the Class Claim.  Accordingly, the Class Claimants respectfully submit that the Court should grant the Motion.


Dated:  November 2, 2012
        New York, New York


/s/  Daniel J. Flanigan
**POLSINELLI SHUGHART**
Daniel J. Flanigan, Esq.
805 Third Avenue, Suite 2020
New York, New York 10022
(212) 684-0199 (Telephone)
(212) 759-8290 (Facsimile)
*Bankruptcy Counsel for Lead*
*Plaintiffs and the Putative Class*

/s/  David M. Skeens
**WALTERS, BENDER,**
**STROHBEHN & VAUGHAN**
David M. Skeens, Esq.
2500 City Center Square
1100 Main
Kansas City, Missouri  64105
(816) 421-6620 (Telephone)
(816) 421-4747 (Facsimile)
*Co-Lead Counsel for Lead Plaintiffs*
*and the Putative Class*


/s/  R. Bruce Carlson
**CARLSON LYNCH LTD.**
R. Bruce Carlson, Esq. *(Pro Hac Pending)*
115 Federal Street, Suite 210
Pittsburgh, Pennsylvania 15212
(412) 322-9243 (Telephone)
(412) 231-0246 (Facsimile)
*Co-Lead Counsel for Lead Plaintiffs*
*and the Putative Class*

25