Hearing Date: December 20, 2012 at 10:00 a.m. (EST)
Objection Deadline: November 19, 2012 at 4:00 p.m. (EST)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew

*Counsel for the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------
|                                          )
In re:                                     )    Case No. 12-12020 (MG)
|                                          )
RESIDENTIAL CAPITAL, LLC, et al.,          )    Chapter 11
|                                          )
|                     Debtors.             )    Jointly Administered
|                                          )
-------------------------------------------------------------------

**NOTICE OF DEBTORS' MOTION FOR A SUPPLEMENTAL ORDER UNDER
BANKRUPTCY CODE SECTIONS 105(a), 363, 503(b)(1), 507(a)(2), 1107(a) AND 1108
AND BANKRUPTCY RULE 9019 TO THE FINAL WAGES ORDER (I) AUTHORIZING
AND DIRECTING THE DEBTORS TO REIMBURSE ALLY FINANCIAL INC. FOR
PAYMENTS MADE TO THE DEBTORS' EMPLOYEES ON ACCOUNT OF
COMPENSATION ISSUED ON OR AFTER THE PETITION DATE; (II) GRANTING
ALLY FINANCIAL INC. AN ADMINISTRATIVE EXPENSE CLAIM ON ACCOUNT
OF SUCH PAYMENTS; (III) GRANTING ALLY FINANCIAL INC. A LIMITED
RELEASE; AND (IV) AUTHORIZING THE DEBTORS TO ESTABLISH AND FUND
AN ESCROW ACCOUNT FOR THE BENEFIT OF ALLY FINANCIAL INC. ON
ACCOUNT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS, INCLUDING
<u>ADDITIONAL AMOUNTS TO THE ESCROW ACCOUNT AS NECESSARY</u>**

**PLEASE TAKE NOTICE** that the debtors and debtors in possession in the above-

captioned case have filed the *Debtors' Motion for a Supplemental Order Under Bankruptcy*

*Code Sections 105(a), 363, 503(b)(1), 507(a)(2), 1107(a) and 1108 and Bankruptcy Rule 9019 to*

*the Final Wages Order (I) Authorizing and Directing the Debtors to Reimburse Ally Financial*

*Inc. for Payments Made to the Debtors' Employees on Account of Compensation Issued on or*

*After the Petition Date; (II) Granting Ally Financial Inc. an Administrative Expense Claim on*

*Account of Such Payments; (III) Granting Ally Financial Inc. a Limited Release; and (IV)*

*Authorizing the Debtors to Establish and Fund an Escrow Account for the Benefit of Ally*

*Financial Inc. on Account of Such Administrative Expense Claims, including Additional Amounts*

*to the Escrow Account as Necessary* (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that a hearing will take place on **December 20,**

**2012 at 10:00 a.m. (prevailing Eastern time)** before the Honorable Martin Glenn, at the United

States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom

House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion and

the relief requested therein, if any, must be in writing, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the

Southern District of New York (the "**Bankruptcy Court**"), shall set forth the basis for the

objection and the specific grounds therefore, and shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-399, by registered users of the Bankruptcy

Court's case filing system (the User's Manual for the Electronic Case Filing System can be

found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court), with a

hard copy delivered directly to Chambers and served by first-class mail upon (a) counsel for the

Debtors Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn:

Gary S. Lee and Lorenzo Marinuzzi); (b) the Office of the United States Trustee for the Southern

District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn:  Brian S.

Masumoto, Esq.); (c) counsel for Ally Financial, Inc., Kirkland & Ellis, LLP, Citigroup Center,

601 Lexington Avenue, New York, NY 10022 (Attn: Richad Cieri); (d) counsel for Official

Committee of Unsecured Creditors, Kramer Levin Naftalis & Frankel LLP, 1117 Avenue of the

Americas, New York, NY 10036 (Attn: Ken Eckstein and Douglas H. Mannal); and (e) counsel

to the administrative agent for the Debtors' providers of debtor in possession financing, Skadden,

Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Attention:

Kenneth S. Ziman and Jonathan H. Hofer), so as to be received no later than **4:00 p.m.**

**(prevailing Eastern time) on November 19, 2012**, or such shorter time as the Bankruptcy Court

may hereafter order and of which you will receive subsequent notice**.**

PLEASE TAKE FURTHER NOTICE that if you do not timely file and serve a written

objection to the relief requested in the Motion, the Bankruptcy Court may deem any opposition

waived, treat the Motion as conceded, and enter an order granting the relief requested in the

Motion without further notice or hearing.

PLEASE TAKE FURTHER NOTICE THAT replies to responses or objections to the

Motion shall be filed and served so as to be received no later than **4:00 p.m. (prevailing Eastern**

**time) on November 19, 2012.**

PLEASE TAKE FURTHER NOTICE THAT a copy of the Motion may be obtained at

via PACER at http://www.nysb.uscourts.gov.

Dated:  November 2, 2012
        New York, New York

                                        /s/    Gary S. Lee
                                        Gary S. Lee
                                        Lorenzo Marinuzzi
                                        Jordan A. Wishnew
                                        MORRISON & FOERSTER LLP
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone: (212) 468-8000
                                        Facsimile: (212) 468-7900

                                        *Counsel for the Debtors and
                                        Debtors in Possession*

4

**Hearing Date:    December 20, 2012 at 10:00 a.m. (EST)**
**Objection Deadline: November 19, 2012 at 4:00 p.m. (EST)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew

*Counsel for the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------
|                                      )
In re:                                |)    Case No. 12-12020 (MG)
                                      )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, |)    Chapter 11
                                      )
                            Debtors.  |)    Jointly Administered
------------------------------------------------------------------------ )

**DEBTORS' MOTION FOR A SUPPLEMENTAL ORDER UNDER BANKRUPTCY
CODE SECTIONS 105(a), 363, 503(b)(1), 507(a)(2), 1107(a) AND 1108 AND
BANKRUPTCY RULE 9019 TO THE FINAL WAGES ORDER (I) AUTHORIZING AND
DIRECTING THE DEBTORS TO REIMBURSE ALLY FINANCIAL INC. FOR
PAYMENTS MADE TO THE DEBTORS' EMPLOYEES ON ACCOUNT OF
COMPENSATION ISSUED ON OR AFTER THE PETITION DATE; (II) GRANTING
ALLY FINANCIAL INC. AN ADMINISTRATIVE EXPENSE CLAIM ON ACCOUNT
OF SUCH PAYMENTS; (III) GRANTING ALLY FINANCIAL INC. A LIMITED
RELEASE; AND (IV) AUTHORIZING THE DEBTORS TO ESTABLISH AND FUND
AN ESCROW ACCOUNT FOR THE BENEFIT OF ALLY FINANCIAL INC. ON
ACCOUNT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS, INCLUDING
<u>ADDITIONAL AMOUNTS TO THE ESCROW ACCOUNT AS NECESSARY</u>**

# TABLE OF CONTENTS

**Page**

JURISDICTION ............................................................................................................. 2

BACKGROUND ........................................................................................................... 2

PRELIMINARY STATEMENT ................................................................................... 3

RELIEF REQUESTED.................................................................................................. 5

BASIS FOR RELIEF..................................................................................................... 5

      A.    TARP Background.......................................................................... 6

      B.    Prior Relief Granted ...................................................................... 8

      C.    The OSM's Rulings ..................................................................... 11

APPLICABLE AUTHORITY ..................................................................................... 13

      A.    The Compensation Obligations Giving Rise To The Reimbursement Claims Are A Continuation of the Debtors' Prepetition Compensation Practices In The Ordinary Course Of Their Business.......................................... 13

