**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

---------------------------------------------------------------

**DECLARATION OF ANNE JANICZEK IN SUPPORT OF DEBTORS' MOTION FOR A SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 363, 503(b)(1), 507(a)(2), 1107(a) AND 1108 AND BANKRUPTCY RULE 9019 TO THE FINAL WAGES ORDER (I) AUTHORIZING AND DIRECTING THE DEBTORS TO REIMBURSE ALLY FINANCIAL INC. FOR PAYMENTS MADE TO THE DEBTORS' EMPLOYEES ON ACCOUNT OF COMPENSATION ISSUED ON OR AFTER THE PETITION DATE; (II) GRANTING ALLY FINANCIAL INC. AN ADMINISTRATIVE EXPENSE CLAIM ON ACCOUNT OF SUCH PAYMENTS; (III) GRANTING ALLY FINANCIAL INC. A LIMITED RELEASE; AND (IV) AUTHORIZING THE DEBTORS TO ESTABLISH AND FUND AN ESCROW ACCOUNT FOR THE BENEFIT OF ALLY FINANCIAL INC. ON ACCOUNT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS, INCLUDING ADDITIONAL AMOUNTS TO THE ESCROW ACCOUNT AS NECESSARY**

I, Anne Janiczek, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.      I am the Executive Vice President, Chief Human Resources Officer for the Mortgage Division at Debtor[1] Residential Capital LLC and its affiliates ("**ResCap**"). I submit this Declaration in support of the Debtors' Motion under sections 105(a), 363, 503(b)(1), and 507(a)(2) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure for entry of an order (i) authorizing and directing the Debtors to reimburse Ally Financial Inc. ("**AFI**") for payments made to the Debtors' employees on account of AFI stock issued as part of such employees' compensation on or after the Petition

---

[1]      Capitalized terms not otherwise defined herein shall have the definitions ascribed to them in the Motion.

Date (as defined herein); (ii) granting AFI an administrative expense claim related to such

Reimbursement Claims; (iii) granting AFI a limited release with respect to employee

compensation obligations; and (iv) approving the establishment and funding of an escrow

account to pay such Reimbursement Claims, including the funding of additional amounts to the

escrow account as necessary (the "**Motion**").

2.        I have been at ResCap for 13 years, the last 4 in my current position.  In my

current position, I am responsible for leading and managing a team that supports the business in

all aspects of human resources, including: management and executive development; investing

and preserving critical talent acquisition; learning and development; employee relations;

performance management, planning and appraisal; oversight of incentive, long-term and

executive compensation plans; diversity; organizational design and effectiveness; and succession

planning.  Except as otherwise indicated, all statements in this Declaration are based upon: my

personal knowledge; information supplied or verified by personnel in departments within the

Debtors' various business units; my review of the Debtors' books and records as well as other

relevant documents; my discussions with other members of the Debtors' management team;

information supplied by the Debtors' consultants; or my opinion based upon experience,

expertise, and knowledge of the Debtors' operations, financial condition and history.  In making

my statements based on my review of the Debtors' books and records, relevant documents, and

other information prepared or collected by the Debtors' employees or consultants, I have relied

upon these employees and consultants to accurately record, prepare, collect, and/or verify any

such documentation and other information.  If I were called to testify as a witness in this matter, I

would testify competently to the facts set forth herein.

**TARP Compensation Restrictions**

3.      Pursuant to the authority received by the Debtors in the Wages Order (as defined herein), the Debtors have continued substantially all of their prepetition compensation practices with respect to their employees, including their senior executives.  The Debtors are not seeking to alter those compensation practices.  Nor are the Debtors seeking to include their senior executives in a key employee incentive plan or key employee retention plan.  Rather, the Debtors seek to continue one aspect of ResCap's prepetition ordinary course reimbursement practices with AFI for employee wages that had been temporarily suspended pending Court approval. This reimbursement practice relates to equity-linked compensation issued to the Debtors' top three senior executives on or following the Petition Date.  The Debtors seek Court approval to continue the reimbursement practices in the manner described in the Motion in order to provide clarity to these critical executives regarding a significant portion of their compensation and ensure the continued smooth operations of the Debtors in these Chapter 11 cases.  Notably, the wages at issue (i.e., the executives' salaries) that are the subject of the Motion have already been determined to be acceptable by the United States Department of Treasury's Office of the Special Master (the "**OSM**").

4.      In October 2008, the United Stated Department of the Treasury ("**Treasury**") established the Troubled Asset Relief Program ("**TARP**") under the Emergency Economic Stabilization Act of 2008 ("**EESA**").[2]  On February 13, 2009, Congress enacted the American Recovery and Reinvestment Act of 2009 ("**ARRA**").  Title VII of Division B of the ARRA amended in its entirety section 111 of the EESA.  Section 111 of the EESA, as amended by the ARRA, "imposes corporate governance and executive compensation requirements on TARP

---

[2]    *See* 12 U.S.C. § 5021 *et seq.*

recipients and requires Treasury to establish certain corporate governance and executive

compensation standards with which TARP recipients must comply." *See* TARP Standards for

Compensation and Corporate Governance, 74 Fed. Reg. 28,396 (June 15, 2009).

5.      These restrictions apply to any entity of which a TARP recipient owns at least

fifty percent.  AFI received $17.2 billion of funds under TARP, and as of August 15, 2012, it has

repaid $5.7 billion of such funds to Treasury.  ResCap is an indirectly, wholly-owned subsidiary

of AFI.  Accordingly, ResCap, its subsidiaries and their employees have been subject to

compensation restrictions since AFI first received funds under TARP.  These restrictions apply

until AFI repays the exceptional financial assistance, or until the Debtors are no longer

considered a TARP Recipient.

**Prepetition Compensation Practices**

i.      Top 25

6.      TARP regulations limit the amount of salary for the "Top 25" individuals that

may be paid entirely in cash in a single year.  As a result, alternate forms of compensation, such

as deferred stock units ("**DSUs**," which are also referred to as "**Salary Stock**"), are issued to

these individuals.  However, the amount of the future payment on account of such Salary Stock

must be denominated in dollars, rather than shares.  Salary Stock units cannot be subject to a

substantial risk of forfeiture or other requirement of continued services and must be payable at a

fixed date in the future.[3]

7.      Section 111(b)(3)(D) of the EESA requires that standards be established

"prohibiting TARP recipients from paying or accruing any bonus, retention award, or incentive

compensation to certain highly compensated employees."  However, this rule has two exceptions

---

[3]      74 Fed. Reg. at 28,400.

– first, TARP recipients can pay or accrue such amounts if payable as long-term restricted stock, provided the stock does not fully vest until the repayment of TARP assistance, has a value no greater than one-third of the total annual compensation, and is subject to such other terms and conditions as the Secretary of the Treasury believes to be in the public interest; and second, TARP recipients can make bonus payments required to be paid under written employment contracts executed on or before February 11, 2009.[4]

8.    Thus, the "Top 25" employees receive compensation in two principal elements: (a) base salary in the form of cash and Salary Stock, and (b) incentive restricted stock units ("**IRSUs**" or "**TARP Stock**").

9.    For those individuals among the "Top 25" highest paid employees in the AFI organization (inclusive of the Debtors), the amounts of their annual compensation, maximum compensation levels, and the compensation structure are subject to the determination of the OSM, who is appointed by the Secretary of the Treasury.  Pursuant to the TARP Standards, the OSM sets maximum compensation opportunities for the Top 25 on an annual basis, or more frequently if the OSM determines circumstances warrant revisions.  The OSM also determines a compensation statement for each of the "Top 25" individuals, which identifies the components of their compensation for the calendar year.[5]  Three ResCap employees are in AFI's "Top 25":  the Chief Executive Officer; President; and Chief Capital Markets Officer.

10.    The OSM has authorized limited cash base salaries to the Top 25 that may not exceed $500,000 per year, absent a showing of good reason for an exception.

**A.**    *Salary Stock*

---

[4]    74 Fed. Reg. at 28,396 – 97.

