**MORRISON | FOERSTER**

755 PAGE MILL ROAD
PALO ALTO
CALIFORNIA 94304-1018

TELEPHONE: 650.813.5600
FACSIMILE: 650.494.0792

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

November 4, 2012

Writer's Direct Contact
650.813.5866
DRains@mofo.com

The Honorable Martin Glenn
United States Bankruptcy Court
One Bowling Green
New York, New York 10004

Re:   In re Residential Capital, LLC, et al. (Case No. 12-12020 MG)

Dear Judge Glenn:

The Debtors write in response to the letter sent to the Court late Friday by counsel for the Official Committee of Unsecured Creditors (the "Committee"). That letter asks the Court to resolve what the Committee calls "two significant discovery disputes."

The Committee's description of the first dispute — concerning the Debtors' "claw back" request — is seriously misleading in several ways. For example, the Committee says the dispute concerns 367 documents. But, as the Committee knows, AFI has already agreed to shorten the list of documents subject to the request. The current request is for the return of 109 documents. Moreover, the Committee informed us on Friday morning that it does not dispute the validity of the privilege assertion with respect to 103 documents. By our count, the claw back dispute now involves only six documents, not 367 documents.

This accords with the view taken consistently by the Debtors. From the beginning, while AFI demanded the return of all documents, and the Committee refused to return any documents, the Debtors have occupied a middle position. The Debtors understand the attorney-client privilege, and common interest doctrine, to protect confidential communications concerning the Debtors' and AFI's litigation against third parties. That is because, as against third-parties, the Debtors and AFI share common interests, as co-defendants, in assessing their risks and litigation exposure, and in coordinating their common defense strategy. By contrast, the Debtors believe that communications between the Debtors and AFI concerning the negotiation of the RMBS settlement are not protected by the attorney-client privilege or common interest doctrine. That is because, in this settlement context, the Debtors and AFI did not share common legal interests.

For this reason, the Debtors informed the Committee and AFI earlier this week that, with regard to the 367 documents identified in the original claw back letter, the Debtors believed

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Two

that 109 documents were properly subject to privilege, while the remaining 258 documents were not covered by privilege. (The Debtors' assessment of the 367 documents is attached as Exhibit A.)

In subsequent conversations, the Debtors were informed that both the Committee and AFI largely agree with the Debtors' position. AFI sent a letter containing a dramatically shortened claw back list, and the documents dropped from the original list are the same documents identified by the Debtors as not subject to privilege. AFI, in essence, adopted the position taken by the Debtors. For its part, the Committee said, on a telephone call on Friday, that it is prepared to drop its efforts to pierce the privilege with respect to 103 of the 109 documents identified by the Debtors as properly subject to privilege.

None of these facts appears in the Committee's letter. The Committee instead has asked for production of 367 documents — as though none of the communications described above ever happened.

The Committee's letter also misstates the nature of its obligations under its confidentiality agreement with the Debtors. (The confidentiality agreement is attached as Exhibit B.) It argues there is no "legitimate" basis for the claw back request, as though it could claim, for itself, the right to determine whether a claw back request is legitimate or not. But the confidentiality agreement does not grant the Committee that power. The Committee's obligation to return or destroy documents that are the subject of a claw back request is absolute and automatic. The Committee's only proper course of action is to comply with the claw back request and then seek production of the withheld documents by motion.

Accordingly, the Committee's letter is improper under the express terms of the confidentiality agreement, and its refusal to return or destroy documents upon request is a breach of the agreement. The letter also compounds the breach, because, in it, the Committee quotes from several privileged documents. The Committee also posted the documents on line and shared them with third parties. This conduct directly violates the procedures set out in the confidentiality agreement for the use and protection of privileged documents.

The Committee's description of the second dispute — concerning documents listed on the Debtors' privilege log — is also seriously misleading. For example, the Committee's letter asserts that its "challenges to these assertions of privilege" have been the subject of "multiple meet-and-confer sessions among the parties." But the Committee has never mentioned any of these documents in any meet-and-confer session with the Debtors and it never has stated any basis for challenging the assertion of privilege.

