# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Patrick M. Bryan
To Call Writer Directly:                                   (202) 879-5000                                   Facsimile:
(202) 879-5285                                                                                              (202) 879-5200
patrick.bryan@kirkland.com                           www.kirkland.com

November 4, 2012

**<u>Via E-mail</u>**

Honorable Martin Glenn
United States Bankruptcy Court
Alexander Hamilton Custom House
New York, NY 10004

Re:    *In re Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y.)

Dear Judge Glenn:

I write on behalf of Ally Financial Inc. ("Ally"), to respond to the November 2, 2012 letters submitted by MBIA Insurance Corporation ("MBIA") and Financial Guaranty Insurance Company ("FGIC"), both members of the Committee.  MBIA and FGIC misstate the record and the facts underlying the privilege issues in this case, and raise purported issues that are grounded solely in factual error.  Ally submits this letter to set the record straight on the actual scope of the claw back request and privileges at issue before the Court.

### A.  FGIC and MBIA Have Refused To Abide By Terms of The Court's Protective Order Concerning Claw Back of Inadvertently Produced Documents.

MBIA and FGIC are members of the Committee.  They, like the Committee, have also refused to abide by the Debtors' claw-back request.  While MBIA simply adopted the Committee's purported justification for failure to comply with the Uniform Protective Order, FGIC baldly claimed that there could be no common legal interest among ResCap and Ally.  For the reasons stated in Ally's separate response to the Committee's November 2, 2012 letter, MBIA's and FGIC's refusal to abide by the Uniform Protective Order is without merit.[1]

---

[1] Both FGIC and MBIA claim that the Debtors' claw back request was somehow "on the eve of the state of depositions" and will delay proceedings.  This claim is baseless.  Ally and the Debtors made their claw back requests over three weeks ago, promptly after discovery of the inadvertently disclosed documents.  As of November 2, 2012, not a single deposition has been taken by the Committee, MBIA or FGIC.  Further, as Ally describes in its letter to the Court in response to the Committee, the Uniform Protective Order in this case places the burden on the *receiving parties* to seek an order to compel the re-production of any inadvertently produced documents.  (*See* Uniform Protective Order, Docket #1223, ¶ 26.)  Any delay has therefore been triggered by the receiving parties' recalcitrance, not from any actions taken by Ally or the Debtors.

Chicago        Hong Kong        London        Los Angeles        Munich        New York        Palo Alto        San Francisco        Shanghai

# KIRKLAND & ELLIS LLP

Hon. Martin Glenn
November 4, 2012
Page 2

Accordingly, the Court should order FGIC and MBIA to honor the claw-back request in accord with the Uniform Protective Order.

### B. FGIC And MBIA Mischaracterize The Bases For The Common Interest Privilege Asserted.

FGIC and MBIA are incorrect in their characterization of the privileges asserted by Ally and the Debtors.  As described in Ally's separate response to the Committee's November 2, 2012 letter, Ally and the Debtors have overlapping but separate privileges in this matter, including: (1) a co-client privilege with respect to the Ally Legal Staff's pre-Petition representation of ResCap (an indirect subsidiary of Ally) pursuant to the parties' operating agreement; and (2) Ally and the Debtors' pre- and post-Petition joint defense and common-interest privileges relating to ongoing residential mortgage-backed securities ("RMBS") claims asserted against both Ally and ResCap.

Ally Legal Staff provided legal services and advice to ResCap, an indirect subsidiary of Ally, pursuant to the parties' operating agreement.   Specifically, Ally's Chief Counsel - Litigation, Timothy Devine, was responsible for all of Ally's and ResCap's litigation dockets, including the mortgage-backed securities litigation, through April 2012, and the mortgage litigation group at ResCap reported directly to Mr. Devine.  Mr. Devine and others within the Ally Legal Staff thus provided legal advice directly to ResCap, and Ally Legal Staff jointly represented ResCap and Ally in connection with residential mortgage-backed securities ("RMBS") litigation, as did Carpenter Lipps & Leland and other outside counsel.  A number of ResCap's Legal Staff members outside of the mortgage litigation group also supported Mr. Devine on RMBS litigation matters.  Thus, it is hardly surprising that Mr. Devine was a participant in analyses of the claims underlying the Debtors' proposed RMBS Trust Settlements as he was with other RMBS-related litigations.

