# KRAMER LEVIN NAFTALIS & FRANKEL LLP

PHILIP S. KAUFMAN
PARTNER
PHONE 212-715-9381
FAX 212-715-8381
PKAUFMAN@KRAMERLEVIN.COM

November 2, 2012

Honorable Martin Glenn
United States Bankruptcy Court
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

      Re:   *In re Residential Capital, LLC, et al.,*
              Case No. 12-12020 (MG)

Dear Judge Glenn:

      On behalf of the Official Committee of Unsecured Creditors (the "Committee"), we write to address two significant discovery disputes requiring resolution by the Court. First, the Debtors have now attempted – at the insistence of Ally Financial, Inc. ("AFI") – to claw back 367 documents produced to the Committee more than a month ago, citing AFI's (but not the Debtors') position that these documents are protected by a common interest privilege and asserting that the documents were produced "inadvertent[ly]." Second, both the Debtors and AFI have claimed privilege with respect to numerous additional documents that the Committee believes cannot properly be withheld from production. For the reasons set forth below, we submit that the Debtors' claw-back demand should be denied and that the Debtors and AFI should be ordered to produce all of the categories of documents identified in Part B hereof.[1]

    A.    <u>The Debtors' Claw-back Demand is Factually and Legally Insupportable.</u>

      By letter dated October 17, 2012, the Debtors suddenly demanded that the Committee (and other receiving parties) destroy 367 settlement negotiation documents supposedly produced "inadvertent[ly]" over the past two months. Although the Debtors themselves had not asserted a common interest privilege with respect to any of these documents, their letter stated that the claw-back demand was being made at the behest of AFI, which claimed that the documents are covered by a June 5, 2012 Joint Defense Agreement with the Debtors. No legitimate basis exists for this claw-back demand.[2]

---

[1] The Committee understands that other parties in interest share the same concerns raised in this letter and will likely join in the Committee's requests.
[2] The Joint Defense Agreement itself – signed after the RMBS Settlement Agreement — "cannot create privilege where none exists." *Velo Holdings Inc. v. Paymentech LLC,* 12-1564 (MG) (Docket # 28) (May 22, 2012).

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
Honorable Martin Glenn
November 2, 2012
Page 2

To begin with, there was nothing "inadvertent" about the Debtors' production of the subject documents. In a September 12, 2012 email to the Committee, the Debtors' counsel expressly represented that the Debtors would *not* be withholding any settlement negotiation documents on the basis of a common interest privilege and would instead be producing all such requested documents "with the exception only of those protected by attorney/client privilege and work product." On September 15, 2012, the Debtors' counsel made the same written representation to FGIC, adding that "[t]he documents produced include communications with Ally." And at the October 10, 2012 conference with the Court, the Debtors' counsel reconfirmed that no common interest privilege was being asserted by the Debtors with respect to any settlement negotiation documents. The production of the 367 documents in question was thus not inadvertent but entirely deliberate, and clearly waived any common interest privilege (and, indeed, any other privilege) that might have covered them.[3]

Moreover, for these documents even to be subject to a common interest privilege, they must first be protected by an underlying privilege. *Velo Holdings Inc. v. Paymentech, LLC*, 473 B.R. 509, 511 (S.D.N.Y. 2012). In that event, "(1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought must have been designed to further that interest." *Id.*

The Debtors and AFI cannot meet this burden. AFI contends that the documents reflect attorney-client communications or attorney work product because its Chief Litigation Counsel, Timothy Devine, as well as other members of AFI's in-house legal department, were representing both AFI and *the Debtors* during the RMBS settlement negotiations. But this curious position —aside from being inconsistent with prior representations to the Court[4] — cannot support a claim of common interest, since "[t]he doctrine is limited to situations where multiple parties are represented by separate counsel that share a common interest about a legal matter." *Velo Holdings*, 473 B.R. at 511. *See also In re Teleglobe Communications Corp.*, 493 F.3d 345, 365 (3d Cir. 2007) ("[T]he privilege only applies when clients are represented by separate counsel. Thus, it is largely inapplicable to disputes . . . that revolve around corporate family members' use of common attorneys (namely, centralized in-house counsel).").

---

[3] Because the production was intentional, the provisions of the Debtors' Confidentiality Agreement with the Committee concerning inadvertent disclosure, set forth in paragraph 22 of that agreement, are simply inapplicable. Moreover, while AFI has cited to the Court's August 20, 2012 Protective Order as a basis for requiring destruction of the documents, the Protective Order only governs the Debtors' documents that were produced to the Examiner, which these were not.

