# JONES DAY

555 SOUTH FLOWER STREET • FIFTIETH FLOOR • LOS ANGELES, CALIFORNIA 90071.2300

TELEPHONE: +1.213.489.3939 • FACSIMILE: +1.213.243.2539

Direct Number: (213) 243-2548
rlwynne@JonesDay.com

November 2, 2012

VIA ELECTRONIC DELIVERY

The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

Re:   *In re Residential Capital, LLC, et al.*, Case No. 12-12020 (MG)

Dear Judge Glenn:

We represent Financial Guaranty Insurance Company ("FGIC") in this case. FGIC joins in the positions and arguments set forth in the Official Committee of Unsecured Creditors' letter to Your Honor, dated November 2, 2012 (the "Committee's Letter").

On the eve of the start of depositions of 11 fact witnesses, Ally seeks to claw back, as inadvertently produced, 367 documents that Debtors have placed in the database over the past two months, after the Debtors had orally and in writing represented that they would not be asserting a common interest privilege with Ally. For the first time, Ally and Debtors have now revealed yet another agreement, this time signed post-petition on June 5, 2012, purporting to memorialize a joint defense agreement for the benefit of Ally. This hidden post-petition agreement reveals that "both ResCap and Ally have and anticipate continuing to work cooperatively with respect to legal issues related to ResCap's restructuring in bankruptcy [because] . . . the [Debtors'] Bankruptcy and the Restructuring **may have significant legal and/or financial impact to Ally**. . . ." *Joint Defense Agreement*, at 1 (emphasis added). See Exhibit 1, attached hereto.

Ally has therefore simultaneously asserted that it is entitled to share in the Debtors' attorney-client privilege because: (i) the two have been bound by a common interest agreement, and (ii) several members of Ally's legal department jointly represented Ally and Debtors in connection with various matters including the negotiation of the RMBS Settlement Agreement pre-petition as well as other matters post-petition.[1]

_____
[1] FGIC has not been able to obtain clarity concerning the underlying facts and circumstances concerning the joint representation, so it is unclear if Ally is asserting that only pre-petition its counsel also represented ResCap while negotiating with and for ResCap, or if as it seems, such conduct continues post-petition, which is why the agreement was only signed post-petition.

ALKHOBAR • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI
DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

The Honorable Martin Glenn
November 2, 2012
Page 2

### A. Ally and the Debtors' Undisclosed and Unauthorized Joint Defense Agreement

Ally asserts that the Joint Defense Agreement forms the basis for its common interest agreement with Debtors. This newly disclosed agreement is however directly contrary to the prior representations Debtors and Ally have made to the Court concerning Ally's involvement with the RMBS Settlement Agreement negotiations. These representations were made while the Court was attempting to design a fair but greatly expedited discovery process and minimized Ally's role. Specifically, at the September 19, 2012, status conference, the court asked Mr. Princi, Debtors' counsel, if "either Kirkland or AFI ha[d] anyone present during [settlement] negotiations." Mr. Princi responded, that "yes. . . an associate at Kirkland & Ellis who we asked to be there just so that we get the document done. . . . And then prior to that, Your Honor, I wasn't involved, and so I'd have to consult, but I'm being told yes."[2]

Later in that same conference, counsel for Ally confirmed Debtors' counsel's statement and merely stated that Ally was "kept up to date . . . we were interested . . . " without further elaboration:

> Fifth, you asked what was Ally's role related to the RMBS trust settlement agreement. And I think Mr. Princi had it right. We were kept up to date, primarily Mr. Devine, also, my colleague Noah Ornstein, from Kirkland & Ellis. We were kept up to date; we were interested, and we were kept up to date, primarily by Morrison & Foerster and others.

The documents produced by ResCap, including some that Ally now seeks to claw back reveal, however, Ally wasn't merely monitoring the settlement negotiations, but was centrally involved.[3] Ally apparently had its Chief Litigation Counsel, Timothy Devine, lead the business negotiations. Mr. Devine even insisted that the non-debtor parties to the RMBS Settlement Agreement sign on to the Plan Support Agreement and support the Ally-ResCap settlement or there would be no agreement on the $8.7 Billion RMBS Settlement, despite the fact that Ally was not itself a party to the ResCap RMBS Settlement Agreement. Now, Ally asserts that Mr. Devine actually represented the Debtors in negotiating the $8.7 Billion settlement while he was simultaneously representing Ally in (i) negotiating its own $750 million settlement with the Debtors, and (ii) arranging for the Debtors to become bound to propounding a plan, which releases all claims against Ally and imposes third party releases of Ally on the Debtors' creditors.

---

[2] See Exhibit A (excerpts from the September 19, 2012 hearing transcript).

[3] See Exhibit B (certain emails produced by ResCap relating to the settlement negotiations; Debtors are requesting to claw back documents 1, 2, 4, 5, 7, 9, 15, 16 and 17).

