**Hearing Date and Time:  November 19, 2012 at 10:00 a.m.**

Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC., et al. | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**LIMITED OBJECTION OF ALLY FINANCIAL INC. AND ALLY BANK**
**TO THE DEBTORS' PROPOSED PLATFORM SALE MOTION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT BACKGROUND ...............................................................................................4

A.        The Consent Obligations....................................................................................4

B.        The Sale Motion and Platform Sale ..................................................................7

LIMITED OBJECTION ........................................................................................................9

RESERVATION OF RIGHTS ...............................................................................................12

CONCLUSION......................................................................................................................13

**EXHIBIT**

Exhibit A        Order of Assessment

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cournoyer v. Lincoln,*
  790 F.2d 971 (1st Cir. 1986) ..................................................................... 9

*In re Am. Coastal Energy Inc.,*
  399 B.R. 805 (Bankr. S.D. Tex. 2009) .................................................... 10

*In re Berry Estates, Inc.,*
  812 F.2d 67 (2d Cir. 1987) .................................................................... 11

*In re Canarico Quarries, Inc.,*
  466 F. Supp. 1333 (D.P.R. 1979) ......................................................... 10

*In re CMC Hartland Partners,*
  966 F.2d 1143 (7th Cir. 1992) ......................................................... 9, 11

*In re Mattiace Indus.,*
  76 B.R. 44 (Bankr. E.D.N.Y. 1987) ...................................................... 11

*In re Residential Capital, LLC,*
  No. 12-12020, 2012 WL 5211083 (Bankr. S.D.N.Y. 2012) ...................... 7

*Midlantic Nat'l Bank v. N.J. Dep't. of Envtl. Prot.,*
  474 U.S. 494 (1986) ............................................................................... 9

*Ohio v. Kovacs,*
  469 U.S. 274 (1985) ............................................................................... 9

*S.E.C. v. Brennan,*
  230 F.3d 65 (2d Cir. 2000) .................................................................. 11

*United States v. Hansen,*
  262 F.3d 1217 (11th Cir. 2001) ............................................................. 9

## STATUTES

12 U.S.C. § 1841 ....................................................................................... 9

28 U.S.C. § 959(b) .................................................................................... 9

i

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Ally Financial Inc. ("**AFI**"), on behalf of itself and its non-debtor affiliates, including

Ally Bank (collectively, "**Ally**"), submits this limited objection to the sale of the Debtors'

mortgage servicing and origination platform (the "**Platform**") pursuant to the May 14, 2012

motion of the Debtors [ECF No. 61] (the "**Motion**").[1]

## PRELIMINARY STATEMENT

1.        Prior to the Petition Date, since the Petition Date, and today, Ally has been and

remains supportive on numerous fronts of the Debtors' proposed Platform sale (the "**Platform

Sale**").  Ally files this limited objection, however, to raise specific issues that Ally respectfully

submits must be addressed in any order approving the Motion.  The unprecedented support from

a United States bank holding company governed by the Federal Reserve Board (the "**FRB**") and

close cooperation from an institution governed by the Federal Deposit Insurance Corporation

(the "**FDIC**") was made with the explicit understanding that the Debtors must ensure that they

and any proposed purchaser of the Platform, as a successor, comply with the Consent Order

among Residential Capital, LLC ("**ResCap**"), GMAC Mortgage, LLC ("**GMACM**"), AFI, Ally

Bank, the FRB, and the FDIC, dated April 13, 2011 (the "**Consent Order**"), the consent

judgment among the United States Department of Justice (the "**DOJ**"), the Attorneys General of

certain states, ResCap, GMACM, and AFI, dated February 9, 2012 (the "**DOJ/AG Settlement**"),

and the Order of Assessment issued by the FRB, dated February 10, 2012 (the "**Order of

Assessment**" and together with the Consent Order and the DOJ/AG Settlement, the "**Consent

Obligations**"), and provide adequate assurance of such compliance with the Consent Obligations,

which continue to bind the Debtors and any purchaser.  It is beyond dispute that the Platform

---

[1]        Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

Sale process could not have taken place without Ally's multiple forms of support and cooperation, which has generated significant value for the Debtors' chapter 11 estates.

2.      As explained below, the Debtors must comply with the Consent Obligations, including by requiring that (a) the purchaser of the Platform, which is now Ocwen Loan Servicing, LLC ("*Ocwen*") as a result of the auction held on October 23-24, 2012, continues to perform and be bound by the Consent Obligations, and (b) the Debtors fund or escrow an amount sufficient to pay for any Consent Obligations for past practices (*e.g.*, loan modification obligations and foreclosure review obligations).[2]  As set forth in a supplemental agreement to the Consent Order and Exhibit I to the DOJ/AG Settlement, the Debtors agreed with governmental authorities and regulators not to sell the Platform without Ally's consent, and Ally will not consent, and instead, must object to any sale if the Debtors do not comply with their regulatory obligations and their obligations to pay for such settlement costs.  Indeed, consistent with the explicit understanding mentioned above, all of Ally's support for the Debtors to date has been conditioned upon the Debtors' agreement to continue to fulfill their Consent Obligations.[3]

3.      Ally is aware that the Debtors have been in discussions with the DOJ concerning

---

[2]  Ally previously filed a limited objection and reservation of rights regarding the assumption and assignment of certain executory contracts to Nationstar Mortgage LLC. *See Limited Objection and Reservation of Rights of Ally Financial Inc. and Ally Bank Regarding Assumption and Assignment of Certain Executory Contracts to Nationstar Mortgage LLC* [ECF No. 1659].  Ally reasserts such limited objection and reservation of rights, which should be considered incorporated herein by reference, in relation to the Ocwen sale.

[3]  Both before and during the chapter 11 cases, Ally has committed substantial resources to the Debtors to allow the Debtors to maintain the Platform pending its sale.  Specifically, Ally has provided (and continues to provide) a comprehensive and integrated package of support that includes:  (a) a shared services agreement; (b) consensual use of AFI's cash collateral; (c) a debtor-in-possession financing facility in an amount up to $220 million; (d) a good-faith commitment to negotiate a transition services agreement; (e) a proposed settlement involving $750 million of cash consideration to fund distributions to creditors under a chapter 11 plan; (f) consumer mortgage loan origination cooperation from Ally Bank, in return for reimbursement of its losses, that is essential to preserving the value of the Debtors' estates; and (g) an arm's-length servicing agreement between Ally Bank and GMACM.

