**Objection Deadline: November 5, 2012 at 5:00 p.m. (Eastern time)**

PREET BHARARA
United States Attorney for the
Southern District of New York
By:  JOSEPH N. CORDARO
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2745
Facsimile: (212) 637-2686
E-mail: joseph.cordaro@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS**
**OF THE UNITED STATES OF AMERICA TO THE DEBTORS' SALE MOTION**

1.      The United States of America (the "United States" or the "Government"), by its

attorney Preet Bharara, United States Attorney for the Southern District of New York,

respectfully submits this Limited Objection and Reservation of Rights in connection with the

*Debtors' Motion Pursuant to 11 U.S.C. §§105 , 363(b), (f), and (m), 365 and 1123, and Fed. R.*

*Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale*

*Procedures, Including Break-Up Fee Form and Expense Reimbursement; (II) Scheduling Bid*

*Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV)*

*Granting Related Relief and (B) (I) Authorizing the Sale of Certain Assets Free and Clear of*

*Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset*

*Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain*

*Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief*
[Docket No. 61] (the "Sale Motion").[1]

2.      On October 25, 2012, the Debtors filed the *Notice of Successful Bidders at the Auctions and Sales of (A) the Platform Assets to Ocwen Loan Servicing LLC and (B) the Whole Loan Assets to Berkshire Hathaway Inc.* [Docket No. 1960] (the "Notice") which disclosed that the Debtors had selected Ocwen Loan Servicing, LLC ("Ocwen") as the successful bidder for certain defined Purchased Assets, also known as the "Platform Assets," and Nationstar Mortgage LLC ("Nationstar") as the back-up bidder for such assets.  *See* Notice at 3.  On November 3, 2012, the Debtors filed the *Amended Notice of Successful Bidders at the Auctions and Sales of (A) the Platform Assets to Ocwen Loan Servicing LLC and (B) the Whole Loan Assets to Berkshire Hathaway Inc.* [Docket No. 2050] (the "Amended Notice"), which included an Asset Purchase Agreement (the "Ocwen APA") between Ocwen and certain of the debtors providing, *inter alia*, that Ocwen will acquire the Platform Assets.  *See* Amended Notice at 2 & Ex. 1.

3.      The United States has been in active negotiations with the Debtors and other interested parties concerning the issues discussed in this Limited Objection since the proposed sale was first announced in May 2012.  The majority of these discussions involved the Debtors and the Stalking Horse Bidder, Nationstar.  The Government has been in negotiations with Ocwen since it emerged as the successful bidder for the Platform Assets.  However, those negotiations were hampered by Hurricane Sandy, which caused the closure of the United States Attorney's Office, as well as the Bankruptcy Court, for one full week.  The negotiations have now resumed.  While the United States is hopeful that all outstanding issues will be resolved

---

[1]      On October 26, 2012, the Debtors' counsel granted the United States an extension to object to the Sale Motion until November 5, 2012 while the parties attempted to reach a consensual resolution of the Government's objections.  Capitalized terms not defined herein have the same meaning as indicated in the Sale Motion.

prior to the Sale Hearing on November 19, 2012, they have not been resolved to date, thus
necessitating the filing of this Limited Objection and Reservation of Rights.

## A.     The DOJ/AG Settlement

4.      One of the Government's primary concerns in this bankruptcy has been the
treatment of the obligations of certain debtors to the United States and 49 state attorneys general
under the historic mortgage servicing settlement agreement reached earlier this year (the
"DOJ/AG Settlement").  Under the DOJ/AG Settlement and accompanying consent judgments
filed in the United States District Court for the District of Columbia in the matter styled *United
States of America v. Bank of America Corp.,* No. 12-cv-00361-RCC, in exchange for a release of
claims alleging a variety of misconduct that contributed to the Nation's housing crisis, debtors
Residential Capital, LLC, GMAC Mortgage, LLC ("GMAC"), Residential Funding Company,
LLC (the "ResCap Parties"), and non-debtor Ally Financial, Inc., along with four other major
servicers, agreed to, in addition to $25 billion in cash payments to governments and relief to
borrowers, broad reforms that will reduce consumer confusion, improve service, and ensure
more accurate representations in foreclosure and bankruptcy proceedings.  To ensure that the
reforms are fully implemented, the servicers agreed to oversight by an independent monitor, cash
payments for violations, and enforcement in the district court.

