**Hearing Date: November 19, 2012, 10:00 a.m. E.T.**
**Objection Deadline: November 7, 2012**
**(extended pursuant to agreement with the Debtors)**

Michael R. Carney
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
Email: mcarney@mckoolsmith.com

Paul D. Moak
MCKOOL SMITH, P.C.
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344
Email: pmoak@mckoolsmith.com

-and-

Kenton W. Hambrick
Associate General Counsel
Freddie Mac, M/S202
8200 Jones Branch Drive
McLean, Virginia 22102
Telephone: (703) 903-2473
Facsimile: (703) 903-3692
Email: kenton_hambrick@freddiemac.com

*Attorneys for Federal Home Loan Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

--------------------------------------------------------

**FEDERAL HOME LOAN MORTGAGE CORPORATION'S OBJECTION TO
DEBTORS' PROPOSED SALE OF SERVICING ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND .....................................................................................4

OBJECTION ............................................................................................................5

    A.    The Sale Order Includes Several Impermissible Provisions
    Relating to Assumption and Assignment of Contracts. ..........................5

        1.    The Debtors Impermissibly Seek to Bifurcate
        Origination and    Servicing Obligations. ....................................6

        2.    The Debtors Impermissibly Seek to Limit the Scope
        of Servicing Obligations Borne by the Purchaser.......................6

    B.    Debtors May Not Accomplish by Sale What They Cannot
    Accomplish by Assumption and Assignment. ..........................................9

    C.    Freddie Mac Has Not Consented to, and Reserves the Right
    to Object to, an Assignment to Ocwen ..................................................13

    D.    The Sale, as Proposed, Violates HERA. .................................................17

    E.    Bankruptcy Rules 6004(h) and 6006(d) Should Not be
    Waived ....................................................................................................18

RESERVATION OF RIGHTS ................................................................................18

CONCLUSION........................................................................................................18

CERTIFICATE OF SERVICE ...............................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cinicola v. Scharffenberger,*
   248 F.3d 110 (3d Cir. 2001)...........................................................................................10

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV,*
   209 F.3d 252 (3d Cir. 2000)...........................................................................................11

*In re Access Beyond Techs., Inc.,*
   237 B.R. 32 (Bankr. D. Del. 1999) ................................................................................10

*In re Embers 86th St., Inc.,*
   184 B.R. 892 (Bankr. S.D.N.Y. 1995) ..........................................................................14

*In re MF Global Holdings, Inc.,*
   466 B.R. 239 (Bankr. S.D.N.Y. 2012).............................................................................9

*Shaw Group, Inc. v. Bechtel Jacobs Co. (In re IT Group, Inc.),*
   350 B.R. 166 (Bankr. D. Del. 2006) ..............................................................................10

*The Leslie Fay Cos., Inc. v. Corporate Prop. Assocs. 3 (In re The Leslie Fay Cos., Inc.),*
   166 B.R. 802 (Bankr. S.D.N.Y. 1994) ......................................................................9, 10

STATUTES

12 U.S.C. § 4502(2) ...........................................................................................................18

12 U.S.C. § 4617(b)(11)(E) ...............................................................................................17

12 U.S.C. § 4617(f)............................................................................................................17

12 U.S.C. § 4617(j)(3) ............................................................................................13, 17, 18

Bankruptcy Code § 363 ............................................................................................. passim

Bankruptcy Code § 365 ............................................................................................. passim

Housing and Economic Recovery Act of 2008.....................................................................1

**OTHER AUTHORITIES**

Bankruptcy Rule 6004 ................................................................................................................18

Bankruptcy Rule 6006(d)...........................................................................................................18

Federal Home Loan Mortgage Corporation in conservatorship ("Freddie Mac"),[1] by and through its undersigned counsel, hereby files this objection (the "Objection") to the Debtors' (i) *Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Dkt. No. 61] (the "Sale Motion") and (ii) *Notice of Successful Bidders at the Auctions and Sales of (A) the Platform Assets to Ocwen Loan Servicing LLC and (B) the Whole Loan Assets to Berkshire Hathaway Inc.* [Dkt. No. 302]. In support of its Objection, Freddie Mac respectfully states as follows:

## INTRODUCTION

1.      The Debtors service more than 2.4 million mortgage loans with an aggregate unpaid principal balance ("UPB") of approximately $374 billion.[2]  Of these totals, the Debtors assert that they service approximately 370,000 mortgage loans with an aggregate UPB of

---

[1]      On September 6, 2008, the Director of the Federal Housing Finance Agency (the "FHFA" or the "Conservator") placed Freddie Mac into conservatorship pursuant to express authority granted under the Housing and Economic Recovery Act of 2008 ("HERA") to preserve and conserve Freddie Mac's assets and property.  As Conservator, FHFA immediately succeeded to "all rights, titles, powers and privileges" of Freddie Mac.  *See* 12 U.S.C. § 4617(b)(2)(A)(i).  This Objection does not constitute submission to this Court's jurisdiction by the FHFA.

