**Hearing Date: November 19, 2012, 10:00 a.m. E.T.**
**Objection Deadline: November 7, 2012, 5:00 p.m. E.T.**
**(Extended by the Debtors)**

**WINSTON & STRAWN LLP**
David Neier (dneier@winston.com)
Carey D. Schreiber (cschreiber@winston.com)
Corina I. Bogaciu (cbogaciu@winston.com)
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for Fannie Mae*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | : | Chapter 11 |
| Debtors. | : | Jointly Administered |

**OBJECTION OF FANNIE MAE TO THE DEBTORS' SALE MOTION**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Fannie Mae hereby submits this Objection (the "Objection") to (i) the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 For Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and*

*Unexpired Leases Related Thereto; and (IV) Granting Related Relief* dated May 14, 2012 [Docket. No. 61] (the "Sale Motion") and (ii) *Amended Notice of Successful Bidders at the Auctions and Sales of (A) the Platform Assets to Ocwen Loan Servicing LLC and (B) the Whole Loan Assets to Berkshire Hathaway Inc.* dated November 3, 2012 [Docket No. 2050] (the "Debtors' Auction Notice"). In addition, this Objection supplements and is in further support of (i) the *Statement of Fannie Mae Concerning Debtors' Motion to Approve Sale Procedures and Related Relief* dated June 11, 2012 [Docket No. 302] (the "Fannie Mae Statement") and (ii) the *Objection of Fannie Mae to the Debtors' Motion and notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases or Personal Property, and Unexpired Leases of Non-Residential Real Property, and (II) Cure Amounts Related Thereto* dated October 1, 2012 [Docket No. 1689] (the "First Fannie Mae Sale Objection," and together with the Fannie Mae Statement and this Objection, the "Fannie Mae Sale Objections").[1] In support of the Fannie Mae Sale Objections, Fannie Mae respectfully states as follows:[2]

## INTRODUCTION

1. Fannie Mae is the largest owner of mortgage loans originated and serviced by the Debtors. In connection with the Fannie Mae loan portfolio, GMAC Mortgage, LLC, one of the Debtors in the Chapter 11 Cases, is party to a number of executory contracts with Fannie Mae. In fact, the Debtors' contract with Fannie Mae (the Debtors' largest) constitutes approximately 40% of the Debtors' servicing assets.

2. As previously stated in the First Fannie Mae Sale Objection, Fannie Mae is supportive of the Debtors' efforts in their Chapter 11 Cases to sell their assets. However, over

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to those terms in the Sale Motion and First Fannie Mae Sale Objection.

[2] The Fannie Mae Sale Objections do not constitute submission to this Court's jurisdiction by Fannie Mae's Conservator, the Federal Housing Finance Agency ("FHFA") under the Housing and Economic Recovery Act of 2008 ("HERA")(the "Conservator").

six months have elapsed since the inception of the Debtors' chapter 11 cases and the Debtors have failed to engage in any meaningful discussions with Fannie Mae and its Conservator regarding a process with respect to the assumption and assignment of the Debtors' agreements with Fannie Mae.

3. Moreover, the Debtors inexplicably continue to flout the Bankruptcy Code requirements for such a process and continue to pursue a contested assumption and assignment of their largest contract. At this time, neither Fannie Mae nor its Conservator has consented to the assumption or assignment of any such agreements, and neither Fannie Mae nor its Conservator has waived any portion of the amounts owing from the Debtors to Fannie Mae under the terms of any such agreements, which amounts continue to accrue. In addition, Fannie Mae objects to the Sale Motion on the additional grounds set forth herein.

4. Further to the Debtors' Auction Notice, Fannie Mae has now been advised by the Debtors that Ocwen Financial Corporation ("Ocwen") and Walter Investment Management Corp. ("Walter" and collectively, "Ocwen/Walter") and not Nationstar Mortgage Holdings Inc. ("Nationstar"), the stalking horse purchaser, joined to offer the successful bid at the auction for certain of the Debtors' assets, and that Walter has proposed to acquire the servicing rights with regard to Fannie Mae's loan portfolio.

