Bradford Sandler, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7000
Facsimile: (212) 561-7777

Counsel to the Plaintiff

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | |
| ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC et al., ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | (Joint Administration) |
| ) | |
| AMERICAN RESIDENTIAL EQUITIES, ) | |
| LLC, in its own individual capacity and in its ) | |
| capacity as Trustee under that certain ) | Adv. Pro. No. 12-_____ |
| American Residential Equities, LLC Master ) | |
| Trust Agreement dated August 8, 2005, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GMAC MORTGAGE, LLC, as successor by ) | |
| merger to GMAC Mortgage Company, and ) | |
| BALBOA INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ADVERSARY COMPLAINT

American Residential Equities, LLC ("ARE"), in its own individual capacity and in its

capacity as Trustee under that certain American Residential Equities LLC Master Trust

Agreement dated August 8, 2005, as amended (the "Trust Agreement"), a true and correct copy

of which Trust Agreement is attached hereto as Exhibit "A," by and through its undersigned

counsel of record, as and for its Complaint against GMAC Mortgage, LLC, as successor by merger to GMAC Mortgage Company ("GMAC"), and Balboa Insurance Company ("Balboa" and together with GMAC, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.  At all relevant times, ARE acquired, held and ultimately liquidated pools of non-performing residential mortgage loans (the "Loans") which are secured by real property (the "Mortgaged Properties").

2.  GMAC is in the business of, among other things, servicing mortgage loans, and through a series of agreements, as amended (collectively, the "Servicing Agreement"), agreed to service the Loans. A true and correct copy of the Servicing Agreement (along with its amendments) is attached hereto as Exhibit "B."[1]

3.  This is an action against GMAC for, among other things, breach of the Servicing Agreement, including GMAC's failure to perform its obligations and to timely and fully remit payments to ARE as required by the Servicing Agreement. Notably, the Servicing Agreement specifically required GMAC to retain all funds received by it in connection with the Loans and Mortgaged Properties "separate and apart from any of its own funds and general assets" and in a specifically identified trust account (the "Trust Account"). See Exhibit B § 2.04. Thus, any monies held by GMAC, or which should have been held by GMAC, in the Trust Account are not property of the Debtors' estates and should be immediately turned over to ARE.

4.  ARE brings claims against GMAC for declaratory judgment, breach of contract, conversion, turnover, unjust enrichment and for an accounting.

---

[1] Capitalized terms not defined herein shall and do have the meaning ascribed to them in the Servicing Agreement attached hereto as Exhibit "B".

5.  Separately, ARE also seeks damages (including punitive damages) for the fraud perpetrated by GMAC and Balboa in connection with a secret deal whereby GMAC placed insurance for certain of the Mortgaged Properties with Balboa at artificially inflated prices, with GMAC receiving undisclosed "commissions."

## THE PARTIES

6.  ARE is a limited liability company formed under the laws of the state of Delaware.

7.  Upon information and belief, GMAC is a limited liability company formed under the laws of the State of Delaware that maintains its principal place of business in Horsham, Pennsylvania.

8.  Upon information and belief, Balboa is a California corporation that maintains its principal place of business in California.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction to consider this matter under 28 U.S.C. § 157 and 1334.

10. This is a core proceeding under 28 U.S.C. § 157.

11. Venue of these chapter 11 cases and this adversary proceeding in this district and before this Court is proper under 28 U.S.C. §§ 1408, and 1409.

12. The statutory and legal predicates for the relief requested by the Complaint are section 105 and 541 of the title 11, United States Code (the "Bankruptcy Code"), and Pennsylvania state law.  See Ex. B § 13.07.

## STATEMENTS OF FACTS

**A.    Background**

13. ARE entered into the Trust Agreement on August 8, 2005.

14. Pursuant to the Trust Agreement, ARE, solely in its capacity as Trustee, was authorized to take title to certain mortgage loans and/or REO Property (as defined in Section 1.01 of the Servicing Agreement attached hereto as Exhibit "B") (collectively, the "Assets") on behalf of the beneficiaries of the Trust (the "Beneficiaries").