      B.    The Reimbursement Claims Are Administrative Expenses Under Section 503(b)(1) Of The Bankruptcy Code And The Payment Of Such Obligations Are Entitled To Priority Under Section 507(a)(2) Of The Bankruptcy Code. ............................................................................... 15

      C.    Approval Of The Reimbursement Protocol and Proposed Escrow Payments Is Appropriate Under Bankruptcy Code Sections 363 and 105(a). ................................................................................... 17

      D.    Granting Of The Limited Debtor Release To AFI Is Appropriate Under Bankruptcy Rule 9019. ........................................................... 19

CONCLUSION............................................................................................................ 26

ny-1051045

# TABLE OF AUTHORITIES

**Page**

**Cases**

Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.
 (In re Johns-Manville Corp.), 60 B.R. 612 (Bankr. S.D.N.Y. 1986).................................. 14, 17-18

Gassen v. Universal Bldg. Materials, Inc. (In re Berkley Multi-Units, Inc.), 88
 B.R 394 (Bankr. M.D. Fla. 1988) ..................................................................................... 14

In re Boston Generating, LLC, 440 B.R. 302 (Bankr. S.D.N.Y. 2010)................................... 17

In re Chemtura Corp., 439 B.R. 561 (Bankr. S.D.N.Y. 2010)................................................. 20

In re Dana Corp., 358 B.R. 567 (Bankr. S.D.N.Y. 2006) ........................................................ 14

In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493 (Bankr. S.D.N.Y. 1991)
 ................................................................................................................................................ 24

In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285 (2d Cir. 1992) ............................. 21

In re Ionosphere Clubs, Inc., 156 B.R. 414 (S.D.N.Y. 1993), aff'd, 17 F.3d 600
 (2d Cir. 1994)....................................................................................................................... 20

In re Metromedia Fiber Network, Inc., 416 F.3d 136 (2d Cir. 2005)..................................... 25

In re Quigley Co., 437 B.R. 102 (Bankr. S.D.N.Y. 2010)................................................. 17, 18

In re Purofied Down Prods Corp., 150 B.R. 519 (S.D.N.Y. 1993)................................... 20, 21

In re The Leslie Fay Cos.,168 B.R. 294 (Bankr. S.D.N.Y. 1994) .......................................... 14

In re W.T. Grant Co., 699 F.2d 599 (2d Cir. 1982) ............................................................... 20

JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter
 Commc'ns), 419 B.R. 221 (Bankr. S.D.N.Y. 2009) .......................................................... 21

Med. Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne), 114 F.3d 379 (2d Cir.
 1997) ..................................................................................................................................... 14

Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium
 Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007)........................................................... 21

ii

## TABLE OF AUTHORITIES (con't)

**Page**

Nellis v. Shugrue, 165 B.R. 115 (S.D.N.Y. 1994) ..................................................... 20, 21

Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re
Integrated Res., Inc.), 147 B.R. 650 (S.D.N.Y. 1992) ........................................... 17, 18

Pepper v. Litton, 308 U.S. 295 (1939) ........................................................................ 24

Protective Committee for Ind. Stockholders of TMT Trailer Ferry, Inc. v.
Anderson, 390 U.S 414 (1968) ................................................................................. 20

Smith v. Van Gorkom, 488 A.2d 858 (Del. 1985)), appeal dismissed, 3 F.3d 49
(2d Cir. 1993) ............................................................................................................ 17

Supplee v. Bethlehem Steel (In re Bethlehem Steel), 2006 U.S. Dist. LEXIS, 04-
cv-2413, *5 (S.D.N.Y. 2006) aff'd 479 F.3d 167 (2d Cir. 2007) ............................. 15

**Statutes**

11 U.S.C. § 1129(a)(4)(A) ........................................................................................... 15

11 U.S.C. § 363(b)(1) ................................................................................................... 17

11 U.S.C. § 503(b)(1)(A)(i) .......................................................................................... 15

11 U.S.C. § 726(a)(1) .................................................................................................... 15

**Other Authorities**

2 Collier on Bankruptcy ¶ 105.01 at 105-35 (15th rev. ed. 1997) ................................ 17

**Rules**

F.R.B.P. 9019 ................................................................................................................ 20

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**")[1] hereby move for entry of an order, a proposed form of which is attached hereto as Exhibit 1 (the "**Order**"), under sections 105(a), 363, 503(b)(1), 507(a)(2) 1107(a) and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (i) authorizing and directing the Debtors to reimburse Ally Financial Inc. ("**AFI**") for payments to be made by AFI to the Debtors' employees on account of any compensation, including Salary Stock (as defined herein) issued as part of such employees' compensation, on or after the Petition Date; (ii) granting AFI an administrative expense claim in the amount of approximately $8.9 million on account of the estimated payments to be made by AFI to the Debtors' employees with respect to Salary Stock earned and monetized after the Petition Date (the "**Reimbursement Claim**"); (iii) granting AFI and its subsidiaries and affiliates a limited release from any and all claims (as defined by section 101(5) of title 11 of the United States Code) related to (a) the employment by AFI of the Qualifying Debtor Employees (as defined herein) or (b) payments owed on account of such employment by AFI or the Debtors (the "**Limited Debtor Release**"); and (iv) approving the establishment and funding of an escrow account solely for the benefit of AFI to pay the Reimbursement Claims as and when such Reimbursement Claims are paid by AFI, including the funding of additional amounts to the escrow account as necessary.[2]  In support of the Motion, the Debtors incorporate by reference the Declaration of Anne Janiczek (the "**Janiczek Decl.**"), EVP,

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Whitlinger Affidavit (defined below).

[2]    Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief requested in this Motion may refer to http://www.kccllc.net/rescap for additional information.

Chief Human Resources Officer for Residential Capital, LLC, that is being filed

contemporaneously with the Motion.  In further support of the Motion, the Debtors, by and

through their undersigned counsel, respectfully represent:

## JURISDICTION

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion

in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief

requested herein are Bankruptcy Code sections 105(a), 363(b), 503(b)(1), 507(a)(2), 1107(a) and

1108 and Bankruptcy Rule 9019.

## BACKGROUND

2.    On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary

petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are

managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy

Rule 1015(b).

3.    On the Petition Date, the Debtors filed a motion seeking authority to pay and

honor prepetition wages, compensation, employee expense and employee benefit obligations; and

maintain and continue employee compensation and benefit programs the ("**Wages Motion**").[3]

4.    On May 16, 2012, the United States Trustee for the Southern District of New York

---

[3]    *Debtors' Motion for Entry of Interim and Final Orders Under Bankruptcy Code Sections 105(a), 363(b), 507(a), 1107 and 1108 and Bankruptcy Rule 6003 (i) Authorizing, But Not Directing, the Debtors to (a) Pay and Honor Prepetition Wages, Compensation, Employee Expense and Employee Benefit Obligations; and (b) Maintain and Continue Employee Compensation and Benefit Programs, and (ii) Directing Banks to Honor Prepetition Checks and Transfer Requests for Payment of Prepetition Employee Obligations* [Docket No. 43].

2

(the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the

"**Creditors' Committee**").  On July 3, 2012, the court appointed Arthur J. Gonzalez as the

examiner.