[5]    The wages (i.e., executive's salary) that are the subject of this Motion have already been determined to be acceptable by the United States Department of Treasury's Office of the Special Master (the "**OSM**")

11.     TARP permits a recipient to pay salary in the form of stock or other property, and the stock may be subject to holding periods or transferability restrictions.  Salary Stock is a form of equity-linked deferred cash compensation and its value is set by the AFI Board of Directors. Salary Stock is denominated in dollars, vests immediately upon issuance, and is non-forfeitable. Once issued, Salary Stock is subject to a one-year holding period before any cash payments are made, although the ultimate payments of cash are unconditional.

12.     Salary Stock redemption is by far the largest element of cash compensation for senior executives.  The payments that are made on account of Salary Stock depend on the year in which it was issued.  Salary Stock that was issued before January 1, 2011 is paid out in cash as part of the bi-weekly payroll over a five-year period, beginning after the one-year holding period. The Salary Stock that was issued after January 1, 2011 is paid out in cash as part of the bi-weekly payroll over a three-year period, also beginning after the one-year holding period.

**B.**    *TARP Stock*

13.     In addition, the TARP regulations prohibit AFI, or its subsidiaries, from paying (or accruing) any bonus, retention award, or incentive compensation to the Top 25 (except for bonuses required to be paid pursuant to a valid written employment contract executed on or before February 11, 2009, as determined by the Treasury Department).  Although TARP rules prohibit bonuses, TARP rules do allow AFI to issue incentive-based restricted stock units, i.e., IRSUs or TARP Stock, up to levels no greater than one-third of total annual compensation, but the TARP Stock becomes transferrable only on a *pro rata* basis in proportion to the amount of TARP funds repaid by AFI.

14.     Subject to OSM determinations, TARP Stock awards are based on individual performance as recommended by managers to the Compensation Committee of the ResCap Board of Directors, whose recommendations are then subject to the approval of the

Compensation, Nominating and Governance Committee of the AFI Board of Directors.[6]  The

amount of TARP Stock granted for any year cannot exceed one-third of total compensation (as

determined by the OSM) for any person, or a specific maximum amount of TARP Stock within

this limit that the OSM determines is appropriate, whichever is less.  The TARP Stock awards

generally cliff vest after a three-year period, and can be redeemed only after a portion of the

funds received by the TARP recipient are repaid to Treasury.  More specifically, payments may

only be made in 25% increments as AFI's TARP obligation is repaid in equal increments.  As of

December 31, 2011, AFI repaid more than 25% of its TARP obligation, which means that 25%

of any TARP Stock awards will be immediately payable upon vesting.  As of the date hereof, no

other portions of vested TARP Stock become payable until AFI has repaid at least 50% of its

TARP obligation.

       ii.     Next 75

15.    For those employees counted among the "Next 75" most highly-compensated

employees (i.e., nos. 26-100), the OSM determines the structure, but not the amount, of their

annual compensation.  As long as the "Next 75" compensation satisfies the OSM structural

requirements, the company is free to determine compensation amounts and the form of

compensation.  The pay structure for the Next 75, which has been determined by the OSM to be

TARP compliant, requires 50 percent of Discretionary Variable Pay (as defined in the Motion)

that would otherwise be paid in cash to be paid in restricted stock units ("**RSUs**") that must be

deferred for three years.  Furthermore, of the 50 percent of Discretionary Variable Pay that

remains eligible to be paid in cash (the "**AIP Cash**"), 50 percent must be deferred for one year

---

[6]    Prior to March 2012, TARP Stock awards were based on individual performance as recommended by managers
to the AFI Chief Executive Officer, whose recommendations were then subject to the approval of the
Compensation, Nominating and Governance Committee of the AFI Board of Directors.

(i.e., 25 percent of overall ResCap AIP) ("**AIP Outstanding Cash**") for individuals with total cash compensation exceeding $500,000.

16.     In the years before the commencement of these Chapter 11 cases, compensation awards were issued under plans administered by AFI to the Debtors' employees in the form of deferred cash, short-term DSUs, long-term DSUs and/or RSUs.  The RSUs are equity linked to the appraised value of AFI.  RSUs do not vest at the time they are granted, but vest in thirds over a 3-year period and are paid three to four years after the grant date.  Certain of these compensation awards remain outstanding as of the Petition Date.

17.     An additional form of compensation modeled after Salary Stock labeled "Short-Term DSUs" and "Long-Term DSUs," both of which immediately vest upon their issuance, have also been remitted to some members of the Next 75.  Short-Term DSUs and Long-Term DSUs are paid out 12 months and 36 months from their issuance date, respectively.

18.     As described in the first-day "employee wages" motion [Dkt. No. 43] (the "**Wages Motion**"), in the ordinary course of the Debtors' business, AFI processes the Debtors' payroll, funds it, and is subsequently reimbursed by ResCap for the amounts funded to the Debtors' employees.  More specifically, on a bi-weekly basis:  (a) AFI pre-funds a payroll account on Wednesday; (b) AFI submits an invoice to ResCap for ResCap-related wage and benefit costs on Thursday; (c) AFI remits funds from the payroll account to both AFI's and ResCap employees on Friday; and (d) ResCap remits payment to AFI in satisfaction of the payroll invoice on Friday.

19.     Prior to the Petition Date, the Debtors' bi-weekly payroll reimbursement remittance to AFI included Salary Stock that monetized during the prior two weeks, which were previously issued by AFI to the ResCap senior executives in the AFI "Top 25."  In addition, at

certain times throughout the year before the Petition Date, the Debtors' bi-weekly payroll reimbursement also included: (a) TARP Stock that became payable upon repayment of a portion of AFI's TARP loan; (b) RSUs (described below) that vested and became payable to the Debtors' employees, which were previously issued to such employees by AFI under the Discretionary Variable Pay Plans; and (c) AIP Cash or AIP Outstanding Cash payable to employees. Subsequent to the Petition Date, the Debtors have not reimbursed AFI for any amounts payable on account of Salary Stock, TARP Stock, RSUs that were issued by AFI to the Debtors' employees prior to the Petition Date.[7]

### Recent Decisions by the OSM

20.    One of the responsibilities of the OSM is to ensure that the aforementioned rules are applied "consistently and equitably." The scope of the OSM's authority and responsibility is limited to compensation and corporate governance matters under section 111 of the EESA. In addition to interpreting the restrictions on executive compensation and corporate governance, the OSM *inter alia* makes determinations as to compensation payments to, and compensation structures for, certain employees of TARP recipients receiving exceptional financial assistance.[8]

21.    Before the Petition Date, AFI's compensation committee "re-examined the current compensation structure for its top 25 employees and [ ] proposed modifications in the structure of the top 25 compensation payable in 2012, as well as with respect to compensation related to prior years that has not yet been paid, to ensure that Ally's compensation structure is

---

[7]    As described more fully in the *Supplemental Disclosure by George Crowley, Senior Human Resources Director, Concerning Debtors' Employee Compensation Practices* [Dkt. No. 426], two reimbursement payments were made by the Debtors to AFI after the Petition Date but then equivalent amounts were subsequently withheld.

[8]    74 Fed. Reg. at 28,403 - 404.

aligned with returning value to shareholders."[9]  In its prepetition communications with the OSM,

AFI indicated that "as a result of the substantial restructuring that will occur, its executives may

be concerned about the future of their business units and their positions, and that management

needs to make sure that they remain focused on implementing the announced steps as well as

operating the ongoing businesses."[10]

      22.      On June 8, 2012, the OSM issued a letter ruling to AFI (the "**OSM June Letter**")

that set forth the OSM's determination regarding certain modifications to the amount and

payment schedule for Salary Stock and TARP Stock previously awarded to the "Top 25"

employees within the AFI organization (including the Debtors).[11]  The impact of the OSM June

Letter is that the Debtors' senior executives within the Top 25 are eligible to receive the balance

of their total direct compensation for 2012 in the form of Salary Stock redeemable in three equal

installments, the first on the final payroll date of the year, the second ratably over 2013 and the

third ratably over 2014.[12]  Salary Stock earned by the Debtors' senior executives within the Top

25 in 2009 and 2010 that has not yet been paid will be redeemable in equal installments over the

period ending on the third anniversary of the grant.[13]  Additionally, previously awarded TARP

Stock to the Debtors' senior executives within the Top 25 will vest after two years of service.