At the last chambers conference with the Court on discovery matters, the Committee challenged the adequacy of the Debtors' privilege log, arguing that the "description" entries

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Three

on the log were too vague. The Court suggested a meeting at which the Committee's lawyers could go through the log with Debtors' counsel and seek additional descriptions of the withheld documents. The meeting was held the following day. Lawyers for the Committee spent five hours with Debtors' counsel asking for additional descriptions of approximately 400 documents. The Debtors provided additional information about every document, and also provided a supplemental privilege log recording the additional information. The Committee acknowledged, at the time, that the Debtors had provided adequate answers to every question it posed.

At no point did the Committee say it believed the assertion of privilege was incorrect as to any document. Nor did the Committee say it had not received enough information about the documents. To the contrary — the Debtors offered promptly to respond to any additional information requests, but the Committee never asked for more information.

Now, weeks later, the Committee has demanded production of hundreds of documents without ever previously identifying any basis for challenging the Debtors' assertion of privilege.

For these reasons, addressed more fully below, the Debtors respectfully request that:

- The Committee be compelled immediately to comply with its obligations under the confidentiality agreement by returning or destroying the documents subject to the claw back request;

- The Committee be compelled immediately to withdraw its disclosures of privileged documents and take all steps necessary to protect those documents from further disclosure;

- The Committee be compelled to comply with its meet-and-confer obligations regarding its new request for production of privileged documents, and withdraw its current request for the production of privileged documents until it has complied with its meet-and-confer obligations.

I.    **The Committee Has Breached Its Confidentiality Agreement By Refusing to Honor the Claw Back Request.**

On June 18, 2012, the Debtors entered into a Confidentiality Agreement with the Committee. Many other parties have similar agreements with the Debtors.

On October 17, 2012, the Debtors sent a claw back letter to the Committee. The letter advised these parties that the Debtors had received a letter from AFI claiming that a number of documents previously produced by the Debtors had been inadvertently or mistakenly

**MORRISON | FOERSTER**

The Honorable Martin Glenn
November 4, 2012
Page Four

produced. The Debtors' claw back letter enclosed the letter received from AFI and also enclosed a list of documents that were the subject of the claw back request. The Debtors' claw back letter, as required by the Confidentiality Agreement, informed the Committee and others that the production of the documents resulted from "errors" and was inadvertent or mistaken.

The Debtors' "claw back" request triggered an automatic obligation on the part of the Committee to "use all commercially reasonable efforts to return or destroy the" clawed back documents. (Exh. B, ¶ 22.) Paragraph 22 gives a party that has "inadvertently or mistakenly" produced privileged documents the right to make a "claw back" request. And it requires the immediate return or destruction of any document as to which a written claw back request has been made. It provides:

> If a Disclosing Party <u>inadvertently or mistakenly</u> produces information that is protected or prohibited from disclosure, <u>upon written request</u> by the Disclosing Party after the discovery of such inadvertent or mistaken production, the Receiving Party <u>shall use all commercially reasonable efforts to return or destroy the information</u> for which a <u>claim of inadvertent production</u> is made and all copies of it, including any work product containing, identifying, or referencing such information, within five (5) business days of such request, and the Receiving Party shall not use such information for any purpose other than in connection with a motion to compel production of the information. <u>If the Receiving Party returns such information, it may then move the Court for an order compelling production</u> of the information, but that motion shall not assert as a ground for entering such an order the fact or circumstance of the inadvertent production of the information.

(*Id*, ¶ 22.) (emphasis supplied.)

Under Paragraph 22, the Committee had an immediate and automatic obligation to "use all commercially reasonable efforts to return or destroy the information for which a claim of inadvertent production is made." All that is required to trigger the obligation to return or destroy documents, under paragraph 22, is a "written request" asserting a "claim of inadvertent production." Nothing else is required, and the Committee has no discretion in the matter.

Note that the Committee has no power, under this provision, to challenge the merits of the "written request" containing a "claim of inadvertent production." It is not empowered to argue that the claim of inadvertent production was, as its letter argues, not "legitimate," or

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Five

that the production was not truly "inadvertent." Its obligation to "return or destroy" documents arises as soon as it receives a "written request" containing a "claim of inadvertent production."

Moreover, paragraph 22 precludes the Committee from moving to compel production of the clawed back documents until after it "returns such information." In other words, compliance with a claw back request is an essential contractual precondition to the right to "move the Court for an order compelling production" of the documents.