MBIA, for its part, focuses on the Debtors' responses to interrogatories made four months after the Debtors' chapter 11 filing and well after Timothy Devine's joint-representation of ResCap was severed.  MBIA contends that the Debtors' description of Mr. Devine as "from Ally Financial, Inc." in their interrogatory responses regarding which persons participated in the evaluation, analysis, negotiation and approval of the RMBS Settlement, and the fact that the Debtors did not list Mr. Devine as participating in discussions with the Steering Committee Group "on behalf of Debtors" is somehow inconsistent with the notion that Mr. Devine jointly represented both Ally and ResCap in RMBS-related litigation and claims.  But this assertion plainly ignores the factual context that Mr. Devine jointly represented Ally and ResCap in numerous *RMBS litigation* matters prior to the Petition Date, but that this joint-representation transitioned and ended shortly before the Petition Date.  It also ignores the fact that Ally and

# KIRKLAND & ELLIS LLP

Hon. Martin Glenn
November 4, 2012
Page 3


ResCap's joint-defense and common-interests continued thereafter, as memorialized in the joint defense agreement between the two parties.

There is nothing unusual or incongruous about this transition. Indeed, it reflects the obvious and necessary change in the corporate relationship between Ally and ResCap as the latter prepared the final stages its chapter 11 filing. And although the Ally Legal Staff's representation of ResCap came to an end, Ally and the Debtors continue to share a common and joint-defense interest in the litigation and resolution of the RMBS claims pending against ResCap and Ally.[2]

### C. FGIC Misrepresents The Joint Defense Common Interest And Information Sharing Agreement Among Ally and ResCap As Well As The Parties Statements To The Court.

FGIC's partial quotation of the Ally-ResCap Joint Defense Agreement and characterization of that agreement as "hidden," "undisclosed," "unauthorized," and "for the benefit of Ally" is misleading and factually inaccurate. To begin with, FGIC's assertion that the parties' joint defense agreement was entered into solely for the benefit of Ally is not grounded in reality. FGIC's selective quotation from that agreement ignores the fact that the agreement spells out the common-interest between the parties on a series of topics including "coordinating their defenses" of "various pending lawsuits," "collaborating in responding to" "investigations by the Securities and Exchange Commission, the Department of Justice and the Special Inspector General for the Troubled Asset Relief Program, and other state and federal governmental agencies," the anticipation of "discovery and/or adversary proceedings [that] may arise in the Bankruptcy which impact both of them" and anticipating "continuing to work cooperatively with respect to legal issues related to ResCap's restructuring in bankruptcy." (*See* June 5, 2012 Joint Defense-Common Interest and Information Sharing Agreement ("JDA") at 1 (attached as Exhibit B to Ally's letter in response to the Committee).) When read as whole, and in context, the JDA clearly represents an effort to protect the common-interests of the two parties.[3]

---

[2] To be clear, *none* of the documents referenced by FGIC on page three and four of its letter to the Court and *none* of the documents included in FGIC's Exhibit B are subject to Ally's revised claw back request. As described in Ally's letter in response to the Committee, after conferring with counsel for the Debtors, and in the hopes of resolving the dispute with the Committee and other Receiving Parties, counsel for Ally re-examined and amended its claw-back request, withdrawing its claw-back request with respect to many documents.

[3] FGIC's wholly unsupported assertion that a joint-defense agreement memorializing the ongoing common-interest and joint-defense relationship of a corporate parent and subsidiary related to ongoing legal claims implicating both parties is outside the ordinary course of business, and therefore void, should be rejected on its face.

# KIRKLAND & ELLIS LLP

Hon. Martin Glenn
November 4, 2012
Page 4


FGIC's insinuations concerning Ally's and the Debtor's representations to the Court about the RMBS Settlement Agreement negotiations similarly miss the mark. Indeed, Ally's counsel *immediately* informed the court that the first person from Ally who should be deposed on the RMBS Settlement was Timothy Devine. (*See* Sept. 19, 2012 Hr'g Tr. at 45:7-9 ("First you asked, who from AFI, if anyone, should be deposed? It would be Mr. Timothy Devine, chief counsel of litigation for Ally; that's one."). Counsel for Ally also quite correctly indicated that both Mr. Devine and an attorney from Kirkland & Ellis participated in the drafting negotiations concerning the final RMBS Settlement Agreement, but that Morrison and Foerster and the Debtors were the primary drivers with respect to hammering out the final language of the agreement. (*See id.* at 45:24 - 46:4).[4]

In sum, FGIC and MBIA misstate the record and the facts underlying the privilege issues in this case. Their submissions are grounded solely in factual error and should be set aside.


Respectfully submitted,

Patrick M. Bryan

cc:    Darryl P. Rains
       Anthony Princi
       Gary S. Lee
       Phillip S. Kaufman
       Jonathan Hoff
       Howard Sidman

---

[4] FGIC also claims that Ally or the Debtors somehow denied FGIC the "types of information that would be required for a thorough investigation." This too is incorrect. Ally has provided the information that has been requested of it—by the Committee. FGIC, however, has never requested any of the information it describes on page five of its letter, and accordingly cannot now complain that it has not received what it has not requested.