[4] At the September 19, 2012 hearing, when the Court asked "who from [AFI], if anyone, should be deposed," AFI's counsel identified "Timothy Devine, chief counsel of litigation for Ally." Sept. 19, 2012 Hr'g Tr. 45:7-9. Yet when the Court asked the Debtors' counsel who was involved in settlement negotiations on behalf of the Debtors, Mr. Devine was not among the various individuals identified. *Id.* at 39:2-41:11.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
Honorable Martin Glenn
November 2, 2012
Page 3

In fact, if Mr. Devine or other AFI attorneys were acting as the Debtors' counsel during settlement negotiations, then the Debtors — as the client — would be entitled to waive the privilege concerning communications with their attorneys. The Debtors' production of these communications to the Committee effected just such a waiver. *See In re Residential Capital, LLC*, 12-12020 MG, 2012 WL 3308408 (Bankr. S.D.N.Y. Aug. 10, 2012) (common interest privilege may be "waived by the client who made the communication.") (citing Restatement Third of the Law Governing Lawyers § 75(1) (2000)).

And even if the Debtors had not waived the privilege, the communications would be legally discoverable on three additional grounds. First, the Debtors have expressly conceded to the Court that they were "relying on advice of counsel supporting their approval of the RMBS Settlement." September 19, 2012 Hr'g Tr. at 28. Under the well-established "sword-shield" doctrine, they cannot simultaneously rely on legal advice to support the reasonableness of their judgment in entering into the settlement and also refuse to disclose the advice they received in that regard. *See, e.g., Am. Steamship Owners Mut. Protection and Indemnity Assoc., Inc. v. Alcoa Steamship Co., Inc.*, 232 F.R.D. 191, 198-99 (S.D.N.Y. 2005) ("'It is well established that 'the attorney-client privilege cannot at once be used as a shield and a sword.'"); *Chesapeake Corp. v. Shore*, 771 A.2d 293, 301 (Del. Ch. 2000) ("Here the defendants' tactical decision to bar on privileg[e] grounds discovery into what the board was advised was their fiduciary duty and into the content of the board's deliberations will in turn preclude them from proving those deliberations at trial to defend their position that their decision was reasonable and made with due care.").

Second, at the time the RMBS Settlement was negotiated, the Debtors' directors and officers owed fiduciary duties not only to the Debtors themselves, but also to the Debtors' creditors. *See, e.g., Pereira v. Farace*, 413 F.3d 330, 342 (2d Cir. 2005) ("[C]orporate officers and directors owe fiduciary duties to creditors when a corporation is insolvent..."). Under the fiduciary exception to the attorney-client privilege, the Committee is entitled to invade the privilege to assess whether the settlement negotiations were "carried out in good faith and for valid business reasons." *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 425 (S.D.N.Y. 2006).

Finally, because AFI's contribution towards an RMBS settlement and releases to AFI from both the Debtors and third parties in return for that contribution were integral elements of the settlement, communications between the Debtors and AFI concerning those matters cannot have been subject to any common interest privilege in any event. Many of the documents in question are emails between ResCap employees or Morrison & Foerster and AFI's Chief Litigation Counsel, Mr. Devine, concerning AFI's contribution towards an RMBS settlement and the importance to AFI of obtaining releases in its favor as part of such a settlement. A few examples are as follows:

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
Honorable Martin Glenn
November 2, 2012
Page 4

- REDACTED

  9019_00048956).

- REDACTED

  (RC-9019_00050455).

  REDACTED                                                                                            (RC-9019_00061442).

- REDACTED

  (RC-9019_00052337).

- REDACTED

  (RC-9019_00049155).

- REDACTED

  (RC-9019_00048987).

    Although the Debtors and AFI may have had a common interest in minimizing their exposure to RMBS liability, they could not have been more adverse in terms of the portion of that exposure each would be required to assume. The Debtors' interest, and that of their creditors, was to obtain the highest possible contribution from AFI towards a settlement of RMBS claims, while AFI's interest was undoubtedly to contribute as little as possible.

---

[5] This document cannot even arguably be privileged because it "merely relays counsel's communications with a third party." *Tvt Records, Inc. v. Island Def Jam Music Group*, 214 F.R.D. 143, 148 (S.D.N.Y. 2003).