**JONES DAY**

The Honorable Martin Glenn
November 2, 2012
Page 3

      The September 19, 2012 hearing transcript reveals that other Ally and ResCap counsel present appears to include representatives who were or should have been aware of the significant role Ally and its counsel played. Someone should have risen in response to the Court's question, if not earlier, to explain the actual extent of the relationship between Ally and Debtors, including the key fact that Ally's counsel simultaneously represented Debtors in these very important negotiations. As reflected in the attached documents (*see* Exhibit B), as opposed to merely having an associate monitoring some document drafting, Mr. Devine led the business negotiations while he was supposedly simultaneously representing both ResCap and Ally:



JONES DAY

The Honorable Martin Glenn
November 2, 2012
Page 4



    These excerpts show that there cannot be a common interest between Ally and ResCap. The negotiations with respect to the RMBS Settlement were inextricably intertwined and expressly linked with the negotiation of ResCap's claims against Ally, and the paramount goal of obtaining a third party release, as well as an estate release, for Ally's benefit.

    Moreover, as a matter of pure black letter bankruptcy law, based on the circumstances, the newly disclosed Joint Defense Agreement is outside the ordinary course of business, as defined in 11 U.S.C. § 363. Having not been previously disclosed or authorized by the Court, that agreement should thus be treated as a legal nullity. To the extent this agreement supposedly codifies prior oral and/or written agreements among Ally and Debtors that were also never disclosed to the Court or the parties, they should be similarly disregarded, particularly under the circumstances here. If the Court requires, FGIC will brief these issues in further detail.

    In addition, and despite Debtors' oral and written representations that they would not be asserting a common interest privilege with Ally, and Debtors repeated productions based on those representations, Debtors' most recent document productions of October 22, 23, and 26, 2012, contain newly produced but redacted emails. This is seemingly designed (in part) to shield from disclosure communications between Debtors, internal Ally personnel and external counsel for Ally. Debtors should be required to produce un-redacted versions of these documents, based on their express and repeated waiver of asserting a common interest privilege; and further, because under these circumstances, there can be no common interest between ResCap and Ally.

    **B.    Ally's Purported Representation of Debtors**

    Ally's newly disclosed position that its legal department was also representing Debtors cannot withstand scrutiny due to the inherit conflict that existed during the negotiation process. The Devine emails alone eliminate any attempt at aligning Debtors' and Ally's supposed common interest. They contradict the new contention that Devine was somehow simultaneously acting on behalf of Debtors, demonstrate how conflicted the Debtors and Ally have always been concerning the settlement process, and highlight the improper influence Ally was asserting in the settlement negotiations in order to reach its ultimate goal: limiting its liability no matter the cost to the Debtors and creditors. The ultimate effects of Ally's goal are also clear: FGIC and other

JONES DAY

The Honorable Martin Glenn
November 2, 2012
Page 5

creditors will be prejudiced by an inflated claim in a settlement cobbled together in order to benefit the non-debtor parent and release it from any future claims.

In addition, it does not appear that Mr. Devine was providing legal advice to ResCap, which was represented by separate outside counsel. Mr. Devine appears only to be acting as the lead negotiator on the business aspects of the various settlements. Finally, neither the Debtors nor Ally have provided the following types of information that would be required for a thorough investigation of this new privilege claim, such as: (i) a complete list of all Ally personnel, including all in-house legal counsel as well as non-lawyers, who jointly represented Ally and the Debtors during settlement negotiations; (ii) the Bates numbers of documents in which Devine and other Ally Personnel are providing legal advice to Debtors; and (iii) for those Ally in-house lawyers identified as jointly representing the Debtors and Ally, all information pertaining to that joint representation.[4]

\*          \*          \*

The Court has endeavored to construct a fair but expedited process, and FGIC has invested considerable resources in order to investigate the settlements' propriety, due to the outsized impact the settlement could have on the Estate, on other creditors' recoveries, and on the Estate's ability to pursue claims against Ally. The new positions that the Debtors and Ally have taken with respect to the claw back of documents and the belated assertions of privilege should be rejected by the Court as improper. The Debtors should be instructed to produce the redacted documents in unredacted form, as well as all other communications with Ally.[5] Finally, due to the delays in production, it may be necessary to extend the current deposition schedule in

---

[4] This would include such information as (1) the dates on which joint representation commenced and ended; (2) the portion of the employee's salary that Debtors paid pre- and post-petition; (3) the individuals' titles and email addresses used at ResCap and Ally; (4) any employment agreement or other writing evidencing this dual role; (5) the names of and contact information for the individual(s) at the Debtors who authorized Ally employees to work for them; and (6) all organizational charts or internal documents that evidence reporting lines of these dual employees or show that they have responsibility for representing both Ally and ResCap.

[5] FGIC understood that the Debtors had provided to Ally a presentation with respect to claims that ResCap and affiliates had against Ally, but that has not been produced. To the extent such a presentation was provided to Ally by ResCap, in whatever form, FGIC believes it is not protected by any applicable privilege and should be produced.

JONES DAY

The Honorable Martin Glenn
November 2, 2012
Page 6

order for FGIC and the other parties to obtain the requisite documents and properly prepare for and take the appropriate depositions.

    Respectfully submitted,

    /s/ Richard L. Wynne

    Richard L. Wynne

Attachments

cc:    Counsel for Debtors (*via email*)
      Counsel for Ally Financial, Inc. (*via email*)
      Counsel for Official Committee of Unsecured Creditors (*via email*)
      Counsel for MBIA (*via email*)