2

the DOJ's previously filed statement with respect to the Motion[4] and the Debtors' compliance with the DOJ/AG Settlement, and that the Debtors, Ocwen, and the DOJ are negotiating changes to Section 6.16 of the Asset Purchase Agreement between Ocwen and certain of the Debtors (the "*Ocwen APA*") to address the DOJ's potential objection.   The DOJ's potential objection, however, has not yet been resolved, and the Debtors have not yet addressed compliance with their regulatory obligations with the FRB to Ally's knowledge.   Instead, as reflected in the Debtors' recent filing of the Ocwen APA with the Court, the Debtors would like to resolve the issues related to their fulfillment of the Consent Obligations after the Sale Hearing, as a condition to closing of the Platform Sale.[5]

4.      Waiting until after the Sale Hearing to resolve the Debtors' compliance issues will not work as it does not provide a means of adequate assurance of performance and will put the estates' recoveries at risk by losing the back-up bid for the Platform.   Upon approval of the Ocwen APA by the Court, Nationstar Mortgage, LLC will be released from its obligation to be the back-up purchaser for the Platform, leaving the Debtors with no purchaser if the compliance issues with Ocwen are not resolved and prevent the closing of the sale.   Moreover, waiting until after the Sale Hearing to resolve the compliance issues places Ally in the untenable position of having no adequate assurance of future performance of the Consent Obligations by either the Debtors or Ocwen but having to support the Debtors' estates and the transition of the Platform to Ocwen until closing.   This is not a position in which Ally may—or will—put itself.   Ally must act for the benefit of, and thus protect, its stakeholders.

---

[4]     *See Statement of the United States of America Concerning Debtors' Motion to Approve Sale Procedures* [ECF No. 290].

[5]     *See Amended Notice of Successful Bidders at the Auctions and Sales of (A) the Platform Assets to Ocwen Loan Servicing, LLC and (B) the Whole Loan Assets to Berkshire Hathaway Inc. and Notice of Filing (A) Ocwen APA and (B) Amended and Restated BH Legacy APA*, Exhibit 1 (Ocwen APA), Art. VI, §§ 6.16, 8.1 [ECF No. 2050].

5.      Ally is hopeful that these issues can be resolved between now and the Sale

Hearing, and Ally will continue to work with the relevant parties to resolve them.  Accordingly,

Ally files this limited objection to preserve its rights while discussions concerning the Debtors'

compliance with their regulatory obligations continue.   To the extent these issues are not

resolved before the Sale Hearing, Ally respectfully requests that the Court approve the Platform

Sale only after requiring (a) Ocwen to perform and be bound by the Consent Obligations, and (b)

the Debtors to fund or escrow an amount sufficient to pay for any Consent Obligations relating to

past practices (*e.g.*, loan modification obligations and foreclosure review obligations).[6]

## RELEVANT BACKGROUND

### A.      The Consent Obligations

6.      On April 13, 2011, the FRB and the FDIC entered into the Consent Order as a

result of an examination concerning the Debtors' alleged unsafe and unsound banking practices

in violation of state and federal law in connection with residential mortgage foreclosures.

7.      On February 9, 2012, the Debtors and AFI entered into the DOJ/AG Settlement,

which was filed as a consent judgment in the U.S. District Court for the District of Columbia, to

remedy the Debtors' alleged violations of state and federal laws in connection with mortgage

origination and servicing activities, and foreclosure home sales and evictions.

8.      On February 10, 2012, the FRB issued the Order of Assessment.

9.      As described in previous pleadings before the Court,[7] the Consent Order, among

---

[6]     Ally also requests that any order approving the Platform Sale clearly provide that nothing in such order purports
to sell to Ocwen any assets owned by Ally, including advance receivables purchased by Ally's subsidiary, Ally
Commercial Finance LLC, under that certain June 17, 2008 Servicer Advance Receivables Factoring
Agreement among GMAC Commercial Finance LLC (n/k/a Ally Commercial Finance LLC), as purchaser, and
Residential Funding Company, LLC and GMACM, as sellers.

[7]     *See, e.g., Debtors' Motion for Entry of an Order Under Bankruptcy Code Section 363 and Bankruptcy Rule
6004 (I) Authorizing the Debtors to Compensate PricewaterhouseCoopers, LLP for Foreclosure Review
Services in Furtherance of the Debtors' Compliance Obligations Under Federal Reserve Board Consent Order*

other things, requires GMACM to conduct an independent file review regarding its past residential foreclosure actions.  The DOJ/AG Settlement, among other things, obligates the Debtors to perform certain "consumer relief" activities, including soliciting eligible populations of mortgage loans for modification and performing such loan modifications.[8]  The Order of Assessment assesses a civil money penalty against the Debtors, which the FRB agreed to remit upon compliance with the DOJ/AG Settlement and the satisfaction of certain reporting and other conditions.

10.    The Consent Order and Order of Assessment are binding upon the Debtors and their successors and assigns.[9]  In addition, the DOJ/AG Settlement obligates the Debtors to "ensure the continued performance of their obligations under the [DOJ/AG Settlement], including requiring any successor or purchaser of substantially all of the assets (or assets that together are material to the performance of the [Debtors] under the [DOJ/AG Settlement]) of a [Debtor] to honor and perform the obligations (in the case of a purchase or other acquisition of assets, to honor and perform the obligations with respect to those assets) under the [DOJ/AG Settlement]."[10]

11.    Under the DOJ/AG Settlement, the Debtors represented and warranted that "they

---

*and (II) Reaffirming Relief Granted in the GA Servicing Order* [ECF No. 1357] (the "***PwC Motion***"); *Debtors' Motion for Interim and Final Orders Under Bankruptcy Code Sections 105(a) and 363 Authorizing the Debtors to Continue to Perform Under the Ally Bank Servicing Agreements in the Ordinary Course of Business* [ECF No. 47]; *Declaration of Thomas Marano, Chief Executive Officer of Residential Capital, LLC, in Further Support of Debtors' Ally Servicing Motion* (the "***Marano Declaration***") [ECF No. 793].