5.      In recognition of the financial situation of the ResCap Parties and certain of their
affiliates at the time of the settlement, the parties also agreed to an Addendum that was annexed
to the Consent Judgment as Exhibit I.  *See Bank of America Corp.,* cited *supra* ¶ 4, Dkt. # 13.
The Addendum provides assurances of continued performance of the Servicers' obligations in
the event of certain "Transformative Transactions," including "a sale of all or substantially all
of [the ResCap Parties'] assets . . . or a reorganization or similar transaction."  Consent J., Ex. I

at I-11.  Among other things, the ResCap Parties agreed to "requir[e] any successor or purchaser

of substantially all the assets (or assets that together are material to the performance of the

obligations of the ResCap Parties under the Consent Judgment) of a ResCap party to honor and

perform the obligations (in the case of a purchase or other acquisition of assets, to honor and

perform the obligations with respect to those assets) under the Consent Judgment," with the

exception of any monetary amounts owed by the ResCap parties under the Consent Judgment.

*Id.* at I-12.  These excepted monetary amounts are an exception to the obligations that are

otherwise passed on to the Servicer's successors and assignees.

6.       As indicated in the *Statement of the United States of America Concerning

Debtors' Motion to Approve Sale Procedures* [Dkt. No. 290], filed on June 11, 2012, pursuant to

Section 2.3 of the Asset Purchase Agreement between Nationstar and certain of the Debtors (the

"Nationstar APA"), the DOJ/AG Settlement was designated an "Excluded Asset," *i.e.,* an asset

that the purchaser would not acquire under the APA.  *See* June 11 Statement of the U.S. at ¶ 9.

In addition, Section 6.16 of the Nationstar APA provided that the purchaser of Debtors'

mortgage origination and servicing businesses would comply with some of the Debtors' non-

monetary obligations under the agreement, but not other critical non-monetary obligations

designed to protect homeowners from future occurrences of mortgage-related abuse and fraud.

*See id.* at ¶ 10.  The Government also noted that the Nationstar APA provided no enforcement

mechanism whereby the Government could seek specific performance against the purchaser for

failure to perform the non-monetary obligations.  *See id*.  These are matters of great concern to

the United States because the continued fulfillment by the purchaser of the non-monetary

obligations of the DOJ/AG Settlement is critical to protecting homeowners and deterring future

mortgage loan servicing and foreclosure abuses and fraud.  The Government thus reserved its

right to object to any sale of assets that does not provide for the continued fulfillment by the purchaser of the non-monetary obligations of the DOJ/AG Settlement.  *See id.* ¶ 11.

7.      The Government had discussions with Nationstar and other prospective purchasers, including Ocwen, concerning this issue throughout 2012.  Significant strides have been made in those negotiations.  In the Ocwen APA, for example, Section 6.16 has been rewritten.  That section now provides that Ocwen and the Debtors will use best efforts to address the DOJ/AG Settlement in a manner satisfactory to all parties, including the United States, and to amend the Ocwen APA as soon as reasonably practicable after the date of the Ocwen APA.  The negotiations are still ongoing and, the Government hopes, nearing a resolution.  Nevertheless, until such a resolution is achieved, the Government reiterates its objection to the Ocwen APA, which does not expressly provide for full compliance by the purchaser with the non-monetary obligations of the DOJ/AG Settlement, or an appropriate enforcement mechanism with respect to those obligations.

**B.      Treasury HAMP Contracts**

8.      By the Sale Motion, the Debtors seek, among other things, to assume and assign certain executory contracts and unexpired leases in connection with the sale of the Purchased Assets to the Successful Bidder.  In connection therewith, the Debtors filed the *First Supplemental Notice of (i) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property, and Unexpired Leases of Nonresidential Real Property and (ii) Cure Amounts Related Thereto*, dated September 14, 2012 [Docket No. 1459] (the "Supplemental Notice").  In Exhibit 1 to the Supplemental Notice, the Debtors identified two contracts between GMAC and the Federal National Mortgage Association (commonly known as "Fannie Mae") as financial agent of the

5

United States and one contract between GMAC and the Department of the Treasury ("Treasury")

to be assumed and assigned to Nationstar pursuant to the Nationstar APA.[2]