[2]      *See Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, In Support of Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 6] (the "Whitlinger Affidavit") at ¶ 14.

approximately $59.8 billion for Freddie Mac.[3]   Through the sale, the Debtors propose to transfer the servicing of these loans to the successful bidder at the auction for the Debtors' servicing platform.   The Debtors have provided notice that Ocwen Loan Servicing LLC ("Ocwen") was the Successful Bidder at the auction.[4]   Freddie Mac has been informed by the Debtors that Walter Investment Management Corp. ("Walter") joined with Ocwen in its bid, and that Ocwen will acquire the servicing rights with regard to Freddie Mac's loan portfolio.

2.      Neither Freddie Mac nor the Conservator has approved the proposed transfer to Ocwen generally, nor have they consented to the terms of the Ocwen Asset Purchase Agreement (the "Ocwen APA").   To the contrary, Freddie Mac believes the proposed sale, to be effectuated through the Ocwen APA and the Sale Order, violates fundamental tenets of bankruptcy law and cannot be approved.

3.      In its previously filed objection to the Debtors' assumption and cure notice, Freddie Mac identified several impermissible features relating to Debtors' proposed assignment of contracts in connection with the sale.   Specifically, the Debtors seek to sever their servicing rights and obligations from their mortgage origination obligations, and to transfer to Ocwen the benefits (but not all of the burdens) of the Debtors' servicing contracts.   Under Bankruptcy Code § 365, however, the Debtors may not bifurcate a unitary, integrated contract that governs both origination and servicing of Freddie Mac loans, nor may the Debtors limit the servicing obligations to be assigned to Ocwen.[5]

---

[3]      *See Declaration of Joseph A. Pensabene in Support of Debtors' GA Servicing Motion, Non-GA Servicing Motion and Supplemental Servicing Motion* [Dkt. No. 256] at ¶ 13.

[4]      *See* Notice of Successful Bidders at the Auctions and Sales of (A) The Platform Assets to Ocwen Loan Servicing, LLC and (B) The Whole Loan Assets to Berkshire Hathaway Inc. [Dkt. No. 1960].

[5]      *See* Objection to Debtors' Proposed Assumption and Assignment of Certain Executory Contracts and Related Cure Amounts [Dkt. No. 1690] at ¶¶ 15-33.

4.      Further, the Debtors may not circumvent the statutory requirements of Bankruptcy Code § 365 by attempting to "sell" their contracts rights under Bankruptcy Code § 363.[6] The protections of § 365 governing the assumption and assignment of contracts cannot be disregarded in a § 363 sale.  Because the Debtors cannot accomplish under § 363 what is prohibited by § 365, the Sale Motion must be denied for the reasons set forth in this Objection and in Freddie Mac's prior objection to the assumption and assignment of its contracts.

5.      Additionally, because Ocwen was not the stalking horse bidder and was only recently determined to be the successful bidder, Freddie Mac has been unable to assess whether Ocwen can adequately service Freddie Mac's loan portfolio.  Indeed, Freddie Mac raised this very concern in its limited objection to the Debtors' proposed sale procedures, where it objected to the unreasonably short time period between the auction and the Sale Hearing as insufficient to allow Freddie Mac to evaluate the financial wherewithal and performance capabilities of an alternate bidder and to determine whether to consent to the servicing transfer.[7]  Although Freddie Mac and Ocwen have initiated discussions regarding the proposed transfer, it is virtually impossible that Freddie Mac will be able to negotiate required protections and necessary terms of transfer with Ocwen and, assuming those discussions are fruitful, obtain consent to the transfer both internally and from the Conservator prior to November 19.

---

[6]      *See id.* at ¶ 3, n.6.

[7]      *See* Federal Home Loan Mortgage Corporation's Response and Limited Objection to Debtors' Motion to Approve Sale Procedures [Dkt. No. 283] (the "Limited Objection to Debtors' Sale Procedures") at ¶ 5 ("While Freddie Mac will make every effort to evaluate the Successful Bidder as promptly as possible, the proposed time period between the auction and the sale hearing (possibly as little as three weeks) is insufficient to allow Freddie Mac to conduct necessary due diligence regarding the Successful Bidder and its ability to adequately service the Freddie Mac loan portfolio in accordance with the Freddie Mac Guide's requirements. . . .  If a bidder other than Nationstar prevails at the auction, it is likely that Freddie Mac's due diligence and approval process will take two months to complete.").