5. On Saturday evening, November 3, 2012, the Debtors filed the *Amended Notice of Successful Bidders at the Auctions and Sales of (A) the Platform Assets to Ocwen Loan Servicing, LLC and (B) the Whole Loan Assets to Berkshire Hathaway Inc. and Notice of Filing (A) Ocwen APA and (B) Amended and Restated BH Legacy APA* [Docket No. 2050]. As of the Wednesday, November 7, 2012 deadline imposed by the Debtors, Fannie Mae has not had sufficient time to review the Ocwen APA. More importantly, no schedules or exhibits were filed

along with the Ocwen APA, and many of the critical provisions dealing with Fannie Mae appear to be contained in those schedules and exhibits. Fannie Mae requested those schedules and exhibits from the Debtors and the Debtors agreed to provide them, but the Debtors have not provided the schedules and exhibits as of the deadline for this Objection imposed by the Debtors.

6. Moreover, the agreement principally dealing with the assumption of servicing obligations and transfer and assignment of the Fannie Mae mortgage loan portfolio appears to be in a separate agreement between Ocwen and Walter that has not yet been filed with the Court or provided to Fannie Mae. Thus, as of the deadline for submission of this Objection, Fannie Mae has not been provided with nor has had adequate time to review agreements, proposed orders or other documents or pleadings concerning the purchase of the Debtors' assets by Ocwen/Walter. Accordingly, Fannie Mae has been unable to evaluate the financial wherewithal and performance capabilities of Walter to determine whether consent to the servicing transfer is appropriate, and it is therefore highly unlikely that Fannie Mae will be able to negotiate required protections and necessary terms of transfer with Ocwen/Walter and obtain approval to the transfer both internally and from the Conservator prior to the Sale Hearing on November 19, 2012.

7. Upon information and belief, the sale to Ocwen/Walter is proposed to be effectuated in part through a proposed order approving the Sale Motion (the "Proposed Sale Order")[3], which Fannie Mae has previously advised this Court it believes violate fundamental tenets of bankruptcy law and cannot be approved.

---

[3] As used herein, the "Proposed Sale Order" shall refer to that certain proposed *Amended Order Under 11 U.S.C. §§ 105, 363, 365 and Fed. R. Bankr. P.* 2002, *6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Nationstar Mortgage LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C)Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; (D) Related Agreements; and (II) Granting Related Relief* [Docket No. 113, Ex. B].

8. More significantly, as pointed out in the First Fannie Mae Sale Objection, the Debtors continue to seek to impermissibly sever Fannie Mae mortgage servicing and selling contract to leave behind all liabilities with respect to both origination and servicing, and assume only the profitable servicing rights notwithstanding the agreement's detailed non-boilerplate nonseverability provisions.

9. Accordingly, Fannie Mae is interposing this Objection (i) based on information currently available to Fannie Mae with respect to the Ocwen APA, (ii) based on the Proposed Sale Order and related documents and pleadings, and (iii) based on the objections previously raised by Fannie Mae and various other similarly situated parties in interest.[4] The Sale Motion violates applicable law, including without limitation with respect to assumption and assignment, cure and adequate assurance and should not be approved. Accordingly, Fannie Mae has filed this Objection.

## BACKGROUND

10. On May 14, 2012 (the "Petition Date"), the Debtors commenced these bankruptcy cases by filing voluntary petitions for reorganization relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§101 *et seq.* (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)"). The Debtors are managing and operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11. On May 16, 2012, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors. On June 20, 2012, the Court directed that an examiner be

[4] Fannie Mae reserves its rights to supplement the Fannie Mae Sale Objections once it has received and has had a meaningful opportunity to review and analyze documentation relevant to the Ocwen/Walter proposed purchase.

appointed [Docket No. 454], and on July 3, 2012, the Court approved Hon. Arthur J. Gonzalez as the Examiner [Docket No. 674]. No trustee has been appointed.