15. GMAC had actual and constructive knowledge that ARE was acting in its capacity of Trustee or on behalf of other third-parties. Upon commencement of servicing, all assets were titled in the names of the Beneficiaries or other entities on whose behalf ARE managed certain of the assets. Those parties, as third party beneficiaries of the servicing contract, conducted business directly with GMAC, transferring title of their assets into GMAC's name, and often receiving wires directly from GMAC. GMAC owed fiduciary duties to the beneficiaries.

16. The Beneficiaries and other third-parties, not ARE, are entitled to the earnings, avails and proceeds of the Assets held pursuant to the Trust Agreement.

17. ARE, as Trustee or asset manager, is entitled to, and obligated to pursue these claims on behalf of the Beneficiaries and/or third parties.

18. The loan portfolio held by ARE was largely acquired from Goldman Sachs.

19. Both Goldman Sachs and ARE utilized GMAC to service the Loans.

20. Specifically, on April 7, 2004, ARE and GMAC entered into a Commitment letter, later extended, pursuant to which GMAC began servicing the Loans. On or about July 29, 2004, ARE and GMAC signed a comprehensive Servicing Agreement pursuant to which GMAC agreed to service the Loans for ARE.

21. The Servicing Agreement was subsequently amended by amendments dated January 1, 2006, February 1, 2007, April 10, 2008, and February 6, 2009.

22. The Servicing Agreement required GMAC to perform, among other things, the following: maintain loan files and mortgage loan documents; communicate with borrowers; collect mortgage payments; administer, carry out and advance payments for the lender's obligations under the mortgage loan documents; ensure that the Mortgaged Properties are inspected, maintained, and adequately insured; ensure that the borrowers' obligations under the mortgage loan documents are maintained; handle all collection activity, including but not limited to, mortgage foreclosure proceedings upon borrower defaults; arrange and sell Mortgaged Properties recovered through foreclosure proceedings; and remit payments and reports to ARE in connection with the Mortgaged Properties (the foregoing duties and obligations, among others, are collectively referred to as the "Servicers' Duties", which Servicers' Duties are more fully set forth in Article II of the Servicing Agreement attached as Exhibit "B").

23. Pursuant to the terms of the Servicing Agreement, GMAC was also required to "segregate and hold all funds collected and received pursuant to the Mortgage Loans separate and apart from any of its own funds and general assets and [    ] establish one or more Custodial Accounts, in the form of time deposit or demand accounts, titled 'GMAC Mortgage Corporation, in trust for [    ] re: Fixed and Adjustable Rate B/C Residential Mortgage Loans.'"

24. Pursuant to the terms of the Servicing Agreement, each month, GMAC was required to remit to ARE, by wire transfer of immediately available funds, all funds in the

Custodial Accounts (net of proper charges under the Servicing Agreement), and all amounts GMAC was otherwise obligated to distribute pursuant to Section 3.04.

25. Pursuant to the terms of the Servicing Agreement, on each Remittance Date, GMAC was also required to provide to ARE a Remittance Report, with a trial balance report attached, in an agreed-upon form.

**B.     GMAC Breaches the Servicing Agreement**

26. GMAC failed to comply with the terms of the Servicing Agreement and mismanaged the Assets in numerous ways, including, but not limited to:

a. Failing to diligently pursue foreclosures in an efficient or timely manner;

b. Failing to properly or adequately communicate with borrowers as required by law, or prudent in mitigating loan losses;

c. Maintaining, inspecting and/or reporting on the wrong property securing the Loans;

d. Failing to properly secure Mortgaged Properties and/or REO Properties from damage due to the elements and/or vandals;

e. Failing to properly maintain Mortgaged Properties and/or REO Properties, thereby subjecting them to violations of law and governmental fines;

f. Servicing Mortgaged Properties and/or REO Properties that were deemed a total loss as though they were in good condition;

g. Selling REO Properties in violation of its authority under the Servicing Agreement;

h. Over-insuring Mortgaged Properties and/or REO Properties;

i. Failing to timely file, or adequately pursue filed insurance claims;