## PRELIMINARY STATEMENT

5.      Historically, the Debtors reimbursed AFI for the payroll and compensation

amounts AFI paid directly to the Debtors' employees on the Debtors' behalf.    This

reimbursement included sums on account of cash payments made to the Debtors' employees for

compensation that was delayed pursuant to TARP (as defined herein) in the form of deferred

stock units ("**DSUs**" or "**Salary Stock**").    As of the Petition Date, 81 current and former

employees had compensation awards, in the form of both deferred cash and Salary Stock, which

will become due and owing over the course of these Chapter 11 cases.  Upon seeking bankruptcy

protection, the Debtors stopped reimbursing AFI for the amounts owing to the Debtors'

employees on account of prepetition-issued compensation.  As discussed in greater detail herein,

AFI and the Debtors not only disputed which entity was responsible for funding the

approximately $48.9 million owed to the Debtors' employees on account of prepetition-issued

compensation that is monetized on a postpetition basis but also AFI's implementation of the

OSM Letters (as defined herein) for the Debtors' employees.  However, in an effort to avoid

drawn-out and disruptive litigation over such matters, the parties ultimately agreed that AFI

would implement the term of the OSM Letters and also fund all compensation amounts owed to

the Debtors' employees (approximately[4] $48.9 million) for equity and deferred cash issued

---

[4]    The amounts are "approximate" because the sum ultimately received by an employee is calibrated to the value
of AFI's equity unit at the time the unit is monetized.  In addition, the amounts actually paid could be less than what

*(cont'd)*

3

prepetition.    The parties also agreed that the Debtors would reimburse AFI solely for all postpetition issued Salary Stock to the Debtors' three most senior executives, which comprises a significant portion of their salary and is estimated to be approximately $8.9 million.[5]

6.       Accordingly, by the Motion, the Debtors' objectives are to seek Court authority to: (i) reimburse AFI approximately $8.9 million[6] for the Salary Stock that is issued on a postpetition basis to the Debtors' three most senior executives and which will monetize over the next two and a half years; (ii) grant AFI with an allowed administrative claim for the approximately $8.9 million it will fund to the Debtors' employees on account of postpetition issued Salary Stock; (iii) establish and fund an escrow account for the approximately $8.9 million allowed administrative claim; and (iv) provide AFI with a limited release in exchange for its commitment to pay approximately $48.9 million earned by the Debtors' employees, implement the compensation determinations of the United States Department of Treasury's Office of the Special Master (the "**OSM**") and act as a payroll processor for the postpetition issued Salary Stock to certain executives.    The relief being sought in the Motion is consistent with the first-day relief granted by the Court.    Moreover, it is critical and necessary to the Debtors' estate because the parties' agreement brings finality and certainty to emotionally-charged issues that have the

---

*(cont'd from previous page)*

is contemplated by the Motion and Term Sheet in the event that an employee loses the right to such amounts as a result of their changed employee status with the Debtors.

[5]    The underlying agreement between AFI and the Debtors is reflected in a term sheet, a copy of which is attached to the Janiczek Declaration (the "**Term Sheet**").    The descriptions contained in this Motion of the agreement and the Term Sheet are for illustrative purposes.    In the event of any inconsistencies between the descriptions contained in this Motion and the provisions of the Term Sheet, the provisions of the Term Sheet shall govern.

[6]    As noted above, the value of the equity unit corresponds to the value of the unit at the time it is monetized.    It is possible that the value could increase from the estimated amount, in which case the Debtors would have to supplement the amount in the Escrow Account.    It is also possible that the value of the equity units could decrease. In the event the Debtors complete their reimbursements to AFI and funds remain in the Escrow Account, the remaining funds would revert to the Debtors' estate.

4

potential to disrupt the Debtors' restructuring efforts.

## RELIEF REQUESTED

7.    As explained more fully herein, since the Court granted the relief set forth in the Wages Order, the Debtors and AFI have agreed in principle to a protocol, as set forth in the Term Sheet, for the reimbursement of payments made by AFI on account of Salary Stock issued on a postpetition basis to certain of the Debtors' employees (the "**Reimbursement Protocol**").  To implement the Reimbursement Protocol, the Debtors request that the Court authorize:  (a) an administrative expense claim for AFI on account of Salary Stock issued and paid on a postpetition basis to the Debtors' employees; (b) the Debtors to promptly reimburse AFI from an established escrow account for all payments made by AFI on Salary Stock issued to the Debtors' employees as part of their postpetition compensation, upon the earlier of (i) the effective date of the Debtors' chapter 11 plan, or (ii) the monetization of such compensation; (c) grant to AFI and its subsidiaries and affiliates a limited release from any and all claims arising from (1) the employment by AFI of any of the **Qualifying Debtor Employees** (as defined by the Term Sheet) or (2) payments owed to the Qualifying Debtor Employees on account of such employment by AFI or the Debtors; (d) the Debtors to establish and fund an escrow account solely for AFI's benefit with the estimated amount of the allowed Reimbursement Claim within three business days of entry of the Order, including the authority to fund additional amounts to the escrow account to meet senior executive compensation obligations from and after January 1, 2013.[7]

## BASIS FOR RELIEF

---

[7]    Nothing herein shall be considered as the Creditors' Committee's approval of compensation amounts to be paid by the Debtors to the ResCap T25 employees for services provided to the estate after January 1, 2013, and the Creditors' Committee's rights as to the payment of such amounts by the estate are reserved.

5

A.    *TARP Background*

8.      In October 2008, the United States Department of the Treasury ("**Treasury**") established the Troubled Asset Relief Program ("**TARP**") under the Emergency Economic Stabilization Act of 2008 ("**EESA**").[8]  On February 13, 2009, Congress enacted the American Recovery and Reinvestment Act of 2009 ("**ARRA**").  Title VII of Division B of the ARRA amended in its entirety section 111 of the EESA.  Section 111 of the EESA, as amended by the ARRA, "imposes corporate governance and executive compensation requirements on TARP recipients and requires Treasury to establish certain corporate governance and executive compensation standards with which TARP recipients must comply." See Janiczek Decl. ¶ 4.

9.      As a result of AFI having received financial support under TARP, the Debtors (as indirect wholly-owned subsidiaries) must comply with the TARP rules that govern compensation. See Janiczek Decl. ¶ 5. Since 2009, senior executive officers plus the next twenty most highly-compensated employees (the "**Top 25**") of AFI and its subsidiaries have had their total compensation reviewed and determined annually by the OSM to be compliant with TARP.  Three of the Debtors' senior-most employees (the "**ResCap T25**") currently fall within the Top 25.  See Janiczek Decl. ¶ 9.

10.     The OSM has determined that limited cash base salaries to the Top 25 that may not exceed $500,000 per year, absent a showing of good reason for an exception, are compliant with TARP.  See Janiczek Decl. ¶10.   In addition, the TARP regulations prohibit AFI, or its subsidiaries, from paying (or accruing) any bonus, retention award, or incentive compensation to the Top 25 (except for bonuses required to be paid pursuant to a valid written employment

---

[8]    See 12 U.S.C. § 5021 et seq.

contract executed on or before February 11, 2009, as determined by the Treasury Department). Although TARP rules prohibit bonuses, the TARP rules do allow AFI to issue incentive restricted stock units up to levels no greater than one-third of total annual compensation ("**IRSUs**" or "**TARP Stock**"), but the TARP Stock becomes transferrable only on a *pro rata* basis in proportion to the amount of TARP funds repaid by AFI. See Janiczek Decl. ¶ 13.

11.    The TARP rules also allow AFI or its subsidiaries to pay salary and other permissible forms of compensation in stock; however, the stock may be subject to holding periods or transferability restrictions.  Accordingly, the ResCap T25 have a significant portion of their compensation remitted to them in the form of Salary Stock that meet the TARP rules prohibiting bonuses or retention awards.  See Janiczek Decl. ¶¶ 6, 7.

12.    A Salary Stock unit cannot be subject to a substantial risk of forfeiture or other requirement of continued services and must be payable at a fixed date in the future.[9]  Salary Stock, therefore, vests immediately upon issuance and is non-forfeitable; however, it is subject to a one-year holding period.    Payments that are made on account of Salary Stock depend on the year in which it was issued.[10]  For these reasons, Salary Stock is considered part of base salary for purposes of TARP.  Salary Stock redemption is by far the largest element of cash compensation for senior executives. See Janiczek Decl. ¶¶ 6, 11-12.