However, even if vested, the TARP Stock may be redeemed only in 25% installments as AFI

---

[9]    *See* June 8, 2012 Letter to Ally Financial Inc. from the Department of the Treasury (the "**OSM June Letter**"), a copy of which is attached hereto as **Exhibit 1**.

[10]    *See* Id.

[11]    *See* Id.

[12]    *See* Id.

[13]    *See* Id.

repays its TARP obligations in 25% increments or will otherwise be forfeited.[14]  As a result, the

Debtors' three most senior executives will only receive salary compensation, including cash and

Salary Stock, after the Petition Date, not TARP Stock.

23.    On July 6, 2012, the OSM issued a second letter ruling to AFI (the "**OSM July

Letter,**" together with the OSM June Letter, the "**OSM Letters**"), a copy of which is attached as

**Exhibit 2**, which allows RSUs awarded in the years between 2010 and 2012 to the Next 75 vest

ratably in the first and second anniversary of the date of the grant.  Further, the OSM July Letter

allows RSUs issued in the years 2012 and 2013 to similarly vest ratably in the first and second

anniversary of the date of their grant.

24.    ResCap and AFI disagreed as to AFI's obligations to implement the terms of the

OSM Letters for the Employees.  The Debtors expressed its disagreement with AFI's position as

to AFI's ability to implement the terms for only AFI employees and insisted that the Debtors'

employees be treated similarly to AFI's employees.  It is my understanding that AFI did not

agree with the Debtors' interpretation that the OSM Letters mandated implementation of its

terms to all employees.  I have been advised that AFI disagreed with the Debtors' interpretation

of the OSM Letters for the following reasons:  First, implementation of the OSM Letters is

permissive, not mandatory, as to individual employees, and historically has been exercised on an

employee-by-employee basis.  Second, the Debtors have not cited to any governing authority

that supports their interpretation of AFI's implementation obligations (nor is AFI aware of any).

Third, it is AFI's understanding that the OSM agrees with AFI's interpretation of its

implementation responsibilities.

---

[14]    *See* Id.

**Debtors' Preliminary Compensation Agreement with AFI[15]**

25.    Since the June 18 Disclosure (defined herein), the Debtors and AFI have worked

towards a collective understanding to ensure that the Debtors' employees are made whole on

past, present and future compensation in a manner consistent with the Bankruptcy Code and each

parties' obligations vis-à-vis  such compensation.  The Debtors and AFI previously advised the

OSM of the agreement and conferred with her regarding same, and she has not expressed any

objection to the agreed-upon terms.

26.    AFI has agreed that it will remit payments to 81 of the Debtors' current and

former employees relating to deferred cash and AFI equity units issued prior to the Petition Date

as such amounts become payable in cash, without seeking reimbursement from the Debtors or

the estate.  Moreover, subject to the Court's approval, the Debtors have agreed to reimburse AFI

for all payments made by AFI to the Debtors' three senior-most executives on account of Salary

Stock, TARP Stock, base DSUs and other DSUs issued to the Debtors' employees on or after the

Petition Date, in accordance with the relief requested herein, the estimated amount of which is

$8,918,975.

27.    At this time, the amounts collectively owed to ResCap's employees for

outstanding prepetition compensation awards that AFI has agreed to pay is estimated at

approximately $48.9 million.[16]

---

[15]    A copy of the Term Sheet summarizing the agreed-upon terms between AFI and the Debtors is attached hereto
as **Exhibit 3**.  Certain employee-specific information has been redacted; however, unredacted copies have
previously been provided to the Creditors' Committee and the office of the U.S. Trustee, and a copy will be
provided to the Court.

[16]    The amounts are "approximate" because the sum ultimately received by an employee is calibrated to the value
of AFI's equity unit at the time the unit is monetized.  In addition, the amounts actually paid could be less than
what is contemplated by the Motion and Term Sheet in the event that an employee loses the right to such
amounts as a result of their changed employee status with the Debtors.

28.    The amounts owed collectively to ResCap's executives for Salary Stock issued after the Petition Date through December 2012 will total approximately $8.9 million, of which $2.97 million will be payable at the end of 2012, with the remaining $5.95 million payable ratably over 2013 and 2014.  By the Motion, the Debtors only seek to reimburse AFI for this postpetition amount through the grant of an administrative expense claim and the funding of an escrow account in a corresponding amount.

**Debtors' Proposed Postpetition Reimbursements to AFI**

29.    As part of its "first-day" relief, the Debtors sought and received Court approval to continue its prepetition compensation practices, including reimbursing AFI for wage and benefit obligations paid by AFI on behalf of the Debtors.  On June 15, 2012, this Court entered a final order granting the Debtors' authority to continue their compensation and benefit programs consistent with their prepetition policies and practices (the "**Wages Order**") [Dkt. No. 386].

30.    For those individuals who receive Salary Stock as part of their bi-weekly wages, the Debtors would ordinarily reimburse AFI the cash value of the Salary Stock that AFI paid to the Debtors' employees with their bi-weekly payroll.  However, the Debtors have not reimbursed AFI for any prepetition issuances of Salary Stock to the Debtors' employees that monetized after the Petition Date.  Indeed, the Debtors put a control in place so that the Debtors would withhold reimbursements to AFI related to the Salary Stock granted before the Petition Date.[17]  The Debtors are not seeking and, consistent with the Reimbursement Protocol, will not seek authority

---

[17]    *Supplemental Disclosure By George Crowley, Senior Human Resources Director, Concerning Debtors' Employee Compensation Practices* (the "June 18 Disclosure") [Docket No. 426].

to reimburse AFI for its payment of all prepetition compensation obligations to the Debtors'
employees.[18]

31.     However, subsequent to the Petition Date, and consistent with the 2012
compensation statement approved by the OSM that were issued to the employees and the
Debtors' prepetition practices, AFI has continued granting Salary Stock to the Debtors' senior-
most executives included in the "Top 25."  By the end of calendar year 2012, the Debtors'
employees will be fully vested in the Salary Stock issued to them on a bi-weekly basis by AFI;
however, those equity units will not have been fully payable in cash.

32.     Since the Debtors are not capable of monetizing its parent's equity, the Debtors
believe it is appropriate to continue their prepetition reimbursement practices as to the Salary
Stock that is granted after the Petition Date, which will monetize at a set future date.
Accordingly, the Debtors' reimbursement of AFI for its payment of the Salary Stock that is
granted and monetizes after the Petition Date is clearly within the scope of the Wages Order
because such obligations are incurred and reimbursed in the ordinary course of the Debtors'
businesses and consistent with their prepetition practices.

33.     As previously discussed, Salary Stock is an alternate form of delivering salary to
an individual who is subject to the TARP compensation restrictions.  I believe that the Debtors'
reimbursement to AFI for the payments it makes to the Debtors in connection with monetizing
the Salary Stock issued by AFI on a bi-weekly basis is no different than the Debtors reimbursing
AFI for the funds it currently remits to the Debtors' employees.

34.     While operating in chapter 11, the Debtors must comply with the restrictions of
TARP.  The Debtors recognize that although AFI is the entity issuing the Salary Stock to the

---

[18]    Notwithstanding the fact that the Debtors discontinued reimbursing AFI for prepetition amounts, AFI continued
making payments on account of all prepetition-issued compensation, which totaled approximately $1.95 million.

Debtors' employees' compensation under the TARP rules, the Debtors are responsible for their employees' postpetition compensation. Moreover, AFI will only remit the monetized value of the Salary Stock issued after the Petition Date to the ResCap T25 if the Debtors have the authority to reimburse AFI for such amounts. Therefore, I believe it is appropriate to clarify for the Debtors' senior executives that their compensation will be paid in the ordinary course to avoid distracting these senior managers from the most critical tasks at hand – the continued operations of the Debtors' businesses, closing the sales of substantially all of the Debtors' assets, transitioning those assets to the ultimate purchasers, and confirming a chapter 11 plan that maximizes the value of the Debtors' estates for the benefit of all stakeholders.