The Committee's only proper and acceptable course of conduct, under the Confidentiality Agreement, is to return or destroy the requested documents and then, after it has done so, make a motion to compel production of the requested documents. But that is not what the Committee did. The Committee has, instead, taken it upon itself to adjudicate the merits of the claw back request and, on that basis, to conclude it no longer needs to meet its contractual commitments. That is not what the confidentiality agreement requires.

The Debtors therefore request that the Committee be compelled immediately to comply with its obligations under the confidentiality agreement by returning or destroying the documents subject to the claw back request.

II.     **The Debtors Did Not Waive Any Privilege With Respect to the Documents Sought By the Claw Back Request.**

The Committee seeks to justify its conduct by asserting that the Debtors have "clearly waived" the protections of the attorney-client privilege, work product doctrine, and common interest doctrine with respect to the documents that are the subject of the claw back request. This argument is wrong for four reasons.

*First*, the Committee's waiver argument is not an excuse for breaching the confidentiality agreement. As noted above, the Committee's contractual obligation is to return or destroy the clawed back documents once a "written request" for their return has been made. Nothing in the agreement allows the Committee to excuse its breach by raising a waiver argument.

*Second*, the Committee offers no evidence of any waiver and there is none. A waiver occurs when a party knowingly relinquishes its rights, and evidence of such a waiver must be clear and explicit. *See United States v. Defonte,* 441 F.3d 92, 94 (2d Cir. 2006) (inmate had not "knowingly waive[d]" attorney-client privilege where she had not consented to the removal of privileged documents from her cell); *cf.* Fed. R. Evid. 502(a)(1) ("When [a] disclosure . . . waives the attorney-client privilege or work product protection, the waiver extents to an undisclosed communication or information . . . only if . . . the waiver is intentional"). The Debtors have never said, in words or in substance, that they waive the protections of the

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Six

attorney-client privilege, work product doctrine, or common interest doctrine with respect to the requested documents.

The Committee claims that an email from Debtors' counsel constitutes a waiver, but even a quick review of the email shows it is no such thing. The email expressly states that the Debtors would produce "the settlement documents you requested with the exception only of those documents protected by attorney/client privilege and work product." (Exhibit C.) The email then goes on to say that the Debtors are not "withholding settlement negotiation documents on the basis of a common interest privilege." These are true statements, and they do not constitute a waiver. They are, in fact, a clear summary of the position the Debtors have taken from the beginning — communications between AFI and the Debtors regarding the negotiation of the RMBS settlement are not covered by privilege, because AFI and the Debtors did not share a common legal interest in that context. But the Committee's letter doesn't limit the Committee's request to just settlement negotiations — the Committee seeks all communications between AFI and the Debtors, even on topics as to which they share a common legal interest. The email cited by the Committee does not address these privileged documents, and does not waive any privilege applicable to them.

*Third*, the Committee argues that the mere fact of production constitutes a waiver. But the confidentiality agreement clearly states that the fact of production is not evidence of any waiver. Indeed, the Committee is barred from even making this argument: any motion to compel production of clawed back documents "shall not assert as a ground for entering such an order the fact or circumstance of the inadvertent production of the information." (Exh. B, ¶ 22.)

Moreover, the Committee's claim that the production of documents could not have been "inadvertent" tellingly omits the other term of the confidentiality agreement. The agreement permits the Debtors to claw back documents that have been "inadvertently or mistakenly" produced. The Debtors' and AFI's position is that the Debtors "mistakenly" produced documents as to which AFI claims a common interest privilege. The Debtors are contractually obligated, under a joint defense agreement with AFI, not to disclose documents as to which AFI asserts a common interest privilege, even if the Debtors disagree with AFI's privilege position. It was a mistake for the Debtors to produce the documents without first giving AFI the opportunity to assert and litigate its privilege position.

And *fourth*, the Committee's waiver argument ignores AFI's rights. The Debtors had no ability to waive the protection of the common interest privilege with regard to documents as to which Ally also asserts privilege. One party that shares a common interest privilege cannot waive it without the consent of all parties that share the privilege. *See, e.g., In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 264 (Bankr. S.D.N.Y. 2005) ("Once established, the [common interest] privilege cannot be waived without the consent of all of the parties that share it."); In re *Quigley Co.*, 2009 Bankr. LEXIS 1352 (Bankr. S.D.N.Y. Apr. 24, 2009)

**MORRISON | FOERSTER**

The Honorable Martin Glenn
November 4, 2012
Page Seven

(same); *In re Teleglobe Communications Corp.*, 493 F.3d 345, 363 (3d Cir. 2007) ("[W]aiving the joint-client privilege requires consent of all joint clients.")