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
Honorable Martin Glenn
November 2, 2012
Page 5

Communications between the Debtors and AFI that resulted in an $8.7 billion allowed claim against the Debtors but only a $750 million contribution from AFI plainly were not made in furtherance of any common legal interest.

      For all of these reasons, the Debtors' claw-back demand should be rejected.

    B.    Numerous Documents Withheld by the Debtors and
          AFI on Privilege Grounds Should Be Ordered Produced

      In the privilege logs they provided to the Committee, the Debtors and AFI have identified hundreds of documents withheld from production based on one or more alleged privileges. Despite multiple meet-and-confer sessions among the parties, little progress has been made in resolving the Committee's challenges to these assertions of privilege. Of the many categories of documents designated as privilege, the only categories that the Debtors have now agreed to produce — under a limited waiver stipulation — are (1) the legal advice given and presentations made by the Debtors' attorneys to the ResCap Board at the May 9, 2012 meeting in which the Board approved the RMBS Trust Settlement Agreement and the Plan Support Agreements with the Steering Committee Group and the Talcott Franklin Group, (2) estimates of damages exposures and presentation materials prepared by or on behalf of the Debtors for use by counsel in negotiating the RMBS Settlement, and (3) communications between counsel and the ResCap Board in connection with amendments to the RMBS Trust Settlement. AFI has not agreed to produce any of the categories as to which it has asserted privilege. However, none of the categories being withheld by the Debtors and AFI should be protected from disclosure.

      As the Court is well aware, the Committee is examining two principal questions raised by the RMBS Settlement: (1) whether the $8.7 billion allowed claim fixed by the settlement is reasonable and in the best interests of the Debtors and their creditors, and (2) whether the settlement was the product of arm's-length bargaining. The documents requested by the Committee, and withheld by the Debtors and AFI on grounds of privilege, relate directly to these central questions.

      For example, although the Debtors have agreed to produce the presentations made to the ResCap Board at the actual meeting in which the settlement was approved, they have withheld all of the prior communications between the Debtors' counsel and individual ResCap board members bearing on the merits of the settlement, including those containing evaluations and analyses of the Debtors' potential RMBS liability for purposes of the disclosures made in AFI's Form 10Q filed in April 2012. The Debtors have also withheld communications between two of ResCap's board members — Messrs. Marano and Whitlinger — between the time the RMBS Settlement was approved by the Board on May 9, 2012 and the time it was actually signed on May 13, 2012. All of these communications should be produced under the sword-shield doctrine and/or the fiduciary exception to the attorney-client privilege discussed above, or possibly even as mere factual summaries that are not protected from disclosure under any

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
Honorable Martin Glenn
November 2, 2012
Page 6

privilege. *See, e.g., Hallmark Cards, Inc. v. Murley*, 2010 U.S. Dist. LEXIS 120186 (S.D.N.Y. Nov. 9, 2010) (factual summaries are not protected by work product); *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 2006 U.S. Dist. LEXIS 20648 (S.D.N.Y. Apr. 18, 2006) ("the privilege does not protect the client's knowledge of relevant facts, whether or not they were learned from his counsel, or facts learned by the attorney from independent sources.") (citations omitted).

The Debtors have also withheld all communications with their attorney Jeffrey A. Lipps, despite proffering Mr. Lipps as an expert on the legal grounds supporting an $8.7 billion settlement. Supplemental Declaration of Jeffrey A. Lipps, dated September 28, 2012 [Docket #1664-7]. But the submission of Lipps as an expert waives privilege as to all of the Debtors' communications with him or his firm regarding the Debtors' exposure to RMBS claims and the settlement of those claims, as well as all work product by Mr. Lipps or his firm concerning RMBS litigation in general. *See, e.g., Herrick Co., Inc. v. Vetta Sports, Inc.*, No. 94 Civ. 0905 (RPP), 1998 U.S. Dist. LEXIS 14544, 1998 WL 637468, at *1-*4 (S.D.N.Y. Sept. 17, 1998) (noting that a party's designation of its attorney as expert witness waives attorney-client privilege not only with respect to documents considered or relied upon in formulating expert opinion, but also with respect "other instances in which the attorney advised the party on similar matters," including materials from other litigations) (collecting cases).

The Committee therefore believes that the Debtors and/or AFI should be ordered to produce all of the following categories of documents currently being withheld:

- Communications between counsel for the Debtors and the ResCap Board concerning the RMBS Settlement [Debtor Documents #309, 557, 1215, 1230, 1236; supplemental documents 11-14; 346].