[8]    Marano Declaration, Ex. 1 (DOJ/AG Settlement, Ex. I), ¶¶ 3-6. As the Court may recall, the eligible loans include substantially all of the mortgage loan portfolio owned by Ally Bank.

[9]    PwC Motion, Ex. 5 (Consent Order), ¶ 25; Order of Assessment, ¶ 7 (a copy of the Order of Assessment can be found at http://www.federalreserve.gov/newsevents/press/enforcement/enf20120213a1.pdf and is annexed hereto as **Exhibit A**).

[10]    Marano Declaration, Ex. 1 (DOJ/AG Settlement, Ex. I), ¶ 8.  In return for the Debtors' commitment to ensure continued performance under the DOJ/AG Settlement, the State Mortgage Regulators (as defined in the DOJ/AG Settlement) agreed to "expedite new licenses" for a successor to the Debtors in sale.  *Id.*, ¶ 10.

5

will not enter into a Transformative Transaction [*i.e.*, a sale of all or substantially all of their assets] without the consent of AFI."[11]   Further, AFI agreed that it will not consent to a sale transaction of the Debtors or "provide financial support in connection with any such transaction" unless the Debtors ensure the continued performance of their obligations under the DOJ/AG Settlement.[12]   AFI is similarly bound by a separate agreement with the FRB, which supplemented the Consent Order (the "***Supplemental Agreement***").[13]

12.     The Debtors have previously represented to the Court that they are fully committed to complying with the terms of the DOJ/AG Settlement and the Consent Order, and that such compliance is in the best interests of their estates.[14]   Indeed, the Debtors' intent to satisfy their Consent Obligations, at the request of the United States, has been reinforced in almost every order the Court has entered to date in these cases.

13.     Recently, in denying a request by homeowners for an official committee of borrowers, the Court recognized that "assuring compliance with consent orders and avoiding

---

[11]    Marano Declaration, Ex. 1 (DOJ/AG Settlement, Ex. I), ¶ 8.

[12]    *Id.*  The DOJ/AG Settlement does provide that a successor or purchaser "shall not be obligated to pay any of the amounts owed by the ResCap Parties or AFI under the [DOJ/AG Settlement]."  *Id.*

[13]    *See Notice of Filing of Supplemental Exhibits to Debtors' Motions for Entry of an Order Under Bankruptcy Code Section 363 and Bankruptcy Rule 6004 (I) Authorizing the Debtors to Compensate PricewaterhouseCoopers, LLP for Foreclosure Review Services in Furtherance of the Debtors' Compliance Obligations Under Federal Reserve Board Consent Order and (II) Reaffirming Granted in the GA Servicing Order* [ECF No. 1527], Ex. 10, ¶¶ 4–5.

[14]    *See, e.g., Debtors' Motion For Interim And Final Orders Under Sections 105(a), 361, 362, 363, 1107(a), And 1108 Of The Bankruptcy Code (I) Authorizing The Debtors To Continue In The Ordinary Course Of Business (A) Servicing Governmental Association Loans And (B) Foreclosure Activities Related To Certain Real Estate Owned By Fannie Mae, Freddie Mac, And Ginnie Mae; (II) Authorizing The Debtors To Pay Certain Prepetition Amounts Due To Critical Servicing Vendors And Foreclosure Professionals; (III) Granting Limited Stay Relief To Enable Borrowers To Assert Related Counter-Claims In Foreclosure Proceedings; (IV) Authorizing The Debtors To Use Cash Collateral Under the Fannie Mae EAF Facility And (V) Granting Related Relief*, and the *Debtors' Motion For Interim And Final Orders Under Sections 105(a), 362, 363, 1107(a), And 1108 Of The Bankruptcy Code (I) Authorizing The Debtors To Continue In The Ordinary Course Of Business (A) Servicing Non-GA Loans And (B) Sale Activities Related To Certain Loans In Foreclosure And Real Estate Owned Property; And (II) Granting Limited Stay Relief To Enable Borrowers To Assert Related Counter-Claims In Foreclosure And Eviction Proceedings* [ECF No. 57], ¶ 42.

6

additional liability from mortgage loan servicing and foreclosure activities is important to all creditors."[15]    The Court also noted that the "monitoring and sanctions for noncompliance with the borrower protections provided in the [DOJ/AG Settlement and Consent Order]" provide protections to borrowers, which differentiated this case from a recent case where an official committee of borrowers was appointed.[16]

**B.    The Sale Motion and Platform Sale**

14.    The Debtors filed the Motion on the Petition Date and subsequently filed an amended and restated purchase agreement with Nationstar Mortgage, LLC with the Court on June 28, 2012 (the "***Nationstar APA***") [ECF No. 534].   On October 23-24, 2012, the Debtors held an auction in accordance with the Court's previously entered sale procedures order.   As a result of the auction, the Debtors determined that Ocwen had submitted the highest and best bid for the Platform Sale in the form of the Ocwen APA, which was based upon the Nationstar APA, subject to final documentation and Court approval.[17]

15.    Notwithstanding the Debtors' obligations under the DOJ/AG Settlement and the Consent Order, the Ocwen APA does not provide that Ocwen will honor and perform all of the Debtors' Consent Obligations.[18]    Specifically, Section 6.16 of the Ocwen APA states:

> **Section 6.16 Consent Order and DOJ/AG Settlement**.   Sellers and Purchaser shall use their best efforts to, as promptly as is reasonably practicable after the date of this Agreement, amend on this Agreement (the "Section 6.16

---

[15]    *In re Residential Capital, LLC*, Case No. 12-12020, 2012 WL 5211083, at *5 (Bankr. S.D.N.Y. 2012).

[16]    *Id.* at 13.

[17]    After conclusion of the auction, Ally publicly announced in a press release on October 26, 2012 the launching of a process to explore strategic alternatives for Ally Bank's agency mortgage servicing rights ("MSR") portfolio and its business lending operations.   Ally coordinated with the Debtors and the Creditors' Committee regarding the timing of this process so as not to interfere with the Platform Sale process.