9.      On September 28, 2012, the United States filed a limited objection and

reservation of rights to the Supplemental Notice [Docket No. 1658] (the "Cure Objection")

which, among other things, objected to the assumption and assignment of the Contracts because

the cure amount of $0.00 purports to calculate the Debtors' obligations under the Contracts as of

the petition date, May 14, 2012, not the date of the assumption as required by section 365 of the

Bankruptcy Code.  *See* 11 U.S.C. § 365(b)(1)(A) ("if there has been a default in an executory

contract or unexpired lease of the debtor," the contract or lease may not be assumed unless "at

the time of assumption of such contract or lease," the trustee "cures, or provides adequate

assurance that [it] will promptly cure such default . . . .").  In addition, by the Cure Objection, the

Government objected to the assumption and assignment of the Contracts to the extent that neither

the Successful Bidder nor the Debtors had provided adequate assurance to the Government that

they will assume all outstanding liabilities under the Contracts, including the obligation to repay

the Government for overpayments of financial incentives attributable to the servicer's

pre-assumption errors.

10.     As described more fully in the Cure Objection, the SPAs grant the Government

the right to recover any overpayment of financial incentives attributable to the discovery of

errors in connection with GMAC's participation in the Make Home Affordable Program.

---

[2]      The Government contracts identified on the Supplemental Notice include: (i) the
Commitment to Purchase Financial Instrument and Servicer Participation Agreement/Home
Affordable Modification Program (HAMP) (the "Original SPA"), (ii) the Amended and Restated
Commitment to Purchase Financial Instrument and Servicer Participation Agreement/Home
Affordable Modification Program (HAMP), which amended and restated the Original SPA (the
"Amended SPA," collectively with the Original SPA, the "SPAs"), and (iii) the Treasury
Servicer Participation Agreement/Hardest Hit Fund (collectively, the "Contracts").  *See Cure
Objection* (defined *infra* at ¶ 9) at ¶ 2.

Incentives paid to GMAC are paid on a monthly basis under the SPAs, and adjustments for such

errors (discovered as a result of periodic audits or otherwise) typically occur on a monthly basis

and historically have been effected by the Government offsetting the amount owed by GMAC

against any future incentive payments owed to GMAC.  In reviewing its records, the

Government has determined that the average monthly recovery for the last 12-month period from

GMAC in connection with such errors has been approximately $26,000.[3]

11.     Subsequent to the filing of the Cure Objection, Debtors selected Ocwen as the

successful bidder for the Platform Assets and Nationstar as the back-up bidder for such assets.

Debtors filed the Ocwen APA on November 3, 2012.  No filing to date, including the Ocwen

APA, indicates whether the Contracts would be assumed and assigned to Ocwen in connection

with its bid or the date of any proposed assumption.  Nor does any filing provide adequate

assurance that the Debtors and/or the Successful Bidder would assume all outstanding liabilities

under the Contracts, as they are required to do.  *See In re MF Global Holdings, Ltd.*, 466 B.R.

239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and

rejected in part.").

12.     As of the date of this Limited Objection, despite efforts by the parties to resolve

the Cure Objection, the parties were unable to reach a consensual resolution prior to the

objection deadline.  Accordingly, to preserve its rights in the event the parties are not able to

achieve a consensual resolution prior to the November 19, 2012 Sale Hearing, the Government

objects to the Sale Motion to the extent the Debtors seek authority to assume and assign the

Contracts to the Successful Bidder without satisfying section 365 of the Bankruptcy Code,

including (i) curing or providing adequate assurance that pre-assumption defaults arising under

---

[3]     This amount reflects a downward adjustment from the monthly average set forth in the
Cure Objection, which was approximately $30,000 per month over the last 12-month period.

the Contracts will be cured, (ii) providing adequate assurance that the Successful Bidder

(whether Ocwen or Nationstar) will be able to perform under the Contracts following the

assignment, and (iii) providing adequate assurance that either the Debtors or the Successful

Bidder will assume all of the liabilities arising under the Contracts, including the obligation to

repay the Government for financial incentive overpayments attributable to pre-assumption errors

by the servicer that have not yet been discovered by the Government and may arise

post-assumption.