6.     Finally, Freddie Mac opposes the proposed sale because it fails to recognize various protections afforded to FHFA and Freddie Mac under HERA.  That statute requires, among other things, that FHFA consent to any sale impacting Freddie Mac's assets.  The Sale Motion, therefore, cannot be approved absent FHFA's and Freddie Mac's consent.

## **FACTUAL BACKGROUND**

7.     On May 14, 2012, the Debtors filed their Sale Motion, which requests approval to sell the Debtors' servicing platform to Nationstar, or another qualified bidder, free and clear of all liens, claims, encumbrances and other interests, and, in connection with the sale, to assume and assign certain contracts (the "Sale").  The Debtors seek to consummate the Sale pursuant to the "Proposed Nationstar Sale Approval Order" (the "Sale Order"), attached as Exhibit B to the Sale Motion.  The Sale Order sought approval of the Amended and Restated Asset Purchase Agreement Among Nationstar Mortgage LLC and Certain Debtors (the "Nationstar APA") [Dkt No. 534].

8.     On July 26, 2012, the Debtors filed their *Notice of (i) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (ii) Cure Amounts Related Thereto* [Dkt. No. 924] (the "Assignment and Cure Notice"), pursuant to which the Debtors proposed to assume and assign certain contracts to which Freddie Mac is a party.[8]

9.     On October 1, 2012 Freddie Mac objected to the Debtors' Assignment and Cure Notice by filing its *Objection to Debtors' Proposed Assumption and Assignment of Certain*

---

[8]     On September 14, 2012, the Debtors filed a supplement to the Assignment and Cure Notice [Dkt. No. 1459] (the "First Supplemental Assignment and Cure Notice"), and on September 18, 2012 they filed an Amended and Restated Notice [Dkt. No. 1484] (the "Amended Assignment and Cure Notice").

*Executory Contracts and Related Cure Amounts* [Dkt No. 1690] (the "Assignment and Cure

Objection").

10.      On October 23 and 24, 2012, the Debtors conducted an auction of their servicing

assets.  At the conclusion of the auction, the Debtors selected Ocwen as the successful bidder.

On November 3, 2012, the Debtors filed with the Court a copy of the Ocwen APA, which does

not include the referenced schedules or exhibits.  The Debtors have not yet filed a revised form

of Sale Order.

## OBJECTION

### A.      The Sale Order Includes Several Impermissible Provisions Relating to Assumption and Assignment of Contracts.

11.      The principal assets the Debtors seek to convey to Ocwen are their "Mortgage

Servicing"[9] rights, which are, fundamentally, a bundle of contractual rights and obligations.  The

assumption and assignment of contracts is thus significantly interrelated with the Sale; if the

Court enters the Sale Order as presently drafted, it will simultaneously approve the assumption

and assignment of contracts to Ocwen.  *See* Sale Order ¶ 16.  Several provisions of the Sale

Order would modify the contractual rights and obligations of contract counterparties vis-à-vis

Ocwen.  Thus, the issues raised in Freddie Mac's previously filed Assignment and Cure

Objection are equally applicable as objections to the Sale.  Freddie Mac hereby incorporates its

Assignment and Cure Objection, and discusses below several objectionable provisions of the

Sale Order relating to assumption and assignment that Freddie Mac has identified as of the

objection deadline.  Because the Debtors have only provided parties with four days' notice of the

---

[9]      *See* Ocwen APA § 2.1(a), "Purchase and Sale of Assets"; Ocwen APA § 1.1, definition of "Mortgage Servicing."

revised terms of the APA and have not yet disclosed the schedules or exhibits to the Ocwen

APA, Freddie Mac reserves its right to supplement this Objection.

### 1.    The Debtors Impermissibly Seek to Bifurcate Origination and Servicing Obligations.

12.    As noted in Freddie Mac's Assignment and Cure Objection, the Debtors are

attempting to sever the origination obligations from the servicing obligations in the Debtors'

Master Agreement with Freddie Mac (the "Master Agreement"), dated as of July 22, 2011,

between GMAC, Freddie Mac, and Ally Bank.   The Debtors seek to sever the Master

Agreement's origination-related obligations and assign to Ocwen some, but not all,[10] of the

Master Agreement's servicing-related provisions.   For the reasons stated in Freddie Mac's

Assignment and Cure Notice, Freddie Mac objects to the provisions of the Sale Order that

purport to allow and effectuate such severing.