12. On June 11, 2012, Fannie Mae filed the Fannie Mae Statement pursuant to which Fannie Mae apprised the Debtors and prospective bidders of Fannie Mae's position with respect to the proposed sale, including without limitation, cure and adequate assurance issues with respect to the Debtors' agreements with Fannie Mae.

13. On October 1, 2012, Fannie Mae filed the First Fannie Mae Sale Objection pursuant to which, among other things, Fannie Mae objected to the proposed assumption and assignment of contracts and related cure amounts and the proposed treatment by the Debtors and Nationstar of the Debtors' contracts with Fannie Mae (and expressly reserved all of its rights with respect to the sale of substantially all of the Debtors' assets).

## ARGUMENT

Fannie Mae's Joinder

Numerous parties-in-interest in these cases filed objections to the Sale Motion and notices filed by the Debtors that implicate similar, if not identical issues, to those raised in the Statement and the First Fannie Mae Sale Objection. In support of this Objection, Fannie Mae fully incorporates herein the legal and factual arguments contained in its Statement and the First Fannie Mae Sale Objection as well as those raised in other objections to the extent relevant and not inconsistent with the Fannie Mae Sale Objections, including, without limitation, *Federal Home Loan Mortgage Corporation's Objection To Debtors' Proposed Sale Of Servicing Assets Free And Clear Of Liens, Claims, Encumbrances, And Other Interests* dated November 7, 2012. In addition, the Sale Motion cannot be approved including based upon the reasons set forth below.

The Deadline to Object Imposed
by the Debtors is not Appropriate

14. The Debtors imposed a deadline for Fannie Mae to object to the sale to Ocwen less than four days after filing the Ocwen APA on a Saturday night and at a time when many (including Fannie Mae's attorneys) were without power and unable to review the Ocwen APA. (*See, e.g.,* General Order M-441 dated November 1, 2012, *Extension of Certain Deadlines as a Result of Hurricane Sandy and Court Closure*). In addition, the Ocwen APA was filed without the schedules and exhibits that contain critical provisions with respect to the treatment of Fannie Mae. Moreover, the agreement between Ocwen and Walter has not been provided to Fannie Mae (assuming it has even been agreed to among Ocwen and Walter at this time). Indeed, it is fair to say that Fannie Mae is completely in the dark as to what relief the Debtors are seeking with respect to the Fannie Mae mortgage loan portfolio and who exactly among Ocwen and Walter is seeking assignment of Fannie Mae's contracts with the Debtors. Fannie Mae therefore objects to the deadline set by the Debtors with respect to this Objection.

15. Fannie Mae further notes that, pursuant to *Corrected Notice of Filing Amended Assumption and Assignment Notice in connection with Sale Procedures Order* dated July 25, 2012 [Docket No. 914] (the "Corrected Notice"), the proper deadline for Fannie Mae to object to assumption and assignment of agreements should be November 19, 2012. The Corrected Notice provides in relevant part that:

> The deadline for objecting to approval of any Cure Amounts (a "Cure Objection") shall be September 28, 2012, at 5:00 p.m. (Eastern Time) (the "Cure Objection Deadline"). The deadline for objecting to the assumption by the Debtors and assignment to Nationstar of an Assumed Contract (an "Assignment Objection") shall be September 28, 2012, at 5:00 p.m. (Eastern Time) provided, however, that in the event the Sale Procedures result in a Successful Bidder other than Nationstar (in respect of the Nationstar Purchased Assets) the deadline for an Assignment Objection shall be at the Sale Hearing [which shall be held on November 19, 2012].

Corrected Notice ¶8 at p. 3 (emphasis added). Because Ocwen was determined by the Debtors to be the Successful Bidder, the Sale Hearing is the proper deadline for any Assignment Objection and Fannie Mae objects to any earlier deadline being imposed other than the time of the Sale Hearing without proper notice, and reserves its rights to supplement, amend or otherwise modify this Objection.