j. Failing to exclude ARE's assets from the Homeowner's Affordability and Stability Plan and/or the federal HAMP program, despite ARE's written demand to exclude its assets from the program;

k. Failing to follow the approval matrix set forth in the Fourth Amendment to the Servicing Agreement;

    l. Failing to timely provide ARE with required reports and properly requested information relating to the Loans and REO Properties;

    m. Failing to provide backup documentation and invoices for advances and expenses billed to ARE;

    n. Failing to furnish complete mortgage files to ALS, ARE's subsequent servicer, pursuant to the Servicing Agreement and the transfer instructions by ARE in its April 1, 2010 letter, adversely affecting ALS's ability to service the Loans and REO Properties;

    o. Failing to pay ARE its April, 2010 remittance, consisting of trust monies held for the benefit of ARE, pursuant to Section 3.01 of the Servicing Agreement; and

    p. Failing to remit to ARE sums which GMAC had collected on behalf of ARE, which were trust monies held for the benefit of ARE, and were rightfully owed to and owned by ARE.

  27. In addition, GMAC continually refused or failed to properly allocate service charges between ARE and Goldman Sachs, pursuant to their agreement to do so. Instead, GMAC wrongfully over-charged ARE with servicing expenses that should have been billed to Goldman Sachs.

  28. Moreover, in complete disregard of ARE's contractual right to "examine and audit any and all of the books, records, or other information" of GMAC, GMAC refused ARE's demand of an audit.

  29. Finally, GMAC failed to timely and fully turnover to ARE all funds due to it under the Servicing Agreement.

## COUNT I
**(Declaratory Judgment against GMAC)**

  30. ARE repeats and realleges each of the foregoing facts as if fully set forth herein.

31. A controversy exists regarding whether the assets held in the Custodial Accounts established pursuant to Section 2.04 of the Servicing Agreement as of the date the Debtors filed for bankruptcy are property of the Debtors' estate or are property of ARE.

32. Declaratory relief from the Court will resolve and terminate the controversy. A judicial declaration is therefore necessary to determine the parties' rights and obligations under Section 2.04 of the Servicing Agreement.

33. ARE is entitled to a declaratory judgment that all assets held in the Custodial Accounts as of the date the Debtors filed for bankruptcy are not property of the Debtors' estate and are property of ARE.

## COUNT II
### (Breach of Contract against GMAC)

34. ARE repeats and realleges each of the foregoing facts as if fully set forth herein.

35. The Servicing Agreement is a valid, binding contract between ARE and GMAC.

36. ARE has performed all of its obligations under the Servicing Agreement.

37. GMAC has breached the Servicing Agreement by:

    a. Failing to diligently pursue foreclosures in an efficient or timely manner;

    b. Failing to properly or adequately communicate with borrowers as required by law or prudent in mitigating loan losses;

    c. Maintaining, inspecting and/or reporting on the wrong property securing the Loans;

    d. Failing to properly secure Mortgaged Properties and/or REO Properties from damage due to the elements and/or vandals;

    e. Failing to properly maintain Mortgaged Properties and/or REO Properties, thereby subjecting them to violations of law and governmental fines;

    f. Servicing Mortgaged Properties and/or REO Properties that were deemed a total loss as though they were in good condition;

    g. Selling REO Properties in violation of their authority under the Servicing Agreement;

    h. Over-insuring Mortgaged Properties and/or REO Properties;

    i. Failing to timely file, or adequately pursue filed insurance claims;

    j. Failing to exclude ARE's assets from the Homeowner's Affordability and Stability Plan and/or the federal HAMP program despite ARE's written demand to exclude its assets from the program;

    k. Failing to follow the approval matrix set forth in the Fourth Amendment to the Servicing Agreement;

    l. Failing to timely provide ARE with required reports and properly requested information relating to the Loans and REO Properties;

    m. Failing to provide backup documentation and invoices for advances and expense billed to ARE;

    n. Failing to furnish complete mortgage files to ALS pursuant to the Servicing Agreement and the transfer instructions by ARE in its April 1, 2010 letter, adversely affecting ALS's ability to service the Loans and REO Properties;