13.    TARP rules also require that the compensation structure for those employees that fall within AFI's 75 next most highly-compensated employees (the "**Next 75**") and employees

---

[9]    74 C.F.R. § 28405 (June 15, 2009).

[10]    Salary Stock that was issued before January 1, 2011 is paid in cash as part of the bi-weekly payroll over a five-year period, beginning after the one-year holding period.  Salary Stock that was issued after January 1, 2011 is paid in cash as part of the bi-weekly payroll over a three-year period, also beginning after the one-year holding period.

7

that receive total cash compensation above a certain threshold be subject to the determination of OSM.[11]  See Janiczek Decl. ¶ 15.  In addition to their cash compensation, the Next 75 are eligible for discretionary variable pay awards under the Residential Capital, LLC Annual Incentive Plan (the "**ResCap AIP**") and through participation in the Ally Financial Inc. Long-Term Equity Compensation Plan (the "**AFI LTECIP,**" and together with the ResCap AIP, the "**Discretionary Variable Pay Plans**").  Id.  In connection with the AFI LTECIP, AFI also issued restricted stock units ("**RSUs**") to ResCap's employees. See Janiczek Decl. ¶ 16.

14.    The pay structure for the Next 75, which has been determined by the OSM to be TARP compliant, requires 50 percent of Discretionary Variable Pay that would otherwise be paid in cash to be paid in RSUs that must be deferred for three years.  See Janiczek Decl. ¶ 15.  Furthermore, of the 50 percent of Discretionary Variable Pay that remains eligible to be paid in cash (the "**AIP Cash**"), 50 percent must be deferred for one year (i.e., 25 percent of overall Discretionary Variable Pay) (the "**AIP Outstanding Cash**") for individuals with total cash compensation exceeding $500,000.  Id.

**B.    *Prior Relief Granted***

15.    The Debtors previously received Court authority[12] under the Wages Order to continue, in the ordinary course of their businesses, substantially all of their prepetition compensation practices with respect to their employees, including their senior executives.[13]  For

---

[11]    Nine Employees fall within AFI's 75 next most highly-compensated employees.

[12]    On May 16, 2012, the Court granted the Wages Motion on an interim basis [Docket No. 93]. After the hearing held on June 12, 2012, the Court entered an order on June 15, 2012 approving the Wages Motion on a final basis [Docket No. 386] (the "**Wages Order**").  In support of this Motion, the Debtors rely upon and incorporate by reference the facts set forth in the Wages Motion.

[13]    Wages Order at ¶ 6 (authorizing, but not directing, the Debtors, to "continue postpetition to honor all practices, procedures, plans and policies related to compensation and benefits programs for their Employees, Directors and

*(cont'd)*

8

example, the Debtors were authorized to continue their prepetition practice of reimbursing AFI for compensation and benefits payments made by AFI on the Debtors' behalf.  As described in the Wages Motion, AFI prefunds the Debtors' payroll and is subsequently reimbursed by the Debtors for the amounts funded to the Debtors' employees.  See Janiczek Decl. ¶ 18.

16.     This Motion neither seeks to alter those compensation practices nor include the Debtors' senior executives in an employee incentive or retention plan.  This Motion seeks only to continue one aspect of ResCap's prepetition ordinary course reimbursement practices with AFI for employee wages that had been temporarily suspended pending Court approval.  This reimbursement practice relates to Salary Stock issued to the Debtors' top three senior executives on or following the Petition Date.  This Motion seeks approval to continue reimbursement practices in order to provide clarity to these critical executives regarding a significant portion of their compensation and ensure the continued smooth operations of the Debtors in these Chapter 11 cases.  Critically, the wages at issue (i.e., executives' base salaries) that are the subject of this Motion have already been determined to be acceptable by the OSM. See Janiczek Decl. fn. 5.

17.     Prior to the Petition Date, the Debtors' bi-weekly payroll reimbursement remittance to AFI included Salary Stock that monetized during the prior two weeks, which was previously issued by AFI to the ResCap T25.  In addition, at certain times throughout the year, the Debtors' bi-weekly payroll reimbursement would also include: (a) TARP Stock that became payable upon repayment of a portion of AFI's TARP loan; (b) RSUs that vested and became payable to the Debtors' employees, which were previously issued to such employees by AFI

_____

(cont'd from previous page)

Contractors, to the extent requested in the Motion, including procedures related to reimbursement of AFI for costs associated with the compensation and benefits programs.").

9

under the Discretionary Variable Pay Plans; and (c) AIP Cash or AIP Outstanding Cash payable to employees.   See Janiczek Decl. ¶ 19.

18.    Since the Petition Date, the Debtors have not reimbursed AFI for any amounts payable on account of Salary Stock, TARP Stock, RSUs that were issued by AFI to the Debtors' employees prior to the Petition Date.[14]   See Janiczek Decl. ¶ 30.   Notwithstanding the Debtors discontinuing these reimbursement practices and the dispute regarding which entity was ultimately responsible for such payments, AFI continued to make payments on account of all prepetition-issued compensation to ensure that the Debtors' employees' compensation would not be disrupted.[15]   The outstanding prepetition awards that will become due and payable following the Petition Date to the Debtors' employees total approximately $48.9 million. Janiczek Decl. ¶¶ 27, 30.   AFI shall pay all amounts due and owing, as they become due, on account of Salary Stock (short-term or long-term DSUs), RSUs, TARP Stock, AIP cash, AIP outstanding cash, business continuity incentive plan ("**BCIP**") outstanding cash and BCIP long-term DSUs, that were issued to the Debtors' employees (the "**Qualifying Debtor Employees**") prior to the Petition Date.

19.    The Debtors only seek permission from the Court to reimburse AFI for all payments made by AFI to the Debtors' employees on account of Salary Stock, TARP Stock, IRSUs, base DSUs and other DSUs issued to the Debtors' employees on or after the Petition Date, in accordance with the relief requested herein.   At this time, the Debtors expect that AFI will only

---

[14]    As described more fully in the *Supplemental Disclosure by George Crowley, Senior Human Resources Director, Concerning Debtors' Employee Compensation Practices* [Dkt. No. 426], two reimbursement payments were made by the Debtors to AFI after the Petition Date but then equivalent amounts were subsequently withheld.

[15]    The amounts paid by AFI total approximately $1.95 million.

10

issue Salary Stock on a postpetition basis for calendar year 2012 in the estimated amount of $8,918,975.[16]

20.    In addition, should the Qualifying Debtor Employees remain employed with the Debtors on and after January 1, 2013, the Debtors have agreed to continue the reimbursement practices contemplated under the Reimbursement Protocol and supplement the Escrow Account to meet such additional obligations. Moreover, subject to Court approval, the Debtors anticipate making payments to the Qualifying Debtor Employees in the first quarter of 2013 on account of sums earned for 2012 under the ResCap AIP and LTECIP programs. Therefore, to the extent that the Debtors' employees are required to receive Salary Stock or other forms of AFI equity units as part of their compensation going forward, then the Debtors request the authority to further supplement the Escrow Account with the amounts necessary to reimburse AFI for the estimated monetization of such equity units issued and payable to the Debtors' employees.

### C.    *The OSM's Rulings*

21.    On June 8, 2012, the OSM issued a letter ruling (the "**June Letter**") to AFI that determined certain modifications to the amount and payment schedule for Salary Stock and the payment schedule for TARP Stock previously award to the Top 25 within the AFI organization were compliant with TARP. The impact of the OSM Letter is that the Debtors' senior executives within the Top 25 are eligible to receive accelerated payment on previously-awarded Salary Stock and TARP Stock in addition to receiving additional amounts of Salary Stock in lieu of previously-approved TARP Stock over the remainder of the year (subject to the sole discretion of the AFI Compensation Nominating and Governance Committee). Janiczek Decl. ¶ 22.