35.    It is also my understanding that by funding the escrow account to provide for the payment of the Reimbursement Obligations, which I understand are entitled to priority payment as administrative expenses under the Bankruptcy Code, no creditors will be harmed and, in fact, the Debtors' estates will benefit by eliminating any distractions to the Debtors' senior executives.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 2, 2012, at Fort Washington, Pennsylvania.

Anne Janiczek
EVP, Chief Human Resources Officer
Residential Capital, LLC

EXHIBIT 1



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

June 8, 2012

Mr. James J. Duffy
Chief Human Resources Officer
Ally Financial Inc.
1177 Avenue of the Americas
New York, NY 10036

> ### Re:    Compensation Payments and Structure for Ally "Top 25" Employees

Dear Mr. Duffy:

Pursuant to the Department of the Treasury's Interim Final Rule on TARP Standards for Compensation and Corporate Governance (the "Rule"),[1] the Office of the Special Master issued a determination letter regarding 2012 compensation payments and structures for the senior executive officers and next 20 most highly compensated employees (the "top 25 employees") of Ally Financial Inc. ("Ally" or the "Company") on April 6, 2012 (the "top 25 letter"). 31 C.F.R. § 30.16(a)(3)(i).

The top 25 letter noted that Ally might make new proposals with respect to top 25 compensation as it might deem appropriate in accordance with significant developments that might arise at the Company or its subsidiaries. On May 14, Ally's mortgage subsidiary Residential Capital, LLC filed for Chapter 11 bankruptcy, and Ally announced that it would launch a process to explore strategic alternatives, including a possible sale, for its international operations, which include auto finance, insurance, and banking and deposit operations in Canada, Mexico, Europe, the U.K., and South America. The May 14 press release issued by Ally stated in part, "Ally has paid approximately $5.5 billion to the U.S. Treasury, enabling the taxpayer to recover about one-third of the investment made into the company. Upon successful completion of the announced strategic initiatives, Ally expects to return at least another third of the total investment, thereby enabling the U.S. Treasury to recover at least two-thirds of its investment in Ally by year-end."

The compensation structures previously proposed by Ally for 2012 and for previous years, as well as the compensation structures determined by the Office of the Special Master for 2012 and previous years to be consistent with the public interest, did not take into account the announcements on May 14. The Company has stated that, as a result of the substantial restructuring that will occur, its executives may be concerned about the future of their business units and their positions, and that management needs to make sure that they remain focused on implementing the announced steps as well as operating the ongoing businesses.

---

[1] The Interim Final Rule and all determination letters issued by the Office of the Special Master are available at www.financialstability.gov (click on "Executive Compensation").

Accordingly, Ally's compensation committee has re-examined the current compensation structure for its top 25 employees and has proposed modifications in the structure of the top 25 compensation payable for 2012, as well as with respect to compensation related to prior years that has not yet been paid, to ensure that Ally's compensation structure is aligned with returning value to shareholders.

The Rule requires that the Office of the Special Master determine whether 2012 compensation structures for the top 25 employees "will or may result in payments that are inconsistent with the purposes of Section 111 of EESA or TARP, or are otherwise contrary to the public interest." 31 C.F.R. § 30.16(a)(3)(ii) (the "Public Interest Standard"). The Rule also requires that the Office of the Special Master consider six principles when making these compensation determinations. Among the purposes of these principles are "maximization of overall returns to the taxpayers of the United States and providing stability and preventing disruptions to financial markets." *Id.* at § 30.16(b)(1). The principles, which are described in detail in the April 6 top 25 letter, include the principle of "taxpayer return": "The compensation structure, and amount payable . . . should reflect the need for the [company] to remain a competitive enterprise, to retain and recruit talented employees who will contribute to the [company's] future success, and ultimately to be able to repay TARP obligations". *Id.* at § 30.16(b)(1)(ii).

The Office of the Special Master has reviewed the Company's proposals and has determined that certain of the proposals are consistent with the Public Interest Standard, certain of the proposals are not consistent with the Public Interest Standard, and changes are required to certain of the proposals in order to meet the Public Interest Standard. Accordingly, the Office of the Special Master has concluded that the following determinations with respect to the compensation structure of the top 25 employees for 2009-2012[2], as applicable, are consistent with the Public Interest Standard:

a) The modifications will not apply to the Company's chief executive officer.

b) There will not be any increase in total direct compensation for any top 25 employee.

c) There will not be any increase in cash salary for any top 25 employee.

d) The balance of each employee's total direct compensation for 2012 will be payable in the form of stock salary. Stock salary earned in 2012 will be redeemable in three equal installments, the first on the final payroll date of the year, the second ratably over 2013 and the third ratably over 2014.

e) Stock salary earned in 2009 and 2010 and not yet paid will be redeemable in equal installments over the period ending on the third anniversary of the grant.

---

[2] For the avoidance of doubt, such changes are limited to top 25 compensation for such years for employees still employed by the Company on June 1, 2012.

f) Long-term restricted stock previously awarded for prior services will vest after two years of service. Even if vested, as required by the Interim Final Rule, these awards may be redeemed only in 25% installments as Ally repays its TARP obligations in 25% increments, and will otherwise be forfeited.

The approvals in this letter apply only to the employees referenced above and shall not be relied upon by anyone with respect to any other facts or circumstances. Such conclusion is limited to the authority vested in the Office of the Special Master by Section 30.16(a)(3) of the Rule, and shall not constitute, or be construed to constitute, the judgment of the Office of the Special Master or the Department of the Treasury with respect to the compliance of the proposed compensation payments or structure or any other compensation payments or structure for the subject employees with any other provision of the Rule. Moreover, my evaluation and conclusion with respect to these employees have relied upon, and are qualified in their entirety by, the accuracy of the materials submitted by Ally to the Office of the Special Master, and the absence of any material misstatement or omission in such materials.

Very truly yours,

Patricia Geoghegan
Office of the Special Master
for TARP Executive Compensation

cc:   Richard Strahota
      Drema M. Kalajian, Esq.

3

EXHIBIT 2



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

July 6, 2012

Mr. James J. Duffy
Chief Human Resources Officer
Ally Financial Inc.
1177 Avenue of the Americas
New York, NY 10036

> *Re:    Compensation Payments and Structure for Certain Executive Officers and
> Most Highly Compensated Employees of Ally ("Covered Employees 26-100")*

Dear Mr. Duffy:

Pursuant to the Department of the Treasury's Interim Final Rule on TARP Standards for Compensation and Corporate Governance (the "Rule"),[1] the Office of the Special Master issued a determination letter regarding 2012 compensation structures for employees who are either executive officers of Ally or are among Ally's 100 most highly compensated employees, excluding those employees subject to Section 30.10 of the Rule ("Covered Employees 26 – 100" or "Covered Employees") of Ally Financial Inc. ("Ally" or the "Company") on May 9, 2012 (the "determination letter").  31 C.F.R. § 30.16(a)(3)(i).

On May 14, Ally's mortgage subsidiary Residential Capital, LLC filed for Chapter 11 bankruptcy, and Ally announced that it would launch a process to explore strategic alternatives, including a possible sale, for its international operations, which include auto finance, insurance, and banking and deposit operations in Canada, Mexico, Europe, the U.K., and South America. The May 14 press release issued by Ally stated in part, "Ally has paid approximately $5.5 billion to the U.S. Treasury, enabling the taxpayer to recover about one-third of the investment made into the company.  Upon successful completion of the announced strategic initiatives, Ally expects to return at least another third of the total investment, thereby enabling the U.S. Treasury to recover at least two-thirds of its investment in Ally by year-end."