The Committee's argument that the Debtors somehow waived the protections of the attorney-client privilege, work product doctrine, and/or common interest doctrine, is without any basis and is contrary to law. The Court should therefore reject the Committee's waiver argument.

### III. The Committee Failed to Comply With Its Meet-and-Confer Obligations Regarding the Documents Referenced on Pages 6 through 8 of Its Letter.

In what has become a disturbing trend, the Committee has dropped another "Friday Night Surprise" on the Debtors by raising entirely new discovery disputes on the eve of a scheduled hearing. The Committee has done the same thing in advance of several previous hearings.

This time, the Committee has requested the production of several hundred privileged documents without ever holding any meet-and-confer session about the documents and without ever informing the Debtors of the basis for its challenge to the assertion of privilege. The Committee's letter claims, falsely, that its "challenges to these assertions of privilege" have been the subject of "multiple meet-and-confer sessions among the parties." But the Committee has never mentioned any of these documents in any meet-and-confer session with the Debtors. Nor has the Committee ever previously asserted any ground for concluding the assertion of privilege was improper as to any of the documents.

This is "shoot, ready, aim" litigation. The Committee seeks to force *in camera* review of documents without ever permitting the Debtors to defend their assertions of privilege. The Committee should be compelled to comply with its meet-and-confer obligations regarding its new request for production of privileged documents, and it should be ordered to withdraw its current request for the production of privileged documents until it has complied with its meet-and-confer obligations.

### IV. The Committee Has Failed to Overcome the Assertion of Privilege With Respect to the Documents Referenced on Pages 6 Though 8 of Its Letter.

The Committee argues, without any motion or opportunity for briefing, that the Debtors' privileged communications should be produced "under the sword-shield doctrine and/or the fiduciary exception to the attorney-client privilege." Neither doctrine applies here.[1]

---

[1] The Committee also raises for the first time an argument that the Debtors must produce privilege communications with attorney Jeffrey A. Lipps because he will testify as an expert witness. It relies only on *Herrick Co., Inc. v. Vetta Sports, Inc.*, No. 94 Civ. 0905 (RPP), 1998 U.S. Dist. LEXIS 14544, 1998 WL 637468 (S.D.N.Y. Sept. 17, 1998). *Herrick*

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Eight

The Debtors' motion for approval of the RMBS settlement does not put attorney advice regarding those agreements at issue or waive the privilege. As explained in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011):

> It is not necessary for the Debtors to waive the attorney/client privilege by presenting testimony regarding what counsel felt was the likelihood they would win on the claims being settled. . . . It is sufficient to present the Court with legal positions asserted by each side and the facts relevant to those issues. The Court itself can evaluate the likelihood of the parties' prevailing in that litigation to determine whether the settlement is reasonable.

*See also Deutsche Bank Trust Co. v. Tri-Links Investment Trust*, 837 N.Y.S. 2d 15, 21-25 (App. Div. 2007) (assertion of reasonableness of amounts expended to defend and settle action did not waive attorney-client privilege).

Nor will presentation of evidence that the Debtors sought the advice of counsel waive the privilege. A party does not waive the privilege merely by presenting evidence that it sought the advice of counsel, but only by affirmatively asserting that its actions were reasonable *because* it relied on an opinion of counsel. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, et al.*, No. 04 Civ. 10014, 2009 U.S. Dist. LEXIS 89183 (S.D.N.Y. Sept. 28, 2009). In *Aristocrat*, the plaintiff argued that defendant Bondholders should not be able to state that they sought the advice of counsel regarding matters the reasonableness of which was at issue without waiving the attorney-client privilege. The court rejected that argument, holding that "merely stating that individual Bondholders sought advice of counsel on a particular topic does not place the actual content of the advice at issue or otherwise waive the privilege." *Id.* at *45.