- Communications between counsel for the Debtors and individual ResCap Board members concerning the RMBS Settlement [Debtor Documents #80, 81, 84, 89, 92, 104, 879, 880, 1111, 1239, 1255, 1272; supplemental documents 1, 3-8, 15, 26-28, 31-33, 35-40, 43-49, 57, 61, 68-77, 79, 229-232, 234, 236-238, 258, 306, 308-312, 314, 315, 317-320, 567, 597].

- Mr. Devine's presentations to and communications with the ResCap Board concerning the RMBS Settlement [AFI Documents #17, 18, 19, 89, 94, 100, 101, 102, 103, 397, 399, 400, 425, 427, 429, 430-438, 443, 445, 449, 451, 452, 454, 455, 456, 462, 519, 546]

- Communications between outside counsel for the Debtors and Ms. Hamzehpour regarding the amendments to the RMBS Settlement. [Debtor Documents #239, 309, 387, 396, 398-403, 879, 1096-1098, 1100, 1105-1109, 1111, 1221-1230,

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
Honorable Martin Glenn
November 2, 2012
Page 7

       1232, 1235, 1236, 1239; supplemental documents 27, 28, 182, 303-306, 342, 345, 429, 435-436, 542, 549, 561-568].[6]

- Communications between outside counsel for the Debtors and Ms. Hamzehpour, Mr. Cancelliere and John Ruckdaschel (another in-house ResCap attorney) regarding the RMBS Settlement. [Debtor Documents #13, 21, 24, 30, 38, 41, 72, 76, 78, 106-109, 126, 127, 133, 136, 144, 152, 155, 160, 165, 166, 167, 168, 189-191, 193, 208, 210, 239, 261-267, 270, 272, 274-277, 285, 290, 294, 296, 309, 324, 328, 330-332, 334, 337, 357, 358, 379, 382, 383, 387, 396, 398-403, 557, 678, 734, 743-749, 756-760, 777, 821-823, 825-831, 834, 835, 850-854, 879, 880, 889, 891, 893, 894, 898, 900-903, 906, 908, 910, 912, 914, 916-919, 921-923, 925-928, 930, 931, 933, 934, 937, 939, 940, 944, 946, 948, 950, 951, 954, 955, 957, 958, 960-967, 969, 970, 971-997, 1000, 1001, 1003-1040, 1041, 1045, 1049-1053, 1055, 1056, 1060, 1062, 1066, 1069, 1071, 1073-1077, 1079, 1088, 1089, 1091, 1093-1100, 1105-1109, 1111-1113, 1115-1117, 1121, 1133, 1136, 1138-1142, 1144-1148, 1150-1157, 1159-1161, 1163-1166, 1169-1173, 1175, 1176, 1178, 1186-1188, 1193, 1194, 1199, 1201, 1203-1205, 1207-1217, 1219-1230, 1232, 1235-1237, 1239-1245, 1247, 1249-1255, 1258, 1261, 1264, 1269, 1272, 1280; supplemental documents 27, 28, 39, 40, 57, 61, 91-93, 107, 112, 149, 154, 156, 163, 165, 166, 169, 170, 182, 203, 212, 213, 229-232, 234, 236-238, 245, 247, 248, 258, 260, 261, 269-273, 279, 287, 292-294, 303-306, 308-312, 314, 315, 317-323, 327, 331, 342, 345, 347, 348-351, 353-359, 429, 431, 433, 435-436, 492, 496, 497, 502, 512, 527, 542, 549, 561-568, 570, 571, 699, 1026].

- Mr. Devine's communications with Ms. Hamzehpour, Mr. Ruckdaschel and Mr. Cancelliere regarding the RMBS Settlement. [AFI Documents #59, 216, 217, 305, 378, 383, 402, 405-411, 413, 414, 416-419, 449, 547, 551, 556, 565, 1025, 1138, 1187, 1189, 1190, 1206].

- Documents containing evaluations and analyses of the Debtors' potential RMBS liability. [AFI Documents # 13, 14, 26, 36, 83, 104, 392, 396, 457, 495, 496, 500, 511, 534, 536; supplemental documents 34, 67].