[18]    Ally noted in its previously filed limited objection that the Nationstar APA was also deficient in its treatment of the Consent Obligations.   *See infra* note 2.

Amendment"), on terms acceptable to each of Sellers, Purchaser and all applicable Governmental Entities, to address the treatment of (a) the Consent Order entered by the FRB and the FDIC on April 13, 2011 in the action styled *In the Matter of Ally Financial, Inc, et al.*, FRB Docket No. 11-020-B-HC & 11-020-B-DEO, FDIC-11-123b, with respect to an agreement among the FRB and the FDIC, on the one hand, and AFI, Ally Bank, ResCap, GMAC Mortgage, and their institution-affiliated parties, on the other hand, and (b) the Consent Judgment with accompanying exhibits entered by the United States District Court for the District of Columbia on April 5, 2012 (Docket # 13) in the action styled *United States of America, et al. v. Bank of America Corp., et al.*, No. 12-CV-00361, with respect to the settlement agreement among the plaintiffs in that action and AFI, ResCap, and GMAC Mortgage.[19]

Further, Section 8.1 of the Ocwen APA states:

**Section 8.1 Conditions to Obligations of Purchaser and Sellers**. The respective obligations of each party to consummate the Closing shall be subject to the satisfaction, or waiver by Purchaser and Sellers, on or prior to the Closing Date of all of the following conditions precedent: . . . (vii) <u>Section 6.16 Amendment</u>. The Section 6.16 Amendment shall have been agreed upon by each of Sellers, Purchaser and all applicable Governmental Entities and shall be in full force and effect.[20]

Thus, the terms of the Ocwen APA make clear that the Debtors have not yet complied with the Consent Obligations and provide only that Ocwen will "use its best efforts . . . to amend on this Agreement . . . on terms acceptable to each of Sellers, Purchaser and all applicable Governmental Entities, to address the treatment of [the Consent Order and DOJ/AG Settlement]."  The Ocwen APA also lists the Consent Order and the DOJ/AG Settlement as "Excluded Assets."[21]

16.    Ally is aware that discussions concerning Section 6.16 of the Ocwen APA are ongoing, and it appears that the Debtors seek to resolve the compliance issues after the Sale Hearing by amending the Ocwen APA as described in the above-quoted language in Section 6.16

---

[19]   Ocwen APA § 6.16.

[20]   Ocwen APA § 8.1

[21]   Ocwen APA § 2.3.

and adding the closing condition of Section 8.1.  These issues, however, must be resolved now in light of the facts that the compliance issues create significant closing risks and Nationstar Mortgage LLC will no longer be bound as a backup bidder after the Court approves the Ocwen APA.  Further, Ally will be asked to support the Debtors' estates and the transition of the Platform to Ocwen without being provided adequate assurance that the Debtors or Ocwen will perform the Consent Obligations.  Accordingly, Ally files this limited objection to preserve its rights while discussions concerning the Debtors' compliance with their regulatory obligations in relation to the Platform Sale continue.

## LIMITED OBJECTION

17.    Ally objects to the Motion because Ocwen has not agreed to perform and honor all of the Debtors' obligations under the Consent Order and the DOJ/AG Settlement and the Debtors have not otherwise ensured their performance of such obligations.  Under the Ocwen APA, Ocwen has agreed to use its "best efforts" to address the treatment of the Consent Order and the DOJ/AG Settlement, which include the Debtors' foreclosure review and loan modification obligations.  Ocwen has also excluded the Consent Order and the DOJ/AG Settlement from the assets it is acquiring.

18.    The Debtors are operating as subsidiaries of a United States bank holding company and, as such, must comply with all laws and regulations, including the Consent Obligations, regardless of the Debtors' chapter 11 filing.[22]  The DOJ/AG Settlement requires the

---

[22]    *See* 12 U.S.C. §§ 1841, *et seq.*; *see also* 28 U.S.C. § 959(b); *cf.*, *Midlantic Nat'l Bank v. N.J. Dep't. of Envtl. Prot.*, 474 U.S. 494, 502 (1986) ("Congress has repeatedly expressed its legislative determination that the trustee is not to have *carte blanche* to ignore nonbankruptcy law."); *Ohio v. Kovacs*, 469 U.S. 274, 285 (1985) ("We do not question that anyone in possession of the site [including the debtor] . . . must comply with the environmental laws of the State of Ohio."); *United States v. Hansen*, 262 F.3d 1217, 1238 (11th Cir. 2001) ("Bankruptcy does not insulate a debtor from environmental regulatory statutes."); *In re CMC Hartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992) ("Having been a debtor in bankruptcy does not authorize a firm to operate a nuisance today, or otherwise excuse it from complying with laws of general application."); *Cournoyer v. Lincoln*, 790 F.2d 971, 977 (1st Cir. 1986) ("[A] debtor in possession under Chapter 11 is not

9

Debtors to ensure that a purchaser of substantially all of the Debtors' assets, such as Ocwen,

honors and performs the obligations of the Debtors under the DOJ/AG Settlement.[23]  Likewise,

the Consent Order is binding upon the Debtors and their successors and assigns.[24]

19.    Further, the Debtors represented and warranted in the DOJ/AG Settlement that

they would not enter into a sale transaction for substantially all of their business without the

consent of AFI.  AFI agreed in the DOJ/AG Settlement that it would not consent to such a sale

transaction of the Debtors unless the Debtors ensured the continued performance of their

obligations under the DOJ/AG Settlement.[25]   AFI is similarly bound by the Supplemental

Agreement between it and the FRB.[26]

20.    The Debtors will not be in compliance with the regulatory obligations imposed by

the Consent Order and the DOJ/AG Settlement if they sell the Platform to Ocwen without

(a) requiring Ocwen to honor and perform the Debtors' Consent Obligations and (b) funding or

establishing an escrow to ensure the Debtors' performance of any of the obligations that will not

---

excused because of its bankruptcy from valid and enforceable state and local regulations."); *In re Am. Coastal Energy Inc.*, 399 B.R. 805, 810 (Bankr. S.D. Tex. 2009) ("A bankruptcy petition is not a grant of immunity. Bankrupt debtors are no different from any citizen in that they must comply with state and federal laws."); *In re Canarico Quarries, Inc.*, 466 F. Supp. 1333, 1339 (D.P.R. 1979) (stating that the goal under the Bankruptcy Act, which has similar goals as the Bankruptcy Code, "is to rehabilitate the debtor. . . .  [I]t is our understanding that such rehabilitation must be done within the law.  Under no circumstances can there by any rehabilitation outside the law.  Debtor must operate its business in full compliance with the laws and regulations of the State").