13.     This Limited Objection is without prejudice to the Cure Objection.  The

Government specifically reserves its right to amend, supplement or otherwise modify this

Limited Objection and assert such other and further objections or responses to a proposed

assumption by the Debtors and assignment to the Successful Bidder of the Contracts based on

additional information that may be provided in connection with the terms of Ocwen's bid or with

respect to any supplemental or amended notices or pleadings filed by the Debtors or any other

party in connection with the Sale Motion.  In addition, notwithstanding any resolution or

determination made in connection with the Debtors and/or a successor-servicer's rights and

liabilities under the Contracts, the Government reserves all of its rights and remedies under the

Contracts with respect to other third-parties.

**C.     The Ginnie Mae Guaranty Agreements**

14.     The United States has an additional objection related to certain Guaranty

Agreements to which the Government National Mortgage Association ("Ginnie Mae") and

debtor GMAC Mortgage are parties.  The Ginnie Mae Guaranty Agreements govern all of

GMAC Mortgage's obligations as a Ginnie Mae-approved issuer of mortgage backed securities.

As indicated in the *Statement of the United States of America on Behalf of the Government*

8

*National Mortgage Association Concerning Debtors' Motions to Authorize Continued*

*Origination and Servicing Activities (Docket Nos. 44 and 57)* [Dkt. No. 225], filed on June 5,

2012, the Government did not interpret the Debtors' filing of separate motions for interim and

final orders authorizing the continuation of loan origination of servicing activities as an attempt

to bifurcate origination and servicing responsibilities in a manner that would result in the sale of

mortgages backing Ginnie Mae-guaranteed securities without an assumption by the purchaser of

the responsibilities and liabilities of a Ginnie Mae issuer.  *See* June 5 Stmt. ¶ 4.  Debtors

emphasized during the first-day hearings that such was not their intent.  *See id.*

15.      Section 1.1(vi) of the Ocwen APA, filed with the Court on November 3, 2012,

provides that "Assumed Liabilities" include "all Liabilities relating to MSRs for Agency Loans

guaranteed by Ginnie Mae, whether arising prior to or after the Closing."  The Government is

reviewing this new language to determine if the inclusion of this provision addresses the United

States' concern with respect to bifurcation of the obligations arising from the Ginnie Mae

Guaranty Agreements and the assumption by the purchaser of the responsibilities and liabilities

of a Ginnie Mae issuer.

16.      At present, the Ginnie Mae Guaranty Agreements have not been listed as

executory contracts being assumed under the cure notice, or "assets" being assumed under the

Ocwen APA.  As the Government repeatedly has indicated, Ginnie Mae's consent is required for

the purchaser to become an issuer of mortgage backed securities under Ginnie Mae's program,

and Ginnie Mae will not consent to a sale that does not provide for assumption by the purchaser

of both pre-closing and post-closing obligations arising under the Ginnie Mae Guaranty

Agreements.  The Government has been in active negotiations with the Debtors, Ally Financial,

Nationstar, and, most recently, Ocwen concerning this issue.  While it appears that the parties

will reach a resolution of this issue as well, such a resolution has not been reached to date.

Accordingly, the Government objects to the sale to the extent that the purchaser is not assuming

pre- and post-closing obligations under the Ginnie Mae Guaranty Agreements.

**D.      Reservation of Rights**

17.      The Government understands that the Debtors will not file a proposed Sale Order

for several more days.  Accordingly, there is no way of knowing at this point whether the

proposed order will contain language, *inter alia*, affording the prospective purchaser overbroad

releases with respect to police and regulatory liabilities (including environmental liabilities) to

governmental entities.  *See* 11 U.S.C. § 363(f) (permitting the sale of property free and clear of

third-party interests in certain circumstances).  As the Government has not yet had an

opportunity to review the proposed sale order, nothing in the foregoing waives the Government's

right to raise supplemental objections to any language in the proposed sale order.

**CONCLUSION**

18.    For the foregoing reasons, the United States objects to the Sale Motion and

reserves its rights to supplement its objection upon the Debtors' filing of the proposed Sale

Order.

Dated:  New York, New York
        November 5, 2012

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York
                                    *Attorney for the United States of America*


                           By:     */s/ Joseph N. Cordaro*
                                    JOSEPH N. CORDARO
                                    Assistant United States Attorney
                                    86 Chambers Street, 3rd Floor
                                    New York, New York 10007
                                    Telephone: (212) 637-2745
                                    Facsimile:  (212) 637-2686
                                    Email: joseph.cordaro@usdoj.gov