### 2.    The Debtors Impermissibly Seek to Limit the Scope of Servicing Obligations Borne by the Purchaser.

13.    As further noted in Freddie Mac's Assignment and Cure Objection, the Debtors

also seek, through the Sale, to absolve Ocwen from certain *servicing*-related obligations.   The

Debtors seek to limit Ocwen's future servicing obligations by (1) precluding contract

counterparties from asserting claims against Ocwen that relate to any pre-closing acts or

omissions, even if Ocwen's post-closing acts and omissions would give rise to the same or a

similar claim, and (2) specifically defining the types of servicing obligations that Ocwen is

assuming and eliminating all other servicing obligations required by the applicable contract.[11]

---

[10]    As explained below, the Debtors seek to limit the scope of the servicing obligations to be assigned to Ocwen.

[11]    In particular, paragraph P of the proposed Sale Order expressly limits the categories of servicing obligations that Ocwen will assume, thus absolving Ocwen of responsibility for all other servicing obligations that

For the reasons stated in Freddie Mac's Assignment and Cure Objection, Freddie Mac objects to the provisions of the Sale Order that would grant the Debtors such relief.

14.    As addressed more fully in Freddie Mac's Assignment and Cure Objection, the Debtors' proposed assignment and cure construct would impermissibly leave Freddie Mac without a remedy for contract breaches arising post-closing that relate to pre-closing acts or omissions.  The Amended Assignment and Cure Notice provides, "The Debtors will request that Cure Objections to the proposed Cure Amounts based upon unquantifiable or unknown pre-closing liability be overruled; provided, however, that no such liabilities may be asserted against the Purchaser . . . ."[12]  Further, parties are enjoined from asserting against the Purchaser "any claims or obligations relating to the pre-closing period under any Assumed Contract . . . whether such claims or obligations are known, unknown, fixed, contingent, unliquidated or liquidated at the time of the Closing . . . ."[13]  Accordingly, neither the Debtors nor the Purchaser appear to be liable for actions or omissions by the Debtors that constitute yet undiscovered or unrealized defaults.

15.    By way of example, the Debtors are obligated to pay Freddie Mac compensatory fees if they fail to complete foreclosure on a defaulted mortgage loan within a specified time period.  If, for example, the applicable time period were 750 days (as is the case for mortgage loans in New Jersey), the compensatory fee would be due to Freddie Mac if foreclosure were not completed by the expiration of that period.  Yet under the assignment and cure structure proposed by the Debtors, Freddie Mac would appear to have no remedy against the Debtors or

---

may otherwise be imposed by applicable contracts.  *See* Freddie Mac's Assignment and Cure Objection at ¶¶ 24-33 (discussing in greater detail the impermissible constrains imposed by Sale Order ¶ P).

[12]    *See* Amended Assignment and Cure Notice at ¶ 13.

[13]    *See id.* ¶ 25.

Ocwen for a compensatory fee in the situation where the applicable foreclosure time period straddled the closing date. In other words, if closing occurred on the 600th day of a foreclosure time period, and Ocwen failed to complete foreclosure prior to the 750th day, it is unclear whether either the Debtors or Ocwen would be liable for the compensatory fee. Accordingly, in addition to violating the requirement that contracts be assigned in their entirety, the proposed limitations on Ocwen's servicing obligations run afoul of the Bankruptcy Code's mandate to provide Freddie Mac with adequate assurance of future performance. [14]

16.    In addition to compensatory fees, there are several other servicing-related obligations that could give rise to post-closing defaults that relate to pre-closing actions or omissions by the Debtors, including, for example, the failure to maintain hazard insurance, the failure to maintain mortgage insurance, and additional foreclosure timeline violation fees. Certain of these failings by the Debtors may currently constitute undiscovered or unrealized defaults, constraining Freddie Mac's ability to identify with specificity the Debtors' liability for these breaches. If Ocwen is not intended to be the responsible party for such claims, despite the Bankruptcy Code's requirements that a contract assignee must assume the ongoing contract obligations in full, then the Debtors must obtain Freddie Mac's consent, which would require that the Debtors make provisions acceptable to Freddie Mac to address those liabilities.

---

[14]    It appears that the Debtors and Ocwen have attempted to address the division of liability amongst themselves for foreclosure timeline compensatory fees through a revision to the definition of Assumed Liabilities in the Ocwen APA, which currently provides that Assumed Liabilities include "any applicable compensatory fees related to a failure to adhere to the foreclosure timelines relating to any Fannie Mae or Freddie Mac Agency Loan that is a Non-Lagging Defaulted Loan." *See* Ocwen APA at § 1.1. The definition of "Non-Lagging Defaulted Loan" refers to a Schedule 1.1, which has not been provided to Freddie Mac. Accordingly, it is unclear what foreclosure timeline compensatory fees are being assumed by Ocwen.

**B.      Debtors May Not Accomplish by Sale What They Cannot Accomplish by Assumption and Assignment.**

17.      Bankruptcy courts routinely approve sales free and clear of claims and interests pursuant to Bankruptcy Code § 363.  The Sale Order, however, appears to go far beyond a typical sale "free and clear" by utilizing § 363 to accomplish an end-run around the requirements of § 365.