16. The Corrected Notice further provides in relevant part that:

> If a party other than Nationstar is determined to be the highest and best bidder for the assets to be sold pursuant to the Nationstar Sale Transactions, you will receive a separate notice providing additional information regarding the treatment of your contract(s) or unexpired lease(s); *provided, however*, that if the applicable Cure Amount has been established pursuant to the procedures set forth in this Notice, it shall not be subject to further dispute if the new purchaser seeks to acquire such contract or unexpired lease

Corrected Notice ¶23 at p. 6 (emphasis added). Because Fannie Mae has not received any notice regarding Ocwen/Walter's treatment of its agreements with the Debtors, Fannie Mae further objects to the any earlier deadline being imposed on Fannie Mae without proper notice, and reserves its rights to supplement, amend or otherwise modify this Objection.

The Injunction in the Proposed Sale Order is Overly Broad

17. The Sale Motion seeks (i) to improperly absolve the Purchaser from assuming liabilities and performing obligations that could be traced to any pre-Closing action or omissions under contracts assumed and assigned by the Debtors (even without the consent, or over the objection, of the non-debtor contract counterparty), including without limitation, indemnification obligations under such agreements that are unliquidated or unknown at the time of Closing and (ii) to improperly enjoin the non-debtor contract counterparties parties from enforcing such obligations. In this regard, the Sale Motion states, in relevant part, as follows:

> [Ocwen/Walter] is not assuming and parties will be enjoined from asserting against [Ocwen/Walter] any claims or obligations relating to the pre-closing period under any Assumed Contract, whether such claims or obligations are

> known, unknown, fixed, contingent, unliquidated or liquidated at the time of the Closing, including, without limitation, any claims or liabilities relating to any act or omission of any originator, holder or servicer of mortgage loans prior to the Closing Date, and any indemnification claims or liabilities relating to any act or omission of the Sellers or any other person prior to the Closing Date. Any parties holding any such claims or obligations will be required to respond to the Debtors' cure notice if they disagree with the amounts set forth therein.[5]

18. As noted in the First Fannie Mae Sale Objection, the attempt to enjoin such "pre-closing acts" violates the Conservator's rights under HERA and the anti-injunction provisions set forth therein.[6] In addition, Fannie Mae's enforcement of its post-Closing contract rights against an assignee cannot be enjoined. For example, if the Debtors failed to timely pursue their rights and remedies pre-Closing with respect to servicing a mortgage, that failure would not excuse any purchaser's post-Closing servicing obligations to pursue such rights and remedies. *See also FHFA v. Ally Financial Inc., et al.*, 11-CV-7010 (DLC) (S.D.N.Y.) (July 17, 2012) ("HERA's anti-injunction provision must be construed broadly to preclude judicial action of any kind that could impair the FHFA's ability to carry out its statutorily mandated function,")

19. In addition, a significant portion of Fannie Mae's claims against the Debtors will accrue post-Closing. If there is a post-Closing default on a mortgage and there was a violation in the origination of that mortgage for which there is recourse against the Debtors, either the Debtors or the purchaser must be responsible for such liability. If a purchaser is not intended to be the responsible party for such claims despite the Bankruptcy Code's requirements that the purchaser must assume the ongoing obligations in full, then the Debtors must obtain the consent of Fannie Mae, which consent Fannie Mae would only provide if the Debtors make such

---

[5] Sale Motion ¶ 60; *see also* Amended Notice ¶¶12, 13, 25; *Order Under 11 U.S.C. §§ 105, 363(b) and 365 (I) Authorizing and Approving Sale Procedures, Including Payment of Break-Up Fees; (II) Scheduling Bid Deadline, Auction (If Necessary) and Sale Hearing; (III) Establishing Assumption and Assignment Procedures, Including Procedures for Fixing Cure Amounts; and (IV) Establishing Notice Procedures and Approving Forms of Notice* dated June 28, 2012 [Docket No. 538] (the "Sale Procedures Order") ¶ 28; Proposed Sale Order ¶¶R, T, 5, 6, 7, 19, 10, 17, 19-20.