    o. Failing to pay ARE its April, 2010 remittance pursuant to Section 3.01 of the Servicing Agreement;

    p. Failing to timely and fully turnover to ARE all funds due it under the Servicing Agreement, all of which were trust monies held for the benefit of ARE, and rightfully owed to and owned by ARE;

    q. Improperly allocating servicing expenses of other lenders, specifically Goldman Sachs, to ARE, over and improperly charging ARE servicing fees and refusing to itemize or account for these charges; and

    r. Refusing to allow ARE to examine, or audit the books and records of GMAC, as properly requested by ARE.

    38. As a direct and proximate result of GMAC's breaches of the Servicing Agreement, ARE has been damaged.

    39. ARE is entitled to a judgment against GMAC for damages resulting from GMAC's breach of the Servicing Agreement in an amount to be determined at trial.

## COUNT III
### (Conversion against GMAC)

40.  ARE repeats and realleges each of the foregoing facts as if fully set forth herein.

41.  GMAC took into its possession cash proceeds of collections on ARE's loan portfolio. Instead of remitting all of those funds after expenses, per its contractual obligations, GMAC converted portions of them by exercising dominion and control over the funds belonging to ARE, keeping same for GMAC's own account ("GMAC's Retained Proceeds").

42.  GMAC's retention of GMAC's Retained Proceeds has deprived and continues to deprive ARE of its lawful right to those proceeds.

43.  GMAC's retention of GMAC's Retained Proceeds has been and continues to be without ARE's consent and without justification.

44.  ARE is entitled to a judgment against GMAC in an amount to be determined at trial as a direct and proximate cause of GMAC's conversion of GMAC's Retained Proceeds.

## COUNT IV
### (Turnover Against GMAC)

45.  ARE repeats and realleges each of the foregoing facts as if fully set forth herein.

46.  GMAC holds assets that it received in its role as the Servicer of the Mortgage Loans.

47.  The assets that GMAC holds under the Servicing Agreement belong to ARE.

48. ARE is entitled to a judgment directing GMAC to immediately turnover to ARE all assets held by GMAC under the Servicing Agreement.

## COUNT V
### (Accounting against GMAC)

49. ARE repeats and realleges each of the foregoing facts as if fully set forth herein.

50. ARE has a contractual and common law right to an accounting to determine (a) all money received by GMAC with respect to the Mortgage Loans that are the subject of the Servicing Agreement; (b) all expenses that were purportedly incurred with respect to the Servicing Agreement; (c) all expenses paid (including documentation indicating the date of payment, the amount of payment and the recipient of each payment) with respect to the Servicing Agreement; (d) all amounts currently retained by GMAC with respect to the Loans; (e) all amounts GMAC "paid itself" with respect to the Loans (including the dates and amounts); (f) all amounts GMAC actually paid to ARE under the Servicing Agreement, (g) all amounts paid with the proceeds from the Loans to any third-party, and invoices therefor, regardless of whether such payments were authorized or required under the Servicing Agreement; and (h) an itemization of allocations of servicing fees between ARE and Goldman Sachs.

51. GMAC has refused and continues to refuse to comply with ARE's contractual right for an audit.

52. ARE is entitled to a judgment directing GMAC to provide an accounting of all monies received, dispersed or held by it with respect to the Loans under the Servicing Agreement.

## COUNT VI
### (Fraud against GMAC and Balboa)

53. ARE repeats and realleges each of the foregoing facts as if fully set forth herein.

54. As part of the Servicers' Duties, GMAC was authorized to purchase property insurance to insure each Mortgaged Property subject to the Loans, if the owners of the Mortgaged Property failed to adequately maintain insurance on such Mortgaged Property.