---

[16]    *See* note 4 infra.

22.    On July 6, 2012, the OSM issued a letter ruling (the "**July Letter**," together with the June Letter, the "**OSM Letters**") to AFI that determined certain modifications related to the monetization of RSUs awarded for services in the years between 2009 and 2011 and granted in the years between 2010 and 2012, as well as RSUs to be granted in 2012 or 2013 for 2012 services were compliant with TARP.  Specifically, the RSUs may vest ratably on the first and second anniversaries of the grant date and become payable on the second anniversary of the grant date.  The impact of these changes is to accelerate vesting and payout of previously granted RSUs and to provide an accelerated vesting and payout of RSU awards that may be granted for 2012 performance. Janiczek Decl. ¶ 23.

23.    ResCap and AFI disagreed as to AFI's obligations to implement the terms of the OSM Letters for the Employees.  Janiczek Decl. ¶ 24.  After much discussion, the parties resolved their differences in opinion, and AFI has agreed to implement the OSM Letters for ResCap's employees.  Pursuant to the Term Sheet, AFI has agreed to implement the OSM Letters (a) with respect to prepetition-issued compensation upon the filing of this Motion and (b) with respect to postpetition issued compensation upon the entry of the Order.

24.    Accordingly, to implement the Reimbursement Protocol and allow for the Debtors' employees to receive the benefits of the OSM Letters, the Debtors have agreed, subject to the Court's approval, to: (a) grant AFI administrative expense claims under section 503(b)(1) in the amount of the Reimbursement Claims; (b) reimburse AFI for the Reimbursement Claims upon the earlier of (i) the effective date of the Debtors' chapter 11 plan, or (ii) monetization (or converting the Salary Stock into cash) of such Reimbursement Claims (in whole or in part); (c) fund an escrow account for the estimated allowed amount of the Reimbursement Claims of $8,918,975 within three business days of entry of the Order; (d) to fund additional amounts to the

12

escrow account to meet senior executive compensation obligations from and after January 1, 2013 and (e) grant AFI the Limited Debtor Release.

25.     On September 25, 2012, the Debtors and AFI previously advised the OSM of the agreement and conferred with her regarding same. Janiczek Decl. ¶ 25.

## APPLICABLE AUTHORITY

**A.     The Compensation Obligations Giving Rise To The Reimbursement Claims Are A Continuation of the Debtors' Prepetition Compensation Practices In The Ordinary Course Of Their Business.**

26.     Prior to the Petition Date, the OSM determined the ResCap T25's compensation package, including their cash salary and the value of their Salary Stock to be awarded on a bi-weekly basis, to be compliant with TARP.  Also, prior to the Petition Date, the ResCap T25 received a portion of their salary in the form of Salary Stock that was issued on a bi-weekly basis along with their cash salary payments.  The Salary Stock is earned and vested upon issuance, just like salary, and is not subject to forfeiture if the ResCap T25 leaves the Debtors' employ; however, the Salary Stock monetizes according to a schedule set by the OSM.  Similar to their payroll reimbursement practices, the Debtors, in the ordinary course of their businesses, would reimburse AFI for the cash value of the Salary Stock that AFI paid to the ResCap T25 with their bi-weekly payroll as such Salary Stock monetized prior to the Petition Date. See Janiczek Decl. ¶ 30.

27.     Consistent with past practice, AFI has continued to issue Salary Stock to the ResCap T25 on a bi-weekly basis as part of their ordinary course salary.  Since the Petition Date, and as contemplated by the Term Sheet, AFI has monetized Salary Stock issued to the ResCap T25 before the Petition Date, but the Debtors have not reimbursed AFI for any such monetized

13

Salary Stock.[17]

28.     Consistent with the relief granted in the Wages Order and the authority granted to debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors believe they have the authority to reimburse AFI in the ordinary course of business for all Salary Stock issued after the Petition Date because such obligations constitute ordinary course wages but are seeking approval of the Order out of an abundance of caution.

29.     A debtor in possession may use, sell or lease property of the estate without need for prior court approval if the transaction is in the ordinary course.  Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (holding that ordinary course uses of estate property do not require a prior hearing).

30.     Courts broadly interpret the term ordinary course.  Gassen v. Universal Bldg. Materials, Inc. (In re Berkley Multi-Units, Inc.), 88 B.R 394, 396 (Bankr. M.D. Fla. 1988).  In determining whether a transaction is in the ordinary course of business under Bankruptcy Code section 363, the courts apply a two-pronged test: (1) the objective horizontal test, and (2) the subjective vertical test.  See Med. Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne), 114 F.3d 379, 384-85 (2d Cir. 1997); see also In re Dana Corp., 358 B.R. 567, 580 (Bankr. S.D.N.Y. 2006) (and cases cited therein); In re The Leslie Fay Cos.,168 B.R. 294, 304 (Bankr. S.D.N.Y. 1994).  The horizontal test is a factual analysis as to whether the transaction in question is of the sort commonly undertaken by companies in that industry.  Lavigne, 114 F.3d at 385.  That is, the horizontal test focuses on whether the transaction is usual or abnormal for the industry.  The

---

[17]    Supra note 8.

14

vertical test, which is also called the creditor's expectation test, is an analysis conducted from the

perspective of a hypothetical creditor and analyzes whether the transaction subjects the creditor

to economic risks of a nature different from those it accepted when it decided to extend credit.  Id.

(internal quotations omitted); Leslie Fay Cos., 168 B.R. at 304.  In making this determination,

courts look to the debtor's pre-petition business practices and conduct and compare them to the

debtor's postpetition conduct.  Id.

31.    Here, the issuance of DSUs, or Salary Stock, satisfies both the horizontal and

vertical tests.  The horizontal test is easily met.  While the form of the salary may be atypical, the

ordinary course payment of full executive salaries represents a normal component of conducting

business and is an essential element in continuing these Debtors' businesses, which rely heavily

on consistent leadership, familiarity with complex financial assets, and regular interaction with

sophisticated governmental entities.  The continuing payment of these executives in the ordinary

course will further allow the Debtors to maximize the value of their estates.  Likewise, a

hypothetical creditor should expect that the Debtors would continue these practices in connection

with running their businesses, particularly where, as here, the Debtors are seeking to preserve

going concern value.  Thus, continuing the executive compensation procedures is appropriate and

would not subject creditors to economic risks that would not have otherwise been contemplated

by them.

**B.    The Reimbursement Claims Are Administrative Expenses Under Section 503(b)(1) Of The Bankruptcy Code And The Payment Of Such Obligations Are Entitled To Priority Under Section 507(a)(2) Of The Bankruptcy Code.**

32.    The Reimbursement Claims, which pertain to the reimbursement to AFI for its

funding of the wages earned solely on a postpetition basis by the ResCap T25, constitute

administrative expense claims.

15

33.    Section 503(b)(1)(A)(i) provides that "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case" are treated as administrative expenses, which are, as a rule, entitled to priority over prepetition unsecured claims. See 11 U.S.C. §§ 503(b)(1)(A)(i), 507(a)(2), 726(a)(1) and 1129(a)(4)(A).  See also Supplee v. Bethlehem Steel (In re Bethlehem Steel), 2006 U.S. Dist. LEXIS, 04-cv-2413, *5 (S.D.N.Y. 2006) aff'd 479 F.3d 167 (2d Cir. 2007) (citations omitted) ("courts in this circuit have found employment-related benefits such as severance pay are forms of "wages" which can be entitled to administrative expense priority if incurred during the administration of a bankruptcy case).