The compensation structures previously proposed by Ally for 2012 and for previous years, as well as the compensation structures determined by the Office of the Special Master for 2012 and previous years to be consistent with the public interest, did not take into account the announcements on May 14.  The Company has stated that, as a result of the substantial restructuring that will occur, its executives may be concerned about the future of their business

---

[1] The Interim Final Rule and all determination letters issued by the Office of the Special Master are available at www.financialstability.gov (click on "Executive Compensation").

units and their positions, and that management needs to make sure that they remain focused on implementing the announced steps as well as operating the ongoing businesses.

Accordingly, Ally's compensation committee has re-examined the current compensation structure for its Covered Employees 26 – 100 and has proposed modifications in the structure of the compensation payable to those employees for 2012, as well as with respect to compensation related to prior years that has not yet been paid, to ensure that Ally's compensation structure is aligned with returning value to shareholders.

As described in the determination letter, under the Rule, the Office of the Special Master's compensation reviews for Covered Employees 26 – 100 differ from the reviews for Ally's "top 25" employees, which addressed individual "amounts payable" to those employees, 31 C.F.R. § 30.16(a)(3)(i). For Covered Employees 26 – 100, the Rule does not require individual payment determinations; instead, the Office of the Special Master must determine only whether the proposed compensation structures "will or may result in payments that are inconsistent with the purposes of Section 111 of EESA or TARP, or are otherwise contrary to the public interest" (as applied to Covered Employees 26 – 100 of Ally, the "Public Interest Standard"). *Id.* § 30.16(a)(3)(ii).

The Rule also requires that the Office of the Special Master consider six principles when making these compensation determinations. *Id.* § 30.16(a)(3)(ii). Among the purposes of these principles are "maximization of overall returns to the taxpayers of the United States and providing stability and preventing disruptions to financial markets." *Id.* at § 30.16(b)(1). These six principles include the principle of "taxpayer return": "The compensation structure, and amount payable . . . should reflect the need for the [company] to remain a competitive enterprise, to retain and recruit talented employees who will contribute to the [company's] future success, and ultimately to be able to repay TARP obligations". *Id.* at § 30.16(b)(1)(ii).

The Office of the Special Master has reviewed the Company's proposals and has determined that, while certain of the proposals are consistent with the Public Interest Standard, certain of the proposals are not consistent with the Public Interest Standard. Accordingly, the Office of the Special Master has concluded that the following determination with respect to the compensation structure of Covered Employees 26 – 100 for 2009 – 2012, as applicable, is consistent with the Public Interest Standard: long-term restricted stock awarded for services in 2009 – 2011, which was awarded in 2010 – 2012, as well as long-term restricted stock to be awarded in 2012 or 2013 for 2012 services, may vest ratably on the first and second anniversaries of the date of grant, and become payable on the second anniversary of the date of grant. For the avoidance of doubt, this determination is limited to compensation for such years for Covered Employees 26 – 100 who were still employed by the Company on June 1, 2012.

The approvals in this letter apply only to the employees referenced above and shall not be relied upon by anyone with respect to any other facts or circumstances. Such conclusion is limited to the authority vested in the Office of the Special Master by Section 30.16(a)(3) of the Rule, and shall not constitute, or be construed to constitute, the judgment of the Office of the Special Master or the Department of the Treasury with respect to the compliance of the proposed compensation payments or structure or any other compensation payments or structure for the

2

subject employees with any other provision of the Rule.  Moreover, my evaluation and conclusion with respect to these employees have relied upon, and are qualified in their entirety by, the accuracy of the materials submitted by Ally to the Office of the Special Master, and the absence of any material misstatement or omission in such materials.

Very truly yours,

Patricia Geoghegan
Office of the Special Master
for TARP Executive Compensation

cc:    Richard Strahota
       Drema M. Kalajian, Esq.

3

EXHIBIT 3

**Highly Confidential**
**FINAL VERSION**

## EXECUTIVE COMPENSATION AGREEMENT TERM SHEET

This term sheet (the "Term Sheet") describes the principal terms of a proposed agreement (the "Agreement") among Residential Capital, LLC ("ResCap") and certain of its direct and indirect subsidiaries (collectively, the "Debtors")[1] and Ally Financial Inc. ("AFI") (each of the Debtors and AFI is a "Party," and collectively, the "Parties") regarding the compensation of Qualifying Debtor Employees (defined herein).

**THIS TERM SHEET IS IN FURTHERANCE OF SETTLEMENT DISCUSSIONS AND THEREFORE IS SUBJECT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES.**

---

[1]   The Debtors are:  ditech, LLC; DOA Holding Properties, LLC; DOA Properties IX (Lots-Other), LLC; EPRE LLC; Equity Investment I, LLC; ETS of Virginia, Inc.; ETS of Washington, Inc.; Executive Trustee Services, LLC; GMAC-RFC Holding Company, LLC; GMAC Model Home Finance I, LLC; GMAC Mortgage USA Corporation; GMACM; GMAC Residential Holding Company, LLC; GMACRH Settlement Services, LLC); GMACM Borrower LLC; GMACM REO LLC; GMACR Mortgage Products, LLC; HFN REO SUB II, LLC; Home Connects Lending Services, LLC; Homecomings Financial Real Estate Holdings, LLC; Homecomings Financial, LLC; Ladue Associates, Inc.; Passive Asset Transactions, LLC; PATI A, LLC; PATI B, LLC; PATI Real Estate Holdings, LLC; RAHI A, LLC; RAHI B, LLC; RAHI Real Estate Holdings, LLC; RCSFJV2004, LLC; Residential Accredit Loans, Inc.; Residential Asset Mortgage Products, Inc.; Residential Asset Securities Corporation; ResCap; Residential Consumer Services of Alabama, LLC; Residential Consumer Services of Ohio, LLC; Residential Consumer Services of Texas, LLC; Residential Consumer Services, LLC; RFC; Residential Funding Mortgage Exchange, LLC; Residential Funding Mortgage Securities I, Inc.; Residential Funding Mortgage Securities II, Inc.; Residential Funding Real Estate Holdings, LLC; Residential Mortgage Real Estate Holdings, LLC; RFC – GSAP Servicer Advance, LLC; RFC Asset Holdings II, LLC; RFC Asset Management, LLC; RFC Borrower LLC; RFC Construction Funding, LLC; RFC REO LLC; RFC SFJV-2002, LLC.

Highly Confidential
FINAL VERSION

| | |
|---|---|
| **Prepetition Compensation for Debtor Employees Who Were Badged at ResCap Prepetition** | Solely as to compensation issued to the Qualifying Debtor Employees[2] prior to May 14, 2012 (the "Petition Date"), upon: |
| | (I) the approval of the Term Sheet and the Agreement by the Compensation Committee of the Debtors' Board of Directors and the Compensation, Nominating and Governance Committee of the AFI Board of Directors (the "AFI Compensation Committee"); and |
| | (II) the Debtors filing the motion (the "Motion"), as further described herein, with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), in form and substance reasonably acceptable to AFI, |
| | then AFI shall pay all amounts due and owing on account of deferred stock units ("DSUs" or "Salary Stock"), restricted stock units ("RSUs"), incentive restricted stock units ("IRSUs" or "TARP Stock"), Short Term DSUs, Long Term DSUs, AIP Cash, AIP Outstanding Cash, AIP Long Term DSUs, BCIP Outstanding Cash, and BCIP Long Term DSUs[3] issued to Qualifying Debtor Employees prior to the Petition Date, as and when such payments become due, the estimated amounts of which are set forth on **Schedule 1** attached hereto. |

---

[2]   The "Qualifying Debtor Employees" are:

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them by the attached Schedules.