Nor, as the Committee suggests, did the Debtors waive the privilege by answering "Yes" at a prior hearing to the Court's impromptu question, "Are the debtors' directors relying on advice of counsel supporting their approval of the RMBS settlement?" Courts have regularly rejected waiver claims based on similar statements in the course of litigation that do not represent a formally asserted claim or defense. In *Miteva v. Third Point Management Co., L.L.C.*, 218 F.R.D. 397-98 (S.D.N.Y. 2003) (rejecting waiver claim based on deposition testimony of defendant's principal and sole owner that defendant "intended to rely on that advice of counsel as a defense in this action"); *Deutsche Bank*, 837 N.Y.S. 2d at 25 (rejecting argument that plaintiff waived privilege through deposition testimony of plaintiff's managing

---

was decided before the recent amendments to Federal Rule of Civil Procedure 26(b)(4), which strictly circumscribe discovery of communications with a testifying expert.

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Nine

director that he "rel[ied] on the advice of counsel in determining whether or not to approve . . . the settlement of the [underlying] action"). The court noted in *Deutsche Bank* that the plaintiff had not "stated an intention to use the advice of counsel to prove the reasonableness of the [underlying] settlement, and it now explicitly disclaims any such intention." *Id.* at 27. The same is true here.

Nor does the fiduciary exception apply here. The mere existence of a fiduciary relationship is not enough to invoke the exception. The party seeking discovery must also show there is good cause to invade the privilege. *See, e.g., Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 424 (S.D.N.Y. 2006) (citing *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir.1970).) Courts in this district have identified four factors to consider in determining whether there is good cause: (1) the discovering party's stake in the fiduciary relationship; (2) the apparent merit of the discovering party's claim; (3) the need of the discovering party for the information; and (4) the nature of the communication itself. *Official Comm. of Asbestos Claimants of G-I Holding*, 342 B.R. at 424 (quoting *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 U.S. Dist. LEXIS 18215, at *13 (S.D.N.Y. Dec. 23, 1993)). "The apparent necessity of the information and its availability from other sources is considered the most important factor and is stressed by courts when undertaking the *Garner* analysis." *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 71, at *17 (S.D.N.Y. Jan. 3, 2003) (citations omitted).

The Committee has not even attempted to demonstrate that it satisfies the relevant factors here. Nor could it. The Committee has demonstrated no substantial need for the privileged communications. This is not a case where the Committee needs privileged communications to prove an element of their claim or to rebut an affirmative defense. *See Official Comm. of Asbestos Claimants of G-I Holding*, 342 B.R. at 425. As noted above, assessment of the reasonableness of the settlement agreements can be evaluated without the need for privileged communications. *See In re Washington Mutual*, 424 B.R. at 330 ("It is not necessary for the Debtors to waive the attorney/client privilege by presenting testimony regarding what counsel felt was the likelihood they would win on the claims being settled. . . . It is sufficient to present the Court with legal positions asserted by each side and the facts relevant to those issues.")

Finally, a word about the Committee's descriptions of the documents it seeks. The Committee's letter sets out ten bullet points, each relating to a category of withheld documents. For most of the categories, the Committee states that the documents are "concerning" or "regarding" "the RMBS Settlement." This conclusory statement, applied indiscriminately to eight of the ten categories, is largely false. The withheld documents do not, in the main, concern or relate to the RMBS settlement. Instead, they largely concern unrelated litigation, general issues regarding representation and warranty liability or litigation, or other aspects of the Debtors' bankruptcy.

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Ten

The proof of this can be found in the Debtors' privilege logs, as updated after the Debtor's lengthy meeting with counsel for the Committee. The logs describe most of the withheld documents as relating to a variety of topics other than the RMBS settlement negotiations, including PLS litigation generally, SEC filings, settlement negotiations with various regulators, other bankruptcy filings, and the like. The Committee has ignored the Debtors' privilege logs, and ignored the information it obtained in its meeting regarding the logs, in asserting falsely that the requested documents are all "concerning" or "relating" to the RMBS settlement. The Committee's letter thus offers no basis upon which to order the production of privileged documents.

The Committee has not offered any valid argument for lifting the protection of the attorney-client privilege, work product doctrine, or common interest doctrine with respect to the documents identified on pages 6 through 8 of its letter. Its request for production of these documents, without allowing adequate time for briefing, should be rejected.

Respectfully submitted,

*[signature]*

Darryl P. Rains