- Communications between the Debtors and Carpenter Lipps concerning the RMBS Settlement and/or RMBS litigation in general. [Debtor Documents #44, 45, 52, 54, 98, 100, 101, 185, 186, 254, 272, 276, 277, 283, 291, 292, 302, 338, 344, 350, 387, 396, 398-403, 444, 447, 559, 582-585, 636, 637, 688, 715, 717, 821-831, 834, 835, 840, 850-854, 877, 948, 1053, 1060, 1062, 1066, 1069, 1071, 1073-1077, 1089, 1091, 1096-1098, 1100, 1105-1109, 1112, 1164, 1165, 1170-1172, 1203, 1204, 1209-1214, 1223-1229, 1273; supplemental documents 92, 225, 245, 512].

---

[6]                                   REDACTED

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
Honorable Martin Glenn
November 2, 2012
Page 8

- Pre-petition communications between Mr. Devine and Carpenter Lipps regarding the RMBS Settlement and/or RMBS litigation in general, since AFI has represented that both Mr. Devine and Carpenter Lipps functioned as counsel to both the Debtors and AFI before the Petition Date. [AFI Documents # 133-138, 140, 449, 450, 454].

- Other documents where the Debtors have asserted a common interest between themselves and AFI unless the Debtors can demonstrate "that each communication was made in the course of the joint-defense effort and was designed to further that effort." *Velo Holdings Inc.*, 473 B.R. at 514. [Debtor Documents #969; supplemental documents 5, 15-25, 27-32, 35, 50, 104-106, 109, 110, 117, 118, 125, 145, 161, 171, 173-175, 178-182, 184, 202, 214-216, 228, 263-267, 307, 324-326, 346, 361-382, 389, 390, 393-400, 408-426, 429-434, 441, 442, 447, 450, 451, 455-491, 499-501, 506-511, 515-520, 523-526, 528-541, 549-560, 564, 575-586, 599-609, 612, 613, 617-633, 635-656, 658-701, 704-708, 710-712, 715-723, 732, 733, 736, 737, 744-747, 749-761, 764-894, 898, 902, 904, 906-914, 919-927, 929-997, 1008-1019, 1023-1025, 1027-1036; AFI Documents #17, 18, 19, 59, 89, 94, 100-104, 114, 119, 133-138, 140, 151-153, 216-217, 224, 305, 350, 378, 383, 389, 392, 394-397, 399, 400, 402, 405-411, 413-419, 425-438, 440, 443, 445, 449-451, 454-456, 461, 497, 519, 533-537, 542, 546-548, 550, 551, 556, 565, 588, 665-669, 672, 681-739, 741-770, 773-777, 779-795, 797-799, 801-811, 840-851, 853, 854, 859-862, 867-870, 892-905, 907-914, 921-924, 927, 929, 930, 932, 933, 935, 936, 938, 940, 946, 955-957, 962-971, 976-983, 996-1015, 1018-1025, 1029, 1036-1038, 1045-1062, 1067, 1075-1088, 1090, 1104, 1105, 1116, 1118, 1123, 1124, 1132, 1182, 1188, 1190, 1199-1204, 1206, 1214, 1215].

\* \* \*

We look forward to discussing each of the above discovery matters with the Court at the November 5, 2012 hearing.

Respectfully,

Philip S. Kaufman

PSK/ams
cc: Gary S. Lee, Esq.
Anthony Princi, Esq.
Jamie A. Levitt, Esq.
Darryl P. Rains, Esq.
Patrick M. Bryan, Esq.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

Honorable Martin Glenn
November 2, 2012
Page 9

    Kathy D. Patrick, Esq. (redacted)
    Talcott Franklin, Esq. (redacted)
    Keith H. Wofford, Esq. (redacted)
    James L. Garrity, Jr., Esq. (redacted)
    Arlene R. Alves, Esq. (redacted)
    Mark D. Kotwick, Esq. (redacted)
    Mauricio Espana, Esq. (redacted)
    Hector Gonzalez, Esq. (redacted)
    Kit Weitnauer, Esq. (redacted)
    Bill Macurda, Esq. (redacted)
    John C. Goodchild, III, Esq. (redacted)
    John M. Rosenthal, Esq. (redacted)
    Jonathan M. Hoff, Esq. (redacted)
    Howard Sidman, Esq. (redacted)
    Richard L. Wynne, Esq. (redacted)
    Sean O'Neal, Esq. (redacted)
    Kyle A. Lonergan, Esq. (redacted)
    Christopher Shore, Esq. (redacted)
    Gerry Uzzi, Esq. (redacted)
    Ray C. Schrock, Esq.