[23]    *See infra* note 10.

[24]    *See infra* note 9.

[25]    *See infra* note 12.

[26]    *See Notice of Filing of Supplemental Exhibits to Debtors' Motions for Entry of an Order Under Bankruptcy Code Section 363 and Bankruptcy Rule 6004 (I) Authorizing the Debtors to Compensate PricewaterhouseCoopers, LLP for Foreclosure Review Services in Furtherance of the Debtors' Compliance Obligations Under Federal Reserve Board Consent Order and (II) Reaffirming Granted in the GA Servicing Order* [ECF No. 1527], Ex. 10, ¶¶ 4–5.

K&E 24187485

be performed by Ocwen.[27]  The fact that the Debtors seek to sell the Platform to Ocwen pursuant

to section 363 of the Bankruptcy Code free and clear of interests does not relieve the Debtors or

Ocwen from complying with the Consent Obligations.  A debtor cannot extinguish regulatory

obligations by selling its assets.[28]  Because the Consent Order and the DOJ/AG Settlement

impose regulatory obligations upon the Debtors, such as the consumer relief and foreclosure

review obligations, the Debtors cannot simply sell the Platform free and clear of the Consent

Obligations.

21.    Further, ensuring the Debtors' continued compliance with the Consent

Obligations is consistent with the policies of the Bankruptcy Code.  Congress did not intend for

the Bankruptcy Code to provide debtors with a mechanism to avoid their regulatory

obligations.[29]  Moreover, because of the Debtors' continued compliance with the Consent

Obligations and Ally's support and cooperation during these chapter 11 cases, the Debtors were

able to conduct a successful auction for the sale of their Platform as a going-concern, thereby

realizing substantially more value than they would have had the Debtors not complied with the

---

[27]    The Debtors previously agreed to escrow proceeds from the Platform Sale for the purpose of funding any and
all remaining Consent Obligations after the sale as part of the Settlement and Plan Sponsor Agreement between
the Debtors and AFI, dated as of May 14, 2012.  *See Affidavit of James Whitlinger, Chief Financial Officer of
Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 6], Ex. 8
(Settlement and Plan Sponsor Agreement), Art. III, § 3.1(c).

[28]    *Cf. In re CMC Hartland Partners*, 966 F.2d at 1147 ("Just as security interests and other liens pass through a
bankruptcy unaffected, and stick with the asset on transfer to any new buyer, so a statutory obligation attached
to current ownership of the land survives bankruptcy.").

[29]    *See In re Berry Estates, Inc.*, 812 F.2d 67, 71 (2d Cir. 1987) ("Congress did not intend for . . . the bankruptcy
court be a haven for wrongdoers."); *In re Mattiace Indus.*, 76 B.R. 44, 47 (Bankr. E.D.N.Y. 1987) ("It is
implicit that the legislative intention of Congress was not to permit the operation of a business for profit that
constitutes a threat to the health and welfare of the public, nor that the bankruptcy court serve as a refuge for
Chapter 11 polluters.").  Congress' intent to prevent debtors from using the bankruptcy court to abrogate their
regulatory obligations is seen in the "governmental unit" exception to the automatic stay in the Bankruptcy
Code, whereby proceedings commenced by a governmental unit against the debtor to enforce its police and
regulatory powers, including the enforcement of a judgment, are not stayed.  The purpose of requiring debtors
to fulfill their regulatory obligations during bankruptcy and the "governmental unit" exception is to prevent
debtors from frustrating necessary governmental functions by seeking refuge in bankruptcy court.  *See S.E.C. v.
Brennan*, 230 F.3d 65, 71 (2d Cir. 2000).

Consent Obligations and been forced to cease business operations and sell their assets piecemeal. Now, the Debtors will require additional support and cooperation from Ally to transition the Platform to Ocwen.  The Debtors should be required to provide adequate assurance that they and Ocwen will comply with the Consent Obligations, which the Debtors explicitly agreed to perform at the outset of these cases in order to obtain the unprecedented support and cooperation that they have received from Ally to date.

22.     Finally, approval of the Ocwen APA as currently drafted puts the closing of the Platform Sale at risk because such closing is conditioned upon obtaining a subsequent agreement concerning the Consent Obligations.  This is especially problematic because once the Ocwen APA is approved by the Court, Nationstar Mortgage LLC will no longer be bound as the backup bidder.  In addition, due to the uncertainty that will exist, Government-sponsored enterprises and other contract counterparties may cancel their servicing contracts.  Lastly, the Debtors' breach of the Consent Order and the DOJ/AG Settlement would implicate several key agreements that are part of Ally's integrated support package.[30]

## <u>RESERVATION OF RIGHTS</u>

23.     Ally respectfully reserves its right to amend, supplement, or otherwise modify this limited objection and reservation of rights based on (a) revisions to the Ocwen APA and (b)

---

[30] *See, e.g., Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* ¶¶ 18(a)(3), 20(d), 20(g) [ECF No. 491]; *Stipulation and Order Reserving Rights with Respect to Debtors' Motion for Interim and Final Orders under Bankruptcy Code Sections 105(a) and 363 Authorizing the Debtors to Continue to Perform under the Ally Bank Servicing Agreement in the Ordinary Course of Business* ¶ 12(b) [ECF No. 1420]; *Amended and Restated Servicing Agreement between Ally Bank and GMAC Mortgage*, dated as of May 11, 2012 § 9.01(a)(7) [ECF No. 47, Ex. C]; *Amended and Restated Master Mortgage Loan Purchase and Sale Agreement between Ally Bank and GMAC Mortgage, dated as of May 1, 2012* § 6.2(f) [ECF No. 44, Ex. C].

12

discussions with its regulators, the DOJ, and parties to the Consent Order and DOJ/AG Settlement.