18.      It is black-letter law that, under § 365, contracts must be assumed and assigned in their entirety, so that the non-debtor contract party is provided with the full benefit of its bargain. As this Court has held:

> An executory contract may not be assumed in part and rejected in part. . . .  The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits.

*In re MF Global Holdings, Inc.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) (internal citation omitted); *see also, e.g., The Leslie Fay Cos., Inc. v. Corporate Prop. Assocs. 3 (In re The Leslie Fay Cos., Inc.)*, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994) ("If an executory contract is assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens.") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984)).

19.      In several places, the Sale Order purports to sell Purchased Assets (as defined in the Ocwen APA) free and clear of various claims and interests.  *See, e.g.,* Sale Order at ¶¶ O, Q, 9 and 10.  Purchased Assets include the Debtors' mortgage servicing rights relating to Freddie Mac's loans and "all rights of and benefits accruing under the Assumed Contracts . . . ."  *See* Ocwen APA at § 2.1 (a) and (n).[15]  Accordingly, the Debtors appear to seek authority to convey

---

[15]      Section 2.1(a) defines Purchased Assets to include the Purchased Mortgage Servicing, which in turn is defined to mean "all of Sellers' Mortgage Servicing in respect of Agency Loans, Private Investor Loans and Other Serviced Loans."  *See* Ocwen APA at § 1.1.  Agency Loans are "Mortgage Loans being serviced or subserviced by

their servicing rights under contracts with Freddie Mac as a § 363 sale rather than as an assumption and assignment under § 365.[16]

20.     Bankruptcy courts have not allowed parties to use section § 363 to skirt the requirement of § 365. *See, e.g., Cinicola v. Scharffenberger*, 248 F.3d 110, 124 (3d Cir. 2001) ("[T]he sale of an executory contract triggers the protections afforded sales of bankruptcy estate property but also requires satisfaction of the requirements for assuming and/or assigning the same executory contract."); *Shaw Group, Inc. v. Bechtel Jacobs Co. (In re IT Group, Inc.)*, 350 B.R. 166, 171 (Bankr. D. Del. 2006) ("In addition to complying with section 363, however, sales of executory contracts and leases also have to comply with the protections afforded the contract party under section 365 of the Bankruptcy Code."); *In re Access Beyond Techs., Inc.*, 237 B.R. 32, 47 (Bankr. D. Del. 1999) (A "debtor cannot avoid the requirements of section 365 by saying it is 'selling' a lease or executory contract, rather than assuming and assigning it.").

21.     Among the numerous contractual rights from which the Sale Order purports to sell free and clear are the rights of any party to terminate its contract in the future. Specifically, the Sale Order provides that the Sale will be "free and clear of all Interests, including . . . those that purport to give any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Sellers' or the Purchaser's interest in the Purchased Assets, or any similar rights." *See* Sale Order ¶ O. Paragraph 5 (Injunction) seeks to enjoin parties from asserting any rights or claims against Ocwen that relate "to any act or omission of any originator,

---

any Seller pursuant to an Agency Contract that are owned or guaranteed by Fannie Mae, Freddie Mac, or Ginnie Mae . . . . " *Id.*

[16]     The Sale Order creates some confusion on this point. In particular, Paragraph T provides: "To the extent any Assumed Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of this Order that are applicable to Purchased Assets." *See* Sale Order at ¶ T. The Debtors thus imply that executory contracts shall be transferred, if at all, pursuant to the requirements of § 365. To the extent the Debtors seek to convey their servicing rights relating to Freddie Mac loans without complying with § 365, Freddie Mac objects to the circumvention of § 365.

holder or servicer of Mortgage Loans prior to the Closing Date." *Id*. at ¶ 5.  And paragraph 12 (No Interference) would similarly preclude parties from asserting rights or claims under contracts assumed by Ocwen based upon actions by the Debtors.  *Id*. at ¶ 12.  These provisions of the Sale Order would, among other things, arguably prevent a party, even long after the Sale, from exercising a right to terminate the Purchaser's servicing rights if the Purchaser fails to adequately perform its servicing obligations.[17]

22.    Freddie Mac, as owner of more than 300,000 loans serviced by the Debtors, must maintain the highest standards of loan servicing with respect to the loans it owns and the Debtors currently service.  Accordingly, Freddie Mac and the Debtors have contracted for Freddie Mac to have the right to terminate servicing rights, with or without cause, if the Debtors or *any subsequent servicer* fails to meet certain performance standards.  *See* Freddie Mac Single-Family Seller/Servicer Guide § 73.1.  To the extent the Sale Order purports to eliminate or modify those rights, it cannot be approved.  The Debtors may not utilize § 363 to alter Freddie Mac's contractual rights, which are protected by § 365 and HERA.  *See generally Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 263 (3d Cir. 2000) ("Bankruptcy law generally does not permit a debtor or an estate to assume the benefits of a contract and reject the unfavorable aspects of the same contract.  Yet, allowing the Debtors to recharacterize their contract rights as accounts receivable and sell them free and clear of the corresponding obligations yields that very result.").