[6] First Fannie Mae Sale Objection ¶2, 60-64.

provisions as are acceptable to Fannie Mae to ensure that the Debtors will be responsible for and pay in full any such liabilities.

20. Any attempt by the Debtors to improperly characterize the aforementioned proposed limitations as "cure" obligations and/or to otherwise utilize cure payments or an "escrow" to limit or absolve the Debtors' or the Purchaser of future performance and enjoin Fannie Mae from enforcing future performance in connection with claims or obligations arising from the pre-Closing period, or to potentially restrict Fannie Mae from recovery in full, would violate the Bankruptcy Code. Rather, the Debtors and Purchaser must demonstrate adequate assurance of future performance of such obligations. *See* 11 U.S.C. § 365(b)(1)(C) (After a default in an executory contract of the debtor, the debtor must "provide[] adequate assurance of future performance under such contract or lease."); *see also Stoltz v. Brattleboro Hous. Auth.* (*In re Stoltz*), 315 F.3d 80, 86, 94 (2d Cir. 2002) and First Sale Objection ¶21.

21. As part of adequate assurance of future performance, Ocwen/Walter must demonstrate that they have the financial and operational resources and personnel to service the Fannie Mae mortgage loan portfolio. Fannie Mae has yet to receive this information; indeed, Fannie Mae has not received any indication that Ocwen/Walter will meet the eligibility requirements to be a servicer for Fannie Mae.

Bankruptcy Code Section 363
<u>Does Not Trump Bankruptcy Code Section 365</u>

22. In addition, the Debtors are not permitted to rely on section 363 of the Bankruptcy Code to limit the Purchaser's obligations under contracts assumed and assigned pursuant to section 365 of the Bankruptcy Code. *Cinicola v. Scharffenberger,* 248 F.3d 110, 124 (3d Cir. 2001) ("the sale of an executory contract triggers the protections afforded sales of bankruptcy estate property but also requires satisfaction of the requirements for assuming and/or assigning

the same executory contract."); *In re Dehon*, 352 B.R. 546, 563 (Bankr. D. Mass 2006) ("Without an assumption of the contracts, which is *the* mechanism for a trustee or debtor to secure enforceable rights against the non-debtor contracting party, they could not assign any enforceable rights to a third party) (citations omitted, emphasis in original); *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 47-48 (Bankr. D. Del. 1999) ("An executory contract does not become an asset of the estate until it is assumed pursuant to § 365(a) of the Code," and "[a] debtor cannot avoid the requirements of § 365 by saying it is 'selling' a lease or executory contract, rather than assuming and assigning it.").

The Debtors' Attempt to Rewrite its
Contracts with Fannie Mae Should Not be Countenanced

23. As stated in the First Fannie Mae Sale Objection, the Debtors must either (i) cure all outstanding defaults and provide adequate assurance of future performance in order to assume and assign and assign an executory contract or (ii) reject a contract. The Debtors cannot without the consent of its counterparty modify a contract. In addition to the impermissible severing of origination obligations and servicing rights in the face of detailed nonseverability provisions proposed by the Debtors that are discussed at length in the First Fannie Mae Sale Objection (*see* ¶¶ 30-59), there are definitions in the Ocwen APA which impermissibly alter rights, claims and obligations associated with the Debtors' obligations under existing contracts with Fannie Mae. For example, there are definitions of Contracts and Assumed Contracts which relate to the possible assumption and assignment of a Servicing Agreement pursuant to Section 2.2 of the Ocwen APA. There are also definitions of Mortgage Servicing and Mortgage Servicing Rights (or MSRs) which relate to the sale and transfer of Purchased Mortgage Servicing in accordance with Section 2.1 of the Ocwen APA. Specific provisions of the Ocwen APA identified to date that impermissibly alter

agreements among Fannie Mae and the Debtors in violation of the Bankruptcy Code are set forth in Exhibit A and incorporated herein by reference.