55. The costs of force-placed insurance are initially incurred by the servicer, GMAC, which is responsible for advancing the money to pay the insurance premiums. GMAC, however, recoups any of its costs, expenses or advances it incurs "off the top" from ARE's proceeds of collection or liquidation of the loan collateral, before any money is passed through to ARE, the owner of the loans. This entitlement includes force-placed insurance premiums paid by GMAC, which are counted as reimbursable servicing advances under GMAC's agreement with ARE. Furthermore, if proceeds of a particular loan are insufficient to enable GMAC to recoup its advances on a particular loan, GMAC reimburses itself from the cash collected from Plaintiff's other loans covered by the Servicing Agreement.

56. GMAC utilized Balboa as its source for its force-placed insurance coverage with respect to Mortgaged Properties and the Loans. When GMAC force-placed coverage for the Loans with Balboa, GMAC then charged ARE for the cost incurred to Balboa.

57. However, GMAC and Balboa, acting in concert, had an arrangement which was secret as to ARE, pursuant to which Balboa "kicked back" to GMAC, directly or indirectly, sums of money labeled as "commissions." The kickbacks improperly inflated the cost of the insurance, as the premiums charged by Balboa to GMAC were intentionally increased to include the amount of the "kickback."

58. GMAC and Balboa entered into this scheme in 2003, prior to ARE entering into its contract with GMAC in 2004, and unbeknownst to ARE. Had ARE been aware of this kickback arrangement between the parties, ARE would never have entered into a contractual relationship with GMAC. ARE, on the contrary, relied on GMAC's high rating as an industry servicer, and its stated intention and ability to conduct the servicing of ARE's portfolio in the best interests of ARE and in transparent compliance with the Servicing Agreement.

59. ARE, through the duration of its relationship with GMAC and beyond, continued to rely on the premise that GMAC and Balboa had conducted their business fairly with ARE, and that there was no reason to question the authenticity or nature of their charges.

60. ARE has since discovered that GMAC reimbursed itself out of ARE's monies for artificially inflated costs of the forced placed insurance, made unnecessarily more expensive so that GMAC could make a profit at the expense of ARE, all the while hidden from ARE.

61. GMAC, aided and abetted by Balboa, grossly violated its duties owed to ARE by making a secret profit on the forced placed insurance with Balboa.

62. The above-described kickback scheme (the "Kickback Scheme") was carried out by GMAC with malice and knowledge that it had not disclosed to ARE the existence and nature of the scheme.

63. GMAC concealed the Kickback Scheme so as to induce ARE to rely upon the appearance that proper force-placed insurance coverage had been obtained on ARE's behalf and that nothing exceeding appropriate payment of premiums for that insurance coverage had been suffered.

64.     Balboa, with malice, intentionally inflated its insurance premiums so that it could offer a kickback to loan servicers such as GMAC, undisclosed and to the detriment of the loan owners (i.e., ARE).

65.     ARE believes that the nature of this illicit relationship, with its inherent conflict between servicer and its own clients, constitutes a breach of duty in of itself and led to further acts of betrayal where GMAC chose to elevate its own and Balboas' interests over those of its clients. Specific frauds committed by GMAC in pursuit and furtherance of the kickback scheme, included but are not limited to GMAC's intentional failure to submit insurable claims of ARE to Balboa, failure of GMAC to adequately pursue submitted claims of ARE to Balboa, GMAC causing ARE to obtain insurance from Balboa for higher value policies than necessary or reasonable, and/or for causing ARE to obtain policies from Balboa where forced-placed insurance was not warranted or was placed at inflated prices. ARE believes and alleges that GMAC and Balboa acted in concert, and GMAC had incentive to protect Balboa's financial interest, and often did so by failing to pursue ARE's insurable claims, and causing ARE to obtain unnecessary or inflated policies, to ARE's significant detriment.

66.     In furtherance of the scheme to defraud Plaintiffs, GMAC and Balboa acted a co-conspirators, and agents, of the other. GMAC allowed Balboa to take over its own servicing functions in all aspects of evaluating insurance needs, a clear conflict, as Balboa would financially benefit from the "finding" of need for its services. Balboa employees acted as agents of GMAC, contacting borrowers, identifying themselves as GMAC employees, and discussing the insurance status and needs of Borrowers. Notices from GMAC in regard to insurance issues, although allegedly issued from GMAC's Insurance Department, per their letterhead, were in fact, issued by Balboa employees. Additionally, Balboa was permitted to manage the billing of force-

placed insurance to borrowers, with little to no oversight by GMAC, despite the clearly self-serving nature of same, and clear detriment to GMAC's clients. The existence of this agency relationship was never disclosed to Plaintiffs, and was, in fact, hidden from Plaintiffs, for the express purpose of furthering the fraudulent scheme.