34.    In order to comply with the TARP compensation restrictions, a significant portion of the total annual compensation for the ResCap T25 is delivered in the form of Salary Stock. See Janiczek Decl. ¶ 12.  The Salary Stock vests upon issuance, however, it is not monetized (i.e., cash payments are not made on account of the Salary Stock) until a later date.  By the end of calendar year 2012, the ResCap T25s will be fully vested in the Salary Stock issued to them on a bi-weekly basis; however, the Salary Stock will not be payable in cash until a later date.  See Janiczek Decl. ¶ 28, 31.

35.    Pursuant to historical practices, AFI has made the initial payments on account of Salary Stock at the time they become payable.  See Janiczek Decl. ¶ 32. The Debtors recognize that although AFI is issuing the Salary Stock related to the Debtors' employees' compensation under the TARP rules, the Debtors are solely responsible for their employees' postpetition compensation.

36.    As was done before the Petition Date, the Debtors believe it is appropriate to continue the reimbursement practices as to the Salary Stock that is granted after the Petition Date,

16

which will monetize at a set future date in order to ensure that the Debtors' executives' compensation is not at risk and AFI is made whole for any funds it remits to the Debtors' employees for their postpetition salaries.

37.     Accordingly, the Debtors seek specific authority from the Court to reimburse AFI for the monetized value of the Salary Stock granted to the Debtors' senior executives after the Petition Date and provide AFI with an administrative expense claim because it is providing an actual and necessary benefit to the estate by funding the Salary Stock at the time it is converted into cash.

### C.     Approval Of The Reimbursement Protocol and Proposed Escrow Payments Is Appropriate Under Bankruptcy Code Sections 363 and 105(a).

38.     Section 363(b)(1) of the Bankruptcy Code, provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course, property of the estate…." 11 U.S.C. § 363(b)(1).  In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use.  See, e.g., In re Boston Generating, LLC, 440 B.R. 302, 322 (Bankr. S.D.N.Y. 2010).

39.     In addition, this court has authority pursuant to section 105(a) of the Bankruptcy Code to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code assures "the bankruptcy courts' power to take whatever action is appropriate and necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 at 105-35 (15th rev. ed. 1997).

40.     The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res.,

17

Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)), appeal dismissed, 3 F.3d 49 (2d Cir. 1993); In re Quigley Co., 437 B.R. 102, 156-57 (Bankr. S.D.N.Y. 2010).  Furthermore, once the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Johns-Manville Corp., 60 B.R. at 616.  Indeed "[c]ourts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence." Quigley Co., 437 B.R. at 157. (quoting Integrated Res., 147 B.R. at 656).  "Parties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity." Id.

41.     The Reimbursement Protocol provides that AFI will remit the monetized value of the Salary Stock issued after the Petition Date to the ResCap T25 so long as the Debtors have the authority to reimburse AFI for such amounts.  See Janiczek Decl. ¶ 34.  To be clear, AFI has stated it will not monetize the postpetition-issued Salary Stock without the Court's approval of the Reimbursement Protocol.  While AFI is issuing the Salary Stock related to the Debtors' employees' compensation under the TARP rules, the Debtors are solely responsible for their employees' postpetition compensation.[18]  The Debtors want to clearly establish the respective roles of AFI and the Debtors as it relates to the payment and funding of the ResCap T25 postpetition salary.  The Debtors believe it is critical to remove the possibility that the ResCap T25 become unnecessarily distracted addressing issues related to the funding of their salaries, which could detract from their efforts to focus on the critical tasks at hand – closing the sales of

---

[18]   Additionally, the Reimbursement Protocol eliminates any prospect of liability for AFI continuing to operate as the Debtors' payroll processor.

substantially all of the Debtors' assets, transitioning those assets to the ultimate purchasers and

confirming a plan that will allow the Debtors to emerge from bankruptcy protection.

42.    The Debtors believe that by funding the escrow account to provide for the

payment of the Reimbursement Claims, which should be given priority as administrative

expenses under the Bankruptcy Code, no creditors will be harmed.  Indeed, the Debtors believe

their estates will benefit from eliminating any distractions resulting from potential future

arguments over obligations and claims between the Debtors and their ultimate parent.

43.    In addition, the Debtors are seeking authority from the Court to open an escrow

account because, as stated earlier, the Debtors normally reimburse payroll related expenses,

including Salary Stock that becomes due on a bi-weekly basis, with other payroll reimbursements.

Here, the Debtors are seeking to pre-fund an escrow account for the amounts that are due and

payable to the employees ratably over the next 2.5 years – i.e., payments will be made to the

ResCap T25s at the end of 2012 and then ratably throughout 2013 and 2014.  See Janiczek Decl.

¶ 28.  By the end of this year, the ResCap T25 will receive payments on account of Salary Stock

issued after the Petition Date in the amount of $2.97 million, and an additional $5.95 million will

have to be paid ratably in 2013 and 2014 on account of postpetition-issued Salary Stock.  See Id.

The Debtors believe it is in the estates' best interests to ensure that there will be a source of

funding to timely reimburse AFI for its monetization of the Salary Stock and thereby, avoid any

potential distractions that could be created by issues surrounding the payment of the deferred

components of their executives' postpetition salary.

**D.    Granting Of The Limited Debtor Release To AFI Is Appropriate Under Bankruptcy Rule 9019.**

44.    In reaching agreement on the terms of the Reimbursement Protocol, including the

grant of the Limited Debtor Release to AFI, the Debtors and AFI have resolved all outstanding

19

disputes between them as to which entity is responsible for payment of the Debtors' prepetition and postpetition compensation amounts.  In exchange for the value being provided by AFI to the estate and in an effort to achieve finality on these compensation issues, the Debtors have agreed to provide AFI with a limited release of claims related to employment by AFI of the Qualified Debtor Employees and compensation payments owed to the Qualified Debtor Employees. However, the Limited Debtor Release will <u>not</u> cover either any indemnification rights that a Qualifying Debtor Employee may have under Article VIII of the Ally Financial Inc. Articles of Incorporation, dated as of March 25, 2011; and/or (ii) any claims or causes of action that are within the scope of the investigation of the Examiner appointed by the Bankruptcy Court pursuant to the *Order Approving the Appointment of Arthur J. Gonzalez, Esq. as Examiner* (ECF No. 674), the scope of which investigation is set forth in the *Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner* (ECF No. 925).

45.    Ordinarily, when determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. <u>Protective Committee for Ind. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S 414, 424 (1968); <u>In re Chemtura Corp.</u>, 439 B.R. 561, 593-94 (Bankr. S.D.N.Y. 2010); <u>In re Ionosphere Clubs, Inc.</u>, 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).  For the reasons discussed herein, the Limited Debtor Release is fair and equitable, reasonable and in the estate's best interests.

46.    In determining whether the settlement is fair and reasonable, the court need not decide the numerous issues of law and fact raised by the settlement, but rather, should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" <u>In re W.T. Grant Co.</u>, 699 F.2d 599, 608 (2d Cir. 1982) (internal citation

20

omitted) quoted in <u>Nellis v. Shugrue</u>, 165 B.R. 115, 121-22 (S.D.N.Y. 1994); <u>see</u> <u>also</u> <u>In re</u>
<u>Purofied Down Prods.</u>, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a
'mini-trial' to determine the merits of the underlying litigation.").