**Highly Confidential**
**FINAL VERSION**

| | |
|---|---|
| **Prepetition Compensation for Debtor Employees Who Were Badged at AFI Prepetition** | Solely as to compensation issued prior to the Petition Date to Qualifying Debtor Employees who were badged at AFI prior to the Petition Date, upon:<br><br>(I) the approval of the Term Sheet and the Agreement by the AFI Compensation Committee; and<br><br>(II) the Debtors filing the Motion with the Bankruptcy Court, in form and substance reasonably acceptable to AFI,<br><br>then AFI shall pay all amounts due and owing on account of Salary Stock, RSUs, TARP Stock, Short Term DSUs, Long Term DSUs, AIP Cash, AIP Outstanding Cash, AIP Long Term DSUs, BCIP Outstanding Cash, and BCIP Long Term DSUs issued to Qualifying Debtor Employees who were badged as AFI employees at the time such compensation was issued, as and when such payments become due, the estimated amounts of which are set forth on **Schedule 1** attached hereto. |
| **Postpetition Compensation for Debtor Employees** | The Debtors shall reimburse AFI for all payments made by AFI to the Debtors' employees on account of Salary Stock, TARP Stock, IRSUs, Base DSUs, and Other DSUs issued to employees of the Debtors on or after the Petition Date, in the manner provided for herein, the estimated amounts of which are set forth on **Schedule 2** attached hereto.<br><br>In the event that the Bankruptcy Court does not approve the Motion, AFI will not be at all responsible for making payments on account of compensation issued on or after the Petition Date to the Debtors' employees. |

Highly Confidential
FINAL VERSION

| | |
|---|---|
| **OSM Letter Implementation of Prepetition Compensation** | Solely as to compensation issued to the Qualifying Debtor Employees prior to the Petition Date, upon:<br><br>(I) the Debtors' Board of Directors submitting the requisite request to the AFI Compensation Committee;<br><br>(II) prior to filing the Motion, AFI and the Debtors advising and conferring with the OSM regarding the terms of the Agreement and its proposed implementation (and AFI and the Debtors using reasonable best efforts to speak with the OSM no later than five (5) business days after this Term Sheet is approved by the Debtors' Compensation Committee of the Board of Directors and the AFI Compensation Committee); and<br><br>(III) the Debtors filing the Motion with the Bankruptcy Court, in form and substance reasonably acceptable to AFI,<br><br>then AFI shall support the Debtors' request for the AFI Compensation Committee's approval to implement the terms of the determination letters issued by the United States Department of the Treasury's Office of the Special Master (the "OSM") dated June 8, 2012, and July 6, 2012 (collectively, the "OSM Letters") solely as to compensation issued to the Qualifying Debtor Employees prior to the Petition Date, and use reasonable best efforts to do so within five (5) business days of the satisfaction of the aforementioned conditions. Upon satisfaction of the terms described herein, AFI shall commence remitting payments solely on account of compensation issued prior to the Petition Date to the applicable Qualifying Debtor Employees consistent with the modifications described in the OSM Letters within the next administratively practicable pay period. |

**Highly Confidential**
**FINAL VERSION**

| | |
|---|---|
| **OSM Letter Implementation of Postpetition Compensation** | Solely as to compensation issued to the Qualifying Debtor Employees on or after the Petition Date, upon:<br><br>(I) the Debtors' Board of Directors submitting the requisite request to the AFI Compensation Committee;<br><br>(II) Prior to filing the Motion, AFI and the Debtors shall advise and confer with the OSM regarding the terms of the Agreement and its proposed implementation;<br><br>(III) the Debtors filing the Motion with the Bankruptcy Court, in form and substance reasonably acceptable to AFI; and<br><br>(IV) the Bankruptcy Court entering the order sought by the Motion (the "Order") in a form substantially similar to what is further described herein,<br><br>then AFI shall support the Debtors' request for the AFI Compensation Committee's approval to implement the terms of the OSM Letters solely as to compensation issued to the Qualifying Debtor Employees on or after the Petition Date, and use reasonable best efforts to do so within five (5) business days of the satisfaction of the aforementioned conditions.<br><br>Upon satisfaction of the terms described herein, AFI shall commence remitting payments solely on account of compensation issued on or after the Petition Date to the applicable Qualifying Debtor Employees consistent with the modifications described in the OSM Letters within the next administratively practicable pay period.<br><br>If the Bankruptcy Court does not enter the Order, the Debtors reserve their rights to develop a program that complies with the TARP Standards for Compensation and Corporate Governance promulgated pursuant to sections 101(a)(1), 101(c)(5), and 1011 of the Emergency Economic Stabilization Act of 2008, as amended by the American Recovery and Reinvestment Act of 2009, as may be amended from time to time ("TARP") and does not require AFI to remit payment on account of compensation issued to the Qualifying Debtor Employees on or after the Petition Date. |

**Highly Confidential**
**FINAL VERSION**

| | |
|---|---|
| **Motion Disclosing and Approving Postpetition Compensation Practices, Including Escrow and Reimbursement Obligations** | The Debtors shall file the Motion with, and use best efforts to obtain entry of the Order from, the Bankruptcy Court authorizing and directing the reimbursement of payments made by AFI to employees of the Debtors on account of Salary Stock, TARP Stock, IRSUs, Base DSUs, and Other DSUs issued to employees of the Debtors on or after the Petition Date.<br><br>Specifically, the Order shall authorize:<br><br>(I) an administrative expense claim to AFI on account of such reimbursement payments;<br><br>(II) the Debtors to reimburse AFI for all payments made by AFI to a Qualifying Debtor Employee on account of Salary Stock, TARP Stock, IRSUs, Base DSUs, and Other DSUs issued to employees of the Debtors on or after the Petition Date, upon the earlier of (A) the effective date of the Debtors' chapter 11 plan, or (B) monetization of such compensation;<br><br>(III) the Debtors to fund the estimated amount of the allowed administrative expense claim of $[8,918,975] into an escrow account (the "Escrow Account") for the benefit of AFI, within three business days of entry of the Order; and<br><br>(IV) the Debtor Release (as defined herein) that shall be fully effective as of the entry of the Order.<br><br>For the purpose of clarity, if the Bankruptcy Court does not enter the Order, AFI will not be at all responsible for making any payments on account of any compensation issued on or after the Petition Date to the Qualifying Debtor Employees.<br><br>The Motion also shall include full disclosure, and the Order shall acknowledge the propriety, of the historical and postpetition compensation practices between AFI and the Debtors. |

Highly Confidential
FINAL VERSION

| | |
|---|---|
| **Releases** | Subject to the approval of the Bankruptcy Court, the Debtors shall release AFI and its subsidiaries and affiliates from any and all claims (as defined by section 101(5) of the title 11 of the United States Code) related to (I) the past employment by AFI of the Qualifying Debtor Employee or (II) payments owed on account of employment by AFI, ResCap (including all of its subsidiaries and affiliates), or the Debtors (the "<u>Debtor Release</u>") (a copy of which is attached hereto as **Exhibit 1**).<br><br>In order for a Releasing Employee[4] to obtain the benefits of this agreement, the Releasing Employee shall execute a release (a copy of which is attached hereto as **Exhibit 2**) in favor of AFI and its subsidiaries from any and all claims (as defined by section 101(5) of the title 11 of the United States Code) related to (I) the past employment by AFI of the Releasing Employee or (II) payments owed on account of employment by AFI, ResCap (including all of its subsidiaries and affiliates), or the Debtors; provided, however, that the effectiveness of the Agreement shall not be conditioned on AFI receiving releases from every Releasing Employee.<br><br>For the purpose of clarity, if a Releasing Employee does not execute the aforementioned release, AFI shall not implement the terms of the OSM Letters nor be at all responsible for making payments on account of compensation issued postpetition as to such non-Releasing Employee, but AFI shall continue to pay all prepetition amounts due and owing to such employee as and when such payments become due. |
| **Sunset of Rebadging** | Thomas Marano, Steven Abreu, and Louis Nees shall waive any and all rights to be rebadged upon the effective date of the Debtors' chapter 11 plan. |

---

[4] The "<u>Releasing Employees</u>" are:

**Highly Confidential**
**FINAL VERSION**

| | |
|---|---|
| **Disclosure of All Compensation Agreements** | Thomas Marano, Steven Abreu, and Louis Nees shall disclose solely to the chairman of the AFI Compensation Committee any and all agreements made with the ultimate purchaser of substantially all of the Debtors' servicing assets that relate to their compensation, if such details are not otherwise publicly disclosed. |
| **TARP and OSM Compliance** | This Agreement and the implementation of its terms shall comply with TARP and all determinations issued by the OSM (including past determinations and any future determinations), and this Agreement and the implementation of its terms shall be modified as necessary to comply with TARP or any determinations of the OSM. |
| **2013 Compensation** | Should the Qualifying Debtor Employees remain employed with the Debtors on and after January 1, 2013, then the Parties will continue the reimbursement practices contemplated in this Term Sheet and supplement the Escrow Account. |
| **Other Disclosure** | Prior to filing the Motion, the Debtors and AFI shall disclose to the Official Committee of Unsecured Creditors and the Office of the United States Trustee the Agreement, Motion, and Order, in a good faith effort to obtain their consent to the same. |
| **Schedules 1 and 2; Illustrative Purposes Only** | Schedules 1 and 2 attached hereto are for illustrative purposes only and do not supersede the binding effect of the governing award letters, plan materials, statutes and/or regulations. In the event that AFI, the Debtors, or a Qualifying Debtor Employee learns of an inadvertent oversight or calculation error on Schedules 1 or 2, the terms of the governing award letters, plan materials, statutes and/or regulations (and not Schedules 1 or 2) will determine the correct compensation to be paid. |

**Highly Confidential**
**FINAL VERSION**

## Schedule 1

**Estimated Payments To Be Made on Account of Prepetition Compensation for
Debtor Employees Who Were Badged at ResCap Prepetition**

**Highly Confidential**
**FINAL VERSION**

| Last | First | Designation | Grant Year | Employer | Value | Award |
|------|-------|-------------|------------|----------|-------|-------|
| | | T25 | 2011 | ResCap | | 2011 DSU |
| | | T25 | through 5/14/2012 | ResCap | | 2012 DSU |
| | | T25 | 10/28/2009 | ResCap | | 2009 IRSU |
| | | T25 | 2/8/2010 | ResCap | | 2010 IRSU |
| | | T25 | 12/16/2010 | ResCap | | 2010 IRSU |
| | | T25 | 12/19/2011 | ResCap | | 2011 IRSU |
| | | T25 | 12/16/2010 | ResCap | | 2010 Short Term DSU |
| | | T25 | 12/16/2010 | ResCap | | 2010 Long Term DSU |
| | | T25 | 12/16/2010 | ResCap | | 2010 AIP Cash |
| | | T25 | 2/14/2011-12/31/2011 | ResCap | | 2011 DSU |
| | | T25 | through 5/14/2012 | ResCap | | 2012 DSU |
| | | T25 | 12/19/2011 | ResCap | | 2011 IRSU |
| | | N75 | 9/15/2008 | ResCap | | 2008 RSU |
| | | N75 | 3/18/2009 | ResCap | | 2009 RSU |
| | | N75 | 2/8/2010 | ResCap | | 2010 RSU |
| | | N75 | 2/14/2011 | ResCap | | 2011 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 RSU |
| | | N75 | 2/19/2010 | ResCap | | 2010 AIP Long Term DSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 AIP Outstanding Cash |
| | | N75 | 8/5/2011 | ResCap | | 2010 BCIP Outstanding Cash |
| | | N75 | 8/5/2011 | ResCap | | 2010 BCIP Long Term DSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 AIP Outstanding Cash |
| | | N75 | 9/15/2008 | ResCap | | 2008 RSU |
| | | N75 | 3/18/2009 | ResCap | | 2009 RSU |
| | | N75 | 2/14/2011 | ResCap | | 2011 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 AIP Outstanding Cash |
| | | N75 | 8/5/2011 | ResCap | | 2010 BCIP Outstanding Cash |
| | | N75 | 8/5/2011 | ResCap | | 2010 BCIP Long Term DSU |
| | | N75 | 9/15/2008 | ResCap | | 2008 RSU |
| | | N75 | 3/18/2009 | ResCap | | 2009 RSU |
| | | N75 | 2/8/2010 | ResCap | | 2010 RSU |
| | | N75 | 2/14/2011 | ResCap | | 2011 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 AIP Outstanding Cash |
| | | N75 | 8/5/2011 | ResCap | | 2010 BCIP Outstanding Cash |
| | | N75 | 8/5/2011 | ResCap | | 2010 BCIP Long Term DSU |
| | | N75 | 9/15/2008 | ResCap | | 2008 RSU |
| | | N75 | 3/18/2009 | ResCap | | 2009 RSU |
| | | N75 | 2/8/2010 | ResCap | | 2010 RSU |
| | | N75 | 2/14/2011 | ResCap | | 2011 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 AIP Outstanding Cash |
| | | N75 | 11/11/2011 | ResCap | | 2011 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 RSU |
| | | N75 | 9/15/2008 | ResCap | | 2008 RSU |
| | | N75 | 3/18/2009 | ResCap | | 2009 RSU |
| | | N75 | 2/8/2010 | ResCap | | 2010 RSU |
| | | N75 | 2/14/2011 | ResCap | | 2011 RSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 RSU |
| | | N75 | 2/19/2010 | ResCap | | 2010 AIP Long Term DSU |
| | | N75 | 2/6/2012 | ResCap | | 2012 AIP Outstanding Cash |
| | | N75 | 8/5/2011 | ResCap | | 2010 BCIP Outstanding Cash |
| | | N75 | 8/5/2011 | ResCap | | 2010 BCIP Long Term DSU |
| | | Former N75 | 9/15/2008 | ResCap | | 2008 RSU |
| | | Former N75 | 4/21/2009 | ResCap | | 2009 RSU |
| | | Former N75 | 2/8/2010 | ResCap | | 2010 RSU |
| | | Former N75 | 2/14/2011 | ResCap | | 2011 RSU |
| | | Former N75 | 2/6/2012 | ResCap | | 2012 RSU |

**Highly Confidential**
**FINAL VERSION**

| Last | First | Designation | Grant Year | Employer | Value | Award |
|------|-------|-------------|------------|----------|-------|-------|
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 3/21/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 3/21/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 3/21/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 3/21/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |

Highly Confidential
**FINAL VERSION**

| Last | First | Designation | Grant Year | Employer | Value | Award |
|------|-------|-------------|------------|----------|-------|-------|
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 6/18/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 6/18/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 9/15/2008 | ResCap | | 2008 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 3/21/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 3/18/2009 | ResCap | | 2009 RSU |
| | | Other | 2/8/2010 | ResCap | | 2010 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/6/2012 | ResCap | | 2012 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |
| | | Other | 2/14/2011 | ResCap | | 2011 RSU |

Total Pre-Petition Compensation (Badged as ResCap)    25,282,909

**Highly Confidential**
**FINAL VERSION**

-and-

## Estimated Payments To Be Made on Account of Prepetition Compensation for ResCap Employees Who Were Terminated Prepetition by ResCap

Supplemental Schedule for Terminated Employees as of 6/1/2012 (badged as ResCap)

| Emp ID | Last | First | Designation | Grant Date | Employer | Value | Award |
|--------|------|-------|-------------|------------|----------|-------|-------|
| | | | Former N75 | 2/8/2010 | ResCap | | 2010 RSU |
| | | | Former N75 | 2/8/2010 | ResCap | | 2010 RSU |
| | | | Former N75 | 2/14/2011 | ResCap | | 2011 AIP Long Term DSU |
| | | | Former N75 | 2/19/2010 | ResCap | | 2010 AIP Long Term DSU |
| | | | Former T25 | 2009 | ResCap | | 2009 DSU |
| | | | Former T25 | 2010 | ResCap | | 2010 DSU |
| | | | | | Subtotal | 1,161,602 | |

Highly Confidential
FINAL VERSION

-and-

## Estimated Payments To Be Made on Account of Prepetition Compensation for Debtor Employees Who Were Badged at AFI Prepetition

| Last | First | Designation | Grant Date | Employer | Value | Award |
|------|-------|-------------|------------|----------|-------|-------|
| | | T25 | 10/28/2009 | AFI | | 2009 IRSU |
| | | T25 | 12/16/2010 | AFI | | 2010 IRSU |
| | | T25 | 12/19/2011 | AFI | | 2011 IRSU |
| | | T25 | 2009 | AFI | | 2009 DSU |
| | | T25 | 2010 | AFI | | 2010 DSU |
| | | T25 | 2011 | AFI | | 2011 DSU |
| | | T25 | through 5/14/2012 | AFI | | 2012 DSU |
| | | T25 | 10/28/2009 | AFI | | 2009 IRSU |
| | | T25 | 12/16/2010 | AFI | | 2010 IRSU |
| | | T25 | 12/19/2011 | AFI | | 2011 IRSU |
| | | T25 | 2009 | AFI | | 2009 DSU |
| | | T25 | 2010 | AFI | | 2010 DSU |
| | | T25 | 2011 | AFI | | 2011 DSU |
| | | T25 | through 5/14/2012 | AFI | | 2012 DSU |
| | | T25 | 3/18/2009 | AFI | | 2009 IRSU |
| | | T25 | 2/8/2010 | AFI | | 2010 IRSU |
| | | T25 | 12/16/2010 | AFI | | 2010 IRSU |
| | | T25 | 1/1/2011-2/14/2011 | AFI | | 2011 DSU |
| | | T25 | 12/16/2010 | AFI | | Short Term DSU |
| | | T25 | 12/16/2010 | AFI | | Long Term DSU |
| | | T25 | 12/16/2010 | AFI | | 2010 AIP Cash |
| | | N75 | 9/15/2008 | AFI | | 2008 RSU |
| | | N75 | 3/18/2009 | AFI | | 2009 RSU |
| | | N75 | 2/8/2010 | AFI | | 2010 RSU |
| | | N75 | 2/14/2011 | AFI | | 2011 RSU |
| | | N75 | 8/5/2011 | AFI | | 2010 BCIP Outstanding Cash |
| | | N75 | 8/5/2011 | AFI | | 2010 BCIP Long Term DSU |
| | | N75 | 12/23/2009 | AFI | | 2009 RSU |
| | | N75 | 2/8/2010 | AFI | | 2010 RSU |
| | | N75 | 2/14/2011 | AFI | | 2011 RSU |
| | | N75 | 2/6/2012 | AFI | | 2012 RSU |
| | | N75 | 2/8/2010 | AFI | | 2010 RSU |
| | | N75 | 9/15/2008 | AFI | | 2008 RSU |
| | | N75 | 3/18/2009 | AFI | | 2009 RSU |
| | | N75 | 2/8/2010 | AFI | | 2010 RSU |
| | | N75 | 2/14/2011 | AFI | | 2011 RSU |
| Total Pre-Petition (Badged as AFI) | | | | | 21,385,352 | |

**Highly Confidential**
**FINAL VERSION**

Supplemental Schedule for Pre-Petition Grants for Employees below T100 (badged as AFI)

| Emp ID | Last | First | Designation | Grant Date | Employer | Value | Award |
|---|---|---|---|---|---|---|---|
| | | | Other | 8/1/2011 | AFI | | 2011 RSU |
| | | | Other | 2/6/2012 | AFI | | 2012 RSU |
| | | | Other | 2/8/2010 | AFI | | 2010 RSU |
| | | | Other | 2/8/2010 | AFI | | 2010 RSU |
| | | | Other | 2/14/2011 | AFI | | 2011 RSU |
| | | | Other | 2/8/2010 | AFI | | 2010 RSU |
| | | | Other | 2/14/2011 | AFI | | 2011 RSU |
| | | | Other | 2/8/2010 | AFI | | 2010 RSU |
| | | | Other | 2/8/2010 | AFI | | 2010 RSU |
| | | | Other | 2/14/2011 | AFI | | 2011 RSU |
| | | | Other | 2/14/2011 | AFI | | 2011 RSU |
| | | | Other | 2/14/2011 | AFI | | 2011 RSU |
| | | | Other | 2/6/2012 | AFI | | 2012 RSU |
| | | | Other | 2/8/2010 | AFI | | 2010 RSU |
| | | | Other | 2/8/2010 | AFI | | 2010 RSU |
| | | | Other | 2/14/2011 | AFI | | 2011 RSU |
| | | | Other | 2/6/2012 | AFI | | 2012 RSU |
| | | | Other | 2/8/2010 | AFI | | 2010 RSU |
| | | | Other | 2/14/2011 | AFI | | 2011 RSU |
| | | | Other | 2/8/2010 | AFI | | 2010 RSU |
| | | | Other | 2/6/2012 | AFI | | 2012 RSU |
| | | | Other | 2/14/2011 | AFI | | 2011 RSU |
| | | | Other | 2/6/2012 | AFI | | 2012 RSU |
| | | | Other | 2/6/2012 | AFI | | 2012 RSU |
| | | | | | Subtotal | 1,111,133 | |

TOTAL Supplemental Pre-Petition Compensation    2,272,735

Revised Grand Total Compensation    57,859,971

**Highly Confidential**
**FINAL VERSION**

## Schedule 2

### Estimated Payments To Be Made by AFI (and Reimbursed by the Debtors) on Account of Postpetition Compensation for Debtor Employees

| Last | First | Designation | Grant Date | Employer | Value | Award |
|------|-------|-------------|------------|----------|-------|-------|
| | | T25 | 5/25/2012 - 12/31/2012 | ResCap | | Base 2012 DSU |
| | | T25 | TBD | ResCap | | Other 2012 DSU |
| | | T25 | 5/25/2012 - 12/31/2012 | ResCap | | Base 2012 DSU |
| | | T25 | TBD | ResCap | | Other 2012 DSU |
| | | T25 | 5/25/2012 - 12/31/2012 | ResCap | | Base 2012 DSU |
| | | T25 | TBD | ResCap | | Other 2012 DSU |
| | | | Total Post Petition | | 8,918,975 | |

SUBJECT TO FRE 408
Highly Confidential
FINAL

## Exhibit 1

<u>Debtor Releases</u>. On and as of the entry of this Order (the "**Effective Date**"), for the good and valuable consideration provided by AFI, and each of its shareholders, subsidiaries (exclusive of the Debtors), affiliates, business units, predecessors and successors, joint ventures, employee benefit plans, members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates, representatives, and assigns of each of the foregoing (collectively, the "**Released Parties**"), each of the Debtors shall provide a full discharge and release to the Released Parties and their respective properties from any and all Claims (as defined in section 101(5) of the Bankruptcy Code), causes of action, demands, suits, liabilities, damages, controversies, judgments, remedies, rights of set-off, indemnity claims, counterclaims, and cross-claims (including those of the Debtors, and/or the bankruptcy estate of any Debtor created pursuant to sections 301 and 541 of the Bankruptcy Code in these chapter 11 cases), whether known or unknown, liquidated or unliquidated, fixed or contingent, whether for tort or fraud, whether held in a personal or representative capacity, that are or may be pending on the Effective Date or instituted after the Effective Date against any entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of this Order, arising from the employment by AFI of any of the Qualifying Debtor Employees, past or present, or arising from payments owed to Qualifying Debtor Employees on account of employment by AFI, ResCap and any of its subsidiaries and affiliates, or the Debtors, including those that any of the Debtors would have been legally entitled to assert against a Released Party in their own right (whether individually or collectively) or that any holder of a Claim or Equity Security (as defined in section 101(16) of the Bankruptcy Code)) of a Debtor, or other entity would have been legally entitled to assert on behalf of any of the Debtors or any of their estates, to the fullest extent of the law; <u>provided</u>, <u>however</u>, for the purposes of clarity and for the avoidance of any doubt, this Debtor Release shall not release, waive or provide a defense against (i) any rights that a Qualifying Debtor Employee may have under Article VIII of the Ally Financial Inc. Articles of Incorporation, dated as of March 25, 2011; and/or (ii) any claims or causes of action that are within the scope of the investigation of the Examiner appointed by the Bankruptcy Court pursuant to the *Order Approving the Appointment of Arthur J. Gonzalez, Esq. as Examiner* (ECF No. 674), the scope of which investigation is set forth in the *Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner* (ECF No. 925).

## Exhibit 2

**TO BE INSERTED**