## <u>CONCLUSION</u>

24.     For the foregoing reasons, Ally requests that the Motion be denied insofar as the Debtors do not comply with the Consent Obligations.  The Court should approve the Platform sale only after requiring that (a) Ocwen continues to perform and be bound by the Consent Obligations and (b) the Debtors fund or escrow an amount sufficient to pay for any Consent Obligations for past practices (*e.g.*, loan modification obligations and foreclosure review obligations).

New York, New York
Dated: November 5, 2012

*/s/ Ray C. Schrock*
Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank

K&E 24187485

## **Exhibit A**

## **Order of Assessment**

UNITED STATES OF AMERICA
BEFORE THE
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

|  |  |
|---|---|
| In the Matter of<br><br>ALLY FINANCIAL INC.<br>Detroit, Michigan<br><br>RESIDENTIAL CAPITAL, LLC<br>Minneapolis, Minnesota<br><br>and<br><br>GMAC MORTGAGE, LLC<br>Fort Washington, Pennsylvania | Docket No.  12-006-CMP-HC<br>                     12-006-CMP-DEO<br><br><br>Order of Assessment of a Civil<br>Money Penalty Issued Upon Consent<br>Pursuant to the Federal Deposit<br>Insurance Act, as Amended |

WHEREAS, Ally Financial Inc., Detroit, Michigan ("Ally Financial"), a registered bank holding company, indirectly owns and controls Ally Bank (f/k/a GMAC Bank), Midvale, Utah, a state nonmember bank, and numerous direct and indirect nonbank subsidiaries, including Residential Capital, LLC, Minneapolis, Minnesota ("ResCap"), and its direct and indirect subsidiaries, including GMAC Mortgage, LLC, Fort Washington, Pennsylvania ("GMAC Mortgage"), and its subsidiaries.  Ally Financial, f/k/a GMAC LLC, became a bank holding company on December 24, 2008, following approval by the Board of Governors of the Federal Reserve System (the "Board of Governors") pursuant to section 3(a)(1) of the Bank Holding Company Act (12 U.S.C. § 1842(a)(1)), and conversion of Ally Bank from an industrial loan company to a state-chartered insured nonmember bank;

WHEREAS, Ally Financial engages in the business of servicing residential mortgage loans through various indirect subsidiaries, including GMAC Mortgage and its subsidiaries (collectively, the "Mortgage Servicing Companies").  The Mortgage Servicing Companies service residential mortgage loans that are held in the portfolios of (a) Ally Bank and GMAC Mortgage; (b) the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Government National Mortgage Association; and (c) various investors, including securitization trusts pursuant to Pooling and Servicing Agreements and similar agreements (collectively, the "Servicing Portfolio").  The Mortgage Servicing Companies have substantial responsibilities with respect to the Servicing Portfolio for the initiation and handling of foreclosure proceedings, and loss mitigation activities ("Loss Mitigation" or "Loss Mitigation Activities" include activities related to special forbearances, repayment plans, modifications, short refinances, short sales, cash-for-keys, and deeds-in-lieu of foreclosure);

WHEREAS, the Mortgage Servicing Companies collectively are the fifth largest servicer of residential mortgages in the United States and service a portfolio of 2.5 million residential mortgage loans.  During the recent financial crisis, a substantially larger number of residential mortgage loans became past due than in earlier years.  Many of the past due mortgages have resulted in foreclosure actions.  From January 1, 2009 to December 31, 2010, the Mortgage Servicing Companies completed 89,998 foreclosure actions, representing approximately 4 percent of the Servicing Portfolio over such time period;

WHEREAS, the Mortgage Servicing Companies, in connection with the process leading to certain foreclosures involving the Servicing Portfolio, allegedly:

(a)      Filed or caused to be filed in state courts and in connection with bankruptcy proceedings in federal courts numerous affidavits executed by employees of the

2

Mortgage Servicing Companies or employees of third-party providers making various

assertions, such as the ownership of the mortgage note and mortgage, the amount of

principal and interest due, and the fees and expenses chargeable to the borrower, in which

the affiant represented that the assertions in the affidavit were made based on personal

knowledge or based on a review by the affiant of the relevant books and records, when, in

many cases, they were not based on such knowledge or review;

(b)    Filed or caused to be filed in courts in various states and in connection with

bankruptcy proceedings in federal courts or in the local land record offices, numerous

affidavits and other mortgage-related documents that were not properly notarized,

including those not signed or affirmed in the presence of a notary;

(c)    Litigated foreclosure and bankruptcy proceedings and initiated non-judicial

foreclosures without always confirming that documentation of ownership was in order at

the appropriate time, including confirming that the promissory note and mortgage

document were properly endorsed or assigned and, if necessary, in the possession of the

appropriate party;

(d)    Failed to respond in a sufficient and timely manner to the increased level of

foreclosures by increasing financial, staffing, and managerial resources to ensure that the

Mortgage Servicing Companies adequately handled the foreclosure process; and

failed to respond in a sufficient and timely manner to the increased level of Loss

Mitigation Activities to ensure timely, effective and efficient communication with

borrowers with respect to Loss Mitigation Activities and foreclosure activities; and

(e)    Failed to have adequate internal controls, policies and procedures, compliance

risk management, internal audit, training, and oversight of the foreclosure process,

including sufficient oversight of outside counsel and other third-party providers handling

foreclosure-related services with respect to the Servicing Portfolio;

WHEREAS, as evidenced by these alleged deficiencies at the Mortgage Servicing

Companies, Ally Financial allegedly failed to provide effective oversight with respect to the loan

servicing, Loss Mitigation, foreclosure activities, and related functions of the Mortgage

Servicing Companies, including the Mortgage Servicing Companies' risk management, audit,

and compliance programs, vendor management, document execution practices, and staffing and

managerial resources as they pertain to those activities and related functions;

WHEREAS, on April 13, 2011, the Board of Governors and the Federal Deposit

Insurance Corporation, on the one hand, and Ally Financial, ResCap, the Mortgage Servicing

Companies, and Ally Bank, on the other hand, entered into a Consent Order designed to correct

the aforementioned alleged conduct (the "Consent Order");