23.    The Sale Order also impermissibly seeks to invalidate anti-assignment provisions contained in any Assumed Contract.  As noted in Freddie Mac's Assignment and Cure Objection

---

[17]    Sale Order ¶ 14 seeks to limit the rights of governmental units to deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets.  It is unclear whether the Debtors intend for this provision to restrict Freddie Mac's contractual rights or FHFA's rights under HERA. Freddie Mac objects to this provision.

at ¶ 38, the provisions of Freddie Mac's contract that preclude the assignment of that contract to Ocwen are enforceable notwithstanding the provisions of Bankruptcy Code § 365(f). But even if the Court were to approve the assignment of Freddie Mac's contract to Ocwen, certain provisions of the Sale Order cannot be approved. Specifically, paragraph 18 provides:

> [A]ny provisions of any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which *are void and of no force and effect*.

Sale Order at ¶ 18 (emphasis added). Although the foregoing language presumably is intended to permit assignment by the Debtors to Ocwen notwithstanding contractual anti-assignment clauses, the provision, as phrased, could be interpreted to invalidate entirely any contract provisions that limit or restrain *Ocwen's* right to *subsequently* assign any Assumed Contract. Any attempt by the Debtors to void or otherwise modify contractual restrictions on Ocwen's ability to assign Freddie Mac's servicing rights is impermissible and cannot be approved.[18]

24.    As a threshold matter, Bankruptcy Code § 365(f) does not empower the Court to "void" or excise anti-assignment provisions contained in executory contracts. That section instead permits the Court, in circumstances not present here, to authorize assignment by the debtor notwithstanding certain anti-assignment provisions. Accordingly, there is no statutory basis to void or eliminate constraints on the Debtors' or Ocwen's ability to assign any Assumed Contract. Further, the provisions of the Freddie Mac contract that preclude assignment absent Freddie Mac's consent are critical to protecting Freddie Mac's interests, and the Debtors and Ocwen cannot override HERA to eliminate them. As the owner of the underlying loans, Freddie

---

[18]    Paragraph U of the Sale Order can be interpreted similarly and should not be approved as written.

Mac has a paramount interest in ensuring that the servicer of those loans satisfies exacting financial and performance standards. For that reason, a servicer of Freddie Mac loans does not have the unfettered ability to transfer servicing rights and must first obtain Freddie Mac's consent, which can only be given (if at all) after Freddie Mac has determined that the proposed assignee satisfies Freddie Mac's standards and the Conservator's consent. The Debtors cannot alter Freddie Mac's fundamental right to approve which parties are permitted to service its loans or the provisions of HERA. To the extent the Sale Order seeks to do so, it cannot be approved.

### C. Freddie Mac Has Not Consented to, and Reserves the Right to Object to, an Assignment to Ocwen.

25.    Neither Freddie Mac nor its Conservator has consented to the Debtors' proposed servicing transfer to Ocwen. The Master Agreement governing the servicing of Freddie Mac loans cannot be assigned to Ocwen without such consents.[19]  Indeed, the Ocwen APA acknowledges Freddie Mac's consent rights by providing that closing of the Sale is predicated on obtaining various consents from Freddie Mac.[20]  Further, as more fully described below, these consent rights are guaranteed by HERA § 4617(j)(3), which forbids transfer of FHFA assets without FHFA's consent. 12 U.S.C. § 4617(j)(3).

26.    Bankruptcy Code § 365(f) requires that Ocwen provide Freddie Mac with adequate assurance of future performance.[21]  Freddie Mac is in the process of evaluating Ocwen's ability to service Freddie Mac's loan portfolio, which properly includes an analysis of,

---

[19]    *See* Freddie Mac Guide at § 56.3 (providing that prior to the transfer of servicing, the transferor and the transferee "must obtain Freddie Mac's written approval of each Transfer of Servicing request before the transfer takes place.").

[20]    *See* Ocwen APA § 8.3(v).