24. The Sale Motion also seeks to improperly rewrite and narrow the Purchaser's servicing duties and obligations under contracts proposed to be assumed and assigned to the Purchaser. Indeed, those duties and obligations are far broader than those that the Debtors are proposing be assumed and assigned. The Ocwen APA first provides that Ocwen will assume "Servicing Agreements" only as defined under the Ocwen APA, Ocwen APA §2.2(b); and the Proposed Sale Order then improperly provides that Ocwen's obligations under such "Servicing Agreements" will be limited to obligations and agreements related to the following:

> (a) collections with respect to, or the administration or servicing or subservicing or master servicing of, or reporting in respect of, Mortgage Loans, (b) servicing fees or ancillary income, (c) the disbursement of collections with respect to Mortgage Loans, (d) the making of delinquency advances and servicing advances in connection with the servicing or subservicing or master servicing of Mortgage Loans, (e) payment of expenses associated with the administration, servicing or subservicing or master servicing of Mortgage Loans, (f) the limitation on liability of, and indemnification in favor of, the servicer, subservicer or master servicer thereunder, or (g) representations, warranties and covenants running in favor of the servicer, subservicer or master servicer thereunder....[7]

The Debtors May Not Designate Contracts for
Assumption and Assignment without Proper Notice

25. The Debtors have improperly "expressly reserved" their rights with respect to contract designation for assumption and assignment, including their attempt to designate additional contracts to be assumed and assigned without providing expressly for a process to provide adequate notice to contract counterparties. As noted in the First Fannie Mae Sale Objection, due process requires that a contract counterparty receive a notice with respect to each

[7] Proposed Sale Order ¶P. In further support of this issue, Fannie Mae specifically notes paragraph 17 and footnote 14 of the *Pre-Auction Objections of the RMBS Trustees to the Debtors' Sale Motion* [Docket 1242], and incorporates same in this Objection.

contract sought to be assumed and a reasonable opportunity to respond. *See* First Fannie Mae Sale Objection ¶¶14-18. The Amended Notice provided, in relevant part, as follows.

> …. Until the Contract Designation Deadline, the Purchaser also may, subject to certain limitations specified in the Nationstar APA (applicable only as between the parties thereto), designate additional contracts or leases as Assumed Contracts to be assumed and assigned, and in such event the Debtors shall provide notice, <u>in a manner generally consistent with the Assumption and Assignment Procedures</u>, to the affected non-debtor counterparties indicating that the Debtors intend to assume and assign additional Assumed Contracts.
>
> * * *
>
> Until the Assumption Effective Date, assumption and assignment thereof is subject to the Purchaser's rights to modify the designation of Assumed Contracts as set forth in paragraph [17] above. Except as otherwise provided by the APA, the Purchaser shall have no rights in and to a particular Assumed Contract until such time as the particular Assumed Contract is assumed and assigned in accordance with the procedures set forth herein.[8]

26. In this regard, while the Debtors have not designated for assumption and assignment that certain Early Advance Funding Mechanism Term Sheet, dated August 1, 2010, as amended and restated on January 18, 2011, and August 1, 2011 (the "<u>Fannie Mae EAF Facility</u>"), pursuant to which Fannie Mae provides early partial reimbursement of certain advances made with respect to Fannie Mae loans, both Ocwen and Walter appear to have indicated they wish to assume the Fannie Mae EAF Facility. Putting aside the failure of the Debtors to include the Fannie Mae EAF Facility in its notices of assumption and assignment, the Fannie Mae EAF Facility cannot be assumed because it is a contract that provides for a financial accommodation. *See* 11 U.S.C.A. § 365(c)(2) ("The trustee may not assume or assign any executory contract ... if ... such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue security of the debtor.").

---

[8] Amended Notice ¶21 (emphasis added); *see also* Sale Procedures Order ¶22. The reference in the Amended Notice to paragraph 17 appears to be a typographical error and the reference should actually be to paragraph 18.

27. It should be noted that Walter's servicing subsidiary has its own EAF Facility (the "GreenTree EAF Facility"), and Fannie Mae is neither consenting to the assignment of the Fannie Mae EAF Facility, nor is it agreeing to any increase in the GreenTree EAF Facility. Any financing with respect to mortgage servicing rights and servicing advances must be agreed to by Fannie Mae and the Conservator.