67. GMAC has wrongfully collected commissions for providing insurance services that it has never provided to Plaintiffs.

68. The continuing nature of these fees, for as long as the force-placed insurance remains in place, often for as long as it takes to foreclose the property, also gave incentive to GMAC to improperly delay foreclosures for as long as possible. Once a foreclosure occurred, much cheaper insurance without profitable kickbacks to the servicer, were available to the lender, now owner of the real estate. Therefore, it became a conflict of interest that GMAC seized upon, to intentionally delay Plaintiffs' foreclosures for as long as possible to maximize their own profits, both through kickbacks and all servicing fees, and to the great financial detriment of Plaintiffs.

69. As a proximate result of the fraudulent concealment by GMAC and Balboa, ARE has been damaged. Additionally, the actions of GMAC and Balboa in regard to the above-described scheme are so willfully in violation of the rights of ARE as to warrant the imposition of substantial punitive damages against GMAC and Balboa so as to deter similar conduct in the future by GMAC and Balboa and others in the community.

70. ARE is entitled to a judgment against GMAC and Balboa, jointly and severally, for damages in an amount to be determined at trial, including an award of punitive damages.

## COUNT VII
### (Unjust Enrichment as to GMAC)

71. ARE repeats and realleges each of the foregoing facts as if fully set forth herein.

72. Pursuant to the Servicing Agreement, GMAC was to act as ARE's agent to obtain insurance coverage on properties securing the ARE loans in the event the borrower(s) failed to keep property insurance in place.

73. GMAC utilized its position as ARE's servicing agent, thus controlling in excess of 2,600 loan files, to negotiate with GMAC's contracted provider of such insurance, Balboa, a secret benefit for GMAC in the nature of a "commission" or "kickback" related to placing business with Balboa for procuring insurance coverage on the properties which secured the ARE loans being serviced by GMAC.

74. The secret profit taken by GMAC as described above was not authorized by ARE nor permitted by the Servicing Agreement. Any such savings should have been passed on by GMAC (as agent) to its principal, ARE. GMAC did not pass on to ARE the savings generated by the above-described commission arrangement, was wrongfully and fraudulently collected, and as a result, GMAC has unjustly enriched itself at the expense of ARE, and should be required to disgorge those wrongful gains.

WHEREFORE, ARE demands judgment against GMAC for damages in excess of $75,000 plus interest and costs.

## CONCLUSION

WHEREFORE, ARE respectfully requests that the Court enter judgment as follows:

1. On Count I, a judgment declaring that any assets held in any Custodial Account created pursuant to the Servicing Agreement are property of ARE, and not property of any of the Debtors;

2. On Count II, a judgment for damages in an amount to be determined at trial;

3. On Count III, a judgment for damages in an amount to be determined at trial;

4. On Count IV, an order directing GMAC to immediately turnover to ARE all assets held by GMAC under the Servicing Agreement;

5. On Count V, an order directing GMAC to account for all monies received, dispersed or held by it with respect to the Mortgage Loans under the Servicing Agreement;

6. On Count VI, a judgment, jointly and severally against GMAC and Balboa, in an amount to be determined at trial, including an award of punitive damages;

7. On Count VII, a judgment against GMAC in an amount to be determined at trial;

8. On all counts, pre-judgment interest on any monetary award;

9. On all counts, post-judgment interest on all monetary awards;

10. An award of ARE's reasonable costs and expenses, including attorneys' fees, incurred in this action; and

11. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 9, 2012

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Bradford J. Sandler*
Bradford J. Sandler (BS1367)
780 Third Avenue, 36th Floor
New York, New York 10017
212.561.7700

Attorneys for Plaintiff