47.    In deciding whether a particular settlement falls within the "range of
reasonableness," bankruptcy courts in the Second Circuit have been guided by the following
factors, including:

> (1) the balance between the litigation's possibility of success and the settlement's
> future benefits; (2) the likelihood of complex and protracted litigation, "with its
> attendant expense, inconvenience, and delay," including the difficulty in
> collecting on the judgment; (3) "the paramount interests of the creditors,"
> including each affected class's relative benefits "and the degree to which
> creditors either do not object to or affirmatively support the proposed settlement;"
> (4) whether other parties in interest support the settlement; (5) the "competency
> and experience of counsel" supporting, and "[t]he experience and knowledge of
> the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth
> of releases to be obtained by officers and directors;" and (7) "the extent to which
> the settlement is the product of arm's length bargaining."

<u>Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC)</u>, 478
F.3d 452, 462 (2d Cir. 2007); <u>see also</u>, <u>e.g.</u>, <u>In re Drexel Burnham Lambert Group, Inc.</u>, 960 F.2d
285, 292 (2d Cir. 1992).    While the court must make an independent determination on the
reasonableness of the settlement, the court may "credit and consider" the opinion of the debtor
and its counsel that the settlement is fair and equitable. <u>See</u>, <u>e.g.</u>, <u>Shugrue</u>, 165 B.R. at 123;
<u>Purofied Down Prods.</u>, 150 B.R. at 522-23; <u>JPMorgan Chase Bank, N.A. v. Charter Commc'ns</u>
<u>Operating LLC (In re Charter Commc'ns)</u>, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) (stating
that the business judgment of the debtor in recommending the settlement should be factored into
the court's analysis).

48.    The Debtors and AFI disagreed over their respective responsibilities for certain
elements of the compensation being paid to the Debtors' employees.  For example, AFI had
asserted that even though it issued Salary Stock to the Debtors' employees before the Petition

21

Date, the manner of historical practices between the parties only required AFI to monetize those

units after the Petition Date _if_ the Debtors continued to reimburse AFI for the amounts paid to the

Debtors' employees.   In addition, AFI did not agree with the Debtors' interpretation that the

OSM Letters mandated implementation of its terms to all employees.   AFI disagreed with the

Debtors' interpretation of the OSM Letters on the following grounds.   First, implementation of

the OSM Letters is permissive, not mandatory, as to individual employees, and historically has

been exercised on an employee-by-employee basis.   Second, the Debtors have not cited to any

governing authority that supports their interpretation of AFI's implementation obligations (nor is

AFI aware of any).   Third, it is AFI's understanding that the OSM agrees with AFI's

interpretation of its implementation responsibilities.   See Janiczek Decl. ¶ 24.   The Debtors

disagreed with AFI on both counts.   The Debtors argued that AFI had responsibility under its

benefit plans to remit payment to the employees regardless of the Debtors' ability to reimburse

AFI.   In addition, to the extent the Debtors were obligated to reimburse AFI for these amounts, it

was the Debtors' view that the reimbursement to AFI would be considered a prepetition general,

unsecured claim.   Moreover, the Debtors expressed to AFI that the Debtors' inability to

effectuate reimbursement of prepetition amounts to AFI while operating under bankruptcy

protection did not absolve AFI of its responsibility to make the payments to the Debtors'

employees.   Lastly, the Debtors did not read the OSM Letters to provide AFI with discretion to

implement the terms for the Debtors' employees, but instead interpreted the OSM Letters to

require AFI to treat the Debtors' employees as it treated its own.

49.       In order to avoid protracted litigation over these matters and provide the Debtors'

affected employees with certainty that they would still receive previously-earned prepetition

compensation as it comes due, the Debtors and AFI came to a mutual understanding, as reflected

in the Term Sheet, wherein AFI committed to make all outstanding prepetition payments for deferred cash and equity-linked compensation to the Debtors' employees without seeking further reimbursement from the Debtors' estates. In addition, AFI further agreed to implement the terms of the OSM's rulings for the prepetition sums owing to the Debtors' employees.[19] In turn, the Debtors acknowledge and agree that all postpetition Salary Stock issued by AFI as part of the Debtors' senior executive compensation is the sole obligation of the Debtors' estates and should be reimbursable by the Debtors' estates. Therefore, the agreement between the Debtors and AFI provides enormous value to the estate because the Debtors' employees will receive, as they come due, all outstanding prepetition compensation amounts owing to them without the estate incurring any corresponding monetary obligations, and the estate will be able to ensure that its senior executives receive all postpetition sums due and owing to them on account of their extraordinary efforts throughout these restructuring proceedings.

50. The Debtors submit that consideration of the <u>Iridium</u> factors weighs in favor of approval of the Limited Debtor Release. Were the Debtors to litigate this fact-specific dispute with AFI, the outcome would be uncertain given the parties' conflicting interpretation of the underlying plan documents, as well as the fact that the dispute is not simply a question of law. Such a dispute would lead to protracted litigation that would only further frustrate employees, distract them from their significant postpetition responsibilities and create unnecessary expense for the estate. More importantly, the Limited Debtor Release is the result of extensive, arms'-length, good faith negotiations among the parties that provide value to the estate. Before the

---

[19]    With regards to the ResCap T25, AFI would implement the terms of the OSM's ruling in the June Letter in favor of the ResCap T25 as to prepetition compensation upon the filing of this motion; and as to postpetition compensation, following entry of the Order.

Motion was filed, the Debtors and AFI provided the Creditors' Committee with the Term Sheet and form of Limited Debtor Release, conferred with the Creditors' Committee and modified the form of the Limited Debtor Release to try and address the Creditors' Committee's concerns. As a result, not only is the Limited Debtor Release narrow in scope, but it also contains an appropriate carve out for claims in scope of the Examiner's investigation as set forth in the *Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner* (ECF No. 925).

51.    The Limited Debtor Release, together with the Term Sheet, provides a timely solution to what could easily become a protracted problem. If approved, the Debtors will have eliminated potential litigation that would have been costly to the estates, removed the potential for significant distractions to the Debtors' senior management and enabled them to focus on the numerous tasks necessary to close the sale of the Debtors' businesses. Moreover, without the Limited Debtor Release being approved as part of the Order, AFI will not make any payments on account of any compensation issued on or after the Petition Date to the Qualifying Debtor Employees. In light of the aforementioned restrictions that TARP places on the structure of the Debtors employees compensation, not having AFI make the initial funding to the Debtors' employees will create significant issues for the Debtors that will further complicate an already complex compensation system and potentially further delay the delivery of compensation to the Debtors' employees.

52.    Moreover, transactions between debtors and insiders must also withstand heightened scrutiny. <u>See</u>, <u>e.g.</u>, <u>Pepper v. Litton</u>, 308 U.S. 295, 306 (1939) (insiders' conduct is subject to "rigorous scrutiny"); <u>In re Drexel Burnham Group, Inc.</u>, 134 B.R. 493, 498 (Bankr. S.D.N.Y. 1991) (subjecting a settlement agreement to closer scrutiny because it was negotiated with an insider, and held that "closer scrutiny of insider agreements should be added to the cook

24

book list of factors that courts use to determine whether a settlement is fair and reasonable.").

53.      In this case, the Debtors took the necessary steps to ensure the Limited Debtor Release is sufficiently narrow in scope so as to not prejudice the estate or the creditors.  For example, before filing the Motion, the Debtors and AFI conferred with the Creditors' Committee and modified the form of release to address their specific concerns.  In addition, the independent members of the Debtors' board of directors were given an opportunity to review the form of release and address any questions with the Debtors' advisors before ultimately approving the form of the Limited Debtor Release.  In sum, the Limited Debtor Release is intended to release only those claims that are necessary to prevent further litigation with respect to the claims covered and resolved by the Term Sheet, while still preserving the claims that relate to the investigation currently being undertaken by the Examiner.  Therefore, the Limited Debtor Release does not implicate any of the concerns expressed by the Second Circuit in In re Metromedia Fiber Network, Inc., 416 F.3d 136 (2d Cir. 2005) (the court raised concerns that when releases afford blanket immunity, the potential for abuse is heightened).