WHEREAS, the conduct which was the subject of the Consent Order allegedly

constitutes unsafe or unsound practices in conducting the affairs of Ally Financial, ResCap and

the Mortgage Servicing Companies within the meaning of section 8 of the Federal Deposit

Insurance Act, as amended (12 U.S.C. § 1818) (the "FDI Act");

WHEREAS, the Board of Governors issues this Order of Assessment of a Civil Money

Penalty Issued Upon Consent (the "Consent Assessment Order") against Ally Financial, ResCap,

and the Mortgage Servicing Companies in conjunction with the Consent Order;

WHEREAS, Ally Financial, ResCap, and the Mortgage Servicing Companies have taken

steps to comply with the Consent Order and continue to take additional steps;

WHEREAS, on February 9, 2012, Ally Financial, ResCap, and/or the Mortgage

Servicing Companies (the "Ally Parties") entered into an agreement with the United States,

4

acting through the United States Department of Justice, and with the Attorneys General of various states to settle certain potential civil claims against the Ally Parties for their conduct, among other things, in connection with the servicing of mortgage loans by the Mortgage Servicing Companies (the "Settlement Agreement");

WHEREAS, as part of the Settlement Agreement the Ally Parties agreed to provide consumer relief, which may include mortgage principal reductions or refinancing, and other assistance to certain residential mortgage borrowers (the "Borrower Assistance"). As part of the Settlement Agreement, the Ally Parties also agreed that certain payments would be made to the United States (the "Hard Dollar Payments"). Portions of those payments may go directly to various agencies of the federal government (the "Federal Payments"). The amount of Borrower Assistance provided by the Ally Parties, together with the Hard Dollar Payments made pursuant to the Settlement Agreement, is expected to be equal to or greater than $310,000,000;

WHEREAS, Ally Financial, ResCap, and the Mortgage Servicing Companies have consented to the assessment of a civil money penalty in the amount of $207,000,000 by the Board of Governors (the "CMP") pursuant to section 8(b)(3) and (i)(2)(B) of the FDI Act (12 U.S.C. §§1818(b)(3) and 1818(i)(2)(B)) for allegedly unsafe or unsound practices described above, which penalty shall be remitted by the Board of Governors to the extent, in compliance with this Consent Assessment Order: (i) the Ally Parties provide the Borrower Assistance pursuant to the Settlement Agreement or make the Federal Payments pursuant to the Settlement Agreement; or (ii) Ally Financial, ResCap, and the Mortgage Servicing Companies provide funding for nonprofit housing counseling organizations pursuant to a plan acceptable to the Federal Reserve Bank of Chicago (the "Reserve Bank");

WHEREAS, the boards of directors of Ally Financial, ResCap, and the Mortgage Servicing Companies, at duly constituted meetings, adopted resolutions authorizing and directing Michael A. Carpenter, Thomas F. Marano and Steven M. Abreu to enter into this Consent Assessment Order on behalf of Ally Financial, ResCap, and the Mortgage Servicing Companies, respectively, and consenting to compliance with each and every applicable provision of this Consent Assessment Order by Ally Financial, ResCap, and the Mortgage Servicing Companies, and their institution-affiliated parties, as defined in sections 3(u) and 8(b)(3) of the FDI Act (12 U.S.C. §§ 1813(u) and 1818(b)(3)), and waiving any and all rights that Ally Financial, ResCap, and the Mortgage Servicing Companies may have pursuant to section 8 of the FDI Act (12 U.S.C. § 1818), including, but not limited to: (i) the issuance of a notice of assessment of civil money penalty; (ii) a hearing for the purpose of taking evidence on any matters set forth in this Consent Assessment Order; (iii) judicial review of this Consent Assessment Order; (iv) contest the issuance of this Consent Assessment Order by the Board of Governors; and (v) challenge or contest, in any manner, the basis, issuance, validity, terms, effectiveness or enforceability of this Consent Assessment Order or any provision hereof.

NOW, THEREFORE, before the filing of any notices, or taking of any testimony or adjudication of or finding on any issues of fact or law herein, and without this Consent Assessment Order constituting an admission by Ally Financial, ResCap, or the Mortgage Servicing Companies of any allegation made or implied by the Board of Governors in connection with this matter, and solely for the purpose of settling this matter without a formal proceeding being filed and without the necessity for protracted or extended hearings or testimony, it is hereby ORDERED by the Board of Governors, pursuant to sections 8(b)(3) and (i)(2)(B) of the FDI Act (12 U.S.C. §§1818(b)(3) and 1818(i)(2)(B)), that:

1.      Ally Financial, ResCap, and the Mortgage Servicing Companies are hereby jointly and severally assessed a CMP in the amount of $207,000,000 to be paid as provided in this Consent Assessment Order.

2.      Pursuant to section 8(i)(2)(F) of the FDI Act (12 U.S.C. § 1818(i)(2)(F)), the Board of Governors shall remit up to $207,000,000 of the CMP by an amount equivalent to the aggregate dollar value of the Borrower Assistance provided and Federal Payments made by the Ally Parties pursuant to the Settlement Agreement (with crediting to be determined pursuant to the same mechanism used in the Settlement Agreement, provided that no amount shall be remitted for bonuses or incentives received by or credited to the Ally Parties), under the following conditions:

(i)  The Borrower Assistance is provided for the remedial programs specified in the Settlement Agreement in accordance with the terms and conditions specified in the Settlement Agreement for such programs;

(ii)  Any documents associated with the Borrower Assistance provided and Federal Payments made by the Ally Parties pursuant to the Settlement Agreement are made available to the Reserve Bank upon request;

(iii)  On a quarterly basis and until the earlier of the date on which the Settlement Agreement's requirements pertaining to the Borrower Assistance and Federal Payments are fully satisfied or on which the CMP has been fully satisfied, Ally Financial, ResCap, and the Mortgage Servicing Companies submit to the Reserve Bank a detailed report and accounting on the Borrower Assistance provided and Federal Payments made pursuant to the Settlement Agreement and a certification by Ally Financial, ResCap, and the Mortgage Servicing Companies that any such Borrower Assistance provided and Federal Payments made were

provided and made in full compliance with the terms and conditions of the Settlement

Agreement; and

(iv)  Within the earlier of 30 days of full satisfaction of the terms and conditions of the

Settlement Agreement's requirements pertaining to Borrower Assistance and Federal Payments

or two years after the date of execution of this Consent Assessment Order, Ally Financial,

ResCap, and the Mortgage Servicing Companies submit to the Reserve Bank a certification that

any Borrower Assistance provided and Federal Payments made pursuant to the Settlement

Agreement were provided and made in full compliance with the terms and conditions of the

Settlement Agreement.

3.    Pursuant to section 8(i)(2)(F) of the FDI Act (12 U.S.C. § 1818(i)(2)(F)), the

Board of Governors shall also remit up to $207,000,000 of the CMP, to the extent not remitted

pursuant to paragraph 2, by an amount equivalent to the aggregate amount funds expended by

Ally Financial, ResCap, and the Mortgage Servicing Companies on funding for nonprofit

housing counseling organizations, approved by the U.S. Department of Housing and Urban

Development, to provide counseling to borrowers who are at risk of or are in default or

foreclosure, or to provide assistance to borrowers in connection with the independent foreclosure

reviews required by the Consent Order, under the following conditions:

(i)  Within 30 days prior to the making of any expenditures pursuant to this paragraph 3,

Ally Financial, ResCap, and the Mortgage Servicing Companies submit to the Reserve Bank an

acceptable written plan for making such expenditures, including the manner by which such

expenditures shall be credited to Ally Financial, ResCap, and the Mortgage Servicing

Companies; and

(ii)  Ally Financial, ResCap, and the Mortgage Servicing Companies fully comply with the accepted plan.

4.      No later than two years after the date of execution of this Consent Assessment Order, Ally Financial, ResCap, and the Mortgage Servicing Companies shall pay any portion of the CMP that has not been remitted pursuant to paragraphs 2 or 3 of this Consent Assessment Order as of such date, plus interest on such portion calculated from the date of execution of this Consent Assessment Order at the rate set forth in 28 U.S. C. § 1961.

5.      Payment of the CMP pursuant to paragraph 4 of this Consent Assessment Order shall be made by a Fedwire transfer to the Federal Reserve Bank of Richmond, ABA No. 05 1000033, to the order of the Board of Governors General Fund, FRB General Ledger Account number 220 400 010, which penalties the Board of Governors shall deposit on behalf of the Board of Governors into the United States Treasury as required by section 8(i)(2)(J) of the FDI Act (12 U.S.C. § 1818(i)(2)(J)).

**Notices**

6.      All communications regarding this Order shall be sent to:

(a)      Mr. James W. Nelson
          Senior Vice President
          Supervision and Regulation Department
          Federal Reserve Bank of Chicago
          230 South LaSalle Street
          Chicago, Illinois  60604-1413

(b)     Ms. Barbara Yastine
        Chief Administrative Officer
        Ally Financial Inc.
        1177 Avenue of the Americas
        New York, NY 10036

        with copies to:

        Mr. Daniel Soto
        Chief Compliance Officer
        Ally Financial Inc.
        440 South Church Street
        Charlotte, NC 28202

        William B. Solomon, Jr., Esq.
        General Counsel
        Ally Financial Inc.
        200 Renaissance Center
        9th Floor
        Detroit, MI 48265

        Mark H. Weintraub
        Executive Vice President – Mortgage Servicing Remediation Oversight
        Ally Financial Inc.
        440 South Church Street
        Charlotte, NC 28202

(c)     Mr. Thomas F. Marano
        Chairman & Chief Executive Officer - ResCap
        Residential Capital, LLC
        1177 Avenue of the Americas
        New York, NY 10036

        with copies to:

        Tammy P. Hamzehpour, Esq.
        General Counsel - ResCap
        1100 Virginia Drive
        Fort Washington, PA 19034

(d)     GMAC Mortgage, Inc.
        c/o Mr. Thomas F. Marano
        Chairman & Chief Executive Officer - ResCap
        Residential Capital, LLC
        1177 Avenue of the Americas
        New York, NY 10036

10

with copies to:

Tammy P. Hamzehpour, Esq.
General Counsel - ResCap
1100 Virginia Drive
Fort Washington, PA 19034

**Miscellaneous**

7.    The provisions of this Consent Assessment Order shall be binding on Ally

Financial, ResCap, the Mortgage Servicing Companies, and each of their institution-affiliated

parties in their capacities as such, and their successors and assigns.

8.    Each provision of this Consent Assessment Order shall remain effective and

enforceable until stayed, modified, terminated, or suspended in writing by the Reserve Bank.

9.    Notwithstanding any provision of this Consent Assessment Order, the Reserve

Bank may, in its sole discretion, grant written extensions of time to Ally Financial, ResCap, and

the Mortgage Servicing Companies to comply with any provision of this Consent Assessment

Order.

10.    Except as provided for in this Consent Assessment Order, the Board of Governors

hereby releases and discharges Ally Financial, ResCap, the Mortgage Servicing Companies, and

their affiliates, successors, and assigns from all potential liability that has been or might have

been asserted by the Board of Governors based on the conduct that is the subject of this Consent

Assessment Order, to the extent known to the Board of Governors as of the effective date of this

Consent Assessment Order.  The foregoing release and discharge shall not preclude or affect any

right of the Board of Governors to determine and ensure compliance with the Consent Order or

this Consent Assessment Order, or any proceedings brought by the Board of Governors to

enforce the terms of the Consent Order or this Consent Assessment Order.

By Order of the Board of Governors effective this 10th day of February, 2012.

ALLY FINANCIAL INC.                                    BOARD OF GOVERNORS OF THE
                                                                           FEDERAL RESERVE SYSTEM


By:  /s/ Michael A. Carpenter                    By:  /s/ Jennifer J. Johnson
          Michael A. Carpenter                             Jennifer J. Johnson
          Chief Executive Officer                          Secretary of the Board


RESIDENTIAL CAPITAL, LLC


By:  /s/ Thomas F. Marano
          Thomas F. Marano
          Chairman & Chief Executive Officer


GMAC MORTGAGE, LLC


By:  /s/ Steven M. Abreu
          Steven M. Abreu
          President