[21]    For the reasons stated in Freddie Mac's Assignment and Cure Objection, the Sale, as structured, cannot possibly provide Freddie Mac with adequate assurance, regardless of the identity of the assignee or purchaser. *See* Assignment and Cure Objection ¶¶ 34-36.

among other things, Ocwen's financial strength and its performance capabilities. *See In re Embers 86th St., Inc.*, 184 B.R. 892, 902 (Bankr. S.D.N.Y. 1995). Because Ocwen was announced as the Successful Bidder only recently, Freddie Mac has not had sufficient time to evaluate Ocwen's ability to service the loan portfolio, and Freddie Mac reserves the right to assert additional objections to the transfer to Ocwen.[22] Additionally, as noted in Freddie Mac's Limited Objection to Debtors' Sale Procedures, there is insufficient time between the auction and the Sale Hearing for Freddie Mac to conclude its evaluation of Ocwen's servicing capabilities and to develop and negotiate necessary assurances of future performance. Accordingly, even if Freddie Mac were ultimately able to determine that Ocwen can adequately service its loan portfolio, it is virtually certain that Freddie Mac will not be able to reach that conclusion and obtain consent to the transfer both internally and from FHFA prior to the Sale Hearing. Accordingly, Freddie Mac objects to the Debtors' request to approve the Sale at the November 19 hearing.

27.    As of the filing of this Objection, Freddie Mac has identified certain concerns regarding the proposed transfer to Ocwen that must be addressed and resolved in a manner satisfactory to Freddie Mac as a condition to its consent. One of Freddie Mac's primary concerns is its understanding that the Debtors intend to transfer a significant portion of the loans they service, including Fannie Mae's loans, from the Debtors' current servicing platform to a platform maintained by Walter. The Freddie Mac loans, however, will remain on the Debtors' servicing platform for some undisclosed period of time. It is unclear to Freddie Mac how Ocwen intends to maintain the quality of servicing of Freddie Mac's loans on the Debtors' platform,

---

[22]    The Court's Sale Procedures Order, Docket No. 538, ¶ 25, provides that "in the event the Sale Procedures result in a Successful Bidder other than Nationstar (in respect of the Nationstar Purchased Assets) . . . . the deadline for an Assignment Objection shall be at the Sale Hearing." Accordingly, Freddie Mac reserves the right to supplement this Objection any time up to the applicable deadline.

while such a large portion of the loans that are currently serviced by the Debtors will be transferred to Walter. Neither the Debtors nor Ocwen have yet provided any assurances that they will be able to retain the manpower and provide the operational capability necessary to continue servicing Freddie Mac's loans under these circumstances. From the outset of the sale process, the Debtors have assured the parties, their employees, and the Court that the proposed sale would provide for the acquisition of the Debtors' entire servicing platform. That no longer appears to be the case. The dismantling of the Debtors' platform creates significant risk to Freddie Mac that must be addressed as a condition to assuring adequate performance by Ocwen post-closing.

28.    Additionally, under the Nationstar APA, Nationstar agreed to assume the servicing obligations relating to the loans that the Debtors currently subservice, including presumably approximately 160,000 Freddie Mac loans (the "Subserviced Loans") for which Ally Bank is the servicer and the Debtors are the subservicer.[23] The Ocwen APA, however, appears not to provide for the transfer of subservicing relating to the Subserviced Loans.[24] The status of the subservicing relating to those loans remains uncertain. In particular, it is unclear whether the Debtors will continue to subservice the loans post-closing or whether Ally Bank will seek to transfer the subservicing to yet another servicer. The Subserviced Loans comprise approximately half of the Freddie Mac loan portfolio currently serviced (or subserviced) by the Debtors. The absence of clarity regarding the status of the Subserviced Loans, coupled with the dismantling of the Debtors' servicing platform, creates substantial risk to Freddie Mac that must be resolved in a manner satisfactory to Freddie Mac.

---

[23]    *See* Nationstar APA at § 6.31.

[24]    *See* Ocwen APA (deleting § 6.31 of the Nationstar APA).

29.     Further, on October 3, 2012, Ocwen announced that it had reached an agreement to acquire Homeward Residential Holdings, Inc. ("Homeward") for approximately $750 million. As part of the acquisition, Ocwen will acquire Homeward's loan servicing rights with respect to approximately 422,000 loans.   To Freddie Mac's knowledge, Ocwen has not yet closed its acquisition of Homeward.  Ocwen's effort to significantly increase its servicing portfolio through the concurrent acquisition of Homeward and the Debtors' servicing operations creates numerous potential logistical and operational impediments.  Ocwen's simultaneous integration of multiple servicing platforms yields significant risk of deterioration in servicing performance relating to Freddie Mac loans.

30.     Importantly, the Debtors provided notice of the terms of the Ocwen APA to Freddie Mac late on Saturday, November 3, 2012—four days prior to the extended deadline for filing this Objection.  The filed Ocwen APA, however, does not contain any of the referenced schedules or exhibits.  As a consequence, Freddie Mac has not had sufficient time to analyze the modifications made by Ocwen to the Nationstar APA.  As of the filing of this Objection, Freddie Mac objects to the provisions of the Ocwen APA identified in Exhibit A to this Objection. Freddie Mac also objects to any provisions of the Sale Motion, the Ocwen APA, or the Sale Order that (1) alter or impair Freddie Mac's rights of setoff or entitlement to recoupment, (2) attempt to transfer beneficial ownership of funds held in trust by the Debtors, or (3) attempt to assume expired contracts or non-Debtor contracts.  Freddie Mac reserves the right to supplement this Objection as necessary to assert additional objections to the Ocwen APA.

**D.      The Sale, as Proposed, Violates HERA.**

31.      HERA, enacted in 2008, created FHFA and appointed FHFA as conservator of

Freddie Mac to preserve and conserve Freddie Mac's assets and property.[25]  In connection with

that charge, HERA grants special protections to FHFA as conservator, and to Freddie Mac as an

entity in conservatorship.

32.      For example, any sale of Freddie Mac assets must (1) maximize the net present

value return from the sale of such assets, (2) minimize the amount of any loss to Freddie Mac,

and (3) ensure adequate competition and fair and consistent treatment of offerors.  *See* 12 U.S.C.

§  4617(b)(11)(E).    The  proposed  Sale,  as  currently  structured,  does  not  satisfy  these

requirements.

33.      In  addition,  HERA  §  4617(f)  provides  that  "no  court  may  take  any  action  to

restrain or affect the exercise of powers or functions of the [FHFA] as a conservator or receiver."

*See* 12 U.S.C. § 4617(f).  The Sale Order purports to enjoin FHFA and Freddie Mac from,

among other things, asserting or pursuing any of its interests "of any kind or nature whatsoever"

against the Purchaser.  *See* Sale Order ¶ 5.  This proposed injunction would violate HERA and

cannot be approved.

34.      Finally, the Sale Order provides that the Sale and the assignment of contracts may

be effectuated without consent of a contract counterparty, notwithstanding contractual provisions

requiring  consent.    HERA  §  4617(j)(3)  requires  that  FHFA  consent  to  any  transfer  of  its

property: "no  property  of  the  Agency  shall  be  subject  to  levy,  attachment,  garnishment,

---

[25]        *See* n.1, *supra.*

foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency."[26]  Thus, FHFA's consent to the Sale is required.

### E.    Bankruptcy Rules 6004(h) and 6006(d) Should Not be Waived.

35.    Bankruptcy Rule 6004(h) applies where property is sold under Bankruptcy Code § 363 and provides that a sale order is stayed for 14 days after entry, "unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) stays, for 14 days, any order authorizing the trustee to assign an executory contract under Bankruptcy Code § 365(f).  The Sale Motion raises numerous controversial issues that may give rise to an appeal.  The 14-day stay periods are designed to protect a party's appeal rights.  Because the Debtors have failed to provide sufficient justification to waive the 14-day stay of the Sale Order provided by Rules 6004(h) and 6006(d), the Debtors' waiver request should be denied.

## RESERVATION OF RIGHTS

36.    Freddie Mac reserves the right to supplement and amend this Objection as to all matters concerning the proposed sale, including to address issues relating to Ocwen's ability to provide adequate assurance of future performance.

## CONCLUSION

For the reasons set forth above, Freddie Mac respectfully requests that the Court sustain Freddie Mac's objections and decline to approve the Debtors' Sale Motion.

---

[26]    *See* 12 U.S.C. § 4617(j)(3).  Agency refers to FHFA in its capacity as Conservator or Receiver.  *See* 12 U.S.C. § 4617(j)(1).

Dated:  November 7, 2012

Respectfully submitted,

/s/ Michael R. Carney
Michael R. Carney
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Telephone:  (212) 402-9400
Facsimile:  (212) 402-9444
Email:  mcarney@mckoolsmith.com

Paul D. Moak
MCKOOL SMITH, P.C.
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone:  (713) 485-7300
Facsimile:  (713) 485-7344
Email:  pmoak@mckoolsmith.com

-and-

Kenton W. Hambrick,
Federal Home Loan Mortgage Corporation
8200 Jones Branch Drive - MS 202
McLean, Virginia  22102
Telephone: (703) 903-2640
Facsimile: (703) 903-3691

*Attorneys for Federal Home Loan Mortgage Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 7th day of November 2012, I electronically filed the foregoing pleading with the Clerk of Court by using the Case Management/Electronic Case Filing ("CM/ECF") system which will send a notice of electronic filing, and I will complete service of the foregoing pleading as required by this Court's *Case Management Procedures* [ECF No. 141].

/s/ Michael R. Carney
Michael R. Carney