Not All Provisions in an Agreement that Prevent Assumption and
Assignment of Such Agreement Are Invalid Anti-Assignment Provisions

28. The Proposed Sale Order improperly seeks a vague declaration that certain anti-assignment provisions are invalid, as follows:

> To assist in the assumption, assignment and sale of the Assumed contracts, the Sale Approval Order with respect to the [Ocwen] APA should provide that certain anti-assignment provisions shall not restrict, limit or prohibit the assumption, assignment and sale of the Assumed Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.[9]

29. Not all provisions that prevent assumption and assignment are anti-assignment provisions. For example, as noted in the First Fannie Mae Sale Objection, a nonseverability clause is not an anti-assignment provision and is enforceable even if it does prevent a partial assumption and assignment. *See* First Fannie Mae Sale Objection ¶¶39-40.

Fannie Mae is Unable to Determine
Who, if anyone, Will Be Subservicing
Fannie Mae Mortgage Loans For Ally Bank, N.A.

30. Under the Nationstar APA, Nationstar had agreed to assume the servicing obligations relating to the loans that the Debtors currently subservice for Ally Bank, N.A. ("Ally Bank"), including approximately some 462,000 Fannie Mae mortgage loans with an unpaid principal balance of approximately $93 billion (the "Ally Subserviced Loans").[10] The Ally Subserviced Loans were loans originated by Ally Bank and are presently serviced by Ally Bank

[9] Sale Motion ¶91; *see also* Proposed Sale Order ¶U, 18.
[10] *See* Nationstar APA at § 6.31.

and subserviced by the Debtors. It is entirely unclear who among Ocwen and Walter will assume the Debtors' obligations with respect to the Ally Subserviced Loans. The Ocwen APA appears not to provide for the transfer of Ally Subserviced Loans.[11] The failure to properly address the servicing of some $90 billion of Fannie Mae's mortgage loans could cause significant servicing disruptions and massive liabilities for the Debtors, as it presently appears that the Debtors will continue to subservice these for Ally Bank even though they are liquidating their operations. The Subserviced Loans comprise over half of the Fannie Mae loan portfolio currently serviced (or subserviced) by the Debtors. The absence of clarity regarding the status of the Ally Subserviced Loans, coupled with the dismantling of the Debtors' servicing platform, creates substantial risk to Fannie Mae that must be resolved.

<u>Other Objectionable Sale Provisions</u>

31. The following provisions in the Sale Motion, Proposed Sale Order, Ocwen APA and other sale documents are also improper:

- Provisions that alter or impair rights of setoff or entitlement to recoupment under or in relation to any agreement after an assignment to the Purchaser;
- Attempts to transfer beneficial ownership of funds held in trust by the Debtors, would contravene section 363 of the Bankruptcy Code which bars the sale of property that is not the property of the estate; and
- Any attempt to assume expired contracts or non-Debtor contracts would violate section 365 of the Bankruptcy Code.

32. Fannie Mae reserves all of its rights under the Bankruptcy Code and applicable non-bankruptcy law including HERA with respect to the Sale Motion and any related notices and/or other filings, the Fannie Mae Sale Objections and any sale objection filed by other parties-

---

[11] *See* Ocwen APA (deleting § 6.31 of the Nationstar APA).

in-interest in which Fannie Mae joins, and Fannie Mae reserves the right to amend, supplement or otherwise modify the Fannie Mae Sale Objections.

## CONCLUSION

For the foregoing reasons, Fannie Mae respectfully requests that the Court deny the Sale Motion and grant such other and further relief as is just and necessary.

Dated: New York, New York
November 7, 2012

**WINSTON & STRAWN LLP**

By: /s/David Neier

David Neier (dneier@winston.com)
Carey D. Schreiber (cschreiber@winston.com)
Corina I. Bogaciu (cbogaciu@winston.com)
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for Fannie Mae*