54.      Accordingly, in exchange for AFI's monetary commitments to the Debtors' affected employees, AFI has requested and the Debtors, in the exercise of their reasonable business judgment, believe it appropriate to grant AFI and its subsidiaries and affiliates the Limited Debtor Release.  The Limited Debtor Release is fair, reasonable, and equitable, is in the estate's best interests, and should be approved.  The Debtors submit that the relief sought by this motion is well within the range of reasonableness and necessary to ensure compensation matters for the Debtors' employees do not become a wedge issue in any future creditor disputes. Accordingly, the Court should grant the relief requested in the Motion under Bankruptcy Rule 9019.

25

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court (i) enter an order

substantially in the form attached hereto as <u>Exhibit 1</u> granting the relief requested in the Motion;

and (ii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated:  November 2, 2012
      New York, New York

<u>/s/    Gary S. Lee</u>
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*

26

**EXHIBIT 1**

ny-1051045

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------
                                                )
In re:                                          )       Case No. 12-12020 (MG)
                                                )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,        )       Chapter 11
                                                )
                              Debtors.          )       Jointly Administered
                                                )
-------------------------------------------------------------------

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 363, 503(b)(1), 507(a)(2),
1107(a) AND 1108 AND BANKRUPTCY RULE 9019 TO THE FINAL WAGES ORDER
(I) AUTHORIZING AND DIRECTING THE DEBTORS TO REIMBURSE ALLY
FINANCIAL INC. FOR PAYMENTS MADE TO THE DEBTORS' EMPLOYEES ON
ACCOUNT OF AFI STOCK ISSUED ON OR AFTER THE PETITION DATE; (II)
GRANTING ALLY FINANCIAL INC. AN ADMINISTRATIVE EXPENSE CLAIM ON
ACCOUNT OF SUCH PAYMENTS; (III) GRANTING ALLY FINANCIAL INC. A
LIMITED RELEASE; AND (IV) AUTHORIZING THE DEBTORS TO ESTABLISH
AND FUND AN ESCROW ACCOUNT FOR THE BENEFIT OF ALLY FINANCIAL INC.
ON ACCOUNT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS, INCLUDING
<u>ADDITIONAL AMOUNTS TO THE ESCROW ACCOUNT AS NECESSARY</u>**

Upon the motion (the "**Motion**")[1] of  Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") for entry of interim

and final orders under Bankruptcy Code sections 105(a), 363(b), 503(b)(1), 507(a)(2), 1107 and

1108 and Bankruptcy Rule 9019 (i) authorizing and directing the Debtors to reimburse Ally

Financial Inc. ("**AFI**") for payments made to the Debtors' employees on account of AFI equity

units issued as part of such employees' compensation on or after the Petition Date; (ii) granting

AFI an administrative expense claim related to such Reimbursement Claims; (iii) granting AFI

and its subsidiaries and affiliates a limited release from any and all claims (as defined by section

101(5) of title 11 of the United States Code) related to (a) the employment by AFI of the

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the
relief granted herein may refer to <u>http://www.kccllc.net/rescap</u> for additional information.

Qualifying Debtor Employees or (b) payments owed on account of such employment by AFI or

the Debtors; and (iv) approving the establishment and funding of an escrow account to pay such

Reimbursement Claims, including the funding of additional amounts to the escrow account as

necessary [Docket No. __]; and upon the Janiczek Declaration; and it appearing that this Court

has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing

that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core

proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion having been

given; and it appearing that no other or further notice need be provided; and upon the record of

the Hearing; and it appearing that the relief requested by the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon;

and sufficient cause appearing therefore, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      Nothing herein shall be deemed to authorize the payment of any amounts

or the incurrence of any obligation that would violate section 503(c) of the Bankruptcy Code.

3.      Except as otherwise provided herein, the Debtors are authorized and

directed to reimburse AFI for payments made to the Debtors' employees on account of AFI

equity units issued as part of such employees' compensation on or after the Petition Date without

further order of this Court.

4.      AFI is granted administrative expense claims pursuant to section 503(b) of

the Bankruptcy Code for the Reimbursement Claims.

5.      On and as of the entry of this Order (the "**Effective Date**"), for the good

and valuable consideration provided by AFI, and each of its shareholders, subsidiaries (exclusive

of the Debtors), affiliates, business units, predecessors and successors, joint ventures, employee

benefit plans, members, officers, directors, agents, financial advisors, attorneys, employees,

partners, affiliates, representatives, and assigns of each of the foregoing (collectively, the

"**Released Parties**"), including the payment of all prepetition issued compensation to the

Employees and remitting initial payments to Employees on account of postpetition issued Salary

Stock, each of the Debtors shall provide a full discharge and release to the Released Parties and

their respective properties from any and all Claims (as defined in section 101(5) of the

Bankruptcy Code), causes of action, demands, suits, liabilities, damages, controversies,

judgments, remedies, rights of set-off, indemnity claims, counterclaims, and cross-claims

(including those of the Debtors, and/or the bankruptcy estate of any Debtor created pursuant to

sections 301 and 541 of the Bankruptcy Code in these chapter 11 cases), whether known or

unknown, liquidated or unliquidated, fixed or contingent, whether for tort or fraud, whether held

in a personal or representative capacity, that are or may be pending on the Effective Date or

instituted after the Effective Date against any entity, based in law or equity, including under the

Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or

unasserted as of the date of entry of this Order, arising from the employment by AFI of any of

the Qualifying Debtor Employees, past or present, or arising from payments owed to Qualifying

Debtor Employees on account of employment by AFI, ResCap and any of its subsidiaries and

affiliates, or the Debtors, including those that any of the Debtors would have been legally

entitled to assert against a Released Party in their own right (whether individually or collectively)

or that any holder of a Claim or Equity Security (as defined in section 101(16) of the Bankruptcy

Code)) of a Debtor, or other entity would have been legally entitled to assert on behalf of any of

the Debtors or any of their estates, to the fullest extent of the law; provided, however, for the

purposes of clarity and for the avoidance of any doubt, this Debtor Release shall not release,

waive or provide a defense against (i) any rights that a Qualifying Debtor Employee may have

under Article VIII of the Ally Financial Inc. Articles of Incorporation, dated as of March 25,

2011; and/or (ii) any claims or causes of action that are within the scope of the investigation of

the Examiner appointed by the Bankruptcy Court pursuant to the *Order Approving the*

*Appointment of Arthur J. Gonzalez, Esq. as Examiner* (ECF No. 674), the scope of which

investigation is set forth in the *Order Approving Scope of Investigation of Arthur J. Gonzalez,*

*Examiner* (ECF No. 925).

        6.      Within three days of the entry of this Order, the Debtors are directed to

establish and fund an escrow account for the benefit of AFI to pay the Reimbursement Claims

without further order of this Court, and payments to AFI from the escrow account shall be made

upon the earlier (a) the effective date of the Debtors chapter 11 plan, or (b) the monetization of

postpetition issued AFI equity units.

        7.      The Debtors are authorized to fund additional amounts to the escrow

account as necessary to pay Reimbursement Claims incurred on or after January 1, 2013 without

further order of this Court; provided, however, that, the Debtors shall provide the Committee and

the Office of the United States Trustee with notice prior to funding any additional amounts

pursuant to this Order.

        8.      In the event that the Debtors' employees are required to receive AFI

equity units going forward, then the Debtors are authorized to further supplement the Escrow

ny-1059182

Account with the amounts necessary to reimburse AFI for the estimated monetized amounts of such additional equity units.

9.      Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012, by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

10.      The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

11.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

12.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order in accordance with the Motion.

13.      This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:      New York, New York
            December __, 2012

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE